

EX HIBIT 6

**United States Benefits
Confirmation Statement**

This confirms your Benefits selections and costs, which take effect 01/01/2012. These selections remain in effect unless your eligibility changes or you make changes due to a Status Change. If any information on this Confirmation Statement is not accurate, please call HR Shared Services at ESN 355-9351, 919-905-9351 or toll-free at 1-800-676-4636 immediately.

This also confirms that, as part of your ongoing participation in Nortel's compensation and benefit programs, you agree to disclosure of personal information by Nortel and its plan and program administrators and custodians to third parites, as required, to facilitate administration and reporting.

| | |
|---|---|
| Name: | Charles Barry |
| Global ID: | 0201355 |
| Date of Birth: | 06/19/1957 |
| Pay Frequency: | US Bi-weekly |
| Benefits Earnings: | $ 65800.00 |
| Event:s | Annual Enrollment |
| Event Date: | 10/28/2011 |
| Prepared On: | 11/30/2011 |

## Total Cost Summary

This summary is for Benefits that are already approved. If any coverage is pending, your costs may change later when approval is received. **Please make sure your dependent information (listed on the next page) is accurate.**

### CONFIRMED AFTER-TAX SELECTIONS

| Benefit/Option | Coverage Level | Employee Cost Per Pay Period | Employee Cost Per Year | Nortel Cost Per Year |
|---|---|---|---|---|
| **Medical Care** | | | | |
| 90/70 PPO, Anthem | EE & Family | $ 186.86 | $4,858.36 | 12,073.62 |
| **Dental/Vision/Hearing Care** | | | | |
| COMP | EE & Family | $ 16.69 | $ 433.94 | $ 914.16 |
| **Short-Term Disability** | | | | |
| 66 2/3% of Coverage Amt. Shown | | $ 0.00 | $ 0.00 | $ 429.78 |
| **Long-Term Disability** | | | | |
| 70% of Benefits Earnings | | $ 5.84 | $ 151.84 | $ 0.00 |
| **Total Cost of Your Before-Tax Selections:** | | $ 209.39 | $5,444.14 | 13,417.56 |

### CONFIRMED AFTER-TAX SELECTIONS

| Benefit/Option | Employee Cost Per Pay Period | Employee Cost Per Year | Nortel Cost Per Year |
|---|---|---|---|
| **Core Employee Life Insurance** | | | |
| 1x Benefits Earnings | $ 0.00 | $ 0.00 | $ 102.96 |
| **Optional Employee Life Insurance** | | | |
| 2x Benefits Earnings Smoker | $ 9.50 | $ 247.00 | $ 0.00 |
| **Dependent Life Insurance - Spous../DP** | | | |
| $100,000 | $ 6.92 | $ 179.92 | $ 0.00 |
| **Dependent Life Insurance - Child(ren)** | | | |
| $15,000 Per Child | $ 0.55 | $ 14.30 | $ 0.00 |
| **Accidental Death & Dismemberment** | | | |
| 2x Benefits Earnings Family | $ 1.22 | $ 31.72 | $ 0.00 |
| **Total Cost of Your After-Tax Selections:** | $ 18.19 | $ 472.94 | $ 102.96 |

** If an increase was selected for Optional Life and/or Spousal/DP Life Insurance, a Health Statement must be completed and returned to the address listed on the form within 31 days of the date you made your selections. Once approved for this increased coverage, the higher cost shown will be deducted from your pay check.

| Charles Barry | 0201355 | 11/30/2011 | Page 2 |

## DEPENDENT INFORMATION

Please confirm that the dependents below are accurately reflected. The coverage level indicates the corresponding enrollment in benefit plans and should also be checked for accuracy. Please note: all eligible dependents have access to the Employee Assistance Program (EAP). If you need to make any corrections to your dependent information, contact HR Shared Services at ESN 355-9351, 919-905-9351 or toll-free at 1-800-676-4636

**Relationship Code**
S = Spouse
D = Domestic partner
C = Child (until age 26)
K = Child of domestic partner

**Gender**
M = Male
F = Female

| Name | Soc. Sec. Number | Relationship | Gender | Date of Birth |
|------|------------------|--------------|--------|---------------|
| Donna Barry | | S | F | 09-14-1959 |
| Kelly Barry | | C | F | 10-26-1991 |

Charles Barry
4090 Old Franklinton Rd

Franklinton, NC  27525

EXHIBIT B - SPD PLAN YEAR 1999

# IN THIS SECTION

INTRODUCTION ........................................................................................................... 1

PLAN HIGHLIGHTS .................................................................................................... 2

ELIGIBILITY ................................................................................................................. 3

PARTICIPATION ........................................................................................................... 4
    Core FLEX Benefits ................................................................................................. 4
    Optional FLEX Benefits ......................................................................................... 4
    If You are on Disability During an Annual Enrollment Period ........................... 4

WHEN COVERAGE BEGINS ..................................................................................... 6
    Core FLEX Benefits ................................................................................................. 6
    Optional FLEX Benefits ......................................................................................... 6
    Delay of Effective Date ........................................................................................... 7

CHANGING YOUR SELECTIONS ............................................................................ 7

COST OF COVERAGE .................................................................................................. 7

FLEX EARNINGS ......................................................................................................... 7

SHORT-TERM DISABILITY (STD) BENEFITS ...................................................... 8
    STD Benefit Amount .............................................................................................. 8
    Extension of Benefits Due to Part-Time Employment ....................................... 9
    Definition of Disability .......................................................................................... 9
    When Benefits Begin and End ............................................................................. 10
    If You are Disabled Again .................................................................................... 10
    Reduction of Benefits Due to Other Income .................................................... 11
    Exclusions .............................................................................................................. 13

NNI-LTD-00000056

LONG-TERM DISABILITY (LTD) BENEFITS ......................................................... 13

    LTD Benefit Amount ....................................................................................... 13

    Definition of Disability ................................................................................... 14

    When Benefits Begin and End ...................................................................... 14

    If You are Disabled Again ............................................................................. 16

    Waiver of Premium ........................................................................................ 16

    Reduction of Benefits Due to Other Income ............................................. 16

    Mandatory Vocational Rehabilitation Program ........................................ 19

    Cost of Living Adjustment ............................................................................ 20

    Exclusions ....................................................................................................... 20

OCCUPATIONAL DISABILITY BENEFITS ........................................................... 21

WHEN COVERAGE ENDS ......................................................................................... 22

OTHER IMPORTANT INFORMATION .................................................................. 22

    A Note About State Disability Laws ............................................................ 22

    Limits on Assignments .................................................................................. 23

    Errors in Payment ......................................................................................... 23

ADMINISTRATIVE INFORMATION ...................................................................... 23

NNI-LTD-00000057

# Short-Term and Long-Term Disability Plan

# INTRODUCTION



Your disability benefits are designed to continue all or part of your income if you are unable to work due to Illness or Injury. In addition to the Short-Term Disability (STD) and Long-Term Disability (LTD) coverage provided to you by the Company as part of your Core FLEX Benefits, FLEX gives you the option to select supplemental coverage in these areas.

This is a brief description of the various options the Company has designed for your review and selection. Please read the description carefully to understand the options the Company is offering to you.

This information is a summary plan description (SPD) under the terms of the Employee Retirement Income Security Act of 1974 (ERISA). The complete terms of the Short-Term and Long-Term Disability Plan can be found in the plan document. If there is a difference between the information in this summary and the plan document, the plan document will govern. In no case does this document indicate or guarantee any right of future employment.

NNI-LTD-00000058

# PLAN HIGHLIGHTS

## Short-Term Disability (STD)

*Core STD Benefit*

100% of FLEX Earnings for up to 6 weeks of disability, then 70%* for up to the next 20 weeks of disability

*Supplemental STD Benefit*

Raise 70% Core Benefit to 90% of FLEX Earnings for the 7th to 26th week of disability

## Long-Term Disability (LTD)

*Core LTD Benefit*

50%* of FLEX Earnings after 26 weeks of disability

*Supplemental LTD Benefit*

Raise 50% Core Benefit to 70% of FLEX Earnings after 26 weeks of disability

*\* or statutory minimum (if greater)*

NNI-LTD-00000059

# ELIGIBILITY

You are eligible for the Short-Term Disability (STD) and Long-Term Disability (LTD) plans if you are a regular Employee of the Company and its Affiliates in one of the following categories:

- a full-time Employee who is regularly scheduled to work at least 35 hours per week

- a part-time Employee who is regularly scheduled to work between 20-37.5 hours per week

If you are a member of a bargaining unit, you are not eligible for Short-Term or Long-Term Disability benefits unless specified in the collective bargaining agreement.

NNI-LTD-00000060

# PARTICIPATION

Core STD and LTD benefits are available on your Hire Date. Optional STD and LTD benefits are available to you on your Hire Date provided you complete the enrollment process by your date of hire and pay the applicable Employee contributions. If you enroll for Optional STD or LTD within 60 days of your date of hire, coverage will be effective on the date the InfoCenter receives your choices.

STD and LTD benefits are mutually exclusive and each plan pays benefits independent of the other. Under no circumstances will STD and LTD benefits be paid concurrently.

## Core FLEX Benefits

*You do not need to enroll for Core STD or Core LTD coverage.*

You do not need to enroll for Core STD or Core LTD coverage.

## Optional FLEX Benefits

*You may increase the amount of your Core STD and Core LTD coverage by electing Supplemental STD and Supplemental LTD coverage.*

You may increase the amount of your Core STD and Core LTD coverage by electing Supplemental STD and Supplemental LTD coverage. You may enroll for Supplemental STD and Supplemental LTD coverage within 60 days of your date of hire or the date you become FLEX eligible, when you experience a Qualified Family Status Change (Life Event) (as described in the FLEX Overview section on page 10) or during an Annual Enrollment period.

## If You are on Disability During an Annual Enrollment Period

### STD

If you are on STD during an Annual Enrollment period, and you are still on STD when your newly selected coverage is supposed to begin, the following provisions apply:

Plan Year 1999
Pub. 8/99

NNI-LTD-00000061

- You will receive FLEX Credits and may select new choices for your FLEX Benefits, including your Supplemental STD and/or Supplemental LTD selections.

- You will continue to be eligible for STD benefits under the selections you were enrolled in during your STD. Should you become eligible for LTD, your benefits would be paid under the provisions of the selections you were enrolled in during your STD as well. Once you return to Active Work for two consecutive weeks, you will be covered under your newly elected selections (your choices at the Annual Enrollment period) and any Payroll Deductions for the new coverage will begin.

## *LTD*

If you are on LTD during an Annual Enrollment period, you will not be eligible to enroll in STD or change your current LTD selection. (However, Medical, Dental, Vision and Hearing Care, Life and AD&D benefits will continue to be available to you.) In addition, the following provisions apply:

- You may change your Medical, Dental, Vision and Hearing Care and Dependent Life Insurance selections.

- You will continue to be eligible for Long-Term Disability benefits under the selections you were enrolled during your LTD.

- Once you return to Active Work for 30 days, you may change your enrollment selections since this is considered a Qualified Family Status Change (Life Event). Your newly selected coverage will be effective according to plan provisions.

NNI-LTD-00000062

# WHEN COVERAGE BEGINS

## Core FLEX Benefits

*Core Short-Term Disability and Core Long-Term Disability coverage is automatically effective on the first day you are Actively at Work as a new Employee.*

Core Short-Term Disability and Core Long-Term Disability coverage is automatically effective on the first day you are Actively at Work as a new Employee.

## Optional FLEX Benefits

You may enroll for Supplemental STD and Supplemental LTD coverage within 60 days of your date of hire or the date you become FLEX eligible, when you experience a Qualified Family Status Change (Life Event) (as described in the FLEX Overview section on page 10) or during an Annual Enrollment period.

Your coverage will begin as follows:

| If you enroll and no life required within 60 days | Your coverage will be effective on: |
| --- | --- |
| As a new Employee on or before your Hire Date | Your Hire Date |
| As a new Employee within 60 days of your Hire Date | The day the InfoCenter received your choices. |
| Within 60 days of a Qualified Family Status Change | The date the Qualified Family Status Change event occurs.  Note: some events allow for a choice in coverage effective date.  Contact the InfoCenter if you have questions. |
| During Annual Enrollment | The first day of the Plan Year, normally January 1 |

If you do not enroll under any of the above circumstances, you will be covered under Core STD and Core LTD only, and you must wait until an Annual Enrollment period (or experience a Qualified Family Status Change) to make a

NNI-LTD-00000063

Supplemental STD or Supplemental LTD selection.

## Delay of Effective Date

If you are disabled and away from work on the date you would otherwise first become covered as a new Employee, your coverage will not start until you are Actively at Work.

# CHANGING YOUR SELECTIONS

Your Supplemental STD and Supplemental LTD selections remain in effect for the entire Plan Year. You will not be able to change your selections during the Plan Year unless you experience a Qualified Family Status Change (Life Event) as described in the FLEX Overview section on page 10.

# COST OF COVERAGE

The Company pays the entire cost for Core STD and Core LTD coverage. You will pay for Supplemental STD and Supplemental LTD coverage with FLEX Credits or before-tax Payroll Deductions.

*The Company pays the entire cost for Core STD and Core LTD coverage. You will pay for Supplemental STD and Supplemental LTD coverage with FLEX Credits or before-tax Payroll Deductions.*

# FLEX EARNINGS

FLEX Earnings are your base salary. FLEX Earnings do not include other types of pay, including, but not limited to, overtime, shift differential or relocation payments or bonuses. If you are a part-time Employee regularly working 20 to 34 hours per week, your FLEX Earnings are based on a 25-hour work week. If you are a part-time Employee regularly working 35 to 37.5

NNI-LTD-00000064

*FLEX Earnings are your base salary.*

*If you are eligible for sales incentives, your FLEX Earnings include your base salary and target incentives paid at 100% annual objectives, as defined each year by the Company (excluding bonuses).*

hours per week, your FLEX Earnings are based on a 40-hour work week. If you are eligible for sales incentives, your FLEX Earnings include your base salary and target incentives paid at 100% annual objectives, as defined each year by the Company (excluding bonuses).

If your FLEX Earnings change during the Plan Year, related FLEX Payroll Deductions and FLEX Credits will not change during the year since these deductions and credits are based on your FLEX Earnings as of the administrative preparation period just prior to the Annual Enrollment period of the preceding year. If your FLEX Earnings increase during the year, pay-related benefits will be based on your FLEX Earnings at the time of your disability. However, if your FLEX Earnings decrease during the year, pay-related benefits will be based on your FLEX Earnings as of the administrative preparation period just prior to the Annual Enrollment period of the preceding year.

# SHORT-TERM DISABILITY (STD) BENEFITS

STD benefits will be paid to you for a specified period of time if you become Totally Disabled by an accidental bodily Injury or Illness while you are covered under the plan.

## STD Benefit Amount

### Core STD Benefit

The plan pays a weekly benefit of 100% of your FLEX Earnings for up to six weeks of your disability after completion of a five-day waiting period. (The five-day waiting period is a period of illness that must occur before your STD benefit begins. It counts toward your total period of disability as week one of your six weeks of 100% of FLEX Earnings.) After that, the plan pays 70% of your FLEX Earnings for up to the next 20 weeks. Core STD benefits are reduced by federal and state income tax, as well as other income you may receive, as described on pages 11-12.

NNI-LTD-00000065

## Supplemental STD Benefit

Supplemental STD increases your coverage so that the plan pays 100% of your FLEX Earnings for up to six weeks of your disability after completion of a five-day waiting period (defined above), then 90% of your FLEX Earnings for up to the next 20 weeks. Supplemental STD benefits are reduced by federal and state income tax, as well as other income you may receive, as described on pages 11-12.

*The plan pays a weekly benefit of 100% of your FLEX Earnings for up to six weeks of your disability ...*

# Extension of Benefits Due to Part-Time Employment

If your Physician and the Company approve your return to work (for any company) on a part-time basis while you are still eligible for STD benefits equal to 100% of your FLEX Earnings, (your first 6 weeks of STD), you will receive 100% of your FLEX Earnings for the period that you work plus your reduced STD benefit for the period you receive disability benefits. Since your return to work on a part-time basis will decrease the STD benefit amount you receive, the resulting savings will be used to extend the number of weeks that you are eligible to receive benefits at 100% of your FLEX Earnings. This determination is made on a weekly basis.

*... you will receive 100% of your FLEX Earnings for the period that you work plus the applicable STD benefit for the period you receive disability benefits.*

# Definition of Disability

You are considered Totally Disabled for STD purposes when a Physician certifies that you cannot work because of an Illness or accidental Injury and the clinical evidence supports this opinion. This means that you cannot perform the work you were normally performing at the time of your disability with or without reasonable accommodations for the limitations resulting from your Illness or Injury. In addition, you must be under the regular care of a Physician.

A Physician means a licensed practitioner of the healing arts acting within the scope of his or her practice. When a Total Disability is caused by any condition other than a medically determinable physical impairment, a Physician means a legally qualified Physician who specializes in the practice of psychiatric medicine or has, by reason of training or experience, a specialized competency in the field of psychiatric medicine sufficient to give the necessary evaluation and treatment of mental Illness.

*You are considered Totally Disabled for STD purposes when a Physician certifies that you cannot work because of an Illness or accidental Injury. This means that you cannot perform the work you were normally performing at the time of your disability. In addition, you must be under the regular care of a Physician.*

NNI-LTD-00000066

You must provide written proof of your Total Disability to Nortel Networks Inc. Health Services. Health Services will complete the approval or denial of STD benefits for the Company. Independent Medical Evaluations (IMEs) may be required in order to arrive at this final determination.

## When Benefits Begin and End

*Administratively, STD benefits begin on the sixth consecutive working day of your disability due to Illness or Accident. These benefits end when you are no longer Totally Disabled or have received 26 weeks of STD benefits.*

Administratively, STD benefits will begin on the sixth consecutive working day of your disability due to Illness or Accident. (The first five days are considered a waiting period (a period of illness that must occur before your STD benefit begins) to determine if you will progress to STD. If you do progress to STD, this five day period counts toward your total period of disability as week one of your six weeks of 100% of FLEX Earnings.) These benefits end when you are no longer Totally Disabled or have received 26 weeks of STD benefits.

## If You are Disabled Again

If you are Totally Disabled again after you return to Active Work, your new period of Total Disability will be considered a continuation of your first disability if:

- it has the same or related cause as the first disability and

- you were Actively at Work less than two consecutive weeks since you were Totally Disabled or

- you have not returned for one day of full-time Active Work between the two disability periods

For example, you have received STD benefits for 10 weeks, and you...

1. return to Active Work for one week before the same Illness requires you to stay at home again. In this case, benefits continue under the previous Claim for the rest of the 26-week period.

2. return to Active Work for three weeks, then the same Illness requires you to stay at home again. In this case, you will have to file a new Claim and are eligible for a new 26-week period of benefits.

3. return to Active Work for one day, then a new Illness requires you to stay at home again. In this case, you will have to file a new Claim and are eligible for a new 26-week period of benefits.

Plan Year 1999
Pub. 8/99

NNI-LTD-00000067

# Reduction of Benefits Due to Other Income

STD benefits will be reduced by any other income payable to you or your Dependents as a result of your disability or retirement, so that the sum of your STD benefits and any other income will not exceed the applicable STD benefit level.

