# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Objection Deadline:** Oct. 22, 2012 at 10 a.m. |
| | ) | **Hearing Date:** Feb. 12, 2013 at 10 a.m. |
| | ) | **RE:** D.I. # 8067 |

## OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

CARMEL TOTMAN (the "[Define Party]") of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this Objection to Debtors' Motion for entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees. In support of this Objection, CARMEL TOTMAN respectfully represents as follows:

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## BACKGROUND

1. I began working with Northern Telecom March 26, 1984. I started at entry level with the Company, but through hard work ethic, pride of the company, determination and intellect, I began to "move up the latter" quickly.

2. In October, 1987 I was in an automobile accident on my way home from working late. I was broadsided on my side of the car by a car going 50 MPH. I suffered from 11 broken ribs, 2 punctured lungs and severe neck and left side body damage. Due to the fact that there was a wonderful Trauma Center in Raleigh, NC, and neuro-experts from UNC that were flown in to treat me, I survived. I went back to work, but I struggled. For years, I made several attempts to continue to work, but I was unable to perform the duties that I had previously performed with ease. I went to several doctors and several different tests were done. One was Brain Mapping which looks at your brain and can diagnose inconsistent/problem areas. I was also seen and tested by a Clinical Neuropsychologist/Diplomat of Neuropsychology. In 1991 specialists at Duke University confirmed with the other doctors' tests and diagnosis that I had Traumatic Brain Injury. I suffer from severe headaches daily. Due to the severity of my injuries that I suffered in the wreck, I now have fibromyalgia and arthritis.

3. In July, 1993 I went out on LTD. I completed the necessary "procedures" required by CIGNA in order to request LTD benefits. During this time I continued to apply for Social Security. CIGNA continued to pay me.

4. I was approved for Social Security Benefits in October, 1994 based upon my Traumatic Brain Injury. I received monthly benefits from CIGNA .

5.  Your Honor, I RESPECTFULLY REQUEST that I please be allowed to include the
    following information concerning the cancelation of my benefits in 1995. I feel that
    it is absolutely necessary and pertinent in order to give you a clear picture of the
    struggles I was forced to endure (FROM THE VERY BEGINNING) in order to
    receive my benefits. I had clear, concise and professional documentation that
    supported my TBI disability. And at every turn CIGNA denied the continuation. It
    didn't matter what proof I had of my disability. IT WAS OBVIOUS THEY DID
    NOT WANT TO AND HAD NO INTENTIONS OF **PAYING ME MY LTD
    BENEFITS**.

    *(ATTACHMENT A)*: On May 24, (& June 19) 1995 I received a letter from CIGNA
    (Policy # 2059005 from Connecticut General Life Insurance Company) (and a Re-
    confirmation of Denial Letter, December 14, 1995) that my LTD benefits would be
    discontinued under the terms of my Long Term Group Insurance Policy, entitled
    "Limitations": So stated that the Policy *did not cover disability caused or contributed
    to mental illness*. **(A-1)** For 6 months I was subjected to continuous appointments
    with doctors. Always with the threat that if I didn't agree, I would be terminated. IT
    WAS CRUEL AND INHUMANE TREATMENT. In January,1996 (for a non-
    refundable fee of $5,000.00) I retained legal representation **(A-2)** to assist me in my
    final appeal of CIGNA's denial of my LTD benefits. Through his research of my
    case, etc., my attorney found that CIGNA had *"bad faith, wrongful denial of benefits,
    abuse of discretion and breach of fiduciary duty. That as fiduciaries of the LTD plan
    their determinations were not in good faith review of the facts. And continued to deny
    my application even though they had agreed with the Social Security determination of*

*agreed with the Social Security determination of disabled.* **(A-3)** In July, 1996 (1 year later), my benefits were reinstated by CIGNA **(A-4)** and the documentation from my file stated the reason being: I had a lawyer and they did not and could not provide sufficient evidence to deny me and I had been approved under the definition of the Social Security Administration **(A-5)**.

6. In 2009 I received a letter from Nortel Networks stating that they were filing for Bankruptcy Protection and would be discontinuing my benefits. A received a HR Shared Services U. S. – Termination Notice.

## RELIEF REQUESTED

7. I request that the Debtors motion (DI #8067) to terminate the Long-Term Disability Employees and Plans be rejected and/or denied

8. I request that the Debtors be held responsible by fulfilling their obligation as stated in the Northern Telecom/Nortel Networks LTD Summary Plan Documents. That the Debtors compensate (provide sufficient funds) me for my LTD benefits to age 65 that Nortel became liable for once I became totally disabled.   My Total Claim is **$507,526.50 (EXHIBIT: A).**

9. I request that there is no interruption in the disbursement of LTD benefit (or compensation of same).  The absence of income for any period of time would have impact on my mental and physical wellbeing. It would also be detrimental, crippling and devastating financially.

## BASIS FOR RELIEF

*10.* I accepted Northern Telecom's offer (letter) of employment primarily for the
excellent benefits that they offered. I was a single/divorced parent with a 5-year old
daughter. I needed the stability and security of income and benefits (especially for
my daughter). I felt confident that I would have these with Northern Telecom. They
offered a total compensation package which was in a leadership position within the
industry so that they could retain highly qualified people. Their benefits were highly
competitive with other high technology companies/employers in order to maintain a
benefits program that was able to meet my changing needs and to treat me equitably
compared to other employers. I was confident when they stated that their Medical
Insurance Was Sound. Several letters/documents and my <u>1984 Benefits at a Glance
Plan</u> described all the benefits that I was entitled to the day I began work
**(EXHIBIT: B)**.

*11.* I worked tirelessly for the company and devoted most of my life to the enrichment
and benefit of the company. As the Senior Executive Assistant/Secretary to the
President and Vice President of Customer Service, I represented the Company in a
positive and professional manner because I was responsible for meeting and
interfacing with high level telephone/telecommunication executives all over the USA
and other countries that were interested in purchasing Northern Telecom's new DMS
switches and state of the art equipment. I worked in the FAST (First Application
System Testing) Office. Customer Service FAST was the latest and greatest in the
telecommunication field/industry because Northern Telecom changed the telephone
world. It developed the DMS (Digital Multi-Switch). It changed the old rotary dial

to digital tone. They developed features like call waiting, caller ID, etc., etc., etc. We were the company to compete with. I loved my job and it was  rewarding **(EXHIBIT: C)**

*12.* I went out on LTD July, 1993. When I began the process of filing my claim for LTD benefits under the Group LTD Policy #2019429 issued by Life Insurance Company of North America I signed all the necessary documents i.e. LTD Disability Checklist **(EXHIBIT: D)** that stated I would have continuous benefits provided at 70% of my pre-disability salary for a maximum period ending the day prior to my 65th birthday. It informed me that CIGNA would determine the LTD approval and continuation of my benefits. It also stated that CIGNA required proof of disability. *Failure to comply promptly with any of their requests for information would result in the termination of my LTD.* CIGNA would notify me by mail of my approval/denial of LTD benefits. If approved, CIGNA would send me my LTD checks. I also signed the Reimbursement Agreement **(EXHIBIT E)** that stated that "I understand that I must reimburse Life Insurance Company of North America within 30 days if I received a Social Security award. If not, Life Insurance Company of North America would recover the overpayment from my future monthly benefits. And I agreed to give Life Insurance Company of North America any and all reasonable information about my Social Security Claim needed to determine the benefits I was entitled to under the Long Term Disability policy". In my Employee Benefits Plan of 1984 under the Long Term Disability Section (page 11) **(EXHIBIT: F)**: it states that *LTD benefits provide continuing income for me if I am disabled and unable to work for a long period of time due to illness or injury. That as a full-time employee I was automatically covered*

under the Plan from the *date of my employment*. *My Duration of benefits will be up to the age 65*. In my 1993 LTD Plan: it states generally the same as the 1984 Benefit Plan, except it adds the requirement *under the care of a physician*. On the Long Term Disability Checklist (under the Benefit Entitlement Section # 8), it clearly states that I will be *entitled to LTD benefits for a maximum period ending the day prior to my 65th birthday*. And per a letter and documentation (scheduled term date/duration date) that I received from Prudential, my benefits would be until I reached 65 (**EXHIBIT: H**). Per the requirements of the LTD Plan,: I have provided necessary proof of my disability through the years to CIGNA and then to Prudential by continuing my medical care by my physician and completing the Supplemental Claim for Disability forms (**EXHIBIT: I**).

*13.* In 1992 Northern Telecom, Inc. (the Corporation) established the Health and Welfare Benefits Trust (Purpose) (**EXHIBIT: J**) *to provide sickness, accident life, **disability**, or other welfare benefits under the Northern Telecom Voluntary Employee Beneficiary Association Plan for employees. It is intended that the Plan encompass as a single ERISA welfare benefit plan the various elements of an overall welfare benefit program which are funded in whole or in part through the Nortel Networks Health & Welfare Benefits Trust.* Under the Management and Control of Trust Fund Assets: *The Corporation shall make the necessary contributions to provide the benefits expected to become payable under this Trust to Participants (as defined in the Plan).* In a more detailed and revised/updated version (2009/page 17) the Nortel Networks Welfare Benefits Plan (**EXHIBIT: K**) states that it includes fully Insured Benefit Programs (page 14) identified in Appendix A (page 15). Which lists Nortel Networks

Inc. Long-Term Disability Plan (**EXHIBIT: L**) In Nortel's <u>**Summary**</u> <u>**Annual**</u>

<u>**Reports: For Nortel Networks'**</u> Voluntary Employee Beneficiary Assoc.

(**EXHIBIT: M**) and Welfare Benefits Plan (**EXHIBIT: N**), it clearly states that they

were disbursing funds to LTD employees...As participants of the Plans.

#4. In my **1993 LTD Summary Plan Description (EXHIBIT: O)** it describes/defines

*ERISA INFORMATION*. It states the plan name: The Northern Telecom Inc. LTD

Plan, Employer Identification Number: 04-2486332, Type of Plan: Welfare. Etc., etc.

At the bottom of the page it states *Benefits under this Plan are provided by Northern*

*Telecom, Inc. Company costs are paid out of current or accumulated earnings and*

*profits* (page 16). Also stated was (**EXHIBIT: P**): *ERISA had created rights for Plan*

*participants and imposed duties upon the people who are responsible for the*

*Operation of the Plan...called "fiduciaries" that they had the duty to do so prudently*

*and in the interest of me and other Plan participants. No one, including the Company*

*may terminate you or otherwise discriminate against you in any way to prevent you*

*from obtaining a welfare benefit or exercising my rights under ERISA. If it should*

*happen that Plan fiduciaries misuse the Plan's money*, etc., etc.(page 17). I do not

feel that the Fiduciary obligations have been served. That Nortel abused their

management of funds and accumulated earnings and assets. And in doing so, I do

believe that Nortel Networks' request to terminate me is expressly to deny me my

LTD benefits. That the LTD employees/ participants are being used as scapegoats.

