**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------X
    :
*In re*                              :       Chapter 11
    :
Nortel Networks Inc., *et al.*,[1]      :       Case No. 09-10138 (KG)
    :
              Debtors.    :       Jointly Administered
    :
    :       **Hearing date:  December 5, 2012 at 10:00 a.m. (ET)**
    :       **Objections due: November 28, 2012 at 4:00 p.m. (ET)**
------------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR
ENTRY OF AN ORDER APPROVING SETTLEMENT WITH
<u>NORTEL NETWORKS (IRELAND) LIMITED</u>**

Nortel Networks International Inc. ("<u>NN Int'l Inc.</u>" or the "<u>Debtor</u>" and together with

certain of its affiliates, the "<u>Debtors</u>"), as debtor and debtor in possession, hereby moves this

Court (the "<u>Motion</u>") for the entry of an order, substantially in the form attached hereto as

<u>Exhibit A</u> (the "<u>Proposed Order</u>"), pursuant to sections 105(a), 502, and 503(b)(9) of title 11 of

the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (a) approving NN Int'l Inc.'s entry into that

certain Settlement Agreement dated November 19**,** 2012, attached hereto as <u>Exhibit B</u> (the

"<u>Settlement Agreement</u>"), by and among NN Int'l Inc. and Nortel Networks (Ireland) Limited (in

Administration) ("<u>NN Ireland</u>" and, together with NN Int'l Inc., the "<u>Parties</u>"); (b) authorizing

NN Int'l Inc. to take all necessary actions to enter into and fulfill its obligations under the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Settlement Agreement; and (c) granting NN Int'l Inc. such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtor respectfully represents as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 502, and 503(b)(9) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

### Background

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice under the Companies' Creditors Arrangement Act (Canada),

seeking relief from their creditors and a Monitor, Ernst & Young Inc., was appointed by the

Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration

(the "English Proceedings") under the control of individuals from Ernst & Young LLP

(collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the

future may commence additional creditor protection, insolvency and dissolution proceedings

around the world.

6.      Since the Petition Date, Nortel has sold its business units and assets to various

purchasers.  For further information regarding these chapter 11 cases, reference may be made to

the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7.      By this Motion, the Debtor seeks an order, pursuant to sections 105(a), 502, and

503(b)(9) of the Bankruptcy Code and Bankruptcy Rule 9019, (a) approving NN Int'l Inc.'s

entry into the Settlement Agreement; (b) authorizing NN Int'l Inc. to take all necessary actions to

enter into and fulfill its obligations under the Settlement Agreement; and (c) granting such

related relief as the Court deems just and appropriate.

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., NN Ireland, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

## Facts Relevant to this Motion

**A.    Claims**

8.    NN Int'l Inc. has a branch office (the "Dubai Branch") registered in the Dubai Silicon Oasis Authority, Dubai, United Arab Emirates, which has ceased all operations, terminated all employees and is preparing for de-registration.  Historically, the Dubai Branch provided sales support for certain Nortel affiliates, including NN Ireland, and in so doing employed certain persons (the "Dubai Employees") in connection with contracts relating to Nortel's Enterprise Solution Business (the "Dubai Contracts").  The Dubai Employees are no longer employed by Nortel.

9.    NN Ireland is an EMEA Debtor that is incorporated in Ireland and has its registered office in Ireland.  It has ceased trading and is currently focused on the winding up of its affairs.  Historically, NN Ireland received revenues generated from the Dubai Contracts and made pre-payments to the Dubai Branch for the costs of the Dubai Employees.

10.    After termination of the Dubai Employees, NN Ireland issued invoices (the "Employee Payment Invoices") to the Dubai Branch requesting the return of certain payments made to fund employee costs that did not materialize.  The Employee Payment Invoices included $1,090,679 in payments advanced to the Dubai Branch prior to the Petition Date (the "Pre-Filing Employee Costs") in addition to $334,393 in payments advanced to the Dubai Branch after the Filing Date (the "Post-Filing Employee Costs," such amounts constituting the "NN Ireland Post-Filing Claim").

11.    NN Ireland also funded certain project costs which arose prior to the Petition Date in the amount of $68,440 (the "Project Costs," and together with the Pre-Filing Employee Costs, the "NN Ireland Pre-Filing Claim").

12.     On or about September 29, 2009, NN Ireland filed proof of claim No. 5119, asserting claims against NN Int'l Inc. in an unspecified amount (the "Initial Proof of Claim"). On May 10, 2011, the Court entered the Order Requiring EMEA Claimants to File a More Definite Statement of Claim and Setting a Deadline for the Filing of any Proofs of Claim by the EMEA Claimants [D.I. 5402]. On or about June 3, 2011, NN Ireland filed proof of claim No. 7761, amending the Initial Proof of Claim and asserting a claim in the amount of $1,155,742.06 for outstanding intercompany trading debts (the "Amended Proof of Claim").

