**EXHIBIT B**

**EXECUTION VERSION**

# SETTLEMENT AGREEMENT
## (NN INT'L INC./NN IRELAND)

This agreement (the "Agreement") dated as of the 19th day of November, 2012 is entered into by and between Nortel Networks International Inc. ("NN Int'l Inc.") and Nortel Networks (Ireland) Limited (in Administration) ("NN Ireland"), which is acting by its joint administrators Alan Robert Bloom of Ernst & Young LLP of 1 More London Place, London SE1 2AF and David Hughes of Ernst & Young Chartered Accountants of Harcourt Centre, Harcourt Street, Dublin 2, Ireland (the "Joint Administrators"), who act as agents for NN Ireland without any personal liability whatsoever. NN Int'l Inc., NN Ireland and the Joint Administrators are referred to herein each as a "Party" and collectively as the "Parties". The Joint Administrators, in their respective personal capacities, shall be party to this Agreement as provided in Section 4.6 solely for the purpose of obtaining the benefit of the provisions of this Agreement expressed to be conferred on or given to them and references to the Parties shall be construed accordingly.

## RECITALS

WHEREAS, on January 14, 2009 (the "Filing Date") Nortel Networks Inc. and its affiliated debtors and debtors in possession (including NN Int'l Inc., but not Nortel Networks (CALA) Inc., whose filing date was July 14, 2009) filed voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "US Court") under chapter 11 of title 11 of the United States Code; and

WHEREAS, on the Filing Date, NN Ireland and certain of its affiliated debtors commenced administration proceedings before the High Court of Justice in London, England, represented by individuals from Ernst & Young LLP and Ernst & Young Chartered Accountants, serving as administrators in such proceedings (the "Administration"); and

WHEREAS, NN Int'l Inc. has a branch office (the "Dubai Branch") registered in the Dubai Silicon Oasis Authority, Dubai, United Arab Emirates, which provided sales support for other Nortel affiliates, including NN Ireland, and employed certain persons (the "Dubai Employees") in connection with contracts relating to Nortel's Enterprise Solution Business (the "Dubai Contracts"); and

WHEREAS, NN Ireland received revenue generated from the Dubai Contracts and was responsible for the costs of the Dubai Employees, which costs NN Ireland pre-paid to the Dubai Branch; and

WHEREAS, as of January 6, 2010, the Dubai Employees were no longer employed by Nortel;

WHEREAS, NN Ireland has issued invoices (the "Employee Payment Invoices") to the Dubai Branch requesting return of amounts totaling $1,425,072 advanced by NN Ireland for anticipated costs of the Dubai Employees which never

materialized, $1,090,679 of which were advanced by NN Ireland to the Dubai Branch prior to the Filing Date (the "Pre-Filing Employee Costs") and $334,393 of which were advanced by NN Ireland to the Dubai Branch after the Filing Date (the "NN Ireland Post-Filing Claim"); and

WHEREAS, the Dubai Branch owes NN Ireland $68,440 in connection with certain project costs which arose prior to the Filing Date (the "Project Costs" and together with the Pre-Filing Employee Costs, the "NN Ireland Pre-Filing Claim"); and

WHEREAS, NN Ireland owes the Dubai Branch $2,826,092 in connection with certain administrative costs, $1,274,205 of which arose prior to the Filing Date (the "NN Int'l Inc. Pre-Filing Claim") and $1,551,887 of which arose after the Filing Date (the "NN Int'l Inc. Post-Filing Claim"); and

WHEREAS the Parties wish to settle and resolve such pre-filing and post-filing amounts and certain other issues outstanding between them as described herein on the terms and conditions set out herein;

NOW THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES HEREBY AGREE AS FOLLOWS:

### ARTICLE I — FULL AND FINAL SETTLEMENT

1.1   The Parties hereby acknowledge and agree that upon the Effective Date (as defined below):

    (a)   NN Int'l Inc. shall accept the Employee Payment Invoices;

    (b)   the NN Ireland Pre-Filing Claim and NN Int'l Pre-Filing Claim shall be set-off against each other (the "Pre-Filing Claim Set-Off");

    (c)   NN Int'l Inc. shall have a general unsecured claim against NN Ireland in the amount of $115,086 reflecting the net balance after the Pre-Filing Claim Set-Off (the "NN Int'l Inc. Pre-Filing Net Claim");

    (d)   the NN Ireland Post-Filing Claim and NN Int'l Post-Filing Claim shall be set-off against each other (the "Post-Filing Claim Set-Off"); and

    (e)   NN Ireland shall promptly, and in any event no later than three Business Days after the Effective Date, pay $1,217,494 to NN Int'l Inc., reflecting the net balance after the Post-Filing Claim Set-Off (the date on which all of (a)-(e) above have occurred, the "Release Effective Date").

