## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re:* | ) Chapter 11 |
|  | ) Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.,*[1] | ) Jointly Administered |
|  | ) |
| Debtors. | ) <u>Objection Deadline</u>: December 10, 2012 at 4:00 pm (ET) |
|  | ) <u>Hearing Date</u>: Scheduled only if necessary |
|  | ) |

### FORTY-FOURTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM <u>SEPTEMBER 1 TO SEPTEMBER 30, 2012</u>
### (All Amounts in Canadian Dollars)

This is a(n): <u>x</u> monthly _____ interim _____ final application.

| | |
|---|---|
| Name of Applicant: | Fraser Milner Casgrain LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | March 5, 2009 (nunc pro tunc to January 26, 2009) |
| Period for which Compensation And Reimbursement is sought: | September 1 to September 30, 2012 |
| Amount of Compensation sought as actual, reasonable and necessary: | CDN $73,661.75 Equivalent to USD $73,786.97[2] |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | CDN $1,485.19 Equivalent to USD $1,487.71[2] |

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Forty-Third Monthly Fee Application was 0 hours and the corresponding compensation is CDN. $0).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

[2] Reuters Exchange Rate on November 20, 2012 is CDN. $1.00 : U.S. $1.0017

## SUMMARY OF LAWYERS AND PARALEGALS
### RENDERING SERVICES DURING THE PERIOD
### SEPTEMBER 1, 2012 THROUGH SEPTEMBER 30, 2012
### (All Amounts in Canadian Dollars)

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|------|-------|-----------|-------------------------------|-------|------|-------------|
| Andy Pushalik | Associate | Employment/Labour | Ontario - 2009 | 2.8 | $430.00 | $ 1,204.00 |
| Anneli LeGault | Partner | Employment/Labour | Ontario - 1982 | 2.4 | $800.00 | $ 1,920.00 |
| Mary Picard | Partner | Pensions/Benefits | Ontario - 1985 | 10.4 | $800.00 | $ 8,320.00 |
| Michael Wunder | Partner | Financial Restructuring | Ontario - 1990 | 39.4 | $785.00 | $ 30,929.00 |
| Ralph Shay | Partner | Commercial | Ontario - 1979 | 1.8 | $850.00 | $ 1,530.00 |
| Ryan Jacobs | Partner | Financial Restructuring | Ontario - 2011 | 12.1 | $725.00 | $ 8,772.50 |
| Shayne Kukulowicz | Partner | Financial Restructuring | Ontario - 1990 | 26.9 | $875.00 | $ 23,537.50 |
| | | | | | | |
| TOTAL | | | | 95.8 | CDN. | $ 76,213.00 |
| | Less: Non-Working Travel Time Discount (50% of $5,102.50) | | | | | -2551.25 |
| TOTAL | | | | | | $ 73,661.75 |

**COMPENSATION BY PROJECT CATEGORY**
**SEPTEMBER 1, TO SEPTEMBER 30, 2012**
**(All Amounts in Canadian Dollars)**

| Project Category | Hours | Value |
|---|---|---|
| Creditors Committee Meetings | 24.1 | $19,541.00 |
| General Claims Analysis/Claims Objections | 6.6 | $4,244.00 |
| Labour Issues/Employee Benefits | 0.9 | $735.00 |
| Telecommunications/Regulatory | 2.4 | $2,055.00 |
| Travel | 6.5 | $5,102.50 |
| Intercompany Analysis | 38.8 | $31,052.00 |
| Canadian Proceedings/Matters | 16.5 | $13,483.50 |
| **Total** | **95.8** | **$76,213.00** |
| **Less: Non-Working Travel Time Discount (50% of $5,102.50)** | | ($2,551.25) |
| **TOTAL** | | **$73,661.75** |

