## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                             :

*In re*                          :      Chapter 11
                             :

Nortel Networks Inc., *et al.*,[1]      :      Case No. 09-10138 (KG)
                             :

                Debtors.      :      Jointly Administered
                             :

                             :      **Hearing date: December 5, 2012 at 10:00 a.m. (ET)**
                             :      **Objections due: November 28, 2012 at 4:00 p.m. (ET)**
                             :      **RE: D.I. 8396**
-------------------------------------------------------- X

### DEBTORS' RESPONSE AND OBJECTION TO THE MOTION OF MICHAEL ROSE FOR RECONSIDERATION OF THE ORDER GRANTING THE DEBTORS' TWENTY-SIXTH OMNIBUS OBJECTIONS TO CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby respectfully submit this response and objection (the "Response"), to the *Motion To Reconsider the Order Granting the Debtors' Twenty-Sixth Omnibus Objection to Claims* [D.I. 8396] (the "Motion") filed by Michael Rose ("Mr. Rose"). In support of this Response, the Debtors rely on the declaration of Deborah Parker (the "Parker Declaration"), attached hereto as Exhibit B.

### Preliminary Statement

1.      Mr. Rose, a former employee of NNI, and a participant in the Nortel Networks Retirement Income Plan (the "Defined Benefit Pension Plan"), a tax-qualified, single-employer, defined benefit pension plan covered by Title IV of the Employee Retirement Income Security

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Act of 1974 (as amended, "ERISA"),[2] is not entitled to reconsideration of the disallowance of his claim for lump sum payment of his pension benefits. While Mr. Rose elected a lump sum distribution of his benefits under the Defined Benefit Pension Plan when he was terminated in June, 2008—prior to NNI's January 14, 2009 bankruptcy filing—under applicable law, after NNI filed for bankruptcy protection, benefits under the Defined Benefit Pension Plan could not be paid in the form of lump sum distributions. Mr. Rose was provided notice of the omnibus objection disallowing his claim, and he does not plead any facts that would meet the applicable Rule 60 standards for relief from this Court's prior final order.

### Facts Relevant to this Response

2.      Mr. Rose was terminated from employment by NNI as of June 2, 2008 as part of a workforce reduction. He was a participant in the Nortel Networks Severance Allowance Plan and was paid severance benefits for the period from his termination through September 29, 2008. See Parker Decl. Exhibit 2 at 1. All of Mr. Rose's severance benefits were paid to him prior to NNI's bankruptcy filing on January 14, 2009 (the "Petition Date").[3] Mr. Rose has not asserted a claim for unpaid severance benefits.

---

[2]      The Defined Benefit Pension Plan, including the amendments thereto dated as of November 26, 2008 and December 18, 2008, is attached to the Parker Declaration as Exhibit 1. An unrelated amendment was made in 2010, after plan termination. The Defined Benefit Pension Plan was terminated under § 4042(c) of ERISA, effective July 17, 2009, pursuant to an agreement between the Pension Benefit Guaranty Corporation (the "PBGC") and the Retirement Plan Committee of the Defined Benefit Pension Plan as the plan administrator (the "Trusteeship Agreement"). The Trusteeship Agreement appointed the PBGC as statutory trustee of the Defined Benefit Pension Plan. Additional Information related to the termination of the Defined Benefit Pension Plan and the Trusteeship Agreement can be found in the *Debtors' Motion For Authorization To Take Actions In Furtherance Of An Agreement With The Pension Benefit Guaranty Corporation* [D.I. 1313] (the "Trusteeship Motion") and this Court's order approving such motion [D.I. 1406]. The form of the Trusteeship Agreement attached to the Trusteeship Motion is attached hereto as Exhibit C.

[3]      According to NNI's books and records, Mr. Rose received his final payment for severance benefits on October 10, 2008. See Parker Decl. Exhibit 3.

