## Exhibit B –Parker Declaration

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------X

| | : | |
|---|---|---|
| *In re* | : | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| Debtors. | : | Jointly Administered |
| | : | **Hearing date: December 5, 2012 at 10:00 a.m. (ET)**<br>**Objections due: November 28, 2012 at 4:00 p.m. (ET)**<br>**RE: D.I. 8396** |

-----------------------------------------------------------X

**DECLARATION OF DEBORAH PARKER IN SUPPORT OF DEBTORS'
RESPONSE AND OBJECTION TO THE MOTION OF MICHAEL ROSE FOR
RECONSIDERATION OF THE ORDER GRANTING THE DEBTORS'
TWENTY-SIXTH OMNIBUS OBJECTIONS TO CLAIMS**

I, Deborah Parker, do hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am the Shared Services Team Leader at Nortel Networks Inc. ("NNI").

2.    I respectfully submit this declaration in support of the *Debtors' Response
And Objection To The Motion Of Michael Rose For Reconsideration Of The Order Granting The
Debtors' Twenty-Sixth Omnibus Objections To Claims* (the "Response"). Except as otherwise
indicated, all facts set forth in this declaration are based upon my personal knowledge,
information supplied to me by employees of the Debtors or their affiliates and professionals

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their
petitions are available at http://dm.epiq11.com/nortel.

retained by the Debtors, or learned from my review of relevant documents. If I were called upon

to testify, I could and would testify competently to the facts set forth herein.

        3.     In order to place before the Court certain documents relevant to the

Response, annexed to this declaration are true and correct copies of the following documents:

| | |
|---|---|
| **EXHIBIT 1:** | Nortel Networks Retirement Income Plan as Amended and Restated Effective as of January 1, 2007, including the amendments thereto dated as of November 26, 2008 and December 18, 2008. |
| **EXHIBIT 2:** | The first page of the termination package executed by Mr. Rose upon his departure from NNI, where Mr. Rose's social security number has been redacted. |
| **EXHIBIT 3:** | A screenshot of NNI's ProBusiness Payroll System showing that Mr. Rose was paid his last check for severance benefits on October 10, 2008, where Mr. Rose's social security number has been redacted. |

        I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge, information and belief.

Dated: Research Triangle Park, North Carolina
       November 28, 2012

                               _Deborah Park_

                                 Deborah Parker

**Exhibit 1**

**NORTEL NETWORKS**

**RETIREMENT INCOME PLAN**

**AS AMENDED AND RESTATED**

**EFFECTIVE AS OF JANUARY 1, 2007**

# TABLE OF CONTENTS

**Page**

ARTICLE I  DEFINITIONS AND TERMS ........................................................................................... 1

ARTICLE II  ELIGIBILITY FOR MEMBERSHIP............................................................................13

    2.1.     Eligibility for Membership............................................................. 13
    2.2.     Excluded Individuals...................................................................... 14

ARTICLE III  SERVICE.........................................................................................................................15

    3.1.     Benefit Service................................................................................ 15
    3.2.     Vesting Service ............................................................................... 16
    3.3.     Points Service.................................................................................. 17
    3.4.     Limitation on Service Credited ..................................................... 17

ARTICLE IV  ELIGIBILITY FOR BENEFITS ................................................................................. 18

    4.1.     Normal Retirement......................................................................... 18
    4.2.     Late Retirement .............................................................................. 18
    4.3.     Early Retirement ............................................................................ 18
    4.4.     Disability Retirement .................................................................... 18
    4.5.     Termination of Employment/Vesting............................................ 19
    4.6.     Pre-retirement Death Benefit ........................................................ 20
    4.7.     Death After Retirement.................................................................. 20
    4.8.     Non-Forfeitability of Normal Retirement Benefits...................... 20
    4.9.     Disregard of Benefit Service ......................................................... 20

ARTICLE V  COMPUTATION OF BENEFITS ................................................................................. 21

    5.1.     Determination of Account Balance ............................................... 21
    5.2.     Normal Retirement Benefit............................................................ 22
    5.3.     Late Retirement Benefit ................................................................. 24
    5.4.     Early Retirement Benefit ............................................................... 24
    5.5.     Disability Retirement Benefit ........................................................ 25
    5.6.     Vested Retirement Benefit ............................................................. 26
    5.7.     Pre-retirement Death Benefit ........................................................ 27
    5.8.     Ad Hoc Increases ........................................................................... 28

ARTICLE VI  PAYMENT OF BENEFITS ......................................................................................... 30

    6.1.     Payment Period and Continued Employment/Reemployment ................... 30
    6.2.     Facility of Payment........................................................................ 32
    6.3.     Form of Payment............................................................................ 32
    6.4.     Death Benefit ................................................................................. 34
    6.5.     Qualified Domestic Relations Orders ........................................... 34
    6.6.     Payment of Small Benefits............................................................. 34
    6.7.     Direct Rollover E1ection ............................................................... 34

1

ARTICLE VII  FINANCING ........................................................................................................ 36

    7.1.    Fund ...................................................................................................... 36
    7.2.    Employer Contributions ....................................................................... 36
    7.3.    Irrevocability ........................................................................................ 36

ARTICLE VIII  ADMINISTRATION ........................................................................................ 37

    8.1.    Named Fiduciaries ............................................................................... 37
    8.2.    Fiduciary Processes .............................................................................. 41
    8.3.    Employee Benefits Committee ............................................................ 42
    8.4.    Trustee .................................................................................................. 43
    8.5.    Claims and Appeals Procedure ............................................................ 43
    8.6.    Information for Claims and Appeals .................................................... 44

ARTICLE IX  AMENDMENT, DURATION, TERMINATION AND MERGER .................... 46

    9.1.    Amendment and Duration of the Plan .................................................. 46
    9.2.    Termination of the Plan ........................................................................ 46
    9.3.    Merger of the Plan ................................................................................ 47

ARTICLE X  LIMITATIONS ON BENEFITS AND CONTRIBUTIONS ............................ 48

    10.1.    General Limitations ............................................................................. 48
    10.2.    Special Distribution Limitations .......................................................... 48
    10.3.    Additional Limitation on Benefits ....................................................... 49

ARTICLE XI  MISCELLANEOUS ............................................................................................ 50

    11.1.    Inalienability of Benefits ..................................................................... 50
    11.2.    Rights of Members ............................................................................... 50
    11.3.    Applicable Law .................................................................................... 50
    11.4.    Pronouns; Use of Numbers .................................................................. 50
    11.5    USERRA .............................................................................................. 50

ARTICLE XII  TOP-HEAVY RESTRICTIONS ....................................................................... 51

    12.1    Terms and Definitions .......................................................................... 51
    12.2.    Vesting ................................................................................................. 53
    12.3.    Minimum Benefits ............................................................................... 53
    12.4.    Actuarial Assumptions ......................................................................... 54

ARTICLE XIII  SPECIAL PROVISIONS .................................................................................. 55

    13.1.    Former Bargaining Unit Employees .................................................... 55
    13.2.    NYNEX Meridian Systems .................................................................. 55
    13.3.    Bell Atlantic Meridian Systems .......................................................... 55
    13.4.    Transaction Employees ........................................................................ 56
    13.5.    Related Companies ............................................................................... 56
    13.6.    Non-Covered Employment of Former Members .................................. 57
    13.7.    Single Plan ............................................................................................ 57
    13.8.    Non-Discrimination Requirement ........................................................ 57
    13.9.    Early Retirement Option ...................................................................... 57
    13.10    Organizational Restructuring ............................................................... 59

M PRO 1041660 v4
2789126-000004 10/04/2007

ARTICLE XIV  EFFECT OF JANUARY 1, 2005 RESTATEMENT .......................................................................... 60

APPENDIX A  ACTUARIALLY EQUIVALENT FACTORS ................................................................................... 61

APPENDIX B  SERVICE CREDITING RELATED TO ADDITION OF PARTICIPATING COMPANIES
(Members Not Included in the Hourly Group) ........................................................................... 62

APPENDIX C   SERVICE CERDITING RELATED TO ADDITION OF PARTICIPATING
COMPANIES (Members Included in Hourly Group Only) ..................................................... 66

APPENDIX D  "DIVESTITURES",  "PLANT CLOSINGS" & "OUTSOURCINGS" ............................................. 67

APPENDIX E  AD HOC INCREASES ................................................................................................................ 70

APPENDIX F  AGREEMENTS OR DETERMINATIONS TO RECOGNIZE SERVICE FOR PURPOSES
OF VESTING AND ELIGIBILITY ......................................................................................... 71

APPENDIX G  Transitional Earnings (Section 1.16.1) ................................................................................. 72

M PRO 1041660 v4
2789126-000004 10/04/2007

**INTRODUCTION**

This Plan shall be known as the Nortel Networks Retirement Income Plan (the "Plan").  The Plan is an amendment and restatement, effective January 1, 2007 of the Plan.  It incorporates the provisions of the last restatement of the Plan and subsequent amendments adopted by the NNI Board.  The prior restatement was generally effective in 2005. The May 1, 2000 version of the Plan was an amendment and restatement of the Nortel Networks Pension Service Plan  (the "1999 Plan") which was amended and restated on January 1, 1999 and again on May 3, 1999.  The 1999 Plan was preceded by the July 1, 1998 amendment and restatement of the Northern Telecom Inc. Retirement Plan for Employees ("Prior Plan").  The Prior Plan was initially effective on May 1, 1974.  The various prior restatements are incorporated herein to the extent that the Plan references their provisions.

The purpose of this Plan, together with other employer sponsored retirement plans, is to provide eligible Members with retirement benefits which are in addition to Social Security benefits.

The benefits and rights of any former Members whose Termination Date occurred prior to January 1, 2007, shall be governed by the terms of the Plan under which they were last covered.

This restated Plan shall only be applicable to Employees who are active Members in the Plan on and after January 1, 2007, except as expressly provided.  Active Members are Employees who are Members and complete at least one (1) Hour of Service on or after January 1, 2007.  In no event will the Accrued Benefit under this restatement be less than the Accrued Benefit as of December 31, 2006 under the provisions of the  Plan, in effect at that time.

It is intended that the Plan and the Trust, which is a part of this Plan, shall meet the requirements of the Employee Retirement Income Security Act of 1974 (ERISA) and shall be qualified under Sections 401(a) and 501(a) of the Internal Revenue Code of 1986, as amended from time to time.

M PRO 1041660 v4
2789126-000004 10/04/2007

## ARTICLE I

## DEFINITIONS AND TERMS

For the purpose of this Plan, the following terms when capitalized shall have the following meanings:

1.1.    Account Balance has the meaning set forth in Section 5.1.1 with respect to a Pension Service Plan Member and the meaning set forth in Section 5.1.2. for a Cash Balance Plan Member.

1.2.    Accrued Benefit shall be defined as follows:

    1.2.1.    Pension Service Plan Members.  With respect to a Pension Service Plan Member, Accrued Benefit means a monthly annuity benefit payable in the form of a straight life annuity and computed as of the date of determination by accumulating the Member's Account Balance under Section  5.1.1. with six percent (6%) interest forward from the determination date to the Member's Normal Retirement Date, then converting that amount into an Actuarially Equivalent straight life annuity.  In no event will the interest credited for periods on and after January 1, 2008, exceed a market rate of return as contemplated by Code Section 411(b)(5)(B)(i).   In no event shall the Accrued Benefit of a Pension Service Plan Member be determined as of a date after December 31, 2007, subject thereafter to such post-determination-date interest and Actuarial Equivalence adjustments.  Further provided, that in no event will a Pension Service Plan Member's Accrued Benefit  increase after 2007, whether as a result of additional Pension Credits, Transition Pension Credits, changes in Earnings or Final Average Earnings or otherwise,

    Provided, that the amount of the Member's Accrued Benefit shall not be less than the greatest of the following amounts, if applicable:

        1.2.1.1.    The amount computed as of the determination date no later than December 31, 2007, pursuant to Section 5.2.1.1.(a) hereof based on the Benefit Service the Member would have completed at Normal Retirement Date, then, multiplied by a fraction (not exceeding "one"), the numerator of which is the Benefit Service on the date of determination and the denominator is the Benefit Service the Member would have completed at his Normal Retirement Date.

        1.2.1.2.    The amount as of the determination date pursuant to Section 5.2.1.1.(b) hereof.

        1.2.1.3.    The amount computed as of the determination date pursuant to the provisions of Section 5.2.1.2. hereof.

        1.2.1.4.    The amount computed as of the determination date pursuant to the provisions of Section 5.2.1.3. hereof.

    Provided further, and notwithstanding the foregoing, in no event shall any Accrued Benefit of a Pension Service Plan Member be based upon Benefit Service, Monthly Earnings or any other factor or event which occurs or arises after December 31, 2007. except for post-determination-date interest adjustments described in the first paragraph of this Section 1.2.1.

    1.2.2.    Cash Balance Plan Members.  With respect to a Cash Balance Plan Member, Accrued Benefit means a monthly annuity benefit payable in the form of a straight life annuity that is computed as of the date of determination by accumulating the Member's Account Balance under Section 5.1.2. with the applicable Interest Credit Rate forward from the determination date to the Member's Normal Retirement Date, then converting that amount into an Actuarially Equivalent straight life annuity; provided, however, that such Accrued Benefit shall in no case result in a

1

monthly payment that is less than the Member's Accrued Benefit, if any, as of his Transition Date (as defined in Section 1.21).; further provided that in no event shall the Accrued Benefit of any Cash Balance Plan Member be determined as of a date, event or factor which occurs after December 31, 2007, except for post-determination-date Interest Credit Rate adjustments and Actuarial Equivalence conversions as described above in this paragraph; further provided that in no event will the Interest Credit Rate for periods on and after January 1, 2008, exceed a market rate of return as contemplated by Code Section 411(b)(5)(B)(i)..

Notwithstanding the foregoing, in the case of an Employee who was a Member of the 1999 Plan or the Prior Plan  on or before April 30, 2000 and has not received a cash-out of his benefit from the 1999 Plan or the Prior Plan, the Accrued Benefit is the greater of the benefit defined in the prior paragraph or the Accrued Benefit that the Employee had accrued as of the later of (1) the last day the Member was credited with an Account Balance under Section 5.1.1., or (2) the last day the Employee was a Member of the 1999 Plan or the Prior Plan prior to May 1, 2000, determined under the terms of the 1999 Plan or the Prior Plan as then in effect.

Effective for any termination of the Plan which occurs after 2007, (i) any variable interest credit rate used to determine Accrued Benefits for Cash Balance Plan Member benefits shall be equal to the average of the rates of interest used under the Plan for the 5-year period ending on the termination date, and the interest rate and the mortality table used to determine any benefit payable in the form of an annuity for Cash Balance Plan Member benefits shall be the rate specified in the Plan for that purpose as of the termination date unless the interest rate is then a variable rate, in which case the interest rate for such purpose shall be the rate determined under (i) above.

1.3.    <u>Actuarially Equivalent</u> means an amount having equal value to a benefit under the straight life annuity form of payment (as described in Section 6.3.3.1) when computed on the basis of the Applicable Interest Rate and the Applicable Mortality Table (as defined in this Section 1.3).

1.3.1.    For purposes of calculating an amount having equal value to the straight life annuity benefit for a Pension Service Plan Member, the Applicable Interest Rate shall be six percent (6%) and for a Cash Balance Plan Member, the Applicable Interest Rate shall be the rate of interest on thirty (30) year Treasury securities for the month of September immediately preceding the Plan Year, as published in the Federal Reserve Bulletin.

1.3.2.    For purposes of calculating lump sum payments with respect to distributions with a Benefit Commencement Date on or after January 1, 2000, the Applicable Interest Rate shall be the rate of interest on 30-year Treasury securities for the month of September immediately preceding the Plan Year, as published in the Federal Reserve Bulletin, and the Applicable Mortality Table is described in Section 1.3.7 hereof.

1.3.3.    From January 1, 1999 through December 31, 1999, the month of December shall be used as the reference month for the determination described in the preceding Section 1.3.2 for lump sum payments, if such usage produces a larger lump sum than the use of September as the reference month.

1.3.4.    For purposes of the conversion of the Account Balance under Section 5.1.1. for a Pension Service Plan Member to a straight life annuity, the Accrued Benefit commencing at age sixty-five (65) is determined by crediting the Account Balance (calculated under Section 5.1.1. as of the date of determination) with six percent (6%) interest for the number of full years between the Member's attained age during the Plan Year of determination and age 65, then converting to an Actuarially Equivalent Annuity for an individual at age 65.

2

1.3.5.   For purposes of the conversion of the Account Balance under Section 5.1.2. for a Cash Balance Plan Member to a straight life annuity, the Accrued Benefit commencing at age sixty-five (65) is determined by crediting the Account Balance (calculated under Section 5.1.2. as of the date of determination) with an Interest Credit equal to the Account Balance as of the end of the prior calendar month, multiplied by one-twelfth (1/12) of the applicable Interest Credit Rate.  Interest Credits shall accrue to any Account Balance subject to this section, regardless of the Member's employment status or election to waive future participation in the Plan under Section 2.1.5.

1.3.6.   For purposes of the conversion of a straight life annuity to optional payment forms, factors described in Appendix A shall apply based on the Member's age during the Plan Year in which the Member's Benefit Commencement Date occurs to the extent not inconsistent with the foregoing.

1.3.7.   For purposes of this Section 1.3, Applicable Mortality Table shall mean the table prescribed by the Secretary of the Treasury under Code Section 417(e) in effect at the Benefit Commencement Date.

1.3.8.   All Actuarial Equivalence factors are subject to limitation as required under Code Section 415.

1.3.9.   Notwithstanding the foregoing, effective on and after December 31, 2007, the lump sum value of any Pension Service Plan Member's Accrued Benefit shall be the greater of the Member's Account Balance as of the date of determination or the Actuarially Equivalent lump sum value of the Accrued Benefit determined as of December 31, 2007 under the provisions of this Section as of such date.  Provided, however, that for Members who were "members" of the Prior Plan on December 31, 1998, and who are described in either Section 5.2.1.2. or 5.2.1.3., the minimum normal retirement benefit under Sections 5.2.1.2. and 5.2.1.3., the early retirement benefit provisions of Section 5.4.1., the disability retirement provisions of Section 5.5 and the vested retirement provisions of Section 5.6., as applicable, shall continue to apply as a minimum benefit, based upon Earnings and service as of a date not later than December 31, 2007.

1.4.    Affiliated Company means any company which is included within a "controlled group of corporations" (as defined in Code Section 414(b)) which includes an Employer or any trade or business (whether or not incorporated) which is under common control (as defined in Code Section 414(c)) with an Employer.

1.5.    Alternate Payee means a spouse, former spouse, child or other dependent of a Member to whom all or a portion of such Member's nonforfeitable Plan benefit has been assigned by a Qualified Domestic Relations Order.

1.6.    Audit Committee means the Audit Committee of the Boards of Nortel Networks Corporation and Nortel Networks Limited.

1.7.    Beneficiary means a Member's Spouse, if any, or if the Member has no Spouse, any person or persons (up to twelve (12)) designated as such by a Member on a form supplied by the Recordkeeper to receive benefits payable pursuant to the provisions of Section 5.7. of the Plan as a result of or following the death of the Member.  Waivers of the Spouse's rights will not be permitted or recognized with respect to the benefit paid pursuant to Section 5.7.  If there is no Spouse, and if no Beneficiary designation is in effect at the time of the death of the Member or if the person designated has predeceased the Member, then the term "Beneficiary" with respect to Section 5.7. shall mean that Member's estate, if applicable pursuant to the relevant benefit payment option.

With respect to the election of a Beneficiary to receive any survivor's interest in a benefit payment form election under Section 6.3. hereof, a Beneficiary shall be elected separately as a part of the election of the benefit payment form pursuant to Section 6.3.  For that purpose "Beneficiary" means a Member's Spouse, if any, or if the Member has no Spouse, or has filed with the Recordkeeper appropriate waivers of the Spouse's rights, any person designated as such by a Member on a form supplied by the Recordkeeper to receive benefits payable pursuant to the applicable subsection of Section 6.3. as a result of or following the death of the Member.  If there is no Spouse, and if no Beneficiary designation is in effect at the time of the Member's death or if the person designated has pre-deceased the Member, then the term "Beneficiary" shall mean that Member's estate with respect to payment under Section 6.3.3.3. hereof if applicable.  Any such designation made which is not the Member's Spouse shall be

3

consented to by the Member's Spouse, if any, in writing and acknowledging the effect of such consent, as witnessed by a notary public or a representative of the Plan Administrator or its designee. The written consent of the Spouse shall not be required if the Plan Administrator or its designee is satisfied that there is no Spouse or the Spouse cannot be located or for any reason established by regulation pursuant to Code Section 417(a)(2)(B) as prescribed by the Secretary of the Treasury. A Beneficiary designation form will be effective only when the signed form is filed with the Recordkeeper while the Member is alive, and will cancel all Beneficiary designations previously filed by the Member.

1.8.    Benefit Commencement Date of a Member means the date, as applicable, as of which a Member's Plan benefit becomes payable pursuant to Section 4.1., 4.2., 4.3., 4.4. or 4.5. Such date is the "annuity starting date" as defined in Section 417(f)(2) of the Code.

1.9.    Benefit Service is defined in Section 3.1.

1.10.   Cash Balance Plan means this Plan, except to the extent that it applies only to a Pension Service Plan Member.

1.11.   Cash Balance Plan Member means an Employee who is a Member of the Cash Balance Plan pursuant to an election or a deemed election under Section 2.1.5. hereof.

1.12.   CHRC means the Compensation and Human Resources Committee of the Boards of Directors of Nortel Networks Limited and Nortel Networks Corporation.

1.13.   Code means the Internal Revenue Code of 1986, as amended or replaced from time to time.

1.14.   Company means Nortel Networks Inc. ("NNI"), a Delaware corporation, or any successor thereto.

1.15.   Early Retirement Date means with respect to a Pension Service Plan Member, the first day of the calendar month coincident with or immediately following the later of the date the Member attains age fifty-five (55) and completes at least four (4) years of Vesting Service. With respect to a Cash Balance Plan Member, "Early Retirement Date" means the first day of the calendar month coincident with or immediately following the later of the date the Member attains age fifty-five (55) and completes at least two (2) years of Vesting Service.

1.16.   Earnings

1.16.1.    means the total of all base pay amounts paid prior to the Termination Date to the Employee and the total of all "other" amounts specified below that are paid by the Employer to or for the benefit of an Employee for services actually rendered or labor performed for the Employer through the later of the last day of the Employee's employment or, if the Employee qualifies for Severance, the last day of the Employee's "standard Severance period." (The "standard Severance period" means the period for which the Employee receives Severance payments, but not in excess of four (4) weeks plus one (1) week for each year of the Member's "service" as of his termination of employment as defined in the Severance Plan. Such definition of the "standard Severance period" shall apply to any Employee who receives Severance payments even if paid pursuant to an individual separation agreement. If the Employee receives the Severance in a lump sum, the Severance period and the "standard Severance period" for that Employee shall be determined as described in Section 1.48 hereof). Such amounts shall be those which are required to be reported on the Employee's Federal Income Tax Withholding Statement or statements (Form W-2 or its subsequent equivalent), as modified below.

Such "other" amounts shall include overtime pay paid on or after January 1, 1994; bonuses paid on or after January 1, 1994 pursuant to the Nortel Networks Inc. Annual Incentive Plan (or its predecessors: the Northern Telecom Inc. Senior Management Incentive Award Program ("SMIAP") and the Executive Management Incentive Program ("EMIP")); the Business Performance Incentive ("BPI") paid in 1999 to the Employees of the Public Data Networks line

4

of business of the Company who received BPI in lieu of SMIAP in that year; bonuses paid on or after January 1, 1999 pursuant to the Nortel Networks Inc. Strategic Project Success Incentive Plan and the Strategic Business Incentive Plan; bonuses paid pursuant to broad-based annual bonus programs of a new Employer to the extent approved through a Plan amendment and set forth in Appendix G hereof; sales incentive earnings or comparable forms of sales commissions otherwise designated; "merit cash", "promotion cash", and "career development cash" payments paid in a lump sum in lieu of an increase to base pay; "skill block awards"; and second shift differential pay, third shift differential pay, weekend differential pay, and lead pay paid on or after January 1, 1994; subject to the following adjustments and limitations:

1.16.1.1.     The following shall also be <u>included</u>:

       1.16.1.1.1     any amount not included in the income of the Member by operation of Code Sections 125, 132(f)(4), 402(e)(3), 402(h)(1)(B), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions.

       1.16.1.1.2.     prior employer compensation which otherwise would qualify as Earnings which is required to be considered for purposes of the Plan pursuant to the Reciprocal Agreement as defined in Section 13.5.1.

       1.16.1.1.3.     benefits under the Company's short-term disability, vacation, and Severance plans (excluding, however, Severance in excess of a period equal to four (4) weeks, plus one (1) week for each year of a Member's "service" as of his termination of employment as defined in the Severance Plan).

       1.16.1.1.4.     contributions to the Nortel Networks U.S. Deferred Compensation Plan, to the extent that the inclusion of such contributions in Earnings does not cause the Plan to fail to satisfy the requirements of Code Section 401(a)(4) and the regulations thereunder.

