**Exhibit K – IRS Notice 2011-96**

Part III - Administrative, Procedural and Miscellaneous

Sample Plan Amendment for Section 436

Notice 2011-96

I. Purpose

This notice provides a sample plan amendment that plan sponsors may adopt to satisfy § 436 of the Internal Revenue Code regarding limitations on the accrual and payment of benefits under certain underfunded single employer defined benefit plans.  This notice also extends both the deadline to amend a plan to satisfy § 436 and the period during which such an amendment is eligible for relief from the anti-cutback requirements of § 411(d)(6).

II. Background

A. Section 436

Section 412 provides minimum funding requirements that generally apply to pension plans qualified under § 401(a) or 403(a), other than governmental plans within the meaning of § 414(d), church plans within the meaning of § 414(e) with respect to which the election provided by § 410(d) has not been made, and certain insurance contract plans described in § 412(e)(3).  Section 430, which was added by the Pension Protection Act of 2006 (PPA '06), Pub. L. 109-280, specifies the minimum funding requirements that apply to single employer defined benefit pension plans (including multiple employer plans) pursuant to § 412.  Section 401(a)(29) requires single employer defined benefit plans (including multiple employer plans) that are subject to the minimum funding requirements of § 412 to meet the requirements of § 436.

Section 436, which was also added by PPA '06, sets forth a series of limitations on the accrual and payment of benefits under an underfunded plan.  In general, when a plan's adjusted funding target attainment percentage (as defined in § 436(j) (AFTAP)) for the plan year is less than 60 percent, § 436(d)(1) prohibits the payment of prohibited payments (as defined in § 436(d)(5)), including single sum distributions, and § 436(e)(1) requires benefit accruals under the plan to cease.  Section 436(b)(1) prohibits the payment of an unpredictable contingent event benefit if the plan's AFTAP for the plan year is less than 60 percent or would be less than 60 percent taking into account the occurrence of the event.

When a plan's AFTAP for the plan year is less than 80 percent, but not less than 60 percent, § 436(d)(3) generally limits the portion of a benefit that may be paid in a single sum or other prohibited payment. Section 436(c)(1) generally prohibits a plan amendment from taking effect if the amendment increases the

liabilities of the plan by increasing benefits and the plan's AFTAP for the plan year is less than 80 percent or would be less than 80 percent taking into account the amendment. Section 436(d)(2) generally prohibits the payment of prohibited payments from a plan while the plan's sponsor is in bankruptcy unless the plan's AFTAP is certified to be at least 100 percent.

The limitations under § 436 (other than the limitations on prohibited payments under § 436(d)) do not apply to a plan for the first 5 plan years of the plan, taking into account any predecessor plan.

The requirement to apply a limitation under § 436(b), (c), or (e) to a plan ceases if the plan sponsor makes a contribution, in the amount specified in the relevant subsection, that is not counted toward satisfaction of the minimum contribution requirement under § 430. Section 436(f) sets forth rules relating to those contributions and other methods that a plan sponsor may use to avoid the limitations under § 436.

Sections 436(h)(1) and 436(h)(3) set forth certain presumptions regarding a plan's AFTAP for a plan year that apply before the plan's enrolled actuary issues a certification of the plan's AFTAP for the plan year. Section 436(h)(2) sets forth a presumption regarding a plan's AFTAP for a plan year that applies if the plan's enrolled actuary issues a certification of the plan's AFTAP for the plan year on or after the first day of the 10th month of the plan year. For any period during which a presumption under § 436(h) applies to a plan, the limitations under § 436 are applied to the plan as if the AFTAP for the plan year were the presumed AFTAP under § 436(h).

Section 101(c)(2)(F) of the Worker, Retiree, and Employer Recovery Act of 2008 (WRERA '08), Pub. L. 110–458, added § 436(k), which gives the Secretary authority to issue special rules for the application of § 436 in the case of a plan that uses a valuation date other than the first day of the plan year.

Section 203 of WRERA '08 provides that, for the first plan year beginning during the period beginning on October 1, 2008, and ending on September 30, 2009, the limitation on benefit accruals under § 436(e) is applied using the plan's AFTAP for the preceding plan year if that year's AFTAP is greater than the AFTAP for the plan year.

Section 203(a)(2) of the Preservation of Access to Care for Medicare Beneficiaries and Pension Relief Act of 2010 (PRA 2010), Pub. L. 111-192, amended § 436(j) to provide that, for purposes of (i) the limitation on benefit accruals under § 436(e) and (ii) the application of the limitations on prohibited payments under § 436(d) to payments under a social security leveling option, the AFTAP for a plan year beginning on or after October 1, 2008, and before October 1, 2010, is the greater of the AFTAP for that plan year, determined without regard to section 203(a)(2) of PRA 2010, or the AFTAP for the plan year beginning after

2

October 1, 2007, and before October 1, 2008, as determined under rules prescribed by the Secretary.  In the case of a plan with a valuation date other than the first day of the plan year, the amendment made by section 203(a)(2) of PRA 2010 applies to plan years beginning after December 31, 2007, and before January 1, 2010, and the AFTAP for any such plan year is the greater of the AFTAP for that plan year, determined without regard to section 203(a)(2) of PRA 2010, or the AFTAP based on the last plan year beginning before November 1, 2007, determined under rules prescribed by the Secretary.  For purposes of § 436(j) as amended by PRA 2010, a social security leveling option is a form of benefit distribution that accelerates payments before, and reduces payments after, a participant starts to receive social security benefits in order to provide similar aggregate benefits both before and after social security benefits begin.  The payment of a social security supplement, as defined in  § 1.411(a)-7(c)(4)(ii) of the Income Tax Regulations, does not cause a form of distribution of a participant's accrued benefit to be a social security leveling option.  Section 203(b) of PRA 2010 coordinates with WRERA '08 by providing that, for purposes of the limitation on accruals under § 436(e), the AFTAP for any plan year to which the amendments made by section 203 of PRA 2010 apply is determined under section 203 of WRERA '08 if it results in a higher percentage than the AFTAP under § 436(j) as amended by PRA 2010.

