IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Bankr. Case No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |
| Nortel Networks Inc. | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 10-55934 (KG) |
| Perot Systems Corporation, | Hearing Date: January 3, 2013 at 10:00 a.m. (ET) |
| Defendant. | Objection Deadline: December 27, 2012 at 4:00 p.m. (ET) |

**U.S. DEBTORS' MOTION PURSUANT TO BANKRUPTCY
RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
OF SETTLEMENT OF AVOIDANCE CLAIMS BY AND BETWEEN
NORTEL NETWORKS INC. AND PEROT SYSTEMS CORPORATION**

Nortel Networks Inc. ("Plaintiff" or "NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "U.S. Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 502, 547, and 550 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the U.S. Debtors to enter into and approving a stipulation (the "Stipulation") with Perot Systems Corporation ("Defendant" or "Perot," and the Defendant together with Plaintiff,

---

[1] In addition to Nortel Networks Inc., the U.S. Debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. Additional information regarding the U.S. Debtors can be found in their respective Chapter 11 petitions, which are available at http://chapter11.epiqsystems.com/nortel.

the "Parties" and each individually, a "Party"), in the form attached hereto as **Exhibit B**, resolving the adversary proceeding entitled Nortel Networks Inc. v. Dell Services Corp. f/k/a Perot Systems Corp., Adv. Proc. No. 10-55934 (KG) (the "Adversary Proceeding") and granting such other and further relief as the Court (the "Court" or the "Bankruptcy Court") deems just and proper.  In support of this Motion, the U.S. Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3. On January 14, 2009 (the "Petition Date"), the U.S. Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The U.S. Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the U.S. Debtors [Main D.I.s 141, 142],[3] and an ad hoc group of bondholders has been organized (the "Bondholder Group").

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other U.S. Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3] Citations herein to the main bankruptcy case (Case No. 09-10138) are in the form "Main D.I. __." Citations herein to the docket in this adversary proceeding (Adv. Pro. No. 10-55937) are in the form "Adv. D.I. __."

2

5.   On the Petition Date, the U.S. Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the U.S. Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "CCAA Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.   Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the U.S. Debtors, available at http://dm.epiq11.com/nortel.

---

[4]  The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]  The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**Relief Requested**

7.     By this Motion, the U.S. Debtors seek an order, pursuant to sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Stipulation, (ii) authorizing but not directing the U.S. Debtors to take all actions reasonably appropriate to perform their obligations under the Stipulation, and (iii) granting them such other and further relief as the Bankruptcy Court deems just and proper.

**Facts Relevant to this Motion**

8.     Defendant supplies Plaintiff with certain information technology-related services.

9.     On or about September 28, 2009, Defendant filed against Plaintiff a general unsecured pre-petition proof of claim in the amount of $656,093.62 designated as Claim No. 5394 in Plaintiff's bankruptcy case (the "NNI Claim").

10.     Plaintiff's books and records indicate that within ninety (90) days prior to the Petition Date, Plaintiff made one or more transfers of an interest in its property to or for the benefit of Defendant in the aggregate amount of $1,216,339.86 (the "Subject Transfers").

11.     On December 6, 2010, Plaintiff instituted this Adversary Proceeding by filing the *Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims* (the "Complaint") pursuant to sections 547, 550, 551 and 502(d) of the Bankruptcy Code against Dell Services Corporation f/k/a Perot Systems Corporation, in which it sought to avoid and recover the Subject Transfers (the "Avoidance Claim") [Adv. D.I. 1].

12.     On January 14, 2011, Plaintiff filed the *Amended Complaint To Avoid And Recover Preferential Transfers And To Disallow Claims* (the "Amended Complaint") which substituted Perot Systems Corporation for Dell Services Corporation as a party to the Adversary Proceeding [Adv. D.I. 6].

13. On February 14, 2011, Perot filed the *Answer Of Perot Systems Corporation To Amended Complaint To Avoid Preferential Transfers And To Disallow Claims* [Adv. D.I. 8] (the "Perot Answer") in the Adversary Proceeding, denying certain allegations and asserting various defenses.

14. Since the Amended Complaint and the Perot Answer were filed, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost, risks, and burden that would be imposed by further litigation of the Avoidance Claim and the NNI Claim, have agreed to settle the Avoidance Claim and the NNI Claim on the terms set forth in the Stipulation, attached hereto as **Exhibit B**.

