## EXHIBIT A

Settlement Agreement

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Settlement Agreement") is made and entered into as of December 14, 2012, by and among NORTEL NETWORKS INC., NORTEL NETWORKS CAPITAL CORPORATION, NORTEL ALTSYSTEMS INC., NORTEL ALTSYSTEMS INTERNATIONAL INC., XROS, INC., SONOMA SYSTEMS, QTERA CORPORATION, CORETEK, INC., NORTEL NETWORKS APPLICATIONS MANAGEMENT SOLUTIONS INC., NORTEL NETWORKS OPTICAL COMPONENTS INC., NORTEL NETWORKS HPOCS INC., ARCHITEL SYSTEMS (U.S.) CORPORATION, NORTEL NETWORKS INTERNATIONAL INC., NORTHERN TELECOM INTERNATIONAL INC., NORTEL NETWORKS CABLE SOLUTIONS INC., NORTEL NETWORKS (CALA) INC. (collectively, the "Debtors"), and the AD HOC GROUP OF BENEFICIARIES OF THE NORTEL NETWORKS U.S. DEFERRED COMPENSATION PLAN (as defined below, the "Ad Hoc Group") and Robert Horne ("Horne"), Mason James Young ("Young"), Ellen Bovarnick ("Bovarnick"), Charla Crisler ("Crisler"), Bart Kohnhorst ("Kohnhorst"), Brian Page ("Page"), and Benjamin Warren ("Warren") (Horne, Young, Bovarnick, Crisler, Kohnhorst, Page, and Warren, collectively, the "Steering Committee"), and the Official Committee of Unsecured Creditors (the "Committee") (the Debtors, the Committee, the Ad Hoc Group, and the Steering Committee each a "Party" and, collectively, the "Parties").

## WITNESSETH

WHEREAS, the Debtors are debtors in Chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No. 09-10138 (KG) (collectively, the "Bankruptcy Case"), which Bankruptcy Case was commenced on January 14, 2009 (the "Petition Date");

WHEREAS, The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed the Committee as the Official Committee of Unsecured Creditors in the Bankruptcy Case [D.I.s 141, 142];

WHEREAS, on or about January 1, 2000, Nortel Networks, Inc. (the "Company" or "NNI") established the Nortel Networks U.S. Deferred Compensation Plan (the "DCP" or the "Plan"), which, among other things, merged and amended the Bay Networks, Inc. Deferred Compensation Plan (the "Bay Networks Plan") and the plan formerly known as the Northern Telecom Inc. Agreement Regarding the Deferral Option of the Senior Management Incentive Award Plan and the Executive Management Incentive Plan, dated October 1996 (the "SMIAP");

WHEREAS, the DCP was subsequently amended several times, including on or about March 13, 2000; on or about January 1, 2001; on or about January 1, 2005; on or about January 18, 2008; on or about December 23, 2008; and on or about December 4, 2009;

WHEREAS, in connection with the establishment of the Plan, NNI, as grantor, and U.S. Bank National Association ("U.S. Bank"), as trustee, established a grantor rabbi trust (the "Plan Trust"), pursuant to the Nortel Networks U.S. Deferred Compensation Plan Trust Agreement dated January 1, 2000 (the "Trust Agreement");

WHEREAS, from time to time, NNI set aside funds in the Trust with respect to deferred compensation elections by participants in the Plan;

WHEREAS, on December 22, 2010, the Debtors filed the *Debtors' Motion For An Order Pursuant to 11 U.S.C. §§ 105, 541, 542 And 543 And Bankruptcy Rule 9019 (I) Approving The* Stipulation *By And Between NNI and U.S. Bank National Association, (II) Directing U.S. Bank National Association to Turn Over Property to NNI, and (III) Granting Related Relief Related to the Nortel Networks U.S. Deferred Compensation Plan* (the "Turnover Motion") [D.I. 4638], which, inter alia, sought approval of a stipulation between NNI and U.S. Bank that the assets in the Trust (the "Trust Assets") would be turned over to NNI as assets of NNI's bankruptcy estate (the "Bankruptcy Estate") subject to the claims of its unsecured creditors.

WHEREAS, on December 31, 2010 (the "Termination Date"), the Plan was terminated;

WHEREAS, the Plan states that it was "intended to be an unfunded, deferred compensation plan, which is not qualified under Section 401(a) of the Internal Revenue Code" and that "Plan participants shall have the status of unsecured creditors of the Company with respect to the payment of Plan benefits," and the Trust Agreement provides that participants in the Plan "have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust," and "[a]ny rights created under the Plan and this Trust Agreement shall be unsecured contractual rights of Plan participants and their beneficiaries against the Employers";

WHEREAS, the Ad Hoc Group consists of participants in the Plan and/or beneficiaries of participants in the Plan, whose members are listed in Exhibit 1 hereto, and who have retained Bernstein, Shur, Sawyer & Nelson to represent them in connection with claims concerning the Plan and who have authorized the Steering Committee to act on their behalf in connection with such claims, including in executing this Settlement Agreement;

WHEREAS, the Ad Hoc Group and the Steering Committee contend that the Plan is not a "top hat" plan, but is an "employee benefit plan" under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and that the Plan is subject to ERISA's substantive provisions, including the "exclusive benefit," "exclusive purpose" and "non-inurement" provisions, because the Plan is not a "top hat" plan exempt from such provisions. The Ad Hoc Group and the Steering Committee contend that, regardless of any language in the Plan or Plan Trust, under ERISA the Plan Assets are held for the exclusive benefit of the Beneficiaries, and cannot be used for any purpose other than to pay benefits to Beneficiaries;

WHEREAS, the Debtors dispute all such contentions and contend that the Plan and the Plan Trust were properly administered and the Trust Assets are property of the Bankruptcy Estate;

WHEREAS, on February 7, 2011, the Ad Hoc Group (as it was then comprised) filed an objection to the Turnover Motion [D.I. 4897] (the "Objection to the Turnover Motion");

WHEREAS, on December 23, 2011, the members of the Steering Committee, individually, and the Ad Hoc Group filed a class action complaint for declaratory judgment and other equitable relief (the "Complaint") commencing an adversary proceeding against the Debtors and certain other parties under Adversary Case No. 11-54007 (KG) (the "Adversary

2

Proceeding") on their behalf and on behalf of a class of all similarly-situated persons who were participants in and/or are beneficiaries of participants in the Plan [Adv. Proc. D.I. 1];

WHEREAS, U.S. Bank and the individual defendants (the "Plan Committee Defendants") named in the Complaint filed in the Adversary Proceeding were dismissed, without prejudice [Adv. Proc. D.I. 16, 35], and the Debtors are the only remaining defendants in the Adversary Proceeding;

WHEREAS, on January 31, 2012, counsel for the Debtors agreed to accept service of the Complaint on behalf of the Debtors;

WHEREAS, on June 20, 2012, the Debtors filed a Motion for Entry of an Order Approving Settlement Procedures to Resolve Claims of Beneficiaries of the Nortel Networks U.S. Deferred Compensation Plan (the "Settlement Procedures Motion"). [D.I. 7876]. The Ad Hoc Group filed an Objection to the Settlement Procedures Motion on July 3, 2012. [D.I. 7937] After a hearing on July 11, 2012, the Court deferred decision on the Settlement Procedures Motion, pending a hearing on the Class Certification Motion (as defined below);

WHEREAS, on July 9, 2012, the Debtors filed a motion to dismiss the Complaint (the "Motion to Dismiss") [Adv. Proc. D.I. 37] and on September 28, 2012, the Ad Hoc Group and the Steering Committee filed an objection to the Motion to Dismiss [Adv. Proc. D.I. 90];

WHEREAS, on July 11, 2012, the Ad Hoc Group and the Steering Committee filed a motion for class certification (the "Class Certification Motion") [Adv. Proc. D.I. 40];

WHEREAS, the Motion to Dismiss and Class Certification Motion remain pending;

WHEREAS, the Ad Hoc Group and Steering Committee have engaged in extensive discovery in connection with the Turnover Motion and the Adversary Proceeding;

WHEREAS, 325 employees or former employees of the Debtors who participated in the Plan have positive nominal account balances under the Plan as of the Petition Date (such individuals and/or their beneficiaries, the "Participants");

WHEREAS, as of October 31, 2012, the balance of assets held in the Plan Trust (the "Trust Assets") was approximately $42,137,471;

WHEREAS, the Debtors, U.S. Bank, the Ad Hoc Group, and the Steering Committee have agreed to settle all of the disputes and differences between them by executing this Settlement Agreement;

WHEREAS, the Ad Hoc Group and Steering Committee have conditioned such settlement on entry of an order that finally settles, resolves and releases the claims of all Participants in the manner contemplated by this Settlement Agreement; and

WHEREAS, the Parties recognize that upon the effectiveness of this Settlement Agreement, their respective legal rights concerning the herein mentioned disputes and differences will be relinquished.

NOW THEREFORE, for good and valuable consideration as detailed herein, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, but subject to the express approval by the Bankruptcy Court, agree as follows:

**1.**     **Bankruptcy Court Approval and Jurisdiction.**     The terms and conditions of this Settlement Agreement will only be effective upon satisfaction of the following conditions: (i) signature by the Parties hereto; (ii) entry by the Bankruptcy Court of an Order approving this Settlement Agreement, including the settlement of and release of all claims subject to the Participants' Release and the Debtors Release (each as defined below), and directing such payments hereunder pursuant to 11 U.S.C. § 503(b)(1)(A) and Fed. R. Bankr. P. 9019 and in the form attached hereto as <u>Exhibit 2</u> (the "<u>Approval Order</u>"), without modification (absent consent by each of the Parties hereto to such modification), which Order shall provide, inter alia, that the terms of this Settlement Agreement are binding upon all Participants and that U.S. Bank shall turn over the Trust Assets to NNI; and (iii) the Approval Order becoming final and not subject to further modification, reversal or appeal (the "<u>Final Order</u>").  For the avoidance of doubt, and without limiting the foregoing, the Approval Order shall not be deemed a Final Order until the expiration of the period for filing a notice of appeal of the Approval Order with no appeal having been filed.  If any Participant or other party objects to the proposed Approval Order and such objecting Participant or party files a notice of appeal, the Approval Order shall not be deemed a Final Order until any such appeal is fully resolved or withdrawn with prejudice and the time for any further appeal has expired.  The date upon which all of items (i) through (iii) above have been satisfied shall be deemed the effective date of this Settlement Agreement (the "<u>Effective Date</u>").  In connection with the Bankruptcy Court's approval of this Settlement Agreement and for the purpose of having any such settlement bind all Participants in the Plan, the Debtors, the Steering Committee, and the Ad Hoc Group will jointly request, on notice to all interested parties, the Bankruptcy Court to hear and determine their motion for approval of this Settlement Agreement and directing such payments thereunder pursuant to 11 U.S.C. § 503(b)(1)(A) and Fed. R. Bankr. P. 9019.

**2.**     **The Settlement Payment Terms.**     The Debtors will make the payments described below as follows:

> a.     Within three (3) business days following the occurrence of the Effective Date, $3,083,630.87 shall be paid to counsel for the Steering Committee and the Ad Hoc Group, Bernstein, Shur, Sawyer & Nelson, in payment of legal fees and expenses, including, without limitation, to be used for payment of fees and expenses of local counsel Blank Rome (the "<u>Attorney's Fees Amount</u>").  This amount will not be treated as a distribution to the Participants in the Plan, but rather as a separate award of attorneys' fees and costs agreed to be paid by the Debtors in connection with the settlement of these disputes.  Bernstein, Shur, Sawyer & Nelson and Blank Rome shall have no further claim against the Debtors for any fees or expenses either under this Settlement Agreement, as counsel to the Steering Committee and the Ad Hoc Group, pursuant to § 503(b) of the Bankruptcy Code or otherwise. To the extent permitted under the Approval Order, Bernstein, Shur, Sawyer & Nelson shall pay out of the Attorney's Fees Amount the sum of $5,000 to each member of the

Steering Committee as reasonable compensation for having served in that capacity and as a named plaintiff in the Adversary Proceeding, including in regard of expenses that may have been incurred in connection therewith.

b.      Within sixty (60) days following the occurrence of the Effective Date (such date, the "Payment Date"), except as expressly set forth below, an aggregate of $31,166,369.13 (the "Settlement Amount"), minus any withholdings for applicable taxes, shall be paid to the Participants in the Plan.  Each Participant shall receive a distribution (after withholdings for any applicable taxes) of the greater of (a) 97% of his/her nominal account balance in the Plan as of the Petition Date or (b) 73.65% of his/her nominal account balance in the Plan as of December 31, 2010, as more particularly set forth on Exhibit 3 to this Settlement Agreement (each Participant's share of the Settlement Amount, minus any withholdings, an "Individual Distribution"), provided, however, that in the event that a notice of transfer has been filed in the Bankruptcy Case disclosing that a Participant (such Participant, a "Transferring Participant") has transferred his or her claim relating to the Plan in accordance with Bankruptcy Rule 3001(e) and no timely objection to such transfer has been filed as of the Effective Date or any objections thereto have been resolved on or prior to the Effective Date, the Participant's transferee as disclosed in such notice of transfer (such transferee, a "Transferee") shall be paid the Transferring Participant's Individual Distribution.  The term "Participant" as used in this Settlement Agreement shall include such Transferee and such Transferee shall be bound as a Participant by the terms of this Settlement Agreement and all releases set forth herein by operation of the Approval Order.  The Transferring Participant shall not receive any distributions under this Settlement Agreement but shall remain a Participant for all other purposes and remain bound by the terms of and releases set forth in this Settlement Agreement by operation of the Approval Order.  For the avoidance of doubt, the Debtors shall have no obligation to make a payment or distribution to any Participant or Transferee other than the amounts (minus any withholdings) listed on Exhibit 3.  Each Individual Distribution shall be paid, without reduction (other than withholdings) or penalty as may otherwise be required under the Plan, in accordance with the Approval Order.  The Debtors shall issue or cause to be issued a form W-2 or 1099, as appropriate, to each Participant who receives an Individual Distribution.   Each Participant shall submit to the Debtors a fully completed form W-4 and agree that any Individual Distribution will be subject to the appropriate tax rate for all appropriate federal, state, and local taxes related to such distribution, except that if a Participant is a Transferee, such Transferee shall submit to the Debtors a fully completed form W-9 within 30 days after the Effective Date rather than a form W-4.  If, by 30 days after the Effective Date, the Debtors have not received a fully completed form W-4 from any Participant, then the Debtors shall withhold from such Participant's Individual Distribution at the tax rate as

if such Participant were single and claimed zero allowances for all appropriate federal, state and local taxes related to such distribution, unless such Participant is a Transferee, in which case the Debtors will not withhold from the Transferee's Individual Distribution, and the Transferee shall be solely responsible for the reporting of wage payments and the withholding of applicable federal, state and local taxes. If, by 30 days after the Effective Date, the Debtors have not received a fully completed form W-9 from any Transferee, the Debtors shall have no obligation to pay such Transferee's Individual Distribution until 30 days after the Debtors' receipt of a fully completed form W-9 from such Transferee. The Parties agree that for tax purposes each Individual Distribution shall be treated as payment of compensation. All taxes arising from payment of the Settlement Amount and Individual Distributions shall be borne by the Participants; the Debtors and U.S. Bank shall have no liability for any taxes associated with, and no such party makes any guarantee as to the tax treatment of, these distributions.

3.    **Release of the Debtors and Other Parties**.  Upon the Effective Date, by way of the Settlement Agreement and the terms of the Approval Order as entered by the Bankruptcy Court, the Participants (including, without limitation, the Transferring Participants and the Transferees), the Steering Committee, the Ad Hoc Group and each of their respective individual members, and their respective beneficiaries, estates, heirs, transferees, successors, assigns, advisors, attorneys, and all persons acting by or through them, on behalf of themselves and all predecessors, successors, assigns, agents, employees, trustees, estates, heirs, transferees and assigns, fully and forever release and discharge, and waive any argument, assertion, and claim against the Debtors, U.S. Bank, the Plan Committee Defendants, the Committee, and their respective past and present estates, parents, subsidiaries, affiliates, general partners, limited partners and each of their past and present shareholders, administrators (including plan administrators), liquidators, officers, directors, agents, employees, trustees, managers, advisors, attorneys, accountants, fiduciaries (including plan fiduciaries), solicitors, trustees, divisions, affiliates, related companies, and all persons acting by, through or in concert with them, and each of their predecessors, successors and assigns (all of the foregoing, collectively, the "Debtor Released Parties"), from, and acknowledge full and complete satisfaction of, any and all actual and potential claims, disputes, objections, litigations, demands, debts, liabilities, obligations and causes of action of any kind whatsoever, whether in law or in equity, known or unknown, currently viable or arising hereafter, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, suspected or unsuspected by the Steering Committee, the Ad Hoc Group, or the Participants, whether or not asserted in the Complaint and whether or not concealed or hidden, which the Steering Committee, the Ad Hoc Group, and the Participants now have, own or hold, had, owned or held, may have had, held or owned, or hereafter may have, own or hold against the Debtor Released Parties, and each of them or any of them, by reason of any matters which: (a) arise out of, or are in any way connected with or related to the Plan, the Bay Networks Plan, the SMIAP, the Plan Trust or the Trust Assets, including, without limitation, by reason of the administration of the Plan, the Bay Networks Plan or the SMIAP, the sponsorship and ownership of the Plan, the Bay Networks Plan or the SMIAP, the calculation of deferred compensation and nominal account balances under the Plan, the Bay Networks Plan or the SMIAP, eligibility determinations under the Plan, the Bay Networks Plan

6

or the SMIAP, the ownership, use or distribution of the Trust Assets, any payments or distributions made or not made to the Steering Committee, the Ad Hoc Group, or the Participants or their beneficiaries, estates, heirs, transferees, successors and assigns from or on account of the Plan, the Bay Networks Plan or the SMIAP, the Plan Trust or the Trust Assets prior to the date of this Settlement Agreement or payments or distributions made pursuant to this Settlement Agreement; or (b) are the subject of the Turnover Motion or the Adversary Proceeding, including any and all allegations, claims and/or objections made thereunder; or (c) were the subject of the Adversary Proceeding and were voluntarily dismissed and/or are set forth in the Canadian Proofs of Claim (as defined below); or (d) relate to the calculation of any Participant's Individual Distribution (collectively, the "<u>Participants' Release</u>").  The Participants' Release shall be construed as broadly and as generally as possible and as permitted by law, provided, however, that such release shall not affect, reduce or discharge any obligations arising under this Settlement Agreement.  Upon the Effective Date, the Adversary Proceeding will be dismissed against each and every defendant, with prejudice and without costs, and all Proofs of Claim filed by any Participant asserting any claim released by the Participants' Release in the proceedings involving Nortel Networks Corporation and certain affiliates under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended, pending in the Ontario Superior Court of Justice, including, without limitation, proofs of claim asserting claims against the Plan Committee Defendants (collectively, the "<u>Canadian Proofs of Claim</u>") will be withdrawn, with prejudice.

4.    <u>**Release of the Ad Hoc Group, the Steering Committee, and Participants**</u>.
Upon the Effective Date, the Debtors and the Committee, on behalf of themselves and their respective estates, subsidiaries, predecessors, successors, assigns, officers, directors, agents, employees, trustees, advisors, attorneys, divisions, and all persons acting by, through or in concert with them, fully and forever release and discharge, and waive any argument, assertion, and claim against the Participants, the Steering Committee, the Ad Hoc Group and each of its members, and their respective beneficiaries, predecessors, transferees, successors, assigns, agents, employees, trustees, estates, advisors, attorneys, and all persons acting by or through them (all of the foregoing, collectively, the "<u>Ad Hoc Group Released Parties</u>") from, and acknowledge full and complete satisfaction of, any and all claims, disputes, objections, litigations, demands and causes of action of any kind whatsoever, whether in law or in equity, known or unknown, currently viable or arising hereafter, suspected or unsuspected by the Debtors or the Committee, and whether or not concealed or hidden, which the Debtors or the Committee now have, own or hold, had, owned or held, may have had, held or owned, or hereafter may have, own or hold against the Ad Hoc Group Released Parties, and each of them or any of them, by reason of any matters which: (a) arise out of, or are in any way connected with or related to the Plan, the Bay Networks Plan, the SMIAP, the Plan Trust or the Trust Assets, including, without limitation, by reason of the administration of the Plan, the Bay Networks Plan or the SMIAP, the sponsorship and ownership of the Plan, the Bay Networks Plan or the SMIAP, the calculation of deferred compensation and nominal account balances under the Plan, the Bay Networks Plan or the SMIAP, eligibility determinations under the Plan, the Bay Networks Plan or the SMIAP, the ownership, use or distribution of the Trust Assets, any payments or distributions made or not made to the Steering Committee, the Ad Hoc Group, or the Participants or their beneficiaries, estates, heirs, transferees, successors and assigns from or on account of the Plan, the Bay Networks Plan or the SMIAP, the Plan Trust or the Trust Assets prior to the date of this Settlement Agreement or payments or distributions made pursuant to this

7

Settlement Agreement; or (b) are the subject of the Turnover Motion or the Adversary Proceeding, including any and all allegations, claims and/or objections made thereunder (collectively, the "Debtors Release").  The Debtors Release shall be construed as broadly and as generally as possible and as permitted by law, provided, however, that such release shall not affect, reduce or discharge any obligations arising under this Settlement Agreement.  Upon the Effective Date, the Turnover Motion and all objections thereto will be dismissed and withdrawn, with prejudice.

5.    **Effect of Releases.**  Each Party is aware that it may hereafter discover claims or facts in addition to, or different from, those it now knows or believes to be true.  Nevertheless, it is the intention of each of the Debtors, the Committee, the Steering Committee, and the Ad Hoc Group to fully, finally, and forever settle and release any and all controversies between them related to the subject matter hereof, and all claims relative thereto, that do not yet exist, may exist, or heretofore have existed against each other to the extent described in the above Debtors Release and Participants' Release.  In furtherance of such intention, the releases given herein shall be and remain in effect as full and complete releases of all such matters, notwithstanding the discovery or existence of any additional or different claims or facts relative thereto, except as expressly stated herein.   The Parties agree that, upon the effective date, the Debtors, the Committee, the Steering Committee and the Ad Hoc Group shall expressly waive, and each of the Participants shall be deemed to have and, by operation of the Approval Order shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR**

6.    **Covenant Not to Sue.**  The Steering Committee, the Ad Hoc Group, each on their own behalf and on behalf of the Participants, the Debtors, and the Committee hereby covenant that they shall not sue or otherwise prosecute in any way any of the Debtor Released Parties or the Ad Hoc Group Released Parties with respect to any and every claim released by the Debtors Release and/or the Participants' Release.

7.    **No Prior Transfer.**  The Debtors, the Committee, the Steering Committee, and the Ad Hoc Group, on their own behalf and on behalf of each Participant, each represent and warrant that, except as disclosed through a notice of transfer of claim filed in the Bankruptcy Case as of the Effective Date, they have not assigned or transferred, and prior to the Payment Date will not assign or transfer, in whole or in part, to any other person, corporation, or other entity, in any manner, including but not limited to assignment or transfer by subrogation or any operation of law, any claim, right, demand or cause of action which they may now have, or may in the future acquire, or claim to have, or may have had regarding the claims released by the Participants' Release and the Debtors Release.

8. **Third Party Beneficiaries**. The Parties hereto hereby acknowledge that each individual and entity released herein other than the signatories hereto is intended to be a third party beneficiary of this Settlement Agreement. There shall be no other third party beneficiaries of this Settlement Agreement.

9. **Authority to Sign.** Each of the members of the Steering Committee represents and warrants that he or she has the authority to execute this Settlement Agreement on behalf of all of the members of the Ad Hoc Group. The Debtors and the Committee represent and warrant that the persons executing this Settlement Agreement on their behalf have the authority to do.

10. **Assignment, Predecessors, Successors and Assigns.** This Settlement Agreement, and each and every covenant, warranty, release and agreement contained herein, shall be binding upon and shall inure to the benefit of the Parties hereto and the Participants and their legal representatives, beneficiaries, estates, heirs, transferees, successors and assigns, including any bankruptcy trustee or state law receiver later appointed.

11. **No Admission.** This Settlement Agreement effects the settlement of potential claims regarding the Plan, the Plan Trust and the Trust Assets which are denied and contested, and nothing contained herein shall be construed as an admission by any Party hereto to any liability of any kind to any other Party. Each Party hereto acknowledges and agrees that nothing in this Settlement Agreement constitutes a concession of any factual or legal issue raised in or relating to such claims, denies any liability in connection with any claim and intends hereby solely to settle litigation and finally resolve any and all potential issues among the Parties hereto.

12. **Construction**. The Parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Settlement Agreement or, alternatively, have had an opportunity to retain the services of independent legal counsel and have affirmatively elected not to do so, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same. No Party hereto relies upon any statement, representation, or promise of any other Party in executing this Settlement Agreement or in making the settlement provided for herein, except as expressly stated in this Settlement Agreement. The Parties hereto further hereby mutually acknowledge that they have had input into the drafting of this Settlement Agreement or, alternatively, have had an opportunity to have input into the drafting of this Settlement Agreement. Accordingly, in any construction to be made of this Settlement Agreement, it shall not be construed for or against any Party, but rather shall be given a fair and reasonable interpretation, based on the plain language of the Settlement Agreement and the expressed intent of the Parties.

13. **Entire Agreement.** This Settlement Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Settlement Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the Parties hereto.

14. **Counterparts.** This Settlement Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall

constitute one and the same instrument.  Signatures of this Settlement Agreement evidenced and delivered by facsimile or electronic mail shall be as valid as an original thereof.

      **15.**    **Termination.**  In the event that the Approval Order does not become a Final Order on or before September 30, 2014, any Party shall have the right to terminate this Settlement Agreement upon written notice to the other Parties.

      **16.**    **GOVERNING LAW.**  THIS SETTLEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE FEDERAL LAWS OF THE UNITED STATES AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.  IN ANY ACTION BROUGHT TO ENFORCE OR INTERPRET THE TERMS AND PROVISIONS OF THIS SETTLEMENT AGREEMENT, EACH OF THE PARTIES HERETO EXPRESSLY AGREES THAT THE BANKRUPTCY COURT SHALL HAVE THE JURISDICTION TO HEAR SUCH MATTER. TO THE EXTENT THAT THE BANKRUPTCY COURT REFUSES JURISDICTION OF SUCH MATTER, THEN EACH OF THE PARTIES HERETO EXPRESSLY AGREES THAT THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE, OR, IF THAT COURT LACKS SUBJECT MATTER JURISDICTION, THE STATE COURTS OF NEW YORK COUNTY, STATE OF NEW YORK, SHALL HAVE THE SOLE JURISDICTION TO HEAR SUCH MATTER.

      **17.**    **Notices.**  All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by regular U.S. Mail, postage prepaid, addressed as follows, or such other address as may be furnished by proper notice as described herein:

|  |  |
|---|---|
| Debtors: | CLEARY GOTTLIEB STEEN<br>& HAMILTON LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Attn: Lisa M. Schweitzer |
| The Committee: | AKIN GUMP STRAUSS HAUER<br>& FELD LLP<br>One Bryant Park<br>New York, New York 10036<br>Attn: Lisa G. Beckerman |
| Steering Committee and:<br>Ad Hoc Group | Robert J. Keach<br>BERNSTEIN, SHUR, SAWYER & NELSON<br>100 Middle Street<br>P.O. Box 9729<br>Portland, Maine 04104 |

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Settlement Agreement.

NORTEL NETWORKS INC.:

By: _____

NORTEL NETWORKS CAPITAL
CORPORATION:

By: _____

NORTEL ALTSYSTEMS INC.:

By: _____

NORTEL ALTSYSTEMS INTERNATIONAL
INC.:

By: _____

XROS, INC.:

By: _____

SONOMA SYSTEMS:

By: _____

QTERA CORPORATION:

By: _____

CORETEK, INC.:

By:_____

NORTEL NETWORKS APPLICATIONS
MANAGEMENT SOLUTIONS INC.:

By:_____

NORTEL NETWORKS OPTICAL
COMPONENTS INC.:

By:_____

NORTEL NETWORKS HPOCS INC.:

By:_____

ARCHITEL SYSTEMS (U.S.) CORPORATION:

By:_____

NORTEL NETWORKS INTERNATIONAL INC.:

By:_____

NORTHERN TELECOM INTERNATIONAL
INC.:

By:_____

NORTEL NETWORKS CABLE SOLUTIONS
INC.:

By:_____

NORTEL NETWORKS (CALA) INC.:

By:_____

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF NORTEL NETWORKS INC.,
ET. AL.

BY: AKIN GUMP STRAUSS HAUER & FELD
LLP, AS COUNSEL TO THE COMMITTEE AND
AUTHORIZED SIGNATORY AND NOT IN ITS
INDIVIDUAL CAPACITY


By:_____

NORTEL NETWORKS CABLE SOLUTIONS
INC.:


By:_____


NORTEL NETWORKS (CALA) INC.:


By:_____



THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF NORTEL NETWORKS INC.,
ET. AL.

BY: AKIN GUMP STRAUSS HAUER & FELD
LLP, AS COUNSEL TO THE COMMITTEE AND
AUTHORIZED SIGNATORY AND NOT IN ITS
INDIVIDUAL CAPACITY


By:_____

THE AD HOC GROUP, by its Steering Committee
duly authorized:

_____

Robert Horne

_____

Mason James Young

_____

Ellen Bovarnick

_____

Charla Crisler

_____

Bart Kohnhorst

_____

Brian Page

_____

Benjamin Warren

THE AD HOC GROUP, by its Steering Committee
duly authorized:

_____
Robert Horne

_____
Mason James Young

_____
Ellen Bovarnick

_____
Charla Crisler

_____
Bart Kohnhorst

_____
Brian Page

_____
Benjamin Warren

THE AD HOC GROUP, by its Steering Committee
duly authorized:


_____
Robert Horne


_____
Mason James Young

_____
Ellen Bovarnick


_____
Charla Crisler


_____
Bart Kohnhorst


_____
Brian Page


_____
Benjamin Warren

THE AD HOC GROUP, by its Steering Committee
duly authorized:


_____
Robert Horne


_____
Mason James Young


_____
Ellen Bovarnick

_Charla Crisler_
_____
Charla Crisler


_____
Bart Kohnhorst


_____
Brian Page


_____
Benjamin Warren

THE AD HOC GROUP, by its Steering Committee
duly authorized:


_____

Robert Horne


_____

Mason James Young


_____

Ellen Bovarnick


_____

Charla Crisler

_____

Bart Kohnhorst


_____

Brian Page


_____

Benjamin Warren

THE AD HOC GROUP, by its Steering Committee
duly authorized:

_____
Robert Horne


_____
Mason James Young


_____
Ellen Bovarnick


_____
Charla Crisler


_____
Bart Kohnhorst


*Brian E Page*
_____
Brian Page


_____
Benjamin Warren

THE AD HOC GROUP, by its Steering Committee
duly authorized:


_____

Robert Horne


_____

Mason James Young


_____

Ellen Bovarnick


_____

Charla Crisler


_____

Bart Kohnhorst


_____

Brian Page

_____

Benjamin Warren

EXHIBIT 1

List of Ad Hoc Group Members

NORTEL NETWORKS, INC.

AD HOC GROUP

|  | Last Name | First Name | Address | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| 1 | ADAMS | DAVID | 2 BARBARA'S PATH | UPTON | MA | 01568 | |
| 2 | ADAMYK | GORDON | 137 BROADMEADOW RD | GROTON | MA | 01450 | |
| 3 | ALLAN | JAY | 21912 BARBADOS | MISSION VIEJO | CA | 92692 | |
| 4 | BADOWSKI | ERIC | 4204 GRANDBROOK LANE | PLANO | TX | 75074 | |
| 5 | BANDROWCZAK | STEVEN | 104 CHARMWOOD CT | CARY | NC | 27518-7102 | |
| 6 | BARBER-MOYE | DARNELL | 8715 CRESTGATE CIRCLE | ORLANDO | FL | 32819 | |
| 7 | BASU | KALYAN | 3605 SAGE BRUSH | PLANO | TX | 75023 | |
| 8 | BAYNO | FRANK | 3509 LACOSTA WAY | RALEIGH | NC | 27610 | |
| 9 | BORCHGREVINK | JACK | 12006 TIDESWEPT COURT | HOUSTON | TX | 77095 | |
| 10 | BOVARNICK | ELLEN | 120 MATTISON COVE | ATLANTA | GA | 30319 | |
| 11 | BREWER | DAVE | 9075 OLD KEITH | GAINESVILLE | GA | 30506-6201 | |
| 12 | BRIDGES | STEPHEN | 5020 RED CEDAR RD | RALEIGH | NC | 27613 | |
| 13 | BROWER | KOLLEN | 1206 MORROW LN | ALLEN | TX | 75002 | |
| 14 | CAGIANNOS | ELIAS | 87 WOODLAND ROAD | MADISON | NJ | 07940 | |
| 15 | CALLANAN | RICHARD | 29 SYCAMORE LN | RIDGEFIELD | CT | 06877 | |
| 16 | CASSIDY | PETER | 6206 BELLE RIVE | BRENTWOOD | TN | 37027 | |
| 17 | CELLARIUS | PETER | 6591 LITTLE FALLS | SAN JOSE | CA | 95120 | |
| 18 | CHAVEZ | TOM | 6408 CALLE LOMAS | PASO | TX | 79912 | |
| 19 | CHEZEM | ANDREW | 5694 BLACKFOOT TR | CARMEL | IN | 46033 | |
| 20 | CHIMA | MANMOHAN | 4041 LASER LANE | PLANO | TX | 75023 | |
| 21 | CICCARELLI | LAWRENCE | 8 JULIA CIRCLE | EAST SETAUKET | NY | 11733 | |
| 22 | CLARK | DOUGLAS | 234 SPADINA ROAD | TORONTO | ON | M5R 2V1 | CANADA |
| 23 | CLARK | EGBERT | 16405 DIAMOND PLACE | WESTON | FL | 33331 | |
| 24 | CLARK-SELLERS | KATHRYN | 3005 LATTYES LANE | RALEIGH | NC | 27613 | |
| 25 | COLEMAN | DEBRA | 5017 STOCKTON DRIVE | RALEIGH | NC | 27606 | |
| 26 | CONROY | MARK | 20 ROBIN HOOD | LONDONDERRY | NH | 03053 | |
| 27 | COVEY | NIEL | 23314 SE 13TH | SAMMAMISH | WA | 98075 | |
| 28 | CREAMER | BOYCE | 27 GATE 11 | CAROLINA SHORES | NC | 28467 | |
| 29 | CRISLER | CHARLA | #3 WOODY CREST | FAIRVIEW | TX | 75069 | |
| 30 | CVJETKOVIC | MAURICIO | 19701 E COUNTRY #5-106 | AVENTURA | FL | 33180 | |
| 31 | D'AMOUR | BARRY | 1001 KELTON COTTAGE | MORRISVILLE | NC | 27560 | |
| 32 | DANIEL | RICHARD | PO BOX 4276 | CARY | NC | 27519 | |

NORTEL NETWORKS, INC.
AD HOC GROUP

|    | Last Name | First Name | Address | City | State | Zip | Country |
|----|-----------|------------|---------|------|-------|-----|---------|
| 33 | DAS | PRABIR | 6307 WIND RIDER | COLUMBIA | MD | 21045 | |
| 34 | DATTATREYA | MOHAN | 1569 BLACKHAWK DRIVE | SUNNYVALE | CA | 94087 | |
| 35 | DAUTENHAHN | DAVID | 13913 HAYES | OVERLAND PARK | KS | 662221 | |
| 36 | DAVIS | PATRICK | 3000 FOWNES COURT | RALEIGH | NC | 27613 | |
| 37 | DECKER | JAMES | 2332 INVERNESS CIRCLE | JAMISON | PA | 18929 | |
| 38 | DENEEN | JEFFREY | 53 WYN OAK | NASHVILLE | TN | 37205-5000 | |
| 39 | DHONDT | LUC | 1604 HOPE DRIVE, APT 137 | SANTA CLARA | CA | 95054 | |
| 40 | DIBURRO | LAWRENCE | 9 GLENWOOD CIRCLE | HAVERHILL | MA | 01830 | |
| 41 | DODD | RANDY | 14009 HAYES ST | OVERLAND PARK | KS | 66221 | |
| 42 | ERKEL | ENIS | FATMAKADIN SOK. MARMARA, APT 14/29 | SUADIYE | ISTANBUL | 34740 | TURKEY |
| 43 | FARMER | CECIL | 621 A STREET NE | WASHINGTON | DC | 20002 | |
| 44 | FARRANTO | PETER | 1716 WITHMERE WAY | ATLANTA | GA | 30338 | |
| 45 | FAX | RUTH | 148 MILL ST | NEWTON | MA | 02459 | |
| 46 | FEDYK | DONALD | 220 HAYDEN RD | GROTON | MA | 01450 | |
| 47 | FOULOIS | MARA | 10910 BELMONT BLVD | LORTON | VA | 22079 | |
| 48 | FRADETTE | MAURICE | 36 GLENWOOD RD | HARTFORD | CT | 06107 | |
| 49 | FRYDACH | RONALD | 101 FOX BRIAR LANE | CARY | NC | 27518 | |
| 50 | GARBIS | FRANK | 18295 CANFIELD PLACE | SAN DIEGO | CA | 92128 | |
| 51 | GARITO | NICOLA | 19164 NE 44TH CT | SAMMAMISH | WA | 98074 | |
| 52 | GARNICA | KEVIN | 120 LINCOLNSHIRE LN | SPRINGBORO | OH | 45066 | |
| 53 | GARRICK | LYNN | 13330 RAVENS CAW | CYPRESS | TX | 77429 | |
| 54 | GRAHAM | ROBERT | BOX 9096 | RANCO SANTA FE | CA | 92067 | |
| 55 | GRANT | DAVID | 205 REEDHAM WAY | RALEIGH | NC | 27615 | |
| 56 | GRAY-PRESTON | CARROLL | 101 HALLEY'S CT | MORRISVILLE | NC | 27560 | |
| 57 | GRELCK | KENNETH | 117 TARKINGTON CT | MORRISVILLE | NC | 27560 | |
| 58 | GUNDECHA | CHAND | 11309 RIDGEGATE DRIVE | RALEIGH | NC | 27617 | |
| 59 | GUREVITCH | MORRIS | 17890 ABERDEEN WAY | BOCA RATON | FL | 33496 | |
| 60 | HABOSIAN | LEVON | 11 DOUGLAS RD | WESTFORD | MA | 01886 | |
| 61 | HAMILTON | MARK | 438 PLUMWOOD WAY | FAIRVIEW | TX | 75069 | |
| 62 | HANKEL | MARK | 8 FOX HOLLOW | PLAISTOW | NH | 03865 | |
| 63 | HEARN | JOHN | 1556 WATERSIDE CT | DALLAS | TX | 75218 | |
| 64 | HESLOP | MICHAEL | 8404 WEST 127 | OVERLAND PARK | KS | 66213 | |

NORTEL NETWORKS, INC.
AD HOC GROUP

| | Last Name | First Name | Address | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| 65 | HILBIG | DAVID | 1420 FARINGDON DR | PLANO | TX | 75075 | |
| 66 | HOPE | STEVE | 16562 ELM STREET | OMAHA | NE | 68130 | |
| 67 | HORNE | ROBERT | 10015 HIGH FALLS | ALPHARETTA | GA | 30022 | |
| 68 | HOY | GREGORY | 430 HIGHLAND OAKS | SOUTHLAKE | TX | 76092 | |
| 69 | IACOVIELLO | VINCE | 20 BROADVIEW AVE | MADISON | NJ | 07940 | |
| 70 | IBRAHIM | TAREK | 224 HUDSON STREET, APT 4B | HOBOKEN | NJ | 07030 | |
| 71 | ISOM | RONALD | 1127 N SHANNON DR | FARMINGTON | UT | 84025 | |
| 72 | JANIS | MARK | 193 VIA SODERINI | APTOS | CA | 95003 | |
| 73 | JOHNSON | KENNETH | 14425 MAPLE | OVERLAND PARK | KS | 66223 | |
| 74 | KALFA | JOHN | 75 JOHNSON PL | WOODMERE | NY | 11598 | |
| 75 | KAPIL | VIVEK | 2712 MERLIN DR | LEWISVILLE | TX | 75056 | |
| 76 | KEATES | ROB | 10519 138 ST | EDMONTON | AB | T5N 2J5 | CANADA |
| 77 | KEEGAN | SUSAN | 8 QUAIL RIDGE | FLEMINGTON | NJ | 08822 | |
| 78 | KHANNA | BAKUL | 58 BLAKE ROAD | LEXINGTON | MA | 02420 | |
| 79 | KNUDSEN | PAUL | 801 SADDLEBROOK DRIVE | LUCAS | TX | 75002 | |
| 80 | KO | DAVID | 920 BROOKLINE WAY | ALPHARETTA | GA | 30022 | |
| 81 | KOEHLER JR. | EDWIN C. | 7319 FURNACE ROAD | ONTARIO | NY | 14519 | |
| 82 | KOHNHORST | BART | 5724 CEDAR GROVE | PLANO | TX | 75093 | |
| 83 | KUTAC | GARY | 1552 SAN SABA | DALLAS | TX | 75218 | |
| 84 | LACERTE | RICHARD | BOX 10428 | BEDFORD | NH | 03110 | |
| 85 | LAFAURIE | CESAR | 101 WILLOWCREEK BLVD | SWEETWATER | TN | 37874 | |
| 86 | LAGIOS | GREGORY | 22 DEER RUN | FREEDOM | NH | 03836 | |
| 87 | LASKIN | LEE | 863 NEVADA AVE | SAN JOSE | CA | 95125 | |
| 88 | LAU | STEPHEN | 982 SANDALRIDGE CT | MILPITAS | CA | 95035 | |
| 89 | LAVIAN | TAL | 1640 MARIANI | SUNNYVALE | CA | 94087 | |
| 90 | LAYNE | SAMUEL | 9317 W 139TH | OVERLAND PARK | KS | 66221 | |
| 91 | LEGER | ANTHONY | 9409 STONE MOUNTAIN | RALEIGH | NC | 27613 | |
| 92 | LEKICH | IVO | 1235 VICTORIA LANE | WEST CHESTER | PA | 19380 | |
| 93 | LEONARD | BRIAN | 1030 CHASEWOOD TRAIL | ALPHARETTA | GA | 30005 | |
| 94 | LEWIS | PATRICK | 7009 S NETHERLAND | AURORA | CO | 80016 | |
| 95 | LIN | YUAN-HAO | 219 RINCONADA AVE | PALO ALTO | CA | 94301-3728 | |
| 96 | LONGAKER | DAVID | 1446 Q ST. | WASHINGTON | DC | 20009 | |

NORTEL NETWORKS, INC.
AD HOC GROUP

|  | Last Name | First Name | Address | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| 97 | LOWE | JOHN | 228 HEIN DRIVE | CLAYTON | NC | 27527 | |
| 98 | MACKINNON | PETER | 706 BANDERA DRIVE | ALLEN | TX | 75013 | |
| 99 | MACLAREN | PETER | 1496 WEST HILL | WARREN | VT | 05674 | |
| 100 | MALZAHN | MARK | 1013 TIMBERLINE LN | ALLEN | TX | 75002 | |
| 101 | MARSONIA | RAJPRIYA | 400 CAPELLAN ST. | WAKE FOREST | NC | 27587 | |
| 102 | MARYAK | JENIFER | 10720 DUNHILL TER | RALEIGH | NC | 27615 | |
| 103 | MATHENY | SCOTT | 155 BAY DR | HENDERSONVILLE | TN | 37075 | |
| 104 | MAY | JENNIFER | 1326 HOOVER STREET #10 | MENLO PARK | CA | 94025 | |
| 105 | MCCABE | ROBERT | 2009 MISSION RD | EDMOND | OK | 73034 | |
| 106 | MCCOLGAN | GILLIAN | 2 BIRCH RD | WILMINGTON | MA | 01887 | |
| 107 | MCCUNE | BRIAN | 1638 MATTHEWS AVE. | VANCOUVER | BC | V6J 2T2 | CANADA |
| 108 | MCLEAN | LORI | 614 WEST MAIN STREET, APT. 201 | DURHAM | NC | 27701 | |
| 109 | MCNITT | STEVEN | 3441 SUNDANCE DR | GAINESVILLE | GA | 30506 | |
| 110 | MERCURE | JIM | 210 CELLARS WAY | WALLACE | NC | 28466 | |
| 111 | MILLER | CLYDE | 1680 CENTER GROVE CHURCH RD | MONCURE | NC | 27559 | |
| 112 | MISSINI | DENNIS | 616 RUSSETWOOD LN | POWDER SPRINGS | GA | 30127 | |
| 113 | MOLINA | LAWRENCE | PO BOX 28473 | ST. LOUIS | MO | 63146-0973 | |
| 114 | MONDOR | DAN | 3650 NEWPORT BAY | ALPHARETTA | GA | 30005 | |
| 115 | MONTGOMERY | GEORGE | 9808 ST ANNES DR | PLANO | TX | 75025 | |
| 116 | MOSELEY | ROBERT | 7718 MEADOWHAVEN DR. | DALLAS | TX | 75254 | |
| 117 | MURASHIGE | DAVID H. | 2604 RUTGERS COURT | PLANO | TX | 75093 | |
| 118 | MURPHY | PETER | 5555 GROVE POINT RD | JOHNS CREEK | GA | 30022 | |
| 119 | NATIUK | EDWARD | 6143 NW 124TH DRIVE | CORAL SPRINGS | FL | 33076 | |
| 120 | NOY | ANA | 10202 SW 158TH CT | MIAMI | FL | 33196 | |
| 121 | ORBE | JOHN | 2008 KEHRSBORO DRIVE | CHESTERFIELD | MO | 63005 | |
| 122 | PAGE | BRIAN | 1108 REDFIELD RIGDE | DUNWOODY | GA | 30338 | |
| 123 | PALMER | CAROLYN | 3171 WINDING LAKE DR | GAINESVILLE | GA | 30504 | |
| 124 | PAPANTONIS | BASIL | 515 BIRCHINGTON CLOSE | ALPHARETTA | GA | 30022 | |
| 125 | PARKER | TIMOTHY | 730 SUGAR PINE | SCOTTS VALLEY | CA | 95066 | |
| 126 | PEREZ | ANTHONY | 23 MARYETTA CT | SYOSSET | NY | 11791 | |
| 127 | PILLOW | TIMOTHY | 575 LOVE HENRY | SOUTHLAKE | TX | 76092 | |

NORTEL NETWORKS, INC.

AD HOC GROUP

| | Last Name | First Name | Address | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| 128 | RACZYNSKI | MARK | 5590 TOURNAMENT DRIVE | HAYMARKET | VA | 20169 | |
| 129 | RAUBOLT | EDMUND (TONY) | 26824 KOERBER | SAINT CLAIR SHORES | MI | 48081 | |
| 130 | RAYNOR | CECIL | 1508 BRIARWOOD PL. | RALEIGH | NC | 27614 | |
| 131 | REID | ALAN | 2900 SHADYWOOD LANE | PLANO | TX | 75023 | |
| 132 | RITCHIE | BRYAN | 370 FAIRLEAF CT | ALPHARETTA | GA | 30022 | |
| 133 | ROSE | RICHARD | 17 THERESA BLVD | WAPPINGERS FALLS | NY | 12590 | |
| 134 | RYAN | JOHN | 5 JOSEPH ROAD | HOPKINTON | MA | 01748 | |
| 135 | SCHMIDT | JONATHAN | 202 CLIFFSIDE SAN | ANTONIO | TX | 78231 | |
| 136 | SCHMIDT | CYNTHIA | PO BOX 119 | OREGON HOUSE | CA | 95962 | |
| 137 | SCHOFIELD | BRUCE | 15 FARWELL RD | TYNGSBORO | MA | 01879 | |
| 138 | SEAMAN | HAROLD | 118 WEST CODA | DELRAY BEACH | FL | 33444 | |
| 139 | SEARLES | STEVEN | 19119 STREAM CROSSING | LEESBURG | VA | 20176 | |
| 140 | SELIGSON | JOHN | 1311 CROCKER DRIVE | DORADO HILLS | CA | 95762 | |
| 141 | SHARMA | JAG | 113 COUNCIL GAP COURT | CARY | NC | 27513 | |
| 142 | SHEKOKAR | PRAVEEN | 3521 WILLETT PL. | SANTA CLARA | CA | 95051 | |
| 143 | SHEPHERD | FRANK | 2426-1 SHIPS MECHANIC | GALVESTON | TX | 77550 | |
| 144 | SIMCOE | MITCHELL | 1085 TIMBERLINE PL | ALPHARETTA | GA | 30005 | |
| 145 | SKIDMORE | THOMAS | 16743 W 157TH | TER OLATHE | KS | 66062 | |
| 146 | SOBERAY | DETLEF | 4241 INWOOD RD. | MINNETONKA | MN | 55345 | |
| 147 | SOWARDS | ALAN | 103 LINDENTHAL CT | CARY | NC | 27513 | |
| 148 | STUKEL | MARK | 14601 HOWE DR | LEAWOOD | KS | 66224 | |
| 149 | SUN | MOSES | 9208 STONEBROOK DR | COLLEGE STATION | TX | 77845 | |
| 150 | SUTCLIFFE | ANDREW | 34300 LANTERN BAY, UNIT 50 | DANA POINT | CA | 92629 | |
| 151 | TARIQ | MASOOD | 12325 RICHMOND RUN | RALEIGH | NC | 27614-6413 | |
| 152 | TELLO | ARMANDO | 2545 WINDSOR LN | NORTHBROOK | IL | 60062 | |
| 153 | TO | PAUL | 904 THERESA CT | MENLO PARK | CA | 94025 | |
| 154 | TOWNLEY | JEFFREY | 4109 ENGLISH GARDEN | RALEIGH | NC | 27612 | |
| 155 | TURNER | MARGARET | 2306 MARCHURST ROAD | KANATA | ON | 00K2K-1X7 | CANADA |
| 156 | VALDEZ | CIRIACO | 13208 WEST 129TH | TER OVERLAND PARK | KS | 66213 | |
| 157 | VALENTINE | JOHN | 719 QUARTERSTAFF ROAD | WINSTON-SALEM | NC | 27104 | |
| 158 | WARREN | BEN | 31 CREST LANE | WATSONVILLE | CA | 95076 | |

NORTEL NETWORKS, INC.
AD HOC GROUP

|     | Last Name  | First Name | Address             | City          | State | Zip        | Country |
| --- | ---------- | ---------- | ------------------- | ------------- | ----- | ---------- | ------- |
| 159 | WERKOFF    | DIDIER     | 81 ELLSWORTH ST     | SAN FRANCISCO | CA    | 94110      |         |
| 160 | WHITEHURST | MICHAEL    | 801 SILVERPOINT ROAD | CHAPIN       | SC    | 29036      |         |
| 161 | WILCOX     | REGINALD   | 22 EWING COURT      | LUCAS         | TX    | 75002      |         |
| 162 | WINJE      | NORA       | 678 COOLEDGE AVE    | ATLANTA       | GA    | 30306      |         |
| 163 | WONG       | WING       | 3016 BONSAI DRIVE   | PLANO         | TX    | 75093      |         |
| 164 | WOODRUFF   | PAUL       | 1489 RAMON DR       | SUNNYVALE     | CA    | 94087      |         |
| 165 | YEE        | MENG       | 1506 SOMERSET PL    | RICHARDSON    | TX    | 75081      |         |
| 166 | YOUNG      | ROBERT     | 313 PROMENADE SOUTH | MONTGOMERY    | TX    | 77356      |         |
| 167 | YOUNG      | MASON      | 2984 FRANKLIN OAKS  | OAK HILL      | VA    | 20171-2254 |         |

EXHIBIT 2

Form of Order

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

-------------------------------------------------------X
                                                       :
                                                       :        Chapter 11
                                                       :
*In re*                                                :
                                                       :        Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                     :
                                                       :        Jointly Administered
                                    Debtors.           :
                                                       :
                                                       :        **RE: D.I. _____**
                                                       :
                                                       :
-------------------------------------------------------X


**ORDER (I) APPROVING COMPROMISE**
**AMONG THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS, AND THE AD HOC GROUP OF BENEFICIARIES**
**OF THE NORTEL NETWORKS U.S. DEFERRED**
**COMPENSATION PLAN (FOR THEMSELVES AND ALL SIMILARLY**
**SITUATED PARTICIPANTS IN AND BENEFICIARIES OF THE**
**NORTEL NETWORKS U.S. DEFERRED COMPENSATION PLAN)**
**PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE; (II) DIRECTING PAYMENTS PURSUANT TO**
**11 U.S.C. § 503(b)(1)(A) AND RULE 9019; (III) DIRECTING U.S. BANK**
**NATIONAL ASSOCIATION TO TURN OVER ASSETS TO THE**
**DEBTORS; AND (IV) RELEASING AND SETTLING CLAIMS OF**
**THE DEFERRED COMPENSATION PLAN PARTICIPANTS**

Upon the Joint Motion for Order: (I) Approving Compromise Among the Debtors, the

Official Committee of Unsecured Creditors, and the Ad Hoc Group of Beneficiaries of the Nortel

Networks U.S. Deferred Compensation Plan (for Themselves and All Similarly Situated

Participants in and Beneficiaries of the Nortel Networks U.S. Deferred Compensation Plan)

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure; (II) Directing Payments

Pursuant to 11 U.S.C. § 503(b)(1)(A) and Rule 9019; (III) Directing U.S. Bank National

Association to Turn Over Assets to the Debtors; and (IV) Releasing and Settling Claims of the

Deferred Compensation Plan Participants (the "Motion"), and having reviewed the Motion and

the Resolution Terms set forth in the Motion and the Settlement Agreement[2] attached to the

Motion as Exhibit A, a hearing having been held and the Court having considered the evidence

presented and the arguments and proffers of counsel, and this Court possessing jurisdiction to

consider the Motion, and venue being proper, and notice of the Motion having been sufficient,

and the relief requested in the Motion being warranted, IT IS HEREBY ORDERED THAT:

1.      The Motion is granted in all respects.

2.      The Settlement Agreement and the Resolution Terms are approved in all respects

and shall be incorporated herein by reference as if fully set forth herein.  The Effective Date of

the Settlement Agreement and the Resolution Terms shall be the date that this Order becomes

final and not subject to further modification, reversal or appeal.  For the avoidance of doubt, and

without limiting the foregoing, this Order shall not be deemed a Final Order until the expiration

of the period for filing a notice of appeal of this Order with no appeal having been filed, or, if an

appeal concerning this Order is filed, such appeal has been fully resolved and the time for any

further appeal has expired

3.      On or following the Effective Date, the parties to the Settlement Agreement may

exercise and perform their respective rights and obligations under the Settlement Agreement.

4.      All of the Participants (including, without limitation, any transferee, purchaser or

assignee of a Participant's claim relating to the Plan) are bound by the Resolution Terms, the

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the Motion and/or the Settlement Agreement.

2

Settlement Agreement and this Order, including the Participants' Release, as if each Participant was a signatory to the Settlement Agreement, regardless of whether or not such Participant was a member of the Ad Hoc Group.  The Resolution Terms, the Settlement Agreement and the relief granted in this Order constitute a complete satisfaction of all claims arising out of or relating to the Plan, the Plan Trust and the Trust Assets held by any Participant (including, without limitation, any transferee, purchaser or assignee of a Participant's claim relating to the Plan).

     5.     Within sixty (60) days following the occurrence of the Effective Date, except as expressly set forth below, the Debtors shall distribute an aggregate sum of $31,166,369.13 (the "Settlement Amount"), minus any withholdings for applicable taxes, to the Participants in the Plan.  Each Participant shall receive a distribution (after withholdings for any applicable taxes) of the greater of (a) 97% of his/her nominal account balance in the Plan as of the Petition Date or (b) 73.65% of his/her nominal account balance in the Plan as of December 31, 2010, as more particularly set forth on **Schedule 1** hereto (each Participant's share of the Settlement Amount, minus any withholdings, an "Individual Distribution"), provided, however, that in the event that a notice of transfer has been filed in the Bankruptcy Case disclosing that a Participant (such Participant, a "Transferring Participant") has transferred his or her claim relating to the Plan in accordance with Bankruptcy Rule 3001(e) and no timely objection to such transfer has been filed as of the Effective Date or any objections thereto have been resolved on or prior to the Effective Date, the Participant's transferee as disclosed in such notice of transfer (such transferee, a "Transferee") shall be paid the Transferring Participant's Individual Distribution.  The term "Participant" as used in the Settlement Agreement shall include such Transferee and such Transferee shall be bound as a Participant by the Resolution Terms, the Settlement Agreement and all releases set forth therein by operation of this Order.  No Transferring Participant shall

receive any distributions under the Settlement Agreement, but each Transferring Participant shall remain a Participant for all other purposes and remain bound by the Resolution Terms, the Settlement Agreement and all releases set forth therein by operation of this Order.  The Debtors shall have no obligation to recognize any transfer of any claims occurring after the close of business on the Effective Date.  The Debtors shall be entitled instead to recognize and deal for all purposes under this Order and the Settlement Agreement only with the Participants or the record holders stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, as further described in the Resolution Terms and the Settlement Agreement.

6.      The Debtors and the Debtor Released Parties (as defined in the Settlement Agreement) shall have no obligation to make a payment or distribution to any Participant or Transferee other than the amounts (minus any withholdings) listed on Schedule 1 hereto.  Each Individual Distribution shall be paid, without reduction (other than withholdings) or penalty as may otherwise be required under the Plan, in accordance with this Order.

7.      The Debtors shall issue or cause to be issued a form W-2 or 1099, as appropriate, to each Participant who receives an Individual Distribution.   Each Participant shall submit to the Debtors a fully completed form W-4 and agree that any Individual Distribution will be subject to the appropriate tax rate for all appropriate federal, state, and local taxes related to such distribution, except that if a Participant is a Transferee, such Transferee shall submit to the Debtors a fully completed form W-9 within 30 days after the Effective Date rather than a form W-4.  If, by 30 days after the Effective Date, the Debtors have not received a fully completed form W-4 from any Participant, then the Debtors shall withhold from such Participant's Individual Distribution at the tax rate as if such Participant were single and claimed zero allowances for all appropriate federal, state and local taxes related to such distribution, unless

such Participant is a Transferee, in which case the Debtors will not withhold from the Transferee's Individual Distribution, and the Transferee shall be solely responsible for the reporting of wage payments and the withholding of applicable federal, state and local taxes.  If, by 30 days after the Effective Date, the Debtors have not received a fully completed form W-9 from any Transferee, the Debtors shall have no obligation to pay such Transferee's Individual Distribution until 30 days after the Debtors' receipt of a fully completed form W-9 from such Transferee.  The Parties agree that for tax purposes each Individual Distribution shall be treated as payment of compensation.  All taxes arising from payment of the Settlement Amount and Individual Distributions shall be borne by the Participants; the Debtors and U.S. Bank shall have no liability for any taxes associated with, and no such party makes any guarantee as to the tax treatment of, these distributions.  The Debtors are entitled to rely on this Order in good faith in withholding taxes and issuing form W-2s or 1099s, as appropriate, in the manner set forth above and shall have no liability relating to the withholding of taxes or the issuance of form W-2s or 1099s provided that the Debtors withhold taxes and issue form W-2s or 1099s, as appropriate, in the manner set forth herein.

8.    Within three (3) business days following the occurrence of the Effective Date, the sum of $3,083,630.87 shall be paid to counsel for the Ad Hoc Group, Bernstein, Shur, Sawyer & Nelson, in payment of legal fees and expenses, including, without limitation, to be used for payment of fees and expenses of local counsel Blank Rome (the "Attorneys Fees Amount").  Bernstein, Shur, Sawyer & Nelson is also authorized to pay out of the Attorney's Fees Amount the sum of $5,000 to each member of the Steering Committee as reasonable compensation for having served in that capacity and as a named plaintiff in the Adversary Proceeding.

9.      Upon the Effective Date, each of the Participants (including, without limitation, the Transferring Participants and the Transferees), the Steering Committee, the Ad Hoc Group and each of their respective individual members, and their respective beneficiaries, estates, heirs, transferees, successors, assigns, advisors, attorneys, and all persons acting by or through them, on behalf of themselves and all predecessors, successors, assigns, agents, employees, trustees, estates, heirs, transferees and assigns, fully and forever release and discharge, and waive any argument, assertion, and claim against the Debtors, US Bank, the Plan Committee Defendants, the Committee, and their respective past and present estates, parents, subsidiaries, affiliates, general partners, limited partners and each of their past and present shareholders, administrators (including plan administrators), liquidators, officers, directors, agents, employees, trustees, managers, advisors, attorneys, accountants, fiduciaries (including plan fiduciaries), solicitors, trustees, divisions, affiliates, related companies, and all persons acting by, through or in concert with them, and each of their predecessors, successors and assigns (all of the foregoing, collectively, the "Debtor Released Parties"), from, and acknowledge full and complete satisfaction of, any and all actual and potential claims, disputes, objections, litigations, demands, debts, liabilities, obligations and causes of action of any kind whatsoever, whether in law or in equity, known or unknown, currently viable or arising hereafter, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, suspected or unsuspected by the Steering Committee, the Ad Hoc Group, or the Participants, whether or not asserted in the Complaint and whether or not concealed or hidden, which the Steering Committee, the Ad Hoc Group, and the Participants now have, own or hold, had, owned or held, may have had, held or owned, or hereafter may have, own or hold against the Debtor Released Parties, and each of them or any of them, by reason of any matters which: (a) arise out of, or are

in any way connected with or related to the Plan, the Bay Networks Plan, the SMIAP, the Plan Trust or the Trust Assets, including, without limitation, by reason of the administration of the Plan, the Bay Networks Plan or the SMIAP, the sponsorship and ownership of the Plan, the Bay Networks Plan or the SMIAP, the calculation of deferred compensation and nominal account balances under the Plan, the Bay Networks Plan or the SMIAP, eligibility determinations under the Plan, the Bay Networks Plan or the SMIAP, the ownership, use or distribution of the Trust Assets, any payments or distributions made or not made to the Steering Committee, the Ad Hoc Group, or the Participants or their beneficiaries, estates, heirs, transferees, successors and assigns from or on account of the Plan, the Bay Networks Plan or the SMIAP, the Plan Trust or the Trust Assets prior to the date of the Settlement Agreement or payments or distributions made pursuant to the Settlement Agreement; or (b) are the subject of the Turnover Motion or the Adversary Proceeding, including any and all allegations, claims and/or objections made thereunder; or (c) were the subject of the Adversary Proceeding and were voluntarily dismissed and/or are set forth in the Canadian Proofs of Claim (as defined in the Settlement Agreement); or (d) relate to the calculation of any Participant's Individual Distribution (collectively, the "Participants' Release").  The Participants' Release shall be construed as broadly and as generally as possible and as permitted by law, provided, however, that such release shall not affect, reduce or discharge any obligations arising under the Settlement Agreement.

10.    Upon the Effective Date, the Debtors and the Committee, on behalf of themselves and their respective estates, subsidiaries, predecessors, successors, assigns, officers, directors, agents, employees, trustees, advisors, attorneys, divisions, and all persons acting by, through or in concert with them, fully and forever release and discharge, and waive any argument, assertion, and claim against the Participants, the Steering Committee, the Ad Hoc Group and each of its

members, and their respective beneficiaries, predecessors, transferees, successors, assigns,

agents, employees, trustees, estates, advisors, attorneys, and all persons acting by or through

them (all of the foregoing, collectively, the "Ad Hoc Group Released Parties") from, and

acknowledge full and complete satisfaction of, any and all claims, disputes, objections,

litigations, demands and causes of action of any kind whatsoever, whether in law or in equity,

known or unknown, currently viable or arising hereafter, suspected or unsuspected by the

Debtors or the Committee, and whether or not concealed or hidden, which the Debtors or the

Committee now have, own or hold, had, owned or held, may have had, held or owned, or

hereafter may have, own or hold against the Ad Hoc Group Released Parties, and each of them

or any of them, by reason of any matters which: (a) arise out of, or are in any way connected

with or related to the Plan, the Bay Networks Plan, the SMIAP, the Plan Trust or the Trust

Assets, including, without limitation, by reason of the administration of the Plan, the Bay

Networks Plan or the SMIAP, the sponsorship and ownership of the Plan, the Bay Networks Plan

or the SMIAP, the calculation of deferred compensation and nominal account balances under the

Plan, the Bay Networks Plan or the SMIAP, eligibility determinations under the Plan, the Bay

Networks Plan or the SMIAP, the ownership, use or distribution of the Trust Assets, any

payments or distributions made or not made to the Steering Committee, the Ad Hoc Group, or

the Participants or their beneficiaries, estates, heirs, transferees, successors and assigns from or

on account of the Plan, the Bay Networks Plan or the SMIAP, the Plan Trust or the Trust Assets

prior to the date of the Settlement Agreement or payments or distributions made pursuant to the

Settlement Agreement and this Order; or (b) are the subject of the Turnover Motion or the

Adversary Proceeding, including any and all allegations, claims and/or objections made

thereunder (collectively, the "Debtors Release").  The Debtors Release shall be construed as

broadly and as generally as possible and as permitted by law, provided, however, that such release shall not affect, reduce or discharge any obligations arising under the Settlement Agreement.

11.     The releases given in the Settlement Agreement and under this Order shall be and remain in effect as full and complete releases of all such matters, notwithstanding the discovery or existence of any additional or different claims or facts relative thereto, except as expressly stated herein.  The Debtors, the Committee, the Steering Committee and the Ad Hoc Group have expressly waived, and each of the Participants is deemed to have and, by operation of this Order shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR**

12.     Upon the Effective Date, the Turnover Motion and all objections thereto shall be deemed dismissed and withdrawn, with prejudice and without costs, on the basis of the relief being granted herein.

13.     The Participants, the Steering Committee, the Ad Hoc Group, the Debtors, and the Committee shall not sue or otherwise prosecute in any way any of the Debtor Released Parties or the Ad Hoc Group Released Parties with respect to any and every claim released by the Debtors Release and/or the Participants' Release (as each such term is defined in the Settlement Agreement).

14.     The Stipulation attached as Exhibit B to the Turnover Motion (the "Turnover Stipulation") is approved.

15.     U.S. Bank is authorized to turn over the Trust Assets held pursuant to the Trust Agreement to NNI as provided under the Turnover Stipulation, and is directed to liquidate and turn over any and all Trust Assets to NNI within fifteen (15) business days of the Effective Date or such longer period thereafter as may be agreed to in writing by NNI.

16.     In connection with the receipt of the Trust Assets, which shall constitute estate property, NNI shall be authorized to manage and invest the assets in its discretion.

17.     This Court shall retain jurisdiction over all matters related to the interpretation or implementation of this Order.


Dated: _____, 2013
        Wilmington, Delaware

                                        _____
                                        THE HONORABLE KEVIN GROSS
                                        CHIEF UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1

Individual Distributions

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 806025 | $27,714.52 |
| 4721482 | $15,563.92 |
| 1552837 | $143,047.77 |
| 142575 | $4,827.30 |
| 4710636 | $257,143.30 |
| 133837 | $130,658.61 |
| 140653 | $177,123.63 |
| 187804 | $125,338.65 |
| 5091768 | $45,354.34 |
| 190649 | $205,771.01 |
| 1382203 | $141,374.52 |
| 528437 | $33,259.11 |
| 1523052 | $19,299.75 |
| 204685 | $106,614.02 |
| 131228 | $9,993.62 |
| 5088746 | $12,257.77 |
| 201678 | $19,976.95 |
| 187883 | $41,283.40 |
| 182514 | $7,726.11 |
| 5081088 | $41,076.92 |
| 4713630 | $12,808.02 |
| 5086970 | $470,124.76 |
| 1659101 | $65,880.06 |
| 192459 | $76,488.51 |
| 190205 | $32,193.41 |
| 191682 | $66,874.44 |
| 1513137 | $123,760.13 |
| 140089 | $188,944.59 |
| 205158 | $67,111.85 |
| 1507604 | $63,910.10 |
| 478620 | $13,613.26 |
| 286646 | $265,011.56 |
| 188535 | $2,622.40 |
| 193429 | $44,976.58 |
| 4722479 | $18,290.77 |
| 196007 | $173,466.06 |
| 60715 | $17,273.94 |
| 1587057 | $129,749.07 |
| 503352 | $60,327.03 |
| 1585787 | $40,569.89 |
| 187468 | $9,590.64 |
| 467001 | $74,042.85 |
| 531972 | $9,326.28 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 1542759 | $165,730.32 |
| 466754 | $22,907.17 |
| 4721921 | $9,678.26 |
| 191830 | $127,835.49 |
| 509539 | $30,134.94 |
| 200372 | $115,243.31 |
| 4712024 | $16,224.00 |
| 245910 | $12,907.76 |
| 242114 | $10,637.07 |
| 200945 | $217,299.24 |
| 4726450 | $69,727.82 |
| 1644236 | $8,112.58 |
| 483882 | $16,652.32 |
| 465306 | $37,160.65 |
| 146213 | $383,921.23 |
| 215745 | $578,654.04 |
| 4715473 | $72,140.48 |
| 200492 | $92,138.17 |
| 197964 | $331,094.85 |
| 5020551 | $57,977.78 |
| 1504848 | $2,679.50 |
| 2874691 | $13,111.72 |
| 244551 | $26,340.33 |
| 244575 | $330,065.62 |
| 200923 | $76,065.73 |
| 137173 | $150,367.51 |
| 233172 | $155,131.03 |
| 5081138 | $66,557.13 |
| 100276 | $364,954.78 |
| 87960 | $90,403.11 |
| 192348 | $76,032.32 |
| 249098 | $229,785.96 |
| 201270 | $43,808.41 |
| 4724437 | $219,732.38 |
| 192977 | $24,210.34 |
| 4722769 | $117,232.95 |
| 4721893 | $75,879.77 |
| 147803 | $363,865.76 |
| 4724537 | $11,791.81 |
| 191795 | $22,249.37 |
| 508522 | $7,686.00 |
| 201087 | $39,174.96 |
| 4725960 | $49,930.35 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 4734209 | $7,244.93 |
| 1107365 | $492,145.08 |
| 246095 | $74,415.02 |
| 223719 | $646,537.56 |
| 191898 | $83,751.29 |
| 4722261 | $65,834.38 |
| 1595826 | $51,524.39 |
| 190384 | $286,155.00 |
| 213915 | $4,210.19 |
| 190528 | $81,252.15 |
| 193442 | $5,229.44 |
| 195871 | $47,828.62 |
| 186437 | $16,441.73 |
| 141689 | $14,784.21 |
| 4726100 | $241,787.30 |
| 4713044 | $31,325.79 |
| 242813 | $39,018.62 |
| 512905 | $44,219.13 |
| 3201837 | $38,599.18 |
| 194737 | $153,327.27 |
| 135984 | $306,392.42 |
| 1604749 | $255,861.32 |
| 205621 | $29,332.17 |
| 1627977 | $72,121.35 |
| 233373 | $22,057.59 |
| 503674 | $103,573.33 |
| 46857 | $40,056.44 |
| 4722966 | $14,827.53 |
| 135230 | $2,807.96 |
| 4724354 | $27,038.86 |
| 190402 | $14,173.46 |
| 188598 | $27,884.20 |
| 121757 | $25,481.39 |
| 525403 | $18,280.38 |
| 187918 | $107,293.14 |
| 531057 | $18,646.95 |
| 1646864 | $305,502.30 |
| 1645482 | $56,041.49 |
| 1586144 | $46,027.32 |
| 4734545 | $23,989.79 |
| 207339 | $38,784.70 |
| 4726904 | $50,201.81 |
| 320660 | $279,092.88 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 505859 | $175,689.45 |
| 189067 | $92,110.62 |
| 213451 | $279,481.48 |
| 5088844 | $27,725.16 |
| 5068075 | $1,966.82 |
| 286565 | $274,724.75 |
| 4722617 | $291,528.93 |
| 474332 | $10,587.07 |
| 1750992 | $112,999.49 |
| 473736 | $17,619.96 |
| 188602 | $471,210.47 |
| 533312 | $68,065.01 |
| 1587399 | $30,618.43 |
| 147889 | $31,804.60 |
| 5087572 | $8,898.39 |
| 173780 | $9,496.16 |
| 524110 | $167,851.26 |
| 1663884 | $194,629.84 |
| 130939 | $95,998.83 |
| 139158 | $151,050.50 |
| 4722462 | $188,867.71 |
| 5087105 | $3,592.82 |
| 4721360 | $125,478.15 |
| 1637788 | $24,325.06 |
| 191297 | $107,674.81 |
| 140279 | $101,289.35 |
| 191860 | $20,275.24 |
| 511708 | $290,563.91 |
| 230561 | $36,321.46 |
| 4710786 | $45,616.10 |
| 6408827 | $50,992.95 |
| 1625958 | $21,215.55 |
| 4711940 | $57,916.00 |
| 5075415 | $35,157.75 |
| 4724256 | $19,805.05 |
| 324427 | $49,301.61 |
| 4710286 | $376,483.77 |
| 1520257 | $110,105.48 |
| 202917 | $204,051.84 |
| 191692 | $125,501.70 |
| 4711909 | $155,429.10 |
| 4713761 | $102,083.87 |
| 204937 | $15,175.32 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 4714673 | $39,268.49 |
| 4714175 | $5,674.90 |
| 1504964 | $71,120.47 |
| 5091201 | $24,427.97 |
| 211651 | $137,646.85 |
| 5086863 | $84,100.13 |
| 1668264 | $14,118.06 |
| 511416 | $860,770.32 |
| 247833 | $35,982.38 |
| 102043 | $88,875.07 |
| 241855 | $546,095.81 |
| 475966 | $188,159.44 |
| 200900 | $29,002.27 |
| 138899 | $221,087.19 |
| 1341000 | $752,700.56 |
| 1525436 | $19,906.31 |
| 1587413 | $112,459.89 |
| 113809 | $107,842.50 |
| 525029 | $11,300.07 |
| 201711 | $62,453.71 |
| 4727237 | $17,935.97 |
| 5085021 | $5,731.74 |
| 244098 | $17,828.45 |
| 4715860 | $66,859.36 |
| 2874808 | $66,193.07 |
| 119861 | $24,551.41 |
| 4723571 | $81,021.14 |
| 142045 | $116,980.17 |
| 5087192 | $9,472.77 |
| 207654 | $31,502.74 |
| 139020 | $21,830.94 |
| 4721911 | $14,665.45 |
| 186584 | $330,147.24 |
| 5095132 | $3,725.59 |
| 4710605 | $319,514.93 |
| 533248 | $26,303.02 |
| 5025671 | $29,064.66 |
| 191965 | $22,944.57 |
| 187096 | $18,259.14 |
| 324489 | $128,744.85 |
| 4725851 | $47,122.21 |
| 185668 | $32,159.29 |
| 4721817 | $52,385.98 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 2930865 | $343,345.26 |
| 4727314 | $29,501.96 |
| 526035 | $2,961.05 |
| 466625 | $8,586.58 |
| 141067 | $223,359.85 |
| 197019 | $13,380.95 |
| 211278 | $105,730.07 |
| 5032626 | $14,624.56 |
| 191747 | $13,702.10 |
| 1542304 | $34,966.00 |
| 4712086 | $111,629.25 |
| 191660 | $8,710.64 |
| 4726035 | $30,299.62 |
| 4722647 | $33,296.34 |
| 4734218 | $26,918.24 |
| 139739 | $17,083.95 |
| 192297 | $39,335.47 |
| 525637 | $35,573.73 |
| 186944 | $13,679.40 |
| 187050 | $306,477.23 |
| 4715986 | $16,198.09 |
| 1669774 | $22,949.91 |
| 1543407 | $81,273.54 |
| 189355 | $28,904.67 |
| 4725593 | $277,754.85 |
| 244184 | $17,120.91 |
| 5094112 | $1,440.76 |
| 197751 | $5,256.84 |
| 190514 | $124,829.84 |
| 5089244 | $117,128.52 |
| 139889 | $10,028.40 |
| 189074 | $103,028.68 |
| 521427 | $32,436.82 |
| 201509 | $72,497.65 |
| 481245 | $126,235.70 |
| 202782 | $165,336.13 |
| 4713838 | $22,166.48 |
| 5093206 | $16,101.25 |
| 142150 | $16,668.31 |
| 243079 | $4,049.14 |
| 1359306 | $29,382.25 |
| 206135 | $32,846.72 |
| 202030 | $17,465.66 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 193515 | $120,193.01 |
| 4722289 | $14,184.98 |
| 245192 | $12,192.01 |
| 133714 | $99,020.25 |
| 191920 | $96,187.33 |
| 94386 | $37,587.10 |
| 4727327 | $65,300.56 |
| 4737002 | $24,242.80 |
| 4726495 | $49,990.50 |
| 770437 | $55,663.79 |
| 247865 | $80,563.68 |
| 193337 | $1,623.14 |
| 4711791 | $152,320.60 |
| 4723554 | $32,578.55 |
| 140057 | $207,561.76 |
| 5076142 | $41,904.66 |
| 189317 | $54,966.31 |
| 232780 | $93,826.90 |
| 522278 | $11,521.38 |
| 4726654 | $11,886.01 |
| 146142 | $5,397.18 |
| 244561 | $6,666.68 |
| 524652 | $26,576.56 |
| 139859 | $80,228.42 |
| 533365 | $34,137.55 |
| 528474 | $123,313.12 |
| 4722400 | $165,842.51 |
| 192995 | $76,593.89 |
| 5085567 | $13,245.99 |
| 320680 | $656,641.58 |
| 244200 | $29,264.18 |
| 191880 | $75,415.80 |
| 509548 | $40,382.85 |
| 1573351 | $11,181.65 |
| 4723493 | $43,701.94 |
| 1512694 | $292,325.08 |
| 195812 | $54,767.29 |
| 243083 | $610,781.46 |
| 141164 | $66,294.85 |
| 5095801 | $1,825.28 |
| 247110 | $28,623.01 |
| 4710158 | $292,827.96 |
| 4723471 | $21,808.66 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 5085120 | $45,677.30 |
| 4710803 | $24,479.03 |
| 201567 | $123,613.14 |
| 245942 | $56,929.28 |
| 1645847 | $83,743.80 |
| 158120 | $69,752.75 |
| 130020 | $68,642.91 |
| 533416 | $8,097.32 |
| 187708 | $46,878.12 |
| 232299 | $38,059.74 |
| 189558 | $26,510.39 |
| 196991 | $8,550.84 |
| 4714697 | $695,379.59 |
| 467390 | $28,870.95 |
| 4722750 | $90,860.17 |
| 5022472 | $62,596.97 |
| 1609536 | $79,687.82 |
| 186527 | $104,797.48 |
| 1682388 | $52,917.44 |
| 1587262 | $17,850.84 |
| 4711942 | $52,135.76 |
| 506216 | $23,438.48 |
| 5036337 | $35,696.23 |
| 135129 | $29,865.85 |
|  | **$31,166,369.13** |

<u>EXHIBIT 3</u>

<u>Individual Distributions</u>

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 806025 | $27,714.52 |
| 4721482 | $15,563.92 |
| 1552837 | $143,047.77 |
| 142575 | $4,827.30 |
| 4710636 | $257,143.30 |
| 133837 | $130,658.61 |
| 140653 | $177,123.63 |
| 187804 | $125,338.65 |
| 5091768 | $45,354.34 |
| 190649 | $205,771.01 |
| 1382203 | $141,374.52 |
| 528437 | $33,259.11 |
| 1523052 | $19,299.75 |
| 204685 | $106,614.02 |
| 131228 | $9,993.62 |
| 5088746 | $12,257.77 |
| 201678 | $19,976.95 |
| 187883 | $41,283.40 |
| 182514 | $7,726.11 |
| 5081088 | $41,076.92 |
| 4713630 | $12,808.02 |
| 5086970 | $470,124.76 |
| 1659101 | $65,880.06 |
| 192459 | $76,488.51 |
| 190205 | $32,193.41 |
| 191682 | $66,874.44 |
| 1513137 | $123,760.13 |
| 140089 | $188,944.59 |
| 205158 | $67,111.85 |
| 1507604 | $63,910.10 |
| 478620 | $13,613.26 |
| 286646 | $265,011.56 |
| 188535 | $2,622.40 |
| 193429 | $44,976.58 |
| 4722479 | $18,290.77 |
| 196007 | $173,466.06 |
| 60715 | $17,273.94 |
| 1587057 | $129,749.07 |
| 503352 | $60,327.03 |
| 1585787 | $40,569.89 |
| 187468 | $9,590.64 |
| 467001 | $74,042.85 |
| 531972 | $9,326.28 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 1542759 | $165,730.32 |
| 466754 | $22,907.17 |
| 4721921 | $9,678.26 |
| 191830 | $127,835.49 |
| 509539 | $30,134.94 |
| 200372 | $115,243.31 |
| 4712024 | $16,224.00 |
| 245910 | $12,907.76 |
| 242114 | $10,637.07 |
| 200945 | $217,299.24 |
| 4726450 | $69,727.82 |
| 1644236 | $8,112.58 |
| 483882 | $16,652.32 |
| 465306 | $37,160.65 |
| 146213 | $383,921.23 |
| 215745 | $578,654.04 |
| 4715473 | $72,140.48 |
| 200492 | $92,138.17 |
| 197964 | $331,094.85 |
| 5020551 | $57,977.78 |
| 1504848 | $2,679.50 |
| 2874691 | $13,111.72 |
| 244551 | $26,340.33 |
| 244575 | $330,065.62 |
| 200923 | $76,065.73 |
| 137173 | $150,367.51 |
| 233172 | $155,131.03 |
| 5081138 | $66,557.13 |
| 100276 | $364,954.78 |
| 87960 | $90,403.11 |
| 192348 | $76,032.32 |
| 249098 | $229,785.96 |
| 201270 | $43,808.41 |
| 4724437 | $219,732.38 |
| 192977 | $24,210.34 |
| 4722769 | $117,232.95 |
| 4721893 | $75,879.77 |
| 147803 | $363,865.76 |
| 4724537 | $11,791.81 |
| 191795 | $22,249.37 |
| 508522 | $7,686.00 |
| 201087 | $39,174.96 |
| 4725960 | $49,930.35 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 4734209 | $7,244.93 |
| 1107365 | $492,145.08 |
| 246095 | $74,415.02 |
| 223719 | $646,537.56 |
| 191898 | $83,751.29 |
| 4722261 | $65,834.38 |
| 1595826 | $51,524.39 |
| 190384 | $286,155.00 |
| 213915 | $4,210.19 |
| 190528 | $81,252.15 |
| 193442 | $5,229.44 |
| 195871 | $47,828.62 |
| 186437 | $16,441.73 |
| 141689 | $14,784.21 |
| 4726100 | $241,787.30 |
| 4713044 | $31,325.79 |
| 242813 | $39,018.62 |
| 512905 | $44,219.13 |
| 3201837 | $38,599.18 |
| 194737 | $153,327.27 |
| 135984 | $306,392.42 |
| 1604749 | $255,861.32 |
| 205621 | $29,332.17 |
| 1627977 | $72,121.35 |
| 233373 | $22,057.59 |
| 503674 | $103,573.33 |
| 46857 | $40,056.44 |
| 4722966 | $14,827.53 |
| 135230 | $2,807.96 |
| 4724354 | $27,038.86 |
| 190402 | $14,173.46 |
| 188598 | $27,884.20 |
| 121757 | $25,481.39 |
| 525403 | $18,280.38 |
| 187918 | $107,293.14 |
| 531057 | $18,646.95 |
| 1646864 | $305,502.30 |
| 1645482 | $56,041.49 |
| 1586144 | $46,027.32 |
| 4734545 | $23,989.79 |
| 207339 | $38,784.70 |
| 4726904 | $50,201.81 |
| 320660 | $279,092.88 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 505859 | $175,689.45 |
| 189067 | $92,110.62 |
| 213451 | $279,481.48 |
| 5088844 | $27,725.16 |
| 5068075 | $1,966.82 |
| 286565 | $274,724.75 |
| 4722617 | $291,528.93 |
| 474332 | $10,587.07 |
| 1750992 | $112,999.49 |
| 473736 | $17,619.96 |
| 188602 | $471,210.47 |
| 533312 | $68,065.01 |
| 1587399 | $30,618.43 |
| 147889 | $31,804.60 |
| 5087572 | $8,898.39 |
| 173780 | $9,496.16 |
| 524110 | $167,851.26 |
| 1663884 | $194,629.84 |
| 130939 | $95,998.83 |
| 139158 | $151,050.50 |
| 4722462 | $188,867.71 |
| 5087105 | $3,592.82 |
| 4721360 | $125,478.15 |
| 1637788 | $24,325.06 |
| 191297 | $107,674.81 |
| 140279 | $101,289.35 |
| 191860 | $20,275.24 |
| 511708 | $290,563.91 |
| 230561 | $36,321.46 |
| 4710786 | $45,616.10 |
| 6408827 | $50,992.95 |
| 1625958 | $21,215.55 |
| 4711940 | $57,916.00 |
| 5075415 | $35,157.75 |
| 4724256 | $19,805.05 |
| 324427 | $49,301.61 |
| 4710286 | $376,483.77 |
| 1520257 | $110,105.48 |
| 202917 | $204,051.84 |
| 191692 | $125,501.70 |
| 4711909 | $155,429.10 |
| 4713761 | $102,083.87 |
| 204937 | $15,175.32 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 4714673 | $39,268.49 |
| 4714175 | $5,674.90 |
| 1504964 | $71,120.47 |
| 5091201 | $24,427.97 |
| 211651 | $137,646.85 |
| 5086863 | $84,100.13 |
| 1668264 | $14,118.06 |
| 511416 | $860,770.32 |
| 247833 | $35,982.38 |
| 102043 | $88,875.07 |
| 241855 | $546,095.81 |
| 475966 | $188,159.44 |
| 200900 | $29,002.27 |
| 138899 | $221,087.19 |
| 1341000 | $752,700.56 |
| 1525436 | $19,906.31 |
| 1587413 | $112,459.89 |
| 113809 | $107,842.50 |
| 525029 | $11,300.07 |
| 201711 | $62,453.71 |
| 4727237 | $17,935.97 |
| 5085021 | $5,731.74 |
| 244098 | $17,828.45 |
| 4715860 | $66,859.36 |
| 2874808 | $66,193.07 |
| 119861 | $24,551.41 |
| 4723571 | $81,021.14 |
| 142045 | $116,980.17 |
| 5087192 | $9,472.77 |
| 207654 | $31,502.74 |
| 139020 | $21,830.94 |
| 4721911 | $14,665.45 |
| 186584 | $330,147.24 |
| 5095132 | $3,725.59 |
| 4710605 | $319,514.93 |
| 533248 | $26,303.02 |
| 5025671 | $29,064.66 |
| 191965 | $22,944.57 |
| 187096 | $18,259.14 |
| 324489 | $128,744.85 |
| 4725851 | $47,122.21 |
| 185668 | $32,159.29 |
| 4721817 | $52,385.98 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 2930865 | $343,345.26 |
| 4727314 | $29,501.96 |
| 526035 | $2,961.05 |
| 466625 | $8,586.58 |
| 141067 | $223,359.85 |
| 197019 | $13,380.95 |
| 211278 | $105,730.07 |
| 5032626 | $14,624.56 |
| 191747 | $13,702.10 |
| 1542304 | $34,966.00 |
| 4712086 | $111,629.25 |
| 191660 | $8,710.64 |
| 4726035 | $30,299.62 |
| 4722647 | $33,296.34 |
| 4734218 | $26,918.24 |
| 139739 | $17,083.95 |
| 192297 | $39,335.47 |
| 525637 | $35,573.73 |
| 186944 | $13,679.40 |
| 187050 | $306,477.23 |
| 4715986 | $16,198.09 |
| 1669774 | $22,949.91 |
| 1543407 | $81,273.54 |
| 189355 | $28,904.67 |
| 4725593 | $277,754.85 |
| 244184 | $17,120.91 |
| 5094112 | $1,440.76 |
| 197751 | $5,256.84 |
| 190514 | $124,829.84 |
| 5089244 | $117,128.52 |
| 139889 | $10,028.40 |
| 189074 | $103,028.68 |
| 521427 | $32,436.82 |
| 201509 | $72,497.65 |
| 481245 | $126,235.70 |
| 202782 | $165,336.13 |
| 4713838 | $22,166.48 |
| 5093206 | $16,101.25 |
| 142150 | $16,668.31 |
| 243079 | $4,049.14 |
| 1359306 | $29,382.25 |
| 206135 | $32,846.72 |
| 202030 | $17,465.66 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 193515 | $120,193.01 |
| 4722289 | $14,184.98 |
| 245192 | $12,192.01 |
| 133714 | $99,020.25 |
| 191920 | $96,187.33 |
| 94386 | $37,587.10 |
| 4727327 | $65,300.56 |
| 4737002 | $24,242.80 |
| 4726495 | $49,990.50 |
| 770437 | $55,663.79 |
| 247865 | $80,563.68 |
| 193337 | $1,623.14 |
| 4711791 | $152,320.60 |
| 4723554 | $32,578.55 |
| 140057 | $207,561.76 |
| 5076142 | $41,904.66 |
| 189317 | $54,966.31 |
| 232780 | $93,826.90 |
| 522278 | $11,521.38 |
| 4726654 | $11,886.01 |
| 146142 | $5,397.18 |
| 244561 | $6,666.68 |
| 524652 | $26,576.56 |
| 139859 | $80,228.42 |
| 533365 | $34,137.55 |
| 528474 | $123,313.12 |
| 4722400 | $165,842.51 |
| 192995 | $76,593.89 |
| 5085567 | $13,245.99 |
| 320680 | $656,641.58 |
| 244200 | $29,264.18 |
| 191880 | $75,415.80 |
| 509548 | $40,382.85 |
| 1573351 | $11,181.65 |
| 4723493 | $43,701.94 |
| 1512694 | $292,325.08 |
| 195812 | $54,767.29 |
| 243083 | $610,781.46 |
| 141164 | $66,294.85 |
| 5095801 | $1,825.28 |
| 247110 | $28,623.01 |
| 4710158 | $292,827.96 |
| 4723471 | $21,808.66 |

| Employee ID | Greater of 97% Petition Date Balance and 73.65% Termination Date Balance |
|---|---|
| 5085120 | $45,677.30 |
| 4710803 | $24,479.03 |
| 201567 | $123,613.14 |
| 245942 | $56,929.28 |
| 1645847 | $83,743.80 |
| 158120 | $69,752.75 |
| 130020 | $68,642.91 |
| 533416 | $8,097.32 |
| 187708 | $46,878.12 |
| 232299 | $38,059.74 |
| 189558 | $26,510.39 |
| 196991 | $8,550.84 |
| 4714697 | $695,379.59 |
| 467390 | $28,870.95 |
| 4722750 | $90,860.17 |
| 5022472 | $62,596.97 |
| 1609536 | $79,687.82 |
| 186527 | $104,797.48 |
| 1682388 | $52,917.44 |
| 1587262 | $17,850.84 |
| 4711942 | $52,135.76 |
| 506216 | $23,438.48 |
| 5036337 | $35,696.23 |
| 135129 | $29,865.85 |
|  | **$31,166,369.13** |