**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------X
                                :

| | |
|---|---|
| *In re* | Chapter 11 |
| | |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| | |
|             Debtors. | Jointly Administered |

                                **Hearing date: January 23, 2013 at 11:00 a.m. (ET)**
                                **Objections due: January 16, 2013 at 4:00 p.m. (ET)**
----------------------------------------------------------- X

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE
9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
RESOLVING CLAIMS WITH UNITED STATES DEBT RECOVERY III, L.P.**

       Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing NNI's entry into and approving a stipulation (the "Stipulation") with United States Debt Recovery III, L.P. (the "Claimant" and, together with the Debtors, the "Parties"), attached hereto as **Exhibit B**, which resolves certain of the Claimant's claims against NNI; and (ii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 502 of

the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of title 11 of the

Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors

continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S.

Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in

respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized

(the "Bondholder Group").

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7.      By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

**Facts Relevant to this Motion**

8.      The Debtors list an unsecured claim held by Brennan Consulting Service in the amount of $19,500.00 (the "Brennan Scheduled Claim") in their schedules of assets and liabilities filed with the Bankruptcy Court (as amended, the "Schedules").

---

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

9.       On or about February 9, 2009, Brennan Consulting Service filed proof of claim number 163 for services rendered in the amount of $19,500.00 as a general unsecured claim and $10,950.00 as a claim asserted to be entitled to priority under 11 U.S.C. § 507(a)(4), ("Claim No. 163").

10.      On or about September 3, 2009, Telrad Networks Ltd. filed proof of claim number 2560 for goods and equipment sold in the amount of $2,857,588.17 as a general unsecured claim, ("Claim No. 2560").

11.      The Debtors list on an unsecured claim held by MRV Communications, Inc. in the amount of $10,845.00 (the "MRV Scheduled Claim") in the Schedules.

12.       On or about September 16, 2009, MRV Communications, Inc. filed proof of claim number 3050 for goods sold in the amount of $10,845.00 as a general unsecured claim, ("Claim No. 3050" and, together with the Brennan Scheduled Claim, Claim No. 163, Claim No. 2560 and the MRV Scheduled Claim, the "Claims").

13.      On or about October 15, 2009, Brennan Consulting Services transferred the Brennan Scheduled Claim and Claim No. 163 to the Claimant pursuant to the terms and conditions set forth in that certain Transfer of Claim agreement by and between Brennan Consulting Service and the Claimant [D.I. 1709].

14.      On or about December 16, 2009, MRV Communications, Inc. transferred the MRV Scheduled Claim and Claim No. 3050 to the Claimant pursuant to the terms and conditions set forth in that certain Transfer of Claim agreement by and between MRV Communications, Inc. and the Claimant [D.I. 2212].

15.     On or about February 17, 2010, Telrad Networks Ltd. transferred Claim No. 2560 to the Claimant pursuant to the terms and conditions set forth in that certain Transfer of Claim agreement by and between Telrad Networks Ltd. and the Claimant [D.I. 2479].

16.     In an effort to negotiate an expeditious resolution of the disputes between the Debtors and the Claimant, the Parties entered into arm's-length settlement discussions.

17.     As a result of these negotiations, subject to this Court's approval, NNI has reached a compromise with the Claimant that[5]:

(i) Claim No. 163 should be allowed as a general unsecured claim by the Claimant against NNI in the amount of $19,500.00; and

(ii) Claim No. 2560 should be allowed as a general unsecured claim by the Claimant against NNI in the amount of $2,709,607.17; and

(iii) Claim No. 3050 should be allowed as a general unsecured claim by the Claimant against NNI in the amount of $10,845.00.

In consideration for the partial allowance of the Claims against NNI, the Claimant has agreed, subject to this Court's approval, to release and forever discharge the Debtors from any and all liability they now have or hereafter may have arising from or related to the Claims, and specifically with respect to Claim No. 2560, arising from or related to the Master Purchase and Sale Agreement dated October 1, 2007 by and between Telrad Networks Ltd. and NNL (the "MPSA"); the Master External Systems House Agreement dated July 13, 2000 by and between Telrad Networks Ltd. and NNL (the "MESHA"); that certain Letter Agreement dated January

---

[5]     This discussion is intended as a summary of the terms of the Stipulation.  If any conflict arises between this overview and the Stipulation, the terms of the Stipulation shall control.

29, 2009 by and between Telrad Networks Ltd. and NNL and the various purchase orders and invoices issued by the Debtors to Telrad Networks Ltd. under the MPSA and the MESHA.[6]

18.     The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Claims through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

### Basis for Relief

19.     The Debtors seek authorization to enter into the Stipulation under sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

20.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.  Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts."  In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (internal quotation omitted) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And courts in this District have recognized that the approval of a

---

[6]     The proposed settlement does not affect or compromise the claims filed by Telrad Networks Ltd. against the Canadian Debtors, which have not been transferred to the Claimant, or any intercompany claims that may exist between the Debtors and the Canadian Debtors related to Telrad Networks Ltd.

proposed compromise and settlement is committed to the sound discretion of the bankruptcy

court.  See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

21.     Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer

Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness."  Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

22.     The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),

283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

23.     The Debtors respectfully submit that the Martin Factors weigh in favor of

approving the Stipulation, and request that NNI's entry into the Stipulation be authorized under

Bankruptcy Rule 9019.  While the Debtors are prepared to litigate Claim Nos. 163 and 2560, and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there are no assurances that such litigation would achieve a better result than the one set forth in the Stipulation.  Also, the settlement reflected in the Stipulation reduces a purported $2,898,883.17 in Claims filed against NNI's estate by $158,931.00 to the lesser amount of $2,739,952.17.  This resolution fairly balances the Debtors' likelihood of success on the merits of Claim No. 163 and 2560 against their interest in avoiding the uncertainty of litigation, while avoiding further costs to the Debtors.

24.     Finally, the interests of the creditors militate in favor of approval of the Stipulation.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claims and the avoidance of legal expenses that would be incurred if the Claims were to be litigated.

25.     In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

### **Notice**

26.     Notice of the Motion has been given via electronic transmission, hand delivery or first class mail to (i) the Claimant; (ii) Brennan Consulting Service; (iii) MRV Communications, Inc.; (iv) Telrad Networks Ltd.; (v) the U.S. Trustee; (vi) counsel to the Committee; (vii) counsel to the Bondholder Group; (viii) counsel to the Monitor; and (ix) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### **No Prior Request**

27.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  January 2, 2013
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*