IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | |
| NORTEL NETWORKS, INC., *et al.,* | : | Case No.  09-10138 (KG) |
| | : | |
| Debtors. | : | **Hearing Date: 1/9/13 at 10:00 a.m.** |
| | : | **Objection Deadline: 1/2/13 at 4:00 p.m.** |
| | : | **Extended by Agreement to 1/4/13 at 4:00 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR
ORDER AUTHORIZING DEBTORS TO (A) GRANT AWARDS PURSUANT TO THE
NORTEL NETWORKS, INC. INCENTIVE PLAN, AND (B) ENTER INTO CERTAIN
SPECIAL INCENTIVE PAYMENT AGREEMENTS (D.I. 9163)**

In support of her Objection to the Debtors' Motion for an Order Authorizing the Debtors To (a) Grant Awards Pursuant to the Nortel Networks, Inc. Incentive Plan, and (b) Enter Into Certain Special Incentive Payment Agreements (the "Motion"), Roberta A. DeAngelis, United States Trustee for Region 3 ("U.S. Trustee"), by undersigned counsel, avers as follows:

1. This Court has jurisdiction to hear this Objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3. In furtherance of her case supervisory responsibilities, as well as pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to raise and be heard on this Objection.

**The Motion**

4.	The Debtors filed these jointly administered cases on January 14, 2009 (the "Petition Date").

5.	The U.S. Trustee appointed an official committee of unsecured creditors ("Creditors' Committee") on January 26, 2009.

6.	On December 19, 2012, the Debtors filed the instant Motion, seeking authority to (a) grant incentive bonuses of up to $1,081,915 in the aggregate to seven non-insider employees pursuant to the 2013 Nortel Networks Incentive Plan ("2013 Incentive Plan") and (b) enter into Special Incentive Agreements (SIP Agreements) with three insider employees which provide for 2013 bonuses of up to $774,750 in the aggregate.

7.	The Debtors have advised that U.S. Trustee that the proposed 2013 bonus amount for each employee is at least 100% of that employee's regular compensation.

8.	The Motion indicates that the bonuses payable under the 2013 Incentive Plan and 2013 SIP Agreements are based on individual employee performance goals, the accomplishment of which contributes to the ultimate winding down of the Debtors and the consummation of a Chapter 11 plan.

9.	The Motion indicates that as the winding down of the Debtors has progressed, the remaining employees have been tasked with increased roles and broader responsibilities. However, the Motion does not provide any detail which would enable comparison of those employees' past and current roles and responsibilities. Absent such information, it is impossible to assess whether the changes in employee roles and responsibilities justify increased compensation, whether in the form of base compensation or bonuses.

10. Additionally, the Motion does not disclose the individual performance goals established for each participating employee. Without such information, it is impossible to assess the degree of difficulty of achieving those goals and thereby determining whether the proposed incentive plans are primarily "incentivizing" or are instead thinly veiled retention plans.

11. When a proposed incentive plan sets the performance bar so low that the targets are well within reach, it is a not a true incentive plan; it is a disguised retention plan. *In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 & n.7 (Bankr. S.D.N.Y. 2012) (noting that while targets were not "lay-ups," "they are more like free throws than half court flings at the buzzer").

12. The Debtors must produce more information to enable the U.S. Trustee, as well as the Court, to determine whether the individual employees' responsibilities and performance goals are virtually risk-free "lay-ups" (*see In re Dana Corp.*, 358 B.R. 567, 583 (Bankr. S.D.N.Y. 2006)) or "free throws" (*see Hawker Beechcraft, supra*), or instead require the individual employees to "stretch" to reach their targets. In the absence of such information, the Debtors cannot carry their burden of demonstrating that the proposed 2013 incentive plans are justified by the facts and circumstances of the case.

13. In addition to failing to demonstrating that the individual performance goals are sufficiently difficult to justify payment of incentive bonuses, the Motion articulates an incorrect legal standard for evaluation of the incentive plans. Although the Debtors acknowledge that such plans are subject to Section 503(c)(3), they argue that the applicable standard is the business judgment rule. In this regard, the Motion ignores and fails to accord proper meaning to the restrictions imposed by Bankruptcy Code Section 503(c)(3). The Debtors are seeking authority to incur an administrative expense for the incentive payments. Section 503(c) represents a legislative effort to rein in unbridled severance, retention and other payments that deplete estates.

The introduction to Section 503(c) is telling. It states in relevant part: "Notwithstanding subsection (b), there shall be neither allowed nor paid...." The provision was specifically enacted as an amendment to Section 503 by Section 331 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). In enacting Section 503(c), Congress clarified and specifically limited what might otherwise be allowed as an administrative expense under Section 503(b).

14. Section 503(b)(1)(A)(i) provides in relevant part that after notice and a hearing, the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case shall be allowed as an administrative expense.

15. Administrative expenses are given priority status and paid ahead of other unsecured claims. See 11 U.S.C. § 507. *In re Insilco Technologies, Inc.*, 309 B.R. 111,114 (Bankr. D. Del. 2004). In order to hold administrative expenses to a minimum and to maximize the value of an estate, Section 503(b) is narrowly construed. *See, e.g., In re N.P. Min. Co., Inc.*, 963 F.2d 1449, 1454 (11th Cir. 1992); *In re Philadelphia Mortgage Trust,* 117 B.R. 820, 828 (Bankr. E.D. Pa. 1990). To qualify for administrative priority status, an expense must arise from a transaction that accorded the estate an actual benefit. *Insilco Technologies, supra, citing Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532-533 (3d Cir.1999) and *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001).

16. The Debtors' assertion that the proposed incentive payments are governed by the business judgment rule ignores the pivotal holding of *O'Brien Envtl. Energy, Inc., supra*, that the allowability of administrative expenses "depends upon the requesting party's ability to show that the [expense was] actually necessary to preserve the value of the estate. Therefore, we conclude

that *the business judgment rule should not be applied as such in the bankruptcy context*. Nonetheless, the considerations that underlie the debtor's judgment may be relevant to the Bankruptcy Court's determination …." 181 F.3d at 535 (emphasis added). The proposed incentive payments, like the break-up fees under consideration in *O'Brien Envtl. Energy, Inc.*, are administrative expenses. Their allowability must be determined under administrative expense jurisprudence rather than the more lenient business judgment rule.

17. The Debtors must demonstrate that the proposed incentive payments are necessary to preserve the value of the estate and are permissible under the statutory test. The Debtors have not met, and cannot meet this burden with respect to the 2013 Incentive Plan and the 2013 SIP Agreements as they are currently presented in the Motion.

    (a) Before the 2013 Incentive Plan and the 2013 SIP Agreements are considered, the Debtors should be required to disclose the individual responsibilities and performance goals for each participant and to establish that those responsibilities and performance goals require participants to perform at an objectively measurable higher level than in the past.

    (b) The Debtors should also be required to produce copies of any report or other materials prepared by any compensation professional in connection with establishing the individual performance goals.

18. Absent evidence of degree of difficulty establishing that participating employees bear some risk of failure to achieve their performance goals, the 2013 Incentive Plan and the 2013 SIP Agreements should be viewed as having been designed to ensure that key personnel remain in the Debtors' employ rather than to preserve or enhance the value of the estate through higher performance and, accordingly, disapproved.

19. Because the Motion fails to demonstrate that the proposed 2013 Incentive Plan and 2013 SIP Agreements are justified by the facts and circumstances of the case, the Motion should be denied.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Motion and grant such other relief as is appropriate.

Respectfully submitted,

ROBERTA A. DeANGELIS
UNITED STATES TRUSTEE

Dated: January 4, 2013    BY: /s/ Mark S. Kenney
    Mark S. Kenney
    Trial Attorney
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491
    (302) 573-6497 (Fax)