IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
: 
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
              Debtors. : Jointly Administered
:
: Hearing date: January 23, 2013 11:00 AM (ET)
:
: Re:  D.I. 9163, 9236
:
------------------------------------------------------------X

**DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR
ENTRY OF AN ORDER AUTHORIZING DEBTORS TO (A) GRANT AWARDS
PURSUANT TO THE NORTEL NETWORKS INC. INCENTIVE PLAN; AND (B)
ENTER INTO CERTAIN SPECIAL INCENTIVE PAYMENT AGREEMENTS**

      Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), respectfully submit this reply (the "Reply") in further support of *Debtors' Motion for Entry of an Order Authorizing Debtors to (A) Grant Awards Pursuant to the Nortel Networks Inc. Incentive Plan; and (B) Enter Into Certain Special Incentive Payment Agreements* [D.I. 9163] (the "Motion") and in response to the objection [D.I. 9236] (the "Objection") to the Motion filed by the United States Trustee for Region 3 (the "U.S. Trustee").[2]  The Debtors rely on the Declaration of John Dempsey, dated January 17, 2013 (the "Dempsey Declaration") in further support of the Motion.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

**PRELIMINARY STATEMENT**

1. The proposed 2013 Incentive Awards under the Debtors' Incentive Plan and the proposed incentive payments under the 2013 SIP Agreements with certain Key Personnel are a proper exercise of the Debtors' business judgment and are entirely justified by the facts and circumstances of these chapter 11 cases. Neither the Incentive Plan nor the 2013 SIP Agreements can be characterized as a retention plan, as they are incentive programs tied to individually-tailored challenging performance goals and targets for each of the ten (10) participating employees (the "2013 Participants").

2. The Objection filed by the U.S. Trustee makes two arguments as to why the Debtors' Motion should be denied, but neither argument warrants denial of the Motion. First, the U.S. Trustee argues that the Debtors have failed to provide sufficient detail on the roles and responsibilities of the 2013 Participants and have failed to set specific performance goals for each 2013 Participant. The U.S. Trustee disregards the fact that seven of the ten 2013 Participants who would be covered by the Motion are not "insiders" of the Debtors, and therefore, section 503(c)(1) of the Bankruptcy Code is simply inapplicable to them. With respect to the three 2013 Participants who are "insiders" of the Debtors – the Key Personnel – the 2013 SIP Agreements are not subject to section 503(c)(1) of the Bankruptcy Code because the agreements are incentive, and not primarily retentive, in nature. In any event, the individual 2013 Participants' specific performance goals for the 2013 Incentive Awards and 2013 SIP Agreements are appropriate and justified, and the Debtors are prepared to further address the goals at the hearing, to the extent necessary.

3. Second, the U.S. Trustee argues that the Motion articulates an incorrect legal standard for the evaluation of the 2013 Incentive Awards and the 2013 SIP Agreements, asserting that the Debtors must demonstrate more than satisfaction of the business judgment rule

2

under section 503(c) of the Bankruptcy Code. This argument is simply incorrect and contrary to relevant case law. To the extent that section 503(c)(3) of the Bankruptcy Code is applicable, the incentive awards approved under that section must be justified by the facts and circumstances of these chapter 11 cases, which standard courts have held to be equivalent to the business judgment rule. In any event, regardless of the standard applied, the 2013 Incentive Awards and the 2013 SIP Agreements are both necessary and warranted because the contributions to be provided by the 2013 Participants are essential to the Debtors and far outweigh the relatively small costs of the incentive payments.

4. Finally, the 2013 Incentive Awards and the 2013 SIP Agreements were established after consultation with both the Committee and the Bondholder Group. Notably, no creditor constituency in these cases has objected to the Motion and, rather, the creditors have demonstrated support for these necessary incentive programs. For these reasons, and as more fully set forth below, the Objection should be denied and the Motion approved in its entirety.

## ARGUMENT

### A. The 2013 Incentive Awards and the 2013 SIP Agreements are Incentive and not Retentive in Nature

5. Although the U.S. Trustee does not argue that the 2013 Incentive Awards or the 2013 SIP Agreements are subject to section 503(c)(1) of the Bankruptcy Code or that each of the 2013 Participants is an "insider" of the Debtors, it appears that the U.S. Trustee conflates sections 503(c)(1) and 503(c)(3) by nevertheless arguing that the Motion lacks sufficient information with respect to the 2013 Participants' individual performance goals and targets to show that the 2013 Incentive Awards and the 2013 SIP Agreements are "incentivizing" instead of primarily retentive. See Objection ¶ 10. Section 503(c)(1) limits payments to "insiders" to the extent such payments are made "for the purpose of inducing such person to remain with the

3

debtor's business . . . . " 11 U.S.C. § 503(c)(1). The Debtors' Incentive Plan, which covers seven of the ten 2013 Participants at issue in the Motion and pursuant to which the 2013 Incentive Awards would be granted, does not contain any "insiders" and is not subject to section 503(c)(1). Likewise, with respect to the three Key Personnel covered by the 2013 SIP Agreements, section 503(c)(1) is inapplicable because – as explained in the Motion – the 2013 SIP Agreements provide incentive payments and are not primarily retentive in nature. The proposed payments in the Debtors' Incentive Plan and the 2013 SIP Agreements primarily serve to incentivize and motivate the 2013 Participants to continue the critical work of winding down the Debtors' operations in 2013.

6. In analyzing proposed incentive plans, courts balance the motivational aspects of the plan against the retentive qualities that the plan may have. In conducting this analysis, courts are mindful of the fact that "[a]ny payment to an employee, including regular wages, has at least a partial purpose of retaining the employee." In re Nellson Nutraceutical, Inc., 369 B.R. 787, 802 (Bankr. D. Del. 2007); see also In re Dana Corp., 358 B.R. 567, 571 (Bankr. S.D.N.Y. 2006) ("[M]erely because a plan has some retentive effect does not mean that the plan, overall, is retentive rather than incentivizing in nature."). A proposed incentive plan will be found to be a disguised retention plan only if its "primary" purpose is to induce an employee to remain with a debtor's business. In re Nellson, 369 B.R. at 802; In re Global Home Prods., LLC, 369 B.R. 778, 785 (Bankr. D. Del. 2007) ("The entire analysis changes if a bonus plan is not primarily motivated to retain personnel or is not in the nature of severance.") (emphasis added).

7. While specific targets and goals found by courts to be incentive in nature vary from case to case, courts generally look favorably on programs that are designed to "motivate the employees to achieve performance goals." In re Mesa Air Grp., Inc., No. 10-10019(MG), 2010

WL 3810899, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (quoting 11 U.S.C. § 503(c)) (program not retentive in nature when incentive bonuses were tied to performance goals such as maintenance of flight schedules, efficient return of aircraft, securing aircraft equipment at reduced rates and negotiating reduced rates for aircraft no longer in service); see also In re Blitz U.S.A. Inc., 475 B.R. 209, 215 (Bankr. D. Del. 2012) (approving incentive program tied to certain EBITDA targets); In re Velo Holdings Inc., 472 B.R. 201, 210 (Bankr. S.D.N.Y. 2012) (approving incentive program where employees had to meet certain earnings performance targets and also address "concerns and issues that are unique to the bankruptcy proceeding").

8. As noted above, because the seven 2013 Participants who would receive 2013 Incentive Awards are not insiders of the Debtors, there is no requirement that the 2013 Incentive Awards be incentive and not retentive. In fact, however, the milestones set by the Debtors with respect to both the 2013 Incentive Awards and the 2013 SIP Agreements are clearly incentive in nature. These milestones are tailored to the individual 2013 Participants to ensure the achievement of certain goals by the Debtors that are essential to the successful conclusion of these chapter 11 cases, including:

- Completion of 2012 year-end financial close and regulatory reporting requirements.
- Completion of 2012 tax returns.
- Support of critical 2013 tax deliverables.
- Achievement of 2013 cash flow budget.
- Completion of benefit plans wind-down and regulatory reporting.
- Initiation of the liquidation or strike off of 6 of 8 entities and completion of the current in-process liquidations of 4 of 6 entities. Ensuring local and U.S. statutory and tax compliance is met and potential financial risks are identified and mitigated.
- Driving cash repatriation (NNI Uruguay branch, NNII Dubai branch, Nortel de Guatemala, and NTECP). Ensuring local and U.S. statutory and tax compliance is met and potential financial risks are identified and mitigated.

- Settlement and disposition of remaining residual receivables.
- Execution of data and document destruction upon Court approval.
- Management of RTP and Richardson real estate.
- Completion of real estate restoration CAPEX projects per lease agreement at or below budget.
- Marketing and leasing of RTP excess real estate.
- Support for ongoing claims review and administration.
- Support of the Debtors' plan of reorganization and disclosure statement.

9. In addition to having to meet the demanding goals set with respect to the 2013 Incentive Awards and 2013 SIP Agreements, the 2013 Participants face increased individual responsibilities as a result of the drastically reduced number of the Debtors' remaining employees. Consequently, the 2013 Participants' work has increased in both size and importance to the Debtors' successful conclusion of these chapter 11 cases, and indeed, each of the ten remaining employees is essential to the completion of the 2013 performance milestones because there are no other employees available to take over his or her work. See In re Blitz, 475 B.R. at 215 (explaining increase in incentive payment per employee with decrease of overall employee pool following bankruptcy); In re Velo Holdings, 472 B.R. at 210 (finding sufficiently challenging incentive targets where employees had to "increase their pre-bankruptcy job responsibilities to achieve the bonus requirements . . . .").

10. In addition, none of the 2013 Participants has received his or her incentive payments for 2012, as those payments, like the ones contemplated under the 2013 Incentive Awards and 2013 SIP Agreements, will be received only upon completion of all of the milestones set by the Debtors and termination of the respective 2013 Participant. This factor weighs in favor of establishing the incentive nature of the Debtors' programs, because each 2013 Participant is individually incentivized to achieve the new 2013 milestones set by the Debtors in

6

order to obtain a substantial amount of his or her compensation, including amounts promised in 2012.

**B.  The Expenses Requested in the Motion Are a Proper Exercise of the Debtors' Business Judgment and Justified by the Facts and Circumstances of These Chapter 11 Cases**

11. In the Objection, the U.S. Trustee argues that, even if the 2013 Incentive Awards and 2013 SIP Agreements were not primarily retentive in nature, the Debtors must demonstrate that the expenses requested in the Motion are "necessary to preserve the value of the estate," and asserts that more is required in analyzing incentive plans than satisfaction of the "business judgment rule."  Objection ¶¶ 16-17.  This is simply incorrect and is an attempt by the U.S. Trustee to impose an unprecedented, more stringent legal standard to incentive plans.  As this Court has articulated, except where a compensation plan is primarily motivated to retain management or is in the nature of severance, "[c]ompensation issues are normally governed by the business judgment standards," and "[t]he reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment."  In re Global Home, 369 B.R. at 783-84; see also Motion ¶¶ 26-27.

12. This is true whether section 363(b) or section 503(c)(3) applies.  Section 503(c)(3) limits "transfers or obligations that are outside the ordinary course of business," including those to "officers, managers, or consultants" to transfers or obligations that can be "justified by the facts and circumstances of the case . . . ."[3]  11 U.S.C. § 503(c)(3).  However, notwithstanding the U.S. Trustee's argument that a more stringent standard of review applies with respect to section 503(c)(3), courts have consistently held that the "facts and circumstances" language of section 503(c)(3) creates a standard "no different than the business judgment

---

[3] At least one court in this district has determined that incentive payment programs are, in fact, part of a debtor's ordinary course of business and not subject to the 503(c)(3) test.  See In re Nellson, 369 B.R. at 803-04.

7

standard under section 363(b)." In re Velo Holdings, 472 B.R. at 212; see also In re Global Home, 369 B.R. at 783 ("If [the proposed plans are] intended to incentivize management, the analysis utilizes the more liberal business judgment review under § 363."); In re Nobex Corp., No. 05-20050(MFW), 2006 WL 4063024, at *3 (Bankr. D. Del. Jan. 19, 2006) (section 503(c)(3) standard is that of the business judgment of the debtor). Tellingly, the Objection does not cite to a single case that has examined incentive plans in bankruptcy under a more stringent "necessary to preserve the value of the estate" inquiry, and the Debtors have been unable to find any such case.

13. The plans for which approval is sought in the Motion both satisfy the "business judgment rule" and are clearly justified by the "facts and circumstances" of these chapter 11 cases. The Debtors are in the advanced stages of their wind-down and must rely on their few remaining employees (all of whom are 2013 Participants, either under the Incentive Plan or the proposed 2013 SIP Agreements) to accomplish the successful completion of these cases. In light of the significant goals and targets set for the 2013 Participants, which were established by the NNI Principal Officer, and the importance of each employee's continued motivation, the amounts requested by the Debtors are reasonable and responsible. Furthermore, as concluded by John Dempsey, a Partner at Mercer, the Debtors' executive compensation consultant, without the incentive payments requested in the Motion, the 2013 Participants would receive overall compensation that is significantly below the current market rates. See Dempsey Declaration ¶¶ 18-21. Finally, the Motion was put forth after consultation with the Committee and the Bondholder Group, and the absence of any objection other than by the U.S. Trustee illustrates the overwhelming support for these incentive payments.

WHEREFORE, the Debtors respectfully request that this Court (i) grant the Motion and the relief requested therein; (ii) enter the proposed order attached to the Motion; (iii) deny the Objection; and (iv) grant such other and further relief as it deems just and proper.

Dated:  January 17, 2013
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

   - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*