**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------X
:
*In re*                                                        :    Chapter 11
                                                               :
Nortel Networks Inc., *et al.*,[1]                             :    Case No. 09-10138 (KG)
                                                               :
                                      Debtors.                 :    Jointly Administered
                                                               :
                                                               :
---------------------------------------------------------------X

**DECLARATION OF JOHN DEMPSEY IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO (A) GRANT AWARDS PURSUANT TO THE NORTEL NETWORKS INC. INCENTIVE PLAN; AND (B) ENTER INTO CERTAIN SPECIAL INCENTIVE PAYMENT AGREEMENTS**

I, John Dempsey, declare under penalty of perjury as follows:

1.   I am a Partner of Mercer (US) Inc. ("Mercer").  Mercer is a global leader in advising companies on management and employee incentive compensation programs.

2.   I have been consulting for over 20 years, advising corporations undergoing major financial transitions including reorganizations, initial public offerings, leveraged buyouts and other acquisitions in matters relating to employment, employee benefits and executive compensation.  I design employment agreements, change of control agreements, annual and multi-year incentive programs and retention programs.  I joined Mercer in 1985 following my

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

graduation from Yale University where I obtained a Bachelor of Arts degree.  In 1992, I obtained a Master Degree in Business Administration (MBA) from The Ohio State University.

3. I have advised clients on compensation matters within the chapter 11 context, including Nortel Networks, Tribune Company, Pinnacle Airlines, Residential Capital, Aleris, Charter Communications, Masonite, CIT Group, Capmark, Fairpoint, Caraustar, Adelphia Communications (Creditors' Committee), R.H. Donnelley, Freedom Communications, Stallion, Dana, Owens Corning, Kaiser Aluminum, Solutia, Oglebay Norton, Citation, Intermet, Venture Holdings, Alterra, EaglePicher, Allied Holdings, Mesaba Aviation, and FLAG Telecom.  I have also worked on restructuring issues with Barrick Gold, Manulife, CareMark Rx, Archipelago and Sky Financial.  I have provided expert testimony representing the debtor in the following chapter 11 cases:  Nortel Networks, Tribune Company, Owens Corning, Dana Corporation, Citation Corporation, Intermet Corporation, Venture Industries and Allied Holdings.  I published an article entitled *Bankruptcy Blues: Retaining Key Employees During a Financial Crisis* with Michael Siebenhaar in the February 2002 issue of Workspan, and an update *The New Challenge of Chapter 11* with Elizabeth Stephens in August 2008.

4. I make this declaration in support of the Debtors' Motion For Entry of An Order Authorizing Debtors to (A) Grant Awards Pursuant to the Nortel Networks Inc. Incentive Plan; and (B) Enter Into Certain Special Incentive Payment Agreements (the "Motion").[2]

5. I am aware of the facts and circumstances relating to the Motion, and unless otherwise stated herein, I have personal knowledge of the facts set forth herein.

6. I am being compensated at a rate of $748.20 per hour for my work in preparing this analysis and declaration.

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

**Background To Mercer's Involvement with Nortel's Incentive Plans**

7.      Mercer has been engaged as Nortel's executive compensation consultant since 1998. Mercer has advised Nortel throughout its restructuring proceedings on compensation issues. In the initial stages of Nortel's insolvency proceedings in the United States and Canada, Mercer assisted Nortel in developing an incentive plan for Nortel's key senior executives (the "KEIP") and a retention plan for Nortel's key non-insider employees (the "KERP," and together with the KEIP, the "Initial Plans"), which were approved by both the Bankruptcy Court and the Canadian Court in March 2009. Mercer subsequently assisted Nortel in developing the Nortel Special Incentive Plan (the "NSIP"), which the Bankruptcy Court and Canadian Court approved in March 2010. I previously filed declarations in this Court in support of the motions seeking approval of the Initial Plans and the NSIP. I am also aware that in November 2011, the Debtors sought and received Bankruptcy Court approval for the Nortel Networks Inc. Incentive Plan and certain other incentive payment agreements for calendar year 2012, which applied to certain employees of the Debtors only, but Mercer did not directly assist the Debtors in developing these plans for 2012.

**Analysis of 2013 Plans**

8.      I understand that by their current Motion, the Debtors are seeking authorization to (a) grant certain incentive awards for seven non-insider employees pursuant to the Nortel Networks Inc. Incentive Plan (the "2013 Incentive Awards") and (b) enter into certain special incentive payment agreements for three key personnel of the Debtors (the "2013 SIP Agreements"), each for the calendar year 2013. I understand from the Motion that the 2013 Incentive Awards and 2013 SIP Agreements are designed to incentivize these employees to meet certain critical goals in 2013 that the Debtors must meet to successfully conclude these chapter 11 cases and complete the wind-down of the Debtors' operations. While Mercer did not directly

3

assist the Debtors in developing the 2013 Incentive Awards and 2013 SIP Agreements, the structure of the incentives are similar to those under the NSIP in 2010 that Mercer assisted Nortel in developing.

9. In connection with the Motion, the Debtors have asked Mercer to conduct an analysis of the market competitiveness of the compensation that would be earned in 2013 (assuming all milestones are met and awards are paid) by (a) the three key personnel covered under the 2013 SIP Agreements; and (b) the seven participants covered under the 2013 Incentive Awards.

10. Mercer conducted a market competitiveness study of the total direct compensation or "TDC" (including base salary, annual incentive payments, and long-term incentive payments) for the ten covered employees, as compared to compensation data drawn from the *2012 Mercer Benchmark Database* (the "Mercer Database"). The Mercer Database compiles the results of annual compensation surveys that Mercer conducts of hundreds of companies in various industries. To conduct its study in this case, Mercer gathered compensation data from the Mercer Database for positions in the High-Tech Industry comparable to the ten employees' job descriptions (based upon information provided by the Debtors), and determined where, in terms of percentile of the market compensation, the proposed total direct compensation for the employees in 2013 would fall.

11. In my opinion, analysis of the market percentiles of proposed employee compensation is a useful and reliable tool to gauge the market competitiveness of such compensation. Percentiles are the standard methodology employed by compensation professionals to analyze market position. Compensation that falls at the 50th percentile of the market is an indicator that approximately 50% of the companies in the comparable market pay at

or above that rate for a comparable position; compensation that falls at the 75th percentile means that approximately 25% of companies in the comparable market pay at or above that rate; and so on.

12. When Nortel developed the NSIP that was approved in 2010, I recommended and Nortel adopted the 75th percentile as the target reference for pay positioning for the NSIP participants for 2010 in order to compensate for the absence of job security and future career prospects. Tier 1 employees (the 22% of employees with the highest level of criticality to the estate) were positioned with TDC averaging 115% of the 75th percentile; Tier 2 employees (the 63% with medium criticality) were positioned with TDC averaging 101% of the 75th Percentile; and Tier 3 employees (the 15% of lesser criticality) averaged 88% of the 75th percentile. I understand from the Motion that the ten individuals who remain as the sole employees of the Debtors and who will receive awards in 2013 are critical to the completion of the Debtors' key goals in the wind down process. Based upon these facts, I believe that the 75th percentile is appropriate as a target reference for these remaining ten employees and that, under the framework outlined above, these employees would appropriately be considered Tier 1 employees (i.e., highest level of criticality).

13. As noted above, to compile the market compensation data from the Mercer Database, Mercer matched each of the ten employees to appropriate job descriptions in the Mercer Database based upon information provided by the Debtors. Mercer then made certain adjustments to the data, as described below.

14. First, since the most recent compensation data in the Mercer Database were from 2011, market data were projected to March 1, 2013 using update factors of 2.9% and 3.0% for

2012 and 2013, respectively.  These figures represent median salary increases for executives in the High-Tech Industry from Mercer's *2012/2013 US Compensation Planning Survey.*

15.     Second, for certain employees of the Debtors whose job descriptions did not match up to a single job description within the Mercer Database, Mercer used "blended" compensation data from two different job descriptions in the Mercer Database to ensure that an appropriate data set was used for comparison.  The employees for whom Mercer used "blended" data sets are noted below.

16.     Finally, for certain employees (Mr. Guerra Sanz, Mr. Stout, and Ms. Davison), Mercer adjusted the market compensation data to account for the fact that these employees' proposed 2013 compensation is for less than an expected full year of service.

17.     The job descriptions Mercer utilized for purposes of performing the comparison are as follows:

<u>2013 SIP Agreement Key Personnel</u>

    Timothy Ross – Chief Financial Officer (CFO) & Top Accounting Executive (blend)

    Luis Guerra Sanz – Chief Financial Officer (CFO) - Subsidiary / Group & Top Accounting Executive (blend)

    Allen Stout – Controller - Corporate & Assistant Controller (blend)

<u>2013 Incentive Award Personnel</u>

    David Cozart – Top Accounting Executive & Accounting Director (blend)

    Kim Ponder – Accounting Director

    Jessica Lloyd – Accounting Director

    Gary Storr – Chief Technology Officer

    Jane Davison – Accounting Director

    Elizabeth Smith – Top Benefits Executive & Accounting Director (blend)

    Deborah Parker – Top Benefits Executive & Benefits Director (blend)

18. Based upon my analysis, I determined the following with respect to the three key personnel covered under the 2013 SIP Agreements:

  a. Mr. Ross's proposed 2013 total direct compensation falls 27% below the the 75th percentile for a CFO-Corporate & Top Accounting Officer blend. Without any awards under the 2013 SIP Agreements, Mr. Ross's 2013 total direct compensation would be 64% below the 75th percentile.

  b. Mr. Guerra Sanz's 2013 total direct compensation falls 11% above the 75th percentile for a Subsidiary CFO and Top Accounting Officer blend. Without any awards under the 2013 SIP Agreements, Mr. Guerra Sanz's 2013 total direct compensation would be 45% below the 75th percentile.

  c. Mr. Stout's 2013 total direct compensation falls 6% above the 75th percentile for a Corporate Controller and Assistant Controller blend. Without any awards under the proposed 2013 SIP Agreements, Mr. Stout's 2013 total direct compensation would be 46% below the 75th percentile.

19. Accordingly, the pay positioning of Mr. Guerra Sanz and Mr. Stout are consistent with the approach for Tier 1 employees, while the pay of Mr. Ross is positioned conservatively to the market target.

20. Based upon my analysis, the remaining seven personnel covered under the proposed 2013 Incentive Plan have proposed total direct compensation for 2013 (in the aggregate and on a dollar-weighted basis) that falls 1% above the 75th percentile. This is consistent with


Nortel's historical practice for Tier 2 employees under the prior incentive plans. Without any awards under the 2013 Incentive Plan, the total direct compensation for these seven employees would be 49% below the 75th percentile.

21.     Based upon my analysis, the proposed compensation under the 2013 SIP Agreements and 2013 Incentive Awards is consistent with compensation provided under the NSIP that I previously assisted Nortel with developing. In addition, based upon my analysis of the market, the pay levels under the 2013 SIP Agreements and 2013 Incentive Awards are appropriate for the roles and responsibilities of the participants. Without these incentive payments, the participants would receive overall compensation that is significantly below the current market rates.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: January 17, 2013

_/s/ John Dempsey_
John Dempsey