IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
:
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
:
                  Debtors. : Jointly Administered
:
:
:
----------------------------------------------------------X

**DECLARATION PURSUANT TO FED. R. BANKR. PROC. 2014(a) OF MICHAEL LAFE REARDON REGARDING EMPLOYMENT OF TOWERS WATSON AND THE FORMER DAVINCI CONSULTING COMPANY WHOSE EMPLOYEES WERE ACQUIRED BY TOWERS WATSON AS OF NOVEMBER 1, 2012**

I, Michael Lafe Reardon, do hereby declare as follows:

1. I am a Senior Consultant of Towers Watson Pennsylvania Inc., with offices at 150 N. College Street, Suite 3050, Charlotte, NC 28202 ("Towers Watson" or the "Company").

2. The Company has been retained by the above-captioned Debtors (the "Debtors") pursuant to the Order Authorizing the Retention and Payment of Professionals Utilized in the Ordinary Course *nunc pro tunc* to the Petition Date, dated February 5, 2009 (D.I. 236) (the "Order") under the name Watson Wyatt & Company. On January 1, 2010, Watson

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Wyatt and Company and Towers Perrin Forster & Crosby, Inc. merged to form Towers Watson. Since the merger, Towers Watson has continued to perform the same or similar services to the Debtors as previously performed by Watson Wyatt and Company.

3. The nature and scope of the services to be provided to the Debtors by the Company are to provide health and welfare consulting services in connection with Debtors' participation in Company's RxCollaborative (a pharmacy benefit program) and coordination of healthcare dataset information via Truven (formerly Thomson Reuters) until such benefit program is terminated. Continuing work is minimal at this point.

4. In addition to the work described above, while not personally involved, I understand that services are being provided by certain of Towers Watson's United Kingdom employees who are retained by the Trustee of the Nortel Networks UK Limited Pension Plan (the "UK Plan"). Prior to its current UK work, Towers Watson provided pensions and employee benefits advice and administration under separate Terms of Engagement to both Nortel Networks UK Limited and the Trustee of the UK Plan. When the UK business went into administration in January 2009, Towers Watson ceased to provide advice to Nortel Networks UK Limited, although we were retained for approximately a year by the administrators, Ernst & Young, to perform some accounting calculation project work. Since about 2010, Towers Watson has performed services solely for the trustee of the UK Plan, and, to the best of our knowledge and belief, only from the Benefits segment.

5. Also, while not personally involved, I understand that services are being provided by certain of Towers Watson's Canadian employees who continue to provide services to Nortel Networks Limited by providing investment modeling and advice. Previously, the

Canadian employees helped Nortel set up a Defined Contribution program for remaining employees and continue to provide manager monitoring for it.

6. Finally, Towers Perrin provided health and benefit services to the U.S. Debtors prior to 2010. Towers Perrin also performed consulting services for the U.S. Debtors in 2010 regarding alternative insurance options for the Debtors' current and former employees including for retirees and long-term disabled individuals, conducted renewal and procurement for life and disability benefits, procurement of stop loss insurance, reviewed plan and provided attestation or Medicare Part D benefits, negotiated contracts for pharmacy coalition services and certain vendors. Towers Perrin provided these services as an ordinary course professional. The individuals who provided such services are not involved in the current work by Towers Watson and such work had limited overlap with the current work.

7. The Company completed an asset purchase from DaVinci Consulting Group LLC ("DaVinci") effective November 1, 2012, and hired all twelve (12) employees of DaVinci (the "DaVinci Team"), including Vincent Bodnar. Pursuant to the Court's Order Approving Stipulation Authorizing Amended Employment and Retention of Alvarez & Marsal Healthcare Industry Group, LLC as Financial Advisors For the Committees (as defined below), dated August 21, 2012 [Docket No. 8271], the DaVinci Team is providing actuarial services to the Official Committee of Retired Employees (the "Retiree Committee") and the Official Committee of Long Term Disability Participants (the "LTD Committee," together with the Retiree Committee, the "Committees") as subcontractors in connection with services provided by Alvarez & Marsal HealthCare Industry Group, LLC ("A&M"), as financial advisors to the Committees. The Committees, A&M and Towers Watson intend to continue the subcontracting arrangement between A&M and Towers Watson for the actuarial services of the DaVinci Team.

8.  Although the DaVinci Team's services for the Committees and the Company's benefit consulting services for the Debtors are limited in scope, and the employees providing the services are in different lines of the Company's business, the Company will take reasonable measures to be sure that each of the teams providing services to the Debtors and Committees, respectively, shall not share any information or other materials between the teams. An ethical screen between the DaVinci Team and Towers Watson consultants who have performed services for the Debtors has been established and there will be no overlap of the teams working for the Debtors and the Committees, and neither team has been privy to the work product produced by, or confidential information available to, the other.

9.  Each of the Debtors, the Retiree Committee, the LTD Committee and the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases have represented to the Company that they have no objection to the assignment of the A&M subcontract from DaVinci to Towers Watson and the continued provision of actuarial services by the DaVinci Team to the Committees (the "DaVinci Assignment"). The Company acknowledges that the absence of such objection does not constitute a waiver with respect to any matter other than the DaVinci Assignment and is without prejudice to any party's other rights or claims, asserted or unasserted other than claims regarding a conflict of interest arising from the DaVinci Assignment based on the disclosures made in this Declaration.

10. Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, the Company hereby confirms that, to the best of its knowledge and belief, other than in connection with providing professional services to the Debtors and as otherwise provided herein, the employees providing services to the Debtors do not have any connection with the Debtors, the creditors, the United States Trustee, any person employed by the United States Trustee or any

other party with an actual or potential interest in their chapter 11 cases or their respective attorneys or accountants.

11. Pursuant to the Order, the Company hereby confirms that, other than as disclosed herein, to the best of its knowledge and belief it does not represent any interest adverse to the Debtors or the Debtors' estates in the matters upon which it is engaged.

12. The Company may have performed services in the past, may currently perform services, and may perform services in the future, in matters unrelated to conducting these chapter 11 cases, for persons that are parties in interest in these chapter 11 cases. As part of its customary practice, the Company provides consulting and actuarial services involving many different parties, some of whom may represent or be retained by the Debtors, claimants and parties in interest in these chapter 11 cases. To the best of my knowledge and belief, the Company does not perform services for any person in connection with these chapter 11 cases, other than as disclosed herein, or have any relationship with any such person, their attorneys or accountants that would be adverse to the Debtors or their estates; however, the nature of the Company's systems to reference potential conflicts is such that the Company cannot be certain of the above without a significantly onerous and costly review. We can, however, state that, with respect to any such person, fees for professional services as a percentage of Towers Watson's revenue is de minimus and no member of the team providing services to the Debtors will be involved in such consulting services, nor will any confidential information about the Debtors be provided to any Towers Watson employees working for a different client.

13. Neither I nor any director or officer of, or professional employed by the Company has agreed to share or will share any portion of the compensation to be received from the Debtors, other than reimbursing disbursements or costs owed to third parties on account of

5

services provided to the Debtors, with any other person other than the principal and regular employees of the Company.

16. Neither I nor any director or officer of, or professional retained by the Company, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Company is to be employed.

15. The Debtors do not owe the Company any fees or expenses for prepetition services, the payment of which is subject to limitations contained in the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

16. Therefore, the Company believes that the services to the Debtors (in the U.S.), the Trustee (in the U.K.) and the Committees (in the U.S.) can go forward.

17. If the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 21, 2013

Name: Michael Lafe Reardon

**Notary Statement:**

Atlanta, GA
Fulton County

*[Notary seal: Amy S. Chambers, My Commission Expires May 8 2016, Gwinnett Co., Georgia, Notary Public]*