# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

                                            :    Chapter 11

*In re*                              :

Nortel Networks Inc., *et al.*,[1]      :    Case No. 09-10138 (KG)

                              :

               Debtors.       :    Jointly Administered

                              :

                              :

------------------------------------------------------------X

## DECLARATION PURSUANT TO FED. R. BANKR. PROC. 2014(a) OF VINCENT LEE BODNAR REGARDING EMPLOYMENT OF THE FORMER DAVINCI CONSULTING COMPANY WHOSE EMPLOYEES WERE ACQUIRED BY TOWERS WATSON AS OF NOVEMBER 1, 2012 AND TOWERS WATSON

I, Vincent Lee Bodnar, do hereby declare as follows:

1.    I am a Senior Consultant of Towers Watson Pennsylvania Inc., with offices at 301 Oxford Valley Road, Suite 903, Yardley, PA 19067 ("Towers Watson" or the "Company").

2.    The Company completed an asset purchase from DaVinci Consulting Group, LLC ("DaVinci") effective November 1, 2012, and hired all twelve (12) employees of DaVinci, including myself (the "DaVinci Team").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

3.    DaVinci was retained by Alvarez & Marsal Healthcare Industry Group, LLC ("A&M"), the financial advisor to the Official Committee of Retired Employees and the Official Committee of Long-Term Disability Participants appointed in the chapter 11 bankruptcy case(s) ("Cases") of the above-captioned Debtors (the "Debtors"), to perform certain actuarial analyses. I am the principal consultant providing the services. The Committees, A&M and Towers Watson intend to assign the contract between A&M and DaVinci to Towers Watson.

4.    Pursuant to the Court's Order Approving Stipulation Authorizing Amended Employment and Retention of Alvarez & Marsal Healthcare Industry Group, LLC as Financial Advisors For the Committees (as defined below), dated August 21, 2012 [Docket No. 8271], the DaVinci Team is providing actuarial services to the Official Committee of Retired Employees (the "Retiree Committee") and the Official Committee of Long Term Disability Participants (the "LTD Committee," together with the Retiree Committee, the "Committees") as subcontractors in connection with services provided by A&M, as financial advisors to the Committees. The Company completed an asset purchase from DaVinci effective November 1, 2012, and hired the DaVinci Team, including Vincent Bodnar. The Committees, A&M and Towers Watson intend to continue the subcontracting arrangement between A&M and Towers Watson for the actuarial services of the DaVinci Team.

5.    The nature and scope of the services to be provided to the Committees by the DaVinci Team are to (1) project future benefits to be paid relating to Nortel's long-term disability beneficiaries (these benefits consisted of income replacement, medical insurance, death benefits, long term investment plan benefits and severance benefits) and (2) project future benefits to be paid relating to Nortel's former employees that are Retirees.

2

6.    In addition to the work above, while not personally involved, I understand that services are being provided by certain of Towers Watson's United States, Canadian and United Kingdom employees as set forth in the Declaration of Michael Lafe Reardon (the "Reardon Declaration").

7.    Although the DaVinci Team's services for the Committees and the Company's benefit consulting services for the Debtors are limited in scope, and the employees providing the services are in different lines of the Company's business, Company will take reasonable measures to be sure that each of the teams providing services to the Debtors and Committees, respectively, shall not share any information or other materials between the teams. An ethical screen between the DaVinci Team and Towers Watson consultants who have performed services for the Debtors has been established and there will be no overlap of the teams working for the Debtors and the Committees, and neither team has been privy to the work product produced by, or confidential information available to, the other.

8.    The Company believes that the services to the Debtors (in the U.S. and Canada), the Trustee (in the U.K.) and the Committees (in the U.S.) (collectively the "Retaining Parties") can go forward without the need for any of the Retaining Parties to expend additional resources attempting to replace the Company teams.

9.    The rates that will be charged for the services to be provided to the Committees by the DaVinci Team are the same rates that were and would have been charged by DaVinci absent the transition to Towers Watson, and that the hourly rates that will be charged for such services will not be increased by Towers Watson for work done by the DaVinci Team on behalf of the Committees.

10.   Each of Nortel, the Retiree Committee, the LTD Committee and the Official Committee of Creditors of Nortel have represented to the Company that they have no objection to the assignment of the A&M subcontract from DaVinci to Towers Watson and the continued provision of actuarial services by the DaVinci Team to the Committees (the "DaVinci Assignment"). The Company acknowledges that the absence of such objection does not constitute a waiver with respect to any matter other than the DaVinci Assignment and is without prejudice to any party's other rights or claims, asserted or unasserted other than claims regarding a conflict of interest arising from the DaVinci Assignment based on the disclosures made in this Declaration.

11.   Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, the Company hereby confirms that, to the best of its knowledge and belief, other than in connection with providing professional services to the Debtors and as otherwise provided herein, the employees providing services to the Debtors do not have any connection with the Debtors, the creditors, the United States Trustee, any person employed by the United States Trustee or any other party with an actual or potential interest in their chapter 11 cases or their respective attorneys or accountants.

12.   Pursuant to the Order, the Company hereby confirms that, other than as disclosed herein, to the best of its knowledge and belief it does not represent any interest adverse to the Debtors or the Debtors' estates in the matters upon which it is engaged.

13.   The Company may have performed services in the past, may currently perform services, and may perform services in the future, in matters unrelated to conducting these chapter 11 cases, for persons that are parties in interest in these chapter 11 cases.  As part of its customary practice, the Company provides consulting and actuarial services involving

4

many different parties, some of whom may represent or be retained by the Debtors, claimants and parties in interest in these chapter 11 cases. To the best of my knowledge and belief, the Company does not perform services for any person in connection with these chapter 11 cases, other than disclosed herein, or have any relationship with any such person, their attorneys or accountants that would be adverse to the Debtors or their estates; however, the nature of the Company's systems to reference potential conflicts is such that the Company cannot be certain of the above without a significantly onerous and costly review. We can, however, state that, with respect to any such person, fees for professional services as a percentage of Towers Watson's revenue is de minimus and no member of the team providing services to the Debtors will be involved in such consulting services, nor will any confidential information about the Debtors be provided to any Towers Watson employees working for a different client.

14.    Neither I nor any director or officer of, or professional employed by the Company has agreed to share or will share any portion of the compensation to be received from the Debtors, other than reimbursing disbursements or costs owed to third parties on account of services provided to the Debtors, with any other person other than the principal and regular employees of the Company.

15.    Neither I nor any director or officer of, or professional retained by the Company, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Company is to be employed.

16.    The Debtors do not owe the Company any fees or expenses for prepetition services, the payment of which is subject to limitations contained in the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

17.    If the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Executed on ___\17___, 2013

Name: Vincent Lee Bodnar

**Notary Statement:**

State:  Pennsylvania
County:  Chester

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Sandra E. Marino, Notary Public
Tredyffrin Twp., Chester County
My Commission Expires Aug. 2, 2014
Member. Pennsylvania Association of Notaries

7