## Exhibit 3

**Retiree Statement**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- X
In re                                                      :      Chapter 11
                                                           :
                                                           :      Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,[1]                           :
                                                           :      Jointly Administered
                        Debtors.                           :
                                                           :      **Hearing date: April 2, 2013 at 10:00 a.m. (ET)**
                                                           :      **Objections due: March 12, 2013 at 4:00 p.m. (ET)**
                                                           :
                                                           :      **RE: 9224**
                                                           :
----------------------------------------------------------X

## STATEMENT OF THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF NORTEL NETWORKS INC., ET AL. IN SUPPORT OF DEBTORS' MOTION FOR APPROVAL OF THE SETTLEMENT AGREEMENT AND TERMINATION OF RETIREE BENEFITS

This Statement of the Official Committee of Retired Employees of Nortel Networks Inc., *et al.* (the "Retiree Committee") is for individuals that have been identified as current or former employees of Nortel Networks Inc., *et al.* ("Nortel" or the "Debtors") who may be entitled to participate in the proposed settlement of the *Debtors' Motion for Entry of an Order Terminating Retiree Benefits and Approving a Settlement Proposal Pursuant to 11 U.S.C. § 1114* (the "Termination Motion"), which the Debtors filed in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on July 30, 2012 [Dkt. No. 8066].[2]

As you know, Nortel has sold its various assets and is no longer in business. Because it is no longer actively operating, it has sought Bankruptcy Court approval to terminate the payment of retiree benefits, claiming that it has an absolute right to do so under the relevant employee benefit plans. Nortel contends that it could exercise this right without court approval and Nortel further contends that it can also terminate the retiree benefits in bankruptcy.

As you may be aware, the Termination Motion seeks to terminate all of the retiree benefits provided under Nortel's various benefit plans and other programs, including, but not limited to,

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]   The Debtors have filed and served a Notice of the Settlement Agreement simultaneously herewith.

the Nortel Networks Inc. Retiree Medical Plan,[3] the Nortel Networks Inc. Retiree Life Insurance and Long-Term Care Plan for Retirees, certain predecessor plans, and other formal or informal benefit plans, agreements, arrangements or programs (including plans, agreements, arrangements or programs that are funded through the purchase of insurance) (collectively, and in each case as amended or modified from time to time, the "Retiree Welfare Plans"). The proposed Settlement Agreement[4] is the result of extensive negotiations between the Retiree Committee and the Debtors, which were conducted with the assistance of a Bankruptcy Court-appointed mediator (the "Mediator").

## The Retiree Committee Supports Approval of the Settlement Agreement

When the Debtors first sought to terminate retiree benefits in 2010, they asked the Bankruptcy Court for authority to do so without making any payment to retirees.

After the Retiree Committee was appointed, it required Nortel to turn over all available plan documents and summaries, communications to retirees, and certain other correspondence and financial information so that the Retiree Committee could analyze and review such materials. The Retiree Committee was authorized by the Bankruptcy Court to hire professionals and it retained and has been assisted by: (i) Togut, Segal & Segal LLP (the "Togut Firm"), as bankruptcy counsel; (ii) McCarter & English LLP (the "McCarter Firm"), as employee benefits counsel; (iii) Alvarez & Marsal ("A&M"), as financial advisor; and (iv) DaVinci Consulting Group LLC ("DaVinci"), as actuarial advisor[5] under a subcontract with A&M approved by the Bankruptcy Court (collectively, the "Professionals"). The Retiree Committee then spent the next 5 months reviewing such documents and information provided by Nortel and working with its Professionals before engaging the Debtors in settlement discussions and trying to reach a negotiated resolution of the Debtors' stated desire to terminate the Retiree Welfare Plans. Since the appointment of the Retiree Committee, the members of the Retiree Committee have been especially active and personally involved, meeting in person or by phone with the Professionals on an average of once a week, and sometimes more.

When those negotiations reached an impasse, the Debtors filed the Termination Motion and asked the Bankruptcy Court for authority to terminate the Retiree Welfare Plans and the retiree benefits provided thereunder (a) as of December 31, 2012, and (b) with a payment to retirees of $40 million, minus all costs of providing retiree benefits after July 1, 2012, which would have resulted in a net payment of less than $36 million.

As a result of additional efforts and negotiations, the Retiree Committee has obtained an agreement with the Debtors, subject to Bankruptcy Court approval, such that the Debtors will

---

[3]   The Nortel Networks Inc. Retiree Medical Plan includes the Employee Assistance Program and the Prescription Drug Benefits Program.

[4]   Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Settlement Agreement. In the event of any inconsistency, the terms of the Settlement Agreement govern.

[5]   The employees of DaVinci were acquired by Towers Watson Pennsylvania Inc. ("Towers") and Towers has continued to provide actuarial services to the Retiree Committee.

continue to provide retiree benefits until May 31, 2013, and approximately $66.9 million will be paid for the benefit of Eligible Participants (defined below) as of January 31, 2013.[6]

For the reasons described below, the Retiree Committee supports the Debtors' Motion for Court approval of the Settlement Agreement.

## What Is the Retiree Committee?

On January 14, 2009, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. On June 21, 2010, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing Debtors to Terminate Certain Retiree and Long-Term Disability Plans* (the "Original Termination Motion"), which sought Court approval to terminate all of the benefits provided under the Retiree Welfare Plans without any payment to retirees. Although the Debtors withdrew the Original Termination Motion on July 16, 2010, they filed a motion on June 2, 2011 seeking appointment of a retiree committee, in accordance with section 1114 of the Bankruptcy Code, 11 U.S.C. § 101, et seq., to engage in negotiations regarding the modification or termination of the Retiree Welfare Plans. *See Debtors' Motion for an Order Pursuant to Section 1114 of the Bankruptcy Code Appointing an Official Committee of Retired Employees* dated June 2, 2011 [Dkt. No. 5595]. The Bankruptcy Code provides for such committees for this purpose.

After the Court granted Nortel's motion to appoint an Official Committee of Retired Employees, the United States Trustee appointed the Retiree Committee and its members on August 2, 2011. The Retiree Committee consists of five retired Nortel employees who currently receive benefits under the Debtors' Retiree Welfare Plans. The Retiree Committee was appointed to negotiate on behalf of retirees regarding the Debtors' efforts to terminate benefits under the Retiree Welfare Plans. The Retiree Committee does not, however, represent the interests of any individual retiree or the interests of retirees who seek pension benefits or benefits other than benefits provided under the Retiree Welfare Plans.

Since its appointment, the Retiree Committee has worked hard to protect the rights of retirees under the Retiree Welfare Plans while at the same time seeking to negotiate a fair and equitable resolution of the Debtors' requests to terminate all benefits under the Retiree Welfare Plans. The Debtors and Retiree Committee have engaged in formal and informal discovery for approximately one year and have participated in extensive settlement negotiations with and without the assistance of the Mediator. The Retiree Committee also reached out to the Nortel retiree community, which provided the Retiree Committee with thousands of pages of relevant documents as well as statements concerning their individual claims for retiree welfare benefits. In addition, the Retiree Committee has appeared in Court on numerous occasions in connection with, or in opposition to, motions that affected retirees' rights. Additional information regarding the Retiree Committee and the Debtors' cases can be found at the Retiree Committee's official website: www.kccllc.net/nortelretiree.

---

[6]    This amount will reduce monthly if the Debtors continue to provide retiree benefits after the expected Termination Date (defined below).

Eventually, the Debtors and the Retiree Committee were able to enter into the Settlement Agreement, which is summarized and discussed in this Statement.

## What Are the Significant Terms of the Proposed Settlement?[7]

**Payment by the Debtors:**  Subject to approval by the Bankruptcy Court, the Debtors and the Retiree Committee have entered into the Settlement Agreement pursuant to which, among other things, the Debtors have agreed to make a settlement payment for the benefit of Eligible Participants (defined below) in the current gross amount of $66,879,000 (the "Settlement Amount")[8].  The Settlement Amount payable is reduced at the rate of $707,000 per month if the Debtors continue to provide benefits under the Retiree Welfare Plans after the expected Termination Date (defined below) and until the actual termination of the Retiree Welfare Plans.

**Effective Date of Settlement Agreement**:  The Settlement Agreement will become effective and binding upon all retirees and Eligible Participants on the date that an order of the Bankruptcy Court approving the Settlement Agreement becomes final and non-appealable (the "Effective Date").

**Termination of Retiree Welfare Plans:**  If the Settlement Agreement is approved by the Bankruptcy Court, **the Debtors will terminate all Retiree Welfare Plans and all coverage and benefits provided thereunder shall cease at 11:59 p.m. (ET) on May 31, 2013 (the "Termination Date").**

**Retiree Welfare Plans Run Off Period:**  If the Settlement Agreement is approved by the Bankruptcy Court, the time period for making claims for reimbursement of benefits covered by the Retiree Welfare Plans for claims incurred prior to the Termination Date (the "Run Off Period") will be reduced to six months, commencing on the Termination Date.  Claims for reimbursement of benefits covered by Retiree Welfare Plans for claims incurred prior to the Termination Date which are not properly made or submitted prior to the expiration of the Run Off Period shall be disallowed for all purposes.

## How Will the Settlement Amount Be Apportioned
## Among and Distributed to Retirees Eligible To Participate in the Settlement?

**Eligible Participants:**  Under the Settlement Agreement, "Eligible Participants" are:  (a) retired employees of the Debtors, their spouses and dependents who are eligible as of January 31, 2013 to receive benefits under the Retiree Welfare Plans;  (b) those Nortel employees who are currently

---

[7]   This Statement provides a summary of the Settlement Agreement.  You should carefully review the Settlement Agreement, a copy of which is attached to the *Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 353 and 1114 and Fed. R. Bankr. P. 9019 Approving a Settlement Agreement with the Official Committee of Retired Employees* [Dkt. No. 9224].  A copy of the Settlement Agreement may also be obtained from the Retiree Committee's website at:  www.kccllc.net/nortelretiree.  In the event of any inconsistency, the terms of the Settlement Agreement govern.

[8]   A portion of the Settlement Amount will be used to satisfy Settlement Administration Costs that are necessary to administer and implement the Settlement Agreement and the VEBA, determine claims asserted or payable under the Settlement Agreement and resolve any relevant disputes that arise after the Effective Date.

4

receiving employer-paid long-term disability benefits, their eligible spouses and dependents, who may qualify to participate in the settlement under the terms of section 8(a) of the Settlement Agreement; and (c) former employees currently receiving medical benefits under COBRA, who qualify to participate in the settlement under the terms of section 8(a) of the Settlement Agreement. Pursuant to section 8(a) of the Settlement Agreement, in order for a current employee of the Debtors, including an LTD Employee, to elect to receive benefits under the Retiree Welfare Plans as of the Effective Date, such employee must, by a written document to be received by the Debtors within thirty (30) days after the Effective Date, voluntarily terminate his or her employment with the Debtors and irrevocably relinquish his or her right to receive benefits under the plans, arrangements, agreements and programs available to current employees, including, without limitation, income continuation benefits pursuant to the Nortel Networks Inc. Long-Term Disability Plan (unless otherwise agreed to by the Debtors in writing in connection with the termination or consensual resolution regarding the termination of such benefits).

**VEBA:**  Under the Settlement Agreement, the Retiree Committee intends to establish a "voluntary employees' beneficiary association" within the meaning of section 501(c)(9) of the Tax Code (a "VEBA") as a way of providing non-taxable benefits to Eligible Participants following the Termination Date. The VEBA, among other things, will be authorized to purchase a group medical insurance policy (the "VEBA Sponsored Medical Plan") from Aetna Life Insurance Company for the benefit of Eligible Participants, *provided that* (i) a sufficient number of Eligible Participants indicate that they prefer the VEBA to use the portion of the Settlement Amount which is allocable to the Medical Claims (defined below) to pay a portion of the Eligible Participants' premium for the VEBA Sponsored Medical Plan rather than to distribute those settlement proceeds to Eligible Participants through a tax-advantaged health reimbursement arrangement (account) ("HRA"), and (ii) a sufficient number of Eligible Participants choose to participate in the VEBA Sponsored Medical Plan to satisfy Aetna Life Insurance Company's underwriting requirements.

**Alternative Insurance Programs:**  The Retiree Committee solicited proposals from numerous insurance providers for group insurance products for the Eligible Participants. The VEBA Sponsored Medical Plan is the only group medical insurance program that any insurer proposed in response to the Retiree Committee's requests. No insurance provider that the Retiree Committee consulted was willing to offer group life insurance or long-term care benefits for the Eligible Participants.

**Apportionment Methodology:**  The Settlement Amount will be apportioned among Eligible Participants according to the methodology described in the Settlement Agreement and summarized below. The description in the Settlement Agreement is more detailed and is controlling. However, to help you understand the settlement value allocated to you, annexed hereto as Exhibit "1" is a confidential, personalized notice (your "Individual Claim Form") describing your existing benefits, the amount of insurance subsidy you currently receive from Nortel under the Retiree Welfare Plans for medical benefits, and an estimate of the total settlement value allocated to you (your "Settlement Value") from the Settlement Amount on account of the termination of your benefits under the Retiree Welfare Plans.[9] Attached to your Individual Claim Form you will find a table which sets forth your estimated Settlement Value based on your benefit

---

[9]    Based upon source data provided by the Debtors.

elections, age and years of service with Nortel and compares your allocation to that of other similarly situated Eligible Participants. Your Settlement Value is an estimate and the Retiree Committee has the ability to adjust your Settlement Value to correct any errors or to account for changes in the population of retirees. The final determination of your Settlement Value by the Retiree Committee is binding.

In sum, the Settlement Amount will be allocated by:

      (1) Determining the net present value of the benefits each Eligible Participant would be entitled to receive over time under the Nortel Networks Inc. Retiree Medical Plan ("Medical Claims") and the Nortel Networks Inc. Retiree Life Insurance and Long-Term Care Plan for retirees ("Life Insurance and LTC Claims") based on actuarial assumptions and principles, and interest rate assumptions used to calculate the Nortel liability for purposes of the negotiations with the Debtors[10];

      (2) Adding all Eligible Participants' Medical Claims, Life Insurance Claims and LTC Claims together to obtain the total benefits claim (the "Total Claim");

      (3) Determining what proportion of the Total Claim each Eligible Participant would be entitled to receive for each of Medical Claims, and Life Insurance Claims and LTC Claims to arrive at the Settlement Value; and

      (4) Allocating the Settlement Amount to each Eligible Participant in accordance with their respective Settlement Value for each type of benefits.

This method attempts to allocate benefits in proportion to each Eligible Participant's respective share of the benefits that Nortel would have paid if it had continued to provide benefits under the Retiree Welfare Plans, but reduces each Eligible Participant's Settlement Value to take into account the fact that after the Termination Date of the Retiree Welfare Plans, the Settlement Amount will be the only source of funds for compensating for or replacing such lost benefits.

This allocation method also is applied separately to Medical Claims, Life Insurance Claims and LTC Claims so that the proportion of the Settlement Amount allocated to pay Medical Claims will mirror the proportion of the Total Claim that would have been paid for Medical Claims if the Nortel retiree welfare plans had been continued. In other words, the Retiree Committee intends that the amount which the VEBA will allocate for Medical Claims under the Retiree Welfare Medical Plan will be based on the aggregate actuarial liability for the Medical Claims as a percentage of the aggregate actuarial liability for all types of benefits for which the Settlement Amount is intended to compensate. The Retiree Committee also intends that the VEBA will allocate an amount to pay for Life Insurance and LTC Claims based on the proportionate actuarial valuation of the aggregate Life Insurance and LTC Claims of Eligible Participants as a percentage of the aggregate actuarial liability for all types of benefits for which the Settlement Amount is intended to compensate.

The amounts calculated to be due for Life Insurance and LTC Claims will be allocated to HRAs because, as noted above, no group life or long-term care insurance plan is available for Eligible

---

[10]    Actuarial assumptions used to determine the Medical Claims and Life Insurance and LTC Claims are consistent with those utilized by the Retiree Committee and its advisors during their negotiations with the Debtors.

Participants. In the event that the VEBA Sponsored Medical Plan is not obtained, the amount allocable to the Medical Claims will also be allocated to HRAs.

In the event that the VEBA Sponsored Medical Plan is obtained, the amount allocated to Medical Claims will be used by the VEBA to pay a portion of the premiums that Eligible Participants will be required to pay under the VEBA Sponsored Medical Plan for medical coverage.

### When Nortel Terminates the Retiree Welfare Plans, Will Replacement Insurance Policies be Available?

**Efforts to Obtain Insurance**: Throughout the settlement negotiation process, the Retiree Committee explored whether it could provide Eligible Participants with access to group insurance. The Retiree Committee solicited proposals from a number of insurance companies to provide insurance benefits to the Eligible Participants which would, to the extent possible, replicate the benefits provided under the Retiree Welfare Plans. As stated above, however, the VEBA Sponsored Medical Plan is the only group insurance program that was proposed in response to the Retiree Committee's requests. A summary of the VEBA Sponsored Medical Plan is enclosed with this Statement as Exhibit "2." No group life or long-term care insurance was available.

**Use of the Settlement Proceeds**: Provided that the Election Threshold (described below) is met, the Retiree Committee proposes that the VEBA will attempt to obtain the VEBA Sponsored Medical Plan for the benefit of Eligible Participants. If it does so, Eligible Participants will receive enrollment packages from Aetna Life Insurance Company. There can be no guarantee, however, that a sufficient number of Eligible Participants will enroll in the VEBA Sponsored Medical Plan to satisfy Aetna Life Insurance Company's underwriting requirements. If an insufficient number enroll, the settlement amounts allocable to Medical Claims under the Settlement Agreement – which would have been used to help subsidize Eligible Participants' premiums due for coverage under the VEBA Sponsored Medical Plan – will be used by the VEBA to fund HRAs for the benefit of Eligible Participants in proportion to the amounts of the Eligible Participants' respective Medical Claims under the Settlement Agreement, subject to applicable provisions of law, including statutes, regulations, court decisions, administrative pronouncements and private rulings. Again, in the event that the Election Threshold is met, and the VEBA Sponsored Medical Plan is obtained, the amount allocated to Medical Claims will be used by the VEBA to pay a portion of the premium that Eligible Participants will be required to pay under the VEBA Sponsored Medical Plan.

The "Election Threshold" that must be met if the VEBA is to be authorized to obtain the VEBA Sponsored Medical Plan from Aetna Life Insurance Company for the benefit of Eligible Participants has two parts: (i) a sufficient number of Eligible Participants (the "Voting Threshold") must indicate, by completing and returning ballots in the form annexed hereto as Exhibit "3," that they would prefer the VEBA to offer the VEBA Sponsored Medical Plan rather than to distribute settlement proceeds through HRAs, and (ii) a sufficient number of Eligible Participants must choose to participate in the VEBA Sponsored Medical Plan to satisfy the insurer's underwriting requirements. The Voting Threshold that must be met for the VEBA to offer the VEBA Sponsored Medical Plan also has two parts: (a) at least 50% of the number of Eligible Participants who have Medical Claims must vote in favor of the VEBA offering the VEBA Sponsored Medical Plan, and (b) individuals entitled to at least two-thirds of the settlement amount to be paid on account of

Medical Claims must vote in favor of the VEBA offering the VEBA Sponsored Medical Plan. The VEBA Sponsored Medical Plan will be offered only if the Election Threshold is satisfied in all respects.

If the Election Threshold is satisfied, Eligible Participants' entitlement to a portion of the Settlement Amount to compensate them for lost medical benefits will be paid by the VEBA as a subsidy toward the premiums that will be due from Eligible Participants under the VEBA Sponsored Medical Plan. The amount that will be paid by the VEBA will satisfy only a portion of the premium that is payable by each Eligible Participant, and each Eligible Participant will be required to pay the balance of the premium that will be due and owing on account of his or her coverage under the VEBA Sponsored Medical Plan.

If the Election Threshold is not satisfied, the portion of the Settlement Amount that is allocated to Eligible Participants' Medical Claims will be used by the VEBA to fund HRAs. An HRA will allow Eligible Participants to seek reimbursement, on a non-taxable basis, of eligible medical expenses from his or her HRA, subject to applicable provisions of law, including statutes, regulations, court decisions, administrative pronouncements and private rulings.

Because group life insurance and long-term care insurance are not available to Eligible Participants, the Retiree Committee intends to have the VEBA allocate the portion of the Settlement Amount allocable to the Life and LTC Claims to HRAs. Each Eligible Participant will then be able to seek reimbursement, on a non-taxable basis, of eligible medical expenses from his or her HRA account.

## What Claims are Being Released as a Result of the Settlement?

**Retiree Welfare Benefits Claims and Related Claims.** Approval of the Settlement Agreement will effectuate a release of a broad range of claims that Eligible Participants may have against the Debtors and related parties, as set forth in full in section 11 of the Settlement Agreement. The claims that will be released include, but are not limited to, claims for retiree life insurance, health insurance and long-term care benefits and claims arising from the termination of the Retiree Welfare Plans. These claims instead will be paid solely from the Settlement Amount in accordance with the terms of the Settlement Agreement. You should carefully review the Settlement Agreement which describes how claims will be treated and released.

**Retiree Proofs of Claim**: Any and all proofs of claim filed by Retirees on account of Retiree Claims shall be disallowed and expunged from the Debtors' claims register on the Effective Date to the extent that such proofs of claim relate to Retiree Claims. THIS MEANS THAT, AS PART OF THE SETTLEMENT, HOLDERS OF RETIREE CLAIMS WILL HAVE THOSE CLAIMS AGAINST THE DEBTORS AND OTHER THIRD PARTIES RELEASED AND EXPUNGED, SUBJECT ONLY TO THEIR ENTITLEMENT (IF ANY) TO RECEIVE PAYMENT OF A PORTION OF THE SETTLEMENT AMOUNT.

## How Was the Settlement Agreement Reached?

The Retiree Committee and its Professionals engaged in extensive settlement negotiations with the Debtors, both with and without the assistance of the Mediator, while simultaneously preparing to litigate the Debtors' Termination Motion. The Debtors have asserted that they have a unilateral right to terminate the benefits provided under the Retiree Welfare Plans without any liability; the Retiree Committee has disputed that assertion. To evaluate the strengths and weaknesses of the parties' positions, the Retiree Committee, among other things, served and responded to: (i) requests for the production of documents; (ii) requests for admissions; and (iii) interrogatories. The Professionals reviewed and analyzed thousands of pages of documents that were obtained from the Debtors and third parties. Believing that additional information could be provided from the retiree community, the Professionals contacted hundreds of Nortel retirees and obtained and analyzed documentation they possessed regarding the Retiree Welfare Plans. In addition, the Professionals spoke with hundreds of retirees to get a better sense of their understanding of their rights under the Retiree Welfare Plans.

The Retiree Committee and its Professionals were prepared to litigate the Termination Motion, but they were also cognizant of the risks posed by pursuing litigation that would have asked the Bankruptcy Court to make new law, which is always risky. The members of the Retiree Committee concluded that it was more prudent to actively seek a compromise and settlement of the Debtors' and retirees' rights, believing that a settlement, if adequate, would be the best option for retirees. Most important to the Retiree Committee was to preserve, to the extent possible, retirees' ability to receive some compensation. A contested trial might not have achieved that goal.

Settlement negotiations with the Debtors were vigorous. When the parties couldn't make progress alone, the parties agreed to continue negotiations with the assistance of a Bankruptcy Court-Appointed Mediator. Numerous mediation sessions over the course of months produced the Settlement Agreement, which the Retiree Committee believes to be in the best interests of the recipients of retiree welfare benefits from Nortel. One of these sessions lasted an entire day and did not end until 1 am.

### Why Does the Retiree Committee Support the Settlement Agreement?

The Debtors originally sought Court permission to terminate all benefits under the Retiree Welfare Plans as of August 1, 2010 without making <u>any</u> further payment or offering <u>any</u> compensation to retirees.  After appointment of the Retiree Committee, and after initial settlement negotiations with the Retiree Committee reached an impasse, the Debtors filed the Termination Motion by which they seek to terminate benefits provided under the Retiree Welfare Plans to retirees on December 31, 2012 in exchange for a payment of $40 million;  however, the Debtors intended to subtract from that $40 million payment all of the costs of retiree benefits incurred on and after July 31, 2012, when the motion was filed, which would have resulted in a net payment of less than $36 million.

While the parties maintain their respective legal positions concerning the Debtors' right to terminate the Retiree Welfare Plans and the operation of Bankruptcy Code section 1114, both parties recognize that, given the novel and complex legal issues presented in this case, pursuing such litigation would be time-consuming and, most importantly, its outcome would be uncertain.

An unfavorable ruling or trial verdict that allows the Debtors to terminate benefits under the Retiree Welfare Plans immediately could be catastrophic for retirees and far less favorable than the result represented by the Settlement Amount.  If the Debtors prevail on their Termination Motion, the benefits under the Retiree Welfare Plans would be terminated, and the settlement amount offered to retirees would be less than $36 million.  Moreover, there can be no assurance that a court would compel the Debtors to continue providing benefits under the Retiree Welfare Plans while an unfavorable ruling is subject to appeal.

In contrast, under the Settlement Agreement, the Debtors will (a) continue to provide benefits under the Retiree Welfare Plans until May 31, 2013, thereby enabling retirees to receive uninterrupted benefits under the Retiree Welfare Plans (i) for 10 months after the Termination Motion was filed, and (ii) nearly 22 months after the Retiree Committee was appointed, and (b) make a settlement payment of approximately $67 million[11] for the benefit of Eligible Participants. In addition, the Settlement Agreement presents an opportunity for Eligible Participants (a) to gain access to a group medical plan if the Election Threshold is reached, and (b) to realize the benefits of the Settlement Agreement in a tax-efficient manner.  All of these attributes of the Settlement Agreement represent a result that is far better than any prior proposal by the Debtors concerning termination of the Retiree Welfare Plans:  Eligible Retirees will obtain approximately $30 million more than they would receive if the Debtors' Termination Motion is granted.  For all of these reasons, the Retiree Committee supports the Settlement Agreement.

---

[11]    The Settlement Amount payable is reduced at the rate of $707,000 per month if the Debtors continue to provide benefits under the Retiree Welfare Plans after the expected Termination Date and until the actual termination of the Retiree Welfare Plans.

## Miscellaneous

**THE SETTLEMENT AGREEMENT IS THE CONTROLLING DOCUMENT.
YOU SHOULD CAREFULLY REVIEW AND CONSIDER THE SETTLEMENT
AGREEMENT, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION
PROVISIONS CONTAINED IN THE SETTLEMENT AGREEMENT.**

Any inquiries concerning this Statement and the materials enclosed herewith should be addressed to the attorneys for the Retiree Committee, either by submitting such inquiries through the Retiree Committee website (www.kccllc.net/nortelretiree) or by contacting the undersigned attorneys for the Retiree Committee.

Dated:  January __, 2013

**The Official Committee of Retired Employees,
By its attorneys,
Togut, Segal & Segal LLP**
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Attn:  Albert Togut, Esq.
            Neil Berger, Esq.
            neilberger@teamtogut.com

## Exhibit "1" Confidential Individual Claim Form

# INDIVIDUAL DATA[1]

### Name: John Doe

| Demographic and Employment Data | |
|---|---|
| Nortel ID Number | XXXXXXXX |
| Participant Date Of Birth | MM/DD/YYYY |
| Spouse Date Of Birth | MM/DD/YYYY |
| Retirement Date | MM/DD/YYYY |
| Years Of Service Toward Retiree Benefits | XX |
| Retired Under Restructuring Program[2] | [Yes/No] |

| Existing Retiree Benefits | |
|---|---|
| Retirement Program[3] | [Balanced, Traditional, Traditional Grandfathered, Investor] |
| Medical Benefit Coverage Level | [None, Participant Only, Participant & Spouse, Participant & Child, Family, Surviving Spouse, Surviving Spouse & Family] |
| Life Insurance Benefit Amount | [None, $10,000 or $35,000] |
| Long-Term Care Benefit | [Retiree only: up to $100 per day up to a lifetime maximum of $180,000 or Retiree & spouse: up to $70 per day for retiree & spouse up to a combined lifetime maximum of $125,000] |

# ILLUSTRATIONS

I. **If The Election Threshold Is Met, The VEBA Sponsored Medical Plan Is Offered And You Choose To Enroll In The VEBA Sponsored Medical Plan:** [4]

    A. **Your medical subsidy amount is projected to be as illustrated in the "Amount Payable by VEBA" columns of the table below:**

| Medical Subsidy Amount *(in $ per month)* | | | | |
|---|---|---|---|---|
| | Subsidy Provided by Nortel Under Retiree Welfare Plans | | Projected Subsidy Amount Payable by VEBA[5] | |
| | If Pre-Medicare | If Medicare Eligible | If Pre-Medicare | If Medicare Eligible |
| **For You** (Found on Page XX) | | | | |
| **For Your Dependents** (Found on Page XX) | | | | |

---

[1]   The Retiree Committee relied upon individual data, including demographic and employment data and information concerning Nortel- sponsored benefits, including costs and subsidies, that the Debtors provided to the Retiree Committee.

[2]   "Yes" denotes retirement at age 50-54 in the 1995/96 Retirement Enhancement Program, in the 1998 Early Retirement Incentive Program, or under a similar program in 2000/2001.

[3]   Denotes the previously available Nortel Capital Accumulation and Retirement Program ("CARP") that you participated in and that governs your eligibility for and subsidy toward medical benefits.

[4]   If the election threshold is met, the VEBA Sponsored Medical Plan is offered and you choose not to enroll in the VEBA Sponsored Medical Plan, you will WAIVE your Medical Claim for all purposes.

[5]   The projected subsidy amount to be paid by the VEBA ("VEBA Medical Subsidy") is determined by multiplying the subsidy previously provided by Nortel ("Nortel Medical Subsidy") by [XX]% (the "Subsidy Ratio"). The Subsidy Ratio is equal to the Total Settlement Amount divided by the Total Claim Value and is the same for every retiree and dependent.

B.  **The VEBA Medical Subsidy Will Be Used By The VEBA To Pay A Portion Of Your Monthly Health Insurance Premium as Illustrated Below**:

| VEBA Sponsored Medical Plan Cost  *(examples shown in $ per month)* | | |
|---|---|---|
| | **Example 1**<br>**(If Pre-Medicare)**<br>*See Note A Below* | **Example 2**<br>**(If Medicare Eligible)**<br>*See Note B Below* |
| **For You** | | |
| Gross Cost (Before Subsidy) | $XXX.XX | $XXX.XX |
| Less Projected Subsidy | XXX.XX | XXX.XX |
| Amount Payable by VEBA | | |
| Net Cost to You (After Subsidy) | $XXX.XX | $XXX.XX |
| **For Your Dependents** | | |
| Gross Cost (Before Subsidy) | $XXX.XX | $XXX.XX |
| Less Projected Subsidy | XXX.XX | XXX.XX |
| Amount Payable by VEBA | | |
| Net Cost to You (After Subsidy) | $XXX.XX | $XXX.XX |

Note A:  Example A assumes ZZ medical plan and YY pharma plan.

Note B:  Example B assumes WW medical plan and VV pharma plan.

Note C:  The rates and provisions provided here are for illustrative purposes only and do not constitute any assurance or solicitation of insurance coverage. Rates and provisions may be subject to change or availability based upon the results of the pre-enrollment election ballot and underwriting guidelines set by [Insurance Co.].

C.  **In Addition, The Following Amounts Will Be Funded To A Health Reimbursement Arrangement/Account ("HRA") In Your Favor**:

| Benefit Type | Expected Settlement Value | Found on Page |
|---|---|---|
| Life Insurance | $x,xxx | YY |
| Long-Term Care | $x,xxx | YY |
| Total | $x,xxx | |

II.  **If The Election Threshold Is Not Met, The VEBA Sponsored Medical Plan Will Not Be Offered And Your Settlement Value Will Be Funded To An HRA in Your Favor**:

| Claim Type | Settlement Value | Found on Page |
|---|---|---|
| Your Medical Claim | $x,xxx | YY |
| Your Dependents' Medical Claim | $x,xxx | YY |
| Life Insurance Claim | $x,xxx | YY |
| Long-Term Care Claim | $x,xxx | YY |
| Total Settlement Value | $x,xxx | |

Your expected total Settlement Value equals your allocated share of the total Settlement Amount (currently $66.879M).

EXHIBIT "2"

SUMMARY OF VEBA SPONSORED MEDICAL PLAN

[TO BE SUPPLIED AFTER NOTICE PROCEDURES ARE APPROVED]

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------X

:

In re:                                                     :        Chapter 11

                                                          :

NORTEL NETWORKS INC., *et al.*,          :        Case No. 09-10138 (KG)

                                                          :

                                    Debtors.        :

                                                          :

---------------------------------------------------------------X

### INFORMATION ABOUT THE ATTACHED PRE-ENROLLMENT BALLOT

To Retirees with Medical Benefits Under the Nortel Retiree
Welfare Plans:

The Official Committee of Retired Employees of Nortel Networks Inc. *et al.* (the "Retiree Committee") is trying to determine whether a VEBA sponsored group medical insurance plan (the "VEBA Sponsored Medical Plan") should be made available in connection with the proposed settlement with Nortel which will result in the termination of the Nortel Retiree Medical Plan.

Enclosed in this packet you will find a Ballot which the Retiree Committee will use to determine whether eligible participants prefer to have their share of settlement proceeds allocable to lost medical benefit subsidies used to (a) subsidize a portion of the insurance premiums that you would be required to pay under the VEBA Sponsored Medical Plan or (b) fund a tax-efficient Health Reimbursement Arrangement/Account. Information that is designed to help you make your decision is included in the attached materials.

**The enclosed Ballot differs from annual enrollment forms that you have previously received from Nortel concerning elections under the Nortel Retiree Medical Plan. Nortel is not providing any benefits under the proposed medical plan, is not a plan sponsor and has no liability for such benefits or plan. Unlike annual enrollment forms, you must complete and submit this Ballot for your vote to count and to protect your rights.**

Please complete, sign and date the attached Ballot and return it in the enclosed envelope so that it is actually received by Kurtzman Carson Consultants, LLC on or before **March 12, 2013 at 4:00 p.m. (EST)**. If you fail to timely complete and return your Ballot, it will be counted as a vote against the VEBA Sponsored Medical Plan being offered by the Retiree Committee.

1

Settlement proceeds that are allocable to life insurance and long-term care benefits are treated separately from any settlement proceeds allocable to your medical benefits. Information concerning life insurance and long-term care benefits can also be found in the Retiree Committee's Statement which is enclosed herewith as Exhibit "3."

Please carefully read all of the attached materials before completing your Ballot.

The Official Committee of Retired Employees
By its attorneys,
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Attn:   Albert Togut, Esq.
        Neil Berger, Esq.
        neilberger@teamtogut.com

EXHIBIT "3"

**FAILURE TO COMPLETE AND TIMELY RETURN THIS
CONFIDENTIAL BALLOT WILL AFFECT YOUR RIGHTS, INCLUDING RIGHTS:**

**(A) To participate in a retiree medical plan that may be available as part of a Settlement
Agreement with the Debtors, and
(B) To receive certain benefits under the Settlement Agreement.**

**BEFORE COMPLETING THIS BALLOT YOU SHOULD CAREFULLY
REVIEW THE ATTACHED INSTRUCTIONS, THE DEBTORS' MOTION TO
APPROVE THE SETTLEMENT AGREEMENT AND ITS EXHIBITS, AND
THE RETIREE COMMITTEE'S STATEMENT SUPPORTING THE MOTION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

----------------------------------------------------------------x
                                                 :
In re:                                           :          Chapter 11
                                                 :
NORTEL NETWORKS INC., *et al.*,                  :          Case No. 09-10138 (KG)
                                                 :
                    Debtors.                     :
                                                 :
                                                 :
----------------------------------------------------------------x

**CONFIDENTIAL PRE-ENROLLMENT BALLOT FOR ELIGIBLE
RETIRED EMPLOYEES OF NORTEL NETWORKS INC., ET AL.
TO INDICATE A PREFERENCE WHETHER SETTLEMENT PROCEEDS ALLOCABLE
TO LOST MEDICAL BENEFITS SHOULD BE DISTRIBUTED THROUGH TAX-
EFFICIENT HRA ACCOUNTS OR USED TO PAY FOR A PORTION OF THE
PREMIUMS UNDER POTENTIAL VEBA SPONSORED MEDICAL PLAN**

---

**DEADLINE FOR COMPLETION:  MARCH 12, 2013**

THIS PRE-ENROLLMENT ELECTION BALLOT
MUST BE COMPLETED, SIGNED AND RETURNED SO THAT IT IS
ACTUALLY RECEIVED BY

NORTEL RETIREE BALLOT PROCESSING
C/O KURTZMAN CARSON CONSULTANTS, LLC
2335 ALASKA AVENUE
EL SEGUNDO, CA  90245
BY  MARCH 12, 2013 AT 4:00 P.M.
(EASTERN STANDARD TIME)

---

1

I. <u>The Ballot</u>

On January [__], 2013, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order (the "<u>Procedures Order</u>")[1] that approved the form and method of notice to be provided to retirees of Nortel Networks Inc. *et. al.*, ("<u>Nortel</u>" or the "<u>Debtors</u>") regarding the proposed Settlement Agreement (the "<u>Settlement Agreement</u>") that has been negotiated between Nortel and the Official Committee of Retired Employees (the "<u>Retiree Committee</u>") in its capacity as "authorized representative" under 11 U.S.C. § 1114(b)(1).

The proposed Settlement Agreement is summarized in the Statement (the "<u>Statement</u>") of the Retiree Committee in Support of the Debtors' Motion to Approve Settlement Agreement for Termination of Retiree Benefits (the "<u>Motion</u>"). Copies of the Statement, Motion and Settlement Agreement are being sent to you along with this Ballot for your review, and the Retiree Committee encourages you to carefully read them. These documents can also be obtained from the Retiree Committee's website at: www.kccllc.net/nortelretiree.

This confidential Pre-Enrollment Ballot (the "<u>Ballot</u>") is a means for the Retiree Committee to determine whether retirees and others who may be eligible for medical benefits under the Nortel Retiree Welfare Plans or the Settlement Agreement (the "Eligible Participants") would prefer to (a) receive their allocable share of settlement proceeds on account of lost medical benefit subsidies on a tax-free basis through health reimbursement arrangement (accounts) ("HRA") or (b) have the VEBA (defined below) use such funds to pay a portion of Eligible Participants' insurance premiums for the VEBA Sponsored Medical Plan. To assist you in completing the Ballot, a summary of the benefits that Aetna Life Insurance Company proposes to offer under the VEBA Sponsored Medical Plan, and your personalized Individual Claim Form are enclosed.

You are encouraged to carefully review the Individual Claim Form and the summary of benefits: the benefits would be provided under a plan sponsored by successors to the Retiree Committee and not Nortel, the subsidy that would be payable by the VEBA would be less than the subsidy that you are currently receiving from Nortel, and the VEBA Sponsored Medical Plan does not replicate the types of medical coverage that are currently provided under the Nortel Retiree Medical Plan.

**The Ballot is a survey and does not constitute, and shall not be deemed to be, a binding insurance enrollment election. Also, the Ballot is not a guarantee that the VEBA Sponsored Medical Plan will be offered.**

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the motion to approve the Procedures Order. In the event of any inconsistency, the terms of the Settlement Agreement govern.

**This Ballot applies only to medical insurance coverage, and not long-term care, life insurance or other types of retiree benefits.**

II. The VEBA Sponsored Medical Plan

Under the proposed Settlement Agreement, the Retiree Committee intends to establish a "voluntary employees' beneficiary association" within the meaning of section 501(c)(9) of the Tax Code (a "VEBA") as a means of providing certain welfare benefits to eligible recipients following termination of the Debtors' Retiree Welfare Plans. The VEBA will be able to provide non-taxable benefits to retirees.

The VEBA, among other things, will be authorized to purchase a group medical insurance policy (the "VEBA Sponsored Medical Plan") from Aetna Life Insurance Company for the benefit of Eligible Participants, but only if (i) a sufficient number (the "Voting Threshold") of Eligible Participants indicate, **by completing and returning the attached Ballot**, that they would prefer the VEBA to offer the VEBA Sponsored Medical Plan rather than to distribute settlement proceeds through HRAs, and (ii) a sufficient number of Eligible Participants choose to participate in the VEBA Sponsored Medical Plan to satisfy the insurer's underwriting requirements (the "Underwriting Threshold" and together with the Voting Threshold, the "Election Threshold").

The Voting Threshold that must be met for the VEBA to offer the VEBA Sponsored Medical Plan has two parts: (a) at least 50% of the number of Eligible Participants must vote in favor of offering the VEBA Sponsored Medical Plan, and (b) Eligible Participants entitled to at least two-thirds of the settlement amount to be paid as a result of the termination of Nortel's Retiree Medical Plan and the loss of medical benefits must vote in favor of offering the VEBA Sponsored Medical Plan.

The VEBA Sponsored Medical Plan will be offered only if the Election Threshold is satisfied in all respects. If the Election Threshold is satisfied, the portion of the Settlement Amount that is allocated to compensate Eligible Participants for lost medical benefits will be used by the VEBA to partially subsidize the premiums that will be due under the VEBA Sponsored Medical Plan.

If the Election Threshold is not satisfied, the portion of the Settlement Amount allocated to compensate Eligible Participants for the loss of medical benefit subsidies will be used to fund HRAs for the benefit of Eligible Participants. An HRA will allow Eligible Participants to seek reimbursement of eligible medical expenses on a non-taxable basis, up to specified individual limits based on the value of the individual's claim for medical benefits under the Nortel Retiree Medical Plan and the Settlement Agreement, subject to I.R.S. requirements.

**IF YOU FAIL TO COMPLETE AND TIMELY RETURN THE ANNEXED BALLOT, YOU WILL BE DEEMED TO HAVE VOTED AGAINST THE VEBA SPONSORED MEDICAL PLAN.**

3

**IF THE VEBA SPONSORED MEDICAL PLAN IS OFFERED BECAUSE THE ELECTION THRESHOLD IS SATISFIED AND YOU HAVE NOT SUBMITTED A BALLOT INDICATING YOUR PREFERENCE TO PARTICIPATE IN THAT PLAN, YOU WILL HAVE AN OPPORTUNITY TO ENROLL IN THE VEBA SPONSORED MEDICAL PLAN, BUT IF YOU FAIL TO DO SO, YOU WILL GIVE UP ANY ENTITLEMENT TO SETTLEMENT FUNDS ALLOCABLE TO YOU ON ACCOUNT OF YOUR PARTICIPATION IN THE NORTEL RETIREE MEDICAL PLAN AND YOU WILL HAVE NO CLAIM TO ANY BENEFITS OR FUNDS ON ACCOUNT OF THE RETIREE MEDICAL BENEFITS BEING TERMINATED.**

III.  Instructions for Completing the Ballot

(a) Please read and follow these instructions carefully. **You must submit your Ballot to KCC so that the Ballot is actually received no later than 4:00 p.m. Eastern Standard Time on March 12, 2013 (the "Election Deadline").** If your Ballot is not received by KCC by the Election Deadline, it will be counted as a vote against the VEBA Sponsored Medical Plan in determining whether the Election Threshold has been met. You must submit your Ballot in the pre-addressed, stamped envelope that is attached to the Ballot. Do not submit your Ballot by fax, e-mail or any other electronic means -- it will not be accepted.

(b) Your Ballot will only be counted if you:

    i.  Indicate your preference to elect or reject the VEBA Sponsored Medical Plan by checking the proper box in Item 1;

    ii.  Sign the Ballot by hand at Item 2. Your original signature is required on the Ballot for your vote to count;

    iii.  Indicate your relationship with any retiree for whom you are completing a Ballot if you are not a retiree or beneficiary yourself, specify the capacity in which you are signing, and provide proof of your authorization to sign on behalf of the retiree or beneficiary. You must also provide your name and mailing address if it is different from the name and address on the mailing label attached to the Ballot or if no such label is attached; and

    iv.  Return the completed Ballot to KCC in the pre-addressed, stamped envelope enclosed with this Ballot.

(c) If you believe you received a Ballot in error, please contact KCC immediately by telephone at 877-634-7178.

(d) If your Ballot indicates a preference both to elect and to reject participation in the VEBA Sponsored Medical Plan, or fails to indicate either an election or a rejection of participation in the VEBA Sponsored Medical Plan, it will be counted as a vote against the VEBA Sponsored Medical Plan.

4

(e) After the Election Deadline, no Ballot may be withdrawn or modified without the prior approval of the Bankruptcy Court.

(f) **The Ballot is a survey and does not constitute a binding insurance enrollment election.  Also, the Ballot is not a guarantee that the VEBA Sponsored Medical Plan will be offered.**

**THE RETIREE COMMITTEE WILL POST A NOTICE ON THE RETIREE COMMITTEE WEBSITE ON OR BEFORE MARCH 15, 2013 ADVISING WHETHER THE ELECTION THRESHOLD HAS BEEN SATISFIED AND WHETHER THE RETIREE COMMITTEE WILL OFFER THE VEBA SPONSORED MEDICAL PLAN.**

**THE RETIREE COMMITTEE WEBSITE ADDRESS IS:
WWW.KCCLLC.NET/NORTELRETIREE**

**IF YOU HAVE ANY QUESTIONS REGARDING THE
BALLOT OR THE BALLOTING PROCEDURES
GENERALLY, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR
OTHER ENCLOSED MATERIALS, PLEASE CALL KCC AT 877-634-7178.
PLEASE NOTE THAT KCC IS NOT AUTHORIZED TO,
AND WILL NOT, PROVIDE LEGAL ADVICE.**

Dated:  January __, 2013

The Official Committee of Retired Employees
By its attorneys,
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Attn:   Albert Togut, Esq.
        Neil Berger, Esq.
        neilberger@teamtogut.com

5

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE
------------------------------------------------------------X
                                              :
In re:                                        :        Chapter 11
                                              :
NORTEL NETWORKS INC., *et al.*,               :        Case No. 09-10138 (KG)
                                              :
                        Debtors.              :
                                              :
------------------------------------------------------------X

## <u>CONFIDENTAL PRE-ENROLLMENT BALLOT</u>

THIS IS A PRE-ENROLLMENT BALLOT TO BE SUBMITTED BY
RETIREES ELIGIBLE TO RECEIVE MEDICAL INSURANCE BENEFITS UNDER THE NORTEL
NETWORKS RETIREE MEDICAL PLAN OR SETTLEMENT AGREEMENT.

\*      \*      \*      \*      \*

**THIS BALLOT DIFFERS FROM ANNUAL ENROLLMENT FORMS THAT YOU
HAVE PREVIOUSLY RECEIVED FROM NORTEL CONCERNING ELECTIONS
UNDER THE NORTEL RETIREE MEDICAL PLAN.**

**UNLIKE ANNUAL ENROLLMENT FORMS, YOU MUST SUBMIT THIS
BALLOT FOR YOUR VOTE TO COUNT AND TO PROTECT YOUR RIGHTS.**

\*      \*      \*      \*      \*

THIS BALLOT WILL DETERMINE WHETHER ELIGIBLE PARTICIPANTS PREFER
SETTLEMENT AMOUNTS ON ACCOUNT OF LOST MEDICAL BENEFITS TO BE (A)
DISTRIBUTED THROUGH TAX-EFFICIENT HEALTH REIMBURSEMENT ARRANGEMENT
(ACCOUNTS) OR (B) USED TO PARTIALLY SUBSIDIZE PREMIUMS DUE UNDER A
POTENTIAL VEBA SPONSORED MEDICAL PLAN.

PLEASE COMPLETE, SIGN, AND DATE THIS PRE-ENROLLMENT BALLOT AND
RETURN IT IN THE ENCLOSED ENVELOPE SO THAT IT IS ACTUALLY RECEIVED BY
KURTZMAN CARSON CONSULTANTS, LLC AT THE ADDRESS ON THE ENVELOPE ON OR
BEFORE MARCH 12, 2013 AT 4:00 P.M. EASTERN STANDARD TIME.

EFFECT OF VOTING ELECTIONS

|  | YOUR VOTE | RESULT OF ALL VOTES ON ELECTION THRESHOLD | TREATMENT OF YOUR SETTLEMENT VALUE FOR MEDICAL BENEFITS |
|---|---|---|---|
| I. | NO | ELECTION THRESHOLD IS NOT SATISFIED | YOU WILL BE ENTITLED TO DISTRIBUTION OF YOUR SETTLEMENT VALUE THROUGH AN HRA. |
| II. | NO | ELECTION THRESHOLD IS SATISFIED | YOU WILL HAVE AN OPPORTUNITY TO ENROLL IN THE VEBA SPONSORED MEDICAL PLAN, BUT IF YOU FAIL TO DO SO, YOU WILL WAIVE YOUR ENTITLEMENT TO YOUR SETTLEMENT VALUE AND YOU WILL HAVE NO CLAIM TO ANY BENEFITS OR FUNDS ON ACCOUNT OF THE RETIREE MEDICAL BENEFITS BEING TERMINATED. |
| III. | YES | ELECTION THRESHOLD IS NOT SATISFIED | YOU WILL BE ENTITLED TO DISTRIBUTION OF YOUR SETTLEMENT VALUE THROUGH AN HRA. |
| IV. | YES | ELECTION THRESHOLD IS SATISFIED | YOU WILL HAVE AN OPPORTUNITY TO ENROLL IN THE VEBA SPONSORED MEDICAL PLAN AND THE PORTION OF THE SETTLEMENT AMOUNT THAT IS ALLOCATED TO YOU WILL BE USED BY THE VEBA TO PARTIALLY SUBSIDIZE YOUR PREMIUMS. |

2

ITEM 1.    [RETIREE NAME] elects:

PLEASE CHECK ONLY ONE BOX.  IF NO BOXES ARE
CHECKED, THIS BALLOT WILL BE COUNTED AS A
VOTE AGAINST THE VEBA SPONSORED MEDICAL PLAN.

**YES:  IN FAVOR OF OFFERING**　　　　　　　**NO:  OPPOSED TO**
**VEBA SPONSORED MEDICAL PLAN**　　　　**VEBA SPONSORED MEDICAL**
　　　　　　　　　　　　　　　　　　　　　　　　　　**PLAN AND IN FAVOR OF**
　　　　　　　　　　　　　　　　　　　　　　　　　　**DISTRIBUTING BENEFITS**
　　　　　　　　　　　　　　　　　　　　　　　　　　**THROUGH AN HRA**

☐　　　　　　　　　　　　　　　　　　☐

**IF YOU VOTE <u>NO</u> TO ITEM "1" AND THE
ELECTION THRESHOLD IS SATISFIED AND YOU SUBSEQUENTLY
DECLINE TO ENROLL IN THE VEBA SPONSORED MEDICAL PLAN, YOU WILL
WAIVE YOUR ENTITLEMENT TO THE MEDICAL CLAIM PORTION OF YOUR
SETTLEMENT VALUE AND YOU WILL HAVE NO CLAIM TO ANY BENEFITS OR
FUNDS ON ACCOUNT OF THE RETIREE MEDICAL BENEFITS BEING
TERMINATED.**

3

ITEM 2.
CERTIFICATION. By signing this Ballot, the undersigned certifies that he or she:

(a) is eligible to receive benefits under the Nortel Retiree Medical Plan;

(b) has been provided with a copy of the Motion and the Settlement Agreement;

(c) acknowledges that the election conducted by this Ballot is subject to all the terms and conditions set forth in the Motion and Settlement Agreement; and

(d) has not submitted any other Ballots, and if any other Ballots were previously submitted, t either have been or are hereby revoked or changed to reflect the vote set forth herein.

**A BALLOT THAT IS NOT SIGNED OR OTHERWISE FAILS TO COMPLY WITH THE REQUIREMENTS STATED HEREIN WILL BE COUNTED AS A VOTE AGAINST THE VEB SPONSORED MEDICAL PLAN.**

Name (Print): _____

Signature: _____

Title: _____

If By Authorized Agent, Title of Agent: _____

Nature of Agent's Authorization: _____

_____

Telephone No.: _____

E-Mail Address: _____

Address: _____

_____

Date Signed:_____ __, 2013

**PLEASE MAKE SURE YOU HAVE READ AND FOLLOWED THE INSTRUCTIONS ENCLOSED HEREWITH AND HAVE PROVIDED ALL INFORMATION REQUESTED ON THIS BALLOT.**

**INCOMPLETE BALLOTS WILL BE COUNTED AS VOTES AGAINST THE VEBA SPONSORED MEDICAL PLAN.**

4