**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:

**NORTEL NETWORKS, INC.,** *et al.,*[1]

Debtors.

**Chapter 11**

**Case No. 09-10138 (KG)**
**Jointly Administered**

**Objections Due:  February 12, 2013 at 4pm**
**Hearing Date:  February 19, 2013 at 10am**

**MOTION OF AD HOC COMMITTEE OF CANADIAN EMPLOYEES TERMINATED**
**PRE-PETITION FOR ENTRY OF AN ORDER ALLOWING LATE FILED CLAIMS**

The Ad Hoc Committee[2] of Canadian Employees Terminated Pre-Petition ("Ad Hoc

Committee" or "Movant") by and through their undersigned counsel, Rachel B. Mersky, Esquire

of Monzack Mersky McLaughlin and Browder, P.A, moves pursuant to 11 U.S.C. § 501 and Fed.

R. Bankr. P. 3003(c)(3) and 9006(b)(1) for leave to file proofs of claim for termination benefits

after the expiration of the Bar Date (the "Motion").   In support thereof Movant respectfully

represents as follows:

## I.      INTRODUCTION

1.      On January 14, 2009 (the "Petition Date"), the U.S. Debtors filed Voluntary

Petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the

"Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.  The

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number,
are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769),
Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable
Solutions Inc. (0567).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at
http://chapter11.epiqsystems.com/nortel.
[2] A list of the members of the Ad Hoc Committee is attached hereto as Exhibit A and incorporated herein by
reference.

U.S. Debtors cases were administratively consolidated under Nortel Networks, Inc. ("U.S. Debtors").

2.      On January 14, 2009, the ultimate corporate parent of the US Debtors, Nortel Networks Corporation and its Canadian subsidiaries commenced proceedings under the *Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36 as amended (the "Canadian Debtors" or "Canadian Proceedings").  Ernst & Young was appointed the Monitor ("Monitor").

3.      On February 27, 2009 this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under Chapter 15 of the Bankruptcy Code.

4.      On August 4, 2009, this Court entered its Order establishing September 30, 2009 as the deadline to file a proof of claim ("Proof of Claim") against any of the U.S. Debtors that arose prior to the Petition Date (the "Bar Date Order") (Docket # 1280).

5.      The U.S. Debtors filed a Notice of Deadline Requiring Filing of Proofs of Claim on or Before September 30, 2009 ("Bar Date Notice").  On August 10, 2009 the U.S. Debtors mailed the notice of Bar Date to the creditors listed in the Affidavit of Service and Supplemental Affidavit of Service.  The Affidavit of Service and Supplemental Affidavit of Service were filed with the Court on August 20, 2009 (Docket # 1352 and 1354).

6.      The Bar Date Notice stated, "If you believe that you have claims against Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation or Nortel Networks Technology Corporation (the "Canadian Debtors"), any such claims shall be filed in, and only in, the Canadian proceedings with the court appointed Monitor."

7.      While this Court was proceeding with the Bar Date Notice, in Canada the Monitor, in consultation with the Canadian Debtor and the court-appointed representatives of

Canadian Employees and their advisors (including legal counsel) to the court, was developing a Canadian Compensation Claims Procedure for employee claims, which was eventually approved by the Canadian court in October of 2012.  (See Affidavit of Michael Campbell, Court-Appointed Representative on behalf of former employees of Nortel Canada in the Canadian Proceedings (the "Campbell Affidavit") attached hereto As Exhibit "B" and incorporated herein by reference.)

8.      Subsequent to January 6, 2012, the "bar date" in the Canadian Compensation Claims Procedure the Monitor identified approximately 300 Canadian employees (the "Affected Employees") that have provisions in their severance arrangements (the "Termination Agreement Letters") which entitled them to assert claims against the U.S. Debtors.  (See Campbell Affidavit.)

9.      In the summer and fall of 2012 counsel for the Canadian Employees contacted U.S. Debtors' counsel to seek a tolling agreement to preserve the Affected Employees' claims pending resolution on their merits; however counsel for the U.S. Debtors did not respond to this proposal.  (See Campbell Affidavit.)

10.     Once it became clear that the U.S. Debtors would not respond or address the issue, the Affected Employees were notified of their claims and the steps required to pursue them against the U.S. Debtors were taken.  At the time of filing, 176 of the approximately 300 Affected Employees elected to participate in the Ad Hoc Committee and seek leave of this Honorable Court to allow the filing of claims after the Bar Date.

11.     Each member of the Ad Hoc Committee was terminated pre-petition and was sent a Termination Agreement Letter which defines specific termination rights to be paid by the Corporation.

12.      The Termination Agreement Letter states that  "the term "Corporation" shall mean Nortel Network Corporation, its subsidiaries and affiliates, their successors and assigns and all of their past and present officers, directors, employees and agents (in their individual and representative capacities), in every case, individually and collectively."

13.      In order to qualify for the benefits defined in the Termination Agreement Letter the employee was required to counter-sign the Termination Agreement Letter which contained a release of the Corporation and other consideration running to the Corporation from the employee including non-solicitation and non-disclosure.   (See redacted Termination Agreement Letter attached hereto as Exhibit "C" and incorporated herein by reference.)

14.      No member of the Ad Hoc Committee received notice of the Bar Date.

15.      The U.S. Debtors filed a placeholder Joint Plan of Reorganization on July 12, 2010 (Docket #3580) and a Disclosure Statement on September 3, 2010 (Docket #3874), but a hearing has never been scheduled.

## II.      JURISDICTION

16.      This Court has Jurisdiction over this case pursuant to 28 U.S.C. §§ 1344 and 157. The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(o).  Venue is proper in this District pursuant to 28 U.S.C. § 1408.

## III.      EXTENSION OF BAR DATE

12.      The Ad Hoc Committee moves this Honorable Court for leave to file claims after the expiration of the Bar Date pursuant to Fed. R. Bankr. P. 3003(c)(3) and 9006(b)(1).

13.      The Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") address those situations in which the court may extend the time to perform certain acts. Bankruptcy Rule

9006(b)(1) provides that a request for an extension of time may be made *after the expiration* of the specified period in which the act was to be performed upon a showing of excusable neglect.

14.    However, it is crucial to first do an analysis of whether a party was reasonably apprised of the Bar Date.  "Parties are entitled to get adequate notice of proceedings that may result in the "judicial denial of [the] party's claimed rights."  *City of New York v. New York, N.H. & H.R. R.R. Co., 344 U.S. 293, 297, 73 S. Ct. 299, 97 L. Ed. 333 (1953).*

15.    In order for notice to be adequate it must be, "reasonably calculated, under all the circumstances, to inform interested parties of the pendency of the action and afford them the opportunity to present their objections".  *In Re Freedom Communications Holdings, Inc. 477 B.R. 257, 2012 Bankr. Lexis 2436 (Del. Bankr. 2012) citing Mullane v. Central Hanover Bank & Trust, 339 U.S. 306,314(1950).*

16.    The purpose and procedures for setting a bar date have been addressed by this Court. "Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure authorizes courts to set bar dates by which proofs of claim or interests must be filed.  This rule contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate.  Setting an outside limit for the time to assert a right triggers due process concerns of which every court must be cognizant.  This concern is resolved through notice: when a debtor provides proper notice to its creditors, due process is satisfied, and a court can bar creditors from asserting claims.  What qualifies as proper notice, however, is dependent upon whether the creditor is known or unknown.  If a creditor is known, the debtor must provide actual notice of the bankruptcy proceedings, whereas if the creditor is unknown, notice by publication is sufficient."  *In re Smidth & Co., 413 B.R. 161, 165 (Bankr. D. Del. 2009).*

17.     A debtor needs to do what is reasonable under the circumstances to provide notice to ascertainable creditors.  In applying the appropriate requirements of notice to unknown creditors the court uses a totality of the circumstances test taking into consideration whether the claim is conjectural or can be reasonably ascertained.  Also to be factored into the standard is whether the cost of giving notice would consume a disproportionate share of the debtor's assets after factoring the effect of any delay caused by the process and its effect on the debtors' resources.  *In re New Century TRS Holdings, Inc., 465 B.R. 38 (Bankr. D. Del. 2012)*.  In the present case the U.S. Debtors knew or should have known of the language in the Termination Agreement Letters that gives rise to claims against both Canadian and U.S. Nortel Debtors.  The Affected Employees were ascertainable.  The U.S. Debtors should have provided actual notice, but they did not.

18.     While the U.S. Debtors may assert that these claimants were not known to them and that they only had to provide constructive notice, the U.S. Debtors also failed to give adequate constructive notice.  This is abundantly clear when the court examines the Notice of Deadline.  The notice specifically directed: "If you believe that you have a claim against Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, or Nortel Networks Technology Corporation (the "Canadian Debtors"), any such claims shall be filed in and only in, the Canadian proceedings with the court-appointed Monitor."  Consequently, even if a claimant with claims against both the U.S. Debtors and the Canadian Debtors somehow became aware that the U.S. Debtors had set a bar date, they were specifically directed not to file a claim against the U.S. Debtors.

## IV.    THE FOUR-FACTOR TEST FOR DETERMINING "EXCUSABLE NEGLECT," AS SET FORTH BY THE UNITED STATES SUPREME COURT IN *PIONEER*

19.    The period for filing a claim should be enlarged under Bankruptcy Rule 9006. Pursuant to Rule 9006(b)(1), the Court can enlarge the time for filing a proof of claim where the failure to act was the result of "excusable neglect". *See e.g., Pioneer Inv. Servs. Corp. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489 (1993) (finding counsel's failure to file a proof of claim before the bar date was attributable to excusable neglect partly due to the fact that the notice of claims bar date was not prominently announced and accompanied by an explanation of its significance).    Movant respectfully submits that Debtors' failure to provide the requisite statutory notice justifies the allowance of these late filed claims as a "simple, faultless omission" which qualifies as excusable neglect. *See Pioneer*, 507 U.S. at 388; see also *In re Spring Ford Indus., Inc.*, 2003 WL 21785960, at *2 (Bankr. E.D.Pa. July 25, 2003) (noting that Claimants have no duty to inquire about what is procedurally required of them but rather may assume that they will receive effective notice).

20.    In *Pioneer*, the United States Supreme Court held that the following circumstances should be weighed:  (1) the danger of prejudice to the debtor; (2) the length of delay and any potential impact on the proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer* 507 U.S. at 395.

21.    Applying the foregoing *Pioneer* factors to the present case, the balance of equities weighs heavily in favor of granting Movant's requested relief.

22.    First, there is no danger of prejudice to the U.S. Debtors. The U.S. Debtors knew, or should have known, that some Canadian employees had claims against both the Canadian

Debtors and the U.S. Debtors.  The U.S. Debtors should have scheduled these claims, and they should have given actual notice. The U.S. Debtors failed to schedule these calaims and they did not give actual notice. And, even the Notice provided to other creditors was misleading and specifically directed that "If you believe that you have a claim against Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, or Nortel Networks Technology Corporation (the "Canadian Debtors"), any such claims shall be filed in and only in, the Canadian proceedings with the court-appointed Monitor."

23.     U.S. Debtors have repeatedly indicated that they intend to amend their schedules related to employee claims.  If U.S. Debtors amend their schedules related to employee claims the Affected Employees claims should be included and the Affected Employees would only have to file proofs of claim if they disagreed with the Amended Schedules.

24.     Second, the length of delay since the bar date is not material and allowance of a late filed claim will not hinder the bankruptcy proceedings.

25.     U.S. Debtors are far from a confirmed Plan of Reorganization. U.S. Debtors filed a placeholder Plan of Reorganization and, despite the fact that the Disclosure Statement was filed over two years ago it has never been set for a hearing.  Although confirmation of a Plan of Reorganization would not moot this argument, the fact that the Plan has not yet been confirmed in this case further diminishes the possibility of prejudice to the Debtors.  *See e.g., In re Eagle-Picher Indus.*, 158 B.R. 713 (Bankr. S.D. Ohio 1993) (no prejudice or delay where reorganization plan has neither been proposed nor confirmed); and see *Grand Union*, 204 B.R. at 871 (noting that claimant who is not given reasonable notice cannot be bound by the legal effects of confirmation).

#150405

26.     The U.S. Debtors must resolve the issue of division of the assets with the Canadian Debtors before any viable plan can move forward.  As recently as last week, the Mediation between the Canadian and U.S. Debtors over this issue was completed without a successful resolution.  (See Campbell Affidavit).  If members of the Ad Hoc Committee are denied the opportunity to file their claims against the U.S. Debtors, they will be unfairly prejudiced by the improper discharge of their rights.

27.     Third, the reason for the delay was not within the control of Movant.  Members of the Ad Hoc Committee had claims against both the U.S Debtors and the Canadian Debtors, but the form of notice, which was not even served on Members of the Ad Hoc Committee, directed that claimants with claims against the Canadian Debtors should file a claim in, and only in, the Canadian proceedings.  Members of the Ad Hoc Committee were in effect estopped from filing a claim.  *See Pioneer*, 507 U.S. 380; *See Spring Ford*, 2003 WL 21785960, at *2.

28.     Finally, Members of the Ad Hoc Committee have at all times acted in good faith and have acted in an expeditious manner to make known to the U.S. Debtors their intent to proceed.  (See Campbell Affidavit.)

29.     Claims of members of the Ad Hoc Committee must be addressed by both the U.S. Debtors and the Canadian Debtors.  Each of the Affected Employees is entitled to receive compensation under the Termination Agreement Letters from the Corporation which is defined in the Termination Agreement Letter to include the U.S. Debtors.  The U.S. Debtors received consideration for these claims in the form of releases and covenants for non-solicitation and non-disclosure.  It is widely anticipated that recovery available for Canadian claims will be significantly less than payments made by the U.S. Debtors and the Affected Employees should

not be prejudiced by a limitation under the Canadian claims distribution process when they are specifically entitled to assert claims against the U.S. Debtors.

30.     Based on the foregoing, Members of the Ad Hoc Committee should not be sanctioned for the Debtors' failure to provide adequate notice and a new Bar Date should be set to allow them to file their proofs of claim.

WHEREFORE, the Ad Hoc Committee respectfully requests that this Honorable Court enter an Order granting the Ad Hoc Committee members leave to file proofs of claim after the claims Bar Date and granting the Ad Hoc Committee such other and further relief as the Court deems just and equitable.

Dated:  February 1, 2013

MONZACK, MERSKY, MCLAUGHLIN
AND BROWDER, P.A.

*/s/ Rachel B. Mersky*
Rachel B. Mersky (DE #2049)
1201 N. Orange Street, Suite 400
Wilmington, DE  19801
Tel:     (302) 656-8162
Fax:     (302) 656-2769
Email:  rmersky@monlaw.com

**ATTORNEY FOR AD HOC COMMITTEE
OF CANADIAN EMPLOYEES TERMINATED
PRE-PETITION**

#150405