## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

FILED

2013 FEB -5  AM 8: 52

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| | ) Jointly Administrated |
| Debtors. | ) **Related D.I.:8067** |
| | ) |
| | ) **RE:**      **D.I. # 9304** |
| | ) |
| | ) **Preliminary Hearing Date: February 14,** |
| | ) **2013 at 10:00 am (EST);** |
| | ) |
| | ) **Preliminary Hearing Objections Due:** |
| | ) **February 4, 2013 at 4:00 pm (EST)** |
| | ) |
| _____ | ) |

**OBJECTION TO DEBTORS' MOTION OF PURSUANT TO SECTIONS 363 AND 105
OF THE
BANKRUPTCY CODE, AND BANKRUPTCY RULES 9019 AND 7023
TO (I)(A) PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT
REGARDING LONG-TERM DISABILITY PLANS AND CLAIMS,
(B) CONDITIONALLY CERTIFY A CLASS FOR SETTLEMENT
PURPOSES ONLY, (C) APPROVE THE NOTICE
PROCEDURES, AND (D) SCHEDULE A FAIRNESS HEARING; AND
(II)(A) FINALLY APPROVE THE SETTLEMENT AGREEMENT,
(B) FINALLY CERTIFY A CLASS, (C) AUTHORIZE THE DEBTORS
TO TERMINATE THE LTD PLANS, AND (D) GRANT RELATED RELIEF**

Marilyn Day, a disabled LTD employee, of the above-captioned debtors and debtors-in-

possession (the "Debtors"), hereby submits this Objection to Debtors' Motion to (A) Preliminary

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

approve the settlement agreement regarding long-term Disability plans and claims; (B) conditional certification of class for settlement purposes only; (C) conditional Appointment of class representatives regarding the settlement proposed in regards to the Debtors Motion to terminate the Debtors' Long-Term Disability Plans and the employment of the LTD employees. In support of this Objection, Marilyn Day respectfully represents as follows:

## BACKGROUND

1. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks Inc., filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code (the "Chapter 11 Cases"), which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On June 3, 2011, a significant number of LTD Participants filed a joinder to the Retiree Committee Appointment Motion (Docket No. *5595).* Contemporaneously, certain LTD Participants filed a motion seeking appointment of a committee as the official representative for LTD Participants (Docket No. *5595)* (the "LTD Committee Appointment Motion"). Additionally, multiple other LTD Participants filed correspondence with the Court supporting the relief sought in the Retiree and LTD Committee Appointment Motions. *(See, e.g.,* Docket Nos.5659-61, *5670-76,* 5678-81, 5694-5701, *5703-5708, 5712-5716* and *5760-5764).*

3. On August 2, 2011, the United States Trustee appointed the members of the LTD Committee [D.I. 6073], as amended on August 4, 2011 [D.I. 6080];

4. The LTD committee by-laws were drafted and the LTD committee selected the legal representation of Elliot-Greenleaf as their Attorney on August 5, 2011.

**5.** *On July 30, 2012 Debtors filed Motion for entry of an order pursuant to 11 U.S. C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long Term Disability Plans and the Employment of the LTD Employees* (Docket No. 8067).

## <u>RELIEF REQUESTED</u>

**6.** I respectfully request that the court deny Debtor's Motion [D.I. 9304].[2]

**7.** I request the motion be denied for these reasons:

- Inappropriate settlement amount
- No Suit because I have no say.
- Inappropriate party in charge of settlement funds
- Misleading by Debtors
- Misleading accounting practices using Scarcities Economics tactics by the Debtors
- No proof of LTD expenses by Debtors
- Need for independent third party audit
- A Secure Undisputed Claim only
- Lack of information to LTD employees
- Lack of understanding of legal terminology in Motion 9304
- Failure of company to keep agreement with LTD employees.
- No need for a trial in court.

---

[2] Note: unless indicated, all Reference text is to Motion 9304 and in italic..

8. The payment is to be paid at the time the  plan is terminated along with the proper compensation, which is reflective of the needs of the Totally Disabled employees of all the other LTD associated Plans I respectfully agree that associated LTD benefits, the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan, The payment is to be paid at the time the  plan is terminated along with the proper compensation, which is reflective of the needs of the Totally Disabled employees of all the other LTD associated Plans.

## **BASIS FOR RELIEF**

**Illustration**

9. The payment is to be paid at the time the  plan is terminated along with the proper compensation, which is reflective of the needs of the Totally Disabled employees of all the other LTD associated Plans Your Honor may wonder why a group of LTD employees are so passionate about their cause. Let me express this in a simple example:

Part One of  Example: Purchasing a car:

    1.  Go to Dealership.

2.  Find vehicle.

3.  You as customer and Dealership meet Terms and Conditions:

a.  Price of vehicle

b.  Warranty of 100,000 miles

c.  Oil changes.

4.  The Dealership and you sign contact/agreement: customer pays XX dollars for car, The Dealership gives car and honors 100,000 mile warranty, and terms.

**10.** Part Two of example: Nortel and Employee

Nortel company policies included Long Term Disability. Employee meets Terms and Conditions of policy set by company.

Company offers:

1.  Disability Pay until age 65.

2.  Fulltime benefits as all fulltime employee receive coverage.

3.  Company determines payment plan: to be distributed on the regular employee schedule. (Note: other options: fiduciary rate calculation until 65 and paid in lump sum to employee or lump sum payment to age 65 immediately upon determination of LTD acceptance into Plan.)

4.  Employee is accepted as participant in company's (Nortel) LTD plan and recipient on the effective date of start of long term disability.

5.  Employee must accept payment policy as established by company on the effective date. And has no choice of how to receive monetary receipt of pay to age 65; plus Fulltime employee benefits until deceased.  (End of Example)

11. Thus, because of the consensual agreement between Nortel and Employee in the employer/participant LTD plan, I respectfully disagree that the Debtors in their motion on classifying LTD income continuation approved claim payments to the LTD participant as benefit coverage that occurs in the future rather than an approved claim liability to be paid to the LTD participant based on their income replacement present value amount.

## FACTS

12. In Paragraph 112 in Debtors' Motion [DI. 9304] states *"Here the Debtors have a valid justification to terminate the LTD Plans, not only because under the LTD Plans they have the right to terminate the LTD Plans and the right to receive LTD Benefits at will,"* which applies in the case of any of their plan coverage offered by the Debtors as a compensation **but does not apply to an approved claim already incurred and now is the Debtors' liability for the services already rendered.**

13. In Paragraph 106 in Debtors' Motion [DI. 9304] states *"Since benefits provided under welfare benefit plans do not and are not required to vest under ERISA, they are terminable at will unless the plans specifically provide otherwise. As the Third Circuit has explained, "an employer's commitment to vest such benefits is not to be inferred lightly and must be stated in clear and express language"* which applies to the following plan undoubtedly , the Nortel Networks Inc. LTD income continuation Plan (only for any future occurrences), the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks

Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan, **but does not apply to an approved income continuation claim or any other approved claim already incurred and now is the Debtors' liability for services already rendered.**

14. **LTD income continuation claim is an approved claim at the time it incurred under the fulltime employee scheduled payment plan for services already rendered.**

**Procedure for VEBA plan termination**

**From the 5500 auditor's report - December 31 2011** (see footnote)[3]

15. *The Company established the Plan with the intention and expectation it would be continued indefinitely, however the Company has no obligation to maintain the Plan for any given length of time. The plan is currently funded through a VEBA Trust. The nature of the Plan allows the Company the ability to terminate the VEBA Trust for payment operations, without incurring any additional liability.*

*Upon a decision to terminate the VEBA Trust the affairs of the VEBA Trust shall be wound up as soon as may he reasonably practicable. The VEBA Trust, including the liquidation proceeds of the VEBA Trust, shall he paid out and distributed by the*

---

[3] Information acquired from Docket 9342, Objection to Debtors Motion to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long Term Disability Plans and Claims.

*Trustee in the following order unless a judgment or decree of a court of competent jurisdiction or any applicable law shall mandate a contrary application.*

*First, to the payment of all reasonable and necessary expenses of managing and administering the Plan to the extent that the company does not pay the expenses:*

*Second, to the payment of benefits to eligible employees and their eligible qualified dependents that are payable from the Plan as the company shall direct the Trustee in writing: and*

*Third, to the payment of life, sickness, accident, or similar benefits described in Section 501c(9)of the Code and the regulations under that Section to eligible employees or their dependents or designated beneficiaries, as the Company shall direct the Trustee in writing.*

*In no event shall any portion of the trust revert to the Company.*

*The Plan's deficiency of net assets over benefit obligations at December 31, 2011 and 2010, relates primarily to **the long-term disability** and postretirement benefit obligations that are not currently payable **The Company expects that the deficiency will be funded when the obligations become currently payable** however, there can be no assurances that the Company will be capable of providing such funding. and furthermore, the Company has filed a motion seeking modification or termination of the benefit obligations giving rise to the funding obligation.*

**The Auditors of KPMG illustrate that in order to shut down a plan the Debtor should pay all the primary long term disability obligation which will be funded when obligation currently payable. The Debtors are currently shutting down or winding down the business, In order to terminate the VEBA plan and clear the**

**register of the LTD and LTD associated obligations the Debtors should pay the LTD income continuation plan's deficiency which is definitely an approved claim for services already rendered. I understand fully that the Debtors have every right to terminate providing the Future coverage of LTD plan but the Debtors do not have the right not to pay already approved LTD claims, Medical, Vision, prescription drug, hearing and Dental Claims already in pipeline. The Debtors have enough funds to cover these expenses.**

**Debtors' Expert's report**

16. Dr. Ethan Kra stated that LTD benefits falls under FAS 106 is false; rather LTD benefits fall under FAS 112 (**Exhibit B**).

17. Dr. Kra illustrated the use of bond rating in this case. However, the major part of rating a company depends upon the financial health of the institution. On the other hand, Nortel was not declaring the true value of their patents, rather not declaring then at all on the Company's Balance sheet.  **Therefore, we cannot use the discount rate used in his analysis for our LTD associated benefits. Or even consider applying an outrageous discount rate to approved LTD income continuation claim for services already rendered.**


**ARGUMENTS**

I bring these observations from an analytical perspective. In no way do I intentionally mean to reflect on the character of the individuals discussed in this dispute of Docket 9304. I merely wish the Court to consider the matters I discuss objectively.

<u>We should not be here in the first place</u>. BUT because of inherited disarray of the Debtors Corporate Policies in Human Resources, not following guidelines' of U.S. Department of Labor for self-insured companies. AND the deceptive accounting practices of top management of previous CEOs and CFOs, etc., **here I must appeal that the Court order the Debtors to honor their agreements with the employees on LTD, when that event occurred at the time of acceptance into the Long Term Disability Program.** And present the following:

## Section A. Inappropriate settlement amount

### 18. Settlement Amount

**Two factors: What is the right amount?:**  5500 reports for 2010, 2011, Debtors' Valuation expert, Dr. Ethan Kra's, conclusion, or Debtors-hired, LTD committee's, actuary, Vincent Bodnar estimate,  or submitted Proof of Claims by several LTD employees?

**What are the actual expenses by Debtor?** $2 million a month, $1 million a month, $680,000 a month?

**What is the right amount?:**  5500 reports for 2010, 2011, Debtors' Valuation expert, Dr. Ethan Kra's, conclusion, Debtors-hired, LTD committee's, actuary, Vincent Bodnar estimate, or submitted Proof of Claims by several LTD employees?

<u>Right Amount: Value of LTD worth</u>:

A. 5500 Report for 2010, pg 67: $72 million (Exhibit D.).

B. Dr.Ethan Kra Valuation Expert: *this discount rate is between zero and $14.6 million* Refer to Docket 9041 Exhibit A.

C. Vincent Bodnar estimate: *In contrast, the LTD Committee's actuary, Vincent Bodnar,37 has estimated the LTD Employees' claims under the LTD Plans to be worth approximately $60 million based on an assumed hypothetical benefit termination date of May 31, 2013.*

I assumed Mr. Bodnar calculations must be inaccurate if he also was given bad or distorted data.

D. LTD employees POCs submitted.


Actual Expenses: 26 Million settlement equals: **one year of LTD expenses** or **two years expense for LTD employees** depending on which figure the Debtors say is their cost, when they have provided no proof. Which is a very CHEAP and ridiculous offer to settle for a small group of people deemed by the United States Government medically needing medical coverage

*(Motion 9304) Settlement Consideration.*

*Solely for the purpose of settlement of the Adversary Proceeding, the Parties consent to the certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(2), and Federal Rule of Bankruptcy Procedure 7023(b)(2).*

*Without admitting or denying liability, and solely for the purpose of settlement, the Debtors consent to the entry of an order against them on Count*

*II of the Class Complaint declaring that they shall not terminate any of the*

*LTD Plans with respect to any of the LTD Employees on or before the*

*Termination Date, unless and until NNI allows a general non-priority,*

*unsecured claim in favor of the LTD Committee in the gross amount of*

*Motion 9304 pg 27 In the event the Debtors and the LTD Committee agree in writing*

*to extend the Termination Date to June 30, 2013, the LTD General Unsecured Claim*

*would be reduced in the amount of $680,000.*

*$28,000,000 based on a hypothetical termination date of March 31, 2013,*

*minus the costs (for purposes of settlement, calculated as $680,000 per month)*

*for the transition period of April 1, 2013 through May 31, 2013, resulting in a*

*general non-priority, unsecured claim in the gross amount of $26,640,000,[28]*

*for the benefits under the LTD Plans (where such general non-priority,*

*unsecured claim in the gross amount of $26,640,000 shall constitute the "LTD*

*General Unsecured Claim"). The LTD General Unsecured Claim shall (pg 20)*

*Approximately 81% of the maximum valuation estimated by Dr. Kra; or*

*Approximately 47% of the valuation estimated by Mr. Bodnar.*


$72 Million in Exhibit D refers to the Nortel Networks Inc. 5500 Report filed for year

2010, stated December 31, 2010 LTD value. These various LTD total balances state a

contradiction of amount of money for LTD by Debtors.

*The Terms of the Settlement Agreement Fall Within the Range of Reasonableness*

*(pg60)*

No, they don't: Too low of settlement,  Doesn't cover medical necessity of these

Disabled employees

## Section B. No Suit because I have no say.

(Pg 46) See Crawford v. Honig, 37 F.3d 485, 487 n.2 (9th Cir.1995) (stating that

Civil Rule 23(b)(2) **"does not require notice or permit members to opt out,** although

a court in its discretion" may provide otherwise).

[A] firm that was hired to administer the settlement maintained a website with details

of the case . . . an acceptable substitute. ").

19. **Why no suit:** The Court has no authority or say:

(paragraph 78). The court need not be convinced that the settlement is the best

possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R.

at 330. Rather, the court's obligation is to "canvass the issues and see whether the

settlement falls below the lowest point in a range of reasonableness." Travelers Cas.

& Sur. Co. v. Future Claimants Representative, 2008 WL 821088, at *5 (citing Aetna

Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.), 258 B.R. 119 (D.N.J. 2000));

see also In re Coram Healthcare Corp., 315 B.R. at 330. (paragraph. 81).

(paragraph 78)The Court is not required to determine that the proposed settlement is

the best possible compromise of the claims being settled. In re Key3Media Grp., 336

B.R. 87, 92-93 (Bankr. D. Del. 2005) (citing In re Coram Healthcare Corp., 315 B.R.

at 329). Rather, the settlement should be approved as long as it does not fall below

the lowest point in the range of reasonableness. Cosoff v. Rodman (In re W.T. Grant

Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983). In this

respect, *it is unnecessary for the Court to consider the information necessary to resolve the factual dispute, nor is it necessary for the Court to "'conclusively determine claims subject to a compromise.'"* In re Key3Media Grp., 336 B.R. at 92 (quoting Martin v. Cox (In re Martin), 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997)). (paragraph 90) *"[t]he parties are free to agree to anything in reference to the subject matter of the litigation"*) (citing Sullivan, 667 F.3d at 317).

*In re Metro. Life Ins. Co. Sales Practice Litig.*, No. 96-179, 1999 WL 33957871, at *26 (W.D. Pa. Dec. 28, 1999) (alteration in original) (quoting Walsh v. Great Atl. & Pac. Tea Co., 96 F.R.D. 632, 642-43 (D.N.J. 1983)), aff'd, 726 F.2d 956 (3d Cir. 1983); see also In re Cendant Corp. Litig., 264 F.3d 286, 301 (3d Cir. 2001)

(*"'[i]t cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of the fact and law which underlie the merits of the dispute.'"*) (citation omitted).

Judge Gross, I have always thought, no matter what type of court, that the Judge was to administer Justice. That you, your Honor, and I say this respectfully, whether in civil or criminal court, the judge, weighed through the evidence and sought the truth and administered justice to their best ability.

These statements referred above. ... *The Court is not required to determine that the proposed settlement is the best possible compromise of the claims being settled..... In*

*this respect, it is unnecessary for the Court to consider the information necessary to resolve the factual dispute, nor is it necessary for the Court to "'conclusively determine claims subject to a compromise.'"*

Are not applicable in this case, and do not follow judicial responsibility for justice.

Debtors' Discovery was not given to LTD committee until October, 2012, of 21,000+ pages of Discovery material. I do not consider this a timely matter from the Debtors since the LTD committee was formed and Elliot Greenleaf counsel retained in August, 2011. It shows a spirit of lack of cooperation; and resulted another termination motion in July 30, 2012; forcing 113 disabled, LTD employees to write individual objections to the court to prevent this unjust termination of pay and medical coverage and benefits.

20. **Suit classification**: puts us all in one package. What we have in common is we all have been deemed by the Social Security Administration as medically disabled and unable to work, But the people on LTD should be categorized in differently: Single, Married, Married with dependents, married with special needs dependents, transplant recipients in need of special treatments/drugs the rest of their lives. Our Summary Plan Descriptions vary; LTD employees from 2000 and earlier have a Cost of Living Increase in their agreement.

**21. Section C. Inappropriate party in charge of settlement funds**

*(paragraph 67)Based on the foregoing, the Court should certify the Settlement Class for settlement purposes, appoint Wendy Boswell Mann, Dianna Irish, Barbara Gallagher, Michael Stutts and Deborah Jones as the Class Representatives, and appoint Elliott Greenleaf as Class Counsel.*

The parties selected for Class Representatives is illogical: sick people determining the financial feasibility of other sick people. The seven members of LTD Committee should not be responsible to "decide and administer the funds". These individuals are all deemed medically disabled by the Social Security Commission, unable to work. (Refer to letters or dockets to court). The committee has already served an extensive time period. I do not feel it is prudent for people who are sick or can become more sick, or on necessary medications needed to maintain their health, to be requested to manage such decisions.

I am concerned that this can jeopardize their disability standing with the Social Security Administration by giving the appearance of working, being fit for employment, and as administrators receiving monetary compensation.

Although only five of the seven members of the LTD committee are listed as Class Representatives. Let the original committee stay as they are now in a volunteer capacity and have the ability to stay informed and give insight, but no Disabled

person, who is considered unable to work, should be deciding and administering funds for this settlement. We need professional expertise in this matter.

*(page 6)  Accordingly, the Settlement Agreement contemplates the allowance of the LTD General Unsecured Claim in the amount of $26.64 million. The ultimate cash value of the allowed LTD General Unsecured Claim will depend, among other things, on the amount of distributions made by Nortel Networks Inc. on the LTD General Unsecured Claim under a plan of reorganization, or*

*if the LTD General Unsecured Claim is sold by the LTD Committee, on the amount received by the LTD Committee for the LTD General Unsecured Claim.*

By-laws Question: The LTD committee who signed motion only represents of 5 of 7 members. I never saw the by-laws of the LTD committee, so how am I supposed to know the rules and guidelines how motions are approved by the committee?
Note: that I signed a confidentially agreement for LTD employees.

*For settlement purposes only, the Movants also request conditional certification of the Settlement Class and the appointment of (i) certain members of the LTD Committee, to represent the Settlement Class ("Class Representatives" (pg 7)*

*The LTD Committee shall have the right to sell, assign or convey the LTD General Unsecured Claim without further order of the Court, subject to compliance with Federal Rule of Bankruptcy Procedure 3001.*

*The Debtors shall make distributions on account of the allowed LTD General*

*Unsecured Claim in accordance with an effective plan confirmed under*

*section 1129 of the Bankruptcy Code (the "Plan").*

*The "Settlement Amount" shall constitute (i) the net recovery to the LTD*

*Committee on the allowed LTD General Unsecured Claim, whether through a*

*distribution under the Plan, or the sale, assignment or conveyance of the LTD*

*General Unsecured Claim, less (ii) the Settlement Administration Costs. The*

*term "Settlement Administration Costs" shall refer to the expenses of the LTD*

*Committee and its advisors that are necessary to administer and implement the*

*Settlement Agreement and administer and effectuate distribution of the*

*Settlement Amount, incurred after the Effective Date. The Settlement*

*Amount will depend, among other things, on the amount of distributions*

*made by Nortel Networks Inc. on the LTD General Unsecured Claim*

*under a plan of reorganization, or if the LTD General Unsecured Claim*

*is sold by the LTD Committee, on the amount received by the LTD*

*Committee for the LTD General Unsecured Claim. (Pg 20)*

22. *Apportionment Methodology.*

o  *The Settlement Amount shall be allocated among the LTD Employees who*

*are receiving benefits under the LTD Plans as of the Termination Date on the*

*basis of a formula to be provided by the LTD Committee, whereby each LTD*

*Employee shall receive his or her proportional share of the Settlement*

*Amount, subject to applicable withholding tax requirements, calculated based*

*on a fraction, the numerator of which is the actuarial valuation of such LTD Employee's claims under the LTD Plans (as determined by the LTD Committee) and the denominator of which is the aggregate of the actuarial values of all LTD Employees' claims under the LTD Plans (as determined by the LTD Committee), thereafter applied to the Settlement Amount. The foregoing allocation methodology is referred to herein as the "Apportionment Methodology." The LTD Committee shall have sole responsibility for calculation of such amounts and distribution of the Settlement Amount pursuant to the Apportionment Methodology. (Pg 22)*

*Within ten (10) business days of the Debtors having served the Settlement Notice (as defined below), the LTD Committee will deliver to the Court, and seek approval of, a schedule that details the calculation of the proportional share of the Settlement Amount to be allocated to each eligible LTD Employee (as determined by the LTD Committee applying the Apportionment Methodology). Such Court approval, if given, shall be deemed to fully and finally determine the propriety of the application of the Apportionment Methodology to the Settlement Amount and to fully and finally determine the actuarial valuation of each LTD Claim and the calculation of the proportional share of the Settlement Amount to each LTD Employee. (Pg22)*

*(pg 23) Effective Date: The Effective Date is the date the Approval Orders become final and non-appealable.*

*Satisfaction of LTD Claims. AS PART OF THE SETTLEMENT, THE LTD EMPLOYEES WILL HAVE THEIR LTD CLAIMS AGAINST THE*

*DEBTORS AND OTHER THIRD PARTIES RELEASED AND EXPUNGED,*

*SUBJECT ONLY TO THE ENTITLEMENT (IF ANY) TO RECEIVE*

*PAYMENT OF A PORTION OF THE LTD GENERAL UNSECURED*

*CLAIM. THE TERMINATION OF THE LTD PLANS AND THE*

*ALLOWANCE OF THE LTD GENERAL UNSECURED CLAIM SHALL*

*FULLY SATISFY THE LTD CLAIMS, AND THE LTD EMPLOYEES SHALL*

*BE ESTOPPED FROM ASSERTING ANY FURTHER LTD CLAIMS*

*AGAINST THE DEBTORS OR THE OTHER PARTIES BEING RELEASED.*

*(pg 27)Retirement Eligible Employees. Pursuant to the terms of the Proposed Retiree*

*Settlement Agreement, which may be amended and is subject to Court approval in all*

*respects, any LTD Employee who is receiving LTD Benefits under the LTD Plans as*

*of the Termination Date (and is therefore a member of the Settlement Class) and has*

*met the service requirements for retirement as of January 31, 2013 (in accordance*

*with the eligibility criteria set forth in the Retiree Approval Motion and the Proposed*

*Retiree Settlement Agreement) can elect to participate in the Proposed Retiree*

*Settlement Agreement provided that such LTD Employee voluntarily terminates his*

*or her employment with the Debtors and irrevocably relinquishes his or her right to*

*receive continued benefits under the LTD Plans, in accordance with the terms of the*

*Proposed Retiree Settlement Agreement For the avoidance of doubt and*

*notwithstanding anything to the contrary in the Proposed Retiree Settlement*

*Agreement, if the Termination Date occurs on or before June 30, 2013, any LTD*

*Employee who would have been eligible to receive LTD Benefits under the LTD*

*Plans as of the Termination Date but for the fact that such LTD Employee elected to*

*voluntarily terminate his or her employment with the Debtors solely in order to participate in the Proposed Retiree Settlement Agreement, shall be deemed to be a member of the Settlement Class solely for the purpose of participating in the Settlement Agreement and for no other purpose.*

*Continuation of the LTD Committee. Subsequent to the Effective Date, the LTD Committee shall exist solely for the purpose of enforcing and performing the terms of the Settlement Agreement and the LTD Committee shall be formally disbanded upon payment of the Settlement Amount to the LTD Employees. (Pg27)*

*In the event the LTD General Unsecured Claim is not sold, transferred or assigned by the LTD Committee prior to the time any distributions are made by NNI, NNI reserves the right to withhold all taxes subject to withholding under all applicable provisions of the Tax Code. To the extent the LTD General Unsecured Claim is sold, transferred or assigned by the LTD Committee prior to the time any distributions are made by NNI in respect of such claim, the Debtors do not intend to withhold taxes on behalf of any person with respect to the LTD General Unsecured Claim or any distributions made with respect to such claim. The Debtors shall have no liability relating to the withholding of taxes or the issuance of form W-2s. (pg 28)*

**Sec. D Misleading by Debtors**

<u>We should not be here in the first place</u>. BUT because of inherited disarray of the Debtors Corporate Policies in Human Resources, not following guidelines of U.S. Department of Labor for self-insured companies. AND the deceptive accounting practices of top management of previous CEOs and CFOs, etc., **here I must appeal that the Court order the Debtors to honor their agreements with the employees on**

**LTD, when that event occurred at the time of acceptance into the Long Term Disability Program.**

Example: See footnote.[4]

"…The Crown claimed Frank Dunn, Nortel's former chief executive, and two members of his senior finance team orchestrated an elaborate accounting fraud that ultimately led to the decay at the iconic telecommunications equipment maker. For their part, Mr. Dunn, Michael Gollogly and Douglas Beatty argued any financial sleights-of-hand were mistakes — not fraud — made during a frenetic and turbulent company-wide restructuring." (end of example)


Previous Nortel Executives deception to stock holders:

Example:  SEC Settlement paid Nortel stockholders approximately ½ cent on dollar of Nortel stock from this accounting maneuvering. (see footnote.)

"SEC GCG, Inc. Announces Summary Distribution Plan Notice of SEC Fair Fund to Nortel Investors… LAKE SUCCESS, NY, Nov. 21, 2011 /PRNewswire/ -- The following statement is being released by GCG, Inc., Distribution Agent, regarding the Nortel SEC Fair Fund. UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK. United States Securities and Exchange Commission v. Nortel Networks Corporation and Nortel Networks Limited, Civil Action No. 07-CV-8851 (LAP)" (end of example)[5]

---

[4] http://business.financialpost.com/2013/01/14/verdict-recasts-sordid-history-of-nortel-networks/
[5] http://www.prnewswire.com/news-releases/gcg-inc-announces-summary-distribution-plan-notice-of-sec-fair-fund-to-nortel-investors-134235733.html

**23. Misleading accounting practices** using Scarcities Economics tactics by the Debtors.

Misleading accounting practices –

Dr. Kra, the Valuation expert from Mercer, was given a limited data to calculate the Nortel worth based on obsolete data from January, 2009. When Nortel had sold assets and increased its worth to approximately $7.5 - $9 Billion.  This intentional deception to the court and to Dr. Ethan Kra presented a distorted worth to both the LTD committee and Retiree committee in negotiating. And skewed all legitimate negotiations. Yet it was public knowledge and well publicized in the media, Nortel's website of sale of assets. (refer to Exhibit A.)

Example: Docket 9282 Register Report reports an exaggerated amount of debt obligations or creditor claims, yet many are duplicate or multiple claims for the same item: ie.

    1. The PBGC has 16 claims for the same claim amount to each of Nortel's multiple companies.

    2. United Kingdom claim is listed twice.

This demonstrates untidy bookkeeping practices and a misleading appearance.


Misleading by Debtors  In fact it was this legal maneuvering that every motion to terminate LTD employees came just before a legal holiday, so that

    1. There was no U.S. postal service to notify the employee, which we were never notified until after the fact.

    2. There was no time to respond to the court because the U.S. postal service was not working.

3. The court was closed for the holiday, thus posting on the docket was probably

delayed.

4. Employees were distracted by the holidays, therefore normally unaware of any

pending legal matters.


**24. Fuzziness in terms of motion.** at the end of motion, so much vagueness that nothing

is concrete and clear.


## Section E. No proof of LTD expenses by Debtor

### 25. Transparency problems:


**LTD monthly cost to Debtor**: Why is there such a large discrepancy in a matter of
months for expenses?
Debtors says. $2 million a month cost in July 7, 2012, then three weeks later,  $1
million a month cost in July 30, 2012, and now six months later $680,000.00 in
January 18, 2013 a month cost. Yet states to the court that costs are going up in and
have no analysis to prove any of these statements.


$2 Million a month in July 7, 2012

From Court Transcript on July 7, 2012 pg 56.

*MS. SCHWEITZER: -- but we, in fact, have set our*

*own deadline of that we'll give it roughly another week and then we'll make our*

*decision that we'll probably be filing a motion right after that, if we haven't reached*

*settlement. And so we've been working hard during this time, but we all realize the*

*process can't go on endlessly. We're spending $2 million a month on benefits that,*

*you know, are currently in place, but decisions do have to be made and there does*

*have to be closure at some point to the issues one way or another.*

<u>$1 million a month</u> in Docket 8067 motion to terminate LTD date on July 30, 2012 the *Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long Term Disability Plans and the Employment of the LTD Employees* [D.I. 8067].

<u>$680,000.00 a month</u> in Docket 9304 settlement January 18, 2013

But no numbers to support these statements. So what is the money for: utilities, rent on the building, salaries for HR Shared Services employees to answer benefit questions, Prudential, the third party contracted to handled Disability pay and claims, office expenses, part of Debtors attorney fees or Elliot-Greenleaf fees, medical claims paid out?

Value of LTD worth:

*In contrast, the LTD Committee's actuary, Vincent Bodnar,37 has estimated the LTD Employees' claims under the LTD Plans to be worth approximately **$60 million** based on an assumed hypothetical benefit termination date of May 31, 2013.*

I assumed Mr. Bodnar calculations must be inaccurate if he also was given bad or distorted data.

$72 million doc. Info. 5500 auditor's report 2010 page 67. See Exhibit D.

Why is there such a large discrepancy in a matter of months for expenses?

**26.** Docket 9041 Exhibit A

15. If, however, the Court finds that the relevant plans do not permit Nortel to terminate some or all of the benefits currently provided to LTD employees without compensation to the LTD employees for loss of the benefits, and the Court authorizes Nortel to terminate the benefits as of April 1, 2013, the appropriate measure of the LTD employees' claims would be the value of the benefits the LTD employees and their dependents and beneficiaries would have received had the benefits not been terminated.

**This measure requires calculating the present value of these future benefits to LTD employees as of the date of the bankruptcy filing – January 14, 2009.**[1] I have been asked by Nortel's counsel to estimate this value employing a discount rate that reflects the fact that these are unfunded benefits financed on a pay-as-you-go basis from Nortel's general assets and are contractual obligations that subject those parties contracting with Nortel to Nortel's credit risk around the time of January 14, 2009. Thus, in calculating the present value of these future benefits, I employ a discount rate that takes into account that risk.

16. Should the Court determine that Nortel may not terminate some or all of the benefit plans – or that it may do so, but that the LTD employees have corresponding damage claims – **the value of the future benefits to LTD employees using this discount rate is between zero and $14.6 million as of January 14, 2009** depending on which benefits the Court determines Nortel is able to terminate without having to compensate any of the LTD employees. (end of Exhibit A)

Dr. Kra, the Valuation expert from Mercer, was given a limited data to calculate the Nortel worth based on obsolete data from January, 2009. When Nortel had sold assets and increased its worth to approximately $7.5 - $9 Billion.  This intentional deception to the court and to Dr. Ethan Kra presented a distorted worth to both the LTD committee and Retiree committee in negotiating. And skewed all legitimate negotiations. Yet it was public knowledge and well publicized in the media, Nortel's website of sale of assets.

**27. Section F. Need for Independent, third-party audit.**

Due to Nortel's historical track record since 2000 of misappropriation of funds, inflating accounting, deceptive practices to stockholders in both Canada and United States, involving outside accounting firms, a tainted culture from the Debtors precedes them.

Example: Press Release from "see footnote.[6]

"…John Cleghorn, Nortel's former audit committee chair, testified during the six-month trial in 2012, that Deloitte and Touche's working papers were never scrutinized by Wilmer Cutler because the actions of Nortel's external auditor were not part of the probe. Those papers were vital because they would have shown the extent of Deloitte's involvement and acceptance - of the accounting practises that were under review.

---

[6] http://business.financialpost.com/2013/01/18/nortel-saga-highlights-why-boards-will-kill-their-own/

When Ontario Superior Court Justice Frank Marrocco asked Cleghorn why Deloitte wasn't part of the internal investigation, the former CEO and chair of Royal Bank, said, among other things, that if Deloitte was to become a target of the internal probe, the giant accounting firm would have resigned and Nortel would have been forced to find a new external auditor. As a result, the board was in a tough position because <u>it would have been practically impossible to get financial statements completed and not be offside with regulatory filing requirements.</u>

It is important to note that Nortel's audit committee hired Wilmer Cutler — not a special committee or independent group of directors representing shareholders, which is the normal practise. In other words, Wilmer Cutler's client was Mr. Cleghorn and the group of directors who oversaw and were ultimately responsible for Deloitte's work at Nortel. Clearly, if Wilmer Cutler questioned Deloitte, Mr. Cleghorn's own judgments would also have been under the microscope." (end of quote)

This results in a conflict of interest and/or questionable relationship of any accounting firm used by Debtors. I therefore ask for an independent, with no previous business or contracts or its staff to perform the LTD calculations and disbursement of funds to LTD payees. Since I, as all the individual LTD employees, will have our claims in one Settlement "pot", I request an independent third party audit (with no previous Nortel contractual agreements and experience in employee benefits) for accuracy of calculations and final totals for each individual.

I also request this, since it has been four years since Nortel filed bankruptcy, and peoples, individual situations have changed.

*(Pg 45) In addition, each Settlement Class member's proportional share of the Settlement Amount will be determined solely by reference to a standardized actuarial computation based on a common formula, thereby foregoing any need for individualized damage determinations.*

*Item 78. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, 2008 WL 821088, at \*5 (citing Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.), 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.*

Apparently **getting the least and not the best is the point of this motion** as stated in the above statements. In response to the above statements :The first step to a fair and a just LTD settlements  is to have accuracy  from company in assets and responsibility, a professional, non-bias Distribution Class Representatives and independent third party audit of LTD claims and payments to individuals. (This could be covered in the administrative costs as well as a third party administrator with no current or previous contracts to Nortel or any of its subsidiaries.

**28. Section. G.  A Secure, Undisputed Claim only.**

This is non-negotiable at the end with all the creditors and cannot fluctuate downward

as the other creditor claims are approved.


**29. Section H. Lack of information to LTD employees.**

•   LTD Committee By-laws: I never saw the LTD Committee by-laws, so how am I

supposed to know how motions are voted and agreed upon. I signed a confidentiality

agreement so that should have been made available to me.

•   Suit decision: I am unaware of an action for the LTD employees to come as group

in a Class Suit until this motion was submitted to the court.


*(Page 19)The Filing of the Class Action Litigation*

*(Paragraph 26, page 19). On November 19, 2012, the Plaintiff filed a Verified*

*Complaint for Declaratory*

*and Injunctive Relief against the Debtors (the "Class Complaint"), thereby*

*commencing this adversary proceeding number 12-50995 (KG) (the "Adversary*

*Proceeding"). The Class Complaint seeks relief under the Employee Retirement*

*Income Security Act, 29 U.S.C. § 1101,*

*et seq. ("ERISA"), alleging various claims for declaratory and injunctive relief,*

*including a declaratory judgment that the governing LTD Plan documents do not*

*permit the Debtors to terminate LTD Benefits for those LTD Employees who already*

*are disabled and receiving income continuation benefits.*

*Finally, the Debtors and the LTD Committee participated in an all-day*

*mediation session with the Mediator on December 4, 2012. After many hours of*

*negotiation, together with the UCC and Bondholder Group and participation of*

*counsel to the Official 20 Committee of Retired Employees (the "Retiree*

*Committee"), the Parties were able to reach the primary terms of a settlement in*

*principle.* **Bondholder Group-Dr. Gaff.** *(Who is this?)*

When was this discussed with LTDers? Last conference call was Dec. 5, 2012.

**30. Section I. Lack of understanding of legal terminology in motion.**

1.*(paragraph 100) "Utility of the settlement"* I

2. *General Unsecured Claim*

3. What does this mean?

*(Pg 44) Through the Settlement Agreement, the proposed Settlement Class seeks an*

*order declaring that, for settlement purposes, the Debtors cannot terminate the LTD*

*Plans with respect to any of the LTD Employees unless and until the Debtors agree to*

*provide them with benefits under the LTD Plans. Incidental to this relief, NNI has*

*agreed to allow a general non-priority, unsecured claim in favor of the LTD*

*Committee, for distribution in lieu of benefits to the Settlement Class members*

*pursuant to the uniform allocation formula set forth in the Settlement Agreement.*

**31. Section J. Failure of Nortel to keep agreement with LTD employees.**

Failure of company to keep agreement with employees. Nortel in the Summary Plan

Description (SPD) stated the requirements for the employee to be accepted into the

Long Term Disability Plan. In my SPD, it states my terms to be in the Plan as permanently disabled, paid until age 65.

Nortel at that time had the choice to pay me my disability pay in a lump sum. But chose to have a third party administer the plan and then someone (either Nortel or third party) made the decision to pay us monthly until age 65.

Nortel needs to follow the guidelines stipulated by the U.S. Department of Labor: http://www.dol.gov/ebsa/publications/ghpfiduciaryresponsibilities.html.

**Nortel Agreement and Contract** is disability compensation to age 65 for every LTD recipient, Benefits (see Docket 8771 Objection by Marilyn Day;  Section. Requirements for Health Plans).


**Fiscal responsibility by Mr. John Ray, CEO**

Good fiscal responsibility and stewardship of the assets are the main job of the CEO. Mr. John Ray. But my question is who is getting paid?  I see news reports of $168 million dollars in attorney fees, then bonus money to various employees, and money to accounting firms.


Nortel committed to an agreement/contract the day each LTD employee was approved for Long Term Disability. Pay to age 65, welfare benefits for employee and dependents, 401K, retirement included, welfare benefits for employee and dependents until death, pension. (work on this for benefits)

Nortel now run by Mr. John Ray, should have fulfilled its contractual agreement for the LTD employees as it stipulated in compliancy with the Department of Labor law.

By paying all of us our monetary amounts. Instead asset money has been wasted in legal maneuvering to not pay a few disabled employees.

**32. Section K. No need for a trial in court.**

*(paragraph 92). Accordingly, if litigated to a conclusion, there is a wide range of potential outcomes for the Parties depending on how the Court ultimately would decide the LTD Termination Motion and Adversary Proceeding. First, the Court would need to determine whether the LTD Employees are entitled to any claim against the Debtors related to the termination of the LTD Plans. Second, even if the Court were to conclude that the LTD Employees are entitled to assert a claim based on the termination of the LTD Plans, the Court would need to determine the proper valuation of such claims, which could be based on the discount rates that were applied by either Mr. Bodnar or Dr. Kra or some other rate determined by the Court. The outcome of the litigation of such issues necessarily involves substantial uncertainty for the Parties.*

To counteract the difficulties expressed in Paragraph 92 of Motion 9304, Ligation or <u>having a trial is unnecessary</u> if:

1. The Debtors provide the appropriate and actual, valid value of the company's worth today, after the sales of divisions, products, patents, addresses, etc. not in January, 2009.

2. An independent third party(ies) audit or audits until an effective measurement of quality control and "checks and balances" has been established for the correct

administration of EACH individual's LTD employee pay and benefits as stated to them in the Nortel Networks Inc. SPDs and as Full time employees of this company.

3. The correct Worth of LTD is determined: 5500 2010 report of $72 million. Plus Administration fees for settlement.

*The Terms of the Settlement Agreement Fall Within the Range of Reasonableness( pg 60)*

No they don't:

1. Too low of settlement

2. Doesn't cover medical necessity of these Disabled employees

I realize that a tool of lawyers is to draw out a case until the opposing parties are so tired that they just want to get it over with, which appears to be the situation here. But normally the best solutions for the parties is not served and I believe this is the case here.

**33.** The Debtors while functioning as a corporation had three options to complete their contract with the permanently disabled employee. Option One: Contribute to a trust fund based on actuarial estimates to age 65 in order to secure the employee's claim and administrator to perform his or her fiduciary duties. Option Two: Pay the employee a "pay as you go" plan on a month to month basis until age 65. Option Three: Pay the employee their total pay from start of LTD until age 65 in one lump sum payment. But the Debtor/Nortel CHOSE to do option two for the LTD employee.

But all three options were not nullified by filing for chapter 11 Bankruptcy, since the contract agreement was completed when the employee LTD benefits were approved for LTD participant by Nortel.

34. In paragraph 112 in Debtors' Motion [DI. 9304] states *"Here the Debtors have a valid justification to terminate the LTD Plans, not only because under the LTD Plans they have the right to terminate the LTD Plans and the right to receive LTD Benefits at will,"* which applies in the case of any plan coverage offered by the Debtor as a compensation **but does not apply to an approved claim already incurred and now is the Debtors' liability for services already rendered.**

35. In paragraph 106 in Debtors' Motion [DI. 9304] states *"Since benefits provided under welfare benefit plans do not and are not required to vest under ERISA, they are terminable at will unless the plans specifically provide otherwise. As the Third Circuit has explained, "an employer's commitment to vest such benefits is not to be inferred lightly and must be stated in clear and express language"* which applies to the following plan undoubtedly , the Nortel Networks Inc. LTD income continuation Plan (only for any future occurrences), the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan, **but not to an approved income continuation claim or any other approved**

**claim already incurred and now is the Debtors' liability for services already rendered**.

36. Renewable Welfare benefits plans are renewed each year and are under a renewable policy where a benefit claim always occurs, approved and possibly paid within the same policy year. The welfare benefit plan could be modified or changed year to year. However, in case of approved income continuation claims the guidelines cannot be changed or modified for the year in which the LTD approval incurred for services already rendered.

37. Nortel is assuming the fact that an approved claim on "pay as you go" basis benefit payment plan is being considered as a future welfare benefits to be approved and then paid.


**CONCLUSION**

38. *Welfare:* "Exemption from misfortune, sickness, calamity or evil; the enjoyment of health and the common blessings of life; prosperity; happiness; applied to persons. Exemption from any unusual evil or calamity; the enjoyment of peace and prosperity, or the ordinary blessings of society and civil government;". Noah Webster's 1828 American Dictionary

39. Living under the Constitution of United States of America and not providing the medical benefits necessary for these LTD, disabled people to maintain some "quality of life" and "stay alive " is unjust.

   http://www.dol.gov/ebsa/publications/ghpfiduciaryresponsibilities.html

40. Docket 8771 Objection by Marilyn Day **Section. Requirements for Health Plans**

This inappropriate amount for LTD settlement, I would have to almost call this inhumane.

We should not be here in the first place. BUT because of inherited disarray of the Debtors Corporate Policies in Human Resources, not following guidelines of U.S. Department of Labor for self-insured companies. AND the deceptive accounting practices of top management of previous CEOs and CFOs, etc., **here I must appeal that the Court order the Debtors to honor their agreements with the employees on LTD, when that event occurred at the time of acceptance into the Long Term Disability Program.**

41. Therefore, the only alternative should be to parse out the LTD income continuation claim for services already rendered and provide the claim actuarial value in the form of cash payment to each individual participant in LTD income continuation claims. The payment is to be paid at the time the  plan is terminated along with the proper compensation, which is reflective of the needs of the Totally Disabled employees of all the other LTD associated Plans (the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan,).

42. **I respectfully request you consider these observations and discrepancies in hopes that justice and fairness will prevail in this case.**

## NOTICE

**43.** Notice of this Objection has been provided to (a) counsel to the Debtors; (b) the United States Trustee for the District of Delaware; (c) counsel to the LTD 1102 Committee; and (d) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware through the Court's electronic filing system. Marilyn Day respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

**44. WHEREFORE**, Marilyn Day respectfully requests the entry of an Order, in the form attached, providing for the Debtors to pay 100 percent of LTD income continuation claim payments in cash to the participants including myself using the actuarial dollar values for each individual participant's claim for services already rendered.

Dated:  January, 29, 2013

Marilyn Day
2020 Fox Glen Drive
Allen, TX. 75013

Telephone:  469-675-3612
Facsimile:  N/A
Email: mardiday@yahoo.com

*Appearing Pro Se*