THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: Chapter 11 | : Case No. 09-10138 (KG) |
| | : |
| Nortel Networks Inc., Et Al., 1 Debtors | : Motion The Court   That<br>: Successor Ericsson. Inc. And<br>:  Telefonaktiebolaget Lm<br>: Contribute  56  Million LTD to<br>: Settlement Agreement |

**I STEPHEN PAROSKI (PAROSKI) LONG TERM DISABILITY PARTICANT OBJECTION TO LONG-TERM DISABILITY PROPOSE  SETTLEMENT AGREEMENTT TO RELEASE AND FOREVER DISCHARGE SUCCESSORS LIABILITY. FROM ANY AND ALL LTD AND RETIREES CLAIMS  WITH  OUT ANY CONTRIBUTION TO LONG TERM  DISABLITY  SETTLEMENT AGREEMENT  OR THE  RETIREES SETTLEMENT AGREEMENT.**

**I STEPHEN PAROSKI MOTION THE COURT FOR THE ORDER THAT SUCCESSOR ERICSSON. INC. AND TELEFONAKTIEBOLAGET LM ERICSSON (PUBL) PURCHASERS OF CDMA AND GSM DIVISION OF NORTEL NETWORK .) CONTRIBUTE 56  MILLION IN ADDITION TO NORTEL OFFER OF 28 MILLION TO LONG-TERM DISABILITY SETTLEMENT AGREEMENT.  THIS WOULD BE A TOTAL OF 84 MILLION DOLLARS LONG-TERM  DISABILITY SETTLEMENT AGREEMENT.**

Einhorn v. M.L. Ruberton Construction Co., No. 09-4204,. 1982)
 On appeal, the Third Circuit held that the District Court had applied the wrong standard
for determine whether successor liability attaches The appropriate standard to apply

under ERISA in the context of an asset sale, the Court of Appeals explained, is that a purchaser of assets may be held liable "where the buyer had notice of the liability prior to the sale and there exists sufficient evidence of continuity between the buyer and the seller." In reaching this decision, the Court began its analysis by noting that, since decisions that pre-date ERISA, the federal courts have "developed a federal common law successor ship doctrine imposing liability upon successors beyond the confines of the common law rule when necessary to protect important employment-related policies.

No one can argue that SUCCESSOR ERICSSON. INC. and TELEFONAKTIEBOLAGET LM ERICSSON (PUBL) did know about Long Term Disability Liability Asset Sale

successor is one where there is a "substantial continuity of identity in the business enterprise." Howard Johnson Co. v. Hotel & Restaurant 911*911 Employees, Detroit Local Joint Exec. Bd., 417 U.S. 249, 263, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974).
While Golden State arose in the labor law context, the court in Einhorn recognized that numerous courts had extended its reasoning when necessary to protect important employment-related policies. Id. 632 F.3d at 95 (citing Brzozowski v. Corr. Physician Servs., Inc., 360 F.3d 173, 177 (3d Cir.2004) (extending Golden State to Title VII claims)). The court thereafter held that "the federal policies underlying ERISA and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub.L. 96-364, 94 Stat. 1208, `are no less important, and no less compel the imposition of successor liability than do the policies animating the NLRA, Title VII,' or the other statutes to which the doctrine has been extended." Id. (quoting Artistic Furniture, 920 F.2d at 1327

agreement spent 3 pages attempting to excuse themselves from this liability Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac,

In light of these policy considerations, the Third Circuit in Einhorn extended the availability of successor liability to multiemployer plan contributions in the context of assets sales, noting that it need not "reinvent the wheel" but could simply follow the approach SLOVITER, Circuit Judge. This appeal asks us to consider the circumstances in which a purchaser of assets bears liability for delinquent employee benefit fund contributions under the Employee Retirement Income Security Act ("ERISA") as a successor in interest to the seller of those assets. Appellant William J. Einhorn, on behalf of employee benefit funds

2

established pursuant to ERISA, brought suit to recover unpaid contributions from Appellee M.L. Ruberton Construction Company. According to Einhorn, Ruberton was obligated to contribute to the benefit funds under two collective bargaining agreements as a successor employer taken by the Seventh Circuit in Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323 (7th Cir. 1990). There the Seventh Circuit concluded liability could be imposed after an asset sale where there was sufficient continuity of operations, and the successor employer had notice of the liability. The Third Circuit further noted that the First, Second, and Ninth Circuits had reached a similar conclusion, along with a number of district courts. Id. at *24-26.

ERICSSON. INC. and TELEFONAKTIEBOLAGET LM ERICSSON (PUBL) are IN Dallas working out of the same building on the equipment same customer completing and performing the same task Nortel was doing till day of sale. And after the sale.

The Court further explained that this approach differed slightly but was not inconsistent with its earlier decision in Teamsters Pension Trust Fund of Philadelphia & Vicinity v. Littlejohn, 155 F.3d 206 (3d Cir. 1998), in which the Court applied the common law rule permitting imposition of successor liability in the case of a corporate merger, even where the successor did not have notice of the liability. The Court explained that, contrary to the context of a merger, a successor in the context of an asset sale "would have an incentive to inquire about the seller's previous liabilities to negotiate for a lower purchase price." Id. at *22. In the situation of an asset sale, the Court concluded, The equities would be best balanced by imposing successor liability, but only where the successor had notice of the liability. Upon establishing the appropriate standard, the Court of Appeals set forth the following factors to consider, among In reaching this decision, the Court began its analysis

by noting that, since decisions that pre-date ERISA, the federal courts have "developed a federal common law successor ship doctrine imposing liability upon successors beyond the confines of the common law rule when necessary to protect important employment-related policies." Id. at *11 Upon establishing the appropriate standard, the Court of Appeals set forth the following factors to consider, among others, when conducting the continuity analysis: "continuity of the workforce, management, equipment and location; completion of work orders begun by the predecessor; and constancy of customers." Id. at *27 (citing Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1987)). Additionally, the Court noted that "commonality of ownership is not required." Id. at *28. Recognizing that the determination regarding whether a successor substantially continued a predecessor's operations is a factual matter (and noting that the parties had agreed that Ruberton had notice of the liability),
the Court of Appeals remanded the case to the District Court to make this determination. Third Circuit said that courts look to, among other things, (1) continuity of the workforce, (2) Management, equipment and location, (3) completion of work orders begun by the predecessor, And constancy of Customers.

Outside of the ERISA and labor context, the general common-law rule provides that an entity that purchases the assets of another does not assume the seller's liabilities unless

(1) the purchaser expressly or impliedly assumed the liability,

(2) the transaction amounts to an effective merger,

(3) the purchasing corporation is the mere continuation of the seller and

(4) the transfer of assets was for the fraudulent purpose of escaping liability for he seller's

unpaid debts. Beginning with the U.S. Supreme Court decision in Golden State Bottling Co. Inc. v. NLRB,5 federal courts have developed a federal-successor ship doctrine that altered the common-law rule to impose liability on successors when necessary to protect and vindicate Employment-related policies. The U.S. Court of Appeals for the Seventh Circuit later expanded on the Supreme Court's vision of protecting federal labor interests in the seminal Artistic Furniture case where the court held that a purchaser of assets may be liable for the seller's delinquent contributions to a pension fund if the buyer had notice of the liability prior the sale and there was sufficient evidence of "continuity of operations" between the entities

**Conclusion:**

The U.S. Supreme Court decision in Golden State Bottling Co. Inc. v. NLRB,5 federal courts have developed a federal-successor ship doctrine that altered the common-law rule to impose liability on successors when necessary to protect and vindicate employment-related policies. Nortel Network Long Term Disability is an employment-related policies The U.S. Court of Appeals for the Seventh Circuit later expanded on the Supreme Court's vision of protecting federal labor interests in the seminal Artistic Furniture case where the court held that a purchaser of assets may be liable for the seller's delinquent contributions to a pension fund if the buyer had notice of the liability prior the sale and there was sufficient evidence of "continuity of operations" between the entities/

Nortel Network Long Term Disability is an employment-related policies is an employment-related policies that directly connected to a federal-successor ship doctrine that altered the common-law rule to impose liability on successors when necessary to protect and vindicate employment-related policies. Supreme Court's vision of protecting federal labor interests. That The U.S. Court of Appeals for the Seventh Circuit later expanded on and it bthe

Nortel Network Long Term Disability is an employment-related policies is an employment-related policies that directly connected Supreme Court's vision of protecting federal labor interests.

**Prayer To The Court:** I Stephen Paroski Prayer To The Court That The Court Will issue an Order That Successor Ericsson. Inc. And Telefonaktiebolaget Lm Ericsson (Publ) Purchasers of Cdma and Gsm Division Of Nortel Network). Contribute 56 Million In Addition To Nortel Offer Of 28 Million To Long-Term Disability Settlement Agreement. This Would Be A Total Of 84 Million Dollars Long-Term Disability Settlement Agreement

**Stephen Ray Paroski is an inactive Employee of Nortel Network Gsm\Division**

Respectfully submitted by

Cynthia A Paroski
Cynthia Ann Paroski for Stephen Ray Paroski

333 EL Rio Drive

Mesquite, Texas 75150

Phone: 214 264 9953

Copy of this document was sent to all attorneys on this case

# Paroski, Cynthia

| | |
|---|---|
| From: | Paroski, Cynthia |
| Sent: | Monday, February 04, 2013 12:40 PM |
| To: | 'Helpdeskde@deb.uscourts.gov' |
| Subject: | RE: Attached Image |
| Expires: | Saturday, August 03, 2013 12:00 AM |

I will go on to say that this will be the first court that has not allowed me to efile. I have 2 other case that I am working on and both the District and the Federal courts allow me to efile as a Pr0-Se litigant.

-----Original Message-----
From: Paroski, Cynthia
Sent: Monday, February 04, 2013 12:37 PM
To: 'Helpdeskde@deb.uscourts.gov'
Subject: RE: Attached Image

I have already mailed my application some time ago. I am not an attorney but I have been filing motions for almost 2 years now. Do you have a problem with Pro- Se. I am copied and have been sent documents on all of the proceeding of the Nortel case for Judge Kevin Gross. If you are not going to allow me to efile I would like to know who is saying I am not allowed to efile. I think that is discriminatory.

Thanks

-----Original Message-----
From: Sara_Bridges@deb.uscourts.gov [mailto:Sara_Bridges@deb.uscourts.gov] On Behalf Of Helpdeskde@deb.uscourts.gov
Sent: Monday, February 04, 2013 12:25 PM
To: Paroski, Cynthia
Subject: RE: Attached Image

Hello,

the attached image you sent appears to be an application for an ECF account. The applications need to be mailed to our office. We cannot accept them through email. I checked with the department that sets up these accounts and they said they did not receive one from you through the mail. In order to electronically file this application would need to be received and then your account would need to be created prior to you filing any motions.

Secondly, are you an attorney? Only attorneys are able to register for the electronic filing. If you are not an attorney anything you want to file with the court will have to be mailed to the clerk's office and we will file it in your case. If you have something that needs to be filed asap I would recommend overnighting it to the office or if you are local you can drop it off in person.

Hopefully that helps you out. Sorry for any confusion.
Thanks

1

RE: Attached Image

Paroski, Cynthia
    to:
        Helpdeskde@deb.uscourts.gov
02/04/2013 12:57 PM

I have my pacer information if you need it

From: Paroski, Cynthia
Sent: Monday, February 04, 2013 11:11 AM
To: 'Helpdeskde@deb.uscourts.gov'
Subject: FW: Attached Image

From: NTXGARP-C5075@twcable.com [mailto:NTXGARP-C5075@twcable.com]
Sent: Monday, February 04, 2013 11:08 AM
To: Paroski, Cynthia
Subject: Attached Image

This E-mail and any of its attachments may contain Time Warner Cable proprietary information, which is privileged, confidential, or subject to copyright belonging to Time Warner Cable. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout.