IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------------- X
                                                                     :
In re:                                                               :  Chapter 11
                                                                     :
NORTEL NETWORKS INC., et al.,¹                                       :  Case No. 09-10138 (KG)
                                                                     :
                      Debtors.                                       :  (Jointly Administered)
                                                                     :
                                                                     :  Re: Docket No. 9352
                                                                     :
-------------------------------------------------------------------- X
```

**NOTICE OF EMEA DEBTORS' SUBMISSION REGARDING
OUTSTANDING ISSUES AND PROPOSED SCHEDULING**

**PLEASE TAKE NOTICE** that on January 31, 2013, the Court entered an order directing all parties to submit a list on or before February 8, 2013 of what they consider to be current, outstanding issues with respect to the allocation dispute [Docket No. 9352] (the "Order").

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Order, attached hereto as Exhibit 1 is the *EMEA Debtors' Submission Regarding Outstanding Issues and Proposed Scheduling* (the "EMEA Debtors' Submission").

*[Remainder of page intentionally left blank.]*

---

[1] The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc.

|  |  |
|---|---|
| Dated: Wilmington, Delaware<br>February 8, 2013 | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>/s/ John T. Dorsey<br>James L. Patton (No. 2202)<br>Edwin J. Harron (No. 3396)<br>John T. Dorsey (No. 2988)<br>Maris J. Kandestin (No. 5294)<br>Rodney Square<br>1000 N. King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571–6600<br>Facsimile: (302) 571–1253<br>      - and -<br><br>**HUGHES HUBBARD & REED LLP**<br>Derek J.T. Adler<br>One Battery Park Plaza<br>New York, New York 10004<br>Telephone: (212) 837–6000<br>Facsimile: (212) 422–4726<br><br>- and -<br><br>**HERBERT SMITH LLP**<br>Kevin Lloyd<br>John Whiteoak<br>Richard Lawton<br>Exchange House<br>Primrose Street<br>London<br>EC2A 2HS<br><br>*Counsel for NNUK and the Joint Administrators* |

# **EXHIBIT 1**

**EMEA Submission**

**EMEA DEBTORS' SUBMISSION REGARDING OUTSTANDING ISSUES AND PROPOSED SCHEDULING**

1. **SUMMARY**

1.1 Pursuant to the Orders of Justice Morawetz and Judge Gross of 31 January 2013, the EMEA Debtors hereby submit:

 1.1.1 a list of outstanding motions and issues; and

 1.1.2 a proposal for dealing with those outstanding issues.

1.2 This submission is split into the following sections:

 1.2.1 current status of each of the three principal processes, namely:

 (A) the Purchase Price Allocation process (the **"PPA Process"**);

 (B) the Canadian Claims process in respect of the claims the EMEA Debtors have asserted against the Canadian Debtors (and various directors and officers) (the **"Canadian Claims Process"**); and

 (C) the US Claims process in respect of the claims the EMEA Debtors have asserted against the US Debtors (the **"US Claims Process"**).

 1.2.2 an explanation of the specific issues that the EMEA Debtors consider need to be resolved; and

 1.2.3 the EMEA Debtors' proposal for dealing with each issue.

2. **CURRENT STATUS**

**PPA Process**

2.1 By Notice of Motion dated 25 April 2011 the US Debtors (and together with the Official Committee of Unsecured Creditors, the **"Movants"**) brought a motion in the US Court seeking an order for the US and Canadian Courts to "set forth binding procedures for the allocation of the Sale Proceeds". On the same day the Movants brought a motion before the Ontario Superior Court of Justice – Commercial List, which attached the Notice of Motion filed in the US Court, seeking the same orders. On 31 May 2011 the Joint Administrators filed their opposition papers along with a cross-motion to compel arbitration. On 31 May 2011 the Canadian Debtors filed a Notice of Motion also seeking approval of an allocation protocol (which was substantially the same as the Movants' protocol). Together the motions and cross-motion are referred to in this submission as the "**PPA Motion**".

2.2 The PPA Motion was fully briefed and a joint hearing of the Canadian and US Court took place on 7 June 2011. The Courts reserved decision.

2.3 On 17 June and 29 June 2011 Justice Morawetz of the Canadian Court and Judge Gross of

the US Court issued orders requiring the parties that attended the PPA Motion to engage in mediation (the "**Mediation**").  The Mediation has concluded without resolving the matters submitted to meditation.

**Canadian Claims Process**

2.4   Pursuant to the EMEA Claims Procedure Order dated 14 January 2011 the EMEA Debtors (and certain officeholders of those Debtors) submitted detailed proofs of claim setting out their claims against the Canadian Debtors (the **"Canadian Claims"**) on 18 March 2011.  On 19 May 2011 the Canadian Debtors requested further particulars of certain of the Canadian Claims.  The EMEA Debtors provided such Further Particulars on 12 September 2011.

2.5   The endorsement of Morawetz J dated 17 February 2011 in connection with the EMEA Claims Procedure Order specifically held that the process issues raised by the Joint Administrators regarding the EMEA Claims Procedure could not and should not be ignored. These reasons led to a written acknowledgement by the Monitor that it would in good faith attempt to negotiate an agreement regarding the procedure (including documentary discovery issues) to be followed for the hearing and determination of all unresolved Canadian Claims with the Canadian Court to determine such procedures if the parties could not agree.

2.6   By Notice of Motion dated 1 December 2011 the EMEA Debtors brought a Motion in the Canadian Court seeking an Order that the Canadian Debtors/the Monitor enter into good faith discussions/negotiations regarding preliminary disclosure issues and an Order prohibiting the Canadian Debtors/the Monitor from destroying or otherwise making unavailable documents that may be relevant to the Canadian Claims or PPA.  This Motion is referred to in this submission as the "**Canadian Disclosure Motion**".

2.7   It was agreed between the parties on 8 December 2011 that the Canadian Disclosure Motion would not proceed pending the outcome of the Mediation.

**US Claims Process**

2.8   The EMEA Debtors (and certain officeholders of those Debtors) filed proofs of claim against the US Debtors on 30 September 2009.  Pursuant to the US Court's order dated 10 May 2011, the EMEA Debtors (and certain officeholders of those Debtors) submitted amended proofs of claim setting out the detailed basis of their claims against the US Debtors (the **"US Claims"**) on 3 June 2011.

2.9   On 15 July 2011, the US Debtors and the Official Committee of Unsecured Creditors filed a joint objection and motion to dismiss the claims of Nortel Networks UK Limited (**"NNUK"**), Nortel Networks (Ireland) Limited (**"NN Ireland"**) and Nortel Networks S.A. (**"NNSA"**).  This motion was fully briefed and a hearing held on 14 October 2011.  By Opinion dated 20 March 2012, the US Court granted the motion in part and denied it in part.

2.10  To date, the US Debtors have not filed objections or otherwise responded to most of the claims filed by the EMEA Debtors, i.e. the claims other than those filed by NNUK, NN Ireland

or NNSA against Nortel Networks Inc.

2.11   By Notice of Motion dated 6 August 2012 the Movants brought a motion in the US Court seeking a scheduling Order to bifurcate the US Claims to prioritize discovery and the resolution of certain elements of certain claims brought by NNUK and staying the remaining claims brought on behalf of NNUK and the remaining EMEA Debtors (the "**US Bifurcation Motion**").

3.   **SPECIFIC ISSUES TO BE RESOLVED**

3.1   The principal matters that to be addressed appear to be as follows:

   3.1.1   Resolution of the PPA Motion and prompt commencement of the PPA Process;

   3.1.2   Co-ordinated disclosure/discovery between the allocation and claims processes;

   3.1.3   Scheduling of the remaining steps necessary in the Canadian and US Claims Processes (including depositions/examinations of witnesses, expert reports and final hearings).

3.2   The EMEA Debtors consider it to be essential that the PPA, Canadian Claims and US Claim Processes proceed in a co-ordinated manner, given the considerable overlap in the factual and legal matters engaged in each process.

3.3   We set out below, in further detail, the EMEA Debtors' position on these principal issues, together with a proposed schedule for achieving such a resolution.

3.4   The principal issue preventing resolution of the affairs of the EMEA Debtors, the Canadian Debtors and the US Debtors is currently the lack of certainty as to each Debtor's entitlement to the proceeds of the asset sales (contained in the "Lockboxes"). None of the Debtors has a clear picture as to the amount of proceeds that it will be ultimately allocated. This leads to significant potential variances in the predicted level of assets of each Debtor, meaning that it is very difficult to predict likely returns to creditors. This uncertainty makes settlements extremely difficult, particularly given that certain creditors have claims into more than one estate, whereas other do not. This leads to very complicated permutations being modelled by each creditor group as to its overall return from each estate and to significant conflicts between the interests and positions of those creditors which do have claims into more than one estate and those which do not. Were the asset position of each estate to be resolved through the allocation of the Lockboxes this would simplify matters significantly which would assist the overall resolution of this matter.

3.5   The EMEA Debtors therefore submit that the PPA Process needs to proceed as expeditiously as possible and that this should be the priority. Now that the effort to mediate has ended without success, a decision on the PPA Motion would greatly assist the parties in advancing all matters. In view of this, we respectfully request that the Canadian and US Courts now deliver their respective decisions in respect of the PPA Motion.

3.6    The EMEA Debtors have been pressing for disclosure in respect of PPA, the Canadian Claims and the US Claims for a considerable period of time. The Canadian Debtors and the US Debtors have continually sought to avoid providing such disclosure.

3.7    Rather than seek to carve out issues to be dealt with in summary manner, only for this to prove impossible, the best way to ensure timely resolution of the Canadian and US Claims is to proceed with disclosure with a view to final hearings in each process to determine all of the issues between the parties outright.

3.8    We therefore respectfully submit that the Debtors should now proceed with disclosure in the Canadian Claims Process and in the US Claims Process with a view to proceeding to hearings on the merits. We set out in this submission a timetable which we think is reasonable and realistic and which will ensure that the Canadian and US Claims are dealt with in an expeditious manner that ensures procedural fairness.

3.9    Given the need for co-ordination between the processes we propose that the Canadian and US Claims disclosure/discovery processes proceed in parallel.

3.10   We also propose that the PPA disclosure process should be co-ordinated with the Canadian and US Claims disclosure processes and that it should (to the extent possible) proceed in parallel with the Claims disclosure processes. If these processes are not co-ordinated there is a risk of lengthy and costly document review processes and examinations of witnesses having to be performed more than once. The EMEA Debtors wish to avoid this and consider it to be in the interests of the other Debtors and their respective creditors to avoid this.

4.     **PROPOSED SCHEDULE**

4.1    Set out below are the EMEA Debtors' proposed schedule for the remaining steps necessary for the resolution of the PPA Process, and the Canadian and US Claims. These timetables are both expeditious and reasonable but will obviously need to be kept under review as the cases progress. Any hearing dates will also need to be listed so that they do not conflict with other processes in different forums – to ensure counsel and witnesses are able to prepare properly and attend the various hearings.

**PPA Process**

4.2    The EMEA Debtors submit that the PPA Process needs to proceed as expeditiously as possible and that this should be the priority.

4.3    Disclosure for the PPA Process should commence as soon as practicable and occur at the same time as disclosure in the two claims processes set out below. The EMEA Debtors' position in this regard is strictly without prejudice to their position that PPA Process must be dealt with by way of arbitration.

**US Claims Process**

4.4    Because there is considerable overlap with respect to the basis of the EMEA Claims in the US

Court, it would be most efficient to litigate the US Claims of all EMEA Debtors at the same time. The EMEA Debtors therefore request that the Court set a date by which the US Debtors must file an objection, if any, to claims filed by the EMEA Debtors to which they have not previously responded so that discovery and other pre-hearing procedures can proceed for all EMEA claims in a coordinated manner. The EMEA Debtors propose the following schedule for pre-hearing procedures on the US Claims:

4.4.1   US Debtors to file Objections, if any, to claims of EMEA Debtors to which they have not previously responded: One month after date of scheduling order

4.4.2   Disclosures of expert testimony under Bankruptcy Rule 7026(a)(2): 9 months after date of scheduling order

4.4.3   Rebuttal expert testimony: 10 months after date of scheduling order

4.4.4   Discovery to be completed: 12 months after date of scheduling order

4.4.5   Dispositive motions, *Daubert* motions, Motions *in limine*: 14 months after date of scheduling order

4.4.6   Hearing: Date to be set by Court after dispositive motions

**Canadian Claims Process**

4.5   The EMEA Debtors propose the following schedule for pre-hearing procedures on the Canadian Claims:

4.5.1   1 April 2013 – serve exchange of documentary disclosure requests

4.5.2   1 May 2013 – serve objections to documentary disclosure requests

4.5.3   1 May 2013 – documentary production begins on a rolling basis

4.5.4   31 May 2013 – filing of motions regarding documentary production

4.5.5   15 June 2013 – filing of responding records regarding motions for documentary production

4.5.6   July (early based on Court's schedule) – hearing of motions regarding documentary production

4.5.7   1 November 2013 – commencement of examinations for discovery (4 weeks)

4.5.8   All the above steps in relation to examination and discovery to be completed within 12 months