IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | ) Chapter 11 |
|  | ) |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**STATEMENT OF NORTEL AD HOC GROUP OF BONDHOLDERS
SUBMITTED IN ACCORDANCE WITH THE COURT'S ORDER DATED JANUARY 31**

The ad hoc group of bondholders (the "Bondholder Group")[2] submits this statement in accordance with the United States Bankruptcy Court for the District of Delaware's order dated January 31, 2013. [Docket No. 9352]

1.  For almost *three years* the parties have been engaged in multiple mediations, all in an attempt to come to a consensual resolution of three critical issues that stand in the way of distributions to Nortel creditors: (a) allocation of the sale proceeds from the asset sales made by the Nortel estates (the "Allocation Dispute"), (b) a determination of the merits of the EMEA claims against the U.S. or Canadian estates (the "EMEA Claims Dispute"), and (c) a determination of the merits of the U.K. Pension claims against the U.S. or Canadian estates (the "U.K. Pension Claims Dispute"). The third and final mediation attempt, which lasted approximately 19 months, was pronounced a failure on January 24, 2013.

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[2] The Bondholder Group consists of bondholders that hold claims issued or guaranteed by Nortel Networks Corporation ("NNC" and together with its affiliates worldwide, "Nortel"), Nortel Networks Limited ("NNL" and together with NNC and certain of their subsidiaries, "Canadian Debtors"), Nortel Networks Inc. ("NNI"), and Nortel Networks Capital Corporation ("NNCC" and together with NNI and certain of its subsidiaries, the "U.S. Debtors").

2.	After three failed mediations, litigation is the only available path for an ultimate resolution. As such, it is incumbent upon this Court and the Canadian Court to set an expedited litigation path forward so that the $7.5 billion in sale proceeds can be unlocked for the benefit of Nortel stakeholders as opposed to value continuing to be eroded by the significant costs of multi-estate administration. Undoubtedly, litigation will be costly, but as reported in several publications recently, the passage of over *four years* without a resolution has resulted in excess of $700 million in estate funds diminishing without the benefit of any distributions going out to creditors. Creditors must now turn to this Court and the Canadian Court to stem these losses by establishing a litigation path which will bring these cases to a swift resolution. The Bondholder Group further believes that the Proposed Litigation Schedule, when combined with plans of reorganization to be filed in each of the U.S. and Canadian proceedings and pursued on a parallel basis, would facilitate getting distributions out to creditors of those estates on an expedited basis.

3.	The significant time that has elapsed in mediation, and the continuing drain of estate assets, support this Court adopting the Bondholder Group's proposed litigation schedule (the "Proposed Litigation Schedule") attached hereto as **Annex A** and incorporated herein.[3]

4.	The Proposed Litigation Schedule is in the best interests of *all* Nortel stakeholders and is reasonably achievable (and necessary) under the facts and circumstances of these cases.[4] The parties to any litigation before this Court and the Canadian Court are no strangers to one another or to the substantive issues underlying these cases after three failed

---

[3]   Through their Canadian Counsel (Bennett Jones LLP), the Bondholder Group will be submitting a similar request to the Canadian Court.

[4]   It should be noted that while the Allocation Dispute would be heard jointly by the U.S. and Canadian courts, the EMEA Claims Dispute and the U.K. Pension Claims Dispute are specific to each court because the claims asserted against each estate differ. However, the fact discovery, expert reports and other items detailed in the Proposed Litigation Schedule with respect to the EMEA Claims Dispute and U.K. Pension Claims Dispute can likely be coordinated for scheduling purposes between the courts to effect the most expeditious and cost-effective resolution of these matters.

2

mediations and after over four years since Nortel filed for bankruptcy. All parties are aware that the principal issue at stake in the Nortel bankruptcy is the $7.5 billion in asset sale proceeds currently sitting in a "lockbox" awaiting distribution to Nortel's creditors. Moreover, the parties to the mediation have submitted extensive briefing on their respective positions over the last three years on a confidential basis so any litigation would merely serve as a public forum to assert these positions. It is time for the parties' respective allocation positions to be tested in litigation because the Nortel estates remain at an undeniable impasse. Too much time has passed in these cases for there to be no progress made on unlocking the sale proceeds or resolving the purported EMEA and U.K. Pension claims. It now rests upon the U.S. and Canadian Courts to protect the diminishing estate assets for the benefit of *all* creditors by allowing the litigation path to move forward expeditiously.

5. The time-frame provided in the Proposed Litigation Schedule is consistent with the proposed timing this Court set forth for resolving the allocation dispute in its consideration of the joint motion for entry of an order establishing an Allocation Protocol pursuant to the Interim Funding and Settlement Agreement filed on April 25, 2011 [Docket No. 5307]. At that time the Court indicated it would have a June hearing on the motion and had reserved a December trial date.[5]

6. Further, the Parties are not starting from "scratch" on any of the three issues. Indeed, this Court made clear to the parties to the EMEA Claims Dispute that it intended to greatly accelerate discovery if mediation failed. The last three years spent in mediation have provided the parties, who are represented by *many* sophisticated professionals used to dealing with complex issues, ample opportunity to develop their positions, obtain information necessary to support these

---

[5] See, e.g., In re Nortel Networks, Inc., Transcript of June 7, 2011 Hr'g at 178:9-10.

DOCS_DE:185769.1 61026/001

positions, or at the very least, determine what, if any, additional information is required through discovery. After **_hundreds of millions of dollars_** of estate funds spent on mediation and the development of positions in connection therewith, the parties to the mediation should be prepared to move quickly in any litigation and any discovery which may be required should likewise be focused and accelerated.

7. Asking for an expedited schedule such as that provided in the Proposed Litigation Schedule resonates with this Court's approach when "[t]here is no middle ground for decision" because parties have resorted to "harsh allegations and innuendo of antagonists." See In re Los Angeles Dodgers LLC, Case No. 11-12010 (KG) (Sept. 30, 2011) [Docket No. 508]. This Court implemented a successful "fast-tracked" litigation schedule for complex issues in In re Los Angeles Dodgers LLC, when this Court recognized the necessity of setting an "early hearing date" to (i) ensure "prompt disposition of the key issues" which will enable a debtor to move forward in the administration of its estates and (ii) "maintain control over parties whose animus toward one another could result in unnecessary, spiraling and excessive litigiousness which would become increasingly challenging to disentangle." See id. In that case, this Court recognized that progress in the debtors' chapter 11 cases would be helped, not hindered by an early hearing date. Likewise, the Bondholder Group respectfully suggests that a similarly shortened litigation timeline is necessary with respect to the pending issues in Nortel's chapter 11 cases and consistent with the practice of this Court and other courts in extraordinary circumstances such as these.[6]

---

[6] See, e.g., In re Official Comm. of Unsecured Creditors v. The CIT Group/Business Credit, Inc. (In re Jevic Holding Corp.), Case No. 08-11006 (BLS) (Bankr. D. Del. Dec. 3, 2012) (resolving highly contested 9019 motion, which concerned a settlement agreement central to the conclusion of the debtors' chapter 11 cases, in approximately six months); In re American Safety Razor Co., 10-12351 (MFW) (Bankr. D. Del. July 28, 2010) (completing highly contested litigation to resolve bidding procedures and proposed 363 asset sale issues, which were key to the confirmation of debtor's plan, in less than three months); see also In re Texas Rangers Baseball Partners, 10-43400-mdl (Bankr. N.D. Tex. July 7, 2012) (completing expedited hearing and issuing decision on highly contested 363 sale procedures, which sale formed an essential component of debtor's chapter 11 reorganization plan, in less than three months); Vitro, S.A.B. de C.V. v. ACP Master, Ltd.

8.    The U.S. and Canadian Courts are empowered to impose an expeditious litigation schedule on these three key issues[7] in order to protect estate assets for the benefit of Nortel creditors. Doing so will also prevent certain parties from continuing to employ a strategy of delay as they have done in the past. The time is now to resolve these issues so that the respective estates can get distributions to their creditors. The Nortel estates should not find themselves at the end of five years of bankruptcy with no resolution of these issues.

---

(In re Vitro, S.A.B. de C.V.), 12-03027-hdh (Bankr. N.D. Tex. Apr. 30, 2012) (completing discovery and trial and issuing decision on enforcement, the key contested issue in debtors' chapter 15 case, in less than four months).

[7] These key issues are not the only ones that may need to be resolved by this court but any remaining ancillary issues in any estate necessary to bring these cases to conclusion can be resolved by the appropriate court in due course (or through a plan process) and should not distract the courts or the parties from focusing on the three issues essential to resolution of these cases.

Dated: February 8, 2013

        **PACHULSKI STANG ZIEHL & JONES** LLP

        By: /s/ Kathleen P. Makowski

        Laura Davis Jones (Bar No. 2436)
        Kathleen P. Makowski (Bar No. 3648)
        919 North Market Street, 17th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705 (Courier 19801)
        Telephone: (302) 652-4100
        Facsimile: (302) 652-4400
        Email: ljones@pszjlaw.com
               kmakowski@pszjlaw.com

        -and-

        **MILBANK, TWEED, HADLEY & McCLOY** LLP
        Dennis F. Dunne
        Thomas R. Kreller
        Albert A. Pisa
        Andrew M. Leblanc
        1 Chase Manhattan Plaza
        New York, NY 10005
        Telephone: (212) 530-5000
        Facsimile: (212) 530-5219