## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- X

*In re*

Nortel Networks Inc., *et al.*,[1]

                 Debtors.

:
:
:
:
:
:
:
:

Chapter 11

Case No. 09-10138 (KG)
Jointly Administered
**Related D.I.s: 9304, 9305, 9306, 9342, 9366, 9367, 9370, 9371, 9372, 9382, 9384**

-------------------------------------------------------------X

OFFICIAL COMMITTEE OF LONG TERM
DISABILITY PLAN PARTICIPANTS, on behalf of
and as agent for a class of individual participants and
beneficiaries under various NORTEL NETWORKS
HEALTH AND WELFARE BENEFIT PLANS,

                Plaintiffs,

       v.

NORTEL NETWORKS INC., *et al.*,

                Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

Adv. Proc. No. 12-50995 (KG)
**Related D.I.: 1, 15, 16, 17**

------------------------------------------------------------- X

## DEBTORS' REPLY IN FURTHER SUPPORT OF THE JOINT MOTION PURSUANT TO SECTIONS 363 AND 105 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 9019 AND 7023 TO (I)(A) PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT REGARDING LONG-TERM DISABILITY PLANS AND CLAIMS, (B) CONDITIONALLY CERTIFY A CLASS FOR SETTLEMENT PURPOSES ONLY, (C) APPROVE THE NOTICE PROCEDURES, AND (D) SCHEDULE A FAIRNESS HEARING

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), respectfully submit this reply (the "Reply") in further

support of, and in reply to the responses (collectively, the "Responses") of certain Long-Term

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Disability Participants (collectively, the "LTD Objectors")[2] to, the *Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule a Fairness Hearing* [D.I. 9304] (the "Joint Motion").[3]

1.      As this Court is aware, on January 18, 2013, after more than a year and a half of vigorous and at times contentious negotiations, the Debtors and the LTD Committee (together, the "Parties") filed the Joint Motion proposing a two-step process for the Court to consider approval of the Settlement Agreement and certification of the Settlement Class for settlement purposes only.  Under the proposed Settlement Agreement, and subject to the terms thereunder, the Parties agree that in exchange for NNI granting an allowed general unsecured claim in the gross amount of $26,640,000 to the LTD Committee  – for the benefit of all the LTD Employees regardless of plan year – the Debtors will be permitted to terminate the LTD Plans in their entirety as of May 31, 2013.[4]  The LTD Committee, working with their legal and financial advisors, has developed an Apportionment Methodology that the Debtors understand will be

---

[2]      To date eight Responses have been filed to the Joint Motion, including the *Objection to the Joint Motion,* filed by Daniel D. David on January 28, 2013 [D.I. 9342], *Objection to the Joint Motion,* filed by Paul E. Morrison on February 4, 2013 [D.I. 9366], *Objection to the Joint Motion,* filed by Jerry Wadlow on February 4, 2013 [D.I. 9367], *Objection to the Joint Motion,* filed by Marilyn Day on February 5, 2013 [D.I. 9370], *Objection to the Joint Motion,* filed by John J. Rossi on February 5, 2013 [D.I. 9371], *Objection to the Joint Motion,* filed by Charles V. Barry on February 5, 2013 [D.I. 9372], *Objection to the Joint Motion,* filed by Stephen Paroski on February 5, 2013 [D.I. 9384], and *Objection to the Joint Motion,* filed by Ernest Demel on February 7, 2013 [D.I. 9382].  Two of these Responses were filed by members of the LTD Committee who did not support the Settlement Agreement, Mr. David and Mr. Morrison.

[3]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Joint Motion.

[4]      Under the terms of the Settlement Agreement, the Debtors and the LTD Committee have the right to agree in writing to extend the Termination Date to a date no later than June 30, 2013.  In that event, the LTD General Unsecured Claim would be reduced by the amount of $680,000.  The description of the Settlement Agreement is qualified in its entirety by the terms of the Settlement Agreement itself.  In the event the Settlement Agreement does not become effective, the Parties' rights are reserved as to the Debtors' ability to terminate the LTD Plans and any liability they may incur for such termination.

2

universally and consistently applied to all LTD Employees to distribute the money the LTD

Committee receives, whether through the sale of the LTD General Unsecured Claim as the LTD

Committee currently contemplates, or pursuant to an approved plan of reorganization for the

Debtors, less potential tax withholdings and certain administrative expenses.  If approved, the

Settlement Agreement will resolve both the LTD Termination Motion filed by the Debtors

seeking to terminate the LTD Plans,[5] as well as the Class Complaint filed by the LTD

Committee.

      2.      At the February 14, 2013 hearing, the first of the two proposed hearings to

approve the Settlement Agreement, the Parties seek approval of Notice Procedures that will

allow them to provide more information to those whose rights will be affected by the Settlement

Agreement, as well as the scheduling of a final Fairness Hearing.  The Parties also seek

preliminary approval of the Settlement Agreement and preliminary certification of the Settlement

Class (along with preliminary appointment of Class Representatives and Class Counsel) for

settlement purposes only.  The final approval of the Settlement Agreement, as well as the final

certification of the Settlement Class for settlement purposes, final appointment of Class

Representatives and Class Counsel and authority to terminate the LTD Plans in their entirety,

would not take place until the Fairness Hearing.

      3.      The Responses filed by eight LTD Employees to the Joint Motion raise objections

to the LTD Committee's composition and role, the terms of the Settlement Agreement and

certain issues unique to the individuals filing Responses.  While these objections are addressed

below, none of the issues raised goes to the issues currently before the Court in deciding on the

---

[5]      The Debtors initially proposed to terminate the LTD Plans on December 31, 2012, but extended the proposed termination date to March 31, 2013, consistent with the scheduling of the ultimate hearing on the LTD Termination Motion.  See *Debtors' Supplemental Submission in Further Support of Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and the Employment of the LTD Employees*, dated November 2, 2012 [D.I. 8878].

preliminary approval of the settlement and none provides a valid basis for denying the approval

of the Notice Procedures and the related relief sought in the Preliminary Settlement Order.  To

the extent individuals have raised objections or concerns regarding the ultimate settlement terms,

they are more properly considered at the Fairness Hearing finally approving the settlement.

A.      **THE LTD COMMITTEE FAIRLY AND ADEQUATELY REPRESENTS THE
        INTERESTS OF THE LTD EMPLOYEES**

        4.      Certain of the Responses raise questions about the role of the LTD Committee,

including the ability of the LTD Committee to represent the interests of all LTD Employees and

to make decisions regarding the allocation of settlement proceeds.  While the LTD Committee is

better placed to respond to its internal process, it is the Debtors' view that it is both appropriate

and important to conclude that the LTD Committee fairly and adequately represents the interests

of the LTD Employees and that the LTD Committee, working with its financial and legal

advisors, was in a position to negotiate the settlement which is proposed for approval.

        5.      The members of the LTD Committee were appointed on August 2, 2011, by the

Office of the United States Trustee under section 1102 of the Bankruptcy Code after a careful

screening process "for the sole purpose of serving as the authorized representative of the LTD

Plan Participants in connection with negotiations regarding the modification or termination of the

LTD Plan, and any claims relating thereto and for no other purpose."  See *Order Appointing an*

*Official Committee of Long-Term Disability Participants*, dated June 22, 2011 [D.I. 5790];

*Notice of Appointment of Official Committee of Long-Term Disability Participants*, August 2,

2011 [D.I. 6073], *amended* dated August 4, 2011 [D.I. 6080].  The LTD Committee is composed

of members with varying backgrounds and circumstances, including their age and the year of the

commencement of their disability, which have allowed such members to meaningfully speak for

the interest of all of the LTD Employees as a group.  In reliance on the LTD Committees'

4

authority to act as the authorized representative of all of the LTD Employees, the Debtors have

spent over 18 months, and devoted substantial resources, attempting to negotiate a consensual

termination of the LTD Plans with the LTD Committee.  The members of the LTD Committee

have been actively involved in such negotiations and, it is the Debtors' understanding that all the

LTD Committee members supported the decision to initiate the Class Complaint as class

representatives on behalf of all LTD Employees, which action underlies the current proposed

settlement.

6.      As an official committee appointed in the Debtors' cases, the LTD Committee

was formed for the purpose of negotiating a settlement relating to the LTD Plans and was

granted the fiduciary power to negotiate on behalf of all LTD Employees.  Generally, individual

creditors are adequately represented by a single committee organized under section 1102 of the

Bankruptcy Code "'so long as the diverse interests of the various creditor groups are represented

on and have participated in that committee.'"  In re Garden Ridge Corp., No. 04-10324 (DDS),

2005 WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005) (quoting In re Sharon Steel Corp., 100

B.R. 767, 777-78 (Bankr. W.D. Pa. 1989)).  Courts in the Third Circuit have concluded that

"[f]or a particular group of creditors to be adequately represented by an existing committee, it is

not necessary for the committee to be an exact reflection of that committee's designated

constituents.'"  Garden Ridge, 2005 WL 523129, at *3 (internal citations omitted).  While certain

Responses assert that the members of the LTD Committee are not adequately representative of

LTD Employees whose LTD Benefits are governed by summary plan descriptions dated between

the years 1981 and 2001, the primary arguments and theories advanced in the Class Complaint

and by the LTD Committee in opposing a non-consensual termination of the LTD Plans – such

as whether benefits have vested in the LTD Employees – have been argued consistently for all

LTD Employees, and to the extent arguments relevant to specific plan years existed, at least one other member of the LTD Committee went out on disability during the identified time period and could advocate for those individuals' rights (as could all members of the LTD Committee in their fiduciary capacity). While adequate representation does not require "proportionate representation of distinct groups of creditors," Garden Ridge, 2005 WL 523129, at *3, the composition of the LTD Committee does reflect its designated constituents and provides a medium through which LTD Employees with various interests have been able to meaningfully participate in the settlement process. Notably, one Response asserts that all LTD Employees should be included in the proposed settlement and be treated in a uniform manner. See Wadlow Objection at ¶ 8. Similarly, the Debtors would not be prepared to offer the settlement if it only resolved certain LTD Plan years or a subset of the potential claims rather than a global resolution of the issues.

7.      Moreover, to the extent that certain LTD Objectors now express concerns regarding the composition of the LTD Committee, these concerns were not formally raised prior to the filing of the Joint Motion despite multiple occasions to do so over the last one and one-half years. While Mr. David argues that the alleged inadequate representation by the LTD Committee was not evident at the time of the LTD Committee's formation because the variances in the Debtors' summary plan descriptions only became apparent during discovery, see Daniel D. David Objection at ¶ 17, the Debtors provided the LTD Committee with substantial information regarding the LTD Plans within months of its formation and have been engaged in negotiations regarding a potential settlement throughout. As recently as November 2012, rather than raise such concerns, the LTD Committee and its members filed the Class Complaint, which alleged that "[t]he LTD Committee as agent for and representative of the class will fairly and adequately

protect the interests of the class." Class Complaint at ¶ 16.[6] An essential part of the current

proposed settlement is the resolution of that Class Complaint, which requires the certification of

the proposed class for purposes of settlement only. The Debtors would be substantially

disadvantaged and financially prejudiced if they were forced to restart settlement discussions or

the LTD Committee were somehow reconstituted or subdivided, and likely would be forced to

seek a non-consensual termination of the LTD Plans based on their pending LTD Termination

Motion.

8.      Certain of the Responses have raised further concerns about the role of the LTD

Committee in overseeing the allocation of any settlement payments among LTD Employees,

either by suggesting the LTD Committee members are not equipped to make such determinations

or that an independent auditor should be appointed to further the allocation determinations. It is

the Debtors' view that the LTD Committee, which has the support of sophisticated counsel and

independent financial advisors and actuaries, is more than capable of overseeing any settlement

of the claims.

9.      Shortly after their appointment, the LTD Committee retained the services of

financial advisor Alverez and Marsal and an independent actuary, Vincent Bodnar,[7] to assist the

LTD Committee in their consideration of the valuation of their benefits and other matters

relevant to the current disputes. See *Order Authorizing Employment and Retention of Alvarez &*

*Marsal Healthcare Industry Group, LLC as Financial Advisors for the Official Committee of*

*Retired Employees and the Official Committee of Long-Term Disability Participants,* Nunc Pro

---

[6]      Furthermore, proper procedure mandates that reconsideration of the Court's order to appoint an LTD Committee would have to be sought pursuant to a motion brought under Fed. R. Civ. Pro. 60(b). The standards required by that rule are not met here, and in any event, the time to bring such a motion has since passed.

[7]      Effective on November 1, 2012, Towers Watson completed an asset purchase from DaVinci Consulting Group, and hired all twelve employees of DaVinci Consulting Group's employees, including Mr. Bodnar.

Tunc to September 8, 2011, dated October 24, 2011 [D.I. 6679]. While the fees of the LTD Committee's advisors are paid by the Debtors' estates, these professionals are retained as advisors to the LTD Committee and not the Debtors.

10.    Moreover, the Debtors have provided the LTD Committee and its advisors with substantial financial data regarding the LTD Benefits, and has responded to various requests by the financial advisors regarding the LTD Benefits. It is the Debtors' understanding that the LTD Committee's financial advisors and actuaries have been involved in the development of the Allocation Methodology and will calculate the individualized claim information that will be contained in the Individualized Settlement Notices sent to each LTD Employee calculating the proportional share of the Settlement Amount that he or she is projected to receive under the Settlement Agreement. Accordingly, it is the Debtors' understanding that while the LTD Committee members may have approved the basic formulas that will be used to allocate the Settlement Amount among the Settlement Class, they have had the benefit of the advice and resources of sophisticated counsel and advisors throughout. Moreover, LTD Employees may raise any concerns regarding inaccurate information or errors in calculations with regard to the Individualized Settlement Notice at any time prior to the objection deadline for the Fairness Hearing, currently proposed to be April 19, 2013. The appointment of an auditor would be redundant and unnecessary at best.

C.    **THE NOTICING PROCEDURES SHOULD BE APPROVED AND THE REMAINING OBJECTIONS OVERRULED OR DEFERRED TO THE FAIRNESS HEARING**

11.    At this time, the Debtors seek approval of the Notice Procedure for the Fairness Hearing, at which hearing the final approval of the proposed Settlement Agreement will be before the Court. As with the objection discussed above, none of the remaining objections raised

8

in the Responses challenges the adequacy of the proposed Notice Procedures, and each therefore should be overruled or deferred for consideration at the Fairness Hearing. Conditional certification of the Settlement Class on a preliminary basis will not prejudice the LTD Employees' right to object to (or support) the final certification of the Settlement Class or the final approval of the terms of the proposed settlement.

12.     Certain of the Responses raise arguments regarding claims and defenses that individuals may have against the termination of the LTD Plans or the adequacy of the settlement amount, including that some or all LTD Benefits were vested at the time of their disability, that the VEBA established by the Debtors created an independent funding obligation or commitment, and that the valuation of benefits conducted by the Debtors' actuary, Ethan Kra, is subject to challenge. While the Debtors disagree with the merit of each of these claims and defenses, such disputes are common to any litigation and have been the very same issues about which the Debtors have been engaged in discussions with the LTD Committee and its advisors for the last 18 months. While the Debtors do not admit the validity of such arguments and the LTD Committee does not concede the Debtors' right to unilaterally terminate the LTD Plans, the proposed settlement resolves such disputes in a manner that the Debtors and the LTD Committee have determined is fair and reasonable, accounting for the cost, risks and uncertainty of further litigation for all involved.

13.     Certain Responses raised questions regarding the potential value of lost future benefits and the current monthly cost to the Debtors of providing LTD Benefits, noting that different amounts have been stated in different pleadings and other documents over time. The population of LTD Employees is constantly changing, as some individuals retire or other life circumstances arise, all of which affect the cost to the Debtors of providing such benefits.

Moreover, the projected future value of LTD Benefits if the LTD Plans were not terminated would naturally decrease over time, as the Debtors continue to pay those benefits each month. Other variables affect the valuation of a potential claim as well, including without limitation the discount rate used and the date upon which the potential claim is valued. Such issues have been considered by the Debtors and the LTD Committee in their discussions regarding a consensual resolution of these issues.

14.    Finally, Mr. Demel and Mr. Paroski appear to raise issues unrelated to the proposed settlement. Mr. Demel is not a current LTD Employee, as he entered into an agreement with the Debtors to settle his claim regarding his prior entitlement to certain long-term disability and disability pension benefits. See *Stipulation Reducing and Allowing Claim No. 4643 Filed by Ernest Demel Against Debtor Nortel Networks Inc.* dated as of September 14, 2010, as approved by the Court on October 14, 2010 [D.I. 4160]. Mr. Demel appears to request payment on his allowed unsecured claim granted under that settlement; however, such payments will be paid pursuant to the terms of a confirmed plan of reorganization in the Debtors' cases. Mr. Demel is not eligible to participate in the Settlement Agreement in light of the prior settlement. Mr. Paroski appears to assert certain successor liability claims against Ericsson, as a purchaser of certain of the Debtors' business assets, related to his LTD Benefits. A request for similar relief previously was considered and denied by the Court with prejudice, and also does not provide a basis for denying approval of the Notice Procedures. See *Order Denying Motion of Stephen Paroski for the Order Promissory Estoppel Order Authorizing and Approving and Approving Procedures Funding or Buyout Ericsson Inc. and Telefonaktiebolaget LM Ercission and Nortel*, dated August 22, 2012 [D.I. 8274].

10

15.     Accordingly, for the reasons stated herein and in the Joint Motion, the Debtors respectfully request that the Court grant the preliminary relief sought in the Joint Motion.

WHEREFORE, the Debtors respectfully request that this Court (i) grant the preliminary relief sought by the Joint Motion; (ii) overrule the objections set forth in the Responses to the extent they relate to the entry of the proposed Preliminary Settlement Order, (iii) enter the Preliminary Settlement Order; and (iv) grant such other and further relief as it deems just and proper.

Dated:  February 11, 2012
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*