**EXHIBIT F**
**Blackline of Amended and Restated Settlement Agreement**

**AMENDED AND RESTATED AGREEMENT TO TERMINATE LONG-TERM DISABILITY BENEFITS, TERMINATE EMPLOYMENT OF LONG-TERM DISABLED EMPLOYEES, SETTLE ADVERSARY PROCEEDING, ALLOW THE LTD GENERAL UNSECURED CLAIM AND RELEASE ALL OTHER LTD CLAIMS**

This Amended and Restated Agreement to Terminate Long-Term Disability Benefits, Terminate Employment of Long-Term Disabled Employees, Settle the Adversary Proceeding, as defined below, Allow the LTD General Unsecured Claim, as defined below, and Release all other LTD Claims, as defined below (the "Settlement Agreement") is entered into as of January 17, February 11, 2013 by and among Nortel Networks Inc. ("NNI") and certain of its affiliates that are debtors and debtors-in-possession in the chapter 11 cases, as defined below (collectively, the "Debtors"),[1] the Official Committee of Long-Term Disability Participants (the "LTD Committee"), and certain members of the LTD Committee in their capacity as such (the "LTD Committee Member Parties"[2] and collectively with the LTD Committee and the Debtors, the "Parties"), and amends and restates in its entirety the Settlement Agreement entered into between the Parties as of January 17, 2013.  The LTD Committee, which was appointed as an official committee under 11 U.S.C. §1102, and certain members of the LTD Committee, who are purported class representatives under Rule 23 of the Federal Rules of Civil Procedure, are acting on behalf of all of the Debtors' long-term disabled employees who are participants in the Debtors' Long Term Disability Plan and certain other plans and programs (such employees are referred to herein as the "LTD Employees").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[2]    The LTD Committee approved this Settlement Agreement in accordance with its governing by-laws.

WHEREAS, the Debtors affirm that they have provided a number of benefits to the LTD Employees through benefit plans and other programs, including (as amended or modified from time to time) the Nortel Networks Inc. Long-Term Disability Plan, the Nortel Networks Inc. Short Term Disability Plan, the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan,[3] predecessor plans including, without limitation, those listed on Exhibit A hereto, and any other formal or informal benefit plans, agreements or programs (including plans, agreements, arrangements or programs that are funded through the purchase of insurance) or arrangements for disabled employees, surviving spouses of deceased former disabled employees and eligible dependents, including plans, agreements, arrangements or programs for medical, surgical, or hospital care benefits, income continuation benefits or any other benefits in the event of sickness, accident, disability, or death (collectively, as each such plan, agreement, arrangement or program has been amended or modified from time to time, the "LTD Plans");[4]

---

[3]     The Nortel Networks Inc. Long-Term Investment Plan was terminated effective as of June 30, 2012, for all of the Debtors' employees.  The Nortel Networks Inc. Health Care Reimbursement Account Plan and the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan were previously terminated for all of the Debtors' employees, effective as of December 31, 2010.

[4]     The Debtors historically also have provided benefits to their retired employees, as well as such employees' surviving spouses and eligible dependents, through various benefit plans and other programs, including (as amended or modified from time to time) the Nortel Networks Inc. Retiree Medical Plan, the Nortel Networks Inc. Retiree Life Insurance and Long-Term Care Plan, predecessor plans and other formal or informal benefit plans, agreements, arrangements or programs (including plans, agreements, arrangements or programs that are funded through the purchase of insurance) or arrangements for current or future retired employees, their surviving spouses and eligible dependents, including plans, arrangements, agreements or programs for medical, surgical, or hospital care benefits,

WHEREAS, on January 14, 2009, the Debtors, other than Nortel Networks (CALA) Inc.,[5] filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), which cases are consolidated for procedural purposes only, in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on June 21, 2010, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing Debtors to Terminate Certain Retiree and Long-Term Disability Plans* [D.I. 3204] (the "Plan Termination Motion"), which, *inter alia*, sought approval to terminate the LTD Plans;

WHEREAS, on July 16, 2010, the Debtors withdrew the Plan Termination Motion without prejudice [D.I. 3651];

WHEREAS, since the Plan Termination Motion was withdrawn, the Debtors have continued to provide certain benefits under the LTD Plans (the "LTD Benefits");

WHEREAS, on June 3, 2011, several LTD Employees filed the *Motion for Entry of an Order Pursuant to Section 1102(a)(2) of the Bankruptcy Code Appointing an Official Committee of Long-Term Disability Plan Participants* [D.I. 5595] seeking appointment of a committee to engage in discussions regarding the modification or termination of the LTD Plans;

---

or benefits in the event of sickness, accident, disability, or death (in each case as such plans have been amended or modified from time to time, the plans are collectively referred to herein as the "Retiree Welfare Plans").

[5]     Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

WHEREAS, on June 22, 2011, the Bankruptcy Court issued an order directing the United States Trustee to appoint the LTD Committee, a committee of long-term disabled employees who are currently receiving benefits under the LTD Plans, for the purpose of serving as the authorized representative of the Debtors' LTD Employees in connection with negotiations regarding the modification or termination of the LTD Plans [D.I. 5790];

WHEREAS, on August 2, 2011, the United States Trustee appointed the members of the LTD Committee [D.I. 6073], as amended on August 4, 2011 [D.I. 6080];

WHEREAS, on March 28, 2012, the Debtors filed the *Motion for Entry of an Order (I) Appointing a Neutral Mediator Concerning the Modification or Termination of the Nortel Retiree Welfare Plans and the Nortel Long-Term Disability Plans; (II) Authorizing the Debtors to Pay the Costs of Engagement; and (III) Granting Related Relief* [D.I. 7463] (the "Mediation Motion") seeking, in relevant part, the appointment of a mediator to facilitate settlement discussions between the Debtors and the LTD Committee;

WHEREAS, on April 18, 2012, the Bankruptcy Court entered an order granting the Mediation Motion and appointing Richard Levin, Esq. of Cravath, Swaine & Moore LLP, as mediator [D.I. 7560];

WHEREAS, on July 30, 2012, the Debtors filed the *Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors Long-Term Disability Plans and the Employment of the LTD Employees* [D.I. 8067] (the "LTD Termination Motion");

4

WHEREAS, in the LTD Termination Motion, the Debtors set forth their position that the LTD Plans expressly permit their termination of the LTD Plans and LTD Benefits without requiring any payment or other consideration to the LTD Employees;

WHEREAS, on October 25, 2012, the LTD Committee filed an objection to the LTD Termination Motion [D.I. 8840] and certain other individuals filed formal or informal objections to the LTD Termination Motion (all such objections, including the LTD Committee objection, the "LTD Objections");

WHEREAS, on November 19, 2012, the LTD Committee filed the *Verified Complaint for Declaratory and Injunctive Relief* (the "Class Complaint") commencing adversary proceeding number 12-50995 (KG), on behalf of a class consisting of all LTD Employees, seeking, among other relief, a declaration that the Debtors are not permitted to modify or terminate the LTD Plans (the "Adversary Proceeding");

WHEREAS, over the last year, the advisors for the Debtors and the LTD Committee have met and engaged in negotiations to attempt to reach a mutually acceptable resolution regarding the matters raised in the Class Complaint and the termination or modification of the LTD Plans, including by exchanging settlement proposals and counter-proposals;

WHEREAS, the Debtors have provided the LTD Committee and the members of the LTD Committee (the "LTD Committee Members") with information relevant to their evaluation of the LTD Termination Motion, the Debtors' requested relief therein, and the Debtors' position on the issues raised in the Class Complaint, including without limitation through the provision of documents in response to both informal and formal requests for the

5

production of documents, and formal interrogatories and requests for admission in accordance with court-ordered discovery schedules in connection with the LTD Termination Motion;

WHEREAS, after extensive negotiations between the Parties, the Parties have reached agreement regarding settlement of the claims asserted in the Class Complaint, the terms and conditions of the termination of the LTD Plans with respect to the LTD Employees, the resolution of claims of the LTD Employees arising from and related to the termination of the LTD Plans and related terms as set forth herein;

WHEREAS, the LTD Committee and the LTD Committee Member Parties have determined that the settlement set forth herein is fair, reasonable and adequate and in the best interests of the proposed class of LTD Employees;

WHEREAS, the Debtors, to avoid the costs, disruption and distraction of further litigation, and without admitting the validity of any allegations made in the Class Complaint or that the Debtors are not entitled as a matter of law and fact to the relief sought in the LTD Termination Motion, are willing to enter into a settlement agreement on the terms set forth herein;

**NOW, THEREFORE, IN CONSIDERATION OF THE FOREGOING AND THE MUTUAL COVENANTS SET FORTH HEREIN, THE PARTIES AGREE AS FOLLOWS**:

1.     **<u>Court Approvals.</u>**[6]

All provisions of this Settlement Agreement shall not become effective unless and until: (i) the entry of orders by the Bankruptcy Court, in form and substance reasonably satisfactory to the Parties, approving this Settlement Agreement, certifying a settlement class consisting of all LTD Employees as of the Termination Date (defined below), pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure and Rule 7023(b)(2) of the Federal Rules of Bankruptcy Procedure (the "<u>Settlement Class</u>"), authorizing the Debtors to enter into and perform their obligations hereunder, binding all members of the Settlement Class to the terms of the Settlement Agreement, and granting related relief (the "<u>Approval Orders</u>"); (ii) such Approval Orders finding that the LTD Committee and the LTD Employees appointed to represent the Settlement Class are authorized to enter into and implement this Settlement Agreement, including the obligations thereunder; (iii) such Approval Orders finding that all members of the Settlement Class are bound by the terms set forth in this Settlement Agreement; and (iv) such Approval Orders becoming final and not subject to further appeal (the terms set forth in (i) through (iv) above, collectively, the "<u>Court Approvals</u>").  In the event the Approval Orders are not entered by the Bankruptcy Court by May 16, 2013 or such Approval Orders do not become final and not subject to further appeal by May 30, 2013, this Settlement Agreement shall be void ab initio and of no force and effect and in that event the Parties reserve all of their rights and defenses.  The Parties also reserve their right to consummate the Settlement Agreement even if the Court Approvals noted in this section are not achieved if all Parties mutually agree in writing to do so.

---

[6]     The section headings appearing herein are inserted for reference purposes only.  They shall not be deemed to define, limit, expand or otherwise affect the scope or intent of the provisions herein.

2.      **Settlement Consideration.**

The Debtors, on the one hand, and the LTD Committee and the LTD Committee Member Parties on behalf of all LTD Employees, on the other hand, agree to the following, to be memorialized in the Approval Orders:

a.      Solely for the purpose of settlement of the Adversary Proceeding, the Parties hereby consent to the certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(2), and Federal Rule of Bankruptcy Procedure 7023(b)(2).

b.      Without admitting or denying liability, and solely for the purpose of settlement, the Debtors consent to the entry of an order against them on Count II of the Class Complaint declaring that they shall not terminate any of the LTD Plans, as defined herein, with respect to any of the LTD Employees on or before the Termination Date, unless and until NNI allows a general non-priority, unsecured claim in favor of the LTD Committee in the gross amount of $28 million based on a hypothetical termination date of March 31, 2013, minus the costs (for purposes of settlement, calculated as $680,000 per month) for the transition period of April 1, 2013 through May 31, 2013, resulting in a general non-priority, unsecured claim in the gross amount of $26,640,000[7] for benefits under the LTD Plans (where such general non-priority, unsecured claim in the gross amount of $26,640,000 shall constitute the "LTD General

---

[7]      Subject to the terms of Section 6(b), *infra*.

Unsecured Claim"). The LTD General Unsecured Claim shall be allowed as of the date that the

Approval Orders have become final and non-appealable orders (the "Effective Date").[8]

      c.     The LTD Committee shall have the right to sell, assign or convey the LTD

General Unsecured Claim without further order of the Court, subject to compliance with Federal

Rule of Bankruptcy Procedure 3001.

      d.     The Debtors shall make distributions on account of the allowed LTD

General Unsecured Claim in accordance with an effective plan of reorganization confirmed

under section 1129 of the Bankruptcy Code (the "Plan"). The "Settlement Amount" shall

constitute (i) the net recovery to the LTD Committee on the allowed LTD General Unsecured

Claim, whether through a distribution under the Plan, or the sale, assignment or conveyance of

the LTD General Unsecured Claim, less (ii) the Settlement Administration Costs (as defined

below).

      e.     The Settlement Amount shall be allocated among the LTD Employees

who are receiving benefits under the LTD Plans as of the Termination Date on the basis of a

formula to be provided by the LTD Committee, whereby each LTD Employee shall receive his

or her proportional share of the Settlement Amount, subject to applicable withholding tax

requirements, calculated based on a fraction, the numerator of which is the actuarial valuation of

such LTD Employee's claims under the LTD Plans (as determined by the LTD Committee) and

the denominator of which is the aggregate of the actuarial values of all LTD Employees' claims

---

[8]     The Debtors intend that the LTD General Unsecured Claim be allowed against NNI, but NNI reserves the right to seek recovery from the other Debtors for some portion of the amount distributable on account of the LTD General Unsecured Claim, after consultation with the UCC and the Bondholder Group.

under the LTD Plans (as determined by the LTD Committee), thereafter applied to the

Settlement Amount.  The foregoing allocation methodology is referred to herein as the

"Apportionment Methodology."  The LTD Committee shall have sole responsibility for

calculation of such amounts and distribution of the Settlement Amount pursuant to the

Apportionment Methodology.

      f.      Within ten (10) business days of the Debtors having served the Settlement

Notice (as defined below), the LTD Committee will deliver to the Bankruptcy Court, and seek

approval of, a schedule that details the calculation of the proportional share of the Settlement

Amount to be allocated to each eligible LTD Employee (as determined by the LTD Committee

applying the Apportionment Methodology)[9].  Such Court approval, if given, shall be deemed to

fully and finally determine the propriety of the application of the Apportionment Methodology to

the Settlement Amount and to fully and finally determine the actuarial valuation of each LTD

Claim and the calculation of the proportional share of the Settlement Amount to each LTD

Employee.

      g.      The allowance of the LTD General Unsecured Claim shall be granted in

full and final settlement of all LTD Claims, as defined herein.

      h.      Upon the Effective Date, all other claims in the Class Complaint shall be

deemed dismissed with prejudice.

      i.      Within ten days of the Effective Date, the Debtors shall withdraw with

prejudice the LTD Termination Motion, pursuant to the conditions set forth in Section 29 hereof.

---

[9]      The LTD Committee reserves the right to file a revised schedule prior to the Fairness Hearing.

j.      The LTD Committee and its counsel shall use their best efforts to work with the Debtors and their counsel to obtain final approval of the settlement set forth herein through the entry of the Approval Orders, including, without limitation, using their best efforts to cooperate with the Debtors to respond to any objection to any term of this Settlement Agreement raised by any LTD Employee or any other person, and to support the Debtors' position with respect to any such objection in all respects.

3.      **Settlement Administration Costs.**

The term "Settlement Administration Costs" shall refer to the expenses of the LTD Committee and its advisors that are necessary to administer and implement the Settlement Agreement and administer and effectuate distribution of the Settlement Amount, incurred after the Effective Date.

4.      **No Debtor Liability for Distribution Mechanic.**

Notwithstanding their agreement to the relief set forth in Section 2 hereof in exchange for settling the Adversary Proceeding and receiving the releases set forth herein, the Debtors, their successors, their respective affiliates and the LTD Plans, do not and will not have any obligation, responsibility or liability, in their capacity as debtors, former employers or in any other capacity whatsoever, under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or the U.S. Internal Revenue Code of 1986, as amended (the "Tax Code") (each of which shall include regulations and other published guidance thereunder), in connection with, related to or arising out of the establishment, operation or termination of any plan, program, arrangement, agreement or commitment by the LTD Committee to pay, reimburse or otherwise provide for any benefit to the members of the Settlement Class, or any transferee or assignee of the LTD General Unsecured Claim, or their respective beneficiaries, heirs or assigns,

11

including without limitation any benefit described in Section 3(1) of ERISA.  Nothing in this

section is intended to limit in any way the allowance of the LTD General Unsecured Claim in

accordance with the Settlement Agreement and the Plan.

5.    **LTD Plans Run-Off Period.**

The time period for filing a claim for payment or reimbursement of benefits

covered by and approved pursuant to the relevant LTD Plans for claims incurred prior to the

Termination Date shall be reduced to a period of six (6) months (or such shorter period as

provided under the terms of the relevant LTD Plan), following the Termination Date (the "Run

Off Period").  For the avoidance of doubt, a claim for payment or reimbursement of benefits will

be deemed filed for purposes of this Section once filing of the appropriate claim form, if

applicable, to the relevant designated claims administrator has occurred (whether by the

beneficiary or the provider if the beneficiary so authorizes), in accordance with the terms of the

relevant LTD Plan.  Claims for benefits under the relevant LTD Plans that accrue prior to the

Termination Date and which are not properly filed in accordance with the relevant LTD Plans

prior to the earlier of (i) the current run off period under the relevant LTD Plan or (ii) expiration

of the Run Off Period, shall be disallowed for all purposes (and the Debtors' claims agent will be

authorized to make an appropriate notation on the official claims register maintained in the

Debtors' cases as necessary).  These untimely claims are referred to herein as "Untimely Run Off

Claims."  No consideration shall be owed or paid by the Debtors or any of their successors, or

the LTD Committee with respect to the Untimely Run Off Claims.  For the avoidance of doubt,

nothing in this section modifies, waives or otherwise overrides the Debtors' or any third party's

right to review, approve and object to any timely claim that may be presented during the Run Off

Period.  Third party service providers and insurers will be provided notice that Untimely Run Off Claims will not be paid.

      6.    **Termination of LTD Plans.**

      a.    If the Effective Date has occurred, in accordance with the terms of Sections 2(b) and 2(i) hereof, the Debtors shall terminate all LTD Plans in their entirety, including, for the avoidance of doubt, all coverage and benefits provided thereunder, as of May 31, 2013 at 11:59 p.m. (ET) (the "Termination Date").  Except as expressly set forth herein, on the Termination Date, the Debtors will cease to sponsor, provide or be liable for any LTD Benefits under the LTD Plans.  On or after the Effective Date, the Debtors shall cease to be liable for LTD Claims, as defined in Section 9 hereof.

      b.    The Termination Date may be extended to a date no later than June 30, 2013, if all Parties mutually agree in writing to do so.  If the Termination Date is extended by such an agreement, the allowed amount of the LTD General Unsecured Claim will be reduced in the amount of $680,000 per month for each month between May 31, 2013, and the ultimate Termination Date that is agreed upon by the Parties.

      7.    **Termination of Employment.**

    Effective as of the Termination Date, the Debtors shall terminate the employment of the LTD Employees.  For the avoidance of doubt, the LTD Committee reserves all rights as to the current employment status of any of the LTD Employees in the event the Effective Date does not occur, and agrees solely for the purpose of settlement that termination of employment of the LTD Employees is necessary.

13

8.     **Continuation of LTD Committee.**

Subsequent to the Effective Date, the LTD Committee shall exist solely for the purpose of enforcing and performing the terms of the Settlement Agreement and the LTD Committee shall be formally disbanded upon payment of the Settlement Amount to the LTD Employees.  The Debtors shall not be liable to pay fees, expenses or costs incurred by the LTD Committee or its professionals, advisors, designees or agents after the Effective Date, exclusive of any fees and expenses related to the preparation of monthly, interim or final fee applications for work performed or costs incurred for periods prior to the Effective Date, as required under the *Administrative Order Pursuant to 11 U.S.C. §§ 105(A) and 331, Fed. R. Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and Reimbursement of Fees and Expenses for Professionals and Official Committee Member* [D.I. 222], which amounts shall instead be paid out of the Settlement Amount.  Nothing in this provision limits the rights of the LTD Committee, which shall be fully preserved, to continue as an official committee appointed under 11 U.S.C. §1102, as appropriate, in the event that the settlement is not approved.

9.     **Definition of LTD Claims.**

a.     As used herein, the "LTD Claims" shall include any and all actual and potential claims, demands, causes of action, debts, liabilities or obligations, whether based on any legal or equitable theory (including fiduciary or equitable duties) or otherwise, including, but not limited to suits in contract, tort or equity, whether arising under contract, ERISA, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the Tax Code, the Americans with Disabilities Act of 1990, or any other statute, rule, regulation, common law or otherwise, and whether arising under the laws of the United States, any political subdivision thereof or the

14

laws of any other jurisdiction, each as may be amended from time to time, in all cases arising out

of or relating to:

      i.      Any past, current or future benefit or any other obligation, claim, or potential obligation or claim arising under or relating to the LTD Plans, including the LTD Benefits;

      ii.      The administration of the LTD Plans, including, but not limited to, the calculation of LTD Benefits, the application of offsets against LTD Benefits, the denial of LTD Benefits, the determination of eligibility to receive LTD Benefits, the interpretation of the LTD Plans and the drafting of the LTD Plans and all oral and written communications made with respect to such matters;

      iii.      The amendment, modification and/or termination of any of the LTD Plans and/or any benefits or coverage thereunder, whether done previously or as provided for under the provisions of this Settlement Agreement;

      iv.      Claims relating to the employment of the LTD Employees and the termination of their employment;

      v.      Claims relating to the Nortel Networks Voluntary Employee Beneficiary Association, the Nortel Networks Health & Welfare Benefits Trust, any other similar trusts that do now exist or may have existed previously (together, the "Trusts"), or any obligation to escrow, segregate or fund amounts relating to the LTD Plans;

      vi.      Any and all claims, defenses, causes of action, damages, costs and expenses that arise from, concern, or are related to, directly or indirectly, the allegations set forth in the Class Complaint or the LTD Objections; and

      vii.      Claims for punitive damages, equitable relief, breach of fiduciary duty, detrimental reliance, attorneys' fees or other expenses related to the foregoing.

      b.      For the avoidance of doubt, LTD Claims shall exclude the following

claims and any and all defenses thereto, which claims shall not be enforceable against or

recoverable from the LTD General Unsecured Claim, the proceeds thereof or the Settlement

Amount, or the LTD Committee, or its advisors, in each case in their capacity as such (and which

claims and related defenses collectively shall be referred to as, "Excluded Claims"):

i.      Claims arising under or relating to the Retiree Welfare Plans, which are subject to and being settled by the *Debtors' Motion For Entry Of Orders Pursuant to 11 U.S.C. §§ 105, 363 and 1114 and Fed. R. Bankr. P. 9019 (A) Approving Settlement Notification Procedures and, Subsequently, (B) Approving a Settlement Agreement with the Official Committee of Retired Employees* [D.I. 9224];

ii.     Claims arising under or relating to the Nortel Networks Severance Allowance Plan or the Nortel Networks Enhanced Severance Allowance Plans, including related fringe benefits;

iii.    Claims arising under or relating to the Nortel Networks U.S. Deferred Compensation Plan or the Northern Telecom Inc. Senior Management Incentive Award Program;

iv.     Claims for qualified pension benefits arising under or relating to the Nortel Networks Retirement Income Plan, Nortel Networks Pension Service Plan, Nortel Networks Cash Balance Plan, Northern Telecom Inc. Retirement Plan for Employees or the Nortel Networks Capital Accumulation and Retirement Program, which are properly asserted only against the Pension Benefit Guaranty Corporation;

v.      Claims for non-qualified pension benefits arising under or relating to the Nortel Networks Retirement Income Plan Restoration Plan, Nortel Networks Cash Balance Restoration Plan, Northern Telecom Inc. Excess Pension Plan, Nortel Networks Long-Term Investment Restoration Plan, Nortel Networks Supplementary Executive Retirement Plan, the Nortel Networks Special Pension Benefits Plan and the Nortel Networks Special Pension Credit Plan;

vi.     Claims for benefit payments under any of the LTD Plans that accrue prior to the Termination Date that are properly filed prior to the expiration of the Run Off Period (as amended by the Settlement Agreement), and that are subsequently approved in writing or electronically by the respective designated claims administrator, named ERISA Claims fiduciary or insurer (as defined in the governing plan document) for the LTD Plan under which such claims are asserted;

vii.    Claims for expatriate benefits and relocation expenses;

viii.   Claims for the account balance currently vested in an individual's account pursuant to the terms of the Nortel Networks Long-Term Investment Plan or Northern Telecom Inc. Thrift Savings Plan, subject to investment loss;

ix.     Workers' Compensation benefits approved prior to the Effective Date in accordance with the terms of all applicable workers compensation policies, including insurance policies, to which the Debtors are party, and applicable state workers' compensation laws;

x.      Payment in respect of accrued but unused vacation, consistent with the Debtors' applicable governing policies;

xi.     Social Security benefits, which are properly asserted only against the United States Social Security Administration; and

xii.    Claims directly arising under a written employment agreement between an individual LTD Employee and the Debtors that are unrelated to life insurance, death benefits, medical insurance, dental insurance, vision insurance, hearing insurance, accidental death and dismemberment insurance, health reimbursement accounts, dependent day care reimbursement accounts, other welfare benefits or any other LTD Claims.

c.      Nothing in the Settlement Agreement shall constitute an admission by the Debtors that any Excluded Claims constitute valid claims against the Debtors.

10.     **Releases.**

a.      Upon the Effective Date, for the good and valuable consideration provided by the Debtors in connection with this Settlement Agreement, and except as provided for herein by the terms of the Settlement Agreement, the LTD Committee; the LTD Committee Member Parties; and each LTD Employee, in his or her individual capacity, and in his or her capacity as a member of the Settlement Class; each of its, his or her respective spouses, dependents, heirs, distributees, executors, administrators, members, officers, directors, agents, representatives, successors and assigns; and any purchaser, transferee or assignee of the LTD General Unsecured Claim or any LTD Employee's LTD Claim (collectively, the "LTD Parties") knowingly and voluntarily release and forever discharge the Debtors, their estates, the LTD Plans, the LTD Plan administrators, the members of all Nortel benefit plan committees (including, without limitation,

the Employee Benefits Committee, the Joint Leadership Resources Committee, the

Compensation and Human Resources Committee and any predecessors thereto), the Official

Committee of Unsecured Creditors (the "UCC"), and the ad hoc group of bondholders that has

been organized (the "Bondholder Group"), and each of their respective past and present parents,

subsidiaries, affiliates, general partners, limited partners, shareholders, administrators,

liquidators, directors, officers, employees, managers, agents, attorneys, solicitors, trustees,

fiduciaries, accountants and advisors, and each of all of their respective predecessors, successors

and assigns (collectively, the "Debtor Releasees"), from any and all LTD Claims and Untimely

Run Off Claims, whether known or unknown, suspected or unsuspected, accrued or unaccrued,

matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the

LTD Parties now have, had, may have had, or hereafter may have against any of the Debtor

Releasees.  This Release provides for and effectuates a discharge of the Debtor Releasees to the

full extent permitted by applicable law with respect to any and all LTD Claims and shall be

contained in the Approval Orders and effectuated through the entry of the Approval Orders.

       b.    Any and all proofs of claim filed on account of, or which, to any extent,

include LTD Claims, including, but not limited to, claims arising from or relating to

modifications to or the termination of LTD Plans, shall be disallowed and expunged from the

Debtors' claims register on the Effective Date, solely with respect to the portion of the proof of

claim relating to the LTD Claims.  Nothing in this Settlement Agreement shall waive or limit

defenses available to the Debtors and their successors and assigns against a proof of claim that

has been or may be filed against the Debtors in the Chapter 11 Cases, including but not limited to

an objection to the claim based on a failure to timely file such claim on or before the applicable

bar date, or to the extent that such claim is raised in violation of this Settlement Agreement (the "Objectionable Proofs of Claim").

c.      Except as otherwise provided in this Settlement Agreement, upon the Effective Date, the Debtors, their estates, successors and assigns (the "Debtor Parties") knowingly and voluntarily release and forever discharge the LTD Parties and all of their advisors (collectively, the "LTD Releasees") from any and all LTD Claims and Untimely Run Off Claims, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Debtor Parties now have, had, may have had, or hereafter may have against any of the LTD Releasees. This Release provides for and effectuates a discharge of the LTD Releasees to the full extent permitted by applicable law with respect to any and all LTD Claims and shall be contained in the Approval Orders and effectuated through the entry of the Approval Orders.

d.      Except for the representations and promises that form this Settlement Agreement, in entering into this Settlement Agreement and the settlement provided for herein, the LTD Parties and the Debtor Parties each recognize that no facts or representations are ever absolutely certain; accordingly, each of the LTD Parties and Debtor Parties assume the risk of any misrepresentation, concealment or mistake, and if any of these Parties should subsequently discover that any fact relied upon by such Party in entering into this Settlement Agreement was untrue, or that any fact was concealed from any of these Parties, or that any understanding of the facts or of the law was incorrect, such Party shall not be entitled to set aside this Settlement Agreement, or any of the releases contained herein, by reason thereof.  This Settlement Agreement is intended to be final and binding between the LTD Parties and Debtor Parties

regardless of any claims of fraud, misrepresentation, promise made without the intention of performing, concealment of fact, mistake of fact or law, or any other circumstances whatsoever. Each Party relies on the finality of this Settlement Agreement as a material factor inducing that Party's execution of the Settlement Agreement.

e.      The Approval Orders shall include and operate as an injunction against the commencement or continuation of any action, the employment of any process or any act to collect, recover or offset any LTD Claim that any of the LTD Parties had, have or may have against the Debtor Releasees.  As of the Effective Date, the only rights that any of the LTD Parties may have with respect to the LTD Claims is the right to share in the Settlement Amount, pursuant to Section 2 hereof.

f.      Notwithstanding the foregoing, nothing contained in this Settlement Agreement shall be treated as a loss or waiver of the right of any LTD Employee to:  (i) seek to enforce the terms of the Settlement Agreement after the Effective Date or (ii) pursue any timely filed proofs of claim in the Chapter 11 Cases for any matter other than LTD Claims. Furthermore, nothing herein is intended to be, nor shall be, construed to relieve the Debtors of any obligations to pay for professional fees and/or expenses of the LTD Committee or its retained professionals incurred prior to the Effective Date, in accordance with the Bankruptcy Code and the applicable retention order, subject to the Debtors' right to challenge the fee applications of the LTD Committee.

11. **Retiree Committee Settlement Agreement.**

a.    On December 31, 2012, the Debtors filed the *Debtors' Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105, 363 and 1114 and Fed. R. Bankr. P. 9019 (A) Approving Settlement Notification Procedures and, Subsequently, (B) Approving a Settlement Agreement with the Official Committee of Retired Employees* [D.I. 9224] (the "Retiree Approval Motion") seeking approval of a settlement agreement with the Official Committee of Retired Employees (the "Proposed Retiree Settlement Agreement").  Pursuant to the terms of the Proposed Retiree Settlement Agreement, which may be amended and is subject to Court approval, any LTD Employee who is receiving LTD Benefits under the LTD Plans as of the Termination Date (and is therefore a member of the Settlement Class) and has met the service requirements for retirement as of January 31, 2013 (in accordance with the eligibility criteria set forth in the Retiree Approval Motion and the Proposed Retiree Settlement Agreement) can elect to participate in the Proposed Retiree Settlement Agreement provided that such LTD Employee voluntarily terminates his or her employment with the Debtors and irrevocably relinquishes his or her right to receive continued benefits under the LTD Plans, in accordance with the terms of the Proposed Retiree Settlement Agreement.[10]

b.    For the avoidance of doubt and notwithstanding anything to the contrary in the Proposed Retiree Settlement Agreement, if the Termination Date for the LTD Plans occurs on or before June 30, 2013, any LTD Employee who would have been eligible to receive LTD Benefits under the LTD Plans as of the Termination Date but for the fact that such LTD

---

[10]    To the extent that the Proposed Retiree Settlement Agreement, as it may be amended, is approved prior to this Settlement Agreement, the terms of the Proposed Retiree Settlement Agreement shall govern the right of the LTD Employees to participate in the Proposed Retiree Settlement Agreement.

Employee elected to voluntarily terminate his or her employment with the Debtors solely in order to participate in the Proposed Retiree Settlement Agreement, will have waived his or her right to receive LTD Benefits under the LTD Plans and under this Settlement Agreement, and shall be deemed to not be a member of the Settlement Class solely for the purpose of participating in this Settlement Agreement andor for noany other purpose.

12. **Notice.**

a.      All members of the Settlement Class and all other holders of LTD Claims shall be sent notice of the Settlement Agreement in a form substantially similar to Exhibit B hereto (with a copy of this Settlement Agreement) by the Debtors via first class mail (the "Settlement Notice"), which Settlement Notice shall:

i.      Describe the settlement of the Adversary Proceeding and the Apportionment Methodology for the Settlement Amount, including, for each member of the Settlement Class, a description of his or her projected individual allocation from the Settlement Amount, allocated in proportion to the actuarial valuation of his or her claim for LTD Benefits arising under the LTD Plans or any predecessor plans, each as amended or modified from time to time consistent with the Apportionment Methodology, as determined by the LTD Committee and to be submitted to the Bankruptcy Court for approval;[11]

ii.      Describe the releases to be granted to the Debtor Releasees and the LTD Releasees;

iii.      Establish an objection deadline of not less than ten (10) days before the final hearing on the motion to approve the Settlement Agreement for holders of LTD Claims to file and serve objections to the Debtors' motion including, without limitation, objections to the Settlement Agreement, the fairness of the settlement embodied herein, the Apportionment Methodology, the use of the Settlement Amount, the distributions from the Settlement Amount made to members of the Settlement Class thereunder, the valuation of the LTD Claim of any member of

---

[11]      For the avoidance of doubt, the description of each member of the Settlement Class's projected individual allocation from the Settlement Amount may be sent to such class members from the LTD Committee separately from the Settlement Notice provided by the Debtors.

the Settlement Class under the Apportionment Methodology and any additional amounts for LTD Claims a member of the Settlement Class properly and timely asserts and believes to be due and owing to such member (collectively, the "Objections");

iv.      State that all Objections must be: (a) in writing; (b) signed by the objecting party or his or her counsel, if any; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, Delaware 19801 by no later than the objection deadline; and (e) served in accordance with the Local Rules so as to be received on or before the relevant objection deadline by the following at addresses to be provided in the Settlement Notice:  (i) counsel to the Debtors, (ii) counsel to the LTD Committee, (iii) counsel to the UCC, (iv) counsel to the Bondholder Group, and (v) the Office of the United States Trustee (such procedures, the "Objection Procedures");

v.      State that the Settlement Class, if certified, shall be a non-opt out class, and to the extent a member of the Settlement Class who disputes the Apportionment Methodology or the treatment of his or her LTD Claim when the Apportionment Methodology is applied thereto, fails to timely file and serve an Objection in accordance with the Objection Procedures, or files an Objection that is not sustained by the Court in the Approval Orders, such member will be bound to the Settlement Agreement and the resolution of his or her LTD Claims thereunder and shall be barred from seeking any alternative recovery from or remedy with respect to any LTD Claim, that relates in any way to the Settlement Amount or the LTD General Unsecured Claim (including but not limited to disputes concerning the Apportionment Methodology or calculation of the Settlement Amount), the Debtor Releasees, the LTD Committee, the LTD Committee Members, or their respective advisors or successors;

vi.      State that all LTD Claims of members of the Settlement Class shall be paid from the Settlement Amount in accordance with the Apportionment Methodology, and that to the extent any member of the Settlement Class seeks any sum above and beyond such member's share of the Settlement Amount as determined by the LTD Committee using the Apportionment Methodology, and such member has failed to timely file an Objection in accordance with the Objection Procedures, such member's claim for such sum shall be deemed released and extinguished with no further right to payment from the Settlement Amount, the Debtor Releasees, the LTD Committee, or their respective advisors or successors.

vii.     State the eligibility requirements for members of the Settlement Class to participate in the Retiree Approval Motion and the Proposed Retiree Settlement Agreement (as they may be amended or ultimately approved by the Court).

b.     In addition, the Debtors shall provide notice of the Settlement Agreement in a form substantially similar to Exhibit C hereto that is acceptable to the LTD Committee's advisors (the "Publication Notice") by publication in The Wall Street Journal (National Edition), Toronto Globe and Mail (National Edition), USA Today (National Edition), Raleigh News & Observer, Charlotte Observer, Dallas Morning News, Houston Chronicle, Tampa Bay Times, Orlando Sentinel, Miami Herald and San Jose Mercury News.

c.     All costs and expenses associated with the Settlement Notice and the Publication Notice shall be borne by the Debtors, and not by the LTD Committee, and no part of such expenses shall constitute a Settlement Administration Cost.

13.     **Exculpation and Indemnification.**

Notwithstanding anything contained in this Settlement Agreement to the contrary, the Parties, the UCC, the Bondholder Group and their respective directors, officers, employees, members, attorneys, actuaries, financial advisors, accountants, investment bankers, retained professionals, agents and representatives shall neither have nor incur any liability to any person or entity for any acts taken or omitted to be taken during the Debtors' Chapter 11 Cases in connection with, or related to the formulation, preparation, negotiation, dissemination, implementation, approval or administration of this Settlement Agreement or any contract, instrument, release or other agreement or document created or entered into in connection with this Settlement Agreement, or any other act taken or omitted to be taken during the Debtors' Chapter 11 Cases in connection with or in contemplation of this Settlement Agreement;

provided, however, that nothing set forth in this Settlement Agreement shall have any effect on the liability of any person or entity that results from any such act or omission that is determined in a final non-appealable order to have constituted gross negligence or willful misconduct, and, provided further, that each Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, this Settlement Agreement.  This exculpation provision also shall be included in any plan approved in the Debtors' Chapter 11 Cases, to the fullest extent permitted by law.

Additionally, the LTD Committee, the LTD Committee Member Parties, and any professionals retained by the LTD Committee in their capacity as such shall be included in the indemnity and release provisions provided to the Debtors' professionals contained in the Debtors' chapter 11 plan to the fullest extent permitted by law.

14.     **Final Settlement**.

The Settlement Agreement is being entered into, and the LTD General Unsecured Claim is being granted in full and final satisfaction of the LTD Claims of members of the Settlement Class and, upon the occurrence of the Effective Date, shall supersede any prior obligations of the Debtors relating to the provision of LTD Benefits or payment of LTD Claims under the LTD Plans to members of the Settlement Class, such that the LTD Committee and all members of the Settlement Class shall be forever estopped and barred from seeking further relief related to the LTD Claims or resolved matters that fall within the scope of the Settlement Agreement.

15.     **No Actions Pending Final Court Approval of Settlement Agreement.**

The LTD Committee shall be a joint movant on the motion for approval of this Settlement Agreement and shall provide information as requested by the Debtors to ensure that proper service of such motion is made on all LTD Employees.

Except as otherwise provided in an Order entered by the Court, pending final approval of this Settlement Agreement, the LTD Committee, in its capacity as plaintiff in the Adversary Proceeding, and the LTD Committee Member Parties, in their capacity as such, agree that they will not commence, prosecute, instigate or in any way participate in the commencement or prosecution of any action asserting any LTD Claims, either directly, representatively, derivatively or in any other capacity, against any of the Debtor Releasees.

16.     **No Admissions.**

a.      This Settlement Agreement and the agreement among the Parties reflected herein, were entered into in the context of a settlement.  Should the Court fail to enter the Approval Orders, unless otherwise agreed in writing by the Parties, this Settlement Agreement shall be void *ab initio* and of no force and effect, and neither the existence of this Settlement Agreement nor its contents, or the contents of any draft hereof shall be deemed to prejudice in any way the position of any party to the LTD Termination Motion or the Adversary Proceeding or their claims or defenses.  Neither the existence of this Settlement Agreement nor its contents, or the contents of any draft hereof, shall constitute an admission of liability or lack thereof by any of the Parties, or shall be admissible as evidence in any court of law or other legal proceeding for any purpose, other than for the purpose of enforcing the Settlement Agreement.

Each Party acknowledges and agrees that nothing in this Settlement Agreement constitutes a concession of any factual or legal issue raised in or relating to the LTD Claims.

b.     In the event that the Court does not enter a final Approval Order approving this Settlement Agreement, for any reason, Debtors reserve the right to oppose certification of any class in the Adversary Proceeding or any other pending or future proceedings.

17.    **Governing Law.**

This Settlement Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and to be executed within the State and without giving effect to the law of any other jurisdiction or the conflict of law rules of any other jurisdiction to the extent that they might cause any laws other than the laws of the State of New York to be applied to govern or construe this Settlement Agreement.

18.    **Jurisdiction.**

The Parties agree that the Bankruptcy Court presiding over the Debtors' Chapter 11 Cases shall have exclusive jurisdiction to hear and determine all matters arising from or relating to the implementation or performance of the Settlement Agreement and the Approval Orders through the effective date of any plan confirmed in the Debtors' Chapter 11 Cases and thereafter to ensure compliance with the terms of the Settlement Agreement and Approval Orders.

19.    **Jury Waiver.**

As of the Effective Date, each Party shall waive, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any litigation directly or

indirectly arising out of, under or in connection with this Settlement Agreement or any transaction contemplated hereby or thereby.

20.    **Binding Effect.**

This Settlement Agreement shall be binding on the Parties, from and after the date this Settlement Agreement is executed, subject only to the approval of the Bankruptcy Court, and shall be binding on all members of the Settlement Class, from and after the Effective Date.  In all cases it shall continue to be binding after the conclusion of the Debtors' Chapter 11 Cases.

21.    **Signing Authority.**

The Parties represent and warrant to each other that the signatories to this Settlement Agreement on their respective behalf have full power and authority to enter into it, consistent with such orders as the Bankruptcy Court may enter.

22.    **Entire Agreement.**

This Settlement Agreement and the proposed Approval Orders contain the entire understanding of the Parties with respect to the matters addressed herein, and all prior offers and discussions among the Parties concerning such matters are merged herein.  In entering into this Settlement Agreement, the Parties have not relied on any representations, warranties, covenants, promises, or undertakings except those expressly set forth in writing in this Settlement Agreement.  The terms of the Settlement Agreement constitute an integrated offer and are indivisible except as described herein, subject to the terms and conditions hereof.

23.    **Manner of Execution.**

The Parties may execute this Settlement Agreement in counterparts, and all executed counterparts shall collectively be deemed to be one and the same instrument, and the Parties may exchange signature pages via mail, courier, facsimile or email.

24.    **Tax Consequences.**

Except as expressly provided in this Section, the Debtors make no representations or warranties whatsoever regarding any tax benefits, tax obligations and/or other consequences arising from or in connection with this Settlement Agreement, the allowance of the LTD General Unsecured Claim, or any payments made from the Settlement Amount to the members of the Settlement Class, and the recipients and beneficiaries of any such payments shall be solely responsible for any taxes in respect of any payments under this Settlement Agreement or in respect of the LTD General Unsecured Claim.  The LTD Committee represents that it has sought the advice of counsel and/or its tax and financial advisors in respect of the tax effects regarding any payments in respect of this Settlement Agreement.  In the event the LTD General Unsecured Claim is not sold, transferred or assigned by the LTD Committee prior to the time any distributions are made by NNI, NNI reserves the right to withhold all taxes subject to withholding under all applicable provisions of the Tax Code.  In the event the LTD General Unsecured Claim is sold, transferred or assigned by the LTD Committee prior to the time any distributions are made by NNI in respect of such claim, the Debtors do not intend to withhold taxes on behalf of any person with respect to the LTD General Unsecured Claim or any distributions made with respect to such claim.  The Debtors shall have no liability relating to the withholding of taxes or the issuance of form W-2s.

25.    **No Claim.**

The Parties agree that this Settlement Agreement shall not be subject to any claim of invalidity, duress, mistake of law or fact, and that it expresses the full, final and complete settlement of the Parties.

26.   **Successors.**

The Parties acknowledge that each and every covenant, warranty, release and agreement contained herein shall inure to the benefit of, and be binding upon, the agents, subsidiaries, employees, officers, directors, assigns of all of the Parties hereto, and the successors in interest of the Debtors and the LTD Committee Member Parties.

27.   **Modification.**

This Settlement Agreement may not be altered, amended, abandoned, modified, waived, superseded, canceled or discharged, except by a further writing subscribed to by the LTD Committee, the Debtors and the UCC.

28.   **Incidental Acts.**

Each Party to this Settlement Agreement agrees to perform any other or further acts, and execute and deliver any other further documents, as may be necessary or appropriate to implement this Settlement Agreement.

29.   **Withdrawal of LTD Termination Motion and Dismissal of Adversary Proceeding.**

On the Effective Date, the LTD Termination Motion, the Adversary Proceeding and the Settlement Motion shall be deemed fully and finally resolved.  Within ten (10) days of the Effective Date, all discovery requests relating to the LTD Termination Motion and Class Complaint propounded by either party shall be withdrawn with prejudice, the Debtors shall withdraw with prejudice the LTD Termination Motion, and the LTD Committee and the LTD Committee Member Parties shall dismiss with prejudice the Adversary Proceeding.

(Signature Pages Follow)

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

**The Official Committee of LTD Employees (executed by its Chair in accordance with its governing by-laws)**

By: ___/s/  Barbara Gallagher_____
Name: Barbara Gallagher
Title:   Chair of the LTD Committee

**Class Representatives for Settlement Purposes**

By:___/s/  Barbara Gallagher_____
Name: Barbara Gallagher


By:___/s/  Wendy Boswell Mann_____
Name: Wendy Boswell Mann


By:___/s/  Dianna L. Irish_____
Name: Dianna L. Irish


By:___/s/  Michael Stutts_____
Name: Michael Stutts


By:___/s/  Deborah Jones_____
Name: Deborah Jones

**NORTEL NETWORKS INC.**


By:___/s/  John Ray_____
Name: John Ray
Title: Principal Officer


**NORTEL NETWORKS CAPITAL CORPORATION**


By:___/s/  John Ray_____
Name: John Ray
Title: Principal Officer


**NORTEL ALTSYSTEMS INC.**


By:___/s/  John Ray_____
Name: John Ray
Title: Principal Officer


**NORTEL ALTSYSTEMS INTERNATIONAL INC.**


By:___/s/  John Ray_____
Name: John Ray
Title: Principal Officer


**XROS, INC.**


By:___/s/  John Ray_____
Name: John Ray
Title: Principal Officer

**SONOMA SYSTEMS**


By:    */s/  John Ray*
Name: John Ray
Title: Principal Officer

**QTERA CORPORATION**


By:    */s/  John Ray*
Name: John Ray
Title: Principal Officer

**CORETEK, INC.**


By:    */s/  John Ray*
Name: John Ray
Title: Principal Officer


**NORTEL NETWORKS APPLICATIONS MANAGEMENT SOLUTIONS INC.**


By:    */s/  John Ray*
Name: John Ray
Title: Principal Officer


**NORTEL NETWORKS OPTICAL COMPONENTS INC.**


By:    */s/  John Ray*
Name: John Ray
Title: Principal Officer


**NORTEL NETWORKS HPOCS INC.**


By:    */s/  John Ray*
Name: John Ray
Title: Principal Officer

**ARCHITEL SYSTEMS (U.S.) CORPORATION**

By:___*/s/  John Ray*_____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS INTERNATIONAL INC.**

By:___*/s/  John Ray*_____
Name: John Ray
Title: Principal Officer

**NORTHERN TELECOM INTERNATIONAL INC.**

By:___*/s/  John Ray*_____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS CABLE SOLUTIONS INC.**

By:___*/s/  John Ray*_____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS (CALA) INC.**

By:___*/s/  John Ray*_____
Name: John Ray
Title: Principal Officer