## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Hearing date: February 19, 2013 at 10:00 a.m. (ET)** |
| | : | **Objections due: February 12, 2013 at 4:00 p.m. (ET)** |
| | | **RE: D.I. 9362** |

-------------------------------------------------------- X

## U.S. DEBTORS' OBJECTION TO THE MOTION OF
## THE AD HOC COMMITTEE OF CANADIAN EMPLOYEES TERMINATED
## PRE-PETITION FOR ENTRY OF AN ORDER ALLOWING LATE FILED CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "U.S. Debtors"), hereby respectfully submit this objection (the "Response"), to the *Motion Of The Ad Hoc Committee Of Canadian Employees Terminated Pre-Petition For Entry Of An Order Allowing Late Filed Claims* [D.I. 9362] (the "Motion") filed by the Ad Hoc Committee Of Canadian Employees Terminated Pre-Petition (the "Ad Hoc Committee" and each of the members of the Ad Hoc Committee seeking relief under the Motion, a "Movant"). In support of this Response, the U.S. Debtors represent as follows:

### Preliminary Statement

1.    The Motion seeks authorization for 176 former employees of the Canadian Debtors[2] to file claims for certain termination benefits against the U.S. Debtors (the "Claims")

---

[1]    The U.S. Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the U.S. Debtors and their petitions are available at http://dm.epiq11.com/nortel.

four years after the commencement of these cases and over three years after the expiration of the

prepetition claims Bar Dates (as defined below).  The Claims are based on a form termination

agreement allegedly provided to each of the Movants by the Canadian Debtors that provides that

the Corporation (defined as Nortel Networks Corporation and its subsidiaries) will pay each of

the Movants a certain lump sum severance amount in recognition of their past service to the

Corporation.  The U.S. Debtors strenuously object to the relief sought in the Motion and the

filing of these late claims against their estates, where the Motion—filed a week after the

unsuccessful end of the cross-border mediation regarding the allocation of the proceeds of

Nortel's[3] various asset sales and admittedly the brain child of certain employee-representatives

appointed in the Canadian Debtors' cases—seeks to improve Canadian creditor recoveries by

asserting claims against the U.S. Debtors' estates because "[i]t is widely anticipated that

recovery available for Canadian claims will be significantly less than payments made by the U.S.

Debtors  . . . ."  See Motion ¶ 29.

　　　　2.　　　The Motion fails to make any showing or aver the most basic allegations that

could support even consideration of the allowance of these severely untimely (and baseless)

claims.  Brought by a purported "Ad Hoc Committee of Canadian Employees Terminated Pre-

Petition," the Motion makes generalized arguments about the standards for filing late claims and

offers reasons that an individual could have failed to file a claim in the preceding four years.

However, excusable neglect is a factual inquiry that must be made with respect to individualized

---

[2]　　　The "Canadian Debtors" include the following entities:  Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.  The Canadian Debtors have commenced proceedings under the Companies' Creditors Arrangement Act (Canada) (the "CCAA," such proceedings collectively, the "Canadian Proceedings") before the Ontario Superior Court of Justice (the "Canadian Court").  Ernst & Young Inc. has been appointed as the Monitor in the Canadian Proceedings (the "Monitor").

[3]　　　As referenced herein, "Nortel" refers to the U.S. Debtors, the Canadian Debtors and their debtor and non-debtor affiliates.

claimants.  Here, the Motion fails to even allege that the various individuals did not <u>actually</u> know a bar date for claims against the U.S. Debtors had been established, where notice of the bar date was published in a Canadian newspaper and widely disclosed in Canadian pleadings and even acknowledged on the Canadian Monitor's website.  Similarly, while the Motion alleges the Movants have acted with good faith, statements in the Motion and the attached declaration of Michael Campbell suggest these potential claims (which the U.S. Debtors assert do not have any validity) may have been known to the Canadian Monitor and Koskie Minsky LLP ("<u>Koskie</u>"), counsel for the representatives of former Canadian Nortel employees—the instigators of this relief—for over a year or two, at least.  The Motion should be denied on its face for failing to even attempt to make the requisite showings necessary for a finding of excusable neglect.

        3.      The U.S. Debtors would be extraordinarily prejudiced if the Movants are permitted to file late claims against them.  Such relief could open the door to other creditors from Canada and other countries attempting to make similar claims and have the U.S. Debtors assume the effective role of guarantors of Nortel's worldwide creditors based on promises made by foreign debtor affiliates, not the U.S. Debtors.  Such concerns are particularly heightened where it appears that these claims have been raised and pursued by Koskie and the Canadian Monitor, and subsequently by U.S. counsel which solicited and formed an ad hoc committee, and not the individual former Canadian employees themselves.[4]

        4.      Accordingly, the sufficiency of the U.S. Debtors' prior notice of the Bar Dates should be reaffirmed and the Motion should be denied with prejudice.

---

[4]      Of note, even if these claims were not untimely by three years, they likely would fail on their face given that any promises and commitments were made by the Canadian Debtors, not the U.S. Debtors and upstream guaranties are largely disfavored and subject to challenge.  However, nothing in this Motion is intended to waive any claim a U.S. creditor may have against the Canadian Debtors based on similar contractual language, or any claims the Debtors would have—and would assert—against the Canadian Debtors if such claims were allowed to be filed in these cases.

## Facts Relevant to this Response

5.       On August 4, 2009, this Court entered an order (the "Bar Date Order")
establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last
date for all creditors holding a "claim" against the U.S. Debtors (other than Nortel Networks
(CALA) Inc. "NN CALA") to file and serve a written proof of claim, subject to certain
enumerated exceptions set forth in the Bar Date Order [D.I. 1280].  On December 3, 2009, the
Court entered an order (the "CALA Bar Date Order" and together with the General Bar Date
Order, the "Bar Date Orders") establishing January 25, 2010 at 4:00 p.m. (Eastern Time) as the
general claims bar date for all creditors holding a claim against NN CALA to file and serve
written proofs of claim [D.I. 2059] (the "CALA Bar Date" together with the General Bar Date,
the "Bar Dates").[5]

6.       Notice of the General Bar Date was published on the docket of this Court on
August 4, 2009.  See *Notice of Deadline Requiring Filing Of Proofs Of Claim On Or Before
September 30, 2009* [D.I. 1281] (the "General Bar Date Notice").  Notice of the CALA Bar Date
was published on the docket of this Court on December 4, 2009.  See *Notice Of Deadline For
The Filing Of Proofs Of Claim Against Nortel Networks (CALA) Inc. On Or Before January 25,
2010* [D.I. 2082] (the "CALA Bar Date Notice" and together with the General Bar Date Notice,
the "Bar Date Notices").  The General Bar Date Notice was served on all of the known creditors
of the U.S. Debtors (other than creditors of NN CALA).  See Affidavits of Service at D.I.s 1352,
1354 and 1580.  The CALA Bar Date Notice was served on all of the know creditors of NN
CALA.  See Affidavits of Service at D.I.s 2147 and 6284.  Both the General Bar Date Notice and

---

[5]      Pursuant to the authority set forth in the Bar Date Orders, the U.S. Debtors have established supplemental
bar dates from time to time.  Pursuant to separate motion, this Court also entered an order fixing November 15, 2011
at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim in respect of certain Non-Canadian
intercompany and director and officer claims [D.I. 6464].

the CALA Bar Date Notice were published in each of <u>The Globe and Mail</u> and the <u>Wall Street</u> <u>Journal</u> (national and global editions).  <u>See</u> Affidavits of Publication at D.I.s 1368 (Publication of the General Bar Date Notice in the <u>Globe and Mail</u>), 2153 (Publication of the CALA Bar Date Notice in the <u>Globe and Mail</u>), 1369 (Publication of the General Bar Date Notice in the <u>Wall Street Journal</u> and 2154 (Publication of the CALA Bar Date Notice in the <u>Wall Street Journal</u>).

7.    The General Bar Date Order was recognized by the Canadian Court in the U.S. Debtors' proceedings under Section 18.6 of the CCAA, Court File No.: 09-CL-7951 (the "<u>Section 18.6 Proceedings</u>").  <u>See</u> Order of the Canadian Court in the Section 18.6 Proceedings dated August 14, 2009.  Such recognition was on notice to Canadian parties in interest, including attorneys at Koskie, counsel for the representatives of former Canadian Nortel employees.  <u>See</u> the Affidavit of Service of Katie Legree in the Section 18.6 Proceedings dated August 11, 2009. The existence of the Bar Dates is noted in various publicly filed documents in the Canadian Proceedings.  <u>See, e.g.</u>, Motion Record of the Canadian Debtors in the Canadian Proceedings in connection with the motion returnable September 16, 2010, which motion sought approval of the Cross-Border Protocol on the Resolution of Claims (the "<u>Cross-Border Claims Protocol</u>").[6]  The Bar Dates also are acknowledged on the Monitor's website, which contains links to the website maintained by Epiq Bankruptcy Solutions, LLC, the U.S. Debtors' Claims, Noticing and Balloting Agent.  <u>See</u> http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1 (last visited February 7, 2013); and http://dm.epiq11.com/NNI/Project# (last visited February 7, 2013).

---

[6]    The Cross-Border Claims Protocol establishes procedures for the coordination and cooperation between the U.S. Debtors and the Canadian Debtors for the resolution of Overlapping and Same-Creditor Claims (as defined in the Cross-Border Claims Protocol) in the U.S. Debtors' chapter 11 cases (the "<u>Chapter 11 Cases</u>") and the Canadian Proceedings—essentially claims held by claimants who have asserted claims in both the Chapter 11 Cases and the Canadian Proceedings.  The Cross-Border Claims Protocol was approved by this Court in an order dated  September 16, 2010 [D.I. 3956] and by the Canadian Court in an order of the same date.

5

8.    On February 1, 2013, over three years after the Bar Dates, the Movants, who

are—by their own admission—all former employees of the Canadian Debtors, filed the Motion

seeking permission to file the Claims in the Chapter 11 Cases.[7]  Despite statements in the Motion

that none of the Movants received actual notice of the Bar Dates, a preliminary review of the

certificates of service filed with respect to the Bar Date Notices reveals that at least eight of the

Movants may have been served with actual notice of the applicable Bar Date.  Employees by the

names of Ernie Briard, Michael Campbell, Donald Ellis, David Hudson, Yvon Lemyre, Michael

McCorkle, William Sung and Mark Turner were all served with Bar Date Notices.  See D.I.s

1354, 1580 and 6284.  It also appears that Mr. Briard filed claim number 4713 in these Chapter

11 Cases.

### Objection to Allowance of Late Claims Filing

9.    Each of the Movants bears the burden to establish that their respective failures to

assert the Claims by the applicable Bar Dates was caused by "excusable neglect."   They quite

simply have failed to do so.

10.    Federal Rule of Bankruptcy Procedure 9006(b)(1)[8] governs the filing of proofs of

claim after the expiration of the applicable bar date, and requires a showing of "excusable

neglect" by the movant.  Bankruptcy Rule 9006(b)(1), provides:

> ". . .  when an act is required or allowed to be done at or within a
> specified period by these rules or by a notice given thereunder or
> by order of court, the court for cause shown may at any time in its
> discretion . . . (2) on motion made after the expiration of the
> specified period permit the act to be done where the failure to act
> was the result of excusable neglect. . . . ."

---

[7]    The U.S. Debtors note that, and have informed Movants' counsel that, the Motion was not timely filed for
the February 19, 2013 omnibus hearing.  Under Rule 9006-1(c) of the Local Rules of Bankruptcy Practice and
Procedure of the United States Bankruptcy Court for the District of Delaware, because the Motion was served by
first class mail, the Motion was required to be filed 21 days before the hearing, which it was not.   See Certificate of
Service attached to the Motion [D.I. 9362].

[8]    The Federal Rules of Bankruptcy Procedure will be referred to herein as the "Bankruptcy Rules."

Fed. R. Bankr. P. 9006(b)(1).  A claimant seeking relief from a bar date bears the burden of

establishing that their failure to timely assert a claim was the product of "excusable neglect."

See Jones v. Chemetron Corp., 212 F.3d 199, 205 (3d Cir. 2000); Hayes Lemmerz Int'l, Inc. v.

Emmons and Emmons (In re Hayes Lemmerz Int'l, Inc.), 2012 U.S. Dist. LEXIS 49517, Case

No. 11-143-SLR, at *6 (D. Del Apr. 9, 2012); In re Cable & Wireless USA, Inc., 338 B.R. 609,

613 (Bankr. D. Del. 2006).  Here, despite the formation of an ad hoc committee, each of the

Movants individually bears the burden to establish that the failure by such Movant to assert its

Claim prior to the applicable Bar Dates was the product of excusable neglect.

11.     When determining whether neglect is excusable for purposes of Bankruptcy Rule

9006(b)(1), courts examine factors including "the danger of prejudice to the debtor, the length of

the delay and its potential impact on judicial proceedings, the reason for the delay, including

whether it was within the reasonable control of the movant, and whether the movant acted in

good faith."  Manus Corp. v. NRG Energy Inc. (In re O'Brien Envtl. Energy Inc.), 188 F.3d 116,

125 (3rd. Cir. 1999) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380

(1993)); see also Netversant-Southern California, Inc. v. Johnson Controls, Inc. (In re Netversant

Solutions, Inc.), 426 B.R. 503, 509 (Bankr. D. Del. 2010).  Whether neglect is excusable is an

equitable determination that takes account of all of the relevant facts and circumstances.  See

O'Brien, 188 F.3d at 125.

12.     In this case, the Motion fails on its face to make allegations of any of the elements

of excusable neglect for any of the individual former Canadian employees.  Seeking such relief

under the guise of an ad hoc committee formed at the behest of Koskie and the Canadian

Monitor does not alleviate such burden; rather such claims should be given increased scrutiny

instead.

13.     As a primary matter, each of the Movants had adequate notice of the Bar Dates. At a minimum, each of the Movants received notice of the Bar Dates through publication of the Bar Date Notices in the <u>Globe and Mail</u> and the <u>Wall Street Journal</u>, which publication notices this Court authorized in the General Bar Date Order and the CALA Bar Date Order.  <u>See</u> Bar Date Order ¶ 15; CALA Bar Date Order ¶ 16.  The General Bar Date Order was recognized in the Section 18.6 Proceedings on notice to Koskie, which firm the Motion refers to as counsel to the Movants.  <u>See</u> Motion ¶ 9 (the "counsel" who reached out to the U.S. Debtors was Koskie). The establishment of the Bar Dates also was repeatedly disclosed in documents that were publicly filed in the Canadian Proceedings, and a link to the U.S. Debtors' Claims, Noticing and Balloting Agent's website, which website prominently discloses information about the Bar Dates, is provided on the Monitor's website.  Such notice is more than adequate under the circumstances.  While the Movants suggest the U.S. Debtors "should have known" about the existence of the termination letters that were drafted and sent by the Canadian parent—not the U.S. Debtors—prior to the creditor protection proceedings and therefore should have scheduled such claims in their bankruptcy cases, they offer no basis for such allegations.  In fact, such reasoning proves fatal to their Motion as the individual Canadian employees who actually received the letters should have known the terms of the letters and, if they truly believed they had claims against the U.S. Debtors, asked what they needed to do to preserve such claims.

14.     In fact, even if all of the multiple levels of constructive notice of the Bar Dates was not sufficient—which it is—the Motion fails as it does not allege that any of the individual former Canadian employees did not actually know about the Bar Dates when they were set or allege when each employee learned that the Bar Dates had been set.  In fact, as noted above, it

appears that some of the Movants received actual notice of the Bar Dates, and that at least one of them filed an unrelated claim against the U.S. Debtors.

15.     Movants' argument that the Bar Date Notices were somehow confusing to employees should be dismissed out of hand both because it is frivolous and because to conclude otherwise would severely prejudice the U.S. Debtors.  The Movants argue that the Bar Date Notices were confusing because they told claimants who hold claims against the Canadian Debtors to file such claims only in the Canadian Proceedings.  See Motion ¶¶ 6, 18.  The Movants appear to be arguing that claimants who potentially hold claims against both the U.S. Debtors and the Canadian Debtors somehow would have been confused into thinking they only would need to assert their claims in the Canadian Proceedings.[9]  Such an argument could only be made based on the most cursory and careless reading of the notices.

16.     First, the Bar Date Notices make extraordinarily clear that individuals who have claims against the U.S. Debtors must file proofs of claims prior to the Bar Dates or risk losing their claims.  The notices of the General Bar Date and the CALA Bar Date posted in the Globe and Mail, for example, each informed potential creditors that they must assert all claims that they hold against the U.S. Debtors "no matter how remote or contingent such [claims] may be" by the applicable Bar Date or be "forever barred and estopped" from doing so.  See D.I.s 1368, 2153.  In that context, it is not confusing to state that, if a claimant holds claims against the Canadian

---

[9]     The U.S. Debtors note that analogous language to the language complained of by the Movants appears in the bar date notices that were sent to general creditors of the Canadian Debtors.  See Order of the Canadian Court in the CCAA Proceedings dated July 30, 2009, Schedule A ("PLEASE NOTE that these procedures apply ONLY to claims filed against the Debtors in the CCAA proceedings.  Several of the Debtors' affiliates are subject to creditor protection proceedings in other jurisdictions, including in the United States.  Separate proceedings and deadlines have been or will be established in those cases for the filing of claims.  With respect to the U.S. proceedings, a general bar date of September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) has been established by the U.S. Court.  If you believe you have claims against the U.S. Debtors, any such claims must be filed in, and only in, the U.S. proceedings with the U.S. Debtors' claims agent.  A list of the U.S. Debtors and procedures for filing such claims in the U.S. Proceedings can be found by going to the following internet link: www.chapter11.epiqsystems.com/nortel.")

Debtors, those claims should not be filed in these cases.  In fact, the general claims bar dates

established in the Canadian Debtors' cases were established at the same time and in close

coordination with the U.S. Debtors, and contain the same instruction—in that case, creditors

were told that claims against the U.S. Debtors must be filed only in the U.S. Debtors' cases, not

the Canadian Debtors' cases.  The forms of the Bar Date Notices were approved by this Court,

and the Canadian Court approved the Canadian Debtors' notices.

17.     If the Court were now to accept the argument that these parallel and coordinated

notices were somehow confusing, notwithstanding their prior approval, such a ruling would

eviscerate the bar dates set in the U.S. Debtors' and the Canadian Debtors' cases for any

individual or company who had potential claims against both estates and prejudice the U.S.

Debtors by opening the floodgates to additional motions by creditors who received timely and

adequate notice of the Bar Dates and who, in hindsight, wish to revisit their decisions not to file

proofs of claim in these Chapter 11 Cases.  See, e.g., In re Keene Corp., 188 B.R. 903, 913

(Bankr. S.D.N.Y. 1995) (denying a request by a claimant to file a late claim for reasons

including that the Court did not see how it could deny similar requests by other claimants if such

request was granted); In re Hills Stores Co., 167 B.R. 348, 352 (Bankr. S.D.N.Y. 1994) (denying

a motion to have tardy ballots deemed timely received for reasons including that approval of

such motion could cause similarly situated creditors to file similar motions).  Such a reopening of

the U.S. Debtors' bar date process—particularly to allow creditors of their affiliated foreign

debtors to manufacture claims against the U.S. Debtors solely to improve their recoveries based

on their views of how the sale proceeds allocation dispute will be resolved—would greatly

prejudice the U.S. Debtors and the U.S. Debtors' other creditors, as would the burden of

responding to such additional motion practice.  See, e.g., Keene, 188 B.R. at 913.  Notably, the

Motion does not even state which U.S. Debtors the Movants propose to assert claims against. If they seek to file claims against a particular U.S. Debtor, they do not allege a basis to do so. If they seek to file claims against multiple U.S. Debtors, they would improve their recoveries not only compared to other Canadian creditors but also compared to the U.S. Debtors' own employees, many of whom only filed claims against one U.S. Debtor.[10] The Movants also do not schedule or otherwise quantify the dollar amount of the Claims that they seek to assert against the U.S. Debtors, which could be relevant to considering the prejudice that granting the Motion would cause to the U.S. Debtors and their creditors, including their own employees.

18.    While the Motion attempts to suggest that Koskie acted in good faith in seeking the assertion of these claims, the Motion raises serious questions whether this is the case. It is suggested that there was no undue delay in seeking permission to file these claims; however, as noted above, it is not clear from the Motion when each of the individual former Canadian employees learned of the Bar Dates. Rather than make such showings, the Motion buries such issues by seeking such relief on behalf of an "ad hoc committee" and making generalized arguments. Even in that posture, it is not clear how long ago such claims were identified or, more importantly, could have been identified. Mr. Campbell makes clear in his affidavit that he has been intently focused on reviewing and considering potential Canadian employee claims

---

[10]    Allowing these Canadian employees to assert claims against the U.S. Debtors would be particularly prejudicial to the U.S. Debtors where, to date, the Canadian Debtors and the Monitor have not recognized contractual commitments made by the Canadian Debtors to U.S. employees to be valid claims against the Canadian Debtors' estates. For example, prior to the commencement of the Chapter 11 Cases, the Canadian Debtors established and maintained the Nortel Networks Supplementary Executive Retirement Plan (the "SERP"), a non-qualified pension plan under which certain Canadian and U.S. Nortel employees were granted retirement benefits. Payments under the SERP were made by the Canadian Debtors, and the U.S. Debtors funded to the Canadian Debtors amounts required to be paid with respect to U.S. Nortel executives. Prior to the commencement of these Chapter 11 Cases, the U.S. Debtors funded approximately $45 million to the Canadian Debtors for the sole and non-discretionary purpose of making payments to U.S. employees under the SERP, which amount, to date, the Canadian Debtors and the Monitor have been unwilling to either distribute to the intended U.S. employee recipients or return to the U.S. Debtors. On information and belief, the Monitor has not acknowledged the validity of claims held by the U.S. executives under the SERP as valid claims against the Canadian Debtors' estates.

since 2009, that claims for severance for employees terminated pre-petition are "straightforward" and that the Monitor's initial review of Canadian employee claims was completed in 2011. Moreover, his affidavit states that counsel was consulted for advice regarding the viability of potential claims, but does not state whether he was advised that such claims were untimely and that delay is a factor in granting permission to file late claims.  Regardless of the answer to each of the above questions, the mere fact that such relief is now being sought at the behest of Koskie and the Monitor, who sought the formation of the Ad Hoc Committee to improve Canadian creditor recoveries, rather at the request of individual former Canadian employees, raises questions regarding whether these claims are being asserted in good faith at all.[11]

19.     Accordingly, the Motion should be denied outright and with prejudice.  To the extent the Motion is not facially denied, the filing of this Response creates a contested matter under Bankruptcy Rule 9014, entitling the U.S. Debtors to take discovery of the Movants, including under Bankruptcy Rule 9014(c).  See Fed. R. Bankr. P. 9014(c); see also In re Hayes Lemmerz Int'l, 2012 U.S. Dist. LEXIS 49517, *7 (reversing a Bankruptcy Court order permitting the late filing of administrative claims for reasons including that the Bankruptcy Court did not permit the debtors to take adequate discovery into the facts surrounding whether the claimant could show excusable neglect).  If necessary, the U.S. Debtors intend to take discovery from each of the individual former Canadian employees to uncover the facts relevant to the merits of the Motion, including the facts and circumstances surrounding their potential

---

[11]     The Motion's reference to Koskie's inquiry regarding a potential  tolling arrangement with respect to the Claims is irrelevant.  Without responding to the specifics of the conversations, which are incompletely and somewhat inaccurately described and during which the U.S. Debtors were given the runaround by the Monitor and Koskie, the U.S. Debtors note that—as the representative of former employees in the Canadian Proceedings— Koskie has never appeared in the U.S. Debtors' cases and did not suggest it had the power to bind individual creditors in the U.S. Debtors' cases.  See Order of the Canadian Court in the Canadian Proceedings dated June 30, 2009 (appointing Koskie as counsel for the Former Employees (as defined therein) for the purpose of issues affecting the Former Employees in the Canadian Proceedings).

claims, the factors that prompted the individuals' respective decisions not to file claims against the U.S. Debtors prior to the Bar Dates, the factors that prompted the Movant's respective decisions to attempt to file claims against the U.S. Debtors at this stage of the Chapter 11 Cases—including the extent to which the filing of the Motion was motivated by the Monitor and the Canadian Debtors and/or the larger failed mediation—and what connections, if any, each such Movants had with the U.S. Debtors.  The U.S. Debtors also would seek discovery regarding the facts set forth in the Campbell Affidavit, including Mr. Campbell's prior consideration of the existence of such claims, his conversations with the Monitor regarding the same, and his efforts, and the efforts of the members of the Ad Hoc Committee and their advisors, to form the Ad Hoc Committee and to seek the relief sought in the Motion.

### Conclusion

For the reasons set forth above, the U.S. Debtors respectfully request that the Court deny the Motion with prejudice, enter the proposed order attached hereto as Exhibit A and grant such other relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

13

Dated:  February 12, 2013
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the U.S. Debtors
and Debtors in Possession*