## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                          :

*In re*                          :       Chapter 11
                          :

Nortel Networks Inc., *et al.*,[1]     :       Case No. 09-10138 (KG)
                          :

                Debtors.       :       Jointly Administered
                          :

                          :       **Hearing date: March 5, 2013 at 10am  (ET)**
                          :       **Objections due: February 26, 2013 at 4pm (ET)**

-------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019
## APPROVING SETTLEMENT WITH THE TRAVELERS INDEMNITY COMPANY

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of

an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and

363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving that certain

Settlement Agreement dated as of January 28, 2013 (the "Settlement Agreement"), by and

among the Travelers Indemnity Company and its property casualty insurance affiliates[2]

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]      These affiliates include: Travelers Indemnity Company, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company, Travelers Casualty Company of Connecticut, Farmington Casualty Company, The Travelers Casualty and Surety Company of America, Standard Fire Insurance Company, The Charter Oak Fire Insurance Company, The Travelers Indemnity Company, The Travelers Insurance Company, The Phoenix Insurance Company, St. Paul Fire and Marine Insurance Company, The Travelers Indemnity Company of Connecticut, The Travelers Indemnity Company of America, Travelers Property Casualty Company of America, The Travelers Lloyds Insurance Company, Travelers Commercial Casualty Company.

(collectively, "Travelers"), the Debtors and certain of their Canadian affiliates[3] (collectively, the "Canadian Debtors"), attached hereto as **Exhibit B**; and granting the Debtors such other and further relief as the Court deems just and proper.  In further support of this Motion, the Debtors respectfully represent as follows:

<u>**Jurisdiction**</u>

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

<u>**Background**</u>

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[4] filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only.  The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "UCC") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

---

[3]      The Canadian Debtors are: Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

5.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and the Canadian Debtors commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7.      By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Settlement Agreement and granting the Debtors such other and further relief as the Court deems just and proper. Capitalized terms used but not defined herein shall have the meanings given to them in the Settlement Agreement.

---

[5]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

## Facts Relevant to the Motion

**A.      The Travelers Policies and Proof of Claim**

8.      As described more fully in both the *Debtors' Motion for Entry of an Order Authorizing, But Not Directing, Debtors to Pay Certain Prepetition (I) Wages, Salaries and Other Compensation, (II) Reimbursable Expenses, and (III) Medical Retirement and Similar Benefits* [D.I. 10] (the "Employee Wage Motion") and the *Debtors' Motion for Entry of an Order Authorizing the Debtors to (I) Continue Insurance Coverage Entered Into Prepetition, and (II) Enter Into New Insurance Policies* [D.I. 15] (the "Insurance Motion"), under the laws of the various states in which the Debtors operate or operated, the Debtors are required to maintain workers' compensation liability insurance and to provide employees with workers' compensation coverage for claims arising from or related to their employment with the Debtors.

9.      Travelers historically has issued certain workers' compensation and automobile liability insurance policies for NNI and certain of its affiliates (together, the "Insureds") for the periods from May 15, 1997 through August 2, 2010 (the "Policies").  The calculation and payment of premium and reimbursement obligations with respect to the Policies were prescribed under the premium agreements, endorsements, and related agreements entered into in connection with the Policies (the "Agreements", and together with the Policies, the "Insurance Program").

10.      For certain of the Policies, NNI was required to pay an initial premium amount and then make additional payments based on actual losses and expenses, subject to contractual limitations provided under the Agreements.  Nortel also provided Travelers with certain collateral to back its various financial obligations to Travelers under the Insurance Program, which collateral includes (i) Letter of Credit No. 1269/S16387 in the amount of $6,789,000 issued by Royal Bank of Canada (the "LC") at the request of NNI (and collateralized by NNL) as to which Travelers has drawn the full amount (the "LC Proceeds") pursuant to its rights under

4

the LC and the Insurance Program; and (ii) cash deposits provided by NNI in the amount of $181,303 (the "Cash Deposit").

11.    On or about September 29, 2009, Travelers filed a proof of claim asserting an unliquidated claim against NNI based on the Insurance Program, identified as Claim No. 5513 by NNI's claims agent (the "Proof of Claim"), including a priority claim for certain portions of the insurance coverage provided under the Insurance Program on and after the Petition Date.

**B.    Workers' Compensation Relief Granted in these Chapter 11 Cases**

12.    This Court already has granted the Debtors certain relief with respect to their insurance obligations, including specifically with respect to their workers' compensation obligations. In the *Order Authorizing, but Not Directing, Debtors to Pay Certain Prepetition (I) Wages, Salaries and Other Compensation, (II) Reimbursable Expenses, and (III) Medical Retirement and Similar Benefits* [D.I. 59] (the "Employee Wage Order"), entered on January 15, 2009, the Court authorized the Debtors to continue to pay, honor and process prepetition obligations with respect to the Employee Benefits, including their obligations with respect to their Workers' Compensation Policies, as both are defined in the Employee Wage Motion. Employee Wage Order at ¶ 8. Similarly, in the *Order Authorizing Debtors to (A) Pay Prepetition Premiums Necessary to Maintain Insurance Coverage and (B) Enter Into New Insurance Policies* [D.I. 51] (the "Insurance Order"), also entered on January 15, 2009, the Court authorized the Debtors to make any payments under or in respect of the Insurance Policies, which term includes their workers' compensation policies, to the extent the Debtors determine in their discretion that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment of coverage, benefits or proceeds provided under any of the Insurance Policies. Insurance Order at ¶ 5. Additionally, in the *Order Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 9019 Approving Settlement and*

*Loss Portfolio Transfer Agreement with Liberty Mutual Insurance Company* [D.I. 6098], entered on August 9, 2011, this Court approved a settlement and loss portfolio transfer agreement which permitted the Debtors to satisfy certain obligations related to the Debtors' workers' compensation policies with Liberty Mutual.

## C.      The Settlement Agreement[6]

13.      The Debtors have engaged in arms' length, good faith discussions with the Canadian Debtors and Travelers (collectively, the "Parties"), regarding the possibility of resolving all issues relating to the Insurance Policies, including the Proof of Claim.  As a result of such negotiation, the Parties agreed to and executed the Settlement Agreement, subject to Court approval.  An executed copy of the Settlement Agreement is attached as **Exhibit B** to this Motion.  The salient terms of the Settlement Agreement are as follows:

(a)      The Debtors and the Canadian Debtors agree to pay Travelers, and Travelers agrees to accept, $5,300,000 (the "Settlement Amount"), in full satisfaction of the Insureds' past, present and future financial obligations under the Insurance Program.  The Settlement Payment shall be deemed to have been satisfied from a portion of the LC Proceeds (which were collateralized by the Canadian Debtors) paid to Travelers in the amount of $5,300,000 (the "Nortel Payment").[7]

(b)      In exchange for the Nortel Payment, Travelers will withdraw with prejudice the Proof of Claim.

(c)      Travelers will grant the Debtors and the Canadian Debtors a broad release from Nortel's Obligations under the Insurance Program.

(d)      In exchange for withdrawing the Proof of Claim with prejudice, the Debtors and the Canadian Debtors will grant Travelers a broad release from any claims arising out of the Insurance Program in these chapter 11 cases and the Canadian Proceedings under any avoidance provisions of the Bankruptcy Code, the CCAA or analogous law.

---

[6]      The summary of the Settlement Agreement in this Motion is provided solely for the benefit of the Court and parties in interest.  To the extent that the summary and the terms of the Settlement Agreement are inconsistent, the terms of the Settlement Agreement shall control.

[7]      The remaining $1,489,000 in LC Proceeds will be remitted to NNL (which provided the collateral for the LC), and the full amount of the Cash Deposit will be returned to NNI.

## Relief Requested

14.     By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Settlement Agreement and granting the Debtors such other and further relief as the Court deems just and proper. Capitalized terms used but not defined herein shall have the meanings given to them in the Settlement Agreement.

## Basis for Relief

15.     The Debtors seek an order granting the relief sought in this Motion pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order … that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

16.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell, or lease the property of the estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363.  Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction.  Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996).

17.     The use or transfer of estate property under this provision must be supported by a sound business purpose.  Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).

A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward Holding Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071). In addition, a Debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in exchange. See In re Decora Industries, Inc., 2002 WL 32332749, at *2; In re Delaware & Hudson Ry. Co., 124 B.R. at 176.

       18.    Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

19.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

20.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

21.     The Debtors respectfully submit that the Settlement Agreement, and the settlement of various claims and obligations thereunder, meets each of the requirements under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, is of a sound business purpose and is in the best interests of the Debtors' estates and their creditors.

22.     As contemplated by section 363 of the Bankruptcy Code, the Settlement Agreement was negotiated and entered into by the Parties in good faith as a means by which the

Debtors can resolve all outstanding and potential issues relating to the Insurance Program, including the Proof of Claim, on a consensual basis.  The Debtors have determined that it is in their best interests to resolve any and all financial obligations, including costs and expenses, and the uncertainty associated with the Insurance Program by entering into the Settlement Agreement.  As described above, the Settlement Agreement eliminates all of the Debtors' past, present and future financial obligations associated with the Insurance Program from the Debtors to Travelers and will resolve Travelers' Proof of Claim against the Debtors in these chapter 11 proceedings.  The Debtors believe that the Settlement Amount is a reasonable amount to pay in exchange for relief from such obligations.  Moreover, because the Settlement Amount will be paid in full through a portion of the LC Proceeds, and the LC was collateralized entirely by the Canadian Debtors, and because the Settlement Agreement provided for the return to NNI of its full Cash Deposit, the Settlement Agreement results in no economic cost, and in fact, an economic benefit, to the Debtors.  For these reasons, the Debtors believe that entering into the Settlement Agreement represents the Debtors' sound business judgment and is in the best interests of the Debtors, their estates and their creditors.

## Notice

23.    Notice of the Motion has been given via hand delivery or first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to Travelers; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

24.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and

(iii) grant such other and further relief as it deems just and proper.

Dated:  February 12, 2013
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*