IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) Chapter 11 |
| Nortel Networks Inc., et al., | ) Case No. 09-10138 (KG) |
| Debtors. | ) (Jointly Administered) |

**JOINDER OF NORTEL AD HOC GROUP OF BONDHOLDERS TO
U.S. DEBTORS' OBJECTION TO MOTION FOR ENTRY OF AN
<u>ORDER ALLOWING LATE-FILED CLAIMS</u>**

The ad hoc group of bondholders (the "<u>Bondholder Group</u>")[1] joins the objection of the U.S. Debtors to the motion for entry of an order allowing late-filed claims [Docket No. 9412] (the "<u>Objection</u>")[2] and respectfully submits the following:

1. Three years after this Court entered an order establishing a deadline for creditors to file claims against the U.S. Debtors, an Ad Hoc Committee of Canadian Employees (the "<u>Canadian Committee</u>") has requested relief from that deadline to permit certain former Canadian employees to file claims against the U.S. Debtors.

2. In their Objection, the U.S. Debtors correctly note the many reasons why the Canadian Committee's request should be denied – among them the fact that, with its motion, the Canadian Committee is effectively asking the Court to ignore a 3-year old bar date in order to give Canadian creditors an opportunity to seek to impose liability on the U.S. Debtors for contractual obligations incurred by the Canadian Debtors to the Canadian Debtors' employees,

---

[1] The Bondholder Group consists of bondholders that hold claims issued or guaranteed by Nortel Networks Corporation ("<u>NNC</u>" and together with its affiliates worldwide, "<u>Nortel</u>"), Nortel Networks Limited ("<u>NNL</u>" and together with NNC and certain of their subsidiaries, "<u>Canadian Debtors</u>"), Nortel Networks Inc. ("<u>NNI</u>"), and Nortel Networks Capital Corporation ("<u>NNCC</u>" and together with NNI and certain of its subsidiaries, the "<u>U.S. Debtors</u>").

[2] Capitalized terms used but not otherwise defined herein shall of the meanings set forth in the Objection.

notwithstanding that the U.S. Debtors appear to have had no involvement in the Canadian employment relationship.

3. The U.S. Debtors also correctly note that, not coincidentally, the Canadian Committee's assertion that former Canadian employees have claims against the U.S. Debtors comes on the heels of the third and final failed mediation over the allocation of asset sale proceeds among the various Nortel estates. Now faced with the prospect of litigation to resolve the allocation dispute, the Canadian Committee apparently has come up with a strategy to try to create an "end run" around the results of the ultimate allocation outcome – specifically, by trying to flood the U.S. Debtors with claims as a way to "reverse engineer" a recovery for Canadian creditors beyond that to which they are legally entitled from their own estates.

4. The Canadian Committee's motivation is clear from its own statement that "[i]t is widely anticipated that recovery available for Canadian claims will be significantly less than payments made by the U.S. Debtors." Motion at ¶29. The Canadian Committee's focus on trying to compare relative creditor recoveries in the U.S. and Canada ignores the simple fact that Nortel's creditor body is not a single homogeneous group of similarly situated creditors, but rather is comprised of a variety of different types of creditors asserting different types of claims against sometimes different estates. Because different positions in the Nortel capital and/or organizational structure come with different legal rights and entitlements against different estates or sets of estates, any attempt to compare hypothetical potential recoveries of differently situated creditors, as the Canadian Committee does in its motion, is a meaningless smokescreen devoid of any legal significance.

5. Unfortunately, this "apples to oranges" approach appears to have taken root with certain Canadian creditor groups. In the wake of the failed mediation, there were

public statements by certain parties, as well as certain inaccurate media reports, that grossly mischaracterized: (a) the allocation dispute as one that pits former employees of the Canadian Debtors against bondholders; and (b) the cause of failure at the mediation to be the result of efforts of the bondholders to extract a greater recovery than the former employees. Those mischaracterizations completely ignore two simple facts.

6. First, the allocation of sale proceeds among the Nortel estates is not one that pits one group of creditors against another, nor is it one that will determine the ultimate recovery to any creditor group. Rather, allocation is an inter-estate question regarding the appropriate distribution of the proceeds of the asset sales among the U.S., Canadian and EMEA Nortel estates based upon the estates' respective entitlements to those proceeds. Once appropriately allocated among estates, those proceeds ultimately will translate into creditor recoveries out of any particular estate depending on estate-specific issues, such as what other assets an estate has (separate and apart from the allocated proceeds) and the magnitude and relative priorities of that particular estate's creditor claims pools.

7. Second, the suggestion that the allocation dispute pits former employees of the Canadian Debtors against bondholders ignores the simple facts that (i) as described above, the allocation dispute is limited solely to determining the portion of the sale proceeds due to each estate and is not dispositive of the recoveries to be received by any particular creditor, and (ii) the claims of former Canadian employees and the bondholders are *pari passu* unsecured claims in the Canadian estate. It is only because the bondholders also hold legally valid claims against the U.S. Debtors that their aggregate recovery may end up being greater.

8. Thus, the legal entitlement of the bondholders to a greater ***overall*** recovery from the Nortel estates results from the fact that the bondholders have claims against both the

Canadian and the U.S. estates, not from any effort by the bondholders to extract a disproportionate recovery from the Canadian estate, purportedly at the expense of the former Canadian employees.

9.      At bottom, the Canadian Committee's motion appears to be an attempt to manufacture a result based on a desire to "equalize" recoveries among creditors, notwithstanding the fact that those creditors sit in very different positions, with different legal rights and entitlements against different Nortel estates. Neither the Canadian Committee nor any other party in these cases should be permitted to so completely ignore the actual legal rights and entitlements of creditors of the Nortel estates.

10.     In light of the foregoing, the Bondholder Group joins the U.S. Debtors' request that the Motion be "denied outright and with prejudice." Objection at ¶19.

Dated: February 19, 2013

        **PACHULSKI STANG ZIEHL & JONES** LLP

        By: /s/ Kathleen P. Makowski

        Laura Davis Jones (Bar No. 2436)
        Kathleen P. Makowski (Bar No. 3648)
        919 North Market Street, 17th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705 (Courier 19801)
        Telephone: (302) 652-4100
        Facsimile: (302) 652-4400
        Email: ljones@pszjlaw.com
                kmakowski@pszjlaw.com

        -and-

        **MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY** LLP
        Dennis F. Dunne
        Thomas R. Kreller
        Albert A. Pisa
        1 Chase Manhattan Plaza
        New York, NY 10005
        Telephone: (212) 530-5000
        Facsimile: (212) 530-5219