Dear Honorable Judge Kevin Gross,

I wish to clarify that as far as the Nortel Long Term Disability Settlement Agreement Nortel I did not intend in any way to object to the Nortel Long Term Disability Settlement Agreement and was very pleased with the outcome of hearing and agree with the scheduling Nortel will be fulfilling their responsibility to Long Term Disability Participants. This should proceed as schedule.

- However my objection is that the successor should not be release from all liability forever remove until they have given contribution to their own (successor) Long Term Disability Settlement Agreement. As in my case and many others, the successor are the buyer of GSM and CDMA which is Telefonaktiebolaget LM Ericsson (Publ) ("Ericsson") without any settlement

- The Motion
- My Motion is this successor Telefonaktiebolaget LM Ericsson (Publ) Ericsson.inc would be order to pay contribution of 56 Million Dollars on their own Long Term Disability Settlement Agreement.
- That it would be further order that Telefonaktiebolaget LM Ericsson (Publ) Ericsson.inc on their own Long Term Disability Settlement Agreement. Kept completely separate in that there will be One Payment from the Nortel Long Term Disability Settlement Agreement.
- One Payment from the Telefonaktiebolaget LM Ericsson (Publ) Ericsson.inc on their own Long Term Disability Settlement Agreement.
- Telefonaktiebolaget LM Ericsson (Publ) Ericsson.inc on their own Long Term Disability Settlement Agreement Will Then be released from any and all liabilities of Long Term Disability Settlement Agreement

I wish in no way to stop the Nortel Long Term Disability Settlement Agreement Settlement agreement between the LTD employees but wish to make clear that it is stated. Successor will be released from any and all liabilities.

Justification of my Objection and Motion

Einhorn v. M.L. Ruberton Construction Co., No. 09-4204. 1982)

On appeal, the Third Circuit held that the District Court had applied the wrong standard for determine whether successor liability attaches the appropriate standard to apply under ERISA in the context of an asset sale, the Court of Appeals explained, is that a purchaser of assets may be held liable "where the buyer had notice of the liability prior to the sale and there exists sufficient evidence of continuity between the buyer and the seller."

In reaching this decision, the Court began its analysis by noting that, since decisions that pre-date ERISA, the federal courts have "developed a federal common law successor ship doctrine imposing liability upon successors beyond the confines of the common law rule when necessary to protect important employment-related policies.

No one can argue that SUCCESSOR ERICSSON. INC. and TELEFONAKTIEBOLAGET LM ERICSSON (PUBL) did not know about Long Term Disability Liability Asset Sale
Which occur on Page 6   in Long Term Disability Settlement Agreement point 4?
Which occur on Page 7   in Long Term Disability Settlement Agreement Point 7?
Which occur on Page 11 in Long Term Disability Settlement Agreement Point10a?
Which occur on Page 14 in Long Term Disability Settlement Agreement Point Releases.v vi
Which occur on Page 18 in Long Term Disability Settlement Agreement point 26?

This occur on 5 Pages where the successors are released from Liability which without doubt Successors attempting to avoid successors Liability.  They are aware that they do have liability to Long Term Disability Settlement Agreement//
agreement spent 3 pages attempting to excuse themselves from this liability Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac,
In light of these policy considerations, the Third Circuit in Einhorn extended the availability of successor liability to multiemployer plan contributions in the context of assets sales, noting that it need not "reinvent the wheel" but could simply follow the approach SLOVITER, Circuit Judge. This appeal asks us to consider the circumstances in
which a purchaser of assets bears liability for delinquent employee benefit fund contributions under the Employee Retirement Income Security Act ("ERISA") as a successor in interest to the seller of those assets. Appellant William J. Einhorn, on behalf of employee benefit funds established pursuant to ERISA, brought suit to recover unpaid contributions from Appellee M.L. Ruberton Construction Company. According to Einhorn, Ruberton was obligated to contribute to the benefit funds under two collective bargaining agreements as a successor employer
taken by the Seventh Circuit in Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323 (7th Cir. 1990). There the Seventh Circuit concluded liability could be imposed after an asset sale where there was sufficient continuity of operations, and the successor employer had notice of the liability. The Third Circuit further noted that the First, Second, and Ninth Circuits had reached a similar conclusion, along with a number of district courts. Id. at *24-26.

ERICSSON. INC. and TELEFONAKTIEBOLAGET LM ERICSSON (PUBL) are IN Dallas

working out of the same building on the equipment same customer completing and performing the same task Nortel was doing till day of sale. And after the sale.

The Court further explained that this approach differed slightly but was not inconsistent with its earlier decision in Teamsters Pension Trust Fund of Philadelphia & Vicinity v. Littlejohn, 155 F.3d 206 (3d Cir. 1998), in which the Court applied the common law rule permitting imposition of successor liability in the case of a corporate merger, even where the successor did not have notice of the liability. The Court explained that, contrary to the context of a merger, a successor in the context of an asset sale "would have an incentive to inquire about the seller's previous liabilities to negotiate for a lower purchase price." Id. at *22. In the situation of an asset sale, the Court concluded, the equities would be best balanced by imposing successor liability, but only where the successor had notice of the liability. Upon establishing the appropriate standard, the Court of Appeals set forth the following factors to consider, among in reaching this decision, the Court began its analysis by noting that, since decisions that pre-date ERISA, the federal courts have "developed a federal common law successor ship doctrine imposing liability upon successors beyond the confines of the common law rule when necessary to protect important employment-related policies." Id. at *11 Upon establishing the appropriate standard, the Court of Appeals set forth the following factors to consider, among others, when conducting the continuity analysis: "continuity of the workforce, management, equipment and location; completion of work orders begun by the predecessor; and constancy of customers." Id. at *27 (citing Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1987)). Additionally, the Court noted that "commonality of ownership is not required." Id. at *28. Recognizing that the determination regarding whether a successor substantially continued a predecessor's operations is a factual matter (and noting that the parties had agreed that Ruberton had notice of the liability),

the Court of Appeals remanded the case to the District Court to make this determination. Third Circuit said that courts look to, among other things, (1) continuity of the workforce, (2) Management, equipment and location, (3) completion of work orders begun by the predecessor, And constancy of Customers.

Outside of the ERISA and labor context, the general common-law rule provides that an entity That purchases the assets of another does not assume the seller's liabilities unless

(1) The purchaser expressly or impliedly assumed the liability,

(2) The transaction amounts to an effective merger,

(3) The purchasing corporation is the mere continuation of the seller and

(4) the transfer of assets was for the fraudulent purpose of escaping liability for the seller's unpaid debts. Beginning with the U.S. Supreme Court decision in Golden State Bottling Co. Inc. v. NLRB,5 federal courts have developed a federal-successor ship doctrine that altered the common-law rule to impose liability on successors when necessary to protect and vindicate Employment-related policies. The U.S. Court of Appeals for the Seventh Circuit later expanded on the Supreme Court's vision of protecting federal labor interests in the seminal Artistic Furniture case where the court held that a purchaser of assets may be liable for the seller's delinquent contributions to a pension fund if the buyer had notice of the liability prior the sale and there was sufficient evidence of "continuity of operations" between the entities

**Conclusion:**

The U.S. Supreme Court decision in Golden State Bottling Co. Inc. v. NLRB,5 federal courts have developed a federal-successor ship doctrine that altered the common-law rule to impose liability on successors when necessary to protect and vindicate employment-related policies. Nortel Network Long Term Disability is an employment-related policies The U.S. Court of Appeals for the Seventh Circuit later expanded on the Supreme

Court's vision of protecting federal labor interests in the seminal Artistic Furniture case where the court held that a purchaser of assets may be liable for the seller's delinquent contributions to a pension fund if the buyer had notice of the liability prior the sale and there was sufficient evidence of "continuity of operations" between the entities/

Nortel Network Long Term Disability is an employment-related policies is an employment-related policies that directly connected to a federal-successor ship doctrine that altered the common-law rule to impose liability on successors when necessary to protect and vindicate employment-related policies. Supreme Court's vision of protecting federal labor interests. That The U.S. Court of Appeals for the Seventh Circuit later expanded on and it

Nortel Network Long Term Disability is an employment-related policies is an employment-related policies that directly connected Supreme Court's vision of protecting federal labor interests.

**Prayer to The Court:** I Stephen Paroski Prayer to the Court That the Court Will issue an Order That Successor Ericsson. Inc. And Telefonaktiebolaget Lm Ericsson (Publ) Purchasers of Cdma and Gsm Division Of Nortel Network). Contribute 56 Million In Addition To Nortel Offer Of 28 Million To Long-Term Disability Settlement Agreement. This Would Be a Total Of 84 Million Dollars Long-Term Disability Settlement Agreement

**Stephen Ray Paroski is an inactive Employee of Nortel Network Gsm Division**

Respectfully submitted by    Cynthia Ann Paroski for Stephen Ray Paroski

333 EL Rio Drive        sparkyray@TX.RR.com
Mesquite, Texas 75150
Phone: 214 264 9953