# **EXHIBIT B**

## Schedule "A"

## ALLOCATION PROTOCOL

1. Purpose.  The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors[1] ("Allocation", and any hearing regarding same, an "~~"~~Allocation Protocol Hearing,~~"~~" and any discovery regarding same, "~~"~~Allocation Protocol Discovery~~"~~").  Subject to paragraph 5 hereof, creditor claims, including but not limited to intercompany claims by and between any Nortel entities, their representatives or successors ("~~"~~Intercompany Claims") are not governed by this Allocation Protocol.  All Intercompany Claims between the U.S. Debtors and Canadian Debtors shall be determined in accordance with the Cross-Border Protocol and the Cross-Border Claims Protocol.  All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made.

2. Participants.  ~~Each of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators and the CCC (collectively, the "Core Parties," and each individually, a "Core Party") and their authorized representatives~~The "Core Parties" shall be defined as those parties who are conferred rights under Section 12 of the IFSA and such additional parties as may be determined by the Courts.  The Core Parties shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith.  The foregoing is without prejudice to (x) the right of any other party in interest to file written submissions in support of or in opposition to any theory of allocation advanced at any Allocation Protocol Hearing before the U.S. and Canadian Courts or request permission to become a Core Party and fully participate in the foregoing, which request shall be made by motion on notice to the Core Parties for cause shown to both the U.S. and Canadian Courts, or (y) the power of the U.S. and Canadian Courts to adopt procedures to manage the Allocation Protocol Hearings and related proceedings.

3. Cross-Border Protocol.  Any and all Allocation Protocol Hearings shall proceed in accordance with the Cross-Border Protocol, unless otherwise ordered by the U.S. and Canadian Courts.

4. Procedures.  The U.S. and Canadian Courts will determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery. After hearing the procedural submissions of the Core Parties and taking into account the discovery already conducted to date in connection with the non-binding mediation sessions, the Allocation Protocol Discovery and Allocation Protocol Hearings shall proceed in an expeditious manner.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in ●.

[NEWYORK 2695395_1]

- 2 -

a. <u>Pleadings</u>.  The Core Parties will exchange pleadings, which they shall be entitled to amend, from time to time, in accordance with the usual practice of the U.S. and Canadian Courts.  There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation.

b. <u>Fact Discovery</u>.  The U.S. and Canadian Courts will facilitate the Core Parties' exchange of fact discovery by determining the following:

   i. the deadline for, and acceptable manners of service of, reasonable requests for the production of non-privileged documents on any other Core Party;

   ii. the deadline for objections to any Core Party's document requests;

   iii. the deadline for identification of fact witnesses and number of fact witnesses allowed;

   iv. the process for compelling attendance of fact witnesses at depositions; and

   v. the deadline for completion of depositions, the number of depositions permitted, and the location of and time allowed for such depositions for each Core Party.

c. <u>Experts</u>.  The U.S. and Canadian Courts shall facilitate expert discovery by determining the following:

   i. the deadline for and format of expert reports (including exhibits);

   ii. the deadline for and format of rebuttal expert reports (including exhibits); and

   iii. the deadline for completion of expert depositions and the time allowed for such expert deposition.

d. <u>Joint Conferences</u>.  The U.S. and Canadian Courts shall be available for joint conferences to resolve any discovery disputes among the Core Parties and to receive updates as to the status of the proceedings.  The U.S. and Canadian courts will determine when joint conferences may be set.

e. <u>Joint Hearings</u>.  The U.S. and Canadian Courts shall have joint hearings on the merits.  The U.S. and Canadian Courts shall determine:

   i. ~~the date(s) for an opening hearing on the Core Parties' allocation positions (prior to factual discovery) and on the rules governing the joint hearing on the merits;~~

   <u>i.</u> ~~ii.~~ the date(s) for an evidentiary hearing on the merits (after the close of fact and expert discovery and after the completion of written

- 3 -

    submissions) and the rules governing such hearing, during which opening and closing statements shall be made and cross-examination and redirect examination of fact and expert witnesses shall take place; and

   ii. ~~iii.~~ the procedure for requesting or setting joint conferences as necessary to resolve any discovery disputes among the Core Parties or to receive updates to the status of the proceedings.

  f. <u>Written Submissions</u>. The U.S. and Canadian Courts will determine:

   i. the deadline for and format of opening submissions (including exhibits);

   ii. the deadline for and format of fact affidavits, if any, to accompany the opening submissions, which shall constitute the direct testimony of each fact witness;

   iii. the deadline for and format of reply submissions (including exhibits); and

   iv. the deadline for and format of fact affidavits, if any, to accompany the reply submissions.

5. <u>EMEA Claims</u>. Certain Intercompany Claims have been made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor against (a) the U.S. Debtors (the "<u>EMEA U.S. Claims</u>") and (b) the Canadian Debtors (the "<u>EMEA Canadian Claims</u>" (and together with the EMEA U.S. Claims, the "<u>EMEA Claims</u>")). The ~~U.S. Debtors intend to file promptly motions with the U.S. Court to dismiss the EMEA U.S. Claims. The Canadian Debtors may file motions with the Canadian Court to dismiss the EMEA Canadian Claims.~~ remaining EMEA U.S. Claims will be resolved in the U.S. Court and the Canadian EMEA Claims will be resolved in the Canadian Court.

6. <u>Decisions</u>. The U.S. and Canadian Courts will ~~(a)~~ hold simultaneously ~~(i)~~ the Allocation Protocol Hearings, ~~(ii) hearings before the U.S. Court on the merits of any remaining EMEA U.S. Claims, and (iii) hearings before the Canadian Court on the merits of any remaining EMEA Canadian Claim, provided, however, that the U.S. and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only EMEA US Claims or only EMEA Canadian Claims, and (b)~~ and subsequently issue their respective decisions ~~on (i), (ii) and (iii).~~ .

6. <u>Appeals</u>. The Core Parties shall have their usual rights and limitations of appeal from all interlocutory and final decisions of the U.S. and Canadian Courts.