**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS INC., et al., | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hearing date: March 7, 2013 at 10:00 a.m. |
| | ) | |
| | ) | Re: D.I. 5307, 5308, 5531,  5444, 5532, |
| | ) | 5440, 5448, 5529, 5536, 5571, 5572, 5573, |
| | ) | 5575, 5608, 5643, 5752, 9428 |

**STATEMENT OF THE BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE,
PURSUANT TO THE REVISED SCHEDULING ORDER FOR ALLOCATION ISSUES**

The Bank of New York Mellon, as indenture trustee (in such capacity, "BNY"), hereby

files this Statement pursuant to this Court's February 14, 2013 *Revised Scheduling Order for*

*Allocation Issues* [Docket No. 9428].

BNY is a member of the Official Committee of Unsecured Creditors in these chapter 11

cases (the "Creditors' Committee") and currently serves as the indenture trustee with respect to

the following indentures:

a.      BNY is the indenture trustee with respect to a certain Indenture, dated as of July
5, 2006, between Nortel Networks Limited ("NNL") (a Canadian debtor) as
issuer, Nortel Networks Corporation ("NNC") (a Canadian debtor) and Nortel
Networks Inc. ("NNI") (a U.S. debtor) as guarantors, and BNY as indenture
trustee.  The following notes were issued under that indenture, as may have been
amended, modified or supplemented:

- the London Interbank Offered Rate (LIBOR) + 4.250% Floating Rate
  Notes due 2011 in the original principal amount of $1,000,000,000;

- the 10.125% Fixed Rate Notes due 2013 in the original principal amount
  of $550,000,000 and

- the 10.75% Fixed Rate Notes due 2016 in the original principal amount of
  $1,125,000,000.

b.    BNY is the indenture trustee with respect to a certain Indenture, dated as of March 28, 2007, between NNC as issuer, NNL and NNI as guarantors, and BNY as indenture trustee.  The following notes have been issued under that indenture, as may have been amended, modified or supplemented:

- the 1.75% Convertible Senior Notes due 2012 in the original principal amount of $575,000,000; and

- the 2.125% Convertible Senior Notes due 2014 in the original principal amount of $575,000,000.

The aggregate principal amount outstanding under the foregoing notes approaches $4 billion, and BNY has also asserted claims for interest and other amounts due and unpaid under such notes.  Importantly, the holders of all of these issues of notes hold claims against Nortel estates in both the United States (*i.e.*, NNI) and Canada (*i.e.*, NNC and NNL).  Thus, these noteholders are in the unique position of holding very substantial undisputed claims against estates in both the United States and Canada.  The magnitude of their claims makes the noteholders the largest creditors against those U.S. and Canadian estates.

Like the above-captioned U.S. debtors (collectively, the "U.S. Debtors") and the Creditors' Committee, BNY believes that this Court and the Superior Court of Justice (the "Canadian Court") have the authority to (and should) resolve the allocation dispute, rather than an arbitrator or an arbitration panel.  So long as BNY has the right to participate fully in the process relating to such adjudication, BNY would support the adoption of an allocation protocol similar to the one described in the *Reply Memorandum of U.S. Debtors and Committee in Further Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, and in Response to the EMEA Debtors' Cross-Motion to Compel Arbitration*, filed on June 2, 2011 [Docket No. 5571] (the "Reply").

BNY notes that it is not specified in the Reply as a party that would have standing to participate in the litigation.  Specifically, Section 2 of the proposed allocation protocol annexed as Exhibit A to the Reply provides that only certain "Core Parties," being each of the Selling Debtors, the Creditors' Committee, the Bondholder Group, the Monitor, the Joint Administrators and the CCC, and their authorized representatives "shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith."

Section 2 of that proposed protocol further provides that it is without prejudice to the right of any other party in interest to "request permission to become a Core Party and fully participate in the foregoing."  BNY hereby requests to become a Core Party, should the protocol proposed by the U.S. Debtors and the Creditors' Committee (or something similar) be adopted.

Section 1109(b) of the Bankruptcy Code provides BNY the statutory right to raise, and to appear and be heard on, any issue in these chapter 11 cases.  Section 1109(b) of the Bankruptcy Code provides:

> "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, *or any indenture trustee*, may raise and may appear and be heard on any issue in a case under this chapter."

11 U.S.C. § 1109(b) (emphasis added).

As the indenture trustee that has duties to *all* noteholders (not only those noteholders that choose to participate in these bankruptcy proceedings), BNY is uniquely situated in these cases, and must be permitted to fully participate and be heard in all hearings and/or other proceedings, and to participate in discovery.  Indeed, the Bankruptcy Code specifically provides BNY this right.  BNY also participated in the recent mediation before The Honorable Justice Warren K.

3

Winkler, which included in-person participation in the mediation session that took place in Toronto in January 2013.

For these reasons, BNY requests that any orders determining the procedure for the resolution of the allocation dispute specifically provide that BNY as indenture trustee shall have standing to fully participate in and submit written statements, present oral arguments and otherwise directly participate in all hearings and/or other proceedings arising under or relating to the allocation issue, including without limitation participating in discovery, depositions and examinations.

Dated:  March 4, 2013

**LATHAM & WATKINS LLP**

By:  */s/ Michael J. Riela*
    Michael J. Riela
    885 Third Avenue, Suite 1000
    New York, New York  10022
    Telephone:  (212) 906-1200
    Facsimile:  (212) 751-4864

*Attorneys for The Bank of New York Mellon, as Indenture Trustee*