**<u>EXHIBIT A</u>**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION and NORTEL NETWORKS
TECHNOLOGY CORPORATION**

**SUPPLEMENTARY SUBMISSIONS OF THE MONITOR
AND THE CANADIAN DEBTORS
IN RESPECT OF THE JUNE 7, 2011 HEARING
(Returnable March 7, 2013)**

March 4, 2013

| | |
|---|---|
| **Goodmans LLP** | **Gowling Lafleur Henderson LLP** |
| Barristers & Solicitors | Barristers & Solicitors |
| Bay Adelaide Centre | 1 First Canadian Place |
| 333 Bay Street, Suite 3400 | 100 King Street West, Suite 1600 |
| Toronto, ON  M5H 2S7 | Toronto, ON  M5X 1G5 |
| | |
| **Benjamin Zarnett** LSUC#: 17247M | **Derrick Tay** LSUC#: 21152A |
| **Jay Carfagnini** LSUC#: 22293T | **Jennifer Stam** LSUC#: 46735J |
| **Fred Myers**  LSUC#: 26301A | |
| **Joseph Pasquariello** LSUC# 37389C | |
| | |
| Tel:   416.979.2211 | Tel:  416-862-5697 |
| Fax:   416.979.1234 | Fax:  416-862-7661 |
| | |
| Lawyers for the Monitor, | Lawyers for the Canadian Debtors |
| Ernst & Young Inc. | |

2

TO:          **THE SERVICE LIST**

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION**

**SUPPLEMENTARY SUBMISSIONS OF THE MONITOR AND THE CANADIAN DEBTORS IN RESPECT OF THE JUNE 7, 2011 HEARING (Returnable March 7, 2013)**

## PART I - BACKGROUND

1.       On April 25, 2011, the U.S. Debtors, being Nortel Networks Inc. ("NNI") and certain of

its U.S. affiliates including Nortel Networks (CALA) Inc., and the official committee of

unsecured creditors in the chapter 11 proceedings (the "Committee") filed a motion

seeking to approve a form of allocation protocol (the "Original U.S. Protocol") pursuant

to which this Court and the U.S. Bankruptcy Court for the District of Delaware (the "U.S.

Court" and together with this Court, the "Courts") would make decisions on the

allocation of certain sale proceeds.  A hearing in respect of the Original U.S. Protocol

never took place.  Instead, prior to the return of the subject motion, the Canadian Debtors,

being Nortel Networks Corporation (collectively with all its subsidiaries, "Nortel"),

Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks

International Corporation and Nortel Networks Global Corporation, and Ernst & Young

Inc. in its capacity as Monitor (the "Monitor") worked with and reached agreement with

the U.S. Debtors, the Committee and the Ad Hoc Committee of Major Creditors Having

Claims Only Against the Canadian Debtors (the "CCC") on an amended form of

allocation protocol (the "Canada-U.S. Protocol") which they each would ask the Courts

to approve; such approval of the Canada-U.S. Protocol was sought at the June 7, 2011

joint hearing of the Courts.   A cross-motion of the Joint Administrators of Nortel

Networks UK Limited et al. was heard that same day (collectively, the "June 7

Motions").

2.      Decisions by the respective Courts regarding the June 7 Motions were reserved and

parties were ordered by the Courts to mediation.  Those latest mediation efforts ended

unsuccessfully on January 24, 2013.

3.      By letter to the service list in these proceedings dated February 13, 2013, the Honourable

Mr. Justice Morawetz advised the parties that on March 7, 2013, the Courts would hear

summary submissions from the parties in respect of the June 7 Motions and that parties

who wished to file supplementary submissions may do so provided same are filed no later

than March 4, 2013.

4.      This constitutes the supplementary submissions of the Monitor and the Canadian Debtors.

**PART II - ADDITIONAL FACTS**

5.      It is important to note that, since the June 7 Motions, the sale proceeds that are being held

and would be dealt with under the Canada-U.S. Protocol have grown from approximately

US$3 billion (at the time of the June 7 Motions) to total approximately US$7.3 billion as

a result of the sale of Nortel's patent portfolio.  The patent sale, which was approved by

the Courts by Orders dated July 4, 2011, generated an additional US$4.5 billion of gross sale proceeds.

6.       In connection with the closing of the patent sale transaction, the Nortel parties entered into an escrow agreement on substantially the same terms as the prior sale proceeds escrow agreements relating to the sale of Nortel's business units[1].

## PART III - SUMMARY OF POSITION[2]

7.       As substantially all of Nortel's material assets have been realized on, the allocation of the proceeds and the determination of the inextricably-linked EMEA Claims and the U.K. Pension Claims are matters that must be resolved before any creditor of a Canadian Debtor (and likely any other Nortel debtor) can expect to receive a meaningful distribution.

8.       It is common ground that the EMEA Debtors' claims and allocation arguments are based on the same facts, issues and legal principles[3].  It is clear that the procedure for resolving the allocation of proceeds must and should be coordinated with the procedure for resolving the EMEA Claims and the U.K. Pension Claims as a result of the EMEA Debtors and their creditors comingling allocation theories with these claims.   In particular, such claims and the allocation of sale proceeds must be decided by the same decision maker(s) in order to avoid a multiplicity of proceedings, different forums, the

---

[1]    The parties agreed, in effect, that entering into certain patent sale transaction documents, including an escrow agreement, prior to the release of the Courts' decisions in respect of the June 7 Motions was to be without prejudice to arguments in respect of the June 7 Motions.

[2]    Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Sixty-Seventh Report of the Monitor dated June 2, 2011 ("Monitor's 67th Report").

[3]    See Paragraphs 19 and 20 of the Affidavit of John Whiteoak sworn January 12, 2011, being Exhibit HH to Kevin Lloyd's Declaration made May 19, 2011.

4

risk of inconsistent results, doubling (or tripling) up of claims, and additional cost and delay.  Moreover, the determination of the EMEA Claims and the U.K. Pension Claims falls within the exclusive jurisdictions of this Court and the U.S. Court in relation to claims against the Canadian Debtors and U.S. Debtors, respectively.  Thus determining allocation and the EMEA Claims and the U.K. Pension Claims should be dealt with simultaneously by this Court and the U.S. Court.  The parties have not agreed to arbitrate any such matters and, in fact, have agreed to and have already attorned to the exclusive jurisdictions of this Court and the U.S. Court.

9.      The Canada-U.S. Protocol that was filed in respect of the June 7 Motions was a heavily negotiated document among the U.S. Debtors, Canadian Debtors and various of the stakeholder groups.  The Canadian Debtors and the Monitor  remain of the view that the Canada-U.S. Protocol put before the Courts for approval by the Canadian Debtors, the U.S. Debtors and the Committee, and supported by the CCC, achieves the proper objectives of these CCAA proceedings and is fair to all parties.

## PART IV - ORDER REQUESTED

10.     The Canadian Debtors and the Monitor recommend that this Honourable Court approve the Canada-U.S. Protocol and grant the Allocation Protocol Order in the form submitted by the Canadian Debtors.  In the event that this Court and the U.S. Court approve the Canada-U.S. Protocol, it is the view of the Canadian Debtors and the Monitor that the Courts would benefit from further submissions by the parties prior to making rulings or determinations in respect of discovery.

5

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 4th day of March, 2013.

| | |
|---|---|
| **Goodmans LLP** | **Gowling Lafleur Henderson LLP** |
| Barristers & Solicitors | Barristers & Solicitors |
| Bay Adelaide Centre | 1 First Canadian Place |
| 333 Bay Street, Suite 3400 | 100 King Street West, Suite 1600 |
| Toronto, ON  M5H 2S7 | Toronto, ON  M5X 1G5 |
| | |
| **Benjamin Zarnett** LSUC#: 17247M | **Derrick Tay** LSUC#: 21152A |
| **Jay Carfagnini** LSUC#: 22293T | **Jennifer Stam** LSUC#: 46735J |
| **Fred Myers** LSUC#: 26301A | |
| **Joseph Pasquariello** LSUC#: 37389C | |
| | |
| Tel:  416-979-2211 | Tel:  416-862-5697 |
| Fax:  416-979-1234 | Fax:  416-862-7661 |
| | |
| Lawyers for the Monitor, Ernst & Young Inc | Lawyers for the Canadian Debtors |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

Court File No. 09-CL-7950

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

Proceeding Commenced At Toronto

---

**SUPPLEMENTARY SUBMISSIONS OF THE MONITOR
AND THE CANADIAN DEBTORS
IN RESPECT OF THE JUNE 7, 2011 HEARING**
**(Returnable March 7, 2013)**

---

| | |
|---|---|
| **Goodmans LLP** | **Gowling Lafleur Henderson LLP** |
| Barristers & Solicitors | Barristers & Solicitors |
| Bay Adelaide Centre | 1 First Canadian Place |
| 333 Bay Street, Suite 3400 | 100 King Street West, Suite 1600 |
| Toronto, ON  M5H 2S7 | Toronto, ON  M5X 1G5 |
| | |
| **Benjamin Zarnett** LSUC#: 17247M | **Derrick Tay** LSUC#: 21152A |
| **Jay Carfagnini** LSUC#: 22293T | **Jennifer Stam** LSUC#: 46735J |
| **Fred Myers**  LSUC#: 26301A | |
| **Joseph Pasquariello** LSUC# 37389C | |
| | |
| Tel:    416.979.2211 | Tel:  416-862-5697 |
| Fax:    416.979.1234 | Fax:  416-862-7661 |
| | |
| Lawyers for the Monitor, | Lawyers for the Canadian Debtors |
| Ernst & Young Inc. | |