```
                 IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE


IN RE:                          )    Case No. 09-10138(KG)
                                )    (Jointly Administered)
NORTEL NETWORKS, INC.,          )
     et al.,                    )    Chapter 11

                                )    Courtroom 3
                                )    824 Market Street
           Debtors.             )    Wilmington, Delaware
                                )
                                )    March 7, 2013
                                )    10:00 a.m.

                     TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JUDGE KEVIN GROSS
                 UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:
For Debtors:              Morris Nichols Arsht & Tunnell, LLP
                          BY: DEREK ABBOTT, ESQ.
                          BY: ANN CORDO, ESQ.
                          1201 North Market St., 18th Floor
                          Wilmington, DE  19899-1347
                          (302) 351-9357

                          Cleary Gottlieb Steen & Hamilton
                          BY: LISA SCHWEITZER, ESQ.
                          BY: HOWARD ZELBO, ESQ.
                          BY: JAMES BROMLEY, ESQ.
                          One Liberty Plaza
                          New York, NY  10006
                          (212) 225-2000


ECRO:                     GINGER MACE

Transcription Service:    DIAZ DATA SERVICES, LLC
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

For the Creditors'          Richards Layton & Finger
Committee:                  BY: CHRIS SAMIS, ESQ.
                            One Rodney Square
                            920 North King Street
                            Wilmington, DE  19801
                            (302) 651-7531

                            Akin Gump Strauss Hauer & Feld
                            BY: DAVID BOTTER, ESQ.
                            BY: ABID QURESHI, ESQ.
                            BY: FRED HODARA, ESQ.
                            One Bryant Park
                            New York, NY  10035
                            (212) 872-1000

For the EMEA                Young Conaway Stargatt & Taylor,
Debtors:                    LLP
                            BY: EDWIN J. HARRON, ESQ.
                            Rodney Square
                            1000 North King Street
                            Wilmington, Delaware  19801
                            (302) 571-6703

                            Herbert Smith
                            BY: STEPHEN GALE, ESQ.
                            Exchange House, Primrose Street
                            London EC2A 2EG
                            +44 20 7466 2878

                            Hughes Hubbard & Reed LLP
                            BY: DEREK ADLER, ESQ.
                            BY: CHARLES HUBERTY, ESQ.
                            One Battery Park Plaza
                            New York, NY  10005
                            (212) 837-6068

For LTD Committee:          Elliott Greenleaf
                            BY: ERIC SUTTY, ESQ.
                            1105 Market Street, Suite 1700
                            Wilmington, DE  19801
                            (302) 384-9400

For Bank of New York        Latham & Watkins
Melon:                      BY: MICHAEL RIELA, ESQ.
                            885 Third Avenue
                            New York, NY  10022-4834
                            (212) 906-1373
                    * *denotes audio break*.

```
For U. S. Trustee:        Office of the U. S. Trustee
                          BY: MARK KENNEY, ESQ.
                          844 King Street, Ste. 2207
                          Lockbox 35
                          Wilmington, DE  19801
                          (302) 573-6491


For Monitor:              Buchanan Ingersoll & Rooney, PC
                          BY: KATHLEEN A. MURPHY, ESQ.
                          1105 North Market St., Ste. 1900
                          Wilmington, DE  19801-1054
                          (302) 552-4214


                          Allen & Overy
                          BY: JOSEPH BADTKE-BERKOW, ESQ.
                          BY: DANIEL GUYDER, ESQ.
                          1221 Avenue of the Americas
                          New York, NY  10020
                          (212) 610-6417

For UK Pension
Claimants:                Bayard, PA
                          BY: JUSTIN R. ALBERTO, ESQ.
                          222 Delaware Ave., Ste. 900
                          Wilmington DE  19899
                          (302) 429-4226


                          Willkie Farr & Gallagher, LLP
                          BY: BRIAN O'CONNOR, ESQ.
                          BY: SAMEER ADVANI, ESQ.
                          787 Seventh Avenue
                          New York, NY  10019-6099
                          (212) 728-8000

For Law Debenture:        Patterson Belknap Webb & Taylor,
                          LLP
                          BY: BRIAN GUINEY, ESQ.
                          1133 Avenue of the Americas
                          New York, NY  10036
                          (212) 336-2305


                          Morris James LLP
                          BY: STEPHEN M. MILLER, ESQ.
                          500 Delaware Avenue, Ste. 1500
                          Wilmington, DE  19801-1494
                          (302) 888-6853
```

*denotes audio break*.

```
For Ad Hoc Bond Group:      Milbank Tweed Hadley & McCloy
                            BY: DENNIS DUNNE, ESQ.
                            BY: ANDREW LEBLANC, ESQ.
                            One Chase Manhattan Plaza
                            New York, NY  10005
                            (212) 530-5000

                            Pachulski Stang Ziehl & Jones
                            BY: KATHLEEN P. MAKOWSKI, ESQ.
                            919 North Market St., 17th Floor
                            Wilmington, DE  19801
                            (302) 778-6417

TELEPHONIC APPEARANCES:

For HBK Capital
Management:                 HBK Capital Management
                            BY: ERIC BILMES
                            (212) 588-5115

For Nortel UK:              Willkie Farr & Gallagher, LLP
                            BY: ANDREN HANRAHAN, ESQ.
                            (212) 728-8179

For Aurelius:               Kramer Levin Naftalis & Frankel,LLP
                            BY: DAVID E. BLABEY, JR., ESQ.
                            (212) 715-9100

For Interested Party:       Dow Jones & Company
                            BY: PEG BRICKLEY
                            (215) 462-0953

For Interested Party:       PSAM, LP
                            BY: PHILIP E. BROWN
                            (212) 649-9596

For UK Pension Plan:        Hogan Lovells, US, LLP
                            BY: MATTHEW BULLEN
                            (212) 728-8881

For Macquarie Bank:         Macquarie Capital (USA), Inc.
                            BY: SUSAN S. CHEN
                            (212) 231-2386

For Ad Hoc Committee:       Milbank Tweeed Hadley & McCloy
                            BY: CINDY CHEN DELANO, ESQ.
                            (212) 530-8978
```

*\* denotes audio break.*

```
For Bank of America:      Bank of America
                          BY: ESTHER CHUNG
                          (646) 855-6705

For U.S. Debtors
& Canada:                 Torys
                          BY: ADAM SLAVENS

For Interested Party:     Young Conaway Stargatt & Taylor
                          BY: SIMON FREEMANTLE, ESQ.
                          (302) 571-5732

For Official Committee
Of Unsecured Creditors:   Akin Gump Strauss Hauer & Feld
                          BY: BRAD KHAN, ESQ.
                          (310) 552-6431

For James Kim:            Symphony Asset Management
                          BY: JAMES KIM
                          (415) 676-4094

For Interested Party:     Farallon Capital Management
                          BY: MICHAEL LINN
                          (415) 421-2132

For Nortel Networks UK    Herbert Smith
(Joint Administrator):    BY: PHILLIP LIS, ESQ.
                          (302) 571-6710

For Law Debenture         Patterson Belknap Webb & Tyler
Trust Company of NY:      BY: DANIEL A. LOWENTHAL, ESQ.
                          (212) 336-2720

For Morgan Stanley:       Morgan Stanley - New York
                          BY: JIM C. MARTIN
                          (212) 761-1952

For Interested Party:     Barclays Capital, Inc.
                          BY: OLIVIA MAURO
                          (212) 412-6773

For Interested Party:     In Pro Per/Pro se
                          BY: RYAN POLISI
                          (212) 612-1472

For Interested Party:     Young Conaway Stargatt & Taylor
                          BY: DAVID QUANE
                          (302)571-5732
```

**\*** *denotes audio break.*

For Interested Party:     Chilmark Partners
                          BY: MATTHEW ROSENBERG
                          (312) 984-9711

For Creditor:             Cletus Capital
                          BY: HONDO SEN
                          (203) 552-3528

For Citi:                 Citi Capital Advisors
                          BY: REBECCA J. SONG
                          (212) 559-9933

For Interested Party:     Brigade Capital Management
                          BY: DAVID YOU
                          (212) 745-9703

For Interested Party:     Aurelius Capital Management, LP
                          BY: MATTHEW A. ZLOTO
                          (646) 445-6518

For Jack Mui:             Kamunting Street
                          BY: GREGOR DANNACHER
                          (203) 541-4243

For Canadian Debrors:     Kerik Dave

1

* *denotes audio break.*

1    WILMINGTON, DELAWARE, THURSDAY, MARCH 7, 2013, 10:33 A.M.

2              THE CLERK:  Please rise.

3              THE COURT:  Good morning everyone.  Thank you,

4    and please be seated, and I certainly appreciate your

5    patience with us in the audio and video difficulties.  Mr.

6    Abbott, I believe --

7              MR. ABBOTT:  Good morning, Your Honor.

8              THE COURT:  Good morning.

9              MR. ABBOTT:  Good morning, Mr. Justice Morawetz.

10   Derek Abbott, here for the U.S. debtors.  Your Honor, I'm

11   not sure if you have opening remarks.

12             THE COURT:  I know that Justice Morawetz and I

13   talked about some opening comments and that Justice Morawetz

14   was going to make those.

15             MR. ABBOTT:  Thank you, Your Honor.

16             JUSTICE MOROWITZ:  Good morning, Mr. Abbott.

17             MR. ABBOTT:  Good morning.

18             JUSTICE MORAWETZ:  Oh, sir, now, I actually do

19   see you.  I hope that --

20             THE COURT:  You're looking fit as a fiddle up

21   there, Justice Morawetz.

22             JUSTICE MORAWETZ:  Excellent.  Likewise, down

23   there and understand that standpoint * and we're also

24   getting a little bit of * as an accommodation to the

25   reporters * each Court, if * who they are and also take into

                        * *denotes audio break*.

1    account the way that *.  At the outset, I would like to

2    remind Counsel that this is not a new Motion.  It is a

3    continuation of a Motion that * 2011 in accordance with the

4    provisions of the Protocol and the Court's guidelines that

5    are placed in that Protocol.

6         Judge Gross and I have had our usual procedural

7    discussion.  We would like to remind Counsel that the

8    mediation * been terminated; not here today * with respect

9    to anything from the mediation *.  It's not an opportunity

10   for Counsel to repeat the submissions that they gave us * in

11   June 2011 * the benefit of *.  The purpose today is to

12   review and hear whatever supplementary submissions Counsel

13   have.

14        Now, that being said, have Counsel * Delaware,

15   have you had the opportunity to review and decide among

16   yourselves who is going to *?  I am not receiving any

17   indication that there's been any communication at this end,

18   Judge.  Mr. Abbott, perhaps, you could address it.

19        THE COURT:  Yes.  Did you understand that, Mr.

20   Abbott?  We're looking to -- how the parties discussed -- if

21   the parties discussed how to proceed and what that might be.

22        MR. ABBOTT:  Your Honor, I believe there was a

23   brief discussion.  We had intended to start with Mr. Bromley

24   I believe and then proceed from there.

25        THE COURT:  All right.  Is that acceptable to

                    * *denotes audio break*.

1   everyone?  Mr. Adler, good morning.

2         MR. ADLER:  Good morning, Your Honor, Derek

3   Adler, for the EMEA debtors.  That -- it's fine to proceed

4   that way.  I just note that we haven't had any discussion

5   about how to divide the time.

6         THE COURT:  Okay.

7         MR. ADLER:  And last time, we did feel that it

8   was a little bit unfortunate that we went on at the very end

9   at 6:00 in the evening.  We would hope that the time could

10  be divided up between the two positions here in a fair way

11  today.

12        THE COURT:  Well, my thought was, and frankly, I

13  don't know that Justice Morawetz and I firmly arrived at a

14  decision that we would try to conclude by about 1:00.  So

15  that would be, you know, maybe roughly a little over two

16  hours and that time would be divided equally.

17        JUSTICE MORAWETZ:  We do not see this as an

18  opportunity to --

19        MR. ADLER:  Okay.  So we would divide it equally

20  between the two sides so that's --

21        THE COURT:  I think that's appropriate here,

22  unless someone feels strongly to the contrary.

23        MR. ADLER:  That's fine with us.  It will just

24  require some clock monitoring, I think, by Your Honor to --

25        THE COURT:  All right.  We'll do that.

                    * *denotes audio break*.

1      MR. ADLER:  You know, if they go first and then

2  we go second, to just divide the -- you know, call time in

3  the middle as it were.

4      THE COURT:  Yes.

5      MR. ABBOTT:  Your Honor, we do, of course, have

6  more than two parties, I'm sure, who wish to be heard.  It's

7  not just --

8      THE COURT:  Yes.

9      MR. ABBOTT:  -- the U.S. debtors and the EMEA

10  debtors.  There are obviously a number of other --

11      THE COURT:  There are other --

12      MR. ABBOTT:  -- constituents as well.

13      THE COURT:  Sure.  But, perhaps, you can sort of

14  take that into consideration among yourselves.  Certainly,

15  we don't need a repetition of the arguments, and I think we

16  know from the prior argument, as you may recall, we have a

17  fairly substantial transcript that I know that I've read

18  completely and I believe Justice Morawetz as well.  So we

19  have a pretty good sense of who's lined up on whose side and

20  what those arguments would be, and other than perhaps saying

21  we agree, you know, I don't think there's a lot for other

22  parties to add.  But I'm certainly not going to foreclose

23  their opportunity to do so.

24      MR. ABBOTT:  I understand, Your Honor.  Perhaps,

25  we ought to just get started then and --

                    * *denotes audio break.*

1          THE COURT:  Sure.

2          MR. ABBOTT:  -- I'll cede the podium to Mr.

3   Bromley.

4          THE COURT:  All right.  So let's -- here's --

5   let's do it this way.  Let's give each side an hour and then

6   we'll see if there's a little bit of an accommodation that

7   we can reach, if necessary, at the conclusion of that if

8   that's all right with you, Justice Morawetz.

9          JUSTICE MORAWETZ:  I think that's * and * that

10  Counsel * back from the other Courtroom * to -- Counsel to

11  Blackberry their counterparts in the Delaware Courtroom.

12         THE COURT:  We're getting a fairly substantial

13  break-up in your words but we'll -- how about from this end?

14  Are you hearing us clearly?

15         JUSTICE MORAWETZ:  We're hearing Delaware very

16  clearly.

17         THE COURT:  All right.  That's fine.  Very well.

18  All right.  Mr. Bromley, I hope I haven't thrown you off too

19  much with the amount of time allotted.

20         MR. BROMLEY:  Good morning, Your Honor.

21         THE COURT:  Good morning, Mr. Bromley.

22         MR. BROMLEY:  Judge Gross and Justice Morawetz,

23  thank you very much.  I will say that, amongst the U.S.

24  parties here with the Official Creditor's Committee and the

25  Bondholder, Ad Hoc Bondholder Group, we have talked about

                    * *denotes audio break.*

1    how to maximize our time and also minimize the amount of

2    time that we're going to take in front of the two Courts,

3    and we do recognize, Your Honors, that we are following up

4    on a very comprehensive proceeding that we had in June of

5    2011.

6              THE COURT:  Yes.

7              MR. BROMLEY:  And I think we all recognize the

8    submissions that were made, both orally and written, and in

9    making the supplemental submissions, our attempt has been to

10   focus on the things that have changed, and there have been a

11   few that have changed.

12             THE COURT:  Right.

13             MR. BROMLEY:  And also to point out some other

14   things that have become more apparent with the passage of

15   time.

16             THE COURT:  Yes.  And, but for -- I would say but

17   for the delay, if you will, since our prior argument, we

18   wouldn't need this session but we thought it would be very

19   helpful to us to get sort of a summation and an update.

20             MR. BROMLEY:  We certainly appreciate that, Your

21   Honor.  And from the U.S. debtors' side, I'm going to take

22   the first part of the discussion with respect to

23   jurisdiction, and my partner, Howard Zelbo, will talk on the

24   issue of arbitration.

25             THE COURT:  Yes.

                    * *denotes audio break*.

1          MR. BROMLEY:  So, if I could just kick it right

2   off, Your Honor, there are a number of new facts, things

3   that have happened since the argument in June of 2011, and I

4   don't think there's any disagreement with those, but it

5   would be worthwhile, perhaps, to just list them out.

6          First and foremost, as everyone is aware, the

7   patent sale concluded very successfully just a few weeks

8   after the June 2000 argument, bringing in an additional $4½

9   billion of proceeds.  So now we're talking about an excess

10  of $7 billion of proceeds in the black boxes.  And if you

11  take into account the assets in all of the different

12  Estates, I think we're talking in excess of $9 billion that

13  need to be distributed out to creditors and the seven or so

14  billion that is in the black boxes need to be allocated.

15         In addition, Your Honor, shortly after the patent

16  sale closed, we filed Motions to Dismiss the EMEA Claims

17  that were filed here in the United States and we had an oral

18  argument with respect to the dismissal of those claims,

19  substantial submissions made, and Your Honor issued in March

20  of 2012 a Decision dismissing a substantial number of those

21  claims, leaving others, but also raising some concerns about

22  the ones that remained.  In addition, Your Honor, in

23  December of 2011, with respect to the U.K. pension claims

24  here in the United States, the Third Circuit issued a

25  Decision saying that the proper venue for addressing the

                    * *denotes audio break*.

1    U.K. pension claims was here in the United States.  That

2    Decision of the Third Circuit was not reviewed.  An

3    Application for Certiorari was made to the U.S. Supreme

4    Court and denied.  That essentially takes the U.K. pension

5    claims and puts them into the same status, relatively

6    speaking, as the U.K. pension claims that have been filed in

7    Canada.  The appeal process, all the way up to the Canadian

8    Supreme Court, concluded earlier.  But as to both Canada and

9    the United States, the highest Courts in the land have said

10   that the U.K. pension claims should be adjudicated here in

11   the United States as to the U.S. debtors, and in Canada as

12   to the Canadian debtors.

13        Shortly after the Decision of the Third Circuit,

14   we in the United States, made a motion for -- I'm sorry,

15   after the denial of Certiorari, we made a motion here in the

16   United States for a more definitive statement of the U.K.

17   pension claims and they were filed in September 2012.  The

18   Canadian debtors had done that much earlier, indeed, at the

19   end of 2010, and so what we have with respect to the U.K.

20   pension claims and the EMEA claims in both of the

21   jurisdictions is full and complete submission of all of the

22   claims in both jurisdictions.

23        And then, of course, Your Honor, we did have the

24   mediation which was taking place as well and that will be my

25   last time to mention that.

                    * *denotes audio break*.

1          THE COURT:  Yes.

2          MR. BROMLEY:  I should note that when the U.S.

3  debtors and the Committee filed a joint submission with

4  respect to this particular hearing, we also submitted a

5  slightly revised allocation Protocol that was attached as

6  Exhibit B to our pleadings.

7          THE COURT:  Yes.

8          MR. BROMLEY:  And I do understand that there's a

9  little bit of confusion in the conversation that was -- been

10 going on and I wanted to clarify something right at the

11 beginning so that, perhaps, we can avoid further

12 conversation.  There's a defined term within the allocation

13 Protocol of core parties.  Who gets to participate in the

14 proceeding with respect to allocation and claims, if that

15 goes forward before both Your Honor and Justice Morawetz?

16 Just so that it's clear, the U.S. parties; that would be the

17 U.S. debtors, the Creditor's Committee, and the Bondholders,

18 do not have any problem with defining the Triple C, the

19 Canadian Creditor's Committee, as a core party.

20         THE COURT:  Okay.

21         MR. BROMLEY:  We do have concerns to make sure

22 that we are efficient in discovery and depositions and

23 hearings and the like, but we're confident that the parties

24 can work that out.  So we wanted to take that, if it is an

25 issue, off the table right up front.

                    * *denotes audio break*.

1              THE COURT:  Good.

2              MR. BROMLEY:  Now getting to the meat of the

3    matter, Your Honor, and I don't want to repeat anything that

4    we said so -- in such volume in 2011, but this really boils

5    down, I think, to two issues.  One, do these Courts have

6    jurisdiction, jurisdiction to deal with allocation in a

7    joint hearing setting?  And number two, the cross Motion of

8    the EMEA debtors, is there an arbitration agreement that has

9    been entered into by the parties that could be enforced by

10   the debtors -- by these Courts?  And we believe that the

11   answer to the first question is, is there jurisdiction, is a

12   resounding yes.  And the answer to the second question, is

13   there an arbitration agreement, a resounding no.

14              When you're talking about jurisdiction, you have

15   to start out with the assumption that there are several

16   types of jurisdiction, and we believe that we satisfy all of

17   them.  First, is there inherent jurisdiction in these

18   Courts?  And we think absolutely there is inherent

19   jurisdiction starting with the U.S. Constitution, the -- in

20   Article 1, Section 8, Clause 4, bankruptcy; Congress has the

21   right to make laws with respect to bankruptcy.  The

22   Bankruptcy Code, having been enacted, *28 U.S.C. 157*, this is

23   a core proceeding under the U.S. laws and we believe that

24   that is particularly clear with respect to the -- all of the

25   Sale Orders, all of the IFSA, everything that is at issue

                    * *denotes audio break.*

1    here today is a core proceeding and we don't believe that

2    the EMEA Administrators disagree with that.  Also, it is our

3    understanding, and we would defer to our Canadian colleagues

4    but -- that, under Section 9 and Section 11 of the CCAA,

5    that Justice Morawetz has inherent jurisdiction to decide

6    these issues as well.

7              Then you have to go next to the Cross-Border

8    Protocol.  The Cross-Border Protocol was enacted in these

9    cases by both Courts; the first version on the first day of

10   the case.  Then it was amended a couple of times.  But the

11   Cross-Border Protocol is an important document because it

12   deals with how the Courts are going to address certain

13   issues, certain material issues.  And before any sales took

14   place, there was a paragraph in there, paragraph 15, which

15   has a subsection which says that any Motion to Allocate Sale

16   Proceeds, any Motion, has to be filed for hearing in a joint

17   hearing setting before both Courts.

18             THE COURT:  That's right.

19             MR. BROMLEY:  Okay?  So the Cross-Border

20   Protocol, from the very beginning, the core of how these two

21   Courts relate to each other says very clearly that

22   allocation of sale proceeds is a joint hearing matter.  That

23   Cross-Border Protocol was out and apparent to the EMEA

24   debtors from the very beginning.  And it's important because

25   it is incorporated, actually incorporated, into the IFSA.

                    * *denotes audio break*.

1          THE COURT:  Yes.

2          MR. BROMLEY:  And so when you read the IFSA, you

3   have to recognize -- there's even a condition in the IFSA

4   with respect to an amendment of the Cross-Border Protocol.

5   It is referred to by name, and that IFSA is signed by the

6   Joint Administrators.  When you're looking at jurisdiction,

7   you're also looking at jurisdiction with respect to the

8   person, with respect to the entity.  So the Joint

9   Administrators and the U.K. pension parties are present,

10  notoriously and consistently present, in this Court from the

11  very beginning of this case and notoriously and consistently

12  present before Justice Morawetz from the beginning of that

13  case.  Indeed, they, I think by virtue of the consistent

14  presence in all of these proceedings, in my mind, are

15  eligible for green cards at this point, Your Honor.

16                        (Laughter)

17          MR. BROMLEY:  Every single sale, every single

18  material transaction that these Estates, and I talk about

19  all of the Estates, were involved and went through these two

20  Courts with the active and enthusiastic participation of the

21  EMEA debtors.  They have filed claims in these -- in this

22  Court and before the Canadian Court.  They have submitted to

23  this Court and to the Canadian Court its jurisdiction for

24  the resolution of those claims.  They have filed those

25  claims and attached them to their allocation theories.  That

                    * *denotes audio break*.

1    is without debate.  We had a very long conversation about

2    that in June of 2011.  But by attaching those claims to

3    their allocation theories, and having filed those claims in

4    the United States and in Canada and having litigation those

5    claims last October in an oral argument and having had an

6    Opinion issued, it is absolutely crystal clear that these

7    Courts have jurisdiction over these parties, and not just

8    over these parties, but over these claims.

9            Now, why did they do that?  Well, of course, the

10   U.S. and Canadian Courts, working in cooperation, provided

11   an amazing footprint, an amazing opportunity to realize

12   value, and that value was realized in spades.  But when you

13   look at the IFSA and you look at the Canadian funding and

14   its final Canadian funding and Settlement Agreement and you

15   look at the arguments that we've had, the one thing that

16   comes through is that the EMEA Administrators have not

17   wanted to bear any of the burdens.  Not once did they

18   contribute any money to fund the Canadian debtors, and the

19   U.S. debtors have done that twice to keep them operating,

20   funding hundreds of millions of dollars, and that's really,

21   when you talk about the IFSA, it's the Interim Funding and

22   Settlement Agreement.

23            THE COURT:  Right.

24            MR. BROMLEY:  And the funding is funding to keep

25   NNL and the Canadian debtors in business because transfer

                    * denotes audio break.

1    pricing had stopped post-filing.  So the EMEA debtors have

2    consistently accessed these Courts for the benefits; to

3    generate the revenue; to allow the system to remain in place

4    without any costs to them; and to generate the enormous sale

5    proceeds.  And now at the very point in time when it is

6    appropriate to divide up those funds among the Estates, they

7    are saying that these two Courts, together, do not have

8    jurisdiction over them to do this.  They say that we should

9    go to an arbitrator; we should go back into a private

10   dispute resolution process that is not transparent; that is

11   not visible to the Courts or to any of the creditors, and to

12   let that happen over whatever period of time before whatever

13   panel is eventually chosen for a result that none of us can

14   predict.  The U.S. debtors, and we believe the other U.S.

15   parties, feel very strongly, and you can see that in the

16   submissions of the Triple C as well, that it is critical

17   that these Courts maintain control over these proceedings in

18   a very transparent and public way.  We have been in an

19   alternative dispute resolution process through three

20   separate mediations and we have not benefited from the lack

21   of transparency.  It is now time to do it all and do it all

22   fast and do it all out in front of everyone.

23            Jurisdiction also relates to property, Your

24   Honor, and the EMEA debtors are focused on one particular

25   piece of property.  We all are.  It's the cash.  Where is

                    * *denotes audio break.*

1   the cash?  Well, that's kind of what you call In Rem

2   jurisdiction.  That cash is in New York City.  That cash is

3   with J.P. Morgan Chase.  That cash is subject to the

4   jurisdiction of this Court and Justice Morawetz, the

5   exclusive jurisdiction.  J.P. Morgan Chase is going to obey

6   Orders of both Courts and both Courts alone.  And the only

7   way it would obey an Order of an arbitrator is if both

8   Courts said you must obey the Order of that arbitrator.

9   Now, why is that important?  Well, every one of the sales

10  that generated that $7 plus billion had an Escrow Agreement

11  and every one of those --

12          THE COURT:  Yes.

13          MR. BROMLEY:  -- Escrow Agreements says that the

14  jurisdiction to determine any disputes with respect to that

15  money lies with these two Courts sitting together.  This is

16  not a surprise.  The only surprise there is is that now that

17  we're standing here having to divide these monies, and

18  that's in paragraph 20 and 21 that varied back and forth

19  between the various Escrow Agreements, the only surprise is

20  that we're here today and having, again, and having the EMEA

21  debtors say no, that doesn't count.

22          When the EMEA debtors then look at the IFSA, you

23  have to go to the next level of jurisdiction.  There can be

24  jurisdiction by consent, and indeed, the IFSA and Escrow

25  Agreements, the Cross-Border Protocol, the constant and

                    * *denotes audio break*.

1    unrelenting presence of the EMEA debtors and the U.K.

2    pension parties in this Court and before Justice Morawetz,

3    constitutes consent to the jurisdiction of these Courts to

4    resolve these issues.

5              There's no credible explanation how you could

6    come here over and over and over again over a four-year

7    period and then say these two Courts don't have the power to

8    decide these issues, and indeed, the Third Circuit has

9    already decided that with respect to the U.K. pension

10   parties.  The voluntary submission of a Proof of Claim in

11   this proceeding has divested any opportunity from the U.K.

12   pension parties to have venue with respect to their claims

13   lie in the United Kingdom.  Your Honors will note that the

14   U.S. debtors and the Canadian debtors have very, very

15   carefully never, ever, ever sat -- set foot in the United

16   Kingdom for jurisdictional purposes.  We did that because we

17   didn't want to be subject to the jurisdiction of those

18   Courts.  They are here over and over and over again and yet

19   they can say we don't have -- we should not be subject to

20   the jurisdiction of these Courts, notwithstanding all of the

21   benefits, all of the opportunities that we've had.  It just

22   doesn't make any sense.

23             And finally, when you come back down to the

24   claims themselves, the claims that the EMEA debtors have

25   filed against both the U.S. debtors and the Canadian debtors

                    * *denotes audio break*.

1  sound in fiduciary -- breaches of fiduciary duty, various

2  theories of domination and control.  Those claims are

3  subject to the jurisdiction of these Courts without

4  question.  They are the cornerstone of their allocation

5  theories.  That has not changed.  And when you go back to

6  all of the conversations that took place about whether or

7  not there was an ability to do something different, it

8  always came back to these claims.  They have been forever

9  attached to their allocation theories and they cannot be

10  divorced.

11       If the exclusive jurisdiction for dealing with

12  those claims sits with these Courts, it is inconceivable

13  that the jurisdiction to deal with the allocation that

14  completely incorporates those claims must lie in some third

15  party private arbitrator.  Your Honor, when we're sitting

16  here today, a year and a half later, almost two years later,

17  in some respects, a lot of things have changed, and in some

18  respects, things haven't changed.  The arguments are there's

19  going to be chaos; there's going to be delay; there's going

20  to be inconsistent judgments.  Those arguments fall as flat

21  today as they fell then.  We have put together a proposed

22  Schedule and some slight alterations to the Protocol to take

23  into account the things that changed.  We believe we are in

24  substantial agreement and remain in substantial agreement

25  with the Canadian debtors and with the Triple C, as well as

                    * *denotes audio break*.

1    with the Bondholders and the Creditor's Committee --

2            THE COURT:  Yes.

3            MR. BROMLEY:  -- that these Courts have the power

4    and authority, and at this point we believe the duty, to

5    take these claims and to resolve them and we don't believe

6    that there's going to be chaos.  We don't believe there's

7    going to be a disaster.  What we believe is that, if we

8    follow the Schedule that we have proposed, we're going to

9    have decisions by the end of this year.

10           THE COURT:  Yes.

11           MR. BROMLEY:  And that is the critical element

12   here, because while there's been a lot written about the

13   amount of time this has taken and the amount of money it has

14   cost, the fact is is that the recoveries that creditors are

15   going to get when they get them are going to be

16   substantially higher than anyone expected on January 14th,

17   2009, but we cannot delay any further making decisions to

18   allow those monies to go out the door.

19           And, Your Honor, we believe that the type of

20   Schedule that we've put together is the appropriate one.

21   There may be some arguments on the edges about whether or

22   not certain claims should be dealt with in joint hearings.

23   That's, frankly, we don't think the key issue.  The key

24   issue is allocation has to be dealt with in a joint hearing.

25   Claims have to go first.  But the Schedule that we've put

                    * *denotes audio break.*

1  together, first, is just, you know, is just two or three

2  parking spots ahead of this one.  This is something that's

3  going to happen on a continuum and very close together and

4  we believe that our proposal makes the most sense in terms

5  of moving forward.  I'd like to then cede the podium if I

6  could, Your Honor --

7            THE COURT:  Yes.

8            MR. BROMLEY:  -- to my partner, Howard Zelbo, on

9  arbitration.

10            THE COURT:  Mr. Zelbo -- and I'd assume any

11  questions regarding the arbitration and the practicalities

12  should be addressed to Mr. Zelbo, is that right, Mr.

13  Bromley?

14            MR. BROMLEY:  Yes.

15            THE COURT:  Okay.

16            MR. ZELBO:  Yes, that's right.

17            THE COURT:  Mr. Zelbo, good morning.

18            MR. ZELBO:  Good morning, Judge Gross, and good

19  morning, Justice Morawetz.  This is not my first time before

20  Judge Gross, but my first time in a Cross-Border hearing in

21  this matter --

22            THE COURT:  Yes.

23            MR. ZELBO:  -- and I want to say that I'm very

24  honored to appear before both of you today.  I'm going to

25  try to keep this brief because my partner, Debbie Buhl,

                    * *denotes audio break.*

1  argued this for many hours --

2         THE COURT:  Yes.

3         MR. ZELBO:  -- a couple years ago and I don't

4  think I could ever do as good a job as she did.  But let me

5  just cover a few key points just so they're fresh in

6  everybody's mind.  There's really no disagreement on the

7  basic fundamental legal principle which is that you can't

8  compel arbitration under the Federal Arbitration Act, the

9  FAA, absent an agreement to arbitrate and I believe the same

10  is true in Canada as well.

11         Arbitration is a creature of consent.  Absent

12  consent in a contract, the Court simply cannot do it.  Now,

13  EMEA also says, and I won't spend much time on this, that

14  there's a presumption, under the FAA, in favor of binding

15  arbitration.  It's simply not true.  The Supreme Court said

16  this very clearly in the *Granite* case just in 2010.  The

17  Third Circuit said it in *Curleys* in 2009.  For the question

18  of whether there's an arbitration agreement, it's ordinary

19  principles of contract law.  There's no presumption in favor

20  of finding arbitrability.  The presumption only comes into

21  play on an issue that isn't an issue here.  The presumption

22  comes into play if there's an arbitration agreement what the

23  scope -- what issues are covered.  There's a presumption to

24  finding more, rather than less, issues covered by the

25  arbitration agreement, which makes sense.  But first, you

                    * *denotes audio break.*

1   need the agreement.  So the question is do we have the

2   agreement here and we don't.  And, you know, I re-read all

3   the papers, as I'm sure most folks who are going to speak in

4   this room did, and I re-read the IFSA which is the guiding

5   document.

6           THE COURT:  Yes.

7           MR. ZELBO:  And what I found the most interesting

8   is that EMEA, you know, picked some words out of context,

9   and I'll get into that briefly, but when you look at the

10  contract itself, there's just no arbitration agreement in

11  it, and I'm not talking about the fact that it doesn't use

12  the word arbitration, which it doesn't.

13          THE COURT:  No.

14          MR. ZELBO:  And one would have thought -- I know

15  it's not required, but one would have thought the incredible

16  legal talent and energy and time spent on drafting this

17  agreement, if they wanted to include an arbitration clause,

18  they knew how to do it, and they knew how to do it clearly.

19          THE COURT:  And well, there are no procedures.

20          MR. ZELBO:  Correct.

21          THE COURT:  As well.

22          MR. ZELBO:  No procedures as well, and I'm going

23  to get to that because if you want to talk about chaos, the

24  lack of any procedures of what an arbitration would look

25  like is the thing that's going to lead to chaos here.

                    * *denotes audio break*.

1           But just very briefly, I think what EMEA is

2    saying; they never really pinpoint it, they're looking at

3    Section 12 of the IFSA.  I want to go through it very

4    quickly, but I think it's important to go to the contract.

5    Section 12(a) says, essentially, that the debtors, and I'm

6    going to quote, agree, right, that the sales "shall not be

7    conditioned upon each selling debtor reaching agreement with

8    the other selling debtors regarding (a) allocation to the

9    sale proceeds from the relevant sale transactions; or (b)

10   the binding procedure for the allocation of sale proceeds

11   from the relevant sale transactions."  So 12(a) is not an

12   arbitration agreement.  It just says we all agree we're not

13   going to hold up the sales of Nortel assets until we agree

14   on how to divide up the allocation or a procedure for

15   figuring out how to divide up the allocation of the sale

16   proceeds.  Not an arbitration clause.  So let's go to 12(b).

17   12(b) is not an arbitration agreement.  I'm going to come

18   back to the words dispute resolvers.

19           THE COURT:  Okay.

20           MR. ZELBO:  But I think it's fundamental because

21   you don't need to get there, frankly.  12(b) is an agreement

22   for how funds get released from escrow.  It is not an

23   arbitration agreement.  There's no way to read it as such.

24   And it says it gets released from escrow either through

25   agreement of the selling debtors, or if they can't agree,

                 * *denotes audio break*.

1  determination by their relevant dispute resolvers under the

2  terms of the Protocols defined below.  That's not an

3  arbitration agreement.  I'll come back to dispute resolvers.

4  So then you go to (c).  Maybe EMEA is relying on (c).  And

5  12(c) says the parties will "negotiate in good faith and

6  attempt to reach agreement on a timely basis on a Protocol for

7  resolving disputes concerning the allocation of sale

8  proceeds."  Okay.  So at least here, we're now talking about

9  something that relates to resolving disputes but it is

10  absolutely clear that 12(c) is not an arbitration agreement.

11  It says the opposite.  It says the parties are going to try to

12  negotiate some sort of agreement for resolving disputes.  I

13  really think, and you can go through the rest of 12; it

14  doesn't really -- isn't germane at all, I really think that's

15  the end of the matter.  There is no arbitration agreement in

16  here.  Full.  Stop.

17          THE COURT:  How about the argument that the EMEA

18  debtors make relating to the intent of the parties based upon

19  the practicalities of the circumstances?

20          MR. ZELBO:  Yes, Your Honor.  I think the intent of

21  the parties, again, and I do think this agreement's

22  unambiguous, so the intent of the parties under New York law

23  which governs this agreement must be gleaned from the four

24  corners of the agreement.  I think the intent of the parties

25  are very straightforwardly set forth in here.  We're not going

                    * *denotes audio break*.

1    to hold up the sales.  We're going to try to agree on

2    allocation.  If we can't agree on allocation, we're going to

3    try to agree on a procedure for resolving it.  There are, as

4    Your Honor pointed out, no contours whatsoever in this

5    agreement for what that procedure will be.  That was the

6    intent.  The intent was to figure it out after the sales.  But

7    the parties, Your Honor, did not just leave a vacuum.  They

8    didn't just say well, what if we can't agree on allocation, as

9    happened, and what if we can't agree on the procedures, as

10   happened.

11           THE COURT:  Well, there is a provision for the

12   Courts to make that determination.

13           MR. ZELBO:  Exactly.

14           THE COURT:  Yes.

15           MR. ZELBO:  The parties didn't just say well, in

16   that case, seven billion -- I don't think anyone in their

17   wildest dreams imagined the sales would be that successful,

18   but the parties' intent was not seven billion and, therefore,

19   we would stay until the parties figured it out.  They have a

20   fallback, if you will, and that is Section 16, which Mr.

21   Bromley just discussed.

22           THE COURT:  Right.

23           MR. ZELBO:  And Section 16, to show that the

24   parties do know how to draft, right, form selection clauses

25   here, Section 16 couldn't be clearer.  It is a fairly

                       * *denotes audio break*.

1  traditional form selection clause; very, very broad; uses the

2  words arising under, which under U.S. law is very broad --

3  excuse me, uses the words relating to.  I misspoke.  Which is

4  broader than arising under, a very broad term, and it's quite

5  clear the parties had a fallback.  If we can't agree on these

6  things, we've got two Courts that they've submitted

7  jurisdiction to who will resolve this issue, and that's

8  exactly where we are today, Your Honor.

9          THE COURT:  Yes.

10         MR. ZELBO:  And I think the intents of the party

11  can be gleaned from the contract itself.  Just very quickly,

12  EMEA's argument, I think at the end of the day, they recognize

13  they can't get an arbitration agreement out of this document

14  so they say well, if it's ambiguous, let's go to parole

15  evidence.  I don't think it's ambiguous.  They're confusing

16  breadth with ambiguity.  The word dispute resolvers, which

17  again, I want to emphasize, does not even show up in 12(c)

18  which is the provision I think they're claiming is the

19  arbitration clause but isn't.  That's not an ambiguous term.

20  It's a broad term.  It can encompass a host of things.  It can

21  encompass mediators, potentially; arbitrators; accountants;

22  Courts.  That's -- it's -- they're confusing, like I said,

23  breadth with ambiguity.  I don't think the term is ambiguous

24  but they say it is and they say, therefore, we should look to

25  parole evidence.  We say you shouldn't look to parole

                    * *denotes audio break*.

1  evidence.  But even if you did, they haven't submitted parole

2  evidence worthy of consideration that deserves weight.  What

3  they've put in it is an Affidavit from Kevin Lloyd who is a

4  lawyer for Herbert Smith, very respected litigator, was

5  involved heavily with me and others trying, after signing the

6  IFSA, to negotiate a Protocol.  What Mr. Lloyd was not

7  involved in, as his Affidavit says, was the drafting of the

8  IFSA.  He has no knowledge.  He wasn't involved.  If you --

9  there's a big change in his Affidavit.  When you're looking at

10 his Affidavit, for the pre-IFSA signing things, almost every

11 sentence is prefaced with the words I understand that or I was

12 shown a document while I prepared for this deposition.  We all

13 know what I understand that is code for.  It means I actually

14 have no knowledge whatsoever but I'm looking at the file now

15 and giving you my impressions.  That's not persuasive.  It's

16 not even admissible.  It's not parole evidence that should

17 change the clear language of this contract.  Interestingly,

18 and, you know, talk about new developments, it's still not

19 here.  There's no Declaration from the Joint Administrator or

20 Mr. Bloom who was involved in terms of, you know, what the

21 IFSA meant.  Instead, they chose somebody with no knowledge.

22 And I think that's perhaps because the Joint Administrators,

23 in a Progress Report to creditors in February 12th, 2010, after

24 the signing of the IFSA, said the following:  "In the event

25 that it is not possible to agree on an arbitration process

* *denotes audio break.*

1   with the Canadian and U.S. entities, the process for

2   determining allocation of the sale proceeds is likely to be

3   decided by the Courts."  I don't think we need to look to

4   parole evidence, but if you wanted to look to parole evidence,

5   there's no clearer statement of what EMEA understood the IFSA

6   to mean in the Joint Administrator's Second Progress Report

7   dated February 12th, 2010, and that's attached to the Second

8   Rozenberg Declaration at Exhibit 2.

9              Very quickly, and I'll wrap up, a second condition

10  for there to be an arbitration agreement in the particular

11  circumstances of this case, is not only that there be an

12  arbitration agreement, but the Courts would have had to have

13  so ordered that agreement.  It was crystal clear when the IFSA

14  was approved that both the Canadian Court and the U.S. Court

15  would have to approve any Protocol that was agreed.  I won't

16  purport to presume to speak for either Court.  I'm sure the

17  Courts understood what they were doing when they signed this

18  IFSA, but there is no Order anywhere divesting these Courts of

19  their jurisdiction to resolve or is unquestionably one of the

20  most important, if not the most important, issue in these

21  bankruptcy proceedings.  I don't know, because you asked at

22  the outset, if Your Honor wants me to -- I know I'm running

23  short on time --

24              THE COURT:  But you're doing well.  You have on

25  your side at least another 25 minutes so.

                         * *denotes audio break*.

1          MR. ZELBO:  Okay.  I want to give time for others

2   to speak because --

3          THE COURT:  Of course.

4          MR. ZELBO:  -- my side was defined broadly.

5          THE COURT:  Okay.

6          MR. ZELBO:  But let me just go to the efficiency

7   point briefly and I'll spend a few minutes on that, okay?

8          THE COURT:  All right.  Please.

9          MR. ZELBO:  EMEA argues that --

10          THE COURT:  Oh, Justice Morawetz?

11          MR. ZELBO:  I'm sorry?

12          JUSTICE MORAWETZ:  Judge Gross?

13          THE COURT:  Yes?

14          JUSTICE MORAWETZ:  In the time estimate, I think

15   Counsel should be mindful that other parties * indicating that

16   they be included in the estimate * perhaps might be a little

17   bit generous.

18          THE COURT:  I thought we started about 20 of with

19   the arguments.

20          JUSTICE MORAWETZ:  No, it's just they save some

21   time --

22          THE COURT:  Oh, for a reply you mean, sir?

23          JUSTICE MORAWETZ:  Of the Canadian Counsel which

24   --

25          THE COURT:  Oh, Canadian?  I'm sorry.  Of course.

                    * *denotes audio break*.

1          MR. ZELBO:  How about I --

2          THE COURT:  Typical United States guy, you know,

3  just assuming, but go ahead.

4                    (Laughter)

5          MR. ZELBO:  I will wrap this up in less than two

6  minutes.

7          THE COURT:  In a few -- yes.

8          MR. ZELBO:  Okay?

9          JUSTICE MORAWETZ:  Or it has to be divided by --

10          THE COURT:  All right.  Mr. Zelbo is going to wrap

11  this up, he said, in just a couple of minutes because, to me,

12  it's an important issue.

13          MR. ZELBO:  Okay.  Very quickly.

14          JUSTICE MORAWETZ:  Yes.  Go ahead.

15          MR. ZELBO:  At the outset, the question, of course,

16  is not which procedure is more efficient.  If there's no

17  arbitration agreement, then the Courts can't send it to

18  arbitration.  If there is an arbitration agreement, the Courts

19  should send it to arbitration.

20          THE COURT:  Right.

21          MR. ZELBO:  Efficiency is not the issue.  But

22  putting that aside, I have no -- I have complete confidence

23  that these two Courts, as they have in the past, can handle

24  the Cross-Border hearing on allocation.  It, like many other

25  issues in this case, will be complex and difficult and

                    * denotes audio break.

1  exciting and exhilarating, but I think these Courts can handle

2  it.

3         In contrast, I really believe an arbitration

4  proceeding will lead to chaos for the following reasons:

5  First of all, if there is an arbitration agreement, which

6  there isn't, there are no procedures agreed right now.  I know

7  we had draft Protocols that spanned for 20 single-spaced pages

8  with 20 open issues when we -- when they broke down, but the

9  fact of the matter is, every single one of them said not a

10  binding agreement, subject to -- for settlement purposes only.

11  Those are not the procedures that can be implemented now.

12  They were never agreed.  They were discussion points and they

13  were all supposed to be off the record.  Okay?  So you've got

14  no procedures.

15         What's going to happen?  I don't even know how you

16  choose an arbitrator.  Okay?  But one thing I do know is that

17  it will take six months to do so.  Then, once you have an

18  arbitrator or arbitrators in place, these people who are new,

19  brand new to this case, will have to get up to speed.  Then we

20  will have fights, not in front of this Court or these Courts,

21  but in front of the arbitrator or arbitrators as to what the

22  procedures will be.  That fight will go on and on and on for

23  months and months.  I can't even imagine when we get to the

24  point of having a hearing before arbitrators.  It -- I've done

25  arbitrations, and in my experience, you get one busy person or

* *denotes audio break*.

1   three busy people.  You have to get their schedules aligned

2   with everybody else's.  It's going to take a long, long time

3   and the fight over procedures is going to be far more chaotic

4   than anything that would happen in these proceedings.

5           And I want to make one last point.  These Courts

6   have the authority, the respect, and the moral suasion to get

7   all parties in line for a prompt procedure.  Arbitrators, not

8   so much, no matter how accomplished these men or women may be

9   who we would choose for a private process, they're not going

10  to have the same authority and ability that these Courts would

11  have to corral all the cats here, to herd the cats, and get

12  this done promptly.

13          Lastly, it is in the interests of nobody, including

14  the creditors, to have this issue resolved in a secret and

15  private proceeding.  As Mr. Bromley said, and I want to close

16  with this point, I think it is high time that the Courts and

17  everybody else understand the parties' positions on

18  allocation.  I think it will be good for this process.

19  Sunlight will be very good for this process.

20          THE COURT:  All right.

21          MR. ZELBO:  Thank you very much, Your Honor.

22          THE COURT:  Thank you, Mr. Zelbo.  I really think,

23  given the time, we ought to go and give the Canadian debtors

24  an opportunity to be heard, Mr. Justice Morawetz.

25          JUSTICE MORAWETZ:  Great.  Mr. Dave, please

                    * *denotes audio break.*

1  proceed.

2           THE COURT:  And I apologize.

3           MR. DAVE:  Thank you, Judge Gross; Justice

4  Morawetz, for the record, Kerik Dave, for the Canadian

5  debtors.  Just picking up on where you started, Justice

6  Morawetz, at the last hearing, I can -- the decision before

7  the Court is to decide whether to * negotiate and agree  *

8  Canada, the arbitration by the EMEA *.  It is not to deal with

9  a new amended Protocol * put in by one of the

10  *.  Now, Mr. Bromley had said that * thank you for that, as to

11  why we have concern Protocol *.  It's hard for us to say I

12  adopt everything that's been * parties arguments as to *

13  should be going on the arbitration road and I don't need to

14  make those arguments.

15           What I'd like to do to call attention * that we are

16  faced with.  These realities will sound very familiar to you

17  because they haven't changed.  One of those realities is that

18  the Estates are coming to a consensual agreement on almost *.

19  So we could * discuss all the terms * will not get any

20  further.  For that reason alone, * nowhere.  And the reason

21  for that is that, fundamentally, what lies as difficulties *

22  is the fact that * EMEA has chosen * confused, and

23  inexplicably link * against the U.S. * of allocation.  We need

24  to accept that the only way out of this mess is for the same

25  decision-makers deal with all * and the allocation, deal with

                    * *denotes audio break*.

1  them at *.  If they accept that proposition, I think that, as

2  a matter of law,

3  * as Canadian debtors, then the U.S. Court can deal with the

4  claims for the U.S. Estates.  Therefore, the only decision

5  that you are left with is for both these Courts to open the

6  issue of allocation and to hear it in the * and, at the same

7  time, * EMEA claims.  That's the reason that a Canadian *

8  agreed in the form that it's *.  It was a heavily-negotiated

9  Protocol and the depth of the Protocol from * is contained in

10  paragraph six of the Allocation Protocol * the U.S. Estates

11  and the Canadian Estates at the time of the initial * and *.

12  Judge Gross I have * help you to -- I'm sure there's * in the

13  material.  But I would like to take * paragraph six, the

14  Allocation Protocol.  From our perspective --

15          UNKNOWN:  He's looking for paragraph -- you got

16  that?

17          THE COURT:  I have that, yes.  Thank you.

18          MR. DAVE:  If you look at paragraph six, all that

19  was agreed to between the Canadian and the U.S. Estates, it

20  deals with what I have argued is fundamentally the *.  It

21  provides that the U.S. and Canadian Courts will pull

22  simultaneously the allocation * in a hearing before the U.S.

23  Court any remaining EMEA claims * and hearings before the

24  Canadian Court on the merits of any remaining EMEA *.  It

25  gives you the discretion to decide what you may or may not

                    * *denotes audio break*.

1   want to hear, but it does contemplate that you have the

2   ability to hear everything, and I * very well need to hear

3   everything.   These arguments come up in * of every * that's

4   been put before the Court.   And it's only after hearing that

5   the Courts * respected * two and three.   That's the

6   fundamental basis to this Protocol.   So, unfortunately, what *

7   has minor changes to it, then that Protocol that was put

8   forward by the U.S. Estates, * irrespectively

9   * and basically says these two Courts would * and the claims

10  would * under your separate procedures.   It cannot work.

11  Practical * Protocol with joint input with * for approval of

12  the Protocol *.   [indiscernible] eloquent arguments on why you

13  cannot arcade the issue of claims were actually made by *

14  again this morning and I commend to you pages three * of the

15  previous hearing and you will recall that * Mr. Bromley's

16  argument that * EMEA claims are like James Bond movies.   Pull

17  them out; they keep * again and again.   * argument in the *

18  separate those * EMEA [indiscernible] and those same arguments

19  * is why this Allocation Protocol should not break up or make

20  it * allocation issue and the claims issue.   They must be

21  heard together * [indiscernible] other way of getting around

22  this * that we've been plagued with for four years.   Those are

23  my submissions.   Thank you.

24          UNKNOWN:   Thank you, Your Honor.

25          THE COURT:   Yes.

                    * *denotes audio break*.

1          UNKNOWN:  Judge Gross, * for the Monitor.  I want

2  to make a pink circle around * of what has * since June 2011.

3  The first claim has to do with the assertion of the EMEA

4  debtors that constituted an agreement *.  At that point,

5  nothing has changed.  The IFSA was not [indiscernible] when it

6  was signed in June 2011 and it still is not.  The position in

7  that was well-expressed in the * in 2011 hearing and asked

8  them, and I won't repeat them, * the analysis U.S. debtors *

9  in their supplementary submissions on this point.  Both the

10 supplementary submissions of the EMEA debtors * knew.

11         My second point is that also unchanged is the

12 fundamental things by the EMEA debtors that underlies their

13 allocation argument *.  Everyone agrees they raise the same

14 legal and * claims and arguments.  Everyone should agree

15 multiplicity of * and a risk of * is a bad

16 *.  No one suggests to arbitrate the EMEA claims *.  They

17 can't be divorced on the basis of allocation.  They * forward

18 for Court resolution only the legally *, but it's the

19 preferable *.

20         My third point, that the Protocol that was * in

21 2011 by the U.S. and Canadian debtors was the product of an

22 agreement.  There's no question it was an agreed upon

23 *when referenced paragraph nine of the facts and that the U.S.

24 * this Court * 7, 2011.  The monitor * Canadian debtors * any

25 unilateral changes to that agreed upon Protocol.  They would

                    * *denotes audio break*.

1    be * a step backwards for any agreement reached unilaterally

2    in a different *.

3         And second, the changes, as * are inconsistent with

4    the correct manner of dealing with the intermixing * claims

5    and the allocation *.  That's why paragraph five of the

6    agreed-upon Protocol read as they do and the changes step away

7    from that are not helpful.

8         My last point * scheduling.  The Protocol itself

9    contemplates various steps to get to an expeditious hearing.

10   Some parties * submitted more *.  The thinking at the June

11   2011 hearing, as I * use that term or not *.  As I understand

12   it is that, once the Courts have decided on the Protocol *

13   could address scheduling.  Recognizing, for example, that

14   there may be some issues about impact time and * submission,

15   that's the right to have the Courts * on another day which *

16   very, very near * should address you on the precise *.  I

17   would * verification with * that all parties are in agreement

18   * schedule, absolutely.  Thank you.  Thank you, Your Honor.

19        THE COURT:  Well, down here, I know that Mr. Dunne

20   has been trying to get to the lectern and I will certainly --

21   we have about ten more minutes on this side and certainly, Mr.

22   Dunne, it's obvious, I've carefully read your submission and

23   -- but, obviously, you also have an opportunity to be heard

24   briefly.

25        MR. DUNNE:  Thank you.

                    * *denotes audio break*.

1              THE COURT:  On behalf of the Bondholders.

2              JUSTICE MORAWETZ:  And then we have one other

3    Counsel.

4              MR. DUNNE:  Yes.  Thank you, Your Honor.  Good

5    morning, Judge Gross, and good morning, Justice Morawetz.  For

6    the record, Dennis Dunn, of Milbank Tweed Hadley & McCloy, on

7    behalf of the Ad Hoc Group of Bondholders.  I only plan to

8    take a few minutes at the podium.  I'll neither repeat what

9    Mr. Bromley or Mr. Zelbo have said, nor will I re-state what's

10   in the submission.

11             THE COURT:  Sure.

12             MR. DUNNE:  But there are, I think, a few key

13   themes I want to pull us back to that I believe bear emphasis.

14   I think, as the parties all know now, the bonds are uniquely

15   situated.  We have over $4 billion of claims that are allowed

16   in both the U.S. and Canadian Estates.  We're the largest

17   creditors in each of those two Estates and we care deeply

18   about a quick and fair resolution of the allocation issues.  A

19   number of the submissions, however, caused us concern with the

20   specter of potential delay and the competent value erosion

21   associated with a prolonged or protracted resolution of

22   allocation and we submit that the Courts must reject any of

23   the attempts to create that delay, or to interpose needless

24   complexity into the mix at this juncture.  This should be

25   about allocation and resolving how do we get the dollars out

                     * *denotes audio break*.

1    of the lockbox into each of the Estates so that then each of

2    the Estates, in turn, can deal, in plan context or otherwise,

3    with how to get those dollars out to the creditors.  With

4    that, let me just address two more points.  First, on

5    arbitration, Court adjudication of allocation we submit is not

6    only legally required, but is the best path forward.  It is

7    the path best designed to lead to an expedited and just

8    resolution.  As a legal matter, the parties have not consented

9    to the submission of the dispute to binding arbitration.  That

10   should end the discussion.  Parties cannot be forced to

11   arbitrate against their will.  EMEA tries to create an

12   argument, albeit a nebulous one in our mind, for some type of

13   prior consent.  But under the law and the facts of this case,

14   that argument must fail.  The debtors have stood up here today

15   saying they have not consented to arbitration in the past and

16   they're not consenting to arbitration today.  In arguing for

17   arbitration, EMEA relies, at the original hearing and in the

18   recent filings, on the extensive negotiation over an

19   arbitration Protocol and isolated past statements made by the

20   U.S. debtors on occasion.  They then conjecture that this

21   constitutes consent to arbitrate and argue those statements do

22   not constitute consent to arbitrate.  Rather, at most, it

23   evidences the debtors' good faith, as required by the IFSA, to

24   kind of discuss and negotiate a consensual Protocol and we'd

25   submit that the failure to agree on an arbitration protocol

* *denotes audio break.*

1   may well be the best evidence that the parties never consented

2   to arbitration.  Arbitration, Your Honor, in our view, is also

3   the path least likely to bring these cases to a swift

4   resolution.  The Courts are familiar with the allocation

5   issues, which were teed up for adjudication nearly two years

6   ago.  The Courts can move expeditiously and effectively to

7   complete adjudication of allocation by year-end.  Allowing

8   unknown, and currently unselected, arbitrators into the mix

9   will only delay the timing.  More importantly, the Courthouse

10  is a public forum and parties' positions must be publicly

11  stated and publicly defended.  I cannot underscore this point

12  enough.  To date, we have seen parties willing to say anything

13  in sealed conference rooms and I echo I think what Mr. Zelbo

14  said and I think we're both kind of paraphrasing just as

15  [indiscernible] does, that it's time to throw some sunlight

16  and disinfectant into this process and we'll see that some of

17  the unwarranted arguments are not as cavalierly bandied about.

18          Some parties would rather have a protracted

19  allocation dispute because it allows the cases to drag out for

20  months, and maybe for years.  How does that suit some

21  purposes?  It allows people to argue that the price of their

22  consent on an expedited timeframe, the price of their consent

23  to a settlement, justifies other parties giving up more than

24  legally is at risk now.  Arbitration also has a couple of

25  other defects.  It keeps the dispute behind closed doors in a

                    * *denotes audio break*.

1  way where even the creditors that parties are representing do

2  not know what is going on in their name or what positions are

3  being asserted in their name.  Arbitration also takes the

4  timing and the scheduling of the dispute out of the hands of

5  the Courts and places it into the control of an arbitrator or

6  arbitrators who are unfamiliar with the history and the

7  particular needs of these cases.

8          A number of the parties have refused, Your Honor,

9  to engage with respect to the actual litigation schedules

10 submitted by the debtors, submitted by the bondholders, I

11 think about a month ago now when Your Honors ordered the

12 parties to do so.  Some parties did not submit a litigation

13 schedule and they still haven't submitted one this week in

14 connection with their allocation submissions.  Rather, the

15 parties suggest that we should confer further on what the

16 scheduling should be.  We believe two things.  Your Honors

17 need to resist that request and that the arguments are

18 revealing.  They laid there some of the motives here of the

19 parties and constitute, in our view, just some foot-dragging

20 and it shows, or at least to us, it kind of forcefully

21 demonstrates why the Courts need to rest these issues from the

22 hands of the parties and, instead, adopt and impose an

23 expedited process that people must abide by.  Otherwise, we

24 will end up just perpetuating the inertia that we've seen and

25 prolonging an unacceptable status quo.

                    * *denotes audio break*.

1        THE COURT:  I'm going to have to stop you in ten

2   seconds, okay, and -- so give me your last comment because I

3   want to give parties in Canada another opportunity.

4        MR. DUNNE:  Let me just hit on one other point,

5   Your Honor, which is that it is ultimately in the hands of the

6   U.S. and Canadian Courts to determine whether they will adopt

7   an expedited schedule or permit further delay.  I think the

8   Courts -- and delay, of course, we have a finite pool of cash.

9   Claims are accruing in size.  The cash is eroding with every

10  day of hearings and legal fees associated with the

11  administration of these cases.  The sooner we resolve this,

12  the greater the distributions are that go to creditors.  And

13  we believe the Courts, this is my last point, have a unique

14  opportunity to catalyze final resolution of these cases.  But

15  in order to do that, the Courts must retain the allocation

16  dispute for adjudication in the Court system.  They must set

17  an expedited schedule, adopt our litigation schedule, and show

18  the parties that the Courts are committed to completing

19  adjudication in the fall of this year, and lastly, to avoid

20  efforts to delay or layer on extraneous issues.  This is about

21  allocation, Your Honor.  Thank you.

22       THE COURT:  Thank you.  Thank you, Mr. Dunne.  I'm

23  going to ask, Justice Morawetz, if there's a party in Canada

24  who would like next to be heard.

25       MR. MORAWETZ:  Mr. Hurtz and we have the former

                    * *denotes audio break*.

1   Director, Mr. Zigler.

2               MR. HURTZ:  Good morning, Justice Morawetz; good

3   morning, Judge Gross, Adam Hurtz, on behalf of the former

4   Directors and Officers of NNC and NNL.  As we did in June

5   2011, the Directors and Officers support the monitors'

6   position that the U.S. allocation Protocol be approved in the

7   form originally proposed by the Canadian debtors and

8   originally agreed to by the Canadian and U.S. debtors.  As

9   you've heard, according to that Protocol, the Courts would

10  simultaneously deal with the EMEA claims and the allocation

11  dispute and the Directors and Officers agree that the EMEA

12  claims and the allocation issues should be dealt with in a

13  coordinated process as a fact in issues raised by the EMEA

14  * and are inextricably linked to the EMEA debtors' arguments

15  on allocation.  The EMEA claims * of several billions of *.

16              JUSTICE MORAWETZ:  *.

17              MR. HURTZ:  I do, and I'm getting to it right now.

18              JUSTICE MORAWETZ:  All right.  That's what we

19  really want to hear.

20              MR. HURTZ:  The EMEA claims include claims of *

21  that have been made against * Officers and then are now * and

22  those claims have not yet been particularized but, obviously,

23  given * and it was our understanding that today's hearing is

24  intended to refresh *, the details specifically of how the

25  litigation * timetable who the core parties *, how that

                        * *denotes audio break.*

1  allocation process was done, you know, with the process for

2  resolving the EMEA claims, that that would be dealt with on

3  another day and the monitor said yes.  And for this reason, we

4  are not intending to seek * but instead, to reserve our rights

5  to do so at a subsequent time.  However, I would just * to

6  make ruling on the issues * a $9 billion * directly in * and

7  obviously, they must a right to respond to that claim to

8  defend themselves * dealing with that claim.  * status of the

9  allocation dispute * and meaningful ability to * discovery

10 process *.  Thank you.

11             MR. ZIGLER:  Thank you, Your Honor.  Thank you,

12 Judge Gross, Mark Zigler.  I am here for the Triple C Group.

13 Good morning.  I speak on behalf of all of those groups *.  We

14 believe that the process that the two Courts determine *

15 parties * that it be done correctly.  Speed is important but

16 haste can make waste if things are not synchronized * not

17 asking Canada * agree that this is something that the Court

18 should determine.

19             JUSTICE MORAWETZ:  I can assure you * either one to

20 determine whatever schedules and whatever hearings are in

21 Delaware.

22             MR. ZIGLER:  In addition to the submissions of my

23 friends and Your Honor and Judge Gross, I want to address

24 * jurisdiction * jurisdiction of Canada.  In addition to the

25 facts as raised by Mr. Bromley, it is clear because

                    * *denotes audio break*.

1  * of the * of this Court.  The Major Creditor Group has a

2  claim.  That's happened.  Also, the largest asset that was

3  sold, intellectual property, by the Canadian * to others.

4  Part of the sale * they were at that *.  We know where there

5  largest *.  There's no question that the Court has

6  jurisdiction to decide.  However, * is an open Court process *

7  and from two parties *.  Open Court

8  * is that there is one more posturing.  All sorts of things

9  have happened in terms of * that have not been

10  *.  It is not controlled by these Courts.  * control and there

11  are tens of thousands of people in * United Kingdom who are

12  affected.  * in open Court *.  One trial * dealing with the

13  EMEA issues twice; once in a claims hearing and once in an *.

14  It will be unprecedented * hearing of this nature but

15  arbitration is not a solution to it.  An arbitrator isn't able

16  to control the process the way that *.  It will then be

17  subject to judicial review or appeal in the Courts anyway.

18  Your jurisdiction would be limited to that by any means.  So

19  one trial.  The other thing that's happened in 2011 is that

20  the * and their role has diminished *.  This business is gone.

21  All that matters now are what the major *.  The Major Creditor

22  Group * clearly defined.  Bondholders, and you've heard from

23  them, Canadian creditors, *, the Canadian employee interests

24  * pension interests, U.K. pension interests, * pension and

25  other interests *.  Those creditors have the greatest faith.

*denotes audio break*.

1  They have to be *.  The three Estates *, by definition, would

2  diminish.  The last point I want to speak is not only do we *

3  scheduling of the *, the parties should have a synchronized

4  approach by both parties.  Everything *, consistent, prepared

5  to work * discovery.  It will be unprecedented but it will be

6  * if it is *.  I urge both parties * carefully, * schedules

7  that you adopt from the Noteholders * frankly, and that's all

8  the more important * of an open Court process.

9           JUSTICE MORAWETZ:  Thank you, Mr. Zigler.

10          THE COURT:  Mr. Hodara, why don't we hear from you?

11          JUSTICE MORAWETZ:  *.

12          THE COURT:  I'm sorry.

13          UNKNOWN:  Very briefly, on behalf of Anthony *.

14  Our submissions are less * arbitration * who is the core *

15  and, at your discretion, I can address those now or some time,

16  but we would like to address that * establishment of a

17  Protocol and we have *.

18          JUSTICE MORAWETZ:  We'll defer those submissions *.

19          UNKNOWN:  Our comments will *.  Thank you.

20          JUSTICE MORAWETZ:  Thank you.

21          THE COURT:  Mr. Hodara?

22          JUSTICE MORAWETZ:  Judge Gross, back to you.

23          THE COURT:  Yes, thank you, Justice Morawetz.  Mr.

24  Hodara, for the Committee, is next.

25          MR. HODARA:  Thank you, Your Honor, Fred Hodara,

                         * *denotes audio break*.

1    Akin Gump Strauss Hauer & Feld for the --

2                    THE COURT:  Yes.

3                    MR. HODARA:  -- Office Committee of Unsecured

4    Creditors.  Your Honor, of course, the Committee is the joint

5    movant with the debtor with respect to this Motion.  Our

6    support for it is as staunch as ever, and I'll speak just to a

7    couple of points that only the Committee can make for itself,

8    which are that the Creditor's Committee has never entered into

9    an agreement to arbitrate.  The Creditor's Committee agrees

10   with the debtors' point of view on core parties; that the

11   Triple C creditors should be included as core parties.  We

12   also support the Indenture Trustees on the two series of bonds

13   who have been active participants throughout the process as

14   core parties.

15                    With respect to the issue of speed, Your Honor,

16   Your Honor's Order of January 31 asked the parties to submit a

17   proposal for scheduling.  The debtors and the Ad Hoc Bond

18   Group both submitted very well thought out schedules.  They

19   differed somewhat in timing, fast and very fast.

20                    THE COURT:  Yes.

21                    MR. HODARA:  The Creditor's Committee said that we

22   think it should be done expeditiously.  So to be very clear,

23   we think that something in the range of what's been submitted

24   by the debtors, on the one hand, by the Bondholders on the

25   other, is what we think Justice Morawetz and yourself should

                         * *denotes audio break*.

1   be looking at because we think that they have all of the

2   elements that are necessary and they provide what is most

3   important from a U.S. creditor perspective; and that is

4   transparency, along with the speed, transparency of the normal

5   U.S. process.  Thank you.

6           THE COURT:  Thank you, Mr. Hodara.  I appreciate

7   that.  Yes?

8           MR. GUINEY:  Good morning, Your Honors, Brian

9   Guiney, Patterson Belknap Webb & Tyler, for --

10          THE COURT:  Yes.

11          MR. GUINEY:  -- Law Debenture, the NNCC Notes

12  Trustee.  Your Honor, we have the same issue that was just

13  raised by BNY's Counsel in Canada, and because of the sound

14  system, I'm not entirely sure we could hear Justice Morawetz'

15  request, his response.

16          THE COURT:  I --

17          MR. GUINEY:  I just wanted to note for the record,

18  Law Debenture also requests to be a core party and we believe

19  1109(b) of the Bankruptcy Code is dispositive on this issue.

20          THE COURT:  All right.  I think what I heard Mr.

21  Justice Morawetz say was that we'll defer discussion of that

22  issue until a later date.

23          MR. GUINEY:  Thank you, Your Honor.

24          THE COURT:  You bet.  Good morning.

25          MR. GUYDER:  Good morning, Your Honor, Dan Guyder,

                    * denotes audio break.

1  of Allen & Overy, and good morning, Mr. Justice Morawetz.

2  Pleasure to be here this morning.  Dan Guyder, of Allen &

3  Overy, on behalf of Ernst & Young, Inc., as the Canadian

4  Monitor --

5              THE COURT:  Yes.

6              MR. GUYDER:  -- for the Canadian Estates.  I just

7  wanted to clarify one point because, again, I think because of

8  the audio, we didn't quite get it but the message I think was

9  clear.  I just want to reiterate the point that, with respect

10 to the revised Protocol and the suggestion that it was a

11 slightly revised Protocol, that may be a mischaracterization

12 based on the comments of Mr. Tay and others, and I would defer

13 from the -- for the Canadian position, defer to Mr. Tay and

14 adopt his presentation for purposes of this record, including

15 the transcript, just given the challenges with the audio.

16             THE COURT:  Yes.

17             MR. GUYDER:  But to be clear, for purposes of the

18 Motion, the Protocol, you know, the Canadian Estates support

19 the Protocol as agreed to in the form that was presented to

20 the Court in June 2001.  We hadn't seen the revisions to the

21 Protocol until they were filed on Monday.  We haven't agreed

22 to them.  I just want to make sure there's no misunderstanding

23 about the position of the Canadian Estates on that.

24             THE COURT:  All right.  Thank you.  Thank you, Mr.

25 Guyder.

                    * *denotes audio break.*

1          MR. GUYDER:  Thank you, Your Honor.

2          THE COURT:  I think that concludes the pro-Court's

3   side and, Mr. Justice Morawetz, are you ready to proceed

4   further or to take a break for a few minutes?  I'm fine either

5   way.

6          JUSTICE MORAWETZ:  We're prepared to continue but

7   if you believe that a break is necessary.

8          THE COURT:  I'm perfectly fine.  Does anyone need

9   or wish to have a break here?

10                    (No audible response)

11         THE COURT:  Mr. Adler, you're up next so if you're

12  ready to break or need a break, you certainly may request one.

13         MR. ADLER:  We're prepared to continue, Your Honor.

14         THE COURT:  Very well.  All right.

15         MR. ADLER:  I just want to say if the other people

16  are pro-Court, we're not anti-Court, Your Honor.

17                      (Laughter)

18         MR. ADLER:  That's not how we would want to be seen

19  here.

20         THE COURT:  Understood.  I'm sorry.  I understand.

21         MR. ADLER:  Just to state the obvious, we've just

22  sat through about half-an-hour of testimony and submissions

23  from Canada where we couldn't hear about half the words that

24  were being spoken.  That is -- just underscores some of the

25  issues that we'll face in extensive evidentiary hearings that

                     * *denotes audio break*.

1  would have to be conducted jointly by the Courts if the Courts

2  were going to address allocation.  How will we cross-examine

3  witnesses by video in this mode?  How will Your Honor and

4  Justice Morawetz form views about the credibility of witnesses

5  if they're giving testimony in this procedure?  It's almost

6  inconceivable and I think really would border on a breach of

7  due process to not be able to hear half the testimony that's

8  going on in another Court.  It just underscores the problems.

9  The second --

10         JUSTICE MORAWETZ:  Mr. Adler, let me * I have two

11  comments.  * and the second is I expect that both of the

12  parties * and I'm sure that arrangements can be made to

13  address *.

14         THE COURT:  We missed a good portion of your second

15  solution.

16                    (Laughter)

17         THE COURT:  We did hear Skype.

18                    (Laughter)

19         THE COURT:  But I suspect that between Justice

20  Morawetz and I and the parties, we could certainly make

21  arrangements to address your concerns, Mr. Adler, which I

22  share.

23         MR. ADLER:  The second sort of preliminary point is

24  that what I understood from Canada as well is that the various

25  Canadian parties are not supporting the Protocol that's been

                    * *denotes audio break*.

1  put before you by the U.S. debtor.

2              THE COURT:  The amended Protocol, I think.

3              MR. ADLER:  The amended one.

4              THE COURT:  Yes.

5              MR. ADLER:  I'm sorry.  Yes, the new one.

6              THE COURT:  Right.

7              MR. ADLER:  That's -- which is -- you know, I'm not

8  sure what they're supporting or where we are on that, but it

9  seems to be that there's diversions that wasn't present before

10  we started this.  Now, I'm going to start by pointing out the

11  elephant in the room.  The procedure that the U.S. debtor is

12  arguing for here is to intentionally engineer two simultaneous

13  parallel proceedings addressing the same subject matter,

14  producing two separate judgments which may or may not be

15  aligned which will be subject to parallel appeals with no way

16  to reconcile any inconsistencies and no guarantee of an

17  enforceable outcome anytime soon.  We've seen no precedent for

18  intentionally creating parallel proceedings like this.

19  Normally in our jurisprudence, when parallel proceedings

20  arise, that's considered something to avoid.

21              THE COURT:  Yes.

22              MR. ADLER:  A Court like Your Honor, if there are

23  two Courts that are seized of decisions about the same subject

24  matter, Your Honor would consider enjoining the foreign

25  proceeding or staying your own proceeding until the foreign

                    * *denotes audio break*.

1    proceeding is concluded and, at worst, what you wind up with

2    is a race to judgment where two people -- the two parties go,

3    you see who gets there first and who wins when they try to

4    enforce the judgment.  Here, they're trying to do this on

5    purpose.  It's not what anyone agreed to.  It's not what makes

6    sense.  I would suggest that if anybody did agree to it, it's

7    a breach of public policy.  It's a violation of public policy

8    to intentionally engineer a situation where two Courts are

9    seized of the same subject matter going on through separate

10   parallel appeals and it's the elephant in the room and no one

11   has provided a solution to this.  No one has explained why

12   that is speedy or efficient to have two parallel judgments

13   that will go through their separate appeal processes and just

14   hoping that the decisions will be the same in the first

15   instance.  Now, the -- a lot of mud, I think, has been slung

16   at the EMEA debtors.  I don't think that's at all fair.  We

17   are all here with the same interests.  We all want to make

18   distributions to our respective creditors as soon as possible.

19   Delay doesn't benefit us or anyone.  The way to resolve

20   allocation and be able to pay claims soon is through

21   arbitration.  It's binding, unlike the prior dispute

22   resolution process, the mediation which was non-binding.  This

23   is binding.  Mr. Zelbo suggested that arbitrators would have

24   difficulty dealing with the issues presented to them or would

25   have difficulty managing the parties.  The arbitrators would

* *denotes audio break*.

1    make rulings, just as Your Honor would.  They would make

2    rulings on procedural matters.  They would make rulings on

3    substantive matters.  They can manage that process.  It

4    shouldn't take any longer than a normal judicial process and

5    it does have the benefit of having a very limited right of

6    review at the end, whereas appeals from the judicial decisions

7    can go on through the normal appeal processes here, through

8    the District Court, the Third Circuit, and so on.  Arbitral

9    decisions are subject to very limited rights of review.

10          THE COURT:  Well, doesn't it depend on what the

11   parties agree?

12          MR. ADLER:  With respect to their reviewability?

13          THE COURT:  Yes.

14          MR. ADLER:  I don't believe it does, Your Honor.

15   Under the New York Convention, the United Nations Convention,

16   there is a very limited -- once something is an arbitration,

17   and once it's an international arbitration, those rules apply.

18   They've been adopted in the Federal Arbitration Act in Title 9

19   of the U.S. Code and there's a very limited set of essentially

20   procedural defects that can be argued to try and vacate an

21   arbitral decision.

22          THE COURT:  I see.  I was thinking in terms of the

23   parties being able to agree to some deviation from those

24   procedures but --

25          MR. ADLER:  For subsequent review?

                    * *denotes audio break.*

1           THE COURT:  Yes.

2           MR. ADLER:  That's an interesting subject, Your

3  Honor.  There is actually law on that; whether you can create

4  some kind of right of appeal.  Mr. Zelbo may know more about

5  that than I do.  I can't tell you what the state of the law is

6  on that.  I have the feeling it doesn't work.

7           THE COURT:  Because it gets to my concern here, Mr.

8  Adler, about in the absence of procedures and the absence of

9  specifics addressing arbitration, how the parties would

10 proceed and how that would be sort of, at this point, imposed

11 upon the parties.

12          MR. ADLER:  Right.  Well, the -- first of all,

13 under the Federal Arbitration Act, we do say, and this is the

14 *Bauhinia* case, and they don't really have a way to distinguish

15 that case, that you've got broad discretion in forming how you

16 would order the arbitration.  Obviously, the most important

17 question is how arbitrators are selected.  Your Honor would

18 have the power to just appoint an arbitrator but we would

19 suggest that the approach we've suggested of having three

20 arbitrators appointed, one from each of the three groups, the

21 geographical groups, would be the best approach, and in our

22 Protocol, we've said that that should be done with the consent

23 and discussion of the other parties.  One of the things that

24 would allow us to do also is to consider whether the

25 particular proposed arbitrators have actually got sufficient

                        * *denotes audio break*.

1  time to devote to the arbitration.  Mr. Zelbo is right that,

2  sometimes, you get arbitrators who are too busy, who have

3  trouble with their schedules.  A lot of very prominent retired

4  jurists in all three Countries are available for this and it

5  shouldn't be a problem to find people who can say we can

6  allocate such and such weeks and so on at particular times.

7  That can be something that's discussed at the outset at the

8  appointment -- during the appointment process.  With regard to

9  the procedures that would apply within the arbitration,

10  experienced arbitrators will know what to do.  There's a

11  pretty standard set of practices that have developed in

12  international arbitrations for written submissions, presenting

13  testimony, by witness statements, things like that,

14  disclosures and so on.  We don't think that experienced

15  international arbitrators would have trouble setting those

16  procedures up.  But, in fact, I'd like to point out that the

17  Protocols that we've submitted and that the U.S. debtor has

18  submitted are very similar in the procedural core of what's

19  being proposed.  In effect, the parties have now reached an

20  agreement on what the procedures would be within the dispute

21  resolution process for allocation, and if you just -- if you

22  kind of change who's going to be doing the deciding, the two

23  Protocols that have been submitted are really rather similar.

24  So those are -- does that respond to your question, Your

25  Honor?

*denotes audio break*.

1          THE COURT:  Yes, thank you.  Thank you, Mr. Adler.

2     And by the way, before you get on to your next point, are you

3     the only one arguing for the EMEA debtors --

4          MR. ADLER:  I'm the only --

5          THE COURT:  -- or will there be someone in Canada?

6          MR. ADLER:  There's -- it's me, someone in Canada,

7     and I believe the pension people are here and would like to be

8     heard briefly at the end.  So I would suggest it's me, Mr.

9     Gottlieb in Canada, and then the pensions are here.

10          THE COURT:  All right.

11          MR. ADLER:  Yes.

12          THE COURT:  Very well.

13          MR. ADLER:  So, the other point I wanted to make

14     is that it actually can be quite useful.  The arbitration

15     that's contemplated in IFSA that we're suggesting is what's

16     called an ad hoc arbitration where the rules are left

17     really, to the arbitrators to decide or to the parties to

18     decide.  It wouldn't be a bad idea to appoint, agree to, or

19     have Your Honor appoint one of the major arbitral

20     institutions such as the ICDR, which is the International

21     wing of the AAA.  It's based in New York, where the parties

22     have always said they would conduct the arbitration.  To

23     appoint that institution as the administrator for this,

24     which comes along with a set of rules.  It comes along with

25     a body that moves things along and can make sure that things

                    * *denotes audio break*.

1    progress in an appropriate manner, handles fees and things

2    like that as well.

3           Now arbitration will also be transparent.  I just

4    want to stay -- say for the record, that we don't object to

5    the CCC being included as a participating party.  We don't

6    object to the UK Pensions and any other organized creditor

7    group being participants in the arbitration proceeding.

8    That gives them transparency.  If they're there, I don't

9    know how they can say that the creditors are not informed

10   about what's been going on.

11          Now, there's no --

12          THE COURT:  How about the cost arbitration, the

13   arbitrator's fees?  You know, Mr. Justice Morawetz and I, we

14   work pretty cheaply.

15                         (Laughter)

16          THE COURT:  And I don't know about the cost.  And

17   there's nothing in, obviously, in any of the documents that

18   specify the costs.

19          MR. ADLER:  Arbitrators do get paid.  The custom

20   is that those fees get -- well, actually, it is an issue

21   that would have to be addressed.  Sometimes the parties --

22          THE COURT:  Yes.

23          MR. ADLER:  -- have to pay for the designated

24   arbitrator, but I think it's more common for those to be

25   divided up.  Certainly in the arbitral institutions, they

                    * *denotes audio break*.

1  would divide the cost and send invoices to each of the

2  parties to pay those costs.

3           THE COURT:  Okay.

4           MR. ADLER:  Now it's common ground as Mr. Zelbo

5  said, that under the Federal Arbitration Act, an agreement

6  to resolve a dispute by non-judicial means is enforced as an

7  arbitration clause, even if it doesn't use the word

8  "arbitrate", even if it doesn't specify an institution to

9  administer the arbitration, and even if it doesn't set out

10  any rules for selecting an arbitrator or conducting the

11  arbitration itself.

12           Mr. Zelbo went through the provisions of Section

13  12 of the IFSA.  I'd submit to you that when you read them

14  together, it's quite clear that a dispute resolver is

15  understood to be, appointed to be, who will resolve this.

16  That that term is used quite clearly in 12(b).  It's

17  implicit in (c), that what's going to be negotiated are the

18  actual procedures that will be used by the dispute resolver.

19           We said, and we took you through the last time,

20  the negotiating history of --

21           THE COURT:  I mean, your argument would be that

22  they didn't use the word -- just as their argument is the

23  word "arbitrator" does not appear, the word "Courts" does

24  not appear in that provision as well.

25           MR. ADLER:  That's correct.

                     * *denotes audio break.*

1          THE COURT:  Yeah.

2          MR. ADLER:  They could clearly have said that.

3   They could have defined the term.  And this goes back to the

4   negotiating history that we went through in some detail last

5   time, where the initial drafts that were prepared of how

6   this would be addressed before the IFSA was signed,

7   contemplated that there would be some type of expert

8   determination.  A kind of a person assisted by an accounting

9   firm who would make sort of an appraisal of this.  Which in

10  England, there are different procedures that can be used

11  that are not considered under the heading, arbitration.

12  Different non-judicial procedures.  In the U.S., those are

13  all lumped together under the heading of arbitration.  So

14  that term was used originally because the Englishmen, who

15  were, I think, from Lazard originally, contemplated that

16  there could be something other than arbitration that was

17  still a private dispute resolution process.  Under the FAA,

18  that's still considered arbitration.

19          Now on the evidentiary point Mr. Zelbo raised, he

20  was criticizing the admissibility of the testimony about the

21  negotiations because Mr. Lloyd was -- didn't participate on

22  them.  I thought we had addressed that at the last hearing.

23  I think it had been accepted.  I'll make an offer right now,

24  we can put in multiple declarations that would back up

25  what's in Mr. Lloyd's declaration.  Mainly, he's relying on

                    * *denotes audio break*.

documents, which say quite clearly the positions people were taking. The U.S. Debtor hasn't come up with anything to contradict any of that. They haven't disputed any of the underlying facts. So I think the admissibility point is a red herring. But if it would be helpful, I will represent we could put in other declarations. We didn't think it was necessary to burden the record with that, but those facts are facts and we would confirm them.

It's also quite significant in the IFSA, that the parties agreed to negotiate a protocol, because that's not something you can do with a Federal Court. You -- the Federal Court, this would be clearly an adversary proceeding that they'd have to proceed with to determine the Debtors' right to this property as governed by the Federal Rules of Civil Procedure. That's not something you do when you're contemplating a judicial process.

I won't go through all of the extrinsic evidence --

THE COURT: Well we do have protocols, other protocols in this case, however.

MR. ADLER: This is true, Your Honor.

THE COURT: Yeah.

MR. ADLER: The -- I mean, for specific -- typically for contested matters though, I think. You wouldn't impose a new procedure or formulate a new procedure

1   for what is -- what has to be an adversary proceeding.  I

2   don't think you have the --

3           THE COURT:  We have the rules already is what

4   you're saying, we don't need a protocol.

5           MR. ADLER:  You have the rules in the place.  I'm

6   not sure how -- I mean, in effect, what they're asking for

7   is you to create a kind of ad hoc arbitration procedure here

8   where Your Honor and Justice Morawetz are sitting as a kind

9   of panel in this.  And we don't see where the authority is

10  to do that, to formulate new procedures for determining the

11  substantive rights of parties on the merits.

12          I won't go through the rest of the negotiating

13  history or the substantive statements, but we, obviously,

14  don't say that the agreement to arbitrate came about as a

15  result of the protocol negotiations.  We say that the

16  protocol negotiations reflected an understanding at all

17  times that the disputes about allocation would be

18  arbitrated.  There was never anyone who said that there was

19  some other procedure that should be used.  No one ever

20  objected to arbitration.  And this really undercuts what

21  they're saying now which is that arbitration would be such a

22  terrible thing.  For a year, or a year and a half, everybody

23  thought arbitration was a great idea.  They're reneging on

24  that agreement.  They've changed their minds.  They've made

25  an about-face on this and it's not in good faith.

                     * *denotes audio break*.

1            Now if the Court were to find that this is not an

2    enforceable arbitration agreement, there is certainly

3    nothing in the terms of the IFSA that gives the Court the

4    power to dictate the terms of some new protocol that the

5    parties haven't agreed.  There's kind of an inconsistency in

6    the U.S. Debtors' position on this, because they say on the

7    one hand, Your Honor can't come in and impose an arbitration

8    protocol if people haven't agreed to arbitration.  On the

9    other hand, they're suggesting that you can exercise a right

10   here under the IFSA to impose a very detailed dispute

11   resolution protocol that they're suggesting.

12           THE COURT:  And I understood you to say earlier

13   in your argument, that the parties were very close on their

14   respective protocols.

15           MR. ADLER:  That's absolutely right.  The ones

16   that have been submitted to the Court today are extremely

17   close --

18           THE COURT:  Yes.

19           MR. ADLER:  -- in terms of the procedures that

20   would be followed.  You just have to substitute the

21   arbitration as the panel, instead of the Courts as the

22   decider.

23           Mr. Zelbo also made an argument that it's within

24   the inherent power of the two Courts to adjudicate claims to

25   property of their respective Debtor.  That is true, but the

                    * *denotes audio break*.

1  same argument applies in relation to the English Court and

2  the other Courts around the world.  There is a pool of

3  property sitting in New York that is the property of,

4  comingled property of, I think, 40 or so Debtors around the

5  world --

6          THE COURT:  Yes.

7          MR. ADLER:  -- each of whom is under the

8  supervision of a different Court or insolvency regime.  Each

9  of those Courts has jurisdiction to determine the rights of

10 their respective Debtors to that property.  That's not a

11 solution to the jurisdictional problem, that's a conflict of

12 jurisdiction that needs to be resolved in some manner.

13 There's no procedure for constituting all of those Courts to

14 be a kind of a super body and decide together what happens

15 to that property.

16          Now while insisting on the strict construction of

17 the IFSA dispute resolution clause, the U.S. Debtor is

18 pretty loose in how they say that we've consented to

19 jurisdiction of joint proceedings before the U.S. and

20 Canadian Courts.  Certainly, Section 16 of the IFSA, doesn't

21 contain a consent to the Courts' jurisdictions to decide

22 allocation disputes.  It only applies to matters that were

23 agreed in the IFSA.  That the right to the proceeds of the

24 sale of their own assets is not something that was agreed in

25 the IFSA.

                    * *denotes audio break.*

1          It also says that a decision in a joint hearing

2     gives an out if it's not permitted by applicable law.  We

3     say that there really isn't a way to proceed with this

4     dispute in the manner that they're trying to.  That that

5     really doesn't comply with the law.  If you read it the way

6     they do, as I said, it would be void as against public

7     policy.  If it's meant to create a new Cross-Border panel

8     consisting of Your Honor and Justice Morawetz, that's not

9     something that's been agreed to here.  It's not something I

10    think you have the power to do.  If it's meant to lead to

11    parallel proceedings with parallel appeals and separate

12    judgments on the same subject matter, I would suggest that

13    that's also against public policy.  That's not something a

14    Court should be agreeing to or ordering.

15         The escrow agreements also don't give the Courts

16    jurisdiction to decide allocation.  They actually parrot the

17    language in the IFSA.  They said that distributions from

18    escrow should only happen based on the agreement of the

19    parties or a determination by the dispute resolver under the

20    IFSA.  The provisions that refer to jurisdiction in joint

21    hearings are the residual jurisdiction to deal with other

22    matters.

23         Now the procedure the Movants are advocating for,

24    offers no hope of resolving allocation and paying creditors

25    any time soon. It's a bridge too far.  Something the Cross-

                    * *denotes audio break*.

1   Border protocol was not designed for.  We've gone through in

2   our papers, and many times all of the practical problems,

3   they're too many to catalog; differences in law, procedural,

4   privilege, rules of evidence.  We've seen today what it

5   would be like to cross examine witnesses and do other things

6   by technology.  But the big one is the problem of two

7   separate judgments at the end of the day.  And I think it's

8   important to emphasize here, that the type of decisions the

9   Courts would be called upon to make an allocation are really

10  very different on the matters you've addressed before in

11  joint hearings.

12          There are nine separate assets sales.  Each of

13  them has to be addressed separately with respect to what the

14  claims of the particular Debtors are to the proceeds of that

15  particular business.  There are 40, I believe, parties who

16  have keys to the lockbox.  As they'd say, a key to the

17  lockbox, who have claims to parts of those.  We have

18  hundreds of individual decisions that the Courts have to

19  agree on.

20          Now there's been a lot said about the position

21  that --

22          THE COURT:  And your point is, that Mr. Justice

23  Morawetz and I would really have to decide these issues

24  completely independently.  That this not -- these are not

25  the types of decisions that we can make in conference with

*denotes* *audio* *break*.

1 one another and jointly.

2 MR. ADLER:  That's right.  You're entitled, under

3 the law and under the protocol, to consult with each other,

4 to speak to each other about things.  You're not entitled as

5 we see it, to form yourselves as a new international panel

6 to deliberate together like arbitrators, and decide what the

7 decision should be.  We say that that would be a breach of

8 sovereignty of both nations to engage in that type of

9 deliberation.  That's really what they would like you to do.

10 And if you're not going to do that, then there is a

11 tremendous danger that you'll come up with different

12 decisions here.

13 Now a lot has been said about the positions that

14 have been taken by the EMEA Debtors in the allocation

15 process.  I think way too much has been said about that in

16 terms of what's been confidential in the mediation.  I did

17 address this last time and pointed out that we have not --

18 we're not asserting the same claims as part of the

19 allocation process.  What we've said is the framework

20 established under the agreement called the MRDA --

21 THE COURT:  Yes.

22 MR. ADLER:  -- should not be applied literally in

23 the allocation process.  It was an agreement that was

24 devised for tax purposes.  We say it doesn't reflect the

25 underlying contributions that were made by the individual

* *denotes audio break*.

1   EMEA Debtors to the businesses that were sold, particularly

2   in the area of intellectual property.  Because the three

3   EMEA Debtors; France, Ireland, and the UK, were generating a

4   tremendous amount of intellectual property that was going

5   into the businesses.  Legal title to that was being

6   transferred to Canada, but the value was being generated by

7   the EMEA Debtors.

8         And so, we say that the terms of that agreement,

9   the MRDA, need to be looked at and adjusted to conform to

10  the legal reality of who contributed what to the value of

11  the businesses.  That is the essence of it.  It does overlap

12  with the claims that have been asserted against Canada and

13  the U.S., in the sense that the MRDA was part of a series of

14  transactions that were used to strip the EMEA Debtors of

15  cash and of other value.  But it is separate from the claims

16  process and it's not true that we've infected the allocation

17  process with our claims process.

18        What you might have the impression from what

19  you've heard, that the EMEA Debtors are the only thing

20  that's stopping there being a resolution of allocation.  And

21  I would like to suggest to Your Honor that it would not be

22  appropriate for you to assume that.  I would like to suggest

23  to Your Honor that when you get to the point of looking at

24  the allocation theories, you may find that there are

25  tremendous differences between the position of the U.S. and

* *denotes audio break*.

1    Canada that Your Honor and Justice Morawetz will have to

2    grapple with.  We are not the ones that are stopping this

3    from going forward and being resolved.  You can infer from

4    the mediation process, that there were big issues on all

5    sides.

6                    THE COURT:  Yes.

7                    MR. ADLER:  Now let me just say a few words about

8    the schedule and a coordination of the different parts of

9    this process.

10                    I think it's common ground between all parties

11    that the disclosure process, the discovery process, should

12    go forward in a coordinated manner for U.S. claims, Canadian

13    claims, and for allocation.  And we think that we can

14    probably start with the allocation disclosure process, even

15    before you've necessarily decided.  I know you're planning

16    to rule today, but even if you were not going to state today

17    how allocation would be decided, we think we can get the

18    disclosure process going, even if arbitrators are still

19    being appointed and so on.  It's clear enough what the

20    issues are.  We think that can get going to avoid delay.

21                    There does need to be a reasonable period of time

22    for discovery.  Although substantial disclosure has already

23    been made, there's a tremendous amount.  The EMEA Debtors

24    have been outsiders here.  There are email servers that have

25    their own communications on them that are in Canada that we

                    *  *denotes audio break*.

1   haven't had access to.  A lot of the things that we need to

2   probe into, like the MRDA which I've just mentioned --

3           THE COURT:  Yes.

4           MR. ADLER:  -- we weren't part of the negotiation

5   of that.  We weren't part of the formulation of that.  That

6   was done in North America and we need to examine how it was

7   done, who did it, the reasons they did it, and so on.  So

8   there will need to be substantial discovery.  There will

9   need to be sufficient time for that.  It's also a common

10  ground that both the EMEA Debtors and the U.S. Debtor, and

11  we discussed this last summer when we were addressing

12  discovery, needs substantial disclosure from Canada.  So

13  that whatever -- in order to litigate just the U.S. claims.

14  So whatever procedure is agreed, needs to allow time and a

15  process for getting disclosure for both sides up from

16  Canada.

17          The order for the ultimate decisions should be

18  allocation first, Canadian claims second, and then the U.S.

19  claims.  The reason why allocation should be first is that

20  it's the one proceeding where all parties will certainly be

21  present.  So to the extent that there are any issues that

22  need to be decided that do overlap, they should be decided

23  first in the procedure where everyone has a say, where

24  everyone is getting their due process, so that it will be

25  binding, so that it will have preclusive effect, issue

                    * denotes audio break.

1    preclusive effect.  To the extent that there's any overlap

2    in the issues that are decided, they'll be decided once and

3    that will preclude re-litigation of those issues in the

4    other proceedings.  That won't happen if these are done

5    piecemeal because you won't have all the parties in front of

6    the Court that's making the decision; or the Court or

7    arbitration panel.

8            From the perspective of the English proceedings,

9    they also need to know that they can't start their own

10   claims process until they know how much they're going to get

11   out of this.  So it's actually holding back the claims

12   process in England because they're not allowed to start the

13   claims process until they see that there's going to be money

14   coming.  It also will facilitate the English pension

15   regulator from proceeding with its process of exercising its

16   discretion to determine the FSD liability.  There's no

17   reason to do claims before allocation.  Creditors can't get

18   paid until allocation has been decided.

19           The Canadian claims should be decided after

20   allocation and before the U.S. claims.  And the reason for

21   this is clear when you look at the nature of the claims.

22   The claims that Your Honor upheld against the U.S. estate

23   are secondary claims.  They're claims for aiding and

24   abetting breaches of duty by the Canadian Debtor.

25           So in order to litigate the U.S. claims, Your

                    * *denotes audio break*.

1   Honor is going to have to make a finding first as to whether

2   the Canadians breached their duties.  The primary

3   wrongdoers, if you like, breached their duties to the UK and

4   to the EMEA Debtors.  If you have to do that, litigate that

5   yourself here and make a decision on that here, you may come

6   to a different conclusion than Justice Morawetz would in

7   Canada.  The logical and efficient thing to do is to let

8   them decide the primary liability first, and then possibly

9   the outcome will go against us and you won't have to address

10  secondary liability at all, but clearly, the secondary

11  liability should come after the primary liability.

12          And just one final point.  Any schedule that you

13  put in, should require the U.S. Debtor to answer the EMEA

14  claims.  Your Honor found that what we filed on behalf of

15  the three big ones was a complaint.  There should be an

16  answer to a complaint to allow us to know what issues are

17  contested, what issues to address in discovery.  And there's

18  a raft of other EMEA claims that have never been responded

19  to in any forum.  It would help us litigate those claims if

20  they were acquired, given a date to actually respond to

21  those claims.

22          THE COURT:  Okay.

23          MR. ADLER:  Unless you have any questions, I'll

24  sit down.

25          THE COURT:  No, Mr. Adler, thank you, sir.  I

                    * *denotes audio break*.

1    appreciate your comments and your argument.  Justice

2    Morawetz, it's at your end now.

3              JUSTICE MORAWETZ:  And Mr. Gottlieb is already

4    racing to the --

5                        (Laughter)

6              JUSTICE MORAWETZ:  -- the podium.  Away you go.

7              MR. GOTTLIEB:  Good morning, Justice Morawetz,

8    Judge Gross.  Thank you again for the opportunity.

9              As you know, we have here * got Mr. Adler's

10   comments on those.  The first point as you know, that we say

11   on behalf of the EMEA Debtors that the * exactly what the

12   parties * and that's clear on the words * Mr. Zelbo's

13   submission.  And it's clear by the conduct.  And I will say,

14   and the Court * --

15             UNKNOWN:  Judge Gross, can we mute our

16   microphones here because of the feedback --

17             MR. GOTTLIEB:  -- the parties understood there

18   would be a --

19             THE COURT:  You think that's what doing this?

20             MR. GOTTLIEB:  -- * to allocate.  We have to

21   decide how the allocation would happen.  It's very clear

22   that * -- yes.

23             JUSTICE MORAWETZ:  If it was so clear *.

24             MR. GOTTLIEB:  Well, Your Honor and Judge Gross,

25   I'm going to suggest that on the material that's before the

                      * denotes audio break.

1  Court * our respectful * Adler said this, * turnaround

2  position by the Canadian and U.S. Debtors.  On the record,

3  he goes in one direction which is clear that the * intended

4  fully that the allocation * have a cross-jurisdictional *

5  and every document * covered.  It's the documents that tell

6  the tale all the way through the end, that are all the

7  parties talk about * the parties ever told * would be done

8  by cross-jurisdictional * would have to do is come back *

9  allocation decision was made for approval by the Court.  It

10  refers specifically to, and this is why * Bromley's comments

11  * best.  The IFSA * is unequivocal * a single *.  And using

12  Mr. Bromley's words, and I don't * for the record, the view

13  being that once we have a fair and reasonable * decision,

14  that we would simply come to both of these *.

15          So in Mr. Bromley's submissions on behalf of *

16  agree to any * not suggesting that arbitration would *

17  exactly what they * sought approval of IFSA.

18          I also made the * --

19          JUSTICE MORAWETZ:  * Mr. Bromley's position.

20          MR. GOTTLIEB:  Sure.  The easiest *, Your Honor,

21  and Judge Gross is it's referred to * original * reference

22  result *.  That hearing of the same transcript *.  Judge

23  Gross and * there to have been arrived at an allocation

24  process as * here in the IFSA.  * process hadn't been agreed

25  to at the *.  They agreed that it would * a fair process.

                    * *denotes audio break*.

1          And I also refer, which is why I say again, Your

2   Honor, the parties' intentions regarding this, there can't

3   in my respectful submission, be a serious debate about.

4   When Judge Gross dealt with the issue of the UK Pension

5   interest and the Stay Motion, in his decision in the

6   transcript, the words that Judge Gross used and I'll quote

7   these and give the reference is, and I'm quoting, "The

8   Nortel Debtors in Canada, the U.S., and the UK, have agreed

9   that these issues must be resolved on a global basis in a

10  single cross-jurisdictional forum.  They should not be

11  decided even in part by an administrative body in a single

12  jurisdiction with a single constituency."  So the words were

13  that those three parties have agree that these issues must

14  be resolved on a global basis in a single cross-

15  jurisdictional forum.

16          And if you go through the transcripts of those

17  motions, and you go through the transcripts of those

18  proceedings, what they were talking about was obviously, an

19  arbitration body and not the Courts.  That was the fair

20  process that was being put forward and that was the fair

21  process that IFSA put forward.

22          So when the parties say, and Mr. Zelbo's

23  submission says, well the Court would have to agree on an

24  arbitration agreement.  They would have to order it and

25  approve it.  That's exactly what they are asked to do when

                    * denotes audio break.

1    IFSA was brought forward before the Court.  This isn't

2    trying to backdoor something.  It's exactly what the Court

3    was told.  And, in fact, the Courts were told when the IFSA

4    was being put forth, we have a process to decide on the

5    allocation issues, if the parties can't agree on it.

6              So that's what was put forward.  And Mr. Zelbo

7    took you to the agreement in part, and stopped, and in my

8    respectful submission, he stopped at a critical part.  So

9    I'm going to ask Your Honor and Judge Gross, if you can pull

10   up IFSA one more time.  And I know everyone has reviewed

11   this document on several occasions, but in my respectful

12   submission, we've got to look back on it, because there are

13   some critical parts that have been missing.  And I'm not

14   going to go into too much detail because I know Your Honor

15   and Judge Gross are very familiar with it.

16             When you look at 12(b) which is on Page 11 of the

17   agreement, what this is all about and I'll pause and again,

18   you know that to get the sales done, the parties had to say,

19   I know we're not going to agree on allocation before they

20   get too old, so we have to figure out a way to do it after.

21   And if you look at (a) and (b), it's clear that what it's

22   proposed there and this is what the Court is told is

23   proposed and agreed to is that there will be a determination

24   by the dispute resolvers under the terms of the protocol

25   that's defined below.

                    * *denotes audio break*.

1          And I point out as we did in our supplementary

2    argument, the one that we gave you, the word "Court" is used

3    throughout the document.  I believe in 16 places.  The

4    parties knew how to use the word "Court".  So they chose not

5    to use the word "Court" intentionally.  They choose -- chose

6    to use dispute resolver.  And as Mr. Adler said, there's no

7    dispute on the record in the evidence as to why the term,

8    "dispute resolver" was used, because in the evidence.  It

9    was because in the Lazard paper, they chose the word,

10   "dispute resolver".  And it's at Page 70 in the record in

11   Mr. Lloyd's affidavit.  It says an individual to be chosen

12   by the parties and we're going to have to decide on cost and

13   replacement.  It couldn't be more clear that dispute

14   resolver meant not the Court.  Because if the parties wanted

15   to have the Court, the parties could have used the Court.

16          So the mechanism that's put in place in IFSA is

17   to have the mechanism to pay out the money.  And the answer

18   is it can only be paid out, and this is in the (b), there

19   can only be a distribution from the escrow account, either

20   one, agreement of the selling Debtors.  Or two, where

21   there's a failure to reach an agreement, a determination by

22   the relevant dispute resolvers under the terms of the

23   protocol that's to be discussed.  And that's discussed in

24   (c).  And we talked about that, it says a binding protocol.

25   And obviously, you can't bind the Court.

                    * *denotes audio break*.

1           And then if you get to (d), and this is where Mr.

2    Zelbo didn't continue onto, it's an important provision

3    because it shows what the intention of the parties was

4    again.  It says in (d), the selling Debtors shall

5    immediately fall into entry into any sales transaction

6    negotiating good faith and on a timely basis, to attempt to

7    reach agreement regarding the allocation of the proceeds

8    from such sales transaction within a reasonable period of

9    time.  So they obliged themselves to go and try to settle

10   the numbers.

11          And then it says "failing which the interim sales

12   protocol shall apply to" the determined -- "to determine the

13   allocation of the relevant sale proceeds".  It doesn't say

14   may apply.  It doesn't say that if you don't agree, you get

15   to go to the Court.  That's a submission that's made

16   repeatedly in the U.S., that 16 was a fallback.  That the

17   Court was going to be a fallback.  I've read the IFSA very

18   clearly, as I know everyone else has.  Nowhere does it say

19   that.  Nowhere does it suggest that.  And, in fact, 12(d)

20   says exactly the opposite.  12(d) says if you don't agree on

21   allocation, "the interim sale protocol shall apply to

22   determine the allocation of the relevant sales proceeds".

23          So there is no merit whatsoever to the arguments

24   made that say there was not an agreement that the allocation

25   would have to be decided in accordance with the sale, the

                    * *denotes audio break*.

1   interim sale protocol under this agreement.  There is simply

2   no way to read that any other way.  So the suggestion that a

3   party did not bind themselves to that process is simply

4   incorrect.  As is to suggest that 16 of the agreement,

5   Section 16 has some ousted jurisdiction.

6           The bottom line is any reasonable person reading

7   that part of the agreement and coming up with what is a

8   dispute resolver, does that mean Court?  In our respectful

9   submission, no, it can't mean Court.  And what the law in

10  New York provides, as Judge Gross is clear and Your Honor is

11  the same, it's no different here, you have to read the words

12  of the contract to understand the intention of the parties.

13  That's how you understand the intention of the parties.  And

14  reading 12 of this agreement, the entire section of 12, it

15  is -- I know you think it's an overstatement, it is, in our

16  respectful submission, clear because of the way (b), (c),

17  and (d) work together, that there was only one way that you

18  could get a dispute resolved regarding allocation and that

19  was through the protocol by the dispute resolver here.

20  That's what Mr. Bromley explained to the Court and that's

21  what Judge Gross said in his reasons on the UK PI that the

22  parties had agreed to that, pardon me, because that is what

23  happened.

24          And again, I stress, the parties had the choice

25  when they entered into IFSA, to decide how to deal with

*denotes audio break*.

1   allocation, if there was a dispute over it, as they knew

2   there would likely be a dispute over it.  They could have

3   said right off the bat, we'll go to the Courts.  Because

4   what you've heard the U.S. and Canadian Debtors say here,

5   Your Honor and Judge Gross, is we've got an agreed-upon

6   protocol.  We're just asking you accept our agreed-upon

7   protocol.  I'll say as an aside, they actually don't have an

8   agreed-upon protocol right now because they both put the

9   other ones before the Court today, but what's missing from

10  that submission is yes, we didn't ask and didn't get the

11  agreement of the third party that's critical is what has to

12  happen here.

13          The EMEA Debtors around the world who are the

14  parties that made the claims who have the allocation

15  dispute, they are not part of this said agreement that is

16  repeatedly put to the Court.  We have an agreement, but they

17  forget to mention that it's not an agreement with all of the

18  relevant parties, in fact, they've left out the key EMEA

19  Debtors as part of that.

20          So again, I say that the agreement leads to the

21  conclusion that the intention of the parties was that an

22  allocation dispute would be dealt with by arbitration, not

23  by the Courts.  The argument that there was a fallback is,

24  in our respectful submission, of no merit at all.

25          And again, if you then say, Your Honor, as you

                    * *denotes audio break*.

1  have, and I believe last time we had a similar discussion,

2  well, there must be some ambiguity here because here we are

3  and we've got experts saying different things.  I'd

4  respectfully, understand that submission, which is why all

5  the evidence goes in about from day one of Lazard till day

6  one of the discussion on the protocol breaking down.  All of

7  the documents are in there.  And what they all show, and I

8  do go so far as to say they all show, and there was no cross

9  examination on Mr. Lloyd's affidavit, they all show that the

10  parties understood that the dispute would be resolved by an

11  arbitrator and not by a Court.  And every single draft,

12  every single discussion confirms that point.

13       And again, I stress the point, because it was in

14  all interest, it was in the interest of all the parties that

15  that be the case, because it was well understood that the

16  best, most efficient, cleanest way to get an allocation

17  dispute resolved was with one body and not with different

18  Courts being involved.  That was an option, but they

19  intended otherwise.  And that made perfect sense to them at

20  the time, and that's why we say it's an about-face.

21       So all of the material goes to show that in our

22  submission, which is why we say, when it comes to the

23  decision that the two Courts have to make on the motion and

24  the cross motion, the first question is, is there a binding

25  arbitration agreement under New York Law?  And we say, yes,

* *denotes audio break.*

1  there is.  And if you need to go to the extrinsic evidence,

2  it's even cleaner, that yes, there is, because you need it

3  in writing, and you need the writing to show that the

4  parties intended arbitration as opposed to the Court, and

5  that's what this shows.  So that's the first primary

6  submission and I've dealt with Mr. Zelbo's points on that.

7         If I can go on to the second point, which is,

8  obviously, that what's being put forward by way of protocol

9  by the U.S. and Canadians, although now different, is not a

10  problem solver, it is a problem creator.  And as Mr. Adler

11  said, it's not because we don't think Court's can function.

12  We say Court's can't function like this.  And the reason

13  Court's can't function like this is because at the end of

14  the day, there will be a long process, a long proceeding, a

15  very expensive one, with an incredible unlikelihood of there

16  being mutual decisions, the exact same decision of this

17  Court and the U.S. Court, the U.S. Court and this Court.

18  And if they are not identical decisions, they are

19  unenforceable.

20         So what that means is we will have gone through a

21  process and come up with completely unenforceable decisions

22  and then what?  And we say that the problems are not the sky

23  is falling problems, but they're real problems at the

24  hearing stage, at the decision stage, and at the appeal

25  stage.   The hearing stage, in our respectful submission,

* *denotes audio break.*

1   are the obvious problems.  And we did talk about them last

2   time.  There are different evidentiary rules in both

3   jurisdictions that each Court is bound to follow.  The

4   Canadian Court has to follow Canadian Evidentiary Law.  The

5   U.S. Court has to follow U.S. Evidentiary Law.  Which means

6   if you have a witness in the box giving evidence and there's

7   an objection in the states that's sustained, the evidence is

8   allowable in Canada, you have a problem.  You've got a joint

9   hearing where the U.S. Court isn't allowed to allow the

10  evidence, the Canadian Court must allow the evidence.  And

11  as soon as that happens, you have different evidentiary

12  records.

13          So you are asking two Courts to come to an

14  identical decision on different evidentiary records.  And

15  that's just one example with respect to admissibility, with

16  respect to --

17          JUSTICE MORAWETZ:  You know, it hasn't stopped

18  the parties in the proceeding in the last four years.

19  They've had how many joint hearings or parallel hearings?

20          MR. GOTTLIEB:  But the issues on those, Your

21  Honor, and the consequences most importantly, are completely

22  different.  I'll get to the consequence first and then I'll

23  come back to the issue.

24          The consequence of a Sales Process Motion before

25  the Court is that the agreement for a sale of an asset or a

                    * *denotes audio break.*

1  business are always subject to the approval of the Canadian

2  and the U.S. Court.  The U.S. Court says yes, the Canadian

3  Court says yes, you've got a deal that can be finalized.

4  The U.S. Court or Canadian Court says no, either one of

5  them, they don't have to be the same decision.  If one of

6  them says no, the deal dies on the table and life moves on.

7  It was a transaction that you sought approval of and you're

8  done.  It's completely different here.  What we're talking

9  about here is a lengthy, complicated, expensive trial where

10  we're trying to allocate proceeds, Your Honor.  And if you

11  come up with different decisions, there is no allocation of

12  proceeds.  That's the end of it.

13            So the consequence of these hearings that we're

14  talking about are completely different than the consequence

15  of a hearing where you're trying to get a Sale Approval

16  Motion.  You will have spent, I won't even give the number,

17  a lot of money, over a lot of time, and the creditors will

18  be no better off because we went through the process, and in

19  fact, will be worse off.  That's the consequence.  It's a

20  completely different consequence.

21            The issues before the Court are also completely

22  different.  And I know we did discuss this last time.  The

23  issues on sale transactions is a binary yes or no.  That's

24  it.  The issues that you're being asked to address or told

25  that the two Courts can properly address on allocation are

                    * *denotes audio break*.

1  incredibly complicated with 40 parties claiming a percentage

2  of literally billions of dollars with you and Judge Gross

3  possibly applying different law, depending on what you

4  decide is the appropriate law and what Judge Gross, pardon

5  me, decides is the appropriate law with different

6  evidentiary records that are not only possible, extremely

7  likely that no one is going to suggest that the laws of the

8  two jurisdictions regarding evidence and the like are the

9  same.

10        You're going to have different evidentiary

11 records and you're going to be asked to divide up as we said

12 last time, for example, $1 billion amongst up to 40 parties

13 based on legal theories, legal argument, different

14 jurisdictional laws, and you have to come to the exact same

15 decision to the dollar, or else the decision's

16 unenforceable.  That is a completely different kettle of

17 fish than a yes or no in the transaction -- should a

18 transaction, or should a transaction not be approved.

19 That's the difference.  And that's why we say the process

20 will not result in enforceable judgment.

21        And then you get to the appeal point, Your Honor

22 and Judge Gross, which is let's say that you are able to

23 come to an -- you are able to come to independent because

24 they have to be independent.  You can't sit as a panel, so

25 you come up with independent decisions that are identical.

*denotes audio break*.

1  In which we say as a practical matter, will not happen.

2           Then you have appeals.  In the United States, you

3  have two automatic rights of appeal.  In Ontario, as you

4  know, we will have no automatic right of appeal.  We'll have

5  to seek leave to appeal.  So you take a situation where you

6  have these two decisions that are the same.  In Canada, a

7  party seeks leave to appeal is denied.  In the U.S., they

8  have an automatic right to appeal, the appeal is granted.

9  They go up another level, if so desired, the appeal is

10  granted.  Therefore, you have an enforceable decision in

11  Canada, a final enforceable decision in Canada that you

12  can't enforce.  It's been overturned the other half of it,

13  so you've got two conflicting decisions.  You can't enforce

14  either of them.

15           And don't forget, when we talk about the appeal

16  route, you have no protocol, no coordination, no nothing

17  between the Court of Appeal of Ontario, if leave is granted,

18  and the various District and Circuit Courts in the United

19  States.  So there's no ability to do anything by way of

20  coordination that's being proposed here. So even if you are

21  able to come to an --

22           JUSTICE MORAWETZ:  All right.  I'm going to move

23  you along, Mr. Gottlieb because I think of this argument was

24  previously provided in June of 2011.  The purpose today is

25  not to review and start again.  It is really to give a

*denotes audio break*.

1  summary of new development and supplementary

2  [indiscernible].

3              MR. GOTTLIEB:  Okay.  Thank you, Your Honor, for

4  that guidance.  I will move on.  Mr. Zelbo was making points

5  about this, as well as, Mr. Bromley on these points about

6  the start --

7              JUSTICE MORAWETZ:  I think we have your point on

8  this.

9              MR. GOTTLIEB:  Okay, thank you very much.

10             JUSTICE MORAWETZ:  And I'll speak for Judge Gross

11 on that.

12                        (Laughter)

13             MR. GOTTLIEB:  I had a feeling.  I'm going to

14 step back and there's another point I have to deal with,

15 Your Honor, but if I could just go get guidance from Judge

16 Gross, thank you.

17             JUSTICE MORAWETZ:  Yes, go ahead.

18             MR. GOTTLIEB:  Thank you, again, Your Honor.  And

19 on behalf of Judge Gross for that guidance.  There is one

20 point, Your Honor, that I do want to deal with regarding

21 scheduling as a result of something that has been said

22 previously.  I understand that Your Honor and the Courts

23 will decide ultimately scheduling matters not --

24             JUSTICE MORAWETZ:  Good.

25             MR. GOTTLIEB:  I'm not -- obviously not

                        * *denotes audio break*.

1    discussing that.  I do want you to know about updates though

2    because some suggestions were made in the context of * to

3    have to in my respectful submission recall.  We, in our

4    view, have to come back to discuss any scheduling matters

5    for a variety of reasons, but there * about where we are on

6    the EMEA claims process, for example.  EMEA put in all its

7    claims, gave particulars at the request of * the Canadian

8    applicants.  We have yet to receive a single response to any

9    EMEA claim.  And I literally mean zero response.  They

10   haven't yet been disallowed.  So when the question became

11   what are the issues involved here, none of the claims have

12   been disallowed yet under the claims, the EMEA claims

13   process order.  So we're starting from there.

14         But I also want to remind, Your Honor, because it

15   was a while ago, we had several discussions with the Court

16   and with my friends on either side, for the Monitor and the

17   Applicant, about discovery process and disclosure,

18   jurisdictional argument.  And it was in March of 2011, that

19   we, on behalf of the EMEA Debtors, entered into an agreement

20   with these two parties about we would negotiate in good

21   faith issues regarding discovery and disclosure.  That

22   hasn't happened because of the mediation.  My friends said

23   they didn't want to engage in that until the mediation.  The

24   issues about jurisdiction motion haven't been discussed

25   either because of that.  But the parties were to have an

                    * *denotes audio break*.

1  opportunity --

2          JUSTICE MORAWETZ:  Well, in your view is that

3  something that is to be determined today?

4          MR. GOTTLIEB:  No, Your Honor, it --

5          JUSTICE MORAWETZ:  Thank you.

6          MR. GOTTLIEB:  If the parties are given an

7  opportunity to deal with scheduling submissions, then my

8  submissions are not necessary today.

9          JUSTICE MORAWETZ:  They are not necessary today.

10          MR. GOTTLIEB:  Thank you very much.  Thank you,

11  Judge Gross for your time, appreciate it.

12          JUSTICE MORAWETZ:  Mr. Ward?

13          MR. WARD:  Thank you and good afternoon, Justice

14  Morawetz and Judge Gross.  My name is David Ward, counsel

15  for the PPF and the Trustee.

16          We endorse and -- we endorse the EMEA position.

17  I do have a few points that are specific to us.  I know a

18  lot's been said and I'll try not to repeat anything that's

19  been said, Your Honor.

20          PPF and the Trustee believe -- we're urging on

21  the Courts to direct this matter to arbitration on the basis

22  of the EMEA submissions that you've heard from my friend.

23  But furthermore, in slightly different points.  There is a

24  final opportunity now, before the Court rules, for the

25  Courts to direct the IFSA parties to negotiate in good faith

                    * *denotes audio break*.

1  finalizing any open terms of an arbitration protocol.  This

2  is a less ambitious task, obviously, than consensually

3  deciding allocation, but if a period of days could be spent

4  usefully directed to that task, it would certainly pay

5  dividends --

6       JUSTICE MORAWETZ:  I'm in the position to decide

7  matters.  I'm not going to be negotiating matters.

8       MR. WARD:  The -- regardless of the forum,

9  Justice Morawetz, you'll note from our submission that we're

10  asking to the core parties and that issue is to be deferred,

11  to be addressed at a later time.

12       JUSTICE MORAWETZ:  Yes.

13       MR. WARD:  One of our main submissions today, and

14  Mr. Gottlieb made it on behalf of EMEA, is that the proof of

15  claim that we filed in November of 2010 has not been

16  answered yet.  It was an incredibly particularized claim.

17  And in terms of process, this isn't just scheduling, this is

18  process, we're saying that the next step is for someone to

19  give us a constructive, simply particularized answer to this

20  claim, so that we can frame the issues, so we can set a fair

21  timetable, and we * exactly what's at stake.  And as I told

22  the Court the several times that we've addressed this point,

23  our claim was 6,500 pages of evidence, 17 witness

24  affidavits, and 5 expert reports, and we haven't heard a

25  word.

               * *denotes audio break*.

1          To this point as well, I'd like to remind Justice

2   Morawetz of the scheduling direction that was made in

3   September 2010, in anticipation of a disallowance of our

4   claim.  We were directed to return to address appropriate

5   timing and procedures in your chambers.  And that's a

6   scheduling order that we have in our minds, as well as,

7   being a useful next step, but it's only useful when people

8   have joined issue on our claims.  So we know what's

9   disputed, what's admitted, and what are the issues that we

10  need to prepare discovery devices for and set timing for.

11         The final point, and I believe this was made by

12  EMEA counsel in the United States is that we share the view

13  that it's appropriate that allocation be decided before

14  there's any final assessment of our claim.  And this makes

15  sense because of the nature of our claims, and the nature of

16  the statutory tests to be applied in deciding our claims,

17  requires that there be some assessment of the relative

18  financial position of the employer which is NNUK and the

19  Canadian Debtors as an element of the statutory tests.  And

20  we say that it makes sense to have the final assessment of

21  our claims follow allocation.  Thank you.

22         JUSTICE MORAWETZ:  Thank you.  Judge Gross, I

23  think it's back over to you.

24         THE COURT:  Good afternoon.

25         MR. O'CONNOR:  Good afternoon, Judge Gross.  Good

                    * denotes audio break.

1   afternoon, Justice Morawetz.  I'm Brian O'Connor --

2           THE COURT:  Yes, sir.

3           MR. O'CONNOR:  -- from Willkie, Farr & Gallagher,

4   LLT, on behalf of the UK Pension Claimant's.  And hopefully,

5   I'm last, but not least.  And I'll try not to repeat

6   anything that any of my colleagues have said.

7           I'd really like to make three points.  One goes

8   to whether or not the parties did agree to best exclusive

9   jurisdiction in this Court and the Canadian Court to decide

10  the merits of the allocation dispute.  Secondly, the timing

11  of a resolution of the allocation dispute or vis-a-vis, the

12  claims that the UK Pension Claimants have filed.  And third,

13  the schedule that has been proposed by the Debtors.

14          With respect to the first point, I, again, will

15  not repeat any of the arguments that have been made by

16  EMEA's counsel with respect to whether the parties, in fact,

17  agree to arbitrate or not.  And, in fact, we were not

18  parties to the IFSA or to the escrow agreements --

19          THE COURT:  Right.

20          MR. O'CONNOR:  -- and really can't lend anything

21  to the issue of what the parties had intended at the time.

22  So what I would like to focus on though, Your Honor, Your

23  Honors is in the event Your Honors decide that you don't

24  choose to grant EMEA's Cross Motion to Compel Arbitration,

25  whether, in fact, your Courts have the exclusive

                        * *denotes audio break*.

1    jurisdiction to decide the merits of the allocation dispute.

2    And it's our position, Your Honor, that you do not.  As we

3    understand the arguments, the U.S. Debtors have said that

4    the whole purpose of the IFSA was one, to agree that upon

5    the sale of assets, the proceeds would be deposited in an

6    escrow account pending the parties working out how they

7    would be distributed.

8              Two, that the parties would attempt in good faith

9    to arrive at a protocol for the resolution of the allocation

10   dispute.  And that, in fact, the parties did attempt to work

11   out in good faith the details, but weren't able to do so.

12   So now the Debtors argue that having failed to do that, the

13   parties in the IFSA and the Escrow Agreements had agreed to

14   best exclusive jurisdiction in the Canadian Court and the

15   U.S. Court.  And they cite two provisions essentially for

16   that, support of that proposition.

17             First, they rely on Section 16(b) of the IFSA.

18   So let's look at 16(b) for a moment.  Now it provides that

19   the parties agree to submit to the non-exclusive

20   jurisdiction, the non-exclusive jurisdiction of the U.S. and

21   the Canadian Court, for purposes of all legal proceedings to

22   the extent relating to "the matters agreed in the

23   agreement".  They also go on to say that any claims

24   concerning matters agree in the agreement, have to be

25   brought before the U.S. Court and the Canadian Court

                    * *denotes audio break*.

1    jointly, if they would affect the U.S. and the Canadian

2    Debtors.

3            So it seems to me, Your Honor, that the critical

4    question for both the Courts is what did the parties agree

5    in the IFSA?  Because that's what the jurisdictional hook

6    is.  So we have to turn to Section 12 for that.  Section 12

7    they agreed to the following.

8            First, they would agree in Section 12(b), to the

9    deposit the sale of the proceeds in an escrow account,

10   subject to an escrow agreement to be negotiated.

11           Second, they agreed to negotiate in good faith to

12   attempt to reach a protocol to resolve the disputes

13   concerning allocation of the sale proceeds.

14           And third, they agreed, importantly, in 12(b),

15   that in no case, shall any distribution from the escrow

16   account occur, unless either one, the parties all agreed on

17   the distribution, or where they failed to reach agreement, a

18   determination was made by the relevant dispute resolver

19   under the terms of an agreed-upon dispute allocation

20   protocol.

21           Now what's conspicuously absent from Section 12

22   is any agreement that in the event the parties were unable

23   to reach agreement on a protocol for an alternative dispute

24   resolution, that they agree to the exclusive jurisdiction of

25   the Canadian and the U.S. Court to determine the merits of

                    * *denotes audio break*.

1  the allocation dispute.

2           And, Your Honor, if you take a look at the Escrow

3  Agreement, I don't think that provides the Debtors with any

4  greater support.  Because I'm looking now, for example, at

5  the Escrow Agreement dated March 19, 2010 with J.P. Morgan.

6  And essentially, it's written to parallel the IFSA

7  Agreement.  Section 21 of that agreement provides again, for

8  the exclusive jurisdiction in this Court and the Canadian

9  Court with respect to claims arising out of or in connection

10  with the Escrow Agreement.

11           Now you have to look at the Escrow Agreement to

12  see what kind of claims could arise out of the Escrow

13  Agreement.  And I think you need to look at Section 5 for

14  that.  And Section 5 provides that the escrow agent shall

15  make a distribution only if one of two things happens.

16  Either the parties agree and jointly direct the agent to do

17  so, or if they enter into, if they enter into an allocation

18  protocol in accordance with Section 12 of the IFSA, the

19  delivery of a decision by the relevant dispute resolver

20  under that protocol.

21           In fact, there is no provision in the Escrow

22  Agreement that says that the escrow agent can make a

23  delivery of funds based on an adjudication by this Court or

24  the Canadian Court.  It only provides for either a joint

25  agreement and a direction by all of the parties or a final

                    * *denotes audio break*.

1    decision by the dispute resolver agreed to under the

2    protocol that's referred to in the IFSA, which hasn't

3    happened.

4              So, Your Honor, that raises the question, where

5    does that leave us?  I think the -- from a legal point of

6    view, that analysis is clear that, I think the Courts cannot

7    come to the conclusion that the parties agree to best

8    exclusive jurisdiction in the Canadian Court and the U.S.

9    Court.  No one's disputing that, for example, Your Honor,

10   that you do not have jurisdiction to adjudicate the issue.

11   The question is do you have exclusive jurisdiction.  And

12   once you don't have exclusive jurisdiction, not only do you

13   have the issue of the Canadian Court having jurisdiction,

14   but you have the issue of the UK Court having jurisdiction.

15   And that raises the need, if it's going to be decided by the

16   Courts, to have more than just the Canadian and U.S. Court

17   involved which only multiplies the difficulties that you've

18   heard people talk about.

19             And it's for that reason, that the UK Pension

20   Claimants submit that it makes sense to proceed in the

21   arbitration group because it avoids the problems that are

22   created by, in this case, a bilateral judicial decision.

23   But we think, in the -- since the parties have not consented

24   to exclusive jurisdiction in these two Courts, you really

25   have to have more than two Courts involved, and therefore,

                    * *denotes audio break.*

1  arbitration presents the only sensible and efficient way to

2  resolve this dispute.

3         Second, Your Honor, with respect to the timing of

4  how the allocation dispute gets resolved vis-a-vis the UK

5  Pension Claimants' claims.  You'll remember, Your Honor,

6  that when the U.S. Debtors moved to enforce the automatic

7  stay, one of the principal arguments that they relied on was

8  the fact that the proceedings in the UK were going to be

9  duplicative of the allocation proceeding.  And, in fact,

10  they told Your Honor at the time, that it made sense not to

11  go forward with the claims, the UK claims, because it would

12  make more sense to see how the pot allocated among all of

13  the debtors to determine whether or not it was reasonable

14  under the UK Statute to require any of the U.S. Debtors to

15  provide financial support for the pension plan.

16         Of course now, they're taking the opposite

17  approach.  Now they're saying it makes sense to have the

18  claims decided first.  And I think under the law, having one

19  -- that being one of the bases that they use to have Your

20  Honor decide to stay those proceedings, that they shouldn't

21  be heard now, to change their tune and say that those

22  proceedings should be -- should occur first.

23         Finally, Your Honor, with respect to the

24  schedule.

25             THE COURT:  Yes.

                     * *denotes audio break.*

1          MR. O'CONNOR:  It was our understanding, based

2    upon the Courts' orders, that the focus of this hearing

3    today was on the allocation dispute.

4          THE COURT:  Absolutely.

5          MR. O'CONNOR:  And not on a schedule for dealing

6    with individual claims.

7          THE COURT:  That's correct.

8          MR. O'CONNOR:  And -- but I would like to say two

9    things about that, Your Honor.  If there is a schedule that

10   Your Honors impose, the first thing that has to be done is

11   the U.S. Debtors have got to respond to the amended proofs

12   of claim that have been filed by the UK Pension Claimants.

13   You'll recall, a little over a year ago, or almost a year

14   ago, the U.S. Debtors made a motion in June of 2011,

15   contending that our claims were too vague.

16         THE COURT:  Right.

17         MR. O'CONNOR:  They were too ambiguous.  They

18   weren't able to respond to them.  So they asked Your Honor

19   to apply Rule 7012 of the Federal Bankruptcy Rules.  And to

20   require us to provide a more definite statement.

21         THE COURT:  Absolutely.

22         MR. O'CONNOR:  We said we had no problem doing

23   that.  We asked for more time.  Your Honor gave us a bit

24   more time.  In the end, we filed a hundred page more

25   definite statement in the form of an adversary complaint.

                    * *denotes audio break.*

1  And under the rules, since you applied 7012, they had 14

2  days to respond to that, which they didn't do, and they

3  still haven't done.  We certainly think it makes sense,

4  before we start talking about discovery, to know what

5  aspects of that pleading do the Debtors object to.  It makes

6  no sense drafting discovery requests, until we know what

7  material facts are in dispute.

8         So we would submit, Your Honor, that if it does

9  come to the point where the Courts are imposing a schedule,

10  the first thing that has to be done is there has to be time

11  built in for them to respond to our complaint before any

12  discovery requests are propounded.

13         THE COURT:  All right.  I appreciate that.

14         MR. O'CONNOR:  And finally, Your Honor, we do not

15  believe our claims are part of the allocation process.  Our

16  claims are independent claims under the UK Law that unlike

17  the EMEA claims, are not dependent upon a finding of a

18  legally cognizable tort of some kind in the United States or

19  in the UK  They're based on the very particular UK Statute

20  which affords a great deal of discretion to the

21  determination's panel to decide whether it's reasonable

22  under all the facts and circumstances to require financial

23  support.

24         So we don't think that our claims should be

25  adjudicated again together with the allocation dispute.

                    **\* *denotes audio break*.**

1  Having said that, however, if Your Honor and Judge Morawetz

2  are disposed to require all these claims to be, and

3  discovery to be done in a consolidated basis at the same

4  time, we would have to be considered a core party with

5  respect to the allocation dispute.  Otherwise, we couldn't

6  be bound by findings of fact or conclusions of law made in

7  that process.

8           THE COURT:  All right.  You've certainly given me

9  some food for thought.  Thank you.  Thank you.

10          MR. O'CONNOR:  Thank you, Your Honor.

11          THE COURT:  Yes.  Is there anyone in Canada to be

12  heard?  Apparently not.

13          JUSTICE MORAWETZ:  No, we are, I believe, *

14  whatever reply issues come after Mr. Bromley.

15          THE COURT:  I think Mr. Bromley has already

16  grabbed the lectern and ready to reply.  Yes, Mr. Bromley?

17          MR. BROMLEY:  Your Honors, I'll be brief.  But

18  there are a couple things I wanted to respond to.

19          First, sitting here over the past hour,

20  particularly, listening to the three Cobreros [ph] from UK,

21  I am taken back to article I read recently that said, when

22  you take any human being and you put a blindfold over them,

23  and put them in a field, they will eventually walk around in

24  circles; notwithstanding express intention to walk into a

25  particular direction.  It's the same thing if you put

                    * *denotes audio break*.

1  somebody in the desert with no points to decide where they

2  are.  Or if you were in an area completely covered by fog

3  out on the ocean.  You will find yourself going around in

4  circles.  And that is exactly what we're doing 18, 20 months

5  after June 2011, because of the smokescreen that is

6  consistently blown at us by the UK Pension parties and the

7  UK Debtors.

8          It is absolutely preposterous to stand here in

9  2013, and say that the allocation theories that the UK

10 parties have put forth, do not completely duplicate their

11 claims.  It is absolutely preposterous.  And I was having an

12 opportunity while I was sitting here to look back on my

13 comments in June 2011, and I said that they would be back

14 and they are back.

15         Every single moment in time that the EMEA claims

16 have been able to come in here and cause trouble, it has

17 forced all of us to walk around in circles.  And what they

18 want us to do is to go into the fog of arbitration, away

19 from these Courts, and walk around in circles again.  It

20 cannot be permitted to happen.  There are no 40

21 jurisdictions that have to take in -- that you have to take

22 into account, Your Honors.  As a matter of fact, we've

23 eliminated Israel, we've eliminated the fourth estate.

24 We're really down to three, maybe four.

25         The joint administrators are all partners in

              * *denotes audio break.*

1   Ernst & Young in London.  They are in control of all of the

2   EMEA Debtors, every single one of them.  If you want to go

3   and have a meeting with the EMEA Debtors, you'd go the

4   offices of Ernst & Young or Herbert Smith in London, and you

5   meet with them all, because they're the same person.  They

6   have a lot of different hats that are sitting behind them,

7   but it's the same person, it's Alan Blunt.  The idea that

8   there are 40 different ones, just crazy.  And is it meant to

9   throw fog into this system, so that we'll continue to walk

10  around in circles.

11          They have quite intentionally, to use a British

12  term, created a "dog's breakfast".  And saying it's not

13  suitable for any of us to sit down and eat it, but they've

14  created it.  And to that extent, they've won.  To the extent

15  that we're sitting here talking about all of their claims

16  being completely part of this exercise, we've won -- they've

17  won.  But we cannot allow this to go back to closed rooms.

18  We need to be out in the clear light of day and solve these

19  issues under the forceful direction of both of these Courts.

20          The UK Pension parties, if you went back and

21  looked at the record in June of 2011, said that they didn't

22  care, just get it done.  Now they care.  Because they've

23  realized the benefit of fog.  Because all of their claims,

24  none of which were filed in June 2011, while premised on a

25  statute created by the legislature in England, are based on

                    * *denotes audio break*.

1  all of the same facts and circumstances that are alleged in

2  the EMEA claims.  So they have successfully, completely

3  intertwined the UK Pension claims with the EMEA claims and

4  then attached them on to the allocation issue.

5          And to the extent that we were talking in June of

6  2009, when we were talking about the IFSA, about the

7  possibility, only the possibility of arbitration, that was

8  before the termites that represent the EMEA claims, got into

9  the wood.  And I have a letter here from June of 2010 from

10 Mr. Carfignini [ph] of Goodman's saying, we just have to

11 stop doing this.  We've created a hundred page protocol over

12 two years -- over a year at that point, and everywhere we

13 turn, it's all about your claims.  And for that reason, we

14 have to put this down and move on to something else.

15          It's three years later, Your Honor, and we're

16 still doing the same thing.  We have to get to Court.  We

17 have to get Court quick.  We have to be doing it in public,

18 without the fog that's going to make us walk around in

19 circles.

20          THE COURT:  Well, you know, apropos to our

21 friends in Canada, the old joke about going to a fight in a

22 hockey game, breaking out.  And to me, this is now a fight.

23 And I'd like to see a bankruptcy case break out --

24              (Laughter)

25          THE COURT:  -- you know, and perhaps we can still

              * *denotes audio break.*

1    accomplish that.

2            MR. BROMLEY:  Well, we are down the street from

3    the Flyers so --

4                    (Laughter)

5            THE COURT:  Yes, yes.

6            MR. BROMLEY:  But, Your Honor, look, the fact of

7    the matter is is that we've done this before, right?  It's

8    not just the sales.  We've had purchase price disputes after

9    the sales, where the EMEA Debtor stood up with us together

10   and said, you guys decide, both of you together, and make  *

11   agree with us.  They were perfectly okay with that.

12           THE COURT:  Yes.

13           MR. BROMLEY:  That was going to be a contested

14   matter.  We were going to have a contested matter in both

15   hearings at the same time.  This Court, Justice Morawetz, on

16   issues relating to a common interest, it was fine with them

17   because it benefitted them.  It is ridiculous that we're

18   still standing here in 2013 and we're not going anywhere, if

19   we follow the path that the EMEA Debtors and now the UK

20   Pension parties would like us to follow.

21           And in terms of Mr. O'Connor's request that we

22   answer things.  Your Honor, we were here in August last

23   year.  We wanted to move forward and move forward quickly.

24           THE COURT:  Yes.

25           MR. BROMLEY:  And, Your Honor, told us to stand

                    * *denotes audio break*.

1   down.

2            THE COURT:  Right.

3            MR. BROMLEY:  You tell us to stand up, and we

4   will move as fast as you tell us to move.  And we want it to

5   be fast.

6            And in terms of the issue that was raised by the

7   Monitor and the Canadian Debtors about an inconsistency

8   between the protocol that was submitted a year and a half

9   ago, and the protocol submitted --

10           THE COURT:  Yes.

11           MR. BROMLEY:  -- this week.  We actually don't

12  think there's substantial differences.  We do leave it up to

13  Your Honors to decide.  We do say though that there have

14  been a couple of things that have changed.  We have

15  dismissed half of the claims of the EMEA Debtors here in the

16  U.S.  That had not happened back then.  We also say that

17  it's very clear, we need to proceed with the UK Pension

18  claims and the EMEA claims together.  That was not addressed

19  at all in the protocol from 2011.  Because of the same facts

20  and circumstances that are being alleged by Mr. O'Connor's

21  clients are the same facts and circumstances that are being

22  alleged by the joint administrators.  They have to be dealt

23  with together and they have to be dealt with first.  We

24  wanted to deal with them first so that the allocation issues

25  would be divorced from the claims issues.  Because once you

                         * *denotes audio break.*

1  realized what the claims were, then we'd have an

2  understanding of the allocation issues of the EMEA Debtors.

3           At this point, frankly, we're fine with moving as

4  fast as possible.  And the schedule that we had proposed on

5  these issues were that we would deal with the EMEA and UK

6  Pension claims and then immediately move into allocation.

7  Even if this is one large hearing and it takes place over a

8  10 or 20 day period, you're going to have to start with

9  something and end with something.  And we don't think

10 there's much difference between saying that week one is EMEA

11 claims and week two is allocation, and saying that's one big

12 hearing.  If we want to call it one big hearing, frankly,

13 that's fine.  We do think, however, that in sequencing that

14 one big hearing, you have to start with the claims issues

15 because the allocation theories that are being advanced by

16 the UK Debtors are entirely dependent on the claims issues.

17          So that is our final submissions, Your Honor.

18 We're --

19          THE COURT:  All right.  And as far as the

20 logistics are concerned of a hearing, we can address those

21 at a later date, should the Courts decide to retain

22 jurisdiction here.

23          MR. BROMLEY:  We're certainly happy to proceed as

24 fast as you and Justice Morawetz can accommodate us.  We

25 have submitted our schedule.

                        * *denotes audio break*.

1           THE COURT:  Yes.

2           MR. BROMLEY:  We disagree vociferously with Mr.

3    O'Connor's thought that discovery couldn't proceed

4    immediately.

5           THE COURT:  All right.

6           MR. BROMLEY:  We think that it's very important

7    for the Courts to tell us what the end date is for trial.

8    And we can backfill everything from there.  And we would

9    encourage you to pick as early a date for those trials as

10   possible.

11          THE COURT:  All right.  All right.

12          MR. BROMLEY:  Thank you.

13          THE COURT:  Thank you, Mr. Bromley.  Mr. Adler,

14   yes?

15          MR. ADLER:  Just one very quick point.  On the

16   question of how many Debtors there are.  It is true that the

17   various EMEA Debtors are represented by the joint

18   administrators, but the allocation dispute resolution

19   process has to produce a separate number for Ireland,

20   France, the UK, Italy, and so on and so forth.  That has to

21   come out at the end of the day.

22          THE COURT:  Sure.

23          MR. ADLER:  So there are those separate

24   decisions.  They can't be decided in bulk for the EMEA

25   Debtors as a whole.  They are separate entities within that,

                    * *denotes audio break*.

1    that have each got to have a number written for them for

2    each of the nine asset sales to the extent that they have

3    claims for each particular sale.

4              THE COURT:  All right.  All right.

5              MR. ADLER:  I think there's nothing else --

6              THE COURT:  Thank you, Mr. Adler.

7              MR. ADLER:  -- to add.

8              THE COURT:  Thank you.  Justice Morawetz does

9    anyone in Canada wish to be heard or do you wish to hear

10   them?

11                        (Laughter)

12             JUSTICE MORAWETZ:  That will conclude matters,

13   Judge Gross.  I suggest we take a five minute recess.

14             THE COURT:  All right.  We'll take a five minute

15   recess or perhaps ten because of the number of people in the

16   courtroom.

17             THE CLERK:  The parties will recess for five

18   minutes.

19              (Recess from 1:13 p.m. to 1:24 p.m.)

20             THE CLERK:  Please rise.

21             THE COURT:   Thank you, everyone.  Please be

22   seated.  Justice Morawetz is back on the bench and I will

23   defer to my colleague to make a few comments.

24             JUSTICE MORAWETZ:  -- Judge Gross.  Judge Gross

25   and I have had a procedural discussion.  We have determined

                    * *denotes audio break*.

1  that we will rule on this matter tomorrow by teleconference

2  at 2:00 p.m.  Judge Gross advises that there is a facility

3  that is available through the Delaware Court.  That will be

4  the contact point.  And those who wish to participate on the

5  call, obviously, you're more than welcome.  And those who

6  want to hear from somebody else, we can do that, too.

7                    (Laughter)

8           JUSTICE MORAWETZ:  Thank you very much for your -

9  -

10          MS. SEGAL:  Your Honor, a point of clarification.

11          JUSTICE MORAWETZ:  Yes.

12          MS. SEGAL:  Cheryl Segal on behalf of BMY.  We

13  did not make our comment on why we should be a core party.

14  If there is going to be a ruling on the allocation protocol

15  and it is going to be that there is an allocation protocol,

16  we have very brief submissions.  We can make them now, we

17  can make them tomorrow at 2:00, whatever Your Honors prefer,

18  but we would like to put it on the record.

19          JUSTICE MORAWETZ:  Judge Gross, how many

20  submissions would be likely to follow in the Delaware Court

21  on this issue?

22          THE COURT:  At least four, probably.

23          JUSTICE MORAWETZ:  Are they going to be brief?

24          THE COURT:  Are they going to be very brief,

25  Counsel?  They promise they're going to be brief, Justice

                    * *denotes audio break*.

1 | Morawetz, but we know better.

2 |                          (Laughter)

3 |                 JUSTICE MORAWETZ:  Well, I do know that you have

4 | other obligations.  I am quite prepared to hear them now if

5 | --

6 |                 THE COURT:  I am, too.  I'm prepared to hear them

7 | now.

8 |                 JUSTICE MORAWETZ:  All right.

9 |                 THE COURT:  Yes.

10 |                JUSTICE MORAWETZ:  Ms. Segal, go ahead.

11 |                THE COURT:  Yes.

12 |                MS. SEGAL:  Thank you.  I don't want to preempt.

13 | I have a counterpart, Mr. Rielo in the United States and he

14 | has arguments under U.S. Law and we submit to those.

15 |                Bank of New York Mellon, which I'll refer to as

16 | BMY, wishes to be included as a core party, should the

17 | Supreme Court make an order approving an allocation

18 | protocol.  I have made my submissions briefly.  I have

19 | written materials and we've made most of them before, but a

20 | lot has said been today about the timetable and the need to

21 | * quickly.  We don't disagree with any of that.  But what we

22 | do want as part of that process is to be part of that

23 | process.  It is the BMY that is asserting the claims on

24 | behalf of the holders of notes under its indentures.  In

25 | both the United States and * both claims approach $4

                          * *denotes audio break.*

1   billion, making BMY the party that has asserted the claim, *

2   one of the largest undisputed claims in both estates.  We

3   understand that there are other constituencies and that

4   some, you know, Movants have chosen to participate in other

5   matters with the bondholder committee.  We do note, however,

6   that as an indenture trustee, we have a responsibility to be

7   the holders of all notes under the indenture, not just those

8   that are * through the committee or in another way.

9           It is not, we would submit, fair, just, or

10  expeditious, or efficient to require BMY to bring two more

11  motions to this Court to make a request for making a stay as

12  is contemplated by the current form of the allocation

13  protocol.  It provides that other parties can request

14  permission to be added as a core party.  We have all the

15  information we require.  It's puzzling and quick, frankly,

16  surprising, that we have to make submissions here today to

17  be added as a core party.  BMY is uniquely situated as a

18  party with huge claims in both estates.  And it would be

19  fair, efficient, cost effective, productive to have them as

20  a core party from the beginning.  And it's puzzling to think

21  of why it would be more fair, or efficient, or procedurally

22  expedient to have them bring more motions.  We have more

23  important things to deal with in Court.  The issues today

24  that have been dealt with make that absolutely clear.  We

25  have a huge stake in the outcome.  Our noteholders have a

                    * *denotes audio break*.

1  huge stake in the outcome.  And it's not in BMY's interest

2  to prolong, or extend, or impeach process.  BMY being

3  excluded, however, may inadvertently had that effect, and we

4  will be back to Court with more motions on the same topic.

5        So we're hoping that the Court will address it

6  and see the significant need and merit as having BMY

7  participate as a core party going forward.  Thank you, Your

8  Honor.

9        JUSTICE MORAWETZ:  Thank you.  Is there anybody

10  else in this Court that would like to follow what Ms. Segal

11  said prior to turning it over to Judge Gross?  Mr. Ward, go

12  ahead, followed by Mr. *.

13        MR. WARD:  Thank you, Justice Morawetz.  We've

14  been left out of the allocation protocol as a core party.

15  We've always said we don't understand why.  There are

16  overlapping issues.  There are common points that are going

17  to need to be decided.  And for us to be bound by them, we

18  need to be part of the protocol.  I had a conversation with

19  Mr. Carfignini.  And I understand that as of today, that the

20  Canadian Debtors are not opposed to us being included, but

21  that is critical from our standpoint.  Thank you.

22        JUSTICE MORAWETZ:  Mr. *.

23        UNKNOWN:  Thank you, Your Honors.  I just wanted

24  to say on behalf of Law Debenture that Mr. * on behalf of

25  the others *.

                    * *denotes audio break.*

1          JUSTICE MORAWETZ:  Thank you.  Those were

2    eloquent answers from the penalty box.

3                    (Laughter)

4          MR. HIRSH:   * Mr. Hirsh again from the Board of

5    Directors.  I didn't think we'd be doing this today, but if,

6    in fact, we are, then I direct that the Courts * core party

7    given that they're EMEA Defendants to the EMEA claims to the

8    extent that the claims are to be dealt with and then

9    coordinated * the allocation issue.  Thank you.

10         JUSTICE MORAWETZ:  Okay.  One more.

11         MR. PALMERS:  Yeah, one more, brief.  Judge

12   Morawetz, Judge Gross, John Palmers on behalf of the

13   Wilmington Trust National Association *.  We went around in

14   April of 2011 and found * BMY Mellon.  But we're involved in

15   the recent mediation process and have had a number of

16   discussions with the Bromley stakeholders, primarily the *

17   and the representative of the account creditor class.

18   Wilmington Trust is not seeking to be added as a core party.

19   So we wrote a letter last week to the Monitor's counsel

20   giving confirmation that we exercised * any significant

21   developments regarding the allocation process, especially

22   ones that may result in * or effect the value * noteholders.

23   We have yet to receive a response to that letter.  And based

24   on the protocols that we sought for today's hearing, we had

25   some concerns which have been alleviated since for the most

                    * denotes audio break.

1    part.  And as such, we were just looking for some comfort

2    regarding the information * to the indenture trustee on

3    behalf of our noteholders and the specific issues that

4    affect our interest.

5              JUSTICE MORAWETZ:  Thank you.  Okay, Judge Gross,

6    over to you.  And at the conclusion of the submissions from

7    the core party, perhaps could then ask you just to close the

8    proceedings for today.

9              MR. RIELO:  Good afternoon, Your Honor.

10             THE COURT:  Good afternoon.

11             MR. RIELO:  Good afternoon, Justice Morawetz.

12   Michael Rielo for -- from Latham & Watkins for Bank of New

13   York Mellon.

14             I won't repeat and I do adopt everything that my

15   colleague, Ms. Segal had said for -- with respect to Bank of

16   New York's position.  Just a couple of points that I would

17   make with respect to the U.S.  Obviously, Section 1109 of

18   the Bankruptcy Code does give us the right to raise, and

19   appear, and be heard on any issue, including this one.

20   You've heard Mr. Hodara say on behalf of the Committee, that

21   the Committee supports, obviously, the Bank of New York

22   being a core party.

23             In my view, our inclusion as a core party would

24   not make the litigation or arbitration process more unwieldy

25   or inefficient.  In fact, I think we would help streamline

                    * denotes audio break.

1    things a bit to have more parties under the tent than fewer.

2    Obviously, if we are a core party, we will coordinate to the

3    maximum extent possible, our efforts, so that there is no

4    overlapping inefficiencies or whatnot.  And I'd just leave

5    it at that.

6              THE COURT:  All right, thank you, sir.

7              MR. RIELO:  Thank you.

8              THE COURT:  Thank you.  Yes?

9              MR. GUINEY:  Good afternoon, again, Judge Gross,

10   Justice Morawetz.  For the record, Brian Guiney, Patterson,

11   Belknap, Webb & Tyler for Law Debenture.

12             Your Honor, I just rise to echo what Mr. Rielo

13   said and also to point out that, excuse me, Law Debenture is

14   the only party in the courtroom today, I believe, that

15   speaks for all of the holders of the NNCC notes.  In that

16   respect, we do bring a unique perspective to the case.  We

17   are a unique creditor in the case.  And as I noted earlier

18   today, Your Honor, we believe that Section 1109 is

19   dispositive on this issue.  We think you could rule on this

20   issue without requiring motion practice.  But, of course, if

21   the Court does want the motion practice, we would ask

22   permission to file a motion at whatever time Your Honor

23   directs.

24             THE COURT:  All right.  Thank you.

25             Mr. GUINEY:  Thank you, Your Honors.

                        * *denotes audio break*.

1          THE COURT:  You bet.  Anyone else on this issue?

2                    (No audible response.)

3          THE COURT:  All right.  I think we have concluded

4  for the day then, Justice Morawetz.

5          JUSTICE MORAWETZ:  All right.

6          THE COURT:  We can stand in recess.  Call in on

7  CourtCall for the call tomorrow at 2:00 p.m.  And we will

8  rule then and address other issues as well.  All right,

9  Counsel, thank you.

10          ALL:  Thank you, Your Honor.

11          THE COURT:  Good day to everyone.

12

13     (Whereupon, at 1:33 p.m., the hearing was adjourned.)

14

15                    CERTIFICATION

16       I certify that the foregoing is a correct

17  transcript from the electronic sound recording of the

18  proceedings in the above-entitled matter.

19

20

21  _____        8 March 2013
22  Traci L. Calaman, Transcriber                Date
23




                    * *denotes audio break.*

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **a.m**(2) 1:15  7:1 | | **adler**(57) 2:34  9:1  9:2  9:3  9:7  9:19  9:23 | | **agreement**(86) 16:8  16:13  19:14  19:22 | | **almost**(5) 23:16  32:10  38:18  56:5  103:13 | |
| **aaa**(1) 62:21 | | 10:1  55:11  55:13  55:15  55:18  55:21  56:10 | | 21:10  23:24  23:24  26:9  26:18  26:22  26:25 | | **alone**(2) 21:6  38:20 | |
| **abbott**(16) 1:23  7:6  7:7  7:9  7:10  7:15 | | 56:21  56:23  57:3  57:5  57:7  57:22  59:12 | | 27:1  27:2  27:10  27:17  28:7  28:12  28:17 | | **along**(5) 53:4  62:24  62:24  62:25  91:23 | |
| 7:16  7:17  8:18  8:20  8:22  10:5  10:9  10:12 | | 59:14  59:25  60:2  60:8  60:12  62:1  62:4 | | 28:21  28:23  28:25  29:3  29:6  29:10  29:12 | | **already**(5) 22:9  67:3  74:22  78:3  105:15 | |
| 10:24  11:2 | | 62:6  62:11  62:13  63:19  63:23  64:4  64:25 | | 29:15  29:23  29:24  30:5  31:13  33:10  33:12 | | **also**(35) 7:23  7:25  12:1  12:13  13:21  15:4 | |
| | | 65:2  66:21  66:23  67:5  68:15  68:19  69:7 | | 33:13  35:17  35:18  36:5  36:10  38:18  41:4 | | 17:2  18:7  20:23  26:13  41:11  42:23  45:2 | |
| **abetting**(1) 76:24 | | 72:2  72:22  74:7  75:4  77:23  77:25  79:1 | | 41:22  42:1  42:17  52:9  61:20  64:5  67:14 | | 45:24  46:3  50:2  52:12  53:18  60:24  63:3 | |
| **abid**(1) 2:13 | | 82:6  87:10  112:13  112:15  112:23  113:5 | | 67:24  68:2  70:18  72:20  72:23  73:8  80:24 | | 66:9  68:23  70:1  70:13  70:15  75:9  76:9 | |
| **abide**(1) 46:23 | | 113:6  113:7 | | 81:7  81:17  82:20  82:21  83:7  83:24  84:1 | | 76:14  79:18  80:1  89:21  93:14  98:23 | |
| **ability**(5) 23:7  37:10  40:2  49:9  91:19 | | | | 84:4  84:7  84:14  85:11  85:15  85:16  85:17 | | 110:16  120:13 | |
| **able**(10) 50:15  56:7  58:20  59:23  90:22 | | **adler's**(1) 78:9 | | 85:20  86:25  88:25  93:19  98:23  98:24 | | | |
| 90:23  91:21  98:11  103:18  106:16 | | **administer**(1) 64:9 | | 99:10  99:17  99:22  99:23  100:3  100:5 | | **alterations**(1) 23:22 | |
| | | **administered**(1) 1:6 | | 100:7  100:7  100:10  100:11  100:13  100:22 | | **alternative**(2) 20:19  99:23 | |
| **about**(73) 7:13  9:5  9:14  11:13  11:25  13:9 | | **administration**(1) 47:11 | | 100:25 | | **although**(2) 74:22  87:9 | |
| 13:21  16:14  18:18  19:1  19:21  23:6  24:12 | | **administrative**(1) 80:11 | | **agreements**(6) 21:13  21:19  21:25  70:15 | | **always**(4) 23:8  62:22  89:1  117:15 | |
| 24:21  27:11  27:23  29:8  29:17  32:18  34:18 | | **administrator**(3) 5:27  32:19  62:23 | | 97:18  98:13 | | **amazing**(2) 19:11  19:11 | |
| 35:1  42:14  42:21  43:18  43:25  45:17  46:11 | | **administrators**(8) 17:2  18:6  18:9  19:16 | | | | **ambiguity**(3) 31:16  31:23  86:2 | |
| 47:20  54:23  55:22  55:23  56:4  57:23  60:4 | | 32:22  106:25  110:22  112:18 | | **agreement's**(1) 29:21 | | **ambiguous**(5) 31:14  31:15  31:19  31:23 | |
| 60:8  63:10  63:12  63:16  65:20  67:14  67:17 | | | | **agrees**(2) 41:13  52:9 | | 103:17 | |
| 71:20  72:4  72:13  72:15  74:7  79:7  80:3 | | **administrator's**(1) 33:6 | | **ahead**(6) 25:2  35:3  35:14  92:17  115:10 | | | |
| 80:18  81:17  82:24  86:5  88:1  89:9  89:14 | | **admissibility**(3) 65:20  66:4  88:15 | | 117:12 | | **ambitious**(1) 95:2 | |
| 91:15  92:5  92:5  93:1  93:5  93:17  93:20 | | **admissible**(1) 32:16 | | | | **amended**(5) 17:10  38:9  57:2  57:3  103:11 | |
| 93:24  101:18  103:9  104:4  107:15  108:6 | | **admitted**(1) 96:9 | | **aiding**(1) 76:23 | | **amendment**(1) 18:4 | |
| 108:6  108:13  108:21  110:7  115:20 | | **adopt**(7) 38:12  46:22  47:6  47:17  51:7 | | **akin**(3) 2:11  5:14  52:1 | | **america**(3) 5:1  5:1  75:6 | |
| | | 54:14  119:14 | | **alan**(1) 107:7 | | **americas**(2) 3:17  3:38 | |
| **about-face**(2) 67:25  86:20 | | | | **albeit**(1) 44:12 | | **among**(4) 8:15  10:14  20:6  102:12 | |
| **abovenetitled  (1)** 121:18 | | **adopted**(1) 59:18 | | **alberto**(1) 3:23 | | **amongst**(2) 11:23  90:12 | |
| **absence**(2) 60:8  60:8 | | **advanced**(1) 115:15 | | **aligned**(2) 37:1  57:15 | | **amount**(6) 11:19  12:1  24:13  24:13  73:4 | |
| **absent**(3) 26:9  26:11  99:21 | | **advani**(1) 3:30 | | **all**(112) 8:25  9:25  11:4  11:8  11:17  11:18 | | 74:23 | |
| **absolutely**(10) 16:18  19:6  29:10  42:18 | | **adversary**(6) 66:12  67:1  103:25 | | 12:7  13:11  14:7  14:21  16:16  16:24  16:25 | | | |
| 68:15  103:14  103:21  106:8  106:11  116:24 | | **advises**(1) 114:2 | | 18:14  18:19  20:21  20:21  20:22  20:25 | | **analysis**(2) 41:8  101:6 | |
| | | **advisors**(1) 6:9 | | 22:20  22:21  23:6  27:2  28:12  29:14  32:12 | | **and**(301) 7:4  7:4  7:5  7:12  7:13  7:23  7:23 | |
| **accept**(3) 38:24  39:1  85:6 | | **advocating**(1) 70:23 | | 34:8  35:10  36:5  36:13  37:7  37:11  37:20 | | 7:25  8:4  8:6  8:12  8:15  8:21  8:24  9:7  9:12 | |
| **acceptable**(1) 8:25 | | **affect**(2) 99:1  119:4 | | 38:19  38:25  39:18  42:17  43:14  48:18 | | 9:13  9:16  10:1  10:9  10:15  10:18  10:19 | |
| **accepted**(1) 65:23 | | **affected**(1) 50:12 | | 49:13  50:8  50:21  51:7  53:1  53:20  54:24 | | 10:20  10:25  11:5  11:9  11:22  11:24  12:1 | |
| **access**(1) 75:1 | | **affidavit**(6) 32:3  32:7  32:9  32:10  82:11 | | 55:14  58:16  58:17  58:17  60:12  61:4  62:10 | | 12:3  12:7  12:8  12:10  12:13  12:16 | |
| **accessed**(1) 20:2 | | 86:9 | | 63:15  66:17  67:16  69:13  71:2  74:4  74:10 | | 12:19  12:21  12:23  13:3  13:6  13:10  13:13 | |
| **accommodate**(1) 111:24 | | | | 75:20  76:5  77:10  79:6  79:6  81:17  85:7 | | 13:17  13:19  14:4  14:5  14:8  14:11  14:17 | |
| **accommodation**(2) 7:24  11:6 | | **affidavits**(1) 95:24 | | 85:24  86:4  86:6  86:7  86:8  86:9  86:14 | | 14:19  14:20  14:21  14:23  14:24  15:3  15:8 | |
| **accomplish**(1) 109:1 | | **affords**(1) 104:20 | | 86:14  86:21  91:22  93:6  98:21  99:16 | | 15:10  15:14  15:15  15:17  15:22  15:22 | |
| **accomplished**(1) 37:8 | | **after**(14) 13:8  13:15  14:13  14:15  30:6 | | 100:25  102:12  104:13  104:22  105:2  105:8 | | 15:23  16:3  16:7  16:10  16:12  16:16  16:18 | |
| **accordance**(3) 8:3  83:25  100:18 | | 32:5  32:23  40:4  76:19  77:11  81:20  105:14 | | 106:17  106:25  107:1  107:5  107:15  107:23 | | 16:23  17:1  17:3  17:4  17:13  17:23  17:24 | |
| **according**(1) 48:9 | | 106:5  109:8 | | 108:1  108:13  109:11  111:19  112:5  112:11 | | 18:2  18:5  18:9  18:10  18:11  18:11  18:18 | |
| **account**(9) 8:1  13:11  23:23  82:19  98:6 | | | | 112:11  113:4  113:4  113:14  115:8  116:7 | | 18:19  18:20  18:22  18:23  18:25  19:3  19:4 | |
| 99:9  99:16  106:22  118:17 | | **afternoon**(8) 94:13  96:24  96:25  97:1  119:9 | | 116:14  120:6  120:15  120:24  121:3  121:5 | | 19:4  19:5  19:7  19:10  19:12  19:13  19:13 | |
| | | 119:10  119:11  120:9 | | 121:8  121:10 | | 19:14  19:14  19:18  19:20  19:21  19:24 | |
| **accountants**(1) 31:21 | | | | | | 19:25  20:4  20:5  20:11  20:14  20:15  20:18 | |
| **accounting**(1) 65:8 | | **again**(25) 21:20  22:6  22:18  29:21  31:17 | | **alleged**(3) 108:1  110:20  110:22 | | 20:20  20:21  20:22  21:4  21:6  21:6 | |
| **accruing**(1) 47:9 | | 40:14  40:17  40:17  54:7  78:8  80:1  81:17 | | **allen**(3) 3:14  54:1  54:2 | | 21:11  21:17  21:18  21:18  21:20  21:20 | |
| **acquired**(1) 77:20 | | 83:4  84:24  85:20  85:25  86:13  91:25  92:18 | | **alleviated**(1) 118:25 | | 21:24  21:24  21:25  22:1  22:2  22:6  22:6 | |
| **act**(4) 26:8  59:18  60:13  64:5 | | 97:14  100:7  104:25  106:19  118:4  120:9 | | **allocate**(4) 17:15  61:6  78:20  89:10 | | 22:7  22:8  22:14  22:18  22:18  22:18  22:23 | |
| **active**(2) 18:20  52:13 | | | | **allocated**(2) 13:14  102:12 | | 22:25  23:2  23:5  23:9  23:16  23:17  23:22 | |
| **actual**(2) 46:9  64:18 | | **against**(9) 22:25  38:23  44:11  48:21  70:6 | | **allocation**(121) 15:5  15:12  15:14  16:6 | | 23:24  23:25  24:1  24:4  24:4  24:5  24:5 | |
| **actually**(13) 7:18  17:25  32:13  40:13  60:3 | | 70:13  73:12  76:22  77:9 | | 17:22  18:25  19:3  23:4  23:9  23:13  24:24 | | 24:11  24:13  24:19  25:3  25:3  25:10  25:11 | |
| 60:25  62:14  63:20  70:16  76:11  77:20  85:7 | | | | 28:8  28:10  28:14  28:15  29:7  30:2  30:2 | | 25:18  25:23  26:3  26:9  26:13  27:2  27:2 | |
| 110:11 | | **agent**(3) 100:14  100:16  100:22 | | 30:8  33:2  35:24  37:18  38:3  38:23  38:25  39:6 | | 27:4  27:7  27:9  27:11  27:14  27:16  27:16 | |
| | | **ago**(7) 26:3  45:6  46:11  93:15  103:13 | | 39:10  39:14  39:22  40:19  40:20  41:13 | | 27:18  27:19  27:22  28:5  28:24  29:4  29:5 | |
| **adam**(2) 5:7  48:3 | | 103:14  110:9 | | 41:17  42:5  43:18  43:22  43:25  44:5  45:4 | | 29:13  29:21  30:9  30:18  30:20  30:23  31:4 | |
| **add**(2) 10:22  113:7 | | | | 45:7  45:19  46:14  47:15  47:21  48:6  48:10 | | 31:7  31:10  31:24  32:5  32:15  32:18  32:22 | |
| **added**(3) 116:14  116:17  118:18 | | **agree**(40) 10:21  28:6  28:12  28:13  28:25 | | 48:12  48:15  49:1  49:9  56:2  58:20  61:21 | | 33:1  33:7  33:9  33:14  34:7  35:25  35:25 | |
| **addition**(4) 13:15  13:22  49:22  49:24 | | 30:1  30:2  30:3  30:8  30:9  31:5  32:25  38:7 | | 67:17  69:22  70:16  70:24  71:9  72:14  72:19 | | 36:1  36:12  36:22  36:22  36:23  36:25  37:3 | |
| **additional**(1) 13:8 | | 41:14  44:25  48:11  49:17  58:6  59:11  59:23 | | 72:23  73:16  73:20  73:24  74:13  74:14 | | 37:5  37:6  37:10  37:11  37:14  37:15  37:16 | |
| **address**(20) 8:18  17:12  42:13  42:16  44:4 | | 62:18  71:19  79:16  80:13  80:23  81:5  81:19 | | 74:17  75:18  75:19  76:17  76:18  78:21 | | 37:23  38:2  38:7  38:13  38:20  38:22  38:25 | |
| 49:23  51:15  51:16  56:13  56:21  72:17 | | 83:14  83:20  97:8  97:17  98:4  98:19  98:24 | | 78:21  79:4  79:9  79:23  81:5  81:19  83:7 | | 39:6  39:6  39:9  39:11  39:11  39:19  39:21 | |
| 77:9  77:17  81:24  89:25  96:4  111:20  117:5 | | 99:4  99:8  99:24  100:16  101:7  109:11 | | 83:13  83:21  83:22  83:24  84:18  85:1  85:14 | | 39:23  40:2  40:4  40:5  40:9  40:9  40:10 | |
| 121:8 | | | | 85:22  86:16  89:11  89:25  95:3  96:13  96:21 | | 40:15  40:17  40:18  40:20  41:6  41:7  41:8 | |
| | | **agreed**(30) 33:15  36:6  36:12  39:8  39:11 | | 97:10  97:11  98:1  98:9  99:13  99:19  100:1 | | 41:14  41:14  41:15  41:21  41:23  42:3  42:5 | |
| **addressed**(9) 25:12  63:21  65:6  65:22 | | 41:22  41:25  48:8  54:19  54:21  58:5  66:10 | | 100:17  102:4  102:9  103:3  104:15  104:25 | | 42:6  42:14  42:20  42:21  42:22  43:2  43:5 | |
| 71:10  71:13  95:11  95:22  110:18 | | 68:5  68:8  69:23  69:24  70:9  75:14  79:24 | | 105:5  106:9  108:4  110:24  111:2  111:6 | | 43:16  43:17  43:18  43:20  43:22  43:25  44:7 | |
| | | 79:25  80:8  81:23  84:22  98:13  98:22  99:7 | | 111:11  111:15  112:18  114:14  114:15 | | 44:13  44:15  44:17  44:19  44:21  44:24 | |
| **addressing**(4) 13:25  57:13  60:9  75:11 | | 99:11  99:14  99:16  101:1 | | 115:17  116:12  117:14  118:9  118:21 | | 44:24  45:6  45:8  45:10  45:11  45:13  45:14 | |
| **adjourned**(1) 121:13 | | | | | | 45:16  45:16  45:20  46:4  46:5  46:6  46:13 | |
| **adjudicate**(1) 68:24  101:10 | | **agreed-upon**(5) 42:6  85:5  85:6  85:8  99:19 | | **allotted**(1) 11:19 | | 46:17  46:19  46:20  46:22  46:22  46:24  47:2 | |
| **adjudicated**(2) 14:10  104:25 | | **agreeing**(1) 70:14 | | **allow**(8) 20:3  24:18  60:24  75:14  77:16 | | 47:6  47:8  47:10  47:12  47:17  47:19  47:25 | |
| **adjudication**(6) 44:5  44:5  45:5  45:7  47:16 | | | | 88:9  88:10  107:17 | | 48:4  48:4 | |
| 47:19  100:23 | | | | **allowable**(1) 88:8 | | | |
| **adjusted**(1) 73:9 | | | | **allowed**(3) 43:15  76:12  88:9 | | | |
| | | | | **allowing**(1) 45:7 | | | |
| | | | | **allows**(3) 45:19  45:21 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**and**(301) 48:5 48:7 48:8 48:10 48:11 48:11 48:12 48:14 48:17 48:21 48:21 48:23 49:3 49:3 49:6 49:9 49:20 49:23 49:23 50:7 50:10 50:13 50:20 50:22 50:24 51:7 51:15 51:17 52:6 52:17 52:19 52:25 53:2 53:3 53:13 53:18 54:1 54:10 54:12 54:12 54:13 55:3 55:22 56:3 56:6 56:11 56:12 56:20 56:20 57:16 58:1 58:3 58:10 58:10 58:13 58:20 59:4 59:9 59:17 59:19 59:20 60:8 60:10 60:13 60:14 60:21 60:23 61:4 61:6 61:6 61:14 61:17 61:21 62:2 62:7 62:7 62:9 62:25 63:1 63:6 63:13 63:16 63:16 64:1 64:9 64:19 65:3 66:8 67:8 67:9 67:20 67:22 67:25 68:7 68:12 69:1 69:14 69:19 70:8 70:11 70:24 71:2 71:5 71:17 71:22 71:23 72:1 72:3 72:6 72:10 72:17 73:3 73:8 73:9 73:12 73:15 73:16 73:20 73:25 74:1 74:3 74:8 74:13 74:13 74:19 75:6 75:7 75:10 75:10 75:14 75:18 76:2 76:20 76:20 76:23 77:3 77:5 77:7 77:8 77:9 77:12 77:17 78:1 78:3 78:12 78:13 78:13 78:14 78:24 79:2 79:10 79:11 79:12 79:19 79:21 79:23 80:1 80:5 80:6 80:7 80:7 80:8 80:16 80:17 80:19 80:20 80:22 80:24 81:3 81:6 81:7 81:7 81:9 81:10 81:13 81:15 81:17 81:21 81:21 81:22 81:23 82:1 82:6 82:10 82:12 82:12 82:17 82:18 82:23 82:24 82:25 83:1 83:1 83:6 83:9 83:11 83:19 84:7 84:9 84:10 84:13 84:17 84:18 84:20 84:24 85:4 85:5 85:10 85:25 86:1 86:3 86:7 86:7 86:8 86:11 86:11 86:13 86:17 86:19 86:20 86:23 86:25 87:1 87:3 87:4 87:6 87:9 87:10 87:12 87:17 87:17 87:18 87:21 87:22 87:22 87:24 88:1 88:6 88:10 88:14 88:21 88:22 89:2 89:6 89:7 89:10 89:17 89:18 89:22 90:2 90:4 90:8 90:11 90:14 90:19 90:21 90:22 91:15 91:18 91:18 91:25 92:1 92:10 92:14 92:18 92:22 93:9 93:16 93:16 93:17 93:18 93:21 94:13 94:14 94:15 94:16 94:18 94:20 95:10 95:13 95:17 95:21 95:21 95:24 95:24 96:5 96:5 96:9 96:9 96:10 96:11 96:14 96:15 96:18 96:19 97:4 97:5 97:9 97:12 97:17

**and**(135) 97:20 98:2 98:10 98:13 98:14 98:15 98:20 98:23 99:1 99:14 99:25 100:2 100:6 100:8 100:13 100:14 100:16 100:25 101:8 101:11 101:15 101:16 101:19 101:25 102:1 102:9 102:18 102:21 103:5 103:8 103:19 104:1 104:2 104:14 104:22 105:1 105:2 105:16 105:22 105:23 106:4 106:6 106:9 106:11 106:13 106:14 106:14 106:17 106:19 107:3 107:4 107:8 107:12 107:13 107:14 107:18 107:20 108:1 108:3 108:5 108:9 108:12 108:13 108:14 108:15 108:22 108:23 108:25 109:10 109:10 109:18 109:19 109:21 109:23 109:25 110:3 110:4 110:6 110:7 110:8 110:9 110:18 110:20 110:21 110:23 111:4 111:5 111:6 111:7 111:9 111:9 111:11 111:11 111:19 111:24 112:8 112:8 112:22 112:22 113:22 113:25 114:4 114:5 114:15 115:13 115:14 115:19 115:20 115:25 116:3 116:15 116:18 116:20 117:1 117:3 117:6 117:6 117:17 117:19 118:8 118:14 118:15 118:17 118:23 119:1 119:3 119:6 119:14 119:18 119:19 120:4 120:13 120:17 120:17 121:7 121:8

**andren**(1) 4:22

**andrew**(1) 4:3

**ann**(1) 1:24

**another**(9) 33:25 42:15 47:3 49:3 56:8 72:1 91:9 92:14 116:8

**answer**(7) 16:11 16:12 77:13 77:16 82:17 95:19 109:22

**answered**(1) 95:16

**answers**(1) 118:2

**anthony**(1) 51:13

**anti-court**(1) 55:16

**anticipation**(1) 96:3

**any**(60) 8:16 8:17 9:4 13:4 15:18 17:13 17:16 17:16 19:17 19:18 20:4 20:11 21:14 22:11 22:22 24:17 25:10 27:24 33:15 38:19 39:23 39:24 41:24 42:1 43:22 50:8 57:16 59:4 63:6 63:17 64:10 66:3 66:3 70:25 75:21 76:1 77:12 77:19 77:23 79:16 83:5 84:2 84:6 93:4 93:8 95:1 96:14 97:6 97:15 98:23 99:15 99:22 100:3 102:14 104:11 105:22 107:13 115:21 118:20 119:19

**anybody**(2) 58:6 117:9

**anyone**(9) 24:16 30:16 55:8 58:5 58:19 67:18 105:11 113:9 121:1

**anything**(9) 8:9 16:3 37:4 45:12 66:2 91:19 94:18 97:6 97:20

**anytime**(1) 57:17

**anyway**(1) 50:17

**anywhere**(2) 33:18 109:18

**apologize**(1) 38:2

**apparent**(2) 12:14 17:23

**apparently**(1) 105:12

**appeal**(16) 14:7 50:17 58:13 59:7 60:4 87:24 90:21 91:3 91:4 91:5 91:7 91:8 91:8 91:9 91:15 91:17

**appeals**(5) 57:15 58:10 59:6 70:11 91:2

**appear**(4) 25:24 64:23 64:24 119:19

**appearances**(1) 4:14

**applicable**(1) 70:2

**applicant**(1) 93:17

**applicants**(1) 93:8

**application**(1) 14:3

**applied**(3) 72:22 96:16 104:1

**applies**(2) 69:1 69:22

**apply**(6) 59:17 61:9 83:12 83:14 83:21 103:19

**applying**(1) 90:3

**appoint**(4) 60:18 62:18 62:19 62:23

**appointed**(3) 60:20 64:15 74:19

**appointment**(2) 61:8 61:8

**appraisal**(1) 65:9

**appreciate**(6) 7:4 12:20 53:6 78:1 94:11 104:13

**approach**(5) 51:4 60:19 60:21 102:17 115:25

**appropriate**(9) 9:21 20:6 24:20 63:1 73:22 90:4 90:5 96:4 96:13

**approval**(6) 40:11 79:9 79:17 89:1 89:7 89:15

**approve**(2) 33:15 80:25

**approved**(3) 33:14 48:6 90:18

**approving**(1) 115:17

**april**(1) 118:14

**apropos**(1) 108:20

**arbitrability**(1) 26:20

**arbitral**(4) 59:8 59:21 62:19 63:25

**arbitrate**(9) 26:9 41:16 44:11 44:21 44:22 52:9 64:8 67:14 97:17

**arbitrated**(1) 67:18

**arbitration**(95) 12:24 16:8 16:13 25:9 25:11 26:8 26:8 26:11 26:15 26:18 26:22 26:25 27:10 27:12 27:17 27:24 28:12 28:16 28:17 28:23 29:3 29:10 29:15 31:13 31:19 32:25 33:10 33:12 35:17 35:18 35:18 35:19 36:3 36:5 38:8 38:13 44:5 44:9 44:15 44:16 44:17 44:19 44:25 45:2 45:2 45:24 46:3 50:15 51:14 58:21 59:16 59:17 59:18 60:9 60:13 60:16 61:1 61:9 62:14 62:16 62:22 63:3 63:7 63:12 64:5 64:7 64:9 64:11 65:11 65:13 65:16 65:18 67:7 67:20 67:21 67:23 68:2 68:7 68:8 68:21 76:7 79:16 80:19 80:24 85:22 86:25 87:4 94:21 95:1 97:24 101:21 102:1 106:18 108:7 119:24

**arbitrations**(2) 36:25 61:12

**arbitrator**(14) 20:9 21:7 21:8 23:15 36:16 36:18 36:21 46:5 50:15 60:18 63:24 64:10 64:23 86:11

**arbitrator's**(1) 63:13

**arbitrators**(19) 31:21 36:18 36:21 36:24 37:7 45:8 46:6 58:23 58:25 60:17 60:20 60:25 61:2 61:10 61:15 62:17 63:19 72:6 74:18

**arcade**(1) 40:13

**are**(185) 7:25 8:5 10:10 10:11 11:14 12:3 13:2 15:22 16:15 17:12 18:9 18:14 20:7 20:24 20:25 22:18 23:2 23:4 23:18 23:23 24:14 24:15 26:23 27:3 27:19 29:11 29:25 30:3 31:8 36:6 36:11 36:8 38:15 38:18 39:5 40:16 40:22 42:3 42:7 42:17 43:12 43:14 43:15 45:4 45:17 46:1 46:2 46:6 46:17 47:9 47:12 47:18 48:14 48:21 49:4 49:16 49:20 50:11 50:11 50:21 51:14 52:8 53:2 55:3 55:16 56:25 57:8 57:22 57:23 58:8 58:17 59:9 60:17 61:2 61:4 61:18 61:23 61:24 62:2 62:7 62:9 62:16 63:9 64:17 65:10 65:11 65:12 66:8 67:8 68:16 70:21 70:23 71:9 71:12 71:14 71:15 71:24 73:19 73:24 74:2 74:2 74:18 74:20 74:24 74:25 75:21 76:2 76:4 76:23 77:16 79:6 80:25 81:12 81:15 85:13 85:15 86:2 86:7 87:18 87:18 87:22 88:1 88:2 88:13 88:21 89:1 89:14 89:21 89:25 90:6 90:8 90:22 90:23 90:25 91:6 91:20 91:21 104:7 94:6 94:8 94:9 94:17 96:9 101:21 104:7 104:9 104:2 104:15 104:16 104:17 105:2 105:13 105:18 106:2 106:16 106:20 106:25 107:1 107:6 107:8 107:25 108:1 109:2 110:20 110:21 110:21 111:15 111:16 111:20 112:16 112:17 112:23 112:25 114:23 114:24 116:3 116:8 117:15 117:16 117:16 117:20 118:6 118:8 118:22 120:17

**area**(2) 73:2 106:2

**argue**(3) 44:21 45:21 98:12

**argued**(3) 26:1 39:20 59:20

**argues**(1) 34:9

**arguing**(3) 44:16 57:12 62:3

**argument**(24) 10:16 12:17 13:3 13:8 13:18 19:5 29:17 31:12 40:16 40:17 41:13 44:12 44:14 44:21 64:22 68:13 68:23 69:1 78:1 82:2 85:23 90:13 91:23 93:18

**arguments**(21) 10:15 10:20 19:15 23:18 23:20 24:21 34:19 38:12 38:14 40:3 40:12 40:18 41:14 45:17 46:17 48:14 83:23 97:15 98:3 102:7 115:14

**arise**(2) 57:20 100:12

**arising**(3) 31:2 31:4 100:9

**around**(12) 40:21 41:2 69:2 69:4 85:13 105:23 106:3 106:17 106:19 107:10 108:18 118:13

**arrangements**(2) 56:12 56:21

**arrive**(1) 98:9

**arrived**(2) 9:13 79:23

**arsht**(1) 1:22

**article**(2) 16:20 105:21

**aside**(2) 35:22 85:7

**ask**(5) 47:23 81:9 85:10 119:7 120:21

**asked**(8) 33:21 41:7 52:16 80:25 89:24 90:11 103:18 103:23

**asking**(5) 49:17 67:6 85:6 88:13 95:10

**aspects**(1) 104:5

**asserted**(3) 46:3 73:12 116:1

**asserting**(2) 72:18 115:23

**assertion**(1) 41:3

**assessment**(3) 96:14 96:17 96:20

**asset**(4) 5:18 50:2 88:25 113:2

**assets**(5) 13:11 28:13 69:24 71:12 98:5

**assisted**(1) 65:8

**associated**(2) 43:21 47:10

**association**(1) 118:13

**assume**(2) 25:10 73:22

**assuming**(1) 35:3

**assumption**(1) 16:15

**assure**(1) 49:19

**attached**(5) 15:5 18:25 23:9 33:7 108:4

**attaching**(1) 19:2

**attempt**(6) 12:9 29:6 83:6 98:8 98:10

**attempts**(1) 43:23

**attention**(1) 38:15

**audible**(2) 55:10 121:2

**audio**(3) 7:5 54:8 54:15

**august**(1) 109:22

**aurelius**(2) 4:25 6:17

**authority**(4) 24:4 37:6 37:10 67:9

**automatic**(4) 91:3 91:4 91:8 102:6

**available**(2) 61:4 114:3

**ave**(1) 3:24

**avenue**(5) 2:48 3:17 3:31 3:38 3:44

**avoid**(4) 15:11 47:19 57:20 74:20

**avoids**(1) 101:21

**aware**(1) 13:6

**away**(3) 42:6 78:6 106:18

**back**(28) 11:10 20:9 21:18 22:23 23:5 23:8 28:18 29:3 43:13 51:22 65:3 65:24 76:11 79:8 81:12 88:23 92:14 93:4 96:23 105:21 106:12 106:13 106:14 107:17 107:20 110:16 113:22 117:4

**backdoor**(1) 81:2

**backfill**(1) 112:8

**backwards**(1) 42:1

**bad**(2) 41:15 62:18

**badtke-berkow**(1) 3:15

**bandied**(1) 45:17

**bank**(2) 2:46 4:41 5:1 5:1 115:15 119:12 119:15 119:21

**bankruptcy**(10) 1:1 1:19 16:20 16:21 16:22 33:21 53:19 103:19 108:23 119:18

**barclays**(1) 5:38

**based**(10) 29:18 54:12 62:21 70:18 90:13 100:23 103:1 104:19 107:25 118:23

**bases**(1) 102:19

**basic**(1) 26:7

**basically**(1) 40:9

**basis**(8) 29:6 40:6 41:17 80:9 80:14 83:6 94:21 105:3

**bat**(1) 85:3

**battery**(1) 2:36

**bauhinia**(1) 60:14

**bayard**(1) 3:22

**bear**(2) 19:17 43:13

**became**(1) 93:10

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **because**(66) 17:11  17:24  19:25  22:16 24:12  25:25  27:23  28:20  32:22  33:21  34:2 35:11  38:17  45:19  47:2  49:25  53:1  53:13 54:7  54:7  60:7  65:14  65:21  66:10  68:6 73:2  76:5  76:12  78:16  81:12  81:14  82:8 82:9  82:14  83:3  84:16  84:22  85:3  85:8 86:2  86:13  86:15  87:2  87:11  87:13  89:18 90:23  91:23  93:2  93:14  93:22  93:25  96:15 99:5  100:4  101:21  102:11  106:5  107:5 107:22  107:23  109:17  110:19  110:25 111:15  113:15 | | **bit**(7) 7:24  9:8  11:6  15:9  34:17  103:23 120:1 | | **bryant**(1) 2:15 **buchanan**(1) 3:8 **buhl**(1) 25:25 **built**(1) 104:11 **bulk**(1) 112:24 **bullen**(1) 4:38 **burden**(1) 66:7 **burdens**(1) 19:17 **business**(4) 19:25  50:20  71:15  89:1 **businesses**(3) 73:1  73:5  73:11 | | **carfignini**(2) 108:10  117:19 **case**(19) 1:5  17:10  18:11  18:13  26:16 30:16  33:11  35:25  36:19  44:13  60:14 60:15  66:20  86:15  99:15  101:22  108:23 120:16  120:17 **cases**(6) 17:9  45:3  45:19  46:7  47:11  47:14 **cash**(8) 20:25  21:1  21:2  21:2  21:3  47:8 47:9  73:15 | |
| | | **blabey**(1) 4:26 **black**(2) 13:10  13:14 **blackberry**(1) 11:11 **blindfold**(1) 105:22 **bloom**(1) 32:20 **blown**(1) 106:6 **blunt**(1) 107:7 **bmy**(9) 114:12  115:16  115:23  116:1 116:10  116:17  117:2  117:6  118:14 | | **busy**(3) 36:25  37:1  61:2 **but**(108) 10:13  10:22  11:13  12:16  12:16 12:18  13:4  13:21  14:8  15:23  16:4  17:4 17:10  19:2  19:8  19:12  24:17  24:25  25:20 26:4  26:25  27:9  27:15  28:1  28:4  28:20 29:9  30:6  30:18  31:19  31:24  32:1  32:14 33:4  33:12  33:18  33:24  34:6  35:3  35:21 36:1  36:8  36:16  36:21  39:13  40:1  41:18 42:23  43:12  44:6  44:13  47:14  48:22  49:4 49:15  50:14  51:5  51:16  54:8  54:17  55:6 56:19  57:8  59:24  60:18  61:16  63:24  66:5 66:7  67:13  68:25  71:6  73:6  73:15  74:16 77:10  81:11  85:9  85:16  86:18  87:23  88:20 92:15  93:5  93:14  93:25  94:23  95:3  96:7 97:5  98:11  101:14  101:23  103:8  105:17 107:7  107:13  107:17  109:6  112:18  114:18 115:1  115:19  115:21  117:20  118:5  118:14 120:20 | | **catalog**(1) 71:3 **catalyze**(1) 47:14 **cats**(2) 37:1  37:11 **cause**(1) 106:16 **caused**(1) 43:19 **cavalierly**(1) 45:17 **ccaa**(1) 17:4 **ccc**(1) 63:5 **cede**(2) 11:2  25:5 **certain**(3) 17:12  17:13  24:22 **certainly**(16) 7:4  10:14  10:22  12:20  42:20 42:21  55:12  56:20  63:25  68:2  69:20  75:20 95:4  104:3  105:8  111:23 | |
| **become**(1) 12:14 **been**(58) 8:8  8:17  12:9  12:10  14:6  15:9 16:9  16:22  20:18  23:8  24:12  38:12  40:4 40:22  42:20  48:21  48:22  50:9  52:13  52:23 56:25  58:15  59:18  61:23  63:10  65:23 68:16  70:9  71:20  72:13  72:14  72:15  72:16 73:12  74:23  74:24  76:18  77:18  79:23 79:24  81:13  91:12  92:21  93:10  93:12 93:24  94:18  94:19  95:15  97:13  97:15 103:12  106:16  110:14  115:20  116:24 117:14  118:25 | | **bmy's**(1) 117:1 **bny's**(1) 53:13 **board**(1) 118:4 **body**(5) 62:25  69:14  80:11  80:19  86:17 **boils**(1) 16:4 **bond**(3) 4:1  40:16  52:17 **bondholder**(3) 11:25  11:25  116:5 **bondholders**(7) 15:17  24:1  43:1  43:7 46:10  50:22  52:24 | | | | **certification**(1) 121:15 **certify**(1) 121:16 **certiorari**(2) 14:3  14:15 **challenges**(1) 54:15 **chambers**(1) 96:5 **change**(4) 32:9  32:17  61:22  102:21 **changed**(10) 12:10  12:11  23:5  23:17  23:18 23:23  38:17  41:5  67:24  110:14 | |
| **before**(38) 1:18  15:15  17:13  17:17  18:12 18:22  20:12  22:2  25:19  25:24  36:24  38:6 39:22  39:23  40:4  57:1  57:9  62:2  65:6 69:19  71:10  74:15  76:17  76:20  78:25  81:1 81:19  85:9  88:24  89:21  94:24  96:13  98:25 104:4  104:11  108:8  109:7  115:19 | | **bonds**(2) 43:14  52:12 **border**(2) 56:6  71:1 **both**(35) 12:8  14:8  14:20  14:22  15:15 17:9  17:17  21:6  21:6  21:7  22:25  25:24 33:14  39:5  41:9  43:16  45:14  51:4  51:6 52:18  56:11  72:8  75:10  75:15  79:14  85:8 88:2  99:4  107:19  109:10  109:14  115:25 115:25  116:2  116:18 | | **calaman**(1) 121:22 **call**(7) 10:2  21:1  38:15  111:12  114:5 121:6  121:7 | | **changes**(4) 40:7  41:25  42:3  42:6 **chaos**(5) 23:19  24:6  27:23  27:25  36:4 **chaotic**(1) 37:3 **chapter**(1) 1:8 **charles**(1) 2:35 **chase**(3) 4:4  21:3  21:5 **cheaply**(1) 63:14 **chen**(2) 4:42  4:46 **cheryl**(1) 114:12 **chilmark**(1) 6:1 **choice**(1) 84:24 | |
| **beginning**(6) 15:11  17:20  17:24  18:11 18:12  116:20 | | **botter**(1) 2:12 **bottom**(1) 84:6 **bound**(3) 88:3  105:6  117:17 **box**(2) 88:6  118:2 **boxes**(2) 13:10  13:14 **brad**(1) 5:15 **brand**(1) 36:19 | | **called**(3) 62:16  71:9  72:20 **came**(2) 23:8  67:14 **can**(63) 10:13  11:7  15:11  15:24  20:13 20:15  21:23  22:19  29:13  31:11  31:20 31:20  35:23  36:1  36:11  38:6  39:3  44:2 45:6  49:16  49:19  51:15  52:7  56:12  59:3 59:7  59:20  60:3  61:5  61:5  61:7  62:14 62:25  63:9  65:10  65:24  66:11  68:9  71:25 74:3  74:13  74:17  74:20  78:5  81:9  82:18 82:19  87:7  87:11  89:3  89:25  95:20  95:20 100:22  108:25  111:20  111:24  112:8  114:6 114:16  114:17  116:13  121:6 | | **choose**(4) 36:16  37:9  82:5  97:24 **chose**(4) 32:21  82:4  82:5  82:9 **chosen**(4) 20:13  38:22  82:11  116:4 **chris**(1) 2:5 **chung**(1) 5:2 **cindy**(1) 4:46 **circle**(1) 41:2 **circles**(4) 105:24  106:4  106:17  106:19 107:10  108:19 | |
| **behalf**(20) 43:1  43:7  48:3  49:13  51:13 54:3  77:14  78:11  79:15  92:19  93:19  95:14 97:4  114:12  115:24  117:24  117:24  118:12 119:3  119:20 | | **breach**(3) 56:6  58:7  72:7 **breached**(2) 77:2  77:3 **breaches**(2) 31:1  76:24 **breadth**(2) 31:16  31:23 **break**(7) 40:19  55:4  55:7  55:9  55:12 55:12  108:23 | | | | **circuit**(7) 13:24  14:2  14:13  22:8  26:17 59:8  91:18 | |
| **behind**(2) 45:25  107:6 **being**(30) 8:14  46:3  55:24  59:23  61:19 63:5  63:7  73:5  73:6  73:20  74:3  74:19 79:13  80:20  81:4  86:18  87:8  87:16  89:24 91:20  96:7  102:19  105:22  107:16  110:20 110:21  111:15  117:2  117:20  119:22 | | **break-up**(1) 11:13 **breakfast**(1) 107:12 **breaking**(2) 86:6  108:22 **brian**(5) 3:29  3:37  53:8  97:1  120:10 **brickley**(1) 4:30 **bridge**(1) 70:25 **brief**(8) 8:23  25:25  105:17  114:16  114:23 114:24  114:25  118:11 | | **canada**(32) 5:6  14:7  14:8  14:11  19:4 26:10  38:8  47:3  47:23  49:17  49:24  53:13 55:23  56:24  62:5  62:6  62:9  73:6  73:12 74:1  74:25  75:12  75:16  77:7  80:8  88:8 91:6  91:11  91:11  105:11  108:21  113:9 | | **circumstances**(6) 29:19  33:11  104:22 108:1  110:20  110:21 **cite**(1) 98:15 **citi**(2) 6:9  6:9 **city**(1) 21:2 **civil**(1) 66:15 **claim**(14) 22:10  41:3  49:7  49:8  50:2  93:9 95:15  95:16  95:20  95:23  96:4  96:14 103:12  116:1 | |
| **believe**(35) 7:6  8:22  8:24  10:18  16:10 16:16  16:23  17:1  20:14  23:23  24:4  24:5 24:6  24:7  24:19  25:4  26:9  36:3  43:13 46:16  47:13  49:14  53:18  55:7  59:14  62:7 71:15  82:3  86:1  94:20  96:11  104:15 105:13  120:14  120:18 | | **briefly**(7) 27:9  28:1  34:7  42:24  51:13  62:8 115:18 **brigade**(1) 6:13 **bring**(4) 45:3  116:10  116:22  120:16 **bringing**(1) 13:8 **british**(1) 107:11 **broad**(5) 31:1  31:2  31:4  31:20  60:15 **broader**(1) 31:4 | | **canadian**(71) 6:25  14:7  14:12  14:18  15:19 17:3  18:22  18:23  19:10  19:13  19:14  19:18 19:25  22:14  22:25  23:25  33:1  33:14  34:25 34:25  37:23  38:4  39:3  39:7  39:11  39:19 39:21  39:24  41:21  41:24  43:16  47:6  48:7 48:8  50:3  50:23  50:23  54:3  54:6  54:13 54:18  54:23  56:25  69:20  74:12  75:18 76:19  76:24  79:2  85:4  88:4  88:4  88:10 89:1  89:2  89:4  93:7  96:19  97:9  98:14 98:21  98:25  99:1  99:25  100:8  100:24 101:8  101:13  101:16  110:7  117:20 | | **claimant's**(1) 97:4 **claimants**(5) 3:22  97:12  101:20  102:5 103:12 **claiming**(2) 31:18  90:1 | |
| **belknap**(4) 3:35  5:30  53:9  120:11 **below**(2) 29:2  81:25 **bench**(1) 113:22 **benefit**(4) 8:11  58:19  59:5  107:23 **benefited**(1) 20:20 **benefits**(2) 20:2  22:21 **benefitted**(1) 109:17 **best**(9) 44:6  44:7  45:1  60:21  79:11  86:16 97:8  98:14  101:7 | | **broadly**(1) 34:4 **broke**(1) 36:8 **bromley**(48) 1:32  8:23  11:3  11:18  11:20 11:21  11:22  12:7  12:13  12:20  13:1  15:2 15:8  15:21  16:2  17:19  18:2  18:17  19:24 21:13  24:3  24:11  25:8  25:13  25:14  30:21 37:15  38:10  43:9  84:20  84:20  92:5  105:14 105:15  105:16  105:17  109:2  109:6  109:13 109:25  110:3  110:11  111:23  112:2  112:6 112:12  112:13  118:16 | | **canadians**(2) 77:2  87:9 **cannot**(10) 23:9  24:17  26:12  40:10  40:13 44:10  45:11  101:6  106:20  107:17 | | | |
| **bet**(2) 53:24  121:1 **better**(2) 89:18  115:1 **between**(10) 9:10  9:20  21:19  39:19  56:19 73:25  74:10  91:17  110:8  111:10 **big**(7) 32:9  71:6  74:4  77:15  111:11  111:12 111:14 | | | | **can't**(11) 26:7  28:25  30:2  30:8  30:9  31:5 31:13  35:17  36:23  41:17  60:5 **capital**(9) 4:16  4:17  4:41  5:22  5:38  6:5 6:9  6:13  6:17 | | | |
| **bilateral**(1) 101:22 **billion**(11) 13:9  13:10  13:12  13:14  21:10 30:16  30:18  43:15  49:6  90:12  116:1 | | **bromley's**(4) 79:10  79:12  79:15  79:19 **bromley's**(1) 40:15 **brought**(2) 81:1  98:25 **brown**(1) 4:34 | | **cards**(1) 18:15 **care**(3) 43:17  107:22  107:22 **carefully**(3) 22:15  42:22  51:6 | | | |
| **billions**(2) 48:15  90:2 **bilmes**(1) 4:18 **binary**(1) 89:23 **bind**(2) 82:25  84:3 **binding**(9) 26:14  28:10  36:10  44:9  58:21 58:23  75:25  82:24  86:24 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **claims**(129) 13:16 13:18 13:21 13:23 14:1 14:5 14:6 14:10 14:17 14:20 14:22 15:14 18:21 18:24 18:25 19:2 19:3 19:5 19:8 22:12 22:24 22:24 23:2 23:8 23:12 23:14 24:5 24:22 24:25 39:4 39:7 39:23 40:9 40:13 40:16 40:20 41:14 41:16 42:4 43:15 47:9 48:10 48:12 48:15 48:20 48:20 48:22 49:2 50:13 58:20 68:24 71:14 71:17 72:18 73:12 73:15 73:17 74:12 74:13 75:13 75:18 75:19 76:10 76:11 76:13 76:17 76:19 76:20 76:21 76:22 76:23 76:23 76:25 77:14 77:18 77:19 77:21 85:14 93:6 93:7 93:11 93:12 93:12 96:8 96:15 96:16 96:21 97:12 98:23 100:9 100:12 102:5 102:11 102:11 102:18 103:6 103:15 104:15 104:16 104:16 104:17 104:24 105:2 106:11 106:15 107:15 107:23 108:2 108:3 108:3 108:8 108:13 110:15 110:18 110:18 110:25 111:1 111:6 111:11 111:14 111:16 113:3 115:23 115:25 116:2 116:18 118:7 118:8 | | **company**(4) 4:29 5:31 **compel**(2) 26:8 97:24 **competent**(1) 43:20 **complaint**(4) 77:15 77:16 103:25 104:11 **complete**(3) 14:21 35:22 45:7 **completely**(14) 10:18 23:14 71:24 87:21 88:21 89:8 89:14 89:20 89:21 90:16 106:2 106:10 107:16 108:2 | | **contain**(1) 69:21 **contained**(1) 39:9 **contemplate**(1) 40:1 **contemplated**(4) 62:15 65:7 65:15 116:12 **contemplates**(1) 42:9 **contemplating**(1) 66:16 **contending**(1) 103:15 **contested**(4) 66:24 77:17 109:13 109:14 **context**(3) 27:8 44:2 93:2 | | **court**(288) 1:1 7:3 7:8 7:12 7:20 7:25 8:19 8:25 9:6 9:12 9:21 9:25 10:4 10:8 10:11 10:13 11:1 11:4 11:12 11:17 11:21 12:6 12:12 12:16 12:25 14:4 14:8 15:1 15:7 15:20 16:1 17:18 18:1 18:10 18:22 18:22 18:23 18:23 19:23 21:4 21:12 22:2 24:2 24:10 25:7 25:10 25:15 25:17 25:22 26:2 26:12 26:15 27:6 27:13 27:19 27:21 28:19 29:17 30:11 30:14 30:22 31:9 33:14 33:14 33:16 33:24 34:3 34:5 34:8 34:10 34:13 34:18 34:22 34:25 35:2 35:7 35:10 35:20 36:20 37:20 37:22 38:2 38:7 39:3 39:17 39:23 39:24 40:4 40:25 41:18 41:24 42:19 43:1 43:11 44:5 47:1 47:16 47:22 49:17 50:1 50:5 50:6 50:7 50:12 51:8 51:10 51:12 51:21 51:23 52:2 52:20 53:6 53:10 53:16 53:20 53:24 54:5 54:16 54:20 54:24 55:2 55:8 55:11 55:14 55:20 56:8 56:14 56:17 56:19 57:2 57:4 57:6 57:21 57:22 59:8 59:10 59:13 59:22 60:1 60:7 62:1 62:5 62:10 62:12 63:12 63:16 63:22 64:3 64:21 65:1 66:11 66:12 66:19 66:22 67:3 68:1 68:3 68:12 68:16 68:18 69:1 69:6 69:8 70:14 71:22 72:21 74:6 75:3 76:6 76:6 77:22 77:25 78:14 78:19 79:1 79:9 80:23 81:1 81:2 81:22 82:2 82:4 82:5 82:14 82:15 82:15 82:25 83:15 83:17 84:8 84:9 84:20 85:9 85:16 86:11 87:4 87:17 87:17 87:17 87:17 88:3 88:4 88:9 88:10 88:25 89:2 89:2 89:3 89:4 89:4 89:21 91:17 93:15 94:24 95:2 96:24 97:2 97:9 97:9 97:19 98:14 98:15 98:21 98:25 98:25 99:25 100:8 100:9 100:23 100:24 101:8 101:9 101:13 101:14 101:16 102:25 103:4 103:7 103:16 103:21 104:13 105:8 105:11 105:15 108:16 108:17 108:20 108:25 109:5 109:12 109:15 109:24 110:2 110:10 111:19 112:1 112:5 112:11 112:13 112:22 113:4 113:6 113:8 113:14 113:21 114:3 114:20 114:22 114:24 115:6 115:9 115:11 115:17 116:11 116:23 117:4 117:5 117:10 119:10 120:6 120:8 120:21 120:24 121:1 121:3 121:6 121:11 |
| **clarification**(1) 114:10 **clarify**(2) 15:10 54:7 **class**(1) 118:17 **clause**(7) 16:20 27:17 28:16 31:1 31:19 64:7 69:17 | | **completing**(1) 47:18 **complex**(1) 35:25 **complexity**(1) 43:24 **complicated**(2) 89:9 90:1 **comply**(1) 70:5 | | **contract**(7) 26:12 26:19 27:10 28:4 31:11 32:17 84:12 | | |
| **clauses**(1) 30:24 **cleaner**(1) 87:2 **cleanest**(1) 86:16 **clear**(27) 15:16 16:24 19:6 29:10 31:5 32:17 33:13 40:9 52:22 54:9 54:17 64:14 74:19 76:21 78:12 78:13 78:21 78:23 79:3 81:21 82:13 84:10 84:16 101:6 107:18 110:17 116:24 | | **comprehensive**(1) 12:4 **conaway**(3) 2:19 5:9 5:46 **concern**(3) 38:11 43:19 60:7 **concerned**(1) 111:20 **concerning**(3) 29:7 98:24 99:13 **concerns**(4) 13:21 15:21 56:21 118:25 **conclude**(2) 9:14 113:12 | | **contradict**(1) 66:3 **contrary**(1) 9:22 **contrast**(1) 36:3 **contribute**(1) 19:18 **contributed**(1) 73:10 **contributions**(1) 72:25 **control**(6) 20:17 23:2 46:5 50:10 50:16 107:1 | | |
| **clearer**(2) 30:25 33:5 **clearly**(12) 11:14 11:16 17:21 26:16 27:18 50:22 64:16 65:2 66:1 66:12 77:10 83:18 | | **concluded**(4) 13:7 14:8 58:1 121:3 **concludes**(1) 55:2 **conclusion**(5) 11:7 77:6 85:21 101:7 119:6 **conclusions**(1) 105:6 **condition**(2) 18:3 33:9 | | **controlled**(1) 50:10 **convention**(2) 59:15 59:15 **conversation**(4) 15:9 15:12 19:1 117:18 **conversations**(1) 23:6 **cooperation**(1) 19:10 **coordinate**(1) 120:2 | | |
| **cleary**(1) 1:29 **clerk**(3) 7:2 113:17 113:20 **cletus**(1) 6:5 **clients**(1) 110:21 **clock**(1) 9:24 **close**(5) 25:3 37:15 68:13 68:17 119:7 **closed**(3) 13:16 45:25 107:17 **cobreros**(1) 105:20 **code**(5) 16:22 32:13 53:19 59:19 119:18 **cognizable**(1) 104:18 **colleague**(2) 113:23 119:15 **colleagues**(2) 17:3 97:6 **come**(27) 22:6 22:23 28:17 29:3 40:3 66:2 68:7 72:11 77:5 77:11 79:8 79:14 87:21 88:13 88:23 89:11 90:14 90:23 90:23 90:25 91:21 93:4 101:7 104:9 105:14 106:16 112:21 | | **conditioned**(1) 28:7 **conduct**(2) 62:22 78:13 **conducted**(1) 56:1 **conducting**(1) 64:10 **confer**(1) 46:15 **conference**(2) 45:13 71:25 **confidence**(1) 35:22 **confident**(1) 15:23 **confidential**(1) 72:16 **confirm**(1) 66:8 **confirmation**(1) 118:20 **confirms**(1) 86:12 **conflict**(1) 69:11 **conflicting**(1) 91:13 | | **coordinated**(3) 48:13 74:12 118:9 **coordination**(3) 74:8 91:16 91:20 **cordo**(1) 1:24 **core**(27) 15:13 15:19 16:23 17:1 17:20 48:25 51:14 52:10 52:11 52:14 53:18 61:18 95:10 105:4 114:13 115:16 116:14 116:17 116:20 117:7 117:14 118:6 118:18 119:7 119:22 119:23 120:2 | | |
| **comes**(6) 19:16 26:20 26:22 62:24 62:24 86:22 | | **conform**(1) 73:9 **confused**(1) 38:22 **confusing**(2) 31:15 31:22 **confusion**(1) 15:9 **congress**(1) 16:20 **conjecture**(1) 44:20 **connection**(2) 46:14 100:9 **consensual**(2) 38:18 44:24 **consensually**(1) 95:2 **consent**(11) 21:24 22:3 26:11 26:12 44:13 44:21 44:22 45:22 45:22 60:22 69:21 | | **corners**(1) 29:24 **cornerstone**(1) 23:4 **corral**(1) 37:11 **correct**(5) 27:20 42:4 64:25 103:7 121:16 **correctly**(1) 49:15 **cost**(6) 24:14 63:12 63:16 64:1 82:12 116:19 | | **court's**(3) 87:11 87:12 87:13 **courtcall**(1) 121:7 **courthouse**(1) 45:9 **courtroom**(5) 1:10 11:10 11:11 113:16 120:14 |
| **comfort**(1) 119:1 **coming**(3) 38:18 76:14 84:7 **comingled**(1) 69:4 **commend**(1) 40:14 **comment**(2) 47:2 114:13 **comments**(9) 7:13 51:19 54:12 56:11 78:1 78:10 79:10 106:13 113:23 | | **consented**(5) 44:8 44:15 45:1 69:18 101:23 **consenting**(1) 44:16 **consequence**(6) 88:22 88:24 89:13 89:14 89:19 89:20 | | **costs**(3) 20:4 63:18 64:2 **could**(23) 8:18 9:9 13:1 16:9 22:5 25:6 26:4 38:19 42:13 53:14 56:22 65:2 65:3 65:16 66:6 82:15 84:18 85:2 92:15 95:3 100:12 119:7 120:19 | | **courts**(101) 12:2 14:9 16:5 16:10 16:18 17:9 17:12 17:17 17:21 18:20 19:7 19:10 20:2 20:7 20:11 20:17 21:6 21:6 21:8 21:15 22:3 22:7 22:18 22:20 23:3 23:12 24:3 30:12 31:6 31:22 33:12 33:17 33:18 35:17 35:18 35:23 36:1 36:20 37:5 37:10 37:16 39:5 39:21 40:9 40:9 42:12 42:15 43:22 45:4 45:6 46:5 46:21 47:6 47:8 47:13 47:15 47:18 48:9 49:14 50:10 50:17 56:1 56:1 57:23 58:8 64:23 68:21 68:24 69:2 69:9 69:13 69:20 69:21 70:15 71:9 71:18 80:19 81:3 85:23 85:23 86:18 86:23 88:13 89:25 91:18 92:22 94:21 94:25 97:25 99:4 101:6 101:16 101:24 101:25 103:2 104:9 106:19 107:19 111:21 112:7 118:6 |
| **committed**(1) 47:18 **committee**(20) 2:5 2:40 4:45 5:13 11:24 15:3 15:17 15:19 24:1 51:24 52:3 52:4 52:7 52:8 52:9 52:21 116:5 116:8 119:20 119:21 **common**(6) 63:24 64:4 74:10 75:9 109:16 117:16 | | **consequences**(1) 88:21 **consider**(2) 57:24 60:24 **consideration**(2) 10:14 32:2 **considered**(4) 57:20 65:11 65:18 105:4 **consistent**(2) 18:13 51:4 **consistently**(4) 18:10 18:11 20:2 106:6 **consisting**(1) 70:8 **consolidated**(1) 105:3 **conspicuously**(1) 99:21 **constant**(1) 21:25 **constituencies**(1) 116:3 **constituency**(1) 80:12 **constituents**(1) 10:12 **constitute**(2) 44:22 46:19 **constituted**(1) 41:4 **constitutes**(2) 22:3 44:21 | | **counsel**(17) 8:2 8:7 8:10 8:12 8:14 11:10 11:10 34:15 34:23 43:3 53:13 94:14 96:12 97:16 114:25 118:19 121:9 **count**(1) 21:21 **counterpart**(1) 115:13 **counterparts**(1) 11:11 **countries**(1) 61:4 **couple**(8) 17:10 26:3 35:11 45:24 52:7 105:18 110:14 119:16 **course**(10) 10:5 14:23 19:9 34:3 34:25 35:15 47:8 52:4 102:16 120:20 | | **courts.**"(1) 33:3 **court's**(1) 8:4 **cover**(1) 26:5 **covered**(4) 26:23 26:24 79:5 106:2 **crazy**(1) 107:8 **create**(5) 43:23 44:11 60:3 67:7 70:7 **created**(5) 101:22 107:12 107:14 107:25 108:11 |
| | | **constituting**(1) 69:13 **constitution**(1) 16:19 **construction**(1) 69:16 **constructive**(1) 95:19 **consult**(1) 72:3 **contact**(1) 114:4 | | | | **creating**(1) 57:18 **creator**(1) 87:10 **creature**(1) 26:11 **credibility**(1) 56:4 **credible**(1) 22:5 |
| **communication**(1) 8:17 **communications**(1) 74:25 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **creditor**(7) 6:5 50:1 50:21 53:3 63:6 118:17 120:17 | | **debtors**(101) 1:12 1:22 2:20 5:5 7:10 9:3 10:9 10:10 14:11 14:12 14:18 15:3 15:17 16:8 16:10 17:24 18:21 19:18 19:19 19:25 20:1 20:14 20:24 21:21 21:22 22:1 22:14 22:14 22:24 22:25 22:25 23:25 28:5 28:8 28:25 29:18 37:23 38:5 39:3 41:4 41:8 41:10 41:12 41:21 41:24 44:14 44:20 46:10 48:7 48:8 52:17 52:24 58:16 62:3 66:13 68:6 69:4 69:10 71:14 72:14 73:1 73:3 73:7 73:19 74:23 75:10 77:4 78:11 79:2 80:8 82:20 83:4 85:4 85:13 85:19 93:19 96:19 97:13 98:3 98:12 99:2 100:3 102:6 102:13 102:14 103:11 103:14 104:5 106:7 107:2 107:3 109:19 110:7 110:15 111:2 111:16 112:16 112:17 112:25 117:20 | | **deposition**(1) 32:12 | | **discussed**(8) 8:20 8:21 30:21 61:7 75:11 82:23 82:23 93:24 | |
| | | | | **depositions**(1) 15:22 | | **discussing**(1) 93:1 | |
| **creditors**(19) 5:14 13:13 20:11 24:14 32:23 37:14 43:17 44:3 46:1 47:12 50:23 50:25 52:4 52:11 58:18 63:9 70:24 76:17 89:17 | | | | **depth**(1) 39:9 | | **discussion**(12) 8:7 8:23 9:4 12:22 36:12 44:10 53:21 60:23 86:1 86:6 86:12 113:12 | |
| | | | | **derek**(4) 1:23 2:34 7:10 9:2 | | | |
| | | | | **desert**(1) 106:1 | | **discussions**(2) 93:15 118:16 | |
| **creditors'**(1) 2:4 | | | | **deserves**(1) 32:2 | | **disinfectant**(1) 45:16 | |
| **creditor's**(7) 11:24 15:17 15:19 24:1 52:8 52:9 52:21 | | | | **designated**(1) 63:23 | | **dismiss**(1) 13:16 | |
| | | | | **designed**(2) 44:7 71:1 | | **dismissal**(1) 13:18 | |
| | | | | **desired**(1) 91:9 | | **dismissed**(1) 110:15 | |
| **critical**(7) 20:16 24:11 81:8 81:13 85:11 99:3 117:21 | | | | **detail**(2) 65:4 81:14 | | **dismissing**(1) 13:20 | |
| | | | | **detailed**(1) 68:10 | | **disposed**(1) 105:2 | |
| | | | | **details**(2) 48:24 98:11 | | **dispositive**(2) 53:19 120:19 | |
| **criticizing**(1) 65:20 | | **debtors'**(4) 12:21 44:23 48:14 52:10 | | **determination**(9) 29:1 30:12 65:8 70:19 81:23 82:21 99:18 | | **dispute**(56) 20:10 20:19 28:18 29:1 29:3 31:16 44:9 45:19 45:25 46:4 47:16 48:11 49:9 58:21 61:20 64:6 64:14 64:18 65:17 68:10 69:17 70:4 70:19 81:24 82:6 82:7 82:8 82:10 82:13 82:22 84:8 84:18 84:19 85:1 85:2 85:15 85:22 86:16 86:17 97:10 97:11 98:1 98:10 99:18 99:19 99:23 100:1 100:19 101:1 102:2 102:4 103:3 104:7 104:25 105:1 112:18 | |
| **cross**(7) 16:7 70:25 71:5 80:14 86:8 86:24 97:24 | | **december**(1) 13:23 | | | | | |
| | | **decide**(30) 8:15 17:5 22:8 38:7 39:25 50:6 62:17 62:18 69:14 69:21 70:16 71:23 72:6 77:8 78:21 81:4 82:12 84:25 90:4 92:23 95:6 97:9 97:23 98:1 102:20 104:21 106:1 109:10 110:13 111:21 | | | | | |
| **cross-border**(10) 17:7 17:8 17:11 17:19 17:23 18:4 21:25 25:20 35:24 70:7 | | | | **determination's**(1) 104:21 | | | |
| | | | | **determine**(12) 21:14 47:6 49:14 49:18 49:20 66:13 69:9 76:16 83:12 83:22 99:25 102:13 | | | |
| **cross-examine**(1) 56:2 | | | | | | **disputed**(2) 66:3 96:9 | |
| **cross-jurisdictional**(3) 79:4 79:8 80:10 | | | | **determined**(3) 83:12 94:3 113:25 | | **disputes**(8) 21:14 29:7 29:9 29:12 67:17 69:22 99:12 109:8 | |
| **crystal**(2) 19:6 33:13 | | **decided**(18) 22:9 33:3 42:12 74:15 74:17 75:22 75:22 76:2 76:2 76:18 76:19 80:11 83:25 96:13 101:15 102:18 112:24 117:17 | | **determining**(2) 33:2 67:10 | | | |
| **curleys**(1) 26:17 | | | | **developed**(1) 61:11 | | **disputing**(1) 101:9 | |
| **current**(1) 116:12 | | | | **development**(1) 92:1 | | **distinguish**(1) 60:14 | |
| **currently**(1) 45:8 | | | | **developments**(2) 32:18 118:21 | | **distributed**(2) 13:13 98:7 | |
| **custom**(1) 63:19 | | **decider**(1) 68:22 | | **deviation**(1) 59:23 | | **distribution**(4) 82:19 99:15 99:17 100:15 | |
| | | **decides**(1) 90:5 | | **devices**(1) 96:10 | | **distributions**(3) 47:12 58:18 70:17 | |
| **dan**(2) 53:25 54:2 | | **deciding**(3) 61:22 95:3 96:16 | | **devised**(1) 72:24 | | **district**(3) 1:2 59:8 91:18 | |
| **danger**(1) 72:11 | | **decision**(26) 9:14 13:20 13:25 14:2 14:13 38:6 39:4 59:21 70:1 72:7 76:6 77:5 79:9 79:13 80:5 86:23 87:16 87:24 88:14 89:5 90:15 91:10 91:11 100:19 101:1 101:22 | | **devote**(1) 61:1 | | **diversions**(1) 57:9 | |
| **daniel**(2) 3:16 5:31 | | | | **diaz**(1) 1:40 | | **divested**(1) 22:11 | |
| **dannacher**(1) 6:22 | | | | **dictate**(1) 68:4 | | **divesting**(1) 33:18 | |
| **data**(1) 1:40 | | | | **did**(25) 8:19 9:7 14:23 19:9 19:17 22:16 26:4 27:4 30:7 32:1 46:12 48:4 56:17 58:6 72:16 75:7 75:7 82:1 84:3 88:1 89:22 97:8 98:10 99:4 114:13 | | **divide**(9) 9:5 9:19 10:2 20:6 21:17 28:14 28:15 64:1 90:11 | |
| **date**(7) 45:12 53:22 77:20 111:21 112:7 112:9 121:22 | | **decision's**(1) 90:15 | | | | | |
| | | **decision-makers**(1) 38:25 | | | | **divided**(4) 9:10 9:16 35:9 63:25 | |
| **dated**(2) 33:7 100:5 | | **decisions**(19) 24:9 24:17 57:23 58:14 59:6 59:9 71:8 71:18 71:25 72:12 75:17 87:16 87:18 87:21 89:11 90:25 91:6 91:13 112:24 | | **didn't**(10) 64:22 65:21 66:6 83:2 85:10 85:10 93:23 104:2 107:21 118:5 | | **dividends**(1) 95:5 | |
| **dave**(5) 6:25 37:25 38:3 38:4 39:18 | | | | | | **divorced**(3) 23:10 41:17 110:25 | |
| **david**(5) 2:12 4:26 5:47 6:14 94:14 | | | | **didn't**(4) 22:17 30:8 30:15 54:8 | | **document**(7) 17:11 27:5 31:13 32:12 79:5 81:11 82:3 | |
| **day**(14) 17:9 31:12 42:15 47:10 49:3 71:7 86:5 86:5 87:14 107:18 111:8 112:21 121:4 121:11 | | **declaration**(3) 32:19 33:8 65:25 | | **dies**(1) 89:6 | | | |
| | | **declarations**(2) 65:24 66:6 | | **difference**(2) 90:19 111:10 | | **documents**(4) 63:17 66:1 79:5 86:7 | |
| | | **deeply**(1) 43:17 | | **differences**(3) 71:3 73:25 110:12 | | **does**(20) 31:17 40:1 45:15 45:20 55:9 59:5 59:9 61:24 64:23 64:23 73:11 74:21 83:18 83:19 84:8 101:5 104:8 113:8 119:18 120:21 | |
| **days**(2) 95:3 104:2 | | **defects**(2) 45:25 59:20 | | **different**(31) 13:11 23:7 42:2 65:10 65:12 69:8 71:10 72:11 74:8 77:6 84:11 86:3 86:17 87:9 88:2 88:11 88:14 88:22 89:8 89:11 89:14 89:20 89:22 90:3 90:5 90:10 90:13 90:16 90:23 107:6 107:8 | | | |
| **deal**(19) 16:6 23:13 38:8 38:25 38:25 39:3 44:2 48:10 70:21 84:25 89:3 89:6 92:14 92:20 94:7 104:20 110:24 111:5 116:23 | | **defend**(1) 49:8 | | | | | |
| | | **defendants**(1) 118:7 | | | | **doesn't**(8) 64:7 64:8 64:9 69:20 70:5 72:24 83:13 83:14 | |
| | | **defended**(1) 45:11 | | **difficult**(1) 35:25 | | | |
| **deals**(2) 17:12 39:20 | | **defer**(6) 17:3 51:18 53:21 54:12 54:13 113:23 | | **difficulties**(3) 7:5 38:21 101:17 | | **doesn't**(8) 21:21 22:22 27:11 27:12 29:14 58:19 59:10 60:6 | |
| **dealt**(11) 24:22 24:24 48:12 49:2 80:4 85:22 87:6 110:22 110:23 116:24 118:8 | | | | **difficulty**(2) 58:24 58:25 | | | |
| | | **deferred**(1) 95:10 | | **diminish**(1) 51:2 | | **dog's**(1) 107:12 | |
| **debate**(2) 19:1 80:3 | | **defined**(6) 15:12 29:2 34:4 50:22 65:3 81:25 | | **diminished**(1) 50:20 | | **doing**(10) 33:17 33:24 61:22 78:19 103:22 106:4 108:11 108:16 108:17 118:5 | |
| **debbie**(1) 2:17 | | | | **direct**(4) 94:21 94:25 100:16 118:6 | | | |
| **debenture**(7) 3:35 5:30 53:11 53:18 117:24 120:11 120:13 | | **defining**(1) 15:18 | | **directed**(2) 95:4 96:4 | | | |
| | | **definite**(2) 103:20 103:25 | | **direction**(5) 79:3 96:2 100:25 105:25 | | **dollar**(1) 90:15 | |
| **debrors**(1) 26:17 | | **definition**(1) 51:1 | | **directly**(1) 49:6 | | **dollars**(4) 19:20 43:25 44:3 90:2 | |
| **debtor**(12) 28:7 52:5 57:1 57:11 61:17 66:2 68:25 69:17 75:10 76:24 77:13 109:9 | | **definitive**(1) 14:16 | | **director**(1) 48:1 | | **domination**(1) 23:2 | |
| | | **delano**(1) 4:46 | | **directors**(4) 48:4 48:5 48:11 118:5 | | **don't**(25) 63:4 63:5 63:8 63:16 67:2 67:4 67:9 67:14 70:15 79:12 83:14 83:20 85:7 87:11 89:5 91:15 97:23 100:3 101:12 104:24 110:11 111:9 115:12 115:21 117:15 | |
| | | **delaware**(12) 1:2 1:12 2:24 3:24 3:44 7:1 8:14 11:11 11:15 49:21 114:3 114:20 | | **directs**(1) 120:23 | | | |
| | | | | **disagree**(3) 17:2 112:2 115:21 | | | |
| | | | | **disagreement**(2) 13:4 26:6 | | | |
| | | **delay**(11) 12:17 23:19 24:17 43:20 43:23 45:9 47:7 47:8 47:20 58:19 74:20 | | **disallowance**(1) 96:3 | | | |
| | | | | **disallowed**(2) 93:10 93:12 | | **done**(20) 14:18 19:19 36:24 37:12 49:1 49:15 52:22 60:22 75:6 75:7 76:4 79:7 81:18 89:8 103:10 104:3 104:10 105:3 107:22 109:7 | |
| | | **deliberate**(1) 72:6 | | **disaster**(1) 54:7 | | | |
| | | **deliberation**(1) 72:9 | | **disclosure**(8) 74:11 74:14 74:18 74:22 75:12 75:15 93:17 93:21 | | | |
| | | **delivery**(2) 100:19 100:23 | | | | | |
| | | **demonstrates**(1) 46:21 | | **disclosures**(1) 61:14 | | | |
| | | **denial**(1) 14:15 | | **discovery**(16) 15:22 49:9 51:5 74:11 74:22 75:8 75:12 77:17 93:17 93:21 96:10 104:4 104:6 104:12 105:3 112:3 | | | |
| | | **denied**(2) 14:4 91:7 | | | | | |
| | | **dennis**(2) 4:2 43:6 | | | | | |
| | | **depend**(1) 59:10 | | **discretion**(5) 39:25 51:15 60:15 76:16 104:20 | | | |
| | | **dependent**(2) 104:17 111:16 | | | | | |
| | | **depending**(1) 90:3 | | | | | |
| | | **deposit**(1) 99:9 | | **discuss**(4) 38:19 44:24 89:22 93:4 | | | |
| | | **deposited**(1) 98:5 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| don't(26) 9:13 10:15 10:21 13:4 16:3 17:1 22:7 22:19 24:5 24:6 24:23 26:3 27:2 28:21 30:16 31:15 31:23 33:3 33:21 36:15 38:13 51:10 58:16 59:14 60:14 61:14 | | emea's(2) 97:16 97:24 | | everyone(12) 7:3 9:1 13:6 20:22 41:13 41:14 75:23 75:24 81:10 83:18 113:21 121:11 | | fairly(3) 10:17 11:12 30:25 | |
| | | emea's(1) 31:12 | | | | faith(10) 29:5 44:23 50:25 67:25 83:6 93:21 94:25 98:8 98:11 99:11 | |
| door(1) 24:18 | | emphasis(1) 43:13 | | everything(7) 16:25 38:12 40:2 40:3 51:4 112:8 119:14 | | | |
| doors(1) 45:25 | | emphasize(2) 31:17 71:8 | | | | fall(3) 23:20 47:19 83:5 | |
| dow(1) 4:29 | | employee(1) 50:23 | | everywhere(1) 108:12 | | fallback(5) 30:20 31:5 83:16 83:17 85:23 | |
| down(12) 7:22 16:5 22:23 36:8 42:19 77:24 86:6 106:24 107:13 108:14 109:2 110:1 | | employer(1) 96:18 | | evidence(20) 31:15 31:25 32:1 32:2 32:16 33:4 33:4 45:1 66:18 71:4 82:7 82:8 86:5 87:1 88:6 88:7 88:10 88:10 90:8 95:23 | | falling(1) 87:23 | |
| | | enacted(2) 16:22 17:8 | | | | familiar(3) 38:16 45:4 81:15 | |
| | | encompass(2) 31:20 31:21 | | | | far(4) 37:3 70:25 86:8 111:19 | |
| draft(3) 30:24 36:7 86:11 | | encourage(1) 112:9 | | | | farallon(1) 5:22 | |
| drafting(3) 27:16 32:7 104:6 | | end(20) 8:17 9:8 11:13 14:19 24:9 29:15 31:12 44:10 46:24 59:6 62:8 71:7 78:2 79:6 87:13 89:12 103:24 111:9 112:7 112:21 | | evidences(1) 44:23 | | farr(3) 3:28 4:21 97:3 | |
| drafts(1) 65:5 | | | | evidentiary(9) 55:25 65:19 88:2 88:4 88:5 88:11 88:14 90:6 90:10 | | fast(7) 20:22 52:19 52:19 110:4 110:5 111:4 111:24 | |
| drag(1) 45:19 | | | | | | | |
| dreams(1) 30:17 | | | | exact(2) 87:16 90:14 | | favor(2) 26:14 26:19 | |
| due(2) 56:7 75:24 | | endorse(2) 94:16 94:16 | | exactly(9) 30:13 31:8 78:11 79:17 80:25 81:2 83:20 95:21 106:4 | | february(2) 32:23 33:7 | |
| dunn(1) 43:6 | | energy(1) 27:16 | | | | federal(6) 26:8 59:18 60:13 64:5 66:11 66:12 66:14 103:19 | |
| dunne(8) 4:2 42:19 42:22 42:25 43:4 43:12 47:4 47:22 | | enforce(4) 58:4 91:12 91:13 102:6 | | | | | |
| | | enforceable(5) 57:17 68:2 90:20 91:10 91:11 | | examination(1) 86:9 | | | |
| | | | | examine(2) 71:5 75:6 | | feedback(1) 78:16 | |
| duplicate(1) 106:10 | | | | example(6) 42:13 88:15 90:12 93:6 100:4 101:9 | | feel(2) 9:7 20:15 | |
| duplicative(1) 102:9 | | enforced(2) 16:9 64:6 | | | | feeling(2) 60:6 92:13 | |
| during(1) 61:8 | | engage(3) 46:9 72:8 93:23 | | | | feels(1) 9:22 | |
| duties(2) 77:2 77:3 | | engineer(2) 57:12 58:8 | | excellent(1) 7:22 | | fees(4) 47:10 63:1 63:13 63:20 | |
| duty(3) 23:1 24:4 76:24 | | england(5) 65:10 76:12 107:25 | | excess(2) 13:9 13:12 | | feld(3) 2:11 5:14 52:1 | |
| | | english(3) 69:1 76:8 76:14 | | exchange(1) 2:29 | | fell(1) 23:21 | |
| each(18) 7:25 11:5 17:21 28:7 43:17 44:1 44:1 60:20 64:1 69:7 69:8 71:12 72:3 72:4 88:3 113:1 113:2 113:3 | | englishmen(1) 65:14 | | exciting(1) 36:1 | | few(11) 12:11 13:7 26:5 34:7 35:7 43:8 43:12 55:4 74:7 94:17 113:23 | |
| | | enjoining(1) 57:24 | | excluded(1) 117:3 | | | |
| | | enormous(1) 20:4 | | exclusive(11) 21:5 23:11 97:8 97:25 98:14 99:24 100:8 101:8 101:11 101:12 101:24 | | | |
| | | enough(3) 45:12 74:19 | | | | fewer(2) 120:1 | |
| earlier(4) 14:8 14:18 68:12 120:17 | | enter(2) 100:17 100:17 | | | | fiddle(1) 7:20 | |
| early(1) 112:9 | | entered(4) 16:9 52:8 84:25 93:19 | | excuse(2) 31:3 120:13 | | fiduciary(2) 23:1 23:1 | |
| easiest(1) 79:20 | | enthusiastic(1) 18:10 | | exercise(2) 68:9 107:16 | | field(1) 105:23 | |
| eat(1) 107:13 | | entire(1) 84:14 | | exercised(1) 118:20 | | fight(4) 36:22 37:3 108:21 108:22 | |
| ec2a(1) 2:30 | | entirely(2) 53:14 111:16 | | exercising(1) 76:15 | | fights(1) 36:20 | |
| echo(2) 45:13 120:12 | | entities(1) 33:1 112:25 | | exhibit(3) 15:6 33:8 | | figure(2) 30:6 81:20 | |
| ecro(1) 1:38 | | entitled(2) 72:2 72:4 | | exhilarating(1) 36:1 | | figured(1) 30:19 | |
| edges(1) 24:21 | | entity(1) 18:8 | | expect(1) 56:11 | | figuring(1) 28:15 | |
| edwin(1) 2:21 | | entry(1) 83:5 | | expected(1) 24:16 | | file(2) 32:14 120:22 | |
| | | equally(2) 9:16 9:19 | | expedient(1) 116:22 | | filed(17) 13:16 13:17 14:6 14:17 15:3 17:16 18:21 18:24 19:3 22:25 54:21 77:14 95:15 97:12 103:12 103:24 107:24 | |
| effect(6) 61:19 67:6 75:25 76:1 117:3 118:22 | | eric(2) 2:41 4:18 | | expedited(5) 44:7 45:22 46:23 47:7 47:17 | | | |
| | | ernst(3) 54:3 107:1 107:4 | | expeditious(2) 42:9 116:10 | | | |
| effective(1) 116:19 | | eroding(1) 47:9 | | expeditiously(2) 45:6 52:22 | | | |
| effectively(1) 45:6 | | erosion(1) 43:20 | | expensive(2) 87:15 89:9 | | filings(1) 44:18 | |
| efficiency(2) 34:6 35:21 | | escrow(23) 21:10 21:13 21:19 21:24 28:22 28:24 70:15 70:18 82:19 97:18 98:6 98:13 99:9 99:10 99:15 100:2 100:5 100:10 100:11 100:12 100:14 100:21 100:22 | | experience(1) 36:25 | | final(10) 19:14 47:14 77:12 91:11 94:24 96:11 96:14 96:20 100:25 111:17 | |
| efficient(9) 15:22 35:16 58:12 77:7 86:16 102:1 116:10 116:19 116:21 | | | | experienced(2) 61:10 61:14 | | | |
| | | | | expert(2) 65:7 95:24 | | | |
| | | | | experts(1) 86:3 | | finalized(1) 89:3 | |
| efforts(2) 47:20 120:3 | | | | explained(2) 58:11 84:20 | | finalizing(1) 95:1 | |
| either(12) 28:24 33:16 49:19 55:4 82:19 89:4 91:14 93:16 93:25 99:16 100:16 100:24 | | | | explanation(1) 22:5 | | finally(3) 22:23 102:23 104:14 | |
| | | especially(1) 118:21 | | express(1) 105:24 | | financial(3) 96:18 102:15 104:22 | |
| | | esq(34) 1:23 1:24 1:30 1:31 1:32 2:5 2:12 2:13 2:14 2:21 2:28 2:34 2:35 2:41 2:47 3:2 3:9 3:15 3:16 3:23 3:29 3:30 3:37 3:43 4:2 4:3 4:9 4:22 4:26 4:46 5:10 5:15 5:27 5:31 | | extend(1) 117:2 | | find(4) 61:5 68:1 73:24 106:3 | |
| electronic(2) 1:46 121:17 | | | | extensive(2) 44:18 55:25 | | finding(4) 26:20 26:24 77:1 104:17 | |
| element(2) 24:11 96:19 | | | | extent(9) 75:21 76:1 98:2 102:17 107:14 107:14 108:5 113:2 118:8 120:3 | | findings(1) 105:6 | |
| elements(1) 53:2 | | | | | | fine(8) 9:3 9:23 11:17 55:4 55:8 109:16 111:3 111:13 | |
| elephant(2) 57:11 58:10 | | | | | | | |
| eligible(1) 18:15 | | essence(1) 73:11 | | extraneous(1) 47:20 | | | |
| eliminated(2) 106:23 106:23 | | essentially(5) 14:4 28:5 59:19 98:15 100:6 | | extremely(2) 68:16 90:6 | | finger(1) 2:4 | |
| elliott(1) 2:40 | | established(1) 72:20 | | extrinsic(2) 66:17 87:1 | | finite(1) 47:8 | |
| eloquent(2) 40:12 118:2 | | establishment(1) 51:16 | | faa(2) 26:9 26:14 65:17 | | firm(1) 65:9 | |
| else(8) 37:17 83:18 90:15 108:14 113:5 114:6 117:10 121:1 | | estate(2) 76:22 106:23 | | face(1) 55:25 | | firmly(1) 9:13 | |
| | | estates(20) 13:12 18:18 18:19 20:6 38:18 39:4 39:10 39:11 39:19 40:8 43:16 43:17 44:1 44:2 51:1 54:6 54:18 54:23 116:2 116:18 | | faced(1) 38:16 | | first(37) 10:1 12:22 13:6 16:11 16:17 17:9 17:9 24:25 25:1 25:19 25:20 26:25 36:5 41:3 44:4 58:3 58:14 60:12 75:18 75:19 75:23 77:1 77:8 78:10 80:24 87:5 88:22 97:14 98:17 99:8 102:18 102:22 103:10 104:10 105:19 110:23 110:24 | |
| else's(1) 37:2 | | | | facilitate(1) 76:14 | | | |
| email(1) 74:24 | | | | facility(1) 114:2 | | | |
| emea(87) 2:19 9:3 10:9 13:16 14:20 16:8 17:2 17:23 18:21 19:16 20:1 20:24 21:20 21:22 22:1 22:24 24:4 26:3 26:7 28:7 29:17 33:5 34:9 38:8 38:22 39:7 39:23 39:24 40:16 40:18 41:3 41:10 41:12 41:16 44:11 44:17 48:10 48:11 48:13 48:14 48:15 48:20 49:2 50:13 58:16 62:3 72:14 73:1 73:3 73:14 73:19 74:23 75:10 77:4 77:13 77:18 78:11 85:13 85:18 93:6 93:9 93:12 93:19 94:16 94:22 95:14 96:12 104:17 106:15 107:2 107:3 108:2 108:3 108:8 109:9 109:19 110:15 110:18 111:5 111:10 112:17 112:24 118:7 118:7 | | estimate(2) 34:14 34:16 | | fact(22) 24:14 27:11 36:9 38:22 48:13 61:16 81:3 83:19 85:18 89:19 97:16 97:17 97:25 98:10 100:21 102:8 102:9 105:6 106:22 109:6 118:6 119:25 | | | |
| | | even(18) 18:3 31:17 32:1 32:16 36:15 36:23 46:1 64:7 64:8 64:9 74:14 74:16 74:18 80:11 87:2 89:16 91:20 111:7 | | | | | |
| | | | | | | fish(1) 90:17 | |
| | | | | | | fit(1) 7:20 | |
| | | evening(1) 9:9 | | | | five(4) 42:5 113:13 113:14 113:17 | |
| | | event(3) 32:24 97:23 99:22 | | facts(12) 13:2 41:23 44:13 49:25 66:4 66:7 66:8 104:7 104:22 108:1 110:19 110:21 | | flat(1) 23:20 | |
| | | eventually(2) 20:13 105:23 | | | | floor(2) 1:25 4:10 | |
| | | ever(6) 22:15 22:15 26:4 52:6 67:19 79:7 | | | | flyers(1) 109:3 | |
| | | every(13) 18:17 18:17 21:9 21:11 32:10 36:9 40:3 47:9 79:5 86:11 86:12 106:15 107:2 | | fail(1) 44:14 | | focus(3) 12:10 97:22 103:2 | |
| | | | | failed(2) 98:12 99:17 | | focused(1) 20:24 | |
| | | | | failure(2) 44:5 76:22 | | fog(5) 106:2 106:18 107:9 107:23 108:18 | |
| | | everybody(3) 37:2 37:17 67:22 | | fair(11) 9:10 43:18 58:16 79:13 79:25 80:19 80:20 95:20 116:9 116:19 116:21 | | folks(1) 27:3 | |
| | | everybody's(1) 26:6 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **follow**(9) 24:8 88:3 88:4 88:5 96:21 109:19 109:20 114:20 117:10 | | **from**(74) 8:9 8:24 10:16 11:10 11:13 12:21 17:20 17:24 18:10 18:12 20:20 22:11 28:9 28:11 28:22 28:24 29:23 31:11 32:3 32:19 39:9 39:14 42:7 46:21 50:7 50:22 51:7 51:10 53:3 54:13 55:23 56:24 59:6 59:23 60:20 65:15 70:17 73:15 73:18 74:3 74:3 75:12 75:15 76:8 76:15 82:19 83:8 85:9 86:5 92:15 93:13 94:22 95:9 97:3 99:15 99:21 101:5 105:20 106:19 108:9 108:9 109:2 110:19 110:25 112:8 113:19 114:6 116:20 117:21 118:2 118:4 119:6 119:12 121:17 | | **good**(48) 7:3 7:7 7:8 7:9 7:16 7:17 9:1 9:2 10:19 11:20 11:21 16:1 25:17 25:18 25:18 26:4 29:5 37:18 37:19 43:4 43:5 44:23 48:2 48:2 49:13 53:8 53:24 53:25 54:1 56:14 67:25 78:7 83:6 92:24 93:20 94:13 94:25 96:24 96:25 96:25 98:8 98:11 99:11 119:9 119:10 119:11 120:9 121:11 | | **happened**(10) 13:3 30:9 30:10 50:2 50:9 50:19 84:23 93:22 101:3 110:16 |
| **followed**(2) 68:20 117:12 | | | | | | **happens**(3) 69:14 88:11 100:15 |
| **following**(4) 12:3 32:24 36:4 99:7 | | | | **goodman's**(1) 108:10 | | **happy**(1) 111:23 |
| **food**(1) 105:9 | | | | **got**(15) 31:6 36:13 39:5 60:15 60:25 78:9 | | **hard**(1) 38:11 |
| **foot**(1) 22:15 | | | | 81:12 85:5 86:3 88:8 89:3 91:13 103:11 | | **harrisburg**(1) 1:42 |
| **foot-dragging**(1) 46:19 | | | | 108:8 113:1 | | **harron**(1) 2:21 |
| **footprint**(1) 19:11 | | | | | | **has**(56) 12:9 16:8 16:20 17:5 17:15 17:16 |
| **for**(213) 1:2 1:22 2:4 2:19 2:40 2:46 3:1 3:8 3:21 3:35 4:1 4:16 4:21 4:25 4:29 4:33 4:37 4:41 4:45 5:1 5:5 5:9 5:13 5:18 5:22 5:26 5:30 5:34 5:38 5:42 5:46 6:1 6:5 6:9 6:13 6:17 6:21 6:25 7:9 9:11 10:21 12:16 12:17 13:25 14:3 14:14 14:16 17:16 18:15 18:23 20:2 20:13 21:23 21:23 26:1 26:17 28:10 28:14 28:22 29:6 29:12 30:3 30:5 30:11 32:4 32:10 32:12 32:13 33:1 33:10 33:16 34:1 34:22 36:4 36:7 36:10 36:22 37:7 37:9 37:18 37:19 38:4 38:4 38:10 38:11 38:20 38:21 38:24 39:4 39:5 39:15 40:5 40:22 41:1 41:18 42:1 42:13 43:5 44:12 44:16 45:5 45:19 45:20 47:16 49:1 49:3 49:12 51:24 52:1 52:6 52:7 52:17 53:9 53:17 54:6 54:13 54:14 54:17 55:4 57:12 57:17 59:25 61:4 61:12 61:21 62:3 62:23 63:4 63:23 63:24 64:10 66:23 66:24 67:1 67:6 67:10 67:22 69:13 70:23 71:1 72:24 73:22 74:12 74:13 74:22 75:9 75:15 75:15 76:17 76:20 76:23 78:8 79:9 79:12 88:25 90:12 92:3 92:10 92:19 93:5 93:6 93:16 94:11 94:15 94:24 95:18 96:10 96:10 98:9 98:18 98:21 99:4 99:6 99:23 100:4 100:7 100:13 100:24 101:9 101:19 102:15 103:5 103:23 104:11 105:9 107:13 108:13 112:7 112:7 112:9 112:19 112:24 113:1 113:1 113:3 113:17 114:8 116:11 117:17 118:24 118:25 119:1 119:8 119:12 119:12 119:15 120:10 120:11 120:15 121:4 121:7 | | **front**(6) 12:2 15:25 20:22 36:20 36:21 **fsd**(1) 76:16 **full**(2) 14:21 29:16 **fully**(1) 79:4 **function**(3) 87:11 87:12 87:13 **fund**(1) 19:18 **fundamental**(4) 26:7 28:20 40:6 41:12 **fundamentally**(2) 38:21 39:20 **funding**(6) 19:13 19:14 19:20 19:21 19:24 19:24 **funds**(3) 20:6 28:22 100:23 **further**(6) 15:11 24:17 38:20 46:15 47:7 55:4 **furthermore**(1) 94:23 **gale**(1) 2:28 **gallagher**(3) 3:28 4:21 97:3 **game**(1) 108:22 **gave**(4) 8:10 82:2 93:7 103:23 **generate**(2) 20:3 20:4 **generated**(2) 21:10 73:6 **generating**(1) 73:3 **generous**(1) 34:17 **geographical**(1) 60:21 **germane**(1) 29:14 **get**(44) 10:25 12:19 24:15 24:15 27:9 27:23 28:21 28:22 31:13 36:19 36:23 36:25 37:1 37:6 37:11 38:19 42:9 42:20 43:25 44:3 54:8 61:2 62:2 63:19 63:20 73:23 74:17 74:20 76:10 76:17 81:18 81:20 83:1 83:14 84:18 85:10 86:16 88:22 89:15 90:21 92:15 107:22 108:16 108:17 **gets**(5) 15:13 28:24 58:3 60:7 102:4 **getting**(7) 7:24 11:12 16:2 40:21 48:17 75:15 75:24 **ginger**(1) 1:38 **give**(11) 11:5 34:1 37:23 47:2 47:3 70:15 80:7 89:16 91:25 95:19 119:18 **given**(7) 37:23 48:23 54:15 77:20 94:6 105:8 118:7 **gives**(4) 39:25 63:8 68:3 70:2 **giving**(5) 32:15 45:23 56:5 88:6 118:20 **gleaned**(2) 29:23 31:11 **global**(2) 80:9 80:14 **goes**(6) 15:15 65:3 79:3 86:5 86:21 97:7 **going**(81) 7:14 8:16 10:22 12:2 12:21 15:10 17:12 21:5 23:19 23:19 23:19 24:6 24:7 24:8 24:15 24:15 25:3 25:24 27:3 27:22 27:25 28:6 28:13 28:17 29:11 29:25 30:1 30:2 35:10 36:15 37:2 37:3 37:9 38:13 46:2 47:1 47:23 56:2 56:8 57:10 58:9 61:22 63:10 64:17 72:10 73:4 74:3 74:16 74:18 74:20 76:10 76:13 77:1 78:25 81:9 81:14 81:19 82:12 83:17 90:7 90:10 90:11 91:22 92:13 95:7 101:15 102:8 106:3 108:18 108:21 109:13 109:14 109:19 111:8 114:14 114:15 114:23 114:24 114:25 117:7 117:16 **gone**(3) 50:20 71:1 87:20 | | **governed**(1) 66:14 **governs**(1) 29:23 **grabbed**(1) 105:16 **granite**(1) 26:16 **grant**(1) 97:24 **granted**(3) 91:8 91:10 91:17 **grapple**(1) 74:2 **great**(3) 37:25 67:23 104:20 **greater**(2) 47:12 100:4 **greatest**(1) 50:25 **green**(1) 18:15 **greenleaf**(1) 2:40 **gregor**(1) 6:22 **gross**(45) 1:18 8:6 11:22 25:18 25:20 34:12 38:3 39:12 41:1 43:5 48:3 49:12 49:23 51:22 78:8 78:15 78:24 79:21 79:23 80:4 80:6 81:9 81:15 84:10 84:21 85:5 90:2 90:4 90:22 92:10 92:16 92:19 94:11 94:14 96:2 96:25 113:13 113:24 113:24 114:2 114:19 117:11 118:12 119:5 120:9 **ground**(3) 64:4 74:10 75:10 **group**(9) 4:1 11:25 43:7 49:12 50:1 50:22 52:18 63:7 101:21 **groups**(3) 49:13 60:20 60:21 **guarantee**(1) 57:16 **guidance**(3) 92:4 92:15 92:19 **guidelines**(1) 8:4 **guiding**(1) 27:4 **guiney**(9) 3:37 53:8 53:9 53:11 53:17 53:23 120:9 120:10 120:25 **gump**(3) 2:11 5:14 52:1 **guy**(1) 35:2 **guyder**(8) 3:16 53:25 53:25 54:2 54:6 54:17 54:25 55:1 **guys**(1) 109:10 **had**(40) 8:6 8:15 8:23 9:4 12:4 13:17 14:18 19:1 19:5 19:15 20:1 21:10 22:21 31:5 33:12 36:7 38:10 65:22 65:23 75:1 81:18 84:22 84:24 86:1 88:9 92:13 93:15 97:21 98:13 103:22 104:1 109:8 110:16 111:4 113:25 117:3 118:15 118:15 118:24 119:15 **hadley**(3) 4:1 4:45 43:6 **hadn't**(1) 79:24 **hadn't**(1) 54:20 **half**(7) 23:16 55:23 56:7 67:22 91:12 110:8 110:15 **half-an-hour**(1) 55:22 **hamilton**(1) 1:29 **hand**(3) 54:23 68:7 68:9 **handle**(2) 35:23 36:1 **handles**(1) 63:1 **hands**(3) 46:4 46:22 47:5 **hanrahan**(1) 4:22 **happen**(10) 20:12 25:3 36:15 37:4 70:18 76:4 78:21 85:12 91:1 106:20 | | 22:8 22:11 23:5 24:13 24:13 24:24 32:8 35:9 38:22 40:7 41:2 41:3 41:5 42:20 45:24 50:1 50:5 50:20 52:8 58:11 58:11 58:15 61:17 67:1 69:9 71:13 72:13 72:15 74:22 75:23 76:18 81:10 83:8 84:5 85:11 88:4 88:5 92:21 95:15 97:13 103:10 104:10 104:10 105:15 106:16 112:19 112:20 115:14 115:20 116:1 **hasn't**(4) 66:2 88:17 93:22 101:2 **haste**(1) 49:16 **hats**(1) 107:6 **hauer**(3) 2:11 5:14 52:1 **have**(273) 7:11 8:6 8:13 8:14 8:15 10:5 10:16 10:19 11:25 12:10 12:10 12:11 12:14 13:3 14:6 14:9 14:19 14:23 15:18 15:21 16:5 16:14 17:7 18:3 18:21 18:22 18:24 19:7 19:16 19:19 20:1 20:7 20:18 20:20 21:23 22:7 22:12 22:14 22:19 22:24 23:8 23:17 23:21 24:3 24:8 24:9 24:25 27:1 27:14 27:15 30:19 32:14 33:12 33:12 33:15 33:24 35:22 35:22 35:23 36:17 36:19 36:20 37:1 37:6 37:10 37:11 37:14 38:11 39:12 39:17 39:20 40:1 42:12 42:15 42:21 42:23 43:2 43:9 43:15 44:8 44:14 44:15 45:12 45:18 46:8 47:1 47:8 47:13 47:25 48:21 48:22 50:9 50:9 50:25 51:1 51:3 51:17 52:13 53:1 53:12 55:9 56:1 56:10 58:12 58:23 58:25 59:5 60:6 60:14 60:18 60:25 61:2 61:11 61:15 61:19 61:23 62:19 62:22 63:21 63:23 65:2 65:3 66:13 66:19 67:2 67:3 67:5 68:16 68:20 70:10 71:16 71:17 71:17 71:18 71:23 72:14 72:17 73:12 73:18 74:1 74:24 74:24 75:25 76:5 77:1 77:4 77:9 77:18 77:23 78:9 78:20 79:4 79:8 79:13 79:23 80:8 80:13 80:23 80:24 81:4 81:13 81:20 82:12 82:15 82:15 82:17 83:25 84:11 85:2 85:7 85:14 85:16 86:1 86:23 87:20 88:6 88:8 88:11 89:5 89:16 90:10 90:14 90:24 91:2 91:3 91:4 91:4 91:6 91:8 91:10 91:16 92:7 92:14 93:3 93:4 93:8 93:11 93:23 94:17 96:6 96:8 96:20 96:22 97:12 97:15 97:25 98:3 98:24 99:6 100:11 101:10 101:11 101:12 101:13 101:14 101:16 101:23 101:25 101:25 102:17 102:19 103:11 103:12 105:4 106:10 106:16 106:21 106:21 107:3 107:6 107:11 108:2 108:9 108:10 108:14 108:16 108:17 108:17 109:14 110:13 110:14 110:14 110:22 110:23 111:1 111:8 111:14 111:25 113:1 113:1 113:2 113:25 113:25 114:16 115:3 115:13 115:18 115:18 116:4 116:6 116:14 116:16 116:19 116:22 116:22 116:24 116:25 116:25 118:15 118:23 118:25 120:1 121:3 **haven't**(8) 66:3 68:5 68:8 75:1 93:10 93:24 95:24 104:3 **haven't**(7) 9:4 11:18 23:18 32:1 38:17 46:13 54:21 **having**(17) 16:22 19:3 19:4 19:5 21:17 21:20 21:20 36:24 59:5 60:19 98:12 101:13 101:14 102:18 105:1 106:11 117:6 **hbk**(2) 4:16 4:17 **he's**(1) 65:25 **heading**(2) 65:11 65:13 |
| **forced**(2) 44:10 106:17 | | | | | | |
| **forceful**(1) 107:19 | | | | | | |
| **forcefully**(1) 46:20 | | | | | | |
| **foreclose**(1) 10:22 | | | | | | |
| **foregoing**(1) 121:16 | | | | | | |
| **foreign**(2) 57:24 57:25 | | | | | | |
| **foremost**(1) 13:6 | | | | | | |
| **forever**(1) 23:8 | | | | | | |
| **forget**(2) 85:17 91:15 | | | | | | |
| **form**(9) 30:24 31:1 39:8 48:7 54:19 56:4 72:5 103:25 116:12 | | | | | | |
| **former**(2) 47:25 48:3 | | | | | | |
| **forming**(1) 60:15 | | | | | | |
| **formulate**(2) 66:25 67:10 | | | | | | |
| **formulation**(1) 75:5 | | | | | | |
| **forth**(5) 21:18 29:25 81:4 106:10 112:20 | | | | | | |
| **forum**(5) 45:10 77:19 80:10 80:15 95:8 | | | | | | |
| **forward**(16) 15:15 25:5 40:8 41:17 44:6 74:3 74:12 80:20 80:21 81:1 81:6 87:8 102:11 109:23 109:23 117:7 | | | | | | |
| **found**(3) 27:7 77:14 118:14 | | | | | | |
| **four**(5) 29:23 40:22 88:18 106:24 114:22 | | | | | | |
| **four-year**(1) 22:6 | | | | | | |
| **fourth**(1) 106:23 | | | | | | |
| **frame**(1) 95:20 | | | | | | |
| **framework**(1) 72:19 | | | | | | |
| **france**(2) 73:3 112:20 | | | | | | |
| **frankel,llp**(1) 4:25 | | | | | | |
| **frankly**(7) 9:12 24:23 28:21 51:7 111:3 111:12 116:15 | | | | | | |
| **fred**(2) 2:14 51:25 | | | | | | |
| **freemantle**(1) 5:10 | | | | | | |
| **fresh**(1) 26:5 | | | | | | |
| **friend**(1) 99:4 | | | | | | |
| **friends**(4) 49:23 93:16 93:22 108:21 | | | | | | |

| Word | Page:Line |
|---|---|
| **hear**(15) 8:12 39:6 40:1 40:2 40:24 48:19 51:10 53:14 55:23 56:7 56:17 113:9 114:6 115:4 115:6 | |
| **heard**(19) 10:6 37:24 40:21 42:23 47:24 48:9 50:22 53:20 62:8 73:19 85:4 94:22 95:24 101:18 102:21 105:12 113:9 119:19 119:20 | |
| **hearing**(37) 11:14 11:15 15:4 16:7 17:16 17:17 17:22 24:24 25:20 35:24 36:24 38:6 39:22 40:4 40:15 41:7 42:9 42:11 44:17 48:23 50:13 50:14 65:22 70:1 79:22 87:24 87:25 88:9 89:15 103:2 111:7 111:12 111:12 111:14 111:20 118:24 121:13 | |
| **hearings**(12) 15:23 24:22 39:23 47:10 49:20 55:25 70:21 71:11 88:19 88:19 89:13 109:15 | |
| **heavily**(1) 32:5 | |
| **heavily-negotiated**(1) 39:8 | |
| **help**(3) 39:12 77:19 119:25 | |
| **helpful**(3) 12:19 42:7 66:5 | |
| **herbert**(4) 2:27 5:26 32:4 107:4 | |
| **herd**(1) 37:11 | |
| **here**(72) 7:10 8:8 9:10 9:21 11:24 13:17 13:24 14:1 14:14 14:15 17:1 21:17 21:20 22:6 22:18 23:16 24:12 26:21 27:2 27:25 29:8 29:16 29:25 30:25 32:19 37:11 42:19 44:14 46:18 49:12 54:2 55:9 55:19 57:12 58:4 58:17 59:7 60:7 62:7 62:9 67:7 68:10 70:9 71:8 72:12 74:24 77:5 77:5 78:9 78:16 79:24 84:11 84:19 85:4 85:12 86:2 86:2 89:8 89:9 91:20 93:11 105:19 106:8 106:12 106:16 107:15 108:9 109:18 109:22 110:15 111:22 116:16 | |
| **here's**(1) 11:4 | |
| **herring**(1) 66:5 | |
| **he's**(1) 39:15 | |
| **high**(1) 37:16 | |
| **higher**(1) 24:16 | |
| **highest**(1) 14:9 | |
| **hirsh**(2) 118:4 118:4 | |
| **his**(7) 32:7 32:9 32:10 53:15 54:14 80:5 84:21 | |
| **history**(4) 46:6 64:20 65:4 67:13 | |
| **hit**(1) 47:4 | |
| **hoc**(7) 4:1 4:45 11:25 43:7 52:17 62:16 67:7 | |
| **hockey**(1) 108:22 | |
| **hodara**(10) 2:14 51:16 51:21 51:24 51:25 51:25 52:3 52:21 53:6 119:20 | |
| **hogan**(1) 4:37 | |
| **hold**(2) 28:13 30:1 | |
| **holders**(3) 115:24 116:7 120:15 | |
| **holding**(1) 76:11 | |
| **hondo**(1) 6:6 | |
| **honor**(114) 7:7 7:10 7:15 8:22 9:2 9:24 10:5 10:24 11:20 12:21 13:2 13:15 13:19 13:22 14:22 15:15 16:3 18:15 20:24 23:15 24:19 25:6 29:20 30:4 30:7 31:8 33:22 37:21 40:24 42:18 43:4 45:2 46:8 47:5 47:21 49:11 49:23 51:15 52:4 52:15 53:12 53:23 53:25 55:11 55:13 55:16 56:3 57:22 57:24 59:1 59:14 60:3 60:17 61:25 62:19 66:21 67:8 68:7 70:8 73:21 73:23 74:1 76:22 77:1 77:14 78:24 79:20 80:8 81:14 84:10 85:5 85:25 88:21 89:10 90:21 92:3 92:15 92:18 92:20 92:22 93:14 94:4 94:19 97:22 98:2 99:3 100:2 101:4 101:9 102:3 102:5 102:10 102:20 102:23 103:9 103:18 103:23 104:8 104:14 105:1 105:10 108:15 109:6 109:22 109:25 111:7 114:10 117:8 119:9 120:12 120:18 120:22 121:10 | |
| **honorable**(1) 1:18 | |
| **honored**(1) 25:24 | |
| **honors**(14) 12:3 22:13 46:11 46:16 53:8 97:23 97:23 103:10 105:17 106:22 110:13 114:17 117:23 120:25 | |
| **honor's**(1) 52:16 | |
| **hook**(1) 99:5 | |
| **hope**(4) 7:19 9:9 11:18 70:24 | |
| **hopefully**(1) 97:4 | |
| **hoping**(2) 58:14 117:5 | |
| **hot**(1) 31:20 | |
| **hour**(2) 11:5 105:19 | |
| **hours**(2) 9:16 26:1 | |
| **house**(1) 2:29 | |
| **how**(48) 8:20 8:21 9:5 11:13 12:1 17:12 17:20 22:5 27:18 27:18 28:14 28:15 28:22 29:17 30:24 35:1 36:15 37:8 43:25 44:3 45:20 48:24 48:25 55:18 56:2 56:3 60:9 60:10 60:15 60:17 63:9 63:12 65:5 67:6 69:18 74:17 75:6 76:10 78:21 82:4 84:13 84:25 88:19 98:6 102:4 102:12 112:16 114:19 | |
| **howard**(3) 1:31 12:23 25:8 | |
| **however**(8) 43:19 49:5 50:6 66:20 105:1 111:13 116:5 117:3 | |
| **hubbard**(1) 2:33 | |
| **huberty**(1) 2:35 | |
| **huge**(3) 116:18 116:25 117:1 | |
| **hughes**(1) 2:33 | |
| **human**(1) 105:22 | |
| **hundred**(2) 103:24 108:11 | |
| **hundreds**(2) 19:20 71:18 | |
| **hurtz**(5) 47:25 48:2 48:3 48:17 48:20 | |
| **i'd**(6) 64:13 86:3 96:1 97:7 108:23 120:4 | |
| **i'll**(12) 65:23 77:23 80:6 81:17 85:7 88:22 88:22 92:10 94:18 97:5 105:17 115:15 | |
| **i'm**(14) 67:5 78:25 80:7 81:9 81:13 91:22 92:13 92:25 95:6 95:7 97:1 97:5 100:4 115:6 | |
| **i've**(3) 75:2 83:17 87:6 | |
| **icdr**(1) 62:20 | |
| **idea**(3) 62:18 67:23 107:7 | |
| **identical**(3) 87:18 88:14 90:25 | |
| **ifsa**(52) 16:25 17:25 18:2 18:3 18:5 19:13 19:21 21:22 21:24 27:4 28:3 32:6 32:8 32:21 32:24 33:5 33:13 33:18 41:5 44:23 62:15 64:13 65:6 66:9 68:3 68:10 69:17 69:20 69:23 69:25 70:17 70:20 71:11 79:17 79:24 80:21 81:1 81:3 81:10 82:16 83:17 84:25 94:25 97:18 98:4 98:13 98:17 99:5 100:6 100:18 101:2 108:6 | |
| **imagine**(1) 36:23 | |
| **imagined**(1) 30:17 | |
| **immediately**(3) 83:5 111:6 112:4 | |
| **impact**(1) 42:14 | |
| **impeach**(1) 117:2 | |
| **implemented**(1) 36:11 | |
| **implicit**(1) 64:17 | |
| **important**(15) 17:11 17:24 21:9 28:4 35:20 33:20 35:12 49:15 51:8 53:3 60:16 71:8 83:2 112:6 116:23 | |
| **importantly**(3) 45:9 88:21 99:14 | |
| **impose**(5) 46:22 66:25 68:7 68:10 103:10 | |
| **imposed**(1) 60:10 | |
| **imposing**(1) 104:9 | |
| **impression**(1) 73:18 | |
| **impressions**(1) 32:15 | |
| **inadvertently**(1) 117:3 | |
| **inc**(4) 1:7 4:41 5:38 54:3 | |
| **include**(2) 27:17 48:20 | |
| **included**(5) 34:16 52:11 63:5 115:16 | |
| **including**(3) 37:13 54:14 119:19 | |
| **inclusion**(1) 119:23 | |
| **inconceivable**(2) 23:12 56:6 | |
| **inconsistencies**(1) 57:16 | |
| **inconsistency**(2) 68:5 110:7 | |
| **inconsistent**(2) 23:20 42:3 | |
| **incorporated**(2) 17:25 17:25 | |
| **incorporates**(1) 23:14 | |
| **incorrect**(1) 84:4 | |
| **incredible**(2) 27:15 87:15 | |
| **incredibly**(2) 90:1 95:16 | |
| **indeed**(4) 14:18 18:13 21:24 22:8 | |
| **indenture**(4) 52:12 116:6 116:7 119:2 | |
| **indentures**(1) 115:24 | |
| **independent**(4) 90:23 90:24 90:25 104:16 | |
| **independently**(1) 71:24 | |
| **indicating**(1) 34:15 | |
| **indication**(1) 8:17 | |
| **indiscernible**(6) 40:12 40:18 40:21 41:5 45:15 92:2 | |
| **individual**(4) 71:18 72:25 82:11 103:6 | |
| **inefficiencies**(1) 120:4 | |
| **inefficient**(1) 119:25 | |
| **inertia**(1) 46:24 | |
| **inexplicably**(1) 38:23 | |
| **inextricably**(1) 48:14 | |
| **infected**(1) 73:16 | |
| **infer**(1) 74:3 | |
| **information**(2) 116:15 119:2 | |
| **informed**(1) 63:9 | |
| **ingersoll**(1) 3:8 | |
| **inherent**(4) 16:17 16:18 17:5 68:24 | |
| **initial**(2) 39:11 65:5 | |
| **input**(1) 40:11 | |
| **insisting**(1) 69:16 | |
| **insolvency**(1) 69:8 | |
| **instance**(1) 58:15 | |
| **instead**(4) 32:21 46:22 49:4 68:21 | |
| **institution**(2) 62:23 64:8 | |
| **institutions**(2) 62:20 63:25 | |
| **intellectual**(3) 50:3 73:2 73:4 | |
| **intended**(6) 8:23 48:24 79:3 86:19 87:4 97:21 | |
| **intending**(1) 49:4 | |
| **intent**(9) 29:18 29:20 29:22 29:24 30:6 30:6 30:18 | |
| **intention**(5) 83:3 84:12 84:13 85:21 105:24 | |
| **intentionally**(5) 57:12 57:18 58:8 82:5 107:11 | |
| **intentions**(1) 80:2 | |
| **intents**(1) 31:10 | |
| **interest**(5) 80:5 86:14 86:14 109:16 117:1 119:4 | |
| **interested**(10) 4:29 4:33 5:9 5:22 5:38 5:42 5:46 6:1 6:13 6:17 | |
| **interesting**(2) 27:7 60:2 | |
| **interestingly**(1) 32:17 | |
| **interests**(6) 37:13 50:23 50:24 50:24 50:25 58:17 | |
| **interim**(4) 19:21 83:11 83:21 84:1 | |
| **intermixing**(1) 42:4 | |
| **international**(5) 59:17 61:12 61:15 62:20 72:5 | |
| **interpose**(1) 43:23 | |
| **intertwined**(1) 108:3 | |
| **into**(32) 7:25 10:14 13:11 14:5 16:9 17:25 20:9 23:23 26:20 26:22 27:9 43:24 44:1 45:8 45:16 46:5 53:7 53:25 75:2 81:14 83:5 83:5 84:25 93:19 100:17 100:17 105:24 106:18 106:22 107:9 108:8 111:6 | |
| **invoices**(1) 64:1 | |
| **involved**(10) 18:19 32:5 32:7 32:20 86:18 93:11 101:17 101:25 118:14 | |
| **ireland**(2) 73:3 112:19 | |
| **irrespectively**(1) 40:8 | |
| **isn't**(3) 70:3 81:1 88:9 95:17 | |
| **isn't**(5) 26:21 29:14 31:19 36:6 50:15 | |
| **isolated**(1) 44:19 | |
| **israel**(1) 106:23 | |
| **issue**(38) 12:24 15:25 16:25 24:23 24:24 26:21 26:21 31:7 33:20 35:12 35:21 37:14 39:6 40:13 40:20 40:20 52:15 53:12 53:19 53:22 63:20 75:25 80:4 88:23 95:10 96:8 97:21 101:10 101:13 101:14 104:8 110:6 114:21 118:9 119:19 120:19 120:20 121:1 | |
| **issued**(3) 13:19 13:24 19:6 | |
| **issues**(54) 16:5 17:6 17:13 17:13 22:4 22:8 26:23 26:24 35:25 36:8 42:14 43:18 45:5 46:21 47:20 48:12 48:13 49:6 50:13 55:25 58:24 71:23 74:4 74:20 75:21 76:2 76:3 77:16 77:17 80:9 80:13 81:5 88:20 89:21 89:23 89:24 93:11 93:21 93:24 95:20 96:9 105:14 107:19 109:16 110:24 110:25 111:2 111:5 111:14 111:16 116:23 117:16 119:3 121:8 | |
| **it's**(59) 62:21 63:24 64:4 64:14 64:16 66:9 67:25 68:23 70:2 70:7 70:9 70:10 70:25 71:7 73:16 74:10 74:19 75:9 75:20 76:11 78:2 78:13 78:21 79:5 79:21 81:2 81:21 81:21 82:10 83:2 84:11 84:15 85:17 86:20 87:2 87:11 89:8 89:19 91:12 96:7 96:13 96:23 98:2 100:6 101:15 101:19 104:21 105:25 107:7 107:17 107:12 108:13 108:15 109:7 110:17 112:6 116:15 116:20 117:1 | |
| **italy**(1) 112:20 | |
| **its**(6) 18:23 19:14 76:15 76:15 93:6 115:24 | |
| **itself**(5) 27:10 31:11 42:8 52:7 64:11 | |
| **it's**(39) 8:9 9:3 10:6 15:16 17:24 19:21 20:25 26:5 26:18 27:15 28:4 28:20 31:4 31:14 31:15 31:20 31:22 32:15 32:16 32:18 34:20 35:12 37:2 38:11 39:8 41:18 42:22 45:15 56:5 58:5 58:5 58:6 58:7 58:10 58:21 59:17 62:6 62:8 | |
| **i'd**(4) 25:5 25:10 38:15 61:16 | |
| **i'll**(7) 11:2 27:9 29:3 33:9 34:7 43:8 52:6 | |
| **i'm**(31) 5:17 15:3 16:7 17:16 17:22 18:6 18:18 24:22 24:24 32:19 32:22 33:6 40:11 52:4 69:19 70:1 70:20 71:11 88:8 88:19 100:24 106:25 110:22 112:17 | |
| **i've**(3) 10:17 36:24 42:22 | |
| **j.p**(3) 21:3 21:5 100:5 | |
| **jack**(1) 6:21 | |
| **james**(5) 1:32 3:42 5:18 5:19 40:16 | |
| **january**(2) 24:16 52:16 | |
| **jim**(1) 5:35 | |
| **job**(1) 26:4 | |
| **john**(1) 118:12 | |
| **joined**(1) 96:8 | |
| **joint**(24) 5:27 15:3 16:7 17:16 17:22 18:6 18:8 24:22 24:24 32:19 32:22 33:6 40:11 52:4 69:19 70:1 70:20 71:11 88:8 88:19 100:24 106:25 110:22 112:17 | |
| **jointly**(3) 1:6 56:1 72:1 99:1 100:16 | |
| **joke**(1) 108:21 | |
| **jones**(2) 4:8 4:29 | |
| **joseph**(1) 3:15 | |
| **judge**(49) 1:18 1:19 8:6 8:18 11:22 25:18 25:20 34:12 38:3 39:12 41:1 43:5 48:3 49:12 49:23 51:22 78:8 78:15 78:24 79:21 79:22 80:4 80:6 81:9 81:15 84:10 84:21 85:9 90:2 90:4 90:22 92:10 92:15 92:19 94:11 94:14 96:22 96:25 105:1 113:13 113:24 113:24 114:25 114:19 117:11 118:11 118:12 119:5 120:9 | |
| **judgment**(3) 58:2 58:4 90:20 | |
| **judgments**(5) 23:20 57:14 58:12 70:12 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**judicial**(5) 50:17 59:4 59:6 66:16 101:22

**juncture**(1) 43:24

**june**(18) 8:11 12:4 13:3 13:8 19:2 41:2 41:6 42:10 48:4 54:20 91:24 103:14 106:5 106:13 107:21 107:24 108:5 108:9

**jurisdiction**(57) 12:23 16:6 16:6 16:11 16:14 16:16 16:17 16:19 17:5 18:6 18:7 18:23 19:7 20:8 20:23 21:2 21:4 21:5 21:14 21:23 21:24 22:3 22:17 22:20 23:3 23:11 23:13 31:7 33:19 49:24 49:24 50:6 50:18 69:9 69:12 69:19 70:16 70:20 70:21 80:12 84:5 93:24 97:9 98:1 98:14 98:20 98:20 99:24 100:8 101:8 101:10 101:11 101:12 101:13 101:14 101:24 101:24 111:22

**jurisdictional**(6) 22:16 69:11 80:15 90:14 93:18 99:5

**jurisdictions**(6) 14:21 14:22 69:21 88:3 90:8 106:21

**jurisprudence**(1) 57:19

**jurists**(1) 61:4

**just**(77) 9:4 9:23 10:2 10:7 10:25 13:1 13:5 13:7 15:16 19:7 22:21 25:1 25:1 26:5 26:5 26:16 27:10 28:1 28:12 30:7 30:8 30:15 30:21 31:11 34:6 34:20 35:3 35:11 38:5 44:4 44:7 45:14 46:19 46:24 47:4 49:5 52:6 53:12 53:17 54:6 54:9 54:15 54:22 55:15 55:21 55:21 55:24 56:8 58:13 59:1 60:18 61:21 63:3 64:22 68:20 74:7 75:2 75:13 77:12 85:6 88:15 92:15 95:17 101:16 107:8 107:22 108:10 109:8 112:15 116:7 116:9 117:23 119:1 119:7 119:16 120:4 120:12

**justice**(107) 7:9 7:12 7:13 7:16 7:18 7:21 7:22 9:13 9:17 10:18 11:8 11:9 11:15 11:22 15:15 17:5 18:12 21:4 22:2 25:19 34:10 34:12 34:14 34:20 34:23 35:9 35:14 37:24 37:25 38:3 38:5 43:2 43:5 47:23 48:2 48:16 48:18 48:19 51:9 51:11 51:18 51:20 51:22 51:23 52:25 53:14 53:21 54:1 55:3 55:6 56:4 56:10 56:19 63:13 67:8 70:8 71:22 74:1 77:6 78:1 78:3 78:6 78:7 78:23 79:19 88:17 91:22 92:7 92:10 92:17 92:24 94:2 94:5 94:9 94:12 94:13 95:6 95:9 95:12 96:1 96:22 97:1 105:13 109:15 111:24 113:8 113:12 113:22 113:24 114:8 114:11 114:19 114:23 114:25 115:3 115:8 115:10 117:9 117:13 117:22 118:1 118:10 119:5 119:11 120:10 121:4 121:5

**justifies**(1) 45:23

**justin**(1) 3:23

**kamunting**(1) 6:21

**kathleen**(2) 3:9 4:9

**keep**(4) 19:19 19:24 25:25 40:17

**keeps**(1) 45:25

**kenney**(1) 3:2

**kerik**(2) 6:25 38:4

**kettle**(1) 90:16

**kevin**(2) 1:18 32:3

**key**(6) 24:23 24:23 26:5 43:12 71:16 85:18

**keys**(1) 71:16

**khan**(1) 5:15

**kick**(1) 13:1

**kim**(2) 5:18 5:19

**kind**(13) 21:1 44:24 45:14 46:20 60:4 61:22 65:8 67:7 67:8 68:5 69:14 100:12 104:18

**king**(3) 2:7 2:23 3:3

**kingdom**(3) 22:13 22:16 50:11

**knew**(5) 27:18 27:18 41:10 82:4 85:1

**know**(59) 7:12 9:13 9:15 10:1 10:2 10:16 10:17 10:21 25:1 27:2 27:8 27:14 30:24 32:13 32:18 32:20 33:21 33:22 35:2 36:6 36:15 36:16 42:19 43:14 46:2 49:1 50:4 54:18 57:7 60:4 61:10 63:9 63:13 63:16 74:15 76:9 76:10 77:16 78:9 78:10 81:10 81:14 81:18 81:19 83:18 84:15 88:17 89:22 91:4 93:1 94:17 96:8 104:4 104:6 108:20 108:25 115:1 115:3 116:4

**knowledge**(3) 32:8 32:14 32:21

**kramer**(1) 4:25

**lack**(2) 20:20 27:24

**laid**(1) 46:18

**land**(1) 14:9

**language**(2) 32:17 70:17

**large**(1) 111:7

**largest**(4) 43:16 50:2 50:5 116:2

**last**(22) 9:7 14:25 19:5 37:5 38:6 42:8 47:2 47:13 51:2 64:19 65:4 65:22 72:17 75:11 86:1 88:1 88:18 89:22 90:12 97:5 109:22 118:19

**lastly**(2) 37:13 47:19

**later**(6) 23:16 23:16 53:22 95:11 108:15 111:21

**latham**(2) 2:46 119:12

**laughter**(14) 18:16 35:4 55:17 56:16 56:18 63:15 78:5 92:12 108:24 109:4 113:11 114:7 115:2 118:3

**law**(29) 3:35 5:30 26:19 29:22 31:2 39:2 44:13 53:11 53:18 60:3 60:5 70:2 70:25 71:3 72:3 84:9 86:25 88:4 88:5 90:3 90:4 90:5 102:18 104:16 105:6 115:14 117:24 120:11 120:13

**laws**(4) 16:21 16:23 90:7 90:14

**lawyer**(1) 32:4

**layer**(1) 47:20

**layton**(1) 2:4

**lazard**(3) 65:15 82:9 86:5

**lead**(4) 27:25 36:4 44:7 70:10

**leads**(1) 85:20

**least**(6) 29:8 33:25 45:3 46:20 97:5 114:22

**leave**(7) 30:7 91:5 91:7 91:17 101:5 110:12 120:4

**leaving**(1) 13:21

**leblanc**(1) 4:3

**lectern**(2) 42:20 105:16

**left**(4) 39:5 62:16 85:18 117:14

**legal**(11) 26:7 27:16 41:14 44:8 47:10 73:5 73:10 90:13 90:13 98:21 101:5

**legally**(4) 41:18 44:6 45:24 104:18

**legislature**(1) 107:25

**lend**(1) 97:20

**lengthy**(1) 89:9

**less**(4) 26:24 35:5 51:14 95:2

**let**(8) 20:12 26:4 34:6 44:4 47:4 56:10 74:7 77:7

**let's**(2) 90:22 98:18

**letter**(3) 108:9 118:19 118:23

**let's**(5) 11:4 11:5 11:5 28:16 31:14

**level**(2) 21:23 91:9

**levin**(1) 4:25

**liability**(5) 76:16 77:8 77:10 77:11 77:11

**liberty**(1) 1:33

**lie**(2) 22:13 23:14

**lies**(2) 21:15 38:21

**life**(1) 89:6

**light**(1) 107:18

**like**(36) 8:1 8:7 15:23 25:5 27:25 31:22 35:24 38:15 39:13 40:16 47:24 51:16 57:18 57:22 61:13 61:16 62:7 63:2 71:5 72:6 72:9 73:21 73:22 75:2 77:3 87:12 87:13 90:8 96:1 97:7 97:22 103:8 108:23 109:20 114:18 117:10

**likely**(5) 33:2 45:3 85:2 90:7 114:20

**likewise**(1) 7:22

**limited**(5) 50:18 59:5 59:9 59:16 59:19

**line**(2) 37:7 84:6

**lined**(1) 10:19

**link**(1) 38:23

**linked**(1) 48:14

**linn**(1) 5:23

**lis**(1) 5:27

**lisa**(1) 1:30

**list**(1) 13:5

**listening**(1) 105:20

**literally**(3) 72:22 90:2 93:9

**litigate**(4) 75:13 76:25 77:4 77:19

**litigation**(6) 19:4 46:9 46:12 47:17 48:25 119:24

**litigator**(1) 32:4

**little**(7) 7:24 9:8 9:15 11:6 15:9 34:16 103:13

**llc**(1) 1:40

**lloyd**(3) 32:3 32:6 65:21

**lloyd's**(3) 65:25 82:11 86:9

**llp**(8) 1:22 2:20 2:33 3:28 3:36 3:42 4:21 4:37

**llt**(1) 97:4

**lockbox**(3) 4:4 44:1 71:16 71:17

**logical**(1) 77:7

**logistics**(1) 111:20

**london**(3) 2:30 107:1 107:4

**long**(5) 19:1 37:2 37:2 87:14 87:14

**longer**(1) 59:4

**look**(21) 19:13 19:13 19:15 21:22 27:9 27:24 31:24 31:25 33:3 33:4 39:18 76:21 81:12 81:16 81:21 98:18 100:2 100:11 100:13 106:12 109:6

**looked**(2) 73:9 107:21

**looking**(12) 7:20 8:20 18:6 18:7 28:2 32:9 32:14 39:15 53:1 73:23 100:4 119:1

**loose**(1) 69:18

**lot**(12) 10:21 24:17 24:12 58:15 61:3 71:20 72:13 75:1 89:17 89:17 107:6 115:20

**lot's**(1) 94:18

**lovells**(1) 4:37

**lowenthal**(1) 5:31

**ltd**(1) 2:40

**lumped**(1) 65:13

**mace**(1) 1:38

**macquarie**(2) 4:41 4:41

**made**(30) 12:8 13:19 14:3 14:14 14:15 40:13 44:19 48:21 56:12 67:24 68:23 72:25 74:23 79:9 79:18 83:15 83:24 85:14 86:19 93:2 95:14 96:2 96:11 97:15 99:18 102:10 103:14 105:6 115:18 115:19

**main**(1) 95:13

**mainly**(1) 65:25

**maintain**(1) 20:17

**major**(4) 50:1 50:21 50:21 62:19

**make**(44) 7:14 15:21 16:21 22:22 29:18 30:12 37:5 38:14 40:19 41:2 49:6 49:16 52:7 54:22 56:20 58:17 59:1 59:1 59:2 62:13 62:25 65:9 66:23 71:9 71:25 77:1 77:5 86:23 97:7 100:15 100:22 102:12 108:18 109:10 113:23 114:13 114:16 114:17 115:17 116:11 116:16 116:23 116:24 119:17 119:24

**makes**(9) 25:4 26:25 58:5 96:14 96:20 101:20 102:17 104:3 104:5

**making**(6) 12:9 24:17 76:6 92:4 116:1 116:11

**makowski**(1) 4:9

**manage**(1) 59:3

**management**(6) 4:17 4:17 5:18 5:22 6:13 6:17

**managing**(1) 58:25

**manhattan**(1) 4:4

**manner**(5) 42:4 63:1 69:12 70:4 74:12

**many**(7) 26:1 35:24 71:2 71:3 88:19 112:16 114:19

**march**(6) 1:14 7:1 13:19 93:18 100:5 121:21

**mark**(3) 3:2 49:12

**market**(5) 1:11 1:25 2:42 3:10 4:10

**martin**(1) 5:35

**material**(6) 17:13 18:18 39:13 78:25 86:21 104:7

**materials**(1) 115:19

**matter**(20) 16:3 17:22 25:21 29:15 36:9 37:8 39:2 44:8 57:13 57:24 58:9 70:12 91:1 94:21 106:22 109:7 109:14 109:14 114:1 121:18

**matters**(15) 50:21 59:2 59:3 66:24 69:22 70:22 71:10 92:23 93:4 95:7 95:7 98:22 98:24 113:12 116:5

**matthew**(3) 4:38 6:2 6:18

**mauro**(1) 5:39

**maximize**(1) 12:1

**maximum**(1) 120:3

**may**(17) 10:16 24:21 37:8 39:25 39:25 43:24 45:1 54:11 55:12 57:14 57:14 60:4 73:24 77:5 83:14 117:3 118:22

**maybe**(4) 9:15 29:4 45:20 106:24

**mccloy**(3) 4:1 4:45 43:6

**mean**(8) 33:6 34:22 64:21 66:23 67:6 84:8 84:9 93:9

**meaningful**(1) 49:9

**means**(5) 32:13 50:18 64:6 87:20 88:5

**meant**(5) 32:21 70:7 70:10 82:14 107:8

**meat**(1) 16:2

**mechanism**(2) 82:16 82:17

**mediation**(9) 8:8 8:9 14:24 58:22 72:16 74:4 93:22 93:23 118:15

**mediations**(1) 20:20

**mediators**(1) 31:21

**meet**(1) 107:5

**meeting**(1) 107:3

**mellon**(3) 115:15 118:14 119:13

**melon**(1) 2:47

**men**(1) 37:8

**mention**(2) 14:25 85:17

**mentioned**(1) 75:2

**merits**(5) 39:24 67:11 97:10 98:1 99:25

**mess**(1) 38:24

**message**(1) 54:8

**michael**(3) 2:47 5:23 119:12

**microphones**(1) 78:16

**middle**(1) 10:3

**might**(3) 8:21 34:16 73:18

**milbank**(3) 4:1 4:45 43:6

**miller**(1) 3:43

**millions**(1) 19:20

**mind**(3) 18:14 26:6 44:12

**mindful**(1) 34:15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **minds**(2) 67:24 96:6 | | **moves**(2) 62:25 89:6 | | **not**(175) 7:11 8:2 8:8 8:9 8:16 9:17 10:7 | | **okay**(42) 9:6 9:19 15:20 17:19 25:15 | |

minds(2) 67:24 96:6
minimize(1) 12:1
minor(1) 40:7
minute(2) 113:13 113:14
minutes(8) 33:25 34:7 35:6 35:11 42:21 43:8 55:4 113:18

mischaracterization(1) 54:11
missed(1) 56:14
missing(2) 81:13 85:9
misspoke(1) 31:3
misunderstanding(1) 54:22
mix(2) 43:24 45:8
mode(1) 56:3
moment(2) 98:18 106:15
monday(1) 54:21
money(6) 19:18 21:15 24:13 76:13 82:17 89:17

monies(2) 21:17 24:18
monitor(7) 3:8 41:1 41:24 49:3 54:4 93:16 110:7

monitor's(1) 118:19
monitoring(1) 9:24
monitors'(1) 48:5
month(1) 46:11
months(5) 36:17 36:23 36:23 45:20 106:4
moral(1) 37:6
morawetz(108) 7:9 7:12 7:13 7:18 7:21 7:22 9:13 9:17 10:24 11:1 11:8 11:9 11:15 11:22 15:15 17:5 18:12 21:4 22:2 25:9 34:10 34:12 34:14 34:20 34:23 35:9 35:14 37:24 37:25 38:4 38:6 43:2 43:5 47:23 47:25 48:2 48:16 48:18 49:19 51:9 51:11 51:18 51:20 51:22 51:23 52:25 53:21 54:1 55:3 55:6 56:4 56:10 56:20 63:13 67:8 70:8 71:23 74:1 77:6 78:2 78:6 78:7 78:23 79:19 88:17 91:22 92:7 92:10 92:17 92:24 94:2 94:5 94:9 94:12 94:14 95:6 95:9 95:12 96:2 96:22 97:1 105:1 105:13 109:15 111:24 113:8 113:12 113:22 113:24 114:8 114:11 114:19 114:23 115:1 115:3 115:8 115:10 117:9 117:13 117:22 118:1 118:10 118:12 119:5 119:11 120:10 121:4 121:5

morawetz'(1) 53:14
more(34) 10:6 11:2 14:16 14:16 26:24 35:16 37:3 42:10 42:21 44:4 45:9 45:23 50:8 51:8 60:4 63:24 81:10 82:13 101:16 101:25 102:12 103:20 103:23 103:24 103:24 114:5 116:10 116:21 116:22 116:22 117:4 118:10 118:11 119:24 120:1

morgan(5) 5:34 5:34 21:3 21:5 100:5
morning(25) 7:3 7:7 7:8 7:9 7:16 7:17 9:1 9:2 11:20 11:21 25:17 25:18 25:19 40:14 43:5 43:8 44:8 48:2 48:3 49:13 53:8 53:24 53:25 54:1 54:2 78:7

morowitz(1) 7:16
morris(2) 1:22 3:42
most(12) 25:4 27:3 27:7 33:20 33:20 44:22 53:2 60:16 86:16 88:21 115:19 118:25
motion(20) 8:2 8:3 14:14 14:15 16:7 17:15 17:16 52:5 54:18 80:5 86:23 86:24 88:24 89:16 93:24 97:24 103:14 120:20 120:21 120:22
motions(5) 13:16 80:17 116:11 116:22 117:4

motives(1) 46:18
movant(1) 52:5
movants(2) 70:23 116:4
move(9) 45:6 91:22 92:4 108:14 109:23 120:3 110:4 110:4 111:6

moved(1) 102:6

moves(2) 62:25 89:6
movies(1) 40:16
moving(2) 25:5 111:3
mrda(4) 72:20 73:9 73:13 75:2
much(13) 11:19 11:23 14:18 26:13 37:8 37:21 72:15 76:10 81:14 92:9 94:10 111:10 114:8

mud(1) 58:15
mui(1) 6:21
multiple(1) 65:24
multiplicity(1) 41:15
multiplies(1) 101:17
murphy(1) 3:9
must(15) 21:8 23:14 29:23 40:20 43:22 44:14 45:10 46:23 47:15 47:16 49:7 80:9 80:13 86:2 88:10

mute(1) 78:15
mutual(1) 87:16

naftalis(1) 4:25
name(4) 18:5 46:2 46:3 94:14
national(1) 118:13
nations(2) 59:15 72:8
nature(4) 50:14 76:21 96:15 96:15
near(1) 42:16
nearly(1) 45:25
nebulous(1) 44:12
necessarily(1) 74:15
necessary(6) 11:7 53:2 55:7 66:7 94:8 94:9
need(35) 10:15 12:18 13:13 13:14 27:1 28:21 33:3 38:13 38:23 40:2 46:17 46:21 55:8 55:12 67:4 73:9 74:21 75:1 75:6 75:8 75:9 75:12 76:7 81:7 87:2 87:3 96:10 100:13 101:15 107:18 110:17 115:20 117:6 117:17 117:18

needless(1) 43:23
needs(4) 46:7 69:12 75:12 75:14
negotiate(3) 29:12 32:6 38:7 44:24 66:10 93:20 94:25 99:11

negotiated(2) 64:17 99:10
negotiating(5) 64:20 65:4 67:12 83:6 95:7
negotiation(2) 44:18 75:4
negotiations(3) 65:21 67:15 72:16
neither(1) 43:8
networks(1) 1:7 5:26
never(7) 22:15 28:2 36:12 45:1 52:8 67:18 77:18

new(35) 1:34 2:16 2:37 2:46 2:49 3:18 3:32 3:39 4:5 5:34 8:2 13:2 21:2 29:22 32:18 36:18 36:19 38:9 57:5 59:15 62:21 66:25 66:25 67:10 68:4 69:3 70:7 72:5 84:10 86:25 92:1 115:15 119:12 119:16 119:21

next(8) 17:7 21:23 47:24 51:24 55:11 62:2 95:18 96:7

nichols(1) 1:22
nine(3) 41:23 71:12 113:2
nnc(1) 48:4
nncc(2) 53:11 120:15
nnl(2) 19:25 48:4
nnuk(1) 96:18
nobody(1) 37:13
non-binding(1) 58:22
non-exclusive(2) 98:19 98:20
non-judicial(2) 64:6 65:12
none(3) 20:13 93:11 107:24
nor(1) 43:9
normal(3) 53:4 59:4 59:7
normally(1) 57:19
nortel(5) 1:7 4:21 5:26 28:13 80:8
north(6) 1:25 2:7 2:23 3:10 4:10 75:6

not(175) 7:11 8:2 8:8 8:9 8:16 9:17 10:7 10:22 14:2 15:18 19:7 19:16 19:17 20:7 20:10 20:11 20:20 21:16 22:19 23:5 23:7 24:22 25:19 26:15 27:11 27:15 28:6 28:11 28:12 28:16 28:17 28:22 29:2 29:10 29:25 30:7 30:18 31:17 31:19 32:6 32:15 32:16 32:16 32:18 32:25 33:11 33:20 35:16 35:21 36:9 36:11 36:20 37:7 37:9 38:8 38:19 39:25 40:19 41:5 41:6 42:7 42:11 44:5 44:8 44:15 44:16 44:22 45:17 46:2 46:12 48:22 49:4 49:16 49:16 50:9 50:10 50:15 51:2 53:14 55:16 55:18 56:7 56:25 57:7 57:14 58:5 58:5 58:9 64:23 64:24 65:11 66:10 66:15 67:6 67:25 68:1 69:10 69:24 70:2 70:8 70:9 70:13 71:1 71:24 71:24 72:4 72:10 72:17 72:18 72:22 73:16 73:21 74:2 74:16 76:12 79:16 80:10 80:19 81:13 81:19 82:4 82:14 83:24 84:3 85:15 85:17 85:22 86:11 86:17 87:9 87:11 87:18 87:22 90:6 90:18 90:20 91:1 91:25 92:23 92:25 92:25 94:8 94:9 94:18 95:7 95:15 97:5 97:5 97:8 97:15 97:17 97:17 98:2 101:10 101:12 101:23 102:10 102:13 103:5 104:14 104:17 105:12 106:10 107:12 109:8 109:18 110:16 110:18 114:13 116:7 116:9 117:1 117:20 118:18 119:24

note(6) 9:4 15:2 22:13 53:17 95:9 116:5
noted(1) 120:17
noteholders(4) 51:7 116:25 118:22 119:3
notes(4) 53:11 115:24 116:7 120:15
nothing(5) 41:5 63:17 68:3 91:16 113:5
notoriously(2) 18:10 18:11
notwithstanding(2) 22:20 105:24
november(1) 95:15
now(55) 7:18 8:14 13:9 16:2 19:9 20:5 20:21 21:9 21:16 26:12 29:8 32:14 36:6 36:11 38:10 43:14 45:24 46:11 48:17 48:21 50:21 51:15 57:10 58:15 61:19 63:3 63:11 64:4 65:19 65:23 67:21 68:1 69:16 70:23 71:20 72:13 74:7 78:2 85:8 87:9 94:24 98:12 98:18 99:21 100:4 100:11 102:16 102:17 102:21 107:22 108:22 109:19 114:16 115:4 115:7

nowhere(3) 38:20 83:18 83:19
number(11) 10:10 13:2 13:20 16:7 43:19 46:8 89:16 112:19 113:1 113:15 118:15

numbers(1) 83:10
o'connor(11) 96:25 97:1 97:3 97:20 103:1 103:5 103:8 103:17 103:22 104:14 105:10

o'connor's(3) 109:21 110:20 112:3
obey(3) 21:5 21:7 21:8
object(3) 63:4 63:6 104:5
objected(1) 67:20
objection(1) 88:7
obligations(1) 115:4
obliged(1) 83:9
obvious(3) 42:22 55:21 88:1
obviously(16) 10:10 42:23 48:22 49:7 60:16 63:17 67:13 80:18 82:25 87:8 92:25 95:2 114:5 119:17 119:21 120:2

occasion(1) 44:20
occasions(2) 81:11
occur(2) 99:16 102:22
ocean(1) 106:3
october(1) 19:5
off(7) 11:18 13:12 15:25 36:13 85:3 89:18 89:19

offer(1) 65:23
offers(1) 70:24
office(2) 3:1 52:3
officers(4) 48:4 48:5 48:11 48:21
offices(1) 107:4
official(2) 5:13 11:24

okay(42) 9:6 9:19 15:20 17:19 25:15 28:19 29:8 34:1 34:5 34:7 35:8 35:13 36:13 36:16 47:2 64:3 77:22 92:3 92:9 109:11 118:10 119:5

old(2) 81:20 108:21
olivia(1) 5:39
once(11) 19:17 36:17 42:12 50:13 50:13 59:16 59:17 76:2 79:13 101:12 110:25

one(80) 1:33 2:6 2:15 2:36 4:4 16:5 19:15 20:24 21:9 21:11 24:20 25:2 27:14 27:15 33:19 36:9 36:16 36:25 37:5 38:9 38:17 41:16 43:2 44:12 46:13 47:4 49:19 50:8 50:12 50:19 52:24 54:7 55:12 57:3 57:5 58:10 58:11 60:20 60:23 62:3 62:19 67:19 68:7 71:6 72:1 75:20 77:12 79:3 81:10 82:2 82:20 84:17 86:5 86:6 86:17 87:15 88:15 89:4 89:5 90:7 92:19 95:13 97:7 98:4 99:16 100:15 102:7 102:18 102:19 107:2 111:7 111:10 111:11 111:12 111:14 112:15 116:2 118:10 118:11 119:19

one's(1) 101:9
ones(7) 13:22 68:15 74:2 77:15 85:9 107:8 118:22

only(32) 21:6 21:16 21:19 26:20 33:11 36:10 38:24 39:4 40:4 41:18 43:7 44:6 45:9 51:2 52:7 62:3 62:4 69:22 70:18 73:19 82:18 82:19 84:17 90:6 96:7 100:15 100:24 101:12 101:17 102:1 108:7 120:14

ontario(2) 91:3 91:17
onto(1) 83:2
open(7) 36:8 39:5 50:6 50:7 50:12 51:8 95:1

opening(2) 7:11 7:13
operating(1) 19:19
opinion(1) 19:6
opportunities(1) 22:21
opportunity(15) 8:9 8:15 9:18 10:23 19:11 22:11 37:24 42:23 47:3 47:14 78:8 94:1 94:7 94:24 116:9

opposed(2) 87:4 117:20
opposite(3) 29:11 83:20 102:16
option(1) 86:18
oral(2) 3:17 19:5
orally(1) 12:8
order(13) 21:7 21:8 33:18 47:15 52:16 60:16 75:13 75:17 76:25 80:24 93:13 96:6 115:17

ordered(2) 33:13 46:11
ordering(1) 70:14
orders(3) 16:25 21:6 103:2
ordinary(1) 26:18
organized(1) 63:6
original(2) 44:17 79:21
originally(4) 48:7 48:8 65:14 65:15
other(44) 10:10 10:10 10:21 11:10 12:13 17:21 20:14 28:8 34:15 35:24 40:21 43:2 45:23 45:25 47:3 50:19 50:25 52:25 55:15 60:23 62:13 63:6 65:16 66:6 66:19 67:19 68:9 69:2 70:21 71:5 72:3 72:4 73:15 76:4 77:18 84:2 89:9 91:12 115:4 116:3 116:4 116:13 121:8

others(6) 13:21 32:5 34:1 50:3 54:12 117:25

otherwise(4) 44:2 46:23 86:19 105:5
ought(2) 10:25 37:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| our(60) 8:6 12:1 12:9 12:17 15:6 17:2 17:3 25:4 39:4 44:12 45:2 46:19 47:17 48:23 49:4 51:14 51:19 52:5 57:19 58:18 60:21 71:2 73:17 78:15 79:1 82:1 84:8 84:15 85:6 85:24 86:21 87:25 93:3 95:9 95:13 95:23 96:3 96:6 96:8 96:14 96:5 96:16 96:21 98:2 103:1 103:15 104:11 104:15 104:15 104:24 108:20 111:17 111:25 114:13 116:25 117:21 119:3 119:4 119:23 120:3 | | parties(137) 8:20 8:21 10:6 10:22 11:24 15:13 15:16 15:23 16:9 18:9 19:7 19:8 20:15 22:2 22:10 22:12 29:5 29:11 29:18 29:21 29:22 29:24 30:7 30:15 30:19 30:24 31:5 34:15 37:7 38:12 42:10 42:17 43:14 44:8 44:10 45:1 45:12 45:18 45:23 46:1 46:8 46:12 46:12 46:15 46:19 46:22 47:3 47:18 48:25 49:15 50:7 51:3 51:4 51:6 52:10 52:11 52:14 52:16 56:12 56:20 56:25 58:2 58:25 59:11 59:23 60:9 60:11 60:23 61:19 62:17 62:21 63:21 64:2 66:10 67:11 68:5 68:13 70:19 71:15 74:10 75:20 76:5 78:12 78:17 79:7 79:7 80:2 80:13 80:22 81:5 81:18 82:4 82:12 82:14 82:15 83:2 84:12 84:13 84:22 84:24 85:14 85:18 89:23 91:8 94:14 97:5 98:18 90:1 90:12 93:20 93:25 94:6 94:25 95:10 97:8 97:16 97:18 97:21 98:6 98:8 98:10 98:13 98:19 99:4 99:16 99:22 100:16 100:25 101:7 101:23 106:6 106:10 107:20 109:20 113:17 116:13 120:1 | | pinpoint(1) 28:2 place(3) 14:24 17:14 20:3 23:6 36:18 67:5 82:16 111:7 | | presented(2) 54:19 58:24 presenting(1) 61:12 presents(1) 102:1 presume(1) 33:16 |
| ousted(1) 84:5 | | | | placed(1) 8:5 places(2) 46:5 82:3 | | presumption(5) 26:14 26:19 26:20 26:21 26:23 |
| out(43) 12:13 13:5 13:13 15:24 16:15 17:23 20:22 24:18 27:8 28:15 30:4 30:6 30:19 31:13 38:24 40:17 43:25 44:3 45:19 46:4 52:18 57:10 61:16 64:9 70:2 72:17 76:11 81:20 82:1 82:17 82:18 85:18 98:6 98:11 100:9 100:12 106:3 107:18 108:22 108:23 112:21 117:14 120:13 | | | | plagued(1) 40:22 plan(4) 4:37 43:7 44:2 102:15 planning(1) 74:15 play(2) 26:21 26:22 plaza(3) 1:33 2:36 4:4 pleading(1) 104:5 pleadings(1) 15:6 | | pretty(4) 10:19 61:11 63:14 69:18 previous(1) 40:15 previously(2) 91:24 92:22 price(3) 45:21 45:22 109:8 pricing(1) 20:1 primarily(1) 118:16 |
| outcome(4) 57:17 77:9 116:25 117:1 | | | | please(6) 7:2 7:4 34:8 37:25 113:20 113:21 | | primary(4) 77:2 77:8 77:11 87:5 |
| outset(1) 8:1 33:22 35:15 61:7 | | | | pleasure(1) 54:2 | | primrose(1) 2:29 |
| outsiders(1) 74:24 | | | | plus(1) 21:10 | | principal(1) 102:7 |
| over(29) 9:15 19:7 19:8 19:8 20:8 20:12 20:17 22:6 22:6 22:6 22:6 22:18 22:18 22:18 37:3 43:15 44:18 85:1 85:2 89:17 96:23 103:13 105:19 105:22 108:11 108:12 111:7 117:11 119:6 | | | | podium(4) 11:12 25:5 43:8 78:6 point(51) 12:13 18:15 18:15 20:5 24:4 34:7 36:24 37:5 37:16 41:4 41:9 41:11 41:20 42:8 45:11 47:4 47:13 51:2 52:10 54:7 54:9 56:23 60:10 61:16 62:2 62:13 65:19 66:4 71:22 73:23 77:12 78:10 81:2 86:12 86:13 87:7 90:21 92:7 92:14 92:20 95:22 96:1 96:11 97:14 101:5 104:9 108:12 111:3 112:15 114:14 114:10 120:13 | | principle(1) 26:7 principles(1) 26:19 |
| overlap(3) 73:11 75:22 76:1 | | | | | | prior(5) 10:16 12:17 44:13 58:21 117:11 |
| overlapping(2) 117:16 120:4 | | | | | | private(2) 20:9 23:15 37:9 37:15 65:17 |
| overstatement(1) 84:15 | | parties'(3) 30:18 37:17 45:10 | | pointed(2) 30:4 72:17 | | privilege(1) 71:4 |
| overturned(1) 91:12 | | partner(3) 12:23 25:8 25:25 | | pointing(1) 57:10 | | pro(1) 5:42 |
| overy(3) 3:14 54:1 54:3 | | partners(2) 6:1 106:25 | | points(13) 26:5 36:12 44:4 52:7 87:6 92:4 92:5 94:17 94:23 97:7 106:1 117:16 119:16 | | pro-court(1) 55:16 |
| own(4) 57:25 69:24 74:25 76:9 | | party(36) 4:29 4:33 5:9 5:22 5:38 5:42 5:46 6:1 6:13 6:17 15:9 23:15 31:10 47:23 53:18 63:5 84:3 85:11 91:7 105:4 114:13 115:16 116:1 116:14 116:17 116:18 116:20 117:7 117:14 118:6 118:18 119:7 119:22 119:23 120:2 120:14 | | | | pro-court's(1) 55:2 |
| o'connor(1) 3:29 | | | | policy(4) 58:7 58:7 70:7 70:13 | | probably(2) 74:14 114:22 |
| p.m(5) 113:19 113:19 114:2 121:7 121:13 | | | | polisi(1) 5:43 | | probe(1) 75:2 |
| pachulski(1) 4:8 | | | | pool(2) 47:8 69:2 | | problem(8) 15:18 61:5 69:11 71:6 87:10 87:10 88:8 103:22 |
| page(4) 81:16 82:10 103:24 108:11 | | | | portion(1) 56:14 | | |
| pages(3) 36:7 40:14 95:23 | | | | position(14) 41:6 48:6 54:13 54:23 68:6 71:20 73:25 79:2 79:19 94:16 95:6 96:18 98:2 119:16 | | problems(7) 56:8 71:2 87:22 87:23 87:23 88:1 101:21 |
| paid(3) 63:19 76:18 82:18 | | passage(1) 12:14 | | | | |
| palmers(2) 11:16 18:21 | | past(4) 35:23 44:15 44:19 105:19 | | positions(6) 9:10 37:17 45:10 46:2 66:1 72:13 | | procedural(6) 8:6 59:2 59:20 61:18 71:3 113:25 |
| panel(8) 20:13 67:9 68:21 70:7 72:5 76:7 90:24 104:21 | | patent(2) 13:7 13:15 | | | | procedurally(1) 116:21 |
| | | path(4) 44:6 44:7 45:3 109:19 | | possibility(2) 108:7 108:7 | | procedure(17) 28:10 28:14 30:3 30:5 35:16 37:7 56:5 57:11 66:15 66:25 66:25 67:7 67:19 69:13 70:23 75:14 75:23 |
| paper(1) 82:9 | | patience(1) 7:5 | | possible(6) 32:25 58:18 90:6 111:4 112:10 120:3 | | |
| papers(2) 27:3 71:2 | | patterson(3) 3:35 5:30 53:9 120:10 | | | | |
| paragraph(9) 17:14 17:14 17:14 21:18 39:10 39:13 39:15 39:18 41:23 42:5 | | pause(1) 81:17 | | possibly(2) 77:8 90:3 | | procedures(21) 27:19 27:22 27:24 30:9 36:6 36:11 36:14 36:22 37:3 40:10 59:24 60:8 61:9 61:16 61:20 64:18 65:10 65:12 67:10 68:19 96:5 |
| | | pay(5) 58:20 63:23 64:2 82:17 95:4 | | post-filing(1) 20:1 | | |
| parallel(10) 57:13 57:15 57:18 57:19 58:10 58:12 70:11 70:11 88:19 100:6 | | paying(1) 70:24 | | posturing(1) 50:8 | | |
| | | peg(1) 4:30 | | pot(1) 102:12 | | proceed(12) 8:21 8:24 9:3 38:1 55:3 60:10 66:13 70:3 101:20 110:17 111:23 112:3 |
| paraphrasing(1) 45:14 | | penalty(1) 118:2 | | potential(1) 43:20 | | |
| pardon(2) 84:22 90:4 | | pending(1) 98:6 | | potentially(1) 31:21 | | proceeding(18) 12:4 15:14 16:23 17:1 22:11 36:4 37:15 57:25 57:25 58:1 63:7 66:12 67:1 75:20 76:15 87:14 88:18 102:9 |
| park(2) 2:15 2:36 | | pennsylvania(1) 1:42 | | power(6) 22:7 24:3 60:18 68:4 68:24 | | |
| parking(1) 25:2 | | pension(31) 3:21 4:37 13:23 14:1 14:4 14:6 14:10 14:17 14:20 18:9 22:2 22:9 22:12 50:24 50:24 50:24 62:7 76:14 80:4 97:4 97:12 101:19 102:5 102:15 103:12 106:6 107:20 108:3 109:20 110:17 111:6 | | ppearances(2) 1:21 2:1 | | |
| parole(7) 31:14 31:25 31:25 32:1 32:16 33:4 33:4 | | | | ppf(2) 94:15 94:20 | | proceedings(20) 1:17 1:46 18:14 20:17 33:21 37:4 57:13 57:18 57:19 69:19 70:11 76:4 76:8 80:18 98:21 102:8 102:20 102:22 119:8 121:18 |
| | | | | practical(3) 40:11 71:2 91:1 | | |
| parrot(1) 70:16 | | pensions(2) 62:9 63:6 | | practicalities(2) 25:11 29:19 | | |
| part(18) 12:22 50:4 72:18 73:13 75:4 75:5 80:11 81:7 81:8 84:7 85:15 85:19 104:15 107:16 115:22 115:22 117:18 119:1 | | people(14) 36:18 37:1 45:21 46:23 50:11 55:15 58:2 61:5 62:7 66:1 68:8 96:7 101:18 113:15 | | practice(2) 120:20 120:21 | | proceeds(17) 13:9 13:10 17:16 17:22 20:5 28:9 28:10 28:16 33:2 69:23 71:14 83:7 89:10 89:12 98:5 99:9 99:13 |
| | | | | practices(1) 61:11 | | |
| | | | | pre-ifsa(1) 32:10 | | |
| participants(2) 52:13 63:7 | | per/pro(1) 5:42 | | precedent(1) 57:17 | | |
| participate(5) 15:13 65:21 114:4 116:4 117:7 | | percentage(1) 90:1 | | precise(1) 42:16 | | proceeds."(1) 29:8 |
| | | perfect(1) 86:19 | | preclude(1) 76:3 | | proceeds"(2) 83:13 83:22 |
| participating(1) 63:5 | | perfectly(2) 55:8 109:11 | | preclusive(2) 75:25 76:1 | | process(72) 14:7 20:10 20:19 32:25 33:1 37:9 37:18 37:19 45:16 46:23 48:13 49:1 49:1 49:10 49:14 50:6 50:16 51:8 52:13 53:5 56:7 58:22 59:3 59:4 61:8 61:21 65:17 66:16 72:15 72:19 72:23 73:16 73:17 73:17 74:4 74:9 74:11 74:11 74:14 74:18 75:15 75:24 76:10 76:12 76:13 76:15 79:24 79:24 79:25 80:20 80:21 81:4 84:3 87:14 87:21 88:24 89:18 90:19 93:6 93:13 93:17 95:17 95:18 104:15 105:7 112:19 115:22 115:23 117:2 118:15 118:21 119:24 |
| participation(1) 18:20 | | perhaps(5) 8:18 10:13 10:20 10:24 13:5 15:11 32:22 34:16 108:25 113:15 119:7 | | predict(1) 20:14 | | |
| particular(11) 15:4 20:24 33:10 46:7 60:25 61:6 71:14 71:15 104:19 105:22 113:3 | | | | preempt(1) 115:12 | | |
| | | period(6) 20:12 22:7 74:21 83:8 95:3 | | prefaced(1) 32:11 | | |
| particularized(3) 48:22 95:16 95:19 | | permission(2) 116:14 120:22 | | prefer(1) 114:17 | | |
| particularly(3) 16:24 73:1 105:20 | | permit(1) 47:7 | | preferable(1) 41:19 | | |
| particulars(1) 93:7 | | permitted(2) 70:2 106:20 | | preliminary(1) 56:23 | | |
| | | perpetuating(1) 46:24 | | premised(1) 107:24 | | |
| | | person(4) 18:8 36:25 65:8 84:6 107:5 | | prepare(1) 96:10 | | |
| | | perspective(4) 39:14 53:3 76:8 120:16 | | prepared(7) 32:12 51:4 55:6 55:13 65:5 115:4 115:6 | | |
| | | persuasive(1) 32:15 | | | | |
| | | philip(1) 4:34 | | | | |
| | | phillip(1) 5:27 | | | | |
| | | pick(1) 112:9 | | preposterous(2) 106:8 106:11 | | processes(2) 58:13 59:7 |
| | | picked(1) 27:8 | | presence(2) 18:14 22:1 | | produce(1) 112:19 |
| | | picking(1) 38:5 | | present(5) 18:9 18:10 18:12 57:9 75:21 | | produced(1) 1:47 |
| | | piece(1) 20:25 | | presentation(1) 54:14 | | producing(1) 57:14 |
| | | piecemeal(1) 76:5 | | | | |
| | | pink(1) 41:2 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| product(1) 41:21 | | quite(9) 31:4 54:8 62:14 64:14 64:16 66:1 66:9 107:11 115:4 | | regarding(10) 25:11 28:8 80:2 83:7 84:18 90:8 92:20 93:21 118:21 119:2 | | respect(33) 8:8 12:22 13:18 13:23 14:19 15:4 15:14 16:21 16:24 18:4 18:7 18:8 21:14 22:9 22:12 37:6 46:9 52:5 52:15 54:9 59:12 71:13 88:15 88:16 97:14 97:16 100:9 102:3 102:23 105:5 119:15 119:17 120:16 |

protractile(1) 116:19

progress(3) 32:23 33:6 63:1

prolong(1) 117:2

prolonged(1) 43:21

prolonging(1) 46:25

prominent(1) 61:3

promise(1) 114:25

prompt(1) 37:7

promptly(1) 37:12

proof(2) 22:10 95:14

proofs(1) 103:11

proper(1) 13:25

properly(1) 89:25

property(12) 20:23 20:25 50:3 66:14 68:25 69:3 69:3 69:4 69:10 69:15 73:2 73:4

proposal(2) 25:4 52:17

proposed(10) 23:21 24:8 48:7 60:25 61:19 81:22 81:23 91:20 97:13 111:4

proposition(2) 39:1 98:16

propounded(1) 104:12

protocol(85) 8:4 8:5 15:5 15:13 17:8 17:8 17:11 17:20 17:23 18:4 21:25 23:22 29:6 32:6 33:15 38:9 38:11 39:9 39:9 39:10 39:14 40:6 40:7 40:11 40:12 40:19 41:20 41:25 42:6 42:8 42:12 44:19 44:24 44:25 48:6 48:9 51:17 54:10 54:11 54:18 54:19 54:21 56:25 57:2 60:22 66:10 67:4 67:15 67:16 68:4 68:8 68:11 71:1 72:3 81:24 82:23 82:24 83:12 83:21 84:1 84:19 85:6 85:7 85:8 86:6 87:8 91:16 95:1 98:9 99:12 99:20 99:23 100:18 100:20 101:2 108:11 110:8 110:9 110:19 114:14 114:15 115:18 116:13 117:14 117:18

protocols(8) 29:2 36:7 61:17 61:23 66:19 66:20 68:14 118:24

protracted(2) 43:21 45:18

provide(3) 53:2 102:15 103:20

provided(3) 19:10 58:11 91:24

provides(8) 39:21 84:10 98:18 100:3 100:7 100:14 100:24 116:13

provision(5) 30:11 31:18 64:24 83:2

provisions(8) 8:4 64:12 70:20 98:15

psam(1) 4:33

public(7) 20:18 45:10 58:7 58:7 70:6 70:13 108:17

publicly(2) 45:10 45:11

pull(4) 39:21 40:16 43:13 81:9

purchase(1) 109:8

purport(1) 33:16

purpose(4) 8:11 58:5 91:24 98:4

purposes(7) 22:16 36:10 45:21 54:14 54:17 72:24 98:21

put(26) 23:21 24:20 24:25 32:3 38:9 40:4 40:7 57:1 65:24 66:6 77:13 80:20 80:21 81:4 81:6 82:16 85:8 85:16 87:8 93:6 105:22 105:23 105:25 106:10 108:14 114:18

puts(1) 14:5

putting(1) 35:22

puzzling(2) 116:15 116:20

quane(1) 5:47

question(16) 16:11 16:12 23:4 26:17 27:1 35:15 41:22 50:5 60:17 61:24 86:24 93:10 99:4 101:4 101:11 112:16

questions(2) 25:11 77:23

quick(4) 43:18 108:17 112:15 116:15

quickly(6) 28:4 31:11 33:9 35:13 109:23 115:21

---

quo(1) 46:25

quote(2) 28:6 80:6

quoting(1) 80:7

qureshi(1) 2:13

race(1) 58:2

racing(1) 78:4

raft(1) 77:18

raise(2) 41:13 119:18

raised(5) 48:13 49:25 53:13 65:19 110:6

raises(2) 101:4 101:15

raising(1) 13:21

range(1) 52:23

rather(6) 26:24 44:22 45:18 46:14 61:23

re-litigation(1) 76:3

re-read(2) 27:2 27:4

re-state(1) 43:9

reach(7) 11:7 29:6 82:21 83:7 99:12 99:17 99:23

reached(2) 42:1 61:19

reaching(1) 28:7

read(11) 10:17 18:2 28:23 42:6 42:22 64:13 70:5 83:17 84:2 84:11 105:21

reading(2) 84:6 84:14

ready(3) 55:3 55:12 105:16

real(1) 87:23

realities(2) 38:16 38:17

reality(1) 73:10

realize(1) 19:11

realized(3) 19:12 107:23 111:1

really(25) 16:4 19:20 26:6 28:2 29:13 29:14 29:14 36:3 37:22 48:19 56:6 60:14 61:23 62:17 67:20 70:3 70:5 71:9 71:23 72:9 91:25 97:7 97:20 101:24 106:24

reason(10) 38:20 38:20 39:7 49:3 75:19 76:17 76:20 87:12 101:19 108:13

reasonable(6) 74:21 79:13 83:8 84:6 102:13 104:21

reasons(4) 36:4 75:7 84:21 93:5

rebecca(1) 6:10

recall(4) 10:16 40:15 93:3 103:13

receive(2) 93:8 118:23

receiving(1) 8:16

recent(2) 44:18 118:15

recently(1) 105:21

recess(5) 113:13 113:15 113:17 113:19 121:6

recognize(4) 12:3 12:7 18:3 31:12

recognizing(1) 42:13

reconcile(1) 57:16

record(14) 36:13 38:4 43:6 53:17 54:14 63:4 66:7 79:2 79:12 82:7 82:10 107:21 114:18 120:10

recorded(1) 1:46

recording(2) 1:46 121:17

records(4) 88:12 88:14 90:6 90:11

recoveries(1) 24:14

red(1) 66:5

reed(1) 2:33

refer(3) 70:20 80:1 115:15

reference(2) 79:21 80:7

referenced(1) 41:23

referred(3) 18:5 79:21 101:2

refers(1) 79:10

reflect(1) 72:24

reflected(1) 67:16

refresh(1) 48:24

refused(1) 46:8

regard(1) 61:8

---

regardless(1) 95:8

regime(1) 69:8

regulator(1) 76:15

reiterate(1) 54:9

reject(1) 43:22

relate(1) 17:21

relates(2) 20:23 29:9

relating(4) 29:18 31:3 98:22 109:16

relation(1) 69:1

relative(1) 96:17

relatively(1) 14:5

released(2) 28:22 28:24

relevant(9) 28:9 28:11 29:1 82:22 83:13 83:22 85:18 99:18 100:19

relied(1) 102:7

relies(1) 44:17

rely(1) 98:17

relying(2) 29:4 65:25

rem(1) 21:1

remain(2) 20:3 23:24

remained(1) 13:22

remaining(2) 39:23 39:24

remarks(1) 7:11

remember(1) 102:5

remind(4) 8:2 8:7 93:14 96:1

reneging(1) 67:23

repeat(8) 8:10 16:3 41:8 43:8 94:18 97:5 97:15 119:14

repeatedly(2) 83:16 85:16

repetition(1) 10:15

replacement(1) 82:13

reply(3) 34:22 105:14 105:16

report(2) 32:23 33:6

reporters(1) 7:25

reports(1) 95:24

represent(2) 66:5 108:8

representative(1) 118:17

represented(1) 112:17

representing(1) 46:1

request(7) 46:17 53:15 55:12 93:7 109:21 116:11 116:13

requests(3) 53:18 104:6 104:12

require(8) 9:24 77:13 102:14 103:20 104:22 105:2 116:10 116:15

required(3) 27:15 44:6 44:23

requires(1) 96:17

requiring(1) 120:20

reserve(1) 49:4

residual(1) 70:21

resist(1) 46:17

resolution(19) 18:24 20:10 20:19 41:18 43:18 43:21 44:8 45:4 47:14 58:22 61:21 65:17 68:11 69:17 73:20 97:11 98:9 99:24 112:18

resolve(10) 22:4 24:5 31:7 33:19 47:11 58:19 64:6 64:15 99:12 102:2

resolved(9) 37:14 69:12 74:3 80:9 80:14 84:18 86:10 86:17 102:4

resolver(12) 64:14 64:18 70:19 82:6 82:8 82:10 82:14 84:8 84:19 99:18 100:19 101:1

resolvers(6) 28:18 29:1 29:3 31:16 81:24 82:22

resolving(7) 29:7 29:9 29:12 30:3 43:25 49:2 70:24

resounding(2) 16:12 16:13

---

respected(2) 32:4 40:5

respectful(9) 79:1 80:3 81:8 81:11 84:8 84:16 85:24 87:25 93:3

respectfully(1) 86:4

respective(4) 58:18 68:14 68:25 69:10

respects(2) 23:17 23:18

respond(8) 49:7 61:24 77:20 103:11 103:18 104:2 104:11 105:18

responded(1) 77:18

response(6) 53:15 55:10 93:8 93:9 118:23 121:2

responsibility(1) 116:6

rest(3) 29:13 46:21 67:12

result(6) 20:13 67:15 79:22 90:20 92:21 118:22

retain(2) 47:15 111:21

retired(1) 61:3

return(1) 96:4

revealing(1) 46:18

revenue(1) 20:3

review(7) 8:12 8:15 50:17 59:6 59:9 59:25 91:25

reviewability(1) 59:12

reviewed(2) 14:2 81:10

revised(3) 15:5 54:10 54:11

revisions(1) 54:20

richards(1) 2:4

ridiculous(1) 109:17

riela(1) 2:47

rielo(6) 115:13 119:9 119:11 119:12 120:7 120:12

right(67) 8:25 9:25 11:4 11:8 11:17 11:18 12:12 13:1 15:19 16:2 16:24 16:21 17:18 19:23 25:12 25:16 28:6 30:22 30:24 34:8 35:10 35:20 36:6 37:24 42:15 48:17 48:18 49:7 53:20 54:24 55:14 57:6 59:5 60:4 60:12 61:1 62:10 65:23 66:14 68:15 69:23 72:2 82:15 85:8 91:4 91:8 91:22 97:19 103:16 104:13 105:8 109:7 110:2 111:19 112:5 112:11 112:11 113:4 113:4 113:14 115:8 119:18 120:6 120:24 121:3 121:5 121:8

rights(5) 49:4 59:9 67:7 69:9 91:3

rise(3) 7:2 113:20 120:12

risk(2) 41:15 45:24

road(1) 38:13

rodney(2) 2:6 2:22

role(1) 50:20

room(3) 27:4 57:11 58:10

rooms(2) 45:13 107:17

rooney(1) 3:8

rosenberg(1) 6:2

roughly(1) 9:15

route(1) 91:16

rozenberg(1) 33:8

rule(5) 74:16 103:19 114:1 120:19 121:8

rules(12) 59:17 62:16 62:24 64:10 66:14 67:3 67:5 71:4 88:2 94:24 103:19 104:1

ruling(2) 49:6 114:14

rulings(3) 59:1 59:2 59:2

running(1) 33:22

ryan(1) 5:43

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**said**(52) 8:14 14:9 16:4 21:8 26:15 26:17 31:22 32:24 35:11 36:9 37:15 38:10 43:9 45:14 49:3 52:21 60:22 62:22 64:5 64:19 65:2 67:18 70:6 70:17 71:20 72:13 72:15 72:19 79:1 82:6 84:21 85:3 85:15 87:11 90:11 92:21 93:22 94:18 94:19 97:6 98:3 103:22 105:1 105:21 106:13 107:21 109:10 115:20 117:11 117:15 119:15 120:13

**sale**(27) 13:7 13:16 16:25 17:15 17:22 18:17 20:4 28:9 28:9 28:10 28:11 28:15 29:7 33:2 50:4 69:24 83:13 83:21 83:25 84:1 88:25 89:15 89:23 98:5 99:9 99:13 113:3

**sales**(17) 17:13 21:9 28:6 28:13 30:1 30:6 30:17 71:12 81:18 83:5 83:8 83:11 83:22 88:24 109:8 109:9 113:2

**same**(33) 14:5 26:9 37:10 38:24 39:6 40:18 41:13 53:12 57:13 57:23 58:9 58:14 58:17 69:1 70:12 72:18 79:22 84:11 87:16 89:5 90:9 90:14 91:6 105:3 105:25 107:5 107:7 108:1 108:16 109:15 110:19 110:21 117:4

**sameer**(1) 3:30
**samis**(1) 2:5
**sat**(2) 22:15 55:22
**satisfy**(1) 16:16
**say**(1) 34:20
**say**(65) 11:23 12:16 20:8 21:21 22:7 22:19 25:23 30:8 30:15 31:14 31:24 31:24 31:25 38:11 45:12 53:21 55:15 60:13 61:5 63:4 63:9 66:1 67:14 67:15 68:6 68:12 69:18 70:3 71:16 72:7 72:24 73:8 74:7 75:23 78:10 78:13 80:1 80:22 81:18 83:13 83:14 83:18 83:24 85:4 85:7 85:20 85:25 86:8 86:20 86:22 86:25 87:12 87:22 90:19 90:22 91:1 96:20 98:23 102:21 103:8 106:9 110:13 110:16 117:24 119:20

**saying**(14) 10:20 13:25 20:7 28:22 44:15 67:4 67:21 86:3 95:18 102:17 107:12 108:10 111:10 111:13

**says**(25) 17:15 17:21 21:13 26:13 28:5 28:12 28:24 29:5 29:11 29:11 32:7 40:9 70:1 80:23 82:11 82:24 83:4 83:11 83:20 83:20 89:2 89:3 89:4 89:6 100:22

**schedule**(18) 23:22 24:8 24:20 24:25 42:18 46:13 47:7 47:17 47:17 74:8 77:12 97:13 102:24 103:5 103:9 104:9 111:4 111:25

**schedules**(6) 37:1 46:9 49:20 51:6 52:18 61:3

**scheduling**(13) 42:8 42:13 46:4 46:16 51:3 52:17 92:21 92:23 93:4 94:7 95:17 96:2 96:6

**schuylkill**(1) 1:41
**schweitzer**(1) 1:30
**scope**(1) 26:23
**sealed**(1) 45:13
**seated**(2) 7:4 113:22
**second**(15) 10:2 16:12 33:6 33:7 33:9 41:11 42:3 56:9 56:11 56:14 56:23 75:18 87:7 99:11 102:3

**secondary**(3) 76:23 77:10 77:10
**secondly**(1) 97:10
**seconds**(1) 47:2
**secret**(1) 37:14
**section**(23) 16:20 17:4 17:4 28:3 28:5 30:20 30:23 30:25 64:12 69:20 84:5 84:14 98:17 99:6 99:6 99:8 99:21 100:7 100:13 100:14 100:18 119:17 120:18

**see**(14) 7:19 9:17 11:6 20:15 45:16 58:3 59:22 67:9 72:5 76:13 100:12 102:12 108:23 117:6

**seek**(2) 49:4 91:5
**seeking**(1) 118:12
**seeks**(1) 91:7
**seems**(2) 57:9 99:3
**seen**(6) 45:12 46:24 54:20 55:18 57:17
**segal**(7) 114:10 114:12 114:12 115:10 115:12 117:10 119:15

**seized**(2) 57:23 58:9
**selected**(1) 60:17
**selecting**(1) 64:10
**selection**(2) 30:24 31:1
**selling**(5) 28:7 28:8 28:25 82:20 83:4
**sen**(1) 6:6
**sense**(15) 10:19 22:22 25:4 26:25 58:6 73:13 86:19 96:15 96:20 101:20 102:10 112:12 117:20 104:3 104:6

**sensible**(1) 102:1
**sentence**(1) 32:11
**separate**(12) 20:20 40:10 40:18 57:14 58:9 58:13 70:11 71:7 71:12 73:15 112:19 112:23 112:25

**separately**(1) 71:13
**september**(2) 14:17 96:3
**sequencing**(1) 111:13
**series**(2) 52:12 73:13
**serious**(1) 80:3
**servers**(1) 74:24
**service**(2) 1:40 1:47
**services**(1) 1:40
**session**(1) 12:18
**set**(9) 22:15 29:25 47:16 59:19 61:11 62:24 64:9 95:20 96:10

**setting**(3) 16:7 17:17 61:15
**settle**(1) 83:9
**settlement**(9) 19:14 19:22 36:10 45:23 seven(3) 13:13 30:16 30:18
**seventh**(1) 3:31
**several**(5) 16:15 48:15 81:11 93:15 95:22
**shall**(5) 83:4 83:12 83:21 99:15 100:14
**share**(2) 56:22 96:12
**she**(1) 26:4
**short**(1) 33:23
**shortly**(2) 13:15 14:13
**should**(48) 14:10 15:2 20:8 20:9 22:19 24:22 25:12 31:24 32:16 34:15 35:19 38:13 40:19 41:14 42:16 43:24 44:10 46:15 46:16 48:12 49:18 51:3 52:11 52:22 52:25 60:22 67:19 70:14 70:18 72:7 72:22 74:11 75:17 75:19 75:22 76:19 77:11 77:13 77:15 80:10 90:17 90:18 102:22 102:22 104:24 111:21 114:13 115:16

**shouldn't**(1) 102:20
**shouldn't**(3) 31:25 59:4 61:5
**show**(8) 30:23 31:17 47:17 86:7 86:8 86:9 86:21 87:3

**shown**(1) 32:12
**shows**(3) 46:20 83:3 87:5
**side**(8) 10:19 11:5 12:21 33:25 34:4 42:21 55:3 93:16

**sides**(3) 9:20 74:5 75:15
**signed**(4) 18:5 33:17 41:6 65:6
**significant**(3) 66:9 117:6 118:20
**signing**(3) 32:5 32:10 32:24
**similar**(3) 61:18 61:23 86:1
**simon**(1) 5:10

**simply**(6) 26:12 26:15 79:14 84:1 84:3 95:19

**simultaneous**(1) 57:12
**simultaneously**(2) 39:22 48:10
**since**(6) 12:17 13:3 41:2 101:23 104:1 118:25

**single**(13) 18:17 18:17 36:9 79:11 80:10 80:11 80:12 80:14 86:11 86:12 93:8 106:15 107:2

**single-spaced**(1) 36:7
**sir**(5) 7:18 34:22 77:25 97:2 120:6
**sit**(3) 77:24 90:24 107:13
**sits**(1) 23:12
**sitting**(8) 21:15 23:15 67:8 69:3 105:19 106:12 107:6 107:15

**situated**(2) 43:15 116:17
**situation**(2) 58:8 91:5
**six**(4) 36:17 39:10 39:13 39:18
**size**(1) 47:7
**sky**(1) 87:22
**skype**(1) 56:17
**slight**(1) 23:22
**slightly**(3) 15:5 54:11 94:23
**slung**(1) 58:15
**smith**(4) 2:27 5:26 32:4 107:4
**smokescreen**(1) 106:5
**sold**(2) 50:3 73:1
**solution**(4) 50:15 56:15 58:11 69:11
**solve**(1) 107:18
**solver**(1) 87:10
**some**(41) 7:13 9:24 12:13 13:21 23:14 23:17 23:17 23:22 24:21 27:8 29:12 34:20 42:10 42:14 44:12 45:15 45:16 45:20 45:20 46:12 46:18 46:19 51:15 55:24 59:23 60:4 65:4 65:7 67:19 68:4 69:12 81:13 84:5 86:2 93:2 96:17 104:18 105:9 116:4 118:25 119:1

**somebody**(3) 32:21 106:1 114:6
**someone**(4) 9:22 62:5 62:6 95:18
**something**(23) 15:10 23:7 25:2 29:9 49:17 52:23 57:20 59:16 61:7 65:16 66:11 66:15 69:24 70:9 70:9 70:13 70:25 81:2 92:21 94:3 108:14 111:9 111:9

**sometimes**(2) 61:2 63:21
**somewhat**(1) 52:19
**song**(1) 6:10
**soon**(5) 57:17 58:18 58:20 70:25 88:11
**sooner**(1) 47:11
**sorry**(16) 14:14 34:11 34:25 51:12 55:20 57:5

**sort**(6) 10:13 12:19 29:12 56:23 60:10
**sorts**(1) 50:8
**sought**(3) 79:17 89:7 118:24
**sound**(5) 1:46 23:1 38:16 53:13 121:17
**sovereignty**(1) 72:8
**spades**(1) 19:12
**spanned**(1) 36:7
**speak**(8) 27:3 33:16 34:2 49:13 51:2 52:6 72:4 92:10

**speaking**(1) 14:6
**speaks**(1) 120:15
**specific**(3) 66:23 94:17 119:3
**specifically**(2) 48:24 79:10
**specifics**(1) 60:9
**specify**(2) 63:18 64:8
**specter**(1) 43:20
**speed**(4) 36:19 49:15 52:15 53:4
**speedy**(1) 58:12
**spend**(2) 26:13 34:7
**spent**(3) 27:16 89:16 95:3

**spoken**(1) 55:24
**spots**(1) 25:2
**square**(2) 2:6 2:22
**stage**(4) 87:24 87:24 87:25 87:25
**stake**(3) 95:21 116:25 117:1
**stakeholders**(1) 118:16
**stand**(4) 106:8 109:25 110:3 121:6
**standard**(1) 61:11
**standing**(2) 21:17 109:18
**standpoint**(1) 7:23 117:21
**stang**(1) 4:8
**stanley**(5) 5:34 5:34
**stargatt**(3) 2:19 5:9 5:46
**start**(11) 8:23 16:15 57:10 74:14 76:9 76:12 91:25 92:6 104:4 111:8 111:14

**started**(4) 10:25 34:18 38:5 57:10
**starting**(2) 16:19 93:13
**state**(3) 55:21 60:5 74:16
**stated**(1) 45:11
**statement**(4) 14:16 33:5 103:20 103:25
**statements**(4) 44:19 44:21 61:13 67:13
**states**(18) 1:1 1:19 13:17 13:24 14:1 14:9 14:11 14:14 14:16 14:16 19:4 35:2 88:7 91:2 91:19 96:12 104:18 115:13 115:25

**status**(3) 14:5 46:25 49:8
**statute**(3) 102:14 104:19 107:25
**statutory**(2) 96:16 96:19
**staunch**(1) 52:6
**stay**(6) 30:19 63:4 80:5 102:7 102:20 116:11

**staying**(1) 57:25
**ste**(4) 3:13 3:24 3:44
**steen**(1) 1:29
**step**(5) 42:1 42:6 92:14 95:18 96:7
**stephen**(2) 2:28 3:43
**steps**(1) 42:9
**still**(10) 32:18 41:6 46:13 65:17 65:18 74:18 104:3 108:16 108:25 109:18

**stood**(2) 44:14 109:9
**stop**(3) 29:16 47:1 108:11
**stopped**(4) 20:1 81:7 81:8 88:17
**stopping**(2) 73:20 74:2
**straightforwardly**(1) 29:25
**strauss**(3) 2:11 5:14 52:1
**streamline**(1) 119:25
**street**(9) 1:11 1:41 2:7 2:23 2:29 2:42 3:3 6:21 109:2

**stress**(2) 84:24 86:13
**strict**(1) 69:16
**strip**(1) 73:14
**strongly**(2) 9:22 20:15
**suasion**(1) 37:6
**subject**(15) 21:3 22:17 22:19 23:3 36:10 50:17 57:13 57:15 57:23 58:9 59:9 60:2 70:12 89:1 99:10

**submission**(23) 14:21 15:3 22:10 42:14 42:22 43:10 44:9 78:13 80:3 80:23 81:8 81:12 83:15 84:9 84:16 85:10 85:24 86:4 86:22 87:6 87:25 93:3 95:9

**submissions**(27) 8:10 8:12 12:8 12:9 13:19 20:16 40:23 41:9 41:10 43:19 46:14 49:22 51:14 51:18 55:22 61:12 79:15 94:7 94:8 94:22 95:13 111:17 114:16 114:20 115:18 116:16 119:6

**submit**(11) 43:22 44:5 44:25 46:12 52:16 64:13 98:19 101:20 104:8 115:14 116:9

**submitted**(17) 15:4 18:22 31:6 32:1 42:10 46:10 46:10 46:13 52:18 52:23 61:17 61:18 61:23 68:16 110:8 110:9 111:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**subsection**(1) 17:15

**subsequent**(2) 49:5  59:25

**substantial**(10) 10:17  11:12  13:19  13:20  23:24  23:24  74:22  75:8  75:12  110:12

**substantially**(1) 24:16

**substantive**(3) 59:3  67:11  67:13

**substitute**(1) 68:20

**successful**(1) 30:17

**successfully**(2) 13:7  108:2

**such**(8) 16:4  28:23  61:6  61:6  62:20  67:21  83:8  119:1

**sufficient**(2) 60:25  75:9

**suggest**(12) 46:15  58:6  60:19  62:8  70:12  73:21  73:22  78:25  83:19  84:4  90:7  113:13

**suggested**(2) 58:23  60:19

**suggesting**(4) 62:15  68:9  68:11  79:16

**suggestion**(2) 54:10  84:2

**suggestions**(1) 93:2

**suggests**(1) 41:16

**suit**(1) 45:20

**suitable**(1) 107:13

**suite**(1) 2:42

**summary**(1) 92:1

**summation**(1) 12:19

**summer**(1) 75:11

**sunlight**(2) 37:19  45:15

**super**(1) 69:14

**supervision**(1) 69:8

**supplemental**(1) 12:9

**supplementary**(5) 8:12  41:9  41:10  82:1  92:1

**support**(8) 48:5  52:6  52:12  54:18  98:16  100:4  102:15  104:23

**supporting**(2) 56:25  57:8

**supports**(1) 119:21

**supposed**(1) 36:13

**supreme**(4) 14:3  14:8  26:15  115:17

**sure**(17) 7:11  10:6  10:13  11:1  15:21  27:3  33:16  39:12  43:11  53:14  54:22  56:12  57:8  62:25  67:6  79:20  112:22

**surprise**(3) 21:16  21:16  21:19

**surprising**(1) 116:16

**susan**(1) 4:42

**suspect**(1) 56:19

**sustained**(1) 88:7

**sutty**(1) 2:41

**swift**(1) 45:3

**symphony**(1) 5:18

**synchronized**(2) 49:16  51:3

**system**(4) 20:3  47:16  53:14  107:9

**table**(2) 15:25  89:6

**take**(21) 7:25  10:14  12:2  13:11  15:24  23:22  24:5  36:17  37:2  39:13  43:8  55:4  59:4  91:5  100:2  105:22  106:21  106:21  113:13  113:14

**taken**(3) 24:13  72:14  105:21

**takes**(3) 14:4  46:3  111:7

**taking**(3) 14:24  66:2  102:16

**tale**(1) 79:6

**talent**(1) 27:16

**talk**(9) 12:23  18:18  19:21  27:23  32:18  79:7  88:1  91:15  101:18

**talked**(3) 7:13  11:25  82:24

**talking**(12) 13:9  13:12  16:14  27:11  29:8  80:18  89:8  89:14  104:4  107:15  108:5  108:6

**task**(2) 95:2  95:4

**tax**(1) 72:24

**tay**(2) 54:12  54:13

**taylor**(4) 2:19  3:35  5:9  5:46

**technology**(1) 71:6

**teed**(1) 45:5

**teleconference**(1) 114:1

**telephonic**(1) 4:14

**tell**(5) 60:5  79:5  110:3  110:4  112:7

**ten**(3) 42:21  47:1  113:15

**tens**(1) 50:11

**tent**(1) 120:1

**term**(11) 15:12  31:4  31:19  31:20  31:23  42:11  64:16  65:3  65:14  82:7  107:12

**terminated**(1) 8:8

**termites**(1) 108:8

**terms**(18) 25:4  29:2  32:20  38:19  50:9  59:22  68:3  68:4  68:19  72:16  73:8  81:24  92:7  69:23  69:24  70:1  70:3  70:4  70:4

**terrible**(1) 67:22

**testimony**(5) 55:22  56:5  56:7  61:13  65:20

**tests**(2) 96:16  96:19

**than**(19) 10:6  10:20  24:16  26:24  31:4  35:5  37:4  45:23  59:4  60:5  65:16  77:6  89:14  90:17  95:2  101:16  101:25  114:5  120:1

**thank**(70) 7:3  7:15  11:23  37:21  37:22  38:3  38:10  39:17  40:23  40:24  42:18  42:18  42:25  43:4  47:21  47:22  47:22  49:10  49:11  49:11  51:9  51:19  51:20  51:23  51:25  53:5  53:6  53:23  54:24  54:24  55:1  62:1  62:1  77:25  78:8  92:3  92:9  92:16  92:18  94:5  94:10  94:10  94:13  96:21  96:22  105:9  105:9  105:10  112:12  112:13  113:6  113:8  113:21  114:8  115:12  117:7  117:9  117:13  117:21  117:23  118:1  118:9  119:5  120:6  120:7  120:8  120:24  120:25  121:9  121:10

**that**(301) 7:12  7:13  7:19  7:23  8:1  8:2  8:3  8:4  8:5  8:7  8:10  8:14  8:17  8:19  8:21  8:25  9:3  9:4  9:4  9:7  9:8  9:9  9:13  9:14  9:15  9:16  9:25  10:14  10:17  10:17  11:6  11:7  11:9  11:21  11:22  12:3  12:4  12:8  12:10  12:11  12:14  12:20  13:3  13:12  13:14  13:17  13:22  13:25  14:1  14:4  14:6  14:10  14:18  14:24  14:25  15:2  15:5  15:8  15:9  15:11  15:14  15:16  15:16  15:22  15:23  15:24  15:24  16:3  16:8  16:9  16:10  16:15  16:16  16:23  16:24  16:25  17:1  17:2  17:4  17:5  17:15  17:21  17:22  18:5  18:12  18:18  18:25  19:2  19:6  19:9  19:12  19:15  19:15  19:16  19:19  20:7  20:8  20:10  20:10  20:13  20:15  20:16  20:17  21:2  21:2  21:3  21:8  21:9  21:10  21:10  21:13  21:14  21:16  21:18  21:20  21:21  22:9  22:13  22:16  22:21  22:24  23:5  23:6  23:13  23:13  23:23  24:3  24:6  24:7  24:8  24:11  24:14  24:14  24:19  24:20  24:25  25:4  25:12  25:23  26:7  26:13  26:21  27:8  27:9  27:11  27:23  28:5  28:6  29:9  29:10  29:17  30:5  30:6  30:12  30:16  30:17  30:20  30:23  31:6  32:2  32:11  32:13  32:16  32:25  33:11  33:13  33:14  33:15  34:7  34:9  34:15  34:15  35:22  35:23  36:7  36:11  36:16  36:22  37:4  37:10  37:16  38:10  38:10  38:15  38:17  38:20  38:21  38:22  38:24  39:1  39:1  39:5  39:7  39:8  39:9  39:17  39:18  39:21  40:1  40:4  40:7  40:7  40:15  40:16  40:22  41:4  41:4  41:7  41:11  41:12  41:20  41:20  41:23  41:25  42:7  42:11  42:12  42:13  42:17  42:19  43:13  43:15  43:22  43:23  44:1  44:4  44:4  44:9  44:14  44:20  44:25  45:1  45:15  45:16  45:20  45:21  46:1  46:15  46:17  46:17  46:23  46:24  47:5  47:12  47:15  47:18  48:4  48:11  48:21  48:23  48:25  49:2  49:2  49:7  49:8  49:14  49:14  49:15  49:17  49:17  50:2  50:4  50:5  50:8  50:9  50:16  50:18  50:19  50:21  51:7  51:16  52:7  52:8  52:10  52:21  52:23  53:1  53:2  53:3  53:7  53:12  53:21  53:21  54:9  54:10  54:11  54:19  54:23  55:2  55:7  55:23  55:24  55:25  55:25  56:11  56:12  56:19  56:24

**that**(301) 56:24  57:8  57:9  57:9  57:11  57:23  58:6  58:12  58:13  58:14  58:23  59:3  59:20  60:3  60:5  60:6  60:10  60:15  60:15  60:19  60:22  60:22  60:23  61:1  61:7  61:9  61:11  61:13  61:14  61:16  61:17  61:17  61:23  61:24  62:14  62:15  62:23  62:25  62:25  63:2  63:4  63:8  63:9  63:17  63:20  63:21  64:5  64:13  64:14  64:16  64:16  64:17  64:18  64:21  64:24  65:2  65:5  65:7  65:10  65:11  65:14  65:15  65:16  65:22  65:24  66:3  66:7  66:9  66:13  67:10  67:14  67:15  67:17  67:18  67:19  67:21  67:24  68:1  68:3  68:4  68:9  68:11  68:13  68:16  68:19  68:23  68:25  69:3  69:10  69:12  69:15  69:18  69:22  69:23  69:24  70:1  70:3  70:4  70:4  70:4  70:12  70:17  70:20  71:8  71:14  71:18  71:21  71:22  71:24  71:25  72:7  72:7  72:8  72:10  72:11  72:13  72:15  72:17  72:23  72:25  73:1  73:4  73:5  73:8  73:8  73:11  73:12  73:13  73:14  73:16  73:19  73:21  73:22  73:23  73:24  74:1  74:2  74:4  74:11  74:13  74:20  74:24  74:25  74:25  75:1  75:5  75:5  75:5  75:9  75:10  75:13  75:19  75:21  75:21  75:22  75:24  75:25  76:1  76:2  76:3  76:9  76:13  76:22  77:4  77:4  77:5  77:12  77:14  77:18  78:10  78:11  78:22  78:25  79:3  79:25  80:6  80:9  80:13  80:13  80:19  80:20  80:20  80:21  81:13  81:18  81:21  81:23  82:2  82:3  82:4  82:4  83:16  83:19  83:20  83:19  83:24  83:24  84:2  84:2  84:3  84:4  84:7  84:8  84:17  84:17  84:18  84:21  84:22  84:22  85:10  85:15  85:17  85:19  85:20  85:21  85:23  86:4  86:9  86:10  86:12  86:14  86:15  86:15  86:18  86:19  86:21  86:23  87:2  87:3  87:6  87:8  87:20  87:22  88:3  88:11  88:25  89:3  89:7  89:13  89:24  89:25  90:6  90:7  90:7  90:16  90:22  92:21  92:22  93:1  93:18  93:21  93:23  93:25  94:2  94:3  94:17  94:22  95:4  95:9  95:10  94:14  95:15  95:18  95:20  95:22  96:2  96:6  96:9  96:12  96:13  96:13  97:14  96:20  97:6  97:12  97:13  97:15  97:23  98:2  98:3  98:4  98:8  98:10  98:12

**that**(153) 98:12  98:16  98:16  98:18  98:23  99:3  99:6  99:15  99:22  99:24  100:3  100:7  100:14  100:14  100:20  100:22  100:22  101:4  101:5  101:6  101:6  101:7  101:9  101:10  101:15  101:17  101:19  101:19  101:20  101:21  102:6  102:7  102:8  102:10  102:19  102:19  102:20  102:21  103:2  103:9  103:9  103:10  103:12  103:15  103:23  104:2  104:5  104:8  104:10  104:13  104:16  104:24  105:1  105:7  105:21  106:4  106:5  106:9  106:9  106:13  106:15  106:21  106:21  107:6  107:7  107:9  107:14  107:15  107:21  108:1  108:5  108:7  108:8  108:12  108:13  109:1  109:7  109:11  109:13  109:17  109:19  109:21  110:6  110:8  110:13  110:14  110:16  110:16  110:18  112:16  112:20  112:24  111:4  111:5  111:13  114:1  114:2  114:3  114:3  114:6  114:15  115:3  115:21  115:22  115:22  115:23  116:1  116:3  116:3  116:6  116:8  116:13  116:16  116:24  116:24  117:3  117:5  117:10  117:16  117:19  117:19  117:21  117:24  118:6  118:7  118:8  118:20  118:22  118:23  118:24  118:23  119:14  119:16  119:20  120:3  120:5  120:13  120:14  120:15  120:18  121:16

**that's**(50) 62:15  64:25  65:18  66:10  66:15  68:15  69:10  69:11  70:8  70:9  70:13  70:13  72:7  72:9  73:20  76:6  78:12  78:19  78:25  80:25  81:6  81:25  82:16  82:23  82:23  83:15  83:15  84:13  84:20  84:20  85:11  86:20  87:5  87:5  88:7  88:15  89:12  89:19  89:23  90:19  90:19  91:20  94:18  96:5  99:5  101:2  103:7  108:18  111:11  111:13

**that's**(40) 9:20  9:21  9:23  11:8  11:9  11:17  17:18  19:20  21:1  21:18  24:23  25:2  25:16  27:25  29:2  29:14  31:7  31:19  31:22  32:15  32:22  33:7  38:12  39:7  40:3  40:5  42:5  42:15  48:18  50:2  50:7  51:9  56:14  56:25  57:7  57:20  58:16  60:2  61:7

**the**(301) 1:1  1:2  1:18  2:4  2:19  3:1  3:17  3:38  7:2  7:3  7:5  7:8  7:10  7:12  7:20  7:24  8:1  8:1  8:3  8:4  8:4  8:7  8:9  8:10  8:11  8:11  8:15  8:19  8:20  8:21  8:25  9:3  9:5  9:6  9:8  9:9  9:9  9:10  9:12  9:20  9:21  9:22  9:25  10:2  10:3  10:4  10:8  10:9  10:9  10:11  10:13  10:15  10:16  11:1  11:2  11:4  11:7  11:10  11:11  11:12  11:17  11:19  11:21  11:23  11:24  12:1  12:2  12:6  12:7  12:9  12:10  12:12  12:14  12:16  12:17  12:21  12:22  12:22  12:23  13:3  13:6  13:8  13:10  13:11  13:11  13:13  13:14  13:15  13:16  13:17  13:18  13:22  13:23  13:24  13:24  13:25  13:25  14:1  14:2  14:3  14:4  14:5  14:6  14:7  14:7  14:7  14:9  14:9  14:9  14:10  14:11  14:11  14:12  14:13  14:13  14:14  14:15  14:15  14:16  14:17  14:18  14:19  14:20  14:20  14:21  14:23  15:1  15:2  15:3  15:7  15:9  15:10  15:12  15:13  15:16  15:16  15:17  15:17  15:18  15:18  15:20  15:23  15:23  15:25  16:1  16:2  16:2  16:7  16:8  16:9  16:10  16:10  16:11  16:12  16:12  16:15  16:19  16:19  16:20  16:21  16:23  16:24  16:24  16:25  17:2  17:4  17:7  17:8  17:9  17:9  17:10  17:10  17:12  17:12  17:18  17:19  17:20  17:20  17:23  17:24  17:25  18:1  18:2  18:3  18:4  18:5  18:7  18:8  18:8  18:9  18:10  18:12  18:13  18:19  18:20  18:20  18:22  18:23  18:24  19:4  19:9  19:13  19:13  19:15  19:15  19:16  19:17  19:18  19:18  19:21  19:23  19:24  19:25  20:1  20:2  20:3  20:3  20:4  20:5  20:6  20:11  20:11  20:14  20:14  20:15  20:16  20:20  20:24  20:25  21:1  21:3  21:4  21:6  21:8  21:9  21:12  21:13  21:16  21:19  21:19  21:20  21:22  21:22  21:23  21:24  21:25  21:25  22:1  22:3  22:7  22:8  22:9  22:10  22:11  22:13  22:13  22:14  22:15  22:17  22:20  22:20  22:21  22:23  22:24  22:24  22:25  22:25  23:3  23:4  23:6  23:11  23:13  23:13  23:18  23:22  23:23  23:25  23:25  24:1  24:1  24:2  24:3  24:4  24:8  24:9  24:10  24:11  24:12  24:13  24:14  24:14  24:18  24:19  24:20  24:21  24:23  24:23  24:25

03/08/13 13:06:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the**(301) 25:4 25:5 25:7 25:10 25:11 25:11 25:15 25:17 25:22 26:2 26:6 26:8 26:8 26:9 26:12 26:14 26:15 26:16 26:16 26:17 26:20 26:21 26:22 26:24 27:1 27:1 27:1 27:3 27:4 27:4 27:6 27:7 27:9 27:11 27:12 27:13 27:15 27:19 27:21 27:23 27:25 28:3 28:4 28:5 28:6 28:8 28:8 28:9 28:10 28:10 28:11 28:13 28:14 28:15 28:15 28:18 28:19 28:25 29:1 29:2 29:5 29:7 29:11 29:11 29:13 29:15 29:15 29:17 29:17 29:17 29:18 29:18 29:19 29:19 29:20 29:21 29:22 29:22 29:23 29:24 29:24 29:24 30:1 30:5 30:6 30:6 30:7 30:9 30:11 30:11 30:14 30:15 30:17 30:18 30:19 30:22 30:23 31:1 31:3 31:5 31:9 31:10 31:10 31:11 31:12 31:12 31:16 31:18 31:18 31:23 32:5 32:7 32:7 32:10 32:11 32:14 32:17 32:19 32:20 32:22 32:24 32:24 32:24 32:24 33:1 33:1 33:2 33:3 33:5 33:6 33:7 33:10 33:12 33:13 33:14 33:14 33:16 33:19 33:20 33:22 33:24 34:3 34:5 34:6 34:8 34:10 34:13 34:14 34:16 34:18 34:19 34:22 34:23 34:25 35:2 35:7 35:10 35:15 35:15 35:17 35:18 35:20 35:21 35:23 35:24 36:4 36:8 36:9 36:11 36:13 36:21 36:21 36:23 37:3 37:6 37:6 37:6 37:10 37:11 37:11 37:13 37:14 37:16 37:17 37:20 37:22 37:23 37:23 38:2 38:4 38:4 38:6 38:6 38:7 38:8 38:8 38:9 38:13 38:18 38:19 38:20 38:22 38:23 38:24 38:24 38:25 39:3 39:3 39:4 39:4 39:5 39:6 39:6 39:7 39:8 39:9 39:9 39:10 39:10 39:11 39:11 39:11 39:12 39:13 39:17 39:19 39:19 39:20 39:21 39:22 39:22 39:23 39:24 39:25 40:1 40:4 40:5 40:5 40:8 40:9 40:12 40:13 40:14 40:17 40:20 40:25 41:1 41:3 41:3 41:3 41:5 41:6 41:7 41:8 41:9 41:10 41:11 41:12 41:13 41:16 41:17 41:18 41:18 41:20 41:21 41:21 41:23 41:23 42:3 42:4 42:4 42:5 42:5 42:6 42:8 42:10 42:10 42:12 42:12 42:15 42:15 42:16 42:19 42:20 43:1 43:1 43:6 43:7 43:8 43:10 43:11 43:14 43:14 43:16 43:16 43:18 43:19 43:19 43:20 43:22

**the**(301) 43:23 43:24 43:25 44:1 44:1 44:2 44:3 44:6 44:7 44:8 44:9 44:9 44:10 44:13 44:13 44:14 44:15 44:17 44:17 44:18 44:19 44:23 44:23 44:25 45:1 45:1 45:3 45:4 45:4 45:6 45:8 45:9 45:9 45:17 45:19 45:21 45:22 45:25 46:1 46:3 46:4 46:4 46:4 46:5 46:5 46:6 46:6 46:8 46:9 46:10 46:10 46:11 46:14 46:15 46:17 46:18 46:18 46:21 46:21 46:22 46:24 47:1 47:5 47:5 47:7 47:9 47:10 47:11 47:12 47:12 47:13 47:15 47:15 47:16 47:18 47:18 47:19 47:22 47:25 48:3 48:5 48:5 48:6 48:6 48:7 48:8 48:9 48:10 48:10 48:11 48:11 48:12 48:13 48:14 48:15 48:20 48:24 48:24 48:25 49:1 49:2 49:3 49:6 49:8 49:12 49:14 49:17 49:22 49:24 50:1 50:1 50:2 50:3 50:4 50:5 50:12 50:16 50:16 50:17 50:19 50:20 50:21 50:21 50:23 50:25 51:1 51:2 51:3 51:3 51:7 51:8 51:10 51:12 51:14 51:21 51:23 51:24 52:1 52:2 52:4 52:4 52:5 52:7 52:8 52:9 52:10 52:12 52:12 52:12 52:13 52:15 52:16 52:17 52:17 52:20 52:21 52:23 52:24 52:24 52:24 53:1 53:4 53:4 53:6 53:10 53:11 53:12 53:13 53:16 53:17 53:19 53:20 53:24 54:3 54:5 54:6 54:8 54:8 54:9 54:10 54:10 54:12 54:13 54:13 54:15 54:15 54:15 54:16 54:17 54:18 54:18 54:19 54:19 54:20 54:20 54:20 54:23 54:23 54:24 55:2 55:2 55:8 55:11 55:14 55:15 55:20 55:21 55:23 55:24 56:1 56:1 56:4 56:7 56:8 56:9 56:11 56:11 56:14 56:17 56:19 56:20 56:23 57:5 57:6 57:10 57:11 57:11 57:11 57:13 57:21 57:23 57:24 57:25 58:2 58:4 58:9 58:10 58:10 58:14 58:14 58:14 58:15 58:16 58:17 58:19 58:21 58:22 58:24 58:25 58:25 59:5 59:6 59:6 59:7 59:8 59:8 59:10 59:10 59:13 59:15 59:16 59:18 59:19 59:22 59:22 60:1 60:5 60:5 60:6 60:7 60:8 60:8 60:9 60:11 60:12 60:13 60:13 60:16 60:16 60:18 60:19 60:20 60:20 60:21 60:22 60:23 60:23 60:24 61:1 61:7 61:7 61:8

**the**(301) 61:9 61:9 61:16 61:17 61:18 61:19 61:20 61:20 61:22 61:22 62:1 62:2 62:3 62:3 62:4 62:5 62:7 62:8 62:9 62:10 62:12 62:13 62:14 62:16 62:17 62:17 62:19 62:20 62:20 62:21 62:21 62:22 62:23 63:4 63:5 63:6 63:7 63:9 63:12 63:12 63:12 63:16 63:16 63:17 63:18 63:19 63:21 63:22 63:23 63:25 64:1 64:1 64:3 64:5 64:7 64:9 64:10 64:12 64:13 64:17 64:18 64:19 64:20 64:21 64:22 64:22 64:23 65:1 65:3 65:3 65:5 65:6 65:11 65:12 65:13 65:14 65:17 65:19 65:20 65:20 65:20 65:22 66:1 66:2 66:3 66:4 66:7 66:9 66:9 66:11 66:13 66:14 66:17 66:19 66:22 66:23 67:2 67:3 67:3 67:5 67:5 67:9 67:10 67:11 67:12 67:12 67:13 67:14 67:15 67:15 67:17 68:1 68:3 68:3 68:3 68:3 68:4 68:4 68:6 68:6 68:8 68:10 68:12 68:13 68:15 68:16 68:18 68:19 68:20 68:21 68:21 68:21 68:24 68:24 68:25 69:1 69:2 69:2 69:3 69:4 69:6 69:7 69:9 69:11 69:16 69:17 69:17 69:19 69:20 69:21 69:23 69:23 69:23 69:23 69:25 70:4 70:5 70:5 70:10 70:12 70:15 70:15 70:16 70:17 70:18 70:18 70:19 70:19 70:20 70:21 70:23 70:23 70:25 71:2 71:6 71:6 71:7 71:7 71:8 71:8 71:10 71:13 71:14 71:14 71:16 71:16 71:18 71:20 71:22 71:25 72:3 72:3 72:6 72:13 72:14 72:14 72:16 72:18 72:18 72:19 72:20 72:20 72:21 72:23 72:24 72:25 73:1 73:2 73:2 73:3 73:5 73:6 73:7 73:8 73:9 73:10 73:10 73:11 73:11 73:12 73:13 73:13 73:13 73:14 73:15 73:16 73:18 73:19 73:19 73:23 73:24 73:25 73:25 74:2 74:4 74:6 74:8 74:8 74:11 74:11 74:14 74:17 74:19 74:23 75:1 75:2 75:3 75:4 75:5 75:7 75:10 75:10 75:13 75:17 75:17 75:18 75:19 75:20 75:21 75:23 76:1 76:2 76:3 76:5 76:6 76:6 76:6 76:8 76:8 76:11 76:12 76:14 76:16 76:19 76:20 76:20 76:21 76:21 76:22 76:22 76:24 76:25 77:2 77:2 77:3 77:4 77:7 77:8 77:9 77:10 77:11 77:13 77:13 77:15 77:22 77:25 78:4 78:6 78:8 78:10 78:11

**the**(301) 78:11 78:11 78:12 78:13 78:14 78:16 78:17 78:19 78:21 78:25 78:25 79:2 79:2 79:3 79:4 79:5 79:6 79:6 79:6 79:6 79:7 79:9 79:11 79:12 79:12 79:18 79:20 79:22 79:24 79:25 80:2 80:4 80:4 80:5 80:5 80:6 80:7 80:7 80:8 80:8 80:12 80:16 80:17 80:19 80:19 80:20 80:22 80:23 81:1 81:2 81:3 81:3 81:4 81:5 81:7 81:16 81:18 81:18 81:22 81:24 81:24 81:24 82:2 82:2 82:3 82:3 82:4 82:5 82:7 82:7 82:7 82:8 82:9 82:9 82:10 82:12 82:14 82:14 82:15 82:15 82:15 82:16 82:17 82:17 82:17 82:18 82:19 82:20 82:22 82:22 82:22 82:25 83:3 83:3 83:4 83:7 83:7 83:10 83:11 83:12 83:12 83:13 83:15 83:16 83:16 83:17 83:20 83:22 83:22 83:23 83:24 83:25 83:25 84:2 84:4 84:6 84:7 84:9 84:11 84:11 84:12 84:12 84:12 84:13 84:13 84:14 84:16 84:19 84:19 84:20 84:21 84:21 84:24 84:24 85:3 85:3 85:4 85:8 85:9 85:10 85:11 85:13 85:13 85:13 85:14 85:14 85:16 85:17 85:18 85:20 85:20 85:21 85:21 85:23 85:23 86:5 86:6 86:6 86:7 86:9 86:12 86:13 86:14 86:14 86:15 86:15 86:20 86:21 86:22 86:23 86:23 86:24 86:24 87:1 87:3 87:3 87:4 87:5 87:7 87:9 87:12 87:13 87:14 87:16 87:17 87:17 87:22 87:22 87:23 87:24 87:24 87:25 88:1 88:3 88:4 88:6 88:7 88:7 88:9 88:9 88:10 88:10 88:18 88:18 88:18 88:20 88:21 88:22 88:23 88:24 88:25 88:25 89:1 89:1 89:2 89:2 89:2 89:4 89:5 89:6 89:6 89:12 89:13 89:14 89:16 89:17 89:18 89:19 89:21 89:21 89:22 89:24 89:25 90:4 90:5 90:7 90:7 90:8 90:8 90:14 90:15 90:15 90:17 90:19 90:19 90:21 91:2 91:6 91:7 91:8 91:9 91:12 91:15 91:17 91:18 91:18 91:24 92:6 92:22 93:2 93:6 93:7 93:7 93:10 93:11 93:13 93:12 93:12 93:15 93:16 93:16 93:19 93:22 93:23 93:23 93:25 94:6 94:15 94:15 94:16 94:20 94:21 94:21 94:22 94:24 94:24 94:25 95:6 95:8 95:8 95:10 95:14 95:18 95:20 95:22 95:22 96:2 96:9 96:11 96:12 96:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the**(301) 96:15  96:15  96:16  96:17  96:18  96:18  96:19  96:20  96:24  97:2  97:4  97:8  97:9  97:10  97:10  97:10  97:10  97:11  97:11  97:12  97:13  97:13  97:14  97:15  97:16  97:18  97:18  97:19  97:21  97:21  97:21  97:23  97:25  98:1  98:1  98:3  98:3  98:4  98:4  98:5  98:5  98:6  98:8  98:9  98:9  98:10  98:11  98:12  98:12  98:13  98:13  98:14  98:14  98:17  98:19  98:19  98:20  98:21  98:22  98:22  98:22  98:24  98:25  99:1  99:1  99:3  99:4  99:4  99:5  99:5  99:7  99:8  99:9  99:9  99:12  99:13  99:15  99:16  99:17  99:18  99:19  99:22  99:22  99:24  99:25  99:25  99:25  100:1  100:2  100:3  100:5  100:6  100:8  100:8  100:10  100:11  100:12  100:14  100:16  100:16  100:18  100:18  100:19  100:21  100:22  100:24  100:25  101:1  101:1  101:2  101:4  101:5  101:6  101:7  101:7  101:8  101:8  101:10  101:11  101:13  101:13  101:14  101:14  101:15  101:15  101:16  101:17  101:19  101:20  101:21  101:23  101:23  102:1  102:3  102:4  102:4  102:6  102:6  102:7  102:8  102:8  102:9  102:10  102:11  102:11  102:12  102:13  102:14  102:14  102:15  102:16  102:17  102:18  102:19  102:23  102:25  103:2  103:2  103:3  103:4  103:7  103:10  103:11  103:11  103:12  103:14  103:16  103:19  103:21  103:24  103:25  104:1  104:5  104:9  104:9  104:10  104:13  104:15  104:16  104:17  104:18  104:19  104:19  104:20  104:22  104:25  105:3  105:5  105:8  105:11  105:15  105:16  105:19  105:20  105:25  106:1  106:3  106:5  106:6  106:6  106:9  106:9  106:15  106:18  106:23  106:25  107:1  107:3  107:5  107:7  107:7  107:14  107:18  107:19  107:20  107:21  107:23  107:25  108:1  108:2  108:3  108:3  108:4  108:5  108:6  108:6  108:7  108:8  108:8  108:9  108:16  108:18  108:20  108:21  108:25  109:2  109:3  109:5  109:6  109:7  109:8  109:9  109:12  109:15  109:19  109:19  109:19  109:24  110:2  110:6  110:6  110:7  110:8  110:9  110:10  110:15  110:15  110:15  110:17  110:18  110:19  110:19  110:21  110:22  110:24  110:25  111:1  111:2  111:2  111:4  111:5  111:14  111:15  111:16  111:16  111:19  111:21  112:1  112:5  112:7  112:7  112:11  112:12  112:16  112:17  112:18  112:20  112:21  112:22  112:24  112:23  113:2  113:4  113:6

**the**(107) 113:8  113:14  113:15  113:15  113:17  113:17  113:20  113:21  113:22  114:3  114:4  114:4  114:14  114:18  114:20  114:22  114:24  115:6  115:9  115:11  115:13  115:16  115:20  115:20  115:23  115:23  115:24  115:25  116:1  116:1  116:2  116:5  116:7  116:7  116:8  116:12  116:12  116:14  116:20  116:23  116:25  117:1  117:4  117:5  117:6  117:14  117:18  117:19  117:25  118:2  118:4  118:6  118:7  118:7  118:8  118:9  118:12  118:15  118:16  118:16  118:17  118:17  118:19  118:21  118:22  118:24  118:25  119:2  119:2  119:3  119:6  119:6  119:7  119:7  119:10  119:17  119:18  119:18  119:20  119:21  119:21  119:24  120:1  120:2  120:6  120:8  120:10  120:14  120:14  120:15  120:15  120:16  120:17  120:21  120:21  120:24  121:1  121:3  121:4  121:6  121:7  121:11  121:13  121:16  121:17  121:17  121:18

**their**(38) 10:23  11:11  18:25  19:3  22:12  23:4  23:9  29:1  30:16  33:19  37:1  43:9  41:12  44:11  45:21  45:22  46:2  46:3  46:14  50:20  58:13  59:12  61:3  64:22  67:24  68:13  68:25  69:10  69:24  74:25  75:24  76:9  77:3  102:21  106:10  107:15  107:23

**them**(50) 13:5  14:5  16:17  18:25  19:19  20:4  20:8  24:5  24:15  36:9  39:1  40:17  41:8  41:8  50:23  54:22  58:24  63:8  64:13  65:22  66:8  71:13  74:25  77:8  86:19  88:1  89:5  89:6  91:14  103:18  104:11  105:22  105:23  107:2  107:5  107:6  108:4  109:16  109:17  110:24  113:1  113:10  114:16  114:17  115:4  115:6  115:19  116:19  116:22  117:17

**themes**(1) 43:13

**themselves**(4) 22:24  49:8  83:9  84:3

**then**(43) 8:24  10:1  10:25  11:5  14:23  17:7  17:10  21:22  22:7  23:21  25:5  29:4  35:17  36:17  36:19  39:3  40:7  43:2  44:1  44:20  48:21  50:16  62:7  70:12  75:18  77:8  83:1  83:11  85:25  87:22  88:22  90:21  91:2  94:7  108:4  110:16  111:1  111:6  118:6  118:8  119:7  121:4  121:8

**theories**(9) 18:25  19:3  23:2  23:5  23:9  73:24  90:13  106:9  111:15

**there**(112) 7:21  7:23  8:22  8:24  10:10  10:12  12:10  13:2  16:8  16:13  16:15  16:17  16:18  17:14  17:14  21:16  21:23  23:7  24:21  27:19  28:21  29:15  30:3  30:11  33:10  33:11  33:18  35:18  36:5  36:6  36:6  42:14  43:12  46:18  50:4  50:8  50:10  57:22  58:3  59:16  60:3  62:5  63:8  65:7  65:10  65:16  67:18  67:18  68:2  69:2  70:3  71:12  71:15  72:10  73:20  73:24  74:4  74:21  74:24  75:8  75:8  75:21  77:15  78:17  79:23  80:2  81:12  81:22  81:23  82:18  83:23  83:24  84:1  84:17  85:1  85:2  85:23  86:2  86:7  86:8  86:24  87:1  87:2  87:14  87:15  88:2  89:1  92:19  93:5  93:13  94:23  96:17  100:21  103:9  104:10  105:11  105:18  106:20  107:8  110:13  112:8  112:16  112:23  114:2  114:14  114:15  116:3  117:9  117:15  117:16  120:3

**there's**(19) 63:11  63:17  68:5  69:13  71:20  74:23  76:1  76:13  76:16  77:3  82:6  82:21  88:6  91:19  92:14  96:14  110:12  111:10  113:5

**therefore**(5) 30:18  31:24  39:4  91:10

**there's**(35) 8:17  10:21  11:6  13:4  15:8  15:12  18:3  22:5  23:18  23:19  23:19  24:6  24:6  24:12  26:6  26:14  26:18  26:19  26:22  26:23  27:10  28:23  32:9  32:19  33:5  35:16  39:12  41:22  47:23  50:5  54:22  57:9  59:19  61:10  62:6

**these**(68) 16:5  16:10  16:17  17:6  17:8  17:20  18:14  18:18  18:19  18:21  19:6  19:7  19:8  19:8  20:2  20:7  20:17  20:17  21:15  21:17  22:3  22:4  22:7  22:8  22:20  23:3  23:8  23:12  24:3  24:5  31:5  33:18  33:20  35:23  36:1  36:18  36:20  37:4  37:5  37:8  37:10  38:16  39:5  40:3  40:9  45:3  46:7  46:21  47:11  47:14  50:10  71:23  71:24  76:4  79:14  80:7  80:9  80:13  89:13  91:6  92:5  93:20  101:24  105:2  106:19  107:18  107:19  111:5

**they**(163) 7:25  8:10  10:1  14:17  18:13  18:21  18:22  18:24  19:9  19:17  20:6  20:8  22:17  22:19  23:4  23:8  23:9  23:21  24:15  27:17  27:18  27:18  28:2  28:25  30:7  30:19  31:12  31:13  31:14  31:24  31:24  32:1  32:21  33:17  33:17  34:16  34:20  35:23  36:8  36:12  36:12  36:12  38:17  39:1  40:17  40:20  41:13  41:16  41:17  41:25  42:6  44:15  44:20  46:13  46:18  47:6  47:16  49:7  50:4  51:1  52:18  53:1  53:2  54:21  58:3  59:1  59:2  59:3  60:14  62:22  63:9  63:25  64:22  65:2  65:3  66:3  68:6  69:18  70:6  70:16  70:17  72:9  75:7  75:22  76:9  76:9  76:10  76:13  77:20  79:17  79:25  80:10  80:18  80:24  80:25  81:19  82:4  82:5  82:9  83:9  84:25  85:1  85:2  85:7  85:8  85:15  85:16  86:7  86:8  86:9  86:18  87:18  87:18  89:5  90:24  91:7  91:9  93:9  93:23  94:9  98:6  98:15  98:17  98:23  99:1  99:7  99:9  99:14  99:17  99:24  100:17  100:17  102:7  102:10  102:19  102:20  103:17  103:17  103:18  104:1  104:2  104:2  105:23  106:1  106:13  106:14  106:17  107:1  107:5  107:11  107:21  107:22  108:2  109:11  110:22  110:23  112:24  112:25  113:2  114:23  114:24  114:25

**they'd**(2) 66:13  71:16

**they'll**(1) 76:2

**they're**(18) 65:8  67:6  67:21  67:23  68:9  68:11  70:4  71:3  76:10  76:12  76:23  87:23  102:16  102:17  104:19  107:5  114:25  118:7

**they've**(8) 67:24  67:24  85:18  88:19  107:13  107:14  107:16  107:22

**they're**(10) 26:5  28:2  31:5  31:18  31:22  37:9  44:16  56:5  57:8  58:4

**they've**(3) 31:6  32:3  59:18

**thing**(11) 19:15  27:25  36:16  50:19  67:22  73:11  77:7  103:10  104:10  105:25  108:16

**things**(29) 12:10  12:14  13:2  23:17  23:18  23:23  31:6  31:20  32:10  41:12  46:16  49:16  50:8  60:23  61:13  62:25  62:25  63:1  71:5  72:4  75:1  86:3  100:15  103:9  105:18  109:22  110:14  116:23  120:1

**think**(94) 9:21  9:24  10:15  10:21  11:9  12:7  13:4  13:12  16:5  16:18  18:13  24:23  26:4  28:1  28:4  28:20  29:13  29:14  29:20  29:21  29:24  30:16  31:10  31:12  31:15  31:18  31:23  32:22  33:3  34:14  36:1  37:16  37:18  37:22  39:1  43:12  43:14  45:13  45:14  46:11  47:7  52:22  52:23  52:25  53:1  53:20  54:7  54:8  55:2  56:6  57:2  58:15  58:16  61:14  63:24  65:15  65:23  66:4  66:6  66:24  67:2  69:4  70:10  71:7  72:15  74:10  74:13  74:17  74:20  78:19  84:15  87:11  91:23  92:7  96:23  100:3  100:13  101:5  101:6  101:20  110:23  112:6  113:5  116:20  118:5  119:25  121:3

**thinking**(2) 42:10  59:22

**third**(12) 2:48  13:24  14:2  14:13  22:8  23:14  26:17  41:20  59:8  85:11  97:12  99:14

**this**(168) 8:2  8:17  9:17  11:5  11:13  12:18  15:4  16:4  16:22  18:10  18:11  18:15  18:21  18:23  20:8  21:4  21:15  22:2  22:11  24:4  24:9  24:13  25:2  25:2  25:19  25:21  25:25  26:1  26:13  26:16  27:4  27:16  29:21  29:23  30:4  31:7  31:13  32:12  32:17  33:11  33:17  35:5  35:11  35:25  36:19  36:20  37:12  37:14  37:16  37:18  37:19  38:24  40:6  40:14  40:19  40:22  41:9  41:24  42:21  43:24  43:24  44:13  44:20  45:11  45:16  46:13  47:11  47:13  47:19  47:20  49:3  49:17  50:1  50:14  50:20  52:5  53:19  54:2  54:14  56:3  56:5  57:10  57:18  58:4  58:11  58:22  60:10  60:13  61:4  62:23  64:15  65:3  65:6  65:9  66:12  66:14  66:20  66:21  67:9  67:20  67:25  68:1  68:6  70:3  71:24  72:17  74:2  74:9  75:11  76:11  76:21  78:19  79:1  79:10  80:2  81:1  81:11  81:17  81:22  82:18  83:1  84:1  84:14  85:15  87:5  87:12  87:13  87:16  87:17  89:22  91:23  92:5  92:8  94:21  95:1  95:17  95:17  95:19  95:22  96:1  96:16  96:14  97:9  100:8  100:23  101:22  102:2  103:2  107:9  107:16  107:17  108:11  108:14  108:22  109:7  109:15  110:11  111:3  111:7  114:1  114:21  116:11  117:10  118:5  119:19  120:19  120:19  121:1

**those**(62) 7:14  10:20  13:4  13:18  13:20  18:24  18:24  19:2  19:3  19:4  20:6  21:11  22:17  23:2  23:12  23:14  23:20  24:18  36:11  38:14  38:17  40:18  40:18  40:22  43:17  44:3  44:21  48:22  49:13  50:25  51:15  51:18  59:17  59:23  61:15  61:24  63:20  63:24  64:2  65:12  66:7  69:9  69:13  71:17  76:3  77:19  77:21  78:10  80:13  80:16  80:17  88:20  102:20  102:21  111:20  112:9  112:23  114:4  114:5  115:14  116:7  118:1

**though**(4) 66:24  93:1  97:22  110:13

**thought**(10) 9:12  12:18  27:14  27:15  34:18  52:18  65:22  67:23  105:9  112:3

**thousands**(1) 50:11

**three**(16) 20:19  25:1  37:1  40:5  40:14  51:1  60:19  62:10  63:4  73:2  77:15  80:13  97:7  105:20  106:24  108:15

**through**(26) 18:19  19:16  20:19  28:3  28:24  29:13  55:22  58:9  58:13  58:20  59:7  59:7  64:12  64:19  65:4  66:17  67:12  71:1  79:6  80:16  80:17  84:19  87:20  89:18  114:3  116:8

**throughout**(2) 52:13  82:3

**throw**(2) 45:15  107:9

**thrown**(1) 11:18

**thursday**(1) 7:1

**till**(1) 86:5

**time**(58) 9:5  9:7  9:9  9:16  10:2  11:19  12:1  12:2  12:15  14:25  20:5  20:12  20:21  24:13  25:19  25:20  26:13  27:16  33:23  34:1  34:14  34:21  37:2  37:16  37:23  39:7  39:11  42:14  45:15  49:5  51:15  61:1  64:19  65:5  70:25  72:17  74:21  75:9  75:14  81:10  83:9  86:1  86:20  88:2  89:17  89:22  90:12  94:11  95:11  97:21  102:10  103:23  103:24  104:10  105:4  106:15  109:15  120:22

**timeframe**(1) 45:22

**timely**(2) 29:6  83:6

**times**(5) 17:10  61:6  67:17  71:2  95:22

**timetable**(3) 48:25  95:21  115:20

**timing**(7) 45:9  46:4  52:19  96:5  96:10  97:10  102:3

**title**(2) 59:18  73:5

**today**(30) 8:8  8:11  9:11  17:1  21:20  23:16  23:21  25:24  34:6  41:20  60:16  61:8  71:4  74:16  74:16  85:9  91:24  94:3  94:8  94:9  95:13  103:3  115:20  116:16  116:23  117:19  118:5  119:8  120:14  120:18

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**today's**(1) 118:24
**today's**(1) 48:23
**together**(17) 20:7 21:15 23:21 24:20 25:1 25:3 40:21 64:14 65:13 69:14 72:6 84:17 104:25 109:9 109:10 110:18 110:23
**told**(8) 79:7 81:3 81:3 81:22 89:24 95:21 102:10 109:25

**tomorrow**(3) 114:1 114:17 121:7
**too**(11) 11:18 61:2 70:25 71:3 72:15 81:1 81:20 103:15 103:17 114:6 115:6
**took**(4) 17:13 23:6 64:19 81:7
**topic**(1) 117:4
**torys**(1) 5:6
**to''**(1) 83:12
**traci**(1) 121:22
**traditional**(1) 31:1
**transaction**(7) 18:18 83:5 83:8 89:7 90:17 90:18 90:18
**transactions**(3) 28:9 73:14 89:23
**transactions.''**(1) 28:11
**transcriber**(1) 121:22
**transcript**(7) 1:17 1:47 10:17 54:15 79:22 80:6 121:17
**transcription**(2) 1:40 1:47
**transcripts**(2) 80:16 80:17
**transfer**(1) 19:25
**transferred**(1) 73:6
**transparency**(4) 20:21 53:4 53:4 63:8
**transparent**(3) 20:10 20:18 63:3
**tremendous**(4) 72:11 73:4 73:25 74:23
**trial**(4) 50:12 50:19 89:9 112:7
**trials**(1) 112:9
**tries**(1) 44:11
**triple**(5) 15:18 20:16 23:25 49:12 52:11
**trouble**(3) 61:3 61:15 106:16
**true**(6) 26:10 26:15 66:21 68:25 73:16 112:16
**trust**(3) 5:31 118:13 118:18
**trustee**(7) 3:1 3:1 53:12 94:15 94:20 116:6 119:2
**trustees**(1) 52:12
**try**(10) 9:14 25:25 29:11 30:1 30:3 58:3 59:20 83:9 94:18 97:5
**trying**(7) 32:5 42:20 58:4 70:4 82:1 89:10 89:15
**tune**(1) 102:21
**tunnell**(1) 1:22
**turn**(3) 44:2 99:6 108:13
**turnaround**(1) 79:1
**turning**(1) 117:11
**tweed**(2) 4:1 43:6
**tweeed**(1) 4:45
**twice**(2) 19:19 50:13
**two**(55) 9:10 9:15 9:20 10:6 12:2 16:5 16:7 17:20 18:19 20:7 21:15 22:7 23:16 25:1 31:6 35:5 35:20 45:5 40:9 43:17 44:4 45:5 46:16 49:14 50:7 52:12 56:10 57:12 57:14 57:23 58:2 58:2 58:8 58:12 61:22 68:24 71:6 82:20 86:23 88:13 89:25 90:8 91:3 91:6 91:13 93:20 98:8 98:15 100:15 101:24 101:25 103:8 108:12 111:11 116:10
**tyler**(1) 5:30 53:9 120:11
**type**(5) 24:19 44:12 65:7 71:8 72:8
**types**(2) 16:16 71:25
**typical**(1) 35:2
**typically**(1) 66:24

**u.k**(12) 13:23 14:1 14:4 14:6 14:10 14:16 14:19 18:9 22:1 22:9 22:11 50:24
**u.s**(87) 5:5 7:10 10:9 11:23 12:21 14:3 14:11 15:2 15:16 15:17 16:19 16:23 19:10 19:19 20:14 20:14 22:14 22:25 31:2 33:1 33:14 38:23 39:3 39:4 39:10 39:19 39:21 39:22 40:8 41:8 41:21 41:23 43:16 44:20 47:6 48:6 48:8 53:3 53:5 57:1 57:11 59:19 61:17 65:12 66:2 68:6 69:17 69:19 73:13 73:25 74:12 75:10 75:13 75:18 76:20 76:22 76:25 77:13 79:2 80:8 83:16 85:4 87:9 87:17 87:17 88:5 88:5 88:9 89:2 89:2 89:4 91:7 98:3 98:15 98:20 98:25 99:1 99:25 101:8 101:16 102:6 102:14 103:11 103:14 110:16 115:14 119:17
**u.s.c**(1) 16:22
**ultimate**(1) 75:17
**ultimately**(2) 47:5 92:23
**unable**(1) 99:22
**unacceptable**(1) 46:25
**unambiguous**(1) 29:22
**unchanged**(1) 41:11
**under**(41) 16:23 17:4 26:8 26:14 29:1 29:22 31:2 31:2 31:4 40:10 44:13 59:15 60:13 64:5 65:11 65:13 65:17 68:10 69:7 70:19 72:2 72:3 72:20 81:24 82:22 84:1 86:25 93:12 99:19 100:20 101:1 102:14 102:18 104:1 104:16 104:22 107:19 115:14 115:24 116:7 120:1
**undercuts**(1) 67:20
**underlies**(1) 41:12
**underlying**(2) 66:4 72:25
**underscore**(1) 45:11
**underscores**(2) 55:24 56:8
**understand**(17) 7:23 8:19 10:24 15:8 32:11 32:13 37:17 42:11 55:20 84:12 84:13 86:4 92:22 98:3 116:3 117:15 117:19
**understanding**(5) 17:3 48:23 67:16 103:1 111:2
**understood**(9) 33:5 33:17 55:20 56:24 64:15 68:12 78:17 86:10 86:15
**undisputed**(1) 116:2
**unenforceable**(3) 87:19 87:21 90:16
**unequivocal**(1) 79:11
**unfamiliar**(1) 46:6
**unfortunate**(1) 9:8
**unfortunately**(1) 40:6
**unilateral**(1) 41:25
**unilaterally**(1) 42:1
**unique**(3) 47:13 120:16 120:17
**uniquely**(2) 43:14 116:17
**united**(21) 1:1 1:19 13:17 13:24 14:1 14:9 14:11 14:14 14:16 19:4 22:13 22:15 35:2 50:11 59:15 91:2 91:18 96:12 104:18 115:13 115:25
**unknown**(8) 39:15 40:24 41:1 45:8 51:13 51:19 78:15 117:23
**unless**(3) 9:22 77:23 99:16
**unlike**(2) 58:21 104:16
**unlikelihood**(1) 87:15
**unprecedented**(2) 50:14 51:5
**unquestionably**(1) 33:19
**unrelenting**(1) 22:1
**unsecured**(2) 5:14 52:3
**unselected**(1) 45:8
**until**(10) 28:13 30:19 53:22 54:21 57:25 76:10 76:13 76:18 93:23 104:6
**unwarranted**(1) 45:17
**unwieldy**(1) 119:24
**update**(1) 12:19
**updates**(1) 93:1

**upheld**(1) 76:22
**upon**(9) 28:7 29:18 41:22 41:25 60:11 71:9 98:4 103:2 104:17
**urge**(1) 51:6
**urging**(1) 94:20
**usa**(1) 4:41
**use**(9) 27:11 42:11 64:7 64:22 82:4 82:5 82:6 102:19 107:11
**used**(10) 64:16 64:18 65:10 65:14 67:19 73:14 80:6 82:2 82:8 82:15
**useful**(3) 62:14 96:7 96:7
**usefully**(1) 95:4
**uses**(2) 31:1 31:3
**using**(1) 79:11
**usual**(1) 8:6
**vacate**(1) 59:20
**vacuum**(1) 30:7
**vague**(1) 103:15
**value**(7) 19:12 19:12 43:20 73:6 73:10 73:15 118:22
**varied**(1) 21:18
**variety**(1) 93:5
**various**(6) 21:19 23:1 42:9 56:24 91:18 112:17
**venue**(2) 13:25 22:12
**verification**(1) 42:17
**version**(1) 17:9
**very**(65) 9:8 11:15 11:17 11:23 12:4 12:18 13:7 17:20 17:21 17:24 18:11 19:1 20:5 20:15 20:18 22:14 22:14 25:3 25:23 26:16 28:1 28:3 29:25 31:1 31:1 31:2 31:4 31:11 32:4 33:9 35:13 37:19 37:21 38:16 40:2 42:16 42:16 51:13 52:18 52:19 52:22 55:14 59:5 59:9 59:16 59:19 61:3 61:18 62:12 68:10 68:13 71:10 78:21 81:15 83:17 87:15 92:9 94:10 104:19 110:17 112:6 112:15 114:8 114:16 114:24
**video**(2) 7:5 56:3
**view**(9) 45:2 46:19 52:10 79:12 93:4 94:2 96:12 101:6 119:23
**views**(1) 56:4
**violation**(1) 58:7
**virtue**(1) 18:13
**vis-a-vis**(2) 97:11 102:4
**visible**(1) 20:11
**vociferously**(1) 112:2
**void**(1) 70:6
**volume**(1) 16:4
**voluntary**(1) 22:10
**walk**(6) 105:23 105:24 106:17 106:19 107:9 108:18
**want**(34) 16:3 22:17 25:23 27:23 28:3 31:17 34:1 37:5 37:15 40:1 41:1 43:13 47:3 48:19 49:23 51:2 54:9 54:22 55:15 55:18 58:17 63:4 92:20 93:1 93:14 93:23 106:18 107:2 110:4 111:12 114:6 115:12 115:22 120:21
**wanted**(15) 10:15 24:17 7:17 33:4 53:17 54:7 62:13 82:14 105:18 109:23 110:24 117:23
**wants**(1) 33:22
**ward**(7) 94:12 94:13 94:14 95:8 95:13 117:11 117:13

**was**(118) 7:14 8:22 9:8 9:12 14:1 14:2 14:3 14:24 15:5 15:9 17:8 17:10 17:14 17:23 19:12 23:7 30:5 30:6 30:18 32:4 32:6 32:7 32:11 32:20 33:13 33:14 33:15 34:4 39:8 39:19 40:7 41:5 41:6 41:7 41:20 41:21 41:22 48:23 49:1 50:2 53:12 53:21 54:8 54:10 54:19 58:22 59:22 65:6 65:14 65:16 65:20 65:21 66:6 67:18 67:18 67:23 69:24 71:1 72:23 72:23 73:4 73:5 73:6 73:13 75:6 75:6 77:15 78:23 79:9 80:18 80:19 80:20 80:20 81:1 81:3 81:4 81:6 82:8 82:9 83:3 83:16 83:17 83:24 84:17 84:19 85:1 85:21 85:23 86:8 86:13 86:14 86:15 86:17 86:18 89:7 91:23 92:4 93:15 93:18 95:16 95:23 96:2 96:11 98:4 99:18 102:7 102:13 103:1 103:3 106:11 106:12 108:7 109:13 109:16 110:6 110:8 110:18 121:13
**wasn't**(2) 32:8 57:9
**waste**(1) 49:16
**watkins**(2) 2:46 119:12
**way**(31) 8:1 9:4 9:10 11:5 14:7 20:18 21:7 28:23 38:24 40:21 46:1 50:16 55:5 57:15 58:19 60:14 62:2 70:3 70:5 72:15 79:6 81:20 84:2 84:2 84:16 84:17 86:16 87:8 91:19 102:1 116:8
**we'd**(2) 111:1 118:5
**we'll**(4) 85:3 91:4 107:9 113:14
**we're**(23) 62:15 72:18 81:19 82:12 85:6 89:8 89:10 89:13 93:13 94:20 95:9 95:18 106:4 106:24 107:15 108:15 109:17 109:18 111:3 111:18 111:23 117:5 118:14
**we've**(18) 69:18 71:1 71:4 72:19 73:16 81:12 85:5 86:3 95:22 106:22 106:23 107:16 108:11 109:7 109:8 115:19 117:13 117:15
**webb**(4) 3:35 5:30 53:9 120:11
**week**(3) 46:13 110:11 111:10 111:11
**weeks**(2) 53:7 61:6
**weight**(1) 32:2
**welcome**(1) 114:5
**well**(45) 9:12 10:12 10:18 11:17 14:24 17:6 19:9 20:16 21:1 21:9 23:25 26:10 27:19 27:21 27:22 30:8 30:11 30:15 31:14 33:24 40:2 42:19 45:1 52:18 55:14 56:24 59:10 60:12 62:12 62:3 63:20 64:24 66:19 78:24 80:23 86:2 86:15 92:5 94:2 96:1 96:6 108:20 109:2 115:3 121:8
**well-expressed**(1) 41:7
**went**(7) 9:8 18:19 64:12 65:4 89:18 107:20 118:13
**were**(51) 10:3 12:8 13:17 14:17 14:19 33:17 36:12 36:12 36:13 40:13 45:5 50:4 54:21 55:24 56:2 65:5 65:15 66:1 68:1 68:13 69:22 72:25 73:1 73:3 73:14 74:4 74:16 75:11 77:20 80:12 80:18 81:3 93:2 93:25 96:4 97:17 99:22 102:8 103:15 103:17 106:2 107:24 108:5 108:6 109:11 109:14 109:22 111:1 111:5 118:1 119:1
**weren't**(4) 75:4 75:5 98:11 103:18
**we'd**(1) 44:24
**we'll**(7) 9:25 11:6 11:13 45:16 51:18 53:21 55:25
**we're**(22) 7:23 8:20 11:12 11:15 12:2 13:9 13:12 15:23 21:17 21:20 23:9 23:14 28:12 29:8 29:25 30:1 30:2 43:16 45:14 55:6 55:13 55:16
**we've**(12) 19:15 22:21 24:20 24:25 31:6 40:22 46:24 55:21 57:17 60:19 60:22 61:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**what**(104) 8:21  10:20  14:19  21:1  24:7
26:22  26:23  27:7  27:24  28:1  30:5  30:8
30:9  32:2  32:6  32:13  32:20  33:5  33:17
36:21  38:15  38:21  39:20  39:25  40:6  41:2
43:8  45:13  46:2  46:2  46:15  48:18  50:21
52:25  53:2  53:20  56:24  57:8  58:1  58:5
58:5  59:10  60:5  61:10  61:20  67:1  67:1
67:3  67:6  67:20  69:14  71:4  71:13  72:6
72:9  72:19  73:10  73:18  73:18  74:19  77:14
77:16  77:17  78:11  78:19  79:17  80:18
80:25  81:2  81:6  81:17  81:21  81:22  83:3
84:7  84:9  84:20  84:21  84:22  85:4  85:11
86:7  87:5  87:20  87:22  89:8  90:3  90:4
93:11  96:9  97:21  97:22  99:4  99:5  100:12
104:4  104:6  106:4  106:17  111:1  112:7
115:21  117:10  120:12

**what's**(11) 62:15  63:10  64:17  65:25  72:16
85:9  87:8  95:21  96:8  96:9  99:21

**whatever**(10) 8:12  20:12  20:12  49:20
49:20  75:13  75:14  105:14  114:17  120:22

**whatnot**(1) 120:4
**whatsoever**(3) 30:4  32:14  83:23
**what's**(4) 36:15  43:9  52:23  61:18
**when**(42) 15:2  16:14  18:2  18:6  19:12
19:21  20:5  21:22  22:23  23:5  23:15  24:15
27:9  32:9  33:13  33:17  36:8  36:8  36:23
41:5  41:23  46:11  57:19  58:3  64:13  66:15
73:23  75:11  76:21  80:4  80:22  80:25  81:3
81:16  84:25  86:22  91:15  93:10  96:7  102:6
105:21  108:6

**where**(29) 20:25  31:8  38:5  46:1  50:4
55:23  57:8  58:2  58:8  62:16  62:21  65:5
67:8  67:9  75:20  75:23  75:23  82:20  83:1
88:9  89:9  89:15  91:5  93:5  99:17  101:4
100:9  106:1  109:9

**whereas**(1) 59:6
**whereupon**(1) 121:13
**whether**(13) 23:6  24:21  26:18  38:7  47:6
60:3  60:21  77:1  97:8  97:16  97:25  102:13
104:21
**which**(49) 14:24  17:14  17:15  26:7  26:25
27:4  27:12  29:23  30:20  31:2  31:3  31:16
31:18  34:23  35:16  36:5  42:15  45:5  47:5
52:8  56:21  57:7  57:14  57:15  58:22  62:20
62:24  65:9  66:1  67:21  75:2  79:3  80:1
81:16  83:11  86:4  86:22  87:7  88:5  90:22
91:1  96:18  101:2  101:17  104:2  104:20
107:24  115:15  118:25

**while**(6) 24:12  32:12  69:16  93:15  106:12
107:24

**who**(33) 7:25  8:16  10:6  15:13  27:3  31:7
32:3  32:20  36:18  37:9  46:6  47:24  48:25
50:11  51:14  52:13  58:3  58:3  61:2  61:2
61:5  64:15  65:9  65:14  67:18  71:15  71:17
73:10  75:7  85:13  85:14  114:4  114:5

**whole**(2) 98:4  112:25
**whom**(1) 69:7
**whose**(1) 10:19
**who's**(2) 10:19  61:22
**why**(20) 19:9  21:9  38:11  40:12  40:19  42:5
46:21  51:10  58:15  75:19  79:10  80:1  82:7
86:4  86:20  86:22  90:19  114:13  116:21
117:15
**wildest**(1) 30:17

**will**(80) 9:23  11:23  12:17  12:23  14:24
22:13  29:5  30:5  30:20  31:7  35:5  35:25
36:4  36:17  36:19  36:20  36:22  36:22  37:18
37:19  38:16  38:19  39:21  40:15  42:20  43:9
44:11  45:9  46:24  47:6  50:14  50:16  51:5
51:5  51:19  56:2  56:3  57:15  58:13  58:14
61:10  62:5  63:3  64:15  64:18  66:5  74:1
75:8  75:8  75:20  75:24  75:25  76:3  76:14
77:9  78:13  81:23  87:14  87:20  89:16  89:17
89:19  90:20  91:1  91:4  92:4  92:23  97:14
105:23  106:3  110:4  113:12  113:17  113:22
114:1  114:3  117:4  117:5  120:2  121:7

**willing**(1) 45:12
**willkie**(3) 3:28  4:21  97:3
**wilmington**(13) 1:12  1:26  2:8  2:24  2:43
3:5  3:11  3:25  3:45  4:11  7:1  118:13  118:18

**wind**(1) 58:1
**wing**(1) 62:21
**wins**(1) 58:3
**wish**(5) 10:6  55:9  113:9  113:9  114:4
**wishes**(1) 115:16
**with**(184) 7:5  8:3  8:8  8:23  9:23  11:8
11:19  11:24  12:14  12:22  13:4  13:18  13:23
14:19  15:3  15:14  15:18  16:6  16:15  16:19
16:21  16:24  17:12  17:12  18:4  18:7  18:8
18:20  21:3  21:14  21:15  22:9  22:12  23:11
23:12  23:13  23:25  23:25  24:1  24:22  24:24
28:7  31:16  31:23  32:5  32:11  32:21  33:1
34:18  36:8  37:2  37:16  38:8  38:16  38:25
38:25  39:3  39:5  39:20  40:11  40:11  40:22
41:3  42:3  42:4  42:17  43:19  43:21  44:3
43:5  43:4  46:6  46:9  46:14  47:9  47:10
48:10  48:12  49:1  49:2  49:8  50:12  52:5
52:5  52:10  52:15  53:4  54:9  54:15  57:15
58:1  58:17  58:24  59:12  60:22  61:3  61:8
62:24  62:24  66:2  66:7  66:11  66:13  70:3
70:5  70:11  70:21  71:13  71:25  72:3  72:11
73:12  73:17  74:2  74:14  76:15  80:4  80:12
81:15  83:25  84:7  84:25  85:17  85:22  86:17
86:17  87:6  87:15  87:21  88:15  88:15  89:11
90:1  90:2  90:5  90:25  92:14  92:20  93:15
93:16  93:20  94:7  97:14  97:16  100:3  100:5
100:9  100:10  100:18  102:3  102:11  102:23
103:6  104:25  105:4  106:1  107:3  107:5
108:3  109:9  109:11  109:11  109:16  110:17
110:23  110:23  110:24  111:3  111:5  111:8
111:9  111:14  112:2  115:21  116:5  116:18
116:23  116:24  117:4  117:18  118:8  118:16
119:15  119:17

**within**(6) 15:12  61:9  61:20  68:23  83:8
112:25

**without**(5) 19:1  20:4  23:3  108:18  120:20
**witness**(6) 61:13  88:6  95:23
**witnesses**(3) 56:3  56:4  71:5
**women**(1) 37:8
**won**(3) 107:14  107:16  107:17
**won't**(7) 66:17  67:12  76:4  76:5  77:9
89:16  119:14

**won't**(3) 26:13  33:15  41:8
**wood**(1) 108:9
**word**(11) 27:12  31:16  64:7  64:22  64:23
64:23  82:2  82:4  82:5  82:9  95:25
**words**(13) 11:13  27:8  28:18  31:2  31:3
32:11  55:23  74:7  78:12  79:12  80:6  80:12
84:11
**work**(7) 15:24  40:10  51:5  60:6  63:14
84:17  98:10

**working**(2) 19:10  98:6
**world**(3) 69:2  69:5  85:13
**worse**(1) 89:19
**worst**(1) 58:1
**worthwhile**(1) 13:5
**worthy**(1) 32:2

**would**(128) 8:1  8:7  9:9  9:14  9:15  9:16
9:19  10:20  12:16  12:18  13:5  15:16  17:3
21:7  27:14  27:15  27:24  30:17  30:19  33:12
33:15  37:4  37:9  37:10  39:13  40:9  40:10
41:25  42:17  45:18  47:24  48:9  49:2  49:5
50:18  51:1  51:16  54:12  55:18  56:1  56:6
57:24  58:6  58:23  58:24  58:25  59:1  59:1
59:2  60:9  60:10  60:16  60:17  60:18  60:21
60:24  61:9  61:15  61:20  62:7  62:8  62:22
63:21  64:1  64:21  65:6  65:7  65:9  65:24
66:5  66:8  66:12  67:17  67:21  68:20  70:16
70:12  71:5  71:9  71:23  72:7  72:9  73:21
73:21  73:22  74:17  77:6  77:19  78:18  78:21
79:7  79:8  79:14  79:16  79:25  80:23  80:24
83:25  85:2  85:22  86:10  93:20  95:4  97:22
98:5  98:7  98:8  99:1  99:4  102:11  103:8
104:8  105:4  106:13  109:20  110:25  111:5
112:8  114:18  114:20  116:9  116:18  116:21
117:10  119:16  119:23  119:25  120:21

**wouldn't**(2) 62:18  66:25
**wouldn't**(1) 12:18
**wrap**(3) 33:9  35:5  35:10
**writing**(2) 87:3  87:3
**written**(6) 12:8  24:12  61:12  100:6  113:1
115:19

**wrongdoers**(1) 77:3
**wrote**(1) 118:19
**www.diazdata.com**(1) 1:44
**yeah**(3) 65:1  66:22  118:11
**year**(10) 23:16  24:9  47:19  67:22  67:22
103:13  103:13  108:12  109:23  110:8

**year-end**(1) 45:7
**years**(8) 23:16  26:3  40:22  45:5  45:20
88:18  108:12  108:15

**yes**(74) 8:19  10:4  10:8  12:6  12:16  12:25
15:1  15:7  16:12  18:1  21:12  24:2  24:10
25:7  25:14  25:16  25:22  26:2  27:6  29:20
30:14  31:9  34:13  35:7  35:14  39:17  40:25
43:4  49:3  51:23  52:2  52:20  53:7  53:10
54:5  54:16  57:4  57:5  57:21  59:13  60:1
62:1  62:11  63:22  68:18  69:6  72:21  74:6
75:3  78:22  85:10  86:25  87:2  89:2  89:3
89:23  90:17  92:17  95:12  97:2  102:25
105:11  105:16  109:5  109:5  109:12  109:24
110:10  112:1  112:14  114:11  115:9  115:11
120:8
**yet**(7) 22:18  48:22  93:8  93:10  93:12  95:16
118:23

**york**(20) 1:34  2:16  2:37  2:46  2:49  3:18
3:32  3:39  4:5  5:34  21:2  29:22  59:15
62:21  69:3  84:10  86:25  115:15  119:13
119:21
**york's**(1) 119:16

**you**(291) 6:14  7:3  7:11  7:15  7:19  8:15
8:18  8:19  9:15  10:1  10:2  10:13  10:16
10:21  11:4  11:14  11:18  11:23  12:17  13:10
16:14  17:7  18:2  18:2  19:12  19:13  19:14
19:21  20:15  21:1  21:8  21:22  22:5  22:23
23:5  25:1  25:24  26:7  26:25  27:2  27:8
27:9  27:23  28:1  29:4  29:13  30:20  31:25
32:1  32:8  32:15  32:18  32:20  33:4  33:21
33:24  34:22  35:2  36:15  36:17  36:25  37:1
37:21  37:22  38:3  38:5  38:10  38:16  39:5
39:12  39:15  39:17  39:18  39:25  39:25  40:1
40:12  40:14  40:15  40:23  40:24  42:16
42:18  42:18  42:23  42:25  43:4  47:1  47:21
47:22  47:22  49:1  49:10  49:11  49:11  49:19
51:7  51:9  51:10  51:19  51:20  51:22  51:23
51:25  53:5  53:6  53:23  53:24  54:18  54:24
54:24  55:1  55:3  55:7  55:12  57:1  57:7
58:1  58:3  60:3  60:5  60:15  61:2  61:21
61:21  62:1  62:1  62:2  62:2  63:13  64:13
64:13  64:19  66:11  66:11  66:15  66:24  67:2
67:5  67:7  68:9  68:12  68:20  70:5  70:10
72:9  73:18  73:22  73:23  73:24  74:1  74:16
76:5  76:21  77:3  77:4  77:5  77:9  77:12
77:23  77:25  78:6  78:8  78:9  78:10  78:19
80:16  80:17  81:7  81:9  81:16  81:18  81:21
82:2  82:25  83:1  83:4  83:14  83:20  84:11
84:13  84:15  84:17  85:6  85:25  85:25  87:1
87:2  87:3  88:6  88:8  88:11  88:13  88:17
89:7  89:10  89:16  90:2  90:3  90:14  90:21
90:22  90:23  90:24  90:25  91:2  91:2  91:3
91:5  91:5  91:10  91:11  91:13  91:16  91:20
91:23  92:3  92:9  92:16  92:18  93:1  94:5
94:10  94:10  94:13  96:21  96:22  96:23
97:23  98:2  100:2  100:11  100:13  101:10
101:11  101:12  101:12  101:14  101:24  104:1
105:9  105:9  105:10  105:22  105:22  105:25
106:2  106:3  106:21  107:2  107:4  107:20
108:20  108:25  109:10  109:10  110:3  110:4
110:25  111:14  111:24  112:9  112:12  112:13
113:6  113:8  113:9  113:21  114:8  115:3
115:12  116:4  117:7  117:9  117:13  117:21
117:23  118:1  118:9  119:5  119:6  119:7
120:6  120:7  120:8  120:19  120:24  120:25
121:3  121:9  121:10

**you'd**(1) 107:3
**you'll**(4) 72:11  95:9  102:5  103:13
**you're**(13) 66:15  67:4  72:2  72:4  72:10
74:15  89:7  89:15  89:24  90:10  90:11  111:8
114:5
**you've**(11) 71:10  73:19  74:15  85:4  88:8
89:3  91:13  94:22  101:17  105:18  119:20

**young**(6) 2:19  5:9  5:46  54:3  107:1  107:4
**your**(155) 7:4  7:7  7:10  7:15  8:22  9:2  9:24
10:5  10:24  11:1  11:20  12:3  12:20  13:2
13:15  13:19  13:22  14:23  15:15  16:3  18:15
20:23  22:13  23:15  24:19  25:6  29:20  30:4
30:7  31:8  33:22  33:25  37:21  40:10  40:24
42:18  42:22  43:4  45:2  46:8  46:11  46:16
47:2  47:5  47:21  49:11  49:23  50:18  51:15
51:25  52:4  52:15  52:16  53:8  53:12  53:23
53:25  55:1  55:3  55:16  56:3  56:14  56:21
57:22  57:24  57:25  59:1  59:14  60:2  60:17
61:24  61:24  62:2  62:19  64:21  66:21  67:8
68:7  68:13  70:8  71:22  73:21  73:23  74:1
76:22  76:25  77:14  78:1  78:1  78:2  78:24
79:20  80:1  81:9  81:14  84:10  85:5  85:25
88:20  89:10  90:21  92:3  92:7  92:15  92:18
92:20  92:22  93:14  94:2  94:4  94:11  94:19
96:5  97:22  97:22  97:23  97:25  98:2  99:3
100:2  101:4  101:9  102:3  102:5  102:10
102:19  102:23  103:9  103:10  103:18  103:23
104:8  104:14  105:1  105:10  105:17  106:22
108:13  108:15  109:6  109:22  109:25  110:13
111:17  114:8  114:10  114:17  117:7  117:23
119:9  120:12  120:18  120:22  120:25  121:10

**yourself**(3) 52:25  77:5  106:3
**yourselves**(3) 8:16  10:14  72:5

| Word | Page:Line |
|---|---|

**you're**(8) 7:20  16:14  18:6  18:7  32:9  33:24
 55:11  55:11

**you've**(4) 36:13  48:9  50:22  60:15
**zelbo**(46) 1:31  12:23  25:8  25:10  25:12
25:16  25:17  25:18  25:23  26:3  27:7  27:14
27:20  27:22  28:20  29:20  30:13  30:15
30:23  31:10  34:1  34:4  34:6  34:9  34:11
35:1  35:5  35:8  35:10  35:13  35:15  35:21
37:21  37:22  43:9  45:13  58:23  60:4  61:1
64:4  64:12  65:19  68:23  81:6  83:2  92:4

**zelbo's**(3) 78:12  80:22  87:6
**zero**(1) 93:9
**ziehl**(1) 4:8
**zigler**(5) 48:1  49:11  49:12  49:22  51:9
**zloto**(1) 6:18
**"failing**(1) 83:11
**"negotiate**(1) 29:5
**"shall**(1) 28:6
**"the**(1) 83:21
 **that**(1) 76:4