3417 Locust Cove Rd.
Gainesville, GA 30504

Clerk of United States Bankruptcy Court
for District of Delaware,
824 Market St, 3rd Floor,
Wilmington, DE 19801

March 1, 2013

<u>Case Number: 09-10138(KG)   Nortel Networks Inc</u>

Dear Sir/Madam,

I am writing to file an Objection to the series of Dockets that have been filed with the Court on the subject of Nortel Retiree Benefits. I have not yet received a detail letter that describes the allocation of the settlement dollars due to me. By contrast, I have seen such a document, sent to a Retiree friend, and the document makes it very clear that a lack of response cancels any offer to the recipient. The document also makes it clear that an Objection needs to be filed with the Court.

It is possible that the settlement allocation document may have been lost in the mail. I recently changed address, and my new address has been acknowledged as recorded by Epiq on January 16, 2013. I received the Dockets that were sent out by Epiq, postmarked January 2, 2013. These were re-directed by USPS to my new address. These were the foundation of the Court Hearing on January 23, 2013. I attended the January 23, 2013 Hearing for another agenda item, and my attendance was duly noted.

Subsequently, I received the Docket which was sent out by Epiq on January 24, 2013, outlining the relatively small number of Claims that would be cancelled as a result of the proposed Retiree settlement. That Docket was sent to my old address and forwarded by USPS. When I eventually received this Docket, it prompted me to re-contact Epiq to establish that my change of address had indeed been recorded on January 16. Epiq is still researching why the Docket was sent to the wrong address.

However, I have also been told that my name does not appear on the list of Retirees that will be receiving the Retiree settlement. I have made further enquiries as to a possible reason for not being on the list. It has been suggested that this is because I opted out of the Nortel Retiree healthcare plan in November 2009. I did indeed elect to exit the Nortel Retiree healthcare plan in November 2009. I, and my wife, had been on the Nortel Retiree healthcare plan for several years after my retirement. When my wife became 65 years old in November 2009, we had some important decisions to make. At

that time, Nortel Networks Inc had been in bankruptcy for several months. It was clear that there was a move by the Debtors to shut down the Nortel Retiree healthcare plan. I knew about this as a member of the Nortel US Retirement Protection Committee, to which I had contributed money to be paid to an attorney to represent us in Court. I also knew of the difficulty of finding a lawyer who was not already engaged by another participant in the Nortel case. And, indeed, the whole question of formally closing the Nortel Retiree healthcare plan came before the Court shortly after the November 2009 date under discussion. It was also very clear that one of the techniques being used by the Debtors was to raise the monthly premiums to be a member of the Nortel Retiree healthcare program. However, probably the most important factor in the decision making process was the problem of a possible "pre-existing health condition" – or "pre-condition". The rules for entering Medicare are very clear. If you don't sign up on your 65th birthday, you run all sorts of risks of being prevented from joining and/or paying substantial penalties. It is also well known that insurance companies make reimbursement very difficult for treatment of an "existing condition". Under these circumstances, it appeared to be the right decision to sign up my wife into Medicare and to an affiliated Medicare Supplemental program. It also appeared logical to move myself into the same Supplemental program to gain the benefits of husband and wife enrollment. It is also important to note that Medicare Supplemental insurance changes are only available in December of each year, and the adverse consequences of being stranded by an upcoming Nortel Debtors termination action was too high. However, it appears that such an action may have endangered my Retiree cash distribution as determined by the Settlement – and this does not appear to be logical.

In summary, I would like to argue that after being on the Nortel retiree healthcare plan for several years after retirement, and through most of 2009 – almost a year after bankruptcy was filed -- at a time when information was circulating that the healthcare program was about to be discontinued as a result bankruptcy, and the monthly rate had increased – that I should not be penalized for taking the option to move to a more certain program. It appears to me to be wrong to have been expected to stay on the program, and then in a few weeks, finding that the Debtors had discontinued the program, and we would then have to search for a mid-year entry into a Medicare program. In addition, by that slightly later time I, or my wife, might have been diagnosed with a lasting medical condition, for which it would then be difficult to find insurance coverage. That second alternative would not, in retrospect, have appeared to be a wise decision, and I should not be penalized in the Nortel settlement for having made the decision.

*[handwritten: March 1, 2013]*
*[handwritten: page 2 of 3]*

In addition, I would like to ensure that I receive a settlement distribution for life insurance and long term care. There can be no issue about my being qualified for these benefits. When I retired, I was more than 60 years old.

I therefore ask that the Court instructs the people who are managing the Retiree Settlement, to include my claim for an allocation for the loss of healthcare benefits, life insurance and long term care — and recognize that I was paying into the program on the date of bankruptcy, and only took action when the Debtors subsequently stated that they would discontinue the program.

Yours truly,

*Robert Horne*

Robert Horne

cc:

Cleary Gottlieb Steen & Hamilton LLP
Attn: Lisa M Schweitzer, Esq
One Liberty Plaza, New York, NY 10006
Fax: (212) 225-3999

Morris, Nichols, Arsht & Tunnell LLP
Attn: Derek Abbott, Esq
1201 N Market St. Wilmington, DE 19801
Fax: (302) 658-3989

Togut, Segal & Segal
Attn: Albert Togut, Esq & Neil Berger, Esq
One Penn Plaza, Suite 3335, NY NY 10119
Fax: (212) 967-4258

Office of United States Trustee
Attn: Mark Kenney, Esq
844 King St, Suite 2207, LB 35, Wilmington, DE 19801
Fax: (302) 573-6497

Akin Gump Strauss Hauer & Feld LLP
Attn: Lisa Beckerman, Esq
One Bryant Park, New York, NY 10036
Fax: (212) 872-1002

Milbank, Tweed, Hadley & McCloy LLC
Attn: Thomas J. Matz, Esq
One Chase Manhattan Plaza, NY NY 10005
Fax: (212) 822-5885

March 1, 2013
page 3 of 3