*(handwritten)* NO 02,468 Super Court
*(handwritten)* Black of Decker Dis Plan
*(handwritten)* v Kendall Nard



**GTP 9025215**

## NEW YORK, NEW YORK   A CAPITAL STOCK COMPANY   FOUNDED 1853
### 145 WELLINGTON STREET WEST, TORONTO, ONTARIO M5J 1H8

SECTION I       DECLARATIONS

The American Home Assurance Company whose Canadian head office is located at Toronto Ontario . Canada (the "Company") hereby agrees in consideration of the mutual promises hereinafter set forth with Northern Telecom Limited (the "Policyholder"), to insure all Insured Persons as specified in Section III of this Policy and to pay, as directed by the Policyholder, to the persons entitled thereto, in accordance with the terms and conditions of this Policy, the sum insured by this Policy.

1.     Name of Policyholder:       Northern Telecom Limited

       Address of Principal Executive Offices:       8200 Dixie Rd.
                                          Suite 100
                                          Brampton, Ontario
                                          Canada L6T 5P6

2.     Policy Effective Date:        12:01 A.M.   December 31, 1997

       Policy Expiration Date:       12:01 A.M.   December 31, 2000

3.     Premium:

       The Premium for this Policy shall be determined as follows:
       Unit of Exposure: (each Insured Person, travel expense, payroll or other):

| Classification | Rate Per Unit of Exposure | Estimated Units of Exposure | Annual Premium |
|---|---|---|---|
| All Classifications Combined | | | Cdn. $109,050.12 U.S. $ 76,246.77 |

The Annual Premium shall be payable as a single premium on each anniversary date of the Policy following the execution of this Policy.

*(handwritten)* Disability Payments are not taxable

Sara Adcox 919-481-0167

4.    Difference in Conditions

In consideration of the premium charged, it is understood and agreed that this Policy covers benefits on a difference in conditions basis as follows:

(a)  In those countries where similar local policies are implemented, coverage under this Policy is to apply only when the perils and/or definitions and/or conditions set forth herein are broader in meaning or scope than those of the specific primary policies.  Any benefits therefore which become payable under this Policy will be reduced by any benefit which is due and payable under the similar local policy (including but not limited to The Group Personal Accident and Travel Policy # 26E00048/1-005 issued to Nortel Plc and/or Subsidiary Companies).

It is further agreed that it is a condition of this Policy that in consideration of the rates at which this coverage is written, all such local policies in force during the term of this Policy will be maintained in full force and effect during the term of this Policy.

(b)  In those countries or jurisdictions where regulatory requirements for such supplementary or additional insurance as is provided by this Policy are broader in meaning or scope in respect to the conditions set forth herein, such conditions are deemed to be provided under this Policy.

(c)  All such coverage as is provided by this Policy will be administered on a locally admitted basis where such provision is required for regulatory purposes.

2

## SECTION II    DEFINITIONS

**Annual Earnings (for Classification 5, 8 and 9)** - means the aggregate of all retainer, attendance or other fees earned or to be earned by a member of a board of directors for all regularly scheduled meetings of the board of directors and committees of the board of directors in that year, assuming attendance at all meetings not yet held, regardless of whether such fees are paid to, retained by or waived by any such member.

**Basic Annual Salary** - means an employee's basic annual wage and excludes commissions, bonuses, overtime, and other forms of compensation other than wages, as determined by Northern Telecom.

**Bona Fide Vacation** - means an earned benefit to which an Insured Person becomes entitled to by virtue of his or her work or service with Northern Telecom and excludes any leave of absence due to accident or illness, educational or similar types of absences authorized by Northern Telecom and excludes any absence due to travel as authorized by Northern Telecom pursuant to its Foreign Service Plan.

**Certificate of Airworthiness** - means the Certificate of Airworthiness issued by Transport Canada or its foreign equivalent which is issued by a governmental authority having jurisdiction over civil aviation in the country of its registry.

**Consultant (Classification 4)** - means a person who is retained by an oral or written agreement by Northern Telecom and is traveling with or on behalf of and with the express consent of Northern Telecom for purposes of furthering the business of Northern Telecom.

**Director (Classification 5)** - means any non-employee member of a board of directors of any subsidiary or subsidiaries of Northern Telecom and excludes any member of Classification 8.

**Emergency Crew Member and/or Volunteer Firefighter (Classification 3)** means a member of Northern Telecom's emergency crew and/or volunteer fire crew officially designated by Northern Telecom to render such services.

**Employee (Classification 1)** - means all eligible regular full time, part time or term employees of Northern Telecom and contractors who are directly compensated by Northern Telecom and excludes those members of any other Classification as stated in Section III of this Policy.

**Executive (Classification 6)** - means any person holding a senior management position within the organization of Northern Telecom, including those persons of either Band 10, 11, 12, 13, 14, or 15, as described and administered by the Executive Compensation department of the Policyholder.

**Guest (Classification 2)** - means a traveling companion of a member of Classification 1 or Classification 6 who accompanies said member on a business trip and whose accompaniment has been pre-approved by Northern Telecom in accordance with the rules of Northern Telecom.

**Insured Person** - means any member of a Classification of person as identified in Section III of this Policy.

**Injury** - means bodily injury caused by or resulting from an accident occurring while the Policy is in force and resulting directly and independently of all other causes of Loss, provided such bodily injury occurs to an Insured Person under the circumstances and in the manner described in Section IV of this Policy and which results in a claim.

**Loss or Loss of Use** - shall have the meaning ascribed thereto in Section III of this Policy.

3

**Northern Telecom** - means Northern Telecom Limited and any subsidiary that now exists or may hereafter be constituted in which Northern Telecom Limited holds more than 50% of the voting securities, or as may otherwise be designated by Northern Telecom Limited for participation in the Policy. Where any reference in the Policy is made to any action to be taken, consent, approval or opinion to be given, direction or decision to be exercised or made, it shall be read as Northern Telecom Limited acting through its board of directors or any persons authorized by Northern Telecom Limited for purposes of the Policy.

**NTL Director (Classification 8)** – means any non-employee member of the board of directors of Northern Telecom Limited.

**Passenger (Classification 10)** - means any person traveling with an Insured Person who is a member of Classification 6, or Classification 8, in a Specified Company Vehicle assigned to such Insured Person.

**Permanent Total Disability** - means that as a result of accidental bodily Injury, the Insured Person is within 180 days from the date of the accident permanently and totally prevented from engaging in his or her own occupation or any other employment for compensation or profit for which the Insured Person is qualified to perform by reason of education, training or experience and provided such disability has continued for a period of 12 consecutive months and is total, continuous and permanent at the end of this period.

**Policyholder** - means Northern Telecom Limited.

**Principal Sum** - shall have the meaning ascribed thereto in Section III of this Policy.

**Specified Company Vehicle** - means a motor vehicle or substitute vehicle which is assigned by Northern Telecom to a person who is a member of Classification 6 or Classification 8.

**Spouse (Classification 2, 7 or 9)** - wherever used in this Policy means the person of the opposite sex or same sex who is designated as the Spouse of the member as determined in accordance with local business practice of Northern Telecom for the purposes of employee benefits in the home country of the member and provided that only one individual will be recognized as the Spouse for purposes of this Policy.

**Temporary Total Disability** - means that as a result of accidental bodily Injury, the Insured Person is within 180 days from the date of the accident temporarily and totally prevented from engaging in his or her own occupation.

**U.S. Risks** - means those risks of claim which are associated with those Insured Persons employed by Northern Telecom Inc. and/or one of its subsidiaries as may be designated to participate in the Policy, and shall include all members of Classification 8 and 9.

**"while on the business of Northern Telecom"** - means while on assignment, including overseas assignment regardless of duration, by or at the direction of Northern Telecom for the purpose of furthering the business of Northern Telecom and in general, as required by or authorized by Northern Telecom, provided that Injury sustained during the course of everyday travel to and from work (except while on assignment), Bona Fide Vacations and a leave of absence granted in accordance with the rules of Northern Telecom shall not be included in this definition. Any event sponsored by Northern Telecom which requires travel to or from the event shall be considered business travel for the purpose of this Policy.

Truck drivers who are Employees of Northern Telecom are covered only when they are assigned to trips outside of their normal duties or requirements.

4

## SECTION III   SCHEDULE OF COVERAGE

1.   INSURED PERSONS

The following persons shall be eligible for insurance hereunder:

| CLASSIFICATION | DESCRIPTION | PRINCIPAL SUM | HAZARD APPLICABLE |
|---|---|---|---|
| 1 | Employees | 5 X Basic Annual Salary | H-12 (24 hour accident protection while on a trip - business only) |
| 2 | Spouse and Guest | 1 X Employee's Basic Annual Salary | H - 12 (24 hour accident protection while on a trip - business only) |
| 3 | Emergency Crew Member and/or Volunteer Firefighter | 2 X Basic Annual Salary | H - Emergency Crew Member and/or Volunteer Firefighter |
| 4 | Consultant | $100,000.00 | H - 12 (24 hour accident protection while on a trip - business only) |
| 5 | Director | 2 X Annual Earnings | H - 12 (24 hour accident protection while on a trip - business only) |
| 6 | Executive | 5 X Basic Annual Salary | H - 20 (24 hour accident protection business and pleasure) |
| 7 | Executive's Spouse | 1 X Executive's Basic Annual Salary | H - 20 (24 hour accident protection business and pleasure) |
| 8 | NTL Director | 2 X Annual Earnings (US currency) | H -20 (24 hour accident protection business and pleasure) |
| 9 | NTL Director's Spouse | 1 X NTL Director's Annual Earnings (US currency) | H -20 (24 hour accident protection business and pleasure) |
| 10 | Passenger | $100,000.00 | H - Passenger (Passenger in Specified Company Vehicle assigned to Executive or NTL Director) |

5

2.    ACCIDENTAL DEATH AND DISMEMBERMENT INDEMNITY

The Company shall pay an indemnity determined from the Table of Losses ("Table") if an Insured Person sustains a Loss stated therein resulting from Injury, provided that:

(i)    the indemnity payable for any such Loss shall be the amount stated opposite such Loss in the Table, and the Principal Sum stated therein shall be the amount stated as Principal Sum in Item 1 of Section III, Schedule of Coverage, as applicable to such Insured Person and this coverage; and

(ii)    if more than one Loss stated in the Table is sustained as the result of one accident, only one of the amounts so stated in the Table, the largest shall be payable; and

(iii)    no Insured Person shall be entitled to claim under more than one Classification.

3.    TABLE OF LOSSES

| Type of Loss | Indemnity Payable |
|---|---|
| Loss of Life | The Principal Sum |
| Loss of Both Hands | The Principal Sum |
| Loss of Both Feet | The Principal Sum |
| Loss of Entire Sight of Both Eyes | The Principal Sum |
| Loss of One Hand and One Foot | The Principal Sum |
| Loss of One Hand and the Entire Sight of One Eye | The Principal Sum |
| Loss of One Foot and the Entire Sight of One Eye | The Principal Sum |
| Loss of One Arm | Three-Quarters of The Principal Sum |
| Loss of One Leg | Three-Quarters of The Principal Sum |
| Loss of One Hand | Two-Thirds of The Principal Sum |
| Loss of One Foot | Two-Thirds of The Principal Sum |
| Loss of The Entire Sight of One Eye | Two-Thirds of The Principal Sum |
| Loss of Thumb and Index Finger of the Same Hand | One-Third of The Principal Sum |
| Loss of Speech and Hearing | The Principal Sum |
| Loss of Speech or Hearing | Two-Thirds of The Principal Sum |
| Loss of Hearing in One Ear | One-Sixth of The Principal Sum |
| Quadriplegia (total paralysis of both upper and lower limbs) | The Principal Sum |
| Paraplegia (total paralysis of both lower limbs) | The Principal Sum |
| Hemiplegia (total paralysis of upper and lower limbs of one side of the body) | The Principal Sum |
| Loss of Use of Both Arms or Both Hands | The Principal Sum |
| Loss of Use of One Hand or One Foot | Two-Thirds of The Principal Sum |
| Loss of Use of One Arm or One Leg | Three-Quarters of The Principal Sum |
| Loss of Four Fingers of One Hand | One-Third of The Principal Sum |
| Loss of All Toes of One Foot | One Eighth of The Principal Sum |

"Loss" as above used with reference to quadriplegia, paraplegia, and hemiplegia means the complete and irreversible paralysis of such limbs; as above used with reference to hand or foot means complete severance through or above the wrist or ankle joint, but below the elbow or knee joint; as used with reference to arm or leg means complete severance through or above the elbow or knee joint; as used with reference to thumb and index finger means complete severance through or above the first phalange; as used with reference to fingers means complete severance through

6

or above the first phalange of all four fingers of one hand and as used with reference to toes means, complete severance of both phalanges of all the toes of one foot.

"Loss" as above used with reference to speech means complete and irrecoverable loss of the ability to utter intelligible sounds; as used with reference to hearing means complete and irrecoverable loss of hearing in both ears and as used with reference to eye means the irrecoverable loss of the entire sight thereof.

"Loss" as used with reference to "Loss of Use" means the total and irrecoverable loss of use provided the Loss is continuous for 12 consecutive months and such Loss of Use is determined to be permanent.

All claims submitted under this Policy for Loss of Use must be verified in accordance with the following procedure unless such procedure is waived by the Company at its sole discretion:

   (a) by agreement between a licensed practicing physician appointed by Northern Telecom and a licensed practicing physician appointed by the Company, or

   (b) in the event that the two physicians so appointed by the parties cannot arrive at an agreement, a third licensed practicing physician shall be selected by the first two physicians and the majority decision made by all three physicians shall be binding on Northern Telecom and the Company.

4.    TEMPORARY TOTAL DISABILITY *Excluded*

The indemnity payable for any Loss under Temporary Total Disability shall be payable in equal monthly installments for a period not to exceed 6 consecutive months or the period of Temporary Total Disability, whichever is the lesser, commencing 180 days from the beginning of such disability and shall be limited to those Insured Persons in Classification 6, 7, 8 and 9 contained herein in accordance with the following table:

| Classification | Benefit Payable |
|---|---|
| 6 | $7,500.00 per month |
| 7 | $2,500.00 per month |
| 8 | $5,000.00 per month |
| 9 | $1,500.00 per month |

All indemnities payable under Temporary Total Disability shall cease in the event of the death of the Insured Person. If such Loss occurs within 365 days from the date of the accident causing or resulting in such Loss, the Principal Sum shall be paid less whatever amounts have been paid under Temporary Total Disability.

All claims submitted under this Policy for Temporary Total Disability must be verified in accordance with the following procedure unless such procedure is waived by the Company at its sole discretion:

   (a) by agreement between a licensed practicing physician appointed by Northern Telecom and a licensed practicing physician appointed by the Company, or

   (b) in the event that the two physicians so appointed by the parties cannot arrive at an agreement, a third licensed practicing physician shall be selected by the first two physicians and the

7

Tuesday, March 18, 2003 12:05 PM Sara Adcox 919-481-0167 p.09

majority decision made by all three physicians shall be binding on Northern Telecom and the Company.

5.    **PERMANENT TOTAL DISABILITY**

The Company will pay the Principal Sum, less any aggregate amount paid as Temporary Total Disability, or any other amount payable under this Policy as a result of the same accident, in the event the Insured Person becomes permanently and totally disabled as defined herein.

All claims submitted under this Policy for Permanent Total Disability must be verified in accordance with the following procedure unless such procedure is waived by the Company at its sole discretion:

(a)  by agreement between a licensed practicing physician appointed by Northern Telecom and a licensed practicing physician appointed by the Company, or

(b)  in the event that the two physicians so appointed by the parties cannot arrive at an agreement, a third licensed practicing physician shall be selected by the first two physicians and the majority decision made by all three physicians shall be binding on Northern Telecom and the Company.

6.    **EXPOSURE**

If by reason of an accident covered by this Policy an Insured Person is unavoidably exposed to the elements and as a result of such exposure suffers a Loss for which indemnity is otherwise payable hereunder, such Loss will be covered under the terms of the Policy.

7.    **DISAPPEARANCE**

If the body of an Insured Person has not been found within one year of disappearance, forced landing, stranding, sinking or wrecking of a conveyance in which such person was an occupant, then it shall be deemed subject to all other terms and provisions of the Policy that such Insured Person shall have suffered Loss of Life within the meaning of the Policy.

8.    **AGGREGATE LIMIT OF INDEMNITY**

The Aggregate Limit of Indemnity shall be the total limit of the Company's liability for all indemnities payable under Accidental Death and Dismemberment Indemnity with respect to all Classifications of Insured Persons arising out of Injury sustained by two or more Insured Persons as the result of any one accident.

If the total of such indemnity exceeds said Aggregate Limit of Indemnity, the Company shall not be liable to any one such Insured Person for a greater proportion of such Insured Person's indemnity afforded by the Accidental Death and Dismemberment Indemnity than said Aggregate Limit of Indemnity bears to the total indemnities afforded by this Accidental Death and Dismemberment Indemnity to all such Insured Persons.

Aggregate Limit of Indemnity Per Accident:     $25,000,000.00  Canadian currency for any one accident involving two or more Insured Persons.

8

Tuesday, March 18, 2003 12:05 PM     Sara Adcox 919-481-0167                                      p.10

9.     **REPATRIATION BENEFIT**

When injuries covered by this Policy result in Loss of Life of an Insured Person outside 200 kilometers from their permanent place of residence and within 365 days from the date of the accident, the Company, in addition to the Principal Sum paid, shall pay the actual expenses incurred for preparing the deceased for burial and shipment of the body to the place of residence of the deceased but not to exceed the amount of $10,000.00.

10.     **REHABILITATION BENEFIT**

When an Injury results in a payment being made by the Company under the Accidental Death and Dismemberment Indemnity section of this Policy, the Company, in addition to the Principal Sum paid, shall pay the reasonable and necessary expenses actually incurred up to a limit of $10,000.00 for special training of the Insured Person provided:

(a) such training is required because of such Injury and in order for the Insured Person to be qualified to engage in an occupation in which he or she would not have been engaged except for such Injury, and

(b) expenses are incurred within two years from the date of the accident, and

(c) no payment shall be made for ordinary living, traveling or clothing expenses.

11.     **FAMILY TRANSPORTATION**

When an Injury covered by the Policy results in an Insured Person being confined to a hospital, outside 200 kilometers from his or her permanent place of residence, within 365 days from the date of the accident and the attending physician recommends the personal attendance of a member of the immediate family, the Company, in addition to the Principal Sum payable, shall pay the actual expenses incurred by a member of the immediate family for one return transportation trip by the most direct route provided by a licensed common carrier to the location of the confined Insured Person, not to exceed the amount of $10,000.00.

The term "member of the immediate family" means a Spouse, parent, grandparent, brother, sister, or a child of legal age according to the laws of an Insured Person's country or place of residency of the Insured Person.

12.     **HOME ALTERATION AND VEHICLE MODIFICATION**

If an Insured Person receives a payment under Section III - Schedule of Coverage as described herein and is subsequently required (due to the cause for which payment under Section III - Schedule of Coverage was made) to use a wheelchair, then this benefit will pay, upon presentation of proof of payment:

(a) The one-time cost of alterations to the Insured Person's residence to make it wheelchair accessible and habitable; and

(b) The one-time cost of modifications necessary to a motor vehicle owned by the Insured Person, to make the vehicle accessible or driveable for the Insured Person.

9

Benefit payments herein will not be paid unless:

i)   Home alterations are made on behalf of the Insured Person and carried out by an experienced individual in such alterations and recommended by a recognized organization, providing support and assistance to wheelchair users.

ii)  Vehicle modifications are made on behalf of the Insured Person and carried out by an experienced individual in such matters and modifications are approved by the recognized Governmental vehicle licensing authorities.

The maximum in addition to the Principal Sum payable under both Items (a) and (b) combined will not exceed $10,000.00.

13.   SEAT BELT RIDER

Benefits under the Policy shall be increased by 10% if the Insured Person's Injury resulted from or was caused by an accident while he or she was a passenger or driver of a private passenger type automobile and his or her seat belt was properly fastened.  Verification of actual use of the seat belt must be part of the official report of accident or certified by the investigating officer.

14.   WAR RISK INSURANCE

An Insured Person will be provided coverage as described in Section IV of this Policy for any Injury sustained by such Insured Person "while on the business of Northern Telecom", which is caused by or resulting from declared or undeclared war, riot, terrorist act, insurrection or any act thereof (the "War Risk"), which may occur anywhere in the world:

(1)   Such insurance as is afforded by this clause shall be subject to the following conditions:

(a)  The premium for this insurance and the benefits and the territorial area of coverage provided thereby (or any one or more of them) may be revised by agreement between the Company and the Policyholder at any time or from time to time as may be necessary to reflect conditions which in the opinion of the Company or the Policyholder constitute a change in the War Risk exposure.

(b)  Notwithstanding any statement elsewhere in the Policy to the contrary, either the Policyholder or the Company may terminate this insurance clause upon written notice to the other, and

(i)   termination by the Policyholder shall become effective upon receipt by the Company of written notice, or on such later date as may be specified in such notice;

(ii)  termination by the Company shall become effective upon the date specified by the Company in such written notice mailed or delivered to the Policyholder at the principal executive offices of the Policyholder, but in no event shall it be effective in less than 90 days after such notice is mailed or delivered; and

(iii) in the event of such termination, the earned premium shall be computed, and the Company will return promptly the unearned portion of any premium paid. Premium adjustment may be made either at the time termination is effective or

10

as soon as practicable after termination becomes effective, but payment or tender of unearned premium is not a condition of termination.

(c) Any revision or termination of such War Risk insurance shall be without prejudice to any claim for Loss occurring prior to the effective date of such revision or termination.

(2)    Coverage provided by this clause shall be subject to the payment in advance of a minimum premium of $1,000.00 in Canadian currency.

(3)    The Policyholder and the Company agree to review exposure to, or in War Risk areas on a periodic basis, but in no event less than annually. Such review shall include the following:

1.    Identification of destinations classified as War Risk.
2.    Effective date and termination date of such exposure.
3.    Identification of Insured Persons who may be exposed to War Risk areas.
4.    Amount of Principal Sum of the Insured Persons identified above.

Earned premium, if any, for coverage provided under War Risk as defined above may be subject to an annual adjustment based on the mutual agreement between the Policyholder and the Company upon completion, by the Company and the Policyholder, of such annual review.

## 15.    BENEFICIARY DESIGNATION

In the event of an accidental death, benefits shall be payable to the beneficiary as designated in writing by the Insured Person under Northern Telecom's local Basic Group Life Insurance program, if available in the Insured Person's home country of employment. If the Insured Person fails to designate a beneficiary, or the local laws in the jurisdiction where Northern Telecom principally resides does not legally permit such designation, then the benefits under this Policy shall be payable according to the local laws with respect to such matters in the home country of the Insured Person.

11

SECTION IV  SCOPE OF COVERAGE

(1) Hazard H-12  24-Hour Accident Protection While On a Trip - Business Only

The Hazards described in this Hazard H-12 apply to those Insured Persons who are members of:

    (i)    Employee (Classification 1); or

    (ii)    Spouse (Classification 2), provided however that such coverage is only provided to such Spouse where he or she is accompanying a member of Classification 1 on a business trip and whose accompaniment has been pre-approved by Northern Telecom in accordance with the rules of Northern Telecom in such matters; or

    (iii)    Guest (Classification 2), provided however that such coverage is only provided to such Guest where he or she is accompanying a member of Classification 1 or Classification 6 on a business trip and whose accompaniment has been pre-approved by Northern Telecom in accordance with the rules of Northern Telecom in such matters; or

    (iv)    Director (Classification 5), provided however that such coverage is only provided to such Director "while on the business of Northern Telecom" and sustained while traveling to, during the course of, or while returning from:

        (a)  a previously scheduled meeting of the board of directors to which such Director is a member; or
        (b)  a trip taken at the specific request and at the expense of Northern Telecom for furthering the business of Northern Telecom; or
        (c)  any trip for which the Director receives direct compensation from Northern Telecom for services performed.

    (v)    Consultant (Classification 4), provided however that coverage is only provided to such Consultant where and when such Consultant is traveling at the invitation and expense of Northern Telecom or is retained on contract by Northern Telecom in a technical advisory capacity and is required to travel on behalf of Northern Telecom for furthering the business of Northern Telecom.

Description of Hazard

Such insurance as is afforded to an Insured Person to which this Hazard H - 12 applies, includes any Injury to which an Insured Person may be exposed, as defined in Section III, and sustained by an Insured Person anywhere in the world "while on the business of Northern Telecom" including incidental personal travel connected therewith provided such incidental travel does not exceed three days.



Such insurance includes such Injury sustained while the Insured Person is riding as a passenger (but not as a pilot, operator or member of the crew) in or on, boarding or alighting from, any aircraft (including but not limited to any Northern Telecom owned, leased, chartered or operated aircraft) having a current and valid Certificate of Airworthiness, or from any transport type aircraft operated by the transport command of the Canadian Armed Forces Air Transport Command or by a similar transport service of any country.

Such coverage shall be deemed to have commenced when the Insured Person leaves his or her residence or place of regular employment, whichever occurs last, and shall continue until such time as he or she returns to his or her residence or place of regular employment, whichever occurs first.

(2)     Hazard H-20     24-Hour Accident Protection Business and Pleasure

The Hazards described in this Hazard H-20 apply only to those Insured Persons who are members of:

|       |                                           |
|-------|-------------------------------------------|
| (i)   | Executives (Classification 6); or         |
| (ii)  | Executive's Spouse (Classification 7); or |
| (iii) | NTL Director (Classification 8); or       |
| (iv)  | NTL Director's Spouse (Classification 9). |

Description of Hazards

Such insurance as is afforded to an Insured Person to which this Hazard H-20 applies, shall apply only to Injury, as defined in Section III, sustained by such Insured Person anywhere in the world.

Such insurance includes such Injury sustained while the Insured Person is riding as a passenger (but not as a pilot, operator or member of the crew) in or on, boarding or alighting from, any aircraft (including but not limited to any Northern Telecom owned, leased, chartered or operated aircraft) having a current and valid Certificate of Airworthiness, or from any transport type aircraft operated by the transport command of the Canadian Armed Forces Air Transport Command or by a similar transport service of any country.

(3)     Hazard H-Emergency Crew Member and/or Volunteer Firefighter (Classification 3)

The Hazards described in this Hazard H-Emergency Crew Member and/or Volunteer Firefighter apply only to those Insured Persons who are members within Classification 3 to which this Hazard applies as stated in Section III.

Description of Hazards

Such insurance as is afforded to an Insured Person to which this Hazard H-Emergency Crew Member and/or Volunteer Firefighter applies, shall apply only to Injury, as defined in Section III, sustained by such Insured Person while on the premises of Northern Telecom and:

a)   acting as an Emergency Crew Member and/or Volunteer Firefighter of Northern Telecom at any emergency, including traveling directly to and from fires, fire drills, parades, or at tests or trials of any fire fighting equipment or apparatus; or

b)   participating in or attending as an Emergency Crew Member and/or Volunteer Firefighter, any associated training activity of Northern Telecom which is approved and supervised by its officials.

(4)     Hazard H-Passenger in Specified Company Vehicle (Classification 10)

The Hazards described in this Hazard H-Passenger in Specified Company Vehicle apply only to those Insured Persons who are members within Classification 10 as stated in Section III.

Description of Hazards

Such insurance as is afforded to an Insured Person to which this Hazard H-Passenger in Specified Company Vehicle applies, shall apply only to Injury, as defined in Section III, sustained by such Insured Person anywhere in the world while riding as a Passenger only in a Specified Company Vehicle.

13

## SECTION V    EXCLUSIONS

The policy does not cover any Loss, fatal or non-fatal, caused by or resulting from:

(i)   suicide or any attempt thereat by the Insured Person while sane or self destruction or any attempt thereat by the Insured Person while insane;

(ii)  Injury sustained in consequence of riding as a passenger or otherwise in any vehicle or device for aerial navigation, except as provided in Section IV, Scope of Coverage;

(iii) active full time service in the armed forces of any country;

(iv)  flying in a Northern Telecom owned, leased, chartered or operated aircraft while it is carrying passengers for hire;

(v)   flying in any aircraft while it is being used for or in connection with acrobatic or stunt flying, racing or endurance tests;

(vi)  flying in any aircraft while it is being used for or in connection with fire fighting, exploration, any form of hunting, bird or fowl herding, banner towing or any test or experimental purpose, unless previously consented to in writing by the Company;

(vii) Employees of NETAS - Northern Electric Telekomunikasyon A.S.

## SECTION VI                        STATUTORY CONDITIONS

1. **THE CONTRACT**

   This Policy, including the endorsements, insertions, or riders, if any, and the application for the contract if attached to the Policy, constitutes the entire contract and no agent has the authority to change the contract or waive any of its provisions.

2. **WAIVER**

   The Company shall be deemed not to have waived any condition of this contract, either in whole or in part, unless the waiver is clearly expressed in writing signed by the Company.

3. **TERMINATION BY POLICYHOLDER**

   The Policyholder may terminate the contract at any time by giving written notice of termination to the Company by registered mail to its head office or chief agency in the province or by delivery thereof to an authorized agent of the Company in the province and the Company shall, upon surrender of this Policy, refund the amount of premium paid in excess of the short rate premium for the expired time according to the table in use by the Company at the time of termination.

4. **TERMINATION BY COMPANY**

   a) The Company may terminate the contract at anytime in the event of non payment of premium by the Policyholder, misrepresentation by the Policyholder or fraud on the part of the Policyholder by giving written notice of termination to the Policyholder at its principal executive offices and by refunding concurrently with the giving of notice the amount of premium paid in excess of the pro rata premium for the expired time.

   b) The notice of termination may be delivered to the Policyholder or it may be sent by registered mail to the principal executive offices of the Policyholder on the records of the Company.

   c) Where the notice of termination is delivered to the Policyholder, 120 days notice of termination shall be given; where it is mailed to the Policyholder, 120 days notice of termination shall be given and the 120 days shall begin on the day following the arrival of the notice at the post office to which it is addressed.

5. **NOTICE AND PROOF OF CLAIM**

   Northern Telecom or its agent, or a beneficiary entitled to make a claim or his or her agent, shall

   a) give written notice of claim to the Company

   (i) by delivery thereof, or by sending it by registered mail to the head office or chief agency of the Company, or

   (ii) by delivery thereof to an authorized agent of the Company,

   not later than 90 days from the date of the accident or the beginning of the disability due to sickness;

   b) within 180 days from the date of the accident or the beginning of the disability due to sickness of which the claim is made, furnish to the Company such proof of claim as is reasonably possible in

15

the circumstances of the happening of the accident or sickness and the Loss occasioned thereby; and

c)  if so required by the Company, furnish a certificate as to the cause and nature of the accident or sickness for which the claim is made and as to the duration of the disability caused thereby, from a medical practitioner legally qualified to practice.

6.  **FAILURE TO GIVE NOTICE OR PROOF**

Failure to give notice of claim or furnish proof of claim within the time prescribed in this statutory condition will not invalidate the claim if the notice or proof is given or furnished as soon as reasonably possible and in no event later than 18 months from the date of the accident or the beginning of the disability due to sickness and if it is shown that it was not reasonably possible to give notice or furnish proof within the time as prescribed.

7.  **COMPANY TO FURNISH FORMS FOR PROOF OF CLAIM**

The Company shall furnish forms for proof of claim within 15 days after receiving notice of claim but where the claimant has not received the forms within that time he or she may submit his or her proof of claim in the form of a written statement of the happening and character of the accident or sickness giving rise to the claim and of the extent of the Loss.

8.  **RIGHT OF EXAMINATION**

The Company has the right, and the claimant shall afford to the Company an opportunity, to examine the Insured Person when and as often as it may reasonably require while the claim hereunder is pending, and also in the case of the death of the Insured Person to make an autopsy subject to any law of the jurisdiction where such autopsies would be required.

9.  **WHEN MONEYS PAYABLE OTHER THAN FOR LOSS OF TIME**

All moneys payable under this contract other than benefits for Loss of time shall be paid by the Company within 60 days after it has received proof of claim.

10.  **WHEN LOSS OF TIME BENEFITS PAYABLE**

The initial benefits for Loss of time shall be paid by the Company within 30 days after it has received proof of claim, and payments shall be made thereafter within each succeeding 60 day period while the Company remains liable for the payments if Northern Telecom, whenever required to do so, furnishes prior to payments proof of continuing disability.

11.  **LIMITATION OF ACTIONS**

An action or proceeding against the Company for the recovery of a claim under this contract shall not be commenced more than 1 year after the date on which the insurance money becomes payable or would have become payable if it had been a valid claim.

12.  **PAYMENT OF CLAIMS**

Indemnity for Loss of Life will be payable in accordance with the beneficiary designation and the provision respecting such payment, which may be prescribed herein and effective at the time of payment.  If no such designation or provision is then effective, such indemnity shall be payable to the estate of the Insured Person or as otherwise required by applicable legislation.

16

Any other accrued indemnities unpaid at the Insured Person's death may, at the option of the Company, be paid either to such beneficiary or to such estate, or in accordance with applicable legislation. All other indemnities will be payable to the Insured Person.

17

## SECTION VII   ADDITIONAL PROVISIONS

1.  POLICY PERIOD: The Policy shall become effective upon the Policy Effective Date shown in Item 2 of Section 1, at 12:01 A.M. standard time at the address of the Policyholder stated in Item 1 thereof and shall continue in force until the Policy Expiration Date stated in Item 2 of Section 1, Declarations.

2.  PREMIUM: Premiums due for the Policy shall be remitted to the Company.  The premium bases and rates are as stated in Item 3 of Section 1, Declarations.

    a)  ANNUAL PREMIUM NOT SUBJECT TO AUDIT:  If a premium is set opposite Annual Premium in Item 3 of Section 1, such premium shall be the total earned premium for all such insurance as is afforded by the Policy for the first Policy year and shall not be subject to any adjustment.

    b)  CHANGE OF PREMIUM RATES:  Subject to the provisions of Additional Provision 7 of this section, on the first renewal of the Policy and on each renewal thereafter, the Company may, by notifying the Policyholder, change the rate at which further premiums, including the one then due, shall be computed.

    c)  GRACE PERIOD:  A grace period of 90 days will be granted for the payment of each premium falling due after the first premium, during which grace period the Policy will continue in force, but the Policyholder shall be liable to the Company for the payment of the premium accruing for the period the Policy continues in force.

3.  CURRENCY:  Unless otherwise stated in the Policy, the Principal Sum as specified herein will be paid in the local currency of the Insured Person for whom the claim is made where permitted to do so.  If legally prohibited from paying such claim in local currency, the claim will be paid in equivalent Canadian dollars by using the rate of exchange in effect at the time of the Loss.

    In all cases where benefits are specified in lump sum flat dollar amounts as shown in Section III, such amounts will be paid in Canadian dollars other than for those claims which qualify as U.S. Risks which will be paid in U.S. dollars.

4.  EFFECTIVE DATE AND TERMINATION DATES OF INDIVIDUAL INSURANCE:  The persons eligible for inclusion as Insured Persons hereunder shall be all persons denoted in Item 1 of Section III, Schedule of Coverage.  Commencing on the date any such eligible person comes within any classification established therein, such person shall automatically become an Insured Person with respect to such insurance as is afforded by the Policy as applicable to such person's classification.

    Any change in the insurance accorded an Insured Person, which results from a change of classification of such person, shall become effective on the date such person's classification changes, provided that if such person is absent from active full-time work because of Injury on the date such change in coverage would otherwise become effective, such change in coverage shall become effective upon the date such person returns to active full-time work.

    Coverage with respect to any Insured Person shall immediately terminate on the termination date of the Policy or at the time such person ceases to come within any such classification, whichever is earlier; provided, however, that such termination shall be without prejudice to any claim originating prior thereto.

5.  ASSIGNMENT:  The insurance provided hereunder is not assignable, but benefits may be designated in accordance with Section VI Statutory Provisions, Policy Provision 12, Payment of Claims.

18

6.  **RENEWAL:** The Policy may be renewed for further consecutive terms by the payment, prior to the expiration of the Grace Period as provided in Additional Provision 2, of the premium as provided in Item 3 of Section 1 Declarations.

7.  **NOT IN LIEU OF WORKER'S COMPENSATION:** The Policy is not in lieu of and does not affect any requirement for coverage by Worker's Compensation insurance or similar legislation in other countries.

In Witness Whereof, the AMERICAN HOME ASSURANCE COMPANY has caused the Policy to be signed by its President and a Secretary, but it shall not be binding upon the Company unless countersigned by a licensed resident agent of the Company.

NORTHERN TELECOM LIMITED

_____
Signature

Senior Vice-President
Employee and Customer Value
Title

_____
Signature

A.J. Laflaur
Vice-President and Associate General Counsel

_____
Title

AMERICAN HOME ASSURANCE
COMPANY

_____
Secretary

_____
President

Countersigned by:

_____
Licensed Resident Agent

19

Tuesday, March 18, 2003 12:05 PM                    Sara Adcox 919-481-0167

## POLICY AMENDMENT RIDER NO. 1

In consideration of the payment of premium calculated in the manner stated in the policy to which this rider is attached, it is hereby agreed that the policy is amended as follows:

**It is understood and agreed that effective April 29, 1999 the policyholder's name is amended to read as follows and not as previously shown:**

# NORTEL NETWORKS CORPORATION

This rider takes effect on <u>APRIL 29, 1999</u> 12:01 A.M., Standard Time, at <u>TORONTO, ONTARIO</u> and it expires concurrently with the policy and is subject to all of the provisions, definitions, limitations and conditions of the policy not inconsistent herewith.

Attached to and made a part of Policy No. <u>GTP 9025215</u> issued to **NORTEL NETWORKS CORPORATION** by the American Home Assurance Company, Canadian Head Office, Toronto, Ontario, but the same shall not be binding on the Company unless countersigned by its duly authorized representative.

                                                        President

                                                        7-16-99rc

Countersigned by _____
                              Authorized Representative

Form 810

## POLICY AMENDMENT RIDER #2 (REVISED)

In consideration of the payment of premium calculated in the manner stated in the policy to which this rider is attached, it is hereby agreed that the policy is amended as follows:

1.  It is hereby understood and agreed that the following changes are made to Section II – Definitions of this policy:

    Basic Annual Salary – means an employee's basic annual wage and excludes commissions, bonuses, overtime, and other forms of compensation other than wages, as determined by Nortel Networks. For employees participating in a Nortel Networks sales incentive compensation plan, for the purpose of this policy, Basic Annual Salary means Total Target Compensation (TTC).

    Total Target Compensation (TTC) – means an employee's basic annual salary plus Target Base Incentive Compensation (BIC) earned when business objectives are 100% achieved.

    Target Base Incentive Compensation
    A sales term; annual target at risk incentive pay based on 100% achievement of pre-determined objectives.

2.  With respect to all classifications of the policy, the Principal Sum as specified herein will be paid in the local currency of the Insured Person for whom the claim is made where permitted to do so subject to $1,000,000.00 U.S. Funds for any individual claim.

3.  Section III – Schedule of Coverage, Item 4 – Temporary Total Disability shall be deleted with respect to Classification 6 and 7.

4.  It is further understood and agreed with respect to Bay Networks employees, all terms and conditions of this policy shall apply. Principal Sum Benefits and Classifications are on file with the Policyholder subject to a maximum of $1,000,000.00 U.S. Funds.

This rider takes effect on  **JUNE 1, 1999**  12:01 A.M. Standard Time, at  **TORONTO, ONTARIO** and it expires concurrently with the policy and is subject to all of the provisions, definitions, limitations and conditions of the policy not inconsistent herewith.

Attached to and made a part of Policy No.  **GTP 9025215**  issued to  **NORTEL NETWORKS CORPORATION** by the American Home Assurance Company, Canadian Head Office, Toronto, Ontario, but the same shall not be binding on the Company unless countersigned by its duly authorized representative.

President

Countersigned by_____

Authorized Representative        09-16-99  bi

Form 810

## POLICY AMENDMENT RIDER #3

In consideration of the payment of premium calculated in the manner stated in the policy to which this rider is attached, it is hereby agreed that the policy is amended as follows:

It is understood and agreed that this policy is renewed for the period commencing December 31, 2000 and ending December 31, 2001.

RENEWAL PREMIUM:          $209,061.00   CANADIAN FUNDS

$183,159.00   U.S. FUNDS

This rider takes effect on __DECEMBER 31, 2000__ 12:01 A.M., Standard Time, at __BRAMPTON, ONTARIO__ and it expires concurrently with the policy and is subject to all of the provisions, definitions, limitations and conditions of the policy not inconsistent herewith.

Attached to and made a part of Policy No. __GTP 9025215__ issued to __NORTEL NETWORKS CORPORATION__ by the American Home Assurance Company, Canadian Head Office, Toronto, Ontario, but the same shall not be binding on the Company unless countersigned by its duly authorized representative.

President

Countersigned by_____

Authorized Representative          01-03-01 bi

Form 810

## POLICY AMENDMENT RIDER #4

In consideration of the payment of premium calculated in the manner stated in the policy to which this rider is attached, it is hereby agreed that the policy is amended as follows:

It is understood and agreed that this policy is renewed for the period commencing December 31, 2001 and ending December 31, 2002.

RENEWAL PREMIUM:    **$118,718.00  CANADIAN FUNDS**

**$131,686.00  U.S. FUNDS**

This rider takes effect on  **DECEMBER 31, 2001**   12:01 A.M., Standard Time, at  **BRAMPTON, ONTARIO** and it expires concurrently with the policy and is subject to all of the provisions, definitions, limitations and conditions of the policy not inconsistent herewith.

Attached to and made a part of Policy No. **GTP 9025215** issued to **NORTEL NETWORKS CORPORATION** by the American Home Assurance Company, Canadian Head Office, Toronto, Ontario, but the same shall not be binding on the Company unless countersigned by its duly authorized representative.

*Susan Rivera*

President

Countersigned by_____

Authorized Representative        01-18-02 gm

Form B10

# POLICY AMENDMENT RIDER #5

In consideration of the payment of premium calculated in the manner stated in the policy to which this rider is attached, it is hereby agreed that the policy is amended as follows:

It is hereby understood and agreed that effective May 14, 2002 the terms of the policy are extended to cover the Turkey division with 583 Insured under Class 1 and 6 Insured under Class 6.

**ADDITIONAL  PREMIUM:**      **$1,091.79  U.S. FUNDS**

This rider takes effect on __MAY 14, 2002__  12:01 A.M., Standard Time, at  __BRAMPTON, ONTARIO__ and it expires concurrently with the policy and is subject to all of the provisions, definitions, limitations and conditions of the policy not inconsistent herewith.

Attached to and made a part of Policy No. __GTP 9025215__ issued to  __NORTEL NETWORKS CORPORATION__ by the American Home Assurance Company, Canadian Head Office, Toronto, Ontario, but the same shall not be binding on the Company unless countersigned by its duly authorized representative.

*Susan Rivera*

President

Countersigned by_____

Authorized Representative        7-5-02 db

Form 810