**<u>EXHIBIT A</u>**

# Goodmans LLP

Barristers & Solicitors

Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Telephone: 416.979.2211
Facsimile: 416.979.1234
goodmans.ca

Direct Line: (416) 597-4216
jpasquariello@goodmans.ca

March 20, 2013

**Via Email**

The Honourable Mr. Justice Geoffrey Morawetz
Judges' Chambers – Court House
330 University Ave.
Toronto, Ontario  M5H 1T3

Dear Mr. Justice Morawetz:

**Re:**    **Nortel Networks Corporation,** *et al.*
**Court File No.:  09-CL-7950**

We are writing further to your Endorsement of March 8, 2013 wherein you directed the Monitor
to coordinate input from the Core Parties with respect to a litigation schedule.  At this time we
wish to provide the Court with an update as to the Monitor's efforts in this regard which have
been with a view to establishing a schedule for the hearing of a joint trial of the Ontario and
Delaware Courts in this matter to take place in the fall of 2013.  Attached are the following
materials:

1. The Monitor's correspondence of March 15, 2013 to the Core Parties with its proposed
   Litigation Timetable and attached detailed Discovery and Deposition Plan;

2. a black-lined updated proposed Litigation Timetable which reflects input from some of
   the Core Parties that the Monitor finds acceptable;

3. a proposed Litigation Timetable and Discovery Plan received on March 19, 2013 from
   the U.S. Debtors and supported by counsel to the UCC and Bondholders Committee
   which reflects their view of how the parallel proceedings in the Delaware Court would
   move forward in tandem with the Ontario Court proceedings and which includes
   proposed changes to the Monitor's Timetable and Plan (those that the Monitor to date
   considers appropriate have been incorporated in to the Monitor's updated Timetable at
   Item 2 above);

4. correspondence dated March 19, 2013 from counsel to the EMEA Debtors indicating that
   they anticipate having numerous and substantive comments on the Monitor's proposed
   Timetable and Discovery and Deposition Plan, but do not expect to be in a position to
   provide them until Friday March 22, 2013;

# Goodmans LLP

5. correspondence dated March 19, 2013 from the U.K. Pension Trustees and PPF indicating that the Discovery and Deposition Plan will need substantial revision if they are to be included in it, and including some high level objections to what the Monitor proposed.

Recognizing that there are still more comments to come, the Monitor cannot identify all areas of divergence among the Core Parties at this time. The Monitor anticipates further discussion with the other Core Parties on these issues. However, based on the communications (referred to in Items 3, 4 and 5 above), we anticipate that the parties will need the Courts' assistance and direction concerning the Litigation Schedule and Discovery and Deposition Plan in order to be ready for a fall trial date. To that end, we would like to schedule an attendance for no later than next Wednesday March 27, 2013 with a view to obtaining direction from the Court. Some other counsel have suggested that we schedule this attendance for after March 27, 2013, however we understand from the court office that Your Honour may not be available for a period of time after that.

In addition to seeking the Courts' direction with respect to the schedule, there is one other matter that has arisen and that may require the Courts' assistance to resolve. Specifically, counsel for the U.K. Pension Trustees and PPF have indicated that they do not consider their claims to be included in the matter to be adjudicated at the joint trial. Their position is reflected in the letter from their counsel dated March 19, 2013 (the same letter referenced in item 5, above). The Monitor had understood differently and has communicated its position to them in the attached letter of March 20, 2013 (Tab 6).

We appreciate that there are other matters on your docket and your time may be limited between now and March 27, 2013. We therefore thought it best to alert you to these issues and ascertain how best we might address them before your Honour in order to ensure that we can continue to move this matter forward.

Yours very truly,

**Goodmans LLP**

Joseph Pasquariello
JK/jo
cc.      Service List/Core Parties

\6185265

# TAB 1

**Oliveira, Jessica**

| | |
|---|---|
| **From:** | Galasso, Enza on behalf of Carfagnini, Jay |
| **Sent:** | Friday, March 15, 2013 3:56 PM |
| **To:** | 'derrick.tay@gowlings.com'; 'katie.parent@gowlings.com'; 'jennifer.stam@gowlings.com'; 'nortel.monitor@ca.ey.com'; 'lbarnes@osler.com'; 'esellers@osler.com'; 'ahirsh@osler.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca'; 'zychk@bennettjones.com'; 'orzyr@bennettjones.com'; 'finlaysong@bennettjones.com'; 'swanr@bennettjones.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com'; 'lily.harmer@paliareroland.com'; 'tina.lie@paliareroland.com'; 'Shayne.kukulowicz@fmc-law.com'; 'Michael.wunder@fmc-law.com'; 'ryan.jacobs@fmc-law.com'; 'bleonard@casselsbrock.com'; 'dward@casselsbrock.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca'; 'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; Arthur Jacques; 'thomas.mcrae@shibleyrighton.com'; 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'mgottlieb@counsel-toronto.com'; 'sheryl.seigel@mcmillan.ca'; 'jmarshall@blgcanada.com'; 'chill@blgcanada.com'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'jbromley@cgsh.com'; 'lschweitzer@cgsh.com'; 'jopolsky@cgsh.com'; 'Howard ZELBO'; 'tdemarinis@torys.com'; 'sbomhof@torys.com'; 'sblock@torys.com'; 'agray@torys.com'; 'aslavens@torys.com'; 'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; 'sawilson@heenan.ca'; 'fhodara@akingump.com'; 'tkreller@milbank.com'; 'jharris@milbank.com'; 'APisa@milbank.com'; 'michael.riela@lw.com'; 'elamek@blgcanada.com'; 'Ken.Coleman@AllenOvery.com'; 'Laura.Hall@AllenOvery.com' |
| **Cc:** | Zarnett, Benjamin; Myers, Fred; Kimmel, Jessica; Carfagnini, Jay; Pasquariello, Joe |
| **Subject:** | Nortel Networks Corporation, et al.; Court File No.: 09-CL-7950 |
| **Attachments:** | Litigation Timetable.pdf; Discovery and Deposition Plan.pdf |

Dear Counsel,

In accordance with the direction of the Ontario Court in the March 8, 2013 Endorsement of Justice Morawetz, and based on the indication from the judges that this trial will be heard in the fall, the Monitor has prepared the attached litigation schedule (which, in turn, attaches a discovery and deposition plan) upon which it seeks the input of the core parties.

We would like to report to the Court by next Wednesday, March 20th, 2013, and therefore receive input before then.

Kindest regards.


**Jay A. Carfagnini**
Goodmans LLP

416.597.4107
jcarfagnini@goodmans.ca

Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7
goodmans.ca

**Monitor and Canadian Estate's Proposed  Litigation Timetable**

March 15, 2013

To be implemented by Orders including wording that this schedule and the Discovery and the Deposition Plan incorporated herein supersede the Claims Procedure Resolution Order dated September 16, 2010, the EMEA Claims Procedure Order dated January 21, 2011 (and any equivalent US Orders or applicable statutory or regulatory procedural rules) and all other Orders or agreements governing the procedure for resolving the claims that are the subject matter of this schedule and the issue of allocation including, without limiting the generality of the foregoing, any requirement for consultation prior to any party taking any of the steps now contemplated in the schedule herein.

| Due Date 2013 | Step |
|---|---|
| March 19 | Monitor delivers Notices of Disallowance of all claims delivered by the EMEA J.A.s ("EMEA") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 21(e) of the EMEA Claims Procedure Order dated January 21, 2011.  Monitor delivers Notices of Disallowance of all claims delivered by the UK Pension Trustees/PPF ("Trustees") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 13(e) of the Claims Procedure Resolution Order dated September 16, 2010. |
| March 27 [or as soon as the Courts allow] | Motion before both Courts to approve an agreed upon discovery and deposition plan or, absent agreement, for directions concerning finalization of a discovery and deposition plan.  In the interim, the Canadian Applicants, the Monitor, the CCC, the US Debtors, the UCC and the Informal Committee of Noteholders to negotiate in good faith to try to come to agreement on a discovery and deposition plan dealing with the matters proposed in the draft discovery and deposition plan attached hereto as Schedule "A" and such other matters as they may agree upon (the "Discovery and Deposition Plan"). |
| April 2 [14 days later] | All Core Parties deliver a pleading styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought, material facts relied upon and legal bases for the allocation position being advanced at the joint |

| | |
|---|---|
| | hearing ordered by the Courts (the "Joint Hearing"). EMEA and the Trustees also to deliver Dispute Notices pursuant to paragraphs 25 of the EMEA Claims Procedure Order and paragraph 17 of the Claims Procedure Resolution Order, respectively, and incorporate into their pleading (to be styled "Allocation Position and Claims of [●]") with reasonable particularity, the relief sought, material facts relied upon and legal bases for the challenges to the disallowances of claims being advanced at the Joint Hearing ordered by the Ontario Superior Court of Justice and the United States Bankruptcy Court for the District of Delaware (collectively or individually, as the circumstances require, the "Court" or the "Courts"). |
| April 16[14 days later | Deadline for any Core Party to deliver a responding pleading which will set out with reasonable particularity the material facts relied upon and legal bases for any affirmative responses to the allocation positions advanced by any other Core Parties, and for any Core Party other than EMEA and the Trustees, to set out its responses to claims advanced by EMEA and/or the Trustees. |
| [Base Date = May 1, 2013] | Deadline for service of limited reasonable requests for production of non-privileged documents in accordance with the Discovery and Deposition Plan. |
| [Base Date + 15 days] | Deadline for statement of objections to document requests in accordance with the Discovery and Deposition Plan. |
| Base Date +20 days] | Deadline for pre-identification by each Core Party of their anticipated affiants as (non-expert) trial witnesses and subject matter of their testimony at trial and for designations of which (if any) of that Core Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with Discovery ad Deposition Plan. |
| [Base Date + 30 days] | Deadline for each Core Party to identify its representative for oral examination (discovery). |
| [Base Date + 35 days] | Deadline for each Core Party to identify up to 10 witnesses for deposition and its intentions regarding pre-trial cross examinations on any affidavits/witness statements previously filed and designated as trial evidence in accordance with |

|  | Discovery and Deposition Plan |
|---|---|
| [Base Date + 35 days] | Deadline for interim (pre-trial) agreement on Confidentiality and Privilege clawback. |
| Base Date + 45 days] | Rolling production of documents to be completed in accordance with the Discovery and Deposition Plan. |
| [Base Date + 60 days] | Deadline to complete oral examinations (discovery) of Core Party Representatives (with any undertakings to be answered within two weeks of each examination) in accordance with the Discovery and Deposition Plan. |
| [Base Date + 90 days] | Deadline to complete fact witness depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within two weeks of each examination), in accordance with the Discovery and Deposition Plan. |
| [Base Date + 90 days] | Deadline to identify experts and the subject matter of their reports in accordance with the Discovery and Deposition Plan. |
| [Base Date + 120 days] | Deadline for service of expert reports (including exhibits) in accordance with the Discovery and Deposition Plan. |
| [Base Date + 120 days] | Last possible date for hearing of any and all motions that any Core Party may wish to bring arising from the pleadings, discoveries, depositions or to otherwise resolve or narrow the issues for the Joint Hearing. Motions arising out of discoveries/depositions to be adjudicated by a referee to be jointly appointed by the Courts. |
| [Base Date + 140 days] | Deadline for service of responding experts' reports (including exhibits) in accordance with the Discovery and Deposition Plan. |
| [Base Date + 150 days] | Deadline to complete deposition of experts in accordance with the Discovery and Deposition Plan. |
| [Base Date + 165 days] | Pre-Trial Conference(s) – By this date, the Core Parties shall have met and conferred and reached agreement about: a) the non-contentious facts to be agreed upon for trial; b) the contents of document briefs for use at the Joint Hearing.<br><br>By this date, the Core Parties shall also have |

| | identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest and served and filed all affidavits and reports to be relied upon as that party's direct evidence (including examination in chief) about allocation and EMEA and the Trustees' claims.<br><br>All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |
|---|---|
| [Base Date + 175 days] | Deadline for filing with the Courts of opening submissions. |
| [Base Date + 180 days] | Joint Hearing of disputes of any remaining EMEA and Trustees' claims and allocation. |

Schedule "●"

**Ontario Superior Court of Justice – Commercial List Court File No. 09-CL-7950**
**United States Bankruptcy Court for the District of Delaware Court file No. 09-10138(KG)**

**RE: IN THE MATTER OF NORTEL NETWORKS CORPORATION ET AL**

# DISCOVERY AND DEPOSITION PLAN
(Dated as of March15, 2013)

| | |
|---|---|
| **1.    Applicable Procedural Regime:** | Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario<br><br>Federal Rules of Bankruptcy Procedure and Delaware Bankruptcy Court Rules |
| *2.*    **Legal Issues For Determination at Trial:** | Each of the Core Parties shall have identified in their pleadings exchanged pursuant to the Litigation Protocol to which this is annexed their respective:<br><br>1. Statutory, common law or other legal premise(s) for each cause of action and/or defence asserted.<br><br>2. The material facts relied upon in support of each cause of action and/or defence asserted.<br><br>3. The heads of damages and amount(s) claimed and/or sought to be set off under each cause of action asserted.<br><br>The following pleadings shall determine the scope of relevance for this Discovery and Deposition Plan:<br><br>1. EMEA and Trustees Dispute Notices setting out their Claims<br><br>2. Each Core Party's Allocation Position<br><br>3. Each Core Party's Response to any other Core Party's Allocation Position<br><br>4. All other Core Parties' Responses to EMEA and Trustees' Claims and Counterclaims (if any) |

- 2 -

5. EMEA and Trustees' Reply to Responses to their Claims

| **3.   Scope of Documentary Discovery:** | **General Principles:** |
|---|---|

*Identify and prioritize key authors and custodians, record types, relevant time frames, locations, and other parameters within which search will be conducted for relevant records.*

*Consider anticipated volume of records, cost and resources required to search for and review records for relevance, and the importance and complexity of the issues.*

*Prioritize steps to be taken and consider whether a phased approach is appropriate. If so, set out protocol for phased search.*

*a) Definition of Documents*

References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the *Rules of Civil Procedure*

*b) Previously Produced Documents*

All documents produced into the Merrill Lextranet database for the purpose of the several mediations in this proceeding are to be treated as having been produced in this litigation, and any Core Party that does not already have such documents shall be provided access to this Merrill Lextranet database, subject to appropriate confidentiality and sealing orders from the Court(s) and a provision allowing the Core Parties to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this discovery plan.

*c) No Waiver of Privilege*

The fact that a document has been produced by any Core Party shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege Where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Core Party who asserts privilege over the document), any Core Party who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a Confidentiality Order.

*d) Deemed Undertaking*

All of the Core Parties and their counsel shall be deemed to have undertaken not to use any evidence or information obtained in the course of the discoveries and depositions contemplated hereby for any purposes other than the litigation being conducted under the Litigation Protocol to which this Discovery and Deposition Plan is annexed.

**By no later than [Base Date = May 1], 2013**

Each Core Party shall be entitled to serve on any other Core Party limited reasonable requests for production of further non-privileged documents, to be specified and categorized with reference to the issues between the Core Parties as raised by the pleadings and to be accompanied by suggested sources and search parameters.   Core

- 4 -

Parties whose interests are aligned shall co-ordinate their efforts so that requests are streamlined to avoid repetition and overlap in the requests of other parties.

**By no later than May 15, 2013**

If a Core Party objects to any request for production made by any other Core Party, the basis for the objection shall be stated. Objections may be made on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), subsisting privilege and proportionality.

**Rolling Production May 15 to June 14, 2013, each Core Party working in good faith towards the earliest practicable date for production:**

Subject to any objections made and sustained if challenged (see motions procedure below), each Core Party shall produce any responsive non-privileged documents to any request made of it to all other Core Parties (to the extent they overlap, responses to multiple request may be combined or cross-referenced to each other to avoid duplication).

In this same time frame, each Core Party shall produce any further documents that they intend to rely upon at trial that are not part of the mediation productions or responsive productions.

| | |
|---|---|
| **4.    Format of Production of Records:**<br><br>Use    common protocol. | **Format for Exchange of Electronic Records:** Documents to be produced in Summation load files with objective coding in accordance with Schedule A hereto.<br><br>**Format for Exchange of Paper Records:** If a record only exists in hard copy and there is no electronic version, at the option of the producing party it may be scanned, coded and produced electronically in accordance with Schedule "A" hereto, or the producing party may produce the paper records for inspection by the requesting party and any documents that are selected for copying by the requesting party shall be imaged and produced in accordance with Schedule A hereto. |
| **5.    Trial Witness Identification** | **By no later than May 20, 2013**<br><br>Each Core Party shall identify anticipated trial witnesses and the subject matter of their expected testimony.  Each Core Party may designate two trial fact (non-expert) witnesses whose evidence will be |

tendered in chief by affidavit and who will be made available for cross examination at the trial. A party who wishes to designate more than two trial witnesses may only do so with leave of the Courts, taking into account which other witnesses have been designated as trial witnesses by other parties and the possibility of stipulating to the facts to which such additional witness would testify.

Any Core Party that has previously filed an affidavit or witness statement in the context of this litigation (the Ontario and Delaware proceedings) may also, at its option, choose to designate that evidence to be tendered at trial as long as the witness will be made available to be deposed and/or cross-examined in advance of the trial by any other Core Party who wishes to do so, with the result that both the affidavit/witness statement and transcript of cross-examination will be filed with the Court(s). If not so designated, those previously filed affidavits and/or witness statements shall not constitute part of the evidence at trial, but may be used for impeachment.

Should a Core Party wish to present evidence at trial from a witness who is not willing to swear an affidavit, such witness shall be identified at this same time, and leave of the Court(s) sought by the Core Party seeking to rely on their evidence to take that witnesses' testimony by deposition (examination out of court) so as to preserve their testimony so it can be submitted by the Core Party as evidence at trial.

**6.     Oral Examinations out of Court (pre-trial)**

**A.  Examinations of Core Party representatives**

By no later than May 30, 2013

Each Core Party shall designate a representative (who may, but is not required to be, a current or former officer, director or employee of that Core Party) to be offered to be examined pursuant to Rule 31 of the Ontario Rules of Civil Procedure and/or United States Federal Court Rule 30(b)(6) of Civil Procedure.

By no later than June 7, 2013

Each Core Party may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or United States Federal Rule of Civil Procedure [30(b)(6)] on the solicitors of record for any other Core Party specifying the topics on which that other Core Party's representative is to be examined. Core Parties sharing overlapping interests are strongly encouraged to coordinate and, if possible, submit joint requests to other Core Parties.

During the week of June 24, 2013

Each Core Party's representative offered pursuant to Ontario Rule 31 and/or United States Federal Rule 30(b)(6) may be examined for up to 7 hours by all other Core Parties. Each examination shall be co-ordinated so that a lead examiner is identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness shall be examined for longer than 7 hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of the Core Party represented by that witness.

Use of (Discovery) Answers at Trial

Testimony of representatives proffered in response to requests under Ontario Rule 31 and/or United States Federal Rule 30(b)(6) may be used as evidence at trial only by Core Parties whose interests are adverse to those of the proffering Core Party on the issue for which the evidence is being used.

**B. Oral Depositions:**

By no later than June 7, 2013

In addition to requests for testimony (discovery) of representatives, each Core Party may designate up to 10 fact witnesses (which may be third parties, persons subject to the control of a Core Party or both and which may be persons who have been identified as trial witnesses by another Core Party) whom it seeks to examine to obtain factual information/admissions relevant to the issues raised by the pleadings and any persons whose previously filed affidavits/witness statements have been designated by a Core Party as trial evidence, by serving a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or United States Federal Rule of Civil Procedure [30(b)(6)] on the solicitors of record for any other Core Party or the third party (or if not represented, by serving the notice directly on the third party). Each witness shall be named, his/her place of residence (if known) shall be identified and the subject matter upon which that witness is expected to testify shall be disclosed. All Core Parties shall have the right to ask questions of any witnesses who is designated by any party to be deposed but if more than one party designates the same witness that witness shall only be deposed one time.

All examinations to be completed by no later than July 29, 2013

Once all fact witnesses have been identified, a schedule will be set that contemplates the completion of all witness examinations (depositions, including any depositions for testimony preservation that the Court(s) may have granted leave to conduct, and cross examinations) in this time frame that reflects the practicalities of examining each witness

(having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness). Each examination shall be co-ordinated so that a lead examiner is identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness shall be examined for longer than 7 hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of all Core Parties.

Use of Depositions at Trial:

The transcript (or designated portions thereof) of any deposition may be filed as part of the evidence that any party may rely upon at trial (subject to objections which may be ruled upon by the Court as contemplated in section [8] hereof), except that testimony of a deponent who is employed by, party to a cooperation agreement with or otherwise under the control of a Core Party may not be relied upon as evidence by that Core Party or by others sharing its interests in the issue to which the testimony relates.

If a witness who has been deposed under is later called as a witness to give *viva voce* evidence at the trial, the transcript (or designated portions thereof) will still form part of the trial evidence and the entire transcript may also be used to impeach the witness or challenge his/her credibility.

Use of Cross Examinations at Trial:

If a witness who previously swore and affidavit or made a statement in these proceedings and whose prior evidence is designated by a Core Party to be tendered at trial is cross examined the entire cross examination transcript will form part of the trial evidence.

**C. General Procedure Applicable to all pre-trial examinations:**

Transcripts and video taping:

All examinations shall be taken under oath and transcribed and the transcripts made available to all Core Parties, whether or not they are in attendance at the examination. At the option of any examining party, the examination may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining party(ies) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

- 8 -

Objections:

Objections may be made on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), form, subsisting privilege and proportionality only.  An objection to form shall not be made solely on the basis that a question is leading unless the deponent is employed by, party to a cooperation agreement with or otherwise under the control of the Core Party represented by the questioner. Questions that are objected to solely on grounds of relevance or form shall be answered under reserve of that objection.  All other objections shall be preserved.

Requirement for Summons:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Estates and the Joint Administrators shall assist in issuing process or otherwise procuring a witness's attendance irrespective of which Core Party has sought the witness's deposition.  Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment to that jurisdiction for any other purpose.

Undertakings:

The witness shall answer any undertakings that were agreed to on his/her examination within two weeks of the date of his/her examination.

- 9 -

**7.    Experts**

<u>**By no later than July 29, 2013**</u>

Each Core Party that intends to rely on the opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

<u>**By no later than August 28, 2013**</u>

Each Core Party shall deliver an affidavit from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon [in attached exhibits].

Any Core Party that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial.  If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

<u>**By no later than September 17, 2013**</u>

Each Core Party shall have the right to deliver an affidavit from an expert in response to one received by another Core Party that addresses an issue that is adverse to any position of the Core Party in this litigation.  Responses shall be permitted even if the Core Party did not initially tender an expert's affidavit, if an issue is raised by an expert whose evidence is tendered by another party that calls for response.

<u>**By no later than September 20, 2013**</u>

Any Core Party who wishes to cross examine an expert whose affidavit has been tendered on an issue that is adverse to any position of the Core Party as raised by the pleadings in this litigation may serve notice of its intention to do so, regardless of whether or not that party has filed its own expert evidence.

<u>**September 27, 2013**</u>

A schedule will be set that contemplates the completion of all expert witness examinations between the notice date and this date that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness).  Each examination shall be co-ordinated so that a lead examiner is identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of

- 10 -

questions. No single witness shall be examined for longer than [7] hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of all Core Parties.

The affidavits and transcripts of cross examinations of the experts shall be filed as evidence with the court at the trial, subject only to challenges to qualifications that may be made and determined at the outset of the trial and directions from the Court(s) arising therefrom. The Court(s) may, on its own initiative and/or at the request of any Core Party at the trial require the attendance of any expert at trial to answer further questions of the Court or counsel as the Court may determine necessary or appropriate.

Communications with Experts:

The experts shall not be examined about or asked to produce prior drafts of their affidavits/reports and/or their communications with counsel who retained them (although they may be asked to disclose the specific questions they were asked to answer and about their compensation even if that is part of a communication with counsel).

| | |
|---|---|
| **8.    Motions /Directions from the Court(s) Regarding Objections:** | **Effect of Objections:**<br><br>Objections by a Core Party to any request for documents or to any question asked on an oral examination, and that are not produced or answered, shall be treated as refusals and the objecting party shall be foreclosed from tendering into evidence any document or fact it objected to disclosing without leave of the Court(s) at trial, the granting of which must take into account any prejudice (which may include prejudice caused by delay or an adjournment that might be necessitated when deciding whether to grant any leave subsequently requested).<br><br>**Hearing(s) to be scheduled to take place by August 28, 2013**<br><br>Any Core Party who seeks to compel production of a document or an answer to a question objected to must do so by a challenge to the grounds for objection by serving a motion with supporting material, including legal argument/submissions returnable in the Court of residence of the Responding Core Party on 7 days notice on all other Core Parties, and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested.  The Core Party whose objection is challenged shall respond to this motion within 4 days and any other party whose interests are affected by the request may serve a supplementary response within 2 days thereafter.<br><br>The Court(s), applying the principles and procedures agreed upon in |

- 11 -

this Plan and, to the extent not provided for, the Rules applicable in that jurisdiction will provide such rulings and/or directions as it considers appropriate, which may include deferring the determination of the objection until the trial and/or a direction that a witness attend the trial if it is determined that a question objected to should be answered or a document is ordered produced that the witness should have been given the opportunity to testify about.

**9.    General Terms**

Any Core Party may make a motion to the Court to compel another Core Party to take the steps contemplated by the Plan or other steps, and the Parties agree that the Court(s) may take the existence of the Plan into account in determining whether to grant the Order sought. The Respondent on such a motion may seek to justify its non-compliance with the Plan on the basis of, among other things, any information that was unknown or unavailable to that Party at the time the Plan was entered into.

Breach of this Plan does not, in and of itself, give rise to a right to damages or any other monetary relief, or to injunctive relief, although the Core Parties agree that the Court(s) may take any breach of this Plan into account in exercising discretion with respect to costs or other sanctions, or on an application for injunctive relief.

The Core Parties recognize that, as additional information becomes available throughout the litigation, it may become apparent that: (a) it is impracticable or impossible for a Core Party to comply with the terms of the Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Plan, are required in order for a Core Party to obtain access to relevant documents in the litigation. Each Core Party agrees to notify the other Core Parties promptly when it knows that it will not comply with any term of the Plan or when it concludes that another Core Party should take further steps beyond those set out in this Plan. The Core Parties agree to negotiate in good faith with respect to any amendments to the Plan requested by a Core Party on the basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Core Parties.

The Parties agree to attempt to resolve any disputes in the interpretation or implementation of the Plan with the assistance of the Court(s) at an informal case conference before taking any other procedural steps by way or motion or otherwise.

All motions or directions sought from the Court(s) pursuant to this Plan shall be brought to Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and/or Justice Morawetz of the Ontario Superior Court of Justice.

- 12 -

Prepared and agreed upon by:

To be signed by Counsel of Record for each Core Party]

- 13 -

## SCHEDULE A

**Format for Exchange of Productions (including Paper (subject to the producing party's option not to produce electronically provided for in section 4) and Electronic Documents). Productions will be exchanged by Summation load file, with the following format and with the following field names:**

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| Document Numbering | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note text | Docid(s) attached to Parentid | AA0000001 |
| Fields/Coded Data for E-mails | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Bcc* | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will he filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents and attachments. | As per metadata |
| Fields/Coded Data for Attachments and Loose Electronic Documents | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents | As per metadata |

- 14 -

| Item | Field | Field Type | Description | Format |
|---|---|---|---|---|
| | | | and attachments. | |
| **Fields/Coded Data for Paper Documents** | *Docdate* | Date | Date of document (subjectively coded) | MM/DD/YYYY |
| | *Doctype* | Note Text | Type of document (subjectively coded) | |
| | *Doctitle* | Note Text | Title of document (subjectively coded) | |
| | *Attach#* | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | *Author* | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | *Recip* | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| **Fields/Coded Data for Paper and Electronic Documents (Chronological Review)** | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| | *Leadtime* | Time | Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together. Allows for further sorting of documents dated the same day by time | HH:MM:SS |
| **Redactions** | *Redact* | Note | Document has redactions | "Redacted" stamped on document |

1.    Each document shall be individually produced with a unique document ID number.

2.    OCR will be exchanged (OCR folder with text files and a control list).

3.    All images will be single page tiff format (excluding spreadsheets which will be provided in native format) with 300 dpi specifications.   Spreadsheets to be provided in edocs folder.

4.    Parties will provide the following load files formatted as follows:

(a)    Image folder (single page tiff, 300 dpi);

(b)    eDocs folder (for native files, specifically Excel which will not be tiffed);

(c)    OCR folder (with text files and a control list for loading);

(d)    data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

(e)    imginfo.txt or imginfo.csv.

# TAB 2

**Monitor and Canadian Estate's Proposed  Litigation Timetable**

March 15, 2013

To be implemented by Orders including wording that this schedule and the Discovery and the Deposition Plan incorporated herein supersede the Claims Procedure Resolution Order dated September 16, 2010, the EMEA Claims Procedure Order dated January 21, 2011 (and any equivalent US Orders or applicable statutory or regulatory procedural rules) and all other Orders or agreements governing the procedure for resolving the claims that are the subject matter of this schedule and the issue of allocation including, without limiting the generality of the foregoing, any requirement for consultation prior to any party taking any of the steps now contemplated in the schedule herein.

| Due Date 2013 | Step |
|---|---|
| March ~~19~~[1]20[2] | Monitor delivers Notices of Disallowance of all claims delivered by the EMEA J.A.s ("EMEA") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 21(e) of the EMEA Claims Procedure Order dated January 21, 2011.  Monitor delivers Notices of Disallowance of all claims delivered by the UK Pension Trustees/PPF ("Trustees") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 13(e) of the Claims Procedure Resolution Order dated September 16, 2010. |
| ~~March 27 [or as soon as the Courts allow]~~[3]Present through to scheduled hearing[4] | ~~Motion before both Courts to approve an agreed upon discovery and deposition plan or, absent agreement, for directions concerning finalization of a discovery and deposition plan.  In the interim, the Canadian Applicants, the Monitor, the CCC, the US Debtors, the UCC and the Informal Committee of Noteholders~~[5]All Core Parties[6] to negotiate in good faith to try to come to ~~an~~ [7]agreement on a Litigation Timetable and [8]discovery and deposition plan dealing with the matters proposed in the draft discovery and deposition plan attached hereto as Schedule "A" and such other matters as they may agree upon (the "Discovery and Deposition Plan")~~.~~ [9] |
| March 27 [or as soon as the Courts allow][10] | Motion before both Courts to approve an agreed upon Litigation Timetable and discovery and deposition plan or, absent agreement, for directions or court orders concerning finalization |

| | |
|---|---|
| | of same. [11] |
| April 2[12]3[13] [14 days later] | ~~All Core Parties deliver a pleading styled "Allocation Position of [[14]●[15]]" which will set out with reasonable particularity the relief sought, material facts relied upon and legal bases for the allocation position being advanced at the joint hearing ordered by the Courts (the "Joint Hearing"). EMEA and the Trustees also[16]~~EMEA and the Trustees[17] to deliver Dispute Notices pursuant to paragraphs 25 of the EMEA Claims Procedure Order and paragraph 17 of the Claims Procedure Resolution Order, respectively, ~~and incorporate into their pleading (to be styled "Allocation Position and Claims of [[18]●[19]]")[20]~~setting forth,[21] with reasonable particularity, the relief sought, material facts relied upon and legal bases for the challenges to the disallowances of claims ~~being[22]~~to be[23] advanced at the Joint Hearing ordered by the Ontario Superior Court of Justice and the United States Bankruptcy Court for the District of Delaware (collectively or individually, as the circumstances require, the "Court" or the "Courts"). |
| April 5[24] | Deadline for Core Parties to agree upon a pre-trial protocol for dealing with confidential documents and information and for the claw back of any inadvertently produced privileged communications or to file motions seeking an interim order addressing these matters if agreement cannot be reached (if agreement is reached, with a view to eventually incorporating it into court orders).[25] |
| April 15[26] | All Core Parties to deliver a pleading styled "Allocation Position of [[27]●[28]]" which will set out with reasonable particularity the relief sought, material facts relied upon and legal bases for the allocation position being advanced at the joint hearing ordered by the Courts (the "Joint Hearing"). [29] |
| April 16[30]25[31][14[32]10[33] days later | Deadline for any Core Party to deliver a responding pleading which will set out with reasonable particularity the material facts relied upon and legal bases for any affirmative responses to the allocation positions advanced by any other Core Parties, and for any Core Party other than EMEA and the Trustees, to set out its |

| | responses to claims advanced by EMEA and/or the Trustees. |
|---|---|
| [Base Date = May 1, 2013] | Deadline for service of limited reasonable requests for production of non-privileged documents in accordance with the Discovery and Deposition Plan. |
| [Base Date + 15 days] | Deadline for statement of objections to document requests in accordance with the Discovery and Deposition Plan. |
| Base Date +20 days] | Deadline for pre-identification by each Core Party of their anticipated affiants as (non-expert) trial witnesses and subject matter of their testimony at trial and for designations of which (if any) of that Core Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with Discovery ad Deposition Plan. |
| [Base Date + 30 days] | Deadline for each Core Party to identify its representative for oral examination (discovery). |
| [Base Date + 35 days] | Deadline for each Core Party to identify up to 10 witnesses for deposition and its intentions regarding pre-trial cross examinations on any affidavits/witness statements previously filed and designated as trial evidence in accordance with Discovery and Deposition Plan |
| [Base Date + 35 days] | Deadline for interim (pre-trial) agreement on Confidentiality and Privilege clawback. |
| Base Date + 45 days] | Rolling production of documents to be completed in accordance with the Discovery and Deposition Plan. |
| [Base Date + 60 days] | Deadline to complete oral examinations (discovery) of Core Party Representatives (with any undertakings to be answered within two weeks of each examination) in accordance with the Discovery and Deposition Plan. |
| [Base Date + 90 days] | Deadline to complete fact witness depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within two weeks of each examination), in accordance with the Discovery and Deposition Plan. |
| [Base Date + 90 days] | Deadline to identify experts and the subject matter of their reports in accordance with the Discovery and Deposition Plan. |
| [Base Date + 120 days] | Deadline for service of expert reports (including exhibits) in accordance with the Discovery and |

| | Deposition Plan. |
|---|---|
| [Base Date + 120 days] | Last possible date for hearing of any and all motions that any Core Party may wish to bring arising from the pleadings, discoveries, depositions or to otherwise resolve or narrow the issues for the Joint Hearing.<br>Motions arising out of discoveries/depositions to be adjudicated by a referee to be jointly appointed by the Courts. |
| [Base Date + 140 days] | Deadline for service of responding experts' reports (including exhibits) in accordance with the Discovery and Deposition Plan. |
| [Base Date + 150 days] | Deadline to complete deposition of experts in accordance with the Discovery and Deposition Plan. |
| [Base Date + 165 days] | Pre-Trial Conference(s) –<br>By this date, the Core Parties shall have met and conferred and reached agreement about:<br>a) the non-contentious facts to be agreed upon for trial;<br>b) the contents of document briefs for use at the Joint Hearing.<br><br>By this date, the Core Parties shall also have identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest and served and filed all affidavits and reports to be relied upon as that party's direct evidence (including examination in chief) about allocation and EMEA and the Trustees' claims.<br><br>All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |
| [Base Date + 175 days] | Deadline for filing with the Courts of opening submissions. |
| [Base Date + 180 days] | Joint Hearing of disputes of any remaining EMEA and Trustees' claims and allocation. |

\6184020

# TAB 3

**Oliveira, Jessica**

| | |
|---|---|
| **From:** | Lisa M SCHWEITZER [lschweitzer@cgsh.com] |
| **Sent:** | Tuesday, March 19, 2013 11:10 PM |
| **To:** | Carfagnini, Jay |
| **Cc:** | 'agray@torys.com'; 'ahirsh@osler.com'; 'ainslie.benedict@nelligan.ca'; 'APisa@milbank.com'; Arthur Jacques; 'aslavens@torys.com'; 'barry.wadsworth@caw.ca'; 'bboake@mccarthy.ca'; 'bleonard@casselsbrock.com'; 'bwalancik@kmlaw.ca'; Zarnett, Benjamin; 'chill@blgcanada.com'; 'christopher.rootham@nelligan.ca'; 'derrick.tay@gowlings.com'; 'dward@casselsbrock.com'; Galasso, Enza; 'elamek@blgcanada.com'; 'emarques@mccarthy.ca'; 'esellers@osler.com'; 'fhodara@akingump.com'; 'finlaysong@bennettjones.com'; Myers, Fred; 'Howard ZELBO'; 'janice.payne@nelligan.ca'; 'jbromley@cgsh.com'; 'jennifer.stam@gowlings.com'; 'jgage@mccarthy.ca'; 'jharris@milbank.com'; Kimmel, Jessica; 'jmarshall@blgcanada.com'; 'jopolsky@cgsh.com'; Pasquariello, Joe; 'jsalmas@heenan.ca'; 'katie.parent@gowlings.com'; 'Ken.Coleman@AllenOvery.com'; 'ken.rosenberg@paliareroland.com'; 'kkraft@heenan.ca'; 'Laura.Hall@AllenOvery.com'; 'lbarnes@osler.com'; 'lewis.gottheil@caw.ca'; 'lily.harmer@paliareroland.com'; 'max.starnino@paliareroland.com'; 'mgottlieb@counsel-toronto.com'; 'michael.riela@lw.com'; 'Michael.wunder@fmc-law.com'; 'mzigler@kmlaw.ca'; 'nortel.monitor@ca.ey.com'; 'orzyr@bennettjones.com'; 'rschwill@dwpv.com'; 'ryan.jacobs@fmc-law.com'; 'sawilson@heenan.ca'; 'sblock@torys.com'; 'sbomhof@torys.com'; 'scampbell@dwpv.com'; 'Shayne.kukulowicz@fmc-law.com'; 'sheryl.seigel@mcmillan.ca'; 'sphilpott@kmlaw.ca'; 'steven.levitt@nelligan.ca'; 'swanr@bennettjones.com'; 'tdemarinis@torys.com'; 'thomas.mcrae@shibleyrighton.com'; 'tina.lie@paliareroland.com'; 'tkreller@milbank.com'; 'zychk@bennettjones.com'; dabbott@mnat.com; acordo@mnat.com; Emily Weiss; Marla Decker |
| **Subject:** | Re: Nortel Networks Corporation, et al.; Court File No.:  09-CL-7950 |
| **Attachments:** | Litigation Timetable.pdf; Discovery and Deposition Plan.pdf; Nortel - Discovery Plan -- US Debtors March 19.docx; Nortel - Litigation Timetable -- US Debtors March 19.docx |

Jay -

We appreciate you circulating a draft schedule and protocol for the parties to consider.  I'm attaching a revised timeline and discovery plan proposed by the US Debtors that takes into account the different parallel litigations being coordinated and other cross-border and procedural issues raised by your proposal.  It was not possible to coordinate with all parties on this email in the short time frame; however, we have worked closely with Akin on this responsive proposal. While the Official Creditors Committee has not had the opportunity to formally approve the attached proposal in the short turnaround time, Akin is prepared to strongly recommend it to the Committee.  We also have shared the proposal with Milbank and understand that while they have not yet had an opportunity to consult with their clients, they intend to recommend approval of their described participation in the allocation process to their group.  We are considering certain feedback from Milbank regarding their role in the claims litigation but wanted to circulate this document in the interest of broader consideration.

We hope that a consensual schedule can be proposed, and are happy to discuss the attached timeline and protocol and the issues underlying our revisions with you and the other interested parties on this email once you have had an opportunity to review them.

Lisa

Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
Assistant: cverga@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2629 | f: +1 212 225 3999
www.clearygottlieb.com | lschweitzer@cgsh.com

1

From:     "Carfagnini, Jay" <jcarfagnini@goodmans.ca>
To:       "'derrick.tay@gowlings.com'" <derrick.tay@gowlings.com>, "'katie.parent@gowlings.com'" <katie.parent@gowlings.com>, "'jennifer.stam@gowlings.com'" <jennifer.stam@gowlings.com>, "'nortel.monitor@ca.ey.com'" <nortel.monitor@ca.ey.com>, "'lbarnes@osler.com'" <lbarnes@osler.com>, "'esellers@osler.com'" <esellers@osler.com>, "'ahirsh@osler.com'" <ahirsh@osler.com>, "'barry.wadsworth@caw.ca'" <barry.wadsworth@caw.ca>, "'lewis.gottheil@caw.ca'" <lewis.gottheil@caw.ca>, "'zychk@bennettjones.com'" <zychk@bennettjones.com>, "'orzyr@bennettjones.com'" <orzyr@bennettjones.com>, "'finlaysong@bennettjones.com'" <finlaysong@bennettjones.com>, "'swanr@bennettjones.com'" <swanr@bennettjones.com>, "'mzigler@kmlaw.ca'" <mzigler@kmlaw.ca>, "'sphilpott@kmlaw.ca'" <sphilpott@kmlaw.ca>, "'bwalancik@kmlaw.ca'" <bwalancik@kmlaw.ca>, "'ken.rosenberg@paliareroland.com'" <ken.rosenberg@paliareroland.com>, "'max.starnino@paliareroland.com'" <max.starnino@paliareroland.com>, "'lily.harmer@paliareroland.com'" <lily.harmer@paliareroland.com>, "'tina.lie@paliareroland.com'" <tina.lie@paliareroland.com>, "'Shayne.kukulowicz@fmc-law.com'" <Shayne.kukulowicz@fmc-law.com>, "'Michael.wunder@fmc-law.com'" <Michael.wunder@fmc-law.com>, "'ryan.jacobs@fmc-law.com'" <ryan.jacobs@fmc-law.com>, "'bleonard@casselsbrock.com'" <bleonard@casselsbrock.com>, "'dward@casselsbrock.com'" <dward@casselsbrock.com>, "'janice.payne@nelligan.ca'" <janice.payne@nelligan.ca>, "'steven.levitt@nelligan.ca'" <steven.levitt@nelligan.ca>, "'christopher.rootham@nelligan.ca'" <christopher.rootham@nelligan.ca>, "'ainslie.benedict@nelligan.ca'" <ainslie.benedict@nelligan.ca>, Arthur Jacques <arthur.jacques@shibleyrighton.com>, "'thomas.mcrae@shibleyrighton.com'" <thomas.mcrae@shibleyrighton.com>, "'rschwill@dwpv.com'" <rschwill@dwpv.com>, "'scampbell@dwpv.com'" <scampbell@dwpv.com>, "'mgottlieb@counsel-toronto.com'" <mgottlieb@counsel-toronto.com>, "'sheryl.seigel@mcmillan.ca'" <sheryl.seigel@mcmillan.ca>, "'jmarshall@blgcanada.com'" <jmarshall@blgcanada.com>, "'chill@blgcanada.com'" <chill@blgcanada.com>, "'bboake@mccarthy.ca'" <bboake@mccarthy.ca>, "'jgage@mccarthy.ca'" <jgage@mccarthy.ca>, "'emarques@mccarthy.ca'" <emarques@mccarthy.ca>, "'jbromley@cgsh.com'" <jbromley@cgsh.com>, "'lschweitzer@cgsh.com'" <lschweitzer@cgsh.com>, "'jopolsky@cgsh.com'" <jopolsky@cgsh.com>, 'Howard ZELBO' <hzelbo@cgsh.com>, "'tdemarinis@torys.com'" <tdemarinis@torys.com>, "'sbomhof@torys.com'" <sbomhof@torys.com>, "'sblock@torys.com'" <sblock@torys.com>, "'agray@torys.com'" <agray@torys.com>, "'aslavens@torys.com'" <aslavens@torys.com>, "'jsalmas@heenan.ca'" <jsalmas@heenan.ca>, "'kkraft@heenan.ca'" <kkraft@heenan.ca>, "'sawilson@heenan.ca'" <sawilson@heenan.ca>, "'fhodara@akingump.com'" <fhodara@akingump.com>, "'tkreller@milbank.com'" <tkreller@milbank.com>, "'jharris@milbank.com'" <jharris@milbank.com>, "'APisa@milbank.com'" <APisa@milbank.com>, "'michael.riela@lw.com'" <michael.riela@lw.com>, "'elamek@blgcanada.com'" <elamek@blgcanada.com>, "'Ken.Coleman@AllenOvery.com'" <Ken.Coleman@AllenOvery.com>, "'Laura.Hall@AllenOvery.com'" <Laura.Hall@AllenOvery.com>
Cc:       "Zarnett, Benjamin" <bzarnett@goodmans.ca>, "Myers, Fred" <fmyers@goodmans.ca>, "Kimmel, Jessica" <jkimmel@goodmans.ca>, "Carfagnini, Jay" <jcarfagnini@goodmans.ca>, "Pasquariello, Joe" <jpasquariello@goodmans.ca>
Date:     03/15/2013 03:57 PM
Subject:  Nortel Networks Corporation, et al.; Court File No.: 09-CL-7950
Sent by:  "Galasso, Enza" <egalasso@goodmans.ca>

Dear Counsel,

In accordance with the direction of the Ontario Court in the March 8, 2013 Endorsement of Justice Morawetz, and based on the indication from the judges that this trial will be heard in the fall, the Monitor has prepared the attached litigation schedule (which, in turn, attaches a discovery and deposition plan) upon which it seeks the input of the core parties.

We would like to report to the Court by next Wednesday, March 20th, 2013, and therefore receive input before then.

Kindest regards.

**Jay A. Carfagnini**
Goodmans LLP

416.597.4107
jcarfagnini@goodmans.ca

Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7
goodmans.ca

***** Attention *****

This communication is intended solely for the named addressee(s) and may contain information that is privileged, confidential, protected or otherwise exempt from disclosure. No waiver of confidence, privilege, protection or otherwise is made. If you are not the intended recipient of this communication, please advise us immediately and delete this email without reading, copying or forwarding it to anyone.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

**Monitor and Canadian Estate's Proposed Litigation Timetable**

March 15, 2013

To be implemented by Orders including wording that this schedule and the Discovery and the Deposition Plan incorporated herein supersede the Claims Procedure Resolution Order dated September 16, 2010, the EMEA Claims Procedure Order dated January 21, 2011 (and any equivalent US Orders or applicable statutory or regulatory procedural rules) and all other Orders or agreements governing the procedure for resolving the claims that are the subject matter of this schedule and the issue of allocation including, without limiting the generality of the foregoing, any requirement for consultation prior to any party taking any of the steps now contemplated in the schedule herein.

| Due Date 2013 | Step |
|---|---|
| March 19 | Monitor delivers Notices of Disallowance of all claims delivered by the EMEA J.A.s ("EMEA") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 21(e) of the EMEA Claims Procedure Order dated January 21, 2011. Monitor delivers Notices of Disallowance of all claims delivered by the UK Pension Trustees/PPF ("Trustees") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 13(e) of the Claims Procedure Resolution Order dated September 16, 2010. |
| March 27 [or as soon as the Courts allow] | Motion before both Courts to approve an agreed upon discovery and deposition plan or, absent agreement, for directions concerning finalization of a discovery and deposition plan. In the interim, the Canadian Applicants, the Monitor, the CCC, the US Debtors, the UCC and the Informal Committee of Noteholders to negotiate in good faith to try to come to agreement on a discovery and deposition plan dealing with the matters proposed in the draft discovery and deposition plan attached hereto as Schedule "A" and such other matters as they may agree upon (the "Discovery and Deposition Plan"). |
| April 2 [14 days later] | All Core Parties deliver a pleading styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought, material facts relied upon and legal bases for the allocation position being advanced at the joint |

| | hearing ordered by the Courts (the "Joint Hearing"). EMEA and the Trustees also to deliver Dispute Notices pursuant to paragraphs 25 of the EMEA Claims Procedure Order and paragraph 17 of the Claims Procedure Resolution Order, respectively, and incorporate into their pleading (to be styled "Allocation Position and Claims of [●]") with reasonable particularity, the relief sought, material facts relied upon and legal bases for the challenges to the disallowances of claims being advanced at the Joint Hearing ordered by the Ontario Superior Court of Justice and the United States Bankruptcy Court for the District of Delaware (collectively or individually, as the circumstances require, the "Court" or the "Courts"). |
|---|---|
| April 16[14 days later | Deadline for any Core Party to deliver a responding pleading which will set out with reasonable particularity the material facts relied upon and legal bases for any affirmative responses to the allocation positions advanced by any other Core Parties, and for any Core Party other than EMEA and the Trustees, to set out its responses to claims advanced by EMEA and/or the Trustees. |
| [Base Date = May 1, 2013] | Deadline for service of limited reasonable requests for production of non-privileged documents in accordance with the Discovery and Deposition Plan. |
| [Base Date + 15 days] | Deadline for statement of objections to document requests in accordance with the Discovery and Deposition Plan. |
| Base Date +20 days] | Deadline for pre-identification by each Core Party of their anticipated affiants as (non-expert) trial witnesses and subject matter of their testimony at trial and for designations of which (if any) of that Core Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with Discovery ad Deposition Plan. |
| [Base Date + 30 days] | Deadline for each Core Party to identify its representative for oral examination (discovery). |
| [Base Date + 35 days] | Deadline for each Core Party to identify up to 10 witnesses for deposition and its intentions regarding pre-trial cross examinations on any affidavits/witness statements previously filed and designated as trial evidence in accordance with |

|  | Discovery and Deposition Plan |
|---|---|
| [Base Date + 35 days] | Deadline for interim (pre-trial) agreement on Confidentiality and Privilege clawback. |
| Base Date + 45 days] | Rolling production of documents to be completed in accordance with the Discovery and Deposition Plan. |
| [Base Date + 60 days] | Deadline to complete oral examinations (discovery) of Core Party Representatives (with any undertakings to be answered within two weeks of each examination) in accordance with the Discovery and Deposition Plan. |
| [Base Date + 90 days] | Deadline to complete fact witness depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within two weeks of each examination), in accordance with the Discovery and Deposition Plan. |
| [Base Date + 90 days] | Deadline to identify experts and the subject matter of their reports in accordance with the Discovery and Deposition Plan. |
| [Base Date + 120 days] | Deadline for service of expert reports (including exhibits) in accordance with the Discovery and Deposition Plan. |
| [Base Date + 120 days] | Last possible date for hearing of any and all motions that any Core Party may wish to bring arising from the pleadings, discoveries, depositions or to otherwise resolve or narrow the issues for the Joint Hearing. Motions arising out of discoveries/depositions to be adjudicated by a referee to be jointly appointed by the Courts. |
| [Base Date + 140 days] | Deadline for service of responding experts' reports (including exhibits) in accordance with the Discovery and Deposition Plan. |
| [Base Date + 150 days] | Deadline to complete deposition of experts in accordance with the Discovery and Deposition Plan. |
| [Base Date + 165 days] | Pre-Trial Conference(s) – By this date, the Core Parties shall have met and conferred and reached agreement about: a) the non-contentious facts to be agreed upon for trial; b) the contents of document briefs for use at the Joint Hearing. By this date, the Core Parties shall also have |

| | |
|---|---|
| | identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest and served and filed all affidavits and reports to be relied upon as that party's direct evidence (including examination in chief) about allocation and EMEA and the Trustees' claims.<br><br>All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |
| [Base Date + 175 days] | Deadline for filing with the Courts of opening submissions. |
| [Base Date + 180 days] | Joint Hearing of disputes of any remaining EMEA and Trustees' claims and allocation. |

Schedule "●"

**Ontario Superior Court of Justice – Commercial List Court File No. 09-CL-7950**
**United States Bankruptcy Court for the District of Delaware Court file No. 09-10138(KG)**

**RE: IN THE MATTER OF NORTEL NETWORKS CORPORATION ET AL**

# DISCOVERY AND DEPOSITION PLAN
(Dated as of March15, 2013)

| | |
|---|---|
| **1. Applicable Procedural Regime:** | Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario<br><br>Federal Rules of Bankruptcy Procedure and Delaware Bankruptcy Court Rules |
| *2.* **Legal Issues For Determination at Trial:** | Each of the Core Parties shall have identified in their pleadings exchanged pursuant to the Litigation Protocol to which this is annexed their respective:<br><br>1. Statutory, common law or other legal premise(s) for each cause of action and/or defence asserted.<br><br>2. The material facts relied upon in support of each cause of action and/or defence asserted.<br><br>3. The heads of damages and amount(s) claimed and/or sought to be set off under each cause of action asserted.<br><br>The following pleadings shall determine the scope of relevance for this Discovery and Deposition Plan:<br><br>1. EMEA and Trustees Dispute Notices setting out their Claims<br><br>2. Each Core Party's Allocation Position<br><br>3. Each Core Party's Response to any other Core Party's Allocation Position<br><br>4. All other Core Parties' Responses to EMEA and Trustees' Claims and Counterclaims (if any) |

- 2 -

5. EMEA and Trustees' Reply to Responses to their Claims

- 3 -

**3. Scope of Documentary Discovery:**

*Identify and prioritize key authors and custodians, record types, relevant time frames, locations, and other parameters within which search will be conducted for relevant records.*

*Consider anticipated volume of records, cost and resources required to search for and review records for relevance, and the importance and complexity of the issues.*

*Prioritize steps to be taken and consider whether a phased approach is appropriate. If so, set out protocol for phased search.*

**General Principles:**

*a) Definition of Documents*

References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the *Rules of Civil Procedure*

*b) Previously Produced Documents*

All documents produced into the Merrill Lextranet database for the purpose of the several mediations in this proceeding are to be treated as having been produced in this litigation, and any Core Party that does not already have such documents shall be provided access to this Merrill Lextranet database, subject to appropriate confidentiality and sealing orders from the Court(s) and a provision allowing the Core Parties to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this discovery plan.

*c) No Waiver of Privilege*

The fact that a document has been produced by any Core Party shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege Where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Core Party who asserts privilege over the document), any Core Party who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a Confidentiality Order.

*d) Deemed Undertaking*

All of the Core Parties and their counsel shall be deemed to have undertaken not to use any evidence or information obtained in the course of the discoveries and depositions contemplated hereby for any purposes other than the litigation being conducted under the Litigation Protocol to which this Discovery and Deposition Plan is annexed.

**By no later than [Base Date = May 1], 2013**

Each Core Party shall be entitled to serve on any other Core Party limited reasonable requests for production of further non-privileged documents, to be specified and categorized with reference to the issues between the Core Parties as raised by the pleadings and to be accompanied by suggested sources and search parameters. Core

- 4 -

Parties whose interests are aligned shall co-ordinate their efforts so that requests are streamlined to avoid repetition and overlap in the requests of other parties.

**By no later than May 15, 2013**

If a Core Party objects to any request for production made by any other Core Party, the basis for the objection shall be stated. Objections may be made on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), subsisting privilege and proportionality.

**Rolling Production May 15 to June 14, 2013, each Core Party working in good faith towards the earliest practicable date for production:**

Subject to any objections made and sustained if challenged (see motions procedure below), each Core Party shall produce any responsive non-privileged documents to any request made of it to all other Core Parties (to the extent they overlap, responses to multiple request may be combined or cross-referenced to each other to avoid duplication).

In this same time frame, each Core Party shall produce any further documents that they intend to rely upon at trial that are not part of the mediation productions or responsive productions.

| | |
|---|---|
| **4.   Format of Production of Records:** | **Format for Exchange of Electronic Records:** Documents to be produced in Summation load files with objective coding in accordance with Schedule A hereto. |
| Use   common protocol. | **Format for Exchange of Paper Records:** If a record only exists in hard copy and there is no electronic version, at the option of the producing party it may be scanned, coded and produced electronically in accordance with Schedule "A" hereto, or the producing party may produce the paper records for inspection by the requesting party and any documents that are selected for copying by the requesting party shall be imaged and produced in accordance with Schedule A hereto. |
| **5.   Trial Witness Identification** | **By no later than May 20, 2013**<br><br>Each Core Party shall identify anticipated trial witnesses and the subject matter of their expected testimony.  Each Core Party may designate two trial fact (non-expert) witnesses whose evidence will be |

- 5 -

tendered in chief by affidavit and who will be made available for cross examination at the trial. A party who wishes to designate more than two trial witnesses may only do so with leave of the Courts, taking into account which other witnesses have been designated as trial witnesses by other parties and the possibility of stipulating to the facts to which such additional witness would testify.

Any Core Party that has previously filed an affidavit or witness statement in the context of this litigation (the Ontario and Delaware proceedings) may also, at its option, choose to designate that evidence to be tendered at trial as long as the witness will be made available to be deposed and/or cross-examined in advance of the trial by any other Core Party who wishes to do so, with the result that both the affidavit/witness statement and transcript of cross-examination will be filed with the Court(s). If not so designated, those previously filed affidavits and/or witness statements shall not constitute part of the evidence at trial, but may be used for impeachment.

Should a Core Party wish to present evidence at trial from a witness who is not willing to swear an affidavit, such witness shall be identified at this same time, and leave of the Court(s) sought by the Core Party seeking to rely on their evidence to take that witnesses' testimony by deposition (examination out of court) so as to preserve their testimony so it can be submitted by the Core Party as evidence at trial.

| **6. Oral Examinations out of Court (pre-trial)** | **A. Examinations of Core Party representatives** |
|---|---|
| | By no later than May 30, 2013 |
| | Each Core Party shall designate a representative (who may, but is not required to be, a current or former officer, director or employee of that Core Party) to be offered to be examined pursuant to Rule 31 of the Ontario Rules of Civil Procedure and/or United States Federal Court Rule 30(b)(6) of Civil Procedure. |
| | By no later than June 7, 2013 |
| | Each Core Party may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or United States Federal Rule of Civil Procedure [30(b)(6)] on the solicitors of record for any other Core Party specifying the topics on which that other Core Party's representative is to be examined. Core Parties sharing overlapping interests are strongly encouraged to coordinate and, if possible, submit joint requests to other Core Parties. |
| | During the week of June 24, 2013 |

- 6 -

Each Core Party's representative offered pursuant to Ontario Rule 31 and/or United States Federal Rule 30(b)(6) may be examined for up to 7 hours by all other Core Parties. Each examination shall be co-ordinated so that a lead examiner is identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness shall be examined for longer than 7 hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of the Core Party represented by that witness.

Use of (Discovery) Answers at Trial

Testimony of representatives proffered in response to requests under Ontario Rule 31 and/or United States Federal Rule 30(b)(6) may be used as evidence at trial only by Core Parties whose interests are adverse to those of the proffering Core Party on the issue for which the evidence is being used.

**B. Oral Depositions:**

By no later than June 7, 2013

In addition to requests for testimony (discovery) of representatives, each Core Party may designate up to 10 fact witnesses (which may be third parties, persons subject to the control of a Core Party or both and which may be persons who have been identified as trial witnesses by another Core Party) whom it seeks to examine to obtain factual information/admissions relevant to the issues raised by the pleadings and any persons whose previously filed affidavits/witness statements have been designated by a Core Party as trial evidence, by serving a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or United States Federal Rule of Civil Procedure [30(b)(6)] on the solicitors of record for any other Core Party or the third party (or if not represented, by serving the notice directly on the third party). Each witness shall be named, his/her place of residence (if known) shall be identified and the subject matter upon which that witness is expected to testify shall be disclosed. All Core Parties shall have the right to ask questions of any witnesses who is designated by any party to be deposed but if more than one party designates the same witness that witness shall only be deposed one time.

All examinations to be completed by no later than July 29, 2013

Once all fact witnesses have been identified, a schedule will be set that contemplates the completion of all witness examinations (depositions, including any depositions for testimony preservation that the Court(s) may have granted leave to conduct, and cross examinations) in this time frame that reflects the practicalities of examining each witness

- 7 -

(having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness). Each examination shall be co-ordinated so that a lead examiner is identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness shall be examined for longer than 7 hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of all Core Parties.

Use of Depositions at Trial:

The transcript (or designated portions thereof) of any deposition may be filed as part of the evidence that any party may rely upon at trial (subject to objections which may be ruled upon by the Court as contemplated in section [8] hereof), except that testimony of a deponent who is employed by, party to a cooperation agreement with or otherwise under the control of a Core Party may not be relied upon as evidence by that Core Party or by others sharing its interests in the issue to which the testimony relates.

If a witness who has been deposed under is later called as a witness to give *viva voce* evidence at the trial, the transcript (or designated portions thereof) will still form part of the trial evidence and the entire transcript may also be used to impeach the witness or challenge his/her credibility.

Use of Cross Examinations at Trial:

If a witness who previously swore and affidavit or made a statement in these proceedings and whose prior evidence is designated by a Core Party to be tendered at trial is cross examined the entire cross examination transcript will form part of the trial evidence.

**C. General Procedure Applicable to all pre-trial examinations:**

Transcripts and video taping:

All examinations shall be taken under oath and transcribed and the transcripts made available to all Core Parties, whether or not they are in attendance at the examination. At the option of any examining party, the examination may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining party(ies) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

- 8 -

Objections:

Objections may be made on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), form, subsisting privilege and proportionality only. An objection to form shall not be made solely on the basis that a question is leading unless the deponent is employed by, party to a cooperation agreement with or otherwise under the control of the Core Party represented by the questioner. Questions that are objected to solely on grounds of relevance or form shall be answered under reserve of that objection. All other objections shall be preserved.

Requirement for Summons:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Estates and the Joint Administrators shall assist in issuing process or otherwise procuring a witness's attendance irrespective of which Core Party has sought the witness's deposition. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment to that jurisdiction for any other purpose.

Undertakings:

The witness shall answer any undertakings that were agreed to on his/her examination within two weeks of the date of his/her examination.

**7.**    **Experts**

**By no later than July 29, 2013**

Each Core Party that intends to rely on the opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

**By no later than August 28, 2013**

Each Core Party shall deliver an affidavit from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon [in attached exhibits].

Any Core Party that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial. If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

**By no later than September 17, 2013**

Each Core Party shall have the right to deliver an affidavit from an expert in response to one received by another Core Party that addresses an issue that is adverse to any position of the Core Party in this litigation. Responses shall be permitted even if the Core Party did not initially tender an expert's affidavit, if an issue is raised by an expert whose evidence is tendered by another party that calls for response.

**By no later than September 20, 2013**

Any Core Party who wishes to cross examine an expert whose affidavit has been tendered on an issue that is adverse to any position of the Core Party as raised by the pleadings in this litigation may serve notice of its intention to do so, regardless of whether or not that party has filed its own expert evidence.

**September 27, 2013**

A schedule will be set that contemplates the completion of all expert witness examinations between the notice date and this date that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness). Each examination shall be co-ordinated so that a lead examiner is identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of

questions. No single witness shall be examined for longer than [7] hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of all Core Parties.

The affidavits and transcripts of cross examinations of the experts shall be filed as evidence with the court at the trial, subject only to challenges to qualifications that may be made and determined at the outset of the trial and directions from the Court(s) arising therefrom. The Court(s) may, on its own initiative and/or at the request of any Core Party at the trial require the attendance of any expert at trial to answer further questions of the Court or counsel as the Court may determine necessary or appropriate.

Communications with Experts:

The experts shall not be examined about or asked to produce prior drafts of their affidavits/reports and/or their communications with counsel who retained them (although they may be asked to disclose the specific questions they were asked to answer and about their compensation even if that is part of a communication with counsel).

| | |
|---|---|
| **8.    Motions /Directions from the Court(s) Regarding Objections:** | **Effect of Objections:**<br><br>Objections by a Core Party to any request for documents or to any question asked on an oral examination, and that are not produced or answered, shall be treated as refusals and the objecting party shall be foreclosed from tendering into evidence any document or fact it objected to disclosing without leave of the Court(s) at trial, the granting of which must take into account any prejudice (which may include prejudice caused by delay or an adjournment that might be necessitated when deciding whether to grant any leave subsequently requested).<br><br>**Hearing(s) to be scheduled to take place by August 28, 2013**<br><br>Any Core Party who seeks to compel production of a document or an answer to a question objected to must do so by a challenge to the grounds for objection by serving a motion with supporting material, including legal argument/submissions returnable in the Court of residence of the Responding Core Party on 7 days notice on all other Core Parties, and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested.  The Core Party whose objection is challenged shall respond to this motion within 4 days and any other party whose interests are affected by the request may serve a supplementary response within 2 days thereafter.<br><br>The Court(s), applying the principles and procedures agreed upon in |

| | |
|---|---|
| | this Plan and, to the extent not provided for, the Rules applicable in that jurisdiction will provide such rulings and/or directions as it considers appropriate, which may include deferring the determination of the objection until the trial and/or a direction that a witness attend the trial if it is determined that a question objected to should be answered or a document is ordered produced that the witness should have been given the opportunity to testify about. |
| **9. General Terms** | Any Core Party may make a motion to the Court to compel another Core Party to take the steps contemplated by the Plan or other steps, and the Parties agree that the Court(s) may take the existence of the Plan into account in determining whether to grant the Order sought. The Respondent on such a motion may seek to justify its non-compliance with the Plan on the basis of, among other things, any information that was unknown or unavailable to that Party at the time the Plan was entered into.<br><br>Breach of this Plan does not, in and of itself, give rise to a right to damages or any other monetary relief, or to injunctive relief, although the Core Parties agree that the Court(s) may take any breach of this Plan into account in exercising discretion with respect to costs or other sanctions, or on an application for injunctive relief.<br><br>The Core Parties recognize that, as additional information becomes available throughout the litigation, it may become apparent that: (a) it is impracticable or impossible for a Core Party to comply with the terms of the Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Plan, are required in order for a Core Party to obtain access to relevant documents in the litigation. Each Core Party agrees to notify the other Core Parties promptly when it knows that it will not comply with any term of the Plan or when it concludes that another Core Party should take further steps beyond those set out in this Plan. The Core Parties agree to negotiate in good faith with respect to any amendments to the Plan requested by a Core Party on the basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Core Parties.<br><br>The Parties agree to attempt to resolve any disputes in the interpretation or implementation of the Plan with the assistance of the Court(s) at an informal case conference before taking any other procedural steps by way or motion or otherwise.<br><br>All motions or directions sought from the Court(s) pursuant to this Plan shall be brought to Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and/or Justice Morawetz of the Ontario Superior Court of Justice. |

- 12 -

Prepared and agreed upon by:

To be signed by Counsel of Record for each Core Party]

- 13 -

## SCHEDULE A

**Format for Exchange of Productions (including Paper (subject to the producing party's option not to produce electronically provided for in section 4) and Electronic Documents). Productions will be exchanged by Summation load file, with the following format and with the following field names:**

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| Document Numbering | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note text | Docid(s) attached to Parentid | AA0000001 |
| Fields/Coded Data for E-mails | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Bcc* | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents and attachments. | As per metadata |
| Fields/Coded Data for Attachments and Loose Electronic Documents | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents | As per metadata |

- 14 -

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| | | | and attachments. | |
| **Fields/Coded Data for Paper Documents** | *Docdate* | Date | Date of document (subjectively coded) | MM/DD/YYYY |
| | *Doctype* | Note Text | Type of document (subjectively coded) | |
| | *Doctitle* | Note Text | Title of document (subjectively coded) | |
| | *Attach#* | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | *Author* | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | *Recip* | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| **Fields/Coded Data for Paper and Electronic Documents (Chronological Review)** | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| | *Leadtime* | Time | Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together. Allows for further sorting of documents dated the same day by time | HH:MM:SS |
| **Redactions** | *Redact* | Note | Document has redactions | "Redacted" stamped on document |

1.    Each document shall be individually produced with a unique document ID number.

2.    OCR will be exchanged (OCR folder with text files and a control list).

3.    All images will be single page tiff format (excluding spreadsheets which will be provided in native format) with 300 dpi specifications.  Spreadsheets to be provided in edocs folder.

4.    Parties will provide the following load files formatted as follows:

    (a)    Image folder (single page tiff, 300 dpi);

    (b)    eDocs folder (for native files, specifically Excel which will not be tiffed);

    (c)    OCR folder (with text files and a control list for loading);

    (d)    data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

    (e)    imginfo.txt or imginfo.csv.

[ORDER SHOULD BE ENTERED BY BOTH COURTS]

**Ontario Superior Court of Justice — Commercial List Court File No. 09-CL-7950**
**United States Bankruptcy Court for the District of Delaware Court file No. 09-10138(KG)**

**RE: IN THE MATTER OF NORTEL NETWORKS CORPORATION ET AL**

# DISCOVERY PLAN

| | |
|---|---|
| 1. **Definitions** | Capitalized terms used herein and not otherwise defined shall have the meaning ascribed in the Joint Discovery Scheduling Order. |
| 2. **Applicable Procedural Regime:** | In accordance with the Cross Border Protocol, the Cross-Claims Protocol and the Allocation Protocol, the following procedural regimes apply:<br><br>(1) With respect to Allocation, the Cross-Border, Cross-Claims and Allocation Protocols apply to the extent not inconsistent with this Discovery Plan, and both the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario, the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court District of Delaware will apply as applicable.<br><br>(2) With respect to US Claims, the Cross-Border and Cross-Claims Protocols apply to the extent not inconsistent with this Discovery Plan, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court District of Delaware will apply as applicable.<br><br>(3) With respect to Canadian Claims, the Cross-Border Protocol, the Cross-Claims Protocols, the Claims Resolution Order, and the EMEA Claims Procedure Order apply to the extent not inconsistent with this Discovery Plan, the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario will apply as applicable. |
| 3. **Scope of Documentary Discovery Among Discovery Participants:** | *a)   Definition of Documents*<br><br>References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the Rules of Civil Procedure<br><br>*b) Reasonable Accessible Documents and Proportionality*<br><br>No Discovery Participant will b e required to sea rch data sources, including applications and databases, that it reasonably understands to already be in the possession, custody, or control of the Allocation Group, US Claim Party or Canadian Claim Party making the request. |

Each Discovery Participant will search only reasonably accessible data, which excludes data located in decommissioned applications and data that cannot be accessed without considerable burden, time or expense.

In light of the volume of the Debtors' hard copy documents maintained in off-site storage facilities, and the abundance of available and overlapping electronic data, no Discovery Participant will be obligated to search such documents, and rather will produce indices of such documents (to the extent they exist) and meet and confer in good faith regarding documents that will be made available for inspection upon request.

*c) Previously Produced Documents*

All documents produced into the Merrill Lextranet database for the purpose of the several mediations in this proceeding are to be treated as having been produced in the Allocation, US Claims and Canadian Claims litigation, and any Discovery Participant that does not already have such documents shall be provided access to this Merrill Lextranet database, subject to an appropriate confidentiality, protective and/or sealing orders from the Court(s) (as contemplated in the Discovery Scheduling Order) and a provision allowing the Discovery Participants to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this Discovery Plan.

*d)    No Waiver of Privilege*

The fact that a document has been produced by any Discovery Participant shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Discovery Participant who asserts privilege over the document), and any Discovery Participant who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a confidentiality or protective order.

*e)    Deemed Undertaking*

All of the Discovery Participants and their respective Representatives shall be deemed to have undertaken not to use any evidence or information obtained in the course of discovery (including document discovery and depositions) contemplated hereby for any purposes other than the Allocation, US Claims and Canadian Claims litigation.

*f)    Document Requests*

**By no later than April 19, 2013**

For Allocation, each Allocation Group shall be entitled to serve limited reasonable requests for production of non-privileged documents, such requests to represent the coordinated effort of all Core Parties within the Allocation Group, on each opposing Core Party; provided that the Bondholder Group, prior to

making such requests, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The deadline for serving document requests is April 19, 2013. The Core Parties who do not belong to any Allocation Group may suggest inclusions in the document requests of an Allocation Group with similarly aligned interests. Further, such Core Parties will have until April 26, 2013 to seek agreement with a Core Party from whom it seeks documents and failing agreement seek leave of the Courts to make additional document requests if it believes in good faith that such requests are necessary and non-duplicative.

For US Claims, the US Claims Claimant Group a nd US Claims Defendant Group shall be entitled to serve limited reasonable requests for production of non-privileged documents, such requests to reflect the coordinated effort of all parties in each such Claim Group, on each opposing US Claim Party and, solely with respect to the US Claims Defendant Group, on the Canadian Debtors, provided that any disputes between the US Claims Defendant Group and the Canadian Debtors regarding such discovery shall be resolved at a joint hearing of the Courts and the Canadian Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, the Canadian Claims Claimant Group and the Canadian Claims Defendant Group shall be entitled to serve limited reasonable requests for production of non-privileged documents, such requests to reflect the coordinated effort of all parties in each such Claim Group, on each opposing Canadian Claim Party and, solely with respect to the Canadian Claims Defendant Group, on the US Debtors, provided that any disputes between the Canadian Claims Defendant Group and the US Debtors regarding such discovery shall be resolved at a joint hearing of the Courts and the US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation Group and Claimant Group document requests. Further, either by agreement or failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional document requests upon a showing of good cause.

g)   *Interrogatories*

**By no later than April 19, 2013**

For Allocation, each Allocation Group shall be entitled to serve limited reasonable interrogatories, such interrogatories to represent the coordinated effort of all Core Parties within the Allocation Group, on each opposing Core Party; provided that the Bondholder Group, prior to serving such interrogatories, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The deadline for such interrogatories is April 19, 2013. The Core Parties who do not belong to any Allocation Group may suggest inclusions in the interrogatories of an Allocation Group with similarly aligned interests. Further, such Core Parties will have until

April 26, 2013 to seek agreement with a Core Party from whom it wishes to serve interrogatories and failing agreement, seek leave of the Courts to serve additional interrogatories if it believes in good faith that such interrogatories are necessary and non-duplicative.

For US Claims, the US Claims Claimant Group a nd US Claims Defendant Group shall be entitled to serve limited reasonable interrogatories, such interrogatories to reflect the coordinated effort of all parties in each such Claim Group, on each opposing US Claim Party and, solely with respect to the US Claims Defendant Group, on the Canadian Debtors, provided that any disputes between the US Claims Defendant Group and the Canadian Debtors regarding such discovery shall be resolved at a joint hearing of the Courts and the Canadian Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, the Canadian Claims Claimant Group and the Canadian Claims Defendant Group shall be entitled to serve limited reasonable interrogatories, such interrogatories to reflect the coordinated effort of all parties in each such Claim Group, on each opposing Canadian Claim Party and, solely with respect to the Canadian Claims Defendant Group, on the US Debtors, provided that any disputes between the Canadian Claims Defendant Group and the US Debtors regarding such discovery shall be resolved at a joint hearing of the Courts and the US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation Group and Claimant Group interrogatories. Further, either by agreement or failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional interrogatories upon a showing of good cause.

*h) Responses and Objections*

**By no later than May 10, 2013**

When objecting to any discovery request, the recipient of such discovery requests shall state the basis for objection, which may be made on any ground provided in the rules of the applicable procedural regime.  Recipients are strongly encouraged to prepare joint objections to the same document request or interrogatories to the extent their objections overlap.

**Rolling Productions of Documents Will Commence May 10, 2013 and Shall Be Completed by May 31, 2013:**

Subject to any objections made and sustained if challenged (see motions procedure below), each recipient of a document request shall produce any responsive non-privileged documents to any request made of it to all Discovery Participants by producing such documents into the Merrill Lextranet database (to the extent they overlap, responses to multiple requests may be combined or

cross-referenced to each other to avoid duplication).

In this same time frame, each Discovery Participant shall produce any further documents that they intend to rely upon at trial that are not already part of the mediation productions or responsive productions.

**Motions to Compel Document Productions Must Be Filed by June 7, 2013**

Any party who served document requests and who seeks to compel production of a document must do so by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on 7 days notice on all Core Parties, and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The party whose objection is challenged shall respond to this motion within 4 days and any other Core Party whose interests are affected by the request may serve a supplementary response within 2 days thereafter.

| | |
|---|---|
| 4. **Format of Production of Electronic Records:** | For each electronic document, the responding party shall provide the metadata specified in Schedule A [*NTD: Subject to confirmation that Merrill can support these fields*], but only to the extent they can reasonably be extracted or otherwise provided in a delimited text file. |
| 5. **Trial Witness Identification** | **By no later than June 7, 2013**<br><br>Each Discovery Participant shall identify any fact (non-expert) witnesses it intends to call at trial, by name, employer, title and functional role held during the time period relevant to their anticipated testimony. A Discovery Participant may identify trial witnesses at a later date provided that any opposing Allocation Group or Claim Group has had or will have a reasonable opportunity to depose the later-identified witness before trial.<br><br>Any Discovery Participant that has previously filed an affidavit or witness statement in the context of this litigation (the Ontario and Delaware proceedings) may also, at its option, choose to designate that evidence to be tendered at trial as long as the witness will be made available to be deposed and appears at trial for cross-examination.<br><br>Should a Discovery Participant wish to present evidence at trial from a witness who is not willing to swear an affidavit, such witness shall be identified at this same time, and leave of the Court(s) sought by the Discovery Participant seeking to rely on their evidence to take that witness's testimony by deposition (examination out of court) so as to preserve their testimony so it can be submitted by the Discovery Participant as evidence at trial. |
| 6. **Oral Examinations Or Depositions** | *a. Examinations of Representatives/30(b)(6) Depositions*<br><br>**By no later than June 14, 2013**<br><br>For Allocation, each Allocation Group (other than the Bondholder Allocation Group) may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil |

Procedure on the solicitors or counsel of record for any opposing Core Party specifying the topics, if any, on which that other Core Party's representative is to be examined/deposed.

For US Claims, the US Claims Claimant Group and the US Claims Defendant Group may each serve a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the counsel of record for any opposing US Claim Party specifying the topics, if any, on which the US Claim Party's representative is to be deposed.

For Canadian Claims, the Canadian Claims Claimant Group and the Canadian Claims Defendant Group may each serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure on the solicitors/counsel of record for any opposing Canadian Cl aim Party specifying the topics, if any, on which the Canadian Claim Party's representative is to be deposed.

<u>Use of (Discovery) Answers at Trial</u>

Testimony of representatives proffered in response to requests under Ontario Rule 31 and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure may be used as evidence at trial only by Discovery Participants whose interests are adverse to those of the proffering Discovery Participants on the issue for which the evidence is being used.

**By no Later than June 21, 2013**

Each Discovery Participant served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure shall designate a representative (who may, but is not required to be, a current or former officer, director or employee of that Discovery Participant) to be offered to be examined pursuant to Rule 31 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure as applicable. All Discovery Participants shall have the right to attend such depositions.

*b. Oral Examinations/ Deposition of Fact Witnesses:*

**By no later than June 14, 2013**

Each of (1) the Canadian Allocation Group and the Canadian Claims Defendant Group together; (2) the EMEA Allocation Group, the US Claims Claimant Group, and the Canadian Claims Claimant Group together; and (3) the US Allocation Group and the US Claims Defendant Group together may designate up to ten fact witnesses (which may be third parties, persons subject to the control of a Core Party or both and which may be persons who have been identified as trial witnesses by another Core Party, and any persons whose previously filed affidavits/witness statements have been designated by a Core Party as trial evidence) whom it seeks to examine to obtain factual information/admissions relevant to Allocation, US Claims or Canadian Claims, by serving a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or United States Federal Rules of Civil Procedure as applicable on the

solicitors or counsel of record for any other Discovery Participant or the third party (or if not represented, by serving the notice directly on the third party). Each witness shall be named, his/her place of residence (if known) shall be identified.

The Bondholder Group shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, regarding any fact witnesses it seeks to examine or depose. In the event that the Canadian Allocation Group and the US Allocation Group do not intend to designate such fact witnesses that the Bondholder Group seeks to designate, the Bondholder Group may seek leave of the Court or Courts, as applicable, by motion on notice to designate such fact witnesses.

Either by agreement or failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to designate additional fact witnesses upon a showing of good cause.

**All examinations to be completed by no later than July 19, 2013**

Once all fact and representative witnesses have been identified, the relevant parties shall attempt to agree on a deposition schedule that contemplates the completion of all witness examinations (depositions, including any depositions for testimony preservation that the Court(s) may have granted leave to conduct) in this time frame that reflects the practicalities of examining each witness (having regard to the number of Discovery Parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness). All Discovery Participants shall have the right to attend such depositions.

*c) Use of Depositions at Trial*

Designated portions of any deposition may be filed as part of the evidence that any party may rely upon at trial (subject to objections which may be ruled upon by the Court as contemplated in section [8] hereof), except that testimony of a deponent who is employed by, party to a cooperation agreement with or otherwise under the control of a Discovery Participant may not be relied upon as evidence by that Discovery Participant or by others sharing its interests in the issue to which the testimony relates.

If a witness who has been deposed under this Discovery Plan is later called as a witness to give *viva voce* evidence at the trial, the transcript (or designated portions thereof) will still form part of the trial evidence and the entire transcript may also be used to impeach the witness or challenge his/her credibility.

**7. Experts**

**By no later than July 3, 2013**

Each Discovery Participant that intends to rely on the opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

**By no later than August 2, 2013**

Each Discovery Participant shall deliver an affidavit or report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by Bates number if previously produced, and containing the disclosures required under Rule 26(a)(2)(B) of the United States Federal Rules of Civil Procedure regarding the expert's qualifications, prior engagements and compensation.

Any Discovery Participant that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial, subject to the requirements for an expert's attendance at trial set out below. If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

**By no later than August 30, 2013**

Each Discovery Participant shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another Discovery Participant that addresses an issue that is adverse to the Discovery Participant's position in the Allocation, US Claims, or Canadian Claims litigation. Responses shall be permitted even if the Discovery Participant did not initially tender an expert's affidavit, if an issue is raised by an expert whose evidence is tendered by another party that calls for response. Responsive reports shall be limited to responding to issues on which an affirmative expert report has been proffered and shall not go beyond such issues.

**September 27, 2013**

The Discovery Participants shall attempt to agree to a schedule that contemplates the completion of all expert witness examinations between the notice date and this date that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness).

A Core Party, or in the case of the Canadian Claims and the US Claims the relevant Discovery Participants, may request that any expert be present at trial for cross-examination, and the affidavit or report of any expert not appearing at trial if requested to appear cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the Expert's position.

The affidavits and/or reports shall be filed as evidence with the court at the trial, subject only to cross-examination at trial and any applicable objections that may

be made and determined at the outset of the trial and directions or rulings from the Court(s) arising therefrom. The Discovery Participant proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

Communications with Experts:

The experts shall not be examined about or asked to produce prior drafts of their affidavits/reports and/or their communications with the Discovery Participant who retained them or other Discovery Participants within the same Allocation or Claimant Group, or their respective Representatives.

With respect to Allocation and US Claims, Rule 26 of the United States Federal Rules of Civil Procedure applies to expert discovery.

| | |
|---|---|
| **8. General Procedure Applicable to All Oral Examinations/ Depositions** | Length of Oral Examinations/Depositions<br><br>Each oral examination/deposition may last for up to 7 hours (including only time spent on the record and excluding any breaks) except that any witness or representative noticed by multiple Allocation Group or Claim Groups may last up to 14 such hours. No single witness shall be examined for longer than 14 such hours in total without leave of the Court(s) or the agreement of the Discovery Participant represented by that witness. For the avoidance of doubt, the US Claims Defendant Group shall have the right to attend oral examinations/depositions that relate to the Canadian Claims, and the Canadian Claims Defendant Group shall have the right to attend oral examinations/depositions that relate to the US Claims.<br><br>Coordinating Oral Examinations/Depositions<br><br>Each examination shall be coordinated so that a lead examiner is identified for each group that noticed the oral examination/deposition (where an Allocation Group and Claimant Group from the same jurisdiction counts as one group). Lead examiners shall work in good faith with any other lead examiners as well as other affected Discovery Participants to reflect a coordinated effort to avoid duplication of questions.<br><br>Transcripts and video taping:<br><br>All examinations shall be taken under oath in the presence of a Canadian or US certified court reporter and transcribed and the transcripts made available to all Discovery Participants, whether or not they are in attendance at the examination. At the option of any examining party, the examination may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining party(ies) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their |

own copies.

Objections:

Objections may be made on any ground provided in the rules of the applicable procedural regime. Questions that are objected to on grounds other than privilege shall be answered under reserve of that objection. All other objections shall be preserved.

Requirement for Summons:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Estates and the Joint Administrators shall reasonably assist in issuing process or otherwise procuring a witness's attendance irrespective of which Discovery Participant has sought the witness's deposition. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment or consent to that jurisdiction for any other purpose.

Undertakings:

With respect to Allocation and Canadian Claims, the witness shall answer any undertakings that were agreed to on his/her examination within two weeks of the date of his/her examination, unless otherwise agreed to by the affected Discovery Participants.

| 9. General Terms | Any Core Party may make a motion to the Court to compel another Core Party to take the steps contemplated by the Discovery Plan or other steps, and the Parties agree that the Court(s) may take the existence of the Discovery Plan into account in determining whether to grant the Order sought. The Respondent on such a motion may seek to justify its noncompliance with the Discovery Plan on the basis of, among other things, any information that was unknown or not reasonably available to that Party at the time the Discovery Plan was entered into.

The Discovery Participants recognize that, as additional information becomes available throughout the Allocation, US Claims and Canadian Claims litigation, it may become apparent that: (a) it is impracticable or impossible for a Discovery Participant to comply with the terms of the Discovery Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery Plan, are required in order for a Discovery Participant to obtain access to potentially relevant documents. Each Discovery Participant agrees to notify the other Discovery Participants promptly when it knows that it will not comply with any term of the Discovery and Deposition or when it concludes that another Discovery Participant should take further steps beyond those set out in this Discovery Plan. The Core Parties agree to negotiate in good faith with respect to any amendments to the Discovery Plan requested by a Discovery Participant on that basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Discovery |

Participants.

All Discovery Participants shall meet and confer in good faith without the assistance of the Court(s) to resolve any disputes in the interpretation or implementation of this Discovery Plan. Discovery Participants are required to promptly seek relief from the applicable Court or Courts once an impasse has been reached in any dispute and shall not be heard to complain of any prejudice resulting from any delay.

All motions or directions sought from the Court(s) pursuant to this Discovery Plan shall be brought before the following Court or Courts: with respect to Allocation, before Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and Justice Morawetz of the Ontario Superior Court of Justice; with respect to US Claims, before Judge Gross; and with respect to Canadian Claims, before Justice Morawetz.

Prepared and agreed upon by:

To be signed by Counsel of Record for each Core Party

## SCHEDULE A

| Item | Field | Field Type | Description | Format |
|---|---|---|---|---|
| **Document Numbering** | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note Text | Docid(s) attached to Parentid | AA0000001 |
| **Fields/Coded Data for E-mails** | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Bcc* | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment. When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc. This field is required for loading electronic documents and attachments | As per metadata |
| **Fields/Coded Data for Attachments and Loose Electronic Documents** | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record. Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment. When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc. This field is required for loading electronic documents and attachments. | As per metadata |

12

| Fields/Coded Data for Electronic Documents (Chronological Review) | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronologicalsorting while keeping document families together | MM/DD/YYYY |
|---|---|---|---|---|
| | *Leadtime* | Date | Time of the parent document, populated to all attachments for use with chronologicalsorting while keeping document families together<br>Allows for further sorting of documents dated the same day by time | HH:MM:SS |

1.    Each document shall be individually produced with a unique document ID number.

2.    For each document, the responding party shall provide a text file containing the text extracted directly from the native electronic version of that document, unless the document was redacted, is an image file, is a scanned hardcopy document, or is in another format from which text cannot be reasonably extracted.  In these instances, provide a text file created using optical character recognition (OCR) to the extent reasonably practicable.

3.    All images will be single page tiff format (excluding spreadsheets which will be provided in native format) with 300 dpi specifications.  Spreadsheets to be provided in the eDocs folder.

4.    Parties will provide the following load files formatted as follows:

    (a)    Image folder (single page tiff, 300 dpi);

    (b)    eDocs folder (for native files, specifically Excel which will not be tiffed);

    (c)    OCR folder (with text files and a control list for loading);

    (d)    data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

    (e)    imginfo.txt or imginfo.csv.

5.    If a document and its exact duplicates are associated with the same custodian, the responding party may withhold the exact duplicates from production.  If a document and its exact duplicates are associated with different custodians, the responding party may withhold the exact duplicates from production and provide a metadata field for the produced document indicating the custodians for whom duplicates were withheld.

US DEBTORS -- MARCH 19, 2013

**Proposed Litigation Timetable**

Pursuant to the US Court's and Canadian Court's Orders approving the Allocation Protocol, the Cross-Border Protocol, the Cross-Border Claims Protocol, and to facilitate resolution of the claims brought by the UK Pension Claimants, it is hereby ordered:[1]

| Due Date / Time | Step in Allocation | Step in Litigation | Step in Other Related Claims |
|---|---|---|---|
| March 19 | | | Monitor delivers Notices of Disallowance of all claims delivered by the Joint Administrators against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 21(e) of the EMEA Claims Procedure Order dated January 21, 2011. Monitor delivers Notices of Disallowance of all claims delivered by the UK Pension Claimants against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 13(e) of the Claims Procedure Resolution Order dated September 16, 2010. |
| Present through April 1 hearing | The Core Parties to negotiate in good faith to try to come to agreement on a Discovery Plan. | | |
| April 1, or as soon thereafter as the Courts are available | Hearing before both Courts to approve an agreed upon Discovery Plan or, absent agreement, for directions or court orders concerning finalization of a Discovery Plan. | | |

---

[1]    Capitalized terms shall have the meaning ascribed to them in Annex A.

| Due Date 2013 | Steps Involving Time | Steps re Claims | Steps Canadian Court & Time |
|---|---|---|---|
| April 2 | | | The EMEA Debtors and the UK Pensions Claimants to deliver Dispute Notices pursuant to paragraphs 25 of the EMEA Claims Procedure Order and paragraph 17 of the Claims Procedure Resolution Order, respectively with reasonable particularity, the relief sought, material facts relied upon and legal bases for the challenges to the disallowances of claims being advanced at the Joint Hearing ordered by the Ontario Superior Court of Justice. |
| April 12 | The US Debtors and the UCC collectively, the EMEA Debtors and the Joint Administrators collectively, the Canadian Debtors collectively, the Monitor collectively, and the Bondholder Group shall each file and serve a "Motion for Approval of Allocation Position of [•]" which will set out with reasonable particularity the relief sought with respect to Allocation, the material facts relied upon, and the legal bases for such position. Any other Core Party may submit a "Motion for Approval of Allocation Position of [•]," but must do so by | | |

| Trigger Date 2/15 | Step in US Action | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| | | this date. | |
| April 12 | | The US Claims Defendant Group shall file and serve their responses to the US Claims. | |
| April 19 [base date] | Deadline for service of limited reasonable requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group. | Deadline for service of limited reasonable requests for production of non-privileged documents in accordance with the Discovery Plan by the US Claims Claimant Group and the US Claims Defendant Group. | Deadline for service of limited reasonable requests for production of non-privileged documents in accordance with the Discovery Plan by the Canadian Claims Claimant Group and the Canadian Claims Defendant Group. |
| April 19 [base date] | Deadline for service of limited reasonable interrogatories in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group. | Deadline for service of limited reasonable interrogatories in accordance with the Discovery Plan by the US Claims Claimant Group and the US Claims Defendant Group. | |
| April 19 [base date] | Deadline for the Core Parties to agree upon a Confidentiality Order and file motions with the applicable Court or Courts seeking approval of such Confidentiality Order. | | |

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| April 26 [base date + 7 days] | Deadline for Core Party who is not in one of the Discovery Groups, and who seeks to serve document requests and/or interrogatories that are non-duplicative of those document requests and/or interrogatories already served by the Discovery Groups, to seek leave of the Court to serve such non-duplicative document requests and/or interrogatories if prior to this time, such Core Party has been unable to reach agreement with the Core Party on whom it seeks to serve the non-duplicative document requests and/or interrogatories after meeting and conferring with such Core Party in good faith. | | |
| May 10 [base date + 21 days] | Deadline for responses and objections to document requests and objections to interrogatories in accordance with the Discovery Plan. | | |
| May 10 [base date + 21 days] | Subject to any objections, deadline for the recipients of document requests to commence the rolling production of documents in accordance with the Discovery Plan. | | |
| May 31 [base date + 42 days] | Production of documents to be completed in accordance with the Discovery Plan. | | |
| June 7 [base date + 49 days] | Deadline to file motions to compel and/or motions for a protective order with respect to document discovery. Notwithstanding this deadline, when a dispute arises, the affected Core Parties shall promptly attempt to resolve any discovery disputes in good faith and once an impasse is reached, file any motions with the relevant Court(s) promptly. | | |
| June 7 [base date + | Deadline for identification by each | Deadline for identification by each | Deadline for identification by each |

| Due Date/Deadline | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| 49 days] | Core Party of their anticipated affiants as (non-expert) trial witnesses and for designations of which (if any) of that Core Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with Discovery Plan. | US Claim Party of its anticipated affiants as (non-expert) trial witnesses and for designations of which (if any) of that US Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with Discovery Plan. | Canadian Claim Party of its anticipated affiants as (non-expert) trial witnesses and for designations of which (if any) of that Canadian Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with Discovery Plan. |
| June 14 [base date + 56 days] | Deadline for each of the Canadian Allocation Group, the EMEA Allocation Group, and the US Allocation Group to serve on any opposing Core Party the topics on which that Core Party's representative is to be examined or deposed in accordance with the Discovery Plan. | Deadline for each of the US Claims Claimant Group and the US Claims Defendant Group to serve on any opposing Claim Party and the Canadian Claims Defendant Group the topics on which that Claim Party's representative is to be deposed pursuant to Rule 30(b)(6) in accordance with the Discovery Plan. | Deadline for each of the Canadian Claims Claimant Group and the Canadian Claims Defendant Group to serve on any opposing Claim Party and the US Claims Defendant Group the topics on which that Claim Party's representative is to be examined in accordance with the Discovery Plan. |
| June 14 [base date + 56 days] | Deadline for parties to designate witnesses to be examined or deposed. Each of (1) the Canadian Allocation Group and the Canadian Claims Defendant Group together; (2) the EMEA Allocation Group, the US Claims Claimant Group, and the Canadian Claims Claimant Group together; and (3) the US Allocation Group and the US Claims Defendant Group together may designate up to ten (10) fact witnesses for examination or deposition in accordance with the Discovery Plan. | | |
| June 21 [base date + 56 days] | Deadline for each Core Party to identify its representative for oral examination or deposition. | Deadline for each US Claim Party (other than the Committee) to designate a representative for a deposition pursuant to Rule | Deadline for each Canadian Claim Party to designate a representative for an examination. |

| Due Date | Step in Plan | Step in Process | Step in Dispute Resolution Terms |
|---|---|---|---|
| | | 30(b)(6). | |
| July 3 [base date + 75 days] | Deadline to identify experts and the subject matter of their reports in accordance with the Discovery Plan. | | |
| July 19 [base date + 91 days] | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions. | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any Rule 30(b)(6) depositions. | Deadline to complete witness depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within three weeks of each examination), in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to representative party examinations. |
| August 2 [base date + 105 days] | Deadline for service of expert reports (including exhibits) in accordance with the Discovery Plan. | Deadline for service of expert reports (including exhibits) in accordance with the Discovery Plan. | |
| August 30 [base date + 133 days] | Deadline for service of responding experts' reports (including exhibits) in accordance with the Discovery Plan. | | |
| September 27 [base date + 161 days] | Deadline to complete deposition of experts in accordance with the Discovery Plan. | | |
| October 11 [base date + 175 days] | Deadline to file motions in limine. | | |
| October 11 [base date + 175 days] | Deadline for filing of opening written submissions with the Courts. Such submissions will include<br>a) Pre-trial briefs; | | |

6

| Time Periods | Sched in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| | b) All fact affidavits to be used as party's direct testimony; | | |
| | c) List of all exhibits each party intends to rely on as part of direct case | | |
| Week of October 14 [if the courts desire] [base date + 178 days] | Pre-Trial Conference(s) –<br><br>By this date, the Core Parties shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial;<br><br>b) the contents of document briefs for use at the Joint Hearing.<br><br>By this date, the Core Parties also shall have identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest and served and filed all affidavits and reports to be relied upon as that party's direct evidence (including examination in chief) about Allocation.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a | Pre-Trial Conference(s) –<br><br>By this date, the US Claim Parties and the Canadian Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial;<br><br>b) the exhibits for use at the Joint Hearing.<br><br>By this date, the US Claim Parties also shall have identified the portions of transcripts of depositions relied upon by a party of adverse interest and served and filed all affidavits and reports to be relied upon as that party's direct evidence (including examination in chief) about the US Claims.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and | Pre-Trial Conference(s) –<br><br>By this date, the Canadian Claim Parties and the US Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial;<br><br>b) the contents of document briefs for use at the Joint Hearing.<br><br>By this date, the Canadian Claim Parties also shall have identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest and served and filed all affidavits and reports to be relied upon as that party's direct evidence (including examination in chief) about the Canadian Claims.<br><br>All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain |

7

| Date/Date 2013 | Step/Litigation | Step US Claims | Step Canadian Claims |
|---|---|---|---|
| | particularized and document-by-document basis. | retrieval unless objected to by this date on a particularized and document-by-document basis. | of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |
| October 28 – November 15 | The US and Canadian courts will (a) hold simultaneously (i) hearings before the US and Canadian courts regarding Allocation, (ii) hearings before the Canadian Court on the merits of any remaining US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining Canadian Claims, provided, however, that the US and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only the US Claims or only the Canadian Claims, and (b) issue their respective decisions on (i), (ii), and (iii). | | |

Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the US Court through the filing of a certification of counsel and to the Canadian Court through the filing of a letter from the Monitor to Justice Morawetz. Any Core Party may also file a motion with the applicable Court or Courts to modify this Litigation Timetable upon a showing of good cause.

WITH RESPECT TO ALLOCATION:

JUDGE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT

JUSTICE GEOFFREY MORAWETZ
ONTARIO SUPERIOR COURT OF JUSTICE

WITH RESPECT TO THE US CLAIMS:

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT

WITH RESPECT TO THE CANADIAN CLAIMS:

JUSTICE GEOFFREY MORAWETZ
ONTARIO SUPERIOR COURT OF JUSTICE

# ANNEX A

## DEFINITIONS

Capitalized terms used in this Litigation Timetable but not otherwise defined in this Annex A shall have the meanings ascribed to them in the [•].

UK Pension Claimants:  The Trustee of the NNUK Pension Plan and the Board of the Pension Protection Funds.

Directors and Officers:  Former directors and officers of NNC and NNL.

Core Parties:  The Debtors, Committee, Bondholder Group, Monitor, Joint Administrators, CCC, Indenture Trustees, UK Pension Claimants, and Directors and Officers.

US Claims:  Claims made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor against any or all of the US Debtors, and claims made by the UK Claimants against any or all of the US Debtors.

Canadian Claims:  Claims made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor against any or all of the Canadian Debtors, and claims made by the UK Pension Claimants against NNC and NNL.

Canadian Allocation Group:  The Canadian Debtors, the Monitor, and the CCC.

EMEA Allocation Group:  The EMEA Debtors and the UK Pension Claimants.

US Allocation Group:  The US Debtors and the Committee.

Bondholder Allocation Group:  The Bondholder Group.

Allocation Group:  Any of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, or the Bondholder Allocation Group.

US Claims Claimant Group:  The EMEA Debtors and/or Joint Administrators or any other administrator of an EMEA Debtor who made claims against any or all of the US Debtors, and the UK Pension Claimants who made claims against any or all of the US Debtors.

US Claims Defendant Group:  The US Debtors against whom the US Claims Claimant Group has brought claims and the Committee.

US Claim Party:  Any party in the US Claims Claimant Group or the US Claims Defendant Group.

Canadian Claims Claimant Group:  The EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor who made claims against any or all of the Canadian Debtors, and the UK Pension Claimants who made claims against NNC and NNL.

Canadian Claims Defendant Group:  The Canadian Debtors against whom the Canadian Claims Claimant Group has brought claims.

Canadian Claim Party:  Any party in the Canadian Claims Claimant Group or the Canadian Claims Defendant Group.

Claim Group:  Any of the US Claims Claimant Group, the US Claims Defendant Group, the Canadian Claims Claimant Group, or the Canadian Claims Defendant Group.

Discovery Plan:  The Discovery Plan that will be entered by the Courts.

Discovery Participant:  Any Core Party or party of the US Claims Claimant Group, the US Claims Defendant Group, the Canadian Claims Claimant Group, or the Canadian Claims Defendant Group who is participating in discovery pursuant to the Discovery Plan.

Representatives:  Directors, officers, employees, attorneys, accountants, experts, consultants, financial advisors, or agents of any of the Core Parties, US Claim Parties, or Canadian Claim Parties.

11

# TAB 4



155 Wellington Street West
Toronto ON  M5V 3J7
dwpv.com

March 19, 2013

Robin B. Schwill
T 416.863.5502
rschwill@dwpv.com

File No. 227188

**BY E-MAIL**

Jay A. Carfagnini
Goodmans LLP
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON   M5H 2S7

Dear Mr. Carfagnini:

**Nortel Networks Corporation, et al.; Court File No.:  09-CL-7950 Litigation Timetable and Discovery and Deposition Plan (the "Litigation Plan")**

We are in receipt of the Monitor's draft litigation schedule (which, in turn, attaches a discovery and deposition plan) which was provided by you in the afternoon on Friday, March 15, 2013. We also note that your e-mail indicates that you would like to report to the Court by this Wednesday, March 20, 2013, and therefore requested the input of the Core Parties before then.

As you know, we are co-counsel to one of the competing Nortel estates, being the EMEA Debtors, and, therefore, one of the three main Core Parties in these proceedings.  On our review of the proposed Litigation Plan we know that we will have numerous and substantive comments to provide to you, but obviously need to coordinate any formal response with our clients.  As we appreciate and share the desire to advance these proceedings as quickly as possible, we will be providing you with a detailed and substantive response as soon as possible for us which we anticipate being this Friday.

Tor#: 2957661.1

DAVIES WARD PHILLIPS & VINEBERG LLP

In the interim, we respectfully request that the proposed Litigation Plan (or any revision thereof) not be provided or otherwise presented to the Court without first considering our response.

Yours very truly,

Robin B. Schwill

RBS/dh

cc:     Matthew Gottlieb (*Lax, O'Sullivan Scott Lisus LLP*)
        Kevin Lloyd and John Whiteoak (*Herbert Smith Freehills LLP*)

DAVIES WARD PHILLIPS & VINEBERG LLP

# TAB 5



**CASSELS BROCK**

L A W Y E R S

March 19, 2013

VIA E-MAIL and REGULAR MAIL

dward@casselsbrock.com
tel: 416.869.5960
fax: 416.640.3154

Goodmans LLP
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario, M5H 2S7

Attention: Jay Carfagnini

Dear Mr. Carfagnini:

Re:    **Nortel Networks Corporation et al**
       **Court File No. 09-CL-7950**

We acknowledge receipt of your email to the Parties of Friday March 15, 2013 at 3:56 pm.

There are a number of points to be made in response to the Monitor's proposed litigation timetable and discovery and deposition plan. We do not, in the two working days in which we have been asked to respond, offer detailed comments, but rather draw the Parties' attention to some of the fundamental issues in relation to what is now proposed.

**Inclusion of UK Pension Claims in Process**

1.     The Monitor's litigation schedule envisages a process that addresses Allocation, the claims of the Joint Administrators (the "Joint Administrators") of the EMEA Debtors against the Canadian Debtors, and the claims of the Trustee and the PPF (together, the "UKPC") against the Canadian Debtors.

2.     In his endorsement of March 8, 2013, Mr. Justice Morawetz approved an Allocation Protocol that was "to be based on the Protocol presented on the original return date, namely June 7, 2011, and [was] not to be based on the Protocol presented during arguments on March 7, 2013." The version of the Allocation Protocol approved provides that creditor claims, including intercompany claims (but excepting the Joint Administrator claims), "are not governed by the Allocation Protocol".

3.     The UKPC's claims are, consequently, not part of the process due to be tried with the Allocation Dispute. The Monitor's proposed litigation timetable is inconsistent with this.

**Cassels Brock & Blackwell LLP**    2100 Scotia Plaza, 40 King Street West, Toronto Canada  M5H 3C2
tel 416.869.5300   fax 416.360.8877   www.casselsbrock.com



CASSELS BROCK
L A W Y E R S

Page 2

4.    As you know, the UKPC's submission at the March 7 hearing was that it would be more efficient and cost-effective for all parties if the Allocation Dispute were addressed first, before the UKPC's claims were dealt with. We were therefore in favour of the adoption of an Allocation Protocol that excluded the UKPC Claims, as in fact has happened.

5.    If the Monitor wishes the ruling to be changed, then it will be necessary to apply by Motion to Justice Morawetz and indeed for a similar Motion to be filed in the US before Judge Gross.

6.    If the Judges are content to grant such Motions, then the Monitor's Litigation Timetable and accompanying draft Discovery and Deposition Plan will need some substantial revision. We list below some high level, in principle, objections to the current draft, together with some immediately apparent impracticalities. Should the Court decide in due course to involve our claims in this process these would need to be addressed. These in principle objections and examples of impracticalities are advanced without prejudice to our clients' position that the current ruling by the Court does not provide for their claims to be dealt with as part of this process.

**In principle objections if UKPC Claims are to be Included**

*Notice of Disallowance*

7.    The Monitor's timetable provides for the Monitor to deliver, on March 19, a Notice of Disallowance pursuant to paragraph 13(e) of the Claims Resolution Order of Justice Morawetz dated September 17, 2010 in respect of the UKPC's amended proofs of claim **filed two and a half years ago**, on November 30, 2010.

8.    The form of the Notice of Disallowance appended to the Claims Resolution Order provides for a potentially summary standard form claims disallowance. In contrast, the UKPC's amended proof of claim runs to 49 pages and is accompanied by five expert reports, 16 fact witness affidavits, and many thousands of pages of supporting documents. In these circumstances we have repeatedly sought assurances that the Monitor intends to deliver a substantive and reasonably particularized form of response to the UKPC claims. The litigation timetable appears to us to provide no such commitment.

9.    However the litigation timetable does provide that the UKPC are to file, two weeks after service of the Notice of Disallowance, by April 2, 2013, a Dispute Notice "...and incorporate into their pleading [on the Allocation dispute]...with reasonable particularity, the relief sought, material facts relied upon and legal bases for the challenges to the disallowances of claims being advanced...".



CASSELS BROCK
L A W Y E R S

10.   In short, the proposal seems to contemplate a process in which, after two and a half years, the UKPC receive a summary disallowance to which they are then expected to respond with a particularized pleading within two weeks. This is despite the fact that they have had no disclosure of relevant information first requested in November, 2010.

11.   The first step in the process should be for the Monitor to file a properly pleaded response to the UKPC's amended proof of claim which identifies the legal bases for its position on the relevant issues and gives sufficient particularity in relation to the facts to make it meaningful. If the Monitor wishes the UKPC's claims to be included in this process this is the only fair way to proceed; the pleadings will reveal what issues are in dispute and accordingly assist in the discovery process.

*The involvement of Core Parties in the UKPC's Claims*

12.   There are 13 Core Parties in the Monitor's litigation protocol. The only party who should respond to the UKPC's claims is the Monitor. The other Core Parties sought and were granted Core Party status for the purposes of participating in the Allocation Process that was addressed by Justice Morawetz in his March 8 endorsement. To the extent that other parties wish, the Monitor should collate comments from those other parties and incorporate their points in its own properly pleaded response.

13.   This would also be more efficient and desirable from the Court's point of view, by focussing on two parties' pleadings rather than (potentially) 13 parties' pleadings, evidence and submissions. The alternative indication (that the UKPC should respond to 13 separate parties) is unfair (and also impossible in practical terms within the period suggested).

14.   The same point applies to the treatment of evidence (both factual and expert) in relation to the UKPC's claims. Depositions and cross-examination of witnesses and experts in connection with the claims should be conducted only by the Monitor and the UKPC as the parties directly interested in the resolution of the UKPC's claims. There is no provision as you know in the CCAA for the type of claims procedure contemplated by the Monitor's suggestions. To the extent other Core Parties wish to put questions to witnesses proffered by the UKPC, they should channel such questions through counsel for the Monitor.

15.   If the UKPC's claims are to be included in the same process as the Allocation Dispute and the Joint Administrators' claims, then self-evidently the UKPC need to be party to negotiations about the timetable and process. They are not currently identified, for example, as all other Core Parties are, as needing to participate in a negotiation about a Discovery and Deposition Plan. We might add that neither are EMEA.



CASSELS BROCK
L A W Y E R S

Page 4

**Impracticalities and omissions in what is proposed**

16.    We acknowledge that the Monitor has tried to make some constructive suggestions for how the process might be addressed. However, there are a number of important, practical, respects in which the proposal is not workable in its current form.

17.    As an overriding point, if both the Joint Administrators' claims and the UKPC's claims are to be addressed in the same process, along with the Allocation Dispute, the current timetable is unworkable. The Monitor has sensibly indicated that there may be slippage in the timetable when parties are genuinely unable to make the deadlines suggested. We can say now that the proposed schedule will be bound to require extension and our very firm view is that it would be better to start out by fixing a schedule that was realistic. We recognize that all parties wish for these matters to proceed speedily. We take this opportunity to point out that the UKPC are the **only** parties paying their own costs of this litigation and there is accordingly no possible desire on the part of our clients to prolong this matter or to increase costs. Having said this, the current schedule simply cannot accommodate all the issues and evidence that will need to be transacted if the UKPC's claims are to be included.

18.    We note below some immediate examples of why the proposed timetable does not work.

(a)    The parties cannot sensibly engage in the discovery process, or agree on what witnesses are required, until the ambit of the dispute has become clear through the service of pleadings.

(b)    There is accordingly a need for the Monitor to begin this process by delivering a detailed and substantive response to the UKPC claims as indicated above, and we anticipate that it will need some time for this. The US Debtors will need to do the same in respect of the UKPC's detailed claim filed in the US Bankruptcy Court.

(c)    There will similarly need to be an adequate amount of time for the UKPC to consider the substantive responses by the Monitor and the US Debtors to the UKPC's claims in order that discovery can be targeted.

(d)    There is currently no place in the timetable for the UKPC to file a Reply to the Monitor's (and the US Debtors') objections to their claims (although this is contemplated in the Discovery and Deposition Plan). By any standard the time for the UKPC to do this needs to be material, especially having regard to the fact that the Monitor has had extensive information about the UKPC's claims for two and a half years and the US Debtors have had similar detail about the UKPC's claims against them for more than six months.



CASSELS BROCK
L A W Y E R S

(e) We note that the Merrill database is dealt with in the Discovery Plan under the heading "Previously produced documents". You will be aware that the UKPC have **never** been granted access to the database and the current timetable does not provide any date by which they will be given access. This is despite repeated attempts at securing the agreement of the other parties to the UKPC's having access on acceptable terms. As other Core Parties have had access since the outset to the Merrill database, which we understand contains some 40,000 documents, and the UKPC have so far had none, sufficient time will have to be built into the timetable in order to provide the UKPC with a fair and reasonable opportunity for this material to be digested and analysed.

(f) There is no reference in the Discovery Plan to access to the other databases maintained for the sales of the Nortel Group's businesses which would be expected to have information that is relevant to the issues in the Allocation Protocol. As you know, the UKPC have never had access to this information.

(g) A period of 20 days is clearly insufficient for any party to file responding expert witness reports.

**Other Considerations**

19. As indicated, we are writing to you today to accommodate your request for a response by Wednesday, March 20, 2013. We are consulting with our clients in the U.K. and our colleagues in the U.S. and if appropriate will provide additional comments in due course. We reserve our clients' rights accordingly.

20. We note that the draft litigation timetable contemplates a possible Court hearing next Wednesday, March 27, 2013. Please note that the UKPC's Canadian counsel are out of the country on that day. We are however generally available at any time after March 27, 2013.

21. In closing, we understand that the Monitor intends to report to the Court tomorrow. We would be grateful if the Monitor's report could include a copy of this letter and, in the meantime, would be pleased to discuss any of this with you further.

Yours truly,

David Ward
DSW/mjc
CC      - Service List (by email)

# TAB 6

**Oliveira, Jessica**

| | |
|---|---|
| **From:** | Galasso, Enza on behalf of Carfagnini, Jay |
| **Sent:** | Wednesday, March 20, 2013 8:42 AM |
| **To:** | 'dward@casselsbrock.com' |
| **Cc:** | 'derrick.tay@gowlings.com'; 'katie.parent@gowlings.com'; 'jennifer.stam@gowlings.com'; 'nortel.monitor@ca.ey.com'; 'lbarnes@osler.com'; 'esellers@osler.com'; 'ahirsh@osler.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca'; 'zychk@bennettjones.com'; 'orzyr@bennettjones.com'; 'finlaysong@bennettjones.com'; 'swanr@bennettjones.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'akaplan@kmlaw.ca'; 'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com'; 'lily.harmer@paliareroland.com'; 'tina.lie@paliareroland.com'; 'Shayne.kukulowicz@fmc-law.com'; 'Michael.wunder@fmc-law.com'; 'ryan.jacobs@fmc-law.com'; 'bleonard@casselsbrock.com'; 'dward@casselsbrock.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca'; 'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; Arthur Jacques; 'thomas.mcrae@shibleyrighton.com'; 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'mgottlieb@counsel-toronto.com'; 'sheryl.seigel@mcmillan.ca'; 'jmarshall@blgcanada.com'; 'chill@blgcanada.com'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'jbromley@cgsh.com'; 'lschweitzer@cgsh.com'; 'jopolsky@cgsh.com'; 'hzelbo@cgsh.com'; 'tdemarinis@torys.com'; 'sbornhof@torys.com'; 'sblock@torys.com'; 'agray@torys.com'; 'aslavens@torys.com'; 'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; 'sawilson@heenan.ca'; 'fhodara@akingump.com'; 'tkreller@milbank.com'; 'jharris@milbank.com'; 'APisa@milbank.com'; 'michael.riela@lw.com'; 'elamek@blgcanada.com'; 'Ken.Coleman@AllenOvery.com'; 'Laura.Hall@AllenOvery.com'; 'dabbott@mnat.com'; 'acordo@mnat.com'; 'bburden@casselsbrock.com'; 'chorkins@casselsbrock.com'; Zarnett, Benjamin; Myers, Fred; Kimmel, Jessica; Pasquariello, Joe; Carfagnini, Jay |
| **Subject:** | Nortel Networks Corporation, et al.; Court File No.: 09-CL-7950 |
| **Attachments:** | Letter dated March 19, 2013.pdf |

Please see attached letter.

Kindest regards.

**Jay A. Carfagnini**
Goodmans LLP

416.597.4107
jcarfagnini@goodmans.ca

Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7
goodmans.ca

# Goodmans LLP

Barristers & Solicitors

Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Telephone: 416.979.2211
Facsimile: 416.979.1234
goodmans.ca

Direct Line: 416.597.4107
jcarfagnini@goodmans.ca

March 19, 2013

Our File No.: 083800

**Delivered Via E-Mail (dward@CasselsBrock.com)**

David Ward
Cassels Brock & Blackwell LLP
Scotia Plaza
2100 - 40 King Street West
Toronto, ON   M5H 3C2

Dear Mr. Ward:

**Re:    Nortel Networks Limited, et al.**

Receipt of your letter dated March 19, 2013 is acknowledged.  As requested, we will be
providing a copy of your letter to the Hon. Justice Morawetz together with copies of our client's
suggested draft schedule and this response.

The Monitor dealt with the hearing of the claims of your clients, the NNUK Pension Trustees
and the PPF, in paragraph 30 of its factum for the June, 2011 hearing and again in paragraph 8 of
its Supplementary Submissions for the March 7, 2013 hearing.  It is the Monitor's understanding
that the Courts have determined that your clients' claims will be dealt with as part of the
upcoming joint hearing and that this is the only way to ensure the just, least expensive and most
expeditious resolution of the issues between and among all of the parties.  Recognizing the
substantial overlap of the factual and legal issues advanced by your clients and by the Joint
Administrators of the EMEA estates, at the March 7, 2013 hearing, you expressly sought to
ensure that your clients would be Core Parties in the joint hearing and the Courts have agreed to
your request.  As such, your clients will be bound by the outcome on the factual and the legal
issues.  If your clients wish to advance their claims, they must now do so at the joint hearing.

You raise a number of issues about scheduling, seemingly designed to extend the time now so as
to avoid the need for extensions of time later.  We do not think that this is the right approach.  In
light of the Courts' determination that the matter is to be heard in the fall, we have drafted a
timetable to meet the time available.  As you note in your letter, your clients have already
delivered affidavits and experts' reports in support of their claims.  It appears that your clients
have had very substantial access to information, documents and witnesses over a lengthy period
of time.  It does not appear that your clients need time for discovery that cannot be
accommodated in the existing schedule.  It is the Monitor's view that the parties should make

\6184770.3

# Goodmans LLP

good faith efforts to meet the hearing dates specified by the Courts and not delay on the basis of hypothetical problems that have not occurred.

We also note that your suggestion concerning the process of disallowance and pleading would reverse the burden of proof which is and remains on your clients. Nothing in the Claims Resolution Order dated September 16, 2010 supports the process that you are suggesting for disallowing a claim or contesting a disallowance. The burden of proof is and remains on the creditors at all times.

Finally, while you express concern about the involvement of other Core Parties in the joint hearing, it is quite normal in CCAA proceedings and, we understand, in Chapter 11 proceedings, for significant creditors to have roles in the claims processes. While the large number of parties may place logistical burdens upon all counsel, we believe the Courts will expect counsel to coordinate their efforts to minimize the burdens that this may place on the process that the Courts have ordered.

The Monitor has been directed to coordinate input from the parties concerning a proposed schedule and thanks your clients for their participation. The Monitor continues to be of the view that the just and convenient determination of your clients' claims requires that they be heard with the claims brought by the other EMEA claimants and the allocation issue. Your clients chose to rely on the facts and legal issues raised by the Joint Administrators and you argued the case on the basis that your clients must be Core Parties on the resolution of those very issues. It is not just, convenient, expeditious, economical or fair to deal with your clients claims separately at some later stage.

Yours very truly,

**Goodmans LLP**

Jay Carfagnini

JC/
c:      Core Party Service List

\6184770.3