DAVIES

DAVIES WARD PHILLIPS & VINEBERG LLP

155 Wellington Street West
Toronto ON M5V 3J7
dwpv.com

March 23, 2013

Robin B. Schwill
T  416.863.5502
rschwill@dwpv.com

File No.  227188

**BY E-MAIL**

Jay A. Carfagnini
Goodmans LLP
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

Dear Mr. Carfagnini:

**Nortel Networks Corporation, et al. - Court File No. 09-CL-7950**

We write in response to the letter of March 20, 2013, from Mr. Carfagnini to Mr. Justice Morawetz providing the litigation timetable proposed by the Monitor and the Canadian Debtors (the "Monitor's Letter" and "Monitor's Proposal" or "Proposed Timetable"), and to the letter of March 21, 2013 from Mr. Bomhof to Mr. Justice Morawetz providing a counterproposal by the US Debtors (the "US Debtors' Letter" and "US Debtors' Proposal").  Like the US Debtors, we will cause notice and a copy of this letter to be filed with Judge Gross. We understand that the Monitor will provide a copy to Mr. Justice Morawetz.

The EMEA Debtors have several concerns regarding the Monitor's and US Debtors' Proposals, and grave doubts regarding whether issues of this scope and complexity can be properly and fairly addressed within the timetable and procedure proposed.  We are, however, eager to achieve a resolution of this dispute and, to that end, will attempt to work with the Monitor, the US Debtors, and other interested parties to achieve a fair and workable procedure, while reserving our rights to object and seek appropriate relief should such a procedure prove unduly burdensome or otherwise unworkable.

It is important to consider that while all the parties, including the EMEA Debtors, wish for the disputes to be resolved as quickly as possible and in a reasonable manner, any schedule must reflect that there are dozens of separate disputes and claims, these matters are highly complex, they involve dozens of parties and deal with approximately $9 billion in total. As a result, procedural fairness to all parties is fundamental to any proposed schedule and the procedures set.

The Monitor's Proposal and the US Debtors' Proposal each lay out an extremely unrealistic schedule for discovery and a hearing with specific proposed dates and deadlines, many of which conflict.  Each Proposal also addresses the content and scope of particular aspects of the

Tor#: 2958635.2

discovery process. In light of the number of complex and conflicting aspects of each Proposal, we will not attempt to address each in detail here. Instead, we have attempted to identify aspects of each Proposal that should be modified and reconciled to create the foundation for a workable discovery plan, and aspects of each to which we strongly object in concept.

We are available to discuss these issues, including the particular dates proposed, and believe that the parties should meet to try to finalize a plan rather than proceed by further exchange of letters and motions. As you will recall, the Monitor agreed to negotiate these issues with the EMEA Debtors in good faith (see letter dated March 8, 2011). As a result, it would be inappropriate for the Monitor and Canadian Debtors to attempt to schedule a motion on March 27 to deal with the Proposed Timetable, before efforts were made to meet to discuss these matters in good faith. Further, any motion on such an important matter must be dealt with on proper notice and with proper materials, and sufficient time that will allow all parties to file the necessary materials in response.

Given the timing of these matters, we are providing you with this response entirely without prejudice to our rights to appeal the ruling of the Courts regarding the proper jurisdiction and forum of the allocation dispute. This letter is not a waiver or submission to the Courts' jurisdiction on the allocation issue and shall not be taken as such.

1. <u>Staggered Proceedings for Allocation and Claims</u>

As the US Debtors point out, the Monitor's Proposal does not properly take into consideration that there are at least 3 distinct processes that need to be dealt with (Canadian Claims Process, US Claims Process and Allocation). Although we agree that it is desirable to attempt to coordinate the separate proceedings as much as practicable, there are meaningful distinctions between the three processes, and it would be inappropriate to deprive any party of a right or protection that it is entitled to under the relevant law and Rules of the jurisdiction in which the dispute is to be heard. Like the US Debtors, we believe that it is important, and a more efficient process will be achieved, if the Courts and parties take into account the differences among the three processes in crafting a litigation plan. The US Debtors' Proposal does so to some extent, during discovery, but nonetheless contemplates a single hearing to address the Canadian Claims Process, the US Claims Process, and Allocation. This does not consider that there are issues that should be dealt with by the Canadian and US Court separately and that not all Core Parties have standing regarding the EMEA Claims in Canada and the US. We will need to discuss how the hearings can be dealt with and arranged in a logical and efficient manner.

2. <u>Allocation Position Statements</u>

We agree with the US Debtors and with the Monitor that all Core Parties should exchange statements reflecting their positions on allocation early in the process. We do not object to submitting such statements prior to discovery, so that discovery may be appropriately targeted. Obviously, these statements may need to be modified and amended as further information is made available through disclosure and examinations.

Tor#: 2958635.2

3. Discovery

    (a) Discovery Disputes

Neither Proposal provides an efficient means for the presentation and resolution of the discovery disputes that are certain to arise. As part of our discussions, we should consider how these disputes can be dealt with in an efficient and timely manner.

    (b) Documents

As to document discovery, we agree that it should proceed promptly, but object to the extensive, unreasonable limits that the Proposals seek to place on it. It is unfair, procedurally wrong and unnecessary to limit requests for the production of documents pre-emptively, for example, as the Monitor's Proposal purports to do. Each party must be entitled to obtain documents relevant to its claims and allocation position.

As you know, the Merrill Lynch database is limited and does not constitute a proper disclosure of documents regarding the disputes. It does not, in any way, reach the disclosure of documents that would be met by a proper affidavit of documents type process. The Core Parties should simply serve their requests on an agreed-upon date, and the parties should agree to accept such service from all other parties. Any objections to the scope can be made once the requests are received. To accelerate the process, the timeline for objections can be shortened: seven (7) days, not fifteen (15) should be sufficient.

    (c) Depositions

The Proposals on depositions are fundamentally unfair and unworkable. In a case of this magnitude and complexity, with the number of parties and separate claims involved, it is simply not reasonable to limit depositions of a witness to seven (7) hours, as the Monitor proposes. The parties seeking to participate in each deposition should coordinate to the extent possible, but the sheer numbers involved make such an hour limit impractical in this case. For example, pre-emptively imposing such a short and strict hour limit is also likely to increase the chance of discovery disputes during and after the deposition, as parties compete for such limited time or seek to recall witnesses to address issues they lacked time to raise.

Nor should the parties be limited to just ten (10) depositions, to be shared among groups of entities whose interests may or may not be fully aligned. As with documents, those seeking depositions should be permitted to serve their deposition notices, with duplication and objections to be resolved as they arise. The compressed timetable will itself provide incentive to tailor the number of depositions without the need for an artificial numerical limit (and the time-consuming process of obtaining consensus among potentially diverse groups) to be pre-emptively imposed.

Further, given the number of separate claims of the EMEA Debtors, the number of EMEA Debtors, the fact that allocation and EMEA Claims are to be dealt with under the Proposed Timetable, it is inappropriate that all of the EMEA Debtors are given the right to examine only

one representative of the Canadian or US Debtors for discovery regarding their respective claims, as the Monitor proposes.

The proposal that all fact depositions be completed within four or five weeks in June and July also is also wholly unrealistic. The logistics of coordinating among all parties and all witnesses in such a short period of time makes it extremely unlikely that depositions can be completed in the time allotted, particularly when many of the deponents are likely to be third-party witnesses whose schedules must be taken into account. Such difficulties are likely to be particularly problematic where non-party witnesses are located outside the U.S. and Canada.

(d) Expert Discovery

Given the number and nature of sale proceeds allocation issues and claims issues, expert reports and expert testimony are an essential part of these proceedings. The EMEA Debtors believe that the parties will be best able to clarify and narrow the issues for trial if they have adequate time to prepare, review and respond to expert reports – which the Proposals do not provide. The Proposals suggest a schedule for expert discovery that is artificially compressed and far too tight to permit adequate development of expert testimony. For example, the Monitor calls for all responding reports to be served within 20 days of receiving the initial reports, and for all expert depositions to be completed within 10 days thereafter. Providing no time to properly review and reply to what will be voluminous amounts of information imposes a substantive lack of procedural fairness on all parties, their witnesses and experts. We are willing to discuss a more feasible schedule, but believe the processes proposed thus far will result in substantial delay and lack of clarity.

4. Witnesses

The EMEA Debtors do not agree with the suggestion that the parties shall identify who they expect to call as witnesses early in the process prior to disclosure and examinations.

The attempt to limit each party to two fact witnesses at trial is improper. As set out above, the trial(s) concern highly complex factual and legal matters and deal with billions of dollars in claims. The two-witness limit does not take into account that each of the 19 EMEA Debtors advanced separate claims against both the US and Canadian Debtors as well as having separate allocation claims.

As a matter of fairness and proper procedure, each party must be entitled to call the witnesses and evidence it considers necessary and appropriate to prove its case. It is also premature to attempt to limit the number of witnesses before the parties have submitted their statements of position on allocation or claims to be tried and undertaken discovery and depositions. Similarly, the EMEA Debtors do not agree to the proposal that direct testimony be taken by affidavit.

5. <u>Applicable Rules</u>

As the EMEA Debtors have previously addressed, we are deeply concerned that the unprecedented procedures contemplated by a cross-border hearing on the allocation and claims issues creates a substantial risk of inconsistent and unenforceable judgments, and makes trial of these claims unfairly complex, burdensome, and uncertain, even if the Courts and Core Parties make every effort to avoid such a result, as we expect they will.

It may alleviate some of those risks, and some of the EMEA Debtors' concerns, if it were clear in advance what rules would govern critical procedural issues. Although the Monitor and US Debtors are both eager to proceed in this fashion, neither has truly wrestled with the most challenging issue: what are the rules of procedure and evidence at trial? How will conflicts be resolved? Clarity on these points is essential, as the parties otherwise may unknowingly compromise the evidence that they proposed to tender, including expert evidence and reports. The same jurisdictional issues need to be addressed in connection with all discovery and disclosure matters and, especially, on any related discovery disputes. Whose laws apply under what circumstances and for what purposes needs to be sorted out in advance.

6. <u>Meet</u>

As mentioned at the outset, we believe that the best way to proceed is for us to meet in order to discuss these issues and determine whether or not something can be worked out before having to resort to the court for further directions.

Yours very truly,

Robin B. Schwill

cc.     Matthew Gottlieb (*Lax, O'Sullivan Scott Lisus LLP*)
        Kevin Lloyd and John Whiteoak (*Herbert Smith Freehills LLP*)
        Scott Bomhof (*Torys LLP*)

Tor#: 2958635.2