**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x
                                                           :  Chapter 11
*In re*                                                    :
                                                           :  Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                         :
                                                           :  Jointly Administered
        Debtors.   :
                                                           :  Hearing date: April 2, 2013 at 10:00 a.m. (ET)
                                                           :
                                                           :  RE: 9224
                                                           :
---------------------------------------------------------- x

# DECLARATION OF MARK M. HAUPT, SR.

I, Mark M. Haupt, Sr., declare as follows:

1. I am a member of the Official Committee (the "Retiree Committee") of Retired Employees of Nortel Networks Inc., *et al.* (the "Debtors"). I respectfully submit this declaration based upon personal knowledge to serve as my direct testimony in support of the Debtors' motion for entry of orders approving the Debtors' settlement agreement with the Retiree Committee. (*See* Debtors' Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105, 363 and 1114 and Fed. R. Bankr. P. 9019 (A) Approving Settlement Notification Procedures and, Subsequently, (B) Approving a Settlement Agreement with the Official Committee of Retired Employees (the "Settlement Motion") Docket No. 9224.)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

2. I worked for the Debtors for almost twenty-seven years. I began my career at Nortel in 1981 as a specialist and became a Product Line Manager in 1989. In 1995, I became Nortel's Director of Wireless Customer Service for the European and Asian Markets. In 1998, I relocated and became Director of Customer Service for the United States Market. I served Nortel in that capacity until 2005, after which I worked as Nortel's Director of Federal Services until I retired in 2007. I am eligible to receive health, life insurance and long-term care retiree benefits from the Debtors.

3. After my retirement from Nortel I founded Converged Services, LLC, a company that delivers information technology professional services in the federal and state government marketplace. I am now the President of Converged Services and live in Raleigh, North Carolina. In addition to running my business, I am an officer or board member of several community and charitable organizations. I am a veteran of the U.S. Air Force and, in 1995, I earned an M.B.A. degree from Duke University.

<u>The Retiree Committee's Negotiations with the Debtors</u>

4. I have been an active participant in all of the Retiree Committee's work since its inception. The U.S. Trustee appointed me to the five-member Retiree Committee in August 2011 when the Committee was first formed. The Retiree Committee retained counsel and benefits professionals to assist it, requested documents and information from the Debtors through counsel and began negotiations with the Debtors. The Committee had its first all-day meeting with the Debtors on October 6, 2011.

5. The Retiree Committee's negotiations with the Debtors proved to be extremely challenging. The Debtors initially moved the Court for authority to terminate retirees' health, long-term care and life insurance benefits ("Retiree Welfare Benefits") in June 2010 without offering to pay retirees any compensation – the Debtors

asserted that they had an absolute, unqualified right to terminate Retiree Welfare Benefits at will. Given this starting position, the Debtors did not at first make settlement offers that the Retiree Committee believed to be a fair resolution of their claims.

6. In March 2012, the Debtors asked the Court to appoint distinguished bankruptcy lawyer Richard Levin as a mediator to assist the parties in reaching a settlement. The Debtors, the Retiree Committee and other parties in interest spent a great deal of time discussing their positions with the mediator and then met for a marathon negotiating session at the mediator's law firm. Even with the mediator's assistance, however, a settlement could not be reached.

7. On July 30, 2012, almost a year after the Retiree Committee was formed, the Debtors made a second motion asking the Court for authority to terminate Retiree Welfare Benefits, though this time they offered a settlement payment of approximately $36 million (the "Second Termination Motion").

8. The Retiree Committee opposed the Second Termination Motion, and litigation began in earnest. The parties served extensive requests for documents and information through the formal discovery process and went to Court to resolve scheduling and discovery disputes. At the same time that litigation was proceeding, however, the parties continued to negotiate.

9. The Retiree Committee ultimately reached an agreement with the Debtors on the essential terms of a settlement in principle. A formal settlement agreement was then negotiated and signed as of December 28, 2012. The Debtors' Settlement Motion asks the Court to approve this settlement agreement (the "Settlement Agreement"), which I support as a member of the Retiree Committee.

10. The Retiree Committee has issued a Statement in support of the Settlement Agreement (the "Statement"), which I have read and agree with, and which I attach to this Declaration as Exhibit "1". Pursuant to Court order, the Statement was sent on or before February 1, 2013 to approximately 4,600 retirees and beneficiaries whom the Debtors identified as potentially entitled to receive Retiree Welfare Benefits (the "Retirees"). (*See* Order Granting Debtors' Motion for Entry of an Order Approving Form and Methods of Notice of Hearing to Consider Settlement Agreement with the Official Committee of Retired Employees (the "Notice Procedures Order"), Docket No. 9324.)

<u>The Retiree Committee's Efforts To Inform Retirees about the Settlement</u>

11. After the Debtors filed their Settlement Motion on December 31, 2012, and after entry of the Notice Procedures Order, the Retiree Committee and its advisors began an extensive effort to provide Retirees with information about the Settlement Agreement. That effort, which is described in more detail in the Retiree Committee's Statement in further support of the Settlement Agreement (the "Statement in Further Support"), included:

- Posting information concerning the Settlement Agreement on the Retiree Committee's web site;
- Mailing information concerning the Settlement Agreement and the procedure for objecting to it to approximately 4,600 eligible retirees and beneficiaries;
- Responding to more than 1,000 telephone calls and emails from retirees or their beneficiaries after the Settlement Motion was filed;

4

- Conducting "town hall" meetings which more than 600 people attended and more than 900 people listened to by telephone. I participated in the "town hall" meeting in Raleigh, North Carolina.

12. A copy of the Retiree Committee's Statement in Further Support, which I have read and agree with, is attached to this Declaration as Exhibit "2."

13. In addition, I understand that the Debtors served notice of the Settlement Agreement on the Retirees and published notice of the Agreement in 11 newspapers throughout North America.

Approval of the Settlement Agreement

14. As a member of the Retiree Committee, I have spent seventeen months and countless hours in negotiation sessions with the Debtors, in meetings with my fellow Committee members either in person or telephonically, in consultation with the Retiree Committee's counsel and other professionals, and in evaluating the relevant facts. The Retiree Committee has worked hard to obtain the best deal for our fellow retirees that we could obtain. Consistent with the Retiree Committee's Statement, I support the Settlement Agreement that the Court has been asked to approve for four main reasons.

15. First, I think the Retiree Committee negotiated the best compromise it could obtain after seventeen months of negotiations and litigation. The Retiree Committee was unable to obtain replacement group life insurance or group long-term care insurance, and its replacement group health insurance options were limited to a single program that will not be offered because the "Election Threshold" was not met. The Settlement Agreement does, however, require the Debtors to pay approximately $67 million for Retirees to use for purchases of replacement medical insurance or for reimbursement of eligible medical expenses.

5

16. Further, the Debtors fought hard at every step of the way. They have always maintained, and still maintain in their Settlement Motion, that they have an absolute right to terminate retiree welfare benefits without paying compensation to Retirees. When the Debtors made their first motion to terminate benefits, they offered retirees nothing, and even in their Second Termination Motion, they offered retirees only about half of what Retirees will receive under the Settlement Agreement. I believe that, to have a chance of obtaining a larger settlement, the Retiree Committee and the Nortel retiree community would be forced to litigate.

17. Second, I support the Settlement Agreement because further litigation would present very real risks. If the Settlement Agreement is not approved and the Debtors reinstate their Second Termination Motion, Retirees could receive less than half of the Settlement Agreement payment unless they convince the Court in litigation that they are entitled to more. Considerations of privilege and confidentiality prevent me from making a detailed statement about the risks of litigation, or the advice the Retiree Committee received from counsel, the mediator and other sources, but it is obvious that the risk of litigating against the Debtors – as well as against the creditors' committee, bondholders and others who seek to limit the Debtors' payments to Retirees – would be very substantial.

18. Third, I support the Settlement Agreement because it distributes the available settlement funds in a way that is fair and, in my view, the best means of meeting the needs of the Retirees. Subject to Internal Revenue Service approval, the Debtors' settlement payment will be distributed in a tax-advantaged manner that will give retirees considerable flexibility in determining how to spend their allocated shares. In my experience, all or substantially all retirees have medical expenses that they will be able to use the Debtors' settlement money to pay.

19. Fourth, I think it is very important that, after all of the efforts the Retiree Committee has made to inform 4,600 Retirees about the Settlement Agreement, there have been only seven objectors, only four of whom are actually Nortel retirees. These objections are addressed in the Retiree Committee's Statement attached as Exhibit "2".

20. For these reasons, I believe the Court should approve the Settlement Agreement.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Raleigh, North Carolina
       March 28, 2013

                                                   */s/ Mark Haupt*
                                                  Mark M. Haupt, Sr.