# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.*,[1]

          Debtors.

------------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: April 2, 2013 10:00 a.m. (ET)**

Re:  D.I. 9224, 9225, 9285, 9324, 9387, 9429, 9447, 9561, 9562, 9591, 9638, 9654, 9645, 9659

## DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 1114 AND FED. R. BANKR. P. 9019 APPROVING A SETTLEMENT AGREEMENT WITH THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), respectfully submit this reply (the "Reply") in further support of, and in reply to the responses (collectively, the "Responses") of certain Retirees[2] and others (the "Objectors")[3] to, the *Debtors' Motion for Entry of Orders Pursuant to 11 U.S.C. §§*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2] For purposes of this Reply, "Retirees" include the Debtors' retired employees, their surviving spouses, domestic partners and eligible dependents, and current employees of the Debtors (including, for the avoidance of doubt, LTD Employees) who may be eligible for benefits under the Retiree Welfare Plans.

[3] Seven (7) Objectors have filed timely Responses to the Settlement Motion, including the *Objection to the Settlement Motion*, filed by Ronald Elias [D.I. 9285] ("Elias Response"), *Objections to the Settlement Motion*, filed by Thomas L. Cherry [D.I. 9387, 9429, 9447 and 9659] ("Cherry Responses"), *Objections to the Settlement Motion*, filed by John Yoakum [D.I. 9562 and 9591] ("Yoakum Responses"), *Objection to the Settlement Motion*, filed by Buddy J. Collins [D.I. 9561] ("Collins Response"), *Objection to the Settlement Motion*, filed by Robert Horne [D.I. 9654] ("Horne Response"), *Objection to the Settlement Motion*, filed by Sherman V. Hawkins [D.I. 9645] ("Hawkins Response") and *Objection to the Settlement Motion*, filed by Walter A. Reva [D.I. 9638] ("Reva Response").

*105, 363 and 1114 and Fed. R. Bankr. P. 9019 (A) Approving Settlement Notification Procedures and, Subsequently, (B) Approving a Settlement Agreement with the Official Committee of Retired Employees* [D.I. 9224] (the "<u>Settlement Motion</u>").[4]

1. As this Court is aware, in December 2012, after approximately a year and a half of vigorous and at times contentious negotiations and Court-ordered mediation, the Debtors reached a settlement with the Retiree Committee on the terms of a proposed consensual termination of the Retiree Welfare Plans. Under the terms of the proposed Settlement Agreement, the Debtors would terminate the Retiree Welfare Plans as of May 31, 2013, and would pay the Retiree Committee $66,879,000 in full and final settlement of all claims related to the Retiree Welfare Plans, to be allocated by the Retiree Committee or its Successors among the holders of Retiree Claims.[5] Holders of Retiree Claims would release the Debtors and others from further liability on account of the Retiree Claims. The Retiree Committee, working with its legal and financial advisors, has developed an Apportionment Methodology that the Debtors understand will be universally and consistently applied to all eligible Retirees.

2. On January 23, 2013, this Court entered the *Order Granting Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1114 and Fed. R. Bankr. P. 9019 Approving Form and Methods of Notice of Hearing to Consider Settlement Agreement with the Official Committee of Retired Employees* [D.I. 9324] (the "<u>Notification Procedures Order</u>"), which approved certain noticing procedures related to the proposed Settlement Agreement. As contemplated by the Notification Procedures Order, the Debtors and the Retiree Committee have

---

[4] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Settlement Motion.

[5] In the event the Debtors and the Retiree Committee agree in writing to extend the Termination Date to June 30, 2013, the Settlement Amount would be reduced by $707,000 per month for each month between May 31, 2013, and the ultimate Termination Date that is agreed upon by the Parties. In the event the Settlement Agreement does not become effective, the Parties' rights are reserved as to the Debtors' ability to terminate the Retiree Welfare Plans and any liability they may incur for such termination.

2

published the Publication Notice in 11 newspapers and mailed notice of the proposed settlement to more than 4,500 Retirees. The Debtors understand that the Retiree Committee also has held "town hall" style information sessions to further explain the proposed settlement to the Retirees and has directly communicated to a large number of individual Retirees as well.

3. While the Debtors understand that termination of the Retiree Welfare Plans may result in hardship for certain individual Retirees, in entering into the Settlement Agreement, the Debtors have balanced the importance of the Retiree Benefits to the Retirees and their families against the reality that continuing to provide the Retiree Benefits is simply no longer practicable or feasible where the Debtors' operations have been reduced to only those most basic functions essential to complete their wind down and bankruptcy process. The Debtors believe that the terms of the Settlement Agreement provide the Retirees with a fair and reasonable settlement and will help to facilitate transition for the Retirees to alternative arrangements following the termination of the Retiree Welfare Plans. The fact that only seven individuals have filed Responses to the proposed settlement, as compared to the thousands of individuals who will be impacted by the Settlement Agreement, demonstrates that the strong majority of the Retirees similarly have concluded that the Settlement Agreement treats them fairly and equitably.

4. The Responses raise three categories of objections to the Settlement Agreement, some of which are related to the Objectors' particular circumstances. First, the Elias, Cherry and Collins Responses argue that the Settlement Agreement should not be approved in its current form because doing so would cause them personal hardship or be less beneficial than an alternative structure. Second, the Yoakum, Hawkins and Reva Responses assert that their proofs of claim filed against the Debtors for Retiree Benefits should not be expunged by the Settlement Agreement because they are not Retirees and cannot participate in the Settlement Agreement.

Finally, the Horne Response asserts that Mr. Horne should be treated as a Retiree entitled to receive a distribution under the Settlement Agreement, notwithstanding his voluntary decision to terminate his medical coverage with the Debtors more than two years ago and prior even to the Debtors' first motion to terminate Retiree Benefits in June 2010.

5. None of these arguments provide a valid basis for declining to approve the Settlement Motion and the Settlement Agreement proposed thereunder, including the releases of the Debtors and the disallowance of certain claims as an integral part of the settlement. Accordingly, as discussed in detail below, the Debtors respectfully submit that the Responses should be overruled and that the Settlement Motion should be granted.

A. **THE SETTLEMENT AGREEMENT TREATS ALL RETIREES FAIRLY AND EQUITABLY**

6. The Elias, Cherry and Collins Responses make the argument that the Settlement Agreement should not be approved in its current form because doing so would either cause them personal hardship, or it would be more beneficial to them if the settlement took another form. Specifically, the objection filed by Mr. Elias states only that it "will be a hartship [*sic*] on my current situation." See Elias Response. Mr. Cherry objects to the Settlement Agreement on the basis that the settlement funds will be distributed to the Retirees through the use of health reimbursement accounts ("HRA"), rather than cash payments made to eligible Retirees.[6] Mr. Cherry argues that his portion of the Settlement Amount should not be distributed to him through an HRA because he already has health insurance provided to him by the United States military, and thus an HRA is of no value to him. See Cherry Responses. Mr. Collins objects to the Settlement Agreement on the basis that the Settlement Amount is unsatisfactory and that Retirees

---

[6] The Retiree Committee had solicited interest in the establishment of an alternative medical plan in lieu of the establishment of individual HRAs. The Retiree Committee informed the Debtors that insufficient Retirees voted in favor of such alternative insurance and therefore, distributions will instead be provided through individual HRAs.

are being "defrauded" since the Retiree Welfare Plans are being terminated on May 31, 2013, and Retirees already have paid premiums for coverage through the end of the year.  See Collins Response.

7.      While these Responses raise concerns with the manner in which the specific distribution proposed by the Retiree Committee affects them personally, they do not provide a basis for concluding that the settlement as memorialized in the Settlement Agreement is inadequate or unfair.  The Settlement Agreement is a fair compromise that treats all of the Retirees equitably, and is in the best interests of both the Retirees and the Debtors.  The resolution of the Debtors' liabilities with respect to the Retiree Welfare Plans is a crucial step toward the Debtors' successful wind down.  The Settlement Agreement represents a balanced solution for the termination of the Retiree Welfare Plans and is the result of months of good faith, arm's-length negotiation and voluminous informational and document discovery.  Although Mr. Elias, Mr. Cherry and Mr. Collins express concern that the Settlement Agreement does not adequately address their specific interests, no settlement will be a perfect fit for every Retiree and the Settlement Agreement is fair and equitable to the Retirees as a whole.

8.      When negotiating a settlement that will affect more than 4,000 people, it is simply not possible to craft a solution that will be ideal for each individual's unique situation.  However, both the Debtors and the Retiree Committee were represented by experienced and competent counsel and financial advisors who worked tirelessly to represent the interests of all of their constituents.  Both parties also recognized certain risks in their litigation positions and the compromise embodied in the Settlement Agreement reflects the compromise of such positions taken into account by both the Debtors and the Retiree Committee.  While Mr. Elias and Mr. Collins may feel the Settlement Amount to be insufficient, it should be noted that the Debtors

previously sought to terminate the Retiree Welfare Plans for a far smaller settlement payment than the current Settlement Amount, and absent approval of the Settlement Agreement, would seek a non-consensual termination of the Retiree Welfare Plans on the same or similar terms.

9. Furthermore, although Mr. Cherry would prefer a cash payment of his portion of the Settlement Amount, rather than a distribution through an HRA, it is not likely that Mr. Cherry's situation is representative of the vast majority of Retirees. If the Settlement Amount were not distributed to the Retirees through an HRA, the distributions to Retirees would be subject to various taxes, which would greatly diminish the funds available to Retirees to fund payments needed for alternative health coverage and medical expenses.

10. Lastly, Mr. Collins raises a general objection about the "deductibles provided in the plan" in light of the proposal to terminate the Retiree Welfare Plans in May or June rather than year end. See Collins Response. While it is not clear which "deductible" Mr. Collins refers to, the terms of the Retiree Welfare Plans were available to Retirees at the time of renewal for this year and the Debtors' intention to seek termination of such plans prior to year end was repeatedly disclosed, including in such renewal documents and as evidenced by the earlier filed motion seeking to terminate the Retiree Welfare Plans. Moreover, upon the termination of the Retiree Welfare Plans, the Debtors have made arrangements with their vendors so that the Retirees will no longer receive bills for any premiums relating to the Retiree Welfare Plans. To the extent that any Retiree makes a premium payment after the Retiree Welfare Plans are terminated, those payments will be refunded. While it is understandable that individual Retirees may prefer longer healthcare coverage, the Debtors first sought termination of the Retiree Welfare Plans in 2010, and most recently sought termination of the Retiree Welfare Plans by the end of 2012. It was an important aspect of the Debtors' decision to enter into the settlement with

the Retiree Committee rather than pursue a non-consensual termination that the Retiree Welfare Plans be terminated and the Debtors be relieved of their obligations to oversee the Retiree Welfare Plans at this time.

11.     For these reasons, as well as the reasons provided in fuller detail in the Settlement Motion, the Debtors submit that the Settlement Agreement is a reasonable compromise between the Debtors and the Retiree Committee that treats all Retirees fairly and equitably, and it should be approved.

B.     **THE CONTESTED PROOFS OF CLAIM SHOULD BE EXPUNGED**

12.     The Yoakum, Hawkins and Reva Responses argue that since the Objectors are not Retirees, their proofs of claim filed against the Debtors for Retiree Benefits should not be expunged in connection with the approval of the Settlement Agreement. Mr. Yoakum, Mr. Hawkins and Mr. Reva each were eligible to retire from the Debtors in the past and chose not to do so. Rather, according to Nortel's books and records, Mr. Yoakum chose instead to pursue alternative employment with Avaya and Mr. Hawkins and Mr. Reva with GENBAND. Because Mr. Yoakum, Mr. Hawkins and Mr. Reva did not move immediately from actively-at-work status to immediate commencement of retirement from the Debtors in accordance with the terms of the Retiree Welfare Plans, they are no longer eligible to retire and receive Retiree Benefits under the Retiree Welfare Plans, even if these plans were not terminated.[7]

13.     Having made the decision not to retire, they cannot sustain claims against the Debtors, particularly in light of the termination of the Retiree Welfare Plans and the compromise

---

[7]     Notably, pursuant to the terms of the asset sale agreements governing the sale of the Debtors' Enterprise Solutions Business to Avaya (the "Enterprise Sale Agreement") and the sale of the CVAS business line to GENBAND (the "CVAS Sale Agreement"), transferred employees, such as Mr. Yoakum, Mr. Hawkins and Mr. Reva, would be eligible to participate in Avaya and GENBAND's employee benefit plans and would be credited for their years of service at the Debtors for purposes of benefit eligibility. See Enterprise Sale Agreement § 7.1.2 [D.I. 1514]; CVAS Sale Agreement § 7.1.2 [D.I. 2632].

7

and release of all such claims through the Settlement Agreement. Therefore, Mr. Yoakum, Mr. Hawkins and Mr. Reva no longer possess valid claims against the Debtors for Retiree Benefits and their claims for the loss of Retiree Benefits can and should be disallowed at this time.

14. As part of the Debtors' willingness to agree to the substantial consideration being paid to the Retiree Committee pursuant to the Settlement Agreement, it was essential to the Debtors that the proposed settlement fully and finally resolve claims against the Debtors under the Retiree Welfare Plans and relating to the provision of the Retiree Benefits. Mr. Yoakum, Mr. Hawkins and Mr. Reva waived their right to future Retiree Benefits, and alternatively to a claim for lost Retiree Benefits, when they chose not to participate in the Retiree Welfare Plans. Since they have no further claim against the Debtors in this regard, their proofs of claim should be fully or partially disallowed to the extent they assert Retiree Claims.

C.     **MR. HORNE IS NOT ENTITLED TO RETIREE BENEFITS**

15. Mr. Horne objects to the Settlement Agreement on the grounds that while he previously voluntarily terminated his Retiree Benefits, he should not be penalized for doing so and should have a right to participate in any proceeds under the Settlement Agreement. See Horne Response. Mr. Horne's argument, besides being legally baseless, is inconsistent with the contemporaneous records at the time he discontinued participating in the Retiree Welfare Plans. In his Response, Mr. Horne suggests his decision to drop medical coverage – made over seven months before the Debtors filed a motion seeking to terminate the Retiree Welfare Plans – was based on his concerns about the future of the Debtors' benefit plans, and a possible loss of benefits; however, contemporaneous communications suggest he actually based his decision on the availability of lower cost alternative insurance. See E-mail from Robert Horne to Kim Pulliam, dated October 29, 2009, attached to the *Declaration of John J. Ray III in Further Support of Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1114*

*and Fed. R. Bankr. P. 9019 Approving a Settlement Agreement with the Official Committee of Retired Employees* (the "<u>Ray Declaration</u>") as <u>Exhibit 1</u>. Mr. Horne voluntarily dropped his Retiree Benefits because he made a calculated decision that he could get better coverage for less money by electing to get coverage under Medicare. According to the terms of the Retiree Welfare Plans, Mr. Horne is not eligible to be reinstated in the Retiree Welfare Plans. It is clear from his Response that Mr. Horne is not interested in being reinstated in the Retiree Medical Plan and was informed of that at the time he dropped coverage. Mr. Horne also lacked sufficient years of service to be eligible for life insurance or long-term care benefits. <u>See</u> Letter from Ruth A. Hillis to Robert Horne, dated February 16, 2001, attached to the Ray Declaration as <u>Exhibit 2</u>; Letter from Nortel – US Info Center – Pension Services to Robert Horne, dated April 2, 2001, attached to the Ray Declaration as <u>Exhibit 3</u>. While Mr. Horne suggests that he is somehow being treated unfairly or prejudiced by not being given the right to participate in recoveries under the Settlement Agreement to compensate for benefits that he voluntarily turned down or for which he was never eligible, in fact, allowing Mr. Horne to receive a share of the Settlement Amount would be inequitable and would directly harm other Retirees who are rightfully entitled to share in the Settlement Amount and who would have their share of the Settlement Amount diluted by Mr. Horne. Simply put, according to the Debtors' books and records, Mr. Horne is not entitled to be reinstated in the Retiree Welfare Plans at this time and is therefore not entitled to receive any distribution under the Settlement Agreement.

16.     Accordingly, for the reasons stated herein and in the Settlement Motion, the Debtors respectfully request that the Court overrule the Responses and grant the relief sought in the Settlement Motion.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant the Settlement Motion and the relief requested therein; (ii) approve the Settlement Agreement and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: March 28, 2013<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (admitted *pro hac vice*)<br>Lisa M. Schweitzer (admitted *pro hac vice*)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Ann C. Cordo*<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |