# EXHIBIT 3

Date Filed: 2/6/2013

# In re Nortel Networks, Inc., *et al.*,
# Frequently Asked Questions
# Concerning Retiree Welfare Benefits and
# the Settlement Currently Pending Court Approval

Nortel and the Retiree Committee have entered into a proposed settlement agreement (the "Settlement Agreement") which, if approved by the Bankruptcy Court, will allow Nortel to terminate all retiree welfare benefits in exchange for a payment of approximately $67 million (the "Settlement Payment"). The Settlement Agreement was reached after months of negotiations between Nortel and the Retiree Committee, with the assistance of a Court-appointed mediator, after Nortel requested Court permission to terminate all of its retiree welfare benefit plans. The Settlement Agreement will not become effective unless and until it is approved by the Bankruptcy Court after a hearing to consider any objections. If the Settlement Agreement is approved, the Settlement Payment will be used in the manner described below.

## I. Settlement Terms

Q. *What are the essential terms of the Settlement Agreement?*

Nortel will stop providing Nortel retiree welfare benefits **as of May 31, 2013**. In exchange, Nortel will pay the Settlement Payment of approximately $67 million. The Settlement Payment will then be used to provide benefits to eligible Nortel retirees and eligible beneficiaries through a Voluntary Employees' Beneficiary Association ("VEBA") that will be established by the Retiree Committee or its Successor. The Retiree Committee expects that those benefits will include a Health Reimbursement Arrangement ("HRA") and/or a medical insurance plan, each of which is described below.

Q. *Will the Settlement Agreement affect pension benefits?*

No. Pension benefits will not be affected by the Settlement Agreement.

Q. *What are "Nortel retiree welfare benefits"?*

"Nortel retiree welfare benefits" has a lengthy definition in the Settlement Agreement, which is controlling. Here is a summary:

> (a) "Nortel retiree welfare benefits" include health insurance, life insurance and long-term care benefits provided under the Nortel Networks Inc. Retiree Medical Plan and the Nortel Networks Inc. Retiree Life Insurance and Long-Term Care Plan for Retirees as each has been amended over time;



(b) "Nortel retiree welfare benefits" include other health, welfare and long-term care benefits, with numerous exclusions, as specified in section 10 of the Settlement Agreement;

(c) "Nortel retiree welfare benefits" do not include pension benefits or other benefits provided under Nortel pension plans.

Q. *How will Nortel's Settlement Payment be allocated among retirees?*

Nortel's Settlement Payment will be allocated among retirees based on an estimate of the benefits each retiree would have received if Nortel had been able to continue providing Nortel retiree welfare benefits. However, retirees will receive only a percentage of their estimated benefits because the Settlement Payment is the result of a compromise in light of Nortel's bankruptcy. Also, the costs of administering the VEBA (including the HRAs and/or potential medical insurance plan sponsored by the VEBA) will be deducted from the Payment -- costs are discussed below.

Q. *How can retirees check the Retiree Committee's estimate of their benefits?*

The amount that the Retiree Committee currently estimates each retiree will be allocated is specified on the "Individual Claim Form" included with the Retiree Committee's "Statement in Support of the Proposed Settlement Agreement" that was mailed on or about February 1, 2013 to retirees and beneficiaries who were identified as eligible based on Nortel's records. The estimates are based on the Apportionment Methodology explained in the Retiree Committee Statement, but remain subject to change caused by, among other things, the costs of operating the VEBA, the number of persons who may retire before May 31, 2013, and the number of retirees who seek eligibility pursuant to section 8(a) of the Settlement Agreement. The Statement is also posted on this web site under our February 1st update.

Q. *How are retirees' years of service calculated on their Individual Claim Forms?*

Retirees' welfare benefits are calculated based on the retirees' years of service, not years of employment. Under the Nortel Retiree Medical Plan, years of service begin to accrue at age 40 unless the retiree was granted special "grandfathered" status. "Grandfathered" employees' years of service are calculated from their initial employment by Nortel or certain companies that Nortel acquired. Nortel's Retiree Medical Plan Summary Plan Descriptions provide additional relevant information.

Q. *How will retirees receive benefits from the Settlement Payment?*

The Settlement Agreement provides that Nortel's Settlement Payment will be used to fund a VEBA that, the Retiree Committee expects, will provide

2

settlement proceeds to eligible retirees through HRA accounts. If the Election Threshold described in the ballot materials sent to retirees is met, a portion of the Settlement Payment will be used to subsidize a portion of eligible retirees' costs of participating in a group medical insurance plan.

The Retiree Committee has proposed that the Settlement Payment be used in this way because the Committee was unable to replicate Nortel's current retiree welfare benefits or to obtain a group life or long-term care insurance policy. Also, the Retiree Committee was able to obtain only a single proposal for group health insurance.

The Retiree Committee intends to set up HRA accounts and any group health insurance plan funded with the Settlement Payment in a tax-advantaged manner so that, to the extent tax laws permit, the benefits provided will not be taxable to Nortel retirees or their beneficiaries. Accordingly, the Retiree Committee is in the process of seeking a ruling from the Internal Revenue Service confirming that the benefits will not be taxable. If the Internal Revenue Service declines to provide such a ruling, the Retiree Committee or its successor will consider alternative means of providing benefits to eligible Nortel retirees.

Q. *What will retirees be giving up in exchange for the Settlement Payment?*

The Settlement Agreement provides that a Court order will be entered to eliminate individual retirees' claims against Nortel for life, health and long-term care benefits under existing plans and agreements, with very few exceptions, in exchange for Nortel's Settlement Payment. The details of the claims that retirees will be giving up in exchange for their share of the Settlement Payment are provided in section 11 of the Settlement Agreement. Pension benefits will not be affected by the Settlement Agreement.

Q. *Who is eligible to participate in the Settlement Agreement?*

Nortel retirees and their beneficiaries who are receiving or are eligible to receive Nortel retiree welfare benefits as of January 31, 2013 will be eligible to participate in the benefits of the Settlement Agreement. Eligibility is explained in greater detail in section 8(a) of the Settlement Agreement, which is controlling. In addition, Nortel employees who are long-term disabled will be eligible for certain benefits under the Settlement Agreement, but only if they comply with section 8a of the Settlement Agreement.

Q. *Are retirees required to take any action with respect to their mailings from the Retiree Committee?*

Yes. The Retiree Committee has sent ballots to individuals who are eligible for insured medical benefits that they must complete – if they do not, their rights will be affected. Retirees are also required to notify the Retiree Committee if there are any errors in their Individual Claim Forms. The actions required of retirees are described in detail in the materials accompanying the ballots and Individual Claim Forms.

3

In addition, Nortel has asked the Court to approve the Apportionment Methodology specified in the Settlement Agreement -- as applied in retirees' Individual Claim Forms -- as the appropriate methodology to determine how much to allocate to each retiree under the Settlement Agreement. Absent objections, the Court may approve the Apportionment Methodology and thereby conclusively determine each retiree's share of the Settlement Payment.

Q. *What should retirees do if they have more questions about the Settlement Agreement?*

If you have further questions about your rights under the Settlement Agreement, the Retiree Committee recommends that you attend the "town hall meetings" that will be announced on this web site or email Togut, Segal & Segal LLP by using the "Submit an Inquiry" feature of this web site. Please note, however, that Togut, Segal & Segal LLP represents the Retiree Committee and cannot provide individual retirees with legal or tax advice.

## II. How the Settlement Will Become Final

Q. *How will the Court decide whether to approve the Settlement Agreement?*

The Bankruptcy Court will hold a hearing to consider approval of the proposed Settlement Agreement on April 2, 2013. At the hearing, the Court will review any objections to the Settlement Agreement and will then issue an Order approving, modifying or rejecting the proposed Settlement Agreement. Any objections must be filed by March 12, 2013 at 4:00 p.m. in accordance with the directions in the Court's Order dated January 23, 2013.

Q. *What will happen if the Court approves the Settlement Agreement?*

If the Court approves the Settlement Agreement, it will enter an order authorizing Nortel to enter into the Agreement. The parties will then be required to comply with the Agreement and the Court's order. Among other things, the order will allow Nortel to stop paying for and providing retiree welfare benefits and will direct Nortel to pay approximately $67 million (the "Settlement Payment") to an entity designated by the Retiree Committee. Further details can be obtained by reviewing the proposed order that has been included with the motion papers seeking approval of the Settlement Agreement. The proposed order was mailed to retirees and can be reviewed by clicking on the Notice Procedures Order link on this web site. Please note that if the Settlement Agreement is approved, **all retiree welfare benefits, including any insurance coverage subsidized or provided as a retiree welfare benefit, will cease at 11:59 p.m. Eastern Time on May 31, 2013.**

As of June 1, 2013, the Retiree Committee expects HRA accounts, and a group medical plan if the Election Threshhold is met, to be available to eligible

individuals. Eligible individuals will receive additional materials before June 1, 2013 which will provide instructions for how to take advantage of these benefits.

Q. *What will happen if the Court does not approve the Settlement Agreement?*

If the Court does not approve the Settlement Agreement, it may enter a modified order that the parties will be required to comply with. If the Court decides not to enter any order at all, (a) the Settlement Agreement will not become effective, and (b) we will post additional information on this web site. Nortel would likely seek an order of the Court to terminate retiree welfare benefits.

## III. The Manner in which the Settlement Payment Will Be Used To Provide Retiree Welfare Benefits

Q. *How and when will retirees receive benefits from the Settlement Payment?*

The Settlement Agreement provides that Nortel's Settlement Payment will be used to fund a Voluntary Employees' Beneficiary Association ("VEBA") that will be established by the Retiree Committee or its Successor. The Retiree Committee expects that the VEBA will provide settlement proceeds to eligible retirees through health reimbursement arrangement ("HRA") accounts. If the Election Threshold described in the ballot materials sent to retirees is met, a portion of the Settlement Payment will be used to subsidize eligible retirees' participation in a group medical insurance plan. The amount of the Settlement Payment allocated to a group medical insurance program will be based on the relative percentage of Nortel retiree welfare benefits that would have been spent on health insurance subsidies if Nortel had been able to continue providing retiree welfare benefits.

Sums in individual HRA accounts will be available to reimburse retirees for qualified medical expenses. Sums allocated to group medical insurance, if the Election Threshhold is met, will be used to subsidize a portion of eligible retirees' costs of participating in a group medical insurance plan. The Retiree Committee expects these benefits to be available beginning June 1, 2013.

Q. *If the Settlement Agreement is approved, who will make decisions regarding the benefits to be provided by the VEBA?*

After the VEBA is funded to provide the HRA and the fully insured medical plan (if applicable), decisions will be made by the VEBA's administrative board (or, "VEBA Committee"). The members of the VEBA Committee will be appointed by the Retiree Committee and will likely consist of members of the Retiree Committee.

Q. *What is a VEBA?*

A VEBA is a trust established under section 501(c)(9) of the Internal Revenue Code for the purpose of providing certain permissible benefits to employees and/or retirees. A VEBA generally is not, but under certain circumstances may be, subject to income tax. As noted above, if the proposed Settlement Agreement is approved by the Bankruptcy Court, it is anticipated that the Settlement Payment will be used to fund a VEBA, which will, in turn, offer an HRA and a fully insured medical plan (if applicable).

Q. *What is an HRA?*

An HRA is a benefit plan that reimburses employees, or retirees for qualified medical expenses incurred by such individuals and their eligible dependents. Participating individuals are generally not taxed on reimbursements for eligible medical expenses received from an HRA. Typically, an HRA is used to pay insurance premiums or deductibles, copays and other eligible expenses not covered by insurance.

Expenses that may be reimbursed from an HRA generally include the following:

1) Costs of diagnosis, cure, mitigation, treatment, or prevention of disease, and costs for treatments affecting any part or function of the body, including:

    a) costs of medical services rendered by physicians, surgeons, dentists, and other medical practitioners;

    b) costs of equipment, supplies, and diagnostic devices needed for the medical care (such as crutches, dentures, blood sugar test kit, eyeglasses, wheelchair, hearing aid); and

    c) costs of prescribed drugs (although insulin need not be prescribed);

2) Amounts paid for transportation to obtain eligible medical care;

3) Costs of medical insurance premiums; and

4) Cost of long-term care insurance premiums, up to applicable IRS annual limits, which are based on the individual's age.

While the HRA to be offered by the VEBA has not yet been established, the Retiree Committee anticipates that it will permit reimbursement of most, if not all, of the types of expenses listed above. As noted above, the Internal Revenue Service has not yet determined whether the HRA expected to be established under the VEBA provides the intended tax advantages. If the Internal Revenue Service does not confirm such tax advantages, other available alternatives for the provision of welfare benefits or other amounts will be considered.

*Q. Is there a difference between an HRA and a Health Savings Account (HSA)?*

Yes. An HRA and an HSA are two different types of arrangements. While each arrangement is generally established for the purpose of obtaining tax-free reimbursement of qualified medical expenses, they are subject to different sets of rules and limitations. Since HSAs are not being offered or funded in connection with the Settlement Agreement, a detailed discussion of HSAs is not included in this communication.

*Q. What are the limitations on using the funds in an HRA account?*

An account will be established for each eligible retiree (including eligible dependents of deceased retirees) under the HRA. The amount allocated to each eligible retiree's account will be based on the Apportionment Methodology, and such individuals will be able to seek reimbursement for substantiated, qualified medical expenses from the account. The HRA can only reimburse qualified medical expenses incurred following the date the individual becomes eligible to participate in the HRA. Once the balance of an eligible retiree's HRA account is reduced to zero, no further reimbursements will be made to the retiree.

*Q. Must the funds in an HRA account be used by a certain date?*

No. Amounts allocable to an individual's account that are not used during a year may be carried over into, and used in, subsequent years. The duration of an eligible retiree's account will depend on the initial amount allocated to his or her account in accordance with the Apportionment Methodology, as well as the amount and frequency of medical claims incurred and submitted for reimbursement.

*Q. Can an HRA reimburse medical expenses of a retiree's dependents?*

Yes. An HRA can reimburse qualified medical expenses incurred by a retiree, or the retiree's spouse, children who have not attained age 27 as of the end of the applicable taxable year, or legal dependents.

*Q. What will happen to retirees' HRA accounts upon their death?*

Following a retiree's death, the HRA can continue to reimburse qualified medical expenses incurred by the individuals who survive the retiree. Upon the death of the last survivor (or the death of the retiree, if there are no survivors), the amounts allocated to the retiree's HRA account will be forfeited to and retained by the VEBA. Under tax requirements for HRAs, retirees will not be allowed to designate beneficiaries of their own choosing to receive the balance of their HRA accounts that remains at the time of their death.

*Q. If the VEBA offers a subsidized group medical insurance program, which retirees will be eligible to participate in the program?*

7

Only Nortel retirees and their beneficiaries who are receiving or are eligible to receive Nortel retiree welfare benefits as of January 31, 2013 and current employees who seek retiree status in compliances with Section 8(a) of the Settlement Agreement will be eligible to participate in the VEBA's group medical insurance program.

Q. *How will the expenses of maintaining a VEBA, and of administering retiree benefits, be paid?*

The expenses of maintaining a VEBA, and of administering retiree benefits, will be paid from the Settlement Payment in accord with the decisions of the VEBA Committee charged with supervising administration of the VEBA. These expenses may include the fees of an administrator for the HRA, investment management fees, and legal and accounting expenses. The Retiree Committee is soliciting competing proposals for these services. Other operating expenses that will be paid from the Settlement Payment may include fees to be paid to governmental authorities under applicable laws such as the recently enacted Patient Protection and Affordable Care Act. These expenses will be charged against the settlement funds in the VEBA and HRAs in a fair and equitable way.

Q. *Will retirees' HRA accounts be credited with investment earnings?*

It depends. The Retiree Committee anticipates that any investment earnings will first be used to pay administrative expenses and other costs of the VEBA. To the extent that investment earnings exceed those costs and expenses, the Committee anticipates that the excess will be allocated to the accounts of retirees who, at the time of the allocation, have account balances. Decisions with respect to the use of investment earnings will be made, however, by a separate committee that will be charged with making decisions concerning administration of the Settlement Payment.

DISCLAIMERS

These Frequently Asked Questions provide a general summary of certain aspects of the benefits that may be offered by the VEBA and do not constitute a legal plan document. The Retiree Committee expects that the VEBA will adopt a formal plan document which will govern the provision of retiree welfare benefits to eligible Nortel retirees.

These Frequently Asked Questions are not intended to provide legal or tax advice. Any statements in these Frequently Asked Questions regarding the anticipated tax treatment of HRAs, insured medical plans or the VEBA have been included solely for purposes of providing a general overview of the Settlement Agreement. Any retiree who has further questions about his or her treatment under the Settlement Agreement should seek advice based on that person's particular circumstances from an independent legal or tax advisor. These Frequently Asked Questions cannot be used for purposes of avoiding penalties that may be imposed under applicable tax laws.