**<u>EXHIBIT A</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------- X
                                                        :   Chapter 11
In re                                                   :
Nortel Networks Inc., et al.,¹                          :   Case No. 09-10138 (KG)
                                    Debtors.            :   Jointly Administered
                                                        :   Related D.I.: 8067
                                                        :
-------------------------------------------------------------X
OFFICIAL COMMITTEE OF LONG TERM                         :
DISABILITY PLAN PARTICIPANTS, on behalf of              :   Adv. Proc. No. 12-50995 (KG)
and as agent for a class of individual participants and :   Related D.I.: 1
beneficiaries under various NORTEL NETWORKS             :
HEALTH AND WELFARE BENEFIT PLANS,                       :
                                    Plaintiffs,         :
                                                        :
                          v.                            :
                                                        :
NORTEL NETWORKS INC., et al.,                           :
                                    Defendants.         :
------------------------------------------------------------- X
```

**ORDER (A) APPROVING THE SETTLEMENT AGREEMENT ON A
FINAL BASIS, (B) CERTIFYING A CLASS FOR SETTLEMENT PURPOSES
ONLY ON A FINAL BASIS, (C) AUTHORIZING THE DEBTORS
TO TERMINATE THE LTD PLANS, AND (D) GRANTING RELATED RELIEF**

Upon the joint motion dated January 18, 2013 (the "Joint Motion"),² Nortel Networks

Inc. ("NNI") and certain of its affiliates that are debtors and debtors in possession in the above-

captioned cases, (collectively, the "Debtors") and the Official Committee of Long Term

Disability Participants, acting on behalf of and as agent for employees (the "LTD Employees")

of the Debtors that are participants in the Debtors' Long Term Disability Plan (the "LTD

---

¹       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.
²       Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Joint Motion.

Committee," and together with the Debtors, the "Movants"), seek *inter alia*, entry of an order, as more fully described in the Joint Motion, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), applicable hereto by Bankruptcy Rule 7023, (i) approving the Settlement Agreement[3] among the Parties on a final basis, (ii) certifying the proposed Settlement Class for settlement purposes only, and appointing the Class Representatives and Class Counsel on a final basis, (iii) authorizing the Debtors to terminate the LTD Plans, and (iv) granting related relief; and the Court having reviewed and considered the Joint Motion, and after due deliberation thereon, and good cause appearing therefore:

### IT IS HEREBY FOUND AND DETERMINED THAT:[4]

A.    This Court has jurisdiction over the Joint Motion pursuant to 28 U.S.C. §§ 157 and 1334, and, to the extent applicable, the Parties consent to the Court hearing, determining and entering appropriate orders and judgments regarding the relief sought in the Adversary Proceeding pursuant to 28 U.S.C. § 157(c)(2);

B.    Venue of these cases and the Joint Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409 and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

C.    The statutory predicates for the relief sought in the Joint Motion are sections 105(a) and 363(b) of the Bankruptcy Code, Rule 9019 of the Bankruptcy Rules and Rule 23 of the Civil Rules;

---

[3]    The Settlement Agreement entered into among the Parties was executed on January 17, 2013 and was amended and restated on February 11, 2013.

[4]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

D.      The Court has entered an Order on February 14, 2013 (i) preliminarily approving the Settlement Agreement among the Parties, (ii) conditionally certifying the Settlement Class for settlement purposes only, appointing the Class Representatives and approving the Settlement Class's representation by counsel to the LTD Committee, Elliott Greenleaf, as class counsel ("Class Counsel"), (iii) approving the Notice Procedures, (iv) scheduling a fairness hearing (the "Fairness Hearing") to consider final approval of the Settlement Agreement, and (v) granting related relief [D.I. 9427] (the "Preliminary Settlement Approval Order");

E.      Notice of the Joint Motion has been provided via first class mail to (i) the U.S. Trustee; (ii) counsel to the Bondholder Group; (iii) counsel to the UCC; (iv) the LTD Employees; (v) the Active Employees; (vi) the COBRA Participants; (vii) counsel to the Retiree Committee; and (viii) the general service list established in these chapter 11 cases, and no further or other notice is required under the circumstances;

F.      Based upon the affidavits of service and publication filed with the Court: (a) notice of and service of the Joint Motion, Settlement Notice and Publication Notice was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings, and complied with the applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Preliminary Settlement Approval Order, and (b) all interested persons and entities were afforded a reasonable opportunity to object and be heard with respect to the Joint Motion, the Settlement Agreement, the termination of the LTD Plans and all other relief requested therein;

G.      Based upon the notice provided and the extensive education, outreach, and collective efforts of the LTD Committee and the Debtors to inform the LTD Employees of the impact of the termination of the LTD Plans, the LTD Employees have been afforded a full opportunity to assess the Settlement and have been fully advised and informed by the LTD

Committee that they must seek their own advice and counsel as to the impact of the termination of the LTD Plans and Settlement on their individual circumstances including, but not limited to, the tax implications and impact on medical benefits;

H.      Pursuant to the Preliminary Settlement Approval Order, the Settlement Class has been conditionally certified, solely for purposes of settlement of the Adversary Proceeding and the LTD Termination Motion, pursuant to Federal Rule of Civil Procedure 23 and Federal Rule of Bankruptcy Procedure 7023, and the Class Representatives and Class Counsel have been conditionally approved, and in accordance with Rules 23 and 7023, such certification and approval shall be final;

I.      The Settlement Class satisfies the certification requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2), and Federal Rules of Bankruptcy Procedure 7023(a) and 7023(b)(2); and the Debtors, the Class Representatives, and the LTD Committee finally consent to the final certification of the Settlement Class, solely for the purpose of settlement of the Adversary Proceeding. Adequate notice of the Settlement Agreement has been given as set forth herein to all interested parties, and no other or further notice is necessary;

J.      For purposes of settling the Adversary Proceeding, Class Counsel is sufficiently qualified, has extensive experience handling class actions and employee-related matters and has been appointed class counsel in multiple representative class actions;

K.      For purposes of settling the Adversary Proceeding, the Class Representatives do not have interests antagonistic to those of the Settlement Class;

L.      For purposes of settling the Adversary Proceeding, the Settlement Class consisting of approximately 200 members is so numerous that joinder of all members is impracticable;

M.        For purposes of settling the Adversary Proceeding, there are questions of law and/or fact common to all members of the Settlement Class;

N.        For purposes of settling the Adversary Proceeding, the claims of the Class Representatives are typical of the claims of the Settlement Class, including in terms of the legal theory advanced and the factual circumstances underlying that theory;

O.        For purposes of settling the Adversary Proceeding, the Class Representatives are not subject to a defense that is both inapplicable to many members of the Settlement Class and likely to become a major focus of the litigation;

P.        For purposes of settling the Adversary Proceeding, the Class Representatives' interests and incentives are sufficiently aligned with those of the Settlement Class;

Q.        For purposes of settling the Adversary Proceeding, Class Counsel, the LTD Committee and the Class Representatives have fairly and adequately protected the interests of the Settlement Class;

R.        For purposes of settling the Adversary Proceeding, questions of law or fact common to the members of the Settlement Class predominate over any questions affecting only the individual members;

S.        For purposes of settling the Adversary Proceeding, settlement through a class action under Civil Rule 23(b)(2) is superior to other available methods of resolving the claims alleged in the Class Complaint and the other claims released in the Settlement Agreement;

T.        The proposed Class Representatives and Class Counsel adequately represent the interests of the Settlement Class;

U.         The Settlement Agreement and its terms were negotiated by the Debtors and the LTD Committee in good faith and at arm's length;

V.      For purposes of settling the Adversary Proceeding, there was sufficient discovery conducted by the Parties prior to entering into the Settlement Agreement;

W.      For purposes of settling the Adversary Proceeding, the Debtors have acted or refused to act on grounds that apply generally to the Settlement Class;

X.      For purposes of settling the Adversary Proceeding, any monetary relief provided by the Settlement Agreement, including allowance of the LTD General Unsecured Claim, is incidental to the declaratory relief sought;

Y.      For purposes of settling the Adversary Proceeding, final injunctive or corresponding declaratory relief is appropriate with respect to the Settlement Class as a whole;

Z.      The Debtors have demonstrated compelling and sound business justifications for entering into the Settlement Agreement;

AA.      The legal and factual bases set forth in the Joint Motion and the record in these proceedings establish just cause for the relief requested therein, and that such relief is in the best interests of the Debtors, their estates, their creditors and the parties in interest;

BB.      Entry into the Settlement Agreement is in the best interests of the Debtors, the Debtors' estates and creditors, the LTD Committee, the LTD Employees, the Class Representatives and the members of the Settlement Class who are all receiving fair and reasonable value under the Settlement Agreement;

CC.      The terms of the Settlement Agreement are fair, reasonable and adequate under Civil Rule 23, incorporated by Rule 7023 of the Bankruptcy Rules, and the nine factor test set forth by the Third Circuit in Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975);

DD.      The Debtors provided the LTD Committee and LTD Employees with all relevant information necessary to assess the Settlement Agreement;

6

EE.     The Debtors have met and been available to meet with the LTD Committee at all reasonable times;

FF.     Termination of the LTD Plans is necessary to permit the reorganization of the Debtors and to further the resolution of their chapter 11 cases;

GG.     The Settlement Agreement should be finally approved;

HH.     The Settlement Agreement does not constitute a sub rosa plan of reorganization and the entry into and performance under the Settlement Agreement, as well as the Settlement Notification Procedures do not constitute the solicitation of a vote on a plan of reorganization;

II.     The Debtors' and the LTD Committee's decisions to enter into the Settlement Agreement are consistent with their fiduciary duties and do not give rise to any claim or remedy against the Debtors or the LTD Committee, except as may be expressly set forth in this Order or the Settlement Agreement;

JJ.     The Court has held a Fairness Hearing on April 30, 2013 to consider final approval of the Settlement Agreement, at which the Parties to the Joint Motion made the necessary showing to justify approval of the Settlement Agreement and termination of the LTD Plans and all objections raised to final approval of the Settlement Agreement, if any, were overruled;

KK.     All members of the Settlement Class are bound by this Order and the terms of the Settlement Agreement;

LL.     Upon termination of the LTD Plans and the Retiree Welfare Plans, the Debtors do not maintain any group health plans for their employees;

MM.     Other good and sufficient cause exists for granting the relief requested in the Joint Motion; and it is therefore:

7

**ORDERED ADJUDGED AND DECREED THAT:**

1.      The Joint Motion is GRANTED and objections, if any, thereto are OVERRULED.

2.      The Settlement Agreement attached as **<u>Exhibit 1</u>** to this Order is approved in its entirety as fair and reasonable.

3.      The Debtors are authorized, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, to enter into the Settlement Agreement and to take any and all action that may be reasonably necessary or appropriate to perform their obligations arising under the Settlement Agreement.

4.      The LTD Committee, Class Representatives and Class Counsel are authorized and directed to take any and all action that may be reasonably necessary or appropriate to perform their obligations arising under the Settlement Agreement.

5.      The Settlement Class is certified, solely for purposes of settlement of the Adversary Proceeding, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) and Federal Rule of Bankruptcy Procedure 7023.

6.      For settlement purposes only, Wendy Boswell Mann, Dianna Irish, Barbara Gallagher, Michael Stutts and Deborah Jones, are hereby appointed as Class Representatives.

7.      For settlement purposes only, Elliott Greenleaf is hereby appointed Class Counsel.

8.      Without admitting or denying liability, and solely for the purpose of settlement, the Debtors consent to the entry of an order against them on Count II of the Class Complaint declaring that they cannot terminate any of the LTD Plans, as defined herein, with respect to any of the LTD Employees, unless and until NNI allows a general non-priority, unsecured claim in

favor of the LTD Committee in the amount of $25,960,000 for benefits under the LTD Plans

(such general non-priority, unsecured claim in the amount of $25,960,000 shall constitute the

"LTD General Unsecured Claim").  The LTD General Unsecured Claim shall be deemed

allowed in the amount of $25,960,000 as of the date that this Order approving the Settlement

Agreement has become a final and non-appealable order (the "Effective Date"), and such relief is

hereby granted.  Upon the Effective Date, the LTD General Unsecured Claim shall be deemed to

be valid, liquidated, enforceable against NNI, undisputed, non-contingent, not subject to current

or future objection, defense, setoff or deduction (including, but not limited to, the withholding of

any taxes from any distributions paid or to be paid on account of the LTD General Unsecured

Claim) of any nature by any person or entity and nothing in this Order or the Settlement

Agreement shall impair the LTD General Unsecured Claim. To the extent that (i) this Order is

hereafter modified, (ii) any such modification impacts the LTD General Unsecured Claim and

(iii) the Buyer (as that term is defined below) completes the purchase of the LTD General

Unsecured Claim, such modification shall be subject to the Buyer's approval, which approval

may not be unreasonably withheld, or further order of the Court.

       9.      The LTD Committee shall have the right to sell, assign or convey the LTD

General Unsecured Claim without further order of the Court, subject to compliance with Federal

Rule of Bankruptcy Procedure 3001.  The purchaser of the LTD General Unsecured Claim,

together with its successors and assigns, is hereinafter referred to as the "Buyer."

      10.     To the extent that the Buyer completes the purchase of the LTD General

Unsecured Claim, nothing in the Settlement Agreement (including, but not limited to the

release), the Joint Motion, this Order or otherwise shall have any impact on any other now

existing or hereafter purchased claims of the Buyer or any of its affiliates against NNI or any of

its affiliates, excluding any LTD Claims and the LTD General Unsecured Claim.

11.    Within ten (10) days following the Effective Date (as defined in the Settlement

Agreement), the Buyer or, only in the event that the Buyer does not complete the purchase of the

LTD General Unsecured Claim, the LTD Committee shall file a proof of claim substantially in

the form attached hereto as **Exhibit 2** in the final allowed amount of the LTD General Unsecured

Claim.  Such proof of claim shall be deemed timely filed notwithstanding any claims bar date.

12.    To the extent that the Buyer completes the purchase of the LTD General

Unsecured Claim, no person or entity (except for the Buyer) shall have (a) any claim to, interest

in, or  rights with respect to the LTD General Unsecured Claim, any distributions on account of

the LTD General Unsecured Claim made by NNI, its estate and/or any Chapter 7 trustee

appointed in its bankruptcy case (collectively, "Distributions") or (b) any claim against Buyer

with respect to (i) the LTD General Unsecured Claim, (ii) any rights with respect thereto, or (iii)

any Distributions.  For the avoidance of doubt, this provision shall not in any way limit the right

of members of the Settlement Class to receive an allocation of the Settlement Amount in

accordance with the terms of the Settlement Agreement and this Order.

13.    Notwithstanding anything to the contrary in this Order, it is hereby ordered that to

the extent that the Buyer completes the purchase of the LTD General Unsecured Claim, the

Buyer shall not be required to withhold any taxes or other amounts on behalf of any person or

entity with respect to (a) the payment of the purchase price for the LTD General Unsecured

Claim (the "Purchase Price"), (b) the LTD General Unsecured Claim, or (c) any Distributions.

The Buyer is entitled to rely on this Order in good faith and shall have no liability relating to or

for the withholding of taxes or the issuance of Form W-2's or Form 1099's in connection with

(a) the payment of the Purchase Price, (b) the LTD General Unsecured Claim or (c) any

Distributions.  The LTD Committee, its members and agents shall be solely responsible for all

obligations of and/or related to tax withholding with respect to (a) the payment of the Purchase

Price, (b) the LTD General Unsecured Claim, (c) any Distributions, and (d) any distributions to

the Settlement Class.  The LTD Committee shall provide the Buyer with evidence that all taxes

required to be withheld are actually withheld and all Form W-2s or Form 1099's that are required

to be issued are actually issued.  The recipients and beneficiaries of the Settlement Amounts shall

be solely responsible for any and all taxes in respect of (a) the payment of the Purchase Price,

(b) the LTD General Unsecured Claim, (c) any Distributions, and (d) any distributions to the

Settlement Class.  To the extent that the Buyer completes the purchase of the LTD General

Unsecured Claim, the Buyer shall be responsible for any sales tax (if any) on its purchase of the

LTD General Unsecured Claim and any income tax (if any) incurred in connection with its

ownership of the LTD General Unsecured Claim.

        14.      Subject to the last sentence of paragraph 13 of this Order, the Buyer shall not have

any obligation, responsibility or liability under the Employee Retirement Income Security Act of

1974, as amended ("ERISA") or the U.S. Internal Revenue Code of 1986, as amended (the "Tax

Code") (each of which shall include regulations and other published guidance thereunder), in

connection with, related to or arising out of (a) the LTD General Unsecured Claim, (b) the

purchase of the LTD General Unsecured Claim, (c) the payment of the Purchase Price, (d) the

holding of the LTD General Unsecured Claim, (e) any Distributions, or (f) any distributions to

the Settlement Class.

        15.      The Debtors, their successors, their respective affiliates and the LTD Plans do not

and shall not have any obligation, responsibility or liability, in their capacity as debtors, former

employers or in any other capacity whatsoever, under ERISA or the Tax Code, in connection

with, related to or arising out of the establishment, operation or termination of any plan,

program, arrangement, agreement or commitment by the LTD Committee to pay, reimburse or

otherwise provide for any benefit to the members of the Settlement Class, or any transferee or

assignee of the LTD General Unsecured Claim, or their respective beneficiaries, heirs or assigns,

including without limitation described in Section 3(1) of ERISA.  Nothing in this paragraph and

Order is intended to limit in any way the allowance of the LTD General Unsecured Claim in

accordance with the Settlement Agreement and this Order and the right to receive Distributions

on the LTD General Unsecured Claim pursuant to the Plan or, should NNI's case be converted to

a Chapter 7 proceeding, in accordance with the priority scheme established under the Bankruptcy

Code.

16.    NNI shall make distributions on the allowed LTD General Unsecured Claim in

accordance with an effective plan confirmed under section 1129 of the Bankruptcy Code (the

"Plan").  The "Settlement Amount" shall constitute the net recovery to the LTD Committee on

the allowed LTD General Unsecured Claim, whether through a distribution under the Plan, or the

sale, assignment or conveyance of the LTD General Unsecured Claim, less the Settlement

Administration Costs.  The LTD Committee shall have sole responsibility for distribution of the

Settlement Amount pursuant to the Apportionment Methodology.

17.    Allocation of the Settlement Amount in accordance with the Apportionment

Methodology shall be made to members of the Settlement Class in accordance with the schedule

attached as **Exhibit 3** hereto (as may be amended by the LTD Committee in accordance with this

Order, the "Individual Recovery Schedule"), an unredacted version of which has been or shall be

delivered to the Court by the LTD Committee to be kept segregated and under seal by the Clerk

of the Court.  The Individual Recovery Schedule was prepared by Alvarez & Marsal at the direction of the LTD Committee.  The LTD Committee shall have the right to amend the Individual Recovery Schedule, solely for purposes of adjusting the distributions of the Settlement Amount to be made to members of the Settlement Class to take account of changes in the population of the Settlement Class, and shall file such amended Individual Recovery Schedule under seal as soon as reasonably practicable after the entry of this Order.  Members of the Settlement Class shall not be entitled to recover any amounts from the Settlement Amount in excess of their scheduled recovery as provided on the Individual Recovery Schedule, as may be amended in accordance with this Order.

18.    The allowance of the LTD General Unsecured Claim shall be in full and final settlement of all LTD Claims of the members of the Settlement Class.  For the avoidance of doubt, the Settlement Agreement shall be held to resolve any and all potential claims arising from or related to the LTD Claims of the LTD Employees; and the LTD Claims of the LTD Employees shall be enforceable only against the Settlement Amount, which shall be the sole source of recourse for their LTD Claims.  The commencement or continuation of any action, the employment of any process or any act to collect, recover or offset any LTD Claim that any of the LTD Parties had, have or may have against the Debtor Releasees is hereby forever barred and enjoined.  Notwithstanding this paragraph or the last sentence of paragraph 10(e) of the Settlement Agreement, to the extent that the Buyer completes the purchase of the LTD General Unsecured Claim, the Buyer shall be the holder of the LTD General Unsecured Claim and shall have all rights thereto, including, but not limited to, the right to enforce the LTD General Unsecured Claim in accordance with the Bankruptcy Code and applicable law and to receive and retain all Distributions on account of the LTD General Unsecured Claim.

19.     Upon the occurrence of the Effective Date, the Debtors are entitled to and shall terminate all LTD Plans in their entirety, including, for the avoidance of doubt, all coverage and benefits provided to LTD Employees, Active Employees and COBRA Participants thereunder, on the Termination Date (to the extent not previously terminated), subject to allowance of the LTD General Unsecured Claim.

20.     Upon the Effective Date, except as provided for by the terms of the Settlement Agreement or this Order, the LTD Committee; the LTD Committee Member Parties; and each LTD Employee, in his or her individual capacity, and in his or her capacity as a member of the LTD Class; each of its, his or her respective spouses, dependents, heirs, distributees, executors, administrators, members, officers, directors, agents, representatives, successors and assigns; and any purchaser, transferee or assignee of the LTD General Unsecured Claim or any LTD Employee's LTD Claim (collectively, the "LTD Parties") shall hereby knowingly and voluntarily release and forever discharge the Debtors, their estates, the LTD Plans, the LTD Plan administrators, the members of all Nortel benefit plan committees (including, without limitation, the Employee Benefits Committee, the Joint Leadership Resources Committee, the Compensation and Human Resources Committee and any predecessors thereto), the UCC, and the Bondholder Group, and each of their respective past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, administrators, liquidators, directors, officers, employees, managers, agents, attorneys, solicitors, trustees, fiduciaries, accountants and advisors, and each of all of their respective predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all LTD Claims and Untimely Run Off Claims, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the LTD Parties now have, had,

may have had, or hereafter may have against any of the Debtor Releasees. This Release provides for and effectuates a discharge of the Debtor Releasees to the full extent permitted by applicable law with respect to any and all LTD Claims and Untimely Run Off Claims.

21.     Except for the proof of claim described in paragraph 11 of this Order, any and all proofs of claim filed on account of, or which, to any extent, include LTD Claims, including, but not limited to, claims arising from or relating to modifications to or the termination of LTD Plans, shall be disallowed and expunged from the Debtors' claims register on the Effective Date, solely with respect to the portion of the proof of claim relating to the LTD Claims. Nothing herein (other than as set forth in paragraph 11 of this Order) or in the Settlement Agreement shall waive or limit defenses available to the Debtors and their successors and assigns against a proof of claim that has been or may be filed against the Debtors in the Chapter 11 Cases (other than the proof of claim provided in paragraph 11 of this Order), including but not limited to an objection to the claim based on a failure to timely file such claim on or before the applicable bar date, or to the extent that such claim is raised in violation of the Settlement Agreement. The Debtors' claims agent shall be authorized to make any and all appropriate modifications to the official claims register maintained in the Debtors' cases as necessary to reflect the terms of the Settlement Agreement and this Order.

22.     Upon the Effective Date, except as provided for by the terms of the Settlement Agreement, the Debtors, their estates, successors and assigns (the "Debtor Parties") will hereby knowingly and voluntarily release and forever discharge the LTD Parties and all of their advisors (collectively, the "LTD Releasees") from any and all LTD Claims and Untimely Run Off Claims, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Debtor

Parties now have, had, may have had, or hereafter may have against any of the LTD Releasees. This Release provides for and effectuates a discharge of the LTD Releasees to the full extent permitted by applicable law with respect to any and all claims arising out of or relating to the LTD Plans, Untimely Run Off Claims and/or the LTD Claims.

23.     Except for the proof of claim described in paragraph 11 of this Order, the Debtors may rely on the Settlement Agreement as a basis for objecting to individual proofs of claim to the extent that such individual proofs of claim are addressed therein, and the Debtors may effect such resolution through filing with the Court objections to such claims on notice to the individual claimants.

24.     Within ten (10) days of the Effective Date, all discovery requests relating to the LTD Termination Motion and Class Complaint propounded by either party shall be deemed withdrawn with prejudice, the Debtors shall withdraw with prejudice the LTD Termination Motion, and the LTD Committee shall dismiss with prejudice the Adversary Proceeding.

25.     It is hereby ordered that to the extent the LTD General Unsecured Claim is sold, transferred or assigned by the LTD Committee prior to the time any Distributions are made by NNI in respect of such claim, the Debtors shall not be required to and shall not withhold taxes on behalf of any person with respect to the LTD General Unsecured Claim or any Distributions made with respect to such claim.  The Debtors are entitled to rely on this Order in good faith and shall have no liability relating to the withholding of taxes or the issuance of Form W-2's or Form 1099's.  NNI shall have the right to seek recovery from the other Debtors for some portion of the amount distributable on account of the LTD General Unsecured Claim, after consultation with the UCC and the Bondholder Group, either before or after such payment is made; provided,

however, that any such action on the part of the Debtors shall have no impact on the timing or amount of any distributions paid by NNI on account of the LTD General Unsecured Claim.

26.     The failure to specifically describe or include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such a provision, it being the intent of this Court that the Settlement Agreement be approved in its entirety.  For the avoidance of doubt, the exculpation, indemnification and release provisions contained in the Settlement Agreement are expressly incorporated and are not limited by any other provision of this Order.

27.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

28.     In the event of any discrepancy between the terms of this Order and the Settlement Agreement, the terms of this Order shall govern.

29.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2013
        Wilmington, Delaware          _____

                                      THE HONORABLE KEVIN GROSS
                                      CHIEF UNITED STATES BANKRUPTCY JUDGE

17

**EXHIBIT 1**

*Settlement Agreement*

**AMENDED AND RESTATED AGREEMENT TO TERMINATE LONG-TERM
DISABILITY BENEFITS, TERMINATE EMPLOYMENT OF LONG-TERM DISABLED
EMPLOYEES, SETTLE ADVERSARY PROCEEDING, ALLOW THE LTD GENERAL
UNSECURED CLAIM AND RELEASE ALL OTHER LTD CLAIMS**

          This Amended and Restated Agreement to Terminate Long-Term Disability
Benefits, Terminate Employment of Long-Term Disabled Employees, Settle the Adversary
Proceeding, as defined below, Allow the LTD General Unsecured Claim, as defined below, and
Release all other LTD Claims, as defined below (the "Settlement Agreement") is entered into as
of February 11, 2013 by and among Nortel Networks Inc. ("NNI") and certain of its affiliates
that are debtors and debtors-in-possession in the chapter 11 cases, as defined below (collectively,
the "Debtors"),[1] the Official Committee of Long-Term Disability Participants (the "LTD
Committee"), and certain members of the LTD Committee in their capacity as such (the "LTD
Committee Member Parties"[2] and collectively with the LTD Committee and the Debtors, the
"Parties"), and amends and restates in its entirety the Settlement Agreement entered into between
the Parties as of January 17, 2013.  The LTD Committee, which was appointed as an official
committee under 11 U.S.C. §1102, and certain members of the LTD Committee, who are
purported class representatives under Rule 23 of the Federal Rules of Civil Procedure, are acting
on behalf of all of the Debtors' long-term disabled employees who are participants in the
Debtors' Long Term Disability Plan and certain other plans and programs (such employees are
referred to herein as the "LTD Employees").

          WHEREAS, the Debtors affirm that they have provided a number of benefits to
the LTD Employees through benefit plans and other programs, including (as amended or
modified from time to time) the Nortel Networks Inc. Long-Term Disability Plan, the Nortel
Networks Inc. Short Term Disability Plan, the Nortel Networks Inc. Medical Plan, the Nortel
Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance
Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care
Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan,
the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel
Networks Inc. Long-Term Investment Plan,[3] predecessor plans including, without limitation,
those listed on Exhibit A hereto, and any other formal or informal benefit plans, agreements or
programs (including plans, agreements, arrangements or programs that are funded through the
purchase of insurance) or arrangements for disabled employees, surviving spouses of deceased

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[2]      The LTD Committee approved this Settlement Agreement in accordance with its governing by-laws.

[3]      The Nortel Networks Inc. Long-Term Investment Plan was terminated effective as of June 30, 2012, for all
of the Debtors' employees.  The Nortel Networks Inc. Health Care Reimbursement Account Plan and the Nortel
Networks Inc. Dependent Day Care Reimbursement Account Plan were previously terminated for all of the Debtors'
employees, effective as of December 31, 2010.

former disabled employees and eligible dependents, including plans, agreements, arrangements or programs for medical, surgical, or hospital care benefits, income continuation benefits or any other benefits in the event of sickness, accident, disability, or death (collectively, as each such plan, agreement, arrangement or program has been amended or modified from time to time, the "LTD Plans");[4]

WHEREAS, on January 14, 2009, the Debtors, other than Nortel Networks (CALA) Inc.,[5] filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), which cases are consolidated for procedural purposes only, in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on June 21, 2010, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing Debtors to Terminate Certain Retiree and Long-Term Disability Plans* [D.I. 3204] (the "Plan Termination Motion"), which, *inter alia*, sought approval to terminate the LTD Plans;

WHEREAS, on July 16, 2010, the Debtors withdrew the Plan Termination Motion without prejudice [D.I. 3651];

WHEREAS, since the Plan Termination Motion was withdrawn, the Debtors have continued to provide certain benefits under the LTD Plans (the "LTD Benefits");

WHEREAS, on June 3, 2011, several LTD Employees filed the *Motion for Entry of an Order Pursuant to Section 1102(a)(2) of the Bankruptcy Code Appointing an Official Committee of Long-Term Disability Plan Participants* [D.I. 5595] seeking appointment of a committee to engage in discussions regarding the modification or termination of the LTD Plans;

WHEREAS, on June 22, 2011, the Bankruptcy Court issued an order directing the United States Trustee to appoint the LTD Committee, a committee of long-term disabled employees who are currently receiving benefits under the LTD Plans, for the purpose of serving as the authorized representative of the Debtors' LTD Employees in connection with negotiations regarding the modification or termination of the LTD Plans [D.I. 5790];

WHEREAS, on August 2, 2011, the United States Trustee appointed the members of the LTD Committee [D.I. 6073], as amended on August 4, 2011 [D.I. 6080];

---

[4]     The Debtors historically also have provided benefits to their retired employees, as well as such employees' surviving spouses and eligible dependents, through various benefit plans and other programs, including (as amended or modified from time to time) the Nortel Networks Inc. Retiree Medical Plan, the Nortel Networks Inc. Retiree Life Insurance and Long-Term Care Plan, predecessor plans and other formal or informal benefit plans, agreements, arrangements or programs (including plans, agreements, arrangements or programs that are funded through the purchase of insurance) or arrangements for current or future retired employees, their surviving spouses and eligible dependents, including plans, arrangements, agreements or programs for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death (in each case as such plans have been amended or modified from time to time, the plans are collectively referred to herein as the "Retiree Welfare Plans").

[5]     Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

WHEREAS, on March 28, 2012, the Debtors filed the *Motion for Entry of an Order (I) Appointing a Neutral Mediator Concerning the Modification or Termination of the Nortel Retiree Welfare Plans and the Nortel Long-Term Disability Plans; (II) Authorizing the Debtors to Pay the Costs of Engagement; and (III) Granting Related Relief* [D.I. 7463] (the "Mediation Motion") seeking, in relevant part, the appointment of a mediator to facilitate settlement discussions between the Debtors and the LTD Committee;

WHEREAS, on April 18, 2012, the Bankruptcy Court entered an order granting the Mediation Motion and appointing Richard Levin, Esq. of Cravath, Swaine & Moore LLP, as mediator [D.I. 7560];

WHEREAS, on July 30, 2012, the Debtors filed the *Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors Long-Term Disability Plans and the Employment of the LTD Employees* [D.I. 8067] (the "LTD Termination Motion");

WHEREAS, in the LTD Termination Motion, the Debtors set forth their position that the LTD Plans expressly permit their termination of the LTD Plans and LTD Benefits without requiring any payment or other consideration to the LTD Employees;

WHEREAS, on October 25, 2012, the LTD Committee filed an objection to the LTD Termination Motion [D.I. 8840] and certain other individuals filed formal or informal objections to the LTD Termination Motion (all such objections, including the LTD Committee objection, the "LTD Objections");

WHEREAS, on November 19, 2012, the LTD Committee filed the *Verified Complaint for Declaratory and Injunctive Relief* (the "Class Complaint") commencing adversary proceeding number 12-50995 (KG), on behalf of a class consisting of all LTD Employees, seeking, among other relief, a declaration that the Debtors are not permitted to modify or terminate the LTD Plans (the "Adversary Proceeding");

WHEREAS, over the last year, the advisors for the Debtors and the LTD Committee have met and engaged in negotiations to attempt to reach a mutually acceptable resolution regarding the matters raised in the Class Complaint and the termination or modification of the LTD Plans, including by exchanging settlement proposals and counter-proposals;

WHEREAS, the Debtors have provided the LTD Committee and the members of the LTD Committee (the "LTD Committee Members") with information relevant to their evaluation of the LTD Termination Motion, the Debtors' requested relief therein, and the Debtors' position on the issues raised in the Class Complaint, including without limitation through the provision of documents in response to both informal and formal requests for the production of documents, and formal interrogatories and requests for admission in accordance with court-ordered discovery schedules in connection with the LTD Termination Motion;

WHEREAS, after extensive negotiations between the Parties, the Parties reached agreement regarding settlement of the claims asserted in the Class Complaint, the terms and conditions of the termination of the LTD Plans with respect to the LTD Employees, the

resolution of claims of the LTD Employees arising from and related to the termination of the LTD Plans and related terms as set forth herein;

WHEREAS, the LTD Committee and the LTD Committee Member Parties have determined that the settlement set forth herein is fair, reasonable and adequate and in the best interests of the proposed class of LTD Employees;

WHEREAS, the Debtors, to avoid the costs, disruption and distraction of further litigation, and without admitting the validity of any allegations made in the Class Complaint or that the Debtors are not entitled as a matter of law and fact to the relief sought in the LTD Termination Motion, are willing to enter into a settlement agreement on the terms set forth herein;

**NOW, THEREFORE, IN CONSIDERATION OF THE FOREGOING AND THE MUTUAL COVENANTS SET FORTH HEREIN, THE PARTIES AGREE AS FOLLOWS**:

1.    **Court Approvals.**[6]

All provisions of this Settlement Agreement shall not become effective unless and until: (i) the entry of orders by the Bankruptcy Court, in form and substance reasonably satisfactory to the Parties, approving this Settlement Agreement, certifying a settlement class consisting of all LTD Employees as of the Termination Date (defined below), pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure and Rule 7023(b)(2) of the Federal Rules of Bankruptcy Procedure (the "Settlement Class"), authorizing the Debtors to enter into and perform their obligations hereunder, binding all members of the Settlement Class to the terms of the Settlement Agreement, and granting related relief (the "Approval Orders"); (ii) such Approval Orders finding that the LTD Committee and the LTD Employees appointed to represent the Settlement Class are authorized to enter into and implement this Settlement Agreement, including the obligations thereunder; (iii) such Approval Orders finding that all members of the Settlement Class are bound by the terms set forth in this Settlement Agreement; and (iv) such Approval Orders becoming final and not subject to further appeal (the terms set forth in (i) through (iv) above, collectively, the "Court Approvals"). In the event the Approval Orders are not entered by the Bankruptcy Court by May 16, 2013 or such Approval Orders do not become final and not subject to further appeal by May 30, 2013, this Settlement Agreement shall be void ab initio and of no force and effect and in that event the Parties reserve all of their rights and defenses. The Parties also reserve their right to consummate the Settlement Agreement even if the Court Approvals noted in this section are not achieved if all Parties mutually agree in writing to do so.

---

[6]    The section headings appearing herein are inserted for reference purposes only. They shall not be deemed to define, limit, expand or otherwise affect the scope or intent of the provisions herein.

     2.      **Settlement Consideration.**

     The Debtors, on the one hand, and the LTD Committee and the LTD Committee Member Parties on behalf of all LTD Employees, on the other hand, agree to the following, to be memorialized in the Approval Orders:

     a.      Solely for the purpose of settlement of the Adversary Proceeding, the Parties hereby consent to the certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(2), and Federal Rule of Bankruptcy Procedure 7023(b)(2).

     b.      Without admitting or denying liability, and solely for the purpose of settlement, the Debtors consent to the entry of an order against them on Count II of the Class Complaint declaring that they shall not terminate any of the LTD Plans, as defined herein, with respect to any of the LTD Employees on or before the Termination Date, unless and until NNI allows a general non-priority, unsecured claim in favor of the LTD Committee in the gross amount of $28 million based on a hypothetical termination date of March 31, 2013, minus the costs (for purposes of settlement, calculated as $680,000 per month) for the transition period of April 1, 2013 through May 31, 2013, resulting in a general non-priority, unsecured claim in the gross amount of $26,640,000[7] for benefits under the LTD Plans (where such general non-priority, unsecured claim in the gross amount of $26,640,000 shall constitute the "<u>LTD General Unsecured Claim</u>"). The LTD General Unsecured Claim shall be allowed as of the date that the Approval Orders have become final and non-appealable orders (the "<u>Effective Date</u>").[8]

     c.      The LTD Committee shall have the right to sell, assign or convey the LTD General Unsecured Claim without further order of the Court, subject to compliance with Federal Rule of Bankruptcy Procedure 3001.

     d.      The Debtors shall make distributions on account of the allowed LTD General Unsecured Claim in accordance with an effective plan of reorganization confirmed under section 1129 of the Bankruptcy Code (the "<u>Plan</u>"). The "<u>Settlement Amount</u>" shall constitute (i) the net recovery to the LTD Committee on the allowed LTD General Unsecured Claim, whether through a distribution under the Plan, or the sale, assignment or conveyance of the LTD General Unsecured Claim, less (ii) the Settlement Administration Costs (as defined below).

     e.      The Settlement Amount shall be allocated among the LTD Employees who are receiving benefits under the LTD Plans as of the Termination Date on the basis of a formula to be provided by the LTD Committee, whereby each LTD Employee shall receive his or her proportional share of the Settlement Amount, subject to applicable withholding tax requirements, calculated based on a fraction, the numerator of which is the actuarial valuation of such LTD Employee's claims under the LTD Plans (as determined by the LTD Committee) and the denominator of which is the aggregate of the actuarial values of all LTD Employees' claims

---

[7]     Subject to the terms of Section 6(b), *infra*.

[8]     The Debtors intend that the LTD General Unsecured Claim be allowed against NNI, but NNI reserves the right to seek recovery from the other Debtors for some portion of the amount distributable on account of the LTD General Unsecured Claim, after consultation with the UCC and the Bondholder Group.

under the LTD Plans (as determined by the LTD Committee), thereafter applied to the Settlement Amount.  The foregoing allocation methodology is referred to herein as the "Apportionment Methodology."  The LTD Committee shall have sole responsibility for calculation of such amounts and distribution of the Settlement Amount pursuant to the Apportionment Methodology.

       f.      Within ten (10) business days of the Debtors having served the Settlement Notice (as defined below), the LTD Committee will deliver to the Bankruptcy Court, and seek approval of, a schedule that details the calculation of the proportional share of the Settlement Amount to be allocated to each eligible LTD Employee (as determined by the LTD Committee applying the Apportionment Methodology)[9].  Such Court approval, if given, shall be deemed to fully and finally determine the propriety of the application of the Apportionment Methodology to the Settlement Amount and to fully and finally determine the actuarial valuation of each LTD Claim and the calculation of the proportional share of the Settlement Amount to each LTD Employee.

       g.      The allowance of the LTD General Unsecured Claim shall be granted in full and final settlement of all LTD Claims, as defined herein.

       h.      Upon the Effective Date, all other claims in the Class Complaint shall be deemed dismissed with prejudice.

       i.      Within ten days of the Effective Date, the Debtors shall withdraw with prejudice the LTD Termination Motion, pursuant to the conditions set forth in Section 29 hereof.

       j.      The LTD Committee and its counsel shall use their best efforts to work with the Debtors and their counsel to obtain final approval of the settlement set forth herein through the entry of the Approval Orders, including, without limitation, using their best efforts to cooperate with the Debtors to respond to any objection to any term of this Settlement Agreement raised by any LTD Employee or any other person, and to support the Debtors' position with respect to any such objection in all respects.

       3.      **Settlement Administration Costs.**

       The term "Settlement Administration Costs" shall refer to the expenses of the LTD Committee and its advisors that are necessary to administer and implement the Settlement Agreement and administer and effectuate distribution of the Settlement Amount, incurred after the Effective Date.

       4.      **No Debtor Liability for Distribution Mechanic.**

       Notwithstanding their agreement to the relief set forth in Section 2 hereof in exchange for settling the Adversary Proceeding and receiving the releases set forth herein, the Debtors, their successors, their respective affiliates and the LTD Plans, do not and will not have any obligation, responsibility or liability, in their capacity as debtors, former employers or in any

---

[9]      The LTD Committee reserves the right to file a revised schedule prior to the Fairness Hearing.

other capacity whatsoever, under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or the U.S. Internal Revenue Code of 1986, as amended (the "Tax Code") (each of which shall include regulations and other published guidance thereunder), in connection with, related to or arising out of the establishment, operation or termination of any plan, program, arrangement, agreement or commitment by the LTD Committee to pay, reimburse or otherwise provide for any benefit to the members of the Settlement Class, or any transferee or assignee of the LTD General Unsecured Claim, or their respective beneficiaries, heirs or assigns, including without limitation any benefit described in Section 3(1) of ERISA.  Nothing in this section is intended to limit in any way the allowance of the LTD General Unsecured Claim in accordance with the Settlement Agreement and the Plan.

5. **LTD Plans Run-Off Period.**

The time period for filing a claim for payment or reimbursement of benefits covered by and approved pursuant to the relevant LTD Plans for claims incurred prior to the Termination Date shall be reduced to a period of six (6) months (or such shorter period as provided under the terms of the relevant LTD Plan), following the Termination Date (the "Run Off Period").  For the avoidance of doubt, a claim for payment or reimbursement of benefits will be deemed filed for purposes of this Section once filing of the appropriate claim form, if applicable, to the relevant designated claims administrator has occurred (whether by the beneficiary or the provider if the beneficiary so authorizes), in accordance with the terms of the relevant LTD Plan.  Claims for benefits under the relevant LTD Plans that accrue prior to the Termination Date and which are not properly filed in accordance with the relevant LTD Plans prior to the earlier of (i) the current run off period under the relevant LTD Plan or (ii) expiration of the Run Off Period, shall be disallowed for all purposes (and the Debtors' claims agent will be authorized to make an appropriate notation on the official claims register maintained in the Debtors' cases as necessary).  These untimely claims are referred to herein as "Untimely Run Off Claims."  No consideration shall be owed or paid by the Debtors or any of their successors, or the LTD Committee with respect to the Untimely Run Off Claims.  For the avoidance of doubt, nothing in this section modifies, waives or otherwise overrides the Debtors' or any third party's right to review, approve and object to any timely claim that may be presented during the Run Off Period.  Third party service providers and insurers will be provided notice that Untimely Run Off Claims will not be paid.

6. **Termination of LTD Plans.**

a.      If the Effective Date has occurred, in accordance with the terms of Sections 2(b) and 2(i) hereof, the Debtors shall terminate all LTD Plans in their entirety, including, for the avoidance of doubt, all coverage and benefits provided thereunder, as of May 31, 2013 at 11:59 p.m. (ET) (the "Termination Date").  Except as expressly set forth herein, on the Termination Date, the Debtors will cease to sponsor, provide or be liable for any LTD Benefits under the LTD Plans.  On or after the Effective Date, the Debtors shall cease to be liable for LTD Claims, as defined in Section 9 hereof.

b.      The Termination Date may be extended to a date no later than June 30, 2013, if all Parties mutually agree in writing to do so.  If the Termination Date is extended by such an agreement, the allowed amount of the LTD General Unsecured Claim will be reduced in

the amount of $680,000 per month for each month between May 31, 2013, and the ultimate Termination Date that is agreed upon by the Parties.

7. **Termination of Employment.**

Effective as of the Termination Date, the Debtors shall terminate the employment of the LTD Employees.  For the avoidance of doubt, the LTD Committee reserves all rights as to the current employment status of any of the LTD Employees in the event the Effective Date does not occur, and agrees solely for the purpose of settlement that termination of employment of the LTD Employees is necessary.

8. **Continuation of LTD Committee.**

Subsequent to the Effective Date, the LTD Committee shall exist solely for the purpose of enforcing and performing the terms of the Settlement Agreement and the LTD Committee shall be formally disbanded upon payment of the Settlement Amount to the LTD Employees.  The Debtors shall not be liable to pay fees, expenses or costs incurred by the LTD Committee or its professionals, advisors, designees or agents after the Effective Date, exclusive of any fees and expenses related to the preparation of monthly, interim or final fee applications for work performed or costs incurred for periods prior to the Effective Date, as required under the *Administrative Order Pursuant to 11 U.S.C. §§ 105(A) and 331, Fed. R. Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and Reimbursement of Fees and Expenses for Professionals and Official Committee Member* [D.I. 222], which amounts shall instead be paid out of the Settlement Amount.  Nothing in this provision limits the rights of the LTD Committee, which shall be fully preserved, to continue as an official committee appointed under 11 U.S.C. §1102, as appropriate, in the event that the settlement is not approved.

9. **Definition of LTD Claims.**

a.      As used herein, the "LTD Claims" shall include any and all actual and potential claims, demands, causes of action, debts, liabilities or obligations, whether based on any legal or equitable theory (including fiduciary or equitable duties) or otherwise, including, but not limited to suits in contract, tort or equity, whether arising under contract, ERISA, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the Tax Code, the Americans with Disabilities Act of 1990, or any other statute, rule, regulation, common law or otherwise, and whether arising under the laws of the United States, any political subdivision thereof or the laws of any other jurisdiction, each as may be amended from time to time, in all cases arising out of or relating to:

i.      Any past, current or future benefit or any other obligation, claim, or potential obligation or claim arising under or relating to the LTD Plans, including the LTD Benefits;

ii.     The administration of the LTD Plans, including, but not limited to, the calculation of LTD Benefits, the application of offsets against LTD Benefits, the denial of LTD Benefits, the determination of eligibility to receive LTD Benefits,

8

the interpretation of the LTD Plans and the drafting of the LTD Plans and all oral and written communications made with respect to such matters;

iii.     The amendment, modification and/or termination of any of the LTD Plans and/or any benefits or coverage thereunder, whether done previously or as provided for under the provisions of this Settlement Agreement;

iv.     Claims relating to the employment of the LTD Employees and the termination of their employment;

v.     Claims relating to the Nortel Networks Voluntary Employee Beneficiary Association, the Nortel Networks Health & Welfare Benefits Trust, any other similar trusts that do now exist or may have existed previously (together, the "Trusts"), or any obligation to escrow, segregate or fund amounts relating to the LTD Plans;

vi.     Any and all claims, defenses, causes of action, damages, costs and expenses that arise from, concern, or are related to, directly or indirectly, the allegations set forth in the Class Complaint or the LTD Objections; and

vii.     Claims for punitive damages, equitable relief, breach of fiduciary duty, detrimental reliance, attorneys' fees or other expenses related to the foregoing.

b.     For the avoidance of doubt, LTD Claims shall exclude the following claims and any and all defenses thereto, which claims shall not be enforceable against or recoverable from the LTD General Unsecured Claim, the proceeds thereof or the Settlement Amount, or the LTD Committee, or its advisors, in each case in their capacity as such (and which claims and related defenses collectively shall be referred to as, "Excluded Claims"):

i.     Claims arising under or relating to the Retiree Welfare Plans, which are subject to and being settled by the *Debtors' Motion For Entry Of Orders Pursuant to 11 U.S.C. §§ 105, 363 and 1114 and Fed. R. Bankr. P. 9019 (A) Approving Settlement Notification Procedures and, Subsequently, (B) Approving a Settlement Agreement with the Official Committee of Retired Employees* [D.I. 9224];

ii.     Claims arising under or relating to the Nortel Networks Severance Allowance Plan or the Nortel Networks Enhanced Severance Allowance Plans, including related fringe benefits;

iii.     Claims arising under or relating to the Nortel Networks U.S. Deferred Compensation Plan or the Northern Telecom Inc. Senior Management Incentive Award Program;

9

iv.     Claims for qualified pension benefits arising under or relating to the Nortel Networks Retirement Income Plan, Nortel Networks Pension Service Plan, Nortel Networks Cash Balance Plan, Northern Telecom Inc. Retirement Plan for Employees or the Nortel Networks Capital Accumulation and Retirement Program, which are properly asserted only against the Pension Benefit Guaranty Corporation;

v.      Claims for non-qualified pension benefits arising under or relating to the Nortel Networks Retirement Income Plan Restoration Plan, Nortel Networks Cash Balance Restoration Plan, Northern Telecom Inc. Excess Pension Plan, Nortel Networks Long-Term Investment Restoration Plan, Nortel Networks Supplementary Executive Retirement Plan, the Nortel Networks Special Pension Benefits Plan and the Nortel Networks Special Pension Credit Plan;

vi.     Claims for benefit payments under any of the LTD Plans that accrue prior to the Termination Date that are properly filed prior to the expiration of the Run Off Period (as amended by the Settlement Agreement), and that are subsequently approved in writing or electronically by the respective designated claims administrator, named ERISA Claims fiduciary or insurer (as defined in the governing plan document) for the LTD Plan under which such claims are asserted;

vii.    Claims for expatriate benefits and relocation expenses;

viii.   Claims for the account balance currently vested in an individual's account pursuant to the terms of the Nortel Networks Long-Term Investment Plan or Northern Telecom Inc. Thrift Savings Plan, subject to investment loss;

ix.     Workers' Compensation benefits approved prior to the Effective Date in accordance with the terms of all applicable workers compensation policies, including insurance policies, to which the Debtors are party, and applicable state workers' compensation laws;

x.      Payment in respect of accrued but unused vacation, consistent with the Debtors' applicable governing policies;

xi.     Social Security benefits, which are properly asserted only against the United States Social Security Administration; and

xii.    Claims directly arising under a written employment agreement between an individual LTD Employee and the Debtors that are unrelated to life insurance, death benefits, medical insurance, dental insurance, vision insurance, hearing insurance, accidental death and dismemberment insurance, health reimbursement

accounts, dependent day care reimbursement accounts, other welfare benefits or any other LTD Claims.

c.        Nothing in the Settlement Agreement shall constitute an admission by the Debtors that any Excluded Claims constitute valid claims against the Debtors.

10.    **Releases.**

a.        Upon the Effective Date, for the good and valuable consideration provided by the Debtors in connection with this Settlement Agreement, and except as provided for herein by the terms of the Settlement Agreement, the LTD Committee; the LTD Committee Member Parties; and each LTD Employee, in his or her individual capacity, and in his or her capacity as a member of the Settlement Class; each of its, his or her respective spouses, dependents, heirs, distributees, executors, administrators, members, officers, directors, agents, representatives, successors and assigns; and any purchaser, transferee or assignee of the LTD General Unsecured Claim or any LTD Employee's LTD Claim (collectively, the "LTD Parties") knowingly and voluntarily release and forever discharge the Debtors, their estates, the LTD Plans, the LTD Plan administrators, the members of all Nortel benefit plan committees (including, without limitation, the Employee Benefits Committee, the Joint Leadership Resources Committee, the Compensation and Human Resources Committee and any predecessors thereto), the Official Committee of Unsecured Creditors (the "UCC"), and the ad hoc group of bondholders that has been organized (the "Bondholder Group"), and each of their respective past and present parents, subsidiaries, affiliates, general partners, limited partners, shareholders, administrators, liquidators, directors, officers, employees, managers, agents, attorneys, solicitors, trustees, fiduciaries, accountants and advisors, and each of all of their respective predecessors, successors and assigns (collectively, the "Debtor Releasees"), from any and all LTD Claims and Untimely Run Off Claims, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the LTD Parties now have, had, may have had, or hereafter may have against any of the Debtor Releasees.  This Release provides for and effectuates a discharge of the Debtor Releasees to the full extent permitted by applicable law with respect to any and all LTD Claims and shall be contained in the Approval Orders and effectuated through the entry of the Approval Orders.

b.        Any and all proofs of claim filed on account of, or which, to any extent, include LTD Claims, including, but not limited to, claims arising from or relating to modifications to or the termination of LTD Plans, shall be disallowed and expunged from the Debtors' claims register on the Effective Date, solely with respect to the portion of the proof of claim relating to the LTD Claims.  Nothing in this Settlement Agreement shall waive or limit defenses available to the Debtors and their successors and assigns against a proof of claim that has been or may be filed against the Debtors in the Chapter 11 Cases, including but not limited to an objection to the claim based on a failure to timely file such claim on or before the applicable bar date, or to the extent that such claim is raised in violation of this Settlement Agreement (the "Objectionable Proofs of Claim").

c.        Except as otherwise provided in this Settlement Agreement, upon the Effective Date, the Debtors, their estates, successors and assigns (the "Debtor Parties") knowingly and voluntarily release and forever discharge the LTD Parties and all of their advisors

11

(collectively, the "LTD Releasees") from any and all LTD Claims and Untimely Run Off Claims, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the Debtor Parties now have, had, may have had, or hereafter may have against any of the LTD Releasees. This Release provides for and effectuates a discharge of the LTD Releasees to the full extent permitted by applicable law with respect to any and all LTD Claims and shall be contained in the Approval Orders and effectuated through the entry of the Approval Orders.

d.      Except for the representations and promises that form this Settlement Agreement, in entering into this Settlement Agreement and the settlement provided for herein, the LTD Parties and the Debtor Parties each recognize that no facts or representations are ever absolutely certain; accordingly, each of the LTD Parties and Debtor Parties assume the risk of any misrepresentation, concealment or mistake, and if any of these Parties should subsequently discover that any fact relied upon by such Party in entering into this Settlement Agreement was untrue, or that any fact was concealed from any of these Parties, or that any understanding of the facts or of the law was incorrect, such Party shall not be entitled to set aside this Settlement Agreement, or any of the releases contained herein, by reason thereof.  This Settlement Agreement is intended to be final and binding between the LTD Parties and Debtor Parties regardless of any claims of fraud, misrepresentation, promise made without the intention of performing, concealment of fact, mistake of fact or law, or any other circumstances whatsoever. Each Party relies on the finality of this Settlement Agreement as a material factor inducing that Party's execution of the Settlement Agreement.

e.      The Approval Orders shall include and operate as an injunction against the commencement or continuation of any action, the employment of any process or any act to collect, recover or offset any LTD Claim that any of the LTD Parties had, have or may have against the Debtor Releasees.  As of the Effective Date, the only rights that any of the LTD Parties may have with respect to the LTD Claims is the right to share in the Settlement Amount, pursuant to Section 2 hereof.

f.      Notwithstanding the foregoing, nothing contained in this Settlement Agreement shall be treated as a loss or waiver of the right of any LTD Employee to:  (i) seek to enforce the terms of the Settlement Agreement after the Effective Date or (ii) pursue any timely filed proofs of claim in the Chapter 11 Cases for any matter other than LTD Claims. Furthermore, nothing herein is intended to be, nor shall be, construed to relieve the Debtors of any obligations to pay for professional fees and/or expenses of the LTD Committee or its retained professionals incurred prior to the Effective Date, in accordance with the Bankruptcy Code and the applicable retention order, subject to the Debtors' right to challenge the fee applications of the LTD Committee.

11.      **Retiree Committee Settlement Agreement.**

a.      On December 31, 2012, the Debtors filed the *Debtors' Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105, 363 and 1114 and Fed. R. Bankr. P. 9019 (A) Approving Settlement Notification Procedures and, Subsequently, (B) Approving a Settlement Agreement with the Official Committee of Retired Employees* [D.I. 9224] (the "Retiree Approval Motion") seeking approval of a settlement agreement with the Official Committee of Retired Employees

(the "Proposed Retiree Settlement Agreement").  Pursuant to the terms of the Proposed Retiree Settlement Agreement, which may be amended and is subject to Court approval, any LTD Employee who is receiving LTD Benefits under the LTD Plans as of the Termination Date (and is therefore a member of the Settlement Class) and has met the service requirements for retirement as of January 31, 2013 (in accordance with the eligibility criteria set forth in the Retiree Approval Motion and the Proposed Retiree Settlement Agreement) can elect to participate in the Proposed Retiree Settlement Agreement provided that such LTD Employee voluntarily terminates his or her employment with the Debtors and irrevocably relinquishes his or her right to receive continued benefits under the LTD Plans, in accordance with the terms of the Proposed Retiree Settlement Agreement.[10]

b.      For the avoidance of doubt and notwithstanding anything to the contrary in the Proposed Retiree Settlement Agreement, if the Termination Date for the LTD Plans occurs on or before June 30, 2013, any LTD Employee who would have been eligible to receive LTD Benefits under the LTD Plans as of the Termination Date but for the fact that such LTD Employee elected to voluntarily terminate his or her employment with the Debtors solely in order to participate in the Proposed Retiree Settlement Agreement, will have waived his or her right to receive LTD Benefits under the LTD Plans and under this Settlement Agreement, and shall be deemed to not be a member of the Settlement Class for the purpose of participating in this Settlement Agreement or for any other purpose.

12.      **Notice.**

a.      All members of the Settlement Class and all other holders of LTD Claims shall be sent notice of the Settlement Agreement in a form substantially similar to Exhibit B hereto (with a copy of this Settlement Agreement) by the Debtors via first class mail (the "Settlement Notice"), which Settlement Notice shall:

i.      Describe the settlement of the Adversary Proceeding and the Apportionment Methodology for the Settlement Amount, including, for each member of the Settlement Class, a description of his or her projected individual allocation from the Settlement Amount, allocated in proportion to the actuarial valuation of his or her claim for LTD Benefits arising under the LTD Plans or any predecessor plans, each as amended or modified from time to time consistent with the Apportionment Methodology, as determined by the LTD Committee and to be submitted to the Bankruptcy Court for approval;[11]

ii.      Describe the releases to be granted to the Debtor Releasees and the LTD Releasees;

---

[10]      To the extent that the Proposed Retiree Settlement Agreement, as it may be amended, is approved prior to this Settlement Agreement, the terms of the Proposed Retiree Settlement Agreement shall govern the right of the LTD Employees to participate in the Proposed Retiree Settlement Agreement.

[11]      For the avoidance of doubt, the description of each member of the Settlement Class's projected individual allocation from the Settlement Amount may be sent to such class members from the LTD Committee separately from the Settlement Notice provided by the Debtors.

iii.     Establish an objection deadline of not less than ten (10) days before the final hearing on the motion to approve the Settlement Agreement for holders of LTD Claims to file and serve objections to the Debtors' motion including, without limitation, objections to the Settlement Agreement, the fairness of the settlement embodied herein, the Apportionment Methodology, the use of the Settlement Amount, the distributions from the Settlement Amount made to members of the Settlement Class thereunder, the valuation of the LTD Claim of any member of the Settlement Class under the Apportionment Methodology and any additional amounts for LTD Claims a member of the Settlement Class properly and timely asserts and believes to be due and owing to such member (collectively, the "Objections");

iv.     State that all Objections must be: (a) in writing; (b) signed by the objecting party or his or her counsel, if any; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, Delaware 19801 by no later than the objection deadline; and (e) served in accordance with the Local Rules so as to be received on or before the relevant objection deadline by the following at addresses to be provided in the Settlement Notice:  (i) counsel to the Debtors, (ii) counsel to the LTD Committee, (iii) counsel to the UCC, (iv) counsel to the Bondholder Group, and (v) the Office of the United States Trustee (such procedures, the "Objection Procedures");

v.     State that the Settlement Class, if certified, shall be a non-opt out class, and to the extent a member of the Settlement Class who disputes the Apportionment Methodology or the treatment of his or her LTD Claim when the Apportionment Methodology is applied thereto, fails to timely file and serve an Objection in accordance with the Objection Procedures, or files an Objection that is not sustained by the Court in the Approval Orders, such member will be bound to the Settlement Agreement and the resolution of his or her LTD Claims thereunder and shall be barred from seeking any alternative recovery from or remedy with respect to any LTD Claim, that relates in any way to the Settlement Amount or the LTD General Unsecured Claim (including but not limited to disputes concerning the Apportionment Methodology or calculation of the Settlement Amount), the Debtor Releasees, the LTD Committee, the LTD Committee Members, or their respective advisors or successors;

vi.     State that all LTD Claims of members of the Settlement Class shall be paid from the Settlement Amount in accordance with the Apportionment Methodology, and that to the extent any member of the Settlement Class seeks any sum above and beyond such member's share of the Settlement Amount as determined by the LTD Committee using the Apportionment Methodology, and such member has failed to timely file an Objection in accordance with the Objection Procedures, such member's claim for such sum shall be deemed released and extinguished with no further right to payment from the Settlement Amount, the Debtor Releasees, the LTD Committee, or their respective advisors or successors.

vii.    State the eligibility requirements for members of the Settlement Class to participate in the Retiree Approval Motion and the Proposed Retiree Settlement Agreement (as they may be amended or ultimately approved by the Court).

b.    In addition, the Debtors shall provide notice of the Settlement Agreement in a form substantially similar to Exhibit C hereto that is acceptable to the LTD Committee's advisors (the "Publication Notice") by publication in The Wall Street Journal (National Edition), Toronto Globe and Mail (National Edition), USA Today (National Edition), Raleigh News & Observer, Charlotte Observer, Dallas Morning News, Houston Chronicle, Tampa Bay Times, Orlando Sentinel, Miami Herald and San Jose Mercury News.

c.    All costs and expenses associated with the Settlement Notice and the Publication Notice shall be borne by the Debtors, and not by the LTD Committee, and no part of such expenses shall constitute a Settlement Administration Cost.

13.    **Exculpation and Indemnification.**

Notwithstanding anything contained in this Settlement Agreement to the contrary, the Parties, the UCC, the Bondholder Group and their respective directors, officers, employees, members, attorneys, actuaries, financial advisors, accountants, investment bankers, retained professionals, agents and representatives shall neither have nor incur any liability to any person or entity for any acts taken or omitted to be taken during the Debtors' Chapter 11 Cases in connection with, or related to the formulation, preparation, negotiation, dissemination, implementation, approval or administration of this Settlement Agreement or any contract, instrument, release or other agreement or document created or entered into in connection with this Settlement Agreement, or any other act taken or omitted to be taken during the Debtors' Chapter 11 Cases in connection with or in contemplation of this Settlement Agreement; provided, however, that nothing set forth in this Settlement Agreement shall have any effect on the liability of any person or entity that results from any such act or omission that is determined in a final non-appealable order to have constituted gross negligence or willful misconduct, and, provided further, that each Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, this Settlement Agreement.  This exculpation provision also shall be included in any plan approved in the Debtors' Chapter 11 Cases, to the fullest extent permitted by law.

Additionally, the LTD Committee, the LTD Committee Member Parties, and any professionals retained by the LTD Committee in their capacity as such shall be included in the indemnity and release provisions provided to the Debtors' professionals contained in the Debtors' chapter 11 plan to the fullest extent permitted by law.

14.    **Final Settlement.**

The Settlement Agreement is being entered into, and the LTD General Unsecured Claim is being granted in full and final satisfaction of the LTD Claims of members of the Settlement Class and, upon the occurrence of the Effective Date, shall supersede any prior obligations of the Debtors relating to the provision of LTD Benefits or payment of LTD Claims under the LTD Plans to members of the Settlement Class, such that the LTD Committee and all

members of the Settlement Class shall be forever estopped and barred from seeking further relief related to the LTD Claims or resolved matters that fall within the scope of the Settlement Agreement.

15.    **No Actions Pending Final Court Approval of Settlement Agreement.**

The LTD Committee shall be a joint movant on the motion for approval of this Settlement Agreement and shall provide information as requested by the Debtors to ensure that proper service of such motion is made on all LTD Employees.

Except as otherwise provided in an Order entered by the Court, pending final approval of this Settlement Agreement, the LTD Committee, in its capacity as plaintiff in the Adversary Proceeding, and the LTD Committee Member Parties, in their capacity as such, agree that they will not commence, prosecute, instigate or in any way participate in the commencement or prosecution of any action asserting any LTD Claims, either directly, representatively, derivatively or in any other capacity, against any of the Debtor Releasees.

16.    **No Admissions.**

a.    This Settlement Agreement and the agreement among the Parties reflected herein, were entered into in the context of a settlement.  Should the Court fail to enter the Approval Orders, unless otherwise agreed in writing by the Parties, this Settlement Agreement shall be void *ab initio* and of no force and effect, and neither the existence of this Settlement Agreement nor its contents, or the contents of any draft hereof shall be deemed to prejudice in any way the position of any party to the LTD Termination Motion or the Adversary Proceeding or their claims or defenses.  Neither the existence of this Settlement Agreement nor its contents, or the contents of any draft hereof, shall constitute an admission of liability or lack thereof by any of the Parties, or shall be admissible as evidence in any court of law or other legal proceeding for any purpose, other than for the purpose of enforcing the Settlement Agreement. Each Party acknowledges and agrees that nothing in this Settlement Agreement constitutes a concession of any factual or legal issue raised in or relating to the LTD Claims.

b.    In the event that the Court does not enter a final Approval Order approving this Settlement Agreement, for any reason, Debtors reserve the right to oppose certification of any class in the Adversary Proceeding or any other pending or future proceedings.

17.    **Governing Law.**

This Settlement Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and to be executed within the State and without giving effect to the law of any other jurisdiction or the conflict of law rules of any other jurisdiction to the extent that they might cause any laws other than the laws of the State of New York to be applied to govern or construe this Settlement Agreement.

18.    **Jurisdiction.**

The Parties agree that the Bankruptcy Court presiding over the Debtors' Chapter 11 Cases shall have exclusive jurisdiction to hear and determine all matters arising from or relating to the implementation or performance of the Settlement Agreement and the Approval Orders through the effective date of any plan confirmed in the Debtors' Chapter 11 Cases and thereafter to ensure compliance with the terms of the Settlement Agreement and Approval Orders.

19.    **Jury Waiver.**

As of the Effective Date, each Party shall waive, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any litigation directly or indirectly arising out of, under or in connection with this Settlement Agreement or any transaction contemplated hereby or thereby.

20.    **Binding Effect.**

This Settlement Agreement shall be binding on the Parties, from and after the date this Settlement Agreement is executed, subject only to the approval of the Bankruptcy Court, and shall be binding on all members of the Settlement Class, from and after the Effective Date.  In all cases it shall continue to be binding after the conclusion of the Debtors' Chapter 11 Cases.

21.    **Signing Authority.**

The Parties represent and warrant to each other that the signatories to this Settlement Agreement on their respective behalf have full power and authority to enter into it, consistent with such orders as the Bankruptcy Court may enter.

22.    **Entire Agreement.**

This Settlement Agreement and the proposed Approval Orders contain the entire understanding of the Parties with respect to the matters addressed herein, and all prior offers and discussions among the Parties concerning such matters are merged herein.  In entering into this Settlement Agreement, the Parties have not relied on any representations, warranties, covenants, promises, or undertakings except those expressly set forth in writing in this Settlement Agreement.  The terms of the Settlement Agreement constitute an integrated offer and are indivisible except as described herein, subject to the terms and conditions hereof.

23.    **Manner of Execution.**

The Parties may execute this Settlement Agreement in counterparts, and all executed counterparts shall collectively be deemed to be one and the same instrument, and the Parties may exchange signature pages via mail, courier, facsimile or email.

24.    **Tax Consequences.**

Except as expressly provided in this Section, the Debtors make no representations or warranties whatsoever regarding any tax benefits, tax obligations and/or other consequences arising from or in connection with this Settlement Agreement, the allowance of the LTD General Unsecured Claim, or any payments made from the Settlement Amount to the members of the Settlement Class, and the recipients and beneficiaries of any such payments shall be solely responsible for any taxes in respect of any payments under this Settlement Agreement or in respect of the LTD General Unsecured Claim.  The LTD Committee represents that it has sought the advice of counsel and/or its tax and financial advisors in respect of the tax effects regarding any payments in respect of this Settlement Agreement.  In the event the LTD General Unsecured Claim is not sold, transferred or assigned by the LTD Committee prior to the time any distributions are made by NNI, NNI reserves the right to withhold all taxes subject to withholding under all applicable provisions of the Tax Code.  In the event the LTD General Unsecured Claim is sold, transferred or assigned by the LTD Committee prior to the time any distributions are made by NNI in respect of such claim, the Debtors do not intend to withhold taxes on behalf of any person with respect to the LTD General Unsecured Claim or any distributions made with respect to such claim.  The Debtors shall have no liability relating to the withholding of taxes or the issuance of form W-2s.

25.    **No Claim.**

The Parties agree that this Settlement Agreement shall not be subject to any claim of invalidity, duress, mistake of law or fact, and that it expresses the full, final and complete settlement of the Parties.

26.    **Successors.**

The Parties acknowledge that each and every covenant, warranty, release and agreement contained herein shall inure to the benefit of, and be binding upon, the agents, subsidiaries, employees, officers, directors, assigns of all of the Parties hereto, and the successors in interest of the Debtors and the LTD Committee Member Parties.

27.    **Modification.**

This Settlement Agreement may not be altered, amended, abandoned, modified, waived, superseded, canceled or discharged, except by a further writing subscribed to by the LTD Committee, the Debtors and the UCC.

28.    **Incidental Acts.**

Each Party to this Settlement Agreement agrees to perform any other or further acts, and execute and deliver any other further documents, as may be necessary or appropriate to implement this Settlement Agreement.

29.    **<u>Withdrawal of LTD Termination Motion and Dismissal of</u>**
**<u>Adversary Proceeding</u>.**

On the Effective Date, the LTD Termination Motion, the Adversary Proceeding
and the Settlement Motion shall be deemed fully and finally resolved.  Within ten (10) days of
the Effective Date, all discovery requests relating to the LTD Termination Motion and Class
Complaint propounded by either party shall be withdrawn with prejudice, the Debtors shall
withdraw with prejudice the LTD Termination Motion, and the LTD Committee and the LTD
Committee Member Parties shall dismiss with prejudice the Adversary Proceeding.

(Signature Pages Follow)

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Settlement Agreement.

**The Official Committee of LTD Employees (executed by its Chair in accordance with its governing by-laws)**

By: *   /s/ Barbara Gallagher*
Name: Barbara Gallagher
Title:   Chair of the LTD Committee

**Class Representatives for Settlement Purposes**

By:*   /s/ Barbara Gallagher*
Name: Barbara Gallagher

By:*   /s/ Wendy Boswell Mann*
Name: Wendy Boswell Mann

By:*   /s/ Dianna L. Irish*
Name: Dianna L. Irish

By:*   /s/ Michael Stutts*
Name: Michael Stutts

By:*   /s/ Deborah Jones*
Name: Deborah Jones

**NORTEL NETWORKS INC.**


By:___*/s/ John Ray*_____
Name: John Ray
Title: Principal Officer


**NORTEL NETWORKS CAPITAL CORPORATION**


By:___*/s/ John Ray*_____
Name: John Ray
Title: Principal Officer


**NORTEL ALTSYSTEMS INC.**


By:___*/s/ John Ray*_____
Name: John Ray
Title: Principal Officer


**NORTEL ALTSYSTEMS INTERNATIONAL INC.**


By:___*/s/ John Ray*_____
Name: John Ray
Title: Principal Officer


**XROS, INC.**


By:___*/s/ John Ray*_____
Name: John Ray
Title: Principal Officer

**SONOMA SYSTEMS**

By: *  /s/ John Ray* _____
Name: John Ray
Title: Principal Officer

**QTERA CORPORATION**

By: *  /s/ John Ray* _____
Name: John Ray
Title: Principal Officer

**CORETEK, INC.**

By: *  /s/ John Ray* _____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS APPLICATIONS MANAGEMENT SOLUTIONS INC.**

By: *  /s/ John Ray* _____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS OPTICAL COMPONENTS INC.**

By: *  /s/ John Ray* _____
Name: John Ray
Title: Principal Officer

**NORTEL NETWORKS HPOCS INC.**

By: *  /s/ John Ray* _____
Name: John Ray
Title: Principal Officer

**ARCHITEL SYSTEMS (U.S.) CORPORATION**


By:___*/s/ John Ray*_____
Name: John Ray
Title: Principal Officer




**NORTEL NETWORKS INTERNATIONAL INC.**


By:___*/s/ John Ray*_____
Name: John Ray
Title: Principal Officer



**NORTHERN TELECOM INTERNATIONAL INC.**


By:___*/s/ John Ray*_____
Name: John Ray
Title: Principal Officer



**NORTEL NETWORKS CABLE SOLUTIONS INC.**


By:___*/s/ John Ray*_____
Name: John Ray
Title: Principal Officer



**NORTEL NETWORKS (CALA) INC.**


By:___*/s/ John Ray*_____
Name: John Ray
Title: Principal Officer

**EXHIBIT A**

**The following is a list of LTD Plans and plan descriptions, in addition to the Nortel Networks Inc. Long-Term Disability Plan, Nortel Networks Inc. Short-Term Disability Plan, the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan, maintained by the Debtors:**

## Exhibit A

- Northern Telecom Inc. Salaried Plan, printed May 20, 1977

- Northern Telecom Inc. Plan Summary, dated 1982

- Northern Telecom Inc. Group Benefits Plan (Salaried Revised Plan), dated 1982

- Northern Telecom Inc. Group Benefits Plan (Hourly Revised Plan), dated 1982

- Northern Telecom Inc. Plan Summary (Salaried), dated 1984

- Northern Telecom Inc. Plan Summary, dated 1986

- Northern Telecom Inc. Group Benefits Plan, dated January 1, 1986

- Northern Telecom Inc. Group Benefits Plan, dated January 1, 1987

- Northern Telecom Inc. Group Benefits Plan, dated January 1, 1989

- Northern Telecom Inc. Plan Supplement, dated January 1, 1989

- Northern Telecom Inc. Weekly Disability and Long Term Disability Plan, dated January 1, 1991

- Northern Telecom Inc. Vision Care Plan and Dental Plan, dated January 1, 1991

- Northern Telecom Inc. Triple Option Medical Plan, dated January 1, 1991

- Northern Telecom Inc. Life Insurance and Accidental Death and Dismemberment Plan, dated January 1, 1991

- Vision Care Plan and Dental Plan Benefits Connection, dated April 1, 1992

- Life Insurance and Accidental Death & Dismemberment Plan Benefits Connection, dated April 1, 1992

- Northern Telecom/BNR U.S. Employee Benefits For Bargaining Unit Employees of Nynex Meridian Systems Benefits Connection - Plus Benefit Plan, Dental Plan, Vision Care Plan, Term Life Insurance and Accidental Death & Dismemberment Plan, Short-Term Disability Plan, Long-Term Disability Plan, dated January 1993

- Northern Telecom/BNR U.S. Employee Benefits For Bargaining Unit Employees of Nynex Meridian Systems Benefits Connection – The Medical Plan, Dental Plan, Term Life Insurance and Accidental Death & Dismemberment Plan, Short-Term Disability Plan, Long-Term Disability Plan, dated January 1993

- Northern Telecom Inc. Your Group Program, dated 1994 (including Employee Term Life, Accidental Death & Dismemberment Insurance, Dependents Term Life Insurance, and Long Term Care Coverage)

- Flex Overview Summary Plan Description Plan Year 1996

- Short-Term and Long-Term Disability Plan Summary Plan Description 1996

- Medical Plan Summary Plan Description 1996

- Health Care and Dependent Day Care Reimbursement Account Plan Summary Plan Description 1996

- Life Insurance and AD&D Insurance Plan Summary Plan Description 1996

- Dental, Vision and Hearing Care Plan Summary Plan Description, dated April 1997

- Long-Term Investment Plan Summary Plan Description 1998

- Flex Overview Summary Plan Description Plan Year 1999

- Medical Plan Summary Plan Description 1999

- Dental, Vision and Hearing Care Plan Summary Plan Description 1999

- Health Care and Dependent Day Care Reimbursement Account Plan Summary Plan Description 1999

- Short-Term and Long-Term Disability Plan Summary Plan Description 1999

- Life Insurance and AD&D Insurance Plan Summary Plan Description 1999

- Long-Term Investment Plan Summary Plan Description 1999

- 1999 Bay Benefits Source Summary Plan Description

- Flex Overview Summary Plan Description Plan Year 2000

- Short-Term And Long-Term Disability Plans Summary Plan Description 2002

- Medical Plan Summary Plan Description 2002

- Dental/Vision/Hearing Care Plan Summary Plan Description 2002

- Life & AD&D Insurance Plan and Business Travel Accident Insurance Plan Summary Plan Description 2002

- Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan Summary Plan Description 2003

- Nortel Networks Inc. Dental/Vision/Hearing Care Plan Summary Plan Description 2003

- Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan Summary Plan Description 2004

- Nortel Networks Inc. Medical Plan Summary Plan Description 2004

- Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan Summary Plan Description 2005

- Nortel Networks Inc. Medical Plan Summary Plan Description 2005

- Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan Summary Plan Description 2006

- Nortel Networks Inc. Medical Plan Summary Plan Description 2006

- Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan Summary Plan Description 2007

- Nortel Networks Inc. Medical Plan Summary Plan Description 2007

- Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan

Summary Plan Description 2008

- Nortel Networks Inc. Medical Plan Summary Plan Description 2008

- Nortel Networks Inc. Long-Term Disability Plan Summary Plan Description 2009

- Nortel Networks Inc. Medical Plan Summary Plan Description 2009

- Nortel Networks Welfare Benefits Plan, effective as of January 1, 2009

- Nortel Networks Inc. Long-Term Disability Plan Summary Plan Description 2010

- Nortel Networks Inc. Short-Term Disability Plan Summary Plan Description 2010

- Nortel Networks Inc. Medical Plan Summary Plan Description 2010

- Nortel Networks Inc. Medical Plan Summary Plan Description 2011

- FLEX Overview Summary Plan Description Plan Year 2012

- Nortel Networks Inc. Medical Plan Summary Plan Description 2012

- Nortel Networks Inc. Business Travel Accident Insurance Plan Summary Plan Description 2012

- Nortel Networks Inc. Dental/Vision/Hearing Care Plan Summary Plan Description 2012

- Nortel Networks Inc. Short-Term Disability Plan Summary Plan Description 2012

- Nortel Networks Inc. Life and Accidental Death & Dismemberment Insurance Plan Summary Plan Description 2012

- Weekly Disability and Long Term Disability Plan

- Weekly Disability and Long Term Disability Plan

- Weekly Disability and Long Term Disability Plan Benefits Connection

**<u>EXHIBIT B</u>**

**Form of Settlement Notice Attached as Exhibit 1
to Preliminary Settlement Approval Order**

# EXHIBIT C

**Form of Publication Notice Attached as Exhibit 2
to Preliminary Settlement Approval Order**

**EXHIBIT 2**

*Form of Proof of Claim*

**United States Bankruptcy Court for the District of Delaware**

Nortel Networks Inc. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5075
New York, NY 10150-5075

# PROOF OF CLAIM

| In Re: | Chapter 11 |
|---|---|
| Nortel Networks Inc., et al. | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| Name of Debtor Against Which Claim is Held | Case No of Debtor |
| Nortel Networks Inc. | 09-10138 |

**NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be made pursuant to 11 U.S.C. § 503. A separate claim form must be used for claims asserted under 11 U.S.C. § 503(b)(9).**

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Telephone number:                    Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim

**Court Claim Number:**_____
(*If known*)

*Filed on:* _____

Name and address where payment should be sent (if different from above)

Telephone number:                    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are filing a claim for the same claim herein against the Canadian Debtors in their creditor protection proceedings pending in Canada

1. **Amount of Claim as of Date Case Filed:  $25,960,000.00**_____

      If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

   If all or part of your claim is entitled to priority, complete Item 5.

   ☐   Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

2. **Basis for Claim:  See Attached**_____
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   **3a. Debtor may have scheduled account as:** _____
          (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:    ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
   Describe: _____

   Value of Property: $_____ Annual Interest Rate _____%

   Amount of arrearage and other charges as of time case filed included in secured claim, if any:

   $_____ Basis for perfection: _____

   **Amount of Secured Claim: $_____ Amount Unsecured: $_____**

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

   Specify the priority of the claim:

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).

   **Amount entitled to priority:**

   $_____

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**FOR COURT USE ONLY**

| Date: | **Signature:** The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any |
|---|---|

*Penalty for presenting fraudulent claim*  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
Fill in the name of the Debtor in the bankruptcy case, and the bankruptcy case number.

| 09-10138 | Nortel Networks Inc. | 09-10146 | Nortel Networks Applications Management Solutions Inc. |
| 09-10139 | Nortel Networks Capital Corporation | 09-10147 | Nortel Networks Optical Components Inc. |
| 09-10140 | Nortel Altsystems Inc. | 09-10148 | Nortel Networks HPOCS Inc. |
| 09-10141 | Nortel Altsystems International Inc. | 09-10149 | Architel Systems (U.S.) Corporation |
| 09-10142 | Xros, Inc. | 09-10150 | Nortel Networks International Inc. |
| 09-10143 | Sonoma Systems | 09-10151 | Northern Telecom International Inc. |
| 09-10144 | Qtera Corporation | 09-10152 | Nortel Networks Cable Solutions Inc. |
| 09-10145 | CoreTek, Inc. | | |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2.Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

_____ **D E F I N I T I O N S** _____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
**Nortel Networks Inc. Claims Processing Center**
**c/o Epiq Bankruptcy Solutions, LLC**
**FDR Station, P.O. Box 5075**
**New York, NY 10150-5075**

**Canadian Debtors**
Nortel Netwoks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation, or Nortel Networks Technology Corporation

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

_____ **I N F O R M A T I O N** _____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or **you may access the Claims Agent's system** (http://chapter11.epiqsystems.com/nortel) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

*In re* Nortel Networks Inc., *et al*., Case No. 09-10138 (KG)

## <u>ATTACHMENT TO PROOF OF CLAIM</u>

This proof of claim is submitted as a general, non-priority, unsecured claim against Nortel Networks Inc. in the amount of $25,960,000.  This proof of claim has been allowed pursuant to the *Order (A) Approving the Settlement Agreement on a Final Basis, (B) Certifying a Class for Settlement Purposes Only on a Final Basis, (C) Authorizing the Debtors to Terminate the LTD Plans, and (D) Granting Related Relief*, as entered on [•], 2013 [D.I. •].  This attachment is incorporated into the proof of claim form to which it is attached.

**EXHIBIT 3**

*Individual Recovery Schedule*

**The current version of the Individual Recovery Schedule is attached as <u>Exhibit 13</u> to the LTD Committee's Certificate of Service, filed on April 10, 2013 [D.I. 10042], as it may be amended.**