**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

--------------------------------------------------------- x

*In re*

Nortel Networks Inc., *et al.*,[1]

                       Debtors.

--------------------------------------------------------- x

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: April 16, 2013 at 11:00 a.m. (ET)**

**RE: 9224, 9591**

**STATEMENT OF THE OFFICIAL COMMITTEE OF RETIRED
EMPLOYEES OF NORTEL NETWORKS INC., *ET AL.*, IN FURTHER
SUPPORT OF DISALLOWANCE OF THE CLAIM OF JOHN H. YOAKUM
FOR COMPENSATION FOR TERMINATION OF RETIREE WELFARE BENEFITS**

TO THE HONORABLE KEVIN GROSS,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

       The Official Committee of Retired Employees (the "Retiree Committee")

of Nortel Networks Inc., *et al.* (the "Debtors"), respectfully submits this Statement in

Further Support of Disallowance of the Claim of John H. Yoakum for Compensation for

Termination of Retiree Welfare Benefits [Docket No. 9591], and respectfully states:

<u>**BACKGROUND FACTS**</u>

       1.      On April 2, 2013, the Debtors and the Retiree Committee agreed to

defer asking the Court to rule on whether John H. Yoakum is entitled to compensation

for the expungement of his claim for Retiree Benefits.  On that day, after a hearing in

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax
identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620),
Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma
Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications
Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel
Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks
International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be
found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

which Mr. Yoakum participated by telephone (the "Hearing"), the Court entered an

Order expunging all claims for Retiree Benefits, including Mr. Yoakum's (the "Claim"),

to the extent they sought sums in addition to those due in accordance with the

"Apportionment Methodology" specified in the Settlement Agreement between the

Debtors and the Retiree Committee (the "Settlement Agreement").[2]  (*See* Order, Docket

No. 9938, at ¶¶ 6, 7, 12.)  The Debtors and the Retiree Committee had already submitted

papers seeking disallowance of Mr. Yoakum's claim for Retiree Benefits, which are

incorporated herein.  (*See* Docket Nos. 9870, 9867.)

   2. Although the Court disallowed Mr. Yoakum's Claim for Retiree

Benefits as against the Debtors and their estates at the Hearing, it retained jurisdiction,

pursuant to Section 18 of the Settlement Agreement, to determine whether he has a

right to compensation under the Settlement Agreement.  (*See* Transcript, annexed to the

Declaration of Richard K. Milin dated April 11, 2013 ( "Milin Decl.") as Exhibit 1, at 77-

78.)  The Court also scheduled a hearing on April 16, 2013 to consider the allowance of

the Claim, and asked Mr. Yoakum to provide the Retiree Committee with any

documents he relies upon in support of the Claim by April 4, 2013.  Mr. Yoakum

advised the Court he would do so.  (*See id.* at 119-20.)

   3. The Retiree Committee agreed to defer asking the Court to rule on

Mr. Yoakum's Claim because he asserted that the basis for his Claim had not been fairly

considered by the Debtors or the Retiree Committee and stated facts indicating that he

might be uniquely situated.  Mr. Yoakum stated that, "[n]o one to this point in time has

ever contacted me directly to understand or discuss the merits of my claim." (*Id.* at 69.)

Mr. Yoakum later admitted, however, that he had spoken with the Retiree Committee's

---

[2] Capitalized terms which are not defined herein shall have the meanings ascribed to them in the
Settlement Agreement.

counsel on "three occasions or … four occasions" (*id.* at 73), and the Debtors' records reflect multiple discussions of, and denials of, Mr. Yoakum's assertions that he was entitled to retiree welfare benefits as far back as February 2009.  (*See* Calltrax Log, Milin Decl., Ex. 2.)

4.　　In addition, Retiree Committee counsel wrote two letters to Mr. Yoakum after the Hearing to explain why the documents he provided do not entitle him to Retiree Benefits or compensation for a termination of Retiree Benefits.  (*See* Milin Decl., Exs. 3 and 4.)  Mr. Yoakum has continued to assert his Claim.

## BASIS FOR DENIAL OF MR. YOAKUM'S CLAIM

5.　　Based upon discussions of the facts with Mr. Yoakum, review of the documents and written statements he provided, and review of additional documents provided by the Debtors, it is clear that Mr. Yoakum is not entitled to retiree welfare benefits.  The Retiree Committee is aware of no documents that support his Claim. Accordingly, Mr. Yoakum's Claim should not be allowed as against the Settlement Amount that will be paid to the Retiree Committee pursuant to the Settlement Agreement.

6.　　The Debtors' records show that they informed Mr. Yoakum in March 2009 and again in March 2010 that he would be ineligible for Retiree Benefits unless he immediately began collecting pension benefits from the Debtors or their successor, the PBGC.  (*See* Milin Decl., Ex. 2.)  Mr. Yoakum declined to do so, and instead accepted employment with Avaya during 2009.  (*See* Yoakum Objection, Docket No. 9591.)

7.　　Mr. Yoakum's application for Retiree Benefits (the "Application") expressly stated that, "deferral of your Pension Benefit will result in a loss of your eligibility to enroll in Nortel Networks Retiree Health & Welfare Benefits."  (*See* Milin

Decl., Ex. 5 at 1.)  The Application also required Mr. Yoakum to sign an affirmation that

he had "contacted the PBGC" and "initiated my request to commence pension under

the Nortel Networks Retirement Income Plan."  (*See id.* at 8.)

        8.     Mr. Yoakum could not make the affirmation the Application

required even though the Debtors' benefits personnel had informed him that collecting

his pension was an absolute requirement if he was to be eligible for Retiree Benefits.

(*See* Milin Decl., Ex. 2 at 2, 9.)  Instead, Mr. Yoakum altered the Application's

affirmation to state that he had only "initiated my request *for information necessary* to

commence" collecting his pension.  (*See* Milin Decl., Ex. 5 at 8 (emphasis added).)  Mr.

Yoakum was not entirely accurate when he informed the Court on April 2, 2013 that:  "I

received an application from Nortel clearly stating all the benefits I was entitled to,

which I *properly* … *completed* and submitted on March the 2nd, 2010…." (Transcript,

Milin Decl., Ex. 1 at 70 (emphasis added).)  The Debtors' records indicate that they did

not process Mr. Yoakum's Application because he was, as he had been informed on

multiple occasions, "ineligible" to receive Retiree Benefits.  (*See* Milin Decl., Ex. 2 at 9.)

        9.     In his Application, Mr. Yoakum  declined participation in Nortel's

Retiree Medical Plan because it was "not economic." (*See* Milin Decl., Ex. 5 at 2.)  Mr.

Yoakum did, however, indicate that he would like to receive Nortel life insurance and

long-term care benefits (the "Requested Benefits").  (*See id.*)

        10.    The 2008 Summary Plan Description for Nortel's Retiree Life

Insurance and Long-Term Care Plan (the "SPD"), which is consistent with the Debtors'

telephone log and Mr. Yoakum's Application, establishes that he is not entitled to the

Requested Benefits.  The SPD was submitted in evidence before the Court as an exhibit

to the Supplemental Declaration of John Ray dated April 1, 2013, Docket No. 9926, a

copy of which is annexed to the Milin Declaration as Exhibit 6.

11.     The SPD demonstrates that Mr. Yoakum is not entitled to the Requested Benefits for at least three reasons.  First, the SPD states: "[f]or your Retiree Life and Long-Term Care benefits to begin, you must complete the necessary election forms within 31 days after your Retirement Start Date."  (SPD, Milin Decl., Ex. 6, at Ex. 2, p.7.)  Mr. Yoakum never completed the necessary election forms, because he altered his Application instead of requesting commencement of his pension.

12.     Second, the SPD informs retirees that, "the Company retains the exclusive right to interpret and administer the participation provisions of the plans." (*Id.* at p.12.)  This statement is made in a section described as informing retirees "what to do if you are denied the right to participate in the retiree life insurance plan." (*Id.*) The Debtors' telephone log and the Application both demonstrate that the Debtors interpreted their Retiree Plans to require retirees to begin collecting their pensions before they could be eligible for life insurance and long-term care benefits. Accordingly, the Debtors considered Mr. Yoakum's request for Retiree Benefits and denied it – which is dispositive under the SPD.

13.     Third, Mr. Yoakum failed to appeal the denial of his request for Retiree Benefits in accordance with the procedure specified in the SPD.  (*See id.* at pp.12-15.)  Mr. Yoakum should not be permitted in effect to sidestep the SPD's procedure for a definitive determination of his eligibility by asking the Court, more than two years later, to determine what the Debtors would have decided in a timely appeal.  Accordingly, this Court should find, based on the documentary record, that Mr. Yoakum is not entitled to any Retiree Benefits or compensation for their termination.

14.     Despite the foregoing evidence that Mr. Yoakum is not entitled to the Requested Benefits, Mr. Yoakum has provided no documents that even arguably demonstrate the contrary.  Rather, he relies on only a single document (the "GIS

Minutes," Milin Decl. Ex. 7), and that document refers only to retiree medical benefits, which he declined.  The GIS Minutes, which Mr. Yoakum states he received from the Debtors in July 2009, state:

> Q.      Can you retire at 55 for medical benefits but defer pension payments until 65?
> A.      Yes

15.      The GIS Minutes refer only to retiree "medical benefits," yet Mr. Yoakum expressly declined medical benefits in his Application, stating that they were "not economic."  (*See* Milin Decl., Ex. 5 at 6.)  Mr. Yoakum has offered no documents to show that retirees could be entitled to life insurance or long-term care benefits after having deferred their pensions.  (*See* Statement of Mr. Yoakum, Milin Decl., Ex. 8.)  Under this Court's Order of April 2, 2013, retirees can only establish their entitlement to retiree welfare benefits based on "written documentation."  (*See* Settlement Agreement, Docket No. 9938 at Ex. 1 § 6(b)(iii).)

16.      Moreover, the statement Mr. Yoakum quotes from the GIS Minutes is inaccurate or, at best, incomplete.  The Debtors' Retiree Medical Plan did allow participation by those who were not receiving pension payments in certain circumstances, but at the individual's own cost.  (*See* Milin Decl., Ex. 6, at Ex. 1, p.2 ("effective January 1, 2008, you will have access to the retiree medical benefits in this SPD at your own costs … if you meet the age and service requirements."); *id.* at 16 ("If you are currently an employee … and were a member of the previously available Investor Program, … you may purchase the coverage at full cost if you … meet the other eligibility requirements…."). The GIS Minutes do not indicate the extent to which an employee who retired solely for purposes of medical benefits would receive a contribution from the Debtors toward the costs of those benefits.

17.     On April 11, 2013, Mr. Yoakum provided the Retiree Committee with a lengthy statement of his position, but no additional documents.  It is easy to understand Mr. Yoakum's frustration.  However, Mr. Yoakum's statement provides no genuine support for his Claim, which should be denied based on the undisputed facts.

18.     As discussed above, the Debtor's SPD gives the Debtor "the exclusive right to interpret" its Retiree Life Insurance and Long-Term Care Plan, as well as "the right to amend or discontinue the plan program ... at any time without prior notice to, or consent by, employees."  The Debtors interpreted their Plan to mean that retirees were entitled to benefits only if they "retired" by commencing their receipt of pension benefits, and this interpretation was repeatedly reiterated to Mr. Yoakum both in the Debtors' retirement application form and in telephone conferences with the Debtors' benefits personnel.  Mr. Yoakum was informed of the requirement that he must start collecting his pension to be eligible for Retiree Benefits in March 2009 before he moved to Avaya and in March 2010 before he submitted his Application.  (*See* Milin Decl., Ex. 2 at 2. )  His Application was not processed because he was told he was ineligible, but he insisted on submitting the Application anyway.  (*Id.* at 9)  The Debtors' position that he was ineligible remained consistent  (*id.*), and Mr. Yoakum did not appeal.

19.     Nothing in Mr. Yoakum's statement provides any reason to disregard these dispositive facts.  It appears from the GIS Minutes that Mr. Yoakum was told in July 2009, either incompletely or inaccurately, that it would be possible in unspecified circumstances to be eligible for medical benefits but defer collecting his pension.  However, Mr. Yoakum was told otherwise both in March 2009 and before he submitted his Application in March 2010, and he chose not even to request medical

benefits.  Mr. Yoakum does not assert, or provide any evidence, that he relied on the inaccurate statement to his detriment.[3]

20.     Mr. Yoakum also argues that the Debtors did not have the right to require him to accept a pension from the PBGC rather than from Nortel as a condition of eligibility for Retiree Benefits.  He maintains, without citing any support, that this requirement was "unenforceable."  However, the PBGC was the Debtors' successor in administering the Nortel Retirement Income Plan, and the Debtors reserved the right in the SPD to interpret their Retiree Life Insurance and Long-Term Care plan.  The Debtors were therefore free to interpret "retirement from Nortel" to mean acceptance of a Nortel pension, even if the pension was administered and paid by the PBGC.  In addition, the SPD states that, "Nortel Networks reserves the right to amend or discontinue the plan program described in this summary at any time without prior notice to, or consent by, employees."  (SPD, Milin Decl., Ex. 2 at 3.)  Consequently, the Debtors had a right to require Mr. Yoakum to commence receiving his pension from the PBGC instead of from Nortel as a condition of eligibility for Retiree Benefits even if it they had not required this before.

21.     Mr. Yoakum's other arguments are similarly without merit.  First, he asserts that the Debtors admitted his entitlement to Retiree Benefits when they sent him his Application.  In fact, the Debtors admitted at most that he *might be* entitled to Retiree Benefits.  They retained the right to, and did, deny his Application.

---

[3] Mr. Yoakum asserts that Retiree Committee counsel was incorrect in stating that Mr. Yoakum was informed before he accepted employment with Avaya that the GIS Minutes were inaccurate.  It would have been better to state that Mr. Yoakum was informed before he accepted employment with Avaya that the *information* in the GIS Minutes was inaccurate.  In any event, Mr. Yoakum does not assert that he relied on the misinformation in accepting employment with Avaya.  Also, although Mr. Yoakum disputes the Debtors' statement that he voluntarily chose not to retire directly from Nortel, it is uncontested that he chose to accept employment with Avaya rather than to cease working and accept a Nortel pension from the PBGC.  In the Debtors' view, continuing employment, even with a different company, was not "retirement."

22.     Second, Mr. Yoakum asserts that he is entitled to compensation for lost retiree medical benefits even though he declined participation in the Debtors' Retiree Medical Plan.  Mr. Yoakum has provided no documents to support this assertion, however, either with his statement to the Retiree Committee or with his Proof of Claim No. 3732, which he filed against the Debtors.  There is simply no evidence to show that Mr. Yoakum was promised anything more than participation in the Retiree Medical Plan, which the Debtors offered him if he met eligibility requirements, but which he declined.  Mr. Yoakum should be treated no differently than any other retiree who was ineligible for retiree medical benefits.

23.     Finally, Mr. Yoakum apparently suggests that the Retiree Committee should pay him compensation because the costs of doing so would be small. Mr. Yoakum is no differently situated from many other retirees, and the Retiree Committee is unwilling to set a precedent by offering to pay Mr. Yoakum even though he lacks a valid claim.  Moreover, doing so would violate section 6(b)(iii) of the Settlement Agreement which allows Retiree Claims "provided that such claims are supported by written documentation and qualify as a Retiree Claim as set forth in section 10 below."  Mr. Yoakum's Claim does not satisfy either of those requirements. The Retiree Committee has examined Mr. Yoakum's claim and has concluded, based on facts that are not subject to reasonable dispute, that it is without merit.

24.     Based on the foregoing facts, the Retiree Committee respectfully requests that Mr. Yoakum's Claim for compensation for a purported denial of Retiree Benefits be expunged and disallowed as a claim against the Settlement Amount and the Retiree Committe.  Mr. Yoakum should not be allowed to share in the compensation that the Debtors have provided for those who are eligible for Retiree Claims under the

Settlement Agreement and whose Retiree Benefits will be terminated pursuant to the

Settlement Agreement.

<u>CONCLUSION</u>

25.    For the foregoing reasons, the Retiree Committee requests that the

Court expunge Mr. Yoakum's Claim for compensation for termination of retiree welfare

benefits.

DATED:  Wilmington, Delaware
         April 11, 2013

**MCCARTER & ENGLISH, LLP**

_/s/ William F. Taylor, Jr._
William F. Taylor, Jr. (DE Bar I.D. #2936)
Renaissance Centre 405 N. King Street,
8th Floor
Wilmington, DE 19801
(302) 984-6300
(302) 984-6399 Facsimile
wtaylor@mccarter.com

-and-

Albert Togut, Esq.
Neil Berger, Esq.
Togut, Segal & Segal LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
(212) 967-4258 Facsimile
altogut@teamtogut.com
neilberger@teamtogut.com

_Counsel to the Official Committee of Retired_
_Employees_