EXHIBIT 1

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                       FOR THE DISTRICT OF DELAWARE


IN RE:                          )    Case No. 09-10138(KG)
                                )    (Jointly Administered)
NORTEL NETWORKS, INC.,          )
      et al.,                   )    Chapter 11

                                )    Courtroom 3
                                )    824 Market Street
            Debtors.            )    Wilmington, Delaware
                                )
                                )    April 2, 2013
                                )    10:00 a.m.


                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JUDGE KEVIN GROSS
                UNITED STATES BANKRUPTCY JUDGE
```

APPEARANCES:

For Debtors:                    Morris Nichols Arsht & Tunnell, LLP
                                BY: CURTIS MILLER, ESQ.
                                BY: ANN CORDO, ESQ.
                                1201 North Market St., 18th Floor
                                Wilmington, DE  19899-1347
                                (302) 351-9357

                                Cleary Gottlieb Steen & Hamilton
                                BY: LISA SCHWEITZER, ESQ.
                                BY: ROBERT RYAN, ESQ.
                                One Liberty Plaza
                                New York, NY  10006
                                (212) 225-2000


ECRO:                           GINGER MACE

Transcription Service:          DIAZ DATA SERVICES, LLC
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

For the Unsecured
Creditors' Committee:      Richards Layton & Finger
                          BY: AMANDA STEELE, ESQ.
                          One Rodney Square
                          920 North King Street
                          Wilmington, DE  19801
                          (302) 651-7531

                          Akin Gump Strauss Hauer & Feld
                          BY: LISA BECKERMAN, ESQ.
                          BY: ARUN KURICHETY, ESQ.
                          One Bryant Park
                          New York, NY  10035
                          (212) 872-1000

For U. S. Trustee:        Office of the U. S. Trustee
                          BY: MARK KENNEY, ESQ.
                          844 King Street, Ste. 2207
                          Lockbox 35
                          Wilmington, DE  19801
                          (302) 573-6491

For Bondholder Group:     Milbank Tweed Hadley & McCloy
                          BY: THOMAS MATZ, ESQ.
                          One Chase Manhattan Plaza
                          New York, NY  10005
                          (212) 530-5000

For Retirees:             McCarter & English
                          BY: WILLIAM TAYLOR, ESQ.
                          BY: MARK DANIELLE, ESQ.
                          Renaissance Centre
                          405 N. King St., 8th Floor
                          Wilmington, DE  19801
                          (302) 984-6313

                          Togut Segal & Segal, LLP
                          BY: NEIL BERGER, ESQ.
                          BY: STEPHANIE SKELLY, ESQ.
                          BY: RICHARD MILIN, ESQ.
                          One Pennsylvania Plaza
                          New York, NY  10119
                          (212) 594-5000

APPEARANCES:
(Continued)

For U. K. Joint

```
Administrators:               Young Conaway Stargatt & Taylor LLP
                              BY: JAIME LUTON CHAPMAN, ESQ.
                              Rodney Square
                              1000 N. King Street
                              Wilmington, DE  19801
                              (302) 571-5030


For Pro se:                   Robert Horne



TELEPHONIC APPEARANCES:

For Nortel UK:                Willkie Farr & Gallagher, LLP
                              BY: ANDREN HANRAHAN, ESQ.
                              (212) 728-8179

For Ad Hoc Committee:         Milbank Tweed Hadley & McCloy
                              BY: CINDY DELANO, ESQ.
                              (212) 530-8978

For Bank of America:          Bank of America
                              BY: ESTHER CHUNG
                              (646) 855-6705

For Interested Party:         Barclays Capital, Inc.
                              BY: OLIVIA MAURO
                              (212) 412-6773

For Interested Party:         Dow Jones & Co.
                              BY: PEG BRICKLEY
                              (215) 462-0953

For Law Debenture Trust
of New York:                  Patterson Belnap Webb & Tyler
                              BY: CRAIG W. DENT, ESQ.
                              (212) 336-2864

For Monitor:                  Allen & Overy, LLP
                              BY: DANIEL GUYDER, ESQ.
                              (212) 756-1132

TELEPHONIC APPEARANCES:
(Continued)

For Claimant:                 In Pro Per/ Pro Se
                              BY: SHERMAN V. HAWKINS
                              770-993-3306
```

```
For Official Committee
Of Unsecured Creditors:   Akin Gump Strauss Hauer & Feld LLP
                          BY: FRED S. HODARA, ESQ.
                          (212) 872-8040

For Interested Party:     Farallon Capital Management
                          BY: MICHAEL LINN
                          (415) 421-2132

For Interested Party:     In Pro Per/ Pro Se
                          BY: WALTER REVA
                          (972) 480-8348

For In Propria Persona:   In Pro Per/ Pro Se
                          BY: JOHN H. YOAKUM
                          (919) 469-9383
```

1

1      WILMINGTON, DELAWARE, TUESDAY, APRIL 2, 2013, 10:08 A.M.

2            THE CLERK:  Please rise.

3            THE COURT:  Good morning, everyone.  Thank you

4    and please be seated.  And it's good to see you all.  Mr.

5    Miller, good morning.

6            MR. MILLER:  Good morning, Your Honor.  How are

7    you?

8            THE COURT:  Very well.  How are you?

9            MR. MILLER:  Good.  For the record, Curtis Miller

10   of Morris Nichols on behalf of the Debtors.  With me in

11   Court today at the counsel's tables, Lisa Schweitzer of

12   Cleary Gottlieb and with Your Honor's permission, I'll just

13   turn the proceedings over to her.

14           THE COURT:  Thank you, Mr. Miller, that's fine.

15           MR. MILLER:  Thank you, Your Honor.

16           THE COURT:  Good.  Ms. Schweitzer, good morning.

17           MS. SCHWEITZER:  Good morning, Your Honor.  Lisa

18   Schweitzer from Cleary Gottlieb for the Debtors.

19           I feel like I have frequent flyer miles on the

20   Amtrak these days --

21                      (Laughter)

22           MS. SCHWEITZER:  -- for coming down here, but

23   it's always a pleasure to see you.

24           THE COURT:  And I think we'll be seeing a lot

25   more of one another.

1              MS. SCHWEITZER:  Absolutely, for all good things.

2    Hopefully, they're all as successful as the reasons we're

3    here today.

4              As Your Honor knows, this is -- the settlement

5    has been a long time coming in many ways.  We've worked very

6    long and hard to be able to come before Your Honor today to

7    seek approval of the settlement with the Retiree Committee

8    regarding the consensual termination of the retirement

9    benefits.

10              THE COURT:  Yes.

11              MS. SCHWEITZER:  And that's the sole motion

12    before Your Honor this morning.

13              As Your Honor is aware, we're seeking approval of

14    the settlement which contemplates the Debtors' plans will be

15    terminated as of May 31 or possibly there's a mechanism to

16    extend that to June 30.

17              THE COURT:  Yes.

18              MS. SCHWEITZER:  Built in and the settlement

19    payment would be cash payment to the Retiree Committee of

20    approximately $66.8 million which would ratchet down

21    slightly, if the termination date were moved to June 30.

22              THE COURT:  To take into account the

23    additional --

24              MS. SCHWEITZER:  The costs of providing --

25              THE COURT:  Yes.

1          MS. SCHWEITZER:  -- the benefits for the extra

2    month.

3          THE COURT:  Right.

4          MS. SCHWEITZER:  Right.  And Your Honor is

5    familiar with the path that brought us here to the

6    settlement, but the record, it's worth taking a minute to

7    walk through, historically, how we got here.

8          As Your Honor's aware, we first sought

9    termination of the benefits in 2010, the pre-Visteon effort.

10          THE COURT:  Yes.

11          MS. SCHWEITZER:  And upon the -- the Debtors at

12    the time, took the position and the Debtors would, if forced

13    to litigate, still take the position that the plans

14    themselves are terminable at will by the Debtors without

15    further liability or need to pay compensatory claims to

16    Retirees.  We understand that's a disputed issue, but that's

17    the position the Debtors took in 2010 and it's something

18    that they would press at litigation.

19          But in light of Visteon, which told folks you

20    still have to get a Retiree Committee and go through the

21    process either way, we withdrew the motion in 2010.  The

22    committee was appointed in the Spring of 2011, and we've

23    been working now for over a year with the Retiree Committee

24    to talk about -- to share information and talk about the

25    possible consensual termination of the plans.

1                    The committee was really up and running the Fall

2    of 2011.  At that time, the facts are set forth in Mr. Rays'

3    declaration, but we, the Debtor, provided voluminous

4    information to the committees.  There was several efforts of

5    meeting with the committee as a whole and meeting with

6    professionals to exchange information regarding the plans

7    and the census data behind those plans, the benefits

8    available historically to Retirees.  And the Debtors

9    arguments why the plans can, and should, and need to be, in

10   fact, terminated at this time to further their restructuring

11   efforts; in this case, liquidation efforts.

12                    As Your Honor is familiar, that those

13   discussions, while they -- while we're working hard, weren't

14   productive at first, and then to the point that we asked for

15   the appointment of Rich Levin as a Mediator.

16                    THE COURT:  Yes.

17                    MS. SCHWEITZER:  And he was able to help further

18   the efforts in the Spring of 2012.  The Debtors and the

19   Retiree Committee, still everyone being zealous advocates,

20   couldn't reach consensus in the Summer of 2012.  And the

21   Debtors have continuously maintained that this is an

22   important thing for us to have finality and certainty, and

23   so had filed a motion in July of 2012, seeking termination

24   of the plans by December 2012.

25                    THE COURT:  Right.

1          MS. SCHWEITZER:  Discussions continued.  If those

2   discussions had broken down, there was a trial date of

3   January 2013 that would -- the Debtors would have sought a

4   non-consensual termination, a mid-year termination of the

5   plans for less consideration of a proposal that's worse than

6   what's being offered to the Retirees in the settlement now.

7          After the filing of the motion, the Debtors and

8   the Retiree Committee continued to work together with the

9   able assistance of Mr. Levin as a helpful Mediator.  We

10  reached a settlement in principal in the Fall of 2012 and

11  went through the documentation process, working out the

12  details, such that the final Settlement Agreement was signed

13  in December of 2012 and put up for -- a file -- the motion

14  was filed, I think, New Year's Eve or like the last week of

15  December we got it on file.

16         And it's been a long process.  It's been an arm's

17  length, hard process, but I think we've gotten to a place

18  where the Debtors' and Retiree Committee are satisfied with

19  the result.  And, obviously, Mr. Berger is here in the

20  courtroom to speak on behalf of the Retiree Committee.  Him

21  and his partner, Al Togut, certainly have worked very hard

22  and have been zealous advocates for their side in their

23  positions.

24         But I think at this point, the Debtors and

25  Retirees' Committee come forward presenting the settlement

1   in that it brings certainty to the Retirees and to the

2   Debtors.   And while the Debtors understand that the Retirees

3   would prefer that the benefits continue indefinitely, then

4   at least the cash payment here provides somewhat of a soft

5   landing for the Retirees and an ability for the Retirees to

6   transition to alternative arrangements and to use the cash

7   to mitigate other expenses that they face in light of the

8   termination of the plans.

9           The terms of the settlement are obviously set

10  forth in the Settlement Agreement in the motion itself, but

11  to walk through them, as I mentioned, that the plan would be

12  terminated either May 31 or swing to June 30.  There's the

13  cash payment of either $66,879,000 that would be made to the

14  Retiree Committee by the Debtors.  Or if it was moved to

15  June 30, would be -- the payment would go down to

16  $66,172,000.  As Your Honor's indicated, that that's to be

17  compensatory to compensate the Debtors for the approximate

18  cost of providing the benefits for the additional month.

19          THE COURT:  Yes.

20          MS. SCHWEITZER:  In the payments being made to

21  the Retiree Committee and the way the settlement has been

22  set up is that the Retiree Committee has full responsibility

23  and authority for allocating the retirement settlement

24  payment among its members and has come up with its objective

25  principal basis for doing so.  The Debtors understand that

1    that burden is on the Retiree Committee or its successors.

2            We understand also, that the Retiree Committee is

3    setting up an LLC and that LLC will form a VEBA.  This is

4    not the Debtors' VEBA.  It's clear in the Settlement

5    Agreement and in the order that this is not a Debtor

6    sponsored VEBA.  This is not something that the Debtors have

7    responsibility for administering.  It was important to the

8    Debtor that they have no liability relating to how the

9    payments are administered.  From the Debtors' side, we're

10   paying the Retiree Committee and the Retiree Committee takes

11   the responsibility from that point forward.

12            THE COURT:  Yes.

13            MS. SCHWEITZER:  The settlement also contemplates

14   that all Retiree claims are being released as part of the

15   settlement.  As you've seen from some of the objectors,

16   people have this idea that while I could have later retired

17   or I could have had benefits, or I did have benefits and I

18   might have walked away from them, but I, you know, in the

19   future might have wanted to come back.

20            As part of the settlement payment, it was

21   extremely important to the Debtors that we have full and

22   final release and satisfaction on all Retiree claims and all

23   those are channeled effectively to the settlement and to the

24   settlement payment to the extent it's determined by the

25   Retiree Committee that there is a basis for including you in

1    the distributions.  But you'll see that again in the

2    Settlement Agreement itself in the order that builds in and

3    incorporates the releases of those retirement plans for

4    benefits of the Debtors and certain of their directors,

5    officers, and people previously responsible for

6    administering the plans.

7            THE COURT:  And along with that, the dismissal of

8    their claims.

9            MS. SCHWEITZER:  Correct.

10           THE COURT:  Yes.

11           MS. SCHWEITZER:  And so the claims are dismissed

12   either in whole in part.  That the -- if someone filed a

13   proof of claim that was for Retiree benefits and other

14   benefits, what we did is made a schedule saying the Retiree

15   benefits are disallowed in that part and the remainder of

16   the claim would go forward.  And many of those claims don't

17   have liquidated amounts, so we just had the chart to sever

18   the causes of action.

19           THE COURT:  Yes.

20           MS. SCHWEITZER:  Rather than getting into

21   estimating and all that, but the remaining causes of action

22   would survive.  If they were listed, and if the claim was

23   wholly for Retiree benefits, whether or not you thought you

24   were -- whether or not we would say you're eligible or that

25   you have a right to payment, if you said I have a claim for

1  Retiree benefits under one of these plans, because I in the

2  future wanted to participated or I currently participate,

3  those claims are being expunged.  And if you've proven that

4  you have a valid claim that the Retiree Committee accepts,

5  then you'll get a settlement payment.  But even if you

6  don't, those will be expunged and resolved as part of the

7  settlement.  And that is very important to the Debtors, that

8  if we're paying money that we have completion and finality

9  to the process.

10            We also as Your Honor might recall, had the --

11  well, you will recall, that we had the parallel settlement

12  proposed with the long-term disabled individuals.

13            THE COURT:  Yes.

14            MS. SCHWEITZER:  And while there is a separate

15  committee, the Debtors have historically worked these two

16  processes in parallel and settlement discussions have

17  occurred in parallel.  And we were lucky enough that the

18  settlements were proposed close enough in time, that people

19  have the ability to hold the two settlement against each

20  other.

21            For the long-term disabled individuals, they --

22  certain individuals have said, look, I would have the right

23  to retire into the -- if I were to go to completion, I would

24  have the right to retire and to get Retiree benefits under

25  the Retiree Welfare Plans.  And, historically, there's been

1  precedent for them doing so.  The Retiree Committee, if

2  forced to litigate that, might read the plans differently to

3  say that the -- some of the plans require you to be actively

4  at work at the time that you retire.  And so if in a

5  litigation, there might be different answers to their

6  entitlement to retirement benefits, but in the spirit of

7  settlement, one element of the settlement has been to take

8  people who may in the future, if they were long-term

9  disabled, but they had years of service --

10                  THE COURT:  Okay.

11                  MS. SCHWEITZER:  -- already established.  Right?

12  I'm only 63, but I have years of service.  Or I've chose not

13  to retire, but I otherwise could have been eligible to

14  retire.  That those people, if you met those criteria before

15  January 31 of this year, that you have the right as a long-

16  term disabled employee or as another active employee, or one

17  or two cases it's an employee on COBRA for a month bridging

18  to retirement, they have the right to participate, elect to

19  participate in the Retiree settlement.

20                  The thing about that election, and it's made

21  clear in the notices, and they'll actually be an election

22  form that we'll use, is that you have to pick.  Right?  That

23  you can be a long-term disabled person and continue to

24  receive long-term disability benefits, but these plans are

25  terminating and so your claim to any future retirement would

1    be severed.  Right?  Or you can pick to retire, to waive any

2    right to future long-term disability benefits and to,

3    therefore, participate in the Retiree settlement.

4            And so that's an advantage to people is that you

5    have that right to choose and you can say I either want to

6    be the Retiree in the retirement settlement or I want to

7    continue pursuing the long-term disability claims,

8    understanding those may be settled.  Hopefully, the

9    settlement will go forward and be approved, but even absent

10   a settlement, now is the time to make the choice.

11           And I think there have been no objections filed

12   --

13           THE COURT:  No.

14           MS. SCHWEITZER:  -- with respect to that

15   mechanism.  And we view it as -- you never want to use the

16   word concession, but an advantage of settlement that might

17   not be there in a litigation option.  And we try to give

18   people at least the choice to be able to make the decision

19   on the best information available to them right now.

20           And as I said that, you know, the Debtors were --

21   if we were forced to litigate this, would take the position

22   that we do have the contractual right to terminate the plans

23   and that we would just have to make the showings under 1114

24   about that it be necessary for a reorganization.  We think

25   we could make that showing, but we also understand that the

1   termination of the plans would cause hardship for certain of

2   the Retirees.  And that the Debtors from the beginning have

3   said that it's been our interest and intention to try to

4   find ways to make a soft landing for the Retirees associated

5   with the termination of benefits.

6           And so in that vein, the Debtors certainly have

7   made substantial concessions from their original positions

8   and from prior offers.  And we also, you know, think as a

9   result of the zealous negotiations of the Retiree Committee,

10  we've moved up and they've moved down from their initial

11  position.  So in the spirit of compromise, we've both

12  reached a place where we can meet in the middle and have

13  some advantage to both parties.

14          And I think, you know, the reaction, you rarely

15  have people filing motions thanking you for terminating or

16  responses thanking you for terminating their benefit, but I

17  think that there is something to the record that only seven

18  responses or objections have been filed, when over 4,000

19  people are participating in the plans and there's the actual

20  Retirees from Nortel are thousands more than that.

21          And so I think that we, the Debtors, certainly

22  take that as a showing that while people obviously might, in

23  some cases, want the benefits to continue, that at least

24  they recognize that this is a settlement that is, you know,

25  fair and reasonable under the circumstances and that there's

1  an interest in reaching certainty and closure at least with

2  respect to the litigation, which is a theme we've, quite

3  frankly, heard at hearings and we've heard informally from

4  people is resolution is as important right now and being

5  able to move to the next stage of my life.

6           And so in terms of the legal standards, I think

7  that 1114, once you've reached a consensual agreement, in

8  this case of the Retiree Committee, the standard really is

9  we can come forward to you and show that we've reached the

10 consensual agreement.  Under -- we could certainly meet this

11 showing under Section 363 or 9019 *Martin* factors in terms of

12 this -- necessary and appropriate use of the proceeds that

13 we're paying over in the settlement payments to the

14 Retirees, in that we think that while we would take the

15 position of litigation that we would legally owe less, that

16 the Debtors think that it's in the interest of their estates

17 to reach closure, to make these payments, and to bring

18 closure to the litigation into the claims generated by that

19 potential litigation.

20          In the spirit of 9019 *Martin* Factors, certainly,

21 you're well aware of the litigation positions that have been

22 taken and the litigation that could proceed absent the

23 settlement and that all sides bear risk in that.  So again,

24 that in the lowest range of reasonableness, we think it

25 easily passes that hurdle.

1              THE COURT:  I also note that the Debtors have

2  been making payments despite Visteon and have not moved the

3  process faster in order to save from having to do so and

4  that certainly is significant as well.

5              MS. SCHWEITZER:  Yes.  And that's right is that,

6  Your Honor, we're constantly reminded by the Retiree

7  Committee that you don't get credit for past payments, but

8  on the other hand, that the Debtors certainly have tried to

9  give the time and energy necessary to make this the right

10 answer rather than just a rushed response --

11             THE COURT:  Yes.

12             MS. SCHWEITZER:  -- or rushed solution.  As Your

13 Honor is aware, we've extended the prior litigation dates

14 and we've -- I think a year and a half is very much on the

15 long side of these motions in terms of other cases where

16 they're often done.  I think, *Kodak* recently was done in a

17 matter of months.

18             THE COURT:  Yes.

19             MS. SCHWEITZER:  And so that I think that

20 everyone spent a lot of time and attention making sure that

21 all sides were considered and that the people had notice

22 coming into this of the possible and ultimate termination of

23 the plans.

24             Well, as I said, the 1114(f) standards for non-

25 consensual termination aren't required, but just to run

1    through them because I think that they would be met.  Is

2    that certainly, the Debtors have made a proposal and, in

3    fact, multiple proposals to the Retiree Committee.

4             The Debtors have offered evidence in Mr. Rays'

5    declaration as to why the benefits are necessary to the

6    reorganization.  And while Your Honor doesn't have to find

7    that now, certainly, the Debtors think that we've put in a

8    good faith showing of -- that the Debtors are in advanced

9    stage of our wind down.  That we have a residual skeleton

10   crew of employees left at this point.  But there's a lot of

11   time, effort, attention, and costs necessary to maintaining

12   Retiree plans at a time where we have very few current

13   employees.  We have the balancing of the paying for people

14   who are no longer working at the company, while active

15   employees have been laid off.  And also, this year, it

16   becomes almost implausible and infeasible to continue to

17   administer the plans for so many people indefinitely when

18   we're hopefully, inches or months away from reaching larger

19   closer on the case.

20            And, obviously, the larger closure on the case

21   has been up in the air as we went through the mediation and

22   the sale proceeds allocation.  But we've gotten the message

23   and we're all in the interest of bringing that to closure in

24   the months or year to come.  And so I think that that also

25   is a nice synergy here in terms of another -- that that

1  uncertainly seems to be, hopefully, reducing and that we

2  know that we're working towards bringing that to an end

3  conclusion as well.

4          Certainly, we would take the position that the

5  effective parties are being treated equally and fairly

6  compared to other creditors.

7          THE COURT:  Yes.

8          MS. SCHWEITZER:  On that they're getting a cash

9  payment now rather than a claim to be liquidated later.  And

10 that where the Debtors are taking the position that there

11 would be no legal liability, which we understand the Retiree

12 Committee would dispute, that we feel that, you know, that

13 is a fair -- that there's been a substantial concession by

14 the Debtors as being if you look on a monthly basis, it's

15 several months or a couple years of benefits being

16 compensated for.  And given all the uncertainties of

17 litigation and the other factors that would go into it, that

18 if we made this as a proposal, we feel that we could have

19 defended it on a fair and equitable basis as well.

20         With that, I'll turn to the handful of objections

21 that have been filed.  I think as we indicated in our

22 supplemental reply, that I think the objections bucket into

23 a couple of different issues.

24         THE COURT:  Yes.

25         MS. SCHWEITZER:  And so the first -- the

1  objection was filed by Mr. Elias.  And I apologize in

2  advance if I'm pronouncing anyone's name, but Mr. Elias had

3  filed a short letter saying that the Debtor -- the

4  settlement would be a hardship to his current situation.

5  Mr. Elias didn't provide specific details.  And we

6  understand as I said before, that individual Retirees might

7  feel that there is a hardship being placed on them with the

8  termination and that the payment is trying to ameliorate

9  that, but the standard -- of course, there's going to be

10 hardship in any settlement, in any termination.  And while

11 it's unfortunate, it is part of the bankruptcy process that

12 with the wind down of the estates, there will be loss of

13 benefits or claims, you know, a dollar promise moving to a

14 claim, and that's what's happening here.  So I don't have

15 specific details to respond to regarding his personal

16 circumstances, I think that his right to participate in the

17 Retiree settlement is the remedy given to him under the

18 situation.

19         I think the next objection that was filed was by

20 Mr. Cherry who my understanding is a veteran who has

21 available healthcare resources, so he has medical benefits

22 paid for.  And his objection is not to the settlement as a

23 whole, but it goes into the second half, how the settlement

24 is being handed out to individual Retirees, where it's our

25 understanding that the Retiree Committee proposes to set up

1  this VEBA to give people HRA's or the -- kind of the flex

2  spending type accounts.  That you don't get the cash, you

3  have the right to use it against medical benefits.  And Mr.

4  Berger can explain this in more detail or correct me where

5  I'm saying things are wrong, but Mr. Cherry basically comes

6  down to, I'd rather have the cash.  Right?

7          THE COURT:  Yes.

8          MS. SCHWEITZER:  Under my personal circumstances.

9  And again, this is not to lessen those personal

10  circumstances, but when you're proposing a settlement for

11  6,000 people, we understand that the Retiree Committee

12  wanted to consider the solutions that are best for the

13  majority of the population.  And that many people who are

14  losing medical benefits, would want the tax advantages of

15  the HRA's, rather than cash today, which is different tax

16  consequences.

17          So I'll leave it to the Retiree Committee to

18  address that in more detail.  But certainly, the objection

19  that the cash versus the -- getting cash versus a retirement

20  -- I'm sorry, health reimbursement account, it seems to be a

21  particular issue because of his circumstances.  And again,

22  doesn't defeat the settlement as a whole in our mind in

23  terms of the standards by which the settlement is viewed.

24          And the next objection is by Mr. Collins.  Mr.

25  Collins raised a few points in his objection that center

1  around the fact that there is a decision to terminate the

2  plans mid-year.

3          THE COURT:  Yes.

4          MS. SCHWEITZER:  At this time generally, rather

5  than in the future.  And Mr. Collins' first objection was

6  gee, I don't really know what's happening in the larger

7  litigation, that could go on for a longer period of time.

8  And, obviously, the facts have changed on that.  But that is

9  part of the compromise in that just so it's clear, for the

10 record is the Debtors took that into account and that was

11 one of many factors being argued vigorously by both sides is

12 when will it be necessary for reorganization to terminate

13 these plans?  Does it have to be done today?  Does it have

14 to be done in a year?  And the size of the settlement

15 payment, while not a concession of any legal position,

16 certainly factor that in in the discussions.  The fact that

17 there is a settlement being paid and that it substitutes for

18 several months or years of current benefits, addresses that

19 concern.  So it was a consideration taken into account.

20          And as I said, we've offered or we will proffer

21 into evidence, but we've put forward the declaration of Mr.

22 Ray who talks about the reasons that we're seeking

23 termination now in the middle of the year and what we really

24 sought a year or two ago, and this just happens to be on the

25 point of the calendar that we are able to reach a

1  settlement.

2          But it is worth saying for the record again, that

3  the Debtors would not have given the same consideration in

4  December.  It's not a matter of you can just keep taking a

5  couple hundred thousand dollars off a month, every month to

6  move this out to December.  This offer was made based on a

7  termination date of May.  And the Debtors repeatedly asked

8  for, repeatedly resisted a further date.  We wanted last

9  December.  So this was a concession to pull it out to May,

10  rather than something that we just viewed as you can you

11  could keep ratcheting another month, another month, all the

12  way to December.

13          THE COURT:  And you've taken that into account in

14  the settlement and if it has to be extended for the month,

15  it will reduce the settlement fund.

16          MS. SCHWEITZER:  Exactly.  We're willing to

17  extend it to June, but it's not mechanical that someone can

18  look at us and say that's no big deal, keep going for

19  another six months.

20          THE COURT:  Right.

21          MS. SCHWEITZER:  But that would not be the same

22  economic offer.  And we never made an offer because we were

23  asked over and over again to extend it to December and we

24  refused.  So people -- the idea that this could just be

25  extended for a few more months is a fallacy.

1          And then Mr. Collins' other objections stem from

2     that same idea of that I'm paying for a part year of benefit

3     and that the deductibles measurable -- should be prorated or

4     the plan terms should be changed.  I understand, again, that

5     there's going to be individual circumstances of which things

6     work out less optimally than you would have hoped or that

7     you, you know, you wished you had a full year of insurance

8     or you wish that the plan was written differently to account

9     for a mid-year termination.  But the fact is is that the

10    Debtors have been very clear for more than the last year,

11    that we're going to seek termination.  And at the time of

12    renewal, when people had to make the choices whether to

13    elect into a new year of benefits, they were given notices

14    that said, look, we might terminate these at any point.  And

15    so then we've tried to be forthcoming about that, so people

16    could make that decision to decide whether to stay in the

17    plans or to move somewhere else.

18          I think Mr. Cherry's last point was that the

19    statement that the Retirees had no say in the settlement

20    terms.  And I think that that's just inaccurate.  And Mr.

21    Berger can speak more specifically to the time and attention

22    that he's given to individual Retirees who have spoken up.

23    But certainly, from the Debtors' side, we've worked with the

24    very able Retiree Committee which is made up of individual

25    Retirees themselves, not just lawyers and professionals.

1    And that the committee members are intelligent and active

2    and we certainly thank them all for their service and the

3    time and attention that they spent working through these

4    issues, but they are appointed as a representative and that

5    is the process.   So that we do feel that the Retiree voice

6    has been heard.   But again, Mr. Berger can address that more

7    specifically in terms of the thousands of calls he's fielded

8    in addition to --

9             THE COURT:   The town meetings.

10            MS. SCHWEITZER:   -- the town meetings afterwards.

11   And also, in formulating the settlement itself.   Obviously,

12   that a lot of confidential information is being exchanged.

13   But I think that, certainly, that Retirees have spoken up

14   from time-to-time about their concerns in terms of when the

15   plans will be terminated, or the hardships that befall them,

16   or whether cash or other forms of consideration should be

17   given out.

18            I think that we certainly have heard that second

19   hand, that those concerns have been put forward.   And I hope

20   that the larger perception is that the Retirees

21   individually, and certainly through their voice on the

22   Retiree Committees, have had a voice in the settlement and

23   the terms.   But it's also the nature of an 1114 process,

24   that we're allowed to negotiate with a committee and an

25   authorized representative, so we don't have town hall

1    meetings for every settlement discussion.

2            I think there is three more people who have filed

3    objections, Mr. Yoakum, Mr. Hawkins, and Mr. Reva.  And each

4    of those three individuals are not currently receiving

5    Retiree benefits.

6            THE COURT:  Right.

7            MS. SCHWEITZER:  Each of them, to our

8    understanding, took employment with a buyer of Nortel's

9    assets at different points.  Mr. Yoakum, I believe moved

10   over to Avaya with the Enterprise sale.  And Mr. Reva and

11   Mr. Hawkins moved over to GENBAND in a later sale.  But the

12   -- in each case, I think it's undisputed that they did not

13   retire from the company and elect to receive Retiree

14   benefits upon their termination from the company.  And so

15   their claims seemed to be contingent claims of, I had hoped

16   one day to retire into these plans.

17           And I think, again, that goes back to the point

18   we were saying before, which is once the plans are done and

19   terminated, no one has a further right to participate in the

20   plans.  Right?  And so that you either are currently

21   participating and you're losing benefits or if you had a

22   hypothetical right, you either didn't exercise it and,

23   therefore, you have no claim against the company.  Or if you

24   have a hypothetical right to return to the plan, the plan is

25   now gone.  Right?  That you're not -- you're no longer

1    accruing any interest in the plan because you only have the

2    right to participate in a plan that hasn't been terminated.

3    Right?

4                THE COURT:  Right.

5                MS. SCHWEITZER:  And so either way, that you're

6    reaching finality from the Debtors' side of that we're

7    paying the settlement amount, the claim -- the plans are

8    terminated, and the claims are being expunged, regardless of

9    whether you're getting cash consideration out of the

10   settlement.

11               In this case, under the plan terms, they cite --

12   and people over time have disputed which plan year is the

13   applicable year.  And I apologize for the late filing, but

14   we put a couple more years of plans in front of Your Honor

15   --

16               THE COURT:  Yes.

17               MS. SCHWEITZER:  -- just so you have them in the

18   record.  But on this point, the plans don't really vary.

19   Which is that you have to move from actively at work into

20   the retirement plans.  That you don't -- you have to start

21   in the plans.  So and they cite to the 2008 SPD or Summary

22   Plan Description.  And I think that was one of the ones put

23   into the record.  But as I said, the plan years don't really

24   change on this point.  They have not retired.  They're not

25   active Retirees.  And the plans are being terminated and

1   that's why those claims can and should be expunged as part

2   of the settlement.  It's important to the Debtors to know

3   we're buying this finality.

4               THE COURT:  So even if there had been no

5   bankruptcy, these gentlemen would not have been eligible to

6   receive the benefits.

7               MS. SCHWEITZER:  Correct, correct.  And then the

8   final objection was filed by Mr. Robert Horne.  The name

9   might be familiar to you.  Mr. Horne was --

10              THE COURT:  Yes.

11              MS. SCHWEITZER:  -- active in the deferred

12  compensation litigation as well.  Mr. Horne also currently

13  is not participating in any of the retirement benefits.  Mr.

14  Horne has a slightly different factual situation which Mr.

15  Horne retired in 2001 and that at that time, he elected to

16  participate in the Retiree Medical Plan.

17              THE COURT:  Yes.

18              MS. SCHWEITZER:  And in 2009, decided to drop the

19  plan.  His current objection indicates that that was done

20  for a concern that the plans might ultimately be terminated.

21  But, in fact, the contemporaneous email sent to the company

22  at the time of the termination, which again is attached to

23  Mr. Ray's declaration, states that it was because of the

24  difference in premium costs.  But regardless of why the

25  termination occurred, that Mr. Horne, I think it's

1    undisputed, stopped, elected not to receive further

2    benefits, medical benefits starting in 2009.  So he asserts

3    a right to participate in the settlement proceeds being

4    counted out.

5            Again, we'll turn to Mr. Berger to address if he

6    has more to say with respect to the -- how they allocated

7    the money.  But from the Debtors' side, we would say that

8    he's not currently receiving any Retiree benefits, he waived

9    his right to receive Retiree benefits.  So it would be

10   consistent in our view, with not receiving settlement money

11   because, you know, you've waive your right to any benefits.

12           He also -- the other benefits that are mentioned

13   in Mr. Horne's letters are the right to receive life

14   insurance and long-term care insurance, which he is not

15   currently receiving.  And there is again, a document that's

16   attached to Mr. Ray's declaration.  But the eligibility for

17   life and long-term care is based on ten years of service

18   with the company and Mr. Horne was only at the company for

19   five years.  I don't think those are disputed facts in terms

20   that the plans themselves talk about ten year threshold for

21   benefits.  And Mr. Horne was, I think, indisputably employed

22   for five years.  So he as, again, the letter shows at the

23   time that he got his benefit letter, that said life

24   insurance is not applicable or not eligible.  And so, again,

25   if you're not eligible, it's argued that that would be

1    consistent for the Retiree Committee to not allocate money.

2              I think that certainly everyone had to make their

3    individual decisions along the way regarding what they

4    thought was best for them in the course of the bankruptcy.

5    The current motion now is to terminate the plans and to

6    provide compensation to people basically who are being

7    harmed by the current loss of benefits.  As I said, it's Mr.

8    Berger's and the Committees' decision how they want to cut

9    up the money, but it's not inconsistent with us to hear that

10   it's not being given to people who don't actually have

11   benefits at this time.

12             THE COURT:  This is a continuation of benefits,

13   this settlement.

14             MS. SCHWEITZER:  Or a compensation for losing

15   something you're losing today, correct.

16             THE COURT:  Right, exactly.  That's what I meant

17   to say, certainly.

18             MS. SCHWEITZER:  Yes, that's right.  And then so

19   with that, Your Honor, I think that addresses the objections

20   that have been filed.  The -- previously filed with the

21   Court, but for formality, I would move to -- while Mr. Ray

22   is in the courtroom today, the principal officer for the

23   U.S. Debtors.  But in lieu of having to have him come to the

24   stand, that I think that the evidence is set forth in his

25   three declarations.  He has a declaration filed December 31,

1  2012 which attach certain of the plan documents.  And it's

2  on the docket at DI9225.  And he has his declaration dated

3  March 27, 2013 which is on the docket at 9871.  And then he

4  has declaration dated April 1, 2013 which is on the docket

5  at 9924.  And at this time, I would move to have those

6  admitted into evidence, unless anyone wants to be heard on

7  that.

8            THE COURT:  All right.  Let me ask if anyone has

9  any objection to the admission in evidence of the three Mr.

10 Ray declarations?

11                   (No audible response.)

12           MS. SCHWEITZER:  Okay.

13           THE COURT:  All right.  Hearing no one, they are

14 admitted in support of the settlement.

15 (Exhibits previously identified, admitted.)

16           MS. SCHWEITZER:  Okay.  Thank you, Your Honor.

17 With that, I will cede the podium to Mr. Berger.  We also

18 have in the courtroom Ms. Beckerman and Mr. Matz, who I'm

19 sure -- we're actively involved in the negotiations and I'm

20 sure will want to be heard as well.

21           THE COURT:  That's fine, thank you.  Thank you,

22 Ms. Schweitzer that was helpful.

23           MS. SCHWEITZER:  Sure, Your Honor.

24           THE COURT:  Good to see you again, Mr. Berger.

25           MR. BERGER:  It's always good to see you, Judge.

1  Good morning.

2          THE COURT:  Yes, good morning.

3          MR. BERGER:  Excuse me.  I'm Neil Berger of

4  Togut, Segal & Segal.  We represent the Retiree Committee.

5          Your Honor, I'll add to what Ms. Schweitzer has

6  said.  Certainly, there are things that we'd like to have on

7  the record this morning from the perspective of the Retiree

8  Committee, but I'll say in advance that nothing I'll say

9  this morning is inconsistent with what you've heard as of

10 now.

11         We hope that at the conclusion of today's

12 hearing, we're going to bring certainty to Nortel Retirees.

13 It's important that concept of a certainty.  You heard Ms.

14 Schweitzer say it.  It's something that we've sought to

15 achieve for Retirees throughout the process and we're hoping

16 that at the conclusion of today's hearing, we'll be able to

17 bring that certainty to them.  And that certainty of knowing

18 that there's a process.  The process is drawing to a close.

19 And certainty and comfort that a significant settlement

20 value, as represented by the Settlement Agreement, will be

21 coming their way and that that settlement value will help

22 them to make the necessary decisions and transitions to new

23 health coverage and other arrangements that will result as a

24 result of the termination of the Nortel Retiree Benefits.

25         The last time we appeared before Your Honor on

1   January 23, we described to you the proposed settlement.

2   Ms. Schweitzer has done that again this morning and I won't

3   clutter the record with more statements about the elements

4   of the settlement.

5        We also described the proposed forms of notice

6   and the types of notice that the Debtors and the Retiree

7   Committee proposed to give to Retirees and others concerning

8   the Settlement Agreement, along with a ballot concerning the

9   potential VEBA Medical Plan and I'll talk about that in a

10  minute.  And the other forms of notice.  We described the

11  process that the Debtors and Retiree Committee developed to

12  ensure that Retirees would have ample time to understand the

13  settlement and to have their questions answered.

14        You approved the forms of notice, and the method

15  of notice, and the ballot in your January 23, 2013 Notice

16  Procedures Order.  And I'll refer to it as the Notice

17  Procedures Order as it's found at Docket Number 9324.

18        The Debtors and the Retiree Committee complied

19  with that order and provided all of the forms of notice

20  required by that Notice Procedures Order and more -- to more

21  than 7,000 people, including approximately 4,600 Retirees

22  across the country and in some instances, they were actually

23  outside of the country and we provided that notice to them.

24        As Ms. Schweitzer said and we'll observe, we

25  think it's also significant and instructive that in addition

1    to all of the notice that we gave to the thousands of

2    people, that only seven individuals filed objections to the

3    proposed Settlement Agreement.  And as Ms. Schweitzer noted,

4    three of those folks are admittedly, not Retirees.  They're

5    not retiring from Nortel.  They don't object to the

6    Settlement Agreement, they object to their claims being

7    expunged because they represent Retiree claims that are

8    being resolved pursuant to the Settlement Agreement.

9            Judge, you know that this has been a very long,

10   challenging, but I would say, fruitful process.  Before I go

11   forward into the notice procedures and how the process

12   worked and why we support the Settlement Agreement, I do

13   want to pause to thank some people.  First, Ms. Schweitzer

14   and the other folks at her firm who represent the Debtors.

15   Ms. Beckerman and her colleagues who represent the Unsecured

16   Creditors' Committee were very helpful in this process as

17   were Mr. Matz and his colleagues who represent the Ad Hoc

18   Bondholder Committee.

19           I can't let the moment pose -- pause, also, Your

20   Honor, to acknowledge the invaluable assistance that was

21   provided by Alvarez and Marsal, the Committees', the Retiree

22   Committees' financial advisors led by Ron Winters, who's

23   here in court today.

24           THE COURT:  Okay.

25           MR. BERGER:  And, of course, the assistance that

1  we received from our Delaware and ERISA tax counsel, led by

2  Mark Danielle and Bill Taylor, both whom are here today.

3  Without their help, we wouldn't be here.

4          We also wouldn't be here today, Your Honor,

5  without the assistance of Mr. Levin --

6          THE COURT:  Yes.

7          MR. BERGER:  -- who Your Honor appointed as the

8  Mediator.  I'll speak again about some of the things Mr.

9  Levin did to help us get to this point.  But suffice it to

10  say at this moment, we wouldn't be standing here absent his

11  timely and expert thoughtful input during the negotiations,

12  especially when the hurdle seemed a little too high to

13  clear.

14          I want to thank Your Honor for helping us through

15  this process.  That we appreciate Your Honor's supervision

16  and intervention when it was needed and we hope we didn't

17  need too often.  But as we like to say in New York

18  sometimes, we appreciate the give in the joint that you gave

19  to us.

20                  (Laughter)

21          MR. BERGER:  Because there were times where we

22  needed some time to have this process move forward.

23          THE COURT:  Yes.

24          MR. BERGER:  And we appreciate that.  Last and

25  certainly not the least, I'd like to acknowledge the hard

1    work of the members of the Retiree Committee.  Gary Donahee

2    the Chair of the Committee, Mark Haupt, who's here with us

3    in court today.

4              THE COURT:  Welcome.  Good to see you, sir.

5    Thank you.

6              MR. BERGER:  He submitted a declaration, we'll

7    get to that in a minute.

8              THE COURT:  Yes.

9              MR. BERGER:  Sue Cane, Mike Ressner, and John

10   Zalakar [ph], each of them are to be commended for the many

11   hours of dedicated service and efforts that they

12   contributed, without any compensation, without any public

13   recognition or praise.  I can tell Your Honor that they

14   worked tirelessly to help negotiate this settlement and it's

15   been an honor and pleasure to serve with each of them.

16             I'll describe more later during our presentation

17   that the Retiree Committee members have agreed to provide

18   assistance in continuity for the benefit of Retirees after

19   the effective date of this Settlement Agreement as it's

20   implemented through the VEBA that's going to be created as a

21   result of this settlement.  They've begun planning in that

22   planning for the assistance and implementation in order to

23   the benefit of all of the parties.

24             With that, Your Honor, I'd like to add to the

25   record, some of the things that Ms. Schweitzer said.  I

1    won't repeat a number of the things that we set forth in our

2    papers.

3              THE COURT:  All right.

4              MR. BERGER:  I know that Your Honor always reads

5    our papers.

6              THE COURT:  Yes, I -- yes, absolutely.

7              MR. BERGER:  Okay.  Your Honor, this is a

8    settlement that represents the product of a lot of diligence

9    in the form of negotiations and in discovery.  We received,

10   reviewed, and analyzed, thousands of pages of documents that

11   we received from the Debtors.  And we also received them

12   from Retirees.  Your Honor recalls that there was one or two

13   bumps in the road in discovery, but we got through them just

14   fine.

15             The settlement also represents the product of

16   many hours of negotiations, ultimately, under the

17   supervision of Mr. Levin as a Mediator.  Those negotiations

18   took place regularly.  And they also took place in what I

19   think we would all say were marathon, in person meetings,

20   sometimes starting very early in the morning and ending very

21   early the next morning.  Everyone stayed the course.  Mr.

22   Levin certainly understood each of our parties' needs and

23   goals and he helped us to find our way through some very

24   difficult times and helped us craft some solutions that you

25   see in the Settlement Agreement that we're seeking approval

1   of.   Equally important, Mr. Levin kept us talking.

2             THE COURT:   Yes.

3             MR. BERGER:   The main job of a Mediator, keep the

4   people talking.   And that happened even when we may not have

5   had the energy or the enthusiasm to pick up the phone, but

6   he did keep us talking.   I would like to note, Your Honor,

7   that Mr. Levin conducted the mediation under strict

8   confidentiality.   And that confidentiality fostered frank

9   and meaningful discussions.   That confidentiality from the

10  Retiree Committees' perspective should remain intact and

11  should be protected.

12             I can tell Your Honor though, that throughout the

13  process, the Retiree Committee remained focused on its

14  fiduciary duties to act as an advocate for and a microphone

15  for all Retirees.   And that includes LTD participants who

16  Ms. Schweitzer described have an opportunity to participate

17  in the Retiree Committee settlement, if they choose one or

18  the other.

19             Of course, the confidentiality of the Retiree

20  Committees' deliberations are also protected and they should

21  be protected and remain intact, any protections.   But I can

22  tell you as I've mentioned in our papers throughout the

23  process, the negotiation, the motion practice, the committee

24  considered a great number of legal and factual issues and

25  weighed the risk of litigation.

1          When doing that, one needs to understand that

2    with a Retiree population of approximately 4,600 people

3    across the country, it's not likely that the tent you're

4    going to want to build is going to fit every size and

5    dimension of need.  And dimension of need that you come

6    across.  But what you try to do is build a tent that's big

7    enough to cover as many people and as many of those needs

8    and issues.

9          The Retiree Committee believes that its achieved

10   that goal and it supports the Settlement Agreement.  Mr.

11   Haupt, who I just introduced is a member of the Retiree

12   Committee.  He attended every meeting.  I think he missed

13   part of one call.  And we submitted a declaration in support

14   of the Settlement Agreement by Mr. Haupt that's found at

15   Docket Number 9868.

16         We took to heart Your Honor's comments at the

17   January 23 hearing, that at least preliminarily, the Court

18   thought it was a good settlement.  And also, that it needed

19   to be put out to the Retirees and that they have a

20   sufficient amount of time to review it and ask questions.

21         We do support it.  We think it's a good

22   settlement, especially when one considers that the value

23   that Retirees will realize from the date of the Retiree

24   Committee appointment, including the 67 odd million dollar

25   payment in cash that the Debtor will make through the

1  termination date, currently May 31, will total approximately

2  $90 million.

3          Your Honor said it wasn't a simple agreement so

4  we went out and we explained it.  We explained it in a

5  number of forums and methods.  Consistent with Your Honor's

6  Procedures Order, the Retiree Committee provided Retirees

7  with notice of a number of things -- a number of ways,

8  rather.  The Retiree Committee statement that Your Honor

9  approved --

10          THE COURT:  Yes.

11          MR. BERGER:  -- that described who we were, what

12  the process was, what the settlement was about, how we got

13  to the settlement, and how it would be implemented.  Part of

14  that included the potential for a VEBA Medical Plan and we

15  included a summary of that Aetna Plan.

16          We also described to Retirees how their

17  settlement would be used to partially subsidize premiums of

18  that settlement, if that VEBA Plan eventually came into

19  existence.  Each Retiree received an individual claim form

20  to show how their projected settlement amount was

21  calculated, subject to adjustments for cost, the number of

22  people coming in from the LTD participant pool.  And those

23  individual claim forms also included allocation matrices

24  that Your Honor's Notice Procedures Order approved.

25          Those allocation matrices were used to show

1   respective claims how they were calculated.  And it also

2   provided a degree of transparency.  Retirees were able to

3   look at the allocation matrices and see that they were being

4   treated similarly to people who had their same objective

5   criteria that under -- that support the allocation

6   methodology; age, years of service, election benefits.

7          We also provided ballots.  Your Honor approved

8   the form of the ballot to people who eligible for medical

9   benefits under the Nortel Retiree Medical Plan as of January

10  31, 2013.  Two reasons why we used that date.  Two objective

11  criteria.

12         One, you need a date.  You need a line in the

13  sand to determine who is eligible on how the settlement

14  proceeds are going to be allocated.

15         Second, January 31 was a logical date because

16  when it became apparent that the plans were going to be

17  terminated at the end of 2012, the Debtors sent out their

18  annual enrollment and January 31 was a good date to

19  understand what the results of that enrollment were.  So two

20  objective criteria supported that date.

21         The ballot described what Retirees needed to do,

22  if they wanted to have their voice heard in connection with

23  the potential for a VEBA Medical Plan.  And it set March 12,

24  this month, March 12, 2013 as a valid deadline, and that

25  also was the objection deadline for this motion.

1          In addition to all of that, Your Honor, in

2   addition to all the notice that we provided pursuant to the

3   Notice Procedures Order, we went out to make sure that

4   everyone understood as best they could, what was happening.

5          As Your Honor knows from the original and amended

6   Section 1102 order in this case with the Retiree Committee,

7   the Retiree Committee maintains an official website.  We

8   posted the Settlement Agreement, the Debtors' Settlement

9   Motion.  We developed and posted Settlement Agreement FAQ's

10  to capture very frequent questions that we received.  And

11  I'll talk about the emails and phone calls that we had in a

12  minute.

13         We also provided the links to government

14  sponsored resources concerning Medicare, so that people

15  getting faced with an important decision concerning

16  Medicare, could go directly to the source and understand how

17  Medicare and replacement Medicare policies might work.

18         We also provided links to Aetna, who is the

19  proposed insurer.  And Aetna webinars were conducted and we

20  provided links to those webinars, so people could understand

21  what that policy was and how it might work or not work for

22  them.

23         As Ms. Schweitzer alluded to, we responded to

24  more than a thousand telephone calls and emails.  And those

25  questions ran the gamut, Judge.  They concerned the

1   Settlement Agreement, what's happening in this case, how

2   does the ballot process work, the VEBA Medical Plan, and the

3   individual claim forms, and a host of other questions.  To

4   the extent we were able to, we responded to each of those

5   within 48 hours of them having been made.

6            We coordinated and with committee members,

7   Retiree Committee members and the other professionals for

8   the Retiree Committee, town hall meetings.  I told Your

9   Honor we would do that and we actually did do it.  And we

10  led those town hall meetings in Raleigh, North Carolina;

11  Dallas, Texas; Santa Clara, California; and Atlanta,

12  Georgia; Alpharetta, Georgia, where -- and we chose those

13  areas because we looked through the census and we found that

14  those were the four metropolitan areas that have the highest

15  concentration of Nortel Retirees.

16           Aetna was invited and they came to those meetings

17  and answered questions about the medical policy.  LTD

18  counsel was invited and he came and then helped answer

19  questions from LTD participants.  Over 600 people attended

20  those meetings in person and over 900 people participated by

21  toll free phone numbers that we arranged for people to

22  listen in.

23           We also encouraged people to if they weren't able

24  to come to the meetings and were going to listen by the 800

25  numbers, to submit their questions in advance of the

1    meetings.  We had them and to the best of our ability, we

2    answered those questions live.

3            Again, host -- Aetna hosted webinars to explain

4    the terms of the Aetna Medical Plan.  And that was the plan

5    that Retirees were asked to vote on.

6            As we discussed at the January 23 hearing, Your

7    Honor, one of the goals of the Retiree Committee that it

8    sought to achieve was to the extent possible, to replicate

9    the benefits that currently exist under Nortel Retiree

10   Welfare Plans.  Through its advisors, the Retiree Committee

11   solicited proposals for group medical, life and long-term

12   care policies from the insurance market.  No provider was

13   willing to offer up a group life or long-term care.  In

14   response, Aetna was willing and did make a proposal for

15   group medical insurance for the Retirees and we refer to

16   that and I have today as the VEBA --

17           THE COURT:  Right.

18           MR. BERGER:  -- Medical Plan.

19           Your Honor's Notice Procedures Order approved a

20   balloting process.  Your Honor may recall, we spoke that the

21   wishes of the Retiree community were important to the

22   Retiree Committee.  We recognized that there was although

23   most of us recognized that the majority of the Retiree,

24   Nortel Retiree community was close to 65, and Medicare

25   eligible, and those folks don't need to worry about pre-

1  existing conditions.

2         There was a small group or smaller group of

3  Retirees who had not yet attained the age of 65, who might

4  need medical coverage for any number of reasons, including,

5  certainly not limited to the fact that some of them may have

6  had or have pre-existing conditions that may be an

7  inhibiting factor for them to obtain insurance.

8         But we didn't want one small group to dictate the

9  will of the entire group.  So we followed the ballot that

10  Your Honor -- was approved by your Notice Procedures order.

11  We sent out ballots to everyone who was in the census

12  indicated as eligible for medical benefits under the Retiree

13  Welfare Plan as of January 31, and we solicited their input

14  as to whether or not they wanted the Retiree Committee to

15  move forward to try to purchase the Retiree -- the VEBA

16  Medical Plan or to have that amount funded into what we hope

17  will be tax efficient HRA accounts that will be available to

18  reimburse for eligible medical expenses.

19         Again, everyone got an individual claim form.

20  And it's instructive to know that the individual claim form

21  that went to everyone and also came with a ballot, described

22  how their settlement would look in a VEBA with medical

23  coverage or absent medical coverage in a -- some money being

24  put toward partial subsidy of a premium that would be due

25  under the VEBA Medical Plan if it were elected, and

1  alternatively, how much would go into the HRA account.

2          In addition, we sent out a detailed summary of

3  the Aetna proposal and answered questions concerning the

4  Aetna proposal at town hall meetings and in the webinar.

5  The information provided to the eligible Retirees also

6  provided the election thresholds that needed to be met

7  before the VEBA Committee or successors sought to contract

8  with Aetna and offer this policy.  The voting deadline as I

9  said before was March 12.  And people were given an

10  opportunity to ask questions and we provided answers and we

11  gave instructions.  Each ballot was accompanied by a self-

12  addressed postage prepaid envelope back to our noticing

13  agent.

14          On March 19, Judge, we filed the certification of

15  Karen Wagner of KCC.

16          THE COURT:  Yes.

17          MR. BERGER:  Found at Docket Number 9682,

18  notifying Retirees and other parties that the election

19  threshold was not met.  In addition to serving that

20  certification on the Retirees, we sent them a one page

21  notice to let them know so you don't have to read through a

22  legal document, the threshold -- the voting threshold was

23  not met and we explained the consequence, meaning dollars go

24  to HRA accounts.

25          So as a result of the election threshold not

1  being met, and as set forth in the certification and notice,

2  and what we posted to the official website, all of the

3  settlement money, certainly net of the necessary costs, will

4  be funded into HRA arrangement accounts that subject to a

5  favorable ruling from the Internal Revenue Service that

6  we've sought, will be available to provide tax free benefits

7  to Retirees.  As Ms. Schweitzer said, and I'll address in a

8  moment, only one person has objected to that structure in

9  our Settlement Agreement.

10          The allocation methodology is described in a

11  number of the forms of notice that Your Honor approved by

12  the Notice Procedures Order.  And it was sent out to folks

13  in connection with and it -- sorry, and described in our

14  settlement support document, the ballot, individual claim

15  forms.  The individual claim forms described the objective

16  criteria that was used by our professionals to actuarially,

17  determine the amount of persons claimed, age, years of

18  service, eligible -- sorry, benefit elections.  And each

19  person was given his projected settlement which will be used

20  to distribute the cash in an amount in a fair way, we think,

21  that's based on objective criteria.

22          This allocation methodology was also used to

23  calculate the amount of settlement that could be allocated

24  to individual LTD participants, if they seek to --

25          THE COURT:  Yes.

1          MR. BERGER:  -- elect to participate in the

2   Retiree Committee settlement.  As Ms. Schweitzer said, and

3   we concur, these folks need to make a decision between one

4   settlement and another.  There's no double dipping.  That's

5   consistent with the way that benefits are provided today.

6   One person can't receive benefits under a Retiree Plan and

7   at the same time under an LTD Plan.

8          THE COURT:  Right.

9          MR. BERGER:  But we did provide that information.

10  So hopefully, people will be equipped to make that financial

11  decision.  Am I better off staying in an LTD settlement pool

12  or am I better off coming into a Retiree settlement?  As

13  part of the Settlement Agreement, we've agreed to continue

14  within 30 days after the effective date, to answer questions

15  from LTD participants, if they have questions about our

16  settlement.

17          I won't belabor the record, Your Honor.  The --

18  our papers and the Settlement Agreement describe with some

19  very detailed particularity, the process by which LTD

20  participants have to elect, if they want to elect out of the

21  LTD settlement, into our settlement.  Ms. Schweitzer said,

22  and we agree, that people could have different readings of

23  the plan documents whether or not transition from the LTD

24  world into the Retiree world in the context of a settlement

25  is permissible.  We think that the settlement that is

1  embodied in our Settlement Agreement is a fair compromise.

2          Objections to the Settlement Motion, Your Honor,

3  as I've said, we feel that in answered nearly thousand phone

4  calls and emails from Retirees around the world, actually,

5  and the feedback that we've gotten has been overwhelmingly

6  supportive and positive.  Of course, the loss of Nortel

7  Retiree benefits will be hardship and it's an unfortunate

8  outcome of bankruptcy, especially in a liquidating case.

9  However, we think that it's highly instructive that only

10  seven people filed responses, objections, and only three of

11  them are actual Retirees.

12          As set forth in more detail in our response in

13  further support of this Settlement Agreement, we believe

14  that the objections fall into four categories.  We don't

15  think any of them stand in the way of approval of the

16  Settlement Agreement in its entirety.

17          The first category is based on hardship.  There

18  is hardship.  A company has gone out of business.  A company

19  that once employed thousands of people is no longer

20  operating as it once did.  And the termination of Retiree

21  benefits will cause a hardship, but we are heartened by the

22  settlement that we have reached.  We think that is a

23  significant settlement and it will help people to make the

24  transition to other coverage and other arrangements.

25          Again, as I said in my opening comments, the

1   Retiree Committee was able to reach this settlement after 17

2   months of negotiations, and ultimately, under the

3   supervision of the Mediator, and we weighed the risk of

4   litigation.  Litigation is always uncertain.

5           The second objection is by Mr. Cherry.  He

6   objects to the HRA structure.  Your Honor, based upon all of

7   the inquiries that we received from the Retiree community,

8   Mr. Cherry seems to be uniquely situated.

9           THE COURT:  Yes.

10          MR. BERGER:  That he does have other insurance

11  and that he has no need for reimbursement of medical

12  expenses from an HRA.  The settlement provides for the

13  distribution of settlement proceeds to Retirees through

14  HRA's, rather than immediate cash because HRA's are

15  generally not taxable.  We've sought a private letter ruling

16  from the Internal Revenue Service.  We hope that it will be

17  favorable.  But I mentioned earlier that one of the Retiree

18  Committees' early and important goals was to maximize the

19  benefits for all Retirees who will need as much help as

20  possible to transition to new benefits after the Nortel

21  benefits will be terminated.  And the HRA structure is a key

22  component to that goal and to which only one of 4,600

23  Retirees has objected.

24          Mr. Cherry, excuse me, offering Mr. Cherry or any

25  other individual Retiree an immediate cash payment, could

1  endanger the tax benefits that the Retiree Committee expects

2  all 4,600 eligible Retirees to realize from distribution

3  from HRA's.  And we've cited to some authority that explains

4  the material risk of paying immediate cash to any Retiree

5  could post to the structure and the Retiree Committee

6  considered that to be a material risk that was unacceptable.

7         In these circumstances, Your Honor, the Retiree

8  Committee believes that the good of the entire group ought

9  to take precedent.

10         I'm sorry, the day before yesterday, Your Honor

11  and I received an email from Mr. Cherry --

12         THE COURT:  Yes.

13         MR. BERGER:  -- who depending upon how you read

14  the email, may have found an actual benefit to the HRA

15  structure in the instance of Medicare Part B premiums.  And

16  I can say, Your Honor, that based upon our research, they

17  would be an eligible medical cost that could be reimbursed

18  through an HRA on a tax free basis, if the IRS rules in our

19  favor.  So there is a benefit, even to Mr. Cherry, if he has

20  those types of premiums.

21         I will say, I'm not certain what communication

22  between he and I he's referring to when he said that perhaps

23  I may have represented that they -- that those Medicare Part

24  B premiums might not be eligible expenses.  Suffice it to

25  say, we've done our research and we believe that they would

1    be eligible for reimbursement from an HRA.

2              Ms. Schweitzer has spoken to the third category

3    of objections.  Mr. Yoakum, Mr. Hawkins, and Mr. Reva.  And

4    Ms. Schweitzer, I apologize for mispronouncing anyone's

5    name.  They will not retire from Nortel.  They are not

6    entitled to Retiree benefits.  To draw a finer point, under

7    the eligibility for benefits under the Nortel Retiree

8    Welfare Plans means, "moving from actively at work status

9    with an employer", which is defined as Nortel, "to

10   retirement status after reaching the age of 55."  Each of

11   these folks left Nortel before they were not retired from

12   Nortel now.  And they're not in the Committees' view,

13   entitled to Retiree welfare benefits and they're entitled to

14   participate in the settlement proceeds that are going to be

15   paid pursuant to the Settlement Agreement.

16             Their claims are going to be expunged, to the

17   extent that they seek Retiree welfare benefits.  We

18   understand that it's an important component of the

19   settlement that the Retiree community receive the settlement

20   payment and the Debtor be free of Retiree claims.

21             The last is the objection filed by Mr. Horne.

22   Ms. Schweitzer ably described why and the Debtors' position

23   is that he is not entitled to participation in the Retiree

24   settlement.  We agree with the Debtors' position.  And as

25   Ms. Schweitzer said, this is a settlement meant to

1  compensate people for an actual loss of their benefits.  Mr.

2  Horne won't suffer an actual loss of benefits and we don't

3  believe that he should be able to share in the compensation

4  to be provided to Retirees who will be deprived of the

5  benefits as a result of the Debtors' termination of the

6  Retiree plans.

7          That's all I have to say, Your Honor, concerning

8  the objections.  Just another moment or two, concerning

9  implementation, so Your Honor doesn't think well, we're just

10  going to settle and that's -- the lawyers walk away and --

11          THE COURT:  Right.

12          MR. BERGER:  -- we're done.  There is a lot of

13  work --

14          THE COURT:  Yes.

15          MR. BERGER:  -- to be done after, if Your Honor's

16  disposed to approve the settlement today.  And the Retiree

17  Committee is working to ensure that it's successor, the VEBA

18  and the VEBA Committee, can continue to provide support as

19  is necessary to the affected Retirees.

20          As a housekeeping measure just by way of example,

21  certain Retirees, timely certainly, before the March 12

22  objection deadline, supplied additional information

23  concerning their entitlement to Retiree benefits.

24          Simple example, one Retiree is listed as having a

25  $35,000 death benefit.  In actuality, he's produced

1  documentation to show he's entitled to a $50,000 death

2  benefit.  That affects the actuarial calculation for his

3  benefit under the Settlement Agreement.  Obviously, it

4  changed for everyone else.  So we also have the election

5  period that comes into existence on the effective date of

6  this Settlement Agreement.  It runs for 30 days until we

7  understand how many LTD participants actually elect in.  We

8  won't know how that liability impacts our ultimate

9  distribution to Retirees.  For those reasons, Judge, as

10  you've seen from the Amended Proposed Order that was filed

11  with the Court, the Proposed Order now authorizes the

12  Retiree Committee and the Successor to prepare and send out

13  final individual claim forms after the effective date of the

14  Retiree Committee Settlement Agreement.  They will be

15  binding on the Retirees.  If Your Honor approves the

16  Settlement Agreement, members of the Retiree Committee will

17  initially be members of the VEBA Committee and they'll

18  continue to communicate with the Retirees after the

19  effective date and throughout the implementation of the

20  settlement through the Settlement Agreement.  For example,

21  the Debtors are required by ERISA to provide Certificates of

22  Creditable Service and Termination Notices.  People need to

23  have those in hand as they go to seek a replacement

24  insurance and we've begun to speak with the Debtors about

25  how those statements and Certificates would be prepared and

1  sent out to Retirees, hopefully; although we understand it's

2  a process, hopefully in advance of the effective date so

3  that on the effective date, there could be a seamless

4  continuation of coverage by individuals and we'll continue

5  to work with the Debtors, and certainly the VEBA Committee

6  will work to bring that to a timely closure.  The VEBA

7  Committee will provide information concerning the HRA

8  provider, once chosen, and how those HRA accounts can be

9  accessed.  Debit cards, reimbursement, care packages will be

10  sent out.  The HRA provider is contemplating its own town

11  hall meetings and webinars to help people understand that

12  process.  The process started by the Retiree Committee to

13  ensure that those affected will receive information, will

14  continue to receive information through the VEBA Committee

15  and the implementation of the settlement.  So, in sum, Your

16  Honor, the Retiree Committee considers the settlement to be

17  in a favorable recovery.  That should help Retirees adjust

18  to the termination of their benefits.  The Debtors will

19  continue the Retiree benefits until May 31, unless it's

20  extended until June, the end of June, and that's coverage

21  for nearly three years after the first Termination Motion

22  was made and they'll pay approximately $67 million to the

23  Retiree Committee for the benefit of all Retirees eligible

24  under our Settlement Agreement.  We certainly agree and

25  believe that this is a far better result than what was

1  originally proposed and certainly a better result than

2  uncertain litigation.  And for all of those reasons, Your

3  Honor, the Retiree Committee supports and requests that the

4  Settlement Agreement be approved.  Mr. Haupt is in Court

5  today.  He is a member of the Retiree Committee and we move

6  that his Declaration be admitted into evidence.

7           THE COURT:  All right.  Thank you, Mr. Berger.

8  Does anyone have any objection to the admission into

9  evidence of the Declaration of Mr. Haupt?

10                    (No audible response)

11          THE COURT:  Okay.  Hearing no one, I do admit it

12 into evidence in support of settlement.

13          MR. BERGER:  Thank you, Judge.

14          THE COURT:  Yes.

15          MR. BERGER:  Go order transcripts.

16          THE COURT:  One ear for me and one ear for Ms.

17 Schweitzer I see that.

18                       (Laughter)

19          MR. BERGER:  Ms. Schweitzer corrects me and she's

20 right.  The Certificates of Creditable Service and

21 Termination Notices I may have said would be sent out before

22 the effective date of the settlement.  That's incorrect.

23 They'd be sent out before the termination date of --

24          THE COURT:  Okay.

25          MR. BERGER:  -- the coverage.

1              THE COURT:  All right.  Thank you.

2              MR. BERGER:  But with that, Your Honor, I'll cede

3    the podium.

4              THE COURT:  All right.  Thank you.  Ms.

5    Beckerman, good morning.

6              MS. BECKERMAN:  Good morning, Your Honor, Lisa

7    Beckerman, from Akin Gump Strauss Hauer & Feld, on behalf of

8    the Official Creditors Committee.  Your Honor, I'm probably

9    going to embarrass Mr. Berger again and his colleagues with

10   my talking about their efforts in this case.  I think I did

11   that a little bit at the January hearing.  But I have to

12   say, as somebody who's been Committee Counsel on a lot of

13   large cases myself, and unfortunately, in a lot of large

14   cases like that, I've been through an 1114 process.

15             THE COURT:  Yes.

16             MS. BECKERMAN:  I have a lot of experience with

17   that in numerous large cases, including Delta and LTB and

18   cases that were either reorganizations or liquidations and I

19   have worked opposite a lot of Retiree Counsel and a lot of

20   Retiree Committees and through those processes and there

21   were a lot of complicated issues in those as well.  But I do

22   have to say that, as I said in January, I've been

23   particularly impressed myself as the adversary on the other

24   side with the process that we've had here and Your Honor and

25   everybody else should be comforted by the process that

1  occurred here.  The Retiree Committee has acted throughout

2  this process to vigilantly; I can attest to the many long

3  nights of mediation and negotiations, represent their

4  positions and they have taken their role here in this

5  process with a great deal of seriousness and have acquitted

6  their fiduciary responsibilities very, you know, very

7  impressively in this process.  And I have to say, as someone

8  who's also been on the other side of their Counsel and a lot

9  of Counsel in that situation even, a lot of very good

10  Counsel in that situation, I have to say that I also wanted

11  to commend the service that you've seen from the Counsel for

12  and the financial advisors for the Retiree Committee

13  because, again, as the person on the other side negotiating

14  against them, I think my --

15      [Audio malfunction from 11:19:45 a.m. to 11:20:11 a.m.]

16          MS. BECKERMAN:  -- at the table.  I have to say

17  that, you know, their insistence and their thoughtfulness,

18  as well as their tax Counsel's thoughtfulness in trying to

19  come up with a structure in a way that worked for our side,

20  meaning the Debtors, the Creditors' Committee, and the Ad

21  Hoc Noteholder Committee who wanted to be in a situation,

22  while we obviously were happy to see a structure that worked

23  on a tax basis for the Retirees but wanted to make sure we

24  were in a situation where our Estate wasn't facing any

25  liability, didn't want to have an Estate-sponsored VEBA,

1  especially for a liquidating Estate here, that wasn't really

2  possible, and wanted to see some process that worked where

3  we had finality on our side of claims and liabilities.  And

4  on the other side, in addition to negotiating the best

5  possible resolution for their -- in terms of dollars for

6  their constituency, what I think you've seen is a great deal

7  of creativity and thoughtfulness on their side in terms of

8  trying to make sure that the structure worked as well for

9  their side and for making sure that Retirees had an option

10  of receiving benefits in the most possible beneficial way

11  that maximized their use.  And so I really think that what

12  you've seen by the work of the Retiree Committee and its

13  professionals really, and in the settlement, reflects, you

14  know, a great deal of thoughtfulness and creativity and hard

15  work on all their part.

16          THE COURT:  Yes.

17          MS. BECKERMAN:  And that really is to be

18  commended here because we would not, I think, have been able

19  to reach a settlement here, in part, without that because,

20  at points, we had sort of log jams on some of those points

21  and yet they kept coming back with ideas and thoughts that

22  eventually resulted in our coming up with something that

23  worked for all parties and I think that is really to be

24  commended.  I also would like to commend, of course, the

25  Debtors' Counsel and Mr. Ray, who's in Court, who sat

1  through numerous mediation sessions with myself, my

2  colleagues, and Mr. Matz and his colleagues in a room, ate a

3  lot of pizza, stayed up until the middle of the night,

4  worked very hard with Mr. Levin and tried to come up with

5  other solutions in trying to structure a settlement both

6  dollar-wise in the context of claims or cash, arguing over

7  various legal issues with the other side as well, and trying

8  to come to a consensus, and as I think both Mr. Berger and

9  Ms. Schweitzer's comments have indicated, this was a long

10  process.  It wasn't a short process.  I think when we

11  started this process, I recall Ms. Schweitzer and I having

12  our first conversation about termination of Retiree benefits

13  around the beginning of 2010 and now we're here in April of

14  2013 so even that process has been a long time.  But with

15  the Retiree Committee, we've been through a process that

16  started in the summer of 2011 and ultimately led to our

17  needing a mediator to assist us but ultimately coming to a

18  resolution successfully this fall in September and even that

19  process of just negotiations, with and without the

20  mediator's help, took 13 months.  So I don't think that

21  people can say that this wasn't an arms-length or where all

22  parties definitely had their positions reflected and this

23  certainly reflects a consensus, taking into account all of

24  the litigation risks that was able to be outlined I think by

25  the various constituencies to each other throughout the

1  process and under the assistance with Mr. Levin.  And so we

2  finally got here today with a settlement that really meets,

3  in a difficult situation, everyone's goals; the difficult

4  situation being, as I think I said to this Court, I've said

5  a few times, unfortunately, this is a liquidating Chapter

6  11.  Our Estates were going to liquidate some day, some way,

7  somehow.  Still hope that, Your Honor.  And because we had

8  sold -- the company had sold most of its operating

9  businesses, even, you know, when we started being back in

10 front of you, you know, in the process that began that

11 summer, over a year ago, a year-and-a-half ago, we knew that

12 we needed to be in a situation, unfortunately, where

13 benefits would have to terminate at some point and so it was

14 just a question of when, not if, and how.  And I think the

15 process that we went through, while I think took much longer

16 than anybody expected and was certainly well-thought through

17 by all the parties in terms of coming to a resolution, I

18 think it reflects a fair balancing of the issues on our

19 side.  As Ms. Schweitzer indicated, we knew we had

20 termination.  It didn't make sense, given that the Debtor is

21 now down to ten employees, to be having administering plans

22 for, depending on what number you use, 4,600 active, you

23 know, Retirees and their spouses and other dependents and

24 that we were in a situation that that needed to come to

25 closure on our side.  We also needed a way of dealing with

1  all -- the issue of claims that may or may not arise in that

2  situation.  Ms. Schweitzer pointed out that, of course,

3  throughout this process, we'd all taken the position that

4  there was termination rights and that that might not

5  necessarily result in a claim from a litigation perspective,

6  but there was obviously viewpoints on the other side.  And

7  we needed to have a process where there was a transition and

8  we knew that.  Even the Debtors' Motion obviously

9  contemplated some process for transitions of money.  It

10 wasn't that that wasn't contemplated but we needed to have

11 an orderly process from the Debtors side and we needed

12 Releases and finality of claims and of the parties that were

13 involved.  And on the other side, of course for the

14 Retirees, unfortunately, there was the reality that these

15 plans were ultimately going to terminate some day and that

16 there needed to be an orderly transition for that and I

17 think that this settlement and the process that we've gone

18 through and the very thoughtful nature of the way that the

19 process will be run if the settlement is approved through

20 the VEBA process for -- just for providing benefits to the

21 individual Retirees on a -- and their rights to have some

22 transition -- have funds to transition and pay for their

23 medical care and other benefits is something that reflected

24 the needs of all parties.  And, of course, the limited

25 Objections, I think, of course, for that many Retirees also

1  speak to that as well.

2           THE COURT:  Yes.  I often try not to read too

3  much into an absence of Objections, but in this particular

4  case where there have been so many active Retirees, I do

5  think that the -- between the -- not only the absence of

6  Objections, but the number of letters in support of the

7  settlement I think is very significant.

8           MS. BECKERMAN:  It is, and I think some of that,

9  again, not to make Mr. Berger blush, but should go to his

10  colleagues and himself for going out and answering, doing

11  what they should do what the Retiree Committee should do and

12  what they did.  But I think that really going the extra mile

13  of having the town meetings and really going the extra mile

14  of making sure that people had inclusiveness in the process

15  by having an ability to vote on, you know, whether there'd

16  be additional medical plan and to have say and have their

17  concerns addressed.  And I think that --

18           THE COURT:  Yes.

19           MS. BECKERMAN:  -- that's reflective by the fact

20  we're standing here today, you know, with this limited

21  number of Objections.  I think that's also a testament to

22  their efforts as well.

23           THE COURT:  And it's obvious that the Committee

24  was very important in this process, your Committee, Ms.

25  Beckerman, because, obviously, to reach a settlement such as

1  this where dollars are coming out of dollars that might be

2  otherwise available to Creditors, I think shows a good faith

3  involvement in the negotiations.

4           MS. BECKERMAN:  And, of course, my Committee, it

5  can and my -- the constituency I represent and our Committee

6  represents, of course, can include all these parties

7  because, to the extent they did have claims --

8           THE COURT:  Yes.

9           MS. BECKERMAN:  -- or have claims for other

10 things or did have claims for Retiree medical benefits, they

11 would be included in our general unsecured claims.  So we

12 often have an interesting balancing act as Your Honor knows.

13          THE COURT:  Yes.

14          MS. BECKERMAN:  But yes, that was certainly part

15 of it and my Committee did, and I would like to thank them

16 for all their patience at my numerous calls, Authorizations

17 for different negotiating situations throughout the process

18 as well.  Obviously, they were kept involved in the process

19 and, you know, every step of the way along the negotiation

20 process and when we would make a financial move, they would

21 have to approve it and they would understand the various

22 legal issues.  I certainly spent more time than they

23 probably wanted to hear explaining those issues.

24          THE COURT:  Yes.

25          MS. BECKERMAN:  Because they were complex here

1  and not so simple, particularly in the post-this now world.

2  So, Your Honor, from the perspective of the settlement, I

3  think it does reflect a very fair consensus, a balancing of

4  all the issues, a necessary transition in the process, and,

5  obviously, from the Official Committee of Unsecured

6  Creditors' perspective, a settlement that we wholeheartedly

7  support have obviously actively -- were actively engaged in

8  the negotiation involving it and would ask Your Honor to

9  approve the settlement before you today.

10           THE COURT:  All right.  Thank you, Ms. Beckerman.

11  Mr. Matz, good morning.

12           MR. MATZ:  Good morning, Your Honor.  Your Honor,

13  really, because of the thoroughness and the eloquence of my

14  fellow Counsel this morning, I can and I will be brief.  But

15  I do want to note for the record that the Bondholder Group

16  supports the Debtors' Motion Seeking Court Approval of the

17  Settlement Agreement that has been entered into with the

18  Official Committee of Retired Employees.  We join in the

19  comments that have been made this morning by Counsel for the

20  Debtors, the Official Committee of Unsecured Creditors, and

21  the Official Committee of Retired Employees.  And like my

22  fellow Counsel, I would like to both commend and thank all

23  parties involved, including Your Honor, for encouraging and

24  working so constructively to fashion what we consider to be

25  a fair and equitable settlement for all parties involved.

1           THE COURT:  All right.

2           MR. MATZ:  Thank you, Your Honor.

3           THE COURT:  Thank you, Mr. Matz, and I'll say the

4    same thing about your group as I said about the Creditors

5    Committee and that is that it's obvious that you had an

6    important role to play here in this settlement and helped to

7    achieve the settlement.

8           MR. MATZ:  Thank you for your kind remarks.

9           THE COURT:  Thank you, Mr. Matz.  Mr. Zahralddin,

10   good morning.

11          MR. ZAHRALDDIN:  Good morning, Your Honor.  Since

12   Mr. Berger was up here, I'll lower these down a little bit.

13          THE COURT:  Yes.

14          MR. ZAHRALDDIN:  To match me and Ms. Schweitzer's

15   -- I'm doing that for you.

16                          (Laughter)

17          MR. ZAHRALDDIN:  As you know, I represent the

18   Long-Term Disabled Committee and --

19          THE COURT:  You bet.

20          MR. ZAHRALDDIN:  -- I did want to also stand up

21   and express the gratitude of our Committee to the Retirees,

22   the Debtors, and the other parties for providing an extra

23   option, particularly for our older long-term disabled folks,

24   or essentially, for all of our eligible LTD'ers, but

25   particularly for our older long-term disabled who were given

1  an option to transition in.  That seems to be the folks who

2  are most affected by this, though the option was provided to

3  anyone who was eligible.  We thought that that was a very --

4  not just a nice gesture but, in certain instances, very

5  important to the planning of our disabled populations and we

6  definitely appreciate that and, for that reason, I rise to

7  also support the Retiree settlement on behalf of the Long-

8  Term Disabled Committee.

9          THE COURT:  All right.  Thank you, sir.  Thank

10  you.

11          MR. ZAHRALDDIN:  Thank you, Your Honor.

12          THE COURT:  Anyone else, particularly anyone who

13  might be wishing to speak in favor of the settlement before

14  hear from any Objectors?

15              (No audible response)

16          THE COURT:  All right.  I know we do have a

17  number of Objections and would anyone like to be heard on

18  their behalf?  I believe all of the Objections are pro se,

19  all the Objectors are pro se and I'm certainly prepared to

20  hear from them now.

21          MR. YOAKUM:  Your Honor, it's John Yoakum.  I'd

22  like to be heard.

23          THE COURT:  Yes, Mr. Yoakum, good morning.

24          MR. YOAKUM:  Can you hear fine?

25          THE COURT:  Very well.  Thank you, sir.  Thank

1  you.

2          MR. YOAKUM:  Okay.  Well, ten minutes before this

3  call, I received via UPS another inch in legal documents

4  related to this hearing, which I have not read, but I'll

5  comment on the matter based on all the documents I received

6  prior to today and I'll try to keep my comments less than

7  five minutes.

8          THE COURT:  You take your time and I'm prepared

9  to hear you.  Yes.

10         MR. YOAKUM:  Unfortunately, the representations

11 being made by Nortel's legal Counsel and the other parties

12 in this matter in relation to me are a little incomplete

13 and, to some degree, inaccurate.  Statements that I was

14 eligible to retire and chose not to do so are inaccurate and

15 I dispute those assertions.  I apologize for being a party

16 to the settlement proceeding as I really have no desire to

17 obstruct it; however, I was given no choice when I

18 discovered that part of my claim is being disallowed without

19 being given any formal consideration.  No one to this point

20 in time has ever contacted me directly to understand or

21 discuss the merits of my claim.  I reached out to the

22 Counsel for Nortel and the Retiree Committee prior to this

23 hearing and no one would engage with me.  In December 2009

24 when I was terminated by Nortel as part of the sale of the

25 business unit I worked for, I was of retirement age and I

1    had ample service to retire from Nortel and I requested to

2    do so.  It's common practice for a person over 55 to retire

3    from one company and go to work for another and nothing in

4    my Nortel termination or my Avaya offer prohibited such

5    action.  I received an application from Nortel clearly

6    stating all the benefits I was entitled to, which I properly

7    committed -- completed and submitted on March the 2nd, 2010,

8    well within the time allowed.  I attached an explanation of

9    the status of my pension which was now, at that point in

10   time, the responsibility of PBGC and not Nortel.  From my

11   perspective, I did everything necessary to retire from

12   Nortel and receive benefits.  I would be glad to discuss the

13   details of my claim and the reasons behind it in greater

14   detail but I'm not sure this is the proper venue to do that

15   and I cannot easily afford a lawyer to represent me in that

16   manner.  My only reason for entering this Objection in this

17   proceeding was I was forced to do so because part of my

18   claim is being disallowed without proper consideration.  It

19   is certainly not my desire to negatively impact the

20   Settlement Agreement for my former peers.  I'd like to make

21   one comment in relation to the settlement in support of all

22   of the Retirees.  As I understand it, the settlement

23   provides 67 million in support of 4,600 Retirees.  In the $4

24   ½ billion patent sale that provides a large portion of the

25   funding for this bankruptcy, I can provide documented

1  evidence that I personally contributed $43 ½ million of the

2  value as an inventor of record of 58 of those patent cases

3  involved.  I'm proud to have provided that funding towards

4  this settlement and the claims of this bankruptcy, including

5  my own.  So thank you for listening to me.  What else do I

6  need to do in relation to my own claim?

7              THE COURT:  All right.  Well thank you, Mr.

8  Yoakum.  That was certainly well-stated and let me ask --

9  I'd like to ask a question if I may of Mr. Berger, in

10  particular, because I understand that the Debtors are

11  clearly looking for finality here.  But normally, if there

12  -- in a case where there is a claim and there is an

13  Objection to the claim, we hold an evidentiary hearing on

14  that Objection and that -- the Objections to the claim and

15  then the request from the Claimant to have that overruled.

16  Here, I'm being asked, in effect, to disallow this claim of

17  Mr. Yoakum and several of the others without providing them

18  with that opportunity and I'm not sure if we can't proceed

19  without making a ruling on these particular few individuals.

20             MR. BERGER:  Your Honor, in fact, I think that

21  Mr. Yoakum was provided with an opportunity.  He did contact

22  our office on February 18th.  We spoke to him on the 18th and

23  the 22nd of February and described to him that he was not

24  contained in the census provided by the Debtors as being

25  eligible to receive Retiree benefits.  I'm also reminded

1    that we spoke to him again on the 23rd of February.  The

2    Notice that the Debtors provided, pursuant to Your Honor's

3    Notice of Procedures Order --

4              THE COURT:  Yes.

5              MR. BERGER:  -- at the end of January provided

6    Mr. Yoakum with notice that his claims were on the schedule

7    to be expunged.  So he's had notice of February, all of

8    March, and he's had an opportunity to respond.  I do

9    understand, and I practice in the Bankruptcy Courts, that

10   parties do have an opportunity to respond and he has

11   responded, and I think that his response confirms what our

12   belief is and we've been told by the Debtors is that Mr.

13   Yoakum will not retire from the Debtors and there's evidence

14   in the record; you saw that from --

15             THE COURT:  Yes.

16             MR. BERGER:  -- the Debtors' Motion and Mr. Ray's

17   Declaration last night that the Plans -- and I spoke

18   particularly to the Plan provisions.  They're found in pages

19   107 and 111 of Exhibit 2 to Mr. Ray's Declaration with the

20   January 23 of the Debtors' Motion to Approve the Settlement

21   and that particularly describes the retirement, defines

22   retirement, as retirement from active service from

23   employment with the employer, defined as the Debtor, after

24   you attain the age of 55.  Mr. Yoakum -- I don't know the

25   particulars of his termination with the Debtors but he is

1   working with another employer.  He will not retire from the

2   Debtors and that's the -- sorry.  That is the test that's

3   set forth in the governing Retiree Welfare benefits.  So,

4   Your Honor, closure is important here.  It's important for

5   the Debtors.  They're going to pay a significant sum of

6   money for the benefit of the Retirees.  It's significant for

7   the Retirees to understand how much their settlement is

8   going to be.  So while I understand that Mr. Yoakum isn't

9   represented by Counsel, he has had a great amount of time

10  and opportunity to respond to the Debtors' Proposed Notice

11  or the Debtors' proposed expungement of his claim.  I would

12  urge the Court to move forward.  I think we've heard from

13  Mr. Yoakum.  He's made a submission and the Debtors and we

14  have responded.

15          THE COURT:  All right.  Thank you.  Thank you,

16  Mr. Berger.

17          MR. YOAKUM:  Your Honor, may I respond?

18          THE COURT:  Certainly.

19          MR. YOAKUM:  It's John Yoakum again.  I did

20  respond to the Notice.  That's how come I filed this

21  Objection and I did personally reach out and I do appreciate

22  the gentleman that was just speaking's firm who did talk

23  with me on the three occasions or the four occasions he

24  noted.  However, no one has talked with me about the basis

25  of my claims or the reasons why I feel it's being improperly

1   handled and I was 55 years old and I did leave the employ of

2   Nortel and it is not a requirement of retirement that you

3   don't go to work somewhere else.  So there are a bunch of

4   details in my claim that I feel need to be discussed and

5   that's really all I've been asking for.  I reached out to

6   the Nortel attorneys asking to discuss that and they did

7   respond with me via email that they did receive my Objection

8   but they would not discuss it.  So that's the only issue I

9   have here is that I haven't been able to have those

10  discussions.  But I really don't want to hold up this

11  hearing in any way.  If my claim could be separated from it,

12  it would be perfectly fine with me.

13          THE COURT:  All right.  I thank you, Mr. Yoakum.

14  I'm going to take your Objection under -- I don't know --

15          MR. BERGER:  I'm sorry.  I'm trying to listen to

16  you, Your Honor.

17          THE COURT:  No, Mr. Berger, did you want to be

18  heard or do you want a --

19          MR. BERGER:  No, Your Honor.

20          THE COURT:  -- minute or two to address this?

21          MR. BERGER:  If I -- just a moment.

22          THE COURT:  Of course, yes, please.

23          MR. BERGER:  Thank you for that moment, Judge.

24          THE COURT:  Yes, Mr. Berger.

25          MR. BERGER:  I'll raise the microphones.  I'll

1  put them back down when I move away from the podium.

2          THE COURT:  I've been watching a lot of

3  basketball lately, Mr. Berger, and --

4          MR. BERGER:  We all have.

5          THE COURT:  -- it's good to see you at that

6  podium.

7          MR. BERGER:  It reminds me of how old I am.  Your

8  Honor, if Mr. Yoakum has additional documents -- he does

9  appear to be somewhat unique.  He has responded.  He's

10 telling us on the phone today that he may have some other

11 documents that I have not seen.  But we have no objection to

12 Your Honor taking it under consideration.

13         THE COURT:  All right.

14         MR. BERGER:  We would ask that Mr. Yoakum provide

15 me with those additional documents.  We have his contact

16 information, having spoken with him.  Either later today

17 when I find my way back to the office or tomorrow, we'll

18 reach out to him, have another conversation, see what those

19 documents are.  Hopefully, we can agree either some or a

20 portion of his claims are allowed.  Maybe they're all not

21 allowed, in our judgment, and we need to come and find our

22 way back to Your Honor.

23         THE COURT:  Of course, and that's -- yes, Ms. --

24         MR. BERGER:  I'm sorry.

25         MS. SCHWEITZER:  That's --

1          THE COURT:  Ms. Schweitzer?

2          MS. SCHWEITZER:  No, no, no.  Go ahead.

3          MR. BERGER:  Go ahead.

4          MS. SCHWEITZER:  I was going to say, from the

5   Debtors' side, that the Settlement Agreement does

6   contemplate that this is an allocation issue.  It's not --

7          THE COURT:  That's right.

8          MS. SCHWEITZER:  -- settlement approval issues so

9   that the claim would be disallowed as against the Debtor but

10  then is a question of the right to participate in the

11  settlement is what we would be preserving.  I just wanted to

12  be clear.  And just -- I also wanted to state for the record

13  as I understand that everyone has different factual basis,

14  but just for Mr. Yoakum's comfort, that the documents that

15  were sent last night are the full copies of the plans that

16  he actually -- he or other Objectors cited to in their

17  Objections in terms of the 2008 Plan.  So it wasn't an idea

18  to give people new evidence or give the Court new evidence

19  that the individuals hadn't seen.  It was just the -- it

20  attached copies of the current medical and life plans and

21  then the ones that were from 2008 that people were citing

22  to.  So it wasn't meant to put new evidence against them.

23  Also, the Debtors had pulled and reviewed Mr. Yoakum's files

24  so we don't have copies of what he's referring to now if

25  such documents exist.  So I think if he provides them to Mr.

1  Berger, obviously, the Debtors will cooperate in any way

2  reasonably possible.  But it's important to us that this is

3  an allocation issue and not -- you know, not a Debtor issue.

4        THE COURT:  So what we would do, in effect, is

5  provide that the Debtors are released from any claim by Mr.

6  Yoakum?

7        MS. SCHWEITZER:  Right.

8        THE COURT:  But we would not, at this point,

9  disallow his claim.  Is that what we're talking about?

10       MS. SCHWEITZER:  I think that the proper

11  mechanism would be his claim would be disallowed without

12  prejudice to his right to a final determination of his right

13  -- the claim -- because the claim is against the Debtors,

14  right?

15       THE COURT:  Right.  That's correct.

16       MS. SCHWEITZER:  And so I think you would say

17  that the claim against the Debtors is disallowed but without

18  prejudice to the final resolution of his right to be a

19  participant in the settlement.

20       THE COURT:  Okay.

21       MR. BERGER:  Right.  And --

22       MR. YOAKUM:  And may I clarify that you're only

23  speaking about the parts of my claim that you originally

24  included in your Notice and not my entire claim?

25       THE COURT:  That's right, just those portions

1   that were being disallowed.

2            MS. SCHWEITZER:  Right, the Retiree-related

3   benefits.

4            THE COURT:  Yes.

5            MS. SCHWEITZER:  Yes.

6            MR. BERGER:  Right.  And as Ms. --

7            MR. YOAKUM:  Yes, thank you very much.

8            MR. BERGER:  And as Ms. Schweitzer said, the

9   Settlement Agreement expressly does contemplate that the

10  Retiree Committee has standing and Successor have a standing

11  --

12            THE COURT:  Yes.

13            MR. BERGER:  -- regarding claim dispute and Your

14  Honor has continuing jurisdiction.

15            THE COURT:  That's right.  And I will retain

16  jurisdiction as to Mr. Yoakum's situation and, if necessary,

17  we'll take it under further consideration at a later date.

18            MS. SCHWEITZER:  Okay.

19            MR. BERGER:  Thank you, Judge.

20            THE COURT:  All right, Mr. Yoakum?

21            MR. YOAKUM:  That's perfectly acceptable to me.

22  Thank you very much.

23            THE COURT:  All right, sir.  Thank you.  Anyone

24  else?

25            MR. REVA:  Yes.  This is Walter Reva.

1          THE COURT:  Yes, good morning.

2          MR. REVA:  Yes, good morning.  Good morning.  And

3  again, I want to reiterate what Mr. Yoakum said, not to

4  delay this specific settlement claim.  My Objection

5  basically was that in 2009, I was 57 years old with 33

6  years' service and, as I mentioned in my Objection, I was

7  not a Retiree and the reason for that is that, at that time,

8  I couldn't afford to retire because at that time, if you did

9  retire, you had to take the PBGC Pension Plan and the only

10 way to get Retiree benefits is if you did take the PBGC

11 Pension dollars and, because it's a sliding scale, the

12 longer you wait, as you get older, you get more money and

13 then you could actually pick up the Retiree medical benefits

14 at that time.  So in 2009, I could not afford to retire and

15 we ended up -- Nortel actually went bankrupt and if they

16 didn't go bankrupt, I would have continued working with

17 Nortel and retired probably at this point in time in my

18 life.  However, that didn't happen and we ended up getting

19 spun off to the CVAS organization which was a GENBAND and

20 they do not offer a Retiree benefit plan when you retire and

21 I'm going to retire like next year and I'm going to be 62

22 next year and I will not have any medical benefit plans at

23 all after contributing towards the plan and the Fund.  And

24 like Mr. Yoakum, I'm hoping maybe that you can defer my

25 claim and take another look at it and, again, it's not

1  against the Debtors itself and that's all I have to say.

2  Thank you.

3          THE COURT:  All right.  Thank you, Mr. Reva.  The

4  silence reflects some discussions going on in the Courtroom.

5  Yes, Mr. Berger?

6          MR. BERGER:  Thank you, Judge.  I do think that,

7  while sympathetic, Mr. Reva's situation is succinctly

8  different than Mr. Yoakum's.  He made a decision not to

9  retire.  He made a financial decision, a difficult decision,

10  but he did.  He's not citing to any documents in support of

11  a claim that would be cognizable in this process.  I don't

12  know how we would ever value that claim and I'm concerned

13  that, under these facts, the objective criteria that I

14  described earlier would be reduced in meaning and we'd never

15  see an end to who might say well, me too.  So under what

16  we've seen in his Objection and what I've just heard on the

17  phone, I do support the settlement and I don't know that

18  there is anything and I'd resist any opportunity to have

19  some type of claim recognized under these circumstances.

20          THE COURT:  All right.  Thank you.  Thank you,

21  Mr. Berger.  I'm going to rule on matters later and I'll

22  take this matter and address it at that time.  Anyone else?

23          MR. HAWKINS:  Yes.  Judge, this is Sherman

24  Hawkins.  Could I make a few comments on my Objection?

25          THE COURT:  Yes, Mr. Hawkins, certainly.

1          MR. HAWKINS:  I'm in basically the same situation

2   as Wally and there's probably quite a class of us that are

3   in that situation where we have worked 33, and in my case 32

4   years, for Nortel, never expecting Nortel to go bankrupt and

5   the commitment or obligation that we had from Nortel was

6   that, eventually, we would retire with Nortel.  It is only

7   because of the bankruptcy that caused us to have to make

8   further decisions whether or not to, you know "retire" from

9   Nortel at the time.  But, quite frankly, who would make that

10  decision at that time, not knowing what the benefits would

11  be, not knowing what the pension would be; all those issues.

12  And that's why we feel as though our claims should not be

13  part of this -- or in my situation, claims should not be

14  part of this arrangement.  It should stand alone against the

15  Debtors.  Thank you.

16          THE COURT:  All right.  Thank you, Mr. Hawkins.

17  Anyone else?  Yes?  Is it Mr. Horne?

18          MR. HORNE:  Yes indeed it is.  Robert Horne.

19          THE COURT:  All right.  Welcome, Mr. Horne.

20          MR. HORNE:  Thank you, Your Honor.

21          THE COURT:  Welcome back.

22          MR. HORNE:  Thank you, Your Honor.  For the

23  record, it's two years ago since I last spoke before this

24  Court.

25          THE COURT:  Yes.

 1          MR. HORNE:  I just guess I've gotten two years

 2  older but --

 3          THE COURT:  Haven't we all?  Yes.

 4          MR. HORNE:  But I would like to compliment the

 5  Court and everybody who's here present on the way things

 6  have proceeded.  The last two years, you may remember at

 7  that time, I had just initiated the work on deferred

 8  compensation.

 9          THE COURT:  Yes, sir.

10          MR. HORNE:  And that was what took time.  It was

11  successfully negotiated and settled and everybody in the

12  Deferred Compensation Plan is very pleased with the

13  settlement.

14          THE COURT:  And that's much to your credit, Mr.

15  Horne.  Thank you.

16          MR. HORNE:  Well, thank you very much.  And I

17  need not say, sir, that I'm not represented by an attorney

18  today because that Deferred Compensation Plan has now been

19  completed and, therefore, I don't need an attorney on that

20  subject.

21          THE COURT:  All right.

22          MR. HORNE:  I'm here to talk about the Retiree

23  plan which is the item on the Agenda.

24          THE COURT:  Yes.

25          MR. HORNE:  And actually, I've got two Objections

1  that I filed and I'd like to deal with them separately.

2        THE COURT:  All right.

3        MR. HORNE:  I don't think they're properly

4  recorded yet but one is under 9654 and the other one is

5  9655.  I'd like to deal with them separately and, if

6  necessary, sit down and then stand up again or whatever Your

7  Honor wishes.  But 9654 refers to my own personal situation

8  under the Retiree plan and I'm a little different from the

9  people who have just spoken.  I was retired in 2001 as the

10  attorneys have said and I had been on the Retiree plan, the

11  Retiree health plan, for nearly a decade in 2009 when the

12  Petition date came and everything I'm going to talk about is

13  the Petition date.  I don't want to claim to be an attorney.

14  I don't want to claim to be knowledgeable about bankruptcy

15  laws but I know from the work on deferred compensation that

16  the Petition date keeps going up every single time, every

17  single sense, where there is an offer has -- it includes the

18  word as of Petition date.

19        THE COURT:  Yes, and it is obviously significant

20  in the bankruptcy context.

21        MR. HORNE:  And I appreciate that, Your Honor,

22  because that's my whole argument.

23        THE COURT:  Okay.

24        MR. HORNE:  I was on the plan in 2009.  I was

25  part of the Nortel U.S. Retiree Protection Committee,

1   contributing money there.  We were looking for lawyers.  We

2   couldn't find lawyers who were not committed in some way in

3   this Court case and then -- so I knew about that.  I knew

4   how difficult it was to find lawyers.  Then in 2010, when

5   the Deferred Compensation Plan came and I went to find an

6   attorney who could represent us, I was swamped with emails

7   and telephone calls.  Mr. Horne, how did you manage to do

8   that?  How did you manage to do it?  I came before you, as

9   you may remember, talked about it and everybody immediately

10  jumped up and said we'll create a 114 Committee.

11            THE COURT:  Yes.

12            MR. HORNE:  And that's what's led to where we are

13  today and I've read the documents and I think the documents,

14  the plan, is excellent.  I mean it's just a well-worked out

15  plan.  My compliments are to the Committee and to the

16  attorneys and to everybody for doing what is probably --

17  it's going to become a plan which everybody's going to try

18  to copy in the future so I really like that.  The problem is

19  that I received no documents on this whatsoever.  Everything

20  I've got, I've had to look at through the graces of a friend

21  who's let me read his documents.  Nothing has been sent to

22  me though I have talked to Mr. Berger.  We've had very good

23  conversations.  But Mr. Berger's response is I was off the

24  list.  What happened was is as follows and I think it might

25  be just -- I don't want to do a survey of the attorneys in

1  this room but I think if they were where I was in 2009,

2  having contributed to the NUSRPC Plan, Protection Plan, and

3  knowing the chances of the Retiree healthcare plan being

4  canceled, I think if we just did a survey of all the

5  attorneys in this room at the moment and just said if your

6  father or your mother called you and said my son or my

7  daughter, my employer has just gone bankrupt and they're

8  talking about cutting off the Retiree plan, what do you

9  think is likely to happen?  Every attorney would say it's

10 likely to happen.  And if you're a son or a daughter, you

11 might just say -- and parent, I think you better do

12 something about it; watch out because there's a couple of

13 things which people in this room may not be aware of because

14 there are not many people who are age 65 yet.  But if you

15 look -- if you know somebody who is 65, they'll tell you

16 that you have to sign up for Medicare at the age of 65.  If

17 you're a month late, you get penalized.  If you get confused

18 by the date that Social Security full benefits come in, the

19 Medicare-age, you get penalized by Medicare.  You can't do

20 it and if you try to switch in the middle of the year

21 between Medicare plans, you can't do it.  The plans have an

22 annual sign-up of one month in the year.  So when something

23 stops, if a plan stops, or you want to switch plans, you

24 have a problem because you can't get in until the sign-up

25 date in December.  That's the way Medicare works.  So there

1  I was in 2009, knowing a little bit about what was going on.

2  I was one of the first people to file a claim on my pension.

3  I filed number 138 on February 3, 2009 which is within three

4  weeks of the Petition date so I jumped on things very

5  quickly.  Then I got involved in 10 November 2009 and I knew

6  what was going on or I knew a little bit about what was

7  going on and my wife became 65 in November of 2009.  So I

8  had a question.  Okay.  What do we do?  It's likely that

9  this healthcare plan is going to be canceled.  It's likely

10 to be canceled in the middle of the year coming up and, in

11 fact, the Debtors did file a few weeks later a Petition.  It

12 was withdrawn but it was still a Petition.  We all knew it

13 was coming.  You didn't have to be very knowledgeable to

14 know it was coming.  So what did we do in 2009?  We put my

15 wife under Medicare and we put her under a separate

16 supplemental plan and I switched on to the same supplemental

17 plan because husband and wife get a discount.  As far as I

18 was concerned, the plan was about to -- the Nortel plan was

19 about to disappear and I should not be penalized.  Mr.

20 Berger said I haven't lost any benefits.  I've lost a

21 benefit on the Petition date, like everybody else did.  Now,

22 there's another fact which is taken into consideration.

23 I've said something about the fact that you can't switch in

24 the middle of the year.  It's probably not known to many

25 people but I assure you that if you have a problem, if

1  you've gone off a Medicare plan and then you try to get on

2  to another Medicare plan, the word pre-condition comes up,

3  pre-established condition.  And I don't want to talk too

4  much in this Court about the sorts of things that can happen

5  to people who are over 65, but I'll just let people think

6  about breast cancer, prostate cancer, heart problems, or

7  diabetes for just a few seconds.  Those things come and

8  they're with you for years and if you have an excluded pre-

9  condition, you do not want to be in that position and I

10  would suggest that any attorney in this room talking to

11  their parent about that would say I don't want you to be in

12  that position either.  So it was clear that I should switch

13  but I don't think there was really anything wrong but I did

14  lose some benefits and Mr. Berger says I didn't lose any

15  benefits.  So my whole case is -- my whole request is that I

16  should be considered for part of the disbursement of the

17  Agreement as though I was there on the Petition date.  The

18  Petition date is my argument.

19            THE COURT:  All right.

20            MR. HORNE:  With that, Your Honor, I'd like to

21  stop that one and just let the comments come and then we'll

22  go back to the other discussion.

23            THE COURT:  Wonderful.  Okay.  Thank you, Mr.

24  Horne.  Mr. Berger, I know this is an unusual -- I think

25  this may be a fairly unusual set of circumstances, unlike,

1   for example, the other issues.

2           MR. BERGER:  It could be viewed as unique, Your

3   Honor, though --

4           THE COURT:  There's no question Mr. Horne was a

5   Retiree.

6           MR. BERGER:  Well, he was a Retiree and he

7   voluntarily determined, from what the Debtors submitted, his

8   letter to the Debtors --

9           THE COURT:  Yes.

10          MR. BERGER:  -- that he decided he could get

11  Medicare coverage for he and his wife, 65 and over, and a

12  less-expensive cost.

13          THE COURT:  Right.

14          MR. BERGER:  That was a financial decision.  And

15  if you would look, I presume, at the many people who made

16  any number of different decisions between the Petition date

17  and January 31, we could spend days listening to any of the

18  number of reasons.  There needs to be an objective criteria

19  and a line to determine who is eligible to participate in

20  the settlement and who may not be and we chose eligibility

21  as of January 31.  Mr. Horne made his decision for his

22  particular reasons.  I don't want the door to open for

23  people to come and say I had another reason that was

24  justifiable.  I don't mean to sound unsympathetic.

25          THE COURT:  No, no.

1          MR. BERGER:  And I'm turning, Your Honor, for a

2    moment to Mr. Horne to pay his respect.  I'm not

3    unsympathetic.  The Committee does understand the hard

4    choice that he made but he did make a choice.  The opposite

5    side to that spectrum is that 4,600 other people, over 4,000

6    other people, operated in the same dynamic and chose to

7    continue with the benefits that Nortel was providing and

8    they are being compensated because their active benefits are

9    being terminated as a result of what's happening in the

10   Settlement Agreement.  I don't know how many other people

11   dropped off of the plan for whatever other reasons between

12   the Petition date and today.  But, to me, it seems as though

13   the Petition date, while important in any bankruptcy case,

14   in the context of this settlement, would be an arbitrary

15   date because we don't know why people chose and made

16   decisions between then and today.  And for that reason, Your

17   Honor, I think that our response to the Objection that

18   Debtors ought to be sustained.

19          THE COURT:  All right.  Thank you.  Yes, Ms.

20   Schweitzer?

21          MS. SCHWEITZER:  Your Honor, Lisa Schweitzer.

22   There are a few comments or points that I'd like to address

23   as well that I do -- this argument is with respect to

24   participation in the settlement proceeds but there were

25   certain suggestions about the history of the case and all

1  that I want to object.  First, Mr. Horne had suggested that

2  he hadn't gotten any of the documents here, and just for the

3  record, that he is on the service list for all the Motions

4  so he has gotten the Motions and the Notices of the

5  Settlement Agreement that were mailed to people generally.

6  What I think Mr. Horne was referring to is that he didn't

7  get an individualized Notice from the Retiree Committee --

8              THE COURT:  Okay.

9              MS. SCHWEITZER:  -- saying that there's a line

10  item allocation for him; he can correct me if I'm wrong,

11  but I think that the record should reflect, and the

12  Affidavits of Service are on the record, that he is listed

13  on the Affidavit of Service and so that there was -- there

14  was a mailing put in the mail to him, as was with everyone

15  else with the Motions and the pleadings in the case.  And

16  clearly, the fact that he has filed an Objection shows that

17  he did have actual notice of what was happening.  I think

18  also that Mr. Horne has the experience of having lived with

19  other litigations in the case and maybe the Debtors are here

20  a little victim of their successful settlement of other

21  cases or their willingness to settle other cases.  In the

22  deferred compensation dispute, while that's settled, Mr.

23  Horne was one of the people pushing for the formation of an

24  Ad Hoc Committee there.  I will note that, in fact, full

25  discovery showed that Mr. Horne actually didn't participate

1   in the plan being terminated.  He was a participate in a

2   prior plan which money had -- well, there was no money

3   around by Trust so he stayed with that plan but it got

4   rolled into the Deferred Comp Plan that the Debtors funded.

5   So he was a beneficiary of the settlement in a way that

6   maybe if he was a one-off participant wouldn't have gotten

7   an equivalent settlement.  That's fine.  That's yesterday.

8   But he does have the experience of the value of Ad Hoc

9   groups and sort of riding into a larger settlement.

10           In this case, in the same way Mr. Horne is saying

11   gee, it would have been nice, but for my personal

12   circumstances, to be able to ride into this larger

13   settlement.  I made a personal decision back in 2009 based

14   on the facts I knew then to terminate my benefits and, you

15   know, I got the benefit of certainty at that point.  I got

16   the benefit of alternative insurance at that point.  I don't

17   think it's really up for Your Honor's consideration today,

18   but the points on pre-existing conditions, my understanding

19   is those aren't quite correct, is that what happens is if

20   you lose your benefits, that there's sometimes an ability

21   that those pre-existing conditions aren't counted against

22   you in alternative insurance.  It's not -- I'm not a

23   Medicare expert and I know there are steps in that but that

24   is a consideration.  So I don't want those statements to be

25   taken out of context or to scare other Retirees because

1  everyone should consider that individually.

2      The other argument Mr. Horne had made is I

3  understand the Petition date and I understand the importance

4  of filing claims.  In fact, Mr. Horne did not file, and I'm

5  not inviting them, but did not file any claims relating to

6  Retiree benefits that are being handled today.

7      THE COURT:  Okay.

8      MS. SCHWEITZER:  He filed claims relating to

9  deferred compensation.

10     THE COURT:  Yes.

11     MS. SCHWEITZER:  Those are done.  As he said, he

12 filed claims for non-qualified pension, the pensions not

13 covered by the PBGC.  I think that's the next letter that he

14 wants to bring which is not part of the Retiree settlement.

15 But he did not file any claims similar to the last three

16 that you heard of I wish I had continued benefits or that

17 there was some reliance on the fact that I had prior

18 benefits to make future claims against the Debtor.  So it

19 seems, from the evidentiary record at the time, that Mr.

20 Horne made a personal decision to go where he had

21 alternative benefits, wrote a letter to the company and said

22 this is a lower cost option for me.

23     THE COURT:  Right.

24     MS. SCHWEITZER:  And did not file a Proof of

25 Claim at that time relating to anything else beyond that and

1  the facts have now changed.  There's money being offered to

2  other people.  Yes, we would all like part of that money but

3  I think that this is a little different than the people you

4  had heard before.

5                              THE COURT:  So I'm not

6  quite sure about the -- why the pre-existing conditions are

7  a concern because

8  Mr. Horne has maintained his alternative insurance.

9          MS. SCHWEITZER:  Correct.  That's right that

10 that's a non-issue.  And in fact certainly to his -- I think

11 his suggestion was -- and I don't want to put words in his

12 mouth -- is that that was one of the motivating factors that

13 he had concerns about the loss of insurance in the future

14 and --

15          THE COURT:  Yes.

16          MS. SCHWEITZER:  -- here are the whole list of

17 concerns I might have had.  But as you know, he in fact has

18 alternative insurance that, according to the letters at the

19 time, was made based on his wife's eligibility for

20 alternative insurance.

21          THE COURT:  Right.

22          MS. SCHWEITZER:  So I think that that -- you

23 know, I just want to make -- that's clear.  I think the only

24 other statement I wanted to address is this idea that we all

25 knew the termination was coming in 2009.  I personally

1   didn't know so I actually -- as Ms. Beckerman said, we

2   started talking about it in 2010 -- came to court in 2010,

3   so -- and Mr. Bergen's been telling me up to three months

4   ago that it was far from inevitable even now so --

5            THE COURT:  Yes.  Yes.   Yes.

6            MS. SCHWEITZER:  Some facts do change but I do

7   think -- I just wanted to address those statements that I

8   think they're just inconsistent with the record that

9   happened along the time.  But in terms of the actual claim,

10  it does go into the settlement pot.  It's not a claim

11  against the Debtors right now.

12           THE COURT:  That's right.  And specifically,

13  because no claim was filed, it isn't against -- nothing is

14  pending against the Debtors.

15           MS. SCHWEITZER:  Correct.

16           THE COURT:  Sure.  Okay.

17           MS. SCHWEITZER:  Thank you, Your Honor.

18           THE COURT:  Thank you, Ms. Schweitzer.  All

19  right, Mr. Horne.  I will address your Objection together

20  with other matters when I come to rule on the Settlement.

21           MR. HORNE:  I'd just like to say Mr. Berger said

22  he didn't know what an alternative was.  I would just like

23  to suggest that a ruling is that anybody that was on the

24  healthcare plan on the petition date will be an appropriate

25  ruling.

1          MR. BERGER:  Your Honor, I have to stand to --

2          THE COURT:  I think -- yes.

3          MR. BERGER:  -- to strongly oppose that notion.

4          THE COURT:  Right.

5          MR. BERGER:  It simply does not function that the

6     whole paradigm of how we came into this negotiation with an

7     entirely different -- it would radically alter what we've

8     carefully put in place.

9          THE COURT:  I -- yes.  I can understand that.

10    Thank you, Mr. Berger.

11         MR. BERGER:  Thank you, Judge.

12         THE COURT:  Mr. Horne, all right, now, your

13    second concern is --

14         MR. HORNE:  Yes, the --

15         THE COURT:  Oh, and a -- I think Ms. Beckerman is

16    rising to say it's not even --

17         MS. SCHWEITZER:  Mrs. Schweitzer.

18         MS. BECKERMAN:  Yes.

19         THE COURT:  Ms. Schweitzer.

20         MS. BECKERMAN:  I was going to rise, too --

21         MS. SCHWEITZER:  It's okay.

22         MS. BECKERMAN:  -- so we're right up there.

23         THE COURT:  All right.

24                        (Laughter)

25         MS. SCHWEITZER:  That's fine.  Your Honor, I --

1           THE COURT:  But it's not relevant to today.

2           MS. SCHWEITZER:  This is about nonqualified

3  pensions --

4           THE COURT:  Yes.

5           MS. SCHWEITZER:  -- and other information, so I'm

6  happy if he wants to be heard.  It's not on the calendar for

7  today and no one has briefed it.  If he wants to make a

8  statement to the Court, I'd just ask that it's separate from

9  this Motion only for the purposes of the record.

10           THE COURT:  And it's for sort of informational

11  purposes is how I would understand it.  Is that right?  Is

12  that --

13           MS. SCHWEITZER:  Mr. Horne can address it but his

14  letter seems to suggest he wants another committee

15  appointed.

16           THE COURT:  Oh.  All right.  Mr. Horne, yes, I'll

17  hear you, sir.

18           MR. HORNE:  Thank you, sir.  Thank you, Your

19  Honor.  This is another result -- has come as a result of

20  hearing of this Retiree Committee.  I said earlier that when

21  I -- two years ago when we got the attorneys appointed for

22  coming to do the Deferred Compensation Plan, my telephone

23  and my email just went berserk.  Well, somewhat the same has

24  happened here again.  Those New Yorkers who know it, it's

25  sort of déjà vu all over again if my may use that?

1         THE COURT:  Yes.

2         MR. HORNE:  It's just déjà vu all over --

3         THE COURT:  It's appropriate --

4         MR. HORNE:  -- again.

5         THE COURT:  It's appropriate with baseball

6    starting yesterday.

7         MR. HORNE:  Yes, sir.

8         THE COURT:  Yes.

9         MR. HORNE:  Yes.  It's been remarkable because

10   one of the exclusions from the Retiree discussion is

11   anything to do with the pensions and the nonqualified

12   pensions.  So a lot of people have come to say to me,

13   Robert, what can you do about getting the same sort of

14   activity going for the nonqualified pensions?  So I'm not

15   sure we're allowed to make a request or just to give

16   information --

17        THE COURT:  Well, I think --

18        MR. HORNE:  -- but my request is --

19        THE COURT:  -- we -- here's my concern,

20   Mr. Horne.  You know, it's -- I think we have to proceed by

21   Motion if at all here --

22        MR. HORNE:  Yes.

23        THE COURT:  -- in -- under these circumstances.

24        MR. HORNE:  I could make a Motion, Your Honor.

25        THE COURT:  Well, I --

1          MS. BECKERMAN:  Maybe you want to have a

2  discussion first.

3          THE COURT:  Yes.  I was thinking more in terms of

4  a written Motion, you know, with an explanation.  The other

5  concern I would have is you can certainly represent yourself

6  but you can't represent others, and that would be an issue

7  for the Court as well.

8          MR. HORNE:  I'm just going back to two years ago

9  when I --

10          THE COURT:  Yes.

11          MR. HORNE:  -- came and said the Retirees and the

12  long-term disabled people have swamped me and everybody sort

13  of got up and said we'll do it on one full committee.

14          THE COURT:  All right.

15          MR. HORNE:  I'm hoping the same will happen right

16  now.

17          THE COURT:  And let me hear, if I may, from

18  Ms. Schweitzer first because I'm concerned about getting us

19  off track.  We're here on a specific matter, the Settlement,

20  and a very significant matter in fact, and I don't want this

21  to be a forum for other matters that are not on the Agenda

22  if you will.

23          MS. SCHWEITZER:  Right.  I'm rising up, but not

24  in favor of supporting an 1114 Committee as --

25          THE COURT:  No.  I --

1          MS. SCHWEITZER:  -- Mr. Horne had invited.

2          THE COURT:  Certainly not.

3          MS. SCHWEITZER:  So -- and as a person who lives

4     in the same hometown as Yogi Berra, I'm all for the

5     metaphors but, you know --

6          THE COURT:  Sure.

7          MS. SCHWEITZER:  But the -- my -- the -- there's

8     a couple facts that are probably helpful for the Court to

9     understand.  It's a Settlement Agreement at the request --

10    and consistent with the Debtors' intention and the request

11    of employees and retirees -- made a very specific list,

12    what's in and what's out --

13         THE COURT:  Right.

14         MS. SCHWEITZER:  -- right?

15         THE COURT:  Correct.

16         MS. SCHWEITZER:  And claims are being settled and

17    some claims are not being settled.  One of those bunches of

18    claims not being settled is Nonqualified Pension Plan

19    claims --

20         THE COURT:  Right.  That's right.

21         MS. SCHWEITZER:  -- where this is not PBGC plans.

22    These are private contracts between the Debtors and

23    individual retirees for other pension-related benefits.

24    Those are not part of the Settlement Agreement today and

25    they're not been compromised, and it's clear that claims

1  relating to those Plans are not being really straight, the

2  contractual claims.

3         So that's a dividing line, and so therefore, I do

4  think that for the record today this is not part of the

5  Settlement Agreement being incurred today and is nothing you

6  have to consider as part of this Motion.

7         THE COURT:  It's specifically not part of this --

8         MS. SCHWEITZER:  Right.  And with respect to this

9  whole idea of another committee, I think, as I said, there's

10  been employees that have had a lot of success so far forming

11  committees and extracting settlements, but I think in the

12  past, Your Honor -- and I don't mean to put words in your

13  mouth and certainly none of us should be prejudging this

14  without formal papers in front of us -- but there is a point

15  that sometimes employees have to litigate their own claims

16  and it can't be on the expense of the Debtors to pay for

17  every adversary for every employee claim.  It's not the way

18  the Bankruptcy Code is designed and it's not -- while in

19  certain instances, it has been helpful and this retirement

20  settlement process has been extraordinarily helpful, it's

21  not that every employee issue merits a committee, much less

22  a committee paid for by the Debtors.

23         THE COURT:  Right.

24         MS. SCHWEITZER:  And in this case -- and just

25  again so you have the background -- it's not that there's

1  one plan that everyone has one ability to participate in.

2  Different people have different claims based on different

3  documents and there's a lot of individual issues.

4          But as Your Honor noted first is that there has

5  been no formal Motion made.  There is -- Mr. Horne wrote a

6  letter saying I hear this rumble of people who would like a

7  committee appointed, and that does have to be made by formal

8  request.  For the record, we would oppose that.

9          We think that these claims can and should be

10  handled on an individual basis and we think that there's --

11  that the more committees that are formed, the more this will

12  never be a never-ending process.  The Debtor is -- it's

13  actually at some point detrimental to the Debtors' ability

14  to resolve claims because not every claim warrants a

15  committee, but every time the Debtors take a position, we'll

16  get a request for another committee and a three-year

17  process, right?

18          THE COURT:  That's right.

19          MS. SCHWEITZER:  We don't have the luxury of that

20  for every remaining claim.  So I offer those comments by way

21  of background and not in order to have Your Honor rule

22  today.

23          So the record is clear, we think that it is

24  important to make clear it is not part of the 1114 Motion

25  before Your Honor today --

1           THE COURT:  That is very clear, yes.

2           MS. SCHWEITZER:  -- that anything -- that any

3  request should be made by way of formal Motion that we have

4  an opportunity to respond to.  And while we would want to

5  see the papers based on everything we've seen and looked at

6  today, it's our expectation the Debtors would oppose the

7  formation of that committee, but we're not there today.

8           THE COURT:  All right.  Thank you.  Thank you,

9  Ms. Schweitzer.

10          Ms. Beckerman?

11          MS. BECKERMAN:  Yes, Your Honor.  I guess I have

12  also had experience with some of the issues that Mr. Horne

13  is raising myself in other cases, and I guess I'd just point

14  out a couple things in addition to agreeing with everything

15  Ms. Schweitzer just said.  The first is that, for whatever

16  reason, we have 1114 drafted as Congress intended it to be

17  and it doesn't include pensions.

18          THE COURT:  Right.

19          MS. BECKERMAN:  So obviously, Mr. Berger is --

20  and his committee are not representing people in connection

21  with that and that's not within their purview.  Congress

22  decided, for whatever reason, there didn't need to be a

23  process for that.

24          And I agree with Ms. Schweitzer that we're not --

25  have no Motion in front of us, but I think our committee

1  would feel the same way that she's indicated that the

2  Debtors might likely feel about that.  We are obviously --

3  understand there are hundreds of these claims.  In Delta we

4  had thousands of these claims, Your Honor, because every

5  pilot had an excess pension plan.

6            THE COURT:  Um-hum.

7            MS. BECKERMAN:  And we did not have a committee

8  for those persons.  We were able to, however, reach

9  settlements.  We did have a settlement in that case.  And so

10 I'm quite familiar with this type of issue.  I've had it in

11 other cases as well, and they did not result in formal

12 committees, and there were circumstances where people moved.

13 For them, the Courts denied them in those circumstances as

14 well.

15            But I do think these are claims that can be

16 resolved.  They are often, as Ms. Schweitzer said, either

17 individual or fall into categories, depending on the type of

18 plans that they're in, you know, SERP versus some other

19 excess -- excess, you know, pension plan, top hat type plan.

20            So I don't think we have uniformity here, but

21 obviously, we'll -- if there's a formal Motion made, we'll

22 have to address it at that time, but I don't think for today

23 it's relevant because it doesn't involve 1114 and we're here

24 on an 1114 Committee Supplement.

25            THE COURT:  That's right.  Thank you.  Thank you.

1  And these matters are specifically not included within the

2  Settlement.

3           Mr. Horne, I -- it's always a pleasure to have

4  you in court, but this is not the time for me to consider

5  the Nonqualified Pension Plans and --

6           MR. HORNE:  I do understand that, Your Honor.

7           THE COURT:  And it should be -- we should

8  proceed --

9           MR. HORNE:  It's an attempt to get it surfaced.

10           THE COURT:  Thank you.  I appreciate that.  Thank

11  you, Mr. Horne.

12           MR. HORNE:  Because I think whatever the attorney

13  has just said, I think it is an efficient process, as has

14  just been shown by all these committees, but it takes

15  several hundred people, puts them into a group, and gets an

16  agreement.

17           THE COURT:  All right.  Thank you, sir.  Thank

18  you.

19           MR. HORNE:  Thank you, Your Honor.

20           THE COURT:  Yes, Ms. Schweitzer?

21           MS. SCHWEITZER:  We're in a little team huddle

22  here.  I'm over in the sports world.  So Lisa Schweitzer.

23  Just -- Mr. Berger and I were just conferring.  I -- we can

24  check -- I don't believe there are any other Objectors on

25  the phone that wish to be heard today.

1          THE COURT:  That's right.

2          MS. SCHWEITZER:  So with respect to the Retiree

3   Settlement just to move back to that --

4          THE COURT:  Yes.

5          MS. SCHWEITZER:  I think that --

6          THE COURT:  Let's get back -- yes, let's get back

7   on the right page, please.

8          MS. SCHWEITZER:  Exactly.  That -- I think

9   they're -- you've heard from everyone.  I'm obviously happy

10  to address any other points or concerns if you would like,

11  but I think that everyone's had an opportunity to be heard

12  and I think that what's before Your Honor is now a Motion to

13  approve this Settlement, that you've heard from Mr. Horne as

14  one Objector, and then there were three individuals on the

15  phone -- Mr. Yoakum, Mr. Hawkins, and Mr. Reva -- and I

16  think that the issue with them is they were each inviting to

17  be carved out, I think, and that there was this general

18  request by Mr. Horne that whole categories of people be

19  carved out as well or that the formula be changed.

20          THE COURT:  Right.

21          MS. SCHWEITZER:  I think that -- again, I might

22  the speaking somewhat on behalf of Mr. Berger, but -- that

23  there is a view that that should not be reopened generally.

24  And with respect to the three individuals on the phone, I

25  think Mr. Yoakum seemed to have some personal situation of

1  -- that he said there were documents that hadn't been

2  considered or some extra facts that haven't gotten into the

3  record that he wanted consideration of, which maybe makes

4  him a little more unique, but I think that the next concern

5  would be -- regardless -- finality against the Debtors,

6  right?  Claims are disallowed --

7           THE COURT:  Right.

8           MS. SCHWEITZER:  -- subject to a separate

9  hearing.  And then with Mr. Reva and Mr. Hawkins, they're

10  not really introducing new facts; they're simply saying,

11  gee, I again made a choice at the time that I wasn't going

12  to retire and there are consequences to that, maybe as a

13  result of the bankruptcy but not as a result of the

14  termination of the Plans today.

15          THE COURT:  Right.

16          MS. SCHWEITZER:  So I think they've also

17  requested sort of a carve-out.  I think there are slightly

18  different facts on that.  But most importantly that,

19  regardless if it's one or three or zero, that it's -- that

20  there is no larger carve-out for anyone else because I think

21  that there needs to be some finality to the process here in

22  terms of improving the Settlement -- and then I'll let

23  Mr. Berger address it -- but I think also an ability to make

24  the Settlement -- if it were approved -- to have it go

25  effective and to start handing out money that they'd need to

1 understand the final claimants against that pot.

2             THE COURT:  Absolutely.  All right.

3             MR. BERGER:  Briefly, Your Honor.  Thank you.

4             THE COURT:  Mr. Berger, yes, sir.

5             MR. BERGER:  To draw a finer point, but for the

6 four individuals who you heard from today, we'd like the

7 record to be closed as you rule on the Settlement Motion.

8 Just as it is important to the Debtors and their estates and

9 the Committees to have closure, it's very important for the

10 Retiree Committee to have closure on this issue as well.

11 We'd like to move on with a finite number of claims and a

12 finite number of -- a finite amount that will be distributed

13 to Creditors.  It simply can't go on.

14             THE COURT:  I understand.  I appreciate that,

15 Mr. Berger, certainly.

16             MR. BERGER:  Thank you, Judge.

17             THE COURT:  Thank you.  And what I'd like to do

18 now is just -- well, I think we could all probably use a

19 recess in any event.  And if I could -- I'll take -- if I

20 can take 20 minutes, I can sort of organize my thoughts and

21 come back here and provide you with a ruling.  I was going

22 to suggest the possibility of taking lunch, but I think it

23 probably -- since it'll only take about 20 minutes, let's do

24 it before the lunch recess.  So I'll see you back here at

25 about 20 of.

1            MS. SCHWEITZER:  Thank you, Your Honor.

2            THE COURT:  Thank you.

3            MR. BERGER:  Thank you, Your Honor.

4            (Recess from 12:20 p.m. to 12:45 p.m.)

5            THE CLERK:  Please rise.

6            THE COURT:  Thank you, everyone.  You may be

7    seated.

8            Yes, of course, Mr. Berger?

9            MR. BERGER:  Very, very quickly, Your Honor.

10           THE COURT:  Yes.

11           MR. BERGER:  As I was thanking the number of

12   people that helped you reach this Settlement, I did neglect

13   -- although I had written in my outline to thank Mr. Ray,

14   who was very helpful in the process.  He was with us

15   throughout the negotiations.  I apologize for not mentioning

16   him earlier, but thank you very much, Mr. Ray.

17           MR. RAY:  Um-hum.  Um-hum.

18           THE COURT:  Thank you.  I'm glad you did that.

19   Thank you, Mr. Berger.  It's --

20           MS. SCHWEITZER:  And if I want my fees paid, I

21   think I have to thank Mr. Ray as well.

22                          (Laughter)

23           THE COURT:  Very important.

24           MR. BERGER:  Can I join my fellow --

25           THE COURT:  Yes.

1          MS. BECKERMAN:  I already did thank him, so I'm

2    in good shape.

3                    (Laughter)

4          THE COURT:  That's right.  That's right.  And

5    really I want to thank everyone because -- and I'll say a

6    little bit more about it, but it really has been -- you

7    know, the word that was used repeatedly was process, and I

8    think that Section 1114 is a particular -- if nothing else,

9    it's a process.  And that process, whether it needed to be

10   or not, is an issue that has been resolved without my having

11   to decide it.  But it's clear that the parties engaged in a

12   very extensive process, and that is what brought us to

13   today.

14          And I don't like people to have to sit and wonder

15   if what I'm going to rule as I read -- this is a somewhat

16   lengthier ruling than I normally would make, but I think

17   it's appropriate here.  But I am going to approve the

18   Settlement.  I think it is an outstanding result and is

19   worthy of the Court's approval.

20          And the Settlement before me, if approved, will

21   result in the resolution of the Debtors' efforts to

22   terminate the retired employee benefits pursuant to

23   Bankruptcy Code, Section 1114, and by virtue of a Settlement

24   of the outstanding issues.  And the Settlement is clearly

25   the result of lengthy, arms-length, strenuous negotiations

1  between Debtors, along with the Unsecured Creditors

2  Committee and the Bondholders on the one hand and the

3  Retirees on the other.

4          And both sides were ably represented.  And I've

5  had the pleasure of the Debtors and the Committee and the

6  Bondholders' representation in the past, but clearly,

7  Mr. Berger and his firm have really, I think, been just

8  outstanding in this case and the Court very much appreciates

9  their expertise and their professionalism and their

10  experience.  And it's been extremely helpful for purposes of

11  the Committee they represented.

12          The risks of litigation here are real and

13  substantial and the Settlement not only removes those risks

14  but provides other significant benefits to Retirees,

15  including the whole allocation process and the continuing

16  efforts of the Committee to make certain that the Retirees

17  are dealt with fairly and equitably in the future.

18          As I said before, all of the parties have been --

19  have to be highly commended.  The Debtors and their

20  Creditors could have persisted in their efforts to terminate

21  all benefits to Retirees, which would have resulted in

22  tremendous hardship to those Retirees and their spouses.

23          The Nortel Debtors, while in business, provided

24  important benefits to Retirees and these welfare benefits

25  included a medical plan, life insurance, and long-term care.

1    Corporate America used to treat employees and Retirees like

2    family and Nortel was no exception.  And to a large extent,

3    unfortunately, times have changed and bankruptcy in

4    particular has a way of changing such relationships.  And

5    here there was a very real potential that the Retirees would

6    have lost their welfare protections after years of service

7    to their employer and in their delicate advanced years.  And

8    the Settlement prevents that from happening.  The Debtors

9    took the position that the benefit plans allowed them to

10   terminate those plans unilaterally, and that was indeed a

11   stark possibility facing the Retirees.

12           The Court observes that the Debtors provided the

13   Retiree Committee with documents and all of the information

14   they requested and which was necessary for the Retiree

15   Committee to determine the rights of Retirees and to

16   negotiate for the Settlement.  The Debtors sought and the

17   Court ordered a mediation to take place, and it did and

18   advanced the Settlement discussions.  The Court acknowledges

19   the outstanding efforts of the mediator, Richard Levin of

20   Cravath, Swaine & Moore, and I thank Mr. Levin, who is among

21   the most outstanding practitioners in the field of

22   bankruptcy.

23           This is a Settlement at this point and not a

24   Motion to Terminate Benefits.  But in an abundance of

25   caution, because the Settlement terminates Retiree benefits,

1    the Court turns to Section 1114(f) of the Bankruptcy Code,

2    which contains five factors necessary for termination of

3    Retiree benefits, each of which the Debtors have amply

4    satisfied.  And that provision of the Code states that

5    "subsequent to filing a petition and prior to filing an

6    application seeking modification of the Retiree benefits,

7    the Trustee shall make a proposal to the authorized

8    representative of the Retirees" -- you're the Retiree

9    Committee -- "based on the most complete and reliable

10   information available at the time of such proposal, which

11   provides for those necessary modifications in the Retiree

12   benefits that are necessary to permit the reorganization of

13   the Debtor and assure that all Creditors, the Debtor, and

14   all of the affected parties are treated fairly and

15   equitably."  And that ends my quotation from the Code.

16            As I said, Debtors have satisfied the five

17   factors in Section 1114(f).  They made a proposal to the

18   authorized representatives of the Retirees based on the most

19   complete and reliable information available.  The Settlement

20   enables Debtors' reorganization, and here, it is a

21   liquidation -- it's true -- that our Court and others have

22   held that termination of benefits pursuant to Section 1114

23   also applies in a liquidation of Chapter 11 Debtors.  And we

24   have such cases as the Fruehauf case and LTV Steel, which

25   support those -- that legal point.

1          The Retirees are being treated fairly and

2    equitably in comparison to other Creditors.  The Court notes

3    that while the Retirees have continued to receive benefits

4    and will now continue to receive benefits, Unsecured

5    Creditors have not since the inception of the case.  Since

6    July of 2010 when the Debtors withdrew their Motion to

7    Terminate the Plans, they paid out approximately $28 million

8    in benefits to Retirees, a very substantial sum of money.

9          The fourth factor, the Debtors have provided

10   Retirees with all relevant information and then some, and

11   beyond the Debtors, the Retiree Committee has done so

12   through their communications, their town meetings, and those

13   really extraordinary efforts on behalf of their clients

14   here.

15          And lastly, the Debtors have negotiated with

16   Retirees in good faith.  Those negotiations have spanned

17   more than a year, and also the Debtors participated in

18   mediation, a mediation which was extremely helpful.  And the

19   parties have held, as I said, numerous formal negotiating

20   sessions.

21          But ultimately, this is a Settlement, and its

22   approval turns on the legal tests for a Court to approve a

23   Settlement.  First, the Court notes that the Settlement is

24   supported by the major constituencies in these cases: the

25   Debtors, the Creditors' Committee, the Bondholders, and of

1  course the Retiree Committee as authorized representative of

2  the Retirees.  Not a single Creditor, other than a handful

3  -- literally a handful of Retirees has objected, and of the

4  approximately 4,600 potential beneficiaries of the

5  Settlement, the Court has received only seven Objections,

6  one from a person who the Court is -- well, I will discuss

7  shortly -- is not an eligible Retiree.  While that is not in

8  and of itself a reason to approve the Settlement, it

9  certainly is an important consideration for the Court.

10          In order for Debtors to use estate property

11  necessary to settle the matter, such use must be supported

12  by a sound business purpose.  This analysis requires the

13  Court to consider the interests of, among others, Creditors.

14  And the citation for that is the Montgomery Ward case.

15          Debtors are also required to show that the

16  Settlement has been proposed in good faith, that adequate

17  notice has been provided, and that Debtors are receiving

18  fair and reasonable value in exchange.  Settlements are

19  favored in bankruptcy, in re Martin.  The Court must

20  determine whether the Settlement is fair, reasonable, and in

21  the best interest of the estate, in re Marvel Entertainment;

22  and there is a low threshold for making that determination.

23  It may be only within the lowest range of fairness.  And for

24  that citation I refer to in re Quorum Healthcare.

25          The 3rd Circuit directs Courts to consider four

1  factors when analyzing the Settlement: the probability of

2  success in the litigation, the likely difficulty in

3  collection, the complexity of the litigation and the expense

4  and inconvenience and delay, and the paramount interests of

5  Creditors.  And again, the citation for that is the in re

6  Martin case.

7        The Settlement satisfies all of these factors.

8  There are risks to Debtors of an adverse result in the

9  litigation on -- or on appeal.  The trial would be very

10  difficult and expensive and would delay the conclusions of

11  the bankruptcy, and Creditors benefit from Debtors not

12  having to invest time and distraction from bringing these

13  cases to a close.

14        Let me now turn to the Objections because with

15  the exception of Mr. Yoakum's Objection -- and we're not

16  resolving that today -- I'm going to sustain the Objections.

17  I'm sorry.  I am going to overrule the Objections.  Forgive

18  me.  I'm going to sustain the Objections of the Debtors and

19  the Retiree to the Objections is what I really needed to

20  say.

21        Mr. -- the first category I think is the

22  Objections based on hardship, and into that category we

23  include Mr. Elias, Mr. Cherry, and Mr. Collins, who object

24  -- who have objected on grounds indicating their

25  dissatisfaction with the Settlement as to the amount and

1    timing, the percentage is too small, and the Plan should be

2    extended to at least the end of the year.  That's their

3    Objections.  And the Court is satisfied that the Retiree

4    Committee has negotiated the best terms it could without

5    putting the Retirees at risk in litigation, and accordingly,

6    the Objections are overruled.  The Court is finding that the

7    terms of the Settlement are indeed fair and reasonable.

8              The second category of Objections is to the

9    distribution through the HRAs.  Mr. Cherry has objected to

10   the Settlement through the HRAs rather than by payment of

11   cash.  It turns out that Mr. Cherry has military veteran

12   health insurance.  The distribution through the HRAs

13   provides important tax benefits, thereby maximizing the

14   benefits of the Settlement.  Paying Mr. Cherry cash or any

15   Retiree cash would jeopardize the tax benefits of the

16   thousands of other Retirees, and accordingly, that Objection

17   is also overruled.

18             In addition, the Retiree Committee has made it

19   clear to the Court several significant matters which

20   Mr. Cherry raised his Objection are in error.  There is no

21   conversion of benefits.  Retiree Settlement benefits are

22   based on objective criteria to calculate each eligible

23   Retiree's actuarial share of the Settlement amount because

24   -- and this is important -- the Retiree benefits are being

25   terminated.  The Settlement creates a new vehicle for

1  Retirees to benefit.

2          Also, the managers of the VEBA Trust are subject

3  to fiduciary duties.  They cannot -- as Mr. Cherry expressed

4  his concern -- claim HRA funds as their own, and Retirees'

5  eligible survivors will continue to receive benefits from

6  the HRA after a Retiree's death.

7          The next category of Objections is to

8  ineligibility because of retirement from another company.

9  And as I've indicated, Mr. Yoakum, who we are carving out

10 for present purposes -- but Mr. Hawkins and Mr. Reva object

11 because they have been deemed ineligible to participate in

12 the Settlement because they accepted employment with another

13 company after the petition date rather than retiring

14 directly from Nortel.  Nortel's Plans -- the Plans which are

15 being terminated -- limit benefits to those who retire from

16 Nortel.  The Objectors did not, and therefore, their

17 Objections are overruled.

18          The last category is Mr. Horne, who's in a

19 category unto himself as usual.  And Mr. Horne also objects

20 to his ineligibility because he voluntarily elected to leave

21 the healthcare plan in November 2009.  Here, eligibility was

22 determined as of January 31, 2013 -- 2012, I'm sorry.

23 Forgive me.  Mr. Horne --

24          MR. BERGER:  '13.

25          THE COURT:  -- left the Plan --

1          MR. HORNE:  It is '13.

2          THE COURT:  It is '13?

3          MR. HORNE:  Yes.

4          THE COURT:  That's right.  It is '13.

5          MR. HORNE:  Yes.

6          THE COURT:  Oh, my goodness.  It's been a fast

7   year already.

8          Mr. Horne left the Plan even before the initial

9   Motion to Terminate back in 2010.  Mr. Horne obtained

10  alternative insurance.  His benefits are not being

11  terminated because he terminated them himself.  He therefore

12  can't be permitted to participate in the Settlement with

13  those whose benefits are in fact being terminated.  And

14  therefore, the Objections, with the exception of

15  Mr. Yoakum's Objection, are overruled.

16          In conclusion, the Court approves the Settlement

17  as fair, reasonable, and in the estate's best interest.  The

18  releases to the Debtor are a part of the Order, which the

19  Court will enter.  And the underlying claims of the

20  individuals who are benefiting from the Settlement -- or I

21  should say -- yes, the Retirees represented by the Retiree

22  Committee are being overruled at this time.

23          And the Court will be pleased to sign the Order

24  in the form submitted.

25          MS. SCHWEITZER:  I just wanted to make sure

1  Mr. Berger didn't want any clarity on the record regarding

2  Mr. Yoakum -- in the Order itself regarding Mr. Yoakum's --

3              THE COURT:  Oh.

4              MS. SCHWEITZER:  -- claim.

5              MR. BERGER:  Given, Your Honor --

6              THE COURT:  I think the record is clear and I

7  will so order that portion of the record as sort of

8  modifying the Order that I'm signing today.

9              MS. SCHWEITZER:  Right.

10             MR. BERGER:  Thank you, Judge.  And with that, I

11 don't need to modify the record.  I'm curious if I can

12 address Mr. Yoakum --

13             THE COURT:  Please.

14             MR. BERGER:  -- for a moment.

15             THE COURT:  We should have some timing involved

16 here?

17             MR. BERGER:  Yes.  Yes, that's what I'm getting

18 to.

19             THE COURT:  I thought so.

20             MR. BERGER:  Yes, Judge.  I know that there is a

21 next hearing in this case on April 16th, and I'm curious

22 whether or not Mr. Yoakum can send us the documents he

23 referenced today, tomorrow, or the next day so that we could

24 have some time to turn around and speak to him, and if we

25 need to, come back on April 16th.

1          THE COURT:  I think that makes sense given the

2    timing of the effective date and the like.

3          MR. BERGER:  That's right, Judge.

4          THE COURT:  Mr. Yoakum, is that something that

5    you can do?

6          MR. YOAKUM:  Yes, sir.  As soon as someone

7    contacts me, I will reply.

8          MR. BERGER:  We'll contact him this afternoon.

9          THE COURT:  All right.  Very well.  Thank you,

10   Mr. Berger.

11         MS. SCHWEITZER:  Thank you, Your Honor.

12         THE COURT:  Yes, Ms. Schweitzer?

13         MS. SCHWEITZER:  I didn't mean to steal your

14   thunder.  I do have the Order.  I just wanted to make sure

15   Mr. Berger --

16         THE COURT:  Absolutely.

17         MS. SCHWEITZER:  -- was fine before I hand it up.

18         THE COURT:  I don't have much --

19         MS. SCHWEITZER:  So --

20         THE COURT:  I don't have much thunder anyway so

21   it's not a problem.  Thank you.  Thank you, Ms. Schweitzer.

22         MS. SCHWEITZER:  Thank you, Your Honor.

23         THE COURT:  I -- my general judicial philosophy

24   is Judges, like children, should be seen but rarely heard.

25         MS. SCHWEITZER:  Well, I'm -- I know there's been

1  a lot of thanks going around, but I think that we all would

2  like to take another opportunity to thank you for helping us

3  through the entire process.  I think it has been a long time

4  behind the scenes but also we -- it's been very helpful to

5  have access to the Court at all sorts of times on long and

6  short notice and your patience in -- on all sides to help us

7  get it through we do appreciate.

8          THE COURT:  Believe me, it's been a pleasure for

9  me.  And I very much appreciate the opportunity to have been

10  at least somewhat of a participant in the process.

11          MR. BERGER:  Thank you, Judge.

12          THE COURT:  Mr. Berger, I really appreciate your

13  efforts very much and I will be available should, you know,

14  you need me for issues that may arise unexpectedly or

15  otherwise.

16          MR. BERGER:  Thank you, Judge, very much.  It's

17  been a pleasure appearing before you.

18          THE COURT:  Thank you, sir.  Thank you.  I signed

19  the Order.  We're going to get it on the docket quickly.

20  And thank you all.  We'll stand in recess.  And

21  congratulations to everyone.

22          MS. SCHWEITZER:  Thank you, Your Honor.

23          MS. BECKERMAN:  Thank you.

24          THE COURT:  Thank you.  Good day to you.

25          MR. BERGER:  Thank you, Your Honor.

122

1      (Whereupon at 1:03 p.m., the hearing was adjourned.)

2

3                          CERTIFICATION

4          I   certify   that   the   foregoing   is   a   correct

5   transcript   from   the   electronic   sound   recording   of   the

6   proceedings in the above-entitled matter.

7
8   _____          3 April 2013
9   Tammy Kelly, Transcriber                      Date
10  Diaz Data Services, LLC

| Word | Page:Line |
|------|-----------|

**a.m**(4) 1:17 5:1 59:15 59:15

**ability**(8) 10:5 13:19 45:1 64:15 91:20 101:1 101:13 106:23

**able**(18) 6:6 8:17 9:9 15:18 17:5 23:25 25:24 33:16 42:2 44:4 44:23 51:1 54:3 60:18 61:24 74:9 91:12 103:8

**ably**(2) 53:22 110:4

**about**(50) 7:24 7:24 14:20 15:24 23:22 25:15 26:14 30:20 34:3 34:9 36:8 41:12 43:11 44:17 45:8 55:22 54:24 58:10 61:12 67:4 67:4 73:24 77:9 77:23 82:22 83:12 83:14 84:3 84:9 85:8 85:12 86:1 86:6 86:18 86:19 86:23 87:4 87:6 87:11 89:25 93:6 93:13 94:2 96:2 97:13 98:18 103:2 107:23 107:25 109:6

**above-entitled**(1) 122:6

**absence**(2) 64:3 64:5

**absent**(4) 15:9 17:22 36:10 46:23

**absolutely**(4) 6:1 38:6 107:2 120:16

**abundance**(1) 111:24

**acceptable**(1) 78:21

**accepted**(1) 117:12

**accepts**(1) 13:4

**access**(1) 121:5

**accessed**(1) 56:9

**accompanied**(1) 47:11

**according**(1) 93:18

**accordingly**(2) 116:5 116:16

**account**(8) 6:22 22:20 23:10 23:19 24:13 25:8 47:1 61:23

**accounts**(5) 22:2 46:17 47:24 48:4 56:8

**accruing**(1) 28:1

**achieve**(3) 33:15 45:8 67:7

**achieved**(1) 40:9

**acknowledge**(2) 35:20 36:25

**acknowledges**(1) 111:18

**acquitted**(1) 59:5

**across**(3) 34:22 40:3 40:6

**act**(2) 39:14 65:12

**acted**(1) 59:1

**action**(3) 12:18 12:21 70:5

**active**(9) 14:16 19:14 26:1 28:25 29:11 62:22 64:4 72:22 89:8

**actively**(6) 14:3 28:19 32:19 53:8 66:7 92:9

**activity**(1) 97:14

**actual**(7) 16:19 50:11 52:14 54:1 54:2 90:17 94:9

**actuality**(1) 54:25

**actually**(13) 14:21 31:10 34:22 44:9 50:4 55:7 76:16 79:13 79:15 82:25 90:25 94:1 101:13

**actuarial**(2) 55:2 116:23

**add**(2) 33:5 37:24

**addition**(9) 26:8 34:25 43:1 43:2 47:2 47:19 60:4 102:14 116:18

**additional**(6) 6:23 10:18 54:22 64:16 75:8 75:15

**address**(15) 22:18 26:6 30:5 48:7 74:20 80:22 89:22 93:24 94:7 94:19 96:13 103:22 105:10 106:23 119:12

**addressed**(2) 47:12 64:17

**addresses**(2) 23:18 31:19

**adequate**(1) 114:16

**adjourned**(1) 122:1

**adjust**(1) 56:17

**adjustments**(1) 41:21

**administered**(2) 1:8 11:9

**administering**(3) 11:7 12:6 62:21

**administrators**(1) 3:1

**admission**(2) 32:9 57:8

**admit**(1) 57:11

**admitted**(4) 32:6 32:14 32:15 57:6

**admittedly**(1) 35:4

**advance**(4) 21:2 33:8 44:25 56:2

**advanced**(3) 19:8 111:7 111:18

**advantage**(3) 15:4 15:16 16:13

**advantages**(2) 22:14

**adversary**(2) 58:23 100:17

**adverse**(1) 115:8

**advisors**(3) 35:22 45:10 59:12

**advocate**(1) 39:14

**advocates**(2) 8:19 9:22

**aetna**(1) 41:15 43:18 43:19 44:16 45:3 45:4 45:14 47:3 47:4 47:8

**affected**(4) 54:19 56:13 68:2 112:14

**affects**(1) 55:2

**affidavit**(1) 90:13

**affidavits**(1) 90:12

**afford**(3) 70:15 79:8 79:14

**after**(15) 9:7 37:18 49:14 51:1 51:20 53:10 54:15 55:13 55:18 56:21 72:23 79:23 111:6 117:6 117:13

**afternoon**(1) 120:8

**afterwards**(1) 26:10

**again**(35) 12:1 17:23 22:9 22:21 24:2 24:23 24:6 24:6 27:17 29:22 30:5 30:15 30:22 30:24 32:24 34:2 36:8 45:3 46:19 50:25 58:9 59:13 64:9 72:1 73:19 79:3 79:25 83:6 96:24 96:25 97:4 100:25 105:21 106:11 115:5

**against**(17) 13:19 22:3 27:23 59:14 76:9 76:22 77:13 77:17 80:1 81:14 91:21 92:18 94:11 94:13 94:14 106:5 107:1

**age**(8) 42:6 46:3 48:17 53:10 69:25 72:24 85:14 85:16

**agenda**(2) 82:23 98:21

**agent**(1) 47:13

**ago**(7) 23:24 62:11 62:11 81:23 94:4 96:21 98:8

**agree**(5) 49:22 53:24 56:24 75:19 102:24

**agreed**(2) 37:17 49:13

**agreeing**(1) 102:14

**agreement**(45) 9:12 10:10 11:5 12:2 17:7 17:10 33:20 34:8 35:3 35:6 35:8 35:12 37:19 38:25 40:10 40:14 41:3 43:8 43:9 44:1 48:9 49:13 49:18 50:1 50:13 50:16 53:15 55:3 55:6 55:14 55:16 55:20 56:24 57:4 66:17 70:20 76:5 78:9 87:17 89:10 90:5 99:9 99:24 100:5 104:16

**ahead**(2) 76:2 76:3

**air**(1) 19:21

**akin**(3) 2:12 4:2 58:7

**all**(110) 5:4 6:1 6:2 11:14 11:22 11:22 12:21 17:23 18:21 19:23 20:16 24:11 26:2 32:8 32:13 34:19 35:1 37:23 38:3 38:19 39:15 43:1 43:2 48:2 51:6 51:19 52:2 54:7 56:23 57:2 57:7 58:1 58:4 60:15 60:23 61:21 61:23 62:17 63:1 63:3 63:24 65:6 65:16 66:16 66:20 66:22 66:25 67:1 67:24 68:9 68:16 68:18 68:19 69:5 70:6 70:21 71:7 72:7 73:15 74:5 74:13 75:4 75:13 75:20 78:20 78:23 79:23 80:1 80:3 80:20 81:11 81:16 81:19 82:3 82:21 83:2 85:4 86:12 87:19 89:19 89:25 90:3 93:2 93:24 94:18 95:12 95:23 96:16 96:25 97:2 97:21 98:14 99:4 102:8 104:14 104:17 107:2 107:18 110:18 110:21 111:13 112:13 112:14 113:10 115:7 120:9 121:1 121:5 121:6 121:20

**allen**(1) 3:39

**allocate**(1) 31:1

**allocated**(3) 30:6 42:14 48:23

**allocating**(1) 10:23

**allocation**(11) 19:22 41:23 41:25 42:3 42:5 48:10 48:22 76:6 77:3 90:10 110:15

**allowed**(6) 26:24 70:8 75:20 75:21 97:15 111:9

**alluded**(1) 43:23

**almost**(1) 19:16

**alone**(1) 81:14

**along**(6) 12:7 31:3 34:8 65:19 94:9 110:1

**alpharetta**(1) 44:12

**already**(3) 14:11 109:1 118:7

**also**(56) 11:2 11:13 13:10 15:25 16:8 18:1 19:15 19:24 26:11 26:23 29:12 30:12 32:17 34:5 34:25 35:19 36:4 38:11 38:15 38:18 39:20 40:18 41:16 41:23 42:1 42:7 42:25 43:13 43:18 44:23 46:21 47:5 48:22 55:4 59:8 59:10 60:24 62:25 63:25 64:21 67:20 68:7 71:25 76:12 76:23 90:18 102:12 106:16 106:23 112:21 113:17 114:15 116:17 117:2 117:19 121:4

**alter**(1) 95:7

**alternative**(9) 10:6 91:16 91:22 92:21 93:8 93:18 93:20 94:22 118:10

**alternatively**(1) 47:1

**although**(3) 45:22 56:1 108:13

**alvarez**(1) 35:21

**always**(5) 5:23 32:25 38:4 51:4 104:3

**amanda**(1) 2:6

**ameliorate**(1) 51:8

**amended**(2) 43:5 55:10

**amended**(3) 3:22 3:22 111:1

**among**(3) 10:24 111:20 114:13

**amount**(11) 28:7 40:20 41:20 46:16 48:17 48:20 48:23 73:9 107:12 115:25 116:23

**amounts**(1) 12:17

**ample**(2) 34:12 70:1

**amply**(1) 112:3

**amtrak**(1) 5:20

**analysis**(1) 114:12

**analyzed**(1) 38:10

**analyzing**(1) 115:1

**and**(301) 5:4 5:4 5:12 5:24 6:6 6:11 6:18 7:4 7:11 7:12 7:17 7:20 7:22 7:24 8:1 8:5 8:7 8:8 8:9 8:9 8:14 8:17 8:18 8:20 8:22 8:22 9:7 9:10 9:13 9:16 9:18 9:19 9:21 9:22 9:24 10:1 10:2 10:5 10:6 10:21 10:23 10:24 11:3 11:5 11:10 11:17 11:21 11:22 11:22 11:25 12:2 12:4 12:5 12:7 12:11 12:12 12:15 12:16 12:21 12:21 13:2 13:6 13:7 13:8 13:14 13:16 13:17 13:24 13:25 14:4 14:20 14:21 14:23 14:25 15:2 15:4 15:5 15:9 15:11 15:15 15:17 15:20 15:23 16:2 16:3 16:6 16:8 16:8 16:10 16:12 16:16 16:19 16:21 16:25 16:25 17:1 17:3 17:4 17:6 17:9 17:12 17:17 17:22 17:23 18:2 18:3 18:5 18:9 18:14 18:14 18:19 18:20 18:21 18:22 19:2 19:6 19:11 19:15 19:16 19:20 19:21 19:23 19:24 20:1 20:5 20:9 21:06 20:19 20:19 20:25 21:1 21:5 21:8 21:10 21:14 21:22 22:3 22:9 22:13 22:21 22:24 23:5 23:8 23:10 23:14 23:17 23:20 23:23 23:24 24:7 24:13 24:14 24:18 24:22 24:23 24:23 25:1 25:3 25:11 25:14 25:20 25:20 25:21 26:1 26:1 26:2 26:2 26:3 26:4 26:11 26:19 26:21 26:22 26:24 27:3 27:10 27:10 27:13 27:14 27:17 27:18 27:20 27:21 27:22 28:5 28:8 28:12 28:13 28:21 28:22 28:25 29:1 29:7 29:15 29:18 30:14 30:15 30:18 30:21 30:24 31:5 31:8 31:18 32:1 32:2 32:3 32:5 32:18 32:19 33:15 33:17 33:19 33:19 33:21 33:22 33:23 34:2 34:6 34:6 34:7 34:9 34:10 34:11 34:13 34:14 34:15 34:16 34:18 34:19 34:20 34:22 34:23 34:24 34:25 35:3 35:11 35:12 35:14 35:15 35:17 35:21 35:25 36:1 36:2 36:11 36:16 36:16 36:24 36:24 37:9 37:11 37:14 37:15 37:22 38:9 38:10 38:11 38:18 38:20 38:22 38:23 38:24 39:4 39:8 39:9 39:10 39:14 39:15 39:20 39:21 39:24 40:4 40:5 40:7 40:8 40:10 40:13 40:18 40:19 40:20 41:4 41:5 41:13 41:14 41:22 42:1 42:3 42:18 42:23 42:24 43:5 43:9 43:10 43:11 43:16 43:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**and**(301) 43:19 43:19 43:21 43:24 43:24
44:2 44:3 44:6 44:7 44:9 44:9 44:11 44:12
44:13 44:16 44:17 44:18 44:18 44:20
44:24 45:1 45:4 45:11 45:14 45:15 45:16
45:24 45:25 46:13 46:20 46:21 46:25 47:3
47:4 47:8 47:9 47:10 47:10 47:18 47:23
48:1 48:1 48:2 48:7 48:12 48:13 48:13
48:18 49:2 49:4 49:6 49:8 49:22 50:4
50:5 50:6 50:7 50:10 50:20 50:23 50:24
51:2 51:3 51:11 51:18 51:21 51:22 52:3
52:5 52:11 52:15 52:22 52:25 53:3 53:3
53:12 53:13 53:20 53:22 53:24 54:2 54:10
54:10 54:16 54:18 55:12 55:12 55:17
55:19 55:22 55:24 55:25 55:25 56:4 56:5
56:8 56:11 56:15 56:20 56:22 56:24 57:1
57:2 57:3 57:5 57:16 57:19 57:20 58:9
58:13 58:17 58:17 58:18 58:19 58:20
58:20 58:24 58:24 59:3 59:4 59:5 59:7
59:8 59:12 59:17 59:20 60:2 60:3 60:3
60:7 60:9 60:11 60:12 60:13 60:14 60:14
60:17 60:21 60:21 60:23 60:25 61:2 61:2
61:4 61:7 61:8 61:8 61:11 61:13 61:16
61:18 61:19 61:22 62:1 62:1 62:1 62:1
62:14 62:14 62:16 62:22 62:23 62:23 63:4
63:6 63:7 63:11 63:12 63:12 63:13 63:15
63:16 63:17 63:18 63:21 63:22 63:23
63:24 64:8 64:10 64:10 64:11 64:13 64:16
64:16 64:17 64:23 65:4 65:5 65:5 65:5
65:15 65:19 65:21 65:25 66:1 66:4 66:8
66:13 66:14 66:20 66:21 66:22 66:23
66:25 67:3 67:5 67:6 67:14 67:18 67:21
67:22 68:5 68:6 68:17 68:19 69:6 69:9
69:11 69:13 69:14 69:14 69:22 69:23
69:25 70:1 70:3 70:3 70:7 70:10 70:12
70:13 70:15 71:4 71:8 71:12 71:14 71:14
71:17 71:18 71:22 71:23 72:8 72:9 72:10
72:11 72:12 72:13 72:16 72:17 72:19
72:21 73:2 73:10 73:13 73:13 73:21 73:21
74:1 74:1 74:2 74:4 74:6 75:3 75:21
75:21 75:23 76:12 76:20 76:20 76:23 77:7
77:16 77:21 77:22 78:7 78:4 78:6 78:8 78:10
78:13 78:15 78:16 79:2 79:6 79:7 79:9
79:11 79:12 79:14 79:15 79:17 79:18
79:19 79:20 79:21 79:22 79:23 79:23
79:25 79:25 80:1

**and**(293) 80:12 80:14 80:16 80:17 80:18
80:21 80:22 81:2 81:3 81:4 81:12 82:5
82:10 82:11 82:11 82:14 82:16 82:19
82:25 83:1 83:4 83:5 83:6 83:8 83:10
83:12 83:19 83:21 84:3 84:5 84:7 84:9
84:10 84:12 84:13 84:13 84:15 84:16
84:24 85:2 85:5 85:6 85:7 85:10 85:11
85:20 86:5 86:7 86:10 86:15 86:16 86:17
86:19 87:1 87:7 87:8 87:9 87:14
87:21 87:21 88:6 88:11 88:11 88:13 88:14
88:17 88:19 88:20 88:20 88:23 89:1 89:6
89:7 89:12 89:15 89:16 89:16 89:25 90:2
90:4 90:11 90:13 90:15 90:15 90:19 91:9
91:12 91:13 92:3 92:4 92:21 92:24 92:25
93:10 93:11 93:14 94:3 94:12 95:15 96:5
96:7 96:10 96:23 97:11 98:6 98:11 98:11
98:12 98:13 98:17 98:20 98:20 99:3 99:10
99:10 99:11 99:12 99:16 99:16 99:22
99:24 99:25 100:3 100:5 100:8 100:11
100:12 100:13 100:16 100:18 100:19
100:24 100:24 101:3 101:7 101:9 101:10
101:16 101:21 102:4 102:5 102:13 102:17
102:20 102:21 102:24 103:7 103:9 103:11
103:12 103:23 104:1 104:5 104:7 104:15
104:23 105:12 105:14 105:15 105:15
105:17 105:24 106:9 106:9 106:12 106:22
106:25 107:8 107:8 107:11 107:17 107:19
107:20 107:21 108:20 109:4 109:5 109:7
109:9 109:12 109:14 109:14 109:18 109:20
109:23 109:24 110:2 110:2 110:4 110:4
110:5 110:5 110:7 110:8 110:9 110:9
110:10 110:12 110:13 110:15 110:17
110:19 110:22 110:24 110:25 111:1 111:2
111:2 111:3 111:4 111:7 111:7 111:10
111:13 111:14 111:15 111:16 111:17 111:17
111:20 111:23 112:4 112:5 112:9 112:13
112:13 112:14 112:15 112:19 112:20
112:21 112:23 112:24 113:1 113:4 113:10
113:10 113:12 113:15 113:17 113:18
113:21 113:25 114:3 114:8 114:14 114:17
114:18 114:20 114:22 114:23 115:3 115:4
115:4 115:4 115:5 115:10 115:10 115:11
115:12 115:15 115:18 115:22 115:23
115:25 116:1 116:3 116:6 116:7 116:16
116:24 117:4 117:9 117:10 117:16 117:19
118:13 118:17 118:19 118:23 119:6 119:10
119:21 119:24 119:24 122:1 121:5 121:6
121:9 121:13 121:20 121:20

**andren**(1) 3:15
**ann**(1) 1:26
**annual**(2) 42:18 85:22
**another**(23) 5:25 14:16 19:25 24:11 24:11
24:19 49:4 54:8 69:3 70:3 73:1 75:18
79:25 86:22 87:2 88:23 96:14 96:19 100:9
101:16 117:8 117:12 121:2

**answer**(3) 18:10 44:18 49:14
**answered**(5) 34:13 44:17 45:2 47:3 50:3
**answering**(1) 64:10
**answers**(2) 14:5 47:10
**any**(43) 14:25 15:1 21:10 21:10 23:15
25:14 28:1 29:13 30:8 30:11 32:9 37:12
37:12 39:21 46:4 50:15 51:24 52:4 57:8
59:24 68:14 69:19 74:11 77:1 77:5 79:22
80:10 80:18 86:20 87:10 87:14 88:16
88:17 89:13 90:2 92:5 92:15 102:2 104:24
105:10 107:19 116:14 119:1

**anybody**(2) 62:16 94:23
**anyone**(11) 32:6 32:8 57:8 68:3 68:12
68:12 68:17 78:23 80:22 81:17 106:20

**anyone's**(2) 21:2 53:4
**anything**(5) 80:18 87:13 92:25 97:11 102:2
**anyway**(1) 120:20
**apologize**(5) 21:1 28:13 53:4 69:15 108:15
**apparent**(1) 42:16
**appeal**(1) 115:9
**appear**(1) 75:9

**appearances**(2) 3:12 3:43
**appeared**(1) 33:25
**appearing**(1) 121:17
**applicable**(2) 28:13 30:24
**application**(2) 70:5 112:6
**applies**(1) 112:23
**appointed**(6) 7:22 26:4 36:7 96:15 96:21
101:7

**appointment**(2) 8:15 40:24
**appreciate**(11) 36:15 36:18 36:24 68:6
73:21 83:21 104:10 107:14 121:7 121:9
121:12

**appreciates**(1) 110:8
**appropriate**(5) 17:12 94:24 97:3 97:5
109:17

**approval**(8) 6:7 6:13 38:25 50:15 66:16
76:8 109:19 113:22

**approve**(8) 54:16 65:21 66:9 72:20 105:13
109:17 113:22 114:8

**approved**(12) 15:9 34:14 41:9 41:24 42:7
45:19 46:10 48:11 57:4 63:19 106:24
109:20

**approves**(2) 55:15 118:16
**approximate**(1) 10:17
**approximately**(7) 6:20 34:21 40:2 41:1
56:22 113:7 114:4

**april**(7) 1:16 5:1 32:4 61:13 119:21
119:25 122:8

**arbitrary**(1) 89:14
**are**(122) 5:6 5:8 7:14 8:2 9:18 10:9 11:9
11:14 11:23 12:11 12:15 13:3 14:24 16:9
16:20 19:5 19:8 19:14 20:5 20:10 22:5
22:12 22:13 23:25 26:1 26:4 27:4 27:18
27:20 28:7 28:8 28:25 30:12 30:13 30:19
31:6 32:13 33:6 35:4 35:7 36:2 37:10
39:20 42:14 49:5 50:11 50:21 51:14 53:5
53:14 53:16 55:21 65:1 65:23 68:19
69:12 69:14 71:10 74:3 75:19 75:20 76:15
77:5 81:22 84:12 84:15 85:14 85:14 87:5
89:8 89:8 89:22 90:12 90:19 91:23 92:6
92:11 93:6 93:16 98:21 99:8 99:16 99:17
99:22 99:24 100:1 101:11 102:20 103:2
103:3 103:15 103:16 104:1 104:24 106:6
106:12 106:17 110:12 110:17 112:2
112:14 113:1 114:15 114:17 114:18 115:8
116:6 116:7 116:20 116:21 116:24 117:2
117:9 117:14 117:17 118:10 118:13 118:15
118:18 118:20 118:22

**areas**(2) 44:13 44:14
**aren't**(1) 18:25
**aren't2**(2) 91:19 91:21
**argued**(2) 23:11 30:25
**arguing**(1) 61:6
**argument**(4) 83:22 87:18 89:23 92:2
**arguments**(1) 8:9
**arise**(2) 63:1 121:14
**arm's**(1) 9:16
**arm-length**(2) 61:21 109:25
**around**(6) 23:1 50:4 61:13 91:3 119:24
121:1

**arranged**(1) 44:21
**arrangement**(2) 48:4 81:14
**arrangements**(3) 10:6 33:23 50:24
**arsht**(1) 1:24
**arun**(1) 2:14
**ask**(8) 32:8 40:20 47:10 66:8 71:8 71:9
75:14 96:8

**asked**(5) 8:14 24:7 24:23 45:5 71:16
**asking**(2) 74:5 74:6
**assertions**(1) 69:15
**asserts**(1) 30:2

**assets**(1) 27:9
**assist**(1) 61:17
**assistance**(7) 9:9 35:20 35:25 36:5 37:18
37:22 62:1

**associated**(1) 16:4
**assure**(2) 86:25 112:13
**ate**(1) 61:2
**atlanta**(1) 44:11
**attach**(1) 32:1
**attached**(4) 29:22 30:16 70:8 76:20
**attain**(1) 72:24
**attained**(1) 46:3
**attempt**(1) 104:9
**attended**(2) 40:12 44:19
**attention**(4) 18:20 19:11 25:21 26:3
**attest**(1) 59:2
**attorney**(7) 82:17 82:19 83:13 84:6 85:9
87:10 104:12

**attorneys**(6) 74:6 83:10 84:16 84:25 85:5
96:21

**audible**(3) 32:11 57:10 68:15
**audio**(1) 59:15
**authority**(1) 10:23 52:3
**authorizations**(1) 65:16
**authorized**(4) 26:25 112:7 112:18 114:1
**authorizes**(1) 55:11
**available**(9) 8:8 15:19 21:21 46:17 48:6
65:2 112:10 112:19 121:13

**avaya**(2) 27:10 70:4
**aware**(5) 6:13 7:8 17:21 18:13 85:13
**away**(4) 11:18 19:18 54:10 75:1
**back**(19) 11:19 27:17 47:12 60:21 62:9
75:1 75:17 75:22 81:7 83:14 83:20 98:8
105:3 105:6 105:6 107:21 107:24 118:9
119:25

**background**(2) 100:25 101:21
**balancing**(3) 61:13 62:18 65:12 66:3
**ballot**(9) 34:8 34:15 42:8 42:21 44:2 46:9
46:21 47:11 48:14

**balloting**(1) 45:20
**ballots**(2) 42:7 46:11
**bank**(2) 3:22 3:22
**bankrupt**(2) 79:15 79:16 81:4 85:7
**bankruptcy**(21) 1:3 1:21 21:11 29:5 31:4
50:8 70:25 71:4 72:9 81:7 83:14 83:20
89:13 100:18 106:13 109:23 111:3 111:22
112:1 114:19 115:11

**barclays**(1) 3:26
**baseball**(1) 97:5
**based**(15) 24:6 30:17 48:21 50:17 51:6
52:16 69:5 91:13 93:19 101:2 102:5 112:9
112:18 115:22 116:22

**basically**(4) 22:5 31:6 79:5 81:1
**basis**(9) 10:25 11:25 20:14 20:19 52:18
59:23 73:24 76:13 101:10

**basketball**(1) 75:3
**bear**(1) 17:23
**became**(2) 42:16 86:7
**because**(53) 13:1 19:1 22:21 24:22 28:1
29:23 30:11 35:7 36:21 42:15 44:13 51:14
59:13 60:18 60:19 62:7 64:25 65:7 65:25
66:13 70:17 71:10 77:13 79:8 79:11 81:7
82:18 83:22 85:12 85:13 85:24 86:17 89:8
89:15 91:25 93:7 94:13 97:9 98:18 101:14
103:4 103:23 104:12 106:20 109:5 111:25
115:14 116:23 117:8 117:11 117:12 117:20
118:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **beckerman**(29) 2:13 32:18 35:15 58:5 58:6 58:7 58:16 59:16 60:17 64:8 64:19 64:25 65:4 65:9 65:14 65:25 66:10 94:1 95:15 95:18 95:20 95:22 98:1 102:10 102:11 102:19 103:7 109:1 121:23 | | **berger**(112) 2:41 9:19 22:4 25:21 26:6 30:5 32:17 32:24 32:25 33:3 33:3 35:25 36:7 36:21 36:24 37:6 37:9 38:4 38:7 39:3 41:11 45:18 47:17 49:1 49:9 51:10 52:13 54:12 54:15 57:7 57:13 57:15 57:19 57:25 58:2 58:9 61:8 64:9 67:12 71:9 71:20 72:5 72:16 73:16 74:15 74:17 74:19 74:21 74:23 74:24 74:25 75:3 75:4 75:7 75:14 75:24 76:3 77:11 77:17 78:6 78:8 78:13 78:19 80:5 80:6 80:21 84:6 86:21 87:14 87:24 88:2 88:6 88:10 88:14 89:21 94:21 95:1 95:3 95:5 95:10 95:11 102:19 104:23 105:22 106:23 107:3 107:4 107:5 107:15 107:16 108:3 108:8 108:9 108:11 108:19 108:24 110:7 117:24 119:1 119:5 119:10 119:14 119:17 119:20 120:3 120:8 120:10 120:15 121:11 121:12 121:16 121:25 | | **but**(162) 5:22 7:6 7:16 7:19 8:3 9:17 9:24 10:10 11:18 12:1 12:21 13:5 14:6 14:9 14:12 14:13 14:24 15:1 15:16 15:25 16:16 18:7 18:25 19:10 19:22 21:2 21:9 21:23 22:5 22:10 22:18 23:8 23:21 24:2 24:17 24:21 25:9 25:23 26:4 26:6 26:13 26:17 30:16 31:9 31:21 31:23 33:8 35:10 36:9 36:17 38:13 39:5 39:21 40:6 46:8 49:9 50:21 51:17 58:2 58:11 58:21 59:23 61:14 61:17 63:6 63:10 64:3 64:6 64:9 64:12 65:14 66:14 67:24 68:4 69:4 70:14 71:11 72:25 74:8 74:10 75:11 76:9 76:14 77:2 77:8 77:17 80:10 81:9 82:2 82:4 83:4 83:7 83:15 84:23 85:1 85:14 86:12 86:25 87:5 87:13 87:13 89:4 89:12 89:24 90:11 91:3 91:8 91:11 91:18 91:23 92:5 92:15 93:2 93:17 94:6 94:9 96:1 96:13 97:18 98:6 98:23 99:5 99:7 100:11 100:14 101:4 101:15 102:7 102:25 103:15 103:20 103:22 104:4 104:14 105:11 105:22 106:4 106:13 106:18 106:23 107:5 107:22 108:16 109:6 109:11 109:16 109:17 110:6 110:14 111:24 113:21 117:10 120:24 121:1 121:4 | | **cash**(21) 6:19 10:4 10:6 10:13 20:8 22:2 22:6 22:15 22:19 22:19 26:16 28:9 40:25 48:20 51:14 51:25 52:4 61:6 116:11 116:14 116:15 |
| **become**(1) 84:17 | | | | **buyer**(1) 27:8 | | **categories**(3) 50:14 103:17 105:18 |
| **becomes**(1) 9:16 | | **berger's**(1) 31:8 | | **buying**(1) 29:3 | | **category**(8) 50:17 53:2 115:21 115:22 116:8 117:7 117:18 117:19 |
| **been**(71) 6:5 7:23 9:16 9:16 9:22 10:21 13:25 14:7 14:13 15:11 16:3 16:18 17:21 18:2 19:15 19:21 20:13 20:21 25:10 26:6 26:19 28:2 29:4 29:5 31:20 35:9 37:15 44:5 50:5 58:12 58:14 58:22 59:8 60:18 61:14 61:15 64:4 66:17 66:19 72:12 74:5 74:9 75:2 82:18 83:10 84:21 91:11 94:3 97:9 99:25 100:10 100:19 100:25 104:14 106:1 109:6 109:10 110:7 110:10 110:18 114:16 114:17 117:11 118:6 120:25 121:3 121:4 121:8 121:9 121:17 | | **berger's**(1) 84:23 **berra**(1) 99:4 **berserk**(1) 96:23 **best**(9) 15:19 22:12 31:4 43:4 45:1 60:4 114:21 116:4 118:17 | | **calculate**(2) 48:23 116:22 **calculated**(2) 41:21 42:1 **calculation**(1) 55:2 **calendar**(2) 23:25 96:6 **california**(1) 44:11 **call**(2) 40:13 69:3 **called**(1) 85:6 **calls**(6) 26:7 43:11 43:24 50:4 65:16 84:7 | | **cause**(2) 16:1 50:21 **caused**(1) 81:7 **causes**(2) 12:18 12:21 **caution**(1) 111:25 **cede**(2) 32:17 58:2 **census**(4) 8:7 44:13 46:11 71:24 **center**(1) 22:25 **centre**(1) 2:35 |
| **befall**(1) 26:15 | | **bet**(1) 67:19 | | **came**(10) 41:18 44:16 44:18 46:21 83:12 84:5 84:8 94:2 95:6 98:11 | | **certain**(10) 12:4 13:22 16:1 32:1 52:21 54:21 68:4 89:25 100:19 110:16 |
| **before**(29) 1:20 6:6 6:12 14:14 21:6 27:18 33:25 35:10 47:7 47:9 52:10 53:11 54:21 57:21 57:23 66:9 68:13 69:2 81:23 84:8 93:4 101:25 105:12 107:24 109:20 110:18 118:8 120:17 121:17 | | **better**(5) 49:11 49:12 56:25 57:1 85:11 **between**(9) 49:3 52:22 64:5 85:21 88:16 89:11 89:16 99:22 110:1 | | | | **certainly**(43) 9:21 16:6 16:21 17:10 17:20 18:4 18:8 19:2 19:7 20:4 22:18 23:16 25:23 26:2 26:13 26:18 26:21 31:2 31:17 33:6 36:25 38:22 46:5 48:3 54:21 56:5 56:24 57:1 61:23 62:16 65:14 65:22 68:19 70:19 71:8 73:18 80:25 93:10 98:5 99:2 100:13 107:15 114:9 |
| **began**(1) 62:10 | | **beyond**(2) 92:25 113:11 **big**(2) 24:18 40:6 | | **can't**(6) 35:19 49:6 98:6 100:16 107:13 118:12 | | |
| **beginning**(1) 16:2 61:13 | | **bill**(1) 36:2 | | | | **certainty**(9) 8:22 10:1 17:1 33:12 33:13 33:17 33:17 33:19 91:15 |
| **begun**(2) 37:21 55:24 | | **billion**(1) 70:24 | | **canceled**(3) 85:4 86:9 86:10 | | |
| **behalf**(7) 5:10 9:20 58:7 68:7 68:18 105:22 113:13 | | **bit**(5) 58:11 67:12 86:1 86:6 109:6 **blush**(1) 64:9 **bondholder**(3) 2:26 35:18 66:15 | | **cancer**(2) 87:6 87:6 **cane**(1) 37:9 **cannot**(2) 70:15 117:3 **can't**(5) 71:18 85:19 85:21 85:24 86:23 | | **certificates**(3) 55:21 55:25 57:20 **certification**(4) 47:14 47:20 48:1 122:3 **certify**(1) 122:4 |
| **behind**(3) 8:7 70:13 121:4 | | **bondholders**(3) 110:2 110:6 113:25 **both**(8) 16:11 16:13 23:11 36:2 61:5 61:8 66:22 110:4 | | **capital**(3) 3:26 4:6 **capture**(1) 43:10 **cards**(1) 56:9 | | **chair**(1) 37:2 **challenging**(1) 35:10 **chances**(1) 85:3 |
| **being**(52) 8:19 9:16 10:20 11:14 13:3 17:4 20:5 20:14 20:15 21:7 21:24 23:11 23:17 26:12 28:8 28:25 30:3 31:6 31:10 35:6 35:8 42:3 46:23 48:1 62:4 62:9 69:11 69:15 69:18 69:19 70:18 71:16 71:24 73:25 78:1 85:3 89:8 89:9 91:1 92:6 93:1 99:16 99:17 99:18 100:1 100:5 113:1 116:24 117:15 118:10 118:13 118:22 | | **breast**(1) 87:6 **brickley**(1) 3:31 **bridging**(1) 14:17 **brief**(1) 66:14 **briefed**(1) 96:7 **briefly**(1) 107:3 **bring**(5) 17:17 33:12 33:17 56:6 92:14 **bringing**(3) 19:23 20:2 115:12 **brings**(1) 10:1 **broken**(1) 9:2 **brought**(2) 7:5 109:12 **bryant**(1) 2:15 **bucket**(1) 10:22 **build**(2) 40:4 40:6 | | **care**(7) 30:14 30:17 45:12 45:13 56:9 63:23 110:25 **carefully**(1) 95:8 **carolina**(1) 44:10 **carve-out**(2) 106:17 106:20 **carved**(2) 105:17 105:19 **carving**(1) 117:9 | | **change**(2) 28:24 94:6 **changed**(6) 23:8 25:4 55:4 93:1 105:19 111:3 **changing**(1) 111:4 **channeled**(1) 11:23 **chapman**(1) 3:2 **chapter**(3) 1:10 62:5 112:23 **chart**(1) 12:17 **chase**(1) 2:28 **check**(1) 104:24 |
| **belabor**(1) 49:17 **belief**(1) 72:12 **believe**(8) 27:9 50:13 52:25 54:3 56:25 68:18 104:24 121:8 | | **builds**(1) 12:2 **built**(1) 6:18 **bumps**(1) 38:13 **bunch**(1) 74:3 | | **case**(29) 1:7 8:11 17:8 19:19 19:20 27:12 28:11 43:6 44:1 50:8 58:10 64:4 71:12 81:3 84:3 87:15 89:13 89:25 90:15 90:19 91:10 100:24 103:9 110:8 112:24 113:5 114:14 115:6 119:21 | | **cherry**(14) 2:20 22:5 51:5 51:8 51:24 51:24 52:11 52:19 115:23 116:9 116:11 116:14 116:20 117:3 |
| **believes**(2) 40:9 52:8 **belnap**(1) 3:35 **beneficial**(1) 60:10 | | **bunches**(1) 99:17 **bunch**(1) 74:3 **burden**(1) 11:1 **business**(4) 50:18 69:25 110:23 114:12 **businesses**(1) 62:9 | | **cases**(15) 14:17 16:23 18:15 58:13 58:14 58:17 58:18 71:2 90:21 90:21 102:13 103:11 112:24 113:24 115:13 | | **cherry's**(1) 25:18 **children**(1) 120:24 **choice**(6) 15:10 15:18 69:17 89:4 89:4 106:11 |
| **beneficiaries**(1) 114:4 **beneficiary**(1) 91:5 **benefit**(21) 16:16 25:2 30:23 37:18 37:23 48:18 52:14 52:19 54:25 55:2 55:3 56:23 73:6 79:20 79:22 86:21 91:15 91:16 111:9 115:11 117:1 | | | | | | **choices**(1) 25:12 **choose**(2) 15:5 39:17 **chose**(6) 14:12 44:12 69:14 88:20 89:6 89:15 |
| **benefiting**(1) 118:20 | | | | | | **chosen**(1) 56:8 **chung**(1) 3:23 **cindy**(1) 3:19 |
| **benefits**(118) 6:9 7:1 7:9 8:7 10:3 10:18 11:17 11:17 12:4 12:13 12:14 12:15 12:23 13:1 13:24 14:6 14:24 15:2 16:5 16:23 19:5 20:15 21:13 21:21 22:3 22:14 23:18 25:13 27:5 27:14 27:21 29:6 29:13 30:2 30:2 30:8 30:9 30:11 30:12 30:21 31:7 31:11 31:12 33:24 42:6 42:9 45:9 46:12 48:6 49:5 49:6 50:7 50:21 51:19 51:20 51:21 52:1 53:6 53:7 53:13 53:17 54:1 54:2 54:5 54:23 56:18 56:19 60:10 61:12 62:13 63:20 63:23 65:17 70:6 70:12 71:25 73:3 78:3 79:10 79:13 81:10 85:18 86:20 87:14 87:15 89:7 89:8 91:14 91:20 92:6 92:16 92:18 92:21 99:23 109:22 110:14 110:21 110:24 110:24 111:24 111:25 112:3 112:6 112:12 112:22 113:3 113:4 113:8 116:13 116:14 116:15 116:21 116:21 116:24 117:5 117:15 117:15 118:10 118:13 | | | | | | **citation**(3) 114:14 114:24 115:5 **cite**(2) 28:11 28:21 **cited**(2) 52:3 76:16 **citing**(2) 76:21 80:10 |
| **bergen's**(1) 94:3 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **claim**(58) 12:13 12:16 12:22 12:25 13:4 14:25 20:9 21:14 27:23 28:7 41:19 41:23 44:3 46:19 46:20 48:14 48:15 55:13 63:5 69:18 69:21 70:13 70:18 71:6 71:12 71:13 71:14 71:16 73:11 74:4 74:11 76:9 77:5 77:9 77:11 77:13 77:13 77:17 77:23 77:24 78:13 79:4 79:25 80:11 80:12 80:19 83:13 83:14 86:2 92:25 94:9 94:10 94:13 100:17 101:14 101:20 117:4 119:4 | | **committee**(144) 2:5 3:18 4:1 6:7 6:19 7:20 7:22 7:23 8:1 8:5 8:19 9:8 9:18 9:20 9:25 10:14 10:21 10:22 11:1 11:2 11:10 11:10 11:25 13:4 13:15 14:1 16:9 17:8 18:7 19:3 20:12 21:25 22:11 22:17 25:24 26:1 26:24 31:1 33:4 33:8 34:7 34:11 34:18 35:16 35:18 37:1 37:2 37:17 39:13 39:17 39:23 40:9 40:12 40:24 41:6 41:8 43:6 43:7 44:6 44:7 44:8 45:7 45:10 45:22 46:14 47:7 49:2 51:1 52:1 52:5 52:8 54:17 54:18 55:12 55:14 55:16 55:17 56:5 56:7 56:12 56:14 56:16 56:23 57:3 57:5 58:8 58:12 59:1 59:12 59:20 59:21 60:12 61:15 64:11 64:23 64:24 65:4 65:5 65:15 66:5 66:18 66:20 66:21 67:5 67:18 67:21 68:8 69:22 78:10 83:25 84:10 84:15 89:3 90:7 90:24 96:14 96:20 98:13 98:24 100:9 100:21 100:22 101:7 101:15 101:16 102:7 102:20 102:25 103:7 103:24 107:10 110:2 110:5 110:11 110:16 111:3 111:15 112:9 113:11 113:25 114:1 116:4 116:18 118:22 | | **confidentiality**(4) 39:8 39:8 39:9 39:19 **confirms**(1) 72:11 **confused**(1) 85:17 **congratulations**(1) 121:21 **congress**(2) 102:16 102:21 **connection**(3) 42:22 48:13 102:20 **consensual**(5) 6:8 7:25 17:7 17:10 18:25 **consensus**(4) 8:20 61:8 61:23 66:3 **consent**(1) 47:23 **consequences**(2) 22:16 106:12 **consider**(7) 22:12 66:24 92:1 100:6 104:4 114:13 114:25 | | **counsel**(15) 36:1 44:18 58:12 58:19 59:8 59:9 59:10 59:11 60:25 66:14 66:19 66:22 69:11 69:22 73:9 **counsel's**(1) 5:11 **counsel's**(1) 59:18 **counted**(2) 30:4 91:21 **country**(3) 34:22 34:23 40:3 **couple**(7) 20:15 20:23 24:5 28:14 85:12 99:8 102:14 |
| **claimant**(2) 3:46 71:15 **claimants**(1) 107:1 **claimed**(1) 48:17 | | | | **consideration**(14) 9:5 23:19 24:3 26:16 28:9 69:19 70:18 75:12 78:17 86:22 91:17 91:24 106:3 114:9 | | **course**(17) 21:9 31:4 35:25 38:21 39:19 50:6 60:24 63:2 63:13 63:24 63:25 65:4 65:5 74:22 75:23 108:8 114:1 |
| **claims**(55) 11:5 11:14 11:22 12:8 12:11 12:16 13:3 15:7 17:18 21:13 27:15 27:15 28:8 29:1 35:6 35:7 42:1 53:16 53:20 60:3 61:6 63:1 63:12 65:7 65:9 65:10 65:11 71:4 72:6 73:25 75:20 81:12 81:13 92:4 92:5 92:8 92:12 92:15 92:18 99:16 99:17 99:18 99:19 99:25 100:2 100:15 101:2 101:9 101:14 103:3 103:4 103:15 106:6 107:11 118:19 | | **committees**(15) 8:4 26:22 31:8 35:21 35:22 39:10 39:20 51:18 53:12 58:20 100:11 101:11 103:12 104:14 107:9 | | **considered**(5) 18:21 39:24 52:6 87:16 **considers**(2) 40:22 56:16 **consistent**(5) 30:10 31:1 41:5 49:5 99:10 **constantly**(1) 18:6 **constituencies**(2) 61:25 113:24 **constituency**(2) 60:6 65:5 **constructively**(1) 66:24 **contact**(3) 71:21 75:15 120:8 | | **court**(271) 1:5 5:3 5:8 5:11 5:14 5:16 5:24 6:10 6:17 6:22 6:25 7:3 7:10 8:16 8:25 10:19 11:12 12:7 12:10 12:19 13:13 14:10 15:13 18:1 18:11 18:18 20:7 20:24 22:7 23:3 24:13 24:20 26:9 27:6 28:4 28:16 29:4 29:10 29:17 31:12 31:16 31:21 32:8 32:13 32:21 32:24 33:2 35:23 35:24 36:6 36:23 37:3 37:4 37:8 38:3 38:6 39:2 40:17 41:10 45:17 47:16 48:25 49:8 51:9 52:12 54:11 54:14 55:11 57:4 57:7 57:11 57:14 57:16 57:24 58:1 58:4 58:15 60:16 60:25 62:4 64:2 64:18 64:23 65:8 65:13 65:24 66:10 66:16 67:1 67:3 67:9 67:13 67:19 68:9 68:12 68:16 68:23 68:25 69:8 71:7 72:4 72:15 73:12 73:15 73:18 74:13 74:17 74:20 74:22 74:24 75:2 75:5 75:13 75:23 76:1 76:7 76:18 77:4 77:8 77:15 77:20 77:25 78:4 78:12 78:15 78:20 78:23 79:1 80:3 80:20 80:25 81:16 81:19 81:21 81:24 81:25 82:3 82:5 82:9 82:14 82:21 82:24 83:2 83:19 83:23 84:3 84:11 87:4 87:19 87:23 88:4 88:9 88:13 88:25 89:19 90:8 92:7 92:10 92:23 93:5 93:15 93:21 94:2 94:5 94:12 94:16 94:18 95:2 95:4 95:9 95:12 95:15 95:19 95:23 96:1 96:4 96:8 96:10 96:16 97:1 97:3 97:5 97:8 97:17 97:19 97:23 97:25 98:3 98:7 98:10 98:14 98:17 98:25 99:2 99:6 99:8 99:13 99:15 99:20 100:7 100:23 101:18 102:1 102:8 102:18 103:6 103:25 104:4 104:7 104:10 104:17 104:20 105:1 105:4 105:6 105:20 106:7 106:15 107:2 107:4 107:14 107:17 108:2 108:6 108:10 108:18 108:23 108:25 109:4 110:8 111:12 111:17 111:18 112:1 112:11 112:3 112:22 113:23 114:5 114:6 114:9 114:13 114:19 116:3 116:6 116:19 117:25 118:2 118:4 118:6 118:16 118:19 118:23 119:3 119:6 119:13 119:15 119:19 120:1 120:4 120:9 120:12 120:16 120:18 120:20 120:23 121:5 121:8 121:12 121:18 121:24 |
| **clara**(1) 44:11 **clarify**(1) 77:22 **clarity**(1) 119:1 **class**(1) 81:2 **clear**(15) 11:4 14:21 23:9 25:10 36:13 76:12 87:12 93:23 99:25 101:23 101:24 102:1 109:11 116:19 119:6 | | **common**(1) 70:2 **communicate**(1) 55:18 **communication**(1) 52:21 **communications**(1) 113:12 **community**(4) 45:21 45:24 51:7 53:19 **comp**(1) 91:4 | | **contacted**(1) 69:20 **contacts**(1) 120:7 **contained**(1) 71:24 **contains**(1) 113:2 **contemplate**(2) 76:6 78:9 **contemplated**(2) 63:9 63:10 **contemplates**(2) 6:14 11:13 **contemplating**(1) 56:10 **contemporaneous**(1) 29:21 | | |
| **clearly**(5) 70:5 71:11 90:16 109:24 110:6 **cleary**(3) 1:31 5:12 5:18 **clerk**(2) 5:2 108:5 **clients**(1) 113:13 **close**(4) 13:18 33:18 45:24 115:13 **closed**(1) 107:7 **closer**(1) 19:19 **closure**(10) 17:1 17:17 17:18 19:20 19:23 56:6 62:25 73:4 107:9 107:10 | | **company**(14) 19:14 27:13 27:14 27:23 29:21 30:18 30:18 50:18 50:18 62:8 70:3 92:21 117:8 117:13 | | **context**(5) 49:24 61:6 83:20 89:14 91:25 **contingent**(2) 27:15 **continuation**(2) 31:12 56:4 **continue**(14) 10:3 14:23 15:7 16:23 19:16 49:13 54:18 55:18 56:4 56:14 56:19 89:7 113:4 117:5 | | **court's**(1) 109:19 **courtroom**(5) 1:12 9:20 31:22 32:18 80:4 **courts**(3) 72:9 103:13 114:25 **cover**(1) 40:7 **coverage**(9) 33:23 46:4 46:23 46:23 50:24 56:4 56:20 57:25 88:11 |
| **clutter**(1) 34:3 **cobra**(1) 14:17 **code**(5) 100:18 109:23 112:1 112:4 112:15 **cognizable**(1) 80:11 **colleagues**(6) 35:15 35:17 58:9 61:2 61:2 64:10 | | **compared**(1) 20:6 **comparison**(1) 113:2 **compensate**(2) 10:17 54:1 **compensated**(2) 20:16 89:8 **compensation**(13) 29:12 31:6 31:14 37:12 54:3 82:8 82:12 82:18 83:15 84:5 90:22 92:9 96:22 | | **continued**(8) 2:2 2:48 3:44 9:1 9:8 79:16 92:16 113:3 | | **covered**(1) 92:13 **craft**(1) 38:24 **craig**(1) 3:36 **cravath**(1) 111:20 **create**(1) 84:10 **created**(1) 37:20 |
| **collection**(1) 115:3 **collins**(5) 22:24 22:25 23:5 25:1 115:23 **come**(24) 6:6 9:25 10:24 11:19 17:9 19:24 31:23 40:5 44:24 59:19 61:4 61:8 62:24 73:20 75:21 85:18 87:7 87:21 88:23 94:20 96:19 97:12 107:21 119:25 | | **compensatory**(2) 7:15 10:17 **complete**(2) 112:9 112:19 **completed**(2) 70:7 82:19 **completion**(2) 13:8 13:23 **complex**(1) 65:25 **complexity**(1) 115:3 **complicated**(1) 58:21 **complied**(1) 34:18 | | **continuing**(2) 78:14 110:15 **continuity**(1) 37:18 **continuously**(1) 8:21 **contract**(1) 47:7 **contracts**(1) 99:22 **contractual**(2) 15:22 100:2 **contributed**(3) 37:12 71:1 85:2 **contributing**(2) 79:23 84:1 | | **creates**(1) 116:25 **creativity**(2) 60:7 60:14 **credit**(2) 18:7 82:14 **creditable**(2) 55:22 57:20 **creditor**(1) 116:12 |
| **comes**(3) 22:5 55:5 87:2 **comfort**(2) 33:19 76:14 **comforted**(1) 58:25 **coming**(8) 5:22 6:5 18:22 33:21 41:22 49:12 60:21 60:22 61:17 62:17 65:1 86:13 86:13 86:14 93:25 96:22 | | **compliment**(1) 82:4 **compliments**(1) 84:15 **component**(2) 51:22 53:18 **compromise**(3) 16:11 23:9 50:1 **compromised**(1) 99:25 **conaway**(1) 3:1 **concentration**(1) 44:15 **concept**(1) 33:13 | | **conversation**(2) 61:12 75:18 **conversations**(1) 84:23 **conversion**(1) 116:21 **cooperate**(1) 77:1 **coordinated**(1) 44:6 **copies**(3) 76:15 76:20 76:24 **copy**(1) 84:18 | | **creditor**(17) 4:2 20:6 35:16 58:8 65:2 66:20 67:4 107:13 110:1 110:20 112:13 113:2 113:5 113:25 114:13 115:5 115:11 |
| **commend**(3) 59:11 60:24 66:22 **commended**(4) 37:10 60:18 60:24 110:19 **comment**(2) 69:5 70:21 **comments**(9) 40:16 50:25 61:9 66:19 69:6 80:24 87:21 89:22 101:20 | | **concern**(8) 23:19 29:20 93:7 95:13 97:19 98:5 106:4 117:4 | | **copy**(1) 1:26 **corporate**(1) 111:1 **correct**(12) 12:9 22:4 29:7 29:7 31:15 77:15 90:10 91:19 93:9 94:15 99:15 122:4 | | **creditors**(17) 4:2 20:6 35:16 58:8 65:2 66:20 67:4 107:13 110:1 110:20 112:13 113:2 113:5 113:25 114:13 115:5 115:11 |
| **commitment**(1) 81:5 **committed**(2) 70:7 84:2 | | **concerned**(4) 43:25 80:12 86:18 98:18 **concerning**(5) 34:7 34:8 43:14 43:15 47:3 54:7 54:8 54:23 56:7 | | **corrects**(1) 57:19 **cost**(5) 10:18 41:21 52:17 88:12 92:22 **costs**(6) 6:24 19:11 29:24 48:3 **could**(34) 11:16 11:17 14:13 15:25 17:10 17:22 20:18 23:7 24:11 24:24 25:16 43:4 43:16 43:20 48:23 49:22 51:25 52:5 52:17 56:3 74:11 79:13 79:14 80:24 84:6 88:2 88:10 88:17 97:24 107:18 107:19 110:20 116:4 119:23 | | **creditors'**(3) 2:5 59:20 66:6 |
| | | **concerns**(6) 26:14 26:19 64:17 93:13 93:17 105:10 | | | | |
| | | **concession**(4) 15:16 20:13 23:15 24:9 **concessions**(1) 16:7 **conclusion**(4) 20:3 33:11 33:16 118:16 **conclusions**(1) 115:10 **concur**(1) 49:3 **condition**(2) 87:3 87:9 **conditions**(5) 46:1 46:6 91:18 91:21 93:6 **conducted**(2) 39:7 43:19 **conferring**(1) 104:23 **confidential**(1) 26:12 | | **couldn't**(1) 8:20 **couldn't**(2) 79:8 84:2 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **crew**(1) 19:10 | | **declaration**(14) 8:3 19:5 23:21 29:23 | | **dimension**(2) 40:5 40:5 | | **drafted**(1) 102:16 | |
| **criteria**(1) 14:14 42:5 42:11 42:20 48:16 | | 30:16 31:25 32:2 32:4 37:6 40:13 57:6 | | **dipping**(1) 49:4 | | **draw**(2) 53:6 107:5 | |
| 48:21 80:13 88:18 116:22 | | 57:9 72:17 72:19 | | **directly**(3) 43:16 69:20 117:14 | | **drawing**(1) 33:18 | |
| | | | | **directors**(1) 12:4 | | **drop**(1) 29:18 | |
| **curious**(2) 119:11 119:21 | | **declarations**(2) 31:25 32:10 | | **directs**(1) 114:25 | | **dropped**(1) 89:11 | |
| **current**(7) 19:12 21:4 23:18 29:19 31:5 | | **dedicated**(1) 37:11 | | **disability**(3) 14:24 15:2 15:7 | | **due**(1) 46:24 | |
| 31:7 76:20 | | **deductibles**(1) 25:3 | | **disabled**(11) 13:12 13:21 14:9 14:16 14:23 | | **during**(2) 36:11 37:16 | |
| | | **deemed**(1) 117:11 | | 67:18 67:23 67:25 68:5 68:8 98:12 | | **duties**(2) 39:14 117:3 | |
| **currently**(8) 13:2 27:4 27:20 29:12 30:8 | | **defeat**(1) 22:22 | | | | **dynamic**(1) 89:6 | |
| 30:15 41:1 45:9 | | **defended**(1) 20:19 | | **disallow**(1) 71:16 77:9 | | **déjà**(2) 96:25 97:2 | |
| | | **defer**(1) 79:24 | | **disallowed**(8) 12:15 69:18 70:18 76:9 | | | |
| **curtis**(1) 1:25 5:9 | | **deferred**(10) 29:11 82:7 82:12 82:18 83:15 | | 77:11 77:17 78:1 106:6 | | **each**(16) 13:19 27:3 27:7 27:12 37:10 | |
| **cut**(1) 31:8 | | 84:5 90:22 91:4 92:9 96:22 | | | | 37:15 38:22 41:19 44:4 47:11 48:18 53:10 | |
| **cutting**(1) 85:8 | | | | **disappear**(1) 86:19 | | 61:25 105:16 112:3 116:22 | |
| **cvas**(1) 79:19 | | **defined**(2) 53:9 72:23 | | **disbursement**(1) 87:16 | | | |
| | | **defines**(1) 72:21 | | **discount**(1) 86:17 | | **ear**(2) 57:16 57:16 | |
| **dallas**(1) 44:11 | | **definitely**(2) 61:22 68:6 | | **discovered**(1) 69:18 | | **earlier**(4) 51:17 80:14 96:20 108:16 | |
| **daniel**(1) 3:40 | | **degree**(2) 42:2 69:13 | | **discovery**(3) 38:9 38:13 90:25 | | **early**(3) 38:20 38:21 51:18 | |
| **danielle**(2) 2:34 36:2 | | **delano**(1) 3:19 | | **discuss**(5) 69:21 70:12 74:6 74:8 114:6 | | **easily**(2) 17:25 70:15 | |
| **data**(2) 1:41 8:7 | | **delaware**(1) 1:4 1:14 5:1 36:1 | | **discussed**(2) 45:6 74:4 | | **economic**(1) 24:22 | |
| **date**(40) 6:21 9:2 24:7 24:8 37:19 40:23 | | **delay**(3) 79:4 115:14 115:10 | | **discussion**(4) 27:1 87:22 97:10 98:2 | | **ecro**(1) 1:39 | |
| 41:1 42:10 42:12 42:15 42:18 42:20 49:14 | | **deliberations**(1) 39:20 | | **discussions**(9) 8:13 9:1 9:2 13:16 23:16 | | **effect**(2) 71:16 77:4 | |
| 55:5 55:13 55:19 56:2 56:3 57:22 57:23 | | **delicate**(1) 111:7 | | 39:9 74:10 80:4 111:18 | | **effective**(11) 20:5 37:19 49:14 55:5 55:13 | |
| 78:17 83:12 83:13 83:16 83:18 85:18 | | **delta**(2) 58:17 103:3 | | | | 55:19 56:2 56:3 57:22 106:25 120:2 | |
| 85:25 86:4 86:21 87:17 87:18 88:16 89:12 | | **denied**(1) 103:13 | | **dismissal**(1) 12:7 | | | |
| 89:13 89:15 92:3 94:24 117:13 120:2 | | **dent**(1) 3:36 | | **dismissed**(1) 12:11 | | **effectively**(1) 11:23 | |
| 122:9 | | **dependents**(1) 62:23 | | **disposed**(1) 54:16 | | **efficient**(2) 46:17 104:13 | |
| | | **depending**(3) 52:13 62:22 103:17 | | **dispute**(4) 20:12 69:15 78:13 90:22 | | **effort**(2) 7:9 19:11 | |
| **dated**(2) 32:2 32:4 | | **deprived**(1) 54:4 | | **disputed**(5) 7:16 28:12 30:19 | | **efforts**(13) 8:4 8:11 8:11 8:18 37:11 58:10 | |
| **dates**(1) 18:13 | | **describe**(2) 37:16 49:18 | | **dissatisfaction**(1) 115:25 | | 64:22 109:21 110:16 110:20 111:19 | |
| **daughter**(2) 85:7 85:10 | | **described**(34) 34:1 34:5 34:10 39:16 41:11 | | **distraction**(1) 115:12 | | 113:13 121:13 | |
| **day**(6) 27:16 52:10 62:6 63:15 119:23 | | 41:16 42:21 46:21 48:10 48:13 48:15 | | **distribute**(1) 48:20 | | | |
| 121:24 | | 53:22 71:23 80:14 | | **distributed**(1) 107:12 | | **either**(13) 7:21 10:12 10:13 12:12 15:5 | |
| | | | | **distribution**(5) 51:13 52:2 55:9 116:9 | | 27:20 27:22 28:5 58:18 75:16 75:19 87:12 | |
| **days**(4) 5:20 49:14 55:6 88:17 | | **describes**(1) 72:21 | | 116:12 | | 103:16 | |
| **deadline**(4) 42:24 42:25 47:8 54:22 | | **description**(1) 28:22 | | | | | |
| **deal**(6) 24:18 59:5 60:6 60:14 83:1 83:5 | | **designed**(1) 100:18 | | **distributions**(1) 12:1 | | **elect**(7) 14:18 25:13 27:13 49:1 49:20 | |
| **dealing**(1) 62:25 | | **desire**(2) 69:16 70:19 | | **district**(1) 1:4 | | 49:20 55:7 | |
| **dealt**(1) 110:17 | | **despite**(1) 18:2 | | **dividing**(1) 52:5 | | | |
| **death**(3) 54:25 55:1 117:6 | | **detail**(4) 22:4 22:18 50:12 70:14 | | **docket**(7) 32:2 32:3 32:4 34:17 40:15 | | **elected**(4) 29:15 30:1 46:25 117:20 | |
| **debenture**(1) 3:34 | | **detailed**(2) 47:2 49:19 | | 47:17 121:19 | | **election**(7) 14:20 14:21 42:6 47:6 47:18 | |
| **debit**(1) 56:9 | | **details**(5) 9:12 21:5 21:15 70:13 74:4 | | | | 47:25 55:4 | |
| **debtor**(15) 8:3 11:5 11:8 21:3 40:25 53:20 | | **determination**(2) 77:12 114:22 | | **document**(3) 30:15 47:22 48:14 | | | |
| 62:20 72:23 76:9 77:3 92:18 101:12 | | **determine**(5) 42:13 48:17 88:19 111:15 | | **documentation**(2) 9:11 55:1 | | **elections**(1) 48:18 | |
| 112:13 112:13 118:18 | | 114:20 | | **documented**(1) 70:25 | | **electronic**(1) 1:47 122:5 | |
| | | | | | | **element**(1) 14:7 | |
| **debtors**(126) 1:14 1:24 5:10 5:18 6:14 | | **determined**(3) 11:24 88:7 117:22 | | **documents**(21) 32:1 38:10 49:23 69:5 69:5 | | **elements**(1) 34:3 | |
| 7:11 7:12 7:14 7:17 8:8 8:18 8:21 9:3 9:7 | | **detrimental**(1) 101:13 | | 75:8 75:11 75:15 75:19 76:14 76:25 80:10 | | **elias**(4) 21:1 21:2 21:5 115:23 | |
| 9:18 9:24 10:2 10:12 10:14 10:17 10:25 | | **developed**(2) 34:11 43:9 | | 84:13 84:13 84:19 84:21 90:2 101:3 106:1 | | **eligibility**(5) 30:16 53:7 88:20 93:19 | |
| 11:4 11:6 11:9 11:21 13:4 13:7 13:15 | | **di9225**(1) 3:22 | | 111:13 119:22 | | **eligible**(25) 12:24 14:13 25:9 30:24 30:25 | |
| 15:20 16:2 16:6 16:21 17:16 18:1 18:8 | | **diabetes**(1) 87:7 | | | | 42:8 42:13 45:25 46:12 46:18 47:5 48:18 | |
| 19:2 19:4 19:7 19:8 20:10 20:14 23:10 | | **diaz**(1) 1:41 | | **does**(14) 23:13 23:13 44:2 51:10 57:8 66:3 | | 52:2 52:17 52:24 53:1 56:23 67:24 68:3 | |
| 24:3 24:7 25:20 25:23 28:6 29:2 30:7 | | **dictate**(1) 46:8 | | 75:8 76:5 78:9 89:3 91:8 94:10 95:5 | | 69:14 71:25 88:19 114:7 116:22 117:5 | |
| 31:23 34:6 34:11 34:18 35:14 38:11 42:17 | | **did**(8) 11:17 12:14 27:12 36:9 39:6 44:9 | | 101:7 | | | |
| 43:8 53:22 53:24 54:5 55:21 55:24 56:5 | | 45:14 49:9 50:6 58:10 64:12 65:7 65:10 | | | | **eloquence**(1) 66:13 | |
| 56:18 59:20 63:11 66:20 67:22 71:10 | | 65:15 67:20 70:11 71:21 73:19 73:21 | | **doesn't**(5) 19:6 22:22 54:9 102:17 103:23 | | **else**(14) 25:17 55:4 58:25 68:12 71:5 74:3 | |
| 71:24 72:12 72:12 72:13 72:25 73:2 73:5 | | 73:22 74:1 74:6 74:7 74:17 79:8 79:10 | | **doing**(6) 10:25 14:1 40:1 64:10 67:15 | | 78:24 80:22 81:17 86:21 90:15 92:25 | |
| 73:13 76:23 77:1 77:5 77:13 77:17 80:1 | | 80:10 84:7 84:8 85:4 86:11 86:14 86:21 | | **dollar**(2) 21:13 40:24 | | 106:20 109:8 | |
| 81:15 86:11 88:7 88:8 89:18 90:19 91:4 | | 87:13 89:4 90:17 92:4 92:5 92:15 92:24 | | **dollar-wise**(1) 61:6 | | | |
| 94:11 94:14 99:10 99:22 100:16 100:22 | | 103:7 103:9 103:11 108:12 108:18 109:1 | | **dollars**(6) 24:5 47:23 60:5 65:1 65:1 79:11 | | **email**(5) 29:21 52:11 52:14 74:7 96:23 | |
| 101:3 101:15 102:6 103:2 106:5 107:8 | | 111:17 117:16 | | **don't**(28) 12:16 13:6 18:7 21:14 22:2 23:6 | | **emails**(4) 43:11 43:24 50:4 84:6 | |
| 109:21 110:1 110:5 110:19 110:23 112:8 | | | | 26:25 28:18 28:20 28:23 30:19 31:10 35:5 | | **embarrass**(1) 58:9 | |
| 112:12 112:16 112:23 112:16 112:22 112:23 | | **didn't**(9) 21:5 27:22 36:16 46:8 94:1 | | 45:25 47:21 50:14 54:2 93:11 98:20 | | **embodied**(1) 50:1 | |
| 113:6 113:9 113:11 113:15 113:17 113:25 | | 94:22 102:22 119:1 120:13 | | 100:12 101:19 103:20 103:22 104:24 | | **employ**(1) 74:1 | |
| 114:10 114:15 114:17 115:8 115:11 115:18 | | | | 109:14 119:11 120:18 120:20 | | **employed**(2) 30:21 50:19 | |
| | | **didn't**(8) 59:25 62:20 79:16 79:18 86:13 | | | | **employee**(6) 14:16 14:16 14:17 100:17 | |
| **debtors'(8)** 60:25 63:8 66:16 72:16 72:20 | | 87:14 90:6 90:25 | | **donahee**(1) 37:1 | | 100:21 109:22 | |
| 73:10 73:11 76:5 | | | | **done**(12) 18:16 18:16 23:13 23:14 27:18 | | | |
| | | **difference**(1) 29:24 | | 29:19 34:2 52:25 54:12 54:15 92:11 | | **employees**(10) 19:10 19:13 19:15 62:21 | |
| **decade**(1) 83:11 | | **different**(17) 14:5 20:23 22:15 27:9 29:14 | | 113:11 | | 66:18 66:21 99:11 100:10 100:15 111:1 | |
| **december**(11) 8:24 9:13 9:15 24:4 24:6 | | 49:22 65:17 76:13 80:8 83:8 88:16 93:3 | | | | | |
| 24:9 24:12 24:23 31:25 69:23 85:25 | | 95:7 101:2 101:2 101:2 106:18 | | **don't**(22) 61:20 72:24 74:3 74:10 74:14 | | **employer**(5) 53:9 72:23 73:1 85:7 111:7 | |
| | | | | 76:24 80:11 80:17 82:19 83:3 83:13 83:14 | | **employment**(5) 27:8 72:23 117:12 | |
| **decide**(2) 25:16 109:11 | | **differently**(1) 14:2 25:8 | | 84:25 87:3 87:11 87:13 88:20 88:24 89:10 | | **enables**(1) 112:20 | |
| **decided**(3) 29:18 88:10 102:22 | | **difficult**(6) 38:24 62:3 62:3 80:9 84:4 | | 89:15 91:16 91:24 | | **encouraged**(1) 44:23 | |
| **decision**(15) 15:18 23:1 25:16 31:8 43:15 | | 115:10 | | | | **encouraging**(1) 66:23 | |
| 49:3 49:11 50:8 80:9 81:10 81:10 88:14 | | | | **door**(1) 88:22 | | **end**(6) 20:2 42:17 56:20 72:5 80:15 116:2 | |
| 88:21 91:13 92:20 | | **difficulty**(1) 115:2 | | **double**(1) 49:4 | | **endanger**(1) 52:1 | |
| | | **diligence**(1) 38:8 | | **dow**(1) 3:30 | | **ended**(2) 79:15 79:18 | |
| **decisions**(5) 31:3 33:22 81:8 88:16 89:16 | | | | **down**(12) 5:22 6:20 9:2 10:15 16:10 19:9 | | **ending**(1) 38:20 | |
| | | | | 21:12 22:6 62:21 67:12 75:1 83:6 | | | |

| Word | Page:Line |
|---|---|
| ends(2) 112:15 | |
| energy(2) 18:9 39:5 | |
| engage(1) 69:23 | |
| engaged(2) 66:7 109:11 | |
| english(1) 2:32 | |
| enough(3) 13:7 13:18 40:7 | |
| enrollment(2) 42:18 42:19 | |
| ensure(3) 34:12 54:17 56:13 | |
| enter(1) 118:19 | |
| entered(1) 66:17 | |
| entering(1) 70:16 | |
| enterprise(1) 27:10 | |
| entertainment(1) 114:21 | |
| enthusiasm(1) 39:5 | |
| entire(4) 46:9 52:8 77:24 121:3 | |
| entirely(1) 95:7 | |
| entirety(1) 50:16 | |
| entitled(6) 53:6 53:13 53:13 53:23 55:1 70:6 | |
| entitlement(2) 14:6 54:23 | |
| envelope(1) 47:12 | |
| equally(2) 20:5 39:1 | |
| equipped(1) 49:10 | |
| equitable(2) 20:19 66:25 | |
| equitably(3) 110:17 112:15 113:2 | |
| equivalent(1) 91:7 | |
| erisa(2) 36:1 55:21 | |
| error(1) 116:20 | |
| especially(4) 36:12 40:22 50:8 60:1 | |
| esq(20) 1:25 1:26 1:32 1:33 2:6 2:13 2:14 2:20 2:27 2:33 2:34 2:41 2:42 2:43 3:2 3:15 3:19 3:36 3:40 4:3 | |
| essentially(1) 67:24 | |
| established(1) 14:11 | |
| estate(4) 59:24 60:1 114:10 114:21 | |
| estate-sponsored(1) 59:25 | |
| estates(4) 17:16 21:12 62:6 107:8 | |
| estate's(1) 118:17 | |
| esther(1) 3:23 | |
| estimating(1) 12:21 | |
| eve(1) 9:14 | |
| even(13) 13:5 15:9 29:4 39:4 52:19 59:9 61:14 61:18 62:9 63:8 94:4 95:16 118:8 | |
| event(1) 107:19 | |
| eventually(3) 41:18 60:22 81:6 | |
| ever(1) 69:20 80:12 | |
| every(16) 24:5 27:1 40:4 40:12 65:19 83:16 83:16 85:9 100:17 100:17 100:21 101:14 101:15 101:20 103:4 | |
| everybody(7) 58:25 82:5 82:11 84:9 84:16 86:21 98:12 | |
| everybody's(1) 84:17 | |
| everyone(18) 5:3 8:19 18:20 31:2 38:21 43:4 46:11 46:19 46:21 55:4 76:13 90:14 92:1 101:1 105:9 108:6 109:5 121:21 | |
| everyone's(1) 105:11 | |
| everyone's(1) 62:3 | |
| everything(5) 70:11 83:12 84:19 102:5 102:14 | |
| evidence(13) 19:4 23:21 31:24 32:6 32:9 57:6 57:9 57:12 71:1 72:13 76:18 76:18 76:22 | |
| evidentiary(2) 71:13 92:19 | |
| exactly(3) 24:16 31:16 105:8 | |
| example(3) 54:20 54:24 55:20 88:1 | |
| excellent(1) 84:14 | |
| exception(3) 111:2 115:15 118:14 | |
| excess(3) 103:5 103:19 103:19 | |
| exchange(2) 8:6 114:18 | |
| exchanged(1) 26:12 | |
| excluded(1) 87:8 | |
| exclusions(1) 97:10 | |

| Word | Page:Line |
|---|---|
| excuse(2) 33:3 51:24 | |
| exercise(1) 27:22 | |
| exhibit(1) 72:19 | |
| exhibits(1) 32:15 | |
| exist(2) 45:9 76:25 | |
| existence(2) 41:19 55:5 | |
| existing(1) 46:1 | |
| expectation(1) 102:6 | |
| expected(1) 62:16 | |
| expecting(1) 81:4 | |
| expects(1) 52:1 | |
| expense(2) 100:16 115:3 | |
| expenses(4) 10:7 46:18 51:12 52:24 | |
| expensive(1) 115:10 | |
| experience(5) 58:16 90:18 91:8 102:12 110:10 | |
| expert(2) 36:11 91:23 | |
| expertise(1) 110:9 | |
| explain(2) 22:4 45:3 | |
| explained(3) 41:4 41:4 47:23 | |
| explaining(1) 65:23 | |
| explains(1) 52:3 | |
| explanation(2) 70:8 98:4 | |
| express(1) 67:21 | |
| expressed(1) 117:3 | |
| expressly(1) 78:9 | |
| expunged(7) 13:3 13:6 28:8 29:1 35:7 53:16 72:7 | |
| expungement(1) 73:11 | |
| extend(2) 6:16 24:17 24:23 | |
| extended(5) 18:13 24:14 24:25 56:20 116:2 | |
| extensive(1) 109:12 | |
| extent(6) 11:24 44:4 45:8 53:17 65:7 111:2 | |
| extracting(1) 100:1 | |
| extraordinarily(1) 100:20 | |
| extraordinary(1) 113:13 | |
| extremely(3) 11:21 110:10 113:18 | |
| face(1) 10:7 | |
| faced(1) 43:15 | |
| facing(1) 59:24 111:11 | |
| fact(20) 8:10 19:3 23:1 23:16 25:9 29:21 46:5 64:19 71:20 86:11 86:22 86:23 90:16 90:24 92:4 92:17 93:10 93:17 98:20 118:13 | |
| factor(1) 23:16 46:7 113:9 | |
| factors(9) 17:11 17:20 20:7 23:11 93:12 112:2 112:17 115:1 115:7 | |
| facts(11) 8:2 23:8 30:19 80:13 91:14 93:1 94:6 99:8 106:2 106:10 106:18 | |
| factual(3) 29:14 39:24 76:13 | |
| fair(12) 16:25 20:13 20:19 48:20 50:1 62:18 66:3 66:25 114:18 114:20 116:7 118:17 | |
| fairly(5) 20:5 87:25 110:17 112:14 113:1 | |
| fairness(1) 116:8 | |
| faith(4) 19:8 65:2 113:16 114:16 | |
| fall(5) 8:1 9:10 50:14 61:18 103:17 | |
| fallacy(1) 24:25 | |
| familiar(4) 7:5 8:12 29:9 103:10 | |
| family(1) 112:2 | |
| faq's(1) 43:9 | |
| far(4) 56:25 86:17 94:4 100:10 | |
| farallon(1) 4:6 | |
| farr(1) 3:14 | |
| fashion(1) 66:24 | |
| fast(1) 118:6 | |
| faster(1) 18:3 | |
| father(1) 85:6 | |
| favor(3) 52:19 68:13 98:24 | |
| favorable(3) 48:1 51:17 56:17 | |
| favored(1) 114:19 | |
| february(3) 71:22 71:23 72:1 72:7 86:3 | |
| feedback(1) 50:5 | |

| Word | Page:Line |
|---|---|
| feel(11) 5:19 20:12 20:18 21:7 26:5 50:3 73:25 74:4 81:12 103:1 103:2 | |
| fees(1) 108:20 | |
| feld(3) 2:12 4:2 58:7 | |
| fellow(3) 66:14 66:22 108:24 | |
| few(9) 19:12 22:25 24:25 62:5 71:19 80:24 86:11 87:7 89:22 | |
| fiduciary(3) 39:14 59:6 117:3 | |
| field(1) 111:21 | |
| fielded(1) 26:7 | |
| file(8) 9:13 9:15 86:2 86:11 92:4 92:5 92:15 92:24 | |
| filed(26) 8:23 9:14 12:12 15:11 16:18 20:21 21:1 21:3 21:19 27:2 29:8 31:20 31:20 31:25 35:2 47:14 50:10 53:21 55:10 73:20 83:1 86:3 90:16 92:8 92:12 94:13 | |
| files(1) 76:23 | |
| filing(6) 9:7 16:15 28:13 92:4 112:5 112:5 | |
| final(9) 9:12 11:22 29:8 55:13 77:12 77:18 107:1 | |
| finality(9) 8:22 13:8 28:6 29:3 60:3 63:12 71:11 106:5 106:21 | |
| finally(1) 62:2 | |
| financial(6) 35:22 49:10 59:12 65:20 80:9 88:14 | |
| find(8) 16:4 19:6 38:23 75:17 75:21 84:2 84:4 84:5 | |
| finding(1) 116:6 | |
| fine(8) 5:14 32:21 38:14 68:24 74:12 91:7 95:25 120:17 | |
| finer(2) 53:6 107:5 | |
| finger(1) 2:5 | |
| finite(3) 107:11 107:12 107:12 | |
| firm(3) 35:14 73:22 110:7 | |
| first(16) 7:8 8:14 20:25 23:5 35:13 50:17 56:21 61:12 86:2 90:1 98:2 98:18 101:4 102:15 113:23 115:21 | |
| fit(1) 40:4 | |
| five(5) 30:19 30:22 69:7 112:2 112:16 | |
| flex(1) 22:1 | |
| floor(2) 1:27 2:36 | |
| flyer(1) 5:19 | |
| focused(1) 39:13 | |
| folks(9) 7:19 35:4 35:14 45:25 48:12 49:3 53:11 67:23 68:1 | |
| followed(1) 46:9 | |
| follows(1) 84:24 | |

| Word | Page:Line |
|---|---|
| for(247) 1:4 1:24 2:4 2:19 2:26 2:32 2:50 3:8 3:14 3:18 3:22 3:26 3:30 3:34 3:39 3:46 4:1 4:6 4:10 4:14 5:9 5:18 5:22 6:1 7:1 7:23 8:14 8:22 9:5 9:13 9:22 10:5 10:5 10:17 10:18 10:23 10:25 11:7 11:25 12:3 12:5 12:13 12:23 12:25 13:21 14:1 14:17 15:24 16:1 16:4 16:15 16:16 18:7 18:24 19:13 19:17 20:16 21:22 22:10 22:12 23:7 23:9 23:12 23:17 24:1 24:8 24:14 24:18 24:25 25:2 25:9 25:10 26:2 27:1 28:13 29:20 30:16 30:18 30:20 30:22 31:1 31:3 31:14 31:21 31:22 33:15 36:14 37:10 37:18 37:22 39:14 39:15 41:14 41:21 42:8 42:23 42:25 43:21 44:7 44:21 45:11 45:14 45:15 46:4 46:7 46:12 46:18 51:11 51:12 51:19 53:1 53:4 53:7 54:1 55:2 55:4 55:6 55:9 55:20 56:21 56:23 57:2 57:16 57:16 59:11 59:12 59:19 59:23 60:1 60:5 60:5 60:8 60:9 60:23 62:22 63:9 63:13 63:16 63:20 63:20 63:22 63:25 64:10 65:9 65:10 65:16 65:17 66:15 66:19 66:23 66:25 67:8 67:15 67:22 67:23 67:24 67:25 68:6 69:15 69:22 69:25 70:2 70:3 70:16 70:20 70:25 71:5 71:11 73:4 73:6 73:6 74:5 74:23 76:12 76:14 79:7 81:4 81:22 83:11 84:1 84:16 85:16 87:7 87:8 87:16 88:1 88:11 88:21 88:22 89:1 89:11 89:16 90:2 90:3 90:10 90:23 91:11 91:17 92:12 92:22 93:19 96:6 96:9 96:10 96:21 97:14 98:7 98:21 99:4 99:8 99:23 100:4 100:16 100:17 100:22 101:8 101:16 101:20 102:15 102:22 102:23 103:8 103:13 103:22 104:4 106:20 107:5 107:9 108:15 110:10 111:14 111:16 112:2 112:11 113:22 114:9 114:10 114:14 114:22 114:23 115:5 116:25 117:10 119:14 121:2 121:8 121:14 | |
| forced(4) 7:12 14:2 15:21 70:17 | |
| foregoing(1) 122:4 | |
| forgive(2) 115:17 117:23 | |
| form(8) 11:3 14:22 38:9 41:19 42:8 46:19 46:20 118:24 | |
| formal(8) 69:19 100:14 101:5 101:7 102:3 103:11 103:21 113:19 | |
| formality(1) 31:21 | |
| formation(2) 90:23 102:7 | |
| formed(4) 101:11 | |
| former(1) 70:20 | |
| forming(1) 100:10 | |
| forms(2) 26:16 34:5 34:10 34:14 34:19 41:23 44:3 48:11 48:15 48:15 55:13 | |
| formula(1) 105:19 | |
| formulating(1) 26:11 | |
| forth(7) 8:2 10:10 31:24 38:1 48:1 50:12 73:3 | |
| forthcoming(1) 25:15 | |
| forum(1) 98:21 | |
| forums(1) 41:5 | |
| forward(11) 9:25 11:11 12:16 15:9 17:9 23:21 26:19 35:11 36:22 46:15 73:12 | |
| fostered(1) 39:8 | |
| found(6) 34:17 40:14 44:13 47:17 52:14 72:18 | |
| four(5) 44:14 50:14 73:23 107:6 114:25 | |
| fourth(1) 113:9 | |
| frank(1) 4:3 | |
| frankly(2) 17:3 81:9 | |
| fred(1) 4:3 | |
| free(4) 44:21 48:6 52:18 53:20 | |
| frequent(2) 5:19 43:10 | |
| friend(1) 84:20 | |

| Word | Page:Line |
|---|---|
| **from**(99) | 5:18 11:9 11:11 11:15 11:18 |
| | 16:2 16:7 16:8 16:10 16:20 17:3 18:3 |
| | 19:18 25:1 25:23 26:14 27:13 27:14 28:6 |
| | 28:19 30:7 33:7 35:5 36:1 38:11 38:12 |
| | 39:9 40:23 41:22 43:5 44:19 45:12 48:5 |
| | 49:15 49:23 50:4 51:7 51:12 51:16 52:2 |
| | 52:3 52:11 53:1 53:5 53:8 53:11 55:10 |
| | 58:7 59:11 59:15 63:5 63:11 66:2 66:5 |
| | 68:14 68:20 70:1 70:3 70:5 70:10 70:11 |
| | 71:15 72:13 72:14 72:22 72:22 73:1 73:12 |
| | 74:11 75:1 76:4 76:21 77:5 81:5 81:8 83:8 |
| | 83:15 88:7 90:7 92:19 94:4 96:7 97:10 |
| | 98:17 105:9 105:13 107:6 108:4 111:8 |
| | 112:15 114:6 115:11 115:12 117:5 117:8 |
| | 117:14 117:15 118:20 122:5 |
| **front**(4) | 28:14 62:10 100:14 102:25 |
| **fruehauf**(1) | 112:24 |
| **fruitful**(1) | 35:10 |
| **full**(7) | 10:12 11:21 25:7 76:15 85:18 |
| | 90:24 98:13 |
| **function**(1) | 95:5 |
| **fund**(2) | 24:15 79:23 |
| **funded**(3) | 46:16 48:4 91:4 |
| **funding**(2) | 70:25 71:3 |
| **funds**(2) | 63:22 117:4 |
| **further**(9) | 7:15 8:10 8:17 24:8 27:19 30:1 |
| | 50:13 78:17 81:8 |
| **future**(10) | 11:19 13:2 14:8 14:25 15:2 |
| | 23:5 84:18 92:18 93:13 110:17 |
| **gallagher**(1) | 3:14 |
| **gamut**(1) | 43:25 |
| **gary**(1) | 37:1 |
| **gave**(3) | 35:1 36:18 47:11 |
| **gee**(3) | 23:6 91:11 106:11 |
| **genband**(2) | 27:11 79:19 |
| **general**(3) | 65:11 105:17 120:23 |
| **generally**(4) | 23:4 51:15 90:5 105:23 |
| **generated**(1) | 17:18 |
| **gentleman**(1) | 73:22 |
| **gentlemen**(1) | 29:5 |
| **georgia**(2) | 44:12 44:12 |
| **gesture**(1) | 68:4 |
| **get**(24) | 7:20 13:5 13:24 18:7 22:2 36:9 |
| | 37:7 79:10 79:12 79:12 85:17 85:17 85:19 |
| | 85:24 86:17 87:1 88:10 90:7 101:16 104:9 |
| | 105:6 105:6 121:7 121:19 |
| **gets**(1) | 104:15 |
| **getting**(9) | 12:20 20:8 22:19 28:9 43:15 |
| | 79:18 97:13 98:18 119:17 |
| **ginger**(1) | 1:39 |
| **give**(8) | 15:17 18:9 22:1 34:7 36:18 76:18 |
| | 76:18 97:15 |
| **given**(15) | 20:16 21:17 24:3 25:13 25:22 |
| | 26:17 31:10 47:9 48:19 62:20 67:25 69:17 |
| | 69:19 119:5 120:1 |
| **glad**(2) | 70:12 108:18 |
| **goal**(2) | 44:10 51:22 |
| **goals**(4) | 38:23 45:7 51:18 62:3 |
| **goes**(2) | 21:23 27:17 |
| **going**(48) | 11:9 24:18 25:5 25:11 33:12 |
| | 37:20 40:4 40:4 42:14 42:16 44:24 53:14 |
| | 53:16 54:10 58:9 62:6 63:15 64:10 64:12 |
| | 64:13 73:5 73:8 74:14 74:14 76:4 79:21 79:21 |
| | 80:4 80:21 83:12 83:16 84:17 84:17 86:1 |
| | 86:6 86:7 86:9 95:20 97:14 98:8 106:11 |
| | 107:21 109:15 109:17 115:16 115:17 |
| | 115:18 121:1 121:19 |
| **gone**(5) | 27:25 50:18 63:17 85:7 87:1 |

| Word | Page:Line |
|---|---|
| **good**(37) | 5:3 5:4 5:5 5:6 5:9 5:16 5:16 |
| | 5:17 6:1 19:8 32:24 32:25 33:1 33:2 37:4 |
| | 40:18 40:21 42:18 52:8 58:5 58:5 59:6 59:9 |
| | 65:2 66:11 66:12 67:10 67:11 68:23 75:5 |
| | 79:1 79:2 79:2 84:22 109:2 113:16 114:16 |
| | 121:24 |
| **goodness**(1) | 118:6 |
| **got**(15) | 7:7 9:15 30:23 38:13 41:12 46:19 |
| | 52:25 82:25 84:20 86:5 91:3 91:15 91:15 |
| | 96:21 98:13 |
| **gotten**(8) | 9:17 19:22 50:5 82:1 90:2 90:4 |
| | 91:6 106:2 |
| **gottlieb**(3) | 1:31 5:12 5:18 |
| **governing**(1) | 73:3 |
| **government**(1) | 43:13 |
| **graces**(1) | 84:20 |
| **gratitude**(1) | 67:21 |
| **great**(5) | 39:24 59:5 60:6 60:14 73:9 |
| **greater**(1) | 70:13 |
| **gross**(1) | 1:20 |
| **grounds**(1) | 115:24 |
| **group**(12) | 2:26 45:11 45:13 45:15 46:2 |
| | 46:2 46:8 46:9 52:8 66:15 67:4 104:15 |
| **groups**(1) | 91:9 |
| **guess**(3) | 82:1 102:11 102:13 |
| **gump**(3) | 2:12 4:2 58:7 |
| **guyder**(1) | 3:40 |
| **had**(64) | 8:23 9:12 11:17 12:17 13:10 13:11 |
| | 14:9 18:21 21:2 25:7 25:12 25:19 26:22 |
| | 27:15 27:21 29:4 31:2 39:5 42:4 43:11 |
| | 45:1 46:3 46:6 58:24 60:3 60:9 60:20 |
| | 61:22 62:7 62:8 62:19 64:14 67:5 70:1 |
| | 72:7 72:8 73:9 76:23 79:9 81:5 82:7 |
| | 83:10 84:20 84:22 86:8 88:23 90:1 91:2 |
| | 92:2 92:16 92:17 92:20 93:4 93:13 93:17 |
| | 99:1 100:10 102:12 103:4 103:5 103:10 |
| | 105:11 108:13 110:5 |
| **hadley**(2) | 2:26 3:18 |
| **hadn't**(1) | 106:1 |
| **hadn't**(2) | 76:19 90:2 |
| **half**(2) | 18:14 21:23 |
| **hall**(5) | 26:25 44:8 44:10 47:4 56:11 |
| **hamilton**(1) | 1:31 |
| **hand**(5) | 18:8 26:19 55:23 110:2 120:17 |
| **handed**(1) | 21:24 |
| **handful**(3) | 20:20 114:2 114:3 |
| **handing**(1) | 106:25 |
| **handled**(3) | 74:1 92:6 101:10 |
| **hanrahan**(1) | 3:15 |
| **happen**(5) | 79:18 85:9 85:10 87:4 98:15 |
| **happened**(4) | 39:4 84:24 94:9 96:24 |
| **happening**(7) | 21:14 23:6 43:4 44:1 89:9 |
| | 90:17 111:8 |
| **happens**(2) | 23:24 91:19 |
| **happy**(3) | 59:22 96:6 105:9 |
| **hard**(8) | 6:6 8:13 9:17 9:21 36:25 60:14 |
| | 61:4 89:3 |
| **hardship**(10) | 16:1 21:4 21:7 21:10 50:7 |
| | 50:17 50:18 50:21 110:22 115:22 |
| **hardships**(1) | 26:15 |
| **harmed**(1) | 31:7 |
| **harrisburg**(1) | 1:43 |

| Word | Page:Line |
|---|---|
| **has**(70) | 6:5 10:21 10:22 10:24 14:7 19:21 |
| | 21:20 21:21 24:14 26:6 27:19 29:14 30:6 |
| | 31:25 32:2 32:4 32:8 33:5 34:2 35:9 48:8 |
| | 50:5 50:18 51:1 51:23 52:19 53:2 59:1 |
| | 61:14 66:17 69:20 72:10 73:9 73:24 75:8 |
| | 75:9 76:13 78:10 78:14 82:18 83:17 84:21 |
| | 85:7 90:4 90:16 90:18 93:8 93:17 96:7 |
| | 96:19 96:23 100:19 100:20 101:1 101:4 |
| | 104:13 104:13 109:6 109:10 111:4 113:11 |
| | 114:3 114:5 114:16 114:17 116:4 116:9 |
| | 116:11 116:18 121:3 |
| **hasn't**(2) | 18:2 |
| **hat**(1) | 103:19 |
| **hauer**(2) | 2:12 4:2 58:7 |
| **haupt**(5) | 37:2 40:11 40:14 57:4 57:9 |
| **have**(232) | 5:19 7:20 8:21 8:22 9:3 9:21 |
| | 9:22 11:6 11:8 11:16 11:16 11:17 11:17 |
| | 11:18 11:19 11:21 12:17 12:25 12:25 13:4 |
| | 13:8 13:15 13:16 13:19 13:22 13:22 13:24 |
| | 14:12 14:13 14:15 14:18 14:22 15:5 15:11 |
| | 15:22 15:23 16:2 16:6 16:12 16:15 16:18 |
| | 17:21 18:1 18:2 18:8 19:2 19:4 19:6 19:9 |
| | 19:12 19:13 19:15 20:18 20:21 21:14 22:3 |
| | 22:6 23:8 23:13 23:13 24:3 25:6 25:10 |
| | 25:22 26:13 26:18 26:19 26:22 26:25 27:2 |
| | 27:23 27:24 28:1 28:12 28:17 28:19 28:24 |
| | 28:24 29:5 31:10 31:20 31:23 32:5 32:18 |
| | 33:6 34:12 34:13 36:22 37:17 39:4 39:16 |
| | 40:19 42:22 44:14 45:16 46:5 46:6 46:16 |
| | 47:21 49:15 49:20 49:22 50:22 51:10 |
| | 52:14 52:23 54:7 55:4 55:23 57:8 57:21 |
| | 58:11 58:16 58:19 58:22 59:4 59:5 59:7 |
| | 59:10 59:16 59:25 60:18 61:9 62:13 63:7 |
| | 63:10 63:21 63:22 64:4 64:16 64:16 65:7 |
| | 65:9 65:10 65:12 65:21 66:7 66:19 68:16 |
| | 69:4 69:16 71:3 71:15 72:10 73:14 74:9 |
| | 74:9 75:4 75:10 75:11 75:11 75:15 75:18 |
| | 76:24 78:10 79:16 79:22 80:1 80:18 81:3 |
| | 81:7 82:6 83:9 83:10 84:22 85:16 85:21 |
| | 85:24 86:13 86:25 87:8 90:17 91:6 91:8 |
| | 91:11 93:1 93:17 95:1 97:12 97:20 98:1 |
| | 98:5 98:12 100:6 100:10 100:15 100:25 |
| | 101:2 101:7 101:19 101:21 102:3 102:11 |
| | 102:16 102:25 103:7 103:9 103:20 103:22 |
| | 104:3 105:25 106:24 107:9 107:10 108:21 |
| | 109:14 110:7 110:18 110:19 110:20 110:21 |
| | 111:3 111:6 112:3 112:16 112:21 112:24 |
| | 113:3 113:5 113:9 113:15 113:16 113:19 |
| | 115:24 117:11 119:15 119:24 120:14 |
| | 120:18 120:20 121:5 121:19 |
| **haven't**(1) | 18:2 |
| **haven't**(3) | 74:9 82:3 86:20 |
| **having**(8) | 18:3 31:23 44:5 54:24 61:11 |
| | 62:21 64:13 64:15 75:16 85:2 90:18 |
| | 109:10 115:12 |
| **hawkins**(12) | 3:47 27:3 27:11 53:3 80:23 |
| | 80:24 80:25 81:1 81:16 105:15 106:9 |
| | 117:10 |
| **he's**(4) | 25:22 26:7 30:8 52:22 |
| **health**(4) | 22:20 33:23 83:11 116:12 |
| **healthcare**(6) | 21:21 85:3 86:9 94:24 |
| | 114:24 117:21 |
| **hear**(7) | 31:9 65:23 68:14 68:20 68:24 |
| | 69:9 96:17 98:17 101:6 |
| **heard**(23) | 17:3 17:3 26:6 26:18 32:6 |
| | 32:20 33:9 33:13 42:22 68:17 68:22 73:12 |
| | 74:18 80:16 92:16 93:4 96:6 104:25 105:9 |
| | 105:11 105:13 107:6 120:24 |
| **hearing**(15) | 3:12 33:12 33:16 40:17 45:6 |
| | 57:11 58:11 69:4 69:23 71:13 74:11 96:20 |
| | 106:9 119:21 122:1 |
| **hearings**(1) | 17:3 |
| **heart**(2) | 40:16 87:6 |
| **heartened**(1) | 50:21 |

| Word | Page:Line |
|---|---|
| **held**(2) | 112:22 113:19 |
| **help**(11) | 8:17 33:21 36:3 36:9 37:14 50:23 |
| | 51:19 56:11 56:17 61:20 121:6 |
| **helped**(5) | 38:23 38:24 44:18 67:6 108:12 |
| **helpful**(10) | 9:9 32:22 35:16 99:8 100:19 |
| | 100:20 108:14 110:13 113:18 121:4 |
| **helping**(2) | 36:14 121:2 |
| **her**(4) | 5:13 35:14 35:15 86:15 |
| **here**(51) | 5:22 6:3 7:5 7:7 9:19 10:4 19:25 |
| | 21:14 35:23 36:2 36:3 36:4 36:10 37:2 |
| | 58:24 59:1 59:4 60:1 60:18 60:19 61:13 |
| | 62:2 64:20 65:25 67:6 67:12 71:11 71:16 |
| | 73:4 74:9 82:5 82:22 90:2 90:19 93:16 |
| | 96:24 97:21 98:19 103:20 103:23 104:22 |
| | 106:21 107:21 107:24 109:17 110:12 111:5 |
| | 112:20 113:14 117:21 119:16 |
| **here's**(1) | 97:19 |
| **he's**(8) | 54:25 55:1 72:7 72:8 73:13 75:9 |
| | 76:24 80:10 |
| **high**(1) | 36:12 |
| **highest**(1) | 44:14 |
| **highly**(2) | 50:9 110:19 |
| **him**(15) | 9:20 21:17 31:23 71:22 71:23 |
| | 72:1 75:16 75:18 90:10 90:14 106:4 |
| | 108:16 109:1 119:24 120:8 |
| **himself**(3) | 64:10 117:19 118:11 |
| **his**(50) | 9:21 21:4 21:15 21:16 21:22 22:21 |
| | 22:25 29:19 30:9 30:23 31:24 32:2 35:17 |
| | 36:10 48:19 55:2 57:6 58:9 61:2 64:9 |
| | 72:6 72:11 72:25 73:11 75:15 75:20 77:9 |
| | 77:11 77:12 77:12 77:18 80:16 84:21 88:7 |
| | 88:11 88:21 88:21 89:2 93:8 93:10 93:11 |
| | 93:11 93:19 96:13 102:20 110:7 116:20 |
| | 117:4 117:20 118:10 |
| **historically**(4) | 7:7 8:3 13:15 13:25 |
| **history**(1) | 89:25 |
| **hoc**(5) | 3:18 35:17 59:21 90:24 91:8 |
| **hodara**(1) | 4:3 |
| **hold**(3) | 13:19 71:13 74:10 |
| **hometown**(1) | 99:4 |
| **honor**(108) | 5:6 5:15 5:17 6:4 6:6 6:12 |
| | 6:13 7:4 8:12 13:10 18:6 18:13 19:6 |
| | 28:14 31:19 32:16 32:23 33:5 33:25 35:20 |
| | 36:4 36:7 36:14 37:13 37:15 37:24 38:4 |
| | 38:7 38:12 39:6 39:12 41:3 41:8 42:7 |
| | 43:1 43:5 44:5 44:7 45:20 46:10 48:11 |
| | 49:17 50:2 51:6 52:7 52:10 52:16 54:7 |
| | 54:9 55:15 56:16 57:3 58:2 58:6 58:8 |
| | 58:24 62:7 65:12 66:8 66:12 66:12 66:16 |
| | 66:23 67:11 67:11 68:11 68:21 71:20 73:4 |
| | 73:17 74:16 74:19 75:8 75:12 75:22 78:14 |
| | 81:20 81:22 83:7 83:21 87:20 88:3 89:1 |
| | 89:17 89:21 94:17 95:1 95:25 96:19 97:24 |
| | 100:12 101:4 101:21 101:25 102:11 103:4 |
| | 104:6 104:19 105:12 107:3 108:1 108:3 |
| | 108:9 119:5 120:11 120:22 121:22 121:25 |
| **honor's**(9) | 5:12 7:8 10:16 36:15 40:16 |
| | 41:5 41:24 45:19 54:15 |
| **honorable**(1) | 1:20 |
| **honor's**(2) | 72:2 91:17 |
| **hope**(6) | 26:19 33:11 36:16 46:16 51:16 |
| **hoped**(2) | 25:6 27:15 |
| **hopefully**(8) | 6:2 15:8 19:18 20:1 49:10 |
| | 56:1 56:2 75:19 |
| **hoping**(3) | 33:15 79:24 98:15 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**horne**(81) 3:8 29:8 29:9 9:12 29:14 29:15 29:25 30:18 30:21 53:21 54:2 81:17 81:18 81:18 81:19 81:20 81:22 82:1 82:4 82:10 82:15 82:16 82:22 82:25 83:3 83:21 83:24 84:7 84:12 87:20 87:24 88:4 88:21 89:2 90:1 90:6 90:18 90:23 90:25 91:10 92:2 92:4 92:20 93:8 94:19 94:21 95:12 95:14 96:13 96:16 96:18 97:2 97:4 97:7 97:9 97:18 97:20 97:22 97:24 98:8 98:11 98:15 99:1 101:5 102:12 104:3 104:6 104:9 104:11 104:12 104:19 105:13 105:8 117:18 117:19 117:23 118:1 118:3 118:5 118:8 118:9

**horne's**(1) 30:13
**host**(2) 44:3 45:3
**hosted**(1) 45:3
**hours**(3) 37:11 38:16 44:5
**housekeeping**(1) 54:20
**how**(35) 5:6 5:8 7:7 11:8 21:23 30:6 31:8 35:11 41:2 41:12 41:13 41:16 41:20 42:1 42:13 43:16 43:21 44:1 46:22 47:1 52:13 55:7 55:8 55:25 56:8 62:14 73:7 73:20 75:7 80:12 84:4 84:7 84:8 89:10 95:6 96:11

**however**(5) 50:9 69:17 73:24 79:18 103:8
**hra**(15) 46:17 47:1 47:24 48:4 51:6 51:12 51:21 52:14 52:18 53:1 56:7 56:8 56:10 117:4 117:6

**hra's**(5) 22:1 22:15 51:14 51:14 52:3
**hras**(3) 116:9 116:10 116:12
**huddle**(1) 104:21
**hundred**(2) 24:5 104:15
**hundreds**(1) 103:3
**hurdle**(1) 17:25 36:12
**husband**(1) 86:17
**hypothetical**(2) 27:22 27:24
**i'd**(7) 22:6 36:25 37:24 94:21 96:8 102:13 107:17

**i'll**(17) 5:12 20:20 22:17 33:5 33:8 33:8 34:9 34:16 36:8 37:16 43:11 48:7 96:16 106:22 107:19 107:24 109:5

**i'm**(33) 14:12 21:2 22:5 22:20 25:2 32:18 32:19 33:3 52:10 52:21 93:5 96:5 97:14 98:8 98:15 98:18 98:23 99:4 103:10 104:22 105:9 108:18 109:1 109:15 115:16 115:17 115:18 117:22 119:8 119:11 119:17 119:21 120:25

**i've**(6) 14:12 39:22 50:3 103:10 110:4
**idea**(6) 11:16 24:24 25:2 76:17 93:24
**ideas**(1) 60:21
**identified**(1) 32:15
**immediate**(3) 51:14 51:25 52:4
**immediately**(1) 84:9
**impact**(1) 70:19
**impacts**(1) 55:8
**implausible**(1) 19:16
**implementation**(4) 37:22 54:9 55:19 56:15
**implemented**(2) 37:20 41:13
**importance**(1) 92:3
**important**(5) 8:22 11:7 11:21 13:7 17:4 29:2 33:13 39:1 43:15 45:21 51:18 53:18 64:24 67:6 68:5 73:4 73:4 77:2 89:13 101:24 107:8 107:9 108:23 110:24 114:9 116:13 116:24

**importantly**(1) 106:18
**impressed**(1) 58:23
**impressively**(1) 59:7
**improperly**(1) 73:25
**improving**(1) 106:22
**inaccurate**(3) 25:20 69:13 69:14
**inch**(1) 69:3
**inches**(1) 19:18

**include**(3) 65:6 102:17 115:23
**included**(7) 41:14 41:15 41:23 65:11 77:24 104:1 110:25

**includes**(3) 39:15 83:17
**including**(8) 11:25 34:21 40:24 46:4 58:17 66:23 71:4 110:15

**inclusiveness**(1) 64:14
**incomplete**(1) 69:12
**inconsistent**(3) 31:9 33:9 94:8
**inconvenience**(1) 115:4
**incorporates**(1) 12:3
**incorrect**(1) 57:22
**incurred**(1) 100:5
**indeed**(3) 81:18 111:10 116:7
**indefinitely**(2) 10:3 19:17
**indicated**(7) 10:16 20:21 46:12 61:9 62:19 103:1 117:9

**indicates**(1) 29:19
**indicating**(1) 115:24
**indisputably**(1) 30:21
**individual**(21) 21:6 21:24 25:5 25:22 25:24 31:3 41:19 41:23 44:3 46:19 46:20 48:14 48:15 48:24 51:25 55:13 63:21 99:23 101:3 101:10 103:17

**individualized**(1) 90:7
**individually**(2) 26:21 92:1
**individuals**(12) 13:12 13:21 13:22 27:4 35:2 56:4 71:19 76:19 105:14 105:24 107:6 118:20

**ineligibility**(2) 117:8 117:20
**ineligible**(1) 117:11
**inevitable**(1) 94:4
**infeasible**(1) 19:16
**informally**(1) 17:3
**information**(18) 7:24 8:4 8:6 15:19 26:12 47:5 49:9 54:22 56:7 56:13 56:14 75:16 96:5 97:16 111:13 112:10 112:19 113:10

**informational**(1) 96:10
**inhibiting**(1) 46:7
**initial**(2) 16:10 118:8
**initially**(1) 55:17
**initiated**(1) 82:7
**input**(2) 36:11 46:13
**inquiries**(1) 51:7
**insistence**(1) 59:17
**instance**(1) 52:15
**instances**(3) 34:22 68:4 100:19
**instructions**(1) 47:11
**instructive**(3) 34:25 46:20 50:9
**insurance**(18) 25:7 30:14 30:14 30:24 45:12 45:15 46:6 51:10 55:24 91:16 91:22 93:8 93:13 93:18 93:20 110:25 116:12 118:10

**insurer**(1) 43:19
**intact**(2) 39:10 39:21
**intelligent**(1) 26:1
**intended**(1) 102:16
**intention**(2) 16:3 99:10
**interest**(7) 16:3 17:1 17:16 19:23 28:1 114:21 118:17

**interested**(4) 3:26 3:30 4:6 4:10
**interesting**(1) 65:12
**interests**(2) 114:13 115:4
**internal**(2) 48:5 51:16
**intervention**(1) 36:16
**into**(43) 6:22 12:20 13:23 17:18 18:22 20:17 20:21 21:23 23:10 23:19 23:21 24:13 25:13 27:16 28:19 28:23 32:6 35:11 41:18 46:16 47:1 48:4 49:12 49:21 49:24 50:14 55:5 57:6 57:8 57:12 61:23 64:3 66:17 86:22 91:4 91:9 91:12 94:10 95:6 103:17 104:15 106:2 115:22

**introduced**(1) 40:11
**introducing**(1) 106:10
**invaluable**(1) 35:20
**inventor**(1) 71:2
**invest**(1) 115:12
**invited**(3) 44:16 44:18 99:1
**inviting**(2) 92:5 105:16
**involve**(1) 103:23
**involved**(8) 32:19 63:13 65:18 66:23 66:25 71:3 86:5 119:15

**involvement**(1) 65:3
**involving**(1) 66:8
**irs**(1) 52:18
**isn't**(1) 94:13
**isn't**(1) 73:8
**issue**(15) 7:16 22:21 63:1 74:8 76:6 77:3 77:3 98:6 100:21 103:10 105:16 107:10 109:10

**issues**(17) 20:23 26:4 39:24 40:8 58:21 61:7 62:18 65:22 65:23 66:4 76:8 81:11 88:1 101:3 102:12 109:24 121:14

**it'll**(1) 107:23
**it's**(80) 5:4 5:23 7:6 7:17 9:16 9:16 11:4 11:24 14:17 14:20 16:3 17:16 20:14 21:11 21:24 23:9 24:4 24:7 26:23 27:12 29:2 29:25 30:25 31:7 31:9 31:10 32:1 32:25 33:13 33:14 34:17 34:25 37:14 37:19 40:3 40:21 46:20 50:7 50:9 53:18 54:17 94:10 95:16 95:21 96:1 96:6 96:8 96:10 96:24 97:2 97:3 97:5 97:9 97:20 99:9 99:25 100:7 100:17 100:18 100:20 100:25 101:12 102:6 103:23 104:3 104:9 106:19 106:19 107:9 108:19 109:9 109:11 109:17 110:10 112:21 118:6 120:21 121:4 121:8 121:16

**item**(2) 82:23 90:10
**its**(11) 10:24 10:24 11:1 39:13 40:9 45:10 50:16 56:10 60:12 62:8 113:21

**itself**(6) 10:10 12:2 26:11 80:1 114:8 119:2
**it's**(24) 56:1 56:19 64:23 67:5 68:21 70:2 73:4 73:6 73:19 73:25 75:5 76:6 77:2 79:11 79:25 81:23 84:14 84:17 85:9 86:8 86:9 86:24 91:17 91:22

**i'd**(8) 68:21 70:20 71:9 80:18 83:1 83:5 87:20 89:22

**i'll**(9) 58:2 67:3 67:12 69:4 69:6 74:25 74:25 80:21 87:5

**i'm**(28) 58:8 67:15 68:19 69:8 69:8 70:14 71:3 71:16 71:18 71:25 74:14 74:15 74:15 75:24 79:21 79:21 79:24 80:12 80:21 81:1 82:17 82:22 83:8 83:12 89:1 89:2 90:10 91:22 92:4

**i've**(13) 58:14 58:22 62:4 74:5 75:2 80:16 82:1 82:25 84:13 84:20 84:20 86:20 86:23

**jaime**(1) 3:2
**jams**(1) 60:20
**january**(17) 9:3 14:15 34:1 34:15 40:17 42:9 42:15 42:18 45:6 46:13 58:11 58:22 72:5 72:20 88:17 88:21 117:22

**jeopardize**(1) 116:15
**job**(1) 39:3
**john**(4) 4:15 37:9 68:21 73:19
**join**(6) 16:8 108:24
**joint**(2) 2:50 36:18
**jointly**(1) 1:8
**jones**(1) 3:30
**judge**(19) 1:20 1:21 32:25 35:9 43:25 47:14 55:9 57:13 74:23 78:19 80:6 80:23 95:11 107:16 119:10 119:20 120:3 121:11 121:16

**judges**(1) 120:24

**judgment**(1) 75:21
**judicial**(1) 120:23
**july**(2) 8:23 113:6
**jumped**(2) 84:10 86:4
**june**(7) 6:16 6:21 10:12 10:15 24:17 56:20 56:20

**jurisdiction**(2) 78:14 78:16
**just**(66) 5:12 12:17 15:23 18:10 18:25 23:9 23:24 24:4 24:10 24:24 25:20 25:25 28:17 38:13 40:11 54:8 54:9 54:20 61:19 62:14 63:20 68:4 72:13 74:21 76:11 76:12 76:14 76:19 77:25 80:16 82:1 82:7 83:9 84:14 84:25 85:4 85:5 85:7 85:11 87:5 87:7 87:21 90:2 93:23 94:7 94:8 94:21 94:22 96:8 96:23 97:2 97:15 98:8 100:24 102:13 102:15 104:13 104:14 104:23 104:23 105:3 107:8 107:18 110:7 118:25 120:14

**justifiable**(1) 88:24
**karen**(1) 47:15
**kcc**(1) 47:15
**keep**(6) 24:4 24:11 24:18 39:3 39:6 69:6
**keeps**(1) 83:16
**kelly**(1) 122:9
**kenney**(1) 2:20
**kept**(3) 39:1 60:21 65:18
**kevin**(1) 1:20
**key**(1) 51:21
**kind**(2) 22:1 67:8
**king**(4) 2:8 2:21 2:36 3:4
**knew**(10) 62:11 62:19 63:8 84:3 84:3 86:5 86:6 86:12 91:14 93:25

**know**(66) 11:18 15:20 16:8 16:14 16:24 20:2 20:12 21:13 23:6 25:7 29:2 30:11 35:9 38:4 46:20 47:21 55:8 59:6 59:17 60:14 62:9 62:10 62:23 64:15 64:20 65:19 67:17 68:16 72:24 74:14 77:3 80:12 80:17 81:8 83:15 85:15 86:14 87:24 89:10 89:15 91:15 91:23 93:17 93:23 94:1 94:22 96:24 97:20 98:24 99:5 103:18 103:19 109:7 119:20 120:25 121:13

**knowing**(5) 33:17 81:10 81:11 85:3 86:1
**knowledgeable**(2) 83:14 86:13
**known**(1) 86:24
**knows**(3) 6:4 43:5 65:12
**kodak**(1) 18:16
**kurichety**(1) 2:14
**laid**(1) 19:15
**landing**(2) 10:5 16:4
**large**(5) 58:13 58:13 58:17 70:24 111:2
**larger**(5) 19:18 19:20 23:6 26:20 91:9 91:12 106:20

**last**(5) 9:14 24:8 25:10 25:18 33:25 36:24 53:21 72:17 76:15 81:23 82:6 92:15 117:18

**lastly**(1) 113:15
**late**(2) 28:13 85:17
**lately**(1) 75:3
**later**(8) 11:16 20:9 27:11 37:16 75:16 78:17 80:21 86:11

**laughter**(7) 5:21 36:20 57:18 67:16 95:24 108:22 109:3

**law**(1) 3:34
**laws**(1) 83:15
**lawyer**(1) 70:15
**lawyers**(5) 25:25 54:10 84:1 84:2 84:4
**layton**(1) 2:5
**least**(8) 10:4 15:18 16:23 17:1 36:25 40:17 116:2 121:10

**leave**(3) 22:17 74:1 117:20
**led**(5) 35:22 36:1 44:10 61:16 84:12
**left**(4) 19:10 53:11 117:25 118:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **legal**(11) 17:6 20:11 23:15 39:24 47:22 61:7 65:22 69:3 69:11 112:25 113:22 | | **long-term**(16) 13:12 13:21 14:8 14:23 14:24 15:2 15:7 30:14 30:17 45:11 45:13 67:18 67:23 67:25 98:12 110:25 | | **match**(1) 67:14<br>**material**(2) 52:4 52:6<br>**matrices**(3) 41:23 41:25 42:3<br>**matter**(9) 18:17 24:4 69:5 69:12 80:22 98:19 98:20 114:11 122:6 | | **middle**(6) 16:12 23:23 61:3 85:20 86:10 86:24 | |

*(index, four columns — full entries below in reading order)*

**legal**(11) 17:6 20:11 23:15 39:24 47:22 61:7 65:22 69:3 69:11 112:25 113:22

**legally**(1) 17:15
**length**(1) 9:17
**lengthier**(1) 119:9
**lengthy**(1) 109:25
**less**(9) 9:5 17:15 25:6 69:6 100:21
**less-expensive**(1) 88:12
**lessen**(1) 22:9
**let**(10) 32:8 35:19 47:21 71:8 84:21 87:5 87:21 98:17 106:22 115:14

**let's**(3) 105:6 105:6 107:23
**letter**(9) 21:3 30:22 30:23 51:15 88:8 92:13 92:21 96:14 101:6

**letters**(3) 30:13 64:6 93:18
**levin**(12) 8:15 9:9 36:5 36:9 38:17 38:22 39:1 39:7 61:4 62:1 111:19 111:20

**liabilities**(1) 60:3
**liability**(5) 7:15 11:8 20:11 55:8 59:25
**liberty**(1) 1:34
**lieu**(1) 31:23
**life**(9) 17:5 30:13 30:17 30:23 45:11 45:13 76:20 79:18 110:25

**light**(2) 7:19 10:7
**like**(38) 5:19 9:14 33:6 36:17 36:25 37:24 39:6 58:14 60:24 65:15 66:21 66:22 68:17 68:22 70:20 71:9 79:21 79:24 82:4 83:1 83:5 84:18 86:21 87:20 89:22 93:2 94:21 94:22 101:6 105:10 107:6 107:11 107:17 109:14 111:1 120:2 120:24 121:2

**likely**(7) 40:3 85:9 85:10 86:8 86:9 103:2 115:2

**limit**(1) 117:15
**limited**(3) 46:5 63:24 64:20
**line**(4) 42:12 88:19 90:9 100:3
**links**(3) 43:13 43:18 43:20
**linn**(1) 4:7
**liquidate**(1) 62:6
**liquidated**(2) 12:17 20:9
**liquidating**(3) 50:8 60:1 62:5
**liquidation**(3) 8:11 112:21 112:23
**liquidations**(1) 58:18
**lisa**(7) 1:32 2:13 5:11 5:17 58:6 89:21 104:22

**list**(4) 84:24 90:3 93:16 99:11
**listed**(3) 12:22 54:24 90:12
**listen**(3) 44:22 44:24 74:15
**listening**(2) 71:5 88:17
**literally**(1) 114:3
**litigate**(4) 7:13 14:2 15:21 100:15
**litigation**(24) 7:18 14:5 15:17 17:2 17:15 17:18 17:19 17:21 17:22 18:13 20:17 23:7 29:12 39:25 51:4 51:4 57:2 61:24 63:5 110:12 115:2 115:3 115:9 116:5

**litigations**(1) 90:19
**little**(12) 36:12 58:11 67:12 69:12 83:8 86:1 86:6 90:20 93:3 104:21 106:4 109:6

**live**(1) 45:2
**lived**(1) 90:18
**lives**(1) 99:3
**llc**(3) 1:41 11:3 11:3
**llp**(6) 1:24 2:40 3:1 3:14 3:39 4:2
**lockbox**(1) 2:22
**log**(1) 60:20
**logical**(1) 42:15
**long**(12) 6:5 6:6 9:16 14:15 18:15 35:9 59:2 61:9 61:14 68:7 121:3 121:5

**long-term**(16) 13:12 13:21 14:8 14:23 14:24 15:2 15:7 30:14 30:17 45:11 45:13 67:18 67:23 67:25 98:12 110:25

**longer**(6) 19:14 23:7 27:25 50:19 62:15 79:12

**look**(10) 13:22 20:14 24:18 25:14 42:3 46:22 79:25 84:20 85:15 88:15

**looked**(2) 44:13 102:5
**looking**(2) 71:11 84:1
**lose**(3) 87:14 87:14 91:20
**losing**(4) 22:14 27:21 31:14 31:15
**loss**(6) 21:12 31:7 50:6 54:1 54:2 93:13
**lost**(3) 86:20 86:20 111:6
**lot**(20) 5:24 18:20 19:10 26:12 38:8 54:12 58:12 58:13 58:16 58:19 58:19 58:21 59:8 59:9 61:3 75:2 97:12 100:10 101:3 121:1

**low**(1) 114:22
**lower**(2) 67:12 92:22
**lowest**(2) 17:24 114:23
**ltb**(1) 58:17
**ltd**(12) 39:15 41:22 44:17 44:19 48:24 49:7 49:11 49:15 49:19 49:21 49:23 55:7

**ltd'ers**(1) 67:24
**ltv**(1) 112:24
**lucky**(1) 13:17
**lunch**(2) 107:22 107:24
**luton**(1) 3:2
**luxury**(1) 101:19
**mace**(1) 1:39
**made**(33) 10:13 10:20 12:14 14:20 16:7 19:2 20:18 24:6 24:22 25:24 44:5 56:22 66:19 69:11 73:13 80:8 80:9 88:15 88:21 89:4 89:15 91:13 92:2 92:20 93:19 99:11 101:5 101:7 102:3 103:21 106:11 112:17 116:18

**mail**(1) 90:14
**mailed**(1) 90:5
**mailing**(1) 90:14
**main**(1) 39:3
**maintained**(2) 8:21 93:8
**maintaining**(1) 19:11
**maintains**(1) 43:7
**major**(1) 113:24
**majority**(2) 22:13 45:23
**make**(39) 15:10 15:18 15:23 15:25 16:4 17:17 18:9 25:12 25:16 31:2 33:22 40:25 43:3 45:14 49:3 49:10 50:23 59:23 60:8 62:20 64:9 65:20 70:20 80:24 81:7 81:9 89:4 92:18 93:23 96:7 97:15 97:24 101:24 106:23 109:16 110:16 112:7 118:25 120:24

**makes**(2) 106:3 120:1
**making**(6) 18:2 18:20 60:9 64:14 71:19 114:22

**malfunction**(1) 59:15
**manage**(2) 84:7 84:8
**management**(1) 4:6
**managers**(1) 117:2
**manhattan**(1) 2:28
**manner**(17) 6:5 12:16 19:17 22:13 23:11 37:10 38:16 40:7 40:7 55:7 59:2 63:25 64:4 85:14 86:24 88:15 89:10

**marathon**(1) 38:19
**march**(8) 3:22 42:23 42:24 47:9 47:14 54:21 70:7 72:8

**mark**(4) 2:20 2:34 36:2 37:2
**market**(3) 1:13 1:27 45:12
**marsal**(1) 35:21
**martin**(4) 17:11 17:20 114:19 115:6
**marvel**(1) 114:21

**match**(1) 67:14
**material**(2) 52:4 52:6
**matrices**(3) 41:23 41:25 42:3
**matter**(9) 18:17 24:4 69:5 69:12 80:22 98:19 98:20 114:11 122:6

**matters**(5) 80:21 94:20 98:21 104:1 116:19
**matz**(10) 2:27 32:18 35:17 61:2 66:11 66:12 67:2 67:8 67:8 67:9

**mauro**(1) 3:27
**maximize**(1) 60:11
**maximized**(1) 60:11
**maximizing**(1) 116:13
**may**(31) 6:15 10:12 14:8 15:8 24:7 24:9 39:4 41:1 45:20 46:5 46:6 52:14 52:23 56:19 57:21 63:1 63:1 71:7 73:17 75:10 77:22 82:6 84:9 85:13 87:25 88:20 96:25 98:17 108:6 114:23 121:14

**maybe**(7) 75:20 79:24 90:19 91:6 98:1 106:3 106:12

**mccarter**(1) 2:32
**mccloy**(2) 2:26 3:18
**mean**(4) 84:14 88:24 100:12 120:13
**meaning**(3) 47:23 59:20 80:14
**meaningful**(1) 43:9
**means**(1) 53:8
**meant**(3) 31:16 53:25 76:22
**measurable**(1) 25:3
**measure**(1) 54:20
**mechanical**(1) 24:17
**mechanism**(3) 6:15 15:15 77:11
**mediation**(7) 19:21 39:7 59:3 61:1 111:17 113:18 113:18

**mediator**(8) 8:15 9:9 36:8 38:17 39:3 51:3 61:17 111:19

**mediator's**(1) 61:20
**medical**(32) 21:21 22:3 22:14 29:16 30:2 34:9 41:14 42:8 42:9 42:23 44:2 44:17 45:4 45:11 45:15 45:18 46:4 46:12 46:16 46:18 46:22 46:23 46:25 51:11 52:17 63:23 64:16 65:10 76:20 79:13 79:22 110:25

**medicare**(16) 43:14 43:16 43:17 43:17 45:24 52:15 52:23 85:16 85:19 85:21 85:25 86:15 87:1 87:2 88:11 91:23

**medicare-age**(1) 85:19
**meet**(2) 16:12 17:10
**meeting**(3) 8:5 8:5 40:12
**meetings**(14) 26:9 26:10 27:1 38:19 44:8 44:10 44:14 44:20 44:24 44:25 47:4 56:11 64:13 113:12

**meets**(1) 62:2
**member**(2) 40:11 57:5
**members**(8) 10:24 26:1 37:1 37:17 44:6 44:7 55:16 55:17

**mentioned**(5) 10:11 30:12 39:22 51:17
**mentioning**(1) 108:15
**merits**(2) 69:21 100:21
**message**(1) 19:22
**met**(6) 14:14 19:1 47:6 47:19 47:23 48:1
**metaphors**(1) 99:5
**method**(1) 34:14
**methodology**(3) 42:6 48:10 48:22
**methods**(1) 41:5
**metropolitan**(1) 44:14
**michael**(1) 4:7
**microphone**(1) 39:14
**microphones**(1) 74:25
**mid-year**(3) 9:4 23:2 25:9

**middle**(6) 16:12 23:23 61:3 85:20 86:10 86:24

**might**(24) 11:18 11:19 13:10 14:2 14:5 15:16 16:22 21:6 25:14 29:9 29:20 43:17 43:21 46:3 52:24 63:4 65:1 68:13 80:15 84:24 85:11 93:17 103:2 105:21

**mike**(1) 37:9
**milbank**(2) 2:26 3:18
**mile**(2) 64:12 64:13
**miles**(1) 5:19
**milin**(1) 2:43
**military**(1) 116:11
**miller**(7) 1:25 5:5 5:6 5:9 5:9 5:14 5:15
**million**(7) 6:20 40:24 41:2 56:22 70:23 71:1 113:7

**mind**(1) 22:22
**minute**(5) 7:6 34:10 37:7 43:12 74:20
**minutes**(4) 69:2 69:7 107:20 107:23
**mispronouncing**(1) 53:4
**missed**(1) 40:12
**mitigate**(1) 10:7
**modification**(1) 112:6
**modifications**(1) 112:11
**modify**(1) 119:11
**modifying**(1) 119:8
**moment**(9) 35:19 36:10 48:8 54:8 74:21 74:23 85:9 89:2 119:14

**money**(17) 13:8 30:7 30:10 31:1 31:9 46:23 48:3 63:9 73:6 79:12 84:1 91:2 91:2 93:1 93:2 106:25 113:8

**monitor**(1) 3:39
**montgomery**(1) 114:14
**month**(11) 7:2 10:18 14:17 24:5 24:5 24:11 24:11 24:14 42:24 85:17 85:22

**monthly**(1) 20:14
**months**(10) 18:17 19:18 19:24 20:15 23:18 24:19 24:25 51:2 61:20 94:3

**moore**(1) 111:20
**more**(25) 5:25 16:20 22:4 22:18 24:25 25:10 25:21 26:6 27:2 28:14 30:6 34:3 34:20 34:20 37:16 43:24 50:12 65:22 79:12 98:3 101:11 101:11 106:4 109:6 113:17

**morning**(25) 5:3 5:5 5:6 5:16 5:17 6:12 33:1 33:2 33:7 33:9 34:2 38:20 38:21 58:5 58:6 66:11 66:12 66:14 66:19 67:10 67:11 68:23 79:1 79:2 79:2

**morris**(2) 1:24 5:10
**most**(8) 45:23 60:10 62:8 68:2 106:18 111:21 112:9 112:18

**mother**(1) 85:6
**motion**(33) 6:11 7:21 8:23 9:7 9:13 10:10 31:5 39:23 42:25 43:9 50:2 56:21 63:8 66:16 72:16 72:20 96:9 97:21 97:24 98:4 100:6 101:15 101:24 102:3 102:25 103:21 105:12 107:7 111:24 113:6 118:9

**motions**(5) 16:15 18:15 90:3 90:4 90:15
**motivating**(1) 93:12
**mouth**(2) 93:12 100:13
**move**(14) 17:5 24:6 25:17 28:19 31:21 32:5 36:22 46:15 57:5 65:20 73:12 75:1 105:3 107:11
**moved**(8) 6:21 10:14 16:10 16:10 18:2 27:9 27:11 103:12

**moving**(2) 21:13 53:8
**mrs**(1) 95:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **much**(19) 18:14 47:1 51:19 62:15 64:3 73:7 78:7 78:22 82:14 82:16 87:4 100:21 108:16 110:8 120:18 120:20 121:9 121:13 121:16 | | **not**(163) 11:4 11:5 11:6 12:23 12:24 14:12 15:17 18:2 21:22 22:9 23:15 24:3 24:4 24:17 24:21 25:25 27:4 27:12 27:25 28:24 28:24 29:5 29:13 30:1 30:8 30:10 30:14 30:24 30:24 30:25 31:1 31:9 31:10 35:4 35:5 36:25 39:4 40:3 43:21 46:3 46:5 46:14 47:19 47:23 47:25 49:23 51:15 52:21 52:24 53:5 53:5 53:11 53:12 53:23 60:18 62:14 63:1 63:4 64:2 64:5 64:9 66:1 68:4 69:4 69:14 70:10 70:14 70:19 71:18 71:23 72:13 73:1 74:2 74:8 75:11 75:20 76:6 77:3 77:3 77:8 77:24 79:3 79:14 79:20 79:22 79:25 80:8 80:10 81:8 81:10 81:11 81:12 81:13 82:17 82:17 84:2 85:13 85:14 86:19 86:24 87:9 88:20 89:2 91:22 91:22 92:4 92:5 92:5 92:12 92:14 92:15 92:24 93:5 94:10 95:5 95:16 96:1 96:6 97:14 98:21 98:23 99:2 99:17 99:18 99:21 99:24 99:25 100:1 100:4 100:7 100:17 100:18 100:21 100:25 101:14 101:21 101:24 102:7 102:20 102:21 102:24 103:7 103:11 104:1 104:4 105:23 106:10 106:13 108:15 109:10 110:13 111:23 113:5 114:2 114:7 114:7 115:11 115:15 117:16 118:10 119:22 120:21 | | **objectors**(6) 11:15 68:14 68:19 76:16 104:24 117:16 | | **organize**(1) 107:20 |
| **multiple**(1) 19:3 | | | | **objects**(2) 51:6 117:19 | | **original**(2) 16:7 43:5 |
| **must**(2) 114:11 114:19 | | | | **obligation**(1) 81:5 | | **originally**(2) 57:1 77:23 |
| **myself**(4) 58:13 58:23 61:1 102:13 | | | | **observe**(1) 34:24 | | **other**(66) 10:7 12:13 13:20 18:8 18:15 20:6 20:17 25:1 26:16 30:12 33:23 34:10 35:14 39:18 44:3 44:7 47:18 50:24 50:24 51:10 51:25 58:23 59:8 59:13 60:4 61:5 61:7 61:25 62:23 63:6 63:13 63:23 65:9 67:22 69:11 75:10 76:16 83:4 87:22 88:1 89:5 89:6 89:10 89:11 90:19 90:20 90:21 91:25 92:2 93:2 93:24 94:20 96:5 98:4 98:21 99:23 102:13 103:11 103:18 104:24 105:10 110:3 110:14 113:2 114:2 116:16 |
| **name**(3) 21:2 29:8 53:5 | | | | **observes**(1) 111:12 | | |
| **nature**(2) 26:23 63:18 | | | | **obstruct**(1) 69:17 | | |
| **nearly**(3) 50:3 56:21 83:11 | | | | **obtain**(1) 46:7 | | |
| **necessarily**(1) 63:5 | | | | **obtained**(1) 118:9 | | |
| **necessary**(18) 15:24 17:12 18:9 19:5 19:11 23:12 33:22 48:3 54:19 66:4 70:11 78:16 83:6 111:14 112:2 112:11 112:12 114:11 | | | | **obvious**(2) 64:23 67:5 | | |
| | | | | **obviously**(20) 9:19 10:9 16:22 19:20 23:8 26:11 55:3 59:22 63:6 63:8 64:25 65:18 66:5 66:7 77:1 83:19 102:19 103:2 103:21 105:9 | | **others**(5) 34:7 71:17 98:6 112:21 114:13 |
| **need**(23) 7:15 8:9 36:17 40:5 40:5 42:12 42:12 45:25 46:4 49:3 51:11 51:19 55:22 71:6 74:4 75:21 82:17 82:19 102:22 106:25 119:11 119:25 121:14 | | | | | | **otherwise**(3) 14:13 65:2 121:15 |
| | | | | **occasions**(2) 73:23 73:23 | | **ought**(2) 52:8 89:18 |
| | | | | **occurred**(3) 13:17 29:25 59:1 | | **our**(54) 16:3 19:9 20:21 21:24 22:22 27:7 30:10 36:1 37:16 38:1 38:5 38:22 38:23 39:22 45:1 47:12 48:9 48:13 48:16 49:15 49:18 49:21 50:1 50:12 52:16 52:18 52:25 55:8 56:24 59:19 59:24 60:3 60:22 61:12 61:16 62:6 62:18 62:25 65:5 65:11 67:21 67:23 67:24 67:25 68:5 71:22 72:11 75:21 75:21 81:12 89:17 102:6 102:25 112:21 |
| | | | | **odd**(1) 40:24 | | |
| **needed**(14) 36:16 36:22 40:18 42:21 47:6 62:12 62:24 62:25 63:7 63:10 63:11 63:15 109:9 115:19 | | | | **off**(10) 19:15 24:5 49:11 49:12 79:19 84:23 85:8 87:1 89:11 98:19 | | |
| **needing**(1) 61:17 | | | | **offer**(9) 24:6 24:22 24:22 45:13 47:8 70:4 79:20 83:17 101:20 | | |
| **needs**(6) 38:22 40:1 40:7 63:24 88:18 106:21 | | **note**(4) 18:1 39:6 66:15 90:24 | | | | |
| | | **noted**(3) 35:3 73:24 101:4 | | **offered**(4) 9:6 19:4 23:20 93:1 | | |
| | | **noteholder**(1) 59:21 | | **offering**(1) 51:24 | | **out**(40) 9:11 21:24 24:6 24:9 25:6 26:17 28:9 30:4 40:19 41:4 42:17 43:3 46:11 47:2 48:12 49:20 50:18 55:12 56:1 56:10 57:21 57:23 63:2 64:10 65:1 69:21 73:21 74:5 75:18 84:14 85:12 91:25 99:12 102:14 105:17 105:19 106:25 113:7 116:11 117:9 |
| **negatively**(1) 70:19 | | **notes**(2) 113:21 113:23 | | **offers**(1) 16:8 | | |
| **neglect**(1) 108:12 | | **nothing**(6) 33:8 70:3 84:21 94:13 100:5 109:8 | | **office**(3) 17:1 71:22 75:17 | | |
| **negotiate**(2) 36:24 37:14 111:16 | | | | **officer**(1) 31:22 | | |
| **negotiated**(3) 82:11 113:15 116:4 | | | | **officers**(1) 12:5 | | |
| **negotiating**(4) 59:13 60:4 65:17 113:19 | | **notice**(34) 18:21 34:5 34:6 34:10 34:14 34:15 34:15 34:16 34:19 34:20 34:23 35:1 35:11 41:7 41:24 43:2 43:3 45:19 46:10 47:21 48:1 48:11 48:12 72:3 72:6 72:7 73:10 73:20 77:24 90:7 90:17 114:17 121:6 | | **official**(8) 4:1 43:7 48:2 58:8 66:5 66:18 66:20 66:21 | | **outcome**(1) 50:8 |
| **negotiation**(4) 39:23 65:19 66:8 95:6 | | | | | | **outline**(1) 108:13 |
| **negotiations**(13) 16:9 32:19 36:11 38:9 38:16 38:17 51:2 59:3 61:19 65:3 108:15 109:25 113:16 | | | | **often**(5) 18:16 36:17 64:2 65:12 103:16 | | **outlined**(1) 61:24 |
| | | | | **okay**(17) 14:10 32:12 32:16 35:24 38:7 57:11 57:24 69:2 77:20 78:18 83:23 86:8 87:23 90:8 92:7 94:16 95:21 | | **outside**(1) 34:23 |
| **neil**(2) 2:41 33:3 | | **notices**(5) 14:21 25:13 55:22 57:21 90:4 | | | | **outstanding**(5) 109:18 109:24 110:8 111:19 111:21 |
| **net**(1) 48:3 | | **noticing**(1) 47:12 | | **old**(3) 74:1 75:7 79:5 | | |
| **networks**(1) 1:9 | | **notifying**(1) 47:18 | | **older**(4) 67:23 67:25 79:12 82:2 | | |
| **never**(5) 15:15 24:22 80:14 81:4 101:12 | | **notion**(1) 95:3 | | **once**(5) 17:7 27:18 50:19 50:20 56:8 | | **over**(20) 5:13 7:23 16:18 17:13 24:23 24:23 27:10 27:11 28:12 44:19 44:20 61:6 62:11 70:21 87:18 89:5 96:25 97:2 104:22 |
| **never-ending**(1) 101:12 | | **november**(3) 86:5 86:7 117:21 | | **one**(54) 13:24 17:2 2:15 2:28 2:44 5:25 13:1 14:7 14:16 23:11 27:16 27:73 28:22 32:13 38:12 39:17 40:1 40:13 40:22 42:12 45:7 46:8 47:20 48:8 49:3 49:6 51:17 51:22 52:24 57:11 57:16 57:16 59:19 69:23 70:3 70:21 73:24 83:4 83:4 85:22 86:2 87:21 90:23 93:12 96:7 97:10 98:13 99:17 101:1 101:1 105:14 106:19 110:2 114:6 | | **overrule**(1) 115:17 |
| **new**(16) 13:25 2:16 2:29 2:45 3:35 9:14 25:13 33:22 36:17 51:20 76:18 76:18 76:22 96:24 106:10 116:25 | | **now**(30) 7:23 9:6 15:10 15:19 17:4 19:7 20:9 23:23 27:25 31:5 33:10 53:12 55:11 61:13 62:21 66:1 68:20 70:9 76:24 82:18 86:21 93:1 94:4 94:11 95:12 98:16 105:12 107:18 113:14 115:14 | | | | **overruled**(6) 71:15 116:6 116:17 117:17 118:15 118:22 |
| **next**(11) 17:5 21:19 22:24 38:21 79:21 79:22 92:13 106:4 117:7 119:21 119:23 | | | | | | |
| | | | | **one-off**(1) 91:6 | | **overwhelmingly**(1) 50:5 |
| **nice**(3) 19:25 68:4 91:11 | | **number**(21) 34:17 38:1 39:24 40:15 41:5 41:7 41:7 41:21 46:4 47:17 48:11 62:12 64:6 64:21 68:17 86:3 88:16 88:18 107:11 107:12 108:11 | | **ones**(3) 28:22 76:21 | | **overy**(1) 3:39 |
| **nichols**(2) 1:24 5:10 | | | | **only**(21) 14:12 16:17 28:1 30:18 35:2 48:8 50:9 50:10 51:22 64:5 70:16 74:8 77:22 79:9 81:6 93:23 96:9 107:23 110:13 114:5 114:23 | | **owe**(1) 17:15 |
| **night**(3) 61:3 72:17 76:15 | | | | | | **own**(6) 56:10 71:5 71:6 83:7 100:15 117:4 |
| **nights**(1) 59:3 | | | | | | **p.m**(3) 108:4 108:4 122:1 |
| **non**(1) 18:24 | | **numbers**(2) 44:21 44:25 | | | | **packages**(1) 56:9 |
| **non-consensual**(1) 9:4 | | **numerous**(4) 58:17 61:1 65:16 113:19 | | **open**(1) 88:22 | | **page**(2) 47:20 105:7 |
| **non-issue**(1) 93:10 | | **nusrpc**(1) 85:2 | | **opening**(1) 10:25 | | **pages**(2) 38:10 72:18 |
| **non-qualified**(1) 92:12 | | | | **operated**(1) 89:6 | | **paid**(6) 21:22 23:17 53:15 100:22 108:20 113:7 |
| **none**(1) 100:13 | | **object**(5) 35:5 35:6 90:1 115:23 117:10 | | **operating**(12) 39:16 47:10 71:18 71:21 72:8 72:10 73:10 80:18 102:4 105:11 121:2 121:9 | | |
| **nonqualified**(5) 96:2 97:11 97:14 99:18 104:5 | | **objected**(5) 48:8 51:23 114:3 115:24 116:9 | | | | |
| | | **objection**(33) 21:1 21:19 21:22 22:18 22:24 22:25 23:5 29:8 29:19 32:9 42:25 51:5 53:21 54:22 57:8 70:16 71:13 71:14 73:21 74:7 74:14 75:11 79:4 79:6 80:16 80:24 89:17 90:16 94:19 115:15 116:16 116:20 118:15 | | **oppose**(3) 95:3 101:8 102:6 | | |
| **normally**(2) 71:11 109:16 | | | | **opposite**(2) 58:19 89:4 | | **papers**(6) 38:2 38:5 39:22 49:18 100:14 102:5 |
| **nortel**(40) 1:9 3:3 4:20 33:12 33:24 35:5 42:9 44:15 45:9 45:24 50:6 51:20 53:5 53:7 53:9 53:11 53:12 69:22 69:24 70:1 70:4 70:5 70:10 70:12 74:2 74:6 79:15 79:17 81:4 81:4 81:5 81:6 81:9 83:25 86:18 89:7 110:23 111:2 117:11 117:16 | | | | **optimally**(1) 25:6 | | |
| | | | | **option**(6) 15:17 60:9 67:23 68:1 68:2 90:23 | | **paradigm**(1) 95:6 |
| | | **objections**(35) 15:11 16:18 20:20 20:22 25:1 27:3 31:19 35:2 50:2 50:10 50:14 53:3 54:8 63:25 64:3 64:6 64:21 68:17 68:18 71:14 76:17 82:25 114:5 115:14 115:16 115:17 115:18 115:19 115:22 116:3 116:6 116:8 117:7 117:17 118:14 | | **order**(28) 11:5 12:22 18:3 34:6 34:17 34:19 34:20 37:22 41:6 41:24 43:3 43:6 43:19 46:10 48:12 55:10 55:11 57:15 72:3 101:21 114:10 118:18 118:23 119:2 119:7 119:8 120:14 121:19 | | |
| **nortel's**(2) 27:8 117:14 | | | | | | **parallel**(3) 13:11 13:16 13:17 |
| **nortel's**(1) 69:11 | | | | | | **paramount**(1) 115:4 |
| **north**(3) 1:27 2:8 44:10 | | **objective**(9) 10:24 42:4 42:10 42:20 48:15 48:21 80:13 88:18 116:22 | | | | **parent**(2) 85:11 87:11 |
| | | | | | | **park**(1) 2:15 |
| | | **objector**(1) 105:14 | | **ordered**(1) 117:17 | | **part**(32) 11:14 11:20 12:12 12:15 13:6 21:11 23:9 25:2 29:1 40:13 41:13 49:13 52:15 52:23 60:15 60:19 65:14 69:18 69:24 70:17 81:13 81:14 83:25 87:16 92:14 93:2 99:24 100:4 100:6 100:7 101:24 118:18 |
| | | | | **orderly**(2) 63:11 63:16 | | **partial**(1) 46:24 |
| | | | | **organization**(1) 79:19 | | **partially**(1) 41:17 |
| | | | | | | **participant**(4) 41:22 77:19 91:6 121:10 |
| | | | | | | **participants**(6) 39:15 44:19 48:24 49:15 49:20 55:7 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

participate(19) 13:2 14:18 14:19 15:3 21:16 27:19 28:2 29:16 30:3 39:16 49:1 53:14 76:10 88:19 90:25 91:1 101:1 117:11 118:12

participated(3) 13:2 44:20 113:17

participating(3) 16:19 27:21 29:13

participation(2) 53:23 89:24

particular(7) 22:21 64:3 71:10 71:19 88:22 109:8 111:4

particularity(1) 49:19

particularly(7) 58:23 66:1 67:23 67:25 68:12 72:18 72:21

particulars(1) 72:25

parties(20) 16:13 20:5 37:23 38:22 47:18 60:23 61:22 62:17 63:12 63:24 65:6 66:23 66:25 67:22 69:11 72:10 109:11 110:18 112:14 113:19

partner(1) 9:21

parts(1) 77:23

party(5) 3:26 3:30 4:6 4:10 69:15

passes(1) 17:25

past(3) 18:7 100:12 110:6

patent(2) 70:24 71:2

path(1) 7:5

patience(2) 65:16 121:6

patterson(1) 3:35

pause(2) 35:13 35:19

pay(6) 71:5 56:22 63:22 73:5 89:2 100:16

paying(8) 11:10 13:8 17:13 19:13 25:2 28:7 52:4 116:14

payment(17) 6:19 6:19 10:4 10:13 10:15 10:24 11:20 11:24 12:25 13:5 20:9 21:8 23:15 40:25 51:25 53:20 116:10

payments(6) 10:20 11:9 17:13 17:17 18:2 18:7

pbgc(5) 70:10 79:9 79:10 92:13 99:21

peers(1) 70:20

peg(1) 3:31

penalized(3) 85:17 85:19 86:19

pending(1) 94:14

pennsylvania(2) 1:43 2:44

pension(10) 70:9 79:9 79:11 81:11 86:2 92:12 99:18 103:5 103:19 104:5

pension-related(1) 99:23

pensions(6) 92:12 96:3 97:11 97:12 97:14 102:17

people(79) 11:16 12:5 13:18 14:8 14:14 15:4 15:18 16:15 16:19 16:22 17:4 18:21 19:13 19:17 22:1 22:11 22:13 24:24 25:12 25:15 27:2 28:12 31:6 31:10 34:21 35:2 35:13 39:4 40:2 40:7 41:22 42:4 42:8 43:14 43:20 44:19 44:20 44:21 44:23 47:9 49:10 49:22 50:10 50:19 50:23 54:1 55:22 56:11 61:21 64:14 76:18 76:21 83:9 85:13 85:14 86:2 86:5 87:5 87:5 88:15 88:23 89:5 89:6 89:10 89:15 90:5 90:23 93:2 93:3 97:12 98:12 101:2 101:6 102:20 103:12 104:15 105:18 108:12 109:14

per(3) 3:46 4:10 4:14

percentage(1) 116:1

perception(1) 26:20

perfectly(2) 74:12 78:21

perhaps(1) 52:22

period(2) 23:7 55:5

permissible(1) 49:25

permission(1) 5:12

permit(1) 112:12

permitted(1) 118:12

persisted(1) 110:20

person(10) 14:23 38:19 44:20 48:8 48:19 49:6 59:13 70:2 99:3 114:6

persona(1) 4:14

personal(8) 21:15 22:8 22:9 83:7 91:11 91:13 92:20 105:25

personally(3) 71:1 73:21 93:25

persons(2) 48:17 103:8

perspective(6) 33:7 39:10 63:5 66:2 66:6 70:11

petition(17) 83:12 83:13 83:16 83:18 86:4 86:11 86:12 86:21 87:17 87:18 88:16 89:12 89:13 92:3 94:24 112:5 117:13

philosophy(1) 120:23

phone(9) 39:5 43:11 44:21 50:3 75:10 80:17 104:25 105:15 105:24

pick(4) 14:22 15:1 39:5 79:13

pilot(1) 103:5

pizza(1) 61:13

place(6) 9:17 16:12 38:18 38:18 95:8 111:17

placed(1) 21:7

plan(76) 10:11 25:4 25:8 27:24 27:24 28:1 28:2 28:11 28:12 28:22 28:23 29:16 29:19 32:1 34:9 41:14 41:15 41:18 42:9 42:23 44:2 45:4 45:4 45:18 46:13 46:16 46:25 49:6 49:7 49:23 64:16 72:18 76:17 79:9 79:20 79:23 82:12 82:18 82:23 83:8 83:10 83:11 83:24 84:5 84:14 84:15 84:17 85:2 85:2 85:3 85:8 85:23 86:9 86:16 86:17 86:18 86:18 87:1 87:2 89:11 91:1 91:2 91:3 91:4 94:24 96:22 99:18 101:1 103:5 103:19 103:19 105:25 116:1 117:21 117:25 118:8

planning(3) 37:21 37:22 68:5

plans(61) 6:14 7:13 7:25 8:6 8:7 8:9 8:24 9:5 10:8 12:3 12:6 13:1 13:25 14:2 14:3 14:24 15:22 16:1 16:19 18:23 19:19 19:17 23:2 23:13 25:17 26:15 27:16 27:18 27:20 28:7 28:14 28:18 28:20 28:21 29:20 30:20 31:5 42:16 45:10 53:8 54:6 62:21 63:15 72:17 76:15 76:20 79:22 85:21 85:23 99:21 100:1 103:18 104:5 106:14 111:9 111:10 113:7 117:14 117:14

play(1) 67:6

plaza(3) 1:34 2:28 2:44

pleadings(1) 90:15

please(6) 5:2 5:4 74:22 105:7 108:5 119:13

pleased(2) 82:12 118:23

pleasure(5) 5:23 37:15 104:3 110:5 121:8 121:17

podium(4) 32:17 58:3 75:1 75:6

point(25) 8:14 9:24 11:11 19:10 23:25 25:14 25:18 27:17 28:18 28:24 36:9 53:6 62:13 69:19 70:9 77:8 79:17 91:15 91:16 100:14 101:13 102:13 107:5 111:23 112:25

pointed(1) 63:2

points(7) 22:25 27:9 60:20 60:20 89:22 91:18 105:10

policies(2) 43:17 45:12

policy(3) 43:21 44:17 47:8

pool(2) 41:22 49:11

population(2) 22:13 40:2

populations(1) 68:5

portion(3) 70:24 75:20 119:7

portions(1) 77:25

pose(1) 35:19

position(16) 7:12 7:13 7:17 15:21 16:11 17:15 20:4 20:10 23:15 53:22 53:24 63:3 87:9 87:12 101:15 111:9

positions(5) 9:23 16:7 17:21 59:4 61:22

positive(1) 50:6

possibility(2) 107:22 111:11

possible(8) 7:25 18:22 45:8 51:20 60:2 60:5 60:10 77:2

possibly(1) 6:15

post(1) 52:5

post-this(1) 66:1

postage(1) 47:12

posted(3) 43:8 43:9 48:2

pot(2) 94:10 107:1

potential(6) 17:19 34:9 41:14 42:23 111:5 114:4

ppearances(3) 1:23 2:1 2:47

practice(3) 39:23 70:2 72:9

practitioners(1) 111:21

praise(1) 37:13

pre(2) 45:25 87:8

pre-condition(1) 87:2

pre-established(1) 87:3

pre-existing(4) 46:6 91:18 91:21 93:6

pre-visteon(1) 7:9

precedent(2) 14:1 52:9

prefer(1) 10:3

prejudging(1) 100:13

prejudice(2) 77:12 77:18

preliminarily(1) 40:17

premium(2) 29:24 46:24

premiums(4) 41:17 52:15 52:20 52:24

prepaid(1) 47:12

prepare(1) 55:12

prepared(5) 55:25 68:19 69:8

present(2) 82:5 117:10

presentation(1) 37:16

presenting(1) 9:25

preserving(1) 76:11

press(1) 7:18

presume(1) 88:15

prevents(1) 55:23

previously(3) 12:5 31:20 32:15

principal(3) 9:10 10:25 31:22

prior(7) 16:8 18:13 69:6 69:22 91:2 92:17 112:5

private(2) 51:15 99:22

pro(9) 3:8 3:46 3:46 4:10 4:10 4:14 4:14 68:18 68:19

probability(1) 115:1

probably(9) 58:8 65:23 79:17 81:2 84:16 86:24 99:8 107:18 107:23

problem(4) 84:18 85:24 86:25 120:21

problems(1) 87:6

procedures(11) 34:16 34:17 34:20 35:11 41:6 41:24 43:3 45:19 46:10 48:12 72:3

proceed(4) 17:22 71:18 97:20 104:8

proceeded(1) 82:6

proceeding(2) 69:16 72:10

proceedings(4) 1:19 1:47 5:13 122:6

proceeds(7) 17:12 19:22 30:3 42:14 51:13 53:14 89:24

process(71) 7:21 9:11 9:16 9:17 13:9 18:3 21:11 26:5 26:23 33:15 33:18 33:18 34:11 35:10 35:11 35:16 36:15 36:22 39:13 39:23 41:12 44:2 45:20 49:19 56:2 56:12 56:12 58:14 58:24 58:25 59:2 59:5 59:7 60:2 61:10 61:10 61:11 61:14 61:15 61:19 62:1 62:10 62:15 63:3 63:7 63:9 63:11 63:17 63:19 63:20 64:14 64:24 65:17 65:18 65:20 66:4 80:11 100:20 101:12 101:17 102:23 104:13 106:21 108:14 109:7 109:9 109:9 109:12 110:15 121:3 121:10

processes(2) 13:16 58:20

produced(2) 1:48 54:25

product(2) 38:8 38:15

productive(1) 8:14

professionalism(1) 110:9

professionals(5) 8:6 25:25 44:7 48:16

proffer(1) 23:20

prohibited(1) 70:4

projected(2) 41:20 48:19

promise(1) 21:13

pronouncing(1) 21:2

proof(2) 12:13 92:24

proper(5) 70:14 70:18 77:10

properly(2) 70:6 83:3

property(1) 114:10

proposal(9) 9:5 19:2 20:18 45:14 47:3 47:4 112:7 112:10 112:17

proposals(2) 19:3 45:11

proposed(13) 13:12 13:18 34:1 34:5 34:7 35:3 43:19 55:10 55:11 57:1 73:10 73:11 114:16

proposes(1) 21:25

proposing(1) 22:10

propria(1) 4:14

prorated(1) 25:3

prostate(1) 87:6

protected(3) 39:11 39:20 39:21

protection(2) 83:25 85:2

protections(2) 39:21 111:6

proud(1) 71:3

proven(1) 13:3

provide(12) 21:5 31:6 37:17 48:6 49:9 54:18 52:11 56:7 70:25 75:14 77:5 107:21

provided(26) 8:3 34:19 34:23 35:21 41:6 42:2 42:7 43:2 43:13 43:18 43:20 47:5 47:6 47:10 49:5 54:4 68:2 71:3 71:21 71:24 72:2 72:5 110:23 111:12 113:9 114:17

provider(3) 45:12 56:8 56:10

provides(8) 10:4 51:12 70:23 70:24 76:25 110:14 112:11 116:13

providing(6) 6:24 10:18 63:20 67:22 71:17 89:7

provision(1) 112:4

provisions(1) 72:18

public(1) 37:12

pull(1) 24:9

pulled(1) 76:23

purchase(1) 46:15

purpose(1) 114:12

purposes(4) 96:9 96:11 110:10 117:10

pursuant(6) 35:8 43:2 53:15 72:2 109:22 112:22

pursuing(1) 15:7

purview(1) 102:21

pushing(1) 90:23

put(16) 9:13 19:7 23:21 26:19 28:14 28:22 40:19 46:24 75:1 76:22 86:14 86:15 90:14 93:11 95:8 100:12

puts(1) 104:15

putting(1) 116:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **question**(5) | 62:14 71:9 76:10 86:8 88:4 | **record**(31) | 5:9 7:6 16:17 23:10 24:2 28:18 28:23 33:7 34:3 37:25 49:17 66:15 71:2 72:14 76:12 81:23 90:3 90:11 90:12 92:19 94:8 96:9 100:4 101:8 101:23 106:3 107:7 119:1 119:6 119:17 119:11 | **requests**(1) | 57:3 | **retirees**(98) 2:32 7:16 8:8 9:6 9:25 10:1 10:2 10:5 10:6 15:2 16:2 16:4 16:20 17:14 21:6 21:22 25:19 25:22 25:25 26:13 26:20 28:25 33:12 33:15 34:7 34:12 34:21 35:4 37:18 38:12 39:15 40:19 40:23 41:6 41:16 42:2 42:21 44:15 45:5 45:15 46:3 47:5 47:18 47:20 48:7 50:4 50:11 51:13 51:19 51:23 52:2 54:4 54:19 54:21 55:9 55:15 55:18 56:1 56:17 56:23 59:23 60:9 62:23 63:14 63:21 63:25 64:4 67:21 70:22 70:23 73:6 73:7 91:25 98:11 99:11 99:23 110:3 110:14 110:16 110:21 110:22 110:24 111:1 111:5 111:11 111:15 112:8 112:18 113:1 113:3 113:8 113:10 113:16 113:16 114:2 114:3 116:5 116:16 117:1 118:21 |
| **questions**(13) | 34:13 40:20 43:10 43:25 44:3 44:17 44:19 44:25 45:2 47:3 47:10 49:14 49:15 | **recorded**(2) | 1:47 83:4 | **require**(1) | 14:3 |  |  |
| **quickly**(3) | 86:5 108:9 121:19 | **recording**(2) | 1:47 122:5 | **required**(4) | 18:25 34:20 55:21 114:15 |  |  |
| **quite**(6) | 17:2 81:2 81:9 91:19 93:6 103:10 | **recovery**(1) | 56:17 | **requirement**(1) | 74:2 |  |  |
| **quorum**(1) | 114:24 | **reduce**(1) | 24:15 | **requiring**(1) | 114:12 |  |  |
| **quotation**(1) | 112:15 | **reduced**(1) | 80:14 | **research**(2) | 52:16 52:25 |  |  |
| **radically**(1) | 95:7 | **reducing**(1) | 20:1 | **residual**(1) | 19:9 |  |  |
| **raise**(1) | 74:25 | **refer**(3) | 34:16 45:15 114:24 | **resist**(1) | 80:18 | **retirees'**(1) 117:4 |  |
| **raised**(2) | 22:25 116:20 | **referenced**(1) | 119:23 | **resisted**(1) | 24:8 |  |  |
| **raising**(1) | 102:13 | **referring**(3) | 52:22 76:24 90:6 | **resolution**(6) | 17:4 60:5 61:18 62:17 77:18 109:21 | **retirement**(18) 6:8 10:23 12:3 14:6 14:18 14:25 15:6 22:19 28:20 29:13 53:10 69:25 72:21 72:22 72:22 74:2 100:19 117:8 |  |
| **raleigh**(1) | 44:10 | **refers**(1) | 83:7 |  |  |  |  |
| **ran**(1) | 43:25 | **reflect**(2) | 66:3 90:11 | **resolve**(1) | 101:14 |  |  |
| **range**(1) | 17:24 114:23 | **reflected**(2) | 61:22 63:23 | **resolved**(4) | 13:6 35:8 103:16 109:10 | **retiring**(2) 35:5 117:13 |  |
| **rarely**(2) | 16:14 120:24 | **reflective**(1) | 64:19 | **resolving**(1) | 115:16 |  |  |
| **ratchet**(1) | 6:20 | **reflects**(4) | 60:13 61:23 62:18 80:4 | **resources**(2) | 21:21 43:14 | **return**(1) 27:24 |  |
| **ratcheting**(1) | 24:11 | **refused**(1) | 24:24 | **respect**(8) | 15:14 17:2 30:6 89:2 89:23 100:8 105:2 105:24 | **reva**(4) 4:11 27:3 27:10 53:3 78:25 78:25 79:2 80:3 105:15 106:9 117:10 |  |
| **rather**(11) | 12:20 18:10 20:9 22:6 22:15 23:4 24:10 41:8 51:14 116:10 117:13 | **regarding**(7) | 6:8 8:6 21:15 31:3 78:13 119:1 119:2 |  |  |  |  |
| **ray**(8) | 23:22 31:21 32:10 60:25 108:13 108:16 108:17 108:21 | **regardless**(4) | 28:8 29:24 106:5 106:19 | **respective**(1) | 42:1 | **reva's**(1) 80:7 |  |
| **ray's**(2) | 29:23 30:16 | **regularly**(1) | 38:18 | **respond**(8) | 21:15 72:8 72:10 73:10 73:17 73:20 74:7 102:4 | **revenue**(2) 48:5 51:16 |  |
| **rays**(2) | 8:2 19:4 | **reimburse**(1) | 46:18 |  |  | **review**(1) 40:20 |  |
| **ray's**(2) | 72:16 72:19 | **reimbursed**(1) | 52:17 | **responded**(5) | 43:23 44:4 72:11 73:14 75:9 | **reviewed**(2) 38:10 76:23 |  |
| **reach**(10) | 8:20 17:17 23:25 51:1 60:19 64:25 73:21 75:18 103:8 108:12 | **reimbursement**(4) | 22:20 51:11 53:1 56:9 | **response**(9) | 18:10 32:11 44:14 50:12 57:10 68:15 72:11 84:23 89:17 | **rich**(1) 8:15 |  |
| **reached**(7) | 9:10 16:12 17:7 17:9 50:22 69:21 74:5 | **reiterate**(1) | 79:3 |  |  | **richard**(2) 2:43 111:19 |  |
| **reaching**(4) | 17:1 19:18 28:6 53:10 | **related**(1) | 69:4 | **responses**(3) | 16:16 16:18 50:10 | **richards**(1) 2:5 |  |
| **reaction**(1) | 16:14 | **relating**(5) | 11:8 92:5 92:8 92:25 100:1 | **responsibilities**(1) | 59:6 | **ride**(1) 91:12 |  |
| **read**(8) | 14:2 47:21 52:13 64:2 69:4 84:13 84:21 109:15 | **relation**(3) | 69:12 70:21 71:6 | **responsibility**(4) | 10:22 11:7 11:11 70:10 | **riding**(1) 91:9 |  |
| **readings**(1) | 49:22 | **relationships**(1) | 111:4 | **responsible**(1) | 12:5 | **right**(119) 7:3 7:4 8:25 12:25 13:22 13:24 14:11 14:15 14:18 14:22 15:1 15:2 15:5 15:19 15:22 17:4 18:5 18:9 21:16 22:3 22:6 24:20 27:6 27:19 27:20 27:22 27:24 30:13 31:16 34:9 34:18 35:3 45:17 49:8 54:11 57:7 57:20 58:1 58:4 66:10 67:1 68:9 68:16 71:7 73:15 74:13 75:13 76:7 76:10 77:7 77:12 77:12 77:14 77:15 77:18 77:21 77:25 78:2 78:6 78:15 78:20 78:23 80:3 80:20 81:16 81:19 82:20 82:20 87:19 88:13 89:19 92:23 93:9 93:21 94:11 94:12 94:19 95:4 95:12 95:22 95:23 96:11 96:16 98:14 98:15 98:23 99:13 99:14 99:20 99:20 100:8 100:23 101:17 101:18 102:8 102:18 103:25 104:17 105:1 105:7 105:20 106:6 106:7 106:15 107:2 109:4 109:4 118:4 119:9 120:3 120:9 |
| **reads**(1) | 38:4 | **release**(1) | 11:22 |  |  |  |  |
| **real**(2) | 110:12 111:5 | **released**(2) | 11:14 77:5 |  |  |  |  |
| **reality**(1) | 63:14 | **releases**(3) | 12:3 63:12 118:18 |  |  |  |  |
| **realize**(2) | 40:23 52:2 | **relevant**(3) | 96:1 103:23 113:10 | **resulted**(2) | 60:22 110:21 |  |  |
| **really**(29) | 8:1 17:8 23:6 23:23 28:18 28:23 60:1 60:11 60:13 60:17 60:23 62:2 64:12 64:13 66:13 66:16 74:5 74:10 84:18 87:13 91:17 100:1 106:10 109:5 109:6 110:7 113:13 115:19 121:12 | **reliable**(2) | 112:9 112:19 | **results**(1) | 42:19 |  |  |
|  |  | **reliance**(1) | 92:17 | **retain**(1) | 78:15 |  |  |
|  |  | **remain**(2) | 39:10 39:21 | **retire**(24) 13:23 13:24 14:4 14:13 14:14 15:1 27:13 27:16 53:5 69:14 70:1 70:2 70:11 72:13 73:1 79:8 79:9 79:14 79:20 79:21 80:9 81:6 106:12 117:15 |  |  |
|  |  | **remainder**(1) | 12:15 |  |  |  |  |
|  |  | **remained**(1) | 39:13 | **rights**(3) 63:4 63:21 111:15 |  |
| **reason**(8) | 68:6 70:16 79:7 88:23 89:16 102:16 102:22 114:8 | **remaining**(2) | 12:21 101:20 | **retired**(9) 11:16 28:24 29:15 53:11 66:18 66:21 79:17 83:9 109:22 | **rise**(4) 5:2 68:6 95:20 108:5 |  |
|  |  | **remarkable**(1) | 97:9 |  |  | **rising**(2) 95:16 98:23 |  |
| **reasonable**(5) | 16:25 114:18 114:20 116:7 118:17 | **remarks**(1) | 67:8 | **retiree**(169) 6:7 6:19 7:20 7:23 8:19 9:8 9:18 9:20 10:14 10:22 11:2 11:11 11:12 11:10 11:10 11:14 11:22 11:25 12:13 12:14 15:3 15:6 16:9 17:8 18:6 19:3 19:12 20:11 21:17 21:25 22:11 22:17 25:24 26:5 26:22 27:5 27:13 29:16 30:8 30:9 31:1 33:4 33:7 33:24 34:6 34:11 34:18 35:7 35:21 37:1 37:17 39:10 39:13 39:17 39:19 40:2 40:40 41:8 41:16 41:8 41:19 42:9 43:6 43:7 44:7 44:8 45:7 45:9 45:10 45:21 45:22 45:23 45:24 46:12 46:14 46:15 49:2 49:6 49:12 49:24 50:7 50:20 51:1 51:7 51:17 51:25 52:1 52:4 52:5 52:7 53:6 53:7 53:13 53:17 53:19 53:20 53:23 54:6 54:16 54:23 54:24 55:12 55:14 55:16 56:12 56:16 56:19 56:23 57:5 57:5 58:19 58:20 59:1 59:12 60:12 61:9 61:15 64:11 65:10 68:7 68:22 71:25 73:3 73:10 79:7 79:10 79:13 79:20 82:22 83:8 83:10 83:11 83:25 85:3 85:8 88:5 88:6 90:7 92:6 92:14 96:20 97:10 105:2 107:10 111:13 111:14 111:25 112:3 112:6 112:8 112:11 113:11 114:1 114:7 115:19 116:3 116:15 116:18 116:21 116:24 118:21 | **risk**(6) 17:23 39:25 51:3 52:4 52:6 116:5 |  |
| **reasonableness**(1) | 17:24 | **remedy**(1) | 21:17 |  |  | **risks**(4) 61:24 110:12 110:13 115:8 |  |
| **reasonably**(1) | 77:2 | **remember**(2) | 82:6 84:9 |  |  | **road**(1) 38:13 |  |
| **reasons**(11) | 6:2 23:22 42:10 46:4 55:9 57:2 70:13 73:25 88:18 88:22 89:11 | **reminded**(2) | 18:6 71:25 |  |  | **robert**(5) 1:33 3:8 29:8 81:18 97:13 |  |
|  |  | **reminds**(1) | 75:7 |  |  | **rodney**(2) 2:7 3:3 |  |
| **recall**(2) | 13:10 13:11 45:20 61:11 | **removes**(1) | 110:13 |  |  | **role**(2) 59:4 67:6 |  |
| **recalls**(1) | 38:12 | **renaissance**(1) | 2:35 |  |  | **rolled**(1) 91:4 |  |
| **receive**(16) | 14:24 27:13 29:6 30:1 30:9 30:13 49:6 51:5 51:6 56:13 56:14 70:12 71:25 74:7 113:3 113:4 117:5 | **renewal**(1) | 25:12 |  |  | **ron**(1) 35:22 |  |
|  |  | **reopened**(1) | 105:23 |  |  | **room**(5) 61:2 85:1 85:5 85:13 87:10 |  |
|  |  | **reorganization**(5) | 15:24 19:6 23:12 112:12 112:20 |  |  | **rule**(5) 80:21 94:20 101:21 107:7 109:15 |  |
| **received**(13) | 36:1 38:9 38:11 38:11 41:19 43:10 51:7 52:11 69:3 69:5 70:5 84:19 114:5 | **reorganizations**(1) | 58:18 | **retiree's**(2) 116:23 117:6 | **rules**(1) 52:18 |  |
|  |  | **repeat**(1) | 38:1 | **retiree-related**(1) 78:2 | **ruling**(7) 48:5 51:15 71:19 94:23 94:25 107:21 109:16 |  |
| **receiving**(6) | 27:4 30:8 30:10 30:15 60:10 114:17 | **repeatedly**(3) | 24:7 24:8 109:7 |  |  |  |  |
|  |  | **replacement**(2) | 43:17 55:23 |  |  | **rumble**(1) 101:6 |  |
| **recently**(1) | 18:16 | **replicate**(1) | 45:8 |  |  | **run**(2) 18:25 63:19 |  |
| **recess**(4) | 107:19 107:24 108:4 121:20 | **reply**(2) | 20:22 120:7 |  |  | **running**(1) 8:1 |  |
| **recognition**(1) | 37:13 | **represent**(12) | 33:4 35:7 35:14 35:15 35:17 59:3 65:5 67:17 70:15 84:6 98:5 98:6 |  |  | **runs**(1) 55:6 |  |
| **recognize**(1) | 16:24 |  |  |  |  | **rushed**(2) 18:10 18:12 |  |
| **recognized**(3) | 45:22 45:23 80:19 | **representation**(1) | 110:6 |  |  | **ryan**(1) 1:33 |  |
|  |  | **representations**(1) | 69:10 |  |  |  |  |
|  |  | **representative**(4) | 26:4 26:25 112:8 114:1 |  |  |  |  |
|  |  | **representatives**(1) | 112:18 |  |  |  |  |
|  |  | **represented**(7) | 33:20 52:23 73:9 82:17 110:4 110:11 118:21 |  |  |  |  |
|  |  | **representing**(1) | 102:20 |  |  |  |  |
|  |  | **represents**(3) | 38:8 38:15 65:6 |  |  |  |  |
|  |  | **request**(10) | 71:15 87:15 97:15 97:18 99:9 99:10 101:8 101:16 102:3 105:18 |  |  |  |  |
|  |  | **requested**(3) | 70:1 106:17 111:14 |  |  |  |  |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **said**(51) 12:25  13:22  15:20  16:3  18:24  21:6  23:20  25:14  28:23  30:23  31:7  33:6  34:24  37:25  41:3  47:9  48:7  49:2  49:21  50:3  50:25  52:22  53:25  57:21  58:22  62:4  62:4  67:4  74:8  79:3  83:10  84:10  85:5  85:6  86:20  86:23  92:11  92:21  94:1  94:21  96:20  98:11  98:13  100:9  102:15  103:16  104:13  106:1  116:18  112:16  113:19 | | **seeking**(6) 6:13  8:23  23:22  38:25  66:16  112:6 | | **several**(6) 8:4  20:15  23:18  71:17  104:15  116:19 | | **somehow**(1) 62:7 |
| | | **seemed**(3) 27:15  36:12  105:25 | | **severed**(1) 15:1 | | **someone**(4) 12:12  24:17  59:7  120:6 |
| | | **seems**(7) 20:1  22:20  51:8  68:1  89:12  92:19  96:14 | | **shall**(1) 112:7 | | **something**(12) 7:17  11:6  16:17  24:10  31:15  33:14  60:22  63:23  85:12  85:22  86:23  120:4 |
| **sale**(5) 19:22  27:10  27:11  69:24  70:24 | | | | **shape**(1) 109:2 | | **sometimes**(4) 36:18  38:20  91:20  100:15 |
| **same**(15) 24:3  24:21  25:2  42:4  49:7  67:4  81:1  86:16  89:6  91:10  96:23  97:13  98:15  99:4  103:1 | | **seen**(10) 11:15  55:10  59:11  60:6  60:12  75:11  76:19  80:16  102:5  120:24 | | **share**(3) 7:24  54:3  116:23 | | **somewhat**(6) 10:4  75:9  96:23  105:22  109:15  121:10 |
| | | | | **she's**(1) 103:1 | | **somewhere**(2) 25:17  74:3 |
| | | **segal**(4) 2:40  2:40  33:4  33:4 | | **sherman**(3) 3:47  80:23 | | **son**(2) 85:6  85:10 |
| **sand**(1) 42:13 | | **self**(1) 47:11 | | **she's**(1) 121:6 | | **soon**(1) 120:6 |
| **santa**(1) 44:11 | | **send**(2) 55:12  119:22 | | **short**(3) 21:3  61:10  121:6 | | **sorry**(9) 22:20  48:13  48:18  52:10  73:2  74:15  75:24  115:17  117:22 |
| **sat**(1) 60:25 | | **sense**(2) 62:20  83:17  120:1 | | **shortly**(1) 114:7 | | |
| **satisfaction**(1) 11:22 | | **sent**(12) 29:21  42:17  46:11  47:2  47:20  48:12  56:1  56:10  57:21  57:23  76:15  84:21 | | **should**(33) 8:19  25:3  25:4  26:16  29:1  39:10  39:11  39:20  54:3  56:17  58:25  64:9  64:11  64:11  81:12  81:13  81:14  86:19  87:12  87:16  90:11  92:1  100:13  101:9  102:3  104:7  104:7  105:23  116:1  118:21  119:15  120:24  121:13 | | **sort**(9) 60:20  91:9  96:10  96:25  97:13  98:12  106:17  107:20  119:7 |
| **satisfied**(4) 9:18  112:4  112:16  116:3 | | | | | | **sorts**(2) 87:4  121:5 |
| **satisfies**(1) 115:7 | | | | | | **sought**(9) 7:8  9:3  23:24  33:14  45:8  47:7  48:6  51:15  111:16 |
| **save**(1) 18:3 | | **separate**(4) 13:14  86:15  96:8  106:8 | | | | |
| **saw**(1) 72:14 | | **separated**(1) 74:11 | | | | **sound**(4) 1:47  88:24  114:12  122:5 |
| **say**(42) 12:24  14:3  15:5  24:18  25:19  30:6  30:7  31:17  33:8  33:8  33:14  35:10  36:10  36:17  38:19  52:16  52:21  52:25  54:7  58:12  58:22  59:7  59:10  59:16  61:21  64:16  67:3  76:4  77:16  80:1  80:15  82:17  85:9  85:11  87:11  88:23  94:21  95:16  97:12  109:5  115:20  118:21 | | **separately**(2) 83:1  83:5 | | **show**(5) 17:9  41:20  41:25  55:1  114:15 | | **source**(1) 43:16 |
| | | **september**(1) 61:18 | | **showed**(1) 90:25 | | **spanned**(1) 113:16 |
| | | **seriousness**(1) 59:5 | | **showing**(4) 15:25  16:22  17:11  19:8 | | **spd**(1) 28:21 |
| | | **serp**(1) 103:18 | | **showings**(1) 15:23 | | **speak**(7) 9:20  25:21  36:8  55:24  64:1  68:13  119:24 |
| | | **serve**(1) 37:15 | | **shown**(1) 104:14 | | |
| **saying**(9) 12:14  21:3  22:5  24:2  27:18  90:9  91:10  101:6  106:10 | | **service**(21) 1:41  1:48  14:9  14:12  26:2  30:17  37:11  42:6  48:5  48:18  51:16  55:22  57:20  59:11  70:1  72:22  79:6  90:3  90:12  90:13  111:6 | | **shows**(3) 30:22  65:2  90:16 | | **speaking**(2) 77:23  105:22 |
| | | | | **side**(22) 9:2  19:18  19:25  23:3  28:6  30:7  58:24  59:8  59:13  59:19  60:3  60:4  60:7  60:9  61:7  62:19  62:25  63:6  63:11  63:13  76:5  89:5 | | **speaking's**(1) 73:22 |
| **says**(1) 87:14 | | | | | | **specific**(5) 21:5  21:15  79:4  98:19  99:11 |
| **scale**(1) 79:11 | | **services**(1) 1:41 | | | | **specifically**(5) 25:21  26:7  94:12  100:7 |
| **scare**(1) 91:25 | | **serving**(1) 47:19 | | **sides**(5) 17:23  18:21  23:11  110:4  121:6 | | **spectrum**(1) 89:5 |
| **scenes**(1) 1:47 | | **sessions**(2) 61:1  113:20 | | **sign**(2) 85:16  118:23 | | **spend**(1) 88:17 |
| **schedule**(2) 12:14  72:6 | | **set**(11) 8:2  10:9  10:22  21:25  31:24  38:1  42:23  48:1  50:12  73:3  87:25 | | **sign-up**(2) 85:22  85:24 | | **spending**(1) 22:2 |
| **schuylkill**(1) 1:42 | | | | **signed**(2) 9:12  121:18 | | **spent**(3) 18:20  26:3  65:22 |
| **schweitzer**(139) 1:32  5:11  5:16  5:17  5:18  5:22  6:1  6:11  6:18  6:24  7:1  7:4  7:11  8:17  9:1  10:20  11:13  11:21  12:11  12:20  13:14  14:11  15:14  18:5  18:12  18:19  20:8  20:25  22:8  23:4  24:16  24:21  26:10  27:7  28:5  28:17  29:7  29:11  29:18  31:14  31:18  32:16  32:22  32:23  33:15  34:3  34:2  34:24  35:3  35:13  37:25  39:16  43:23  48:7  49:2  49:21  53:2  53:4  53:22  55:21  57:17  57:19  61:11  62:19  63:2  75:25  76:1  76:2  76:4  76:8  77:7  77:10  77:16  78:2  78:5  78:8  78:18  89:20  89:21  89:21  90:9  91:8  92:24  93:9  93:16  93:22  94:5  94:15  94:17  94:18  95:17  95:17  95:19  95:21  95:25  96:2  96:5  96:13  98:18  98:23  99:1  99:3  99:7  99:14  99:16  99:21  100:8  100:24  101:19  102:2  102:9  102:15  102:24  103:16  104:20  104:21  104:24  105:2  105:5  105:8  105:21  106:8  106:16  108:1  108:20  118:25  119:4  119:9  120:11  120:12  120:13  120:17  120:19  120:21  120:22  120:25  121:22 | | **setting**(1) 11:3 | | **significant**(11) 18:4  33:19  34:25  50:23  64:7  73:5  73:6  83:19  98:20  110:14  116:19 | | **spirit**(3) 14:6  16:11  17:20 |
| | | **settle**(3) 54:10  90:21  114:11 | | | | **spoke**(5) 45:20  71:22  72:1  72:17  81:23 |
| | | **settled**(6) 15:8  82:11  90:22  99:16  99:17  99:18 | | **signing**(1) 119:8 | | **spoken**(5) 25:22  26:13  53:2  75:16  83:9 |
| | | | | **silence**(1) 80:4 | | **sponsored**(2) 11:6  43:14 |
| | | **settlement**(226) 6:4  6:7  6:14  6:18  7:6  7:6  9:10  9:12  9:25  10:9  10:10  10:20  10:23  11:4  11:13  11:15  11:20  11:23  11:24  12:2  13:5  13:7  13:11  13:16  13:19  14:7  14:7  14:19  15:3  15:6  15:9  15:10  15:16  16:24  17:13  21:12  21:4  21:10  21:17  21:22  21:23  22:10  22:22  22:23  23:14  23:17  24:1  24:14  24:15  25:19  26:11  26:22  27:1  28:7  28:10  29:2  30:3  30:10  31:13  32:14  33:19  33:20  33:21  34:1  34:4  34:8  34:13  35:3  35:6  35:8  35:12  37:14  37:19  37:21  38:8  38:15  38:25  39:17  40:10  40:14  40:18  40:22  41:12  41:13  41:17  41:18  42:10  42:13  43:8  43:18  43:23  44:1  46:22  48:3  48:9  48:14  48:19  48:23  49:4  49:11  49:12  49:13  49:16  49:19  49:21  49:24  49:25  50:1  50:2  50:13  50:16  50:22  50:23  51:1  51:12  51:13  53:14  53:15  53:19  53:24  53:25  54:16  55:3  55:6  55:14  55:16  55:20  55:25  56:15  56:16  56:24  57:4  57:12  57:22  60:13  60:19  61:5  62:2  63:17  63:19  64:7  64:25  66:2  66:6  66:9  66:17  66:25  67:5  67:7  68:7  68:13  69:16  70:20  70:21  70:22  71:4  72:20  73:7  76:5  76:8  76:11  77:19  78:9  79:4  80:17  82:13  88:20  89:10  89:14  89:24  90:5  90:20  91:5  91:7  91:9  91:13  94:10  94:10  94:20  98:19  99:9  99:24  100:20  103:9  104:2  105:3  105:13  106:2  106:24  107:7  108:12  109:18  109:20  109:23  109:24  110:13  111:8  111:16  111:18  111:23  112:19  113:21  113:22  113:23  114:7  114:8  114:16  114:20  115:1  115:7  115:25  116:7  116:10  116:14  116:21  116:23  116:25  117:12  118:12  118:16  118:20 | | **similar**(1) 91:18 | | **sports**(1) 104:22 |
| | | | | **similarly**(1) 42:4 | | **spouses**(2) 62:23  110:22 |
| | | | | **simple**(1) 41:3  54:24  66:1 | | **spring**(2) 7:22  8:18 |
| | | | | **simply**(3) 95:5  106:10  107:13 | | **spun**(1) 79:19 |
| | | | | **since**(7) 67:11  81:23  107:23  113:5  113:5 | | **square**(2) 2:7  3:3 |
| | | | | **single**(3) 83:16  83:17  114:2 | | **stage**(2) 17:5  19:9 |
| | | | | **sir**(13) 37:4  68:9  68:25  78:23  82:9  82:17  96:17  96:18  97:7  104:17  107:4  120:6  121:18 | | **stand**(7) 31:24  50:15  67:20  81:14  83:6  95:1  121:20 |
| | | | | **sit**(2) 83:6  109:14 | | |
| | | | | **situated**(1) 51:8 | | |
| **schweitzer's**(2) 61:9  67:14 | | | | **situation**(19) 21:4  21:18  29:14  59:9  59:10  59:21  59:24  62:3  62:4  62:12  62:24  63:2  78:16  80:7  81:1  81:3  81:13  83:7  105:25 | | **standard**(2) 17:8  21:9 |
| **seamless**(1) 56:3 | | | | | | **standards**(3) 18:16  18:24  22:23 |
| **seated**(2) 5:4  108:7 | | | | | | **standing**(4) 36:10  64:20  78:10  78:10 |
| | | | | **situations**(1) 65:17 | | **stargatt**(3) 3:1 |
| **second**(6) 21:23  26:18  42:15  51:5  95:13  116:8 | | | | **six**(1) 24:19 | | **stark**(1) 111:11 |
| | | | | **size**(2) 23:14  40:4 | | **start**(2) 28:20  106:25 |
| | | | | **skeleton**(1) 19:9 | | **started**(5) 56:12  61:11  61:16  92:9  94:2 |
| **seconds**(1) 87:7 | | | | **skelly**(1) 2:42 | | **starting**(3) 30:2  38:20  97:6 |
| **section**(7) 17:11  43:6  109:8  109:23  112:1  112:17  112:22 | | | | **sliding**(1) 79:1 | | **state**(1) 76:12 |
| | | | | **slightly**(3) 6:21  29:14  106:17 | | **statement**(4) 25:19  41:8  93:24  96:8 |
| | | | | **small**(3) 46:2  46:8  116:1 | | **statements**(5) 34:3  55:25  69:13  91:24  94:7 |
| **security**(1) 85:18 | | | | **smaller**(1) 46:2 | | **states**(4) 1:3  1:21  29:23  112:4 |
| **see**(16) 5:4  5:23  12:1  32:24  32:25  37:4  38:25  42:3  57:17  59:22  60:2  75:5  75:18  80:15  102:5  107:24 | | | | **social**(1) 85:18 | | **stating**(1) 70:6 |
| | | | | **soft**(2) 10:4  16:4 | | **status**(3) 53:8  53:10  70:9 |
| | | | | **sold**(2) 62:8  62:8 | | **stay**(1) 25:16 |
| **seeing**(1) 5:24 | | | | **sole**(1) 6:11 | | **stayed**(3) 38:21  61:3  91:3 |
| **seek**(5) 6:7  25:11  48:24  53:17  55:23 | | **settlements**(4) 13:18  100:11  103:9  114:18 | | **solicited**(2) 45:11  46:13 | | **staying**(1) 49:11 |
| | | **seven**(4) 16:17  35:2  50:10  114:5 | | **solution**(1) 18:12 | | **ste**(1) 2:20 |
| | | **sever**(1) 12:17 | | **solutions**(3) 22:12  38:24  61:5 | | **steal**(1) 120:13 |
| | | | | **some**(43) 11:15  14:3  16:13  16:23  34:22  35:13  36:8  36:22  37:25  38:23  38:24  46:5  46:23  49:18  52:3  60:2  60:20  62:6  62:6  62:13  63:9  63:15  63:21  64:8  69:13  75:10  75:19  80:4  80:19  84:2  87:14  92:17  94:6  99:17  101:13  102:12  103:18  105:25  106:2  106:21  113:10  119:15  119:24 | | **steel**(1) 112:24 |
| | | | | | | **steele**(1) 2:6 |
| | | | | | | **steen**(1) 1:31 |
| | | | | | | **stem**(1) 25:1 |
| | | | | | | **step**(1) 65:19 |
| | | | | | | **stephanie**(1) 2:42 |
| | | | | | | **steps**(1) 91:23 |
| | | | | **somebody**(2) 58:12  85:15 | | **still**(5) 7:13  7:20  8:19  62:7  86:12 |
| | | | | | | **stop**(1) 87:21 |
| | | | | | | **stopped**(1) 30:1 |

Page : 13                                                                                                                04/03/13  14:38:13

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **stops**(2) 85:23  85:23 | | **taking**(6) 7:6  20:10  24:4  61:23  75:12 | | **that**(301) 6:16  7:5  7:13  7:18  8:2  8:12 | | **that**(301) 42:5  42:5  42:10  42:16  42:19 | |

stops(2) 85:23 85:23
straight(1) 100:1
strauss(3) 2:12 4:2 58:7
street(5) 1:13 1:42 2:8 2:21 3:4
strenuous(1) 109:25
strict(1) 39:7
strongly(1) 95:3
structure(9) 48:8 51:6 51:21 52:5 52:15
59:19 59:22 60:8 61:5

subject(5) 41:21 48:4 82:20 106:8 117:2
submission(1) 73:13
submit(1) 44:25
submitted(5) 37:6 40:13 70:7 88:7 118:24
subsequent(1) 112:5
subsidize(1) 41:17
subsidy(1) 46:24
substantial(4) 16:7 20:13 110:13 113:8
substitutes(1) 23:17
success(2) 100:10 115:2
successful(2) 6:2 90:20
successfully(2) 61:18 82:11
successor(3) 54:17 55:12 78:10
successors(2) 11:1 47:7
succinctly(1) 80:7
such(8) 9:12 64:25 70:4 76:25 111:4
112:10 112:24 114:11

sue(1) 37:9
suffer(1) 54:2
suffice(2) 36:9 52:24
sufficient(1) 40:20
suggest(4) 87:10 94:23 96:14 107:22
suggested(1) 90:1
suggestion(1) 93:11
suggestions(1) 89:25
sum(3) 56:15 73:5 113:8
summary(3) 28:21 41:15 47:2
summer(3) 8:20 61:16 62:11
supervision(3) 36:15 38:17 51:3
supplement(1) 103:24
supplemental(3) 20:22 86:16 86:16
supplied(1) 54:22
support(17) 24:12 35:12 40:13 40:21 42:5
48:14 50:13 54:18 57:12 64:6 66:7 68:7
70:21 70:23 80:10 80:17 112:25

supported(3) 42:20 113:24 114:11
supporting(1) 98:24
supportive(1) 50:6
supports(3) 40:10 57:3 66:16
sure(17) 18:20 32:19 32:20 32:23 43:3
59:23 60:8 60:9 64:14 70:14 71:18 93:6
94:16 97:15 99:6 118:25 120:14

surfaced(1) 104:9
survey(2) 84:25 85:4
survive(1) 12:22
survivors(1) 117:5
sustain(2) 115:16 115:18
sustained(1) 89:18
swaine(1) 111:20
swamped(2) 84:6 98:12
swing(1) 10:12
switch(4) 85:20 85:23 86:23 87:12
switched(1) 86:16
sympathetic(1) 80:7
synergy(1) 19:25
table(1) 59:16
tables(1) 5:11
take(21) 6:22 7:13 14:7 15:21 16:22 17:14
20:4 52:9 69:8 74:14 78:17 79:9 79:10
79:25 80:22 101:15 107:19 107:20 107:23
111:17 121:2

taken(7) 17:22 23:19 24:13 59:4 63:3
86:22 91:25
takes(2) 11:10 104:14

taking(6) 7:6 20:10 24:4 61:23 75:12
107:22

talk(9) 7:24 7:24 30:20 34:9 43:11 73:22
82:22 83:12 87:3

talked(3) 73:24 84:9 84:22
talking(8) 39:1 39:4 39:6 58:10 77:9 85:8
87:10 94:2

talks(1) 23:22
tammy(1) 122:9
tax(11) 22:14 22:15 36:1 46:17 48:6 52:1
52:18 59:18 59:23 116:13 116:15

taxable(1) 51:15
taylor(3) 2:33 3:1 36:2
team(1) 104:21
telephone(3) 43:24 84:7 96:22
telephonic(2) 3:12 3:43
tell(4) 37:13 39:12 39:22 85:15
telling(1) 75:10 94:3
ten(4) 30:17 30:20 62:21 69:2
tent(2) 40:3 40:6
term(2) 14:16 68:8
terminable(1) 7:14
terminate(14) 15:22 23:1 23:12 25:14 31:5
62:13 63:15 91:14 109:22 110:20 111:10
111:24 113:7 118:9

terminated(19) 6:15 8:10 10:12 26:15
27:19 28:2 28:8 28:25 29:20 42:17 51:21
69:24 89:9 91:1 116:25 117:15 118:11
118:11 118:13

terminates(1) 111:25
terminating(3) 14:25 16:15 16:16
termination(39) 6:8 6:21 7:9 7:25 8:23
9:4 9:4 10:8 16:1 16:16 18:22 18:25 21:8
21:10 23:23 24:7 25:9 25:11 27:14 29:22
29:25 33:24 41:1 50:20 54:5 55:22 56:18
56:21 57:21 57:23 61:12 62:20 63:4 70:4
72:25 93:25 106:14 112:2 112:22

terms(23) 10:9 17:6 17:11 18:15 19:25
22:23 25:4 25:20 26:7 26:14 26:23 28:11
30:19 45:4 60:5 60:7 62:17 76:17 94:9
98:3 106:22 116:4 116:7

test(1) 73:2
testament(1) 64:21
tests(1) 113:22
texas(1) 44:11
than(25) 9:5 12:20 16:20 18:10 20:9
22:15 23:5 24:10 25:6 25:10 34:21 43:24
51:14 56:25 57:1 62:16 65:22 69:6 80:8
93:3 109:16 113:17 114:2 116:10 117:13

thank(95) 5:3 5:14 5:15 26:2 32:16 32:21
32:21 35:13 36:14 37:5 57:7 57:13 58:1
58:4 65:15 66:10 66:22 67:2 67:3 67:8
67:9 68:9 68:9 68:11 68:25 68:25 71:5
71:7 73:15 73:15 74:13 74:23 78:7 78:19
78:22 78:23 80:2 80:3 80:6 80:20 80:20
81:15 81:16 81:20 81:22 82:15 82:16
87:23 89:19 94:17 94:18 95:10 95:11
96:18 96:18 102:8 102:8 103:25 103:25
104:10 104:10 104:17 104:17 104:19 107:3
107:16 107:17 108:1 108:2 108:3 108:6
108:13 108:16 108:18 108:19 108:21 109:1
109:5 111:20 119:10 120:9 120:11 120:21
120:21 120:22 121:2 121:11 121:16 121:18
121:18 121:20 121:22 121:23 121:24
121:25

thanking(3) 16:15 16:16 108:11
thanks(1) 121:1

that(301) 6:16 7:5 7:13 7:18 8:2 8:12
8:14 8:21 9:3 9:12 10:1 10:2 10:3 10:7
10:11 10:13 10:16 10:22 10:25 11:1 11:2
11:3 11:5 11:6 11:8 11:11 11:14 11:16
11:21 11:25 12:1 12:2 12:7 12:12 12:15
12:15 12:21 12:24 13:3 13:4 13:7 13:7
13:8 13:11 13:17 13:18 14:2 14:3 14:4
14:14 14:15 14:20 14:22 14:22 14:22 15:4
15:5 15:14 15:16 15:20 15:22 15:23 15:24
15:25 15:25 16:2 16:6 16:16 16:17 16:17
16:20 16:21 16:22 16:22 16:23 16:24
16:24 16:25 17:7 17:9 17:12 17:14 17:14
17:15 17:15 17:16 17:18 17:21 17:22
17:23 17:23 17:24 17:25 18:1 18:4 18:5
18:7 18:8 18:19 18:19 18:20 18:21 19:1
19:2 19:7 19:7 19:8 19:9 19:23 19:24
19:24 19:25 19:25 20:1 20:2 20:2 20:4
20:8 20:10 20:10 20:12 20:12 20:12 20:13
20:17 20:17 20:18 20:20 20:21 20:21 21:3
21:6 21:7 21:8 21:9 21:11 21:16 21:19
21:25 22:2 22:1 22:12 22:13 22:18 22:19
22:25 23:1 23:7 23:8 23:8 23:9 23:10
23:10 23:16 23:16 23:17 23:18 23:22
23:25 24:2 24:10 24:13 24:17 24:21 24:24
25:2 25:3 25:4 25:6 25:8 25:9 25:11
25:14 25:15 25:16 25:18 25:19 25:20
25:22 26:1 26:3 26:4 26:5 26:5 26:6
26:12 26:13 26:13 26:16 26:18 26:18
26:19 26:20 26:20 26:24 27:12 27:17
27:20 27:25 28:2 28:5 28:6 28:19 28:20
28:22 29:15 29:15 29:19 29:19 29:20
29:23 29:25 30:7 30:12 30:20 30:23 30:23
30:25 30:25 31:2 31:9 31:19 31:19 31:24
31:24 31:24 32:7 32:12 32:22 33:6 33:8
33:11 33:13 33:14 33:16 33:17 33:17
33:18 33:19 33:21 33:21 33:23 34:2 34:9
34:9 34:11 34:12 34:19 34:20 34:23 34:25
35:1 35:2 35:7 35:9 35:20 35:25 36:15
36:18 36:24 37:7 37:11 37:13 37:17 37:21
37:24 37:25 38:1 38:4 38:8 38:10 38:12
38:24 38:25 39:4 39:7 39:8 39:9 39:12
39:15 40:1 40:1 40:3 40:5 40:9 40:10
40:17 40:18 40:19 40:22 40:23 40:25 41:8
41:11 41:14 41:15 41:18 41:18 41:24 42:3

that(167) 90:13 90:16 90:16 90:18 90:24
90:25 91:3 91:4 91:5 91:15 91:16 91:19
91:20 91:21 91:23 92:1 92:6 92:13
92:16 92:17 92:19 92:25 92:25 93:2
93:3 93:9 93:12 93:12 93:12 93:18 93:22
93:22 93:24 94:4 94:7 94:8 94:18 94:23
94:23 95:3 95:5 95:6 95:9 96:1 96:12
96:20 96:25 98:6 98:21 99:8 99:25 100:4
100:10 100:15 100:21 100:25 101:1 101:4
101:7 101:8 101:9 101:10 101:11 101:11
101:19 101:23 102:1 102:2 102:2 102:3
102:7 102:12 102:15 102:21 102:23 102:24
103:1 103:1 103:2 103:9 103:15 103:18
103:22 104:6 104:10 104:25 105:3 105:5
105:8 105:11 105:12 105:13 105:16 105:17
105:18 105:19 105:21 105:22 105:23
105:23 106:1 106:1 106:2 106:3 106:4
106:11 106:12 106:18 106:18 106:19
106:19 106:21 106:25 107:1 107:12 107:14
108:12 108:18 109:7 109:8 109:9 109:10
109:11 109:12 110:16 111:5 111:8 111:9
111:10 111:12 112:4 112:4 112:12 112:13
112:15 112:21 112:22 112:25 113:3 113:23
114:7 114:14 114:15 114:16 114:17 114:22
114:24 115:5 115:16 115:22 116:3 116:6
116:11 116:16 116:7 116:8 119:10 119:20
119:23 120:1 120:4 120:4 121:1 121:14
122:4

that's(40) 5:14 6:11 7:16 7:16 9:5 10:16
15:4 18:5 21:14 24:18 25:20 29:1 30:15
31:16 31:18 32:21 37:20 40:6 40:14 48:21
49:4 54:7 54:10 93:9 93:10 93:23 94:12
95:25 99:20 100:3 101:18 102:21 103:25
105:1 109:4 109:4 116:2 118:4 119:17
120:3

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that's**(26) 56:20 57:22 64:19 64:21 73:2 73:2 73:20 74:5 74:8 75:23 75:25 76:7 77:15 77:25 78:15 78:21 80:1 81:12 82:14 83:22 84:12 85:25 90:22 91:7 91:7 92:13 | | **the**(301) 20:4 20:4 20:7 20:10 20:10 20:11 20:14 20:16 20:17 20:20 20:22 20:24 20:25 20:25 21:3 21:3 21:7 21:8 21:9 21:11 21:12 21:12 21:16 21:17 21:17 21:19 21:22 21:23 21:23 21:25 22:1 22:1 | | **the**(301) 38:16 38:20 38:21 38:21 38:25 39:2 39:3 39:3 39:5 39:5 39:5 39:7 39:9 39:12 39:13 39:17 39:18 39:19 39:19 39:22 39:23 39:23 39:23 39:25 40:3 40:3 40:9 40:10 40:11 40:14 40:16 40:17 40:19 | | **the**(301) 58:11 58:15 58:23 58:23 58:24 58:25 59:1 59:2 59:8 59:11 59:11 59:12 59:12 59:13 59:13 59:16 59:20 59:20 59:20 59:23 60:4 60:4 60:8 60:10 60:12 60:12 60:13 60:16 60:24 61:3 61:3 61:6 |
| **the**(301) 1:3 1:4 1:20 2:4 2:19 5:2 5:3 5:8 5:9 5:10 5:11 5:13 5:14 5:16 5:18 5:19 5:24 6:2 6:4 6:7 6:7 6:8 6:8 6:10 6:11 6:14 6:14 6:17 6:18 6:19 6:21 6:22 6:22 6:24 6:25 7:1 7:1 7:3 7:5 7:5 7:6 7:9 7:9 7:10 7:11 7:11 7:12 7:12 7:12 7:13 7:13 7:14 7:17 7:17 7:20 7:21 7:21 7:22 7:23 7:24 7:25 8:1 8:1 8:2 8:3 8:4 8:5 8:6 8:7 8:7 8:8 8:9 8:14 8:15 8:16 8:18 8:18 8:18 8:18 8:20 8:20 8:24 8:25 9:3 9:4 9:6 9:6 9:7 9:7 9:7 9:8 9:8 9:10 9:11 9:11 9:12 9:13 9:14 9:18 9:19 9:19 9:19 9:20 9:24 9:25 10:1 10:1 10:2 10:2 10:3 10:4 10:5 10:5 10:6 10:7 10:8 10:9 10:9 10:10 10:10 10:11 10:12 10:13 10:14 10:15 10:17 10:17 10:18 10:18 10:19 10:20 10:21 10:21 10:21 10:22 10:23 10:25 11:1 11:2 11:4 11:4 11:5 11:6 11:7 11:8 11:9 11:10 11:10 11:11 11:12 11:13 11:14 11:15 11:18 11:20 11:21 11:23 11:23 11:24 11:24 12:1 12:1 12:2 12:3 12:4 12:6 12:7 12:7 12:10 12:11 12:12 12:14 12:15 12:16 12:17 12:18 12:19 12:21 12:22 13:1 13:4 13:6 13:7 13:9 13:10 13:11 13:12 13:13 13:15 13:17 13:19 13:19 13:21 13:22 13:23 13:24 13:25 14:1 14:2 14:3 14:3 14:4 14:6 14:7 14:8 14:10 14:15 14:18 14:19 14:20 14:21 15:3 15:6 15:6 15:7 15:8 15:10 15:10 15:13 15:15 15:18 15:18 15:19 15:20 15:21 15:22 15:22 15:23 15:25 16:1 16:2 16:2 16:4 16:5 16:6 16:9 16:9 16:11 16:12 16:14 16:17 16:19 16:19 16:21 16:23 16:25 17:2 17:5 17:6 17:8 17:8 17:9 17:12 17:13 17:13 17:14 17:16 17:16 17:18 17:18 17:20 17:21 17:22 17:22 17:24 18:1 18:1 18:2 18:6 18:8 18:8 18:9 18:9 18:11 18:13 18:14 18:18 18:21 18:22 18:23 18:24 19:2 19:3 19:4 19:5 19:5 19:7 19:8 19:13 19:13 19:14 19:17 19:19 19:20 19:20 19:21 19:21 19:22 19:22 19:23 19:24 | | 22:2 22:3 22:6 22:7 22:11 22:12 22:12 22:13 22:14 22:15 22:17 22:18 22:19 22:19 22:22 22:23 22:23 22:24 23:1 23:1 23:3 23:5 23:6 23:8 23:9 23:9 23:10 23:14 23:14 23:16 23:16 23:21 23:22 23:23 23:23 23:24 23:25 24:2 24:3 24:3 24:7 24:11 24:13 24:14 24:14 24:15 24:20 24:21 24:24 25:3 25:4 25:8 25:9 25:9 25:10 25:11 25:12 25:16 25:18 25:19 25:19 25:21 25:23 25:23 26:1 26:2 26:5 26:9 26:7 26:9 26:9 26:10 26:14 26:15 26:20 26:20 26:21 26:22 26:23 26:23 27:6 27:10 27:11 27:13 27:14 27:17 27:18 27:19 27:23 27:24 27:24 28:1 28:1 28:4 28:6 28:7 28:7 28:7 28:8 28:9 28:11 28:12 28:13 28:16 28:17 28:18 28:20 28:21 28:21 28:22 28:23 28:23 28:25 29:2 29:2 29:4 29:6 29:7 29:8 29:10 29:11 29:13 29:16 29:17 29:18 29:20 29:21 29:21 29:22 29:22 29:23 29:24 30:3 30:6 30:7 30:7 30:12 30:13 30:16 30:18 30:18 30:20 30:22 30:22 31:1 31:3 31:4 31:4 31:9 31:15 31:7 31:8 31:9 31:17 31:19 31:20 31:20 31:22 31:22 31:22 31:23 31:24 32:1 32:2 32:3 32:4 32:8 32:9 32:9 32:13 32:14 32:17 32:18 32:19 32:21 32:24 33:2 33:4 33:7 33:7 33:7 33:11 33:15 33:16 33:18 33:20 33:22 33:24 33:24 33:25 34:1 34:3 34:3 34:4 34:5 34:6 34:6 34:6 34:8 34:8 34:10 34:10 34:11 34:12 34:14 34:14 34:15 34:16 34:18 34:18 34:19 34:22 34:23 35:1 35:1 35:2 35:5 35:8 35:11 35:11 35:12 35:14 35:14 35:15 35:17 35:19 35:20 35:21 35:21 35:24 35:25 36:3 36:6 36:7 36:8 36:11 36:12 36:18 36:18 36:23 36:25 36:25 37:1 37:1 37:2 37:2 37:4 37:8 37:10 37:17 37:18 37:19 37:20 37:22 37:23 37:23 37:24 37:25 38:1 38:3 38:6 38:8 38:9 38:11 38:13 38:15 38:15 | | 40:22 40:23 40:23 40:24 40:25 40:25 41:6 41:8 41:10 41:12 41:12 41:13 41:14 41:21 41:22 42:3 42:5 42:8 42:8 42:9 42:12 42:13 42:16 42:17 42:17 42:19 42:21 42:23 42:25 43:2 43:2 43:5 43:6 43:7 43:8 43:8 43:11 43:13 43:16 43:18 43:25 43:25 44:2 44:2 44:2 44:4 44:7 44:8 44:13 44:14 44:14 44:17 44:24 44:24 44:25 45:1 45:4 45:4 45:4 45:6 45:7 45:7 45:8 45:9 45:10 45:12 45:15 45:16 45:17 46:6 46:6 46:6 46:11 46:12 46:14 46:15 46:15 46:20 46:25 47:1 47:3 47:3 47:4 47:5 47:5 47:6 47:7 47:8 47:14 47:16 47:18 47:20 47:22 47:22 47:23 47:25 48:1 48:2 48:2 48:3 48:5 48:10 48:11 48:12 48:14 48:15 48:15 48:17 48:20 48:23 48:25 49:1 49:5 49:7 49:8 49:13 49:14 49:17 49:17 49:18 49:19 49:20 49:23 49:23 49:24 49:24 49:25 50:2 50:4 50:5 50:6 50:14 50:15 50:15 50:17 50:20 50:21 50:23 50:25 51:2 51:3 51:3 51:5 51:6 51:7 51:7 51:9 51:12 51:12 51:16 51:17 51:18 51:20 51:21 52:1 52:1 52:4 52:5 52:5 52:7 52:8 52:8 52:10 52:12 52:14 52:14 52:15 52:18 53:2 53:7 53:7 53:10 53:12 53:14 53:15 53:16 53:18 53:19 53:19 53:20 53:21 53:21 53:22 53:23 53:24 54:3 54:4 54:5 54:8 54:10 54:11 54:14 54:16 54:16 54:17 54:18 54:19 54:21 55:2 55:3 55:4 55:5 55:10 55:11 55:11 55:12 55:13 55:13 55:15 55:15 55:16 55:17 55:18 55:18 55:19 55:19 55:20 55:21 55:24 56:2 56:3 56:5 56:5 56:6 56:7 56:10 56:12 56:12 56:14 56:15 56:16 56:16 56:18 56:18 56:19 56:20 56:21 56:22 56:23 57:3 57:3 57:5 57:7 57:8 57:9 57:11 57:14 57:16 57:20 57:22 57:22 57:23 57:24 57:25 58:1 58:3 58:4 58:8 | | 61:7 61:13 61:15 61:16 61:19 61:24 61:25 61:25 62:1 62:3 62:8 62:10 62:14 62:17 62:18 62:20 63:1 63:3 63:6 63:8 63:11 63:12 63:13 63:13 63:14 63:17 63:18 63:18 63:18 63:19 63:20 63:20 63:24 63:24 64:2 64:5 64:5 64:5 64:6 64:6 64:11 64:12 64:13 64:13 64:14 64:18 64:19 64:23 64:23 65:3 65:5 65:7 65:8 65:13 65:17 65:18 65:19 65:19 65:21 65:24 66:1 66:2 66:2 66:4 66:4 66:5 66:8 66:9 66:10 66:13 66:13 66:15 66:15 66:16 66:16 66:17 66:18 66:19 66:20 66:21 67:1 67:3 67:3 67:4 67:7 67:9 67:13 67:17 67:19 67:21 67:21 67:22 67:22 68:1 68:2 68:5 68:7 68:7 68:8 68:12 68:13 68:16 68:18 68:19 68:23 68:25 69:5 69:5 69:8 69:10 69:11 69:16 69:21 69:21 69:22 69:24 69:24 70:6 70:7 70:8 70:9 70:10 70:12 70:13 70:14 70:19 70:21 70:22 70:22 70:23 70:24 71:1 71:4 71:7 71:10 71:13 71:14 71:14 71:15 71:15 71:17 71:22 71:23 71:24 71:24 72:1 72:1 72:2 72:4 72:5 72:6 72:9 72:12 72:12 72:13 72:14 72:15 72:16 72:17 72:18 72:19 72:20 72:20 72:21 72:23 72:23 72:24 72:24 72:25 73:1 73:2 73:2 73:3 73:5 73:6 73:7 73:10 73:11 73:12 73:13 73:15 73:18 73:20 73:22 73:23 73:23 73:24 73:25 74:1 74:6 74:8 74:13 74:17 74:20 74:22 74:24 74:25 75:1 75:2 75:5 75:10 75:13 75:17 75:23 76:1 76:4 76:5 76:7 76:9 76:9 76:10 76:10 76:12 76:14 76:15 76:15 76:17 76:18 76:19 76:19 76:20 76:21 76:23 77:1 77:4 77:5 77:8 77:10 77:13 77:13 77:13 77:15 77:17 77:17 77:18 77:19 77:20 77:23 77:25 78:2 78:4 78:8 78:9 78:12 78:15 78:20 78:23 79:1 79:7 79:9 79:9 79:10 79:11 79:13 79:19 79:23 79:23 80:1 80:3 80:3 80:4 80:13 80:16 80:17 80:20 80:25 81:1 81:5 81:7 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 81:9 81:10 81:11 81:14 81:16 81:19 81:21 81:22 81:25 82:3 82:4 82:5 82:6 82:7 82:9 82:11 82:12 82:14 82:21 82:22 82:23 82:23 82:24 83:2 83:4 83:8 83:8 83:9 83:10 83:10 83:11 83:13 83:15 83:16 83:17 83:19 83:20 83:23 83:24 83:25 84:5 84:11 84:13 84:13 84:14 84:15 84:15 84:18 84:18 84:20 84:23 84:25 85:2 85:3 85:3 85:4 85:5 85:8 85:16 85:18 85:18 85:20 85:20 85:21 85:22 85:24 85:25 86:2 86:4 86:10 86:10 86:11 86:16 86:18 86:18 86:21 86:23 86:24 86:24 87:2 87:4 87:16 87:16 87:17 87:17 87:19 87:21 87:22 87:23 88:1 88:4 88:7 88:8 88:9 88:13 88:15 88:16 88:17 88:20 88:22 88:25 89:3 89:3 89:4 89:6 89:7 89:9 89:11 89:12 89:13 89:14 89:17 89:19 89:24 89:25 89:25 90:2 90:2 90:3 90:3 90:4 90:4 90:4 90:7 90:8 90:11 90:11 90:12 90:13 90:14 90:15 90:15 90:15 90:16 90:18 90:19 90:19 90:21 90:23 90:23 91:1 91:4 91:4 91:5 91:8 91:8 91:10 91:14 91:15 91:16 91:18 91:18 91:22 92:3 92:7 92:10 92:12 92:13 92:13 92:14 92:15 92:17 92:18 92:19 92:19 92:21 92:23 93:1 93:3 93:5 93:6 93:6 93:12 93:13 93:13 93:15 93:16 93:18 93:18 93:21 93:23 93:25 94:5 94:8 94:9 94:9 94:10 94:11 94:12 94:14 94:16 94:18 94:20 94:23 94:24 95:2 95:4 95:5 95:9 95:12 95:14 95:15 95:19 95:23 96:1 96:4 96:6 96:8 96:9 96:9 96:10 96:16 96:21 96:22 96:23 97:1 97:3 97:5 97:8 97:10 97:10 97:11 97:11 97:13 97:14 97:17 97:19 97:23 97:25 98:3 98:4 98:7 98:10 98:11 98:11 98:14 98:15 98:17 98:18 98:21 98:25 99:2 99:4 99:4 99:6 99:7 99:7 99:8 99:8 99:9 99:10 99:10 99:13 99:15 99:20 99:22 99:24 100:1 100:4 100:4 100:7 100:11 100:16 100:16 100:17 100:18 100:22 100:23 100:25 101:8 101:11 101:11 101:12 101:13 101:15 101:18 101:19 101:23 101:24 102:1 102:5 102:6 102:6 102:8 102:12 102:15 102:18 103:1 103:1 103:6 103:13 103:17 103:25 104:1 104:4 104:5 104:7 104:10 104:12 104:17 104:20 104:22

**the(299)** 104:25 105:1 105:2 105:4 105:6 105:7 105:14 105:16 105:19 105:20 105:22 105:24 105:24 106:2 106:4 106:5 106:7 106:11 106:13 106:13 106:14 106:16 106:21 106:22 106:24 107:1 107:2 107:4 107:5 107:6 107:7 107:8 107:9 107:9 107:14 107:17 107:22 107:24 108:2 108:5 108:6 108:10 108:11 108:14 108:15 108:18 108:23 108:25 109:4 109:7 109:11 109:17 109:19 109:20 109:21 109:21 109:22 109:24 109:24 109:25 110:1 110:2 110:2 110:2 110:3 110:5 110:5 110:5 110:15 110:25 110:16 110:16 110:17 110:18 110:19 110:23 111:5 111:8 111:8 111:9 111:9 111:11 111:11 111:12 111:12 111:13 111:14 111:15 111:16 111:16 111:16 111:18 111:18 111:19 111:19 111:21 111:21 111:25 112:1 112:1 112:3 112:4 112:6 112:7 112:7 112:8 112:8 112:9 112:10 112:11 112:12 112:12 112:13 112:14 112:15 112:16 112:17 112:18 112:19 112:19 112:24 113:1 113:2 113:3 113:5 113:5 113:6 113:7 113:9 113:9 113:11 113:11 113:15 113:17 113:18 113:22 113:23 113:23 113:24 113:24 113:25 114:1 114:2 114:3 114:4 114:5 114:6 114:8 114:9 114:11 114:12 114:13 114:14 114:14 114:15 114:19 114:20 114:21 114:21 114:23 114:25 115:1 115:1 115:2 115:2 115:3 115:5 115:4 115:5 115:7 115:8 115:9 115:10 115:11 115:14 115:15 115:15 115:16 115:17 115:18 115:18 115:19 115:19 115:21 115:21 115:25 115:25 116:1 116:1 116:2 116:3 116:3 116:4 116:5 116:6 116:6 116:7 116:8 116:8 116:9 116:10 116:10 116:12 116:12 116:13 116:14 116:15 116:15 116:16 116:19 116:23 116:24 116:25 117:2 117:2 117:6 117:7 117:12 117:13 117:14 117:16 117:18 117:21 117:21 117:25 117:25 118:2 118:4 118:6 118:8 118:8 118:12 118:14 118:14 118:16 118:16 118:17 118:17 118:18 118:18 118:18 118:19 118:19 118:20 118:21 118:21 118:23 118:23 118:24 119:1 119:2 119:3 119:6 119:6 119:7 119:8 119:11 119:13 119:15 119:19 119:23 120:1 120:1 120:2 120:2 120:4 120:9 120:12 120:14 120:16 120:18 120:20 120:23 121:3 121:4 121:5 121:8 121:9 121:10 121:12 121:18 121:19 121:19 121:24 122:1 122:4 122:5 122:5 122:6

**their(80)** 8:10 9:22 9:22 12:4 12:8 14:5 16:7 16:10 16:16 17:16 26:2 26:14 26:21 27:14 27:15 31:2 33:21 34:13 35:6 36:3 41:16 41:20 42:4 42:17 42:22 44:25 46:13 46:22 53:16 54:1 54:23 56:18 58:10 59:4 59:4 59:6 59:8 59:17 59:17 59:18 60:5 60:6 60:7 60:9 60:11 60:15 61:22 62:23 63:21 63:22 64:16 64:22 65:16 68:18 73:7 76:16 87:11 89:8 90:20 92:1 100:15 102:21 107:8 110:9 110:9 110:9 110:19 110:20 110:22 111:6 111:7 113:6 113:12 113:12 113:13 115:24 116:2 117:4 117:16

**them(43)** 10:11 11:18 14:1 15:19 19:1 21:7 26:2 26:15 27:7 28:17 31:4 33:17 33:22 34:23 37:10 37:15 38:11 38:13 43:22 44:5 45:1 46:5 46:7 47:20 47:21 50:11 50:15 59:14 65:15 68:20 71:17 75:1 76:22 76:25 83:1 83:5 92:5 103:13 103:13 104:15 105:16 111:9 118:11

**theme(1)** 17:2
**themselves(3)** 7:14 25:25 30:20

**then(25)** 8:14 10:3 13:5 25:1 25:15 29:7 31:18 32:3 44:18 71:15 76:10 76:21 79:13 83:6 84:3 84:4 86:5 87:1 87:21 89:16 91:14 105:14 106:9 106:22 113:10

**there(74)** 8:4 9:2 11:25 13:14 14:5 15:11 15:17 16:17 20:10 21:7 21:12 23:1 23:17 27:2 29:4 30:15 33:6 36:21 38:12 45:22 46:2 50:17 52:19 54:12 56:3 58:20 63:4 63:6 63:7 63:14 63:16 64:7 64:22 71:11 71:12 74:3 80:18 83:17 84:1 85:14 85:25 87:17 87:17 88:18 89:22 89:24 90:13 93:10 90:24 91:2 91:23 92:17 95:22 100:14 101:4 101:5 102:7 102:22 103:3 103:12 104:24 105:14 105:17 105:23 106:1 106:12 106:17 106:24 106:21 111:5 114:22 115:8 116:20 119:20

**there's(18)** 6:15 10:12 13:25 16:19 16:25 19:10 20:13 21:9 25:5 33:18 49:4 99:7 100:9 100:25 101:3 101:10 103:21 120:25

**thereby(1)** 116:13
**therefore(7)** 15:3 27:23 82:19 100:3 117:16 118:11 118:14
**there'd(1)** 64:15
**there's(8)** 72:13 81:2 85:12 86:22 88:4 90:9 91:20 93:1

**these(32)** 5:20 13:1 13:15 14:24 17:17 18:15 23:13 25:14 26:3 27:16 29:5 49:3 52:7 53:11 63:14 65:6 67:12 71:19 80:13 80:19 97:23 99:22 101:9 103:3 103:4 103:15 104:1 104:14 110:24 113:24 115:7 115:12

**they(80)** 7:18 8:13 10:7 11:8 12:22 13:21 14:8 14:9 14:18 16:24 19:1 25:13 26:3 26:4 27:12 28:11 28:21 28:24 30:6 31:3 31:8 32:13 34:22 35:5 35:6 35:7 37:11 37:13 38:18 39:17 39:20 40:19 42:1 42:3 42:22 43:4 43:8 44:16 44:18 46:14 48:24 49:15 49:20 52:16 52:23 52:25 53:5 53:5 53:11 53:17 55:14 55:23 59:4 60:21 64:11 64:12 65:7 65:10 65:18 65:20 65:21 65:22 65:25 74:6 74:7 74:8 79:15 79:20 85:1 89:8 103:11 103:16 105:16 110:11 111:14 112:17 113:7 117:3 117:11 117:12

**they'd(1)** 106:25
**they'll(1)** 14:21
**they're(13)** 6:2 18:16 20:8 28:24 35:4 53:12 53:13 94:8 99:25 103:18 105:9 106:9 106:10
**they've(3)** 16:10 37:21 106:16
**they'd(1)** 57:23
**they'll(3)** 55:17 56:22 85:15
**they're(6)** 72:18 73:5 75:20 83:3 85:7 87:8 88:8
**thing(3)** 8:22 14:20 67:4
**things(15)** 6:1 22:5 25:5 33:6 36:8 37:25 38:1 41:7 65:10 82:5 85:13 86:4 87:4 87:7 102:14

**think(142)** 5:24 9:14 9:17 9:24 15:11 15:24 16:16 16:14 16:17 16:21 17:6 17:14 17:16 17:24 18:14 18:16 18:19 19:1 19:7 19:24 20:21 20:22 21:16 21:19 25:18 25:20 26:13 26:18 27:2 27:12 27:17 28:22 29:25 30:19 30:21 31:2 31:19 31:24 34:25 38:19 40:12 40:21 48:20 49:25 50:9 50:15 50:22 54:9 58:10 59:20 60:6 60:11 60:18 60:23 61:8 61:10 61:20 61:24 62:4 62:14 62:15 62:18 63:17 63:25 64:5 64:7 64:8 64:12 64:17 64:21 66:2 66:3 71:20 72:11 73:12 76:25 77:10 77:16 80:6 83:3 84:13 84:24 85:1 85:4 85:9 85:11 87:5 87:13 87:24 89:17 90:16 90:11 90:17 91:17 92:13 93:3 93:10 93:22 93:23 94:7 94:8 95:2 95:15 97:17 97:20 100:4 100:9 100:11 101:9 101:10 101:23 102:25 103:15 103:20 103:22 104:12 104:13 105:5 105:8 105:11 105:12 105:16 105:17 105:21 105:25 106:4 106:16 106:17 106:20 106:23 107:18 107:22 108:21 109:8 109:16 109:18 110:7 115:21 119:6 120:1 121:1 121:3

**thinking(1)** 98:3
**third(1)** 53:2
**this(159)** 6:4 6:12 8:10 8:11 8:21 9:24 11:3 11:5 11:6 11:16 14:15 15:21 16:24 17:8 17:10 17:12 18:9 18:22 19:10 19:15 20:18 22:1 22:4 22:9 23:4 23:24 24:6 24:6 24:9 24:24 28:11 28:18 28:24 29:3 31:11 31:12 31:13 32:5 33:7 33:9 34:2 35:9 35:16 36:9 36:10 36:15 36:22 37:14 37:19 37:21 38:7 42:24 42:25 43:6 44:1 47:8 48:22 50:13 51:1 53:25 55:6 56:25 58:10 59:2 59:4 59:7 61:9 61:11 61:18 62:1 62:5 62:5 63:3 63:17 64:3 64:20 64:24 65:1 66:14 66:19 67:6 68:2 69:2 69:4 69:12 69:19 69:22 70:14 70:16 70:16 70:25 71:14 71:4 71:16 73:20 74:10 74:20 76:6 77:2 77:8 78:25 79:4 79:17 80:11 80:22 80:23 81:13 81:14 81:23 84:3 84:19 85:1 85:5 85:13 86:9 87:4 87:10 87:24 87:25 89:14 89:23 91:10 91:12 92:22 93:3 93:24 95:6 96:2 96:9 96:19 96:20 98:20 99:21 100:4 100:6 100:7 100:8 100:13 100:19 100:24 101:6 101:11 103:10 104:4 105:13 105:17 107:10 108:12 109:15 110:8 111:23 111:23 113:12 116:24 118:22 119:21 120:8

**thomas(1)** 2:27
**thoroughness(1)** 66:13
**those(73)** 8:7 8:12 9:1 11:23 12:3 12:16 13:3 13:6 14:14 14:14 15:8 22:9 26:19 27:4 29:1 30:19 32:5 35:4 38:17 40:7 41:22 41:25 43:20 43:24 44:4 44:10 44:12 44:14 44:16 44:20 45:2 45:25 52:20 52:23 55:9 55:23 55:25 56:8 56:13 57:2 58:20 58:21 60:20 65:23 69:15 71:2 74:9 75:15 75:18 77:25 81:11 87:7 91:19 91:21 91:24 92:11 94:7 96:24 99:17 99:24 100:1 101:20 103:8 103:13 110:13 110:22 111:10 112:11 112:25 113:12 113:16 117:15 118:13

**though(7)** 39:12 68:2 81:12 84:22 87:17 88:3 89:12

**thought(5)** 12:23 31:4 40:18 68:3 119:19
**thoughtful(2)** 36:11 63:18
**thoughtfulness(4)** 59:17 59:18 60:7 60:14
**thoughts(2)** 60:21 107:20
**thousand(3)** 24:5 43:24 50:3
**thousands(7)** 16:20 26:7 35:1 38:10 50:19 103:4 116:16

**three(14)** 27:2 27:4 31:25 32:9 35:4 50:10 56:21 73:23 86:3 92:15 94:3 105:14 105:24 106:19

**three-year**(1) 101:16

**threshold**(6) 30:20 47:19 47:22 47:22 47:25 114:22

**thresholds**(1) 47:6

**through**(35) 7:7 7:20 9:11 10:11 19:1 19:21 25:21 26:1 36:14 37:20 38:13 38:23 40:25 44:13 45:10 47:21 51:13 52:18 55:20 56:14 58:14 58:20 61:1 61:15 62:15 62:16 63:18 63:19 84:20 113:12 116:9 116:10 116:12 121:3 121:7

**throughout**(9) 33:15 39:12 39:22 55:19 59:1 61:25 63:3 65:17 108:15

**thunder**(2) 120:14 120:20
**time**(57) 6:5 7:12 8:2 8:10 13:18 14:4 15:10 18:9 18:20 19:11 19:12 23:4 23:7 25:11 25:21 26:3 28:12 29:15 29:22 30:23 31:11 32:5 33:23 36:2 36:4 37:3 45:6 47:7 61:14 65:22 69:8 69:20 70:8 70:10 73:9 79:7 79:8 79:14 79:17 80:22 81:9 81:10 82:7 82:10 83:16 92:19 92:25 93:19 94:9 101:15 103:22 104:4 106:11 112:10 115:12 118:22 119:24 121:3

**time-to-time**(1) 26:14
**timely**(3) 36:11 54:21 56:6
**times**(5) 36:21 38:24 62:5 111:3 121:5
**timing**(3) 116:1 119:15 120:2
**tirelessly**(1) 37:14
**today**(44) 5:11 6:3 6:6 22:15 23:13 31:15 31:22 35:23 36:2 36:4 37:3 45:16 49:5 54:16 57:5 62:2 64:20 66:9 69:6 75:10 75:16 82:18 84:13 89:12 89:16 91:17 92:6 96:1 96:7 99:24 100:4 100:5 101:22 101:25 102:6 102:7 103:22 104:25 106:14 107:6 109:13 115:16 119:8 119:23

**today's**(2) 33:11 33:16
**together**(2) 9:8 94:19
**togut**(3) 2:40 9:21 33:4
**told**(3) 7:19 44:8 72:12
**toll**(1) 44:21
**tomorrow**(2) 75:17 119:23
**too**(7) 36:12 36:17 64:2 80:15 87:3 95:20 116:1

**took**(11) 7:12 7:17 23:10 27:8 38:18 38:18 40:16 61:20 62:15 82:10 111:9

**top**(1) 103:19
**total**(1) 41:1
**toward**(1) 46:24
**towards**(3) 20:2 71:3 79:23
**town**(9) 26:9 26:10 26:25 44:8 44:10 47:4 56:10 64:13 113:12

**track**(1) 98:19
**transcriber**(1) 122:9
**transcript**(3) 1:19 1:48 122:5
**transcription**(2) 1:41 1:48
**transcripts**(1) 57:15
**transition**(10) 10:6 49:23 50:24 51:20 63:7 63:16 63:22 63:22 66:4 68:1

**transitions**(2) 33:22 63:9
**transparency**(1) 42:2
**treat**(1) 111:1
**treated**(4) 20:5 42:4 112:14 113:1
**tremendous**(1) 110:22
**trial**(2) 9:2 115:9
**tried**(3) 18:8 25:15 61:4
**true**(1) 112:21
**trust**(3) 3:34 91:3 117:2
**trustee**(3) 2:19 2:19 110:2
**try**(9) 15:17 16:3 40:6 46:15 64:2 69:6 84:17 85:20 87:1

**trying**(6) 21:8 59:18 60:8 61:5 61:7 74:15

**tuesday**(1) 5:1
**tunnell**(1) 1:24
**turn**(5) 5:13 20:20 30:5 115:14 119:24
**turning**(1) 89:1
**turns**(3) 112:1 113:22 116:11
**tweed**(2) 2:26 3:18
**two**(16) 13:15 13:19 14:17 23:24 38:12 42:10 42:10 42:19 54:8 74:20 81:23 82:1 82:6 82:25 96:21 98:8

**tyler**(1) 3:35
**type**(5) 22:2 80:19 103:10 103:17 103:19
**types**(2) 34:6 52:20
**u.s**(2) 31:23 83:25
**ultimate**(2) 18:22 55:8
**ultimately**(7) 29:20 38:16 51:2 61:16 61:17 63:15 113:21

**um-hum**(3) 103:6 108:17 108:17
**unacceptable**(1) 52:6
**uncertain**(2) 51:4 57:2
**uncertainly**(1) 20:1
**uncertainties**(1) 20:1
**under**(35) 13:1 13:24 15:23 16:25 17:10 17:11 21:17 22:18 28:11 38:16 39:7 42:5 42:9 45:9 46:12 46:25 49:6 49:7 51:2 53:6 53:7 55:3 56:24 62:1 74:14 75:12 78:17 80:13 80:15 80:19 83:4 88:6 86:15 86:15 97:23

**underlying**(1) 118:19
**understand**(36) 7:16 10:2 10:25 11:2 15:25 20:11 21:6 22:11 25:4 34:12 40:1 42:19 43:16 43:20 53:18 55:7 56:1 56:11 65:21 69:20 70:22 71:10 72:9 73:7 73:8 76:13 89:3 92:3 92:3 95:9 96:11 99:9 103:3 104:6 107:1 107:14

**understanding**(5) 15:8 21:20 21:25 27:8 91:18

**understood**(2) 38:22 43:4
**undisputed**(2) 27:12 30:1
**unexpectedly**(1) 121:14
**unfortunate**(2) 71:11 50:7
**unfortunately**(6) 58:13 62:5 62:12 63:14 69:10 111:3

**uniformity**(1) 103:20
**unilaterally**(1) 111:10
**unique**(3) 75:9 88:2 106:4
**uniquely**(1) 51:8
**unit**(1) 69:25
**united**(2) 1:3 1:21
**unless**(2) 32:6 56:19
**unlike**(1) 87:25
**unsecured**(8) 2:4 4:21 35:15 65:11 66:5 66:20 110:1 113:4

**unsympathetic**(2) 88:24 89:3
**until**(5) 55:6 56:19 56:20 61:3 85:24
**unto**(1) 117:19
**unusual**(2) 87:24 87:25
**upon**(5) 7:11 27:14 51:6 52:13 52:16
**ups**(1) 69:3
**urge**(1) 73:12
**use**(10) 10:6 14:22 15:15 17:12 22:3 60:11 62:22 96:25 107:18 114:10 114:11

**used**(8) 41:17 41:25 42:10 48:16 48:19 48:22 109:7 111:1

**usual**(1) 117:19
**valid**(2) 13:4 42:24
**value**(7) 33:20 33:21 40:22 71:2 80:12 91:8 114:18

**various**(3) 61:7 61:25 65:21
**vary**(1) 28:18

**veba**(24) 11:3 11:4 11:6 22:1 34:9 37:20 41:14 41:18 42:23 44:8 44:15 46:15 46:22 46:25 47:7 54:17 54:18 55:17 56:5 56:6 56:14 59:25 63:20 117:2

**vehicle**(1) 116:25
**vein**(1) 16:6
**venue**(1) 70:14
**versus**(3) 22:19 22:19 103:18
**very**(52) 5:8 6:5 9:21 13:7 18:14 19:12 25:10 25:24 35:9 35:16 38:20 38:20 38:23 43:10 49:19 59:6 59:6 59:9 61:4 63:18 64:7 64:24 66:3 68:3 68:4 68:25 78:7 78:22 82:12 82:16 84:22 86:4 86:13 98:20 99:11 102:1 107:9 108:9 108:9 108:14 108:16 108:23 109:12 110:8 111:5 113:8 115:9 120:9 121:4 121:9 121:12 121:16

**veteran**(2) 21:20 116:11
**via**(2) 69:3 74:7
**victim**(1) 90:20
**view**(4) 15:15 30:10 53:12 105:23
**viewed**(3) 22:23 24:10 88:2
**viewpoints**(1) 63:6
**vigilantly**(1) 59:2
**vigorously**(1) 23:11
**virtue**(1) 109:23
**visteon**(2) 7:19 18:2
**voice**(4) 26:5 26:21 26:22 42:22
**voluminous**(1) 8:3
**voluntarily**(2) 88:7 117:20
**vote**(2) 45:5 64:15
**voting**(2) 47:8 47:22
**wagner**(1) 47:15
**wait**(1) 79:12
**waive**(2) 15:1 30:11
**waived**(1) 30:8
**walk**(3) 7:7 10:11 54:10
**walked**(1) 11:18
**wally**(1) 81:2
**walter**(2) 4:11 78:25
**want**(37) 15:5 15:6 15:15 16:23 22:14 31:8 32:20 35:13 36:14 40:4 46:19 59:25 66:15 67:20 74:10 74:17 74:18 79:3 83:13 83:14 84:25 85:23 87:3 87:9 87:11 88:22 90:1 91:24 93:11 93:23 98:1 98:20 102:4 108:20 109:5 119:1

**wanted**(18) 11:19 13:2 22:12 24:8 42:22 46:14 59:10 59:21 59:23 60:2 65:23 76:11 76:12 93:24 94:7 106:3 118:25 120:14

**wants**(5) 32:6 92:14 96:6 96:7 96:14
**ward**(1) 114:14
**warrants**(1) 101:14

**was**(169) 7:22 8:1 8:4 8:17 9:2 9:12 9:14 10:14 11:7 11:20 12:13 12:22 18:16 21:1 21:19 21:19 23:3 23:10 23:19 24:6 24:9 25:8 25:18 28:22 29:2 29:9 29:19 29:23 30:18 30:21 31:4 32:22 35:20 36:16 38:12 40:18 41:12 41:12 41:20 42:15 42:18 42:25 43:4 43:21 44:16 44:18 45:4 45:8 45:12 45:14 45:22 45:24 46:2 46:10 46:11 47:9 47:11 47:19 47:22 48:12 48:16 48:19 48:22 51:1 51:18 52:6 55:10 56:22 56:25 61:9 61:24 62:13 62:16 63:4 63:6 63:7 63:14 64:24 65:16 67:12 68:2 68:3 68:3 69:13 69:17 69:24 69:25 70:6 70:9 70:17 70:17 71:8 71:21 71:23 73:22 74:1 76:4 76:19 79:5 79:5 79:6 79:19 81:5 82:10 82:10 83:9 83:24 83:24 84:4 84:4 84:23 84:24 85:1 86:1 86:1 86:2 86:6 86:6 86:12 86:12 86:13 86:14 86:18 86:18 86:18 87:12 87:13 87:17 88:4 88:6 88:14 88:23 89:7 90:6 90:13 90:14 90:14 90:17 90:23 91:1 91:2 91:5 91:6 92:17 93:11 93:12 93:19 93:25 94:4 94:13 94:22 94:23 95:20 98:3 105:17 107:21 108:11 108:14 108:14 109:7 109:7 111:2 111:5 111:10 111:14 113:18 117:21 120:17 122:1

**wasn't**(2) 41:3 106:11
**wasn't**(6) 59:24 60:1 61:10 61:21 63:10 63:10 76:17 76:22

**watch**(1) 85:12
**watching**(1) 75:2
**way**(32) 7:21 10:21 24:12 28:5 31:3 33:21 38:23 48:20 49:5 50:15 54:20 59:19 60:10 62:6 62:25 63:18 65:19 74:11 75:17 75:22 77:1 79:10 82:5 84:2 85:25 91:5 91:10 100:17 101:20 102:3 103:1 111:4

**ways**(3) 6:5 16:4 41:7
**we'd**(3) 3:36 107:6 107:11
**we'll**(5) 5:24 14:22 30:5 33:16 34:24 37:6 98:13 101:15 103:21 103:21 120:8 121:20

**we're**(31) 6:2 6:13 8:13 11:9 13:8 17:13 18:6 19:18 19:23 20:2 23:22 24:16 25:11 26:24 28:6 29:3 32:19 33:12 33:15 38:25 54:9 54:12 95:22 97:15 98:19 102:7 102:24 103:23 104:21 115:15 121:19

**we've**(25) 6:5 7:22 9:17 16:10 16:11 17:2 17:3 17:9 18:13 18:14 19:7 19:22 23:20 23:21 25:15 25:23 33:14 48:6 49:13 50:5 51:15 52:3 52:25 95:7 102:5

**webb**(1) 3:35
**webinar**(1) 47:4
**webinars**(4) 43:19 43:20 45:3 56:11
**website**(2) 43:7 48:2
**week**(1) 9:14
**weeks**(2) 86:4 86:11
**weighed**(2) 39:25 51:3
**welcome**(3) 37:4 81:19 81:21
**welfare**(4) 13:25 45:10 46:13 53:8 53:13 53:17 73:3 110:24 111:6

**well**(39) 5:8 13:11 17:21 18:4 18:24 20:3 20:19 29:12 32:20 54:9 58:21 59:10 60:8 61:7 64:1 64:22 65:18 68:25 69:2 70:8 71:7 80:15 82:16 88:6 89:23 91:2 96:23 97:17 97:25 98:7 103:11 103:14 105:19 107:10 107:18 108:21 114:6 120:9 120:25

**well-stated**(1) 71:8
**well-thought**(1) 62:16
**well-worked**(1) 84:14
**went**(9) 9:11 19:21 41:4 43:3 46:21 62:15 79:15 84:5 96:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**were**(64) 6:21 12:22 12:24 13:17 13:18 13:23 14:8 15:20 15:21 18:21 24:22 25:13 27:18 34:22 35:16 35:17 36:21 38:19 41:11 41:25 42:1 42:2 42:3 42:16 42:19 43:19 44:4 44:14 44:24 45:5 45:21 46:25 47:9 53:11 58:18 58:21 59:22 59:24 62:6 62:24 63:12 63:15 65:18 65:25 66:7 67:25 72:6 76:15 76:21 76:21 78:1 84:1 84:2 85:1 89:24 90:5 103:8 103:12 104:23 105:14 105:16 106:1 106:24 110:4

**weren't**(2) 8:13 44:23
**we'd**(2) 63:3 80:14
**we'll**(5) 56:4 75:17 78:17 84:10 87:21
**we're**(5) 61:13 64:20 77:9
**we've**(8) 55:24 58:24 61:15 63:17 72:12 73:12 80:16 84:22

**what**(58) 12:14 23:23 31:3 31:16 33:5 33:9 38:18 40:6 41:11 41:12 42:19 42:21 43:4 43:21 46:16 48:2 52:21 56:25 60:6 60:11 62:22 64:11 64:11 64:12 66:24 71:5 72:11 75:18 76:11 76:24 77:4 77:9 79:3 80:15 80:16 81:10 81:11 82:10 84:16 84:24 85:8 86:1 86:6 86:6 86:8 86:14 88:7 90:6 90:17 91:19 94:22 95:7 97:13 107:17 109:12 109:15 115:19 119:17

**what's**(7) 9:6 21:14 23:6 44:1 99:12 99:12 105:12

**whatever**(5) 83:6 89:11 102:15 102:22 104:12

**whatsoever**(1) 84:19
**what's**(2) 84:12 89:9
**when**(31) 16:18 19:17 22:10 23:12 25:12 26:14 36:12 36:16 39:4 40:1 40:22 42:16 52:22 61:10 62:9 62:14 65:20 69:17 69:24 75:1 75:17 79:20 83:11 84:4 85:22 94:20 96:20 96:21 98:9 115:12

**where**(24) 9:18 16:12 18:15 19:12 20:10 21:24 22:4 36:21 44:12 59:24 60:2 61:21 62:12 63:7 64:4 65:1 71:12 81:3 83:17 84:12 85:1 92:20 99:21 103:12

**whereupon**(1) 122:1
**whether**(13) 12:23 12:24 25:12 25:16 26:16 28:9 46:14 49:23 64:15 81:8 109:9 114:20 119:22

**which**(44) 6:14 6:20 7:19 17:2 20:11 22:15 22:23 25:5 25:24 27:18 28:12 28:19 29:14 29:22 30:14 32:1 32:3 32:4 48:19 49:19 51:22 53:9 69:4 70:6 70:9 79:19 82:23 84:17 85:13 86:3 86:22 92:14 106:3 110:21 111:14 112:2 112:3 112:10 112:24 113:18 116:19 117:14 118:18

**while**(23) 8:13 8:13 10:2 11:16 13:14 16:22 17:14 19:6 19:14 21:10 23:15 31:21 59:22 62:15 73:8 80:7 89:13 90:22 100:18 102:4 110:23 113:3 114:7

**who**(58) 14:8 19:14 21:20 21:20 22:13 23:22 25:22 27:2 31:6 31:10 32:18 35:14 35:15 35:17 36:7 39:15 40:11 41:11 42:4 42:8 42:13 43:18 46:3 46:3 46:11 51:19 52:13 54:4 59:21 60:25 67:25 68:1 68:3 68:12 73:22 80:15 81:9 83:9 84:2 84:6 85:14 85:15 87:5 88:15 88:19 88:20 96:24 99:3 101:6 107:6 108:14 110:21 110:24 116:6 115:23 115:24 117:9 117:15 118:20

**who's**(3) 35:22 37:2 117:18
**whole**(12) 8:5 12:12 21:23 22:22 83:22 87:15 87:15 93:16 95:6 100:9 105:18 110:15
**wholeheartedly**(1) 66:6
**wholly**(1) 12:23

**whom**(1) 36:2
**whose**(1) 118:13
**who's**(5) 58:12 59:8 60:25 82:5 84:21
**why**(11) 8:9 19:15 29:1 29:24 35:12 42:10 53:22 73:25 81:12 89:15 93:6

**wife**(4) 86:7 86:15 86:17 88:11
**wife's**(1) 93:19
**will**(66) 6:14 7:14 11:3 13:6 13:11 15:9 21:12 23:12 23:20 24:15 26:15 32:17 32:20 33:20 33:21 33:23 40:23 40:25 41:1 47:14 17:15 19:1 20:4 20:11 20:12 20:17 21:4 22:14 24:3 24:21 25:6 29:5 30:7 30:9 30:25 31:21 32:5 34:12 35:10 38:19 39:6 41:13 41:17 44:9 46:22 46:24 47:1 52:17 52:25 55:25 57:21 60:18 60:24 62:13 65:11 65:15 65:20 65:20 65:21 66:8 66:17 69:23 70:12 73:11 74:8 74:12 75:14 76:9 76:11 77:4 77:8 77:11 77:11 77:16 79:16 80:11 80:12 80:14 81:6 81:9 89:14 91:11 93:2 94:22 95:7 96:11 98:5 98:6 101:6 101:18 102:4 102:6 103:1 105:10 106:5 109:16 110:21 111:5 115:9 115:10 116:15 121:1

**william**(1) 2:33
**willing**(3) 24:16 45:13 45:14
**willingness**(1) 90:21
**willkie**(1) 3:14
**wilmington**(7) 1:14 1:28 2:9 2:23 2:37 3:5 5:1

**wind**(2) 19:9 21:12
**winters**(1) 35:22
**wish**(3) 25:8 92:16 104:25
**wished**(1) 25:7
**wishes**(2) 45:21 83:7
**wishing**(1) 68:13
**with**(134) 5:10 5:12 6:7 7:5 7:23 8:5 8:5 9:8 9:18 10:24 12:7 13:12 15:14 16:5 17:1 20:20 21:7 21:12 25:23 26:24 27:8 27:10 30:6 30:10 30:18 31:9 31:19 31:20 32:17 33:9 34:3 34:8 34:19 37:2 37:15 37:24 40:2 41:5 41:7 42:22 43:6 43:15 44:6 46:21 46:22 47:8 48:13 49:5 49:18 53:9 53:24 55:11 55:18 55:24 56:5 58:2 58:9 58:16 58:24 59:5 59:9 60:21 60:22 61:1 61:4 61:4 61:7 61:14 61:19 62:1 62:2 62:25 64:20 66:17 69:23 71:18 71:21 72:6 72:19 72:23 73:1 73:23 73:24 74:7 74:12 75:15 75:16 79:5 79:16 81:6 82:12 83:1 83:5 84:6 87:8 87:20 89:7 89:23 90:14 90:15 90:18 91:3 94:8 94:20 102:14 102:21 102:24 103:10 105:2 105:16 105:24 106:9 107:11 107:21 108:14 110:1 110:17 111:13 113:10 113:15 115:15 115:25 117:12 118:12 118:14 119:10

**withdrawn**(1) 86:12
**withdrew**(2) 7:21 113:6
**within**(7) 44:5 49:14 70:8 86:3 102:21 104:1 114:23

**without**(16) 7:14 36:3 36:5 37:12 37:12 61:16 61:19 69:18 70:18 71:17 71:19 77:11 77:17 100:14 109:10 116:4

**won't**(4) 34:2 38:1 49:17 54:2
**wonder**(1) 109:14
**wonderful**(1) 87:23
**won't**(1) 55:8
**word**(4) 15:16 83:18 87:2 109:7
**words**(2) 93:11 100:12
**work**(19) 9:8 14:4 25:6 28:19 37:1 43:17 43:21 43:21 44:2 53:8 54:13 56:5 56:6 60:12 60:15 70:3 74:3 82:7 83:15

**worked**(15) 6:5 9:21 13:15 25:23 35:12 37:14 58:19 59:19 59:22 60:2 60:8 60:23 61:4 69:25 81:3

**working**(10) 7:23 8:13 9:11 19:14 20:2 26:3 54:17 66:24 73:1 79:16

**works**(1) 85:25
**world**(5) 49:24 49:24 50:4 66:1 104:22
**worry**(1) 45:25
**worse**(1) 9:5
**worth**(2) 7:6 24:2
**worthy**(1) 109:19
**would**(111) 6:19 6:20 7:12 7:18 9:3 9:3 10:3 10:11 10:13 10:15 10:15 12:16 12:22 12:24 13:22 13:23 14:25 15:21 15:23 16:1 17:14 17:15 19:1 20:4 20:11 20:12 20:17 21:4 22:14 24:3 24:21 25:6 29:5 30:7 30:9 30:25 31:21 32:5 34:12 35:10 38:19 39:6 41:13 41:17 44:9 46:22 46:24 47:1 52:17 52:25 55:25 57:21 60:18 60:24 62:13 65:11 65:15 65:20 65:20 65:21 66:8 66:17 69:23 70:12 73:11 74:8 74:12 75:14 76:9 76:11 77:4 77:8 77:11 77:11 77:16 79:16 80:11 80:12 80:14 81:6 81:9 89:14 91:11 93:2 94:22 95:7 96:11 98:5 98:6 101:6 101:18 102:4 102:6 103:1 105:10 106:5 109:16 110:21 111:5 115:9 115:10 116:15 121:1

**wouldn't**(3) 36:3 36:4 36:10
**wouldn't**(1) 91:6
**written**(3) 25:8 98:4 108:13
**wrong**(3) 22:5 87:13 90:10
**wrote**(2) 92:21 101:5
**www.diazdata.com**(1) 1:45

**year**(25) 7:23 14:15 18:14 19:15 19:24 23:14 23:23 23:24 25:2 25:7 25:10 25:13 28:12 28:13 30:20 62:11 79:21 79:22 85:20 85:22 86:10 86:24 113:17 116:2 118:7

**year's**(1) 9:14
**year-and-a-half**(1) 62:11
**years**(23) 14:9 14:12 20:15 23:18 28:14 28:23 30:17 30:19 30:22 42:6 48:17 56:21 74:1 79:5 81:4 81:23 82:1 82:6 87:8 96:21 98:8 111:6 111:7

**years'**(1) 79:6
**yes**(107) 6:10 6:17 6:25 7:10 8:16 10:19 11:12 12:10 12:19 13:13 18:5 18:11 18:18 20:7 20:24 22:7 23:3 28:16 29:10 29:17 31:18 33:2 36:6 36:23 37:8 38:6 38:6 39:2 41:10 47:16 48:25 51:9 52:12 54:14 57:14 58:15 60:16 64:2 64:18 65:8 65:13 65:14 65:24 67:13 68:23 69:9 72:4 72:15 74:22 74:24 75:23 78:4 78:5 78:7 78:12 78:25 79:1 79:2 80:5 80:23 80:25 81:17 81:18 81:25 82:3 82:9 82:23 83:9 84:11 88:9 89:19 92:10 93:2 93:15 94:5 94:5 94:5 95:2 95:9 95:14 95:18 96:4 96:16 97:1 97:7 97:8 97:9 97:22 98:3 98:10 102:1 102:11 104:20 105:4 105:6 107:4 108:8 108:10 108:25 118:3 118:5 118:21 119:17 119:17 119:20 120:6 120:12

**yesterday**(3) 52:10 91:7 97:6
**yet**(4) 46:3 60:21 83:4 85:14
**yoakum**(39) 4:15 27:3 27:9 53:3 68:21 68:21 68:23 68:24 69:2 69:10 71:8 71:17 71:21 72:6 72:13 72:24 73:8 73:13 73:17 73:19 73:19 74:13 75:8 75:14 77:6 77:22 78:7 78:20 78:21 79:3 79:24 105:15 105:25 117:9 119:2 119:12 119:22 120:4 120:6

**yoakum's**(3) 115:15 118:15 119:2
**yoakum's**(4) 76:14 76:23 78:16 80:8
**yogi**(1) 99:4
**york**(6) 1:35 2:16 2:29 2:45 3:35 36:17
**yorkers**(1) 96:24

**you**(266) 5:3 5:4 5:7 5:8 5:14 5:15 5:23 7:19 11:18 11:25 12:23 12:23 12:25 12:25 13:4 13:5 13:11 14:3 14:4 14:14 14:15 14:22 14:23 15:1 15:4 15:5 15:15 15:20 16:8 16:14 16:14 16:15 16:16 16:24 17:9 18:7 20:12 20:14 21:13 22:2 22:2 24:4 24:10 24:10 25:6 25:7 25:7 25:7 25:8 27:20 27:21 27:22 27:23 27:23 28:1 28:17 28:19 28:20 28:20 29:9 30:11 32:16 32:21 32:21 32:24 32:25 33:13 34:1 34:14 35:9 36:18 37:4 37:5 38:24 39:22 40:5 40:6 42:12 42:12 47:21 52:13 57:7 57:13 58:1 58:4 59:6 59:17 60:13 62:9 62:10 62:10 62:22 62:22 64:15 64:20 65:19 66:9 66:10 67:2 67:3 67:5 67:8 67:9 67:15 67:17 67:19 68:9 68:10 68:11 68:24 68:25 69:1 69:8 69:9 71:5 71:7 72:14 72:24 73:15 73:15 74:2 74:13 74:16 74:17 74:18 74:23 75:17 77:3 77:16 77:23 78:7 78:19 78:22 78:23 79:8 79:9 79:10 79:12 79:12 79:12 79:13 79:20 79:24 80:2 80:3 80:6 80:20 80:20 81:8 81:15 81:16 81:20 81:22 82:6 82:15 82:16 84:7 84:8 84:8 84:9 85:6 85:8 85:10 85:11 85:14 85:15 85:15 85:16 85:17 85:17 85:19 85:19 85:20 85:21 85:23 85:23 85:24 86:13 86:23 86:25 86:25 87:1 87:8 87:8 87:9 87:11 87:23 88:15 89:9 91:14 91:14 91:20 91:22 92:16 93:3 93:17 93:22 94:17 94:18 95:10 95:11 96:17 96:18 97:13 97:20 98:1 98:4 98:5 98:6 98:22 99:5 100:5 100:25 102:8 102:8 103:18 103:19 103:25 103:25 104:4 104:10 104:11 104:17 104:18 104:19 105:10 107:3 107:6 107:7 107:16 107:17 107:21 107:24 108:1 108:2 108:3 108:6 108:6 108:12 108:16 108:18 108:18 108:19 109:6 119:10 120:5 120:9 120:11 120:21 120:21 120:22 121:2 121:11 121:13 121:14 121:16 121:17 121:18 121:18 121:20 121:22 121:23 121:24 121:24 121:25

**you'll**(2) 12:1 13:5
**you're**(12) 12:24 17:21 22:10 27:21 27:25 27:25 28:5 38:9 30:25 31:15 40:3 112:8

**you've**(8) 11:15 13:3 17:7 24:13 30:11 33:9 105:9 105:13

**young**(1) 3:1
**your**(138) 5:6 5:12 5:15 5:17 6:4 6:6 6:12 6:13 7:4 7:8 8:12 10:16 13:10 14:25 18:6 18:12 19:6 28:14 30:11 31:19 32:16 32:23 33:5 33:25 34:15 35:19 36:4 36:7 36:14 36:15 37:13 37:24 38:4 38:7 38:12 39:6 39:12 40:16 41:3 41:5 41:8 41:24 42:7 43:1 43:5 44:8 45:6 45:19 45:20 46:10 46:10 48:11 49:17 50:2 51:6 52:7 52:10 52:16 54:7 54:9 54:15 55:15 56:15 57:2 58:2 58:6 58:8 58:24 62:7 64:24 66:2 66:8 66:12 66:12 66:23 67:2 67:4 67:8 67:11 68:1 68:21 69:8 71:20 72:2 73:4 73:17 74:14 74:16 74:19 75:7 75:12 75:22 77:24 78:13 81:20 81:22 82:14 83:6 83:21 85:5 85:6 87:20 88:2 89:1 89:16 89:21 91:17 91:24 94:19 95:1 95:12 95:25 96:18 97:24 100:12 100:12 101:4 101:21 101:25 102:11 103:4 104:6 104:19 105:12 107:3 108:1 108:3 108:9 119:5 120:11 120:13 120:22 121:6 121:12 121:22 121:25

**yourself**(1) 98:5
**you're**(1) 77:22 85:10 85:17
**you've**(5) 55:10 59:11 60:6 60:12 87:1
**zahrlddin**(6) 67:9 67:11 67:14 67:17 67:20 68:11

**zalakar**(1) 37:10
**zealous**(3) 8:19 9:22 16:9
**zero**(1) 106:19

NORTEL.4.2. hs. DOC

| Word | Page:Line |
|------|-----------|
| **"retire"**(1) 81:8 | |

EXHIBIT 2

## CALLTRAX Form Report

### Ticket #: 2948048

| Ticket Create Date | Ticket Close Date | Category Description | Subcategory Description |
|---|---|---|---|
| 2009/02/24 | 2009/02/27 | RETIREMENT/ PENSION | Medical, Dental, Life |

| | |
|---|---|
| Global Id | 1155443 |
| First Name | JOHN |
| Last Name | YOAKUM |
| Birth Date | 1954/02/19 |
| Govt Id | Redacted - Personal Information |
| Home Address Line 1 | 1704 KILARNEY DR |
| Home Address Line 2 | |
| Home Address City | CARY |
| Home Address State | NC |
| Home Address Country | US |
| Home Address Zip | 27511 |
| Home Phone | 9194699383 |

| Comment |
|---|
| John said he's going over ret medical and wants clarification of some things...I told him about S@W with info re: CARP and Ret Med SPD...He was under the assumptiopn that he couldn't rec his Ret Med unless he recs his Ret Pens...I will chk further and then call him back if I'm wrong...<br>YAUDREY MCCARTHY : 2009 02 24 12:19:13<br>Closing tkt due to no further response<br>YAUDREY MCCARTHY : 2009 02 27 08:38:51 |

Highly Confidential - Attorneys' Eyes Only

Universe: CALLTRAX

4/3/13 11:50 AM

## CALLTRAX Form Report

### Ticket #: 2958428

| Ticket Create Date | Ticket Close Date | Category Description | Subcategory Description |
|---|---|---|---|
| 2009/03/24 | 2009/03/24 | RETIREMENT/ PENSION | CARP/SARP/NNSP/ RRSP (process and policy) |

| | |
|---|---|
| Global Id | 1155443 |
| First Name | JOHN |
| Last Name | YOAKUM |
| Birth Date | 1954/02/19 |
| Govt Id | Redacted - Personal Information |
| Home Address Line 1 | 1704 KILARNEY DR |
| Home Address Line 2 | |
| Home Address City | CARY |
| Home Address State | NC |
| Home Address Country | US |
| Home Address Zip | 27511 |
| Home Phone# | 9194699383 |

| Comment |
|---|
| active ee wanted to know if he had to begin pension benefit in order to qualify for retiree medical. states he was previously told he did not have to. i emailed him the spd for 2005 in which it states that you have to commence your pension in order to qualify for retiee medical starting on page 7. YJANICE WRENCH : 2009 03 24 17:00:15 |

Highly Confidential - Attorneys' Eyes Only

Universe: CALLTRAX

4/3/13 11:50 AM

## CALLTRAX Form Report

### Ticket #: 2990670

| Ticket Create Date | Ticket Close Date | Category Description | Subcategory Description |
|---|---|---|---|
| 2009/07/29 | 2009/07/29 | RETIREMENT/ PENSION | Retiree Medical Premium |

| | |
|---|---|
| Global Id | 1155443 |
| First Name | JOHN |
| Last Name | YOAKUM |
| Birth Date | 1954/02/19 |
| Govt Id | Redacted - Personal Information |
| Home Address Line 1 | 1704 KILARNEY DR |
| Home Address Line 2 | |
| Home Address City | CARY |
| Home Address State | NC |
| Home Address Country | US |
| Home Address Zip | 27511 |
| Home Phone | 9194699383 |

| Comment |
|---|

Highly Confidential - Attorneys' Eyes Only

4/3/13 11:50 AM

## CALLTRAX Form Report

**Comment**

John said he wants to know how to calculate his Retiree Medical cost...I told him the formula to be emailed to him at yoakum@nortel.com after lunch today and he then said he wants everyting and not to leave anything out..Thx Bobbie

YAUDREY MCCARTHY : 2009 07 29 10:50:03

Hi John,

I have attached the breakdown of the 90/70 and 80/60 retiree medical plan cost. The cost is based on your defined dollar benefit (DDB) credit and Nortel's amount.

Example:
If you enroll into the retiree 90/70 plan, the monthly cost will be $1554 for family coverage. Your DDB credit amount will be based on $26.53 x 15 years of service after age 40 which totals $397.95 for you. Your spouse DDB credit amount will be based on $10.61 x 15 years of service which totals $159.15.

$1554.00  Nortel Cost
- 557.10  Employee/spouse credits (Offset)
$ 996.90  Total monthly cost


Please see definition of your DDB credits below.

What are defined dollar benefit (DDB) credits?

For each year of service, participants accrue a defined dollar benefit (DDB)

credit. The number of credits is multiplied by a dollar value to arrive at an amount

that is used to offset the cost of Nortel?s retiree medical plan each year for

eligible employees who retire from Nortel. The value of the DDB credit is

currently about $318 ($26.53 x 12 months) for Traditional program members less than age 65.

The DDB credit is valued at a lower amount for retirees age 65 and over as the cost

of medical coverage secondary to Medicare is much less than the cost of

coverage without Medicare paying first.


YBobbie Hall : 2009 07 29 14:35:33

Highly Confidential - Attorneys' Eyes Only                                        NNI-RET-00012862

Universe: CALLTRAX

4/3/13 11:50 AM

## CALLTRAX Form Report

### Ticket #: 2998794

| Ticket Create Date | Ticket Close Date | Category Description | Subcategory Description |
|---|---|---|---|
| 2009/09/09 | 2009/09/28 | RETIREMENT/ PENSION | Retiree Medical Premium |

| | |
|---|---|
| Global Id | 1155443 |
| First Name | JOHN |
| Last Name | YOAKUM |
| Birth Date | 1954/02/19 |
| Govt Id | Redacted - Personal Information |
| Home Address Line 1 | 1704 KILARNEY DR |
| Home Address Line 2 | |
| Home Address City | CARY |
| Home Address State | NC |
| Home Address Country | US |
| Home Address Zip | 27511 |
| Home Phone | 9194699383 |

| Comment |
|---|
| See ticket # 2990670:
Ee is stating that quotes given to him for retiree med are incorrect and he needs them to be reviewed.
Quotes can be found in ticket #  2990670.
ee also stated that Bobbi'es vm is still active.
YMarienoelle Mayers-Fabre : 2009 09 15 15:06:38

YSHARON SLAUGHTER : 2009 09 10 10:58:22

info in ticket #2990670 is an estimate, but, not sure why they were calculated using DDB amounts.  EE has 16yrs after age 40 and was in the Trad, however, not grandfathered ((except for GF 2006).

Estimated rates; 16yrs after age 40

$300.52/855.76    comp
530.52/1,315.76    Indem
352.52/959.76    90/70
283.52/821.76    80/60

Please call ee and explain that those were estimated cost...but these are current cost now and can change.
YChristine Norwood : 2009 09 11 11:11:43

ee cld back, he states that he thinks that these #s for premiums are incorrect and the reason why it's below:

He says that the cost for his premiums doubles when he includeds his wife and this is just not correct.  he states that he knows of other retirees that were provided a diferent rate with the exact plan and years of service that he has.  His main issue is seeing that his premium doubles when he includeds his spouse and to him this is not correct.  He states he would like to speak with the person that is putting these rates together so he can better understand. |

Highly Confidential - Attorneys' Eyes Only

## CALLTRAX Form Report

**Comment**

YDennis Delgado : 2009 09 14 10:09:06

cld lvm
YDIANA KELLER : 2009 09 16 14:30:06

ret cld back for update. checking with Diana.
YDennis Delgado : 2009 09 16 14:42:23

He called and I let him know that these are the rates and offered for him to use the
calculator to come up with the rates for himself. He insist that there is another person
who has the same particulars as he is getting rates about 1/3 of what he is getting. He
wanted me to go over the other person's rates with him, but I refused to do so and told
him - this person would need to call us to talk about their rates. There could be reasons
the rates are different - yrs service, age, plan, etc.

the only thing is not sure why is he grandfathered for 2006?
YDIANA KELLER : 2009 09 16 15:17:50

ok, we figured this is b/c of the 2006 grandfathering for eligibility. will call and explain.
YDIANA KELLER : 2009 09 16 16:00:27

The issue he is quoting about his premium doubling for Retiree's but not active ee's isn't
an accurate statement.  In fact, and an active employee, his rate triples when he adds his
spouse.  90/70 PPO single rate is $25.34.  90/70 PPO ee & spouse rate is $78.35.
YKim Pulliam : 2009 09 16 16:16:13

online calculator and estimate is correct.
YDIANA KELLER : 2009 09 24 14:58:26

Highly Confidential - Attorneys' Eyes Only

Universe: CALLTRAX

4/3/13 11:50 AM

## CALLTRAX Form Report

### Ticket #: 3027159

| Ticket Create Date | Ticket Close Date | Category Description | Subcategory Description |
|---|---|---|---|
| 2010/02/09 | 2010/02/17 | RETIREMENT/ PENSION | Medical, Dental, Life |

| | |
|---|---|
| Global Id | 1155443 |
| First Name | JOHN |
| Last Name | YOAKUM |
| Birth Date | 1954/02/19 |
| Govt Id | Redacted - Personal Information |
| Home Address Line 1 | 1704 KILARNEY DR |
| Home Address Line 2 | |
| Home Address City | CARY |
| Home Address State | NC |
| Home Address Country | US |
| Home Address Zip | 27511 |
| Home Phone | 9194699383 |

| Comment |
|---|
| completed ret. med appl waiting verification before mailing. |
| YChristine Norwood : 2010 02 09 11:38:08 |
| Mailed out. |
| YMarienoelle Mayers-Fabre : 2010 02 17 14:27:45 |

Highly Confidential - Attorneys' Eyes Only

Universe: CALLTRAX

4/3/13 11:50 AM

## CALLTRAX Form Report

### Ticket #: 3030454

| Ticket Create Date | Ticket Close Date | Category Description | Subcategory Description |
|---|---|---|---|
| 2010/03/02 | 2010/03/09 | RETIREMENT/ PENSION | Medical, Dental, Life |

| | |
|---|---|
| Global Id | 1155443 |
| First Name | JOHN |
| Last Name | YOAKUM |
| Birth Date | 1954/02/19 |
| Govt Id | Redacted - Personal Information |
| Home Address Line 1 | 1704 KILARNEY DR |
| Home Address Line 2 | |
| Home Address City | CARY |
| Home Address State | NC |
| Home Address Country | US |
| Home Address Zip | 27511 |
| Home Phone | 9194699383 |

| Comment |
|---|

NNI-RET-00012866

4/3/13 11:50 AM

## CALLTRAX Form Report

### Comment

term ee has received a Heath and welfare application:
Term ee insists that he can defer his pension and get retiree benefits started: explained
to retiree that he cannot defer his pension if he wants retiree benefits.
Term ee wants to see this policy in writing.
Thk you in advance for cling him back.
YMarienoelle Mayers-Fabre : 2010 03 02 11:47:23


YKim Pulliam : 2010 03 02 13:25:23


Spoke with former ee---explained that page 6 of the medical SPD states that you have to
be commence your pension in order to be eligible for retiree benefits.  Explained that
"retiree benefits" include retiree medical, retiree life and LTC.  Explained repeatedly that
all of these benefits are tied directly to the ee's retirement, and that he is not considered
a retiree if he doesn't commence his pension.

The bottom line is that he wants to be enrolled in the retiree life and LTC now, but wants
to defer drawing his pension dollars until he can draw his full pension.  He is going to
submit his H&W App with a letter stating that he wants to be enrolled in the retiree life
and LTC but is deferring his pension until he is 65.  I explained that he can submit this
letter with his app if that is what he feels he needs to do, but that he will not be enrolled in
the retiree life and LTC if he does not commence his pension because he will not be
considered a retiree.
YKim Pulliam : 2010 03 02 13:56:13

term'd ee calling back. he found the minutes of the gis meeting where he posed the
question that Kim and he discussed. he wants to send this to you, Kim. I did not give him
your email address. i asked if he could fax it. he said he would like you to call him back to
discuss this.
YJANICE WRENCH : 2010 03 02 16:15:38


Spoke with ee----provided my email address so he could send me the notes from his GIS
meeting.  I explained that I was not disputing what he had been told, but stated once
again that he had been misinformed at the GIS meeting, and that the policy has always
stated that you must commence your pension upon leaving Nortel in order to be eligible
for any of the Retiree benefits.
YKim Pulliam : 2010 03 03 14:56:45

received application, however he is not eligible because he did not commence his
pension.  sending application to the fileroom
YPeter Bolen : 2010 03 09 10:43:00

# EXHIBIT 3

# Togut, Segal & Segal llp

ONE PENN PLAZA
NEW YORK, NEW YORK 10119
—

ALBERT TOGUT
FRANK A. OSWALD *
NEIL BERGER *
SCOTT E. RATNER *
SIDNEY SEGAL (1935-1968)
BERNARD SEGAL (1932-1983)
—
OF COUNSEL
RICHARD K. MILIN ◇
BRIAN F. MOORE *
STEVEN S. FLORES

(212) 594-5000
—
FACSIMILE
(212) 967-4258
—
INTERNET
eMail@TeamTogut.com

DAVID M. SMITH
STEPHANIE A. SKELLY ◇
MICHAEL D. HAMERSKY
LARA R. SHEIKH
JONATHAN P. IBSEN ◇
ANTHONY F. PIRRAGLIA
SAMANTHA J. ROTHMAN
LAUREN R. LIFLAND
KATHRYN A. KEEN
SCOTT A. GRIFFIN ▽
IVY B. GREY **
DAVID A. PAUL
RICHARD M. GOLDMAN

*MEMBER NY AND NJ BAR
◇MEMBER NY AND CT BAR
◇MEMBER NY AND MA BAR
◇MEMBER NY AND AZ BAR
▽MEMBER NY, FL AND OH BAR
**MEMBER OR BAR ONLY

April 5, 2013

**VIA EMAIL & U.S. MAIL**
John H. Yoakum
1704 Kilarney Dr.
Cary, NC 27511

Re:    Nortel Networks Inc. *et al.*, Case No. 09-10138

Dear John:

Thank you for your email and the documents you sent us concerning your claim for retiree welfare benefits from the Nortel retirees' settlement fund. After careful consideration of your email and documents, we have concluded that you were not eligible for retiree welfare benefits under Nortel's retiree welfare plans and therefore are not eligible to participate in the settlement.

Nortel's policy, as clearly stated in the enclosed application form for retiree benefits you sent us, was to give retiree welfare benefits only to retired employees who began collecting their pensions. The application states, on its first page, that, "deferral of your Pension Benefit will result in a loss of your eligibility to enroll in Nortel Networks Retiree Health & Welfare Benefits at any time in the future." On page 7, the application includes an "Important Reminder" that "[y]ou will have access to the Retiree Medical Plan and the Retiree Life and Long Term Care Insurance Plan on the date your pension benefits … commence through the Pension Benefits Guarantee Corporation (PGGC)…." Also, the application

TOGUT, SEGAL & SEGAL LLP
John Yoakum
April 5, 2013
Page 2

required you to sign a statement that, "I contacted the PBGC on _____ (Date) and initiated my request to commence pension under the Nortel Networks Retirement Income Plan." We understand that you deferred receiving your pension at the time you left Nortel, and you had to change the application's statement so you could sign it.

Your email states that Nortel did not respond to your application for retiree welfare benefits, so we investigated why that was the case. According to Nortel's records, your application was not processed because you were ineligible to receive retiree welfare benefits. Company records also show that you were advised of your ineligibility before you submitted your application but that you submitted it anyway.

The sole basis for your current claim for retiree welfare benefits appears to be a statement in a company-issued summary of a "General Information Session." That statement, which you provided to us, is as follows:

> Q.    *Can you retire at 55 for medical benefits but defer pension payments until 65?*
>
> A.    *Yes*

This quoted statement does not entitle you to retiree benefits for two reasons. First, the statement applies only to **medical** benefits, which you declined in your retirement application as "not economic." Second, the statement was inconsistent with Nortel's benefit plans and actual policy, and, because Nortel provided you with sufficient information, you did not rely on the statement to your detriment. In fact, you were informed of the inaccuracy of the statement before you chose to accept employment with Avaya. Further, because the retiree welfare plans were not taken over by the PBGC, any statements the PBGC may have made to you about your pension rights cannot establish your eligibility for retiree welfare benefits.

We appreciate your email explaining to us the basis for your claim for retiree welfare benefits. Having considered your claim in good faith, it appears to us that you are ineligible for the reasons stated above. In sum:

1.    You are not entitled to medical insurance benefits because you declined to participate in Nortel's retiree medical insurance program or to make the payments necessary to participate.

2.    You are not entitled to the $10,000 in life insurance or the long-term care benefits you applied for because, as the application clearly states, you were ineligible for those benefits under Nortel's retiree welfare benefit plans. It appears that you were never told otherwise and that you did not detrimentally rely on inaccurate information concerning this issue.

We understand that our conclusion is likely to disappoint you. However, as you emphasized to the Court, you are entitled to careful consideration of your claim and an

Togut, Segal & Segal llp
John Yoakum
April 5, 2013
Page 3

explanation of why it has been denied.  Now that we have considered your claim and have provided an explanation, it is our hope that we can inform the Court that your claim has been resolved.  Please let us know if we can do so.  Alternatively, if you have additional documents that you believe support your claim, we will consider them in good faith.

        Absent our receipt of a written acknowledgment from you that your Objection to the Settlement (Dkt. No. 9591) is being withdrawn, which you can provide by email, we will file and serve upon you a further objection to your claim and proceed before the Court on April 16, 2013 at 10:00 a.m.

        Very truly yours,

        TOGUT, SEGAL & SEGAL LLP
        By:

        Richard K. Milin

RKM/lkh



# APPLICATION FOR NORTEL NETWORKS, INC POST RETIRMENT HEALTH & WELFARE BENEFITS

## APPLICATION INSTRUCTIONS

- You have a right to consider this application for 30 days from the date of receipt.

- This completed and signed application must be returned to Nortel HR Shared Services **within 30 days of your Retirement/Benefit Start Date** to ensure that the Retiree Health & Welfare benefits are initiated on your Benefit Start Date. **Failure to return this completed and signed application within this timeframe or deferral of your Pension Benefit will result in a loss of your eligibility to enroll in Nortel Networks Retiree Health & Welfare Benefits at any time in the future.**

- Complete ALL of the following sections of this application:

    - **Personal Information**
    - **Life Insurance and Long Term Care Election**
    - **Medical Insurance Enrollment**
    - **Medical Insurance Election**
    - **Application Signature – REQUIRED**

- Review and retain the Nortel Networks Retiree Medical Plan Enrollment Guide included with this mailing.

- A copy of your Termination Form plus any related Release Form must be signed and on file with HR Shared Services to complete this application process.

## PERSONAL INFORMATION

Application not mailed to member until 15-February-2010. Member has 30 days from receipt to review and return. Coverage and premiums will be retroactive if returned within that timeframe.

**Employee Name: John Yoakum**

**Global ID: 1155443**          **Benefit Start Date: 01-January-2010**

Current Home Address: _____

City: *Cary*          State: *NC* Zip Code: *27511*

Home Phone Number: _____

Other Contact Number: _____

U.S. Citizen? (X) Yes  or  (   ) No          Date of Birth *2-19-1954*

*Verified: 0477092*

## RETIREE LIFE INSURANCE ELECTION

You are eligible for Group Life Insurance as of your Benefit Start Date if you are retiring directly from active status at age 55 or later with 10 or more years of vesting service or age 65 or older with at least one (1) calendar year of service.  There are 6 options available for Retiree Life Insurance coverage.  Option A is not available to employees hired after 12/31/90 or on Long Term Disability on that date.

**Choose one of the following by initialing the blank in front of the option:**

**(A)** _____    **$ 68,000.00**  The initial death benefit is equal to your base pay and commissions as of December 31, 1990.  This death benefit will decrease by 10% of the initial coverage each year for five years as outlined below - maximum $50,000 after the 5th year:

| Date | | Coverage $ | |
|------|------|------|------|
| Date | 01/01/2011 | Coverage $ | 62,000.00 |
| Date | 01/01/2012 | Coverage $ | 56,000.00 |
| Date | 01/01/2013 | Coverage $ | 50,000.00 |
| Date | 01/01/2014 | Coverage $ | 44,000.00 |
| Date | 01/01/2015 | Coverage $ | 34,000.00 ** |

**For the remainder of your lifetime (the lesser of 50% of initial coverage or $50,000.)
Long-term care is not available with this option.

**(B)** _____    $35,000 death benefit for the remainder of your lifetime.  Long-term care is not available with this option.

**(C)** __X__    $10,000 death benefit for retiree only plus long-term care (60-day wait period) for retiree and spouse up to $70 per person per day with a combined lifetime maximum benefit of $125,000.  Employees who are retiring directly from disability and/or their spouses currently confined to a long-term care facility, are not eligible for this option.

**(D)** _____    $10,000 death benefit plus long-term care (60-day wait period) for retiree only up to $100 per day with a lifetime maximum benefit of $180,000.  Employees who are retiring directly from disability are not eligible for this option.

**(E) N/A___**    $10,000 death benefit for retiree only.  Long-term care is not available with this option.

**(F)** _____    Waive all above options.

**Provide information about your Death Benefit Beneficiary (ies):**

**PRIMARY BENEFICIARY (IES)** You may designate one or more primary beneficiaries. Share % **must** equal 100%.
(Please use back of this sheet if necessary to provide information)

| | NAME | SHARE % | Birth Date | Social Security # |
|------|------|------|------|------|
| 1. | ███████████ | ████ | ███████ | ████████ |
| 2. | | | | |
| 3. | | | | |

**ALTERNATE BENEFICIARY(IES)** If one or more of the primary beneficiaries is not living at the time of your death, the payment(s) that would otherwise be payable to the deceased primary beneficiary(ies) will be made as you indicate below:

**Please choose one:**

_____ (a) To my estate;

_____ (b) To the surviving primary beneficiary(ies), named above, if any, equally;

___X___ (c) To the alternate beneficiary or beneficiaries named below in the shares indicated:

Complete the following only if alternative (c) is checked (Share must still equal 100%)

| NAME | SHARE % | Birth Date | Social Security # |
|------|---------|------------|-------------------|
| 1. ███████████████████████████████████████████████ |  |  |  |
| 2. ███████████████████████████████████████████████ |  |  |  |
| 3. _____ |  |  |  |

**Note the following about your Life Insurance election:**

- This Retiree Life Insurance benefit is paid by Nortel Networks and currently requires no retiree contributions.

- You **may not** change your life insurance election for any reason after your retirement date.

- You **may** change your death benefit beneficiary(ies) at any time after retirement by completing a new beneficiary form and returning the completed form to HR Shared Services.

- Active employee group life insurance coverage for you and your spouse ceases (if enrolled) at your retirement.

- You are entitled to convert to an individual policy the difference between your NNI Retiree Life coverage and the amount of NNI group life coverage you & your spouse had before retirement. You must convert within **31 days** of the date of retirement. You will not be required to submit evidence of good health. You may obtain a conversion letter from HR Shared Services at 1-800-676-4636. Once you have received your personalized Conversion Letter, you should present the conversion letter to a local Prudential Life Insurance representative. The associated premiums are your responsibility.

---

# RETIREE MEDICAL INSURANCE ELECTION
## NO Dental, Vision, Hearing or Reimbursement Accounts

You and your eligible dependents (including Approved Domestic Partners) are eligible to participate in the Nortel Networks Retiree Medical Plan at retirement if you and your eligible dependents are actively enrolled in a Nortel Networks medical option at the time of retirement, retire **directly from company service** and are age 55 or older with 10 years Vesting Service. Eligible Dependents Include:

- Your spouse, including your common-law spouse as recognized by applicable state law
- Your unmarried children who are under age 19
- Your unmarried children under age 25 if enrolled as a full-time student in an accredited college or university and primarily supported by you
- Qualified disabled children age 19 and over provided they are wholly dependent on you for support and maintenance, and became disabled and dependent before age 19 (or before age 25 if a full-time student).

Eligible children would include:
1) Legally adopted children
2) Step-children who live with you in a parent-child relationship
3) Legally authorized foster children
4) Children for whom you have legal guardianship. They must LIVE WITH YOU in a parent-child relationship and depend on you for support and maintenance for at least six months during the year.


**Domestic Partners**:

Special tax and legal considerations apply when covering a domestic partner; for example, the cost of the dependent coverage must be paid on an after-tax basis and the company's cost is imputed income added to your gross earnings unless your domestic partner and/or domestic partner's child(ren) qualify as your tax dependent under Internal Revenue Code (IRC) Section 152. As a result, you may wish to consult with a tax or legal advisor before enrollment.

**If you DECLINE coverage for yourself and or your spouse/domestic partner on this form YOU or YOUR SPOUSE ARE NOT ELIGIBLE TO ENROLL IN THE FUTURE.**

**INSTEAD** of retiree medical coverage, you may elect to continue medical, dental, vision, hearing (or medical alone) coverage under COBRA for a maximum of 18 months. After COBRA coverage has expired, you will **NOT** be allowed to elect regular retiree medical coverage. COBRA rates consist of the entire cost of the coverage plus a 2% administration fee. You may obtain COBRA rates by calling HR Shared Services at 1-800-676-4636.

**Important Note: Nortel Networks Inc. may, at any time, change vendors or coverage including, but not limited to, reducing or eliminating coverage, at its' sole discretion.**

- Premium Rates are subject to change.
- Rates are determined at annual enrollment for the period specified at that time, generally one year.
- Either CIGNA Comprehensive Plan, Indemnity Plan or PPO Preferred Provider Organization Plan currently provides coverage.
- Your monthly cost for this coverage will depend on:
    1) Your years of vesting service with Nortel Networks (maximum of 20 years)
    2) The Plan you choose (Comprehensive, Indemnity or PPO)
    3) The level of coverage you choose (Single or Family)
    4) Your age and the ages of your eligible dependents you submit for coverage on your Retirement Date.


**To be completed by HR Shared Services:**

- You are in the Traditional Plan and your Monthly Premiums are based on ____16____ **years** of vesting service after age 40.
- If you choose Family Coverage and your coverage is split between participants who are less than age 65 and 65 or older; you MAY NOT split your coverage between the Comprehensive Plan, Indemnity Plan and PPO Plan.

## RETIREE MEDICAL INSURANCE ENROLLMENT

__Y__   Retiree is eligible to enroll in the NNI Retiree Medical Plan. (Y or N)

_____   **Please initial here if you want to cover yourself under the NNI Retiree Medical Plan.**

__Y__   Retiree is eligible to enroll currently covered dependents under the NNI Retiree Medical Plan. (Y or N)

_____   **Please initial here if you want to cover your eligible dependents under the NNI Retiree Medical Plan.**

**Provide required information on each Eligible Dependent you want to cover by the Nortel Networks Retiree Medical Plan (each dependent must be <u>currently covered</u> by your active employee Medical Plan):**

|  | NAME | Relationship to you | Date of Birth | Social Security # |
|---|---|---|---|---|
| 1) | | | | |
| 2) | | | | |
| 3) | | | | |

**If you elect to NOT enroll in the Nortel Networks Retiree Medical Plan, you and your eligible dependents will be eligible for 18 months of COBRA continuation of insurance at the FULL COST plus a 2% administration fee.**

**If you enroll in the Nortel Networks Retiree Medical Plan, but do NOT enroll in medical coverage under that Plan for eligible dependents that were covered when you were an active employee, they will be eligible for 18 months of COBRA insurance at the FULL COST plus a 2% administration fee.**

**COBRA information and forms will be sent to your home address within 2 weeks from the date you or your eligible dependent's coverage ends under the Nortel Networks Medical Plan (for active employees).**

## RETIREE MEDICAL INSURANCE ELECTION
### Early Retirement Medical Insurance

Available to Retiree <u>less than age 65</u> and any eligible dependents.    Your medical selection on this form will be for 2010 benefits.

Initial next to your plan of choice below, <u>or</u> decline coverage by initialing next to "DECLINE" in (I):

(A)  _____ Single coverage - **Comprehensive Plan**
       <u>$ 300.52</u>    per month*

(B)  _____ Single coverage - **Indemnity Plan**
       <u>$ 550.36</u>    per month*

(C)  _____ Single coverage - **90/70 PPO - Preferred Provider Organization**
       $ 352.52____per month*

(D)  _____ Single coverage - **80/60 PPO - Preferred Provider Organization**
       <u>$ 283.52</u>    per month*

(E)  _____ Family coverage - **Comprehensive Plan**
       <u>$ 855.76</u>    per month*

(F)  _____ Family coverage - **Indemnity Plan**
       <u>$ 1355.44</u>    per month*

(G)  _____ Family coverage - **90/70 PPO - Preferred Provider Organization**
       <u>$ 959.76</u>    per month*

(H)  _____ Family coverage - **80/60 PPO - Preferred Provider Organization**
       <u>$ 821.76</u>    per month*

(I)  I have reviewed the costs outlined above and **ACCEPT** _____ or **DECLINE** __X____
     this early retirement medical insurance coverage.  I agree to remit monthly payments to NNI
     or their assignee (Benefits Billing Services) for the Retiree Medical Coverage I have elected.

     *rates offered are not economic*
     *HHy 3-2-2010*

## Medicare Supplement Insurance

Available to Retiree and or spouse/domestic partner <u>over age 65</u>. Your medical selection on this form will be for 2010 benefits.

Enrollment in Medicare A and B is required. Medicare will provide primary coverage.

**Please provide, along with this application, a copy of Medicare A and B card(s) for yourself and or spouse/domestic partner (if applicable) to verify Medicare enrollment.**

Note the following about your Medical Insurance elections:

- You will receive a monthly invoice from the BENEFIT BILLING SERVICES (BBS). You will receive an invoice within 2-3 weeks from your retirement date and monthly afterwards. **Failure to pay medical premiums by the BBS invoice grace period date will result in cancellation of your coverage with no reinstatement rights.**

- When you and/or your eligible covered dependents reach age 65 you MUST enroll in Medicare A & B AND complete a NNI Medicare Supplemental Plan Enrollment Form to continue your coverage. Your premium will change. Forms and information are available from HR Shared Services at 1-800-676-4636.

- At your (the Retiree's) death, qualified dependents are eligible to continue coverage as long as they are insured at your death, continue to be eligible and pay required premiums. Premiums are based on your years of vesting at Retirement and the age of the covered dependent(s).

## OTHER BENEFITS AT RETIREMENT

- Retirees and their eligible dependents <u>who are covered</u> by the Retiree Medical Plan are eligible for Nortel Networks pharmacy benefit retail and home delivery service provided by Medco. The Retiree Medical Plan also includes coverage through the Employee Assistance Program which is administered by OptumHealth Behavioral Solutions.

## IMPORTANT REMINDER

You will have access to the Retiree Medical Plan and the Retiree Life and Long Term Care Insurance Plan on the date your pension benefits accrued under the Nortel Networks Retirement Income Plan commence through the Pension Benefits Guarantee Corporation (PBGC), if you (i) participated in the previously provided (now cancelled) Traditional or Balanced Program under the old Capital Accumulation Retirement Program ("CARP"), (ii) elect to commence your pension benefits through the PBGC on the earliest date following your termination date or severance end date, (iii) at least age 55 and meet the Nortel Networks Retiree Medical Plan and the Retiree Life and Long Term Care Insurance Plan service requirements when your pension benefits through the PBGC commence and (iv) are a participant in the Nortel Networks Medical Plan on the date immediately prior to the date of commencement of pension benefits through the PBGC.

## IMPORTANT NOTE:  To initiate your pension benefit payments from the Retirement Income Plan, you **must** call the PBGC (US Government agency now responsible for your pension plan) at **1-800-400-7242**. Please direct all pension benefits related questions to the PBGC. Questions related to the Nortel Networks Retiree Medical and the Retiree Life and Long Term Care Insurance Plans should be directed to the Nortel HR Shared Services Center at 1-800-676-4636.

## APPLICATION SIGNATURE

I, _John H. Youkum_, hereby make application for my retiree medical plan, life insurance, and long-term care benefits (as applicable).  I have read and completed all applicable sections of this application and verify that everything I have stated in this application is correct to the best of my knowledge.  I also certify that I am not currently employed with any other NNI affiliate that offers benefits under the Nortel Networks Retirement Income Plan.

**I will immediately notify HR Shared Services in writing if I am re-employed by NNI or any NNI subsidiary that offers** benefits under the NNI Retirement Income Plan.

_____        _3-2-2010_
**Employee Signature**                                  **Date**

**I contacted the PBGC on** _3-2-2010_ **(Date) and initiated my request to commence pension under the Nortel Networks Retirement Income Plan.**

_____        (see attached) ←

**Employee Signature**

for information necessary
HH.
C
3-2-2010

Please Return Form To:

**Nortel HR Shared Services**
**Attn: Retiree Medical**
**M/S 570/02/0C2**
**P.O. Box 13010**
**Research Triangle Park, NC  27709**

**Please notify the HR Shared Services at (1-800-676-4636) of any future name, address or phone number changes.**

## KEEP A <u>COPY</u> OF THIS FORM WITH YOUR OTHER VERY IMPORTANT RECORDS!!

On December 18, 2009 I was terminated by Nortel as part of the divestiture of the enterprise business unit to Avaya. At that time I had reached the minimum age of retirement (age 55) and was fully vested in the Nortel Traditional Retirement Plan with over 22 years of continuous service.

Nortel has defaulted on the Traditional Retirement Plan which has been assumed by the US Pension Benefit Guarantee Corporation (PBGC). I have contacted the PBGC and have been informed by them that I can begin receiving payments from my pension at any time and such payments are in no way linked to any other Nortel obligations or benefits and that Nortel cannot impose any linkages. I am free to wait as long as I want to begin receiving retirement payments and Nortel no longer has any say in the matter.

I have been provided an application for Nortel retirement benefits which I have appropriately completed within the 30 day period specified. This application has two portions, I have accepted the life insurance and long-term care coverage that I am entitled to by my years of service and the fact I reached retirement age doing my employment at Nortel. I have declined the medical coverage as the rates quoted for my wife and I are not economic.

Nortel clearly has an obligation to provide me life insurance, long-term care insurance, and the monetary amount of the medial care subsidy that I earned as part of my employment. These entitlements were extended in my original offer of employment letter that Nortel declared to the US bankruptcy court it has defaulted on.

I have submitted claims for these amounts in the Nortel Networks Incorporate US bankruptcy proceeding. Nothing in this application for benefits is intended to in any way diminish my claims. If Nortel provides fully paid-up life and long-term care insurance coverage along with an annuity covering the medical care subsidy, I will be glad to reduce or eliminate my related claims as appropriate.

The latest (2008) version of the "Nortel Networks Retiree Life Insurance and Long-Term Care Plan Summary Plan Description" does note appear to have any linkage between receiving pension payments and receiving benefits.

In the "Minutes of the Nortel US GIS on Pension Matters" from Monday July 6, 2009, distributed to employees by Nortel the following question and answer clearly indicates that retiree benefits are not dependent on actual receipt of pension payments. The related section states: *"Q. Can you retire at 55 for medical benefits but defer pension payments until 65? A. Yes."*.

John Yoakum
1155443

EXHIBIT 4

# TOGUT, SEGAL & SEGAL LLP

ONE PENN PLAZA
NEW YORK, NEW YORK 10119

ALBERT TOGUT
FRANK A. OSWALD *
NEIL BERGER *
SCOTT E. RATNER *
SIDNEY SEGAL (1935-1968)
BERNARD SEGAL (1932-1983)
―――
OF COUNSEL

RICHARD K. MILIN ◊
BRIAN F. MOORE*
STEVEN S. FLORES

(212) 594-5000
―――
FACSIMILE
(212) 967-4258
―――
INTERNET
eMail@TeamTogut.com

DAVID M. SMITH
STEPHANIE A. SKELLY ◊
MICHAEL D. HAMERSKY
LARA R. SHEIKH
JONATHAN P. IBSEN ◊
ANTHONY F. PIRRAGLIA
SAMANTHA J. ROTHMAN
LAUREN R. LIFLAND
KATHRYN A. KEEN
SCOTT A. GRIFFIN ▽
IVY B. GREY **
DAVID A. PAUL
RICHARD M. GOLDMAN

*MEMBER NY AND NJ BAR
◊MEMBER NY AND CT BAR
◊MEMBER NY AND MA BAR
◊MEMBER NY AND AZ BAR
▽MEMBER NY, FL AND OH BAR
**MEMBER OR BAR ONLY

April 9, 2013

**VIA EMAIL & U.S. MAIL**
John H. Yoakum
1704 Kilarney Dr.
Cary, NC 27511

Re:    Nortel Networks Inc. *et al.*, Case No. 09-10138

Dear John:

We would like to answer the questions your attached email raises and to mention a couple of additional points based on our continuing review of your claim.

First, you ask whether we have documentation for three of the points I made in my letter:  (a) that "your application was not processed because you were ineligible to receive retiree welfare benefits," (b) that "you were advised of your ineligibility before you submitted your application," and (c) that "you were informed of the inaccuracy of the statement [that employees could be eligible for medical benefits without receiving their pensions] before you chose to accept employment with Avaya."

We do have documentation for these statements.  On March 24, 2009, Nortel's Calltrax log of a conversation with you states:

Togut, Segal & Segal llp
John Yoakum
April 9, 2013
Page 2

> "active ee wanted to know if he had to begin pension benefit in
> order to qualify for retiree medical.  states he was previously told
> he did not have to.  i emailed him the spd for 2005 in which it states
> that you have to commence your pension in order to qualify for
> retiree medical starting on page 7."

Almost one year later, on March 2, 2010, another Calltrax log states:

> "Term ee insists that he can defer his pension and get retiree
> benefits started: explained to retiree that he cannot defer his
> pension if he wants retiree benefits."

Another Calltrax record for the same day states that you were informed that:

> "the medical SPD states that you have to be (sic) commence your
> pension in order to be eligible for retiree benefits…  Explained
> repeatedly that all of these benefits are tied directly to the ee's
> retirement, and that he is not considered a retiree if he doesn't
> commence his pension."

With respect to your application, the Calltrax log states, "I explained that he can submit … his app if that is what he feels he needs to do, but that he will not be enrolled in the retiree life and LTC if he does not commence his pension because he will not be considered a retiree." On March 9, 2010, the Calltrax log records: "received application, however he is not eligible because he did not commence his pension.  sending application to the fileroom."

We are willing to provide you with the log provided that you agree to keep it confidential – that is, that you agree not to show it to anyone or file it with the Court without our consent.  If you have a good reason to show it to the Judge or someone else, however, let us know and we are very likely to consent.  We are only proposing a broad restriction to keep things simple, not to prevent you from using the log if you need to.  Please let us know what you would like to do.

Your email also asks whether we can state with "absolute certainty" that none of the eligible retirees "ever received any form of Nortel retiree insurance coverage … while or after deferring the collection of payments from a Nortel pension fund."  As counsel to the Retiree Committee appointed after Nortel's bankruptcy, we can only say that we are not aware of any case in which that occurred.  Also, the application form you signed, which was a version of a standard form that Nortel used for more than a decade, precluded giving welfare benefits to retirees who deferred their pensions.  We did, however, discover a possible explanation of the statement about medical benefits you brought to our attention:  some Nortel retirees who were 55 or older had the right to participate in the retiree medical plan provided that they paid their own costs.

Togut, Segal & Segal llp
John Yoakum
April 9, 2013
Page 3


Again, we are sorry to disappoint you.  We have investigated your claim in good faith, which is why we requested documents from Nortel and received the Calltrax log, but we have not found support for your position.  Rather, we found that you were repeatedly advised that you were ineligible for retiree benefits.  Also, as you know, Nortel reserved the right to make final decisions with respect to eligibility, and it rejected your claim in early 2010.

We further note from the Calltrex log that Nortel sent you an SPD and perhaps other documents and correspondence.  We request that you send these materials to us if you want to pursue your claim.  Please also let me know whether you will agree to withdraw your claim. We would like to keep our expenses down if we can.

Very truly yours,

TOGUT, SEGAL & SEGAL LLP
By:

Richard K. Milin

RKM/lkh

"John Yoakum" <jyoakum@pobox.com>                                                              April 7, 2013  4:44 PM
To:  Richard K. Milin <rmilin@teamtogut.com> ,  Cc:  Stephanie Skelly <sskelly@teamtogut.com>
RE: Nortel: Retiree benefits claim

Richard –

In considering the comments in your letter and your request that I immediately withdraw my objection, I have the
following clarifying questions in relation to your letter:

In the second paragraph of page 2 you state: "According to Nortel's records, your application was not processed…", and
also "Company records also show that you were advised…"  Do you have some documentation from Nortel related to
these two assertions and if so can you please provide me a copy?

In the fourth paragraph of page 2 you state: "In fact you were informed of the inaccuracy of the statement before you
chose to accept employment at Avaya."  Do you have some documentation from Nortel of how and when I was informed
and if so can you please provide me a copy?  Or were you referring to the statements made by Nortel on the application
form as conveying the notification you refer to?

Can you assert with absolute certainty that no member of the group of claimants that you currently represent (~4600)
ever received any from of Nortel retiree insurance coverage (Medical, Long-term, or Life) while or after deferring the
collection of payments from a Nortel pension fund?  The reason that I ask this question is a comment that I thought I
heard you make the first time we spoke (possibly I misunderstood you) in addition to the Q&A comment we have been
discussing.

I have a couple of comments in relation to your conclusions but I will wait for your timely reply to my questions above and
then provide my final comments and willingness to accept or reject your desire for me to withdraw my objection.  I have a
couple of related inquiries pending that I hope to have responses from by Tuesday, I am trying diligently to bring this to
closure quickly for all of us and appreciate the due diligence you are providing to the matter.  Thank you again for your
efforts.


Cheers,
John


**From:** Richard K. Milin [mailto:rmilin@teamtogut.com]
**Sent:** Friday, April 05, 2013 6:10 PM
**To:** John Yoakum
**Cc:** Stephanie Skelly
**Subject:** Nortel: Retiree benefits claim

John:

Please see the attached letter, which states our conclusions after reviewing your claim.  We look forward to
hearing from you.

Richard
-----------

Richard K. Milin
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335

New York, New York 10119
(212) 594-5000 (Firm Telephone)
(212) 967-4258 (Firm Facsimile)
(212) 201-6584 (Direct Dial)
rmilin@teamtogut.com
http://www.togutlawfirm.com

EXHIBIT 5



# APPLICATION FOR NORTEL NETWORKS, INC POST RETIRMENT HEALTH & WELFARE BENEFITS

## APPLICATION INSTRUCTIONS

- You have a right to consider this application for 30 days from the date of receipt.

- This completed and signed application must be returned to Nortel HR Shared Services **within 30 days of your Retirement/Benefit Start Date** to ensure that the Retiree Health & Welfare benefits are initiated on your Benefit Start Date. **Failure to return this completed and signed application within this timeframe <u>or</u> deferral of your Pension Benefit will result in a loss of your eligibility to enroll in Nortel Networks Retiree Health & Welfare Benefits at any time in the future.**

- Complete <u>ALL</u> of the following sections of this application:

  - **Personal Information**
  - **Life Insurance and Long Term Care Election**
  - **Medical Insurance Enrollment**
  - **Medical Insurance Election**
  - **Application Signature – REQUIRED**

- Review and retain the Nortel Networks Retiree Medical Plan Enrollment Guide included with this mailing.

- A copy of your Termination Form plus any related Release Form must be signed and on file with HR Shared Services to complete this application process.

## PERSONAL INFORMATION

Application not mailed to member until 15-February-2010. Member has 30 days from receipt to review and return. Coverage and premiums will be retroactive if returned within that timeframe.

**Employee Name: John Yoakum**

**Global ID: 1155443**          **Benefit Start Date:  01-January-2010**

**Current Home Address:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**City:** _Cary_          **State:** _NC_ **Zip Code:** _27511_

**Home Phone Number:** ▮▮▮▮▮▮▮▮▮▮

**Other Contact Number:** _____

**U.S. Citizen?** (X) Yes  or  (  ) No          Date of Birth _2-19-1954_

*Verified: 0477092*

# RETIREE LIFE INSURANCE ELECTION

You are eligible for Group Life Insurance as of your Benefit Start Date if you are retiring directly from active status at age 55 or later with 10 or more years of vesting service or age 65 or older with at least one (1) calendar year of service.  There are 6 options available for Retiree Life Insurance coverage.  Option A is not available to employees hired after 12/31/90 or on Long Term Disability on that date.

**Choose one of the following by initialing the blank in front of the option:**

(A) _____    **$ 68,000.00**  The initial death benefit is equal to your base pay and commissions as of December 31, 1990.  This death benefit will decrease by 10% of the initial coverage each year for five years as outlined below - maximum $50,000 after the 5th year:

| Date | | Coverage | |
|------|------|------|------|
| Date | 01/01/2011 | Coverage $ | 62,000.00 |
| Date | 01/01/2012 | Coverage $ | 56,000.00 |
| Date | 01/01/2013 | Coverage $ | 50,000.00 |
| Date | 01/01/2014 | Coverage $ | 44,000.00 |
| Date | 01/01/2015 | Coverage $ | 34,000.00    ** |

**For the remainder of your lifetime (the lesser of 50% of initial coverage or $50,000.) Long-term care is not available with this option.

(B) _____    **$35,000** death benefit for the remainder of your lifetime.  Long-term care is not available with this option.

(C) ___X___    **$10,000** death benefit for retiree only plus long-term care (60-day wait period) for retiree and spouse up to $70 per person per day with a combined lifetime maximum benefit of $125,000.  Employees who are retiring directly from disability and/or their spouses currently confined to a long-term care facility, are not eligible for this option.

(D) _____    **$10,000** death benefit plus long-term care (60-day wait period) for retiree only up to $100 per day with a lifetime maximum benefit of $180,000.  Employees who are retiring directly from disability are not eligible for this option.

(E) N/A___    **$10,000** death benefit for retiree only.  Long-term care is not available with this option.

(F) _____    **Waive all above options.**

**Provide information about your Death Benefit Beneficiary (ies):**

**PRIMARY BENEFICIARY (IES)** You may designate one or more primary beneficiaries.  Share % **must** equal 100%.
(Please use back of this sheet if necessary to provide information)

| NAME | SHARE % | Birth Date | Social Security # |
|------|------|------|------|
| 1. ████████ | ████ | ████ | ████████ |
| 2. | | | |
| 3. | | | |

**ALTERNATE BENEFICIARY(IES)** If one or more of the primary beneficiaries is not living at the time of your death, the payment(s) that would otherwise be payable to the deceased primary beneficiary(ies) will be made as you indicate below:

**Please choose one:**

_____ (a) To my estate;

_____ (b) To the surviving primary beneficiary(ies), named <u>above</u>, if any, equally;

__X__ (c) To the alternate beneficiary or beneficiaries named <u>below</u> in the shares indicated:

Complete the following only if alternative (c) is checked (Share must still equal 100%)

| NAME | SHARE % | Birth Date | Social Security # |
|------|---------|------------|-------------------|
| 1. | | | |
| 2. | | | |
| 3. | | | |

**Note the following about your Life Insurance election:**

- This Retiree Life Insurance benefit is paid by Nortel Networks and currently requires no retiree contributions.

- You **may not** change your life insurance election for any reason after your retirement date.

- You **may** change your death benefit beneficiary(ies) at any time after retirement by completing a new beneficiary form and returning the completed form to HR Shared Services.

- Active employee group life insurance coverage for you and your spouse ceases (if enrolled) at your retirement.

- You are entitled to convert to an individual policy the difference between your NNI Retiree Life coverage and the amount of NNI group life coverage you & your spouse had before retirement. You must convert within **31 days** of the date of retirement. You will not be required to submit evidence of good health. You may obtain a conversion letter from HR Shared Services at 1-800-676-4636. Once you have received your personalized Conversion Letter, you should present the conversion letter to a local Prudential Life Insurance representative. The associated premiums are your responsibility.

---

# RETIREE MEDICAL INSURANCE ELECTION
## NO Dental, Vision, Hearing or Reimbursement Accounts

You and your eligible dependents (including Approved Domestic Partners) are eligible to participate in the Nortel Networks Retiree Medical Plan at retirement if you and your eligible dependents are actively enrolled in a Nortel Networks medical option at the time of retirement, retire **directly from company service** and are age 55 or older with 10 years Vesting Service. Eligible Dependents Include:

- Your spouse, including your common-law spouse as recognized by applicable state law
- Your unmarried children who are under age 19
- Your unmarried children under age 25 if enrolled as a full-time student in an accredited college or university and primarily supported by you
- Qualified disabled children age 19 and over provided they are wholly dependent on you for support and maintenance, and became disabled and dependent before age 19 (or before age 25 if a full-time student).

Eligible children would include:
1) Legally adopted children
2) Step-children who live with you in a parent-child relationship
3) Legally authorized foster children
4) Children for whom you have legal guardianship. They must LIVE WITH YOU in a parent-child relationship and depend on you for support and maintenance for at least six months during the year.


**Domestic Partners**:

Special tax and legal considerations apply when covering a domestic partner; for example, the cost of the dependent coverage must be paid on an after-tax basis and the company's cost is imputed income added to your gross earnings unless your domestic partner and/or domestic partner's child(ren) qualify as your tax dependent under Internal Revenue Code (IRC) Section 152. As a result, you may wish to consult with a tax or legal advisor before enrollment.

**If you DECLINE coverage for yourself and or your spouse/domestic partner on this form YOU or YOUR SPOUSE ARE NOT ELIGIBLE TO ENROLL IN THE FUTURE.**

**INSTEAD** of retiree medical coverage, you may elect to continue medical, dental, vision, hearing (or medical alone) coverage under COBRA for a maximum of 18 months. After COBRA coverage has expired, you will **NOT** be allowed to elect regular retiree medical coverage. COBRA rates consist of the entire cost of the coverage plus a 2% administration fee. You may obtain COBRA rates by calling HR Shared Services at 1-800-676-4636.


**Important Note: Nortel Networks Inc. may, at any time, change vendors or coverage including, but not limited to, reducing or eliminating coverage, at its' sole discretion.**

- Premium Rates are subject to change.
- Rates are determined at annual enrollment for the period specified at that time, generally one year.
- Either CIGNA Comprehensive Plan, Indemnity Plan or PPO Preferred Provider Organization Plan currently provides coverage.
- Your monthly cost for this coverage will depend on:
  1) Your years of vesting service with Nortel Networks (maximum of 20 years)
  2) The Plan you choose (Comprehensive, Indemnity or PPO)
  3) The level of coverage you choose (Single or Family)
  4) Your age and the ages of your eligible dependents you submit for coverage on your Retirement Date.


**To be completed by HR Shared Services:**

- You are in the Traditional Plan and your Monthly Premiums are based on ____16____ **years** of vesting service after age 40.
- If you choose Family Coverage and your coverage is split between participants who are less than age 65 and 65 or older; you MAY NOT split your coverage between the Comprehensive Plan, Indemnity Plan and PPO Plan.

## RETIREE MEDICAL INSURANCE ENROLLMENT

___Y___  Retiree is eligible to enroll in the NNI Retiree Medical Plan. (Y or N)

_____  **Please initial here if you want to cover yourself under the NNI Retiree Medical Plan.**

___Y___  Retiree is eligible to enroll currently covered dependents under the NNI Retiree Medical Plan. (Y or N)

_____  **Please initial here if you want to cover your eligible dependents under the NNI Retiree Medical Plan.**

**Provide required information on each Eligible Dependent you want to cover by the Nortel Networks Retiree Medical Plan (each dependent must be <u>currently covered</u> by your active employee Medical Plan):**

| NAME | Relationship to you | Date of Birth | Social Security # |
|------|--------------------|--------------|--------------------|
| 1) | | | |
| 2) | | | |
| 3) | | | |

**If you elect to NOT enroll in the Nortel Networks Retiree Medical Plan, you and your eligible dependents will be eligible for 18 months of COBRA continuation of insurance at the FULL COST plus a 2% administration fee.**

**If you enroll in the Nortel Networks Retiree Medical Plan, but do NOT enroll in medical coverage under that Plan for eligible dependents that were covered when you were an active employee, they will be eligible for 18 months of COBRA insurance at the FULL COST plus a 2% administration fee.**

**COBRA information and forms will be sent to your home address within 2 weeks from the date you or your eligible dependent's coverage ends under the Nortel Networks Medical Plan (for active employees).**

## RETIREE MEDICAL INSURANCE ELECTION
### Early Retirement Medical Insurance

**Available to Retiree <u>less than age 65</u> and any eligible dependents.    Your medical selection on this form will be for 2010 benefits.**

**Initial next to your plan of choice below, <u>or</u> decline coverage by initialing next to "DECLINE" in (I):**

(A)  _____  Single coverage - **Comprehensive Plan**
<u>$ 300.52</u>_____per month*

(B)  _____  Single coverage - **Indemnity Plan**
<u>$ 550.36</u>_____per month*

(C)  _____  Single coverage - **90/70 PPO - Preferred Provider Organization**
$ 352.52_____per month*

(D)  _____  Single coverage - **80/60 PPO - Preferred Provider Organization**
<u>$ 283.52</u>_____per month*

(E)  _____  Family coverage - **Comprehensive Plan**
<u>$ 855.76</u>_____per month*

(F)  _____  Family coverage - **Indemnity Plan**
<u>$ 1355.44</u>_____per month*

(G)  _____  Family coverage - **90/70 PPO - Preferred Provider Organization**
<u>$ 959.76</u>_____per month*

(H)  _____  Family coverage - **80/60 PPO - Preferred Provider Organization**
<u>$ 821.76</u>_____per month*

(I)  I have reviewed the costs outlined above and **ACCEPT** _____ or **DECLINE** ___X___ this early retirement medical insurance coverage.  I agree to remit monthly payments to NNI or their assignee (Benefits Billing Services) for the Retiree Medical Coverage I have elected.

*rates offered are not economic*

*HH 3-2-2010*

## Medicare Supplement Insurance

Available to Retiree and or spouse/domestic partner <u>over age 65</u>. Your medical selection on this form will be for 2010 benefits.

Enrollment in Medicare A and B is required. Medicare will provide primary coverage.

Please provide, along with this application, a copy of Medicare A and B card(s) for yourself and or spouse/domestic partner (if applicable) to verify Medicare enrollment.

Note the following about your Medical Insurance elections:

- You will receive a monthly invoice from the BENEFIT BILLING SERVICES (BBS). You will receive an invoice within 2-3 weeks from your retirement date and monthly afterwards. **Failure to pay medical premiums by the BBS invoice grace period date will result in cancellation of your coverage with no reinstatement rights.**

- When you and/or your eligible covered dependents reach age 65 you MUST enroll in Medicare A & B AND complete a NNI Medicare Supplemental Plan Enrollment Form to continue your coverage. Your premium will change. Forms and information are available from HR Shared Services at 1-800-676-4636.

- At your (the Retiree's) death, qualified dependents are eligible to continue coverage as long as they are insured at your death, continue to be eligible and pay required premiums. Premiums are based on your years of vesting at Retirement and the age of the covered dependent(s).

## OTHER BENEFITS AT RETIREMENT

- Retirees and their eligible dependents <u>who are covered</u> by the Retiree Medical Plan are eligible for Nortel Networks pharmacy benefit retail and home delivery service provided by Medco. The Retiree Medical Plan also includes coverage through the Employee Assistance Program which is administered by OptumHealth Behavioral Solutions.

## IMPORTANT REMINDER

You will have access to the Retiree Medical Plan and the Retiree Life and Long Term Care Insurance Plan on the date your pension benefits accrued under the Nortel Networks Retirement Income Plan commence through the Pension Benefits Guarantee Corporation (PBGC), if you (i) participated in the previously provided (now cancelled) Traditional or Balanced Program under the old Capital Accumulation Retirement Program ("CARP"), (ii) elect to commence your pension benefits through the PBGC on the earliest date following your termination date or severance end date, (iii) at least age 55 and meet the Nortel Networks Retiree Medical Plan and the Retiree Life and Long Term Care Insurance Plan service requirements when your pension benefits through the PBGC commence and (iv) are a participant in the Nortel Networks Medical Plan on the date immediately prior to the date of commencement of pension benefits through the PBGC.

## IMPORTANT NOTE: To initiate your pension benefit payments from the Retirement Income Plan, you **must** call the PBGC (US Government agency now responsible for your pension plan) at **1-800-400-7242**. Please direct all pension benefits related questions to the PBGC. Questions related to the Nortel Networks Retiree Medical and the Retiree Life and Long Term Care Insurance Plans should be directed to the Nortel HR Shared Services Center at 1-800-676-4636.

## APPLICATION SIGNATURE

I, _John H. Youkum_, hereby make application for my retiree medical plan, life insurance, and long-term care benefits (as applicable). I have read and completed all applicable sections of this application and verify that everything I have stated in this application is correct to the best of my knowledge. I also certify that I am not currently employed with any other NNI affiliate that offers benefits under the Nortel Networks Retirement Income Plan.

**I will immediately notify HR Shared Services in writing if I am re-employed by NNI or any NNI subsidiary that offers** benefits under the NNI Retirement Income Plan.

_____  Date  _3-2-2010_
Employee Signature

I contacted the PBGC on _3-2-2010_ (Date) and initiated my request to commence pension under the Nortel Networks Retirement Income Plan.

_____        (see attached) ←
Employee Signature

*for information necessary*
*JHy.*
*3-2-2010*

Please Return Form To:

**Nortel HR Shared Services**
**Attn: Retiree Medical**
**M/S 570/02/0C2**
**P.O. Box 13010**
**Research Triangle Park, NC  27709**

Please notify the HR Shared Services at (1-800-676-4636) of any future name, address or phone number changes.

## KEEP A <u>COPY</u> OF THIS FORM WITH YOUR OTHER VERY IMPORTANT RECORDS!!