**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| NORTEL NETWORKS INC., *et al.*, | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Re: Docket Nos. 9946, 9947** |

**JOINT ADMINISTRATORS' MOTION FOR LEAVE**
**TO APPEAL FROM ORDER APPROVING ALLOCATION PROTOCOL**

01:13535645.2

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................5

JURISDICTION AND VENUE ................................................................................................11

QUESTIONS ON APPEAL ......................................................................................................11

RELIEF REQUESTED..............................................................................................................11

ARGUMENT ............................................................................................................................12

I.      THE COURT SHOULD GRANT LEAVE TO APPEAL THE
        BANKRUPTCY COURT'S DECISION TO ENTER THE
        ALLOCATION PROTOCOL PROVIDING FOR JOINT
        PROCEEDINGS BEFORE THE U.S. AND CANADIAN COURTS. ............................12

        A.      The Appeal Raises Controlling Questions of Law As To
                Which There Are Substantial Grounds For Difference Of
                Opinion. .............................................................................................................13

        B.      Immediate Appeal Will Materially Advance the Ultimate
                Termination of the Litigation...............................................................................15

        C.      Granting Leave to Appeal Will Avoid Potential Wasted
                Trial Time and Litigation Expense. ......................................................................16

II.     APPEAL FROM THE ORDER APPROVING THE ALLOCATION
        PROTOCOL SHOULD BE HEARD TOGETHER WITH THE APPEAL
        AS OF RIGHT FROM THE ORDER DENYING THE MOTION TO
        COMPEL ARBITRATION BECAUSE THE ISSUES ARE
        INTERTWINED. ...........................................................................................................16

CONCLUSION..........................................................................................................................18

The court-appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators")[1] for Nortel Networks UK Limited ("NNUK") and certain of its affiliates (collectively, and including NNUK, the "EMEA Debtors")[2] located in the region known as EMEA (Europe, Middle East, and Africa) in proceedings under the Insolvency Act 1986, pending before the High Court of Justice of England and Wales (the "English Court"), respectfully submit this motion (the "Motion"), pursuant to 28 U.S.C. § 158(a) and Rules 8001 8002, and 8003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for leave to appeal from the Order Approving Allocation Protocol, entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or the "U.S. Court") on April 3, 2013 (the "Allocation Protocol Order," D.I. 9947) and the accompanying Opinion (the "Allocation Opinion," D.I. 9946).

In support of this Motion, the Joint Administrators respectfully state as follows:

## PRELIMINARY STATEMENT

The present motion relates to the dispute that has arisen about how the proceeds from the sales of the former Nortel group's global businesses should be divided between the estates of the various Nortel debtors in Canada, the United States and Europe, the Middle East and Africa ("EMEA"), for eventual distribution to their respective creditors.  By Opinion filed on April 3, 2013, the Bankruptcy Court (i) denied the Joint Administrators' motion to compel

---

1.  The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the English proceedings for Nortel Networks (Ireland) Limited are:  Alan Robert Bloom and David Martin Hughes.

2.  The EMEA Debtors are:  Nortel Networks UK Limited; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

arbitration of this dispute in accordance with a post-petition pre-asset sale written agreement between the various Nortel debtors, and (ii) granted the joint motion of the U.S. Debtors[3] and the Official Committee of Unsecured Creditors (the "Committee") to instead litigate this dispute through joint pleadings, discovery, hearings and trials before the U.S. Court and the Ontario Superior Court of Justice–Commercial List (the "Canadian Court").[4]  In the related Allocation Protocol Order, also filed on April 3, 2013, the Bankruptcy Court approved the entry of a protocol (the "Allocation Protocol"), which outlines the process for joint litigation of the allocation dispute by the U.S. and Canadian Courts.

Pursuant to Section 16(a) of the Federal Arbitration Act (the "FAA"), the Bankruptcy Court's decision denying the Joint Administrators' motion to compel arbitration is appealable as of right.[5]  By the present motion, the Joint Administrators seek leave to appeal from those portions of the Allocation Protocol Order and Allocation Opinion pursuant to which the Bankruptcy Court ordered that the allocation dispute should be decided through joint pleadings, discovery, hearings and trial before the U.S. and Canadian Courts.  It is appropriate to address the appeal from the portion of the Allocation Protocol Order approving the entry of the Allocation Protocol at the same time as the appeal from the decision denying the motion to

---

3.  The debtors in these chapter 11 cases (the "U.S. Debtors"), along with the last four digits of each tax identification number, are:  Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

4.  The U.S. and Canadian Courts have entered into a Cross-Border Protocol (as defined below) establishing procedures for the coordination of the insolvency proceedings in their respective jurisdictions.

5.  9 U.S.C. § 16(a) (2006); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 214 (3d Cir. 2007) ("In no uncertain terms, Section 16 'makes clear that any order favoring litigation over arbitration is immediately appealable and any order favoring arbitration over litigation is not.'") (citation omitted).

compel arbitration, rather than waiting for the conclusion of the joint cross-border trials, for at least the following reasons:

First, allowing an immediate appeal from the Allocation Protocol Order will serve the interest of judicial efficiency.  The filing of the appeal from the Bankruptcy Court's decision denying the Joint Administrators' motion to compel arbitration automatically deprives the Bankruptcy Court of jurisdiction to decide the allocation dispute, thereby staying proceedings on allocation until the appeal has been decided.[6]  An immediate appeal of the Allocation Protocol Order will therefore cause no prejudice.  Further, although it seems plain that the allocation dispute is required to be arbitrated in accordance with the parties' written agreement, the Joint Administrators' success on this point is not guaranteed.  If the decision denying the motion to compel arbitration is affirmed on appeal, the question of the form of judicial proceedings through which the allocation dispute should ultimately be decided will become paramount.  In contrast, if the appellate court finds the allocation dispute to be arbitrable without reviewing the portion of the Order approving the Allocation Protocol, the parties will be subject to two conflicting orders: one to arbitrate and one adopting the protocol.  If the objections to the propriety of the joint trials ordered by the Bankruptcy Court are addressed now, the Bankruptcy Court and parties will have a road map for how to proceed in the event the appeal is unsuccessful.  Delaying appeal until after U.S. and Canadian judgments on the merits could result in the need to repeat the entire trial.

Second, the Allocation Protocol implicates controlling questions of law as to which there are substantial grounds for difference of opinion.  The joint trial approach ordered under the Allocation Protocol is unprecedented.  Instead of ordering the dispute to be arbitrated,

---

6.    *See Ehleiter*, 482 F.3d at 215 n.6; *see also Guidotti v. Legal Helpers Debt Resolution*, No. 11-1219, 2012 WL 3262461, at *2-3 (D.N.J. Aug. 7, 2012) (granting automatic stay); *V.I. Water & Power Auth. v. Gen. Elec. Int'l*, No. 2006-131, 2009 WL 2413670, at *1 (D.V.I. Aug. 4, 2009) (same).

the U.S. and Canadian Courts have intentionally created a situation in which both courts are seized of a dispute about the same subject matter, *i.e.*, how to divide the $7.5 billion held in escrow among some forty Nortel entities around the world.  The Courts have ordered the parties to engage in a process by which two parallel courts of independent jurisdiction will conduct joint hearings, applying uncertain rules of evidence and procedure, and conduct joint trials, leading to two independent judgments and two separate appeal processes in the U.S. and Canada.  There is at least substantial doubt about the authority of a U.S. Court to formulate *ad hoc* trial procedures in this fashion.  The parties can only hope that the judgments will coincide, as there will literally be no way to reconcile any differences in the ultimate decisions entered by the U.S. and Canadian Courts.

Thus the Joint Administrators seek leave to appeal the novel issue of whether separate courts of two sovereign nations can co-adjudicate a proceeding, each purporting to act under its own substantive and procedural rules, while maintaining each court's sovereignty and independence and observing the due process rights of the parties, in a scenario that is almost certain to lead to a deadlock between two inconsistent judgments.

The issues to be addressed on this appeal could not be more important.  To date, the Nortel bankruptcy proceedings serve as a paradigm for how to promptly sell the business assets of an international corporate group, thereby maximizing the funds available for distribution to creditors, despite the pendency of multiple international insolvency proceedings under widely differing legal regimes.  To complete this paradigm, the Courts must implement a fair and equitable approach for determining how the sale proceeds will be allocated among the various debtors around the world.  Foreign debtors in future cases will not agree to cooperate on sales of global assets if their share of the proceeds must be determined by the local courts of

another nation.  The ideal method for determining allocation of the sales proceeds is the one

contemplated by all parties when they agreed to the asset sales, i.e. by submission to an

international panel of neutral arbitrators.

## BACKGROUND

The Nortel group was a Canada-based global supplier of telecommunications,

computer networks and software serving customers in Canada, the U.S., the Caribbean, Latin

America, Asia and EMEA (Europe, the Middle East and Africa).

On January 14, 2009 (the "Petition Date"), the principal companies in the Nortel

group commenced insolvency proceedings.[7]  The group's ultimate corporate parent Nortel

Networks Corporation ("NNC"), NNUK's direct corporate parent Nortel Networks Limited

("NNL"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors") sought

protection under the Canadian Companies' Creditors Arrangement Act ("CCAA").  The U.S.

Debtors filed voluntary petitions in the U.S. Court pursuant to chapter 11, title 11 of the United

States Code (the "Bankruptcy Code").  The EMEA Debtors were placed into administration in

England under the Insolvency Act 1986 by orders of Mr. Justice Blackburne of the English High

Court.[8]

On the Petition Date, the U.S. Court and the Canadian Court entered Orders

establishing procedures for the coordination of cross-border hearings between the U.S. and

---

7.   Nortel Networks (CALA) Inc. filed for relief on July 14, 2009, which was consolidated and is being jointly
      administered with the U.S. Debtors' chapter 11 cases for procedural purposes only.  (Order Directing Joint
      Administration of the Debtors' Related Chap. 11 Cases and Granting Related Relief, Jul. 17, 2009, D.I. 1098.)

8.   On May 28, 2009, the Commercial Court of Versailles ordered the commencement of secondary proceedings in
      respect of NNSA.

Canadian Courts (as amended, the "<u>Cross-Border Protocol</u>").[9]  The Cross-Border Protocol

allowed the U.S. and Canadian Courts to hold joint hearings "where both the U.S. Court and the

Canadian Court consider such a Joint Hearing to be necessary or advisable, or . . . to, among

other things, facilitate or coordinate proper and efficient conduct of the Insolvency Proceedings

or the resolution of any particular issue in the Insolvency Proceedings."  (Cross-Border

Insolvency Protocol, Ex. 1 ¶ 12(d), Jun. 29, 2009, D.I. 990.)  However, the Cross-Border

Protocol confirmed such proceedings could not infringe on the sovereignty and independence of

the two Courts.  (*Id.* at ¶¶ 7, 8, 12(f).)

>    After commencing insolvency proceedings in their respective jurisdictions, the

Nortel group of companies made plans to sell off the Nortel businesses.  Because Nortel's

businesses were conducted globally, along "business lines," the cooperation of all Nortel entities

around the world was necessary in order to consummate the sale of each business line.  This

raised the question of how the purchase price that would be paid for each global business line

should be divided (allocated) among the various Nortel debtors that had an interest in each

business line (the "<u>Selling Debtors</u>").  To prevent this issue from delaying the sales transactions,

the various Nortel debtors agreed that the proceeds of the asset sales would be placed into escrow

pending later determination of how to divide those proceeds either through (i) negotiated

agreement amongst the parties, or (ii) determination by an independent "dispute resolver" in

accordance with procedures to be agreed by the parties.

>    On or about June 9, 2009, the Canadian, U.S. and EMEA Debtors entered into the

Interim Funding and Settlement Agreement (the "<u>IFSA</u>"), which provided, *inter alia*, for the

---

9.    Order Approving Cross-Border Court-to-Court Protocol, Jan. 15, 2009, D.I. 54, as amended by the Order
      Approving Stipulation of the Debtors and the Official Comm. Of Unsecured Creditors of Nortel Networks Inc.,
      et al., Amending the Cross-Border Court-to-Court Protocol, Jun. 29, 2009, D.I. 990, annexed hereto as
      Exhibit G.

proceeds of the asset sales to be placed in escrow.  (Apr. 25, 2011, D.I. 5308-1.)  The IFSA

provided that sale proceeds would not be distributed unless either (i) the selling Nortel debtors

agreed on the appropriate allocation, or (ii) in the event that a dispute about allocation could not

be resolved by negotiation, determination by "dispute resolver(s)."  (*Id.* at ¶ 12(b).)

Specifically, Section 12(b) of the IFSA states:

> [T]he entire amount of the Sale Proceeds . . . shall be deposited in
> an escrow account pursuant to an escrow agreement, the terms of
> which shall be negotiated and agreed by all Selling Debtors, in
> each case acting reasonably (the "Escrow Account").  In no case
> shall there be any distribution from the Escrow Account in advance
> of either (i) agreement of all the Selling Debtors or (ii) in the case
> where the Selling Debtors fail to reach agreement, determination
> by the relevant dispute resolver(s) under the terms of the Protocol
> . . . applicable to the Sale Proceeds, and subject in each case to
> payment of the agreed or determined amount of allocation of Sale
> Proceeds to all Selling Debtors.

The IFSA also required the parties to negotiate in good faith towards agreeing on

a protocol to specify the procedures that would be followed by the dispute resolver.  (*Id.* ¶ 12(c).)

The U.S. Court approved the IFSA by order dated June 29, 2009 (Order Approving the Interim

Funding and Settlement Agreement and Granting Related Relief, Jun. 29, 2009, D.I. 993), and

the Canadian Court approved it by order dated June 29, 2009.  By Order dated June 23, 2009, the

English Court ordered that the Joint Administrators "be at liberty" to enter into the IFSA.[10]

Sales of substantially all Nortel assets followed, with proceeds from the sales

escrowed as required by the IFSA and held in bank accounts maintained in the U.S.  The total

currently held in escrow is approximately $7.5 billion, representing the proceeds of nine separate

asset sales.

---

10. Section 13 of the IFSA provides that no provision of the IFSA shall be effective until each of the U.S. Court and
    Canadian Court approved the entirety of the IFSA and the English Court gave a direction that the Joint
    Administrators be at liberty to enter into the IFSA, which requirement could be waived by the Joint
    Administrators at their discretion.  (IFSA § 13, D.I. 5308-1.)

At all times, both before and after the entry of the IFSA, the parties understood and agreed that the "dispute resolver" that would be appointed to resolve disputes about allocation would be one or more private individuals acting in the capacity of arbitrators. Shortly after execution and judicial approval of the IFSA, the parties commenced negotiations towards a protocol to specify the procedures that would be followed in this arbitration proceeding. The parties had reached agreement on the main points of a twenty-nine page protocol, pursuant to which each of the three main debtor groups (Canada, U.S. and EMEA) would appoint one arbitrator to form a three member arbitration panel to resolve disputes over allocation. Before finalizing this protocol, the parties suspended negotiations in favor of mediation regarding the actual allocation of the IFSA sale proceeds. Mediation sessions took place in November 2010 and April 2011, without success.

After the failure of the mediation, the U.S. Debtors abruptly reversed course and refused to continue negotiations towards finalizing the IFSA dispute resolution protocol. They decided that they would no longer honor the understanding upon which the Nortel asset sales had been consummated, *i.e.*, that disputes about allocation of the sale proceeds would be decided in an international arbitration proceeding rather than by any particular national court. Thus, on April 25, 2011, the U.S. Debtors and the Committee filed the Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding Settlement Agreement, and for Related Relief (the "Allocation Protocol Motion"), in which they moved the U.S. Court for entry of an order approving an Allocation Protocol establishing procedures and an expedited schedule for joint determination by the U.S. and Canadian Courts of the allocation of the sale proceeds.[11]  (D.I. 5307.)

---

11.  A companion application was filed by the Canadian Debtors before the Canadian Court.

The Joint Administrators filed objections to the Allocation Protocol Motion, and made a cross-motion to compel arbitration of the allocation dispute as provided for under the IFSA (the "Cross-Motion").  (Joint Administrators' Objection and Cross-Motion, May 19, 2011, D.I. 5444.)  The Joint Administrators argued that, from the earliest negotiations of the IFSA, the Selling Debtors had agreed that the allocation of the sale proceeds should be decided in a private, transnational arbitration proceeding and not by any national court or courts, and that joint jurisdiction of the Canadian and U.S. Courts was contemplated solely for the purpose of enforcing the arbitration clause or for ancillary relief.  (The Joint Administrators' Mem. of Law, May 31, 2011, D.I. 5531.)  The Joint Administrators further argued that based upon the terms of the IFSA and the history of negotiations regarding the IFSA:

> All evidence confirms that the parties bound themselves to submit allocation disputes to arbitration, regardless of whether they were successful in negotiating a procedural protocol to be followed in such arbitration.  Accordingly under the Federal Arbitration Act (the "FAA"), the Court's jurisdiction over allocation disputes is limited to compelling the parties to submit those disputes to arbitration.

(*Id.* at 3.)

Argument on the Allocation Protocol Motion and Cross-Motion (together with submissions from other parties) was heard in joint hearings before the U.S. Court and Canadian Court on June 7, 2011, after which the U.S. and Canadian Courts reserved decision and ordered the parties to try to mediate the dispute.  This mediation was unsuccessful, and was declared ended in January 2013.

On April 3, 2013, the U.S. Court (Gross, J.) entered the Allocation Protocol Order and Allocation Opinion, denying the Joint Administrators' motion to compel arbitration and

approving the Allocation Protocol that had been submitted by the U.S. Debtors and Committee.[12]

Mr. Justice Morawetz of the Canadian Court, having previously issued an endorsement on

March 8, 2013, issued a further endorsement on April 3, 2013 (the "Allocation Endorsement"),

which reached the same result.[13]  The Courts found that the parties' intention to arbitrate the

allocation dispute was not expressed with sufficient clarity in the terms of Section 12 of the

IFSA.  Instead, the Courts found that they had joint jurisdiction to determine allocation pursuant

to Section 16(b) of the IFSA, which provides that:

> To the fullest extent permitted by applicable law, each Party
> (i) agrees to submit to the non-exclusive jurisdiction of the US and
> Canadian Courts (in a joint hearing conducted under the Cross-
> Border Protocol adopted by such Court, as it may be amended
> from time to time), for purposes of all legal proceedings relating to
> the matters agreed in this Agreement . . .

(IFSA § 16(b), D.I. 5308-1.)

The Allocation Protocol approved by the U.S. and Canadian Courts provides that

the dispute over allocation will be decided through simultaneous proceedings and joint trials

conducted under the Cross-Border Protocol.  (Exhibit G.)  The same hearings will also be used to

adjudicate claims the EMEA Debtors have asserted against the Canadian Debtor and the U.S.

Debtor.  Prior to such hearings, the parties are to participate in joint submission of pleadings,

followed by joint fact discovery, joint expert discovery and joint pre-trial submissions.  The

precise rules of procedure, rules of evidence and constitutional principles that will apply in these

---

12. A copy of the Allocation Protocol Order and the Allocation Opinion are annexed hereto as Exhibits A and B.  A copy of the Form of Allocation Protocol submitted by the U.S. Debtors and Committee and approved in principle by the U.S. and Canadian Courts is annexed as Exhibit C.  Certification of counsel for the U.S. Debtors attaching a final form of the Allocation Protocol incorporating minor updates submitted on April 15, 2013 is annexed as Exhibit D.

13. A copy of the Canadian Court's endorsements are annexed hereto as Exhibits E and F.  The Joint Administrators intend to appeal the Allocation Endorsement concurrently with the appeal of the Allocation Protocol Order and Allocation Opinion.

various phases of the proceedings are not specified in the Allocation Protocol. Instead the two courts are to "determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery." (*Id.* ¶ 4.)

The portion of the Allocation Protocol Order in which the U.S. Court denied the Joint Administrators' Cross-Motion is immediately appealable as of right under Section 16(a) of the FAA. 9 U.S.C. § 16(a) (2006). By the present motion, the Joint Administrators seek leave to appeal that portion of the Allocation Protocol Order in which the U.S. Court approved the Allocation Protocol and directed that the disputes over allocation of the sale proceeds be determined through simultaneous proceedings and joint trials before the U.S. and Canadian Courts.

## JURISDICTION AND VENUE

The Joint Administrators seek leave to appeal from an interlocutory order of the United States Bankruptcy Court for the District of Delaware. The United States District Court for the District of Delaware (the "District Court") has jurisdiction to hear the motion and the appeal pursuant to 28 U.S.C. § 158(a) (2006). The relief requested in the Motion is properly before this Court under Rule 8003 of the Bankruptcy Rules. Venue in this district is appropriate under 28 U.S.C. §§ 1408-1409 (2006).

## QUESTIONS ON APPEAL

Whether the U.S. Court erred in approving the Allocation Protocol and directing that the disputes over allocation of the sale proceeds be decided through joint procedures and the concurrent jurisdiction of the Canadian Court and U.S. Court.

## RELIEF REQUESTED

By this Motion, the Joint Administrators request that this Court grant the Joint Administrators leave to appeal the portion of the Allocation Protocol Order in which the U.S.

Court approved an Allocation Protocol establishing procedures for joint and concurrent

resolution by the U.S. and Canadian Courts of the allocation of the sale proceeds.  If leave is

granted, this appeal will proceed together with the Joint Administrators' appeal of the portion of

the Allocation Protocol Order in which the U.S. Court denied the Joint Administrators' Cross-

Motion to compel arbitration of the allocation dispute, which is immediately appealable as of

right under Section 16(a) of the FAA.[14]  A proposed form of order granting the relief requested is

attached hereto.

### ARGUMENT

I.    **THE COURT SHOULD GRANT LEAVE TO APPEAL THE BANKRUPTCY COURT'S DECISION TO ENTER THE ALLOCATION PROTOCOL PROVIDING FOR JOINT PROCEEDINGS BEFORE THE U.S. AND CANADIAN COURTS.**

The Court should give the Joint Administrators leave to immediately appeal that

portion of the Allocation Protocol Order in which the U.S. Court approved an Allocation

Protocol establishing procedures for the joint and concurrent resolution by the U.S. and Canadian

Courts of the allocation of the proceeds of the sales of the Nortel businesses.

Interlocutory orders are appealable with leave of court pursuant to 28 U.S.C.

§ 158(a)(3).  The decision whether to grant leave to file an interlocutory appeal from a

bankruptcy court decision is informed by the criteria set forth in 28 U.S.C. § 1292(b) (2006).

*E.g., W.R. Grace & Co. v. Libby Claimants (In re W.R. Grace & Co.)*, No. 08-246, 2008 WL

3522453, at *2 (D. Del. Aug. 12, 2008); *Patrick v. Dell Fin. Servs., Inc.*, 366 B.R. 378, 385

---

14. Because the finality of orders in bankruptcy cases is more liberal than in other civil litigation, combined with a strong federal policy favoring arbitration agreements, a bankruptcy court's order denying arbitration is "final" for the purposes of § 158(a) and a party need not obtain leave of court to appeal such an order. *Americorp, Inc. v. Hamm*, No. 11-cv-677, 2011 WL 6020187, at *1-2 (M.D. Ala. 2011); *see also Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d. 222, 227 (3d Cir. 2006) (noting that "[t]he District Court had appellate jurisdiction under 28 U.S.C. § 158(a)(1) [(providing for an appeal from final judgments, orders, and decrees)] and 9 U.S.C. § 16(a)(1)(B) (providing appeal from an order denying arbitration))."

(M.D. Pa. 2007); *Nat'l Cable Television Coop., Inc. v. Broadstripe, LLC (In re Broadstripe, LLC)*, No. 09-10006, 2009 WL 774401, at *2 (D. Del. Mar. 26, 2009).  Section 1292 provides that leave to appeal an interlocutory order of a bankruptcy court may be granted when:  (a) the order involves controlling questions of law; (b) there is a substantial ground for difference of opinion; and (c) an immediate appeal may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b); *Broadstripe,* 2009 WL 774401, at *2; *Patrick*, 366 B.R. at 385.

"The decision whether to grant an interlocutory appeal from a bankruptcy court order lies with the district court's discretion."  *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, No. 01-16034, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006).  Such discretion is appropriately exercised here, where the multi-national disposition of billions of dollars is at stake and where the U.S. Court is embarking on a course that threatens to compromise its independence, sovereignty and the due process rights of the litigants.  The Allocation Protocol contemplated by the U.S. Court represents an unprecedented departure from any established procedure and subjects its participants to potentially concurrent, conflicting orders and judgments of the U.S. Court and the Canadian Court, on both procedural and substantive legal issues.[15]

A.    **The Appeal Raises Controlling Questions of Law As To Which There Are Substantial Grounds For Difference Of Opinion.**

Leave to appeal the Allocation Protocol Order should be granted because the Allocation Protocol Order involves a controlling question of law.  A question is "controlling" if its incorrect disposition would require reversal of the final judgment or is "serious to the conduct of the litigation."  *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

---

15.  In order for the decisions of the Courts to be useful and enforceable, they would need to be identical, which would be highly unlikely if each Court independently arrived at its decision.  Engaging in joint deliberations in order to reach consensus, however, would be a violation of the Courts' independence and sovereignty.

The decision appealed from here will plainly control the outcome of the litigation below.  If the appellate court determines that the U.S. Court exceeded its authority by ordering a joint and concurrent resolution by the U.S. and Canadian Courts of the allocation of the sale proceeds, any final judgment entered by the U.S. Court under that protocol would be subject to reversal.  Such judgment will also be reversed if the appellate court determines that the Allocation Protocol proceedings violate principles of independence, sovereignty or deprive parties of due process.

There are substantial grounds for difference of opinion with respect to whether the Bankruptcy Court exceeded its authority by approving the Allocation Protocol, and whether the joint proceedings violate principles of independence, sovereignty and deprive the litigants of due process.  A "substantial ground for difference of opinion" exists where courts differ in their views on the correct legal standard.  *Patrick*, 366 B.R. at 386.  The existence of a matter of first impression may establish a "substantial ground for difference of opinion," especially if the issue is "novel" or requires "highly complex" analysis.  *See Zenith Radio Corp. v. Matsushita Elec. Indus. (In re Japanese Elec. Prods. Antitrust Litig.),* 494 F. Supp. 1190, 1243 (E.D. Pa. 1980).

The questions at issue here are both novel and highly complex.  The Allocation Protocol, which would govern joint but ostensibly separate proceedings, will subject the Protocol's participants to separate and potentially conflicting orders of two separate sovereign courts.  Addressing a dispute of this nature through ad hoc procedures formulated by a U.S. judge and a foreign judge is unprecedented.

Furthermore, the Allocation Protocol will deprive the parties of their due process rights under U.S. procedural law, as the U.S. and Canadian Courts will be forced to reconcile conflicting procedural rules, which may result, for example, in the application of hybrid rules of

evidence and in either limited or compelled disclosure where such limitations or expansions would not otherwise exist absent the attempt to coordinate two separate legal proceedings. Given the novel question as to whether the U.S. Court is empowered to order and enforce a protocol that deviates from established law and procedure, which has a high potential to subject the parties to conflicting orders and judgments issued by the separate sovereign courts, it is appropriate to conclude that there are substantial grounds for difference of opinion.

**B.    Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation.**

Permitting an immediate appeal from that Bankruptcy Court's decision approving the Allocation Protocol will materially advance the ultimate termination of the litigation. Several factors are pertinent in determining whether an immediate appeal would materially advance the ultimate termination of the litigation, including: (i) whether the need for trial would be eliminated; (ii) whether the trial would be simplified by the elimination of complex issues; and (iii) whether discovery could be conducted more expeditiously and at less expense to the parties. *Patrick*, 366 B.R. at 387.

If the appellate court reverses the determination of the U.S. Court on the Joint Administrators' Cross-Motion to compel arbitration, the allocation dispute would be resolved through arbitration, which would eliminate the issues of potential procedural and substantive conflict. But if the appellate court affirms the denial of the Cross-Motion to compel arbitration, the parties must proceed to litigate allocation through some alternative procedure. If the portion of the Allocation Protocol Order approving the entry of the Allocation Protocol is not appealed, uncertainty will remain about the propriety of the procedures ordered under the Allocation Protocol. Since granting leave to appeal from the decision to approve the Allocation Protocol will cause no delay to the proceedings below, it will speed the ultimate resolution of this matter

if the appellate court addresses the propriety of the Allocation Protocol now rather than waiting until after the U.S. and Canadian Courts have entered their concurrent judgments in the joint proceedings.

**C.    Granting Leave to Appeal Will Avoid Potential Wasted Trial Time and Litigation Expense.**

Granting leave is also appropriate where doing so promotes "the avoidance of harm to a party *pendente lite* from a possibly erroneous interlocutory order and the avoidance of possible wasted trial time and litigation expense." *Broadstripe, LLC*, 2009 WL 774401, at *2 (citation omitted).  This consideration is present here, where deferral of the appeal of the issue as to whether the Allocation Protocol is sanctioned by the IFSA or can adequately provide the parties due process until the end of litigation could easily result in wasted trial time and litigation expense.

**II.    APPEAL FROM THE ORDER APPROVING THE ALLOCATION PROTOCOL SHOULD BE HEARD TOGETHER WITH THE APPEAL AS OF RIGHT FROM THE ORDER DENYING THE MOTION TO COMPEL ARBITRATION BECAUSE THE ISSUES ARE INTERTWINED.**

Even if the Court determines that the criteria for granting leave to appeal are not present, the appellate court should nevertheless exercise pendant jurisdiction to hear the Joint Administrators' appeal from the interlocutory portion of the Allocation Protocol Order in tandem with the appeal from denial of the motion to compel arbitration.  An appellate court may exercise pendant jurisdiction over issues that are not independently appealable when either:  (i) the non-appealable order is "inextricably intertwined" with the appealable order; or (ii) review of the non-appealable order "is necessary to ensure meaningful review of the appealable order." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 136 (3d Cir. 2004); *see also Carpenter v. Boeing Co.*, 223 F.R.D. 552, 558 (D. Kan. 2004); *Ace Ins. Co. v. Smith*, No. 06-0325, 2006 U.S. Dist. LEXIS 67761, at *11 (D. Ariz. Sept. 20, 2006).  Issues are inextricably intertwined

"when the appealable issue 'cannot be resolved without reference to the otherwise unappealable issue.'"  *Invista S.À.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 88 (3d Cir. 2010) (citation omitted).

The decision approving the Allocation Protocol is inextricably intertwined with the decision denying the Joint Administrators' motion to compel arbitration because:  (i) it requires construction of terms of the IFSA and the extent of the Bankruptcy Court's discretion to impose a dispute resolution process thereunder; and (ii) the Allocation Protocol establishes the procedures that the Bankruptcy Court has ordered be followed in lieu of arbitration.  If the appellate court finds the allocation dispute to be arbitrable without reviewing the portion of the Order approving the Allocation Protocol, the parties will be subject to two conflicting orders:  one to arbitrate and one adopting the protocol.  Both orders should therefore be addressed at the same time.

Furthermore, even if the appellate court finds the dispute not to be arbitrable, it would be appropriate for the court to take the next step and determine whether Bankruptcy Court acted appropriately by instituting the unprecedented procedure that has been ordered as the alternative to arbitration.  Addressing both issues at once will serve the interest in judicial efficiency by preventing the waste of resources that will occur if the Joint Administrators are successful in challenging the Allocation Protocol process after the joint trial on the merits.

Granting leave to appeal will cause no prejudice to the U.S. Debtor or the Committee.  The filing of the appeal from the Bankruptcy Court's order denying the Joint Administrators' motion to compel arbitration deprives the Bankruptcy Court of jurisdiction to

01:13535645.2

62309424_1

address allocation under the Allocation Protocol, thereby staying that aspect of the proceedings below.[16]

## CONCLUSION

For the foregoing reasons, an immediate appeal from the Allocation Protocol Order is essential to timely resolution of the allocation of sale proceeds in a manner that will yield a final, consistent result and afford all parties due process.  The Joint Administrators therefore respectfully request that the Court (i) grant the Joint Administrators leave to appeal the portion of the Allocation Protocol Order that approved the Allocation Protocol, which appeal will proceed in tandem with the appeal as of right from the portion of the Allocation Protocol Order denying the Cross-Motion to compel arbitration, (ii) enter an Order substantially in the form attached hereto, and (iii) grant such other and further relief as the Court deems just and proper.

---

16. The filing of an appeal from an order denying a motion to compel arbitration automatically deprives the lower court of jurisdiction until the appeal has been fully litigated.  *See Ehleiter*, 482 F.3d at 215 n.6; *see also Guidotti,* 2012 WL 3262461, at *2-3; *V.I. Water & Power Auth.*, 2009 WL 2413670, at *1.

01:13535645.2

62309424_1

Dated: Wilmington, Delaware
       April 17, 2013

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              */s/ Jaime Luton Chapman*
                                  James L. Patton (No. 2202)
                                  Edwin J. Harron (No. 3396)
                                  John T. Dorsey (No. 2988)
                                  Jaime Luton Chapman (No. 4936)

                                  Rodney Square
                                  1000 North King Street
                                  Wilmington, Delaware 19801
                                  Telephone:  302-571-6600
                                  Fax:  302-571-1253

                                          – and –

                              HUGHES HUBBARD & REED LLP

                                  Derek J.T. Adler
                                  Amera Z. Chowhan
                                  Gabrielle Glemann
                                  Charles H. Huberty

                                  One Battery Park Plaza
                                  New York, New York 10004
                                  Telephone:  212-837-6000
                                  Fax:  212-422-4726

                                          – and –

                              HERBERT SMITH FREEHILLS LLP

                                  Kevin Lloyd
                                  John Whiteoak
                                  Richard Lawton

                                  Exchange House
                                  Primrose Street
                                  London EC2A 2HS

                                  *Counsel for Joint Administrators*

01:13535645.2

62309424_1