**EXHIBIT D**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------X
                                           :     Chapter 11
In re                                      :
                                           :     Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹             :
                                           :     Jointly Administered
                         Debtors.          :
                                           :     RE: D.I. 5307 and 9947
                                           :
-----------------------------------------------------X
```

## CERTIFICATION OF COUNSEL
## REGARDING ALLOCATION PROTOCOL

I, Ann C. Cordo, counsel for Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "US Debtors"), hereby certify as follows regarding the US Debtors' proposed allocation protocol (the "2013 Allocation Protocol"), attached as **Exhibit A** hereto; the blackline comparison between the 2013 Allocation Protocol and the 2011 Allocation Protocol (as defined below), attached as **Exhibit B** hereto; and the blackline comparison between the 2013 Allocation Protocol and the Monitor's 2013 Allocation Protocol (as defined below), attached as **Exhibit C** hereto.

1.    As explained fully herein, the US Debtors believe that the way to expedite the litigation is for the Court to enter an order, subject to modification by agreement of the Core

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Parties[2] and/or order of the Courts, (i) adopting **Exhibit A** as the Allocation Protocol, (ii) ordering April 30, 2013 as the date by which the Core Parties must file opening written submissions on Allocation and May 14, 2013 for any reply submissions, if any, on Allocation, as described fully below in paragraph 15, or alternatively scheduling a joint hearing to establish the deadline for such opening and reply submissions, and (iii) setting a date for a joint hearing with the Canadian Court as soon as practicable to address additional scheduling and discovery planning issues.

2.      On April 25, 2011, the US Debtors and the Committee filed the *Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief* [D.I. 5307] (the "U.S. Allocation Motion") for the approval of an allocation protocol establishing procedures for the cross-border resolution by the U.S. and Canadian Courts of the Allocation dispute.

3.      On June 2, 2011, the US Debtors and the Committee filed the *Reply Memorandum in Further Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, and in Response to the EMEA Debtors' Cross-Motion to Compel Arbitration* [D.I. 5571], along with an amended allocation protocol, which was attached thereto as Exhibit A (the "2011 Allocation Protocol"). The 2011 Allocation Protocol was agreed to by the Canadian Debtors, the Monitor, and the CCC. The Canadian Debtors subsequently filed a motion for an order approving the 2011 Allocation Protocol in the Canadian Court (the "Canadian Allocation Motion").

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the 2013 Allocation Protocol, attached as Exhibit A.

4.    On March 8, 2013, the U.S. and Canadian Courts granted the U.S. Allocation Motion and the Canadian Allocation Motion respectively, stating that reasons were to follow.  Both the U.S. and Canadian Courts ordered that the version of the allocation protocol to be entered was to follow the 2011 Allocation Protocol with limited exceptions.

5.    On April 3, 2013, the U.S. Court issued its *Opinion* [D.I. 9946] and *Order Approving Allocation Protocol* [D.I. 9947] (the "April 3 Order"), which granted the U.S. Allocation Motion and ordered the parties to negotiate the terms of an Allocation Protocol consistent with the U.S. Court's Opinion.  The U.S. Court further ordered that the US Debtors were to submit their proposal for the Allocation Protocol to all other parties on or before April 8, 2013, and thereafter the parties were to submit to the U.S. Court their versions of the Allocation Protocol on or before April 15, 2013.

6.    Also on April 3, 2013, the Canadian Court issued an Endorsement (the "April 3 Endorsement"), which provided the reasons for the Canadian Court's March 8, 2013 decision granting the Canadian Allocation Motion.  The Canadian Court ordered that certain amendments be made to the 2011 Allocation Protocol, and that the amended Allocation Protocol must be filed with the Canadian Court by April 15, 2013.

7.    Both the U.S. Court's April 3 Order and the Canadian Court's April 3 Endorsement set a trial date commencing on January 6, 2014 for Allocation, EMEA Claims and UK Pension Claims.

8.    Pursuant to the U.S. Court's April 3 Order, the US Debtors circulated a draft of the 2013 Allocation Protocol to the other Core Parties on April 8, 2013.  Thereafter, the US Debtors met and conferred with the other Core Parties regarding the draft and incorporated their comments into the 2013 Allocation Protocol, which is attached hereto as **Exhibit A.**  A

3

blackline is attached hereto as **Exhibit B**, which compares the 2013 Allocation Protocol and the 2011 Allocation Protocol.

9.     The 2013 Allocation Protocol has been accepted in its current form by the Committee, the Bondholders, each of the Indenture Trustees, and the Directors and Officers. The UK Pension Claimants provided comments, some of which are incorporated in the 2013 Allocation Protocol.  The EMEA Debtors also provided comments, but did so without prejudice to their objection to addressing Allocation in the manner set forth in the Allocation Protocol.

10.     Pursuant to the Canadian Court's April 3 Endorsement, the Monitor is also submitting an Allocation Protocol to the Canadian Court today (the "<u>Monitor's 2013 Allocation Protocol</u>"), to which the CCC provided comments.  A blackline that compares the 2013 Allocation Protocol and the Monitor's 2013 Allocation Protocol is attached hereto as **Exhibit C**. The US Debtors and the Monitor are in near agreement as to the form of the Allocation Protocol. However, the US Debtors' 2013 Allocation Protocol differs in two respects from the Monitor's 2013 Allocation Protocol.

11.     First, the Monitor's 2013 Allocation Protocol adds the phrase "and such other parties as the U.S. Court and the Canadian Court may direct" immediately following the definition of Core Parties in paragraph 2 of the 2013 Allocation Protocol.  While the US Debtors recognize that the Canadian Court's April 3 Endorsement provides that there should not be specified restrictions on Core Parties, the US Debtors submit that every party who has requested Core Party status is granted such status in the 2013 Allocation Protocol submitted by the US Debtors (and the Monitor).  In addition, after the Allocation Order is entered by the U.S. and Canadian Courts, expedited discovery will begin in anticipation of the January 6, 2014 trial date. Therefore, the Core Parties have an interest in finality with respect to who is a Core Party in the

4

Allocation dispute and it is contrary to the interest of justice and efficiency to leave open the possibility that additional Core Parties will be named, especially when no such other party has indicated an interest in Core Party status and it is important that limits be places on the litigation for it to be manageable.  Therefore, given the Canadian Court's comment that the Allocation Protocol should be kept "substantially in the form of [the 2011 Allocation Protocol]," the US Debtors have left the phrase "and such other parties as the U.S. Court and the Canadian Court may direct" in brackets in Paragraph  2 of their 2013 Allocation Protocol and propose that the Courts are able to strike it given the express inclusion of the additional parties within the definition.[2]

12.      Second, the Monitor proposes removing the phrase "the date(s) for an opening hearing on the Core Parties' allocation positions (prior to factual discovery) and on" in paragraph 4(e)(i) in the 2013 Allocation Protocol.  The US Debtors agree that there is a consensus among the Core Parties that an opening hearing on the competing allocation positions is no longer desired or necessary.  However, the US Debtors believe that making this or any other change to the 2013 Allocation Protocol beyond the limited amendments contemplated by the Canadian Court's April 3 Endorsement is inconsistent with the Canadian Court's mandate to keep the 2013 Allocation Protocol "substantially in the form of [the 2011 Allocation Protocol]." The US Debtors, however, have no objection if the Courts strike this phrase.

13.      In an effort to move these proceedings diligently in order to meet the January 6, 2014 trial date, in addition to the Allocation Protocol, the US Debtors circulated on April 8, 2013 to the other Core Parties for Allocation and as parties to the US and Canadian EMEA and UK Pension Claims a proposed schedule (the "Litigation Timetable") and

---

[2]      The US Debtors note that Core Parties are designated as such solely for purpose of the Allocation litigation and  reserve their rights regarding the request of any of the Core Parties to participate in the litigation of  the EMEA Claims and the UK Pension Claims, or any other claims brought against the Debtors.

comprehensive plan for coordinating discovery (the "Discovery Plan") that would apply to discovery in both the Allocation dispute and the EMEA and UK Pension Claims.[3]  The US Debtors indicated their desire to submit these consensually negotiated documents to the Courts with the 2013 Allocation Protocol and requested prompt responses.  Unfortunately, even though it appears that the parties are in agreement on many points regarding scheduling and discovery (as the US Court was advised previously in writing and at the March 26, 2013 status conference), the US Debtors have not received sufficient feedback from a number of Core Parties and are thus not in a position to file the Litigation Timetable or Discovery Plan today.

14.     Notwithstanding the foregoing, no parties have objected that opening written submissions, as defined in paragraph 4(f)(i) of the 2013 Allocation Protocol, should be filed on April 30 and that reply submissions, if any, as defined  in paragraph 4(f)(iii) of the 2013 Allocation Protocol, should be filed on May 14.  The parties further agree that the fact affidavits described in paragraphs 4(f)(ii) and (iv) of the 2013 Allocation Protocol are unnecessary.

15.     As such, while the parties continue to meet and confer regarding the other interim deadlines, the US Debtors respectfully request that the Court so-order the deadlines of April 30 and May 14 for opening written submissions and reply written submissions, if any, respectively, pursuant to paragraphs 4(f)(i) and (iii) of the 2013 Allocation Protocol, or arrange for a joint hearing promptly to set a deadline for opening submissions.  It was discussed among the parties that such opening written submissions filed in this Court would be styled as "Motions for Approval of Allocation Position of [Identifier of Core Party]," and would set out with reasonable particularity the relief sought with respect to Allocation, the material facts relied

---

[3]     Earlier versions were circulated on March 19.

upon, and the legal bases for such position.  The reply written submissions would set out the

Core Party's response to the arguments set forth in the opening written submissions.

16.      Given the significant amount of work that must be performed prior to the

January 6, 2014 trial date, the US Debtors believe that entry of a Litigation Timetable and

Discovery Plan must be done promptly.  Accordingly, the US Debtors respectfully request that

the U.S. Court schedule a joint hearing with the Canadian Court to resolve the scheduling and

discovery issues and enter orders adopting a Litigation Timetable and Discovery Plan.  The US

Debtors are prepared to submit their proposed Litigation Timetable and Discovery Plan—

substantially similar to the forms of documents the other Core Parties have had for

approximately one month—and seek instruction from the Court with regard to such submissions

prior to any joint hearing

17.      The US Debtors will provide a copy of this submission to the Canadian

Court by letter requesting identical relief as requested herein.

WHEREFORE, the US Debtors respectfully request that the Court enter an order,

subject to modification only by agreement of the parties and/or order of the Courts, (i) adopting

**Exhibit A** as the Allocation Protocol (ii) ordering April 30, 2013 as the date by which the Core

Parties must file opening written submissions on Allocation and May 14, 2013 for any reply

submissions, if any, on Allocation, as described above in paragraph 15, or alternatively

scheduling a joint hearing to establish the deadline for such opening and reply submissions, (iii)

setting a date for a joint hearing with the Canadian Court as soon as soon as practicable to

address the outstanding scheduling and discovery planning issues, and instructing the Core

Parties with regard to the submission of proposed Litigation Timetables and Discovery Plans in

advance of such hearing, and (iv) grant such other and further relief as is just and proper.

Dated: April 15, 2013
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

8

**<u>Exhibit A – 2013 Allocation Protocol</u>**

Case 09-10138-KG   Doc 10163-5   Filed 04/15/13   Page 11 of 29

**ALLOCATION PROTOCOL**

1. <u>Purpose</u>. The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors[1] ("<u>Allocation</u>," and any hearing regarding same, an "<u>Allocation Protocol Hearing</u>," and any discovery regarding same, "<u>Allocation Protocol Discovery</u>"). Subject to paragraphs 5 and 6 hereof, creditor claims, including but not limited to intercompany claims by and between any Nortel entities, their representatives or successors ("<u>Intercompany Claims</u>") are not governed by this Allocation Protocol. All Intercompany Claims between the U.S. Debtors and Canadian Debtors shall be determined in accordance with the Cross-Border Protocol and the Cross-Border Claims Protocol. All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made.

2. <u>Participants</u>. Each of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators, the CCC, the Indenture Trustees, the UK Pension Claimants, and the Directors and Officers [and such other parties as the U.S. Court and the Canadian Court may direct] (collectively, the "<u>Core Parties</u>," and each individually, a "<u>Core Party</u>") and their authorized representatives shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith. The foregoing is without prejudice to (x) the right of any other party in interest to file written submissions in support of or in opposition to any theory of allocation advanced at any Allocation Protocol Hearing before the U.S. and Canadian Courts or request permission to become a Core Party and fully participate in the foregoing, which request shall be made by motion on notice to the Core Parties for cause shown to both the U.S. and Canadian Courts, or (y) the power of the U.S. and Canadian Courts to adopt procedures to manage the Allocation Protocol Hearings and related proceedings.

3. <u>Cross-Border Protocol</u>. Any and all Allocation Protocol Hearings shall proceed in accordance with the Cross-Border Protocol, unless otherwise ordered by the U.S. and Canadian Courts.

4. <u>Procedures</u>. The U.S. and Canadian Courts will determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery. After hearing the procedural submissions of the Core Parties and taking into account the discovery already conducted to date in connection with the non-binding mediation sessions, the Allocation Protocol Discovery and Allocation Protocol Hearings shall proceed in an expeditious manner.

   a. <u>Pleadings</u>. The Core Parties will exchange pleadings, which they shall be entitled to amend, from time to time, in accordance with the usual practice of

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Appendix A.

the U.S. and Canadian Courts.  There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation.

b.   <u>Fact Discovery</u>.  The U.S. and Canadian Courts will facilitate the Core Parties' exchange of fact discovery by determining the following:

    i.   the deadline for, and acceptable manners of service of, reasonable requests for the production of non-privileged documents on any other Core Party;

    ii.   the deadline for objections to any Core Party's document requests;

    iii.   the deadline for identification of fact witnesses and number of fact witnesses allowed;

    iv.   the process for compelling attendance of fact witnesses at depositions; and

    v.   the deadline for completion of depositions, the number of depositions permitted, and the location of and time allowed for such depositions for each Core Party.

c.   <u>Experts</u>.  The U.S. and Canadian Courts shall facilitate expert discovery by determining the following:

    i.   the deadline for and format of expert reports (including exhibits);

    ii.   the deadline for and format of rebuttal expert reports (including exhibits); and

    iii.   the deadline for completion of expert depositions and the time allowed for such expert deposition.

d.   <u>Joint Conferences</u>.  The U.S. and Canadian Courts shall be available for joint conferences to resolve any discovery disputes among the Core Parties and to receive updates as to the status of the proceedings.  The U.S. and Canadian courts will determine when joint conferences may be set.

e.   <u>Joint Hearings</u>.  The U.S. and Canadian Courts shall have joint hearings on the merits.  The U.S. and Canadian Courts shall determine:

    i.   [the date(s) for an opening hearing on the Core Parties' allocation positions (prior to factual discovery) and on] the rules governing the joint hearing on the merits;

    ii.   the date(s) for an evidentiary hearing on the merits (after the close of fact and expert discovery and after the completion of written submissions) and the rules governing such hearing, during which opening and closing statements shall be made and cross-examination

and redirect examination of fact and expert witnesses shall take place; and

    iii.    the procedure for requesting or setting joint conferences as necessary to resolve any discovery disputes among the Core Parties or to receive updates to the status of the proceedings.

   f.   <u>Written Submissions</u>.  The U.S. and Canadian Courts will determine:

    i.    the deadline for and format of opening submissions (including exhibits);

    ii.    the deadline for and format of fact affidavits, if any, to accompany the opening submissions, which shall constitute the direct testimony of each fact witness;

    iii.    the deadline for and format of reply submissions (including exhibits); and

    iv.    the deadline for and format of fact affidavits, if any, to accompany the reply submissions.

5.   <u>EMEA Claims</u>.  Certain Intercompany Claims have been made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor and by Nortel Networks AG and Nortel Networks AS against (a) the U.S. Debtors (the "<u>EMEA U.S. Claims</u>"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors and the Directors and Officers (the "<u>EMEA Canadian Claims</u>" (and together with the EMEA U.S. Claims, the "<u>EMEA Claims</u>")).  The Canadian Debtors and the Directors and Officers may file motions with the Canadian Court to dismiss the EMEA Canadian Claims.

6.   <u>UK Pension Claims</u>.  Certain claims have been made by the UK Pension Claimants against (a) the U.S. Debtors (the "<u>UK Pension US Claims</u>"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors (the "<u>UK Pension Canadian Claims</u>" (and together with the UK Pension US Claims, the "<u>UK Pension Claims</u>")).  The Canadian Debtors may file motions with the Canadian Court to dismiss the UK Pension Canadian Claims.

7.   <u>Decisions</u>.  The U.S. and Canadian Courts will (a) hold simultaneously (i) the Allocation Protocol Hearings, (ii) hearings before the U.S. Court on the merits of any remaining EMEA U.S. Claims and UK Pension US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining EMEA Canadian Claim and UK Pension Canadian Claims, provided, however, that the U.S. and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only EMEA US Claims and/or UK Pension US Claims or only EMEA Canadian Claims and/or UK Pension Canadian Claims, and (b) issue their respective decisions on (i), (ii) and (iii).  The trial for this matter is scheduled to commence on January 6, 2014.  The trial will begin with the Allocation issues and continue thereafter with remaining issues to

be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims.

8.  <u>Appeals</u>.  The Core Parties shall have their usual rights of appeal from all interlocutory and final decisions of the U.S. and Canadian Courts.

## Appendix A

Bondholder Group:  The ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI, and Nortel Networks Capital Corporation

Canadian Court:  Ontario Superior Court of Justice (Commercial List)

Canadian Debtors:  Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), and Nortel Networks Global Corporation., Nortel Networks International Corporation and Nortel Networks Technology Corporation

CCC:  the ad hoc committee of major creditors having claims only against the Canadian Debtors comprised of: the former and disabled Canadian employees of the Canadian Debtors through their court-appointed representatives (the "Representatives for the Former and Disabled Employees"); the Canadian Auto Workers Union (the "CAW"); Morneau Shepell Ltd. as Administrator of Nortel's Canadian registered pension plans ("Morneau"); Superintendent of Financial Services of Ontario as Administrator of the Pension Benefits Guarantee Fund (the "Ontario Superintendent"); and the court-appointed representatives of the current and transferred employees of the Canadian Debtors ("Nortel Continuing Employee Committee")

Committee:  The Official Committee of Unsecured Creditors in the chapter 11 cases of the U.S. Debtors

Cross-Border Protocol:  Schedule A to the "Initial Order and Endorsement," entered by Canadian Court on January 14, 2009, as amended by Schedule A to the "Fifth Amended and Restated Initial Order," entered by the Canadian Court on February 15, 2011; and Exhibit B to the "Order Pursuant to 11 U.S.C. §§ 105(a) Approving Cross-Border Court-To-Court Protocol," entered by U.S. Court on January 15, 2009, as amended by Exhibit 1 to the "Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol," entered by the US Court on June 29, 2009

Cross-Border Claims Protocol:  Schedule A to the "Order Approving Cross-Border Claims Protocol," entered by Canadian Court on September 16, 2010; and Schedule B to the "Debtors' Motion for Entry of an Order Approving a Cross-Border Protocol on the Resolution of Claims," granted by the U.S. Court on September 16, 2010 pursuant to the "Order Pursuant to 11 U.S.C. §§ 105(a) and 502 Approving a Cross-Border Court-to-Court Claims Protocol"

Directors and Officers: Certain individuals as former directors and officers of NNC and/or NNL represented by Osler, Hoskin & Harcourt, LLP

EMEA Debtors:  Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited; Nortel Networks S.A.; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel Networks (Austria) GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks

Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International Finance & Holding BV and Nortel Networks France S.A.S.

Indenture Trustees:  (a) Wilmington Trust, National Association as successor indenture trustee pursuant to a trust indenture dated as of November 30, 1988, in respect of the 6.875% notes issued by Nortel Networks Limited; (b) The Bank of New York Mellon (i) as indenture trustee pursuant to a trust indenture dated as of July 5, 2006 among Nortel Networks Limited, as issuer, and Nortel Networks Corp. and Nortel Networks Inc., as guarantors, and (ii) as indenture trustee pursuant to an indenture dated as of March 28, 2007 among Nortel Networks Corp., as issuer, and Nortel Networks Limited and Nortel Networks Inc., as guarantors; and (c) Law Debenture Trust Company of New York as successor indenture trustee pursuant to a trust indenture dated as of February 15, 1996, in respect of the 7.875% notes issued by Nortel Networks Limited and Nortel Networks Capital Corp. and guaranteed by Nortel Networks Limited.

Joint Administrators:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris, as the Administrators in the insolvency proceedings pending in the United Kingdom for all EMEA Debtors except Nortel Networks (Ireland) Limited, and Alan Robert Bloom and David Martin Hughes as Administrators for Nortel Networks (Ireland) Limited

Monitor:  Ernst & Young Inc., in its capacity as the court-appointed monitor in the proceedings commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, in respect of the Canadian Debtors

Selling Debtors:  Canadian Debtors, U.S. Debtors, EMEA Debtors and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited

UK Pension Claimants:  The Trustee of the NNUK Pension Plan ("UK Pension Trustee") and the Board of the Pension Protection Fund ("PPF")

U.S. Court or US Court:  United States Bankruptcy Court for the District of Delaware

U.S. Debtors or US Debtors:  Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.

**Exhibit B – Blackline of 2013 Allocation Protocol**

## ~~Schedule "A"~~ ALLOCATION PROTOCOL

1. <u>Purpose</u>.  The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors[1] ("<u>Allocation</u>~~"~~," and any hearing regarding same, an "<u>Allocation Protocol Hearing</u>," and any discovery regarding same, "<u>Allocation Protocol Discovery</u>").  Subject to ~~paragraph 5~~<u>paragraphs 5 and 6</u> hereof, creditor claims, including but not limited to intercompany claims by and between any Nortel entities, their representatives or successors ("<u>Intercompany Claims</u>") are not governed by this Allocation Protocol.  All Intercompany Claims between the U.S. Debtors and Canadian Debtors shall be determined in accordance with the Cross-Border Protocol and the Cross-Border Claims Protocol.  All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made.

2. <u>Participants</u>.  Each of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators ~~and the CCC~~, the CCC, the Indenture Trustees, the UK Pension Claimants, and the Directors and Officers [and such other parties as the U.S. Court and the Canadian Court may direct] (collectively, the "<u>Core Parties</u>," and each individually, a "<u>Core Party</u>") and their authorized representatives shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith.  The foregoing is without prejudice to (x) the right of any other party in interest to file written submissions in support of or in opposition to any theory of allocation advanced at any Allocation Protocol Hearing before the U.S. and Canadian Courts or request permission to become a Core Party and fully participate in the foregoing, which request shall be made by motion on notice to the Core Parties for cause shown to both the U.S. and Canadian Courts, or (y) the power of the U.S. and Canadian Courts to adopt procedures to manage the Allocation Protocol Hearings and related proceedings.

3. <u>Cross-Border Protocol</u>.  Any and all Allocation Protocol Hearings shall proceed in accordance with the Cross-Border Protocol, unless otherwise ordered by the U.S. and Canadian Courts.

4. <u>Procedures</u>.  The U.S. and Canadian Courts will determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery. After hearing the procedural submissions of the Core Parties and taking into account the discovery already conducted to date in connection with the non-binding mediation sessions, the Allocation Protocol Discovery and Allocation Protocol Hearings shall proceed in an expeditious manner.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in ~~●~~ Appendix A.

−2−

a.  <u>Pleadings</u>.  The Core Parties will exchange pleadings, which they shall be entitled to amend, from time to time, in accordance with the usual practice of the U.S. and Canadian Courts.  There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation.

b.  <u>Fact Discovery</u>.  The U.S. and Canadian Courts will facilitate the Core Parties' exchange of fact discovery by determining the following:

   i.  the deadline for, and acceptable manners of service of, reasonable requests for the production of non-privileged documents on any other Core Party;

   ii.  the deadline for objections to any Core Party's document requests;

   iii.  the deadline for identification of fact witnesses and number of fact witnesses allowed;

   iv.  the process for compelling attendance of fact witnesses at depositions; and

   v.  the deadline for completion of depositions, the number of depositions permitted, and the location of and time allowed for such depositions for each Core Party.

c.  <u>Experts</u>.  The U.S. and Canadian Courts shall facilitate expert discovery by determining the following:

   i.  the deadline for and format of expert reports (including exhibits);

   ii.  the deadline for and format of rebuttal expert reports (including exhibits); and

   iii.  the deadline for completion of expert depositions and the time allowed for such expert deposition.

d.  <u>Joint Conferences</u>.  The U.S. and Canadian Courts shall be available for joint conferences to resolve any discovery disputes among the Core Parties and to receive updates as to the status of the proceedings.  The U.S. and Canadian courts will determine when joint conferences may be set.

e.  <u>Joint Hearings</u>.  The U.S. and Canadian Courts shall have joint hearings on the merits.  The U.S. and Canadian Courts shall determine:

   i.  [the date(s) for an opening hearing on the Core Parties' allocation positions (prior to factual discovery) and on] the rules governing the joint hearing on the merits;

   ii.  the date(s) for an evidentiary hearing on the merits (after the close of fact and expert discovery and after the completion of written

submissions) and the rules governing such hearing, during which opening and closing statements shall be made and cross-examination and redirect examination of fact and expert witnesses shall take place; and

      iii.    the procedure for requesting or setting joint conferences as necessary to resolve any discovery disputes among the Core Parties or to receive updates to the status of the proceedings.

    f.   <u>Written Submissions</u>.  The U.S. and Canadian Courts will determine:

      i.    the deadline for and format of opening submissions (including exhibits);

      ii.    the deadline for and format of fact affidavits, if any, to accompany the opening submissions, which shall constitute the direct testimony of each fact witness;

      iii.    the deadline for and format of reply submissions (including exhibits); and

      iv.    the deadline for and format of fact affidavits, if any, to accompany the reply submissions.

5.   <u>EMEA Claims</u>.  Certain Intercompany Claims have been made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor <u>and by Nortel Networks AG and Nortel Networks AS</u> against (a) the U.S. Debtors (the "<u>EMEA U.S. Claims</u>")<u>, to which the U.S. Debtors intend to file responsive pleadings,</u> and (b) the Canadian Debtors <u>and the Directors and Officers</u> (the "<u>EMEA Canadian Claims</u>" (and together with the EMEA U.S. Claims, the "<u>EMEA Claims</u>")).  The ~~U.S.~~<u>Canadian</u> Debtors ~~intend to file promptly~~<u>and the Directors and Officers may file</u> motions with the ~~U.S.~~<u>Canadian</u> Court to dismiss the EMEA ~~U.S. Claims.  The Canadian Debtors may file motions with the Canadian Court to dismiss the EMEA Canadian Claims.~~<u>Canadian Claims.</u>

<u>6.   UK Pension Claims.  Certain claims have been made by the UK Pension Claimants against (a) the U.S. Debtors (the "UK Pension US Claims"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors (the "UK Pension Canadian Claims" (and together with the UK Pension US Claims, the "UK Pension Claims")).  The Canadian Debtors may file motions with the Canadian Court to dismiss the UK Pension Canadian Claims.</u>

<u>7.</u>  ~~6.~~<u>Decisions</u>.  The U.S. and Canadian Courts will (a) hold simultaneously (i) the Allocation Protocol Hearings, (ii) hearings before the U.S. Court on the merits of any remaining EMEA U.S. Claims <u>and UK Pension US Claims</u>, and (iii) hearings before the Canadian Court on the merits of any remaining EMEA Canadian Claim <u>and UK Pension Canadian Claims</u>, provided, however, that the U.S. and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument

-4-

that is relevant to only EMEA US Claims and/or UK Pension US Claims or only EMEA Canadian Claims and/or UK Pension Canadian Claims, and (b) issue their respective decisions on (i), (ii) and (iii). The trial for this matter is scheduled to commence on January 6, 2014. The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims.

8. 6. Appeals. The Core Parties shall have their usual rights of appeal from all interlocutory and final decisions of the U.S. and Canadian Courts.

– 5 –

## Appendix A

Bondholder Group:  The ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI, and Nortel Networks Capital Corporation

Canadian Court:  Ontario Superior Court of Justice (Commercial List)

Canadian Debtors:  Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), and Nortel Networks Global Corporation., Nortel Networks International Corporation and Nortel Networks Technology Corporation

CCC:  the ad hoc committee of major creditors having claims only against the Canadian Debtors comprised of: the former and disabled Canadian employees of the Canadian Debtors through their court-appointed representatives (the "Representatives for the Former and Disabled Employees"); the Canadian Auto Workers Union (the "CAW"); Morneau Shepell Ltd. as Administrator of Nortel's Canadian registered pension plans ("Morneau"); Superintendent of Financial Services of Ontario as Administrator of the Pension Benefits Guarantee Fund (the "Ontario Superintendent"); and the court-appointed representatives of the current and transferred employees of the Canadian Debtors ("Nortel Continuing Employee Committee")

Committee:  The Official Committee of Unsecured Creditors in the chapter 11 cases of the U.S. Debtors

Cross-Border Protocol:  Schedule A to the "Initial Order and Endorsement," entered by Canadian Court on January 14, 2009, as amended by Schedule A to the "Fifth Amended and Restated Initial Order," entered by the Canadian Court on February 15, 2011; and Exhibit B to the "Order Pursuant to 11 U.S.C. §§ 105(a) Approving Cross-Border Court-To-Court Protocol," entered by U.S. Court on January 15, 2009, as amended by Exhibit 1 to the "Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol," entered by the US Court on June 29, 2009

Cross-Border Claims Protocol:  Schedule A to the "Order Approving Cross-Border Claims Protocol," entered by Canadian Court on September 16, 2010; and Schedule B to the "Debtors' Motion for Entry of an Order Approving a Cross-Border Protocol on the Resolution of Claims," granted by the U.S. Court on September 16, 2010 pursuant to the "Order Pursuant to 11 U.S.C. §§ 105(a) and 502 Approving a Cross-Border Court-to-Court Claims Protocol"

Directors and Officers: Certain individuals as former directors and officers of NNC and/or NNL represented by Osler, Hoskin & Harcourt, LLP

EMEA Debtors:  Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited; Nortel Networks S.A.; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel Networks (Austria) GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks

–6–

Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel
Networks International Finance & Holding BV and Nortel Networks France S.A.S.

Indenture Trustees:  (a) Wilmington Trust, National Association as successor indenture
    trustee pursuant to a trust indenture dated as of November 30, 1988, in respect of the
    6.875% notes issued by Nortel Networks Limited; (b) The Bank of New York Mellon (i)
    as indenture trustee pursuant to a trust indenture dated as of July 5, 2006 among Nortel
    Networks Limited, as issuer, and Nortel Networks Corp. and Nortel Networks Inc., as
    guarantors, and (ii) as indenture trustee pursuant to an indenture dated as of March 28,
    2007 among Nortel Networks Corp., as issuer, and Nortel Networks Limited and Nortel
    Networks Inc., as guarantors; and (c) Law Debenture Trust Company of New York as
    successor indenture trustee pursuant to a trust indenture dated as of February 15, 1996, in
    respect of the 7.875% notes issued by Nortel Networks Limited and Nortel Networks
    Capital Corp. and guaranteed by Nortel Networks Limited.

Joint Administrators:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael
    Hudson and Stephen John Harris, as the Administrators in the insolvency proceedings
    pending in the United Kingdom for all EMEA Debtors except Nortel Networks (Ireland)
    Limited, and Alan Robert Bloom and David Martin Hughes as Administrators for Nortel
    Networks (Ireland) Limited

Monitor:  Ernst & Young Inc., in its capacity as the court-appointed monitor in the
    proceedings commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985,
    c. C-36, as amended, in respect of the Canadian Debtors

Selling Debtors:  Canadian Debtors, U.S. Debtors, EMEA Debtors and Nortel Networks
    Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks
    South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited

UK Pension Claimants:  The Trustee of the NNUK Pension Plan ("UK Pension Trustee") and
    the Board of the Pension Protection Fund ("PPF")

U.S. Court or US Court:  United States Bankruptcy Court for the District of Delaware

U.S. Debtors or US Debtors:  Nortel Networks Inc. ("NNI"), Nortel Networks Capital
    Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc.,
    Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications
    Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks
    HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc.,
    Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel
    Networks (CALA) Inc.

**Exhibit C – Blackline of Monitor's 2013 Allocation Protocol**

Case 09-10138-KG    Doc 10163-5    Filed 04/15/13    Page 25 of 29

## ALLOCATION PROTOCOL

1. <u>Purpose</u>.  The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors[1] ("<u>Allocation</u>," and any hearing regarding same, an "<u>Allocation Protocol Hearing</u>," and any discovery regarding same, "<u>Allocation Protocol Discovery</u>").  Subject to paragraphs 5 and 6 hereof, creditor claims, including but not limited to intercompany claims by and between any Nortel entities, their representatives or successors ("<u>Intercompany Claims</u>") are not governed by this Allocation Protocol.  All Intercompany Claims between the U.S. Debtors and Canadian Debtors shall be determined in accordance with the Cross-Border Protocol and the Cross-Border Claims Protocol.  All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made.

2. <u>Participants</u>.  Each of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators, the CCC, the Indenture Trustees, the UK Pension Claimants, and the Directors and Officers [and such other parties as the U.S. Court and the Canadian Court may direct] (collectively, the "<u>Core Parties</u>," and each individually, a "<u>Core Party</u>") and their authorized representatives shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith.  The foregoing is without prejudice to (x) the right of any other party in interest to file written submissions in support of or in opposition to any theory of allocation advanced at any Allocation Protocol Hearing before the U.S. and Canadian Courts or request permission to become a Core Party and fully participate in the foregoing, which request shall be made by motion on notice to the Core Parties for cause shown to both the U.S. and Canadian Courts, or (y) the power of the U.S. and Canadian Courts to adopt procedures to manage the Allocation Protocol Hearings and related proceedings.

3. <u>Cross-Border Protocol</u>.  Any and all Allocation Protocol Hearings shall proceed in accordance with the Cross-Border Protocol, unless otherwise ordered by the U.S. and Canadian Courts.

4. <u>Procedures</u>.  The U.S. and Canadian Courts will determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery. After hearing the procedural submissions of the Core Parties and taking into account the discovery already conducted to date in connection with the non-binding mediation sessions, the Allocation Protocol Discovery and Allocation Protocol Hearings shall proceed in an expeditious manner.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Appendix A.

a. <u>Pleadings</u>.  The Core Parties will exchange pleadings, which they shall be entitled to amend, from time to time, in accordance with the usual practice of the U.S. and Canadian Courts.  There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation.

b. <u>Fact Discovery</u>.  The U.S. and Canadian Courts will facilitate the Core Parties' exchange of fact discovery by determining the following:

   i. the deadline for, and acceptable manners of service of, reasonable requests for the production of non-privileged documents on any other Core Party;

   ii. the deadline for objections to any Core Party's document requests;

   iii. the deadline for identification of fact witnesses and number of fact witnesses allowed;

   iv. the process for compelling attendance of fact witnesses at depositions; and

   v. the deadline for completion of depositions, the number of depositions permitted, and the location of and time allowed for such depositions for each Core Party.

c. <u>Experts</u>.  The U.S. and Canadian Courts shall facilitate expert discovery by determining the following:

   i. the deadline for and format of expert reports (including exhibits);

   ii. the deadline for and format of rebuttal expert reports (including exhibits); and

   iii. the deadline for completion of expert depositions and the time allowed for such expert deposition.

d. <u>Joint Conferences</u>.  The U.S. and Canadian Courts shall be available for joint conferences to resolve any discovery disputes among the Core Parties and to receive updates as to the status of the proceedings.  The U.S. and Canadian courts will determine when joint conferences may be set.

e. <u>Joint Hearings</u>.  The U.S. and Canadian Courts shall have joint hearings on the merits.  The U.S. and Canadian Courts shall determine:

   i. ~~[the date(s) for an opening hearing on the Core Parties' allocation positions (prior to factual discovery) and on]~~ the rules governing the joint hearing on the merits;

   ii. the date(s) for an evidentiary hearing on the merits (after the close of fact and expert discovery and after the completion of written submissions) and the rules governing such hearing, during which opening and closing statements shall be made and cross-examination and redirect examination of fact and expert witnesses shall take place; and

        iii.  the procedure for requesting or setting joint conferences as necessary to resolve any discovery disputes among the Core Parties or to receive updates to the status of the proceedings.

    f.  <u>Written Submissions</u>.  The U.S. and Canadian Courts will determine:

        i.  the deadline for and format of opening submissions (including exhibits);

        ii.  the deadline for and format of fact affidavits, if any, to accompany the opening submissions, which shall constitute the direct testimony of each fact witness;

        iii.  the deadline for and format of reply submissions (including exhibits); and

        iv.  the deadline for and format of fact affidavits, if any, to accompany the reply submissions.

5.  <u>EMEA Claims</u>.  Certain Intercompany Claims have been made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor and by Nortel Networks AG and Nortel Networks AS against (a) the U.S. Debtors (the "<u>EMEA U.S. Claims</u>"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors and the Directors and Officers (the "<u>EMEA Canadian Claims</u>" (and together with the EMEA U.S. Claims, the "<u>EMEA Claims</u>")).  The Canadian Debtors and the Directors and Officers may file motions with the Canadian Court to dismiss the EMEA Canadian Claims.

6.  <u>UK Pension Claims</u>.  Certain claims have been made by the UK Pension Claimants against (a) the U.S. Debtors (the "<u>UK Pension US Claims</u>"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors (the "<u>UK Pension Canadian Claims</u>" (and together with the UK Pension US Claims, the "<u>UK Pension Claims</u>")).  The Canadian Debtors may file motions with the Canadian Court to dismiss the UK Pension Canadian Claims.

7.  <u>Decisions</u>.  The U.S. and Canadian Courts will (a) hold simultaneously (i) the Allocation Protocol Hearings, (ii) hearings before the U.S. Court on the merits of any remaining EMEA U.S. Claims and UK Pension US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining EMEA Canadian Claim and UK Pension Canadian Claims, provided, however, that the U.S. and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only EMEA US Claims and/or UK Pension US Claims or only EMEA Canadian Claims and/or UK Pension Canadian Claims, and (b) issue their respective decisions on (i), (ii) and (iii).  The trial for this matter is scheduled to commence on January 6, 2014.  The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims.

8.  <u>Appeals</u>.  The Core Parties shall have their usual rights of appeal from all interlocutory and final decisions of the U.S. and Canadian Courts.

**Appendix A**

**Bondholder Group**:  The ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI, and Nortel Networks Capital Corporation

**Canadian Court**:  Ontario Superior Court of Justice (Commercial List)

**Canadian Debtors**:  Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), and Nortel Networks Global Corporation., Nortel Networks International Corporation and Nortel Networks Technology Corporation

**CCC**:  the ad hoc committee of major creditors having claims only against the Canadian Debtors comprised of: the former and disabled Canadian employees of the Canadian Debtors through their court-appointed representatives (the "Representatives for the Former and Disabled Employees"); the Canadian Auto Workers Union (the "CAW"); Morneau Shepell Ltd. as Administrator of Nortel's Canadian registered pension plans ("Morneau"); Superintendent of Financial Services of Ontario as Administrator of the Pension Benefits Guarantee Fund (the "Ontario Superintendent"); and the court-appointed representatives of the current and transferred employees of the Canadian Debtors ("Nortel Continuing Employee Committee")

**Committee**:  The Official Committee of Unsecured Creditors in the chapter 11 cases of the U.S. Debtors

**Cross-Border Protocol**:  Schedule A to the "Initial Order and Endorsement," entered by Canadian Court on January 14, 2009, as amended by Schedule A to the "Fifth Amended and Restated Initial Order," entered by the Canadian Court on February 15, 2011; and Exhibit B to the "Order Pursuant to 11 U.S.C. §§ 105(a) Approving Cross-Border Court-To-Court Protocol," entered by U.S. Court on January 15, 2009, as amended by Exhibit 1 to the "Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol," entered by the US Court on June 29, 2009

**Cross-Border Claims Protocol**:  Schedule A to the "Order Approving Cross-Border Claims Protocol," entered by Canadian Court on September 16, 2010; and Schedule B to the "Debtors' Motion for Entry of an Order Approving a Cross-Border Protocol on the Resolution of Claims," granted by the U.S. Court on September 16, 2010 pursuant to the "Order Pursuant to 11 U.S.C. §§ 105(a) and 502 Approving a Cross-Border Court-to-Court Claims Protocol"

**Directors and Officers**: Certain individuals as former directors and officers of NNC and/or NNL represented by Osler, Hoskin & Harcourt, LLP

**EMEA Debtors**:  Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited; Nortel Networks  S.A.; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel Networks (Austria) GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International Finance & Holding BV and Nortel Networks France S.A.S.

**Indenture Trustees**:  (a) Wilmington Trust, National Association as successor indenture trustee pursuant to a trust indenture dated as of November 30, 1988, in respect of the 6.875% notes issued by Nortel Networks Limited; (b) The Bank of New York Mellon (i) as indenture trustee pursuant to a trust indenture dated as of July 5, 2006 among Nortel Networks Limited, as issuer, and Nortel Networks Corp. and Nortel Networks Inc., as guarantors, and (ii) as indenture trustee pursuant to an indenture dated as of March 28, 2007 among Nortel Networks Corp., as issuer, and Nortel Networks Limited and Nortel Networks Inc., as guarantors; and (c) Law Debenture Trust Company of New York as successor indenture trustee pursuant to a trust indenture dated as of February 15, 1996, in respect of the 7.875% notes issued by Nortel Networks Limited and Nortel Networks Capital Corp. and guaranteed by Nortel Networks Limited.

**Joint Administrators**:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris, as the Administrators in the insolvency proceedings pending in the United Kingdom for all EMEA Debtors except Nortel Networks (Ireland) Limited, and Alan Robert Bloom and David Martin Hughes as Administrators for Nortel Networks (Ireland) Limited

**Monitor**:  Ernst & Young Inc., in its capacity as the court-appointed monitor in the proceedings commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, in respect of the Canadian Debtors

**Selling Debtors**:  Canadian Debtors, U.S. Debtors, EMEA Debtors and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited

**UK Pension Claimants**:  The Trustee of the NNUK Pension Plan ("UK Pension Trustee") and the Board of the Pension Protection Fund ("PPF")

**U.S. Court or US Court**:  United States Bankruptcy Court for the District of Delaware

**U.S. Debtors or US Debtors**:  Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.