IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*<br>Nortel Networks Inc., *et al.,*<sup>1</sup><br>    Debtors. | Chapter 11<br>Case No. 09-10138(KG)<br>Jointly Administered<br>**Related D.I.: 8067, 9304, 9403, 9427** |
| OFFICIAL COMMITTEE OF LONG<br>TERM DISABILITY PLAN<br>PARTICIPANTS, on behalf of and as<br>Agents for a class of individual participants<br>and beneficiaries under various NORTEL<br>NETWORKS HEALTH AND WELFARE<br>BENEFIT PLANS,<br>    Plaintiffs,<br><br>   v.<br>NORTEL NETWORKS INC., *et al.*,<br>    Defendants. | Adv. Proc. No. 12-50995(KG)<br>**Related D.I.: 1, 15, 26**<br><br><br>**Hearing Date: April 30, 2013**<br>**at 10:00 a.m. (EST)**<br><br>**Hearing Objections Due: April 19, 2013**<br>**at 4:00 p.m. (EST)** |

**OBJECTION TO JOINT MOTION PURSUANT TO SECTIONS 363 AND 105 OF THE
BANKRUPTCY CODE, AND BANKRUPTCY RULE 9019 AND 7023 TO (I)(A)
PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT REGARDING
LONG-TERM DISABILITY PLANS AND CLAIMS, (B) CONDITIONALLY CERTIFY
A CLASS FOR SETTLEMENT PURPOSES ONLY, (C) APPROVE THE NOTICE
PROCEDURES, AND (D) SCHEDULE A FAIRNESS HEARING; AND (II)(A) FINALLY
APPROVE THE SETTLEMENT AGREEMENT, (B) FINALLY CERTIFY A CLASS, (C)
AUTHORIZE THE DEBTORS TO TERMINATE THE LTD PLANS, AND (D) GRANT
RELATED RELIEF**

---

<sup>1</sup> The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel
Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel
Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251),
CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical
Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel
Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions
Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors'
petitions, which are available at http://chapter11.epigsystems.com/nortel.

**PRELIMINARY STATEMENT**

1.        This Objection is filed by Emily D. Cullen ("<u>Cullen</u>", "<u>I</u>", or "<u>me</u>").  I was a

Certified Public Accountant employed by the Debtors when I became totally disabled and

approved for Long Term Disability ("<u>LTD</u>") benefits in 1997 at the age of █  I am a long-term

disabled employee who participates in the Debtors' Long Term Disability Plans (the "<u>LTD</u>

<u>Plans</u>") and similar other plans and programs (individually, a "<u>LTD Employee</u>" and, together

with other similarly situated long-term disability employees, the "<u>LTD Employees</u>").

2.        I file this Objection in response and opposition of that Joint Motion Pursuant To

Sections 363 And 105 of the Bankruptcy Code, and Bankruptcy Rule 9019 and 7023 to (I)(A)

Preliminarily Approve the Settlement Agreement Regarding Long Term Disability Plans and

Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve the

Notice Procedures, and (D) Schedule A Fairness Hearing; and (II)(A) Finally Approve the

Settlement Agreement, (B) Finally Certify A Class, (C) Authorize the Debtors to Terminate the

LTD Plans, and (D) Grant Related Relief (the "<u>Joint Motion</u>").  The Joint Motion is brought

before this court by the Debtors and the Official Committee of Long Term Disability Participants

(the "<u>LTD Committee</u>").  The LTD Committee was appointed as an official committee under 11

U.S.C. § 1102 and acts on behalf of all of the Debtors' LTD Employees.

3.        I do not oppose the Joint Motion in its entirety, as I believe the LTD Committee

has performed valuable service in arriving at the point in these proceedings represented by the

Joint Motion.  However, I believe the LTD Committee has improperly and arbitrarily excluded

me and other similarly situated LTD Employees from benefiting in all aspects of the settlement

represented by the Joint Motion.[2]  Accordingly, I object to the Joint Motion and the related relief

---

[2] Due to the confidential nature of employee health and retirement records, I am unsure if other LTD Employees are in a situation similar to me.  Based upon information provided by the LTD Committee, however, at least 11 other

sought in the Joint Motion, and request specifically (i) that the Settlement Agreement not be approved unless and until my interests and the interests of similarly situated LTD Employees are considered and included as part of the settlement as described in more detail below, and (ii) that the proposed Settlement Class not be certified as it is not properly representative of me and other similarly situated LTD Employees.

## FACTUAL BACKGROUND[3]

4.      The Debtors historically have provided a number of benefits to their employees through various benefit plans and other programs.  The Debtors' LTD Plans provide five basic types of coverage:

      (1)      Income replacement;

      (2)      Medical benefit ("Medical Benefits");

      (3)      Life insurance;

      (4)      Accidental dismemberment and death insurance; and

      (5)      Long term investment plan benefit.

During the course of the Chapter 11 cases, the Debtors have continued to provide benefits under the LTD Plans to LTD Employees, including me.  My LTD benefits include Medical Benefits.

5.      My LTD benefits are governed by the LTD Summary Plan Description (the "SPD") provided to me by the Debtors, a copy of which is attached hereto as Exhibit 1.[4]  The SPD provides in pertinent part:

---

LTD Employees have been assigned a $0.00 value for their Medical Benefits, like me.  On information and belief, I contend that those 11 LTD Employees face the same factual situation as me.  Thus, while I file this Objection solely on my own behalf, I believe the facts, issues and arguments are applicable to at least 12 LTD Employees.

[3] Due to its voluminous nature, I have not attempted to restate all background information pertaining to the Joint Motion.  Instead, reference is made to the factual background provided in the Joint Motion, which provides a thorough discussion of the case background, the LTD Plans, the wind-down of the Debtors' estates, and the negotiations and litigation leading to the Joint Motion.  Initially capitalized terms not defined herein shall be given the definitions set forth in the Joint Motion.

If you are on LTD during an Open Enrollment Period, you will not be eligible to enroll in STD or change their current LTD selection. (However, Medical, Dental, Vision and Hearing Care, Life and AD&D benefits will continue to be available to you).  In addition, the following provisions apply:

- You may change your Medical, Dental, Vision and Hearing Care and Dependent Life Insurance selections.
- You will continue to be eligible for Long-Term Disability benefits under your current selection.

6.    As specifically provided in the SPD, my LTD benefits may terminate only upon

the following five instances:

Benefits end when your period of Total Disability ends, which happens when the first of the following occurs:
1. You stop being Totally Disabled or die.
2. You go back to work (other than an approved rehabilitation program).
3. You are no longer under the care of a physician.
4. You fail to furnish the latest proof of the continuance of your Total Disability or refuse to be examined by a physician designated by the Plan.
5. You reach the end of the maximum benefit period for any one period of Total Disability as shown on the following chart.  (A chart reflecting Maximum Benefit Period follows this section. The chart indicates that if your disability begins under age 60, your LTD benefits will continue until age 65.  See Exhibit 1 at EDC 179-180).

As none of the five enumerated termination events has occurred, the Debtors are required to

provide LTD Benefits until age 65.

---

[4] The SPD was provided to me, at my request, by the Debtors in 2000. The SPD states: "The complete terms of the Short-Term and Long-Term Disability Plans can be found in the plan document.  If there is a difference between the information in the summary and the plan document, the plan document will govern." (See Exhibit 1 at EDC 165). Based on this language, I asked the Debtors for the plan document to ensure I had the precise terms governing my LTD benefits.  Eventually, Ruth Hillis, Senior Benefits Legal Counsel for Nortel responded: "The plan document is the summary plan description. The language [we] reference[d] is boiler plate ERISA-required language that applies if there is a separate plan document.  There is not with regard to the LTD; the SPD is the plan document."  This e-mail exchange is attached as Exhibit 2.  In a letter dated September 25, 2001, Ms. Hillis also stated "Page 15 of the Summary Plan Description of the LTD plan, which was provided to you earlier, describes when your LTD benefit may end." This letter is attached hereto as Exhibit 3.

7.     The Settlement Agreement proposes to resolve all "LTD Claims," defined in part as "[a]ny past, current or future benefit or any other obligation, claim, or potential obligation or claim arising under or relating to the LTD Plans, including the LTD Benefits."

8.     The Settlement Agreement would terminate the LTD Plans as of May 31, 2013.[5] As a part of the settlement, the LTD Committee will be granted a general non-priority, unsecured claim in the gross amount of $26,640,000.00 for the benefits under the LTD Plans, which shall be disbursed to LTD Employees in accordance with an Apportionment Methodology established by the LTD Committee.  Pursuant to this Apportionment Methodology, the Settlement Amount shall be allocated among the LTD Employees as follows:

> The Settlement Amount shall be allocated among the LTD Employees who are **receiving benefits under the LTD Plans as of the Termination Date on the basis of a formula to be provided by the LTD Committee**, whereby each LTD Employee shall receive his or her proportional share of the Settlement Amount, subject to applicable withholding tax requirements, calculated based on a fraction, the numerator of which is the actuarial valuation of such LTD Employee's claims under the LTD Plans (as determined by the LTD Committee) and the denominator of which is the aggregate of the actuarial values of all LTD Employees' claims under the LTD Plans (as determined by the LTD Committee), thereafter applied to the Settlement Amount… The LTD Committee shall have sole responsibility for calculation of such amounts and distribution of the Settlement Amount pursuant to the Apportionment Methodology. (emphasis added)

9.     After filing the Joint Motion with this Court, the LTD Committee sent each member of the Settlement Class a personalized statement reflecting the recipients' projected allocation of the Settlement Amount.  In late February, 2013, I received an Estimate of Individual Allocation of Settlement Amount dated February 25, 2013 from the LTD Committee

---

[5] Pursuant to that certain Notice of Extension of Termination Date Under the LTD Settlement Agreement filed by the LTD Committee with this Court on April 11, 2013, the termination date has been extended to June 30, 2013. Pursuant to the Settlement Agreement, this extension results in a decrease in the general unsecured claim granted the LTD Committee by $680,000.00, to $25,960,000.00.

(the "Estimate"). The Estimate provided various settlement amounts for me, but importantly,

assigned a value of $0.00 to my Medical Benefits under the LTD Plans. A copy of the Estimate

is attached as Exhibit 4.

10.     Over the last several months, my husband and attorney-in-fact, Marc Cullen, has

communicated with lead LTD Committee counsel, Rafael X. Zahralddin-Aravena, by email and

telephone calls on numerous occasions about my claim.   As I understand it from those

communications, the LTD Committee did not assign any value to my Medical Benefits because I

was not enrolled in the medical benefits plan for the 2013 plan year, despite the fact that I

unquestionably have the following rights under the LTD Plans on the Termination Date:  (1) the

right to elect Medical Benefits during the 2013 plan year should I have a Qualified Family Status

Change, and (2) the right to elect Medical Benefits during the open enrollment period in every

year until age 65.[6]

**RELIEF REQUESTED**

11.     By this Objection, I seek an order of this Court (i) denying approval of the

Settlement Agreement, (ii) finding that the settlement proposed in the Settlement Agreement is

---

[6] During these discussions with LTD Committee counsel, I have consistently asserted that I have three concerns with the Medical Benefit Apportionment Methodology: (1) my right to annually enroll in Medical Benefits is a valuable right identical for all LTD Employees and should be appropriately valued in the Allocation Methodology, (2) the Allocation Methodology incorrectly values 90/70 coverage less than 80/60 coverage based upon how the premiums were handled, and (3) the Allocation Methodology fails to properly reduce premiums when families' last child reaches age 26 which undervalued those claims.  The LTD Committee employed actuaries and other professionals to calculate the value of each LTD Employee's benefits under the LTD Plan.  The LTD professionals subtracted from each person's claims the premiums each had paid based upon past elections.  The result is that individuals with 80/60 coverage receive a larger claim than those individuals who chose 90/70 coverage in the same category (i.e. lesser coverage results in higher claim value since the premiums are lower).  I have addressed this issue, together with the issue concerning the methodology to properly reduce premiums when families' last child reaches age 26, with the LTD Committee, and have been advised by LTD Committee counsel that these two issues will be corrected. However, since I have repeatedly asked to receive the corrected Allocation Methodology to ensure it was revised appropriately but have not yet been provided it, these issues are being brought to the Court's attention to ensure that all parties are aware of the underlying problems with the Apportionment Methodology implemented with regard to the LTD Employees' Medical Benefits.  To the extent that these two issues are not addressed and the underlying problems with the Apportionment Methodology are not corrected, as represented by LTD Committee counsel, I reserve the right to further object to the Joint Motion and request that the Settlement Agreement not be approved unless and until these problems are corrected.

not fair to certain LTD Employees, (iii) refusing to certify the Settlement Class, and (iv) granting related relief.

## BASIS FOR RELIEF

**The Settlement Agreement Lacks the Required Fairness as the LTD Committee's Apportionment Methodology Regarding Medical Benefits Is Fatally Flawed, Improperly Denying Benefits to Eligible LTD Employees.**

12.     As noted above, I am entitled to Medical Benefits under the LTD Plans.  As set forth in the SPD, I am entitled to LTD Benefits, including Medical Benefits, until one of five enumerated termination events has occurred or until I reach age 65.  As I have not reached age 65 and the other enumerated termination events have not occurred, my LTD Benefits, including Medical Benefits, continue.  I am 45 years old and losing 20 years of LTD Benefits as a result of this bankruptcy.  The more years you have until age 65, the more you are losing.  Properly valued, my LTD Claim for Medical Benefits is my most valuable right – almost double all my other benefits combined.

13.     I did not elect medical coverage for the 2013 plan year during the Open Enrollment Period.  However, under the LTD Plans, current year enrollment is not a requirement to maintain rights to future medical coverage.  Thus, I have had and continue to have the right to elect medical coverage every year since I have become disabled, and my right to elect medical coverage does not terminate until I reach age 65.  In contrast, the Retiree Plan states "[i]f you discontinue your coverage for any reason, you forfeit your right to participate in the Plan in the future." (Retiree Medical Plan, Summary Plan Description 2010, p. 6).  Therefore, as this Court has previously held, those Retirees who waived Medical Benefits had no rights to value as of the record date and could not share in the pro rata distribution for Medical Benefits.

14.    Conversely, the LTD Plans provide the right to annually elect medical coverage until age 65, regardless of the participant's current election.  That right to annually elect medical coverage has substantial value, particularly to a disabled person like myself.  Because a LTD Employee is allowed to elect medical coverage each year, one must look to eligibility, not enrollment or past elections, in determining who is eligible to share in any allocation related to Medical Benefits.

15.    The LTD Committee's Apportionment Methodology does not assign any value to my continuing right to receive Medical Benefits under the LTD Plans.  Upon information and belief, the LTD Committee did not assign any value to my Medical Benefits because I was not enrolled in Medical Benefits for the 2013 plan year.

16.    Although I was not enrolled in Medical Benefits for the current plan year, I retained valuable rights to Medical Benefits under the LTD Plans as of the Termination Date. The right to elect Medical Benefits until age 65 is unquestionably a very valuable right for anyone, but particularly for disabled employees like the LTD Employees.

17.    The Settlement Agreement does not provide that an LTD Employee must be enrolled in Medical Benefits in order for such benefit to be valued as part of the LTD Employee's claim, nor should it.  Rather, the Settlement Agreement simply provides:

> The Settlement Amount shall be allocated among the LTD Employees **who are receiving benefits under the LTD Plans** as of the Termination Date on the basis of a formula to be provided by the LTD Committee, whereby each LTD Employee shall receive his or her proportional share of the Settlement Amount, subject to withholding tax requirements, calculated based on a fraction, the **numerator of which is the actuarial valuation of such LTD Employee's claims under the LTD Plans** (as determined by the LTD Committee) and the denominator of which is the aggregate of the actuarial values of all LTD employees' claims under the LTD Plans (as determined by the LTD

Committee), thereafter applied to the Settlement Amount.
(Emphasis added)

18.    This paragraph of the Settlement Agreement establishes three important tenets:

(1) the LTD Committee is solely responsible for choosing an acceptable Apportionment

Methodology that is consistent with the next two requirements; (2) the LTD Committee must

include all LTD Employees who are receiving benefits under the LTD Plans as of the

Termination Date; and (3) the LTD Committee must select a methodology that provides for pro

rata distribution based on the actuarial valuation of each LTD Employee's claims under the LTD

Plans.

19.    Under the LTD Plans, current plan year enrollment is not a requirement to

maintain rights to future medical coverage.  In fact, I received an enrollment form each year

regardless of my current medical elections with the right to select any available medical

coverage.  Therefore, I unquestionably have a right to Medical Benefits under the LTD Plans and

a LTD Claim for Medical Benefits that must be valued by the LTD Committee.

20.    The LTD Claim for Medical Benefits as of the Termination Date is exactly the

same whether you are currently enrolled or not, with one minor difference.  An **LTD Employee**

**who is enrolled** for the 2013 plan year has the following rights to Medical Benefits as of the

Termination Date which must be valued by the LTD Committee:  (1) the right to coverage for

the remainder of plan year 2013, and (2) the right to elect medical coverage each and every year

starting in 2014 until age 65.  Similarly, an **LTD Employee who is not enrolled** for the 2013

plan year has the following rights to Medical Benefits as of the Termination Date which must be

valued by the LTD Committee:  (1) the right to elect Medical Benefits during the 2013 plan year

in the event of a Qualified Family Status Change, and (2) the right to elect medical coverage

each and every year starting in 2014 until age 65.

9

21.    The only difference between the rights of those currently enrolled versus those not currently enrolled relate solely to the current plan year 2013.  Those currently enrolled in plan year 2013 should receive full value in any actuarial valuation of those rights.  Those not currently enrolled should likely receive a discounted actuarial valuation since their rights are limited with respect to the current plan year.  Critically, however, the right to medical benefits is identical for all LTD Employees for plan year 2014 and beyond, and the actuarial valuation of those LTD Claims is required to be based on an identical methodology.

22.    As stated above, all LTD Employees are losing the similar right to Medical Benefits under the LTD Plans as of the Termination Date.  As the Court has previously noted, the loss of our future rights is what these Settlements are trying to compensate.[7]  The Committee is required to value these LTD Claims with a consistent and appropriate methodology.

23.    The LTD Committee's exclusion of my Medical Benefits is derived solely from its own formula, in which the LTD Committee valued my Medical Benefits at $0.00 despite the fact that I have the right to elect Medical Benefits each and every year until I reach age 65.  While I am clearly eligible to receive Medical Benefits under the LTD Plan, the LTD Committee and its counsel have arbitrarily determined that such eligibility has no value, ignoring the inherent and obvious value of my right to receive Medical Benefits in any given year until I reach age 65.  Therefore, the LTD Committee's Apportionment Methodology is fatally flawed and unfair in that it favors certain LTD Employees over others.

---

[7] The description of the Apportionment Methodology provided by the LTD Committee in my Estimate highlights this fact.  It states: "the LTD Committee directed its actuarial advisors to determine a value, which is the present value of your expected future LTD Benefits from now until the end of the period that you are entitled to benefits under the terms of the governing LTD Plans ("Individual Claim")."  During my husband's discussions with the actuarial advisors and LTD Committee counsel, the advisors stated that they were told by the LTD Committee to only value those medical benefits for LTD Employees currently enrolled in the 2013 plan year.  Such an interpretation is contrary to the plain language of the LTD Plans, the definition of LTD Claim, and the stated intent of both the Settlement Agreement and the description of the Apportionment Methodology itself.

24.    The LTD Committee's Apportionment Methodology not only fails to take into account valuable Medical Benefits available to me under the LTD Plans, but also appears to affect at least 11 other LTD Employees whose Medical Benefits also are valued at $0.00.  As such, the Apportionment Methodology must be revised to take such LTD Employees and their valuable right to Medical Benefits into account.  Otherwise, the Settlement Agreement must not be approved as it ignores the rights of certain LTD Employees and is fundamentally unfair.

25.    Correcting the Apportionment Methodology is quite simple.  Assuming the other two errors we had previously identified (discussed further in footnote 6) have been corrected as represented to us by the LTD Committee, the formulas already exist for comparably valuing these rights consistently across the entire class.  The only difference, as noted above, is that those LTD Employees not currently enrolled for plan year 2013 should receive an actuarial discount for the remainder of this plan year.  Otherwise, the formulas related to plan years 2014 and beyond are already in place for each category of coverage that could be elected by all LTD Employees.

**The Settlement Agreement Lacks the Required Fairness As The LTD Committee's Apportionment Methodology Regarding Medical Benefits Denies Me A Legal Right To Which I Am Entitled Without Compensation, Denies Me Due Process And Treats Me Differently From Other Similarly Situated Creditors**

26.    As noted above, my right to receive Medical Benefits in any given year is a valuable right.  The LTD Committee's interpretation of its own Settlement Agreement requiring that an LTD Employee actually be enrolled in the Medical Benefits on the Termination Date to receive any value for those benefits results in an arbitrary and capricious denial of my contractual and legal rights.

27.    If the Settlement Agreement did not exist and the Debtors attempted to terminate the LTD Plans, I would have a claim against the Debtors for the termination of those rights which I could present in Bankruptcy Court.  In that claim, I could assert all of my valuable rights, including the right to Medical Benefits until age 65, and, if an objection to my claim were filed, I would have the right to have a hearing before this Court concerning the existence and value of that right.  In fact, one component of the Proof of Claim filed with this Court in a prior pleading involves exactly that: a claim for the value of the Medical Benefits.  See Exhibit 5 attached hereto.  The right to Medical Benefits is a valuable right that is being compromised by the proposed Settlement Agreement.  Yet, the Settlement Agreement and the Apportionment Methodology simply value my claim for Medical Benefits ███████, denying me and other similarly situated LTD Employees the right to assert that valuable claim and have that claim valued by the Court.  Instead, under the proposed Settlement Agreement, the LTD Committee applies its own criteria to that claim, allowing it to deny the claim in toto without any opportunity for adjudication.

28.    While the Bankruptcy Code and the bankruptcy process often involve the termination or modification of contractual or other rights, the holder of such terminated or modified rights is protected through the holder's ability to assert a claim due to the denial or modification of those rights.  That claim is then valued through the judicial process and paid in accordance with applicable bankruptcy and other law.  In this instance, however, my right to that claim and the right to have that claim valued are being denied by the arbitrary actions and flawed interpretation of the Settlement Agreement by the LTD Committee.  The Settlement Agreement is unfair and should not be approved as it effectuates a "taking" of a valuable right from me without an appropriate judicial evaluation of that right.

29.    The LTD Committee's arbitrary Allocation Methodology thus violates my due process rights, as I have been denied the opportunity to have my valuable right to Medical Benefits adjudicated by this Court.  Furthermore, the arbitrary Allocation Methodology violates one of the most fundamental tenets of bankruptcy law – the promise of equality among creditors. See In re Combination Engineering, Inc., 391 F.3d 190 (3d Cir. 2004) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code," citing Begier v. IRS, 496 U.S. 53, 58 (1990)).  This disparate treatment violates the fundamental principle of "equality of treatment" mandated by the Bankruptcy Code.

30.    As I and other similarly situated LTD Employees are denied the right to assert our claims or have our claims valued before they are arbitrarily taken away by the LTD Committee's flawed Allocation Methodology, the Settlement Agreement is fundamentally unfair, violative of due process, and should not be approved.

**The Settlement Agreement Should Not Be Approved As The LTD Committee And Its Counsel Have Breached Their Fiduciary Duties To The LTD Employees And To Me**

31.    It is well established that the LTD Committee owes a fiduciary duty to the class of creditors that the LTD Committee was appointed to represent.  See Westmoreland Human Opportunities, Inc. v. Walsh, 246 F. 3d 233, 256 (3d Cir. 2001) (members of an official creditors committee owe fiduciary duty "toward their constituent members"); ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.), 210 B.R. 508, 516 (Bankr. S.D.N.Y. 1997) (the Committee and its members owe a fiduciary duty to the class of creditors that the Committee represents).  Similarly, counsel to the LTD Committee has a fiduciary duty to all constituents of the class the LTD Committee represents.  In re General Home Corp., 181 B.R. 870 (Bankr. S.D. Tex. 1994).  Fiduciary duties exist regardless of whether a constituent is on the committee as the

duty extends to all in the class.  See In re Residential Capital, LLC, 480 B.R. 550, 559 (Bankr.

S.D.N.Y. 2012).  These fiduciary duties include the duties of fidelity, undivided loyalty and

impartial service in pursuing the class' interests.  See Pension Benefit Guar. Corp. v. Pincus,

Verlin, Reich & Goldstein Prof'l Corp., 42 B.R. 960, 963 (E.D. Pa. 1984) (committee owes

loyalty to group it represents); Walsh v. Westmoreland Human Opportunities, Inc. (In re Life

Serv. Systems), 279 B.R. 504, 513 (Bankr. W.D. Pa. 2002).

      32.     The primary purpose of a committee is to maximize the return to the constituency

represented by the committee and all actions undertaken by the committee should be taken with

that goal in mind.  See 7 Collier on Bankruptcy ¶1103.05[1][a]; at 1103-19 (Alan N. Resnick &

Henry J. Somme reds., 16th ed.)]; In re Enron Corp., 279 B.R. 671 (Bankr. S.D.N.Y. 2002).  As

the committee's fiduciary duty runs to all of its constituents – the entire class – the committee's

efforts should be to maximize the recovery to all who fall within the class.  This duty is clearly

recognized by the LTD Committee in its Omnibus Reply of the Official Committee of Long

Term Disability Participation in Support of the Motion Pursuant to Sections 363 and 105 of the

Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(A) Preliminarily Approve the

Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally

Certifying a Class for Settlement Purposes Only, (C) Approve the Notice Procedures, and (D)

Schedule a Fairness Hearing; And (II) (A) Finally Approve the Settlement Agreement, (B)

Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant

Related Relief in which the LTD Committee represents to the Court that the LTD Committee

represents _all_ of the constituents and has strived to _achieve the maximum return to all LTD_

_Employees_ (emphasis added).   (Docket No. 9406, at pp. 6-7).

33.     In exercising its fiduciary duty, the LTD Committee must safeguard as much as possible the rights of the minority as well as majority creditors. Shaw & Levine v. Gulf & Western Indus., Inc., (In re Bohack Corp.), 607 F.2d 258, 262, n. 4 (2d Cir. 1979) (citing Woods v. City Nat'l Bank & Trust Co., 312 U.S. 262, 268-69 (1941)).   Furthermore, the LTD Committee must provide a meaningful and effective medium by which all of its constituents may voice their concerns. See In re Dow Corning Corp., 194 B.R. 121, 141 (Bankr. E.D. Michigan 1996) (adequate representation exists if [a creditor group has] a meaningful voice on the committee in relation to their posture in the case); In re Sharon Steel Corp., 100 B.R. 767, 777-78 (Bankr. W.D. Pa. 1989) (explaining that adequate representation requires that diverse interests be represented on and participate in the committee). See also Carl A. Eklund and Lynn W. Roberts, "The Problem with Creditors' Committees and Chapter 11: How to Manage the Inherent Conflicts Without Loss of Function," 5 Am. Bankr. Inst. L. Rev. 129 (1997).

34.     The LTD Committee has breached its fiduciary duty to a minority group of its constituents by valuing my Medical Benefits and the Medical Benefits of others at ███ ). Despite the LTD Committee's representation to the Court that it represents all of the constituents and has strived to achieve the maximum return to all LTD Employees, the Apportionment Methodology adopted by the LTD Committee dramatically reduces the amount that certain LTD Employees, like me, will receive from the pro rata distribution.  It is bewildering that the LTD Committee chose an Allocation Methodology that excludes a significant number of its constituents, particularly without any justification (compelling or otherwise) to do so, when the exercise of its fiduciary duty should have led the LTD Committee to include as many constituents as possible in all aspects of the distribution.  The fact that the LTD Committee has chosen to reward – or hurt – selected constituents in its adoption and interpretation of the

Allocation Methodology by not treating all LTD Employees similarly is a breach of its fiduciary duty to the entire body of constituents.

35.    The following facts further highlight the LTD Committee's breach of its fiduciary duty and the clear understanding from the outset that current plan year enrollment is not required to take part in the settlement related to Medical Benefits.  In July 2012, LTD Committee counsel requested feedback from the LTD Employees on the individual impact of potentially losing Medical Benefits in this bankruptcy.  One important issue was whether compensation for the loss of Medical Benefits would be in the form of a cash payout or funds placed toward group coverage.  My husband sent an email response that informed LTD Committee counsel that I waived Medical Benefits for the current plan year, and clearly stated "**if any medical coverage is included in the settlement, the ability to waive that coverage for a comparable cash payout would be optimal.**" (emphasis added).

36.    LTD Committee counsel copied our response and sent it to all LTD Employees as a good example of the type of feedback he was requesting and noted several reasons why our response was helpful.  Using our example, he stated that knowing whether alternative medical coverage was available to group members was important.  He also noted:  "the fact that LTDers might prefer a cash payout or a cash payout in the alternative (given the option of either a payout or payment to a fund that manages benefits for example) is very useful.  We can't guarantee that we can [sic] solutions, but it helps us to refine the places we put focus upon."  These emails are attached as Exhibit 6.

37.    At no time did the LTD Committee or its counsel communicate that I had to be currently enrolled in Medical Benefits to take part in that portion of the settlement.  To the contrary, the clear implication from this email exchange is that waiving coverage would not

impact a cash payout for Medical Benefits which, as I have discussed at length, is the only appropriate conclusion that is consistent with the LTD Plans.

38.    To say I was shocked when I received my Estimate showing ███ for Medical Benefits is certainly an understatement. What is worse, we actually contemplated electing medical coverage for the current plan year, but ultimately chose not to because of the high likelihood those benefits would be terminated this year and the clear understanding this decision would not impact our rights in the settlement. Based on all of the above, it certainly never occurred to us that the LTD Committee would ultimately choose this flawed Allocation Methodology which operates to waive our rights. Again, the LTD Plans clearly state that I do not have to be currently enrolled in Medical Benefits to retain the right to future coverage. Furthermore, it seemed abundantly clear to us that the LTD Committee and its counsel plainly understood that fact.

39.    As stated above, fixing the Allocation Methodology is very simple. Based upon the LTD Committee counsel's representations, the benefit calculations are already being reviewed and adjusted for the related issues and changes discussed in footnote 6 above, so there should be no additional delay or expense involved in correcting the faulty Allocation Methodology. [8] By failing to value the rights of LTD Employees not enrolled for the 2013 plan year, the LTD Committee has improperly overvalued the estimated pro rata share of the other LTD Employees. The Allocation Methodology must be corrected to properly value all LTD

---

[8] Despite the LTD Committee's protestations to the contrary, if Medical Benefits claims held by me and similarly situated LTD Employees are included in the Settlement Agreement allocation (or proceeds) and the Allocation Methodology is changed, the correction is easy to achieve and does not change the amount or basic terms of the LTD Committee's settlement with the Debtors. Instead, adopting a different Allocation Methodology will only change how the funds are allocated among the LTD Employees. The LTD Committee has already committed to changing the relative allocations of its constituents for the two previous errors highlighted in footnote 6, so the additional effect and impact on the LTD Committee should be minimal. Furthermore, on information and belief, when the settlement funds are reallocated there should not be a significant detriment or economic change to most members of the constituency, as the impact is estimated at less than $3,500 per person on average.

Employees' rights consistent with their LTD Claims to ensure an equitable pro rata distribution. Unless corrected through a change in the Allocation Methodology, this discrimination against me and other similarly affected LTD Employees is a breach of the LTD Committee's fiduciary duty.

40.     In addition, the LTD Committee and the Debtors have commented that this Settlement requires finality, and both have stressed the importance of having a "record date." I agree. Correcting the Allocation Methodology related to disbursement of the settlement funds in no way impacts the record date or finality of this matter. Our fundamental concern is that my rights to Medical Benefits, which exist as of the record date, have not been adequately valued in the current Allocation Methodology proposed by the LTD Committee. Correcting this error simply has no impact on finality for the Debtors or the record date.

41.     Upon information and belief, no current member of the LTD Committee is in my position or has had their Medical Benefits valued at ███. By not having an LTD Employee with issues and concerns similar to me on the LTD Committee, I am denied an effective and meaningful voice on the LTD Committee.   In analyzing the fairness of a proposed settlement, a court should consider and focus upon the fairness of the settlement to those who dissented from the settlement or did not partake in the settlement. See Nutritional Sourcing Corporation, 398 B.R. 816 (Bankr. Del. 2008) ("Thus, not only does this Court need to afford paramount consideration to the interests of creditors, but that consideration should focus particularly on the fairness of a settlement to those parties who did not partake in the settlement"). I was not provided with an effective or meaningful voice on the LTD Committee. This fact is clearly illustrated by the fact that the LTD Committee valued my rights to Medical Benefits at ███). This necessarily demonstrates the extremity of the lack of representation on the LTD Committee.

Without that effective voice, my rights were not protected, and this Court cannot find that the settlement was fair to all of the LTD Committee's constituents.

42.     Through the breach of its fiduciary duty, the LTD Committee has failed to adequately represent the interests of a minority of its constituents.  While the Bankruptcy Code does not define what is adequate representation, it is clear that adequate representation requires that a creditor have "meaningful voice" in the LTD Committee.  See, Eklund & Roberts, 5 Am. Bankr. L. Rev. 129, 141-43.  Despite several requests, neither my husband acting on my behalf nor I have been allowed the opportunity to discuss our concerns directly with the LTD Committee.  While counsel to the LTD Committee has communicated with my husband and has represented that he has voiced our concerns with the LTD Committee, the filter of LTD Committee counsel inherently denies me the required meaningful voice before the LTD Committee.  Without the opportunity to speak directly with the LTD Committee and without a meaningful voice on the LTD Committee, I have not been adequately represented by the LTD Committee.  Without that adequate representation, the LTD Committee has breached its fiduciary duty to me and other similarly situated constituents of the LTD Committee.  Accordingly, due to the LTD Committee's breach of its fiduciary duty, the proposed settlement lacks the required fairness to the LTD Committee's constituents and approval of the Settlement Agreement should be denied.

**The Proposed Settlement Class Should Not Be Certified As It Fails To Satisfy The Requirements Of Bankruptcy Rule 7023 And Federal Rule Of Civil Procedure 23(a)**

43.     To be certified, a class must satisfy the four requirements of Civil Rule 23(a): (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of

the claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class. The Supreme Court has made it clear that the plaintiffs must

not merely plead the existence of the Rule 23(a) requirements, but must prove them. Wal-Mart

Stores v. Dukes, 2011 U.S. LEXIS 4567, at *21 (U.S. June 20, 2011). Thus, courts must perform

a "rigorous" analysis to determine whether the Rule 23(a) pre-requisites are met. General Tel.

Co. of SW v. Falcon, 457 U.S. 147, 161 (1982). The class certification sought by the LTD

Committee should be denied as the proposed Class Representatives do not have claims that are

typical of the claims of other members of the class and cannot adequately protect the interests of

the class.

  44. The Joint Motion correctly notes that courts in the Third Circuit have identified

three considerations that must be analyzed to determine whether Rule 23(a)(3), the "typicality"

requirement, is satisfied: "(1) the claims of the class representative must be generally the same as

those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances

underlying that theory; (2) the class representative must not be subject to a defense that is both

inapplicable to many members of the class and likely to become a major focus of the litigation;

and (3) the interests and incentives of the representatives must be sufficiently aligned with those

of the class." Sessions v. Owens – Illinois, Inc., 267 F.R.D. 171, 176-77 (M.D. Pa. 2010)

(citations omitted). However, typicality is not present if the proposed class representatives'

claims can be challenged by a unique defense, which may preoccupy the proposed class

representative and potentially place his interests ahead of the class he is supposed to represent.

See Brown v. Kelly, 609 F.3d 467, 480 (2d Cir. 2010).

  45. In this case, the LTD Committee serves as the proposed Class Representatives.

The proposed Class Representatives' legal claims are not identical to those of the proposed

Settlement Class, and the Debtors may have unique defenses to those claims. While all members of the purported class are interested in the same legal issue – the Debtors' right to modify and/or terminate the LTD Plans – different members of the purported class have different factual circumstances and legal theories underlying their claims based upon the provisions of the different LTD Plans applicable to members of the class. These factual differences and differences in legal theories, in turn, affect claims for relief, defenses available, and generally whether the interests of the various members of the class and its proposed Class Representatives are in alignment.

46.     The Joint Motion proposes certification of the class upon the false assumption that all LTD Employees stand in the same position with respect to the LTD Plans. The Debtors have asserted (and for purposes of class certification the LTD Committee appears to agree) that because certain of the LTD Plans expressly provide the Debtors with a unilateral right to amend or terminate the various LTD Plans, all members of the class are governed by such provisions as to all plans. This is simply false. For example, as I filed with this Court in a prior pleading, several years ago I noticed that the SPD provided to us by Debtors stated: "The complete terms of the Short-Term and Long-Term Disability Plans can be found in the plan document. If there is a difference between the information in the summary and the plan document, the plan document will govern." (Exhibit 1, at EDC165).

47.     Based on this language, I asked the Debtors for the plan document to ensure I had the precise terms governing my LTD Benefits. My inquiry was ultimately forwarded to Ruth Hillis, Senior Benefits Legal Counsel for the Debtors. Ms. Hillis wrote that: **"The plan document is the summary plan description. The language [we] reference[d] is boiler plate ERISA-required language that applies if there is a separate plan document. There is not**

**with regard to the LTD; the SPD is the plan document."** (emphasis added).  See footnote 4

and the exhibits referenced therein.

48.    Despite what the Debtors have repeatedly represented to the Court, not all of the

relevant documents in this case state that the Debtors can unilaterally terminate benefits.  Based

on the written representations made by the Debtors' senior legal counsel that "the SPD is the

plan document," the SPD plainly governs my LTD Claim.  The SPD does not contain the

language the Debtors rely upon to terminate benefits.  The section containing that termination

language, called "Future of the Plan," was added several years later to the plan documents.

49.    Several LTD Employees previously have filed pleadings objecting to the class

certification.  In advance of the February 14, 2013 hearing, both the LTD Committee and

Debtors filed independent motions stating their respective support of the class certification.  In

their Omnibus Reply, the LTD Committee stated that "the central legal issue argued by the LTD

Committee was that the reservation of rights relied upon by the Debtors as a basis to terminate

the LTD Plans did not reserve the right to unilaterally terminate benefits for those already

disabled and in pay status.... This argument applied to the *entire* LTD group." (emphasis in

original).   In addition, the LTD Committee Class Complaint asserted breach of fiduciary duty

claims which they believe were common to all LTD Employees.

50.    On these two legal arguments, similar facts and law appear to apply to all LTD

Employees.  More importantly, however, if this Court would have agreed with either of those

arguments, the LTD Employees would have won this case, and I would have received 100% of

the actuarial value of my claim, including Medical Benefits.

51.    Conversely, the Debtors argue primarily that the plan documents give the Debtors

the right to terminate benefits at any time.   This is where the LTD Employees' litigation risk

arises. But, this is also where the facts and law diverge for the LTD Employees. Despite

assertions from the Debtors to the contrary, the LTD Employees have materially different plan

documents governing their rights and their claims to benefits. Several LTD Employees have

made this argument. As stated above, we believe our governing SPD and representations made

to us by Debtors put us in a uniquely favorable litigation position, regardless of the legal theory

that would have been ultimately determinative.

 52. As noted above, the SPD which governs my claim does not contain any

"terminable at will" language and does not specifically provide the Debtors with a right to

terminate the benefits. Furthermore, *other* LTD Employees are governed by other and different

provisions and, on information and belief, have asserted such in pleadings or arguments before

this Court. The existence of a right to terminate employment and benefits at will is critical to the

Debtors' theory and the Debtor's alleged ability to terminate the LTD Plans and the associated

benefits. If different LTD Employees and members of the proposed Settlement Class are in fact

governed by different governing documents, some of which may not contain "terminable at will"

type language, the LTD Employees necessarily have different legal theories and remedies

available to them, and different defenses may be available to the Debtors. This diversity among

the purported Settlement Class necessarily fails to satisfy the requirements of Civil Rule 23(a)(3)

as the claims or defenses of the Class Representatives are not necessarily typical of the claims or

defenses of the class as a whole. As all of the requirements in Civil Rule 23(a) have not been

met, the proposed Settlement Class cannot be certified.

 53. In addition, the requirements of Rule 23(a)(4) are not met as the proposed Class

Representatives cannot fairly and adequately protect the interests of the class. As noted above,

the claims of the proposed Class Representatives often arise from factually different

circumstances and legal theories.  Rule 23(a)(4) requires a critical assessment by the court of issues on which the class representatives and any part of the class might disagree.  See Anchem Prod. Inc. v. Windsor, 521 U.S. 591, 626 (1997).  While the same legal question is involved – whether the Debtors may terminate the LTD Plans – how that legal question will be resolved varies among members of the class based upon their unique factual situation and the legal theories available to them.  As noted above, many of the LTD Employees may be receiving benefits under plans that are essentially "terminable at will," while others, like me, are receiving benefits under plans that do not include such provisions.  As those various class members may have divergent interests in how the litigation is resolved, the proposed Class Representatives cannot be expected to adequately protect the interests of all constituents.  As such the requirements of Rule 23(a)(4) have not been met, and the requested class certification must be denied.

WHEREFORE, I respectfully request that this Court (i) deny the Joint Motion and the

relief requested therein, (ii) enter the proposed order attached as Exhibit 7, and (iii) grant such

other and further relief as it deems just and proper.

This the 18th day of April, 2013.

AS POA for Emily Cullen

_____
Emily D. Cullen

Appearing Pro Se through her attorney-in-fact,
Marc Cullen

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on the below date, the undersigned served copies of the Objection to Joint Motion Pursuant To Sections 363 And 105 of the Bankruptcy Code, and Bankruptcy Rule 9019 and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule A Fairness Hearing; and (Ii)(A) Finally Approve the Settlement Agreement, (B) Finally Certify A Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief upon the following parties by depositing copies of the same in the United States mail, postage prepaid, addressed as follows:

| | |
|---|---|
| James L. Bromley, Esq.<br>Lisa M. Schweitzer, Esq.<br>Cleary Gottlieb Steen & Hamilton<br>One Liberty Plaza<br>New York, New York 10006<br>Fax: (212) 225-3999 | Derek C. Abbott, Esq.<br>Morris, Nichols, Arsht & Tunnell, LLP<br>1201 North Market Street<br>Wilmington, Delaware 19801<br>Fax: (302) 658-3989 |
| Rafael X. Zahralddin-Aravena, Esq.<br>Elliott Greenleaf<br>1105 Market Street, Suite 1700<br>Wilmington, Delaware 19801<br>Fax: (302) 384-9399 | Lisa Beckerman, Esq.<br>Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, New York 10036<br>Fax: (212) 872-1002 |
| Thomas J. Matz, Esq.<br>Milbank, Tweed, Hadley & McCLoy LLP<br>One Chase Manhattan Plaza<br>New York, New York 10005<br>Fax: (212) 822-5885 | Mark Kenney, Esq.<br>Office of the United States Trustee<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, Delaware 19801<br>Fax: (302) 573-6497 |

This the 18th day of April, 2013.

_As POA For Emily Cullen_

Emily D. Cullen

Appearing Pro Se through her attorney-in-fact,
Marc Cullen

# **EXHIBIT 1**

Exhibit 1

# IN THIS SECTION

INTRODUCTION ........................................................................................................ 1

PLAN HIGHLIGHTS .................................................................................................. 2

ELIGIBILITY ............................................................................................................... 3

PARTICIPATION ........................................................................................................ 4

    Core FLEX Benefits .............................................................................................. 4

    Optional FLEX Benefits ...................................................................................... 4

    If You are on Disability During an Open Enrollment Period ......................... 4

WHEN COVERAGE BEGINS ................................................................................... 6

    Core FLEX Benefits .............................................................................................. 6

    Optional FLEX Benefits ...................................................................................... 6

    Delay of Effective Date ........................................................................................ 6

CHANGING YOUR SELECTIONS ......................................................................... 7

COST OF COVERAGE ............................................................................................... 7

FLEX EARNINGS ....................................................................................................... 8

SHORT-TERM DISABILITY (STD) BENEFITS .................................................... 9

    STD Benefit Amount ........................................................................................... 9

    Extension of Benefits Due to Part-Time Employment .................................... 9

    Definition of Disability ..................................................................................... 10

    When Benefits Begin and End ......................................................................... 10

    If You are Disabled Again ................................................................................ 10

    Reduction of Benefits Due to Other Income ................................................. 11

    Exclusions ........................................................................................................... 13

EDC    00163

LONG-TERM DISABILITY (LTD) BENEFITS ................................................................ 14

    LTD Benefit Amount ................................................................................................ 14

    Definition of Disability .......................................................................................... 14

    When Benefits Begin and End .............................................................................. 15

    If You are Disabled Again ..................................................................................... 16

    Waiver of Premium ............................................................................................... 17

    Reduction of Benefits Due to Other Income ...................................................... 17

    Approved Rehabilitation Program ....................................................................... 19

    Cost of Living Adjustment ................................................................................... 20

    Exclusions .............................................................................................................. 20

OCCUPATIONAL DISABILITY BENEFITS ................................................................... 21

WHEN COVERAGE ENDS ............................................................................................. 22

OTHER IMPORTANT INFORMATION ......................................................................... 23

    A Note About State Disability Laws .................................................................... 23

    Limits on Assignments ......................................................................................... 23

    Errors in Payment ................................................................................................. 23

ADMINISTRATIVE INFORMATION ............................................................................. 23

# *Short-Term and Long-Term Disability Plan*



# INTRODUCTION

Your disability benefits are designed to continue all or part of your income if you are unable to work due to Illness or Injury. In addition to the Short-Term Disability (STD) and Long-Term Disability (LTD) coverage provided to you by the Company as part of your Core FLEX Benefits, FLEX gives you the option to select supplemental coverage in these areas.



This is a brief description of the various options the Company has designed for your review and selection. Please read the description carefully to understand the options the Company is offering to you.

This information is a summary plan description (SPD) under the terms of the Employee Retirement Income Security Act of 1974 (ERISA). The complete terms of the Short-Term and Long-Term Disability Plans can be found in the plan document. If there is a difference between the information in this summary and the plan document, the plan document will govern. In no case does this document indicate or guarantee any right of future employment.

EDC    00165

# PLAN HIGHLIGHTS

## Short-Term Disability (STD)

*Core STD Benefit*

100% of FLEX Earnings for up to 6 weeks of disability, then 70%* for up to the next 20 weeks of disability

*Supplemental STD Benefit*

Raise 70% Core Benefit to 90% of FLEX Earnings for the 7th to 26th week of disability

## Long-Term Disability (LTD)

*Core LTD Benefit*

50%* of FLEX Earnings after 26 weeks of disability

*Supplemental LTD Benefit*

Raise 50% Core Benefit to 70% of FLEX Earnings after 26 weeks of disability

*\* or statutory minimum (if greater)*

EDC    00166

**Disability -**    2

# ELIGIBILITY

You are eligible for the Short-Term Disability (STD) and Long-Term Disability (LTD) plans if you are a regular Employee of the Company and its Affiliates in one of the following categories:

- a full-time Employee who is regularly scheduled to work at least 35 hours per week

- a part-time Employee who is regularly scheduled to work between 20-37.5 hours per week

If you are a member of a bargaining unit, you are not eligible for Short-Term or Long-Term Disability benefits unless specified in the collective bargaining agreement.

# PARTICIPATION

STD and LTD benefits are available on your Hire Date provided you turn in an enrollment form when required and make the applicable Employee contributions.

STD and LTD benefits are mutually exclusive and each plan pays benefits independent of the other. Under no circumstances will STD and LTD benefits be paid concurrently.

## Core FLEX Benefits

*You do not need to enroll for Core STD or Core LTD coverage.*

You do not need to enroll for Core STD or Core LTD coverage.

## Optional FLEX Benefits

*You may increase the amount of your Core STD and Core LTD coverage by electing Supplemental STD and Supplemental LTD coverage.*

You may increase the amount of your Core STD and Core LTD coverage by electing Supplemental STD and Supplemental LTD coverage. You must enroll for Supplemental STD and Supplemental LTD coverage within 60 days of being eligible, during an Open Enrollment period or within 60 days of a Qualified Family Status Change (as described in the FLEX Overview on page 10).

## If You are on Disability During an Open Enrollment Period

### STD
If you are on STD during an Open Enrollment period, and you are still on STD when your newly selected coverage is supposed to begin, the following provisions apply:
- You will receive FLEX Credits and may change your FLEX Benefits selections, including your Supplemental STD and/or Supplemental LTD selections.

EDC    00168

Disability -                4

- You will continue to be eligible for disability benefits under your current plan selections. Should you become eligible for LTD, your benefits would be paid under the provisions of your current LTD plan selection. Once you return to Active Work for two consecutive weeks, you will be covered under your new selections and any Payroll Deductions for the new coverage will begin.

## *LTD*

If you are on LTD during an Open Enrollment period, you will not be eligible to enroll in STD or change your current LTD selection. (However, Medical, Dental, Vision and Hearing Care, Life and AD&D benefits will continue to be available to you.) In addition, the following provisions apply:

- You may change your Medical, Dental, Vision and Hearing Care and Dependent Life Insurance selections.

- You will continue to be eligible for Long-Term Disability benefits under your current plan selection. The cost of Supplemental STD and Supplemental LTD coverage is based on your salary as of the administrative preparation period just prior to the Open Enrollment period of the preceeding year.

- Once you return to Active Work for 30 days, you may change your enrollment selections since this is considered a Qualified Family Status Change. Your newly selected coverage will be effective according to plan provisions.

EDC    00169

5        - Disability

# WHEN COVERAGE BEGINS

## Core FLEX Benefits

*Core Short-Term Disability and Core Long-Term Disability coverage is automatically effective on the first day you are Actively at Work as a new Employee.*

Core Short-Term Disability and Core Long-Term Disability coverage is automatically effective on the first day you are Actively at Work as a new Employee.

## Optional FLEX Benefits

You may enroll for Supplemental STD and Supplemental LTD coverage within 60 days of the date you first become eligible as a new Employee, during an Open Enrollment period or within 60 days of a Qualified Family Status Change (as described in the FLEX Overview section on page 10).

Your coverage will begin as follows:

| *If you enroll and pay the required contribution...* | *Your coverage will be effective on...* |
|---|---|
| Within 60 days of your Hire Date | Your Hire Date |
| Within 60 days of a Qualified Family Status Change | The Effective Date of the status change |
| During Open Enrollment | The first day of the Plan Year, normally January 1 |

If you do not enroll under any of the above circumstances, you will be covered under Core STD and Core LTD only, and you must wait until an Open Enrollment period (or experience a Qualified Family Status Change) to make a Supplemental STD or Supplemental LTD selection.

## Delay of Effective Date

If you are disabled and away from work on the date you would otherwise first become covered as a new Employee, your coverage will not start until you are Actively at Work.

EDC    00170

# CHANGING YOUR SELECTIONS

Your Supplemental STD and Supplemental LTD selections remain in effect for the entire Plan Year. You will not be able to change your selections during the Plan Year unless you experience a Qualified Family Status Change as described in the FLEX Overview section on page 10.

# COST OF COVERAGE

The Company pays the entire cost for Core STD and Core LTD coverage. You will pay for Supplemental STD and Supplemental LTD coverage with FLEX Credits or before-tax Payroll Deductions.

*The Company pays the entire cost for Core STD and Core LTD coverage. You will pay for Supplemental STD and Supplemental LTD coverage with FLEX Credits or before-tax Payroll Deductions.*

EDC    00171

7        - Disability

# FLEX EARNINGS

*FLEX Earnings are your base salary.*

*If you are eligible for sales incentives, your FLEX Earnings include your base salary and target incentives paid at 100% annual objectives, as defined each year by the Company (excluding bonuses).*

FLEX Earnings are your base salary. FLEX Earnings do not include other types of pay, including, but not limited to, overtime, shift differential or relocation payments or bonuses. If you are a part-time Employee regularly working 20 to 34 hours per week, your FLEX Earnings are based on a 25-hour work week. If you are a part-time Employee regularly working 35 to 37.5 hours per week, your FLEX Earnings are based on a 40-hour work week. If you are eligible for sales incentives, your FLEX Earnings include your base salary and target incentives paid at 100% annual objectives, as defined each year by the Company (excluding bonuses).

If your FLEX Earnings change during the Plan Year, related FLEX Payroll Deductions and FLEX Credits will not change during the year since these deductions and credits are based on your FLEX Earnings as of the administrative preparation period just prior to the Open Enrollment period of the preceding year. If your FLEX Earnings increase during the year, pay-related benefits will be based on your FLEX Earnings at the time of your disability. However, if your FLEX Earnings decrease during the year, pay-related benefits will be based on your FLEX Earnings as of the administrative preparation period just prior to the Open Enrollment period of the preceding year.

EDC    00172

# SHORT-TERM DISABILITY (STD) BENEFITS

STD benefits will be paid to you for a specified period of time if you become Totally Disabled by an accidental bodily Injury or Illness while you are covered under the plan.

## STD Benefit Amount

### Core STD Benefit

The plan pays a weekly benefit of 100% of your FLEX Earnings for up to six weeks of your disability after completion of a five-day waiting period. After that, the plan pays 70% of your FLEX Earnings for up to the next 20 weeks. Core STD benefits are reduced by federal and state income tax, as well as other income you may receive, as described on pages 11-13.

*The plan pays a weekly benefit of 100% of your FLEX Earnings for up to six weeks of your disability ...*

### Supplemental STD Benefit

Supplemental STD increases your coverage so that the plan pays 100% of your FLEX Earnings for up to six weeks of your disability after completion of a five-day waiting period, then 90% of your FLEX Earnings for up to the next 20 weeks. Supplemental STD benefits are reduced by federal and state income tax, as well as other income you may receive, as described on pages 11-13.

## Extension of Benefits Due to Part-Time Employment

If your Physician and the Company approve your return to work (for any company) on a part-time basis while you are still eligible for STD benefits equal to 100% of your FLEX Earnings, you will receive your full wage for the period that you work plus the applicable STD benefit for the period you receive disability benefits. Since your return to work on a part-time basis will decrease the STD benefit amount you receive, the resulting savings will be used to extend the number of weeks that you are eligible to receive benefits at 100% of your FLEX Earnings.

*... you will receive your full wage for the period that you work plus the applicable STD benefit for the period you receive disability benefits.*



EDC    00173        **9**        - Disability

# Definition of Disability

*You are considered Totally Disabled for STD purposes when a Physician certifies that you cannot work because of an Illness or accidental Injury.*

You are considered Totally Disabled for STD purposes when a Physician certifies that you cannot work because of an Illness or accidental Injury. This means that you cannot perform the work you were normally performing at the time of your disability. In addition, you must be under the regular care of a Physician.

A Physician means a licensed practitioner of the healing arts acting within the scope of his or her practice. When a Total Disability is caused by any condition other than a medically determinable physical impairment, a Physician means a legally qualified Physician who specializes in the practice of psychiatric medicine or has, by reason of training or experience, a specialized competency in the field of psychiatric medicine sufficient to give the necessary evaluation and treatment of mental Illness.

*This means that you cannot perform the work you were normally performing at the time of your disability. In addition, you must be under the regular care of a Physician.*

You must provide written proof of your Total Disability to Northern Telecom Inc. Health Services. Health Services will make the final determination of disability. Independent Medical Evaluations (IMEs) may be required in order to arrive at this final determination.

# When Benefits Begin and End

*STD benefits begin on the sixth consecutive working day of your disability due to Illness or Accident. These benefits end when you are no longer Totally Disabled or have received 26 weeks of STD benefits.*

STD benefits begin on the sixth consecutive working day of your disability due to Illness or Accident. These benefits end when you are no longer Totally Disabled or have received 26 weeks of STD benefits.

# If You are Disabled Again

If you are Totally Disabled again after you return to Active Work, your new period of Total Disability will be considered a continuation of your first disability if:

- it has the same or related cause as the first disability and

- you were Actively at Work less than two consecutive weeks since you were Totally Disabled or

- you have not returned for one day of full-time Active Work between the two disability periods

EDC    00174

For example, you have received STD benefits for 10 weeks, and you…

1. return to Active Work for one week before the same Illness requires you to stay at home again. In this case, benefits continue under the previous Claim for the rest of the 26-week period.

2. return to Active Work for three weeks, then the same Illness requires you to stay at home again. In this case, you will have to file a new Claim and are eligible for a new 26-week period of benefits.

3. return to Active Work for one day, then a new Illness requires you to stay at home again. In this case, you will have to file a new Claim and are eligible for a new 26-week period of benefits.

# Reduction of Benefits Due to Other Income

STD benefits will be reduced by any other income payable to you or your Dependents as a result of your disability or retirement, so that the sum of your STD benefits and any other income will not exceed the applicable STD benefit level.

For the purposes of this plan, "other income" includes:

- income received from any employer or from any occupation for compensation or profit, including self-employment

- Workers' Compensation benefits (excluding payments of legal fees incurred in the Claim process)

- disability, retirement or unemployment benefits provided under any group insurance or pension plan or any other arrangement of coverage for individuals in a group (whether on an insured or uninsured basis)

- any other disability, retirement or unemployment benefits required or provided for under any law of any government — for example:

  – unemployment compensation benefits

  – no-fault wage replacement benefits

  – statutory disability benefits

*… the sum of your STD benefits and any other income will not exceed the applicable STD benefit level.*

EDC    00175

— Social Security benefits, the Canada Pension Plan and the Quebec Pension Plan, including Dependents' benefits, but not counting any increase in benefits after STD benefit payments have started under this plan

For example, if your weekly STD benefit is $200, and you are also receiving $100 a week from Workers' Compensation, then your STD benefits will be reduced to $100 a week so that your total income equals $200 a week.

For the purposes of this plan, other income will be treated as follows:

1. Any periodic payments will be allocated to weekly periods.

2. Any single lump sum payment, including any periodic payments which you or your Dependents have elected to receive in a single lump sum will be allocated to weekly periods. However, any single lump sum payment under Workers' Compensation laws will be fully offset in its entirety against any benefits otherwise payable by this plan.

3. Any periodic or single lump sum payments received as a retroactive award may be allocated retroactively.

*It is your responsibility to complete any required applications, such as for Social Security benefits ...*

This plan takes into account other income for which you are eligible, but may have not yet received. It is your responsibility to complete any required applications, such as for Social Security benefits, as well as undertake any necessary processes for appeal if initially denied.

In the case of Social Security benefits, you are expected to pursue, in a timely and diligent manner, each of the following steps:

1. Apply for Social Security benefits.

2. Appeal at the reconsideration level, if benefits are denied.

3. Appeal at the Administrative Law Judge level, if benefits are again denied.

Until you give the plan written proof that your application for other disability benefits has been finally denied, the plan may estimate your weekly Social Security and other income and use that amount to determine your benefit under this plan.

EDC    00176

If you sign a Reimbursement Agreement, your Social Security or other income will not be estimated while your applications and appeals are pending. To obtain a Reimbursement Agreement, contact the Claims Administrator as defined on page 15 of the Administrative Information section.

If the Claims Administrator finds that the actual amount of Social Security and other income is different than the amount used to determine your STD benefits, these rules apply:

1. If STD benefits have been underpaid, this plan will make a lump sum payment to bring the total payments to the amount that should have been paid.

2. If STD benefits have been overpaid, this plan may either require a lump sum reimbursement payment to the plan or reduce or eliminate future payments.

# Exclusions

STD benefits will not be paid for any disability resulting from:

- intentionally self-inflicted injuries
- your participation in the commission of an assault or felony
- war or any act of war (declared or undeclared), insurrection, rebellion or participation in a riot or civil commotion
- occupational disabilities. Occupational disabilities are those caused by:
  - an Injury arising out of, or in the course of, any employment for wage or profit, or
  - a disease covered under a Workers' Compensation law, occupational disease law or similar legislation

*STD benefits will not be paid for any disability resulting from:*

- *intentionally self-inflicted injuries*
- *your participation in the commission of an assault or felony*
- *war or any act of war*
- *occupational disabilities.*

EDC    00177



# LONG-TERM DISABILITY (LTD) BENEFITS

LTD benefits will be paid to you for a specified period of time if you become Totally Disabled by an accidental bodily Injury or Illness while you are covered under the plan.

## LTD Benefit Amount

### Core LTD Benefits

Core LTD benefits pay a monthly benefit of 50% of your FLEX Earnings after you have been Totally Disabled for a period of 26 consecutive weeks. Core LTD benefits are reduced by federal and state income tax, as well as any other income you may receive (as described on pages 17-19), with a minimum monthly benefit of $50.

### Supplemental LTD Benefits

Supplemental LTD increases your Core LTD coverage so that the plan pays a monthly benefit of 70% of your FLEX Earnings after you have been Totally Disabled for a period of 26 consecutive weeks. Supplemental LTD benefits are reduced by federal and state income tax, as well as any other income you may receive (as described on pages 17-19), with a minimum monthly benefit of $100.

## Definition of Disability

*You are considered Totally Disabled for LTD if a Physician certifies that you cannot work because of an Illness or accidental Injury, and the clinical evidence supports this opinion.*

*During the first 24 months of a covered Total Disability ... you will be considered unable to work if you cannot perform the work you were normally performing at the time of your disability.*

You are considered Totally Disabled for LTD if a Physician certifies that you cannot work because of an Illness or accidental Injury, and the clinical evidence supports this opinion. You must provide written proof of your Total Disability to the Claims Administrator, who will make the final determination of disability. You must be under the regular care of the Physician who has treated you personally for the Illness or Injury causing the Total Disability for at least 31 days. During the first 24 months of a covered Total Disability (after the 26-consecutive week waiting period), you will be considered unable to work if you cannot perform the work you were normally performing at the time of your disability.

**Disability ·**        **14**

After the first 24-month period of covered Total Disability (after the 26-consecutive week waiting period), you will be considered unable to work if you are unable to perform any reasonable occupation. A "reasonable occupation" is any job you are or could become qualified to do with your education, training or experience.

A Physician means a licensed practitioner of the healing arts acting within the scope of his or her practice. When a Total Disability is caused by any condition other than a medically determinable physical impairment, a Physician means a legally qualified Physician who specializes in the practice of psychiatric medicine or has, by reason of training or experience, a specialized competency in the field of psychiatric medicine sufficient to give the necessary evaluation and treatment of mental Illness.

The Claims Administrator will be responsible for determining if your disability meets the definition of disability, and has the right to require that you be examined by a Physician of his or her choosing.

# When Benefits Begin and End

LTD benefits begin as soon as you have been Totally Disabled for the 26-consecutive week waiting period, provided that you give written proof of your Total Disability satisfactory to the Claims Administrator before the end of the 26-consecutive week waiting period. Otherwise, monthly LTD benefits may be delayed up to the day six months after the date you provide written proof of your Total Disability.

Benefits end when your period of Total Disability ends, which happens when the first of the following occurs:

1. You stop being Totally Disabled or die.

2. You go back to work (other than an approved rehabilitation program).

3. You are no longer under the care of a Physician.

4. You fail to furnish the latest required proof of the continuance of your Total Disability or refuse to be examined by a Physician designated by the plan.

5. You reach the end of the maximum benefit period for any one period of Total Disability as shown in the following chart.

*After the first 24-month period of covered Total Disability you will be considered unable to perform any reasonable occupation. A "reasonable occupation" is any job you are or could become qualified to do with your education, training or experience.*

*The Claims Administrator will be responsible for determining if your disability meets the definition of disability, and has the right to require that you be examined by a Physician of his or her choosing.*

*LTD benefits begin as soon as you have been Totally Disabled for the 26-consecutive week waiting period ...*

EDC    00179

## Maximum Benefit Period

The maximum length of time benefits will be paid depends on your age when your Total Disability begins, according to the following schedule:

| If your disability begins at age: | LTD benefits will continue no longer than: |
|---|---|
| under 60 | to age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 to 74 | 12 months |
| 75 or over | 6 months |

## Behavioral Illness Limitation

*For total disabilities due to mental disorders, nervous disorders or chemical dependency, the LTD maximum benefit period is limited to 24 months if treated in an outpatient setting.*

For total disabilities due to mental disorders, nervous disorders or chemical dependency, the LTD maximum benefit period is limited to 24 months if treated in an outpatient setting. However, if you are confined in a Hospital within 90 days following the date ending that 24-month period, benefits will continue during your Hospital confinement.

# If You are Disabled Again

Once a period of Total Disability has ended, any new period of Total Disability will be treated separately. However, if you are disabled again after you return to Active Work, your new period of Total Disability will be considered a continuation of your first disability if:

- it has the same or related cause as the first disability and
- you were Actively at Work less than three consecutive months since your first disability.

EDC    00180

If it is considered a continuation of your initial disability, LTD benefits are immediately payable. If it is a new disability, LTD benefits are payable after a new 26-week waiting period.

## Waiver of Premium

While you are receiving LTD benefits, you will not be required to pay premiums for any Supplemental LTD or Optional Employee Life Insurance coverage you have selected.

## Reduction of Benefits Due to Other Income

LTD benefits will be reduced by other sources of income payable to you or your Dependents because of your disability or retirement.

For the purposes of this plan, "other income" includes:

- income received from any employer or from any occupation for compensation or profit, including self-employment
- Workers' Compensation benefits (excluding payments of legal fees incurred in the Claim process)
- disability, retirement or unemployment benefits provided under any group insurance or pension plan or any other arrangement of coverage for individuals in a group (whether on an insured or uninsured basis)
- any other disability, retirement or unemployment benefits required or provided for under any law of any government — for example:
  - unemployment compensation benefits
  - no-fault wage replacement benefits
  - statutory disability benefits
  - Social Security benefits, the Canada Pension Plan and the Quebec Pension Plan, including Dependents' benefits, but not counting any increase in benefits after STD benefit payments have started under this plan

*While you are receiving LTD benefits, you will not be required to pay premiums for any Supplemental LTD or Optional Employee Life Insurance coverage you have selected.*



EDC    00181

For example, if your monthly LTD benefit is $800, and you are also receiving $400 a month from Workers' Compensation, then your LTD benefits will be reduced to $400 a month so that your total income equals $800 a month.

For the purposes of this plan, other income will be treated as follows:

1. Any periodic payments will be allocated to monthly periods.

2. Any single lump sum payment, including any periodic payments which you or your Dependents have elected to receive in a single lump sum will be allocated to 60 monthly periods. However, any single lump sum payment under Workers' Compensation laws will be fully offset in its entirety against any benefits otherwise payable by this plan.

3. Any periodic or single lump sum payments received as a retroactive award may be allocated retroactively.

This plan takes into account other income for which you are eligible, but may have not yet received. It is your responsibility to complete any required applications, such as for Social Security benefits, as well as undertake any necessary processes for appeal if initially denied.

*It is your responsibility to complete any required applications, such as for Social Security benefits ...*

In the case of Social Security, you are expected to pursue the following steps:

1. Apply for Social Security benefits.

2. Appeal at the reconsideration level, if benefits are denied.

3. Appeal at the Administrative Law Judge level, if benefits are again denied.

Until you give the plan written proof that your application for other disability benefits has been finally denied, the plan may estimate your monthly Social Security and other income and use that amount to determine your benefit under this plan.

If you sign a Reimbursement Agreement, your Social Security or other income will not be estimated while your applications and appeals are pending. To obtain a Reimbursement Agreement, contact the Claims Administrator.

EDC    00182

If the Claims Administrator finds that the actual amount of Social Security and other income benefits is different than the amount used to determine your LTD benefits, these rules apply:

1. If LTD benefits have been underpaid, this plan will make a lump sum payment to bring the total payments to the amount that should have been paid.

2. If LTD benefits have been overpaid, this plan may either require a lump sum reimbursement payment to the plan or reduce or eliminate future payments. In this case, plan minimums will not apply.

# Approved Rehabilitation Program

While you are receiving LTD benefits, you may take part in an "approved rehabilitation program" to help you get back to work. An approved rehabilitation program is:

- a program of vocational rehabilitation, or

- a period of part-time work with the Company for purposes of rehabilitation, approved by the Claims Administrator. This period will begin when the Claims Administrator approves such program in writing and will end when the Claims Administrator withdraws its approval.

With the Claims Administrator's approval, you may continue to receive LTD benefits for a limited time while on an approved rehabilitation program. During this period, your regular monthly LTD benefit will be reduced by 80% of your earnings from your rehabilitative job. Here is an example:

*... you may continue to receive LTD benefits for a limited time while on an approved rehabilitation program.*

| Monthly LTD Benefit From The Plan | Rehabilitative Earnings | 80% Reduction | Net LTD Benefit From This Plan |
|---|---|---|---|
| $1,600 | $300 | $240 | $1360 |

*... your regular monthly LTD benefit will be reduced by 80% of your earnings from your rehabilitative job.*

If this plan determines that a program that should make you self-supporting is within your ability, the plan may pay certain expenses of a vocational rehabilitation program at the discretion of the Plan Administrator. If this benefit applies to you, you will be notified of the type and duration of expenses covered, and the conditions for payment, if you agree to undertake the program. The maximum payment is $10,000.



EDC    00183

# Cost of Living Adjustment

*The current LTD plan ... provides a cost of living adjustment for LTD benefits. This adjustment applies to your Core and Supplemental LTD benefits each year after the first year of Long-Term Disability.*

The current LTD plan which began July 1, 1994 provides a cost of living adjustment for LTD benefits. This adjustment applies to your Core and Supplemental LTD benefits each year after the first year of Long-Term Disability. This adjustment increases your total LTD benefit by 60% of the annual Consumer Price Index increase, up to 6% per year as determined by the Company. For example, if you are receiving a $2,000 LTD benefit and the Consumer Price Index increases by 4%, your benefit will increase 2.4% to $2,048. This benefit becomes payable in the first calendar month following the one year anniversary date that your LTD benefit began.

# Exclusions

*LTD benefits will not be paid for any disability which is in any way caused by the following:*

- *intentionally self-inflicted injuries*
- *your participation in the commission of an assault or felony*
- *war or any act of war*
- *a Pre-Existing Condition ...*

LTD benefits will not be paid for any disability which is in any way caused by the following:

- intentionally self-inflicted injuries
- your participation in the commission of an assault or felony
- war or any act of war (declared or undeclared), insurrection, rebellion or participation in a riot or civil commotion
- a Pre-Existing Condition, as described below

## Pre-Existing Conditions Exclusion

If you are a newly hired Employee, you will not be covered for 12 months after coverage is effective for any disability caused or in any way related to a condition existing within 90 days of your coverage Effective Date.

A "Pre-Existing Condition" is an Illness, Injury or condition for which you:

- received treatment or services from a Physician
- took drugs or medicines prescribed by a Physician
- incur expenses or
- receive a diagnosis



# OCCUPATIONAL DISABILITY BENEFITS

Disability benefits may also be payable to you for a Total Disability which is an Occupational Disability as defined below. This benefit is provided on the same terms as the benefit for a non-occupational (non-employment related) disability. The amount of disability benefits payable, however, is equal to the excess of the non-occupational disability benefit over the benefits payable under any Workers' Compensation law, occupational disease law or similar legislation.

Occupational Disabilities are those caused by:

- an injury arising out of, or in the course of, any employment for wage or profit or
- a disease covered with respect to such employment by any Workers' Compensation law, occupational disease law or similar legislation.

*Disability benefits may also be payable to you for a Total Disability which is an Occupational Disability ...*

EDC    00185

# WHEN COVERAGE ENDS

LTD and STD coverage will end on the earliest of the following dates:

- the date your employment ends or you stop qualifying for coverage or
- the date the part of the plan providing the coverage ends or
- the date you fail to pay the required premium or contribution or
- the date you begin an unpaid leave of absence.

For coverage purposes, your employment will end when you are no longer an active full-time or part-time Employee. However, the Company may consider you as still an active Employee during certain types of approved leaves of absence. For example, if you are on an unpaid medical leave of absence because of Injury or Illness, your coverage may be continued.

If you stop Active Work for any reason, you should contact the Company at once to determine what arrangements, if any, can be made to continue any of your coverage.

# OTHER IMPORTANT INFORMATION

## A Note About State Disability Laws

In certain locations, state mandated disability plans supersede the Company's plan. As a result, applicable state disability law may alter the provisions described in this summary.

*... applicable state disability law may alter the provisions described in this summary.*

## Limits on Assignments

Benefits under the plan may be assigned only as a gift assignment. The Claims Administrator will not:

- be responsible for determining the validity of a purported gift assignment
  *or*
- be held to know about an assignment unless it has received a copy of it.

## Errors in Payments

If the Claims Administrator determines that you have received an overpayment of benefits, you will be required to reimburse the Claims Administrator or have the overpayment deducted from subsequent benefit payments payable under this plan or any other Company welfare plan.

# ADMINISTRATIVE INFORMATION

Please see the Administrative Information section of this handbook for further administrative details about this plan, such as how to file claims and appeal denied claims, where to get more information, your ERISA rights and how the Company may amend the plan.

EDC    00187

# EXHIBIT 2

*Exhibit 2*

## Burkard, Jean [YRK:K500:EXCH]

| | |
|---|---|
| **From:** | Lorimer, Debbie [NASH:8426:EXCH] |
| **Sent:** | Monday, January 15, 2001 1:31 PM |
| **To:** | Burkard, Jean |
| **Subject:** | FW: Plan document request |

Jean - pls. see notes below from Ruth.  Apparently there is no other legal plan document on LTD other than the SPD which the employee is reading from (Employee Benefits Binder - Summary Plan Document).  I will assume you will advise the employee -- note Ruth's comment re: giving the ee extra time.  Let me know if you need anything else!

Regards,
Debbie Lorimer
Corporate Benefits
ESN: 222-4281
External: 615-432-4281
Fax: 615-754-9068
Email: dlorimer@nortelnetworks.com


-----Original Message-----
From: Hillis, Ruth [NASH:9790:EXCH]
Sent: Monday, January 15, 2001 12:08 PM
To: Lorimer, Debbie [NASH:8426:EXCH]
Subject: RE: Plan document request

The plan document is the summary plan description.  The language he references is boiler plate ERISA-required language that applies if there is a separate plan document.  There is not with regard to the LTD; the SPD is the plan document.

If it will help, tell this person that he can have an extension of the 60 days for an additional 10 days to make up for the problem he has experienced in locating the document.  Also, please clue Employee Services to tell people that the SPD is the plan document.  Thanks.

-----Original Message-----
From: Lorimer, Debbie [NASH:8426:EXCH]
Sent: Monday, January 15, 2001 10:51 AM
To: Hillis, Ruth; Owens, Lauren
Subject: FW: Plan document request
Importance: High


Morning Ruth and Lauren!  Do we have a legal plan document on LTD?  I am assuming that what the person below is referring to is their copy of the summary plan document that is contained in the Employee Benefits binder provided to ees.  I have checked both my hard and soft copy files and don't appear to have anything other than what is in this binder and on Services@Work.  If we do have such a document and either of you have a soft copy, if you could send to me, I'll be happy to provide to Employee Services so that it can be provided to the requestor.
Thanks for the help!

Regards,
Debbie Lorimer
Corporate Benefits
ESN: 222-4281
External: 615-432-4281
Fax: 615-754-9068
Email: dlorimer@nortelnetworks.com


-----Original Message-----
From: Burkard, Jean [YRK:K500:EXCH]
Sent: Monday, January 15, 2001 10:34 AM

1

To: Lorimer, Debbie [NASH:8426:EXCH]
Subject: FW: Plan document request

The enclosed is a request for the Long Term Disability Plan Document as
referenced in the SPD. Employee Services does not have a copy of the
plan document, so I'm looking to you for assistance in obtaining a copy
for Mr. Cullen. Thanks.

Jean

-----Original Message-----
From: Marc Cullen█████████████████████]
Sent: Thursday, January 11, 2001 5:00 PM
To: Burkard, Jean [YRK:K500:EXCH]
Subject: Plan document request

Ms. Burkard,

I was told by Nortel Employee Services to contact you with regard to
obtaining a copy of the Nortel Long-Term Disability Plan Document. I
believe this inquiry is referenced as ticket number 1402071. My wife,
Emily, recently received notice from Prudential that they were
terminating
her long-term disability benefits effective January 31, 2001. We
believe
this decision to be in error and are appealing that decision.

In reviewing the summary plan description ("SPD"), I noticed the
following
disclaimer: "The complete terms of the Short-Term and Long-Term
Disability
Plans can be found in the plan document. If there is a difference
between
the information in this summary and the plan document, the plan document
will govern." To ensure we have the precise terms governing long-term
disability benefits, I have requested a copy of the plan document from
both
Prudential and Nortel Employee Services. Both entities have told me
that
they are simply third-party providers and do not have this document. I
have
been trying to obtain this document for almost 10 days. However, this
task
has proven much more difficult than appears necessary. Quite simply, I
just
want to make sure I know the rules of the game, but nobody will give
them to
me. This delay is substantial when you are only given 60 days to
appeal.

We were told by both Prudential and Employee Services that we should
probably speak with a North human resources representative, but neither
could give us the name of one. Individuals at the Nortel switchboard
could
not give us the name of an HR representative. At long last, we were
given
your name as someone who might be able to help.

Therefore, please provide to me a copy of this plan document so that we
might have the official governing terms of the long-term disability
plan.
My contact information follows.

Thank you for your assistance with this matter. In the past we have had
nothing but high praise for the Nortel human resources staff, but like
most
big companies, the hardest part is actually finding the right person to
handle your issue. Once you do, things are always handled
appropriately,

and I assume this matter will be no different.

On that note, I would like to take this opportunity to express some concern
regarding the dreadful treatment we received from Prudential regarding this
matter. Prudential's actions in "evaluating" and terminating this claim
reek of bad faith. To the contrary, Nortel's former administrator, Cigna,
was nothing but fair and professional during the two years it handled this
very claim. I am very disappointed that Nortel decided to change
administrators, but it takes little speculation to understand how and why
the decision was made.

I would like to elaborate on Prudential's questionable conduct in this
matter. Would you please let me know who at Nortel would be the appropriate
person to whom to express such concerns.

Thank you for listening to our concerns. Please contact me at your earliest
convenience regarding the issues set forth above as the clock on our appeal
deadline is ticking.

With best regards,

Marc Cullen

Marc Cullen



---

This message is intended only for the use of the addressee and may contain
information which is ATTORNEY-CLIENT PRIVILEGED, and/or may contain ATTORNEY
WORK PRODUCT, or other PRIVILEGED or CONFIDENTIAL material. If you are not
the intended recipient, you are hereby notified that any dissemination of
this communication is strictly prohibited. If you have received this
communication in error, please erase all copies of the message and its
attachments and notify us immediately. Thank you.

# EXHIBIT 3

Exhibit 3



Nortel Networks Inc.
200 Athens Way
Nashville, Tennessee 37228
**Tel**  615-432-4298
**Fax**  615-432-5901

www.nortelnetworks.com

Ruth A. Hillis
Senior Benefits Counsel

**VIA CERTIFIED MAIL**

September 25, 2001

Mrs. Emily Cullen

████████ ███

**Re:**      **Appeal of Termination of Long-Term Disability Benefits**

Dear Mrs. Cullen:

The Employee Benefits Committee ("Committee") of Nortel Networks Inc. met recently to review your request for reinstatement of your Long-Term Disability ("LTD") benefit, which was terminated on February 1, 2001.  After reviewing the documentation submitted by your attorney and Prudential, the Committee has voted to grant your request for reinstatement of your LTD benefit, retroactively to February 1, 2001.

✱ [   Page 15 of the Summary Plan Description of the LTD plan, which was provided to you earlier, describes when your LTD benefit may end.  Pursuant to that description, you will need to provide continuing proof that you are under the regular care of the physician who treats you for your disabling condition.  Some information was presented in the course of your appeal that you had not seen Dr. Lapp at all during the 2000 plan year.  You will also be required to submit evidence of the continuance of your disability to Prudential upon their request on a regular basis and may be asked to submit to examination by an independent medical examiner for confirmation of your condition.  Prudential has been instructed to engage a physician who is knowledgeable about your diagnoses for any such future examination.  Prudential has also been advised to work with you or provide services to you to assist with your appeal of the denial of Social Security disability benefits since denial of such benefits (especially on an on-going basis) may be considered some evidence that your condition is not disabling.

Please call me if you have any questions about this determination.

Sincerely,

*Ruth Hillis*

Ruth Hillis
Senior Benefits Counsel

cc:      Employee Benefits Committee
          Debbie Lorimer, Corporate Benefits Dept.
          James K. Dorsett, III

# **<u>EXHIBIT 4</u>**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | X | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | : | |
| Debtors. | : | Case No. 09-10138 (KG) |
| | : | |
| | : | Jointly Administered |
| | : | |
| | : | **RE: 9304, [•]** |
| ------------------------------------------------------- X | | |
| OFFICIAL COMMITTEE OF LONG TERM | : | |
| DISABILITY PLAN PARTICIPANTS, on | : | |
| behalf of and as agent for a class of individual | : | |
| participants and beneficiaries under various | : | |
| NORTEL NETWORKS HEALTH AND | : | |
| WELFARE BENEFIT PLANS, | : | |
| Plaintiffs, | : | |
| v. | : | |
| NORTEL NETWORKS INC., *et al.*, | : | |
| Defendants. | : | |
| ------------------------------------------------------- X | | |

## <u>Estimate of Individual Allocation of Settlement Amount</u>

For informational purposes only, this exhibit projects your estimated share of the Settlement Amount[2] as determined by the apportionment methodology set forth in the Settlement Agreement and presented to the United States Bankruptcy Court for the District of Delaware for approval (your "<u>Estimated Individual Settlement Amount</u>"). The LTD Committee has directed its professionals, including, but not limited to its actuaries and financial advisors, to adjust your share to account for any corrections or adjustments in the valuation of LTD Claims, as necessary. Please review this exhibit carefully.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (b), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Settlement Agreement, as amended and restated on February 11, 2013. In the event of any inconsistency, the terms of the Settlement Agreement govern.

**THE SETTLEMENT AGREEMENT IS THE CONTROLLING DOCUMENT. YOU SHOULD CAREFULLY REVIEW AND CONSIDER THE SETTLEMENT AGREEMENT, INCLUDING THE APPORTIONMENT METHODOLOGY, RELEASE, EXCULPATION AND INJUNCTION PROVISIONS CONTAINED IN THE SETTLEMENT AGREEMENT.**

## APPORTIONMENT METHODOLOGY

Based on the benefits you currently receive under the LTD Plans, and the assumption that you would continue to receive those same benefits if Nortel's businesses continued to operate, the LTD Committee directed its actuarial advisors to determine a value, which is the present value of your expected future LTD Benefits from now until the end of the period that you are entitled to the benefits under the terms of the governing LTD Plans ("Individual Claim"). Even if the Debtors' request to terminate the LTD Plans was not granted, your receipt of LTD Benefits in the future is not a certainty, but is subject to your likelihood of recovering or dying during the benefit period. The present value of your LTD Benefits, used as the basis for your Estimated Individual Settlement Amount, takes into account these actuarial assumptions, as well as the time value of money. This present value estimate constitutes your projected Individual Claim for LTD Benefits. The sum of all of the LTD Employees' Individual Claims was used by the LTD Committee for the purposes of negotiating a settlement with the Debtors. Advisors to the LTD Committee have calculated these amounts and in entering into the Settlement Agreement, the Debtors are not admitting that they are liable for the Individual Claims or that either the Individual Claims or the Estimated Individual Settlement Amounts would constitute obligations or claims against the Debtors for any purposes other than for settlement.

Pursuant to the LTD Committee's right to sell, assign or convey the LTD General Unsecured Claim under the Settlement Agreement, the LTD Committee has negotiated a term sheet with SPCP Group, LLC ("SPCP") to sell and assign the LTD General Unsecured Claim to SPCP (the "Term Sheet"), the proceeds of which sale will be distributed among the members of the Settlement Class if the sale occurs.[3] The agreement contained in the Term Sheet remains subject to (1) satisfactory documentation, (2) the form of the proposed Order approving the Settlement Agreement, (3) agreement on certain other issues, including, but not limited to, resolution of certain taxation issues and (4) final approval by the Bankruptcy Court of the terms of the Settlement Agreement. Please note that if the Settlement Agreement is approved by the Bankruptcy Court and the LTD General Unsecured Claim is sold subject to the Term Sheet, the LTD General Unsecured Claim will be sold to SPCP for an amount that is less than the full amount of the LTD General Unsecured Claim. Your Estimated Individual Settlement Amount, as projected below, takes the expected estimated recovery from the sale of the LTD General Unsecured Claim, pursuant to the terms of the Term Sheet, estimated potential tax withholdings and estimated settlement administration costs into account; however, the amount you ultimately receive may vary from the Estimated Individual Settlement Amount including based on changes to these estimates and based on changes in the group of LTD Employees participating in the settlement.

---

[3]    In the event that the Debtors and the LTD Committee agree in writing to extend the Termination Date from May 31, 2013 to June 30, 2013, the LTD General Unsecured Claim would be reduced in an amount equal to $680,000 and the purchase price for the LTD General Unsecured Claim would be reduced proportionally.

Your Estimated Individual Settlement Amount is equal to your Individual Claim times the ratio of (i) the LTD General Unsecured Claim, to (ii) the value of the aggregate of all of the LTD Employees' Individual Claims (the "Estimated Settlement Ratio"), multiplied by an allowance for the estimated recovery on the LTD General Unsecured Claim based on the terms of the Term Sheet, [4] estimated tax withholding and estimated administrative costs necessary to administer and implement the Settlement Agreement (the "Allowance"). [5]

Please note that under the proposed settlement agreement between the Debtors and the Official Committee of Retired Employees (the "Proposed Retiree Settlement Agreement"), if approved by the Bankruptcy Court, those LTD Employees who are receiving LTD Benefits under the LTD Plans as of the Termination Date and have met the service requirements for retirement as of January 31, 2013 (in accordance with the eligibility criteria set forth in the Proposed Retiree Settlement Agreement) can elect to participate in the Proposed Retiree Settlement Agreement if they elect to retire and relinquish their right to receive continued benefits under the LTD Plans after the termination date of the Retiree Welfare Plans, which is proposed to be May 31, 2013 pursuant to the Proposed Retiree Settlement Agreement. Should you voluntarily terminate your employment with the Debtors and waive your right to receive LTD Benefits under the LTD Plans, you will waive your right to receive any distribution on the Estimated Individual Settlement Amount projected in this notice. Your Estimated Individual Settlement Amount is subject to satisfactory compliance with all applicable federal withholding requirements for income tax purposes, as applicable, and any settlement administration costs, as applicable.

---

[4]        If the Settlement Agreement is approved by the Bankruptcy Court and the LTD General Unsecured Claim is sold and assigned pursuant to the terms of the Term Sheet, the Settlement Amount will equal the purchase price received by the LTD Committee for the sale and assignment of the LTD General Unsecured Claim, less the Settlement Administration Costs. However, in the event that an agreement to sell and assign the LTD General Unsecured Claim does not become effective or the LTD General Unsecured Claim is not otherwise sold, assigned or conveyed, the Settlement Amount will depend, among other things, on the amount of distributions made by Nortel Networks Inc. on the LTD General Unsecured Claim under a plan of reorganization. Accordingly, your Estimated Individual Settlement Amount is dependent, among other things, on the completion of the sale of the LTD General Unsecured Claim by the LTD Committee at the price and pursuant to the terms contained in the Term Sheet.

[5]        The LTD Committee strives to reduce or eliminate any administrative costs related to the settlement. The Estimated Individual Settlement Amount and the aggregate Settlement Amount will be approved by the Court on a final basis at the final hearing on the settlement and the Debtors' estates will bear the costs of administration through the date such order becomes final and non-appealable. However, the settlement is a matter still pending before the Bankruptcy Court and until the Bankruptcy Court approves the settlement administrative costs are uncertain. The Debtors reserve the right to challenge the fee applications submitted by the LTD Committee and its advisors.

**PERSONAL DATA USED TO DETERMINE YOUR ESTIMATED INDIVIDUAL SETTLEMENT AMOUNT[6]**

Name: Emily Cullen

| Personal Information | |
|---|---|
| ██████████ | ████ |
| ████████████ | ████ |
| █████████ | ████ |
| ████████████ | ████ |
| ████████████ | ████ |
| ████████████ | ███ |
| ████████████ | ███ |
| ████████████ | ████ |
| ███████████ | ██ |

Any inquiries concerning your Estimated Individual Settlement Amount should be addressed to the attorneys for the LTD Committee, either by submitting such inquiries through the LTD Committee website (http://www.kccllc.net/nortelltd/) or by contacting the undersigned attorneys for the LTD Committee.

Dated:  February 25, 2013

**The Official Committee of Long Term Disability Participants**
**By its attorneys,**
**Elliott Greenleaf**
1105 N. Market Street, Ste 1700
Wilmington, DE 19801
(302) 384-9400
Attn:  Rafael X. Zahralddin-Aravena, Esq.
          Shelley A. Kinsella, Esq.
          Margaret S. Curran, Esq.

---

[6]        The Debtors provided individual data, including demographic and employment data and information concerning Nortel sponsored benefits to the LTD Committee's counsel and financial advisors on a confidential basis, up through and including 2013 United States Benefits Confirmation Statements.

| Benefit Information | | |
|---|---|---|
| Income Replacement Level (% of Benefit Earnings) | | |
| Cost of Living Adjustment on Income Replacement Benefit | | |
| Current Income Replacement Monthly Benefit Before Offsets | | |
| Total LTD Employee Offset to Income Replacement Monthly Benefit | | |
| Total Dependent Offset to Income Replacement Monthly Benefit | | |
| Medical Benefit Coverage Level | | |
| Dental/Vision/Hearing Benefit Coverage Level | | |
| Total Medical Premium Monthly Deduction | | |
| Medicare Eligible? | | |
| Life Insurance Core Benefit on Employee | | |
| Life Insurance Optional Benefit on Employee | | |
| Life Insurance Optional Benefit on Spouse | | |
| Life Insurance Optional Benefit on Children (amount per child) | | |
| Accidental Dismemberment & Death Insurance Benefit | | |
| Long-Term Investment Plan Monthly Benefit | | |

## YOUR ESTIMATED INDIVIDUAL SETTLEMENT AMOUNT

1. LTD General Unsecured Claim

2. Your Individual Claim Amount

3. Aggregate LTD Claim

4. Estimated Ratio of LTD General
   Unsecured Claim to Aggregate LTD Claim

5. Estimated Individual Settlement Amount

6. Allowance for Federal Tax Withholding, Settlement
   Administration Costs, and Estimated Recovery on
   General LTD Unsecured Claim

7. State Tax Withholding

8. Your Estimated Net Individual Settlement Amount

**THE TERM SHEET CONTEMPLATES THAT THE LTD GENERAL UNSECURED CLAIM WILL BE SOLD FOR AN AMOUNT LESS THAN THE FACE VALUE OF THE LTD GENERAL UNSECURED CLAIM AND IS SUBJECT TO THAT PURCHASE PRICE.**

## YOUR INDIVIDUAL CLAIM BY BENEFIT CATEGORY

Your total Individual Claim is the sum of the claims for each of the categories[7] of LTD Benefits you are currently receiving under the LTD Plans. Your Individual Claim amount has been estimated by projecting the expected future benefits for each category of LTD Benefits and calculating their present value. The projection and present value calculation was based on actuarial assumptions regarding your likelihood of recovering or dying from actuarial tables published by the Society of Actuaries for disabled populations and by taking into account the time value of money.

The following table shows your Individual Claim Amount for each benefit category and your Estimated Individual Settlement Amount:

| Benefit Category for Total Household | Total Entitled Benefits in LTD Plan (A) | Present Value Factor (B) | Individual Claim Amount (C) = (A) x (B) | Estimated Settlement Ratio (D) | Estimated Individual Settlement Amount (E) = (C) x (D) | Allowance % (F) | State Tax Withholding (G) | Estimated Net Individual Settlement Amount (H) = (E) x [1 - (F)] - (G) |
|---|---|---|---|---|---|---|---|---|
| Income Replacement (Net of Offset) | ██ | ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| Medical Benefit | █ | ██ | █ | ██ | █ | ██ | █ | █ |
| Life Insurance | ██ | ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| Accidental Dismemberment & Death Insurance | ██ | ██ | ██ | ██ | ██ | ██ | █ | ██ |
| Long-Term Investment Plan Benefit | ██ | ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| Total | ██ | ██ | ██ | ██ | ██ | ██ | ██ | ██ |

The attached table shows your Individual Claim and your share of the Estimated Individual Settlement Amount by benefit category in relation to other LTD Employees (without identifications). Your data and information are displayed in the row with index number 26.

---

[7]      There are five categories of benefits: income replacement, medical, life insurance, accidental death and dismemberment insurance and long-term investment plan.

Advisors to the LTD Committee have calculated the amounts set forth in the table above. The Estimated Settlement Ratio and your Estimated Individual Settlement Amount were calculated based on the assumption that all LTD Employees would participate in the Settlement Agreement. However, if individual LTD Employees elect to retire from the Debtors and waive their right to a share of the Settlement Amount, the Estimated Settlement Ratio may vary and your Estimated Individual Settlement Amount and the actual distribution made to you may increase from the amounts listed in this notice and from the amounts approved by the Bankruptcy Court. The Term Sheet contemplates that the LTD General Unsecured Claim will be sold at an amount less than the face value of the claim. Therefore, the Estimated Individual Settlement Amount is subject to the Allowance, which represents the estimated discounted recovery on the LTD General Unsecured Claim based on the sale price for the LTD General Unsecured Claim compared to the total allowed amount of the LTD General Unsecured Claim (noting the sale price may differ from the amount of distributions the Debtors otherwise ultimately will make on such claim to SPCP) as well as an estimated reduction for potential tax withholdings and estimated potential settlement administration costs. The LTD Committee hopes to minimize the potential tax withholding pursuant to applicable law. The LTD Committee is trying to reduce or eliminate, if possible, potential Settlement Administration Costs. The LTD Committee reserves the right to file a revised schedule prior to the Fairness Hearing to account for any and all changes, and a supplemental revised schedule after the Fairness Hearing to reallocate distributions for changes to members of the Settlement Class.

**The information set forth in this Notice only determines your entitlement to receive a share of distributions of the Settlement Amount. The Settlement Amount will be based, among other things, on the completion of the sale of the LTD General Unsecured Claim by the LTD Committee at the price and pursuant to the terms contained in the Term Sheet or under an agreement with another party, and if applicable, on any taxes withheld by the Debtors or others. In the event that an agreement memorializing the terms of the Term Sheet does not become effective or the LTD General Unsecured Claim is not otherwise sold, assigned or conveyed, the Settlement Amount will depend, among other things, on the amount of distributions made by Nortel Networks Inc. on the LTD General Unsecured Claim under a plan of reorganization. No assurances can be provided as to the amount you may ultimately recover whether from a sale of the LTD General Unsecured Claim or a direct distribution under a plan of reorganization.**

**Additionally, your Estimated Individual Settlement Amount will vary based upon personal factors including, but not limited to, age, benefit elections, pre-disability income and number of dependents, if any, and is an estimate of the amount of money you will receive, before subtracting amounts owed for applicable taxes and settlement administration costs.**

# EXHIBIT 5

Proof of Claim
Emily D. Cullen - ████████████

**EXHIBIT 4**

Income Continuation

| Year | Initial Monthly Benefit | COLA 1.46%* | Monthly Benefit Owed by Nortel | Months/Year | Annual Benefit Owed by Nortel | | Initial Monthly SSDI Family Benefits | COLA 1.46% | COLA Adjusted Monthly Family Benefits |
|------|------------------------|-------------|-------------------------------|-------------|------------------------------|---|-------------------------------------|------------|--------------------------------------|
| 2012 | ████ 5 | | | | | | ██████ | | |
| 2013 | | | | 12 | ███████ 3 | | | | |
| 2014 | ██████ | | ██████ | 12 | ███████ | | ██████ | | ██████ |
| 2015 | | | | 12 | | | | | |
| 2016 | ██████ 5 | | | 12 | | | ██████ | | |
| 2017 | | | 3 | 12 | ███████ 0 | | | | |
| 2018 | ██████ 5 | | ██████ | 12 | | | ██████ | | |
| 2019 | | | | 3 | ███████ | | ██████ 5 | | ██████ |
| 2019** | ██████ | | | 9 | ███████ 0 | | | | |
| 2020 | ██████ | ██████ | | 12 | ███████ | | | | |
| 2021 | ██████ | ██████ | | 12 | | | | | |
| 2022 | ██████ | ██████ | | 12 | | | | | |
| 2023 | ██████ | ██████ | | 12 | | | | | |
| 2024 | ██████ | ██████ | | 12 | | | | | |
| 2025 | ██████ | ██████ | | 12 | ███████ | | | | |
| 2026 | ██████ | ██████ 6 | | 12 | | | | | |
| 2027 | ██████ | ██████ | | 12 | | | | | |
| 2028 | ██████ | ██████ | | 12 | ███████ | | | | |
| 2029 | ██████ 8 | ██████ | | 12 | | | | | |
| 2030 | ██████ | ██████ | | 12 | | | | | |
| 2031 | ██████ | ██████ | | 12 | | | | | |
| 2032 | ██████ | ██████ | 4 | 12 | ███████ 2 | | | | |
| 2033 | ██████ | ██████ | | 4 | ██████ | | | | |
| | | | | | ███████ | | | | |

Monthly LTD Income Continuation benefit for 2012 is ████████ This amount has been reduced by SSDI in the amount of ████████ It has been further reduced by SSDI family benefits in the amount of ██████████ SSDI family benefit will expire in April 2019 thereby increasing the amount owed by Debtors.

**Expires April 2019 - Therefore, added to amount owed by Nortel for last 9 months of 2019

* The 1996 SPD that governs this claim states on page 20 (EDC 184):
  "The current LTD plan which began on July 1, 1994 provides a cost of living adjustment for LTD benefits…. The adjustment increases your total LTD benefit by 60% of the annual Consumer Price Index increase, up to 6% per year as determined by the Company."
Therefore, we have estimated an annual COLA of 1.46% which is the average COLA over the last 15 years since my disability in 1997. (see attached)

Cullen will reach age ██ in April ████

| 401k | | | | Months until age 65 |
|------|--|--|--|------|
| | | Annual Match | Monthly Match | |
| Flex Benefits | ███████ | ██████ | █████ | █████ |
| ████ | | | | |

| Severance | | | |
|-----------|--|--|--|
| | ████████ | | |
| | ████████████ | | ███████ |

† Per Nortel, 1 week for each annual anniversary from date of hire + 4 weeks

Medical and other benefits
(including: Medical, Prescription, Dental/Vision/Hearing, Life Insurance, AD&D)

Estimated Cost to Age 65                    ███████

TOTAL BENEFITS DUE TO AGE 65              - ████████

# EXHIBIT 6

**From:** Rafael X. Zahralddin-Aravena <RXZA@elliottgreenleaf.com>
    **Cc:** Margaret S. Curran <msc@elliottgreenleaf.com>; Shelley A. Kinsella <SAK@elliottgreenleaf.com>; Theresa M. Snow <TMS@elliottgreenleaf.com>
**Subject:** Feedback
    **Date:** Mon, Jul 9, 2012 10:12 am

Dear Long Term Disabled Employees of Nortel,

I thank the few of you that have responded by telling me what your individual situations are.

What is generally going to be the most helpful are people who run the numbers through the tools available and those who give us feedback like the following:

*For our situation, my wife is fortunate in that she is covered under my insurance which is good, so we have not needed the medical insurance provided by Nortel. Therefore, our primary concern is losing a critical income stream from the monthly LTD payments and the 401k payments. While I understand medical coverage is likely an important issue for many with regard to this settlement, our much needed preference is for the best cash settlement possible. Also, if any medical coverage is included in the settlement, the ability to waive that coverage for a comparable cash payout would be optimal.*

We have numbers in the aggregate for all of you and some specific information that you all have shared, but not a complete picture. It is important that you all please send me an e-mail along these lines.

What do we get out of these comments?

First, using the example above, we have one key piece of information - that there is alternative medical coverage.

Second, letting us know how important the income stream is. While there is probably little we can do regarding the 401k payments - there are decisions that the Committee and its professionals will make during the negotiations and if you tell us that the LTD payments are critical, we can negotiate based on that information. If others indicate that medical is most important, we can work with that as well. These are all examples, and not an exclusive list of examples, so each of you will give us more information.

Third, the fact that LTDers might prefer a cash payout or a cash payout in the alternative (given the option of either a payout or payment to a fund that manages benefits for example) is very useful. We can't guarantee that we can solutions, but it helps us to refine the places we put focus upon.

Ultimately, it is the Committee's decision as to how these negotiations are conducted and concluded.

However, we want your feedback so that your comments can help inform the process. We are trying to get a settlement that is best for the entire group but we want to address as many of your individual concerns as we can.

Please respond by close of business on Wednesday, 5pm Eastern time, so that we can efficiently use your feedback to prepare for the next mediation session, which will likely be our last session.

We cannot tell you the specifics of our settlement discussions because they are confidential, but I share these issues because they are practical considerations that we want you to comment on and provide feedback because they are extremely important to the execution of any settlement or the hard decision to not settle and try and fight a termination of your benefits.



Rafael X. Zahralddin-Aravena

Commercial Bankruptcy and Restructuring Practice Chair
1105 Market Street
Suite 1700
Wilmington, DE 19801

Phone: 302.384.9400 ext. 4001
Cell: 302.545.2888
Toll Free: 866.575.4264
Fax: 302.384.9399
E-Mail: rxza@elliottgreenleaf.com
Firm Website: www.elliottgreenleaf.com

**From:**
**To:** RXZA <RXZA@elliottgreenleaf.com>
**Subject:** Re: Information Summaries Regarding Some Benefits of the Affordable Care Act
**Date:** Sun, Jul 8, 2012 1:16 pm

Rafael,

For our situation, my wife is fortunate in that she is covered under my insurance which is good, so we have not needed the medical insurance provided by Nortel. Therefore, our primary concern is losing a critical income stream from the monthly LTD payments and the 401k payments. While I understand medical coverage is likely an important issue for many with regard to this settlement, our much needed preference is for the best cash settlement possible. Also, if any medical coverage is included in the settlement, the ability to waive that coverage for a comparable cash payout would be optimal.

Please let me know if you need addtional information.

Best regards,
Marc Cullen (on behalf of Emily Cullen)

-----Original Message-----
From: Rafael X. Zahralddin-Aravena <RXZA@elliottgreenleaf.com>
To: Margaret S. Curran <msc@elliottgreenleaf.com>; Shelley A. Kinsella <SAK@elliottgreenleaf.com>;
Theresa M. Snow <TMS@elliottgreenleaf.com>;

Sent: Fri, Jul 6, 2012 4:27 pm
Subject: Information Summaries Regarding Some Benefits of the Affordable Care Act

Dear Long Term Disabled Employees of Nortel,

I wanted to share information with you regarding the possible impact that the Affordable Care Act, otherwise known as "Obama care" might have on your individual situations. This was provided by our actuary for the committee facilitated by our firm and A&M. As this has nothing to do with the mediation we can freely share this information. It has come to our attention through members of the committee that the biggest difficulties some of you will face will be the increase in costs to prescription drugs when your medical benefits are modified, terminated or replaced. It will help us if you can take a look at the information below, run your numbers and report back to us. It will help us in both pushing for a settlement number and how we would structure a settlement or how we would request that the settlement come over to you all.

**<u>Summary Memo from DaVinci Actuaries</u>**

Anyone who has been receiving Social Security disability benefits for more than 24 months should already be enrolled in Original Medicare, have a Medicare Id card, and be eligible to sign up for a Medicare Advantage Plan (MA) or a Prescription Drug Plan (PDP). A Medicare Advantage Plan with Drug Coverage will provide both medical and prescription drug coverage.
   The Medicare Open Enrollment Period, where someone who is eligible for Medicare can switch from Original Medicare to a Medicare Advantage Plan or sign up for Prescription Drug Plan is from October 15 – December 7. Benefits will be effective on January 1. Loss of medical coverage may qualify you for a special enrollment period. More information on this can be found at http://www.medicare.gov/Publications/Pubs/pdf/11219.pdf or by calling 1-800-MEDICARE (1-800-633-4227).
   There are many plan options available to suit an individual's specific needs, and they vary by county and state.
   The https://www.medicare.gov/find-a-plan/questions/home.aspx website is a tool that can be very helpful in determining the best plan for an individual. Please note that the benefits currently listed are for 2012. The 2013 benefits are not yet finalized however this is a good indicator of the types of plans that may be available. This website gives an individual the flexibility to:
         a.   Enter their Medicare Number and bring up personal information.

  b. Enter all of the prescription drugs that they are currently taking.
  c. Select several plans and choose to see a comparison.  The website will show the premiums, benefits that are covered, the cost sharing that an individual will be responsible for, and also an estimate of the individual's out of pocket costs.  Please note that these are estimates for the purpose of comparison.  Actual costs will vary based on how often and which benefits are used.
  d. There is an Overall Plan Rating listed for each plan.  This is a 5 star system with a 5 being the highest rating.

Information on financial assistance for medical and drug costs can be found at http://www.medicare.gov/navigation/medicare-basics/medical-and-drug-costs.aspx

Over the next several years the amount that an individual must pay for their covered Part D drugs in the coverage gap, or donut hole, will decrease.  By the year 2020, an individual will pay 25% of the allowed cost for covered drugs (both brand and generic), after the initial deductible is satisfied and until the catastrophic coverage amount is reached.   This is the same cost sharing amount that an individual currently pays after the initial deductible and before the coverage gap under the standard benefit design.  The following website shows the decreasing cost of covered drugs to enrollees: http://www.healthcare.gov/law/features/65-older/drug-discounts/index.html

You may also find this website useful:  https://www.cms.gov/Outreach-and-Education/Outreach/Partnerships/Downloads/11522-P.pdf

Please review and let us know.

As the Debtors have not let us see your individualized benefit statements, this will help guide the Committee and its professionals in helping you all by getting the best deal possible to review.

## Elliott Greenleaf

Rafael X. Zahralddin-Aravena
Commercial Bankruptcy and Restructuring Practice Chair
1105 Market Street
Suite 1700
Wilmington, DE 19801

Phone: 302.384.9400 ext. 4001
Cell: 302.545.2888
Toll Free: 866.575.4264
Fax: 302.384.9399
E-Mail: rxza@elliottgreenleaf.com
Firm Website: www.elliottgreenleaf.com

# **EXHIBIT 7**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

|  |  |
|---|---|
| *In re*<br>Nortel Networks Inc., *et al.,*[1]<br>　　　　　　　　Debtors. | Chapter 11<br>Case No. 09-10138(KG)<br>Jointly Administered<br>**Related D.I.: 8067, 9304, 9403, 9427** |

---

|  |  |
|---|---|
| OFFICIAL COMMITTEE OF LONG<br>TERM DISABILITY PLAN<br>PARTICIPANTS, on behalf of and as<br>Agents for a class of individual participants<br>And beneficiaries under various NORTEL<br>NETWORKS HEALTH AND WELFARE<br>BENEFIT PLANS,<br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>NORTEL NETWORKS INC., *et al.*,<br>　　　　　　　　Defendants. | Adv. Proc. No. 12-50995(KG)<br>**Related D.I.: 1, 15, 26**<br><br><br><br>**Hearing Date: April 30, 2013**<br>**at 10:00 a.m. (EST)**<br><br>**Hearing Objections Due: April 19, 2013**<br>**at 4:00 p.m. (EST)** |

---

**ORDER DENYING JOINT MOTION PURSUANT TO SECTIONS 363 AND 105 OF THE
BANKRUPTCY CODE, AND BANKRUPTCY RULE 9019 AND 7023 TO (I)(A)
PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT REGARDING LONG-
TERM DISABILITY PLANS AND CLAIMS, (B) CONDITIONALLY CERTIFY A CLASS
FOR SETTLEMENT PURPOSES ONLY, (C) APPROVE THE NOTICE PROCEDURES,
AND (D) SCHEDULE A FAIRNESS HEARING; AND (II)(A) FINALLY APPROVE THE
SETTLEMENT AGREEMENT, (B) FINALLY CERTIFY A CLASS, (C) AUTHORIZE THE
DEBTORS TO TERMINATE THE LTD PLANS, AND (D) GRANT RELATED RELIEF**

Upon consideration of the Objection to Joint Motion Pursuant to Sections 363 and 105 of the

Bankruptcy Code, and Bankruptcy Rule 9019 and 7023 to (I)(A) Preliminarily Approve the

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks
Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International
Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel
Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel
Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358),
Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA)
Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at
http://chapter11.epigsystems.com/nortel.

Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally

Certify a Class for Settlement Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule

a Fairness Hearing; and (II)(A) Finally Approve the Settlement Agreement, (B) Finally Certify a

Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief filed by

Emily D. Cullen (the "Objection"), and any responses thereto; and it appearing that sufficient notice

of the Objection has been given; and good cause having been shown, it is hereby

ORDERED that the Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code,

and Bankruptcy Rule 9019 and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement

Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement

Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule a Fairness Hearing; and

(II)(A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the

Debtors to Terminate the LTD Plans, and (D) Grant Related Relief is denied.


Dated: _____, 2013
      Wilmington, Delaware

                                            _____
                                            HONORABLE KEVIN GROSS
                                            CHIEF UNITED STATES BANKRUPTCY JUDGE