IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

*In re*

Nortel Networks Inc., *et al.*,[1]

Debtors.

Chapter 11

Case No. 09-10138(KG)

Jointly Administered

OFFICIAL COMMITTEE OF LONG
TERM DISABILITY PLAN
PARTICIPANTS, on behalf of and as
Agents for a class of individual participants
and beneficiaries under various NORTEL
NETWORKS HEALTH AND WELFARE
BENEFIT PLANS,

Plaintiffs,

v.

NORTEL NETWORKS INC., *et al.*,

Defendants.

D.I. 10049

**Hearing Date: April 30, 2013
at 10:00 a.m. (EST)**

**Hearing Objections Due: April 23, 2013
at 4:00 p.m. (EST)**

## OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF LONG
## TERM DISABILITY PARTICIPANTS FOR APPROVAL OF
## DISTRIBUTION AND RELATED RELIEF

### PRELIMINARY STATEMENT

1.     This Objection is filed by Emily D. Cullen ("Cullen", "I", or "me"). I was a

Certified Public Accountant employed by the Debtors when I became totally disabled and

approved for Long Term Disability ("LTD"). I am a long-term disabled employee who

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel
Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel
Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251),
CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical
Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel
Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions
Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors'
petitions, which are available at http://chapter11.epiqsystems.com/nortel.

1

participates in the Debtors' Long Term Disability Plans (the "LTD Plans") and similar other
plans and programs (individually, a "LTD Employee" and, together with other similarly situated
long-term disability employees, the "LTD Employees").

2.      I file this Objection in response and opposition of that Motion of the Official
Committee of Long Term Disability Participants for Approval of Distribution and Related Relief
(the "Distribution Motion"). The Distribution Motion is brought before this court by the Official
Committee of Long Term Disability Participants (the "LTD Committee"). The LTD Committee
was appointed as an official committee under 11 U.S.C. § 1102 and acts on behalf of all of the
Debtors' LTD Employees.

3.      Accordingly, I object to the Distribution Motion and the related relief sought in
the Distribution Motion, and request specifically that the settlement proceeds be distributed to
the LTD Employees as a lump sum as soon as practical after the Termination Date.

## FACTUAL BACKGROUND[2]

4.      The LTD Committee has engaged in tax planning to evaluate the impact of the
distribution of the settlement proceeds to the class members. While there are compelling tax and
non-tax effects from this distribution, it has become clear that the personal circumstances of the
LTD Employees are divergent, and the individual interests of the class members are not aligned.

5.      Over the last number of weeks, the LTD Committee's experts have continued to
research the potential tax implications of the settlement distribution. LTD Committee counsel
has held numerous group phone calls to inform the LTD Employees of the LTD Committee's

---

[2] Due to its voluminous nature, I have not attempted to restate all background information pertaining to the
Distribution Motion. Instead, reference is made to the factual background provided in the Distribution Motion,
which provides a thorough discussion of the case background and issues leading to the Distribution Motion.
Initially capitalized terms not defined herein shall be given the definitions set forth in the Distribution Motion.

evolving position on the distribution scheme. Unfortunately, significant open questions remain as to effect of the proposed distribution scheme at the time of this filing.

6.     Moreover, while the LTD Committee has received informal feedback from various LTD Employees on the potential impact of the proposed distribution scheme on their individual circumstances, the LTD Committee has not formally surveyed or otherwise sought to understand the possible impact of the distribution scheme on the individual LTD Employees.

7.     Unfortunately, there are vast differences between the personal circumstances and individual impact of this distribution on the class members. The LTD Committee does not yet fully understand critical components of the distribution scheme and has not sought to understand the distinct effects on the individual members of the class or their distribution preferences.

8.     To be clear, the goal of the LTD Committee is commendable. The LTD Committee's efforts to provide the LTD Employees with the potential ramifications of various distribution scenarios have been helpful. It has become clear that the tax implications of this settlement and impact on other benefit programs can be significant. Conversely, we have learned that the consequences of the distribution scheme proposed by the LTD Committee can be equally or even more devastating.

## RELIEF REQUESTED

9.     By this Objection, I seek an order of this Court (i) denying approval of the Distribution Motion, (ii) approving a lump sum distribution of the settlement proceeds as soon as practicable after the Termination Date, and (iii) granting related relief.

## BASIS FOR RELIEF

**The LTD Committee Lacks the Authority to Determine the Distribution of the Settlement Proceeds since the Class Members Lack the Required Community of Interest**

3

10.     The LTD Committee has bravely undertaken the impossible task of trying to distribute the settlement proceeds in the most tax efficient manner. As a CPA, I certainly appreciate their desire and effort to engage in thoughtful tax planning with regard to the distribution.

11.     Unfortunately, effective tax planning is simply not possible when your "client" is 195 dissimilarly situated persons from a tax perspective. The LTD Committee is attempting to represent the class on an issue where the class members have vastly divergent interests, facts, and individual situations. The LTD Committee acknowledges this fact: "The LTD Committee does not represent the LTD Employees individually and cannot provide advice on the distribution scheme that would best meet the needs of each individual LTD Employee **since each participant's situation is unique to that individual**." (emphasis added) (Distribution Motion, p35).

12.     Since the LTD Committee admittedly lacks the requisite facts related to each LTD Employee's individual tax situation, they have chosen to perform their analysis using assumptions that likely do not reflect the circumstances of a great proportion of class members. Specifically, the LTD Committee has predicated their analysis upon the assumption that each class member is not married, has no other income, and no other facts impacting their taxable income or deductions.

13.     Based on these assumptions, the LTD Committee has put forth individual statements purporting to show each LTD Employee's "individual tax savings." While I cannot speak for the rest of the constituents, I can confirm my statement is inaccurate and does not properly reflect my tax impact related to the proposed distribution scheme. In short, it significantly overestimates my purported tax savings.

4

14.     Moreover, the LTD Committee has aggregated these individual savings estimates and claims a gross tax savings to the group of $4 million. Their assumptions dramatically inflate the projected savings. For example, by assuming each person has no other taxable income, their estimates are getting the full benefit of the lower brackets of the tax tables. It can be a dangerous exercise to engage in tax planning without all the relevant facts.

15.     In addition, several critical outstanding questions about the impact of the proposed distribution scheme remain unanswered as of the filing of this Objection, such as the inheritability of an account balance under the HRA and what mandatory limitations will be imposed by the Annuity. At this point, many key issues remain unanswered, and the impact to individual constituents vary dramatically.

16.     Moreover, it is paramount that we acknowledge that tax implications are not the only consideration in any financial decision, and in fact, are often not even the primary consideration. Many LTD Employees have legitimate non-tax reasons to support a lump sum payout. For example, if you have incurred significant debt due to your disability, a lump sum payout may allow you to payoff that debt and save you significantly more in interest expense than an Annuity would save in taxes.

17.     In addition, as discussed further below, the Annuity and HRA carry significant risks and limitations in order to maintain their beneficial tax status. For many of us, those risks far outweigh any potential tax relief.

18.     This is an extremely difficult situation as any single distribution method will harm a significant portion of the LTD population. While I understand the constructive receipt issue raised by the LTD Committee which prevents offering LTD Employees a choice of distribution method, the LTD Committee should have at least formally surveyed the group to fully

5

understand and appreciate the diversity of interests of the LTD Employees, both tax and non-tax. My understanding is that gathering preferences of the constituents in order to make the most informed recommendation would not have violated any constructive receipt rules as the individual members would have not had a right to choose their individual distribution method. Moreover, the LTD Committee might have realized the class lacks the required community of interest to make this decision at all.

19.    On information and belief, the proposed distribution method does not seem to be in the interest of a majority of participants. As is the nature of tax planning, the proposed scheme is skewed toward helping the minority of LTD Employees receiving the largest settlements. While the scheme might have provided the largest total tax savings in the aggregate, that is because it is primarily helping those receiving the most from the settlement at the expense of those receiving less. To be clear, I do not necessarily believe there was some nefarious intent on the part of the LTD Committee. This is simply the nature of tax planning; those who receive more have the most to gain from effecting tax planning. Those receiving less have less to gain from effective tax planning, and therefore may have a different risk/benefit profile. Generally, important non-tax interests play a larger role for those receiving less.

20.    The LTD Plans give the LTD Employees certain rights as of the Termination Date. We are losing those rights on the Termination Date in favor of these settlement proceeds. We, therefore, have a right to the settlement proceeds as of Termination Date. By default, those proceeds should be distributed lump sum immediately after the Termination Date to compensate us for the termination of those rights. The class simply lacks the required community of interest for the LTD Committee to make a decision altering those rights.

6

**The Risks and Consequences of the Proposed HRA and Annuity Far Outweigh Any Proposed Tax Benefits**

21.     The LTD Committee is proposing to place up to $60,000 of each individual's settlement proceeds related to medical benefits into an HRA.[3]

22.     It is unlikely, God willing, that I will be able to use this amount of money in the HRA.

, it is extremely unlikely I will be able to use even close to $60,000 in the HRA for several reasons:  (1)

; (2)

; and (3)

23.     Our second risk related to the HRA is that we have been told by LTD Committee counsel that any remaining balance in the HRA may not be bequeathed.

24.     Frankly, if there is any scenario where I could permanently lose any part of these funds, it would not be worth the potential tax savings.  Look no further than the annual HRAs that many employers provide to their employees.  Each year, the employee can elect to place an amount of their salary, pre-tax, in the HRA.  However, if the employee does not use the entire amount placed in the HRA, they lose it.  Therefore, employees will generally only put an amount in their annual HRA that they are certain to use because the potential tax savings is not worth the risk of forfeiting some of these funds.  While the HRA being proposed in this settlement distribution is different, the premise is analogous.  Since there is ultimately a risk of forfeiture

---

[3] I currently have a separate objection pending related to the current Allocation Methodology being used to determine each LTD Employee's proportional share of medical benefits. If the Court determines that my right to medical benefits should be appropriately valued as part of the Allocation Methodology, then the distribution of medical benefits into an HRA will become a significant issue for me.

7

with the proposed settlement HRA, most of us would only be willing to subject a very conservative amount to the HRA that we are certain to use due to the risk of forfeiture.

25.     We were told the $60,000 cap (originally proposed at $90,000) was largely driven by the requirement that there be enough aggregate funds in the HRA to make the administration of the HRA worthwhile to a third party. While understandable, making this work for the third party should not be the driving factor; the needs of the LTD Employees should be. Based upon the latest information provided by the LTD Committee, only 1/3 of the LTD Employees will be receiving at least $60,000 in medical benefits. After witnessing the robust, and sometimes heated, discussions regarding the HRA on the group conference calls, a significant portion of the LTD Employees seem outright opposed to the use of the HRA, or at a minimum feel the cap remains far too high. Again, most of us are only willing to put into the HRA an amount we are certain to use. If that aggregate amount is not enough to entice a third party to administer the fund, so be it, the HRA would clearly not meet our needs. Critically, however, the needs of the LTD Employees should drive that decision, not the needs of the administrator.

26.     Moreover, the tax benefits of the HRA are likely overstated for yet another reason. Medical expenses over 7.5% of Adjusted Gross Income are already deductible. This existing deduction significantly minimizes the utility of the HRA, particularly for the people who would have needed it most (i.e., those with lower incomes and higher medical expenses), since they would have likely already received a material tax deduction for these expenses.

27.     The Annuity is similarly problematic for me. We have been told by the LTD Committee that in order for the Annuity to retained tax favored status, "you have to give up some rights." It was suggested that we might lose the right to bequeath any remaining funds, and/or might have to endure "disability audits." Further, both the HRA and Annuity come with

8

significant administration expenses, currently estimated by the LTD Committee at 4% of the total settlement proceeds, or $1 million.

28. A key issue in this settlement has been about providing "finality." Many of us are looking for that exact same finality with respect to the settlement proceeds. In my circumstances, I am willing to potentially pay more in taxes to gain that finality which will (1) ensure my complete control over the funds, (2) gain immediate access to the funds, (3) avoid the risk of forfeiting a portion of the funds, (4) avoid having to fight with more bureaucrats about qualifying medical expenses or a disability audit, and (5) avoid losing 4% of the settlement proceeds to administrative expenses.

29. Given the minimal tax benefit for my situation from the proposed distribution scheme, it is simply not worth the risk of "giving up some rights," nor enduring the significant costs of administration. Further, any possibility of outright forfeiting these funds would be devastating as this settlement is already dramatically slashing (by 55%) the benefits we were originally entitled to under the LTD Plans. While an HRA and Annuity can be effective tax saving vehicles in the right circumstances, these substantial risks far outweigh any potential tax savings for me.

WHEREFORE, I respectfully request that this Court (i) deny the Distribution Motion and the relief requested therein, (ii) approve a lump sum distribution of the settlement proceeds as soon as practicable after the Termination Date, and (iii) grant such other and further relief as it deems just and proper.

This the 22nd day of April, 2013.

AS POA
for                    Emily D. Cullen

Emily D. Cullen

Telephone:
Email:
Appearing Pro Se through her attorney-in-fact,
Marc Cullen

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

*In re*
Nortel Networks Inc., *et al.*,[1]
                              Debtors.

Chapter 11
Case No. 09-10138(KG)
Jointly Administered

OFFICIAL COMMITTEE OF LONG
TERM DISABILITY PLAN
PARTICIPANTS, on behalf of and as
Agents for a class of individual participants
And beneficiaries under various NORTEL
NETWORKS HEALTH AND WELFARE
BENEFIT PLANS,

                    Plaintiffs,

         v.

NORTEL NETWORKS INC., *et al.*,
                              Defendants.

**Hearing Date: April 30, 2013
at 10:00 a.m. (EST)**

**Hearing Objections Due: April 23, 2013
at 4:00 p.m. (EST)**

**ORDER DENYING MOTION OF THE OFFICIAL COMMITTEE OF LONG
TERM DISABILITY PARTICIPANTS FOR APPROVAL OF
DISTRIBUTION AND RELATED RELIEF**

Upon consideration of the Objection to Motion of the Official Committee of Long Term

Disability Participants for Approval of Distribution and Related Relief filed by Emily D. Cullen (the

"Objection"), and any responses thereto; and it appearing that sufficient notice of the Objection has

been given; and good cause having been shown, it is hereby

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks
Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International
Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel
Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel
Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358),
Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA)
Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at
http://chapter11.epiqsystems.com/nortel.

ORDERED that the Motion of the Official Committee of Long Term Disability Participants

for Approval of Distribution and Related Relief is denied.


Dated: _____, 2013
        Wilmington, Delaware

                        _____
                        HONORABLE KEVIN GROSS
                        CHIEF UNITED STATES BANKRUPTCY JUDGE