## EXHIBIT A

**Submissions of the Monitor and Canadian Debtors
Concerning Litigation Timetable and Discovery Plan**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**SUBMISSIONS OF THE MONITOR AND CANADIAN DEBTORS**
**CONCERNING LITIGATION TIMETABLE AND DISCOVERY PLAN**
**DATED APRIL 19, 2013**

<table>
<tr><td>

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini**  (LSUC#: 222936)
**Joseph Pasquariello** (LSUC# 37389C)
**Benjamin Zarnett** (LSUC# 17247M)
**Peter Ruby** (LSUC# 38439P)

Tel:    416-979-2211
Fax:    416-979-1234

Lawyers for the Monitor,
Ernst & Young Inc.

</td><td>

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

**Derrick Tay** LSUC#: 21152A
**Jennifer Stam** LSUC#: 46735J

Tel:  416-862-5697
Fax:  416-862-7661

Lawyers for the Canadian Debtors

</td></tr>
</table>

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**SUBMISSIONS OF THE MONITOR AND CANADIAN DEBTORS**
**CONCERNING LITIGATION TIMETABLE AND DISCOVERY PLAN**
**DATED APRIL 19, 2013**

**INTRODUCTION**

1.      On January 14, 2009 Nortel Networks Corporation ("**NNC**" and collectively with all its

subsidiaries "**Nortel**" or the "**Company**"), Nortel Networks Limited ("**NNL**"), Nortel

Networks Technology Corporation, Nortel Networks International Corporation and

Nortel Networks Global Corporation (collectively the "**Canadian Debtors**") filed for and

obtained protection under the Companies' Creditors Arrangement Act ("**CCAA**").

Pursuant to the Order of this Court dated January 14, 2009, as amended and, Ernst &

Young Inc. was appointed as the Monitor of the Canadian Debtors (the "**Monitor**") in the

CCAA proceedings. The stay of proceedings was extended to May 3, 2013, by this Court

in its Order dated January 31, 2013.

2.      Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries concurrently filed

voluntary petitions under Chapter 11 of Title 11 of the U.S. Bankruptcy Code in the

- 2 -

United States Bankruptcy Court for the District of Delaware on January 14, 2009 (the "**US Court**").

3.  Nortel Networks UK Limited and certain of its subsidiaries located in EMEA were granted Administration orders by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as Administrators of the various EMEA Debtors, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "**Joint Administrators**").

4.  The purpose of these submissions is to provide the Court with:

    (a)  the Monitor and Canadian Debtors' proposal for a litigation timetable (the "**Litigation Timetable**") for the adjudication of the allocation of the proceeds from the sale of Nortel's assets and certain claims made against the Canadian Debtors; and

    (b)  the Monitor and Canadian Debtors' proposal for a discovery and deposition plan (the "**Discovery and Deposition Plan**") to govern certain procedural steps in the aforementioned adjudication.

5.  The Monitor and the Canadian Debtors believe that the process described in the Litigation Timetable and the Discovery and Deposition Plan (attached as Schedule "A"

- 3 -

hereto) provides for the fair, efficient and expeditious resolution of disputes between the parties and for the Core Parties to be ready for trial by January 6, 2014.

**PROCEDURAL BACKGROUND**

6.    On June 7, 2011 this Court and the US Court heard motions concerning, among other things, a request for approval of an allocation protocol for resolution of the allocation dispute. On June 17, 2011, this Court and the US Court issued Orders pursuant to which various parties interested in the allocation of the Nortel global divestiture sale proceeds were ordered to mediate the issues raised in the allocation protocol motions pending the release of the Courts' decisions on same.

7.    Following the unsuccessful mediation, on February 13, 2013, this Court and the US Court advised that on March 7, 2013, they would hear summary submissions on the allocation protocol motions and the parties at interest were given the opportunity to file supplementary submissions.

8.    On March 8, 2013, this Court issued an Endorsement granting the allocation protocol motion of the Canadian Debtors and approving the form of allocation protocol presented by the Canadian Debtors subject to certain specified modifications. The cross-motion of the Joint Administrators seeking to direct the parties to the Interim Funding and Settlement Agreement to arbitrate the allocation dispute was dismissed. The US Court similarly granted the motion of the US Debtors for approval of the allocation protocol and dismissed the cross-motion of the Joint Administrators to compel arbitration. On

- 4 -

April 3, 2013, this Court issued a further Endorsement in respect of the allocation protocol motions matters and the US Court issued an Opinion.

9.    The effect of the foregoing decisions is that allocation of the Nortel global sale proceeds and resolution of the claims filed by the EMEA Debtors, certain other intercompany creditors and the UK pension interests against the Canadian Debtors and the US Debtors, respectively, will be resolved through a joint trial of this Court and the US Court scheduled to commence on January 6, 2014.

10.   On April 17, 2013, this Court scheduled a hearing for April 24, 2013 to address a litigation timetable and discovery plan for this proceeding. Parties have been ordered to submit blacklines to the Litigation Timetable and Discovery and Deposition Plan by April 23, 2013, at 12:00 pm.

**CONSULTATION ABOUT A LITIGATION TIMETABLE AND DISCOVERY PLAN**

11.   The Monitor and the Canadian Debtors have consulted with the other Core Parties about a litigation timetable and discovery plan, including a lengthy meeting among counsel.

12.   On March 15, 2013, based on its understanding that the trial would be in the fall of 2013, the Monitor circulated to the other Core Parties for comment a draft litigation timetable and discovery plan. On March 19, 2013, NNI circulated a revised version of the Monitor and the Canadian Debtors' draft litigation timetable and discovery plan, which was provided expressly on the basis that the drafts were subject to further comment.

- 5 -

13.  On April 3, 2013, this Court and the US Court scheduled the allocation trial to begin on January 6, 2014.

14.  On April 4, 2013, the Monitor convened a meeting to which counsel to all Core Parties were invited to discuss and provide comments on the Monitor and Canadian Debtors' draft litigation timetable and discovery plan with a view to attempting to narrow  or resolve outstanding issues.

15.  On April 17, 2013, the Monitor circulated to the other Core Parties for comment a revised draft litigation timetable and discovery plan, targeted at the January 6, 2014, trial date and taking into account the comments previously provided to it.  Since then, the Monitor and the Canadian Debtors worked with NNI and other Core Parties to narrow the scope of scheduling and discovery process differences among them.

16.  Although neither the EMEA Debtors or the UK pension claimants have responded to the Monitor and Canadian Debtors' April 17, 2013, drafts, they appear to have concerns with the Monitor and Canadian Debtors' proposed scheduling and discovery approach based on discussions with their counsel.[1]

**FAIRNESS, EFFICIENCY AND EFFECTIVENESS**

17.  The Monitor and Canadian Debtors' proposed Litigation Timetable and Discovery and Deposition Plan are driven by the available amount of time between now and the start of the trial on January 6, 2014, to complete reasonable steps to have the matter ready for a

---

[1]   On April 17, 2013, the EMEA Debtors provided comments concerning the draft litigation timetable and discovery plan previously circulated by NNI.

- 6 -

trial on its merits. The proposed approach is a balance among the Core Parties having reasonable access to information and documents to make and defend their case, allowing for the thoughtful and informed participation of experts, reasonably minimizing surprise at trial, the very large universe of information and documents in the possession of Nortel, and the circumstances of these insolvency proceedings.

18.     The Monitor and the Canadian Debtors proposes to use several tools to reach this balance, including:

(a)     making use of the over 44,000 documents already produced by the parties for the purpose of mediation and stored in a Merrill Lextranet database;

(b)     providing for parties to make limited and specific document discovery requests, so as to avoid fishing expeditions, extensive document search exercises and voluminous productions – while making any further relevant documents available;

(c)     providing for the early identification of potential witnesses;

(d)     allowing for the use of affidavit material filed in this and other proceedings in an organized manner;

(e)     combining Canadian and U.S. oral discovery techniques, such as time-limited discovery of representative witnesses and a limited number of witness depositions;

- 7 -

    (f)      providing for expert reports, reply experts reports and time-limited expert depositions;

    (g)     attempting to set expectations as to how evidence may be used at trial;

    (h)     coordinating as far as possible the activities in the two Courts so that all the associated matters proceed in tandem as far as possible; and

    (i)      providing guidance to the Courts concerning the timeframe in which the Courts may expect the parties to seek the assistance of the Courts to address interlocutory issues.

**CONCLUSION**

19.    The Monitor and the Canadian Debtors believe the proposed Litigation Timetable and Discovery and Deposition Plan set out a fair, effective and efficient process designed to achieve a just result on the merits and within the timeframe allotted by the Courts prior to the commencement of the trial. The Monitor and the Canadian Debtors respectfully request that this Court endorse the Litigation Timetable and Discovery and Deposition Plan substantially in the form submitted.

- 8 -

All of which is respectfully submitted this 19th day of April, 2013.

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini**  (LSUC#: 222936)
**Joseph Pasquariello** (LSUC# 37389C)
**Benjamin Zarnett** (LSUC# 17247M)
**Peter Ruby** (LSUC# 38439P)

Tel:  416-979-2211
Fax:  416-979-1234

Lawyers for the Monitor,
Ernst & Young Inc.

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

**Derrick Tay** LSUC#: 21152A
**Jennifer Stam** LSUC#: 46735J

Tel:  416-862-5697
Fax:  416-862-7661

Lawyers for the Canadian Debtors

## SCHEDULE "A"

## [ATTACHED]

\6197066

**Monitor and Canadian Debtors's Proposed  Litigation Timetable for All Matters to be Addressed at the Joint Trial Commencing January 6, 2014**

April 19, 2013

Pursuant to the Orders, dated April 3, 2013, of the Ontario Superior Court of Justice (the "Ontario Court") and the United States Bankruptcy Court for the District of Delaware (the "U.S. Court" and together with the Ontario Court, the "Courts"), this proposed Litigation Timetable is intended to supplement or amend, as the circumstances require, the Claims Procedure Resolution Order as entered by the Ontario Court on September 16, 2010 (the "Claims Procedure Resolution Order"),[1] and the Ontario Court's EMEA Claims Procedure Order dated January 21, 2011 (the "EMEA Claims Procedures Order") and Intercompany Claims Procedure Order dated July 27, 2012 (the "Intercompany Claims Procedures Order") and all other Orders or agreements governing the procedure for resolving the claims that are the subject matter of this schedule and the issue of allocation among the estates of asset sale proceeds.

| Due Date 2013/2014 | Step |
|---|---|
| Commencing immediately | All Core Parties to continue to negotiate in good faith to try to come to an agreement on a Litigation Timetable and discovery and deposition plan dealing with the matters proposed in the draft discovery and deposition plan attached hereto as Schedule "A" and such other matters as they may agree upon (the "Discovery and Deposition Plan") |
| March 21 | Monitor delivered Notices of Disallowance of all claims filed by the Joint Administrators for the EMEA Debtors (together, "EMEA") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 21(e) of the EMEA Claims Procedures Order. |
|  | Monitor delivered Notices of Disallowance of all claims filed by the Nortel Networks UK Pension Trust Limited and the Pension Protection Fund (together, the "Trustees") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 13(e) of the Claims Procedure Resolution Order. |
| March 27 | Monitor delivered Notices of Disallowance of all claims filed by the Additional Non-APAC/CALA Affirmative Claims filed by Nortel Networks AG ("NN AG") and Nortel Networks AS ("NN AS") pursuant to the Intercompany Claims Procedure Order. |

---

[1]  On November 5, 2010, the U.S. Court entered an order enforcing in the United States the Claims Procedure Resolution Order along with the Cross-Border Claims Protocol Order, also entered by the Ontario Court on September 16, 2010.

1

| Due Date 2013/2014 | Step |
|---|---|
| April 4 | EMEA delivered Dispute Notices pursuant to paragraphs 25 of the EMEA Claims Procedure Order and paragraph 17 of the Claims Procedure Resolution Order. |
| April 8 | Core Parties to provide comments, if any, on the draft pre-trial protocol for dealing with confidential documents and information and for the claw back of any inadvertently produced privileged communications ("Confidentiality and Privilege Clawback Agreement") circulated by the Monitor. |
| April 15 | Revised Allocation Protocol to be filed with the Courts, together with competing submissions, if any.[2] |
| April 24 | Joint Hearing before both Courts to approve an agreed upon Litigation Timetable and Discovery and Deposition Plan or, absent agreement, for directions or Court orders concerning finalization of same or of matters expected to reasonably arise in the Litigation Schedule, not the hearing, and to book any motion dates contemplated thereby (for discovery/deposition motions) and periodic discovery conferences. |
| April 30 | Deadline for any Core Party who wishes to participate in the allocation dispute to deliver a pleading or opening submission styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought with respect to allocation, the material facts relied upon and legal bases for the allocation position being advanced by that Core Party at the Joint Hearing.  Each pleading/submission may be made individually, jointly by two or more Core Parties or by one Core Party adopting another Core Party's pleading/submission. |
| April 30 | Deadline for any of EMEA, NN AG, NN AS and the Trustees who dispute the disallowance of their claims to deliver affirmative pleadings (which may be deemed by them to serve as their Dispute Notices) setting forth, with reasonable particularity, the relief sought, material facts relied upon and legal bases for their claims and the grounds upon which they seek to challenge their disallowance (if made in the Ontario Court, the "Canadian Claims" and if made in the U.S. Court, the "U.S. Claims"). |

---

[2]    In event of a conflict between the Allocation Protocol, and the Cross-Border Claims Protocol Order, the Allocation Protocol (as approved by the Courts) shall be deemed to control.

| Due Date 2013/2014 | Step |
|---|---|
| April 30 | Deadline for the Core Parties who have delivered pleadings to reach agreement on the form of Confidentiality and Privilege Clawback Agreement (with a view to eventually incorporating it into Orders in both Courts), or to file motions seeking an interim order addressing these matters if agreement cannot be reached. |
| May 15 | Deadline for any Core Party who delivered an Allocation Position and who disputes the Allocation Position of any other Core Party to deliver a responding pleading, entitled "Allocation Response" which sets out with reasonable particularity the material facts relied upon and legal bases for any affirmative responses to the disputed Allocation Position advanced by any other Core Party or to designate its Allocation Position as its Allocation Response. Each of the responses may be made individually, jointly by two or more Core Parties or by one Core Party adopting another Core Party's Allocation Response. |
| May 15 | Deadline for any Core Party with standing to oppose any of the disputed disallowances of Canadian Claims or U.S. Claims to deliver a Response (including any counterclaim) to those claims, which may include by reference that Core Party's Allocation Position and Allocation Response. |
| May 17 | Deadline for delivery of limited written interrogatories seeking identification of (i) the roles and current locations of individuals with knowledge of the matters relevant to this litigation and (ii) the storage form and extent of the potentially relevant documents of these individuals, only by a Core Party who has responded to another Core Party's Allocation Position in the manner provided for herein or between the claimants and respondents to the Canadian and U.S. Claims. Further written (contention) interrogatories may only be made with the agreement of the Core Party to whom it is directed, or leave of the Court(s). |
| May 17 | Initial deadline for delivery by the U.S. Debtors, the Monitor, EMEA and the Trustees of limited reasonable and specific requests for production of non-privileged documents, from each other and any other Core Party who has responded to their Allocation Position, and as between themselves and any others who are claimants and respondents to either the Canadian or U.S. Claims with whom they have a dispute about those claims, in accordance with the Discovery and Deposition Plan. |

| Due Date 2013/2014 | Step |
|---|---|
| May 21 | Secondary deadline for delivery by any other Core Party of supplementary limited reasonable and specific requests for production of non-privileged documents, from any other Core party who has responded to their Allocation Position, and if they are a claimant or respondent to any of the U.S. Claims from any other Core Party with whom they have a dispute about those claims, in accordance with the Discovery and Deposition Plan. |
| May 24 | All Core Parties who have delivered and/or received identification interrogatories and/or document requests to meet and confer regarding the procedures and timing for responses and for dealing with any issues arising therefrom. |
| May 31 | Deadline for objections to document requests and identification interrogatories, in accordance with the Discovery and Deposition Plan. |
| May 31 | Subject to any objections, deadline for the recipients of document requests to commence rolling production of documents, in accordance with the Discovery and Deposition Plan. |
| June 21 | Subject to objections, deadline for completion of documentary production and responses to identification interrogatories, in accordance with the Discovery and Deposition Plan. |
| June 28 | Deadline to file motions to compel productions/responses to interrogatories objected to or not answered.  All Core Parties to attempt to resolve any discovery disputes in good faith and to file any necessary motions promptly. |
| June 28 | Deadline for identification by each Core Party of (i) its anticipated affiants as (non-expert) trial witnesses and whether they will be testifying to issues relating to Allocation, U.S. Claims and/or Canadian Claims, without prejudice to later identification of additional witnesses provided that other Core Parties have an opportunity to depose such witnesses before trial, and  (ii) for designations of which (if any) of that Core Party's previously filed sworn statements are being relied upon as evidence at trial whether they will be relied upon for issues relating to Allocation, U.S. Claims and/or Canadian Claims , in accordance with Discovery ad Deposition Plan. |

4

| Due Date 2013/2014 | Step |
|---|---|
| June 28 | Deadline for each Core Party to serve on any other Core Party that has responded to its Allocation Position, to whose Allocation Position it has responded, and/or with whom it has a dispute about the Canadian Claims or U.S. Claims, the topics on which it expects that other Core Party's party representative/discovery witness to be examined or deposed, in accordance with the Discovery and Deposition Plan. |
| June 28 | Deadline for each Core Party to designate up to 10 witnesses to be examined or deposed, subject to later additions for the reasons set forth in the Discovery and Deposition Plan, and to indicate whether it intends to cross examine on any affidavits/witness statements previously filed and that have been designated as trial evidence by any other Core Party, in accordance with Discovery and Deposition Plan. Witnesses may be designated for the purposes of examination upon matters on any issue to which that Core Party has pleaded, in Allocation, Canadian and/or U.S. Claims. |
| July 3 | Deadline for each Core Party to identify its representative to be examined for oral examination (discovery) who is knowledgeable about, or can become reasonably informed of, the topics identified by other Core Parties to be examined upon, in lieu of contention interrogatories (unless they are agreed or ordered to be taken in writing). |
| July 17 | Last possible date for hearing of motions to compel productions/responses to interrogatories objected to or not answered and/or motions for an Order to implement the protections contemplated by the Confidentiality and Privilege Clawback Agreement if not settled. |
|  | Motions arising out of documentary production and identification interrogatories may be adjudicated by a referee to be jointly appointed by the Courts. |
| August 16 | Deadline for each Core Party to identify experts and the subject matter of their reports, in accordance with the Discovery and Deposition Plan. |
| August 30 | Deadline to complete examinations, depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within two weeks of each examination), in accordance with the Discovery and Deposition Plan, with a preference to finish fact witness depositions prior to any representative party examinations (discovery). |

| Due Date 2013/2014 | Step |
|---|---|
| September 13 | Deadline for service by Core Parties of expert reports (including exhibits) in accordance with the Discovery and Deposition Plan. |
| September 13 | Deadline for service of motions arising from examinations, depositions and cross examinations (motions should be served earlier if disputes arise and cannot be resolved in the course of the witness examinations) |
| October 18 | Last possible date for hearing of any and all motions that any Core Party may wish to bring arising from the pleadings, discoveries, depositions or to otherwise resolve or narrow the issues for the Joint Hearing. <br><br> Motions arising out of discoveries/depositions may be adjudicated by a referee to be jointly appointed by the Courts. |
| October 18 | Deadline for service of each Core Party's responding experts' reports (including exhibits) in accordance with the Discovery and Deposition Plan. |
| November 22 | Deadline to complete deposition of experts in accordance with the Discovery and Deposition Plan. |

6

| Due Date 2013/2014 | Step |
|---|---|
| November 29 | Last possible date for hearing of any and all motions that any Core Party may wish to bring arising from expert reports and the depositions of experts. |
| | Motions arising from expert reports and the depositions of experts may be adjudicated by a referee to be jointly appointed by the Courts. |
| December 6 | Deadline for filing of opening written submissions with the Courts, including: |
| | a) Pre-trial briefs as referenced in Judge Gross's Proposed Final Pretrial Order; |
| | b) With respect to Allocation, all fact affidavits to be used as a party's trial testimony for its case in chief;[3] |
| | c) With respect to Allocation, a list of all exhibits each party intends to rely on as part of its case in chief;[3] |
| | d) With respect to the Canadian and/or U.S. Claims by any of EMEA, NN AG, NN AS and the Trustees, all fact affidavits to be used as those parties' trial testimony; and |
| | e) With respect to the Canadian and/or U.S. Claims by any of EMEA, NN AG, NN AS and the Trustees, a list of all exhibits those parties intend to rely on as part of their case in chief. |
| December 13 | Deadline for filing with the Courts: |
| | a) All fact affidavits to be used as a party's trial testimony in response to Canadian and/or U.S. Claims; and |
| | b) A list of all exhibits each party intends to rely on in response to Canadian and/or U.S. Claims. |

---

[3] The filings by this deadline shall be referred to as Original Filings. A Core Party may (i) file supplemental affidavits as trial testimony, (ii) file supplemental exhibits, (iii) identify supplementary portions of transcripts of depositions and examinations for discovery, if necessary to supplement the Original Filings. Such supplemental filings are permissible only to the extent that an affidavit or exhibit in the Original Filings of another Core Party dealt with a matter not reasonably anticipated, such that the Core Party's Original Filings do not adequately deal with that matter, and the supplemental filings are delivered as soon as possible.

| Due Date 2013/2014 | Step |
|---|---|
| Week of December 16 (if the Courts desire) | Pre-Trial Conference(s) – By this date, the Core Parties shall have met and conferred in an effort to reach agreement on: <br><br> a) the undisputed facts to be agreed upon for trial; <br> b) the contents of document briefs, including categorizing the documents by issue <br> for use at the Joint Hearing. <br><br> By this date, the Core Parties shall also have identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest. <br><br> All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |
| Commencing January 6, 2014 | The Courts will (a) hold simultaneously (i) joint hearings regarding Allocation, (ii) hearings before the Ontario Court on the merits of any remaining Canadian Claims, and (iii) hearings before the U.S. Court on the merits of any remaining U.S. Claims, provided however that the U.S. and Ontario Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant only to the Canadian Claims or only the U.S. Claims, and (b) after completing the joint hearings regarding Allocation, continue to complete the hearings of the Canadian Claims and the U.S. Claims; and (c) issue their respective decisions on (i), (ii) and (iii). |

Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the Courts in accordance with the usual practice. Any Core Party may also file a motion with the applicable Court(s) to modify this Litigation Timetable upon a showing of good cause.

\6184020

8

Schedule "A"
Monitor and Canadian Debtors

**Ontario Superior Court of Justice – Commercial List Court File No. 09-CL-7950**
**United States Bankruptcy Court for the District of Delaware Court file No. 09-10138(KG)**

**RE: IN THE MATTER OF NORTEL NETWORKS CORPORATION ET AL**

# DISCOVERY AND DEPOSITION PLAN
(Dated as of April 19, 2013)

| | | |
|---|---|---|
| 1. | **Definitions** | Capitalized terms used herein and not otherwise defined shall have the same meaning ascribed in the Litigation Timetable to which this document is a schedule and the Joint Discovery Scheduling Order. |
| 2. | **Applicable Procedural Regime:** | The following procedural regimes apply:<br><br>(a)   In the Ontario Superior Court of Justice, the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario; and<br><br>(b)   In the District Court of Delaware, the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court District of Delaware,<br><br>and may be referred to in respect of matters not otherwise addressed by the letter and intent of this Discovery and Deposition Plan, the Joint Discovery Scheduling Order, the Allocation Protocol and any other procedural orders of the Courts. |
| 3. | **Legal Issues For Determination at Trial:** | Each of the Core Parties shall have identified in their pleading(s) (Allocation Position, Allocation Response, Canadian Claims, U.S. Claims, and Response, as the case may be) exchanged pursuant to the Litigation Timetable to which this plan is annexed, their respective:<br><br>1.   statutory, common law or other legal premise(s) for each cause of action and/or defence asserted;<br><br>2.   the material facts relied upon in support of each cause of action and/or defence asserted; and<br><br>3.   the heads of damages and amount(s) claimed and/or sought to be set off under each cause of action asserted.<br><br>These pleadings shall determine the scope of relevance for this Discovery and Deposition Plan. |

- 2 -

| | |
|---|---|
| | Core Parties who have a dispute between them, by virtue of either or both having responded to the other's pleading (whether it be on Allocation, Claims or both), shall be considered "Opposing Core Parties". |
| 4.  **Scope of Documentary Discovery:** | **General Principles:**<br><br>*a) Definition of Documents*<br><br>References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the *Rules of Civil Procedure*.<br><br>*b) Reasonably Accessible Documents and Proportionality*<br><br>No Core Party will be required to search data sources, including applications and databases, that it reasonably understands already to be in the possession, custody or control of the Core Party making the request.<br><br>Each Core Party will search only reasonably accessible data, which excludes data that cannot be accessed without considerable burden, time or expense.<br><br>In light of the volume of the Debtors' hard copy documents maintained in off-site storage facilities, and the abundance of available overlapping electronic data, no Core Party is obligated to search hard copy documents, and rather will produce indices of such documents (to the extent they exist) and meet and confer in good faith regarding what hard copy documents will be made available for inspection upon request.  If any such documents inspected are copied for any requesting party, all other parties shall be notified and copies shall be provided to all parties at their own expense.  If any party creates an electronic version of those documents that party shall be responsible for loading the electronic version of the document(s) onto the Merrill Lextranet database in accordance with Appendix 1 hereto.<br><br>*c) Previously Produced Documents*<br><br>All documents already produced into the Merrill Lextranet database for the purpose of the several mediations in this proceeding are to be treated as having been produced in this litigation and any Core Party that does not already have such documents shall be provided access to the Merrill Lextranet database, subject to appropriate confidentiality, protective and/or sealing orders from the Court(s) and a provision allowing the Core Parties to clawback any privileged documents that may have been produced in the mediation context or that may be |

- 3 -

inadvertently produced under this Discovery and Disposition Plan.

*d) No Waiver of Privilege*

The fact that a document has been produced by any Core Party shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Core Party who asserts privilege over the document), any Core Party who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a confidentiality or protective order.

*e) Deemed Undertaking*

All of the Core Parties and their counsel shall be deemed to have undertaken not to use any evidence or information obtained in the course of the discovery (including document discovery and depositions) contemplated hereby for any purposes other than the litigation being conducted under the court-ordered Allocation Protocol and Litigation Timetable.

**Document Requests and Interrogatories**

*f) Document Requests*

Each Core Party shall be entitled to serve limited reasonable requests on any other Opposing Core Party for production of further non-privileged documents, to be specified and categorized with reference to the issues between the Core Parties as raised by the pleadings and to be accompanied by suggested sources and search parameters. Core Parties whose interests are aligned shall co-ordinate their efforts so that requests are streamlined to avoid repetition and overlap in the requests of other parties.

Core Parties will work in good faith to eliminate duplication and redundancy between document requests and will meet and confer about the discovery requests both before and after they have been made.

Core Parties will also work in good faith to streamline interrogatories so as to minimize duplication as between the different anticipated requests where interests can be aligned on particular topics or for particular Opposing Core Parties with interrogatories in common.

The Core Parties shall meet and confer as is reasonable and in accordance with the Litigation Timetable.

- 4 -

By no later than May 17, 2013

The U.S. Debtors, the Monitor, EMEA and the Trustees may deliver limited reasonable and specific requests for production of non-privileged documents, from each other and any Opposing Core Party, and as between themselves and any others who are claimants and respondents to either the Canadian or U.S. Claims with whom they have a dispute about those claims.

By no later than May 21, 2013

Any Core Party other than the U.S. Debtors, the Monitor, EMEA and the Trustees may deliver supplementary limited reasonable and specific requests for production of non-privileged documents, from any Opposing Core Party and, if they are a claimant or respondent to any of the U.S. Claims, from any other Core Party with whom they have a dispute about those claims, in accordance with the Discovery and Deposition Plan.

*g) Interrogatories*

By no later than May 17, 2013

An Opposing Core Party may deliver limited written interrogatories seeking identification of (i) the roles and current locations of individuals with knowledge of the matters relevant to this litigation and (ii) the storage form and extent of the potentially relevant documents of these individuals.    Further written (contention) interrogatories may only be made with the agreement of the Core Party to whom it is directed, or leave of the Court(s).

*h) Responses and Objections*

By no later than May 31, 2013

Core Parties may object to document requests and identification interrogatories. When objecting to any discovery request, the recipient of such discovery request shall state the basis for objection as provided for herein.  Objections may be made only on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), subsisting privilege and proportionality.

Rolling Production May 31 to June 21, 2013, each Core Party working in good faith towards the earliest practicable date for production:

Subject to any objections made and sustained if challenged (see motions procedure below), each Core Party shall produce any responsive non-privileged documents to any request made of it to all other Core Parties (to the extent they overlap, responses to multiple

- 5 -

request may be combined or cross-referenced to each other to avoid duplication), in accordance with Appendix 1.

In this same time frame, each Core Party shall produce any further documents that they may introduce into evidence at trial that are not already stored in the Merrill Lextranet database.

By no later than June 28, 2013

Any Core Party who served a document request or interrogatory, and who seeks to compel production of a document or answer to an interrogatory, must do so by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on 7 days notice on all other Core Parties and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The Core Party whose objection is challenged shall respond to this motion within 4 days and any other Core Party whose interests are affected by the request may serve a supplementary response within 2 days thereafter.    All Core Parties shall attempt to resolve any discovery disputes in good faith and to file any necessary motions promptly.

Such motions to be heard by July 17, 2012 or as otherwise ordered by the Courts.

*i) No Waiver of Rights or Defences*

Agreement to accept and respond to a discovery request does not constitute submission to jurisdiction or a waiver of rights or defences for any other purpose.

| | | |
|---|---|---|
| 5. | **Format of Production of Records:** | **Format for Exchange of Electronic Records:** Electronic documents to be produced in accordance with Appendix 1.

**Format for Exchange of Paper Records:** If a record only exists in hard copy and there is no electronic version, at the option of the producing party or any party who inspects and obtains a copy of it, it may be scanned and produced in accordance with Appendix 1 hereto. |
| 6. | **Trial Witness Identification** | By no later than June 28, 2013

Each Core Party shall identify (i) its anticipated affiants as (non-expert) trial witnesses and whether they will be testifying to issues relating to Allocation, U.S. Claims and/or Canadian Claims, without prejudice to later identification of additional witnesses provided that the failure to identify that witness by June 28, 2013 was for good cause, and the other Core Parties have an opportunity to depose such |

- 6 -

witnesses before trial, and  (ii) for designations of which (if any) of that Core Party's previously filed sworn statements are being relied upon as evidence at trial whether they will be relied upon for issues relating to Allocation, U.S. Claims and/or Canadian Claims.

A Core Party may identify trial witnesses at a later date provided that any Opposing Core Party has had or will have a reasonable opportunity to depose the later-identified witness before trial about the subject matter of their expected testimony.

Should a Core Party wish to present evidence at trial from a witness who is not willing to swear an affidavit, such witness shall be identified at this same time, and leave of the Court(s) sought by the Core Party seeking to rely on their evidence to take that witnesses' testimony by deposition (examination out of court) so as to preserve their testimony so it can be submitted by the Core Party as evidence at trial.

| | |
|---|---|
| 7.  **Oral Examinations out of Court** | **A.  Examinations of Core Party Representatives**<br><br>By no later than June 28, 2013<br><br>Each Core Party shall serve on any Opposing Core Party the topics on which it expects the Opposing Core Party's discovery witness to be examined or deposed upon.<br><br>By no later than July 3, 2013<br><br>Each Core Party shall identify its representative (who may, but is not required to be, a current or former officer, director or employee of that Core Party) to be examined for oral examination (discovery), who is knowledgeable about, or will become reasonably informed of, the topics identified by other Opposing Core Parties to be examined upon, in lieu of contention interrogatories (unless they are agreed or ordered to be taken in writing).<br><br>Use of (Discovery) Answers at Trial<br><br>Testimony of discovery representatives may be used as evidence at trial only by Opposing Core Parties whose interests are adverse to those of the proffering Core Party on the issue for which the evidence is being used. |
| | **B. Oral Depositions:**<br><br>By no later than June 28, 2013<br><br>Each Core Party may designate up to 10 fact witnesses (which may be third parties, persons subject to the control of a Core Party or both and |

- 7 -

which may be persons who have been identified as trial witnesses by another Core Party or whose previously sworn statements have been designated by a Core Party as trial evidence) whom it seeks to examine to obtain factual information/admissions relevant to the issues raised by the pleadings of that Core Party  and any persons whose previously filed affidavits/witness statements have been designated by a Core Party as trial evidence, by serving a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or United States Federal Rule of Civil Procedure 30, as applicable, on the solicitors or counsel of record for any other Core Party or by service of subpoena or other process on counsel for the third party (or if not known to be represented, by serving the subpoena or other process directly on the third party). Each witness shall be named and his/her place of residence (if known) shall be identified.

All Core Parties shall have the right to ask questions of any witnesses who is designated by any party to be deposed but if more than one party designates the same witness that witness shall only be deposed one time.

Use of Depositions at Trial:

Designated portions of any deposition may be filed as part of the evidence that any party may rely upon at trial (subject to objections which may be ruled upon by the Court as contemplated herein), except that testimony of a deponent who is employed by, party to a cooperation agreement with or otherwise under the control of a Core Party may not be relied upon as evidence by that Core Party or by others sharing its interests on the issue to which the testimony relates.

If a witness who has been deposed is later called as a witness to give *viva voce* evidence at the trial, the transcript (or designated portions thereof) will still form part of the trial evidence and the entire transcript may also be used to impeach the witness or challenge his/her credibility.

Use of Cross Examinations at Trial:

If a witness who previously swore an affidavit or made a statement in these proceedings and whose prior evidence is designated by a Core Party to be tendered at trial is cross examined prior to trial, the entire cross examination transcript will form part of the trial evidence.

**C.    Deadline for all Examinations,  Cross-Examinations  and Depositions:**

All to be completed by no later than August 30, 2013

- 8 -

All examinations, depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within two weeks of each examination) shall be completed by this deadline, with a preference to finish fact witness depositions prior to any representative party examinations (discovery).

Once all fact witnesses have been identified, the relevant Core Parties shall attempt to agree on a schedule that contemplates the completion of all witness examinations, cross-examinations and depositions ("Examinations") in this time frame that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness). Each Examination shall be co-ordinated so that a lead examiner is identified and the order of Examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness who has been designated to be examined by up to 3 Core Parties shall be examined for longer than 7 hours in total (by all Core Parties combined) and any single witness designated by more than 3 Core Parties shall not be examined for more than 14 hours, without leave of the Court(s) or the agreement of all Core Parties.

All motions arising from Examinations to be served by September 13, 2013, to be heard by October 18, 2013 or as otherwise ordered by the Courts.

| 8. Experts | By no later than August 16, 2013 |
|---|---|

Each Core Party that intends to rely on the opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

By no later than September 13, 2013

Each Core Party shall deliver an affidavit or a report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by bates number if previously produced, and containing the disclosures required under Rule 26(a)(2) (B) of the United States Federal Rules of Civil Procedure and Rule 53.03 of the Ontario Rules of Civil Procedure regarding the expert's qualifications, prior engagements, compensation and independence.

Any Core Party that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial. If not so designated, those previously

filed affidavits and/or reports shall not constitute part of the evidence at trial.

By no later than October 18, 2013

Each Core Party shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another Core Party that addresses an issue that is adverse to any position of the Core Party in this litigation. Responses shall be permitted even if the Core Party did not initially tender an expert's affidavit or report, if an issue is raised by an expert whose evidence is tendered by another party that calls for response. Responsive reports shall be limited to responding to issues on which an affirmative expert has been proffered and shall not go beyond such issues.

By no later than October 25, 2013

Any Core Party who wishes to cross examine an expert of an Opposing Core Party may serve notice of its intention to do so, regardless of whether or not that party has filed its own expert evidence.

October 25 to November 22, 2013

The Core Parties will attempt to agree to a schedule that contemplates the completion of all expert witness depositions between the notice date and this date that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness).

Each examination shall be co-ordinated so that a lead examiner is identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness shall be examined for longer than 14 hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of all Core Parties.

The affidavits and transcripts of depositions of the experts shall be filed as evidence with the court at the trial, subject only to cross examination at trial and any applicable objections (including, without limitation, as to qualifications) that may be made and determined at the outset of the trial and directions from the Court(s) arising therefrom. The Core Party proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial

cannot be filed as evidence unless agreed to by all Core Parties adverse to the expert's evidence.

Motions Concerning Experts:

Any motions arising from expert reports and depositions of experts are to be made promptly and heard by November 29 or as otherwise ordered by the Courts.

Communications with Experts:

The experts shall not be examined about or asked to produce prior drafts of their affidavits/reports and/or their communications with counsel who retained them (although they may be asked to disclose the specific questions they were asked to answer).

| 9. | General Procedure Applicable to all pre-trial Examinations | Attendance at Oral Examinations/Depositions |
|---|---|---|

Attendance at Oral Examinations/Depositions

For the avoidance of doubt, all Core Parties shall have the right to attend all oral Examinations that relate to any issue, regardless of whether or not they have a right to examine that witness.

Coordinating Oral Examinations/Depositions:

Each Examination shall be coordinated so that a lead examiner is identified. Lead examiners shall work in good faith with any others who are participating in the examination to try to use the available time most efficiently and avoid, to the extent possible, duplication of questions.

Transcripts and video taping:

All Examinations shall be taken under oath and transcribed and the transcripts made available to all Core Parties, whether or not they are in attendance at the examination. At the option of any examining party, the Examination may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining party(ies) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

Objections:

Objections may be made on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), form, subsisting privilege and proportionality only. An objection to form shall not be made solely on the basis that a question is leading unless the deponent is employed by, party to a cooperation agreement with or otherwise under the control of the Core Party represented by the questioner.

Questions that are objected to solely on grounds of relevance or form shall be answered under reserve of that objection. All other objections shall be preserved.

<u>Requirement for Summons:</u>

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Estates and the Joint Administrators shall assist in issuing process or otherwise procuring a witness's attendance irrespective of which Core Party has sought the witness's deposition. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment to that jurisdiction for any other purpose.

<u>Undertakings:</u>

The witness shall answer any undertakings that were agreed to on his/her examination within two weeks of the date of his/her examination.

**10. General Terms**

Any Core Party may make a motion to the Court to compel another Core Party to take the steps contemplated by the Discovery and Deposition Plan or other steps, and the Parties agree that the Court(s) may take the existence of the Discovery and Deposition Plan into account in determining whether to grant the Order sought. The respondent on such a motion may seek to justify its non-compliance with the Discovery and Deposition Plan on the basis of, among other things, any information that was unknown or unavailable to that Party at the time the Discovery and Deposition Plan was entered into.

Breach of this Discovery and Deposition Plan does not, in and of itself, give rise to a right to damages or any other monetary relief, or to injunctive relief, although the Core Parties agree that the Court(s) may take any breach of this Discovery and Deposition Plan into account in exercising discretion with respect to costs or other sanctions, or on an application for injunctive relief.

The Core Parties recognize that, as additional information becomes available throughout the litigation, it may become apparent that: (a) it is impracticable or impossible for a Core Party to comply with the terms of the Discovery and Deposition Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery and Deposition Plan, are required in order for a Core Party to obtain access to relevant documents in the litigation. Each Core Party agrees to notify the other Core Parties promptly when it knows that it will not comply with any term of the Discovery and

- 12 -

Deposition Plan or when it concludes that another Core Party should take further steps beyond those set out in this Discovery and Deposition Plan. The Core Parties agree to negotiate in good faith with respect to any amendments to the Discovery and Deposition Plan requested by a Core Party on the basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Core Parties.

The Core Parties shall meet and confer in good faith without the assistance of the Court(s) and attempt to resolve any disputes in the interpretation or implementation of the Discovery and Deposition Plan. Core Parties are required to promptly seek relief from the applicable Court(s) once an impasse has been reached in any dispute. This relief may be raised for the Court(s) for initial consideration at an informal case conference before taking any other procedural steps by way or motion or otherwise as long as that can be arranged promptly.

All motions or directions sought from the Court(s) pursuant to this Discovery and Deposition Plan shall be brought to Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and/or Justice Morawetz of the Ontario Superior Court of Justice as the case may dictate, or any referee who they may direct:

Prepared and agreed upon by:

**[To be signed by Counsel of Record for each Core Party]**

- 13 -

# APPENDIX 1

Format for Exchange of Productions: Productions will be exchanged by loading each production into the Merrill Lextranet database with the following objectively coded metadata, if reasonably possible, and in the following form: **[NTD: Subject to confirmation by Merrill.]**

| Item | Field | Field Type | Description | Format |
|---|---|---|---|---|
| Document Numbering | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note text | Docid(s) attached to Parentid | AA0000001 |
| Fields/Coded Data for E-mails | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents and attachments. | As per metadata |
| Fields/Coded Data for Attachments and Loose Electronic Documents | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents and attachments. | As per metadata |
| Fields/Coded | *Docdate* | Date | Date of document (subjectively coded) | MM/DD/YYYY |

- 14 -

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| Data for Paper Documents | *Doctype* | Note Text | Type of document (subjectively coded) | |
| | *Doctitle* | Note Text | Title of document (subjectively coded) | |
| | *Attach#* | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | *Author* | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | *Recip* | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| Fields/Coded Data for Paper and Electronic Documents (Chronological Review) | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| Redactions | *Redact* | Note | Document has redactions | "Redacted" stamped on document |

1.  Each document shall be individually produced with a unique document ID number.

2.  OCR text searchable, to the extent the document permits.

3.  All images will be single page tiff format (excluding spreadsheets which will be provided in native format) with 300 dpi specifications.  Spreadsheets to be provided in native format.

\6181973

Court File No. 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding Commenced At Toronto

**SUBMISSIONS OF THE MONITOR AND CANADIAN DEBTORS CONCERNING LITIGATION TIMETABLE AND DISCOVERY PLAN DATED APRIL 19, 2013**

| | |
|---|---|
| **Goodmans LLP** | **Gowling Lafleur Henderson LLP** |
| Barristers & Solicitors | Barristers & Solicitors |
| Bay Adelaide Centre | 1 First Canadian Place |
| 333 Bay Street, Suite 3400 | 100 King Street West, Suite 1600 |
| Toronto, ON  M5H 2S7 | Toronto, ON  M5X 1G5 |
| | |
| **Jay Carfagnini** LSUC#: 22293T | **Derrick Tay** LSUC#: 21152A |
| **Joseph Pasquariello** LSUC# 37389C | **Jennifer Stam** LSUC#: 46735J |
| **Benjamin Zarnett** LSUC#: 17247M | |
| **Peter Ruby** LSUC #: 38439P | |
| | |
| Tel:     416.979.2211 | Tel:   416-862-5697 |
| Fax:    416.979.1234 | Fax:  416-862-7661 |
| | |
| Lawyers for the Monitor, | Lawyers for the Canadian Debtors |
| Ernst & Young Inc. | |