IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------ x
In re:                                           :   Chapter 11
                                                 :
                                                 :   Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹                   :
                                                 :   Jointly Administered
                    Debtors.                     :
                                                 :   Hearing Date: April 24, 2013 at 10:00 a.m.
                                                 :   Submission Deadline: April 23, 2013 at 12:00 p.m.
                                                 :
------------------------------------------------ x
```

**SUBMISSION OF THE TRUSTEE OF NORTEL NETWORKS UK PENSION PLAN AND THE BOARD OF THE PENSION PROTECTION FUND IN RESPONSE TO THE DEBTORS' PROPOSED DISCOVERY PLAN AND <u>LITIGATION TIMETABLE</u>**

Pursuant to this Court's order, dated April 16, 2013, the Trustee (the "Trustee") of Nortel Networks UK Pension Plan (the "Plan") and the Board of the Pension Protection Fund (the "PPF," and together with the Trustee, the "U.K. Pension Claimants") hereby respectfully make this submission in response to the Debtors' proposed Discovery Plan and Litigation Timetable. In support of this submission, the U.K. Pension Claimants, by and through their undersigned counsel, respectfully state as follows:

1. As the largest single creditor in the global Nortel insolvency, the U.K. Pension Claimants have a vital interest in ensuring that the remaining issues in these proceedings are resolved as fairly and as efficiently as possible. To that end, the U.K. Pension Claimants have

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332) ("NNI"), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226) ("NN CALA").

{BAY:02266081v1}

engaged in discussions and negotiations with various constituencies over the last few weeks with a view to reaching consensus on a Discovery Plan and Litigation Timetable that will govern further proceedings in connection with the Allocation Dispute, the claims of the Joint Administrators of the EMEA estate against the relevant North American Nortel estates and the U.K. Pension Claimants' claims against the relevant North American Nortel estates (the "EMEA Claims" and the "U.K. Pension Claims," respectively).  On April 17, 2013, however, the Joint Administrators of the EMEA estate filed a notice of appeal from the Court's Order, entered April 3, 2013, denying the Joint Administrators' cross-motion to compel arbitration of the Allocation Dispute.  The filing of that notice of appeal automatically divested the Court of jurisdiction over the Allocation Dispute while the appeal remains pending.  *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 214 (3d Cir. 2007).  Without prejudice to that position, the U.K. Pension Claimants are submitting, as Exhibits A and B, proposed revisions to the versions of those documents filed by the Debtors on Friday April 19, 2013 [D.I. 10210, Exs. A-B].  The purpose of this submission is to highlight for the Court and the parties certain specific concerns of the U.K. Pension Claimants with the Debtors' proposals.

2.    *First*, while the U.K. Pension Claimants fully support the Court's direction that these proceedings should be resolved as expeditiously as possible, the Debtors' proposed Litigation Timetable is unnecessarily truncated, inasmuch as it "front-loads" the most labor-intensive phase of the litigation – document discovery and depositions – in a short period lasting approximately 16 weeks and ending by August 30, 2012.  In a case such as this – where most witnesses are no longer under the control of the parties, who reside in multiple jurisdictions and who will likely need to be compelled to appear for a deposition – a timetable that contemplates document productions completed by June 21 and all fact depositions completed by August 30 is

{BAY:02266081v1}

- 2 -

simply unrealistic and unworkable. Moreover, that schedule is wholly unnecessary given a trial date of January 6, 2014. For that reason, the U.K. Pension Claimants have proposed adjustments to various *interim* discovery deadlines to accommodate a more realistic schedule, but without affecting the *final* January 6, 2014 trial date set by the Court in its April 3 Order.

3.  *Second*, the proposed Litigation Timetable and Discovery Plan specifically prejudice the U.K. Pension Claimants by including them, for purposes of deposition discovery, in the EMEA Allocation Group, which is limited to designating a total of ten fact witnesses to depose. [D.I. 10210, Ex. A at 5, Ex. B at 9.] Although the U.K. Pension Claimants' interests may align with other members of the EMEA Allocation Group in certain respects, those interests are not aligned in all respects: the U.K. Pension Claimants assert claims against several debtors within the EMEA estate. Moreover, the U.K. Pension Claimants' claims against NNI and NN CALA here and against the Canadian Debtors in Canada derive from entirely different legal bases than the claims of the Joint Administrators of the EMEA estate against the North American Debtors. It is therefore inappropriate for the U.K. Pension Claimants and the Joint Administrators to be lumped together and limited to a total of ten fact depositions between them.[2]

4.  More importantly, limiting the total number of fact witnesses who can be deposed – regardless of whether they must be shared with another party – severely restricts the evidence that the U.K. Pension Claimants will be permitted to introduce at trial. Virtually none of the witnesses whom the U.K. Pension Claimants are likely to call at trial are under their control. Nor do they reside within the subpoena power of this Court. *See* Fed. R. Civ. P. 45; Fed. R. Bankr. P.

---

[2] During the meet-and-confer process, the Debtors proposed granting the U.K. Pension Claimants an additional six depositions. The U.K. Pension Claimants rejected that proposal, however, because it is wholly unreasonable to expect them to agree to such a limitation *before* they have received either the Debtors' response to the U.K. Pension Claims or any document discovery of any kind.

9016. Unless these witnesses agree to appear at trial, the only way that the U.K. Pension Claimants will be able to introduce their testimony at trial will be through their depositions. *See* Fed. R. Civ. P. 32(a)(4); Fed. R. Evid. 804. In the context of these proceedings, where the sums at stake are enormous and the pensions of 38,000 former Nortel employees hang in the balance, a preordained numerical restriction on the number of depositions raises serious due process concerns. When the Court issued the Automatic Stay Order declaring the U.K. Regulatory Proceedings null and void with respect to the Debtors and held that it would determine the U.K. Pension Claimants' Claims applying U.K. law, the Debtors never suggested that the U.K. Pension Claimants would have any less opportunity to prove their case before this Court than the Pensions Regulator had in the U.K. before the Determinations Panel. But that is precisely what the Debtors' proposed Discovery Plan does by severely limiting the U.K. Pension Claimants' ability to present trial evidence. An arbitrary predetermined limit – fixed before document productions have begun and trial witnesses identified – of ten depositions to be shared with the Joint Administrators of the EMEA estate for purposes of the Allocation Dispute, the EMEA Claims and the U.K. Pension Claims does not comport with due process.[3]

5.    *Third*, the proposed Discovery Plan purports to restrict document discovery to electronic documents, and require only the production of "indices" of hard copy documents "to the extent [such indices] exist." [D.I. 10210, Ex. B at 2].[4] That arbitrary limitation contravenes

---

[3]   During the meet-and-confer process, the Debtors offered to allow the U.K. Pension Claimants to designate additional trial witnesses for deposition, but only on the following conditions (i) the U.K. Pension Claimants certify that they made all reasonable efforts to have these witnesses available to testify at trial voluntarily, but were unsuccessful in doing so, and (ii) the Debtors are permitted to depose each witness twice (first as a discovery deposition and then the following day on cross-examination, after direct examination by the U.K. Pension Claimants). There is no basis in the Federal Rules to impose either of these conditions. Moreover, given the truncated schedule the Debtors propose, permitting the Debtors to depose witnesses twice is an unnecessary waste of scarce time.

[4]   In fact, the Debtors propose to limit even electronic discovery by relieving themselves of searching for "data located in decommissioned applications and data that cannot be accessed without considerable

{BAY:02266081v1}

the Debtors' discovery obligations under the Federal Rules: "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(E)(i).[5] Merely providing whatever indices the Debtors may happen to have for their hard copy documents – which, by the Debtors' own admission, total "approximately 200,000 to 250,000 boxes" [D.I. 3965 ¶ 17] – and demanding that the U.K. Pension Claimants identify from those indices which documents are responsive to their own discovery requests is patently insufficient to comply with the Debtors' obligations under Rule 34. *See Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 411 (N.D. Ill. 2007) ("Under these circumstances … it is not proper under Rule 34(b) to simply provide plaintiff with access to the Master Index and the warehoused documents.").

6.  Nor is there any doubt that such a limitation would unduly prejudice the U.K. Pension Claimants. Adjudication of the U.K. Pension Claims will involve, among other things, issues concerning the relationship among the Plan, NNUK and the North American Debtors dating back to the early 1990s – a time when few, if any, electronic documents existed. [D.I. 4108 ¶ 31.] As a result, the Debtors' proposal to relieve themselves of their obligation to search and produce relevant hard copy documents would materially prejudice the U.K. Pension Claimants by depriving them of a substantial volume of documents likely relevant to their claims. To the extent the Debtors believe – *after* reviewing the U.K. Pension Claimants' request for production of documents – that retrieval and production of certain categories of hard copy documents would pose an undue burden, the parties can meet and confer in good faith in an

---

burden, time or expense." [D.I. 10210, Ex. B at 1-2]. Such broad undefined limitations on discovery set in advance and in a vacuum are unwarranted and fundamentally unfair. Issues as to the permissible scope of discovery should be addressed by the parties as they arise and, if agreement cannot be reached, by the Court in the context in which they arise.

[5] This Rule governs the Debtors' document discovery obligations here. *See* Fed. R. Bankr. P. 9014(c).

{BAY:02266081v1}

attempt to agree on an efficient means of making such materials available for inspection. If the parties are unable to reach agreement, the issue can be presented to the Court at that time. The Debtors' proposal – a preordained blanket exclusion of hard copy documents from the scope of permissible discovery – cannot be reconciled with the U.K. Pension Claimants' fundamental right to due process.

7.  Moreover, the indices that the Debtors propose to produce are, by their own admission, not comprehensive, inasmuch as the Debtors propose to provide indices only "to the extent they exist" [D.I. 10210, Ex. B at 2], as opposed to indices to all of the "approximately 200,000 to 250,000 boxes" that they concededly possess [D.I. 3965 ¶ 17]. Indeed, the Debtors have provided neither the U.K. Pension Claimants nor the Court with even the most basic information regarding the indices that they propose to produce in lieu of hard copy documents, such as the volume of documents they cover and their level of detail. And, of course, the burden the Debtors will face in searching for hard copy documents will depend on the scope of the document requests with which they are served. The U.K. Pension Claimants submit that it is simply premature for the Court to grant the Debtors a blanket exemption relieving them under any circumstances from the obligation to search their own files for responsive documents.

**CONCLUSION**

WHEREFORE, the U.K. Pension Claimants respectfully request that the Court approve the U.K. Pension Claimants' revised versions of the Discovery Plan and Litigation Timetable.

Dated: Wilmington, Delaware
April 23, 2013

BAYARD, P.A.

*/s/ Justin R. Alberto*
Charlene D. Davis (DE No. 2336)
Justin Alberto (D.E. No. 5126)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
Tel: (302) 655-5000
Fax: (302) 658-6395

-and-

WILLKIE FARR & GALLAGHER LLP
Marc Abrams
Brian E. O'Connor
Sameer Advani
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

*Counsel for the Trustee of Nortel Networks UK Pension Plan and the Board of the Pension Protection Fund*

*9401048*

{BAY:02266081v1}

- 7 -