accessible data, ~~which excludes data located~~.  A Discovery Participant who believes that responsive materials are reasonably likely to be found in a decommissioned ~~applications and data~~application or in storage media that cannot be accessed without considerable burden, time or expense:

 shall give prompt notice of this in its response to a document request, and shall meet and confer in good faith with the requesting party or parties regarding the cost and practicality of accessing such responsive materials giving attention to the principle of proportionality.

A Discovery Participant shall not be required to re-produce a document that has already been produced by another Discovery Participant and the same document shall not be required to be produced by more than one Discovery Participant. In light of the volume of the Debtors' hard copy documents maintained in off-site storage facilities, and the abundance of available and overlapping electronic data, no Discovery Participant will be obligated to search such hard-copy documents, and rather will produce indices of such hard-copy documents (to the extent they exist) with their responses to any document request and shall meet and confer in good faith with the requesting party or parties regarding hard-copy documents that will be made available for inspection upon request. If any such documents inspected are copied for any requesting party, all other parties shall be notified and copies shall be provided to all parties at their own expense. If any party creates an electronic version of those documents, that party shall be responsible for loading the electronic version of the document(s) onto the Merrill Lextranet database in accordance with Schedule A hereto to the extent reasonable and not overly burdensome.

*c) Previously Produced Documents*

~~All documents~~Documents produced into the Merrill Lextranet database for the purpose of the several mediations in this proceeding ~~are to~~may be treated as having been produced in the Allocation, US Claims and Canadian Claims litigation provided the producing party can supply metadata and otherwise meet the specifications set forth in Schedule A, and any Discovery Participant that does not already have such documents shall be provided access to this Merrill Lextranet database, subject to an appropriate confidentiality, protective and/or sealing orders from the Court(s) and a provision allowing the Discovery Participants to clawback any privileged documents that may have been produced in the mediation context or that may be produced under this Discovery Plan.

*d)   No Waiver of Privilege*

The fact that a document has been produced by any Discovery Participant shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Discovery Participant who asserts privilege over the document), and any Discovery Participant who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in

2

a confidentiality or protective order.

*e)   Deemed Undertaking*

All of the Discovery Participants and their respective Representatives shall be deemed to have undertaken not to use any evidence or information obtained in the course of discovery (including document discovery and depositions) contemplated hereby for any purposes other than the Allocation, US Claims and Canadian Claims litigation, as well as in any other disputes, claims reconciliation processes or proceedings that may exist or arise between any Discovery Participants.

*f)   Document Requests*

By no later than May 10, 2013

For Allocation, each Allocation Group shall be entitled to serve limited reasonable requests for production of non-privileged documents, such requests to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to making such requests, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the document requests of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 17, 2013 to seek agreement with a Discovery Participant from whom it seeks documents and, failing agreement, to seek leave of the Courts to make additional document requests if it believes in good faith that such requests are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited reasonable requests for production of non-privileged documents on each opposing US Claim Party. The US Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited reasonable requests for production of non-privileged documents on the Canadian Debtors, provided that any disputes between the EMEA Claimants Group, the UK Pension Claimants, or the US Claims Defendant Group and the Canadian Debtors regarding such discovery shall be resolved at a joint hearing of the Courts and the by the US Court. The Canadian Debtors' agreement to accept such discovery requests and submit to the US Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited reasonable requests for production of non-privileged documents on each opposing Canadian Claim Party. The Canadian Claims Defendant

3

Group and the Bondholder Group shall confer on such requests. In addition, the Canadian ~~Claims Defendant~~EMEA Claims Group , the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve ~~limited reasonable~~ requests for production of ~~non-privileged~~ documents on the US Debtors, provided that any disputes between the Canadian EMEA Claims Group, the UK Pension Claimants or the Canadian Claims Defendant Group and the US Debtors regarding such discovery shall be resolved ~~at a joint hearing of the Courts and the~~by the Canadian Court. The US Debtors' agreement to accept such discovery requests and submit to the Canadian Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation document requests and US Claims/Canadian Claims document requests. ~~Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an~~An Allocation Group or Claim Group ~~may~~ ~~obtain leave to~~ serve additional document requests ~~upon a showing of~~after May 10, 2013 if it determines, in good ~~cause.~~ faith, that this is reasonably necessary.

### g) Interrogatories

**By no later than May 10, 2013**

For Allocation, each Allocation Group shall be entitled to serve ~~a limited number of reasonable identification interrogatories~~Identification Interrogatories, such interrogatories to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant (not to exceed ten on any Discovery Participant); provided that the Bondholder Group, prior to serving such interrogatories, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden.   An interrogatory that seeks contact details, party control status and like information for multiple named individuals shall be considered one interrogatory for purposes of the limit on the number of interrogatories.   The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the interrogatories of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 17, 2013 to seek agreement with a Discovery Participant on whom it wishes to serve interrogatories and, failing agreement, to seek leave of the Courts to serve additional interrogatories if it believes in good faith that such interrogatories are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve a ~~limited number of reasonable identification interrogatories~~Identification Interrogatories on each opposing US Claim Party (not to exceed ten on any Discovery Participant).   ~~The US Claims Defendant Group~~An interrogatory

4

that seeks contact details, party control status and the Bondholder Grouplike information for multiple named individuals shall conferbe considered one interrogatory for purposes of the limit on suchthe number of interrogatories. In addition, the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve a limited number of reasonable identification interrogatoriesIdentification Interrogatories on the Canadian Debtors, provided that any disputes between the US EMEA Claimants Group, the UK Pension Claimants or the US Claims Defendant Group and the Canadian Debtors regarding such discovery shall be resolved at a joint hearing ofby the Courts and theUS Court. The Canadian Debtors' agreement to accept such interrogatories and submit to the US Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve Identification Interrogatories on each opposing Canadian Claim Party (not to exceed ten on any Discovery Participant). An interrogatory that seeks contact details, party control status and like information for multiple named individuals shall be considered one interrogatory for purposes of the limit on the number of interrogatories. In addition, the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the US Debtors, provided that any disputes between the Canadian EMEA Claimants Group, the UK Pension Claimants or the Canadian Claims Defendant Group and the US Debtors regarding such discovery shall be resolved by the Canadian Court. The US Debtors' agreement to accept such interrogatories and submit to the Canadian Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation interrogatories and US Claims interrogatories. Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional identification interrogatories upon a showing of good cause.

The availability of contention interrogatories shall be decided by mutual agreement among the Discovery Participants at a later date, and, failing agreement, by the Court(s).

*h) Responses and Objections*

**By no later than May 31, 2013**

When objecting to any discovery request, the recipient of such discovery requests shall state the basis for objection, which may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Recipients are strongly encouraged to prepare joint objections to the

5

same document request or interrogatories to the extent their objections overlap.

*i) Production of Documents*

Rolling Productions of Documents Shall Commence May 31, 2013 and Shall Be Substantially Completed by ~~June 21~~July 31, 2013;

Subject to any objections made and sustained if challenged (see motions procedure below), each recipient of a document request shall produce any responsive non-privileged documents to any request made of it to all Discovery Participants by producing such documents into the Merrill Lextranet database (to the extent they overlap, responses to multiple requests may be combined or cross-referenced to each other to avoid duplication).

In this same time frame, each Discovery Participant shall produce any further documents that they intend to rely upon at trial that are not already part of the mediation productions or responsive productions.

*j)* Motions to ~~*Compel*~~/Challenge Objections to Initial Document ~~*Production*~~

~~Motions to Compel Document Productions Must~~RequestsMust Be Filed by ~~June 28~~August 7, 2013

Any Discovery Participant who served document requests and who seeks to compel production of a document must do so only after meeting and conferring in good faith with the Discovery Participant against whom a motion is contemplated, and thereafter by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on seven business days notice on all Discovery Participants, and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The Discovery Participant whose objection is challenged shall respond to this motion within four business days and any other Discovery Participant whose interests are affected by the request may serve a supplementary response within two business days thereafter.

Notwithstanding this deadline, whenever a discovery dispute arises, the affected Discovery Participants shall promptly attempt to resolve the dispute in good faith and, if an impasse is reached, file any motions with the relevant Court(s) promptly.

*k) Privilege Logs*

~~Should a Discovery Participant withhold any document based on a claim of privilege or work product protection, the producing party shall provide a privilege log containing details about the category of documents withheld, including at least the following information for each category: (a) the discovery participant asserting the privilege; (b) the subject matter of the category; (c) the date range; and (d) the author(s) and other recipients.~~

6

If any party declines to produce a requested document, in whole or in part, based on an assertion of the attorney-client privilege, the work-product doctrine, or other legal privilege, that party shall provide a privilege log specifying as to each such document or portion thereof not produced, the specific privilege(s) or doctrine(s) relied upon, along with sufficient facts to establish the basis for asserting the privilege. The privilege log shall provide sufficient detail to permit the requesting party to assess whether there is an adequate basis for assertion of the privilege, including but not limited to: (i) the type of document; (ii) the date of the document; (iii) the author(s) of the document, including title and employer; (iv) the general subject matter of the document; (v) all recipients of the document (including addressees, cc's and bcc's), including titles and employers; (vi) beginning and ending bates numbers of the document; and (vii) the custodian of the document, including where the document was maintained (whether in physical or electronic form) prior to the petition date. Privilege logs shall be provided in Microsoft Excel format or a similar electronic format that allows for text searching and organization of data.

The following documents, to the extent created after the commencement of the bankruptcy proceedings, presumptively need not be included on a privilege log: (a) communications exclusively between a Discovery Participant and its outside counsel or (b) work product created by outside counsel and/or such counsel's agents.

Responsive documents which are jointly privileged as to two or more of the Discovery Participants shall be produced, but only to those Discovery Participants with whom the joint privilege is shared.

| 4. | Format of Production of Electronic Records: | For each electronic document, the responding party shall provide the metadata specified in Schedule A, but only to the extent they can reasonably be extracted or otherwise provided in a delimited text file. |
| 5. | Trial Witness Identification | By no later than ~~June 28~~August 7, 2013 |

Each Discovery Participant shall identify any fact (non-expert) witnesses it anticipates calling or presenting testimony of at trial, by name, employer, title and functional role held during the time period relevant to their anticipated testimony. A Discovery Participant may identify trial witnesses at a later date provided that ~~(a) the failure to identify that witness by June 28, 2013 was for good cause, and (b)~~ any opposing Allocation Group or Claim Group has had or will have a reasonable opportunity to depose the later-identified witness before trial, regardless of the fact discovery cut-off or number of depositions taken.

Any Discovery Participant that has previously filed an affidavit or witness statement in the context of this litigation (the Ontario and Delaware proceedings) may also, at its option, choose to designate that evidence to be tendered at trial as long as the witness will be made available to be deposed and appears at trial for

7

cross-examination.

~~Should a Discovery Participant wish to present evidence at trial from a witness who is not willing to swear an affidavit, such witness shall be identified at this same time, and leave of the Court(s) sought by the Discovery Participant seeking to rely on their evidence to take that witness's testimony by examination/deposition (out of court) so as to preserve their testimony so it can be submitted by the Discovery Participant as evidence at trial;~~

6. **Oral Examinations Or Depositions**

   a. *Examinations of Representatives/ 30(b)(6) Depositions*

   By no later than ~~June 28~~August 7, 2013

   For Allocation, each Allocation Group (other than the Bondholder Allocation Group) may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the solicitors or counsel of record for any opposing Discovery Participant specifying the topics, if any, on which that other Discovery Participant's representative is to be examined/deposed. The Bondholder Allocation Group shall consult with the Canadian Allocation Group and the US Allocation Group regarding any requests under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure it would like the US Allocation Group and the Canadian Allocation Group to serve on other Discovery Participants in accordance with the foregoing. In the event that Canadian Allocation Group and the US Allocation Group do not agree to serve such requests, the Bondholder Allocation Group may seek leave of the Court or Courts, as applicable, by motion on notice to serve its own requests for examination under Rule 34.04 of the Ontario Rules of Civil Procedure and/or depositions under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure.

   For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group may each serve a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the counsel of record for any opposing US Claim Party specifying the topics, if any, on which the US Claim Party's representative is to be deposed. The US Claims Defendant Group and the Bondholder Group shall confer on such requests.

   For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group may each serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure on the solicitors/counsel of record for any opposing Canadian Claim Party specifying the topics, if any, on which the Canadian Claim Party's representative is to be examined/deposed. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests.

8

Use of (Discovery) Answers at Trial

Testimony of representatives proffered in response to requests under Ontario Rule 31.03 and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure may be used as evidence at trial only by Discovery Participants whose interests are adverse to those of the proffering Discovery Participants on the issue for which the evidence is being used.

**By no later~~Later~~ than ~~July 3~~August 12, 2013**

Each Discovery Participant served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure shall designate a representative (who may, but is not required to be, a current or former officer, director or employee of that Discovery Participant) to be offered to be examined/deposed as though Rule 31.03 of the Ontario Rules of Civil Procedure applied and/or under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure as applicable. All Discovery Participants shall have the right to attend such examinations/depositions.

A Discovery Participant may designate its party representative under Rule 34.04 of the Ontario Rules of Civil Procedure as its witness(es) under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure for a single examination/deposition of each such witness(es).

*b. Oral Examinations/ Deposition of Fact Witnesses:*

**By no later than ~~June 28~~August 7, 2013**

In addition to the aforementioned examinations/depositions pursuant to Rule 34.04 of the Ontario Rules of Civil Procedure or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure, each of ~~(1) the Canadian Allocation Group and the Canadian Claims Defendant~~each Claim Group ~~together; (2) the EMEA Allocation Group, the US EMEA Claimants Group, the Canadian EMEA Claimants Group, and the UK Pension Claimants together; and (3) the US Allocation Group and the US Claims Defendant Group together may designate up to ten fact~~ shall serve by this date notices stating the witnesses it wishes to examine or depose (which may be~~in~~clude third parties, persons subject to the control of a ~~Discovery Participant~~Core Party or both and which may be persons who have been identified as trial witnesses by another ~~Discovery Participant~~Core Party, and any persons whose previously filed affidavits/witness statements have been designated by a Discovery Participant as trial evidence) ~~whom it seeks to examine/depose~~in order to obtain factual information/admissions relevant to Allocation, US Claims or Canadian Claims. Each witness shall be named and his/her place of residence (if known) shall be identified. ~~, by serving a request.~~ The parties shall meet as soon as practicable after this date to confer and attempt to reach agreement on the list of witnesses to be deposed and the time for examination of each witness by each party. In the absence of agreement this shall be submitted to the relevant

9

Court(s) for decision  The attorneys for the US Debtors, the Canadian Debtors and the EMEA Debtors agree to accept requests under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Deposition Notices under the United States Federal Rules of Civil Procedure ~~as applicable on the solicitors or counsel of record for any~~ seeking to depose or examine persons under the control of their clients.  All parties agree to cooperate in good faith in attempts to locate and obtain testimony from persons not under the control of any party, including through issuance of compulsory process, letters of request and other ~~Discovery Participant~~available procedures, except that no party shall be required to commence proceedings or ~~the third party (or if not represented, by serving the notice directly on the third party).~~pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony.,  ~~Each witness shall be named and his/her place of residence (if known) shall be identified.~~

The Bondholder Group shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, regarding any fact witnesses it seeks to examine/depose.  In the event that the Canadian Allocation Group and the US Allocation Group do not intend to designate such fact witnesses that the Bondholder Group seeks to designate, the Bondholder Group may seek leave of the Court or Courts, as applicable, by motion on notice to designate such fact witnesses.

Either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to designate additional fact witnesses upon a showing of good cause.

~~Notwithstanding the foregoing, in order to allow the Discovery Participants an opportunity to consider witness testimony before naming all witnesses, each of the aforementioned Allocation Groups and Claim Groups may designate up to three of their ten fact witnesses by July 31, 2013, provided however that scheduling priority shall be given to fact witnesses designated by the June 28, 2013 deadline, whose examinations/depositions the Discovery Participants shall make reasonable efforts to schedule in the month of July.~~

~~All examinations/depositions to be completed by no later than August 30, 2013~~

Fact Witness examinations to be completed by no later than September 27, 2013

Promptly after ~~June 28~~August 7, 2013, and earlier with respect to fact witnesses identified prior to the ~~June 28~~August 7, 2103 deadline (which the Discovery Participants are encouraged to do in order to commence examinations/depositions by ~~July 1, 2013~~August 12, 2012), the relevant parties shall attempt to agree on an examination/deposition schedule that contemplates the completion of all witness examinations /depositions (including any examinations/depositions for testimony preservation that the Court(s) may

10

have granted leave to conduct) in this time frame that reflects the practicalities of examining/deposing each witness (having regard to the number of Discovery Participants examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness). All Discovery Participants shall have the right to attend such examinations/depositions.

The relevant parties will attempt in good faith to complete witness depositions by September 27, 2013, with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions and to complete all depositions regarding matters that will be the subject of expert testimony prior to this date.

*c) Use of Examinations/Depositions at Trial*

Designated portions of any examination/deposition may be filed as part of the evidence that any Discovery Participant may rely upon at trial (subject to objections which may be ruled upon by the Court as contemplated in section [8] hereof), except that testimony of a witness who is employed by, party to a cooperation agreement with or otherwise under in accordance with the control of a Discovery Participant may not be relied upon as evidence by usual rules that Discovery Participant or by others sharing its interests apply in the issue to which the testimony relates. Canadian and US Courts, respectively.

If a witness who has been examined/deposed under this Discovery Plan is later called as a witness to give *viva voce* evidence at the trial, the transcript (or designated portions thereof) will still form part of the trial evidence and the entire transcript may also be used to impeach the witness or challenge his/her credibility.

11

**7. Experts**    ~~By no later than August 16, 2013~~

By no later than September 13, 2013

Each Discovery Participant that intends to rely on the opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

By no later than October 11, 2013

~~By no later than September 13, 2013~~

Each Discovery Participant shall deliver an affidavit or report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by Bates number if previously produced, and containing the disclosures required by the Applicable Procedural Regime set forth in section 2.

Any Discovery Participant that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial, provided that the expert will be made available to be examined/deposed and appears at trial as set out below.  If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

Promptly after the submission of initial expert affidavits or reports, the Discovery Participants shall attempt to agree upon an expert examination/deposition schedule to commence by ~~October 28~~November 18, 2013.

By no later than ~~October 18~~November 8, 2013

Each Discovery Participant shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another Discovery Participant that addresses an issue that is adverse to the Discovery Participant's position in the Allocation, US Claims, or Canadian Claims litigation.  Responses shall be permitted even if the Discovery Participant did not initially tender an expert's affidavit, if an issue is raised by an expert whose evidence is tendered by another Discovery Participant that calls for response.  Responsive reports shall be limited to responding to issues on which an affirmative expert report has been proffered and shall not go beyond such issues.

By no later than ~~November 22~~December 6, 2013

The Discovery Participants shall attempt to agree to a schedule that contemplates the completion of all expert witness examinations/depositions between ~~October 28~~November 18, 2013 and this date that reflects the practicalities of examining/deposing each witness (having regard to the number of parties examining/deposing, the subject matter of the examinations/depositions,

12

the available time for completion of all examinations/depositions and the residence of the witness). All Discovery Participants shall have the right to attend such depositions.

A Discovery Participant may request that any expert be present at trial for cross-examination, and the affidavit or report of any expert not appearing at trial if requested to appear cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

The affidavits and/or reports shall be filed as evidence with the court at the trial, subject only to cross-examination at trial and any applicable objections that may be made and determined at the outset of the trial and directions or rulings from the Court(s) arising therefrom. The Discovery Participant proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

Communications with Experts

The experts shall not be examined/deposed about or asked to produce prior drafts of their affidavits/reports and/or their communications with the Discovery Participant who retained them or other Discovery Participants within the same Allocation Group or Claim Group, or their respective Representatives, or any other topic protected from disclosure by the Applicable Procedural Regime set forth in section 2.

With respect to Allocation and US Claims, Rule 26 of the United States Federal Rules of Civil Procedure applies to expert discovery.

8. General Procedure Applicable to All Oral Examinations/ Depositions

Length of Oral Examinations/Depositions

~~Each oral examination/deposition may last for up to seven hours (including only time spent on the record and excluding any breaks) except that any witness or representative noticed by multiple Allocation Groups or Claim Groups may last up to 14 such hours. No single witness shall be examined/deposed for longer than 14 such hours in total without leave of the Court(s) or the agreement of the Discovery Participant represented by that witness or the witness if such witness is a third party.~~

Coordinating Oral Examinations/Depositions

Each examination/deposition shall be coordinated so that a lead examiner is identified for each group that noticed the oral examination/deposition (where an Allocation Group and Claim Group from the same jurisdiction counts as one group). Lead examiners shall work in good faith with any other lead

13

examiners as well as other affected Discovery Participants to reflect a coordinated effort to avoid duplication of questions. For the avoidance of doubt, the US ~~Claims Defendant Group~~Claim Parties shall have the right to attend oral examinations/depositions that relate to the Canadian Claims, and the Canadian ~~Claims Defendant Group~~Claim Parties shall have the right to attend oral examinations/depositions that relate to the US Claims.

Transcripts and video taping:

All examinations/depositions shall be taken under oath in the presence of a Canadian or US certified court reporter and transcribed and the transcripts made available to all Discovery Participants, whether or not they are in attendance at the examination/deposition. At the option of any examining/deposing Discovery Participant, the examination/deposition may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining/deposing Discovery Participant(s) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

Objections:

Objections may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Questions that are objected to on grounds other than privilege shall be answered under reserve of that objection. All other objections shall be preserved.

Requirement for Summons:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Debtors, the Joint Administrators, and the UK Pension Claimants shall reasonably assist in issuing process or otherwise procuring a witness's attendance irrespective of which Discovery Participant has sought the witness's deposition, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment or consent to that jurisdiction for any other purpose.

Undertakings:

With respect to Allocation and Canadian Claims, the witness shall answer any undertakings that were agreed to on his/her examination/deposition within two weeks of the date of his/her examination/deposition, unless otherwise agreed to by the affected Discovery Participants.

9. **General Terms**   Any Discovery Participant may make a motion to the Court to compel another Discovery Participant to take the steps contemplated by the Discovery Plan or

14

other steps, and the parties agree that the Court(s) may take the existence of the Discovery Plan into account in determining whether to grant the order sought. The Discovery Participants that are parties to such a motion may seek to justify their respective positions on the basis of, among other things, any information that was unknown or not reasonably available to that Discovery Participant at the time the Discovery Plan was entered into.

The Discovery Participants recognize that, as additional information becomes available throughout the Allocation, US Claims and Canadian Claims litigation, it may become apparent that: (a) it is impracticable or impossible for a Discovery Participant to comply with the terms of the Discovery Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery Plan, are required in order for a Discovery Participant to obtain access to potentially relevant documents, information or witness testimony.   Each Discovery Participant agrees to notify the other Discovery Participants promptly when it reasonably believes that it will not comply with any term of the Discovery Plan or when it reasonably concludes that further steps beyond those set out in this Discovery Plan are required.  The Discovery Participants agree to negotiate in good faith with respect to any amendments to the Discovery Plan requested by a Discovery Participant on that basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Discovery Participants.

All Discovery Participants shall meet and confer in good faith without the assistance of the Court(s) in attempting to resolve any disputes in the interpretation or implementation of this Discovery Plan.  Discovery Participants are required to promptly seek relief from the applicable Court or Courts if an impasse is reached in any dispute and shall not be heard to complain of any prejudice resulting from their own delay in seeking relief.

All motions or directions sought from the Court(s) pursuant to this Discovery Plan shall be brought before the following Court or Courts: with respect to Allocation, before Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and Justice Morawetz of the Ontario Superior Court of Justice; with respect to US Claims, before Judge Gross; and with respect to Canadian Claims, before Justice Morawetz.  The Courts shall hold regularly scheduled joint discovery conferences for discovery disputes in Allocation and those discovery disputes that affect both jurisdictions.

The EMEA Debtors' participation in the procedures addressed herein is without prejudice to their contention that Allocation should be decided by arbitration rather than the US and Canadian Courts, and shall not be construed as a waiver of their objection to determining Allocation in accordance with the procedures set forth in the Allocation Protocol, this Discovery Plan and the Litigation Timetable.

Prepared and agreed upon by:

15

<u>To be signed by Counsel of Record for each Core Party</u>

16

## SCHEDULE A

Format for Exchange of Productions: Productions will be exchanged by loading each production into the Merrill Lextranet database with the following objectively coded metadata, if reasonably possible, and in the following form:

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| Document Numbering | Docid | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | Parentid | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | Attchids | Note Text | Docid(s) attached to Parentid | AA0000001 |
| Fields/Coded Data for E-mails | Datesent | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | Timesent | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | Timercvd | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | To | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | From | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | Subject | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | Cc | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | Bcc | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | Media | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents and attachments | As per metadata |
| Fields/Coded Data for Attachments and Loose Electronic Documents | Datesvd | Date | Date an electronic file or attachment was last saved | As per metadata |
| | Datecrtd | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | Filetype | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | Filename | Note Text | File name of electronic file or attachment | As per metadata |
| | Doclink | Note Text | Used to link a document to the database record Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | Folder | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | Custodian | Note Text | Person from whom document was collected | As per metadata |
| | Media | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents and attachments | As per metadata |

17

| Fields/Coded Data for Paper Documents | Docdate | Date | Date of document (subjectively coded) | MM/DD/YY YY |
|---|---|---|---|---|
| | CollectDate | Date | Creation Date of Electronic File | MM/DD/YY YY |
| | Source | Note Text | Location or person from whom document was collected (subjectively coded) | |
| | Attach# | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | Author | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | Recip | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| Fields/Coded Data for Electronic Documents (Chronological Review) | Leaddate | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YY YY |
| | Leadtime | Date | Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together. Allows for further sorting of documents dated the same day by time | HH:MM:SS |

1. Each document shall be individually produced with a unique document ID number.

2. For each document, the Discovery Participant shall provide a text file containing the text extracted directly from the native electronic version of that document, unless the document was redacted, is an image file, is a scanned hardcopy document, or is in another format from which text cannot be reasonably extracted. In these instances, provide a text file created using document-level optical character recognition (OCR) to the extent reasonably practicable.

3. All images will be single page tiff format (excluding spreadsheets, Powerpoint presentations and database files, which will be provided in native format) with 300 dpi specifications. Spreadsheets, Powerpoint presentations and database files to be provided in the eDocs folder.

4. Parties will provide the following load files formatted as follows:

   (a) Image folder (single page tiff, 300 dpi);

   (b) eDocs folder (for native files, specifically Excel, Powerpoint and database files, which will not be tiffed);

18

    (c)      OCR folder (with text files and a control list for loading);

    (d)      data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

    (e)      imginfo.txt, imginfo.csv or imginfo.esvopt, at the option of the receiving party.

> **Formatted:** Font: 11 pt
> **Formatted:** Font: 11 pt

5.      If a document and its exact duplicates are associated with the same custodian, the responding party may withhold the exact duplicates from production. If a document and its exact duplicates are associated with different custodians, the responding party may withhold the exact duplicates from production and provide a metadata field for the produced document indicating the custodians for whom duplicates were withheld.

> **Formatted:** TabIndent,ti, Indent: Left: 0.5"

# TAB B

EMEA Blackline to Monitor's Proposed Timetable

**Monitor and Canadian Estate's Proposed  Litigation Timetable for All Matters to be
Addressed at the Joint Trial Commencing January 6, 2014**

April ~~17,~~23, 2013

Pursuant to the Orders, dated April 3, 2013, of the Ontario Superior Court of Justice (the
"Ontario Court") and the United States Bankruptcy Court for the District of Delaware (the
"U.S. Court" and together with the Ontario Court, the "Courts"), this proposed Litigation
Timetable is intended to supplement or amend, as the circumstances require, the Claims
Procedure Resolution Order as entered by the Ontario Court on September 16, 2010 (the
"Claims Procedure Resolution Order"),[1] and the Ontario Court's EMEA Claims Procedure
Order dated January 21, 2011 (the "EMEA Claims Procedures Order") and Intercompany
Claims Procedure Order dated July 27, 2012 (the "Intercompany Claims Procedures
Order") and all other Orders or agreements governing the procedure for resolving the
~~claims~~Canadian Claims and U.S. Claims that are the subject matter of this schedule and the
issue of allocation among the estates of asset sale proceeds.[2]

| Due Date 2013/2014 | Step |
|---|---|
| ~~Commencing immediately~~Present through April 24 | ~~All Core Parties to continue~~The Discovery Participants to negotiate in good faith to try to come to ~~an agreement on a Litigation Timetable and discovery and deposition plan dealing with the matters proposed in the draft discovery and deposition plan~~agreement on a Discovery and Deposition Plan, attached hereto as Schedule "A"~~and such other matters as they may agree upon (~~, in relation to the ~~"Discovery and Deposition Plan")~~Allocation litigation, the Canadian Claims litigation and the U.S. Claims litigation. |

---

[1]    On November 5, 2010, the U.S. Court entered an order enforcing in the United States the Claims
Procedure Resolution Order along with the Cross-Border Claims Protocol Order, also entered by the
Ontario Court on September 16, 2010.

[2]    Capitalized terms shall have the meaning ascribed to them in Appendix "A" hereto.

EMEA Blackline to Monitor's Proposed Timetable

| Due Date 2013/2014 | Step |
|---|---|
| ~~March 21~~ | ~~Monitor delivered Notices of Disallowance of all claims filed by the Joint Administrators for the EMEA Debtors (together, "EMEA") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 21(e) of the EMEA Claims Procedures Order.~~<br><br>~~Monitor delivered Notices of Disallowance of all claims filed by the Nortel Networks UK Pension Trust Limited and the Pension Protection Fund (together, the "Trustees") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 13(e) of the Claims Procedure Resolution Order.~~ |
| ~~March 27~~ | ~~Monitor delivered Notices of Disallowance of all claims filed by the Additional Non-APAC/CALA Affirmative Claims filed by Nortel Networks AG ("NN AG") and Nortel Networks AS ("NN AS") pursuant to the Intercompany Claims Procedure Order.~~ |
| ~~April 4~~ | ~~EMEA delivered Dispute Notices pursuant to paragraphs 25 of the EMEA Claims Procedure Order and paragraph 17 of the Claims Procedure Resolution Order.~~ |
| ~~April 8~~ | ~~Core Parties to provide comments, if any, on the draft pre-trial protocol for dealing with confidential documents and information and for the claw back of any inadvertently produced privileged communications ("Confidentiality and Privilege Clawback Agreement") circulated by the Monitor.~~ |
| ~~April 15~~ | ~~Revised Allocation Protocol to be filed with the Courts, together with competing submissions, if any.2~~ |
| April 24 | Joint Hearing before both Courts to approve an agreed upon Litigation Timetable and Discovery and Deposition Plan or, absent agreement, for directions or Court orders concerning finalization of ~~same or of matters expected to reasonably arise in the Litigation Schedule, not the hearing, and to book any motion dates contemplated thereby (for discovery/deposition motions) and~~, which may include a schedule for periodic joint discovery conferences before the Courts. |

---

~~2    In event of a conflict between the Allocation Protocol, and the Cross-Border Claims Protocol Order, the Allocation Protocol (as approved by the Courts) shall be deemed to control.~~

EMEA Blackline to Monitor's Proposed Timetable

| Due Date 2013/2014 | Step |
|---|---|
| April 30 | Deadline for ~~any Core Party who wishes to participate in the allocation dispute~~US Debtors, UCC, EMEA Debtors, Joint Administrators, Canadian Debtors, Monitor and Bondholder Groups to deliver a pleading or opening submission in the Allocation litigation styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought with respect to allocation, the material facts relied upon and legal bases for the ~~allocation~~Allocation position being advanced by that ~~Core~~ Party at the Joint Hearing. Any other Core Party who wishes to participate in the Allocation litigation must submit a pleading or opening submission by this date. Each pleading/submission may be made individually, jointly by two or more Core Parties or by one Core Party adopting another Core Party's pleading/submission. |
| April 30 | Deadline for ~~any of EMEA, NN AG, NN AS and the Trustees who dispute the disallowance of their claims to deliver affirmative pleadings (which may be deemed by them to serve as their Dispute Notices) setting forth, with reasonable particularity, the relief sought, material facts relied upon and legal bases for their claims and the grounds upon which they seek to challenge their disallowance (if made in the Ontario Court, the "Canadian Claims" and if made in the U.S. Court, the "U.S. Claims")~~UK Pensions Claimants to deliver Dispute Notices pursuant to paragraphs 25 of the EMEA Claims Procedure Order and paragraph 17 of the Claims Procedure Resolution Order. |
| April 30 | Deadline for Canadian Debtors to serve responses, with particulars, to each of the Claims made by the EMEA Debtors. |
| April 30 | Deadline for the US Claims Defendant Group serve responses, with particulars, to the US Claims. |
| ~~April~~May ~~30~~10 | Deadline for the ~~Core~~ Parties who have delivered Allocations pleadings/submissions to reach agreement on the form of Confidentiality and Privilege Clawback Agreement ~~(~~with a view to eventually incorporating it into Orders in both Courts~~)~~, or to file motions seeking an interim order addressing these matters if agreement cannot be reached. |

EMEA Blackline to Monitor's Proposed Timetable

| Due Date 2013/2014 | Step |
|---|---|
| May 10 | Deadline for delivery of written interrogatories seeking identification of (i) the roles and current locations of individuals with knowledge of the matters relevant to this litigation and (ii) the storage form and extent of the potentially relevant documents of these individuals, only by a Core Party who has responded to another Core Party's Allocation Position in the manner provided for herein or between the claimants and respondents to the Canadian and U.S. Claims. Further written (contention) interrogatories may only be made with the agreement of the Core Party to whom it is directed, or leave of the Court(s). |
| May 10 | Deadline for delivery by the Core Parties of initial requests for production of documents, from each other and any other Core Party who has responded to their Allocation Position, and as between themselves and any others who are claimants and respondents to either the Canadian or U.S. Claims with whom they have a dispute about those claims, in accordance with the Discovery and Deposition Plan.<br><br>A Core Party may serve additional document requests after May 10, 2013 if it determines, in good faith, that this is reasonably necessary. |
| May 15 | Deadline for any Core Party who delivered an Allocation Position and who disputes the Allocation Position of any other Core Party to deliver a responding pleading, entitled "Allocation Response" which sets out with reasonable particularity the material facts relied upon and legal bases for any affirmative responses to the disputed Allocation Position advanced by any other Core Party or to designate its Allocation Position as its Allocation Response. Each of the responses may be made individually, jointly by two or more Core Parties or by one Core Party adopting another Core Party's Allocation Response. The failure to file a responsive pleading, or to respond specifically to each and every Allocation argument advanced by another Core Party, shall not constitute acceptance of an other Core Party's position. |
| May 15 | Deadline for any Core Party with standing to oppose any of the disputed disallowances of Canadian Claims or U.S. Claims to deliver a Response (including any counterclaim) to those claims, which may include by reference that Core Party's Allocation Position and Allocation Response. |

EMEA Blackline to Monitor's Proposed Timetable

| Due Date 2013/2014 | Step |
|---|---|
| ~~May 17~~ | ~~Deadline for delivery of limited written interrogatories seeking identification of (i) the roles and current locations of individuals with knowledge of the matters relevant to this litigation and (ii) the storage form and extent of the potentially relevant documents of these individuals, only by a Core Party who has responded to another Core Party's Allocation Position in the manner provided for herein or between the claimants and respondents to the Canadian and U.S. Claims. Further written (contention) interrogatories may only be made with the agreement of the Core Party to whom it is directed, or leave of the Court(s).~~ |
| ~~May 17~~ | ~~Initial deadline for delivery by the U.S. Debtors, the Monitor, EMEA and the Trustees of limited reasonable and specific requests for production of non-privileged documents, from each other and any other Core Party who has responded to their Allocation Position, and as between themselves and any others who are claimants and respondents to either the Canadian or U.S. Claims with whom they have a dispute about those claims, in accordance with the Discovery and Deposition Plan.~~ |
| ~~May 21~~ | ~~Secondary deadline for delivery by any other Core Party of supplementary limited reasonable and specific requests for production of non-privileged documents, from any other Core party who has responded to their Allocation Position, and if they are a claimant or respondent to any of the U.S. Claims from any other Core Party with whom they have a dispute about those claims, in accordance with the Discovery and Deposition Plan.~~ |
| May ~~24~~<u>20 or as soon as possible thereafter</u> | All Core Parties who have delivered and/or received ~~identification interrogatories~~<u>Identification Interrogatories</u> and/or document requests to meet and confer regarding the procedures and timing for responses and for dealing with any issues arising therefrom. |
| May 31 | Deadline for <u>response or</u> objections to document requests and ~~identification interrogatories~~<u>Identification Interrogatories</u>, in accordance with the Discovery and Deposition Plan. |
| May 31 | Subject to any objections, deadline for the recipients of document requests to commence rolling production of documents, in accordance with the Discovery and Deposition Plan. |

EMEA Blackline to Monitor's Proposed Timetable

| Due Date 2013/2014 | Step |
|---|---|
| ~~June~~July ~~21~~31 | Subject to objections, deadline for <u>substantial </u>completion of documentary production and ~~responses to identification interrogatories~~<u>privilege logs to be served</u>, in accordance with the Discovery and Deposition Plan. |
| ~~June~~<u>August</u> ~~28~~<u>7</u> | Deadline to file motions to compel productions/responses to interrogatories objected to or not answered. All Core Parties to attempt to resolve any discovery disputes in good faith and to file any necessary motions promptly. |
| ~~June~~<u>August</u> ~~28~~<u>7</u> | Deadline for identification by each Core Party of (i) its anticipated ~~affiants as~~<u>fact</u> (non-expert) trial witnesses and whether they will be testifying to issues relating to Allocation, U.S. Claims and/or Canadian Claims, without prejudice to later identification of additional witnesses provided that other Core Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Core Party's previously filed sworn statements ~~are being~~<u>it anticipates will be</u> relied upon as evidence at trial whether they will be relied upon for issues relating to Allocation, U.S. Claims and/or Canadian Claims , in accordance with Discovery ~~ad~~<u>and</u> Deposition Plan. |
| ~~June~~<u>August</u> ~~28~~<u>7</u> | Deadline for each ~~Core Party~~<u>of the Canadian Allocation Group, the EMEA Allocation Group and the U.S. Allocation Group</u> to serve on any other Core Party that has responded to its Allocation Position, to whose Allocation Position it has responded, and/or with whom it has a dispute about the Canadian Claims or U.S. Claims, the topics on which it expects that other Core Party's party representative/discovery witness to be examined or deposed, in accordance with the Discovery and Deposition Plan. |

EMEA Blackline to Monitor's Proposed Timetable

| Due Date 2013/2014 | Step |
|---|---|
| ~~June~~August 2~~8~~7 | Deadline for each ~~Core Party~~Allocation Group and each Claim Group to designate ~~up to 10~~ witnesses to be examined or deposed, subject to later additions for the reasons set forth in the Discovery and Deposition Plan, and to indicate whether it intends to cross examine on any affidavits/witness statements previously filed and that have been designated as trial evidence by any other Core Party, in accordance with Discovery and Deposition Plan. Witnesses may be designated for the purposes of examination upon matters on any issue to which that Core Party has pleaded, in Allocation, Canadian and/or U.S. Claims. The parties shall meet as soon as possible after this date to attempt to reach agreement on the list of witnesses to be deposed and the time for examination of each witness, failing which directions of the Court will be sought to determine same. |
| ~~July~~August 3~~1~~2 | Deadline for each Core Party to identify its representative to be examined for oral examination (discovery) ~~who is knowledgeable about, or can become reasonably informed of, the topics identified by other Core Parties to be examined upon, in lieu of contention interrogatories (unless they are agreed or ordered to be taken in writing).~~ |
| ~~July 17~~ | ~~Last possible date for hearing of motions to compel productions/responses to interrogatories objected to or not answered and/or motions for an Order to implement the protections contemplated by the Confidentiality and Privilege Clawback Agreement if not settled.~~

~~Motions arising out of documentary production and identification interrogatories may be adjudicated by a referee to be jointly appointed by the Courts.~~ |
| ~~August~~September 1~~6~~13 | Deadline for each Core Party to identify experts and the subject matter of their reports, in accordance with the Discovery and Deposition Plan. |
| ~~August~~September 3~~0~~27 | ~~Deadline~~The parties will attempt in good faith to complete examinations, depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within two weeks of each examination), in accordance with the Discovery and Deposition Plan, with a preference to finish fact witness depositions and depositions regarding matters that will be the subject of expert testimony prior to any representative party examinations (discovery). |

EMEA Blackline to Monitor's Proposed Timetable

| Due Date 2013/2014 | Step |
|---|---|
| ~~September~~October ~~13~~11 | Deadline for service by Core Parties of expert reports (including exhibits) in accordance with the Discovery and Deposition Plan. |
| ~~September 13~~ | ~~Deadline for service of motions arising from examinations, depositions and cross examinations (motions should be served earlier if disputes arise and cannot be resolved in the course of the witness examinations)~~ |
| ~~October 18~~ | ~~Last possible date for hearing of any and all motions that any Core Party may wish to bring arising from the pleadings, discoveries, depositions or to otherwise resolve or narrow the issues for the Joint Hearing.~~ ~~Motions arising out of discoveries/depositions may be adjudicated by a referee to be jointly appointed by the Courts.~~ |
| ~~October~~November ~~18~~8 | Deadline for service ~~of each~~by Core ~~Party's~~Parties of responding ~~experts'~~expert reports (including exhibits) in accordance with the Discovery and Deposition Plan. |
| ~~November~~December ~~22~~6 | Deadline to complete deposition of experts in accordance with the Discovery and Deposition Plan. |
| ~~November 29~~ | ~~Last possible date for hearing of any and all motions that any Core Party may wish to bring arising from expert reports and the depositions of experts.~~ ~~Motions arising from expert reports and the depositions of experts may be adjudicated by a referee to be jointly appointed by the Courts.~~ |

EMEA Blackline to Monitor's Proposed Timetable

| Due Date 2013/2014 | Step |
|---|---|
| December 6̶23 | Deadline for filing of opening written submissions with the Courts, including:<br><br>a) Pre-trial briefs as referenced in Judge Gross's Proposed Final Pretrial Order;<br>b) Witness lists;<br>c) b̶)̶ With respect to Allocation, all fact affidavits to be used as a party's trial testimony for its case in chief;[3]<br>d) c̶)̶ With respect to Allocation, a list of all exhibits each party intends to rely on as part of its case in chief;[3]<br>e) d̶)̶ With respect to the Canadian and/or U.S. Claims by any of EMEA, NN AG, NN AS and the Trustees, all fact affidavits to be used as those parties' trial testimony; and<br>f) e̶)̶ With respect to the Canadian and/or U.S. Claims by any of EMEA, NN AG, NN AS and the Trustees, a list of all exhibits those parties intend to rely on as part of their case in chief. |
| December 23 | Deadline to file pre-trial motions. |
| December 1̶330 | Deadline for filing with the Courts:<br><br>a) All fact affidavits to be used as a party's trial testimony in response to Canadian and/or U.S. Claims; and<br>b) A list of all exhibits each party intends to rely on in response to Canadian and/or U.S. Claims. |

---

[3]  The filings by this deadline shall be referred to as Original Filings. A Core Party may (i) file supplemental affidavits as trial testimony, (ii) file supplemental exhibits, (iii) identify supplementary portions of transcripts of depositions and examinations for discovery, if necessary to supplement the Original Filings. Such supplemental filings are permissible only to the extent that an affidavit or exhibit in the Original Filings of another Core Party dealt with a matter not reasonably anticipated, such that the Core Party's Original Filings do not adequately deal with that matter, and the supplemental filings are delivered as soon as possible.

EMEA Blackline to Monitor's Proposed Timetable

| Due Date 2013/2014 | Step |
|---|---|
| Week of December 16 (if the Courts desire) | Pre-Trial Conference(s) – By this date, the Core Parties shall have met and conferred in an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial;<br>b) the contents of document briefs, including categorizing the documents by issue<br>for use at the Joint Hearing.<br><br>By this date, the Core Parties shall also have identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest and served and filed all affidavits and reports to be relied upon as that party's direct evidence (including examination in chief) about Allocation, the Canadian Claims and the U.S. Claims.<br><br>All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |
| Commencing January 6, 2014 | The Courts will (a) hold simultaneously (i) joint hearings regarding Allocation, (ii) hearings before the Ontario Court on the merits of any remaining Canadian Claims, and (iii) hearings before the U.S. Court on the merits of any remaining U.S. Claims, provided however that the U.S. and Ontario Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant only to the Canadian Claims or only the U.S. Claims, and (b) after completing the joint hearings regarding Allocation, continue to complete the hearings of the Canadian Claims and the U.S. Claims; and (c) issue their respective decisions on (i), (ii) and (iii). |

Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the Courts in accordance with the usual practice. Any Core Party may also file a motion with the applicable Court(s) to modify this Litigation Timetable upon a showing of good cause.

WITH RESPECT TO ALLOCATION:

JUDGE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT

JUSTICE GEOFFREY MORAWETZ
ONTARIO SUPERIOR COURT OF JUSTICE

WITH RESPECT TO THE US CLAIMS:

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT

WITH RESPECT TO THE CANADIAN CLAIMS:

JUSTICE GEOFFREY MORAWETZ
ONTARIO SUPERIOR COURT OF JUSTICE

EMEA Blackline to Monitor's Proposed Timetable

## APPENDIX A

## DEFINITIONS

Capitalized terms used in this Litigation Timetable but not otherwise defined in this Annex A shall have the meanings ascribed to them in the Allocation Protocol.

Allocation Group:  Any of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, or the Bondholder Allocation Group.

Bondholder Allocation Group:  The Bondholder Group.

Canadian Allocation Group:  The Canadian Debtors, the Monitor, and the CCC.

Canadian Claim Party:  Any party in the Canadian EMEA Claimants Group or the Canadian Claims Defendant Group, or the UK Pension Claimants.

Canadian Claims:  Claims made by the Canadian EMEA Claimants Group and the UK Pension Claimants against any or all of the Canadian Debtors.

Canadian Claims Defendant Group:  The Canadian Debtors against whom the Canadian EMEA Claimants Group and the UK Pensions Claimants have brought claims, and the Directors and Officers (but only with respect to claims of the Canadian EMEA Claimants Group).

Canadian EMEA Claimants Group:  The EMEA Debtors and/or the Joint Administrators or any other administrator or liquidator of an EMEA Debtor who made claims against any or all of the Canadian Debtors or Directors and Officers, and the UK Pension Claimants who made claims against NNC and NNL.  Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

Claim Group:  Any of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, the Canadian Claims Defendant Group, or the UK Pension Claimants.

Discovery Participant:  Any Core Party or party of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, or the Canadian Claims Defendant Group who is participating in discovery pursuant to the Discovery Plan.

Discovery Plan:  The Discovery Plan that will be entered by the Courts.

EMEA Allocation Group:  The UK Pension Claimants, the EMEA Debtors (including Nortel Networks International Finance & Holding BV as behalf of itself and as assignee of Nortel Networks o.o.o.), and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

Identification Interrogatories:   Interrogatories seeking names and last known contact details of witnesses potential with knowledge of information relevant to the subject matter of the action and the existence, custodian, location and general description of relevant documents and other physical evidence, or information of a similar nature.

Representatives:   Directors, officers, employees, attorneys, accountants, experts, consultants, financial advisors, or agents of any of the Core Parties, US Claim Parties, or Canadian Claim Parties.

US Allocation Group:  The US Debtors and the Committee.

US Claims:  Claims made by the US EMEA Claimants Group and the UK Pension Claimants against any or all of the US Debtors.

US Claims Defendant Group:  The US Debtors against whom the US EMEA Claimants Group and the UK Pension Claimants have brought claims and the Committee.

US EMEA Claimants Group:  The EMEA Debtors and/or Joint Administrators or any other administrator or liquidator of an EMEA Debtor who made claims against any or all of the US Debtors, Nortel Networks AS, Nortel Networks South Africa (Proprietary) Limited, Nortel Networks AG, Nortel Networks Optical Components Limited, Northern Telecom France SA, Northern Telecom PCN limited.  Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

US Claim Party:  Any party in the US EMEA Claimants Group or the US Claims Defendant Group, or the UK Pension Claimants.

EMEA Blackline to Monitor's Draft Discovery Plan

Schedule "A"

**Ontario Superior Court of Justice – Commercial List Court File No. 09-CL-~~7950~~**
**United States Bankruptcy Court for the District of Delaware Court file No.**
**09-10138(KG)**

**RE: IN THE MATTER OF NORTEL NETWORKS CORPORATION ET AL**

# DISCOVERY AND DEPOSITION PLAN
(Dated as of April ~~17,~~23, 2013)

| | |
|---|---|
| **1. Definitions** | Capitalized terms used herein and not otherwise defined shall have the same meaning ascribed in the Litigation Timetable to which this document is a schedule and the Joint Discovery Scheduling Order. |
| **2. Applicable Procedural Regime:** | ~~The~~In accordance with the Cross Border Protocol, the Cross-Claims Protocol and the Allocation Protocol, the following procedural regimes apply:<br><br>~~(a)   In the Ontario Superior Court of Justice, the Commercial List Practice Direction and the~~ *~~Rules of Civil Procedure~~* ~~for Ontario; and~~<br><br>(1) ~~(b) In the District Court of Delaware,~~With respect to Allocation, the Cross-Border, Cross-Claims and Allocation Protocols apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court ~~for the~~ District of Delaware~~.~~ will apply as applicable.<br><br>(2) With respect to Canadian Claims, the Cross-Border Protocol, the Cross-Claims Protocols, the Claims Resolution Order, and the EMEA Claims Procedure Order apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario will apply as applicable.<br><br>(3) ~~and may be referred to in respect of matters not otherwise addressed by the letter and intent of this Discovery and Deposition Plan, the Joint Discovery Scheduling Order, the Allocation Protocol and any other procedural orders of the Courts.~~With respect to US Claims, the Cross-Border and Cross-Claims Protocols apply to the extent not inconsistent with this Discovery Plan, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy |

EMEA Blackline to Monitor's Draft Discovery Plan

| | |
|---|---|
| | Court for the District of Delaware will apply as applicable. |
| 3.   Legal Issues For Determination at Trial: | ~~Each of the Core Parties shall have identified in their pleading(s) (Allocation Position, Allocation Response, Canadian Claims, U.S. Claims, and Response, as the case may be) exchanged pursuant to the Litigation Timetable to which this plan is annexed, their respective:~~<br><br>~~1.   statutory, common law or other legal premise(s) for each cause of action and/or defence asserted;~~<br><br>~~2.   the material facts relied upon in support of each cause of action and/or defence asserted; and~~<br><br>~~3.   the heads of damages and amount(s) claimed and/or sought to be set off under each cause of action asserted.~~<br><br>~~These pleadings shall determine the scope of relevance for this Discovery and Deposition Plan.~~<br><br>~~Core Parties who have a dispute between them, by virtue of either or both having responded to the other's pleading (whether it be on Allocation, Claims or both), shall be considered "Opposing Core Parties".~~ |
| **3.**   ~~4.~~Scope of Documentary Discovery: | **General Principles:**<br><br>*a) Definition of Documents*<br><br>References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01~~(a)~~ of the *Rules of Civil Procedure*.<br><br>*b) Reasonably Accessible Documents and Proportionality*<br><br>No ~~Core Party~~<u>Discovery Participant</u> will be required to search data sources, including applications and databases, that it reasonably understands already to be in the possession, custody or control of the ~~Core Party making the request~~<u>Allocation Group or Claim Group making the request, provided that a Discovery Participant shall enumerate in its response to a discovery request any data sources that are not being searched on this ground.</u><br><br>Each ~~Core Party~~<u>Discovery Participant</u> will <u>only be required to</u> search ~~only~~ reasonably accessible data~~, which excludes data~~. <u>A Discovery Participant who believes that responsive materials are reasonably likely to be found in a decommissioned application or in storage media</u> that cannot be accessed without considerable burden, time or expense~~.~~ <u>shall give prompt notice of this in its response to a document request, and</u> |

shall meet and confer in good faith with the requesting party or parties regarding the cost and practicality of accessing such responsive materials giving attention to the principle of proportionality.

In light of the volume of the Debtors' hard copy documents maintained in off-site storage facilities, and the abundance of available overlapping electronic data, no ~~Core Party~~Discovery Participant is obligated to search hard copy documents, and rather will produce indices of such documents (to the extent they exist) ~~and~~with their responses to any document request and shall meet and confer in good faith with the requesting party or parties regarding what hard copy documents will be made available for inspection upon request. If any such documents inspected are copied for any requesting party, all other parties shall be notified and copies shall be provided to all parties at their own expense. If any party creates an electronic version of those documents that party shall be responsible for loading the electronic version of the document(s) onto the Merrill Lextranet database in accordance with Appendix 1 hereto.

*c) Previously Produced Documents*

~~All documents~~Documents already produced into the Merrill Lextranet database for the purpose of the several mediations in ~~this proceeding are to~~these proceedings may be treated as having been produced in ~~this litigation and any Core Party~~the Allocation, Canadian Claims and US Claims litigation provided the producing party can supply metadata and otherwise meet the specifications set forth in Appendix 1, and any Discovery Participant that does not already have such documents shall be provided access to the Merrill Lextranet database, subject to appropriate confidentiality, protective and/or sealing orders from the Court(s) and a provision allowing the ~~Core Parties~~Discovery Participants to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this Discovery and Disposition Plan.

*d) No Waiver of Privilege*

The fact that a document has been produced by any ~~Core Party~~Discovery Participant shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other ~~Core Party~~Discovery Participant who asserts privilege over the document), any ~~Core Party~~Discovery Participant who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a confidentiality or protective order.

*e) Deemed Undertaking*

EMEA Blackline to Monitor's Draft Discovery Plan

All of the ~~Core Parties~~Discovery Participants and their respective counsel shall be deemed to have undertaken not to use any evidence or information obtained in the course of the discovery (including document discovery and depositions) contemplated hereby for any purposes other than the Allocation, Canadian Claims, US Claims litigation being conducted under the court-ordered Allocation Protocol and Litigation Timetable, as well as in any other disputes, claims reconciliation processes or proceedings that may exist or arise between any Discovery Participants.

**Document Requests and Interrogatories**

*f) Document Requests*

Each ~~Core Party~~Discovery Participant shall be entitled to serve ~~limited reasonable~~ requests on any other ~~Opposing Core Party~~opposing Discovery Participant for production of ~~further non-privileged documents, to be specified and categorized with reference to the issues between the Core Parties as raised by the pleadings and to be accompanied by suggested sources and search parameters.   Core Parties~~documents.

Discovery Participants whose interests are aligned shall co-ordinate their efforts so that requests are streamlined to avoid repetition and overlap in the requests of other parties.

~~Core Parties~~Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation document requests and Canadian/US Claims document requests and will meet and confer about the discovery requests both before and after they have been made.

~~Core Parties will also work in good faith to streamline interrogatories so as to minimize duplication as between the different anticipated requests where interests can be aligned on particular topics or for particular Opposing Core Parties with interrogatories in common.~~

For greater certainty:

By no later than May 10, 2013

- For Allocation, each Allocation Group shall be entitled to serve requests for production of documents, such requests to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participants, provided that the Bondholder Group, prior to making such requests, shall consult with the ~~Canadian~~ Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden.  The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the

EMEA Blackline to Monitor's Draft Discovery Plan

document requests of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 17, 2013 to seek agreement with a Core Party from whom it seeks documents and, failing agreement, to seek leave of the Courts to make additional document requests if it believes in good faith that such requests are necessary and non-duplicative.

- For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve requests for production of documents on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve requests for production of documents on the US Debtors, provided that any disputes between the Canadian EMEA Claimants Group, the UK Pension Claimants or the Canadian Claims Defendant Group and the US Debtors regarding such discovery shall be resolved by the Canadian Court. The US Debtors' agreement to accept such discovery requests and submit to the Canadian Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

- For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve requests for production of documents on each opposing US Claim Party. The US Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve requests for production of documents on the Canadian Debtors, provided that any disputes between the EMEA Claimants Group, the UK Pension Claimants, or the US Claims Defendant Group and the Canadian Debtors regarding such discovery shall be resolved by the US Court. The Canadian Debtors' agreement to accept such discovery requests and submit to the US Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

An Allocation Group or Claim Group may serve additional document requests after May 10, 2013 if it determines, in good faith, that this is reasonably necessary.

The ~~Core Parties~~Discovery Participants shall meet and confer as is

reasonable and in accordance with the Litigation Timetable.

~~By no later than May 17, 2013~~

~~The U.S. Debtors, the Monitor, EMEA and the Trustees may deliver limited reasonable and specific requests for production of non-privileged documents, from each other and any Opposing Core Party, and as between themselves and any others who are claimants and respondents to either the Canadian or U.S. Claims with whom they have a dispute about those claims.~~

~~By no later than May 21, 2013~~

~~Any Core Party other than the U.S. Debtors, the Monitor, EMEA and the Trustees may deliver supplementary limited reasonable and specific requests for production of non-privileged documents, from any Opposing Core Party and, if they are a claimant or respondent to any of the U.S. Claims, from any other Core Party with whom they have a dispute about those claims, in accordance with the Discovery and Deposition Plan.~~

*g) Interrogatories*

~~By no later than May 17, 2013~~

An ~~Opposing Core Party~~opposing Discovery Participant may deliver ~~limited~~ written interrogatories seeking identification of (i) the roles and current locations of individuals with knowledge of the matters relevant to ~~this~~the Allocation, Canadian Claims and US Claims litigation and (ii) the storage form and extent of the potentially relevant documents of these individuals. Further written (contention) interrogatories may only be made with the agreement of the ~~Core Party~~Discovery Participant to whom it is directed, or leave of the Court(s).

Discovery Participants will work in good faith to streamline Identification Interrogatories so as to minimize duplication as between the different anticipated requests where interests can be aligned on particular topics or for particular opposing Discovery Participants with interrogatories in common.

For greater certainty:

By no later than May 10, 2013

- For Allocation, each Allocation Group shall be entitled to serve Identification Interrogatories, such interrogatories to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participants (not to exceed ten on any Core Party), provided that the Bondholder

Group, prior to serving such interrogatories, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. An interrogatory that seeks contact details, party control status and like information for multiple named individuals shall be considered one interrogatory for purposes of the limit on the number of interrogatories. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the interrogatories of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 17, 2013 to seek agreement whom a Discovery Participant from whom it wishes to serve interrogatories and, failing agreement, to seek leave of the Courts to serve additional interrogatories if it believes in good faith that such interrogatories are necessary and non-duplicative.

- For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve Identification Interrogatories on each opposing Canadian Claim Party (not to exceed ten on any Discovery Participant). An interrogatory that seeks contact details, party control status and like information for multiple named individuals shall be considered one interrogatory for purposes of the limit on the number of interrogatories. In addition, the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the US Debtors, provided that any disputes between the Canadian EMEA Claimants Group, the UK Pension Claimants or the Canadian Claims Defendant Group and the US Debtors regarding such discovery shall be resolved by the Canadian Court. The US Debtors' agreement to accept such interrogatories and submit to the Canadian Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

- For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve Identification Interrogatories on each opposing US Claim Party (not to exceed ten on any Discovery Participant). An interrogatory that seeks contact details, party control status and like information for multiple named individuals shall be considered one interrogatory for purposes of the limit on the number of interrogatories. In addition, the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve a limited

number of reasonable Identification Interrogatories on the Canadian Debtors, provided that any disputes between the US EMEA Claimants Group, the UK Pension Claimants or the US Claims Defendant Group and the Canadian Debtors regarding such discovery shall be resolved by the US Court. The Canadian Debtors' agreement to accept such interrogatories and submit to the US Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional Identification Interrogatories upon a showing of good cause.

*h) Responses and Objections*

By no later than May 31, 2013

~~Core Parties~~Discovery Participants may object to document requests and ~~identification interrogatories~~Identification Interrogatories. When objecting to any discovery request, the recipient of such discovery request shall state the basis for objection~~ as provided for herein. Objections,~~ which may be made ~~only on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), subsisting privilege and proportionality.~~on any ground provided in the rules of the applicable procedural regime. Recipients are strongly encouraged to prepare joint objections to the same document request or interrogatories to the extent their objections overlap.

*i) Production of Documents*

Rolling Production to Commence May 31 ~~to June 21,~~and to be Substantially Completed by July 31, 2013, each ~~Core Party~~Discovery Participant working in good faith towards the earliest practicable date for production:

Subject to any objections made and sustained if challenged (see motions procedure below), each ~~Core Party~~Discovery Participant shall produce any responsive non-privileged documents to any request made of it to all other ~~Core Parties~~Discovery Participants (to the extent they overlap, responses to multiple request may be combined or cross-referenced to each other to avoid duplication), in accordance with Appendix 1.

In this same time frame, each ~~Core Party~~Discovery Participant shall produce any further documents that they may introduce into evidence at

trial that are not already stored in the Merrill Lextranet database.

*j) Motions to Challenge Objections to Initial Document Requests*

By no later than ~~June 28,~~ August 7, 2013

Any ~~Core Party~~ Discovery Participant who served a document request or interrogatory, and who seeks to compel production of a document or answer to an interrogatory, must do so by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on 7 days notice on all other ~~Core Parties~~ Discovery Partiicpants and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The ~~Core Party~~ Discovery Participant whose objection is challenged shall respond to this motion within 4 days and any other ~~Core Party~~ Discovery Participant whose interests are affected by the request may serve a supplementary response within 2 days thereafter. All ~~Core Parties~~ Discovery Participants shall attempt to resolve any discovery disputes in good faith and to file any necessary motions promptly.

~~Such motions to be heard by July 17, 2012 or as otherwise ordered by the Courts.~~

Notwithstanding this deadline, whenever a discovery dispute arises, the affected Discovery Participants shall promptly attempt to resolve the dispute in good faith and, if an impasse is reached, file any motions with the relevant Court(s) promptly.

*k) Privilege Logs*

If any party declines to produce a requested document, in whole or in part, based on an assertion of solicitor-client privilege, the work-product doctrine, or other legal privilege, that party shall provide a privilege log specifying as to each such document or portion thereof not produced, the specific privilege(s) or doctrine(s) relied upon, along with sufficient facts to establish the basis for asserting the privilege. The privilege log shall provide sufficient detail to permit the requesting party to assess whether there is an adequate basis for assertion of the privilege, including but not limited to: (i) the type of document; (ii) the date of the document; (iii) the author(s) of the document, including title and employer; (iv) the general subject matter of the document; (v) all recipients of the document (including addressees, cc's and bcc's), including titles and employers; (vi) beginning and ending bates numbers of the document; and (vii) the custodian of the document, including where the document was maintained (whether in physical or electronic form) prior to the petition date. Privilege logs shall be provided in Microsoft Excel format or a similar electronic format that

EMEA Blackline to Monitor's Draft Discovery Plan

allows for text searching and organization of data.

The following documents, to the extent created after the commencement of the bankruptcy proceedings, presumptively need not be included on a privilege log: (a) communications exclusively between a Discovery Participant and its outside counsel or (b) work product created by outside counsel and/or such counsel's agents.

Responsive documents which are jointly privileged as to two or more of the Discovery Participants shall be produced, but only to those Discovery Participants with whom the joint privilege is shared.

*i) No Waiver of Rights or Defences*

Agreement to accept and respond to a discovery request does not constitute submission to jurisdiction or a waiver of rights or defences for any other purpose.

| | | |
|---|---|---|
| **4.** | **5. Format of Production of Records:** | **Format for Exchange of Electronic Records:** Electronic documents to be produced in accordance with Appendix 1. |
| | | **Format for Exchange of Paper Records:** If a record only exists in hard copy and there is no electronic version, at the option of the producing party or any party who inspects and obtains a copy of it, it may be scanned and produced in accordance with Appendix 1 hereto, but only to the extent that they can reasonably be extracted or otherwise provided in a delimited text file. |
| **5.** | **6. Trial Witness Identification** | By no later than June 28, August 7, 2013 |
| | | Each Core Party Discovery Participant shall identify (i) its anticipated affiants as fact (non-expert) trial witnesses and by name, employer, title and functional role held during the time period relevant to their anticipated testimony and shall indicate whether they will be testifying to issues relating to Allocation, U.S. Claims and/or Canadian Claims, without prejudice to later identification of additional witnesses provided that the failure to identify that witness by June 28, 2013 was for good cause, and the other Core Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Core Party's previously filed sworn statements are being relied upon as evidence at trial whether they will be relied upon for issues relating to Allocation, U.S. Claims and/or Canadian Claims. |
| | | A Core Party Discovery Participant may identify trial witnesses at a later date provided that any Opposing Core Party opposing Discovery Participant has had or will have a reasonable opportunity to depose the later-identified witness before trial about the subject matter of their expected testimony. |

EMEA Blackline to Monitor's Draft Discovery Plan

> Any Discovery Participant that has previously filed an affidavit or witness statement in the context of these proceedings may also, at its option, choose to designate that evidence to be tendered at trial as long as the Discovery Participant indicates whether the affidavit will be relied upon for issues relating to Allocation, Canadian Claims, or U.S. Claims and provided the witness will be made available to be deposed and appears at trial for cross-examination.

> ~~Should a Core Party wish to present evidence at trial from a witness who is not willing to swear an affidavit, such witness shall be identified at this same time, and leave of the Court(s) sought by the Core Party seeking to rely on their evidence to take that witnesses' testimony by deposition (examination out of court) so as to preserve their testimony so it can be submitted by the Core Party as evidence at trial.~~

| | |
|---|---|
| **6.** ~~7.~~ Oral Examinations out of Court | **A.    Examinations of ~~Core Party~~Discovery Participant Representatives**<br><br>By no later than ~~June 28,~~August 7, 2013<br><br>Each ~~Core Party~~Discovery Participant shall serve on any ~~Opposing Core Party~~opposing Discovery Participant the topics on which it expects the ~~Opposing Core Party~~opposing Discovery Participant's discovery witness to be examined or deposed upon.<br><br>For greater certainty:<br><br>   • For Allocation, each Allocation Group (other than the Bondholder Allocation Group) may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the solicitors or counsel of record for any opposing Discovery Participant specifying the topics, if any, on which that other Discovery Participant's representative is to be examined/deposed.<br><br>   • For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group may each serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure on the solicitors/counsel of record for any opposing Canadian Claim Party specifying the topics, if any, on which the Canadian Claim Party's representative is to be deposed.<br><br>   • For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group may each serve a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the counsel of record for any opposing US Claim Party specifying the topics, if any, |

on which the US Claim Party's representative is to be deposed.

By no later than ~~July 3,~~August 12, 2013

Each ~~Core Party~~Discovery Participant served with a request for examination under the Rule noted above shall identify its representative (who may, but is not required to be, a current or former officer, director or employee of that ~~Core Party~~Discovery Participant) to be examined for oral examination (discovery)~~, who is knowledgeable about, or will become reasonably informed of, the topics identified by other Opposing Core Parties to be examined upon,  in lieu of contention interrogatories (unless they are agreed or ordered to be taken in writing).~~.

All Discovery Participants shall have the right to attend such examinations/depositions.

Use of (Discovery) Answers at Trial

Testimony of discovery representatives may be used as evidence at trial only by ~~Opposing Core Parties~~Discovery Participants whose interests are adverse to those of the proffering ~~Core Party~~Discovery Participants on the issue for which the evidence is being used.

**B. Oral Depositions:**

By no later than ~~June 28,~~August 7, 2013

~~Each Core Party may designate up to 10~~In addition to the above examinations/depositions, each Allocation Group and each Claim Group shall designate by this date the fact witnesses (which may be third parties, persons subject to the control of a Core Party or both and which may be persons who have been identified as trial witnesses by another Core Party or whose previously sworn statements have been designated by a ~~Core Party~~Discovery Participant as trial evidence) whom it seeks to examine to obtain factual information/admissions relevant to the ~~issues raised by the pleadings of that Core Party~~Allocation, Canadian Claims and U.S. Claims  and any persons whose previously filed affidavits/witness statements have been designated by a ~~Core Party~~Discovery Participant as trial evidence, by serving a request under Rule 34.04 of the ~~O~~ntario Rules of Civil Procedure and/or United States Federal Rule of Civil Procedure 30, as applicable, on the solicitors or counsel of record for any other ~~Core Party~~Discovery Participant or by service of subpoena or other process on counsel for the third party (or if not known to be represented, by serving the subpoena or other process directly on the third party). Each witness shall be named and his/her place of residence (if known) shall

be identified.

~~All Core Parties shall have the right to ask questions of any witnesses who is designated by any party to be deposed but if more than one party designates the same witness that witness shall only be deposed one time.~~

The parties shall meet as soon as practicable after this date to confer and attempt to reach agreement on the list of witnesses to be deposed and the time for examination of each witness by each party. In the absence of agreement this issue shall be submitted to the relevant Court(s) for decision  The attorneys for the US Debtors, the Canadian Debtors and the EMEA Debtors agree to accept requests under Rule 34.04 of the Ontario Rules of Civil Procedure and Deposition Notices under the United States Federal Rules of Civil Procedure seeking to depose or examine persons under the control of their clients. All parties agree to cooperate in good faith in attempts to locate and obtain testimony from persons not under the control of any party, including through issuance of compulsory process, letters of request and other available procedures, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony.

The Bondholder Group shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, regarding any fact witnesses it seeks to examine or depose. In the event that the Canadian Allocation Group and the US Allocation Group do not intend to designate such fact witnesses that the Bondholder Group seeks to designate, the Bondholder Group may seek leave of the Court or Courts, as applicable, by motion on notice to designate such fact witnesses.

Either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to designate additional fact witnesses upon a showing of good cause.

Use of Depositions at Trial:

Designated portions of any deposition may be filed as part of the evidence that any party may rely upon at trial ~~(subject to objections which may be ruled upon by the Court as contemplated herein), except that testimony of a deponent who is employed by, party to a cooperation agreement with or otherwise under the control of a Core Party may not be relied upon as evidence by that Core Party or by others sharing its interests on the issue to which the testimony relates~~in accordance with the rules that apply in Canada and in the U.S. Courts, respectively.

If a witness who has been deposed is later called as a witness to give

*viva voce* evidence at the trial, the transcript (or designated portions thereof) will still form part of the trial evidence and the entire transcript may also be ~~used~~ to impeach the witness or challenge his/her credibility.

<u>Use of Cross Examinations at Trial:</u>

If a witness who previously swore an affidavit or made a statement in these proceedings and whose prior evidence is designated by a ~~Core Party~~<u>Discovery Participant</u> to be tendered at trial is cross examined prior to trial, the entire cross examination transcript will form part of the trial evidence.

**C.    Deadline for all Examinations,  Cross-Examinations  and Depositions:**

<u>All to be completed by no later than ~~August 30,~~September 27, 2013</u>

All examinations, depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any ~~undertakings~~ to be answered within two weeks of each examination) shall be completed by this deadline, with a preference to finish fact witness depositions<u> and depositions regarding matters that will be the subject of expert testimony</u> prior to any representative party examinations (discovery).

~~Once~~ all fact witnesses have been identified, the relevant ~~Core Parties~~<u>Discovery Participants</u> shall attempt to agree on a schedule that contemplates the completion of all witness examinations, cross-examinations and depositions ("Examinations") in this time frame that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness). ~~Each Examination shall be co-ordinated so that a lead examiner is identified and the order of Examination shall reflect a co-ordinated effort to avoid duplication of questions.  No single witness who has been designated to be examined by up to 3 Core Parties shall be examined for longer than 7 hours in total (by all Core Parties combined) and any single witness designated by more than 3 Core Parties shall not be examined for more than 14 hours, without leave of the Court(s) or the agreement of all Core Parties.~~

~~All motions arising from Examinations to be served by September 13, 2013, to be heard by October 18, 2013 or as otherwise ordered by the Courts.~~

|  |  |  |
|---|---|---|
| <u>7.</u>  8.~~Experts~~ | <u>By no later than ~~August 16,~~September 13, 2013</u> | |

Each ~~Core  Party~~<u>Discovery  Participant</u> that  intends  to  rely  on  the

opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

By no later than ~~September 13,~~October 11, 2013

Each ~~Core Party~~Discovery Participant shall deliver an affidavit or a report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by ~~bates~~Bates number if previously produced, and containing the disclosures required under Rule 26(a)(2) (B) of the United States Federal Rules of Civil Procedure and Rule 53.03 of the ~~Ontario~~ Rules of ~~Civil~~ Procedure regarding the expert's qualifications, prior engagements, compensation and independence.

Any ~~Core Party~~Discovery Participant that has previously filed ~~an~~ affidavit or report from an expert in the context of this litigation (the ~~Ontario~~ and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial, subject to the requirements for an expert's attendance at trial set out below. If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

Promptly after the submission of initial expert affidavits or reports, the Discovery Participants shall attempt to agree upon an expert deposition schedule to commence by November 18, 2013.

By no later than ~~October 18,~~November 8, 2013

Each ~~Core Party~~Discovery Participant shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another ~~Core Party~~Discovery Participant that addresses an issue that is adverse to any position of the ~~Core Party in this litigation~~Discovery Participant in the Allocation, Canadian Claims or U.S. Claims. Responses shall be permitted even if the ~~Core Party~~Discovery Participant did not initially tender an expert's affidavit or report, if an issue is raised by an expert whose evidence is tendered by ~~another~~ party that calls for response. Responsive reports shall be limited to responding to issues on which an affirmative expert has been proffered and shall not go beyond such issues.

~~By no later than October 25,~~December 6, 2013

~~Any Core Party who wishes to cross-examine an expert of an Opposing Core Party may serve notice of its intention to do so, regardless of whether or not that party has filed its own expert evidence.~~

EMEA Blackline to Monitor's Draft Discovery Plan

~~October 25 to November 22, 2013~~

The ~~Core Parties~~Discovery Participants will attempt to agree to a schedule that contemplates the completion of all expert witness depositions between ~~the notice date~~November 18, 2013 and this date that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness).

~~Each examination shall be co-ordinated so that a lead examiner is identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness shall be examined for longer than 14 hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of all Core Parties.~~A Discovery Participant may request that any expert be present at trial for cross-examination, and the affidavit or report of any expert not appearing at trial if requested to appear cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the Expert's position.

The affidavits and ~~transcripts of depositions~~/or reports of the experts shall be filed as evidence with the court at the trial, subject only to cross examination at trial and any applicable objections (including, without limitation, as to qualifications) that may be made and determined at the outset of the trial and directions from the Court(s) arising therefrom. The ~~Core Party~~Discovery Participant proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless agreed to by all Core Parties adverse to the expert's evidence.

~~Motions Concerning Experts:~~

~~Any motions arising from expert reports and depositions of experts are to be made promptly and heard by November 29 or as otherwise ordered by the Courts.~~

Communications with Experts:

The experts shall not be examined about or asked to produce prior drafts of their affidavits/reports and/or their communications with counsel who retained them or other Discovery Participants with in the same Allocation or Claim Group, or their respective Representatives (although they may be asked to disclose the specific questions they were asked to answer).

EMEA Blackline to Monitor's Draft Discovery Plan

| | |
|---|---|
| **8.** 9. **General Procedure Applicable to all pre-trial Examinations** | Attendance at Oral Examinations/Depositions

For the avoidance of doubt, all ~~Core Parties~~Discovery Participants shall have the right to attend all oral ~~Examinations~~examinations/depositions that relate to any issue, regardless of whether or not they have a right to examine that witness.

Coordinating Oral Examinations/Depositions:

Each ~~Examination~~examination shall be coordinated so that a lead examiner is identified for each group.  Lead examiners shall work in good faith with any others who are participating in the examination to try to use the available time most efficiently and avoid, to the extent possible, duplication of questions.

Transcripts and video taping:

All ~~Examinations~~examinations shall be taken under oath before a certified court reporter and transcribed and the transcripts made available to all ~~Core Parties~~Discovery Participants, whether or not they are in attendance at the examination.  At the option of any examining party, the ~~Examination~~examination may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the ~~Court~~Court(s). The examining party(ies) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

Objections:

Objections may be made on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), form, subsisting privilege and proportionality only.  An objection to form shall not be made solely on the basis that a question is leading unless the deponent is employed by, party to a cooperation agreement with or otherwise under the control of the ~~Core Party~~Discovery Participant represented by the questioner.  Questions that are objected to solely on grounds of relevance or form shall be answered under reserve of that objection.  All other objections shall be preserved.

Requirement for Summons:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US ~~Estates and~~Debtors, the Joint Administrators and the UK Pension Claimants shall reasonably assist in issuing process or otherwise procuring a witness's attendance irrespective of which ~~Core  Party~~Discovery Participant has sought the witness's deposition, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from |

which that party does not seek testimony. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment to that jurisdiction for any other purpose.

Undertakings:

~~The~~With respect to Allocation and Canadian Claims, the witness shall answer any undertakings that were agreed to on his/her examination within two weeks of the date of his/her examination, unless otherwise agreed to by the affected Discovery Participants.

| | |
|---|---|
| **9. ~~10.~~ General Terms** | Any ~~Core Party~~Discovery Participant may make a motion to the Court to compel another ~~Core Party~~Discovery Participant to take the steps contemplated by the Discovery and Deposition Plan or other steps, and the Parties agree that the Court(s) may take the existence of the Discovery and Deposition Plan into account in determining whether to grant the Order sought. The respondent on such a motion may seek to justify its non-compliance with the Discovery and Deposition Plan on the basis of, among other things, any information that was unknown or unavailable to that Party at the time the Discovery and Deposition Plan was entered into. |

~~Breach of this Discovery and Deposition Plan does not, in and of itself, give rise to a right to damages or any other monetary relief, or to injunctive relief, although the Core Parties agree that the Court(s) may take any breach of this Discovery and Deposition Plan into account in exercising discretion with respect to costs or other sanctions, or on an application for injunctive relief.~~

The ~~Core Parties~~Discovery Participants recognize that, as additional information becomes available throughout the Allocation, Canadian Claims and U.S. Claims litigation, it may become apparent that: (a) it is impracticable or impossible for a ~~Core Party~~Discovery Participant to comply with the terms of the Discovery and Deposition Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery and Deposition Plan, are required in order for a ~~Core Party~~Discovery Participant to obtain access to relevant documents ~~in the litigation. Each Core Party~~, information or witness testimony. Each Discovery Participant agrees to notify the other ~~Core Parties~~Discovery Participants promptly when it ~~knows~~believes that it will not comply with any term of the Discovery and Deposition Plan or when it concludes that ~~another Core Party should take~~further steps beyond those set out in this Discovery and Deposition Plan are required. The ~~Core Parties~~Discovery Participants agree to negotiate in good faith with respect to any amendments to the Discovery and Deposition Plan requested by a ~~Core Party~~Discovery Participant on the basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve

EMEA Blackline to Monitor's Draft Discovery Plan

disputes between the Core Parties.

The ~~Core Parties~~Discovery Participants shall meet and confer in good faith without the assistance of the Court(s) and attempt to resolve any disputes in the interpretation or implementation of the Discovery and Deposition Plan. ~~Core Parties~~Discovery Participants are required to promptly seek relief from the applicable Court(s) ~~once~~if an impasse ~~has been~~is reached in any dispute. This relief may be raised for the Court(s) for initial consideration at an informal joint case conference before taking any other procedural steps by way or motion or otherwise as long as that can be arranged promptly.

All motions or directions sought from the Court(s) pursuant to this Discovery and Deposition Plan shall be brought to Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and/or Justice Morawetz of the Ontario Superior Court of Justice as the case may dictate, or any referee who they may direct~~;~~,

The EMEA Debtors' participation in the procedures addressed herein is without prejudice to their contention that Allocation should be decided by arbitration rather than the US and Canadian Courts, and shall not be construed as a waiver of their objection to determining Allocation in accordance with the procedures set forth in the Allocation Protocol, this Discovery Plan and the Litigation Timetable.

Prepared and agreed upon by:

**[To be signed by Counsel of Record for each ~~Core Party~~Discovery Participant]**

EMEA Blackline to Monitor's Draft Discovery Plan

## APPENDIX 1

Format for Exchange of Productions: Productions will be exchanged by loading each production into the Merrill Lextranet database with the following objectively coded metadata~~, if reasonably possible,~~ and in the following form:   **[NTD:   Subject to confirmation by Merrill.]**

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| **Document Numbering** | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note ~~text~~Text | Docid(s) attached to Parentid | AA0000001 |
| **Fields/Coded Data for E-mails** | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY<br><br>As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Bcc* | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment<br><br>When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc<br><br>This field is required for loading electronic documents and attachments. | As per metadata |
| **Fields/Coded Data for Attachments and Loose Electronic Documents** | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record<br><br>Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |

EMEA Blackline to Monitor's Draft Discovery Plan

| Item | Field | Field Type | Description | Format |
|---|---|---|---|---|
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment<br><br>When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc<br><br>This field is required for loading electronic documents and attachments. | As per metadata |
| ~~Fields/Coded Data for Paper Documents~~ | ~~*Docdate*~~ | ~~Date~~ | ~~Date of document (subjectively coded)~~ | ~~MM/DD/YYYY~~ |
| | ~~*Doctype*~~ | ~~Note Text~~ | ~~Type of document (subjectively coded)~~ | |
| | ~~*Doctitle*~~ | ~~Note Text~~ | ~~Title of document (subjectively coded)~~ | |
| | ~~*Attach#*~~ | ~~Note Text~~ | ~~Sequential number applied to attachments showing attachment sequence~~ | ~~.001, .002, etc.~~ |
| | ~~*Author*~~ | ~~Multi-Entry~~ | ~~Author(s) of document (subjectively coded)~~ | ~~Last name, first name [corporate affiliation]~~ |
| | ~~*Recip*~~ | ~~Multi-Entry~~ | ~~Recipient(s) of document (subjectively coded)~~ | ~~Last name, first name [corporate affiliation]~~ |
| Fields/Coded Data for ~~Paper and~~ Electronic Documents (Chronological Review) | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| | *~~Redact~~Leadtime* | ~~Note~~Date | ~~Document has redactions~~Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together<br><br>Allows for further sorting of documents dated the same day by time | ~~"Redacted" stamped on document~~HH:MM:SS |

~~1.~~

1. Each document shall be individually produced with a unique document ID number.

~~2.    OCR text searchable, to the extent the document permits~~

2. For each document, the responding party shall provide a text file containing the text extracted directly from the native electronic version of that document, unless the document was redacted, is an image file, is a scanned hardcopy document, or is in another format from which text cannot be reasonably extracted. In these instances, provide a text file created using document-level optical character recognition (OCR) to the extent reasonably practicable.

~~3.~~

3. All images will be single page tiff format (excluding spreadsheets, Powerpoint presentations and database files, which will be provided in native format) with 300

dpi specifications.  Spreadsheets, Powerpoint presentations and database files to be provided in ~~native format~~the eDocs folder.

\6181973

4.      Parties will provide the following load files formatted as follows:

    (a)     Image folder (single page tiff, 300 dpi);

    (b)     eDocs folder (for native files, specifically Excel, Powerpoint and database files, which will not be tiffed);

    (c)     OCR folder (with text files and a control list for loading);

    (d)     data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

    (e)     imginfo.txt, imginfo.csv or imginfo.opt, at the option of the receiving party.

5.      If a document and its exact duplicates are associated with the same custodian, the responding party may withhold the exact duplicates from production.  If a document and its exact duplicates are associated with different custodians, the responding party may withhold the exact duplicates from production and provide a metadata field for the produced document indicating the custodians for whom duplicates were withheld.

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No. 09-CL-7950

---

### *ONTARIO*
### **SUPERIOR COURT OF JUSTICE – COMMERCIAL LIST**

Proceeding Commenced at Toronto

---

### **RESPONDING SUBMISSIONS**
### **OF THE EMEA DEBTORS**
### **(Returnable April 24, 2013)**

---

**LAX O'SULLIVAN SCOTT LISUS LLP**
145 King Street West, Suite 2750
Toronto, ON  M5H 1J8

Matthew P. Gottlieb (LSUC#: 32268B)
Tel: 416.644.5353; Fax: 416.598.3730
Tracy Wynne (LSUC#: 37395R)
Tel: 416. 598-7835; Fax: 416.598.3730

**DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto, ON  M5V 3J7

Robin B. Schwill (LSUC #38452I)
Tel: 416.863.5502; Fax: 416.863.0871

Lawyers for Nortel Networks UK Limited (In Administration) et. al.

Tor#: 2967703.1