## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                                                       :
                                                       :    Chapter 11
                                                       :
*In re*                                                :    Case No. 09-10138 (KG)
                                                       :
Nortel Networks Inc., *et al.*, [1]                    :    Jointly Administered
                                                       :
                             Debtors.                  :    Re:  D.I. 10145 & 10210
                                                       :
-------------------------------------------------------X

## DEBTORS' STATEMENT IN SUPPORT OF DEBTORS'
## PROPOSED LITIGATION TIMETABLE AND DISCOVERY PLAN

1.      The Debtors in the above-captioned cases hereby submit a statement in support of their proposed Litigation Timetable[2] and Discovery Plan (the "US Debtors' Proposals"), attached as Exhibits A and B respectively to the *Debtors' Notice of Filing of Proposed Litigation Timetable and Discovery Plan* [D.I. 10210] (the "Notice"), filed on April 19, 2013.

2.      Over the last month, the US Debtors have conferred extensively with counsel for the various Discovery Participants in the separate but coordinated Allocation, US Claims and Canadian Claim litigations regarding the proposed Litigation Timetable and Discovery Plan.  The US Debtors have circulated numerous drafts and have worked in good faith

---

[1]      The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]      Capitalized terms that are undefined shall have the meaning ascribed to them in the Allocation Protocol attached as Exhibit A to the April 15, 2013 *Certification of Counsel Regarding Allocation Protocol* [D.I. 10133] or Annex A to the Litigation Timetable, which is attached as Exhibit B to the Notice.

to suggest solutions to concerns raised.[3]  As a result, the Committee, the Bondholder Group and the Indenture Trustees fully support the US Debtors' Proposals, and the Directors and Officers have no objection.  Further, there are large areas of agreement between the US Debtors and the UK Pension Claimants, the EMEA Claimants and the Monitor.  Nonetheless, three key issues regarding scheduling and discovery remain unresolved among the various parties at the time of this filing.  The key differences between the various proposals and the parties' positions on each are explained below and summarized in **Exhibit A** hereto.

### Allocation, US Claims, and Canadian Claims are Three Separate Litigations

3.      First, as this Court has acknowledged, the Allocation, US Claims and Canadian Claims are three distinct sets of litigations with their own procedural rules and involve different parties, and even if they are coordinated, they can only be decided independently by the respective Courts having jurisdiction over each of the separate sets of claims or disputes.  The Monitor's proposed timetable and discovery and deposition plan (the "Monitor's Proposals"),[4] however, makes no differentiation between the three separate litigations and on the contrary, expressly bundles the three sets of proceedings and do not take into account the applicable procedural regime for each of the litigations.  To ignore this distinction could cause unintended consequences.[5]

4.      While discovery for each of these three litigations can and should be coordinated for efficiency and certain evidence may be heard at a joint hearing before the US and

---

[3]      See the Notice for a full description of the evolution of the US Debtors' Proposals.

[4]      Blacklines of the US Debtors' Proposals compared with the Monitor's Proposals are attached as **Exhibits B and C**.

[5]      One example of the unintended consequences of the Monitor's Proposals would be that all expert reports would have to conform with both the United States Federal Rules of Civil Procedure and the Ontario Rules of Civil Procedure, and accordingly foreign law experts retained by the US Debtors to proffer evidence on foreign law in the context of the US Claims would be required to acknowledge a duty to the Canadian Court that does not exist.

Canadian Courts, this cannot mean that the three litigations can or should be treated as one for all purposes. This is especially true in light of the EMEA Debtors' appellate challenge to the jurisdiction of the US and Canadian Courts over the Allocation dispute, whereas they do not dispute that jurisdiction by the respective Courts is proper for the US and Canadian Claims.

5. Moreover, the Monitor's Proposals would include constituencies like the CCC and the Canadian Director and Officers—who are not parties to the US Claims, let alone even parties in interest to these Chapter 11 proceedings—as participants in the US Claims litigation. This would afford them the right to seek discovery on those claims, be heard on those claims, and otherwise assert rights coextensive to those held by the parties to those claims, and well beyond the rights actual US creditors would and do have with respect to the US Claims. Only "a party in interest" "may raise and may appear and be heard on any issue" before this Court. 11 U.S.C. § 1109(b). As the Third Circuit has noted, the party in interest requirement is "effectively coextensive" with standing under Article III of the Constitution. *In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 210-11 (3d Cir. 2011). Merely because some parties have a stake in other Nortel proceedings does not mean that they have a (i) specific—and not merely conjectural or hypothetical—injury that is (ii) traceable to the US Claims and would be (iii) redressed by a favorable decision. *See In re W.R. Grace & Co.*, 475 B.R. 34, 177 (D. Del. 2012) (listing the three requirements for constitutional standing). This Court has recognized that there is no statutory or judicial support to conclude that a creditor of a creditor, much less a group like the CCC that represents creditors of an equity-holder, has standing in a bankruptcy case. *See, e.g.*, *In re Lifeco Inv. Group, Inc.*, 173 B.R. 478, 487-88 (Bankr. D. Del. 1994) (referring to "numerous cases" that hold the same).

**Reasonable Limits on Discovery**

6. Second, the parties disagree as to how to reasonably limit discovery in light of (i) the large number of Discovery Participants and counsel in multiple jurisdictions, (ii) the need to conduct discovery in a timely and efficient manner to be ready for the January 6, 2014 trial, and (iii) the substantial number of documents already exchanged between the estates and other parties in the context of mediation on the Allocation issue. Only the US Debtors' proposal, which treats parties with aligned interests as a discovery group with rights to seek discovery akin to a single participant through collaborative discovery requests, can avoid duplicative and burdensome requests, interrogatories and depositions while ensuring each party has reasonable access to discoverable material.

7. To illustrate, in Allocation, the US Debtors propose three primary discovery groups, each called an Allocation Group: the Canadian Allocation Group (made up of the Canadian Debtors, Monitor and CCC); the EMEA Allocation Group (made up of the UK Pension Claimants, the EMEA Debtors and certain other EMEA entities who were involved in the asset sales); and the US Allocation Group (made up of the US Debtors and the Committee). Under the US Debtors' Proposals, each of the Allocation Groups must serve one set of document requests and one set of interrogatories that reflect the collaborative effort of all of the members of the Allocation Group. Using discovery groups means that each party cannot be served with more than three sets of document requests or interrogatories for Allocation,[6] and discovery in the US Claims and Canadian Claims would add no more than two sets of document requests and interrogatories. Under the Monitor's Proposals, a party could receive up to ten sets of document

---

[6] The Bondholder Allocation Group must consult with the US and Canadian Allocation Groups, as applicable, before serving document requests and/or interrogatories, and those Core Parties who are not in one of the Allocation Groups may suggest inclusions in the document requests and/or interrogatories of an Allocation Group with similarly aligned interests, and if agreement cannot be reached, seek leave of the Courts to serve their own document requests and/or interrogatories.

requests and interrogatories that are slightly different or nuanced.  The parties would then need to spend extensive time reconciling, objecting to and meeting and conferring regarding each request separately, ultimately requiring the Courts to play referee between many more combinations of at-odds pairs.

8.    The US Debtors propose a group approach for depositions as well.  For depositions conducted pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, each of the Allocation Groups described above collectively serves the topics on which it would like to depose another party's representative.  For fact witness depositions, parties in both Allocation and US/Canadian Claims are combined such that there are three groups based on aligned interests, and each group can designate up to ten fact witnesses.[7]  This limits the total number of fact witness depositions to a maximum of thirty.  The Monitor's Proposals, on the other hand, allow each party to notice its own depositions under Rule 30(b)(6) and to designate up to ten fact witnesses.  Under the Monitor's Proposals, over one-hundred witnesses could be deposed, which is an impossible task given the expedited time frame for these litigations.

9.    Another way the US Debtors propose to reasonably limit discovery is with respect to hard-copy documents.  The US Debtors' proposed Discovery Plan provides that in light of the enormous volume (and dubious utility) of hard-copy documents maintained in off-site storage facilities and the abundance of available and overlapping electronic data, no party will be obligated to search hard-copy documents.  Instead, a party has to produce only indices of hard-copy documents to the extent they exist, and thereafter will meet and confer with respect to the hard-copy document indices and may make some hard-copy documents available for inspection upon request.  In the US alone, there are over two-hundred thousand boxes of

---

[7]    The Bondholders Allocation Group must consult with the US and Canadian Allocation Groups, as applicable, on all fact and 30(b)(6) depositions and may seek leave of the Court(s) if additional depositions are needed.

documents stored before the bankruptcy in approximately twenty off-site storage facilities, dating as far back as 1980. It would be the proverbial search for a needle in a haystack to search such documents. Both the Monitor and the EMEA Claimants support this position, while the UK Pension Claimants do not.

**US Debtors' Proposed Litigation Timetable Allows Necessary Time for Expert Discovery**

10.    Third, and lastly, the EMEA Claimants and UK Pension Claimants request more time in the schedule for fact discovery at the expense of expert discovery and preparation of pre-trial submissions at the close of all discovery. The US Debtors and the Monitor agree that such a schedule simply cannot work given the January 6, 2014 start date and the substantial number of experts required by a case of this complexity.

11.    The US Debtors' proposed Litigation Timetable, as well as the Monitor's proposed Litigation Timetable, requires that fact discovery be completed by August 30, 2013 and provides that expert discovery be completed by November 22, 2013. This allows approximately three-and-a-half months for fact discovery and two-and-a-half months for expert discovery. In their comments to the US Debtors' Proposals, the EMEA Claimants have proposed that fact discovery ends on September 27, 2013, and the UK Pension Claimants have proposed that fact discovery ends on September 30, 2013. The EMEA Claimants and the UK Pension Claimants thus request that the time allotted for fact discovery be extended by one month and the time allotted for expert discovery be decreased by one month.

12.    The schedules proposed by the EMEA Claimants and UK Pension Claimants are unrealistic given the number of experts required in the three litigations. The Allocation dispute is complex and involves many different areas of substantive law, many of which will require expert opinion. In addition, the EMEA Claimants and UK Pension Claimants

make allegations under the laws of many foreign nations and therefore will require experts on each of those foreign laws. Given the nature of the litigations, each estate could have over a dozen experts and will need as much time as possible for the expert reports, rebuttal expert reports and expert depositions.

13. In sum, the US Debtors recognize that all parties have a right to discovery but assert that reasonable limits are essential in order to start trial on January 6, 2014. Any perceived limits on each party's ability to take discovery is mitigated by the fact that no party has objected to the provisions in the US Debtors' Proposals and the Monitor's Proposals that provide that all documents will be produced to a shared dataroom, which every Discovery Participant will have access to, and that all Discovery Participants will be entitled to attend and receive a transcript of every deposition. The US Debtors' proposal ensures not only that all parties have the discovery needed to litigate these disputes, but properly balances efficiency and expediency with preserving each parties' rights to meaningfully participate.

14. For the foregoing reasons, the Debtors respectfully request the Court enter the US Debtors' proposed Litigation Timetable and Discovery Plan.

*[Remainder of Page Intentionally Left Blank]*

Dated:  April 23, 2013
         Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*