## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) | **RE:   D.I. # 8067,9304,9427,10049** |
|  | ) |  |
|  | ) | **Objection Due: April 19, 2013** |
|  | ) | **at 4.00 pm (EST);** |
|  | ) |  |
|  | ) | **Hearing Date: April 30, 2013** |
|  | ) | **at 10.00 am (EST)** |
|  | ) |  |

## OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE
## OF LONG TERM DISABILITY PARTICIPANTS FOR
## APPROVAL OF DISTRIBUTION AND RELATED RELIEF

Daniel D David, a disabled LTD employee, of the above-captioned Motion of the official

committee of Long Term Disability participants for approval of distribution and related relief.

In support of this Objection, Daniel D David respectfully represents as follows:

---

[1]   The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## **BACKGROUND**

1. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks Inc., filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code (the "Chapter 11 Cases"), which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On June 3, 2011, a significant number of LTD Participants filed a joinder to the Retiree Committee Appointment Motion (Docket No. *5595).* Contemporaneously, certain LTD Participants filed a motion seeking appointment of a committee as the official representative for LTD Participants (Docket No. *5595)* (the "LTD Committee Appointment Motion"). Additionally, multiple other LTD Participants filed correspondence with the Court supporting the relief sought in the Retiree and LTD Committee Appointment Motions. *(See, e.g.,* Docket Nos.5659-61, *5670-76,* 5678-81, 5694-5701, *5703-5708, 5712-5716* and *5760-5764).*

3. On August 2, 2011, the United States Trustee appointed the members of the LTD Committee [D.I. 6073], as amended on August 4, 2011 [D.I. 6080];

4. The LTD committee by-laws were drafted  and the LTD committee selected the legal representation of Elliot-Greenleaf as their Attorney on August 5, 2011.

5. *On July 30,2012 Debtors filed Motion for entry of an order pursuant to 11  US. C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long Term Disability Plans and the Employment of the LTD Employees* (Docket No. 8067).

## PREFACE.

**Rulings based on Number of Objections**: I request that the court not discount the value and worth of Objections submitted concerning any Long Term Disability Motions. Due to these factors:

- Everyone is Disabled and medically unable to do objections in a timely fashion,

- 50% unable to access internet,

- Many others incapable of writing objection to court,

- Others unable to pay for expenses for postage and costly Court Call Fees.

- so therefore the few of LTD employees that do submit objections, the points brought up should be considered upon the impact of the LTD employees situation and not quantity (the standard of percentage of Objections), to decide whether the Motion/ objections are valid or not.

Nortel Networks, Inc. employee. Thank you.

## RELIEF REQUESTED

6. I respectfully request that the settlement funds to be received from the purchaser be disbursed to LTD participant based on their election to participate in VEBA(Voluntary employees' beneficiary association) and contribution of medical funds being deposited into an HRA(Health Reimbursement Agreement). The process should be kept legal in all aspects so that there are no repercussions to the LTD participant.

7. I respectfully request that my portion of the funds be distributed as cash and only charged a nominal fee for the writing of the check to me, withholding of the Federal Income Tax for the IRS and processing of my W-2 at start of 2014.

8. The fee for distribution should be kept to minimum in order to give the maximum value of the distribution to LTD participants.

## BASIS FOR RELIEF

9. Based on our constitutional right given to us by Congress under USC 501(c)(9) that the participation of LTD membership in regards to VEBA is voluntary. Treas. Reg. 1.501(c)(9)-1(b).

§ 1.501(c)(9)-1   *Voluntary employees' beneficiary associations, in general.*

*To be described in section 501(c)(9) an organization must meet all of the following requirements:*

*(a) The organization is **an employees' association**,*

*(b) **Membership in the association is voluntary**,*

*(c) The organization provides for the payment of life, sick, accident, or other benefits to its members or their dependents or designated beneficiaries, and substantially all of its operations are in furtherance of providing such benefits, and*

*(d) No part of the net earnings of the organization inures, other than by payment of the benefits referred to in paragraph (c) of this section, to the benefit of any private shareholder or individual.*

**Introduction - possible repercussions**

**10. Facts**

a. In paragraph 7 of the Motion presents a formation of LLC & VEBA entity. In IRS notice 2002-45 section II benefits under an HRA.

> *Reimbursements for insurance covering medical care expenses as defined in § 213(d)(1)(D) are allowable reimbursements under an HRA, including amounts paid for premiums for accident or health coverage for* **current employees, retirees, and COBRA qualified beneficiaries.**

It would be illegal to form a LLC. or VEBA entity to provide HRA benefits based on LTD employees status. We are not current employees as of July 1st 2013 and the funds provided to VEBA-HRA would be coming from sale of allowable unsecured claim and not from our current employer. The settlement is not employer contribution to VEBA-HRA.

b. In paragraph 11 of the Motion I see no benefit in an illegal VEBA LLC prior to a PLR being issued. Also we can create a very dangerous situation prior to the purchase and implementation of an annuity contract.

 Note: the members of the LLC could shut down the VEBA trust on their own consent and withdraw funds out of the Trust and be gone. There will be nothing stopping the group to withdraw the funds and it would be almost impossible to implicate any criminal action against the VEBA members under the powers given to owner of the Trust.

c. Is it legal for the Court to permit and override creation of an illegal LLC for the purpose of VEBA TRUST and allow this entity to provide HRA and structured payments?

d. I just don't feel comfortable and secure entering into this situation for me and for the LTD group as a whole.

e. Another issue I have is that all Annuity pay some kind of interest income/investment income but in paragraph 9 we are having to pay up to 4% administration fee and no return. This doesn't give you a warm fuzzy feeling.

11. **Concerns from LTD participants regarding HRA/Annuity payment**

    a.   Some of us have deductions to offset the settlement or potion of settlement.

    b.   Some people rather pay their taxes and their debts for a peace of mind in our condition.

    c.   Some just don't want the burden of complication of keeping track of HRA/Annuity.

    **d.**   Some are just scared of taking advantage of benefits by joining VEBA and get audited by IRS at a later date. In the process end up paying the taxes on the whole amount plus penalties and interest for year 2013 any way.

    e.   There are retirement stocks paying 10-15% dividend in the stock market and very stable stock through the market crash. Lot of LTD participant can benefit from purchasing an investment in retirement stock and gain over and above tax savings without jeopardizing their settlement.

12. **Lump sum settlement amount**

    a.   Is this LTD sick pay benefit settlement amount............$ 123,456.00 ?

    b.   For item (a) in LTD participant W-2 form Box 13 should be marked as sick pay.

    c.   If the Box 13 is not marked as third party sick pay the amount on line (a) is considered as income and considered as social security wages automatically.

    d.   This creates a situation where LTD employee has to pay 15% FICA tax, refund current years' SSDI income if over $9,600.00, lose your Medicare benefits and at the same time pay any heavy penalties plus interest.

e.  If a W-2 is not issued we need a letter from Court stating that the amount of settlement is sick pay benefits.

f.  We need to resolve some of this issues prior to disbursement.

## 13. VEBA HRA – stand alone

a.  HRA is an account where we can put up to $60,000 of our medical benefits which is tax free.

b.  In case of LTD participants death the HRA account could be used by your spouse / dependents covered under the plan and if you don't have covered dependents you forfeit the money or lose it in case you die.

c.  Unfortunately the leftover amount in HRA is not willable or inheritable.

d.  Right now the plan is to use up the HRA funds in 4 years.

e.  There are several fee expenses not mentioned in the Motion other than the 4% of total settlement.

## 14. VEBA Annuities – deferred payments

a.  The Annuity mention in the Motion devalues your money over the 4 years even though we benefit from income deferral on taxes.

b.  Is annuity based on personal level? If yes, Is the annuity willable or inheritable?

c.  If annuity is based on LTD group (VEBA) level then Is there a provision for designating a beneficiary of your choosing.

d.  There are several fee expenses not mentioned in the Motion other than the 4% of total settlement.

15. Has the committee surveyed the LTD constituency regarding the LTD members participation in V.E.B.A (Voluntary employees' beneficiary association) for the structured payment and HRA implementation.

16. The LTD participants are discriminated based on age in receiving their cash distribution of structured payments. The participants younger than 57 years get 4 payments, participants 57 through 61 get 2 payments and 62 through 65 get a single payment.

17. In paragraph 34 the LTD committee states that the structured method of distribution of funds is best for the constituency at what cost to the LTD participant and their families in case of the LTD participant's death.

18. In paragraph 36 the committee is exercising their power to execute section 1103(1c) (5) *perform such other services as are in the interest of those represented.* The LTD committee has taken the position that they can do anything they want because the committee as class members has the power to do so. The committee was given the Class classification only for the settlement purpose and not to infiltrate in LTD participant personal financial well being by forcing tax shelter service and other sublet of services with some very bad consequences in case of participant's death.

*19.* In paragraph 37 The LTD Committee has NO rights to force the constituency to participate in a VEBA and HRA or pay any management fee thereafter based on any bankruptcy code as such. The committee is misinterpreting 11 USC 1103(c)(3) which states *participate in the formulation of a plan, advise those represented by such committee of such committees determinations as to any plan formulated, and*

collect and file with the court acceptances or rejections of a plan; and (5) *perform such other services as are in the interest of those represented.* The committee has performed their fiduciary duty by completing that in the negotiation for the settlement and sales of the unsecured claim.

20. Regarding 11 USC 1103(c)(5) *perform such other services as are in the interest of those represented* is open ended and could include services such as set up automatic payment for constituency bill pay for a fee, arrange for constituency doctors visit for a fee, arrange financial advice services for a fee and lot of other services. An 1102 committee should not have any power to infiltrate into constituency private lives.

21. In paragraph 40 The committee states they must take care to obtain maximum value for its constituents and the LTD committee has established that in the negotiation for the settlement and sales of the unsecured claim, The LTD committee has done their fiduciary duty, however, the committee now wants to purchasing an annuity through the VEBA Trust which will create a situation where the young or healthier beneficiaries of the intended Trust could benefit from the weaker and elderly beneficiaries on their expiration or death. (See 26 U.S.C 72). At the moment the motion has not stated the type of annuity that will be purchased, therefore we don't know which section of 26 U.S.C. 72 law will apply.

22. In paragraph 39 through 41 the committee states cases in which fiduciary duties were accomplished by other committee but none of the committees took steps to create a LLC or committee entity to undergo a tax saving scheme. What the committee is creating a situation dangerously confusing and border line scam.

23. I understand that most of us will be faced with tax issues except we are not given the opportunity on the topic. There are several legal ways to create tax shelters without jeopardizing the LTD participant's estate by entering into a trust where the trust beneficiaries benefit from a LTD participant passing away or death.

**24.** In paragraph 43 the committee states that the implication of being taxed on social security benefit, however all the LTD participants have been taxed on SSDI from day one. There are hand full of people who actually qualify for Medicaid and the Medicare premium will increase a minute amount just for the year they receive the settlement. (see **Exhibit A** for procedure)

**25.** The motion illustrated by the LTD committee did not once talked about, or performed research in field of finding LTD participants information on different supplementary Medicare plans which are essential to our well being.

26. The proposed settlement belongs to LTD employees or accounts owned by LTD employees.

27. An HRA account is owned by the employer or assigned manager of the account (VEBA or LTD committee) not the LTD employee. The owner of HRA account can cancel the account at anytime and remove the funds and I see no legal protection for the LTD employee. Also, to receive any funds from the account, the application for reimbursement has to be approved by the owner of the account. This type of distribution to the LTD employees is just not acceptable, the HRA belongs to the owner of the account (VEBA LTD committee), not to the LTD employee.

28. I bring up these observations and discrepancies in hopes that justice and fairness will prevail in this case.

## NOTICE

29. Notice of this Objection has been provided to (a) counsel to the Debtors; (b) the United States Trustee for the District of Delaware; (c) counsel to the LTD 1102 Committee; and (d) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware through the Court's electronic filing system.  Daniel D David respectfully submits that, given the nature of the relief requested, no other notice of the relief requested herein need to be given.

**WHEREFORE**, Daniel D David respectfully requests the entry of an Order, in the form:-

a. Order that the settlement funds to be received from the purchaser be disbursed to LTD participant based on their election to participate in VEBA and contribution of medical funds being deposited into an HRA.

b.  Order that my portion of the funds be distributed as cash and only charged a

nominal fee for the writing of the check to me and withholding of the Federal

Income Tax for the IRS and processing of my W-2 at start of 2014.


c.  Order that the fee for distribution should be kept to minimum in order to give

the Maximum value of the distribution to LTD participant.


Dated:  April 19, 2013

_____

Daniel D David
2105 possum trot rd.
Wake Forest, NC 27587

Telephone(919) 554-9291
Facsimile:  N/A
Email: ddavid4@nc.rr.com

*Appearing Pro Se*

**Exhibit A**



# Social Security

## Medicare Premiums: Rules For Higher-Income Beneficiaries

2013

www.socialsecurity.gov

## Contacting Social Security

### Visit our website

Our website, ***www.socialsecurity.gov***, is a valuable resource for information about all of Social Security's programs. At our website, you also can:

- Apply for retirement, disability, and Medicare benefits;
- Review your *Social Security Statement*;
- Get the address of your local Social Security office;
- Request a replacement Medicare card; and
- Find copies of our publications.

### Call our toll-free number

In addition to using our website, you can call us toll-free at **1-800-772-1213**. We treat all calls confidentially. We can answer specific questions from 7 a.m. to 7 p.m., Monday through Friday. Generally, you'll have a shorter wait time if you call during the week after Tuesday. We can provide information by automated phone service 24 hours a day. (You can use our automated response system to tell us a new address or request a replacement Medicare card.) If you are deaf or hard of hearing, you may call our TTY number, **1-800-325-0778**.

We also want to make sure you receive accurate and courteous service. That is why we have a second Social Security representative monitor some telephone calls.

## What's Inside

Rules for higher-income beneficiaries . . . . . . . . 4

How does this affect me? . . . . . . . . . . . . . . . 4

How does Social Security determine
if I must pay higher premiums? . . . . . . . . . . . 5

Which tax return does Social Security use? . . . . 6

What if my income has gone down? . . . . . . . . 7

Monthly Medicare premiums for 2013 . . . . . . . 8

What if I disagree? . . . . . . . . . . . . . . . . . . 10

How can I get more information? . . . . . . . . . 11

## Rules for higher-income beneficiaries

If you have higher income, the law requires an adjustment to your monthly Medicare Part B (medical insurance) and Medicare prescription drug coverage premiums. Higher-income beneficiaries pay higher premiums for Part B and prescription drug coverage. This affects less than 5 percent of people with Medicare, so most people do not pay a higher premium.

## How does this affect me?

If you have higher income, you will pay an additional premium amount for Medicare Part B and Medicare prescription drug coverage. We call the additional amount the income-related monthly adjustment amount. Here's how it works:

- Part B helps pay for your doctors' services and outpatient care. It also covers other medical services, such as physical and occupational therapy, and some home health care. For most beneficiaries, the government pays a substantial portion—about 75 percent—of the Part B premium and the beneficiary pays the remaining 25 percent.

  If you are a higher-income beneficiary, you will pay a larger percentage of the total cost of Part B based on the income you report to the Internal Revenue Service (IRS). You will pay monthly Part B premiums equal to 35, 50, 65, or 80 percent of the total cost, depending on what you report to the IRS.

- Medicare prescription drug coverage helps pay for your prescription drugs. For most beneficiaries, the government pays a major portion of the total costs for this coverage and the beneficiary pays the rest. Prescription drug plan costs vary depending on the plan, and whether you get Extra Help with your portion of the Medicare prescription drug coverage costs.

  If you are a higher-income beneficiary with Medicare prescription drug coverage, you will pay monthly

premiums plus an additional amount, which is based on what you report to the IRS. Because individual plan premiums vary, the law specifies that the amount is determined using one base premium. We tie the additional amount you pay to the base beneficiary premium, not your own premium amount. If you are a higher-income beneficiary, we deduct this amount from your monthly Social Security payments regardless of how you ordinarily pay your monthly prescription plan premiums. If the amount is greater than your monthly payment from Social Security, or you do not get monthly payments, you will get a separate bill from another Federal agency, such as the Centers for Medicare & Medicaid Services or the Railroad Retirement Board.

## How does Social Security determine if I must pay higher premiums?

To determine if you will pay higher premiums, Social Security uses the most recent Federal tax return that the IRS provides to us. If you must pay higher premiums, we use a sliding scale to make the adjustments. We base the sliding scale on your modified adjusted gross income (MAGI). Your MAGI is the total of your adjusted gross income and tax-exempt interest income.

If you file your taxes as "married, filing jointly" and your MAGI is greater than $170,000, you will pay higher premiums for your Part B and Medicare prescription drug coverage. If you file your taxes using a different status and your MAGI is greater than $85,000, you will pay higher premiums. (See the chart on pages 8-9 for an idea of what you can expect to pay.)

If you must pay higher premiums, we will send you a letter with your premium amount(s) and the reason for our determination. If you have both Medicare Part B and Medicare prescription drug coverage, you will pay higher premiums for each. If you have only one—Medicare Part B or Medicare prescription drug coverage—you will pay an income-related monthly adjustment amount only on

the benefit you have. If you decide to enroll in the other program later in the same year and you already are paying an income-related monthly adjustment amount, we will apply an adjustment automatically to the other program when you enroll. In this case, we will not send you another letter explaining how we made this determination.

Remember, if your income is not greater than the limits described above, this law does not apply to you.

## Which tax return does Social Security use?

To determine your 2013 income-related monthly adjustment amounts, we use your most recent Federal tax return that the IRS provides to us. Generally, this information is from a tax return filed in 2012 for tax year 2011. Sometimes, IRS only provides information from a return filed in 2011 for tax year 2010. If we use the 2010 tax year data and you filed a return for tax year 2011 or did not need to file a tax return for tax year 2011, call us or visit any local Social Security office. We will update our records.

If you amended your tax return and it changes the income we count to determine the income-related monthly adjustment amounts, let us know. Social Security needs to see a copy of the amended tax return you filed and your acknowledgment receipt from IRS. We will update our records with the information you provide, and correct or remove your income-related monthly adjustment amounts, as appropriate.

## What if my income has gone down?

If your income has gone down due to any of the following situations and the change makes a difference in the income level we consider, contact us to explain you have new information and may need a new decision about your income-related monthly adjustment amount:

- You married, divorced, or became widowed;
- You or your spouse stopped working or reduced your work hours;
- You or your spouse lost income-producing property due to a disaster or other event beyond your control;
- You or your spouse experienced a scheduled cessation, termination, or reorganization of an employer's pension plan; or
- You or your spouse received a settlement from an employer or former employer because of the employer's closure, bankruptcy, or reorganization.

If any of the above applies to you, we need to see documentation verifying the event and the reduction in your income. The documentation you provide should relate to the event and may include a death certificate, a letter from your employer about your retirement, or something similar. If you filed a Federal income tax return for the year in question, you need to show us your signed copy of the return.

## Monthly Medicare premiums for 2013

The standard Part B premium for 2013 is $104.90. If you are single and filed an individual tax return, or married and filed a joint tax return, the following chart applies to you:

| Modified Adjusted Gross Income (MAGI) | Part B monthly premium amount | Prescription drug coverage monthly premium amount |
|---|---|---|
| Individuals with a MAGI of $85,000 or less<br><br>Married couples with a MAGI of $170,000 or less | **2013 standard premium= $104.90** | **Your plan premium** |
| Individuals with a MAGI above $85,000 up to $107,000<br><br>Married couples with a MAGI above $170,000 up to $214,000 | Standard premium + $42.00 | Your plan premium + $11.60 |
| Individuals with a MAGI above $107,000 up to $160,000<br><br>Married couples with a MAGI above $214,000 up to $320,000 | Standard premium + $104.90 | Your plan premium + $29.90 |
| Individuals with a MAGI above $160,000 up to $214,000<br><br>Married couples with a MAGI above $320,000 up to $428,000 | Standard premium + $167.80 | Your plan premium + $48.30 |
| Individuals with a MAGI above $214,000<br><br>Married couples with a MAGI above $428,000 | Standard premium + $230.80 | Your plan premium + $66.60 |

If you are married and lived with your spouse at some time during the taxable year, but filed a separate tax return, the following chart applies to you:

| Modified Adjusted Gross Income (MAGI) | Part B monthly premium amount | Prescription drug coverage monthly premium amount |
|---|---|---|
| Individuals with a MAGI of $85,000 or less | **2013 standard premium= $104.90** | **Your plan premium** |
| Individuals with a MAGI above $85,000 up to $129,000 | Standard premium + $167.80 | Your plan premium + $48.30 |
| Individuals with a MAGI above $129,000 | Standard premium + $230.80 | Your plan premium + $66.60 |

## What if I disagree?

If you disagree with the decision regarding your income-related monthly adjustment amounts, you have the right to appeal. You may request an appeal in writing by completing a *Request for Reconsideration* (Form SSA-561-U2) or you may contact your local Social Security office to file your appeal. You can find the appeal form online at ***www.socialsecurity.gov/online*** or request a copy through our toll-free number at **1-800-772-1213** (TTY **1-800-325-0778**). You do not need to file an appeal if you are requesting a new decision because you experienced one of the events listed on page 7 and it made your income go down or if you have shown us the information we used is wrong.

If you disagree with the amount of MAGI we received from the IRS, you have to correct the information with the IRS. If we determine you must pay a higher amount for Medicare prescription drug coverage, and you do not have this coverage, you have to call the Centers for Medicare & Medicaid Services (CMS) at **1-800-MEDICARE** (**1-800-633-4227**; TTY **1-877-486-2048**) to make a correction. Social Security receives the information about your prescription drug coverage from CMS.

## How can I get more information?

To find more information about the income-related monthly adjustment amounts or to apply for Medicare Part A or B, please visit ***www.socialsecurity.gov/mediinfo.htm*** or call Social Security at **1-800-772-1213** (TTY **1-800-325-0778**).

To enroll in Medicare prescription drug coverage, to find detailed information about what Medicare covers, or to request a copy of the *Medicare & You* handbook, please visit ***www.medicare.gov*** or call **1-800-MEDICARE** (**1-800-633-4227**; TTY **1-877-486-2048**). Your State Health Insurance Counseling and Assistance Program (SHIP) also can help answer your Medicare questions. You can find your local SHIP contact information in the back of your Medicare handbook, online at ***www.medicare.gov***, or you can request it when you call.

If you have limited resources and income, you may be able to get Extra Help with the costs—monthly premiums, annual deductibles, and prescription co–payments—related to Medicare prescription drug coverage. For more information about getting Extra Help with your Medicare prescription drug coverage costs, visit ***www.socialsecurity.gov/extrahelp*** or call Social Security at **1-800-772-1213** (TTY **1-800-325-0778**). Social Security representatives are available to help you complete your application. The sooner you apply the sooner you will begin receiving benefits.



www.socialsecurity.gov

**Social Security Administration**
SSA Publication No. 05-10536
ICN 470149
Unit of Issue-Package of 25
March 2013 (Recycle prior editions)

Printed on recycled paper

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Re: Docket No. 8067, 9304, 9427,10049** |

### ORDER GRANTING  OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF LONG TERM DISABILITY PARTICIPANTS FOR APPROVAL OF DISTRIBUTION AND RELATED RELIEF

Upon consideration of the Objection filed by Daniel D David, and any responses thereto; and it appearing that sufficient notice of the Objection has been given; and in good cause having been shown, it is hereby

ORDERED that the settlement funds to be received from the purchaser be disbursed to LTD participant based on their election to participate in VEBA and contribution of medical funds being deposited into an HRA.

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

ORDERED that my portion of the funds be distributed as cash and only charged a nominal fee for the writing of the check to me and withholding of the Federal Income Tax for the IRS.

ORDERED that the fee for distribution should be kept to minimum in order to give the maximum value of the distribution to LTD participants.


Dated: _____, 2013
      Wilmington, Delaware

                            _____
                            HONORABLE KEVIN GROSS
                            CHIEF UNITED STATES BANKRUPTCY JUDGE