## EXHIBIT 5

US-India Income Tax Treaty ("Tax Convention with the Republic of India").  Article 23 ("Other Income") would govern both Health Reimbursement Arrangement ("HRA") and "Other Payments" made to me by the LTD Committee.  Article 23 states it is within the rights of India to tax such income.

TAX CONVENTION WITH THE REPUBLIC OF INDIA

GENERAL EFFECTIVE DATE UNDER ARTICLE 30: 1 JANUARY 1991

TABLE OF ARTICLES

Article 1--------------------------------General Scope
Article 2--------------------------------Taxes Covered
Article 3--------------------------------General Definitions
Article 4--------------------------------Residence
Article 5--------------------------------Permanent Establishment
Article 6--------------------------------Income from Immovable Property (Real Property)
Article 7--------------------------------Business Profits
Article 8--------------------------------Shipping and Air Transport
Article 9--------------------------------Associated Enterprises
Article 10-------------------------------Dividends
Article 11-------------------------------Interest
Article 12-------------------------------Royalties and Fees for Included Services
Article 13-------------------------------Gains
Article 14-------------------------------Permanent Establishment Tax
Article 15-------------------------------Independent Personal Services
Article 16-------------------------------Dependent Personal Services
Article 17-------------------------------Directors' Fees
Article 18-------------------------------Income Earned by Entertainers and Athletes
Article 19-------------------------------Remuneration and Pensions in Respect
                                         of Government Service
Article 20-------------------------------Private Pensions, Annuities, Alimony and Child Support
Article 21-------------------------------Payments Received by Students and Apprentices
Article 22-------------------------------Payments Received by Professors,
                                         Teachers and Research Scholars
Article 23-------------------------------Other Income
Article 24-------------------------------Limitation on Benefits
Article 25-------------------------------Relief  from Double Taxation).
Article 26-------------------------------Non-discrimination
Article 27-------------------------------Mutual Agreement Procedure
Article 28-------------------------------Exchange of Information and Administrative Assistance
Article 29-------------------------------Diplomatic Agents and Consular Officers
Article 30-------------------------------Entry Into Force
Article 31-------------------------------Termination
Protocol---------------------------------of 12 September, 1989
Notes of Exchange 1-------------------of 12 September, 1989
Notes of Exchange 2-------------------of 12 September, 1989

Memorandum of Understanding-----of 15 May, 1989
Letter of Submittal--------------------of 24 October, 1989
Letter of Transmittal------------------of 31 October, 1989
The "Saving Clause"------------------Paragraph 3 of Article 1

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES
OF AMERICA AND THE GOVERNMENT OF THE REPUBLIC OF INDIA FOR THE
AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION
WITH RESPECT TO TAXES ON INCOME, TOGETHER WITH A RELATED PROTOCOL,
SIGNED AT NEW DELHI ON SEPTEMBER 12, 1989

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, October 24, 1989.*

The PRESIDENT,
*The White House.*

DEAR Mr. PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate for advice and consent to ratification, the Convention between the Government of the United States of America and the Government of the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, together with a related Protocol, signed at New Delhi on September 12, 1989.

The Convention would be the first tax treaty between the United States and India. In general, it follows the pattern of the United States model tax convention but differs in a number of respects to reflect India's status as a developing country.

The Convention provides maximum rates of tax at source on payments of dividends, interest and royalties which, in each case, are higher than the rates specified in the United States Model. Dividends from a subsidiary to a parent corporation are taxable at a maximum rate of 15 percent; other dividends may be taxable at source at a 25 percent rate. Interest is, in general, taxable at source at a maximum rate of 15 percent, although interest received by a financial institution is taxable at a maximum rate of 10

percent, and interest received by either of the two Governments, by certain governmental financial institutions, and by residents of a Contracting State on certain Government approved loans, is exempt from tax at source.

The royalty provisions contain several significant departures from standard United States tax treaty policy. In general, industrial and copyright royalties are taxable at source at a maximum rate of 20 percent for the first five years, dropping to 15 percent thereafter. Where the payor of the royalty is one of the Governments, a political subdivision or a public sector corporation, tax will be imposed from the date of entry into force of the treaty at a maximum rate of 15 percent. Payments for the use of, or the right to use, industrial, commercial or scientific equipment are treated as royalties, rather than as business profits, and are subject to a maximum rate of tax at source of 10 percent. The most significant departure from past policy in the royalty article is the fact that certain service fees, referred to in the Convention as "fees for included services", are treated in the same manner as royalties, and not, as would normally be the case, as business profits. Included services are defined as technical consultancy services which either: (i) are ancillary and subsidiary to the licensing of an intangible or the rental of tangible personal property, both of which give rise to royalty payments, or, (ii) if not ancillary or subsidiary, make available to the payor of the service fee some technical knowledge, experience, skill, etc., or transfer to that person a technical plan or design. A detailed memorandum of understanding was developed by the negotiators to provide guidance as to the intended scope of the concept of "included services" and the effect of the memorandum is agreed to in an exchange of notes. These are included for information only. Fees for all other services are treated either as business profits or as independent personal services income. Although not reflected in the convention, under Indian law, certain  service fees related to defense contracts are exempt from Indian tax..

The Convention preserves for the United States the right to impose the branch profits tax. It preserves for both Contracting States their statutory taxing rights with respect to capital gains.

The Convention also contains rules for the taxation of business profits which, consistent with other United States tax treaties with developing countries, provide a broader range of circumstances under which one partner may tax the business profits of a resident of the other. The Convention defines permanent establishment to include a construction site or a drilling rig where the site or activity continues for a period of 120 days in a year. This compares with a twelve month threshold under the United States Model, and six months under the typical developing country tax treaty. In addition, the Convention contains reciprocal exemption at source for shipping and aircraft operating income, including income from the incidental leasing of ships, aircraft or containers (i.e., where the lessor is an operator of ships and aircraft). The Convention differs from the United States Model in that income from the non-incidental leasing of ships, aircraft or containers (i.e., where the lessor is not an operator of ships or aircraft) is not covered by the article. Income from such non-incidental leasing is treated as a royalty, taxable at source at a maximum rate of 10 percent.

The treatment under the Convention of various classes of personal service income is similar to that under the United States tax treaties with developing countries.

The Convention contains provisions designed to prevent third-country residents from treaty shopping, i.e., from taking unwarranted advantage of the Convention by routing income from one Contracting State through an entity created in the other. These provisions consistent with recent tax legislation, identify treaty shopping in terms both of third-country ownership of an entity, and of the substantial use of the entity's income to meet liabilities to third-country persons. Notwithstanding the presence of these factors, however, treaty benefits will be allowed if the income is incidental to or earned in connection with the active conduct of a trade or business in the State of residence, if the shares of the company earning the income are traded on a recognized stock exchange, or if the competent authority of the source State so determines.

As with all United States tax treaties, the Convention prohibits tax discrimination, creates a dispute resolution mechanism and provides for the exchange of otherwise confidential tax information between the tax authorities of the parties. The Convention authorizes access by the General Accounting Office and the tax writing committees of Congress to certain information exchanged under the Convention which is relevant to the functions of these bodies in overseeing the administration of United States laws.

In an exchange of notes, the United States and India agree that, although the Convention does not contain a tax sparing credit, if United States policy changes in this regard, the Convention will be promptly amended to incorporate a tax sparing provision. These notes are also included for information only.

A technical memorandum explaining in detail the provisions of the Convention and the related Protocol is being prepared by the Department of the Treasury and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of the Treasury, with the cooperation of the Department of State, was primarily responsible for the negotiation of the Convention and related Protocol.

Respectfully submitted,

JAMES A. BAKER III.

Enclosures: As stated.

LETTER OF TRANSMITTAL

THE WHITE HOUSE, *October 31, 1989.*

*To the Senate of the United States:*

I transmit herewith for Senate advice and consent to ratification the Convention between the Government of the United States of America and the Government of the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income,

together with a related Protocol, signed at New Delhi on September 12, 1989. I also transmit the report of the Department of State on the convention.

The convention would be the first tax treaty between the United States and India. It includes special provisions that take into account India's status as a developing nation and that reflect changes in U.S. tax treaty policy resulting from the Tax Reform Act of 1986.

Of particular importance are the provisions limiting the withholding tax rates on various categories of investment income, as well as those designed to prevent third-country residents from taking unwarranted advantage of the convention by routing income from one Contracting State through an entity created in the other. The convention also provides for the exchange of information by the competent authorities of the Contracting States.

I recommend the Senate give early and favorable consideration to the convention, together with a related protocol, and give its advice and consent to ratification.

GEORGE BUSH.

CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE REPUBLIC OF INDIA FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME

The Government of the United States of America and the Government of the Republic of India, desiring to conclude a Convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income, have agreed as follows:

ARTICLE 1
<u>General Scope</u>

1. This Convention shall apply to persons who are residents of one or both of the Contracting States, except as otherwise provided in the Convention.

2. The Convention shall not restrict in any manner any exclusion, exemption, deduction, credit, or other allowance now or here after accorded:

        (a) by the laws of either Contracting State; or
        (b) by any other agreement between the Contracting States; or

3. Notwithstanding any provision of the Convention except paragraph 4, a Contracting State may tax its residents (as determined under Article 4 (Residence)), and by reason of citizenship may tax its citizens, as if the Convention had not come into effect. For this purpose, the term "citizen" shall include a

former citizen whose loss of citizenship had as one of its principal purposes the avoidance of tax, but only for a period of 10 years following such loss.

4. The provisions of paragraph 3 shall not affect

(a) the benefits conferred by a Contracting State under paragraph 2 of Article 9 (Associated Enterprises), under paragraphs 2 and 6 of Article 20 (Private Pensions, Annuities, Alimony, and Child Support), and under Articles 25 (Relief from Double Taxation), 26 (Non-discrimination), and 27 (Mutual Agreement Procedure); and

(b) the benefits conferred by a Contracting State under Articles 19 (Remuneration and Pensions in Respect of Government Service), 21 (Payments Received by Students and Apprentices), 22 (Payments Received by Professors, Teachers and Research Scholars) and 29 (Diplomatic Agents and Consul Officers), upon individuals who are neither citizens of, nor have immigrant status in, that State.

## ARTICLE 2
### Taxes Covered

1. The existing taxes to which this Convention shall apply are:

(a) in the United States, the Federal income taxes imposed by the Internal Revenue Code (but excluding the accumulated earnings tax, the personal holding company tax, and social security taxes), and the excise taxes imposed on insurance premiums paid to foreign insurers and with respect to private foundations (hereinafter referred to as "United States tax"); provided, however, the Convention shall apply to the excise taxes imposed on insurance premiums paid to foreign insurers only to the extent that the risks covered by such premiums are not reinsured with a person not entitled to exemption from such taxes under this or any other Convention which applies to these taxes; and

(b) in India:

(i) the income tax including any surcharge thereon, but excluding income tax on undistributed income of companies, imposed under the Income-tax Act; and

(ii) the surtax (hereinafter referred to as "Indian tax").

Taxes referred to in (a) and (b) above shall not include any amount payable in respect of any default or omission in relation to the above taxes or which represent a penalty imposed relating to those taxes.

2. The Convention shall apply also to any identical or substantially similar taxes which are imposed after the date of signature of the Convention in addition to, or in place of, the existing taxes. The competent authorities of the Contracting States shall notify each other of any significant changes which have been made in their respective taxation laws and of any official published material concerning the application of the Convention.

## ARTICLE 3
### General Definitions

1. In this Convention, unless the context otherwise requires:

(a) the term "India" means the territory of India and includes the territorial sea and airspace above it, as well as any other maritime zone in which India has sovereign rights, other rights and jurisdictions, according to the Indian law and in accordance with international law;

(b) the term "United States", when used in a geographical sense means all the territory of the United States of America, including its territorial sea, in which the laws relating to United States tax are in force, and all the area beyond its territorial sea, including the seabed and subsoil thereof, over which the United States has jurisdiction in accordance with international law and in which the laws relating to United States tax are in force;

(c) the terms "a Contracting State" and "the other Contracting State" mean India or the United States as the context requires;

(d) the term "tax" means Indian tax or United States tax, as the context requires;

(e) the term "person" includes an individual, an estate, a trust, a partnership, a company, any other body of persons, or other taxable entity;

(f) the term "company" means any body corporate or any entity which is treated as a company or body corporate for tax purposes;

(g) the terms "enterprise of a Contracting State" and "enterprise of the other Contracting State" mean respectively an enterprise carried on by a resident of a Contracting State and an enterprise carried on by a resident of the other Contracting State;

(h) the term "competent authority" means, in the case of India, the Central Government in the Ministry of Finance (Department of Revenue) or their authorized representative, and in the case of the United States, the Secretary of the Treasury or his delegate;

(i) the term "national" means any individual possessing the nationality or citizenship of a Contracting State;

(j) the term "international traffic" means any transport by a ship or aircraft operated by an enterprise of a Contracting State, except when the ship or aircraft is operated solely between places within the other Contracting State;

(k) the term "taxable year" in relation to Indian Tax means "previous year" as defined in the Income-tax Act, 1961.

2. As regards the application of the Convention by a Contracting State any term not defined therein shall, unless the context otherwise requires or the competent authorities agree to a common meaning pursuant to the provisions of Article 27 (Mutual Agreement Procedure), have the meaning which it has under the laws of that State concerning the taxes to which the Convention applies.

ARTICLE 4
Residence

1. For the purposes of this Convention, the "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, citizenship,

place of management, place of incorporation, or any other criterion of a similar nature, provided, however, that

       (a) this term does not include any person who is liable to tax in that State in respect only of income from sources in that State; and

       (b) in the case of income derived or paid by a partnership, estate, or trust, this term applies only to the extent that the income derived by such partnership, estate, or trust is subject to tax in that State as the income of a resident, either in its hands or in the hands of its partners or beneficiaries.

2. Where by reason of the provisions of paragraph 1, an individual is a resident of both Contracting States, then his status shall be determined as follows:

       (a) he shall be deemed to be a resident of the State in which he has a permanent home available to him; if he has a permanent home available to him in both States, he shall be deemed to be a resident of the State with which his personal and economic relations are closer (centre of vital interests);

       (b) if the State in which he has his centre of vital interests cannot be determined, or if he does not have a permanent home available to him in either State, he shall be deemed to be a resident of the State in which he has an habitual abode;

       (c) if he has an habitual abode in both States or in neither of them, he shall be deemed to be a resident of the State of which he is a national;

       (d) if he is a national of both States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement.

3. Where, by reason of paragraph 1, a company is a resident of both Contracting States, such company shall be considered to be outside the scope of this Convention except for purposes of paragraph 2 of Article 10 (Dividends), Article 26 (Non-discrimination), Article 27 (Mutual Agreement Procedure), Article 28 (Exchange of Information and Administrative Assistance) and Article 30 (Entry Into Force).

4. Where, by reason of the provisions of paragraph 1, a person other than an individual or a company is a resident of both Contracting States, the competent authorities of the Contracting States shall settle the question by mutual agreement and determine the mode of application of the Convention to such person.

## ARTICLE 5
### Permanent Establishment

1. For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which the business of an enterprise is wholly or partly carried on.

2. The term "permanent establishment" includes especially:

       (a) a place of management;

(b) a branch;

(c) an office;

(d) a factory;

(e) a workshop;

(f) a mine, an oil or gas well, a quarry, or any other place of extraction of natural resources;

(g) a warehouse, in relation to a person providing storage facilities for others;

(h) a farm, plantation or other place where agriculture, forestry, plantation or related activities are carried on;

(i) a store or premises used as a sales outlet;

(j) an installation or structure used for the exploration or exploitation of natural resources, but only if so used for a period of more than 120 days in any twelve month period;

(k) a building site or construction, installation or assembly project or supervisory activities in connection therewith, where such site, project or activities (together with other such sites, projects or activities, if any) continue for a period of more than 120 days in any twelve month period;

(l) the furnishing of services, other than included services as defined in Article 12 (Royalties and Fees for Included Services), within a Contracting State by an enterprise through employees or other personnel, but only if:

(i) activities of that nature continue within that State for a period or periods aggregating more than 90 days within any twelve month period; or

(ii) the services are performed within that State for a related enterprise (within the meaning of paragraph 1 of Article 9 (Associated Enterprises)).

3. Notwithstanding the preceding provisions of this Article, the term "permanent establishment" shall be deemed not to include any one or more of the following:

(a) the use of facilities solely for the purpose of storage, display, or occasional delivery of goods or merchandise belonging to the enterprise;

(b) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of storage, display, or occasional delivery;

(c) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of processing by another enterprise;

(d) the maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise, or of collecting information, for the enterprise;

(e) the maintenance of a fixed place of business solely for the purpose of advertising, for the supply of information, for scientific research or for other activities which have a preparatory or auxiliary character, for the enterprise.

4. Notwithstanding the provisions of paragraphs 1 and 2, where a person - other than an agent of an independent status to whom paragraph 5 applies - is acting in a Contracting State on behalf of an enterprise of the other Contracting State, that enterprise shall be deemed to have a permanent establishment in the first-mentioned State if:

(a) he has an habitually exercises in the first-mentioned State an authority to conclude contracts on behalf of the enterprise, unless his activities are limited to those mentioned in paragraph 3 which, if exercised through a fixed place of business, would not make that fixed place of business a permanent establishment under the provisions of that paragraph;

(b) he has no such authority but habitually maintains in the first-mentioned State a stock of goods or merchandise from which he regularly delivers goods or merchandise on behalf of the enterprise, and some additional activities conducted in that State on behalf of the enterprise have contributed to the sale of the goods or merchandise; or

(c) he habitually secures orders in the first-mentioned State, wholly or almost wholly for the enterprise.

5. An enterprise of a Contracting State shall not be deemed to have a permanent establishment in the other Contracting State merely because it carries on business in that other State through a broker, general commission agent, or any other agent of an independent status, provided that such persons are acting in the ordinary course of their business. However, when the activities of such an agent are devoted wholly or almost wholly on behalf of that enterprise and the transactions between the agent and the enterprise are not made under arm's-length conditions, he shall not be considered an agent of independent status within the meaning of this paragraph.

6. The fact that a company which is a resident of a Contracting State controls or is controlled by a company which is a resident of the other Contracting State, or which carries on business in that other State (whether through a permanent establishment or otherwise), shall not of itself constitute either company a permanent establishment of the other.


ARTICLE 6
Income from Immovable Property (Real Property)

1. Income derived by a resident of a Contracting State from immovable property (real property), including income from agriculture or forestry, situated in the other Contracting State may be taxed in that other State.

2. The term "immovable property" shall have the meaning which it has under the law of the Contracting State in which the property in question is situated.

3. The provisions of paragraph 1 shall also apply to income derived from the direct use, letting, or use in any other form of immovable property.

4. The provisions of paragraphs 1 and 3 shall also apply to the income from immovable property of an enterprise and to income from immovable property used for the performance of independent personal services.

ARTICLE 7
Business Profits

1. The profits of an enterprise of a Contracting State shall be taxable only in that State unless the enterprise carries on business in the other Contracting State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the profits of the enterprise may be taxed in the other State but only so much of them as is attributable to

(a) that permanent establishment;

(b) sales in the other State of goods or merchandise of the same or similar kind as those sold through that permanent establishment; or

(c) other business activities carried on in the other State of the same or similar kind as those effected through that permanent establishment.

2. Subject to the provisions of paragraph 3, where an enterprise of a Contracting State carries on business in the other Contracting State through a permanent establishment situated therein, there shall in each Contracting State be attributed to that permanent establishment the profits which it might be expected to make if it were a distinct and independent enterprise engaged in the same or similar activities under the same or similar conditions and dealing wholly at arm's-length with the enterprise of which it is a permanent establishment and other enterprises controlling, controlled by or subject to the same common control as that enterprise. In any case where the correct amount of profits attributable to a permanent establishment is incapable of determination or the determination thereof presents exceptional difficulties, the profits attributable to the permanent establishment may be estimated on a reasonable basis. The estimate adopted shall, however, be such that the result shall be in accordance with the principles contained in this Article.

3. In the determination of the profits of a permanent establishment, there shall be allowed as deductions, expenses which are incurred for the purposes of the business of the permanent establishment, including a reasonable allocation of executive and general administrative expenses, research and development expenses, interest, and other expenses incurred for the purposes of the enterprise as a whole (or the part thereof which includes the permanent establishment), whether incurred in the State in which the permanent establishment is situated or elsewhere, in accordance with the provisions of and subject to the limitations of the taxation laws of that State. However, no such deduction shall be allowed in respect of amounts, if any, paid (otherwise than toward reimbursement of actual expenses) by the permanent establishment to the head office of the enterprise or any of its other offices, by way of royalties, fees or other similar payments in return for the use of patents, know-how or other rights, or by way of commission or other charges for specific services performed or for management, or, except in the case of banking enterprises, by way of interest on moneys lent to the permanent establishment. Likewise, no account shall be taken, in the determination of the profits of a permanent establishment, for amounts charged (otherwise than toward reimbursement of actual expenses), by the permanent establishment to the head office of the enterprise or any of its other offices, by way of royalties, fees or other similar payments in return for the use of patents, know-how or other rights, or by way of commission or other charges for specific services performed or for management, or,

except in the case of a banking enterprise, by way of interest on moneys lent to the head office of the enterprise or any of its other offices.

4. No profits shall be attributed to a permanent establishment by reason of the mere purchase by that permanent establishment of goods or merchandise for the enterprise.

5. For the purposes of this Convention, the profits to be attributed to the permanent establishment as provided in paragraph 1(a) of this Article shall include only the profits derived from the assets and activities of the permanent establishment and shall be determined by the same method year by year unless there is good and sufficient reason to the contrary.

6. Where profits include items of income which are dealt with separately in other Articles of the Convention, then the provisions of those Articles shall not be affected by the provisions of this Article.

7. For the purposes of the Convention, the term "business profits" means income derived from any trade or business including income from the furnishing of services other than included services as defined in Article 12 (Royalties and Fees for Included Services) and including income from the rental of tangible personal property other than property described in paragraph 3(b) of Article 12 (Royalties and Fees for Included Services).

ARTICLE 8
Shipping and Air Transport

1. Profits derived by an enterprise of a Contracting State from the operation by that enterprise of ships or aircraft in international traffic shall be taxable only in that State.

2. For the purposes of this Article, profits from the operation of ships or aircraft in international traffic shall mean profits derived by an enterprise described in paragraph 1 from the transportation by sea or air respectively of passengers, mail, livestock or goods carried on by the owners or lessees or charterers of ships or aircraft including-
>    (a) the sale of tickets for such transportation on behalf of other enterprises;
>    (b) other activity directly connected with such transportation; and
>    (c) the rental of ships or aircraft incidental to any activity directly connected with such transportation.

3. Profits of an enterprise of a Contracting State described in paragraph 1 from the use, maintenance, or rental of containers (including trailers, barges, and related equipment for the transport of containers) used in connection with the operation of ships or aircraft in international traffic shall be taxable only in that State.

4. The provisions of paragraphs 1 and 3 shall also apply to profits from participation in a pool, a joint business, or an international operating agency.

5. For the purposes of this Article, interest on funds connected with the operation of ships or aircraft in international traffic shall be regarded as profits derived from the operation of such ships or aircraft, and the provisions of Article 11 (Interest) shall not apply in relation to such interest.

6. Gains derived by an enterprise of a Contracting State described in paragraph 1 from the alienation of ships, aircraft or containers owned and operated by the enterprise, the income from which is taxable only in that State, shall be taxed only in that State.

ARTICLE 9
Associated Enterprises

1. Where:

(a) an enterprise of a Contracting State participates directly or indirectly in the management, control or capital of an enterprise of the Contracting State; or

(b) the same persons participate directly or indirectly in the management, control, or capital of an enterprise of a Contracting State and an enterprise of the other Contracting State,

and in either case conditions are made or imposed between the two enterprises in their commercial or financial relations which differ from those which would be made between independent enterprises, then any profits which, but for those conditions would have accrued to one of the enterprises, but by reason of those conditions have not so accrued, may be included in the profits of that enterprise and taxed accordingly.

2. Where a Contracting State includes in the profits of an enterprise of that State, and taxes accordingly, profits on which an enterprise of the other Contracting State has been charged to tax in that other State, and the profits so included are profits which would have accrued to the enterprise of the first-mentioned State if the conditions made between the two enterprises had been those which would have been made between independent enterprises, then that other State shall make an appropriate adjustment to the amount of the tax charged therein on those profits. In determining such adjusting due regard shall be had to the other provisions of this Convention and the competent authorities of the Contracting State shall if necessary consult each other.

ARTICLE 10
Dividends

1. Dividends paid by a company which is a resident of a Contracting State to a resident of the other Contracting State may be taxed in that other State.

2. However, such dividends may also be taxed in the Contracting State of which the company paying the dividends is a resident, and according to the laws of the State, but if the beneficial owner of the dividends is a resident of the other Contracting State, the tax so charged shall not exceed:

(a) 15 percent of the gross amount of the dividends if the beneficial owner is a company which owns at least 10 percent of the voting stock of the company paying the dividends;

(b) 25 percent of the gross amount of the dividends in all other cases.

Subparagraph (b) and not subparagraph (a) shall apply in the case of dividends paid by a United States person which is a Regulated Investment Company. Subparagraph (a) shall not apply to dividends paid by a United States person which is a Real Estate Investment Trust, and subparagraph (b) shall only apply if the dividend is beneficially owned by an individual holding a less than 10 percent interest in the Real Estate Investment Trust. This paragraph shall not effect the taxation of the company in respect of the profits out of which the dividends are paid.

3. The term "dividends" as used in this Article means income from shares or other rights not being debt-claims, participating in profits, income from other corporate rights which are subjected to the same taxation treatment as income from shares by the taxation laws of the State of which the company making the distribution is a resident; and income from arrangements, including debt obligations, carrying the right to participate in profits, to the extent so characterized under the laws of the Contracting State in which the income arises.

4. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the dividends, being a resident of a Contracting State, carries on business in the other Contracting State, of which the company paying the dividends is a resident, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed based situated therein, and the dividends are attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

5. Where a company which is a resident of a Contracting State derives profits or income from the other Contracting State, that other State may not impose any tax on the dividends paid by the company except insofar as such dividends are paid to a resident of that other State or insofar as the holding in respect of which the dividends are paid is effectively connected with a permanent establishment or a fixed base situated in that other State, nor subject the company's undistributed profits to a tax on the company's undistributed profits, even if the dividends paid or the undistributed profits consist wholly or partly of profits or income arising in such other State.

## ARTICLE 11
### Interest

1. Interest arising in a Contracting State and paid to a resident of the other Contracting State may be taxed in that other State.

2. However, such interest may also be taxed in the Contracting State in which it arises, and according to the laws of that State, but if the beneficial owner of the interest is a resident of the other Contracting State, the tax so charged shall not exceed:

(a) 10 percent of the gross amount of the interest if such interest is paid on a loan granted by a bank carrying on a bona fide banking business or by a similar financial institution (including an insurance company); and

(b) 15 percent of the gross amount of the interest in all other cases.

3. Notwithstanding the provisions of paragraph 2 of this Article, interest arising in a Contracting State:

(a) and derived and beneficially owned by the Government of the other Contracting State, a political subdivision or local authority thereof, the Reserve Bank of India, or the Federal Reserve Banks of the United States, as the case may be, and such other institutions of either Contracting State as the competent authorities may agree pursuant to Article 27 (Mutual Agreement Procedure);

(b) with respect to loans or credits extended or endorsed

(i) by the Export-Import Bank of the United States, when India is the first-mentioned Contracting State; and

(ii) by the EXIM Bank of India, when the United States is the first-mentioned Contracting State; and

(c) to the extent approved by the Government of that State, and derived and beneficially owned by any person, other than a person referred to in subparagraphs (a) and (b), who is a resident of the other Contracting State, provided that the transaction giving rise to the debt-claim has been approved in this behalf by the Government of the first-mentioned Contracting State;

shall be exempt from tax in the first-mentioned Contracting State.

4. The term "interest" as used in this Convention means income from debt-claims of every kind, whether or not secured by mortgage, and whether or not carrying a right to participate in the debtor's profits, and in particular, income from government securities, and income from bonds or debentures, including premiums or prizes attaching to such securities, bonds, or debentures. Penalty charges for late payment shall not be regarded as interest for the purposes of the Convention. However, the term "interest" does not include income dealt with in Article 10 (Dividends).

5. The provisions of paragraphs 2 and 3 shall not apply if the beneficial owner of the interest, being a resident of a Contracting State, carries on business in the other Contracting State in which the interest arises, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the interest is attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

6. Interest shall be deemed to arise in a Contracting State when the payer is that State itself or a political subdivision, local authority, or resident of that State. Where, however, the person paying the interest, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent establishment or a fixed base, and such interest is borne by such permanent establishment or fixed base,

then such interest shall be deemed to arise in the Contracting State in which the permanent establishment or fixed base is situated.

7. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the interest, having regard to the debt-claim for which it is paid, exceeds the amount which would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of the Convention.

ARTICLE 12
Royalties and Fees for Included Services

1. Royalties and fees for included services arising in a Contracting State and paid to a resident of the other Contracting State may be taxed in that other State.

2. However, such royalties and fees for included services may also be taxed in the Contracting State in which they arise and according to the laws of that State; but if the beneficial owner of the royalties or fees for included services is a resident of the other Contracting State, the tax so charged shall not exceed:

(a) in the case of royalties referred to in subparagraph (a) of paragraph 3 and fees for included services as defined in this Article (other than services described in subparagraph (b) of this paragraph):

(i) during the first five taxable years for which this Convention has effect,

(A) 15 percent of the gross amount of the royalties or fees for included services as defined in this Article, where the payer of the royalties or fees is the Government of that Contracting State, a political subdivision or a public sector company; and

(B) 20 percent of the gross amount of the royalties or fees for included services in all other cases; and

(ii) during the subsequent years, 15 percent of the gross amount of royalties or fees for included services;

and

(b) in the case of royalties referred to in subparagraph (b) of paragraph 3 and fees for included services as defined in this Article that are ancillary and subsidiary to the enjoyment of the property for which payment is received under paragraph 3(b) of this Article, 10 percent of the gross amount of the royalties or fees for included services.

3. The term "royalties" as used in this Article means:

(a) payments of any kind received as a consideration for the use of, or the right to use, any copyright of a literary, artistic, or scientific work, including cinematograph films or work on film, tape or other means of reproduction for use in connection with radio or television broadcasting, any patent, trademark, design or model, plan, secret formula or process, or for

information concerning industrial, commercial or scientific experience, including gains derived from the alienation of any such right or property which are contingent on the productivity, use, or disposition thereof; and

(b) payments of any kind received as consideration for the use of, or the right to use, any industrial, commercial, or scientific equipment, other than payments derived by an enterprise described in paragraph 1 of Article 8 (Shipping and Air Transport) from activities described in paragraph 2(c) or 3 of Article 8.

4. For purposes of this Article, "fees for included services" means payments of any kind to any person in consideration for the rendering of any technical or consultancy services (including through the provision of services of technical or other personnel) if such services:

(a) are ancillary and subsidiary to the application or enjoyment of the right, property or information for which a payment described in paragraph 3 is received; or

(b) make available technical knowledge, experience, skill, know-how, or processes, or consist of the development and transfer of a technical plan or technical design.

5. Notwithstanding paragraph 4, "fees for included services" does not include amounts paid:

(a) for services that are ancillary and subsidiary, as well as inextricably and essentially linked, to the sale of property other than a sale described in paragraph 3(a);

(b) for services that are ancillary and subsidiary to the rental of ships, aircraft, containers or other equipment used in connection with the operation of ships or aircraft in international traffic;

(c) for teaching in or by educational institutions;

(d) for services for the personal use of the individual or individuals making the payment; or

(e) to an employee of the person making the payments or to any individual or firm of individuals (other than a company) for professional services as defined in Article 15 (Independent Personal Services).

6. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the royalties or fees for included services, being a resident of a Contracting State, carries on business in the other Contracting States, in which the royalties or fees for included services arise, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the royalties or fees for included services are attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

7.        (a) Royalties and fees for included services shall be deemed to arise in a Contracting State when the payer is that State itself, a political subdivision, a local authority, or a resident of that State. Where, however, the person paying the royalties or fees for included services, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent establishment or a fixed base in connection with which the liability to pay the royalties or fees for included services was incurred, and such royalties or fees for included services are borne by

such permanent establishment or fixed base, then such royalties or fees or included services shall be deemed to arise in the Contracting State in which the permanent establishment or fixed base is situated.

(b) Where under subparagraph (a) royalties or fees for included services do not arise in one of the Contracting States, and the royalties relate to the use of, or the right to use, the right or property, or the fees for included services relate to services performed, in one of the Contracting States, the royalties or fees for included services shall be deemed to arise in that Contracting State.

8. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them. and some other person, the amount of the royalties or fees for included services paid exceeds the amount which would have been paid in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case, the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of the Convention.


ARTICLE 13
Gains

Except as provided in Article 8 (Shipping and Air Transport) of this Convention, each Contracting State may tax capital gain in accordance with the provisions of its domestic law.


ARTICLE 14
Permanent Establishment Tax

1. A company which is a resident of India may be subject in the United States to a tax in addition to the tax allowable under the other provisions of this Convention.

(a) Such tax, however, may be imposed only on:

(i) the portion of the business profits of the company subject to tax in the United States which represents the dividend equivalent amount; and

(ii) the excess, if any, of interest deductible in the United States in computing the profits of the company that are subject to tax in the United States and either attributable to a permanent establishment in the United States or subject to tax in the United States under Article 6 (Income from Immovable Property (Real Property)), Article 12 (Royalties and Fees for Included Services) as fees for included services, or Article 13 (Gains) of this Convention over the interest paid by or from the permanent establishment or trade or business in the United States.

(b) For purposes of this article, business profits means profits that are effectively connected (or treated as effectively connected) with the conduct of a trade or business within the United States and are either attributable to a permanent establishment in the United States or subject to tax in the United States under Article 6 (Income from Immovable Property (Real

Property)), Article 12 (Royalties and Fees for Included Services) as fees for included services or Article 13 (Gains) of this Convention.

      (c) The tax referred to in subparagraph (a) shall not be imposed at a rate exceeding:

          (i) the rate specified in paragraph 2(a) of Article 10 (Dividends) for the tax described in subparagraph (a)(I); and

          (ii) the rate specified in paragraph 2 (a) or (b) (whichever is appropriate) of Article 11 (Interest) for the tax described in subparagraph (a)(ii).

2. A company which is a resident of the United States may be subject to tax in India at a rate higher than that applicable to the domestic companies. The difference in the tax rate shall not, however, exceed the existing difference of 15 percentage points.

3. In the case of a banking company which is a resident of the United States, the interest paid by the permanent establishment of such a company in India to the head office may be subject in India to a tax in addition to the tax imposable under the other provisions of this Convention at a rate which shall not exceed the rate specified in paragraph 2(a) of Article 11 (Interest).


## ARTICLE 15
### Independent Personal Services

1. Income derived by a person who is an individual or firm of individuals (other than a company) who is a resident of a Contracting State from, the performance in the other Contracting State of professional services or other independent activities of a similar character shall be taxable only in the first-mentioned State except in the following circumstances when such income may also be taxed in the other Contracting State:

      (a) if such person has a fixed base regularly available to him in the other Contracting State for the purpose of performing his activities; in that case, only so much of the income as is attributable to that fixed base may be taxed in that other State; or

      (b) if the person's stay in the other Contracting State is for a period or periods amounting to or exceeding in the aggregate 90 days in the relevant taxable year.

2. The term "professional services" includes independent scientific, literary, artistic, educational or teaching activities as well as the independent activities of physicians, surgeons, lawyers, engineers, architects, dentists and accountants.


## ARTICLE 16
### Dependent Personal Services

1. Subject to the provisions of Articles 17 (Directors' Fees), 18 (Income Earned by Entertainers and Athletes), 19 (Remuneration and Pensions in Respect of Government Service), 20 (Private Pensions, Annuities, Alimony, and Child Support), 21 (Payments Received by Students and

Apprentices) and 22 (Payments Received by Professors, Teachers and Research Scholars), salaries, wages, and other similar remuneration derived by a resident of a Contracting State in respect of an employment shall be taxable only in that State unless the employment is exercised in the other Contracting State. If the employment is so exercised, such remuneration as is derived therefrom may be taxed in that other State.

2. Notwithstanding the provisions of paragraph 1, remuneration derived by a resident of a Contracting State in respect of an employment exercised in the other Contracting State shall be taxable only in the first-mentioned State if:

(a) the recipient is present in the other State for a period or periods not exceeding in the aggregate 183 days in the relevant taxable year;

(b) the remuneration is paid by, or on behalf of, an employer who is not a resident of the other State; and

(c) the remuneration is not borne by a permanent establishment or a fixed base or a trade or business which the employer has in the other State.

3. Notwithstanding the preceding provisions of this Article, remuneration derived in respect of an employment exercised aboard a ship or aircraft operated in international traffic by an enterprise of a Contracting State may be taxed in that State.

## ARTICLE 17
### Directors' Fees

Directors' fees and similar payments derived by a resident of a Contracting State in his capacity as a member of the board of directors of a company which is a resident of the other Contracting State may be taxed in that other State.

## ARTICLE 18
### Income Earned by Entertainers and Athletes

1. Notwithstanding the provisions of Articles 15 (Independent Personal Services) and 16 (Dependent Personal Services), income derived by a resident of a Contracting State as an entertainer, such as a theatre, motion picture, radio or television artiste, or a musician, or as an athlete, from his personal activities as such exercised in the other Contracting State, may be taxed in that other State, except where the amount of the net income derived by such entertainer or athlete from such activities (after deduction of all expense incurred by him in connection with his visit and performance) does not exceed one thousand five hundred United States dollars ($1,500) or its equivalent Indian rupees for the taxable year concerned.

2. Where income in respect of activities exercised by an entertainer or an athlete in his capacity as such accrues not to the entertainer or athlete but to another person, that income of that other person may, notwithstanding the provisions of Articles 7 (Business Profits), 15 (Independent Personal Services)

and 16 (Dependent Personal Services), be taxed in the Contracting State in which the activities of the entertainer or athlete are exercised unless the entertainer, athlete, or other person establishes that neither the entertainer or athlete nor persons related thereto participate directly or indirectly in the profits of that other person in any manner, including the receipt of deferred remuneration, bonuses, fees, dividends, partnership distributions, or other distributions.

3. Income referred to in the preceding paragraphs of this Article derived by a resident of a Contracting State in respect of activities exercised in the other Contracting State shall not be taxed in that other State if the visit of the entertainers or athletes to that other State is supported wholly or substantially from the public funds of the Government of the first-mentioned Contracting State, or of a political subdivision or local authority thereof.

4. The competent authorities of the Contracting States may, by mutual agreement, increase the dollar amounts referred to in paragraph 1 to reflect economic or monetary developments.


ARTICLE 19
Remuneration and Pensions in Respect of Government Service

1.          (a) Remuneration, other than a pension, paid by a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that State or subdivision or authority shall be taxable only in that State.
          (b) However, such remuneration shall be taxable only in the other Contracting State if the services are rendered in that other State and the individual is a resident of that State who:
               (i) is a national of that State; or
               (ii) did not become a resident of that State solely for the purpose of rendering the services.

2.          (a) Any pension paid by, or out of funds created by, a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that state or subdivision or authority shall be taxable only in that State.
          (b) However, such pension shall be taxable only in the other Contracting State if the individual is a resident of, and a national of, that State.

3. The provisions of Articles 16 (Dependent Personal Services), 17 (Directors' Fees), 18 (Income Earned by Entertainers and Athletes) and 20 (Private Pensions, Annuities, Alimony and Child Support) shall apply to remuneration and pensions in respect of services rendered in connection with a business carried on by a Contracting State or a political subdivision or a local authority thereof.


ARTICLE 20
Private Pensions, Annuities, Alimony and Child Support

1. Any pension, other than a pension referred to in Article 19 (Remuneration and Pensions in Respect of Government Service), or any annuity derived by a resident of a Contracting State from sources within the other Contracting State may be taxed only in the first-mentioned Contracting State.

2. Notwithstanding paragraph 1, and subject to the provisions of Article 19 (Remuneration and Pensions in Respect of Government Service), social security benefits and other public pensions paid by a Contracting State to a resident of the other Contracting State or a citizen of the United States shall be taxable only in the first-mentioned State.

3. The term "pension" means a periodic payment made in consideration of past services or by way or compensation for injuries received in the course of performance of services.

4. The term "annuity" means stated sums payable periodically at stated times during life or during a specified or ascertainable number of years, under an obligation to make the payments in return for adequate and full consideration in money or money's worth (but not for services rendered).

5. Alimony paid to a resident of a Contracting State shall be taxable only in that State. The term "alimony" as used in this paragraph means periodic payments made pursuant to a written separation agreement or a decree of divorce, separate maintenance, or compulsory support, which payments are taxable to the recipient under the laws of the State of which he is a resident.

6. Periodic payments for the support of a minor child made pursuant to a written separation agreement or a decree of divorce, separate maintenance or compulsory support, paid by a resident of a Contracting State to a resident of the other Contracting State, shall be taxable only in the first-mentioned State.


ARTICLE 21
Payments Received by Students and Apprentices

1. A student or business apprentice who is or was a resident of one of the Contracting States immediately before visiting the other Contracting State and who is present in that other State principally for the purpose of his education or training shall be exempt from tax in that other State, on payments which arise outside that other State for the purposes of his maintenance, education or training.

2. In respect of grants, scholarships and remuneration from employment not covered by paragraph 1, a student or business apprentice described in paragraph 1 shall, in addition, be entitled during such education or training to the same exemptions, reliefs or reductions in respect of taxes available to residents of the State which he is visiting.

3. The benefits of this Article shall extend only for such period of time as may be reasonable or customarily required to complete the education or training undertaken.

4. For the purposes of this Article, an individual shall be deemed to be a resident of a Contracting State if he is resident in that Contracting State in the taxable year in which he visits the other Contracting State or in the immediately proceeding taxable year.


## ARTICLE 22
### Payments Received by Professors, Teachers and Research Scholars

1. An individual who visits a Contracting State for a period not exceeding two years for the purpose of teaching or engaging in research at a university, college or other recognized educational institution in that State, and who was immediately before that visit a resident of the other Contracting State, shall be exempted from tax by the first-mentioned Contracting State on any remuneration for such teaching or research for a period not exceeding two years from the date he first visits that State for such purpose.

2. This Article shall apply to income from research only if such research is undertaken by the individual in the public interest and not primarily for the benefit of some other private person or persons.


## ARTICLE 23
### Other Income

1. Subject to the provisions of paragraph 2, items of income of a resident of a Contracting State, wherever arising, which are not expressly dealt with in the foregoing Articles of this Convention shall be taxable only in that Contracting State.

2. The provisions of paragraph 1 shall not apply to income, other than income from immovable property as defined in paragraph 2 of Article 6 (Income from Immovable Property (Real Property)), if the beneficial owner of the income, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the income is attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

3. Notwithstanding the provisions of paragraphs 1 and 2, items of income of a resident of a Contracting State not dealt with in the foregoing articles of this Convention and arising in the other Contracting State may also be taxed in that other State.


## ARTICLE 24
### Limitation on Benefits

1. A person (other than an individual) which is a resident of a Contracting State and derives income from the other Contracting State shall be entitled under this Convention to relief from taxation in that other Contracting State only if:

    (a) more than 50 percent of the beneficial interest in such person (or in the case of a company, more than 50 percent of the number of shares of each class of the company's shares) is owned, directly or indirectly, by one or more individual residents of one of the Contracting States, one of the Contracting States or its political subdivisions or local authorities, or other individuals subject to tax in either Contracting State or their worldwide incomes, or citizens of the United States; and

    (b) the income of such person is not used in substantial part, directly or indirectly, to meet liabilities (including liabilities for interest or royalties) to persons who are not residents of one of the Contracting States, one of the Contracting States or its political subdivisions or local authorities, or citizens of the United States.

2. The provisions of paragraph 1 shall not apply if the income derived from the other Contracting State is derived in connection with, or is incidental to, the active conduct by such person of a trade or business in the first-mentioned State (other than the business of making or managing investments, unless these activities are banking or insurance activities carried on by a bank or insurance company).

3. The provisions of paragraph 1 shall not apply if the person deriving the income is a company which is a resident of a Contracting State in whose principal class of shares there is substantial and regular trading on a recognized stock exchange. For purposes of the preceding sentence, the term "recognized stock exchange" means:

    (a) in the case of the United States, the NASDAQ System owned by the National Association of Securities Dealers, Inc. and any stock exchange registered with the Securities and Exchange Commission as a national securities exchange for purposes of the Securities Act of 1934;

    (b) in the case of India, any stock exchange which is recognized by the Central Government under the Securities Contracts Regulation Act, 1956; and

    (c) any other stock exchange agreed upon by the competent authorities of the Contracting States.

4. A person that is not entitled to the benefits of this Convention pursuant to the provisions of the preceding paragraphs of this Article may, nevertheless, be granted the benefits of the Convention if the competent authority of the State in which the income in question arises so determines.

## ARTICLE 25
### Relief from Double Taxation

1. In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States

shall allow to a resident or citizen of the United States as a credit against the United States tax on income:

        (a) the income tax paid to India by or on behalf of such citizen or resident; and

        (b) in the case of a United States company owning at least 10 percent of the voting stock of a company which is a resident of India and from which the United States company receives dividends, the income tax paid to India by or on behalf of the distributing company with respect to the profits out of which the dividends are paid.

For the purposes of this paragraph, the taxes referred to in paragraphs 1(b) and 2 of Article 2 (Taxes Covered) shall be considered income taxes.

2.        (a) Where a resident of India derives income which, in accordance with the provisions of this Convention, may be taxed in the United States, India shall allow as a deduction from the tax on the income of that resident an amount equal to the income tax paid in the United States, whether directly or by deduction. Such deduction shall not, however, exceed that part of the income tax (as computed before the deduction is given) which is attributable to the income which may be taxed in the United States.

        (b) Further, where such resident is a company by which a surtax is payable in India, the deduction in respect of income tax paid in the United States shall be allowed in the first instance from income tax payable by the company in India and as to the balance, if any, from surtax payable by it in India.

3. For the purposes of allowing relief from double taxation pursuant to this Article, income shall be deemed to arise as follows:

        (a) income derived by a resident of a Contracting State which may be taxed in the other Contracting State in accordance with this Convention (other than solely by reason of citizenship in accordance with paragraph 3 of Article 1 (General Scope)) shall be deemed to arise in that other State

        (b) income derived by a resident of a Contracting State which may not be taxed in the other Contracting State in accordance with the Convention shall be deemed to arise in the first-mentioned State.

Notwithstanding the proceeding sentence, the determination of the source of income for purposes of this Article shall be subject to such source rules in the domestic laws of the Contracting States as apply for the purpose of limiting the foreign tax credit. The preceding sentence shall not apply with respect to income dealt with in Article 12 (Royalties and Fees for Included Services). The rules of this paragraph shall not apply in determining credits against United States tax for foreign taxes other than the taxes referred to in paragraphs 1(b) and 2 of Article 2 (Taxes Covered).

## ARTICLE 26
### Non-discrimination

1. Nationals of a Contracting State shall not be subjected in the other Contracting State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation

and connected requirements to which nationals of that other State in the same circumstances are or may be subjected. This provision shall apply to persons who are not residents of one or both of the Contracting States.

2. Except where the provisions of paragraph 3 of Article 7 (Business Profits) apply, the taxation on a permanent establishment which an enterprise of a Contracting State has in the other Contracting State shall not be less favorably levied in that other State than the taxation levied on enterprises of that other State carrying on the same activities. This provision shall not be construed as obliging a Contracting State to grant to residents of the other Contracting State any personal allowances, reliefs, and reductions for taxation purposes on account of civil status or family responsibilities which it grants to its own residents.

3. Except where the provisions of paragraph 1 of Article 9 (Associated Enterprises), paragraph 7 of Article 11 (Interest), or paragraph 8 of Article 12 (Royalties and Fees for Included Services) apply, interest, royalties, and other disbursements paid by a resident of a Contracting State to a resident of the other Contracting State shall, for the purposes of determining the taxable profits of the first-mentioned resident, be deductible under the same conditions as if they had been paid to a resident of the first-mentioned State.

4. Enterprises of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which other similar enterprises of the first-mentioned State are or may be subjected.

5. Nothing in this article shall be construed as preventing either Contracting State from imposing the taxes described in Article 14 (Permanent Establishment Tax) or the limitations described in paragraph 3 of Article 7 (Business Profits).

ARTICLE 27
Mutual Agreement Procedure

1. Where a person considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with the provisions of this Convention, he may, irrespective of the remedies provided by the domestic law of those States, present his case to the competent authority of the Contracting State of which he is a resident or national. This case must be presented within three years of the date of receipt of notice of the action which gives rise to taxation not in accordance with the Convention.

2. The competent authority shall endeavour, if the objection appears to it to be justified and if it is not itself able to arrive at a satisfactory solution, to resolve the case by mutual agreement with the competent authority of the other Contracting State, with a view to the avoidance of taxation which is not

in accordance with the Convention. Any agreement reached shall be implemented notwithstanding any time limits or other procedural limitations in the domestic law of the Contracting States.

3. The competent authorities of the Contracting States shall endeavour to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of the Convention. They may also consult together for the elimination of double taxation in cases not provided for in the Convention.

4. The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of the preceding paragraphs. The competent authorities, through consultations, shall develop appropriate bilateral procedures, conditions, methods and techniques for the implementation of the mutual agreement procedure provided for in this Article. In addition, a competent authority may devise appropriate unilateral procedures, conditions, methods and techniques to facilitate the above-mentioned bilateral actions and the implementation of the mutual agreement procedure.

## ARTICLE 28
### Exchange of Information and Administrative Assistance

1. The competent authorities of the Contracting States shall exchange such information (including documents) as is necessary for carrying out the provisions of this Convention or of the domestic laws of the Contracting States concerning taxes covered by the Convention insofar as the taxation thereunder is not contrary to the Convention, in particular, for the prevention of fraud or evasion of such taxes. The exchange of information is not restricted by Article 1 (General Scope). Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic laws of that State. However, if the information is originally regarded as secret in the transmitting State, it shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment, collection, or administration of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes which are the subject of the Convention. Such persons or authorities shall use the information only for such purposes, but may disclose the information in public court proceedings or in judicial decisions. The competent authorities shall, through consultation, develop appropriate conditions, methods and techniques concerning the matters in respect of which such exchange of information shall be made, including, where appropriate, exchange of information regarding tax avoidance.

2. The exchange of information or documents shall be either on a routine basis or on request with reference to particular cases, or otherwise. The competent authorities of the Contracting States shall agree from time to time on the list of information or documents which shall be furnished on a routine basis.

3. In no case shall the provisions of paragraph 1 be construed so as to impose on a Contracting State the obligation:

(a) to carry out administrative measures at variance with the laws and administrative practice of that or of the other Contracting State;

(b) to supply information which is not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;

(c) to supply information which would disclose any trade, business, industrial, commercial, or professional secret or trade process, or information the disclosure of which would be contrary to public policy (ordre public).

4. If information is requested by a Contracting State in accordance with this Article, the other Contracting State shall obtain the information to which the request relates in the same manner and in the same form as if the tax of the first-mentioned State were the tax of that other State and were being imposed by that other State. If specifically requested by the competent authority of a Contracting State, the competent authority of the other Contracting State shall provide information under this Article in the form of depositions of witnesses and authenticated copies of unedited original documents (including books, papers, statements, records, accounts, and writings), to the same extent such depositions and documents can be obtained under the laws and administrative practices of that other State with respect to its own taxes.

5. For the purpose of this Article, the Convention shall apply, notwithstanding the provisions of Article 2 (Taxes Covered):

(a) in the United States, to all taxes imposed under Title 26 of the United States Code; and

(b) in India, to the income tax, the wealth tax and the gift tax.

## ARTICLE 29
### Diplomatic Agents and Consular Officers

Nothing in this Convention shall affect the fiscal privileges of diplomatic agents or consular officers under the general rules of international law or under the provisions of special agreements.

## ARTICLE 30
### Entry Into Force

1. Each Contracting State shall notify the other Contracting State in writing, through diplomatic channels, upon the completion of their respective legal procedures to bring this Convention into force.

2. The Convention shall enter into force on the date of the latter of such notifications and its provisions shall have effect:

(a) in the United States

(i) in respect of taxes withheld at source, for amounts paid or credited on or after the first day of January next following the date on which the Convention enters into force;

(ii) in respect of other taxes, for taxable periods beginning on or after the first day of January next following the date on which the Convention enters into force; and

(b) in India, in respect of income arising in any taxable year beginning on or after the first day of April next following the calendar year in which the Convention enters into force.


ARTICLE 31
Termination

This Convention shall remain in force indefinitely but either of the Contracting States may, on or before the thirtieth day of June in any calendar year beginning after the expiration of a period of five years from the date of the entry into force of the Convention, give the other Contracting State through diplomatic channels, written notice of termination and, in such event, this Convention shall cease to have effect:

(a) in the United States

(i) in respect of taxes withheld at source, for amounts paid or credited on or after the first day of January next following the calendar year in which notice of termination is given; and

(ii) in respect of other taxes, for taxable periods begin following the calendar year in which the notice of termination is given; and

(b) in India, in respect of income arising in any taxable year beginning on or after the first day of April next following the calendar year in which the notice of termination is given.


IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Convention.


DONE at New Delhi in duplicate, this 12th day of September, 1989, in the English and Hindi languages, both texts being equally authentic. In case of divergence between the two texts, the English text shall be the operative one.

FOR THE GOVERNMENT OF THE                      FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:                         REPUBLIC OF INDIA:
   JOHN R. HUBBARD,                                   N.K. SENGUPTA,
    *Ambassador.*                                                      *Secretary to the Government of India*


PROTOCOL

At the signing today of the Convention between the United States of America and the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes

on Income, the undersigned have agreed upon the following provisions, which shall form an integral part of the Convention:

## I. Ad Article 5

It is understood that where an enterprise of a Contracting State has a permanent establishment in the other Contracting State in accordance with the provisions of paragraphs 2(j), 2(k) or 2(1) of Article 5 (Permanent Establishment), and the time period referred to in that paragraph extends over two taxable years, a permanent establishment shall not be deemed to exist in a year, if any, in which the use, site, project or activity, as the case may be, continues for a period or periods aggregating less than 30 days in that taxable year. A permanent establishment will exist in the other taxable year, and the enterprise will be subject to tax in that other Contracting State in accordance with provisions of Article 7 (Business Profits), but only on income arising during that other taxable year.

## II. Ad Article 7

Where the law of the Contracting State in which a permanent establishment is situated imposes, in accordance with the provisions of paragraph 3 of Article 7 (Business Profits), a restriction on the amount of executive and general administrative expenses which may be allowed as a deduction in determining the profits of such permanent establishment, it is understood that in making such a determination of profits the deduction in respect of such executive and general administrative expenses in no case shall be less than that allowable under the Indian Income-tax Act as on the date of signature of this Convention.

## III. Ad Articles 7, 10, 11, 12, 15, and 23

It is understood that for the implementation of paragraphs 1 and 2 of Article 7 (Business Profits); paragraph 4 of Article 10 (Dividends), paragraph 5 of Article 11 (Interest), paragraph 6 of Article 12 (Royalties and Fees for Included Services), paragraph 1 of Article 15 (Independent Personal Services), and paragraph 2 of Article 23 (Other Income), any income attributable to a permanent establishment or fixed base during its existence is taxable in the Contracting State in which such permanent establishment or fixed base is situated even if the payments are deferred until such permanent establishment or fixed base has ceased to exist.

## IV. Ad Article 12

It is understood that fees for included services, as defined in paragraph 4 of Article 12 (Royalties and Fees for Included Services) will, in accordance with United States law, be subject to income tax in the United States based on net income and, when earned by a company, will also be subject to the taxes described in paragraph 1 of Article 14 (Permanent Establishment Tax). The total of these taxes

which may be imposed on such fees, however, may not exceed the amount computed by multiplying the gross fee by the appropriate tax rate specified in subparagraph (a) or (b), whichever is applicable, of paragraph 2 of Article 12.

## *V. Ad Article 14*

It is understood that references in paragraph 1 of Article 14 (Permanent Establishment Tax) to profits that are subject to tax in the United States under Article 6 (Income from Immovable Property (Real Property)), under Article 12 (Royalties and Fees for Included Services), as fees for included services as defined in that Article, or under Article 13 (Gains) of this Convention, are intended to refer only to cases in which the profits in question are subject to United States tax based on net income *(i.e.,* by virtue of being effectively connected, or being treated as effectively connected, with the conduct of a trade or business in the United States). Any income which is subject to tax under those Articles based on gross income is not subject to tax under Article 14.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Protocol.

DONE at New Delhi in duplicate, this 12th day of September, 1989, in the English and Hindi languages, both texts being equally authentic. In case of divergence between the two texts, the English text shall be the operative one.

FOR THE GOVERNMENT OF THE UNITED STATES OF AMERICA:
 JOHN R. HUBBARD,
  *Ambassador.*

FOR THE GOVERNMENT OF THE REPUBLIC OF INDIA:
N.K. SENGUPTA,
  *Secretary to the Government of India.*

## NOTES OF EXCHANGE 1

EMBASSY OF THE UNITED STATES OF AMERICA,
*New Delhi, September 12, 1989.*

His Excellency, DR. N.K. SENGUPTA,
*Secretary (Revenue),*
*Ministry of Finance, New Delhi.*

EXCELLENCY: I have the honor to refer to the Convention between the Government of the United States of America and the Government of the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income which was signed today (hereinafter referred to as "the Convention") and to confirm, on behalf of the Government of the United States of America, the following understandings reached between the two Governments:

Both sides agree that a tax sparing credit shall not be provided in Article 25 (Relief from Double Taxation) of the Convention at this time. However, the Convention shall be promptly amended to incorporate a tax sparing credit provision if the United States hereafter amends its laws concerning the provision of tax sparing credits or the United States reaches agreement on the provision of a tax' sparing credit with any other country.

Both sides also agree that, for purposes of paragraph 4(c) of Article 5 (Permanent Establishment) of the Convention, a person shall be considered to habitually secure orders in a Contracting State, wholly or almost wholly for an enterprise, only if:

1. such person frequently accepts orders for goods or merchandise on behalf of the enterprise;

2. substantially all of such person's sales-related activities in the Contracting State consist of activities for the enterprise;

3. such person habitually represents to persons offering to buy goods or merchandise that acceptance of an order by such person constitutes the agreement of the enterprise to supply goods or merchandise under the terms and conditions specified in the order; and

4. the enterprise takes actions that give purchasers the basis for a reasonable belief that such person has authority to bind the enterprise.

I have the honor to request Your Excellency to confirm the foregoing understandings of Your Excellency's Government.

Accept, Excellency, the renewed assurances of my highest consideration.

JOHN R. HUBBARD,
*Ambassador.*

GOVERNMENT OF INDIA,
MINISTRY OF FINANCE, DEPARTMENT OF REVENUE,
*New Delhi, September 12, 1989.*

His Excellency, Dr. JOHN R. HUBBARD,
*Ambassador of the United States of America,*
*New Delhi.*

EXCELLENCY: I have the honour to acknowledge receipt of Your Excellency's Note of today's date, which reads as follows:

"I have the honor to refer to the Convention between the Government of the United States of America and the Government of the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income which was signed today (hereinafter

referred to as "the Convention") and to confirm, on behalf of the Government of the United States of America, the following understanding reached between the two Governments:

Both sides agree that a tax sparing credit shall not be provided in Article 25 (Relief from Double Taxation) of the Convention at this time. However, the Convention shall be promptly amended to incorporate a tax sparing credit provision if the United States hereafter amends its laws concerning the provision of tax sparing credits, or the United States reaches agreement on the provision of a tax sparing credit with any other country.

Both sides also agree that, for purposes of paragraph 4(c) of Article 5 (Permanent Establishment) of the Convention, a person shall be considered to habitually secure orders in a Contracting State, wholly or almost wholly for an enterprise, only if:

1. such person frequently accepts orders for goods or merchandise on behalf of the enterprise;

2. substantially all of such person's sales-related activities in the Contracting State consist of activities for the enterprise;

3. such person habitually represents to persons offering to buy goods or merchandise that acceptance of an order by such person constitutes the agreement of the enterprise to supply goods or merchandise under the terms and conditions specified in the order; and

4. the enterprise takes actions that give purchasers the basis for a reasonable belief that such person has authority to bind the enterprise."

I have the honour to confirm the understandings contained in Your Excellency's Note, on behalf of the Government of the Republic of India.

Accept, Excellency, the renewed assurances of my highest consideration.

N.K. SENGUPTA,
*Secretary.*


NOTES OF EXCHANGE 2

EMBASSY OF THE UNITED STATES OF AMERICA,
*New Delhi, September 12, 1989.*

His Excellency, Dr. N.K. SENGUPTA,
*Secretary (Revenue),*
*Ministry of Finance, New Delhi.*

EXCELLENCY: I have the honor to refer to the Convention signed today between the United States of America and the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and to inform you on behalf of the United States of America of the following:

During the course of the negotiations leading to conclusion of the Convention signed today, the negotiators developed and agreed upon a memorandum of understanding intended to give guidance both to the taxpayers and the tax authorities of our two countries in interpreting aspects of Article 12 Royalties and Fees for Included Services) relating to the scope of included services. This memorandum of understanding represents the current views of the United States Government with respect to these aspects of Article 12, and it is my Government's understanding that it also represents the current views of the Indian Government. It is also my Government's view that as our Governments gain experience in administering the Convention, and particularly Article 12, the competent authorities may develop and publish amendments to the memorandum of understanding and further understandings and interpretations of the Convention.

If this position meets with the approval of the Government of the Republic of India, this letter and your reply thereto will indicate that our Governments share a common view of the purpose of the memorandum of understanding relating to Article 12 of the Convention.

Accept, Excellency, the renewed assurances of my highest consideration.

JOHN R. HUBBARD,
*Ambassador*.


GOVERNMENT OF INDIA,
MINISTRY OF FINANCE, DEPARTMENT OF REVENUE,
*New Delhi, September 12, 1989.*

His Excellency, Dr. JOHN R. HUBBARD,
*Ambassador of the United States of America,*
*New Delhi.*

EXCELLENCY: I have the honour to acknowledge receipt of Your Excellency's Note of today's date, which reads as follows:

"I have the honor to refer to the Convention signed today between the United States of America and the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and to inform you on behalf of the United States of America of the following:

During the course of the negotiations leading to conclusion of the Convention signed today, the negotiators developed and agreed upon a memorandum of understanding intended to give guidance both to the taxpayers and the tax authorities of our two countries in interpreting aspects of Article 12 (Royalties and Fees for Included Services) relating to the scope of included services. This memorandum of understanding represents the current views of the United States Government with respect to these

aspects of Article 12, and it is my Government's understanding that it also represents the current views of the Indian Government. It is also my Government's view that as our Governments gain experience in administering the Convention, and particularly Article 12, the competent authorities may develop and publish amendments to the memorandum of understanding and further understandings and interpretations of the Convention.

If this position meets with the approval of the Government of the Republic of India, this letter and your reply thereto will indicate that our Governments share a common view of the purpose of the memorandum of understanding relating to Article 12 of the Convention."

I have the honour to confirm the understandings contained in Your Excellency's Note, on behalf of the Government of the Republic of India.

Accept, Excellency, the renewed assurances of my highest consideration.

N.K. SENGUPTA,
*Secretary*.

## MEMORANDUM OF UNDERSTANDING

MAY 15, 1989.

## U.S. - INDIA TAX TREATY

## MEMORANDUM OF UNDERSTANDING CONCERNING FEES FOR INCLUDED SERVICES IN ARTICLE 12

*Paragraph 4 (in general)*

This memorandum describes in some detail the category of services defined in paragraph 4 of Article 12 (Royalties and Fees for Included Services). It also provides examples of services intended to be covered within the definition of included services and those intended to be excluded, either because they do not satisfy the tests of paragraph 4, or because, notwithstanding the fact that they meet the tests of paragraph 4, they are dealt with under paragraph 5. The examples in either case are not intended as an exhaustive list but rather as illustrating a few typical cases. For ease of understanding, the examples in this memorandum describe U.S. persons providing services to Indian persons, but the rules of Article 12 are reciprocal in application.

Article 12 includes only certain technical and consultancy services. By technical services, we mean in this context services requiring expertise in a technology. By consultancy services, we mean m this context advisory services. The categories of technical and consultancy services are to some extent

overlapping because a consultancy service could also be a technical service. However, the category of consultancy services also includes an advisory service, whether or not expertise in a technology is required to perform it.

Under paragraph 4 technical and consultancy services are considered included services only to the following extent: (1) as described in paragraph 4(a), if they are ancillary and subsidiary to the application or enjoyment of a right, property or information for which a royalty payment is made; or (2) as described in paragraph 4(b), if they make available technical knowledge, experience, skill, know-how, or processes, or consist of the development and transfer of a technical plan or technical design. Thus, under paragraph 4(b), consultancy services which are not of a technical nature cannot be included services.

*Paragraph 4(a)*

Paragraph 4(a) of Article 12 refers to technical or consultancy services that are ancillary and subsidiary to the application or enjoyment of any right, property, or information for which a payment described in paragraph 3(a) or (b) is received. Thus, paragraph 4(a) includes technical and consultancy services that are ancillary and subsidiary to the application or enjoyment of an intangible for which a royalty is received under a license or sale as described in paragraph 3(a), as well as those ancillary and subsidiary to the application or enjoyment of industrial, commercial, or scientific equipment for which a royalty is received under a lease as described in paragraph 3(1)).

It is understood that, in order for a service fee to be considered "ancillary and subsidiary" to the application or enjoyment of some right, property, or information for which a payment described in paragraph 3(a) or (b) is received, the service must be related to the application or enjoyment of the right, property, or information. In addition, the clearly predominant purpose of the arrangement under which the payment of the service fee and such other payment are made must be the application or enjoyment of the right, property, or information described in paragraph 3. The question of whether the service is related to the application or enjoyment of the right, property, or information described in paragraph 3 and whether the clearly predominant purpose of the arrangement is such application or enjoyment must be determined by reference to
the facts and circumstances of each case. Factors which may be relevant to such determination (although not necessarily controlling) include:

      1. the extent to which the services in question facilitate the effective application or enjoyment of the right, property, or information described in paragraph 3;

      2. the extent to which such services are customarily provided in the ordinary course of business arrangements involving royalties described in paragraph 3;

      3. whether the amount paid for the services (or which would be paid by parties operating at arm's length) is an insubstantial portion of the combined payments for the services and the right, property, or information described in paragraph 3;

      4. whether the payment made for the services and the royalty described in paragraph 3 are made under a single contract (or a set of related contracts); and

5. whether the person performing the services is the same person as, or a related person to, the person receiving the royalties described in paragraph 3 (for this purpose, persons are considered related if their relationship is described in Article 9 (Associated Enterprises) or if the person providing the service is doing so in connection with an overall arrangement which includes the payor and recipient of the royalties).

To the extent that services are not considered ancillary and subsidiary to the application or enjoyment of some right, property, or information for which a royalty payment under paragraph 3 is made, such services shall be considered "included services" only to the extent that they are described in paragraph 4(b).

### *Example (1)*

Facts:      A U.S. manufacturer grants rights to an Indian company to use manufacturing processes in which the transferor has exclusive rights by virtue of process patents or the protection otherwise extended by law to the owner of a process. As part of the contractual arrangement, the U.S. manufacturer agrees to provide certain consultancy services to the Indian company in order to improve the effectiveness of the latter's use of the process. Such services include, for example, the provision of information and advice on sources of supply for materials needed in the manufacturing process, and on the development of sales and service literature for the manufactured product. The payments allocable to such services do not form a substantial part of the total consideration payable under the contractual arrangement. Are the payments for these services fees for "included services"?

Analysis:    The payments are fees for included services. The services described in this example are ancillary and subsidiary to the use of a manufacturing process protected by law as described in paragraph 3(a) of Article 12 because the services are related to the application or enjoyment of the intangible and the granting of the right to use the intangible is the clearly predominant purpose of the arrangement. Because the services are ancillary and subsidiary to the use of the manufacturing process, the fees for these services are considered fees for included services under paragraph 4(a) of Article 12, regardless of whether the services are described in paragraph 4(b).

### *Example (2)*

Facts:      An Indian manufacturing company produces a product that must be manufactured under sterile conditions using machinery that must be kept completely free of bacterial or other harmful deposits. A U.S. company has developed a special cleaning process for removing such deposits from that type of machinery. The U.S. company enters into a contract with the Indian company under which the former will clean the latter's machinery on a regular basis. As part of the arrangement, the U.S. company leases to the Indian company a piece of equipment which allows the Indian company to measure

the level of bacterial deposits on its machinery in order for it to know when cleaning is required. Are the payments for the services fees for included services?

Analysis:    In this example, the provision of cleaning services by the U. S. company and the rental of the monitoring equipment are related to each other. However, the clearly predominant purpose of the arrangement is the provision of cleaning services. Thus, although the cleaning services might be considered technical services, they are not 'ancillary and subsidiary" to the rental of the monitoring equipment. Accordingly, the cleaning services are not "included services" within the meaning of paragraph 4(a).

*Paragraph 4(b)*

Paragraph 4(b) of Article 12 refers to technical or consultancy services that make available to the person acquiring the service technical knowledge, experience, skill, know-how, or processes, or consist of the development and transfer of a technical plan or technical design to such person. (For this purpose, the person acquiring the service shall be deemed to include an agent, nominee, or transferee of such person.) This category is narrower than the category described in paragraph 4(a) because it excludes any service that does not make technology available to the person acquiring the service. Generally speaking, technology will be considered "made available" when the person acquiring the service is enabled to apply the technology. The fact that the provision of the service may require technical input by the person providing the service does not *per se* mean that technical knowledge, skills, etc. are made available to the person purchasing the service, within the meaning of paragraph 4(b). Similarly, the use of a product which embodies technology shall not *per se* he considered to make the technology available.

Typical categories of services that generally involve either the development and transfer of technical plans or technical designs, or making technology available as described in paragraph 4(b), include:
    1. engineering services (including the subcategories of bioengineering and aeronautical, agricultural, ceramics, chemical, civil, electrical, mechanical, metallurgical, and industrial engineering);
    2. architectural services; and
    3. computer software development.

Under paragraph 4(b), technical and consultancy services could make technology available in a variety of settings, activities and industries. Such services may, for example, relate to any of the following areas:
    1. bio-technical services;
    2. food processing;
    3. environmental and ecological services;
    4. communication through satellite or otherwise;
    5. energy conservation;
    6. exploration or exploitation of mineral oil or natural gas;

7. geological surveys;

8. scientific services; and

9. technical training.

The following examples indicate the scope of the conditions in paragraph 4(b):

*Example (3)*

Facts:        A U.S. manufacturer has experience in the use of a process for manufacturing wallboard for interior walls of houses which is more durable than the standard products of its type. An Indian builder wishes to produce this product for its own use. It rents a plant and contracts with the U.S. company to send experts to India to show engineers in the Indian company how to produce the extra strong wallboard. The U.S. contractors work with the technicians in the Indian firm for a few months. Are the payments to the U.S. firm considered to be payments for "included services"?

Analysis:     The payments would be fees for included services. The services are of a technical or consultancy nature; in the example, they have elements of both types of services. The services make available to the Indian company technical knowledge, skill, and processes.

*Example (4)*

Facts:        A U.S. manufacturer operates a wallboard fabrication plant outside India. An Indian builder hires the U.S. company to produce wallboard at that plant for a fee. The Indian company provides the raw materials, and the U.S. manufacturer fabricates the wallboard in its plant, using advanced technology. Are the fees in this example for included services?

Analysis:     The fees would not be for included services. Although the U.S. company is clearly performing a technical service, no technical knowledge, skill, etc., are made available to the Indian company, nor is there any development and transfer of a technical plan or design. The U.S. company is merely performing a contract manufacturing service.

*Example (5)*

Facts:        An Indian firm owns inventory control software for use in its chain of retail outlets throughout India. It expands its sales operation by employing a team of traveling salesmen to travel around the countryside selling the company's wares. The company wants to modify its software to permit the salesmen to access the company's central computers for information on what products are available in inventory and when they can be delivered. The Indian firm hires a U.S. computer programming firm to modify its

software for this purpose. Are the fees which the Indian firm pays treated as fees for included services?

Analysis:    The fees are for included services. The U.S. company clearly performs a technical service for the Indian company, and it transfers to the Indian company the technical plan (i.e., the computer program) which it has developed.

*Example (6)*

Facts:    An Indian vegetable oil manufacturing company wants to produce a cholesterol-free oil from a plant which produces oil normally containing cholesterol. An American company has developed a process for refining the cholesterol out of the oil. The Indian company contracts with the U.S. company to modify the formulas which it uses so as to eliminate the cholesterol, and to train the employees of the Indian company in applying the new formulas. Are the fees paid by the Indian company for included services?

Analysis:    The fees are for included services. The services are technical, and the technical knowledge is made available to the Indian company.

*Example (7)*

Facts:    The Indian vegetable oil manufacturing firm has mastered the science of producing cholesterol-free oil and wishes to market the product world-wide. It hires an American marketing consulting firm to do a computer simulation of the world market for such oil and to advise it on marketing strategies. Are the fees paid to the U.S. company for included services?

Analysis:    The fees would not be for included services. The American company is providing a consultancy service which involves the use of substantial technical skill and expertise. It is not, however, making available to the Indian company any technical experience, knowledge or skill, etc., nor is it transferring a technical plan or design. What is transferred to the Indian company through the service contract is commercial information. The fact that technical skills were required by the performer of the service in order to perform the commercial information service does not make the service a technical service within the meaning of paragraph 4(b).

*Paragraph 5*

Paragraph 5 of Article 12 describes several categories of services which are not intended to be treated as included services even if they satisfy the tests of paragraph 4. Set forth below are examples of cases where fees would be included under paragraph 4, but are excluded because of the conditions of paragraph 5.

*Example (8)*

Facts:              An Indian company purchases a computer from a U.S. computer manufacturer. As part
                    of the purchase agreement, the manufacturer agrees to assist the Indian company in
                    setting up the computer and installing the operating system, and to ensure that the staff
                    of the Indian company is able to operate the computer. Also, as part of the purchase
                    agreement, the seller agrees to provide, for a period of ten years, any updates to the
                    operating system and any training necessary to apply the update. Both of these service
                    elements to the contract would qualify under paragraph 4(b) as an included service.
                    Would either or both be excluded from the category of included services, under
                    paragraph 5(a), because they are ancillary and subsidiary, as well as inextricably and
                    essentially linked, to the sale of the computer?

Analysis:           The installation assistance and initial training are ancillary and subsidiary to the sale of
                    the computer, and they are also inextricably and essentially linked to the sale. The
                    computer would be of little value to the Indian purchaser without these services, which
                    are most readily and usefully provided by the seller. The fees for installation assistance
                    and initial training, therefore, are not fees for included services, since these services are
                    not the predominant purpose of the arrangement.

The services of updating the operating system and providing associated necessary training may well be
ancillary and subsidiary to the sale of the computer, but they are not inextricably and essentially linked to
the sale. Without the upgrades, the computer will continue to operate as it did when purchased, and will
continue to accomplish the same functions. Acquiring the updates cannot, therefore, be said to be
inextricably and essentially linked to the sale of the computer.

*Example (9)*

Facts:              An Indian hospital purchases an X-ray machine from a U.S. manufacturer. As part of
                    the purchase agreement, the manufacturer agrees to install the machine, to perform an
                    initial inspection of the machine in India, to train hospital staff in the use of the machine,
                    and to service the machine periodically during the usual warranty period (2 years).
                    Under an optional service contract purchased by the hospital, the manufacturer also
                    agrees to perform certain other services throughout the life of the machine, including
                    periodic inspections and repair services, advising the hospital about developments in X-
                    ray film or techniques which could improve the effectiveness of the machine, and training
                    hospital staff in the application of those new developments. The cost of the initial
                    installation, inspection, training, and warranty service is relatively minor as compared
                    with the cost of the X-ray machine. Is any of the service described here ancillary and
                    subsidiary, as well as inextricably linked, to the sale of the X-ray
                    machine?

Analysis:    The initial installation, inspection, and training services in India and the periodic service during the warranty period are ancillary and subsidiary, as well as inextricably and essentially linked, to the sale of the X-ray machine because the usefulness of the machine to the hospital depends on this service, the manufacturer has full responsibility during this period, and the cost of the services is a relatively minor component of the contract. Therefore, under paragraph 5(a) these fees are not fees for included services, regardless of whether they otherwise would fall within paragraph 4(b).

Neither the post-warranty period inspection and repair services, nor the advisory and training services relating to new developments are "inextricably and essentially linked" to the initial purchase of the X-ray machine. Accordingly, fees for these services may be treated as fees for included services if they meet the tests of paragraph 4(b).

*Example (10)*

Facts:    An Indian automobile manufacturer decides to expand into the manufacture of helicopters. It sends a group of engineers from its design staff to a course of study conducted by the Massachusetts Institute of Technology (MIT) for two years to study aeronautical engineering. The Indian firm pays tuition fees to MIT on behalf of the firm's employees. Is the tuition fee a fee for an included service within the meaning of Article 12?

Analysis:    The tuition fee is clearly intended to acquire a technical service for the firm. However, the fee paid is for teaching by an educational institution, and is, therefore, under paragraph 5(c), not an included service. It is irrelevant for this purpose whether MIT conducts the course on its campus or at some other location.

*Example (11)*

Facts:    As in Example (10), the automobile manufacturer wishes to expand into the manufacture of helicopters. It approaches an Indian university about establishing a course of study in aeronautical engineering. The university contracts with a U.S. helicopter manufacturer to send an engineer to be a visiting professor of aeronautical engineering on its faculty for a year. Are the amounts paid by the university for these teaching services fees for included services?

Analysis:    The fees are for teaching in an educational institution. As such, pursuant to paragraph 5(c), they are not fees for included services.

*Example (12)*

Facts:    An Indian wishes to install a computerized system in his home to control lighting, heating and air conditioning, a stereo sound system and a burglar and fire alarm system. He

hires an American electrical engineering firm to design the necessary wiring system, adapt standard software, and provide instructions for installation. Are the fees paid to the American firm by the Indian individual fees for included services?

Analysis:        The services in respect of which the fees are paid are of the type which would generally be treated as fees for included services under paragraph 4(1)). However, because the services are for the personal use of the individual making the payment, under paragraph 5(d) the payments would not be fees for included services.