## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- X

*In re*

Nortel Networks Inc., *et al.*,[1]

                Debtors.

------------------------------------------------------- X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: April 24, 2013 at 10:00 a.m. (ET)
[REQUESTED]
Objections due: April 24, 2013 at 10:00 a.m. (ET)
[REQUESTED]**

Re: D.I.  9946, 9947, 10166

## JOINT REQUEST FOR CERTIFICATION OF THE JOINT ADMINISTRATORS' NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

Nortel Networks Inc. and its affiliated debtors, as respective debtors and debtors

in possession (collectively, the "<u>Debtors</u>" or the "<u>U.S. Debtors</u>") and the Official Committee of

Unsecured Creditors (the "<u>Committee</u>"), hereby respectfully submit this request for certification

of the Joint Administrators'[2] Notice of Appeal [D.I. 10166] directly to the United States Court of

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]       The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the English proceedings for Nortel Networks (Ireland) Limited are: Alan Robert Bloom and David Martin Hughes.  The EMEA Debtors include the following entities:  Nortel Networks UK Limited ("<u>NNUK</u>"), Nortel Networks S.A. ("<u>NNSA</u>"), Nortel Networks (Ireland) Limited ("<u>NNIR</u>"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

—

Appeals for the Third Circuit pursuant to 28 U.S.C § 158(d)(2) (the "Request").[3]  For purposes

of this Request, the U.S. Debtors and the Committee are hereby referred to as "Movants."

In support of this Request, Movants respectfully represent as follows:

## BACKGROUND

1.      On January 14, 2009 (the "Petition Date"), the U.S Debtors, other than Nortel

Networks (CALA) Inc.,[4] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

Court"), which cases are consolidated for procedural purposes only.

2.      On the Petition Date, the U.S. Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the U.S. Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[5] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court," and together with the U.S. Court, the

"U.S. and Canadian Courts") under the Companies' Creditors Arrangement Act (Canada) (the

"CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a

Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on

the Petition Date, the High Court of England and Wales placed the EMEA Debtors into

administration (the "English Proceedings") under the control of the Joint Administrators.

---

[3]      This Request does not pertain to *the Joint Administrators' Motion for Leave to Appeal from Order Approving Allocation Protocol*, filed April 17, 2013 [D.I. 10167], which the Debtors intend to oppose.

[4]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[5]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

3.      On the Petition Date, the U.S. Debtors filed the *Motion for Entry of an Order Pursuant to 11 U.S.C. § 105(a) Approving Cross-Border Court-to-Court Protocol* [D.I. 18], which established procedures for the coordination of cross-border hearings between the U.S. and Canadian Courts.  This Court approved the Court-to-Court Protocol on January 15, 2009 [D.I. 54][6] and the Canadian Court approved the Court-to-Court Protocol on the Petition Date.  The Court-to-Court Protocol was later amended by order of this Court on June 29, 2009 [D.I. 990][7] and by an order of the Canadian Court on that same date (as amended, the "Cross Border Protocol").

4.      On January 22, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee [D.I.s 141, 142].  The Bondholder Group has also been organized.

5.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel, working with all major creditor constituencies, has sold all of its business units and most of its assets to various purchasers.

6.      On or about June 9, 2009, the U.S. Debtors, the Canadian Debtors and the EMEA Debtors, excluding Nortel Networks S.A. and Nortel Networks AG, entered into the Interim Funding and Settlement Agreement ("IFSA").[8]  The IFSA addressed several important issues,

---

[6]      *Order Pursuant to 11 U.S.C. §§ 105(a) Approving Cross-Border Court-to-Court Protocol*, Jan. 15, 2009 [D.I. 54].

[7]      *Order Approving Stipulation of the Debtors and the Official Comm. of Unsecured Creditors of Nortel Networks Inc., et. al., Amending the Cross-Border Court-to-Court Protocol*, June 29, 2009 [D.I. 990].

[8]      Nortel Networks S.A. and Nortel Networks AG acceded to the IFSA as EMEA Debtors – each agreeing "to perform and comply with its obligations under the IFSA as if it had been a party from the date of execution thereof" – on or about September 11, 2009.  *Accession and Amendment Agreement relating to the Interim Funding Settlement Agreement,* dated Sept.11, 2009, at 1.

including the reimbursement of NNL for costs alleged to have been incurred on behalf of NNI during the post-petition period, the prevention of a potential funding crisis at NNL and the resolution of certain payments owed by NNL to NNUK.[9]

7.      In order to ensure that the planned sale of Nortel's businesses and assets could progress unimpeded by disputes over proceeds among various Nortel sellers, the IFSA also addressed the allocation of the Sale Proceeds.  In particular, the parties to the IFSA agreed not to condition the execution of any sale agreement upon reaching agreement with the other parties proposed to be a party to such Sale Transaction regarding the allocation (or a binding procedure for allocation) of the ultimate Sale Proceeds.  IFSA § 12(a).  The IFSA instead provides that all Sale Proceeds shall be held in escrow accounts corresponding to each Sale Transaction (each, an "Escrow Account"), and shall not be distributed

> in advance of either (i) agreement of all of the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the [Interim Sales] Protocol (as defined below) applicable to the Sale Proceeds, and subject in each case to payment of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

Id. § 12(b).

8.      Subsequent to the IFSA, numerous sales were held.  These sales include:  (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539] (the "Layer 4-7 Sale"); (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (iv) the sale of the assets of its Wireless Networks business associated with the development of Next

---

[9]      Any description of the IFSA set forth herein is for informational purposes only.  In the event of any discrepancy between such description and the terms of the IFSA, the terms of the IFSA shall govern.

Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632]; (viii) the sale of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business to Ericsson [D.I. 4054]; (ix) the sale of the Debtors' residual patent portfolio to Rockstar Bidco, a consortium consisting of Apple, EMC, Ericsson, Microsoft, Research in Motion, and Sony [D.I. 5935]; and (x) certain other sale transactions (collectively, the "Sale Transactions").[10]

9.      In connection with each these Sale Transactions, the U.S. Debtors, Canadian Debtors and EMEA Debtors all agreed to submit to the jurisdiction of the U.S. and Canadian Courts under the separate Escrow Agreements for each sale, which established an escrow

---

[10]      *Order Authorizing and Approving (A) Sale of Certain Non-Core Assets Free and Clear of All Liens, Claims and Encumbrances and (B) Assumption and Assignment of Certain Contracts*, Mar. 26, 2009 [D.I. 539] ("Layer 4-7 Sale Order"); *Order Authorizing and Approving (A) the Sale of Certain Assets of the Debtors' CDMA and LTE Bus. Free and Clear of All Liens, Claims and Encumbrances, (B) the Assumption and Assignment of Contracts and (C) the Assumption and Sublease of Certain Leases*, July 28, 2009 [D.I. 1205] ("CDMA Sale Order"); *Order Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests In, Debtors' Enterprise Solutions Bus., (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases*, Sept. 16, 2009 [D.I. 1514] ("Enterprise Sale Order"); *Order Authorizing and Approving Sale of Debtors' Next Generation Packet Core Network Components Free and Clear of All Liens, Claims and Interests*, Oct. 28, 2009) [D.I. 1760] ("Next Gen. Sale Order"); *Order Authorizing and Approving (A) Sale of Certain Assets of the Debtors' Metro Ethernet Networks Bus. Free and Clear of All Liens, Claims and Encumbrances and (B) Assumption and Assignment of Certain Executory Contracts*, Dec. 3, 2009 [D.I. 2070] ("MEN Sale Order"); *Order Authorizing and Approving Sale of Debtors' GSM/GSM-R Free and Clear of All Liens, Claims and Encumbrances*, Dec. 3, 2009 [D.I. 2065] ("GSM/GSM-R Sale Order"); *Order Authorizing and Approving (A) the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Commc'ns Solutions Bus. Free and Clear of All Liens, Claims and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts*, Mar. 4, 2010 [D.I. 2632] ("CVAS Sale Order"); *Order Authorizing and Approving (A) the Sale of Certain Assets of Debtors' Multi-Service Switch (Formerly Known as 'Passport') Bus. Free and Clear of All Liens, Claims and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts*, Sept. 30, 2010 [D.I. 4054] ("MSS Sale Order"); *Order Authorizing and Approving (A) the Sale of Certain Patent and Related Assets Free and Clear of All Claims and Interests, (B) the Assumption and Assignment of Certain Executory Contracts, (C) the Rejection of Certain Patent Licenses and (D) the License Non-Assignment and Non-Renewal Protections*, July 11, 2011 [D.I. 5935] ("IP Sale Order").

account in the United States for the Sale Proceeds for each Sales Transaction.[11]  The

jurisdictional provisions of these agreements provide that the parties submit to the exclusive

jurisdiction of the U.S. and Canadian Courts for all disputes "arising under or out of, in respect

of, or in connection with" the Escrow Agreement to the extent brought prior to the final decree

closing the bankruptcy cases.  MEN Distribution Escrow Agreement, dated as of Mar, 19, 2010,

¶ 21; see also Escrow Agreement, dated as of Mar. 2009, ¶ 20; Escrow Agreement, dated as of

Nov. 11, 2009, ¶ 21; Escrow Agreement, dated as of Dec. 1, 2009 ¶ 20; Escrow Agreement,

dated as of Dec. 18, 2009, ¶ 21; GSM/GSM-R Distribution Escrow Agreement, dated as of Mar.

31, 2010, ¶ 21; CVAS Distribution Escrow Agreement, dated as of May 27, 2010, ¶ 20; GSM

Retained Contracts Distribution Escrow Agreement, dated as of June 3, 2010, ¶ 20; MSS

Distribution Escrow Agreement, dated as of Mar. 11, 2011, ¶ 20 (together, the "Escrow

Agreements").[12]

        10.    On April 25, 2011, the U.S. Debtors and Committee filed a *Joint Motion for Entry*

*of an Order, Establishing an Allocation Protocol Pursuant to the Interim Funding and*

*Settlement Agreement, and for Related Relief* [D.I. 5307] (the "Allocation Protocol Motion").

        11.    On May 19, 2011, the Joint Administrators filed an (I) Objection to Joint Motion

for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and

Settlement Agreement, and (II) Cross-Motion to Compel Arbitration [D.I. 5444] (the "Cross-

Motion to Compel Arbitration").

---

[11]        The limited exception is the jurisdictional provision in the first Escrow Agreement, executed in March of
2009, which provided for exclusive jurisdiction only in this Court.  However, that agreement is otherwise
substantively consistent with jurisdictional provisions in the other Escrow Agreements.  See Escrow Agreement,
dated as of Mar. 2009, ¶ 20.

[12]        In addition, a ninth escrow agreement, the Patent Portfolio Distribution Escrow Agreement, dated as of July
28, 2011 (after the Allocation Protocol Motion and Cross-Motion were filed and first argued) contains the same
language as the other eight prior Escrow Agreements, but also states that inclusion of this language in that Escrow
Agreement would not prejudice the right of any party to make arguments concerning the proper forum for allocation
disputes.

12.     On June 3, 2011, the Joint Administrators, on behalf of the EMEA Debtors, and certain other EMEA entities filed claims against the U.S. Debtors (the "EMEA Claims").

13.     On June 7, 2011, the Court heard oral argument on the Allocation Protocol Motion and the Cross-Motion to Compel Arbitration.

14.     On March 7, 2013, the Court heard further oral argument on the Allocation Protocol Motion and the Cross-Motion to Compel Arbitration.

15.     On April 3, 2013, the Court issued an opinion regarding the Allocation Protocol Motion and Cross-Motion [D.I. 9946] (the "Opinion") finding, in relevant part, that "the Nortel Parties did not agree to arbitrate" and the "Court has jurisdiction and the IFSA [calls] for the submission of an allocation protocol."  Opinion at 15.  Accordingly, the Court denied the Cross-Motion to Compel Arbitration.  *See Order Approving Allocation Protocol*, Apr. 3, 2013, ¶ 2 [D.I 9947] (the "4/3/13 Order").

16.     On April 17, 2013, the Joint Administrators filed a *Notice of Appeal* [D.I. 10166] (the "Joint Administrators' Appeal").

17.     To date, the parties have not been able to agree upon an allocation of the Sale Proceeds among the Selling Debtors (the "Allocation Dispute").   Whether the Allocation Dispute is subject to an arbitration agreement is the focus of the Cross-Motion to Compel Arbitration and the Joint Administrators' Appeal.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction to consider the Request pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## QUESTION PRESENTED

19.    By their Notice of Appeal, the Joint Administrators seek, as of right under Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a), to appeal the denial of their Cross-Motion to Compel Arbitration.

## RELIEF REQUESTED

20.    Pursuant to Rule 8001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 28 U.S.C. § 158(d)(2), Movants request that this Court certify the Notice of Appeal for immediate appeal directly to the United States Court of Appeals for the Third Circuit.[13]   A proposed form Certification Order is attached hereto as Exhibit A.

## BASIS FOR RELIEF

21.    Under 28 U.S.C. § 158(d), a Bankruptcy Court may certify an order for immediate appeal to a federal court of appeals.  Pursuant to section 158(d)(2)(A), certification of an order for immediate appeal is required if the Court, "acting on its own motion or on the request of a party," determines that:

    i.    the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

    ii.    the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

    iii.    an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

---

[13]    A certification motion under 28 U.S.C. § 158(d)(2) must be filed in the court where the matter is pending. Until an appeal is docketed in the district court, the matter remains pending in the bankruptcy court.  Fed. R. Bankr. P. 8001(f)(2)-(3).  A certification motion must be made not later than 60 days after entry of the order from which the appeal is taken.  28 U.S.C. § 158(d)(2)(E).

28 U.S.C. § 158(d)(2)(A).

22.    The Joint Administrators' Appeal should be certified for immediate appeal because "an immediate appeal . . . [would] materially advance the progress of the case or proceeding." 28 U.S.C . § 158(d)(2)(A)(iii).

23.    The Debtors commenced their chapter 11 cases four years ago, and have divested their various business assets through the Sale Transactions. The Sale Transactions have generated over $7.5 billion. That money has been placed in Escrow Accounts and cannot be released until an allocation of that money amongst the Selling Debtors has been reached. At this time, the Allocation Dispute is one of the largest (if not the largest) issues remaining in the Debtors' cases. The issue of whether or not there is an agreement to arbitrate the Allocation Dispute is a discrete threshold legal question, which must be resolved promptly in order to allow the swift resolution of the Debtors' cases. Moreover, the Joint Administrators have asserted that the underlying litigation of the allocation of the sale proceeds is stayed pending this appeal. *See Joint Administrators' Motion for Leave to Appeal from Order Approving Allocation Protocol*, Apr. 17, 2013, at 3 [D.I. 10167]. Although the U.S. Debtors disagree and will oppose any such stay, in the event such a stay were granted, it would require that discovery on the Allocation Dispute be put on hold.[14] Thus, an immediate expedited appeal would allow the parties to receive a resolution of this appeal before significant time is lost in this already four-year old bankruptcy.

24.    Speed is particularly important here where any delay in the resolution of the Allocation Dispute means a delay of creditor recoveries and a reduction of the available assets

---

[14]    The U.S. Debtors intend to file a separate motion in this Court for an Order Retaining Jurisdiction Pending Appeal. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007) (appeal of a court's denial of a motion to compel arbitration under Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a), does not divest a lower court of jurisdiction where that appeal is "frivolous or forfeited"). These two motions are complimentary that both are designed to increase judicial efficiency and speed up resolution of these pending cases.

from which those creditors seek a distribution.  *See In re Nortel Networks, Inc.*, 669 F.3d 128,

143-44 (3d Cir. 2011), *aff'g In re Nortel Networks Inc.*, No. 09-10138-KG, 2011 WL 1154225

(D. Del. Mar. 29, 2011), *cert. denied*, 133 S. Ct. 34 (2012).  Moreover, a delay in the resolution

of the Allocation Dispute potentially could result in further inefficiencies to the extent such

litigation cannot be coordinated with the resolution of the various claims filed by the EMEA

Debtors against the U.S. Debtors.

25.     Movants each agree and each request that the Court certify the Notice of Appeal

and Movants intend to ask for expedited proceedings in the Third Circuit in the event that the

certification is accepted to further permit a faster resolution of this critical issue.

26.     Under  28 U.S.C. § 158(d)(2), the bankruptcy court or district court "shall" make

the certification if (i) on its own or on a party's motion the court determines that any of the above

circumstances are satisfied, or (ii) the court receives a request by a majority of appellants and

majority of appellees to make the certification.  Both of these prongs are satisfied here and

accordingly, Movants respectfully request that the Court certify the Joint Administrators'

Appeal.

## NO PRIOR REQUEST

27.     No prior request for the relief sought herein has been made to this or any other

court.

## NOTICE

28.     Notice of this Request has been given via electronic mail, facsimile, or overnight

mail to (i) the U.S. Trustee; (ii) counsel to the ad hoc group of bondholders; (iii) the Core Parties

(iv) counsel to the EMEA Debtors; and (v) the general service list established in these chapter 11

cases.  In light of the nature of the relief requested, the Movants submit that no other or further notice is necessary.

<b><u>CONCLUSION</u></b>

29.    WHEREFORE, the Movants respectfully request that the Court grant the relief requested herein and other such and further relief as it deems appropriate.

Dated:  April 23, 2013

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

- and –

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee
of Unsecured Creditors*