**EXHIBIT A-4**

EMEA Blackline to Monitor's Proposed Timetable

| Due Date 2013/2014 | Step |
|---|---|
| Week of December 16 (if the Courts desire) | Pre-Trial Conference(s) — By this date, the Core Parties shall have met and conferred in an effort to reach agreement on: <br><br> a) the undisputed facts to be agreed upon for trial; <br> b) the contents of document briefs, including categorizing the documents by issue <br> for use at the Joint Hearing. <br><br> By this date, the Core Parties shall also have identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest and served and filed all affidavits and reports to be relied upon as that party's direct evidence (including examination in chief) about Allocation, the Canadian Claims and the U.S. Claims. <br><br> All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |
| Commencing January 6, 2014 | The Courts will (a) hold simultaneously (i) joint hearings regarding Allocation, (ii) hearings before the Ontario Court on the merits of any remaining Canadian Claims, and (iii) hearings before the U.S. Court on the merits of any remaining U.S. Claims, provided however that the U.S. and Ontario Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant only to the Canadian Claims or only the U.S. Claims, and (b) after completing the joint hearings regarding Allocation, continue to complete the hearings of the Canadian Claims and the U.S. Claims; and (c) issue their respective decisions on (i), (ii) and (iii). |

Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the Courts in accordance with the usual practice. Any Core Party may also file a motion with the applicable Court(s) to modify this Litigation Timetable upon a showing of good cause.

16184020

EMEA Blackline to Monitor's Proposed Timetable

WITH RESPECT TO ALLOCATION:

> JUDGE KEVIN GROSS
> UNITED STATES BANKRUPTCY COURT

> JUSTICE GEOFFREY MORAWETZ
> ONTARIO SUPERIOR COURT OF JUSTICE

WITH RESPECT TO THE US CLAIMS:

> THE HONORABLE KEVIN GROSS
> UNITED STATES BANKRUPTCY COURT

WITH RESPECT TO THE CANADIAN CLAIMS:

> JUSTICE GEOFFREY MORAWETZ
> ONTARIO SUPERIOR COURT OF JUSTICE

EMEA Blackline to Monitor's Proposed Timetable

## APPENDIX A

## DEFINITIONS

Capitalized terms used in this Litigation Timetable but not otherwise defined in this Annex A shall have the meanings ascribed to them in the Allocation Protocol.

Allocation Group: Any of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, or the Bondholder Allocation Group.

Bondholder Allocation Group: The Bondholder Group.

Canadian Allocation Group: The Canadian Debtors, the Monitor, and the CCC.

Canadian Claim Party: Any party in the Canadian EMEA Claimants Group or the Canadian Claims Defendant Group, or the UK Pension Claimants.

Canadian Claims: Claims made by the Canadian EMEA Claimants Group and the UK Pension Claimants against any or all of the Canadian Debtors.

Canadian Claims Defendant Group: The Canadian Debtors against whom the Canadian EMEA Claimants Group and the UK Pensions Claimants have brought claims, and the Directors and Officers (but only with respect to claims of the Canadian EMEA Claimants Group).

Canadian EMEA Claimants Group: The EMEA Debtors and/or the Joint Administrators or any other administrator or liquidator of an EMEA Debtor who made claims against any or all of the Canadian Debtors or Directors and Officers, and the UK Pension Claimants who made claims against NNC and NNL. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

Claim Group: Any of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, the Canadian Claims Defendant Group, or the UK Pension Claimants.

Discovery Participant: Any Core Party or party of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, or the Canadian Claims Defendant Group who is participating in discovery pursuant to the Discovery Plan.

Discovery Plan: The Discovery Plan that will be entered by the Courts.

EMEA Allocation Group: The UK Pension Claimants, the EMEA Debtors (including Nortel Networks International Finance & Holding BV as behalf of itself and as assignee of Nortel Networks o.o.o.), and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

EMEA Blackline to Monitor's Proposed Timetable

Identification Interrogatories: Interrogatories seeking names and last known contact details of witnesses potential with knowledge of information relevant to the subject matter of the action and the existence, custodian, location and general description of relevant documents and other physical evidence, or information of a similar nature.

Representatives: Directors, officers, employees, attorneys, accountants, experts, consultants, financial advisors, or agents of any of the Core Parties, US Claim Parties, or Canadian Claim Parties.

US Allocation Group: The US Debtors and the Committee.

US Claims: Claims made by the US EMEA Claimants Group and the UK Pension Claimants against any or all of the US Debtors.

US Claims Defendant Group: The US Debtors against whom the US EMEA Claimants Group and the UK Pension Claimants have brought claims and the Committee.

US EMEA Claimants Group: The EMEA Debtors and/or Joint Administrators or any other administrator or liquidator of an EMEA Debtor who made claims against any or all of the US Debtors, Nortel Networks AS, Nortel Networks South Africa (Proprietary) Limited, Nortel Networks AG, Nortel Networks Optical Components Limited, Northern Telecom France SA, Northern Telecom PCN limited. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

US Claim Party: Any party in the US EMEA Claimants Group or the US Claims Defendant Group, or the UK Pension Claimants.

139

EMEA Blackline to Monitor's Draft Discovery Plan

Schedule "A"

**Ontario Superior Court of Justice – Commercial List Court File No. 09-CL-7950
United States Bankruptcy Court for the District of Delaware Court file No.
09-10138(KG)**

**RE: IN THE MATTER OF NORTEL NETWORKS CORPORATION ET AL**

# DISCOVERY AND DEPOSITION PLAN
(Dated as of April ~~17,~~23, 2013)

| | |
|---|---|
| **1.  Definitions** | Capitalized terms used herein and not otherwise defined shall have the same meaning ascribed in the Litigation Timetable to which this document is a schedule and the Joint Discovery Scheduling Order. |
| **2.  Applicable Procedural Regime:** | ~~The~~In accordance with the Cross Border Protocol, the Cross-Claims Protocol and the Allocation Protocol, the following procedural regimes apply:<br><br>(a)  ~~In the Ontario Superior Court of Justice, the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario; and~~<br><br>(1) ~~(b) In the District Court of Delaware,~~With respect to Allocation, the Cross-Border, Cross-Claims and Allocation Protocols apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court ~~for the~~ District of Delaware~~,~~ will apply as applicable.<br><br>(2) With respect to Canadian Claims, the Cross-Border Protocol, the Cross-Claims Protocols, the Claims Resolution Order, and the EMEA Claims Procedure Order apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario will apply as applicable.<br><br>(3) ~~and may be referred to in respect of matters not otherwise addressed by the letter and intent of this Discovery and Deposition Plan, the Joint Discovery Scheduling Order, the Allocation Protocol and any other procedural orders of the Courts;~~With respect to US Claims, the Cross-Border and Cross-Claims Protocols apply to the extent not inconsistent with this Discovery Plan, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy |

EMEA Blackline to Monitor's Draft Discovery Plan

| | |
|---|---|
| | Court for the District of Delaware will apply as applicable. |
| **3.  Legal Issues For Determination at Trial:** | ~~Each of the Core Parties shall have identified in their pleading(s) (Allocation Position, Allocation Response, Canadian Claims, U.S. Claims, and Response, as the case may be) exchanged pursuant to the Litigation Timetable to which this plan is annexed, their respective:~~<br><br>~~1.    statutory, common law or other legal premise(s) for each cause of action and/or defence asserted;~~<br><br>~~2.    the material facts relied upon in support of each cause of action and/or defence asserted; and~~<br><br>~~3.    the heads of damages and amount(s) claimed and/or sought to be set off under each cause of action asserted.~~<br><br>~~These pleadings shall determine the scope of relevance for this Discovery and Deposition Plan.~~<br><br>~~Core Parties who have a dispute between them, by virtue of either or both having responded to the other's pleading (whether it be on Allocation, Claims or both), shall be considered "Opposing Core Parties".~~ |
| **3.**  **4. Scope of Documentary Discovery:** | **General Principles:**<br><br>*a) Definition of Documents*<br><br>References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the *Rules of Civil Procedure.*<br><br>*b) Reasonably Accessible Documents and Proportionality*<br><br>No ~~Core Party~~Discovery Participant will be required to search data sources, including applications and databases, that it reasonably understands already to be in the possession, custody or control of the ~~Core Party making the request~~Allocation Group or Claim Group making the request, provided that a Discovery Participant shall enumerate in its response to a discovery request any data sources that are not being searched on this ground.<br><br>Each ~~Core Party~~Discovery Participant will only be required to search ~~only~~ reasonably accessible data, ~~which excludes data~~. A Discovery Participant who believes that responsive materials are reasonably likely to be found in a decommissioned application or in storage media that cannot be accessed without considerable burden, time or expense, shall give prompt notice of this in its response to a document request, and |

EMEA Blackline to Monitor's Draft Discovery Plan

shall meet and confer in good faith with the requesting party or parties regarding the cost and practicality of accessing such responsive materials giving attention to the principle of proportionality.

In light of the volume of the Debtors' hard copy documents maintained in off-site storage facilities, and the abundance of available overlapping electronic data, no ~~Core Party~~Discovery Participant is obligated to search hard copy documents, and rather will produce indices of such documents (to the extent they exist) ~~and~~with their responses to any document request and shall meet and confer in good faith with the requesting party or parties regarding what hard copy documents will be made available for inspection upon request. If any such documents inspected are copied for any requesting party, all other parties shall be notified and copies shall be provided to all parties at their own expense. If any party creates an electronic version of those documents that party shall be responsible for loading the electronic version of the document(s) onto the Merrill Lextranet database in accordance with Appendix 1 hereto.

*c) Previously Produced Documents*

~~All documents~~Documents already produced into the Merrill Lextranet database for the purpose of the several mediations in ~~this proceeding are to~~these proceedings may be treated as having been produced in ~~this litigation and any Core Party~~the Allocation, Canadian Claims and US Claims litigation provided the producing party can supply metadata and otherwise meet the specifications set forth in Appendix 1, and any Discovery Participant that does not already have such documents shall be provided access to the Merrill Lextranet database, subject to appropriate confidentiality, protective and/or sealing orders from the Court(s) and a provision allowing the ~~Core Parties~~Discovery Participants to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this Discovery and Disposition Plan.

*d) No Waiver of Privilege*

The fact that a document has been produced by any ~~Core Party~~Discovery Participant shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other ~~Core Party~~Discovery Participant who asserts privilege over the document), any ~~Core Party~~Discovery Participant who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a confidentiality or protective order.

*e) Deemed Undertaking*

EMEA Blackline to Monitor's Draft Discovery Plan

All of the ~~Core Parties~~Discovery Participants and their respective counsel shall be deemed to have undertaken not to use any evidence or information obtained in the course of the discovery (including document discovery and depositions) contemplated hereby for any purposes other than the Allocation, Canadian Claims, US Claims litigation being conducted under the court-ordered Allocation Protocol and Litigation Timetable, as well as in any other disputes, claims reconciliation processes or proceedings that may exist or arise between any Discovery Participants.

**Document Requests and Interrogatories**

*f) Document Requests*

Each ~~Core Party~~Discovery Participant shall be entitled to serve ~~limited reasonable~~ requests on any other ~~Opposing Core Party~~opposing Discovery Participant for production of ~~further non-privileged documents, to be specified and categorized with reference to the issues between the Core Parties as raised by the pleadings and to be accompanied by suggested sources and search parameters. Core Parties~~documents.

Discovery Participants whose interests are aligned shall co-ordinate their efforts so that requests are streamlined to avoid repetition and overlap in the requests of other parties.

~~Core Parties~~Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation document requests and Canadian/US Claims document requests and will meet and confer about the discovery requests both before and after they have been made.

~~Core Parties will also work in good faith to streamline interrogatories so as to minimize duplication as between the different anticipated requests where interests can be aligned on particular topics or for particular Opposing Core Parties with interrogatories in common.~~

For greater certainty:

By no later than May 10, 2013

- For Allocation, each Allocation Group shall be entitled to serve requests for production of documents, such requests to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participants, provided that the Bondholder Group, prior to making such requests, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the

document requests of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 17, 2013 to seek agreement with a Core Party from whom it seeks documents and, failing agreement, to seek leave of the Courts to make additional document requests if it believes in good faith that such requests are necessary and non-duplicative.

- For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve requests for production of documents on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve requests for production of documents on the US Debtors, provided that any disputes between the Canadian EMEA Claimants Group, the UK Pension Claimants or the Canadian Claims Defendant Group and the US Debtors regarding such discovery shall be resolved by the Canadian Court. The US Debtors' agreement to accept such discovery requests and submit to the Canadian Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

- For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve requests for production of documents on each opposing US Claim Party. The US Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve requests for production of documents on the Canadian Debtors, provided that any disputes between the EMEA Claimants Group, the UK Pension Claimants, or the US Claims Defendant Group and the Canadian Debtors regarding discovery shall be resolved by the US Court. The Canadian Debtors' agreement to accept such discovery requests and submit to the US Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

An Allocation Group or Claim Group may serve additional document requests after May 10, 2013 if it determines, in good faith, that this is reasonably necessary.

The ~~Core Parties~~Discovery Participants shall meet and confer as is

EMEA Blackline to Monitor's Draft Discovery Plan

reasonable and in accordance with the Litigation Timetable.

~~By no later than May 17, 2013~~

~~The U.S. Debtors, the Monitor, EMEA and the Trustees may deliver limited reasonable and specific requests for production of non-privileged documents, from each other and any Opposing Core Party, and as between themselves and any others who are claimants and respondents to either the Canadian or U.S. Claims with whom they have a dispute about those claims.~~

~~By no later than May 21, 2013~~

~~Any Core Party other than the U.S. Debtors, the Monitor, EMEA and the Trustees may deliver supplementary limited reasonable and specific requests for production of non-privileged documents, from any Opposing Core Party and, if they are a claimant or respondent to any of the U.S. Claims, from any other Core Party with whom they have a dispute about those claims, in accordance with the Discovery and Deposition Plan.~~

*g) Interrogatories*

~~By no later than May 17, 2013~~

An ~~Opposing Core Party~~opposing Discovery Participant may deliver ~~limited~~ written interrogatories seeking identification of (i) the roles and current locations of individuals with knowledge of the matters relevant to ~~this~~the Allocation, Canadian Claims and US Claims litigation and (ii) the storage form and extent of the potentially relevant documents of these individuals. Further written (contention) interrogatories may only be made with the agreement of the ~~Core Party~~Discovery Participant to whom it is directed, or leave of the Court(s).

Discovery Participants will work in good faith to streamline Identification Interrogatories so as to minimize duplication as between the different anticipated requests where interests can be aligned on particular topics or for particular opposing Discovery Participants with interrogatories in common.

For greater certainty:

By no later than May 10, 2013

- For Allocation, each Allocation Group shall be entitled to serve Identification Interrogatories, such interrogatories to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participants (not to exceed ten on any Core Party), provided that the Bondholder

Group, prior to serving such interrogatories, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. An interrogatory that seeks contact details, party control status and like information for multiple named individuals shall be considered one interrogatory for purposes of the limit on the number of interrogatories. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the interrogatories of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 17, 2013 to seek agreement with a Discovery Participant from whom it wishes to serve interrogatories and, failing agreement, to seek leave of the Courts to serve additional interrogatories if it believes in good faith that such interrogatories are necessary and non-duplicative.

- For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve Identification Interrogatories on each opposing Canadian Claim Party (not to exceed ten on any Discovery Participant). An interrogatory that seeks contact details, party control status and like information for multiple named individuals shall be considered one interrogatory for purposes of the limit on the number of interrogatories. In addition, the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the US Debtors, provided that any disputes between the Canadian EMEA Claimants Group, the UK Pension Claimants or the Canadian Claims Defendant Group and the US Debtors regarding such discovery shall be resolved by the Canadian Court. The US Debtors' agreement to accept such interrogatories and submit to the Canadian Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

- For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve Identification Interrogatories on each opposing US Claim Party (not to exceed ten on any Discovery Participant). An interrogatory that seeks contact details, party control status and like information for multiple named individuals shall be considered one interrogatory for purposes of the limit on the number of interrogatories. In addition, the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve a limited

number of reasonable Identification Interrogatories on the Canadian Debtors, provided that any disputes between the US EMEA Claimants Group, the UK Pension Claimants or the US Claims Defendant Group and the Canadian Debtors regarding such discovery shall be resolved by the US Court. The Canadian Debtors' agreement to accept such interrogatories and submit to the US Court's jurisdiction over related disputes does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional Identification Interrogatories upon a showing of good cause.

*h) Responses and Objections*

By no later than May 31, 2013

~~Core Parties~~Discovery Participants may object to document requests and ~~identification interrogatories~~Identification Interrogatories. When objecting to any discovery request, the recipient of such discovery request shall state the basis for objection ~~as provided for herein. Objections,~~ which may be made ~~only on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), subsisting privilege and proportionality.~~on any ground provided in the rules of the applicable procedural regime. Recipients are strongly encouraged to prepare joint objections to the same document request or interrogatories to the extent their objections overlap.

*i) Production of Documents*

Rolling Production to Commence May 31 ~~to June 21~~and to be Substantially Completed by July 31, 2013, each ~~Core Party~~Discovery Participant working in good faith towards the earliest practicable date for production:

Subject to any objections made and sustained if challenged (see motions procedure below), each ~~Core Party~~Discovery Participant shall produce any responsive non-privileged documents to any request made of it to all other ~~Core Parties~~Discovery Participants (to the extent they overlap, responses to multiple request may be combined or cross-referenced to each other to avoid duplication), in accordance with Appendix 1.

In this same time frame, each ~~Core Party~~Discovery Participant shall produce any further documents that they may introduce into evidence at

trial that are not already stored in the Merrill Lextranet database.

*j) Motions to Challenge Objections to Initial Document Requests*

By no later than ~~June 28,~~August 7, 2013

Any ~~Core Party~~Discovery Participant who served a document request or interrogatory, and who seeks to compel production of a document or answer to an interrogatory, must do so by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on 7 days notice on all other ~~Core Parties~~Discovery Partiicpants and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The ~~Core Party~~Discovery Participant whose objection is challenged shall respond to this motion within 4 days and any other ~~Core Party~~Discovery Participant whose interests are affected by the request may serve a supplementary response within 2 days thereafter.   All ~~Core Parties~~Discovery Participants shall attempt to resolve any discovery disputes in good faith and to file any necessary motions promptly.

~~Such motions to be heard by July 17, 2012 or as otherwise ordered by the Courts.~~

Notwithstanding this deadline, whenever a discovery dispute arises, the affected Discovery Participants shall promptly attempt to resolve the dispute in good faith and, if an impasse is reached, file any motions with the relevant Court(s) promptly.

*k) Privilege Logs*

If any party declines to produce a requested document, in whole or in part, based on an assertion of solicitor-client privilege, the work-product doctrine, or other legal privilege, that party shall provide a privilege log specifying as to each such document or portion thereof not produced, the specific privilege(s) or doctrine(s) relied upon, along with sufficient facts to establish the basis for asserting the privilege. The privilege log shall provide sufficient detail to permit the requesting party to assess whether there is an adequate basis for assertion of the privilege, including but not limited to: (i) the type of document; (ii) the date of the document; (iii) the author(s) of the document, including title and employer; (iv) the general subject matter of the document; (v) all recipients of the document (including addressees, cc's and bcc's), including titles and employers; (vi) beginning and ending bates numbers of the document; and (vii) the custodian of the document, including where the document was maintained (whether in physical or electronic form) prior to the petition date.   Privilege logs shall be provided in Microsoft Excel format or a similar electronic format that

EMEA Blackline to Monitor's Draft Discovery Plan

| | |
|---|---|
| | allows for text searching and organization of data. |
| | The following documents, to the extent created after the commencement of the bankruptcy proceedings, presumptively need not be included on a privilege log: (a) communications exclusively between a Discovery Participant and its outside counsel or (b) work product created by outside counsel and/or such counsel's agents. |
| | Responsive documents which are jointly privileged as to two or more of the Discovery Participants shall be produced, but only to those Discovery Participants with whom the joint privilege is shared. |
| | *i)) No Waiver of Rights or Defences* |
| | Agreement to accept and respond to a discovery request does not constitute submission to jurisdiction or a waiver of rights or defences for any other purpose. |
| **4.** **5. Format of Production of Records:** | **Format for Exchange of Electronic Records:** Electronic documents to be produced in accordance with Appendix 1. |
| | **Format for Exchange of Paper Records:** If a record only exists in hard copy and there is no electronic version, at the option of the producing party or any party who inspects and obtains a copy of it, it may be scanned and produced in accordance with Appendix 1 hereto, but only to the extent that they can reasonably be extracted or otherwise provided in a delimited text file. |
| **5.** **6. Trial Witness Identification** | By no later than ~~June 28,~~August 7, 2013 |
| | Each ~~Core Party~~Discovery Participant shall identify ~~(i)~~ its anticipated ~~affiants as~~fact (non-expert) trial witnesses ~~and~~by name, employer, title and functional role held during the time period relevant to their anticipated testimony and shall indicate whether they will be testifying ~~to issues relating to Allocation, U.S. Claims and/or Canadian Claims, without prejudice to later identification of additional witnesses provided that the failure to identify that witness by June 28, 2013 was for good cause, and the other Core Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Core Party's previously filed sworn statements are being relied upon as evidence at trial whether they will be relied upon for~~ issues relating to Allocation, U.S. Claims and/or Canadian Claims. |
| | A ~~Core Party~~Discovery Participant may identify trial witnesses at a later date provided that any ~~Opposing Core Party~~opposing Discovery Participant has had or will have a reasonable opportunity to depose the later-identified witness before trial about the subject matter of their expected testimony. |

EMEA Blackline to Monitor's Draft Discovery Plan

> Any Discovery Participant that has previously filed an affidavit or witness statement in the context of these proceedings may also, at its option, choose to designate that evidence to be tendered at trial as long as the Discovery Participant indicates whether the affidavit will be relied upon for issues relating to Allocation, Canadian Claims, or U.S. Claims and provided the witness will be made available to be deposed and appears at trial for cross-examination.
>
> ~~Should a Core Party wish to present evidence at trial from a witness who is not willing to swear an affidavit, such witness shall be identified at this same time, and leave of the Court(s) sought by the Core Party seeking to rely on their evidence to take that witnesses' testimony by deposition (examination out of court) so as to preserve their testimony so it can be submitted by the Core Party as evidence at trial.~~

**6. ~~7.~~ Oral Examinations out of Court**

> **A.     Examinations of ~~Core Party~~Discovery Participant Representatives**
>
> By no later than ~~June 28,~~August 7, 2013
>
> Each ~~Core Party~~Discovery Participant shall serve on any ~~Opposing Core Party~~opposing Discovery Participant the topics on which it expects the ~~Opposing Core Party~~opposing Discovery Participant's discovery witness to be examined or deposed upon.
>
> For greater certainty:
>
> - For Allocation, each Allocation Group (other than the Bondholder Allocation Group) may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the solicitors or counsel of record for any opposing Discovery Participant specifying the topics, if any, on which that other Discovery Participant's representative is to be examined/deposed.
>
> - For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group may each serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure on the solicitors/counsel of record for any opposing Canadian Claim Party specifying the topics, if any, on which the Canadian Claim Party's representative is to be deposed.
>
> - For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group may each serve a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the counsel of record for any opposing US Claim Party specifying the topics, if any,

on which the US Claim Party's representative is to be deposed.

By no later than ~~July 3,~~August 12, 2013

Each ~~Core Party~~Discovery Participant served with a request for examination under the Rule noted above shall identify its representative (who may, but is not required to be, a current or former officer, director or employee of that ~~Core Party~~Discovery Participant) to be examined for oral examination (discovery)~~, who is knowledgeable about, or will become reasonably informed of, the topics identified by other Opposing Core Parties to be examined upon, in lieu of contention interrogatories (unless they are agreed or ordered to be taken in writing)~~.

All Discovery Participants shall have the right to attend such examinations/depositions.

Use of (Discovery) Answers at Trial

Testimony of discovery representatives may be used as evidence at trial only by ~~Opposing Core Parties~~Discovery Participants whose interests are adverse to those of the proffering ~~Core Party~~Discovery Participants on the issue for which the evidence is being used.

**B. Oral Depositions:**

By no later than ~~June 28,~~August 7, 2013

~~Each Core Party may designate up to 10~~In addition to the above examinations/depositions, each Allocation Group and each Claim Group shall designate by this date the fact witnesses (which may be third parties, persons subject to the control of a Core Party or both and which may be persons who have been identified as trial witnesses by another Core Party or whose previously sworn statements have been designated by a ~~Core Party~~Discovery Participant as trial evidence) whom it seeks to examine to obtain factual information/admissions relevant to the ~~issues raised by the pleadings of that Core Party~~Allocation, Canadian Claims and U.S. Claims and any persons whose previously filed affidavits/witness statements have been designated by a ~~Core Party~~Discovery Participant as trial evidence, by serving a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or United States Federal Rule of Civil Procedure 30, as applicable, on the solicitors or counsel of record for any other ~~Core Party~~Discovery Participant or by service of subpoena or other process on counsel for the third party (or if not known to be represented, by serving the subpoena or other process directly on the third party). Each witness shall be named and his/her place of residence (if known) shall

EMEA Blackline to Monitor's Draft Discovery Plan

be identified.

~~All Core Parties shall have the right to ask questions of any witnesses who is designated by any party to be deposed but if more than one party designates the same witness that witness shall only be deposed one time.~~

The parties shall meet as soon as practicable after this date to confer and attempt to reach agreement on the list of witnesses to be deposed and the time for examination of each witness by each party. In the absence of agreement this issue shall be submitted to the relevant Court(s) for decision. The attorneys for the US Debtors, the Canadian Debtors and the EMEA Debtors agree to accept requests under Rule 34.04 of the Ontario Rules of Civil Procedure and Deposition Notices under the United States Federal Rules of Civil Procedure seeking to depose or examine persons under the control of their clients. All parties agree to cooperate in good faith in attempts to locate and obtain testimony from persons not under the control of any party, including through issuance of compulsory process, letters of request and other available procedures, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony.

The Bondholder Group shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, regarding any fact witnesses it seeks to examine or depose. In the event that the Canadian Allocation Group and the US Allocation Group do not intend to designate such fact witnesses that the Bondholder Group seeks to designate, the Bondholder Group may seek leave of the Court or Courts, as applicable, by motion on notice to designate such fact witnesses.

Either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to designate additional fact witnesses upon a showing of good cause.

Use of Depositions at Trial:

Designated portions of any deposition may be filed as part of the evidence that any party may rely upon at trial ~~(subject to objections which may be ruled upon by the Court as contemplated herein), except that testimony of a deponent who is employed by, party to a cooperation agreement with or otherwise under the control of a Core Party may not be relied upon as evidence by that Core Party or by others sharing its interests on the issue to which the testimony relates~~in accordance with the rules that apply in Canada and in the U.S. Courts, respectively.

If a witness who has been deposed is later called as a witness to give

*viva voce* evidence at the trial, the transcript (or designated portions thereof) will still form part of the trial evidence and the entire transcript may also be ~~used~~ to impeach the witness or challenge his/her credibility.

Use of Cross Examinations at Trial:

If a witness who previously swore an affidavit or made a statement in these proceedings and whose prior evidence is designated by a ~~Core Party~~Discovery Participant to be tendered at trial is cross examined prior to trial, the entire cross examination transcript will form part of the trial evidence.

**C.   Deadline for all Examinations, Cross-Examinations and Depositions:**

All to be completed by no later than ~~August 30,~~September 27, 2013

All examinations, depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within two weeks of each examination) shall be completed by this deadline, with a preference to finish fact witness depositions and depositions regarding matters that will be the subject of expert testimony prior to any representative party examinations (discovery).

~~Once~~ all fact witnesses have been identified, the relevant ~~Core Parties~~Discovery Participants shall attempt to agree on a schedule that contemplates the completion of all witness examinations, cross-examinations and depositions ("Examinations") in this time frame that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness). ~~Each Examination shall be co-ordinated so that a lead examiner is identified and the order of Examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness who has been designated to be examined by up to 3 Core Parties shall be examined for longer than 7 hours in total (by all Core Parties combined) and any single witness designated by more than 3 Core Parties shall not be examined for more than 14 hours, without leave of the Court(s) or the agreement of all Core Parties.~~

~~All motions arising from Examinations to be served by September 13, 2013, to be heard by October 18, 2013 or as otherwise ordered by the Courts.~~

| 7. 8. Experts | By no later than ~~August 16,~~September 13, 2013 |
| | Each ~~Core Party~~Discovery Participant that intends to rely on the |

EMEA Blackline to Monitor's Draft Discovery Plan

opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

By no later than ~~September 13,~~ October 11, 2013

Each ~~Core Party~~ Discovery Participant shall deliver an affidavit or a report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by ~~bates~~ Bates number if previously produced, and containing the disclosures required under Rule 26(a)(2) (B) of the United States Federal Rules of Civil Procedure and Rule 53.03 of the Ontario Rules of Civil Procedure regarding the expert's qualifications, prior engagements, compensation and independence.

Any ~~Core Party~~ Discovery Participant that has previously filed ~~an~~ affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial, subject to the requirements for an expert's attendance at trial set out below. If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

Promptly after the submission of initial expert affidavits or reports, the Discovery Participants shall attempt to agree upon an expert deposition schedule to commence by November 18, 2013.

By no later than ~~October 18,~~ November 8, 2013

Each ~~Core Party~~ Discovery Participant shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another ~~Core Party~~ Discovery Participant that addresses an issue that is adverse to any position of the ~~Core Party in this litigation~~ Discovery Participant in the Allocation, Canadian Claims or U.S. Claims. Responses shall be permitted even if the ~~Core Party~~ Discovery Participant did not initially tender an expert's affidavit or report, if an issue is raised by an expert whose evidence is tendered by another party that calls for response. Responsive reports shall be limited to responding to issues on which an affirmative expert has been proffered and shall not go beyond such issues.

~~By no later than October 25,~~ December 6, 2013

~~Any Core Party who wishes to cross-examine an expert of an Opposing Core Party may serve notice of its intention to do so, regardless of whether or not that party has filed its own expert evidence.~~

154

EMEA Blackline to Monitor's Draft Discovery Plan

~~October 25 to November 22, 2013~~

The ~~Core Parties~~Discovery Participants will attempt to agree to a schedule that contemplates the completion of all expert witness depositions between ~~the notice date~~November 18, 2013 and this date that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness).

~~Each examination shall be co-ordinated so that a lead examiner is identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of questions.  No single witness shall be examined for longer than 14 hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of all Core Parties.~~A Discovery Participant may request that any expert be present at trial for cross-examination, and the affidavit or report of any expert not appearing at trial if requested to appear cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the Expert's position.

The affidavits and ~~transcripts of depositions~~/or reports of the experts shall be filed as evidence with the court at the trial, subject only to cross examination at trial and any applicable objections (including, without limitation, as to qualifications) that may be made and determined at the outset of the trial and directions from the Court(s) arising therefrom. The ~~Core Party~~Discovery Participant proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report.  The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless agreed to by all Core Parties adverse to the expert's evidence.

~~Motions Concerning Experts:~~

~~Any motions arising from expert reports and depositions of experts are to be made promptly and heard by November 29 or as otherwise ordered by the Courts.~~

Communications with Experts:

The experts shall not be examined about or asked to produce prior drafts of their affidavits/reports and/or their communications with counsel who retained them or other Discovery Participants with in the same Allocation or Claim Group, or their respective Representatives (although they may be asked to disclose the specific questions they were asked to answer).

EMEA Blackline to Monitor's Draft Discovery Plan

| 8. 9. General Procedure Applicable to all pre-trial Examinations | Attendance at Oral Examinations/Depositions |

For the avoidance of doubt, all Core PartiesDiscovery Participants shall have the right to attend all oral Examinationsexaminations/depositions that relate to any issue, regardless of whether or not they have a right to examine that witness.

Coordinating Oral Examinations/Depositions:

Each Examinationexamination shall be coordinated so that a lead examiner is identified for each group. Lead examiners shall work in good faith with any others who are participating in the examination to try to use the available time most efficiently and avoid, to the extent possible, duplication of questions.

Transcripts and video taping:

All Examinationsexaminations shall be taken under oath before a certified court reporter and transcribed and the transcripts made available to all Core PartiesDiscovery Participants, whether or not they are in attendance at the examination. At the option of any examining party, the Examinationexamination may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining party(ies) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

Objections:

Objections may be made on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), form, subsisting privilege and proportionality only. An objection to form shall not be made solely on the basis that a question is leading unless the deponent is employed by, party to a cooperation agreement with or otherwise under the control of the Core PartyDiscovery Participant represented by the questioner. Questions that are objected to solely on grounds of relevance or form shall be answered under reserve of that objection. All other objections shall be preserved.

Requirement for Summons:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Estates andDebtors, the Joint Administrators and the UK Pension Claimants shall reasonably assist in issuing process or otherwise procuring a witness's attendance irrespective of which Core PartyDiscovery Participant has sought the witness's deposition, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from

which that party does not seek testimony. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment to that jurisdiction for any other purpose.

<u>Undertakings:</u>

~~The~~<u>With respect to Allocation and Canadian Claims, the</u> witness shall answer any undertakings that were agreed to on his/her examination within two weeks of the date of his/her examination, <u>unless otherwise agreed to by the affected Discovery Participants.</u>

<u>9.</u>  ~~10.~~ **General Terms**

Any ~~Core Party~~<u>Discovery Participant</u> may make a motion to the Court to compel another ~~Core Party~~<u>Discovery Participant</u> to take the steps contemplated by the Discovery and Deposition Plan or other steps, and the Parties agree that the Court(s) may take the existence of the Discovery and Deposition Plan into account in determining whether to grant the Order sought. The respondent on such a motion may seek to justify its non-compliance with the Discovery and Deposition Plan on the basis of, among other things, any information that was unknown or unavailable to that Party at the time the Discovery and Deposition Plan was entered into.

~~Breach of this Discovery and Deposition Plan does not, in and of itself, give rise to a right to damages or any other monetary relief, or to injunctive relief, although the Core Parties agree that the Court(s) may take any breach of this Discovery and Deposition Plan into account in exercising discretion with respect to costs or other sanctions, or on an application for injunctive relief.~~

The ~~Core Parties~~<u>Discovery Participants</u> recognize that, as additional information becomes available throughout the <u>Allocation, Canadian Claims and U.S. Claims</u> litigation, it may become apparent that: (a) it is impracticable or impossible for a ~~Core Party~~<u>Discovery Participant</u> to comply with the terms of the Discovery and Deposition Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery and Deposition Plan, are required in order for a ~~Core Party~~<u>Discovery Participant</u> to obtain access to relevant documents ~~in the litigation.  Each Core Party,~~ <u>information or witness testimony.  Each Discovery Participant</u> agrees to notify the other ~~Core Parties~~<u>Discovery Participants</u> promptly when it ~~knows~~<u>believes</u> that it will not comply with any term of the Discovery and Deposition Plan or when it concludes that ~~another Core Party should take~~ further steps beyond those set out in this Discovery and Deposition Plan <u>are required</u>. The ~~Core Parties~~<u>Discovery Participants</u> agree to negotiate in good faith with respect to any amendments to the Discovery and Deposition Plan requested by a ~~Core Party~~<u>Discovery Participant</u> on the basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve

EMEA Blackline to Monitor's Draft Discovery Plan

disputes between the Core Parties.

The ~~Core Parties~~Discovery Participants shall meet and confer in good faith without the assistance of the Court(s) and attempt to resolve any disputes in the interpretation or implementation of the Discovery and Deposition Plan. ~~Core Parties~~Discovery Participants are required to promptly seek relief from the applicable Court(s) ~~once~~if an impasse ~~has been~~is reached in any dispute. This relief may be raised for the Court(s) for initial consideration at an informal joint case conference before taking any other procedural steps by way or motion or otherwise as long as that can be arranged promptly.

All motions or directions sought from the Court(s) pursuant to this Discovery and Deposition Plan shall be brought to Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and/or Justice Morawetz of the Ontario Superior Court of Justice as the case may dictate, or any referee who they may direct~~.~~.

The EMEA Debtors' participation in the procedures addressed herein is without prejudice to their contention that Allocation should be decided by arbitration rather than the US and Canadian Courts, and shall not be construed as a waiver of their objection to determining Allocation in accordance with the procedures set forth in the Allocation Protocol, this Discovery Plan and the Litigation Timetable.

Prepared and agreed upon by:

**[To be signed by Counsel of Record for each ~~Core Party~~Discovery Participant]**

158

EMEA Blackline to Monitor's Draft Discovery Plan

**APPENDIX 1**

Format for Exchange of Productions: Productions will be exchanged by loading each production into the Merrill Lextranet database with the following objectively coded metadata, if reasonably possible, and in the following form:  [NTD:  **Subject to confirmation by Merrill.**]

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| **Document Numbering** | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note ~~text~~Text | Docid(s) attached to Parentid | AA0000001 |
| **Fields/Coded Data for E-mails** | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY<br><br>As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Bcc* | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment<br><br>When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc<br><br>This field is required for loading electronic documents and attachments. | As per metadata |
| **Fields/Coded Data for Attachments and Loose Electronic Documents** | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record<br><br>Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |

EMEA Blackline to Monitor's Draft Discovery Plan

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment<br><br>When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc<br><br>This field is required for loading electronic documents and attachments. | As per metadata |
| ~~Fields/Coded Data for Paper Documents~~ | ~~*Docdate*~~ | ~~Date~~ | ~~Date of document (subjectively coded)~~ | ~~MM/DD/YYYY~~ |
| | ~~*Doctype*~~ | ~~Note Text~~ | ~~Type of document (subjectively coded)~~ | |
| | ~~*Doctitle*~~ | ~~Note Text~~ | ~~Title of document (subjectively coded)~~ | |
| | ~~*Attach#*~~ | ~~Note Text~~ | ~~Sequential number applied to attachments showing attachment sequence~~ | ~~.001, .002, etc.~~ |
| | ~~*Author*~~ | ~~Multi-Entry~~ | ~~Author(s) of document (subjectively coded)~~ | ~~Last name, first name [corporate affiliation]~~ |
| | ~~*Recip*~~ | ~~Multi-Entry~~ | ~~Recipient(s) of document (subjectively coded)~~ | ~~Last name, first name [corporate affiliation]~~ |
| Fields/Coded Data for ~~Paper and~~ Electronic Documents (Chronological Review) | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| | ~~*Redact*~~*Leadtime* | ~~Note~~Date | ~~Document has redactions~~<u>Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together</u><br><br><u>Allows for further sorting of documents dated the same day by time</u> | ~~"Redacted" stamped on document~~<u>HH:MM:SS</u> |

~~1.~~

1.    Each document shall be individually produced with a unique document ID number.

~~2.    OCR text searchable, to the extent the document permits~~

2.    <u>For each document, the responding party shall provide a text file containing the text extracted directly from the native electronic version of that document, unless the document was redacted, is an image file, is a scanned hardcopy document, or is in another format from which text cannot be reasonably extracted.  In these instances, provide a text file created using document-level optical character recognition (OCR) to the extent reasonably practicable.</u>

~~3.~~

3.    All images will be single page tiff format (excluding spreadsheets,<u> Powerpoint presentations and database files,</u> which will be provided in native format) with 300

EMEA Blackline to Monitor's Draft Discovery Plan

dpi specifications.  Spreadsheets, Powerpoint presentations and database files to be provided in ~~native format~~the eDocs folder.

~~V6181973~~

4.       Parties will provide the following load files formatted as follows:

(a)       Image folder (single page tiff, 300 dpi);

(b)       eDocs folder (for native files, specifically Excel, Powerpoint and database files, which will not be tiffed);

(c)       OCR folder (with text files and a control list for loading);

(d)       data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

(e)       imginfo.txt, imginfo.csv or imginfo.opt, at the option of the receiving party.

5.       If a document and its exact duplicates are associated with the same custodian, the responding party may withhold the exact duplicates from production.  If a document and its exact duplicates are associated with different custodians, the responding party may withhold the exact duplicates from production and provide a metadata field for the produced document indicating the custodians for whom duplicates were withheld.

Court File No. 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

161

*ONTARIO*
SUPERIOR COURT OF JUSTICE – COMMERCIAL
LIST

Proceeding Commenced at Toronto

**RESPONDING SUBMISSIONS
OF THE EMEA DEBTORS**
**(Returnable April 24, 2013)**

**LAX O'SULLIVAN SCOTT LISUS LLP**
145 King Street West, Suite 2750
Toronto, ON  M5H 1J8

Matthew P. Gottlieb (LSUC#: 32268B)
Tel: 416.644.5353; Fax: 416.598.3730
Tracy Wynne (LSUC#: 37395R)
Tel: 416. 598-7835; Fax: 416.598.3730

**DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto, ON  M5V 3J7

Robin B. Schwill (LSUC #38452I)
Tel: 416.863.5502; Fax: 416.863.0871

Lawyers for Nortel Networks UK Limited (In Administration) et. al.

Tor#: 2967703.1

# TAB 4

Fax: 416.640.3019
bburden@casselsbrock.com

Lara M.B. Jackson  LSUC #: 41858M
Tel:  416.860.2907
Fax: 416.640.3108
ljackson@casselsbrock.com

Fax:   416.304.1313
mbarrack@tgf.ca

D.J. Miller LSUC #: 34393P
Tel:    416.304.0559
Fax:   416.304.1313
djmiller@tgf.ca

Lawyers for The Trustee of Nortel Networks UK Pension Scheme and The Board of The
Pension Protection Fund

proposed revisions to the Monitor and Canadian Debtors' proposed Litigation Timetable and Discovery and Deposition Plan.

2.      The purpose of these submissions is to highlight certain specific concerns of the U.K. Pension Claimants.  The U.K. Pension Claimants' specific comments are reflected in the blacklined Discovery Plan and Timetable attached hereto as Schedules "A" and "B" respectively.

Pension Claimants are essentially operating in a vacuum, with no issues defined.  The U.K. Pension Claimants request immediate access to the Merill database, and reserve the right to amend their pleading and allocation documents once access is granted.

6.    Turning to the Timetable and Discovery Plan, the first main concern with the proposed Litigation Timetable is that it "front loads" the more labour intensive documentary discovery and deposition phase of proceedings into a 16 week period ending August 30, 2012.  This timetable is unrealistic and unworkable.  For that reason,

relationship among the Plan, NNUK and the Debtors dating back to the early 1990s. The Debtors' proposal to relieve themselves of the obligation to search and produce relevant hard copy documents would materially prejudice the U.K. Pension Claimants by depriving them of a substantial volume of documents relevant to their claim. This is contrary to the U.K. Pension Claimant's fundamental right to due process.

9.    Further, the Timetable and Discovery Plan provide that core parties will each have the opportunity to make submissions and examine on aspects of other core

parties are fully engaged.

Date:        April 23, 2013        **Cassels Brock & Blackwell LLP**
                                   2100 Scotia Plaza
                                   40 King Street West
                                   Toronto, ON  M5H 3C2

                                   William J. Burden  LSUC #: 15550F
                                   Tel:  416.869.5963
                                   Fax: 416.640.3019
                                   bburden@casselsbrock.com

# TAB 4A

| 3. | Legal Issues For Determination at Trial: | Each of the Core Parties shall have identified in their pleading(s) (Allocation Position, Allocation Response, Canadian Claims, U.S. Claims, and Response, as the case may be) exchanged pursuant to the Litigation Timetable to which this plan is annexed, their respective: |
|---|---|---|

1. statutory, common law or other legal premise(s) for each cause of action and/or defence asserted;

2. the material facts relied upon in support of each cause of action and/or defence asserted; and

3. the heads of damages and amount(s) claimed and/or sought to be set off under each cause of action asserted.

These pleadings shall determine the scope of relevance for this

~~any such documents inspected are copied for any requesting party, all~~

~~version of the document(s) onto the Merrill Lextranet database in~~
~~accordance with Appendix 1 hereto.~~

*c) Previously Produced Documents*

All documents already produced into the Merrill Lextranet database for
the purpose of the several mediations in this proceeding are to be treated
as having been produced in this litigation and any Core Party that does
not already have such documents shall be provided access to the Merrill
Lextranet database, subject to appropriate confidentiality, protective

accompanied by suggested sources and search parameters. Core Parties whose interests are aligned shall co-ordinate their efforts so that requests are streamlined to avoid repetition and overlap in the requests of other parties.

Core Parties will work in good faith to eliminate duplication and redundancy between document requests and will meet and confer about the discovery requests both before and after they have been made.

Core Parties will also work in good faith to streamline interrogatories so as to minimize duplication as between the different anticipated requests where interests can be aligned on particular topics or for particular Opposing Core Parties with interrogatories in common.

The Core Parties shall meet and confer as is reasonable and in

*h) Responses and Objections*

By no later than May 31, 2013

Core Parties may object to document requests and identification interrogatories. When objecting to any discovery request, the recipient of such discovery request shall state the basis for objection as provided for herein.  Objections may be made only on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), subsisting privilege and proportionality.

Rolling Production May 31̶31, 2013 to June 21̶,28, 2013, each Core Party working in good faith towards the earliest practicable date for production:

Subject to any objections made and sustained if challenged (see

| 5. | Format of Production of Records: | **Format for Exchange of Electronic Records:** Electronic documents to be produced in accordance with Appendix 1. |
|---|---|---|
| | | **Format for Exchange of Paper Records:** If a record only exists in hard copy and there is no electronic version, at the option of the producing party or any party who inspects and obtains a copy of it, it may be scanned and produced in accordance with Appendix 1 hereto. |
| 6. | Trial Witness Identification | By no later than ~~June 28,~~ July 12, 2013 |
| | | Each Core Party shall identify (i) its anticipated affiants as (non-expert) trial witnesses and whether they will be testifying to issues relating to Allocation, U.S. Claims and/or Canadian Claims, without prejudice to later identification of additional witnesses provided that the ~~failure to~~ |

topics identified by other Opposing Core Parties to be examined upon, in lieu of contention interrogatories (unless they are agreed or ordered to be taken in writing).

Use of (Discovery) Answers at Trial

Testimony of discovery representatives may be used as evidence at trial only by Opposing Core Parties whose interests are adverse to those of the proffering Core Party on the issue for which the evidence is being used.

**B. Oral Depositions:**

By no later than ~~June 28,~~ July 17, 2013

Each Core Party may designate ~~up to 10~~ fact witnesses (which may be

thereof) will still form part of the trial evidence and the entire transcript may also be used to impeach the witness or challenge his/her credibility.

Use of Cross Examinations at Trial:

If a witness who previously swore an affidavit or made a statement in these proceedings and whose prior evidence is designated by a Core Party to be tendered at trial is cross examined prior to trial, the entire cross examination transcript will form part of the trial evidence.

**C.    Deadline for all Examinations, Cross-Examinations and Depositions:**

subject matter of their expertise and intended evidence.

By no later than ~~September 13,~~ October 15, 2013

Each Core Party shall deliver an affidavit or a report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by bates number if previously produced, and containing the disclosures required under Rule 26(a)(2) (B) of the United States Federal Rules of Civil Procedure and Rule 53.03 of the Ontario Rules of Civil Procedure regarding the expert's qualifications, prior engagements, compensation and independence.

Any Core Party that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware

identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness shall be examined for longer than 14 hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of all Core Parties.

The affidavits and transcripts of depositions of the experts shall be filed as evidence with the court at the trial, subject only to cross examination at trial and any applicable objections (including, without limitation, as to qualifications) that may be made and determined at the outset of the trial and directions from the Court(s) arising therefrom. The Core Party proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless

attendance at the examination.  At the option of any examining party, the Examination may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s).  The examining party(ies) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

Objections:

Objections may be made on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), form, subsisting privilege and proportionality only.  An objection to form shall not be made solely on the basis that a question is leading unless the deponent is employed by, party to a cooperation agreement with or otherwise under the control of the Core Party represented by the questioner.  Questions that are objected to solely on grounds of relevance or form shall be

take any breach of this Discovery and Deposition Plan into account in exercising discretion with respect to costs or other sanctions, or on an application for injunctive relief.

The Core Parties recognize that, as additional information becomes available throughout the litigation, it may become apparent that: (a) it is impracticable or impossible for a Core Party to comply with the terms of the Discovery and Deposition Plan, ~~or to do so in a time-efficient or cost-efficient manner, or~~ (b) further steps, beyond those set out in this Discovery and Deposition Plan, are required in order for a Core Party to obtain access to relevant documents in the litigation. Each Core Party agrees to notify the other Core Parties promptly when it knows that it will not comply with any term of the Discovery and Deposition Plan or when it concludes that another Core Party should take further steps beyond those set out in this Discovery and Deposition Plan. The Core

| Data for Attachments and Loose Electronic Documents | Datecrtd | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
|---|---|---|---|---|
| | Filetype | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | Filename | Note Text | File name of electronic file or attachment | As per metadata |
| | Doclink | Note Text | Used to link a document to the database record<br>Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | Folder | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | Custodian | Note Text | Person from whom document was collected | As per metadata |
| | Media | Note Text | Used to identify the type of media for an attachment<br>When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc<br>This field is required for loading electronic documents and attachments. | As per metadata |

# TAB 4B

21(e) of the EMEA Claims Procedures Order.

Monitor delivered Notices of Disallowance of all claims filed by the Nortel Networks UK Pension Trust Limited and the Pension Protection Fund (together, the "Trustees") against a Canadian Applicant or its Directors or Officers pursuant to subparagraph 13(e) of the Claims Procedure Resolution Order.

March 27      Monitor delivered Notices of Disallowance of all claims filed by the Additional Non-APAC/CALA Affirmative Claims filed by Nortel

---

[1]   On November 5, 2010, the U.S. Court entered an order enforcing in the United States the Claims Procedure Resolution Order along with the Cross-Border Claims Protocol Order, also entered by the Ontario Court on September 16, 2010.

jointly by two or more Core Parties or by one Core Party adopting another Core Party's pleading/submission.

| | |
|---|---|
| April 30 | Deadline for any of EMEA, NN AG, NN AS and the Trustees who dispute the disallowance of their claims to deliver affirmative pleadings (which may be deemed by them to serve as their Dispute Notices) setting forth, with reasonable particularity, the relief sought, material facts relied upon and legal bases for their claims and the grounds upon which they seek to challenge their disallowance (if made in the Ontario Court, the "Canadian |

---

2   In event of a conflict between the Allocation Protocol, and the Cross-Border Claims Protocol Order, the Allocation Protocol (as approved by the Courts) shall be deemed to control.

knowledge of the matters relevant to this litigation and (ii) the storage form and extent of the potentially relevant documents of these individuals, only by a Core Party who has responded to another Core Party's Allocation Position in the manner provided for herein or between the claimants and respondents to the Canadian and U.S. Claims.  Further written (contention) interrogatories may only be made with the agreement of the Core Party to whom it is directed, or leave of the Court(s).

May ~~17~~21    Initial deadline for delivery by the U.S. Debtors, the Monitor, EMEA and the Trustees of limited reasonable and specific requests for production of non-privileged documents, from each other and any other Core Party who has responded to their Allocation Position, and as between themselves and any others who are claimants and respondents to either the Canadian or U.S. Claims with whom they have a dispute about those claims, in

motions promptly.

| | |
|---|---|
| ~~June~~July ~~28~~12 | Deadline for identification by each Core Party of (i) its anticipated affiants as (non-expert) trial witnesses and whether they will be testifying to issues relating to Allocation, U.S. Claims and/or Canadian Claims,  without prejudice to later identification of additional witnesses provided that other Core Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Core Party's previously filed sworn statements are being relied upon as evidence at trial whether they will be relied upon for issues relating to Allocation, U.S. Claims and/or Canadian Claims , in accordance with Discovery ad Deposition Plan. |
| ~~June~~July ~~28~~12 | Deadline for each Core Party to serve on any other Core Party that has responded to its Allocation Position, to whose Allocation Position it has responded, and~~/or~~ for Monitor only with ~~whom it has a dispute about~~ |

| | |
|---|---|
| ~~August~~September ~~16~~30 | Deadline for each Core Party to identify experts and the subject matter of their reports, in accordance with the Discovery and Deposition Plan. |
| ~~August~~September 30 | Deadline to complete examinations, depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within ~~two~~three weeks of each examination), in accordance with the Discovery and Deposition Plan, with a preference to finish fact witness depositions prior to any representative party examinations (discovery). |
| ~~September~~October ~~13~~15 | Deadline for service by Core Parties of expert reports (including exhibits) in accordance with the Discovery and Deposition Plan. |
| ~~September~~October | Deadline for service of motions arising from examinations, depositions |

c) With respect to Allocation, a list of all exhibits each party intends to rely on as part of its case in chief;[3]

d) With respect to the Canadian and/or U.S. Claims by any of EMEA, NN AG, NN AS and the Trustees, all fact affidavits to be used as those parties' trial testimony; and

e) With respect to the Canadian and/or U.S. Claims by any of EMEA, NN AG, NN AS and the Trustees, a list of all exhibits those parties intend

---

[3] The filings by this deadline shall be referred to as Original Filings. A Core Party may (i) file supplemental affidavits as trial testimony, (ii) file supplemental exhibits, (iii) identify supplementary portions of transcripts of depositions and examinations for discovery, if necessary to supplement the Original Filings. Such supplemental filings are permissible only to the extent that an affidavit or exhibit in the Original Filings of another Core Party dealt with a matter not reasonably anticipated, such that the Core Party's Original Filings do not adequately deal with that matter, and the supplemental filings are delivered as soon as possible.

hearings to hear evidence or argument that is relevant only to the Canadian Claims or only the U.S. Claims, and (b) after completing the joint hearings regarding Allocation, continue to complete the hearings of the Canadian Claims and the U.S. Claims; and (c) issue their respective decisions on (i), (ii) and (iii).

Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the Courts in accordance with the usual practice. Any Core Party may also file a motion with the applicable Court(s) to modify this Litigation Timetable upon a showing of good cause.

AND IN THE MATTER OF A PLAN OF COM
ARRANGEMENT OF NORTEL NETWORKS
NORTEL NETWORKS LIMITED, NORTEL I
GLOBAL CORPORATION, NORTEL NETW
INTERNATIONAL CORPORATION AND N(
NETWORKS TECHNOLOGY CORPORATI

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL
CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL
NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

**COMPENDIUM OF CANADIAN
SUBMISSIONS**
**(returnable April 24, 2013)**

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini** (LSUC#: 222936)
**Joseph Pasquariello** (LSUC#: 37389C)
**Benjamin Zarnett** (LSUC#: 17247M)
**Peter Ruby** (LSUC#: 38439P)

Tel:    416.979.2211
Fax:    416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay** (LSUC #: 21152A)
**Jennifer Stam** (LSUC #: 467355)

Tel:    416.862.7525
Fax:    416.862.7661

Lawyers for the Canadian Debtors

TOR_LAW\ 8158621\1