IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| NORTEL NETWORKS INC., *et al.*,[1] ) | |
| ) | Case No. 09-10138 (KG) |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |
| ) | **Re: Docket No. 10049** |

**SUPPLEMENT TO MOTION OF THE OFFICIAL COMMITTEE
OF LONG TERM DISABILITY PARTICIPANTS FOR
APPROVAL OF DISTRIBUTION AND RELATED RELIEF**

The Official Committee of Long Term Disability Participants (the "LTD Committee") hereby files this supplement (the "Supplement") to its *Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (D.I. 10049) (the "Motion"). In support of this Supplement, the LTD Committee respectfully represents as follows:

### I.  BACKROUND

1.  On April 11, 2013, The LTD Committee filed the Motion. The Motion sought, among other things, to appropriately attempt to reduce the tax liability of the Settlement Amount[2] and maximize the return, pursuant to existing tax laws and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

regulations, and taking into account: (i) the nature of the Settlement, including the various plans settled through the agreement reached with the Debtors, and (ii) that the constituency represented by the LTD Committee is a disabled population receiving government benefits that require a careful distribution and allocation to maximize resources and minimize impact on government assistance programs.

2. In accordance with its fiduciary duties, the LTD Committee proposed in the Motion that the use of an annuity could potentially prevent the application of the doctrines of constructive receipt and economic benefit to the funds attributable to the settlement funds not associated with medical benefits such as income continuation. The LTD Committee further determined that the funds associated with medical benefits that are deposited in the VEBA likely can be accessed on a tax free basis through an HRA. Finally, the LTD Committee investigated the use of a VEBA trust with an HRA and determined that the VEBA can provide a governing structure that will not only preserve earnings of the funds deposited in the VEBA on a tax free basis, but also provides proper security for the funds because of the heightened fiduciary duty standard associated with a VEBA trust.[3] The LTD Committee also sought authority from the Court to pursue IRS approval of these proposals through a private letter ruling request ("Private Letter Ruling").

3. Therefore, the Motion requested approval of a distribution mechanism that deposits eligible Settlement Amounts in the VEBA to be administered by an HRA

---

[2] Capitalized terms not defined herein shall have the same meaning as set forth in the Motion.

[3] Footnote 22 to the Motion stated "The LTD Committee will continue to investigate any other conservative mechanisms to bolster the security of the funds in the VEBA, including but not limited to the requirement of a bond for funds held in a VEBA under ERISA, combined with the fiduciary duty obligations of the VEBA trust board."

provider, with a $60,000 cap on the HRA. Remaining Settlement Amounts in the VEBA, such as funds that are ineligible for tax free status in an HRA or that the LTD Committee and its advisors deem inappropriate for deposit into the HRA because they are above the $60,000 cap, would be used to purchase an annuity. See Motion at ¶ 81.

4. Accordingly, in the Motion, the LTD Committee requested that the Court "authorize the LTD Committee to further implement the suggested structure of an annuity used in conjunction with a VEBA and an HRA capped at $60,000, and the authority to reject the use of an annuity if the annuity does not satisfy a credit worthiness analysis under the business judgment of the LTD Committee or its successors." Motion at ¶ 83.

## II. ISSUES WITH USE OF ANNUITY

5. The LTD Committee has continued to investigate the structure proposed in the Distribution Motion directly with the IRS with the assistance of its retained professionals. The IRS has taken the position that the settlement is subject to FICA taxes, in addition to income taxes, if paid in a lump sum **or** if used to purchase an annuity.

6. The LTD Committee has also had difficulty in finding an annuity company willing to sell an annuity, whether fixed or variable, which could be liquidated in the event that the IRS did not approve the annuity on the basis of tax deferral. As the annuity was recommended by the LTD Committee's tax advisors and approved by the LTD Committee on the basis of its ability to defer taxes, this risk of IRS non-approval has made the annuity a less attractive option and one with an unacceptable level of risk for the LTD Employees.

A. **FICA Tax Issues Associated with Annuity**

7. Annuity payments are subject to state and federal income tax reporting and withholding, but allow for tax deferral of the settlement proceeds as the proceeds are only taxed in the year in which they are paid. However, despite the fact that an annuity might be approved by the IRS as a means of deferring taxes, it is likely that the IRS would view the settlement proceeds as "nonqualified deferred compensation," subject to Federal Insurance Contributions Act ("FICA") taxes.

8. As previously discussed in the Motion, economic recoveries arising out of an employment relationship are included as income and are subject to income and FICA tax withholding, even if the amounts recovered are paid in lieu of nontaxable fringe benefits. United States v. McKean, 33 Fed.Cl. 535 (1995). As the Motion further related, in IRS Revenue Ruling 75-241, 1975-1 C.B. 316, an employee was paid cash in lieu of certain health and welfare benefits in discharge of a requirement under a federal statute that a minimum level of health and welfare fringe benefits be provided. Because the employee had complete control of the disposition of the amounts paid and there was no contractual or legal obligation imposed on the employer to verify that the amounts paid were used by the employee to purchase health and welfare benefits, the amounts paid were held to be wages subject to income and FICA tax withholding.

9. The LTD Committee, through its professionals, has investigated the FICA tax issue with the IRS regarding the Settlement Amount. The IRS has informally advised the LTD Committee that it would likely view the use of an annuity as simply spreading the lump sum (concededly FICA wages) over several years and thus treat the payments as "nonqualified deferred compensation" subject to FICA taxes in full in 2013. The IRS has

indicated that its position would be based on IRC §3121(v)(2), which provides that "nonqualified deferred compensation", as broadly defined in the Code, is treated as FICA wages when the right to the deferred payments arises, in the IRS's way of thinking, when the LTD Employee receives rights to the annuity contract.

10. Because the Debtors will be relieved of all tax liability once the Settlement is approved and the claim sold, both the employer and employee share of the FICA tax will be withheld from the distribution to LTD Employees. <u>The aggregate FICA taxes on the Settlement Amount would be approximately $2.6 million</u>, representing over 10% of the entire Settlement Amount.[4]

11. In contrast to the negative view it has of the annuity, the IRS has indicated informally that it could consider the establishment of a new income continuation plan, in the form of a disability plan, which will serve as replacement for the income continuation portion of the LTD Benefits which will be terminated on the Termination Date. The new disability plan, which is not sponsored by the Debtors and instead would be governed by the proposed VEBA ("<u>VEBA LTD Plan</u>"), and administrated by a third party administrator, if approved by the IRS as a disability plan, would not be subject to FICA and could be used to defer taxes and administer payments on the schedule as proposed in the Motion. For the avoidance of doubt, the Debtors are not the sponsor of the proposed plans and have no liability in connection with the establishment, operation or termination of any benefit plans established by the VEBA.

12. The LTD Committee will now be seeking a private letter ruling (the "<u>Private Letter Ruling</u>") from the IRS regarding the tax implications of the VEBA, HRA,

---

[4] The Termination Date was extended to June 30, 2013. Pursuant to the terms of the section 6(b) of the LTD Settlement agreement, the Settlement Amount has been reduced by $680,000, such that the allowed amount of the LTD General Unsecured Claim will be $25,960,000. *See* D.I. 10053.

and VEBA LTD Plan as new benefit plans instead of the VEBA, annuity, and HRA.

### B. Market Issues Related to Annuity

13. Separate and apart from the income and FICA tax issues, the LTD Committee has also had difficulty securing an annuity provider to provide an annuity for LTD Employees at a reasonable rate.

14. One issue is that annuity insurers are regulated by the applicable state insurance commissioner, are state guaranteed up to an amount certain for fixed annuities, and must structure any fixed annuity agreements within a previously state-approved distribution structure. The annuity companies that offer fixed annuities have not been able to structure an annuity that would allow for the flexibility necessary to make adjustments for the LTD Employees.

15. Critically, there is no option to break the annuity contract available to date. Accordingly, if the Private Letter Ruling is not approved by the IRS, the annuity will still have to remain in place and LTD Employees will be subject to the adverse consequences of the annuity payments being fully taxable in 2013, even though the payments may not be fully received in 2013. A Private Letter Ruling will not be obtained prior to the Termination Date. If the annuity is in use and there is an adverse ruling from the IRS, there is no way to rescind the annuity and utilize a different method—the LTD Employees will be stuck paying FICA taxes on the full amount of the annuity payments in 2013 while actually receiving such payments over several years. The LTD Committee instead has chosen a more conservative path of seeking the approval of the VEBA LTD Plan instead of the annuity, which the IRS has indicated it will consider, and if the VEBA LTD Plan is found to be a disability plan, it will not be subject to FICA.

### III. NEW PROPOSED DISTRIBUTION METHOD

16. In light of the foregoing issues, the LTD Committee has determined that the use of a structured annuity is not in the best interest of LTD Employees, unavailable as a viable option because of the market response to the request for the annuity from annuity companies, and that a different proposed distribution method is needed. In consultation with its professionals, the LTD Committee believes that replacing the annuity with the VEBA LTD Plan minimizes LTD Employees' tax exposure.

#### A. VEBA LTD Plan

17. Under the VEBA LTD Plan, which would be administered by trustees of the VEBA trust and not the Debtors, each LTD Employee who is disabled will be eligible to receive disability payments until: (a) reaching the plan retirement date (which date is to be determined); (b) disability benefits are exhausted; (c) such LTD Employee is no longer disabled; or (d) the LTD Employee has passed away. These are all restrictions existing in the current Nortel LTD Benefits Plan. For the avoidance of doubt, the Debtors are not the sponsor of the proposed plans and have no liability in connection with the establishment, operation or termination of any benefit plans established by the VEBA.

18. The VEBA Trust and HRA structure proposed in the Motion will still be established. After the claim is sold to the Claims Purchaser, the settlement proceeds will be given to an LLC controlled by the LTD Committee, or its successors, and then to the VEBA Trust which will fund the HRA subject to the $60,000 cap, fund the VEBA LTD Plan, and any funds ineligible for deposit into either vehicle will be distributed to the LTD Employees.

19. The VEBA LTD Plan would function much like the Debtors' pre-petition

LTD benefits plans. As with the pre-petition LTD income continuation, if a participant ceases to be disabled or passes away, the participant's disability benefits would cease.

### B. Tax Benefits Associated with the VEBA LTD Plan

20. Importantly, if paid through a qualified disability plan and through a qualified VEBA trust, payments under the VEBA LTD Plan will be exempt from FICA tax.

21. <u>This exemption would preserve approximately $2.6 million in Settlement funds</u> for the benefit of LTD Employees. Attached hereto as <u>Exhibit A</u> are the projected costs of the LTD Committees proposal, which is near or at the previous amounts reserved for the administration costs projected for the distribution methods proposed in the Motion and reserved in all prior distributions illustrations provided for the distribution motion as well as the Joint Motion to approve the LTD Settlement. The costs for the VEBA plan administrator are projected to be $330,000 for four years and the total administrative costs, inclusive of those costs is approximately $1.6 million. In contrast, if there was merely a lump sum distribution with no HRA, the net variance as compared to the proposed VEBA LTD Plan is approximately $5.3 million.

22. A detailed comparison of the tax impact of prior scenarios to the VEBA LTD Plan option and with the FICA impact on the settlement is also attached to this Supplement as <u>Exhibit A</u>. The effect of a lump sum distribution, with FICA taxation included, is compared to the use of an HRA with a $60,000 cap and with the remaining funds distributed as a lump sum, as compared to a the use of the VEBA LTD Plan and HRA with $60,000 cap, and finally, as compared to the use of an annuity with an HRA with the $60,000 cap.

23. As noted in Exhibit A, the tax savings are most significant under the VEBA LTD Plan and HRA. The lump sum distribution and the HRA option is a close second in terms of viability and is being recommended as a likely back up to the VEBA LTD Plan as the LTD Committee has been advised that the VEBA and HRA are familiar constructs to the IRS and have a very good chance of approval under the Private Letter Ruling, even if the VEBA LTD Plan is not approved. While the annuity carries with it risk of IRS approval, the practical issue is that the market has simply made the right options unavailable and no annuity company will allow the annuity to be wound down. Not allowing the LTD Employees to access their funds while taxing them at a higher rate is an unacceptable position in which to place the LTD Employees.

24. The proposed VEBA LTD Plan has certain tax risks associated with it. First, if the IRS concludes that the VEBA LTD Plan is not a qualified disability plan, as with the annuity the entire value of future disability payments might be taxable in 2013 even though payments are spread out over several years. Second, if the IRS concludes that the VEBA LTD Plan is not a qualified disability plan, the payments under the plan may be subject to the FICA tax.

25. However, unlike an annuity, if the Private Letter Ruling requested by the LTD Committee or its successors is denied, the LTD VEBA Plan can be liquidated and the funds immediately disbursed.

**D.    Other Benefits Associated with a Successor Disability Plan**

26. The VEBA Trust will be used to fund both plans. Such efficiencies are unavailable with an annuity, since commingling annuity and HRA funds may cause ERISA fiduciary issues.

9

## IV.  NOTICE

27.  Notice of this Supplement has been provided to (a) counsel to the Debtors; (b) counsel to the UCC; (c) counsel to the Retiree Committee; (d) counsel to the ad hoc Bondholders Group; (e) the United States Trustee for the District of Delaware; (f) all LTD Employees; and (g) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. The LTD Committee respectfully submits that, given the administrative nature of the relief requested, no other notice of the relief requested herein needs to be given.

## V.  CONCLUSION

WHEREFORE, the LTD Committee respectfully requests that this Court enter an Order, to be presented at or prior to the hearing, (i) authorizing the structure and approval of the method of distribution of the Settlement Amount, as modified by the structure proposed in this Supplement, (ii) approval of the disclosure and notice relating to the distribution, (iii) approval of tax withholding and tax noticing procedures, and (iv) for such other and further relief as the Court deems proper and just.

Dated: April 23, 2013
Wilmington, Delaware

**ELLIOTT GREENLEAF**

_____
Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
Eric M. Sutty (DE Bar No. 4007)
Jonathan M. Stemerman (DE Bar No. 4510)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com

Email: sak@elliottgreenleaf.com
Email: ems@elliottgreenleaf.com
Email: jms@elliottgreenleaf.com

-and-

Mary E. Kohart
Margaret S. Curran
ELLIOTT GREENLEAF
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
Telephone: (215) 977-1000
Facsimile: (215) 977-1099
Email: mek@elliottgreenleaf.com
Email: msc@elliottgreenleaf.com

-and-

E. Morgan Maxwell, III
P.O. Box 876
Southeastern PA 19399
Telephone: (610) 640-9481
Facsimile: (484) 801-1439
Email: morganmaxlaw@comcast.net

*Counsel to the Official Committee of Long Term Disability Participants*