## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- X

*In re*

Nortel Networks Inc., *et al.*, [1]

                    Debtors.

Chapter 11

Case No. 09-10138 (KG)
Jointly Administered

**Related D.I.s: 9304, 9305, 9306, 9342, 9366, 9367, 9370, 9372, 9382, 9384, 9517, 9657, 9658, 9673, 10146, 10152, 10153, 10159, 10172, 10174, 10175, 10176, 10180, 10188, 10189, 10191, 10196, 10198, 10199, 10200, 10201, 10202, 10203, 10204, 10207, 10208, 10209, 10238, 10252, 10258, 10260, 10266, 10283, 10286, 10290, 10291, 10294, 10296, 10300, 10301**

-------------------------------------------------------------- X

OFFICIAL COMMITTEE OF LONG TERM DISABILITY PLAN PARTICIPANTS, on behalf of and as agent for a class of individual participants and beneficiaries under various NORTEL NETWORKS HEALTH AND WELFARE BENEFIT PLANS,

                    Plaintiffs,

      v.

NORTEL NETWORKS INC., *et al.*,

                    Defendants.

Adv. Proc. No. 12-50995 (KG)
**Related D.I.: 1, 15, 16, 17**

-------------------------------------------------------------- X

## DEBTORS' REPLY IN FURTHER SUPPORT OF THE JOINT MOTION PURSUANT TO SECTIONS 363 AND 105 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 9019 AND 7023 TO (A) FINALLY APPROVE THE SETTLEMENT AGREEMENT REGARDING LONG-TERM DISABILITY PLANS AND CLAIMS, (B) FINALLY CERTIFY A CLASS, (C) AUTHORIZE THE DEBTORS TO TERMINATE THE LTD PLANS, AND (D) GRANT RELATED RELIEF

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), respectfully reply (the "Reply") in further support of, and in reply to the objections (collectively, the "Objections") of certain LTD Employees[2] and others (collectively, the "Objectors"), the *Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule a Fairness Hearing; and (II)(A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief*, dated January 18, 2013 [D.I. 9304] (the "Joint Motion").[3]

1.    As this Court is aware, since the summer of 2011, the Debtors and the LTD Committee (together, the "Parties") have been involved in discussions and litigation, which have been vigorous and at times contentious, but ultimately led to a proposed consensual settlement regarding the termination of the various plans and benefits offered to long-term disabled individuals (as well as the Debtors' active employees). In January, the Parties filed the Joint Motion proposing a two-step process for the Court to consider approval of the Settlement Agreement and certification of the Settlement Class for settlement purposes only. Under the terms of the proposed Settlement Agreement the Parties agree that NNI will not terminate the LTD Plans unless it grants an allowed general unsecured claim in the gross amount of $25,960,000 to the LTD Committee – for the benefit of all the LTD Employees, regardless of the year in which they became disabled. Should NNI allow such claim, NNI will terminate the

---

[2]    For purposes of this Reply, "LTD Employees" shall mean the Debtors' long-term disabled employees who are participants in the Debtors' Long Term Disability Plan and certain other plans and programs.

[3]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Joint Motion.

LTD Plans in their entirety as of June 30, 2013.[4]  The LTD Committee, working with their legal

and financial advisors, has developed an Apportionment Methodology that the Debtors

understand will be universally and consistently applied to all LTD Employees.  Using that

Apportionment Methodology, the LTD Committee will distribute the money the LTD Committee

receives, whether through the sale of the LTD General Unsecured Claim as the LTD Committee

currently contemplates, or pursuant to an approved plan of reorganization for the Debtors, less

potential tax withholdings and certain administrative expenses.  If approved, the Settlement

Agreement will resolve both the LTD Termination Motion[5] filed by the Debtors seeking to

terminate the LTD Plans,[6] as well as the Class Complaint filed by the LTD Committee.

2.    After the first of the two hearings to approve the Settlement Agreement on

February 14, 2013, this Court entered an order (the "Preliminary Settlement Approval Order")

[D.I. 9427] that (i) preliminarily approved the Settlement Agreement, (ii)(a) conditionally

---

[4]    Under the terms of the Settlement Agreement, the Debtors and the LTD Committee have agreed to extend the Termination Date from May 31, 2013 to June 30, 2013.  Therefore, the LTD General Unsecured Claim has been reduced by the amount of $680,000, as set forth in section 6(b) of the Settlement Agreement.  The description of the Settlement Agreement contained in this Reply is for informational purposes only and is qualified in its entirety by the terms of the Settlement Agreement itself.  In the event the Settlement Agreement does not become effective, the Parties' rights and defenses are reserved as to the Debtors' ability to terminate the LTD Plans and any liability they may incur for such termination.

[5]    The Debtors initially proposed to terminate the LTD Plans on December 31, 2012, but extended the proposed termination date to March 31, 2013, consistent with the scheduling of the ultimate hearing on the LTD Termination Motion.  See *Debtors' Supplemental Submission in Further Support of Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and the Employment of the LTD Employees*, dated November 2, 2012 [D.I. 8878].

[6]    The Debtors historically have provided a number of benefits to their employees through various benefit plans and other programs, including (as amended or modified from time to time) the Nortel Networks Inc. Long-Term Disability Plan, Nortel Networks Inc. Short-Term Disability Plan, the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan,[6] and any other formal or informal benefit plans, agreements, or programs (including plans, agreements, arrangements or programs that are funded through the purchase of insurance) or arrangements for disabled employees, their surviving spouses and eligible dependents, including for medical, surgical, or hospital care benefits, income continuation benefits or any other benefits in the event of sickness, accident, disability, or death (collectively, and in each case as such plans have been amended or modified from time to time, the "LTD Plans").

certified, for settlement purposes only, a class consisting of all LTD Employees, (b)

conditionally appointed the Class Representatives, (c) conditionally approved Elliott Greenleaf,

counsel to the LTD Committee, as counsel for the Settlement Class, (iii) approved the Notice

Procedures, and (iv) scheduled April 30, 2013 as the Fairness Hearing to consider final approval

of the Settlement Agreement and April 19, 2013 as the deadline to file objections to such final

approval.  As contemplated by the Notice Procedures, the Debtors and the LTD Committee have

published the Publication Notice in eleven newspapers and mailed notice of the proposed

settlement to approximately 200 LTD Employees, ten Active Employees, 130 COBRA

Participants and others that could be affected by the Settlement Agreement.

3.     The Debtors now seek entry of a final order (the "Final Settlement Approval

Order").  Through the Final Settlement Approval Order, the Parties seek: (i) approval of the

Settlement Agreement pursuant to Bankruptcy Rules 7023 and 9019 on a final basis;

(ii) certification of the Settlement Class, solely for settlement purposes, and appointment of the

Class Representatives and approval of Class Counsel on a final basis;[7] (iii) authorization for the

Debtors to terminate the LTD Plans with respect to all individuals receiving LTD Benefits or

coverage thereunder, whether or not they are LTD Employees; and (iv) the granting of related

relief.

4.     While the Debtors understand that termination of the LTD Plans may result in

hardship for certain individuals, in entering into the Settlement Agreement, the Debtors have

tried to balance the importance of the LTD Benefits to the covered individuals and their families

against the reality that continuing to provide the LTD Benefits is simply no longer practicable or

---

[7]     The positions taken in the class certification section of the Joint Motion are those of Plaintiffs only.  The Debtors take no position on the matters set forth in that section other than to support approval of the Settlement Agreement and class certification solely for purposes of settlement.  In the event that the Settlement Agreement does not become effective, the Debtors reserve all rights to contest class certification.

feasible where the Debtors' operations have been reduced to only those most basic functions essential to complete their wind down and bankruptcy process.  The Debtors believe that the terms of the Settlement Agreement provide the LTD Employees with a fair and reasonable settlement and will help to facilitate a transition for the LTD Employees to alternative arrangements following the termination of the LTD Plans.

5.    The Objections filed by the LTD Objectors raise objections that can be grouped into five main categories.[8]  First, certain Objections argue against the termination of the LTD Plans or challenge the adequacy of the Settlement Amount, including that some or all LTD Benefits were vested at the time of their disability, that the estimated valuation of the LTD Employees' claims under the LTD Plans calculated by the Debtors' actuary does not properly value their claims, that the LTD Committees' professionals may have used inaccurate data when completing the Individualized Settlement Notices and that LTD Employees should be entitled to share in both the LTD and Retiree settlements.

6.    Second, certain Objections raise questions about the role, decisions and composition of the LTD Committee, including the ability of the LTD Committee and the Class Representatives to represent the interests of all LTD Employees and to make decisions regarding the allocation of settlement proceeds.

7.    Third, certain Objections seek to compel the Pension Benefit Guarantee Corporation ("PBGC") to provide the LTD Employees with information regarding the status of their pension benefits.

8.    Fourth, certain Objections object to the Apportionment Methodology developed by the LTD Committee, including the use of an averaging methodology rather than an

---

[8]       A complete list of the Responses is attached hereto as Exhibit A.  Other responses have been filed which exclusively address the relief sought by the Tax Motion, and the Debtors have accordingly related those responses to the Tax Motion for purposes of the agenda letter and this Reply.

apportionment methodology, the proposed distribution mechanism thereunder making payments to Health Reimbursement Accounts ("HRAs") and the amounts allocated to claims under the Long-Term Investment Plan ("LTIP").

9.      Finally, certain Objections raise issues that are either not before the Court today, such as the payment of amounts that certain LTD Employees seek under the Severance Allowance Plans (defined below), or are otherwise unrelated to the relief sought by the Joint Motion.

10.     Many of the Objectors raise matters that are the essence of the rights and claims being compromised by the proposed settlement.  As demonstrated in various pleadings and appearances before the Court, the Debtors and LTD Committee have invested substantial time reviewing the various LTD Plans and considering their respective positions on the Debtors' right to terminate the LTD Plans generally, as well as what claims (if any) could arise as a result of such termination.  The Debtors and the LTD Committee support the Settlement Agreement as a fair compromise of such issues, consistent with the nature of settlements generally.  For the reasons discussed below, while it is important to consider the views of each of the LTD Employees who have filed Objections, ultimately the Court can and should approve the Settlement Agreement as a fair and equitable settlement for the LTD Employees as a whole. Each of the issues raised in the Objections is addressed in detail below.

## A.      THE SETTLEMENT AGREEMENT IS A FAIR AND REASONABLE COMPROMISE

11.     One set of Objections argues against the Debtors' right to terminate the LTD Plans or challenge the adequacy of the Settlement Amount, including because they believe that the LTD Employees are entitled to a larger payment since some or all LTD Benefits were vested at the time of their disability, assert that the valuation of benefits conducted by the Debtors'

actuary, Ethan Kra, is subject to challenge, or that the work done by LTD Committees' professionals may contain certain inaccuracies or should be audited, and suggest that LTD Employees should be entitled to share in both the LTD and Retiree settlements.

12.    Certain of these Objections assert that differences exist between language in the various plan documents or the nature of the LTD Employees' disabled status that prevent the Debtors from terminating the LTD Plans without paying any potential claims in full.  For example, Mr. David states, "[t]he 1981-2001 income continuation plan shouldn't be open to negotiation since it is already pre-petition approved claim for services already rendered and there is no language in the plan where it states that LTD plan claim payments can be terminated other than exception illustrated in 1989 Plan and 2000 SPD documents attached (Exhibit C)."  See David Objection, dated January 28, 2013, ¶ 31 [D.I. 9342].  Ms. Day argues that "[o]n approval of his/her LTD approval the employee and employer enter into a new contract . . . [t]herefore in LTD contract claim case, Nortel is liable for 100% of the income continuation and waiver of insurance premium."  See Day Objection, dated April 18, 2013, ¶ 14 [D.I. 10180].

13.    While the Debtors disagree with the merit of each of these positions, these are the same substantive issues about which the Debtors have been engaged in discussions with the LTD Committee and its advisors for the last 18 months in negotiating a consensual settlement of the LTD Plans.  Although the Debtors do not ascribe any validity to such arguments and the LTD Committee does not concede the Debtors' right to unilaterally terminate the LTD Plans, the proposed settlement resolves such disputes in a manner that the Debtors and the LTD Committee have determined is fair and reasonable, accounting for the cost, risks and uncertainty of further litigation for all involved.  Although certain Objectors may wish to litigate the arguments underlying the LTD Committee's position to completion, doing so would eliminate the benefits

of entering into a settlement for both Parties, and the LTD Employees generally, including the Objectors.

14.     Furthermore, certain of the concerns raised by such Objections are misplaced. The Debtors' right to amend or terminate the LTD Plans was consistently maintained in the governing documents.  For example, as acknowledged in several Objections, the LTD Employees re-enroll in medical benefits annually.  Therefore, at this time the language of the 2013 Nortel Networks Inc. Medical Plan Summary Plan Description – the current plan – governs.  That SPD provides in relevant part that: "[T]he Company reserves the right to change or end the plan described in this summary . . . at any time."  See 2013 Nortel Networks Inc. Medical Plan Summary Plan Description at 89, attached to *Declaration of John J. Ray III in Further Support of the Joint Motion* (the "Ray Declaration") as Exhibit 13.  Mr. David acknowledges as much in his Objection, yet suggests that as a matter of settlement some value should be paid to terminate such plans, similar to the amount paid in the retirement settlement. See David Objection, dated April 19, 2013, ¶ 21, conclusion ¶ 1 [D.I. 10201].  It is the Debtors' position that they have, and always have had, the right to terminate such plans and benefits, and the LTD Employees have no right to a claim as a result of such a termination.  However, to the extent these issues are compromised on a global basis, LTD Employees cannot argue that they are entitled to their full claim for arguments they feel strongly about, plus an additional settlement premium for other potential claims.

15.     Moreover, while income continuation benefits are governed by different plan year documents, the argument that the timing of an LTD Employee's disability should affect his or her outcome because of different plan language has no merit.  Although the specific plan language has changed from time to time, each of the SPDs for the Nortel Networks Inc. Long-

Term Disability Plan expressly reserves the Debtors' right to amend or terminate the plan,

including those for the years prior to 2001.  For example, in 2000, the year Mr. David went out

on disability, the 2000 Short-Term and Long-Term Disability Plan Summary Plan Description

refers readers to the "Administrative Information section of this handbook for . . . how the

Company may amend the plan."  See 2000 Short-Term and Long-Term Disability Plan Summary

Plan Description at 23, attached to the Ray Declaration as Exhibit 20.  In turn the Administrative

Information section of the 2000 Employee Benefits and Programs Binder states that: "[a]lthough

the benefits currently available are described here, the Company reserves the right to change or

end the plans at any time."  See 2000 Administrative Information at 23, attached to the Ray

Declaration as Exhibit 19.  Similarly, the 1996 SPD, the document that Ms. Cullen attaches to

her objection as Exhibit 1,[9] refers the reader to the Administrative Information section of the

employee binder in which the SPD was inserted for information about "how the Company may

amend the plan."  See 1996 Short-Term and Long-Term Disability Plan Summary Plan

Description at 23,  attached to Cullen Objection, dated April 19, 2013, as Exhibit 1 [D.I. 10207].

The "Administrative Information" section, which in 1996 was included in one tab of a binder

containing all benefits plan information and was incorporated into each SPD by reference,

specifically states "Although the benefits currently available are described here, the Company

reserves the right to change or end the plans at any time."  See 1996 Administrative Information

---

[9]       A letter sent to all Nortel Employees in January 1997 stated that the 1996 Employee Plan binder would
continue for the 1997 plan year except for specific changes highlighted in the 1997 FLEX Highlights brochure and
states that there will be changes to other non-relevant sections of the binder.  See Letter from Northern Telecom Inc.
to Nortel Benefits Eligible Employees, dated January 1997, attached to the Ray Declaration as Exhibit 12; see also
Northern Telecom Inc. Flex Benefits Highlights, 1997, attached to the Ray Declaration as Exhibit 14.  Another letter
sent to all Nortel employees in August 1997 stated that the 1996 Employee Plan binder would continue for the 1997
plan year unchanged except for changes to the dental/vision/hearing care plan, which are not relevant to this issue.
See Letter from U.S. Corporate Benefits to U.S. FLEX Eligible Employees, dated August 1997, attached to the Ray
Declaration as Exhibit 13.

at 25, attached to the Ray Declaration as Exhibit 10. Similar reservation of rights provisions exist for the other plan years.

16.     As explained in further detail in the LTD Termination Motion, it is the Debtors' position that the LTD Benefits are not vested regardless of the LTD Employees' disabled status, because the benefits provided under welfare benefit plans do not vest pursuant to ERISA except as expressly provided under the terms of the LTD Plans. See, e.g., Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. V. Skinner Engine Co., 188 F.3d 130, 139 (3d Cir. 1999). While the Court is not required to fully adjudicate this issue in order to approve the Settlement Agreement, the Debtors vigorously dispute certain Objectors' argument that there is no basis for the Debtors to terminate some or all of the plans without paying the full value of any potential claim, and the evidence shows material issues are being compromised in the settlement, in a fair and reasonable manner. Thus, although the aim of this settlement is to reach a resolution without having to litigate the underlying merits, these documents and the law demonstrate the basis the Debtors have for terminating the LTD Plans.

17.     Some other Objectors "dispute this statement in the Motion" that the "*Terms of the Settlement Agreement Fall Within the Range of Reasonableness* (pg60)." See Day Objection, dated April 18, 2013, ¶ 14 [D.I. 10180]. The Debtors recognize that absent a class settlement, individual LTD Employees may have sought to negotiate settlement terms tailored to their specific interests and potential future needs. However, a class settlement by its nature is uniformly applied, and both the Debtors and the LTD Committee were represented by experienced and competent counsel and financial advisors who worked tirelessly to represent the interests of all of their constituents. Both parties also recognized certain potential risks in their litigation positions and the costs associated with litigating such issues to finality, and the

10

compromise embodied in the Settlement Agreement reflects the compromise of such positions

taken into account by both the Debtors and the LTD Committee.  While certain Objectors may

feel the Settlement Amount to be insufficient, many other LTD Employees have indicated that

they support the settlement, and it should be noted that the Debtors previously sought to

terminate the LTD Plans without making any payment to the LTD Employees.  If the Settlement

Agreement were not approved, the Debtors would continue to seek a non-consensual termination

of the LTD Plans without having to make any further payment to the LTD Employees, and the

Debtors are confident that they would prevail.  While certain of the Objectors, such as Mr.

David, may have sufficient money available to gamble on the outcome of future litigation,[10]

many other LTD Employees are not so fortunate and cannot risk the possibility that they could

receive no consideration in exchange for the termination of the LTD Plans.  The Debtors

understand that certain Objectors would like to receive the full value of the LTD Committee's

asserted claim; however, the Settlement Amount represents a fair and reasonable middle ground

between the Parties' litigation positions, and provides everyone with the certainty and closure

necessary to plan for the future.  It appears that many LTD Employees agree, as indicated by the

multiple statements filed in support of the Settlement Agreement, or that note no objection to the

settlement terms.

        18.     Furthermore, the Settlement Agreement is a fair compromise that treats all of the

LTD Employees equitably, and is in the best interests of both the LTD Employees as a whole

and the Debtors.  The resolution of the Debtors' liabilities with respect to the LTD Plans is a

crucial step toward the Debtors' successful wind down.  The Settlement Agreement represents a

balanced solution for the termination of the LTD Plans and is the result of months of good faith,

---

[10]     See Transcript of February 14, 2013 Hearing at 62:2-6 ("Mr. David: I'll be taken care and I got my dad . . .
he was an economist and he has died with an amount of money, you know, so I will inherit all the good things in life
and probably be able to afford a nurse . . . .").

arm's-length negotiations and voluminous informational and document discovery.  While no settlement could give each or every LTD Employee the full amount that each believes he or she is entitled to if he or she were to prevail in litigation, the Settlement Agreement is fair and equitable to the members of the Settlement Class as a whole.

19.     The concerns raised in other Objections regarding the underlying financial data used by the Debtors and the LTD Committee, and the calculation of claims values also are misplaced.  The Debtors have provided the LTD Committee and its advisors with substantial financial data regarding the LTD Benefits, and have responded to various requests by the financial advisors regarding the LTD Benefits.  It is the Debtors' understanding that the LTD Committee's financial advisors and actuaries have been involved in the development of the Apportionment Methodology and calculated the individualized claim information that was contained in the Individualized Settlement Notices sent to each LTD Employee calculating the proportional share of the Settlement Amount that he or she is projected to receive under the Settlement Agreement.  Accordingly, it is the Debtors' understanding that while the LTD Committee members may have approved the basic formulas that will be used to allocate the Settlement Amount among the Settlement Class, they have had the benefit of the advice and resources of sophisticated counsel and advisors throughout.  While Mr. David suggests that the LTD Committee's financial advisors used inaccurate data in preparing the Individualized Settlement Notices, it is the Debtors' understanding that these professionals used the most up-to-date information available to them.  See David Objection, dated April 19, 2013, ¶ 7 [D.I. 10202]. The LTD population naturally changes with the passage of time, as individuals pass away, retire or are no longer disabled.  The fact that the data that is used to perform a calculation one day

changes the next cannot be helped and is certainly not evidence to show that the work performed by the LTD Committee's financial experts fell short in any manner.[11]

20.     Similarly, with regard to the Debtors' valuation of the projected LTD claim at various points over the last two years, the projected future value of LTD Benefits if the LTD Plans were not terminated would naturally decrease over time, as the Debtors continue to pay those benefits each month, and members of the LTD constituency age out of eligibility for LTD Benefits, which underlies the differences between the figures cited by the Debtors at different points in time over the last two years.

21.     Other variables affect the valuation of a potential claim as well, including without limitation, the discount rate used and the date upon which the potential claim is valued.  The experts retained by the Debtors and the LTD Committee disagree on certain of these issues, which would have to be litigated in the absence of a settlement, but notwithstanding their disagreement, the settlement is well within the range of reasonableness under the conclusions reached by both sides' experts.  See Travelers Cas. & Sur. Co. v. Future Claimants Representative, 2008 WL 821088, at *5 (citing Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.), 258 B.R. 119 (D.N.J. 2000)) (noting that court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness".)

22.     Finally, the Debtors disagree with the request made by certain of the LTD Employees to have the right to share in both the LTD and Retiree settlements simultaneously.[12] Under the terms of both the Retiree Welfare Plans and the LTD Plans, an individual qualified to

---

[11]     Moreover, the LTD Committee has reserved the right to amend the Individual Recovery Schedule to account for population changes or is any discrepancies were identified.

[12]     See, e.g., Leonard Response, dated  April 11, 2013 [D.I. 10153], Saran Response, dated April 12, 2013 [D.I. 10176], Day Response, dated April 18, 2013 [D.I. 10180], Hovater Response, dated April 18, 2013 [D.I. 10196], Wadlow Response, dated April 15, 2013 [D.I. 10200], David Response, dated April 15, 2013 [D.I. 10204], Leonard Response, dated  April 18, 2013 [D.I. 10209].

participate in both plans is only able to participate in, and receive benefits under, one set of plans at any given time. Prior to the approval of the retiree settlement, such an individual had to make a decision: either remain an employee of the Debtors and continue to collect LTD Benefits, or retire from the Debtors and collect Retiree Benefits. As part of a heavily negotiated deal with the Retiree Committee, the retiree settlement gave certain eligible LTD individuals a similar choice to participate in that settlement, but only if they elected to retire, which would cause them to waive the right to future LTD Benefits. The same choice is embedded in the LTD Settlement Agreement. See Settlement Agreement, section 11. The retiree settlement agreement now has been approved by a final order of this Court. See *Order Granting Debtors Motion for Entry of an Order Approving a Settlement Agreement with the Official Committee of Retired Employees* [D.I. 9938]. Even if such terms could be changed, which they cannot, allowing certain LTD Employees to participate in both settlements would be detrimental to other LTD Employees and Retirees because it would allow those LTD Employees to "double-dip" in both settlements, thus diluting the total amounts of those settlements available to the rest of the relevant populations. When negotiating the settlement with the Retiree Committee, the Retiree Committee made clear to the Debtors and the LTD Committee that their decision to permit the election was based on calculations that assumed LTD Employees would have to choose which settlement to participate in, and not that LTD Employees could participate in both settlements.

23.    For these reasons, as well as the reasons provided in more detail in the Joint Motion, the Debtors submit that the Settlement Agreement is a reasonable compromise between the Debtors and the LTD Committee that treats all LTD Employees fairly and equitably, and thus should be approved.

B.      **THE LTD COMMITTEE, THE CLASS REPRESENTATIVES AND THEIR
        PROFESSIONALS VIGOROUSLY ADVOCATED FOR THE INTERESTS OF
        ALL LTD EMPLOYEES**

24.     Other Objections raise questions about the role, decisions and composition of the

LTD Committee, including the ability of the LTD Committee and Class Representatives to

represent the interests of all LTD Employees and to make decisions regarding the allocation of

the settlement proceeds.  While the LTD Committee is better placed to respond to its internal

processes, it is the Debtors' view that it is both appropriate and important to conclude that the

LTD Committee and Class Representatives fairly and adequately represented the interests of the

LTD Employees and that the LTD Committee, working with its financial and legal advisors, was

in a position to negotiate the settlement which is proposed for approval.

25.     The LTD Committee is composed of members with varying backgrounds and

circumstances, including their age and the year of the commencement of their disability, which

have allowed such members to meaningfully speak for the interests of all of the LTD Employees

as a group.  In reliance on the LTD Committees' authority to act as the authorized representative

of all of the LTD Employees, the Debtors have spent over eighteen months and devoted

substantial resources to negotiating a consensual termination of the LTD Plans with the LTD

Committee.  The members of the LTD Committee have been actively involved in such

negotiations, and it is the Debtors' understanding that all of the LTD Committee members at the

time supported the decision to initiate the non-opt out Class Complaint as class representatives

on behalf of all LTD Employees, which action underlies the current proposed settlement.

26.     As an official committee appointed by the Office of the United States Trustee in

the Debtors' cases after a careful screening process, the LTD Committee was formed for the

purpose of negotiating a settlement relating to the LTD Plans and was granted the fiduciary

power to negotiate on behalf of all LTD Employees.  Generally, individual creditors are

15

adequately represented by a single committee organized under section 1102 of the Bankruptcy

Code "'so long as the diverse interests of the various creditor groups are represented on and have

participated in that committee.'"  In re Garden Ridge Corp., No. 04-10324 (DDS), 2005 WL

523129, at *3 (Bankr. D. Del. Mar. 2, 2005) (quoting In re Sharon Steel Corp., 100 B.R. 767,

777-78 (Bankr. W.D. Pa. 1989)).  Courts in the Third Circuit have concluded that "[f]or a

particular group of creditors to be adequately represented by an existing committee, it is not

necessary for the committee to be an exact reflection of that committee's designated

constituents.'"  Garden Ridge, 2005 WL 523129, at *3 (internal citations omitted).  While certain

Objections assert that the members of the LTD Committee and the Class Representatives are not

adequately representative of LTD Employees whose LTD Benefits are governed by summary

plan descriptions dated between the years 1981 and 2001, the primary arguments and theories

advanced in the Class Complaint and by the LTD Committee in opposing a non-consensual

termination of the LTD Plans – such as whether benefits have vested in the LTD Employees –

have been argued consistently for all LTD Employees.  To the extent arguments relevant to

specific plan years existed, at least one member of the LTD Committee other than Mr. David

(who has since resigned from the LTD Committee) went out on disability during the identified

time period and could advocate for those individuals' rights, as could all members of the LTD

Committee in their fiduciary capacity.  Similarly, Ms. Cullen argues that the LTD Committee

and Class Representatives do not adequately represent her interests because each Committee

member has elected to participate in the medical plan.[13]  Adequate representation does not

require "proportionate representation of distinct groups of creditors." See Garden Ridge, 2005

WL 523129, at *3.  Nonetheless, the composition of the LTD Committee does reflect its

---

[13]       Moreover, as described in more detail above, Ms. Cullen's argument that her claim is unique compared to
other LTD Claims because her governing plan document contains no reservation of rights language is simply
incorrect.

designated constituents and provides a medium through which LTD Employees with various interests have been able to meaningfully participate in the settlement process.  See Cullen Objection, dated April 19, 2013,  ¶ 41 [D.I. 10207].  It is also important to note that the Debtors would not agree to offer the settlement if it only resolved certain LTD Plan years or a subset of the potential claims rather than a global resolution of the issues.

27.     Furthermore, to the extent that certain LTD Objectors now express concerns regarding the composition of the LTD Committee in connection with this proposed settlement, these concerns were not formally raised prior to the filing of the Joint Motion, despite multiple occasions to do so over the last one and one-half years.  For example, while Mr. David, a former member of the LTD Committee, argues that the alleged inadequate representation by the LTD Committee was not evident at the time of the LTD Committee's formation because the variances in the Debtors' summary plan descriptions only became apparent during discovery, see David Objection, dated February 14, 2013, at ¶ 17 [D.I. 9342], the Debtors provided the LTD Committee with substantial information regarding the LTD Plans within months of its formation and have been engaged in negotiations regarding a potential settlement throughout.  As recently as November 2012, rather than raise such concerns, the LTD Committee and its members filed the Class Complaint, which alleged that "[t]he LTD Committee as agent for and representative of the class will fairly and adequately protect the interests of the class."  Class Complaint at 16.[14] An essential part of the current proposed settlement is the resolution of that Class Complaint, which requires the certification of the proposed class for purposes of settlement only.  The Debtors would be substantially disadvantaged and financially prejudiced if they were forced to restart settlement discussions or the LTD Committee were somehow reconstituted or subdivided,

---

[14]      Furthermore, proper procedure mandates that reconsideration of the Court's order to appoint an LTD Committee would have to be sought pursuant to a motion brought under Fed. R. Civ. P. 60(b).  The standards required by that rule are not met here, and in any event, the time to bring such a motion has since passed.

and likely would be forced to seek a non-consensual termination of the LTD Plans based on their pending LTD Termination Motion.

28.     Certain of the Objections have raised further concerns about the role of the LTD Committee in overseeing the allocation of any settlement payments among LTD Employees, either by suggesting the LTD Committee members are not equipped to make such determinations or that an independent auditor should be appointed to further the allocation determinations.  It is the Debtors' view that the LTD Committee, which has the support of sophisticated counsel and independent financial advisors and actuaries, is more than capable of overseeing any settlement of the claims.

29.     Shortly after their appointment, the LTD Committee retained the services of financial advisor Alverez and Marsal and an independent actuary, Vincent Bodnar,[15] to assist the LTD Committee in their consideration of the valuation of their benefits and other matters relevant to the current disputes.  *See Order Authorizing Employment and Retention of Alvarez & Marsal Healthcare Industry Group, LLC as Financial Advisors for the Official Committee of Retired Employees and the Official Committee of Long-Term Disability Participants,* Nunc Pro Tunc *to September 8, 2011*, dated October 24, 2011 [D.I. 6679].  While the fees of the LTD Committee's advisors are paid by the Debtors' estates, these professionals are retained as advisors to the LTD Committee and not the Debtors.

## C.     THE FACT THAT THE PBGC HAS NOT PROVIDED CERTAIN INFORMATION IS NOT GROUNDS TO DENY APPROVAL OF THE SETTLEMENT

30.     Other Objections seek to compel the PBGC to provide the LTD Employees with clarification regarding the impact of participating in either the Settlement Agreement or the

---

[15]     Effective on November 1, 2012, Towers Watson completed an asset purchase from DaVinci Consulting Group, and hired all twelve employees of DaVinci Consulting Group's employees, including Mr. Bodnar.

settlement with the Retiree Committee on pension benefits, to assist in their decision whether to elect to retire at this time.

31.     The Debtors and LTD Committee have made every reasonable effort to provide LTD Employees with access to available information relevant to the settlement.  From conversations with the PBGC, the Debtors understand that the PBGC has provided LTD Employees with a statement regarding their estimated pension benefits if they retire at age 65, but that the statements say "may not be eligible to receive your pension benefit prior to your Normal Retirement Date" as the PBGC has not determined its position to any requests to commence pension benefits before age 65.[16]  In addition, the Debtors understand that the PBGC has told LTD Employees that, if they are at least age 55 and elect to participate in the settlement with the Retiree Committee and waive their rights to participate in the Settlement Agreement, they may receive pension benefits in a reduced benefit amount.  While the Debtors sympathize with the LTD Employees and their desire to know the PBGC's final determination about their ability to commence pension benefits before age 65 if they participate in the Settlement Agreement, and share their frustration that such information is not available, the Debtors do not believe that this lack of information should prevent the Court from approving the Settlement Agreement.  The Settlement Agreement proposes only to address the termination of the LTD Plans and the other allegations set forth in the Class Complaint, neither of which relate to pension benefits.

32.     The PBGC has told the Debtors' counsel that it will not be in a position to finally determine its position until after the Settlement Agreement has been approved and individuals'

---

[16]     See Exhibit C to the *Wayne J. Schmidt, Nortel US LTD Employee, Response to Order (A) Preliminarily Approving the Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certifying a Class for Settlement Purposes Only, (C) Approving the Notice Procedures, (D) Scheduling a Airness [sic] Hearing and (E) Granting Relief*, dated April 16, 2013 [D.I. 10146], the PBGC states that anyone participating in the Settlement Agreement

allocations from the Settlement Amount as well as the terms of the distributions have been finally determined, at which point the PBGC will decide eligibility on a person by person basis. Given that the deadline for eligible LTD Employees to elect to participate in the settlement with the Retiree Committee will expire on May 17, 2013 regardless of whether the Settlement Agreement is approved, individual eligible LTD Employees will have to decide whether to elect to retire based on the currently available information.  Delaying the Settlement Agreement and/or the termination of the LTD Plans would not resolve these issues and rather would only result in more uncertainty for LTD Employees seeking to make future financial plans regarding their options.  Accordingly, the Settlement Agreement should be approved, notwithstanding the lack of a final determination by the PBGC with respect to the payment of pensions prior to age 65 for those participating in the Settlement Agreement.

D.     **OBJECTIONS TO THE APPORTIONMENT METHODOLOGY AND DISTRIBUTION MECHANISM DO NOT PRECLUDE APPROVAL OF THE SETTLEMENT AGREEMENT**

33.     Certain Objections challenge the Apportionment Methodology created by the LTD Committee, including the use of an averaging methodology for calculating the portion of an individual's claim attributable to medical benefits, the proposed use of HRAs to distribute portions of an individual's share of the Settlement Amount and the amount of the Settlement Amount allocated to potential claims related to the LTIP.  In one of his Objections, Mr. David also alleges that the data in the Individualized Settlement Notices is erroneous and that he was denied the ability to conduct an internal audit.  The Settlement Agreement is clear that the LTD Committee has the sole responsibility for determining the Apportionment Methodology and the calculation of individual distributions thereunder.  See Settlement Agreement, section 2(d). Accordingly, the LTD Committee is better positioned to respond to these issues, particularly including their decision to use an averaging methodology and establish HRAs.

20

34.     Other Objections object to the Settlement Agreement on the grounds that the LTD Committee seeks to distribute the Settlement Amount (attributable to benefits other than LTD income continuation) to the Settlement Class through the use of HRAs, rather than lump sum cash payments. It is important to note that the establishment of HRAs is requested in a motion that has been filed independently by the LTD Committee, and is not part of the relief sought in the Joint Motion or Settlement Agreement. See *Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief*, dated April 11, 2013 [D.I. 10049] (the "Tax Motion"). Thus, the Debtors respectfully submit that to the extent the Objections object to the use of HRAs or the tax structure of payments, these Objections constitute objections to the Tax Motion, which should be considered separately from the approval of the Joint Motion.

35.     Certain other Objections request that the Debtors compensate the LTD Employees for certain payments they allege are owing under the LTIP. The LTIP was terminated as of June 30, 2012, with respect to all of the Debtors' employees, not just the LTD Employees. Both individual LTD Employees and counsel to the LTD Committee were given advance notice of the Debtors' intent to terminate the LTIP, and no objections were raised nor was any relief sought by any party at that time. The Debtors do not contest an individual's right to the account balance properly vested in an individual's LTIP account at the time of the plan termination (subject to investment loss), which constitutes an "Excluded Claim" under the Settlement Agreement. See Settlement Agreement, section 9(b)(viii). While the Debtors assert that they have no other liability with regard to the LTIP, they also note that the LTD Committee attributed some value to the LTIP benefit, as evidenced in the Individualized Settlement Notices sent to the members of the Settlement Class. The LTIP is included in the definition of "LTD Plans" set forth in the

Settlement Agreement that are subject to the settlement and releases. Although certain Objectors may seek recovery of amounts lost from the termination of the LTIP above and beyond the amount attributed to such claims in their Individual Settlement Notices, the compromise and release of any hypothetical LTIP claims is an essential element of the Settlement Agreement for which the Debtors bargained.

36.     In sum, the various objections discussed here do not provide a basis for concluding that the settlement as memorialized in the Settlement Agreement is inadequate or unfair.  The Settlement Agreement is a fair compromise that treats all of the members of the Settlement Class equitably, and is in their best interests as well as the best interests of the Debtors.  The resolution of the Debtors' liabilities with respect to the LTD Plans is a crucial step toward the Debtors' successful wind down.  The Settlement Agreement represents a balanced solution for the termination of the LTD Plans and is the result of months of good faith, arm's-length negotiation and voluminous informational and document discovery.  Although certain Objectors express concern that the Settlement Agreement does not adequately address their specific interests or give them everything they might receive should they prevail in all respects on the merits in litigation, no settlement will be a perfect fit for every member of the Settlement Class or provides the complete relief sought in litigation.  The Settlement Agreement is fair and equitable to the members of the Settlement Class as a whole.

**E.     THE REMAINING OBJECTIONS SHOULD BE OVERRULED OR SEVERED**

37.     The remaining Objections raise issues that are either not before the Court on the hearing of the Joint Motion or raise personal concerns unrelated to the Joint Motion and therefore should be either severed and adjourned to be heard on a later date or overruled. Specifically, some Objections seek allowance of the LTD Employees' severance claims under the Nortel Networks Severance Allowance Plan or Enhanced Severance Allowance Plans (the

"Severance Plans"). As this Court is aware, several LTD Employees already have filed motions seeking similar relief, and this Court has scheduled a hearing on these motions for June 25, 2013, at 10:00 a.m. (the "Severance Motion Hearing"). See, e.g., *Motion to Compel Debtors to Admit Claim for Severance Allowance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment*, filed by Najam ud Dean, dated March 7, 2013 [D.I. 9598], Scott David Howard, dated March 7, 2013 [D.I. 9600], Remajos Brown, dated March 11, 2013 [D.I. 9647], Fred Lindow, dated March 15, 2013 [D.I. 9665], Estelle Loggins, dated March 18, 2013 [D.I. 9674] and John Rossi, dated April 18, 2013 [D.I. 10170]. While the Debtors do not believe any such severance is owed under the terms of the relevant plans, this issue is not before the Court in respect of the Joint Motion as claims arising under the Severance Plans are Excluded Claims that are not being compromised or released under the Settlement Agreement. See Settlement Agreement, section 9(b)(ii). Considering the merits of these issues out of context would result in an advisory opinion at best, and would prejudice those LTD Employees who properly scheduled motions for hearing. Therefore, the Debtors submit that to the extent that any Objection seeks allowance of a claim pursuant to the Severance Plans, such request for relief be severed and adjourned to the Severance Motion Hearing.

38.     Several of the Objectors request that the "Debtors major medical insurance companies provide each one of the LTD participant [sic] with the letter of policy termination 25 days prior to termination." See, e.g., Saran Objection, dated April 12, 2013 [D.I. 10176] ¶11. The Debtors are actively working to send out this documentation and the Certificate of Group Health Plan Coverage, which will provide this requested information, will be mailed to all LTD Employees prior to the April 30, 2013 hearing. Other Objections request that in order for LTD Employees to be entitled to a certain "IRS Income Tax Credits for Disabled and Elderly" the

Debtors must "write a letter for each individual LTD Employee, stating that we were disabled and retired." See, e.g., Leonard Objection, dated April 18, 2013 [D.I. 10209] ¶19, 20. The Debtors are not aware of any such requirement. However, after these Objectors have consulted tax professionals the Debtors would be happy to provide any documentation they reasonably are required to provide.

39.    Mr. Demel's Objection also raises personal issues unrelated to the Joint Motion. Mr. Demel is not a current LTD Employee because he entered into an agreement with the Debtors to settle his claim regarding his prior entitlement to certain long-term disability and disability pension benefits. See *Stipulation Reducing and Allowing Claim No. 4643 Filed by Ernest Demel Against Debtor Nortel Networks Inc.* dated September 14, 2010, as approved by the Court on October 14, 2010 [D.I. 4160] (the "Demel Stipulation"). Mr. Demel now requests payment on his allowed unsecured claim granted under that settlement; however, the Debtors are prevented by the Bankruptcy Code from paying distributions on general unsecured claims prior to the confirmation of a plan of reorganization. The Debtors fully intend to treat Mr. Demel's allowed claim according to the terms of a confirmed plan of reorganization when they reach that stage of their reorganization process, and appreciate Mr. Demel's patience. Since Mr. Demel is not a current LTD Employee per the Demel Stipulation, he is not eligible to participate in the Settlement Agreement. See Demel Stipulation. Therefore, his Objection does not raise issues related to the Joint Motion.

40.    Mr. Paroski appears to assert certain successor liability claims against Ericsson, as a purchaser of certain of the Debtors' business assets, related to his LTD Benefits. See Paroski Objection, dated February 5, 2013 [D.I. 9384]. Mr. Paroski has clarified that he does not seek to object to the Joint Motion and only seeks relief on a theory of successor liability against

Ericsson.  See Paroski Objection, dated February 25, 2103 [D.I. 9517].  As this Court is aware,

Mr. Paroski also filed a motion seeking similar relief and the Debtors filed an objection to that

Motion.  See *Motion to Approve*, dated March 28, 2013 [D.I. 9916]; *Debtors' Objection to*

*Motion to Approve*, dated April 11, 2013 [D.I. 10045] ("Debtors' Objection").  As stated in

further detail in the Debtors' Objection, similar relief was previously considered and denied by

the Court with prejudice.  See *Order Denying Motion of Stephen Paroski for the Order*

*Promissory Estoppel Order Authorizing and Approving and Approving Procedures Funding or*

*Buyout Ericsson Inc. and Telefonaktiebolaget LM Ercission [sic] and Nortel*, dated April 22,

2013 [D.I. 8274].

41.     Finally, Ms. Loggins has filed an Objection objecting to the disallowance of her

claim number 7604, which asserts claims related to LTD Benefits.  Ms. Loggins no longer is

eligible for LTD Benefits after she passed the maximum age in December 2012.  See Prudential

Letter, attached to the Ray Declaration as Exhibit 1.  Ms. Loggins therefore is not entitled to

share in the LTD Settlement.  See Settlement Agreement, section 2(e) ("The Settlement Amount

shall be allocated among the LTD Employees who are receiving benefits under the LTD Plans as

of the Termination Date . . . .").  Accordingly, her claim should be expunged as it related to the

LTD Benefits resolved by the Settlement Agreement, to which Ms. Loggins is no longer entitled.

42.     Therefore, to the extent these Objections are seen as objections to the Joint

Motion, the Debtors request that they be overruled.

43.     Accordingly, for the reasons stated herein and in the Joint Motion, the Debtors

respectfully request that the Court overrule the Objections and grant the final relief sought in the

Joint Motion.

WHEREFORE, the Debtors respectfully request that this Court (i) grant the final relief sought by the Joint Motion; (ii) overrule the objections set forth in the Objections, (iii) enter the Final Settlement Approval Order; and (iv) grant such other and further relief as it deems just and proper.

Dated:  April 25, 2013  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-2000  
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors in Possession*