# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| Debtors. | : | Jointly Administered |
|  | : | **Related D.I.: 9304** |

---

|  |  |  |
|---|---|---|
| OFFICIAL COMMITTEE OF LONG TERM DISABILITY PLAN PARTICIPANTS, on behalf of and as agent for a class of individual participants and beneficiaries under various NORTEL NETWORKS HEALTH AND WELFARE BENEFIT PLANS, | : | Adv. Proc. No. 12-50995 (KG) |
|  | : | **Related D.I.: 15** |
|  | : | Hearing Date: April 30, 2013 at 10:00 am (EST) |
| Plaintiffs, | : |  |
| v. | : |  |
| NORTEL NETWORKS INC., *et al.*, | : |  |
| Defendants. | : |  |

---

**DECLARATION OF JOHN J. RAY III IN FURTHER SUPPORT OF THE JOINT MOTION PURSUANT TO SECTIONS 363 AND 105 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 9019 AND 7023 TO (A) FINALLY APPROVE THE SETTLEMENT AGREEMENT, (B) FINALLY CERTIFY A CLASS, (C) AUTHORIZE THE DEBTORS TO TERMINATE THE LTD PLANS, AND (D) GRANT RELATED RELIEF**

I, John J. Ray III, declare under penalty of perjury as follows:

1.    On January 6, 2010, upon the motion of Nortel Networks Inc. ("NNI") and the other above-captioned debtors (together, the "Debtors"), I was appointed by this court as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (b), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Debtors' Principal Officer, *nunc pro tunc* to December 7, 2009. I am also Senior Managing Director and the sole member of Avidity Partners, LLC.

2. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, information supplied to me by other members of the Debtors' employees' management and professionals based on, among other things, a review of the Debtors' files, books and records, or learned from my review of relevant documents or are based upon my opinion, which is founded upon my experience and knowledge of the Debtors' operations. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this declaration.

3. I submit this declaration in support of the *Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule a Fairness Hearing; and (II)(A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief*, filed as of January 18, 2013, [D.I. 9304] (the "Joint Motion")[2] and the *Debtors' Reply in Further Support of the Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief* [D.I. 10316] (the "Reply"). I directly participated in the negotiation of the Settlement Agreement with the LTD Committee regarding the consensual

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Joint Motion.

termination of the Debtors' LTD Plans, including by attending meetings with the LTD Committee, providing information and exchanging proposals and counter-proposals.

*The LTD Plans*

4. The Debtors historically have provided a number of benefits to their employees through various benefit plans and other programs, including (as amended or modified from time to time) the Nortel Networks Inc. Long-Term Disability Plan, Nortel Networks Inc. Short-Term Disability Plan, the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan,[3] and other formal or informal benefit plans, agreements, or programs (collectively, the "LTD Plans"). The Debtors offer these LTD Plans to current employees of the Debtors, including the LTD Employees, who have been identified by the Debtors as current employees of the Debtors in connection with the administration of these plans and benefits. Certain LTD Plan related benefits are available pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Currently there are approximately 196 LTD Employees, 10 employees and 63 COBRA participants receiving benefits under the LTD Plans.

5. While the Debtors have offered various welfare benefits to their employees, including the LTD Employees, both prior to and since the Debtors' chapter 11 petitions, the Debtors consistently have taken the position that the governing LTD Plans specifically reserve

---

[3] The Nortel Networks Inc. Long-Term Investment Plan was terminated effective as of June 30, 2012, for all of the Debtors' employees. The Nortel Networks Inc. Health Care Reimbursement Account Plan and the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan were previously terminated for all of the Debtors' employees, effective as of December 31, 2010.

3

the Debtors' right to amend or terminate the LTD Plans and the benefits provided thereunder ("LTD Benefits"). The Debtors previously sought to terminate the LTD Plans and the Retiree Welfare Plans in June 2010 by the *Debtors' Motion for Entry of an Order Authorizing Debtors to Terminate Certain Retiree and Long-Term Disability Plans* [D.I. 3204] (the "Plan Termination Motion"), which was later withdrawn without prejudice in July 2010 [D.I. 3651].

6. Over the last two and a half years since July 2010 through March 2013, the Debtors have continued to provide LTD Benefits at a cost in excess of $25 million to their estates. Although the LTD Plans are administered by third-party vendors, the Debtors generally maintain the LTD Plans as self-insured plans (with the exception of certain life insurance, accidental death & dismemberment insurance, certain HMO medical options and business travel accident insurance benefits).[4] The average cost to the Debtors of providing the LTD Benefits under the LTD Plans was more than $700,000 per month in 2012, and there is no assurance that the administrative costs of these plans would not increase over time.

*The Wind-Down of the Debtors' Estates*

7. The Debtors have been working diligently to wind down their remaining operations since the completion of the sale of their patent portfolio, which closed in July 2011. At this stage of these chapter 11 cases, the Debtors have made substantial progress in their wind down efforts. The operating business lines have been sold, transition services have been completed and no material supplier or customer relationships remain. Once the Debtors dissolve as corporations, there will be no company even in name to continue the LTD Benefits.

8. At the time the bankruptcy cases were filed, the Debtors employed approximately 3,000 individuals. The Debtors currently employ only ten employees, other than the LTD

---

[4] Since 2011, Nortel's long-term disability coverage for its remaining active employees has been fully insured by Metropolitan Life Insurance Company. No individual currently receives benefits through the fully insured long-term disability policy and the Debtors ultimately intend to terminate this policy as well.

4

Employees. As a result of the divestitures and the wind down, the maintenance and administration of the LTD Plans (and the Retiree Welfare Plans) now takes a disproportionate amount of time and resources compared to prior years. Throughout the wind down process, the Debtors have attempted to identify other alternative insurance arrangements for the LTD Employees.

***Good-Faith Settlement Negotiations with the LTD Committee and the Stage of the Proceedings***

9. Since the appointment of the LTD Committee over a year and a half ago, the Debtors have devoted significant resources and attention to negotiating in good faith to try and seek the termination of the LTD Plans and a settlement that would provide a fair and equitable resolution of any potential claims or rights held by the LTD Employees relating to all of the LTD Plans, which were raised by both sides in negotiations. On October 6, 2011, the Debtors held an in person meeting with the LTD Committee to provide them with information about the LTD Plans and the proposed termination of the LTD Plans and LTD Benefits thereunder. Thereafter, the Debtors and their advisors and the LTD Committee and its professionals participated in numerous and lengthy good faith, arm's-length negotiations regarding the termination of the LTD Plans, including the exchange of term sheet proposals and further in person meetings held on February 27, 2012, June 27, 2012 and July 19, 2012. Throughout the process, each party vigorously negotiated on behalf of its constituents, making concessions to consensually resolve disputed issues.

10. In addition to numerous telephonic discussions between the parties, the Debtors engaged in the regular production of documents and other data, providing the LTD Committee access to all potentially relevant information available necessary to evaluate the Debtors' proposals. Through both informal and formal discovery, the Debtors to date have provided the

LTD Committee with over 27,000 pages of documents and multiple spreadsheets, including various LTD Plan documents, LTD Employee communications, claims histories, and other information regarding the Debtors' employees and the Debtors' estates, assets and claims, including by compiling various benefit-related information in response to requests from the LTD Committee. The Debtors have supplemented this information with updated data as it became available.

11. Notwithstanding the Debtors and the LTD Committee's committed efforts, negotiations reached an impasse and in an effort to reach a consensual resolution, in March 2012, the Debtors sought to have a mediator appointed to facilitate settlement discussions between the Debtors and the LTD Committee. Following the appointment of Mr. Richard Levin as Mediator on April 18, 2012 [D.I. 7560], the Debtors and the LTD Committee continued to work towards a consensual settlement under the supervision of Mr. Levin as a neutral, third-party mediator.

12. On November 29, 2012, the Plaintiff instituted an adversary proceeding against the Debtors by filing the *Verified Complaint for Declaratory and Injunctive Relief against the Debtors* [D.I. 8961] (the "Class Complaint"), alleging various claims for declaratory and injunctive relief, including a declaratory judgment that the governing LTD Plan documents do not permit the Debtors to terminate LTD Benefits for those LTD Employees who are already disabled and receiving income continuation benefits.

13. After more than a year of arms'-length negotiations, and an all-day mediation session held on December 4, 2012, which involved many hours of negotiation between the Debtors, the LTD Committee, the UCC, the Bondholder Group and the Retiree Committee, the primary terms of a settlement in principle between the Debtors and the LTD Committee was reached. That settlement in principle was the result of a proposal made by the Debtors to the

LTD Committee in good faith, which was based on the most complete and reliable information available at the time. The LTD Committee, as the authorized representative of the Debtors' LTD Employees, accepted that proposal and agreed to the termination of the LTD Benefits on those terms. The Settlement Agreement embodies that agreement, as ultimately memorialized by the parties after continued negotiations and discussions. The UCC and Bondholder Group also actively participated in the negotiation process. Throughout the process, all parties were represented by counsel who vigorously negotiated for their clients' position in good faith.

***The Settlement Agreement is a Fair and Reasonable Exercise of the Debtors' Business Judgment***

14.     At the current advanced stage of these chapter 11 cases, the Debtors cannot continue to provide LTD Benefits to their LTD Employees for the indefinite future. The Debtors have reviewed their budgets, financial statements and projected costs in determining the infeasibility of continuing to maintain the LTD Plans. The Debtors considered the most complete and reliable information available to the Debtors in formulating the proposal made to the LTD Committee.

15.     Although the Debtors maintain that the LTD Plans are terminable at will without any liability including to the LTD Employees, in entering into the Settlement Agreement the Debtors reviewed and considered various summaries and valuations of the potential value of future benefits, including or reflected in the FAS 112 reporting regularly prepared by their actuaries, information provided by the advisors to the LTD Committee and the expert report prepared by Dr. Kra and filed with the Court on November 30, 2012 [D.I. 9041] to determine that the amount of the LTD General Unsecured Claim is fair and reasonable.

16.     The termination of the LTD Plans pursuant to the terms of the Settlement Agreement is necessary to accommodate the ultimate confirmation of the Debtors' chapter 11

plan. While the Debtors assert that the LTD Plans are terminable at will without liability to the Debtors, the LTD Committee has claimed, and the Debtors expect they would continue to argue absent settlement that the LTD Benefits are vested and that LTD Employees hold claims against the Debtors for such benefits. While the Debtors remain confident in their own reading of the LTD Plans, the Settlement Agreement avoids the risks and delay of what would be time-consuming and demanding litigation and provides the Debtors with greater certainty regarding the value of claims against the Debtors' estates and potential creditor recoveries under a chapter 11 plan. The Debtors, aided by counsel, have fully assessed the risks of continuing to litigate these issues and have balanced that risk against the benefits of the Settlement Agreement. The termination of the LTD Plans under the Settlement Agreement also relieves the Debtors of the significant financial burden of continuing to provide LTD Benefits for an indefinite period of time, preserves value for fair and equitable distribution to all of the Debtors' creditors and allows the Debtors to make necessary arrangements to begin the lengthy process of winding down the administration of the LTD Plans.

17. Additionally, it is both desirable and important for the Debtors to terminate the LTD Plans now with respect to all participants due to the lengthy wind down process associated with the termination of the LTD Plans, which may take several months to complete. Furthermore, it is not feasible to maintain the LTD Plans solely for the benefit of the ten remaining employees and the COBRA participants because there is substantial risk that the third party vendors who administer the LTD Plans would terminate the agreements or substantially increase the premiums and other costs. The Settlement Agreement and the termination of the LTD Plans in their entirety achieve the finality necessary to allow the Debtors to proceed with

the wind down of their operations and toward the approval and implementation of a plan of reorganization.

18. Moreover, the settlement will result in a savings of time and money for the Debtors. The Debtors currently are paying the professional fees and expenses for both Parties to litigate the LTD Termination Motion and the Adversary Proceeding, and settling now will greatly reduce the Debtors' expenditures on professionals. This will result in cost savings that will allow more funds to be available for distribution to creditors. Furthermore, the Parties reached a settlement in principle on the eve of taking depositions and the filing of the LTD Committee's expert report. Should the settlement fail, the Parties would be forced to resume the discovery process and continue to dedicate resources to preparing for a trial on the LTD Termination Motion and further litigation related to the Adversary Proceeding. The settlement also allows the Debtors to obtain Court approval of the termination of the LTD Plans, which they sought out of an abundance of caution when they filed the LTD Termination Motion. The termination of the LTD Plans will save the Debtors' creditors the costs and risks of both the continued provision of benefits and further litigation of these disputes at a time when the Debtors no longer have ongoing businesses to generate revenue to offset the costs, and will eliminate the risk that the Debtors will be forced to pay substantially increased premiums and other costs in the future in order to secure a third party vendor to administer the LTD Plans. Terminating the LTD Plans also will eliminate the Debtors' risk of bearing increased claims in future periods, which risk is disproportionate when the LTD Employees predominate the Debtors' remaining workforce.

*Likelihood of Success on the Merits and the Interest of the Debtors' Estates and Creditors*

19.     The Settlement Agreement also is fair, reasonable and in the best interests of the Debtors, their creditors and their estates.  Approval of the Settlement Agreement will confer substantial benefits upon the Debtors and the Debtors' estates by eliminating the need for lengthy and costly litigation and resolving one of the Debtors' more significant ongoing financial and administrative burdens.  While the Debtors are prepared to litigate the termination of the LTD Plans and believe they would prevail, such contested litigation carries with it inherent uncertainties and there is no assurance that the Debtors would achieve a better result than the one set forth in the Settlement Agreement.  The Debtors believe that the Settlement Agreement fairly balances the Debtors' likelihood of success on the merits against their interest in avoiding the uncertainty of continuing this contentious litigation and the burden of the continued costs of providing LTD Benefits.  Furthermore, prompt resolution of the termination of the LTD Plans through the Settlement Agreement is in the interests of the Debtors' creditors generally, as the cost and time devoted to continuing discovery and litigation over this matter will no longer disrupt the estates' efforts to move forward with the ultimate resolution of the Debtors' chapter 11 cases.  Therefore, the Debtors in their business judgment have determined that the Settlement Agreement treats the LTD Employees fairly and equitably and that consummation of the Settlement Agreement is in the best interests of the Debtors, their creditors and their estates.

*The Settlement Agreement is Fair, Reasonable and Adequate*

20.     The Settlement Agreement is fair, reasonable and adequate and treats the LTD Employees fairly and equitably.  In addition to the continued receipt of benefits through the entire course of the Debtors' chapter 11 cases to date, which amounts to approximately 54 months of continued LTD Benefits, the Debtors consent pursuant to the Settlement Agreement,

without admitting or denying liability and solely for the purpose of settlement, that they will not terminate any of the LTD Plans with respect to any of the LTD Employees on or before June 30, 2013 unless they grant the LTD General Unsecured Claim in favor of the LTD Committee. The Settlement Agreement therefore provides the LTD Employees with an unsecured claim despite the Debtors' position that they would have no post-termination liability under the LTD Plans. Indeed, previously active employees who were terminated in various rounds of layoffs and through divestitures of the Debtors' business did not receive any such additional benefits or payments, and the Debtors' unsecured creditors have not received payments from the Debtors on account of their claims and will not until the confirmation of a plan of reorganization for the Debtors. Moreover, the structure of the Settlement Agreement was designed to assist the LTD Employees in transitioning to alternative medical coverage once the LTD Plans are terminated.

***Complexity, Expense and Likely Duration of the Litigation***

21. Absent the proposed Settlement Agreement, there would be numerous substantive issues before the Court, each of which would be vigorously litigated by the Parties. Regardless of which Party initially prevailed on these issues, the Parties anticipate lengthy appeals would follow, with some or all related expenses to be paid from for the Debtors' estates. There are risks inherent in litigation and establishing liability and damages, including delay that could prevent the Debtors from taking the necessary next step in their wind down process by terminating the LTD Plans completely within the 2013 plan year with respect to all participants.

22. The termination of the LTD Plans will save the Debtors' creditors the costs and risks of both the continued provision of benefits and further litigation of these disputes at a time when the Debtors no longer have ongoing businesses to generate revenue to offset the costs, and will eliminate the risk that the Debtors will be forced to pay substantially increased premiums

and other costs in the future in order to secure a third party vendor to administer the LTD Plans. Terminating the LTD Plans also will eliminate the Debtors' risk of bearing increased claims in future periods, which risk is disproportionate when the LTD Employees predominate the Debtors' remaining workforce.  Finally, the Debtors will be able to get one step closer to the development and finalization of their chapter 11 plans that are necessary to close these proceedings.

### *Notice of the LTD Settlement was Reasonable and Adequate Under the Circumstances*

23.     I understand that in accordance with the *Order (A) Preliminarily Approving the Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certifying a Class for Settlement Purposes Only, (C) Approving the Notice Procedures, (D) Scheduling a Fairness Hearing and (E) Granting Related Relief* dated February 14, 2013 [D.I. 9427], on February 15, 2013, the Settlement Notice was served on over 200 LTD employees of the Debtors and certain individuals who may be eligible for benefits under the LTD Plans at their last known address [D.I. 9470].  I also understand that the Debtors caused the Publication Notice to be published in eleven newspapers on February 20, 2013 [D.I.s 9623, 9624, 9625, 9627, 9628, 9629, 9630, 9631, 9632, 9633, 9634].

### *The Debtors' Reply*

24.     Contemporaneously with the submission of this declaration, the Debtors have filed the Reply to address concerns raised by several individuals who have filed responses to the Joint Motion.

25. In order to place before the Court documents relevant to the Reply and the Joint Motion, attached to this declaration are true and correct copies of the following documents obtained from the Debtors' records:[5]

**Exhibit 1:** Letter from Stephen X. Miller, Disability Claim Manager at The Prudential Insurance Company of America, to Estelle Loggins, dated October 4, 2012

**Exhibit 2:** Northern Telecom Inc. Group Benefits Plan (Hourly Revised Plan), dated January 1, 1982

**Exhibit 3:** Northern Telecom Inc. Group Benefits Plan (Salaried Revised Plan), dated 1982

**Exhibit 4:** Northern Telecom Inc. Group Benefits Plan (Revised Plan), dated January 1, 1986

**Exhibit 5:** Northern Telecom Inc. Group Benefits Plan (Revised Plan), dated January 1, 1987

**Exhibit 6:** Northern Telecom Inc. Weekly Disability and Long Term Disability Plan, dated January 1, 1991

**Exhibit 7:** Northern Telecom Inc. Weekly Disability and Long Term Disability Plan, dated 1992

**Exhibit 8:** Northern Telecom/BNR U.S. Employee Benefits for Bargaining Unit Employees of Nynex Meridian Systems Benefits Connection – The Medical Plan, Dental Plan, Term Life Insurance and Accidental Death & Dismemberment Plan, Short-Term Disability Plan, Long-Term Disability Plan, dated January 1993

**Exhibit 9:** Northern Telecom/BNR U.S. Employee Benefits for Bargaining Unit Employees of Nynex Meridian Systems Benefits Connection – Plus Benefit Plan, Dental Plan, Vision Care Plan, Term Life Insurance and Accidental Death & Dismemberment Plan, Short-Term Disability Plan, Long-Term Disability Plan, dated January 1993

**Exhibit 10:** Administrative Information section of Employee Benefits and Programs handbook, 1996

---

[5] Please note that given the volume of this declaration and the attached exhibits, service copies of this declaration will omit copies of the attached exhibits.

13

| | |
|---|---|
| **Exhibit 11:** | Short-Term and Long-Term Disability Plan Summary Plan Description 1996 |
| **Exhibit 12:** | Letter from Northern Telecom Inc. to Nortel Benefits Eligible Employees, dated January 1997 |
| **Exhibit 13:** | Letter from U.S. Corporate Benefits to U.S. FLEX Eligible Employees, dated August 1997 |
| **Exhibit 14:** | Northern Telecom Inc. Flex Benefits Highlights, 1997 |
| **Exhibit 15:** | Administrative Information section of Employee Benefits and Programs handbook, 1998 |
| **Exhibit 16:** | Short-Term and Long-Term Disability Plan Summary Plan Description 1998 |
| **Exhibit 17:** | Administrative Information section of Employee Benefits and Programs binder, 1999 |
| **Exhibit 18:** | Short-Term and Long-Term Disability Plan Summary Plan Description 1999 |
| **Exhibit 19:** | Administrative Information section of Employee Benefits and Programs binder, 2000 |
| **Exhibit 20:** | Short-Term and Long-Term Disability Plan Summary Plan Description 2000 |
| **Exhibit 21:** | Administrative Information section of Employee Benefits and Programs binder, 2002 |
| **Exhibit 22:** | Short-Term and Long-Term Disability Plans Summary Plan Description 2002 |
| **Exhibit 23:** | Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan Summary Plan Description 2003 |
| **Exhibit 24:** | Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan Summary Plan Description 2005 |
| **Exhibit 25:** | Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan Summary Plan Description 2007 |

| | |
|---|---|
| **Exhibit 26:** | Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan Summary Plan Description 2008 |
| **Exhibit 27:** | Nortel Networks Inc. Long-Term Disability Plan Summary Plan Description 2009 |
| **Exhibit 28:** | Nortel Networks Inc. Medical Plan Summary Plan Description 2013 |
| **Exhibit 29:** | Northern Telecom Inc. Weekly Disability and Long Term Disability Plan |

[*Remainder of page intentionally left blank.*]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 25, 2013

                                              */s/ John J. Ray III*
                                              John J. Ray III