### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nortel Networks Inc., *et al.*, | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Re: Docket Nos. 9304, 9305,  9306, 9342, 9366, 9367, 9370,,  9372,    9382, 9384, 9402, 9403, 9406, 9427, 9443, 9517, 9657, 9658, 9659, 10152, 10153, 10172, 10174, 10175, 10176, 10180, 10198, 10199, 10200, 10201, 10202, 10203, 10204, 10207, 10209, 10266, 10269, 10270,    10271, 10272, 10273,    10274, 10275, 10276, 10277, 10281, 10282, 10283,   10284, 10286, 10287, 10289, 10290, 10291, 10292, 10293, 10294, 10295, 10296, 10297, 10298, 10299, 10300, 10301, 10302, 10305, 10306,  10307, 10314, 10319** |
| OFFICIAL COMMITTEE OF LONG TERM DISABILITY PLAN PARTICIPANTS, on behalf of and as agent for a class of  individual participants and beneficiaries under various NORTEL NETWORKS HEALTH AND WELFARE BENEFIT PLANS, | |
| Plaintiffs, | |
| v. | Adversary Proc. No. 12-50995(KG) |
| NORTEL NETWORKS, INC., | **Re: Docket Nos. 1, 15, 16, 17** |
| Defendant. | |

**OMNIBUS REPLY OF THE OFFICIAL COMMITTEE OF LONG TERM DISABILITY PARTICIPANTS IN SUPPORT OF THE JOINT MOTION PURSUANT TO SECTIONS 363 AND 105 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 9019 AND 7023 TO (A) FINALLY APPROVE THE SETTLEMENT AGREEMENT, (B) FINALLY CERTIFY A CLASS, (C) AUTHORIZE THE DEBTORS TO TERMINATE THE LTD PLANS, AND (D) GRANT RELATED RELIEF**

The Official Committee of Long Term Disability Participants (the "LTD Committee")[1] of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby files this omnibus reply (the "Reply") in support of final approval of the *Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule A Fairness Hearing; and (II)(A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief* (D.I. 9304) (the "Motion")[2] and in response to the various pleadings in opposition[3] to the Motion.  In support of this Reply, the LTD Committee avers as follows:

## PRELIMINARY STATEMENT

1.    Since the appointment of the LTD Committee in August 2011, the Parties[4] have explored a consensual resolution regarding the termination of the Debtors' LTD Plans. In November 2012, after the Debtors had filed a motion seeking termination of the LTD Plans, the LTD Committee sued the Debtors in a class action for injunctive and declaratory relief relating to the Debtors' operation and proposed termination of the LTD Plans. Finally, after the exchange

---

[1]    Consistent with its Bylaws, based on their objections to the Motion (defined below), the LTD Committee voted that LTD Committee members Daniel David and Paul Morrison be subject to mandatory abstention and recusal from all committee business with respect to the Motion until the Motion is adjudicated.  Mr. David has since resigned from the LTD Committee.

[2]    All capitalized terms not defined herein shall have the same meaning as set forth in the Motion.

[3]    The failure of this Reply to address any issues raised in any objection should not be taken as a waiver or concession by the LTD Committee with respect to such issue.  The LTD Committee reserves its right to raise any and all facts or points of law as may be applicable on any issue raised in any objection or at the Fairness Hearing.

[4]    The term "Parties" herein refers to the parties to the Settlement Agreement: the Debtors, the LTD Committee, and the LTD Committee members.

of thousands of pages of information and discovery, multiple in-person and telephonic meetings, the appointment of a neutral third-party mediator, the filing of a motion seeking termination of the benefits in the event an agreement could not be reached, and hours of negotiations, all of which occurred before and after the class action was filed, the Parties reached an agreement on the resolution of the Debtors' motion to terminate the LTD Plans and the Adversary Proceeding (as defined below). That agreement is embodied in the Settlement Agreement.

2.     While the LTD Committee and its professional understand that the termination of the LTD Plans may result in hardship for certain of the LTD Employees, in entering the Settlement Agreement, the LTD Committee juggled the importance of the LTD Benefits to the members of the Settlement Class, the infeasibility of the Debtors continuing to provide the LTD Benefits at a time when the Debtors' operations have been reduced to only those most basic functions essential to complete their wind down and bankruptcy process, and the risks associated with litigation.

3.     The LTD Committee believes that the terms of the Settlement Agreement provide the LTD Employees with a fair and reasonable settlement. The fact that of the approximately two hundred LTD Employees, only eleven[5] of the LTD Employees filed substantive objections or similar pleadings (collectively, the "Oppositions")[6] to the Motion demonstrates that the majority of the LTD Employees similarly have concluded that the Settlement Agree treats them

---

[5]     Multiple objections were filed by the eleven objectors..

[6]     Some of the Oppositions, either in whole or in part, challenge the distribution methodology raised in the Distribution Motion (defined below), as supplemented, rather than approval of the Settlement Agreement. The LTD Committee will reply to these Oppositions in further detail in its reply in support of the Distribution Motion.

fairly and equitably.  In fact, thirty-eight responses in support[7] of approval of the Settlement Agreement were filed by the LTD Employees.

4.      Generally, the Oppositions raise four categories of objections to the Settlement Agreement.  First, some of the Oppositions argue that the Settlement Agreement should not be approved in its current form because the Settlement Agreement is unfair or inequitable for various reasons including, but not limited to, the belief that a greater recovery could be obtained through litigation, requests that the Settlement Amounts be allocated for the right to received medical benefits at an unknown time in the future, severance, LTIP (defined below) payments, and for retiree benefits.  Second, some of the Oppositions question the fiduciary responsibilities of the LTD Committee and its professionals and, additionally, that because the proposed Class Representatives' went out on disability under different plan years (with different plan language), the Class Representatives cannot adequately represent the Settlement Class.  Third, some of the Oppositions question the allocation methodologies of the Settlement Agreement.  Fourth, some of the Oppositions raise issues with the PBGC's assertion that the LTD Employees may not elect to take early retirement if they participate in the Settlement Agreement.

5.      None of the Oppositions provide a valid basis for denying approval of the Motion and the Settlement Agreement proposed thereunder.  The LTD Committee respectfully submits that the Oppositions should be overruled and the relief requested in the Motion be granted on a final basis.

---

[7]  *See* D.I. 9517, D.I. 9657, D.I. 9658. D.I. 10266, D.I. 10269 , D.I. 10270 , D.I. 10271 , D.I. 10272 , D.I. 10273 , D.I. 10274 , D.I. 10275 , D.I. 10276, D.I. 10277, D.I. 10281, D.I. 10282, D.I. 10283, D.I. 10284, D.I. 10286, D.I. 10287, D.I. 10289, D.I. 10290, D.I. 10291, D.I. 10292, D.I. 10293, D.I. 10294, D.I. 10295, D.I. 10296, D.I. 10297, D.I. 10298, D.I. 10299, D.I. 10300, D.I. 10301, D.I. 10302, D.I. 10305, D.I. 10306, D.I., 10307, D.I., 10314, D.I. 10317, D.I. 10319.

## BACKGROUND

6.      There are currently approximately 195 LTD Employees and certain of the LTD Employees are eligible to retire based on their age and years of service, but have not elected to do so to date.

7.      On June 22, 2011, the Court authorized the appointment of the LTD Committee as an additional statutory committee pursuant to 11 U.S.C. Section 1102 (Docket No. 5790) (the "LTD Committee Appointment Order").

8.      On August 2, 2011, the LTD Committee was formed.  The United States Trustee's Office appointed Wendy Boswell Mann, Daniel D. David, Dianna L. Irish, Paul E. Morrison, Barbara Gallagher, Michael Stutts, and Deborah Jones to serve on the LTD Committee.  *See* Amended Notice of Appointment of Unsecured Creditors (Docket No. 6080). Subsequently, Paul E. Morrison and Daniel D. David were mandatorily recused, and Daniel D. David subsequently resigned from the LTD Committee.[8]

9.      On July 30, 2012, the Debtors filed the *Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-Term Disability Plans and the Employment of the LTD Employees* (D.I. 8067), seeking authority to terminate the LTD Plans and the employment of the LTD Employees as of

---

[8]   On or about December 4, 2012, the LTD Committee voted 5 - 2 in favor of a settlement offer that was ultimately memorialized in the Settlement Agreement.  The two LTD Committee members who voted against acceptance of the settlement offer were Daniel David and Paul Morrison, each of whom has filed Oppositions to the Motion (see D.I. 9342, D.I. 9366, D.I. 10201, D.I. 10203, and D.I. 10204).  The LTD Committee respects and values Mr. David's and Mr. Morrison's contributions to the LTD Committee and understands that disagreement among committee members is vital to a properly functioning committee.  *See, e.g.*, *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1316–17 (1st Cir. 1993) (indicating committee process is enhanced when it is adversarial).  Nevertheless, Mr. David's and Mr. Morrison's objections represent their individual views only, and do not represent the views of the LTD Committee as a whole.

December 31, 2012 (the "LTD Termination Motion"). The Debtors later filed *Debtors'*
*Supplemental Submission in Further Support of Debtors' Motion for Entry of an Order Pursuant*
*to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long-*
*Term Disability Plans and the Employment of the LTD Employees* (D.I. 8878), which extended
the requested termination date for the LTD Plans and the LTD Employees' employment to
March 31, 2013, consistent with the scheduling of the ultimate hearing on the LTD Termination
Motion.

10.    During the fall of 2012, the LTD Committee and the Debtors continued to work
towards a consensual settlement that would allow the Debtors to terminate the LTD Plans while
addressing the objections raised by the LTD Committee and certain LTD Employees.

11.    On November 19, 2012, the Plaintiff filed a *Verified Complaint for Declaratory*
*and Injunctive Relief* against the Debtors (the "Class Complaint"), thereby commencing
adversary proceeding number 12-50995 (KG) (the "Adversary Proceeding"). The Class
Complaint seeks relief under the Employee Retirement Income Security Act, 29 U.S.C. § 1101,
et seq. ("ERISA"), alleging various claims for declaratory and injunctive relief, including a
declaratory judgment that the governing LTD Plan documents do not permit the Debtors to
terminate LTD Benefits for those LTD Employees who are already disabled and receiving
income continuation benefits. The Class Complaint also seeks, inter alia, equitable remedies
under ERISA for alleged breaches of fiduciary duties.

12.    On December 4, 2012, after many months of negotiation, the Debtors and the
LTD Committee, together with the Official Committee of Unsecured Creditors (the "UCC") and
the ad hoc group of bondholders (the "Bondholder Group"), and participation of counsel to the
Retiree Committee, were able to reach the primary terms of a settlement in principle. The

resulting Settlement Agreement embodies that agreement, as ultimately memorialized by the Parties.

13.     On January 18, 2013, the LTD Committee and the Debtors filed the Motion. The Motion seeks entry of an order approving certain notice procedures and forms of notice regarding the Settlement that, if approved by the Court, would settle the LTD Termination Motion and the Adversary Proceeding, as well as provide for the termination of the LTD Plans with respect to all plan participants, including the LTD Employees.

14.     On February 14, 2013, this Court entered the *Order (A) Preliminarily Approving the Settlement Agreement Regarding Long Term Disability Plans and Claims, (B) Conditionally Certifying a Class for Settlement Purposes Only, (C) Approving the Notice Procedures, (D) Scheduling a Fairness Hearing and (E) Granting Related Relief* (D.I. 9427) (the "Preliminary Approval Order").     Pursuant to the Preliminary Approval Order, the Court, inter alia, preliminarily approved the Settlement Agreement, Notice Procedures, and authorized the LTD Committee to move forward with final approval of the Settlement Agreement.

15.     The LTD Committee, pursuant to the terms of the Motion and the Preliminary Approval Order prepared, served, and filed schedules that detail the calculation of the proportional share of the Settlement Amount to be allocated to each eligible LTD Employee (as determined by the LTD Committee applying the Apportionment Methodology) (See D.I. 10042).

16.     On February 25, 2013, counsel for the LTD Committee served on all Long Term Disability Plan Participants a series of documents, including a Table of Individual Claims and Settlement Amounts, answers to Frequently Asked Questions, Estimate of Individual Allocation of Settlement Amount, Disclosure Statement and a Transcript of the February 14, 2013 proceedings in this matter.

17.    On March 21, 2013 and March 22, 2013, the LTD Committee Professionals further served on the LTD Employees a second Individualized Statement and aggregate chart that demonstrated the use of a structured settlement and a HRA in order to allow the LTD Employees to compare the tax impact of a lump sum settlement to deferred tax payments and a tax free HRA with a cap of $90,000 per individual.  The same actuarial allocation method was used in both sets of Individual Statements and aggregate charts; only the method of distribution was varied for comparison of the effect on tax liabilities and to provide a benchmark for the potential impact on various medical benefits and government programs.

18.    On April 11, 2012, the LTD Committee Professionals served upon each individual LTD Employee an additional Individual Statement and aggregate chart showing the effect of a $60,000 HRA cap per individual, as well as an Individual Statements detailing the $60,000 cap, with and without the use of an annuity to defer payments.

19.    The same day, the LTD Committee filed the *Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (D.I. 10049) (the "Distribution Motion").  The Distribution Motion seeks (i) approval of the structure and method of the proposed distribution of certain settlement funds, (ii) approval of disclosure and notice regarding the proposed distribution including, but not limited to, related tax implications and the potential effect on medical and government benefits, and (iii) approval of tax withholding and tax noticing procedures for the LTD Employees.  The Distribution Motion was supplemented on April 23, 2013.

20.    As part of the process approved by the Preliminary Approval Order, the LTD Committee and Debtors have provided notice of the Settlement through various avenues, including by the service of a Settlement Notice, a Publication Notice, and service of three

Individualized Settlement Notices, in addition to multiple conference calls with groups of the LTD Employees and calls with individual LTD Employee's counsel, tax advisors and medical benefits counselors. Additionally, several "town hall" meetings were held in conjunction with the Retiree Committee's efforts to provide notice of the Retiree Committee Settlement with the Debtors, at which counsel for the LTD Committee participated in answering questions put forth by LTD Employees regarding the Settlement Agreement, the Retiree Settlement, and the potential impact of both on LTD Employees. The LTD Committee also responded to numerous inquiries through the LTD Committee's official website and through direct inquiry as to the details of the Settlement Agreement as contemplated by the Preliminary Approval Order and prior protective orders entered by this Court to allow the LTD Committee to execute its duties under Bankruptcy Code Section 1102 (b)(3). In addition, counsel for the LTD Committee has performed a series of educational teleconferences with the LTD Employees to address the Settlement Agreement.

## ARGUMENT

### The Settlement Agreement Treats All LTD Participants Fairly and Equitably

21.     Oppositions filed by Daniel David (D.I. 9342; D.I. 10201), Jerry Wadlow (D.I. 9367) and Marilyn Day (D.I. 9370) request that the Court deny the Motion on the grounds that the Debtors can not retroactively terminate long term disability benefits for those who are already disabled and in pay status and, therefore, the Settlement Amount is deficient. This is one of the arguments set forth by the LTD Committee in *The Official Committee Of Long Term Disability Participants' Objection to the Debtors' Motion For Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363 and 1108 Authorizing the Debtors to Terminate the Debtors' Long Term Disability Plans and the Employment of the LTD Employees* (D.I. 8840) (the "LTD Committee

Objection to Motion to Terminate"). Nevertheless, these Oppositions do not provide a valid basis for declining to approve the Motion and the Settlement Agreement and do not provide a basis for concluding that the settlement is inadequate or unfair.

22.     One of the primary motivations for settlement for the LTD Committee was to eliminate and address the significant litigation risk involved with pursuing a contested trial over issues exactly like the pay status issue. The LTD Committee agrees with the objectors on the strength of this argument, however, the LTD Committee does not believe in the apparent lack of risk that Mr. David, Ms. Day and Mr. Wadlow attribute to this argument.

23.     Along similar lines that the Settlement Agreement is unfair, Emily Cullen (the "Cullen Objection") (D.I. 10207) contends that her choice not to elect medical coverage for the 2013 plan year should not preclude her from receiving value for her potential to elect medical coverage in future years. Ms. Cullen is incorrect. Ms. Cullen admits that she purposely chose not to elect medical coverage for the 2013 LTD plan year[9]. Cullen Objection at ¶ 13. Because she is not receiving medical coverage, the proposed distribution methodology values her medical coverage at $0. This is perfectly reasonable. The heavily-negotiated Settlement Amount was arrived at by, among other things, looking at the current benefit amounts Nortel was providing to the LTD Employees until they reached age 65. Those amounts provided a baseline from which the LTD Committee was able to determine whether the Settlement Amount was fair and reasonable.

24.     While the LTD Committee is sympathetic to Ms. Cullen's position, taken to its logical conclusion, the result would be untenable. For example, LTD Employees can elect medical coverage for their spouses or dependants. For those that have done so, the LTD

---

[9]   Ms. Cullen also did not elect medical coverage for the 2011 and 2012 LTD plan years.

Committee's distribution methodology has assigned a positive value for their medical coverage. For those that have not, the value assigned is $0. The LTD Committee cannot create a distribution methodology based on every potential future election an LTD Employee may or may not make. To do so would create a windfall for some LTD Employees who can do without such coverage, while creating heavy burdens on others who must rely on such coverage for survival. Moreover, the need for a record date for eligibility—in this case, benefits received for plan year 2013—is an appropriate, practical and fair methodology for distribution of the Settlement Amount to LTD Employees.

25.    Other Oppositions request that "the Retiree Committee pay the LTD participants, who are eligible for retiree benefits, the sum of their forecasted benefit amount on LTD Employee's termination as of June 30, 2013." *See* D.I. 10153, D.I. 10172, D.I. 10176, D.I. 10180, D.I. 10200, D.I. 10204, D.I. 10209.[10]    Again, the basis of these objections seems to be that the settlement is unfair. None of these objectors filed responses to the approval of the retiree settlement and now they want more than what any of the retirees are to receive. The Settlement Agreement provides the LTD Employees the right to choose between the LTD settlement or the retiree settlement. This approach is consistent with the prior practice of the Debtors – employees could not receive both LTD benefits and retiree benefits at the same time.

26.    These same Oppositions request that the Debtors "pay severance allowance for LTD participants contingent to the Employee's termination as of June 30, 2013." *See* D.I. 10153, D.I. 10172, D.I. 10176, D.I. 10180, D.I. 10200, D.I. 10204, D.I. 10209. However, the

---

[10] These same objectors have also requested that the Debtors' major medical insurance companies provide each one of the LTD participants with the letter of policy termination 25 days prior to termination. The LTD Committee understands that such a letter will be mailed to each of the LTD Employees in a matter of days making this request moot.

Settlement Agreement specifically excludes claims arising under or relating to the Nortel Networks Severance Allowance Plan or the Nortel Networks Enhanced Severance Allowance Plans, including related fringe benefits from the definition of LTD Claims and, as such, claims for severance under these plans are not part of the Settlement Agreement.  To the extent that any LTD Employee is entitled to severance under these severance plans, their rights to severance are not impacted in any way by the Settlement Agreement and are explicitly reserved vis a vis the Settlement Agreement, and any order which approves the Settlement Agreement, as claims under those plans are excluded from the settlement.

27.    The same Oppositions request that the Debtors compensate the LTD Employees for certain payments that are allegedly due and owing under the Long Term Investment Plan ("LTIP").  *Id.*   The LTIP benefit, similar to a 401K match, was historically provided to LTD Employees but it was terminated in June 2012.  As a benefit provided to LTD Employees, the LTD Committee determined, after consultation with its professionals, that it was appropriate to allocate a portion of the Settlement on account of this benefit.  Accordingly the LTIP is included in the definition of "LTD Plans" set forth in the Settlement Agreement.  The LTD Employees' rights to the amounts that are properly vested in individual LTIP accounts at the time of the plan termination (subject to investment loss) are not in any way impacted by the Settlement Agreement and are "Excluded Claims" in the Settlement Agreement.  The objectors' requests for LTIP funds from the termination of the LTIP plan that are above and beyond the amounts allocated to such claim in their Individual Settlement Notices ignores the fact that compromise and release of LTIP claim is an essential element of the Settlement Agreement.

28.    What all of these objectors fail to recognize that the Settlement Agreement is a compromise of the legal positions set forth by the LTD Committee and the Debtors.  The

Settlement Agreement represents a definite and balanced solution for the termination of the LTD Plans and is the result of months of good faith, arm's length negotiations and voluminous informational and document discovery. No settlement will be a perfect fit for every LTD Employee and the Settlement Agreement is fair and equitable to the LTD Employees as a <u>whole</u>.

29.    While the LTD Committee does not concede on any of the arguments and allegations set forth in the LTD Objection to the Motion to Terminate and the Class Complaint, there is risk associated with litigating any issue before a court. The documents filed by the LTD Committee speak for themselves as to which arguments the LTD Committee believes were valid or perferred. While the LTD Committee believes that the arguments and allegations have merit, the Debtors have strongly opposed this view and have maintained that the Debtors have the right to amend or terminate all of the LTD Plans. The LTD Committee and its professionals, after the exchange of thousands of pages of information and discovery, multiple in-person and telephonic meetings, the appointment of a neutral third-party mediator, the filing of the LTD Committee Objection to Motion to Terminate, the commencement of the Adversary Proceeding and after hours upon hours of negotiations, concluded that the compromise embodied in the Settlement Agreement represented a fair and reasonable settlement.

30.    When negotiating a settlement that will affect approximately 200 disabled people with divergent medical needs and interests, it is simply not possible to craft a solution that will be ideal for each individual's unique situation. Assertions that the Settlement Agreement should have been negotiated with each and every LTD Employee (D.I. 9367) are impracticable and would defeat the purpose of a committee or class. The LTD Committee was represented by experienced and competent counsel and financial advisors who worked tirelessly to represent the interests of all of their constituents. The LTD Committee recognized that there is risk associated

with litigation and the compromise embodied in the Settlement Agreement reflects a compromise taking into account such risk.  While the objectors may feel that the Settlement Amount is insufficient, it should be taken into account that the Debtors previously sought to terminate the LTD Plans which would have provided zero recovery to the LTD Employees.  Absent approval of the Settlement Agreement, the LTD Committee's expectation is that the Debtors will seek a non-consensual termination of the LTD Plans on similar terms.  The Settlement Agreement is a fair compromise that treats all of the LTD Employees equitably, and is in the best interests of the LTD Employees.

31.    Furthermore, the settlement timing has proven to be optimal. First, settlement earlier this year facilitated the ability of the LTD Committee to negotiate a sale of the proposed settlement consideration and has eliminated the risk of funds not being available when benefits are terminated.  Funds will be immediately available once the settlement is approved, as the sale is contingent on approval of the settlement, and the LTD Employees will not have to wait for payment of claims at a future time, which at minimum, cannot be until after plan confirmation. Though no one knows for sure when a plan will be confirmed in this case, it will certainly not occur in the near future.  Second, though the purchase price is confidential, the fact that a fixed price is part of the sale terms eliminates any risk of market fluctuation.

**Adequate Representation**

32.    Several of the Oppositions assert that there is an appearance of unfair representation on the LTD Committee because the majority of the LTD Committee members fall in one group (the 2002 - 2010 group).[11]   It has been asserted that five of the seven LTD

---

[11]    *See* objections filed by Daniel David (D.I. 9342; D.I. 10201), Ernest Demel (D.I. 9381; D.I. 9382), and Charles V. Barry (D.I. 9372).

Committee members became disabled between 2002 and 2010 which "giv[es] the appearance of unfair representation and misguided conclusions" based on Mr. David's incorrect assumption that those in this time period have some inferior legal claim to benefits. (David Objection at ¶20). This is simply incorrect.  In fact, one member of the LTD Committee member who became disabled prior to 2002, Michael Stutts, who became disabled in the same year as Mr. David, voted *in favor* of the settlement offer.  Any assertion that the LTD Committee members who voted for the settlement have somehow unfairly represented the entire LTD constituency is completely unfounded.

33.    These same objectors have also raised the similar objection regarding an alleged unfair representation of those in the LTD group who became disabled prior to 2002.  These Oppositions are based on one of the objector's "opinion and assumption" that those LTD participants who became disabled between 1981 - 2001 plan years are "not being represented in an appropriate manner" and his request that this Court award that group "100 percent of LTD income continuation claim payments in cash." *See* David Objection, D.I. 9342 at ¶¶32, 37. *See, also* Demel Objection, D.I. 9381 at ¶2; and D.I. 9382 at ¶2; Barry Objection, D.I. 9372 at ¶12. These responses are premised on factual inaccuracies.  As is more fully set forth in the LTD Committee Objection to Motion to Terminate, the central legal issue argued by the LTD Committee was that the reservation of rights relied upon by the Debtors as a basis to terminate the LTD Plans did not reserve the right to unilaterally terminate benefits for those already disabled and in pay status and that to impose such a reservation of rights would have made the promise of LTD benefits illusory.  This argument applied to the *entire* LTD group.

34.    Moreover, the LTD Committee (including Dan David and Paul Morrison at that point in time), on behalf of a class consisting of all LTD Employees, authorized the

commencement of the Adversary Proceeding against the Debtors by filing the Class Complaint. The Class Complaint asserted, *inter alia*, breach of fiduciary duty claims under ERISA which were common to <u>all</u> in the LTD constituency no matter when an individual became disabled. The settlement reached with the Debtors includes the settlement of the Class Complaint.

35.     The fact remains that the LTD Committee was formed by the Office of the United States Trustee and appointed by the Court to serve as "the authorized representatives of the LTD Plan Participants in connection with the modification or termination of the LTD Plan, and any claims related thereto." (D.I. 5790 at 2). The selection of the members of the LTD Committee was made exclusively by the United States Trustee, in accordance with the Bankruptcy Code. *See* 11 U.S.C. § 1102(a)(2). The members serve on the LTD Committee, like all official committees in bankruptcy, on a voluntary basis. Assertions that the LTD Committee members are receiving compensation for their service (*See* D.I. 9367) are unfounded and are being invoked by certain objectors to create mistrust amongst the LTD Employees for the benefit of the objectors. In forming the LTD Committee, the United States Trustee considered the appointment of individuals who expressed an interest in serving on the LTD Committee and, from those individuals, selected those whom the United States Trustee found capable of serving on the LTD Committee.

36.     There is no requirement that the committee exactly mirror the demographics of the creditor class it represents. *In re Hills Stores Co.*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992) (stating "[n]owhere does the Code mandate a committee faithfully reproduce the exact complexion of the creditor body. What is required is adequate representation of various creditor types."); *see also In re Garden Ridge Corp.*, No. 04-10324, 2005 WL 523129, at *3 (Bankr. D. Del. March 2, 2005) ("There is no hard and fast rule requiring proportionate representation of

distinct groups of creditors on a committee of unsecured creditors."); *In re Dow Corning Corp.*, 194 B.R. 121, 141 (Bankr. E.D. Mich. 1996) (finding no requirement that creditors' committee be exact reflection of members).

37.     Committees in bankruptcy cases, including the LTD Committee here, are tasked with representing the interests of their constituency in chapter 11 proceedings.  Committees will employ all means necessary to benefit the entire constituency of creditors with the clear purpose of optimizing the financial outcome for its constituents.  Ultimately, a committee will decide what outcome of the chapter 11 proceedings best suits its constituents.  Committees are obligated to protect the financial interests of their constituents while simultaneously protecting their rights as a constituency.  Great emphasis is placed on the notion that committees must provide a voice for all constituents of the class.

38.     The LTD Committee's fiduciary duties have been fully explained and argued in other papers filed by the LTD Committee in this matter and will not be repeated here.  The LTD Committee has fulfilled its fiduciary duties, including the duty of care.  The disabilities of the members of the LTD Committee have not impeded these fiduciary duties in any way.  The LTD Committee obtained a fair and reasonable settlement, engaged professionals (EG as its bankruptcy counsel, constituency counsel and ERISA counsel, A&M as its financial advisor, Towers Watson as its actuaries, and Maxwell as its tax counsel) to ensure competent representation of the constituents' interests with care to be accurate, and preserved the confidentiality of sensitive information obtained in the course of representation.

39.     The LTD Committee has, in the exercise of its fiduciary duties, investigated, examined and analyzed a multitude of complex issues related to the termination of the LTD Plans including opposing the LTD Termination Motion and commencing the Adversary

Proceeding and eventually entering into the Settlement Agreement on behalf of all LTD Employees.

40.    Cullen (D.I. 10207) raises a further argument related to adequacy of representation.  She contends that since the proposed Class Representatives' went out on disability under different plan years (with different plan language) than her own,[12] the Class Representatives cannot adequately represent the Settlement Class pursuant to Fed. R. Civ. P. 23(a)(3) (typicality) and (a)(4) (adequacy).  Cullen is incorrect on both points.

41.    Federal Rule of Civil Procedure 23(a)(4) requires that "the representative parties [in a class action] . . . fairly and adequately protect the interests of the class."  With respect to a challenge of the adequacy the Class Representatives, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class."  *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012).  Not all intra-class conflicts will defeat the adequacy requirement—a conflict must be "fundamental" to violate Rule 23(a)(4).  *See Id.* at 184 (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)).  While a "conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental and can thus render a representative plaintiff inadequate ...[a] conflict that is unduly speculative ... is generally not fundamental."  *Id.*

42.    Here, there was no conflict at all.  As explained in the LTD Committee's omnibus reply in support of preliminary approval of the Settlement Agreement and conditional certification of a settlement class (D.I. 9406), the central legal issue argued by the LTD

---

[12] As set forth above, this position is inaccurate as at least one proposed Class Representative became disabled prior to 2002.

Committee in its Class Complaint was that the reservation of rights relied upon by the Debtors as a basis to terminate the LTD Plans did not reserve the right to unilaterally terminate benefits for those already disabled and in pay status and that to impose such a reservation of rights would have made the promise of LTD benefits illusory. This argument applied to the _entire_ LTD group. The Class Complaint asserted, _inter alia_, breach of fiduciary duty claims under ERISA which were common to _all_ in the LTD constituency no matter when an individual became disabled.

43.     Even if this Court were to find that a conflict existed because other language in the various plans that did not form the basis of the Class Complaint, the conflict would not be "fundamental" because the "conflict" asserted by Cullen is unduly speculative. Cullen argues, without support, that the fact that the SPD governing her claim does not contain any "terminable at will language" and others means that she has "different legal theories and remedies available" to her. Cullen Objection at ¶¶ 52-53. While the absence of certain language in a plan may give Ms. Cullen a different legal argument, she provides no evidence such an argument would be successful. This Court should not deny class certification on such speculation.

44.     Moreover, as the Sixth Circuit observed in _Gooch v. Life Investors Ins. Co. of Am._, 672 F.3d 402, 429 (6th Cir. 2012):

> each class member naturally derives different amounts of utility from any class-wide settlement. An older or even a particularly myopic representative plaintiff, for example, might value a front-loaded settlement more than other members of the class. A coupon-clipping representative plaintiff may derive more utility from a coupon-based settlement than other members of the class. To hold that these differing valuations by themselves render the representative plaintiff inadequate would all but eviscerate the class action device.

_Dewey v. Volkswagen Aktiengesellschaft_, 681 F.3d at 186-87.

45.     Other Oppositions seek denial of Class Certification because of the misconception

that the LTD Employees do not have the opportunity to object or audit the disbursement allocation (D.I. 9366, D.I. 9372). The fact that the objectors filed responses directly contradicts this statement. Moreover, as set forth in detail above, the LTD Committee has made every effort to keep the individual employees informed. When requested by the LTD Employees, counsel for the LTD and the actuaries retained by the LTD Committee provided detailed back up materials, provided detailed written explanations of the actuarial analysis and held conference calls with the LTD Employees – all in efforts to inform and educate the LTD Employees of the actuarial analysis that went into the allocation of the Settlement funds. Furthermore, individualized statements have been sent to the LTD Employees to allow them to compare three different individualized claim scenarios, both to assist in planning and to allow for the very audit and objection process they complain does not exist.

46.    These Oppositions should be overruled, the Settlement Class should be conditionally certified, and Wendy Boswell Mann, Dianna Irish, Barbara Gallagher, Michael Stutts and Deborah Jones, should be appointed as Class Representative.

**PBGC Issues**

47.    Some individuals within the constituency are eligible for the Nortel Networks Retirement Income Plan (hereafter "Pension Benefits"). Nortel's pension plan is currently being administered by the Pension Benefit Guarantee Corporation ("PBGC").

48.    Several[13] of the Oppositions request that the "PBGC allow the LTD Participants to participate in their pension plan contingent to the Employee's termination as of June 30, 2013 and the expiration of the severance pay period." D.I. 10153, D.I. 10172, D.I. 10176, D.I. 10180, D.I. 10200, D.I. 10204 and D.I. 10209. Counsel for the PBGC advised pension-eligible LTD

---

[13]  *See* D.I. 10153, D.I. 10172, D.I. 10176, D.I. 10180, D.I. 10200, D.I. 10204 and D.I. 10209.

Employees who have made inquiries to the PBGC, and similarly advised counsel for both the LTD Committee and the UCC, that the PBGC may view the receipt of Settlement funds as precluding the commencement of Pension Benefits before age 65, thus precluding the eligibility for "Early Retirement" or "Disability Retirement," if applicable.   According to the PBGC, assessments of the effect of the Settlement Agreement on pension-eligible LTD Employees will not be made until the Court enters its final order approving the Settlement (the "Final Order") and, thereafter, on individualized assessments of the Settlement apportionment received by pension-eligible LTD Employees.   Accordingly, the LTD Committee continues to advise the LTD Employees to carefully consider the implications of the PBGC's current position, as well as seek independent advice and counsel regarding these benefits.

**Allocation Methodology is Appropriate**

49.     Mr. David's objection, and some other objections who have joined or used his template, has taken issue with the actuarial methodology used by the LTD Committee's professionals.  The primary objection has been that the settlement funds for the medical benefits should be calculated based on "apportionment" rather than "averaging" methodology.  These Objections provide a series of definitions for apportionment and averaging which frankly do not adequately describe any accepted actuarial terminology.

50.     For the medical benefit calculation, the use of aggregating medical claims on a group basis is a common actuarial practice. The average medical claim was developed based on the historical experience of this specific population. HIPAA restrictions limit the availability of data which prevents the use of individual medical claim history. Further, the allocation of medical benefits in this settlement is consistent with the development of the medical claim estimate which was calculated on a group basis.

51.     In addition, actuarial standards of practice indicate that projecting benefits based on an individual's personal medical experience would violate credibility standards. The LTD Committee's actuaries have found no examples of insurance practice that estimate projected events solely based on an individual's personal medical experience. Lastly, in conjunction with the items discussed previously, it is impractical to project medical benefits based on an individual's experience because of privacy restrictions. Even if one could ignore the fact that this approach violates all known actuarial standards, even one LTD Employee denying access to their information would render the exercise moot. These objections appear to request that individual personal medical experience substitute for accepted actuarial practice and the LTD Committee requests that for these reasons the oppositions be overruled.

## NOTICE

52.     Notice of this Motion has been provided to (a) counsel to the Debtors; (b) counsel to the Creditors' Committee; (c) counsel to the Retirees Committee; (d) the United States Trustee for the District of Delaware; (e) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; and (f) all individuals who filed objections to the Motion.

## CONCLUSION

WHEREFORE, for these reasons, as wells as the reasons provided in fuller detail in the Motion, the LTD Committee submits that the Settlement Agreement is a reasonable compromise and respectfully requests that this Court grant the Motion and enter the Order to (A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief .

Dated:  April 25, 2013
       Wilmington, Delaware

**ELLIOTT GREENLEAF**

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
Eric M. Sutty (DE Bar No. 4007)
Jonathan M. Stemerman (DE Bar No. 4510)
1105 North Market Street, Suite 1700
Wilmington, Delaware  19801
Telephone:  (302) 384-9400
Facsimile:  (302) 384-9399
Email:  rxza@elliottgreenleaf.com
Email:  sak@elliottgreenleaf.com
Email:  ems@elliottgreenleaf.com
Email:  jms@elliottgreenleaf.com

*Counsel to the Official Committee of Long Term Disability Participants*