IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nortel Networks Inc., *et al.*, | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Re: Doc Nos. 9304, 9366, 9370, 9372, 9387, 9657, 9658, 9659, 10049, 10124, 10127, 10141, 10168, 10172, 10174, 10184, 10191, 10194, 10202, 10205, 10208, 10217, 10218, 10236, 10237, 10239, 10248, 10252, 10258, 10260, 10266, 10279** |

OMNIBUS REPLY OF THE OFFICIAL COMMITTEE OF
LONG TERM DISABILITY PARTICIPANTS TO OBJECTIONS TO
THE MOTION FOR APPROVAL OF DISTRIBUTION AND RELATED RELIEF

The Official Committee of Long Term Disability Participants (the "LTD Committee")[1] of

the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby files this omnibus

reply (the "Reply") to the objections (collectively, the "Objections") to the *Motion of the Official*

*Committee of Long Term Disability Participants for Approval of Distribution and Related Relief*

(D.I. 10049) (the "Distribution Motion").[2]   In support of this Reply, the LTD Committee

represents as follows:

PRELIMINARY STATEMENT

1.      Since the filing of the *Joint Motion Pursuant to Sections 363 and 105 of the*

*Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(A) Preliminarily Approve the*

---

[1]      All capitalized terms not defined herein shall have the same meaning as set forth in the Joint
Settlement Motion unless otherwise defined herein.

*Settlement Agreement Regarding Long Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule a Fairness Hearing; and (II)(A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief* (the "Joint Settlement Motion") on January 18, 2013, the professionals retained by the LTD Committee (the "LTD Professionals") have worked diligently to craft a means and method of distributing the Settlement Amount to the LTD Employees in a manner that would be most beneficial to the constituency.

2.      On April 11, 2013, the LTD Committee filed the Distribution Motion, which seeks (i) approval of the structure and method of the proposed distribution of certain settlement funds, (ii) approval of disclosure and notice regarding the proposed distribution including, but not limited to, related tax implications and the potential effect on medical and government benefits, and (iii) approval of tax withholding and tax noticing procedures for the LTD Employees.  In accordance with its fiduciary duties, the LTD Committee proposed in the Distribution Motion the use of an annuity which could potentially prevent the application of the doctrines of constructive receipt and economic benefit to the settlement funds.[3]

3.      Pursuant to the Distribution Motion, the LTD Committee sought to have each LTD Employee's allocated share of the Settlement Amount placed in a VEBA trust in which up to $60,000 of the individual LTD Employee's Settlement Amount would be placed in a Health Reimbursement Account (an "HRA"), with the balance being used for the purchase of an annuity

---

[3]    Footnote 22 to the Distribution Motion states "The LTD Committee will continue to investigate any other conservative mechanisms to bolster the security of the funds in the VEBA, including but not limited to the requirement of a bond for funds held in a VEBA under ERISA, combined with the fiduciary duty obligations of the VEBA trust board."

that would make periodic payments to the LTD Employee. The LTD Committee intended to obtain a Private Letter Ruling from the IRS to confirm the tax benefits of this distribution scheme.

4.    The LTD Committee advocated this distribution scheme because of the potential tax savings to the LTD Employees. However, several circumstances made the purchase of an annuity less attractive; therefore, the LTD Committee and its Professionals determined that the remaining balance of the LTD Employee's allocated Settlement Amount could be placed in a new income continuation plan, in the form of a disability plan (the "VEBA LTD Plan"). Accordingly, on April 23, the LTD Committee filed the *Supplement to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (the "Supplement") (D.I. 10254).

5.    Use of the VEBA LTD Plan could preserve approximately $2.6 million in Settlement funds for the benefit of LTD Employees. The costs for the VEBA plan administrator are projected to be $330,000 for four years, and the total administrative costs, inclusive of those costs, is approximately $1.6 million. In contrast, if there was merely a lump sum distribution with no HRA, and no VEBA LTD Plan, the net variance is approximately $5.3 million.

6.    Twenty-two LTD Employees filed Objections in regards to the Distribution Motion and Supplement.[4] A larger number of LTD Employees submitted responses in favor of

---

[4]    *See* D.I.s 9366, 9370, 9372, 9387, 9657, 9658, 9659, 10124, 10127, 10141, 10168, 10172, 10174, 10184, 10191, 10194, 10202, 10205, 10208, 10217, 10218, 10236, 10237, 10239, 10248, 10252, 10258, 10260, 10266 and 10279. Some of the LTD Employees filed multiple Objections. Additionally, some of the Objections were filed in regards to the Joint Settlement Motion, but included argument(s) related to distribution issues.

the Settlement.[5]  Generally, the Objections raise three categories of objections to the Distribution

Motion.[6]  First, some of the Objections are general objections to the distribution procedures

proposed.  Second, some of the Objections are based on a preference to receive the Settlement

Amounts in one lump sum, despite the potential adverse tax consequences.[7]  Third, certain

Objections raise issues with the VEBA/HRA/LTD Plan components of the distribution scheme.

7.      None of the Objections provide a valid basis for declining to approve the

Distribution Motion.  The LTD Committee respectfully submits that the Objections should be

overruled and the relief requested in the Distribution Motion and Supplement be granted on a

final basis.

## RELEVANT BACKGROUND

8.      There currently are approximately 195 LTD Employees; certain of the LTD

Employees are eligible to retire based on their age and years of service.

9.      On February 14, 2013, this Court entered the *Order (A) Preliminarily Approving*

*the Settlement Agreement Regarding Long Term Disability Plans and Claims, (B) Conditionally*

---

[5]  *See* D.I.s 9657, 9658, 10218, 10266, 10269, 10270, 10271, 10272, 10273, 10274, 10275, 10276, 10277, 10281, 10282, 10283, 10284, 10286, 10287, 10289, 10290, 10291, 10292, 10293, 10294, 10295, 10296, 10297, 10298, 10299, 10300, 10301, 01302, 10305, 10306, 10307 and 10314.

[6]  The failure of this Reply to address any issues raised in any Objection should not be taken as a waiver or concession by the LTD Committee with respect to such issue.  The LTD Committee reserves its right to raise any and all facts or points of law as may be applicable on any issue raised in any Objection or at the Fairness Hearing.

[7]  The following LTD Employees have requested to receive their respective Settlement Amounts in one lump sum:  David Litz (D.I. 10124); Kerry Logan (D.I. 10127); Vernon Long (D.I.s 10172 and 10208); Emily D. Cullen (D.I. 10217); Cynthia Battle Richardson (D.I. 10218); Daniel D. David (D.I. 10236); Jerry L. Wadlow (D.I. 10237); Rahul Kumar (D.I. 10239); Najam ud Dean (D.I. 10248); and John J. Rossi (D.I. 10260).  Besides these 10 LTD Employees, certain other LTD Employees have requested variations of a lump sum payment.

*Certifying a Class for Settlement Purposes Only, (C) Approving the Notice Procedures, (D) Scheduling a Fairness Hearing and (E) Granting Related Relief* (D.I. 9427) (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Court, inter alia, preliminarily approved the Settlement Agreement, Notice Procedures, and authorized the LTD Committee to move forward with final approval of the Settlement Agreement.

10.    The LTD Committee, pursuant to the terms of the Joint Settlement Motion and the Preliminary Approval Order prepared, served, and filed schedules that detail the calculation of the proportional share of the Settlement Amount to be allocated to each eligible LTD Employee (as determined by the LTD Committee applying the Apportionment Methodology) (*See* D.I. 10042).

11.    On February 25, 2013, counsel for the LTD Committee served on all Long Term Disability Plan Participants a series of documents, including a Table of Individual Claims and Settlement Amounts, answers to Frequently Asked Questions, Estimate of Individual Allocation of Settlement Amount, Disclosure Statement and a Transcript of the February 14, 2013 proceedings in this matter.

12.    On March 21, 2013 and March 22, 2013, counsel for the LTD Committee served on all Long Term Disability Plan Participants a series of additional documents, including a Disclosure Statement, Letter in Support of Updated Individual Settlement Notice, Individual Settlement Amounts and a Revised Estimate of Individual Allocation of Settlement Amount with Tax Efficient Treatment.

13.    On April 11, 2012, the LTD Committee Professionals served upon each individual LTD Employee an additional Individual Statement and aggregate chart showing the

effect of a $60,000 cap per individual, as well as an Individual Statements detailing the $60,000 cap, with and without the use of an annuity to defer payments.

14.     As part of the process approved by the Preliminary Approval Order, the LTD Committee and Debtors provided notice of the Settlement through various avenues, including by the service of a Settlement Notice, a Publication Notice, and service of three Individualized Settlement Notices, in addition to multiple conference calls with groups of the LTD Employees and calls with individual LTD Employee's counsel, tax advisors and medical benefits counselors. Additionally, several "town hall" meetings were held in conjunction with the Retiree Committee's efforts to provide notice of the Retiree Committee Settlement with the Debtors, at which counsel for the LTD Committee participated in answering questions put forth by LTD Employees regarding the Settlement Agreement, the Retiree Settlement, and the potential impact of both on LTD Employees.  The LTD Committee also responded to numerous inquiries through the LTD Committee's official website and through direct inquiry as to the details of the Settlement Agreement as contemplated by the Preliminary Approval Order and prior protective orders entered by this Court to allow the LTD Committee to execute its duties under Bankruptcy Code Section 1102 (b)(3).  In addition, counsel for the LTD Committee has performed a series of educational teleconferences with the LTD Employees to address the Settlement Agreement.

## ARGUMENT

**A.     General Objections to Distribution**

15.     Various LTD Employees request in their Objections that the disbursement of funds should be audited by an "independent auditor not currently employed by the Debtors." *See* D.I. 9366; *See also* D.I. 9370, D.I. 9372, D.I. 10174 and D.I, 10202.  These Objections appear to confuse the fact that, while LTD Committee's counsel and other professionals are paid out of the

Debtors' estate, they are not employed by the Debtors.  In fact, the work performed by the LTD Committee and its professionals has been adverse to the Debtors since the LTD Committee's inception.  The Debtors pay the fees of the LTD Committee's professionals because they are required to do so under the Bankruptcy Code.  The Debtors have no control over the actions of the LTD Committee or its professionals.  The LTD Committee only has fiduciary duties to the LTD Employee constituency--not the Debtors.  The LTD Committee's fiduciary duties to the LTD Employee constituency guide the actions of the LTD Committee's professionals.[8]

16.     Moreover, the settlement alternative selected is the LTD Plan combined with the HRA medical plan, all of the funds and disbursements held in the VEBA trust will be subject to a required annual audit by an independent certified public accounting firm as long as there are at least 100 participants participating in the VEBA trust at the beginning of the year.  When the beginning of the year participant count drops below 100, the VEBA Committee will have the option of continuing to engage an independent certified public accounting firm to audit the plan annually but will not be statutorily required to do so.  In any event, the VEBA Committee will be required to prepare and file annual information returns for the Department of Labor until the VEBA trust is terminated and all funds have been distributed.

17.     If the settlement alternative selected involves payment of a lump sum or purchase of the annuity, an annual independent audit is not statutorily required.  As both of these options involve an immediate disbursement of the funds by an independent disbursing agent, an

---

[8]     In addition, counsel to the LTD Committee has a duty to the Court.  As officers of the Court, LTD Committee counsel owes an additional duty of honesty to the Court to fairly administer justice.  *See Burtch v. Luminescent Sys.* (*In re AE Liquidation, Inc.*), 2012 Bankr. LEXIS 5710, at *8 (Bankr. D. Del. Dec. 11, 2012) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)) ("Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients.").

independent audit may not be required.  However, the disbursement agent will have to make an accounting of the disbursements to the LTD Committee.

18.     Certain Objections also were concerned with the estimated administrative fees. *See* D.I. 10217, D.I. 10236, D.I. 10237 and D.I. 10279.  However, the original assumption (4%) was used at the beginning of the modeling process as a placeholder until better data as to actual expected administrative cost could be collected by the LTD Committee.  The LTD Committee has now received more accurate information regarding potential administrative fees and has incorporated the more detailed estimates into the modeling.  Estimated fees, which include costs of seeking a private letter ruling from the IRS, VEBA compliance and oversight, HRA management[9], disability plan management, etc., total approximately 9% (the fees of $1.6 million are approximately 9% of the total $26,640,000.00).  The LTD Committee justifies the additional costs because of the tax and benefit issues detailed in the Distribution Motion and the Supplement.  While the LTD Committee has been able to quantify the tax impact of FICA and income tax, based upon the income from the settlement, the LTD Committee is not privy to the individual tax burden of income from other sources or the effect of higher income on access to medical care, such as increased Medicare premiums.  The estimated tax and benefit savings are likely larger than the estimated $5.3 million when taking other income into account.

19.     A few of the Objections have questioned the LTD Committee's authority to advocate a distribution method without consulting each and every individual LTD Employee. *See* D.I. 10208, D.I. 10217, D.I. 10236 and D.I. 10237.  The LTD Committee, pursuant to Bankruptcy Code Section 1103(c)(5), which provides that a Section 1102 committee has the

---

[9]    There are additional fees related to the HRA accounts.  There will be three items charged monthly against the participant's HRA balance during the period they maintain a balance in their HRA account.  When the account balance is exhausted, the charges will cease.

power and duty to "perform such other services are in the interest of those represented," is broad and provides ample authority to seek an appropriate method of distribution of the settlement proceeds. Indeed, the LTD Committee has argued in the Distribution Motion that assessing the effect of distribution and proposing an appropriate solution to tax and benefit issues is an obligation of the LTD Committee. The Objections that assert that the Bankruptcy Code does not provide the LTD Committee with the authority to propose a plan of distribution and seek court approval of the same are simply wrong.

20.     The LTD Committee's responsibility is to the LTD Employee constituency as a whole. While the LTD Committee has sought input and clarification on various issues from the constituency, it has been very careful to avoid engaging in any activity that would create a conflict of interest or violate its fiduciary duties. In addition, the LTD Committee has been advised by tax counsel that consulting each individual LTD Employee could result in adverse tax consequences for not only individual LTD Employees, but the constituency as a whole because of the doctrines of constructive receipt and economic benefit. Constructive receipt and economic benefit have been detailed in the Distribution Motion.

21.     The LTD Committee has done everything in its power to provide the individual LTD Employees notice of the proposed distribution issues and to solicit feed back, as set forth in detail above in the "Relevant Background" section. Further evidence of the LTD Committee's efforts is reflected in the number of responses filed to the Settlement and Distribution Motions: There were a total of 38 LTD Employees who filed responses in Support of the motions, and 22 LTD Employees who objected to the Distribution Motion.

22.     The LTD Committee and its Professionals have carefully considered multiple options for disbursement of the funds in a way that provides as much benefit and with relatively

low risk and appropriate cost. It is grossly unfair, unfounded and unsupported to allege that the LTD Committee operated with any other intent. Assertions that there are "other alternatives to create tax shelters without jeopardizing the LTD Participant's estate by entering into a trust where the trust beneficiaries benefit from an LTD Participant passing away" (D.I. 10141, D.I. 10200, D.I. 10217, D.I. 10236 and D.I. 10237) has been unsupported to date by any objection, whether informal or formal, or from any individual LTD Employee or their advisors. The LTD Committee has investigated multiple alternative options and none have proven fruitful. The existing tax solutions available in the market or authorized by state or federal statute are exclusively for those who have settlements for physical injury (including some limited exceptions for worker's compensation awards) and not any other type of settlement, including, significantly, the settlement of employment plan related disputes. *See*, IRC section 104(a)(2) and I.R.S. Lawsuits, Awards, and Settlements Audit Techniques Guide, Audit Guide Rev. 5/2011 (providing a detailed overview of the treatment of lawsuit, settlements and awards proceeds received after August 21, 1996, the date of enactment of the Small Business Job Protection Act of 1996 (SBJPA) which revised IRC § 104(a)(2)).

**B.     Preference for Lump Sum Payment**

23.     The LTD Committee is sympathetic to those LTD Employees who have filed Objections to the Distribution Motion because they would like to receive their Settlement Payment in one lump sum. Some of the LTD Employees have cited their short life expectancy as the rationale for their request (D.I. 10124, D.I. 10127, D.I. 10217 and D.I. 10258); others want to use the money for pressing financial obligations, such as home mortgages (D.I. 10218). Some want to make sure they have the financial means to take care of other family members (D.I. 10184 and D.I. 10258) and the ability to leave something to their heirs or designated

beneficiaries if they should die (D.I. 10141, D.I. 10184, D.I. 10217, D.I. 10236, D.I. 10257 and

D.I. 10252).  Some of the LTD Employees believe that they could better use the money for

higher risk investments. D.I. 10141, D.I 10208, D.I. 10236 and. D.I. 10237  There are also three

known LTD Employees who currently reside outside the United States.  One LTD Employee

who lives in India filed an Objection as he is unable to utilize an HRA and fears double taxation

related to the disability plan installment payments. D.I. 10239

      24.     While the LTD Committee is sympathetic to those who would prefer one lump

sum payment, the LTD Committee represents the group as a whole and believes it is in the best

interest of the group to distribute the Settlement Amounts in the most tax-efficient method

possible.  The tax implications for one lump sum payment are burdensome as demonstrated by

using the data available to the LTD Committee and its advisors and for some members of the

constituency these consequences could be truly devastating the further out from retirement an

LTD Employee might be.

      25.     Some Objections indicate that the LTD Employee would prefer to take the

medical deductions on their own as medical expenses over 7.5% of Adjusted Gross Income are

already deductible.  D.I. 10217.  However, there is generally a tax advantage to not being taxed

at all.  There is a tax benefit in an exclusion as opposed to having taxable income and paying a

deductible expense even over the 7.5% floor.  But certainly up to that floor, the LTD

Committee's advisors believe it is better to have an exclusion rather than taxable income and a

nondeductible expense.  It is also more convenient for the LTD participant to deal through the

HRA, particularly if a debit card[10] arrangement is in place, rather than having to save all

---

[10]   The IRS has issued guidelines for how debit cards and the like can be used in connection
     with the HRA; it is the intention to request that the administrator adopt this approach if it is

individual receipts to substantiate her or his right to the deduction for a return to be filed for each year the following April.

26.    The LTD Committee is also concerned at the apparent lack of understanding as to its role regarding the taxation impact and the tax analysis in which it engaged.  D.I. 10208, D.I. 10217, D.I. 10236 and D.I. 10237.  First, the analysis was not done an individual tax basis.  It was done conservatively in order to provide the entire constituency with the potential impacts/worst case scenario and looked at benefit to the aggregate.  The LTD Committee has put forth individual statements as illustrations that would assist in the individual LTD Employee analyzing her or his specific circumstances, provided information on Medicare counseling and other resources and offered to assist the LTD Employees in discussions with their advisors. Some of the Objections argue that the tax savings are overestimated because they do not include other sources of income.  D.I. 10141 and D.I. 10205.  This would actually mean that the illustrations would *underestimate* the tax impact and call for *more* conservative measures.

27.    While the LTD Committee is open to any judicial solution to address the aforementioned distribution issues, it is steadfast and adamant that it cannot deviate from addressing the issues outside assistance from the Court.  However, there are certain issues discussed in the Objections over which the LTD Committee has serious concerns.

28.    The LTD Committee is aware that it may be possible for individual LTD Employees to obtain a higher yield on the investment of their Settlement Amounts.  However, the LTD Committee has a fiduciary duty to advocate for a safe means of distribution;

---

12
    feasible so that the LTD Employees do not have to pay for their medical expenses upfront

participation in a high yield and inherently high risk investment could have a ruinous effect if the investment is not successful.

29.     The LTD Committee is very concerned that some LTD Employees believe that making an adjustment or self-selection through a W-4 or other tax form will provide a solution to the tax issues. D.I. 10236 and D.I. 10237. An LTD Employee cannot avoid tax burdens associated with a lump sum payment by merely checking "sick pay" on their W-2 form as asserted in certain Objections. Nor will an Order of the Court stating that the settlement payment is "sick pay" camouflage the Settlement Payment and bar taxing authorities from ignoring the character of the funds as settlement without any known exclusion from taxation. In its fiduciary capacity, the LTD Committee will not subject itself or the settlement proceeds to the risk of penalty associated with such actions.

## C.     Objections to the VEBA and HRA

30.     The use of a VEBA, contrary to certain Objections, is not "illegal" under the circumstances. D.I 10208, D.I. 10236 and D.I. 10237. A VEBA can be organized to benefit retired or former employees. The arrangement is considered "voluntary" even if membership is required so long as the members do not suffer a financial detriment or cost as a result of being a member of the VEBA. Treas. Reg. §1.501(c)(9)-2(c)(2). Far from imposing a cost on the members, The LTD Committee is proposing a VEBA to avoid tax on the earnings on the fund, to provide non-taxable benefits (the HRA), and tax deferral and no FICA tax on the disability income payments.

31.     The VEBA will have to qualify by applying to the IRS for tax exemption. The principal tax benefit of qualified VEBA status is that the earnings of the VEBA on investing its

13
and wait for reimbursement.

funds pending distribution are not subject to tax.  Even if the VEBA fails to qualify for tax exempt status, a trust will be necessary to administer the HRA and the disability plan will still be required and the VEBA trust structure can still administer the plans.  Medical and disability benefits are among those that are typically provided by qualified VEBAs.  If the HRA payments and reimbursements and disability income distributions made by the VEBA are administered in accordance with the IRS rules, the VEBA is the appropriate vehicle to administer these plans and the rules and process for complying with the IRS expectations are clear, known and predictable which makes the use of a VEBA a conservative method of administering the plan.

32.    Obtaining a Private Letter Ruling should erase the fear of using the VEBA for tax purposes.  Fears of those who objected because they thought the HRA or VEBA could be cancelled at any time misunderstand the process and the use of the VEBA, which will place the management of the settlement funds under a trust board which will have to act within their fiduciary duties to maximize and preserve the settlement fund.  D.I. 9659, D.I. 10236 and D.I. 10237.  Any implication that unauthorized withdrawal of the funds from the LLC or VEBA trust would be protected from civil or criminal prosecution is unfounded.  Additionally, the VEBA trustees will have fiduciary duties and appropriate insurance will be purchased. Such insurance is currently budgeted as an administrative cost, including directors and officers insurance and errors and omissions insurance.  Moreover, the trust documents will require the trustees to administer the funds in accordance with, among other things, the tax rules.  Using appropriate and experienced HRA and disability plan administrators includes having the proper protections, such as indemnity and for those professionals to carry appropriate insurance themselves.

33.    The HRA is intended to operate as long as financially beneficial to the participants. Once the cost to operate the HRA plan exceeds any projected benefit, it is

14

reasonable to assume that the VEBA trustees/Committee will liquidate the plan upon such determination and distribute the remaining funds to the participants in accordance with the VEBA plan. For modeling purposes, the HRA plan has been projected to operate a minimum of four years. However, it is currently expected that the HRA plan will operate as long as the plan benefit, for the participants, exceeds the annual cost of operating the VEBA trust. Based upon current estimates, the HRA plan could likely operate in excess of four years.

34.    Some LTD Employees do not want the proposed portion of their Settlement Amounts put into an HRA as they do not believe they will use it due to either the nature of their disability, their life expectancy, or because they have other insurance coverage. D.I. 9387, D.I. 10141, D.I. 10172, D.I. 10194, D.I. 10205, D.I. 10218, D.I. 10245, D.I. 10258 and D.I. 10260. Others do not think that certain medical expenses will be reimbursable. D.I. 10141. The medical expenses that can be paid or reimbursed are specifically designated by the IRS, and likely not every circumstance and expense facing a LTD participant will be covered. However, to the extent the expenses and circumstances are covered, this is a nontaxable benefit.

35.    Significantly, two Objections included assertions that LTD Employees would not be able to use the HRA to pay for a spouse's health insurance premiums. D.I. 10184 and D.I. 10258. Tax Counsel for the LTD Committee has confirmed that this is not the case. A spouse's medical insurance premiums are approved expenses under IRC §213(d), which governs for purposes of HRAs. *See* IRS Publication 502, Medical and Dental Expenses (2012).

36.    Some LTD Employees object to the use of an HRA because it does not allow for the designation of beneficiaries. D.I. 10141, D.I. 10208, D.I. 101217, D.I. 10236 and D.I. 10237. In the event an LTD Employee dies without a spouse or qualified dependents, her or his unused HRA amounts revert back to the VEBA for further disbursement in the funds administered for

the benefit of the HRA.  The fact that the disability plan would end upon death is exactly what the LTD Employees have now under their current medical plan.  The termination of benefits upon death is in the nature of the LTD Employees current medical plan and is standard practice. However, unlike the current medical plans, the HRA can be used by surviving spouses and qualified dependents until the HRA account is expired.  The LTD Employees also do not pay taxes on their current medical plan benefits.  Qualifying the payments as disability income has the potential of achieving significant FICA tax savings and in order to utilize those tax savings, the settlement cannot become an unrestricted cash payment.

37.    A significant difference between what the LTD Employees have now and would have under the proposed distribution is that they currently have life insurance.  While there are settlement funds that are attributed to their current life insurance plan, and this was a plan that is part of the Settlement Agreement, because of the nature of their health, it is unlikely that any of the LTD Employees can be insured.  The LTD Committee acknowledges and regrets that there are limits to the settlement and that this is one of them, but it is a limit that is not related to the use of an HRA or disability plan, but rather that the only settlement that the LTD Committee was able to achieve in regard to life insurance was a monetary settlement and not replacement insurance.

38.    Likewise, some of the Objections believe that the proposed $60,000 cap is too high as they only estimate they will use a fraction of the funds.  D.I. 10168, D.I. 10191, D.I. 10205 and D.I. 10258.  Other Objections claim that the LTD Committee has set a cap of $60,000 as a function of needing a threshold to administer the HRA.  D.I. 10217.  These assertions are unfounded and untrue.  The LTD Committee's professionals used the $60,000 cap because this was an estimate of average medical expenses to be incurred over the next four years.

39.    Further, some Objections assert that the money in the HRA will be devalued due to inflation in an amount greater than any tax advantage.  Given the current low interest rate environment this argument is fairly weak. The treasury rates as of 4/24/2013 are as follows:

1 year = 0.13%
2 year = 0.23%
3 year = 0.34%
5 year = 0.7%[11]

There are countless articles about pension funds, etc. all having trouble producing more than a few percentage points of return.  Assuming no significant changes in the market, the return from investing the money conservatively over three to four years is unlikely to be better than the tax savings. Of course the LTD Committee cannot forecast interest rates, but it can pursue a conservative course of action that will preserve, though perhaps not grow, the settlement fund.

40.    The expectation is that LTD constituents will use up their HRA account as soon as possible.  If an LTD Employee uses it up all in the first year, they will gain a significant advantage over taking a lump sum payment and paying current year taxes.  However, if instead an LTD Employee uses very little of the HRA account during the expected four year life of the HRA plan, the HRA account balance will not have grown as HRA accounts often do not accrue interest.

41.    The LTD Committee assumed that the average LTD constituent could use up the HRA account within four years (actually the LTD Committee thought sooner than that based on the population's aggregate medical claim rate).  However, medical inflation is significant (estimates include figures of between 6 to 8% a year).  For example, assume an HRA participant will have an HRA account set up in 2013 with $60,000 and that he will submit $15,000 of

---

[11]  http://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yield

reimbursable medical expenses per year. Inflation has been relatively low for the past few years and no one can forecast whether or not inflation rates between 2013 and 2017 will be greater than or less than the potential tax savings. Assuming markets remain stable, the tax savings would be expected to exceed the rate of inflation.

42.     Similarly, certain LTD Employees object to the proposed Disability Plan installment payments because they assert that the tax benefit is not substantial. D.I. 10205. However, if, as is hoped, the installments qualify as disability income payments, the FICA tax savings are truly substantial.

43.     Certain LTD Employees who filed Objections claim that they are being discriminated based on their age regarding the distribution of the installment payments citing to 26 U.S.C. 72. D.I. 10208, D.I. 10236 and D.I. 10237. Internal Revenue Code section 72 sets forth the rules for how owners of annuities are taxed. Perhaps these objectors are upset that the older constituents are not allowed to spread their payments over multiple years but are instead required to receive their payments in either one or two years. Internal Revenue Code section 72 does not address discrimination, merely taxation. However, the payment schedule is simply equivalent to the payments that the LTD Employees would have received over the next four years based upon the number of years left until retirement. As the benefit plans are terminated, arguably, at age 65, assuming one survived until 65 years of age, the distribution is simply a reflection of age as opposed to any alleged discrimination. Similar arguments were made that the proposed distribution method does not seem to be in the interest of a majority of participants because it helps a minority of LTD Employees receiving the largest settlements to the detriment of other LTD Employees receiving less. D.I. 10217 and D.I. 10279. Whoever pays the most in taxes is going to get the most tax savings, but just because certain LTD Employees have a

smaller settlement, does not mean, and it is illogical to believe, that they won't receive a tax benefit.

44.     Certain LTD Employees would also prefer fewer installment payments. D.I. 10205. However, the selection of up to four payments reflects the LTD Committee's attempt to balance three important objectives including (1) a desire to approximate the amount of annual benefits after the settlement to those paid by Nortel prior to the settlement, (2) a desire to reduce the constituents' adverse income tax ramifications by spreading the taxable benefits over a few years, and (3) a desire to minimize administrative costs.

45.     It was recognized that personal circumstances of each individual LTD constituent will vary and that some might prefer their benefits to be paid quicker or slower. However, in the aggregate, it was thought that spreading the payments over a period of up to four years was a reasonable compromise.

## NOTICE

46.     Notice of this Reply has been provided to (a) counsel to the Debtors; (b) counsel to the Creditors' Committee; (c) counsel to the Retirees Committee; (d) counsel to the ad hoc Bondholders Group; (e) the United States Trustee for the District of Delaware; (f) all individuals who filed objections to the Distribution Motion; (g) all LTD Employees; and (h) all parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

## CONCLUSION

WHEREFORE, the LTD Committee respectfully requests that this Court enter the proposed Order attached to the Distribution Motion granting the Motion of the Official

Committee of Long Term Disability Participants for Approval of Distribution and Related Relief, and grant such other and further relief as deemed just and proper.

Dated:  April 25, 2013          **ELLIOTT GREENLEAF**
         Wilmington, Delaware

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
Eric M. Sutty (DE Bar No. 4007)
1105 North Market Street, Suite 1700
Wilmington, Delaware  19801
Telephone:  (302) 384-9400
Facsimile:  (302) 384-9399
Email:  rxza@elliottgreenleaf.com
Email:  sak@elliottgreenleaf.com
Email:  ems@elliottgreenleaf.com

        and

Mary E. Kohart
Margaret S. Curran
ELLIOTT GREENLEAF
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
Telephone:  (215) 977-1000
Facsimile:  (215) 977-1099
Email:  mek@elliottgreenleaf.com
Email:  msc@elliottgreenleaf.com

        and

E. Morgan Maxwell, III
P.O. Box 876
Southeastern PA 19399
Telephone:  (610) 640-9481
Facsimile:  (484) 801-1439
Email:  morganmaxlaw@comcast.net

*Counsel to the Official Committee of Long Term Disability Participants*