**EXHIBIT B**

**<u>Declaration of John J. Ray III</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- X
                                                           :
*In re*                                                    :    Chapter 11
                                                           :
Nortel Networks Inc., *et al.*,[1]                         :    Case No. 09-10138 (KG)
                                                           :
                                 Debtors.                  :    Jointly Administered
                                                           :
                                                           :
---------------------------------------------------------- X


**DECLARATION OF JOHN J. RAY III IN SUPPORT OF**
**DEBTORS' MOTION FOR ENTRY OF AN ORDER SHORTENING NOTICE**
**RELATING TO DEBTORS' MOTION FOR AN ORDER APPROVING**
**NNI'S ENTRY INTO A SUBLEASE TERM SHEET AND**
**SUBLEASE AGREEMENT AT FACILITY IN RALEIGH, NORTH CAROLINA**

I, John J. Ray III, declare under penalty of perjury as follows:

1.      On January 6, 2010, upon the motion of Nortel Networks Inc. ("NNI") and the

other above-captioned debtors (together, the "Debtors"), I was appointed by this court as

Debtors' Principal Officer, *nunc pro tunc* to December 7, 2009.  I am also Senior Managing

Director and the sole member of Avidity Partners, LLC.

2.       Except as otherwise indicated, all facts set forth in this declaration are based

upon my personal knowledge, information supplied to me by other members of the Debtors'

management and professionals based on, among other things, a review of the Debtors' files,

books and records, or learned from my review of relevant documents or are based upon my

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their
petitions are available at http://dm.epiq11.com/nortel.

opinion, which is founded upon my experience and knowledge of the Debtors' operations.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this declaration.

3.      I submit this declaration in support of the Debtors' Motion for Entry of an Order Shortening Notice Relating to Debtors' Motion for an Order Approving NNI's Entry into a Sublease Term Sheet and Sublease Agreement at Facility in Raleigh, North Carolina, filed as of April 25, 2013 (the "Motion")[2].

4.      NNI currently is the tenant under an existing lease with U.S. Bank National Association, (as successor trustee to State Street Bank and Trust Company) as owner trustee of ZSF/Research Gateway Trust, dated July 27, 2001, for the Facility (the "Master Lease"), which includes the Subleased Premises.  The Facility consists of office, electronic laboratory and warehouse space used by NNI in connection with its businesses prior to its various divestitures.  NNI assumed the Master Lease in late 2009 pursuant to section 365 of the Bankruptcy Code in connection with the closing of the sale of the CMDA and LTE business to Telefonaktiebolaget L. M. Ericsson ("Ericsson").  See Order Authorizing and Approving (A) the Sale of Certain Assets of the Debtors' CDMA and LTE Business Free and Clear of All Liens, Claims and Encumbrances, (B) the Assumption and Assignment of Contracts and (C) the Assumption and Sublease of Certain Leases, dated July 28, 2009 [D.I. 1205].

5.      NNI subsequently subleased approximately 54% of the rentable square footage available under the Master Lease to third parties, including purchasers of certain former Nortel businesses, GENBAND US LLC ("GENBAND"), Avaya Inc. and Ericsson (collectively, along with any other subtenants at the Facility, the "Existing Subtenants").  NNI uses some of the

---

[2]        Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

remaining office space for its residual winddown activities, and the remaining rentable square

footage available under the Master Lease currently remains unused.

6.      In an effort to obtain value for the unused rentable square footage at the Facility,

NNI has marketed the available space since September 2012 with the assistance of CB Richard

Ellis-Raleigh, LLC ("CBRE Raleigh").  Among other things, CBRE Raleigh implemented a

marketing campaign that included listing the Facility locally and nationally, having the Facility

featured in a local business journal and hosting regular tours of the Facility.  Based on these

efforts, along with the Debtors' and CBRE Raleigh's understanding of local market conditions,

the Debtors believe that the Sublease contemplated by the Term Sheet represents the highest or

best offer for use of the Subleased Premises and that the execution of the Term Sheet, and

ultimately the Sublease, are in the best interests of the Debtors, their estates, creditors and other

parties in interest.  The Sublease will allow NNI to collect revenue for a majority of the space

that is currently unused under the Master Lease.

7.      In furtherance of NNI's entry into the Term Sheet and Sublease, NNI intends to

negotiate a separate agreement with GENBAND, pursuant to which GENBAND would

surrender a portion of the space it currently occupies at the Facility to NNI and would otherwise

relocate within the Facility in order to make the Subleased Premises available for sublease to

IBM.  In connection with this agreement, GENBAND would receive a rent credit over the

balance of its sublease term.

**B.     Term Sheet**

8.      After arm's-length, good faith negotiations between the Sublandlord and the

Subtenant and their respective advisors, the Sublandlord has agreed, among other things, to the

Term Sheet that contemplates the entry into a lease for the Subleased Premises in accordance

with the terms and conditions of the Term Sheet, subject to this Court's approval and any other

required third-party consents and other conditions.    The Subtenant also required that the Term

Sheet contemplate the execution of a Sublease by May 15, 2013 so that IBM may commence

improvements to the Subleased Premises prior to moving operations to the Subleased

Premises.  For the reasons noted above, it is in the best interest of the Debtors' estates to have the

Term Sheet approved by this Court as soon as possible.  Absent a hearing of the Approval

Motion on May 7, 2013, there is a substantial risk that NNI will be unable to execute the

Sublease and obtain the attendant benefits to its estate.  For these reasons, the Debtors believe

that a hearing on the Approval Motion on shortened notice is in the best interests of the Debtors'

estates and creditors.

[*Remainder of Page Intentionally Left Blank.*]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  April 25 , 2013

John J. Ray III