## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Nortel Networks Inc., *et al.*,[1] | ) Case No. 09-10138 (KG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Re: Docket Nos. 9304 and 10049** |
| | ) |

## DECLARATION OF MICHAEL STUTTS

I, Michael Stutts, declares as follows:

1.       I am a member of the Official Committee of Long Term Disability Participants (the "LTD Committee") of Nortel Networks, Inc, *et al.* (the "Debtors"). I respectfully submit this Declaration based upon personal knowledge to serve as my direct testimony in support of the *Joint Motion Pursuant To Sections 363 and 105 of The Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, and (D) Schedule A Fairness Hearing; and (I)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, and (D) Grant Related Relief* (the "LTD Settlement Motion") (Docket No. 9304) and *Motion of the Official Committee of Long Term Disability*

---

[1]       The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

*Participants for Approval of Distribution and Related Relief* (the "Distribution Motion")
(Docket No. 10049).

2.      I was hired fresh out of school in 1987. I held increasingly responsible
positions in several Debtor marketing organizations within multiple technologies and
business units in North Carolina and Texas. I was a Director in one of the Debtors'
contracts management shops on October 29, 2000, when a motor vehicle accident
precipitated a departure from the workforce. I spent the next 6 years undergoing and
rehabilitating from between 30 and 40 surgeries to repair mostly orthopedic damage to all
extremities. Personal long-term disability status began April 2001.

3.      My current condition is that of a 54 year-old with multiple severe,
permanent and obvious physical disabilities by federal standards. Physical disabilities
include: a) left leg above knee amputee with prosthesis; b) non-functioning right hand:
nonunion and failed hardware; and c) nerve damage in all extremities: no functioning
opposable thumbs, significantly reduced fine motor skills, significantly decreased to zero
sensation in all extremities. However, my cognitive function is fine. Since reaching a
rehabilitation plateau approximately six years ago, I have been a stay-at-home parent,
doing light housekeeping. I play three-finger piano, hold a pen weird and my handwriting
is atrocious. Since the summer of 2010, I have served on various committees seeking
consideration for the plight of Nortel Network's U.S. LTD employees. I hold an MBA
from the University of North Texas and a Bachelor of Music, Composition from the
Berklee College of Music.

4.      I have been an active participant in every aspect of the LTD Committee's
responsibilities during this bankruptcy. I was appointed by the U.S. Trustee to a seven
member LTD Committee in August 2011. The LTD Committee retained Elliott

Greenleaf as its counsel, Alvarez & Marsal and Tower Watson as financial advisors and actuaries, respectively. The LTD Committee also sought authority and was approved by the Court to retain tax counsel to assist its professionals.

5.    The Debtors have fought our constituency intensely both before the formation of the LTD Committee and since its appointment. The Debtors assert that they have an absolute right to terminate the long-term disability benefits without paying long-term disability employees ("LTD Employees") anything. I believe that the LTD Committee was forced to sue the Debtors via a class action in order to convince the Debtors that they had any litigation risk all in regard to the termination of the LTD benefits. I believe that, to have a chance of obtaining a larger settlement, the LTD Committee and the Nortel long-term disability constituency would be forced to litigate a contentious and risky litigation on all sides

6.    Further litigation presents significant and very real risk that our constituency cannot afford because they need medical care and the disability insurance proceeds owed to us by the Debtors is our replacement income (and for some, the only source of income).

7.    If the settlement agreement is not approved and the Debtors reinstate the litigation both as to the Termination Motion and the Long Term Disability class action, LTD Employees could receive nothing unless they convince the Court in litigation that they are entitled to compensation or replacement benefits. Confidentiality prevents me from making a more detailed statement about litigation risk or the analysis or advice of any of the LTD Committee professionals or what I know as a benefit of the mediation or settlement discussions, but the heated nature and complexity of the litigation as

demonstrated by the public record in this case is obvious to an objective observer that there is serious litigation risk involved.

8.    It is important that I state my support of the LTD Settlement because it has been alleged that our Committee has not adhered to its fiduciary duties to watch out for the entire constituency, including certain minority groups within the larger group. This is simply untrue. The Committee exercised the utmost care in performing its fiduciary duties to the constituency. When examining any course of action, our guide was to safeguard the rights of all constituents while seeking mitigating solutions for subpopulations that may be adversely impacted. Any LTD Employees who perceived themselves to be an outliers with truly extraordinary circumstances have been encouraged and expected to file an objection or reply for the Court's consideration. Committee resources have been made available to assist all constituents with their filings.

9.    As I have related in this statement, our class complaint was what I and ALL members of the LTD Committee, past and present, believed was necessary to convince the Debtors and other parties opposing our claim in this matter that they had litigation risk. We all approved the complaint, believing that the conduct of the Debtors in executing their fiduciary duties was actionable and that our constituency shared common ground in that the Debtors had aggrieved us in the manner in which they had executed those duties and with the manner in which they were going to terminate the LTD plans. This was evidenced by all seven members of the LTD Committee approving the class action and agreeing to act as class representatives.

10.    Though it has been alleged that those in certain plan years have not been protected by the LTD Committee and that votes were cast to treat certain years unfairly and for the benefit of a majority of certain plan years that predominate the LTD

4

Committee membership, such an allegation is simply false as is evident from the papers filed and arguments approved by the LTD Committee already on record.

11.    It has also been alleged that no LTD Committee member from certain allegedly "better" plan years voted to approve the settlement; that is simply not so. Though I disagree that there is a viable argument that we did not pursue on behalf of any part of our constituency, as alleged in some objections, I am a member of the plan year 2001, which has been alleged in certain objections to have been disadvantaged by the LTD Committee because of lack of representation. *Objection of the Debtors Motion to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C) Approve the Notice Procedures and (D) Scheduling a Fairness Hearing and (II)(A) Finally Approve the Settlement Agreement (B) Finally Certify a Class (C) Authorize the Debtors to Terminate the LTD Plans and (D) Grant Related Relief* (Daniel D. David, D.I. 9342; Charles V. Barry, D.I. 9372 and Ernest Demel, D.I. 9381); *Declaration of Ernest Demel in Support of Daniel D. David's Objection to Debtors Motion to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long Term Disability Plans and Claims, (B) Conditionally Certify A Class for Settlement Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule a Fairness Hearing; and (II)(A) Finally Approve the Settlement Agreement, (B) Finally Certify A Class, (C) Authorize the Debtors to Terminate the LTD Plans and (D) Grant Related Relief* (D.I. 9382); and *Objection to Debtors Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long-Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice*

*Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (Daniel D. David, D.I. 10201; and Emily D. Cullen, D.I. 10207).  Our committee has relied on the extensive legal analysis by its counsel and assistance from its financial advisors and actuaries and to carefully - and at great expense to our personal health and time - make very difficult decisions and do so diligently and dutifully for all the LTD Employees.  I and the other members of the LTD Committee voted our conscience and pursuant to a duty to all LTD Employees, not to favor any group or certainly our individual interests in the case.

12.    I am not alone in approving the settlement as 20 other LTD Employees who became disabled in the plan years of 2001 and prior have also filed responses in support of the settlement.  (Adella Venneman, D.I. 10269; Thelma Watson, D.I. 10270; Kenneth Hazelrig, D.I. 10274; Remajos Brown, D.I. 10284; Pamela Powell, D.I. 10286; Nancy Wilson, D.I. 10287; Caroline Underwood, D.I. 10291; Judy Schultheis, D.I. 10292; Jane Neuman, D.I. 10294; Olive Jane Stepp, D.I. 10297; Vada Wilson, D.I. 10298; Charles Sandner, D.I. 10300; Victoria Anstead, D.I. 10302; Sandra Aiken, D.I. 10306; Janette Head, D.I. 10307; Bruce Turner, D.I. 10314; David A. Fox, D.I. 10319; Norma Dekel, D.I. 10327; and Leona Purdum, D.I. 10341.)

13.    For these reasons, I believe the Court should approve the Settlement and Distribution Motions.

*[Intentionally left blank]*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: _April 29, 2013_

Michael Stutts

7