FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
|  | **Re: Docket Nos. 10049 and 10254** |

## DECLARATION OF CHARLES A. HENDERSON

I, Charles A. Henderson IV, declare as follows:

1. I am a Managing Director with Alvarez & Marsal Taxand, LLC ("A&M") and have over 22 years of tax and consulting experience. Prior to A&M I spent approximately 16 years with Arthur Andersen and KPMG where I consulted with public company clients and their creditors, shareholders and employees. In my practice, I work closely with client management teams to identify, design and manage solutions for their federal, international and state tax issues generated by multifaceted business operations. This includes consultation regarding business acquisitions, dispositions, and financing, liquidation and reorganization transactions. I consult with chief financial officers, tax directors, treasurers, creditors and investors regarding tax efficient methods to accomplish the needs of the business operations.

---

[1] The Debtors, along with the last four digits of each Debtors' federal tax identification number, are: Nortel Networks Inc (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc (0358), Northern Telecom International Inc (6286), Nortel Networks Cable Solutions Inc. (0657) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

2. I hold a bachelor's degree in accountancy from Mississippi State University and a masters degree in taxation from the University of South Carolina. I am a Member of the Georgia Society of Certified Public Accountants, Tennessee Society of Certified Public Accountants and the American Institute of Certified Public Accountants ("AICPA"). I am a licensed Certified Public Accountant in Georgia and Tennessee.

3. The purpose of this Declaration is to describe the assumptions and methodology applied in estimating the LTD population's projected tax liability in each of the four scenarios selected by the LTD Committee, described more fully below.

4. Exhibit 1 to the Declaration of Richard Mizak (D.I. 10382) contains four columns that show the final scenarios selected by the LTD Committee. The scenarios shown from left to right included: (a) a lump sum distribution of all proceeds; (b) a lump sum distribution of the income replacement portion of the settlement plus an HRA credit of up to $60,000 per participant for the health care component of the settlement; (c) a VEBA LTD Plan containing periodic distributions of the income replacement portion ("disability plan") of the settlement based on each participant's years remaining to retirement plus an HRA credit of up to $60,000 per participant for the health care component of the settlement; and (d) the purchase of an annuity to make periodic distributions of the income replacement portion of the settlement based on each participant's years remaining to retirement plus an HRA credit of up to $60,000 per participant for the health care component of the settlement. The rows in the table flow from top to bottom, starting with the gross amount of the Allowed Claim, and then making various deductions arriving at the net benefit to the LTD participants for each of the four scenarios.

5. The Income Tax estimates for the broad population are for U.S. Individual Income Tax and Federal Insurance Contributions Act ("FICA") Tax purposes only. Any applicable state or local taxes were not included in the analysis.

6. The line items Income Tax (Estimate) and FICA Tax (Estimate) were calculated as follows:

*Income Tax (Estimate)*

7. In calculating the population's estimated U.S. Individual Income Tax liability in each of the four scenarios', participant by participant calculations were prepared based upon the projected settlement benefits for each participant. The only income data available for the calculations was the aforementioned participant's respective share of the settlement.

8. The participant's filing status, marital status; number of dependents, or any additional exemption information was not available.

9. Therefore, two calculations were prepared for each scenario using a single tax rate schedule and a married filing joint tax rate schedule.

10. The single calculation included a $3,900 exemption for the single person and the married filing joint calculation included a $7,800 exemption for the married participant and their spouse.

11. It was further assumed that each participant received Social Security Disability Insurance of $8,000 per year.

12. If was further assumed that each participant claimed the standard deduction (Itemized deductions were excluded) available for each respective filing position.

13. After discussing with the LTD Committee and their counsel, it was determined that, since the individual participant's filing position, other income or any deductions were unknown, using the single filer tax position provided the more conservative tax estimate.

*FICA tax (Estimate)*

14. Income continuation benefits paid pursuant to a qualified disability plan are assumed exempt from FICA Tax.

15. Lump sum payments and annuity payments paid outside of a qualified disability plan were assumed to be subject to FICA Tax. Any amounts credited to an HRA account are exempt from FICA or U.S. Individual Income Tax as long as the funds are disbursed for qualified medical expenses in accordance with the plan.

16. FICA stands for "Federal Insurance Contributions Act" tax and is a United States Federal payroll (or employment) tax imposed on both employees and employers to fund Social Security and Medicare – federal programs that provide benefits for retirees, the disabled, and children of deceased workers. Social Security benefits include old-age, survivors, and disability insurance (OASDI); Medicare provides hospital insurance benefits for the elderly.

17. The FICA Tax calculations assumed that the payer of the Lump-sum and the annuity would be responsible for withholding and paying both the employee and the employer portion of the FICA Tax. The payer of the Lump-sum and annuity was considered subject to the requirement to pay/withhold the employer's portion of the FICA Tax because the settlement agreement provides that if the Allowed Claim were sold, Nortel would no longer be responsible for the payment of associated employment taxes.

Accordingly, it was assumed that the sale of the Allowed Claim shifted Nortel's liability for the employer portion of the FICA Tax to the new payer.

18. The FICA Tax was calculated based on the amount of each individual's lump-sum payment and annual income replacement distribution from an annuity. Disbursements up to $113,700 are taxed at 15.3%, annual payments of between $113,700 and $200,000 at 2.9%, and annual payments in excess of $200,000 at 3.8%.

**Tax Benefits Associated with the VEBA LTD Plan**

19. There are two main tax benefits associated with the VEBA LTD Plan: FICA tax benefits and U.S. individual income tax benefits.

*A.     FICA Tax Benefits*

20. Payments of the benefits through the VEBA LTD Plan, a subsequent disability plan, are assumed exempt from FICA tax. The IRS has long held that payments pursuant to a qualified disability plan from VEBA trust are exempt from FICA. Therefore the VEBA LTD Plan with the subsequent disability plan and the HRA account balance is estimated to have zero FICA tax liability.

21. A lump-sum payment of settlement proceeds outside of a qualified disability plan would be subject to FICA tax when the "unrestricted funds" are paid to the recipient. The settlement proceeds in a lump-sum scenario have been estimated to result in a $2,592,000 FICA tax liability which will be withheld from the settlement proceeds.

22. A lump-sum payment with a $60,000 maximum credit per participant to an HRA account will result in an estimated $1,989,000 FICA tax liability which will be withheld from the settlement proceeds.

23.   An annuity payment plan with a $60,000 maximum credit per participant to an HRA account will result in an estimated $2,506,000 FICA tax liability which will be withheld from settlement proceeds. Even though there will be approximately $6,375,000 of HRA balance contribution to a VEBA trust, the fact that the payments are made over several years will result in a larger portion of the payments to be subject to the entire FICA tax. In the lump-sum scenario, several of the participants will exceed the annual FICA base of $113,700 and only pay the Medicare portion (2.9% or 3.8% depending on the amount of the payment) of the FICA tax on the proceeds over the $113,700. The annuity payment plan would subject a larger portion of the proceeds to the FICA tax base over multiple years.

B.   *U.S. Individual Income Tax Benefits*

24.   Payment of the benefits through the VEBA LTD Plan, a subsequent disability plan, are assumed to be subject to U.S. Individual income tax as the payments are received by the participants in the plan, as they are today when participants receive their monthly checks from the Nortel LTD plan. The payments from the disability plan will be paid over different periods of time based upon the participants' historical years to retirement. The participants will receive their disability payments as long as they continue to meet the disability plan requirements. The estimated U.S. individual income tax for the population pursuant to the disability plan and with a $60,000 maximum credit per participant to an HRA account is approximately $2,440,000.

25.   A lump-sum payment of settlement proceeds outside of a qualified disability plan will be subject to U.S. Individual income tax upon receipt and has been

estimated to result in $6,556,000 of U.S. Individual income tax which will be withheld from the settlement proceeds.

26. A lump-sum payment of settlement proceeds outside of a qualified disability plan with a $60,000 maximum credit per participant to an HRA account will result in an estimated U.S. Individual income tax of $3,678,000 which will be withheld from the settlement proceeds.

27. An annuity payment plan with a $60,000 maximum credit per participant to an HRA account will result in an estimated U.S. Individual income tax of $2,485,000 which will be withheld from the settlement proceeds.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 30, 2013

_____
Charles A. Henderson