## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                              :

*In re*                                  :       Chapter 11

                               :

Nortel Networks Inc., *et al.*,[1]       :       Case No. 09-10138 (KG)

                               :

                  Debtors.     :       Jointly Administered

                               :

                               :       **Hearing date: May 21, 2013 10:00 AM (ET)**

                               :       **Objections due: May 14, 2013 4:00 PM (ET)**

-------------------------------------------------------- X

### DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 363(B) OF THE BANKRUPTCY CODE AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF THE MERGIS GROUP AND CERTAIN EMPLOYEES THEREOF

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), (i) authorizing and approving the employment and retention of The Mergis Group, a division of Randstad Professionals US, LP ("Mergis") to support the residual operations of the Debtors whereby Mergis will provide the services of Timothy Ross to serve as Chief Financial Officer and Secretary of the Debtors, Allen Stout to serve as Controller of the Debtors and the provision of additional personnel (the "Additional Personnel," and together with Timothy Ross and Allen Stout, the "Consultants") pursuant to the terms and conditions of that certain Staffing Services

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Agreement between Mergis and the Debtors dated as of April 29, 2013 (the "Consulting

Agreement"), attached hereto as Exhibit B; and (ii) granting them such other and further relief as

the Court deems just and proper.  In further support of this Motion, the Debtors respectfully

represent as follows:

**Preliminary Statement**

1.      As a result of the divestitures of the Debtors' businesses and the continued wind-

down of the Debtors' estates, the Debtors have limited residual operations and employees, which

remain solely in order to complete their liquidation.  While the Debtors have historically

provided a number of benefits to their employees through various benefit plans and other

programs, several of the Debtors' benefit plans have been terminated and the Debtors intend to

discontinue the provision of the remaining health and welfare benefits to its employees through

the termination of certain plans and programs as of June 30, 2013, subject to this Court's

approval.[2]  The inability to provide employees with employee benefits is problematic because

employees need the essential elements of such benefits, including, but not limited, health care,

which other employers can readily provide.  Additionally, it has become difficult to motivate the

Debtors' very small number of employees to accomplish critical goals that must be met to

successfully conclude these Chapter 11 Cases (as defined below) without the ability to provide

assurances that employees will continue to enjoy basic employee benefits.  Critically, the loss of

---

[2]      On January 18, 2013, the Debtors, along with the Official Committee of Long-Term Disability Participants (the "LTD Committee") filed the *Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule a Fairness Hearing; and (II)(A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief* [D.I. 9304] (the "Joint Motion").  In the Joint Motion, the Debtors have sought authorization to terminate the LTD Plans (as defined in the Joint Motion) in their entirety as of May 31, 2013.  Under the terms of the settlement agreement with the LTD Committee, the Debtors and the LTD Committee have agreed to extend the termination date of the LTD Plans from May 31, 2013 to June 30, 2013.  See Notice of Extension of Termination Date Under the LTD Settlement Agreement, dated April 11, 2013 [D.I. 10053].

services provided by the Debtors' remaining employees would be severely detrimental to the Debtors' estates, both in placing a significant burden on the Debtors to find and train new employees and because it would be impossible to locate other individuals who would have the experience and knowledge required to perform these duties, including the successful completion of the various pending litigations.

2.      Now that the Debtors' restructuring process is entering into its final stages, the Debtors have determined in their business judgment that they can best preserve and maximize the value of their estates for their creditors through the termination of their remaining employees as of May 30, 2013 and the retention of Mergis to provide services after that date through the Consultants (who are currently employed by the Debtors) to support the Debtors' remaining administrative obligations in these cases and complete their restructuring.

**Jurisdiction**

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory basis for the relief requested herein is sections 105(a) and 363(b) and of the Bankruptcy Code.

**Background**

5.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[3] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only (the "Chapter 11 Cases").  The

---

[3]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

7.      On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

---

[4]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

8.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7.      By this Motion, the Debtors seek the entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (i) authorizing and approving the employment and retention of Mergis to support the residual operations of the Debtors, whereby Timothy Ross would be designated as Chief Financial Officer and Secretary of the Debtors, Allen Stout would be designated as Controller of the Debtors, and the services of the seven Additional Personnel (who currently are employed by the Debtors) would be provided pursuant to the terms and conditions of the Consulting Agreement, and (ii) granting them such other and further relief as the Court deems just and proper.

**Facts Relevant to the Motion**

A.      **The Consulting Agreement**

8.      As a result of the continued wind-down of the Debtors' estates, a very small number of employees remain to oversee the Debtors' day-to-day activities.  At the time the Chapter 11 Cases were filed, the Debtors employed approximately 3,000 individuals.  As a result of the divestitures of the Debtors' various businesses and the various rounds of layoffs of the Debtors' employees conducted over the last four years, the Debtors currently employ only ten active employees.

9.      In furtherance of their wind-down efforts, the Debtors have terminated various benefits previously offered to their workforce, including, without limitation, 401(k) benefits offered through the Nortel Networks Inc. Long-Term Investment Plan and deferred compensation benefits under the Nortel Networks U.S. Deferred Compensation Plan.  In

addition, if the Court approves the pending Joint Motion, the Debtors will no longer offer health and welfare benefits (including medical benefits and life insurance) to any of its current active employees, of which only ten remain.  Previously, in an effort to incentivize and motivate the few remaining employees critical to winding-down the Debtors' operations in 2013 and the successful conclusion of these Chapter 11 Cases, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing Debtors to (A) Grant Awards Pursuant to the Nortel Networks Inc. Incentive Plan; and (B) Enter into Certain Special Incentive Payment Agreements* [D.I. 9163] (the "2013 Plan Motion") on December 19, 2012.  The U.S. Trustee filed an objection to the 2013 Plan Motion on January 4, 2013 [D.I. 9236], raising purported concerns with the adoption of further incentive or retention plans in these cases.  Given the loss or threatened loss of these various benefits at a time when these few remaining individuals have been required to take on increased roles and broader responsibilities to complete the Debtors' liquidation, it has become increasingly difficult to adequately encourage these invaluable individuals to stay on to see the Debtors' remaining restructuring goals through to completion.  The loss of services provided by these key employees would result in a significant burden to the Debtors, both in terms of the need to find and train new employees so near the end of these Chapter 11 Cases, and because there would be an irreplaceable loss of institutional knowledge that is crucial to the efficient wind-down of the Debtors' estates.

10.     Accordingly, after internal consideration and consultation with the Committee and the Bondholder Group, the Debtors have concluded and strongly believe that the interests of the Debtors' estates and creditors would best be served by terminating the employment of these remaining employees and instead retaining Mergis to provide contractor support services to the Principal Officer, John Ray.  The Debtors, in their business judgment, believe that engaging an

outside agency to hire the Debtors' remaining employees as independent contractors that

provides such former employees with both the necessary administrative and human resources

support and offers a foundation for these individuals to eventually transition to other

employment when their role at the Debtors is completed, is the most efficient way to achieve the

Debtors' remaining goals in a cost-effective manner.  Absent the arrangement with Mergis, the

remaining employees will likely terminate from the Debtors to seek employment with an

employer who can provide employee benefits, including medical insurance.

   11.  The Debtors propose, subject to Court approval of this Motion, to terminate the

employment of their ten remaining active employees as of May 30, 2013, and to retain the

services of Mergis thereafter.  In furtherance of the decision to outsource the Debtors'

operations, the Debtors entered into discussions with Mergis to negotiate a consulting

arrangement whereby Mergis would hire Timothy Ross, Allen Stout and seven of the Debtors'

remaining active employees as full-time employees, and subsequently assign the Consultants to

perform projects for the Debtors.  Mergis will administer services, including payroll, and will

provide the Consultants with the same benefits options available to its staff of salaried

consultants, including benefits no longer available from the Debtors.  Additionally, Mergis may

provide additional short-term staffing solutions to the Debtors as needed on the terms described

herein.  The Debtors believe that the staffing and support services to be provided by Mergis and

the Consultants, the terms of which are memorialized in the Consulting Agreement described in

more detail below, are crucial to the achievement of their remaining activities, which include

their execution of critical tax, financial and regulatory responsibilities, the completion of the

wind-down of the Debtors' subsidiaries, the completion of the wind-down of benefit plans, the

management and leasing of certain remaining real estate, as well as data retention and information technology support and the completion of these Chapter 11 Cases.

**B.    Qualifications**

12.    Mergis is a professional placement firm that specializes in supplying personnel, staffing services and related resources to a broad spectrum of clients.  Mergis professionals have extensive experience in helping businesses achieve their goals in service areas including accounting, finance, engineering, manufacturing, legal, technology, sales and marketing and human resources.  In particular, Mergis will be able to offer the consulting services of nine individuals currently employed by the Debtors.

13.    Mr. Ross has held the position of Secretary of each of the Debtors and certain non-debtor subsidiaries since January 2011.[6]  Mr. Ross has been responsible for the financial, administrative, and risk management operations of NNI and its branches and subsidiaries, including the other Debtors.  He has overseen all financial planning, preparation and the interpretation of financial reports, and the establishment and monitoring of controls designed to preserve assets of the Debtors and to report accurate financial information.  Additionally, Mr. Ross has directly managed NNI's finance and administrative functions, including treasury, finance and accounting, tax, information technology, human resources and physical infrastructure, and has advised internal and external parties on financial affairs of the Debtors.

---

[6]    On January 24, 2011, Mr. Ross was appointed Secretary of Architel Systems (U.S.) Corporation, Coretek, Inc., Nortel Altsystems International Inc., Nortel Altsystems Inc., Nortel Networks (CALA) Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Capital Corporation, Nortel Networks HPOCS Inc., Nortel Networks Inc., Nortel Networks International Inc., Nortel Networks Optical Components Inc., Nortel Networks Telecom International Inc., Qtera Corporation, Sonoma Systems and Xros, Inc.  Additionally, Mr. Ross was appointed Secretary of Nortel Networks India International Inc. on January 19, 2011 and Nortel Networks Cable Solutions Inc. and Nortel Ventures LLC on January 27, 2011.

Mr. Ross has served as a director of each of the Debtors since September 30, 2011, but will not

serve as a director after May 2013.[7]

14.     Mr. Stout's position as Vice President of Finance of NNI from November 4, 2002

through April 1, 2008 and as Vice President of Finance of each of the Debtors and certain non-

debtor subsidiaries since October 2, 2010, has enabled him to become familiar with the Debtors'

financial matters, businesses and restructuring strategy.  It is Mr. Stout's responsibility to ensure

that the books and records of NNI and the other Debtors, and their branches and subsidiaries, are

maintained in compliance with generally accepted accounting principles (GAAP) in support of

U.S. and local tax reporting and filing requirements.  He also provides financial support for the

wind-down and liquidation of NNI and the other Debtors and their branches and subsidiaries

with a primary focus on the orderly disposition of the Debtors' balance sheet in compliance with

GAAP and identifying and mitigating financial risk.

**C.     Scope of Services[8]**

15.     Subject to the Court's approval, the Debtors have hired Mergis pursuant to the

Consulting Agreement executed by and between the Debtors and Mergis.  Mr. Ross and Mr.

Stout are the principal professionals to be staffed by Mergis on the engagement.  Effective as of

May 31, 2013, Mr. Ross will be appointed as the Chief Financial Officer and Secretary of the

Debtors and Mr. Stout will be appointed as Controller of the Debtors by a resolution of the

---

[7]     Upon the termination of Mr. Ross's employment as of May 30, 2013 and his resignation as sole director of
each of the Debtors, Mr. Luis Fernando Guerra Sanz, who is currently employed by the Debtors and serves as the
director of certain non-debtor entities, will be terminated as an employee and will assume the role as sole director of
each of the Debtors.

[8]     The summary and description of the terms and conditions of the Consulting Agreements set forth in the
Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview
of significant terms thereof and should only be relied upon as such.  The summaries and descriptions are qualified in
their entirety by the Consulting Agreement.  In the event there is a conflict between the Motion and the Consulting
Agreement, the Consulting Agreement shall control in all respects.

Debtors' board of directors.  Mr. Ross, Mr. Stout and the Additional Personnel will act under the direction and guidance of the Debtors' board of directors and Principal Officer, John Ray.

16.    The Additional Personnel, at this time solely consisting of seven remaining employees of the Debtors, will be assigned by Mergis to serve under Mr. Ross and Mr. Stout during these Chapter 11 Cases consistent with the terms of the Consulting Agreement, subject to the provisions of the Court's order.

17.    More generally, pursuant to the Consulting Agreement, the Debtors seek approval of the retention of Mergis and the designation of Mr. Ross as Chief Financial Officer and Secretary and Mr. Stout as Controller to provide the following services, among others:

- Complete 2012 year-end financial close and regulatory reporting requirements;
- Compete 2012 tax returns;
- Support critical 2013 tax deliverables;
- Achieve the 2013 cash flow budget;
- Complete benefit plans wind-down and regulatory reporting;
- Initiate liquidation or strike off of 6 of 8 entities and complete the current in-process liquidations of 4 of 6 entities while ensuring that local and U.S. statutory and tax compliance is met and potential financial risks are identified and mitigated;
- Drive cash repatriation for the NNI Uruguay branch, NNIII Dubai branch, Nortel de Guatemala and NTECP;
- Settlement and disposition of remaining residual receivables;
- Execute data and document destruction upon Court approval;
- Manage RTP and Richardson real estate, including sublease activities;
- Complete real estate restoration CAPEX projects per lease agreement at or below budget;
- Market and lease RTP excess real estate, including the contracting for excess space to reduce the Debtors' costs;
- Support ongoing claims review and administration; and
- Support Debtors' plan of reorganization and disclosure statement.

D.    **Compensation**

18.    The principal terms of Mergis' engagement are as follows:[9]

<u>Compensation</u>:  Mergis will bill on an hourly basis based on the actual hours worked pursuant to a current blended hourly rate of $350.[10]  The identity and position of the personnel to be provided by Mergis are as follows:

| Name | Description |
|---|---|
| Timothy Ross | Chief Financial Officer and Secretary |
| Allen Stout | Controller |
| David Cozart | Associate |
| Kim Ponder | Associate |
| Jessica Lloyd | Associate |
| Gary Storr | Associate |
| Jane Davison | Associate |
| Elizabeth Smith | Associate |
| Deborah Parker | Associate |

<u>Retainer</u>:  As security for Mergis' services, the Debtors will pay Mergis a retainer in the amount of $1.5 million (the "<u>Retainer</u>").  The Retainer may be reduced periodically by Mergis for unpaid fees and expenses.  Upon the termination of the Consulting Agreement and the provision of staffing services thereunder, any unused portion of the Retainer will be returned to the Debtors.

<u>Benefits</u>:  The Consultants are eligible for benefits available to all Mergis associates the first day of the month after which they are hired.

19.    Mergis will invoice the Debtors for hours worked by the Consultants on a

monthly basis.  Undisputed invoices will be due within thirty days from the date of the invoice.

20.    The overall compensation structure described herein, and as set forth in detail in

the Consulting Agreement, is comparable to compensation generally charged by professional

placement firms of similar stature for similar engagements.  The Consultants are not entitled to

---

[9]    Although the Consultants are the only contractors currently contemplated to be engaged through Mergis, the Debtors reserve the right to engage additional staff as needed pursuant to the terms set forth herein and the Consulting Agreement.

[10]    Consistent with the Consulting Agreement, Mergis' hourly rates are subject to periodic adjustment.

direct compensation or bonuses from the Debtors,[11] but will draw their salaries and receive

benefits from Mergis, thus relieving the Debtors of any related payroll expenses for Mergis

employees.

**E.      Reporting Requirements**

21.      Mergis will provide certain reporting of fees and expenses incurred in connection

with services provided to the Debtors, in order to maintain transparency and comply with the

U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtors under

section 363 of the Bankruptcy Code (the "Jay Alix Protocol").  On the last day of each month,

Mergis will file with the Court (and serve copies to the U.S. Trustee, the Committee, the

Bondholder Group and the Debtors, collectively, the "Notice Parties," contemporaneously with

such filing) a monthly status report (each a "Staffing Report") for the previous month, which will

include the names and functions filled by all Mergis personnel assigned to this engagement.

Such Staffing Reports shall be subject to review by the Court in the event so requested by the

Notice Parties.

22.      Mergis also will file with the Court, and provide notice to the Notice Parties,

reports of compensation earned and expenses incurred on a monthly basis (each, a

"Compensation Report").  Each Compensation Report shall summarize the services provided,

identify the compensation earned, itemize any additional expenses incurred and provide for an

objection period.  A Compensation Report, and the compensation requested therein, shall be

---

[11]      Upon the termination of the remaining active employees' employment with the Debtors, each such individual will be entitled to receive payment of awards under the 2012 Nortel Networks Inc. Incentive Plan (the "2012 Incentive Plan") and special incentive payment agreements entered into with certain key personnel, including Timothy Ross and Allen Stout (the "2012 SIP Agreements"), to the extent that the Principal Officer has designated achievement dates for the performance goals under the 2012 Incentive Plan and 2012 SIP Agreements.  The performance goals set forth in the 2012 Incentive Plan and the 2012 SIP Agreements were completed, to the extent actually achieved, by participants of each incentive program during their employment with the Debtors in 2012, and therefore, are not subject to the Jay Alix Protocol.

subject to Court review in the event that any Notice Party files an objection to such Compensation Report.

23.     Because Mergis is not being employed as a professional under section 327 of the Bankruptcy Code, it will not submit quarterly fee applications pursuant to sections 330 and 331 of the Bankruptcy Code, nor will it otherwise apply to the Court for approval of amounts paid to Mergis by the Debtors.  Mergis will be paid by the Debtors for its services and expenses on a monthly basis on the terms set forth in the Consulting Agreement.  The Debtors will not seek authority to engage Mergis or any of its affiliates as a professional under Section 327 of the Bankruptcy Code in these Chapter 11 Cases.[12]

**F.      Indemnification**

24.     The Consulting Agreement contains standard language regarding indemnification and limitation of liability with respect to Mergis' services.  In accordance with the Jay Alix Protocol, Mergis has agreed to the following limitations on such provisions, as set forth below.

25.      With respect to Mr. Ross and Mr. Stout, the Debtors shall indemnify them on the same terms as provided to the Debtors' other officers and directors under the Debtors' bylaws and applicable state law and pursuant to terms substantially similar to the terms of the insurance coverage under the Debtors' directors' and officers' insurance policies.

26.     Additionally, notwithstanding any provisions of the Consulting Agreement to the contrary, Mergis has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention, or otherwise to the jurisdiction and venue of this Court (or if the reference is withdrawn) the District Court for the District of Delaware to hear or determine any controversy

---

[12]     It is the Debtors' understanding that Mergis is in the process of completing its conflicts check and will file a declaration in accordance with Federal Rule of Bankruptcy Procedure 2014(a)  at its earliest opportunity.

or claims with respect to, in connection with, arising out of, or in any way related to Mergis's

engagement in these Chapter 11 Cases.

## Basis for Relief

27.     The Debtors seek authority pursuant to sections 105(a) and 363(b) of the

Bankruptcy Code to employ and retain Mergis and certain of its employees to provide support

services.

28.     Section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession to use

property of the estate "other than in the ordinary course of business" after notice and a hearing.

11 U.S.C. § 363(b)(1).  To obtain court approval to use property under section 363(b), the

Debtors need only demonstrate a sound business purpose for the proposed action.  See Comm. of

Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F. 2d 1063, 1071 (2d Cir. 1983)

("[t]he rule we adopt requires that a judge determining a § 363(b) application expressly find from

the evidence presented before him at the hearing a good business reason to grant [the]

application."); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (courts have

applied the "sound business purpose" test to evaluate motions brought pursuant to section

363(b)).  If a valid business justification exists, the law vests a debtor's decision to use property

out of the ordinary course of business with a strong presumption "that in making a business

decision the directors of the corporation acted on an informed basis, in good faith and in the

honest belief that the action taken was in the best interests of the company."  Official Comm. of

Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656

(S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

29.     The retention of corporate officers is proper under section 363 of the Bankruptcy

Code.  Courts have relied upon section 363(b) as the basis upon which to employ and

compensate professional services firms similar to Mergis that provide professionals to serve as officers or other personnel that provide support services to debtors. See, e.g., Order Granting Motion to Employ and Retain FTI Consulting, Inc. to Appoint a Chief Restructuring Officer, Associate Restructuring Officers, Vice Presidents of Development and Additional Personnel for the Debtors Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code *Nunc Pro Tunc* to the Petition Date, In re Digital Domain Media Grp., Inc., Case No. 12-12568 (BLS) (Bankr. D. Del. Oct. 31, 2012); Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b), Authorizing the Debtors to Employ and Retain FTI Consulting, Inc. to Provide a Chief Restructuring Officer, Chief Financial Officer, and Additional Personnel for the Debtors, *Nunc Pro Tunc* as of the Petition Date, In re Prince Sports, Inc., Case No. 12-11439 (KJC) (Bankr. D. Del. May 31, 2012); Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing and Approving (I) Retention and Employment of Conway Mackenzie Management Services, LLC *Nunc Pro Tunc* to the Petition Date, and (II) Debtors' Employment of John T. Young, Jr. as Chief Restructuring Officer, In re Delta Petroleum Corp., Case No. 11-14006 (KJC) (Bankr. D. Del. Jan. 11, 2012).

30.     The Debtors submit that, in their business judgment, the retention of Mergis to provide the services of Mr. Ross as Chief Financial Officer and Secretary, Mr. Stout as Controller and the Additional Personnel will greatly benefit the Debtors' estates and creditors. As a result of the Consultants' years of experience as employees, officers and former directors of the Debtors, each of the Consultants possess irreplaceable invaluable knowledge of the Debtors' operations and bankruptcy proceedings that is essential in achieving the wind-down of the Debtors' operations and successful conclusion of these Chapter 11 Cases in an efficient and cost-effective manner. However, in light of the ongoing reduction of the Debtors' staff this year, the resulting increase in responsibilities for remaining employees, the potential termination of

benefits on June 30, 2013, the U.S. Trustee's objection to the 2013 Plan Motion and the approaching conclusion of the Debtors' bankruptcy proceedings, there is a high risk that the Debtors' already limited group of active employees may pursue employment elsewhere.  For these reasons, the Debtors believe that the engagement of Mergis, an experienced professional services firm that has agreed to provide necessary support services to the Debtors as well as in the future aid the Debtors' last remaining employees to transition to other employment, is the best means of effectively performing the Debtors' residual operations.

31.    Moreover, the Debtors have determined, in the exercise of their business judgment, that the fee structure set forth in the Consulting Agreement appropriately reflects the nature of the services to be provided by Mergis, contains reasonable terms and conditions of employment, is appropriate in light of current market rates and should be approved under section 363 of the Bankruptcy Code.  The Debtors believe that the compensation to be paid to Mergis for the services of the Consultants is reasonable in comparison to (a) the benefit the Debtors will receive from the Consultants' continued assistance in meeting key restructuring goals, and (b) the significant burden of engaging and training new employees as well as maintaining the administrative infrastructure of the Debtors at this stage of the Chapter 11 Cases.  Accordingly, the Debtors believe that the relief requested herein reflects the reasonable exercise of the Debtors' sound business judgment.

32.    This Court also may grant the relief requested in this Motion pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." See 11 U.S.C. § 105(a); see also Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts'

specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

33.     Mergis is not subject to the compensation requirements of Sections 330 and 331 of the Bankruptcy Code because the Debtors are seeking to retain Mergis pursuant to section 363 of the Bankruptcy Code rather than under section 327 of the Bankruptcy Code.  The Debtors therefore request that Mergis' fees and expenses accrued under the Consulting Agreement be paid by the Debtors in the ordinary course of business as an administrative expense of the Debtors, without the need for Mergis to file fee applications or otherwise seek Court approval for such fees and expenses, including, without limitation, the adjustment of Mergis' hourly rates, other than the reporting obligations described above.

34.     There is no requirement that Mergis, Mr. Ross, Mr. Stout, or the Additional Personnel be disinterested, because the Debtors are not seeking to retain them as professionals under Section 327 of the Bankruptcy Code  The Debtors submit that the engagement of Mergis, Mr. Ross, Mr. Stout and the Additional Personnel pursuant to the terms of the Consulting Agreement are in accordance with the Jay Alix Protocol and that the proposed form of order attached as Exhibit A complies with the Jay Alix Protocol.

35.     The Debtors have engaged in discussions regarding the relief requested in this Motion with the Committee and the Bondholder Group.

### Notice

36.     Notice of the Motion has been given via hand delivery or first class mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to Mergis; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

17

**<u>No Prior Request</u>**

37.     No prior request for the relief sought herein has been made to this or any other

court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  April 30, 2013
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley *(admitted pro hac vice)*
Lisa M. Schweitzer *(admitted pro hac vice)*
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

            - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*