**EXHIBIT B**



**STAFFING SERVICES AGREEMENT**

THIS MERGIS STAFFING SERVICES AGREEMENT (this "Agreement"), dated as of the 29th day of April, 2013, is by and between The Mergis Group, a division of Randstad Professionals US, LP ("Mergis"), and Nortel Networks Inc. ("Client").

WHEREAS, Client is currently in Chapter 11 bankruptcy proceedings (the "Bankruptcy Proceedings") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, Client requires staffing services during the Bankruptcy Proceedings, which will require Mergis to assign certain personnel, including former employees of Client, as requested by Client, to perform certain tasks and functions (the "Services"); and

WHEREAS, Mergis is in the business of providing such services and is willing to provide these services to Client;

NOW THEREFORE, IN CONSIDERATION of the mutual agreements and covenants contained herein, Client and Mergis agree as follows:

1.    Term of Agreement.  This Agreement shall commence on the Effective Date (defined below) and shall continue in effect for a period of 2 years unless sooner terminated as provided herein.  Either party may terminate this Agreement by providing 60 days' prior written notice to the other party; provided, however that Mergis may terminate this Agreement immediately in the event that Client fails to pay undisputed past-due amounts for services rendered within 10 days after notice from Mergis.  The terms of this Agreement where the context so indicates shall survive termination of this Agreement.

Notwithstanding the foregoing, this Agreement shall not be effective unless and until it is approved by the Bankruptcy Court (the "Court Approval").  The date of such Court Approval shall be the "Effective Date" of this Agreement.  Neither party shall have any performance obligations prior to the Effective Date.  In the event that Court Approval is not obtained on or before July 1, 2013, this Agreement shall be deemed void *ab initio.*

2. <u>Scope of Services</u>.

   (a) <u>Staffing Services</u>.

      (i) Subject to the occurrence of the Effective Date, on May 31, 2013, Mergis will hire and assign personnel ("<u>Payrolled Personnel</u>") as requested by Client to fill professional financial and, accounting positions as further described in <u>Exhibit A</u>. The parties acknowledge and agree that this Agreement does not pertain to any other divisions, affiliates and/or subsidiaries of Randstad Professionals US, LP other than The Mergis Group unless otherwise specified herein. The parties further acknowledge and agree that the Services are to be provided in connection with the Bankruptcy Proceedings, and are not intended to represent a professional employer organization arrangement or employee leasing arrangement.

      (ii) Mergis will not screen, interview and reference check Payrolled Personnel, but rather is relying on Client's selection of such personnel to suit Client's needs.

      (iii) Payrolled Personnel assigned to Client will be considered employees of Mergis and not of Client. Mergis shall be solely responsible for the payment of wages to Payrolled Personnel for work performed on assignments hereunder, for the provision of any applicable benefits under Mergis' employee benefit plans for such Payrolled Personnel, and will be solely responsible for withholding federal, state and local income taxes, paying social security taxes, and unemployment insurance in an amount and under such terms as required by state law. Mergis shall verify the identity and right to work of each Payrolled Personnel under the United States immigration laws. Client's employee benefit plans exclude Payrolled Personnel from coverage, and Mergis shall not be liable to Client for any claims for benefits under Client employee benefit plans that may be asserted by Payrolled Personnel.

      (iv) Client will provide Payrolled Personnel with instructions and work supervision and will verify hours worked as set forth in <u>Section 4</u>. Client will not substantially change the assignment or job duties of Payrolled Personnel without prior approval of Mergis. Client agrees that Payrolled Personnel will not have sign-off authority on any financial statements, and that it will not assign Payrolled Personnel to perform tasks requiring operation of Client's vehicles.

      (v) Client agrees that Payrolled Personnel shall not sign any accounting or other financial related opinions or other related documentation that may be relied upon by third parties. In addition, Payrolled Personnel shall not sign any documents that are going to be filed with any federal, state or local governmental agency, including, without limitation: (A) tax returns; and (B) any financial statements which are attached and incorporated into the public filings of publicly traded companies with the Securities and Exchange Commission. The Payrolled Personnel set forth on <u>Exhibit B</u> may hold officer positions with Client and, in such roles, may have a hand in the preparation, review and/or presentation of such supporting documentation as may be necessary or desirable in connection with the matters in clauses (A) and (B) above, or other matters relating to the Bankruptcy Proceedings, including reports to the Bankruptcy Court. Regardless of whether Payrolled Personnel are set forth in <u>Exhibit B</u> or not, under no circumstances shall Mergis be held responsible, whether under a theory of vicarious liability or otherwise, for any signature by Payrolled Personnel on any document, or for any role such personnel may have in such preparation, review or presentation.

3. <u>Rates / Invoicing</u>

  (a) The hourly bill rates for Staffing Services are as set forth in <u>Exhibit A</u>. Client will pay Mergis a retainer in the amount of $1,500,000.00 on the Effective Date, as a security deposit for the Services (the "<u>Retainer</u>"). The Retainer may be reduced by Mergis (i) in Mergis's sole discretion, in the event that any Mergis invoice is not paid within 30 days of issuance; or (ii) upon mutual agreement of the parties. Any unused portion of the Retainer after satisfaction of Mergis invoices will be returned to Client

following termination of this Agreement.  Mergis will submit written notice to Client showing any decrements applied to the Retainer balance, such notice to be delivered no later than thirty days after such decrement is applied.

(b) Mergis will invoice Client on a monthly basis for hours worked by Payrolled Personnel during the prior week.  Client will pay undisputed invoices within 30 days from date of invoice.  Past-due invoices shall bear interest at the rate of 1½% per month of the unpaid balance (Annual Percentage Rate of 18%) or the maximum legal interest rate, whichever is less.  In the event Client's account is in default and placed for collection, Mergis will be entitled to recover from Client its costs of collection, including reasonable attorneys' fees and costs.  Client agrees to pay any state or local sales tax imposed as a result of this Agreement.

(c) Any invoice or payment disputes must be submitted in writing to the other party within six months of the date of invoice or payment that is being disputed, after which time the parties will be barred from raising such disputes.

(d) For the duration of this Agreement, on the last day of each month, Mergis shall file with the Bankruptcy Court and serve on such parties as specified by the Bankruptcy Court a staffing report for the previous month, which shall include the names and functions filled by all Payrolled Personnel assigned to Client (each such report, a "Monthly Staffing Report").  In the event Client seeks to have the Payrolled Personnel assume executive officer positions, other than those disclosed in this Agreement, or to materially change the terms of the Agreement by either (i) modifying the functions of Payrolled Personnel, (ii) adding new Payrolled Personnel, or (iii) altering or expanding the scope of the Staffing Services, Mergis shall disclose such additional positions and/or material changes in function or scope in its Monthly Staffing Report.  Client acknowledges that Mergis will not be supervising Payrolled Personnel and ultimately relies on Client for an accurate representation of the duties and roles of Payrolled Personnel.  Accordingly, Mergis shall have no responsibility or liability in the event that Mergis does not have prior written notice of matters within the scope of clauses (i), (ii) and (iii) above.

(e) For the duration of this Agreement, on the last day of each month, Mergis shall file with the Court and serve on such parties as specified by the Bankruptcy Court a compensation report for the previous month, which shall summarize the service provided by the Payrolled Personnel, identify the compensation earned, itemize any additional expenses incurred and provide for an objection period (each such report, a "Monthly Compensation Report").

4. Time Accountability.  Mergis uses an electronic time collection and approval tool called ETC (Enterprise Time Capture).  ETC will collect and store the Payrolled Personnel's assignment details, the time entered by Payrolled Personnel, the supervisor's approval of such time, and other approval information.  Mergis will work with Client and Client's staff to ensure that everyone who is responsible for time approval is able to access ETC to ensure accurate and timely collection and approval.  Client must approve or reject time submitted by Payrolled Personnel for each work week no later than 10:00 a.m. on Tuesday of the following week, at which time all non-rejected time that has been submitted for approval will be considered approved-in-full by Mergis and will be sent for payroll processing.

5. Client Satisfaction. In the event Client is dissatisfied with the performance of any Payrolled Personnel assigned hereunder, Client will provide reasonable notice to Mergis.

6. Indemnification.

(a) Indemnification by Mergis.  Mergis will indemnify, defend and hold harmless Client and its directors, officers and employees from and against all claims, suits, demands, losses, damages or penalties, including reasonable attorneys' fees and costs (collectively "Liabilities"), attributable to bodily injury or property damage, to the extent arising out of any negligent act or omission on the part of Mergis;

provided that Mergis shall have no such indemnification obligation with respect to any act or omission of Payrolled Personnel.

(b)  D&O Indemnification.  Client shall exclusively indemnify the Payrolled Personnel set forth in Exhibit B on the same terms as provided to Client's other officers and directors under Client's by-laws and applicable state law, and pursuant to terms substantially similar to the terms of the insurance coverage under Client's directors' and officers' insurance policies.

(c)  Notification of Claims. Client and Mergis agree: (i) to notify each other in writing of any asserted claim for indemnification hereunder within 10 days of either discovery of the occurrence upon which the claim may be based or learning of the claim, whichever occurs first, and (ii) to cooperate fully in any investigation, defense or settlement negotiations.

(d)  Limitation of Liability.   IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, SPECIAL OR PUNITIVE DAMAGES OR EXPENSES OR LOST PROFITS (REGARDLESS OF HOW CHARACTERIZED AND EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES) UNDER OR IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF THE FORM OR ACTION (WHETHER IN CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, STATUTORY LIABILITY OR OTHERWISE).

7. Insurance.

(a)  Mergis will maintain at its expense:  (i) Workers' Compensation Insurance with statutory minimum limits, and Employer's Liability Insurance in an amount not less than $1,000,000 per accident or injury; (ii) Commercial General Liability Insurance coverage for Mergis, its agents and employees, with a liability limit of not less than $1,000,000 per occurrence; and (iii) a Commercial Blanket Bond with limits of not less than $500,000.  Certificates of Insurance evidencing said insurance coverage will be produced upon request.

(b)  Mergis's insurance does not cover, and Mergis shall have no liability for damage to, loss of use of or loss of Client's owned, non-owned or leased vehicles being operated by Payrolled Personnel.

8. Hiring/Utilization of Payrolled Personnel by Client. During the term of this Agreement and for 90 days after termination or expiration, Client will not request through another staffing agency or personnel service, or accept the services of, any Payrolled Personnel provided hereunder to Client.  Further, during the aforesaid period, Client will not directly or indirectly cause or encourage any Payrolled Personnel to transfer to or work for another staffing agency or personnel service.

9. Compliance with Law.  Each party shall, at its own expense, comply with all laws, orders and regulations of federal, state and municipal authorities and with any lawful direction of any public officer that shall impose any duty upon such party regarding the performance under this Agreement, including, without limitation, all applicable state and federal employment laws, such as Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Fair Labor Standards Act and the National Labor Relations Act.

10. Audit Rights.  During the term of this Agreement and for two years after termination or expiration, Client or its duly authorized representative(s) shall have access during Mergis's normal business hours, with reasonable advance notice in writing to Mergis and at Client's own expense, to Mergis's business records directly related to Mergis's services under this Agreement ("Records") for the purpose of verifying Mergis's performance of its obligations under this Agreement.  Client acknowledges and agrees that Mergis will maintain Records for only as long as required under applicable state and federal laws.  Client

further agrees that Records will not include the following: I-9 forms, background check and/or drug screen results, and/or any payroll records containing tax burden/withholding details.

11.     Assignment.  Either party may, with the consent of the other party, which consent shall not be unreasonably withheld, assign this Agreement or delegate the performance of all or part of its obligations and duties hereunder, to an Affiliate or to any successor to all or substantially all of its interest in the business to which this Agreement relates; provided, however, that Mergis shall be entitled to assign accounts receivable relating to this Agreement to any Affiliate without need for the consent of Client.  This Agreement may not be otherwise assigned without the written consent of both parties.  Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under this Agreement on any person or party other than the parties hereto and their respective successors and assigns.  As used herein, "Affiliate" shall mean any corporation or other business entity controlled by, controlling or under common control with such party.

12.     Severability.  Each and every covenant and agreement herein shall be separate and independent from any other and the breach of any covenant or agreement shall in no way or manner discharge or relieve the performance of any other covenant or agreement.  The unenforceability, invalidity or illegality of any provision of this Agreement shall not render the other provisions unenforceable, invalid or illegal.

13.     DISCLAIMER REGARDING PAYROLLED PERSONNEL.  CLIENT ACKNOWLEDGES AND AGREES THAT MERGIS (I) HAD NO RESPONSIBILITY FOR SELECTION OF PAYROLLED PERSONNEL AND (II) HAS NO RESPONSIBILITY WHATSOEVER FOR ANY OVERSIGHT OF PAYROLLED PERSONNEL IN THEIR PERFORMANCE OF DUTIES FOR CLIENT.  FURTHERMORE, CLIENT ACKNOWLEDGES AND AGREES THAT THE PAYROLLED PERSONNEL HAVE BEEN SELECTED BY CLIENT BASED ON CLIENT'S OWN KNOWLEDGE OF THE SKILLS, EXPERIENCE AND CAPABILITIES OF SUCH PERSONNEL, AND THAT MERGIS MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, AS TO PAYROLLED PERSONNEL. UNDER NO CIRCUMSTANCES SHALL MERGIS BE RESPONSIBLE FOR ANY ACT, OMISSION OR WORK PRODUCT OF ANY PAYROLLED PERSONNEL.

14.     Independent Relationship.  Both parties agree that this Agreement is not intended to create nor shall be deemed or construed to create any relationship between the parties other than that of independent entities contracting with each other solely for the purpose of effecting the provisions of this Agreement.  Neither the parties hereto, nor any of their respective employees, shall be construed to be the agent, employer, employee or representative of the other.

15.     Notices.  All notices or other communications shall be deemed given by: (a) personal delivery, (b) telephone facsimile, when such notice or communication is followed up by certified mail, return receipt requested, (c) overnight courier, or (d) a written notice mailed via certified mail, return receipt requested; such notices to be addressed to the parties at the addresses set forth below:

       If to Client:             Nortel Networks Inc.
                                       4001 East Chapel Hill – Nelson Highway
                                       Research Triangle Park, NC 27709

       with a copy to:      Avidity Partners, LLC
                                       One Lincoln Center
                                       18W140 Butterfield Road, 15th Floor
                                       Oakbrook Terrace, IL 60181
                                       Attn:  John Ray

|   |   |
|---|---|
| If to Mergis: | The Mergis Group |
|  | 4601 Six Forks Road, Suite 304, Raleigh, NC 27609 |
|  | Attn: Brandi Privette |
|  | (Account Executive) |
|   |   |
| with a copy to: | Randstad Professionals US, LP |
|  | 150 Presidential Way, 4th Floor |
|  | Woburn, MA 01801 |
|  | Attn:  Law Department |

16. <u>Force Majeure</u>.  The obligations of Mergis hereunder shall be excused during any period of delay caused by matters such as strikes, acts of God, shortages of raw material or power, governmental actions or compliance with governmental requirements, whether voluntary or pursuant to order, or any other matter that is beyond the reasonable efforts of Mergis to control.

17. <u>Consent to Jurisdiction</u>.  This Agreement shall be governed by and interpreted in accordance with the laws of the state of Delaware.  Mergis shall be deemed to have waived, and shall not raise or assert any defense, based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of the the Bankruptcy Court or the District Court for the District of Delaware to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to Mergis' engagement by Client to provide Services.

18. <u>Confidentiality</u>.  At all times, on and after the Effective Date, Mergis shall keep and hold all Confidential Information of Client in strict confidence and trust.  Mergis shall not use or disclose any Confidential Information without the prior written consent of Client, except as may be necessary for the performance of the Payrolled Personnel's assignment to Client.  Upon termination of Mergis' provision of Staffing Services to Client, Mergis shall promptly deliver to Client all documents and materials of any nature it obtained during such provision of Staffing Services.  "Confidential Information" shall include, without limitation (a) financial, accounting and tax information; (b) any information and documents regarding Client's bankruptcy proceedings; (d) employee lists, policies and files; (d) all intellectual property and other technical information; (e) all notes, summaries, studies, analyses and other material that are prepared by Mergis or the Payrolled Personnel and contain or are generated from Confidential Information. Confidential Information shall not include information known publicly other than as a result of a disclosure by Mergis, nor shall it include information that Mergis learns from a source other than Client, provided that such source is not known to Mergis to be subject to any prohibition against providing such information

19. <u>Entire Agreement</u>.  This Agreement constitutes and represents the entire Agreement between the parties hereto and supersedes any prior understandings or agreements, written or oral, between the parties hereto respecting the subject matter herein.  In the event Client issues a purchase order, work order or other instrument covering this Agreement, it is understood and agreed that it is for Client's internal purposes only, shall in no way affect any of the terms and conditions herein, and may not, notwithstanding any provision to the contrary, be made a part of this Agreement or annexed hereto or cause this Agreement to be made a part thereof or annexed thereto.  This Agreement may only be amended by an agreement in writing executed by all of the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

THE MERGIS GROUP,                              CLIENT:
a division of Randstad Professionals US, LP

By: _____          By: _____
Printed Name: Stephen J. McMahon     Printed Name: John J. Ray III
Title: President                                Title: Principal Officer

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

| THE MERGIS GROUP, | CLIENT: |
|---|---|
| a division of Randstad Professionals US, LP | |
| By:_____ | By: _____ |
| Printed Name: _____ | Printed Name: John J. Ray III |
| Title: _____ | Title: Principal Officer |

## **EXHIBIT A**

## **JOB CLASSIFICATIONS AND BILL RATES**

I.   Job Classifications.

    Associates

II.  Bill Rates.

The bill rates for all services shall be calculated at the standard rates identified below.

| Job Classification | Standard Rate | Overtime Rate |
|---|---|---|
| Associates | $350 | NA |

## EXHIBIT B

### PAYROLLED PERSONNEL INDEMNIFIED BY CLIENT'S D&O POLICIES

Timothy Ross – Chief Financial Officer and Secretary

Allen Stout – Controller