## EXHIBIT B

# The Nortel Mediation

Opening Remarks
of
Chief Justice Warren K. Winkler

Metropolitan Hotel, Toronto
April 24, 2012

Good morning, and thank you for attending this initial Nortel Mediation session.

Following my appointment as mediator by Judge Gross of the U.S. Bankruptcy Court and Justice Morawetz of the Ontario Superior Court of Justice, those courts ordered that this mediation be stood down until Judge Gross released his decision on an important matter related to certain claims being advanced against the U.S. Estate.

1

Judge Gross released his decision on March 20, 2012. Shortly afterwards, I scheduled this meeting so that we could begin the mediation process.

The Nortel Insolvency is one of the most complex trans-national legal proceedings in history. It directly involves companies resident in almost twenty countries, and appears to involve participants from every continent except Antarctica. Amongst those affected are pensioners, employees, disabled former employees, bondholders, trade creditors and governments.

There are existing proceedings before the courts of the United Kingdom, the United States and Canada. That said, no single

court has ultimate authority over the subject matter of this mediation.

At the heart of the Nortel Insolvency is the distribution of the assets of the Nortel companies.  The sales of Nortel's global business lines and residual intellectual property have produced over $7.0 billion (USD) in cash now held in escrow awaiting distribution.  Funds available for distribution to Nortel's creditors total almost $9 billion (USD).

This is a significant amount of money.  However, the claims made against the Nortel companies substantially exceed this number.  To further complicate matters, there are unresolved

issues as to priorities of claims, validity of claims and the allocation of funds to various jurisdictions.

As you may have gathered from the legal proceedings to date, these circumstances give rise to many difficult legal issues, not the least of which is the determination of which law applies and whose courts have jurisdiction to apply that law.  In legal terms, this is what is known as a "conflict of laws" issue.  However, the complexity of this case would make even a conflict of laws professor cringe!

As if this were not enough to attempt to work through to bring about a timely resolution to the Nortel Insolvency, the fact that there may be more than one avenue of appeal available to the

parties through the courts of numerous countries adds yet another layer of complexity. This, of course, raises the prospect of additional delays and the potential for conflicting decisions. There is a point here worth repeating. There is no single jurisdiction with the ultimate, final authority in the matter; no final court of appeal or supreme court with the power to issue a decision that conclusively determines the outcome of litigation.

This is all by way of saying that I see this as being a situation in which productive and co-operative mediation is essential. Simply put, there does not appear to be any realistic "litigation option" to resolve this dispute. The circumstances cry out for a mediated resolution. Most importantly, mediation has the potential to cut through the myriad of legal complications

underpinning the positions taken by each of the parties and enable them to participate in crafting a solution.

As I said, I do not see a realistic "litigation option" in this case. What I mean is that the alternative to a mediated outcome is a lengthy litigation process canvassing the issues I have already discussed. Even if judgments are rendered, it would be entirely possible that those judgments would have no legal effect beyond the jurisdiction of the courts rendering them. It will take years to get through this process, with an uncertain outcome, and significant amounts of the assets now available will have been depleted as a result. This would be a catastrophic outcome for some, and unsatisfactory for most, of those affected by this case.

Justice Morawetz and Judge Gross have ordered that this mediation take place to attempt to avert protracted litigation. I believe their decisions speak for themselves regarding the desirability of mediation over litigation. The United States Court of Appeals for the Third Circuit (one of the courts in line to hear an appeal from litigation in this matter in the United States) has also indicated that a mediated solution is the preferred outcome. As Judge Sloviter wrote late last year,

> We are concerned that the attorneys representing the respective sparring parties may be focusing on some of the technical differences governing bankruptcy in the various jurisdictions without considering that there are real live individuals who will ultimately be affected by the decisions being made in the courtrooms. It appears that the largest claimants are pension funds in the U.K. and the United States, representing pensioners who are undoubtedly dependent, or who will become dependent, on their pensions. They are the Pawns in the moves being made by the Knights and the Rooks.

7

> Mediation, or continuation of whatever mediation is ongoing, by the parties in good faith is needed to resolve the differences. No party will benefit if the parties continue to clash over every statement and over every step in the process.
>
> This will result in wasteful depletion of the available assets from which each seeks a portion. There appears to be one constructive solution – the protocol agreed upon by appointing Justice Winkler to resolve the allocation issues.

I agree with Judge Sloviter that mediation is the only realistic course in which this matter may be advanced.

I am not ignoring the fact that mediation has been attempted without success twice before by a very able mediator and that, despite his best efforts, the parties were not able to come to an agreement.

In my view, there is no point in repeating steps that have not yielded a resolution. For example, it is obvious from the prior mediation attempts that the complexities of the Nortel proceedings require something different than putting all parties together in the same room, the same hotel or, for that matter, the same city for concentrated and extended mediation sessions. That process has not worked and it is not manageable. It will not be the path that I will follow.

I intend to take a fresh approach to this mediation. In the coming weeks, I will be meeting with the parties separately in order to explore possible avenues toward a global resolution. This process may evolve into broader meetings of multiple parties if I begin to see the alignment of interests and the emergence of a foundation for possible agreement.

9

While this mediation is not a public process, it is a matter of real and substantial personal interest for thousands of individuals around the world. They deserve assurances that genuine efforts to resolve these issues are underway.

Accordingly, updates of a general nature will be posted on the Nortel mediation website. However, no confidential information will be posted on the website.

In that respect, the usual conditions will apply to this mediation. It will be a confidential, without prejudice process. Nothing disclosed to me or anyone else in the course of this mediation can be used in any other process. I will not communicate a

10

party's position to any other party unless I am expressly authorized to do so.

Some parties have expressed concerns regarding the confidentiality and distribution of the mediation briefs which have been provided to me and my counsel. As I have previously indicated, in recognition of these concerns, I will not distribute briefs. Should the parties wish to exchange briefs amongst themselves, they may do so on their own terms.

In any event, there will be no rebuttal or responding briefs. I must emphasize above all that this is not an adversarial process. Mediation is primarily concerned with crafting a solution which addresses the interests of all parties. Positional bargaining and

11

adversarial mindsets do nothing to advance a mediated settlement.

I will spend today by meeting with the parties privately. These meetings will allow me to determine the next steps that need to be taken in this process. Rest assured that there is no significance to the order of the meetings. The schedule has been arranged on the basis of practicality and efficiency, allowing for travel schedules and several requests for joint meetings.

This room will remain available for your use for the remainder of the day, and I will provide an update as to the advancement of this process in the next several days.

I look forward to working with you in the hopes of reaching a satisfactory resolution.

Thank you.