## **EXHIBIT E**

Court File No. M42415

## COURT OF APPEAL FOR ONTARIO

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### **AMENDED NOTICE OF MOTION FOR LEAVE TO APPEAL**

The EMEA Debtors (defined below) will make a Motion to the Court of Appeal for Ontario in writing 36 days after service of the moving party's motion record, factum and transcripts, if any, or on the filing of the moving party's reply factum, if any, whichever is earlier, ~~on a date to be fixed by the Court of Appeal at Osgoode Hall,~~ 130 Queen Street West, Toronto, Ontario, M5H 2N5.

**THE MOVING PARTY** proposes that the motion be heard in writing as an opposed motion under Rule 61.03.1.

~~**PROPOSED METHOD OF HEARING**: The Motion is to be heard~~

~~[ ]    in writing under subrule 61.03.1(1);~~

~~[ ]    in writing as an opposed motion under subrule 37.12.1(4);~~

~~[X]    orally.~~

**THE MOTION IS FOR**

    (a)    an order granting the EMEA Debtors' leave to appeal from the order of Justice Morawetz, released on March 8, 2013 with reasons delivered on April 3, 2013;

    (b)    an order granting the EMEA Debtors leave to serve and file an affidavit for use on this motion and on the appeal if leave is granted, as described below;

    (c)    the costs of this Motion; and,

    (d)    such further and other relief as this Honourable Court may deem just.

**THE GROUNDS FOR THE MOTION ARE**

**i) Background**

    (a)    On January 14, 2009, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "Canadian Debtors") commenced these proceedings and received protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the "CCAA") (the proceedings are referred to as the "CCAA Proceedings");

    (b)    Also on January 14, 2009, Nortel Networks Inc. ("NNI"), an American subsidiary of NNC, as well as other related American companies (collectively, the "U.S. Debtors"), filed voluntary petitions pursuant to Chapter 11 of the United States Bankruptcy Code;

(c)      In addition, also on January 14, 2009, various direct and indirect subsidiaries of NNL located in Europe, the Middle East and Africa (the "EMEA Debtors") applied for and were granted administration orders under the United Kingdom's *Insolvency Act* 1986;

**ii) The Asset Sales**

(d)      In the spring of 2009, the Canadian, U.S. and EMEA Debtors (collectively, the "Nortel Debtors") commenced negotiations to settle various inter-company debts and to attempt to collectively sell off their various lines of business and related assets (the "Asset Sales");

(e)      Because Nortel's business was conducted globally along "business lines", the cooperation of all Nortel entities around the world was required in order to consummate the sale of each business line. However, it became evident that it would not be possible to agree on the allocation of the proceeds of the Asset Sales (the "Proceeds") amongst the various Nortel entities prior to entering into any Asset Sale. In order to maximize the funds available for distribution to creditors and prevent the possibility that disputes over allocation would hinder the Asset Sales, the Nortel Debtors agreed that the Proceeds would be deposited into escrow pending resolution of allocation. This agreement was documented in the Interim Funding and Settlement Agreement (the "IFSA"), effective June 9, 2009;

(f)      In light of the widely differing legal regimes governing each of the Nortel Debtors, the IFSA reflected the Nortel Debtors' intention and agreement that, in the event

    that they were unable to agree on an allocation of the Proceeds, allocation would be determined by way of arbitration, rather than by the various national courts;

(g)     The Asset Sales went ahead as planned, and the Nortel Debtors eventually sold substantially all of their collective assets in various sales. In total, Proceeds in the amount of approximately $7.5 billion were realized. However, the Nortel Debtors have to date been unable to agree on how to allocate the Proceeds amongst themselves;

(h)     All of the parties to the IFSA understood and agreed that any dispute regarding allocation would be determined by arbitration. The Nortel Debtors conducted extensive discussions concerning the procedures for that arbitration, including the composition of the arbitral panel that would determine allocation of the Proceeds, compensation for the arbitrators and the binding procedures that the arbitration would follow;

(i)     When seeking approval of the IFSA, American counsel for NNI explained to the United States Bankruptcy Court for the District of Delaware (the "Delaware Court") and the Commercial List of the Ontario Superior Court of Justice (the "Ontario Court") that through the IFSA there would be "a fair and reasonable independent body deciding the allocation" which "would require very little participation or intervention or bother by these two courts";

(j)     The Delaware Court, in a separate opinion, subsequently stated that the allocation was "to be determined (absent a consensual agreement) in a single cross-jurisdictional forum". Similarly, when the Commercial Court of Versailles

(the "French Court") granted approval for Nortel Networks S.A. to enter into the IFSA, the French Court's approval relied on the parties' submission that the allocation would be "determined or which may at least be determinable by a third party neutral arbitrator";

**iii) The Allocation Motions**

(k)   In the spring of 2011, shortly before the last Asset Sale, the Canadian and U.S. Debtors abandoned discussions concerning the procedure for the arbitration and suddenly took the position that allocation should instead be determined jointly by the Ontario Court and the Delaware Court;

(l)   On June 7, 2011, in a joint hearing before the Ontario and Delaware Courts, the Canadian and U.S. Debtors moved for an order approving an allocation protocol that would have the Ontario and Delaware Courts jointly hear the allocation dispute, and then each render their own decision as to how the Proceeds should be allocated between more than 20 Nortel Debtors. The proposed protocol did not address how any differences in those two decisions were to be reconciled or purport to co-ordinate any appeals from those decisions;

(m)   In response to those motions, on June 7, 2011, the EMEA Debtors moved for an order directing the Nortel Debtors to arbitrate the allocation dispute, in accordance with the IFSA;

(n)   The Ontario and Delaware Courts heard submissions on June 7, 2011, and both reserved their decisions. The Ontario and Delaware Courts then ordered the parties

        to participate in a mediation to attempt to settle all matters relating to the allocation of the Proceeds and the outstanding inter-company claims;

(o)    The mediation was unsuccessful, and the Ontario and Delaware Courts called for the June 7, 2011 motion to be reconvened for supplementary submissions on March 7, 2013, with a decision to follow that day;

**iv) The Decision Below**

(p)    On March 8, 2013, with reasons to follow, the Ontario Court granted the motions of the U.S. and Canadian Debtors and dismissed the EMEA Debtors' motion (the "Motions Decision"). The Motions Judge ordered that the appeal period would not begin to run until reasons for the Motions Decision were released;

(q)    The reasons of the Ontario Court were issued on April 3, 2013 (the "Reasons"). In the Reasons, the Motions Judge ordered that all issues in the CCAA Proceedings as between the EMEA Debtors and the Canadian and U.S. Debtors would be determined at joint trials held by the Ontario and Delaware Courts that would commence on January 6, 2014, beginning with a joint trial to determine allocation of the Proceeds;

(r)    The Motions Judge incorrectly held that, by the terms of the IFSA, the parties did not evince an intention to have the allocation dispute determined by arbitration, despite the clear language of the IFSA and the evidence that the Nortel Debtors all shared a common understanding that allocation would be determined by way of arbitration;

(s)     Rather than direct the parties to arbitrate the allocation issue, the Motions Judge ordered them to participate in joint trials before the Ontario and Delaware Courts, each of which must independently decide how the Proceeds are to be allocated. A joint trial is outside of the Motions Judge's jurisdiction and, in any event, will create insurmountable difficulties and improprieties. Moreover, there is a substantial risk of inconsistent decisions and the two jurisdictions have different procedural and evidentiary rules that cannot be reconciled at a joint trial. There are certain to be separate and independent appeals from the decisions of the Ontario and Delaware Courts. In the event of inconsistent decisions, allocation of the Proceeds will be impossible;

(t)     Further, the IFSA is governed by New York law and the EMEA Debtors, as well as other parties, tendered expert evidence concerning the content of New York law and the proper interpretation and consideration of arbitration agreements. However, the Motions Judge failed to apply New York law when interpreting the IFSA. At no point in the Reasons does the Motions Judge refer to the expert evidence or address the fact that the IFSA is governed by New York law.

(u)     Since the release of the Reasons, the Motions Judge has directed the parties to attempt to reach agreement on a protocol for the hearing of the allocation dispute (the "Protocol") and a timetable to be followed by the parties leading up to the January 6, 2014 trial (the "Timetable"). The Court is expected to approve a Protocol and Timetable in the near future. The Protocol and Timetable are required to be before this Court on this motion and, if granted, the subsequent appeal so that the Court will have a full appreciation of the impact of the Motions Decision.

    Therefore, the EMEA Debtors seek leave to introduce both documents by way of affidavit, to be filed after the Protocol and Timetable are approved;

**v) Leave to Appeal Should be Granted**

(v)     The joint trial ordered by the Motions Judge is unprecedented and raises significant questions that are of importance to the practice of insolvency law in general. The ordered joint trial would infringe on the independence and sovereignty of the Ontario Court and establish an unworkable joint trial procedure that will be wrought with inconsistencies and problems;

(w)     The issue on appeal is of significance to the CCAA Proceedings, as it will determine whether or not the allocation dispute is to be determined by both the Ontario Court and the Delaware Court or by a single arbitral panel. The result will have an enormous impact on the trial scheduled for January 6, 2014 and the procedure for resolving the allocation disputes;

(x)     The EMEA Debtors' appeal is *prima facie* meritorious. The Motions Judge misinterpreted the IFSA, ordered the parties to engage in a joint trial that could result in inconsistent and unenforceable decisions and failed to apply the proper law in interpreting the IFSA. The ordered joint trial improperly infringes on the independence and sovereignty of the Ontario Court. As the Motions Judge conceded, his order involves "procedural difficulties" and "challenges" that should not be underestimated;

(y)     The appeal will not unduly hinder the progress of the CCAA Proceedings, as the EMEA Debtors are seeking to have the appeal expedited and are committed to having it heard as quickly as is reasonably possible;

**vi) Leave to File Fresh Evidence Should be Granted**

(z)     The EMEA Debtors seek leave to file an affidavit for the purpose of putting the Protocol and Timetable before this Court on the motion for leave and, if granted, subsequent appeal;

(aa)     Neither the Protocol nor the Timetable existed at the time that the Motions were heard, and thus could not possibly have been included in the materials before the Motions Judge;

(bb)     the Protocol and Timetable are relevant to the issue of whether the Motions Judge's order improperly infringes on the jurisdiction of the Ontario Court and, as such, could affect whether the Motions Judge's decision was correct;

(cc)     the Protocol and Timetable are not contentious documents as they will be approved by the Motions Judge;

(dd)     Rules 37, 61.03.1 and 61.16 of the *Rules of Civil Procedure*;

(ee)     sections 13 and 14 of the CCAA; and

(ff)     such further and other grounds as the lawyers may advise.

-10-

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the Motion:

(a)  the materials that were before the Motions Judge on the motions;

(b)  an affidavit to be sworn and filed following approval of the Protocol and Timetable; and

(c)  such further and other evidence as the lawyers may advise and this Honourable Court may permit.


April 2325, 2013                              **LAX O'SULLIVAN SCOTT LISUS LLP**
                                              Counsel
                                              Suite 2750, 145 King Street West
                                              Toronto, Ontario  M5H 1J8

                                              **Matthew P. Gottlieb**  LSUC#: 32268B
                                              Email:  mgottlieb@counsel-toronto.com
                                              Tel:    (416) 644-5353
                                              **James Renihan**  LSUC#: 57553U
                                              Email: jrenihan@counsel-toronto.com
                                              Tel:    (416) 644-5344
                                              Fax:    (416) 598-3730

                                              and

                                              **DAVIES WARD PHILLIPS & VINEBERG LLP**
                                              155 Wellington Street West
                                              Toronto, ON  M5V 3J7

                                              **Robin B. Schwill**  LSUC#:  38452I
                                              Email:  rschwill@dwpv.com
                                              Tel:    (416) 863-5502
                                              **Sean Campbell**  LSUC#:  49514J
                                              Email:  scampbell@dwpv.com
                                              Tel:    (416) 367-7473
                                              Fax:    (416) 863-0871

                                              Lawyers for the Joint Administrators of Nortel
                                              Networks UK Limited (In Administration)

-11-

TO: **THE SERVICE LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, et al.

Court File No. M42415

## COURT OF APPEAL FOR ONTARIO

PROCEEDING COMMENCED AT TORONTO

### AMENDED NOTICE OF MOTION FOR LEAVE TO APPEAL

**LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 2750, 145 King Street West
Toronto, Ontario  M5H 1J8

**Matthew P. Gottlieb**  LSUC#: 32268B
Email: mgottlieb@counsel-toronto.com
Tel:      (416) 644-5353
**James Renihan**  LSUC#: 57553U
Email: jrenihan@counsel-toronto.com
Tel:      (416) 644-5344
Fax:      (416) 598-3730

and

**DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto, ON  M5V 3J7

**Robin B. Schwill**  LSUC#:  38452I
Email: rschwill@dwpv.com
Tel:      (416) 863-5502
**Sean Campbell**  LSUC#:  49514J
Email: scampbell@dwpv.com
Tel:      (416) 367-7473
Fax:      (416) 863-0871

Lawyers for the Joint Administrators of Nortel Networks UK Limited (In Administration)