## EXHIBIT F

Court File No.

# COURT OF APPEAL FOR ONTARIO

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**NOTICE OF MOTION TO EXPEDITE AND CONSOLIDATE**

The moving parties, the EMEA Debtors (defined below), will make a Motion to a Judge of the Court of Appeal for Ontario on a date to be fixed by the Court of Appeal at Osgoode Hall, 130 Queen Street West, Toronto, Ontario, M5H 2N5.

**PROPOSED METHOD OF HEARING**: The Motion is to be heard

[ ]   in writing under subrule 37.12.1(1) because it is;

[ ]   in writing as an opposed motion under subrule 37.12.1(4);

[X]   orally.

**THE MOTION IS FOR**

(a)   an order abridging the time for service and filing of this motion;

(b)  an order expediting the hearing of the EMEA Debtors' motion for leave to appeal from the judgment of Justice Morawetz (the "Motions Judge") released on April 3, 2013 (the "Motions Decision");

(c)  an order directing that the EMEA Debtors' motion for leave to appeal from the Motions Decision be heard orally;

(d)  an order that, if leave to appeal is granted, the appeal be heard at the same time as the motion for leave to appeal;

(e)  an order setting a schedule for the filing of materials;

(f)  an order staying the Motions Decision pending appeal;

(g)  the costs of this Motion; and

(h)  such further and other relief as this Honourable Court may deem just.

**THE GROUNDS FOR THE MOTION ARE**

**i) Background**

(a)  On January 14, 2009, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "Canadian Debtors") commenced these proceedings and received protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the "CCAA") (the proceedings referred to as the "CCAA Proceedings");

(b) Also on January 14, 2009, Nortel Networks Inc. ("NNI"), an American subsidiary of NNC, as well as other related American companies (collectively, the "U.S. Debtors"), filed voluntary petitions pursuant to Chapter 11 of the United States Bankruptcy Code;

(c) In addition, also on January 14, 2009, various direct and indirect subsidiaries of NNL located in Europe, the Middle East and Africa (the "EMEA Debtors") applied for and were granted administration orders under the United Kingdom's *Insolvency Act* 1986;

**ii) The Asset Sales**

(d) In the spring of 2009, the Canadian, U.S. and EMEA Debtors (collectively, the "Nortel Debtors") commenced negotiations to settle various inter-company debts and to attempt to collectively sell off their various lines of business and related assets (the "Asset Sales");

(e) Because Nortel's business was conducted globally along "business lines", the cooperation of all Nortel entities around the world was required in order to consummate the sale of each business line. However, it became evident that it would not be possible to agree on the allocation of the proceeds of the Asset Sales (the "Proceeds") amongst the various Nortel entities prior to entering into any Asset Sale. In order to maximize the funds available for distribution to creditors and prevent the possibility that disputes over allocation would hinder the Asset Sales, the Nortel Debtors agreed that the Proceeds would be deposited into escrow

(f)       pending resolution of allocation. This agreement was documented in the Interim Funding and Settlement Agreement (the "IFSA"), effective June 9, 2009;

(f)       In light of the widely differing legal regimes governing each of the Nortel Debtors, the IFSA reflected the Nortel Debtors' intention and agreement that, in the event that they were unable to agree on an allocation of the Proceeds, allocation would be determined by way of arbitration, rather than by the various national courts;

(g)       The Asset Sales went ahead as planned, and the Nortel Debtors eventually sold substantially all of their collective assets in various sales. In total, Proceeds in the amount of approximately $7.5 billion were realized. However, the Nortel Debtors were unable to agree on how to allocate the Proceeds amongst themselves;

(h)       All of the parties to the IFSA understood and agreed that any dispute regarding allocation would be determined by arbitration. The Nortel Debtors conducted extensive discussions concerning the procedures for arbitration, including the composition of the arbitral panel that would determine allocation of the Proceeds, compensation for the arbitrators and the binding procedures that the arbitration would follow;

(i)       When seeking approval of the IFSA, American counsel for NNI explained to the United States Bankruptcy Court for the District of Delaware (the "Delaware Court") and the Commercial List of the Ontario Superior Court of Justice (the "Ontario Court") that through the IFSA there would be "a fair and reasonable independent body deciding the allocation" which "would require very little participation or intervention or bother by these two courts";

(j)      The Delaware Court, in a separate opinion, subsequently stated that the allocation was "to be determined (absent a consensual agreement) in a single cross-jurisdictional forum". Similarly, when the Commercial Court of Versailles (the "French Court") granted approval for Nortel Networks S.A. to enter into the IFSA, the French Court's approval relied on the parties' submission that the allocation would be "determined or which may at least be determinable by a third party neutral arbitrator";

**iii) The Decision Below**

(k)      In the spring of 2011, shortly before the last Asset Sale, the Canadian and U.S. Debtors abandoned discussions concerning the procedure for the arbitration and suddenly took the position that allocation should instead be determined jointly by the Ontario Court and the Delaware Court;

(l)      On June 7, 2011, in a joint hearing before the Ontario and Delaware Courts, the Canadian and U.S. Debtors moved for an order approving an allocation protocol that would have the Ontario and Delaware Courts jointly hear the allocation dispute, and then each render their own decision as to how the Proceeds should be allocated between over 20 different Nortel Debtors. The proposed protocol did not address how any differences in those two decisions were to be reconciled or purport to co-ordinate any appeals from those decisions;

(m)      In response to those motions, on June 7, 2011, the EMEA Debtors moved for an order directing the Nortel Debtors to arbitrate the allocation dispute, in accordance with the IFSA;

(n)     The Ontario and Delaware Courts heard submissions on June 7, 2011, and both reserved their decisions. The Ontario and Delaware Courts then ordered the parties to participate in a mediation to attempt to settle all matters relating to the allocation of the Proceeds and the outstanding inter-company claims;

(o)     The mediation was unsuccessful, and the Ontario and Delaware Courts called for the June 7, 2011 motion to be reconvened for supplementary submissions on March 7, 2013, with a decision to follow that day;

(p)     On March 8, 2013, with reasons to follow, the Ontario Court granted the motions of the U.S. and Canadian Debtors and dismissed the EMEA Debtors' motion. The Motions Judge ordered that the appeal period would not begin to run until reasons for the Motions Decision were released;

(q)     The reasons of the Ontario Court were issued on April 3, 2013. In those reasons, the Ontario Court ordered that all issues in the CCAA proceedings as between the EMEA Debtors and the Canadian and U.S. Debtors would be determined at joint trials held by the Ontario and Delaware Courts that would commence on January 6, 2014, beginning with a joint trial to determine allocation of the Proceeds;

(r)     The Monitor has proposed an aggressive schedule in which the documentary discovery process would commence in mid-May, 2013;

**iv) Leave to Appeal Must be Expedited**

(s)     The EMEA Debtors are seeking leave to appeal the Motions Decision on the bases that, *inter alia*, the Motions Judge erred in his interpretation of the IFSA, failed to

apply New York law as required by the terms of the IFSA and approved a protocol which improperly infringes the independence and sovereignty of the Ontario Court and results in parallel proceedings with the accompanying risk of inconsistent and thus unenforceable judgments;

(t) It is important that leave to appeal (and, if granted, the consequent appeal) be heard expeditiously. The CCAA Proceedings cannot reasonably proceed until there has been a final decision as to whether the allocation dispute is to be arbitrated or determined by the Ontario Court and Delaware Court, as it is not known what the scope of pleadings or discovery within the CCAA Proceedings will be;

**v) A Stay Pending Appeal is Warranted**

(u) There are serious issues regarding the correctness of the Motions Decisions;

(v) The EMEA Debtors will suffer irreparable harm if the Motions Decision is not stayed pending appeal. The Motions Decision directs the parties to the CCAA Proceedings to adhere to an aggressive schedule to have determined, *inter alia*, the allocation dispute. It is the EMEA Debtors' position that the parties are bound to have allocation determined by arbitration and that the Ontario Court and Delaware Court lack jurisdiction over that dispute.

(w) It is anticipated that the EMEA Debtors will obtain the benefit of a stay of proceedings from the Delaware Court, as an appeal in the United States from an order refusing to compel arbitration automatically divests the Delaware Court of jurisdiction over the matter pending appeal;

(x)     Rules 37, 61.03.1 and 61.16 of the *Rules of Civil Procedure*;

(y)     Sections 13 and 14 of the CCAA; and

(z)     Such further and other grounds as the lawyers may advise.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the Motion:

(a)     Such further and other evidence as the lawyers may advise and this Honourable Court may permit.

**THE MOVING PARTIES ESTIMATE** that 60 minutes are needed to argue this motion.

| | |
|---|---|
| April 23, 2013 | **LAX O'SULLIVAN SCOTT LISUS LLP**<br>Counsel<br>Suite 2750, 145 King Street West<br>Toronto, Ontario  M5H 1J8<br><br>**Matthew P. Gottlieb**  LSUC#: 32268B<br>Email:  mgottlieb@counsel-toronto.com<br>Tel:     (416) 644-5353<br>**James Renihan**  LSUC#: 57553U<br>Email: jrenihan@counsel-toronto.com<br>Tel:     (416) 644-5344<br>Fax:    (416) 598-3730<br><br>and<br><br>**DAVIES WARD PHILLIPS & VINEBERG LLP**<br>155 Wellington Street West<br>Toronto, ON  M5V 3J7<br><br>**Robin B. Schwill**  LSUC#:  38452I<br>Email:  rschwill@dwpv.com<br>Tel:     (416) 863-5502<br>**Sean Campbell**  LSUC#:  49514J<br>Email:  scampbell@dwpv.com<br>Tel:     (416) 367-7473<br>Fax:    (416) 863-0871<br><br>Lawyers for the Joint Administrators of Nortel Networks UK Limited (In Administration) |
| TO: | **THE SERVICE LIST** |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, et al.

Court File No.

---

## COURT OF APPEAL FOR ONTARIO

PROCEEDING COMMENCED AT TORONTO

---

### NOTICE OF MOTION TO EXPEDITE AND CONSOLIDATE

---

**LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 2750, 145 King Street West
Toronto, Ontario  M5H 1J8

**Matthew P. Gottlieb**  LSUC#: 32268B
Email:  mgottlieb@counsel-toronto.com
Tel:        (416) 644-5353
**James Renihan**  LSUC#: 57553U
Email: jrenihan@counsel-toronto.com
Tel:        (416) 644-5344
Fax:        (416) 598-3730

and

**DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto, ON  M5V 3J7

**Robin B. Schwill**  LSUC#:  38452I
Email:  rschwill@dwpv.com
Tel:        (416) 863-5502
**Sean Campbell**  LSUC#:  49514J
Email:  scampbell@dwpv.com
Tel:        (416) 367-7473
Fax:        (416) 863-0871

Lawyers for the Joint Administrators of Nortel Networks UK Limited (In Administration)