# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| --------------------------------------------------X | : | Chapter 11 |
| | : | |
| *In re* | : | Case No. 09-10138 (KG) |
| | : | |
| Nortel Networks Inc., *et al.*,[1] | : | Jointly Administered |
| | : | |
| Debtors. | : | **Re: D.I. 9946, 9947, 10167** |
| --------------------------------------------------X | | |

## JOINT OPPOSITION TO THE JOINT ADMINISTRATORS' MOTION FOR LEAVE TO APPEAL FROM ORDER APPROVING ALLOCATION PROTOCOL

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Debtors and Debtors in Possession*

*Counsel for the Official Committee of Unsecured Creditors*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

# TABLE OF CONTENTS

**Page**

Table of Authorities ....................................................................................... ii

Nature and Stage of Proceedings .................................................................. 1

Summary of Argument.................................................................................. 2

Statement of Facts......................................................................................... 4

Argument....................................................................................................... 9

I.      THE JAs CANNOT MEET THE STANDARDS FOR INTERLOCUTORY
        APPEAL UNDER 28 U.S.C. § 1292(b) OR ESTABLISH
        EXCEPTIONAL CIRCUMSTANCES ............................................................ 9

        A.      The Interlocutory Order Did Not Involve A Controlling
                Question Of Law...................................................................... 10

        B.      There Is No Substantial Ground For Difference Of Opinion
                As To The Controlling Question Of Law.................................. 12

        C.      An Immediate Appeal From The Interlocutory Order Would Not
                Materially Advance The Ultimate Termination Of This Litigation ........... 16

        D.      Even If The § 1292(b) Requirements Were Met,
                The JAs Cannot Demonstrate Exceptional Circumstances
                Justifying Interlocutory Appeal ................................................ 18

II.     THIS COURT SHOULD NOT EXERCISE PENDENT JURISDICTION
        OVER THE OTHERWISE UNAPPEALABLE ORDER
        APPROVING THE ALLOCATION PROTOCOL ............................................. 19

Conclusion..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Rules and Statutes

11 U.S.C. § 105(a) ......................................................................................... 11

28 U.S.C. § 1292(b) ....................................................................................... 9

Fed. R. Bankr. P. 9014(e)............................................................................. 11

## Cases

*Aluminium Bahr. B.S.C. v. Dahdaleh*,
Civ. No. 8-299, 2012 U.S. Dist. LEXIS 153457 (W.D. Pa. Oct. 25, 2012)....................... 10

*AMC Investors LLC v. Eugenia VI Venture Holdings Ltd.*,
Civil Nos. 11-592 (NLH), 11-593 (NLH), 2012 U.S. Dist. LEXIS 34677 (D. Del. Mar.
14, 2012)........................................................................................................ 10

*Augustin v. New Century Liquidating Trust (In re New Century Holdings, Inc.)*,
Bk. No. 07-10416 (KJC), Civ. No. 09-378-SLR, 2010 WL 1170354 (D. Del. Mar. 24,
2010) ............................................................................................................. 19

*Borden Co. v. Sylk*,
410 F.2d 843 (3d Cir. 1969) .......................................................................... 18

*Bowie Produce Co. v. Magic Am. Cafe, Inc. (In re Magic Rests., Inc.)*,
202 B.R. 24 (D. Del. 1996) ............................................................................ 12

*Brown v. City of Pittsburgh*,
586 F.3d 263 (3d Cir. 2009) .......................................................................... 20

*Brown v. Trueblue, Inc.*,
Civil Action No. 1:10-CV-0514, 2012 U.S. Dist. LEXIS 52811
(M.D. Pa. Apr. 16, 2012)............................................................................... 17

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978)....................................................................................... 18

*DeLalla v. Hanover Ins.*,
Civil No. 09-2340 (RBK/JS), 2010 U.S. Dist. LEXIS 104323 (D.N.J. Sept. 30, 2010)..... 18

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
269 F.3d 187 (3d Cir. 2001) .......................................................................... 20

*Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC (In re Los Angeles
Dodgers LLC)*,
465 B.R. 18 (D. Del. 2011) ............................................................................ 10

**Page(s)**

*Haberern v. Lehigh & New England Ry. Co.,*
554 F.2d 581 (3d Cir. 1977) ...................................................................... 19

*Hall v. Wyeth, Inc.,*
Civil Action No. 10-738, 2010 U.S. Dist. LEXIS 128168 (E.D. Pa. Dec. 2, 2010)........... 10

*Hulmes v. Honda Motor Co.,*
936 F. Supp. 195 (D.N.J. 1996) .................................................................. 18-19

*In re AbitibiBowater Inc.,*
Case No. 09-11296 (KJC), ECF No. 760 (Bankr. D. Del. July 27, 2009) ........................ 13

*In re Archibald Candy Corp., et al.,*
No. 04-B-03200, ECF No. 497 (Bankr. N.D. Ill. June 24, 2004)...................................... 14

*In re Barzel Indus. Inc.,*
Case No. 09-13204 (CSS), ECF No. 55 (Bankr. D. Del. Sept. 17, 2009)........................ 13

*In re Blackwell ex rel. Estate of I.G. Servs., Ltd.,*
244 B.R. 377 (Bankr. W.D. Tex. 2000) ......................................................... 14

*In re Blackwell ex rel. Estate of I.G. Servs., Ltd.,*
267 B.R. 741 (Bankr. W.D. Tex. 2001) ......................................................... 14, 15

*In re Circuit City Stores, Inc., et al.,*
No. 08-35653, ECF No. 7455 (Bankr. E.D. Va. May 7, 2010) ...................................... 14

*In re Del. & Hudson Ry. Co.,*
96 B.R. 469 (D. Del. 1989) ......................................................................... 9

*In re Financial Asset Mgmt. Found.,*
No. 01-03640, ECF No. 58 (Bankr. S.D. Cal. July 25, 2001)........................................ 14

*In re Frascella Enters.,*
Miscellaneous Action No. 08-100, 2008 U.S. Dist. LEXIS 68279
(E.D. Pa. Sept. 10, 2008)............................................................................ 12

*In re Inverworld, Inc.,*
No. 99-53169-cag (Bankr. W.D. Tex. Oct. 22, 2009) ....................................... 14

*In re Laidlaw Inc.,*
No. 01-14099, ECF No. 164 (Bankr. W.D.N.Y. Aug. 20, 2001) ...................................... 13

*In re Lancelot Investors Fund L.P., et al.,*
No. 08-28225, ECF No. 279 (Bankr. N.D. Ill. Sept. 8, 2009)........................................... 14

**Page(s)**

*In re Manhattan Inv. Fund Ltd.*,
No. 00-10922 (BRL), ECF No. 77 (Bankr. S.D.N.Y. May 31, 2000) ............................... 13

*In re Mosaic Group, Inc.*,
No. 02-81440, ECF No. 124 (Bankr. N.D. Tex. Jan. 10, 2003) ........................................ 14

*In re Pioneer Cos.*,
No. 01-38259, ECF No. 29 (Bankr. S.D. Tex. Aug. 1, 2001) .......................................... 14

*In re Quebecor World (USA) Inc.*,
No. 08-10152 (JMP), ECF No. 528 (Bankr. S.D.N.Y. Apr. 9, 2008)............................... 13

*In re Smurfit-Stone Container Corp.*,
Case No. 09-10235 (BLS), 2010 Bankr. LEXIS 5407 (Bankr. D. Del. June 21, 2010) ..... 13

*In re Solv-Ex Canada Ltd.*,
No. 97-14361, ECF No. 255 (Bankr. D.N.M. Feb. 4, 1998)............................................ 14

*Invista S.A.R.L. v. Rhodia, S.A.*,
625 F.3d 75 (3d Cir. 2010) ............................................................................................ 19

*Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*,
Civil Action No. 2:10–cv–05108 (DMC) (JAD), 2011 U.S. Dist. LEXIS 16533
(D.N.J. Feb. 17, 2011)..................................................................................................... 18

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974) ............................................................................................. 9

*Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*,
451 B.R. 343 (D. Del. 2011)................................................................................... 9, 10-11

*Maxwell Commc'n Corp. plc, Homan v. Societe Generale (In re Maxwell
Commc'n Corp. plc)*,
93 F.3d 1036, (2d Cir. 1996) .......................................................................................... 14

*Neuner v. C.G. Realty Capital Ventures-1, L.P. (In re Sharps Run Assocs., L.P.)*,
157 B.R. 766 (D.N.J. 1993)............................................................................................. 12

*Patrick v. Dell Fin. Servs.*,
366 B.R. 378 (M.D. Pa. 2007)................................................................................... 16, 18

*Pikes Peak Family Housing, LLC v. United States*,
40 Fed. Cl. 673 (Fed. Cl. 1998) ..................................................................................... 12

*Pollock & Riley, Inc. v. Pearl Brewing Co.*,
498 F.2d 1240 (5th Cir. 1974) ........................................................................................ 19

**Page(s)**

*Resolution Trust Corp. v. Cityfed Fin. Corp.*,
57 F.3d 1231 (3d Cir. 1995) ............................................................................    11

*Samson Res. Co. v. ConocoPhillips Co. (In re SemCrude, L.P.)*,
Civ. No. 10-447-SLR, 2010 U.S. Dist. LEXIS 136391 (D. Del. Oct. 26, 2010) ...............    10, 18

*Simon & Schuster, Inc. v. Advanced Mktg. Servs., Inc. (In re Advanced Mktg. Servs., Inc.)*,
Case No. 06-11480-CSS, 2008 U.S. Dist. LEXIS 27582 (D. Del. Apr. 3, 2008) ..............    12

*Stonington Partners Inc. v. Lernout & Hauspie Prods. N.V.*,
310 F. 3d 118 (3d Cir. 2002) ............................................................................    14-15

*Tischio v. Bontex, Inc.*,
16 F.Supp.2d 511 (D.N.J. 1998) ......................................................................    19

*Turi v. Main St. Adoption Servs., LLP*,
633 F.3d 496 (6th Cir. 2011) ............................................................................    20

*Victor v. Edison Bros. Stores, Inc. (In re Edison Bros. Stores, Inc.)*,
Civil Action No. 96-177-SLR, 1996 U.S. Dist. LEXIS 9061 (D. Del. June 27, 1996) ......    9

*Zenith Radio Corp. v. Matsushita Elec. Indus. (In re Japanese Elec. Prods. Antitrust Litig.)*,
494 F. Supp. 1190 (E.D. Pa. 1980) ...................................................................    12

**Other Authorities**

16 Charles Alan Wright, Arthur R. Miller, et al., FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed. 2012) ......................................................................................    11, 18

American Law Institute's *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* ......................................................................................    15

Elizabeth Warren & Jay L. Westbrook, *Court-to-Court Negotiation*, 22-NOV Am. Bankr. Inst. J. 28 (2003) ............................................................................................    13, 14

Nortel Networks Inc. and its affiliated debtors, as respective debtors and debtors in possession ("Debtors" or "US Debtors"), together with the Official Committee of Unsecured Creditors ("Committee"), hereby respectfully oppose the Motion for Leave to Appeal From Order Approving Allocation Protocol ("Motion") [D.I. 10167].

## Nature and Stage of Proceedings

This Motion arises out of the Debtors' chapter 11 proceedings, which have been pending before the Delaware Bankruptcy Court ("Bankruptcy Court" or "US Court") since January 14, 2009 ("Petition Date"). The Debtors were part of a multinational group of over 140 separate companies known collectively as Nortel. On the Petition Date, in addition to the US filings, insolvency proceedings were filed in each of the United Kingdom and Canada for related entities. Partners of Ernst & Young LLC were appointed as the Joint Administrators ("JAs") of the Nortel companies in Europe.

The Nortel group liquidated over the past several years, leaving approximately $7.5 billion in sale proceeds to be allocated among the separate Nortel entities around the world. The Motion relates to the process by which those sale proceeds must be allocated and the related process to address billions of dollars of claims filed against the US Debtors by the JAs ("EMEA Claims") and by certain entities asserting claims relating to a UK pension fund established by a UK Nortel entity now under the control of the JAs ("UK Pension Claims," and with EMEA Claims, "Claims").

The governing agreement that allowed the sale of the Nortel businesses, the Interim Funding and Settlement Agreement ("IFSA"), was approved by the US Court and Ontario Superior Court of Justice ("Canadian Court," and together with the US Court, the "Courts")

pursuant to separate orders on June 29, 2009.  The JAs participated in the negotiation of the
IFSA and signed it.

The various parties to the IFSA attempted to agree to an allocation of the sale proceeds
multiple times but failed.  In June 2011, the US Debtors and the Committee asked the Courts to
hold a joint hearing to allocate the sale proceeds.  The JAs opposed that request, arguing that the
IFSA required arbitration on the issue of allocation.  All other parties to the IFSA disagreed.
Pending their decisions, the Courts instructed the parties to mediate once again.  This mediation
also failed, leading to the Courts issuing opinions in April 2013 denying the JAs' request to
compel arbitration and granting the requests that the allocation dispute and claims proceed to
trial.

The JAs filed a notice of appeal of the Bankruptcy Court's decision denying the
arbitration cross-motion.  The Bankruptcy Court certified that appeal to the Third Circuit under
28 U.S.C. § 158(d)(2) on May 1, 2013.

This Motion relates to another portion of the Bankruptcy Court decision and order, which
directed that the parties submit for approval a protocol setting forth certain procedures for
conducting hearings relating to allocation and the Claims.  No protocol has yet been approved.
Nevertheless, the JAs ask that this Court grant leave to appeal this interlocutory order.  The US
Debtors and the Committee hereby oppose that relief.

## Summary of Argument

1.      Interlocutory appeals are only permitted where the moving party presents a
controlling question of law as to which there is a substantial ground for a difference of opinion,
demonstrates that an immediate appeal from the order will materially advance the ultimate

termination of the litigation, and makes a showing of exceptional circumstances.  None of these stringent requirements – much less each and every one of them – is met here.

2.     First, as the JAs effectively concede in their papers, the question of whether the Courts can "co-adjudicate a proceeding" while respecting each courts' independence and due process rights is not a controlling question of law.  Even if it were, it is not the type of controlling question of law referenced in the case law and requires a fact-intensive review of a record that does not yet exist.

3.     Second, the Motion does not invoke any question where there is substantial ground for difference of opinion.  The JAs assert that "whether separate courts of two sovereign nations can co-adjudicate a proceeding" is novel and highly complex.  Motion at 4, 14.  Even were novelty sufficient, this issue is not novel in cross-border bankruptcies or in these very cases.  Cross-border insolvency procedures are commonplace in this era of global companies and insolvencies.  Here, a cross-border protocol, which provides for the coordination between the US and Canadian Courts, has been in place since January 15, 2009.  Moreover, the JAs repeatedly agreed, in the IFSA and in eight Escrow Agreements pertaining to eight asset sales conducted under the direction of both Courts, that disputes "*must be commenced in* . . . a joint hearing of both the Canadian and US Courts . . ."  IFSA § 16(b)(ii) (emphasis added).

4.     Third, the immediate appeal would not materially advance the litigation or avoid time and expense.  Instead, it would have the opposite effect by potentially invalidating practical and logistical efficiencies that are saving the parties – and their creditors – time and money and it would increase the likelihood of successive appeals.

5.     Finally, the JAs provide no reason why this case presents "exceptional circumstances" that would justify departing from the ordinary rule disfavoring interlocutory appeals because there are none.

6.     The JAs' alternative argument – that the Court should exercise pendent jurisdiction to hear the JAs' appeal from the interlocutory portions of the Allocation Protocol Order in tandem with their appeal as of right from the denial of their motion to compel arbitration – also fails.  The issue on the appeal from the denial of the motion to compel arbitration is only whether an arbitration agreement exists between the parties; it does not concern the propriety of procedures that will be followed in the US Court in the event that (as both Courts properly found) there is no agreement to arbitrate.

7.     The Motion is also premature.  No allocation protocol has been entered and, if entered, it would be nothing more than a procedural framework that requires further procedures to be established.  Thus, there simply is nothing to yet appeal.  No decision has been made and no rights have been prejudiced.  Moreover, even if there were something to appeal, it is nothing more than an interim procedural decision, which does not meet the high criteria to justify an immediate appeal.

### Statement of Facts

On the Petition Date, the US Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions under chapter 11.   Also on the Petition Date, the US Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the US

---

[2]     Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009 [D.I. 1098].

Debtors, "Nortel"), and certain of their Canadian affiliates (the "Canadian Debtors")[3] commenced a proceeding with the Canadian Court under the Companies' Creditors Arrangement Act (Canada) ("CCAA"), seeking relief from their creditors ("Canadian Proceedings") and a Monitor, Ernst & Young Inc., was appointed by the Canadian Court.  Similarly, on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, "EMEA Debtors")[4] into administration under the control of the JAs.

The Bankruptcy Court approved the Court-to-Court Protocol on January 15, 2009,[5] and the Canadian Court approved the Court-to-Court Protocol on the Petition Date, which was later amended by order of the Bankruptcy Court on June 29, 2009[6] and by an order of the Canadian Court on that same date (as amended, "Cross-Border Protocol").  The Cross-Border Protocol explicitly provided that the "approval and implementation of this Protocol shall not divest nor diminish the Courts' respective independent jurisdiction over the subject matter of the US Proceedings and the Canadian Proceedings, respectively."  *Id.* ¶ 7.

On or about June 9, 2009, the US Debtors, the Canadian Debtors and the EMEA Debtors, excluding Nortel Networks S.A. and Nortel Networks AG, entered into the IFSA.[7]  Among other things, the parties to the IFSA agreed not to condition the execution of any sale agreement upon

---

[3]       The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]       The EMEA Debtors include the following entities:  Nortel Networks UK Limited ("NNUK"), Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[5]       *Order Approving Cross-Border Court-to-Court Protocol*, Jan. 15, 2009 [D.I. 54].

[6]       *Order Approving Stipulation of the Debtors and the Official Comm. of Unsecured Creditors of Nortel Networks Inc., et. al., Amending the Cross-Border Court-to-Court Protocol*, June 29, 2009 [D.I. 990].

[7]       Nortel Networks S.A. and Nortel Networks AG acceded to the IFSA as EMEA Debtors – each agreeing "to perform and comply with its obligations under the IFSA as if it had been a party from the date of execution thereof" – on or about September 11, 2009.  *Accession and Amendment Agreement relating to the Interim Funding Settlement Agreement,* Sept. 11, 2009.

reaching agreement regarding the allocation (or a binding procedure for allocation) of the ultimate sale proceeds.  IFSA § 12(a).  The IFSA instead provides that all sale proceeds shall be held in escrow accounts (each, an "Escrow Account"), and shall not be distributed

> in advance of either (i) agreement of all of the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the [Interim Sales] Protocol (as defined below) applicable to the Sale Proceeds, and subject in each case to payment of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

Id. § 12(b).  Specifically, all parties, including the JAs, on behalf of the EMEA Debtors, "agree[d] that any claim, action or proceeding . . . seeking any relief whatsoever to the extent relating to the matters [in the IFSA] *must be commenced in . . . a joint hearing of both the Canadian and US Courts conducted under the Cross-Border Protocol. . . .*"  Id. § 16(b)(ii) (emphasis added).

Subsequent to the IFSA, numerous sales were held (collectively, "Sale Transactions") raising approximately $7.5 billion in sale proceeds.[8]  In connection with each of these Sale Transactions, the US Debtors, Canadian Debtors and EMEA Debtors all agreed to submit to the joint jurisdiction of the Courts under the separate escrow agreements for each sale.  These agreements provide that the parties submit to the "exclusive jurisdiction" of the Courts for all disputes "arising under or out of, in respect of, or in connection with" the escrow agreements.[9]

---

[8]    The sale orders appear on the Bankruptcy Court docket at D.I. 539, D.I. 1205, D.I. 1514, D.I. 1760, D.I. 2070, D.I. 2065, D.I. 2632, D.I. 4054, and D.I. 5935.

[9]    MEN Distribution Escrow Agreement, dated as of Mar. 19, 2010, ¶ 21; *see also* Escrow Agreement, dated as of Mar. 2009, ¶ 20; Escrow Agreement, dated as of Nov. 11, 2009, ¶ 21; Escrow Agreement, dated as of Dec. 1, 2009, ¶ 20; Escrow Agreement, dated as of Dec. 18, 2009, ¶ 21; GSM/GSM-R Distribution Escrow Agreement, dated as of Mar. 31, 2010, ¶ 21; CVAS Distribution Escrow Agreement, dated as of May 27, 2010, ¶ 20; GSM Retained Contracts Distribution Escrow Agreement, dated as of June 3, 2010, ¶ 20; MSS Distribution Escrow Agreement, dated as of Mar. 11, 2011, ¶ 20 (together, the "Escrow Agreements").  The limited exception is the jurisdictional provision in the first Escrow Agreement, executed in March of 2009, which provided for exclusive jurisdiction only in the Bankruptcy Court.  However, that agreement is otherwise substantively consistent with jurisdictional provisions in the other Escrow Agreements.  *See* Escrow Agreement, dated as of Mar. 2009, ¶ 20.

On April 3, 2013, the Bankruptcy Court issued an opinion regarding the Motion and Cross-Motion [D.I. 9946] ("Opinion") finding that "the Nortel Parties did not agree to arbitrate" the allocation dispute and the "Court has jurisdiction and the IFSA [calls] for the submission of an allocation protocol."  Opinion at 15.   That same day, the Bankruptcy Court issued an order granting the Allocation Protocol Motion, denying the Cross-Motion to Compel Arbitration, requesting submissions of an allocation protocol, and setting a trial to determine the allocation of the sales proceeds to commence on January 6, 2014 [D.I. 9947] ("Order").  The Order required the parties to submit to the Court their proposed versions of an allocation protocol on or before April 15, 2013, which the parties did.

The following pleadings (among others) were filed in connection with the briefing that led to the Opinion and Order:

- On April 25, 2011, the Debtors and Committee filed the *Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief* [D.I. 5307] (the "Allocation Protocol Motion").

- On May 19, 2011, the JAs filed the *(I) Objection to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (II) Cross-Motion to Compel Arbitration* [D.I. 5444] (the "Cross-Motion to Compel Arbitration").

- On June 3, 2011, the JAs, on behalf of the EMEA Debtors and certain other EMEA entities, filed the EMEA Claims.  The claims are unliquidated in amount, but clearly total in the billions of dollars.

- On June 7, 2011, the Bankruptcy Court heard oral argument on the Motion and Cross-Motion but reserved decision while the parties returned to mediation, which was ultimately unsuccessful.

- On March 7, 2013, the Courts heard further oral argument on the Motion and Cross-Motion.

On April 16, 2013, the Court issued an order [D.I. 10145] scheduling a joint hearing with the Canadian Court on April 24, 2013 to "resolve scheduling and discovery issues and to

consider Litigation Timetables and Discovery Plans" that relate to the allocation dispute, EMEA Claims, and UK Pension Claims.

On April 17, 2013, the JAs filed a *Notice of Appeal* [D.I. 10166] (the "Joint Administrators' Appeal") regarding the denial of their Cross-Motion to Compel Arbitration and the present Motion.

On April 23, 2013, the Debtors and the Committee filed a *Joint Request for Certification of the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2)* [D.I. 10244] ("Certification Motion"). The JAs filed a joinder in part and response to the Certification Motion on April 29, 2013 [D.I. 10367].

On April 23, 2013, the Debtors and the Committee filed a *Joint Motion for an Order Retaining Jurisdiction Pending Appeal* [D.I. 10246] ("Jurisdiction Motion"). The JAs filed an objection to the Jurisdiction Motion and cross-motion to confirm the stay pending appeal on April 29, 2013 [D.I. 10368] ("Objection to Jurisdiction Motion").

On April 24, 2013, a joint hearing was held to resolve scheduling and discovery issues. There, the JAs argued that the Bankruptcy Court lacked jurisdiction. The Bankruptcy Court concluded that the hearing should proceed "in the interest of justice," Hr'g Tr. 35:8-9 (Apr. 24, 2013), and scheduled a hearing for Wednesday, May 1, 2013 to address the Certification and Jurisdiction Motions. *Notice of Hearing* [D.I. 10288]. On May 1, 2013, the Bankruptcy Court granted the Certification Motion and reserved decision on the Jurisdiction Motion.

<u>**Argument**</u>

I.      **THE JAs CANNOT MEET THE STANDARDS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) OR ESTABLISH EXCEPTIONAL CIRCUMSTANCES**

Interlocutory orders from a bankruptcy court are appealable to the district court with leave of court pursuant to 28 U.S.C. § 158(a)(3). Although § 158 does not specify the standard for determining appealability, courts have adopted by reference the standard for interlocutory appeal from district court orders set forth in 28 U.S.C. § 1292(b). *See In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989); *Victor v. Edison Bros. Stores, Inc. (In re Edison Bros. Stores, Inc.)*, Civil Action No. 96-177-SLR, 1996 U.S. Dist. LEXIS 9061, at *9 (D. Del. June 27, 1996). Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal only if the moving party establishes that the order "[1] involves a controlling question of law [2] as to which there is substantial ground for a difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

Even if the movant satisfies these elements, however, a court should deny leave where it "does not find any circumstance or reason that distinguishes the case from the procedural norm and establishes the need for immediate review." *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 451 B.R. 343, 349 (D. Del. 2011). The party seeking leave to appeal must establish that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *Id.* at 346 (internal quotation marks omitted); *see also, Katz*, 496 F.2d at 764 (noting the policy consideration of avoiding "piecemeal review and its attendant delays and waste of time" in drafting §1292(b)). The JAs have not met their burden to justify this exceptional relief.

9

A.    **The Interlocutory Order Did Not Involve A Controlling Question Of Law**

The issue raised by the JAs – whether the Courts "can co-adjudicate a proceeding, each purporting to act under its own substantive and procedural rules, while maintaining each court's sovereignty and independence and observing the due process rights of the parties," Motion at 4, – is not a controlling question of law under § 1292(b).

A controlling question of law is one which (1) if decided erroneously, would lead to reversal on appeal, or (2) is "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 F.2d at 755.   The JAs simply cannot meet the controlling question of law standard. There is no discrete legal issue that can be resolved. *Cf. Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC (In re Los Angeles Dodgers LLC)*, 465 B.R. 18, 29 (D. Del. 2011) (enforceability of a no shop provision was controlling question of law); *Aluminium Bahr. B.S.C. v. Dahdaleh*, Civ. No. 8-299, 2012 U.S. Dist. LEXIS 153457, at *12 (W.D. Pa. Oct. 25, 2012) (whether state's long-arm statue permitted exercise of personal jurisdiction over non-residents was controlling question of law); *Hall v. Wyeth, Inc.*, Civil Action No. 10-738, 2010 U.S. Dist. LEXIS 128168, at *7 (E.D. Pa. Dec. 2, 2010) (preemption of state law granting immunity was controlling question of law).   In contrast, where an issue is fact-sensitive it generally does not present a controlling question of law.   *Cf. Samson Res. Co. v. ConocoPhillips Co. (In re SemCrude, L.P.)*, Civ. No. 10-447-SLR, 2010 U.S. Dist. LEXIS 136391, at *12 (D. Del. Oct. 26, 2010) (no controlling question of law "because the bankruptcy court's [order] was based on its finding that it had related to jurisdiction, which is a fact-intensive inquiry");  *AMC Investors LLC v. Eugenia VI Venture Holdings Ltd.*, Civil Nos. 11-592 (NLH), 11-593 (NLH), 2012 U.S. Dist. LEXIS 34677, at *7-8 (D. Del. Mar. 14, 2012) (no interlocutory appeal where bankruptcy court's decision was based on case law and the facts specific to the case); *Mata*, 451 B.R. at 347 (no

controlling issue of law where court would have to engage in a "detailed study of the facts and the record to ultimately determine the outcome of the appeal");  *Resolution Trust Corp. v. Cityfed Fin. Corp.*, 57 F.3d 1231, 1236 n.6 (3d Cir. 1995) (issue not ripe for interlocutory appeal given its "fact-intensive nature"); 16 Charles Alan Wright, Arthur R. Miller, et al., FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed. 2012) [hereinafter Wright & Miller, FEDERAL PRACTICE AND PROCEDURE] ("There is indeed no reason to suppose that interlocutory appeals are to be certified for the purpose of inflicting upon courts of appeals an unaccustomed and ill-suited role as factfinders.").

The issue the JAs have presented is not a controlling question of law under § 1292(b), but rather a fact-intensive question that requires a review of a myriad of discretionary decisions, *many of which the Bankruptcy Court has not yet made*.  To illustrate, whether or not any allocation process is improper such that it exceeds the Bankruptcy Court's broad authority to fashion remedies[10] or violates due process or "U.S. procedural law," *see* Motion at 14, will turn only on the actual procedures adopted and application of those procedures during litigation.

To date, no final allocation protocol, discovery procedures or related discovery schedule has been ordered.  Instead, the JAs concede that "[t]he precise rules of procedure, rules of evidence and constitutional principles that will apply in these various phrases of the proceedings *are not specified* in the Allocation Protocol," Motion at 10-11 (emphasis added), and only assert that the Order "*threatens* to compromise [the Bankruptcy Court's] independence, sovereignty and the due process rights of the litigants," *Id.* at 13 (emphasis added), and "*may* result" in a breach of their rights.  *Id.* at 14 (emphasis added).

---

[10]    A bankruptcy judge generally has broad discretion to fashion appropriate procedure in his or her Court. *See, e.g.*, 11 U.S.C. § 105(a); Fed. R. Bankr. P. 9014(e).

The Court need go no further and may deny their premature appeal given the lack of a controlling question of law. *Pikes Peak Family Housing, LLC v. United States*, 40 Fed. Cl. 673, 686 (Fed. Cl. 1998) ("Absent . . . a controlling question of law . . ., the court need not reach the question of whether there are substantial grounds for difference of opinion . . .") (internal quotation marks omitted).

**B.      There Is No Substantial Ground For Difference Of Opinion
             As To The Controlling Question Of Law**

The JAs also cannot show a substantial difference of opinion as required under § 1292(b). The JAs argue that the Allocation Protocol will be both "novel and highly complex" and "unprecedented" and therefore constitutes a substantial grounds for difference of opinion. Motion at 14-15.  This argument is both legally unfounded and factually baseless.

First, as a matter of law, "[a] question of first impression [or] a lack of judicial authority on a legal question . . . do[es] not demonstrate a substantial ground for difference of opinion." *Simon & Schuster, Inc. v. Advanced Mktg. Servs., Inc. (In re Advanced Mktg. Servs., Inc.)*, Case No. 06-11480-CSS, 2008 U.S. Dist. LEXIS 27582, at *4 (D. Del. Apr. 3, 2008); *see also Bowie Produce Co. v. Magic Am. Cafe, Inc. (In re Magic Rests., Inc.)*, 202 B.R. 24, 26 (D. Del. 1996) ("[T]he Court concludes that a scarcity or void of judicial opinion alone is insufficient to justify an interlocutory appeal."); *Neuner v. C.G. Realty Capital Ventures-1, L.P. (In re Sharps Run Assocs., L.P.)*, 157 B.R. 766, 779 n.6 (D.N.J. 1993).  Although a novel issue or an issue of first impression *may* be relevant to whether a substantial ground for difference of opinion exists, the mere fact that the appeal would present a question of first impression is not, of itself, sufficient to show that the question is one on which there is a substantial ground for difference of opinion; something more is needed.  *See In re Frascella Enters.*, Miscellaneous Action No. 08-100, 2008 U.S. Dist. LEXIS 68279, at *7 (E.D. Pa. Sept. 10, 2008).

For example, in *In re Japanese Electronic Products Antitrust Litigation* – the sole case

the JAs cited in support – the court finds that a substantial ground for difference of opinion on

the interpretation of a 1916 statute existed because the challenged order involved an issue of first

impression and the statute had never been interpreted. *See Zenith Radio Corp. v. Matsushita*

*Elec. Indus. (In re Japanese Elec. Prods. Antitrust Litig.)*, 494 F. Supp. 1190, 1243 (E.D. Pa.

1980). Here, even if the allocation protocol were an issue of first impression, which it is not, the

JAs point to no additional factors that would lead this Court to hold that the second § 1292(b)

requirement has been met.

<u>Second</u>, as a matter of fact, the allocation protocol in question, which involves a cross-

border insolvency procedure, is not "novel" or "unprecedented," as the JAs assert. *See* Motion at

3-4. This is true both generally and in Nortel in particular. In this age of transnational

businesses, cross-border insolvency procedures are commonplace and widely accepted in

international bankruptcies. *See* Elizabeth Warren & Jay L. Westbrook, *Court-to-Court*

*Negotiation*, 22-NOV Am. Bankr. Inst. J. 28, 28 (2003) ("Protocols have become enormously

important in cross-border cases.") Cross-border insolvency protocols *have been recognized in*

*bankruptcy courts in at least 10 U.S districts*, including in the Bankruptcy Courts for the District

of Delaware,[11] Southern District of New York,[12] Western District of New York,[13] Northern

---

[11] *See, e.g.*, *In re Barzel Indus. Inc.*, Case No. 09-13204 (CSS), ECF No. 55 (Bankr. D. Del. Sept. 17, 2009) (order approving cross-border court-to-court protocol); *In re AbitibiBowater Inc.*, Case No. 09-11296 (KJC), ECF No. 760 (Bankr. D. Del. July 27, 2009) (order approving cross-border court-to-court protocol). *See also In re Smurfit-Stone Container Corp.*, Case No. 09-10235 (BLS), 2010 Bankr. LEXIS 5407, at *3 (Bankr. D. Del. June 21, 2010) (confirming a joint plan of reorganization and noting "the [U.S.] Bankruptcy Court and the Canadian Bankruptcy Court approved the Cross-Border Insolvency Protocol, which facilitates coordination between the [various proceedings] in order to effectuate an orderly and efficient administration of the Proceedings").

[12] *See, e.g.*, *In re Quebecor World (USA) Inc.*, No. 08-10152 (JMP), ECF No. 528 (Bankr. S.D.N.Y. Apr. 9, 2008) (order approving cross-border insolvency protocol); *In re Manhattan Inv. Fund Ltd.*, No. 00-10922 (BRL), ECF No. 77 (Bankr. S.D.N.Y. May 31, 2000) (order approving cross-border protocol).

[13] *See, e.g.*, *In re Laidlaw Inc.*, No. 01-14099, ECF No. 164 (Bankr. W.D.N.Y. Aug. 20, 2001) (order approving cross-border insolvency protocol).

District of Texas,[14] Southern District of Texas,[15] Western District of Texas,[16] Northern District

of Illinois,[17] Southern District of California,[18] Eastern District of Virginia,[19] and the District of

New Mexico.[20]  In a landmark pre-chapter 15 case in which the Bankruptcy Court for the

Southern District of New York and the High Court of Justice in London authorized the

coordination of their efforts pursuant to a cross-border protocol, the Second Circuit recognized

that "bankruptcy courts may best be able to effectuate the purposes of the bankruptcy law by

cooperating with foreign courts on a case-by-case basis."  *Maxwell Commc'n Corp. plc, Homan*

*v. Societe Generale (In re Maxwell Commc'n Corp. plc)*, 93 F.3d 1036, 1042, 1053 (2d Cir.

1996).  In a more recent Third Circuit case, although the parties were not able to agree to a

protocol, the court "strongly" recommended that the Delaware and Belgian courts make an effort

to reach agreement as to how to proceed and "urge[d] that . . . communication from one court to

---

[14]    *See, e.g., In re Mosaic Group, Inc.*, No. 02-81440, ECF No. 124 (Bankr. N.D. Tex. Jan. 10, 2003) (order approving cross-border protocol).

[15]    *See, e.g., In re Pioneer Cos.*, No. 01-38259, ECF No. 29 (Bankr. S.D. Tex. Aug. 1, 2001) (interim order approving motion for approval of cross-border insolvency protocol).

[16]    *See, e.g., In re Inverworld, Inc.*, No. 99-53169-cag (Bankr. W.D. Tex. Oct. 22, 2009) (order approving cross-border insolvency protocol); Elizabeth Warren & Jay L. Westbrook, *Court-to-Court Negotiation*, 22-NOV Am. Bankr. Inst. J. 28, 28-29 (2003) (describing favorably the creation of the protocol in *In re Inverworld*, a case "rife with possibilities for extremely expensive litigation in three national courts and for conflicting decisions"). *See also In re Blackwell ex rel. Estate of I.G. Servs., Ltd.*, 267 B.R. 741, 744 (Bankr. W.D. Tex. 2001); *In re Blackwell ex rel. Estate of I.G. Servs., Ltd.*, 244 B.R. 377, 390 n.18 (Bankr. W.D. Tex. 2000) (noting that the approved cross-border insolvency protocol was "designed to resolve potential conflicts, eliminate wasteful jurisdictional battles among courts in three different countries, maximize efficient creditor participation, and minimize administrative expenses").

[17]    *See, e.g., In re Lancelot Investors Fund L.P., et al.*, No. 08-28225, ECF No. 279 (Bankr. N.D. Ill. Sept. 8, 2009) (order approving trustee's motion for cross-border insolvency protocol agreement); *In re Archibald Candy Corp., et al.*, No. 04-B-03200, ECF No. 497 (Bankr. N.D. Ill. June 24, 2004) (order establishing protocol for cross-border joint hearings).

[18]    *See, e.g., In re Financial Asset Mgmt. Found.*, No. 01-03640, ECF No. 58 (Bankr. S.D. Cal. July 25, 2001) (order approving cross-border insolvency stipulation).

[19]    *See, e.g., In re Circuit City Stores, Inc., et al.*, No. 08-35653, ECF No. 7455 (Bankr. E.D. Va. May 7, 2010) (order approving debtors' motion for entry of an order implementing a procedural protocol for the administration of cross-border insolvency proceedings).

[20]    *See, e.g., In re Solv-Ex Canada Ltd.*, No. 97-14361, ECF No. 255 (Bankr. D.N.M. Feb. 4, 1998) (order granting motion for approval of cross-border insolvency protocol and bringing into effect the terms of the cross-border insolvency protocol).

the other regarding cooperation or the drafting of a protocol could be advantageous to the orderly administration of justice." *Stonington Partners Inc. v. Lernout & Hauspie Prods. N.V.*, 310 F. 3d 118, 133 (3d Cir. 2002) (citing *In re Maxwell* as a "good example").  Indeed, both the United States and Canada are parties to the UNCITRAL Model Law on Cross-Border Insolvency, and more than 30 cross-border insolvency protocols have been implemented in proceedings taking place concurrently in the two countries.

In these cases, the Cross-Border Protocol has been in place since the start.  This Protocol specifically states one of its goals is to "honor the independence and integrity of the Courts and other courts and tribunals of the United States and Canada, respectively."  Cross-Border Protocol ¶6(c).  The Cross-Border Protocol confirmed such proceedings could not infringe on the sovereignty and independence of the two Courts.  *See* Motion at 6 (citing Cross-Border Protocol ¶¶ 7, 8, 12(f)).  At the same time, the Cross-Border Protocol allows the US and Canadian courts to "communicate with one another . . . with respect to any procedural matter relating to the Insolvency Proceedings," to "coordinate activities," and to "conduct joint hearings" with specific, listed procedures to be followed.  Cross-Border Protocol ¶12(a), (c), (d).  The protocol also incorporates the American Law Institute's *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases*.  Cross-Border Protocol at Schedule A.

With regard to the JAs' new concern about due process, at least one case has recognized that the task of the bankruptcy court operating under a cross-border protocol is "to determine what due process rules apply, then to assure that . . . the Protocol comports with those due process rules."  *In re Blackwell ex rel. Estate of I.G. Servs., Ltd.*, 267 B.R. 741, 754 (Bankr. W.D. Tex. 2001) (following the UNCITRAL Model Law in a case involving a cross-border insolvency protocol signed by district court, bankruptcy court and Grand Cayman court).

Moreover, the JAs have repeatedly agreed to the joint jurisdiction of the Courts and participated in joint proceedings between the Courts. For instance, the JAs agreed to submit the EMEA Debtors to the jurisdiction of the Courts in the IFSA and in eight Escrow Agreements pertaining to eight sales that were conducted under the auspices of the US Court and the Canadian Court. *See, supra* n.9. In fact, the JAs specifically agreed that any disputes relating to matters under the IFSA that would affect both the US and Canadian Debtors "*must be commenced . . . in a joint hearing of both the Canadian and US Courts conducted under the Cross-Border Protocol*" – acceding to the same procedures they now describe as "novel" and "unprecedented" and complain are inherently flawed. *See* IFSA § 16(b) (emphasis added).[21] Only after having reaped the benefits of all of these sales have the JAs begun to complain about the purportedly "unprecedented" and "novel" issues surrounding the joint resolution of issues. This about-face litigation position must be rejected.

## C.    An Immediate Appeal From The Interlocutory Order Would Not Materially Advance The Ultimate Termination Of This Litigation

The JAs also have failed to establish the third requirement of § 1292(b) —that resolution of the interlocutory appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Factors relevant to this prong of the test include "(1) whether the need for trial would be eliminated; (2) whether the trial would be simplified by the elimination of complex issues; and (3) whether discovery could be conducted more expeditiously and at less expense to the parties." *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 387 (M.D. Pa. 2007).

---

[21]    The JAs even participated in a purchase price dispute related to one of the sales and signed a stipulation entered in the US and Canadian Courts. The stipulation provided for the exclusive jurisdiction of the Courts under the Cross-Border Protocol. *Order Approving Stipulation by and Among the Sellers and Avaya Inc.*, Oct. 1, 2010 [D.I. 4058]; Order of the Ontario Superior Court of Justice (Commercial List) dated September 30, 2010, in proceedings under *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, in respect of Nortel Networks Corp. et al. (Court File No. 09-CL 7950).

None of these factors applies here.  First, the need for trial would not be eliminated, because even if this Court set aside the Order (but does not compel arbitration), the US Court must still allocate the proceeds from the sales of Nortel's global businesses.  Second, the trial would certainly not be simplified by the elimination of complex issues; "[o]n the contrary, the case would become exponentially more complex, expensive, and time consuming" as the parties' interim procedures would again need to be negotiated and parties may only be further encouraged to seek interlocutory review of the procedures.  *See Brown v. Trueblue, Inc.*, Civil Action No. 1:10-CV-0514, 2012 U.S. Dist. LEXIS 52811, at *22 (M.D. Pa. Apr. 16, 2012) (denying motion for interlocutory appeal).  Even if the Courts were forced to race to judgment in separate proceedings that could not be coordinated (the practical result of striking down the allocation protocol), cross-border discovery of documents and testimony would still be necessary, and the same parties would need to participate in *both* proceedings.  Further, striking down the ruling allowing the Courts to coordinate would only exacerbate the JAs' fear that allocation will be subject "to separate and potentially conflicting orders of two separate sovereign courts."  Motion at 14.  Finally, discovery would not be conducted more expeditiously and at less expense if the Order were overturned.  Again, the opposite would occur, as the parties could be forced to engage in cross-border discovery without the benefit of agreed-upon procedures – such as a joint repository for documents, shared access to deposition transcripts, coordinated expert discovery, and coordinated procedural rules intended to permit use of evidence in both U.S. and Canadian Courts – and disputes on discovery would be heard separately and likely on separate tracks causing an abundance of waste, inefficiency, and duplication.[22]

---

[22]    The JAs' assertion that "[i]f the portion of the Allocation Protocol Order approving the entry of the Allocation Protocol is not appealed, uncertainty will remain about the propriety of the procedures ordered under the

In sum, because the JAs have not established any of the necessary requirements under §1292(b) to justify an interlocutory appeal, much less each and every one, the Court should thus deny the Motion.

**D.      Even If The § 1292(b) Requirements Were Met, The JAs
Cannot Demonstrate Exceptional Circumstances Justifying Interlocutory Appeal**

Interlocutory appeals are "meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *DeLalla v. Hanover Ins.*, Civil No. 09-2340 (RBK/JS), 2010 U.S. Dist. LEXIS 104323, at *8-9 (D.N.J. Sept. 30, 2010); *SemCrude*, 2010 U.S. Dist. LEXIS 136391, at *11 ("Piecemeal litigation is generally disfavored by the Third Circuit."). As a result, even if the § 1292 requirements are met, courts in the Third Circuit only grant leave where "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (internal quotation marks omitted); *see also*, *Patrick*, 366 B.R. at 387 n.6 (M.D. Pa. 2007).

Furthermore, the JAs seek leave to appeal from a mere preliminary, procedural order. Interlocutory appeals rarely are appropriate for procedural issues. *See Borden Co. v. Sylk*, 410 F.2d 843, 846 (3d Cir. 1969) (cautioning against turning courts of appeals into "second-stage motion courts"); Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, at § 3930 ("[T]here is little doubt that a question is not controlling if . . . it is a matter of merely formal procedure that can easily be accommodated to whatever ruling is made."); *see also*, *Hulmes v. Honda Motor*

---

Allocation Protocol," Motion at 15, is of no moment. As the JAs themselves concede in setting forth the standard, "uncertainty" is not a basis upon which to grant an interlocutory appeal. In any event, there is always some "uncertainty" surrounding any decision of a lower court. Nor can the JAs meet their burden under § 1292(b) by simply highlighting the difficulty in crafting procedures to allocate the proceeds from the sales of Nortel's global businesses. *See* Motion at 10-11, 15. Certification under § 1292(b) was not intended merely "to provide early review of difficult rulings in hard cases." *Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*, Civil Action No. 2:10–cv–05108 (DMC) (JAD), 2011 U.S. Dist. LEXIS 16533, at *8 (D.N.J. Feb. 17, 2011) (internal quotation marks omitted).

*Co.*, 936 F. Supp. 195, 211-12 (D.N.J. 1996) (denying interlocutory appeal from denial of motion in limine); *Augustin v. New Century Liquidating Trust (In re New Century Holdings, Inc.)*, Bk. No. 07-10416 (KJC), Civ. No. 09-378-SLR, 2010 WL 1170354, at *2 (D. Del. Mar. 24, 2010) (denying interlocutory appeal from denial of discovery order by bankruptcy court); *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 536 (D.N.J. 1998) (denying interlocutory appeal from denial from transfer of venue decision, noting that there was "no reason to certify the issue or stay the transfer pending an attempt to perfect an interlocutory appeal from a procedural order"); *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1246 (5th Cir. 1974) (pre-trial rulings excluding possible evidence from trial not ripe for review because at trial events may lead to a different ruling, and it is not possible to assess the prejudicial impact prior to trial). These types of decisions are a standard part of litigation and are generally reviewed by appellate courts only after a final judgment. There is no reason for the Court to deviate from standard appellate practice disfavoring piecemeal interlocutory appeals.

## II. THIS COURT SHOULD NOT EXERCISE PENDENT JURISDICTION OVER THE OTHERWISE UNAPPEALABLE ORDER APPROVING THE ALLOCATION PROTOCOL

Just as with interlocutory orders, a court must exercise pendent jurisdiction "sparingly," *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 88 (3d Cir. 2010), and can only do so in a case "rife with special circumstances." *Haberern v. Lehigh & New England Ry. Co.*, 554 F.2d 581, 584 (3d Cir. 1977). Those special circumstances are not present here.

The JAs' argument that the decision approving the allocation protocol and the decision denying the JAs' motion to compel arbitration are "inextricably intertwined" fails under the basic standard set forth in their Motion. Motion at 16-17. The appealable issue here – the denial of the motion to compel arbitration – can easily be "resolved without reference to the otherwise

unappealable" decision approving an allocation protocol: that is, an appeal court reviewing an order on arbitration need pay no regard to the proposed procedural alternative.

The JAs try to combine these issues by asserting that "[i]f the appellate court finds the allocation dispute to be arbitrable without reviewing the portion of the Order approving the Allocation Protocol, the parties will be subject to two conflicting orders: one to arbitrate and one adopting the protocol." Motion at 17. This is flatly untrue. Whether the dispute is arbitrable is a threshold issue, and a decision compelling *arbitration* would take the case away from the Bankruptcy Court and render the procedural planning of *court* proceedings null and void. The JAs concede as much. Objection to Jurisdiction Motion at 16. An allocation protocol (yet to be entered) has "nothing to do with whether the [Bankruptcy Court] was foreclosed by [a purported] arbitration clause from considering" the ultimate issue and is "therefore not inextricably intertwined with the arbitrability." *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 504 (6th Cir. 2011) (denying pendent jurisdiction and holding that the unappealable issues of whether personal jurisdiction and venue are proper have "nothing to do with whether the district court was foreclosed by the parties' arbitration clause from considering the plaintiffs' claims"); *see also*, *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 204-05 (3d Cir. 2001) (refusing to exercise pendent jurisdiction to review personal jurisdiction ruling on appeal from an order denying motion to submit the dispute to arbitration). The Court must therefore decline to hear this unappealable issue.[23]

---

[23]    While the Joint Administrators are correct that the Court may also exercise pendent appellate jurisdiction over an otherwise unappealable issue to the extent necessary to ensure meaningful review of the appealable order, Motion at 16, that is not necessary here for the same reasons that the issues are not inextricably intertwined. Even were the Court to find that the issues are inextricably intertwined, however, it may still exercise its discretion to deny the Joint Administrators' Motion. *See Brown v. City of Pittsburgh*, 586 F.3d 263, 298 (3d Cir. 2009) ("The Supreme Court has admonished courts to construe the doctrine [of pendent appellate jurisdiction] narrowly.").

## Conclusion

WHEREFORE, the US Debtors and Committee respectfully request that the Court deny

the Motion and grant other such and further relief as it deems appropriate

Dated:  May 1, 2013
       Wilmington, DE

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP


 */s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

- and –


AKIN GUMP STRAUSS HAUER & FELD
LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee
of Unsecured Creditors*