For the purposes of this plan, "other income" includes:

- income received from any employer or from any occupation for compensation or profit, including self-employment
- Workers' Compensation benefits (excluding payments of legal fees incurred in the Claim process)
- disability, retirement or unemployment benefits provided under any group insurance or pension plan or any other arrangement of coverage for individuals in a group (whether on an insured or uninsured basis)
- any other disability, retirement or unemployment benefits required or provided for under any law of any government — for example:
  - unemployment compensation benefits
  - no-fault wage replacement benefits
  - statutory disability benefits
  - Social Security benefits, the Canada Pension Plan and the Quebec Pension Plan, including Dependents' benefits, but not counting any increase in benefits after STD benefit payments have started under this plan

*... the sum of your STD benefits and any other income will not exceed the applicable STD benefit level.*

For example, if your weekly STD benefit is $200, and you are also receiving $100 a week from Workers' Compensation, then your STD benefits will be reduced to $100 a week so that your total income equals $200 a week.

For the purposes of this plan, other income will be treated as follows:

1. Any periodic payments will be allocated to weekly periods.
2. Any single lump sum payment, including any periodic payments which you or your Dependents have elected to receive in a single lump sum will be allocated to weekly periods. However, any single lump

NNI-LTD-00000068

sum payment under Workers' Compensation laws will be fully offset in its entirety against any benefits otherwise payable by this plan.

3. Any periodic or single lump sum payments received as a retroactive award may be allocated retroactively.

*It is your responsibility to complete any required applications, such as for Social Security benefits …*

This plan takes into account other income for which you are eligible, but may have not yet received. It is your responsibility to complete any required applications, such as for Social Security benefits, as well as undertake any necessary processes for appeal if initially denied.

In the case of Social Security benefits, you are expected to pursue, in a timely and diligent manner, each of the following steps:

1. Apply for Social Security benefits.

2. Appeal at the reconsideration level, if benefits are denied.

3. Appeal at the Administrative Law Judge level, if benefits are again denied.

Until you give the plan written proof that your application for other disability benefits has been finally denied, the plan may estimate your weekly Social Security and other income and use that amount to determine your benefit under this plan.

If you sign a Reimbursement Agreement, your Social Security or other income will not be estimated while your applications and appeals are pending. To obtain a Reimbursement Agreement, contact the Claims Administrator as defined on page 15 of the Administrative Information section.

If the Claims Administrator finds that the actual amount of Social Security and other income is different than the amount used to determine your STD benefits, these rules apply:

1. If STD benefits have been underpaid, this plan will make a lump sum payment to bring the total payments to the amount that should have been paid.

2. If STD benefits have been overpaid, this plan will require a lump sum reimbursement payment to the plan or reduce or eliminate future payments.

NNI-LTD-00000069

# Exclusions

STD benefits will not be paid for any disability resulting from:

- intentionally self-inflicted injuries, including:
- – a disability or Injury that results from the use of hallucinogenic or narcotic drugs except when legally prescribed by a Physician and taken in accordance with the Physician's direction
- your participation in the commission of an assault or felony
- war or any act of war (declared or undeclared), insurrection, rebellion or participation in a riot or civil commotion

# LONG-TERM DISABILITY (LTD) BENEFITS

LTD benefits will be paid to you for a specified period of time if you become Totally Disabled by an accidental bodily Injury or Illness while you are covered under the plan.

## LTD Benefit Amount

### Core LTD Benefits

Core LTD benefits pay a monthly benefit of 50% of your FLEX Earnings after you have been Totally Disabled for a period of 26 consecutive weeks (STD period). Core LTD benefits are reduced by federal and state income tax, as well as any other income you may receive (as described on pages 16-18), with a minimum monthly benefit of $50.

### Supplemental LTD Benefits

Supplemental LTD increases your Core LTD coverage so that the plan pays a monthly benefit of 70% of your FLEX Earnings after you have been Totally Disabled for a period of 26 consecutive weeks (STD period). Supplemental LTD benefits are reduced by federal and state income tax, as well as any other income you may receive (as described on pages 16-18), with a minimum monthly benefit of $100.

*STD benefits will not be paid for any disability resulting from:*

- *intentionally self-inflicted injuries*
- *your participation in the commission of an assault or felony*
- *war or any act of war*

*You are considered Totally Disabled for LTD if a Physician certifies that you cannot work because of an Illness or accidental Injury, and the clinical evidence supports this opinion.*

NNI-LTD-00000070

# Definition of Disability

*During the first 24 months of a covered Total Disability ... you will be considered unable to work if you cannot perform the work you were normally performing at the time of your disability.*

You are considered Totally Disabled for LTD if a Physician certifies that you cannot work because of an Illness or accidental Injury, and the clinical evidence supports this opinion. You must provide written proof of your Total Disability to the Claims Administrator, who will make the final determination of disability. You must be under the regular care of the Physician who has treated you personally for the Illness or Injury causing the Total Disability for at least 31 days. During the first 24 months of a covered Total Disability (after the 26-consecutive week waiting period (STD)), you will be considered unable to work if you cannot perform the work you were normally performing at the time of your disability with or without reasonable accommodations for the limitations resulting from your Illness or Injury.

*After the first 24-month period of covered Total Disability ... you will be considered unable to work if you are unable to perform any reasonable occupation. A "reasonable occupation" is any job you are or could become qualified to do with your education, training or experience.*

After the first 24-month period of covered Total Disability (after the 26-consecutive week waiting period (STD)), you will be considered unable to work if you are unable to perform any reasonable occupation. A "reasonable occupation" is any job you are or could become qualified to do with your education, training or experience.

A Physician means a licensed practitioner of the healing arts acting within the scope of his or her practice. When a Total Disability is caused by any condition other than a medically determinable physical impairment, a Physician means a legally qualified Physician who specializes in the practice of psychiatric medicine or has, by reason of training or experience, a specialized competency in the field of psychiatric medicine sufficient to give the necessary evaluation and treatment of mental Illness.

*The Claims Administrator will be responsible for determining if your disability meets the definition of disability, and has the right to require that you be examined by a Physician of his or her choosing.*

The Claims Administrator will be responsible for determining if your disability meets the definition of disability, and has the right to require that you be examined by a Physician of his or her choosing.

# When Benefits Begin and End

LTD benefits begin as soon as you have been Totally Disabled for the 26-consecutive week waiting period (STD), provided that you give written proof of your Total Disability satisfactory to the Claims Administrator. Paperwork to apply for LTD benefits must be submitted to the Claims Administrator within 30 days from receipt of such paperwork AND before the end of the 26-consecutive week waiting period (STD). (Your monthly LTD benefits (and

NNI-LTD-00000071

any retroactive payments) could be delayed based upon the date you provide written proof of your Total Disability.) If you do not provide your paperwork within 30 days after the end of your STD, you will not be entitled to LTD benefits.

Benefits end when your period of Total Disability ends, which happens when the first of the following occurs:

1. You stop being Totally Disabled or die.

2. You are able to return to work at any reasonable occupation (other than an approved rehabilitation program) after the first 24 months of LTD.

3. You are no longer under the care of a Physician.

4. You fail to furnish the latest required proof of the continuance of your Total Disability or refuse to be examined by a Physician designated by the plan.

5. You reach the end of the maximum benefit period for any one period of Total Disability as shown in the following chart.

## Maximum Benefit Period

The maximum length of time benefits will be paid depends on your age when your Total Disability begins, according to the following schedule:

| If your disability begins at age: | LTD benefits will continue no longer than: |
| --- | --- |
| under 60 | to age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 to 74 | 12 months |
| 75 or over | 6 months |

*LTD benefits begin as soon as you have been Totally Disabled for the 26-consecutive week waiting period ...*

NNI-LTD-00000072

████████████████████████████████████████

*For total disabilities due to mental disorders, nervous disorders or chemical dependency, the LTD maximum benefit period is limited to 24 months if treated in an outpatient setting.*

## Behavioral Illness Limitation

For total disabilities due to mental disorders, nervous disorders or chemical dependency, the LTD maximum benefit period is limited to 24 months if treated in an outpatient setting. However, if you are confined in a Hospital within 90 days following the date ending that 24-month period, benefits will continue during your Hospital confinement.

## If You are Disabled Again

Once a period of Total Disability has ended (i.e., you have returned to Active Work), any new or unrelated subsequent period of Total Disability will be treated as a new and separate period of disability. However, if you are disabled again after you return to Active Work, your new period of Total Disability will be considered a continuation of your first disability if:

• it has the same or related cause as the first disability and

• you were Actively at Work less than three consecutive months since your first disability.

If it is considered a continuation of your initial disability, LTD benefits are immediately payable. If it is a new disability, LTD benefits are payable only after a new 26-week waiting period.

## Waiver of Premium

*While you are receiving LTD benefits, you will not be required to pay premiums for any Supplemental LTD or Optional Employee Life Insurance coverage you have selected.*

While you are receiving LTD benefits, you will not be required to pay premiums for any Supplemental STD, LTD or Optional Employee Life Insurance coverage you have selected.

## Reduction of Benefits Due to Other Income

LTD benefits will be reduced by other sources of income payable to you or your Dependents because of your disability or retirement.

For the purposes of this plan, "other income" includes:

• income received from any employer or from any occupation for com-

NNI-LTD-00000073

pensation or profit, including self-employment

- Workers' Compensation benefits (excluding payments of legal fees incurred in the Claim process)

- disability, retirement or unemployment benefits provided under any group insurance or pension plan or any other arrangement of coverage for individuals in a group (whether on an insured or uninsured basis)

- any other disability, retirement or unemployment benefits required or provided for under any law of any government — for example:

  – unemployment compensation benefits

  – no-fault wage replacement benefits

  – statutory disability benefits

  – Social Security benefits (family offset), the Canada Pension Plan and the Quebec Pension Plan, including Dependents' benefits, but not counting any increase in benefits after STD benefit payments have started under this plan

For example, if your monthly LTD benefit is $800, and you are also receiving $400 a month from Workers' Compensation, then your LTD benefits will be reduced to $400 a month so that your total income equals $800 a month.

For the purposes of this plan, other income will be treated as follows:

1. Any periodic payments will be allocated to monthly periods.

2. Any single lump sum payment, including any periodic payments which you or your Dependents have elected to receive in a single lump sum will be allocated to 60 monthly periods. However, any single lump sum payment under Workers' Compensation laws will be fully offset in its entirety against any benefits otherwise payable by this plan.

3. Any periodic or single lump sum payments received as a retroactive award may be allocated retroactively.

This plan takes into account other income for which you are eligible, but may have not yet received. It is your responsibility to complete any required applications, such as for Social Security benefits, as well as undertake any necessary processes for appeal if initially denied.

In the case of Social Security, you are expected to pursue the following steps:

NNI-LTD-00000074

1. Apply for Social Security benefits.

2. Appeal at the reconsideration level, if benefits are denied.

3. Appeal at the Administrative Law Judge level, if benefits are again denied.

Until you give the plan written proof that your application for other disability benefits has been finally denied, the plan will estimate your monthly Social Security and other income and use that amount to determine your benefit under this plan.

If you sign a Reimbursement Agreement, your Social Security or other income will not be estimated while your applications and appeals are pending. To obtain a Reimbursement Agreement, contact the Claims Administrator as defined on page 15 of the Administration Information section.

If the Claims Administrator finds that the actual amount of Social Security and other income benefits is different than the amount used to determine your LTD benefits, these rules apply:

1. If LTD benefits have been underpaid, this plan will make a lump sum payment to bring the total payments to the amount that should have been paid.

2. If LTD benefits have been overpaid, this plan will either require a lump sum reimbursement payment to the plan or reduce or eliminate future payments. In this case, plan minimums will not apply.

## Social Security Disability Benefits and Medicare

Disabled employees who have been receiving Social Security Disability Income (SSDI) for at least two years are eligible for Medicare. Once you are enrolled in Medicare, Medicare will pay claims first and the Company's plan will pay second. The Company will continue to pay for medical benefits it previously covered which are not covered by Medicare (like prescription drugs). To be protected as completely as possible, you need to accept Medicare coverage when you become eligible. (You may be contacted by a representative acting on behalf of the Company who will assist you in the Medicare enrollment

*It is your responsibility to complete any required applications, such as for Social Security benefits ...*

NNI-LTD-00000075

process.) Coverage under Medicare Part A is free while coverage under Medicare Part B (Outpatient and Physician services) requires a monthly premium which will be deducted from your monthly SSDI check. At the time you become entitled to Medicare Part B, the monthly LTD benefit you receive from the Company will be increased by the amount of the Medicare Part B premium (retroactive to January 1, 1997). The Medicare Part B premium is subject to increase each year.

# Mandatory Vocational Rehabilitation Program

Effective for disabilities commencing on or after January 1, 1999, if you are deemed able to be rehabilitated while you are receiving LTD benefits, you will be required to take part in an "approved rehabilitation program" to help you get back to work. (Refusal to participate in an approved rehabilitation program could result in termination of your LTD benefits.) An approved rehabilitation program is:

- a program of vocational rehabilitation, or
- a period of part-time work with the Company for purposes of rehabilitation, recommended by your Physician, and approved by the Claims Administrator and the Plan Administrator. This period will begin when your Physician, the Claims Administrator and the Plan Administrator approve such program in writing and will end when your Physician, the Claims Administrator and the Plan Administrator withdraw their approval.

Each rehabilitation program is an individually tailored, goal-oriented program designed to return you to gainful employment.

You may continue to receive LTD benefits for a limited time while on an approved rehabilitation program. During this period, your regular monthly LTD benefit will be reduced by 50% of your earnings from your rehabilitative job so that the sum of your LTD benefits and any other income you earn does not exceed 85% of your pre-disability earnings. Here is an example:

*... you may continue to receive LTD benefits for a limited time while on an approved rehabilitation program.*

*... your regular monthly LTD benefit will be reduced by 50% of your earnings from your rehabilitative job.*

| Monthly LTD Benefit From The Plan | Rehabilitative Earnings | 50% Reduction | Net LTD Benefit From This Plan |
|---|---|---|---|
| $1,600 | $300 | $150 | $1,750 |

NNI-LTD-00000076

If this plan determines that a program that should make you self-supporting is within your ability, the plan may pay certain expenses of a vocational rehabilitation program at the discretion of the Plan Administrator. If this benefit applies to you, you will be notified of the type and duration of expenses covered, and the conditions for payment, if you agree to undertake the program. The maximum payment is $10,000.

## Cost of Living Adjustment

*The current LTD plan ... provides a cost of living adjustment for LTD benefits. This adjustment applies to your Core and Supplemental LTD benefits each year after the first year of Long-Term Disability.*

The current LTD plan which began July 1, 1994 provides a cost of living adjustment for LTD benefits. This adjustment applies to your Core and Supplemental LTD benefits each year after the first year of Long-Term Disability. This adjustment increases your total LTD benefit by 60% of the annual Consumer Price Index (CPI) increase, up to 6% per year as determined by the Company. For example, if you are receiving a $2,000 LTD benefit and the CPI increases by 4%, your benefit will increase 2.4% to $2,048. This benefit becomes payable in the first calendar month following the one year anniversary date that your LTD benefit began and is increased each year thereafter (when a CPI increase applies) beginning the same calendar month of your first COLA increase.

## Exclusions

*LTD benefits will not be paid for any disability which is in any way caused by the following:*

*• intentionally self-inflicted injuries ...*

*• your participation in the commission of an assault or felony*

*• war or any act of war*

*• a Pre-Existing Condition ...*

LTD benefits will not be paid for any disability which is in any way caused by the following:

- • intentionally self-inflicted injuries, including:
  - – a disability or Injury that results from the use of hallucinogenic or narcotic drugs except when legally prescribed by a Physician and taken in accordance with the Physician's direction
- • your participation in the commission of an assault or felony
- • war or any act of war (declared or undeclared), insurrection, rebellion or participation in a riot or civil commotion
- • a Pre-Existing Condition, as described below

NNI-LTD-00000077

███████████████████████████████

### *Pre-Existing Conditions Exclusion*

If you are a newly hired Employee, you will not be covered for 12 months after coverage is effective for any disability caused or in any way related to a condition existing within 90 days of your coverage Effective Date.

A "Pre-Existing Condition" is an Illness, Injury or condition for which you:

- received treatment or services from a Physician
- took drugs or medicines prescribed by a Physician
- incur expenses or
- receive a diagnosis

# OCCUPATIONAL DISABILITY BENEFITS

Disability benefits may also be payable to you for a Total Disability which is an Occupational Disability as defined below. This benefit is provided on the same terms as the benefit for a non-occupational (non-employment related) disability. The amount of disability benefits payable, however, is equal to the excess of the non-occupational disability benefit over the benefits payable under any Workers' Compensation law, occupational disease law or similar legislation.

*Disability benefits may also be payable to you for a Total Disability which is an Occupational Disability …*

Occupational Disabilities are those caused by:

- an injury arising out of, or in the course of, any employment for wage or profit or
- a disease covered with respect to such employment by any Workers' Compensation law, occupational disease law or similar legislation.

NNI-LTD-00000078

# WHEN COVERAGE ENDS

LTD and STD coverage will end on the earliest of the following dates:

- the date your employment ends or you stop qualifying for coverage or
- the date the part of the plan providing the coverage ends or
- the date you fail to pay the required premium or contribution or
- the date you begin an unpaid leave of absence.

For coverage purposes, your employment will end when you are no longer an active full-time or part-time Employee. However, the Company may consider you as still an active Employee during certain types of approved leaves of absence. For example, if you are on an unpaid medical leave of absence because of Injury or Illness, your coverage may be continued.

If you stop Active Work for any reason, you should contact the Company at once to determine what arrangements, if any, can be made to continue any of your coverage.

# OTHER IMPORTANT INFORMATION

## A Note About State Disability Laws

In certain locations, state mandated disability plans supersede the Company's plan. As a result, applicable state disability law may alter the provisions described in this summary.

Plan Year 1999
Pub. 8/99

NNI-LTD-00000079

## Limits on Assignments

Benefits under the plan may be assigned only as a gift assignment. The Claims Administrator will not:

- be responsible for determining the validity of a purported gift assignment or
- be held to know about an assignment unless it has received a copy of it.

## Errors in Payments

If the Claims Administrator determines that you have received an overpayment of benefits, you will be required to reimburse the Claims Administrator or have the overpayment deducted from subsequent benefit payments payable under this plan or any other Company welfare plan.

# ADMINISTRATIVE INFORMATION

Please see the Administrative Information section of this handbook for further administrative details about this plan, such as how to file claims and appeal denied claims, where to get more information, your ERISA rights and how the Company may amend the plan.

NNI-LTD-00000080

EXHIBIT C

Claims Services Provided by

**The Prudential Insurance Company of America**

**Sophie Costanza**
Disability Claim Manager

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718  Ext: 87641
Fax: (877) 889-4885
**Website: www.prudential.com/mybenefits**

September 11, 2012

Charles V Barry
4090 Old Franklinton Road
Franklinton, NC  27525

Claimant: Charles V Barry
Claim No.: 10280701
Date of Birth: 6/19/1957
Control No./Br.: 39900  /  000RB

IıIıIIııIıIıIııIıIıIıIıIıI

Dear Mr. Barry:

We are writing to you to confirm that you are receiving Long Term Disability benefits under the Nortel Networks Group Policy with Prudential.

You are receiving $2,654.77  per month.  This benefit will remain the same provided your income from other sources does not change.  Your  benefits will continue through June 18, 2022 provided you remain totally disabled as defined by the Policy and continue to meet all other contractual requirements.

Sincerely,
*Sophie Costanza*
Sophie Costanza
Disability Claim Manager

EXHIBIT D



**Nortel**                              Tel: 1-800-676-4636
**HR Shared Services**
4001 E. Chapel Hill-Nelson Hwy.
P. O. Box 13010
Research Triangle Park, NC 27709


Charles Barry
4090 Old Franklinton Rd

Franklinton, North Carolina  27525


June 16, 2010

Name of employee:  Charles Barry

Global ID:  201355

Termination date of life insurance:  August 31, 2010

Total amount of core life insurance eligible to convert:  $66,000

Total amount of supplemental life insurance eligible to convert:  $132,000

Name of spouse:  Donna Barry

Total amount of spousal life insurance eligible to convert:  $25,000

Name of dependent (s):  Kelly Barry

Total amount of dependent life insurance eligible to convert:  $15,000

Life Insurance Group/Policy # with Prudential:  39900

To convert coverage, you must submit application and pay the first premium within 31 days after your group coverage ends or within 15 days after you receive written notice of the conversion privilege, whichever is later. However, under no circumstances may you convert your coverage to an individual policy if you do not apply for individual coverage and pay the first premium within 92 days after your group coverage ends.

### Please contact a local Prudential Agent, or call 1-877-889-2070 for conversion information.

HR Shared Services
1-800-676-4636





# N⊘RTEL

Charles Barry
4090 Old Franklinton Rd
Franklinton, NC 27525

July 20, 2010

Subject: Withdrawal of Motion to Terminate US Retiree and Long Term Disability Plans

As you are aware, on June, 21, 2010, Nortel Networks Inc. and its affiliated U.S. debtors filed a motion seeking to terminate certain retiree and long-term disability benefits effective as of August 31, 2010.

In light of certain recent developments, Nortel filed a notice of withdrawal last week with the U.S. Bankruptcy Court.   You might have already received a copy of this notice in the mail as a result of the court notification process.

What this means is your benefits under the applicable plans will **not** be discontinued on August 31, 2010. and the plans, including your monthly LTD income check and the administration of claims, are expected to continue uninterrupted.  You should disregard the Employment Termination Package and COBRA notifications you have already received as they are **no longer applicable**. Participants should continue to remit plan contributions on a timely basis consistent with past practice.

In light of this decision, Nortel has requested that UnitedHealthcare suspend its enrollment of participants, including any scheduled meetings and conference calls.  Anyone who has already enrolled and paid a premium for this alternative coverage may contact UnitedHealthcare directly at 1-877-709-0758 (65 and over) or 1-877-247-0085 (under 65) to initiate a cancellation and request a refund of premium.  As the policies are individual policies between the enrollee and UnitedHealthcare the participant must initiate the cancellation.

Although your benefits under the plans will not be terminated effective August 31, 2010 the company continues to review its various benefit programs in light of its current circumstances to determine the appropriate status of these plans now and in the future.  It is possible that the company will seek modification or termination of some or all of the benefits at a later time.

If you have any questions, please contact HR Shared Services at 1-800-676-4636.

Sincerely,

Elena King
Senior Vice President, Human Resources

 EXHIBIT D



# N⊘RTEL

**June 28, 2010**

Dear US LTD Program Participant:

This package is a follow up to the letter dated June 17, 2010 that you received in the mail. As indicated, on August 31, 2010, Nortel Networks Inc., as the plan sponsor, is planning to terminate the existing long-term disability (LTD) plan, and has filed for approval with the bankruptcy court to do so. Since the company has sold most of its divisions and is now maintaining only a small transition support staff, your employment will terminate on August 31, 2010, as there are no jobs to return to.

Enclosed is the following:

1. Your employment termination information package. Employment termination packages are standard, and as such there may be information that is not relevant to you given your long-term disability status.

   If you have questions regarding the employment termination package, contact Nortel HR Shared Services at 1-800-676-4636.

2. A life insurance conversion letter. Should you wish to convert your policy to a personal policy, this letter provides important instructions on the process and timing.

**IMPORTANT REMINDER:** As indicated in your June 17 letter, long-term disability payments will be discontinued August 31, 2010. Your long-term disability payment from Prudential in August 2010 will be the last plan payment you will receive.

For all other questions and contact details, please refer to the June 17 letter and Frequently Asked Questions document for additional information.



EXHIBT D

---

### HR SHARED SERVICES U.S. - TERMINATION NOTIFICATION
### PROBUSINESS / SAP INFORMATION

---

EMPLOYEE NAME: <u>Charles  Barry</u>

TERMINATION EFFECTIVE DATE: <u>2010/08/31</u>

BENEFITS END DATE: <u>2010/08/31</u>

CONTINUOUS SERVICE DATE : <u>1985/03/18</u>


EMPLOYEE ADDRESS:

**4090 OLD FRANKLINTON RD**
**FRANKLINTON**
**NC  27525**

GLOBAL ID: <u>0201355</u>

ENTITY: <u>LTD</u>        DEPT: <u>8900</u>

EMPLOYEE STATUS:  Full Time: <u>F</u>
                                      Part Time:

LOCATION : <u>438</u>

LOCATION  DESCRIPTION: <u>NASHF</u>

---

SAP ACTION CODE : <u>84</u>

SAP SEPARATION REASON CODE:
<u>33</u>
SAP SEPARTION REASON DESCRIPTION:
<u>Work force reduction</u>

---

<u>WITHHOLDINGS & AMOUNTS OWED</u>
Nortel will withhold any and all applicable federal, state, or local tax from any monies or monetary equivalents paid. In addition, Nortel may, to the extent permitted by law, deduct from any payment provided to Employee any amounts (including, but not limited to, any advance, loans, overpayment, excess commissions or other monies including the monetary equivalent of equipment not returned to Nortel) that Nortel has determined that Employee owes Nortel without prejudice to subsequent revision or other collection methods.

INFORMATION MEMO FOR EMPLOYEES UPON EMPLOYMENT TERMINATION
INCLUDING THE OPPORTUNITY TO WAIVE SEVERANCE PAYMENTS AND
BENEFITS UNDER THE NORTEL NETWORKS SEVERANCE ALLOWANCE PLAN

---

**IMPORTANT PLEASE READ CAREFULLY**

---

INTRODUCTION: Section I below (Employee Data) sets forth payments under the Nortel Networks Severance Allowance Plan (the "Plan") that you may have been eligible for had Nortel Networks Inc. ("NNI") and Nortel Networks CALA Inc. ("NNCI") not filed for creditor protection under Chapter 11 of applicable US Bankruptcy law (the "Filing"). Employee may be eligible to file a claim in the Chapter 11 proceeding with respect to such payments and benefits under the Plan.

IMPORANT NOTE:    Effective September 1, 2010, Nortel Networks Inc. will no longer provide employer-subsidized retiree medical benefits.    At the same time, the retiree life insurance plan and the optional long term care plans will also be discontinued.

The timing of payment of benefits under the Retirement Income Plan ("RIP") and commencement of coverage under the Retiree Medical, Life Insurance and Long-Term Care Plan ("Retiree Medical Plan") depends on when Employee's "Severance Period" ends. (For more information, see Section III (B) (10) and (11) below). It is important to understand that Employee cannot commence such benefits until after the end of the total Severance Period described in the Plan.    If Employee qualifies for benefits under the Severance Plan, that waiting period before Employee can commence benefits under the RIP and Retiree Medical still applies even though Employee may have to submit a claim for severance benefits through the Chapter 11 process rather than commencing benefits immediately following Employee's employment termination. For that reason, Employee should determine whether the ability to claim Employee's Severance Plan benefits or to start Employee's Retirement Income Plan benefits and Retiree Medical Plan coverage earlier is more important to you. **If starting the Retirement Income Plan and Retiree Medical Plan benefits earlier has greater value, Employee may start them earlier by waiving Employee's claim to Severance Plan benefits entirely. To do so, Employee must complete the "Waiver of Severance Plan Benefits" that appears at the end of this memo.**

However, please note that if Employee waives Employee's Severance Plan benefits, Employee will not receive credit for vesting service under the Retirement Income Plan during Employee's "standard severance period". The standard severance period is the period after Employee's Employment Termination Date that applies if Employee qualifies for benefits under the Severance Plan. The period equals 4 weeks plus 1 week for each year of Employee's service with Nortel. That credit also counts toward qualifying Employee for coverage and subsidies under the Retiree Medical Plan.    If Employee will not have enough vesting service to qualify for a Retirement Income Plan benefit at Employee's Employment Termination Date or to qualify for coverage and the maximum subsidy available to Employee under the Retiree Medical Plan but would have such service at the end of Employee's standard severance period, Employee may not want to waive Employee's Severance Plan benefits.   Note that Employee cannot waive the Severance Plan benefit for just a portion of the severance period, such as the period after the end of the standard severance period.

Please note that on July 17, 2009 the Pension Benefit Guarantee Corporation ("PBGC") announced that it will be assuming responsibility to administer and pay benefits with respect to Nortel's US Retirement Income Plan. As a result, the above waiver while currently applicable may be subject to change by the PBGC.

Further, the benefits set forth in Section III (B), below will be available to Employee as long as Employee meets the eligibility requirements for the identified benefits.

## I. EMPLOYEE DATA

Notice Date:  2010/08/31

Employee: **Charles  Barry**

Employee Number: **0201355**

Continuous Service Date: **1985/03/18**

Severance Eligibility Date: **1985/03/18**

Employment Termination Date: 2010/08/31

Severance Stop Date: **2011/03/22**

Employee Home Address:

**4090 OLD FRANKLINTON RD**
**FRANKLINTON**
**NC       27525**

Severance Period (for employees with at least 6 months of service): **29**
(Number of Weeks to Commence Following Termination Date)

HR Contact: **Nortel HR Shared Services**
**Mail Stop 570/02/0C2**
**PO Box 13010**
**4001 E. Chapel Hill-Nelson Hwy**
**Research Triangle Park, NC  27709-3010**
**1-800-676-4636**

## II. NOTICE

---

### IMPORTANT NOTICE

---

Employee's employment is being terminated effective as of the Employment Termination Date specified above in Section I ("Termination Date"). However, notwithstanding the Filing, if Employee meets the eligibility requirements for benefits described in Section III (B) below, Employee will have access to them.

## III. ADDITIONAL INFORMATION

(A)     **Notice Date:**  The last day on which Employee is required to report to work and/or perform job duties and responsibilities is the Notice Date set out in Section 1 of this Agreement ("Notice Date").

(B)     **Benefits Available To Employees:**  The following benefits shall be provided to Employee, to the extent    that the Employee qualifies for such benefits under the provisions of the official plan documents that establish the requirements for such benefits.

    (1)  *MEDICAL AND DENTAL/VISION/HEARING CARE COVERAGE AND EMPLOYEE ASSISTANCE PROGRAM COVERAGE (EAP)*

        If enrolled, coverage ends on the last day of the month that includes Employee's Termination Date.

        All eligible expenses incurred prior to the first day of the month following the Termination Date will be covered under the Employee's Medical Plan and Dental/Vision/Hearing Care Plan coverage.

        However, certain Medical and Dental/Vision/Hearing Care coverage and EAP coverage may be continued beyond the last day of the month that includes Employee's Termination Date under COBRA (the Consolidated Omnibus Budget Reconciliation Act). If eligible, Employee may elect to purchase continuation under COBRA of the group Medical and Dental/Vision/Hearing care coverage for Employee and Employee's covered dependents (as defined by COBRA). Generally, Employee's coverage may be continued for 18 months after the coverage ends due to the Employee's termination. Employee's cost will be at the full COBRA rate (102% of the full group rate per person). Information on Employee's COBRA option will be forwarded to Employee's address of record from Ceridian within 30 days of Employee's Termination Date. If Employee has not received the COBRA enrollment package within 30 days, please call Ceridian at 1-800-877-7994.

    (2)  *HEALTH CARE REIMBURSEMENT ACCOUNT (HRCA)*

        If enrolled, contribution ends on Employee's Termination Date, unless Employee elects to continue for the period provided under COBRA.  Please contact Ceridian at 1-800-877-7994 for additional information.

        If Employee elects not to continue HCRA under COBRA, Employee may continue to receive reimbursements (up to the maximum Employee has elected) from that account for eligible expenses incurred through Employee's Termination Date. Claims with dates of service on or before the Termination Date may be filed up to the deadline for all participants to file claims for the calendar year in which the Termination Date occurs. The filing deadline is May 31 for expenses incurred thru the previous plan year Grace Period (March 15).  For additional information, please contact WageWorks at 1-877-924-3967.

    (3)  *DEPENDENT DAY CARE REIMBURSEMENT ACCOUNT (DDCRA)*

        If enrolled, the contribution to the DDCRA plan ends on Employee's Termination Date.

        Employee may use any money in his/her account at the time his/her employment ends to pay eligible expenses incurred before your employment ends.  Expenses incurred after your employment ends cannot be reimbursed. Claims with dates of service on or before the Termination Date may be filed up to the deadline for all participants to file claims for the calendar year in which the Termination Date occurs. The filing deadline is March 31 of the year following the year in which expense occurred.  For additional information, please contact WageWorks at 1-877-924-3967.

(4)  *EMPLOYEE LIFE INSURANCE*

If enrolled, core and optional coverage ends on Employee's Termination Date.

Employee may convert the group life insurance to an individual policy (without a medical examination) within 31 days of Employee's Termination Date.  Conversion forms must be requested by calling HR Shared Services at 1-800-676-4636.

(5)  *DEPENDENT LIFE INSURANCE – SPOUSE & CHILD(REN)*

If enrolled, coverage ends on Employee's Termination Date.

Employee may convert the group dependent life insurance to an individual policy (without a medical examination) within 31 days of Employee's Termination Date.  Conversion forms must be requested by calling HR Shared Services at 1-800-676-4636.

(6)  *ACCIDENTIAL DEATH & DISMEMBERMENT (AD&D) INSURANCE*

If enrolled, coverage ends on Employee's Termination Date.

There is no conversion privilege.

(7)  *SHORT-TERM (STD) DISABILITY*

The Long-Term Disability Plan will terminate August 31, 2010.

If enrolled, coverage ends on Employee's Termination Date.

If Employee is actively at work (as defined in the applicable Short-Term Disability and Long-Term Disability Plan documents) on the Notice Date (and the Notice Date and the Termination Date are different), Employee's existing Short-Term and Long-Term Disability Plan coverage will continue until the Termination Date.  Upon the Termination Date, all disability plan coverage terminates. If Employee becomes disabled and qualifies for Short-Term Disability Plan benefits between the Notice Date and the Termination Date, once a period of total disability has ended (by Employee's recovery, a finding by the claims administrator that benefits are no longer payable, or by payment of the maximum STD/LTD Plan benefit), Employee will not be returned to active work status unless Nortel identifies an available job for which Employee is qualified, with or without a reasonable accommodation.  If Employee is not returned to active work status, Employee will have no further Short-Term or Long-Term Disability Plan coverage for any conditions that arise after that date (the date total disability ends).

If Employee is not actively at work on the Notice Date, Employee does not have coverage for Short-Term or Long-Term Disability Plan benefits on Employee's Notice Date and such coverage will not resume after the Notice Date. In this situation, it will not be possible for Employee to qualify for Short-Term or Long-Term Disability Plan benefits during the period between the Notice Date and Termination Date.

(8)  *LONG-TERM (LTD) DISABILITY*

The Long-Term Disability Plan will terminate August 31, 2010.

If enrolled, coverage ends on Employee's Termination Date.

(9)  *BUSINESS TRAVEL ACCIDENT INSURANCE*

Coverage ends on Employee's Termination Date.

(10) RETIREE MEDICAL PLAN ("RETIREE MEDICAL PLAN") and RETIREE LIFE AND
LONG TERM CARE PLAN ("RETIREE LIFE INSURANCE PLAN")

Effective September 1, 2010, Nortel Networks Inc. will no long provide employer-subsidized retiree medical benefits. At the same time, the retiree life insurance plan and the optional long-term care plan will also be discontinued.

If eligible,

- Employee will have access to the Retiree Medical Plan and the Retiree Life and Long Term Care Insurance Plan on the date benefits commence under the Retirement Income Plan as administered by the Pension Benefits Guarantee Corporation (PBGC), if Employee (i) participated in the previously provided (now cancelled) Traditional or Balanced Program under the old Capital Accumulation Retirement Program ("CARP"), (ii) elects to commence benefits through the PBGC on the earliest date following the Termination Date or the Severance End Date, (iii) is at least age 55 and meets the Retiree Medical Plan and the Retiree Life and Long Term Care Insurance Plan service requirements when benefits commence through the PBGC and (iv) is a participant in the Nortel Networks Medical Plan on the date immediately prior to the date of commencement of pension benefits through the PBGC or;

- Employee will have access to the Retiree Medical Plan on the later to occur of the Termination Date or the Severance End Date, if Employee (i) participated in the previously provided (now cancelled) Investor Program under the old Capital Accumulation Retirement Program (CARP), (ii) is at least age 55 on the later to occur of the Termination Date or the Severance End Date, (iii) has ten years of service after age 40 and (iv) is a participant in the Nortel Networks Medical Plan on the date immediately prior to the later of the Termination Date or Severance End Date.

As noted in the "Introduction" above, waiving his or her entitlement to Severance Plan benefits may enable Employee to begin receiving benefits through the PBGC earlier than if Employee did not waive those benefits. Because Retiree Medical Plan benefits cannot commence until pension benefits begin through the PBGC, that decision also affects the timing of commencement of Retiree Medical Plan coverage.

However, if Employee needs the service that Employee would earn during his or her standard severance period to qualify for Retiree Medical Plan benefits or to earn the maximum subsidy for that benefit, waiving the Severance Plan benefit would mean that Employee would not qualify for that coverage or would pay a greater share of the cost of the coverage (with less of a company subsidy). Service requirements are different depending on when Employee was grandfathered for coverage so Employee would need to check Employee's individual requirements to determine whether Employee needs the service that would be earned during the severance period. All employees must reach age 55 before the Retiree Medical Plan coverage date, plus they must earn either 5 or 10 years of service to qualify for the coverage. For subsidized coverage, Employee would have to qualify under the grandfathering provisions that applied to the freezing of the Retiree Medical Plan as of December 31, 2007, and to get the maximum subsidy that is available for grandfathered benefits, Employee would need 20 or 25 years of service—depending on whether Employee qualified under a prior grandfathering of benefits that was granted in 2000 or not. So, Employee needs to consider these service issues before deciding whether it is advantageous for Employee to waive the Severance Plan benefit to begin pension benefits under the Retirement Income Plan through the PBGC and Retiree Medical Plan benefits earlier or not.

NOTE: To initiate pension benefit payments accrued under the Retirement Income Plan, Employee **must** call the PBGC (US Government agency now responsible for Nortel Networks pension plan) at **1-800-400-7242**. All pension benefits related questions should be directed to the PBGC. Questions related to the Nortel Networks Retiree Medical and the Retiree Life and Long Term Care Insurance Plans should be directed to the Nortel HR Shared Services Center at 1-800-676-4636.

(11) Retirement Income Plan ("RIP")

As noted in the "Introduction" above, waiving his or her entitlement to Severance Plan benefits may enable Employee to begin receiving benefits through the PBGC earlier than if Employee did not waive those benefits.

However, if Employee needs the service that Employee would earn during his or her standard severance period to qualify , waiving the Severance Plan benefit would mean that Employee would not qualify for that coverage or would pay a greater share of the cost of the coverage (with less of a company subsidy). Service requirements are different depending on when Employee was grandfathered for coverage so Employee would need to check Employee's individual requirements to determine whether Employee needs the service that would be earned during the severance period.

Employee needs to consider these service issues before deciding whether it is advantageous for Employee to waive the Severance Plan benefit to begin pension benefits under the Retirement Income Plan.

To initiate pension benefit payments accrued under the Retirement Income Plan, Employee **must** call the PBGC (US Government agency now responsible for Nortel Networks pension plan) at **1-800-400-7242**. All pension benefits related questions should be directed to the PBGC.

*(12)LONG TERM INVESTMENT PLAN (Investment Plan)*

If enrolled, Employee's contribution and company contribution end on Employee's Termination Date.

If Employee's account balance is more than $1,000, Employee may leave the account in the Investment Plan or may request a distribution from the Investment Plan. Statements regarding account activity and elections regarding investment options will continue to be available to the Employee if the Employee's account is not distributed. Employee will not be eligible to contribute or rollover new money into the account or take a loan from the account after Employee's Termination Date. If Employee's account balance is $1,000 or less, the account must be distributed to the Employee.

Loans from the Investment Plan become immediately due and payable on the Employee's Termination Date. Employee may initiate pay-off of Employee's loan balance by calling the Nortel Networks Long-Term Savings Service Center (Hewitt Associates LLC) at 1-800-726-0026 and requesting a payoff coupon. However, Employee will have the option to continue the 401(k) loan repayments through the Automated Clearing House (ACH) by making payments directly to Hewitt Associates LLC. Loans that are not repaid are treated as taxable distributions and may be subject to additional federal and state tax penalties.

*(13)DEFERRED COMPENSATION*

If enrolled, normally any amounts in Employee's account in the Nortel Networks U.S. Deferred Compensation Plan ("NNDP") would be distributed to Employee pursuant to the terms of the NNDP. However, due to The Filing, NNI and NNCI are unable to distribute any amounts from the NNDP at this time.

*(14)EQUITY AWARDS (STOCK OPTIONS, STOCK APPRECIATION RIGHTS ("SARs"), RESTRICTED STOCK UNITS ("RSUs") AND PERFORMANCE STOCK UNITS ("PSUs")) (if applicable)*

On February 27, 2009, Nortel obtained an order from the Canadian Court in the CCAA proceedings providing for the termination of the Nortel equity plans (the Nortel 2005 Stock Incentive Plan, As Amended and Restated, the Nortel Networks Corporation 1986 Stock Option Plan, As Amended and Restated and the Nortel Networks Corporation 2000 Stock Option Plan) and the equity plans assumed in prior acquisitions, including all outstanding equity under these plans (stock options, SARs, RSUs and PSUs), whether vested or unvested.

*(15)VACATION ENTITLEMENT*

Annual vacation accrual ends on Employee's Termination Date. Employees will be credited with their monthly vacation accrual the final month of employment regardless of Employment Termination Date. All accrued but unused vacation will be paid out in compliance with Company policy.

*(16)OTHER BENEFITS*

Some voluntary/ancillary benefits may be continued post Employment Termination Date by Employee contacting the provider (see below list of providers) directly. Any continuation of such benefits will be based upon the terms and conditions as set forth by that provider. Any other benefits not expressly extended to Employee following the Termination Date under this Agreement will end on 12:01am on the day immediately following the Termination Date.

MetLife: 1-800-GET-MET 8 (1-800-438-6388)
Wells Fargo Employee Mortgage Program: 1-800-525-3898
H&R Block Tax Preparation Program: 1-800-786-3429

*(17)END OF BENEFITS*

Any benefit not expressly extended to Employee in this Section III (B) shall cease 12:01am on the day immediately following the Termination Date.

(C)   **"Reporting" or "Non-Reporting" Insider Designation, if applicable.** If Employee has the designation of either "Reporting" or "Non-Reporting" Insider pursuant to Corporate Policy 320.28 of Nortel Networks Corporation (and under applicable Canadian/US securities legislation for Reporting Insiders), the Employee will cease to have this designation effective 12:01 a.m. the day following the Termination Date. Notwithstanding the fact that Employee will no longer have this designation, if Employee is in possession of material non-public information relating to Nortel Networks, Employee is prohibited from trading in Nortel securities (or informing another person of the material non-public information) in accordance with applicable laws. If Employee is a "Reporting" Insider, the Employee understands that s/he is required to amend his or her insider profile within 10 days of Employee's Termination Date on the Canadian System for Electronic Disclosure by Insiders (SEDI) to indicate that Employee is no longer a "Reporting" Insider of Nortel. The Employee should contact the Insider Reporting Department at phone number (905) 863-1220 and fax (905) 863-8524 for assistance in amending the SEDI profile.

(D)   **Trade Secret and Confidential Information Acknowledgement.** Employee shall have ongoing and continuing obligations to Nortel (including those specified in any agreement with Nortel that Employee has executed) which include, but are not limited to, the following:  keeping secret and confidential and not utilizing in any manner any trade secrets, proprietary or confidential information of Nortel made available to Employee during Employee's period of employment with Nortel and refraining from disclosing such information to any third party or using it for any purpose.

(E)   **Voluntary Waiver of all Benefits under the Nortel Networks Severance Allowance Plan.** By signing below, Employee acknowledges that Employee is voluntarily waiving all entitlement to any and all benefits described in the document "Nortel Networks Severance Allowance Plan" that might be available to Employee under such Plan. Further, Employee understands and has read this document and specifically those provisions in the INTRODUCTION paragraph and paragraphs 10 and 11 in Section III(B) above that discuss the timing of payment of benefits under the RIP and the Retiree Medical Plan. This waiver is granted voluntarily and with full understanding of the benefits that Employee is waiving. Employee understands that without Employee signing this waiver that Employee's benefits under the RIP and coverage under the Retiree Medical Plan cannot commence until after the end of the Employee's "severance period" that would apply to Employee under the Severance Plan, provided that Employee was entitled to benefits under the Severance Plan.  Employee shall have thirty (30) calendar days from the date of receipt of this document to sign and return the document to the HR contact address identified in Section I above.

Signature:_____   Date:_____

Printed Name:_____

**PLEASE NOTE:** If there are any discrepancies between the information in this memo and the applicable Nortel benefit plan, the actual plan document will, in all cases, govern the details of the benefit coverage and the plan administration. In accordance with each plan and/or program, Nortel reserves the right to further amend or discontinue the plan(s) and/or program(s) described in this communication at any time without prior notice to, or consent by, employees.



**United States Benefits**
**Personalized Enrollment Worksheet**

This worksheet shows your eligible Benefits selections. Your current Benefits selections are marked with a *. Before you start, please review the enrollment materials. They include details on eligibility, Benefits Earnings, tax implications, making changes and other important information.

See your enrollment materials for further details.

| Name: | Charles Barry |
| Global ID: | 0201355 |
| Date of Birth: | 06/19/1957 |
| Pay Frequency: | US Bi-weekly |
| Benefits Earnings: | $ 65800.00 |
| Event: | Annual Enrollment |
| Prepared On: | 11/01/2011 |

NOV 3 0

K. PULL...

Your current Benefit coverage (if available) is noted on pages 1, 2, 3, and 4.

## AFTER-TAX SELECTIONS

| Medical<br>(Any negative costs represent Benefit Credit income to you) | You<br>Only | You &<br>Child(ren) | You &<br>Spouse/DP | You &<br>Family |
|---|---|---|---|---|
| 80/60 PPO, Anthem | $ 25.66 | $ 55.44 | $ 76.17 | $ 114.28 |
| * 90/70 PPO, Anthem | $ 41.86 | $ 93.78 | $ 121.13 | * $ 186.86 |
| Waived Medical | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

Your Cost Per-Pay-Period: $ _____ (a)

Does your spouse/DP have access to employer-provided medical coverage elsewhere?        ___ yes ✗ no
If you choose yes, a spousal/DP bi-weekly access fee of $50 will apply.  See Enrollment Guide for additional information.

Bi-weekly Fee: $ _____ (b)

| Dental/Vision/Hearing Care | You<br>Only | You &<br>Child(ren) | You &<br>Spouse/DP | You &<br>Family |
|---|---|---|---|---|
| * Dental/Vision/Hearing, Comp | $ 5.43 | $ 10.98 | $ 11.11 | * $ 16.69 |
| Dental/Vision/Hearing, Plus | $ 10.93 | $ 22.01 | $ 22.16 | $ 33.25 |
| Dental/Vision/Hearing, Waived | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

Your Cost Per Pay Period  $ _____ (c)

| Health Care Reimbursement Account | | Minimum | Maximum |
|---|---|---|---|
| Plan not available in 2011 | | | Annual Contribution: _____ (d) |

| Dependent Care Reimbursement Account | | Minimum | Maximum |
|---|---|---|---|
| Plan not available in 2011 | | | Annual Contribution: $ _____ (e) |

**Page 1 Subtotal: Cost Per-Pay-Period**
Add the amounts shown above (a through e) in the right column of this worksheet and enter the total here.

$ _____ (f)

Highly Confidential - LTD Committee Advisor Eyes Only

Charles Barry

0201355

11/01/2011

Page 2

## AFTER-TAX SELECTIONS (continued)

### Short Term Disability

You are not eligible to receive this benefit at this time.

$ _____ (g)

### Long Term Disability

$ _____ (h)

### Core Employee Life Insurance
Core coverage is provided at no cost to you; however, there are tax implications when Benefits Earnings are greater than $50,000

50,000 Core Life Insurance

* 1x Benefits Earnings

S  0.00

$  0.00

Choosing $50,000 Core Life requires a completed Core Life Waiver Form

### Optional Employee Life Insurance

|  | Non-Smoker | Smoker |
|---|---|---|
| 1x Benefits Earnings | $  4.57 | $  4.75 |
| * 2x Benefits Earnings | $  9.14 | ^ $  9.50 |
| 3x Benefits Earnings | $ 13.71 | $ 14.26 |
| 4x Benefits Earnings | $ 18.28 | $ 19.01 |
| 5x Benefits Earnings | $ 22.78 | $ 23.69 |
| No Optional Coverage | $  0.00 | $  0.00 |

You may only retain or decrease you current coverage level during this enrollment.

$ _____ (i)

### Dependent Life Insurance - Spouse/Domestic Partner (DP)
The cost of life insurance for your spouse/DP is based on his or her age. Costs for a spouse/DP whose date of birth is on record are shown below. See Optional Spouse/DP Life insurance Costs worksheet in your enrollment materials. Calculate the cost based on how much coverage you want to purchase and enter the per-pay-period cost on line (j).

| No Coverage | |
|---|---|
| $10,000 | $  0.00 |
| $25,000 | $  0.69 |
| $50,000 | $  1.73 |
| $75,000 | $  3.46 |
| * $100,000 | $  5.19 |
| | $  6.92 |

$ _____ (j)

**Page 2 Subtotal: Cost Per-Pay-Period**
Add the amounts shown above (g through j) in the right column of this worksheet and enter the total here.

$ _____ (k)

Highly Confidential - LTD Committee Advisor Eyes Only

NNI-LTD-00006443

Charles Barry                          0201355                     11/01/2011                          Page 3

## AFTER-TAX SELECTIONS (continued)

**Dependent Life Insurance - Child(ren)**
Cost shown is the total for all Child(ren). Age limits may apply.

| | |
|---|---|
| No Coverage | $  0.00 |
| $5,000 Per Child | $  0.18 |
| $10,000 Per Child | $  0.36 |
| * $15,000 Per Child | $  0.55 |

$ _____ (l)

| Accidental Death and Dismemberment | You Only | You & Family |
|---|---|---|
| 1x Benefits Earnings | $  0.34 | $  0.61 |
| * 2x Benefits Earnings | $  0.67 | *  $  1.22 |
| 3x Benefits Earnings | $  1.01 | $  1.83 |
| 4x Benefits Earnings | $  1.34 | $  2.44 |
| 5x Benefits Earnings | $  1.67 | $  3.04 |
| No Optional AD&D Coverage | $  0.00 | $  0.00 |

You may only retain or decrease you current coverage level during this enrollment.

$ _____ (m)

**Page 3 Subtotal: Cost Per-Pay-Period**
Add the amounts shown above (l plus m) in the right column of this worksheet and enter the total here.

$ _____ (n)

**Effect on Your Pay**

Enter the total cost per-pay-period of your selections here:

$ _____ (f+k+n)

NOTE: Please double-check your selections above. These selections are final.
Please keep a copy of this completed worksheet for your personal records.  If you complete your enrollment using the Employee Self Service Enrollment Tool, please print your confirmation statement.

Highly Confidential - LTD Committee Advisor Eyes Only

| Charles Barry | 0201355 | 11/01/2011 | Page 4 |

## DEPENDENT INFORMATION

Review the information below for all your eligible dependents, even if you are not enrolling them in a Medical or Dental/Vision/Hearing Care option, so that they will have access to the Employee Assistance Program. Refer to your Benefits enrollment materials for a definition of eligible dependents. If you need to update/correct your dependent information, mark the changes below and contact HR Shared Services at ESN 355-9351, 919-905-9351, or toll-free at 1-800-676-4636.

**Relationship Code**
S = Spouse
D = Domestic partner (see NOTE below)
C = Child (until age 26)
K = Child of domestic partner

**Gender**
M = Male
F = Female

| | Name | Soc. Sec. | Relationship | Gender | Date of Birth |
|---|---|---|---|---|---|
| __Add __Delete __Change | Donna Barry | | Spouse | F | 09-14-1959 |
| __Add __Delete __Change | Kelly Barry | | Child | F | 10-26-1991 |
| __Add __Delete __Change | | | | | |
| __Add __Delete __Change | | | | | |
| __Add __Delete __Change | | | | | |
| __Add __Delete __Change | | | | | |
| __Add __Delete __Change | | | | | |
| __Add __Delete __Change | | | | | |
| __Add __Delete __Change | | | | | |
| __Add __Delete __Change | | | | | |
| __Add __Delete __Change | | | | | |
| __Add __Delete __Change | | | | | |

NOTE: Call Shared Services at ESN 355-9351, 919-905-9351, or 1-800-676-4636 if you have any questions or wish to enroll a domestic partner for Medical and/or Dental/Vision/Hearing Care coverage.

**Please do not enroll a domestic partner as a spouse; doing so constitutes fraud and will be dealt with accordingly.**

Also, if you are a smoker, it is your responsibility to identify yourself as a smoker; otherwise, your beneficiary(ies) could be denied Life insurance benefits in the future due to your falsely claiming a non-smoker status.

If you need assistance in completing your enrollment and/or updating your dependent data, please call HR Shared Services at the number above.

Redacted - Personal Information

Redacted - Personal Information

Charles Barry
4090 Old Franklinton Rd

Redacted - Personal Information

Highly Confidential - LTD Committee Advisor Eyes Only

EXHIBIT D

## Acknowledgment of Receipt of Employee Handbook

I acknowledge I have received a copy of the INS Employee Handbook dated December 1986.

I understand it is my responsibility to read and abide by the policies and procedures set forth in this handbook. Any questions I have concerning information contained in the handbook will be referred to my supervisor or Human Resources.

110646

CHARLES BARRY
Employee's Name Printed

_____
Employee's Signature

2.12.87
Date

## Employee Handbook Receipt

I acknowledge receipt of Northern Telecom's Employee Handbook.

Charles V. Barry
Employee Signature

Systems Test Tech.
Department

3/18/85
Date

Highly Confidential - LTD Committee Advisor Eyes Only

NNI-LTD-00008684

EXHIBIT D

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

———

(302) 658-9238

October 12, 2012

Charles Vincent Barry
4090 Old Fanklinton Road
Franklinton, NC 27525

Re:     *In re Nortel Networks, Inc., et. al.,* Case No. 09-10138 (KG)

Dear Mr. Barry:

I am writing on behalf of Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"). We have reviewed your request for documents and/or other information made via the Rust/Omni limited access website created in connection with the pending litigation concerning termination of the Debtors' long-term disability ("LTD") plans and employment of the Debtors' LTD employees.

As you may be aware, on September 20, 2012, the Court entered the *Order Granting Debtors' Motion for Entry of an Order (A) Establishing Discovery Procedures in Connection with the Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and the Employments of the LTD Employees and (B) Amending the Scheduling Order for Hearing on the Debtors' Process to Terminate Benefits* [D.I. 8562] (the "Order"). A copy of the Order is enclosed for your reference.

The Order sets forth certain procedures for LTD employees to obtain information from the Debtors in connection with this contested matter. The Order provides specific procedures for individual LTD employees, like yourself, to access: (1) non-confidential information (the "Non-Confidential Information") requested by the Official Committee of Long-Term Disability Participants (the "LTD Committee"); and (2) certain potentially confidential information from an individual LTD employee's personnel file (the "Individual LTD Employee Information").

Charles Vincent Barry
October 12, 12012
Page 2

In addition to the Non-Confidential Information and Individual LTD Employee Information which will be accessible through the website, the Order also permits an individual LTD employee, like yourself, to submit supplemental written document requests to the Debtors for documents related to the pending litigation that do not otherwise constitute Non-Confidential Information or Individual LTD Employee Information (each a "Supplemental Document Request") on or before October 15, 2012, and that the Debtors reserve the right to object to such Supplemental Documents Requests.[1]  The Order also provides that the Debtors "shall not be required to respond to requests deemed to constitute requests for admission and/or interrogatories submitted by individual LTD employees."

The Debtors are treating any Supplemental Document Requests made by you via the limited access website as a formal request for the production of documents directed to the Debtors, pursuant to Rule 34 of the Federal Rules of Civil Procedure (the "Civil Rules") and Rule 7034 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Enclosed with this letter are the Debtors' responses and objections to your Supplemental Document Requests, pursuant to Rule 9014 of the Bankruptcy Rules, which are being served upon you.

Elliot Greenleaf, counsel to the LTD Committee, is maintaining the limited access website.  Please contact Theresa Snow at Elliot Greenleaf with any questions regarding access to the website and the documents requested.  Ms. Snow can be reached via telephone at 302-384-9409 or via email at TMS@elliottgreenleaf.com.

Sincerely yours,

Ann C. Cordo

ACC/clh

Enc.

---

[1]    Per the terms of the Order, making Supplemental Document Requests shall "constitute an agreement by the LTD Employee to submit to document discovery requests by the Debtors."

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
                       :

*In re*                            :      Chapter 11

Nortel Networks Inc., *et al.*,[1]       :      Case No. 09-10138 (KG)

            Debtors.      :      Jointly Administered

                       :

                       :
------------------------------------------------------------X

## DEBTORS' RESPONSES AND OBJECTIONS TO
## REQUEST FOR PRODUCTION OF DOCUMENTS OF CHARLES BARRY
## DIRECTED TO THE DEBTORS

Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), by their undersigned attorneys, hereby respond pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to the *Request for Production of Documents Directed to the Debtors* (the "Supplemental Document Requests"), as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

*The Debtors' general and specific responses and objections to the Supplemental Document Requests herein are subject to the following reservations of rights:*

1) These objections are based upon information now available to the Debtors and are made without in any way waiving or intending to waive but, on the contrary, intending to reserve and reserving: (a) the right to object on any ground at any time to a demand for any further response to the requests or any other discovery request; and (b) the right at any time to revise, supplement, withdraw, correct or clarify these responses and objections.

2) Any responses by the Debtors shall not be deemed or construed in any way to be an adoption, admission or agreement by the Debtors of or to any such definition or term used in the Request, or the materiality, admissibility or relevance thereof.

3) The Debtors reserve all objections to the use of these responses and of any documents or electronically stored information ("ESI") the Debtors produce. All such objections may be interposed by the Debtors at any hearing or other court appearance, or as otherwise required by the Order, the applicable rules or any other order of the Court.

4) Insofar as the intentional production of any document or ESI by the Debtors pursuant to the Request may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a limited waiver with respect to that particular document or ESI only. Any inadvertent production of any document or ESI shall not be deemed or construed to constitute a waiver of any privilege or right of the Debtors, and the Debtors reserve their right to demand that you return to them any such document or ESI and all copies thereof.

5) The Debtors reserve the right to redact from any documents produced pursuant to the Request any confidential research, development, commercial, financial, trade secret or personally sensitive information not relevant to the subject matter of this contested matter.

*The Debtors hereby respond and object to the Supplemental Document Requests as follows:*

1) The Debtors object generally to each document request in the Supplemental Document Requests to the extent that it: (i) purports to impose obligations beyond those required or permitted by the Civil Rules, the Bankruptcy Rules or the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), or that exceeds the scope of the Order or of any applicable order entered by the Court; (ii) seeks information, documents or ESI that are not relevant to this contested matter nor reasonably calculated to lead to the discovery of admissible evidence; (iii) is vague, ambiguous, overbroad, unduly burdensome, harassing or oppressive; (iv) seeks information from outside the time period relevant to this contested matter; (v) requires that the Debtors draw legal conclusions in producing certain documents; (vi) calls for the production of documents or ESI already in the possession of the LTD Committee or that is otherwise available from public sources including documents that are on file with the Court; (vii) seeks documents or ESI that are protected from disclosure by the attorney-client privilege, the work product doctrine, a joint defense or common interest privilege, a

2

right to privacy pursuant to the Health Insurance Portability and Accountability Act
Privacy Rule ("HIPAA") or any other applicable privilege or immunity from discovery,
or whose disclosure is prohibited by any law, regulation or order of any state, the United
States or any other country or jurisdiction; and (viii) seeks the production of documents
or ESI from sources that are not reasonably accessible because of undue burden or cost.

2) Subject to the foregoing general objections[2], the Debtors have previously produced or
will produce to the LTD Committee for posting to the limited access website (to the
extent not deemed Confidential or Highly Confidential) any reasonably accessible, non-
privileged documents in the Debtors' possession, custody or control responsive to the
following Supplemental Document Requests:

- All documentation/contracts/HR infoPlan Summaries for the date of my being
  hired in 1985

- All documentation/contracts/Plan Summaries for the year I went disabled, 1999,
  the years I went short term disabled, 1996, 1997, 1998.

3) The Debtors specifically object to the following Supplemental Document Requests on the
grounds that the information the requests seek is not relevant to this contested matter nor
reasonably calculated to lead to the discovery of admissible evidence:

- I request all of my HR requests/tickets during short term disablity, 1996 until the
  present.

- I request all documentation/HR requests/tickets/etc. when I requested to access
  funds from my 401k from 1998 to the present.

4) The Debtors specifically object to the following Supplemental Document Requests on the
grounds that they are vague and ambiguous, and/or the Debtors are unable to identify
what is being requested:

- I request all documentation pertaining to my disability from Nortel, Prudential,
  and Cigna.

5) The Debtors specifically object to the following Supplemental Document Requests on the
grounds that they are overbroad in time and scope and unduly burdensome:

- I request all documentation pertaining to my disability from Nortel, Prudential,
  and Cigna.

- I request all of my HR requests/tickets during short term disablity, 1996 until the
  present.

---

[2] In addition, the Debtors incorporate by reference the General and Specific Objections set forth in the Debtors'
Responses and Objections to the Official Committee of Long Term Disability Plan Participants' Request for
Production of Documents Directed to Debtors, dated August 20, 2012.

- The above requests are not limited to documentation but is to also to include any phone conversations with Nortel/ HR/Prudential/Cigna.

6) To the extent the Request includes requests for documents or information from Prudential Disability Management Services and/or Cigna, or any affiliates of Prudential or Cigna, the Debtors will provide no further response to such requests in this letter as such requests are not directed to the Debtors.

7) Per the terms of the Order, the Debtors need not respond to any request deemed to constitute requests for admission or interrogatories – as opposed to a request for the production of documents – and therefore will provide no further response to such requests in this letter.

*[Remainder of page intentionally left blank.]*

4

Dated:  October 12, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

*The Debtors' general and specific responses and objections to the Supplemental Document Requests herein are subject to the following reservations of rights:*

1) These objections are based upon information now available to the Debtors and are made without in any way waiving or intending to waive but, on the contrary, intending to reserve and reserving: (a) the right to object on any ground at any time to a demand for any further response to the requests or any other discovery request; and (b) the right at

right to privacy pursuant to the Health Insurance Portability and Accountability Act Privacy Rule ("HIPAA") or any other applicable privilege or immunity from discovery, or whose disclosure is prohibited by any law, regulation or order of any state, the United States or any other country or jurisdiction; and (viii) seeks the production of documents or ESI from sources that are not reasonably accessible because of undue burden or cost.

2) Subject to the foregoing general objections[2], the Debtors have previously produced or will produce to the LTD Committee for posting to the limited access website (to the extent not deemed Confidential or Highly Confidential) any reasonably accessible, non-privileged documents in the Debtors' possession, custody or control responsive to the following Supplemental Document Requests:

- All documentation/contracts/HR infoPlan Summaries for the date of my being hired in 1985

- All documentation/contracts/Plan Summaries for the year I went disabled, 1999, the years I went short term disabled, 1996, 1997, 1998.

3) The Debtors specifically object to the following Supplemental Document Requests on the grounds that the information the requests seek is not relevant to this contested matter nor reasonably calculated to lead to the discovery of admissible evidence:

- I request all of my HR requests/tickets during short term disablity, 1996 until the present.

- I request all documentation/HR requests/tickets/etc. when I requested to access funds from my 401k from 1998 to the present.

4) The Debtors specifically object to the following Supplemental Document Requests on the grounds that they are vague and ambiguous, and/or the Debtors are unable to identify what is being requested:

- I request all documentation pertaining to my disability from Nortel, Prudential, and Cigna.

5) The Debtors specifically object to the following Supplemental Document Requests on the grounds that they are overbroad in time and scope and unduly burdensome:

- I request all documentation pertaining to my disability from Nortel, Prudential, and Cigna.

- I request all of my HR requests/tickets during short term disablity, 1996 until the present.

---

[2] In addition, the Debtors incorporate by reference the General and Specific Objections set forth in the Debtors' Responses and Objections to the Official Committee of Long Term Disability Plan Participants' Request for Production of Documents Directed to Debtors, dated August 20, 2012.

- The above requests are not limited to documentation but is to also to include any phone conversations with Nortel/ HR/Prudential/Cigna.

6) To the extent the Request includes requests for documents or information from Prudential Disability Management Services and/or Cigna, or any affiliates of Prudential or Cigna, the Debtors will provide no further response to such requests in this letter as such requests are not directed to the Debtors.

7) Per the terms of the Order, the Debtors need not respond to any request deemed to constitute requests for admission or interrogatories – as opposed to a request for the production of documents – and therefore will provide no further response to such requests in this letter.

*[Remainder of page intentionally left blank.]*

4

Dated:  October 12, 2012
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

5



**CHARLES BARRY**

Has successfully completed the Service Plus:
Beyond Customer Expectations program.

signed

**NORTHERN TELECOM INC.**
organization

**MARCH 29, 1990**
date



# Certificate of Achievement

northern telecom  and  BNR

certify that

**Chuck Barry**

has participated in and has completed

# Excellence!

through

**Continuous Improvement**

Instructor **Lori Hoover**

Instructor **Debbie Morrow**

Instructor **Roy Alfred**

**May 21, 1992**
Date



# Northern Telecom Inc.

*This certifies that*

## Charles Barry

*has successfully completed   8   hours in*

## Assertive Communication

*and is hereby granted this certificate of completion*

this __11th__  day of __December__ , 19 __91__

_____
Instructor

_____
Leadership Development

# NEA's Read Across America

## CERTIFICATE OF APPRECIATION

Presented to

*Chuck Booth*

For generous support of
NEA's Read Across America Program

On this the __1st__ day of __March__, 2002

*Bob Chase*

Bob Chase, NEA President

*Amy J. Heyer*

**nea**

NATIONAL EDUCATION ASSOCIATION
WWW.nea.org

# NORTH CAROLINA STATE UNIVERSITY



PRESENTS THIS CERTIFICATE TO

## CHARLES V. BARRY

FOR PARTICIPATION IN THE

Information Systems Education Seminar

CLIENT/SERVER OVERVIEW

OCTOBER 20, 1993



DIRECTOR OF CONTINUING EDUCATION
AND PROFESSIONAL DEVELOPMENT

A CONTINUING EDUCATION/PROFESSIONAL DEVELOPMENT PROGRAM



ISE PROGRAM ADVISOR

# NORTH CAROLINA STATE UNIVERSITY



PRESENTS THIS CERTIFICATE TO

## *CHARLES V. BARRY*

### FOR PARTICIPATION IN THE

### Information Systems Education Seminar

### CLIENT/SERVER DESIGN AND IMPLEMENTATION

### JANUARY 31 - FEBRUARY 1, 1994

DIRECTOR, CONTINUING EDUCATION
AND PROFESSIONAL DEVELOPMENT

ISE PROGRAM ADVISOR

William L. Scotty

A CONTINUING EDUCATION/PROFESSIONAL DEVELOPMENT PROGRAM

**nt northern telecom**

... for the Switching Division

... Plan

General Manager Operations
Switching Division



General Manager Operations
Switching Division



General Manager Operations
Switching Division

**nt**
northern
telecom

**Presented to   Charles V. Barry**

in appreciation of your

**Employee Suggestion Plan**

achievements for the

**Customer Engineering Organization**

*[signature]*

**Director Customer Engineering**

**nt** northern telecom

# Presented to  Charles B. Barry

## in appreciation of your
## Employee Suggestion Plan
## achievements for the
## Customer Engineering Organization

Director Customer Engineering

# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9238

October 8, 2012

**BY FIRST-CLASS MAIL**

Charles Vincent Barry
4090 Old Fanklinton Road
Franklinton, NC 27525

Re:    *In re Nortel Networks, Inc., et. al.*, Case No. 09-10138 (KG)

Dear Mr. Barry:

On behalf of Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), enclosed please find the Debtors' First Set of Requests for the Production of Documents which are being served upon you pursuant to the *Order Granting Debtors' Motion for Entry of an Order (A) Establishing Discovery Procedures in Connection with the Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and the Employments of the LTD Employees and (B) Amending the Scheduling Order for Hearing on the Debtors' Process to Terminate Benefits*, entered as of September 20, 2012 [D.I. 8562], and your agreement to submit to discovery requests by the Debtors.

In accordance with Rule 34 of the Federal Rules of Civil Procedure, you are required to respond in writing to these requests within 30 days of service, which means on or before November 7, 2012. If you will be unable to respond in writing within 30 days, please contact me prior to October 31, 2012 to discuss further.

Sincerely,

Ann C. Cordo

ACC/clh
Enc.

*EXHIBIT E*

*# REQUEST FOR LTD*
*# DOCTOR STATMENTS*
*# MEDICAL DIAGNOSIS, PROGNOSIS*

# N⦿RTEL
# NETWORKS

**Nortel Health Services**
**Northern Telecom**
**4001 East Chapel Hill-Nelson Hwy**
**P.O. Box 13010**
**Research Triangle Park, NC 27709-3010**
**Mailstop 351006**
**Tel   919-992-2651 (ESN 352) or 800-949-8190**
**Fax   919-905-5790 (ESN 355) or 877-992-3702**

http://47.119.161.120./aralia

**Twyla Cole, RN**
Disability Case Manager

Date:  February 23, 1999

Charles Barry
4090 Old Franklinton Rd
Franklinton, NC 27525

Dear Charles,

I hope you are having a good day.  As promised, enclosed is a copy of the LTD packet submitted and mailed to CIGNA on **February 23, 1999**.  As indicated per our discussion, CIGNA determines claim approval or denial.  Please continue to call the Disability Case Management weekly status line (1-800-949-8190 option #2) until your Short Term Disability ends on **March 15, 1999.**

If you have further questions regarding LTD, please contact **CIGNA** at 1-800-352-0611.  Your CIGNA case manager will be **Jeff Garner , Ext. 8709**.

Take Care!

Sincerely,

*C. Simmons for*

Twyla Cole, RN
Disability Case Manager

*How the world shares ideas.*



*How the world shares ideas.*

| | |
|---|---|
| Date | **February 23, 1999** |
| To | **Jeff Garner** |
| | **CIGNA** |
| | **Special Risk Operations** |
| | **12225 Greenville Ave., Ste. 655** |
| | **Dallas, TX  72543** |
| Copy | **Charles Barry** |
| From | **Twyla Cole, RN** |
| | **Disability Case Manager** |
| Subject | **LTD for <u>Charles Barry</u>** |

Social Security Number: **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**
Birth Date: **6-19-57**
Diagnosis: **(1) Chronic Back Pain/Nerve Damage; Bilateral Hip Replacements**
            **(2)Post Laminectomy Syndrome; Avascular Necrosis of Femoral Heads**
First Day Out Of Work: **9-14-99**
Hire Date: **3-18-85**
Occupation: **Sr Engineer**

Enclosed:
- **Medical Information**

Via fax/Fedex upon receipt:
- **Job Profile**

Thanks, if I can assist in any way don't hesitate to call me **(919) 905-5990.**

Sincerely,

*C. Simmons for*

Twyla Cole, RN
Disability Case Manager

**MEMO**

# NORTEL

## LTD WORKSHEET

**TO:**

Jeff Garner
CIGNA, Special Risk Operations
12225 Greenville Ave., Ste. 655
Dallas, Texas 72543
Ph: 1-800-352-0611 ext. 8709
Fax: 1-972-907-7194

**FROM:**

Twyla Cole, RN
NORTEL
4001 E. Chapel Hill Nelson Hwy.
P.O. Box 13010
RTP, NC 27709 MS 351006
Ph: (919) 905-5990
Fax: (919) 905-5790 or Toll Free Fax: 1-877-992-3702

**SUBJECT:** LTD Application

EMPLOYEE NAME          *Charles Barry*

SOCIAL SECURITY #      *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*

BUSINESS UNIT(LOCATION)   *Nortel / PPBCS*

FIRST DAY OUT OF WORK:      *9-14-98*

LAST DAY OF PAID STD:       *3-15-99*

| VOCATIONAL REHABILITATION: | | |
|---|---|---|
| _____ | Recommend | |
| _____ | **NOT** Recommended | |
| _____ | Interest Letter, Only | |
| _____ | W/C Rehab | |

| LTD RECOMMENDATION: | | |
|---|---|---|
| _____ | Approval | |
| _____ | IME prior to approval | |
| _____ | **NOT** Recommended | |

**COMMENTS:** _____

### HRINFO CENTER

TYPE OF LTD PLAN ELECTED:       _____ 50%
                                ✓ 70%

| MONTHLY PREMIUMS: | | |
|---|---|---|
| | Medical | *84.32* |
| | Dental | *15.76* |
| | Employee Life | *13.85* |
| | Spouse Life | *2.73* |
| | Child Life | *1.24* |
| | TOTAL | *117.90* |

BENEFITS ADMINISTRATOR:   **HR INFOCENTER**      PHONE:   **1-800-676-4636**

NT MONITOR   :   _____      PHONE   1-800-949-8190   DATE_____

REVISED 10/5/94

# NØRTEL

**EMPLOYEE** *Charles Barry* **BUS. UNIT** _____ **DEPT. #** _____

## PROCEDURE

1. In order to request LTD benefits, it is your responsibility to timely complete and return the following LTD forms:

   - *Reimbursement Agreement.* Complete this form and sign and have witnessed. This form tells CIGNA if you want your LTD benefit reduced or not while you pursue social security benefits. Return with your LTD package.

   - *Attending Physician's Statement of Disability Group Benefits.* Take this form to your treating physician to complete. CIGNA must be provided with proof of disability, from the day you first missed work due to disability through to present. If several physicians are treating you or have treated you for your disability conditions, request additional statements for these physicians to complete. Return with your LTD application.

   - *Group Long Term Disability Claim Form.* Legibly complete, date, and sign the Claimant's Statement Sections. Return this form with your LTD package.

   - *W-4S Request for Federal Income Tax Withholding From Sick Pay.* Complete the upper portion of this form by indicating the amount of Federal Income Tax you wish to have withheld from your LTD benefit. There is a $88.00 monthly minimum. Sign and date this section of the form. Return the completed form with your LTD application. You may request not to have federal income tax withheld by entering 0 in the appropriate space.

   - *Disability Questionnaire.* Complete this form and return with your LTD application.

2. Return the above forms (Your LTD package) and a copy of your birth certificate or driver's license to Health Services by *2/13/99*. Failure to return the forms by this date can result in a lapse between the expiration of your STD benefits and the onset of your LTD benefits. Failure to return your LTD packet can jeopardize your employment status.

3. You and Health Services will be notified by mail from CIGNA upon your approval/denial of LTD benefits. If your LTD claim is approved, CIGNA will send your first and subsequent LTD checks to you at the address indicated on your LTD application.

4. CIGNA determines LTD approval and continuation. Therefore, it is imperative that you respond promptly to CIGNA's requests for additional information. Failure to do so could result in the suspension or termination of LTD benefits.

## BENEFIT ENTITLEMENT

1. Outlined below are the monthly Medical, Dental, Vision, Hearing, Supplemental and Spousal and Dependent Life premiums that are currently being deducted from your short term disability benefits, and must be continued through your disability period to prevent disability discontinuance. Health Care _94.32_ + Life Insurance _13.85_ + Spousal Life _2.73_ + Dependent Life _1.24_ = $ _117.90_ Total. DENTAL/VISION/HEARING _15.76_ +

RECEIVED
Revised 4/29/94

**GROUP LONG TERM DISABILITY**

Connecticut General Life Insurance Company
Insurance Company of North America
Life Insurance Company of North America
INA Life Insurance Company of New York
CIGNA companies



70%

| TO BE COMPLETED BY EMPLOYER | | |
|---|---|---|
| Name of Employee: **Charles Barry** | Social Security Number **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** | Account Number **2059005** |
| Date Hired **3-18-85** | Effective date of Employee's LTD Coverage with CIGNA Co. **3-18-85** | Was employee's LTD insurance issued on the basis of a statement of physical condition? ☐ Yes ☑ No   If yes, attach copy. |
| Basic Earnings **$1265.38 wk $5483.33 Mo.** | Date of Last change in earnings **3.16.98** | Last Date(s) Worked **9-11-98** hrs. **8** | Date(s) Returned to Work **UNKNOWN** |
| Has employee been terminated? ☐ Yes ☑ No | | If yes, Date | Reason |
| Percentage of employee contribution toward disability premium (see Internal Revenue Code Section 105(a) and Regulations thereunder) ____% | Employee's contributions were made on: ☑ Pre- or ☐ Post-Tax basis | Premium paid thru date **3-15.99** |
| Was salary continue beyond last day worked? ☑ Yes ☐ No | If yes, Weekly Amount $ **1265.38** | Paid Thru **3-15.99** |
| Has employee received short term benefits? ☑ Yes ☐ No | If yes, Weekly Amount $ **1265.38** / $ **1138.94** 90% 20 wks 1138.84 6 wks | From **9.14.98** Thru **3.15.99** |
| Has employee received state disability benefits? ☐ Yes ☑ No | If yes, Weekly Amount $ | From Thru |
| Has employee filed a Workers' Compensation claim? ☐ Yes ☑ No | If yes, Weekly Amount $ | From Thru |
| Name and address of Workers' Compensation Carrier | | |
| Is employee eligible for Group Pension? ☐ Yes ☑ No | If yes, Monthly Amount $ | Contribution to pension ____% | Effective | Is this a ☐ Disability Pension ☐ Early Retirement ☐ Normal Retirement |
| List any other source of income to which the employee is entitled as a result of this disability | | |
| Occupation **SR ENG** | | Attach job description if available; if not, describe job duties |

Please check the appropriate blocks:
☑ Exempt  ☐ Management  ☐ Supervisory  ☐ Union Local # ____  ☑ Salaried  ☑ Full time  ☐ Part Time
☐ Non-exempt  ☑ Non-Management  ☑ Non-supervisory  ☑ Non-Union  ☐ Hourly  Hrs/wk **40**

Was employee's job primarily ☐ sedentary or ☐ did it involve considerable physical activity?
As closely as possible, please estimate the percent of time spent:
Sitting ____  Walking ____  Stooping ____  Pushing ____
Standing ____  Climbing ____  Bending ____  Lifting* ____
* If job duties require lifting or carrying, indicate average and maximum weights handled.

Remarks

RECEIVED JAN 20

| Employer: **Nortel Networks** | Division **NA Info Center** |
|---|---|
| Address **P.O. Box 13010  RTP, NC  27709** | Telephone Number **800/676-4636** |
| Signature of authorized representative **Tammy Baxter** | Date **1-20-99** |

**GROUP LONG TERM DISABILITY**

Connecticut General Life Insurance Company
Insurance Company of North America
Life Insurance Company of North America
INA Life Insurance Company of New York
CIGNA companies



Any person who knowingly and with intent to defraud any insurance company or other person files a statement containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

**TO BE COMPLETED BY EMPLOYEE**
**PLEASE TYPE OR PRINT - BE SURE TO ANSWER ALL QUESTIONS - FAILURE TO DO SO MAY DELAY YOUR CLAIM**

Name of Employee: Charles Vincent Barry
Social Security Number: 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
Sex: ☒ M  ☐ F
Date of Birth: 6-19-57

Mailing Address (Address where you may be reached during the next six months):
4090 Old Franklinton Rd., Franklinton, NC, 27525
Zip Code
Phone Number (Inc. Area Code)

Name of spouse: Donna Marie
Spouse's Date of Birth: 9-14-59
Is spouse employed? ☒ Yes ☐ No  If yes, ☒ Full Time ☐ Part Time
Spouse's Social Security Number: 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

Do you have children under age 18? ☒ Yes ☐ No
Do you have children age 18-19, who are full time students in elementary or secondary schools? ☐ Yes ☒ No
Do you have any handicapped children (regardless of age)? ☐ Yes ☒ No
If you answered yes to any of the above questions, please list names and dates of birth

Name: Kelly Nichole Barry
Date of Birth: 10-26-91

List states in which you may be liable for filing tax returns: N.C.

Date of accident or beginning of sickness: 3-94
Date you became totally disabled: 9-14-98 (when I stopped...)
Date you plan to return to work: Depends on treatment

Describe in your own words what is wrong with you (if accident, describe circumstances):
Due to severe pain I am in a horizontal position at least 20 hrs a day.

Name(s) of Attending Physician(s): Alan Spanos
Address and Phone Number: 200-A Franklin Sq, 829 E. Franklin St, Chapel Hill, NC, 27514 (919) 967-2927
Date first consulted: 1/30/98

Name(s) of Hospital(s): Durham Regional, N. Dukes St., Durham, NC.
Address: Surgeries
Date Entered - Date Discharged: 2-95, 3-95, 3-96

Have you applied for Social Security Benefits? ☐ Yes ☒ No  I have an interview scheduled 2/17/99
If yes, attach a copy of your Social Security notice for you and your dependents or a copy of your Social Security denial. If you have not applied, please do so as soon as possible. If you have not received a determination, please attach a copy of your receipt for application.

Are you a Veteran? ☐ Yes ☒ No  If yes, have you applied for VA benefits for this disability? ☐ Yes ☐ No
Please attach a copy of your VA Disability Award.

Are you receiving or eligible to recieve:

| | | $ Amount / Frequency | Date Began | Date Paid Thru |
|---|---|---|---|---|
| ☐ Yes ☒ No | Salary Continuance | | | |
| ☐ Yes ☒ No | State Disability Benefits | | | |
| ☐ Yes ☒ No | Group Disability Income | | | |
| ☐ Yes ☒ No | Workers' Compensation | | | |
| ☐ Yes ☒ No | Pension Benefits | | | |
| ☐ Yes ☒ No | No=Fault Auto Disability Insurance | | | |
| ☐ Yes ☒ No | Any Other Disability Income (Please identify) | | | |

**I CERTIFY THAT THE FOREGOING INFORMATION IS TRUE AND CORRECT.**
Signature of Employee: [signature]
Date: 1-27-99

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**AUTHORIZATION TO RELEASE INFORMATION**

I authorize any Health Care Provider, Insurance Company, Employer, Person or Organization to release any information regarding medical, dental, mental, alcohol or drug abuse history, treatment or benefits payable, including disability or employment related information, to any CIGNA company, the Plan Administrator, or their employees and authorized agents for the purpose of validating and determining benefits payable. This data may be extracted for use in audit or statistical purposes. I understand that I or my authorized representative will receive a copy of this authorization upon request. This authorization or a photostatic copy of the original shall be valid for the duration of the claim.

Signature of Employee: [signature]
Date: 1-27-99

# *Disability Claim*

Connecticut General Life Insurance Company
Life Insurance Company of North America
Insurance Company of North America
INA Life Insurance Company of New York
Subsidiaries of CIGNA Corporation



CIGNA

Any person who knowingly and with intent to defraud any insurance company or other person files a statement containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

## ATTENDING PHYSICIAN'S STATEMENT OF DISABILITY (PLEASE PRINT)

The insured is responsible for having this form completed by any/all treating physician(s), without expense to the company. We must have comprehensive medical information in order to evaluate the insured's claim for Disability Benefits.

### THIS SECTION IS TO BE COMPLETED BY THE PATIENT/INSURED

1. NAME **Charles Vincent Barry**

EMPLOYER NAME **NORTEL**

ADDRESS **4090 Old Franklinton Rd.**

SOCIAL SECURITY NUMBER **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**

CITY **FRANKLINTON** STATE **NC** ZIP CODE **27525**

GROUP POLICY NUMBER **911**

TELEPHONE **(919) 528-3868** OCCUPATION **S/W ENG.**

DATE OF BIRTH Month **6** Day **19** Year **57**

### THE REMAINING SECTIONS OF THIS FORM ARE TO BE COMPLETED BY YOUR PHYSICIAN(S)

1. **DIAGNOSIS (including any complications)**

(a) Diagnosis (Include ICD-9 or DSM-IV Code) **722.83 POST LAMINECTOMY SYNDROME**
**733-42 AVASCULAR NECROSIS OF FEMORAL HEADS**

(b) Subjective symptoms **LOW BACK AND BILATERAL LEG PAIN**

(c) Objective findings (Please attach copies of current X-rays, EKG's, Laboratory Data and any clinical findings as applicable.) **SEVERE RESTRICTION OF LUMBAR AND HIP MOBILITY**

(d) Are symptoms consistent with the clinical findings? ☒ Yes ☐ No, explain

(e) Is illness work related? ☐ Yes ☒ No

(f) If Pregnancy please indicate: LMP: _____ EDC: _____ Actual Delivery: _____

2. **DATES OF TREATMENT**

- Date patient first visited you for this accident/illness: Month **1** Day **30** Year **98**

- Date patient first unable to work due to this accident/illness: Month **9** Day **14** Year **98**

- List frequency & date(s) patient was examined for this accident/illness: **See attached**

- Date of last visit: Month **1** Day **27** Year **99**

3. **NATURE OF TREATMENT (including Surgery & Medications prescribed, if any)**

Hospitalization on: Month ___ Day ___ Year ___ THROUGH Month ___ Day ___ Year ___

- Surgery on: Month ___ Day ___ Year ___ Type of Surgery: _____

Name and Address of Hospital: **SEE PREVIOUS RECORDS FOR SURGERY**

- Medications-type/dosage: **SERZONE 100MG BID. OXYCONTIN 560MG/DAY NEURONTIN 300MG ɪɪɪ TID PHENERGAN 25MG ½-ɪ q6h**

- Other treatment methods (describe) **TAGAMET 200MG ɪ-ɪɪ q4h RN**

**4. PHYSICAL LIMITATIONS / IF APPLICABLE:** In an 8 hour day is your patient able to:

| | 0 hours | up to 2.5 hours | up to 5.5 hours | greater than 5.5 hours |
|---|---|---|---|---|
| Climb | ☑ | ☐ | ☐ | ☐ |
| Balance | ☐ | ☐ | ☐ | ☐ |
| Stoop | ☐ | ☐ | ☐ | ☐ |
| Kneel | ☐ | ☐ | ☐ | ☐ |
| Crouch | ☐ | ☐ | ☐ | ☐ |
| Crawl | ☐ | ☐ | ☐ | ☐ |
| Reach | ☐ | ☐ | ☐ | ☐ |
| Walk | ☐ | ☐ | ☐ | ☐ |
| Sit | ☐ | ☐ | ☐ | ☐ |
| Stand | ☐ | ☐ | ☐ | ☐ |

*less than 2 hours*

**Cardiac – If applicable** (American Heart Association)

☐ Class 1 – No Limitation
☐ Class 2 – Slight Limitation
☐ Class 3 – Marked Limitation
☐ Class 4 – Complete Limitation

*NA*

Blood Pressure (last visit) _____ / _____

Please indicate the maximum level of ability (sedentary, light, medium, heavy) of your patient to:

_10_ Lift    _10_ Carry    _10_ Push    _10_ Pull

Sedentary = 10 lbs. maximum, walking occasionally. Light = 20 lbs. maximum, 10 lbs. frequently.
Medium = 50 lbs. maximum, 25 lbs. frequently, up to 10 lbs. constantly. Heavy = 100 lbs. maximum, 50 lbs. frequently, 20 lbs. constantly.

**5. MENTAL IMPAIRMENT/IF APPLICABLE:** Please complete the following (incomplete information will delay claim processing):

Axis I: _____

II: _____ *NA* _____

III: _____

IV: _____

V: Current GAF: _____ Highest GAF in past year: _____

Additional Comments: _____

**6. COMPETENCY**
Do you believe this patient is competent to endorse checks and direct the use of the proceeds thereof?    ☑ Yes    ☐ No

**7. EXTENT OF DISABILITY**

| | Patient's Regular Occupation | | | | Any Occupation | | | |
|---|---|---|---|---|---|---|---|---|
| When was patient able to go to work? | Mo. | Day | 19 | | Mo. | Day | 19 | |

*NA*

**8. REHABILITATION**

(a) Is patient a suitable candidate for further PHYSICAL / PSYCHOLOGICAL rehabilitation services?    ☐ Yes    ☐ No

If no, explain: _MAYBE LATER, AFTER SPINAL PUMP IMPLANTED_

(b) Can present job be modified to allow for handling with impairment?    ☐ Yes    ☑ No

(c) Is patient a suitable candidate for VOCATIONAL rehabilitation services?    ☐ Yes    ☑ No  _NOT YET_

If no, when: _SEE ABOVE_

**9. REMARKS**

DATE _1-27-99_    PRINT NAME (ATTENDING PHYSICIAN) _A. SPANOS_    SIGNATURE _Spanos_    DEGREE _MD_

TELEPHONE NUMBER _(919) 967 2997_    PROVIDER TAX ID NUMBER _240 - 31 - 186_

STREET ADDRESS _1829 E. FRANKLIN #200A_

CITY OR TOWN _CHAPEL HILL_    STATE (OR PROVINCE) _NC_    ZIP CODE _27514_

Account Activity Summary

Blue Ridge Clinical Associates
200-A Franklin Square, 1829 E. Franklin Street
Chapel Hill, NC  27514

(919) 967-2927



Barry, Charles V.
4090 Old Franklinton Road
Franklinton      NC 27525

Chart # 1251

Insurer PP

| DOS | SEQ# | PROV | DESCRIPTION | CHARGE | PAYMENT | BALANCE |
|-----|------|------|-------------|--------|---------|---------|
| 01/30/98 | 8724 | AS | 99205 Comp.          V      m | 250.00 | 250.00 | 0.00 |
| 02/05/98 | 8793 | AS | 99213 Expanded           V | 60.00 | 60.00 | 0.00 |
| 02/09/98 | 8857 | DM | 99204 Comprehensive      V | 150.00 | 150.00 | 0.00 |
| 02/13/98 | 8914 | DM | 97112,97010,97014,97260 V | 65.00 | 65.00 | 0.00 |
| 02/25/98 | 9073 | DM | 97010,014,260     Ck#704 | 65.00 | 65.00 | 0.00 |
| 03/05/98 | 9203 | AS | 99212 Focused | 45.00 | 45.00 | 0.00 |
| 03/05/98 | 9205 | DM | 97010,014,97260   Ck#713 | 45.00 | 45.00 | 0.00 |
| 03/05/98 | 9206 | MS | 99070 PRL045 | 12.00 | 12.00 | 0.00 |
| 03/05/98 | 9207 | MS | 99070 EML 004 | 10.00 | 10.00 | 0.00 |
| 03/11/98 | 9269 | DM | Prepayment | | 20.00 | -20.00 |
| 03/13/98 | 9375 | DM | 97010,014,260,139    V | 65.00 | 45.00 | 20.00 |
| 03/13/98 | 9393 | MS | 99070 lacrosse ball | 4.00 | 4.00 | 0.00 |
| 03/13/98 | 9394 | MS | 99070 Cpld Pack | 6.00 | 6.00 | 0.00 |
| 03/23/98 | 9526 | AS | 99214 Detailed       V | 90.00 | 90.00 | 0.00 |
| 03/23/98 | 9566 | DM | 97010,97014,97260,97139 V | 65.00 | 65.00 | 0.00 |
| 05/04/98 | 10257 | DM | 99211,010,014,260  Ck#764 | 65.00 | 65.00 | 0.00 |
| 05/07/98 | 10380 | AS | 99215 Comprehensive  #767 | 135.00 | 135.00 | 0.00 |
| 05/20/98 | 10486 | AS | No Show | 40.00 | | 40.00 |
| 06/05/98 | 10804 | AS | 99215 Comprehensive  #787 | 150.00 | 150.00 | 0.00 |
| 06/05/98 | 10805 | AS | S#10486        Ck#787 | | 40.00 | -40.00 |
| 06/23/98 | 11076 | AS | S#10804 & 10804 NSF | 0.00 | -190.00 | 190.00 |
| 06/23/98 | 11077 | JM | S#11076 Bank Fee | 20.00 | | 20.00 |
| 06/23/98 | 11078 | AS | S#11076 Reentered | | 190.00 | -190.00 |
| 07/09/98 | 11310 | AS | No Show Sick No Char | | | 0.00 |
| 08/07/98 | 11535 | AS | 99215 Comprehensive  #847 | 135.00 | 135.00 | 0.00 |
| 08/07/98 | 11536 | JM | S#11077        Ck#847 | | 20.00 | -20.00 |
| 09/14/98 | 11868 | AS | 99214 Detailed    Ck#863 | 75.00 | 75.00 | 0.00 |
| 09/30/98 | 11994 | AS | S#11868 NSF   Ck#0863 | | -75.00 | 75.00 |
| 09/30/98 | 11995 | JM | S#11994 Bank Fee | 20.00 | | 20.00 |
| 10/05/98 | 11996 | AS | 99214 Detailed       V | 90.00 | 90.00 | 0.00 |
| 10/05/98 | 11997 | AS | S#11994            V | | 75.00 | -75.00 |
| 10/05/98 | 11998 | JM | S#11995            V | | 20.00 | -20.00 |
| 10/12/98 | 12077 | JB | 97250,110,112,124    Cash | 90.00 | 90.00 | 0.00 |
| 10/16/98 | 12133 | AS | 99212 Focused | 45.00 | | 45.00 |
| 10/16/98 | 12134 | JB | 97250,112,110 | 90.00 | | 90.00 |
| 11/09/98 | 12333 | AS | S#12133        Ck#878 | | 45.00 | -45.00 |
| 11/09/98 | 12334 | JB | S#12134        Ck#878 | | 90.00 | -90.00 |
| 11/16/98 | 12380 | AS | 99214 Detailed    Ck#902 | 75.00 | 75.00 | 0.00 |
| 12/02/98 | 12474 | AS | 99212 Focused     Ck#2987 | 45.00 | 45.00 | 0.00 |
| 01/13/99 | 12843 | AS | 99214 Detailed    Ck#0940 | 126.00 | 126.00 | 0.00 |

PLEASE PAY THIS AMOUNT:      TOTAL BALANCE          0.00

Form **W-4S**

Department of the Treasury
Internal Revenue Service

## Request for Federal Income Tax Withholding From Sick Pay

▶ Give this form to the third-party payer of your sick pay.

OMB No. 1545-0717

**1998** 99

Type or print your full name    *Charles Vincent Barry*

Your social security number    *~~232~~ 50 8858*

Home address (number and street or rural route)    *4090 OLD FRANKLINTON RD.*

RECEIVED

City or town, state, and ZIP code    *FRANKLINTON, NC, 27525*

Claim or identification number (if any) . . . . . . . . . . .

I request income tax withholding from my sick-pay payments. I want the following amount to be withheld from each payment. (See worksheet below.) . . . . . . . . . . . . . . . .    $ *114.00*

Employee's signature ▶    *C. V. B.*    Date ▶ *2.9.99*

- - - - - - - - Cut here and give the top part of this form to the payer. Keep the lower part for your records. - - - - - - - -

### Worksheet (Keep for your records. Do Not Send to the Internal Revenue Service.)

| | | |
|---|---|---|
| 1 | Enter amount of adjusted gross income you expect in 1998 . . . . . . . . | **1** |
| 2 | If you plan to itemize deductions on Schedule A (Form 1040), enter the estimated total of your deductions. For 1998, you may have to reduce your itemized deductions if your income is over $124,500 ($62,250 if married filing separately). Get Pub. 919, Is My Withholding Correct for 1998?, for details. Call 1-800-829-3676 to order this and any other IRS publication or form you may need. If you do not plan to itemize deductions, enter the standard deduction (see the instructions on page 2 for the standard deduction amount, including additional amounts for age and blindness) . . . . . . . . . . . . . . | **2** |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . . | **3** |
| 4 | Exemptions. Multiply $2,700 times the number of personal exemptions. For 1998, the value of your personal exemption(s) is reduced if your income is over $124,500 if single, $186,800 if married or qualifying widow(er), $93,400 if married filing separately, or $155,650 if head of household. Get Pub. 919 for details . . . . | **4** |
| 5 | Subtract line 4 from line 3 . . . . . . . . . . . . . . | **5** |
| 6 | Tax. Figure your tax on line 5 by using Tax Rate Schedule X, Y, or Z on page 2. Do not use the Tax Table or Tax Rate Schedule X, Y, or Z in the 1997 Form 1040, 1040A, or 1040EZ instructions . . . . . . | **6** |
| 7 | Credits (the child tax and higher education credits, credit for child and dependent care expenses, etc.) | **7** |
| 8 | Subtract line 7 from line 6 . . . . . . . . . . . . . . | **8** |
| 9 | Estimated income tax withheld and to be withheld from other sources (including amounts withheld due to a prior W-4S) during 1998 or paid with Form 1040-ES . . . . . . . . . . . | **9** |
| 10 | Subtract line 9 from line 8 . . . . . . . . . . . . . . | **10** |
| 11 | Enter the number of sick-pay payments you expect to receive this year to which this Form W-4S will apply | **11** |
| 12 | Divide line 10 by line 11. Round to the nearest dollar. This is the amount that should be withheld from each sick-pay payment. Be sure it meets the requirements for the amount that should be withheld, as explained under Amount to be withheld on page 2. If it does, enter this amount on Form W-4S above . . . | **12** |

## General Instructions

**Purpose of form.** Give this form to the third-party payer of your sick pay, such as an insurance company, if you want Federal income tax withheld from the payments. You do not have to use this form if your employer makes the payments because employers are already required to withhold income tax from sick pay.

**Note:** If you receive sick pay under a collective bargaining agreement, see your union representative or employer.

**Definition.** Sick pay is a payment you receive:

1. Under a plan your employer takes part in and

2. In place of wages for any period when you are temporarily absent from work because of sickness or injury.

**Amount to be withheld.** Enter on this form the amount you want withheld from each payment. The amount:

1. Must be in whole dollars (for example, $35, not $34.50).

2. Must be at least $20 a week.

3. Must not reduce the net amount of each sick-pay payment you receive to less than $10.

4. For payments larger or smaller than a regular full payment of sick pay, the amount withheld will be in the same proportion as your regular withholding from sick pay. For example, if your regular full payment of $100 a week normally has $25 (25%) withheld,

then $20 (25%) will be withheld from a less-than-regular payment of $80.

**Caution:** You may be subject to a penalty if your tax payments during the year are not at least 90% of the actual tax liability shown on your tax return. For more information, see Pub. 505, Tax Withholding and Estimated Tax. You may pay tax during the year through withholding or estimated tax payments or both. To avoid the penalty, make sure you have enough tax withheld or file Form 1040-ES, Estimated Tax for Individuals. You may estimate your income tax liability by using the worksheet on page 1.

**Sign this form.** Form W-4S is not valid unless you sign it.

*(Continued on back)*

Page 2

Form W-4S (1998)

**Statement of income tax withheld.** After the end of the year, you will receive a Form W-2 reporting the taxable sick pay paid and income tax withheld during the year. These amounts are reported to the Internal Revenue Service.

**Changing your withholding.** Form W-4S remains in effect until you change or revoke it. You may do this by giving a new Form W-4S or a written notice to the payer of your sick pay. To revoke your previous Form W-4S, write "Revoked" in the money amount box on Form W-4S, and give it to the payer.

**Worksheet**

You may use the worksheet on page 1 to estimate the amount of income tax you want withheld from each sick-pay payment. Use your tax return for last year as a basis for estimating the tax liability, tax credits, and withholding for this year.

You may not want to use Form W-4S if you already have all your tax liability covered by estimated tax payments or other withholding.

If you expect to file a joint return, be sure to include the income, deductions, credits, and payments of both yourself and your spouse in figuring the amount you want withheld.

**Caution:** *If any of the amounts on the worksheet change after you give your Form W-4S to the payer, you may want to request a change in the amount withheld.*

## Specific Instructions

### Worksheet on Page 1

### Line 2—Deductions

**Itemized deductions.** You may have to reduce your itemized deductions if your income is over $124,500 ($62,250 if married filing separately). Get Pub. 919 for details.

**Standard deduction.** Individuals (other than the elderly or blind). For 1998, the amounts are:

| Filing Status | Standard Deduction |
|---|---|
| Married filing jointly or qualifying widow(er) . . . . | $7,100 |
| Head of household . . . . . | 6,250 |
| Single . . . . . . . . | 4,250 |
| Married filing separately . . . | 3,550 |

*If you are age 65 or over or blind, add to this amount the additional amount that applies to you as shown in the next paragraph. If you can be claimed as a dependent on another person's return, see Limited standard deduction for dependents later.

**Additional amount for the elderly or blind.** An additional standard deduction of $850 is allowed for a married individual or qualifying widow(er) who is 65 or over or blind ($1,700 for married filing separately if both 65 or over and blind; $1,700 on a joint return if both spouses are either 65 or over or blind, $3,400 if both spouses are 65 or over or blind). An additional standard deduction of $1,050 is

allowed for an unmarried individual (single or head of household) who is 65 or over or blind ($2,100 if both).

**Limited standard deduction for dependents.** If you can be claimed as a dependent on another person's return, your standard deduction is the greater of (a) $700 or (b) your earned income up to the regular standard deduction for your filing status. If you are age 65 or over or blind, see Pub. 505 for additional amounts you may claim.

**Certain individuals not eligible for standard deduction.** For the following individuals, the standard deduction is zero:

1. A married individual filing a separate return if either spouse itemizes deductions.

2. A nonresident alien individual.

3. An individual filing a return for a period of less than 12 months because of a change in his or her annual accounting period.

**Line 6—Tax.** Use the appropriate Tax Rate Schedule below to figure your tax.

**Line 7—Credits.** Include on this line any tax credits you are entitled to claim, such as the child tax and higher education credits, credit for child and dependent care expenses, earned income credit, or credit for the elderly or the disabled.

**Line 9.** Enter the income tax you . . . will be withheld this year on income other than sick pay. Include income tax withheld from wages and pensions, and any payments you made using Form 1040-ES.

## 1998 Tax Rate Schedules

### Single—Schedule X

| If line 5 is: Over— | But not over— | The tax is: | of the amount over— |
|---|---|---|---|
| $0 | $25,350 | -------- 15% | $0 |
| 25,350 | 61,400 | $3,802.50 + 28% | 25,350 |
| 61,400 | 128,100 | 13,896.50 + 31% | 61,400 |
| 128,100 | 278,450 | 34,573.50 + 36% | 128,100 |
| 278,450 | -------- | 88,699.50 + 39.6% | 278,450 |

### Head of household—Schedule Z

| If line 5 is: Over— | But not over— | The tax is: | of the amount over— |
|---|---|---|---|
| $0 | $33,950 | -------- 15% | $0 |
| 33,950 | 87,700 | $5,092.50 + 28% | 33,950 |
| 87,700 | 142,000 | 20,142.50 + 31% | 87,700 |
| 142,000 | 278,450 | 36,975.50 + 36% | 142,000 |
| 278,450 | -------- | 86,097.50 + 39.6% | 278,450 |

### Married filing jointly or Qualifying widow(er)—Schedule Y-1

| If line 5 is: Over— | But not over— | The tax is: | of the amount over— |
|---|---|---|---|
| $0 | $42,350 | -------- 15% | $0 |
| 42,350 | 102,300 | $6,352.50 + 28% | 42,350 |
| 102,300 | 155,950 | 23,138.50 + 31% | 102,300 |
| 155,950 | 278,450 | 39,770.00 + 36% | 155,950 |
| 278,450 | -------- | 83,870.00 + 39.6% | 278,450 |

### Married filing separately—Schedule Y-2

| If line 5 is: Over— | But not over— | The tax is: | of the amount over— |
|---|---|---|---|
| $0 | $21,175 | -------- 15% | $0 |
| 21,175 | 51,150 | $3,176.25 + 28% | 21,175 |
| 51,150 | 77,975 | 11,569.25 + 31% | 51,150 |
| 77,975 | 139,225 | 19,885.00 + 36% | 77,975 |
| 139,225 | -------- | 41,935.00 + 39.6% | 139,225 |

**Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. The Internal Revenue Code requires the information under sections 3402(o) and 6109 and their regulations. Failure to provide the information will result in no withholding on your payment(s).

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act

unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by Code section 6103.

The time needed to complete this form will vary depending on individual circumstances.

The estimated average time is: Recordkeeping 40 min.; Learning about the law or the form 7 min.; Preparing the form 37 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you. You can write to the Tax Forms Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. DO NOT send the tax form to this address. Instead, give it to your payer.

## REIMBURSEMENT AGREEMENT

Claimant _Charles V. Barry_

Social Security _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_  Insuring Company _HEALTH SOURCE_

Account Name _Charles V. Barry_         Account Number _Group 2 911_
_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-A_

I have filed a claim for benefits under Group long Term Disability (LTD). I understand that under the terms of the LTD policy Monthly Benefits are reduced by any Social Security, Old Age or Railroad Retirement Benefits (collectively called "Other Benefits") I or my dependents, if applicable, receive on my account under the Federal Social Security Act, Railroad Retirement Act, or Railroad Unemployment Insurance Act. I also understand that the Insurance Company may immediately reduce benefits by an amount they estimate will be received.

I have applied for Other Benefits and am not currently receiving such Benefits. I request that the Insurance company

      □ REDUCE         ☒ NOT REDUCE

my Long Term Disability Benefits by the estimated amount of Other Benefits that my dependents and I may receive. I further understand that an agreement not to estimate my Other Benefits is only valid:

- if the insurance company receives my application for Other Benefits within the first _____ months from the date my disability commences; and

- for one year from the date my disability commences.

Even if I choose the option of **NOT REDUCING** my LTD Benefits, beginning with the 13th month after my disability commences, the Insurance Company **will begin estimating** my Other Benefits and **will reduce** my LTD Benefits accordingly. Such estimation will continue until I have satisfied the requirements stated in the LTD policy.

If I later receive Other Benefits for myself or my dependents, if applicable, I agree to reimburse the full amount of any overpayment within 30 days after receiving the award. In addition, I agree to let the insurance company, at its option, retain any future benefits payable, including an Minimum Monthly Benefits, and use it to reduce any overpayment not refunded within 30 days. The Insurance company reserves the right to obtain a lump sum payment to recover an overpayment even if future benefits are being withheld.

I agree to provide any information about my Other Benefits claim needed to determine the benefits I am entitled to under the Long Term Disability Policy. In addition, I agree to keep the Insurance Company advised of the progress of my claim for other Benefits and promptly notify the Insurance Company when benefits have been awarded. Failure to provide prompt notice may result in a suspension of disability benefits.

**NOTE:** As a service to you, we have created this agreement so that you are able to receive you Net LTD Benefit while waiting for your Other Benefits award or denial. If you choose not to sign and return this form, we will estimate Other Benefits and deduct the amount from your LTD benefit according to the provisions of the contract.

_Charles Vincent Barry_                    _12.5.99_
Name (Please Print)                         Date

_CV B_                                      _Jean McBerry_
Signature                                   Witness

Y:\USERDATA\KWIKOPY\205206



## DISABILITY QUESTIONNAIRE

CIGNA Group Insurance
Life-Accident-Disability

Claimant Name: Charles Vincent Barry

File/SS#: 030 - 50 - 8858

Employer's Name: NORTEL

12225 Greenville Avenue
Suite 655, LB179
Dallas, TX 75243-9384
Telephone 214.907.6500
1.800.352.0611

In order to assist us with the processing of your claim, please complete this questionnaire and return it to our office. If necessary, please use a separate sheet of paper to complete any of the survey items.

**1. Describe in your own words what prevents you from working.**
I AM CONFINED TO BED 20-22 HOURS A DAY DUE TO SEVERE BACK-HIP & LEG PAIN.

**2. Please provide us with a copy of your birth certificate or, if unavailable, another form of proof of age, such as a driver's license, if it has not already been done.**

**3. List the names and addresses of each doctor you see regularly.**

Name ALAN SPANOS
No. & Street 200 A FRANKLIN St 1829 E. FRANK
City, State, Zip CHAPEL HILL NC 27514
Phone No. (919) 967-2929
For What Condition? PAIN
How Often? 1/MONTH
Last Visit JANUARY 1999

Name Dr. ROBERT WILSON
No. & Street N. DUKE
City, State, Zip DURHAM NC 27710
Phone No. (919) 220 5255
For What Condition? PAIN
How Often? 1 MOS - STARTING FEB.
Last Visit JANUARY 1999

**4. List all medications you take and their dosage.**
SEE ATTACHMENT.

**5. If you have been confined in a hospital within the last twelve months, please list the name and address of the hospital, the dates confined, and reason for confinement.**
Name of Hospital _____ Confined from _____ Through _____
Complete Address _____
Reason _____

**6. Briefly describe your activities during a normal day, including any prescribed exercises and/or diets.**
I WALK 15 MIN 4-5 TIME A WEEK, I PERFORM LIGHT CHORES AROUND THE HOUSE EVERY AFTERNOON MOST OF THE DAY I AM IN BED OR ON A COUCH LAYING DOWN. I GET OUT OF THE HOUSE FOR 1 HOUR, EACH WEEK TO RUN ERRANS.

**7. Please indicate any hobbies or interests you had or still have.**
MODEL AIRPLANES/ROCKETS - HELPING DAUGHTER WITH PIANO LESSONS. I USE TO LIKE TO RIDE HORSES BUT HAVE NOT FOR A LONG TIME NOW.

8. Please indicate how many years of school you completed.
Circle One: 1 2 3 4 5 6 7 8 9 10 11 12 College: 1 ②3 4 Masters Ph.D. Major:_____

If you have had technical training, business school education, or any type of license, please indicate.
AS. Degree in Computer Science

Have you ever owned or operated your own business? ☒ Yes  ☐ No
If yes, please indicate nature of business. INTERNET HOSTING BUSINESS

9. Briefly describe your past work experience. Begin with your most recent position.

| Position & Duties | Dates Employed From | Through | Name of Employer |
|---|---|---|---|
| Sr Eng. Unix Admin (Senior) | 1990 | PRESENT | NORTEL, RTP, NC |
| Sr. Eng - LOADBUILDER | 1988 | 199 | NORTEL, RTP, NC |
| SYSTEMS TEST TECH. | 3/1985 | 1988 | NORTEL, RTP, NC |
| BARTENDER | 1984 | 1985 | PAPAS REST. FLA. |
| COOK | 1980 | 1984 | RIVER REST. FLA |

10. Advise current status of Social Security benefits. I HAVE AN INTERVIEW FEBUARY 17TH.

11. Do you anticipate returning to your previous job or any other occupation in the near future?  ☐ Yes ☒ No
If yes, when and to what position?_____
If no, why? MY DOCTOR DOES NOT EXPECT ME TO BE ABLE TO WORK 40 HOURS, UNLESS, A MEDICAL BREAKTHRU IMPROVES MY CONDITION.

12. Are you participating in any vocational rehabilitation or educational program?  ☐ Yes ☒ No
If yes, please list the name of the program, your proposed goal, and the name and address of your counselor, if any._____
_____
_____
_____

13. If you answered no to the previous question, are you interested in vocational rehabilitation assistance?
☒ Yes  ☐ No

14. Your telephone number 919 528-3868 - THOUGH MAY NOT BE POSSIBLE AT PRESENT.

PLEASE CONTACT US AS SOON AS POSSIBLE IF ANY INFORMATION CONTAINED ON THIS FORM CHANGES.

Please return completed form to:_____
(Benefit Analyst Name)

PLEASE CONTINUE YOUR ANSWERS ON A SEPARATE SHEET OF PAPER WHENEVER NECESSARY.

# Diagnosis specific report
## Musculoskeletal

Please return to Employee's Location Health Center in a sealed envelope or Fax to Health Center at: (919) 905-5790

**Confidential** To attending physician: This form is used for the purpose of administering this benefit claim and the potential development of a rehabilitation plan for your patient. Nortel occupational health nurses/physicians will manage the information confidentially. We need your cooperation to return your patient to full capacity as quickly as possible.

**Important -** If this form is not returned promptly, your patient may incur economic loss.

| Global ID | Surname | First name | | | First date absent | Date issued to employee |
|---|---|---|---|---|---|---|
| 0201355 | Barry | Charles | ☒M ☐F | | 9.14.98 | 9.16.98 |

Description of regular hours of work and usual job duties
UNIX WORK GROUP ADMINISTRATOR
MAINTAIN AND SUPPORT DESKTOP SYSTEMS AND PRODUCTION AND DEVELOPMENT
Section to be completed by employee  SERVERS FOR DEPT. 7546.

### AUTHORIZATION FOR RELEASE OF INFORMATION

**This authorizes any physician or practitioner, hospital, clinic, Nortel Health Center and its representatives to supply and share information relevant to my current condition. If there is a charge for completing this form, it will be my responsibility to the extent permitted by law.**

Employee's signature  _Ch. V. B_    Date  9-16-98

### Section to be completed by attending physician

**1. Diagnosis of current disabling condition(s)**

| a) Primary | b) Secondary (if applicable) | c) Underlying cause of this disability NA |
|---|---|---|
| Postlaminectomy syndrome | Avascular necrosis of femoral heads | |

Is this a work-related illness/injury?  ☐Yes ☒No ☐Unknown    If "Yes", have you reported to Workers' Compensation? ☐Yes ☐No

**2. History**
Previous similar condition ☐Yes ☒No ☐Unknown    Dates    Details

**3. Findings**

| Date of first examination for current absence | Date of latest examination | Location of pain |
|---|---|---|
| 4-14-98 | 10-16-98 | Back & legs |

Radiation of pain (if applicable)  Low back.

Limitation of movement

| Flexion | Extension | Rotation | Straight leg raising |
|---|---|---|---|
| 40° | 5° | 5° | ☐Right ☐Left |

Please describe any other conditions which exacerbate prolonged disability:  NA

RECEIVED  OCT 19 1998

Results of laboratory data

| X-rays | CAT / MRI | EMG studies | Other |
|---|---|---|---|
| Bilat. hip prostheses | Intact fusion | NA | O |

Neurological deficits

Power ☐Yes ☒No    Sensory ☐Yes ☒No    Reflexes Hyperreflexic ☒Yes ☐No

Limitations returning to work ☒Yes ☐No    If "Yes", explain  Pain

### 4. Treatment

| Physiotherapy | Frequency Weekly | Expected Duration TBA |
|---|---|---|

Specify if done at  ☒clinic ☐home ☐hospital    Other    Frequency

Medication  OXYCODONE, NEURONTIN, PROZAC, PHENERGAN    Frequency

5. Current limitations (Identify from the list below what functional limitations affect your patient related to his/her usual job tasks as descri
by the Employer Health Center)

| Function | None | Slight | Moderate | Severe | Please provide details of the functional limitations, physical or psychological, which you consider to be major obstacles to your patient's ability to work. |
|---|---|---|---|---|---|
| Dexterity | ☒ | ☐ | ☐ | ☐ | |
| Driving | ☐ | ☐ | ☒ | ☐ | Low back and |
| Walking | ☐ | ☐ | ☒ | ☐ | hip pain limit |
| Standing | ☐ | ☐ | ☒ | ☐ | these. |
| Climbing | ☐ | ☐ | ☐ | ☒ | |
| Sitting | ☐ | ☐ | ☒ | ☒ | |
| Bending | ☐ | ☐ | ☐ | ☒ | |
| Lifting | ☐ | ☐ | ☐ | ☒ | |

Maximum recommended weight able to lift: 10 lbs    5 kgs
Maximum recommended weight able to carry: 10 lbs    5 kgs
Maximum recommended weight able to push/pull: 0 lbs    0 kgs

6. Rehabilitation
Do you and your patient feel your patient would benefit from any of the following rehabilitation opportunities arranged by Nortel?

Gradual return to work ☒ Yes ☐ No
Work hardening program ☐ Yes ☒ No
Modified work ☒ Yes ☐ No
Chronic pain management ☒ Yes ☐ No
Job demands analysis ☐ Yes ☒ No
Other:

Functional abilities evaluation ☒ Yes ☐ No
Rehabilitation consulting services ☒ Yes ☐ No
Confidential counselling services ☒ Yes ☐ No
Physiotherapy ☒ Yes ☐ No

7. Prognosis

Have you discussed a return to work plan with your patient?    Yes ☒ No ☐

If no, why not? _____

If yes, please provide details about the return to work plan,
including approximate time frames.    TRY RETURN TO WORK IN AROUND 4 MONTHS

Do you wish to discuss this patient's illness with a Company Nurse/Physician?    Yes ☐ No ☐

Physician's name: A. SPANOS
Specialty: PAIN MEDICINE
Telephone & Fax Number: 919-967-2927, F967-1705

Address: [signature]
Signature: Spanos
Date: 12-16-98

BLUE RIDGE CLINICAL ASSOCIATES
FRANKLIN SQUARE BUILDING 200-A
1829 E. FRANKLIN STR.
CHAPEL HILL, NC 27514

NORTEL
Disability Case Mgmt.
P.O. Box 13010
RTP, N.C. 27709 - MS: 351006
PH: (919) 992-2651 or 800-949-8190
Fax: (919) 905-5790 or 877-992-3702

RECEIVED
OCT 19 1998

OCT 18 1998 18:37

9195284697    PAGE.02

URL 10 1998 18:25 FR NORTEL DISABILITY     319 595 5/99 10 5/99//98    P.01/02

**Follow-up physician's report**

# N⊘RTEL
### NORTHERN TELECOM

Confidential -

Important -

Employee Number  110646   Last Name  Barry   First Name  Charles   9/9/98  12/11/98

Section to be completed by employee:
AUTHORIZATION FOR RELEASE OF INFORMATION
This authorized any physician or physician, hospital or clinic to supply and execute any information relevant to my current condition to the Northern Telecom Health Center and it's representatives. Please return this physician's report to the number below. If there is a charge for completing this form, it will be my responsibility to the extent permitted by law.

Employee's signature  _____   Date  12-11-98

Section to be completed by attending physician:

a) Primary   722.83  Postlaminectomy syndrome   b) Secondary (if applicable)  Avascular necrosis of femoral heads

Is this a work related injury/illness?   ☐ Yes  ☒ No  ☐ Unknown

3 Injury   Previous injury/condition?  ☐ Yes  ☒ No  ☐ Unknown   Date   Details

Date of first visit after injury and/or not working  10/5/98   Other visits since then  10/12/98  11/9/98  12/2/98

Name of other physician(s) involved with this patient's care:  Robert Wilson

5 Current restrictions:
If temporary, restrictions were continued please indicate   Severe lumbar and hip restriction due to surgeries

Type of Study   N A   Dated   Results

Are any further investigations planned?  ☐ Yes  ☐ No   If "Yes", state type and date   Type  N A   Date

6 Treatment   Hospitalization  ☐ Yes  ☐ No   Name / location   N A   Date

Surgery  ☒ Performed  ☐ Planned   List of medications currently prescribed and dated   Attached sheet

Therapy  ☐ Yes  ☐ No   If "Yes", indicate type (eg. Physio, psychotherapy)

Frequency  ☐ Daily  ☐ ___ X per week  ☐ Other   N A

Location  ☐ Outpatient  ☐ Therapist's office  ☐ Physician's office

Remarks, progress & response to treatment   Partial response to pain meds

Health Professional's Name  Alan Spanos   Signature

Address
BLUE RIDGE CLINICAL ASSOCIATES
FRANKLIN SQUARE BUILDING 200-A
1829 E FRANKLIN STR
Phone  CHAPEL HILL, NC 27514
Fax  (919) 967-1705

This electronic form provided by Nortel O&S Applied Networking Technology Applications Group - Richardson, TX  BBN 444-8388   Page 1 of 2

2/27/96

**RECEIVED DEC 15 1998**

5. Current limitations (Identify which the the below that functional limitations on your patient related to his/her usual job status as documented by the following Health Center)

| Function | None | (up to 2.5 hrs.) Seldom | (Up to 5.5 hrs.) Moderate | (Greater than 5.5 hrs.) Severe | Comment - if applicable (American Heart Association) |
|---|---|---|---|---|---|
| Cognition | ☒ | ☐ | ☐ | ☐ | ☐ Class 1 - No limitation |
| Hearing | ☒ | ☐ | ☐ | ☐ | ☐ Class 2 - slight limitation |
| Vision | ☒ | ☐ | ☐ | ☐ | ☐ Class 3 - marked limitation |
| Psychological | ☒ | ☐ | ☐ | ☐ | ☐ Class 4 - Complete limitation |
| Dexterity | ☒ | ☐ | ☐ | ☐ | |
| Driving | ☐ | ☐ | ☐ | ☐ | |
| Walking | ☐ | ☐ | ☐ | ☐ | |
| Standing | ☐ | ☐ | ☐ | ☐ | |
| Climbing | ☐ | ☐ | ☐ | ☐ | |
| Sitting | ☐ | ☐ | ☐ | ☐ | |
| Bending | ☐ | ☐ | ☐ | ☐ | |
| Reaching | ☐ | ☐ | ☐ | ☐ | |
| Crawling | ☐ | ☐ | ☐ | ☐ | |
| Kneeling | ☐ | ☐ | ☐ | ☐ | |
| Crouching | ☐ | ☐ | ☐ | ☐ | |
| Stooping | ☐ | ☐ | ☐ | ☐ | |
| Balance | ☐ | ☒ | ☐ | ☐ | |

Describe any other functional limitations

Please indicate the maximum level of ability (sedentary, light, medium, heavy) of your patient to:

____10____ Lift ____10____ Carry ____10____ Push ____10____ Pull

Sedentary = 10 lb. maximum, walking occasionally.    Light = 20 lb. maximum, 10 lb. frequently.
Medium = 50 lb. maximum, 25 lb. frequently, up to 10 lb, constantly.    Heavy < 100 lb. maximum, 50 lb. frequently, 20 lb, constantly.

6. Prognosis    Uncertain    Date of next medical assessment    TBA

Based on my medical assessment, the patient has been totally unable to work from    9/14/98    to    present

Expected date patient able to return to:    ☐ Full-time  ☐ Part-time    Regular duties    Modified duties    If indefinite, estimated number of additional weeks of disability    8-12

7. Rehabilitation

Do you and your patient feel your patient would benefit from any of the following rehabilitation opportunities arranged by Northern Telecom / BNR?

Gradual return to work ☐ Yes ☐ No    Functional abilities evaluation ☐ Yes ☐ No
Modified work ☐ Yes ☐ No    Rehabilitation consulting ☐ Yes ☐ No    None at present
Confidential counselling ☐ Yes ☐ No    Other    till further medical treatment done

Physician's name    Alan Spanos, MD    Specialty    Pain Medicine    Signature    A Spanos    Telephone number (919) 967-2927

Address    1829 E Franklin Street Chapel Hill, NC    27514    Date    12-11-98

NORTEL
Disability Case Management
P.O. Box 13010
RTP, NC 27709 MS 351006
Ph: (919) 992-2651 or 1-800-849-8190
Fax: (919) 905-6790 or Toll Free Fax: 1-877-892-3702
This electronic form provided by Nortel GES Applied Networking Technology Appliances Group - Richardson, TX ESN 444-6265

2/27/98

Page 2 of 2

** TOTAL PAGE.02 **

RECEIVED
DEC 15 1998

Charles Barry

| | | | | | |
|---|---|---|---|---|---|
| Prozac 20mg | i daily | 100<br>100 + 1 | 5/27/98<br>8/7/98 | Longstanding | |
| OxyContin<br>40mg | d qam, 3 qhs | 210<br>210<br>217<br>217<br>248<br><br>180 | 6/5/98<br>7/5/98<br>8/6/98<br>9/1/98<br>9/14/98<br>10/16/98 11/16/98 | | "Was going great" till recent<br>flareup 12/11/98 |
| Oxy Contin<br>80mg | ii q12h | 180<br>180 | 12/2/98<br>12/20/98 | | |
| Roxicodone | 6 qam ud for<br>sweating | 12<br>12 | 8/7/98<br>9/14/98 | | |
| Neurontin<br>300mg | iii tid | 300 + 1 rcf | 6/5/98 | Started 2/5/98<br>↑ 3/23/98 | |
| Phenergan<br>25mg | i qhs, ½ qam<br>prn nausea | 100 | 6/5/98 | Started 5/20/98 | |
| Zanflex 150mg | i bid | 30 | 11/16/98 | Started 11/16/98 | |
| Tagamet 200mg | i-ii q4h prn<br>nausea | 20 m+ 100 ref | 12/2/98 | | |

**Abbreviations:** ad as directed; oad or as directed, tp for pain, idd in divided doses, bp breakthrough pain.


RECEIVED
DEC 1 5 1998

## Follow-up physician's report

**NORTEL**
NORTHERN TELECOM

**Confidential -** To attending physician: This form is used for the purpose of administering this benefit claim and the potential development of a rehabilitation plan for your patient. Northern Telecom occupational health nurses will manage the information confidential. We need your cooperation to return your patient to full recovery as quickly as possible.

**Important -** If this form is not returned promptly, your patient may incur economic loss.

| Employee number | Last name | First name | First date absent | Date issued to employee |
|---|---|---|---|---|
| 110646 | BARRY | CHARLES | 9.14.98 | 1.28.99 |

**Section to be completed by employee**

AUTHORIZATION FOR RELEASE OF INFORMATION
This authorizes any physician or practitioner, hospital or clinic to supply and discuss any information relevant to my current condition to the Northern Telecom Health Center and it's representatives. Please return this physician's report to the number below. If there is a charge for completing this form, it will be my responsibility to the extent permitted by law.

Employee's signature: _Ch V. B_____          Date _1.28.99_

**Section to be completed by attending physician**

**1. Diagnosis of current disabling condition(s)**

a) Primary: 722.83      b) Secondary (if applicable): N/a

Is this a work-related illness/injury?  ☐ Yes  ☒ No  ☐ Unknown

**2. History**

Previous similar condition  ☐ Yes  ☒ No  ☐ Unknown      Dates          Details

| Date of first visit since patient stopped working | Other visits since then |
|---|---|
| 10/5/98 | 1) 12-2-98   2) 1.13.98   3) 1.27.98 |

Name of other physician(s) involved with this patient's care during this period
Dr ROBERT WILSON

**3. Clinic findings/evaluations**      SEVERE LUMBAR and HIP RESTRICTION DUE TO SURGERIES.

If diagnostic studies were completed, please indicate:

Type of study: NA      Date(s)      Results

Are any further investigations planned?  ☐ Yes  ☐ No      If "Yes", state type and date   Type: NA      Date

**4. Treatment**

Hospitalization  ☐ Yes  ☐ No      Name / location: NA      Date

Surgery  ☒ Performed  ☐ Planned      List of medications currently prescribed and dosage

Therapy  ☐ Yes  ☒ No      If "Yes", indicate type (eg. physio, psychotherapy)

Frequency  ☐ Daily  ☐ __ X per week  ☐ Other _____

Location  ☐ Outpatient  ☐ Therapist's office  ☐ Physician's office   NA

Summary of patient's response to treatment
PARTIAL RESPONSE TO PAIN MED'S

Health Professional's Name: Alan Spanos, MD
Address: 1829 E. Franklin St. Bldg 200A
Chapel Hill NC, 27514
Phone (919) 967-2927
Fax (919) 967-1705

This electronic form provided by Nortel GES Applied Networking Technology Applications Group - Richardson, TX  ESN 444-8355

2/27/50                                                                 Page 1 of 2

RECEIVED
FEB 1 1999

5. Current limitations (identify from the list below what functional limitations affect your patient related to his/her usual job tasks as described by the Employer Health Center)

| Function | None | (up to 2.5 hrs.) Slight | (Up to 5.5 hrs.) Moderate | (Greater than 5.5 hrs.) Severe | Cardiac - If Applicable (American Heart Association) |
|---|---|---|---|---|---|
| Cognition | ☒ | ☐ | ☐ | | ☐ Class 1 - No limitation |
| Hearing | ☒ | ☐ | ☐ | ☐ | ☐ Class 2 - Slight limitation |
| Vision | ☒ | ☐ | ☐ | ☐ | ☐ Class 3 - Marked limitation |
| Psychological | ☒ | ☐ | ☐ | ☐ | ☐ Class 4 - Complete limitation |
| Dexterity | ☒ | ☐ | ☐ | ☐ | |
| Driving | ☐ | ☐ | ☐ | ☒ | |
| Walking | ☐ | ☐ | ☐ | ☒ | |
| Standing | ☐ | ☐ | ☐ | ☒ | |
| Climbing | ☐ | ☐ | ☐ | ☒ | |
| Sitting | ☐ | ☐ | ☐ | ☒ | |
| Bending | ☐ | ☐ | ☐ | ☒ | |
| Reaching | ☐ | ☐ | ☐ | ☒ | |
| Crawling | ☐ | ☐ | ☐ | ☒ | |
| Kneeling | ☐ | ☐ | ☐ | ☒ | |
| Crouching | ☐ | ☐ | ☐ | ☒ | |
| Stooping | ☐ | ☐ | ☐ | ☒ | |
| Balance | ☐ | ☒ | ☐ | ☐ | |

Describe any other functional limitations

Please indicate the maximum level of ability (sedentary, light, medium, heavy) of your patient to:

Lift __10__  Carry __10__  Push __10__  Pull __10__

Sedentary = 10 lb. maximum, walking occasionally.  Light = 20 lb. maximum, 10 lb. frequently.
Medium = 50 lb. maximum, 25 lb. frequently, up to 10 lb. constantly.  Heavy = 100 lb. maximum, 50 lb. frequently, 20 lb. constantly.

6. Prognosis  UNCERTAIN  Date of next medical assessment  TBD

Based on my medical assessment, the patient has been totally unable to work from  9.14.98  to  PRESENT

Expected date patient able to return to:  ☐ Full-time ☐ Part-time  Regular duties ___ Modified duties ___  If indefinite, estimated number of additional weeks of disability  8-12

7. Rehabilitation
Do you and your patient feel your patient would benefit from any of the following rehabilitation opportunities arranged by Northern Telecom / BMR?

Gradual return to work ☐ Yes ☐ No    Functional abilities evaluation ☐ Yes ☐ No
Modified work ☐ Yes ☐ No             Rehabilitation consulting ☐ Yes ☐ No
Confidential counseling ☐ Yes ☐ No   Other  NONE AT PRESENT

Physician's name  ALAN SPANOS MD.   Specialty  PAIN MEDICINE   Telephone number  919-967-2927
Address  1829 E FRANKLIN CHAPEL HILL   Signature  [signature]   Date  2-1-99
         NC.

NORTEL
Disability Case Management
P.O. Box 13010
RTP, NC 27709 MS 351006
Ph: (919) 992-2651 or 1-800-848-8190
Fax: (919) 905-5790 or Toll Free Fax: 1-877-892-3702

2/27/96   This electronic form provided by Nortel GES Applied Networking Technology Applications Group - Richardson, TX  ESN 444-8355

Page 2 of 2

RECEIVED
FEB 1 1999





# EXHIBIT √    Proof Of Claim

Charles V. Barry

0201355

## WHO IS THIS "PROOF OF CLAIM" BEING SUBMITTED FOR?

## WHAT IS THE NORTEL GLOBAL ID # OF THIS INDIVIDUAL?

## WHAT WAS THE DATE THAT YOU WERE FORCED ONTO LONG-TERM DISABILITY?

March 15, 1985

## WHAT IS YOUR AGE  (As of January 1, 2013) ...

| | |
|---|---|
| Years | 55 |
| Months | 55 |
| AUTOMATICALLY CALCULATED FOR YOU - AGE IN MONTHS AS OF JANUARY 1, 2013 | 6 |
| AUTOMATICALLY CALCULATED FOR YOU - MONTHS UNTIL YOU REACH AGE "65" | 666 |
| | 114 |

## YOUR ANNUAL SALARY PER YOUR 2013 FLEX BENEFITS CONFIRMATION STATEMENT

$    65,800.00

## IF YOU HAD A 401K AND SIGNED UP FOR Capital Accumulation Retirement Plan (CARP) Contributions ...
WHAT WAS THE % CARP CONTRIBUTION IDENTIFIED TO YOU BY NORTEL (PLEASE ENTER 0.02 OR 0.04)?    0

AUTOMATICALLY CALCULATED FOR YOU - MONTHLY CONTRIBUTION BY NORTEL INTO YOUR 401K ....    $    -    $    '

## FROM NORTEL HR MEMO ENTITLED "TERMINATION NOTIFICATION"

SEVERANCE PERIOD    31

AUTOMATICALLY CALCULATED FOR YOU - SEVERANCE PAY    $    1,265.38    $    39,226.92

## FROM YOUR MOST RECENT PRUDENTIAL PAY STUB (EX. September 2012 LTD Paystub) ...

| | | | |
|---|---|---|---|
| "GROSS" MONTHLY SICK PAY FROM PRUDENTIAL | $    3,206.90 | $ | 365,586.60 |
| SSDI MONTHLY OFFSET | $    - | $ | - |
| Medicare Part B Reimbursement Per LTD Plan | $    110.50 | $ | 12,597.00 |
| AUTOMATICALLY CALCULATED FOR YOU - NET PAY | $    3,317.40 | $ | 378,183.60 |

## Estimates On What Replacement Coverage Would Cost You

| | | | |
|---|---|---|---|
| MEDICAL CARE | $    17,270.00 | $ | 164,065.00 |
| SUBSIDIZED PRESCRIPTION PLAN | $    400.00 | $ | 3,800.00 |
| DENTAL/VISION/HEARING CARE | $    1,374.20 | $ | 13,054.90 |
| CORE EMPLOYEE LIFE INSURANCE | $    10,632.00 | $ | 101,004.00 |
| ACCIDENTAL DEATH & DISMEMBERMENT | $    300.00 | $ | 2,850.00 |

## CLAIM GRAND TOTAL

$    702,184.42