That LTD participants are suffering the consequences of Nortel's actions and

subsequent actions that lead to their bankruptcy.

According to The HR Shared Services U.S. – Termination Notice **(EXHIBIT: Q)** I am eligible and entitled to Severance upon Termination. The Northern Telecom Inc. Severance Allowance Plan **(EXHIBIT: R)** was established/effective September 1, 1986 for terminated employees. In the revised 1994 Plan It states in **Article 3 – Administration and Funding** - paragraph.3.3 *The Plan is an unfunded plan and all severance allowances and other benefits payable under this Plan shall be paid from the general assets of the applicable Employer.*

*15.* Nortel Networks is well within their means to meet the Contractual Obligation they made with me. Fulfilling their obligation will in no way be detrimental to their ability to recover. They have the funds that could be made "available".

*16.* If I lose my Disability Income/Benefits I will basically be living on the street because I will not be able to make my mortgage payment or pay rent. I'll have to choose between my Maintenance medications or a roof over my head. I will not be able to survive solely on my SSD. I suffer from constant pain: headaches due to the TBI and fibromyalgia. I struggle with simple tasks, reading a book, going to the grocery store. Stress and anxiety compound by disabilities. And quite honestly, Your Honor, what I've had to endure (health and pain wise) due to Nortel's Request for Termination has been very detrimental to my health. It's not enough that I'm disabled, but now they want to take away my ability to survive. I am the definition of what a real survivor is. I make it through each day...regardless. I don't live a normal life where I have control over my life. My disabilities took that control away from me. They control my life. Because of the severe injuries and severity of the accident, all my teeth were broken and have hairline fractures. They have deteriorated through the years since the

accident and are now having to be replaced with bridges and root canals. The medications that I take are very symptom specific for each of my disabilities. They are very expensive. There are no generic brands. The cost of them (without my benefits) alone would take more than ½ of my SSD. I cannot afford to replace the benefits that I have with another comparable plan. I depended on Nortel Networks to honor their "Value Of Benefits" when I became disabled. I have attached examples and actual bills and estimations of the cost of replacement Insurance – Medical, Dental, Vision and Life. **(ATTACHMENT G).**

## EXHIBITS

A – Proof of Claim/2012 Benefits Confirmation Statement/Prudential EOB

B – Offer of Employment/"Value of Benefits"/Your Total Compensation Program

C – Job Description/Performance & Development Appraisal/Letter from VP Customer Service

D – Long Term Disability Checklist

E - Reimbursement Agreement

F - 1984 Employee Benefits Plan/Disability Explanation

G - 1993 Weekly Disability and LTD Plan/Maximum Benefit Period/Termination Coverage

H – A letter from Prudential/Client and Claimant Information/Disability Review Checklist

I – Supplemental Claim for Disability/Letter from CIGNA to be examined by my physician.

J – 1992 Health and Welfare Benefits Trust

K – 2009 Welfare Benefits Plan

L – Appendix A Component Programs

M – Summary Annual Report for Nortel Networks Voluntary Employee Beneficiary Plan

N – Summary Annual Report For Nortel Networks Welfare Benefits Plan

O – 1993 LTD Summary Plan Description of ERISA Information

P – ERISA Duties

Q – HR Shared Services U.S. – Termination Notification

R – 1994 Northern Telecom Inc. Severance Allowance Plan/Administration and Funding

## NOTICE

Notice of this Objection has been provided to (a) counsel to the Debtors; (b) the United States Trustee for the District of Delaware; (c) counsel to the LTD 1102 Committee; and (d) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware through the Court's electronic filing system. Carmel Totman respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

**WHEREFORE,** Carmel Totman respectfully requests the entry of an Order, in the form attached:

1. Reject/Deny the Debtors motion (DI #8067) to Terminate the LTD Plans and LTD Employees.

2. Debtors be held responsible by fulfilling their obligation as stated in the Northern Telecom/Nortel Networks LTD Summary Plan Documents. That the Debtors compensate (provide sufficient funds) to Carmel Totman in full for LTD benefits projected to age 65; Total Claim being **$507,526.50**.

3. Order that there is no interruption in disbursement of LTD benefit (or compensation for same) to Carmel Totman.

Dated: October 16, 2012

Carmel Totman
164 Berton Street
Boone, NC  28607
Telephone: 919-649-3411
Facsimile: N/A
Email: kandee926@yahoo.com

*Appearing Pro Se*
## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Re: Docket No. 8067** |

### ORDER GRANTING OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1108 AUTHORIZING THE DEBTORS TO TERMINATE THE DEBTORS' LONG-TERM DISABILITY PLANS AND THE EMPLOYMENT OF THE LTD EMPLOYEES

Upon consideration of the Objection to entry of an order authorizing the Debtors to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees (the "Objection") and any responses thereto; and it appearing that sufficient notice of the Objection has been given; and in good cause having been shown, it is hereby

ORDERED that the Objection is granted.

Dated: _____, 2013
      Wilmington, Delaware

                                HONORABLE KEVIN GROSS
                                CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[1]   The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

**EXHIBIT A**

Proof Of Claim

CARMEL TOTMAN

## WHO IS THIS "PROOF OF CLAIM" BEING SUBMITTED FOR?

## WHAT IS THE NORTEL GLOBAL ID # OF THIS INDIVIDUAL?

0200522

## WHAT WAS THE DATE THAT YOU WERE FORCED ONTO LONG-TERM DISABILITY?

July 6, 1993

## WHAT IS YOUR AGE (As of January 1, 2013) ...

| | |
|---|---|
| Years | 56 |
| Months | 3 |
| AUTOMATICALLY CALCULATED FOR YOU - AGE IN MONTHS AS OF JANUARY 1, 2013 | 675 |
| AUTOMATICALLY CALCULATED FOR YOU - MONTHS UNTIL YOU REACH AGE "65" | 105 |

## YOUR ANNUAL SALARY PER YOUR 2013 FLEX BENEFITS CONFIRMATION STATEMENT

$ 29,390.00

## IF YOU HAD A 401K AND SIGNED UP FOR Capital Accumulation Retirement Plan (CARP) Contributions ...

WHAT WAS THE % CARP CONTRIBUTION IDENTIFIED TO YOU BY NORTEL (PLEASE ENTER 0.02 OR 0.04)?    0.04

AUTOMATICALLY CALCULATED FOR YOU - MONTHLY CONTRIBUTION BY NORTEL INTO YOUR 401K ....    $    1,175.60    $    10,286.50

## FROM NORTEL HR MEMO ENTITLED "TERMINATION NOTIFICATION"

SEVERANCE PERIOD    117

AUTOMATICALLY CALCULATED FOR YOU - SEVERANCE PAY    $    565.19    $    66,127.50

## FROM YOUR MOST RECENT PRUDENTIAL PAY STUB (EX. September 2012 LTD Paystub) ...

| | | | |
|---|---|---|---|
| "GROSS" MONTHLY SICK PAY FROM PRUDENTIAL | $ | 2,437.50 | $    255,937.50 |
| SSDI MONTHLY OFFSET | $ | 890.00 | $    93,450.00 |
| Medicare Part B Reimbursement Per LTD Plan | $ | 110.50 | $    11,602.50 |
| AUTOMATICALLY CALCULATED FOR YOU - NET PAY | $ | 1,658.00 | $    162,487.50 |

## Estimates On What Replacement Coverage Would Cost You

| | | | |
|---|---|---|---|
| MEDICAL CARE | $ | 7,000.00 | 61,250.00 |
| SUBSIDIZED PRESCRIPTION PLAN | $ | 12,000.00 | 105,000.00 |
| DENTAL/VISION/HEARING CARE | $ | 3,900.00 | 34,125.00 |
| CORE EMPLOYEE LIFE INSURANCE | $ | 7,500.00 | 65,625.00 |
| ACCIDENTAL DEATH & DISMEMBERMENT | $ | 300.00 | 2,625.00 |

Page 1

*2012*

 **NORTEL**

## United States Benefits
## Confirmation Statement

This confirms your Benefits selections and costs, which take effect 01/01/2012. These selections remain in effect unless your eligibility changes or you make changes due to a Status Change. If any information on this Confirmation Statement is not accurate, please call HR Shared Services at ESN 355-9351, 919-905-9351 or toll-free at 1-800-676-4636 immediately.

This also confirms that, as part of your ongoing participation in Nortel's compensation and benefit programs, you agree to disclosure of personal information by Nortel and its plan and program administrators and custodians to third parties, as required, to facilitate administration and reporting.

| | |
|---|---|
| Name: | Carmel Totman |
| Global ID: | 0200522 |
| Date of Birth: | 09/26/1956 |
| Pay Frequency: | US Bi-weekly |
| Benefits Earnings: | $ 29390.00 |
| Events: | Annual Enrollment |
| Event Date: | 10/28/2011 |
| Prepared On: | 11/30/2011 |

### Total Cost Summary

This summary is for Benefits that are already approved. If any coverage is pending, your costs may change later when approval is received. Please make sure your dependent information (listed on the next page) is accurate.

#### CONFIRMED AFTER-TAX SELECTIONS

| Benefit/Option | Coverage Level | Employee Cost Per Pay Period | Employee Cost Per Year | Nortel Cost Per Year |
|---|---|---|---|---|
| **Medical Care** | | | | |
| 80/60 PPO, Anthem | EE Only | $ 25.66 | $ 667.16 | $4,293.38 |
| **Dental/Vision/Hearing Care** | | | | |
| PLUS | EE Only | $ 10.93 | $ 284.18 | $ 598.52 |
| **Short-Term Disability** | | | | |
| 66 2/3% of Coverage Amt. Shown | | $ 0.00 | $ 0.00 | $ 191.88 |
| **Long-Term Disability** | | | | |
| 70% of Benefits Earnings | | $ 0.00 | $ 0.00 | $ 0.00 |
| **Total Cost of Your Before-Tax Selections:** | | $ 36.59 | $ 951.34 | $5,083.78 |

#### CONFIRMED AFTER-TAX SELECTIONS

| Benefit/Option | Employee Cost Per Pay Period | Employee Cost Per Year | Nortel Cost Per Year |
|---|---|---|---|
| **Core Employee Life Insurance** | | | |
| 2x Benefits Earnings | $ 0.00 | $ 0.00 | $ 0.00 |
| **Optional Employee Life Insurance** | | | |
| 1x BENE Earnings Non-Smoker | $ 3.77 | $ 98.02 | $ 0.00 |
| **Dependent Life Insurance - Spouse/DP** | | | |
| No Coverage | $ 0.00 | $ 0.00 | $ 0.00 |
| **Dependent Life Insurance - Child(ren)** | | | |
| No Coverage | $ 0.00 | $ 0.00 | $ 0.00 |
| **Accidental Death & Dismemberment** | | | |
| 2x Benefits Earnings Single | $ 0.30 | $ 7.80 | $ 0.00 |
| **Total Cost of Your After-Tax Selections:** | $ 4.07 | $ 105.82 | $ 0.00 |

** If an increase was selected for Optional Life and/or Spousal/DP Life Insurance, a Health Statement must be completed and returned to the address listed on the form within 31 days of the date you made your selections. Once approved for this increased coverage, the higher cost shown will be deducted from your pay check.

Prudential Insurance Company of America
Disability Claim Services Provider

Explanation of Benefit  L (2 of 2)
025149-02-73-82-0-0-0-0

If you have any questions about this claim, please contact:

**DISABILITY MANAGEMENT SERVICES**
PO BOX 13480
PHILADELPHIA        PA   19176
800-842-1718

Date
September 24, 2012

CNTRL#   0039900
CLAIM#   10280753
ID#      XXX-XX-0275

BENEFITS ADMINISTRATOR
NORTEL NETWORKS
GES DISB PRIME - MS 570/02/0C2
PO BOX 13010
RESEARCH TRIANGLE PARK   NC   27709-3010

CLAIMANT   CARMEL T TOTMAN

| DESCRIPTION | AMOUNT | FROM | TO |
|---|---|---|---|
| LTD Claim Benefits | 1,714.41 | 09/01/2012 | 09/30/2012 |
| - SSDB | 825.10 | BENEFIT AMOUNT | 1,714.41 |
| - Medical | 55.60 | LESS OFFSET | 825.10 |
| - Dental | 23.68 | ADD'L BENEFITS | 0.00 |
| | | | 889.31 |
| | | LESS ADJUSTMENTS | 0.00 |
| | | | 889.31 |
| | | LESS DEDUCTIONS | 79.28 |
| | | AMOUNT PAYABLE | 810.03 |

For claim or payment status, call 800-842-1718 and follow the prompts or visit us on the web at www.Prudential.com/mybenefits and select the online option.

Date:  September 24, 2012

Deposit Amount:     $810.03

| Direct Deposit Distribution | | |
|---|---|---|
| Account Type | Account Number | Deposit Amount |
| Checking | XXXXXX1150 | $810.03 |

To the Accounts of

CARMEL TOTMAN
164 BERTON STREET
BOONE              NC   28607

This is not a Check                                    Not Negotiable

**EXHIBIT B**

**northern
telecom**

N. .nern Telecom Inc.        Tel. (919) 549-5000
                                             TWX 510-927-1801
P.O. Box 13010
4001 East Chapel Hill - Nelson Hwy.
Research Triangle Park
North Carolina 27709

March 8, 1984

Ms. Carmel Totman
4001 Butler Blvd.
Raleigh, N.C. 27604

Dear Ms. Totman:

We are pleased to extend our offer of employment to you
for the position of Data Entry Operator II, at a
starting salary of $260.00 per week, paid on a
weekly basis. You will be reporting to Will
Millspaugh at our Research Triangle facility on
March 26, 1984.

As a new employee of Northern Telecom Inc.; life
insurance, accidental death and dismemberment insurance,
hospitalization, surgical, major medical and dental
coverage becomes effective as of your start date. At a
later date you will become eligible to participate in our
thrift savings program. The details of these programs
will be explained to you as part of our "Employee
Orientation Program."

Our offer of employment is contingent upon satis-
factory reference checks and you passing our regular
pre-employment medical examination. Our Industrial
Nurse, Ms. Sharon Withers, will be in contact with
you regarding the scheduling of your pre-employment
physical.

It is understood and agreed that your employment is
terminable at the will of either party and is not an
agreement for any specific length of time. Before you are
officially enrolled on Northern Telecom payroll, you will
be asked to sign an "Employee Agreement". This will be
included in your orientation packet.

...2

northern
telecom

N. .nern Telecom Inc.

Tel. (919) 549-5000
TWX 510-927-1801

P.O. Box 13010
4001 East Chapel Hill - Nelson Hwy.
Research Triangle Park
North Carolina 27709

...2

We believe that your abilities and our needs are
compatible and hope this offer meets with your approval.
As a matter of record, please sign and return the
duplicate copy of this letter (the original is for your
files). We welcome you to Northern Telecom.

Sincerely,

Charlie Kernodle, Manager
Support Staffing
Digital Switching Systems

CK/lm

--------------------------------------------------------

I understand and accept the stipulations of this letter.

Carmel J. Jpfman                March 26, 1984
        Signature                      Date

**nt** northern telecom

**Dear Fellow Employee:**

As an employee of Northern Telecom, you share in a valuable benefits program. Therefore, it is with pleasure that we present your personal benefit statement, which discusses the benefits that we provide to you and your family.



To give you a better understanding of your benefits package, we have expanded the statement this year to include a more comprehensive discussion of the various benefit plans. Also, individual Thrift/Savings account information has been added for participants in the Plan.

As you study your statement, it will become apparent that your salary is only part of your total compensation. In the "Value of Your Benefits" section, you will see that the Company makes a substantial contribution on your behalf for these important benefits. Please review the booklet carefully and share it with your family. If you have any questions on this booklet or any of the benefit plans, please contact your local Human Resources representative.

Sincerely,



Roy Merrills

LTD-000733

## YOUR TOTAL COMPENSATION PROGRAM

In order to attract and retain highly qualified people, Northern Telecom provides a total compensation package which is in a leadership position within our industry.

Your total compensation package has several facets to it, including both base salary and benefits. Northern Telecom takes pride in offering to its employees salary levels which, like the benefit plans, are highly competitive with other employers. Both your salary and the formal salary administration tools used by your manager are reviewed at least annually to ensure ongoing competitiveness.

The most common questions asked by employees about their salaries concern their periodic raises. How these increases are determined should not be a mystery to you. Some employees believe that salary increases are associated with forecasted increases in the cost of living. Others suspect that salary raises are heavily influenced by our Company's overall performance. Though these factors are routinely considered, they are not directly responsible for your periodic salary increases. Rather, Northern Telecom studies salary levels and increase trends reported by competing employers. Our knowledge of what local and industry-wide companies pay allows us to provide guidelines to your manager which are, in turn, used to adjust your pay. Similar guidelines are used throughout the Northern Telecom U.S. organization. While not every Northern Telecom employee receives the same pay increase, a consistent set of guidelines is applied.

In the area of employee benefits, we also survey other high technology companies in order to maintain a benefits program that is both competitive and comprehensive. We regularly assess and upgrade the benefit programs to meet your changing needs and those of your family. Treating you equitably compared to other employers and fairly with respect to other employees is important to Northern Telecom.

Northern Telecom recognizes that your compensation package is an important part of our relationship with you. For this reason, we make every effort to see that it is competitive, equitable, and personally motivating. We think you are worth it!

LTD-000735

**EXHIBIT C**

**nt northern telecom**

n3084

Original lost    E5°⌐

# Staffing requisition

(Required: human resources only)

| Position title | | | Grade group | Shift | ☐ Direct | ☐ Exempt | ☐ P & M |
|---|---|---|---|---|---|---|---|
| Senior Secretary | | | 46 | 1 | ☒ Indirect | ☒ Non-exempt | P & M Qty. |

| Job code | Division | Department 3300 | Immediate supervisor | Date required |
|---|---|---|---|---|
| DMS100 | Technical Operations | | J. T. Beagley | 11-20-84 |

**Position requirements –**

Experience or special skills  Must have special experience in Customer Interface via telephone and correspondence. Must also possess excellent typing skills. Should be able to work with minimum supervision. Two and one half years administrative office experience is required. Routine execution of administrative duties consistent with moderately complex policies and procedures is expected. Knowledge of Customer support activities would

Comments  be a key asset.

☒ Budgeted (1984)    ☒ Addition
☐ Not budgeted    ☐ Replacement for _____

## Requisition approvals

| Approved: Dept. mngr. | Date | Approved: V.P., G.M. | Date |
|---|---|---|---|
| T. Beagley | 12-06 | | |
| Approved: Director | Date | | Date |
| RMP | 12-06 | 12-11-84 | |

**Human resources approvals**

| Approved compensation | Date | Approved employment | Date |
|---|---|---|---|
| | | | |

## Offer

| Candidate name | ☒ Internal transfer | Salary offered | Salary range min. | mid. | max. |
|---|---|---|---|---|---|
| Carmel Totman | ☐ Outside hire | 300.— | 275 | 335 | 395 |

Special terms or agreements

## Offer approvals

| Approved: Dept. mngr. | Date | Approved: Director | Date |
|---|---|---|---|
| | | | |

**Human resources approvals**

| Approved: Compensation | Date | Approved: | |
|---|---|---|---|
| | | | |

| Date position posted | ☐ Reference check | ☐ Application completed | ☐ Physical scheduled |
|---|---|---|---|
| Verbal offer extended by | | Date extended | Expected start date |

## NON-EXEMPT EMPLOYEE PERFORMANCE & DEVELOPMENT APPRAISAL

NAME: Carmel Jotman

POSITION TITLE: Ever Sc.ly 2

DEPARTMENT: Field Verification

CONT. SVC. DATE: 3/26/84

POSITION SVC. DATE: 8/12/85

REVIEW PERIOD: 2/10/86

| PERFORMANCE FACTORS | 50 | 51 | 52 | 53 | 54 | PERFORMANCE FACTORS | 50 | 51 | 52 | 53 | 54 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| KNOWLEDGE OF POSITION Breadth & depth of basic knowledge of the job responsibilities, policies & procedures. | | X | | | | ABILITY TO ACCEPT SUPERVISION Willingness to accept direction and/or constructive criticism where appropriate & to perform fully as a team member where required. | | X | | | |
| TECHNICAL COMPETENCY Ability to meet technical requirements of job responsibilities in a reliable & dependable manner. | | X | | | | COMPLETING WORK ASSIGNMENTS ON TIME Accomplishment of work schedule; little sign of procrastination. | | | X | | |
| JUDGMENT Ability to use good judgment in reaching logical & timely conclusions. | X | | | | | HUMAN RELATIONS SKILLS Demonstrates harmonious working relationships with co-workers and/or customers; creation of favorable impression; proper & effective telephone communication & other appropriate skills. | | X | | | |
| INITIATIVE Ability to take initiative to complete assignments or solve problems. | X | | | | | | | | | | |
| QUALITY OF WORK Ability to perform job duties at a high level of competence & completeness. | | X | | | | PERFORMANCE DURING PERIODS OF WORKLOAD STRESS Consistent satisfactory performance during times of work pressure; maintains congenial interaction with co-workers and/or customers during these same periods of stress. | | X | | | |
| QUANTITY OF WORK Ability to carry out necessary volume of work. | | | X | | | | | | | | |

| | 50 | 51 | 52 | 53 | 54 |
|---|---|---|---|---|---|
| OVERALL PERFORMANCE RATING: | | √ | | | |

## PERFORMANCE RATINGS (✓ APPROPRIATE BOX)

**50-OUTSTANDING:** Extraordinary performance. Consistently performs all elements of job in a superior manner.

**51-COMMENDABLE:** Performance regularly exceeds job standards & is noticeably above what is normally expected from employees with similar knowledge.

**52-FULLY ACCEPTABLE:** Fully meets job standards. May occasionally exceed standards. Carries out job duties in a fully competent manner.

**53-FAIR:** Performance is below job standards. Improvement is required to satisfactorily perform job duties.

**54-UNACCEPTABLE:** Major improvements are needed to reach an acceptable performance level. Appropriate steps to improve performance should be discussed with employee.

**NOTE:** Specific recommendations or plans must be reflected where performance code of 53 or 54 is indicated.

Mr. Robert Haskins

Raleigh, N.C.


Mr. Haskins,

Your client, CarmelTotman, as you know worked for Northern Telecom from
1983 to 1993 at which time she went out on long term disability. Duing much
of her time of employment I had the opportunity to watch Carmel perform in
her duties in various administrative positions. Carmel reported to me directly
from 1984 through 1988 in the role of Executive Secretary. In that position
she performed quite well. She earned ratings of "significantly exceeded
objectives" in two of those years. She performed the duties in a very high
profile position as executive secretary to the Director of Fast and in 1987
executive secretary to the VP Customer Service. In both of these jobs she was
repansible for interfacing with many Senior Executives of Northern Telecom
and Executives of our customers companies, often in very stressfull situations
when dealing with critical service issues. She always kept a cool composure
and generally diffused many explosive situations with a great sense of humor.
She could handle multiple tasks simultaneously while always keeping her cool.
Thinking on her feet was a key attribute for Carmel, one that was extremely
valuable in her job. Carmel did not have an abscence problem nor did she
have trouble keeping up with the long work hours.

Carmel Totman had a bad car accident in October of 1987 in which she
received very serious chest and head injuries. She was out of work for over 2
months and when she returned she was not able to keep up with the
responsibilities of the position either physically or emotionally. The accident
had produced a devasting change in this top employee. In any position Carmel
had from that time on ,she was not able to perform anywhere near the level
before the accident, despite continued effort on her part. She was on and off
disablity for the next 5 years. There is no doubt in my mind that it was the
injuries from the car accident that prevented Carmel from performing at the
level documented prior to 1987. The difference was like night and day from
November 1987 to September 1987.


Regards,


John Beagley

**EXHIBIT D**

  **Long Term Disability Checklist**

EMPLOYEE *Carmel T. Totman*   DEPT. NAME *Customer Service Communication* DEPT. # *2104*

## PROCEDURE

1. In order to request LTD benefits, it is your responsibility to timely complete and return the following LTD forms:

   - *Reimbursement Agreement.* Complete this form and sign and have witnessed. This form tells CIGNA if you want your LTD benefit reduced or not while you pursue social security benefits. Return with your LTD package.

   - *Attending Physician's Statement of Disability Group Benefits.* Take this form to your treating physician to complete. CIGNA must be provided with proof of disability, from the day you first missed work due to disability through to present. If several physicians are treating you or have treated you for your disability conditions, request additional statements for these physicians to complete. Return with your LTD application.

   - *Group Long Term Disability Claim Form.* Legibly complete, date, and sign the Claimant's Statement Sections. Return this form with your LTD package

   - *W-4S Request for Federal Income Tax Withholding From Sick Pay.* Complete the upper portion of this form by indicating the amount of Federal Income Tax you wish to have withheld from your LTD benefit. There is a $88.00 monthly minimum. Sign and date this section of the form. Return the completed form with your LTD application. You may request not to have federal income tax withheld by entering 0 in the appropriate space.

   - *Disability Questionnaire.* Complete this form and return with your LTD application

2. Return the above forms (Your LTD package) and a copy of your birth certificate or driver's license to Health Services by_____. Failure to return the forms by this date can result in a lapse between the expiration of your STD benefits and the onset of your LTD benefits. Failure to return your LTD packet can jeopardize your employment status.

3. ~~You and your Benefits Administrator/Health Services will be notified by mail from CIGNA upon your approval/denial of LTD benefits. If your LTD claim is approved, CIGNA will send your first and subsequent LTD checks to you at the address indicated on your LTD application.~~

4. CIGNA determines LTD approval and continuation. Therefore, it is imperative that you respond promptly to CIGNA's requests for additional information. Failure to do so could result in the suspension or termination of LTD benefits.

## BENEFIT ENTITLEMENT

1. No benefit premium deductions are withheld from your LTD benefit. Therefore, monthly premium payments to continue medical/dental, supplemental and spousal life must be submitted to your Benefits Administrator monthly.

**BENEFIT ENTITLEMENTS - Cont.**

Outlined below are the premiums that are currently being deducted and must be continued through your disability period to prevent benefit discontinuance.

Health Care ___50.___$^{77}$___ + Life Insurance ___.83___ = $57.60

All payments must be received by the 1st day of the month. Make your check payable to Northern Telecom. Your first monthly payment of $_____ is due_____. These premiums are subject to change in accordance to premium increases or decreases to all other employee's group coverage. Send checks each month to Robin Newton, Northern Telecom, P.O. Box 13010, Research Triangle Park, NC 27709.

2.  Thrift Savings:  You become a suspended participant in the Plan. No employee contributions are deducted from disability payments.  Contributions are reinstated upon return to work.

3.  Pension:  The accrual of benefit and vesting service is determined by the retirement/pension in effect at the time of the leave.

4.  Vacation/Sick Leave:  Upon returning to work, time spent on medical leave of absence is included in determining the employee's continuous service for vacation and sick leave (when applicable).  If your preauthorized vacation occurs during your leave of absence, you must negotiate with your manager to reschedule.

5.  Holiday Pay:  Employees will not be eligible for holiday pay during a medical leave of absence.  Any holiday which falls during your medical leave is treated as any other day, and is compensated accordingly.

6.  Salary Review Date:  Is extended by the length of leave so that the performance appraisal period can be maintained.

7.  Credit Association:  No deductions are withheld for Credit Association accounts.  To continue your savings deposits and/or loan payments, you must contact the Credit Association.

8.  Compensation for Medical Leaves:  Long Term Disability benefits provide income continuation at 70% of your predisability salary.  This benefit is payable for up to two years while you are totally disabled from your job.  Thereafter, benefits may be extended if you are totally disabled from performing your job and any other job for which you are or may become qualified.  For employees who are disabled before age 61, benefits may be paid for a maximum period ending the day prior to the 65th birthday.  For employees disabled at age 61 or older, the maximum benefit period varies.  The LTD benefit is reduced by any "other income benefits" you receive for that month had you made timely pursuit of those benefits.  These "other income benefits" include, but are not limited to Social Security benefits, Workers' Compensation benefits, State Disability benefits, and No-Fault Insurance benefits.

    NOTE:  Long Term Disability.  Benefits are payable for a maximum of 24 months for disabilities resulting from a mental or nervous disorder.

9.  Taxes:  Employees are responsible for determining the amount of Federal Income Tax to be withheld from the monthly LTD benefit, by completing the Tax Notice which is part of the LTD package.  No state taxes are withheld from your Long-Term Disability benefits.

10.  For  bargaining units consult your Benefits Administrator for any adjustments to these guidelines.

11.  For employees in California, Rhode Island, Hawaii, New Jersey and New York, consult your Benefits Administrator for any adjustments to these guidelines.

9/92

# EXHIBIT E

 

## REIMBURSEMENT AGREEMENT

I have filed a claim for benefits under the Group Long Term Disability Policy #2019429 issued by Life Insurance Company of North America to _____, for a period of Total Disability beginning on _____.

I have read this policy or a description of its main features. I understand that LTD monthly benefits for any month are reduced by:

(1)   any disability or Old Age benefits I receive on my own behalf under the Federal Social Security Act; and

(2)   the amount my dependents receive for that month on account of my disability under the Federal Social Security Act; or

(3)   the amount of Old Age benefits my dependents receive for that month on my account under the Federal Social Security Act.

If my claim for Social Security Disability benefits is denied, I agree to ask Social Security Administration to reconsider my claim. If necessary, I will appeal my Social Security claim to the hearing level.

While I pursue Social Security benefits, I would like my LTD monthly benefit to be

( ) Reduced          ( ✓ ) Not Reduced

by the amount of Social Security Benefits Life Insurance Company of North America assumes I, (and my dependents) would have received had my social security claim not been denied.

If I later receive Social Security Disability or Old Age Benefits for myself or my dependents, I will reimburse Life Insurance Company of North America for the full amount of any overpayment on my Long Term Disability claim that results from these benefits.

I understand that I must reimburse Life Insurance Company of North America only for the amount of this overpayment. I will make reimbursement in one lump sum, within 30 days after receiving my social security award. Life Insurance Company of North America may, at its option, unilaterally recover the overpayment by reducing future monthly benefits.

I agree to give Life Insurance Company of North America any reasonable information about my Social Security claim needed to determine the monthly benefits I am entitled to under the Long Term Disability policy.

| | |
|---|---|
| _Carmel J. Jotman_ | _6/24/93_ |
| Signature | Date |
| _Ann Cox_ | _6/24/93_ |
| Witness | Date |

12/92

**EXHIBIT F**

# Long Term Disability

Long-Term Disability benefits (LTD) provide continuing income for you and your family if you are disabled and unable to work for a long period of time due to illness or injury.

## Eligibility

As a full-time salaried employee, you are automatically covered under the Plan from the date of your employment.

## Cost

The Company pays the full premium for LTD coverage.

## Summary of Benefits

*Disability Income:* after you have been disabled for six months, this coverage will pay you a monthly income equal to approximately:

— 70% of your pay

— unlimited benefit per month

If you are receiving any other Company-provided disability benefits, pension, Social Security or Worker's Compensation, these amounts will be offset against your monthly income benefit under this plan.

*Duration of Benefit:* LTD benefits will start after you have been disabled for six months.

Generally, benefits will continue:

— for the next two years if you cannot perform the duties of your regular job,
and

— thereafter up to age 65 if you are unable to engage in any gainful occupation for which you are or could become qualified by training, education or experience. If disability occurs after age 65, benefits will be paid for one year but not beyond age 70.

11

NNI-LTD-00005783

## DISABILITY

The Company's Short and Long Term Disability Plans provide income continuation for you if you are absent from work due to illness or injury. In the event of absence, you are eligible for a maximum of 10 paid sick leave days per year. After a five work day waiting period which can be covered by these sick days, your Short Term Disability benefits, based upon your length of service, will provide income continuation for up 26 weeks.

If you continue to be disabled after 26 weeks, our Long Term Disability Plan may provide continuing income up to age 65. Under our Long Term Disability Plan, you will receive a maximum monthly benefit equal to 70% of your base pay or ███████████ Your Long Term Disability benefits will be offset by any other company paid disability benefits, Social Security payments, workers' compensation payments, or any other payments that you receive as compensation for your disability.

## VACATION

As a full-time employee, you are eligible for paid vacation based on your length of service with the Company on June 30 each year. For vacation year 7/1/88 through 7/1/89, you will be eligible for 10 days of vacation as of the vacation eligibility date of June 30, 1988.

## HOLIDAYS

Northern Telecom observes a total of 12 Holidays annually. For 1988, the holiday schedule has been arranged to permit a full week off during the Christmas holidays. Following is the complete 1988 holiday schedule:

| | |
|---|---|
| New Year's Day | Friday, January 1 |
| Good Friday | Friday, April 1 |
| Memorial Day | Monday, May 30 |
| Independence Day | Monday, July 4 |
| Labor Day | Monday, September 5 |
| Thanksgiving | Thursday & Friday, November 24 & 25 |
| Christmas Week | Monday - Friday, December 26 - 30 |

**EXHIBIT G**

# WEEKLY DISABILITY
## AND LONG
# TERM DISABILITY PLAN

1993

# LONG TERM DISABILITY BENEFITS

Monthly Income Benefits are payable to you after you have been totally disabled due to an accidental bodily injury or disease for at least the Benefit Waiting Period of six (6) months.

### Total Disability

You are considered totally disabled if you are unable to work because of a disease or injury.

During the first twenty-four (24) months of a period of a covered total disability (after your completion of the six (6) month Benefit Waiting Period), you will be considered unable to work if you cannot perform the work you normally perform.

After the first twenty-four (24) month period of covered total disability (after your completion of the six (6) month Benefit Waiting Period), you will be considered unable to work if you are unable to work at any reasonable occupation. A reasonable occupation is any gainful activity for which you are fitted by your education, training or experience, or for which you could reasonably become fitted.

## Monthly Income Benefit

The Plan will pay you 70% of your "Monthly Basic Earnings" before you become totally disabled, but in no event more than the Maximum Monthly Benefit, $7,000. This benefit is reduced by any "other income benefits" you receive for that month, or which you would be entitled to receive if timely claim for them had been made by you, but in no event shall this benefit be less than the Minimum Monthly Benefit, $50.

## When Benefits Begin

Your Monthly Income benefits will start as soon as you complete the requisite six (6) month Benefit Waiting Period, provided that written proof of your total disability satisfactory to the Claims Administrator is furnished within six (6) months following completion of the waiting period. Otherwise, Monthly Income benefits will commence on the day six (6) months following the date written proof of your total disability is furnished.

## How Long Benefits are Paid

You will continue to receive Monthly Income Benefits while you remain totally disabled, up to the end of the Maximum Benefit Period shown.

Maximum Benefit Period for any one period of total disability:

| Your Age at Commencement of Disability | Your Maximum Benefit Period |
|---|---|
| Under age 61 | To Age 65, but not less than 60 months |
| Age 61 | 60 months |
| Age 62 | 60 months |
| Age 63 | 60 months |
| Age 64 | 60 months |
| Age 65 | To Age 70 |
| Age 66 | To Age 70 |
| Age 67 | To Age 70 |
| Age 68 | To Age 70 |
| Age 69 – 74 | 12 months |
| Age 75 and over | 6 months |

## Period of Total Disability

Since benefits are payable only during a period of total disability, it is important that you understand when this period begins and ends.

Each period of total disability will start as soon as you are both totally disabled and under the care of a physician. You will not be considered to be under the care of a physician until he has been seen and treated you personally for the disease or injury causing the total disability for at least thirty-one (31) days. The Claims Administrator shall have the right to require that you be examined by a physician of his or her choosing.

Your benefit period during total disability will end when the first of the following occurs:

1. you cease to be totally disabled or die; or as otherwise provided for in this booklet, or

2. you actually start working at the type of occupation in which you normally engage or at any reasonable occupation. (Work at an Approved Rehabilitation Program as defined below will not count as work at the type of occupation in which you normally engage or at a reasonable occupation), or

3. you cease to be under the care of a physician, or

4. you fail to furnish the latest required proof of the continuance of your total disability or refuse to be examined by a physician designated by the Plan.

Once a period of total disability has ended, any new period of total disability will be treated separately. However, if you return to work for less than three (3) consecutive months, and then become disabled again due to the same or a related illness or injury, monthly benefits will begin as a continuation of the original disability.

**EXHIBIT H**

Claims Services Provided by

**The Prudential Insurance Company of America**

Sophie Costanza
Disability Claim Manager

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718  Ext: 87641
Fax: (877) 889-4885
Website: www.prudential.com/mybenefits

October 10, 2012

Carmel T Totman
164 Berton Street
Boone, NC  28607

Claimant: Carmel T Totman
Claim No.: 10280753
Date of Birth: 9/26/1956
Control No./Br.: 39900  /  000RA

ldldldldlldllldldlldlldll

Dear Ms. Totman:

We are writing to you to confirm that you are receiving Long Term Disability benefits under the Nortel Networks Group Policy with Prudential.

You are receiving $810.03 per month.  This benefit will remain the same provided your income from other sources does not change.  Your benefits will continue through September 25, 2021, provided you remain totally disabled as defined by the Policy and continue to meet all other contractual requirements.

Sincerely,
*Sophie Costanza*
Sophie Costanza
Disability Claim Manager

Prepay #_____ **TOP SHEET** DCMS #: _1 0 28_

*"For Complete Claim Record, Refer to Paper File in conjunction with DCMS File."*

## CLIENT AND CLAIMANT INFORMATION

Client: **NORTEL**   Claimant: **Carmel Totman** SS#: **24**

Control #: **39900** Branch: **RA**   Phone Number: **919-848-9030**

Contact:_____   Diagnosis: **Major depression**

Phone Number:_____   Date of Birth: **9/26/56**
  age verification in file ☐

## BENEFIT DATES:

Is Case Integrated Pru STD/LTD ☐

STD Max Duration:   Recurrence Date: _____

Date of Disability: **1/1/93**

Date Payment Begins: **7/2/93**

A/O Date: **7/7/95**

M/N Date: **7/7/95** Adjusted A/O Date: _____

Max Duration Date: **9/25/2021**

Disallowal Date: _____ Adjusted Max Duration Date: _____

Term/Recovery Date: _____

Term/RTW Date _____ Recon 1 Recd: _____

  Recon 2 Recd: _____

  Recon 3 Recd: _____

## BENEFIT INFORMATION:

Monthly Earnings: **2449.16**   AIU 2nd AIL: _____

Scheduled Benefit **1714.41**   Min Benefit: **50**

## NON-DUPLICATION OFFSETS:

| Effective Date | Adj. | Adj | Adj | Adj | Adj. |
|---|---|---|---|---|---|
| SSDB/SSRB | | | | | |
| WC | | | | | |
| Retirement/Pension | | | | | |
| Other | | | | | |

## MISC INFORMATION

Check if SSDAP involved ☐ Mandatory FIT applies ☐ COLA applies ☐ Indexing applies ☐

Do you have: Proof of SSDB application ☐ R/A ☐ Med. Authorization dated_____ ☐

# DISABILITY REVIEW CHECKLIST



IS B/C ON FILE? YES/NO

WHEN IS SCHEDULED TERM DATE? __9/25/2024__
DOES REHAB APPEAR FEASIBLE? YES/NO/QUESTIONABLE

IS EE ELIG. FOR VA BENEFITS? YES/NO

IS EE 55 YEARS OLD WITH 10 YEARS OF SERVICE? YES/NO
ER.

IS EE ELIG. FOR WORKERS COMP? YES/NO
WHEN DOES INTEGRATION CEASE? _____

DOES YOUR CLAIMANT HAVE SSDI? YES/NO
IF NO, WHERE ARE WE IN THE SS REVIEW PROCESS? _____

IS EE OR DEPENDENT ELIG. FOR SS RET? YES/NO
ASKED IF THEY ARE RECEIVING BENEFITS? YES/NO

WHEN DOES SS DEPENDENT BENEFITS CEASE? _____
WHEN IS SPOUSE 62? __n/A__

IS EE COMPETENT TO ENDORSE HIS/HER CHECKS PER A/P FORM? YES/NO
IF NO, DO WE HAVE GUARDIANSHIP AND/OR AFF. & AGRMT? YES/NO     IF NO, REQUEST.

**HAS IT BEEN ONE YEAR SINCE LAST SS DECISION WITHOUT AN AWARD? YES/NO
IF YES, WE NEED TO ASK EE TO REAPPLY FOR SSDI NOW.
REFER NOW IF FILE QUALIFIES FOR SS ASSIST.

HOW OLD IS CLAIMANT NOW? ____

ARE WE IN A/O NOW? YES/NO

IF YES, HAVE WE CHECKED? YES/?

IF YES, CHECK WHEN ELIGIBLE FOR

WHAT IS WEEKLY RATE? $ _____
IS THERE A SETTLEMENT PENDING

IF YES, WHAT IS THE AWARD AMOU

IF YES, AND THERE IS NO SSDI AW/

HAVE WE CHECK ELIGIBILITY? YE:

ORIG. SS AMOUNT $ __881.20__

| Date | % | Amount |
|---|---|---|
| 03/01/74 | 7% | |
| 06/01/74 | 4% | |
| 06/01/75 | 8% | |
| 06/01/76 | 6.4% | |
| 06/01/77 | 5.9% | |
| 06/01/78 | 6.5% | |
| 06/01/79 | 9.9% | |
| 06/01/80 | 14.3% | |
| 06/01/81 | 11.2% | |
| 06/01/82 | 7.4% | |
| 12/01/83 | 3.5% | |
| 12/01/84 | 3.5% | |
| 12/01/85 | 3.1% | |
| 12/01/86 | 1.3% | |
| 12/01/87 | 4.2% | |
| 12/01/88 | 4.0% | |
| 12/01/89 | 4.7% | |
| 12/01/90 | 5.4% | |
| 12/01/91 | 3.7% | |
| 12/01/92 | 3.0% | 881.20 |
| 12/01/93 | 2.6% | 904.11 |
| 12/01/94 | 2.8% | 929.43 |
| 12/01/95 | 2.6% | 953.60 |
| 12/01/96 | 2.9% | 981.25 |
| 12/01/97 | 2.1% | 1001.86 |

DOES THIS AMOUNT AGREE WITH
AMOUNT EE REPORTS ON SUPP
FORM? YES/NO    12/99 supp -

100 (REV  01/15/98)

LTD GROSS   $ __1714.41__

LESS SSDI   $ __881.20__

LESS OTHER $ __0__

NET         $ __833.21__

SRO NET     $ __833.21__

SS EARNINGS A

MEDICARE? Y1

$ _____

REFERRAL:

cx is 42 y/o female.
brain injury + closed hea
memory loss. Symptoms
cancentrate, Progress is
on cardiac. 2/R's on b
cannot follow thru on
phys. or intellectual. All
severe limits. Rehab cx
retraining not suggested
JWynns
9/17/9.

**EXHIBIT I**



**CIGNA** Group Insurance
Life · Accident · Disability

11225 Greenville Avenue
Suite 655, LB179
Dallas, TX 75243-9382
Telephone 972.907.6500
1.800.352.0611

JANUARY 10, 1997

MAIL:  ANDY GAITHER
       2830
       ,

TO:    CARMEL T TOTMAN
       7212 SHELLBURNE DRIVE
       RALEIGH, NC 27612

RE:    CLAIMANT      :  CARMEL T TOTMAN
       CERTHOLDER    :  S242080275
       POLICY KEYS   :  205900501350   001011
       ACCOUNT NAME  :  NORTHERN TELECOM INC
       COMPANY NAME  :  CONNECTICUT GENERAL LIFE INSURANCE COMPANY

THIS LETTER IS IN REFERENCE TO THE ABOVE MENTIONED CLAIM.

A REVIEW OF OUR FILE REVEALS THE NEED FOR UPDATED MEDICAL INFORMATION.  ONE OF
THE PROVISIONS OF YOUR CONTRACT SPECIFIES THAT YOU MAY NOT BE CONSIDERED TOTALLY
DISABLED FOR ANY PERIOD IF YOU ARE NOT UNDER THE REGULAR CARE OF A LICENSED
PHYSICIAN.  PLEASE HAVE YOUR ATTENDING PHYSICIAN COMPLETE THE ENCLOSED ATTENDING
PHYSICIAN'S STATEMENT AND RETURN IT TO US BY 02-12-1997.  A RETURN ENVELOPE IS
ENCLOSED FOR YOUR CONVENIENCE.

IF YOU HAVE ANY QUESTIONS REGARDING THIS MATTER, PLEASE DO NOT HESITATE TO
CONTACT ME.  THANK YOU FOR YOUR COOPERATION.

SINCERELY,

ANDY GAITHER
SENIOR BENEFIT ANALYST

CC: NORTHERN TELECOM

Life Insurance Company of North America
Connecticut General Life Insurance Company

# Supplementary Claim
# Disability Benefits

Life Insurance Company of North America
Connecticut General Life Insurance Company
Insurance Company of North America
INA Life Insurance Company of New York
Subsidiaries of CIGNA Corporation

CIGNA

Any person who knowingly and with intent to defraud any insurance company or other person files a statement containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

AUG 20 1998

CIGNA-DALLAS

## TO BE COMPLETED BY THE CLAIMANT

**NAME OF CLAIMANT** *Last Name* *First Name* *Middle Initial* **SOCIAL SECURITY NUMBER** **TELEPHONE NUMBER**

JETMAN    CARMEL  T.    242-C8-0275   (919) 848-9030

**ADDRESS** *Street* *City* *State* *Zip Code*

7212 SHELBURNE DR    RALEIGH  NC  27612

**LIST STATES IN WHICH YOU MAY BE LIABLE FOR FILING TAX RETURNS**

**NAME OF EMPLOYER/ASSOCIATION** **POLICY NUMBER**

NAME OTHER SOURCES OF INCOME TO WHICH YOU AND YOUR DEPENDENTS ARE ENTITLED BY CHECKING THE APPROPRIATE SOURCES LISTED BELOW. SHOW AMOUNTS RECEIVED AND INDICATE PAYMENT FREQUENCY. IF YOU HAVE NOT PREVIOUSLY PROVIDED US WITH A COPY OF THE AWARD LETTER. PLEASE ATTACH A COPY. INDICATE "NONE" IN THE APPROPRIATE BLOCKS IF YOU DO NOT RECEIVE INCOME FROM A NAMED SOURCE

| ☑ Social Security/Medicare | ☐ Pension | ☐ Governmental | ☐ Workers' Compensation | ☐ Other, identify |
|---|---|---|---|---|
| $ | $ NONE | $ NONE | $ NONE | $ NONE |

**ARE YOU CURRENTLY WORKING?** ☐ YES ☑ NO

If yes, please provide name and address of employer, job title, number of hours worked per week, and wage rate.

**ARE YOU INTERESTED IN A VOLUNTARY REHABILITATION/RETRAINING PROGRAM?** ☐ YES ☑ No

## AUTHORIZATION TO RELEASE INFORMATION

I certify that the information shown above is correct to the best of my knowledge and belief. I authorize any Health Care Provider, Insurance Company, Employer, Person or Organization to release any information regarding medical, dental, mental, alcohol or drug abuse history, treatment or benefits payable, including disability or employment related information, to any CIGNA company, the Plan Administrator, or their employees and authorized agents for the purpose of validating and determining benefits payable. This data may be extracted for use in audit or statistical purposes. I understand that I or my authorized representative will receive a copy of the authorization upon request. This authorization or a photostatic copy of the original shall be valid for the duration of the claim.

**SIGN HERE** Carmel T. Jetman

**CLAIMANT'S SIGNATURE**

**DATE** 8/8/98

## TO BE COMPLETED BY ATTENDING PHYSICIAN

The claimant is responsible for the completion of this form without expense to the company.

**1. PRESENT CONDITION** Traumatic brain injury

**DIAGNOSIS** Closed Head Injury + memory loss    **DATE OF LAST VISIT** 8/17/98    **FREQUENCY OF VISITS** 2-3 mos

**SUBJECTIVE SYMPTOMS** Inability to concentrate, dreaming    **OBJECTIVE FINDINGS** Psychometric tests confirmed

**(X-RAYS, E.K.G.'S, LABORATORY DATA AND ANY CLINICAL FINDINGS)** difficulty with concentration - per Dr. Carter

## 2. PROGRESS

(a) Has patient: ☐ Recovered? ☐ Improved? ☑ Unchanged? ☐ Retrogressed?

(b) Is patient: ☐ Bed Confined? ☐ Hospital Confined? ☑ Ambulatory? ☐ House Confined?

(c) Has patient been hospital confined? ☐ Yes ☑ No   If yes, give Name and Address of Hospital

not in past 2 years.

Confined from _____ through _____

## 3. CARDIAC (If Applicable)

(a) Functional capacity
(American Heart Ass'n.)

☑ Class 1 (No limitation)   ☐ Class 2 (Slight limitation)
☐ Class 3 (Marked limitation)  ☐ Class 4 (Complete limitation)

(b) Blood Pressure (last visit) ___110___ ___64___
SYSTOLIC       DIASTOLIC

**EXHIBIT J**

## NORTHERN TELECOM INC.
## HEALTH & WELFARE BENEFITS TRUST

THIS AGREEMENT, made and entered into at Chicago, Illinois, dated this
12 day of March, 1992 by and between Northern Telecom Inc., a
Delaware corporation (hereinafter referred to as the "Corporation") and
CONTINENTAL BANK, NATIONAL ASSOCIATION, a national banking association, and
its successor or successors and assigns in the trust hereby evidenced, as
trustee (hereinafter referred to as the "Trustee"):

## WITNESSETH THAT:

WHEREAS, the Northern Telecom Inc. Health & Welfare Benefits Trust
(hereinafter referred to as the "Trust") is being established by the
Corporation to provide sickness, accident, life, disability, or other welfare
benefits from time to time under The Northern Telecom Inc. Voluntary Employee
Beneficiary Association Plan ("Plan") for employees (as defined in the Plan);
and

WHEREAS, in order to implement and carry out the provisions of the Plan,
the Corporation desires to establish a trust which will be maintained in
connection with the Plan, will form a part of the Plan and which is intended
to meet the requirements of a tax exempt organization under Section 501(c)(9)
of the Internal Revenue Code of 1986, as amended, or under any comparable
section or sections of any future legislation that amends, supplements, or
supersedes said Section and this Agreement is designed for that purpose;

NOW THEREFORE, in consideration of the mutual undertakings of the
parties hereto, IT IS AGREED as follows:

NNI-LTD-00002005

-2-

## SECTION I

### NAME

This Agreement and the trust hereby evidenced, as amended from time to time, shall be known as the Northern Telecom Inc. Health & Welfare Benefits Trust.

## SECTION II

### RELATING TO THE CORPORATION

The Plan and all component Plans (as defined in the Plan) will be administered by the Corporation. Except as provided in Section 5.2 hereof, the Trustee shall make such payments and distributions, and act upon such directions, as specified by the Corporation's duly authorized officers and agents.

## SECTION III

### MANAGEMENT AND CONTROL OF TRUST FUND ASSETS

3.1 The Trust Fund. The term "Trust Fund" comprises all property of every kind held or acquired by the Trustee under this Agreement. The Corporation shall make the necessary contributions to provide the benefits expected to become payable under this Trust to Participants (as defined in the Plan).

3.2 General Management Powers. With respect to the Trust Fund and subject only to the limitations expressly provided in this Agreement, the Trustee shall have the following powers, rights, and duties in addition to those vested in it elsewhere in this Agreement or by law:

NNI-LTD-00002006

**EXHIBIT K**

# NORTEL NETWORKS

# WELFARE BENEFITS PLAN

M PRO 1969476 v3
2789126-000005

# ARTICLE I

## GENERAL TERMS AND CONDITIONS

**Section 1        Purpose**

This Nortel Networks Welfare Benefits Plan is maintained for the purpose of providing the employee welfare benefits listed herein for the benefit of the Employer's eligible employees and dependents. It is intended that the Plan encompass as a single ERISA welfare benefit plan the various elements of an overall welfare benefit program which are funded in whole or in part through the Nortel Networks Health & Welfare Benefits Trust, which constitutes a voluntary employees' beneficiary association ("VEBA") for tax law purposes. This Plan, together with the governing documents for each element program described on Appendix A constitutes the written plan document required by ERISA § 402(a), and is an employee welfare benefit plan (within the meaning of ERISA § 3(l)). Some or all of the benefit programs may be offered through a cafeteria plan arrangement under Code § 125.

**Section 2        Definitions**

The following capitalized terms shall have the meanings set forth below.

2.1    "Administrator" means the Company or such other person or committee as may be appointed from time to time by the Company to supervise the operation and administration of the Plan. The Administrator shall be the "named fiduciary" under the Plan. However, discretionary authority to make the final fiduciary decision about claims determinations may be delegated to an Insurer or a Claims Administrator.

2.2    "Benefit Program" means an arrangement providing employee welfare benefits (within the meaning of Section 3(l) of ERISA), maintained or established by the Company or an Employer, which is a part of this Plan; provided, neither a Cafeteria Plan Arrangement nor a flexible spending account offering dependent care or adoption assistance expense reimbursements shall be deemed to be an employee welfare benefit plan. The Benefit Programs that are a part of this Plan are listed in Appendix A.

2.3    "Cafeteria Plan Arrangement" means a Benefit Program that meets the requirements of Internal Revenue Code § 125, and pursuant to which an Employee can choose between cash or other taxable benefits and the Benefit Programs on a non-taxable basis.

2.4    "Claims Administrator" means the person or entity designated by the Administrator in accordance with Section 3.1 of this Article I to manage the payment of claims under a Benefit Program. If authority and responsibility to determine adverse claims determinations (within the meaning of ERISA § 503) is delegated by the Administrator to the Claims Administrator, the Claims Administrator shall act as claims fiduciary.

2.5    "Code" means the Internal Revenue Code of 1986, as amended.

2.6    "Company" means Nortel Networks Inc. and any successor corporation resulting from a merger or consolidation with the Company or transfer of substantially all of the assets of the Company, if such successor or transferee shall adopt and continue the Plan.

2.7    "Dependent" means any person eligible for dependent coverage under a Benefit Program.

2.8    "Employee" means each common-law employee of an Employer who is eligible to become a Participant under a Benefit Program which is a part of this Plan. Except to the extent specifically provided otherwise in the Governing Documents of a Benefit Program, "Employee" shall not include any individual designated or considered by an Employer as an independent contractor; a leased

© SunGard 2008
M PRO 1969476 v3
2789126-000005

LTD-001691

## ARTICLE IV

## FULLY INSURED BENEFIT PROGRAMS

**Section 1**    **General**

The Plan may include any Fully Insured Benefit Programs identified in Appendix A.

**Section 2**    **Claims Procedures**

The specific guidelines for filing a claim or a request for a review of a denied claim shall be set out in the summary plan description for each Benefit Program.

**EXHIBIT L**

## APPENDIX A

## COMPONENT PROGRAMS

Nortel Networks FLEX Benefits Program

Nortel Networks Health Care Reimbursement Account Plan

Nortel Networks Inc. Dental/Vision/Hearing Care Plan

Nortel Networks Inc. Medical Plan

Nortel Networks Inc. Short-Term Disability Plan

Nortel Networks Inc. Long-Term Disability Plan

Nortel Networks Retiree Medical Plan

Nortel Networks Retiree Life Insurance and Long-Term Care Plan

Nortel Networks Life Insurance and AD&D Insurance Plan


Nynex Meridian Systems Medical Coverage Plan for Bargaining Unit Employees

Nynex Meridian Systems Dental Plan for Bargaining Unit Employees

Nynex Meridian Systems Term Life Insurance and AD&D Plan for Bargaining Unit Employees

Nynex Meridian Systems Short-Term Disability and Long-Term Disability Plan for Bargaining Unit Employees

M PRO 1969476 v3
2789126-000005

**EXHIBIT M**

## SUMMARY ANNUAL REPORT FOR
## NORTEL NETWORKS VOLUNTARY EMPLOYEE BENEFICIARY ASSOCIATION PLAN

This is a summary of the annual report of the NORTEL NETWORKS VOLUNTARY EMPLOYEE BENEFICIARY ASSOCIATION PLAN a health, life insurance, dental, vision and long-term disability plan (employer identification number 04-2486332) for the plan year ending 12/31/2007. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

### Insurance Information

The plan has contracts with EXCELLUS BLUECROSS BLUESHIELD, ROCHESTER, KAISER FOUNDATINONHEALTH PLANS, INC., HARVARD PILGRIM HEALTH CARE, HARVARD PILGRIM HEALTH CARE, KAISER PERMANENTE, PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUDENTIAL INSURANCE COMPANY OF AMERICA, EYEMED VISION CARE, EYEMED VISION CARE, EYEMED VISION CARE, EYEMED VISION CARE, EYEMED VISION CARE and HAWAII MEDICAL SERVICES ASSOCIATION to pay certain Kaiser Foundation Health Plans, Inc, Excellus-Blue Cross BlueShield of Rochester Area, Harvard Pilgrim claims incurred under the terms of the plan. The total premiums paid for the plan year ending 12/31/2007 were $13,090,847.

### Basic Financial Statement

The value of plan assets, after subtracting liabilities of the plan, was $-1,458,046 as of the end of plan year, compared to $-11,931,315 as of the beginning of the plan year. During the plan year the plan experienced a change in its net assets of $10,473,269. This change includes unrealized appreciation and depreciation in the value of plan assets; that is, the difference between the value of the plan's assets at the end of the year and the value of the assets at the beginning of the year or the cost of assets acquired during the year. During the plan year, the plan had total income of $158,275,709 including employer contributions of $122,810,536, employee contributions of $34,663,496, gains/(losses) of $0 from the sale of assets, and earnings from investments of $506,520. Plan expenses were $147,802,440. These expenses included $8,601,088 in administrative expenses, $139,201,352 in benefits paid to participants and beneficiaries, and $0 in other expenses.

### Your Rights to Additional Information

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:

1. An accountant's report.

2. Financial information and information on payments to service providers.

3. Assets held for investment.

4. Transactions in excess of 5 percent of the plan assets.

5. Insurance information including sales commissions paid by insurance carriers.

You have the right to receive a copy of the full annual report, or any part thereof, on request. To obtain a copy of the full annual report, or any part thereof, write or call Nortel HR Shared Services, Mail Stop 570/02/0C2 P.O. Box 13010, Research Triangle Park, NC 27709-3010, (800) 676-4636

You also have the legally protected right to examine the annual report at the main office of the plan: Nortel HR Shared Services, 4001 East Chapel Hill Nelson Highway, Research Triangle Park, NC 27709-3010 and at the U.S. Department of Labor in Washington, D.C., or to obtain a copy from the U.S. Department of Labor upon payment of copying costs. Requests to the Department should be addressed to: Public Disclosure Room, Room N-1513, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## SUMMARY ANNUAL REPORT FOR
## NORTEL NETWORKS VOLUNTARY EMPLOYEE BENEFICIARY ASSOC

This is a summary of the annual report of the NORTEL NETWORKS VOLUNTARY EMPLOYEE BENEFICIARY ASSOC, a health, life insurance, dental, vision and long-term disability plan (employer identification number 04-2486332), for the plan year 01/01/2009 through 12/31/2009. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

### Insurance Information

The plan has contracts with HAWAII MEDICAL SERVICES ASSOCIATION, EYEMED VISION CARE, EYEMED VISION CARE, EYEMED VISION CARE, EYEMED VISION CARE, EYEMED VISION CARE, PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUDENTIAL INSURANCE COMPANY OF AMERICA, HARVARD PILGRIM HEALTH CARE, HARVARD PILGRIM HEALTH CARE, KAISER FOUNDATINONHEALTH PLANS, INC. and EXCELLUS BLUECROSS BLUESHIELD, ROCHESTER to pay certain Kaiser Foundation Health Plans, Inc, Excellus-Blue Cross BlueSh claims incurred under the terms of the plan. The total premiums paid for the plan year ending 12/31/2009 were $5,923,733.

### Basic Financial Statement

The value of plan assets, after subtracting liabilities of the plan, was $-209,958 as of the end of plan year, compared to $-6,615,172 as of the beginning of the plan year. During the plan year the plan experienced a change in its net assets of $6,405,214. This change includes unrealized appreciation and depreciation in the value of plan assets; that is, the difference between the value of the plan's assets at the end of the year and the value of the assets at the beginning of the year or the cost of assets acquired during the year. During the plan year, the plan had total income of $126,223,726 including employer contributions of $91,502,244, employee contributions of $34,657,579, gains/(losses) of $0 from the sale of assets, and earnings from investments of $63,903. Plan expenses were $119,818,512. These expenses included $8,897,993 in administrative expenses, $110,920,519 in benefits paid to participants and beneficiaries, and $0 in other expenses.

### Your Rights to Additional Information

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:

1.    An accountant's report.

2.    Financial information and information on payments to service providers.

3.    Assets held for investment.

4.    Transactions in excess of 5 percent of the plan assets.

5.    Insurance information, including sales commissions paid by insurance carriers.

To obtain a copy of the full annual report, or any part thereof, write or call  Nortel Networks HR Shared Services – MS 570020C2 4001 E. Chapel Hill-Nelson Hwy P.O. Box 13010 Research Triangle Park, NC 27709 and phone number, 1-800-676-4636.

You also have the right to receive from the plan administrator, on request and at no charge, a statement of the assets and liabilities of the plan and accompanying notes, or a statement of income and expenses of the plan and accompanying notes, or both. If you request a copy of the full annual report from the plan administrator, these two statements and accompanying notes will be included as part of that report. The charge to cover copying costs given above does not include a charge for the copying of these portions of the report because these portions are furnished without charge.

You also have the legally protected right to examine the annual report at the main office of the plan: MS 570020C2 4001 E. Chapel Hill-Nelson Hwy P.O. Box 13010 Research Triangle Park, NC 27709 , and at the U.S. Department of Labor in Washington, D.C., or to obtain a copy from the U.S. Department of Labor upon payment of copying costs. Requests to the Department should be addressed to: Public Disclosure Room, Room N-1513, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**EXHIBIT N**

## SUMMARY ANNUAL REPORT FOR
## NORTEL NETWORKS WELFARE BENEFITS PLAN

This is a summary of the annual report of the NORTEL NETWORKS WELFARE BENEFITS PLAN, a health, life insurance, dental, vision and long-term disability plan (Employer Identification Number 04-2486332), for the plan year 01/01/2010 through 12/31/2010. The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA).

NORTEL NETWORKS, INC. has committed itself to pay certain claims incurred under the terms of the plan.

### Insurance Information

The plan has insurance contracts with ANTHEM BLUECROSS BLUESHIELD, CIGNA HEALTHCARE, MEDCO, OPTUM, EYEMED VISION CARE and PRUDENTIAL INSURANCE COMPANY OF AMERICA, to pay certain Health, Vision, Life insurance, Dental, HOSPITAL, and SURGICAL claims incurred under the terms of the plan. The total premiums paid for the plan year ending 12/31/2010 were $2,259,104.

### Your Rights to Additional Information

You have the right to receive a copy of the full annual report, or any part thereof, on request. The items listed below are included in that report:

1.    Financial information and information on payments to service providers.

2.    Insurance information, including sales commissions paid by insurance carriers.

To obtain a copy of the full annual report, or any part thereof, write or call the office of Julie Graffam, who is a representative of the plan administrator, at 4001 EAST CHAPEL HILL NELSON HIGHWAY, RESEARCH TRIANGLE PARK, NC 27709 and phone number, 972-362-7151.

You also have the legally protected right to examine the annual report at the main office of the plan: 4001 East Chapel Hill Nelson Hwy, Research Triangle Park, NC 27709, and at the U.S. Department of Labor in Washington, D.C., or to obtain a copy from the U.S. Department of Labor upon payment of copying costs. Requests to the Department should be addressed to: Public Disclosure Room, Room N-1513, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**EXHIBIT O**

## ERISA INFORMATION

| | |
|---|---|
| *Plan Name* | The Northern Telecom Inc.<br>**Weekly Disability and Long Term Disability Plan** |
| *Employer Identification Number* | 04-2486332 |
| *Plan Number* | 509 |
| *Plan Sponsor* | Northern Telecom Inc.<br>200 Athens Way<br>Nashville, Tennessee 37228 |
| *Type of Plan* | **Welfare** |
| *Plan Year* | January 1 to December 31 |
| *Plan Administrator* | Northern Telecom Inc.<br>200 Athens Way<br>Nashville, Tennessee 37228<br>Tel: (615) 734-4000 |
| *Agent for Service of Legal Process* | Plan Administrator |
| *Claims Administrator for Long Term Disability Plan* | CIGNA<br>Hartford, CT 06152 |

Benefits under this Plan are provided by Northern Telecom Inc. Company costs are paid out of current or accumulated earnings and profits.

16

**EXHIBIT P**

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of this Plan. The people who operate this Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including the Company, your union, or any other person, may terminate you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA. If your claim for a welfare benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have your claim reviewed. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from this Plan and do not receive them within thirty (30) days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay the court costs and legal fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous. If you have any questions about this Plan, you should contact the Plan Administrator, your Director of Human Resources, or the Director of Benefits for Northern Telecom Inc. If you have any questions about this statement or about your rights under ERISA you should contact the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor.

The Plan Administrator shall have discretionary authority to determine the benefits owing under this Plan, to otherwise interpret the provisions of this Plan and to make any necessary factual determinations hereunder.

**EXHIBIT Q**

---

### HR SHARED SERVICES U.S. - TERMINATION NOTIFICATION
### PROBUSINESS / SAP INFORMATION

---

EMPLOYEE NAME: <u>Carmel  Totman</u>

GLOBAL ID: <u>0200522</u>

TERMINATION EFFECTIVE DATE: <u>2010/08/31</u>

ENTITY: <u>LTD</u>        DEPT: <u>8900</u>

BENEFITS END DATE: <u>2010/08/31</u>

EMPLOYEE STATUS:  Full Time: <u>F</u>
Part Time:

CONTINUOUS SERVICE DATE : <u>1984/03/26</u>

LOCATION : <u>438</u>

EMPLOYEE ADDRESS:

LOCATION  DESCRIPTION: <u>NASHF</u>

164 BERTON STREET
BOONE
NC 28607

---

SAP ACTION CODE : <u>84</u>

SAP SEPARATION REASON CODE:
<u>33</u>
SAP SEPARTION REASON DESCRIPTION:
<u>Work force reduction</u>

---

### WITHHOLDINGS & AMOUNTS OWED

Nortel will withhold any and all applicable federal, state, or local tax from any monies or monetary equivalents paid. In addition, Nortel may, to the extent permitted by law, deduct from any payment provided to Employee any amounts (including, but not limited to, any advance, loans, overpayment, excess commissions or other monies including the monetary equivalent of equipment not returned to Nortel) that Nortel has determined that Employee owes Nortel without prejudice to subsequent revision or other collection methods.

**EMPLOYEE DATA**

Notice Date:  2010/08/31

Employee: Carmel  Totman

Employee Number: 0200522

Continuous Service Date: 1984/03/26

Severance Eligibility Date: 1984/03/26

Employment Termination Date: 2010/08/31

Severance Stop Date: 2011/03/29

Employee Home Address:

164 BERTON STREET
BOONE
NC        28607

Severance Period (for employees with at least 6
months of service): 30
(Number of Weeks to Commence Following
Termination Date)

HR Contact: Nortel HR Shared Services
            Mail Stop 570/02/0C2
            PO Box 13010
            4001 E. Chapel Hill-Nelson Hwy
            Research Triangle Park, NC  27709-3010
            1-800-676-4636

## EXHIBIT R

## EXHIBIT A
## NORTHERN TELECOM INC. SEVERANCE ALLOWANCE PLAN

## ARTICLE 1

## INTRODUCTION

1.1     The Northern Telecom Inc. Severance Allowance Plan is hereby established, effective as of September 1, 1986, to provide a severance allowance to assist certain terminated employees, as defined in Section 2.1 hereof. This Plan supersedes in its entirety Northern Telecom Inc. Corporate Procedure 80019.01 and such procedure is hereby revoked in its entirety.

1.2     This Plan is applicable to all Employees, as defined below, who have six (6) months or more of Service and whose employment is terminated as specified in Section 2.1.

1.3     Whenever used in this Plan, the following terms shall have the following meanings:

        a.     "Affiliate" shall mean Northern Telecom Limited and any company wholly or partially owned, directly or indirectly, by Northern Telecom Limited, excluding any Employer.

        b.     "Base Weekly Salary" shall mean, as determined solely by the Plan Administrator, an Employee's basic gross weekly salary in effect on the day immediately prior to the effective date of the termination of an Employee's employment with an Employer, and excluding any other compensation, including, without limitation, bonus or incentive compensation payments, overtime pay, interest differential payments or other relocation allowances, or the value of any other benefits to which an Employee may be entitled; provided, however, that if: (i) an employee is a Part-Time Employee, "Base Weekly Salary" as defined in this Section 1.3(b) shall be computed on the basis of a twenty-five (25) hour work week irrespective of the number of hours such Part-Time Employee actually works or is scheduled to work; and (ii) an Employee receives all or a portion of his compensation in the form of sales commissions and/or sales bonuses, "Base Weekly Salary" shall be calculated on the basis of such Employee's Total Targeted Compensation divided by fifty two (52).

        c.     "Board" shall mean the Board of Directors of Northern Telecom Inc.

        d.     "Employee" shall mean any Full-Time Employee or Part-Time Employee, as defined herein, of an Employer, excluding employees covered by a collective bargaining agreement unless such agreement specifically provides for their inclusion in this Plan.

        e.     "Employer" shall mean Northern Telecom Inc. or any of its United States subsidiaries and affiliates that have adopted this Plan. A subsidiary or affiliate for purposes of this definition shall include any entity of which Northern Telecom

9/1/94

LTD-002031

may be paid to the Employee in a single lump sum at or about the time of the Employee's termination of employment. All severance allowance payments shall be subject to applicable F.I.C.A. and federal, state and/or local income tax withholding as determined solely by the Employer.

2.8    If an Employee receiving a severance allowance dies before receiving full payment of his severance allowance, the balance of such Employee's severance allowance remaining unpaid at the time the Plan Administrator is notified of the Employee's death shall be paid in a single lump sum to the beneficiary(ies) most recently designated by the Employee in connection with the Employee's participation in the group term life insurance coverage under the Northern Telecom Inc. FLEX Benefits Program (whether or not the Employee is then covered for such group term life insurance) or, if no such beneficiary(ies) have been so designated, to the Employee's estate.

2.9    With respect to terminated Employees who qualify for a severance allowance pursuant to this Article 2, in addition to such severance allowance, the Employee shall elect to continue all of the following benefit coverages which he had in effect as of the day immediately preceding the effective date of termination for a period which is the longer of (i) ninety (90) days from the effective date of termination or (ii) the Severance Period, but in no event exceeding six (6) months from the effective date of the Employee's termination, under the conditions set forth below, or such Employee shall elect to revoke all such benefit coverages effective as of the end of the calendar month in which his termination occurs.

a.    Group term life insurance coverage as provided under the Northern Telecom Inc. FLEX Benefits Program (including, if enrolled at the time of termination, optional group term life insurance coverage for the Employee, his spouse, and/or his dependent children) and the Employee contributions for such continued coverage shall be at the net active employee contribution rate, as determined solely by the Employer, and shall be deducted from severance allowance payment(s) as provided in Section 4.6; and

b.    Medical, dental, vision, and hearing coverage, the Employee Assistance Program and the Health Care Reimbursement Account as provided under the Northern Telecom Inc. FLEX Benefits Program (including, if enrolled at the time of termination, dependent and domestic partner coverage under the foregoing plans), and the Employee contributions for such continued coverage shall be at the net active employee contribution rate, as determined solely by the Employer, and shall be deducted from severance allowance payment(s) as provided in Section 4.6. Such period of coverage shall be considered to be part of the period of continued coverage required to be offered under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

2.10    If a terminated Employee receiving a severance allowance under this Plan in installment payments pursuant to Section 2.7 is subsequently reemployed prior to the expiration of the Severance Period as a Full-Time or Part-Time Employee by an Employer, an Affiliate or BCI Incorporated, irrespective of any differences between the new position and the former, including, without limitation, any resulting change

9/1/94                                    -5-

LTD-002035

## ARTICLE 3

## ADMINISTRATION AND FUNDING

**3.1**   This Plan shall be administered by the Plan Administrator who shall be the named fiduciary.  The Plan Administrator may delegate responsibility for administrative tasks required under this Plan to designated employees of an Employer and/or to other agents.  The Plan Administrator shall have discretionary authority to interpret the terms and benefits under this Plan and to make determinations regarding factual matters pertaining to the Plan and any benefits thereunder.

**3.2**   The Plan Administrator shall rule upon all questions concerning the application or interpretation of the provisions of this Plan.  Entitlement to benefits under this Plan shall be determined in accordance with the provisions of this Plan in effect at the time of the termination of an Employee's employment with an Employer.

**3.3**   This Plan is an unfunded plan and all severance allowances and other benefits payable under this Plan and all administrative expenses shall be paid from the general assets of the applicable Employer.

**3.4**   All claims relating to benefits under this Plan will be directed in writing to the attention of the Plan Administrator. If the Plan Administrator determines that any individual who has claimed a right to receive benefits under this Plan is not entitled to receive all or any part of the benefits claimed, he shall inform the claimant by certified mail of this determination and the reasons therefor in layman's terms, with specific reference to pertinent Plan provisions and with a description of the review procedures set forth below. The claimant may, within sixty (60) days of receipt of such determination, submit to the Plan Administrator by certified mail such further information as will, in the claimant's opinion, establish the claimant's right to such benefits. Within sixty (60) days after receipt of this further information, the Plan Administrator shall render his decision, with the specific reasons therefore, in writing, and shall transmit same to the claimant by certified mail, which decision shall be final subject to the right of the claimant to pursue such legal remedies, if any, as may be available.

9/1/94                                      - 8 -

LTD-002038