13.     NN Ireland owes the Dubai Branch $2,826,092 in connection with certain administrative costs incurred by the Dubai Branch for the benefit of NN Ireland, of which $1,274,205 arose prior to the Petition Date (the "NN Int'l Inc. Pre-Filing Claim" and, together with the NN Ireland Pre-Filing Claim, the "Pre-Filing Claims") and $1,551,887 arose after the Petition Date (the "NN Int'l Inc. Post-Filing Claim" and, together with the NN Ireland Post-Filing Claim, the "Post-Filing Claims").

B.     The Settlement Agreement

14.     Currently, NN Int'l Inc.'s principal objective with respect to the Dubai Branch is the winding down of its affairs, including the resolution of the Pre-Filing Claims and the Post-Filing Claims, in order to facilitate the Dubai Branch's deregistration. In addition, both NN Ireland and NN Int'l Inc. desire to avoid the cost, risks, and burden that would be imposed if they were to litigate the Pre-Filing Claims and Post-Filing Claims. Accordingly, NN Ireland and NN Int'l Inc. entered into negotiations with one another in an effort to settle such obligations. After extended arm's-length negotiations, the Parties reached an agreement on the terms set forth in the Settlement Agreement, attached hereto as Exhibit B.

5

15.    The main terms of the ATPA are as follows:[5]

- Acceptance of Employee Payment Invoices: NN Int'l Inc. agrees to accept the Employee Payment Invoices.

- Setoff and acknowledgment of Pre-Filing Claims: The Parties agree to set off the full amount of the NN Ireland Pre-Filing Claim against the full amount of the NN Int'l Inc. Pre-Filing Claim (the "Pre-Filing Claim Set-Off").[6] After set-off, NN Int'l Inc. shall have a general unsecured claim against NN Ireland in the amount of $115,086 (the "NN Int'l Inc. Pre-Filing Net Claim"), reflecting the net balance after the Pre-Filing Claim Setoff.

- Setoff and payment of Post-Filing Claims: The Parties agree to set off the full amount of the NN Ireland Post-Filing Claim against the full amount of the NN Int'l Inc. Post-Filing Claim (the "Post-Filing Claim Set-Off"). NN Ireland agrees promptly, and in no event later than three days after the Effective Date (as defined below), to pay $1,217,494 to NN Int'l Inc. (the "Post-Filing Claim Payment"), reflecting the net balance after the Post-Filing Claim Set-Off.

- Settlement of existing claims: Upon the completion of the Post-Filing Claim Payment, the Settlement Agreement shall constitute a full and final settlement of any and all Claims held by any Party against any Releasee except for the NN Int'l Inc. Pre-Filing Net Claim and claims arising under the Settlement Agreement. The NN Int'l Inc. Pre-Filing Net Claim shall supersede any assertion or allegation of a pre-filing Claim which NN Int'l Inc. may have against NN Ireland, and shall be deemed an approved, agreed, allowed, or admitted claim against NN Ireland in the English Proceedings. Any proofs of claim and allegations or assertions of any and all Claims which NN Int'l Inc. may have filed against or otherwise asserted against NN Ireland shall be deemed disallowed or rejected. Any and all proofs of claim which NN Ireland may have filed or otherwise asserted against NN Int'l Inc., including but not limited to the Amended Proof of Claim, shall be disallowed or rejected.

---

[5]    Capitalized terms used in this section but not defined herein have the meanings ascribed to them in the Settlement Agreement. A form of the Settlement Agreement is attached hereto as Exhibit B. In the event of any inconsistencies between the Settlement Agreement and the Motion, the Settlement Agreement shall control.

[6]    The underlying set off of amounts owed among the Debtors and their affiliates, including those between the Debtors and EMEA Debtors such as NN Ireland, was approved by this Court in its Order (A) Approving the Continued Use of the Cash Management System, Bank Accounts and Business Forms; (B) Permitting Continued Intercompany Transactions, Granting Administrative Priority Status to Postpetition Intercompany Claims and Preserving and Permitting the Exercise of Intercompany Setoff Rights; (C) Authorizing Banks to Honor Certain Transfer and Charge Certain Fees and Other Amounts; and (D) Waiving the Requirements of 11 U.S.C. Section 345(b) on an Interim Basis (the "Cash Management Order") [D.I. 64]. Both the Pre-Filing Claim Set-Off and the Post-Filing Claim Set-Off (as defined below) constitute Intercompany Transactions as defined in the Debtors' Motion for the Cash Management Order [D.I. 9] (the "Cash Management Motion"). See Cash Management Motion at ¶ 89.

- <u>Mutual Release</u>: Upon the receipt by NN Int'l Inc. of the Post-Filing Claim Payment, the Parties release one another and their respective directors, officers, employees, agents, attorneys, advisors, predecessors, successors and assigns for any and all claims which they have, had, or may have against the Releasees except for the NN Int'l Inc. Pre-Filing Net Claim and Claims arising under the Settlement Agreement.

- <u>Condition to Effectiveness</u>: Other than with respect to the mutual release, which is effective upon receipt of the Post-Filing Claim Payment, the above provisions of the Settlement Agreement shall be effective upon entry by the Court of an order approving the entirety of the Settlement Agreement and such order becoming final and non-appealable (the date that such order becomes final and non-appealable, the "<u>Effective Date</u>").

- <u>Reservation of Rights Regarding Jurisdiction</u>: Neither any provision of the Settlement Agreement, the allowance of the NN Int'l inc. Pre-Filing Net Claim, nor any action taken by NN Int'l Inc. pursuant thereto, including, without limitation, filing or otherwise asserting the NN Int'l Inc. Pre-Filing Net Claim before the administrator or court overseeing NN Ireland's Administration, shall constitute consent of NN Intl'l Inc. to the jurisdiction of such court.

16.     The effect of the Settlement Agreement is to facilitate the wind-down and de-registration of the Dubai Branch, to avoid the need for litigation regarding the validity of claims made by NN Ireland against NN Int'l Inc. and *vice versa*, and to enable the immediate payment of more than $1.2 million to NN Int'l Inc.  NN Int'l Inc. believes, in the exercise of its business judgment, that entry into the Settlement Agreement is appropriate and in the best interests of both its estate and its creditors.

## Basis for Relief

17.     The relief requested in this Motion is authorized by sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.  See In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the

orderly conduct of reorganization proceedings."); In re VII Holdings Co., 362 B.R. 663, 668

(Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on

the Court.") (citing In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004)).

18.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement." Fed. R.

Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are

favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

(quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health

Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally

favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'[i]n administering

reorganization proceedings in an economical and practical manner it will often be wise to

arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re

Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And

courts in this District have recognized that the approval of a proposed compromise and

settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram

Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

19.     Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re

Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer

Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

        20.     The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),

283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

        21.     The Debtor respectfully submits that the Settlement Agreement meets each of the

requirements under Bankruptcy Rule 9019.    The Settlement Agreement is proposed as a good

faith means to avoid the potential cost and delay of litigation relating to the claims between the

Parties.  There is no dispute between the Parties as to the amounts of the Pre-Filing Claims and

the Post-Filing Claims.  The Settlement Agreement provides clarity with respect to the

settlement of those claims as well as a full and final release of any other potential claims the

Parties may hold against each other.  Furthermore, the Settlement Agreement also provides for

the immediate payment of $1.2 million in post-petition amounts to NN Int'l Inc.  Any attempt to

resolve the issues addressed in the Settlement Agreement through litigation would be costly and

time-consuming and would delay or frustrate the release of those funds to the NN Int'l Inc.  As a

result, any potential benefit of such an approach is outweighed by the potential cost, risk and delay of litigation. Finally, the settlement of the Pre-Filing and Post-Filing Claims as contemplated by the Settlement Agreement will greatly assist in the expeditious de-registration of the Dubai Branch.

22.     The Debtor submits that approval of the Settlement Agreement, and the terms and conditions of each are fair and reasonable. The Settlement Agreement has been proposed in good faith upon reasonable and adequate notice, and is in the best interest of NN Int'l Inc.'s estate, creditors and other stakeholders and should, therefore, be approved by the Court.

23.     In light of the foregoing, the Debtor respectfully seeks authorization to enter into the Settlement Agreement.

## Notice

24.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the Joint Administrators; (v) counsel to NN Ireland; and (vi) the general service list established in these chapter 11 cases. The Debtor submits that under the circumstances no other or further notice is necessary.

## No Prior Request

25.     No prior request for the relief sought herein has been made to this or any other court.

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated:  November 19, 2012         CLEARY GOTTLIEB STEEN & HAMILTON LLP
      Wilmington, Delaware

                         James L. Bromley (admitted *pro hac vice*)
                         Lisa M. Schweitzer (admitted *pro hac vice*)
                         One Liberty Plaza
                         New York, New York 10006
                         Telephone:  (212) 225-2000
                         Facsimile:  (212) 225-3999

                            - and -

                         MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                         */s/ Ann C. Cordo*
                         Derek C. Abbott (No. 3376)
                         Ann C. Cordo (No. 4817)
                         1201 North Market Street
                         P.O. Box 1347
                         Wilmington, Delaware 19801
                         Telephone:  (302) 658-9200
                         Facsimile: (302) 658-3989

                         *Counsel for the Debtors*
                         *and Debtors in Possession*