1.2   In consideration of the obligations, covenants and rights of the Parties set forth in this Agreement, the Parties hereby agree that, upon the Release Effective Date,

2

(a) this Agreement shall constitute a full and final settlement of (x) any and all claims, rights, debts, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, whether sounding in contract, tort or otherwise (collectively, the "Claims") by any Party against a Releasee (as defined below), except for (i) the NN Int'l Inc. Pre-Filing Net Claim and (ii) Claims arising under this Agreement (collectively, the "Surviving Obligations");

(b) the NN Int'l Inc. Pre-Filing Net Claim (i) shall supercede any assertion or allegation of a pre-filing Claim which NN Int'l Inc. or any of its predecessors, successors, and assignees, each in such capacities, may have against NN Ireland whether filed pursuant to NN Ireland's informal claims procedures or otherwise which could be the subject of a proof of claim in the Administration or any subsequent insolvency process of NN Ireland and (ii) shall be deemed an approved, agreed, allowed or admitted (as applicable) claim against NN Ireland in the Administration without any further action on the part of NN Int'l Inc.;

(c) any and all proofs of claims and allegations or assertions of any and all pre-filing and post-filing Claims which NN Ireland, or any of its predecessors, successors and assignees, each in such capacities, may have filed or otherwise asserted against NN Int'l Inc. or the Dubai Branch, including, but not limited to, proof of claim number 5119, and proof of claim number 7761 in the amount of $1,155,742.06, shall be deemed disallowed or rejected; and

(d) any and all proofs of claims and allegations or assertions of any and all pre-filing and post-filing Claims which NN Int'l Inc., or any of its predecessors, successors and assignees, each in such capacities, may have filed or otherwise asserted against NN Ireland other than the NN Int'l Pre-Filing Net Claim shall be deemed disallowed or rejected.

## ARTICLE II — RELEASES

2.1 Upon the Release Effective Date, each Party releases each other Party and its respective directors, officers, employees, agents, attorneys, advisors, predecessors, successors, assigns and, with respect to the release of NN Int'l Inc. by NN Ireland, the Dubai Branch (collectively, the "Releasees") from any and all Claims that such Party now has, had, or may have against any of the Releasees up to the date of this Agreement other than the Surviving Obligations (collectively, the "Released Claims") and agrees that it shall not allege, file or otherwise assert any Released Claim against any Releasee.

3

## ARTICLE III — REPRESENTATIONS AND WARRANTIES

3.1 Subject to the occurrence of the Effective Date (as defined below), each Party (but not, for the avoidance of doubt, the Joint Administrators in their personal capacities) hereby severally represents and warrants to each other that, as of the date hereof:

    (a) it has the power and authority to enter into this Agreement and to carry out its obligations hereunder;

    (b) the execution of this Agreement, and the consummation of the transactions contemplated herein, have been authorized by all necessary approvals, and no other act or proceeding on its part is necessary to authorize the execution of this Agreement; and

    (c) this Agreement has been duly executed by it and constitutes a legal, valid and binding obligation of such Party that is enforceable against it under all applicable laws and regulations.

## ARTICLE IV — MISCELLANEOUS

4.1 **US Court Approval**

    (a) No provision of this Agreement except the provisions of this Article IV shall be effective until the US Court shall have granted an order approving the entirety of this Agreement and all provisions and such order shall have become final and non-appealable (the date that such order becomes final and non-appealable, the "Effective Date").

4.2 **Reservation of Rights**

    (a) The Parties hereby acknowledge and agree that they are entering into this Agreement for settlement purposes only, that the settlements hereunder solely relate to rights and obligations between NN Int'l Inc. and NN Ireland and do not affect the rights or obligations between either Party and any other person and that nothing herein or the actions taken as a result hereof shall constitute an acknowledgment or admission as to the correct methodology for determining allocation of the proceeds of any transaction, including, without limitation, the sale of assets, business or intellectual property, that could be subject to allocation among any of the Parties or their affiliates, and shall not constitute an amendment, modification or waiver of rights of any Party or bar, prohibit, terminate or in any way hinder or enhance the rights of the Parties or their affiliates to present any arguments, methodologies, legal or factual theories in support of a proposed allocation of the proceeds of any transaction, including, without limitation, the sale of assets, business or intellectual property, that could be subject to allocation amongst any of the Parties or their affiliates, and

such presentation shall not, or otherwise be deemed to, constitute in any way a violation of a Party's rights under any existing agreement. The Parties agree that no Party or affiliate of such Party shall use as evidence, or otherwise rely upon, this Agreement or any part hereof in any way to support its right to a particular allocation of any sale proceeds.

(b) The Parties hereby acknowledge and agree that, in the event the Release Effective Date does not occur, nothing in this Agreement, including without limitation the provisions of Section 2.1 hereof, shall constitute an acknowledgment, admission, amendment, modification or waiver of Claims governed by this Agreement or any other rights or obligations of the Parties.

(c) For the avoidance of doubt, nothing in this Agreement constitutes a waiver of any Party's right to pursue, allege, file or otherwise assert any and all Claims that such Party now has, had or may have had against any other person or entity not party to this Agreement, including any Claims in which the Parties may be or have been jointly, severally or concurrently liable with any other person or entity not party to this Agreement, nor shall it constitute a waiver of such Party's right to defend, disallow or dispute any such Claims.

(d) The Parties hereby acknowledge and agree that, neither any provision of this Agreement, the allowance of the NN Int'l Inc. Pre-Filing Net Claim, nor any action taken by NN Int'l Inc. pursuant thereto including, without limitation, filing or otherwise asserting the NN Int'l Inc. Pre-Filing Net Claim before the administrator or court overseeing NN Ireland's Administration, shall constitute consent of NN Intl'l Inc. to the jurisdiction of such court.

4.3 **Governing Law and Jurisdiction.**

(a) This Agreement shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

(b) To the fullest extent permitted by applicable law, each Party (i) agrees to submit to the jurisdiction of the US Courts, for purposes of all legal proceedings to the extent relating to the matters agreed in this Agreement; (ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters in this Agreement must be commenced in (x) the US Court for any claim, action or proceeding if such claim, action or proceeding would affect NN Int'l Inc. and not affect NN Ireland, and (y) the courts of England and Wales if such claim, action or proceeding would affect NN Ireland or the Joint Administrators, but not affect NN Int'l Inc.; (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the

venue of any such action brought in such a court or any claim that any such action brought in such a court has been brought in an inconvenient forum; (iv) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof; and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

4.4  **Amendments**

(a) This Agreement may be amended, by means of a written amendment signed by all Parties, which amendments, if material, must be approved by the US Court.

4.5  **Counterparts**

(a) This Agreement may be executed in separate counterparts (which may include counterparts delivered by facsimile or other electronic transmission) and all of said counterparts taken together shall be deemed to be an original and shall be binding on the Party who signed the counterpart and all of which together shall constitute a single agreement.

4.6  **Joint Administrators**

(a) The Parties agree that the Joint Administrators have negotiated and are entering into this Agreement as agents for NN Ireland and that none of the Joint Administrators, their respective firms, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any Party to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

(b) The Joint Administrators are a Party to this Agreement:

(i) as agents of NN Ireland; and

(ii) in their own capacities solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the United Kingdom Insolvency Act 1986 and for the purposes of obtaining the benefit of the provisions of this Agreement expressed to be conferred on or given to the Joint Administrators and enforcing the obligations of certain other Parties to this Agreement.

4.7 **Several Obligations**

(a) Except as specifically set forth in this Agreement, the obligations of each Party hereunder are several, and not joint and several.

4.8 **Binding; Successors and Assigns**

(a) Except as otherwise expressly provided in this Agreement, all representations, warranties, covenants and agreements set forth in this Agreement by or on behalf of the Parties hereto will be binding upon and inure to the benefit of such Parties and their respective successors and permitted assigns, including, without limitation, any administrator, liquidator, trustee, receiver appointed as a successor or assign of any Party.

4.9 **Specific Performance**

(a) The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. Accordingly, in addition to any other remedies to which the Parties are entitled at law or in equity, each of the Parties shall be entitled to equitable relief to prevent or remedy breaches of this Agreement, without the proof of actual damages, including in the form of an injunction or injunctions or orders for specific performance in respect of such breaches.

4.10 **Entire Agreement**

(a) This Agreement constitutes the entire understanding and agreement between the signatories hereto in relation to the subject matter of this Agreement.

(b) Each Party acknowledges that it has not entered into this Agreement in reliance wholly or partly on any representation or warranty made by or on behalf of the other Party (whether orally or in writing) other than as expressly set out in this Agreement.

(c) The settlements contained in this Agreement are integrated and mutually dependent. In the event that any provision herein shall be illegal, invalid, or unenforceable, the entire Agreement shall be rendered null and void.

[Remainder of Page Intentionally Left Blank]

S-1

**NORTEL NETWORKS INTERNATIONAL INC.**

By: _____
Name: John J. Ray, III
Title: Principal Officer

*SETTLEMENT AGREEMENT (NN INT'L INC./NN IRELAND) – SIGNATURE PAGE*

SIGNED for and on behalf of Nortel                )
Networks (Ireland) Limited (in                    )
administration) by                                )
DAVID HUGHES                 as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

..........................................
Witness signature                                 )
                                                  )
                                                  )
Name:     Niamh J Coveney
Address:  c/o Ernst & Young
          Harcourt Street
          Dublin 2