**DISBURSEMENT SUMMARY**
**SEPTEMBER 1 TO SEPTEMBER 30, 2012**
**(All Amounts in Canadian Dollars)**

<u>Non-Taxable Disbursements</u>

| | |
|---|---|
| Airfare/Travel | $ 676.36 |
| Long Distance Telephone Calls | $ 287.68 |
| Meals & Beverages | $ 61.80 |
| Photocopy & Printing Charges | $ 122.00 |
| Transportation Costs | $ 337.35 |
| | |
| Total Non-Taxable Disbursements | **$1,485.19 CDN.** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : Jointly Administered |
|  | : |
| Debtors | :**Objection Deadline:** December 10, 2012 at 4:00 pm (ET) |
|  | :**Hearing Date:** Scheduled only if necessary |

---------------------------------------------------------X

## FORTY-FOURTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP, CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM SEPTEMBER 1, 2012 THROUGH SEPTEMBER 30, 2012

Fraser Milner Casgrain LLP ("FMC" or the "Applicant"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its forty-fourth monthly application (the "Application") pursuant

to (i) sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii)

Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule

2016-2 of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local

Rules"), and (iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R.

Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation

and Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $73,146.94 and for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. ("NN CALA") (4226).

reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the amount of CDN. $1,485.19 for the period from September 1 through September 30, 2012 (the "Compensation Period"). In support of this Application, FMC respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 330 of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), except for NN CALA which filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

3.    The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act (Canada) ("CCAA"). The Canadian Debtors continue to operate their businesses and manage their

properties under the supervision of the Canadian Court, and the Monitor (as that term is defined below).

5.      On January 14, 2009, the High Court of Justice in England (the "U.K. Court") placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors" and, together with the Debtors and the Canadian Debtors, the "Nortel Debtors"), including Nortel Networks U.K. Limited ("NNUK"), into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrators").

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee.  The Committee currently consists of three members, as follows: (i) Law Debenture Trust Company of New York, as indenture trustee; (ii) Pension Benefit Guaranty Corporation; and (iii) The Bank of New York Mellon, as indenture trustee.  No trustee or examiner has been appointed in these chapter 11 cases.

7.      On March 5, 2009, this Court entered an order authorizing the retention of FMC as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009.  On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.      On June 10, 2009, FMC filed its First Interim Fee Application Request for the period January 26, 2009 through April 30, 2009 (the "First Interim Application").  In its First Interim Application, FMC sought the award and allowance of fees in the amount of CDN.

$1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $18,604.14 (including applicable taxes).  On July 17, 2009, this Court entered an order

approving 100% of the fees and expenses sought in the First Interim Application, and FMC has

received payment of such amounts.

      9.     On September 10, 2009, FMC filed its Second Interim Fee Application Request

for the period May 1, 2009 through July 31, 2009 (the "Second Interim Application").  In its

Second Interim Application, FMC sought the award and allowance of fees in the amount of

CDN. $1,335,961.21 (including applicable taxes) and the reimbursement of expenses in the

amount of CDN. $21,483.56 (including applicable taxes).  On September 30, 2009, this Court

entered an order approving 100% of the fees and expenses sought in the Second Interim

Application, and FMC has received payment of such amounts.

      10.    On November 25, 2009, FMC filed its Third Interim Fee Application for the

period from August 1, 2009 through October 31, 2009 (the "Third Interim Application").  In its

Third Interim Application, FMC sought the award and allowance of fees in the amount of CDN.

$1,252,173.56 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $29,664.94 (including applicable taxes).  On December 15, 2009, this Court entered an

order approving 100% of the fees and expenses sought in the Third Interim Application, and

FMC has received payment of such amounts.

      11.    On February 24, 2010, FMC filed its Fourth Interim Fee Application for the

period from November 1, 2009 through January 31, 2010 (the "Fourth Interim Application").  In

its Fourth Interim Application, FMC sought the award and allowance of its fees in the amount of

CDN.$1,222,600.68 (including applicable taxes) and the reimbursement of expenses in the

amount of CDN.$24,078.44 (including applicable taxes).  On March 17, 2010, this Court entered

an order approving 100% of the fees and expenses sought in the Fourth Interim Application, and FMC has received payment of such amounts.

12.     On June 1, 2010, FMC filed its Fifth Interim Application Request for the fee period from February 1, 2010 through April 30, 2010 (the "Fifth Interim Application"). In its Fifth Interim Application, FMC sought the award and allowance of fees in the amount of CDN.$1,545,435,79 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$30,093.86 (including applicable taxes). On June 24, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fifth Interim Application, and FMC has received payment of such amounts.

13.     On September 8, 2010, FMC filed its Sixth Interim Application Request for the fee period from May 1, 2010 through July 31, 2010 (the "Sixth Interim Application"). In its Sixth Interim Application, FMC sought the award and the allowance of fees in the amount of CDN.$737,880.08 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$30,971.07 (including applicable taxes). Upon September 30, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Sixth Interim Application and FMC has received payment of such amounts.

14.     On December 13, 2010, FMC filed its Amended Seventh Interim Application Request for the fee period from August 1, 2010 through October 31, 2010 (the "Seventh Interim Application"). In its Seventh Interim Application, FMC sought the award and the allowance of fees in the amount of CDN.$1,069,919.50 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$22,207.78 (including applicable taxes). On December 15, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Seventh Interim Application and FMC has received payment of such amounts.

15.     On March 2, 2011, FMC filed its Eighth Interim Application Request for the fee period from November 1, 2010 through January 31, 2011 (the "Eighth Interim Application"). In its Eighth Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,018,317.00 and the reimbursement of expenses in the amount of CDN. $27,950.74. On March 23, 2011, this Court entered an order approving 100% of the fees and expenses sought in the Eighth Interim Application. FMC has received payment of such amounts.

16.     On June 1, 2011, FMC filed its Ninth Interim Fee Application Request for the fee period from February 1, 2011 through April 30, 2011 (the "Ninth Interim Application"). In its Ninth Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $1,023,851.00 and the reimbursements of expenses in the amount of CDN. $32,082.90. On June 21, 2011, this Court entered an order approving 100% of the fees and expenses sought in the Ninth Interim Application. FMC has received payment of such amounts.

17.     On September 1, 2011, FMC filed its Tenth Interim Fee Application Request for the fee period from May 1, 2011 through July 31, 2011 (the "Tenth Interim Application"). In its Tenth Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $645,682.75 and the reimbursement of expenses in the amount of CDN. $11,314.54. On September 21, 2011, this Court entered an order approving 100% of the fees and expenses sought in the Tenth Interim Application. FMC has received payment of such amounts.

18.     On November 23, 2011, FMC filed its Eleventh Interim Fee Application Request for the fee period from August 1, 2011 through October 31, 2011 (the "Eleventh Interim Application"). In its Eleventh Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $801,049.75 and the reimbursement of expenses in the amount of CDN. $14,684.25. On December 14, 2011, this Court entered an order approving 100% of the fees and

expenses sought in the Eleventh Interim Application. FMC has received payment of such amounts.

19. On February 29, 2012, FMC filed its Twelfth Interim Fee Application Request for the fee period from November 1, 2011 through January 31, 2012 (the "Twelfth Interim Application"). In its Twelfth Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $171,686.25 and the reimbursement of expenses in the amount of CDN. $3,389.79. On March 22, 2012, this Court entered an order approving 100% of the fees and expenses sought in the Twelfth Interim Application. FMC has received payment of such amounts.

20. On May 30, 2012, FMC filed its Thirteenth Interim Fee Application Request for the fee period from February 1, 2012 through April 30, 2012 (the "Thirteenth Interim Application"). In its Thirteenth Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $264,863.00 and the reimbursement of expenses in the amount of CDN. $2,356.83. On June 21, 2012, this Court entered an order approving 100% of the fees and expenses sought in the Thirteenth Interim Application. FMC has received payment of such amounts.

21. On August 28, 2012, FMC filed its Fourteenth Interim Fee Application Request for the fee period from May 1, 2012 through July 31, 2012 (the "Fourteenth Interim Application"). In its Fourteenth Interim Application, FMC sought the award and allowance of fees in the amount of CDN. $230,502.50 and the reimbursement of expenses in the amount of CDN. $1,197.14. On September 19, 2012, this Court entered an order approving 100% of the fees and expenses sought in the Fourteenth Interim Application. FMC has received payment of such amounts.

22.     On November 12, 2012, FMC filed its Forty-Third Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period August 1, 2012 through August 31, 2012 (the "Forty-Third Monthly Application"). In its Forty-Third Monthly Application, FMC sought the award and allowance of fees in the amount of CDN. $137,717.00 and the reimbursement of expenses in the amount of CDN. $1,383.61. The objection deadline for the Forty-Third Monthly Application is December 3, 2012. FMC has not yet received payment of the fees and expenses requested in the Forty-Third Monthly Application.

### III.     RELIEF REQUESTED

23.     By this Application, FMC seeks (i) interim allowance and award of compensation for the professional services rendered by FMC during the Compensation Period in the amount of CDN. $73,661.75 representing 95.80 hours in professional services; and (ii) reimbursement of actual and necessary expenses incurred by FMC during the Compensation Period in connection with the rendition of such professional services in the amount of CDN. $1,485.19.

24.     Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its fees (CDN $58,929.40) and 100% of its expenses (CDN. $1,485.19) relating to services rendered during the Compensation Period.

25.     FMC has received no payment and no promises for payment from any source for services rendered in connection with these chapter 11 cases other than in accordance with the Administrative Fee Order. There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

26.     As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is

sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.    SUMMARY OF SERVICES RENDERED

27.    FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

28.    In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

29.    In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

30.    FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

31.    The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

### Canadian Proceedings

(Fees: CDN. $13,483.50; Hours 16.50)

32.    During the Compensation Period, FMC analyzed proposed orders in connection with various relief being sought in the Canadian Proceeding. FMC also reviewed and analyzed material filed with the Canadian Court by the Canadian Debtors and Ernst & Young Inc. in its capacity as the CCAA monitor of the Canadian Debtors (the "Monitor") in the Canadian Proceeding. In connection therewith, FMC, carefully analyzed the relief requested in proposed orders, participated in conference calls with the Monitor, Nortel Debtors' Canadian counsel, as well as other major stakeholders, to discuss the issues associated therewith. In connection with such analyses, FMC conducted diligence on the subject matter of each motion in order to determine the effect that the relief requested by the Canadian Debtors in the Canadian Proceeding would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases and the Canadian proceeding. FMC, with the assistance of Akin Gump, ensured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular conference calls and, as appropriate, detailed memoranda.

33.    During the Compensation Period, the Monitor filed reports with the Canadian court with updates on the progress of the Canadian Debtors' activities and/or the Monitor's

recommendations with respect to relief requested by the Canadian Debtors. FMC reviewed each of these reports and discussed the reports with Akin Gump and the Committee's advisors, as well as the professionals for the Debtors, and the Canadian Debtors.

34.     FMC attorneys spent time during the Compensation Period assessing Canadian issues relating to allocation of sale proceeds and distributions from the Canadian estate, and liaised with Akin Gump and Capstone in connection therewith to advise the Committee.

### <u>Committee Meetings</u>
(Fees: CDN. $19,541.00; Hours 24.10)

35.     This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, participated on four telephonic meetings and one in-person meeting with the full Committee during the Compensation Period.  In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump and other Committee advisors.

36.     Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and underlying documentation in connection therewith, including in connection with the Canadian Proceeding.  Thereafter, FMC discussed each of these matters with Akin Gump and the Committee's other advisors and the Committee.  During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

37.     During the Compensation Period, FMC, together with Akin Gump, routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee on Canadian issues in an efficient manner to minimize costs to these estates.  FMC also regularly consulted with Akin Gump, Jefferies, Capstone and Ashurst with

respect to Canadian legal issues on documents and other information received from the Debtors and their representatives, and other sources.

38.     Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding, as same relate to the Debtors, to monitor the Debtors' involvement in the Canadian Proceeding, and to reach independent conclusions on the merits of specific matters.

### General Claims Analysis

(Fees: CDN. $4,244.00; Hours 6.60)

39.     This subject matter relates to the analysis of claims asserted or contemplated to be asserted against the Debtors' estates and the estates of the Canadian Debtors.  During the Compensation Period, FMC attorneys spent time analyzing claims filed against the Nortel Debtors in the Insolvency Proceedings, including claims against the Canadian Debtors, in relation to allocation issues.  FMC attorneys also spent time researching and examining legal issues in connection with certain of the claims filed against the Canadian Debtors.  FMC, together with Akin Gump and Capstone, kept the Committee apprised of all material developments with respect to the adjudication and reconciliation of claims in the Canadian Proceeding.

### Intercompany Issues

(Fees: CDN. $31,052.00; Hours 38.80)

40.     This subject matter relates to time spent by FMC attorneys reviewing and analyzing certain intercompany issues arising among the various Nortel entities around the world, and the impact of such issues on the Nortel Debtors' Insolvency Proceedings.  FMC attorneys, along with the Committee's other professionals spent time during the Compensation

Period analyzing and examining issues related to the allocation of sale proceeds and discussing such issues with the Committee and the Committee's advisors, including in-depth analyses of claims against the Canadian Debtors and various methodologies for allocating value among the Nortel entities.

41.     As this Court is aware, the Committee, as well as the Nortel Debtors and certain other parties, have been engaged in a Court-ordered mediation of the inter-estate allocation disputes under the auspices of the Honorable Warren K. Winkler, Chief Justice of Ontario, as mediator.  During the Compensation Period, FMC, along with Akin Gump and the Committee's other advisors, spent time analyzing numerous issues in connection with the allocation mediation, including issues specific to the Canadian Proceeding.  Additionally, FMC, together with Akin Gump, on behalf of the Committee, engaged with the other parties to discuss allocation-related issues, including through meetings and telephone conferences with such parties.  The allocation mediation process has not yet resulted in a resolution of the allocation disputes.  FMC, together with Akin Gump on behalf of the Committee, will continue to work with the other parties in an effort to make the mediation a constructive process.

### Non-Working Travel

(Fees: CDN. $5,102.50; Hours 6.50)

42.     During the Compensation Period, FMC attorneys spent 6.50 non-working hours traveling to court hearings and/or meetings.  Pursuant to Local Rule 2016-2(d)(viii), FMC has discounted this time by 50% and, accordingly, has billed 3.25 working hours traveling for the Compensation Period.

## V.    ALLOWANCE OF COMPENSATION

43.    The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

44.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application pursuant to the Administrative Fee Order.

45.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A).  Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

46.     The total time spent by FMC lawyers during the Compensation Period was 95.80 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

47.     As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $1,485.19 for which FMC respectfully requests reimbursement in full.

48.     The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

49.     FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," postage and certain other office services, since the needs of each client for such services differ.  FMC believes that it is fairest to charge each client only for the services actually used in performing services for it.  In these proceedings, FMC charges $.10 per page for internal duplicating.

50.     No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

51.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE**, FMC respectfully requests that this Court:

(a)      approve the allowance of CDN. $73,661.75 for compensation for professional services rendered to the Committee during the period from September 1, 2012 through and including September 30, 2012;

(b)      approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period September 1, 2012 through and including September 30, 2012 in the amount of CDN. $1,485.19; and

(c)      authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $60,414.59 (USD $60,517.29[2]), which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
          November 20, 2012

FRASER MILNER CASGRAIN LLP

By:_____
          Michael J. Wunder (*pro hac vice*)
          A Member of the Firm

          77 King Street West, Suite 400
          Toronto-Dominion Centre
          Toronto, Ontario  M5K 0A1
          (416) 863-4511
          Canadian Counsel to the Official Committee of
          Unsecured Creditors

---

[2] Reuters Exchange Rate on November 20, 2012 is CDN. $1.00 : U.S. $1.0017