3.      Mr. Rose filed proof of claim number 2602—the claim that is the subject of the Motion—for benefits under the Defined Benefit Pension Plan (the "Rose Claim").[4]  Specifically, Mr. Rose claims he is owed $39,375.35, which was his estimated lump sum award under the Defined Benefit Pension Plan pursuant to a Nortel Networks Inc. Pension Service Plan calculation statement prepared by Mercer on November 24, 2008.  See Rose Claim at 1, 15.  Mr. Rose had elected a lump sum distribution of his Defined Benefit Pension Plan Benefits at the time he was terminated.  See Rose Claim at 6.

4.      Following the Petition Date, the Nortel Pension Service Center notified Mr. Rose that, because NNI had sought bankruptcy protection, lump sum distributions could not be paid under the Defined Benefit Pension Plan, and requested that Mr. Rose elect some other form of payment under the Defined Benefit Pension Plan.  See Rose Claim at 9.  Mr. Rose purported to appeal this notice as a denial of his benefits under the Defined Benefit Pension Plan to the Employee Benefits Committee established under the Defined Benefit Pension Plan (the "Employee Benefits Committee").  See Rose Claim at 11.  The Employee Benefits Committee responded to Mr. Rose in a May 15, 2009 letter informing Mr. Rose that he was required to prosecute his claim with Mercer, the Recordkeeper under the Defined Benefit Pension Plan (the "Recordkeeper"), before appealing to the Employee Benefits Committee.  To the best of the Debtors' knowledge, Mr. Rose did not prosecute his claim with the Recordkeeper.

5.      On April 9, 2012, the Debtors filed and served the *Debtors' Twenty-Sixth Omnibus Objection (Substantive) To Certain Claims Pursuant To 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 And Del. L.R. 3007-1 (No-Basis Claims, Modify And Allow Claims, Reclassify And Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended Or Superseded Claims,*

---

[4]      Mr. Rose's Proof of Claim number 2602 is attached hereto as Exhibit D.  Certain of Mr. Rose's personal financial information and Mr. Rose's driver's license have been redacted from the version of his claim attached hereto.

*No-Basis 503(B)(9) Claims And No-Basis Pension Claims)* (such omnibus objection [D.I. 7505], the "Twenty-Sixth Omnibus Objection" and the notice of such omnibus objection [D.I. 7505] the "Notice of the Twenty-Sixth Omnibus Objection").[5]   Mr. Rose was served the Twenty-Sixth Omnibus Objection by first class mail at the address listed in the Rose Claim—2615 Merlin Drive Lewisville, Texas 75056.  See Affidavit of Service [D.I. 7519] (the "Affidavit of Service").[6]

6.      The deadline to file a response to the Twenty-Sixth Omnibus Objection was April 25, 2012, and Mr. Rose did not object or otherwise respond to the Twenty-Sixth Omnibus Objection prior to such deadline.  Following the filing of a certificate of no objection with respect to the Twenty-Sixth Omnibus Objection, this Court entered the *Order Granting Debtors' Twenty-Sixth Omnibus Objection (Substantive) To Certain Claims Pursuant To 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 And Del. L.R. 3007-1 (No-Basis Claims, Modify And Allow Claims, Reclassify And Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended Or Superseded Claims, No-Basis 503(B)(9) Claims And No-Basis Pension Claims)* [D.I. 7620] on May 8, 2012 (the "Claims Order").[7]

7.      By the Motion, Mr. Rose asks the Court to excuse him for missing the objection deadline with respect to the Twenty-Sixth Omnibus Objection and for relief from the Claims Order with respect to the Rose Claim pursuant to Rule 60.  On the merits of his Claim, Mr. Rose argues that he is entitled to a lump sum distribution under the Defined Benefit Pension Plan, notwithstanding NNI's bankruptcy filing.  For the reasons stated below, the Debtors respectfully

---

[5]      The Notice of the Twenty-Sixth Omnibus Objection is attached hereto as Exhibit E, and the Twenty-Sixth Omnibus Objection is attached hereto as Exhibit F.

[6]      The Affidavit of Service is attached hereto as Exhibit G.

[7]      The Claims Order is attached hereto as Exhibit H.

submit that Mr. Rose should not be granted relief from the Claims Order and that, in any event, he is not entitled to a lump sum distribution of benefits under the Defined Benefit Pension Plan.

## Objection and Response

**A.    Mr. Rose Is Not Entitled To Relief Under Rule 60.**

8.    Mr. Rose asks this Court for relief from the Claims Order insofar as it disallowed the Rose Claim under Federal Rule of Civil Procedure 60, as made applicable to cases under title 11 pursuant to Federal Rule of Bankruptcy Procedure 9024.  See Fed. R. Bankr. P. 9024. Although Mr. Rose does not so specify in his Motion, it appears that Mr. Rose is asking this Court for relief from the Claims Order under subsections (b)(1) and (b)(2) of Rule 60.  As demonstrated below, Mr. Rose has not met his burden to establish that he is entitled to relief from the Claims Order under Rule 60.

9.    Federal Rule of Civil Procedure 60 provides in relevant part that:

> ". . . (b) . . . On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) . . . ."  Fed. R. Civ. P. 60(b).

10.    In the Motion, Mr. Rose admits that he received the Twenty-Sixth Omnibus Objection and states that he should be excused for his failure to respond because "[a]fter three years of receiving legal notices and documents that almost never applied, an individual could be excused, for not immediately locating his name on approximately page 60, of a 66 page generically mailed document . . . ."  See Motion at 2.  Mr. Rose appears to be invoking the "excusable neglect" prong of Rule 60(b)(1).

11.     When determining whether neglect is excusable for Rule 60(b)(1) purposes, courts examine factors including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Manus Corporation v. NRG Energy Inc. (In re O'Brien Envtl. Energy Inc.), 188 F.3d 116, 125 (3rd. Cir. 1999) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380 (1993)); see also, Netversant-Southern California, Inc. v. Johnson Controls, Inc. (In re Netversant Solutions, Inc.), 426 B.R. 503, 509 (Bankr. D. Del. 2010).  Whether neglect is excusable is an equitable determination that takes account of all of the relevant facts and circumstances.  See O'Brien, 188 F.3d at 125.

12.     In this case, the equities counsel in favor of upholding the Claims Order with respect to the Rose Claim.  Mr. Rose admits to receiving the Debtors Twenty-Sixth Omnibus Objection, and the Affidavit of Service indicates that Mr. Rose received such pleading at the address listed in the Rose Claim in sufficient time to assert any objections that he may have had to it.  The Twenty-Sixth Omnibus Objection and the Notice of the Twenty-Sixth Omnibus Objection both—in bold capitalized print—tell affected claimants to locate their names on the exhibits attached to the Twenty-Sixth Omnibus Objection.[8]  The Twenty-Sixth Omnibus Objection specifically identifies Mr. Rose, the Rose Claim and the Debtors' proposed reason for disallowing the Rose Claim.[9]  Further, the Twenty-Sixth Omnibus Objection complied with Rule

---

[8]     The Third Bullet on the first page of the Notice of the Twenty-Sixth Omnibus Objection states: "**CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS IN EXHIBITS A – C HERETO**" (emphasis in the original).  See Notice of the Twenty-Sixth Omnibus Objection at 1. Likewise, the third bullet on the first page of the Twenty-Sixth Omnibus Objection states: "**CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS IN EXHIBITS A – C HERETO**" (emphasis in the original).  See Twenty-Sixth Omnibus Objection at 1.

[9]     Exhibit C to the Twenty-Sixth Omnibus Objection identifies Mr. Rose as "Rose, Michael" of "2615 Merlin Drive, Lewisville, TX 75056", identifies the Rose Claim as "Claim Number" "2602" and identifies the proposed "Reason for Disallowance" of the Rose Claim as "The claim asserts liability for defined benefit pension benefits.

3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware and with prior orders entered by this Court addressing the form of notice to be given to claimants listed in omnibus objections.  See *Order Modifying the Application of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1(f) Pertaining to Omnibus Claims Objections* [D.I. 2125]; and *Order Modifying the Application of (I) Local Rule 3007-1 and (II) This Court's Prior Order Related to Rule 3007(E)(6) and Local Rule 3007-1(f)* [D.I. 7178].  Courts considering the equities of a motion for relief from a final order under the "excusable neglect" standard of Rule 60(b)(1) often focus on failures by debtors with respect to the notice process.  See, e.g., Pioneer, 507 U.S. at 398 (faulting the debtor for giving notice of a bar date in a manner that was outside the ordinary course of bankruptcy cases); O'Brien, 188 F.3d at 128-29 (faulting the debtor for failing to specifically reference a creditor's claim in a pleading that effectively objected to such claim).  Here there is no such fault on the part of the Debtors.  Mr. Rose received timely and adequate notice of the Twenty-Sixth Omnibus Objection.

13.    In this case, the Debtors—not Mr. Rose—will be prejudiced if the Court grants Mr. Rose's request for relief from the Claims Order.  As will be demonstrated below, Mr. Rose holds no valid claim against the Debtors' estates.  Accordingly, denial of Mr. Rose's Motion to reconsider the Claims Order will not prejudice him.  On the contrary, granting Mr. Rose's Motion could greatly prejudice the Debtors.  Granting Mr. Rose's Motion could potentially open the floodgates to additional such motions by creditors who received timely and adequate notice of pleadings in these cases and who, in hindsight, wish to revisit their decisions not to respond to

---

Pursuant to ERISA, the Pension Benefit Guaranty Corporation is the sole authority to properly assert a claim on account of benefits under a single-employer pension plan. Therefore, claimant's No-Basis Pension Claim is not a liability of the Debtors or their estates." See Twenty-Sixth Omnibus Objection, Exhibit C at 16.  Moreover, further information on the reason for disallowance of the claims held by participants in the Defined Benefit Pension Plan are provided in paragraphs 45-47 of the Twenty-Sixth Omnibus Objection.  See Twenty-Sixth Omnibus Objection at ¶¶ 45-47.

such pleadings.  See e.g., In re Keene Corp., 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995) (denying

a request by a claimant to file a late claim for reasons including that the Court did not see how it

could deny similar requests by other claimants if such request was granted); In re Hills Stores

Co., 167 B.R. 348, 352 (Bankr. S.D.N.Y. 1994)(denying a motion to have tardy ballots deemed

timely received for reasons including that approval of such motion could cause similarly situated

creditors to file similar motions).  Responding to such additional motion practice could

potentially undermine the finality of orders previously entered in these cases and could therefore

prejudice the Debtors, in addition to burdening the Debtors by requiring them to respond to such

additional pleadings.  See e.g., Keene, 188 B.R. at 913.  Mr. Rose's failure to respond to the

Twenty-Sixth Omnibus Objection is not excusable, and the Motion should not be granted under

Rule 60(b)(1).

14.    Mr. Rose also appears to argue that he should be relieved of the Claims Order

with respect to the Rose Claim because of purported "newly discovered evidence" under Rule

60(b)(2).  Mr. Rose cites the Trusteeship Agreement and the PBGC 2011 Annual Performance

Report dated November 14, 2011 (the "2011 Annual Report") throughout the Motion as

"additional discovery" or items that could not have been discovered with "reasonable diligence"

at the time of the filing of the Rose Claim.[10]  See Motion at 2, 3-4.  Such purported "newly

discovered evidence" is not sufficient under Rule 60(b)(2).

15.    Rule 60(b)(2) applies to "newly discovered evidence that, with reasonable

diligence, could not have been discovered in time to move for a new trial under Rule 59(b)".

This standard requires that the new evidence "be material and not merely cumulative, (2) could

not have been discovered before trial through the exercise of reasonable diligence and (3) would

_____

[10]    The 2011 Annual Report, which is taken from the PBGC's website at
http://www.pbgc.gov/documents/2011-annual-report.pdf,  is attached hereto as Exhibit I.

probably have changed the outcome of the trial." Compass Technology, Inc. v. Tseng

Laboratories, Inc., 71 F.3d 1123, 1130 (3rd Cir. 1995) (citing Bohus v. Beloff, 950 F.2d 919, 930

(3d Cir. 1991)).  Any party requesting such relief "bears a heavy burden." Bohus, 950 F.2d at

930 (quoting Plisco v. Union R. Co., 379 F.2d 15, 17 (3d Cir. 1967)).

      16.     Without conceding the relevance of any of the documents Mr. Rose identifies,

neither the Trusteeship Agreement, the 2011 Annual Report nor any of the other assertions that

Mr. Roses raises constitute newly discovered evidence under Rule 60(b)(2).  First and foremost,

Rule 60(b)(2) only concerns evidence that with reasonable diligence could not have been

discovered "in time to move for a new trial . . ." (emphasis added).  Fed. R. Civ. P. 60(b)(2).  The

relevant date for purposes of the present Rule 60(b)(2) analysis was between April 9th and May

8th of 2012—the time period between filing of the Twenty-Sixth Omnibus Objection and the

entry of the Claims Order.[11]  The relevant time period is not the date of the filing of the Rose

Claim, as Mr. Rose suggests in the Motion.  Both the form of the Trusteeship Agreement and the

2011 Annual Report were publicly available by the spring of 2012.  Accordingly, such materials

cannot be newly discovered evidence sufficient to warrant relief from the Claims Order.  See,

e.g., 12-60 Moore's Federal Practice – Civil § 60.42[4][b].  The form of the Trusteeship

Agreement has been publicly available on this Court's docket since August 13, 2009.  See

*Debtors' Motion for Authorization To Take Actions In Furtherance Of An Agreement With the*

*Pension Benefit Guaranty Corporation* [D.I. 1313].  And, the 2011 Annual Report has been

publicly available since November 15, 2011.  See PBGC Press Release dated November 15,

---

[11]    As stated above, because no party in interest responded to the Twenty-Sixth Omnibus Objection, the Claims Order was entered following the filing of a certificate of no objection by the Debtors, and there was no hearing on the Twenty-Sixth Omnibus Objection.

2011, available at http://www.pbgc.gov/news/press/releases/pr12-06.html (the "PBGC Press Release").[12]

17.     Moreover, neither of these materials, nor any of the other allegations that Mr. Rose raises in the Motion, could possibly have changed the outcome of any hearing on the Rose Claim, and accordingly, cannot be a basis for relief from the Claims Order.  As will be argued below, Mr. Rose, like all other participants in the Defined Benefit Pension Plan, does not hold a claim against any of the Debtor's estates with respect to benefits under the Defined Benefit Pension Plan.  Mr. Rose should not be granted relief from the Claims Order under Rule 60(b)(2).

**B.     Mr. Rose Does Not Hold A Valid Claim Against The Debtors With Respect To Benefits Under The Defined Benefit Pension Plan**

18.     Even if Mr. Rose had met his burden of establishing that he should be granted relief from the Claims Order under Rule 60 with respect to the Rose Claim, which he has not, Mr. Rose does not hold a valid claim against the Debtors with respect to benefits under the Defined Benefit Pension Plan.

19.     Mr. Rose's claim for benefits under the Defined Benefit Pension Plan cannot be properly asserted against any of the Debtors' estates because, pursuant to ERISA, (i) the PBGC is the sole source of recovery for participants of a terminated single-employer pension plan, and (ii) the PBGC is the sole entity entitled to recover pension termination liabilities directly from a plan sponsor in the event of a pension plan termination. See, e.g., 29 U.S.C. §§ 1322, 1344 (describing distributions from the PBGC with respect to terminated single-employer pension plans); 29 U.S.C. § 1362 (stating that in any case in which a single-employer pension plan is terminated, the plan sponsor or member of such plan sponsor's controlled group shall be liable to the PBGC).

---

[12]     The PBGC Press Release is attached hereto as Exhibit J.

20.     Courts routinely dismiss pension plan participants' claims seeking payment of terminated pension benefits directly from plan sponsors. See, e.g., United Steelworkers, Am., AFL-CIO, CLC v. United Eng'g, Inc., 52 F.3d 1386, 1394 (6th Cir. 1995) (concluding that permitting plan participants to sue an employer directly for payment of ERISA benefits would render the priority scheme set forth in ERISA meaningless); In re Adams Hard Facing Co., 129 B.R. 662, 663 (Bankr. W.D. Okla. 1991) (disallowing direct claims of plan participants against the debtors). Indeed, this Court has sustained objections by the Debtors to claims of participants under the Defined Benefit Pension Plan. See, *Order approving the Debtors' 25th Omnibus Objection to Claims* [D.I.7432]; *Order approving the Debtors 26th Omnibus Objection to Claims* [D.I. 7620]; *Order approving the Debtors' 28th Omnibus Objections to Claims* [D.I. 8634].

21.     Mr. Rose attempts to escape the conclusion that he does not hold a claim against the Debtors' with respect to his benefits under the Defined Benefit Pension Plan by arguing that section 206 of ERISA (29 U.S.C. § 1056), which prohibits lump sum payments of benefits under the Defined Benefit Pension Plan while NNI is in bankruptcy, does not apply to the Defined Benefit Pension Plan because benefit accruals were frozen under such Plan as of December 31, 2007. Mr. Rose is wrong on the law.

22.     Section 206(g)(3)(B) of ERISA provides that "[a] defined benefit plan which is a single-employer plan shall provide that, during any period in which the plan sponsor is a debtor in a case under title 11, United States Code, or similar Federal or State law, the plan may not pay any prohibited payment. . . ." 29 U.S.C. § 1056(g)(3)(B). A lump sum payment is a prohibited payment for purposes of the statute. Under ERISA, "prohibited payment[s]" include any payment "in excess of the monthly amount paid under a single life annuity . . . to a participant or beneficiary whose annuity starting date . . . occurs during any period a limitation under

subparagraph (A) or (B) is in effect . . ." 29 U.S.C. § 1056(g)(3)(E).  Bankruptcy of the plan

sponsor is the "limitation under subparagraph . . . (B)" referenced in this clause.  See 29 U.S.C. §

1056(g)(3)(B).  Accordingly, ERISA does not permit lump sum payments of benefits under

qualified single-employer pension plans while the plan sponsor is in bankruptcy.  As detailed

below, NNI, the sponsor of the Defined Benefit Pension Plan, sought protection under the

Bankruptcy Code prior to the date that Mr. Rose was entitled to begin receiving benefits under

the Defined Benefit Pension Plan.  Accordingly, ERISA prevented the payment of the lump sum

requested by Mr. Rose, and Mr. Rose is in the same position as the other participants of the

Defined Benefit Pension Plan—he holds no claim against the Debtors with respect to his benefits

under the Defined Benefit Pension Plan and will be entitled to pension benefits in accordance

with the rules governing distributions from the PBGC.  See also, 26 U.S.C. § 436(d) (the parallel

provisions of the Internal Revenue Code prohibiting tax qualified single-employer plans from

making prohibited payments while the plan sponsor is in bankruptcy).[13]

      23.      Mr. Rose relies on ERISA section 206(g)(3)(D) to argue that the limitation on

prohibited payments in ERISA section 206(g)(3)(B) does not apply to the Defined Benefit

Pension Plan, and accordingly, that he should have been paid his benefits in a lump sum upon his

request.  Section 206(g)(3)(D) of ERISA states that "this paragraph [the limitation on prohibited

payments] shall not apply to any plan for any plan year if the terms of such plan (as in effect for

the period beginning on September 1, 2005, and ending with such plan year) provide for no

benefit accruals with respect to any participant during such period" (emphasis added).  29 U.S.C.

---

[13]      The fact that the Defined Benefit Pension Plan had not yet been amended to reflect the statutory
requirement of 26 U.S.C. § 436(d) and 29 U.S.C. § 1056(g) at the time of plan termination is inconsequential.  See
IRS Notice 2011-96 (extending the deadline to amend qualified plans to comply with such provisions through
periods including the last day of the first plan year that begins on or after January 1, 2012, provided that such
amendments are made retroactive to the effective date of such statutory amendments and provided that such plan is
operated in accordance with such statutory amendments during such interim period).  IRS Notice 2011-96 is
attached hereto as Exhibit K.

§1056(g)(3)(D).[14]  It is clear on the face of the statute that this exception applies to single-employer defined benefit pension plans under which benefit accruals had ceased for the 2005 plan year.  Subclause (g) of Section 206 of ERISA was enacted as part of the Pension Protection Act of 2006, Public Law 109-280 (the "Act").  It appears that this provision is intended to allow prohibited payments pursuant to plans under which benefit accruals had ceased as of 2005—prior to the enactment of the Act.

24.     As Mr. Rose admits in the Motion (see Motion at 1), participants in the Defined Benefit Pension Plan continued to accrue benefits under such Plan until December 31, 2007.  See Parker Decl. Exhibit 1 § 5.2.4 ("Notwithstanding the foregoing provisions of this Section or any other provision of the Plan, in no event shall any benefit accrue to any Member under any provision of the Plan based upon Earnings or service after December 31, 2007, except as may be specifically provided under Section 1.2 with respect to interest or Interest Credit Rate adjustments after such date.").  Accordingly, the exception to the prohibition on prohibited payments does not apply to the Defined Benefit Pension Plan.  Conversely, prohibited payments, such as the lump sum distribution that Mr. Rose requested, are not permitted while NNI remains in bankruptcy.

25.     Under the terms of the Defined Benefit Pension Plan, Mr. Rose would not have been eligible to commence receiving retirement benefits until February 1, 2009, following the Petition Date.  Under section 4.5.1 of the Defined Benefit Pension Plan, participants whose employment is terminated other than by retirement (e.g., by a workforce reduction) may not elect a start date to receive benefits under the Defined Benefit Pension Plan that is any earlier than the

---

[14]     The parallel exception to the prohibition on prohibited payments under 29 U.S.C. § 1506(g)(3)(D) is contained in 26 U.S.C. § 463(d)(4) ("This subsection shall not apply to any plan for any plan year if the terms of such plan (as in effect for the period beginning on September 1, 2005, and ending with such plan year) provide for no benefit accruals with respect to any participant during such period.").

first day of the fifth month following the payment of their total severance.  See Parker Decl.

Exhibit 1 § 4.5.1.  Mr. Rose was terminated as of June 2, 2008 as part of a workforce reduction,

was a participant in the Nortel Networks Severance Allowance Plan and received severance

benefits for the period through September 29, 2008.  Accordingly, Mr. Rose could not

commence receiving benefits under the Defined Benefit Pension Plan prior to February 1, 2009,

the first day of the fifth month following the end of his severance period on September 29, 2008.

February 1, 2009 was after NNI's bankruptcy filing, and accordingly, 29 U.S.C. § 1506(g)(3)(B)

and 26 U.S.C. §436(d) prevented the payment of Mr. Rose's benefits in the form of a lump sum.

26.    Finally, the Motion purports to raise issues of breach of fiduciary duty, negligence

and complicit failures in dealing with Mr. Rose.  Such allegations or causes of action are not

asserted in the Rose Claim, and Mr. Rose has offered no evidence of such purported failures

other than his conclusory allegations that the Debtors and Mercer misapplied the law.  As

demonstrated above, the Debtors and Mercer complied with the applicable law.  Further the Rose

Claim is not a claim for any such failures; it is a claim for a sum of money equal to an estimate

of what Mr. Rose would have been entitled to under the Defined Benefit Pension Plan, if NNI

had not sought bankruptcy protection and lump sum distributions were permitted under the Plan.

Such ancillary and conclusory allegations should not weigh into this Court's decision on the

Motion.

### Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court

deny the Motion, hold that the Rose Claim remain disallowed in its entirety and enter the

proposed order attached hereto as Exhibit A.

*[Remainder of Page Intentionally Left Blank]*

Dated:  November 28, 2012
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*