1.16.1.2.     The following shall be <u>excluded</u>:

       1.16.1.2.1.     shift differential and other supplemental pay not included under Section 1.16.1. hereof, including overtime pay and bonuses paid before January 1, 1994;

       1.16.1.2.2.     reimbursements and other expense allowances;

       1.16.1.2.3.     cash and noncash fringe benefits;

       1.16.1.2.4.     moving expenses;

       1.16.1.2.5.     Employer contributions to or payments from this or any other deferred compensation program (except the Nortel Networks U.S. Deferred Compensation Plan), whether such program is qualified under Code Section 401(a) or nonqualified;

       1.16.1.2.6.     welfare benefits, except benefits described in Section 1.16.1.3.;

       1.16.1.2.7.     amounts realized from the receipt or exercise of a stock option that is not an incentive stock option within the meaning of Code Section 422;

M PRO 1041660 v4
2789126-000004 10/04/2007

1.16.1.2.8.    amounts realized at the time property described in Code Section 83 are freely transferable or no longer subject to a substantial risk of forfeiture;

1.16.1.2.9.    amounts realized as a result of an election described in Code Section 83(b);

1.16.1.2.10.  any amounts realized as a result of a disqualifying disposition within the meaning of Code Section 421(a); and

1.16.1.2.11.  any other amounts that receive special tax benefits under the Code but are not hereinafter included.

1.16.2.    The indexed compensation limit in effect under Code Section 401 (a)(17) will apply to the determination of Earnings for the applicable Earnings period described in Section 1.22. hereof.

1.16.2.1.    **1989-1993 Plan Years**.  For Plan Years 1989 through 1993, each Member's Earnings taken into account for all purposes under the Plan will be limited to $200,000 (as indexed under Code Section 401(a)(17) beginning in 1990).  For each Member who earned more than $200,000 for any Plan Year before 1989, the $200,000 limitation will be applied retroactively to Plan Years before 1989 so as to provide him an Accrued Benefit equal to the greater of (A) his Accrued Benefit calculated as of the last day of the 1988 Plan Year without applying the $200,000 limitation, plus his Accrued Benefit earned after the 1988 Plan Year, or (B) his Accrued Benefit calculated by applying the $200,000 limitation to all his years of Benefit Service.  The 1993 indexed $200,000 limitation will be applied to Earnings earned in all calendar years before 1994.

1.16.2.2.    **Plan Years after 1993**.  Beginning as of the first day of the 1994 Plan Year, each Member's Earnings taken into account for all purposes under the plan will be limited to $150,000 (as indexed under Code Section 401(a)(17)).  For each Member who earned more than $150,000 for any Plan Year before 1994, the $150,000 limitation will be applied retroactively to Plan Years before 1994 so as to provide him an Accrued Benefit equal to the greater of (A) his Accrued Benefit calculated and frozen as of the last day of the 1993 Plan Year by applying the $200,000 (indexed) limitation, or (B) his Accrued Benefit calculated by applying the $150,000 (indexed) limitation to all his years of Benefit Service.  Indexing of the $150,000 will not be applied retroactively unless permitted under the Code.  The annual Earnings of each Member taken into account in determining benefit accruals in any Plan Year beginning on and after January 1, 2005, shall not exceed $200,000. Annual Earnings means Earnings during the Plan Year or such other consecutive 12-month period over which Earnings are otherwise determined under the Plan (the determination period). The $200,000 limit on annual Earnings above shall be adjusted for cost-of-living increases in accordance with Code Section 401(a)(17)(B). The cost-of-living adjustment in effect for a calendar year applies to annual Earnings for the determination period that begins with or within such calendar year.

1.16.2.3.    **No Proration**.  The Plan will not prorate the statutory cap on Earnings for any Member who participates in the Plan for less than a full Plan Year, except with respect to the 2000 Plan Year for members of the 1999 Plan who elected to become Cash Balance Plan Members as of May 1, 2000.

1.17.    Effective Date means January 1, 2007 as to this amendment and restatement of the Plan., except as otherwise specified herein.

6

1.18.    Employee means any individual who is considered an employee of his Employer (including a person receiving Severance up to his Termination Date and/or accrued and/or earned (but unused) vacation immediately following termination of employment and a person on an Employer-approved leave of absence regardless of whether the Employee is receiving compensation from the Employer during the leave) for purposes of the taxes imposed under the Federal Insurance Contributions Act and the Federal Unemployment Tax Act.  Employee excludes:

    1.18.1.    any individual whose terms and conditions of employment are governed by a collective bargaining agreement which does not provide for participation in the Plan,

    1.18.2.    any individual who is accruing credit for benefit service purposes pursuant to any other qualified pension plan (other than a defined contribution-type plan) to which the Employer or an Affiliated Company contributes concurrent with his accrual of Benefit Service under the Plan,

    1.18.3.    any individual who is a non-resident alien and who receives no earned income (within the meaning of Code Section 911(d)(2)) from the Employer which constitutes income from sources within the United States (within the meaning of Code Section 861(a)(3)), and/or

    1.18.4.    any individual who is a Leased Employee or an independent contractor.

    1.18.5.    any individual who is or becomes an employee of Nortel Government Solutions Inc. on or after January 1, 2007, and was not transferred directly from employment with Nortel Networks Inc. or Nortel Federal Solutions Inc. to employment with Nortel Government Solutions.

    1.18.6.    any individual not considered to be an Employee by an Employer in its sole discretion, notwithstanding any contrary determination by any court, government agency or instrumentality, or other person or entity of any description other than the Employer.

1.19    Employee Benefits Committee" means the Committee appointed by the Board of NNI with the powers, duties and responsibilities described in Section 8.3 hereof.

1.20.    ERISA means the Employee Retirement Income Security Act of 1974.

1.21.    Employer means the Company and/or any Participating Companies.

1.22.    Final Average Earnings means the Member's annual average Earnings during the one thousand ninety-five (1,095) consecutive calendar day period of the Member's highest Earnings in the three thousand six hundred fifty (3,650) consecutive calendar days immediately preceding the Member's Termination Date (or June 1, 2000 with respect to a Member of the 1999 Plan who  elects to become a Cash Balance Plan Member or an Investor Option Employee as of May 1, 2000 ("Transition Date")), moving back from the Termination Date (or the Transition Date) in consecutive three hundred sixty five day increments with the first ending on the Termination Date (or the Transition Date) and the second increment ending one (1) year earlier.  In no event will any member's Final Average Earnings be determined as of a date after December 31, 2007, nor take into account any Earnings after such date.  If the Member has completed fewer than one thousand ninety-five (1095) total days as an Employee,  Final Average Earnings means the annual average Earnings during the total number of consecutive calendar days of the Member's employment with the Employer immediately preceding the member's Termination Date (or the Transition Date if applicable);

    Provided, however, that:

    1.22.1.    In calculating the Final Average Earnings, any Earnings paid on or after January 1, 1994 (including, but not limited to, sales commission payments and bonuses), which are not paid on a substantially equal basis throughout the calendar year, as well as overtime pay shall be attributed as Earnings evenly throughout the applicable 365-day period ending on the Termination Date (or the Transition Date if applicable) and earlier such periods as defined in this Section. during

7

which such amounts are paid.  Sales commission payments made prior to January 1, 1994, shall be attributed to the calendar year in which paid.

1.22.2.    With respect to a Member who is "totally and permanently disabled" as defined pursuant to Section 4.4.2., the Final Average Earnings shall mean the Member's annual average Earnings during the one thousand ninety-five (1,095) consecutive calendar day period of the Member's highest Earnings in the three thousand six hundred fifty (3,650) consecutive calendar days or, if less, the total number of consecutive calendar days of employment with an Employer immediately preceding the Member's termination of employment.  Such a Member's annual base salary amount at the time he becomes "totally and permanently disabled" shall be deemed to be his annual Earnings amount for each year between such date and his Termination Date (or the Transition Date if applicable).

1.22.3.    For purposes of determining the calendar days of highest Earnings and calculating a Member's Final Average Earnings under this Section, any reduction in Earnings resulting from a Member's receipt of benefits that are paid at a reduced percentage of the Member's Compensation pursuant to the Employer's short-term or long-term disability plan shall be disregarded.

1.22.4.    Averaging periods shall include consecutive three hundred sixty five (365) day periods within the averaging period when a Member has no Earnings and such Earnings shall be included in the averaging computation.  However, with respect to Members who transfer from an Affiliated Company which is not an Employer to an Employer and Members who had periods of employment that are credited under Section 3.2.4. hereof, and whose employment ends after they are 100% vested in their benefit from the Plan but before they complete at least one thousand ninety five (1,095) consecutive calendar days of employment with an Employer, periods when the Member has no Earnings will be averaged using a deemed annualized amount based on the Member's actual Earnings (rather than zero amounts).  With respect to the calculation of a benefit as of the Transition Date (as described under the first paragraph of this Section 1.21.) the Member will be presumed to have Earnings (during portions of averaging periods when the Member has no actual Earnings) equal to the rate of his base pay immediately before the period of no Earnings.

1.22.5.    The number of days in any averaging period referenced throughout this Section shall be adjusted to take into account additional days for leap years.

1.22.6.    In no event shall Earnings with respect to any period after 2007 be taken into account.

1.23.    <u>Hours of Service</u>

1.23.1.    <u>Hours of Service</u> means:

1.23.1.1.    each hour for which an employee is directly or indirectly paid, or entitled to payment by the Employer for the performance of duties for the Plan Year, and

1.23.1.2    each hour for which an employee is paid, or entitled to payment by the Employer for a period of time during which no duties were performed (regardless of whether or not the employee has terminated his employment relationship with the Employer) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, Severance or leave of absence, and

1.23.1.3.    each hour for which back pay (irrespective of mitigation of damages) has either been awarded or agreed to by the Employer  which shall be credited for the Plan Year to which the agreement or award pertains, and

M PRO 1041660 v4
2789126-000004 10/04/2007

1.23.1.4.    each hour of "qualified military service" (as defined under Section 414(u) of the Internal Revenue Code) for which the Employer is required under applicable law to provide the employee with an Hour of Service including, but not limited to, a period of military leave during which the employee's reemployment rights are protected under chapter 43 of title 38, United States Code; provided, however, that with respect to such military leave the employee returns to employment with the Employer within the period prescribed by applicable law.  Notwithstanding any provision of this Plan to the contrary, contributions, benefits, and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Internal Revenue Code.

1.23.2.    Notwithstanding any provisions contained herein, no employee shall be credited with an Hour of Service under more than one of Sections 1.23.1.1., 1.23.1.2., 1.23.1.3., and 1.23.1.4.  No Hours of Service shall be credited pursuant to Section 1.23.1.1. or 1.23.1.2. if payment to the employee is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, unemployment compensation or disability insurance laws.

One hundred ninety (190) Hours of Service shall be credited for, and in respect of, each calendar month in which an Employee is directly or indirectly paid by the Employer or entitled to payment for one (1) or more Hours of Service.  For the purposes of this Section. (except with respect to the determination of Benefit Service under Section 3.1. and Points Service under Section 3.3.), the term "Employer" shall include, in addition to those entities described in Section 1.21., an Affiliated Company.  The Department of Labor Regulations Sections 2530.200b-2(b) and (c) are incorporated by reference into this Section.

1.23.3    Notwithstanding the provisions of Section 1.23.2., an "Hour of Service" for the purpose of Sections 6.1.2.1. and 6.1.2.2. shall mean an actual hour for which the Member is paid or is entitled to payment, whether or not the Member is to be credited with more than one Hour of Service for that same hour for the purpose of calculating future benefits under this Plan, and whether or not such compensation is with respect to the performance of duties, vacation, holiday, illness, incapacity (including disability), layoff; jury duty, military duty, Severance or leave of absence; provided, however, that "Hour of Service" for the purpose of Sections 6.1.2.1. and 6.1.2.2. shall exclude accrued and/or earned (but unused) vacation which is paid as a lump sum upon termination of employment.

1.23.4    Hours of Service shall be credited for FMLA or other leaves of absence to the extent required by applicable law.

1.24.    Interest Credit Rate means, with respect to any calendar month, the average rate of the one-year U.S. Treasury Bill for the month of September immediately preceding the Plan Year in which such month occurs, as published by the Federal Reserve Bank in the Federal Reserve Bulletin , plus one percentage point (1%).  Notwithstanding any other provision of the Plan to the contrary, in no event will the Interest Credit Rate applied after 2007 for purposes of the Cash Balance Plan Member benefit provisions of the Plan exceed a market rate of return as contemplated by Code Section 411(b)(5)(B)(i).

1.25.    Investor Option Employee means an Employee who has waived participation in the Plan pursuant to Section 2.1.5. hereof.

1.26.    Late Retirement Date means the first  day of the calendar month coincident with or immediately following the last day of employment of an Employee whose employment terminates  after his Normal Retirement Date.

1.27.    Leased Employee means any person who, pursuant to an agreement between an Employer and any other person ("Leasing Organization"), performs services for the Employer (or for the Employer and related persons determined in accordance with Code Section 414(n)(6)) on a substantially full-time basis for a period of at least one (1) year and such services are performed under the primary direction or control of the Employer.  Provided, however, that such person shall cease to be treated as a Leased Employee if he has failed to perform such services

9

on a substantially full-time basis for a period of at least one (1) year following his initial designation as a Leased Employee.  This definition is effective for Plan Years beginning after December 31, 1996.

1.28.    Member means any Employee who has satisfied the eligibility requirements for membership in the Plan pursuant to Article II and has elected to participate (or has been deemed to participate) in the Plan as a  Pension Service Plan Member or as a Cash Balance Plan Member pursuant to Section  2.1.5., or any employee or former employee who is credited with an Accrued Benefit under the Plan.

1.29.    Monthly Earnings with respect to a Member means such Member's Earnings for the relevant calendar month.

1.30.    1999 Plan means the  Nortel Networks Pension Service Plan as in effect on April 30, 2000 which is attached hereto as Attachment 1 and is made a part of this Plan to the extent that it is referenced within this Plan.

1.31.    NNC Board means the Board of Directors of Nortel Networks Corporation.

1.32.    NNI Board means the Board of Directors of Nortel Networks Inc.

1.33.    NNL Board means the Board of Directors of Nortel Networks Limited.

1.34.    Normal Retirement Date means the first day of the calendar month coincident with or immediately following the Member's attainment of age sixty-five (65).

1.35.    Participating Company means any present or future subsidiary of the Company or other Affiliated Company which adopts the Plan by action of its board of directors and which is permitted to participate in the Plan by action of the NNI Board.  The effective date of such designations set forth above and the periods from which the Benefit Service, Vesting Service and Points Service of Employees of a Participating Company shall be credited to such Employees pursuant to the Plan shall be indicated on Appendices B and C, as applicable.  A Participating Company may revoke its acceptance of such designation at any time, subject to the approval of the NNI Board, provided that until such acceptance has been finally revoked as provided above, all of the provisions of the Plan as amended shall apply to the Employees of the Participating Company.  In the event of such final revocation, the Plan shall be deemed terminated only as to such Participating Company in accordance with Article IX.

1.36.    Pension Fund Policy Committee means the Pension Fund Policy Committee of the NNC and NNL Boards.

1.37.    Pension Investment Committee means the Pension Investment Committee described in Section 8.1 hereof and which is composed of the following officers of Nortel Networks Limited:  the Chief Financial Officer; the Senior Vice President, Human Resources; the Vice President, Taxation; the Controller; the Treasurer; the Vice President of Global Compensation and Benefits; and the Assistant Treasurer.

1.38.    Pension Service Plan means this Plan except to the extent that it applies only to a Cash Balance Plan Member.

1.39.    Pension Service Plan Member means an Employee who is a Member of the Pension Service Plan pursuant to an election or a deemed election under Section 2.1.5. hereof.

1.40.    Plan means the Nortel Networks Retirement Income Plan as set forth in its entirety in this document effective January 1, 2005, and the Trust Agreement, as this document and that Trust Agreement may be amended from time to time.  The Nortel Networks Retirement Income Plan was initially adopted effective May 1, 2000 as  an amendment and restatement of the 1999 Plan.

1.41.    Plan Administrator means the Retirement Plan Committee.

1.42.    Plan Year means each twelve (12) month period which begins on January 1 of each calendar year.

10

1.43.    <u>Points Service</u> is defined in Section 3.3.

1.44.    <u>Prior Plan</u> means the Northern Telecom Inc. Retirement Plan for Employees as in effect on December 31, 1998, which is attached hereto (as Attachment 2) and made a part of this Plan to the extent that it is referenced within this Plan.

1.45.    <u>Qualified Domestic Relations Order</u> means a judgment, decree or order made pursuant to state domestic relations law which assigns all or part of a Member's non-forfeitable Plan benefit to such Member's Alternate Payee and meets the requirements of Code Section 414(p) and Section 206(d)(3) of ERISA.

1.46.    <u>Recordkeeper</u> means Mercer Human Resource Consulting Limited or such other third party administrator of the Plan that may be selected from time to time by the Pension Investment Committee and that performs the duties set forth in this Plan to be performed by a "Recordkeeper".

1.47.    <u>Retirement Plan Committee</u>  means the Retirement Plan Committee described in Section 8.1 hereof and which is composed of the following employees of the Company or an Affiliated Company:  the Director, Global Benefits; the Leader, Global Employee Services; the Director, Global Pensions; the Director, Technical Accounting; and the Leader, Global Employee Tax Initiatives.  The Retirement Plan Committee is also the Plan Administrator of the Plan and the named fiduciary under ERISA with respect to plan administration.

1.48.    <u>Severance</u> means an Employee's severance or income continuation period and/or payments, as applicable, pursuant to the Nortel Networks Severance Allowance Plan or the Nortel Networks Enhanced Severance Allowance Plan (as applicable) (the "Severance Plan") or a separation agreement with the Employer.  Provided, that if an Employee receives a lump sum payment of severance benefits, the Employee shall be deemed to have a "standard Severance period" of up to four (4) weeks plus one (1) week for each year of such Member's "service" (as defined under the Severance Plan) and a total Severance period that does not exceed twenty-four (24) months and that is calculated by determining the amount that would have been paid if the lump sum payment had been paid in accordance with the payroll schedule applicable to the Employee prior to termination of employment.

1.49.    <u>Spouse</u> means the spouse of a Member whose marriage (a) continues to be recognized under the laws of the State in which the marriage was contracted as of the date in question, and (b) is recognized as valid under the federal Defense of Marriage Act.

1.50.    <u>Termination Date</u> means the date on which the Member ceases to be an Employee.  A Member's Termination Date shall be determined including his Severance (if applicable) for the "standard Severance period", (i.e. the period of up to four (4) weeks plus one (1) week for each year of such Member's "service" (as defined under the Severance Plan) as of his termination of employment with the Employer, immediately followed by the period for which he receives payment for accrued and/or earned (but unused) vacation.  Such definition of the "standard Severance period" shall apply to any   Employee who receives Severance payments even if paid pursuant to an individual separation agreement.  If the Employee receives the Severance in a lump sum, the Severance period shall be determined as described in Section 1.48 hereof.

1.51.    <u>Trust Agreement</u> means the Master Trust Agreement entered into with  the Trustee to carry out the purposes of the Plan, as amended from time to time.

1.52.    <u>Trustee</u> means the Trustee selected  as set forth in the Trust Agreement.

1.53.    <u>Trust Fund or Fund</u> means the cash and other properties held and administered by the Trustee in accordance with the provisions of the Trust Agreement and the Plan.

1.54.    <u>Vesting Service</u> is defined in Section 3.2.

M PRO 1041660 v4
2789126-000004 10/04/2007

1.55.    <u>Year of Service</u> means with respect to a Member, a Plan Year in which that Member has at least one thousand (1,000) Hours of Service.  No more than one (1) Year of Service shall be credited to a Member per Plan Year.

M PRO 1041660 v4
2789126-000004 10/04/2007

# ARTICLE II

# ELIGIBILITY FOR MEMBERSHIP

**2.1.**     **Eligibility for Membership**

2.1.1.     <u>Prior Members</u>.  An Employee who was a Member of the  Plan prior to 2007 and who remained an Employee and was credited with an Hour of Service after 2006 shall remain a Member, subject to the provisions of this restated Plan..

2.1.2.     <u>New Employees</u>.  An Employee who was not a Member prior to 2007 shall be eligible to become a Cash Balance Plan Member on the date that he commences his employment with an Employer prior to december 31, 2007.  Such an Employee shall not be eligible to become a Pension Service Plan Member.   Only an Employee of an Employer may become a Member.

2.1.3.     <u>Rehires</u>.  An Employee whose employment with all Employers, Affiliated Companies, and all other related companies with which the Company has a Reciprocal Agreement terminates shall be eligible to become a Cash Balance Plan Member, but shall not be eligible to become a Pension Service Plan Member, upon his rehire as an Employee.  This restriction shall apply regardless of whether the Employee was previously a Pension Service Plan Member.  Such Employee is also eligible to waive participation and become an Investor Option Employee upon his rehire. Notwithstanding the foregoing, in no event shall any individual who is rehired into any classification of employment after 2007 be eligible to become or resume status as a Member or accrue any benefit after 2007, but a benefit accrued prior to 2008 may be restored as otherwise provided in the Plan.

2.1.4.     <u>Transfers</u>.  An Employee who was a Member of the 1999 Plan or the Prior Plan or became a Pension Service Plan Member on or after May 1, 2000, then transfers out of employment with an Employer to employment with an Affiliated Company or another related company with which the Company has a Reciprocal Agreement, then transfers directly back to employment with an Employer (without a break in employment with such related companies), shall be eligible to become a Pension Service Plan Member or a Cash Balance Plan Member or to waive participation and become an Investor Option Employee upon his return to the status of "Employee".  An Employee who becomes a Member of the Plan on or after May 1, 2000 and whose employment is transferred directly to another Employer will continue as an Employee and a Member under this Plan without interruption.  An election of a benefit package as described under Section 2.1.5 hereof will not be required or permitted by such an Employee.  An Employee who elects to waive membership in the Plan and becomes an Investor Option Employee on or after May 1, 2000 and whose employment is transferred to another Employer will likewise continue as an Investor Option Employee and will not be required or permitted to make a new election of a benefit package as a result of such transfer.  Notwithstanding the foregoing, in no event shall any individual who is transfered to any classification of employment after 2007 be eligible to become or resume status as a Member or accrue any benefit after 2007, but a benefit accrued prior to 2008 may be restored as otherwise provided in the Plan.

2.1.5.     <u>Election of Benefit Package</u>.

2.1.5.1.     On or before March 31, 2000, an Employee who was eligible to participate in the Plan  as a Pension Service Plan Member was permitted to make an election to participate as a  Pension Service Plan Member, to participate as a  Cash Balance Plan Member, or to waive participation in the Plan and become an Investor Option Employee.  Such election became effective as of May 1, 2000, except that  an Employee who became an Investor Option Employee  ceased to accrue a benefit under the Plan as of June 1, 2000.  Such an Investor Option Employee who was a

13

member of the 1999 Plan prior to May 1, 2000 became fully vested in the greater of the Member's Accrued Benefit or Account Balance as of May 1, 2000.

An Employee who first becomes eligible to participate in the Plan on or after May 1, 2000, and consequently is eligible to participate in this Plan only as a Cash Balance Plan Member, shall make an election to participate in the Plan as a Cash Balance Plan Member or to waive participation in the Plan and become an Investor Option Employee. An election to become a Cash Balance Plan Member shall become effective on the first day of a payroll period as soon as practicable after the Recordkeeper receives such election.

2.1.5.2.    In the event an Employee fails to make an election under this Section 2.1.5 in the time and in the manner prescribed by the Plan Administrator or its designee, such Employee shall automatically be deemed to have elected participation as a Pension Service Plan Member, if he is otherwise eligible to make such an election, and all other Employees shall be deemed to have elected to participate in the Plan as a Cash Balance Plan Member.

2.1.5.3.    Any Member who ceases to be a Pension Service Plan Member for any reason on or after May 1, 2000, shall thereafter be forever ineligible to become or return to the status of a Pension Service Plan Member, except as provided under Section 2.1.4. hereof.

2.1.5.4.    All elections or modifications of elections under this Section 2.1.5 shall be made within the time and in the manner prescribed by the Plan Administrator or its designee.

2.1.6.    <u>No Members May Enter Plan After 2007</u>. Notwithstanding the foregoing or any other provision of the Plan, no individual may initially become a Member after 2007. An individual who remains a Member with an Accrued Benefit, who leaves an eligible category of employment and later returns to eligible Employee status shall resume status as an active Member in accordance with the foregoing. The Accrued Benefit of any such individual shall be adjusted for periods after 2007 only as provided in Section 1.2 with respect to interest or Interest Credit Rate adjustments for periods after 2007.

## 2.2.    **Excluded Individuals**

Notwithstanding any other provision of the Plan to the contrary, the term Employee shall not include any individual who is not recorded as an employee on the payroll records of an Employer, including any such individual who is subsequently reclassified by a court of law or a regulatory body as a common law employee of an Employer. For purposes of clarification only and not to imply that the preceding sentence would otherwise cover such person, the term Employee does not include any individual who performs services for an Employer as an independent contractor or under any other non-employee classification.

14

# ARTICLE III

## SERVICE

### 3.1. Benefit Service

As used herein the term "Benefit Service" means, with respect to a Pension Service Plan Member, that Member's aggregate number of Years of Service credited prior to 2008 with the Employer, commencing with the earliest date on which that Member was hired by, or transferred to, the Employer and ending on the earlier of December 31, 2007, or that Member's Termination Date. The determination of any Member's Benefit Service will be made as of a date no later than December 31, 2007, and will be subject to the following additional rules and exceptions:

    3.1.1.   Years of Service. If a Member has a Year of Service, he will be credited with one (1) year of Benefit Service. Benefit Service as of any determination date will include years of Benefit Service with respect to which a rehired Member had previously received a lump sum payment pursuant to Section 6.3. or 6.6. following an earlier termination of employment.

    3.1.2.   Exclusions. No credit for Benefit Service will be provided:

        3.1.2.1.   for service during a Plan Year in which a Member does not have a Year of Service;

        3.1.2.2.   for service prior to May 1, 1974; and

        3.1.2.3.   for service after such Member ceases to be a Pension Service Plan Member.

    3.1.3.   Disability Periods. A Pension Service Plan Member will receive credit for one hundred ninety (190) Hours of Service for purposes of Benefit Service for each calendar month during which he is totally and permanently disabled (as described in Section 4.4.2.), provided he has completed at least one (1) year of Vesting Service prior to the date that he became totally and permanently disabled. Benefit Service credit pursuant to this Section 3.1.3. will be subject to the following limitations:

        3.1.3.1.   Such Benefit Service credit will cease upon the earlier of the Member's Normal Retirement Date or his Termination Date, unless he is still eligible for benefits under any disability plan or policy maintained by the Employer. In such a case, Benefit Service credit will continue until such Member is no longer eligible for such disability benefits; provided, however, that such Benefit Service credit will not continue if such benefits are paid or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, unemployment compensation or disability insurance laws.

        3.1.3.2.   If a Member ceases to be totally and permanently disabled before his Termination Date, the accrual of Benefit Service pursuant to Section 3.1.3. will cease as of the date he ceased to be totally and permanently disabled.

        3.1.3.3.   No Benefit service will be credited for any individual for any period after 2007.

    3.1.4.   Acquired Company Service. A Pension Service Plan Member will be credited with Benefit Service for that Member's periods of employment by a company which becomes affiliated with the Company and becomes a Participating Company even though such periods occurred prior to the date on which such company became a Participating Company, but only to the extent that such periods of employment occur on or after the date specified for that Company in Appendix B or C, as applicable, under the column entitled "Benefit Service."

M PRO 1041660 v4
2789126-000004 10/04/2007

    3.1.5.   <u>Transfers Between Employers and Non-Employers</u>.  In a calendar year in which a  Pension

Service Plan Member transfers from employment with an Employer to employment with Nortel Networks  Limited or another Affiliated Company that has a Reciprocal Agreement (as described in Section 13.5.1.1.) with the Company, or from employment with Nortel Networks  Limited or another Affiliated Company that has a Reciprocal Agreement (as described in Section 13.5.1.1.) with the Company, to employment with an Employer, the Member will be credited with a fractional year of Benefit Service.  Such fraction shall be the number of days during such year for which the Member is credited with at least one (1) Hour of Service, divided by the number of days in that calendar year.  For such a year, the provision of Section 3.1.1. hereof regarding the determination of Benefit Service on the basis of completion of a Year of Service shall be inapplicable.

    3.1.6.   <u>Transition Year Credit</u>.  A Member who is a Pension Service Plan Member as of April 30, 2000, but elects membership under the Cash Balance Plan or waives membership and elects the Investor Option as of May 1, 2000 will be credited with a year of Benefit Service as of June 1, 2000.

    3.1.7.   <u>Leaves of Absence</u>.  Periods of FMLA or other leaves of absence shall be taken into account to the extent required by applicable law.

## 3.2.   <u>Vesting Service</u>

As used herein, the term "Vesting Service" will mean, with respect to a Member (or with respect to any Employee who is eligible to participate in the Plan but has waived participation under Section 2.1.5.1), the sum of the periods of time set forth in Sections 3.2.1., 3.2.2., 3.2.3., 3.2.4., and 3.2.5.

    3.2.1.   <u>Benefit Service</u>.  The number of years of Benefit Service that would be credited to that Member pursuant to Section 3.1. (or the number of deemed years of Benefit Service that would have been credited if that Member had met all of the other requirements for the crediting of Benefit Service during the applicable period except that the Member was not a Pension Service Plan member at that time), but without regard to Section 3.1.5 and without regard to the cessation of benefit Service as of December 31, 2007;

    3.2.2.   <u>Affiliated Company Service</u>.  The number of that Member's "years of service" with an Affiliated Company which is not also a Participating Company, provided that such "years of service" and "hours of service" will be calculated in a manner which is equivalent to the calculation of Years of Service and Hours of Service pursuant to this Plan, including service after 2007;

    3.2.3.   <u>Non-Covered Classification Service</u>.  The number of "years of service" with an Affiliated Company (as an employee) in a classification of employment not covered by the Plan, provided that such "years of service" and "hours of service" will be calculated in a manner which is equivalent to the calculation of Years of Service and Hours of Service pursuant to this Plan, including service after 2007;

    3.2.4.   <u>Acquired Company Service</u>.  Any periods of employment by a company which becomes affiliated with the Company and becomes a Participating Company even though such periods occurred prior to the date on which such company became a Participating Company, but only to the extent that such periods of employment occur on or after the date specified for that company in Appendix B or C, as applicable, under the column entitled "Vesting Service.";

    3.2.5.   <u>Points Service</u>.  The "Points Service" credited pursuant to Section 3.3.2. (or the number of deemed years of Points Service that would have been credited if that Member had met all of the other requirements for the crediting of Points Service during the applicable period except that the Member was not a Pension Service Plan member at that time) to the extent such periods of

16

service included in "Points Service" are not already included in Sections 3.2.1., 3.2.2., 3.2.3., or 3.2.4.; and

3.2.6.    <u>Leaves of Absence</u>.  Periods of FMLA or other leaves of absence shall be taken into account to the extent required by applicable law.

## 3.3.    <u>Points Service</u>

As used herein, the term "Points Service" shall mean, with respect to a Pension Service Plan Member, the sum of the periods of time set forth in Sections 3.3.1. and 3.3.2.

3.3.1.    <u>Benefit Service</u>.  The number of years of Benefit Service credited to that Member pursuant to Section 3.1., but without regard to Section 3.1.5.

3.3.2.    <u>Reciprocal Agreement Service</u>.  A Member who transfers to employment with an Employer from employment with Nortel Networks Limited or another Affiliated Company that has a Reciprocal Agreement (as described in Section 13.5.1.1.) with the Company will be credited with years of Points Service as of the date of his transfer equal to the years of service for vesting purposes which the Member had under the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan or such other applicable defined benefit plan of the Affiliated Company as of the day before his transfer that is recognized as service with the successor employer under the terms of the Reciprocal Agreement.

3.3.3.    <u>Acquired Company Service</u>.  Any periods of employment by a company which becomes affiliated with the Company and becomes a Participating Company even though such periods occurred prior to the date on which such company became a Participating Company, but only to the extent that such periods of employment occur on or after the date specified for that company in Appendix B or C, as applicable, under the column entitled "Points  Service.";

## 3.4.    <u>Limitation on Service Credited</u>

No more than one (1) year of Benefit Service, Vesting Service, or Points Service shall be credited to a Member with respect to any single Plan Year.  However, such limitation shall not apply to an Employee who is a Pension Service Plan Member as of April 30, 2000 but elects to become a Cash Balance Plan Member as of May 1, 2000 and is therefore granted Benefit Service credit pursuant to Section 3.1.6.

M PRO 1041660 v4
2789126-000004 10/04/2007

# ARTICLE IV

## ELIGIBILITY FOR BENEFITS

**4.1.    Normal Retirement**

A Member who elects to retire on his Normal Retirement Date shall receive a Normal Retirement Benefit as provided in Section 5.2.  The Member's first payment date shall be as of the first day of the month coincident with or immediately following the later of his Termination Date and the last day of his total Severance , which shall be deemed to be his Benefit Commencement Date (subject to the provisions of Section 6.1. hereof regarding the actual date of issuance of the initial payment or a lump sum payment).

**4.2.    Late Retirement**

A Member who remains employed after attainment of his Normal Retirement Date shall be eligible to retire on his Late Retirement Date.  Any Member so remaining shall not be entitled to receive payments of his Late Retirement Benefit as provided in Section 5.3. until he actually retires, except as provided in Section 6.1.3.  The Late Retirement Benefit shall begin as of the first day of any month, as elected by the Member, coincident with or immediately following the later of his Termination Date and the last day of his total Severance (subject to the provisions of Section 6.1. hereof regarding the actual date of issuance of the initial payment or a lump sum payment), provided that payment must commence no later than the date specified in Section 6.1.3. hereof.  Such date shall be deemed to be the Member's Benefit Commencement Date.

A Member who works past the month in which a Normal Retirement Benefit would have begun shall be notified in writing during that month that benefits will not be started.  The notification shall contain the information required by Department of Labor Regulation Section 2530.203-3 and other applicable law and regulations on suspension of benefits.

**4.3.    Early Retirement**

A Member may elect to retire on or after his Early Retirement Date but prior to his Normal Retirement Date and receive an Early Retirement Benefit.  Such benefit shall begin as of the first day of any calendar month coincident with or immediately following the later of his Termination Date and the last day of his total Severance (subject to the provisions of Section 6.1. hereof regarding the actual date of issuance of the initial payment or a lump sum payment), which date shall be his Benefit Commencement Date.

**4.4.    Disability Retirement**

    4.4.1.    A Pension Service Plan Member with one (1) year of Vesting Service who becomes and remains totally and permanently disabled until he attains age fifty-five (55) and completes four (4) years of Vesting Service (or three (3) years of Vesting Service in the case of any Member credited with at least one (1) Hour of Service after 2007), or a Cash Balance Plan Member with one (1) year of Vesting Service who becomes and remains totally and permanently disabled until he attains age fifty-five (55) and completes two (2) years of Vesting Service, shall be entitled to receive the Disability Retirement Benefit provided in Section 5.5.  The Disability Retirement Benefit shall become payable as of the first day of the first calendar month coincident with or immediately following the date he ceases to accrue Benefit Service as provided in Section 3.1.3. or Pay Credits as provided in Section 5.1.2. (subject to the provisions of Section 6.1. hereof regarding the actual date of issuance of the initial payment or a lump sum payment).   The Member may elect that such date or the first day of any subsequent calendar month shall be his Benefit Commencement Date.

    4.4.2.    A Member shall be considered, for purposes of the Plan, to be totally and permanently disabled if:

18

4.4.2.1.      He is eligible to receive a Disability Insurance Benefit as provided under federal Social Security laws, or

4.4.2.2.      In the event that he is not eligible to receive such Disability Insurance Benefit, the Plan Administrator or its designee, on the basis of medical evidence which is satisfactory to it, determines in its sole discretion that

(i)      he is prevented from engaging in any occupation or employment for remuneration for which he is reasonably qualified by education and experience unless such prevention resulted from:

4.4.2.2.1.      War or an act of war;

4.4.2.2.2.      Service in the armed forces of any country or political subdivision thereof;

4.4.2.2.3.      Attempted suicide or self-inflicted injury or illness; or

4.4.2.2.4.      Participation in a criminal act, or

(ii)     he otherwise qualifies for disability benefits under any plan or policy maintained by his Employer.

4.4.3.     The totally and permanently disabled Member shall submit to medical examinations, at the expense of the Employer at any reasonable time but not more often than every six (6) months prior to his Benefit Commencement Date pursuant to Section 4.4.1., the purpose of which is to permit the Plan Administrator or its designee to determine in its sole discretion whether he continues to be totally and permanently disabled for purposes of Section 4.4.2.2.  If that Active Member refuses or fails to submit to any of the medical examinations described above, for purposes of the Plan, he shall not be eligible to be considered totally and permanently disabled from the time of such refusal or failure until he submits to such examination.

4.4.4.     In order to become entitled to any Disability Retirement Benefits under Section 4.4 and 5.5, the Member must apply for such benefits at such time and in such manner as prescribed by the Plan Administrator or its designee.

## 4.5.     Termination of Employment/Vesting

4.5.1.     Except as otherwise provided herein, a  Pension Service Plan Member whose employment is terminated other than by retirement (pursuant to Section 4.1., 4.2., 4.3. or 4.4. hereof) or death is entitled to a Vested Retirement Benefit as provided in Section 5.6. if such Member had four (4) or more years of Vesting Service on his Termination Date or, in the case of any Member who is credited with at least one Hour of Service after 2007, three (3) or more years of Vesting Service, on his Termination Date.  A  Cash Balance Plan Member whose employment is terminated other than by retirement (pursuant to Section 4.1., 4.2., 4.3. or 4.4. hereof) or death is entitled to a Vested Retirement Benefit as provided in Section 5.6. if such Member had two (2) or more years of Vesting Service on his Termination Date.  Such Pension Service Plan or Cash Balance Plan Member's Benefit Commencement Date shall be the first day of a calendar month as elected by the Member after the later of his Termination Date or the last day of his total Severance, but not earlier than the first day of the fifth month after such date (subject to the provisions of Section 6.1. hereof regarding the actual date of issuance of the initial payment or a lump sum payment).

4.5.2.     A Member who is not entitled to a Vested Retirement benefit in accordance with Section 4.5.1. shall be entitled to a Vested Retirement Benefit as provided in Section 5.6. if:

M PRO 1041660 v4
2789126-000004 10/04/2007

4.5.2.1.    Such Member's employment is terminated solely as the result of a "divestiture" or "plant closing" or an "outsourcing" which has been designated as entitling the Members so terminated as entitled to a Vested Retirement Benefit by the Plan Administrator , in its sole discretion.  Such "divestitures", "plant closings", and "outsourcing" are set forth on Appendix D.  Upon the making of any such designation, the Plan Administrator shall prepare a list with the name of each Member who is eligible to receive a Vested Retirement Benefit as aforementioned, and only those Members on such list shall be eligible to receive such Vested Retirement Benefit pursuant to this Section 4.5.2.  Anything in this Section 4.5.2. to the contrary notwithstanding, in "divestitures", "plant closings" and "outsourcing" where a successor employer has assumed the liability to pay a Member's Vested Retirement Benefit, such Member shall not be entitled to receive a Vested Retirement Benefit pursuant to Section 5.6. from this Plan.  Only the plan of the successor employer shall be responsible for payment of such Vested Retirement Benefit or its equivalent.  Appendix D shall set forth the plant closings and divestitures for which the plan sponsored by a successor employer has assumed the liability for the Vested Retirement Benefit of affected Members.

## 4.6.    Pre-retirement Death Benefit

The Beneficiary of a Member who had satisfied the eligibility requirements for a non-forfeitable Plan benefit, but had not commenced such benefit as of his date of death, will be entitled to a death benefit pursuant to Section 5.7., which such Beneficiary may elect to receive as soon as reasonably practicable after such Member's death.

## 4.7.    Death After Retirement

If a Member dies on or after his Benefit Commencement Date, the payment of monthly benefits pursuant to the Plan shall cease unless the form of benefit then in effect with respect to that Member provides for the continuation of payment to a Beneficiary pursuant to Section 6.3.

## 4.8.    Non-Forfeitability of Normal Retirement Benefits

A Member's right to his Normal Retirement Benefit as described in Section 5.2. is non-forfeitable (without regard to length of Vesting Service) upon his attainment of age sixty-five (65) while an Employee.

## 4.9.    Disregard of Benefit Service

If a less than 100% vested Member receives a payment of his entire non-forfeitable Accrued Benefit, upon his return as a Member, such Accrued Benefit shall be disregarded as of the date of the distribution.  If such a Member is rehired and resumes the status of a Member, such  Member may repay to the Trustee the amount of the prior distribution, plus interest at the rate determined under Code section 411(c)(2)(C) calculated from the date of the distribution.  Such repayment must be made no later than five (5) years after the date of the Member's re-employment following the prior distribution.  If, prior to such date, the Member makes the repayment described above, the Member's previously disregarded Accrued Benefit will be restored.

A Member whose benefit is 100% forfeitable at the time of a prior termination of employment will have his Accrued Benefit restored as described in the preceding paragraph if he becomes an Employee and a Member again no later than the date when the Member incurs five (5) consecutive "breaks in service".  A break in service is a Plan Year during which the Member completes less than five hundred and one (501) Hours of Service.

Provided, however, that in no event will any individual's restoration as a Member in accordance with this Section entitle the individual to any Accrued Benefit with respect to any period, Service or Earnings after 2007.

M PRO 1041660 v4
2789126-000004 10/04/2007

# ARTICLE V

## COMPUTATION OF BENEFITS

**5.1.** **Determination of Account Balance**

5.1.1.    Pension Service Plan Members.  As of any determination date on or before December 31, 2007, a Pension Service Plan Member's Account Balance will be computed as the sum of the Member's Pension Credits and his Transition Pension Credits (as determined pursuant to Sections 5.1.1.1. and 5.1.1.2. as of a date not later than December 31, 2007), multiplied by his Final Average Earnings.  No Pension Service Plan Member's Accrued Benefit shall be determined as of any date after 2007, except as provided in Section 1.2 with respect to interest credits and Actuarial Equivalence adjustments for forms of payment.

5.1.1.1.    For each Plan Year beginning on or after January 1, 1999, and before January 1, 2008, during which a Member earns a year of Benefit Service, a Member shall be credited with a Pension Credit determined from the following chart which shall be based on the sum of the Member's highest attained age during that Plan Year and the total of the Member's whole years of Points Service completed on or after January 1, 1999, and before 2008 as of the date of determination of the Account Balance during the applicable Plan Year.  In no event will a Pension Service Plan Member's Accrued Benefit increase after 2007, whether as a result of additional Pension Credits, Transition Pension Credits, chages in Earnings or Final Average Earnings or otherwise,

| Sum of Age Plus Points Service | Pension Credit |
|---|---|
| Up to 45 | 2% |
| 46 – 55 | 5% |
| 56 – 65 | 9% |
| 66 – 75 | 13% |
| 76 and over | 20% |

5.1.1.2.    For Members who were Employees on or before December 31, 1998, and complete at least one (1) Hour of Service on or after January 1, 1999, a Transition Pension Credit shall be assigned to Plan Years before January 1, 1999 for the same number of years of Benefit Service credited under the Prior Plan and shall be determined from the following chart for each of his years of Benefit Service occurring prior to January 1, 1999.  Such determination shall be made as of the end of such Plan Year and shall be based on the assumption that the Member's age is decremented by one (1) for each consecutive year prior to his attained age in 1999, his Points Service is his Points Service completed before January 1, 1999 and is decremented by one (1) year for each consecutive Plan Year completed prior to January 1, 1999, and his years of Benefit Service occurred consecutively, without breaks, immediately before January 1, 1999.

M PRO 1041660 v4
2789126-000004 10/04/2007

| Sum of Age Plus Points Service | Transition Pension Credit |
|---|---|
| Up to 45 | 2% |
| 46 – 55 | 5% |
| 56 – 65 | 9% |
| 66 – 75 | 13% |
| 76 and over | 20% |

5.1.1.3    Any  Pension Service Plan Member or other Member who is credited with any Account Balance under this Section 5.1.1. and who subsequently elects to participate in the Plan as a Cash Balance Plan Member under Section 5.1.2. for periods prior to January 1, 2008, shall be credited with an initial Account Balance under Section 5.1.2. in accordance with the provisions of Section 5.1.2.1. in which case such Member's Account Balance, for purposes of this Section 5.1.1., shall be reduced to zero (0).

5.1.2.    <u>Cash Balance Plan Members</u>.  As of any determination date which occurs on or before December 31, 2007, a  Cash Balance Plan Member's Account Balance will be the amount credited to such Member's Cash Balance Account as of such date.  No Cash Balance Plan member's Accrued Benefit shall be determined as of any date after 2007, except as specifically provided in Section 1.2 with respect to Interest Credit Rate adjustments and Actuarial Equivalence adjustments for forms of payment.

5.1.2.1.    A  Cash Balance Plan Member who had accrued a benefit under this Plan prior to May 1, 2000, shall have an initial Account Balance, as of the date he becomes a Cash Balance Plan Member, equal to the greater of:

5.1.2.1.1.    the Account Balance of such Member, as calculated under section 5.1.1., as of the date he ceases to be a  Pension Service Plan Member; or

5.1.2.1.2.    the Actuarial Equivalent of the Member's Accrued Benefit as defined under Section 1.1.1 at the time he ceases participating in the Plan as a Pension Service Plan Member prior to 2008, but calculated using the Applicable Interest Rate for lump sum calculations in the year such Member commences participation in the Plan as a  Cash Balance Plan Member.  The lump sum value of a Cash balance Plan Member's Accrued benefit is limited as provided in section 1.2.

5.1.2.2.    A  Cash Balance Plan Member who had not accrued a benefit under this Plan at the time he begins participating in the Plan as a Cash Balance Plan Member shall have an initial Account Balance of zero (0).

5.1.2.3.    The Account Balance of each Cash Balance Plan Member shall be increased at the end of each calendar month beginning before 2008 during which such Member has at least one Hour of Service after such Member has become a Cash Balance Plan Member (as of the time described in Section 2.1.5 hereof) by a Pay Credit equal to four percent (4%) of his Monthly Earnings for such month.  No Pay Credit shall apply with respect to Earnings or any period after 2007.

5.1.2.4.    Each Account Balance under this Section 5.1.2 shall be increased at the end of each calendar month by an Interest Credit equal to the Account Balance as of the end of

22

the prior calendar month, multiplied (i) for periods prior to 2008 by one-twelfth (1/12) of the applicable Interest Credit Rate, and (ii) for periods after 2007 . Interest Credits shall accrue to any Account Balance subject to this Section 5.1.2., regardless of the Member's employment status or election to waive future participation in the Plan under Section 2.1.5.

**5.2.**    **Normal Retirement Benefit**

5.2.1.    Pension Service Plan Members.  The monthly "Normal Retirement Benefit" of a Member who is credited with an Account Balance under Section 5.1.1 and who becomes eligible therefore pursuant to Section 4.1. shall equal the greatest of the amounts described under 5.2.1.1., 5.2.1.2., or 5.2.1.3., subject to the cessation of benefit accruals as of December 31, 2007, under all provisions of the Plan and the provisions of Article XIII hereof if applicable.

      5.2.1.1.    The greater of (a) the Account Balance determined pursuant to Section 5.1.1. hereof as of a date not later than December 31, 2007, converted to an Actuarially Equivalent monthly annuity payable at age sixty-five (65) and (b) the product of the Member's years of Benefit Service (up to a maximum of thirty (30) years of Benefit Service) times fifteen dollars ($15).

      5.2.1.2.    For Members who were "members" of the Prior Plan on December 31, 1998, the Member's monthly "accrued retirement benefit" determined as of December 31, 1998 under the provisions of the Prior Plan as of such date.

      5.2.1.3.    For Members who were "members" of the Prior Plan on December 31, 1998 and who had attained age fifty (50) and completed four (4) or more years of Vesting Service on or before December 31, 1998, the Member's "accrued retirement benefit" computed under the provisions of the Prior Plan as of the date of determination of the Member's benefit.

However, if the Pension Service Plan Member had previously received a lump sum payment from the Plan pursuant to Section 6.3.3.5. or 6.6. or from the 1999 Plan or the Prior Plan, due to a termination of employment, such Pension Service Plan Member's monthly benefit shall be reduced by the amount of the Accrued Benefit previously distributed.

5.2.2.    Cash Balance Plan Members.  The monthly "Normal Retirement Benefit" of a Member who is credited with an Account Balance under Section 5.1.2. and who becomes eligible therefore pursuant to Section 4.1. shall be a monthly pension benefit equal to his Accrued Benefit (as defined in Section 1.1.2.)

Notwithstanding the foregoing, in the case of an Employee who was a Member of the Plan on or before April 30, 2000, the Normal Retirement Benefit is the greater of the benefit defined in the prior paragraph or the Normal Retirement Benefit that the Employee had accrued as of the later of (1) the last day the Member was credited with an Account Balance under Section 5.1.1., or (2) the last day the Employee was a Member of the 1999 Plan prior to May 1, 2000, determined under the terms of the Prior Plan as then in effect.

However, if a Cash Balance Plan Member had previously received a lump sum payment from the Plan pursuant to Sections 6.3.3.5. or 6.6. (or from the 1999 Plan or the Prior Plan), due to a prior termination of employment, and did not elect to repay the amount of such lump sum payment as described in Section 4.9. hereof, such Member's monthly Benefit shall not include the amount of the Accrued Benefit previously distributed.

5.2.3.    At the request of a Member, the Member may be continued in employment beyond the Member's

23

Normal Retirement Date. Any benefit which is commenced after the Member's Normal Retirement Date shall be adjusted so that the resulting benefit is the Actuarial Equivalent of the benefit which was payable as of the Member's Normal Retirement Date. Except with respect to a "five (5) percent owner," a Member's Accrued Benefit is actuarially increased to take into account the period after age 70 1/2 in which the Member does not receive any benefits under the Plan. The actuarial increase begins on the April 1 following the calendar year in which the Member attains age 70 1/2, and ends on the date on which benefits commence after retirement in an amount sufficient to satisfy Code Section 401(a)(9). The amount of actuarial increase payable as of the end of the period for actuarial increases must be no less than the Actuarial Equivalent of the Member's retirement benefits that would have been payable as of the date the actuarial increase must commence plus the Actuarial Equivalent of additional benefits accrued after that date, reduced by the Actuarial Equivalent of any distributions made after that date. The actuarial increase is generally the same as, and not in addition to, the actuarial increase required for that same period under Code Section 411 to reflect the delay in payments after normal retirement, except that the actuarial increase required under Code Section 401(a)(9)(C) must be provided even during the period during which a Member is in Act Section 203(a)(3)(B) service.

5.2.4.    Cessation of Benefit Accruals. Notwithstanding the foregoing provisions of this Section or any other provision of the Plan, in no event shall any benefit accrue to any Member under any provision of the Plan based upon Earnings or service after December 31, 2007, except as may be specifically provided under Section 1.2 with respect to interest or Interest Credit Rate adjustments after such date.

## 5.3.    Late Retirement Benefit

Each Member who continues in the employ of an Employer after attaining his or her Normal Retirement Date shall be entitled upon actual retirement to receive a monthly "Late Retirement Benefit" determined in the manner described under Section 5.2. as of the Member's Late Retirement Date. However, if a Cash Balance Plan Member had previously received a lump sum payment from the Plan pursuant to Sections 6.3.3.5. or 6.6. (or from the 1999 Plan or the Prior Plan), due to a prior termination of employment, and did not elect to repay the amount of such lump sum payment as described in Section 4.9. hereof, such Member's monthly Benefit shall not include the amount of the Accrued Benefit previously distributed.

However, if a Pension Service Plan Member had previously received a lump sum payment from the Plan pursuant to Section 6.3.3.5. or 6.6. or from the 1999 Plan or the Prior Plan, due to a termination of employment, such Pension Service Plan Member's monthly benefit shall be reduced by the amount of the Accrued Benefit previously distributed.

## 5.4.    Early Retirement Benefit

5.4.1.    The Account Balance determined pursuant to Section 5.1.1. hereof as of the Member's Termination Date, shall be credited with interest at the rate of 6% for each full year between the Member's attained age during the Plan Year in which the Termination Date occurs and the attained age during the Plan Year in which the Member's Benefit Commencement Date occurs. That amount will then be converted to an Actuarially Equivalent monthly annuity for the attained age of the Member during the Plan Year in which the Benefit Commencement Date occurs. Provided, that the Benefit will not be less than the greater of (a) the Actuarial Equivalent of the amount defined under Section 1.1.2. hereof determined as of Member's Termination Date; and (b) the product of the Member's years of Benefit Service (up to a maximum of thirty (30) years of Benefit Service) times fifteen dollars ($15) and reduced for any payment prior to age sixty-five (65) using the same early retirement reduction factors specified in Section 5.2. of the Prior Plan.

With respect to a Member who is credited with an Account Balance under Section 5.1.2., the Account Balance as of the Member's Termination Date, shall be credited with interest for each full month at an annual rate equal to the Interest Credit Rate, between the Member's attained age

24

during the Plan Year in which the Termination Date occurs and the attained age during the Plan Year in which the Member's Benefit Commencement Date occurs. That amount will then be converted to an Actuarially Equivalent monthly annuity for the attained age of the Member during the Plan Year in which the Benefit Commencement Date occurs. Provided, that the Benefit will not be less than the Actuarial Equivalent of the amount defined under Section 1.1.2. hereof determined as of the Member's Termination Date.

For Members who were "members" of the Prior Plan on December 31, 1998, the Member's early retirement benefit shall not be less than the "accrued retirement benefit" under the Prior Plan, determined as of December 31, 1998, and reduced for any payment prior to age sixty-five (65) using the early retirement reduction factors specified in Section 5.2. of the Prior Plan.

For Members who were "members" of the Prior Plan on December 31, 1998 and who had attained age fifty (50) and completed four (4) or more years of Vesting Service on or before December 31, 1998, the Member's early retirement benefit shall not be less than the "accrued retirement benefit" computed under the provisions of the Prior Plan as of the date of the determination (no later than June 1, 2000 for Cash Balance Plan Members) of the Member's benefit under this Section 5.4.3., reduced for any payment prior to age sixty-five (65) using the early retirement reduction factors specified in Section 5.2. of the Prior Plan.

Notwithstanding the foregoing, in the case of an Employee who was a Member of the 1999 Plan on or before April 30, 2000, the Early Retirement Benefit is the greater of the benefit defined in the prior paragraph or the Early Retirement Benefit that the Employee had accrued as of the later of (1) the last day the Member was credited with an Account Balance under Section 5.1.1., or (2) the last day the Employee was a member of the 1999 Plan prior to May 1, 2000, determined under the terms of the 1999 Plan as then in effect.

5.4.2.    However, if a Cash Balance Plan Member had previously received a lump sum payment from the Plan pursuant to Sections 6.3.3.5. or 6.6. (or from the 1999 Plan or the Prior Plan), due to a prior termination of employment, and did not elect to repay the amount of such lump sum payment as described in Section 4.9. hereof, such Member's monthly Benefit shall not include the amount of the Accrued Benefit previously distributed. If a Pension Service Plan Member had previously received a lump sum payment from the Plan pursuant to Section 6.3.3.5. or 6.6. or from the 1999 Plan or the Prior Plan, due to a termination of employment, such Pension Service Plan Member's monthly benefit shall be reduced by the amount of the Accrued Benefit previously distributed.

## 5.5.    Disability Retirement Benefit

5.5.1.    With respect to a Member who is credited with an Account Balance under Section 5.1.1., the Account Balance as of the Member's Termination Date, shall be credited with interest at the rate of 6% for each full year between the Member's attained age during the Plan Year in which the Termination Date occurs and the attained age during the Plan Year in which the Member's Benefit Commencement Date occurs. That amount will then be converted to an Actuarially Equivalent monthly annuity for the attained age of the Member during the Plan Year in which the Benefit Commencement Date occurs. Provided, that the Benefit will not be less than the greater of (a) Actuarial Equivalent of the amount defined under Section 1.1.1. hereof determined as of the Member's Termination Date; and (b) the product of the Member's years of Benefit Service (up to a maximum of thirty (30) years of Benefit Service) times fifteen dollars ($15) and reduced for any payment prior to age sixty-five (65) in the manner described in Section 5.5.2. for payments prior to age sixty-five (65).

With respect to a Member who is credited with an Account Balance under Section 5.1.2., the Account Balance as of the Member's Termination Date, shall be credited with interest for each full month at an annual rate equal to the Interest Credit Rate, between the Member's attained age during the Plan Year in which the Termination Date occurs and the attained age during the Plan

25

Year in which the Member's Benefit Commencement Date occurs.  That amount will then be converted to an Actuarially Equivalent monthly annuity for the attained age of the Member during the Plan Year in which the Benefit Commencement Date occurs.  Provided, that the Benefit will not be less than the Actuarial Equivalent of the amount defined under Section 1.1.2. hereof determined as of the Member's Termination Date.

5.5.2.   For Members who were "members" of the Prior Plan on December 31, 1998, the Member's "accrued retirement benefit" under the Prior Plan, determined as of December 31, 1998, and reduced for any payment prior to age sixty-five (65) but on or after age fifty-five (55) under the early retirement reduction factors specified in Section 5.2. of the Prior Plan.  The "accrued retirement benefit" shall be reduced for any payment prior to age fifty-five (55) under the early retirement reduction factor applicable assuming that the accrued benefit commencing at age sixty-five (65) was converted to a single sum actuarial equivalent amount, discounted with interest at the rate of six percent (6%) for each full year between the Member's attained age during the Plan Year in which the Member's Benefit Commencement Date occurs and age sixty-five (65).  That amount will then be converted to an Actuarially Equivalent monthly annuity for the attained age of the Member during the Plan Year in which the Benefit Commencement Date occurs.

5.5.3.   For Members who were "members" of the Prior Plan on December 31, 1998 and who had attained age fifty (50) and completed four (4) or more years of Vesting Service on or before December 31, 1998, the Member's "accrued retirement benefit" computed under the provisions of the Prior Plan as of the date of the determination (no later than June 1, 2000 for Cash Balance Plan Members) of the Member's benefit under this Section 5.5.3., reduced for any payment prior to age sixty-five (65) but on or after age fifty-five (55) using the early retirement reduction factors specified in Section 5.2. of the Prior Plan.  The "accrued retirement benefit" shall be reduced for any payment prior to age fifty-five (55) using the early retirement reduction factor applicable assuming that the accrued benefit commencing at age sixty-five (65) was converted to a single sum actuarial equivalent amount, discounted with interest at the rate of six percent (6%) for each full year between the Member's attained age during the Plan Year in which the Member's Benefit Commencement Date occurs and age sixty-five (65).  That amount will then be converted to an Actuarially Equivalent monthly annuity for the attained age of the Member during the Plan Year in which the Benefit Commencement Date occurs.

5.5.4.   However, if a Cash Balance Plan Member had previously received a lump sum payment from the Plan pursuant to Sections 6.3.3.5. or 6.6. (or from the 1999 Plan or the Prior Plan), due to a prior termination of employment, and did not elect to repay the amount of such lump sum payment as described in Section 4.9. hereof, such Member's monthly Benefit shall not include the amount of the Accrued Benefit previously distributed.  If a Pension Service Plan Member had previously received a lump sum payment from the Plan pursuant to Section 6.3.3.5. or 6.6. or from the 1999 Plan or the Prior Plan, due to a termination of employment, such Pension Service Plan Member's monthly benefit shall be reduced by the amount of the Accrued Benefit previously distributed.

5.5.5.   In no event will any Member's Accrued Benefit be determined as of a date after 2007, subject only to specific adjustments described in Section 1.2.

## 5.6.   Vested Retirement Benefit

5.6.1.   The Account Balance determined pursuant to Section 5.1.1. hereof as of the Member's Termination Date, shall be credited with interest at the rate of 6% for each full year between the Member's attained age during the Plan Year in which the Termination Date occurs and the attained age during the Plan Year in which the Benefit Commencement Date occurs. That amount will then be converted to an Actuarially Equivalent monthly annuity for the attained age of the Member during the Plan Year in which the Benefit Commencement Date occurs.  Provided, that the Benefit will not be less than the greater of (a) the Actuarial Equivalent of the amount defined under Section 1.1.1. hereof determined as of the Member's Termination

26

Date; and (b) the product of the Member's years of Benefit Service (up to a maximum of thirty (30) years of Benefit Service credited prior to 2008) times fifteen dollars ($15) and reduced for any payment prior to age sixty-five (65) in the manner described in Section 5.6.2. hereof.

With respect to a Member who is credited with an Account Balance under Section 5.1.2., the Account Balance as of the Member's Termination Date, shall be credited with interest for each full month at an annual rate equal to the Interest Credit Rate, between the Member's attained age during the Plan Year in which the Termination Date occurs and the attained age during the Plan Year in which the Member's Benefit Commencement Date occurs. That amount will then be converted to an Actuarially Equivalent monthly annuity for the attained age of the Member during the Plan Year in which the Benefit Commencement Date occurs. Provided, that the Benefit will not be less than the Actuarial Equivalent of the amount defined under Section 1.1.2. hereof determined as of the Member's Termination Date.

5.6.2.   For Members who were "members" of the Prior Plan on December 31, 1998, the Member's "accrued retirement benefit" under the Prior Plan, determined as of December 31, 1998, and reduced for any payment prior to age sixty-five (65) but on or after age fifty-five (55) under the early retirement reduction factors specified in Section 5.2. of the Prior Plan. The "accrued retirement benefit" shall be reduced for any payment prior to age fifty-five (55) under the early retirement reduction factor applicable assuming that the accrued benefit commencing at age sixty-five (65) was converted to a single sum actuarial equivalent amount, discounted with interest at the rate of six percent (6%) for each full year between the Member's attained age during the Plan Year in which the Member's Benefit Commencement Date occurs and age sixty-five (65). That amount will then be converted to an Actuarially Equivalent monthly annuity for the attained age of the Member during the Plan Year in which the Benefit Commencement Date occurs.

5.6.3.   For Members who were "members" of the Prior Plan on December 31, 1998 and who had attained age fifty (50) and completed four (4) or more years of Vesting Service on or before December 31, 1998, the Member's "accrued retirement benefit" computed under the provisions of the Prior Plan as of the date of the determination (no later than June 1, 2000 for Cash Balance Plan Members) of the Member's benefit under this Section 5.6.3., reduced for any payment prior to age sixty-five (65) but on or after age fifty-five (55) under the early retirement reduction factors specified in Section 5.2. of the Prior Plan. The "accrued retirement benefit" shall be reduced for any payment prior to age fifty-five (55) under the early retirement reduction factor applicable assuming that the accrued benefit commencing at age sixty-five (65) was converted to a single sum actuarial equivalent amount, discounted with interest at the rate of six percent (6%) for each full year between the Member's attained age during the Plan Year in which the Member's Benefit Commencement Date occurs and age sixty-five (65). That amount will then be converted to an Actuarially Equivalent monthly annuity for the attained age of the Member during the Plan Year in which the Benefit Commencement Date occurs.

5.6.4   However, if a Cash Balance Plan Member had previously received a lump sum payment from the Plan pursuant to Sections 6.3.3.5. or 6.6. (or from the 1999 Plan or the Prior Plan), due to a prior termination of employment, and did not elect to repay the amount of such lump sum payment as described in Section 4.9. hereof, such Member's monthly Benefit shall not include the amount of the Accrued Benefit previously distributed. If a Pension Service Plan Member had previously received a lump sum payment from the Plan pursuant to Section 6.3.3.5. or 6.6. or from the 1999 Plan or the Prior Plan, due to a termination of employment, such Pension Service Plan Member's monthly benefit shall be reduced by the amount of the Accrued Benefit previously distributed.

## 5.7.   Pre-retirement Death Benefit

The Beneficiary described in Section 4.6. hereof shall receive a death benefit which is Actuarially Equivalent to the Account Balance determined pursuant to Section 5.4.1. or 5.4.2. hereof as of the date of the Member's death.

M PRO 1041660 v4
2789126-000004 10/04/2007

Provided, that the benefit shall not be less than the greater of 5.7.1., 5.7.2., or 5.7.3., if applicable:

5.7.1.    For the Beneficiary of a Member who was a "member" of the Prior Plan on December 31, 1998, the Member's "accrued retirement benefit" determined as of December 31, 1998, and reduced for any payment prior to age sixty-five (65) using the early retirement reduction factors specified in Section 5.2 of the Prior Plan.

5.7.2.    For the Beneficiary of a Member who was a "member" of the Prior Plan on December 31, 1998 and who had attained age fifty (50) and completed four (4) or more years of Vesting Service as of December 31, 1998, the Member's "accrued retirement benefit" computed under the provisions of the Prior Plan as of the date of the Member's death (no later than June 1, 2000 for Cash Balance Plan Members), and reduced for any payment prior to age sixty-five (65) using the early retirement reduction factors specified in Section 5.2 of the Prior Plan.

5.7.3.    For a Beneficiary who is a Spouse, a benefit equal to the amount that would have been paid if

5.7.3.1.    in the case of a Member who dies after his Early Retirement Date, such Member had retired with a Qualified Joint and Survivor Annuity as provided in Section 6.3.1. on the day prior to the member's date of death or

5.7.3.2.    in the case of a Member who dies on or before his Early Retirement Date, such Member had

5.7.3.2.1.    separated from service on such Member's Termination Date,

5.7.3.2.2.    survived to his Early Retirement Date,

5.7.3.2.3.    retired with a Vested Retirement Benefit on his Early Retirement Date with a Qualified Joint and Survivor Annuity as provided in Section 6.3.1, and

5.7.3.2.4.    died on the date after the day on which said Member would have attained his Early Retirement Date.

5.7.4.    However, if the Cash Balance Plan Member had previously received a lump sum payment from the Plan pursuant to Sections 6.3.3.5. or 6.6. (or from the 1999 Plan or the Prior Plan), due to a prior termination of employment, and did not elect to repay the amount of such lump sum payment as described in Section 4.9. hereof, such Member's monthly Benefit shall not include the amount of the Accrued Benefit previously distributed.  If a Pension Service Plan Member had previously received a lump sum payment from the Plan pursuant to Section 6.3.3.5. or 6.6. or from the 1999 Plan or the Prior Plan, due to a termination of employment, such Pension Service Plan Member's monthly benefit shall be reduced by the amount of the Accrued Benefit previously distributed.

If the Beneficiary is not a Spouse, the benefit payable pursuant to this Section 5.7. shall not be converted to an annuity and shall be payable only in the form of a lump sum payment.  If the Beneficiary is the Spouse, such Spouse may elect that the benefit be paid in the form of an Actuarially Equivalent lump sum payment or a monthly payment for the life of the Spouse.

## 5.8.    Ad Hoc Increases

From time to time, the  retirement benefits payable from the Fund to some or all retired Members, their Beneficiaries or Alternate Payees (if provided in the applicable Qualified Domestic Relations Order) who are receiving a Normal Retirement Benefit, a Late Retirement Benefit, an Early Retirement Benefit, a Vested Retirement Benefit, a Death Benefit, or a Disability Retirement Benefit may be increased by a discretionary amount and in a manner as set forth in a  Plan amendment adopted in accordance with Section 9.1 and  described in Appendix E.  A Member who elects

to receive a lump sum payment of his Plan benefit pursuant to Section 6.3.3.5. or receives payment in such form pursuant to Section 6.6. shall not receive any such ad hoc increases.

M PRO 1041660 v4
2789126-000004 10/04/2007

## ARTICLE VI

## PAYMENT OF BENEFITS

**6.1.    Payment Period and Continued Employment/Reemployment**

6.1.1.    Except as otherwise provided in Section 6.6. or as elected pursuant to Section 6.3.3.5, all benefits which become payable hereunder shall be payable monthly, calculated as provided herein, commencing on the Benefit Commencement Date, which shall be the first day of the calendar month coincident with or immediately following the date of death or the date on which a recipient elects to commence receipt of such benefits, whichever is applicable, as specified in 4.1., 4.2., 4.3., 4.4., 4.5., and 4.6.  Provided, that the initial monthly payments or lump sum payment shall be paid as soon as reasonably practicable after the later of the date the Member specifies as his Benefit Commencement Date and the date the Recordkeeper receives such written election from the Member.  All such monthly payments shall continue until the last monthly payment prior to the death of the payee.  If a Member elects to defer receipt of a benefit after the date the benefit becomes payable pursuant to Section 4.1., 4.2., 4.3., 4.4., or 4.5., the amount determined under Section 6.3.3.5. at the time of actual payment shall be determined in accordance with the applicable Section of Article VI as of the applicable date.

If a Member fails to submit an election before the date for his first possible benefit payment, the Recordkeeper  shall not authorize payment of such benefit until the Member furnishes necessary information with respect to his marital status and the age of his Spouse, if any.  Except as specified above or as requested by the Member, benefits under this Plan shall commence no later than sixty (60) days after the close of the Plan Year in which the latest of the following occurs:

(A)        the Member's sixty-fifth (65th) birthday; or

(B)        the tenth (10th) anniversary of the year the Member commenced participation in the plan, or

(C)        the Member's Termination Date.

6.1.2.    Suspension of Benefits:  If a Member continues employment after his Normal Retirement Date or is reemployed as an Employee on or after his Benefit Commencement Date and is paid or is entitled to payment from the Employer for a total of:

6.1.2.1.    less than forty (40) Hours of Service as described in Section 1.22.3. in any given calendar month, such Member shall be entitled to receive or continue to receive for such month his Plan benefit.

6.1.2.2.    forty (40) or more Hours of Service as described in Section 1.22.3. in any calendar month, such Member's Plan benefit shall be suspended for such calendar month.

6.1.2.3.    In the case of any such Member whose benefit is to be suspended pursuant to Section 6.1.2.2. above, the Plan Administrator or its designee shall furnish such Member with the notification described in Department of Labor Regulation Section 2530.203-3.  Upon such Member's termination of reemployment, his benefit shall be increased to the extent required, if at all, to the minimum extent necessary under such regulations to avoid the effecting of a prohibited forfeiture of benefits by reason of such suspension during such Member's post-Normal Retirement Date reemployment.

30

6.1.2.4.    Upon the subsequent termination of employment of a Member described in Sections 6.1.2.1 or 6.1.2.2., whether or not his Plan benefit was suspended during such employment pursuant to Section 6.1.2.2., such Member's Plan benefit shall be recalculated pursuant to the applicable provisions of the Plan if such Member accrued an additional Plan benefit as a result of service completed during his period of continued employment or reemployment subsequent to his Benefit Commencement Date.  Such recalculated Plan benefit amount shall be reduced by an amount which is the Actuarial Equivalent of the accumulated value of the Plan benefit payments, if any, such Member received prior to termination of this continued employment or reemployment period.  Any such reduction shall be limited to the extent necessary to ensure that the Plan benefit payable to a Member upon termination of this period of continued employment or reemployment shall not be less than the actual amount of the Plan benefit such Member received immediately prior to the recalculation described in Section 6.1.2.4.

6.1.2.5    If a Member's benefit payments are suspended pursuant to Section 6.1.2.2. and/or the Member has accrued an additional Plan benefit pursuant to Section 6.1.2.4., the date of the recommencement of Plan benefit payments or implementation of recalculated Plan benefit payments shall be considered a new Benefit Commencement Date and the Member and his Spouse, if applicable, shall make new elections and consents pursuant to the provisions of Section 6.3., which shall apply to the entire Plan benefit.

6.1.2.6.    If a reemployed Member's Plan benefit payments are not suspended pursuant to Sections 6.1.2.1. or 6.1.2.2. and the Member has not accrued an additional Plan benefit pursuant to Section 6.1.2.4., the Member's original Benefit Commencement Date and any elections and consents made pursuant to the provisions of Section 6.3. for such original Benefit Commencement Date shall apply to the Member's subsequent retirement.

6.1.3.    <u>Commencement of Benefits at Age 70-1/2</u>:  Notwithstanding any provision in the Plan to the contrary, the distribution of a Member's benefits, whether under the Plan or through the purchase of an annuity contract, shall be made in accordance with the following requirements and shall otherwise comply with Code Section 401(a)(9) and the Regulations thereunder (including Regulation 1.401(a)(9)-2), the provisions of which are incorporated herein by reference.  A Member's benefits shall be distributed or must begin to be distributed not later than April 1st of the calendar year following the later of (i) calendar year in which the Member attains age 70 1/2 or (ii) the calendar year in which the Member retires, provided, however, that this clause (ii) shall not apply in the case of a Member who is a "five (5) percent owner" at any time during the Plan Year ending with or within the calendar year in which such owner attains age 70 1/2. Such distributions shall be equal to or greater than any required distribution. Alternatively, if the distribution is to be in the form of a joint and survivor annuity or single life annuity, then distributions must begin no later than the applicable April 1st as determined under the preceding paragraph and must be made over the life of the Member (or the lives of the Member and the Member's designated Beneficiary) in accordance with Regulations.  Distributions to a Member and the Member's Beneficiaries shall only be made in accordance with the incidental death benefit requirements of Code Section 401(a)(9)(G) and the Regulations thereunder.  With respect to distributions under the Plan made for calendar years beginning on or after January 1, 2002, the Plan will apply the minimum distribution requirements of Code Section 401(a)(9) in accordance with the Regulations under Code Section 401(a)(9) that were proposed on January 17, 2001, notwithstanding any provision of the Plan to the contrary. This amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final Regulations under Code

31

Section 401(a)(9) or such other date specified in guidance published by the Internal Revenue Service.

(f)     For purposes of this Section, the life expectancy of a Member and a Member's spouse (other than in the case of a life annuity) may, at the election of the Member or the Member's spouse, be redetermined in accordance with Regulations. The election, once made, shall be irrevocable. If no election is made by the time distributions must commence, then the life expectancy of the Member and the Member's spouse shall not be subject to recalculation. Life expectancy and joint and last survivor expectancy shall be computed using the return multiples in Tables V and VI of Regulation 1.72-9.

(g)     All annuity Contracts under this Plan shall be non-transferable when distributed. Furthermore, the terms of any annuity Contract purchased and distributed to a Member or spouse shall comply with all of the requirements of the Plan.

## 6.2.    Facility of Payment

If the Plan Administrator or its designee finds that any person to whom a Plan benefit is payable is unable to care for his affairs because of mental incapacity, illness, disability, or accident or because such person is a minor, any payment due may be paid only to a duly appointed guardian, committee, conservator or other legal representative of such person.  Any such payments shall discharge any liability under the Plan therefor.

## 6.3.    Form of Payment

6.3.1.    Normal Form of Benefit:  Except as set forth below, a Member who has a Spouse on his Benefit Commencement Date shall automatically receive an Actuarially Equivalent joint and 50% survivor benefit, as set forth in Section 6.3.3.2.(ii) ("Qualified Joint and Survivor Annuity"), with such Spouse as Beneficiary, and all other Members shall automatically receive a straight life annuity as set forth in Section 6.3.3.1.  Any Member may elect to receive any optional form of benefit, as provided in Section 6.3.3.

6.3.1.1.    A Member whose Spouse would be his Beneficiary under the terms of this Plan and who wishes to choose a form of payment other than a Joint and Survivor Annuity as described in Section 6.3.3.2. with his Spouse as Beneficiary may make any such election only if:

6.3.1.1.1.    The value of the Qualified Joint and Survivor Annuity is the Actuarial Equivalent of a lump sum distribution of more than One Thousand Dollars ($1,000.00),  and

6.3.1.1.2.    The Member previously had filed with the Recordkeeper either a waiver of rights signed by the Member's Spouse or an affidavit that the Spouse is not locatable.  Such waiver or affidavit shall be in a manner acceptable to the Plan Administrator or its designee and/or in compliance with any federal laws, rules or regulations which provide rights to the Spouse and/or protect any such rights which may exist.

6.3.2.    Election of Payment Form:  Any Member who would otherwise receive the  normal form of benefit as set forth in Section 6.3.1. may elect to take his benefit in an optional form, as set forth in Section 6.3.3., rather than the normal form of standard benefit, by executing the benefit election form provided by the Recordkeeper during the election period described below.  Any election may be revoked and subsequent elections may be made or revoked at any time during such election period.  The Recordkeeper shall furnish certain information pertinent to this

M PRO 1041660 v4
2789126-000004 10/04/2007

election to each Member no less than thirty (30) days and no more than ninety (90) days before his Benefit Commencement Date. However, the Recordkeeper may provide the written explanation after the Benefit Commencement Date. In any case to which this applies, the applicable election period shall not end before the thirtieth (30th) day after the date on which such explanation is provided. A Member may elect (with any applicable spousal consent) to waive any requirement that the written explanation be provided at least thirty (30) days before the Benefit Commencement Date (or to waive the thirty (30) day requirement above) if the distribution commences more than seven (7) days after such explanation is provided. The furnished information shall be written in non-technical language and shall include an explanation of (1) the terms and conditions of the normal form of benefit, (2) such Member's right to make an election not to take his benefit in the normal form and the effect of such an election, (3) the rights of such Member's Spouse, if any, (4) the right to revoke any such election and the effect of such revocation, (5) a general description of the eligibility conditions and other material features of the alternative forms of benefit available pursuant to Section 6.3.3.; and (6) sufficient additional information to explain the relative values of such alternative forms of benefit. The period of time during which a Member may make or revoke any election shall be the ninety (90) day period ending on such Member's Benefit Commencement Date. The death of a Member's Beneficiary prior to his Benefit Commencement Date shall automatically revoke that Member's election of a joint and survivor annuity.

6.3.3.    <u>Optional Forms of Payment</u>:  Optional benefit payment forms may be elected by a Member in lieu of the normal form of benefit described in Section 6.3.1. to the degree that such elections are not inconsistent with Treasury regulation 1.401(a)(9)-2.  The optional benefit payment forms are:

6.3.3.1.    Payment monthly for the life of the Member ("Straight Life Annuity");

6.3.3.2.    A reduced monthly benefit for the life of the Member, and following the Member's death, a monthly benefit payable for the remaining lifetime of his Beneficiary which is:  (i) equal to the Member's monthly benefit, (ii) equal to fifty percent (50%) of the Member's monthly benefit, or (iii) equal to seventy-five percent (75%) of the Member's monthly benefit (such three (3) optional forms shall each be referred to generally as a "Joint and Survivor Annuity").  If the Beneficiary is not the Member's Spouse, the Member may not elect any option unless the present value of the payments expected to be made to the Member complies with the incidental death benefit rule under Code Section 401(a)(9)(G).

6.3.3.3.    Payment monthly for a period of ten (10) years or for the life of the Member, whichever is greater; or

6.3.3.4.    A Straight Life Annuity, as described in Section 6.3.3.1., to which the appropriate Social Security Leveling Benefit Factor from Appendix A is applied, thereby providing the Member with an increased benefit prior to the Member's attainment of age sixty-two (62), and reduced benefits thereafter.  The option described in this Section 6.3.3.4. will be available only to a Member who has attained age fifty-five (55) but has not attained age sixty-two (62) as of his Benefit Commencement Date.

6.3.3.5.    A Lump Sum Payment - This method of payment shall provide the greater of (a) or (b):

(a)    a cash payment equal to the amount determined under Section 5.1.1. or Section 5.1.2. before conversion to an annuity form of payment, or

(b)    the Member's Accrued Benefit payable at Normal Retirement Date converted to a lump sum cash payment using an Actuarial Equivalent for lump sum purposes.

33

**6.4.** **Death Benefit**

Notwithstanding any provision in the Plan to the contrary, if the Spouse of the Member is the Beneficiary of the death benefit payable pursuant to Section 4.6. hereof, the Spouse may direct that payment of the death benefit commence at any time after the Member's death.  However, distributions to the Spouse shall commence on or before the later of:  (i) April 1 of the calendar year immediately following the calendar year in which the Member died; or (ii) April 1 of the calendar year following the calendar year in which the Member would have attained age seventy and one-half (70-1/2). If the Beneficiary is not a Spouse, the benefit shall be paid as soon as reasonably practicable after the Member's death in the form of a lump sum payment.

**6.5.** **Qualified Domestic Relations Orders**

All rights and benefits, including elections, provided to a Member under this Plan shall be subject to the rights afforded any Alternate Payee under a Qualified Domestic Relations Order.  In the event the Plan Administrator or its designee receives a Qualified Domestic Relations Order which provides for an immediate lump sum distribution to a Member's Alternate Payee, the Plan Administrator or its designee shall direct the Recordkeeper and the Trustee to comply with such Qualified Domestic Relations Order in the processing of such a distribution even though the affected Member has not reached the "earliest retirement age" as defined in Code Section 414(p)(4)(B).

**6.6.** **Payment of Small Benefits**

Notwithstanding any other provision of this Article VI to the contrary, if the non-forfeitable Plan benefit of a Member, Beneficiary or Alternate Payee is Actuarially Equivalent to a lump sum amount which is One Thousand Dollars ($1,000.00) or less as of such individual's Benefit Commencement Date pursuant to the Plan or, if earlier and applicable, the Member's termination of employment with the Employer, whether by death or other termination of employment, the  lump sum value of such benefit shall be distributed to such Member, Beneficiary or Alternate Payee, as applicable, in lieu of and in complete discharge of its obligation to furnish such benefit; provided, however, that, if such Beneficiary is the Member's Spouse and the Member's death occurred on or after his Benefit Commencement Date, such Spouse must consent to the lump sum distribution.  A Member, Beneficiary, or Alternate Payee whose non-forfeitable Plan benefit is zero ($0) shall be deemed to receive a lump sum amount in accordance with this Section 6.6 upon such individual's Benefit Commencement Date, or, if earlier and applicable, the Member's termination of employment with the Employer, whether by death or other termination of employment.

**6.7.** **Direct Rollover E1ection**

    6.7.1.   Effective Date:  This amended Section 6.7, which was originally effective as of January 1, 1993, applies to distributions made on or after January 1, 2005.

    6.7.2.   Definitions:  For purposes of this Section 6.7., the following terms shall have the following meanings:

        6.7.2.1.   Direct Rollover:  A payment by the Plan to an Eligible Retirement Plan designated by a Distributee.

        6.7.2.2.   Distributee:   Each (i) Member entitled to an Eligible Rollover Distribution, (ii) Member's surviving Spouse with respect to the interest of such surviving spouse in an Eligible Rollover Distribution, and (iii) former spouse of a Member who is an Alternate Payee under a Qualified Domestic Relations Order, with regard to the interest of such former spouse in an Eligible Rollover Distribution, and (iii) for distributions after December 31, 2006, (A) a non-spouse beneficiary who is a "designated beneficiary" under Code §401(a)(9)(E) and the Treasury Regulations or other Treasury Department guidance issued thereunder, (B) a trust, provided the trust satisfies the

34

requirements to be a designated beneficiary within the meaning of Code §401(a)(9)(E).

6.7.2.3.  Eligible Retirement Plan:  (i) With respect to a Distributee other than a surviving spouse, an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), an annuity plan described in Code Section 403(a), or a qualified plan described in Code Section 401(a), which under its provisions accepts such Distributee's Eligible Rollover Distribution and (ii) with respect to a Distributee who is a surviving spouse, an individual retirement account described in Code Section 408(a) or an individual retirement annuity under Code Section 408(b) .

6.7.2.4.  Eligible Rollover Distribution:  Any distribution of all or any portion of the Plan benefit of a Distributee other than (i) a distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated beneficiary or for a specified period of ten (10) years or more, (ii) a distribution to the extent such distribution is required under Code Section 401(a)(9), (iii) the portion of a distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities), and (iv) any other distribution so designated by the Internal Revenue Service in revenue rulings, notices, and other guidance of general applicability.

6.7.3.  Direct Rollover Limitations:  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under Section 6.7., a Distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have all or any portion of an Eligible Rollover Distribution paid directly to one (1) Eligible Retirement Plan specified by the Distributee in a Direct Rollover.  The preceding sentence notwithstanding, a Distributee may elect a Direct Rollover pursuant to Section 6.7. only if such Distributee's Eligible Rollover Distributions during the Plan Year are reasonably expected to total Two Hundred Dollars ($200) or more.  Furthermore, if less than one hundred percent (100%) of the Member's Eligible Rollover Distribution is to be a Direct Rollover, the amount of the Direct Rollover must be Five Hundred Dollars ($500) or more.  The Member may not direct any single Rollover to more than one (1) Eligible Retirement Plan.  Prior to any Direct Rollover pursuant to Section 6.7., the Distributee shall furnish the Recordkeeper with a statement from the plan, account, or annuity to which the benefit is to be transferred verifying that such plan, account, or annuity is an Eligible Retirement Plan.

6.7.4.  Notice of Direct Rollover Rights:  No less than thirty (30) days and no more than ninety (90) days before his Benefit Commencement Date, the Recordkeeper shall inform the Distributee of his Direct Rollover right pursuant to this Section.  A distribution or Direct Rollover of the Distributee's benefit may commence less than thirty (30) days (but not less than eight (8) days) after such notice is given, provided that (i) the Recordkeeper  clearly informs the Distributee that the Distributee has a right to a period of at least thirty (30) days after receiving the notice to consider the decision of whether or not to elect a Direct Rollover and (ii) the Distributee, after receiving the notice, affirmatively elects either a distribution or a Direct Rollover or a combination thereof.

35

## ARTICLE VII

## FINANCING

### 7.1.    Fund

The funding of the Plan and payment of the benefits thereunder shall be provided for through the medium of a Trust Fund held by a Trustee or Trustees under the provisions of a Trust Agreement.  The contributions of the Employer to the Trust Fund, together with any income, gains or profits, less distributions and losses, shall constitute the Fund. The form and terms of any such Trust Agreement shall be set forth in the Trust Agreement which may be modified from time to time to accomplish the purposes of this Plan.  The Trustee may be removed and a successor appointed in accordance with the terms of the Trust Agreement.

### 7.2.    Employer Contributions

7.2.1.    Annual Contributions and Expense Reimbursements:  It is the intention of the Company that the Employer shall make, from time to time, the contributions to the Fund as described in Section 7.1.  The Employer shall contribute to the Plan for each Plan Year such amount as is necessary to satisfy the funding requirements of the Plan, as determined by the Company.  The funding requirements shall be calculated each year by the Plan's actuary under the funding and asset valuation methods used to determine the costs and liabilities of the Plan; provided, however, that such actuarial methods shall be reasonable and not otherwise inconsistent with applicable regulations.  Members shall not be required or permitted to make contributions to the Plan. Expenses of the Plan, unless paid by the Company, shall be paid out of the assets of the Fund to the extent that the payment of such expenses by the Fund is permissible under applicable law.

7.2.2.    Use of Forfeitures:  Any forfeiture arising from an Employee's termination of employment or death or for any other reason prior to the termination of the Plan shall be used to reduce any Employer contribution required pursuant to the preceding paragraph and shall not increase any benefits otherwise payable hereunder.

### 7.3.    Irrevocability

7.3.1.    Ownership of Fund:  The Employer shall have no right, title, or interest in the contributions made by it to the Trustee and no part of the Fund shall revert to the Employer except that upon termination of the Plan and after satisfaction of all liabilities of the Plan, any amount remaining in the Plan may revert to the Employer as set forth in Section 9.2.  However, all contributions are made subject to deductibility for tax purposes and the continued qualification of the Plan with the Internal Revenue Service.  If any contribution is not deductible for tax purposes, such contribution shall be returned to the Employer within one (1) year of the date of disallowance reduced by any net losses of the Trust Fund attributable thereto, but not increased by any net earnings of the Trust Fund attributable thereto.

7.3.2.    Mistake of Fact:  If Employer contributions are made under a mistake of fact, such contributions shall, upon the written demand of the Employer, be returned to the Employer by the Trustee within one (1) year after the payment thereof, reduced by any net losses of the Trust Fund attributable thereto, but not increased by any net earnings of the Trust Fund attributable thereto.

36

# ARTICLE VIII

## ADMINISTRATION

### 8.1.    Named Fiduciaries

The Plan Administrator, the Employee Benefits Committee and the Trustee shall each be named fiduciaries for the Plan with respect to their duties as set forth in this Article 11 and in other sections of the Plan or the Trust Agreement.  In addition, certain plan governance and corporate governance duties regarding the Plan shall be performed by the Plan Administrator and other entities in accordance with the provisions of the Plan as follows:

      **a.**      **Nortel Networks Corporation Board (NNC Board).**  NNC does not sponsor any retirement plans; nor does it act as an administrator or fiduciary with respect to any retirement plans.  The NNC Board has not been allocated any plan governance responsibilities for this Plan.

      The NNC Board receives, for its information with respect to its corporate governance responsibilities (including management of risks and disclosures to shareholders), an annual update on the status of this Nortel Networks Inc. pension Plan.  This update includes information about the financial status of the Plan as well as material claims or possible claims relating to the Plan and other material risks.

      **b.**      **Nortel Networks Limited Board (NNL Board).**  Nortel Networks Inc. is a subsidiary of Nortel Networks Limited and Nortel Networks Inc. sponsors this  retirement plan for its employees.

      The NNL Board has the following plan governance responsibilities with respect to this Plan:

      (1)      approve the Plan governance structure and any material revision to it; and

      (2)      for its information with respect to its plan governance responsibilities, receive an annual update on the discharge of responsibilities under the plan governance structure, including the activities of committees, the plan administrator, investments, litigation, and potential claims.

      The NNL Board has the following corporate governance responsibilities with respect to the Plan:

      (1)      receive, for its information with respect to corporate governance, an annual update on the status of the Plan.  This update will include information about the financial status of the Plan as well as material claims or possible claims relating to the Plan and other material risks;

      (2)      approve material amendments to the Plan and Plan design changes following adoption of this Plan restatement by the NNI Board (which hereby delegates such responsibility to the NNL Board);

      (3)      approve Plan design amendment costs; and

      (4)      approve Plan funding contributions in excess of statutory requirements and above a one hundred million dollar ($100,000,000 aggregate annual limit.

      **c.**      **CHRC .**  The CHRC of  the NNC and NNL Boards has the following corporate governance responsibilities with respect to the Plan:

      (1)      recommend to the NNL Board plan design changes  and material amendments following adoption of this Plan restatement by the NNI Board (which hereby delegates such responsibility to the CHRC);

      (2)      recommend to the NNL Board the Plan design and amendment costs; and

M PRO 1041660 v4
2789126-000004 10/04/2007

(3)    after approval by the NNL Board, authorize adoption of any material amendments by the NNI Board following adoption of this Plan restatement by the NNI Board (which hereby delegates such responsibility to the CHRC).

(4)    after approval by the NNL Board, authorize adoption of any material amendments by NNL management or NNI Board.

**d.    Audit Committee.**  The Audit Committee of the NNL and NNC Boards has the following plan governance responsibilities:

(1)    approve the NNI Board acceptance of the audited plan financial statements for the Plan.

**e.    Pension Fund Policy Committee ("PFPC")** .  In carrying out its responsibilities, the Pension Fund Policy Committee of the NNL and NNC Boards has the following plan governance responsibilities

(1)    the adoption of governance structure and processes applicable to the Plan and recommendation of such structure and processes to the NNL Board of Directors for approval;

(2)    receive assurance from the Chief Legal Officer that the Corporation and its subsidiaries are in compliance with applicable laws related to the operation and maintenance of the pension Plan; and

(3)    make delegations of authority and responsibilities as the Pension Fund Policy Committee deems proper and periodically review such delegations.

(4)    review and approve the appointment and removal of investment/assets consultants for the Plan Funds;

(5)    review and approve the asset mix and investment management structure for the Plan Funds;

(6)    review and approve the appointment and removal of the Plan actuary and recommend to the NNI Board the appointment of the Plan actuary;

(7)    review and approve the acceptance of the Plan actuarial reports.

In carrying out its responsibilities, the Pension Fund Policy Committee of the NNL and NNC Boards has the following corporate governance responsibilities:

(1)    review and approve and recommend to the NNL Board and the NNC Board an annual pension governance report;

(2)    review for informational purposes any applicable changes to Plan designs and material Plan amendments and associated costs;

(3)    review and approve (within the applicable regulatory parameters) the Plan actuarial funding assumptions and methodologies proposed by the actuary to establish the assets and the liabilities of the Plan for funding purposes;

(4)    review and recommend to the NNL Board Plan funding contributions in excess of statutory requirements and above one hundred million dollars ($100,000,000) aggregate global annual limit; and

(5)    make delegations of authority and responsibilities as the Pension Fund Policy Committee deems proper and periodically review such delegations.

M PRO 1041660 v4
2789126-000004 10/04/2007

      **f.**    **Pension Investment Committee (PIC).**  The PIC has the following plan governance responsibilities with respect to the Plan:

      (1)    recommend to the PFPC the plan governance structures and any material revisions to them;

      (2)    approve any non-material revisions to the plan governance structures;

      (3)    recommend to the Audit Committee the acceptance of the audited plan financial statements for the Plan;

      (4)    approve the policies for payment of plan expenses either from the plan trusts or by the Company;

      (5)    approve the annual compliance review for the Plan prepared by the Legal Group; and

      (6)    approve the evaluation and selection of the Plan trustees, custodians and third party administrators.

      (7)    Recommend to the PFPC the appointment of the actuary to the Plan;

      (8)    Recommend to the PFPC the acceptance of Plan actuarial reports;

      (9)    Recommend to the PFPC the appointment of the investment/asset consultant to the Plan;

      (10)    Recommend to the PFPC the strategic asset allocation for the Plan;

      (11)    Approve the Statement of Investment Policies and Procedures with respect to the Plan within the parameters set by the strategic asset allocation policy set by the PFPC;

      (12)    Approve the evaluation and selection of investment managers for the Plan.

The PIC has the following corporate governance responsibilities with respect to the Plan:

      (1)    recommend to the PFPC the annual update on financial status of the Plan for corporate governance purposes;

      (2)    recommend to the CHRC any applicable Plan design changes and material Plan amendments and Plan design change and amendment costs following the adoption by the NNI Board of this Plan restatement (which hereby delegates such responsibility to the PIC);

      (3)    advise the PFPC, for information purposes, of any applicable Plan design changes and material plan amendments and Plan design change and amendment costs;

      (4)    approve criteria for authorizing the adoption of non-material Plan amendments;

      (5)    approve non-material Plan amendments following the adoption of this Plan restatement by the NNI Board which delegates such responsibility;

      (6)    recommend to the Chief Executive Officer, Chief Financial Officer or Treasurer any funding contributions to the Plan in excess of statutory requirements and up to and including a one hundred million dollar ($100,000,000) aggregate annual limit;

      (7)    recommend to the PFPC any funding contributions to the Plan in excess of statutory requirements and up to and including a one hundred million dollar ($100,000,000) aggregate annual limit;

M PRO 1041660 v4
2789126-000004 10/04/2007

(8)    recommend to the PFPC (within the applicable regulatory parameters) the actuarial funding assumptions and methodologies proposed by the Plan actuary.

g.    **Retirement Plan Committee (RPC) ("Plan Administrator").**  Effective January 1, 2005, the RPC replaces NNI as the named fiduciary and Plan Administrator for the Plan and the fiduciary with respect to the selection of Investment Options offered under the Plan.

The RPC has the following plan governance responsibilities with respect to the Plan:

(1)    recommend to the PIC the Plan governance structures and any revisions to them;

(2)    recommend to the PIC the acceptance of the audited plan financial statements for the Plan;

(3)    recommend to the PIC the policies for payment of plan expenses either from the Plan trust or by the Company;

(4)    approve the expenses paid by the Plan;

(5)    approve the Plan expenses paid by Company;

(6)    assist the Legal Group in preparation of the annual compliance review  for the NNL and Plan and recommend to the PIC;

(7)    approve the annual Plan employee statements;

(8)    recommend to the PIC the appointment of the Plan actuary;

(9)    recommend to the PIC the acceptance of the Plan's actuarial reports;

(10)    recommend to the PIC the appointment of the Plan investment/asset consultant;

(11)    recommend to the PIC the strategic asset allocation for the Plan;

(12)    recommend to the PIC the Plan Statement of Investment Policies and Procedures;

(13)    recommend to the PIC the evaluation and selection of Plan investment managers;

(14)    approve employee Plan information.

The RPC has the following corporate governance responsibilities with respect to the NNL and NNI retirement plans:

(1)    prepare a draft annual update for the PIC on the financial status of the Plan for corporate governance purposes;

(2)    recommend to the PIC any applicable Plan design changes and material amendments following adoption of this Plan restatement by the NNI Board (which hereby delegates such responsibility to the RPC);

(3)    recommend to the PIC criteria for authorizing the adoption of non-material plan amendments following adoption of this Plan restatement by the NNI Board (which hereby delegates such responsibility to the RPC);

(4)    prepare estimates for the PIC of plan design and amendment costs;

40

(5)     prepare material Plan amendments following adoption of this Plan restatement by the NNI Board which delegates such responsibility;

(6)     recommend to the PIC any non-material Plan amendments following adoption of this Plan restatement by the NNI Board (which hereby delegates such responsibility to the RPC);

(7)     prepare non-material Plan amendments following adoption of this Plan restatement by the NNI Board (which hereby delegates such responsibility to the RPC;

(8)     recommend to the PIC any Plan funding contributions by the Chief Executive Officer in excess of statutory requirements and up to a one hundred million dollar ($100,000,000) aggregate annual limit;

(9)     recommend to the PIC any funding contributions by the Chief Executive Officer in excess of statutory requirements and above a one hundred million dollar ($100,000,000) aggregate annual limit;

(10)     recommend to the PIC the choice (within the applicable regulatory parameters of the Plan's actuarial funding assumptions and methodologies proposed by the Plan's actuary.

**h.     NNI Board.**  The NNI Board has the following corporate governance responsibilities with respect to the Plan:

(1)     authorize the PFPC, the PIC, the RPC, and such other entities and Committees as is applicable to manage and administer the Plan in accordance with the duties delegated to them in this restatement of the Plan.  The adoption of this Plan by the NNI Board constitutes such authorization; and

(2)     subject to the approval of the Audit Committee, accept the audited plan financial statements for the Plan.

The NNI Board has the following plan governance responsibilities with respect to the Plan following adoption of this Plan restatement by the NNI Board:

(1)     adopt material Plan amending resolutions as authorized by the CHRC; and

(2)     adopt non-material Plan amending resolutions authorized by the PIC.  Prior to the date of adoption of this amendment and restatement of the Plan by the NNI Board, the NNI Board retains the responsibility to adopt all Plan amendments.

(3)     appoint the Plan actuary following the approval by the PFPC.

**8.2.     Fiduciary Processes**

a.     Except as otherwise specified in Section 8.1., the entities described in that Section shall be structured in accordance with the mandates or bylaws by which they were established.  Meetings shall be held at such time and in such manner as shall be determined by each entity.   With regard to the duties related to this Plan which have been delegated as described in Section 8.1., each entity shall have all powers necessary to accomplish the purposes for which such duties were delegated.

b.     In their relationships with each other, the Trustee, any insurance company, administrator and/or any investment advisor pertaining to any matter or thing included in this Plan, any officer or any other individual to whom such authority has been delegated may sign or execute any document or instrument which must be signed on behalf of Nortel Networks Inc., Nortel Networks Limited, or Nortel Networks Corporation.  Minutes of the meetings of  the Committees described in Section 8.1. and of the NNI, NNC and NNL Boards shall be conclusive evidence of their actions with regard to Plan duties delegated to them.

**8.3.** **Employee Benefits Committee**

8.3.1.   Employee Benefits Committee Structure:

8.3.1.1.   The Employee Benefits Committee shall be appointed by the Company and shall consist of one (1) or more persons.  Any individual, whether or not an Employee, is eligible to become a member of the Employee Benefits Committee.

8.3.1.2.   Each member of the Employee Benefits Committee shall serve until he resigns, dies, or is removed by the Company.  For purposes of this Section 8.3., the "Company" shall be represented by the NNI Board.  At any time during his term of office, a member of the Employee Benefits Committee may resign by giving written notice to the Company and the Employee Benefits Committee, such resignation to become effective upon the appointment of a substitute member or, if earlier, the lapse of thirty (30) days after such notice is given as herein provided.  At any time during his term of office, and for any reason, a member of the Employee Benefits Committee may be removed by the Company with or without cause, and the Company may in its discretion fill any vacancy that may result therefrom.  Any member of the Committee who is an Employee or employee of an Affiliated Company shall automatically cease to be a member of the Employee Benefits Committee as of the date he ceases to be employed by the Company or an Affiliated Company.

8.3.1.3.   The Employee Benefits Committee may select officers and shall appoint a Secretary and such other agents and representatives as it may deem advisable (who may, but need not be, members of the Employee Benefits Committee) to assist it in doing any act or thing to be done or performed by the Employee Benefits Committee.  The Employee Benefits Committee may, but is not required to, keep records of its proceedings and shall make available for examination during business hours to any Member, Beneficiary or Alternate Payee, such records as pertain to that individual's interest in the Plan.  The Employee Benefits Committee shall designate the person or persons who shall be authorized to sign for the Employee Benefits Committee and, upon such designation, the signature of such person or persons shall bind the Employee Benefits Committee.

8.3.1.4.   The Employee Benefits Committee shall hold meetings at such time and place as it may from time to time determine.  A majority of the members of the Employee Benefits Committee duly appointed shall constitute a quorum for the transaction of business.  All resolutions or other actions taken by the Employee Benefits Committee at any meeting where a quorum is present shall be by a vote of a majority of those present at such meeting and entitled to vote.  Resolutions may be adopted or other action taken without a meeting upon written consent signed by all of the members of the Employee Benefits Committee.

8.3.1.5.   No member of the Employee Benefits Committee shall have any right to vote or decide upon any matter relating solely to himself under the Plan or to vote in any case in which his individual right to claim any benefit under the Plan is particularly involved.  In any case in which an Employee Benefits Committee member is so disqualified to act, and the remaining members cannot agree, the Board shall appoint a temporary substitute member to exercise all the powers of the disqualified member concerning the matter in which he is disqualified.

8.3.1.6.   The members of the Employee Benefits Committee shall not receive compensation with respect to their services for the Employee Benefits Committee, but all expenses of the Employee Benefits Committee shall be paid by the Company.  To the extent

42

required by ERISA or other applicable law, or required by the Company, members of the Employee Benefits Committee shall furnish bond or security for the performance of their duties hereunder.

8.3.2.    Employee Benefits Committee Powers:  The Employee Benefits Committee  shall have all powers necessary to accomplish its responsibility of making determinations regarding appeals of denied claims under Section 8.5 of this Plan, including, but not by way of limitation, the right, power, authority, and duty:

(1)    In its sole discretion, to construe all terms, provisions, conditions, and limitations of the Plan that may apply to a decision regarding an appeal.  In all cases, the construction necessary for the Plan to qualify under the applicable provisions of the Code shall control;

(2)    In its sole discretion, to correct any defect or to supply any omission or to reconcile any inconsistency that may appear in the Plan with regard to an issue affecting an appeal, in such manner and to such extent as it shall deem in its discretion expedient to effectuate the purposes of the Plan;

(3)    In its sole discretion, to determine all questions relating to eligibility that are raised in an appeal;

(4)    In its sole discretion, to make a determination as to the right of any person to a benefit under the Plan that is the subject of an appeal; and

(5)    In its sole discretion, to review and make determinations on appeals pursuant to Section 8.5

8.3.3.    Fiduciary Insurance:  The Company shall provide appropriate insurance coverage to cover financial liability for the members of the Employee Benefits Committee and may provide such coverage for other fiduciaries of the Plan who are otherwise not appropriately insured.

## 8.4.    Trustee

The Trustee shall have the powers, duties and responsibilities of custody, investment and disbursement of the Fund in accordance with the Plan and the Trust Agreement.

## 8.5.    Claims and Appeals Procedures

a.    Claims Procedure:  All claims for benefits under the Plan shall be directed in writing to the attention of the Recordkeeper.  If the Recordkeeper in its sole discretion determines that any individual who has claimed a right to receive benefits under the Plan is not entitled to receive all or any part of the benefits claimed, it shall inform the claimant by certified mail or by electronic notification of its determination and the reasons therefore in a manner calculated to be understood by the claimant.  Such notification shall be given within a reasonable period of time, but not later than ninety (90) days after receipt of the claim by the Recordkeeper, unless the Recordkeeper determines that special circumstances require an extension of time for processing the claim.  If the Recordkeeper determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial ninety (90) day period.  In no event shall such extension exceed a period of ninety (90) days from the end of such initial period.  The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Recordkeeper expects to render the benefit determination.    Such notification shall set forth, in a manner calculated to be understood by the claimant:  (i) the specific reason or reasons for the adverse determination; (ii) reference to the specific plan provisions on which the determination is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an

43

explanation of why such material or information is necessary; (iv) a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

b.      Appeals Procedure:  Following an initial adverse decision by the Recordkeeper concerning a claim for benefits, a claimant may appeal such determination to the Employee Benefits Committee within sixty (60) days of receipt of the notification of the adverse benefit determination.  A claimant who appeals a denied claim may submit to the Employee Benefits Committee written comments, documents, records, and other information relating to the claim for benefits.  The claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.  A document, record, or other information is "relevant" to a claim for benefits if it: (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; or (iii) demonstrates compliance with the administrative processes and safeguards required by ERISA and the applicable regulations in making the benefit determination.  The review of such an appeal by the Employee Benefits Committee shall take into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Employee Benefits Committee shall make a decision on the claimant's appeal no later than the date of the meeting of the Employee Benefits Committee that immediately follows the Plan's receipt of a request for review, unless the request for review is filed within thirty (30) days preceding the date of such meeting.  In such case, a benefit determination may be made by no later than the date of the second meeting following the Plan's receipt of the request for review.  If special circumstances require a further extension of time for processing, a benefit determination shall be rendered not later than the third meeting of the Employee Benefits Committee following their   receipt of the request for review.  If such an extension of time for review is required because of special circumstances, the Employee Benefits Committee shall provide the claimant with written notice of the extension, describing the special circumstances and the date as of which the benefit determination will be made, prior to the commencement of the extension.   The Employee Benefits Committee shall notify the claimant of the benefit determination as soon as possible, but not later than five (5) days after the benefit determination is made.

If the Employee Benefits Committee in its sole discretion determines that any individual who has filed an appeal of an initial adverse benefit determination is not entitled to receive all or any part of the benefits claimed, it shall inform the claimant by certified mail or by electronic notification of its determination and the reasons therefore in a manner calculated to be understood by the claimant.  Such notification shall set forth, in a manner calculated to be understood by the claimant:  (i) the specific reason or reasons for the adverse determination; (ii) reference to the specific plan provisions on which the determination is based; (iii) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.  A document, record, or other information is "relevant" to a claim for benefits if it: (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; or (iii) demonstrates compliance with the administrative processes and safeguards required by ERISA and the applicable regulations in making the benefit determination.

## 8.6.    **Information for Claims and Appeals**

With respect to the claims and appeals procedures described in Section 8.5. hereof, the Company shall supply full and timely information to the Recordkeeper and the Company and the Recordkeeper shall supply full and time information to the Employee Benefits Committee for the use of the Recordkeeper in making the initial claims determination and for the use of the Employee Benefits Committee in making the appeals determination.  Such information shall include, but shall not be limited to, information relating to each Member's compensation, age,

44

Hours of Service, Years of Service, death, or other cause of termination of employment, and such other pertinent facts as the Recordkeeper or the Employee Benefits Committee (as applicable) may require.  When making a claims or appeals determination in connection with the Plan, the Recordkeeper and the Employee Benefits Committee shall be entitled to rely upon the aforesaid information furnished by the Company and the Recordkeeper.

8.7.    If the Employee Benefits Committee determines, or if it is adjudicated by a court of competent jurisdiction, that the Plan has distributed benefits to an ineligible payee or to an eligible payee in an incorrect amount, then and in that event:

      8.7.1.    The Company, upon notice from the Employee Benefits Committee of such a determination or adjudication, shall take appropriate action, including but not limited to a payment to the Plan necessary to provide the benefit so determined or adjudicated; and

      8.7.2.    The Employee Benefits Committee shall, in its discretion, prosecute, compromise or abandon claims in favor of the Plan against the payee who is determined or adjudicated to have received a benefit incorrectly, for the purpose of recovering appropriate amounts for the Plan, where the Employee Benefits Committee determines that such is in the interests of the Plan.

M PRO 1041660 v4
2789126-000004 10/04/2007

## ARTICLE IX

## AMENDMENT, DURATION, TERMINATION AND MERGER

**9.1.** **Amendment and Duration of the Plan**

The Company reserves the right (subject to the recommendations and approvals of the entities to whom such responsibility has been delegated under Section 8.1. hereof)  to adopt amendments to the Plan from time to time or terminate the Plan at any time through appropriate actions of the NNI Board.  Except as provided in Section 7.3., no such amendment or termination shall operate to recapture for the Employer any part of the Fund previously contributed under the Plan nor, except to the extent necessary to meet the requirements of the Internal Revenue Service or any other governmental authority, to adversely affect the pensions under the Plan of Members already retired, or the Fund securing such pensions.  No amendment shall have the effect of reducing the nonforfeitable percentage (determined as of the later of the date the amendment is adopted or effective) of the right of a Member to his Accrued Retirement Benefit.

**9.2.** **Termination of the Plan**

If the Plan is terminated in accordance with Section 9.1., the assets of the Fund shall be allocated, subject to provisions for expense of administration of liquidation, for the following pension purposes and in the following manner and order, to the extent of the sufficiency of such assets:

    9.2.1.   <u>First</u>:  equally among benefits of individuals in the following two (2) subcategories:

        9.2.1.1.   In the case of benefits in pay status three (3) years prior to termination, at the lowest pay level in that period and at the lowest benefit level under the Plan during the five (5) years prior to termination, and

        9.2.1.2.   In the case of benefits which would have been in pay status three (3) years prior to termination had the Member been retired and his benefits commenced then, at the lowest benefit level under the Plan during the five (5) year period prior to termination.

    9.2.2.   <u>Second</u>:  among all other benefits (if any) of individuals under the Plan guaranteed under the termination insurance provisions of ERISA, determined without regard to Sections 4022(b)(5) and 4022(6) (relating to benefits of owner-employees),

    9.2.3.   <u>Third</u>:  among all other non-forfeitable (i.e., uninsured, vested) benefits under the Plan, and

    9.2.4.   <u>Fourth:</u>  among all other benefits under the Plan.

If the assets of the Fund available for allocation under any priority category described above are insufficient to satisfy, in full, the benefits of all individuals in that priority category, the assets shall be allocated pro rata among such individuals on the basis of the present value of their respective benefits as of the date of the Plan's termination. To the extent funded, the rights of all Members to benefits accrued as of the date of the Plan's termination or partial termination are non-forfeitable.  Any residual assets of the Plan remaining after the above allocation shall be distributed to the Employer provided all liabilities of the Plan to Members and their Beneficiaries have been satisfied.

Effective for Plan Years beginning after December 31, 1996, upon termination of the Plan and notwithstanding any other provisions of the Plan, the Plan termination benefit of any "highly compensated employee" shall be limited to a benefit that is nondiscriminatory under Code Section 401(a)(4) and Treasury Regulations promulgated thereunder. For purposes hereof, a "highly compensated employee" with respect to a Plan Year means any Employee who: (a) was at any time during the Plan Year or the immediately preceding Plan Year  a "5-percent owner;" or (b) received

during the immediately preceding Plan Year Compensation (as defined in Section 12.1.3) exceeding (1) $80,000 (as adjusted pursuant to Code Section 414(q)(1)); and (2) was in the top paid group of executives for such preceding year.  A former Employee shall be treated as a Highly Compensated Employee if he was a Highly Compensated Employee either (a) for the last Plan Year during which he performed services for an Affiliated Company (b) for any Plan Year ended after he attained age 55; or (c) for any Plan Year ending before he attained age 55 in which his Compensation was less than 50% of his average annual Compensation for any one period (but not necessarily all periods) of three consecutive calendar years (or, if less, his total period of employment as an Employee) preceding such Plan Year.

Effective for any termination of the Plan which occurs after 2007, (i) any variable interest credit rate used to determine Accrued Benefits for Cash Balance Plan Member benefits upon termination of the Plan shall be equal to the average of the rates of interest used under the Plan for the 5-year period ending on the termination date, and the interest rate and the mortality table used to determine any benefit payable in the form of an annuity for Cash Balance Plan Member benefits shall be the rate specified in the Plan for that purpose as of the termination date unless the interest rate is then a variable rate, in which case the interest rate for such purpose shall be the rate determined under (i) above.

## 9.3.    <u>Merger of the Plan</u>

The Company (subject to the recommendations and approvals of the entities to whom Plan amendment review responsibilities have been delegated under Section 8.1. hereof ) shall have the authority to authorize the Plan to be merged into, or consolidated with any other plan, or  to authorize the Plan's assets or liabilities to be transferred to any other plan.  If the Plan is merged into, or consolidated with, any other plan, or if the Plan's assets or liabilities are transferred to any other plan, each Member shall be entitled to receive a benefit immediately after the merger, consolidation, or transfer (if the Plan was then terminated) which shall be equal to, or greater than, the benefit he would have received had the Plan been terminated immediately before the merger, consolidation or transfer.

M PRO 1041660 v4
2789126-000004 10/04/2007

**ARTICLE X**

**LIMITATIONS ON BENEFITS AND CONTRIBUTIONS**

**10.1.    General Limitations**

Contrary Plan provisions notwithstanding, the benefit of a Member under the Plan shall not exceed the maximum benefit permitted pursuant to Code Section 415(b) (as adjusted in accordance with the provisions of Code Section 415(d)).  In the case of a Member who also participated in a defined contribution plan of the Employer, the benefit of such Member under this Plan shall be reduced to the extent necessary to prevent the limitation set forth in Code Section 415(e) from being exceeded for the Plan Years ending prior to January 1, 2000.  For determinations made as of any date within 2004 or 2005, the provisions of the Pension Funding Equity Act shall apply and the interest rate for Section 415 purposes be not less than the greater of: (1) 5.5%, or (2) the interest rate specified in the Plan.  For determinations made after 2005, the Pension Protection Act shall apply to regulate interst rates used for Section 415 purposes, and the interest rate shall be not less than the greatest of (1) 5.5%, (2) the interest rate specified in the Plan, and (3) the rate that provides a benefit of not more than 105% of the benefit that would be provided if the interest rate applicable in determining minimum lump sums under Code Section 417(e)(3) were used.  For purposes of determining whether the Plan benefit of a Member exceeds the limitations provided in Section 10.1., all defined benefit plans of the Employer are to be treated as one defined benefit plan and all defined contribution plans of the Employer are to be treated as one defined contribution plan.  In addition, all defined benefit plans and defined contribution plans of Controlled Entities shall be aggregated for this purpose.  For purposes of this Section only, a "Controlled Entity" (other than an affiliated service group member within the meaning of Code Section 414(m)) shall be determined by application of a more than fifty percent (50%) control standard in lieu of an eighty percent (80%) control standard.  For purposes of this Section, the "limitation year" (as that term is defined in Treasury Regulation Section 1.415-2(b)) shall be the Plan Year.

**10.2.    Special Distribution Limitations**

> 10.2.1.    <u>Definitions</u>:  For purposes of this Section, the following terms shall have the following meanings:
>
> > 10.2.1.1.    "Benefit" of a Member includes (i) loans from the Plan in excess of the amounts set forth in Code Section 72(p)(2)(A), (ii) any periodic income from the Plan, (iii) any Plan withdrawal values payable to a living Member, and (iv) any death benefits from the Plan not provided for by insurance on the Member's life.
>
> > 10.2.1.2.    "Current Plan Liabilities" means with respect to a Plan Year the amount described in Code Section 412(1)(7) for such Plan Year.
>
> > 10.2.1.3.    "Restricted Member" includes with respect to a Plan Year any Member who during such Plan Year is (i) either a "highly compensated employee," as such term is defined in Code Section 414(q), and (ii) is one of the twenty five (25) most highly compensated non-excludable employees and former employees, as defined in Treasury Regulation Section 1.401(a)(14)-12, based on compensation, within the meaning of Code Section 414(s) received from the Employer in the current or any other Plan Year.  For purposes of determining "highly compensated employees and former employees", the Plan Administrator  elects to consider only employees who are included in the top twenty percent (20%) of the workforce (when employees are ranked on the basis of compensation) as "highly compensated" under the provisions of Code section 414(q)(1)(B).
>
> 10.2.2.    <u>Restricted Member Limitations</u>:  Subject to the provisions of Section 10.2.3., the annual payments from the Plan to a Restricted Member for a Plan Year may not exceed an amount equal to the annual payments that would be made on behalf of such Restricted Member under:

48

10.2.2.1.    a single life annuity that is the Actuarial Equivalent of the sum of (i) the Restricted Member's accrued benefit and (ii) the Restricted Member's Benefit under the Plan other than his accrued benefit, and

10.2.2.2.    any Social Security supplement provided by the Plan.

10.2.3.    <u>Exceptions to Restricted Member Limitations</u>:  The provisions of Paragraph 10.2.2. shall not apply if:  (i) after payment to a Restricted Member of his Benefit, the value of the assets of the Trust equals or exceeds 110% of the value of Current Plan Liabilities, (ii) the value of the Restricted Member's Benefit is less than one percent (1%) of the value of Current Plan Liabilities before payment of the Restricted Member's Benefit, or (iii) the present value of the Restricted Member's Benefit does not exceed Five Thousand Dollars ($5,000.00).

**10.3.    <u>Additional Limitation on Benefits</u>**

In addition to other limitations set forth in the Plan and notwithstanding any other provisions of the Plan, the accrued benefit, including the right to any optional benefit provided in the Plan (and all other defined benefit plans required to be aggregated with this Plan under the provisions of Code Section 415), shall not increase to an amount in excess of the amount permitted under Code Section 415.

M PRO 1041660 v4
2789126-000004 10/04/2007

# ARTICLE XI

## MISCELLANEOUS

**11.1.**     **Inalienability of Benefits**

No right or claim to benefit payments from the Fund or assets of the Fund shall be assignable or alienable, nor may such rights or claims be taken by attachment, execution, levy or other legal or equitable proceedings, except, that federal income tax levies pursuant to the Code will be effectuated as required by law and rights or claims of a Member may be transferred to an Alternate Payee by a Qualified Domestic Relations Order.  The Trustee shall make benefit payments only to Members and Beneficiaries entitled to benefits under the Plan, persons designated under Section 5.7. or 6.3. and Alternate Payees designated by Qualified Domestic Relations Orders.

**11.2.**     **Rights of Members**

Nothing herein contained shall be deemed to give any Employee the right to be retained in the employ of the Employer or to interfere with the right of the Employer to discharge such Employee at any time, nor shall it be deemed to give the Employer the right to require the Employee to remain in its employ, nor shall it interfere with the Employee's right to terminate his employment at any time.

**11.3.**     **Applicable Law**

The provisions of this Plan shall be construed according to the laws of the State of Tennessee (without regard to its provisions with respect to conflict of laws) to the extent that federal law does not govern in the interpretation of the Plan or other matters.

**11.4.**     **Pronouns; Use of Numbers**

The masculine pronoun whenever used in the plan shall include the feminine gender, and the singular pronoun whenever used herein shall include the plural, and the plural shall include the singular unless the context clearly indicates a different meaning.

**11.5.**     **USERRA**

Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code Section 414(u) effective as of December 12, 1994.

M PRO 1041660 v4
2789126-000004 10/04/2007

# ARTICLE XII

## TOP-HEAVY RESTRICTIONS

**12.1**     **Terms and Definitions**

For purposes of this Article XII, the following terms shall have the following meanings unless the context indicates otherwise:

12.1.1.     Aggregation Group of Plans:  For any calendar year, each plan of the Company or an Affiliated Company qualified under Code Section 401(a) if, on the Determination Date for such plan which occurs in the preceding calendar year (or, in the case of a plan whose first plan year ends in such calendar year, on the Determination Date which occurs in such calendar year),

12.1.1.1.     one or more Key Employees is a participant in such plan year in which such Determination Date occurs or was a participant in such plan at any time during the four (4) plan years preceding such plan year,

12.1.1.2.     such plan enables any plan described in Section 12.1.1. to meet the requirements of Code Section 401(a)(4) or 410, or

12.1.1.3.     the Company elects to include such plan in the Aggregation Group of Plans (but only if the Aggregation Group of Plans including such plan, treated as a single plan, would meet the requirements of Code Sections 401(a)(4) and 410).  For purposes of this definition, any simplified employee pension (as defined by Code Section 408(k)) of the Company or an Affiliated Company shall be treated as a plan of the Company or an Affiliated Company qualified under Code Section 401(a).

12.1.2.     Annual Adjustment Factor:  A factor reflecting changes in the Consumer Price Index, as determined from time to time by the Secretary of the Treasury pursuant to Code Section 415(d).

12.1.3.     Average High Compensation:  A Member's average annual Compensation during the consecutive years of Vesting Service (not exceeding five (5) years) ending in a Top Heavy Plan Year or in any prior year for which years his aggregate Compensation was the greatest. "Compensation" for this purpose shall mean compensation as defined in Treasury Reg. 1.415-2(d), as modified by the provisions of Treasury Reg. 1.416-1.  On and after January 1, 1998, for purposes hereof, "Compensation" means a Member's compensation, within the meaning of Treas. Reg. § 1.415-2(d)(1) and (2), for a Plan Year, Limitation Year or other period, as applicable, from the Affiliated Companies, including, to the extent includible in gross income, the Member's wages, salary, and other amounts (including fringe benefits, reimbursements, expense allowances, vacation pay, and long-term disability benefits) received or made available or, for Plan Years, Limitation Years or other periods, as applicable, accrued for personal services actually rendered, earned income from sources outside the United States whether or not excluded from taxable gross income, non-deductible moving expenses paid on behalf of or reimbursed to the Member, non-qualified stock options taxable in the year granted, and amounts previously not included which are earned but not paid in such period because of the timing of pay periods and pay days but are paid during the first few weeks following the end of such period, but excluding deferred compensation, stock options and other distributions that receive special tax benefits. Effective for Limitation Years beginning after December 31, 1997, Compensation also includes any amounts deferred pursuant to Code Section 402(g)(3), excludable from the gross income of the Employee pursuant to Code Section 125 or 457 and, effective for Limitation Years beginning

51

after December 31, 2000, Compensation also includes qualified transportation fringe benefits described in Code Section 132(f)(4).

12.1.4.    <u>Determination Date</u>:  The last day of any Plan Year.

12.1.5.    <u>Key Employee</u>:  For any Plan Year, a person who is a "key employee" of the company or an Affiliated Company within the meaning of Code Section 416(i)(1).

12.1.6.    <u>Non-Key Employee</u>:  For any Plan Year, an Employee who is not a Key Employee.

12.1.7.    <u>Top Heavy Plan Year</u>:  A Plan Year beginning after December 31, 1983 and ending in a calendar year for which the Plan is included in the Aggregation Group of Plans and with respect to which the Aggregation Group of Plans is a "top heavy group" within the meaning of Code Section 416(g)(2)(B).  This Plan shall be a Top Heavy Plan for any Plan Year in which, as of the Determination Date, (1) the Present Value of Accrued Benefits of Key Employees and (2) the sum of the Aggregate Accounts of Key Employees under this Plan and all plans of an Aggregation Group, exceeds sixty percent (60%) of the present value of Accrued Benefits and the Aggregate Accounts of all Key and Non-Key Employees under this Plan and all plans of an Aggregation Group.  If any Member is a Non-Key Employee for any Plan Year, but such Member was a Key Employee for any prior Plan Year, such Member's present value of Accrued Benefit and/or Aggregate Account balance shall not be taken into account for purposes of determining whether this Plan is a Top Heavy Plan (or whether any Aggregation Group which includes this Plan is a Top Heavy Group). In addition, if a Member or former member has not performed any services for any Employer maintaining the Plan at any time during the one year period ending on the Determination Date, any accrued benefit for such Member or Former Member shall not be taken into account for the purposes of determining whether this Plan is a Top Heavy Plan.

The calculation of a Member's present value of Accrued Benefit as of a Determination Date shall be the sum of: (1)the present value of Accrued Benefit using the actuarial assumptions of the Plan, which assumptions shall be identical for all defined benefit plans being tested for Top Heavy Plan status; (2)any Plan distributions made within the Plan Year that includes the Determination Date or within the prior Plan Year. However, in the case of distributions made after the valuation date and prior to the Determination Date, such distributions are not included as distributions for top heavy purposes to the extent that such distributions are already included in the Member's present value of Accrued Benefit as of the valuation date. Notwithstanding anything herein to the contrary, all distributions within the prior year, including distributions under a terminated plan which if it had not been terminated would have been required to be included in an Aggregation Group, will be counted. Further, benefits paid on account of death, to the extent such benefits do not exceed the Present Value of Accrued Benefits existing immediately prior to death, shall be treated as distributions for the purposes of this paragraph.  In the case of a distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting  a 5-year period for a 1-year period.  The accrued benefits and accounts of any individual who has not performed services for the Employer during the 1-year period ending on the determination date shall not be taken into account;  (3)any Employee contributions, whether voluntary or mandatory. However, amounts attributable to tax deductible qualified voluntary employee contributions shall not be considered to be a part of the Member's Present Value of Accrued Benefit;  (4)with respect to unrelated rollovers and plan-to-plan transfers (ones which are both initiated by the Employee and made from a plan maintained by one employer to a plan maintained by another employer), if this Plan provides the rollovers or plan-to-plan transfers, it shall always consider such rollovers or plan-to-plan transfers as a distribution for the purposes of this Section. If this Plan is the plan accepting such rollovers or plan-to-plan transfers, it shall not consider such rollovers or plan-to-plan transfers accepted after December 31, 1983, as part of the Member's Present Value of Accrued Benefit;  (5)with respect to related rollovers and plan-to-plan transfers (ones either not initiated by the Employee or made to a plan maintained by the same employer), if this Plan provides the rollovers or plan-to-plan transfers, it shall not be counted as a

52

distribution for purposes of this Section. If this Plan is the plan accepting such rollovers or plan-to-plan transfers, it shall consider such rollovers or plan-to-plan transfers as part of the Member's Present Value of Accrued Benefit, irrespective of the date on which such rollovers or plan-to-plan transfers are accepted; (6)for the purposes of determining whether two employers are to be treated as the same employer in (4) and (5) above, all employers aggregated under Code Section 414(b), (c), (m) or (o) are treated as the same employer;

12.1.8.   <u>Top Heavy Service</u>:  Benefit Service performed by a Non-Key Employee during a Top Heavy Plan Year.

12.1.9.   <u>Top Heavy Vesting Percentage</u>:  The percentage determined under Section 12.2. of this Article.

## 12.2.   <u>Vesting</u>

Notwithstanding Section 4.54., a Member's Top Heavy Vesting Percentage shall be the greater of

12.2.1.   his vesting percentage determined under Section 4.5., and

12.2.2.   his vesting percentage determined under the following table (but disregarding any years of Vesting Service completed by such Member after the end of the last Top Heavy Plan Year in which he completed an Hour of Service):

| Years of<br>Vesting Service | Vesting Percentage |
|---|---|
| Less than 3 | 0 |
| 3 or more | 100 |

## 12.3.   <u>Minimum Benefits</u>

12.3.1.   <u>Normal Retirement Benefits</u>.  Notwithstanding Article V, a Member's benefits (in the form determined pursuant to Article VI) upon Normal Retirement shall not be less than the Actuarial Equivalent of a single life annuity commencing on his Normal Retirement Date in an annual amount equal to two percent (2%) of his Average High Compensation multiplied by the number (not exceeding ten (10)) of his years of Top Heavy Service.

12.3.2.   <u>Early Retirement Benefits</u>.  Notwithstanding Article V, a Member's benefits (in the form determined pursuant to Article VI) upon Early Retirement shall not be less than the Actuarial Equivalent of a single life annuity commencing on his Normal Retirement Date in an annual amount equal to two percent (2%) of his Average High Compensation multiplied by the number (not exceeding ten (10)) of his years of Top Heavy Service.

12.3.3.   <u>Disability Retirement Benefits</u>.  Notwithstanding Article V, a Member's benefits (in the form determined pursuant to Article VI) upon Disability Retirement shall not be less than the Actuarial Equivalent of a single life annuity commencing on his Normal Retirement Date in an annual amount equal to two percent (2%) of his Average High Compensation multiplied by the number (not exceeding ten (10)) of his years of Top Heavy Service.

12.3.4.   <u>Fully Vested Termination Benefits</u>.  Notwithstanding Article V, a Member's benefits (in the form determined pursuant to Article VI) upon Fully Vested Termination shall not be less than the Actuarial Equivalent of a single life annuity commencing on his Normal Retirement Date in an annual amount equal to two percent (2%) of his Average High Compensation multiplied by the number (not exceeding ten (10)) of his years of Top Heavy Service.

12.3.5.   <u>Alternative Benefits</u>.  In lieu of the above, if a Member participates in this Plan and a defined contribution plan included in a Required Aggregation Group which is top heavy, a minimum

53

allocation of five percent (5%) of "415 compensation" shall be provided under the defined contribution plan. If the defined contribution plan is amended or provides that the minimum benefits are not provided under the defined contribution plan, the minimum benefits shall be provided under this Plan.

**12.4.** <u>**Actuarial Assumptions**</u>

Except as otherwise specifically provided, Actuarial Equivalence shall be determined by using the actuarial assumptions described in 1.3. hereof for the determination of lump sum distributions.

54

# ARTICLE XIII

## SPECIAL PROVISIONS

To the extent that provisions of Article XIII vary from the other provisions of the Plan, the Article XIII provisions shall govern with respect to the members described therein.

### 13.1.    Former Bargaining Unit Employees

13.1.1.    <u>Definition</u>:  Former Bargaining Unit Employee shall mean a Member who has vesting and benefit service which was recognized under the Pension Plan for Bargaining Unit Employees of Northern Telecom Inc. or the Cook Electric Company Hourly Employees Pension Plan (each, a "Bargaining Unit Plan").

13.1.2.    <u>Benefit and Vesting Service</u>:  A Former Bargaining Unit Employee shall be credited with Benefit Service and Vesting Service under the Plan for the period of employment for which such Member received vesting and benefit service credit under the Bargaining Unit Plan prior to becoming a Member.

13.1.3.    <u>Computation of Benefits</u>:  In no event shall the Accrued Benefit of a Former Bargaining Unit Employee under the Plan be less than such Member's "accrued benefit" under the applicable Bargaining Unit Plan based on the provisions of such plan in effect on the date the Member ceased to be a Member therein.

### 13.2.    NYNEX Meridian Systems.{tc "13.4      NYNEX Meridian Systems" \f 67 \l 02}

Each NYNEX Transferred Management Employee, Schedule C Employee, and Schedule D Employee shall be entitled to a benefit that is not less than the benefit determined for such individual under the provisions of Section 14.6. of the Prior Plan as of December 31, 1998.

"NYNEX Transferred Management Employee" shall mean a person whose name appeared on Schedule A to the Joint Venture Agreement.

"Schedule C Employee" shall mean a person whose name appeared on Schedule C to the Joint Venture Agreement.

"Schedule D Employee" shall mean a person whose name appeared on Schedule D to the Joint Venture Agreement.

"NYNEX Meridian Systems Joint Venture Agreement" shall mean that certain Joint Venture Investment Agreement entered into as of May 31, 1990 by and between NYNEX Business Information Systems Company and the Company.

### 13.3.    Bell Atlantic Meridian Systems.{tc "13.5   Bell Atlantic Meridian Systems" \f 67 \l 02}

Each BAMS Transferred Non-Represented Employee shall be entitled to a benefit that is not less than the benefit determined for such individual under the provisions of Section 14.7. of the Prior Plan as of December 31, 1998.

"BAMS Transferred Non-Represented Employees" shall mean the Transferred Non-Represented BASI Employees and the Transferred Sales Employees as defined in the BAMS Joint Venture Agreement. "BAMS Joint Venture Agreement" shall mean that certain Assets Contribution Agreement entered into as of December 31, 1992 by and between Bell Atlanticom Systems, Inc., Bell Atlantic Network Services, Inc., Bell Atlantic Meridian Systems and Company.

M PRO 1041660 v4
2789126-000004 10/04/2007

**13.4.**    **Transaction Employees**

Each Employee who becomes employed by an Employer pursuant to a transaction between the Employer and the Employee's former employer including, but not limited to, the Employer's purchase of all or part of such employer, the dissolution of such employer in which the Employer had an ownership interest, or the Employer's performance of services for such employer, shall have service with such former employer counted towards eligibility for membership and Vesting Service in the Plan, but only to the extent provided in the agreement between the Employer and such former employer or, absent agreement regarding such service, as determined solely by the Plan Administrator.  The transactions to which this Section 13.4. pertain and the service to be recognized thereunder are set forth on Appendix F.

**13.5.**    **Related Companies**

13.5.1.    Definitions:

13.5.1.1.    Reciprocal Agreement shall mean the agreement, as amended and renewed from time to time, between Company and other subsidiaries of Nortel Networks Limited ("NNL"), the parent of Company, to recognize service rendered by and compensation paid to an employee for covered employment with a party bound by such agreement for purposes of Plan eligibility, Vesting Service and Earnings.

13.5.1.2.    Related Company shall mean a company, including, but not limited to, an Affiliated Company, which is a party to or is bound by the Reciprocal Agreement.

13.5.1.3.    Transferred Member shall mean a Member that has been transferred to an Employer by a Related Company or by an Employer to a Related Company.

13.5.2.    Recognition of Service:

Each Transferred Member shall have the employment commencement date, hours of service and earnings credited to him by a Related Company under its defined benefit plan count toward his eligibility for membership, Vesting Service, Earnings and Final Average Earnings under the Plan as provided in the Reciprocal Agreement to the extent such Reciprocal Agreement does not contradict the terms of the Plan or applicable law; provided, however, that such employment commencement date, Hours of Service, Earnings and Final Average Earnings shall be calculated in a manner which is equivalent to such calculations pursuant to this Plan including, but not limited to, valuing such Earnings in U.S. currency.  No Benefit Service or Points Service shall accrue to a Transferred Member while he is employed by a Related Company except as otherwise provided in Section 13.5.3. below or in Article III.  No service after 2007 shall be recognized for eligibility or benefit accrual purposes.

13.5.3.    Computation of Benefits:

If a Transferred Member who has at least seven (7) years of Vesting Service under the Plan retires, dies or terminates his employment while employed by a Related Company and such Transferred Member is not eligible to receive a retirement, death or termination benefit under the pension plan or plans (other than a defined contribution plan) in which he has participated (if any) since he became employed by such Related Company, then the period of time before 2008 (excluding any service which would not have been considered Benefit Service if rendered to an Employer) that he was employed by such Related Company and which was considered as Vesting Service pursuant to Section 13.5.2. shall also be considered as Benefit Service for purposes of the Plan.

M PRO 1041660 v4
2789126-000004 10/04/2007

13.5.4.    Plan Offset:

Any portion of a pension benefit payable to a Transferred Member pursuant to any pension plan or former pension plan of any Related Company for a period of employment with respect to which that Transferred Member received Benefit Service pursuant to this Plan shall be deducted from any Plan benefit for which the Transferred Member is eligible.

**13.6.    Non-Covered Employment of Former Members**

If a Member is transferred to a classification of employment with the Employer which is not covered by the Plan, the provisions set forth in Section 13.5.4., with respect to a Transferred Member, shall similarly apply to such Member's non-covered employment by an Employer.

**13.7.    Single Plan**

For purposes of the Code and ERISA, the Plan as adopted by the Company and all other entities which have Employees covered by it shall constitute a single plan rather than a separate plan of each adopting entity.  All assets in the Trust Fund shall be available to pay benefits to all Members and their beneficiaries.

**13.8.    Non-Discrimination Requirement**

Provisions of this Article XIII to the contrary notwithstanding, in no event shall any pre-Plan participation service, imputed service or prior employer compensation be credited pursuant to this Article XIII to the extent that crediting same would cause the Plan to violate the nondiscrimination requirements under Code Section 401(a)(4) and Treasury Regulations promulgated thereunder.

**13.9.    Early Retirement Option**

13.9.1.    A Member whose Termination Date with the Employer occurs in calendar year 1999 or 2000 is eligible for a Plan benefit as set forth in 13.9.2. if:

13.9.1.1.    Such Member's employment is terminated:

13.9.1.1.1.    by the Employer due to organizational restructuring (not including corporate transactions such as mergers, divestitures, or sales or purchases of corporate assets) as determined in the sole discretion of the Plan Administrator; or

13.9.1.1.2.    voluntarily by the Employee pursuant to the Plan Administrator's determination, made in its sole discretion, to offer Plan benefits, as set forth in Section 13.9.2., to the group to which such Member belongs pursuant to organizational restructuring of such group in whole or in part (not including corporate transactions such as mergers, divestitures, or sales or purchases of corporate assets);

13.9.1.2.    Such Member is at least fifty (50) years of age on December 31, 1998;

13.9.1.3.    Such Member has at least five (5) years of Vesting Service or has reached his Normal Retirement Date on December 31, 1998; and

13.9.1.4.    Such Member is notified of his termination (in the case of an involuntary termination by the Employer) or makes an election to receive the treatment provided for in Section 13.9.2 (in the case of a voluntary termination by the Employee), on or

57

after September 1, 1998 (July 1, 1998 with regard to Enterprise Network (California) employees) and on or before December 31, 1998.

13.9.2.    The Plan benefit of an Active Member who satisfies the requirements set forth in Section 13.11.1. shall commence on the first day of the calendar month coincident with or following the termination of such Active Member's Severance and shall be calculated in accordance with Sections 5.2. or 5.4., whichever is applicable, except that such Active Member shall receive, in addition to the Normal or Early Retirement Benefit for which he is eligible, the following:

13.9.2.1.    With respect to an Active Member whose Retirement Date pursuant to Section 13.11.2. occurs before he attains age fifty-five *(55),* such Active Member shall nevertheless be eligible for an Early Retirement Benefit calculated as set forth in Section 5.4. except that for this purpose Section 5.4. shall contain a subsection 5.4.4. as follows:  the Member's Early Retirement Benefit (calculated pursuant to Section 5.4. for the period of early commencement of the benefit between age 65 and age 55) which has been reduced in accordance with Section 5.4.1., 5.4.2., or 5.4.3.shall be further reduced by five-twelfths of one percent (5/12th of 1.0%) for each complete calendar month by which the Member commences to receive Plan Benefits prior to the attainment of age fifty-five (55).  Such benefit shall begin the first day of the calendar month coincident with or immediately following the cessation of his Severance; and

13.9.2.2.    With respect to an Active Member described in this Section 13.9.2., who elects to commence retirement benefits immediately following the termination of such Member's Severance, a temporary monthly supplement commencing on his Retirement Date and calculated and terminating as set forth below:

13.9.2.2.1.    With respect to an Active Member whose Retirement Date occurs before such Active Member attains the age of fifty-five (55), such monthly supplement amount shall equal the product of Forty-Five Dollars ($45.00) times such Active Member's years of Benefit Service, and such supplement shall terminate on the date prior to the first day of the calendar month coincident with or immediately following such Member's attainment of age sixty-two (62);

13.9.2.2.2.    With respect to an Active Member whose Retirement Date occurs on or after such Active Member attains the age of fifty-five (55), but has not attained age sixty-five (65), such monthly supplement amount shall equal the product of Sixty Dollars ($60.00) times such Active Member's years of Benefit Service, and such supplement shall terminate on the date preceding the first day of the calendar month coincident with or immediately following the Member's attainment of (i) age sixty-two (62) or (ii) age sixty-five (65), if such Member's Retirement Date is on or after his attainment of age sixty-two (62); <u>provided however</u> that a minimum of forty-eight (48) monthly supplement payments shall be made to such Member, except that such minimum number shall be reduced to the extent necessary to prevent payment of a monthly supplement for a period beginning on or after the Member's Normal Retirement Date.

13.9.2.3.    Notwithstanding any provision in this Section 13.9.2.2. to the contrary, the additional temporary monthly supplement described therein shall not:

13.9.2.3.1.    continue after the Member's date of death; or

13.9.2.3.2.    be subject to Section 6.3; or

58

13.9.2.3.3.      be based on Benefit Service exceeding thirty (30) years.

13.9.2.4. The Plan Administrator may, in its sole discretion, decide not to make the benefit described in this Section 13.9. available to Highly Compensated Employees if it determines that such availability will result in the Plan's disqualification.

**13.10.**    <u>**Organizational Restructuring**</u>

A Member who is not otherwise entitled to a Vested Retirement Benefit under Section 4.5.1. and whose employment is terminated by the Employer on or after November 1, 2000, but prior to April 1, 2001, due to organizational restructuring (not including corporate transactions such as mergers, divestitures, or sales of corporate assets or outsourcings) as determined in the sole discretion of the Plan Administrator, shall be entitled to a Vested Retirement Benefit as provided in Section 5.6.

M PRO 1041660 v4
2789126-000004 10/04/2007

## ARTICLE XIV

### EFFECT OF January 1, 2007 RESTATEMENT

Contrary Plan provisions notwithstanding, in no event shall any Member's Accrued Benefit under the Plan as restated be less than such Member's Accrued Benefit determined on the date immediately prior to the effective date of this January 1, 2007 restatement based upon the terms of the  Plan on such date and such Member's Final Average Earnings and Benefit Service under the  Plan as of such date.  Except as otherwise provided in the Plan, all benefit payments being made under the terms of the  Plan as in effect prior to January 1, 2007 shall continue to be made in the same amount and manner and shall not be affected by the terms of this restated Plan.  Except as otherwise provided in the Plan, the terms of this restated Plan shall not affect the Accrued Benefit or Vesting Service of Members who are not credited with an Hour of Service on or after the Effective Date of the Plan restatement.

M PRO 1041660 v4
2789126-000004 10/04/2007

**APPENDIX A**

**ACTUARIALLY EQUIVALENT FACTORS**

I.      Joint and Survivor Option

| Percentage of Reduced Benefit to be Continued to Beneficiary | Factor to Determine Benefit Payable to Member under Joint and Survivor Option (a) |
|---|---|
| 100% | 83.00% plus (minus) .75% for each year that beneficiary is older (younger) than the Member. |
| 75% | 86.00% plus (minus) .50% for each year that beneficiary is older (younger) than the Member. |
| 50% | 90.00% plus (minus) .50% for each year that beneficiary is older (younger) than the Member. |

(a)      Factor cannot exceed 100.00%.

II.      Life with 10 Year Period Certain Option

Factor to Determine Benefit Payable to Member

92.00% plus .50% for each year prior to age 65 (limited to 10 years) or minus 1.00% for each year after age 65.

III.      Social Security Leveling Option

| Member's Age at Retirement | Social Security Leveling Benefit Factor |
|---|---|
| 55 | .4985 |
| 56 | .5475 |
| 57 | .6024 |
| 58 | .6640 |
| 59 | .7332 |
| 60 | .8114 |
| 61 | .8997 |
| 62 | 0 |

The factors listed in this Appendix A III will be used in determining the amount of a benefit payable under the Social Security Leveling Option except that the factors described in the second paragraph of Section 1.3.2.. hereof for the determination of a lump sum benefit will be used if the use of such factors produces a greater benefit.

IV.      Other Forms of Payment

Conversion factors for other forms of payment shall be computed on an actuarially equivalent basis using the 1984 Unisex Pension Mortality Table without age setback and an interest rate of 7.25%.

61

APPENDIX B

**SERVICE CREDITING RELATED TO ADDITION OF PARTICIPATING COMPANIES**
**(Members Not Included in the Hourly Group)**

| | Date of Transaction Recognizing Prior Service | 2Benefit Service Effective Date | 2VestingService EffectiveDate | 2Points Service Effective Date |
|---|---|---|---|---|
| Northeast Electronics Corp. | 05/01/74 | 01/01/74 | DOH | DOH |
| Telecommunications System of America, Inc. | 01/01/77 | 01/01/74 | DOH | DOH |
| 1Cook Electric Company | 01/01/79 | DOH | DOH | DOH |
| Sycor, Inc. | 01/01/79 | 01/01/79 | DOH | DOH |
| 3Northern Telecom Systems Corporation | 01/01/80 | 07/01/79 | DOH | DOH |
| Spectron Corporation | 01/01/79 | 01/01/79 | DOH | DOH |
| BNR, Inc. | | | | |
| Independent Telephone Corporation | 06/01/79 | 06/01/79 | DOH | DOH |
| Telephonics Corporation | 10/01/79 | 05/01/79 | DOH | DOH |
| Danray, Inc. | 01/05/78 | 01/01/78 | DOH | DOH |
| Northern Telecom Finance Corporation | 09/01/79 | 09/01/79 | DOH | DOH |
| Northern Telecom (CALA) Corporation | 05/01/79 | 05/01/74 | DOH | DOH |
| 1Cook Electric International, Inc. | 01/01/79 | DOH | DOH | DOH |
| Northern Telecom Electronics, Inc. | 08/01/79 | 08/01/79 | DOH | DOH |
| BCI Incorporated ("BCII") | 10/17/79 | 10/17/79 | DOH | DOH |
| Northern Telecom Communications Service Corporation | 05/01/83 | 05/01/83 | DOH | DOH |
| National Telecom, Inc. | 01/01/84 | 01/01/85 | DOH | DOH |
| Illinois National Telecom, Inc. | 01/01/84 | 01/01/84 | DOH | DOH |
| National Telecom North, Inc. | 01/01/84 | 01/01/84 | DOH | DOH |
| Systel Corporation | 01/01/84 | 01/01/84 | DOH | DOH |

62

| | Date of Transaction Recognizing Prior Service | 2Benefit Service Effective Date | 2VestingService EffectiveDate | 2Points Service Effective Date |
|---|---|---|---|---|
| iNet Corporation | 01/01/87 | 01/01/87 | DOH | DOH |
| 4PacTel Meridian Systems Inc. | 01/01/89 | 01/01/89 | 5DOH | DOH |
| 4Northern Telecom Meridian Systems Inc. | 01/01/89 | 01/01/89 | 5DOH | DOH |
| Mortgage Banking Service Corporation | 11/22/89 | 11/22/89 | DOH | DOH |
| NYNEX Meridian Systems | 06/01/90 | (6) | DOH | (6) |
| Computer Consoles, Inc. | 07/01/92 | 07/01/92 | DOH | DOH |
| Bell Atlantic Meridian Systems | 12/31/92 | (7) | DOH | (7) |
| NORTEL Federal Systems Inc. | 04/09/92 | 04/09/92 | DOH | DOH |
| Northern Telecom International Inc. | 04/01/90 | 04/01/90 | DOH | DOH |
| Northern Telecom (Puerto Rico) Inc. | 12/04/90 | 12/04/90 | DOH | DOH |
| MICOM Communications Corp. | 07/01/97 | 07/01/97 | DOH | DOH |
| BNI | 03/30/98 | 03/30/98 | DOH | DOH |
| Aiwa | 08/01/00 | N/A | DOH | N/A |
| Aptis | 05/01/00 | N/A | DOH | N/A |
| Architel Systems Corp. | 07/17/00 | N/A | DOH | N/A |
| Arris | 05/01/00 | N/A | DOH | N/A |
| Bay Networks | 05/01/00 | N/A | DOH | N/A |
| Cambrian | 12/16/98 | 12/16/98 | DOH | DOH |
| Clarify | 05/08/00 | N/A | DOH | N/A |
| CoreTek | 07/03/00 | N/A | DOH | N/A |
| Epicon | 09/25/00 | N/A | DOH | N/A |
| Introspect | 09/11/00 | N/A | DOH | N/A |
| Periphonics | 05/01/00 | N/A | DOH | N/A |
| Promatory | 05/01/00 | N/A | DOH | N/A |

M PRO 1041660 v4
2789126-000004 10/04/2007

|  | Date of Transaction Recognizing Prior Service | 2Benefit Service Effective Date | 2VestingService EffectiveDate | 2Points Service Effective Date |
|---|---|---|---|---|
| Qtera | 06/05/00 | N/A | DOH | N/A |
| Sargon | 09/15/00 | N/A | DOH | N/A |
| Shasta | 05/01/00 | N/A | DOH | N/A |
| Sonoma Systems | 11/06/00 | N/A | DOH | N/A |
| X-CEL Communications Inc. | 09/27/99 | 09/27/99 | DOH | DOH |
| XROS | 07/03/00 | N/A | DOH | N/A |
| Dimension Enterprise, Inc. | 05/01/00 | N/A | DOH | N/A |

1)      Includes only Employees who opted for NTI Retirement Plan for Employees, excluding the Cook Group as defined in Section 13.1.

2)      Crediting of the service of Employees of Participating Companies for purposes of computing Benefit Service, Vesting Service and Points Service shall begin on the later of the Date of Hire ("DOH") of the applicable Employee by the Participating Company or the date set forth below in the appropriate column.  However, no service shall be granted under this Plan for service with the Participating Companies listed above if the Employee was not employed by the applicable Participating Company on the "Date of Transaction Recognizing Prior Service", except with regard to Participating Companies for which the "Date of Transaction" is on or after May 1, 2000.  This Appendix B shall apply only with regard to benefits determined as of a Benefit Commencement Date occurring on or after May 1, 2000.

3)      Employees of Northern Telecom Systems Corporation who were on the payroll of the Sycor Division of Northern Telecom Systems Corporation prior to July 1, 1979 shall be entitled to receive credit for Benefit Service purposes from the later of their DOH or January 1,1979

4)      Employees of PacTel Meridian Systems and Northern Telecom Meridian Systems Inc. who are "Full Accrual Participants" as defined in the PacTel Corporation Pension Plan for Salaried Employees shall not be eligible to participate in the Plan and shall be "excepted" from the Plan's definition of "Employee" during the period they participate in the PacTel Corporation Pension Plan for Salaried Employees as Full Accrual Participants.  Effective January 1, 1994, such Full Accrual Participants employed by PacTel Meridian Systems on January 1, 1994, ceased participation in the PacTel Corporation Employees Pension Plan (successor to PacTel Corporation Pension Plan for Salaried Employees) as Full Accrual Participants and commenced participation in the Plan with Vesting Service equal to that vesting service which was recognized by the PacTel Corporation Employees Pension Plan effective January 1, 1994, and Benefit Service beginning January 1, 1994.  PacTel Meridian Systems became PacTel Meridian Systems Inc. effective June 15, 1994.

5)      The Vesting Service of Members employed by either PacTel Meridian Systems or Northern Telecom Meridian Systems Inc. on February 29, 1988 or on March 4, 1991 ("Acquisition Participants") shall include service with an Employer, PacTel Meridian Systems, Northern Telecom Meridian Systems Inc., PacTel Corporation, and/or any affiliate of PacTel Corporation (as defined in Code Section 1504) and shall be credited in accordance with the provisions of the Plan which govern the crediting of Vesting Service.  To the extent an Acquisition Participant earned Vesting Service credit while employed by PacTel Corporation or any affiliate of PacTel Corporation (as defined in the preceding sentence), such Vesting Service credit shall be the Vesting Service credit calculated by PacTel Corporation and certified to the Company.

64

6)      See Section 13.2. of the Plan.

7)      See Section 13.3. of the Plan.

M PRO 1041660 v4
2789126-000004 10/04/2007

## APPENDIX C

### SERVICE CREDITING RELATED TO ADDITION OF PARTICIPATING COMPANIES(Members Included in Hourly Group Only)

| | Date of Transaction Recognizing Prior Service | *Benefit Service Effective Date | *Vesting Service Effective Date | Points Service Effective Date |
|---|---|---|---|---|
| Northeast Electronics Corp. | 05/01/74 | 01/01/74 | DOH | DOH |
| Danray, Inc. | 01/05/78 | 01/01/78 | DOH | DOH |
| Spectron Corporation | 01/01/80 | 01/01/79 | DOH | DOH |
| Northern Telecom Systems Corporation | 01/01/80 | 07/01/79 | DOH | DOH |
| Northern Telecom Communications Service Corporation | 04/04/83 | 04/04/83 | DOH | DOH |
| Northern Telecom Electronics Inc. | 01/01/84 | 01/01/84 | DOH | DOH |
| Northern Telecom Inc. | 01/01/84 | 01/01/84 | DOH | DOH |
| Illinois National Telecom, Inc. | 01/01/84 | 01/01/84 | DOH | DOH |
| National Telecom North, Inc. | 01/01/84 | 01/01/84 | DOH | DOH |
| Systel Corporation | 01/01/84 | 01/01/84 | DOH | DOH |

*Crediting of the service of Employees of Participating Companies for purposes of computing Benefit Service, Vesting Service and Benefit Service shall begin on the later of the date of hire ("DOH") of the applicable Employee by the Participating Company or the date set forth above in the appropriate column.  However, no service shall be granted under this Plan for service with the Participating Companies listed above if the Employee was not employed by the applicable Participating Company on the "Date of Transaction Recognizing Prior Service".  This Appendix C shall apply only with regard to benefits determined as of a Benefit Commencement Date occurring on or after May 1, 2000.

M PRO 1041660 v4
2789126-000004 10/04/2007

**APPENDIX D**

**"DIVESTITURES" & "PLANT CLOSINGS"**

Pursuant to Section 4.5.2. of the plan or Section 4.4.2. of the Prior Plan, the following have been designated as a "divestiture",  a "plant closing" or an "outsourcing."  The Plan Administrator has prepared a list of Members with less Vesting Service  than is otherwise required for entitlement to a vested retirement benefit who are entitled to a deferred vested retirement benefit as a result of this designation.

| Outsourcing (O), Plant Closing (PC) Or Divestiture (D) | Location | Date | Designated By |
|---|---|---|---|
| Meridian Terminals Div. (PC) | Nashville | 09/29/89 | Vice-President, Human Resources |
| Meridian Data Systems (PC) | Minnetonka | 09/29/89 | Vice-President, Human Resources |
| Network Support Systems (PC) | Concord | 09/29/89 | Vice-President, Human Resources |
| Bell Northern Research (PC) | Ann Arbor | 09/29/89 | Vice-President, Human Resources |
| Data Communications Svcs (PC) Richardson | Richardson | 09/29/89 | Vice-President, Human Resources |
| Sale of Assets to Bell (1) Atlanticom (D) | Various | 06/04/90 | Vice-President, Human Resources |
| Sale of Assets to US West (D) | Various | 06/12/89 | Vice President, Human Resources |
| West Palm Beach (PC & D) | West Palm Bach | 12/01/91 | President, NTI |
| Cellular Infrastructure Telecommunications Systems Business (D) | Various | 03/92 | NTI Board |
| INet Corporation (PC) | Chantilly | 01/01/92 | President, NTI |
| Rancho Bernardo (D) | San Diego | 01/12/94 | President, NTI |
| Stone Mountain (PC) | Atlanta | 03/94 | President, NTI |
| Antec Joint Ventures (D) | Various | 1/1/96-12/31/96 employment changes from NTI to the Joint ventures | Director, U.S. Benefits |
| Structured Wiring and Copper Wire Cable (D) | Various | 03/29/96 | Director, U.S. Benefits |

67

| Outsourcing (O), Plant Closing (PC) Or Divestiture (D) | Location | Date | Designated By |
|---|---|---|---|
| Global Positioning Systems Group (D) | Various | 11/19/97 | Director, U.S. Benefits |
| Geer Street materials recycling operation (sale of assets) (D) | Durham, NC | 05/03/98 | Director, U.S. Benefits |
| Creedmoor Public Carrier Networks business (sale of assets to C-MAC Industries, Inc.) (D) | Raleigh | 07/24/98 | Director, U.S. Benefits |
| Advanced Power Systems (D) | Various | 09/24/98 | Director, U.S. Benefits |
| Calibration Labs (sale of assets to J.A. King) (D) | Various | 09/24/98 | Director, N.A. Benefits |
| Mechanical/Carrier (sale of assets to C-MAC Industries, Inc.) (D) | Raleigh | 09/30/99 | Director, N.A. Benefits |
| Information Systems functions (outsourcing arrangement to CSC) (O) | Various | 11/04/00 | Director, N.A. Benefits |
| Central Receiving & OEM Repair (sale of assets to CTDI) (D) | Sunnyvale | 06/04/00 | Director, N.A. Benefits |
| Elastic Networks spin-off to Elastic/TriNet Employer Group | Alpharetta | 05/12/99 | Director, N.A. Benefits |
| North American Solutions Training Group (sale of assets to Global Knowledge) (D) | Various | 03/03/00 | Director, N.A. Benefits |
| Language Services Group (sale of assets to Lionbridge) (D) | Various | 01/16/00 | Director, N.A. Benefits |
| ECAD, PI and ESP businesses (sale of assets to C-MAC) (D) | Various | 08/04/00 | Director, N.A. Benefits |
| ECAD, PI and ESP businesses (sale of assets to Sanmina) (D) | Various | 08/04/00 | Director, N.A. Benefits |
| ECAD business (sale of assets to Solectron) | Various | 07/31/00 | Director, N.A. Benefits |
| Business functions outsourced to Price Waterhouse Coopers (PWC) | Various | 05/01/00 | Director, N.A. Benefits |

M PRO 1041660 v4
2789126-000004 10/04/2007

| Outsourcing (O), Plant Closing (PC) Or Divestiture (D) | Location | Date | Designated By |
|---|---|---|---|
| U.S. Packland business (sale of assets to Selectron) (D) | Raleigh | 06/02/00 | Director, N.A. Benefits |
| Printing Services employees (sale of assets to R.E. Gilmore Corp/Doculink) (D) | Raleigh | 10/09/99 | Director, N.A. Benefits |
| Sale of assets to WilTel Communications LLC (D) | Various | 08/01/97 | Director, N.A. Benefits |
| Sale of assets to Digitel (D) | Raleigh | 04/09/99 | Director, N.A. Benefits |

(1) A successor employer's defined benefit plan has assumed benefits owing to affected Members.

69

## APPENDIX E

## AD HOC INCREASES

Pursuant to Section 5.8. of the Plan or Section 5.6 of the Prior Plan, those retired Members and Beneficiaries receiving a Normal Retirement Benefit, an Early Retirement Benefit, Disability Retirement Benefit, Vested Retirement Benefit, Spouse Death Benefit, or Survivor Annuity benefit (collectively, "Retiree Benefit") and whose retirement or, in the case of the Survivor Annuity, Member's retirement, was effective, under the Prior Plan, the 1999 Plan, or the Plan, on the dates set forth below in the column labeled "Retirement Date" had such Retiree Benefit increased by the amount set forth in the second column below labeled "Percent Increase" (except that no such increase was less than $5.00 per month);

Effective Date:    January 1 1993

| Retirement Date | Percent Increase |
|---|---|
| On or before December 31, 1998 | 6% |
| January 1, 1989 through December 31, 1989 | 4.5% |
| January 1, 1990 through December 31, 1990 | 3% |
| January 1, 1991 through December 31, 1991 | 1.5% |

_____

Effective Date:    January 1,1998

| Retirement Date | Percent Increase |
|---|---|
| January 1, 1997 or later | No increase |
| January 1, 1996 through December 31, 1996 | 1.5% |
| January 1, 1995 through December 31, 1995 | 3% |
| January 1, 1994 through December 31, 1994 | 4.5% |
| January 1, 1993 through December 31, 1993 | 6% |
| Prior to January 1, 1993 | 7.5% |

M PRO 1041660 v4
2789126-000004 10/04/2007

**APPENDIX F**

**AGREEMENTS OR DETERMINATIONS TO RECOGNIZE SERVICE FOR PURPOSES
OF VESTING AND ELIGIBILITY**

Pursuant to Section 13.4. of the Plan, the service of employees who were hired by an Employer as a result of one of the following transactions is recognized for purposes Vesting Service and eligibility for Plan membership to the extent that their employer recognized such service under its defined benefit plan at the time of such transaction.

| Former Employer | Transaction Type | Transaction Effective Date |
|---|---|---|
| MOTOROLA NORTEL Communications Co. | Dissolution of Joint Venture | July 30, 1993 |
| Digital Equipment Corporation | Asset Purchase and Services Agreement | December 19, 1993 |
| Arthur Andersen & Co. | Services Agreement | February 14, 1994 |

71

**APPENDIX G**

**Transitional Earnings**

**(Section 1.16.1)**

Bonuses paid to Employees during the periods described below pursuant to the following programs shall be "Earnings" as provided under Section 1.16.1 hereof:

ARRIS Short Term Incentive Plan bonuses paid during the 1999 and 2000 Plan Years.

EpiCon Bonus Plan bonuses paid during the third quarter of the 2000 Plan Year.

72

IN WITNESS WHEREOF, the authorized officer or other representative of the Company to whom such authority has been delegated  has executed this Plan on this __15__ day of __November__ 2007, to be effective as of January 1, 2007, as approved by review of the Internal Revenue Service.

Nortel Networks Inc.

By: _Paula Holder_

Title: _Core Benefit Leader_

1

AMENDMENT NO. 1 TO THE
NORTEL NETWORKS RETIREMENT INCOME PLAN

WHEREAS, Nortel Networks Inc. ("Corporation") has previously adopted and acts as the sponsor of the Nortel Networks Inc. Retirement Income Plan ("Plan"), reserving the right therein to amend the Plan; and

WHEREAS, it is appropriate and in the best interests of the Corporation that the Plan be amended to reflect the Pension Protection Act provisions regarding present value determinations under Internal Revenue Code ("Code") Section 417(e), and to comply with new Treasury Regulations under Code Section 415;

NOW, THEREFORE, the Plan is hereby amended effective January 1, 2008, as follows:

1.  Plan Sections 1.3.1 and 1.3.2 are hereby deleted and, in lieu thereof, is substituted the following:

    "1.3.1. For purposes of calculating an amount having equal value to the straight life annuity benefit for a  Pension Service Plan Member, the Applicable Interest Rate shall be six percent (6%) and for a Cash Balance Plan Member, the Applicable Interest Rate shall be:

    (i)      For periods prior to 2002, the Treasury constant rate for a thirty (30) year maturity, for the month of September immediately preceding the Plan Year, as published by the Internal Revenue Service.

    (ii)     For periods after 2001 and before 2008, the thirty (30) year Treasury securities rate for the month of September immediately preceding the Plan Year, as published by the Internal Revenue Service.

    (iii)    For periods after 2007, the rate of interest prescribed by the Secretary of the Treasury for purposes of Code Section 417(e), for the month of September immediately preceding the Plan Year, as published by the Internal Revenue Service.

    For purposes of calculating lump sum payments with respect to distributions with a Benefit Commencement Date on or after January 1, 2000, the Applicable Interest Rate shall be:

    (i)      For periods prior to 2002, the Treasury constant rate for a thirty (30) year maturity, for the month of September immediately preceding the Plan Year, as published by the Internal Revenue Service.

    (ii)     For periods after 2001 and before 2008, the thirty (30) year Treasury securities rate for the month of September immediately preceding the Plan Year, as published by the Internal Revenue Service.

(iii)   For periods after 2007, the rate of interest prescribed by the Secretary of the Treasury for purposes of Code Section 417(e), for the month of September immediately preceding the Plan Year, as published by the Internal Revenue Service.

The Applicable Mortality Table is described in Section 1.3.7 hereof."

2.   Section 1.3.7 of the Plan is amended by deleting the existing provision and by substituting the following:

"For purposes of this Section, Applicable Mortality Table shall mean the table prescribed by the Secretary of the Treasury under Code Section 417(e) in effect at the Benefit Commencement Date, whether under Rev. Rul. 2007-67 or future guidance."

3.   Section 10.3 of the Plan is amended, effective January 1, 2008, by adding at the end of the existing provision the following:

"After 2007, for purposes of applying the provisions of Code §415 and for top-heavy purposes under Code §416 (including the determination of key employees), and notwithstanding any other provision of the Plan, compensation shall be determined by (1) including regular pay, (2) including payments for unused sick, vacation or other leave and payments from nonqualified deferred compensation plans, (3) excluding salary continuation payments for participants on military service but only to the extent that compensation exceeds the amount of compensation the individual would have received if (s)he had continued to provide services to the Company, and (4) including salary continuation payments for permanently and totally disabled participants.  In applying the foregoing, amounts described in (1) and (2) which are paid after a termination of employment may only be included to the extent such amounts are paid by the later of 2 1/2 months after severance or by the end of the limitation year that includes the date of such severance from employment.  Amounts described in (2) shall be included if those amounts would have been included if they were paid prior to the participant's severance from employment, and the amounts are payment for unused accrued bona fide sick, vacation, or other leave, but only if the participant would have been able to use the leave if employment had continued.  Non-qualified deferred compensation may only be included if the compensation would have been included if it had been paid prior to the Participant's severance from employment, and the compensation is received pursuant to a nonqualified unfunded deferred compensation plan, but only if the payment would have been paid at the same time if the Participant had continued in employment with the Employer and only to the extent that the payment is includible in the participant's gross income.  Payments to an individual who does not currently perform services

for the Employer by reason of qualified military service (as that term is used in Code § 414(u)(1)) are in any event included, to the extent those payments do not exceed the amounts the individual would have received if the individual had continued to perform services for the Employer rather than entering qualified military service.  Compensation paid to a Participant who is permanently and totally disabled (as defined in Code § 22(e)(3)) is included if either the individual is not a highly compensated employee immediately before becoming disabled or the Plan provides at that time for the continuation of benefits for all persons who are so disabled for a fixed or determinable period.  The "first few weeks rule" does not apply for these purposes.  The provision of the Plan setting forth the definition of Earnings shall not be modified as a result, except to provide in clarification that effective January 1, 2008, no amount is includable in Earnings if it is not also includable in 415 compensation in accordance with the foregoing provisions of this paragraph.  The provisions of this paragraph are intended to conform the Plan to Treasury Regulations under Code Section 415, but shall not be construed or applied to require or permit benefit accruals after 2007.

(1)     Change of limitation year. The limitation year may only be changed by a Plan amendment. Furthermore, if the Plan is terminated effective as of a date other than the last day of the Plan's limitation year, then the Plan is treated as if the Plan had been amended to change its limitation year.

(2)     Excess Annual Additions. Notwithstanding any provision of the Plan to the contrary, if the annual additions (within the meaning of Code § 415) are exceeded for any Participant, then the Plan may only correct such excess in accordance with the Employee Plans Compliance Resolution System (EPCRS) as set forth in Revenue Procedure 2006-27 or any superseding guidance, including, but not limited to, the preamble of the final §415 Regulations.

(3)     Aggregation and Disaggregation of Plans.

(i)     For purposes of applying the limitations of Code §415, to the extent required under Treasury Regulations or other applicable guidance, all defined benfit plans under which the participant receives annual additions are treated as one plan. The "Employer" means the Employer that adopts this Plan and all members of a controlled group or an affiliated service group that includes the Employer (within the meaning of Code §§ 414(b), (c), (m) or (o)), except that for purposes of this Section, the determination shall be made by applying Code § 415(h), and shall take into account tax-exempt organizations under Regulation Section 1.414(c)-5, as modified by Regulation Section 1.415(a)-1(f)(1). For purposes of this Section:

(ii)     A former Employer is a "predecessor employer" with respect to a participant in a plan maintained by an Employer if the Employer maintains a plan under which the participant had accrued a benefit while performing

services for the former Employer, but only if that benefit is provided under the plan maintained by the Employer. For this purpose, the formerly affiliated plan rules in Regulation Section 1.415(f)-1(b)(2) apply as if the Employer and predecessor Employer constituted a single employer under the rules described in Regulation Section 1.415(a)-1(f)(1) and (2) immediately prior to the cessation of affiliation (and as if they constituted two, unrelated employers under the rules described in Regulation Section 1.415(a)-1(f)(1) and (2) immediately after the cessation of affiliation) and cessation of affiliation was the event that gives rise to the predecessor employer relationship, such as a transfer of benefits or plan sponsorship.

(iii)     With respect to an Employer of a Participant, a former entity that antedates the Employer is a "predecessor employer" with respect to the participant if, under the facts and circumstances, the employer constitutes a continuation of all or a portion of the trade or business of the former entity.

(6)     Break-up of an affiliate employer or an affiliated service group. For purposes of aggregating plans for Code §415, a "formerly affiliated plan" of an employer is taken into account for purposes of applying the Code §415 limitations to the employer, but the formerly affiliated plan is treated as if it had terminated immediately prior to the "cessation of affiliation." For purposes of this paragraph, a "formerly affiliated plan" of an employer is a plan that, immediately prior to the cessation of affiliation, was actually maintained by one or more of the entities that constitute the employer (as determined under the employer affiliation rules described in Regulation Section 1.415(a)-1(f)(1) and (2)), and immediately after the cessation of affiliation, is not actually maintained by any of the entities that constitute the employer (as determined under the employer affiliation rules described in Regulation Section 1.415(a)-1(f)(1) and (2)). For purposes of this paragraph, a "cessation of affiliation" means the event that causes an entity to no longer be aggregated with one or more other entities as a single employer under the employer affiliation rules described in Regulation Section 1.415(a)-1(f)(1) and (2) (such as the sale of a subsidiary outside a controlled group), or that causes a plan to not actually be maintained by any of the entities that constitute the employer under the employer affiliation rules of Regulation Section 1.415(a)-1(f)(1) and (2) (such as a transfer of plan sponsorship outside of a controlled group)."

4.   Appendix A, Part III, is amended by deleting from the final paragraph the words "the second paragraph of".

DATED the _____ 18th _____ day of _____ December _____, 2008.

NORTEL NETWORKS INC.

By: _Karen E Sledge_

Title: _President_

M PRO 1071809 v3
2789126-000004 12/11/2008

Exhibit A

## FIRST AMENDMENT TO THE
## NORTEL NETWORKS RETIREMENT INCOME PLAN

The Nortel Networks Retirement Income Plan, as amended and restated effective as of January 1, 2007 (the "Plan"), is amended as follows:

1.    Effective as of January 1, 2009, Section 6.3.3.5 of the Plan is amended in its entirety to provide as follows:

"6.3.3.5.    A Lump Sum Payment – This method of payment shall provide, with respect to a Member who is credited with an Account Balance under Section 5.1.1, the greater of

(a)    a cash payment equal to the amount determined under Section 5.1.1 before conversion to an annuity form of payment (i.e., the current Account Balance as of the date of payment, without any "whipsaw" calculation or adjustment of any kind); or

(b)    the lump sum value of the Member's monthly Normal Retirement Benefit described in Sections 5.2.1.1(b), 5.2.1.2, and 5.2.1.3, and the last paragraph of Section 5.2.1, determined using the interest rate and mortality factors described in Section 1.3.2, subject to Section 1.3.8 and the last sentence of Section 1.3.9,

and, with respect to a Member who is credited with an Account Balance under Section 5.1.2, the greater of

(c)    a cash payment equal to the amount determined under Section 5.1.2 before conversion to an annuity form of payment (i.e., the current Account Balance as of the date of payment, without any "whipsaw" calculation or adjustment of any kind); or

(d)    the lump sum value of the Member's monthly Normal Retirement Benefit described in the second and third paragraphs of Section 5.2.2, determined using the interest rate and mortality factors described in Section 1.3.2, subject to Section 1.3.8.

Notwithstanding any other provision of the Plan to the contrary, effective January 1, 2009, no determination of a lump sum benefit or an Actuarially Equivalent distributable present value under the Plan will be made by any method which requires a projection of a current account balance to a future value, followed by a reduction of the future value to present value,

or any "whipsaw" present valuation method of any kind. Any Plan
provision shall be construed and applied accordingly and is modified to
the extent necessary for such purpose."

In Witness Whereof, this amendment to the Plan is hereby executed by a duly authorized officer
of Nortel Networks Inc. on this _26th_ day of _November_, 2008.

Nortel Networks Inc.

BY: _Karen E Sledge_

TITLE: _President_

2

**<u>Exhibit 2</u>**

## HR SHARED SERVICES  -  U.S. SEVERANCE ELECTION
## PROBUSINESS / SAP INFORMATION

EMPLOYEE NAME: **Michael  Rose**

SOCIAL SECURITY NO: ▮▮▮▮▮

EMPLOYEE NUMBER: **0506393**

SEVERANCE STOP DATE: **2008/09/29**

CONTINUOUS SERVICE DATE: **1995/06/19**

ELIGIBILITY SEVERANCE DATE: **1995/06/19**

SALES COMP EMPLOYEE: ____Yes  ✓ No

If Yes, TTC RATE (ANNUAL $) _____

STATUS F/T: **F**  P/T:

NOTICE DATE: 4-3-08  (if applicable)

TERM EFFECTIVE DATE: **2008/06/02**

REASON CODE: **33**

EMPLOYEE ADDRESS:

2615 MERLIN DRIVE

LEWISVILLE

TX 75056

---

Any unused/accrued vacation balance in SAP as of termination date will be paid out in compliance with Company policy.

---

SALARY CONTINUATION ENTITLEMENT: **17** WEEKS

( **X** ) Elect       (____) Decline the payment of my severance allowance

---

PAYROLL DEDUCTIONS FOR MEDICAL, DENTAL/VISION/HEARING CARE AND LIFE INSURANCE

( **X** )   Continue bi-weekly deductions per current payroll stub................**BENEFITS STOP DATE:**  2008/09/30

On **FINAL** severance check, deduct current deductions and the pro-rated portion to cover through the benefits ending date.   I understand this amount may change based on annual enrollment or life event status changes which may occur between termination date and benefits end date or to correct deduction amounts which may not be reflected correctly.   Depending on the amount of the last severance check, US payroll may have to adjust the next to the last severance check in order to have enough after-tax dollars to pay for the benefits.

*Refer to your current payroll stub for bi-weekly Flex credits and benefits deduction amounts.*

---

(____)   No deductions – continuation of insurance not elected............**BENEFITS STOP DATE:**  2008/06/30

---

Outstanding dollars Owed (as currently known):  Total amount to be deducted $_____ (without prejudice to subsequent revision or other collection methods).

---

**Michael  Rose**

| | | |
|---|---|---|
| Employee Name | Employee Signature | Date |
| | | |
| Manager / HR Print Name | Manager/HR Signature | Date |

Employee Signature: *Mike Rose*   Date: April 23/08

Manager/HR Signature: *Dawn M Church* 42808

Mass Term 5/14/08

US Standard Release For Group WFR
For Age 40 and Over
Termination With Severance

**<u>Exhibit 3</u>**



ProBusiness Payroll - Company Menu
File  PayData  Status  Reports  Transfer  Utility  Help

**View Check**

| Check # | D922627 | Date | 10/10/2008 | Emp ID | 531513 | SS# |  | BIT/SUI | TX/TX | Run | AVJ02 | Paygrp | 1RA |

Pay To  ROSE, MICHAEL          Home Div 540          Home Dept 4244          Home Job 525 18

Check Reason

| Gross | | Deductions | | Taxes | | DirDep | |
|---|---|---|---|---|---|---|---|
| 358.40 | | 1.98 | | 27.41 | | 329.01 | |

**Earnings**

| Code | Descrip | Rate | Hours | Amt | Yid |
|---|---|---|---|---|---|
| 301 | SEV-CONT | 0.0000 | 0.00 | 358.42 | 30208.56 |
| OTL | OTL . | 0.0000 | 0.00 | 1.98 | 41.58 |

**Deductions**

| Code | Descrip | Amt | Yld |
|---|---|---|---|
| XFA | FRNOACRL | 92.87 | 20018.44 |
| 913 | OTL OFF | 1.98 | 41.58 |

**Employee Taxes**

| Code | Amt | Yld | Taxable Wages | Eligible Wages |
|---|---|---|---|---|
| USFIT | 0.00 | 11774.74 | 358.40 | 358.40 |
| USFICA | 22.22 | 4647.54 | 358.40 | 358.40 |
| USFMED | 5.19 | 1086.92 | 358.40 | 358.40 |

Help    Taxation    ER Taxes    Check Message    OK