Section 436 is generally effective for plan years that begin on or after January 1, 2008.  In the case of a collectively bargained plan that is maintained pursuant to one or more collective bargaining agreements between employee representatives and one or more employers ratified before January 1, 2008, § 436 does not apply to plan years beginning before the earlier of January 1, 2010, or the later of the date on which the last of such collective bargaining agreements relating to the plan terminates (determined without regard to any extension thereof agreed to after August 17, 2006), or the first day of the first plan year to which § 436 would otherwise apply.  Under sections 104 through 106 of PPA '06, later effective dates for § 436 also apply to eligible cooperative plans, within the meaning of section 104(c) of PPA '06, that were in existence on July 26, 2005, and certain other plans.

Section 202(b) of PRA 2010 amended section 104 of PPA '06 to provide that, in the case of an eligible charity plan (within the meaning of section 104(d) of PPA '06, as amended) that was in existence on July 26, 2005, § 436 is not effective in plan years beginning before the earlier of January 1, 2017, or the first plan year for which the plan ceases to be an eligible charity plan.  The amendment made by section 202(b) of PRA 2010 applies to plan years beginning after December 31, 2007.  However, under section 202(c)(2) of PRA 2010, a plan sponsor may instead elect to apply the amendment made by section 202(b) of PRA 2010 to plan years beginning after December 31, 2008.  If the plan sponsor makes such an election, § 436 applies to the eligible charity plan for a plan year beginning after December 31, 2007, and before January 1, 2009, but does not apply to the plan for plan years beginning after December 31, 2008, and before the earlier of

3

January 1, 2017, or the first plan year for which the plan ceases to be an eligible charity plan. Such an election must be made at such time and in such form and manner as prescribed by the Secretary and may be revoked only with the consent of the Secretary.

Section 101(j) of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, as amended (ERISA), requires that written notice be provided to participants and beneficiaries when a plan becomes subject to the limitations of paragraph (1), (3), or (4) of section 206(g) of ERISA (which parallel the provisions of § 436(b), (d), and (e), respectively). Section 101(j) of ERISA also authorizes the Secretary of the Treasury, in consultation with the Secretary of Labor, to prescribe rules applicable to notices required under this section of ERISA.

Proposed regulations under §§ 430(f) and 436 were published in the Federal Register on August 31, 2007, 72 FR 50544. Additional proposed regulations under § 430(d), (g), (h)(2), and (i) were published in the Federal Register on December 31, 2007, 72 FR 74215. Notice 2008-21, 2008-1 C.B. 431, provides that when the proposed regulations under §§ 430 and 436 are finalized, the final regulations will not apply to plan years beginning before January 1, 2009. Notice 2008-21 further provides that, for plan years beginning during 2008, taxpayers must follow applicable statutory provisions and can rely on the proposed regulations for compliance with those statutory provisions. Finally, Notice 2008-21 provides transition guidance regarding the application of the statutory provisions of §§ 430 and 436 for plan years beginning during 2008, including transition relief for small plans with end-of-year valuation dates, and states that the Service will not challenge a reasonable interpretation of an applicable statutory provision under § 430 or § 436 for plan years beginning during 2008. Notice 2008-73, 2008-2 C.B. 717, expands the scope of the transition relief for small plans with end-of-year valuation dates that is provided in Notice 2008-21.

Final regulations under §§ 430(d), (f), (g), (h)(2), and (i) and 436 were published in the Federal Register on October 15, 2009, 74 FR 53004. For plan years beginning before January 1, 2010, plans are permitted to rely on either the final regulations or the proposed regulations for purposes of satisfying the requirements of §§ 430 and 436. The final regulations do not include rules interpreting the amendments with respect to § 436 made by sections 101(c)(2) and 203 of WRERA '08 or the amendments with respect to § 436 made by PRA 2010. The Treasury Department and the Service anticipate issuing guidance regarding these amendments in the future.

B. Sections 401(b) and 411(d)(6)

Section 401(b) provides a period during which a plan may be amended retroactively to comply with the Code's qualification requirements. Section 1.401(b)–1 and Rev. Proc. 2007–44, 2007–2 C.B. 54, describe the disqualifying

4

provisions that may be amended retroactively and the remedial amendment period during which retroactive amendments may be adopted. The regulations also grant the Commissioner the discretion to extend the remedial amendment period.

Section 5.05 of Rev. Proc. 2007–44 provides that when there are statutory or regulatory changes to the plan qualification requirements that will impact provisions of the written plan document, the adoption of an "interim amendment" will generally be required by the later of the end of the plan year in which the change is first effective or the due date of the employer's tax return for the tax year that includes the date the change is first effective.  An interim amendment is an amendment with respect to a plan provision that is a disqualifying provision because the provision (1) causes the plan to fail to satisfy the qualification requirements of the Code by reason of a change in those requirements, or (2) is integral to a changed qualification requirement, but only if the provision is also integral to a plan provision that is a disqualifying provision under (1).

The filing of a determination letter application for an individually designed plan generally requires the plan to be restated to take into account changes in qualification requirements and guidance that are listed in the Cumulative List of Changes in the Plan Qualification Requirements in effect at the time the application is filed. (See sections 4 and 12.03 of Rev. Proc. 2007–44.) Thus, as noted in section 12.03 of Rev. Proc. 2007–44, a determination letter filing for an individually designed plan may accelerate to an earlier date one or more of the interim amendment deadlines that would otherwise apply to a plan.

Section 411(d)(6) provides generally that a plan will not satisfy § 401(a) if an amendment to the plan decreases a participant's accrued benefit.  For this purpose, a plan amendment that has the effect of eliminating or reducing an early retirement benefit or a retirement-type subsidy or eliminating an optional form of benefit with respect to benefits attributable to service before the amendment is treated as reducing accrued benefits.  Section 401(b) does not relieve a plan of the requirement to satisfy § 411(d)(6) with respect to any amendment.

Section 1.411(d)–4, A–2(b)(2)(i), provides that a plan may be amended to eliminate or reduce a § 411(d)(6) protected benefit, within the meaning of § 1.411(d)–4, A–1, if the following requirements are met: the amendment constitutes timely compliance with a change in law affecting plan qualification; there is an exercise of § 7805(b) relief by the Commissioner; and the elimination or reduction is made only to the extent necessary to enable the plan to continue to satisfy the requirements for qualified plans.

C. Notice 2010-77

Notice 2010-77, 2010-51 C.B. 851, extends the deadline for adopting an interim amendment with respect to § 436 to the last day of the first plan year that begins

5

on or after January 1, 2011, provided that the amendment is effective as of the effective date of § 436 with respect to the plan and the plan is operated in accordance with the amendment as of the effective date of the amendment.

Notice 2010-77 also provides that a plan amendment that eliminates or reduces a § 411(d)(6) protected benefit within the meaning of § 1.411(d)–4, A–1, will not cause a plan to fail to meet the anti-cutback requirements of § 411(d)(6) if the amendment is adopted by the last day of the first plan year that begins on or after January 1, 2011, and the elimination or reduction is made only to the extent necessary to enable the plan to meet the requirements of § 436.

III. Extension of Amendment Deadline and Associated Relief Under § 411(d)(6)

The deadline for adopting an interim amendment with respect to § 436 is extended to the latest of:

(1) the last day of the first plan year that begins on or after January 1, 2012,

(2) the last day of the plan year for which § 436 is first effective for the plan, or

(3) the due date (including extensions) of the employer's tax return for the tax year (determined in accordance with section 5.06(2) of Rev. Proc. 2007-44, in the case of a tax-exempt employer) that contains the first day of the plan year for which § 436 is first effective for the plan.

As noted in section II.B. of this notice, the filing of a determination letter application for an individually designed plan may accelerate one or more interim amendment deadlines that would otherwise apply to the plan.  In the case of an application for a determination letter for an individually designed plan that is filed on or after February 1, 2012 (or, in the case of a plan described in section 104 or 105 of PPA '06, as amended, the first day of the plan year for which § 436 is first effective for the plan, if later), the restated plan that is submitted with the application must incorporate an interim amendment with respect to § 436 and, therefore, the filing of the application before the interim amendment deadline that would otherwise apply to the plan under this section III will accelerate the interim amendment deadline for § 436.

The extension under this section III is conditioned on the amendment being effective as of the effective date of § 436 with respect to the plan and operation of the plan in accordance with the amendment from and after the effective date of the amendment.

Pursuant to § 7805(b) and § 1.411(d)–4, A–2(b)(2)(i), a plan amendment adopted with respect to § 436 that eliminates or reduces a § 411(d)(6) protected benefit within the meaning of § 1.411(d)–4, A–1, does not cause a plan to fail to meet the anti-cutback requirements of § 411(d)(6) if the amendment is adopted by the

deadline described in this section III and the elimination or reduction is made only to the extent necessary to enable the plan to meet the requirements of § 436. To the extent that the adoption of the sample amendment in the appendix to this notice by the deadline described in this section III causes the elimination or reduction of a § 411(d)(6) protected benefit under a plan, the elimination or reduction is made only to the extent necessary to enable the plan to meet the requirements of § 436 and therefore does not cause the plan to fail to meet the anti-cutback requirements of § 411(d)(6).

IV. Sample Amendment

The sample amendment included in the appendix to this notice satisfies the requirements of § 436, as amended by WRERA '08 and PRA 2010, and the requirements of the final regulations under § 436. Thus, if a plan is amended by adoption of the sample amendment, the terms of the plan will satisfy the requirements of § 436 and the regulations thereunder. The sample amendment may be adopted by sponsors of individually designed plans and by sponsors of pre-approved plans (that is, master and prototype (M&P) and volume submitter plans) on behalf of the pre-approved plans' adopting employers.

The sample amendment has three parts. The first part contains provisions that are applicable to all plans. This part includes the limitations on benefits and accruals under § 436(b) through (e) that apply when (i) the plan's AFTAP for the plan year is less than 80 percent (or, in the case of the limitation on certain plan amendments under § 436(c), would be less than 80 percent taking into account the amendment) but not less than 60 percent; (ii) the plan's AFTAP for the plan year is less than 60 percent (or, in the case of the limitation on unpredictable contingent event benefits under § 436(b), would be less than 60 percent taking into account the occurrence of the event); or (iii) the plan sponsor is in bankruptcy and the plan's enrolled actuary has not certified the plan's AFTAP for the plan year to be at least 100 percent. The first part also includes provisions regarding: resumption of accruals and payments and the treatment of amendments that were not allowed to take effect on their effective dates after a relevant limitation ceases to apply; presumptions regarding the plan's AFTAP that apply before and after the plan's enrolled actuary issues a certification of the plan's AFTAP for the plan year; and special rules that apply within the first 5 plan years of a new plan or to a terminating plan or to certain frozen plans. This part also references the requirement in section 101(j) of ERISA to provide participants and beneficiaries written notice when a plan becomes subject to § 436 limitations as well as the rules in § 436(f) and § 1.436-1(f) regarding employer contributions and other methods to avoid or terminate the application of the § 436 limitations to a plan.

The second part of the sample amendment contains two alternative provisions, one of which must be adopted with the first part of the sample amendment in the case of a multiple employer plan. Which of the two provisions must be adopted

7

depends on whether the plan is a multiple employer plan described in § 413(c)(4)(A) or a multiple employer plan described in § 413(c)(4)(B).

The third part of the sample amendment consists of four optional provisions that may be used to modify the first part of the sample amendment.  The first two optional provisions allow a participant or beneficiary who is prohibited by § 436(d)(1) or § 436(d)(3), respectively, from electing certain accelerated distribution options to make a new election of a previously prohibited optional form of benefit distribution after the relevant limitation ceases to apply to the plan.  The third optional provision expands the choices of timing and form of distribution available to participants and beneficiaries under a plan during a period when accelerated distribution options are limited by § 436(d)(3).  The fourth optional provision allows the automatic restoration of benefit accruals that were not permitted to accrue as a result of the application to the plan of § 436(e), provided that certain conditions are satisfied.  A plan sponsor may choose to incorporate any or all of these optional provisions by adding them to the appropriate section of the first part of the sample amendment.

V. Reliance

A plan sponsor that adopts the sample amendment (or an adopting employer on whose behalf the sample amendment is adopted by the sponsor of a pre-approved plan) has reliance that the form of the amended plan satisfies the requirements of § 436 and that the amendment does not cause the plan to fail to meet the anti-cutback requirements of § 411(d)(6), provided that the sample amendment is adopted by the deadline described in section III of this notice, the terms of the sample amendment are not modified, except as permitted or required below, and the plan is operated in accordance with the amendment from and after the effective date of the amendment.  Adoption of the sample amendment will not cause a pre-approved plan adopted by an employer to be treated as individually designed or to fail to be identical to the approved M&P or volume submitter specimen plan.

A plan sponsor's reliance on the sample amendment is not adversely affected by changes to the sample amendment that are made to conform to a plan's terminology or organization, provided that the changes do not materially modify the sample amendment by altering the meaning of any provision of the amendment.  The sample amendment may be modified without adversely affecting reliance to specify effective dates for any of the optional provisions that are later than the general effective date of the sample amendment, provided that the plan's operations are consistent with the modified effective date.  In the case of a pre-approved plan, the optional provisions of the sample amendment may be incorporated in an amendment to an adoption agreement so that each employer adopting the pre-approved plan may elect whether to include the optional provisions in its plan and may specify when such provisions are effective.

8

The sample amendment is effective for plan years beginning after December 31, 2007. However, adoption of the sample amendment does not alter a plan sponsor's ability to rely on the proposed regulations for plan years beginning prior to January 1, 2010, or on Notices 2008-21 and 2008-73, with respect to the operation of a plan. Therefore, if a plan's operation in plan years beginning after December 31, 2007, and before January 1, 2010, was not consistent with the terms of the sample amendment but satisfies the rules in either the proposed regulations or the final regulations under § 436, or another reasonable interpretation of § 436, the effective date (section 9) of the sample amendment should be changed to plan years beginning after December 31, 2009, and the requirements of § 436 may be incorporated by reference in the terms of the plan for the earlier plan years. This change will not affect the plan sponsor's ability to rely on the sample amendment.

Plan sponsors of eligible charity plans and other plans affected by the amendments to § 436 and PPA '06 that were made by PRA 2010 may have operated their plans in a manner that would satisfy § 436 as in effect prior to the enactment of PRA 2010, but that does not satisfy § 401(a) when the amendments made by PRA 2010 are taken into account. The Treasury Department and the Service anticipate issuing guidance that will allow these plan sponsors to correct their plans to take into account the PRA 2010 amendments. These sponsors are not precluded from adopting or relying on the sample amendment for periods during which § 436 applies to their plans.

In the case of certain collectively bargained plans and plans described in sections 104 through 106 of PPA '06, as amended, the plan sponsor may rely on the sample amendment provided that the effective date of the amendment is changed to the actual effective date of § 436 with respect to the plan. Thus, for example, in the case of an eligible charity plan in existence on July 26, 2005, the effective date of the amendment should be changed to the earlier of the first plan year beginning on or after January 1, 2017, or the first plan year for which the plan ceases to be an eligible charity plan. Alternatively, the effective date of the sample amendment may be changed to provide that the amendment applies to the plan for a plan year beginning after December 31, 2007, and before January 1, 2009, but does not apply to the plan for plan years beginning after December 31, 2008, and before the earlier of January 1, 2017, or the first plan year for which the plan ceases to be an eligible charity plan.

Example

*X*, a tax-exempt employer, sponsors an eligible charity plan within the meaning of section 104(d) of PPA '06, as amended, that was in existence on July 26, 2005. The plan year is the calendar year. Pursuant to section 202(b) of PRA 2010, § 436 is not effective with respect to *X*'s plan until the earlier of the first plan year beginning on or after January 1, 2017, or the first plan year for which the plan ceases to be an eligible charity plan. Section 202(c) of PRA 2010, however,

9

allows *X* to elect to apply section 202(b) of PRA 2010 to plan years beginning after December 31, 2008, in which case § 436 would be effective with respect to *X*'s plan for 2008 but not for any subsequent year until the earlier of the first plan year beginning on or after January 1, 2017, or the first plan year for which the plan ceases to be an eligible charity plan.

Assume that *X* elects to apply section 202(b) of PRA 2010 to plan years beginning after December 31, 2008, thereby making § 436 effective with respect to the plan for 2008, and that the plan continues to be an eligible charity plan. Because § 436 is first effective with respect to *X*'s plan in 2008, *X* must adopt an interim amendment to satisfy § 436 by December 31, 2012. If *X* amends its plan by this deadline by adopting the sample amendment in this notice, *X* will have reliance that the form of its amended plan satisfies the requirements of § 436 and that the amendment does not cause the plan to fail to meet the anti-cutback requirements of § 411(d)(6), provided that: (1) *X* modifies the sample amendment to make it effective with respect to the 2008 plan year and with respect to plan years beginning on or after January 1, 2017, or, if earlier, plan years beginning with the first plan year the plan ceases to be an eligible charity plan; and (2) *X* operates the plan in accordance with the amendment during the periods the amendment is effective.

Alternatively, assume that *X* does not elect to apply section 202(b) of PRA 2010 to plan years beginning after December 31, 2008, so that § 436 is not effective with respect to *X*'s plan until the earlier of the first plan year beginning on or after January 1, 2017, or the first plan year for which the plan ceases to be an eligible charity plan. Assuming that the plan continues to be an eligible charity plan, an interim amendment to *X*'s plan to satisfy § 436 is not required before the later of December 31, 2017, or the due date (including extensions) of *X*'s tax return for the tax year (determined in accordance with section 5.06(2) of Rev. Proc. 2007-44 (or the successor thereto)) that includes January 1, 2017.

Drafting Information

The principal author of this notice is James P. Flannery of the Employee Plans, Tax Exempt and Government Entities Division. Questions regarding this notice may be sent via e-mail to retirementplanquestions@irs.gov.

10

**Appendix**

Sample Plan Amendment for a Single Employer Defined Benefit Plan to Satisfy Benefit Limitations Required Under § 436 of the Internal Revenue Code

(Part I)

<u>Limitations Applicable If the Plan's Adjusted Funding Target Attainment Percentage Is
Less Than 80 Percent or If the Plan Sponsor Is In Bankruptcy</u>

1. <u>Limitations Applicable If the Plan's Adjusted Funding Target Attainment Percentage Is Less Than 80 Percent, But Not Less Than 60 Percent</u>. Notwithstanding any other provisions of the plan, if the plan's adjusted funding target attainment percentage for a plan year is less than 80 percent (or would be less than 80 percent to the extent described in Section 1(b) below) but is not less than 60 percent, then the limitations set forth in this Section 1 apply.

(a) <u>50 Percent Limitation on Single Sum Payments, Other Accelerated Forms of Distribution, and Other Prohibited Payments</u>. A participant or beneficiary is not permitted to elect, and the plan shall not pay, a single sum payment or other optional form of benefit that includes a prohibited payment with an annuity starting date on or after the applicable section 436 measurement date, and the plan shall not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment, unless the present value of the portion of the benefit that is being paid in a prohibited payment does not exceed the lesser of:

(i) 50 percent of the present value of the benefit payable in the optional form of benefit that includes the prohibited payment; or

(ii) 100 percent of the PBGC maximum benefit guarantee amount (as defined in § 1.436-1(d)(3)(iii)(C) of the Treasury Regulations).

The limitation set forth in this Section 1(a) does not apply to any payment of a benefit which under § 411(a)(11) of the Internal Revenue Code may be immediately distributed without the consent of the participant. If an optional form of benefit that is otherwise available under the terms of the plan is not available to a participant or beneficiary as of the annuity starting date because of the application of the requirements of this Section 1(a), the participant or beneficiary is permitted to elect to bifurcate the benefit into unrestricted and restricted portions (as described in § 1.436-1(d)(3)(iii)(D) of the Treasury Regulations). The participant or beneficiary may also elect any other optional form of benefit otherwise available under the plan at that annuity starting date that would satisfy the 50 percent/PBGC maximum benefit guarantee amount limitation described in

11

this Section 1(a), or may elect to defer the benefit in accordance with any general right to defer commencement of benefits under the plan.

(b) <u>Plan Amendments Increasing Liability for Benefits</u>.  No amendment to the plan that has the effect of increasing liabilities of the plan by reason of increases in benefits, establishment of new benefits, changing the rate of benefit accrual, or changing the rate at which benefits become nonforfeitable shall take effect in a plan year if the adjusted funding target attainment percentage for the plan year is:

(i) Less than 80 percent; or

(ii) 80 percent or more, but would be less than 80 percent if the benefits attributable to the amendment were taken into account in determining the adjusted funding target attainment percentage.

The limitation set forth in this Section 1(b) does not apply to any amendment to the plan that provides a benefit increase under a plan formula that is not based on compensation, provided that the rate of such increase does not exceed the contemporaneous rate of increase in the average wages of participants covered by the amendment.

2. <u>Limitations Applicable If the Plan's Adjusted Funding Target Attainment Percentage Is Less Than 60 Percent</u>.  Notwithstanding any other provisions of the plan, if the plan's adjusted funding target attainment percentage for a plan year is less than 60 percent (or would be less than 60 percent to the extent described in Section 2(b) below), then the limitations in this Section 2 apply.

(a) <u>Single Sums, Other Accelerated Forms of Distribution, and Other Prohibited Payments Not Permitted</u>.  A participant or beneficiary is not permitted to elect, and the plan shall not pay, a single sum payment or other optional form of benefit that includes a prohibited payment with an annuity starting date on or after the applicable section 436 measurement date, and the plan shall not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment.  The limitation set forth in this Section 2(a) does not apply to any payment of a benefit which under § 411(a)(11) of the Internal Revenue Code may be immediately distributed without the consent of the participant.

(b) <u>Shutdown Benefits and Other Unpredictable Contingent Event Benefits Not Permitted to Be Paid</u>.  An unpredictable contingent event benefit with respect to an unpredictable contingent event occurring during a plan year shall not be paid if the adjusted funding target attainment percentage for the plan year is:

(i) Less than 60 percent; or

12

(ii) 60 percent or more, but would be less than 60 percent if the adjusted funding target attainment percentage were redetermined applying an actuarial assumption that the likelihood of occurrence of the unpredictable contingent event during the plan year is 100 percent.

(c) <u>Benefit Accruals Frozen</u>. Benefit accruals under the plan shall cease as of the applicable section 436 measurement date. In addition, if the plan is required to cease benefit accruals under this Section 2(c), then the plan is not permitted to be amended in a manner that would increase the liabilities of the plan by reason of an increase in benefits or establishment of new benefits.

3. <u>Limitations Applicable If the Plan Sponsor Is In Bankruptcy</u>. Notwithstanding any other provisions of the plan, a participant or beneficiary is not permitted to elect, and the plan shall not pay, a single sum payment or other optional form of benefit that includes a prohibited payment with an annuity starting date that occurs during any period in which the plan sponsor is a debtor in a case under title 11, United States Code, or similar Federal or State law, except for payments made within a plan year with an annuity starting date that occurs on or after the date on which the plan's enrolled actuary certifies that the plan's adjusted funding target attainment percentage for that plan year is not less than 100 percent. In addition, during such period in which the plan sponsor is a debtor, the plan shall not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment, except for payments that occur on a date within a plan year that is on or after the date on which the plan's enrolled actuary certifies that the plan's adjusted funding target attainment percentage for that plan year is not less than 100 percent. The limitation set forth in this Section 3 does not apply to any payment of a benefit which under § 411(a)(11) of the Internal Revenue Code may be immediately distributed without the consent of the participant.

4. <u>Provisions Applicable After Limitations Cease to Apply</u>. (a) <u>Resumption of Prohibited Payments</u>. If a limitation on prohibited payments under Section 1(a), Section 2(a), or Section 3 applied to the plan as of a section 436 measurement date, but that limit no longer applies to the plan as of a later section 436 measurement date, then that limitation does not apply to benefits with annuity starting dates that are on or after that later section 436 measurement date.

(b) <u>Resumption of Benefit Accruals</u>. If a limitation on benefit accruals under Section 2(c) applied to the plan as of a section 436 measurement date, but that limitation no longer applies to the plan as of a later section 436 measurement date, then benefit accruals shall resume prospectively and that limitation does not apply to benefit accruals that are based on service on or after that later section 436 measurement date, except as otherwise provided under the plan. The plan shall comply with the rules relating to partial years of participation

and the prohibition on double proration under Department of Labor regulation 29 CFR § 2530.204-2(c) and (d).

 (c) <u>Shutdown and Other Unpredictable Contingent Event Benefits</u>. If an unpredictable contingent event benefit with respect to an unpredictable contingent event that occurs during the plan year is not permitted to be paid after the occurrence of the event because of the limitation of Section 2(b), but is permitted to be paid later in the same plan year (as a result of additional contributions or pursuant to the enrolled actuary's certification of the adjusted funding target attainment percentage for the plan year that meets the requirements of § 1.436-1(g)(5)(ii)(B) of the Treasury Regulations), then that unpredictable contingent event benefit shall be paid, retroactive to the period that benefit would have been payable under the terms of the plan (determined without regard to Section 2(b)). If the unpredictable contingent event benefit does not become payable during the plan year in accordance with the preceding sentence, then the plan is treated as if it does not provide for that benefit.

 (d) <u>Treatment of Plan Amendments That Do Not Take Effect</u>. If a plan amendment does not take effect as of the effective date of the amendment because of the limitation of Section 1(b) or Section 2(c), but is permitted to take effect later in the same plan year (as a result of additional contributions or pursuant to the enrolled actuary's certification of the adjusted funding target attainment percentage for the plan year that meets the requirements of § 1.436-1(g)(5)(ii)(C) of the Treasury Regulations), then the plan amendment must automatically take effect as of the first day of the plan year (or, if later, the original effective date of the amendment). If the plan amendment cannot take effect during the same plan year, then it shall be treated as if it were never adopted, unless the plan amendment provides otherwise.

 5. <u>Notice Requirement</u>. See section 101(j) of ERISA for rules requiring the plan administrator of a single employer defined benefit pension plan to provide a written notice to participants and beneficiaries within 30 days after certain specified dates if the plan has become subject to a limitation described in Section 1(a), Section 2, or Section 3.

 6. <u>Methods to Avoid or Terminate Benefit Limitations</u>. See § 436(b)(2), (c)(2), (e)(2), and (f) of the Internal Revenue Code and § 1.436-1(f) of the Treasury Regulations for rules relating to employer contributions and other methods to avoid or terminate the application of the limitations set forth in Sections 1 through 3 for a plan year. In general, the methods a plan sponsor may use to avoid or terminate one or more of the benefit limitations under Sections 1 through 3 for a plan year include employer contributions and elections to increase the amount of plan assets which are taken into account in determining the adjusted funding target attainment percentage, making an employer contribution that is specifically designated as a current year contribution that is made to avoid or terminate application of certain of the benefit limitations, or providing security to the plan.

7. <u>Special Rules</u>.  (a) <u>Rules of Operation for Periods Prior to and After Certification of Plan's Adjusted Funding Target Attainment Percentage</u>.  (i) <u>In General</u>.  Section 436(h) of the Internal Revenue Code and § 1.436-1(h) of the Treasury Regulations set forth a series of presumptions that apply (1) before the plan's enrolled actuary issues a certification of the plan's adjusted funding target attainment percentage for the plan year and (2) if the plan's enrolled actuary does not issue a certification of the plan's adjusted funding target attainment percentage for the plan year before the first day of the 10th month of the plan year (or if the plan's enrolled actuary issues a range certification for the plan year pursuant to § 1.436-1(h)(4)(ii) of the Treasury Regulations but does not issue a certification of the specific adjusted funding target attainment percentage for the plan by the last day of the plan year).  For any period during which a presumption under § 436(h) of the Internal Revenue Code and § 1.436-1(h) of the Treasury Regulations applies to the plan, the limitations under Sections 1 through 3 are applied to the plan as if the adjusted funding target attainment percentage for the plan year were the presumed adjusted funding target attainment percentage determined under the rules of § 436(h) of the Internal Revenue Code and § 1.436-1(h)(1), (2), or (3) of the Treasury Regulations.  These presumptions are set forth in Section 7(a)(ii) though (iv).

(ii) <u>Presumption of Continued Underfunding Beginning First Day of Plan Year</u>.  If a limitation under Section 1, 2, or 3 applied to the plan on the last day of the preceding plan year, then, commencing on the first day of the current plan year and continuing until the plan's enrolled actuary issues a certification of the adjusted funding target attainment percentage for the plan for the current plan year, or, if earlier, the date Section 7(a)(iii) or Section 7(a)(iv) applies to the plan:

(1) The adjusted funding target attainment percentage of the plan for the current plan year is presumed to be the adjusted funding target attainment percentage in effect on the last day of the preceding plan year; and

(2) The first day of the current plan year is a section 436 measurement date.

(iii) <u>Presumption of Underfunding Beginning First Day of 4th Month</u>.  If the plan's enrolled actuary has not issued a certification of the adjusted funding target attainment percentage for the plan year before the first day of the 4th month of the plan year and the plan's adjusted funding target attainment percentage for the preceding plan year was either at least 60 percent but less than 70 percent or at least 80 percent but less than 90 percent, or is described in § 1.436-1(h)(2)(ii) of the Treasury Regulations, then, commencing on the first day of the 4th month of the current plan year and continuing until the plan's enrolled actuary issues a certification of the adjusted funding target attainment percentage for the plan for the current plan year, or, if earlier, the date Section 7(a)(iv) applies to the plan:

15

(1) The adjusted funding target attainment percentage of the plan for the current plan year is presumed to be the plan's adjusted funding target attainment percentage for the preceding plan year reduced by 10 percentage points; and

(2) The first day of the 4th month of the current plan year is a section 436 measurement date.

(iv) <u>Presumption of Underfunding On and After First Day of 10th Month</u>. If the plan's enrolled actuary has not issued a certification of the adjusted funding target attainment percentage for the plan year before the first day of the 10th month of the plan year (or if the plan's enrolled actuary has issued a range certification for the plan year pursuant to § 1.436-1(h)(4)(ii) of the Treasury Regulations but has not issued a certification of the specific adjusted funding target attainment percentage for the plan by the last day of the plan year), then, commencing on the first day of the 10th month of the current plan year and continuing through the end of the plan year:

(1) The adjusted funding target attainment percentage of the plan for the current plan year is presumed to be less than 60 percent; and

(2) The first day of the 10th month of the current plan year is a section 436 measurement date.

(b) <u>New Plans, Plan Termination, Certain Frozen Plans, and Other Special Rules</u>. (i) <u>First 5 Plan Years</u>. The limitations in Section 1(b), Section 2(b), and Section 2(c) do not apply to a new plan for the first 5 plan years of the plan, determined under the rules of § 436(i) of the Internal Revenue Code and § 1.436-1(a)(3)(i) of the Treasury Regulations.

(ii) <u>Plan Termination</u>. The limitations on prohibited payments in Section 1(a), Section 2(a), and Section 3 do not apply to prohibited payments that are made to carry out the termination of the plan in accordance with applicable law. Any other limitations under this section of the plan do not cease to apply as a result of termination of the plan.

(iii) <u>Exception to Limitations on Prohibited Payments Under Certain Frozen Plans</u>. The limitations on prohibited payments set forth in Sections 1(a), 2(a), and 3 do not apply for a plan year if the terms of the plan, as in effect for the period beginning on September 1, 2005, and continuing through the end of the plan year, provide for no benefit accruals with respect to any participants. This Section 7(b)(iii) shall cease to apply as of the date any benefits accrue under the plan or the date on which a plan amendment that increases benefits takes effect.

(iv) <u>Special Rules Relating to Unpredictable Contingent Event Benefits and Plan Amendments Increasing Benefit Liability</u>. During any period in which

16

none of the presumptions under Section 7(a) apply to the plan and the plan's enrolled actuary has not yet issued a certification of the plan's adjusted funding target attainment percentage for the plan year, the limitations under Section 1(b) and Section 2(b) shall be based on the inclusive presumed adjusted funding target attainment percentage for the plan, calculated in accordance with the rules of § 1.436-1(g)(2)(iii) of the Treasury Regulations.

(c) <u>Special Rules Under PRA 2010</u>.  (i) <u>Payments Under Social Security Leveling Options</u>.  For purposes of determining whether the limitations under Section 1(a) or 2(a) apply to payments under a social security leveling option, within the meaning of § 436(j)(3)(C)(i) of the Internal Revenue Code, the adjusted funding target attainment percentage for a plan year shall be determined in accordance with the "Special Rule for Certain Years" under § 436(j)(3) of the Internal Revenue Code and any Treasury Regulations or other published guidance thereunder issued by the Internal Revenue Service.

(ii) <u>Limitation on Benefit Accruals</u>.  For purposes of determining whether the accrual limitation under Section 2(c) applies to the plan, the adjusted funding target attainment percentage for a plan year shall be determined in accordance with the "Special Rule for Certain Years" under § 436(j)(3) of the Internal Revenue Code (except as provided under section 203(b) of the Preservation of Access to Care for Medicare Beneficiaries and Pension Relief Act of 2010, if applicable).

(d) <u>Interpretation of Provisions</u>.  The limitations imposed by this section of the plan shall be interpreted and administered in accordance with § 436 of the Internal Revenue Code and § 1.436-1 of the Treasury Regulations.

8. <u>Definitions</u>. The definitions in the following Treasury Regulations apply for purposes of Sections 1 through 7: § 1.436-1(j)(1) defining adjusted funding target attainment percentage; § 1.436-1(j)(2) defining annuity starting date; § 1.436-1(j)(6) defining prohibited payment; § 1.436-1(j)(8) defining section 436 measurement date; and § 1.436-1(j)(9) defining an unpredictable contingent event and an unpredictable contingent event benefit.

9. <u>Effective Date</u>.  The rules in Sections 1 through 8 are effective for plan years beginning after December 31, 2007.

***

(Part II)

<u>If the plan is a multiple employer plan, one of the following two provisions must be added to Part I of the sample plan amendment, depending on whether § 413(c)(4)(A) of the Internal Revenue Code applies to the plan.</u>

17

<u>A multiple employer plan to which § 413(c)(4)(A) of the Internal Revenue Code applies, including a plan for which the election described in § 413(c)(4)(B) has been made, must add the following provision to Part I of the sample amendment</u>:

The rules in Sections 1 through 8 apply separately to each employer under the plan, as if each such employer maintained a separate plan.

<u>A multiple employer plan to which § 413(c)(4)(A) of the Internal Revenue Code does not apply must add the following provision to Part I of the sample amendment</u>:

The rules in Sections 1 through 8 apply as if all participants in the plan are employed by a single employer.

***

(Part III)

The following are optional provisions that may be added to Part I of the sample amendment:

<u>Optional Provision to Allow Full Single Sum Payments for Participants and Beneficiaries Who Previously Could Only Elect Half Single Sums (to be added to Section 4(a))</u>:

In addition, after the section 436 measurement date on which the limitation on prohibited payments under Section 1(a) ceases to apply to the plan, any participant or beneficiary who had an annuity starting date within the period during which that limitation applied to the plan is permitted to make a new election (within 90 days after the section 436 measurement date on which the limit ceases to apply or, if later, 30 days after receiving notice of the right to make such election) under which the form of benefit previously elected is modified at a new annuity starting date to be changed to a single sum payment for the remaining value of the participant or beneficiary's benefit under the plan, subject to the other rules in this section of the plan and applicable requirements of § 401(a) of the Internal Revenue Code, including spousal consent.

<u>Optional Provision to Allow Half Single Sum Payments for Participants and Beneficiaries Who Could Not Elect Single Sums (to be added to Section 4(a))</u>:

In addition, after the section 436 measurement date on which the limitation on prohibited payments under Section 2(a) ceases to apply to the plan, any participant or beneficiary who had an annuity starting date within the period during which that limitation applied to the plan is permitted to make a new election (within 90 days after the section 436 measurement date on which the limit ceases to apply or, if later, 30 days after receiving notice of the right to make

such election) under which the form of benefit previously elected is modified at a new annuity starting date to be changed to a single sum payment for the remaining value of the participant's or beneficiary's benefit under the plan, subject to the other rules in this section of the plan (including Section 1(a)) and applicable requirements of § 401(a) of the Internal Revenue Code, including spousal consent.

Optional Provision to Allow Special Optional Forms of Benefit When Only Half Single Sum Payments Are Permitted to be Paid (to be added to Section 1(a)):

During a period when Section 1(a) applies to the plan, participants and beneficiaries are permitted to elect payment in any optional form of benefit otherwise available under the plan that provides for the current payment of the unrestricted portion of the benefit (as described in § 1.436-1(d)(3)(iii)(D) of the Treasury Regulations), with a delayed commencement for the restricted portion of the benefit (subject to other applicable qualification requirements, such as §§ 411(a)(11) and 401(a)(9) of the Internal Revenue Code).

Optional Provision to Restore Accruals (to be added to Section 4(b)):

In addition, benefit accruals that were not permitted to accrue because of the application of Section 2(c) shall be restored when that limitation ceases to apply if the continuous period of the limitation was 12 months or less and the plan's enrolled actuary certifies that the adjusted funding target attainment percentage for the plan year would not be less than 60 percent taking into account any restored benefit accruals for the prior plan year.