15. Pursuant to the Stipulation[6] and subject to the Bankruptcy Court's approval, the Plaintiff has reached a compromise with Perot resolving the Avoidance Claim and the NNI Claim such that the NNI Claim shall be allowed as a general unsecured claim against NNI in the amount of $634,700 (the "Allowed NNI Claim").

16. In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, Defendant has agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release and forever discharge the U.S. Debtors, their respective past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "U.S. Debtor Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Defendant now has, had, or

---

[6] In the event of any discrepancy between the description of the Stipulation herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

may have had, against any of the U.S. Debtor Releasees in connection with the Avoidance Claim, the Adversary Proceeding and/or any transaction described or referred to in the Amended Complaint in the Adversary Proceeding, including without limitation, any and all claims arising under section 502(h) of the Bankruptcy Code.

17. In consideration of the mutual promises and covenants set forth in the Stipulation and other good and valuable consideration, the U.S. Debtors have agreed, subject to the Bankruptcy Court's approval, to, *inter alia*, release and forever discharge Perot, its past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, directors, officers, employees, agents, and attorneys, and each of their predecessors, successors and assigns (collectively, the "Defendant Releasees"), from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the U.S. Debtors now have, had, or may have had, against any of the Defendant Releasees (1) in connection with the Avoidance Claim, the Adversary Proceeding and/or any transaction described or referred to in the Amended Complaint in the Adversary Proceeding and/or (2) that can be, or could have been, brought under or pursuant to any section of chapter 5 of the Bankruptcy Code.

### Basis for Relief

18. The U.S. Debtors seek authorization for NNI to enter into the Stipulation under sections 105(a), 502, 547, and 550 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.

19. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). Courts in this District have also recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

20. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants

7

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

21.   The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

22.   The U.S. Debtors respectfully submit that the Martin Factors weigh heavily in favor of approving the Stipulation.  While Plaintiff is prepared to litigate the Avoidance Claim, Defendant has interposed certain defenses, including new value and ordinary course of business defenses pursuant to 11 U.S.C. § 547(c)(2) and (c)(4).  Specifically, Defendant has produced documentation to substantiate its claim that it provided significant new value to the Plaintiff following the dates on which the Subject Transfers were made that vastly reduces the amount that Plaintiff might hope to recover in the event the Action were to proceed to trial.  In addition, Defendant has contended and the data supports the contention that the large majority of the remaining transfers were made within time frames consistent with the Parties' prior dealings.  As a result, based on the exchange of information and accompanying discussions with Defendant, and the U.S. Debtors' evaluation of Defendant's defenses, the U.S. Debtors have concluded that any potential value that could be obtained through a litigation of the Avoidance Claim on the merits would likely be outweighed by the time, costs and risks associated therewith.

23. Pursuant to the settlement reflected in the Stipulation, and upon the Effective Date (as defined in the Stipulation), Perot will have an allowed general unsecured claim against NNI in the reduced amount of $634,700. This resolution fairly balances the Plaintiff's likelihood of success on the merits of the Avoidance Claim against its interest in avoiding the uncertainty of litigation.

24. In addition, further litigation of the Avoidance Claim would result in the U.S. Debtors' expenditure of considerable additional legal fees. These would include fees associated with formal discovery, retention of an expert, briefing of dispositive motions and potentially conducting a trial of the Avoidance Claim. In the absence of a settlement, the U.S. Debtors would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estates' efforts to resolve the matters that are essential to the ultimate resolution of these cases.

25. Finally, the interests of the creditors weigh in favor of approval of the Stipulation. The U.S. Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Avoidance Claim and the avoidance of litigation risk and substantial legal expenses that would be incurred if the Avoidance Claim were to be further litigated.

26. In light of the foregoing, the U.S. Debtors respectfully seek authorization for the Plaintiff to enter into the Stipulation and approval of the Stipulation.

## Notice

27. Notice of the Motion has been given via first class mail to (i) the Defendant; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The U.S. Debtors submit that under the circumstances no other or further notice is necessary.

**<u>No Prior Request</u>**

28. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the U.S. Debtors respectfully request that this Court (i) grant this Motion, approve the Stipulation, and authorize the U.S. Debtors to enter into the Stipulation; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: November 30, 2012<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>      */s/ Tamara K. Minott*      <br>Donna L. Culver (No. 2983)<br>Derek C. Abbott (No. 3376)<br>Ann C. Cordo (No. 4817)<br>Tamara K. Minott (No. 5643)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |