| | | | |
|---|---|---|---|
| 02/15/2013 | | 9448 | Certificate of No Objection *Regarding Forty−Seventh Monthly Application of Ashurst LLP, European Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered for the period December 1, 2012 to December 31, 2012 (No Order Required)* (related document(s)9325) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 02/15/2013) |
| 02/15/2013 | | 9449 | Certificate of No Objection *Regarding Forty−Seventh Monthly Application of Capstone Advisory Group, LLC, Financial Advisor for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered for the period December 1, 2012 to December 31, 2012 (No Order Required)* (related document(s)9334) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 02/15/2013) |
| 02/19/2013 | | 9450 | Transcript regarding Hearing Held 02/14/2013 RE: Long Term Disability Plan. Remote electronic access to the transcript is restricted until 5/20/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Diaz Data Service, LLC, Telephone number 717−233−6664.] Notice of Intent to Request Redaction Deadline Due By 2/26/2013. Redaction Request Due By 3/12/2013. Redacted Transcript Submission Due By 3/22/2013. Transcript access will be restricted through 5/20/2013. (related document(s)9408) (GM) (Entered: 02/19/2013) |
| 02/19/2013 | | 9451 | Objection */Joinder of Nortel Ad Hoc Group of Bondholders to U.S. Debtors' Objection to Motion for Entry of an Order Allowing Late−Filed Claims.* Filed by The Bondholder Group (Makowski, Kathleen) (Entered: 02/19/2013) |
| 02/19/2013 | | 9452 | Affidavit/Declaration of Service *Re: Scheduling Order for Allocation Issues* (related document(s)9416, 9428) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 02/19/2013) |
| 02/19/2013 | | 9453 | Affidavit/Declaration of Service *Re: Order (A) Preliminarily Approving the Settlement Agreement Regarding Long−Term Disability Plans and Claims, (B) Conditionally Certifying a Class for Settlement Purposes Only, (C) Approving the Notice Procedures, (D) Scheduling a Fairness Hearing and (E) Granting Related Relief* (related document(s)9427) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 02/19/2013) |
| 02/19/2013 | | 9454 | Order Scheduling Hearing on Oral Argument for March 7, 2013 at 10:00 am (related document(s)9352, 9390, 9391, 9392, 9396). Signed on 2/19/2013. (SJS) (Entered: 02/19/2013) |
| 02/19/2013 | | 9455 | Corrective Entry − Duplicate Entry (related document(s)9447) (SJS) (Entered: 02/19/2013) |
| 02/19/2013 | | 9456 | Monthly Application for Compensation *(Twenty−Ninth) of RLKS Executive Solutions LLC for the period November 1, 2012 to November 30, 2012* Filed by RLKS Executive Solutions LLC. |

| | | | |
|---|---|---|---|
| | | | Objections due by 3/11/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Certificate of Service) (Cordo, Ann) (Entered: 02/19/2013) |
| 02/19/2013 | | 9457 | Monthly Application for Compensation *(Thirtieth) of RLKS Executive Solutions LLC* for the period *December 1, 2012 to December 31, 2012* Filed by RLKS Executive Solutions LLC. Objections due by 3/11/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Certificate of Service) (Cordo, Ann) (Entered: 02/19/2013) |
| 02/19/2013 | | 9458 | Monthly Application for Compensation *(Thirty−First) of RLKS Executive Solutions LLC* for the period *January 1, 2013 to January 31, 2013* Filed by RLKS Executive Solutions LLC. Objections due by 3/11/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Certificate of Service) (Cordo, Ann) (Entered: 02/19/2013) |
| 02/19/2013 | | 9459 | Interim Application for Compensation *(Forty−Eighth) of Huron Consulting Group as Accounting and Restructuring Consultant to Debtors and Debtors−In−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of All Actual and Necessary Expenses Incurred* for the period *January 1, 2013 to January 31, 2013* Filed by Huron Consulting Group. Objections due by 3/11/2013. (Attachments: #_1 Notice #_2 Exhibit A (Time Details)#_3 Exhibit B (Expense Details)#_4 Exhibit C#_5 Certificate of Service) (Cordo, Ann) (Entered: 02/19/2013) |
| 02/19/2013 | | 9460 | Affidavit/Declaration of Service *Regarding Joinder of Nortel Ad Hoc Group of Bondholders to U.S. Debtors' Objection to Motion for Entry of an Order Allowing Late−Filed Claims* (related document(s)9451) Filed by Ad Hoc Committee of Bondholders. (Makowski, Kathleen) (Entered: 02/19/2013) |
| 02/20/2013 | | 9461 | Affidavit/Declaration of Service *of Karen M. Wagner, Kurtzman Carson Consultants regarding the Fifteenth Monthly Application of Togut, Segal &Segal LLP, as counsel to the Official Committee of Retired Employees, for an Allowance of Interim Compensation and Reimbursement of All Actual and Necessary Expenses for the period November 1, 2012 to November 30, 2012* (related document(s)9446) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 02/20/2013) |
| 02/20/2013 | | 9462 | Affidavit/Declaration of Service *Re: Notice of Filing of Transfer of Claim* (related document(s)9364, 9398, 9399, 9400, 9401, 9414) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 02/20/2013) |
| 02/20/2013 | | 9463 | Affidavit/Declaration of Service *of Notice of Defective Transfer of Claim* (related document(s)9363) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 02/20/2013) |
| 02/20/2013 | | 9464 | Order Dismissing Adversary Proceeding with Prejudice. Order Signed on 2/20/2013. (SB) (Entered: 02/20/2013) |
| 02/20/2013 | | 9465 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Hain Capital Holdings, LLC To Optical NN Holdings, LLC. Filed by (Jones, Andrew) (Entered: 02/20/2013) |
| 02/20/2013 | | 9466 | |

| | | | |
|---|---|---|---|
| | | | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Hain Capital Holdings, Ltd. To Optical NN Holdings, LLC. Filed by (Jones, Andrew) (Entered: 02/20/2013) |
| 02/20/2013 | | 9467 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Hain Capital Holdings, Ltd. To Optical NN Holdings, LLC. Filed by (Jones, Andrew) (Entered: 02/20/2013) |
| 02/20/2013 | | 9468 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Hain Capital Holdings, LLC To Optical NN Holdings, LLC. Filed by (Jones, Andrew) (Entered: 02/20/2013) |
| 02/20/2013 | | 9469 | Quarterly Application for Compensation *of Huron Consulting Group* for the period *November 1, 2012* to *January 31, 2013* (related document(s)9139, 9318, 9459) Filed by Huron Consulting Group. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: #_1 Exhibit A#_2 Certificate of Service) (Cordo, Ann) (Entered: 02/20/2013) |
| 02/20/2013 | | 9470 | Affidavit/Declaration of Service *of Order (A) Preliminarily Approving the Settlement Agreement Regarding Long−Term Disability Plans and Claims, (B) Conditionally Certifying a Class for Settlement Purposes Only, (C) Approving the Notice Procedures, (D) Scheduling a Fairness Hearing and, Notice of (A) Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims; (B) Conditional Certification of a Class for Settlement Purposes Only; (C) Conditional Appointment of Class Counsel and Class Representatives; (D) Scheduled Date of Fairness Hearing for Final Approval of Proposed Settlement (E) Granting Related Relief; and* . (related document(s)9427, 9443) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) Modified on 2/22/2013 to correct docket text (KPB). (Entered: 02/20/2013) |
| 02/20/2013 | | 9483 | Objection *to Twenty Ninth Omnibus Objection* (related document(s)9373) Filed by Randal Scott Clay (SB) (Entered: 02/21/2013) |
| 02/21/2013 | | 9471 | Certificate of Publication *(The Dallas Morning News)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9472 | Certificate of Publication *(Houston Chronicle)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9473 | Certificate of Publication *(Tampa Bay Times)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9474 | Forty−Sixth Monthly Application of Fraser Milner Casgrain LLP Canadian Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered for the period November 1, 2012 to November 30, 2012. Filed by Fraser Milner Casgrain LLP. Objections due by 3/13/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Exhibit C#_5 Exhibit D#_6 Exhibit E#_7 Certificate of Service) (Samis, Christopher) Modified |

| | | | |
|---|---|---|---|
| | | | docket text on 2/22/2013 (LMD). (Entered: 02/21/2013) |
| 02/21/2013 | | 9475 | Certificate of Publication *(The Globe and Mail)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9476 | Certificate of Publication *(The Orlando Sentinel)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9477 | Certificate of Publication *(USA Today)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9478 | Certificate of Publication *(Miami Herald)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9479 | Certificate of Publication *(San Jose Mercury News)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9480 | Certificate of Publication *(The Wall Street Journal)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9481 | Certificate of Publication *(Charlotte Observer)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9482 | Certificate of Publication *(The News &Observer)* (related document(s)9224, 9324) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 02/21/2013) |
| 02/21/2013 | | 9484 | Forty–Seventh Monthly Application of Fraser Milner Casgrain LLP Canadian Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered for the period December 1, 2012 to December 31, 2012. Filed by Fraser Milner Casgrain LLP. Objections due by 3/14/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Certificate of Service) (Samis, Christopher) Modified docket text on 2/22/2013 (LMD). (Entered: 02/21/2013) |
| 02/21/2013 | | 9485 | Certificate of No Objection *Regarding Forty–Seventh Monthly Application of Richards, Layton &Finger, P.A. for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Co–Counsel to the Official Committee of Unsecured Creditors for the period December 1, 2012 to December 31, 2102 (No Order Required)* (related document(s)9343) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 02/21/2013) |
| 02/21/2013 | | 9486 | BNC Certificate of Mailing. (related document(s)9450) Notice Date 02/21/2013. (Admin.) (Entered: 02/22/2013) |
| 02/22/2013 | | | Adversary Case 11–54007 Closed by Deputy Clerk. (KPB) (Entered: 02/22/2013) |

| | | | |
|---|---|---|---|
| 02/22/2013 | | 9487 | Quarterly Application for Compensation *of John Ray, as Principal Officer of Nortel Networks, Inc. and its Affiliates* for the period *November 1, 2012* to *January 31, 2013* Filed by John Ray. Objections due by 3/26/2013. (Attachments: # 1 Exhibit A# 2 Certificate of Service) (Cordo, Ann) (Entered: 02/22/2013) |
| 02/22/2013 | | 9488 | Application for Compensation *of Punter Southall LLC* for the period *November 1, 2012* to *January 31, 2013* Filed by Punter Southall LLC. Objections due by 3/14/2003. (Attachments: # 1 Notice # 2 Exhibit A# 3 Certificate of Service) (Cordo, Ann) (Entered: 02/22/2013) |
| 02/22/2013 | | 9489 | Quarterly Application for Compensation *of Punter Southall LLC* for the period *November 1, 2012* to *January 31, 2013* Filed by Punter Southall LLC. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Exhibit A# 2 Certificate of Service) (Cordo, Ann) (Entered: 02/22/2013) |
| 02/22/2013 | | 9490 | Forty–Eighth Monthly Application of Akin Gump Strauss Hauer &Feld LLP, Co–Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for the Reimbursement of Expenses for Services Rendered for the period January 1, 2013 to January 31, 2013. Filed by Akin Gump Strauss Hauer &Feld LLP. Objections due by 3/15/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Certificate of Service) (Samis, Christopher) Modified docket text on 2/25/2013 (LMD). (Entered: 02/22/2013) |
| 02/22/2013 | | 9491 | Sixteenth Interim Fee Application Request of Akin Gump Strauss Hauer &Feld LLP for the period November 1, 2012 to January 31, 2013. Filed by Akin Gump Strauss Hauer &Feld LLP. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Certificate of Service) (Samis, Christopher) Modified docket text on 2/25/2013 (LMD). (Entered: 02/22/2013) |
| 02/22/2013 | | 9492 | Forty–Eighth Monthly Application of Richards, Layton &Finger, PA for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Co–Counsel to the Official Committee of Unsecured Creditors for the period January 1, 2013 to January 31, 2013. Filed by Richards, Layton &Finger, PA. Objections due by 3/14/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Certificate of Service) (Samis, Christopher) Modified docket text on 2/25/2013 (LMD). (Entered: 02/22/2013) |
| 02/22/2013 | | 9493 | Forty–Eighth Monthly Application of Capstone Advisory Group, LLC, Financial Advisor for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered for the period January 1, 2013 to January 31, 2013. Filed by Capstone Advisory Group, LLC. Objections due by 3/14/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Certificate of Service) (Samis, Christopher) Modified docket text on 2/25/2013(LMD). (Entered: 02/22/2013) |
| 02/22/2013 | | 9494 | Forty–Eighth Monthly Application of Fraser Milner Casgrain LLP Canadian Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered for the period |

| | | | |
|---|---|---|---|
| | | | January 1, 2013 to January 31, 2013. Filed by Fraser Milner Casgrain LLP. Objections due by 3/15/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Exhibit C#_5 Exhibit D#_6 Exhibit E#_7 Certificate of Service) (Samis, Christopher) Modified docket text on 2/25/2013 (LMD). (Entered: 02/22/2013) |
| 02/25/2013 | | 9495 | Twenty–Sixth Application of Benesch, Friedlander, Coplan &Aronoff LLP, for Interim Compensation for Services Rendered and Reimbursement of Expenses as Special Litigation Counsel for the Debtors for the Period from January 1, 2013 Through January 31, 2013. Filed by Benesch Friedlander Coplan &Aronoff, LLP. Objections due by 3/18/2013. (Attachments: #_1 Notice #_2 Exhibit #_3 Certificate of Service) (Lemisch, Raymond) Modified text on 2/27/2013 (SJS). (Entered: 02/25/2013) |
| 02/25/2013 | | 9496 | Affidavit/Declaration of Service *of Barbara J. Witters (Statement of the Official Committee of Unsecured Creditors Regarding Outstanding Motions and Issues)* (related document(s)9391) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 02/25/2013) |
| 02/25/2013 | | 9497 | Certificate of No Objection Regarding Twenty–Fifth Application for Interim Compensation for Services Rendered and Reimbursement of Expenses as Special Litigation Counsel for the Debtors for the Period From November 1, 2012 Through December 31, 2012(related document(s)9311). Filed by Benesch Friedlander Coplan &Aronoff, LLP. (Lemisch, Raymond) Modified text on 2/27/2013 (SJS). (Entered: 02/25/2013) |
| 02/25/2013 | | 9498 | Affidavit/Declaration of Service *of Barbara J. Witters (Joinder of the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. to the Debtors Objection to the Motion of Ad Hoc Committee of Canadian Employees Terminated Pre–Petition for Entry of an Order Allowing Late Filed Claims)* (related document(s)9418) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 02/25/2013) |
| 02/25/2013 | | 9499 | Tenth Quarterly Application of Benesch, Friedlander, Coplan &Aronoff LLP, for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Special Litigation Counsel for the Debtors, for the Period from November 1, 2012 Through January 31, 2013. Filed by Benesch Friedlander Coplan &Aronoff, LLP. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: #_1 Proposed Form of Order #_2 Certificate of Service) (Lemisch, Raymond) Modified text on 2/27/2013 (SJS). (Entered: 02/25/2013) |
| 02/25/2013 | | 9500 | Interim Application for Compensation *Sixteenth Interim Fee Application Request of Fraser Milner Casgrain LLP for the period November 1, 2012 to January 31, 2013* Filed by Fraser Milner Casgrain LLP. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: #_1 Certificate of Service) (Samis, Christopher) (Entered: 02/25/2013) |
| 02/25/2013 | | 9501 | Interim Application for Compensation *(Forty–Seventh) Of Crowell &Moring LLP As Special Counsel To Debtors And Debtors–In–Possession For Allowance Of Interim Compensation* |

| | | | |
|---|---|---|---|
| | | | *And For Interim Reimbursement Of All Actual And Necessary Expenses Incurred* for the period *November 1, 2012 to January 31, 2013* Filed by Crowell &Moring LLP. Objections due by 3/18/2013. (Attachments: # 1 Notice # 2 Exhibit A (Billable Proforma)# 3 Exhibit B (Expense Summary)# 4 Certificate of Service) (Cordo, Ann) (Entered: 02/25/2013) |
| 02/25/2013 | | 9502 | Quarterly Application for Compensation *(Sixteenth) Request Of Crowell &Moring LLP, Special Counsel To Debtors And Debtors−In−Possession* for the period *November 1, 2012 to January 31, 2013* Filed by Crowell &Moring LLP. Objections due by 3/26/2013. (Attachments: # 1 Exhibit A (Proposed Form of Order)# 2 Certificate of Service) (Cordo, Ann) (Entered: 02/25/2013) |
| 02/25/2013 | | 9517 | Objection *to Terms of Long Term Disability Settlement Agreement* Filed by Cynthia Paroski, Stephen Paroski (SB) (Entered: 02/28/2013) |
| 02/26/2013 | | 9503 | Monthly Application for Compensation *(Thirty−Fifth) Of Chilmark Partners, LLC, As Consulting Expert To The Debtors And Debtors−In−Possession, For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses* for the period *January 1, 2013 to January 31, 2013* Filed by Chilmark Partners, LLC. Objections due by 3/18/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Certificate of Service) (Cordo, Ann) (Entered: 02/26/2013) |
| 02/26/2013 | | 9504 | Interim Application for Compensation *(Forty−Ninth) Of Cleary Gottlieb Steen &Hamilton LLP, As Attorneys For Debtors And Debtors−In−Possession, For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses Incurred* for the period *January 1, 2013 to January 31, 2013* Filed by Cleary Gottlieb Steen &Hamilton LLP. Objections due by 3/18/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Certificate of Service) (Cordo, Ann) (Entered: 02/26/2013) |
| 02/26/2013 | | 9505 | Interim Application for Compensation *Sixteenth Interim Fee Application Request of Capstone Advisory Group, LLC* for the period *November 1, 2012 to January 31, 2013* Filed by Capstone Advisory Group, LLC. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Certificate of Service) (Samis, Christopher) (Entered: 02/26/2013) |
| 02/26/2013 | | 9506 | Motion to Appear pro hac vice *of Thomas R. Kreller of Milbank, Tweed, Hadley &McCloy LLP to represent The Bondholder Group in these proceedings*. Receipt Number 3111218255, Filed by The Bondholder Group. (Jones, Laura) (Entered: 02/26/2013) |
| 02/26/2013 | | 9507 | Supplemental Declaration in Support *Declaration Of Derek C. Abbott In Further Support Of The Debtors' Application For Entry Of An Order Pursuant To 11 U.S.C. §§ 327(A) And 1107(B), Fed. R. Bankr. P. 2014 And 2016, And Del. Bankr. L.R. 2014−1 And 2016−1 Authorizing Retention And Employment Of Morris, Nichols, Arsht &Tunnell LLP As Delaware And General Bankruptcy Counsel For The Debtors, Nunc Pro Tunc To The Petition Date* (related document(s)75, 345, 552, 1564, 1731, 3210, 4217, 4323, 4912, 6110, 6267, 6359, 6640, 6755, 6889, 7092, |

| | | | |
|---|---|---|---|
| | | | 7186, 7369, 7580, 7797, 7928) Filed by Nortel Networks Inc., et al.. (Abbott, Derek) (Entered: 02/26/2013) |
| 02/27/2013 | | 9508 | Application for Compensation *Sixth Quarterly Fee Application of McCarter &English LLP, As Local Counsel for The Official Committee of Retirees* for the period *November 1, 2012 to January 31, 2013* (related document(s)9173, 9321, 9442) Filed by Official Committee of Retirees. Objections due by 3/19/2013. (Attachments: # 1 Exhibit A# 2 Certificate of Service) (Taylor, William) (Entered: 02/27/2013) |
| 02/27/2013 | | 9509 | Order Granting Motion for Admission pro hac vice of Thomas R. Kreller Esq (Related Doc # 9506) Order Signed on 2/27/2013. (SB) (Entered: 02/27/2013) |
| 02/27/2013 | | 9510 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CONDUCTIVE CIRCUITS INC To TRC MASTER FUND LLC. Filed by TR Capital Management, LLC. (Ross, Terrel) (Entered: 02/27/2013) |
| 02/27/2013 | | 9511 | Affidavit/Declaration of Service *Regarding [Signed] Order Granting Motion for Admission pro hac vice of Thomas R. Kreller Esquire* (related document(s)9509) Filed by Ad Hoc Committee of Bondholders. (Makowski, Kathleen) (Entered: 02/27/2013) |
| 02/27/2013 | | 9512 | Interim Application for Compensation *Sixteenth Interim Fee Application Request of Richards, Layton &Finger, PA* for the period *November 1, 2012 to January 31, 2013* Filed by Richards, Layton &Finger, PA. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Certificate of Service) (Samis, Christopher) (Entered: 02/27/2013) |
| 02/27/2013 | | 9513 | ***ENTERED IN ERROR – INCORRECT FILING DATE Notice of Appearance Filed by Paul E. Morrison. (BJM) Modified on 2/27/2013 (BJM). (Entered: 02/27/2013) |
| 02/27/2013 | | 9515 | Objection *to Motion for Order Modifying Application of Local Rules 2014–1(c) and 2016–2(f)* (related document(s)9415) Filed by United States Trustee (Attachments: # 1 Certificate of Service) (Kenney, Mark) (Entered: 02/27/2013) |
| 02/27/2013 | | 9516 | Quarterly Application for Compensation *(Twelfth) of Chilmark Partners, LLC, as Consulting Expert to the Debtors and Debtors−In−Possession* for the period *November 1, 2012 to January 31, 2013* Filed by Chilmark Partners, LLC. (Attachments: # 1 Certificate of Service) (Cordo, Ann) (Entered: 02/27/2013) |
| 02/28/2013 | | 9518 | Affidavit/Declaration of Service *Re: Notice of Filing of Transfer of Claims* (related document(s)9426, 9433, 9434, 9435, 9436, 9437, 9438, 9439, 9440, 9465, 9466, 9467, 9468) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 02/28/2013) |
| 02/28/2013 | | 9519 | Certificate of No Objection *Re: Thirty−Fourth Monthly Application for Compensation of Chilmark Partners, LLC, as Consulting Expert to the Debtors and Debtors−in−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of All Actual and Necessary Expenses* (related document(s)9349) Filed by Chilmark Partners, LLC. (Minott, |

| | | | |
|---|---|---|---|
| | | | Tamara) (Entered: 02/28/2013) |
| 02/28/2013 | | 9520 | Status Report *on Avoidance Actions Assigned to the Honorable Kevin Gross* Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 02/28/2013) |
| 02/28/2013 | | 9521 | Notice of Hearing *Notice of Rescheduled Omnibus Hearing Date from April 23, 2013 at 10:00 a.m. to April 16, 2013 at 11:00 a.m.* Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/16/2013 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 02/28/2013) |
| 02/28/2013 | | 9522 | Notice of Service *Re: Notice of Rescheduled Omnibus Hearing Date from April 23, 2013 at 10:00 a.m. to April 16, 2013 at 11:00 a.m.* (related document(s)9521) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Minott, Tamara) (Entered: 02/28/2013) |
| 02/28/2013 | | 9524 | Twentieth Interim Application of Ernst &Young LLP forAllowance of Compensation for Services Rendered as Indirect Tax Service Advisor to the Debtors and Debtors–in–Possession for Period of November 1, 2012 Through January 31, 2013. Filed by Ernst &Young LLP. Objections due by 3/20/2013. (Attachments: # 1 Notice # 2 Verification# 3 Exhibit A# 4 Exhibit B# 5 Certificate of Service) (Minott, Tamara) Modified text on 3/1/2013 (SJS). (Entered: 02/28/2013) |
| 02/28/2013 | | 9525 | Reply *to the Response of Randal Scott Clay to the Debtors' Twenty–Ninth Omnibus Objection (Substantive) to Certain Claims* (related document(s)9373, 9483) Filed by Nortel Networks Inc., et al. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C) (Minott, Tamara) (Entered: 02/28/2013) |
| 02/28/2013 | | 9526 | Notice of Service *Re: Reply to the Response of Randal Scott Clay to the Debtors' Twenty–Ninth Omnibus Objection (Substantive) to Certain Claims* (related document(s)9525) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 02/28/2013) |
| 02/28/2013 | | 9527 | Sixteenth Interim Application of Mercer (US) Inc. as Compensation Specialist and Consulting Expert to the Debtors Seeking Allowance of Interim Compensation and Interim Reimbursement of Actual and Necessary Expenses Incurred for the Period of November 1, 2012 Through January 31, 2013. Filed by Mercer (US) Inc.. Objections due by 3/20/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Certificate of Service) (Eggert, Devon) Modified text on 3/1/2013 (SJS). (Entered: 02/28/2013) |
| 02/28/2013 | | 9528 | Sixteenth Quarterly Fee Application Request of Mercer (US) Inc. as Compensation Specialist and Consulting Expert to the Debtors for the Period of November 1, 2012 Through January 31, 2013 (related document(s)9527). Filed by Mercer (US) Inc.. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Exhibit A – Proposed Order# 2 Certificate of Service) (Eggert, Devon) Modified text on 3/1/2013 (SJS). (Entered: 02/28/2013) |

| | | 9529 | Forty–Ninth Interim Application of Morris, Nichols, Arsht &Tunnell LLP, as Delaware and General Bankruptcy Counsel to Debtors and Debtors–in–Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period January 1, 2013 Through January 31, 2013. Filed by Morris, Nichols, Arsht &Tunnell LLP. Objections due by 3/20/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Certificate of Service) (Minott, Tamara) Modified text on 3/1/2013 (SJS). (Entered: 02/28/2013) |
|02/28/2013| | | |
| | | 9530 | Certificate of No Objection *Re: Forty–Eighth Interim Application of Cleary Gottlieb Steen &Hamilton LLP, as Attorneys for Debtors and Debtors–in–Possession, for Allowance of Interim Compensation and for Interim Reimbursement of All Actual and Necessary Expenses Incurred for the Period December 1, 2012 Through December 31, 2012* (related document(s)9377) Filed by Cleary Gottlieb Steen &Hamilton LLP. (Minott, Tamara) (Entered: 02/28/2013) |
|02/28/2013| | | |
| | | 9531 | Certificate of No Objection *Re: Motion to Approve Compromise under Rule 9019 With Travelers Indemnity Company* (related document(s)9413) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 02/28/2013) |
|02/28/2013| | | |
| | | 9532 | Application for Compensation *Sixteenth Monthly Application of Togut, Segal &Segal LLP, as counsel to the Official Committee of Retired Employees, for an Allowance of Interim Compensation and Reimbursement of All Actual and Necessary Expenses* for the period *December 1, 2012 to December 31, 2012* Filed by Official Committee of Retirees. Objections due by 3/21/2013. (Attachments: #_1 Exhibit A#_2 Exhibit B#_3 Notice) (Taylor, William) (Entered: 02/28/2013) |
|02/28/2013| | | |
| | | 9533 | Application for Compensation *Fifth Quarterly Fee Application of Togut, Segal &Segal LLP attorneys for the Official Committee of Retired Employees* for the period *September 1, 2012 to December 31, 2012* (related document(s)7613, 7689, 7893, 8038) Filed by Official Committee of Retirees. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. Objections due by 3/21/2013. (Attachments: #_1 Exhibit A) (Taylor, William) (Entered: 02/28/2013) |
|02/28/2013| | | |
| | | 9534 | Application for Compensation *Forty–Eighth Monthly Application of Ashurst LLP, European Counsel for the Official Committee and for Reimbursement of Expenses for Services Rendered* for the period *January 1, 2013 to January 31, 2013* Filed by Ashurst LLP. Objections due by 3/21/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Exhibit C#_5 Exhibit D#_6 Exhibit E#_7 Certificate of Service) (Samis, Christopher) (Entered: 02/28/2013) |
|02/28/2013| | | |
| 02/28/2013 | | 9535 | Twenty–First Monthly Application of Torys LLP, as Special Canadian Counsel to Debtors and Debtors–in–Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period December 1, 2012 Through December 31, 2012. Filed by Torys LLP. Objections due by 3/20/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Certificate of Service) (Minott, Tamara) Modified text on 3/1/2013 (SJS). (Entered: |

| | | | |
|---|---|---|---|
| | | | 02/28/2013) |
| 02/28/2013 | | 9536 | Affidavit/Declaration of Service *(of Ann Jerominski re: Forty−Seventh Monthly Application of Akin Gump Strauss Hauer &Feld LLP, Co−Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for the Reimbursement of Expenses for Services Rendered During the Period from December 1, 2012 Through December 31, 2012)* (related document(s)9379) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 02/28/2013) |
| 02/28/2013 | | 9537 | Quarterly Application for Compensation *(Sixteenth) Request Of Cleary Gottlieb Steen &Hamilton LLP, As Attorneys For Debtors And Debtors−In−Possession* for the period *November 1, 2012* to *January 31, 2013* Filed by Cleary Gottlieb Steen &Hamilton LLP. (Attachments: #_1 Exhibit A (Proposed Form of Order)#_2 Certificate of Service) (Minott, Tamara) (Entered: 02/28/2013) |
| 02/28/2013 | | 9538 | Monthly Application for Compensation *(Twenty−Second) of Torys LLP, as Special Canadian Counsel to Debtors and Debtors−In−Possession for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred* for the period *January 1, 2013 to January 31, 2013* Filed by Torys LLP. Objections due by 3/20/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Certificate of Service) (Minott, Tamara) (Entered: 02/28/2013) |
| 03/01/2013 | | 9539 | Sixteenth Quarterly Fee Application Request of Morris, Nichols, Arsht &Tunnell LLP, as Delaware and General Bankruptcy Counsel for Debtors and Debtors−in−Possession, for the period November 1, 2012 Through January 31, 2013 (related document(s)9169, 9279, 9529). Filed by Morris, Nichols, Arsht &Tunnell LLP. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: #_1 Exhibit A#_2 Certificate of Service) (Minott, Tamara) Modified text on 3/4/2013 (SJS). (Entered: 03/01/2013) |
| 03/01/2013 | | 9540 | Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 3/5/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 03/01/2013) |
| 03/01/2013 | | 9541 | Notice of Service *Re: Notice of Agenda of Matters Scheduled for Hearing on March 5, 2013 at 10:00 a.m.* (related document(s)9540) Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Service List) (Minott, Tamara) (Entered: 03/01/2013) |
| 03/01/2013 | | 9542 | Thirteenth Monthly Application ofe Linklaters LLP, as U.K. Counsel to Debtors and Debtors−in−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period November 1, 2012 Through January 31, 2013. Filed by Linklaters LLP. Objections due by 3/21/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Exhibit C#_5 Certificate of Service) (Minott, Tamara) Modified text on 3/4/2013 (SJS). (Entered: 03/01/2013) |

| | | | |
|---|---|---|---|
| 03/01/2013 | | 9543 | Twelfth Quarterly Fee Application Request of Linklaters LLP, as U.K. Counsel for Debtors and Debtors–in–Possession,for the period November 1, 2012 Through January 31, 2013 (related document(s)9542). Filed by Linklaters LLP. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Exhibit A# 2 Certificate of Service) (Minott, Tamara) Modified text on 3/4/2013 (SJS). (Entered: 03/01/2013) |
| 03/01/2013 | | 9544 | Affidavit/Declaration of Service (related document(s)9532, 9533) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/01/2013) |
| 03/01/2013 | | 9545 | Monthly Application for Compensation *Eighteeth Monthly Application of Elliott Greenleaf, Counsel to the Official Committee of Long Term Disability Participants, for Compensation and Reimbursement of Expenses* for the period *January 1, 2013 to January 31, 2013*. Filed by Official Committee of Long–Term Disability Participants. Objections due by 3/21/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Certificate of Service) (Kinsella, Shelley) (Entered: 03/01/2013) |
| 03/01/2013 | | 9546 | Interim Application for Compensation *Sixteenth Interim Fee Application Request of Ashurst LLP* for the period *November 1, 2012 to January 31, 2013* Filed by Ashurst LLP. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Certificate of Service) (Samis, Christopher) (Entered: 03/01/2013) |
| 03/01/2013 | | 9547 | Certificate of No Objection *Regarding Forty–Seventh Monthly Application of Akin Gump Strauss Hauer &Feld LLP, Co–Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for the Reimbursement of Expenses for Services Rendered During the Period from December 1, 2012 Through December 31, 2012 (No Order Required)* (related document(s)9379) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 03/01/2013) |
| 03/01/2013 | | 9561 | Objection *to Debtors' Motion for Entry of an Order Terminating Retiree Benefits and Approving a Settlement Proposal* (related document(s)8066) Filed by J. Buddy Collins (SJS) (Entered: 03/04/2013) |
| 03/01/2013 | | 9562 | Objection *to Debtors' Motion for Entry of an Order Terminating Retiree Benefits and Approving a Settlement Proposal* (related document(s)8066) Filed by John H. Yoakum (SJS) (Entered: 03/04/2013) |
| 03/04/2013 | | 9548 | Order Approving Settlement with the Travelers Indemnity Company (related document(s)9413) Order Signed on 3/1/2013. (SB) (Entered: 03/04/2013) |
| 03/04/2013 | | 9549 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Floyd Stepp To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |

| | | | |
|---|---|---|---|
| 03/04/2013 | | 9550 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Dawn Smith To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9551 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Eric Fawcett To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9552 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Kurt Schwem To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9553 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Alba Rovira To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9554 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: William E. Reed To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9555 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: William E. Reed To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9556 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: William E. Reed To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9557 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Sharon H. Hardy To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9558 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Rebecca Machalicek To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9559 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Joseph M. Henneberger To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9560 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Casey Cook To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/04/2013) |
| 03/04/2013 | | 9563 | Twelfth Interim Application of Shearman &Sterling, LLP, as Non−Ordinary Course Professional Special Litigation Counsel, for Allowance of Interim Compensation and for Interim |

| | | | |
|---|---|---|---|
| | | | Reimbursement of all Actual and Necessary Expenses Incurred for the Period August 1, 2012 Through January 31, 2013. Filed by Shearman &Sterling, LLP. Objections due by 3/25/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Certificate of Service) (Cordo, Ann) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9564 | Twelfth Quarterly Fee Application of Shearman &Sterling, LLP, as Non–Ordinary Course Professional Special Litigation Counsel to Debtors and Debtors–in–Possession, for the Period August 1, 2012 Through January 31, 2013 (related document(s)9563). Filed by Shearman &Sterling, LLP. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Exhibit A# 2 Certificate of Service) (Cordo, Ann) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9565 | Eleventh Quarterly Fee Application Request of RLKS Executive Solutions LLC, as Consultants to the Debtors and Debtors–in–Possession, for the Period November 1, 2012 Through January 31, 2013. Filed by RLKS Executive Solutions LLC. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Exhibit A# 2 Certificate of Service) (Cordo, Ann) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9566 | Sixteenth Quarterly Fee Application of Ernst &Young LLP for Compensation for Services Rendered as Indirect Tax Service Advisor to the Debtors and Debtors–in–Possession for the Period of November 1, 2012 Through January 31, 2013. Filed by Ernst &Young LLP. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Exhibit A# 2 Certificate of Service) (Cordo, Ann) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9567 | Debtor–In–Possession Monthly Operating Report for Filing Period January 2013 Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Certificate of Service) (Cordo, Ann) (Entered: 03/04/2013) |
| 03/04/2013 | | 9568 | Notice of Filing and Service of Debtors' Sixteenth Ordinary Course Professional Quarterly Statement (related document(s)236, 684, 1240, 1876, 2622, 3179, 4035, 4653, 5186, 5826, 6520, 7032, 7455, 7921, 8680, 9134) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A# 2 Certificate of Service # 3 Service List) (Cordo, Ann) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9569 | Memorandum of Law – *Supplemental Memorandum of Law in Support of Their (I) Objection to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (II) Cross–Motion to Compel Arbitration* Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Kandestin, Maris) (Entered: 03/04/2013) |
| 03/04/2013 | | 9570 | Supplemental Submission of U.S. Debtors and Official Committee of Unsecured Creditors on Allocation Protocol Issues (related document(s)5307, 5308, 5440, 5444, 5448, 5529, 5531, 5532, |

| | | | |
|---|---|---|---|
| | | | 5536, 5571, 5572, 5573, 5575, 5608, 5643, 5752, 9428). Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Exhibit A#_2 Exhibit B#_3 Exhibit C#_4 Certificate of Service) (Cordo, Ann) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9571 | Supplemental Statement of Nortel Ad Hoc Group of Bondholders in Further Support of Proposed Allocation Protocol. Filed by Ad Hoc Committee of Bondholders. (Attachments: #_1 Certificate of Service) (Makowski, Kathleen) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9572 | Statement of The Bankr of New York Mellon, as Indenture Trustee, Pursuant to the Revised Scheduling Order for Allocation Issues. Filed by Bank of New York Mellon (related document(s)5448, 5608, 5444, 9428, 5571, 5532, 5308, 5573, 5531, 5307, 5529, 5572, 5752, 5643, 5536, 5575, 5440). (Winter, Christopher) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9573 | Notice Pursuant to Section 12(d) of the Cross−Border Protocol of Filing of the Supplementary Submissions of the Monitor and the Canadian Debtors in Respect of the June 7, 2011 Hearing (related document(s)9428, 9454). Filed by ERNST &YOUNG. (Attachments: #_1 Exhibit A) (Murphy, Kathleen) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9574 | Notice of Filing of Supplementary Submissions of the Joint Administrators of Nortel Networks UK Limited and the EMEA Debtors. Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Kandestin, Maris) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9575 | Statement of Law Debenture Trust Company of New York, as Indenture Trustee for the NNCC Notes, Pursuant to Order Regarding Scheduling of Key Outstanding Matters (related document(s)5307, 9428). Filed by Law Debenture Trust Company of New York. (Attachments: #_1 Affidavit of Service) (Miller, Stephen) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9576 | Quarterly Application for Compensation *(Ninth) Request Of Torys LLP, As Special Canadian Counsel To Debtors And Debtors−In−Possession* for the period *November 1, 2012* to *January 31, 2013* Filed by Torys LLP. (Attachments: #_1 Exhibit A (Proposed Form of Order)#_2 Certificate of Service) (Cordo, Ann) (Entered: 03/04/2013) |
| 03/04/2013 | | 9577 | Submission of the Trustee of Nortel Networks UK Pension Plan and the Board of the Pension Protection Fund in Response to the Courts February 14, 2013 Order. Filed by Trustee of Nortel Networks UK Pension Plan and the Board of the Pension Protection Fund. (Attachments: #_1 Certificate of Service) (Alberto, Justin) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9578 | Notice of Filing of Courtesy Copy of the Supplementary Written Submissions Filed in the Canadian Proceedings by the Informal Committee of Creditors Holding Claims Against Only the Canadian Debtors ("CCC") Pursuant to Section 12(d) of the Cross−Border Insolvency Protocol [D.I. 990] Respecting the Allocation Protocol Motion. Filed by DLA Piper LLP (US). |

| | | | |
|---|---|---|---|
| | | | (Attachments: #_1 Exhibit A) (Melnik, Selinda) Modified text on 3/5/2013 (SJS). (Entered: 03/04/2013) |
| 03/04/2013 | | 9591 | Objection *to Motion to Approve Settlement Agreement* (related document(s)9224) Filed by John H. Yoakum (SB) (Entered: 03/06/2013) |
| 03/04/2013 | | 9597 | Letter Regarding Eligibility for Retirement Benefits Filed by Lorraine A. Kettledon . (SB) (Entered: 03/07/2013) |
| 03/05/2013 | | 9579 | Supplemental Notice of Service. Supplemental Submission of U.S. Debtors and Official Committee of Unsecured Creditors on Allocation Protocol Issues (related document(s)9570). Filed by Nortel Networks Inc., et al.. (Minott, Tamara) Modified text on 3/5/2013 (SJS). (Entered: 03/05/2013) |
| 03/05/2013 | | 9580 | Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 3/7/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 03/05/2013) |
| 03/05/2013 | | 9581 | Notice of Service *Re: Notice of Agenda of Matters Scheduled for Hearing on March 7, 2013 at 10:00 a.m.* (related document(s)9580) Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Service List) (Minott, Tamara) (Entered: 03/05/2013) |
| 03/05/2013 | | 9582 | **Minutes of Hearing held on: 03/05/2013** **Subject:** OMNIBUS HEARING. (vCal Hearing ID (157913)). (related document(s) 9540) (SS) Additional attachment(s) added on 3/5/2013 (SS). (Entered: 03/05/2013) |
| 03/05/2013 | | 9583 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Nfusion Group LLC To Sonar Credit Partners II, LLC. Filed by Sonar Credit Partners II, LLC. (Goldberg, Michael) (Entered: 03/05/2013) |
| 03/05/2013 | | 9584 | Order (WITH REVISIONS BY THE COURT) Modifying the Application of Local Rules 2014–1(C) and 2016–2(F) (related document(s)9415). Signed on 3/5/2013. (SJS) (Entered: 03/05/2013) |
| 03/05/2013 | | 9585 | Order Granting Debtors' Twenty–Ninth Omnibus Objection (Substantive) to Certain Claims Pursuant to (No–Basis Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended or Superseded Claims, No–Basis Claims and No–Basis Pension Claim) (related document(s)9373, 9483, 9525). Signed on 3/5/2013. (Attachments: #_1 Exhibit A#_2 Exhibit B#_3 Exhibit C) (SJS) (Entered: 03/05/2013) |
| 03/05/2013 | | 9586 | Certificate of No Objection *Regarding Sixteenth Monthly Application of Elliott Greenleaf, Counsel to The Official Committee of Long Term Disability Participants, For Compensation and Reimbursement of Expenses for the Period November 1, 2012 to November 30, 2012* (related document(s)9375) Filed by Official Committee of Long–Term Disability Participants. (Kinsella, |

| | | | |
|---|---|---|---|
| | | | Shelley) (Entered: 03/05/2013) |
| 03/05/2013 | | 9587 | Certificate of No Objection *Regarding Seventeenth Monthly Application of Elliott Greenleaf, Counsel to The Official Committee of Long Term Disability Participants, For Compensation and Reimbursement of Expenses, for Compensation and Rembursement for the Period December 1, 2012 through December 31, 2012* (related document(s)9376) Filed by Official Committee of Long–Term Disability Participants. (Kinsella, Shelley) (Entered: 03/05/2013) |
| 03/05/2013 | | 9588 | Sixth Quarterly Fee Application of Elliott Greenleaf, Co–Counsel to The Official Committee of Long Term Disability Participants, for Compensation and Reimbursement of Expenses for the Period of November 1, 2012 Through January 31, 2013(related document(s)9375, 9376, 9545). Filed by Official Committee of Long–Term Disability Participants. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #4, Wilmington, Delaware. Objections due by 3/25/2013. (Attachments: # 1 Notice # 2 Certificate of Service) (Kinsella, Shelley) Modified text on 3/6/2013 (SJS). (Entered: 03/05/2013) |
| 03/05/2013 | | 9589 | Affidavit/Declaration of Service (related document(s)9573) Filed by Ernst &Young Inc., As Monitor &foreign Representative of the Canadian Nortel Group. (Murphy, Kathleen) (Entered: 03/05/2013) |
| 03/06/2013 | | 9590 | Notice of Service (related document(s)9584, 9585) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C) (Cordo, Ann) (Entered: 03/06/2013) |
| 03/06/2013 | | 9592 | Transcript regarding Hearing Held 03/05/2013 RE: Omnibus Hearing. Remote electronic access to the transcript is restricted until 6/4/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Diaz Data Services, LLC, Telephone number 717–233–6664.] Notice of Intent to Request Redaction Deadline Due By 3/13/2013. Redaction Request Due By 3/27/2013. Redacted Transcript Submission Due By 4/8/2013. Transcript access will be restricted through 6/4/2013. (related document(s)9540) (GM) (Entered: 03/06/2013) |
| 03/06/2013 | | 9593 | Affidavit/Declaration of Service *Re: Order Approving Settlement with the Travelers Indemnity Company* (related document(s)9548) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 03/06/2013) |
| 03/06/2013 | | 9594 | Affidavit/Declaration of Service *Re: Notice of Transfer of Claim* (related document(s)9510) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 03/06/2013) |
| 03/06/2013 | | 9595 | Certificate of No Objection *Re: Thirty–Sixth Monthly Application of John Ray, as Principal Officer of Nortel Networks, Inc. for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period January 1, 2013 Through January 31, 2013* (related document(s)9410) Filed by John Ray. (Cordo, Ann) (Entered: 03/06/2013) |

| | | | |
|---|---|---|---|
| 03/06/2013 | | <u>9596</u> | Forty−Ninth Interim Application of Huron Consulting Group as Accounting and Restructuring Consultant to Debtors and Debtors−in−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period February 1, 2013 Through February 28, 2013. Filed by Huron Consulting Group. Objections due by 3/26/2013. (Attachments: # <u>1</u> Notice # <u>2</u> Exhibit A# <u>3</u> Exhibit B# <u>4</u> Exhibit C# <u>5</u> Certificate of Service) (Cordo, Ann) Modified text on 3/8/2013 (SJS). (Entered: 03/06/2013) |
| 03/07/2013 | | <u>9598</u> | Najam Ud Dean, Nortel US LTD Employee, Motion Compelling Debtors to Admit Claim for Severance Allowance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment (related document(s)<u>8067, 9304, 9427</u>). Filed by Najam ud Dean. The case judge is Kevin Gross. (Attachments: # <u>1</u> Proposed Form of Order) (SB) Modified text on 3/8/2013 (SJS). (Entered: 03/07/2013) |
| 03/07/2013 | | <u>9599</u> | **Minutes of Hearing held on: 03/07/2013** **Subject:** Oral Argument. (vCal Hearing ID (164283)). (related document(s) <u>9580</u>) (SS) Additional attachment(s) added on 3/7/2013 (SS). Additional attachment(s) added on 3/11/2013 (SS). (Entered: 03/07/2013) |
| 03/07/2013 | | <u>9600</u> | Scott David Howard, Nortel US LTD Employee, Motion Compelling Debtors to Admit Claim for Severance Allowance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment. Filed by Scott David Howard. The case judge is Kevin Gross. (Attachments: # 1 Proposed Form of Order) (SB) Modified text on 3/8/2013 (SJS). Additional attachment(s) added on 3/8/2013 (SB). (Entered: 03/07/2013) |
| 03/07/2013 | | <u>9601</u> | Supplemental Declaration *Of Rafael X. Zahralddin−Aravena In Support Of The Application For An Order Authorizing. The Employment And Retention Of Elliott Greenleaf As Counsel To The Official Committee Of Long−Term Disability Participants Nunc Pro Tunc To June 22, 2011* Filed by Official Committee of Long−Term Disability Participants. (Zahralddin−Aravena, Rafael) (Entered: 03/07/2013) |
| 03/07/2013 | | <u>9602</u> | Certificate of Service *Supplemental Declaration Of Rafael X. Zahralddin−Aravena In Support Of The Application For An Order Authorizing. The Employment And Retention Of Elliott Greenleaf As Counsel To The Official Committee Of Long−Term Disability Participants Nunc Pro Tunc To June 22, 2011* (related document(s)<u>9601</u>) Filed by Official Committee of Long−Term Disability Participants. (Zahralddin−Aravena, Rafael) (Entered: 03/07/2013) |
| 03/08/2013 | | <u>9603</u> | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Jerry Aiken To CRT Special Investments LLC. Filed by CRT Special Investments LLC. (Sarachek, Joseph) (Entered: 03/08/2013) |
| 03/08/2013 | | <u>9604</u> | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Joseph Samuel To CRT Special Investments LLC. Filed by CRT Special Investments LLC. (Sarachek, Joseph) (Entered: 03/08/2013) |

| | | | |
|---|---|---|---|
| 03/08/2013 | | 9605 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Joseph Samuel To CRT Special Investments LLC. Filed by CRT Special Investments LLC. (Sarachek, Joseph) (Entered: 03/08/2013) |
| 03/08/2013 | | 9606 | Affidavit *of Service of Karen M. Wagner, Kurtzman Carson Consultants LLC regarding the Solication Packages to the Retiree Parties* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/08/2013) |
| 03/08/2013 | | 9607 | Affidavit *of Service of Karen M. Wagner, Kurtzman Carson Consultants LLC regarding the Solicitation Package to the Long Term Disability Parties (Under Seal Portion)* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/08/2013) |
| 03/08/2013 | | 9608 | Affidavit *of Service of Karen M. Wagner, Kurtzman Carson Consultants LLC regarding the Settlement Pleadings and Package to the Long Term Disability Parties (portions of which are filed under seal)* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/08/2013) |
| 03/08/2013 | | 9609 | Affidavit *of Service of Karen M. Wagner, Kurtzman Carson Consultants LLC regarding the Settlement Pleadings and Package to the Retiree Non−Medical Parties* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/08/2013) |
| 03/08/2013 | | 9610 | Affidavit *of Service of Karen M. Wagner, Kurtzman Carson Consultants LLC regarding the Town Hall Meeting Notice to the Long Term Disability Parties (portions of which are filed under seal)* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/08/2013) |
| 03/08/2013 | | 9611 | Affidavit *of Service of Karen M. Wagner, Kurtzman Carson Consultants LLC regarding the Town Hall Meeting Notice to the Retiree Non−Medical Parties* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/08/2013) |
| 03/08/2013 | | 9612 | Affidavit *of Service of Karen M. Wagner, Kurtzman Carson Consultants LLC regarding the Town Hall Meeting Notice (Atlanta) to the Long Term Disability Parties (portions of which are filed under seal)* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/08/2013) |
| 03/08/2013 | | 9613 | Affidavit *of Service of Karen M. Wagner, Kurtzman Carson Consultants LLC regarding the Town Hall Meeting Notice (Atlanta) to the Retiree Non−Medical Parties* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/08/2013) |
| 03/08/2013 | | 9614 | Affidavit/Declaration of Service *of Service of Karen M. Wagner, Kurtzman Carson Consultants LLC regarding the Order (AMENDED) Authorizing the Debtors and the Retiree Committee to File Under Seal Certificates of Service Related to LTD Employees* (related document(s)9389) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/08/2013) |
| 03/08/2013 | | 9615 | **Minutes of Hearing held on: 03/08/2013** **Subject:** TELEPHONIC − Judge's Ruling from 3/7/13 hearing (continued from 3/7/13). (vCal Hearing ID (165445)). (related document(s) 9580) (SS |

| | | | |
|---|---|---|---|
| | | | Additional attachment(s) added on 3/8/2013 (SS). (Entered: 03/08/2013) |
| 03/08/2013 | | 9616 | Motion to Appear pro hac vice *of Mark A. Daniele, of McCarter &English, LLP*. Receipt Number 0311–12456, Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/08/2013) |
| 03/08/2013 | | 9617 | Transcript regarding Hearing Held 03/07/2013 RE: Oral Argument. Remote electronic access to the transcript is restricted until 6/6/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Diaz Data Services, LLC, Telephone number 717–233–6664.] Notice of Intent to Request Redaction Deadline Due By 3/15/2013. Redaction Request Due By 3/29/2013. Redacted Transcript Submission Due By 4/8/2013. Transcript access will be restricted through 6/6/2013. (related document(s)9580) (GM) (Entered: 03/08/2013) |
| 03/08/2013 | | 9618 | Affidavit/Declaration of Mailing *re: Order Granting Debtors' Twenty−Ninth Omnibus Objection (Substantive) to Certain Claims Pursuant to (No−Basis Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended or Superseded Claims, No−Basis Claims and No−Basis Pension Claim) (related document(s)9373, 9483, 9525)*. Filed by Epiq Bankruptcy Solutions LLC. (related document(s)9585) (Malo, David) (Entered: 03/08/2013) |
| 03/08/2013 | | 9619 | Affidavit/Declaration of Service (related document(s)9389) Filed by Official Committee of Long−Term Disability Participants. (Kinsella, Shelley) (Entered: 03/08/2013) |
| 03/08/2013 | | 9620 | BNC Certificate of Mailing. (related document(s)9592) Notice Date 03/08/2013. (Admin.) (Entered: 03/09/2013) |
| 03/08/2013 | | 9638 | Objection *to the Debtors' Motion for Entry of an Order Approving a Settlement Agreement with the Official Committee of Retired Employees* (related document(s)9224) Filed by Walter A. Reva (SJS) (Entered: 03/12/2013) |
| 03/08/2013 | | 9654 | Objection *to Order Granting Debtors' Motion for Entry of an Order Approving Form and Methods of Notice of Hearing to Consider Settlement Agreement with the Official Committee of Retired Employees.* (related document(s)9324) Filed by Robert Horne (SB) (Entered: 03/14/2013) |
| 03/08/2013 | | 9655 | Objection *to Order Granting Debtors' Motion for Entry of an Order Approving Form and Methods of Notice of Hearing to Consider Settlement Agreement with the Official Committee of Retired Employees.* (related document(s)9324) Filed by Robert Horne (SB) (Entered: 03/14/2013) |
| 03/10/2013 | | 9621 | BNC Certificate of Mailing. (related document(s)9617) Notice Date 03/10/2013. (Admin.) (Entered: 03/11/2013) |
| 03/11/2013 | | 9622 | Affidavit/Declaration of Service *regarding Supplemental Memorandum of Law in Support of Their (I) Objection to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and* |

| | | | |
|---|---|---|---|
| | | | *(II) Cross−Motion to Compel Arbitration* (related document(s)9569, 9574) Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Harron, Edwin) (Entered: 03/11/2013) |
| 03/11/2013 | | 9623 | Notice of Certificate/Affidavit of Publication *Re: Houston Chronicle Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |
| 03/11/2013 | | 9624 | Notice of Certificate/Affidavit of Publication *Re: USA Today Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |
| 03/11/2013 | | 9625 | Notice of Certificate/Affidavit of Publication *Re: The Wall Street Journal Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |
| 03/11/2013 | | 9626 | Order Granting Motion for Admission pro hac vice of Mark Daniele Esq (Related Doc # 9616) Order Signed on 3/11/2013. (SB) (Entered: 03/11/2013) |
| 03/11/2013 | | 9627 | Notice of Certificate/Affidavit of Publication *Re: Tampa Bay Times Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |
| 03/11/2013 | | 9628 | Notice of Certificate/Affidavit of Publication *Re: San Jose Mercury News Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |
| 03/11/2013 | | 9629 | Notice of Certificate/Affidavit of Publication *Re: Dallas Morning News Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |
| 03/11/2013 | | 9630 | Notice of Certificate/Affidavit of Publication *Re: Miami Herald Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |

| | | | |
|---|---|---|---|
| 03/11/2013 | | <u>9631</u> | Notice of Certificate/Affidavit of Publication *Re: Charlotte Observer Publishing Co. Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |
| 03/11/2013 | | <u>9632</u> | Notice of Certificate/Affidavit of Publication *Re: The Globe and Mail Inc. Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |
| 03/11/2013 | | <u>9633</u> | Notice of Certificate/Affidavit of Publication *Re: The Orlando Sentinel Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |
| 03/11/2013 | | <u>9634</u> | Notice of Certificate/Affidavit of Publication *Re: The News &Observer Re: Notice of Proposed Settlement Agreement Regarding Long−Term Disability Plans and Claims, Conditional Certification of a Class for Settlement Purposes Only and Termination of Benefits Under Certain Nortel Benefit Plans* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 03/11/2013) |
| 03/11/2013 | | <u>9635</u> | Certificate of No Objection *regarding the Seventeenth Monthly Application of McCarter &English LLP, As Counsel to The Official Committee of Retirees For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses Incurred for the period January 1, 2013 to January 31, 2013* (related document(s)<u>9442</u>) Filed by Official Committee of Retirees. (Attachments: #<u>1</u> Certificate of Service) (Taylor, William) (Entered: 03/11/2013) |
| 03/11/2013 | | <u>9645</u> | Objection *to Debtors' Motion for Entry of an Order Approving a Settlement Agreement with the Official Committee of Retired Employees* (related document(s)<u>9224</u>) Filed by Sherman V. Hawkins (SB) (Entered: 03/13/2013) |
| 03/11/2013 | | <u>9647</u> | Motion to Compel *Debtors to Admit My Claim for Severance Allowance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment* (related document(s)<u>8067, 9304, 9427</u>) Filed by Remajos Brown. The case judge is Kevin Gross. (Attachments: #<u>1</u> Exhibit A#<u>2</u> Exhibit B#<u>3</u> Proposed Form of Order) (SB) (Entered: 03/13/2013) |
| 03/11/2013 | | <u>9658</u> | Response *in Support of LTD Settlement.* (related document(s)<u>9304, 9427</u>) Filed by James Hunt (TMB) (Entered: 03/15/2013) |
| 03/11/2013 | | <u>9659</u> | Objection *to LTD Settlement.* (related document(s)<u>9304</u>) Filed by Thomas Cherry (TMB) (Entered: 03/15/2013) |
| 03/12/2013 | | <u>9636</u> | Amended Notice of Appearance Filed by Wendy Boswell Mann. (Zahralddin−Aravena, Rafael) (Entered: 03/12/2013) |

| | | | |
|---|---|---|---|
| 03/12/2013 | | 9637 | Certification of Counsel *Regarding the Proposed Order Approving Stipulation and Agreement Governing Production, Exchange and Filing of Confidential Materials Related to the Motion of the Ad Hoc Comittee of Canadian Employees Terminated Pre–Petition for Entry of an Order Allowing Filing of Claims After the Bar Date* (related document(s)9362, 9412, 9418, 9444, 9451) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A) (Cordo, Ann) (Entered: 03/12/2013) |
| 03/12/2013 | | 9657 | Response *in Support of LTD Settlement.* (related document(s)9304, 9427) Filed by Remajos Brown (TMB) (Entered: 03/15/2013) |
| 03/13/2013 | | 9639 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Clyde E. Miller To CRT Special Investments LLC. Filed by CRT Special Investments LLC. (Sarachek, Joseph) (Entered: 03/13/2013) |
| 03/13/2013 | | 9640 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Clyde E. Miller To CRT Special Investments LLC. Filed by CRT Special Investments LLC. (Sarachek, Joseph) (Entered: 03/13/2013) |
| 03/13/2013 | | 9641 | Order Approving Stipulation and Agreement Governing Production, Exchange and Filing of Confidential Materials Related to the Motion of the Ad Hoc Committee of Canadian Employees Terminated Pre–Petition for Entry of an Order Allowing Filing of Claims After the Bar Date [D.I. 9362](related document(s)9362, 9412, 9418, 9444, 9451) Order Signed on 3/13/2013. (Attachments: # 1 Exhibit A) (SB) (Entered: 03/13/2013) |
| 03/13/2013 | | 9642 | Exhibit(s) *Notice of Seventh Amendment to the Statement of Work Entered into Pursuant to the Tax Services Agreement with Ernst &Young LLP* Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A) (Minott, Tamara) (Entered: 03/13/2013) |
| 03/13/2013 | | 9643 | Certificate of No Objection *regarding the Fifteenth Monthly Application of Togut, Segal &Segal LLP, as counsel to the Official Committee of Retired Employees, for an Allowance of Interim Compensation and Reimbursement of All Actual and Necessary Expenses for the period November 1, 2012 to November 30, 2012* (related document(s)9446) Filed by Official Committee of Retirees. (Attachments: # 1 Certificate of Service) (Taylor, William) (Entered: 03/13/2013) |
| 03/13/2013 | | 9644 | Notice of Service (related document(s)9641, 9642) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A# 2 Exhibit B) (Minott, Tamara) (Entered: 03/13/2013) |
| 03/13/2013 | | 9646 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: BAKER, DONELSON, BEARMAN, To TRC MASTER FUND LLC. Filed by TR Capital Management, LLC. (Ross, Terrel) (Entered: 03/13/2013) |
| 03/13/2013 | | 9648 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Robin Boddie To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/13/2013) |
| 03/13/2013 | | 9649 | Certificate of No Objection Regarding Twenty–Ninth Monthly Application of RLKS Executive Solutions LLC, as Consultants to |

| | | | |
|---|---|---|---|
| | | | the Debtors and Debtors−in−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period November 1, 2012 Through November 30, 2012 (related document(s)9456). Filed by Nortel Networks Inc., et al.. (Minott, Tamara) Modified text on 3/14/2013 (SJS). (Entered: 03/13/2013) |
| 03/13/2013 | | 9650 | Certificate of No Objection Regarding Thirtieth Monthly Application of RLKS Executive Solutions LLC, as Consultants to the Debtors and Debtors−in−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period December 1, 2012 Through December 31, 2012 (related document(s)9457). Filed by Nortel Networks Inc., et al.. (Minott, Tamara) Modified text on 3/14/2013 (SJS). (Entered: 03/13/2013) |
| 03/13/2013 | | 9651 | Certificate of No Objection Regarding Thirty−First Monthly Application of RLKS Executive Solutions LLC, as Consultants to the Debtors and Debtors−in−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period January 1, 2013 Through January 31, 2013 (related document(s)9458). Filed by Nortel Networks Inc., et al.. (Minott, Tamara) Modified text on 3/14/2013 (SJS). (Entered: 03/13/2013) |
| 03/13/2013 | | 9652 | Certificate of No Objection *Re: Interim Application for Compensation (Forty−Eighth) of Huron Consulting Group as Accounting and Restructuring Consultant to Debtors and Debtors−In−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of All Actual and Necessary Expenses Incurred for the period January 1, 2013 to January 31, 2013* (related document(s)9459) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/13/2013) |
| 03/14/2013 | | 9653 | Affidavit/Declaration of Service *Re: Notice of Filing of Transfer of Claim* (related document(s)9549, 9550, 9551, 9552, 9553, 9554, 9555, 9556, 9557, 9558, 9559, 9560, 9583) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 03/14/2013) |
| 03/14/2013 | | 9656 | Affidavit/Declaration of Service *Re: Notice of Filing of Transfer of Claim* (related document(s)9603, 9604, 9605) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 03/14/2013) |
| 03/15/2013 | | 9660 | Transfer/Assignment of Claim. Transferor: Moss, Wanda G. To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |
| 03/15/2013 | | 9661 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Sandilands, Phillip Edward To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |
| 03/15/2013 | | 9662 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Nancy J. Belmares To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |
| 03/15/2013 | | 9663 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Samuel N. Muigai To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |

| 03/15/2013 | | 9664 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Robert Abbott To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |
|---|---|---|---|
| 03/15/2013 | | 9665 | Fred Lindow, Nortel US LTD Employee, Motion to Compel *Debtors to Admit my Claim for Severance Allowance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment* (related document(s)8067, 9304, 9427) Filed by Fred Lindow. Hearing scheduled for 6/13/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. The case judge is Kevin Gross. Objections due by 6/3/2013. (Attachments: # 1 Proposed Form of Order # 2 Exhibits) (SJS) Modified text on 3/15/2013 (SJS). (Entered: 03/15/2013) |
| 03/15/2013 | | 9666 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Oldfather, David To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |
| 03/15/2013 | | 9667 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Nicholas, Daniel J. To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |
| 03/15/2013 | | 9668 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: McDanal, John D. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |
| 03/15/2013 | | 9669 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Laviola, Gina M. To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |
| 03/15/2013 | | 9670 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Chang, Raymond To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |
| 03/15/2013 | | 9671 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Scott, Jeffrey To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/15/2013) |
| 03/15/2013 | | 9672 | Certificate of No Objection *Regarding Forty−Sixth Monthly Application of Fraser Milner Casgrain LLP Canadian Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered for the period November 1, 2012 to November 30, 2012 (No Order Required)* (related document(s)9474) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 03/15/2013) |
| 03/18/2013 | | 9673 | *Estelle Loggins, Nortel US LTD Employee, Motion Compelling Debtors to Admit my Claim for Compensation and Reimbursement of Amounts Owed for the Period of March 1, 2003 Through December 31, 2012 as Valid Per Nortel Networks Summary Plan Description (SPD) 2000 and Issue Payment Immediately* (related document(s)8270) Filed by Estelle Loggins. The case judge is Kevin Gross. (Attachments: # 1 Attachment) (SJS) Modified text on 3/18/2013 (SJS). (Entered: 03/18/2013) |
| 03/18/2013 | | 9674 | Motion to Compel *Debtors to Admit Claim for Severance Allowance as Valid Per Nortel Networks Severance Allowance* |

| | | | |
|---|---|---|---|
| | | | *Plan and Issue Payment.* Filed by Estelle Loggins. The case judge is Kevin Gross. (SJS) (Entered: 03/18/2013) |
| 03/18/2013 | | 9675 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Bentley, Andrew To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/18/2013) |
| 03/18/2013 | | 9676 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Yoe, Diedra S. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/18/2013) |
| 03/18/2013 | | 9677 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Chandramouli, Devaki To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/18/2013) |
| 03/18/2013 | | 9678 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Zaidi, Syed M. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/18/2013) |
| 03/18/2013 | | 9679 | Certificate of No Objection *Re: Application for Compensation of Punter Southall LLC for the period November 1, 2012 to January 31, 2013* (related document(s)9488) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/18/2013) |
| 03/18/2013 | | 9680 | Certificate of No Objection *Regarding Forty−Seventh Monthly Application of Fraser Milner Casgrain LLP Canadian Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered for the period December 1, 2012 to December 31, 2012 (No Order Required)* (related document(s)9484) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 03/18/2013) |
| 03/18/2013 | | 9681 | Certificate of No Objection *Regarding Forty−Eighth Monthly Application of Richards, Layton &Finger, PA for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Co−Counsel to the Official Committee of Unsecured Creditors for the period January 1, 2013 to January 31, 2013 (No Order Required)* (related document(s)9492) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 03/18/2013) |
| 03/19/2013 | | 9682 | Certification of Karen M. Wagner with Respect to the Tabulation of Ballots Concerning Potential Veba Sponsored Medical Insurance Plan (related document(s)9324) Filed by Official Committee of Retirees. (Taylor, William) Modified on 3/20/2013 (SB). (Entered: 03/19/2013) |
| 03/19/2013 | | 9683 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Contros, Jacqueline To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/19/2013) |
| 03/19/2013 | | 9684 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Depriest, Patricia To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/19/2013) |
| 03/19/2013 | | 9685 | |

| | | | |
|---|---|---|---|
| | | | Rule 2019 Statement *of Monzack, Mersky, McLaughlin and Browder, P.A. of Representation of Multiple Creditors* Filed by Ad Hoc Committee of Canadian Employees Terminated Pre–Petition. (Attachments: #_1 Exhibit A#_2 Exhibit B#_3 Certificate of Service) (Mersky, Rachel) (Entered: 03/19/2013) |
| 03/19/2013 | | 9686 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Laney, Michael To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/19/2013) |
| 03/19/2013 | | 9687 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Manno, Michael A. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/19/2013) |
| 03/19/2013 | | 9688 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Pilch, Donna To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/19/2013) |
| 03/19/2013 | | 9689 | Application to Employ/Retain E. Morgan Maxwell, III, Esq. as Special Tax Counsel Filed by Official Committee of Long–Term Disability Participants. Hearing scheduled for 4/9/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #4, Wilmington, Delaware. Objections due by 4/2/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Exhibit C#_5 Certificate of Service) (Stemerman, Jonathan) (Entered: 03/19/2013) |
| 03/19/2013 | | 9690 | Certificate of No Objection *Regarding Forty–Eighth Monthly Application of Akin Gump Strauss Hauer &Feld LLP, Co–Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for the Reimbursement of Expenses for Services Rendered for the period January 1, 2013 to January 31, 2013 (No Order Required)* (related document(s)9490) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 03/19/2013) |
| 03/19/2013 | | 9691 | Certificate of No Objection *Regarding Forty–Eighth Monthly Application of Capstone Advisory Group, LLC, Financial Advisor for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered for the period January 1, 2013 to January 31, 2013 (No Order Required)* (related document(s)9493) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 03/19/2013) |
| 03/19/2013 | | 9692 | Certificate of No Objection *Regarding Forty–Eighth Monthly Application of Fraser Milner Casgrain LLP Canadian Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered for the period January 1, 2013 to January 31, 2013 (No Order Required)* (related document(s)9494) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 03/19/2013) |
| 03/19/2013 | | 9693 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: COMMERCIAL ENERGY OF MONTANA, INC. To Tannor Partners Credit Fund, LP. Filed by Tannor Partners Credit Fund LP. (Tannor, Robert) (Entered: 03/19/2013) |

| | | | |
|---|---|---|---|
| 03/20/2013 | | 9694 | Notice of Withdrawal *of Proof of Claim No. 5513*. Filed by The Travelers Indemnity Company. (Riley, Richard) (Entered: 03/20/2013) |
| 03/20/2013 | | 9695 | Notice of Service *−−Re−Notice of Application for an Order Authorizing the Application of the Official Committee of Long Term Disability Participants for Order Under Bankruptcy Code Section 328(a) Approving the Employment and Retention of E. Morgan Maxwell, III, Esq. as Special Tax Counsel to the LTD Committee nunc pro tunc to February 11, 2013* (related document(s)9689) Filed by Official Committee of Long−Term Disability Participants. (Stemerman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9696 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Sandeep Pauddar To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/20/2013) |
| 03/20/2013 | | 9697 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Alviso, Chris To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9698 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Asemota, Charles To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9699 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Robin Boddie To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9700 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Brandt, Kenneth R. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9701 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CARDO, MARY−BETH To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9702 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Delucca, James To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9703 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Douglas, Michael To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9704 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: GUYDISH, DAVID To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9705 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Ingraham, Amber To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9706 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: KRATER, PAUL To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |

| | | | |
|---|---|---|---|
| 03/20/2013 | | 9707 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: PETRYK, DIANA To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9708 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Rothacker, Rainer To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9709 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: SMITH, JAMES R. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9710 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Van Liew, Catherine To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9711 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ZENG, HELEN To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/20/2013) |
| 03/20/2013 | | 9712 | Certificate of No Objection *Re: Interim Application for Compensation (Forty−Seventh) Of Crowell &Moring LLP As Special Counsel To Debtors And Debtors−In−Possession For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses Incurred for the period November 1, 2012 to January 31, 2013* (related document(s)9501) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/20/2013) |
| 03/20/2013 | | 9713 | Certificate of No Objection *Re: Monthly Application for Compensation (Thirty−Fifth) Of Chilmark Partners, LLC, As Consulting Expert To The Debtors And Debtors−In−Possession, For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses for the period January 1, 2013 to January 31, 2013* (related document(s)9503) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/20/2013) |
| 03/21/2013 | | 9714 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Timothy Dyer To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9715 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Kristen R. Schwertner To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9716 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Lorraine D. Davis To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9717 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Richard Baker To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |

| | | | |
|---|---|---|---|
| 03/21/2013 | | 9718 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Russell Leonard To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9719 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Lauren Owens To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9720 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Emilio Natividad To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9721 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: John Bolger To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9722 | Certificate of No Objection *regarding the the Sixth Quarterly Fee Application of McCarter &English LLP, As Local Counsel for The Official Committee of Retirees For The Period November 1, 2012 Through January 31, 2013* (related document(s)9508) Filed by Official Committee of Retirees. (Attachments: # 1 Certificate of Service) (Taylor, William) (Entered: 03/21/2013) |
| 03/21/2013 | | 9723 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Joe Palos To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9724 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Mark R. Corcoran To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9725 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Michael Trate To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9726 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Sharon R. Williams To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9727 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Eric C. Phillips To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9728 | Affidavit/Declaration of Service *Re: Notice of Defective Transfer of Claim* (related document(s)9648) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 03/21/2013) |
| 03/21/2013 | | 9729 | Affidavit/Declaration of Service *Re: Notice of Filing of Transfer of Claim* (related document(s)9639, 9640, 9646) Filed by Epiq |

| | | | |
|---|---|---|---|
| | | | Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 03/21/2013) |
| 03/21/2013 | | 9730 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Donald Hayward To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9731 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Thomas H. Swanson To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9732 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Susan Ellerman To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9733 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Ronald J. Wallis To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9734 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Hafeezah Rahman–Whitt To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9735 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Paul Redish To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9736 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Linda Hollenbec Amick To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9737 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Gregory Piske To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9738 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Fred Pullin To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9739 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Jill P. Moldrem To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 03/21/2013) |
| 03/21/2013 | | 9740 | Supplemental Affidavit/Declaration of Service *Of Jennifer Grageda of Kurtzman Carson Consultants LLC regarding the Solicitation Packet for the Long Term Disability Parties (Under Seal)* (related document(s)9607) Filed by Official Committee of Retirees. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G) (Taylor, |

| | | | |
|---|---|---|---|
| | | | William) (Entered: 03/21/2013) |
| 03/21/2013 | | 9741 | Supplemental Affidavit/Declaration of Service *Of Jennifer Grageda of Kurtzman Carson Consultants LLC regarding the Solicitation Packet for the Retiree Medical Parties* (related document(s)9606) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/21/2013) |
| 03/21/2013 | | 9742 | Supplemental Affidavit/Declaration of Service *Of Jennifer Grageda of Kurtzman Carson Consultants LLC regarding the Solicitation Packet for the Retiree NonMedical Parties* (related document(s)9609) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/21/2013) |
| 03/21/2013 | | 9743 | Supplemental Affidavit/Declaration of Service *Of Jennifer Grageda of Kurtzman Carson Consultants LLC regarding the Town Hall Meeting Notice to the Retiree Non–Medical Parties* (related document(s)9611) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/21/2013) |
| 03/21/2013 | | 9744 | Supplemental Affidavit/Declaration of Service *Of Jennifer Grageda of Kurtzman Carson Consultants LLC regarding the Town Hall Meeting Notice to the Long Term Disability Parties (portions of which are filed under seal)* (related document(s)9610) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/21/2013) |
| 03/21/2013 | | 9745 | Supplemental Affidavit/Declaration of Service *Of Jennifer Grageda of Kurtzman Carson Consultants LLC regarding the Town Hall Meeting Notice (Atlanta) to the Retiree Non–Medical Parties* (related document(s)9613) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/21/2013) |
| 03/21/2013 | | 9746 | Notice of Submission to the Honorable Mr. Justice Geoffrey Morawetz Regarding Allocation and Litigation Matters Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A# 2 Exhibit B) (Cordo, Ann) Modified on 3/22/2013 (SB). (Entered: 03/21/2013) |
| 03/22/2013 | | 9747 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ANDERSON, JOHN P., JR. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/22/2013) |
| 03/22/2013 | | 9748 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CHOPRA, MAYANK To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/22/2013) |
| 03/22/2013 | | 9749 | WITHDRAWN 03/22/13 (SEE DOCKET #9750) Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) Modified on 3/25/2013 (SB). (Entered: 03/22/2013) |
| 03/22/2013 | | 9750 | Notice of Withdrawal *Re: Notice of Agenda of Matters Scheduled for Hearing on March 26, 2013 at 10:00 a.m.* (related document(s)9749) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/22/2013) |

| | | | |
|---|---|---|---|
| 03/22/2013 | | 9751 | Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 3/26/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Exhibit A) (Minott, Tamara) (Entered: 03/22/2013) |
| 03/22/2013 | | 9752 | Notice of Service *Re: Notice of Agenda of Matters Scheduled for Hearing on March 26, 2013 at 10:00 a.m.* (related document(s)9751) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Minott, Tamara) (Entered: 03/22/2013) |
| 03/22/2013 | | 9753 | Certificate of No Objection *Re: Forty−Ninth Interim Application of Morris, Nichols, Arsht &Tunnell LLP, as Delaware and General Bankruptcy Counsel to Debtors and Debtors−in−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period January 1, 2013 Through January 31, 2013* (related document(s)9529) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/22/2013) |
| 03/22/2013 | | 9754 | Certificate of No Objection *Re: Twentieth Interim Application of Ernst &Young LLP forAllowance of Compensation for Services Rendered as Indirect Tax Service Advisor to the Debtors and Debtors−in−Possession for Period of November 1, 2012 Through January 31, 2013* (related document(s)9524) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/22/2013) |
| 03/22/2013 | | 9755 | Certificate of No Objection *Re: Twenty−First Monthly Application of Torys LLP, as Special Candadian Counsel to Debtors and Debtors−in−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period December 1, 2012 Through December 31, 2012* (related document(s)9535) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/22/2013) |
| 03/22/2013 | | 9756 | Certificate of No Objection *Re: Monthly Application for Compensation (Twenty−Second) of Torys LLP, as Special Canadian Counsel to Debtors and Debtors−In−Possession for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the period January 1, 2013 to January 31, 2013* (related document(s)9538) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/22/2013) |
| 03/25/2013 | | 9757 | WITHDRAWN 03/25/13 (SEE DOCKET #9769) Letter *to Jay Carfagnini from Robin B. Schwill* Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Dorsey, John) Modified on 3/26/2013 (SB). (Entered: 03/25/2013) |
| 03/25/2013 | | 9758 | Certificate of No Objection *Regarding Eighteeth Monthly Application of Elliott Greenleaf, Counsel to the Official Committee of Long Term Disability Participants, for Compensation and Reimbursement of Expenses for the period January 1, 2013 to January 31, 2013* (related document(s)9545) Filed by Official Committee of Long−Term Disability Participants. (Kinsella, Shelley) (Entered: 03/25/2013) |
| 03/25/2013 | | 9759 | |

| | | | |
|---|---|---|---|
| | | | Application for Compensation *Eighteenth Monthly Application of McCarter &English LLP, As Counsel to The Official Committee of Retirees For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses Incurred for* the period *February 1, 2013 to February 28, 2013* Filed by Official Committee of Retirees. Objections due by 4/15/2013. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Notice # 4 Certificate of Service) (Taylor, William) (Entered: 03/25/2013) |
| 03/25/2013 | | 9760 | Disclosure Statement *and Request for Judicial Notice* Filed by Vincent E. Rhynes (Attachments: # 1 Certificate of Service) (SB) (Entered: 03/25/2013) |
| 03/25/2013 | | 9761 | Certificate of No Objection *Re: Thirteenth Monthly Application of Linklaters LLP, as U.K. Counsel to Debtors and Debtors−in−Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period November 1, 2012 Through January 31, 2013* (related document(s)9542) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/25/2013) |
| 03/25/2013 | | 9762 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Phillips, Jessica To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9763 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Ligon, Keith To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9764 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Lent, Robert To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9765 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Echard Jr., Alfred To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9766 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Mills, Alina To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9767 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: TONTIRUTTANANON, CHANNARONG To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9768 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MOREN, CHRISTINA To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9769 | Notice of Withdrawal of *of Letter to Jay Carfagnini from Robin B. Schwill* (related document(s)9757) Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Luton Chapman, Jaime) (Entered: 03/25/2013) |
| 03/25/2013 | | 9770 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MOFFITT, GARY To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |

| | | | |
|---|---|---|---|
| 03/25/2013 | | 9771 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: DIMILLO, LYNETTE To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9772 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: DIMILLO, STEVEN To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9773 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: HARRIS, TIMOTHY To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9774 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: TWEEDY, JOHN To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9775 | Notice of Filing of Submissions of the EMEA Debtors to the Honourable Mr. Justice Geoffrey Morawetz Regarding Allocation and Litigation Matters in Response to the Monitor's Proposal and the U.S. Debtors' Response (related document(s)9746) Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Luton Chapman, Jaime) Modified on 3/26/2013 (SB). (Entered: 03/25/2013) |
| 03/25/2013 | | 9776 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: RABON, LYNN To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9777 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: DEROSAS, RAMON To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9778 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: HASKINS, RANDY To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9779 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WILLIAMS, TRACY A. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9780 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ELLERMAN, MARK To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9781 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Williams, Aaron D. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/25/2013) |
| 03/25/2013 | | 9782 | Statement Regarding an Additional Submission to the Honourable Mr. Justice Geoffrey Morawetz Regarding Allocation and Litigation Matters (related document(s)9775) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) Modified on 3/26/2013 (SB). (Entered: 03/25/2013) |
| 03/25/2013 | | 9783 | Certificate of No Objection *Regarding Forty−Eighth Monthly Application of Ashurst LLP, European Counsel for the Official Committee and for Reimbursement of Expenses for Services Rendered for the period January 1, 2013 to January 31, 2013 (No* |

| | | | |
|---|---|---|---|
| | | | *Order Required)* (related document(s)<u>9534</u>) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 03/25/2013) |
| 03/26/2013 | | <u>9784</u> | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Ross B. Lau To CRT Special Investments LLC. Filed by CRT Special Investments LLC. (Sarachek, Joseph) (Entered: 03/26/2013) |
| 03/26/2013 | | <u>9785</u> | **Minutes of Hearing held on: 03/26/2013 Subject: OMNIBUS &FEE APPLICATIONS HEARING.** (vCal Hearing ID (163119)). (related document(s) <u>9751</u>) (SS) Additional attachment(s) added on 3/26/2013 (SS). (Entered: 03/26/2013) |
| 03/26/2013 | | <u>9786</u> | Certificate of No Objection *Regarding the Sixteenth Monthly Application of Togut, Segal &Segal LLP, as counsel to the Official Committee of Retired Employees, for an Allowance of Interim Compensation and Reimbursement of All Actual and Necessary Expenses for the period December 1, 2012 through December 31, 2012* (related document(s)<u>9532</u>) Filed by Official Committee of Retirees. (Attachments: #_1 Certificate of Service) (Taylor, William) (Entered: 03/26/2013) |
| 03/26/2013 | | <u>9787</u> | Order (SIXTEENTH OMNIBUS) Allowing Certain Professional Interim Compensation for Services Rendered and Reimbursement of Expenses (related document(s<u>9469, 9489, 9491, 9499, 9500, 9502, 9505, 9508, 9512, 9516, 9528, 9533, 9537, 9539, 9543, 9546, 9564, 9565, 9566, 9576, 9588</u>). Signed on 3/26/2013. (Attachments: #_1 Exhibit A#_2 Exhibit B#_3 Exhibit C) (SJS) (Entered: 03/26/2013) |
| 03/26/2013 | | <u>9788</u> | Affidavit/Declaration of Service *of Karen M. Wagner of Kurtzman Carson Consultants LLC regarding the Certification of Karen M. Wagner with Respect to the Tabulation of Ballots Concerning Potential Veba Sponsored Medical Insurance Plan* (related document(s)<u>9682</u>) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/26/2013) |
| 03/26/2013 | | <u>9789</u> | Affidavit/Declaration of Service *Re: Notice of Submission to the Honorable Mr. Justice Geoffrey Morawetz Regarding Allocation and Litigation Matters* (related document(s)<u>9746</u>) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 03/26/2013) |
| 03/26/2013 | | <u>9790</u> | Supplemental Affidavit *of Service of Jennifer Grageda of Kurtzman Carson Consultants LLC regarding the Town Hall Meeting Notice* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/26/2013) |
| 03/26/2013 | | <u>9791</u> | Supplemental Affidavit *of Service of Jennifer Grageda of Kurtzman Carson Consultants LLC regarding the Town Hall Meeting Notice (Atlanta)* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/26/2013) |
| 03/26/2013 | | <u>9792</u> | Notice of Service *Re: Sixteenth Omnibus Order Allowing Certain Professional Interim Compensation for Services Rendered and Reimbursement of Expenses* (related document(s)<u>9787</u>) Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Service List) |

| | | | |
|---|---|---|---|
| | | | (Minott, Tamara) (Entered: 03/26/2013) |
| 03/26/2013 | | 9793 | Supplemental Affidavit *of Service of Karen M. Wagner of Kurtzman Carson Consultants LLC regarding the Settlement Solicitation Packages (portions of which filed under seal)* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/26/2013) |
| 03/26/2013 | | 9794 | Notice of Hearing *Notice of Status Conference* Filed by Nortel Networks Inc., et al.. Hearing scheduled for 3/27/2013 at 02:30 PM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Cordo, Ann) (Entered: 03/26/2013) |
| 03/26/2013 | | 9795 | Supplemental Affidavit *of Service of Karen M. Wagner of Kurtzman Carson Consultants LLC regarding the Settlement Solicitation Packages for Retiree Non−Medical Parties* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/26/2013) |
| 03/26/2013 | | 9796 | Application for Compensation *Forty−Ninth Monthly Application of Richards, Layton &Finger, P.A. for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Co−Counsel to the Official Committee of Unsecured Creditors* for the period *February 1, 2013* to *February 28, 2013* Filed by Richards, Layton &Finger, PA. Objections due by 4/15/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Certificate of Service) (Samis, Christopher) (Entered: 03/26/2013) |
| 03/26/2013 | | 9797 | Supplemental Affidavit *of Service of Karen M. Wagner of Kurtzman Carson Consultants LLC regarding the Settlement Solicitation Packages for Retiree Medical Parties* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/26/2013) |
| 03/26/2013 | | 9798 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Winterberg, Nicholas F. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9799 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MCCARTY, MONTY To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9800 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MCADOO, JOHN G, II To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9801 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ORTT, ROBERT To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9802 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WEEKS, THOMAS B. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9803 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: LEE, GREG To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9804 | |

| | | | |
|---|---|---|---|
| | | | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WALKER, JAMIE L To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9805 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MULANGU, FABRICE To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9806 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: HINGORANI, MANOJ To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9807 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: LAM–CALDERON, NANCY To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9808 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WALKER, D CARLISLE To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9809 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: COLSON, DAMON To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9810 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: KUO, CATHY To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9811 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: SCHOOLEY, RUSSELL To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9812 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Siemens, Wayne To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9813 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CURTIS, DENNIS To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9814 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: O'LEARY, BRENT To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9815 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: RUFF, GEOFFREY E To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9816 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: DABRAL, AJAY To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9817 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MUNIZ, RUEBEN To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9818 | |

| | | | |
|---|---|---|---|
| | | | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WOLFENBARGER, WILLIAM To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9819 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Culotti, Peter L. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9820 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: PHAM, KEVIN DUNG To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9821 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: LITWINS, ROBERT To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9822 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: JACKSON, JONATHAN S. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9823 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: DONDERO, MICHAEL A. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9824 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CHERUPALLA, SHYAM To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9825 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: BOGEN, DONALD EUGENE To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9826 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: HANSEN, MARK J. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9827 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Weller, Burton To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9828 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MITA, SADAHISA To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9829 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: DO, THUC To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9830 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MOORE, FREDERICK I. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9831 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: RATTRAY, STEPHEN A. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9832 | |

| | | | |
|---|---|---|---|
| | | | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WILSON, CHRISTOPHER To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9833 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WAGNER, THEODORE To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9834 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: KURTZ, DAVID L. JR. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9835 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: KING, DENNY To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9836 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MEHROTRA, PRASHANT To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9837 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: THOMAS, JOHN G. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9838 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: COLE, JAMES W. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/26/2013 | | 9839 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: GHASEMIAN, ZAHRA To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/26/2013) |
| 03/27/2013 | | 9840 | Motion to Withdraw as Attorney Filed by Lisa Fitzgerald. (Attachments: # 1 Proposed Form of Order) (Gisleson, Soren) (Entered: 03/27/2013) |
| 03/27/2013 | | 9841 | Application for Compensation *Seventeenth Monthly Application of Togut, Segal &Segal LLP, as counsel to the Official Committee of Retired Employees, for an Allowance of Interim Compensation and Reimbursement of All Actual and Necessary Expenses* for the period *January 1, 2013 to January 31, 2013* Filed by Official Committee of Retirees. Objections due by 4/16/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B) (Taylor, William) (Entered: 03/27/2013) |
| 03/27/2013 | | 9842 | Motion to Appear pro hac vice *of David W. Wiltenburg of Hughes Hubbard &Reed LLP*. Receipt Number 1257575, Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Harron, Edwin) (Entered: 03/27/2013) |
| 03/27/2013 | | 9843 | Motion to Appear pro hac vice *of William R. Maguire of Hughes Hubbard &Reed LLP*. Receipt Number 1257575, Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Harron, Edwin) (Entered: 03/27/2013) |
| 03/27/2013 | | 9844 | Motion to Appear pro hac vice *of Charles H. Huberty of Hughes Hubbard &Reed LLP*. Receipt Number 1257575, Filed by Joint Administrators and Foreign Representatives for Nortel Networks |

| | | | |
|---|---|---|---|
| | | | UK Limited. (Harron, Edwin) (Entered: 03/27/2013) |
| 03/27/2013 | | 9845 | Motion to Appear pro hac vice *of Gabrielle Glemann of Hughes Hubbard &Reed LLP*. Receipt Number 1257575, Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Harron, Edwin) (Entered: 03/27/2013) |
| 03/27/2013 | | 9846 | **Minutes of Hearing held on: 03/27/2013** **Subject:** Status Conference RE: Letters coming in from UK. (vCal Hearing ID (166134)). (related document(s) 9794) (SS) Additional attachment(s) added on 3/27/2013 (SS). (Entered: 03/27/2013) |
| 03/27/2013 | | 9847 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: XU, YUE To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9848 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WININGER, STEVEN To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9849 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: SARTORI, THOMAS JR. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9850 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ADOM, PRINCE To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9851 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: GIBSON, ROBERT JOHN To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9852 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ABELLO, BERNARDO To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9853 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: SOWARDS, ALAN To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9854 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: REYES, JORGE To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9855 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: STEIN, CRAIG F. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9856 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: HOGAN, ROBERT A. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9857 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: SEITZ, DENNIS W To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |

| | | | |
|---|---|---|---|
| 03/27/2013 | | 9858 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: LOGUE, JOSEPH To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9859 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MCNULTY, KEITH J To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/27/2013 | | 9860 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: BARRIOS, ALVIO To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 03/27/2013) |
| 03/28/2013 | | 9861 | Affidavit/Declaration of Service *of Karen M. Wagner, Kurtzman Carson Consultants, LLC regarding the Seventeenth Monthly Application of Togut, Segal &Segal LLP, as counsel to the Official Committee of Retired Employees, for an Allowance of Interim Compensation and Reimbursement of All Actual and Necessary Expenses for the period January 1, 2013 to January 31, 2013* (related document(s)9841) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 03/28/2013) |
| 03/28/2013 | | 9862 | Affidavit/Declaration of Service *Re: Notice of Status Conference* (related document(s)9794) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 03/28/2013) |
| 03/28/2013 | | 9863 | Order Granting Motion for Admission pro hac vice of Charles Huberty Esq (Related Doc # 9844) Order Signed on 3/28/2013. (SB) (Entered: 03/28/2013) |
| 03/28/2013 | | 9864 | Order Granting Motion for Admission pro hac vice of William Maguire Esq (Related Doc # 9843) Order Signed on 3/28/2013. (SB) (Entered: 03/28/2013) |
| 03/28/2013 | | 9865 | Order Granting Motion for Admission pro hac vice of Gabrielle Glemann Esq (Related Doc # 9845) Order Signed on 3/28/2013. (SB) (Entered: 03/28/2013) |
| 03/28/2013 | | 9866 | Order Granting Motion for Admission pro hac vice of David Wiltenburg Esq (Related Doc # 9842) Order Signed on 3/28/2013. (SB) (Entered: 03/28/2013) |
| 03/28/2013 | | 9867 | Statement of the Official Committee of Retired Employees of Nortel Networks Inc., et al., (A) in Response to Objections to Settlement Motion and (B) in Further Support of Debtors Settlement Agreement with the Retiree Committee (related document(s)9224) Filed by Official Committee of Retirees. (Taylor, William) Modified on 3/29/2013 (SB). (Entered: 03/28/2013) |
| 03/28/2013 | | 9868 | Declaration *of Mark M. Haupt, Sr. in Support of the Debtors' Motion for Entry of Orders Approving the Debtors' Settlement Agreement with the Retiree Committee* (related document(s)9224) Filed by Official Committee of Retirees. (Attachments: # 1 Exhibit 1# 2 Exhibit 2) (Taylor, William) (Entered: 03/28/2013) |
| 03/28/2013 | | 9869 | Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/2/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., |

| | | | |
|---|---|---|---|
| | | | Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 03/28/2013) |
| 03/28/2013 | | 9870 | Reply *in Further Support of Motion for Entry of an Order Approving a Settlement Agreement with the Official Committee of Retired Employees* (related document(s)9224, 9225, 9285, 9324, 9387, 9429, 9447, 9561, 9562, 9591, 9638, 9645, 9654, 9659) Filed by Nortel Networks Inc., et al. (Cordo, Ann) (Entered: 03/28/2013) |
| 03/28/2013 | | 9871 | Declaration *of John J. Ray III in Further Support of Motion for Entry of an Order Approving a Settlement Agreement with the Official Committee of Retired Employees* (related document(s)9870) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3) (Cordo, Ann) (Entered: 03/28/2013) |
| 03/28/2013 | | 9872 | Notice of Filing of Revised Order Granting Debtors' Motion for Entry of an Order Approving a Settlement Agreement with the Official Committee of Retired Employees (related document(s)9224) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A# 2 Exhibit B) (Cordo, Ann) Modified on 3/29/2013 (SB). (Entered: 03/28/2013) |
| 03/28/2013 | | 9873 | Application for Compensation *Forty–Ninth Monthly Application of Ashurst LLP, European Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered* for the period *February 1, 2013* to *February 28, 2013* Filed by Ashurst LLP. Objections due by 4/18/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Certificate of Service) (Samis, Christopher) (Entered: 03/28/2013) |
| 03/28/2013 | | 9874 | Certificate of No Objection *Re: Forty–Ninth Interim Application of Huron Consulting Group as Accounting and Restructuring Consultant to Debtors and Debtors–in–Possession, for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the Period February 1, 2013 Through February 28, 2013* (related document(s)9596) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 03/28/2013) |
| 03/28/2013 | | 9875 | Amended Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/2/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 03/28/2013) |
| 03/28/2013 | | 9876 | Application for Compensation *Nineteenth Monthly Application of Elliott Greenleaf, Counsel to the Official Committee of Long Term Disability Participants, for Compensation and Reimbursement of Expenses* for the period *February 1, 2013* to *February 28, 2013*. Filed by Official Committee of Long–Term Disability Participants. Objections due by 4/17/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Certificate of Service) (Kinsella, Shelley) (Entered: 03/28/2013) |
| 03/28/2013 | | 9877 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Pulliam, Kimberly To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |

| | | | |
|---|---|---|---|
| 03/28/2013 | | 9878 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Ranade, Milind To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9879 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Peterson, Jeffrey To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9880 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Leavell, Brent To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9881 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MENDONCA, TIMOTHY A. To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9882 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MENDONCA, TIMOTHY A. To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9883 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Miller, Janet To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9884 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Quick, Janet To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9885 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Quick, John To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9886 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Carroll, Rodney To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9887 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: LOWMAN, TERESITA (SITA) To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9888 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Yeronick, Mary Fran To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9889 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: McCoy, Andre To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9890 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WEIGLER, SEAN To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |
| 03/28/2013 | | 9891 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: FLETCHER, ERIKA To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 03/28/2013) |

| | | | |
|---|---|---|---|
| 03/28/2013 | | 9892 | Notice of Service *Re: (i) Reply in Further Support of Motion for Order Approving a Settlement Agreement; and (ii) Declaration of John J. Ray III in Further Support of Motion Order Approving a Settlement Agreement* (related document(s)9870, 9871) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Minott, Tamara) (Entered: 03/28/2013) |
| 03/28/2013 | | 9893 | Notice of Service *Re: Notice of Filing of Revised Order Granting Debtors' Motion for Order Approving a Settlement Agreement* (related document(s)9872) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Minott, Tamara) (Entered: 03/28/2013) |
| 03/28/2013 | | 9916 | Motion to Direct Ericsson Inc and Telefonaktiebolaget LM Ericsson (PUBL) Purchasers of GSM Division of Nortel Network Pay Relief to Stephen Ray Paroski in the Amount of Three Hundred Twenty One Thousands and Nine Hundred and Sixty Four Dollar Plus One Hundred Thousand Dollars in Damages $321,964.97 + $100,000.00 = $421,964.00 Filed by Stephen Paroski. (Attachments: # 1 Exhibit A# 2 Exhibit B) (SB) (Entered: 04/01/2013) |
| 04/01/2013 | | 9894 | Transcript regarding Hearing Held 03/27/2013 RE: Status. Remote electronic access to the transcript is restricted until 7/1/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Diaz Data Services, LLC, Telephone number 717–233–6664.] Notice of Intent to Request Redaction Deadline Due By 4/8/2013. Redaction Request Due By 4/22/2013. Redacted Transcript Submission Due By 5/2/2013. Transcript access will be restricted through 7/1/2013. (related document(s)9794) (GM) (Entered: 04/01/2013) |
| 04/01/2013 | | 9895 | Affidavit/Declaration of Service *Re: Notice of Filing of Transfer of Claim* (related document(s)9660, 9661, 9662, 9663, 9664, 9666) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/01/2013) |
| 04/01/2013 | | 9896 | Affidavit/Declaration of Service *Re: Statement Regarding an Additional Submission to the Honourable Mr. Justice Geoffrey Morawetz Regarding Allocation and Litigation Matters* (related document(s)9782) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/01/2013) |
| 04/01/2013 | | 9897 | Affidavit *of Karen M. Wagner of Kurtzman Carson Consultants LLC* (related document(s)9867, 9868) Filed by Official Committee of Retirees. (Taylor, William) (Entered: 04/01/2013) |
| 04/01/2013 | | 9898 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ADAMS, DEBRA K. To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9899 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: BALDWIN, ROBERT SHAW To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9900 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: COATES, BYRON To Solus Recovery Fund II Master |

| | | | |
|---|---|---|---|
| | | | LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9901 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CONKLIN, JOHN To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9902 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CURRLIN, GEORGE To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9903 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Dinh, Ha K. To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9904 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Dobbins, Richard To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9905 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Dowdy, Jill To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9906 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: GELL, NANCY F. To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9907 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: HUEBER, LORRAINE J. To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9908 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: JOHNSON, JACK To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9909 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: JOHNSON, RONNIE To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9910 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Kamble, Keshav G To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9911 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: KING, KATRINA To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9912 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: KOTHARI, PRIYADARSHINI To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9913 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MASON, TIINA To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9914 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MCKENNA, GREGORY To Solus Recovery Fund II |

| | | | |
|---|---|---|---|
| | | | Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9915 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MONAHAN, MARY To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9917 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: SHAW, DARRELL K. To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9918 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Skipper, Theodore To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9919 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: STONEHOUSE, DAVID To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9920 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: TARLAMIS, ALEXANDER To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9921 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: TODARO, THOMAS To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9922 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: VANDERHOFF, MICHAEL To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9923 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Wennerstrom, James A To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9924 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WILLIAMS, WILLIAM G. To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9925 | Monthly Application for Compensation *(Fiftieth)* of Morris, Nichols, Arsht &Tunnell LLP for the period *February 1, 2013* to *February 28, 2013* Filed by Morris, Nichols, Arsht &Tunnell LLP. Objections due by 4/22/2013. (Attachments: #1 Notice #2 Exhibit A#3 Exhibit B#4 Certificate of Service) (Cordo, Ann) (Entered: 04/01/2013) |
| 04/01/2013 | | 9926 | Supplemental Declaration in Support *of John J. Ray III In Further Support Of Debtors Motion For Entry Of An Order Pursuant To 11 U.S.C. §§ 105, 363 And 1114 And Fed. R. Bankr. P. 9019 Approving A Settlement Agreement With The Official Committee Of Retired Employees* (related document(s)9224) Filed by Nortel Networks Inc., et al.. (Attachments: #1 Exhibit 1 (2008 Retiree Medical Plan Summary Plan Description)#2 Exhibit 2 (2008 Retiree Lilfe Insurance &Long–Term Care Plan Summary Plan Description)#3 Exhibit 3 (2013 Retiree Medical Plan Summary Plan Description)#4 Exhibit 4 (2013 Retiree Lilfe Insurance &Long–Term Care Plan Summary Plan Description)) (Cordo, Ann) (Entered: 04/01/2013) |

| 04/01/2013 | | 9927 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ZHOU, NIAN To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
|---|---|---|---|
| 04/01/2013 | | 9928 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: BOWBEER, TERI To Solus Recovery Fund Offshore Master LP. Filed by (Zinman, Jonathan) (Entered: 04/01/2013) |
| 04/01/2013 | | 9929 | Amended Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/01/2013) |
| 04/01/2013 | | 9930 | Certification of Counsel *Regarding Omnibus Hearing Dates* Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Proposed Form of Order) (Cordo, Ann) (Entered: 04/01/2013) |
| 04/01/2013 | | 9931 | Monthly Application for Compensation *(Twenty−Third) of Torys LLP, as Special Canadian Counsel to Debtors and Debtors−In−Possession for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred* for the period *February 1, 2013 to February 28, 2013* Filed by Torys LLP. Objections due by 4/22/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Certificate of Service) (Minott, Tamara) (Entered: 04/01/2013) |
| 04/01/2013 | | 9932 | Interim Application for Compensation *(Fiftieth) Of Cleary Gottlieb Steen &Hamilton LLP, As Attorneys For Debtors And Debtors−In−Possession, For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses Incurred* for the period *February 1, 2013 to February 28, 2013* Filed by Cleary Gottlieb Steen &Hamilton LLP. Objections due by 4/22/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Certificate of Service) (Cordo, Ann) (Entered: 04/01/2013) |
| 04/02/2013 | | 9933 | Transcript regarding Hearing Held 03/08/2013 RE: Telephonic Hearing. Remote electronic access to the transcript is restricted until 7/1/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Diaz Data Services, Telephone number 717−233−6664.] Notice of Intent to Request Redaction Deadline Due By 4/9/2013. Redaction Request Due By 4/23/2013. Redacted Transcript Submission Due By 5/3/2013. Transcript access will be restricted through 7/1/2013. (related document(s)9580) (GM) (Entered: 04/02/2013) |
| 04/02/2013 | | 9934 | Motion to Appear pro hac vice *of Robert J. Ryan of Cleary Gottlieb Steen &Hamilton LLP*. Receipt Number 1260391, Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/02/2013) |
| 04/02/2013 | | 9935 | Affidavit/Declaration of Service *Re: Notice of Agenda of Matters Scheduled for Hearing on April 2, 2013 at 10:00 a.m.* (related document(s)9869, 9875) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/02/2013) |
| 04/02/2013 | | 9936 | Order Scheduling Omnibus Hearings. All hearings will be held at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware (Related document(s)9930). Omnibus |

| | | | |
|---|---|---|---|
| | | | Hearings scheduled for 7/16/2013 at 10:00 AM., 7/30/2013 at 10:00 AM., 8/21/2013 at 10:00 AM., 8/28/2013 at 10:00 AM., 9/10/2013 at 10:00 AM., 9/24/2013 at 10:00 AM., 10/8/2013 at 10:00 AM., 10/22/2013 at 10:00 AM., 11/5/2013 at 10:00 AM., 11/19/2013 at 10:00 AM., 12/3/2013 at 10:00 AM., 12/17/2013 at 10:00 AM. Signed on 4/2/2013. (LC) (Entered: 04/02/2013) |
| 04/02/2013 | | 9937 | **Minutes of Hearing held on: 04/02/2013**<br>**Subject:** SETTLEMENT HEARING.<br>(vCal Hearing ID (162042)). (related document(s) 9929) (SS) Additional attachment(s) added on 4/2/2013 (SS). (Entered: 04/02/2013) |
| 04/02/2013 | | 9938 | Order Granting Debtors' Motion for Entry of an Order Approving a Settlement Agreement with the Official Committee of Retired Employees (related document(s)9224, 9324) Order Signed on 4/2/2013. (Attachments: # 1 Exhibit I) (GM) (Entered: 04/02/2013) |
| 04/02/2013 | | 9939 | Order Approving Motion for Admission Pro Hac Vice of Robert J. Ryan (related document(s)9934) Order Signed on 4/2/2013. (GM) (Entered: 04/02/2013) |
| 04/02/2013 | | 9940 | Notice of Service *Re: Omnibus Hearing Order* (related document(s)9936) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Minott, Tamara) (Entered: 04/02/2013) |
| 04/03/2013 | | 9941 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Lee J. McDade To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/03/2013) |
| 04/03/2013 | | 9942 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Jeffrey E. Williams To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/03/2013) |
| 04/03/2013 | | 9943 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Woubit Atnafe To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/03/2013) |
| 04/03/2013 | | 9944 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Tasha Whitted Braswell To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/03/2013) |
| 04/03/2013 | | 9945 | Transcript regarding Hearing Held 04/02/2013 RE: Settlement Hearing. Remote electronic access to the transcript is restricted until 7/2/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Diaz Data Services, LLC, Telephone number 717–233–6664.] Notice of Intent to Request Redaction Deadline Due By 4/10/2013. Redaction Request Due By 4/24/2013. Redacted Transcript Submission Due By 5/6/2013. Transcript access will be restricted through 7/2/2013. (related document(s)9929) (GM) (Entered: 04/03/2013) |

| 04/03/2013 | | 9946 | OPINION (related document(s)5307, 5531) (LJH) (Entered: 04/03/2013) |
| 04/03/2013 | | 9947 | ORDER re Allocation Protocol (related document(s)5307, 5531, 9946) Order Signed on 4/3/2013. (LJH) (Entered: 04/03/2013) |
| 04/03/2013 | | 9948 | BNC Certificate of Mailing. (related document(s)9894) Notice Date 04/03/2013. (Admin.) (Entered: 04/04/2013) |
| 04/04/2013 | | 9949 | Affidavit/Declaration of Service *(Exhibit B Filed Under Seal)* (related document(s)9870, 9871, 9872) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/04/2013) |
| 04/04/2013 | | 9950 | Affidavit/Declaration of Service *Re: Supplemental Declaration in Support of John J. Ray III In Further Support Of Debtors Motion For Entry Of An Order Pursuant To 11 U.S.C. §§ 105, 363 And 1114 And Fed. R. Bankr. P. 9019 Approving A Settlement Agreement With The Official Committee Of Retired Employees and Notice of Second Amended Agenda of Matters Scheduled for Hearing on April 2, 2013 at 10:00 A.M.* (related document(s)9926, 9929) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/04/2013) |
| 04/04/2013 | | 9951 | Affidavit/Declaration of Service *Re: Notice of Filing of Transfer of Claim* (related document(s)9667, 9668, 9669, 9670, 9671, 9675, 9676, 9677, 9678, 9683, 9684, 9686, 9687, 9688, 9693, 9696, 9697, 9698, 9699, 9700, 9701, 9702, 9703, 9704, 9705, 9706) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/04/2013) |
| 04/04/2013 | | 9952 | Affidavit/Declaration of Service *Re: Notice of Filing of Transfer of Claim* (related document(s)9708, 9709, 9710, 9711, 9714, 9715, 9716, 9717, 9718, 9719, 9720, 9721, 9723, 9724, 9725, 9726, 9727, 9730, 9731, 9732, 9733, 9734, 9735, 9736, 9737, 9738, 9739, 9747, 9748) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/04/2013) |
| 04/04/2013 | | 9953 | Affidavit/Declaration of Service *Re: Order Approving Allocation Protocol* (related document(s)9947) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/04/2013) |
| 04/04/2013 | | 9954 | Certification of Counsel *Regarding Order Approving Application of the Official Committee of Long Term Disability Participants for Order Under Bankruptcy Code Section 328(a) Approving the Employment and Retention of E. Morgan Maxwell, III, Esq. as Special Tax Counsel to the LTD Committee, nunc pro tunc to February 11, 2013* (related document(s)9689) Filed by Official Committee of Long–Term Disability Participants. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Certificate of Service) (Kinsella, Shelley) (Entered: 04/04/2013) |
| 04/04/2013 | | 9955 | BNC Certificate of Mailing. (related document(s)9933) Notice Date 04/04/2013. (Admin.) (Entered: 04/05/2013) |
| 04/05/2013 | | 9956 | Affidavit *of Service of Karen M. Wagner, Kurtzman Carson Consultants, LLC regarding Bankruptcy Court Approval of Retiree Committee Settlement Agreement* Filed by Official Committee of Retirees. (Taylor, William) (Entered: 04/05/2013) |

| | | | |
|---|---|---|---|
| 04/05/2013 | | 9957 | Affidavit of Service (Filed Under Seal) Re: Order Granting Debtors' Motion for Entry of an Order Approving a Settlement Agreement with the Official Committee of Retired Employees. (related document(s)9938) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) Modified docket text on 4/9/2013 (LMD). (Entered: 04/05/2013) |
| 04/05/2013 | | 9958 | Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/9/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 04/05/2013) |
| 04/05/2013 | | 9959 | Notice of Service *Re: Notice of Agenda of Matters Scheduled for Hearing on April 9, 2013* (related document(s)9958) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Minott, Tamara) (Entered: 04/05/2013) |
| 04/05/2013 | | 9960 | **Virtual Minutes of: 04/09/2013** **Subject:** OMNIBUS HEARING AND Pretrial Conference AND Pretrial Conference AND Pretrial Conference. **Appearances:** NONE. **Proceedings:** VACATED: Certification of Counsel filed – Order Signed. (vCal Hearing ID (161178)). (related document(s) 9958) (SS) (Entered: 04/05/2013) |
| 04/05/2013 | | 9961 | Order Approving Application of the Official Committee of Long Term Disability Participants for Order Approving the Employment and Retention of E. Morgan Maxwell III Esq as Special Tax Counsel to the LTD Committee Nunc Pro Tunc to February 11, 2013 (related document(s)9954) Order Signed on 4/5/2013. (SB) (Entered: 04/05/2013) |
| 04/05/2013 | | 9962 | Notice of Extension of Termination Date Under the Retiree Settlement Agreement. (related document(s)9224, 9938) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) Modified docket text on 4/9/2013 (LMD). (Entered: 04/05/2013) |
| 04/05/2013 | | 9963 | Amended HEARING CANCELLED/RESCHEDULED. Notice of Agenda of Matters Scheduled for Hearing. Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/9/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 04/05/2013) |
| 04/05/2013 | | 9964 | Notice of Service *Re: Notice of Extension of Termination Date Under the Retiree Settlement Agreement* (related document(s)9962) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/05/2013) |
| 04/05/2013 | | 9965 | Notice of Service *Re: Debtors First Set of Requests for Production of Documents Directed to the Members of the Ad Hoc Committee of Canadian Employees Terminated Pre–Petition* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/05/2013) |
| 04/05/2013 | | 9966 | BNC Certificate of Mailing. (related document(s)9945) Notice Date 04/05/2013. (Admin.) (Entered: 04/06/2013) |
| 04/08/2013 | | 9967 | |

| | | | |
|---|---|---|---|
| | | | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: BAKER, VINCENT J. To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9968 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: BARAN, MICHAEL F. To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9969 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: BERGLUND, JOSEPH To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9970 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: BRADEE, WILLIAM F. To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9971 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CHAPLIN, JEAN To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9972 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: COLEMAN, STEPHEN M. To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9973 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CONRAD, LARRY G. To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9974 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: COOPER, MICHAEL To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9975 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: FERRELL, DWAYNE To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9976 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: GAGLIONE, MICHAEL To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9977 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: HAMILTON, CHARLES To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9978 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: HOCKADAY, KELLY H. To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9979 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: HORTON, JOYCE To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9980 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MENDONCA, TIMOTHY A. To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9981 | |

| | | | |
|---|---|---|---|
| | | | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: PERKINS, VANDORA S. To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9982 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: POUGH, KEVIN To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9983 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: STEVENS, LILLIEN To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9984 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: VASILE, VINCENT To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9985 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WAITE, LORI K. To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9986 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WALTON, GERANIMA G To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9987 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WEST, GLINDA To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9988 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WHITED, MORRIS N. To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9989 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: YOUNG, DANIEL F To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9990 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: William Vosburg To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/08/2013) |
| 04/08/2013 | | 9991 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Thomas D. Amershek To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/08/2013) |
| 04/08/2013 | | 9992 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WELCH, WARD To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9993 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Wellspring Capital LP To CRT Special Investments LLC. Filed by CRT Special Investments LLC. (Sarachek, Joseph) (Entered: 04/08/2013) |
| 04/08/2013 | | 9994 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Wellspring Capital LP To CRT Special Investments LLC. Filed by CRT Special Investments LLC. (Sarachek, Joseph) |

| | | | |
|---|---|---|---|
| | | | (Entered: 04/08/2013) |
| 04/08/2013 | | 9995 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Wellspring Capital LP To CRT Special Investments LLC. Filed by CRT Special Investments LLC. (Sarachek, Joseph) (Entered: 04/08/2013) |
| 04/08/2013 | | 9996 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Mihaela Meaton To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/08/2013) |
| 04/08/2013 | | 9997 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Keith Niskala To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/08/2013) |
| 04/08/2013 | | 9998 | Notice of Address Change . Filed by US Debt Recovery IIA, LLC. (Jones, Nathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 9999 | Notice of Address Change . Filed by US Debt Recovery III, LP. (Jones, Nathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 10000 | Notice of Address Change . Filed by US Debt Recovery V, LP. (Jones, Nathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 10001 | Notice of Address Change . Filed by US Debt Recovery VIII, L.P.. (Jones, Nathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 10002 | Notice of Address Change . Filed by United States Debt Recovery X, L.P.. (Jones, Nathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 10003 | Notice of Address Change . Filed by US Debt Recovery, XI, L.P.. (Jones, Nathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 10004 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Mark Lloyd To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/08/2013) |
| 04/08/2013 | | 10005 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Tracy Biggers To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/08/2013) |
| 04/08/2013 | | 10006 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Bender, Albert To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 10007 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Everhart, Donna To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 10008 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: PAFILIS, VASSILIS To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |

| 04/08/2013 | | 10009 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: VAUGHN, JERRY E To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
|---|---|---|---|
| 04/08/2013 | | 10010 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Williams, Avery To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/08/2013) |
| 04/08/2013 | | 10011 | Supplemental Affidavit of Service of Jennifer Grageda, Kurtzman Carson Consultants LLC regarding the Certification of Karen M. Wagner with Respect to the Tabulation of Ballots Concerning Potential Veba Sponsored Medical Insurance Plan. (related document(s)9682) Filed by Official Committee of Retirees. (Taylor, William) Modified docket text on 4/9/2013 (LMD). (Entered: 04/08/2013) |
| 04/08/2013 | | 10012 | Certification of Counsel *Regarding the Proposed Order Approving the Stipulated Protocol Regarding Discovery with Respect to the Issue of "Excusable Neglect" in Connection with the Motion of the Ad Hoc Committee of Canadian Employees Terminated Pre−Petition for Entry of an Order Allowing Filing of Claims after the Bar Date* (related document(s)9362, 9412, 9418, 9444, 9451, 9641) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A) (Cordo, Ann) (Entered: 04/08/2013) |
| 04/08/2013 | | 10013 | Forty−Ninth Monthly Application of Akin Gump Strauss Hauer &Feld LLP, Co−Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for the Reimbursement of Expenses for Services Rendered for the period February 1, 2013 to February 28, 2013. Filed by Akin Gump Strauss Hauer &Feld LLP. Objections due by 4/29/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Certificate of Service) (Samis, Christopher) Modified docket text on 4/9/2013 (LMD). (Entered: 04/08/2013) |
| 04/09/2013 | | 10014 | Affidavit of Service Re: Notice of Filing of Transfer of Claim. (related document(s)9762, 9763, 9764, 9765, 9766, 9767, 9768) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) Modified docket text on 4/10/2013 (LMD). (Entered: 04/09/2013) |
| 04/09/2013 | | 10015 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Abdul Khawar To CRT Special Investments LLC. Filed by CRT Special Investments LLC. (Sarachek, Joseph) (Entered: 04/09/2013) |
| 04/09/2013 | | 10016 | Order (WITH REVISION MADE BY THE COURT) Approving the Stipulated Protocol Regarding Discovery with Respect to the Issue of "Excusable Neglect" in Connection with the Motion of the Ad Hoc Committee of Canadian Employees Terminated Pre−Petition for Entry of an Order Allowing Filing of Claims after the Bar Date. (related document(s)9362, 9412, 9418, 9444, 9451, 9641, 10012) Order Signed on 4/9/2013. (LMD) (Entered: 04/09/2013) |
| 04/09/2013 | | 10017 | Notice of Service *Re: Order Approving the Stipulated Protocol Regarding Discovery with Respect to the Issue of "Excusable Neglect" in Connection with the Motion of the Ad Hoc Committee of Canadian Employees Terminated Pre−Petition for Entry of an* |

| | | | |
|---|---|---|---|
| | | | *Order Allowing Filing of Claims after the Bar Date* (related document(s)10016) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/09/2013) |
| 04/09/2013 | | 10018 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To SPCP Group, LLC. Filed by SPCP GROUP, LLC ("SPCP"). (Beacher, Ronald) (Entered: 04/09/2013) |
| 04/09/2013 | | 10019 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To SPCP Group, LLC. Filed by SPCP GROUP, LLC ("SPCP"). (Beacher, Ronald) (Entered: 04/09/2013) |
| 04/09/2013 | | 10020 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To SPCP Group, LLC. Filed by SPCP GROUP, LLC ("SPCP"). (Beacher, Ronald) (Entered: 04/09/2013) |
| 04/10/2013 | | 10021 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: DEUTSCHE BANK SECURITIES INC. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10022 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: DEUTSCHE BANK SECURITIES INC. To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10023 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: TRYLOVICH, KAREN W To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10024 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: TRYLOVICH, KAREN W To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10025 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ASM Capital III, L.P. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10026 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ASM Capital III, L.P. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10027 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ASM Capital III, L.P. To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10028 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ASM Capital III, L.P. To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10029 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WINGO, GARY L To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10030 | |

| | | | |
|---|---|---|---|
| | | | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WINGO, GARY L To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10031 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WEVER, JOHN P To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10032 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WEVER, JOHN P To Solus Recovery Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10033 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: DANE, EUGENE To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10034 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: DANE, EUGENE To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10035 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CHONG, BAK LENG To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10036 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CHONG, BAK LENG To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10037 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CHONG, BAK LENG To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10038 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CHONG, BAK LENG To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/10/2013) |
| 04/10/2013 | | 10039 | Notice of Service *(FILED UNDER SEAL) Notice of Appearance and Request for Notices* (related document(s)9389) Filed by Manuel Segura. (Zahralddin−Aravena, Rafael) (Entered: 04/10/2013) |
| 04/10/2013 | | 10040 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Tonya Cole To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/10/2013) |
| 04/10/2013 | | 10041 | Monthly Application for Compensation *(Fifty−First) of Morris, Nichols, Arsht &Tunnell LLP* for the period *March 1, 2013* to *March 31, 2013* Filed by Morris, Nichols, Arsht &Tunnell LLP. Objections due by 4/30/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Certificate of Service) (Cordo, Ann) (Entered: 04/10/2013) |
| 04/10/2013 | | 10042 | Certificate of Service *(Exhibit A, Exhibit B and Exhibit C FILED UNDER SEAL)* (related document(s)9389, 9619) Filed by Official Committee of Long−Term Disability Participants. (Attachments: # 1 Exhibit A# 2 Exhibit 1# 3 Exhibit 2# 4 Exhibit 3# 5 Exhibit 4# 6 Exhibit 5# 7 Exhibit 6# 8 Exhibit B# 9 Exhibit 7# 10 Exhibit |

| | | | |
|---|---|---|---|
| | | | 8#_11 Exhibit 9#_12 Exhibit 10#_13 Exhibit C#_14 Exhibit 11#_15 Exhibit 12#_16 Exhibit 13#_17 Exhibit 14) (Zahralddin–Aravena, Rafael) (Entered: 04/10/2013) |
| 04/11/2013 | | 10043 | Affidavit/Declaration of Service *Re: Notice: Filing of Transfer of Claim Pursuant to Federal Rule of Bankruptcy Procedure 3001(e) (2) or (4)* (related document(s)9770, 9771, 9772, 9773, 9774, 9776, 9777, 9778, 9779, 9780, 9781, 9784) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/11/2013) |
| 04/11/2013 | | 10044 | Affidavit/Declaration of Service *Re: Notice of Extension of Termination Date Under the Retiree Settlement Agreement (Portions Filed Under Seal)* (related document(s)9962) Filed by Epiq Bankruptcy Solutions LLC. (Attachments: #_1 Exhibit A#_2 Exhibit B (Filed Under Seal)) (Minott, Tamara) (Entered: 04/11/2013) |
| 04/11/2013 | | 10045 | Objection *to the Motion of Stephen Paroski for the Order of Successor Ericsson, Inc. and Telefonaktiebolaget LM Ericsson (Publ) Purchasers of GSM Division of Nortel Network Pay Relief to Stephen Ray Paroski I in the Amount of Three Hundrd Twenty One Thousands and Nine Hunder and Sixty Four Dollar Plus One Hunder Thousand Dollas in Pundit Damages $321,964.97 + $100,000.00 = $421,964.00* (related document(s)9916) Filed by Nortel Networks Inc., et al. (Attachments: #_1 Exhibit A#_2 Certificate of Service) (Cordo, Ann) (Entered: 04/11/2013) |
| 04/11/2013 | | 10046 | Debtor–In–Possession Monthly Operating Report for Filing Period February 2013 Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Certificate of Service) (Minott, Tamara) (Entered: 04/11/2013) |
| 04/11/2013 | | 10047 | Periodic Report Regarding Value, Operations and Profitability of Entities in Which the Debtors' Estates Hold a Substantial or Controlling Interest Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Certificate of Service) (Minott, Tamara) (Entered: 04/11/2013) |
| 04/11/2013 | | 10048 | WITHDRAWN 4/15/2013 (related docket_10060)Notice of Settlement *(Fourth) of Certain Post–Petition Claims Against the Debtors* Filed by Nortel Networks Inc., et al. (Attachments: #_1 Exhibit A) (Minott, Tamara) Modified docket text on 4/15/2013 (LMD). (Entered: 04/11/2013) |
| 04/11/2013 | | 10049 | Motion of The Official Committee of Long Term Disability Participants For Approval Of Distribution And Related Relief Filed by Official Committee of Long–Term Disability Participants. Hearing scheduled for 4/30/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. Objections due by 4/23/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Exhibit C) (Kinsella, Shelley) Modified on 4/12/2013 (SB). (Entered: 04/11/2013) |
| 04/11/2013 | | 10050 | Application for Compensation *Forty–Ninth Monthly Application of Capstone Advisory Group, LLC, Financial Advisor for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered* for the period *February 1, 2013* to |

| | | | |
|---|---|---|---|
| | | | *February 28, 2013* Filed by Capstone Advisory Group, LLC. Objections due by 5/2/2013. (Attachments: #_1 Notice #_2 Exhibit A#_3 Exhibit B#_4 Exhibit C#_5 Exhibit D#_6 Certificate of Service) (Samis, Christopher) (Entered: 04/11/2013) |
| 04/11/2013 | | 10051 | Notice of Filing of Revised Order (A) Approving The Settlement Agreement On A Final Basis, (B) Certifying A Class For Settlement Purposes Only On A Final Basis, (C) Authorizing The Debtors To Terminate The LTD Plans, And (D) Granting Related Relief (related document(s)9304) Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Proposed Form of Order Exhibit A#_2 Exhibit B (Redline Order)) (Cordo, Ann) Modified on 4/12/2013 (SB). (Entered: 04/11/2013) |
| 04/11/2013 | | 10052 | Statement of the Official Committee of Retired Employees of Nortel Networks Inc., et al., in Further Support of Disallowance of the Claim of John H. Yoakum for Compensation for Termination of Retiree Welfare Benefits (related document(s)9224, 9591) Filed by Official Committee of Retirees. (Taylor, William) Modified on 4/12/2013 (SB). (Entered: 04/11/2013) |
| 04/11/2013 | | 10053 | Notice Of Extension Of Termination Date Under The LTD Settlement Agreement (related document(s)9304, 9403, 9427) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) Modified on 4/12/2013 (SB). (Entered: 04/11/2013) |
| 04/11/2013 | | 10054 | Declaration *of Richard K. Milin in Support of the Statement of the Official Committee of Retired Employees of Nortel Networks Inc., et al., in Further Support of Disallowance of the Claim of John H. Yoakum for Compensation for Termination of Retiree Welfare Benefits* (related document(s)10052) Filed by Official Committee of Retirees. (Attachments: #_1 Exhibit 1 through 5#_2 Exhibit 6 through 8) (Taylor, William) (Entered: 04/11/2013) |
| 04/11/2013 | | 10055 | Notice of Service re (1) Notice of Filing of Revised Order (A) Approving The Settlement Agreement On A Final Basis, (B) Certifying A Class For Settlement Purposes Only On A Final Basis, (C) Authorizing The Debtors To Terminate The LTD Plans, And (D) Granting Related Relief and (2) Notice Of Extension Of Termination Date Under The LTD Settlement Agreement [D.I. 10051, 10053; 34, 35] Filed by Nortel Networks Inc., et al.. (Minott, Tamara) Modified on 4/12/2013 (SB). (Entered: 04/11/2013) |
| 04/12/2013 | | 10056 | Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/16/2013 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 04/12/2013) |
| 04/12/2013 | | 10057 | Notice of Service *Re: Notice of Agenda of Matters Scheduled for Hearing on 4/16/2013 at 11:00 AM* (related document(s)10056) Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Service List) (Minott, Tamara) (Entered: 04/12/2013) |
| 04/12/2013 | | 10058 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: McArthur, Brant To Liquidity Solutions, Inc.. Filed by Liquidity Solutions, Inc.. (Schoenfeld, Norman) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/12/2013) |
| 04/12/2013 | | 10059 | Affidavit of Service of Karen M. Wagner, Kurtzman Carson Consultants, LLC Regarding Motion of The Official Committee of Long Term Disability Participants For Approval Of Distribution And Related Relief. (related document(s)10049) Filed by Official Committee of Long–Term Disability Participants. (Zahralddin–Aravena, Rafael) Modified docket text on 4/15/2013 (LMD). (Entered: 04/12/2013) |
| 04/12/2013 | | 10060 | Notice of Withdrawal *Re: Notice of Settlement (Fourth) of Certain Post–Petition Claims Against the Debtors* (related document(s)10048) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/12/2013) |
| 04/12/2013 | | 10061 | Affidavit of Service Re: Notice: FIling of Transfer of Claim. (related document(s)9707, 9798, 9799, 9800, 9801, 9802, 9803, 9804, 9805, 9806, 9807, 9808, 9809, 9810, 9811, 9812, 9817, 9820, 9821, 9822, 9823, 9824, 9825, 9826, 9827, 9847, 9848, 9849) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) Modified docket text on 4/15/2013 (LMD). (Entered: 04/12/2013) |
| 04/12/2013 | | 10062 | Affidavit of Service Re: Notice: Filing of Transfer of Claim. (related document(s)9813, 9814, 9815, 9816, 9818, 9819) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) Modified docket text on 4/15/2013 (LMD). (Entered: 04/12/2013) |
| 04/12/2013 | | 10063 | Withdraw of Transfer of Claim by Claimant(s) Wever, John.(related document(s)10031). Filed by (related document(s)10031) (Zinman, Jonathan) (Entered: 04/12/2013) |
| 04/12/2013 | | 10064 | Monthly Application for Compensation *FOURTEENTH of Alvarez &Marsal Healthcare Industry Group, LLC, as Financial Advisor to the Official Committee of Retired Employees and The Official Committee of Long Term Disability Participants of Nortel Networks, Inc., and its Affiliated Debtors, for Allowance of Interim Compensation and Reimbursement of All Actual and Necessary Expenses Incurred* for the period *November 1, 2012* to *November 30, 2012* Filed by Official Committee of Long–Term Disability Participants. Objections due by 5/2/2013. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Certificate of Service) (Kinsella, Shelley) (Entered: 04/12/2013) |
| 04/14/2013 | | 10065 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Cynthia Buxton To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10066 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Patricia Cross To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10067 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Jeffrey Creasy To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10068 | |

| | | | |
|---|---|---|---|
| | | | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Mark Stratton To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10069 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Stephen Soroka To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10070 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Paul Hughes To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10071 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Christopher Garner To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10072 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Daniel Doyle To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10073 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Billie G. Phelps To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10074 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Paul M. Grooms To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10075 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Deepika Chalemela To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10076 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Nita J. Hall To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10077 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Kirsten Ruus To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10078 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: GID 0189341 To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10079 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Russell L. McCallum To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/14/2013) |
| 04/14/2013 | | 10080 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 1 Transferor: Russell L. McCallum To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10081 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Ronald Videtto To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10082 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Suzanne Darte To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10083 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Mohit Chopra To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10084 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Debra L. Baker To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10085 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 1 Transferor: Debra L. Baker To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10086 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Mohit Chopra To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10087 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Suzanne Darte To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10088 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Ronald Videtto To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10089 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Rick Owens To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10090 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Richard Bails To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10091 | |

| | | | |
|---|---|---|---|
| | | | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Anthony DeLissio To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10092 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Steven M. Carr To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10093 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: John D. Bovinette To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10094 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Clifton D. Horton To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10095 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Kenneth Stegman To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10096 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Anwar A. Piracha To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10097 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Mark Salgado To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10098 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Jeff Jameson To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10099 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Alex G. Nichols To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10100 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Juana M. Molina To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10101 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Louis A. Gencarelli To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/14/2013) |
| 04/14/2013 | | 10102 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Thomas Taylor To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/14/2013) |
| 04/15/2013 | | 10103 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: BORCHERS, WALTER SCOTT To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/15/2013) |
| 04/15/2013 | | 10104 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: MCDUFFIE, WILLIAM I. To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 04/15/2013) |
| 04/15/2013 | | 10105 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: PLOPPER, DAVID To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/15/2013) |
| 04/15/2013 | | 10106 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: ROBINSON, DAVID A To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/15/2013) |
| 04/15/2013 | | 10107 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: SLAUGHTER, SHARON To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/15/2013) |
| 04/15/2013 | | 10108 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: TOOKE, RICHARD To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/15/2013) |
| 04/15/2013 | | 10109 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WALSH, JOHN R. To Solus Core Opportunities LP. Filed by (Zinman, Jonathan) (Entered: 04/15/2013) |
| 04/15/2013 | | 10110 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: WHITE, ELISA To Solus Recovery LH Fund LP. Filed by (Zinman, Jonathan) (Entered: 04/15/2013) |
| 04/15/2013 | | 10111 | Affidavit/Declaration of Service *Regarding (1) Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief; (2) Supplemental Estimate of Individual Allocation of Settlement Amount; and (3) Table of Individual Claims and Settlement Amounts* (related document(s)10049) Filed by Official Committee of Long–Term Disability Participants. (Zahralddin–Aravena, Rafael) (Entered: 04/15/2013) |
| 04/15/2013 | | 10112 | Notice of Appearance Filed by Ericsson Inc. and Telefonaktiebolaget LM Ericsson (Publ.). (Ward, Christopher) (Entered: 04/15/2013) |
| 04/15/2013 | | 10113 | Objection *to Motion to Direct Ericsson Inc and Telefonaktiebolaget LM Ericsson (PUBL) Purchasers of GSM Division of Nortel Network Pay Relief to Stephen Ray Paroski in the Amount of Three Hundred Twenty One Thousands and Nine Hundred and Sixty Four Dollar Plus One Hundred Thousand Dollars in Damages $321,964.97 + $100,000.00 = $421,964.00* (related document(s)9916) Filed by Ericsson Inc. and Telefonaktiebolaget LM Ericsson (Publ.) (Attachments: # 1 Exhibit A) (Ward, Christopher) (Entered: 04/15/2013) |

| | | | |
|---|---|---|---|
| 04/15/2013 | | <u>10114</u> | Affidavit of Service *of Karen M. Wagner, Kurtzman Carson Consultants regarding the Statement of the Official Committee of Retired Employees of Nortel Networks Inc., et al., in Further Support of Disallowance of the Claim of John H. Yoakum for Compensation for Termination of Retiree Welfare Benefits and the Declaration of Richard K. Milin in Support of the Statement of the Official Committee of Retired Employees of Nortel Networks Inc., et al., in Further Support of Disallowance of the Claim of John H. Yoakum for Compensation for Termination of Retiree Welfare Benefit* (related document(s)<u>10052, 10054</u>) Filed by Official Committee of Retirees. (Taylor, William) (Modified Text on 4/16/2013 (JohnstonJ, Julie). (Entered: 04/15/2013) |
| 04/15/2013 | | <u>10115</u> | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners, LP. Filed by DG Value Partners, LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | <u>10116</u> | Status Report *on Avoidance Actions Assigned to the Honorable Kevin Gross* Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/15/2013) |
| 04/15/2013 | | <u>10117</u> | Affidavit/Declaration of Mailing . Filed by Ericsson Inc. and Telefonaktiebolaget LM Ericsson (Publ.). (related document(s)<u>10113</u>) (Matthews, Gene) (Entered: 04/15/2013) |
| 04/15/2013 | | <u>10118</u> | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners, LP. Filed by DG Value Partners, LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | <u>10119</u> | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners, LP. Filed by DG Value Partners, LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | <u>10120</u> | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners, LP. Filed by DG Value Partners, LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | <u>10121</u> | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners, LP. Filed by DG Value Partners, LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | <u>10122</u> | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners, LP. Filed by DG Value Partners, LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | <u>10123</u> | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners II Master Fund LP. Filed by DG Value Partners II Master Fund LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | <u>10124</u> | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Letter *Regarding Individual Settlement Statement [REDACTED]*(related document(s) <u>10049</u>) Filed by David Litz. |

| | | | |
|---|---|---|---|
| | | | (Sutty, Eric) Modified on 4/16/2013 to add related docket no. (LCN). Modified on 4/30/2013 (SJS). (Entered: 04/15/2013) |
| 04/15/2013 | | 10125 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners II Master Fund LP. Filed by DG Value Partners II Master Fund LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | 10126 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Letter *[UNDER SEAL] Regarding Individual Settlement Statement* (related document(s) 10049) Filed by David Litz. (Sutty, Eric) Modified on 4/16/2013 to add related docket no. (LCN). Modified on 4/23/2013 (SB). (Entered: 04/15/2013) |
| 04/15/2013 | | 10127 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Letter *[REDACTED] Regarding Individual Settlement Statement* (related document(s) 10049) Filed by Kerry Logan. (Sutty, Eric) Modified on 4/16/2013 to add related docket no. (LCN). Modified on 4/30/2013 (SJS). (Entered: 04/15/2013) |
| 04/15/2013 | | 10128 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners II Master Fund LP. Filed by DG Value Partners II Master Fund LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | 10129 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Letter *[UNDER SEAL] Regarding Individual Settlement Statement* (related document(s) 10049) Filed by Kerry Logan. (Sutty, Eric) Modified on 4/16/2013 to add related docket no. (LCN). Modified on 4/23/2013 (SB). (Entered: 04/15/2013) |
| 04/15/2013 | | 10130 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners II Master Fund LP. Filed by DG Value Partners II Master Fund LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | 10131 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners II Master Fund LP. Filed by DG Value Partners II Master Fund LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | 10132 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners II Master Fund LP. Filed by DG Value Partners II Master Fund LP. (Hannon, Tara) (Entered: 04/15/2013) |
| 04/15/2013 | | 10133 | Certification of Counsel *Regarding Allocation Protocol* (related document(s)5307, 9947) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A (2013 Allocation Protocol) # 2 Exhibit B (Blackline of 2013 Allocation Protocol) # 3 Exhibit C (Blackline of Monitor's 2013 Allocation Protocol)) (Cordo, Ann) (Entered: 04/15/2013) |
| 04/15/2013 | | 10134 | *Notice of Filing of Monitor's Allocation Protocol* Filed by Ernst &Young Inc., As Monitor &foreign Representative of the Canadian Nortel Group. (Attachments: # 1 Exhibit Letter to J. Morawetz # 2 Exhibit Schedule A # 3 Exhibit B # 4 Exhibit C) (Murphy, Kathleen) (Modified Text on 4/16/2013 (JohnstonJ, Julie). (Entered: 04/15/2013) |

| | | | |
|---|---|---|---|
| 04/15/2013 | | 10150 | Notice of Hearing *on the Motion to Direct Ericsson Inc and Telefonaktiebolaget LM Ericsson (PUBL) Purchasers of GSM Division of Nortel Network Pay Relief to Stephen Ray Paroski in the Amount of Three Hundred Twenty One Thousands and Nine Hundred and Sixty Four Dollar Plus One Hundred Thousand Dollars in Damages $321,964.97 + $100,000.00 = $421,964.00* (related document(s)9916) Filed by Stephen Paroski. Hearing scheduled for 4/30/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. The case judge is Kevin Gross. Objections due by 4/15/2013. (TMB) (Entered: 04/17/2013) |
| 04/15/2013 | | 10151 | Request to Consider Allowance for Severance Pay. Filed by Vada Wilson . (TMB) (Entered: 04/17/2013) |
| 04/16/2013 | | 10135 | Affidavit of Service Regarding Letters [Under Seal] to the Honorable Judge Kevin Gross Regarding Individual Settlement Statements. (related document(s)10126, 10129) Filed by Official Committee of Long–Term Disability Participants. (Sutty, Eric) Modified docket text on 4/16/2013 (LMD). (Entered: 04/16/2013) |
| 04/16/2013 | | 10136 | **Minutes of Hearing held on: 04/16/2013** **Subject:** OMNIBUS HEARING. (vCal Hearing ID (164802)). (related document(s) 10056) (SS) Additional attachment(s) added on 4/16/2013 (SS). (Entered: 04/16/2013) |
| 04/16/2013 | | 10137 | Application for Compensation *Fifth Application of Members of the Official Committee of Retired Employees for Reimbursement of Expenses Incurred* for the period *March 1, 2013 to April 3, 2013* Filed by Official Committee of Retirees. Objections due by 5/7/2013. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C # 5 Exhibit D # 6 Exhibit E) (Taylor, William) (Entered: 04/16/2013) |
| 04/16/2013 | | 10138 | Motion to Approve Compromise under Rule 9019 *with United States Custom and Border Protection and Authorizing Payment of Certain Customs Duties* Filed by Nortel Networks Inc., et al.. Hearing scheduled for 5/7/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. Objections due by 4/30/2013. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B) (Minott, Tamara) (Entered: 04/16/2013) |
| 04/16/2013 | | 10139 | Monthly Application for Compensation *FIFTEENTH of Alvarez &Marsal Healthcare Industry Group, LLC, as Financial Advisor to the Official Committee of Retired Employees and The Official Committee of Long Term Disability Participants of Nortel Networks, Inc. (NNI), and its Affiliated Debtors, for Allowance of Interim Compensation and Reimbursement of All Actual and Necessary Expenses Incurred* for the period *December 1, 2012 to December 31, 2012* Filed by Official Committee of Long–Term Disability Participants. Objections due by 5/7/2013. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Certificate of Service) (Kinsella, Shelley) (Entered: 04/16/2013) |
| 04/16/2013 | | 10140 | Notice of Service *Re: Motion to Approve Compromise under Rule 9019 with United States Custom and Border Protection and Authorizing Payment of Certain Customs Duties* (related document(s)10138) Filed by Nortel Networks Inc., et al.. |

| | | | |
|---|---|---|---|
| | | | (Attachments: #_1_ Service List) (Minott, Tamara) (Entered: 04/16/2013) |
| 04/16/2013 | | 10141 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Letter *[REDACTED] to the Honorable Judge Kevin Gross Regarding HRA Response for the Settlement Distribution* (related document(s)10049) Filed by Brent Beasley. (Zahralddin−Aravena, Rafael) Modified on 4/30/2013 (SJS). (Entered: 04/16/2013) |
| 04/16/2013 | | 10142 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Letter *[UNDER SEAL] to the Honorable Judge Kevin Gross Regarding HRA Response for the Settlement Distribution* (related document(s)10049, 10141) Filed by Brent Beasley. (Zahralddin−Aravena, Rafael) Modified to correct Filing Party on 4/16/2013 (TMB). Modified on 4/23/2013 (SB). (Entered: 04/16/2013) |
| 04/16/2013 | | 10143 | Affidavit of Service (Portions Filed Under Seal). (related document(s)10051, 10053) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) Modified docket text on 4/17/2013 (LMD). (Entered: 04/16/2013) |
| 04/16/2013 | | 10144 | Affidavit of Service Re: Certification of Counsel Regarding Allocation Protocol. (related document(s)10133) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) Modified docket text on 4/17/2013 (LMD). (Entered: 04/16/2013) |
| 04/16/2013 | | 10145 | Order Setting Hearing Relating to January 6, 2014 Trial. Order Signed on 4/16/2013. (KPB) (Entered: 04/16/2013) |
| 04/16/2013 | | 10146 | Response *REDACTED−−Wayne J. Schmidt, Nortel US LTD Employee, Response to Order (A) Preliminarily Approving the Settlement Agreement Regarding Long Term Disability Plan and Claims, (B) Conditionally Certifying a Class for Settlement Purposes Only, (C) Approving the Notice Procedures, (D) Scheduling a Fairness Hearing and (E) Granting Related Relief* (related document(s)8067, 8418, 9304, 9427, 9938, 9962, 10049) Filed by Wayne J. Schmidt (Attachments: #_1_ Exhibit A # 2 Exhibit B # 3 Exhibit C #_4_ Exhibit D #_5_ Exhibit E #_6_ Exhibit F) (Zahralddin−Aravena, Rafael) Additional attachment(s) added on 4/17/2013 (TMB). Modified to replace the image(s) of Exhibit(s) B and C on 4/17/2013 (TMB). (Entered: 04/16/2013) |
| 04/16/2013 | | 10147 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Response *UNDER SEAL−− Wayne J. Schmidt, Nortel US LTD Employee, Response to Order (A) Preliminarily Approving the Settlement Agreement Regarding Long Term Disability Plan and Claims, (B) Conditionally Certifying a Class for Settlement Purposes Only, (C) Approving the Notice Procedures, (D) Scheduling a Fairness Hearing and (E) Granting Related Relief* (related document(s)8067, 8418, 9304, 9427, 9938, 9962, 10049) Filed by Wayne J. Schmidt (Zahralddin−Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/16/2013) |
| 04/16/2013 | | 10148 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners II Master Fund LP. Filed by DG Value Partners II Master Fund LP. (Hannon, Tara) (Entered: 04/16/2013) |

| | | | |
|---|---|---|---|
| 04/16/2013 | | 10149 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: CRT Special Investments LLC To DG Value Partners, LP. Filed by DG Value Partners, LP. (Hannon, Tara) (Entered: 04/16/2013) |
| 04/16/2013 | | 10152 | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long−Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)8067, 9304, 9427) Filed by Kevin Leonard (TMB) (Entered: 04/17/2013) |
| 04/16/2013 | | 10153 | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long−Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)8067, 9304, 9427) Filed by Kevin Leonard (TMB) (Entered: 04/17/2013) |
| 04/17/2013 | | 10154 | Affidavit of Service of Karen M Wagner, Kurtzman Carson Consultants, LLC regarding Fifth Application of Members of the Official Committee of Retired Employees for Reimbursement of Expenses Incurred for the period March 1, 2013 to April 3, 2013. (related document(s)10137) Filed by Official Committee of Retirees. (Taylor, William) Modified docket text on 4/17/2013 (LMD). (Entered: 04/17/2013) |
| 04/17/2013 | | 10155 | Certificate of No Objection *regarding Regarding the Eighteenth Monthly Application of McCarter &English LLP, As Counsel to The Official Committee of Retirees For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses Incurred For The Period February 1, 2013 through February 28, 2013* (related document(s)9759) Filed by Official Committee of Retirees. (Attachments: # 1 Certificate of Service) (Taylor, William) (Entered: 04/17/2013) |
| 04/17/2013 | | 10156 | Monthly Application for Compensation *(Fiftieth) of Huron Consulting Group* for the period *March 1, 2013* to *March 31, 2013* Filed by Huron Consulting Group. Objections due by 5/7/2013. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C # 5 Certificate of Service) (Cordo, Ann) (Entered: 04/17/2013) |
| 04/17/2013 | | 10157 | Notice of Settlement *(Fourth) of Certain Post−Petition Claims Against the Debtors* Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A) (Cordo, Ann) (Entered: 04/17/2013) |
| 04/17/2013 | | 10158 | Corrective Entry ~ Due to contents of confidential information, the images of Exhibit(s) B and C have been replaced. (related document(s)10146) (TMB) (Entered: 04/17/2013) |

| 04/17/2013 | | | Adversary Case 10–55913 Closed by Deputy Clerk. (LMD) (Entered: 04/17/2013) |
|---|---|---|---|
| 04/17/2013 | | 10159 | Joinder (REDACTED) *in Response to Wayne Schmidt* (related document(s)10049, 10146) Filed by William Reed. (Attachments: # 1 Exhibit A) (Zahralddin–Aravena, Rafael) Modified docket entry text on 4/17/2013 (MAS). (Entered: 04/17/2013) |
| 04/17/2013 | | 10160 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Joinder *[UNDER SEAL] in Response to Wayne Schmidt* (related document(s)10049, 10146, 10159) Filed by William Reed. (Zahralddin–Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/17/2013) |
| 04/17/2013 | | 10161 | Order Relating to John H. Yoakum (related document(s)9591, 9938) Order Signed on 4/17/2013. (GM) (Entered: 04/17/2013) |
| 04/17/2013 | | 10162 | WITHDRAWN 04/24/13 (SEE DOCKET # 10262) Objection *[REDACTED] Objection to Debtors Motion of Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C) Approve the Notice* (related document(s)8067, 9304, 9427, 10049) Filed by John J. Rossi (Attachments: # 1 Declaration) (Zahralddin–Aravena, Rafael) Modified on 4/25/2013 (SB). (Entered: 04/17/2013) |
| 04/17/2013 | | 10163 | Certificate of No Objection *Regarding Forty–Ninth Monthly Application of Richards, Layton &Finger, P.A. for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Co–Counsel to the Official Committee of Unsecured Creditors for the Period from February 1, 2013 through February 28, 2013 (No Order Required)* (related document(s)9796) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 04/17/2013) |
| 04/17/2013 | | 10164 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Objection *[UNDER SEAL] to Debtors Motion of Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C) Approve the Notice* (related document(s)8067, 9304, 9427, 10049) Filed by John J. Rossi (Zahralddin–Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/17/2013) |
| 04/17/2013 | | 10165 | Notice of Service *Re: Order Relating to John H. Yoakum* (related document(s)10161) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/17/2013) |
| 04/17/2013 | | 10166 | Notice of Appeal BAP–13–37. Fee Amount $298. (related document(s)9947) Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. Appellant Designation due by 05/1/2013. (Luton Chapman, Jaime) Modified on 4/22/2013 (SJS). (Entered: 04/17/2013) |
| 04/17/2013 | | 10167 | Motion for Leave to Appeal *from Order Approving Allocation Protocol* (related document(s)9946, 9947) Filed by Joint |

| | | | |
|---|---|---|---|
| | | | Administrators and Foreign Representatives for Nortel Networks UK Limited. (Attachments: #_1 Proposed Form of Order #_2 Exhibit A #_3 Exhibit B #_4 Exhibit C #_5 Exhibit D #_6 Exhibit E #_7 Exhibit F #_8 Exhibit G) (Luton Chapman, Jaime) (Entered: 04/17/2013) |
| 04/17/2013 | | 10172 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long–Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)8067, 9304, 9427) Filed by Vernon Long (TMB) Modified on 4/30/2013 (SJS). (Entered: 04/18/2013) |
| 04/18/2013 | | 10168 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Objection *[REDACTED] to the Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)10049) Filed by Felicia Jones Mann (Zahralddin–Aravena, Rafael) Modified on 4/30/2013 (SJS). (Entered: 04/18/2013) |
| 04/18/2013 | | 10169 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Objection *[UNDER SEAL] to the Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)10049) Filed by Felicia Jones Mann (Zahralddin–Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/18/2013) |
| 04/18/2013 | | 10170 | Motion to Compel *Debtors to Admit My Claim for Severance Allowance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment* (related document(s)8067, 9304, 9427) Filed by John J. Rossi. Hearing scheduled for 4/30/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. The case judge is Kevin Gross. Objections due by 4/19/2013. (Attachments: #_1 Exhibit) (TMB) (Entered: 04/18/2013) |
| 04/18/2013 | | 10171 | Affidavit of Service Regarding [Under Seal] Responses and Objections to the Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief. (related document(s)10142, 10147, 10160, 10164, 10169) Filed by Official Committee of Long–Term Disability Participants. (Zahralddin–Aravena, Rafael) Modified docket text on 4/18/2013 (LMD). (Entered: 04/18/2013) |
| 04/18/2013 | | 10173 | Affidavit of Service Re: Order Setting Hearing Relating to January 6, 2014 Trial. (related document(s)10145) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) Modified docket text on 4/18/2013 (LMD). (Entered: 04/18/2013) |
| 04/18/2013 | | 10174 | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long–Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C)* |

| | | | |
|---|---|---|---|
| | | | *Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief.* (related document(s)8067, 9304, 9427) Filed by Narinder Saran (TMB) (Entered: 04/18/2013) |
| 04/18/2013 | | 10175 | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long−Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)8067, 9304, 9427) Filed by Narinder Saran (TMB) (Entered: 04/18/2013) |
| 04/18/2013 | | 10176 | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long−Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)8067, 9304, 9427) Filed by Narinder Saran (TMB) (Entered: 04/18/2013) |
| 04/18/2013 | | 10177 | Application for Compensation *Nineteenth Monthly Application of McCarter &English LLP, As Counsel to The Official Committee of Retirees For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses Incurred* for the period *March 1, 2013 to March 31, 2013* Filed by Official Committee of Retirees. Objections due by 5/9/2013. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Certificate of Service) (Taylor, William) (Entered: 04/18/2013) |
| 04/18/2013 | | 10178 | Certificate of No Objection *regarding the Seventeenth Monthly Application of Togut, Segal &Segal LLP, as counsel to the Official Committee of Retired Employees, for an Allowance of Interim Compensation and Reimbursement of All Actual and Necessary Expenses for the period January 1, 2013 to January 31, 2013* (related document(s)9841) Filed by Official Committee of Retirees. (Attachments: # 1 Certificate of Service) (Taylor, William) (Entered: 04/18/2013) |
| 04/18/2013 | | 10179 | Affidavit/Declaration of Service *Re: Notice of Settlement (Fourth) of Certain Post−Petition Claims Against the Debtors* (related document(s)10157) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/18/2013) |
| 04/18/2013 | | 10180 | Objection (REDACTED) *to Debtors Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(a) Preliminarily Approve the Settlement Agreement Regarding Long Term Disability Plans and Claims, (b) Conditionally Certify a Class for Settlement Purposes Only, (c) Approve the Notice Procedures, and (d) Schedule a Fairness* |

| | | | |
|---|---|---|---|
| | | | *Hearing; and (II)(a) Finally Approve the Settlement Agreement, (b) Finally Certify a Class, (c) Authorize the Debtors to Terminate the LTD Plans, and (d) Grant Related Relief* (related document(s)9304, 9370, 9427, 10049) Filed by Marilyn Day (Zahralddin−Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/18/2013) |
| 04/18/2013 | | 10181 | Affidavit/Declaration of Service *Re: Notice: Filing of Transfer of Claim* (related document(s)9850, 9851, 9852, 9853, 9854, 9855, 9856, 9857, 9858, 9859, 9860) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/18/2013) |
| 04/18/2013 | | 10182 | Affidavit/Declaration of Service *Re: Notice: Filing of Transfer of Claim* (related document(s)9877, 9878, 9879, 9880, 9881, 9882, 9883, 9884, 9885, 9886, 9887, 9888, 9889, 9890, 9891) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/18/2013) |
| 04/18/2013 | | 10183 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Objection *[UNDER SEAL] to Debtors Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(a) Preliminarily Approve the Settlement Agreement Regarding Long Term Disability Plans and Claims, (b) Conditionally Certify a Class for Settlement Purposes Only, (c) Approve the Notice Procedures, and (d) Schedule a Fairness Hearing; and (II)(a) Finally Approve the Settlement Agreement, (b) Finally Certify a Class, (c) Authorize the Debtors to Terminate the LTD Plans, and (d) Grant Related Relief* (related document(s)9304, 9370, 9427, 10049) Filed by Marilyn Day (Zahralddin−Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/18/2013) |
| 04/18/2013 | | 10184 | Objection *[REDACTED] to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)10049) Filed by Paul Douglas Wolfe (Zahralddin−Aravena, Rafael) (Entered: 04/18/2013) |
| 04/18/2013 | | 10185 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Objection *[UNDER SEAL] to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)10049) Filed by Paul Douglas Wolfe (Zahralddin−Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/18/2013) |
| 04/18/2013 | | 10186 | Amended Notice of Hearing *of Motion of John J. Rossi, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance Allowance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment* (related document(s)10170) Filed by John J. Rossi. Hearing scheduled for 6/25/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. Objections due by 6/3/2013. (Zahralddin−Aravena, Rafael) (Entered: 04/18/2013) |
| 04/19/2013 | | 10187 | Receipt of filing fee for Notice of Appeal (Ap)(09−10138−KG) [appeal,ntcapl] ( 298.00). Receipt Number 6519932, amount $ 298.00. (U.S. Treasury) (Entered: 04/19/2013) |
| 04/19/2013 | | 10188 | |

| | | | |
|---|---|---|---|
| | | | Joinder *in Response to Wayne J. Schmidt* (related document(s)10049, 10146) Filed by Paul Douglas Wolfe. (Zahralddin−Aravena, Rafael) (Entered: 04/19/2013) |
| 04/19/2013 | | 10189 | Joinder *[REDACTED] in Response to Wayne J. Schmidt Objection* (related document(s)10049, 10146) Filed by John J. Rossi. (Zahralddin−Aravena, Rafael) (Entered: 04/19/2013) |
| 04/19/2013 | | 10190 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Joinder *[UNDER SEAL] in Response to Wayne J. Schmidt Objection* (related document(s)10049, 10146) Filed by John J. Rossi. (Zahralddin−Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/19/2013) |
| 04/19/2013 | | 10191 | (WITHDRAWN ON 4/29/13 − SEE DOCKET NO. 10381) − Objection *[REDACTED] to the Motion of the Official Committee of Long Term Disability Participants For Approval Of Distribution And Related Relief; and Response to Wayne J. Schmidt Objection* (related document(s)10049, 10146, 10147) Filed by Miriam L. Stewart (Zahralddin−Aravena, Rafael) Modified on 4/30/2013 (SJS). (Entered: 04/19/2013) |
| 04/19/2013 | | 10192 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: TOOKE, RICHARD To Solus Recovery Fund II Master LP. Filed by (Zinman, Jonathan) (Entered: 04/19/2013) |
| 04/19/2013 | | 10193 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Objection *[UNDER SEAL] to the Motion of the Official Committee of Long Term Disability Participants For Approval Of Distribution And Related Relief; and Response to Wayne J. Schmidt Objection* (related document(s)10049, 10146, 10147) Filed by Miriam L. Stewart (Zahralddin−Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/19/2013) |
| 04/19/2013 | | 10194 | (WITHDRAWN ON 4/29/13 − SEE DOCKET NO. 10381) − Objection *[REDACTED] to the Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)10049) Filed by George I Hovater, Jr. (Zahralddin−Aravena, Rafael) Modified on 4/30/2013 (SJS). (Entered: 04/19/2013) |
| 04/19/2013 | | 10195 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Objection *[UNDER SEAL] to the Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)10049) Filed by George I Hovater, Jr. (Zahralddin−Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/19/2013) |
| 04/19/2013 | | 10196 | Joinder *[REDACTED] in Response to Wayne J. Schmidt Objection* (related document(s)10146, 10147) Filed by George I Hovater, Jr.. (Zahralddin−Aravena, Rafael) (Entered: 04/19/2013) |
| 04/19/2013 | | 10197 | WITHDRAWN 04/19/13 (SEE DOCKET #10206) Joinder *[UNDER SEAL] in Response to Wayne J. Schmidt Objection* (related document(s)10146, 10147) Filed by George I Hovater, Jr.. (Zahralddin−Aravena, Rafael) Modified on 4/23/2013 (SB). (Entered: 04/19/2013) |
| 04/19/2013 | | 10198 | |

| | | | |
|---|---|---|---|
| | | | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long−Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)8067, 9304, 9427) Filed by Jerry L. Wadlow (TMB) (Entered: 04/19/2013) |
| 04/19/2013 | | 10199 | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long−Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)8067, 9304, 9427) Filed by Jerry L. Wadlow (TMB) (Entered: 04/19/2013) |
| 04/19/2013 | | 10200 | (WITHDRAWN ON 4/29/13 − SEE DOCKET NO. 10381) − Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long−Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)8067, 9304, 9427) Filed by Jerry L. Wadlow (TMB) Modified on 4/30/2013 (SJS). (Entered: 04/19/2013) |
| 04/19/2013 | | 10201 | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long−Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)9304, 9427) Filed by Daniel D. David (TMB) (Entered: 04/19/2013) |
| 04/19/2013 | | 10202 | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long−Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)8067, 9304, 9427) Filed by Daniel D. David (TMB) (Entered: 04/19/2013) |

| | | | |
|---|---|---|---|
| 04/19/2013 | | <u>10203</u> | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long–Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)<u>8067, 9304, 9427</u>) Filed by Daniel D. David (TMB) (Entered: 04/19/2013) |
| 04/19/2013 | | <u>10204</u> | Objection *to Debtors' Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long–Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)<u>8067, 9304, 9427</u>) Filed by Daniel D. David (TMB) (Entered: 04/19/2013) |
| 04/19/2013 | | <u>10205</u> | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Objection *[REDACTED] to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)<u>10049</u>) Filed by Gary W. Garrett (Kinsella, Shelley) Modified on 4/30/2013 (SJS). (Entered: 04/19/2013) |
| 04/19/2013 | | <u>10206</u> | Notice of Withdrawal of *Duplicate Filings* (related document(s)<u>10126, 10129, 10142, 10147, 10160, 10164, 10169, 10183, 10185, 10190, 10193, 10195, 10197</u>) Filed by Official Committee of Long–Term Disability Participants. (Kinsella, Shelley) (Entered: 04/19/2013) |
| 04/19/2013 | | <u>10207</u> | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Objection *[REDACTED] to Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rule 9019 and 7023 to (I)(a) Preliminarily Approve the Settlement Agreement Regarding Long Term Disability Plans and Claims, (b) Conditionally Certify a Class for Settlement Purposes Only, (c) Approve the Notice Procedures, and (d) Schedule a Fairness Hearing; and (II)(a) Finally Approve the Settlement Agreement, (b) Finally Certify a Class, (c) Authorize the Debtors to Terminate the LTD Plans, and (d) Grant Related Relief* (related document(s)<u>8067, 9304, 9403, 9427</u>) Filed by Emily D. Cullen (Kinsella, Shelley) Modified on 4/30/2013 (SJS). (Entered: 04/19/2013) |
| 04/19/2013 | | <u>10208</u> | Objection *[REDACTED] to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)<u>8067, 9304, 9427, 10049</u>) Filed by Vernon Long (Kinsella, Shelley) (Entered: 04/19/2013) |
| 04/19/2013 | | <u>10209</u> | Objection *[REDACTED] to Debtors Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (1)(a) Preliminarily Approve the Settlement Agreement Regarding Long Term Disability Plans and Claims,* |

| | | | |
|---|---|---|---|
| | | | *(b) Conditionally Certify a Class for Settlement Purposes Only, (c) Approve the Notice Procedures, and (d) Schedule a Fairness Hearing; and (II)(a) Finally Approve the Settlement Agreement, (b) Finally Certify a Class, (c) Authorize the Debtors to Terminate the LTD Plans, and (d) Grant Related Relief* (related document(s)<u>9304</u>, <u>9370</u>, <u>9427</u>, <u>10049</u>) Filed by Kevin Leonard (Kinsella, Shelley) (Entered: 04/19/2013) |
| 04/19/2013 | | <u>10210</u> | Debtors Notice Of Filing Of Proposed Litigation Timetable And Discovery Plan (related document(s)<u>10145</u>) Filed by Nortel Networks Inc., et al.. (Attachments: #<u>1</u> Exhibit A (Litigation Timetable) #<u>2</u> Exhibit B (Discovery Plan)) (Cordo, Ann) Modified on 4/23/2013 (SB). (Entered: 04/19/2013) |
| 04/22/2013 | | <u>10211</u> | Clerk's Notice Regarding Filing of Appeal BAP #: BAP−13−37. (related document(s)<u>10166</u>) (SJS) (Entered: 04/22/2013) |
| 04/22/2013 | | 10212 | The transcriber has requested a standing order for all hearings in this case for the period 4/22/2013 to 5/6/2013. To obtain a copy of a transcript contact the transcriber, Diaz Data, Telephone number (717)233−6664. (BJM) (Entered: 04/22/2013) |
| 04/22/2013 | | <u>10213</u> | Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/24/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 04/22/2013) |
| 04/22/2013 | | 10214 | The transcriber has requested a standing order for all hearings in this case for the period 4/22/2013 to . To obtain a copy of a transcript contact the transcriber, Diaz Data, Telephone number (717)233−6664. (BJM) (Entered: 04/22/2013) |
| 04/22/2013 | | <u>10215</u> | Notice of Name Change of Professional Filed by Polsinelli PC. (Ward, Christopher) (Entered: 04/22/2013) |
| 04/22/2013 | | <u>10216</u> | Motion to Appear pro hac vice *for Dan C. Kozusko, Esquire*. Receipt Number 3111274604, Filed by Trustee of Nortel Networks UK Pension Plan and the Board of the Pension Protection Fund. (Alberto, Justin) (Entered: 04/22/2013) |
| 04/22/2013 | | <u>10217</u> | (WITHDRAWN ON 4/29/13 − SEE DOCKET NO. 10381) − Objection *[REDACTED] to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)<u>10049</u>) Filed by Emily D. Cullen (Sutty, Eric) Modified on 4/30/2013 (SJS). (Entered: 04/22/2013) |
| 04/22/2013 | | <u>10218</u> | (WITHDRAWN ON 4/29/13 − SEE DOCKET NO. 10381) − Objection *[REDACTED] to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)<u>10049</u>) Filed by Cynthia B. Richardson (Zahralddin−Aravena, Rafael) Modified on 4/30/2013 (SJS). (Entered: 04/22/2013) |
| 04/22/2013 | | <u>10219</u> | Certificate of No Objection *Regarding Forty−Ninth Monthly Application of Ashurst LLP, European Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services* |

| | | | |
|---|---|---|---|
| | | | *Rendered for the period February 1, 2013 to February 28, 2013 (No Order Required)* (related document(s)9873) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 04/22/2013) |
| 04/22/2013 | | 10238 | Objection *to Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long–Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)8067, 9304, 9370, 9427, 10049) Filed by Kevin Leonard (TMB) (Entered: 04/23/2013) |
| 04/23/2013 | | 10220 | Notice of Appearance Filed by Canadian Creditors Committee. (Melnik, Selinda) (Entered: 04/23/2013) |
| 04/23/2013 | | 10221 | Notice of Withdrawal *of Counsel (Juliet Drake)* Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10222 | Motion to Appear pro hac vice *of Timothy E. Hoeffner*. Receipt Number DEX018923, Filed by Canadian Creditors Committee. (Attachments: # 1 Certificate of Service) (Melnik, Selinda) Modified on 4/24/2013 (SB). (Entered: 04/23/2013) |
| 04/23/2013 | | 10223 | Motion to Appear pro hac vice *of Richard F. Hans*. Receipt Number DEX018923, Filed by Canadian Creditors Committee. (Attachments: # 1 Certificate of Service) (Melnik, Selinda) Modified on 4/24/2013 (SB). (Entered: 04/23/2013) |
| 04/23/2013 | | 10224 | Response *and Limited Objection to U.S. Debtors' Proposed Litigation Timetable and Discovery Plan* Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited (related document(s)10145, 10210). (Luton Chapman, Jaime) (Entered: 04/23/2013) |
| 04/23/2013 | | 10225 | Notice of Filing of Litigation Timetable and Discovery Plan of The Monitor and the Canadian Debtors and Blacklines Filed by Ernst &Young Inc., As Monitor &foreign Representative of the Canadian Nortel Group. (Attachments: # 1 Exhibit A # 2 Exhibit B) (Caloway, Mary) Modified on 4/24/2013 (SB). (Entered: 04/23/2013) |
| 04/23/2013 | | 10226 | Submission of the Canadian Creditors Committee Regarding Proposed Discovery Plan Filed by Canadian Creditors Committee (related document(s)10145). (Attachments: # 1 Exhibit A) (Melnik, Selinda) Modified on 4/24/2013 (SB). (Entered: 04/23/2013) |
| 04/23/2013 | | 10227 | Submission of the Trustee of Nortel Networks UK Pension Plan and the Board of the Pension Protection Fund in Response to the Debtors Proposed Discovery Plan and Litigation Timetable Filed by Trustee of Nortel Networks UK Pension Plan and the Board of the Pension Protection Fund. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Certificate of Service) (Alberto, Justin) Modified on 4/24/2013 (SB). (Entered: 04/23/2013) |

| | | | |
|---|---|---|---|
| 04/23/2013 | | 10228 | Notice of Filing of Courtesy Copies Pursuant to Section 12(d) of the Cross–Border Insolvency Protocol of Documents Filed in the Canadian Proceedings by the Joint Administrators Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Attachments: # 1 Document – Part 1 # 2 Document Part 2) (Luton Chapman, Jaime) Modified on 4/24/2013 (SB). (Entered: 04/23/2013) |
| 04/23/2013 | | 10229 | Affidavit/Declaration of Service *Re: Notice: Filing of Transfer of Claim* (related document(s)9917, 9918, 9919, 9920, 9921, 9922, 9923, 9924, 9927, 9928, 9941, 9942, 9943, 9944, 9967, 9968, 9969, 9970, 9971, 9972, 9973, 9974) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10230 | Affidavit/Declaration of Service *Re: Notice: Filing of Transfer of Claim* (related document(s)9898, 9899, 9900, 9901, 9902, 9903, 9904, 9905, 9906, 9907, 9908, 9909, 9910, 9911, 9912, 9913, 9914, 9915) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10231 | Affidavit/Declaration of Service *Re: Notice: Filing of Transfer of Claim* (related document(s)9828, 9829, 9830, 9831, 9832, 9833, 9834, 9835, 9836, 9837, 9838, 9839) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10232 | Certificate of Service *to Docket Nos. 10220 and 10226* (related document(s)10220, 10226) Filed by Canadian Creditors Committee. (Melnik, Selinda) (Entered: 04/23/2013) |
| 04/23/2013 | | 10233 | Declaration in Support *of Debtors' Proposed Litigation Timetable and Discovery Plan* (related document(s)10145, 10210) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10234 | Amended Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/24/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Attachments: # 1 Certificate of Service) (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10235 | Order Granting Motion for Admission pro hac vice of Dan C. Kozusko (Related Doc # 10216). Signed on 4/23/2013. (SJS) (Entered: 04/23/2013) |
| 04/23/2013 | | 10236 | Objection *to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief.* (related document(s)8067, 9304, 9427, 10049) Filed by Daniel D. David (TMB) (Entered: 04/23/2013) |
| 04/23/2013 | | 10237 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Objection *to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief.* (related document(s)8067, 9304, 9427, 10049) Filed by Jerry L. Wadlow (TMB) Modified on 4/30/2013 (SJS). (Entered: 04/23/2013) |
| 04/23/2013 | | 10239 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Limited Objection *to the Motion of the Official Committee of Long Term Disability Participants For Approval Of Distribution* |

| | | | |
|---|---|---|---|
| | | | *And Related Relief (REDACTED)* (related document(s)10049) Filed by Rahul Kumar (Attachments: #_1 Proposed Form of Order Granting Limited Objection #_2 Exhibit 1 #_3 Exhibit 2 #_4 Exhibit 3 #_5 Exhibit 4 #_6 Exhibit 5 #_7 Exhibit 6 #_8 Exhibit 7 #_9 Exhibit 8 #_10 Exhibit 9 #_11 Exhibit 10) (Sutty, Eric) Modified on 4/24/2013 (SB). Modified on 4/30/2013 (SJS). (Entered: 04/23/2013) |
| 04/23/2013 | | 10240 | Motion to Appear pro hac vice *of Marla Decker of Cleary Gottlieb Steen &Hamilton LLP*. Receipt Number 1275606, Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10241 | Motion to Appear pro hac vice *of Emily Weiss of Cleary Gottlieb Steen &Hamilton LLP*. Receipt Number 1275606, Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10242 | Notice of Withdrawal of Appearance Filed by The Fourth Estate Directors and Fourth Estate Subsidiaries. (Jameson, Bruce) (Entered: 04/23/2013) |
| 04/23/2013 | | 10243 | Affidavit/Declaration of Service *Regarding Notice of Appeal BAP−13−37; Motion for Leave to Appeal from Order Approving Allocation Protocol* (related document(s)10166, 10167) Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Luton Chapman, Jaime) (Entered: 04/23/2013) |
| 04/23/2013 | | 10244 | Motion for Request for Certification of Direct Appeal to Circuit Court *Joint Request for Certification of the Joint Administrators Notice of Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2)* Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Notice #_2 Exhibit A (Proposed Form of Order)) (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10245 | Joint Motion for Entry of an Order Under 11 U.S.C. §§ 102(1) and 105, Fed. R. Bankr. P. 9006 and Bankr. D. Del. L.R. 9006−1(e) Shortening Notice Relating to the Joint Request for Certification of the Joint Administrators Notice of Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2) (related document(s)10244) Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/24/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. Objections due by 4/24/2013. (Attachments: #_1 Exhibit A (Proposed Form of Order)) (Cordo, Ann) Modified on 4/25/2013 (SB). (Entered: 04/23/2013) |
| 04/23/2013 | | 10246 | Joint Motion for an Order Retaining Jurisdiction Pending Appeal Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Notice #_2 Exhibit A (Proposed Form of Order)) (Cordo, Ann) Modified on 4/25/2013 (SB). (Entered: 04/23/2013) |
| 04/23/2013 | | 10247 | Joint Motion for Entry of an Order Under 11 U.S.C. §§ 102(1) and 105, Fed. R. Bankr. P. 9006 and Bankr. D. Del. L.R. 9006−1(e) Shortening Notice Relating to the Joint Motion for an Order Retaining Jurisdiction Pending Appeal (related document(s)10246) Filed by Nortel Networks Inc., et al.. (Attachments: #_1 Exhibit A (Proposed Form of Order)) (Cordo, Ann) Modified on 4/25/2013 (SB). (Entered: 04/23/2013) |

| | | | |
|---|---|---|---|
| 04/23/2013 | | 10248 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Objection *to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)10049) Filed by Najam Dean (Stemerman, Jonathan) Modified on 4/30/2013 (SJS). (Entered: 04/23/2013) |
| 04/23/2013 | | 10249 | Amended Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10250 | Notice of Filing of Compendium of Canadian Submissions Filed by ERNST &YOUNG. (Attachments: # 1 Exhibit A–1 # 2 Exhibit A–2 # 3 Exhibit A–3 # 4 Exhibit A–4) (Murphy, Kathleen) Modified on 4/24/2013 (SB). (Entered: 04/23/2013) |
| 04/23/2013 | | 10251 | Amended Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. (Cordo, Ann) Additional attachment(s) added on 4/26/2013 (SB). (Entered: 04/23/2013) |
| 04/23/2013 | | 10252 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Objection (REDACTED)*to Motion of The Official Committee Of Long Term Disability Participants For Approval of Disability And Relief* (related document(s)10049) Filed by Marilyn Green (Stemerman, Jonathan) Modified on 4/24/2013 (SB). Modified on 4/30/2013 (SJS). (Entered: 04/23/2013) |
| 04/23/2013 | | 10253 | Notice of Service *Re: Notice of Second Amended Agenda of Matters Scheduled for Hearing on April 24, 2013 at 10:00 a.m. (ET) and Notice of Third Amended Agenda of Matters Scheduled for Hearing on April 24, 2013 at 10:00 a.m. (ET)* (related document(s)10249, 10251) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Cordo, Ann) (Entered: 04/23/2013) |
| 04/23/2013 | | 10254 | Supplement to Distribution Motion (related document(s)10049) Filed by Official Committee of Long–Term Disability Participants. Hearing scheduled for 4/30/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. Objections due by 4/24/2013. (Attachments: # 1 Exhibit A) (Zahralddin–Aravena, Rafael) Modified on 4/25/2013 (SB). (Entered: 04/23/2013) |
| 04/24/2013 | | 10255 | Notice of Service *Re: Notice of Second Amended Agenda of Matters Scheduled for Hearing on April 24, 2013 at 10:00 a.m. (ET)* (related document(s)10251, 10253) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/24/2013) |
| 04/24/2013 | | 10256 | Order Granting the Joint Motion for Entry of an Order Shortening Notice Relating to the Joint Request for Certification of the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit (related document(s)10245) Order Signed on 4/24/2013. (SB) (Entered: 04/24/2013) |
| 04/24/2013 | | 10257 | Motion to Appear pro hac vice *of Darryl G. Stein of Cleary Gottlieb Steen &Hamilton LLP*. Receipt Number 1275853, Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/24/2013) |

| 04/24/2013 | | 10258 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Amended Objection (Redacted) to Motion of The Official Committee of Long Term Disability Participants For Approval Of Distribution And Related Relief (related document(s)10049, 10184) Filed by Paul Douglas Wolfe (Sutty, Eric) Modified on 4/24/2013 (NAL). Modified on 4/30/2013 (SJS). (Entered: 04/24/2013) |
|------------|--|-------|---------------------------------------------------------------------------------------------|
| 04/24/2013 | | 10259 | Affidavit *of Service Re: LTD Retirement Election Form and Cobra Participants Election Form (Portions Filed Under Seal)* Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/24/2013) |
| 04/24/2013 | | 10260 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Objection *to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief [REDACTED]* (related document(s)10049) Filed by John J. Rossi (Zahralddin–Aravena, Rafael) Modified on 4/30/2013 (SJS). (Entered: 04/24/2013) |
| 04/24/2013 | | 10261 | **Minutes of Hearing held on: 04/24/2013**<br>**Subject:** SCHEDULING AND DISCOVERY ISSUES (with Canada).<br>(vCal Hearing ID (167129)). (related document(s) 10249) (SS) Additional attachment(s) added on 4/24/2013 (SS). Additional attachment(s) added on 4/29/2013 (SS). (Entered: 04/24/2013) |
| 04/24/2013 | | 10262 | Notice of Withdrawal of *Objections of John J. Rossi to the Settlement Agreement Regarding Long Term Disability Plans* (related document(s)9371, 10162) Filed by John J. Rossi. (Zahralddin–Aravena, Rafael) (Entered: 04/24/2013) |
| 04/24/2013 | | 10263 | Order Granting Motion for Admission pro hac vice of Darryl Stein Esq (Related Doc # 10257) Order Signed on 4/24/2013. (SB) (Entered: 04/24/2013) |
| 04/24/2013 | | 10264 | Order Granting the Joint Motion for Entry of an Order Shortening Notice Relating to the Joint Motion for an Order Retaining Jurisdiction Pending Appeal (related document(s)10245) Order Signed on 4/24/2013. (SB) (Entered: 04/24/2013) |
| 04/24/2013 | | 10265 | Certificate of No Objection *Re: Monthly Application for Compensation (Twenty–Third) of Torys LLP, as Special Canadian Counsel to Debtors and Debtors–In–Possession for Allowance of Interim Compensation and for Interim Reimbursement of all Actual and Necessary Expenses Incurred for the period February 1, 2013 to February 28, 2013* (related document(s)9931) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/24/2013) |
| 04/24/2013 | | 10266 | (WITHDRAWN ON 4/29/13 – SEE DOCKET NO. 10381) – Response (REDACTED) *Regarding Motion of The Official Committee of Long Term Disability Participants For Approval Of Distribution And Related Relief* (related document(s)10049) Filed by Brent Beasley (Sutty, Eric) Modified on 4/25/2013 (SB). Modified on 4/30/2013 (SJS). (Entered: 04/24/2013) |
| 04/24/2013 | | 10267 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 1 Transferor: Russell L. McCallum To Hain Capital Holdings, LLC. |

| | | | |
|---|---|---|---|
| | | | Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/24/2013) |
| 04/24/2013 | | 10268 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 1 Transferor: Debra L. Baker To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/24/2013) |
| 04/24/2013 | | 10269 | Response *In Support of the Long−Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Adella Venneman (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10270 | Response *In Support of the Long−Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Thelma Watson (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10271 | Response *[REDACTED] in Support of the Long Term Disability Settlement Agreement* (related document(s)9304) Filed by Crickett Grissom (Zahralddin−Aravena, Rafael) (Entered: 04/24/2013) |
| 04/24/2013 | | 10272 | Response *In Support of the Long−Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Tim Steele (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10273 | Response *In Support of the Long−Term Diability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Peter Lawrence (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10274 | Response *[REDACTED] in Support of the Long Term Disability Settlement Agreement* (related document(s)9304) Filed by Kenneth Hazelrig (Zahralddin−Aravena, Rafael) (Entered: 04/24/2013) |
| 04/24/2013 | | 10275 | Response *[REDACTED] in Support of the Long Term Disability Settlement Agreement* (related document(s)9304) Filed by Janetta Hames (Zahralddin−Aravena, Rafael) (Entered: 04/24/2013) |
| 04/24/2013 | | 10276 | Response *[REDACTED] in Support of the Long Term Disability Settlement Agreement* (related document(s)9304) Filed by James Hunt (Zahralddin−Aravena, Rafael) (Entered: 04/24/2013) |
| 04/24/2013 | | 10277 | Response *[REDACTED] in Support of the Long Term Disability Settlement Agreement* (related document(s)9304) Filed by Cynthia Ann Schmidt (Zahralddin−Aravena, Rafael) (Entered: 04/24/2013) |
| 04/24/2013 | | 10278 | Certificate of No Objection *Re: Monthly Application for Compensation (Fiftieth) of Morris, Nichols, Arsht &Tunnell LLP for the period February 1, 2013 to February 28, 2013* (related document(s)9925) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/24/2013) |
| 04/24/2013 | | 10279 | Supplemental Response *[REDACTED] to Marilyn Day Objection* Filed by Marilyn Day (related document(s)10180). (Zahralddin−Aravena, Rafael) (Entered: 04/24/2013) |
| 04/24/2013 | | 10280 | |

| | | | |
|---|---|---|---|
| | | | WITHDRAWN 04/24/13 (SEE DOCKET # 10285) Response *[REDACTED] in Support of Long Term Disability Settlement Agreement* (related document(s)9304) Filed by Peter Lawrence (Zahralddin−Aravena, Rafael) Modified on 4/25/2013 (SB). (Entered: 04/24/2013) |
| 04/24/2013 | | 10281 | Response *[REDACTED] in Support of Long Term Disability Settlement Agreement* (related document(s)9304) Filed by Ralph MacIver (Zahralddin−Aravena, Rafael) (Entered: 04/24/2013) |
| 04/24/2013 | | 10282 | Response *In Support of the Long−Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Najam Dean (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10283 | Response *In Support of the Long−Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Scott Howard (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10284 | Response *In Support of the Long−Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Remajos Brown (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10285 | Notice of Withdrawal of *Duplicate Filing* (related document(s)10280) Filed by Official Committee of Long−Term Disability Participants. (Kinsella, Shelley) (Entered: 04/24/2013) |
| 04/24/2013 | | 10286 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Pamela Powell (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10287 | Response *In Support of Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Nancy Wilson (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10288 | Notice of Hearing (related document(s)10244, 10245, 10246, 10247, 10264, 10265) Filed by Nortel Networks Inc., et al.. Hearing scheduled for 5/1/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. Objections due by 4/29/2013. (Cordo, Ann) (Entered: 04/24/2013) |
| 04/24/2013 | | 10289 | Response *[REDACTED] in Support of Long Term Disability Settlement Agreement* (related document(s)9304) Filed by Vada Wilson (Zahralddin−Aravena, Rafael) (Entered: 04/24/2013) |
| 04/24/2013 | | 10290 | Response *[REDACTED] in Support of Long Term Disability Settlement Agreement* (related document(s)9304) Filed by Alan Heinbaugh (Zahralddin−Aravena, Rafael) (Entered: 04/24/2013) |
| 04/24/2013 | | 10291 | Response *to the Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief [REDACTED]* (related document(s)10049) Filed by Caroline Underwood (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10292 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by (Sutty, Eric) (Entered: 04/24/2013) |

| | | | |
|---|---|---|---|
| 04/24/2013 | | 10293 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Fred Lindow (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10294 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Jane Neumann (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10295 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Robert Dale Dover (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10296 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Brenda L. Rohrbaugh (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10297 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Olive Jane Stepp (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10298 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Scott Gennett (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10299 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Michael R. Thompson (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10300 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Charles Sandner (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10301 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Mark R. Janis (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10302 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Victoria Anstead (Sutty, Eric) (Entered: 04/24/2013) |
| 04/24/2013 | | 10304 | BNC Certificate of Mailing. (related document(s)10211) Notice Date 04/24/2013. (Admin.) (Entered: 04/25/2013) |
| 04/25/2013 | | 10303 | Joinder *in Response to Wayne J. Schmidt (REDACTED)* (related document(s)10147) Filed by Jerry Wadlow. (Sutty, Eric) Modified on 4/25/2013 (SB). (Entered: 04/25/2013) |
| 04/25/2013 | | 10305 | Response (REDACTED) *In Support of the Long Term Disability Settlement Agreement* (related document(s)9304) Filed by John Elliott (Sutty, Eric) Modified on 4/26/2013 (SB). (Entered: 04/25/2013) |
| 04/25/2013 | | 10306 | Response (REDACTED) *In Support of the Long Term Disability Settlement Agreement* (related document(s)9304) Filed by Sandra Aiken (Sutty, Eric) Modified on 4/26/2013 (SB). (Entered: 04/25/2013) |

| | | | |
|---|---|---|---|
| 04/25/2013 | | 10307 | Response (REDACTED) *In Support of the Long Term Disability Settlement Agreement* (related document(s)9304) Filed by Janette Head (Kinsella, Shelley) Modified on 4/26/2013 (SB). (Entered: 04/25/2013) |
| 04/25/2013 | | 10308 | Clerk's Notice Regarding the Filing of a Request for Certification of Direct Appeal. Responses due by 4/29/2013. (SB) Modified to Correct Response Deadline on 4/25/2013 (SB). (Entered: 04/25/2013) |
| 04/25/2013 | | 10309 | Affidavit/Declaration of Service *Re: Notice: Filing of Transfer of Claim* (related document(s)9975, 9976, 9977, 9978, 9979, 9980, 9981, 9982, 9983, 9984, 9985, 9986, 9987, 9988, 9989, 9990, 9991, 9992, 9993, 9994, 9995, 9996, 9997) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/25/2013) |
| 04/25/2013 | | 10310 | Affidavit/Declaration of Service *Re: Notice of Agenda of Matters Scheduled for Hearing on 4/24/2013 at 10:00 AM* (related document(s)10213) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/25/2013) |
| 04/25/2013 | | 10311 | Corrective Entry: Response Deadline on Notice Modified to Reflect Deadline Provided by Court in Order Shortening Time (related document(s)10308) (SB) (Entered: 04/25/2013) |
| 04/25/2013 | | 10312 | Affidavit/Declaration of Service *Re: Debtors' Notice Of Filing Of Proposed Litigation Timetable And Discovery Plan* (related document(s)10210) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/25/2013) |
| 04/25/2013 | | 10313 | Affidavit/Declaration of Service *Re: Statement in Support of Debtors' Proposed Litigation Timetable and Discovery Plan* (related document(s)10233) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/25/2013) |
| 04/25/2013 | | 10314 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Bruce Turner (Kinsella, Shelley) (Entered: 04/25/2013) |
| 04/25/2013 | | 10315 | Objection *to Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)10049) Filed by United States on behalf of Internal Revenue Service (Russell, W.) (Entered: 04/25/2013) |
| 04/25/2013 | | 10316 | Reply *in Further Support of the Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (A) Finally Approve the Settlement Agreement Regarding Long−Term Disability Plans and Claims, (B) Finally Certify a Class (C) Authorize the Debtors to Terminated the LTD Plans and (D) Grant Related Relief* (related document(s)9304, 9305, 9306, 9342, 9366, 9367, 9370, 9372, 9382, 9384, 9517, 9657, 9658, 9673, 10146, 10152, 10153, 10159, 10172, 10174, 10175, 10176, 10180, 10188, 10189, 10191, 10196, 10198, 10199, 10200, 10201, 10202, 10203, 10204, 10207, 10208, 10209, 10238, 10252, 10258, 10260, 10266, 10283, 10286, 10290, 10291, 10294, 10296, 10300, 10301) Filed by Nortel Networks Inc., et al. (Attachments: # 1 Exhibit A) (Cordo, Ann) Modified on 4/26/2013 (SB). (Entered: 04/25/2013) |

| | | | |
|---|---|---|---|
| 04/25/2013 | | 10317 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Chad P. Soriano (Zahralddin−Aravena, Rafael) (Entered: 04/25/2013) |
| 04/25/2013 | | 10318 | Declaration in Support *Declaration of John J. Ray III In Further Support of the Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief* (related document(s)9304) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 Part 1 # 15 Exhibit 14 Part 2 # 16 Exhibit 15 # 17 Exhibit 16 # 18 Exhibit 17 # 19 Exhibit 18 # 20 Exhibit 19 # 21 Exhibit 20 # 22 Exhibit 21 # 23 Exhibit 22 # 24 Exhibit 23 # 25 Exhibit 24 # 26 Exhibit 25 # 27 Exhibit 26 # 28 Exhibit 27 # 29 Exhibit 28 # 30 Exhibit 29) (Cordo, Ann) Modified on 4/26/2013 (SB). (Entered: 04/25/2013) |
| 04/25/2013 | | 10319 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by David A. Fox (Zahralddin−Aravena, Rafael) (Entered: 04/25/2013) |
| 04/25/2013 | | 10320 | Joinder *of the Official Committe of Unsecured Creditors of Nortel Networks Inc. et al. to the Debtors' Reply in Further Support of the Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (A) Finally Approve the Settlement Agreement Regarding Long−Term Disability Plans and Claims, (B) Finally Certify A Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief* (related document(s)9304, 10316) Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. (Samis, Christopher) (Entered: 04/25/2013) |
| 04/25/2013 | | 10321 | Notice of Service *Re: LTD Notices* (related document(s)10316, 10318) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Minott, Tamara) (Entered: 04/25/2013) |
| 04/25/2013 | | 10322 | Omnibus Reply *Of The Official Committee Of Long Term Disability Participants In Support Of The Joint Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)9304, 9305, 9306, 9342, 9366, 9367, 9370, 9372, 9382, 9384, 9402, 9403, 9406, 9427, 9443, 9517, 9657, 9658, 9659, 10152, 10153, 10172, 10174, 10175, 10176, 10180, 10198, 10199, 10200, 10201, 10202, 10203, 10204, 10207, 10209, 10266, 10269, 10270, 10271, 10272, 10273, 10274, 10275, 10276, 10277, 10281, 10282, 10283, 10284, 10286, 10287, 10289, 10290, 10291, 10292, 10293, 10294, 10295, 10296, 10297, 10298, 10299, 10300, 10301, 10302, 10305, 10306, 10307, 10314, 10319) Filed by Official Committee of Long−Term Disability Participants (Sutty, Eric) (Entered: 04/25/2013) |

| 04/25/2013 | | 10409 | Response *Supporting the Joint Motion* (related document(s)9304, 9427) Filed by Ralph MacIver (SJS) (Entered: 05/01/2013) |
|---|---|---|---|
| 04/26/2013 | | 10323 | Omnibus Reply *Of The Official Committee Of Long Term Disability Participants To Objections To The Motion For Approval Of Distribution And Related Relief* (related document(s)9304, 9366, 9370, 9372, 9387, 9657, 9658, 9659, 10049, 10124, 10127, 10141, 10168, 10172, 10174, 10184, 10191, 10194, 10202, 10205, 10208, 10217, 10218, 10236, 10237, 10239, 10248, 10252, 10258, 10260, 10266, 10279) Filed by Official Committee of Long−Term Disability Participants (Zahralddin−Aravena, Rafael) (Entered: 04/26/2013) |
| 04/26/2013 | | 10324 | Transcript regarding Hearing Held 04/24/2013 RE: Scheduling and Discovery Issues. Remote electronic access to the transcript is restricted until 7/25/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Diaz Data Services, Telephone number 717−233−6664.] Notice of Intent to Request Redaction Deadline Due By 5/3/2013. Redaction Request Due By 5/17/2013. Redacted Transcript Submission Due By 5/28/2013. Transcript access will be restricted through 7/25/2013. (related document(s)10249) (GM) (Entered: 04/26/2013) |
| 04/26/2013 | | 10325 | Motion to Approve *NNI's Entry into a Sublease Term Sheet and Sublease Agreement at Facility in Raleigh, North Carolina* Filed by Nortel Networks Inc., et al.. Hearing scheduled for 5/7/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. Objections due by 5/3/2013. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B) (Minott, Tamara) (Entered: 04/26/2013) |
| 04/26/2013 | | 10326 | Motion to Shorten *Notice Relating to Motion to Approve NNI's Entry into a Sublease Term Sheet and Sublease Agreement at Facility in Raleigh, North Carolina* (related document(s)10325) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Exhibit A # 2 Exhibit B) (Minott, Tamara) (Entered: 04/26/2013) |
| 04/26/2013 | | 10327 | Response *In Support of the Long Term Disability Settlement Agreement [REDACTED]* (related document(s)9304) Filed by Norma Dekel (Kinsella, Shelley) (Entered: 04/26/2013) |
| 04/26/2013 | | 10328 | Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/30/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 04/26/2013) |
| 04/26/2013 | | 10329 | Notice of Service (related document(s)10325, 10326) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Minott, Tamara) (Entered: 04/26/2013) |
| 04/26/2013 | | 10330 | Affidavit/Declaration of Service *Re: Notice: Transfer of Claim* (related document(s)9851, 9889, 9917, 10004, 10005, 10006, 10007, 10008, 10009, 10010, 10018, 10019, 10020, 10021, 10022, 10023, 10024, 10025, 10026, 10027, 10028, 10029, 10030) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/26/2013) |

| | | | |
|---|---|---|---|
| 04/26/2013 | | <u>10331</u> | Affidavit/Declaration of Service *Re: Notice: Transfer of Claim* (related document(s)<u>10032, 10033, 10034, 10035, 10036, 10037, 10038, 10040, 10058, 10065, 10066, 10067, 10068, 10069, 10070, 10071, 10072, 10073, 10074</u>) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/26/2013) |
| 04/26/2013 | | <u>10332</u> | Response (REDACTED)*In Support of the Long–Term Disability Settlement Agreement* (related document(s)<u>9304</u>) Filed by Rahul Kumar (Sutty, Eric) Modified on 4/29/2013 (SB). (Entered: 04/26/2013) |
| 04/26/2013 | | <u>10333</u> | Objection To Transfer of Claim To *Solus Recovery Fund Offshore Master LP* in the amount of *$46,732.20* (related document(s)<u>9928</u>). Filed by Teri Bowbeer. (related document(s)<u>9928</u>) (SB) (Entered: 04/26/2013) |
| 04/26/2013 | | <u>10334</u> | Response *[REDACTED] to the Motion to Approve Compromise under Rule 9019 363 Joint Motion Pursuant To Sections 363 And 105 Of The Bankruptcy Code, And Bankruptcy Rules 9019 And 7023 To (I)(A) Preliminarily Approve The Settlement Agreement Regarding Long–Term Disability Plans And Claims, (B) Conditionally Certify A Class For Settlement Purposes Only, (C) Approve The Notice Procedures, And (D) Schedule A Fairness Hearing; And (II)(A) Finally Approve The Settlement Agreement, (B) Finally Certify A Class, (C) Authorize The Debtors To Terminate The Ltd Plans, And (D) Grant Related Relief* (related document(s)<u>9304</u>) Filed by Michael P. Alms (Sutty, Eric) (Entered: 04/26/2013) |
| 04/26/2013 | | <u>10335</u> | Response *[REDACTED] in Support of the Long Term Disability Settlement Agreement and Motion of The Official Committee of Long Term Disability Participants For Approval Of Distribution* (related document(s)<u>9304, 10049, 10266</u>) Filed by Brent Beasley (Sutty, Eric) (Entered: 04/26/2013) |
| 04/26/2013 | | <u>10336</u> | Response *[REDACTED] in Support of the Long Term Disability Settlement Agreement and Motion of The Official Committee of Long Term Disability Participants For Approval Of Distribution* (related document(s)<u>9304, 10049</u>) Filed by Lynette K. Seymour (Sutty, Eric) (Entered: 04/26/2013) |
| 04/26/2013 | | <u>10337</u> | Affidavit/Declaration of Service *Re: Notice of Hearing* (related document(s)<u>10288</u>) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/26/2013) |
| 04/26/2013 | | <u>10338</u> | Objection *[REDACTED] to the Motion of The Official Committee of Long Term Disability Participants For Approval Of Distribution And Related Relief* (related document(s)<u>10049</u>) Filed by Deborah Jones (Sutty, Eric) (Entered: 04/26/2013) |
| 04/26/2013 | | <u>10339</u> | Limited Response *to the Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)<u>10049</u>) Filed by Nortel Networks Inc., et al. (Abbott, Derek) (Entered: 04/26/2013) |
| 04/26/2013 | | <u>10340</u> | Order Shortening Notice Relating to Debtors' Motion for an Order Approving NNI's Entry Into a Sublease Term Sheet and Sublease Agreement at Facility in Raleigh, North Carolina (related document(s)<u>10326</u>) Order Signed on 4/26/2013. (SB) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/26/2013) |
| 04/26/2013 | | 10341 | Response (REDACTED) *in Support of the Long Term Disability Settlement Agreement* (related document(s)9304, 10049) Filed by Leona Purdum (Zahralddin−Aravena, Rafael) Modified on 4/29/2013 (SB). (Entered: 04/26/2013) |
| 04/26/2013 | | 10342 | Affidavit/Declaration of Service (Filed Under Seal) (related document(s)10254, 10322, 10323) Filed by Official Committee of Long−Term Disability Participants. (Attachments: # 1 Certificate of Service) (Kinsella, Shelley) Modified on 4/29/2013 (SB). (Entered: 04/26/2013) |
| 04/26/2013 | | 10343 | Affidavit/Declaration of Service *of Karen M. Wagner, Kurtzman Carson Consultants LLC regarding the Town Hall Meeting Notice to the Long Term Disability Parties (portions of which are filed under seal)* Filed by Official Committee of Retirees (related document(s)10322, 10323) Filed by Official Committee of Long−Term Disability Participants. (Attachments: # 1 Certificate of Service) (Kinsella, Shelley) (Entered: 04/26/2013) |
| 04/26/2013 | | 10344 | Notice of Service *Re: Debtors' Limited Response to the Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)10339) Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/26/2013) |
| 04/26/2013 | | 10345 | Affidavit/Declaration of Service *Re: Notice of Defective Transfer* (related document(s)10080, 10085, 10086, 10087, 10088) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/26/2013) |
| 04/26/2013 | | 10346 | Affidavit/Declaration of Service *Re: Notice of Transfer of Claim* (related document(s)10075, 10076, 10077, 10078, 10079, 10081, 10082, 10083, 10084, 10089, 10090, 10091, 10092, 10093, 10094) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/26/2013) |
| 04/26/2013 | | 10364 | Motion to Compel *Debtors to Disclose Critical Benefit Information Towards Discernment of Transition From LTD Plans to Retiree Plan. HEARING DATE TO BE DETERMINED* (related document(s)7685, 9304, 9938) Filed by Nortel US LTD Employees. The case judge is Kevin Gross. (Attachments: # 1 Exhibit A # 2 Proposed Form of Order) (SB) Modified on 4/29/2013 (SB). (Entered: 04/29/2013) |
| 04/26/2013 | | 10408 | Letter Appealing to Court for Justice and Continued Support (related document(s) 8720 , 9673 , 9304). Filed by Estelle Loggins . (SJS) Modified related docket numbers on 5/1/2013 (SJS). (Entered: 05/01/2013) |
| 04/27/2013 | | 10347 | Response (REDACTED)*In Support of the Long−Term Disability Settlement Agreement* (related document(s)9304) Filed by Roger Carlsen (Sutty, Eric) Modified on 4/29/2013 (SB). (Entered: 04/27/2013) |
| 04/27/2013 | | 10348 | BNC Certificate of Mailing. (related document(s)10308) Notice Date 04/27/2013. (Admin.) (Entered: 04/28/2013) |

| | | | |
|---|---|---|---|
| 04/28/2013 | | 10349 | BNC Certificate of Mailing. (related document(s)10324) Notice Date 04/28/2013. (Admin.) (Entered: 04/29/2013) |
| 04/29/2013 | | 10350 | Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 5/1/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 04/29/2013) |
| 04/29/2013 | | 10351 | Notice of Service *Re: Order Shortening Notice Relating to Debtors' Motion for an Order Approving NNI's Entry Into a Sublease Term Sheet and Sublease Agreement at Facility in Raleigh, North Carolina* (related document(s)10340) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Minott, Tamara) (Entered: 04/29/2013) |
| 04/29/2013 | | 10352 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Derek Kearley To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10353 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Theresa Wilke To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10354 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: William Jordan To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10355 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Kimberly Pegram To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10356 | Amended Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 4/30/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 04/29/2013) |
| 04/29/2013 | | 10357 | Affidavit/Declaration of Service *(Portions Filed Under Seal)* (related document(s)10316, 10318) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/29/2013) |
| 04/29/2013 | | 10358 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Gay Hollowell To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10359 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Russell Carroll To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10360 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Michael Carlson To Hain Capital Holdings, LLC. |

| | | | |
|---|---|---|---|
| | | | Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10361 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Jo Martin To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10362 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Robert Davis To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10363 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Jaya Das To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10365 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Douglas G. Clark To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10366 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Michael Alms To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |
| 04/29/2013 | | 10367 | Response – *Joinder in Part and Response to Joint Request for Certification of the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. Section 158(d)(2)* Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited (related document(s)10244). (Luton Chapman, Jaime) (Entered: 04/29/2013) |
| 04/29/2013 | | 10368 | Objection *to Joint Motion for an Order Retaining Jurisdiction Pending Appeal and Cross–Motion to Confirm Stay Pending Appeal – [Hearing Date: May 1, 2013 at 10:00 a.m. (ET)]* (related document(s)9946, 9947, 10246) Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited (Luton Chapman, Jaime) (Entered: 04/29/2013) |
| 04/29/2013 | | 10369 | Affidavit/Declaration of Service *Re: Notice of Agenda of Matters Scheduled for Hearing on April 30, 2013 at 10:00 a.m.* (related document(s)10328) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/29/2013) |
| 04/29/2013 | | 10370 | Affidavit/Declaration of Service *Re: Debtors' Limited Response to the Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* (related document(s)10339) Filed by Epiq Bankruptcy Solutions LLC. (Minott, Tamara) (Entered: 04/29/2013) |
| 04/29/2013 | | 10371 | Transfer/Assignment of Claim. Transfer Agreement 3001 (e) 2 Transferor: Douglas G. Clark To Hain Capital Holdings, LLC. Filed by Hain Capital Group, LLC. (Rapoport, Amanda) (Entered: 04/29/2013) |

| | | | |
|---|---|---|---|
| 04/29/2013 | | 10372 | Affidavit/Declaration of Service *Re: Notice of Defective Transfer of Claim* (related document(s)10192) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/29/2013) |
| 04/29/2013 | | 10373 | Affidavit/Declaration of Service *Re: Notice: Filing of Transfer of Claim* (related document(s)10095, 10096, 10097, 10098, 10099, 10100, 10101, 10102, 10103, 10104, 10105, 10106, 10107, 10108, 10109, 10110, 10115, 10118, 10119, 10120, 10121, 10122, 10123, 10125, 10128, 10130, 10131, 10132, 10148, 10149, 10267, 10268) Filed by Epiq Bankruptcy Solutions LLC. (Cordo, Ann) (Entered: 04/29/2013) |
| 04/29/2013 | | 10374 | Amended Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. Hearing scheduled for 5/1/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. (Minott, Tamara) (Entered: 04/29/2013) |
| 04/29/2013 | | 10375 | Response *to Nortel US LTD Employees Motion Compelling Debtors to Disclose Critical Benefits Information Towards Discernment of Transition from LTD Plans to Retiree Plans* (related document(s)10364) Filed by Nortel Networks Inc., et al. (Attachments: # 1 Exhibit A # 2 Exhibit B) (Cordo, Ann) (Entered: 04/29/2013) |
| 04/29/2013 | | 10376 | Declaration *of Michael Stutts* (related document(s)9304, 10049) Filed by Michael Stutts. (Zahralddin−Aravena, Rafael) (Entered: 04/29/2013) |
| 04/29/2013 | | 10377 | Application for Compensation *Fiftieth Monthly Application of Ashurst LLP, European Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for Reimbursement of Expenses for Services Rendered* for the period *March 1, 2013 to March 31, 2013* Filed by Ashurst LLP. Objections due by 5/20/2013. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C # 5 Exhibit D # 6 Exhibit E # 7 Certificate of Service) (Samis, Christopher) (Entered: 04/29/2013) |
| 04/29/2013 | | 10378 | Application for Compensation *Fiftieth Monthly Application of Richards, Layton &Finger, P.A. for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Co−Counsel to the Official Committee of Unsecured Creditors* for the period *March 1, 2013 to March 31, 2013* Filed by Richards, Layton &Finger, PA. Objections due by 5/20/2013. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B # 4 Certificate of Service) (Samis, Christopher) (Entered: 04/29/2013) |
| 04/29/2013 | | 10379 | Declaration *of Barbara Gallagher* (related document(s)9304, 10049) Filed by Barbara Gallagher. (Zahralddin−Aravena, Rafael) (Entered: 04/29/2013) |
| 04/29/2013 | | 10380 | Declaration *of Vincent L. Bodnar* (related document(s)9304, 10049) Filed by Vincent L. Bodnar. (Zahralddin−Aravena, Rafael) (Entered: 04/29/2013) |
| 04/29/2013 | | 10381 | Notice of Withdrawal of *−−Notice of Settlement and Withdrawal of Objections to the Long Term Disability Settlement Agreement, Distribution Motion and Supplement* (related document(s)9367, |

1123

| | | | |
|---|---|---|---|
| | | | 9370, 9371, 9372, 10124, 10127, 10141, 10152, 10153, 10162, 10168, 10172, 10174, 10175, 10176, 10180, 10191, 10194, 10200, 10201, 10202, 10203, 10204, 10205, 10207, 10209, 10217, 10218, 10236, 10237, 10238, 10239, 10248, 10252, 10258, 10260, 10262, 10266) Filed by Official Committee of Long–Term Disability Participants. (Sutty, Eric) (Entered: 04/29/2013) |
| 04/29/2013 | | 10382 | Declaration *of Richard Mizak* (related document(s)10049, 10254) Filed by Official Committee of Long–Term Disability Participants. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) (Sutty, Eric) (Entered: 04/29/2013) |
| 04/30/2013 | | 10383 | Amended Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. (Minott, Tamara) (Entered: 04/30/2013) |
| 04/30/2013 | | 10384 | Declaration *of Charles A. Henderson* (related document(s)10049, 10254) Filed by Charles A. Henderson. (Zahralddin–Aravena, Rafael) (Entered: 04/30/2013) |
| 04/30/2013 | | 10385 | Rule 2019 Statement *Verified Statement of DLA Piper LLP (US)* Filed by Canadian Creditors Committee. (Melnik, Selinda) (Entered: 04/30/2013) |
| 04/30/2013 | | 10386 | Motion to Appear pro hac vice *of Amera Z. Chowhan of Hughes Hubbard &Reed LLP*. Receipt Number 1279847, Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Harron, Edwin) (Entered: 04/30/2013) |
| 04/30/2013 | | 10387 | Motion to Appear pro hac vice *of Amina Hassan of Hughes Hubbard &Reed LLP*. Receipt Number 1279847, Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Harron, Edwin) (Entered: 04/30/2013) |
| 04/30/2013 | | 10388 | Motion to Appear pro hac vice *of Fara Tabatabai of Hughes Hubbard &Reed LLP*. Receipt Number 1279847, Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Harron, Edwin) (Entered: 04/30/2013) |
| 04/30/2013 | | 10389 | Certificate of Service *re: Docket No. 10385* (related document(s)10385) Filed by Canadian Creditors Committee. (Melnik, Selinda) (Entered: 04/30/2013) |
| 04/30/2013 | | 10390 | Certificate of No Objection *Re: Interim Application for Compensation (Fiftieth) Of Cleary Gottlieb Steen &Hamilton LLP, As Attorneys For Debtors And Debtors–In–Possession, For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses Incurred for the period February 1, 2013 to February 28, 2013* (related document(s)9932) Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/30/2013) |
| 04/30/2013 | | 10391 | Affidavit/Declaration of Mailing . Filed by Ernst &Young Inc., As Monitor &foreign Representative of the Canadian Nortel Group. (related document(s)10225) (Matthews, Gene) (Entered: 04/30/2013) |

| | | | |
|---|---|---|---|
| 04/30/2013 | | 10392 | Certificate of No Objection *Regarding Nineteenth Monthly Application of Elliott Greenleaf, Counsel to the Official Committee of Long Term Disability Participants, for Compensation and Reimbursement of Expenses for the period February 1, 2013 to February 28, 2013* (related document(s)9876) Filed by Official Committee of Long–Term Disability Participants. (Kinsella, Shelley) (Entered: 04/30/2013) |
| 04/30/2013 | | 10393 | Order Granting Motion for Admission pro hac vice of Amina Hassan (Related Doc #10387). Signed on 4/30/2013. (SJS) (Entered: 04/30/2013) |
| 04/30/2013 | | 10394 | Order Granting Motion for Admission pro hac vice of Fara Tabatabai (Related Doc #10388). Signed on 4/30/2013. (SJS) (Entered: 04/30/2013) |
| 04/30/2013 | | 10395 | Order Granting Motion for Admission pro hac vice of Amera Z. Chowhan (Related Doc #10386). Signed on 4/30/2013. (SJS) (Entered: 04/30/2013) |
| 04/30/2013 | | 10396 | **Minutes of Hearing held on: 04/30/2013** **Subject:** Long Term Disability AND LTD. (vCal Hearing ID (163124)). (related document(s) 10356) (SS) Additional attachment(s) added on 4/30/2013 (SS). (Entered: 04/30/2013) |
| 04/30/2013 | | 10397 | Application for Compensation *First Application of the Official Committee of Unsecured Creditors for Reimbursement of Expenses Incurred by a Committee Member* for the period *January 1, 2013 to January 31, 2013* Filed by Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.. Objections due by 5/20/2013. (Attachments: #1 Notice #2 Exhibit A #3 Certificate of Service) (Steele, Amanda) (Entered: 04/30/2013) |
| 04/30/2013 | | 10398 | Debtors Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) of the Bankruptcy Code Authorizing and Approving the Employment and Retention of The Mergis Group and Certain Employees Thereof Filed by Nortel Networks Inc., et al.. Hearing scheduled for 5/21/2013 at 10:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #3, Wilmington, Delaware. Objections due by 5/14/2013. (Attachments: #1 Notice #2 Exhibit A (Proposed Form of Order) #3 Exhibit B (Staffing Services Agreement)) (Cordo, Ann) Modified on 5/1/2013 (SB). (Entered: 04/30/2013) |
| 04/30/2013 | | 10399 | Joint Motion For Leave To File A Reply (A) In Further Support Of The Joint Motion For An Order Retaining Jurisdiction Pending Appeal And (B) In Response To The Joint Administrators Objection To Joint Motion For An Order Retaining Jurisdiction Pending Appeal And Cross–Motion To Confirm Stay Pending Appeal (related document(s)9946, 9947, 10246, 10368) Filed by Nortel Networks Inc., et al. (Attachments: #1 Exhibit A (Proposed Form of Order) #2 Exhibit B (Reply)) (Cordo, Ann) Modified on 5/1/2013 (SB). (Entered: 04/30/2013) |
| 04/30/2013 | | 10400 | Amended Notice of Agenda of Matters Scheduled for Hearing Filed by Nortel Networks Inc., et al.. (Cordo, Ann) (Entered: 04/30/2013) |

| | | | |
|---|---|---|---|
| 05/01/2013 | | 10401 | Request for Removal from Mailing List Filed by Phillips, Goldman &Spence, P.A.. (Spence, Stephen) (Entered: 05/01/2013) |
| 05/01/2013 | | 10402 | Order Authorizing Movants to File a Reply to Docket Item 10368 (related document(s)10246, 10368) Order Signed on 5/1/2013. (SB) (Entered: 05/01/2013) |
| 05/01/2013 | | 10403 | Reply *Memorandum of Law in Further Support of Joint Motion for an Order Retaining Jurisdiction Pending Appeal and in Response to the Joint Administrators' Objection to Joint Motion for an Order Retaining Jurisdiction Pending Appeal and Cross−Motion to Confirm Stay Pending Appeal* (related document(s)9946, 9947, 10246, 10368, 10402) Filed by Nortel Networks Inc., et al. (Cordo, Ann) (Entered: 05/01/2013) |
| 05/01/2013 | | 10404 | **Minutes of Hearing held on: 05/01/2013** **Subject:** Jurisdiction hearing. (vCal Hearing ID (164353)). (related document(s) 10400) (SS) Additional attachment(s) added on 5/1/2013 (SS). (Entered: 05/01/2013) |
| 05/01/2013 | | 10405 | **Minutes of Hearing held on: 05/01/2013** **Subject:** Long Term Disability (continued from 4/30/13) AND LTD. (vCal Hearing ID (167413)). (related document(s) 10356) (SS) Additional attachment(s) added on 5/1/2013 (SS). (Entered: 05/01/2013) |
| 05/01/2013 | | 10406 | Order (A)Approving the Settlement Agreement on a Final Basis (B)Certifying a Class for Settlement Purposes Only on a Final Basis (C)Authorizing the Debtors to Terminate the LTD Plans and (D)Granting Related Relief. Order Signed on 5/1/2013 (SB) (Entered: 05/01/2013) |
| 05/01/2013 | | 10407 | Order Certifying the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit (related document(s)10244) Signed on 5/1/2013. (SB) (Entered: 05/01/2013) |
| 05/01/2013 | | 10410 | Application for Compensation *Eighteenth Monthly Application of Togut, Segal &Segal LLP, as counsel to the Official Committee of Retired Employees, for an Allowance of Interim Compensation and Reimbursement of All Actual and Necessary Expenses* for the period *February 1, 2013* to *February 28, 2013* Filed by Official Committee of Retirees. Objections due by 5/22/2013. (Attachments: # 1 Notice # 2 Exhibit A # 3 Exhibit B) (Taylor, William) (Entered: 05/01/2013) |
| 05/01/2013 | | 10411 | Order Approving Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief (related document(s)10049, 10254) Order Signed on 5/1/2013. (Attachments: # 1 Exhibit A Filed Under Seal) (SB) (Entered: 05/01/2013) |
| 05/01/2013 | | 10412 | Certificate of No Objection *Regarding Forty−Ninth Monthly Application of Akin Gump Strauss Hauer &Feld LLP, Co−Counsel for the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation and for the* |

| | | | |
|---|---|---|---|
| | | | *Reimbursement of Expenses for Services Rendered for the period February 1, 2013 to February 28, 2013 (No Order Required)* (related document(s)10013) Filed by Akin Gump Strauss Hauer &Feld LLP. (Samis, Christopher) (Entered: 05/01/2013) |
| 05/01/2013 | | 10413 | Notice of Service *Re: LTD Settlement Order* (related document(s)10406) Filed by Nortel Networks Inc., et al.. (Attachments: # 1 Service List) (Minott, Tamara) (Entered: 05/01/2013) |
| 05/01/2013 | | 10414 | Exhibit(s) – *Notice of Filing of Items Designated for Record on Appeal* (related document(s)10166) Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F) (Luton Chapman, Jaime) (Entered: 05/01/2013) |
| 05/01/2013 | | 10415 | Appellant Designation of Items For Inclusion in Record On Appeal *and Statement Pursuant to Bankruptcy Rule 8006 of Issues to be Presented on Appeal* (related document(s)10166) Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. Appellee designation due by 05/15/2013. (Luton Chapman, Jaime) (Entered: 05/01/2013) |
| 05/01/2013 | | 10416 | Interim Application for Compensation *(Fifty–First) Of Cleary Gottlieb Steen &Hamilton LLP, As Attorneys For Debtors And Debtors–In–Possession, For Allowance Of Interim Compensation And For Interim Reimbursement Of All Actual And Necessary Expenses Incurred* for the period *March 1, 2013 to March 31, 2013* Filed by Cleary Gottlieb Steen &Hamilton LLP. Objections due by 5/21/2013. (Attachments: # 1 Notice # 2 Exhibit A (Compensation by Project Catergory) # 3 Exhibit B (Expense Summary) # 4 Certificate of Service) (Cordo, Ann) (Entered: 05/01/2013) |
| 05/01/2013 | | 10417 | Joint Objection *Joint Opposition To The Joint Administrators Motion For Leave To Appeal From Order Approving Allocation Protocol* (related document(s)9946, 9947, 10167) Filed by Nortel Networks Inc., et al. (Cordo, Ann) (Entered: 05/01/2013) |
| 05/02/2013 | | 10418 | Transcript regarding Hearing Held 04/30/2013 RE: Long Term Disability. Remote electronic access to the transcript is restricted until 7/31/2013. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] or [Contact the Court Reporter/Transcriber Diaz Data Services, Telephone number 717–233–6664.] Notice of Intent to Request Redaction Deadline Due By 5/9/2013. Redaction Request Due By 5/23/2013. Redacted Transcript Submission Due By 6/3/2013. Transcript access will be restricted through 7/31/2013. (related document(s)10356) (GM) Modified on 5/2/2013 Entered correct phone number(GM). (Entered: 05/02/2013) |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                                    )     Chapter 11
                                                          )
NORTEL NETWORKS, INC., et al.                             )     Case No. 09-10138 (KG)
                                                          )     (Jointly Administered)
                    Debtors.                              )
                                                          )
_____                  )     **Re Dkt No. 5307 and 5531**

## OPINION

The Court is opining on a matter of great significance in this daunting Chapter 11 case, namely, whether the Court will determine the allocation of proceeds from sales of assets in judicial proceedings, or if the allocation will be decided through an arbitration.[1]  See Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement and for Related Relief (the "Joint Motion") (D.I. 5307); and Joint Administrators' Objection to the Motion and Cross-Motion to Compel Arbitration, dated May 31, 2011 (the "Objection") (D.I. 5531).  For the reasons provided in this opinion, the Court finds that parties agreed that the Courts will make the allocation determination rather than an arbitrator or arbitrators.  Despite the voluminous submissions of the parties and the lengthy arguments, the Court's decision ultimately turns on a plain and unambiguous agreement between the parties.

---

[1]  Canadian entities also commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies Creditors Arrangement Act (Canada) seeking relief from their creditors (the "Canadian Proceedings").  The issue before the Court is similarly before the Canadian Court. The Court will refer to the "Courts" when discussing both this Court and the Canadian Court.

## PARTIES

It is helpful in understanding the discussion of the issues to describe and define the numerous parties involved in the cases.  The Court will refer to the universe of Nortel Entities described below as the "Nortel Parties."

Nortel Networks, Inc. ("NNI") and certain of its affiliates (collectively, the "U.S. Debtors") are debtors in the cases before the Court.  They are joined in opposing arbitration by the Official Committee of Unsecured Creditors (the "Committee") and the Ad Hoc Committee of Bondholders (the "Bondholders").  The Bondholders hold claims in excess of $4 billion.

The Canadian Court appointed Ernst & Young to serve as the Monitor (the "Monitor") for the Canadian debtors, Nortel Networks Corporation ("NNC"), NNI's ultimate corporate parent, Nortel Networks Limited ("NNL"), NNI's direct corporate parent, and certain Canadian affiliates (collectively, the "Canadian Debtors").[2]   The Canadian Debtors also oppose arbitration.

The third group of major parties, this group favoring and seeking arbitration, consists of entities which the High Court of England and Wales placed into administration (the "EMEA Debtors").  These affiliates, all in administration, are: Nortel Networks UK Limited Nortel Networks (Ireland) Limited; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel

---

[2]  Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation.

Networks (Austria) GmbH; Nortel Networks GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Services Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International Finance & Holding BV and Nortel Networks France S.A.S.

The Administrators in the insolvency proceedings pending in the United Kingdom for all EMEA Debtors except Nortel Networks (Ireland) Limited are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris.  The Administrators for Nortel Networks (Ireland) Limited are Alan Robert Bloom and David Martin Hughes (collectively, the "Joint Administrators" or "EMEA Debtors").

## **RELEVANT FACTS**

The U.S. Debtors filed for bankruptcy protection on January 14, 2009, and the Canadian Debtors filed for similar relief in Canada.  Shortly thereafter, the U.S. Debtors and the Canadian Debtors began a sale of all of its businesses and its intellectual property which eventually generated approximately $9 billion (the "Sales Proceeds").[3]

The prospective sales created a "stickey wicket."  In the absence of agreement, what was to happen with the Sales Proceeds?  The numerous, multi-national debtors who were competing for the Sales Proceeds addressed the problem by agreement.  Thus, on June 9,

---

[3]    The beneficial efforts of and stress upon the parties and their professionals cannot be overemphasized. By the Court's count, the U.S. Debtors and the Canadian Debtors conducted nine massive sales, requiring numerous motions, procedures, marketing, negotiations, auctions, hearings and closings. The results were beyond expectations for the most part and certainly were as a group.

3

2009, the U.S. Debtors, the Canadian Debtors and the EMEA Debtors entered into the Interim Funding and Settlement Agreement ("IFSA"), which the U.S. Court (the "U.S. IFSA Order") and the Canadian Court approved by separate orders, dated June 29, 2009. The English High Court already ruled that the Joint Administrators were free to enter into the IFSA on behalf of the EMEA Debtors.

The IFSA provided the necessary mechanism to allow the planned sales of the Nortel Parties' businesses and assets to proceed without dispute among the Nortel Parties. The IFSA, *inter alia*, provided that the parties to the IFSA would not condition the execution of any sale agreement with a third party upon allocation or even a binding procedure for allocation of the sale proceeds (IFSA, ¶ 12(a), but the sale proceeds would instead be placed into an escrow account. IFSA, ¶ 12(b). The sales were each accompanied by an escrow agreement pertaining to that sale (collectively, the "Escrow Agreements"). The Nortel parties also agreed to negotiate for a protocol to resolve allocation disputes. IFSA, ¶ 12(c). The IFSA provides that disputes over the IFSA or anything relating to the IFSA must be decided in a joint hearing of the U.S. Court and the Canadian Court. IFSA, ¶16(b).

The Nortel Parties could not agree upon a protocol which would govern the allocation process. Their failure was not for want of trying. The Nortel Parties engaged in lengthy discussions, including comprehensive settlement discussions, and two rounds of mediation. The most recent mediation with The Honorable Warren K. Winkler, Chief Justice of Ontario, Canada serving as the mediator ended without resolution despite the Chief Justice's expertise

and hard work.  The termination of the mediation led to the matter coming back before the Courts.[4]

## DISCUSSION

### A.  The Joint Administrators' Case for Arbitration

The Joint Administrators argue forcefully in the Objection that the Nortel Parties agreed to arbitration, that the IFSA reflects that agreement and that arbitration is the only practical and efficient procedure.  The Joint Administrators maintain that the Nortel Parties understood from the time they negotiated the IFSA that the allocation of proceeds would be decided in a private, transnational arbitration proceeding.  The Joint Administrators further argue that: (1) the Joint Motion is improper from a procedural standpoint, because the Court can grant the relief only in an adversary proceeding; (2) the intent to submit the matter to arbitration can be gleaned from its content, or the IFSA is sufficiently ambiguous, particularly the term "dispute resolvers," to require the Court to consider extrinsic evidence; (3) the IFSA created an enforceable promise to negotiate in good faith for an Interim Sales Protocol which the U.S. Debtors and the Canadian Debtors failed to honor; (4) the Nortel Parties reached an understanding calling for arbitration; (5) the Court lacks jurisdiction over the EMEA Debtors; and (6) judicial proceedings are highly impractical, creating the possibility of deadlock between the Court and the Canadian Court and parallel appeal

---

[4] The Nortel Parties and others first argued the Joint Motion and the Objection to the Courts in a joint hearing on June 7, 2011.  Without ruling, the Courts referred the dispute to mediation.  See Order Directing Mediation, dated June 17, 2011 (D.I. 5752).  When the mediation failed, the Courts ordered parties to submit supplemental papers.  The Courts heard the second argument on March 7, 2013.

processes.

The Joint Administrators argue that although the IFSA does not contain the words "arbitrator" or "arbitrators," it is sufficient that there is language which clearly manifests the parties' intention to submit to arbitration. *Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988). The Joint Administrators contend that the following language in the IFSA establishes the intention for arbitration:

> [Execution by a selling debtor of sale documents] shall not be conditioned upon such Selling Debtor reaching agreement with the other Selling Debtors regarding (A) allocation of the Sale Proceeds (the "Sale Proceeds") from the relevant Sale Transaction or (B) the binding procedure for the allocation of Sale Proceeds from the relevant Sale Transaction.

IFSA, ¶ 12(a).

Also, in providing for the escrow of Sale Proceeds, the IFSA provides:

> In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all the Selling Debtors or (ii) in a case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol applicable to the Sale Proceeds.

IFSA, ¶ 12(b).

6

1133

Finally, the IFSA provides:

> [T]he Debtors shall, as soon as reasonably practicable, following the execution of this Agreement, negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (the "Interim Sales Protocol"), which Protocol shall provide binding procedures for the allocation of Sale Proceeds where the Selling Debtors in such transactions have been unable to reach agreement on such allocations.

IFSA, ¶ 12(c).

From these provisions, and particularly the words "dispute resolvers," the Joint Administrators propose the only reasonable interpretation is that no one intended the Court and the Canadian Court to hold a joint trial on allocation.

The IFSA, they argue, is at the very least ambiguous requiring the Courts to consider extrinsic evidence. The Joint Administrators in their supporting papers presented the evidence they claim proves that the Nortel Parties agreed to arbitration. For reasons discussed below, the Court finds that the IFSA is not ambiguous and therefore the Court will not consider extrinsic evidence.[5] At bottom, the IFSA is not reasonably susceptible of more than one interpretation and therefore is not ambiguous. *Foot Locker, Inc. v. Omni Funding Corp. of America*, 911 N.Y.S. 2d 344, 346 (1st Dep't 2010).

---

[5] The question of whether an ambiguity exists is one of law, not fact. *W.W.W. Associates, Inc. v. Giancontieri*, 566 N.E. 2d 639, 642 (N.Y. 1990).

7

The Joint Administrators also argue that the EMEA Debtors did not submit to the jurisdiction of the Courts, except to enable the Courts to enforce arbitration. They further argue that the Courts do not have jurisdiction to issue a joint opinion on allocation. The Joint Administrators need not have any concern. The Court has independent jurisdiction over the EMEA Debtors and will issue its own opinion on allocation. The Court's jurisdiction rests on the IFSA itself, and Debtors' submission to the Court's jurisdiction by submitting claims against the U.S. Debtors.

The Joint Administrators are correct that the Court will confront practical and logistical difficulties. There is, indeed, the possibility that the Court and the Canadian Court will arrive at different allocations, and the trial at two distant locations may present challenges. However, difficulty is no reason for a court with jurisdiction, detailed knowledge of a case and the means to preside over that case to abandon its authority. *Meredith v. City of Winter Haven*, 320 U.S. 228, 236-37 (1943). It would be easier, but improper, for the Court to abdicate its responsibility by sending the allocation issues to arbitration without any justification. The Court is confident that the Nortel Parties and other interested parties, very ably represented, will assist the Court in minimizing any practical problems. It is entirely in the best interest of all of the Nortel Parties to facilitate the resolution of the allocation of large sums of money sitting in escrow, and equally to assist the Court in reaching the correct decision. Further, based upon the Court's years of presiding over the lawyers in this Chapter 11 case, the Court is certain that they will respect their professional obligations. More

importantly, the Court's enormous respect for the presiding jurist in the Canadian Court, Justice Geoffrey B. Morawetz, further fuels confidence in the Court's ability to render independently a fair and just result in an efficient and decorus manner. The judges overseeing these two cases have thus far worked through numerous difficulties and can no doubt continue to work together seamlessly. The U.S. Debtors and the Canadian Debtors put in place, with the Courts' approval, a Cross-Border Protocol which has facilitated these cases.[6] The EMEA Debtors were not parties to the Cross-Border Protocol, but agreed to its implementation in the Escrow Agreements.

## B. The Case Against Arbitration

The U.S. Debtors, the Canadian Debtors and their respective constituents are asking the Courts to determine the allocation of the assets, which are largely comprised of the Sales Proceeds. The Court is persuaded by their position.

### 1. Jurisdiction

The Nortel Parties agreed in the IFSA that they were submitting to the non-exclusive jurisdiction of the Court and the Canadian Court in a joint hearing conducted pursuant to the Cross-Border Protocol for "all legal proceedings to the extent relating to the matters agreed in this Agreement . . ." IFSA, ¶ 16(b)(i).

---

[6] The Court approved the Cross-Border Protocol on January 15, 2009, after the Canadian Court's approval on January 14, 2009.

In furtherance of the Courts' jurisdiction to determine allocation, the Nortel Parties agreed that "any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters agreed in this Agreement must be commenced in . . . a joint hearing of both the Canadian and U.S. Courts conducted under the Cross-Border Protocol . . . IFSA, ¶ 16(b)(ii).  The words "any claim, action or proceedings," "any relief whatsoever," "relating to" and "must" in the foregoing provision establish beyond cavil that the Nortel Parties, including the EMEA Debtors, agreed that they were submitting to the Court's jurisdiction.  If the quoted provisions are not sufficient to make the point, the Nortel Parties excluded two specific issues, neither allocation, from the Court's jurisdiction. Additionally, as the U.S. Debtors discuss in their papers in support of the Joint Motion, the Escrow Agreements also make it clear that disputes relating to the escrowed funds will be heard by the Court.

The language in the IFSA, "any claim, action or proceeding . . . relating to matters agreed in this [IFSA]," and similar language in the Escrow Agreements[7] are broad forum selection provisions.  *Schering Corp. v. First Databank, Inc.*, 479 F. Supp. 2d 468, 471 (D.N.J. 2007); *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).  The law is clear: forum selection clauses are interpreted broadly and are enforced.  *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1216-19 (3d Cir. 1991).  Clearly, the Nortel Parties agreed in the IFSA and in the Escrow Agreements that the Court with the Canadian Court are the "look to"

---

[7]  The Escrow Agreements, to which the EMEA Debtors are a party, also provide that the EMEA Debtors submit to the exclusive jurisdiction of the Courts for all disputes.

10

jurisdictions for resolution of matters covered in such agreements and that includes allocation.

### 2. The Agreement

It is very clear that the Nortel Parties did not agree to arbitrate. The Joint Administrators concede the absence of agreement by arguing that the U.S. Debtors and Canadian Debtors had an obligation to negotiate the terms of arbitration.

It is equally clear that without agreement, there is no obligation to arbitrate. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857-58 (2010). It is true that federal courts follow a policy favoring arbitration, but only if a valid agreement to arbitrate exists. *Id.* at 2859-60. Furthermore, while courts favor enforcing arbitration provisions that exist, courts are not predisposed to find parties agreed to arbitration. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F. 3d 156, 160 (3d Cir. 2009). Instead, when deciding whether or not there is an agreement to arbitrate, courts will apply standard principles of contract formation. Where the language in the contract is unambiguous, courts will determine intent from the contract language itself without considering extrinsic evidence. *IDT Corp. v. Tyco Group*, 13 N.Y. 3d 209, 214 (2009); *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 139 (2d Cir. 2000).[8]

---

[8] New York Law governs the IFSA. IFSA, ¶ 16(a).

11

The EMEA Debtors rely on Paragraph 12 of the IFSA as proof of the Nortel Parties'
intent to arbitrate.  Paragraph 12 just does not provide such proof.  The Nortel Parties are all
sophisticated and are represented by highly capable lawyers.[9]  They were surely proficient
at drafting an arbitration clause, and did not.  Instead, Paragraph 12(c) of the IFSA provides
that the Nortel Parties will negotiate and attempt to reach agreement on a protocol for
resolving allocation.  Paragraph 12(a), in turn, provides that the parties will enter into future
sales agreements even in the absence of a binding procedure for resolving allocation issues.
The Nortel Parties also did not agree to the terms of arbitration, including: who, how many,
how selected, where they would sit, right to appeal.  The absence of these important terms
further evidences that the parties did not even approach any agreement on arbitration.  *See
also Bor Corp. v. ADT Automotive, Inc.*, Case No. 96 Civ. 1019 (JFK),1996 WL 689364 *10
(S.D.N.Y., Nov. 27, 1996) (holding that the absence of the word "arbitrate" is highly
significant to finding the absence of the intent to arbitrate).  In *Bor*, the parties had agreed
that they would negotiate to hire Ernst & Young or another "dispute resolver."  The parties
also agreed that the arbitration results would be binding.  Even with the apparent arbitration
understanding between the parties, the court denied the motion to arbitrate, finding that the
parties involved were sophisticated entities who, had they wanted arbitration, would have
used the term or a derivative.  *Bor* at *10.

---

[9]  *See Truck Drivers, Oil Drivers, Filling Station & Platform Workers' Union Local 705, Int'l Bhd.
of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. (AFL-CIO) v. Schneider Tank Lines, Inc.*, 958
F.2d 171, 175 (7th Cir. 1992), finding that an agreement unambiguously omitted arbitration provisions where
it "strained credulity" that parties forgot to include them.

The Court must also consider the U.S. IFSA Order which requires that "no ... protocol for allocation of proceeds from a Sale Transaction may become effective without the prior approval of this Court . . ." Both the IFSA and the U.S. IFSA Order are entirely consistent with the Bankruptcy Rules. The parties must stipulate and the Court must approve arbitration when there is a controversy affecting the estate. Fed. R. Bankr. P. 9019(c), *accord.* Del. Bankr. L.R. 9013-3(b)(i) (requiring consent to arbitration to be "freely and knowingly obtained").

The only language in the IFSA upon which the EMEA Debtors attempt to gain a foothold for their arbitration argument is the term "dispute resolvers." IFSA, ¶ 12(c). The Court is not at all persuaded by this argument. The Courts - and there are two here - are, of course, "dispute resolvers." As the U.S. Debtors show, numerous decisions identify courts as "dispute resolvers." *See*, *e.g.*, *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 292 (5th Cir. 2007); *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002); *Armster v. U.S. Dist. Court for Cent. Dist. of California*, 806 F.2d 1347, 1350, n.2 (9th Cir. 1986); *Farber v. Job*, 467 F. Supp. 163, 170 (D.N. J. 1978). The EMEA Debtors' argument for the significance of "dispute resolvers" is further weakened by their reliance upon *Palumbo v. Select Mgmt. Holdings, Inc.*, No. 82900, 2003 WL 22674397 (Ohio Ct. App. Nov. 13, 2003) and its contrast to the facts here. The EMEA Debtors cite the case to show that "dispute resolver" refers to arbitration. *Palumbo* is inapposite because the parties had defined the term as referring to an accounting firm as arbitrator. *Id.* @ *1. The parties

13

in *Palumbo* had also agreed to detailed procedures for the arbitration (*Id. @ *2*), which the Nortel Parties never did.

The IFSA is unambiguous in providing that it is for the Courts, and not an arbitrator or arbitrators, to determine the allocation issues.[10]  Under such circumstances, the Court is obliged to give effect to its plain meaning.  *Vintage LLC v. Laws Constr. Corp.*, 13 N.Y.3d 847, 849-50 (2009).  In particular, *Pavarini McGovern, LLC v. Tag Court Square, LLC*, 878 N.Y.S. 2d 419-20 (2d Dep't 2009), describes the circumstances present before the Court:

> When interpreting a commercial contract negotiated by and entered into at arm's length between sophisticated business people, represented by an attorney, a court must enforce the agreement according to its terms, and extrinsic and parole evidence is not admissible to create an ambiguity in a written agreement that is complete, clear, and unambiguous on its face.

The Court does not hesitate to find that the IFSA, entered into at arm's length, between sophisticated business people, represented by highly capable lawyers, unambiguously states the agreement that the Courts retain jurisdiction to resolve allocation disputes.

### 3.  *Proceeding by Motion*

The Joint Administrators urge the Court to rule that the U.S. Debtors were required to proceed by filing an adversary complaint.  The Court disagrees.  The Joint Motion is an effort to enforce an agreement, the IFSA, which the Court approved by the U.S. IFSA Order.

---

[10]  The EMEA Debtors do not argue there is any ambiguity in the term "dispute resolvers."  Instead, they argue that the term clearly calls for arbitration.

*See*, *e.g.*, *In re Worldcorp. Inc.*, 252 B.R. 890-95 (Bankr. D. Del. 1999) (holding that where a party seeks to enforce a prior order, it is not required to commence an adversary proceeding). The Court also recognizes the irony that the Joint Administrators' proceeded by objection and cross-motion, not by complaint.

## CONCLUSION

The Nortel Parties did not agree to arbitrate and the Court will not - indeed cannot - compel arbitration. The Court has jurisdiction and the IFSA is the call for the submission of an allocation protocol, which will define the procedures for a joint evidentiary hearing to determine allocation. The Court will issue an Order consistent with its decision.

Dated: April 3, 2013

KEVIN GROSS, U.S.B.J.

15

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS, INC., *et al.*, | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | **Re Dkt No. 5307 and 5531** |

## ORDER APPROVING ALLOCATION PROTOCOL

Upon the motion dated April 25, 2011 (the "Joint Motion")[1], of Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (the "U.S. Debtors"), and the Official Committee of Unsecured Creditors (the "Committee" and together with the U.S. Debtors, the "Movants"), for entry of an order, as more fully described in the Motion, approving an Allocation Protocol pursuant to the Interim Funding and Settlement Agreement, dated as of June 9, 2009 (the "IFSA"); and the Joint Administrators' Objection to the Joint Motion and Cross-Motion to Compel Arbitration, dated May 31, 2011 (the "Objection"); and the Court having jurisdiction to consider the Joint Motion and the Objection and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the terms of the IFSA and the U.S. IFSA Order; and the Court having determined that consideration of the Joint Motion and the Objection is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief requested in the Joint Motion pursuant to 11

---

[1] Capitalized terms have the same meaning as in the Opinion.

U.S.C. §§ 105 and 363, and that the Objection does not;

IT IS HEREBY ORDERED THAT:

1.      The Joint Motion is GRANTED.

2.      The Objection is DENIED.

3.      The parties shall continue to negotiate the terms of the Allocation Protocol

consistent with the Court's Opinion.  The U.S. Debtors shall submit their proposal for the

Allocation Protocol to all other parties on or before April 8, 2013, and thereafter the parties

shall submit to the Court their versions of the Allocation Protocol on or before April 15,

2013.

4.      The trial to determine the allocation of the Sales Proceeds shall commence on

January 6, 2014.  The Court will begin the trial with the allocation issues and continue

thereafter with remaining issues to be addressed in the Allocation Protocol, including EMEA

claims and U.K. Pension matters.

The Court has scheduled the trial later than initially planned because (1) the Court has

coordinated the date with the Canadian Court, (2) the later date will provide the parties and

the Court with the time to prepare for a major aspect of these cases, (3) the additional few

months will have minimal impact on these cases, (4) because the Court must clear its

schedule for a large period of time, the trial date must be realistic and rescheduling will be

difficult, and (5) the parties deserve certainty for their planning purposes.

2

5.      The Movants are authorized to take action necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

6.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Movants are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Movants may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

7.      Nothing in this Order or the Allocation Protocol shall supersede or constitute a waiver of any rights and obligations under the IFSA.

8.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: April 3, 2013

KEVIN GROSS, U.S.B.J.

3

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re

NORTEL NETWORKS INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Re Docket Nos. 9946, 9947**

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that the court-appointed administrators and authorized

foreign representatives (collectively, the "Joint Administrators")[2] for Nortel Networks UK

Limited ("NNUK") and certain of its affiliates (collectively, and including NNUK, the "EMEA

Debtors")[3] located in the region known as EMEA (Europe, Middle East, and Africa) in

proceedings under the Insolvency Act 1986, pending before the High Court of Justice of England

and Wales, hereby appeal to the United States District Court for the District of Delaware,

pursuant to 28 U.S.C. § 158(a) and 9 U.S.C. § 16(a), from the United States Bankruptcy Court

---

1. The debtors in these chapter 11 cases (the "U.S. Debtors"), along with the last four digits of each tax identification number, are:  Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

2. The Joint Administrators in the U.K. proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the U.K. proceedings for Nortel Networks (Ireland) Limited are:  Alan Robert Bloom and David Martin Hughes.

3. The EMEA Debtors are:  Nortel Networks UK Limited; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks s.r.o.

01:13535638.2

for the District of Delaware's Order Approving Allocation Protocol [D.I. 9947] (the "Order")

and related Opinion [D.I. 9946] (the "Opinion"), entered in the above-referenced proceeding on

April 3, 2013.

Pursuant to Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a), appeal

is taken as of right with respect to those portions of the Order and Opinion that denied the Joint

Administrators' motion to compel arbitration.[4]  The Joint Administrators are filing a separate

motion for leave to appeal from those portions of the Opinion and Order that approved the entry

of an Allocation Protocol pursuant to which disputes about allocation are to be resolved through

concurrent joint court proceedings in the U.S. and Canada.

The names of the parties to the order appealed from and the names, addresses, and

telephone numbers of their respective attorneys are as follows:

**Party**

U.S. Debtors

**Counsel**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
  Howard S. Zelbo
  James L. Bromley
  Jeffrey A. Rosenthal
  Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000

                         - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
  Derek C. Abbott
  Eric D. Schwartz
  Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: 302-658-9200

---

4.  *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 214 (3d Cir. 2007).

01:13535638.2

Official Committee of
Unsecured Creditors

AKIN GUMP STRAUSS HAUER & FELD LLP
  Fred Hodara
  David Botter
  Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: 212-872-1000

            - and -

RICHARDS, LAYTON & FINGER, P.A.
  Mark D. Collins
  Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700

[*Remainder of the page intentionally left blank.*]

01:13535638.2

Dated:  Wilmington, Delaware
        April 17, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jaime Luton Chapman*
James L. Patton (No. 2202)
Edwin J. Harron (No. 3396)
John T. Dorsey (No. 2988)
Jaime Luton Chapman (No. 4936)

Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  302-571-6600
Fax:  302-571-1253

– and –

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Amera Z. Chowhan
Gabrielle Glemann
Charles H. Huberty

One Battery Park Plaza
New York, New York 10004
Telephone:  212-837-6000
Fax:  212-422-4726

– and –

HERBERT SMITH FREEHILLS LLP

Kevin Lloyd
John Whiteoak
Richard Lawton

Exchange House
Primrose Street
London EC2A 2HS

*Counsel for Joint Administrators*

01:13535638.2

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>NORTEL NETWORKS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>Jointly Administered<br><br>**Re: Docket Nos. 9946, 9947** |

### JOINT ADMINISTRATORS' MOTION FOR LEAVE
### TO APPEAL FROM ORDER APPROVING ALLOCATION PROTOCOL

01:13535645.2

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ..........................................................................................................................5

JURISDICTION AND VENUE ..................................................................................................11

QUESTIONS ON APPEAL ........................................................................................................11

RELIEF REQUESTED................................................................................................................11

ARGUMENT ..............................................................................................................................12

I.      THE COURT SHOULD GRANT LEAVE TO APPEAL THE
        BANKRUPTCY COURT'S DECISION TO ENTER THE
        ALLOCATION PROTOCOL PROVIDING FOR JOINT
        PROCEEDINGS BEFORE THE U.S. AND CANADIAN COURTS. .............................12

        A.      The Appeal Raises Controlling Questions of Law As To
                Which There Are Substantial Grounds For Difference Of
                Opinion. ...............................................................................................................13

        B.      Immediate Appeal Will Materially Advance the Ultimate
                Termination of the Litigation.................................................................................15

        C.      Granting Leave to Appeal Will Avoid Potential Wasted
                Trial Time and Litigation Expense. .......................................................................16

II.     APPEAL FROM THE ORDER APPROVING THE ALLOCATION
        PROTOCOL SHOULD BE HEARD TOGETHER WITH THE APPEAL
        AS OF RIGHT FROM THE ORDER DENYING THE MOTION TO
        COMPEL ARBITRATION BECAUSE THE ISSUES ARE
        INTERTWINED. ............................................................................................................16

CONCLUSION............................................................................................................................18

The court-appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators")[1] for Nortel Networks UK Limited ("NNUK") and certain of its affiliates (collectively, and including NNUK, the "EMEA Debtors")[2] located in the region known as EMEA (Europe, Middle East, and Africa) in proceedings under the Insolvency Act 1986, pending before the High Court of Justice of England and Wales (the "English Court"), respectfully submit this motion (the "Motion"), pursuant to 28 U.S.C. § 158(a) and Rules 8001 8002, and 8003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for leave to appeal from the Order Approving Allocation Protocol, entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or the "U.S. Court") on April 3, 2013 (the "Allocation Protocol Order," D.I. 9947) and the accompanying Opinion (the "Allocation Opinion," D.I. 9946).

In support of this Motion, the Joint Administrators respectfully state as follows:

**PRELIMINARY STATEMENT**

The present motion relates to the dispute that has arisen about how the proceeds from the sales of the former Nortel group's global businesses should be divided between the estates of the various Nortel debtors in Canada, the United States and Europe, the Middle East and Africa ("EMEA"), for eventual distribution to their respective creditors. By Opinion filed on April 3, 2013, the Bankruptcy Court (i) denied the Joint Administrators' motion to compel

---

1. The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris. The Joint Administrators in the English proceedings for Nortel Networks (Ireland) Limited are: Alan Robert Bloom and David Martin Hughes.

2. The EMEA Debtors are: Nortel Networks UK Limited; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

arbitration of this dispute in accordance with a post-petition pre-asset sale written agreement between the various Nortel debtors, and (ii) granted the joint motion of the U.S. Debtors[3] and the Official Committee of Unsecured Creditors (the "Committee") to instead litigate this dispute through joint pleadings, discovery, hearings and trials before the U.S. Court and the Ontario Superior Court of Justice–Commercial List (the "Canadian Court").[4]  In the related Allocation Protocol Order, also filed on April 3, 2013, the Bankruptcy Court approved the entry of a protocol (the "Allocation Protocol"), which outlines the process for joint litigation of the allocation dispute by the U.S. and Canadian Courts.

Pursuant to Section 16(a) of the Federal Arbitration Act (the "FAA"), the Bankruptcy Court's decision denying the Joint Administrators' motion to compel arbitration is appealable as of right.[5]  By the present motion, the Joint Administrators seek leave to appeal from those portions of the Allocation Protocol Order and Allocation Opinion pursuant to which the Bankruptcy Court ordered that the allocation dispute should be decided through joint pleadings, discovery, hearings and trial before the U.S. and Canadian Courts.  It is appropriate to address the appeal from the portion of the Allocation Protocol Order approving the entry of the Allocation Protocol at the same time as the appeal from the decision denying the motion to

---

3. The debtors in these chapter 11 cases (the "U.S. Debtors"), along with the last four digits of each tax identification number, are:  Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

4. The U.S. and Canadian Courts have entered into a Cross-Border Protocol (as defined below) establishing procedures for the coordination of the insolvency proceedings in their respective jurisdictions.

5. 9 U.S.C. § 16(a) (2006); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 214 (3d Cir. 2007) ("In no uncertain terms, Section 16 'makes clear that any order favoring litigation over arbitration is immediately appealable and any order favoring arbitration over litigation is not.'") (citation omitted).

compel arbitration, rather than waiting for the conclusion of the joint cross-border trials, for at least the following reasons:

      <u>First</u>, allowing an immediate appeal from the Allocation Protocol Order will serve the interest of judicial efficiency. The filing of the appeal from the Bankruptcy Court's decision denying the Joint Administrators' motion to compel arbitration automatically deprives the Bankruptcy Court of jurisdiction to decide the allocation dispute, thereby staying proceedings on allocation until the appeal has been decided.[6] An immediate appeal of the Allocation Protocol Order will therefore cause no prejudice. Further, although it seems plain that the allocation dispute is required to be arbitrated in accordance with the parties' written agreement, the Joint Administrators' success on this point is not guaranteed. If the decision denying the motion to compel arbitration is affirmed on appeal, the question of the form of judicial proceedings through which the allocation dispute should ultimately be decided will become paramount. In contrast, if the appellate court finds the allocation dispute to be arbitrable without reviewing the portion of the Order approving the Allocation Protocol, the parties will be subject to two conflicting orders: one to arbitrate and one adopting the protocol. If the objections to the propriety of the joint trials ordered by the Bankruptcy Court are addressed now, the Bankruptcy Court and parties will have a road map for how to proceed in the event the appeal is unsuccessful. Delaying appeal until after U.S. and Canadian judgments on the merits could result in the need to repeat the entire trial.

      <u>Second</u>, the Allocation Protocol implicates controlling questions of law as to which there are substantial grounds for difference of opinion. The joint trial approach ordered under the Allocation Protocol is unprecedented. Instead of ordering the dispute to be arbitrated,

---

6.   *See Ehleiter*, 482 F.3d at 215 n.6; *see also Guidotti v. Legal Helpers Debt Resolution*, No. 11-1219, 2012 WL 3262461, at *2-3 (D.N.J. Aug. 7, 2012) (granting automatic stay); *V.I. Water & Power Auth. v. Gen. Elec. Int'l*, No. 2006-131, 2009 WL 2413670, at *1 (D.V.I. Aug. 4, 2009) (same).

01:13535645.2

62309424_1

the U.S. and Canadian Courts have intentionally created a situation in which both courts are

seized of a dispute about the same subject matter, *i.e.*, how to divide the $7.5 billion held in

escrow among some forty Nortel entities around the world.  The Courts have ordered the parties

to engage in a process by which two parallel courts of independent jurisdiction will conduct joint

hearings, applying uncertain rules of evidence and procedure, and conduct joint trials, leading to

two independent judgments and two separate appeal processes in the U.S. and Canada.  There is

at least substantial doubt about the authority of a U.S. Court to formulate *ad hoc* trial procedures

in this fashion.  The parties can only hope that the judgments will coincide, as there will literally

be no way to reconcile any differences in the ultimate decisions entered by the U.S. and

Canadian Courts.

Thus the Joint Administrators seek leave to appeal the novel issue of whether

separate courts of two sovereign nations can co-adjudicate a proceeding, each purporting to act

under its own substantive and procedural rules, while maintaining each court's sovereignty and

independence and observing the due process rights of the parties, in a scenario that is almost

certain to lead to a deadlock between two inconsistent judgments.

The issues to be addressed on this appeal could not be more important.  To date,

the Nortel bankruptcy proceedings serve as a paradigm for how to promptly sell the business

assets of an international corporate group, thereby maximizing the funds available for

distribution to creditors, despite the pendency of multiple international insolvency proceedings

under widely differing legal regimes.  To complete this paradigm, the Courts must implement a

fair and equitable approach for determining how the sale proceeds will be allocated among the

various debtors around the world.  Foreign debtors in future cases will not agree to cooperate on

sales of global assets if their share of the proceeds must be determined by the local courts of

01:13535645.2

62309424_1

-4-

another nation.  The ideal method for determining allocation of the sales proceeds is the one contemplated by all parties when they agreed to the asset sales, i.e. by submission to an international panel of neutral arbitrators.

## BACKGROUND

The Nortel group was a Canada-based global supplier of telecommunications, computer networks and software serving customers in Canada, the U.S., the Caribbean, Latin America, Asia and EMEA (Europe, the Middle East and Africa).

On January 14, 2009 (the "Petition Date"), the principal companies in the Nortel group commenced insolvency proceedings.[7]  The group's ultimate corporate parent Nortel Networks Corporation ("NNC"), NNUK's direct corporate parent Nortel Networks Limited ("NNL"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors") sought protection under the Canadian Companies' Creditors Arrangement Act ("CCAA").  The U.S. Debtors filed voluntary petitions in the U.S. Court pursuant to chapter 11, title 11 of the United States Code (the "Bankruptcy Code").  The EMEA Debtors were placed into administration in England under the Insolvency Act 1986 by orders of Mr. Justice Blackburne of the English High Court.[8]

On the Petition Date, the U.S. Court and the Canadian Court entered Orders establishing procedures for the coordination of cross-border hearings between the U.S. and

---

7.  Nortel Networks (CALA) Inc. filed for relief on July 14, 2009, which was consolidated and is being jointly administered with the U.S. Debtors' chapter 11 cases for procedural purposes only.  (Order Directing Joint Administration of the Debtors' Related Chap. 11 Cases and Granting Related Relief, Jul. 17, 2009, D.I. 1098.)

8.  On May 28, 2009, the Commercial Court of Versailles ordered the commencement of secondary proceedings in respect of NNSA.

Canadian Courts (as amended, the "Cross-Border Protocol").[9]  The Cross-Border Protocol

allowed the U.S. and Canadian Courts to hold joint hearings "where both the U.S. Court and the

Canadian Court consider such a Joint Hearing to be necessary or advisable, or . . . to, among

other things, facilitate or coordinate proper and efficient conduct of the Insolvency Proceedings

or the resolution of any particular issue in the Insolvency Proceedings."  (Cross-Border

Insolvency Protocol, Ex. 1 ¶ 12(d), Jun. 29, 2009, D.I. 990.)  However, the Cross-Border

Protocol confirmed such proceedings could not infringe on the sovereignty and independence of

the two Courts.  (*Id.* at ¶¶ 7, 8, 12(f).)

      After commencing insolvency proceedings in their respective jurisdictions, the

Nortel group of companies made plans to sell off the Nortel businesses.  Because Nortel's

businesses were conducted globally, along "business lines," the cooperation of all Nortel entities

around the world was necessary in order to consummate the sale of each business line.  This

raised the question of how the purchase price that would be paid for each global business line

should be divided (allocated) among the various Nortel debtors that had an interest in each

business line (the "Selling Debtors").  To prevent this issue from delaying the sales transactions,

the various Nortel debtors agreed that the proceeds of the asset sales would be placed into escrow

pending later determination of how to divide those proceeds either through (i) negotiated

agreement amongst the parties, or (ii) determination by an independent "dispute resolver" in

accordance with procedures to be agreed by the parties.

      On or about June 9, 2009, the Canadian, U.S. and EMEA Debtors entered into the

Interim Funding and Settlement Agreement (the "IFSA"), which provided, *inter alia*, for the

---

9.  Order Approving Cross-Border Court-to-Court Protocol, Jan. 15, 2009, D.I. 54, as amended by the Order
    Approving Stipulation of the Debtors and the Official Comm. Of Unsecured Creditors of Nortel Networks Inc.,
    et al., Amending the Cross-Border Court-to-Court Protocol, Jun. 29, 2009, D.I. 990, annexed hereto as
    Exhibit G.

proceeds of the asset sales to be placed in escrow.  (Apr. 25, 2011, D.I. 5308-1.)  The IFSA

provided that sale proceeds would not be distributed unless either (i) the selling Nortel debtors

agreed on the appropriate allocation, or (ii) in the event that a dispute about allocation could not

be resolved by negotiation, determination by "dispute resolver(s)."  (*Id.* at ¶ 12(b).)

Specifically, Section 12(b) of the IFSA states:

> [T]he entire amount of the Sale Proceeds . . . shall be deposited in
> an escrow account pursuant to an escrow agreement, the terms of
> which shall be negotiated and agreed by all Selling Debtors, in
> each case acting reasonably (the "Escrow Account").  In no case
> shall there be any distribution from the Escrow Account in advance
> of either (i) agreement of all the Selling Debtors or (ii) in the case
> where the Selling Debtors fail to reach agreement, determination
> by the relevant dispute resolver(s) under the terms of the Protocol
> . . . applicable to the Sale Proceeds, and subject in each case to
> payment of the agreed or determined amount of allocation of Sale
> Proceeds to all Selling Debtors.

The IFSA also required the parties to negotiate in good faith towards agreeing on

a protocol to specify the procedures that would be followed by the dispute resolver.  (*Id.* ¶ 12(c).)

The U.S. Court approved the IFSA by order dated June 29, 2009 (Order Approving the Interim

Funding and Settlement Agreement and Granting Related Relief, Jun. 29, 2009, D.I. 993), and

the Canadian Court approved it by order dated June 29, 2009.  By Order dated June 23, 2009, the

English Court ordered that the Joint Administrators "be at liberty" to enter into the IFSA.[10]

Sales of substantially all Nortel assets followed, with proceeds from the sales

escrowed as required by the IFSA and held in bank accounts maintained in the U.S.  The total

currently held in escrow is approximately $7.5 billion, representing the proceeds of nine separate

asset sales.

---

10.  Section 13 of the IFSA provides that no provision of the IFSA shall be effective until each of the U.S. Court and
     Canadian Court approved the entirety of the IFSA and the English Court gave a direction that the Joint
     Administrators be at liberty to enter into the IFSA, which requirement could be waived by the Joint
     Administrators at their discretion.  (IFSA § 13, D.I. 5308-1.)

At all times, both before and after the entry of the IFSA, the parties understood and agreed that the "dispute resolver" that would be appointed to resolve disputes about allocation would be one or more private individuals acting in the capacity of arbitrators. Shortly after execution and judicial approval of the IFSA, the parties commenced negotiations towards a protocol to specify the procedures that would be followed in this arbitration proceeding. The parties had reached agreement on the main points of a twenty-nine page protocol, pursuant to which each of the three main debtor groups (Canada, U.S. and EMEA) would appoint one arbitrator to form a three member arbitration panel to resolve disputes over allocation. Before finalizing this protocol, the parties suspended negotiations in favor of mediation regarding the actual allocation of the IFSA sale proceeds. Mediation sessions took place in November 2010 and April 2011, without success.

After the failure of the mediation, the U.S. Debtors abruptly reversed course and refused to continue negotiations towards finalizing the IFSA dispute resolution protocol. They decided that they would no longer honor the understanding upon which the Nortel asset sales had been consummated, *i.e.*, that disputes about allocation of the sale proceeds would be decided in an international arbitration proceeding rather than by any particular national court. Thus, on April 25, 2011, the U.S. Debtors and the Committee filed the Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding Settlement Agreement, and for Related Relief (the "Allocation Protocol Motion"), in which they moved the U.S. Court for entry of an order approving an Allocation Protocol establishing procedures and an expedited schedule for joint determination by the U.S. and Canadian Courts of the allocation of the sale proceeds.[11]  (D.I. 5307.)

---

11. A companion application was filed by the Canadian Debtors before the Canadian Court.

01:13535645.2

62309424_1

The Joint Administrators filed objections to the Allocation Protocol Motion, and made a cross-motion to compel arbitration of the allocation dispute as provided for under the IFSA (the "Cross-Motion").  (Joint Administrators' Objection and Cross-Motion, May 19, 2011, D.I. 5444.)  The Joint Administrators argued that, from the earliest negotiations of the IFSA, the Selling Debtors had agreed that the allocation of the sale proceeds should be decided in a private, transnational arbitration proceeding and not by any national court or courts, and that joint jurisdiction of the Canadian and U.S. Courts was contemplated solely for the purpose of enforcing the arbitration clause or for ancillary relief.  (The Joint Administrators' Mem. of Law, May 31, 2011, D.I. 5531.)  The Joint Administrators further argued that based upon the terms of the IFSA and the history of negotiations regarding the IFSA:

> All evidence confirms that the parties bound themselves to submit allocation disputes to arbitration, regardless of whether they were successful in negotiating a procedural protocol to be followed in such arbitration.  Accordingly under the Federal Arbitration Act (the "FAA"), the Court's jurisdiction over allocation disputes is limited to compelling the parties to submit those disputes to arbitration.

(*Id.* at 3.)

Argument on the Allocation Protocol Motion and Cross-Motion (together with submissions from other parties) was heard in joint hearings before the U.S. Court and Canadian Court on June 7, 2011, after which the U.S. and Canadian Courts reserved decision and ordered the parties to try to mediate the dispute.  This mediation was unsuccessful, and was declared ended in January 2013.

On April 3, 2013, the U.S. Court (Gross, J.) entered the Allocation Protocol Order and Allocation Opinion, denying the Joint Administrators' motion to compel arbitration and

approving the Allocation Protocol that had been submitted by the U.S. Debtors and Committee.[12]

Mr. Justice Morawetz of the Canadian Court, having previously issued an endorsement on

March 8, 2013, issued a further endorsement on April 3, 2013 (the "Allocation Endorsement"),

which reached the same result.[13]  The Courts found that the parties' intention to arbitrate the

allocation dispute was not expressed with sufficient clarity in the terms of Section 12 of the

IFSA.  Instead, the Courts found that they had joint jurisdiction to determine allocation pursuant

to Section 16(b) of the IFSA, which provides that:

> To the fullest extent permitted by applicable law, each Party
> (i) agrees to submit to the non-exclusive jurisdiction of the US and
> Canadian Courts (in a joint hearing conducted under the Cross-
> Border Protocol adopted by such Court, as it may be amended
> from time to time), for purposes of all legal proceedings relating to
> the matters agreed in this Agreement . . .

(IFSA § 16(b), D.I. 5308-1.)

The Allocation Protocol approved by the U.S. and Canadian Courts provides that

the dispute over allocation will be decided through simultaneous proceedings and joint trials

conducted under the Cross-Border Protocol.  (Exhibit G.)  The same hearings will also be used to

adjudicate claims the EMEA Debtors have asserted against the Canadian Debtor and the U.S.

Debtor.  Prior to such hearings, the parties are to participate in joint submission of pleadings,

followed by joint fact discovery, joint expert discovery and joint pre-trial submissions.  The

precise rules of procedure, rules of evidence and constitutional principles that will apply in these

---

12. A copy of the Allocation Protocol Order and the Allocation Opinion are annexed hereto as Exhibits A and B.  A
    copy of the Form of Allocation Protocol submitted by the U.S. Debtors and Committee and approved in
    principle by the U.S. and Canadian Courts is annexed as Exhibit C.  Certification of counsel for the U.S.
    Debtors attaching a final form of the Allocation Protocol incorporating minor updates submitted on April 15,
    2013 is annexed as Exhibit D.

13. A copy of the Canadian Court's endorsements are annexed hereto as Exhibits E and F.  The Joint
    Administrators intend to appeal the Allocation Endorsement concurrently with the appeal of the Allocation
    Protocol Order and Allocation Opinion.

various phases of the proceedings are not specified in the Allocation Protocol.  Instead the two courts are to "determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery."  (*Id.* ¶ 4.)

The portion of the Allocation Protocol Order in which the U.S. Court denied the Joint Administrators' Cross-Motion is immediately appealable as of right under Section 16(a) of the FAA.  9 U.S.C. § 16(a) (2006).  By the present motion, the Joint Administrators seek leave to appeal that portion of the Allocation Protocol Order in which the U.S. Court approved the Allocation Protocol and directed that the disputes over allocation of the sale proceeds be determined through simultaneous proceedings and joint trials before the U.S. and Canadian Courts.

## JURISDICTION AND VENUE

The Joint Administrators seek leave to appeal from an interlocutory order of the United States Bankruptcy Court for the District of Delaware.  The United States District Court for the District of Delaware (the "District Court") has jurisdiction to hear the motion and the appeal pursuant to 28 U.S.C. § 158(a) (2006).  The relief requested in the Motion is properly before this Court under Rule 8003 of the Bankruptcy Rules.  Venue in this district is appropriate under 28 U.S.C. §§ 1408-1409 (2006).

## QUESTIONS ON APPEAL

Whether the U.S. Court erred in approving the Allocation Protocol and directing that the disputes over allocation of the sale proceeds be decided through joint procedures and the concurrent jurisdiction of the Canadian Court and U.S. Court.

## RELIEF REQUESTED

By this Motion, the Joint Administrators request that this Court grant the Joint Administrators leave to appeal the portion of the Allocation Protocol Order in which the U.S.

Court approved an Allocation Protocol establishing procedures for joint and concurrent

resolution by the U.S. and Canadian Courts of the allocation of the sale proceeds.  If leave is

granted, this appeal will proceed together with the Joint Administrators' appeal of the portion of

the Allocation Protocol Order in which the U.S. Court denied the Joint Administrators' Cross-

Motion to compel arbitration of the allocation dispute, which is immediately appealable as of

right under Section 16(a) of the FAA.[14]  A proposed form of order granting the relief requested is

attached hereto.

## ARGUMENT

## I.    THE COURT SHOULD GRANT LEAVE TO APPEAL THE BANKRUPTCY COURT'S DECISION TO ENTER THE ALLOCATION PROTOCOL PROVIDING FOR JOINT PROCEEDINGS BEFORE THE U.S. AND CANADIAN COURTS.

The Court should give the Joint Administrators leave to immediately appeal that

portion of the Allocation Protocol Order in which the U.S. Court approved an Allocation

Protocol establishing procedures for the joint and concurrent resolution by the U.S. and Canadian

Courts of the allocation of the proceeds of the sales of the Nortel businesses.

Interlocutory orders are appealable with leave of court pursuant to 28 U.S.C.

§ 158(a)(3).  The decision whether to grant leave to file an interlocutory appeal from a

bankruptcy court decision is informed by the criteria set forth in 28 U.S.C. § 1292(b) (2006).

*E.g., W.R. Grace & Co. v. Libby Claimants (In re W.R. Grace & Co.)*, No. 08-246, 2008 WL

3522453, at *2 (D. Del. Aug. 12, 2008); *Patrick v. Dell Fin. Servs., Inc.*, 366 B.R. 378, 385

---

14. Because the finality of orders in bankruptcy cases is more liberal than in other civil litigation, combined with a strong federal policy favoring arbitration agreements, a bankruptcy court's order denying arbitration is "final" for the purposes of § 158(a) and a party need not obtain leave of court to appeal such an order.  *Americorp, Inc. v. Hamm*, No. 11-cv-677, 2011 WL 6020187, at *1-2 (M.D. Ala. 2011); *see also Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d. 222, 227 (3d Cir. 2006) (noting that "[t]he District Court had appellate jurisdiction under 28 U.S.C. § 158(a)(1) [(providing for an appeal from final judgments, orders, and decrees)] and 9 U.S.C. § 16(a)(1)(B) (providing appeal from an order denying arbitration))."

(M.D. Pa. 2007); *Nat'l Cable Television Coop., Inc. v. Broadstripe, LLC (In re Broadstripe, LLC)*, No. 09-10006, 2009 WL 774401, at *2 (D. Del. Mar. 26, 2009).  Section 1292 provides that leave to appeal an interlocutory order of a bankruptcy court may be granted when:  (a) the order involves controlling questions of law; (b) there is a substantial ground for difference of opinion; and (c) an immediate appeal may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b); *Broadstripe,* 2009 WL 774401, at *2; *Patrick*, 366 B.R. at 385.

"The decision whether to grant an interlocutory appeal from a bankruptcy court order lies with the district court's discretion."  *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, No. 01-16034, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006).  Such discretion is appropriately exercised here, where the multi-national disposition of billions of dollars is at stake and where the U.S. Court is embarking on a course that threatens to compromise its independence, sovereignty and the due process rights of the litigants.  The Allocation Protocol contemplated by the U.S. Court represents an unprecedented departure from any established procedure and subjects its participants to potentially concurrent, conflicting orders and judgments of the U.S. Court and the Canadian Court, on both procedural and substantive legal issues.[15]

### A.    The Appeal Raises Controlling Questions of Law As To Which There Are Substantial Grounds For Difference Of Opinion.

Leave to appeal the Allocation Protocol Order should be granted because the Allocation Protocol Order involves a controlling question of law.  A question is "controlling" if its incorrect disposition would require reversal of the final judgment or is "serious to the conduct of the litigation."  *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

---

15.  In order for the decisions of the Courts to be useful and enforceable, they would need to be identical, which would be highly unlikely if each Court independently arrived at its decision.  Engaging in joint deliberations in order to reach consensus, however, would be a violation of the Courts' independence and sovereignty.

01:13535645.2

-13-

The decision appealed from here will plainly control the outcome of the litigation below. If the appellate court determines that the U.S. Court exceeded its authority by ordering a joint and concurrent resolution by the U.S. and Canadian Courts of the allocation of the sale proceeds, any final judgment entered by the U.S. Court under that protocol would be subject to reversal. Such judgment will also be reversed if the appellate court determines that the Allocation Protocol proceedings violate principles of independence, sovereignty or deprive parties of due process.

There are substantial grounds for difference of opinion with respect to whether the Bankruptcy Court exceeded its authority by approving the Allocation Protocol, and whether the joint proceedings violate principles of independence, sovereignty and deprive the litigants of due process. A "substantial ground for difference of opinion" exists where courts differ in their views on the correct legal standard. *Patrick*, 366 B.R. at 386. The existence of a matter of first impression may establish a "substantial ground for difference of opinion," especially if the issue is "novel" or requires "highly complex" analysis. *See Zenith Radio Corp. v. Matsushita Elec. Indus. (In re Japanese Elec. Prods. Antitrust Litig.),* 494 F. Supp. 1190, 1243 (E.D. Pa. 1980).

The questions at issue here are both novel and highly complex. The Allocation Protocol, which would govern joint but ostensibly separate proceedings, will subject the Protocol's participants to separate and potentially conflicting orders of two separate sovereign courts. Addressing a dispute of this nature through ad hoc procedures formulated by a U.S. judge and a foreign judge is unprecedented.

Furthermore, the Allocation Protocol will deprive the parties of their due process rights under U.S. procedural law, as the U.S. and Canadian Courts will be forced to reconcile conflicting procedural rules, which may result, for example, in the application of hybrid rules of

evidence and in either limited or compelled disclosure where such limitations or expansions would not otherwise exist absent the attempt to coordinate two separate legal proceedings. Given the novel question as to whether the U.S. Court is empowered to order and enforce a protocol that deviates from established law and procedure, which has a high potential to subject the parties to conflicting orders and judgments issued by the separate sovereign courts, it is appropriate to conclude that there are substantial grounds for difference of opinion.

**B.      Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation.**

Permitting an immediate appeal from that Bankruptcy Court's decision approving the Allocation Protocol will materially advance the ultimate termination of the litigation.  Several factors are pertinent in determining whether an immediate appeal would materially advance the ultimate termination of the litigation, including:  (i) whether the need for trial would be eliminated; (ii) whether the trial would be simplified by the elimination of complex issues; and (iii) whether discovery could be conducted more expeditiously and at less expense to the parties. *Patrick*, 366 B.R. at 387.

If the appellate court reverses the determination of the U.S. Court on the Joint Administrators' Cross-Motion to compel arbitration, the allocation dispute would be resolved through arbitration, which would eliminate the issues of potential procedural and substantive conflict.  But if the appellate court affirms the denial of the Cross-Motion to compel arbitration, the parties must proceed to litigate allocation through some alternative procedure.  If the portion of the Allocation Protocol Order approving the entry of the Allocation Protocol is not appealed, uncertainty will remain about the propriety of the procedures ordered under the Allocation Protocol.  Since granting leave to appeal from the decision to approve the Allocation Protocol will cause no delay to the proceedings below, it will speed the ultimate resolution of this matter

01:13535645.2

62309424_1

if the appellate court addresses the propriety of the Allocation Protocol now rather than waiting until after the U.S. and Canadian Courts have entered their concurrent judgments in the joint proceedings.

### C. Granting Leave to Appeal Will Avoid Potential Wasted Trial Time and Litigation Expense.

Granting leave is also appropriate where doing so promotes "the avoidance of harm to a party *pendente lite* from a possibly erroneous interlocutory order and the avoidance of possible wasted trial time and litigation expense." *Broadstripe, LLC*, 2009 WL 774401, at *2 (citation omitted). This consideration is present here, where deferral of the appeal of the issue as to whether the Allocation Protocol is sanctioned by the IFSA or can adequately provide the parties due process until the end of litigation could easily result in wasted trial time and litigation expense.

### II. APPEAL FROM THE ORDER APPROVING THE ALLOCATION PROTOCOL SHOULD BE HEARD TOGETHER WITH THE APPEAL AS OF RIGHT FROM THE ORDER DENYING THE MOTION TO COMPEL ARBITRATION BECAUSE THE ISSUES ARE INTERTWINED.

Even if the Court determines that the criteria for granting leave to appeal are not present, the appellate court should nevertheless exercise pendant jurisdiction to hear the Joint Administrators' appeal from the interlocutory portion of the Allocation Protocol Order in tandem with the appeal from denial of the motion to compel arbitration. An appellate court may exercise pendant jurisdiction over issues that are not independently appealable when either: (i) the non-appealable order is "inextricably intertwined" with the appealable order; or (ii) review of the non-appealable order "is necessary to ensure meaningful review of the appealable order." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 136 (3d Cir. 2004); *see also Carpenter v. Boeing Co.,* 223 F.R.D. 552, 558 (D. Kan. 2004); *Ace Ins. Co. v. Smith*, No. 06-0325, 2006 U.S. Dist. LEXIS 67761, at *11 (D. Ariz. Sept. 20, 2006). Issues are inextricably intertwined

"when the appealable issue 'cannot be resolved without reference to the otherwise unappealable issue.'" *Invista S.À.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 88 (3d Cir. 2010) (citation omitted).

The decision approving the Allocation Protocol is inextricably intertwined with the decision denying the Joint Administrators' motion to compel arbitration because: (i) it requires construction of terms of the IFSA and the extent of the Bankruptcy Court's discretion to impose a dispute resolution process thereunder; and (ii) the Allocation Protocol establishes the procedures that the Bankruptcy Court has ordered be followed in lieu of arbitration. If the appellate court finds the allocation dispute to be arbitrable without reviewing the portion of the Order approving the Allocation Protocol, the parties will be subject to two conflicting orders: one to arbitrate and one adopting the protocol. Both orders should therefore be addressed at the same time.

Furthermore, even if the appellate court finds the dispute not to be arbitrable, it would be appropriate for the court to take the next step and determine whether Bankruptcy Court acted appropriately by instituting the unprecedented procedure that has been ordered as the alternative to arbitration. Addressing both issues at once will serve the interest in judicial efficiency by preventing the waste of resources that will occur if the Joint Administrators are successful in challenging the Allocation Protocol process after the joint trial on the merits.

Granting leave to appeal will cause no prejudice to the U.S. Debtor or the Committee. The filing of the appeal from the Bankruptcy Court's order denying the Joint Administrators' motion to compel arbitration deprives the Bankruptcy Court of jurisdiction to

address allocation under the Allocation Protocol, thereby staying that aspect of the proceedings below.[16]

## **CONCLUSION**

For the foregoing reasons, an immediate appeal from the Allocation Protocol Order is essential to timely resolution of the allocation of sale proceeds in a manner that will yield a final, consistent result and afford all parties due process.  The Joint Administrators therefore respectfully request that the Court (i) grant the Joint Administrators leave to appeal the portion of the Allocation Protocol Order that approved the Allocation Protocol, which appeal will proceed in tandem with the appeal as of right from the portion of the Allocation Protocol Order denying the Cross-Motion to compel arbitration, (ii) enter an Order substantially in the form attached hereto, and (iii) grant such other and further relief as the Court deems just and proper.

---

16.  The filing of an appeal from an order denying a motion to compel arbitration automatically deprives the lower court of jurisdiction until the appeal has been fully litigated.  *See Ehleiter*, 482 F.3d at 215 n.6; *see also Guidotti,* 2012 WL 3262461, at *2-3; *V.I. Water & Power Auth.*, 2009 WL 2413670, at *1.

01:13535645.2

62309424_1

Dated: Wilmington, Delaware
April 17, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jaime Luton Chapman*
James L. Patton (No. 2202)
Edwin J. Harron (No. 3396)
John T. Dorsey (No. 2988)
Jaime Luton Chapman (No. 4936)

Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  302-571-6600
Fax:  302-571-1253

– and –

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Amera Z. Chowhan
Gabrielle Glemann
Charles H. Huberty

One Battery Park Plaza
New York, New York 10004
Telephone:  212-837-6000
Fax:  212-422-4726

– and –

HERBERT SMITH FREEHILLS LLP

Kevin Lloyd
John Whiteoak
Richard Lawton

Exchange House
Primrose Street
London EC2A 2HS

*Counsel for Joint Administrators*

01:13535645.2

62309424_1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| NORTEL NETWORKS INC., *et al.*, | Bankr. Case No. 09-10138 (KG) |
| Debtors.[1] | (Jointly Administered) |

## [PROPOSED] ORDER GRANTING JOINT ADMINISTRATORS' MOTION FOR LEAVE TO APPEAL FROM ORDER APPROVING ALLOCATION PROTOCOL

Upon consideration of the motion (the "Motion") of the court-appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators") for Nortel Networks UK Limited and certain of its affiliates,[2] for entry of an order, pursuant to 28 U.S.C. § 158(a) and Rules 8001, 8002 and 8003 of the Federal Rules of Bankruptcy Procedure, granting the Joint Administrators leave to appeal from the portions of the Order and Opinion Approving Allocation Protocol, which were entered by the United States Bankruptcy Court for the District

---

1.  The debtors in these chapter 11 cases, along with the last four digits of each tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

2.  These affiliates, known as the "EMEA Debtors" are:  Nortel GmbH; Nortel Networks (Austria) GmbH; NNIR; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A. ("NNSA"); Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.  The Joint Administrators are court-appointed administrators and authorized foreign representatives in proceedings under the Insolvency Act 1986, pending before the High Court of Justice of England and Wales.  The Joint Administrators in the U.K. proceedings for all of the above listed debtors, with the exception of Nortel Networks (Ireland) Limited ("NNIR"), are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the U.K. proceedings for NNIR are:  Alan Robert Bloom and David Martin Hughes.

of Delaware (the "U.S. Court") on April 3, 2013 (Bankr. D.I. 9947, 9946), approving the entry of

a protocol which outlines the process for joint litigation of the allocation disputes by the U.S.

Court and the Ontario Superior Court of Justice–Commercial List, and due and proper notice of

the Motion having been given, it is hereby:

ORDERED that the Motion is GRANTED.


Dated:




_____
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NORTEL NETWORKS, INC., *et al.*, | ) | Case No. 09-10138 (KG) |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
| _____ | ) | **Re Dkt No. 5307 and 5531** |

## <u>ORDER APPROVING ALLOCATION PROTOCOL</u>

Upon the motion dated April 25, 2011 (the "Joint Motion")[1], of Nortel Networks Inc.
and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases
(the "U.S. Debtors"), and the Official Committee of Unsecured Creditors (the "Committee"
and together with the U.S. Debtors, the "Movants"), for entry of an order, as more fully
described in the Motion, approving an Allocation Protocol pursuant to the Interim Funding
and Settlement Agreement, dated as of June 9, 2009 (the "IFSA"); and the Joint
Administrators' Objection to the Joint Motion and Cross-Motion to Compel Arbitration,
dated May 31, 2011 (the "Objection"); and the Court having jurisdiction to consider the Joint
Motion and the Objection and the relief requested therein pursuant to 28 U.S.C. §§ 157 and
1334 and the terms of the IFSA and the U.S. IFSA Order; and the Court having determined
that consideration of the Joint Motion and the Objection is a core proceeding pursuant to 28
U.S.C. § 157(b)(2); and the Court having determined that the legal and factual bases set forth
in the Motion establish just cause for the relief requested in the Joint Motion pursuant to 11

---

[1] Capitalized terms have the same meaning as in the Opinion.

U.S.C. §§ 105 and 363, and that the Objection does not;

IT IS HEREBY ORDERED THAT:

1.     The Joint Motion is GRANTED.

2.     The Objection is DENIED.

3.     The parties shall continue to negotiate the terms of the Allocation Protocol consistent with the Court's Opinion.  The U.S. Debtors shall submit their proposal for the Allocation Protocol to all other parties on or before April 8, 2013, and thereafter the parties shall submit to the Court their versions of the Allocation Protocol on or before April 15, 2013.

4.     The trial to determine the allocation of the Sales Proceeds shall commence on January 6, 2014.  The Court will begin the trial with the allocation issues and continue thereafter with remaining issues to be addressed in the Allocation Protocol, including EMEA claims and U.K. Pension matters.

The Court has scheduled the trial later than initially planned because (1) the Court has coordinated the date with the Canadian Court, (2) the later date will provide the parties and the Court with the time to prepare for a major aspect of these cases, (3) the additional few months will have minimal impact on these cases, (4) because the Court must clear its schedule for a large period of time, the trial date must be realistic and rescheduling will be difficult, and (5) the parties deserve certainty for their planning purposes.

2

5.      The Movants are authorized to take action necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

6.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Movants are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Movants may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

7.      Nothing in this Order or the Allocation Protocol shall supersede or constitute a waiver of any rights and obligations under the IFSA.

8.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: April 3, 2013

_Kevin Gross_

KEVIN GROSS, U.S.B.J.

3

1176

**EXHIBIT B**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS, INC., et al. | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | **Re Dkt No. 5307 and 5531** |

## OPINION

The Court is opining on a matter of great significance in this daunting Chapter 11 case, namely, whether the Court will determine the allocation of proceeds from sales of assets in judicial proceedings, or if the allocation will be decided through an arbitration.[1] See Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement and for Related Relief (the "Joint Motion") (D.I. 5307); and Joint Administrators' Objection to the Motion and Cross-Motion to Compel Arbitration, dated May 31, 2011 (the "Objection") (D.I. 5531). For the reasons provided in this opinion, the Court finds that parties agreed that the Courts will make the allocation determination rather than an arbitrator or arbitrators. Despite the voluminous submissions of the parties and the lengthy arguments, the Court's decision ultimately turns on a plain and unambiguous agreement between the parties.

---

[1] Canadian entities also commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies Creditors Arrangement Act (Canada) seeking relief from their creditors (the "Canadian Proceedings"). The issue before the Court is similarly before the Canadian Court. The Court will refer to the "Courts" when discussing both this Court and the Canadian Court.

# PARTIES

It is helpful in understanding the discussion of the issues to describe and define the numerous parties involved in the cases. The Court will refer to the universe of Nortel Entities described below as the "Nortel Parties."

Nortel Networks, Inc. ("NNI") and certain of its affiliates (collectively, the "U.S. Debtors") are debtors in the cases before the Court. They are joined in opposing arbitration by the Official Committee of Unsecured Creditors (the "Committee") and the Ad Hoc Committee of Bondholders (the "Bondholders"). The Bondholders hold claims in excess of $4 billion.

The Canadian Court appointed Ernst & Young to serve as the Monitor (the "Monitor") for the Canadian debtors, Nortel Networks Corporation ("NNC"), NNI's ultimate corporate parent, Nortel Networks Limited ("NNL"), NNI's direct corporate parent, and certain Canadian affiliates (collectively, the "Canadian Debtors").[2] The Canadian Debtors also oppose arbitration.

The third group of major parties, this group favoring and seeking arbitration, consists of entities which the High Court of England and Wales placed into administration (the "EMEA Debtors"). These affiliates, all in administration, are: Nortel Networks UK Limited Nortel Networks (Ireland) Limited; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel

---

[2]   Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation.

2

Networks (Austria) GmbH; Nortel Networks GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Services Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International Finance & Holding BV and Nortel Networks France S.A.S.

The Administrators in the insolvency proceedings pending in the United Kingdom for all EMEA Debtors except Nortel Networks (Ireland) Limited are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris. The Administrators for Nortel Networks (Ireland) Limited are Alan Robert Bloom and David Martin Hughes (collectively, the "Joint Administrators" or "EMEA Debtors").

## **RELEVANT FACTS**

The U.S. Debtors filed for bankruptcy protection on January 14, 2009, and the Canadian Debtors filed for similar relief in Canada. Shortly thereafter, the U.S. Debtors and the Canadian Debtors began a sale of all of its businesses and its intellectual property which eventually generated approximately $9 billion (the "Sales Proceeds").[3]

The prospective sales created a "stickey wicket." In the absence of agreement, what was to happen with the Sales Proceeds? The numerous, multi-national debtors who were competing for the Sales Proceeds addressed the problem by agreement. Thus, on June 9,

---

[3]    The beneficial efforts of and stress upon the parties and their professionals cannot be overemphasized. By the Court's count, the U.S. Debtors and the Canadian Debtors conducted nine massive sales, requiring numerous motions, procedures, marketing, negotiations, auctions, hearings and closings. The results were beyond expectations for the most part and certainly were as a group.

3

2009, the U.S. Debtors, the Canadian Debtors and the EMEA Debtors entered into the Interim Funding and Settlement Agreement ("IFSA"), which the U.S. Court (the "U.S. IFSA Order") and the Canadian Court approved by separate orders, dated June 29, 2009.  The English High Court already ruled that the Joint Administrators were free to enter into the IFSA on behalf of the EMEA Debtors.

The IFSA provided the necessary mechanism to allow the planned sales of the Nortel Parties' businesses and assets to proceed without dispute among the Nortel Parties.  The IFSA, *inter alia*,  provided that the parties to the IFSA would not condition the execution of any sale agreement with a third party upon allocation or even a binding procedure for allocation of the sale proceeds (IFSA, ¶ 12(a), but the sale proceeds would instead be placed into an escrow account.  IFSA, ¶ 12(b).  The sales were each accompanied by an escrow agreement pertaining to that sale (collectively, the "Escrow Agreements").  The Nortel parties also agreed to negotiate for a protocol to resolve allocation disputes.  IFSA, ¶ 12(c).  The IFSA provides that disputes over the IFSA or anything relating to the IFSA must be decided in a joint hearing of the U.S. Court and the Canadian Court.  IFSA, ¶16(b).

The Nortel Parties could not agree upon a protocol which would govern the allocation process.  Their failure was not for want of trying.  The Nortel Parties engaged in lengthy discussions, including comprehensive settlement discussions, and two rounds of mediation. The most recent mediation with The Honorable Warren K. Winkler, Chief Justice of Ontario, Canada serving as the mediator ended without resolution despite the Chief Justice's expertise

4

and hard work.  The termination of the mediation led to the matter coming back before the

Courts.[4]

## DISCUSSION

### A.  The Joint Administrators' Case for Arbitration

The Joint Administrators argue forcefully in the Objection that the Nortel Parties

agreed to arbitration, that the IFSA reflects that agreement and that arbitration is the only

practical and efficient procedure.  The Joint Administrators maintain that the Nortel Parties

understood from the time they negotiated the IFSA that the allocation of proceeds would be

decided in a private, transnational arbitration proceeding.  The Joint Administrators further

argue that: (1) the Joint Motion is improper from a procedural standpoint, because the Court

can grant the relief only in an adversary proceeding; (2) the intent to submit the matter to

arbitration can be gleaned from its content, or the IFSA is sufficiently ambiguous,

particularly the term "dispute resolvers," to require the Court to consider extrinsic evidence;

(3) the IFSA created an enforceable promise to negotiate in good faith for an Interim Sales

Protocol which the U.S. Debtors and the Canadian Debtors failed to honor; (4) the Nortel

Parties reached an understanding calling for arbitration; (5) the Court lacks jurisdiction over

the EMEA Debtors; and (6) judicial proceedings are highly impractical, creating the

possibility of deadlock between the Court and the Canadian Court and parallel appeal

---

[4]  The Nortel Parties and others first argued the Joint Motion and the Objection to the Courts in a joint hearing on June 7, 2011.  Without ruling, the Courts referred the dispute to mediation.  See Order Directing Mediation, dated June 17, 2011 (D.I. 5752).  When the mediation failed, the Courts ordered parties to submit supplemental papers.  The Courts heard the second argument on March 7, 2013.

5

1182

processes.

The Joint Administrators argue that although the IFSA does not contain the words "arbitrator" or "arbitrators," it is sufficient that there is language which clearly manifests the parties' intention to submit to arbitration. *Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988). The Joint Administrators contend that the following language in the IFSA establishes the intention for arbitration:

> [Execution by a selling debtor of sale documents] shall not be conditioned upon such Selling Debtor reaching agreement with the other Selling Debtors regarding (A) allocation of the Sale Proceeds (the "Sale Proceeds") from the relevant Sale Transaction or (B) the binding procedure for the allocation of Sale Proceeds from the relevant Sale Transaction.

IFSA, ¶ 12(a).

Also, in providing for the escrow of Sale Proceeds, the IFSA provides:

> In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all the Selling Debtors or (ii) in a case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol applicable to the Sale Proceeds.

IFSA, ¶ 12(b).

6

Finally, the IFSA provides:

> [T]he Debtors shall, as soon as reasonably practicable, following the execution of this Agreement, negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (the "Interim Sales Protocol"), which Protocol shall provide binding procedures for the allocation of Sale Proceeds where the Selling Debtors in such transactions have been unable to reach agreement on such allocations.

IFSA, ¶ 12(c).

From these provisions, and particularly the words "dispute resolvers," the Joint Administrators propose the only reasonable interpretation is that no one intended the Court and the Canadian Court to hold a joint trial on allocation.

The IFSA, they argue, is at the very least ambiguous requiring the Courts to consider extrinsic evidence. The Joint Administrators in their supporting papers presented the evidence they claim proves that the Nortel Parties agreed to arbitration. For reasons discussed below, the Court finds that the IFSA is not ambiguous and therefore the Court will not consider extrinsic evidence.[5] At bottom, the IFSA is not reasonably susceptible of more than one interpretation and therefore is not ambiguous. *Foot Locker, Inc. v. Omni Funding Corp. of America*, 911 N.Y.S. 2d 344, 346 (1st Dep't 2010).

---

[5] The question of whether an ambiguity exists is one of law, not fact. *W.W.W. Associates, Inc. v. Giancontieri*, 566 N.E. 2d 639, 642 (N.Y. 1990).

7

1184

The Joint Administrators also argue that the EMEA Debtors did not submit to the jurisdiction of the Courts, except to enable the Courts to enforce arbitration. They further argue that the Courts do not have jurisdiction to issue a joint opinion on allocation. The Joint Administrators need not have any concern. The Court has independent jurisdiction over the EMEA Debtors and will issue its own opinion on allocation. The Court's jurisdiction rests on the IFSA itself, and Debtors' submission to the Court's jurisdiction by submitting claims against the U.S. Debtors.

The Joint Administrators are correct that the Court will confront practical and logistical difficulties. There is, indeed, the possibility that the Court and the Canadian Court will arrive at different allocations, and the trial at two distant locations may present challenges. However, difficulty is no reason for a court with jurisdiction, detailed knowledge of a case and the means to preside over that case to abandon its authority. *Meredith v. City of Winter Haven*, 320 U.S. 228, 236-37 (1943). It would be easier, but improper, for the Court to abdicate its responsibility by sending the allocation issues to arbitration without any justification. The Court is confident that the Nortel Parties and other interested parties, very ably represented, will assist the Court in minimizing any practical problems. It is entirely in the best interest of all of the Nortel Parties to facilitate the resolution of the allocation of large sums of money sitting in escrow, and equally to assist the Court in reaching the correct decision. Further, based upon the Court's years of presiding over the lawyers in this Chapter 11 case, the Court is certain that they will respect their professional obligations. More

8

importantly, the Court's enormous respect for the presiding jurist in the Canadian Court, Justice Geoffrey B. Morawetz, further fuels confidence in the Court's ability to render independently a fair and just result in an efficient and decorous manner.  The judges overseeing these two cases have thus far worked through numerous difficulties and can no doubt continue to work together seamlessly.  The U.S. Debtors and the Canadian Debtors put in place, with the Courts' approval, a Cross-Border Protocol which has facilitated these cases.[6]  The EMEA Debtors were not parties to the Cross-Border Protocol, but agreed to its implementation in the Escrow Agreements.

### B.  The Case Against Arbitration

The U.S. Debtors, the Canadian Debtors and their respective constituents are asking the Courts to determine the allocation of the assets, which are largely comprised of the Sales Proceeds.  The Court is persuaded by their position.

### 1.  Jurisdiction

The Nortel Parties agreed in the IFSA that they were submitting to the non-exclusive jurisdiction of the Court and the Canadian Court in a joint hearing conducted pursuant to the Cross-Border Protocol for "all legal proceedings to the extent relating to the matters agreed in this Agreement . . ."  IFSA, ¶ 16(b)(i).

---

[6]  The Court approved the Cross-Border Protocol on January 15, 2009, after the Canadian Court's approval on January 14, 2009.

9

In furtherance of the Courts' jurisdiction to determine allocation, the Nortel Parties agreed that "any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters agreed in this Agreement must be commenced in . . . a joint hearing of both the Canadian and U.S. Courts conducted under the Cross-Border Protocol . . . IFSA, ¶ 16(b)(ii). The words "any claim, action or proceedings," "any relief whatsoever," "relating to" and "must" in the foregoing provision establish beyond cavil that the Nortel Parties, including the EMEA Debtors, agreed that they were submitting to the Court's jurisdiction. If the quoted provisions are not sufficient to make the point, the Nortel Parties excluded two specific issues, neither allocation, from the Court's jurisdiction. Additionally, as the U.S. Debtors discuss in their papers in support of the Joint Motion, the Escrow Agreements also make it clear that disputes relating to the escrowed funds will be heard by the Court.

The language in the IFSA, "any claim, action or proceeding . . . relating to matters agreed in this [IFSA]," and similar language in the Escrow Agreements[7] are broad forum selection provisions. *Schering Corp. v. First Databank, Inc.*, 479 F. Supp. 2d 468, 471 (D.N.J. 2007); *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). The law is clear: forum selection clauses are interpreted broadly and are enforced. *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1216-19 (3d Cir. 1991). Clearly, the Nortel Parties agreed in the IFSA and in the Escrow Agreements that the Court with the Canadian Court are the "look to"

---

[7] The Escrow Agreements, to which the EMEA Debtors are a party, also provide that the EMEA Debtors submit to the exclusive jurisdiction of the Courts for all disputes.

10

jurisdictions for resolution of matters covered in such agreements and that includes allocation.

## 2. The Agreement

It is very clear that the Nortel Parties did not agree to arbitrate. The Joint Administrators concede the absence of agreement by arguing that the U.S. Debtors and Canadian Debtors had an obligation to negotiate the terms of arbitration.

It is equally clear that without agreement, there is no obligation to arbitrate. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857-58 (2010). It is true that federal courts follow a policy favoring arbitration, but only if a valid agreement to arbitrate exists. *Id.* at 2859-60. Furthermore, while courts favor enforcing arbitration provisions that exist, courts are not predisposed to find parties agreed to arbitration. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F. 3d 156, 160 (3d Cir. 2009). Instead, when deciding whether or not there is an agreement to arbitrate, courts will apply standard principles of contract formation. Where the language in the contract is unambiguous, courts will determine intent from the contract language itself without considering extrinsic evidence. *IDT Corp. v. Tyco Group*, 13 N.Y. 3d 209, 214 (2009); *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 139 (2d Cir. 2000).[8]

---

[8]  New York Law governs the IFSA. IFSA, ¶ 16(a).

11

The EMEA Debtors rely on Paragraph 12 of the IFSA as proof of the Nortel Parties' intent to arbitrate.  Paragraph 12 just does not provide such proof.  The Nortel Parties are all sophisticated and are represented by highly capable lawyers.[9]  They were surely proficient at drafting an arbitration clause, and did not.  Instead, Paragraph 12(c) of the IFSA provides that the Nortel Parties will negotiate and attempt to reach agreement on a protocol for resolving allocation.  Paragraph 12(a), in turn, provides that the parties will enter into future sales agreements even in the absence of a binding procedure for resolving allocation issues.  The Nortel Parties also did not agree to the terms of arbitration, including: who, how many, how selected, where they would sit, right to appeal.  The absence of these important terms further evidences that the parties did not even approach any agreement on arbitration.  *See also Bor Corp. v. ADT Automotive, Inc.*, Case No. 96 Civ. 1019 (JFK),1996 WL 689364 *10 (S.D.N.Y., Nov. 27, 1996) (holding that the absence of the word "arbitrate" is highly significant to finding the absence of the intent to arbitrate).  In *Bor*, the parties had agreed that they would negotiate to hire Ernst & Young or another "dispute resolver."  The parties also agreed that the arbitration results would be binding.  Even with the apparent arbitration understanding between the parties, the court denied the motion to arbitrate, finding that the parties involved were sophisticated entities who, had they wanted arbitration, would have used the term or a derivative.  *Bor* at *10.

---

[9]  *See Truck Drivers, Oil Drivers, Filling Station & Platform Workers' Union Local 705, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. (AFL-CIO) v. Schneider Tank Lines, Inc.*, 958 F.2d 171, 175 (7th Cir. 1992), finding that an agreement unambiguously omitted arbitration provisions where it "strained credulity" that parties forgot to include them.

The Court must also consider the U.S. IFSA Order which requires that "no ... protocol for allocation of proceeds from a Sale Transaction may become effective without the prior approval of this Court . . ." Both the IFSA and the U.S. IFSA Order are entirely consistent with the Bankruptcy Rules. The parties must stipulate and the Court must approve arbitration when there is a controversy affecting the estate. Fed. R. Bankr. P. 9019(c), *accord.* Del. Bankr. L.R. 9013-3(b)(i) (requiring consent to arbitration to be "freely and knowingly obtained").

The only language in the IFSA upon which the EMEA Debtors attempt to gain a foothold for their arbitration argument is the term "dispute resolvers." IFSA, ¶ 12(c). The Court is not at all persuaded by this argument. The Courts - and there are two here - are, of course, "dispute resolvers." As the U.S. Debtors show, numerous decisions identify courts as "dispute resolvers." *See*, *e.g.*, *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 292 (5th Cir. 2007); *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002); *Armster v. U.S. Dist. Court for Cent. Dist. of California*, 806 F.2d 1347, 1350, n.2 (9th Cir. 1986); *Farber v. Job*, 467 F. Supp. 163, 170 (D.N. J. 1978). The EMEA Debtors' argument for the significance of "dispute resolvers" is further weakened by their reliance upon *Palumbo v. Select Mgmt. Holdings, Inc.*, No. 82900, 2003 WL 22674397 (Ohio Ct. App. Nov. 13, 2003) and its contrast to the facts here. The EMEA Debtors cite the case to show that "dispute resolver" refers to arbitration. *Palumbo* is inapposite because the parties had defined the term as referring to an accounting firm as arbitrator. *Id.* @ *1. The parties

13

in *Palumbo* had also agreed to detailed procedures for the arbitration (*Id. @* *2), which the Nortel Parties never did.

The IFSA is unambiguous in providing that it is for the Courts, and not an arbitrator or arbitrators, to determine the allocation issues.[10]  Under such circumstances, the Court is obliged to give effect to its plain meaning.  *Vintage LLC v. Laws Constr. Corp.*, 13 N.Y.3d 847, 849-50 (2009).  In particular, *Pavarini McGovern, LLC v. Tag Court Square, LLC*, 878 N.Y.S. 2d 419-20 (2d Dep't 2009), describes the circumstances present before the Court:

> When interpreting a commercial contract negotiated by and entered into at arm's length between sophisticated business people, represented by an attorney, a court must enforce the agreement according to its terms, and extrinsic and parole evidence is not admissible to create an ambiguity in a written agreement that is complete, clear, and unambiguous on its face.

The Court does not hesitate to find that the IFSA, entered into at arm's length, between sophisticated business people, represented by highly capable lawyers, unambiguously states the agreement that the Courts retain jurisdiction to resolve allocation disputes.

### 3.  Proceeding by Motion

The Joint Administrators urge the Court to rule that the U.S. Debtors were required to proceed by filing an adversary complaint.  The Court disagrees.  The Joint Motion is an effort to enforce an agreement, the IFSA, which the Court approved by the U.S. IFSA Order.

---

[10]  The EMEA Debtors do not argue there is any ambiguity in the term "dispute resolvers."  Instead, they argue that the term clearly calls for arbitration.

14

*See*, *e.g.*, *In re Worldcorp. Inc.*, 252 B.R. 890-95 (Bankr. D. Del. 1999) (holding that where a party seeks to enforce a prior order, it is not required to commence an adversary proceeding). The Court also recognizes the irony that the Joint Administrators' proceeded by objection and cross-motion, not by complaint.

## **CONCLUSION**

The Nortel Parties did not agree to arbitrate and the Court will not - indeed cannot - compel arbitration. The Court has jurisdiction and the IFSA is the call for the submission of an allocation protocol, which will define the procedures for a joint evidentiary hearing to determine allocation. The Court will issue an Order consistent with its decision.

Dated: April 3, 2013

KEVIN GROSS, U.S.B.J.

15

1192

**EXHIBIT C**

**Schedule "A"**

**ALLOCATION PROTOCOL**

1. <u>Purpose</u>.  The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors[1] ("<u>Allocation</u>", and any hearing regarding same, an "<u>Allocation Protocol Hearing</u>," and any discovery regarding same, "<u>Allocation Protocol Discovery</u>"). Subject to paragraph 5 hereof, creditor claims, including but not limited to intercompany claims by and between any Nortel entities, their representatives or successors ("<u>Intercompany Claims</u>") are not governed by this Allocation Protocol.  All Intercompany Claims between the U.S. Debtors and Canadian Debtors shall be determined in accordance with the Cross-Border Protocol and the Cross-Border Claims Protocol.  All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made.

2. <u>Participants</u>.  Each of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators and the CCC (collectively, the "<u>Core Parties</u>," and each individually, a "<u>Core Party</u>") and their authorized representatives shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith.  The foregoing is without prejudice to (x) the right of any other party in interest to file written submissions in support of or in opposition to any theory of allocation advanced at any Allocation Protocol Hearing before the U.S. and Canadian Courts or request permission to become a Core Party and fully participate in the foregoing, which request shall be made by motion on notice to the Core Parties for cause shown to both the U.S. and Canadian Courts, or (y) the power of the U.S. and Canadian Courts to adopt procedures to manage the Allocation Protocol Hearings and related proceedings.

3. <u>Cross-Border Protocol</u>.  Any and all Allocation Protocol Hearings shall proceed in accordance with the Cross-Border Protocol, unless otherwise ordered by the U.S. and Canadian Courts.

4. <u>Procedures</u>.  The U.S. and Canadian Courts will determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery. After hearing the procedural submissions of the Core Parties and taking into account the discovery already conducted to date in connection with the non-binding mediation sessions, the Allocation Protocol Discovery and Allocation Protocol Hearings shall proceed in an expeditious manner.

    a. <u>Pleadings</u>.  The Core Parties will exchange pleadings, which they shall be entitled to amend, from time to time, in accordance with the usual practice of

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in ⬤.

- 5 -

the U.S. and Canadian Courts. There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation.

b. <u>Fact Discovery</u>. The U.S. and Canadian Courts will facilitate the Core Parties' exchange of fact discovery by determining the following:

    i.    the deadline for, and acceptable manners of service of, reasonable requests for the production of non-privileged documents on any other Core Party;

    ii.    the deadline for objections to any Core Party's document requests;

    iii.    the deadline for identification of fact witnesses and number of fact witnesses allowed;

    iv.    the process for compelling attendance of fact witnesses at depositions; and

    v.    the deadline for completion of depositions, the number of depositions permitted, and the location of and time allowed for such depositions for each Core Party.

c. <u>Experts</u>. The U.S. and Canadian Courts shall facilitate expert discovery by determining the following:

    i.    the deadline for and format of expert reports (including exhibits);

    ii.    the deadline for and format of rebuttal expert reports (including exhibits); and

    iii.    the deadline for completion of expert depositions and the time allowed for such expert deposition.

d. <u>Joint Conferences</u>. The U.S. and Canadian Courts shall be available for joint conferences to resolve any discovery disputes among the Core Parties and to receive updates as to the status of the proceedings. The U.S. and Canadian courts will determine when joint conferences may be set.

e. <u>Joint Hearings</u>. The U.S. and Canadian Courts shall have joint hearings on the merits. The U.S. and Canadian Courts shall determine:

    i.    the date(s) for an opening hearing on the Core Parties' allocation positions (prior to factual discovery) and on the rules governing the joint hearing on the merits;

    ii.    the date(s) for an evidentiary hearing on the merits (after the close of fact and expert discovery and after the completion of written submissions) and the rules governing such hearing, during which opening and closing statements shall be made and cross-examination

- 6 -

and redirect examination of fact and expert witnesses shall take place; and

   iii.   the procedure for requesting or setting joint conferences as necessary to resolve any discovery disputes among the Core Parties or to receive updates to the status of the proceedings.

  f.  <u>Written Submissions</u>.  The U.S. and Canadian Courts will determine:

   i.   the deadline for and format of opening submissions (including exhibits);

   ii.   the deadline for and format of fact affidavits, if any, to accompany the opening submissions, which shall constitute the direct testimony of each fact witness;

   iii.   the deadline for and format of reply submissions (including exhibits); and

   iv.   the deadline for and format of fact affidavits, if any, to accompany the reply submissions.

5.  <u>EMEA Claims</u>.  Certain Intercompany Claims have been made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor against (a) the U.S. Debtors (the "<u>EMEA U.S. Claims</u>") and (b) the Canadian Debtors (the "<u>EMEA Canadian Claims</u>" (and together with the EMEA U.S. Claims, the "<u>EMEA Claims</u>")).  The U.S. Debtors intend to file promptly motions with the U.S. Court to dismiss the EMEA U.S. Claims.  The Canadian Debtors may file motions with the Canadian Court to dismiss the EMEA Canadian Claims.

6.  <u>Decisions</u>.  The U.S. and Canadian Courts will (a) hold simultaneously (i) the Allocation Protocol Hearings, (ii) hearings before the U.S. Court on the merits of any remaining EMEA U.S. Claims, and (iii) hearings before the Canadian Court on the merits of any remaining EMEA Canadian Claim, provided, however, that the U.S. and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only EMEA US Claims or only EMEA Canadian Claims, and (b) issue their respective decisions on (i), (ii) and (iii).

6.  <u>Appeals</u>.  The Core Parties shall have their usual rights of appeal from all interlocutory and final decisions of the U.S. and Canadian Courts.

# EXHIBIT D

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------X
                                           :
In re                                      :
                                           :
Nortel Networks Inc., et al.,1             :
                                           :
                          Debtors.         :
                                           :
                                           :
----------------------------------------------------------X
```

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**RE: D.I. 5307 and 9947**

## CERTIFICATION OF COUNSEL
## REGARDING ALLOCATION PROTOCOL

       I, Ann C. Cordo, counsel for Nortel Networks Inc. and certain of its affiliates, as

debtors and debtors in possession in the above-captioned cases (collectively, the "US Debtors"),

hereby certify as follows regarding the US Debtors' proposed allocation protocol (the "2013

Allocation Protocol"), attached as **Exhibit A** hereto; the blackline comparison between the 2013

Allocation Protocol and the 2011 Allocation Protocol (as defined below), attached as **Exhibit B**

hereto; and the blackline comparison between the 2013 Allocation Protocol and the Monitor's

2013 Allocation Protocol (as defined below), attached as **Exhibit C** hereto.

       1.     As explained fully herein, the US Debtors believe that the way to expedite

the litigation is for the Court to enter an order, subject to modification by agreement of the Core

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Parties[2] and/or order of the Courts, (i) adopting **Exhibit A** as the Allocation Protocol, (ii) ordering April 30, 2013 as the date by which the Core Parties must file opening written submissions on Allocation and May 14, 2013 for any reply submissions, if any, on Allocation, as described fully below in paragraph 15, or alternatively scheduling a joint hearing to establish the deadline for such opening and reply submissions, and (iii) setting a date for a joint hearing with the Canadian Court as soon as practicable to address additional scheduling and discovery planning issues.

2.  On April 25, 2011, the US Debtors and the Committee filed the *Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief* [D.I. 5307] (the "U.S. Allocation Motion") for the approval of an allocation protocol establishing procedures for the cross-border resolution by the U.S. and Canadian Courts of the Allocation dispute.

3.  On June 2, 2011, the US Debtors and the Committee filed the *Reply Memorandum in Further Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, and in Response to the EMEA Debtors' Cross-Motion to Compel Arbitration* [D.I. 5571], along with an amended allocation protocol, which was attached thereto as Exhibit A (the "2011 Allocation Protocol"). The 2011 Allocation Protocol was agreed to by the Canadian Debtors, the Monitor, and the CCC. The Canadian Debtors subsequently filed a motion for an order approving the 2011 Allocation Protocol in the Canadian Court (the "Canadian Allocation Motion").

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the 2013 Allocation Protocol, attached as Exhibit A.

4. On March 8, 2013, the U.S. and Canadian Courts granted the U.S. Allocation Motion and the Canadian Allocation Motion respectively, stating that reasons were to follow. Both the U.S. and Canadian Courts ordered that the version of the allocation protocol to be entered was to follow the 2011 Allocation Protocol with limited exceptions.

5. On April 3, 2013, the U.S. Court issued its *Opinion* [D.I. 9946] and *Order Approving Allocation Protocol* [D.I. 9947] (the "April 3 Order"), which granted the U.S. Allocation Motion and ordered the parties to negotiate the terms of an Allocation Protocol consistent with the U.S. Court's Opinion. The U.S. Court further ordered that the US Debtors were to submit their proposal for the Allocation Protocol to all other parties on or before April 8, 2013, and thereafter the parties were to submit to the U.S. Court their versions of the Allocation Protocol on or before April 15, 2013.

6. Also on April 3, 2013, the Canadian Court issued an Endorsement (the "April 3 Endorsement"), which provided the reasons for the Canadian Court's March 8, 2013 decision granting the Canadian Allocation Motion. The Canadian Court ordered that certain amendments be made to the 2011 Allocation Protocol, and that the amended Allocation Protocol must be filed with the Canadian Court by April 15, 2013.

7. Both the U.S. Court's April 3 Order and the Canadian Court's April 3 Endorsement set a trial date commencing on January 6, 2014 for Allocation, EMEA Claims and UK Pension Claims.

8. Pursuant to the U.S. Court's April 3 Order, the US Debtors circulated a draft of the 2013 Allocation Protocol to the other Core Parties on April 8, 2013. Thereafter, the US Debtors met and conferred with the other Core Parties regarding the draft and incorporated their comments into the 2013 Allocation Protocol, which is attached hereto as **Exhibit A.** A

3

blackline is attached hereto as **Exhibit B**, which compares the 2013 Allocation Protocol and the 2011 Allocation Protocol.

9.      The 2013 Allocation Protocol has been accepted in its current form by the Committee, the Bondholders, each of the Indenture Trustees, and the Directors and Officers. The UK Pension Claimants provided comments, some of which are incorporated in the 2013 Allocation Protocol.  The EMEA Debtors also provided comments, but did so without prejudice to their objection to addressing Allocation in the manner set forth in the Allocation Protocol.

10.      Pursuant to the Canadian Court's April 3 Endorsement, the Monitor is also submitting an Allocation Protocol to the Canadian Court today (the "Monitor's 2013 Allocation Protocol"), to which the CCC provided comments.  A blackline that compares the 2013 Allocation Protocol and the Monitor's 2013 Allocation Protocol is attached hereto as **Exhibit C**. The US Debtors and the Monitor are in near agreement as to the form of the Allocation Protocol. However, the US Debtors' 2013 Allocation Protocol differs in two respects from the Monitor's 2013 Allocation Protocol.

11.      First, the Monitor's 2013 Allocation Protocol adds the phrase "and such other parties as the U.S. Court and the Canadian Court may direct" immediately following the definition of Core Parties in paragraph 2 of the 2013 Allocation Protocol.  While the US Debtors recognize that the Canadian Court's April 3 Endorsement provides that there should not be specified restrictions on Core Parties, the US Debtors submit that every party who has requested Core Party status is granted such status in the 2013 Allocation Protocol submitted by the US Debtors (and the Monitor).  In addition, after the Allocation Order is entered by the U.S. and Canadian Courts, expedited discovery will begin in anticipation of the January 6, 2014 trial date. Therefore, the Core Parties have an interest in finality with respect to who is a Core Party in the

4

Allocation dispute and it is contrary to the interest of justice and efficiency to leave open the possibility that additional Core Parties will be named, especially when no such other party has indicated an interest in Core Party status and it is important that limits be places on the litigation for it to be manageable.  Therefore, given the Canadian Court's comment that the Allocation Protocol should be kept "substantially in the form of [the 2011 Allocation Protocol]," the US Debtors have left the phrase "and such other parties as the U.S. Court and the Canadian Court may direct" in brackets in Paragraph  2 of their 2013 Allocation Protocol and propose that the Courts are able to strike it given the express inclusion of the additional parties within the definition.[2]

12.     Second, the Monitor proposes removing the phrase "the date(s) for an opening hearing on the Core Parties' allocation positions (prior to factual discovery) and on" in paragraph 4(e)(i) in the 2013 Allocation Protocol.  The US Debtors agree that there is a consensus among the Core Parties that an opening hearing on the competing allocation positions is no longer desired or necessary.  However, the US Debtors believe that making this or any other change to the 2013 Allocation Protocol beyond the limited amendments contemplated by the Canadian Court's April 3 Endorsement is inconsistent with the Canadian Court's mandate to keep the 2013 Allocation Protocol "substantially in the form of [the 2011 Allocation Protocol]." The US Debtors, however, have no objection if the Courts strike this phrase.

13.     In an effort to move these proceedings diligently in order to meet the January 6, 2014 trial date, in addition to the Allocation Protocol, the US Debtors circulated on April 8, 2013 to the other Core Parties for Allocation and as parties to the US and Canadian EMEA and UK Pension Claims a proposed schedule (the "Litigation Timetable") and

---

[2]     The US Debtors note that Core Parties are designated as such solely for purpose of the Allocation litigation and  reserve their rights regarding the request of any of the Core Parties to participate in the litigation of  the EMEA Claims and the UK Pension Claims, or any other claims brought against the Debtors.

5

comprehensive plan for coordinating discovery (the "Discovery Plan") that would apply to discovery in both the Allocation dispute and the EMEA and UK Pension Claims.[3]  The US Debtors indicated their desire to submit these consensually negotiated documents to the Courts with the 2013 Allocation Protocol and requested prompt responses.  Unfortunately, even though it appears that the parties are in agreement on many points regarding scheduling and discovery (as the US Court was advised previously in writing and at the March 26, 2013 status conference), the US Debtors have not received sufficient feedback from a number of Core Parties and are thus not in a position to file the Litigation Timetable or Discovery Plan today.

14.     Notwithstanding the foregoing, no parties have objected that opening written submissions, as defined in paragraph 4(f)(i) of the 2013 Allocation Protocol, should be filed on April 30 and that reply submissions, if any, as defined  in paragraph 4(f)(iii) of the 2013 Allocation Protocol, should be filed on May 14.  The parties further agree that the fact affidavits described in paragraphs 4(f)(ii) and (iv) of the 2013 Allocation Protocol are unnecessary.

15.     As such, while the parties continue to meet and confer regarding the other interim deadlines, the US Debtors respectfully request that the Court so-order the deadlines of April 30 and May 14 for opening written submissions and reply written submissions, if any, respectively, pursuant to paragraphs 4(f)(i) and (iii) of the 2013 Allocation Protocol, or arrange for a joint hearing promptly to set a deadline for opening submissions.  It was discussed among the parties that such opening written submissions filed in this Court would be styled as "Motions for Approval of Allocation Position of [Identifier of Core Party]," and would set out with reasonable particularity the relief sought with respect to Allocation, the material facts relied

---

[3]     Earlier versions were circulated on March 19.

6

upon, and the legal bases for such position.  The reply written submissions would set out the Core Party's response to the arguments set forth in the opening written submissions.

16.     Given the significant amount of work that must be performed prior to the January 6, 2014 trial date, the US Debtors believe that entry of a Litigation Timetable and Discovery Plan must be done promptly.  Accordingly, the US Debtors respectfully request that the U.S. Court schedule a joint hearing with the Canadian Court to resolve the scheduling and discovery issues and enter orders adopting a Litigation Timetable and Discovery Plan.  The US Debtors are prepared to submit their proposed Litigation Timetable and Discovery Plan— substantially similar to the forms of documents the other Core Parties have had for approximately one month—and seek instruction from the Court with regard to such submissions prior to any joint hearing

17.     The US Debtors will provide a copy of this submission to the Canadian Court by letter requesting identical relief as requested herein.

WHEREFORE, the US Debtors respectfully request that the Court enter an order, subject to modification only by agreement of the parties and/or order of the Courts, (i) adopting **Exhibit A** as the Allocation Protocol (ii) ordering April 30, 2013 as the date by which the Core Parties must file opening written submissions on Allocation and May 14, 2013 for any reply submissions, if any, on Allocation, as described above in paragraph 15, or alternatively scheduling a joint hearing to establish the deadline for such opening and reply submissions, (iii) setting a date for a joint hearing with the Canadian Court as soon as soon as practicable to address the outstanding scheduling and discovery planning issues, and instructing the Core Parties with regard to the submission of proposed Litigation Timetables and Discovery Plans in advance of such hearing, and (iv) grant such other and further relief as is just and proper.

7

Dated:  April 15, 2013
          Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

          - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

8

**Exhibit A – 2013 Allocation Protocol**

## ALLOCATION PROTOCOL

1. <u>Purpose</u>.  The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors[1] ("<u>Allocation</u>," and any hearing regarding same, an "<u>Allocation Protocol Hearing</u>," and any discovery regarding same, "<u>Allocation Protocol Discovery</u>").  Subject to paragraphs 5 and 6 hereof, creditor claims, including but not limited to intercompany claims by and between any Nortel entities, their representatives or successors ("<u>Intercompany Claims</u>") are not governed by this Allocation Protocol.  All Intercompany Claims between the U.S. Debtors and Canadian Debtors shall be determined in accordance with the Cross-Border Protocol and the Cross-Border Claims Protocol.  All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made.

2. <u>Participants</u>.  Each of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators, the CCC, the Indenture Trustees, the UK Pension Claimants, and the Directors and Officers [and such other parties as the U.S. Court and the Canadian Court may direct] (collectively, the "<u>Core Parties</u>," and each individually, a "<u>Core Party</u>") and their authorized representatives shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith.  The foregoing is without prejudice to (x) the right of any other party in interest to file written submissions in support of or in opposition to any theory of allocation advanced at any Allocation Protocol Hearing before the U.S. and Canadian Courts or request permission to become a Core Party and fully participate in the foregoing, which request shall be made by motion on notice to the Core Parties for cause shown to both the U.S. and Canadian Courts, or (y) the power of the U.S. and Canadian Courts to adopt procedures to manage the Allocation Protocol Hearings and related proceedings.

3. <u>Cross-Border Protocol</u>.  Any and all Allocation Protocol Hearings shall proceed in accordance with the Cross-Border Protocol, unless otherwise ordered by the U.S. and Canadian Courts.

4. <u>Procedures</u>.  The U.S. and Canadian Courts will determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery. After hearing the procedural submissions of the Core Parties and taking into account the discovery already conducted to date in connection with the non-binding mediation sessions, the Allocation Protocol Discovery and Allocation Protocol Hearings shall proceed in an expeditious manner.

    a. <u>Pleadings</u>.  The Core Parties will exchange pleadings, which they shall be entitled to amend, from time to time, in accordance with the usual practice of

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Appendix A.

the U.S. and Canadian Courts.  There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation.

b.  <u>Fact Discovery</u>.  The U.S. and Canadian Courts will facilitate the Core Parties' exchange of fact discovery by determining the following:

    i.  the deadline for, and acceptable manners of service of, reasonable requests for the production of non-privileged documents on any other Core Party;

    ii.  the deadline for objections to any Core Party's document requests;

    iii.  the deadline for identification of fact witnesses and number of fact witnesses allowed;

    iv.  the process for compelling attendance of fact witnesses at depositions; and

    v.  the deadline for completion of depositions, the number of depositions permitted, and the location of and time allowed for such depositions for each Core Party.

c.  <u>Experts</u>.  The U.S. and Canadian Courts shall facilitate expert discovery by determining the following:

    i.  the deadline for and format of expert reports (including exhibits);

    ii.  the deadline for and format of rebuttal expert reports (including exhibits); and

    iii.  the deadline for completion of expert depositions and the time allowed for such expert deposition.

d.  <u>Joint Conferences</u>.  The U.S. and Canadian Courts shall be available for joint conferences to resolve any discovery disputes among the Core Parties and to receive updates as to the status of the proceedings.  The U.S. and Canadian courts will determine when joint conferences may be set.

e.  <u>Joint Hearings</u>.  The U.S. and Canadian Courts shall have joint hearings on the merits.  The U.S. and Canadian Courts shall determine:

    i.  [the date(s) for an opening hearing on the Core Parties' allocation positions (prior to factual discovery) and on] the rules governing the joint hearing on the merits;

    ii.  the date(s) for an evidentiary hearing on the merits (after the close of fact and expert discovery and after the completion of written submissions) and the rules governing such hearing, during which opening and closing statements shall be made and cross-examination

and redirect examination of fact and expert witnesses shall take place; and

    iii.    the procedure for requesting or setting joint conferences as necessary to resolve any discovery disputes among the Core Parties or to receive updates to the status of the proceedings.

   f.   <u>Written Submissions</u>.  The U.S. and Canadian Courts will determine:

    i.    the deadline for and format of opening submissions (including exhibits);

    ii.    the deadline for and format of fact affidavits, if any, to accompany the opening submissions, which shall constitute the direct testimony of each fact witness;

    iii.    the deadline for and format of reply submissions (including exhibits); and

    iv.    the deadline for and format of fact affidavits, if any, to accompany the reply submissions.

5.   <u>EMEA Claims</u>.  Certain Intercompany Claims have been made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor and by Nortel Networks AG and Nortel Networks AS against (a) the U.S. Debtors (the "<u>EMEA U.S. Claims</u>"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors and the Directors and Officers (the "<u>EMEA Canadian Claims</u>" (and together with the EMEA U.S. Claims, the "<u>EMEA Claims</u>")).  The Canadian Debtors and the Directors and Officers may file motions with the Canadian Court to dismiss the EMEA Canadian Claims.

6.   <u>UK Pension Claims</u>.  Certain claims have been made by the UK Pension Claimants against (a) the U.S. Debtors (the "<u>UK Pension US Claims</u>"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors (the "<u>UK Pension Canadian Claims</u>" (and together with the UK Pension US Claims, the "<u>UK Pension Claims</u>")).  The Canadian Debtors may file motions with the Canadian Court to dismiss the UK Pension Canadian Claims.

7.   <u>Decisions</u>.  The U.S. and Canadian Courts will (a) hold simultaneously (i) the Allocation Protocol Hearings, (ii) hearings before the U.S. Court on the merits of any remaining EMEA U.S. Claims and UK Pension US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining EMEA Canadian Claim and UK Pension Canadian Claims, provided, however, that the U.S. and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only EMEA US Claims and/or UK Pension US Claims or only EMEA Canadian Claims and/or UK Pension Canadian Claims, and (b) issue their respective decisions on (i), (ii) and (iii).  The trial for this matter is scheduled to commence on January 6, 2014.  The trial will begin with the Allocation issues and continue thereafter with remaining issues to

be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims.

8. <u>Appeals</u>.  The Core Parties shall have their usual rights of appeal from all interlocutory and final decisions of the U.S. and Canadian Courts.

**Appendix A**

Bondholder Group:  The ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI, and Nortel Networks Capital Corporation

Canadian Court:  Ontario Superior Court of Justice (Commercial List)

Canadian Debtors:  Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), and Nortel Networks Global Corporation., Nortel Networks International Corporation and Nortel Networks Technology Corporation

CCC:  the ad hoc committee of major creditors having claims only against the Canadian Debtors comprised of: the former and disabled Canadian employees of the Canadian Debtors through their court-appointed representatives (the "Representatives for the Former and Disabled Employees"); the Canadian Auto Workers Union (the "CAW"); Morneau Shepell Ltd. as Administrator of Nortel's Canadian registered pension plans ("Morneau"); Superintendent of Financial Services of Ontario as Administrator of the Pension Benefits Guarantee Fund (the "Ontario Superintendent"); and the court-appointed representatives of the current and transferred employees of the Canadian Debtors ("Nortel Continuing Employee Committee")

Committee:  The Official Committee of Unsecured Creditors in the chapter 11 cases of the U.S. Debtors

Cross-Border Protocol:  Schedule A to the "Initial Order and Endorsement," entered by Canadian Court on January 14, 2009, as amended by Schedule A to the "Fifth Amended and Restated Initial Order," entered by the Canadian Court on February 15, 2011; and Exhibit B to the "Order Pursuant to 11 U.S.C. §§ 105(a) Approving Cross-Border Court-To-Court Protocol," entered by U.S. Court on January 15, 2009, as amended by Exhibit 1 to the "Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol," entered by the US Court on June 29, 2009

Cross-Border Claims Protocol:  Schedule A to the "Order Approving Cross-Border Claims Protocol," entered by Canadian Court on September 16, 2010; and Schedule B to the "Debtors' Motion for Entry of an Order Approving a Cross-Border Protocol on the Resolution of Claims," granted by the U.S. Court on September 16, 2010 pursuant to the "Order Pursuant to 11 U.S.C. §§ 105(a) and 502 Approving a Cross-Border Court-to-Court Claims Protocol"

Directors and Officers: Certain individuals as former directors and officers of NNC and/or NNL represented by Osler, Hoskin & Harcourt, LLP

EMEA Debtors:  Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited; Nortel Networks S.A.; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel Networks (Austria) GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks

Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International Finance & Holding BV and Nortel Networks France S.A.S.

Indenture Trustees:  (a) Wilmington Trust, National Association as successor indenture trustee pursuant to a trust indenture dated as of November 30, 1988, in respect of the 6.875% notes issued by Nortel Networks Limited; (b) The Bank of New York Mellon (i) as indenture trustee pursuant to a trust indenture dated as of July 5, 2006 among Nortel Networks Limited, as issuer, and Nortel Networks Corp. and Nortel Networks Inc., as guarantors, and (ii) as indenture trustee pursuant to an indenture dated as of March 28, 2007 among Nortel Networks Corp., as issuer, and Nortel Networks Limited and Nortel Networks Inc., as guarantors; and (c) Law Debenture Trust Company of New York as successor indenture trustee pursuant to a trust indenture dated as of February 15, 1996, in respect of the 7.875% notes issued by Nortel Networks Limited and Nortel Networks Capital Corp. and guaranteed by Nortel Networks Limited.

Joint Administrators:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris, as the Administrators in the insolvency proceedings pending in the United Kingdom for all EMEA Debtors except Nortel Networks (Ireland) Limited, and Alan Robert Bloom and David Martin Hughes as Administrators for Nortel Networks (Ireland) Limited

Monitor:  Ernst & Young Inc., in its capacity as the court-appointed monitor in the proceedings commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, in respect of the Canadian Debtors

Selling Debtors:  Canadian Debtors, U.S. Debtors, EMEA Debtors and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited

UK Pension Claimants:  The Trustee of the NNUK Pension Plan ("UK Pension Trustee") and the Board of the Pension Protection Fund ("PPF")

U.S. Court or US Court:  United States Bankruptcy Court for the District of Delaware

U.S. Debtors or US Debtors:  Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.

**Exhibit B – Blackline of 2013 Allocation Protocol**

## ~~Schedule "A"~~ALLOCATION PROTOCOL

1. <u>Purpose</u>.  The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors[1] ("<u>Allocation</u>~~"~~," and any hearing regarding same, an "<u>Allocation Protocol Hearing</u>," and any discovery regarding same, "<u>Allocation Protocol Discovery</u>").  Subject to ~~paragraph 5~~<u>paragraphs 5 and 6</u> hereof, creditor claims, including but not limited to intercompany claims by and between any Nortel entities, their representatives or successors ("<u>Intercompany Claims</u>") are not governed by this Allocation Protocol.  All Intercompany Claims between the U.S. Debtors and Canadian Debtors shall be determined in accordance with the Cross-Border Protocol and the Cross-Border Claims Protocol.  All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made.

2. <u>Participants</u>.  Each of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators ~~and the CCC~~, the CCC, the Indenture Trustees, the UK Pension Claimants, and the Directors and Officers [and such other parties as the U.S. Court and the Canadian Court may direct] (collectively, the "<u>Core Parties</u>," and each individually, a "<u>Core Party</u>") and their authorized representatives shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith.  The foregoing is without prejudice to (x) the right of any other party in interest to file written submissions in support of or in opposition to any theory of allocation advanced at any Allocation Protocol Hearing before the U.S. and Canadian Courts or request permission to become a Core Party and fully participate in the foregoing, which request shall be made by motion on notice to the Core Parties for cause shown to both the U.S. and Canadian Courts, or (y) the power of the U.S. and Canadian Courts to adopt procedures to manage the Allocation Protocol Hearings and related proceedings.

3. <u>Cross-Border Protocol</u>.  Any and all Allocation Protocol Hearings shall proceed in accordance with the Cross-Border Protocol, unless otherwise ordered by the U.S. and Canadian Courts.

4. <u>Procedures</u>.  The U.S. and Canadian Courts will determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery. After hearing the procedural submissions of the Core Parties and taking into account the discovery already conducted to date in connection with the non-binding mediation sessions, the Allocation Protocol Discovery and Allocation Protocol Hearings shall proceed in an expeditious manner.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in ~~●~~ Appendix A.

a.  <u>Pleadings</u>.  The Core Parties will exchange pleadings, which they shall be entitled to amend, from time to time, in accordance with the usual practice of the U.S. and Canadian Courts.  There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation.

b.  <u>Fact Discovery</u>.  The U.S. and Canadian Courts will facilitate the Core Parties' exchange of fact discovery by determining the following:

    i.  the deadline for, and acceptable manners of service of, reasonable requests for the production of non-privileged documents on any other Core Party;

    ii.  the deadline for objections to any Core Party's document requests;

    iii.  the deadline for identification of fact witnesses and number of fact witnesses allowed;

    iv.  the process for compelling attendance of fact witnesses at depositions; and

    v.  the deadline for completion of depositions, the number of depositions permitted, and the location of and time allowed for such depositions for each Core Party.

c.  <u>Experts</u>.  The U.S. and Canadian Courts shall facilitate expert discovery by determining the following:

    i.  the deadline for and format of expert reports (including exhibits);

    ii.  the deadline for and format of rebuttal expert reports (including exhibits); and

    iii.  the deadline for completion of expert depositions and the time allowed for such expert deposition.

d.  <u>Joint Conferences</u>.  The U.S. and Canadian Courts shall be available for joint conferences to resolve any discovery disputes among the Core Parties and to receive updates as to the status of the proceedings.  The U.S. and Canadian courts will determine when joint conferences may be set.

e.  <u>Joint Hearings</u>.  The U.S. and Canadian Courts shall have joint hearings on the merits.  The U.S. and Canadian Courts shall determine:

    i.  [the date(s) for an opening hearing on the Core Parties' allocation positions (prior to factual discovery) and on] the rules governing the joint hearing on the merits;

    ii.  the date(s) for an evidentiary hearing on the merits (after the close of fact and expert discovery and after the completion of written

submissions) and the rules governing such hearing, during which opening and closing statements shall be made and cross-examination and redirect examination of fact and expert witnesses shall take place; and

    iii.    the procedure for requesting or setting joint conferences as necessary to resolve any discovery disputes among the Core Parties or to receive updates to the status of the proceedings.

    f.    <u>Written Submissions</u>.  The U.S. and Canadian Courts will determine:

    i.    the deadline for and format of opening submissions (including exhibits);

    ii.    the deadline for and format of fact affidavits, if any, to accompany the opening submissions, which shall constitute the direct testimony of each fact witness;

    iii.    the deadline for and format of reply submissions (including exhibits); and

    iv.    the deadline for and format of fact affidavits, if any, to accompany the reply submissions.

5.    <u>EMEA Claims</u>.  Certain Intercompany Claims have been made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor and by Nortel Networks AG and Nortel Networks AS against (a) the U.S. Debtors (the "EMEA U.S. Claims"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors and the Directors and Officers (the "EMEA Canadian Claims" (and together with the EMEA U.S. Claims, the "EMEA Claims")).  The U.S. Canadian Debtors intend to file promptly and the Directors and Officers may file motions with the U.S. Canadian Court to dismiss the EMEA U.S. Claims.  The Canadian Debtors may file motions with the Canadian Court to dismiss the EMEA Canadian Claims. Canadian Claims.

6.    UK Pension Claims.  Certain claims have been made by the UK Pension Claimants against (a) the U.S. Debtors (the "UK Pension US Claims"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors (the "UK Pension Canadian Claims" (and together with the UK Pension US Claims, the "UK Pension Claims")).  The Canadian Debtors may file motions with the Canadian Court to dismiss the UK Pension Canadian Claims.

7.  6.  Decisions.  The U.S. and Canadian Courts will (a) hold simultaneously (i) the Allocation Protocol Hearings, (ii) hearings before the U.S. Court on the merits of any remaining EMEA U.S. Claims and UK Pension US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining EMEA Canadian Claim and UK Pension Canadian Claims, provided, however, that the U.S. and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument

−4−

that is relevant to only EMEA US Claims and/or UK Pension US Claims or only EMEA Canadian Claims and/or UK Pension Canadian Claims, and (b) issue their respective decisions on (i), (ii) and (iii).  The trial for this matter is scheduled to commence on January 6, 2014.  The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims.

8.   6.  Appeals.  The Core Parties shall have their usual rights of appeal from all interlocutory and final decisions of the U.S. and Canadian Courts.

– 5 –

## Appendix A

**Bondholder Group:** The ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI, and Nortel Networks Capital Corporation

**Canadian Court:** Ontario Superior Court of Justice (Commercial List)

**Canadian Debtors:** Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), and Nortel Networks Global Corporation., Nortel Networks International Corporation and Nortel Networks Technology Corporation

**CCC:** the ad hoc committee of major creditors having claims only against the Canadian Debtors comprised of: the former and disabled Canadian employees of the Canadian Debtors through their court-appointed representatives (the "Representatives for the Former and Disabled Employees"); the Canadian Auto Workers Union (the "CAW"); Morneau Shepell Ltd. as Administrator of Nortel's Canadian registered pension plans ("Morneau"); Superintendent of Financial Services of Ontario as Administrator of the Pension Benefits Guarantee Fund (the "Ontario Superintendent"); and the court-appointed representatives of the current and transferred employees of the Canadian Debtors ("Nortel Continuing Employee Committee")

**Committee:** The Official Committee of Unsecured Creditors in the chapter 11 cases of the U.S. Debtors

**Cross-Border Protocol:** Schedule A to the "Initial Order and Endorsement," entered by Canadian Court on January 14, 2009, as amended by Schedule A to the "Fifth Amended and Restated Initial Order," entered by the Canadian Court on February 15, 2011; and Exhibit B to the "Order Pursuant to 11 U.S.C. §§ 105(a) Approving Cross-Border Court-To-Court Protocol," entered by U.S. Court on January 15, 2009, as amended by Exhibit 1 to the "Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol," entered by the US Court on June 29, 2009

**Cross-Border Claims Protocol:** Schedule A to the "Order Approving Cross-Border Claims Protocol," entered by Canadian Court on September 16, 2010; and Schedule B to the "Debtors' Motion for Entry of an Order Approving a Cross-Border Protocol on the Resolution of Claims," granted by the U.S. Court on September 16, 2010 pursuant to the "Order Pursuant to 11 U.S.C. §§ 105(a) and 502 Approving a Cross-Border Court-to-Court Claims Protocol"

**Directors and Officers:** Certain individuals as former directors and officers of NNC and/or NNL represented by Osler, Hoskin & Harcourt, LLP

**EMEA Debtors:** Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited; Nortel Networks S.A.; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel Networks (Austria) GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks

–6–

Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International Finance & Holding BV and Nortel Networks France S.A.S.

Indenture Trustees: (a) Wilmington Trust, National Association as successor indenture trustee pursuant to a trust indenture dated as of November 30, 1988, in respect of the 6.875% notes issued by Nortel Networks Limited; (b) The Bank of New York Mellon (i) as indenture trustee pursuant to a trust indenture dated as of July 5, 2006 among Nortel Networks Limited, as issuer, and Nortel Networks Corp. and Nortel Networks Inc., as guarantors, and (ii) as indenture trustee pursuant to an indenture dated as of March 28, 2007 among Nortel Networks Corp., as issuer, and Nortel Networks Limited and Nortel Networks Inc., as guarantors; and (c) Law Debenture Trust Company of New York as successor indenture trustee pursuant to a trust indenture dated as of February 15, 1996, in respect of the 7.875% notes issued by Nortel Networks Limited and Nortel Networks Capital Corp. and guaranteed by Nortel Networks Limited.

Joint Administrators: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris, as the Administrators in the insolvency proceedings pending in the United Kingdom for all EMEA Debtors except Nortel Networks (Ireland) Limited, and Alan Robert Bloom and David Martin Hughes as Administrators for Nortel Networks (Ireland) Limited

Monitor: Ernst & Young Inc., in its capacity as the court-appointed monitor in the proceedings commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, in respect of the Canadian Debtors

Selling Debtors: Canadian Debtors, U.S. Debtors, EMEA Debtors and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited

UK Pension Claimants: The Trustee of the NNUK Pension Plan ("UK Pension Trustee") and the Board of the Pension Protection Fund ("PPF")

U.S. Court or US Court: United States Bankruptcy Court for the District of Delaware

U.S. Debtors or US Debtors: Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.

**Exhibit C – Blackline of Monitor's 2013 Allocation Protocol**

## ALLOCATION PROTOCOL

1. <u>Purpose</u>.  The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors[1]  ("<u>Allocation</u>," and any hearing regarding same, an "<u>Allocation Protocol Hearing</u>," and any discovery regarding same, "<u>Allocation Protocol Discovery</u>").  Subject to paragraphs 5 and 6 hereof, creditor claims, including but not limited to intercompany claims by and between any Nortel entities, their representatives or successors ("<u>Intercompany Claims</u>") are not governed by this Allocation Protocol.  All Intercompany Claims between the U.S. Debtors and Canadian Debtors shall be determined in accordance with the Cross-Border Protocol and the Cross-Border Claims Protocol.  All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made.

2. <u>Participants</u>.  Each of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators, the CCC, the Indenture Trustees, the UK Pension Claimants, and the Directors and Officers [and such other parties as the U.S. Court and the Canadian Court may direct] (collectively, the "<u>Core Parties</u>," and each individually, a "<u>Core Party</u>") and their authorized representatives shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith.  The foregoing is without prejudice to (x) the right of any other party in interest to file written submissions in support of or in opposition to any theory of allocation advanced at any Allocation Protocol Hearing before the U.S. and Canadian Courts or request permission to become a Core Party and fully participate in the foregoing, which request shall be made by motion on notice to the Core Parties for cause shown to both the U.S. and Canadian Courts, or (y) the power of the U.S. and Canadian Courts to adopt procedures to manage the Allocation Protocol Hearings and related proceedings.

3. <u>Cross-Border Protocol</u>.  Any and all Allocation Protocol Hearings shall proceed in accordance with the Cross-Border Protocol, unless otherwise ordered by the U.S. and Canadian Courts.

4. <u>Procedures</u>.  The U.S. and Canadian Courts will determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery. After hearing the procedural submissions of the Core Parties and taking into account the discovery already conducted to date in connection with the non-binding mediation sessions, the Allocation Protocol Discovery and Allocation Protocol Hearings shall proceed in an expeditious manner.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Appendix A.

a.  <u>Pleadings</u>.  The Core Parties will exchange pleadings, which they shall be entitled to amend, from time to time, in accordance with the usual practice of the U.S. and Canadian Courts.  There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation.

b.  <u>Fact Discovery</u>.  The U.S. and Canadian Courts will facilitate the Core Parties' exchange of fact discovery by determining the following:

   i.  the deadline for, and acceptable manners of service of, reasonable requests for the production of non-privileged documents on any other Core Party;

   ii.  the deadline for objections to any Core Party's document requests;

   iii.  the deadline for identification of fact witnesses and number of fact witnesses allowed;

   iv.  the process for compelling attendance of fact witnesses at depositions; and

   v.  the deadline for completion of depositions, the number of depositions permitted, and the location of and time allowed for such depositions for each Core Party.

c.  <u>Experts</u>.  The U.S. and Canadian Courts shall facilitate expert discovery by determining the following:

   i.  the deadline for and format of expert reports (including exhibits);

   ii.  the deadline for and format of rebuttal expert reports (including exhibits); and

   iii.  the deadline for completion of expert depositions and the time allowed for such expert deposition.

d.  <u>Joint Conferences</u>.  The U.S. and Canadian Courts shall be available for joint conferences to resolve any discovery disputes among the Core Parties and to receive updates as to the status of the proceedings.  The U.S. and Canadian courts will determine when joint conferences may be set.

e.  <u>Joint Hearings</u>.  The U.S. and Canadian Courts shall have joint hearings on the merits.  The U.S. and Canadian Courts shall determine:

   i.  ~~[the date(s) for an opening hearing on the Core Parties' allocation positions (prior to factual discovery) and on]~~ the rules governing the joint hearing on the merits;

   ii.  the date(s) for an evidentiary hearing on the merits (after the close of fact and expert discovery and after the completion of written submissions) and the rules governing such hearing, during which opening and closing statements shall be made and cross-examination and redirect examination of fact and expert witnesses shall take place; and

        iii.    the procedure for requesting or setting joint conferences as necessary to resolve any discovery disputes among the Core Parties or to receive updates to the status of the proceedings.

    f.    <u>Written Submissions</u>.  The U.S. and Canadian Courts will determine:

        i.    the deadline for and format of opening submissions (including exhibits);

        ii.    the deadline for and format of fact affidavits, if any, to accompany the opening submissions, which shall constitute the direct testimony of each fact witness;

        iii.    the deadline for and format of reply submissions (including exhibits); and

        iv.    the deadline for and format of fact affidavits, if any, to accompany the reply submissions.

5.    <u>EMEA Claims</u>.  Certain Intercompany Claims have been made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor and by Nortel Networks AG and Nortel Networks AS against (a) the U.S. Debtors (the "<u>EMEA U.S. Claims</u>"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors and the Directors and Officers (the "<u>EMEA Canadian Claims</u>" (and together with the EMEA U.S. Claims, the "<u>EMEA Claims</u>")).  The Canadian Debtors and the Directors and Officers may file motions with the Canadian Court to dismiss the EMEA Canadian Claims.

6.    <u>UK Pension Claims</u>.  Certain claims have been made by the UK Pension Claimants against (a) the U.S. Debtors (the "<u>UK Pension US Claims</u>"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors (the "<u>UK Pension Canadian Claims</u>" (and together with the UK Pension US Claims, the "<u>UK Pension Claims</u>")).  The Canadian Debtors may file motions with the Canadian Court to dismiss the UK Pension Canadian Claims.

7.    <u>Decisions</u>.  The U.S. and Canadian Courts will (a) hold simultaneously (i) the Allocation Protocol Hearings, (ii) hearings before the U.S. Court on the merits of any remaining EMEA U.S. Claims and UK Pension US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining EMEA Canadian Claim and UK Pension Canadian Claims, provided, however, that the U.S. and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only EMEA US Claims and/or UK Pension US Claims or only EMEA Canadian Claims and/or UK Pension Canadian Claims, and (b) issue their respective decisions on (i), (ii) and (iii).  The trial for this matter is scheduled to commence on January 6, 2014.  The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims.

8.    <u>Appeals</u>.  The Core Parties shall have their usual rights of appeal from all interlocutory and final decisions of the U.S. and Canadian Courts.

## Appendix A

**Bondholder Group**:  The ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI, and Nortel Networks Capital Corporation

**Canadian Court**:  Ontario Superior Court of Justice (Commercial List)

**Canadian Debtors**:  Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), and Nortel Networks Global Corporation., Nortel Networks International Corporation and Nortel Networks Technology Corporation

**CCC**:  the ad hoc committee of major creditors having claims only against the Canadian Debtors comprised of: the former and disabled Canadian employees of the Canadian Debtors through their court-appointed representatives (the "Representatives for the Former and Disabled Employees"); the Canadian Auto Workers Union (the "CAW"); Morneau Shepell Ltd. as Administrator of Nortel's Canadian registered pension plans ("Morneau"); Superintendent of Financial Services of Ontario as Administrator of the Pension Benefits Guarantee Fund (the "Ontario Superintendent"); and the court-appointed representatives of the current and transferred employees of the Canadian Debtors ("Nortel Continuing Employee Committee")

**Committee**:  The Official Committee of Unsecured Creditors in the chapter 11 cases of the U.S. Debtors

**Cross-Border Protocol**:  Schedule A to the "Initial Order and Endorsement," entered by Canadian Court on January 14, 2009, as amended by Schedule A to the "Fifth Amended and Restated Initial Order," entered by the Canadian Court on February 15, 2011; and Exhibit B to the "Order Pursuant to 11 U.S.C. §§ 105(a) Approving Cross-Border Court-To-Court Protocol," entered by U.S. Court on January 15, 2009, as amended by Exhibit 1 to the "Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol," entered by the US Court on June 29, 2009

**Cross-Border Claims Protocol**:  Schedule A to the "Order Approving Cross-Border Claims Protocol," entered by Canadian Court on September 16, 2010; and Schedule B to the "Debtors' Motion for Entry of an Order Approving a Cross-Border Protocol on the Resolution of Claims," granted by the U.S. Court on September 16, 2010 pursuant to the "Order Pursuant to 11 U.S.C. §§ 105(a) and 502 Approving a Cross-Border Court-to-Court Claims Protocol"

**Directors and Officers**: Certain individuals as former directors and officers of NNC and/or NNL represented by Osler, Hoskin & Harcourt, LLP

**EMEA Debtors**:  Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited; Nortel Networks  S.A.; Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel Networks (Austria) GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International Finance & Holding BV and Nortel Networks France S.A.S.

**Indenture Trustees**:  (a) Wilmington Trust, National Association as successor indenture trustee pursuant to a trust indenture dated as of November 30, 1988, in respect of the 6.875% notes issued by Nortel Networks Limited; (b) The Bank of New York Mellon (i) as indenture trustee pursuant to a trust indenture dated as of July 5, 2006 among Nortel Networks Limited, as issuer, and Nortel Networks Corp. and Nortel Networks Inc., as guarantors, and (ii) as indenture trustee pursuant to an indenture dated as of March 28, 2007 among Nortel Networks Corp., as issuer, and Nortel Networks Limited and Nortel Networks Inc., as guarantors; and (c) Law Debenture Trust Company of New York as successor indenture trustee pursuant to a trust indenture dated as of February 15, 1996, in respect of the 7.875% notes issued by Nortel Networks Limited and Nortel Networks Capital Corp. and guaranteed by Nortel Networks Limited.

**Joint Administrators**:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris, as the Administrators in the insolvency proceedings pending in the United Kingdom for all EMEA Debtors except Nortel Networks (Ireland) Limited, and Alan Robert Bloom and David Martin Hughes as Administrators for Nortel Networks (Ireland) Limited

**Monitor**:  Ernst & Young Inc., in its capacity as the court-appointed monitor in the proceedings commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, in respect of the Canadian Debtors

**Selling Debtors**:  Canadian Debtors, U.S. Debtors, EMEA Debtors and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited

**UK Pension Claimants**:  The Trustee of the NNUK Pension Plan ("UK Pension Trustee") and the Board of the Pension Protection Fund ("PPF")

**U.S. Court or US Court**:  United States Bankruptcy Court for the District of Delaware

**U.S. Debtors or US Debtors**:   Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.

1225

**EXHIBIT E**

Case 09-10138-KG Doc 10187-6 Filed 04/17/13 Page 2 of 4

**CITATION:** Nortel Networks Corporation, 2013 ONSC 1470
**COURT FILE NO.:** 09-CL-7950
**DATE:** 2013/03/08

## SUPERIOR COURT OF JUSTICE – ONTARIO
(COMMERCIAL LIST)

| | |
|---|---|
| **RE:** | IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED |

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS COROPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**BEFORE:** MORAWETZ J.

**COUNSEL:** *Derrick Tay and Jennifer Stam*, for Nortel Neworks Corporation

*Benjamin Zarnett, Fred. Myers* and *Jay Carfagnini* for Ernst & Young Inc., Monitor

*Mark Zigler, Ken Rosenberg, Arthur Jacques, Barry Wadsworth* and *Elder C. Marques* for Canadian Creditors' Committee

*Matthew P. Gottlieb, Robin B. Schwill* and *James Reinihan* for Nortel Networks UK Limited (in Administration)

*David Ward* for PPF/Trustee

*Adam Hirsh* for Former Directors & Officers of Nortel Networks Corporation and Nortel Networks Limited

*Andrew Gray* and *Scott Bomhof* for Nortel Networks Inc. and other U.S. Debtors

*John Salmas* for Wilmington Trust, National Association

- 2 -

*Sheryl Seigel* for the Bank of New York Mellon

*Richard Swan* and *Gavin Finlayson* for Informal Committee of Noteholders

*Shayne Kukulowicz*, *Ryan Jacobs* and *Mike Wunder* for Unsecured Creditors' Committee

*Edmond Lamek* for Law Debenture Trust Company of New York

**HEARD:**       March 7, 2013

**DECISION:**   March 8, 2013

# E N D O R S E M E N T

[1]     For reasons to follow, the motion of Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Canadian Debtors") for an order approving an Allocation Protocol, substantially in the form of Schedule "A" to the motion originally returnable June 7, 2011 is granted, subject to the following modifications:

> (i)  the Allocation Protocol is to be based on the protocol presented on the original return date, namely June 7, 2011, and is not to be based on the protocol presented during argument on March 7, 2013;

> (ii) the list of "core parties" referenced in paragraph (o)(iii) of the Motion Record is to be expanded.  Representations were received from numerous indenture trustees on March 7, 2013. These parties are to be included as "core parties"; and

> (iii) the Monitor is directed to provide the court with a revised list of proposed "core parties" for its consideration, balancing interests of natural justice as well as the objective to resolve outstanding issues in the most expeditious and least expensive manner possible.

[2]     The Monitor is also directed to coordinate input from the parties with respect to a litigation schedule.  Directions in respect of the litigation schedule will be addressed in the full reasons for this decision.

[3]     The cross motion of the Joint Administrators of Nortel Networks UK Limited, originally returnable June 7, 2011 requesting an order compelling and directing the parties to the Interim Funding and Settlement Agreement dated June 9, 2009 (the "IFSA") to engage in arbitration

- 3 -

regarding all disputes concerning the allocation of Sales Proceeds (as defined in the IFSA), is dismissed.

[4]     The appeal period in respect of this endorsement will commence on the date when full reasons are released, which date will coincide with the release of reasons of Chief Judge Kevin Gross of the United States Bankruptcy Court for the District of Delaware.

Morawetz, J.

**DATE:**         March 8, 2013

**EXHIBIT F**

**CITATION:** Nortel Networks Corporation (Re), 2013 ONSC 1757
**COURT FILE NO.:** 09-CL-7950
**DATE:** 20130403

**SUPERIOR COURT OF JUSTICE – ONTARIO**
**(COMMERCIAL LIST)**

RE:        **IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

                **AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION, Applicants**

BEFORE:     **MORAWETZ J.**

COUNSEL:   **D. Tay and J. Stam,** for Nortel Networks Corporation

               **B. Zarnett, J. Carfagnini and F. Myers,** for Ernst & Young Inc., the Monitor

               **M. Zigler, K. Rosenberg, A. Jacques, B. Wadsworth and E. Marques,** for the Canadian Creditors Committee

               **M. P. Gottlieb, J. Renihan and R. B. Schwill,** for Nortel Networks UK Limited (in Administration)

               **D. Ward,** for the UK Pension Trustees/PPF

               **A. Hirsh,** for the Former Directors and Officers of Nortel Networks Corporation and Nortel Networks Limited

               **A. Gray and S. Bomhof,** for Nortel Networks Inc. and other U.S. Debtors

               **J. Salmas,** for Wilmington Trust, National Association

               **S. Seigel,** for the Bank of New York Mellon

               **R. Swan and G. Finlayson,** for the Informal Committee of Noteholders

               **S. Kukulowicz, R. Jacobs, and M. Wunder,** for the Unsecured Creditors' Committee

               **E. Lamek,** for the Law Debenture Trust Company of New York

HEARD:      March 7, 2013

ENDORSED: March 8, 2013

REASONS:  April 3, 2013

## ENDORSEMENT

Background

[1]    On June 7, 2011, Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Canadian Debtors") brought a motion requesting approval of a proposed protocol (the "Allocation Protocol") for the allocation of proceeds of the sale of their assets, the assets of Nortel Networks Inc. and certain of its U.S. affiliates including Nortel Networks (CALA) Inc. (collectively, the "U.S. Debtors"), and the assets of Nortel Networks U.K. Limited and certain of its affiliates located in Europe, the Middle East and Africa (collectively, the "EMEA Debtors").

[2]    An endorsement in respect of this motion was released on June 17, 2011 (the "June 17 Endorsement").  It is attached as Schedule "A", and is incorporated by reference into this endorsement.

[3]    A further endorsement was released on June 29, 2011 (the "June 29 Endorsement").  It is attached as Schedule "B", and is incorporated by reference into this endorsement. While the mediation referenced in the June 17 Endorsement and June 29 Endorsement took place, it failed to be worthwhile and was consequently terminated by declaration of the mediator.

[4]    A further endorsement was released on March 8, 2013 (the "March 8 Endorsement").  It is attached as Schedule "C", and is incorporated by reference into this endorsement. The March 8 Endorsement approved the Allocation Protocol, substantially in the form of Schedule "A" to the motion originally returnable June 7, 2011, with reasons to follow.  These are the reasons.

[5]    The parties' inability to resolve their differences is unfortunate, as approximately $9 billion, raised from various asset sales and other realizations, awaits distribution to Nortel's global creditors, and the significant time lapse is exacerbating the negative effects of the previously identified public-interest issues (see the June 29 Endorsement). The only positive development for stakeholders since June 2011 was the sale of Nortel's patent portfolio for proceeds exceeding $4 billion (substantially surpassing the $900 million estimated amount).

[6]    The sad reality for all creditors is that four years have passed from when Nortel filed for *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 ("CCAA") protection.

Interim Funding and Settlement Agreement

[7]    In June 2009, the Canadian Debtors, certain U.S. Debtors, and certain EMEA Debtors (collectively, the "Debtors") entered into an Interim Funding and Settlement Agreement ("IFSA"), which provided for cooperation in the global sale of Nortel's business units.

[8]    Under the IFSA, these parties agreed to "negotiate in good faith and attempt to reach agreement on a timely basis" on a protocol (the "Protocol") for resolving disputes concerning the allocation of sale proceeds ("Sale Proceeds") from sale transactions. Importantly, for the purpose of determining this motion, the parties agreed, to the "fullest extent permitted by applicable law", that any "claim, action or proceeding" seeking "any relief whatsoever to the extent relating to the matters agreed in [IFSA]" must be commenced in the U.S. Court and the Canadian Court, in a

1232

- Page 3 -

joint hearing of both courts under the cross-border protocol ("Cross-Border Protocol"), if such claim, action or proceeding would affect the Canadian Debtors and the U.S. Debtors or the EMEA Debtors.

[9]    Since the parties entered into the IFSA, they concluded several sales of global Nortel businesses and, in connection with these sales, they entered into escrow agreements ("Escrow Agreements"). These Escrow Agreements provided for the deposit of Sale Proceeds into escrow and the conditional distribution of the proceeds.

[10]    Significantly, under each Escrow Agreement, the parties irrevocably and unconditionally submitted to the exclusive jurisdiction of the U.S. Court and the Canadian Court, and agreed to be bound by any judgment arising "under or out of in respect of or in connection with" the Escrow Agreements.

<u>The Protocol/Allocation Protocol</u>

[11]    Failing to come to an agreement on a Protocol, after one-year of talks, prompted a suspension of negotiation between the parties.  The parties, according to the Canadian Debtors, specifically could not agree on the scope of the dispute to be determined under a Protocol and the dispute resolution process (for example, deciding whether the resolution should take the form of an arbitral award).

[12]    The parties subsequently attempted to reach a consensual resolution on these issues through mediation; however, mediation failed twice.

[13]    The U.S. Debtors and the Official Committee of Unsecured Creditors of the U.S. Debtors (the "Committee") subsequently filed this joint motion in the U.S. Court and the Canadian Court seeking orders approving the Allocation Protocol. The Canadian Debtors concurrently filed a motion seeking approval of the proposed Allocation Protocol, which they developed in conjunction with Ernst & Young Inc. (the "Monitor"), the U.S. Debtors, the Committee and others.

[14]    The Allocation Protocol proposed the following:

    (a) The Canadian Court and the U.S. Court would establish binding procedures, including discovery, for determining the allocation of the Sale Proceeds of the global sales to the Debtors' estates;

    (b) Creditor claims, including but not limited to intercompany claims, shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any intercompany claim is made;

    (c) The relevant Nortel selling entities (including the Debtors), the Committee, the Bondholder Group, the Monitor, the Joint Administrators (defined below) and the Ad Hoc Committee of Major Creditors Having Claims Only Against the Canadian Debtors would be "core parties" in the Allocation Protocol hearings, with full rights of participation.  Any other party in interest could seek to establish itself as a core party;

(d) The U.S. Debtors intend to file promptly motions with the U.S. Court to dismiss the EMEA Debtors' claims against the U.S. Debtors ("EMEA U.S. Claims").   The Canadian Debtors may file motions with the Canadian Court to dismiss the EMEA Debtors' claims against the Canadian Debtors ("EMEA Canadian Claims"); and

(e) The Canadian and U.S. Courts will hold, simultaneously, (i) a joint hearing regarding allocation of global proceeds and (ii) a hearing into unresolved EMEA Canadian Claims and EMEA U.S. Claims, provided that the Courts, in their discretion, may sit separately to hear evidence or argument that is relevant to only the Canadian or U.S. Debtors, respectively.  Each Court would then issue its respective decisions.

<u>Party Submissions</u>

[15]    The parties disagree on the following fundamental issues: whether an agreement to arbitrate was reached (and, correspondingly, whether the Canadian Court and U.S. Court should compel arbitration), whether the Canadian Court and U.S. Court have jurisdiction to approve the Allocation Protocol, and whether the parties negotiated the Protocol in good faith.

*Submissions of the Canadian Debtors and the Monitor*

[16]    The Monitor's submissions essentially corroborate, or expand on, the following submissions of the Canadian Debtors.

[17]    Because the parties were unable to successfully negotiate a Protocol, the Canadian Debtors requests that the Canadian Court exercise its discretionary power to determine allocation issues and accordingly order the parties to direct payments from the escrow funds. Pursuant to section 5 of the IFSA, Sale Proceeds of each significant global transaction may only be distributed if instructed jointly by the depositors and estate fiduciaries (very unlikely at this point) or where the parties have entered into a Protocol (as previously mentioned, the parties could not come to an agreement); however, the distribution agent is able to distribute the proceeds if there is an "any order, judgment or decree" made or entered by any court "affecting the property deposited under th[e] Agreement".

[18]    The Canadian Debtors argue that the court lacks requisite authority to compel the parties to arbitrate their disputes because there has been no agreement to arbitrate. The parties merely agreed, pursuant to section 12(c) of the IFSA, to "negotiate in good faith and <u>attempt</u> to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions". Further, section 12(b) of the IFSA does not constitute an agreement to arbitrate because it has none of the features typically found in an enforceable commercial arbitration agreement, does not provide any methodology for an arbitration and does not reference the word "arbitration". It reads as follows:

> 12(b) In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all of the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol (as defined below) applicable to the Sale Proceeds, and subject in each case to payment of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

[19]   The Canadian Debtors further argue that the parties submitted irrevocably and unconditionally to the exclusive jurisdiction of the Canadian Court and U.S. Court. For example, under their many Escrow Agreements, the parties "irrevocably submit[ed] to and accept[ed] for itself and its properties, generally and unconditionally to the exclusive jurisdiction of … the U.S. Bankruptcy Court for the District of Delaware and the Ontario Superior Court of Justice" and agreed to be bound by any judgment "arising under or out of in respect of or in connection with" the Escrow Agreements. In addition, the parties submitted all legal proceedings seeking "any relief whatsoever" to the extent "relating to" the matters agreed in the IFSA to the exclusive joint jurisdiction of the Canadian Court and U.S. Court, pursuant to section 16(b) of the IFSA, as follows:

> 16(b) To the fullest extent permitted by applicable law, each Party…(ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters agreed in this Agreement must be commenced in … a joint hearing of both the Canadian and US Courts conducted under the Cross-Border Protocol if such claim, action or proceeding would affect the Canadian Debtors and the US Debtors or the EMEA Debtors …

[20]   Finally, the Canadian Debtors claim that there is nothing to substantiate allegations that any party acted in bad faith. An agreement to negotiate in good faith, and attempt to reach agreement on a Protocol, does not require any party to ultimately acquiesce to an agreement.

*Submissions of the Joint Administrators of Nortel Networks U.K. Limited*

[21]   The Joint Administrators of Nortel Networks U.K. Limited (the "Joint Administrators"), acting as the court-appointed administrators and authorized foreign representatives for the EMEA Debtors, makes four submissions for dismissing this motion.

[22]   First, section 12(b) of the IFSA (articulated above) constitutes an enforceable arbitration clause to arbitrate the allocation of Sale Proceeds because it is a written agreement evidencing the intention of the parties to submit to binding *ad hoc* arbitration.  In exchange for the arbitration provision, which was designed to provide protection to each of the many worldwide Nortel entities by ensuring that they would have input into the Protocol and the appointment of the dispute resolvers, the parties agreed to give up significant rights in businesses and assets to enable the sale of Nortel's global assets to be completed without delay.

[23]   While the parties' agreement to arbitrate is clear on the face of the IFSA, any possible ambiguity is resolved by reviewing the negotiating history, surrounding circumstances, various courts understanding of how the allocation was to be determined, public statements and positions taken in negotiating a Protocol.

[24]   Second, neither the Canadian Court nor the U.S. Court has the jurisdiction to determine how the proceeds of the sale of the global Nortel assets and businesses should be divided among the estates of the various Nortel Debtors around the world. It is neither proper nor feasible for

courts of two independent nations to reach, in effect, a joint decision for the following three reasons:

- such a process violates the Cross-Border Protocol;

- the Ontario Court does not have jurisdiction to allocate Sale Proceeds that were outside the U.S. and Canada by entities outside the U.S. and Canada; and

- there are practical impediments to the Courts proceeding on the basis of a joint hearing regarding the Sale Proceeds allocation.

[25]    Third, and in the alternative, the Ontario Court has jurisdiction to order the Canadian Debtors to submit to arbitration under a panel of arbitrators. The proper role of the courts in their supervisory function in relation to the U.S. Debtors and Canadian Debtors is to require that the parties appoint an arbitration panel possessing the power to set a procedure for such arbitration.

[26]    Fourth, the parties to the IFSA made an enforceable promise to negotiate a Protocol for the arbitration procedures in good faith; counsel submits that there has been a *bona fide* failure in those negotiations.

[27]    In the Joint Administrators' supplementary submissions, counsel highlights practical problems invariably arising from the U.S. Court and Canadian Court trying to jointly address the division of assets among approximately 40 international entities. Counsel submits that it is unlikely that both courts independently will identically allocate the assets, resulting in conflicting decisions and no process for determining how to move forward.  Counsel also anticipates that the inevitable appeal process is not governed by a uniform set of procedural or legal rules.  The result would not only be years of litigation but potentially also two incompatible judgments, neither of which would be enforceable.

Analysis and Conclusion

[28]    I will assess the merits of the arguments made by all parties on the fundamental issues of divergence, in turn, before rendering my determination.

*Agreement to Arbitrate*

[29]    A common theme permeating the Joint Administrators' arguments is that the parties agreed to arbitrate. As I disagree with this underlying premise, I find many of their arguments to be inherently flawed.

[30]    Simply put, the parties agreed to enter into negotiations to agree on a Protocol; the best position of the Joint Administrators is an agreement to agree, which is unenforceable. I do not find the IFSA, or any of the documents, to be ambiguous in this regard.

[31]    A detailed review of the wording used in the Joint Administrators' argument is telling. The parties struck an <u>agreement</u> embodied in the IFSA; the parties would give up their…ownership rights in the assets to be sold in return for an <u>agreement</u> that, failing an agreement by the parties, the allocation of the sale proceeds would be decided in an arbitral form

- Page 7 -

that did not prejudice any of the parties by forcing any one of them to submit to the jurisdiction of a foreign court.

[32]   It could very well be that, from their standpoint, the asset sales were predicated on the allocation being decided by way of arbitration. However, in the IFSA, I am unable to find that the parties actually entered into an agreement to arbitrate.

[33]   Contrary to the Joint Administrators view that section 12(b) of the IFSA constitutes an enforceable arbitration clause, a plain and common-sense reading of this section leads to the conclusion that, if the objective of the provision was to create a mechanism for the distribution from the escrow account, the parties failed to achieve such objective. More particularly, section 12(b)(i) has not been met as there has been no agreement of all of the selling debtors; section 12(b)(ii) is irrelevant or inapplicable as the parties have failed to reach agreement on the terms of a Protocol.

*Court's Jurisdiction*

[34]   Conforming to the views espoused by the Canadian Debtors and the Monitor, I am satisfied that this court has discretionary authority under the CCAA to approve the Allocation Protocol. Considering, and potentially approving, the Allocation Protocol is consistent with the CCAA objectives of promoting efficiency and fairness by avoiding a multiplicity of inconsistent proceedings: *Re Muscletech Research and Development Inc.* (2006), 19 C.B.R. (5th) 54 (Ont. S.C.J.). This court's authority extends to the subject matter and the persons at issue here and this court has the authority to make the order sought approving the Allocation Protocol.

[35]   It is my view that all parties have irrevocably and unconditionally submitted to the jurisdiction of the Canadian Court and the U.S. Court.  This is established as a result of the jurisdiction clause in each of the Escrow Agreements, the filing of claims by the EMEA Debtors and section 16 of the IFSA.  In this respect, I accept the arguments put forth by the Canadian Debtors.

[36]   No compelling argument accompanied the Joint Administrators' assertion that this court has jurisdiction to order the Canadian Debtors to submit to arbitration under a panel of arbitrators. While there may be a presumption in favour of international arbitration, it presupposes that the parties have agreed to arbitrate (which is not the case in the present circumstances).

[37]   The objective of these proceedings must be, at this time, to ensure that the outcome is something that will be final and binding on all parties.  This can be accomplished, in my view, by a joint hearing of the matter with the Canadian Court and the U.S. Court.

[38]   I acknowledge the procedural difficulties identified by the Joint Administrators in their supplemental submissions, and I do not underestimate the challenges that lie ahead. However, all parties embraced joint or parallel hearings of the U.S. Court and the Canadian Court to bring forth a number of matters, most notably applications for approval of sales process and for approval of sales. Further, despite the different procedures in the U.S. Court and the Canadian Court, both courts have worked effectively with the result that billions of dollars are now available for distribution to the stakeholders.  I maintain confidence that the U.S. Court and the

Canadian Court will ensure that matters going forward are similarly dealt with in a fair and equitable manner.

[39]    Raising potential procedural issues is not sufficient to dismiss the motion of the Canadian Debtors.  Challenges of procedure will be addressed during the proceedings in the same way as procedural issues are addressed in numerous other proceedings that are brought before the court.

*Good Faith*

[40]    With respect to the Protocol negotiations, there is no shortage of conflicting viewpoints. Nevertheless, there is an overall lack of evidence either on the record, or in the parties' oral submissions, demonstrating that any party failed to negotiate the Protocol in good faith. To the contrary, there is evidence that all parties made efforts to come to a mutually beneficial agreement; as pointed out by the Canadian Debtors, failure to come to such an agreement does not necessarily evidence a lack of good faith in negotiations.

*Order*

[41]    Amendments must be made to the Allocation Protocol before it is approved, as mentioned in the March 8 Endorsement. I have specifically rejected the suggestion that there should be specified restrictions on "core parties" in the Allocation Protocol hearing; rather, I determined that certain indenture trustees should also be "core parties", and I invited suggestions as to whether there would be other "potential core parties".

[42]    I note that the U.S. Debtors filed motions with the U.S. Court to dismiss EMEA U.S. Claims, and a decision with respect to this issue has been rendered by Chief Judge Kevin Gross. The U.S. Debtors put forward an amended version of the Allocation Protocol at the March 7, 2013 hearing.  Given that substantial argument was based on the Allocation Protocol as originally presented, it is not appropriate, in my view, to consider amendments that were brought forth at the hearing which was not intended to receive new positions but rather to provide a summary of the positions previously brought forward.  The appropriate version of the Allocation Protocol to consider is the one that was previously brought before the court on June 7, 2011.

[43]    In the result, I grant the Canadian Debtors' motion and approve an amended Allocation Protocol, which incorporates the aforementioned amendments while remaining substantially in the form of Schedule "A" to the motion originally returnable June 7, 2011. The amended Allocation Protocol must be filed with this Court for approval by April 15, 2013.

[44]    By way of directions for scheduling, the trial for this matter is scheduled to commence on January 6, 2014. The trial will begin with the allocation issues and continue thereafter with remaining issues to be addressed in the Allocation Protocol, including EMEA Claims and U.K. Pension matters.

[45]    The cross-motion of the Joint Administrators, requesting an order compelling and directing the parties to the IFSA to engage in arbitration regarding all disputes concerning the allocation of Sale Proceeds, is dismissed.

MORAWETZ J.

**Date:**    April 3, 2013

SCHEDULE "A"

**CITATION:** Nortel Networks Corporation (Re), 2011 ONSC 3805
**COURT FILE NO.:** 09-CL-7950
**DATE:** 20110617

## SUPERIOR COURT OF JUSTICE - ONTARIO

**RE:**  IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION, Applicants

**BEFORE:**  MORAWETZ J.

**COUNSEL:**  Alan Mark, Derrick Tay, Alan Merskey and Jennifer Stam, for Nortel Networks Corporation et al

F. Myers, J. Pasquariello and C. Armstrong, for the Monitor, Ernst & Young Inc.

Mark Zigler, Andrea McKinnon, for the Former & Disabled Employees

G. Finlayson, R. Orzy and R. Swan, for the Noteholder Group

Lily Harmer and Max Starnino, for the Superintendent

S. Seigel, for the Bank of New York Mellon

Alex MacFarlane and Abid Quereshi, for the Official Committee of Unsecured Creditors

R. Paul Steep and Elder C. Marques, for Morneau Shepell

Barry Wadsworth, for CAW-Canada

M. P. Gottlieb, R. Schwill and S. Campbell, for the Joint Administrators

Bill Burden, for the U.K. Pension Trustee

Lyndon Barnes, for the Board of Directors of Nortel

Andrew Gray and Scott Bomhof, for the U.S. Debtors

Arthur O. Jacques, for Nortel NCCE

**HEARD:**      June 7, 2011

## ENDORSEMENT

[46]   On June 7, 2011, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Canadian Debtors") brought a motion requesting approval of an allocation protocol (the "Allocation Protocol").

[47]   A similar motion was also brought at the same time by Nortel Networks Inc. ("NNI") and certain of its U.S. affiliates (the "U.S. Debtors") in the Chapter 11 Proceedings before the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") (the "Chapter 11 Proceedings").

[48]   The hearing was conducted by video conference with the companion motion being heard in the U.S. Court before His Honor Judge Gross.  This joint hearing was conducted in accordance with the provisions of the Cross-Border Protocol which was previously approved by both the U.S. Court and by this Court.

[49]   Both motions had the support of all parties appearing, save for the Joint Administrators of Nortel Networks (U.K.) Limited ("NNUK") and certain of its subsidiaries and affiliates located in the EMEA (collectively, the "EMEA Debtors").

[50]   Decisions in respect of both motions are currently under reserve.

[51]   On June 13, 2011, at the request of both Judge Gross and me, a case conference was conducted by telephone.  It was reported to the participants that our respective decisions relating to the aforementioned motions would be under reserve for a considerable period of time.

[52]   Certain of the issues raised in the motions have been the subject of two mediation sessions.  These mediation sessions were not successful.  It is my understanding that, in addition to the allocation issue, issues of validity of quantification of certain claims and inter-company claims were discussed.

[53]   Allocation issues have arisen out of the Interim Funding and Settlement Agreement ("IFSA"), which was entered into in June 2009, between the Canadian Debtors, certain of the U.S. Debtors and certain of the EMEA Debtors.  The IFSA provides amongst other things, for the parties cooperation in the global sales of Nortel's business units as well as for the parties to attempt to negotiate the terms of an Interim Sales Protocol ("Protocol").

[54]    The parties entered into negotiations for approximately one year with respect to the terms of a Protocol.  After a year of negotiations, the parties were still unable to agree on certain fundamental terms of the Protocol, including, for example, the scope of the issues to be determined under the Protocol.

[55]    As a result, according to the Canadian Debtors, the Protocol negotiations were suspended and the parties agreed to reach a consensual resolution through mediation.  After the mediation was declared unsuccessful, the U.S. Debtors and the Canadian Debtors, developed the proposed Allocation Protocol.

[56]    The Allocation Protocol establishes procedures and an expedited schedule for the cross-border resolution by the U.S. Court and this Court of the allocation of the proceeds from the Sale Transactions pursuant to the IFSA.

[57]    The Allocation Protocol proposes that all hearings in respect of the Allocation Protocol proceed by way of joint hearings between the U.S. Court and this Court pursuant to the cross-border protocol.

[58]    The position of the EMEA Debtors is that issues arising out of the IFSA are to be determined by a dispute resolver, in this case, an arbitrator.

[59]    In my view, pending the release of a decision on the motion, the parties could benefit from the appointment of a mediator so that they can continue to make progress towards the ultimate resolution of Nortel matters.  The parties have exhibited an ability to cooperate and have been extremely successful in realizing significant proceeds from the sale of Nortel assets globally.  However, the creation of an asset pool is not ultimate resolution of Nortel matters.  These proceedings can only be concluded with a distribution of proceeds to the various creditors of Nortel globally.  These proceedings were commenced on January 14, 2009.  Creditors have been waiting nearly two and one-half years for a meaningful distribution.  A mediation will require that the parties continue a dialogue.  It is possible that tangible, positive results will flow from such mediation.

[60]    In order to assist the parties with their deliberations, I am directing that the parties engage in mediation pending my ruling.  I understand that Judge Gross will be issuing a similar direction in the Chapter 11 Proceedings.

[61]    I recognize that the parties may have difficulty in reaching a consensus on a mediator.  In the case conference on June 13, 2011, we asked that the parties consult with each other and provide the name of an acceptable mediator.  No individual has been identified.  It, therefore, falls to both Judge Gross and to me to appoint a mediator.

[62]    The mandate of the mediator is to address issues raised in the motion.  It is recognized that the boundary of this mandate is not clearly defined.  It seems to me that defining a precise boundary, in these circumstances, may be better left to the mediator, as it may not be possible to address the issues affecting allocation without taking into consideration issues relating to the validity and quantification of claims.

[63]    The mediator shall have the right to file periodic reports with the court detailing progress, or lack thereof, recognizing that the sessions are on a without prejudice basis.

[64]    It is my understanding that, at the mediation sessions, there were a large number of parties that participated.  While I do not take issue with the right of any party to participate in the mediation, I did observe that at the hearing of the within motion, the primary submissions were made by the Canadian Debtors, the EMEA Debtors and the Monitor.  It was also my observation that the primary submissions of parties in the Chapter 11 Proceedings were likewise concentrated among a relatively small group of counsel.  The mediation will, in all likelihood, be more effective if the number of participants is significantly reduced from the number that attended the previous sessions.  It is hoped that the parties will be able to work out the details respecting participation of the mediation.

[65]    The identity of the mediator will be provided by way of Supplementary Endorsement early next week.  The mediator shall have the ability to retain advisors and counsel as he or she deems appropriate in the circumstances and to have the expenses of such advisors and counsel paid out of the assets of Nortel.

[66]    In addition, consistent with the conclusion of the U.S. Court, the mediator is to have expanded authority, if the parties agree, to conduct a mediation/arbitration or an arbitration in respect of this matter.

[67]    To the extent that further directions are required in respect of this directed mediation, the parties can contact the Commercial List Office in order to set up a case conference.

"Morawetz J."

_____

MORAWETZ J.

**Date:**  June 17, 2011

# SCHEDULE "B"

**CITATION:** Nortel Networks Corporation (Re), 2011 ONSC 4012
**COURT FILE NO.:** 09-CL-7950
**DATE:** 20110629

## SUPERIOR COURT OF JUSTICE - ONTARIO

**RE:**  IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION, Applicants

**BEFORE:**  MORAWETZ J.

**COUNSEL:**  Alan Mark, Derrick Tay, Alan Merskey and Jennifer Stam, for Nortel Networks Corporation et al

F. Myers, J. Pasquariello and C. Armstrong, for the Monitor, Ernst & Young Inc.

Mark Zigler, Andrea McKinnon, for the Former & Disabled Employees

G. Finlayson, R. Orzy and R. Swan, for the Noteholder Group

Lily Harmer and Max Starnino, for the Superintendent

S. Seigel, for the Bank of New York Mellon

Alex MacFarlane and Abid Quereshi, for the Official Committee of Unsecured Creditors

R. Paul Steep and Elder C. Marques, for Morneau Shepell

Barry Wadsworth, for CAW-Canada

M. P. Gottlieb, R. Schwill and S. Campbell, for the Joint Administrators

Bill Burden, for the U.K. Pension Trustee

Lyndon Barnes, for the Board of Directors of Nortel

1244

Andrew Gray and Scott Bomhof, for the U.S. Debtors

Arthur O. Jacques, for Nortel NCCE

## ENDORSEMENT

[1]     This Endorsement relates to my Endorsement of June 17, 2011.  The following directions take precedence over the directions provided on June 17, 2011.

[2]     On June 7, 2011, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Canadian Debtors") brought a motion requesting approval of a proposed protocol for the allocation of the proceeds of the sale of their assets, the assets of the U.S. Debtors (defined below) and those of Nortel Networks U.K. Limited (NNUK") and certain of its affiliates located in Europe, the Middle East and Africa (collectively, the "EMEA Debtors") (the "Allocation Protocol").

[3]     A similar motion was also brought at that time by Nortel Networks Inc. ("NNI") and certain of its U.S. affiliates (the "U.S. Debtors") in the Chapter 11 Proceedings before the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") (the "Chapter 11 Proceedings").

[4]     The hearing was conducted by video conference with the companion motion being heard in the U.S. Court before His Honor Judge Gross.  The joint hearing was conducted in accordance with the provisions of the Cross-Border Protocol which was previously approved by both the U.S. Court and by this Court.

[5]     Both motions had the support of all parties appearing, save for the joint administrators of NNUK.

[6]     Allocation issues have arisen out of the Interim Funding and Settlement Agreement ("IFSA"), which was entered into in June 2009, between the Canadian Debtors, certain of the U.S. Debtors and certain of the EMEA Debtors.  The IFSA provides amongst other things, for the parties cooperation in the global sales of Nortel's business units as well as for the parties to attempt to negotiate the terms of an Interim Sales Protocol ("Protocol").

[7]     To date, the parties have been unable to resolve these allocation issues on a consensual basis.  This has resulted in a most unfortunate situation.

[8]     Nortel's insolvency is somewhat unique.  The sale of its business units has created a sizeable asset pool.  With the exception of the IP Transaction, the auction for which commenced on June 27, 2011, the Canadian Debtors, the U.S. Debtors, the EMEA Debtors and their affiliates have now divested substantially all of Nortel's material worldwide assets.  The proceeds of these divestitures – some $3 billion currently with a minimum of a further $900 million expected to be added upon consummation of the patent portfolio and related asset transactions – now sit in escrow awaiting the resolution of allocation.

Case 09-10138-MFW   Doc 10469-2   Filed 05/02/13   Page 216 of 515
Case 09-10138-KG   Doc 10169-2   Filed 04/02/13   Page 216 of 225

- Page 3 -

[9]    This allocation issue, together with the resolution of the EMEA claims and the U.K. pension claims, lies at the heart not only of these CCAA proceedings, but also the Chapter 11 Proceedings and proceedings in the United Kingdom.  As the Monitor noted in its 67th Report: "Simply put, they are matters that must be resolved before any creditor of an applicant (and likely any other Nortel debtor) can expect to receive a meaningful distribution on account of amounts that have now been outstanding in most cases since January 2009.

[10]    The Canadian Debtors have no significant secured creditors.  The Canadian Debtors do, however, have significant unsecured creditors, most of whom are individuals who are employed or were formerly employed by Nortel.  Many of these former employees are pensioners and this group have unsecured claims for both pension and medical benefits.

[11]    There are also significant employee and former employee claims against the U.S. Debtors and the EMEA Debtors.

[12]    For many of these individuals, the delay in receiving a meaningful distribution can be significant.  It is not just a question of calculating the time value of money.  For this group of creditors, time is not on their side.

[13]    This issue is international in scope.  It is also a public-interest issue.  A protracted delay in resolving the impasse surrounding allocation is highly prejudicial to this group.

[14]    In making these comments, I do not mean to suggest that the claims of other creditor groups are not of equal significance.  The reality is, however, that the timing of a receipt of a distribution may be less critical for a financial player as opposed to an individual.

[15]    The difficulty in resolving the allocation issue that is before both the U.S. Court and this Court is, of course, complicated by the fact that it is a multi-jurisdictional issue.  There is no simple solution to the legal predicament that faces all parties.

[16]    Decisions in respect of both motions are currently under reserve.  The nature and length of the arguments presented at the motion will necessitate careful drafting and separate rulings by the U.S. Court and this Court.  Both Courts are concerned that this delay will also delay allocation proceedings and therefore distributions to creditors.  Moreover, the risk of inconsistent decisions and the uncertainty of the appellate process (with further risk of inconsistent decisions) may further delay the progress of the cases.

[17]    A protracted delay in the progress of the cases will only exacerbate an already unfortunate situation for the many individual creditors.  With extended delay comes uncertainty. For many, uncertainty brings considerable stress and a bad situation becomes even worse. Clearly, the consequences of extended litigation are not desirable.

[18]    Both Courts concluded that the parties could benefit from the appointment of a mediator so that they can continue to make progress towards the ultimate resolution of Nortel matters. Consequently, both the U.S. Court and this Court directed that the parties, who participated in the hearing on June 7, 2011, engage in mediation pending the release of decisions in both motions.  The mediator will have the authority to include such other parties as he deems appropriate, in his discretion.

[19]    The mediator has the authority, in consultation with the parties, to determine the scope of the mediation, as he deems appropriate, including, without limitation, the allocation issue in its entirety and global issues relating to allocation and claims.

[20]    The mediator is authorized to select advisors of his choosing.  The reasonable fees and expenses of the advisors shall be reimbursed by the Canadian Debtors, the U.S. Debtors and the EMEA Debtors.

[21]    The particulars of the mediation are as follows:

Mediator:       The Honourable Warren K. Winkler
                Chief Justice of Ontario
                Court of Appeal for Ontario
                Osgoode Hall
                130 Queen Street West
                Toronto, ON
                M5H 2N5

Timing:         To be arranged by the mediator

[22]    Participation in this mediation is mandatory.  Any agreements reached as a result of mediation will be binding on the parties.

[23]    A settlement of the dispute being mediated shall also be subject to the approval of the U.S. Court and this Court, on notice to parties in interest.

[24]    The parties shall recognize that mediation proceedings are settlement negotiations, and that all offers, promises, conduct and statements, whether written or oral, made in the course of the proceedings, are inadmissible in any arbitration or court proceeding, to the extent allowed by law.  The parties shall not subpoena or otherwise require the mediator or any advisor to the mediator, to testify or produce records, notes or work product in any future proceedings, and no recording will be made of the mediation session.  Evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation session.  In the event that the parties do reach a settlement agreement, the terms of that settlement will be admissible in any court or arbitration proceedings required to enforce it, unless the parties agree otherwise.  Information disclosed to the mediator at a private caucus shall remain confidential unless the party authorizes disclosure.

[25]    The mediator has the right, prior to the commencement of the mediation only, to communicate with Judge Gross and me, for the purposes of obtaining background information.

[26]    The mediation process shall be terminated under any of the following circumstances:

(a) by a declaration by the mediator that a settlement has been reached;

(b) a declaration by the mediator that further efforts at mediation are no longer considered to be worthwhile; or

- Page 5 -

(c) for any other reason as determined by the mediator.

[27]    The Monitor is directed to circulate a copy of this endorsement to all parties who attended on the return of the motion on June 7, 2011.


                                                    "Morawetz J."

                                    _____
                                                    MORAWETZ J.

**Date:**   June 29, 2011

SCHEDULE "C"

**CITATION:** Nortel Networks Corporation (Re), 2013 ONSC 1470
**COURT FILE NO.:** 09-CL-7950
**DATE:** 20130308

## SUPERIOR COURT OF JUSTICE – ONTARIO

(COMMERCIAL LIST)

**RE:**   IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**BEFORE:**   MORAWETZ J.

**COUNSEL:**   *Derrick Tay and Jennifer Stam*, for Nortel Networks Corporation

*Benjamin Zarnett, Fred. Myers* and *Jay Carfagnini* for Ernst & Young Inc., Monitor

*Mark Zigler, Ken Rosenberg, Arthur Jacques, Barry Wadsworth* and *Elder C. Marques* for Canadian Creditors' Committee

*Matthew P. Gottlieb, Robin B. Schwill* and *James Reinihan* for Nortel Networks UK Limited (in Administration)

*David Ward* for PPF/Trustee

*Adam Hirsh* for Former Directors & Officers of Nortel Networks Corporation and Nortel Networks Limited

*Andrew Gray* and *Scott Bomhof* for Nortel Networks Inc. and other U.S. Debtors

*John Salmas* for Wilmington Trust, National Association

1249

*Sheryl Seigel* for the Bank of New York Mellon

*Richard Swan* and *Gavin Finlayson* for Informal Committee of Noteholders

*Shayne Kukulowicz*, *Ryan Jacobs* and *Mike Wunder* for Unsecured Creditors' Committee

*Edmond Lamek* for Law Debenture Trust Company of New York

**HEARD:**     March 7, 2013

**DECISION:**     March 8, 2013

## E N D O R S E M E N T

[1]     For reasons to follow, the motion of Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Canadian Debtors") for an order approving an Allocation Protocol, substantially in the form of Schedule "A" to the motion originally returnable June 7, 2011 is granted, subject to the following modifications:

> (i) the Allocation Protocol is to be based on the protocol presented on the original return date, namely June 7, 2011, and is not to be based on the protocol presented during argument on March 7, 2013;

> (ii) the list of "core parties" referenced in paragraph (o)(iii) of the Motion Record is to be expanded.  Representations were received from numerous indenture trustees on March 7, 2013. These parties are to be included as "core parties"; and

> (iii) the Monitor is directed to provide the court with a revised list of proposed "core parties" for its consideration, balancing interests of natural justice as well as the objective to resolve outstanding issues in the most expeditious and least expensive manner possible.

[2]     The Monitor is also directed to coordinate input from the parties with respect to a litigation schedule.  Directions in respect of the litigation schedule will be addressed in the full reasons for this decision.

[3]     The cross motion of the Joint Administrators of Nortel Networks UK Limited, originally returnable June 7, 2011 requesting an order compelling and directing the parties to the Interim Funding and Settlement Agreement dated June 9, 2009 (the "IFSA") to engage in arbitration

regarding all disputes concerning the allocation of Sales Proceeds (as defined in the IFSA), is dismissed.

[4]     The appeal period in respect of this endorsement will commence on the date when full reasons are released, which date will coincide with the release of reasons of Chief Judge Kevin Gross of the United States Bankruptcy Court for the District of Delaware.


"Morawetz J."

_____
Morawetz, J.


**DATE:**     March 8, 2013

**EXHIBIT G**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                                    :
*In re*                             :    Chapter 11
                                    :
Nortel Networks Inc., *et al.,*[1]  :    Case No. 09-10138 (KG)
                                    :
                        Debtors.    :    Jointly Administered
                                    :
                                    :    RE: D.I. 18, 54 + 983
-------------------------------------------------------X

## ORDER APPROVING STIPULATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NORTEL NETWORKS INC., ET AL., AMENDING THE CROSS-BORDER COURT-TO-COURT PROTOCOL

Upon consideration of the stipulation dated June 26, 2009 (the "Stipulation")[2] attached

hereto as Exhibit A between Nortel Networks Inc. and its affiliated debtors, as debtors and

debtors in possession in the above-captioned cases (the "Debtors") and the Official Committee of

Unsecured Creditors (the "Committee") to amend the cross-border court-to-court protocol

approved by the Court in the Order Pursuant to 11 U.S.C. § 105(a) Approving Cross-Border

Court-to-Court Protocol [D.I. 54], and good cause appearing for the approval thereof;

IT IS HEREBY ORDERED THAT:

1.      The Stipulation is APPROVED.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Stipulation.

2.    The Amended Protocol, as attached to the Stipulation as Exhibit 1, is approved in all respects, subject to approval of the same by the Canadian Court.

3.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June 29 , 2009
        Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

2

1254

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------X
                                                         :
*In re*                                                  :     Chapter 11
                                                         :
Nortel Networks Inc., *et al*.,[1]                       :     Case No. 09-10138 (KG)
                                                         :
                              Debtors.                   :     Jointly Administered
                                                         :
                                                         :     **RE: D.I. 18, 54**
                                                         :
-----------------------------------------------------------X

**STIPULATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS OF NORTEL NETWORKS INC., ET AL.,**
**AMENDING THE CROSS-BORDER COURT-TO-COURT PROTOCOL**

This stipulation (the "Stipulation") is by and between Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee"). The parties hereby stipulate and agree as follows.

**Background**

1.     On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.     The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

3.       Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

Proceedings"). The Canadian Debtors continue to manage their properties and operate their

businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed

Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the

"Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as

foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the

Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign

proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order

recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the

Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of

Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA

Debtors")[3] into administration under the control of individuals from Ernst & Young LLC

(collectively, the "Joint Administrators"). On May 28, 2009, at the request of the

Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered

---

[2]       The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]       The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A.,
Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel
Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks
Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings remain the main proceedings in respect of NNSA.  On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

4.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

5.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

### The Cross-Border Court-to-Court Protocol

6.      On January 14, 2009, the Debtors filed the Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. § 105(a) Approving Cross-Border Court-to-Court Protocol [D.I. 18] (the "Cross-Border Protocol Motion") for the purpose of establishing a cross-border court-to-court

3

protocol to govern the chapter 11 and Canadian Proceedings (the "First Day Protocol"). On January 15, 2009, the Court entered the Cross-Border Protocol Order [D.I. 54]. Likewise, on January 14, 2009, the Canadian Court issued an order (the "Initial Order") granting the Canadian Debtors various forms of relief, including approval of the First Day Protocol. Initial Order at ¶ 49.

7.    Since the Petition Date, the Court has, on six occasions, approved stipulations among the Debtors and the Committee extending the Committee's time to file a motion for reconsideration of the Cross-Border Protocol Order [D.I.s 318, 466, 549, 676, 799, 900] pursuant to Rule 9013-1(m) Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). During this time, the Debtors, the Canadian Debtors and the Committee have engaged in constructive, good faith discussions regarding the terms of the First Day Protocol and possible amendments thereto. The changes reflected in the amended cross-border court-to-court protocol (the "Amended Protocol"), attached hereto as Exhibit 1, are the result of those discussions.

8.    In addition to a variety of ministerial changes, the Amended Protocol provides greater clarity on a number of issues including the right to appear and be heard, mutual recognition of the stay of proceedings entered in the U.S. and Canadian Proceedings and the contemplation of a claims protocol. Most importantly, the Amended Protocol clarifies matters for which a joint hearing between the U.S. and Canadian Courts might be necessary and sets forth procedures for obtaining such joint hearings. A blackline reflecting all amendments from the First Day Protocol to the Amended Protocol is attached to the Stipulation as Exhibit 2.

9.    As the Court is aware, the Debtors have entered into the Interim Funding and Settlement Agreement dated as of June 9, 2009 (the "Agreement") with the Canadian Debtors

4

and the EMEA Debtors, excluding Nortel Networks S.A. A joint hearing between this Court and the Canadian Court has been scheduled for June 29, 2009 (to be continued on June 30, 2009 if necessary) regarding the funding of NNL by NNI and other related issues addressed by the Agreement. Obtaining court approval of the amendments to the cross-border protocol constitutes an express condition required for the Agreement to become effective. See Agreement at ¶ 13(a).

## Stipulation

NOW, THEREFORE, the Debtors and the Committee hereby stipulate and agree that the First Day Protocol shall be amended to incorporate the changes reflected in the Amended Protocol attached hereto as Exhibit 1 and that the Court should approve the Amended Protocol in all respects.

Dated: June 26, 2009
Wilmington, Delaware

By: _____

James L. Bromley (pro hac vice)
Lisa Schweitzer (pro hac vice)
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000


- and -

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200


Counsel for the Debtors
and Debtors in Possession

By: _____

Fred S. Hodgara (pro hac vice)
David H. Botter (pro hac vice)
Kenneth A. Davis (pro hac vice)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000


- and -

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700


Counsel to the Committee

5.

1260

# EXHIBIT 1

**Amended Cross-Border Court-to-Court Protocol**

## CROSS-BORDER INSOLVENCY PROTOCOL

This cross-border insolvency protocol (the "Protocol") shall govern the conduct of all parties in interest in the Insolvency Proceedings (as such term is defined herein).

The Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases (the "Guidelines") attached as Schedule "A" hereto, shall be incorporated by reference and form part of this Protocol. Where there is any discrepancy between the Protocol and the Guidelines, this Protocol shall prevail.

A.     **Background**

1.     Nortel Networks Inc. ("NNI") is the wholly owned U.S. subsidiary of Nortel Networks Limited ("NNL"), the principal Canadian operating subsidiary of Nortel Networks Corporation ("NNC"). NNC is a telecommunications company headquartered in Toronto, Ontario, Canada. NNI is incorporated under Delaware law and is headquartered in Richardson, Texas.

2.     NNI and certain of its affiliates (collectively, the "U.S. Debtors"),[1] have commenced reorganization proceedings (the "U.S. Proceedings") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court"), and such cases have been consolidated (for procedural purposes only) under Case No. 09-10138 (KG). The U.S. Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the U.S. Proceedings. On January 22, 2009,

---

[1]    The Debtors in the U.S. Proceedings (as defined herein) are: NNI, Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., XROS, Inc., Sonoma Systems, QTERA Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc.

the Office of United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") in the U.S. Proceeding. An ad hoc committee of bondholders (the "Bondholders Committee") has also been organized.

3.    On January 14, 2009, the U.S. Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the U.S. Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors have obtained an initial order of the Canadian Court (as amended and restated, the "Canadian Order"), under which, inter alia:  (a) the Canadian Debtors have been determined to be entitled to relief under the CCAA; (b) Ernst & Young Inc. has been appointed as monitor (the "Monitor") of the Canadian Debtors, with the rights, powers, duties and limitations upon liabilities set forth in the CCAA and the Canadian Order; and (c) a stay of proceedings in respect of the Canadian Debtors has been granted.

4.    The Monitor filed petitions and obtained an order in the U.S. Court granting recognition of the Canadian Proceedings under chapter 15 of the Bankruptcy Code (the "Chapter 15 Proceedings"). NNI also filed an application and obtained an order in the Canadian Court pursuant to section 18.6 of the CCAA recognizing the U.S. Proceedings as "foreign proceedings" in Canada and giving effect to the automatic stay thereunder in Canada. None of the U.S. Debtors or Canadian Debtors are applicants in both the U.S. Proceedings and Canadian Proceedings.

---

[2]    The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

3

5.     For convenience, (a) the U.S. Debtors and the Canadian Debtors shall be referred to herein collectively as the "Debtors," (b) the U.S. Proceedings and the Canadian Proceedings shall be referred to herein collectively as the "Insolvency Proceedings," and (c) the U.S. Court and the Canadian Court shall be referred to herein collectively as the "Courts", and each individually as a "Court."

**B.     Purpose and Goals**

6.     Though full and separate plenary proceedings are pending in the United States for the U.S. Debtors and in Canada for the Canadian Debtors, the implementation of administrative procedures and cross-border guidelines is both necessary and desirable to coordinate certain activities in the Insolvency Proceedings, protect the rights of parties thereto, ensure the maintenance of the Courts' respective independent jurisdiction and give effect to the doctrines of comity. Accordingly, this Protocol has been developed to promote the following mutually desirable goals and objectives in the Insolvency Proceedings:

a.     harmonize and coordinate activities in the Insolvency Proceedings before the Courts;

b.     promote the orderly and efficient administration of the Insolvency Proceedings to, among other things, maximize the efficiency of the Insolvency Proceedings, reduce the costs associated therewith and avoid duplication of effort;

c.     honor the independence and integrity of the Courts and other courts and tribunals of the United States and Canada, respectively;

d.     promote international cooperation and respect for comity among the Courts, the Debtors, the Creditors Committee, the Estate Representatives (which include the Chapter 11 Representatives and the Canadian Representatives as such terms are defined below) and other creditors and interested parties in the Insolvency Proceedings;

e.     facilitate the fair, open and efficient administration of the Insolvency Proceedings for the benefit of all of the Debtors' creditors and other interested parties, wherever located; and

4

1264

      f.    implement a framework of general principles to address basic administrative issues arising out of the cross-border nature of the Insolvency Proceedings.

As the Insolvency Proceedings progress, the Courts may also jointly determine that other cross-border matters that may arise in the Insolvency Proceedings should be dealt with under and in accordance with the principles of this Protocol. Subject to the provisions of this Protocol, including, without limitation, those included in paragraph 15 hereof, where an issue is to be addressed only to one Court, in rendering a determination in any cross-border matter, such Court may: (a) to the extent practical or advisable, consult with the other Court; and (b) in its sole discretion and bearing in mind the principles of comity, either (i) render a binding decision after such consultation; (ii) defer to the determination of the other Court by transferring the matter, in whole or in part to the other Court; or (iii) seek a joint hearing of both Courts.

**C.**    **Comity and Independence of the Courts**

      7.    The approval and implementation of this Protocol shall not divest nor diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction over the subject matter of the U.S. Proceedings and the Canadian Proceedings, respectively. By approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States of America or Canada.

      8.    The U.S. Court shall have sole and exclusive jurisdiction and power over the conduct of the U.S. Proceedings and the hearing and determination of matters arising in the U.S. Proceedings. The Canadian Court shall have sole and exclusive jurisdiction and power over the conduct of the Canadian Proceedings and the hearing and determination of matters arising in the Canadian Proceedings.

1265

9.      In accordance with the principles of comity and independence recognized

herein, nothing contained herein shall be construed to:

a.      increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the U.S. Court, the Canadian Court or any other court or tribunal in the United States or Canada, including the ability of any such court or tribunal to provide appropriate relief on an ex parte or "limited notice" basis to the extent permitted under applicable law;

b.      require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the United States;

c.      require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

d.      require the Debtors, the Creditors Committee, the Estate Representatives or the U.S. Trustee to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

e.      authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

f.      preclude the Debtors, the Creditors Committee, the Monitor, the U.S. Trustee, any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other relevant jurisdiction including, without limitation, the rights of parties in interest to appeal from the decisions taken by one or both of the Courts.

10.      The Debtors, the Creditors Committee, the Estate Representatives and their

respective employees, members, agents and professionals shall respect and comply with the

independent, non-delegable duties imposed upon them, if any, by the Bankruptcy Code, the

CCAA, the Canadian Order and other applicable laws.

## D.      Cooperation

11.      To assist in the efficient administration of the Insolvency Proceedings and

in recognizing that the U.S. Debtors and Canadian Debtors may be creditors of the others'

1266

estates, the Debtors and their respective Estate Representatives shall, where appropriate: (a) cooperate with each other in connection with actions taken in both the U.S. Court and the Canadian Court and (b) take any other appropriate steps to coordinate the administration of the Insolvency Proceedings for the benefit of the Debtors' respective estates.

12.    To harmonize and coordinate the administration of the Insolvency Proceedings, the U.S. Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court. In furtherance of the foregoing:

a.    The U.S. Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any procedural matter relating to the Insolvency Proceedings.

b.    Where the issue of the proper jurisdiction of either Court to determine an issue is raised by an interested party in either of the Insolvency Proceedings with respect to a motion or application filed in either Court, the Court before which such motion or application was initially filed may contact the other Court to determine an appropriate process by which the issue of jurisdiction will be determined; which process shall be subject to submissions by the Debtors, the Creditors Committee, the Monitor, the Bondholders Committee (collectively the "Core Parties"), the U.S. Trustee and any interested party prior to a determination on the issue of jurisdiction being made by either Court.

c.    The Courts may, but are not obligated to, coordinate activities in the Insolvency Proceedings such that the subject matter of any particular action, suit, request, application, contested matter or other proceeding is determined in a single Court.

d.    The U.S. Court and the Canadian Court may conduct joint hearings (each a "Joint Hearing") with respect to any cross-border matter or the interpretation or implementation of this Protocol where both the U.S. Court and the Canadian Court consider such a Joint Hearing to be necessary or advisable, or as otherwise provided herein, to, among other things, facilitate or coordinate proper and efficient conduct of the Insolvency Proceedings or the resolution of any particular issue in the Insolvency Proceedings. With respect to any Joint Hearing, unless otherwise ordered, the following procedures will be followed:

7

(i)     A telephone or video link shall be established so that both the U.S. Court and the Canadian Court shall be able to simultaneously hear and/or view the proceedings in the other Court.

(ii)    Submissions or applications by any party that are or become the subject of a Joint Hearing (collectively, "Pleadings") shall be made or filed initially only to the Court in which such party is appearing and seeking relief.  Promptly after the scheduling of any Joint Hearing, the party submitting such Pleadings to one Court shall file courtesy copies with the other Court.  In any event, Pleadings seeking relief from both Courts shall be filed in advance of the Joint Hearing with both Courts.

(iii)   Any party intending to rely on any written evidentiary materials in support of a submission to the U.S. Court or the Canadian Court in connection with any Joint Hearing (collectively, "Evidentiary Materials") shall file or otherwise submit such materials to both Courts in advance of the Joint Hearing.  To the fullest extent possible, the Evidentiary Materials filed in each Court shall be identical and shall be consistent with the procedural and evidentiary rules and requirements of each Court.

(iv)    If a party has not previously appeared in or attorned or does not wish to attorn to the jurisdiction of a Court, it shall be entitled to file Pleadings or Evidentiary Materials in connection with the Joint Hearing without, by the mere act of such filings, being deemed to have appeared in or attorned to the jurisdiction of such Court in which such material is filed, so long as such party does not request any affirmative relief from such Court.

(v)     The Judge of the U.S. Court and the Justice of the Canadian Court who will preside over the Joint Hearing shall be entitled to communicate with each other in advance of any Joint Hearing, with or without counsel being present, (1) to establish guidelines for the orderly submission of Pleadings, Evidentiary Materials and other papers and for the rendering of decisions by the Courts; and (2) to address any related procedural, administrative or preliminary matters.

(vi)    The Judge of the U.S. Court and the Justice of the Canadian Court, shall be entitled to communicate with each other during or after any joint hearing, with or without counsel present, for the purposes of (1) determining whether consistent rulings can be made by both Courts; (2) coordinating the terms upon of the Courts' respective rulings; and (3) addressing any other procedural or administrative matters.

8

13. Notwithstanding the terms of the paragraph 12 above, this Protocol recognizes that the U.S. Court and the Canadian Court are independent courts. Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith, each of the Courts shall be entitled at all times to exercise its independent jurisdiction and authority with respect to: (a) the conduct of the parties appearing in matters presented to such Court; and (b) matters presented to such Court, including, without limitation, the right to determine if matters are properly before such Court.

14. Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court, such Court may, without limitation, hear expert evidence of such law or, subject to paragraph 15 herein, seek the written advice and direction of the other Court which advice may in the discretion of the receiving Court, be made available to parties in interest.

15. Notwithstanding anything to the contrary herein contained, to the extent any motion is filed or relief is sought (collectively, "Requested Relief") in either Court relating to: (i) the proposed sale of assets for gross proceeds in excess of U.S. $30 million and where at least one U.S. Debtor and one Canadian Debtor are parties to the related sale agreement or that involves assets owned by at least one U.S. Debtor and one Canadian Debtor; (ii) any motion to allocate sale proceeds which are in the aggregate more than U.S. $30 million and where at least one U.S. Debtor and one Canadian Debtor are parties to the related sale agreement or that involves assets owned by at least one U.S. Debtor and one Canadian Debtor; (iii) matters relating to the advanced pricing agreement involving both the United States and Canadian taxing authorities; (iv) matters regarding transfer pricing methodology relating to an obligation for the transfer of goods and services between one or more U.S. Debtors and one or more Canadian

9

1269

Debtors; (v) any matter relating to alleged fraudulent conveyance or preference claims in excess of U.S. $30 million and which may have a material impact on both one or more U.S. Debtors and one or more Canadian Debtors; (vi) matters relating to any proposal or approval of a disclosure statement, information circular, plan of reorganization or plan of compromise and arrangements in either the U.S. Proceedings or the Canadian Proceedings; (vii) any motion to appoint a Trustee or Examiner in the U.S. Proceedings, any motion to convert the U.S. Proceedings to a Chapter 7 proceeding, any motion to appoint a Receiver in the Canadian Proceedings, or any motion to convert the Canadian Proceedings to a bankruptcy or proposal proceeding under the Bankruptcy and Insolvency Act (Canada); (viii) any motion to substantively consolidate the Debtors' estates; (ix) matters impacting the material tax attributes of the U.S. Debtors, including the net operating losses of the U.S. Debtors in any prior fiscal year; (x) any motion to amend the terms of any of the Debtors' registered pension plans the effect of which would increase the liability of any Debtor thereunder; (xi) any motion to assume, ratify, reject, repudiate, modify or assign executory contracts having a material impact on the assets, operations, obligations, rights, property or business of both the U.S. and Canadian estates and accounting for annual gross revenue in excess of U.S. $30 million ("Material Contracts"); (xii) any motion seeking relief from the automatic stay in the U.S. Proceedings and/or the stay of proceedings in the Canadian Proceedings (1) involving any Material Contract or (2) to pursue actions having a material impact on the assets, operations, obligations, rights, property or business of at least one U.S. Debtor and one Canadian Debtor and involving damages in excess of U.S. $30 million; (xiii) any motion seeking to create or extend any program, plan, proposal or scheme relating to or authorizing payments to employees where the consideration relates to non-ordinary course incentive performance, retention, severance, termination or such like payments; and (xiv) any

10

motion regarding any program, plan proposal, scheme or similar course of action related to the

wind-down of one or more of the Debtors' businesses;

Then the following procedures shall be followed:

a.     unless otherwise consented to by the Core Parties, any and all documents, other than any Monitor's report related to the Requested Relief, shall be filed (as applicable) and served on the Core Parties on not less than seven days notice prior to the proposed hearing date for such Requested Relief in the Court of the forum country where the party seeking the Requested Relief intends the Requested Relief to be heard; *provided, however,* that to the extent the Requested Relief is necessary to avoid irreparable harm to the Debtors and/or the Debtors' bankruptcy estates, as may be determined by the Court of the forum country where the Requested Relief is being sought or such Court otherwise determines, such documents related to the Requested Relief shall be served on the Core Parties on such reasonable notice as such Court may determine;

b.     upon notice of such Requested Relief being provided to the Core Parties, each of the Core Parties will have not less than two business days from receipt of such notice (or such shorter period as the Court of the forum country where the Requested Relief is being sought shall determine, as set forth in paragraph 15(a) herein) to request, in writing, that the filing party seek a Joint Hearing for the Requested Relief;

c.     if the filing party agrees to seek a Joint Hearing, the Requested Relief shall be heard at a Joint Hearing conducted by the Courts in accordance with the procedures set forth in paragraph 12 herein; and

d.     if the filing party does not agree to seek a Joint Hearing, the party seeking to have the Requested Relief heard at a Joint Hearing may file a notice of Joint Hearing dispute in both the Court of the forum country and the Court of the non-forum country and serve notice thereof on the remaining Core Parties, whereupon the respective Courts of the forum country and the non-forum country may consult with one another in accordance with paragraphs 6 and 12 hereof, in order to determine whether a Joint Hearing is necessary or may otherwise consult with the Core Parties prior to any party proceeding with the underlying Requested Relief in the original proposed forum country.

## E.     Recognition of Stays of Proceedings

16.     The Canadian Court hereby recognizes the validity of the stay of

proceedings and actions against the U.S. Debtors and their property under section 362 of the

1271

Bankruptcy Code (the "<u>U.S. Stay</u>"). In implementing the terms of this paragraph, the Canadian Court may consult with the U.S. Court regarding: (i) the interpretation, extent, scope and applicability of the U.S. Stay and any orders of the U.S. Court modifying or granting relief from the U.S. Stay; and (ii) the enforcement of the U.S. Stay in Canada.

17.     The U.S. Court hereby recognizes the validity of the stay of proceedings and actions against the Canadian Debtors and their property under the Canadian Order (the "<u>Canadian Stay</u>"). In implementing the terms of this paragraph, the U.S. Court may consult with the Canadian Court regarding: (i) the interpretation, extent, scope and applicability of the Canadian Stay and any orders of the Canadian Court modifying or granting relief from the Canadian Stay; and (ii) the enforcement of the Canadian Stay in the United States.

18.     Nothing contained herein shall affect or limit the Debtors' or other parties' rights to assert the applicability or nonapplicability of the U.S. Stay or the Canadian Stay to any particular proceeding, property, asset, activity or other matter, wherever pending or located. Subject to paragraph 15, herein, motions brought respecting the application of the stay of proceedings with respect to assets or operations of the Canadian Debtors shall be heard and determined by the Canadian Court. Subject to paragraph 15 herein, motions brought respecting the application of the stay of proceedings with respect to assets or operations of the U.S. Debtors shall be heard and determined by the U.S. Court.

**F.     <u>Rights to Appear and Be Heard</u>**

19.     The Debtors, the Core Parties, and any other committee that may be appointed by the U.S. Trustee, and the professionals and advisors for each of the foregoing, shall have the right and standing: (i) to appear and to be heard in either the U.S. Court or Canadian Court in the U.S. Proceedings or Canadian Proceedings, respectively, to the same extent as creditors and other interested parties domiciled in the forum country, subject to any local rules or

12

regulations generally applicable to all parties appearing in the forum; and (ii) to file notices of appearance or other papers with the clerk of the U.S. Court or the Canadian Court in respect of the U.S. Proceedings or Canadian Proceedings, respectively; provided, however, that any appearance or filing may subject a creditor or interested party to the jurisdiction of the Court in which the appearance or filing occurs; provided further, that an appearance by the Creditors Committee in the Canadian Proceedings shall not form a basis for personal jurisdiction in Canada over the members of the Creditors Committee. Notwithstanding the foregoing, and in accordance with the policies set forth above, including, inter alia, paragraph 12 above; (i) the Canadian Court shall have jurisdiction over the Chapter 11 Representatives (as defined below) solely with respect to the particular matters as to which the Chapter 11 Representatives appear before the Canadian Court; and (ii) the U.S. Court shall have jurisdiction over the Canadian Representatives (as defined below) solely with respect to the particular matters as to which the Canadian Representatives appear before the U.S. Court.

20.    In connection with any matter in the Canadian Proceedings in which the Creditors Committee seeks to become involved and which would otherwise require the Creditors Committee to execute a confidentiality agreement, the Creditors Committee, its individual members and professionals shall not be required to execute confidentiality agreements but instead the Creditors Committee and its members shall be bound by the confidentiality provisions contained in the Creditors Committee bylaws, and the Creditors Committee's professionals shall be bound by the terms of the confidentiality agreement with the Debtors dated February 2, 2009.

**G.    Claims Protocol**

21.    The Debtors anticipate that it will be necessary to implement a specific claims protocol to address, among other things and without limitation, the timing, process,

13

jurisdiction and applicable governing law to be applied to the resolution of intercompany claims filed by the Debtors' creditors in the Canadian Proceedings and the U.S. Proceedings. In such event, and in recognition of the inherent complexities of the inter-company claims that may be asserted in the Insolvency Proceedings, the Debtors shall use commercially reasonable efforts to negotiate a specific claims protocol, in form and substance satisfactory to the Debtors, the Monitor, and the Creditors Committee, which protocol shall be submitted to the Canadian Court and the U.S. Court for approval. In the event that the Debtors fail to reach agreement among such parties, the Debtors shall file a motion in both the Canadian Court and the U.S. Court seeking approval of such claims protocol as the Debtors shall determine to be in the best interest of the Debtors and their creditors.

**H.    Retention and Compensation of Estate Representative and Professionals**

22.    The Monitor, its officers, directors, employees, counsel and agents, wherever located, (collectively the "Monitor Parties") and any other estate representatives appointed in the Canadian Proceedings (collectively, the "Canadian Representatives") shall (subject to paragraph 19) be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including: (a) the Canadian Representatives' tenure in office; (b) the retention and compensation of the Canadian Representatives; (c) the Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Insolvency Proceedings; and (d) the hearing and determination of any other matters relating to the Canadian Representatives arising in the Canadian Proceedings under the CCAA or other applicable Canadian law. The Canadian Representatives shall not be required to seek approval of their retention in the U.S. Court for services rendered to the Debtors. Additionally, the Canadian Representatives: (a) shall be compensated for their services to the Canadian Debtors solely in accordance with the CCAA, the Canadian Order and other applicable

14

Canadian law or orders of the Canadian Court; and (b) shall not be required to seek approval of their compensation in the U.S Court.

23.     The Monitor Parties shall be entitled to the same protections and immunities in the United States as those granted to them under the CCAA and the Canadian Order.  In particular, except as otherwise provided in any subsequent order entered in the Canadian Proceedings, the Monitor Parties shall incur no liability or obligations as a result of the Canadian Order, the appointment of the Monitor, the carrying out of its duties or the provisions of the CCAA and the Canadian Order by the Monitor Parties, except any such liability arising from actions of the Monitor Parties constituting gross negligence or willful misconduct.

24.     Any estate representative appointed in the U.S. Proceedings, including without limitation any examiners or trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, the "Chapter 11 Representatives") shall (subject to paragraph 19) be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including:  (a) the Chapter 11 Representatives' tenure in office; (b) the retention and compensation of the Chapter 11 Representatives; (c) the Chapter 11 Representatives' liability, if any, to any person or entity, including the U.S. Debtors and any third parties, in connection with the Insolvency Proceedings; and (d) the hearing and determination of any other matters relating to the Chapter 11 Representatives arising in the U.S. Proceedings under the Bankruptcy Code or other applicable laws of the United States.  The Chapter 11 Representatives shall not be required to seek approval of their retention in the Canadian Court and (a) shall be compensated for their services to the U.S. Debtors solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court; and (b) shall not be required to seek

15

approval of their compensation for services performed for the U.S. Debtors in the Canadian Court.

25.   Any professionals (i) retained by and being compensated solely by, or (ii) being compensated solely by, the Canadian Debtors including in each case, without limitation, counsel and financial advisors (collectively, the "Canadian Professionals"), shall be subject to the sole and exclusive jurisdiction of the Canadian Court.  Such Canadian Professionals:  (a) shall be subject to the procedures and standards for retention and compensation applicable in the Canadian Court under the CCAA, the Canadian Order and any other applicable Canadian law or orders of the Canadian Court with respect to services performed on behalf of the Canadian Debtors; and (b) shall not be required to seek approval of their retention or compensation in the U.S. Court.

26.   Any professionals (i) retained by, or (ii) being compensated by, the U.S. Debtors including in each case, without limitation, counsel and financial advisors (collectively, the "U.S. Professionals") shall be subject to the sole and exclusive jurisdiction of the U.S. Court. Such U.S. Professionals:  (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable laws of the United States or orders of the U.S. Court; and (b) shall not be required to seek approval of their retention or compensation in the Canadian Court.

27.   Subject to paragraph 19 herein, any professional retained by the Creditors Committee, including in each case, without limitation, counsel and financial advisors (collectively, the "Committee Professionals") shall be subject to the sole and exclusive jurisdiction of the U.S. Court.  Such Committee Professionals:  (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the

16

Bankruptcy Code and any other applicable laws of the United States or orders of the U.S. Court; and (b) shall not be required to seek approval of their retention or compensation in the Canadian Court or any other court.

I.    **Notice**

28.    Notice of any motion, application or other Pleading or paper (collectively the "Court Documents") filed in one or both of the Insolvency Proceedings involving or relating to matters addressed by this Protocol and notice of any related hearings or other proceedings shall be given by appropriate means (including, where circumstances warrant, by courier, telecopier or other electronic forms of communication) to the following:  (a) all creditors and interested parties, in accordance with the practice of the jurisdiction where the papers are filed or the proceedings are to occur; and (b) to the extent not otherwise entitled to receive notice under clause (a) of this sentence, counsel to the Debtors; the U.S. Trustee; the Monitor; the Creditors Committee; the Bondholders Committee and any other statutory committees appointed in the Insolvency Proceedings and such other parties as may be designated by either of the Courts from time to time.  Notice in accordance with this paragraph shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur.  In addition to the foregoing, upon request, the U.S. Debtors or the Canadian Debtors shall provide the U.S. Court or the Canadian Court, as the case may be, with copies of any orders, decisions, opinions or similar papers issued by the other Court in the Insolvency Proceedings.

29.    When any cross-border issues or matters addressed by this Protocol are to be addressed before a Court, notices shall be provided in the manner and to the parties referred to in paragraph 28 above.

1277

**J.    Effectiveness; Modification**

30.    This Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

31.    This Protocol may not be supplemented, modified, terminated, or replaced in any manner except upon the approval of both the U.S. Court and the Canadian Court after notice and a hearing.  Notice of any legal proceeding to supplement, modify, terminate or replace this Protocol shall be given in accordance with the notice provisions set forth above.

**K.    Procedure for Resolving Disputes Under this Protocol**

32.    Disputes relating to the terms, intent or application of this Protocol may be addressed by interested parties to the U.S. Court, the Canadian Court or both Courts upon notice in accordance with the notice provisions outlined in paragraph 28 above.  In rendering a determination in any such dispute, the Court to which the issue is addressed:  (a) shall consult with the other Court; and (b) may, in its sole and exclusive discretion, either:  (i) render a binding decision after such consultation; (ii) defer to the determination of the other Court by transferring the matter, in whole or in part, to such other Court; or (iii) seek a Joint Hearing of both Courts in accordance with paragraph 12 above.  Notwithstanding the foregoing, in making a determination under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

33.    In implementing the terms of this Protocol, the U.S. Court and the Canadian Court may, in their sole, respective discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

      a.    the U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

      b.    the Court issuing such advice or guidance shall provide it to the non-issuing Court in writing;

18

1278

c.     copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 28 hereof;

d.     the Courts may jointly decide to invite the Debtors, the Creditors Committee, the Estate Representatives, the U.S. Trustee and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court; and

e.     for clarity, the provisions of this paragraph shall not be construed to restrict the ability of either Court to confer as provided in paragraph 12 above whenever it deems it appropriate to do so.

## L.    Preservation of Rights

34.     Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall: (a) prejudice or affect the powers, rights, claims and defenses of the Debtors and their estates, the Creditors Committee, the Estate Representatives, the U.S. Trustee or any of the Debtors' creditors under applicable law, including, without limitation, the Bankruptcy Code the CCAA, and the orders of the Courts; or (b) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States.

19

1279

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                        :

*In re*                            :    Chapter 11
                        :

Nortel Networks Inc., *et al.*,[1]     :    Case No. 09-10138 (KG)
                        :

             Debtors.    :    Jointly Administered
                        :

                        :    **Hearing date: April 24, 2013 at 10:00 a.m. (ET)**
                        :    **[REQUESTED]**
                        :    **Objections due: April 24, 2013 at 10:00 a.m. (ET)**
                        :    **[REQUESTED]**
                        :

                        :    Re: D.I.  9946, 9947, 10166
                        :
-------------------------------------------------------- X

## JOINT REQUEST FOR CERTIFICATION OF THE JOINT ADMINISTRATORS' NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

        Nortel Networks Inc. and its affiliated debtors, as respective debtors and debtors

in possession (collectively, the "Debtors" or the "U.S. Debtors") and the Official Committee of

Unsecured Creditors (the "Committee"), hereby respectfully submit this request for certification

of the Joint Administrators'[2] Notice of Appeal [D.I. 10166] directly to the United States Court of

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]       The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the English proceedings for Nortel Networks (Ireland) Limited are: Alan Robert Bloom and David Martin Hughes.  The EMEA Debtors include the following entities:  Nortel Networks UK Limited ("NNUK"), Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

Appeals for the Third Circuit pursuant to 28 U.S.C § 158(d)(2) (the "Request").[3]  For purposes

of this Request, the U.S. Debtors and the Committee are hereby referred to as "Movants."

In support of this Request, Movants respectfully represent as follows:

## BACKGROUND

1.        On January 14, 2009 (the "Petition Date"), the U.S Debtors, other than Nortel

Networks (CALA) Inc.,[4] filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

Court"), which cases are consolidated for procedural purposes only.

2.        On the Petition Date, the U.S. Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the U.S. Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[5] commenced a proceeding with the

Ontario Superior Court of Justice (the "Canadian Court," and together with the U.S. Court, the

"U.S. and Canadian Courts") under the Companies' Creditors Arrangement Act (Canada) (the

"CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a

Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on

the Petition Date, the High Court of England and Wales placed the EMEA Debtors into

administration (the "English Proceedings") under the control of the Joint Administrators.

---

[3]        This Request does not pertain to *the Joint Administrators' Motion for Leave to Appeal from Order Approving Allocation Protocol*, filed April 17, 2013 [D.I. 10167], which the Debtors intend to oppose.

[4]        Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[5]        The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

3.     On the Petition Date, the U.S. Debtors filed the *Motion for Entry of an Order Pursuant to 11 U.S.C. § 105(a) Approving Cross-Border Court-to-Court Protocol* [D.I. 18], which established procedures for the coordination of cross-border hearings between the U.S. and Canadian Courts.  This Court approved the Court-to-Court Protocol on January 15, 2009 [D.I. 54][6] and the Canadian Court approved the Court-to-Court Protocol on the Petition Date.  The Court-to-Court Protocol was later amended by order of this Court on June 29, 2009 [D.I. 990][7] and by an order of the Canadian Court on that same date (as amended, the "Cross Border Protocol").

4.     On January 22, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee [D.I.s 141, 142].  The Bondholder Group has also been organized.

5.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event that it was unable to maximize value through sales.  Since then, Nortel, working with all major creditor constituencies, has sold all of its business units and most of its assets to various purchasers.

6.     On or about June 9, 2009, the U.S. Debtors, the Canadian Debtors and the EMEA Debtors, excluding Nortel Networks S.A. and Nortel Networks AG, entered into the Interim Funding and Settlement Agreement ("IFSA").[8]  The IFSA addressed several important issues,

---

[6]     *Order Pursuant to 11 U.S.C. §§ 105(a) Approving Cross-Border Court-to-Court Protocol*, Jan. 15, 2009 [D.I. 54].

[7]     *Order Approving Stipulation of the Debtors and the Official Comm. of Unsecured Creditors of Nortel Networks Inc., et. al., Amending the Cross-Border Court-to-Court Protocol*, June 29, 2009 [D.I. 990].

[8]     Nortel Networks S.A. and Nortel Networks AG acceded to the IFSA as EMEA Debtors – each agreeing "to perform and comply with its obligations under the IFSA as if it had been a party from the date of execution thereof" – on or about September 11, 2009.  *Accession and Amendment Agreement relating to the Interim Funding Settlement Agreement,* dated Sept.11, 2009, at 1.

1282

including the reimbursement of NNL for costs alleged to have been incurred on behalf of NNI during the post-petition period, the prevention of a potential funding crisis at NNL and the resolution of certain payments owed by NNL to NNUK.[9]

      7.     In order to ensure that the planned sale of Nortel's businesses and assets could progress unimpeded by disputes over proceeds among various Nortel sellers, the IFSA also addressed the allocation of the Sale Proceeds.  In particular, the parties to the IFSA agreed not to condition the execution of any sale agreement upon reaching agreement with the other parties proposed to be a party to such Sale Transaction regarding the allocation (or a binding procedure for allocation) of the ultimate Sale Proceeds.  IFSA § 12(a).  The IFSA instead provides that all Sale Proceeds shall be held in escrow accounts corresponding to each Sale Transaction (each, an "Escrow Account"), and shall not be distributed

> in advance of either (i) agreement of all of the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the [Interim Sales] Protocol (as defined below) applicable to the Sale Proceeds, and subject in each case to payment of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

Id. § 12(b).

      8.     Subsequent to the IFSA, numerous sales were held.  These sales include:  (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539] (the "Layer 4-7 Sale"); (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (iv) the sale of the assets of its Wireless Networks business associated with the development of Next

---

[9]     Any description of the IFSA set forth herein is for informational purposes only.  In the event of any discrepancy between such description and the terms of the IFSA, the terms of the IFSA shall govern.

Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (v) the sale of

substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated

with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of

substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I.

2065]; (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions

business to GENBAND US LLC [D.I. 2632]; (viii) the sale of certain assets of the Debtors'

Multi-Service Switch (formerly known as "Passport") business to Ericsson [D.I. 4054]; (ix)  the

sale of the Debtors' residual patent portfolio to Rockstar Bidco, a consortium consisting of

Apple, EMC, Ericsson, Microsoft, Research in Motion, and Sony [D.I. 5935]; and (x) certain

other sale transactions (collectively, the "Sale Transactions").[10]

        9.     In connection with each these Sale Transactions, the U.S. Debtors, Canadian

Debtors and EMEA Debtors all agreed to submit to the jurisdiction of the U.S. and Canadian

Courts under the separate Escrow Agreements for each sale, which established an escrow

---

[10]    *Order Authorizing and Approving (A) Sale of Certain Non-Core Assets Free and Clear of All Liens, Claims and Encumbrances and (B) Assumption and Assignment of Certain Contracts*, Mar. 26, 2009 [D.I. 539] ("Layer 4-7 Sale Order"); *Order Authorizing and Approving (A) the Sale of Certain Assets of the Debtors' CDMA and LTE Bus. Free and Clear of All Liens, Claims and Encumbrances, (B) the Assumption and Assignment of Contracts and (C) the Assumption and Sublease of Certain Leases*, July 28, 2009 [D.I. 1205] ("CDMA Sale Order"); *Order Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests In, Debtors' Enterprise Solutions Bus., (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases*, Sept. 16, 2009 [D.I. 1514] ("Enterprise Sale Order"); *Order Authorizing and Approving Sale of Debtors' Next Generation Packet Core Network Components Free and Clear of All Liens, Claims and Interests*, Oct. 28, 2009) [D.I. 1760] ("Next Gen. Sale Order"); *Order Authorizing and Approving (A) Sale of Certain Assets of the Debtors' Metro Ethernet Networks Bus. Free and Clear of All Liens, Claims and Encumbrances and (B) Assumption and Assignment of Certain Executory Contracts*, Dec. 3, 2009 [D.I. 2070] ("MEN Sale Order"); *Order Authorizing and Approving Sale of Debtors' GSM/GSM-R Free and Clear of All Liens, Claims and Encumbrances*, Dec. 3, 2009 [D.I. 2065] ("GSM/GSM-R Sale Order"); *Order Authorizing and Approving (A) the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Commc'ns Solutions Bus. Free and Clear of All Liens, Claims and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts*, Mar. 4, 2010 [D.I. 2632] ("CVAS Sale Order"); *Order Authorizing and Approving (A) the Sale of Certain Assets of Debtors' Multi-Service Switch (Formerly Known as 'Passport') Bus. Free and Clear of All Liens, Claims and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts*, Sept. 30, 2010 [D.I. 4054] ("MSS Sale Order"); *Order Authorizing and Approving (A) the Sale of Certain Patent and Related Assets Free and Clear of All  Claims and Interests, (B) the Assumption and Assignment of Certain Executory Contracts, (C) the Rejection of Certain Patent Licenses and (D) the License Non-Assignment and Non-Renewal Protections*, July 11, 2011 [D.I. 5935] ("IP Sale Order").

account in the United States for the Sale Proceeds for each Sales Transaction.[11]  The

jurisdictional provisions of these agreements provide that the parties submit to the exclusive

jurisdiction of the U.S. and Canadian Courts for all disputes "arising under or out of, in respect

of, or in connection with" the Escrow Agreement to the extent brought prior to the final decree

closing the bankruptcy cases.  MEN Distribution Escrow Agreement, dated as of Mar, 19, 2010,

¶ 21; see also Escrow Agreement, dated as of Mar. 2009, ¶ 20; Escrow Agreement, dated as of

Nov. 11, 2009, ¶ 21; Escrow Agreement, dated as of Dec. 1, 2009 ¶ 20; Escrow Agreement,

dated as of Dec. 18, 2009, ¶ 21; GSM/GSM-R Distribution Escrow Agreement, dated as of Mar.

31, 2010, ¶ 21; CVAS Distribution Escrow Agreement, dated as of May 27, 2010, ¶ 20; GSM

Retained Contracts Distribution Escrow Agreement, dated as of June 3, 2010, ¶ 20; MSS

Distribution Escrow Agreement, dated as of Mar. 11, 2011, ¶ 20 (together, the "Escrow

Agreements").[12]

     10.    On April 25, 2011, the U.S. Debtors and Committee filed a *Joint Motion for Entry*

*of an Order, Establishing an Allocation Protocol Pursuant to the Interim Funding and*

*Settlement Agreement, and for Related Relief* [D.I. 5307] (the "Allocation Protocol Motion").

     11.    On May 19, 2011, the Joint Administrators filed an (I) Objection to Joint Motion

for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and

Settlement Agreement, and (II) Cross-Motion to Compel Arbitration [D.I. 5444] (the "Cross-

Motion to Compel Arbitration").

---

[11]    The limited exception is the jurisdictional provision in the first Escrow Agreement, executed in March of 2009, which provided for exclusive jurisdiction only in this Court.  However, that agreement is otherwise substantively consistent with jurisdictional provisions in the other Escrow Agreements.  See Escrow Agreement, dated as of Mar. 2009, ¶ 20.

[12]    In addition, a ninth escrow agreement, the Patent Portfolio Distribution Escrow Agreement, dated as of July 28, 2011 (after the Allocation Protocol Motion and Cross-Motion were filed and first argued) contains the same language as the other eight prior Escrow Agreements, but also states that inclusion of this language in that Escrow Agreement would not prejudice the right of any party to make arguments concerning the proper forum for allocation disputes.

12.     On June 3, 2011, the Joint Administrators, on behalf of the EMEA Debtors, and certain other EMEA entities filed claims against the U.S. Debtors (the "EMEA Claims").

13.     On June 7, 2011, the Court heard oral argument on the Allocation Protocol Motion and the Cross-Motion to Compel Arbitration.

14.     On March 7, 2013, the Court heard further oral argument on the Allocation Protocol Motion and the Cross-Motion to Compel Arbitration.

15.     On April 3, 2013, the Court issued an opinion regarding the Allocation Protocol Motion and Cross-Motion [D.I. 9946] (the "Opinion") finding, in relevant part, that "the Nortel Parties did not agree to arbitrate" and the "Court has jurisdiction and the IFSA [calls] for the submission of an allocation protocol."  Opinion at 15.  Accordingly, the Court denied the Cross-Motion to Compel Arbitration.  *See Order Approving Allocation Protocol*, Apr. 3, 2013, ¶ 2 [D.I 9947] (the "4/3/13 Order").

16.     On April 17, 2013, the Joint Administrators filed a *Notice of Appeal* [D.I. 10166] (the "Joint Administrators' Appeal").

17.     To date, the parties have not been able to agree upon an allocation of the Sale Proceeds among the Selling Debtors (the "Allocation Dispute").   Whether the Allocation Dispute is subject to an arbitration agreement is the focus of the Cross-Motion to Compel Arbitration and the Joint Administrators' Appeal.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction to consider the Request pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1286

## QUESTION PRESENTED

19.     By their Notice of Appeal, the Joint Administrators seek, as of right under Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a), to appeal the denial of their Cross-Motion to Compel Arbitration.

## RELIEF REQUESTED

20.     Pursuant to Rule 8001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 28 U.S.C. § 158(d)(2), Movants request that this Court certify the Notice of Appeal for immediate appeal directly to the United States Court of Appeals for the Third Circuit.[13]   A proposed form Certification Order is attached hereto as Exhibit A.

## BASIS FOR RELIEF

21.     Under 28 U.S.C. § 158(d), a Bankruptcy Court may certify an order for immediate appeal to a federal court of appeals.  Pursuant to section 158(d)(2)(A), certification of an order for immediate appeal is required if the Court, "acting on its own motion or on the request of a party," determines that:

   i.      the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

   ii.     the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

   iii.    an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

---

[13]     A certification motion under 28 U.S.C. § 158(d)(2) must be filed in the court where the matter is pending. Until an appeal is docketed in the district court, the matter remains pending in the bankruptcy court. Fed. R. Bankr. P. 8001(f)(2)-(3).  A certification motion must be made not later than 60 days after entry of the order from which the appeal is taken.  28 U.S.C. § 158(d)(2)(E).

8

28 U.S.C. § 158(d)(2)(A).

22.     The Joint Administrators' Appeal should be certified for immediate appeal because "an immediate appeal . . . [would] materially advance the progress of the case or proceeding." 28 U.S.C . § 158(d)(2)(A)(iii).

23.     The Debtors commenced their chapter 11 cases four years ago, and have divested their various business assets through the Sale Transactions. The Sale Transactions have generated over $7.5 billion. That money has been placed in Escrow Accounts and cannot be released until an allocation of that money amongst the Selling Debtors has been reached. At this time, the Allocation Dispute is one of the largest (if not the largest) issues remaining in the Debtors' cases. The issue of whether or not there is an agreement to arbitrate the Allocation Dispute is a discrete threshold legal question, which must be resolved promptly in order to allow the swift resolution of the Debtors' cases. Moreover, the Joint Administrators have asserted that the underlying litigation of the allocation of the sale proceeds is stayed pending this appeal. *See Joint Administrators' Motion for Leave to Appeal from Order Approving Allocation Protocol*, Apr. 17, 2013, at 3 [D.I. 10167]. Although the U.S. Debtors disagree and will oppose any such stay, in the event such a stay were granted, it would require that discovery on the Allocation Dispute be put on hold.[14] Thus, an immediate expedited appeal would allow the parties to receive a resolution of this appeal before significant time is lost in this already four-year old bankruptcy.

24.     Speed is particularly important here where any delay in the resolution of the Allocation Dispute means a delay of creditor recoveries and a reduction of the available assets

---

[14]     The U.S. Debtors intend to file a separate motion in this Court for an Order Retaining Jurisdiction Pending Appeal. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007) (appeal of a court's denial of a motion to compel arbitration under Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a), does not divest a lower court of jurisdiction where that appeal is "frivolous or forfeited"). These two motions are complimentary that both are designed to increase judicial efficiency and speed up resolution of these pending cases.

9

from which those creditors seek a distribution. *See In re Nortel Networks, Inc.*, 669 F.3d 128, 143-44 (3d Cir. 2011), *aff'g In re Nortel Networks Inc.*, No. 09-10138-KG, 2011 WL 1154225 (D. Del. Mar. 29, 2011), *cert. denied*, 133 S. Ct. 34 (2012).  Moreover, a delay in the resolution of the Allocation Dispute potentially could result in further inefficiencies to the extent such litigation cannot be coordinated with the resolution of the various claims filed by the EMEA Debtors against the U.S. Debtors.

25.     Movants each agree and each request that the Court certify the Notice of Appeal and Movants intend to ask for expedited proceedings in the Third Circuit in the event that the certification is accepted to further permit a faster resolution of this critical issue.

26.     Under  28 U.S.C. § 158(d)(2), the bankruptcy court or district court "shall" make the certification if (i) on its own or on a party's motion the court determines that any of the above circumstances are satisfied, or (ii) the court receives a request by a majority of appellants and majority of appellees to make the certification.  Both of these prongs are satisfied here and accordingly, Movants respectfully request that the Court certify the Joint Administrators' Appeal.

## NO PRIOR REQUEST

27.     No prior request for the relief sought herein has been made to this or any other court.

## NOTICE

28.     Notice of this Request has been given via electronic mail, facsimile, or overnight mail to (i) the U.S. Trustee; (ii) counsel to the ad hoc group of bondholders; (iii) the Core Parties (iv) counsel to the EMEA Debtors; and (v) the general service list established in these chapter 11

1289

cases.  In light of the nature of the relief requested, the Movants submit that no other or further

notice is necessary.

## CONCLUSION

29.    WHEREFORE, the Movants respectfully request that the Court grant the relief

requested herein and other such and further relief as it deems appropriate.

Dated:  April 23, 2013

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

- and –

11

AKIN GUMP STRAUSS HAUER & FELD
LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

     - and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee
of Unsecured Creditors*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- X
                                                         :
In re                                                    :    Chapter 11
                                                         :
Nortel Networks Inc., et al.,[1]                         :    Case No. 09-10138 (KG)
                                                         :
                              Debtors.                   :    Jointly Administered
                                                         :
                                                         :    Hearing date: April 24, 2013 at 10:00 a.m. (ET)
                                                         :    [REQUESTED]
                                                         :    Objections due: April 24, 2013 at 10:00 a.m. (ET)
                                                         :    [REQUESTED]
-------------------------------------------------------- X
```

## NOTICE OF JOINT REQUEST FOR CERTIFICATION OF THE JOINT ADMINISTRATORS' NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

PLEASE TAKE NOTICE that Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee," together with the Debtors, the "Movants"), have today filed the attached **Joint Request for Certification of the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2)** ("Motion").

PLEASE TAKE FURTHER NOTICE that any party wishing to oppose the entry of an order approving the Motion must file a response or objection ("Objection") if any, to the Motion with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before the objection deadline of **April 24, 2013 at 10:00 a.m. (Eastern Time) [Requested]** (the "Objection Deadline").

At the same time, you must serve such Objection on counsel for the Movants so as to be received by the Objection Deadline.

PLEASE TAKE FURTHER NOTICE THAT A HEARING ON THE MOTION WILL BE HELD ON **APRIL 24, 2013 AT 10:00 A.M. (EASTERN TIME) [REQUESTED]** BEFORE THE HONORABLE KEVIN GROSS AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 6TH FLOOR,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

COURTROOM #3, WILMINGTON, DELAWARE 19801. ONLY PARTIES WHO HAVE FILED A TIMELY OBJECTION WILL BE HEARD AT THE HEARING.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: April 23 2013

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice)*
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park

2

New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee*
*of Unsecured Creditors*

3

1294

**EXHIBIT A**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------X
                                      :    Chapter 11
                                      :
In re                                 :    Case No. 09-10138 (KG)
                                      :
Nortel Networks Inc., et al.,¹        :    Jointly Administered
                                      :
                       Debtors.       :
-------------------------------------------------X
```

## ORDER CERTIFYING THE JOINT ADMINISTRATORS'
## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

This matter coming before the Court on the Joint Request of Nortel Networks Inc. and its affiliated debtors, as respective debtors and debtors in possession (collectively, the "Debtors" or the "U.S. Debtors") and the Official Committee of Unsecured Creditors (the "Committee") for certification of the Joint Administrators' Notice of Appeal [D.I. 10166] directly to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C § 158(d)(2); and the Court having found that (i) the Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334 and 157, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (iii) notice of the Request was sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the Request establish just cause for the relief herein granted;

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

IT IS HEREBY ORDERED THAT:

1.      The Request is GRANTED as set forth herein.

2.      The Court certifies that an immediate appeal from the portion of the April

3, 2013 Order denying the Cross-Motion to Compel Arbitration is appropriate because an

immediate appeal may materially advance the progress of these long-standing cases and because

multiple parties have requested certification.

3.      This Court thus certifies the Notice of Appeal pursuant to 28 U.S.C.

§ 158(d)(2).

4.      This certification does not apply to *the Joint Administrators' Motion for

Leave to Appeal from Order Approving Allocation Protocol*, filed April 17, 2013 [D.I. 10167].

5.      The Court suggests that expedition of any direct appeal regarding the

*Notice of Appeal* is appropriate and would facilitate resolution and materially advance the

progress of these cases.

Dated: _____, 2013
       Wilmington, Delaware

                        _____
                        THE HONORABLE KEVIN GROSS
                        CHIEF UNITED STATES BANKRUPTCY JUDGE

1297

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------X
                                                        :
In re                                                   :     Chapter 11
                                                        :
Nortel Networks Inc., et al.,[1]                        :     Case No. 09-10138 (KG)
                                                        :
                                 Debtors.                :     Jointly Administered
                                                        :
                                                        :
                                                        :
-------------------------------------------------------- X
```

## JOINT MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 102(1) AND 105, FED. R. BANKR. P. 9006 AND BANKR. D. DEL. L.R. 9006-1(e) SHORTENING NOTICE RELATING TO THE JOINT REQUEST FOR CERTIFICATION OF THE JOINT ADMINISTRATORS' NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(D)(2)

Nortel Networks Inc. and its affiliated debtors, as respective debtors and debtors in possession (collectively, the "Debtors" or the "U.S. Debtors"), the Official Committee of Unsecured Creditors (the "Committee, and together with the U.S. Debtors, the "Movants") hereby move this Court (the "Motion to Shorten") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 102(1) and 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Rules"), shortening notice to allow the *Joint Request for Certification of the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2)* (the "Request") to be considered at the hearing currently scheduled for April 24, 2013, at 10:00 a.m. In support of this Motion to Shorten, the Movants respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion to Shorten is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 102(1) and 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9006 and Local Rule 9006-1(e).

## Background

3. On January 14, 2009 (the "Petition Date"), the U.S Debtors, other than Nortel Networks (CALA) Inc., filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are consolidated for procedural purposes only.

4. On the Petition Date, the U.S. Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the U.S. Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court," and together with the U.S. Court, the "U.S. and Canadian Courts") under the Companies' Creditors Arrangement

2

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed Nortel Networks UK Limited ("NNUK") and certain of its affiliates (collectively, and including NNUK, the "EMEA Debtors")[2] into administration (the "English Proceedings") under the control of the Joint Administrators.

5.      On the Petition Date, the U.S. Debtors filed the *Motion for Entry of an Order Pursuant to 11 U.S.C. § 105(a) Approving Cross-Border Court-to-Court Protocol* [D.I. 18], which established procedures for the coordination of cross-border hearings between the U.S. and Canadian Courts.  This Court approved the Court-to-Court Protocol on January 15, 2009 [D.I. 54][3] and the Canadian Court approved the Court-to-Court Protocol on the Petition Date. The Court-to-Court Protocol was later amended by order of this Court on June 29, 2009 [D.I. 990][4] and by an order of the Canadian Court on that same date (as amended, the "Cross Border Protocol").

6.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

---

[2]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited ("NNUK"), Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[3]      *Order Approving Cross-Border Court-to-Court Protocol*, Jan. 15, 2009 [D.I. 54].

[4]      *Order Approving Stipulation of the Debtors and the Official Comm. of Unsecured Creditors of Nortel Networks Inc., et. al., Amending the Cross-Border Court-to-Court Protocol*, June 29, 2009 [D.I. 990].

1300

## Relief Requested

7.  By this Motion to Shorten, the Movants respectfully request that the Court enter an order, substantially in the form of **Exhibit A** attached hereto, (i) shortening notice with respect to the Request; (ii) scheduling the Request to be heard at the hearing currently scheduled for April 24, 2013, at 10:00 a.m.; (iii) requiring objections, if any, to the Request to be raised at the hearing on the Request; and (iv) granting such other relief as may be just and proper.

## Facts Relevant to this Motion

8.  On or about June 9, 2009, the U.S. Debtors, the Canadian Debtors and the EMEA Debtors, excluding Nortel Networks S.A. and Nortel Networks AG, entered into the Interim Funding and Settlement Agreement ("IFSA").[5]  The IFSA addressed several important issues, including the reimbursement of NNL for costs alleged to have been incurred on behalf of NNI during the post-petition period, the prevention of a potential funding crisis at NNL and the resolution of certain payments owed by NNL to NNUK.[6]

9.  On April 25, 2011, the U.S. Debtors and Committee filed a Joint Motion For Entry of an Order, Establishing An Allocation Protocol pursuant to the Interim Funding and Settlement Agreement, and Related Relief  [D.I. 5307] (the "Allocation Protocol Motion").

10.  On May 19, 2011, the Joint Administrators filed an (I) Objection to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (II) Cross-Motion to Compel Arbitration [D.I. 5444] (the "Cross-Motion to Compel Arbitration").

---

[5]     Nortel Networks S.A. and Nortel Networks AG acceded to the IFSA as EMEA Debtors – each agreeing "to perform and comply with its obligations under the IFSA as if it had been a party from the date of execution thereof" – on or about September 11, 2009.  *Accession and Amendment Agreement relating to the Interim Funding Settlement Agreement,* dated September 11, 2009.

[6]     Any description of the IFSA set forth herein is for informational purposes only.  In the event of any discrepancy between such description and the terms of the IFSA, the terms of the IFSA shall govern.

11.     On April 3, 2013, the Court issued an opinion regarding the Allocation Protocol Motion and Cross-Motion [D.I. 9946] (the "Opinion") finding, in relevant part, that "the Nortel Parties did not agree to arbitrate" and the "Court has jurisdiction and the IFSA is the call for the submission of an allocation protocol." Opinion at 15. Accordingly, the Court denied the Cross-Motion. See Order Approving Allocation Protocol, dated April 3, 2013, ¶ 2 [D.I 9947] (the "4/3/13 Order").

12.     To date, the parties have not been able to agree upon an allocation of the Sale Proceeds among the Selling Debtors (the "Allocation Dispute"). Whether the Allocation Dispute is subject to an arbitration agreement is the focus of the Cross-Motion to Compel Arbitration and the Joint Administrators' Appeal.

### Basis for Relief Requested

13.     Section 102(1) of the Bankruptcy Code explains that the phrase "after notice and a hearing" requires only such notice and opportunity for a hearing as may be appropriate under the circumstances. 11 U.S.C. § 102(1). Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

14.     Under Bankruptcy Rule 9006, the Court may order time periods set by the Bankruptcy Rules to be reduced "for cause shown." Fed. R. Bankr. P. 9006.

15.     Local Rule 9006-1 requires "all motion papers shall be filed and served . . . at least eighteen (18) days (twenty-one (21) days if service is by first class mail; nineteen (19) days if service is by overnight delivery) prior to the hearing date."

16.     Moreover, according to Federal Rule of Bankruptcy Procedure 9006(c), "the court for cause shown may in its discretion with or without motion or notice order the

period reduced." Fed. R. Bankr. P. 9006(c)(1). In exercising such discretion, the court should "consider the prejudice to parties entitled to notice and weigh this against the reasons for hearing the motion on an expedited basis." *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 172 (3d Cir. 2012) (noting the commonality of such motions "given the accelerated time frame of bankruptcy proceedings"). Local Rule 9006-1(e) likewise provides for shortened notice "by order of the Court, on written motion . . . specifying the exigencies justifying shortened notice." Del. Bankr. L.R. 9006-1(e).

17. The Movants respectfully submit that allowing the relief requested in the Request to be considered on an expedited basis is reasonable and appropriate under the circumstances. As related above and more fully in the Request, speed is particularly important here where any delay in the resolution of the Allocation Dispute means a delay of creditor recoveries and a reduction of the available assets from which those creditors seek a distribution. *See In re Nortel Networks, Inc.*, 669 F.3d 128, 143-44 (3d Cir. 2011), *aff'g In re Nortel Networks Inc.*, 09-10138-KG, 2011 WL 1154225 (D. Del. Mar. 29, 2011), *cert. denied*, 133 S. Ct. 34 (2012). Moreover, a delay in the resolution of the Allocation Dispute potentially could result in further inefficiencies to the extent such litigation cannot be coordinated with the resolution of the various claims filed by the EMEA Debtors against the U.S. Debtors.

18. Movants each agree and each request that the Court certify the Notice of Appeal and Movants intend to ask for expedited proceedings in the Third Circuit in the event that the certification is accepted to further permit a faster resolution of this critical issue.

19. For these reasons, the Movants respectfully submit that allowing the Request to be considered without a hearing on shortened notice is reasonable and appropriate under the circumstances.

**No Prior Request**

20.     No prior request for the relief sought in this Motion to Shorten has been made to this or any other court.

**Notice**

21.     Notice of this Request has been given via electronic mail, fax, or overnight mail to (i) the U.S. Trustee; (ii) counsel to the ad hoc group of bondholders; (iii) counsel to the Joint Administrators of the EMEA Debtors; (iv) the Core Parties and (v) the general service list established in these chapter 11 cases.  In light of the nature of the relief requested, the Movants submit that no other or further notice is necessary.


*[Remainder of the page left intentionally blank]*

7

1304

WHEREFORE, the Movants respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) shortening notice with respect to the Request; (ii) scheduling the Request to be heard at the hearing currently scheduled for April 24, 2013, at 10:00 a.m.; (iii) requiring objections, if any, to the Request to be raised at the hearing on the Request; and (iv) granting such other relief as may be just and proper.

Dated:  April 23, 2013

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

8

- and –

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee
of Unsecured Creditors*

9

1306

**<u>EXHIBIT A</u>**

**PROPOSED FORM OF ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
: 
*In re*                                 :      Chapter 11
: 
Nortel Networks Inc., *et al.*,[1]         :      Case No. 09-10138 (KG)
: 
                Debtors.        :      Jointly Administered
: 
                                   :      **Re: D.I. _____**
: 
-------------------------------------------------------- X

## ORDER GRANTING THE JOINT MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 102(1) AND 105, FED. R. BANKR. P. 9006 AND BANKR. D. DEL. L.R. 9006-1(e) SHORTENING NOTICE RELATING TO THE JOINT REQUEST FOR CERTIFICATION OF THE JOINT ADMINISTRATORS' NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT <u>PURSUANT TO 28 U.S.C. § 158(D)(2)</u>

Upon the joint motion dated April 23, 2013 (the "<u>Motion to Shorten</u>"),[2] of Nortel

Networks Inc. and its affiliated debtors, as respective debtors and debtors in possession

(collectively, the "<u>Debtors</u>" or the "<u>U.S. Debtors</u>"), the Official Committee of Unsecured

Creditors (the "<u>Committee</u>," together with the U.S. Debtors, the "<u>Movants</u>"), pursuant to sections

102(1) and 105 of the Bankruptcy Code, Bankruptcy Rule 9006 and Local Rule 9006-1(e),

requesting an order shortening notice to allow the *Joint Request for Certification of the Joint*

*Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit* (the

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]       Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion to Shorten.

"Request") to be considered at the hearing currently scheduled for April 24, 2013, at 10:00 a.m.; and the Court having jurisdiction to consider the Motion to Shorten and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion to Shorten and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion to Shorten having been provided to the parties listed therein and no adverse interest being affected; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion to Shorten is **GRANTED** as set forth herein.

2.      The Request will be considered at the hearing currently scheduled for April 24, 2013, at 10:00 a.m.

3.      Objections, if any, to the Request may be raised at any time prior to or at the hearing on the Request.

4.      This Court retains jurisdiction to construe and enforce the terms of this Order.

Dated: _____, 2013
          Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

2

1309

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
                       :

*In re*                     :

Nortel Networks Inc., *et al.*, [1]   :

            Debtors.   :

| | |
|---|---|
| Chapter 11 | |
| Case No. 09-10138 (KG) | |
| Jointly Administered | |
| **Hearing Date:** To Be Determined | |
| **Objections Due:** To Be Determined | |

---------------------------------------------------------X

## JOINT MOTION FOR AN ORDER
## RETAINING JURISDICTION PENDING APPEAL

      Nortel Networks Inc. ("NNI") and its affiliated debtors, as respective debtors and

debtors in possession (collectively, the "Debtors" or the "U.S. Debtors"), jointly with the Official

Committee of Unsecured Creditors (the "Committee" and collectively with the U.S. Debtors, the

"Movants") hereby move this Court (the "Motion"), pursuant to Section 105 of Title 11 of the

United States Code (the "Bankruptcy Code") for entry of an order in the form attached as Exhibit

A, declaring the appeal by the court-appointed administrators and authorized foreign

representatives (collectively, the "Joint Administrators") for Nortel Networks UK Limited and

certain of its affiliates (collectively, the "EMEA Debtors"), dated April 17, 2013 [D.I. 10166]

(the "Appeal") from this Court's order dated April 3, 2013 (the "Order") [D.I. 9947] and related

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

opinion (the "Opinion") [D.I. 9946], to be frivolous, and retaining jurisdiction over all aspects of

the above-referenced proceedings pending resolution of the Appeal.[2] In support of this Motion,

the Movants respectfully represent as follows:

## **BACKGROUND & PROCEDURAL HISTORY**

1.      On April 25, 2011, the U.S. Debtors and Committee filed a *Joint Motion*

*for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and*

*Settlement Agreement*, and for Related Relief [D.I. 5307] (the "Allocation Protocol Motion").

2.      On May 19, 2011, the Joint Administrators filed an *(I) Objection to Joint*

*Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim*

*Funding and Settlement Agreement, and (II) Cross-Motion to Compel Arbitration* [D.I. 5444]

(the "Cross-Motion to Compel Arbitration").

3.      On June 7, 2011, the Court heard oral argument on the Allocation Protocol

Motion and Cross-Motion to Compel Arbitration.

4.      On March 7, 2013 this Court heard further oral argument on the

Allocation Protocol Motion and Cross-Motion to Compel Arbitration.

---

[2]      In support of this Motion, Movants rely on and incorporate by reference their prior submissions relating to the Allocation Protocol Motion and Cross-Motion to Compel Arbitration (as defined herein), including, but not limited to, (i) the *Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief*, dated April 25, 2011 [D.I. 5307]; (ii) the *Reply Memorandum of U.S. Debtors and Committee in Further Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, and in Response to the EMEA Debtors Cross-Motion to Compel Arbitration*, dated June 2, 2011 [D.I. 5571]; and (iii) the *Supplemental Submission of the U.S. Debtors and Official Committee of Unsecured Creditors on Allocation Protocol Issues*, dated March 4, 2013 [D.I. 9570] (the "U.S. Supplemental Submission"). Movants further note that all parties have had the opportunity to brief the Court on these issues, including via: (a) the *Joint Administrators' Memorandum of Law in Support of Their (I) Objection to Joint Motion for Entry of An Order Establishing An Allocation Protocol Pursuant To the Interim Funding And Settlement Agreement, and (II) Cross-Motion To Compel Arbitration*, dated May 19, 2011 [D.I. 5531] (the "EMEA Opening Brief"); (b) the *Joint Administrators' Reply Memorandum of Law in Further Support of Their Cross-Motion to Compel Arbitration*, dated June 6, 2011 [D.I. 5608]; and (c) the *Joint Administrators' Supplemental Memorandum of Law in Support of Their (I) Objection to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (II) Cross-Motion to Compel Arbitration*, dated March 4, 2013 [D.I. 9569].

5.    On April 3, 2013, the Court issued the Opinion regarding the Allocation Protocol Motion and Cross-Motion to Compel Arbitration, finding that the Interim Funding and Settlement Agreement (the "IFSA") "is not reasonably susceptible of more than one interpretation and therefore is not ambiguous," Opinion at 7, and that "[i]t is very clear that the Nortel Parties did not agree to arbitrate," Opinion at 11.  Accordingly, the Court denied the Cross-Motion to Compel Arbitration.  *See* Order ¶ 2.  On the same date, the Ontario Superior Court of Justice likewise concluded that the Joint Administrators' arguments in favor of arbitration were "inherently flawed," and that a "plain and common sense reading" of the IFSA precluded any finding that an agreement to arbitrate existed.  *Nortel Networks Corporation (Re)*, 2013 ONSC 1757, at 6-7 (the "Canadian Court's Endorsement").

6.    On April 17, 2013, the Joint Administrators filed the Appeal, challenging those portions of the Opinion and Order that denied their Cross-Motion to Compel Arbitration.[3]

## BASIS FOR RELIEF REQUESTED

7.    Once again, and despite their protests to the contrary, the Joint Administrators are doing their level best to delay and disrupt these proceedings.  Having blanketed the allocation dispute with the overlay of their baseless claims, the Joint Administrators now appeal the denial of the Cross-Motion to Compel Arbitration and in doing so attempt to divest this Court of jurisdiction.  This effort fails.  Notwithstanding the Appeal, this Court can and should determine that litigation of the allocation dispute is not stayed.

8.    The Joint Administrators assert in papers supporting their separate motion for leave to appeal the Court's Order that this Appeal automatically divests this Court of

---

[3]    In a further effort to muddy the waters, the Joint Administrators have also filed a motion in this Court for leave to appeal the as yet not approved Allocation Protocol, *see Joint Administrators' Motion for Leave to Appeal from Order Approving Allocation Protocol*, dated April 17, 2013 [D.I. 10167] (the "EMEA Motion for Leave to Appeal"), as well as a motion for leave to appeal in Canada seeking substantially similar relief, *see Notice of Motion for Leave to Appeal*, dated April 23, 2013 [Court File No. pending].

3

jurisdiction to decide the underlying allocation dispute. *See* EMEA Motion for Leave to Appeal at 3. This, however, is not the law in the Third Circuit. In *Ehleiter v. Grapetree Shores, Inc.*, the Third Circuit stated the rule that the appeal of a court's denial of a motion to compel arbitration under Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a), <u>does not divest a lower court of jurisdiction</u> where that appeal is "frivolous or forfeited." 482 F.3d 207, 215 n.6 (3d Cir. 2007) (citing, *inter alia*, *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997)). An appeal is frivolous where, "following a thorough analysis of the record and careful research of the law, a reasonable attorney would conclude" that the appeal "lacks colorable support or is wholly without merit." *Nagle v. Alspach*, 8 F.3d 141, 145-46 (3d Cir. 1993) (internal quotation marks and citation omitted).[4]

9.      There can be no doubt that the Joint Administrators' Appeal is frivolous. Both the US and Canadian Courts have determined that here there is simply no agreement to arbitrate. Where there is no agreement to arbitrate, it is black letter law that parties cannot be compelled to arbitrate. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857-58 (2010) (The "first principle" of arbitration is that it "is strictly a matter of consent and thus is a way to resolve . . . disputes – but only those disputes – that the parties have agreed to submit to arbitration." (citation and emphasis omitted)). The Joint Administrators have made no colorable argument – and can make none on appeal – that such an agreement exists here. *See In re Magna Entm't Corp.*, 2012 WL 272847, at *3 (finding appeal frivolous where, *inter alia*, no evidence

---

[4]      The lower court has the authority to make this determination of its own accord, *see Bradford-Scott Data Corp.*, 128 F.3d at 506, and several district and bankruptcy courts within this Circuit have recognized their authority to prevent the disruptive effect of plainly non-meritorious appeals by declaring such appeals to be frivolous. *See In re Magna Entm't Corp.*, No. 09-10720 (MFW), 2012 WL 272847, at *3 (Bankr. D. Del. Jan. 30, 2012); *Traxys N. Am. LLC v. Evraz Claymont Steel, Inc.*, Civil Action No. 09-684, 2011 WL 1868836, at *2 (D. Del. May 16, 2011); *see also Kirleis v. Dickie, McCamey & Chicolte, PC*, Civil Action No. 06-1495, 2007 WL 3023950, at *3 (W.D. Pa. Oct. 12, 2007). This Court should do the same, and retain jurisdiction of the allocation proceedings while the Appeal is pending.

existed of an agreement to arbitrate (citing *Kirleis*, 2007 WL 3023950, at \*3)).

       10.    In urging this Court that the parties to the IFSA agreed to arbitration, the Joint Administrators rely solely on Section 12 of that document, which provides that the parties will "negotiate and *attempt* to reach agreement on a protocol for resolving allocation," making clear that the IFSA itself does not specify that resolution mechanism.  Opinion at 12 (emphasis added); *see also* U.S. Supplemental Submission at 7 & n.12 (citing, *inter alia*, *IDT Corp. v. Tyco Grp.*, 13 N.Y. 3d 209, 213 n.2, 913 N.E. 2d 913, 915 n.2 (2009) (finding that where an "agreement contemplated the negotiation of later agreements" then "the consummation of those agreements was a precondition to a party's performance")).  As the Court correctly noted, this reading of the IFSA is consistent with – and indeed required by – the U.S. IFSA Order, which provides that "no protocol for allocation . . . may become effective without the prior approval of this Court," as well as federal and local Bankruptcy Rules requiring prior court approval of arbitration.  *See* Opinion at 13 (citing Fed. R. Bankr. P. 9019(c); Del. Bankr. L.R. 9013-3(b)(i)).  Thus, it is clear that the IFSA itself is not an agreement to arbitrate.

       11.    As the Court also observed, the absence of any terms describing how arbitration would be conducted in an agreement drafted by sophisticated parties makes it all the more clear that "the parties *did not even approach* any agreement on arbitration."  *Id.* at 12 & n.9 (emphasis added) (citing *Truck Drivers, Oil Drivers, Filing Station & Platform Workers' Union Local 705, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. (AFL-CIO) v. Schneider Tank Lines, Inc.*, 958 F.2d 171, 175 (7th Cir. 1992); *Bor Corp. v. ADT Automotive, Inc.*, Case No. 96 Civ. 1019, 1996 WL 689364 (JFK), at \*10 (S.D.N.Y., Nov. 27, 1996)).  Again, the fact that this Court already found the parties "did not even approach" any agreement to arbitrate underscores the frivolous nature of the Appeal.

5

12.    The "only language in the IFSA upon which the EMEA Debtors attempt to gain a foothold for their arbitration argument is the term 'dispute resolvers.'" Opinion at 13 (quoting IFSA § 12(c)). But given that the IFSA represents only an "agreement to negotiate" as to how the allocation dispute might one day be resolved, the term "dispute resolvers" is unambiguous in leaving *open* who will decide the allocation dispute – a court, multiple courts, an arbitrator, multiple arbitrators, or some other possibility. See U.S. Supplemental Submission at 8. As noted by the Court, although the Joint Administrators point to a single case to argue that "dispute resolver[]" must mean "an arbitrator," in that case, "dispute resolver[]" was a defined term, while Movants have shown here that there is substantial case law referring to courts as dispute resolvers. See Opinion at 13-14 (discussing *Palumbo v. Select Mgmt. Holdings, Inc.*, No. 82900, 2003 WL 22674397 (Ohio Ct. App. Nov. 13, 2003)); *see also* EMEA Opening Brief at 18; *cf. Kuntz v. Saul, Ewing, Remick & Saul (In re Grand Union Co.)*, 200 B.R. 101, 106 (D. Del. 1996) (finding appeal to be frivolous where, *inter alia*, appellant "cite[d] no cases in support of [an] argument," and also "provide[d] no factual basis" for a contention on appeal).

13.    Accordingly, this Court found that the IFSA is not ambiguous: "[it] is not reasonably susceptible of more than one interpretation and therefore is not ambiguous." Opinion at 7; *see also id.* at 11 ("It is very clear that the Nortel Parties did not agree to arbitrate."). The Canadian Court found the same. Canadian Court's Endorsement at 6 ("I do not find the IFSA, or any of the documents, to be ambiguous in this regard."). Given the Joint Administrators' failure to make a *prima facie* showing that any agreement containing an arbitration clause even exists, their Appeal is frivolous, and this Court should retain jurisdiction while the Appeal is pending. *See In re Magna Entm't Corp.*, 2012 WL 272847, at *3.

6

14.     It is also important to note that the Court retains jurisdiction to enforce its orders pending any appeal.  *See generally In re Washington Mutual, Inc.*, 461 B.R. 200, 219 (Bankr. D. Del. 2011) ("[T]he correct statement of the Divestiture Rule is that so long as the lower court is not altering the appealed order, the lower court retains jurisdiction to enforce it."); *see also In re Tribune Co.*  472 B.R. 223, 231 (Bankr. D.Del. 2012) ("The application of a broad rule that a bankruptcy court may not consider any request filed while an appeal is pending has the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner." (quoting *In re Whispering Pines Estates, Inc.*, 369 B.R. 752, 757 (1st Cir. BAP 2007)). This Court also has the power to determine whether the Appeal is frivolous and whether to retain jurisdiction during the pendency of the Appeal.  The Court should exercise that power and should determine that this Appeal is frivolous so that the allocation proceedings can progress in an efficient and expeditious manner.  Staying all proceedings relating to the allocation dispute during the Joint Administrators' Appeal risks weeks or even months of further delay in a case where discovery and trial are now overdue.  As this Court has aptly stated, "[t]his case has got to go forward . . .  and we have to keep it moving quickly."  *Hr'g Tr.* in *In re Nortel Networks* (March 27, 2013) at 37:2-37:4 [D.I. 9894].[5]

15.     Finally, and most importantly, the Court should find that the Appeal is frivolous to permit discovery to commence immediately and maintain the schedule so critical to creditors around the world.  Having tied these proceedings in knots for over two years, the Joint Administrators should not be allowed to further delay discovery and trial as they search for a non-existent agreement to arbitrate.

---

[5]     The U.S Debtors have joined in a separate Joint Request for Certification of the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2). These two motions are complimentary in that both are designed to increase judicial efficiency and speed up resolution of these pending cases.

16. For the foregoing reasons and for all the reasons set forth in the voluminous papers supporting the Allocation Protocol Motion and in opposition to the Cross-Motion to Compel Arbitration, there simply is no agreement to arbitrate here. Therefore, this Court should issue an order declaring the Appeal frivolous and retaining jurisdiction while the Appeal is pending.

## NO PRIOR REQUEST

17. No prior request for the relief sought herein has been made to this or any other court.

## NOTICE

18. Notice of this Objection has been given via electronic mail, facsimile, or overnight mail to (i) the U.S. Trustee; (ii) counsel to the Joint Administrators; (iii) counsel to the ad hoc group of bondholders; (iv) the Core Parties; and (v) the general service list established in these chapter 11 cases. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court (i) enter the proposed order declaring the Appeal frivolous and retaining jurisdiction over the entirety of these proceedings; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: April 23, 2013
    Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)

8

One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

9

Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee
of Unsecured Creditors*

10

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------X
                                          :
                                          :
                                          :      Chapter 11
                                          :
In re                                     :
                                          :      Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,[1]          :
                                          :      Jointly Administered
                    Debtors.              :
                                          :      Hearing Date:  To be Determined
                                          :
                                          :      Objections Due:  To be Determined
                                          :
                                          :
-------------------------------------------------------X
```

## NOTICE OF JOINT MOTION FOR AN ORDER
## RETAINING JURISDICTION PENDING APPEAL

PLEASE TAKE NOTICE that Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee," together with the Debtors, the "Movants"), have today filed the attached **Joint Motion for an Order Retaining Jurisdiction Pending Appeal** ("Motion").

PLEASE TAKE FURTHER NOTICE that any party wishing to oppose the entry of an order approving the Motion must file a response or objection ("Objection") if any, to the Motion with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before the **to be determined** objection deadline (the "Objection Deadline").

At the same time, you must serve such Objection on counsel for the Movants so as to be received by the Objection Deadline.

PLEASE TAKE FURTHER NOTICE THAT A HEARING ON THE MOTION WILL BE HELD ON A **DATE AND TIME TO BE DETERMINED** BEFORE THE HONORABLE KEVIN GROSS AT THE UNITED STATES BANKRUPTCY COURT FOR

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

THE DISTRICT OF DELAWARE, 824 MARKET STREET, 6TH FLOOR, COURTROOM #3, WILMINGTON, DELAWARE 19801. ONLY PARTIES WHO HAVE FILED A TIMELY OBJECTION WILL BE HEARD AT THE HEARING.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: April 23, 2013

CLEARY GOTTLIEB STEEN & HAMILTON LLP
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and –


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Eric D. Schwartz (No. 3134)
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street, 18th Floor
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 425-4663

*Counsel for the Debtors and Debtors in Possession*

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

- and -

2

1321

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee*
*of Unsecured Creditors*

1322

**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------X
                                                       :
                                                       :     Chapter 11
                                                       :
In re                                                  :
                                                       :     Case No. 09-10138 (KG)
Nortel Networks Inc., et al., ¹                        :
                                                       :     Jointly Administered
                      Debtors.                         :
                                                       :     RE:  D.I. _____
                                                       :
                                                       :
                                                       :
-------------------------------------------------------X
```

## ORDER GRANTING JOINT MOTION FOR
## AN ORDER RETAINING JURISDICTION PENDING APPEAL

Upon the Joint Motion (the "Motion")² filed by Nortel Networks Inc. ("NNI") and certain

of its affiliates, as debtors and debtors-in-possession in the above-captioned cases (collectively,

the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee"),

requesting an order pursuant to Section 105 of the Bankruptcy Code declaring the Joint

Administrators' appeal from this Court's Order [D.I. 9947] and the related Opinion [D.I. 9946]

dated April 3, 2013 [D.I. 10166] (the "Appeal") to be frivolous and retaining this Court's

jurisdiction over all aspects of the above-referenced proceedings pending resolution of the

Appeal, as well as the documents attached thereto; and upon all prior submissions regarding the

---

¹        The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

²        Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

Allocation Protocol Motion and the Cross-Motion to Compel Arbitration; and upon the record of

these Chapter 11 proceedings; and upon the record of the hearing on the Motion held on _____;

and adequate notice of the Motion having been given; and it appearing that no other or further

notice is required; and the Court having jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined that

consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and

sufficient cause appearing therefor;

       IT IS HEREBY ORDERED THAT:

       1.      The Motion is GRANTED.

       2.      The Appeal filed by the Joint Administrators lacks colorable support and is

wholly without merit, and therefore is frivolous and does not deprive this Court of jurisdiction.

       3.      This Court will retain jurisdiction over all aspects of the proceedings in this Court

to which the Appeal relates, pending the outcome of the Appeal.

       4.      The parties shall proceed with discovery and trial as directed by further order of

this Court.


Dated: _____, 2013
       Wilmington, Delaware

                              _____
                              THE HONORABLE KEVIN GROSS
                              CHIEF UNITED STATE BANKRUPTCY JUDGE

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                                          :
*In re*                                   :      Chapter 11
                                          :
Nortel Networks Inc., *et al.*,[1]        :      Case No. 09-10138 (KG)
                                          :
                      Debtors.            :      Jointly Administered
                                          :
                                          :
                                          :
-------------------------------------------------------- X

## JOINT MOTION FOR ENTRY OF AN ORDER UNDER
## 11 U.S.C. §§ 102(1) AND 105, FED. R. BANKR. P. 9006 AND BANKR. D. DEL. L.R. 9006-1(e) SHORTENING NOTICE RELATING TO THE JOINT MOTION FOR AN ORDER RETAINING JURISDICTION PENDING APPEAL

Nortel Networks Inc. ("NNI") and its affiliated debtors, as respective debtors and debtors in possession (collectively, the "Debtors" or the "U.S. Debtors"), jointly with the Official Committee of Unsecured Creditors (the "Committee" and collectively with the U.S. Debtors, the "Movants") hereby move this Court (the "Motion to Shorten") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 102(1) and 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), shortening notice to allow the *Joint Motion for an Order Retaining Jurisdiction Pending Appeal* (the "Motion") to be considered at the Court's

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

convenience. In support of this Motion to Shorten, the Movants respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion to Shorten is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 102(1) and 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9006 and Local Rule 9006-1(e).

## Background

3. On January 14, 2009 (the "Petition Date"), the U.S Debtors, other than Nortel Networks (CALA) Inc., filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are consolidated for procedural purposes only.

4. On the Petition Date, the U.S. Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the U.S. Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court," and together with the U.S. Court, the "U.S. and Canadian Courts") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed the

2

EMEA Debtors into administration (the "English Proceedings") under the control of the Joint Administrators.

5.      On the Petition Date, the U.S. Debtors filed the *Motion for Entry of an Order Pursuant to 11 U.S.C. § 105(a) Approving Cross-Border Court-to-Court Protocol* [D.I. 18], which established procedures for the coordination of cross-border hearings between the U.S. and Canadian Courts.  This Court approved the Court-to-Court Protocol on January 15, 2009 [D.I. 54][2] and the Canadian Court approved the Court-to-Court Protocol on the Petition Date. The Court-to-Court Protocol was later amended by order of this Court on June 29, 2009 [D.I. 990][3] and by an order of the Canadian Court on that same date (as amended, the "Cross Border Protocol").

6.      The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "UCC") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

### Relief Requested

7.      By this Motion to Shorten, the Parties respectfully request that the Court enter an order, substantially in the form of **Exhibit A** attached hereto, (i) shortening notice with respect to the Motion; (ii) scheduling the Motion to be heard at the Court's earliest convenience; (iii) requiring objections, if any, to the Motion to be raised at a date set by the Court; and (iv) granting such other relief as may be just and proper.

---

[2]      *Order Approving Cross-Border Court-to-Court Protocol*, Jan. 15, 2009 [D.I. 54].

[3]      *Order Approving Stipulation of the Debtors and the Official Comm. of Unsecured Creditors of Nortel Networks Inc., et. al., Amending the Cross-Border Court-to-Court Protocol*, June 29, 2009 [D.I. 990].

1328

## Facts Relevant to this Motion

8.      On or about June 9, 2009, the U.S. Debtors, the Canadian Debtors and the EMEA Debtors, excluding Nortel Networks S.A. and Nortel Networks AG, entered into the Interim Funding and Settlement Agreement ("IFSA").   The IFSA addressed several important issues, including the reimbursement of NNL for costs alleged to have been incurred on behalf of NNI during the post-petition period, the prevention of a potential funding crisis at NNL and the resolution of certain payments owed by NNL to NNUK.

9.      On April 25, 2011, the U.S. Debtors and Committee filed a Joint Motion For Entry of an Order, Establishing An Allocation Protocol pursuant to the Interim Funding and Settlement Agreement, and Related Relief  [D.I. 5307] (the "Allocation Protocol Motion").

10.     On May 19, 2011, the Joint Administrators filed an (I) Objection to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (II) Cross-Motion to Compel Arbitration [D.I. 5444] (the "Cross-Motion to Compel Arbitration").

11.     On April 3, 2013, the Court issued an opinion regarding the Allocation Protocol Motion and Cross-Motion [D.I. 9946] (the "Opinion") finding, in relevant part, that finding that the Interim Funding and Settlement Agreement (the "IFSA") "is not reasonably susceptible of more than one interpretation and therefore is not ambiguous," Opinion at 7, and that "it is very clear that the Nortel Parties did not agree to arbitrate," Opinion at 11. Accordingly, the Court denied the Cross-Motion to Compel Arbitration.  *See* Order ¶ 2.  On the same date, the Ontario Superior Court of Justice likewise concluded that the Joint Administrators' arguments in favor of arbitration were "inherently flawed,"  and that a "plain and common sense reading" of the IFSA precluded any finding that an agreement to arbitrate

1329

existed. *Nortel Networks Corporation (re)*, 2013 ONSC 1757, at 6-7 (April 3, 2013) (the "Canadian Court's Endorsement").

13. On April 17, 2013, the Joint Administrators filed the Appeal, challenging those portions of the Opinion and Order that denied their Cross-Motion To Compel Arbitration.

### **Basis for Relief Requested**

13. Section 102(1) of the Bankruptcy Code explains that the phrase "after notice and a hearing" requires only such notice and opportunity for a hearing as may be appropriate under the circumstances. 11 U.S.C. § 102(1). Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

14. Under Bankruptcy Rule 9006, the Court may order time periods set by the Bankruptcy Rules to be reduced "for cause shown." Fed. R. Bankr. P. 9006.

15. Local Rule 9006-1 requires "all motion papers shall be filed and served . . . at least eighteen (18) days (twenty-one (21) days if service is by first class mail; nineteen (19) days if service is by overnight delivery) prior to the hearing date."

16. Moreover, according to Federal Rule of Bankruptcy Procedure 9006(c), "the court for cause shown may in its discretion with or without motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1). In exercising such discretion, the court should "consider the prejudice to parties entitled to notice and weigh this against the reasons for hearing the motion on an expedited basis." *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 172 (3d Cir. 2012) (noting the commonality of such motions "given the accelerated time frame of bankruptcy proceedings"). Local Rule 9006-1(e) likewise provides for shortened notice "by

5

order of the Court, on written motion . . . specifying the exigencies justifying shortened notice." Del. Bankr. L.R. 9006-1(e).

17.      The Movants respectfully submit that allowing the relief requested in the Motion to be considered on an expedited basis is reasonable and appropriate under the circumstances.  As related above and more fully in the Motion, the Joint Administrators' Appeal of the Court's denial of their Cross-Motion to Compel Arbitration is frivolous.  Where there is no agreement to arbitrate, it is black letter law that parties cannot be compelled to arbitrate.  *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 130 S. Ct. 2847, 2857-58 (2010) (The "first principle" of arbitration is that it "is strictly a matter of consent and thus is a way to resolve . . . disputes – but only those disputes – that the parties have agreed to submit to arbitration." (citation and emphasis omitted)).  In addition to the fact that there is no colorable argument that there is an arbitration agreement here, to stay all proceedings relating to the allocation dispute during the Joint Administrators' Appeal risks weeks or even months of further delay in a case where discovery and trial are now overdue.  As this Court has aptly stated, "[t]his case has got to go forward . . . and we have to keep it moving quickly."  Transcript of Hearing dated March 27, 2013, at 37:2-37:4 [D.I. 9894].

18.      For these reasons, the Movants respectfully submit that allowing the Motion to be considered on shortened notice is reasonable and appropriate under the circumstances.

### **No Prior Request**

19.      No prior request for the relief sought in this Motion to Shorten has been made to this or any other court.

6

1331

**Notice**

20.      Notice of this Objection has been given via electronic mail, facsimile, or overnight mail to (i) the U.S. Trustee; (ii) counsel to the ad hoc group of bondholders; (iii) counsel to the EMEA Debtors; (iv) the Core Parties; and (v) the general service list established in these chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

*[Remainder of the page left intentionally blank.]*

1332

WHEREFORE, the Movants respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) shortening notice with respect to the Motion; (ii) scheduling the Motion to be heard at the Court's earliest convenience; (iii) requiring objections, if any, to the Motion to be raised at the hearing on the Motion; and (iv) granting such other relief as may be just and proper.

Dated:  April 23, 2013
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

    - and -

8

1333

AKIN GUMP STRAUSS HAUER & FELD
LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

Counsel for the Official Committee
of Unsecured Creditors

**<u>EXHIBIT A</u>**

**PROPOSED FORM OF ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- X
                                                        :
*In re*                                                 :      Chapter 11
                                                        :
Nortel Networks Inc., *et al.*,[1]                      :      Case No. 09-10138 (KG)
                                                        :
                                    Debtors.            :      Jointly Administered
                                                        :
                                                        :
                                                        :
------------------------------------------------------- X

## ORDER GRANTING THE JOINT MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 102(1) AND 105, FED. R. BANKR. P. 9006 AND BANKR. D. DEL. L.R. 9006-1(e) SHORTENING NOTICE RELATING TO THE JOINT MOTION FOR AN ORDER RETAINING JURISDICTION PENDING APPEAL

Upon the joint motion dated April 23, 2013 (the "Motion to Shorten")[2] of Nortel

Networks Inc. ("NNI") and its affiliated debtors, as respective debtors and debtors in possession

(collectively, the "Debtors" or the "U.S. Debtors"), jointly with the Official Committee of

Unsecured Creditors (the "Committee" and collectively with the U.S. Debtors, the "Movants"),

pursuant to sections 102(1) and 105 of the Bankruptcy Code, Bankruptcy Rule 9006 and Local

Rule 9006-1(e), requesting an order shortening notice to allow the *Joint Motion for an Order*

*Retaining Jurisdiction Pending Appeal* (the "Motion") to be considered at the Court's earliest

convenience; and the Court having jurisdiction to consider the Motion to Shorten and the relief

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion to Shorten.

requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion to

Shorten and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion to Shorten having been provided to the parties listed therein and no

adverse interest being affected; and after due deliberation and sufficient cause appearing

therefor,

> IT IS HEREBY ORDERED THAT:

> 1.      The Motion to Shorten is **GRANTED** as set forth herein.

> 2.      The Motion will be considered at the hearing scheduled on

_____.

> 3.      Objections, if any, to the Motion may be raised on or before

_____.

> 4.      This Court retains jurisdiction to construe and enforce the terms of this

Order.

Dated: _____, 2013
　　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　THE HONORABLE KEVIN GROSS
　　　　　　　　　　　　　　　　　CHIEF UNITED STATES BANKRUPTCY JUDGE

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------X
                                        :
In re                                   :    Chapter 11
                                        :
Nortel Networks Inc., et al.,¹          :    Case No. 09-10138 (KG)
                                        :
                        Debtors.        :    Jointly Administered
                                        :
                                        :    Re: D.I. 10245
                                        :
                                        :
------------------------------------------------------X
```

## ORDER GRANTING THE JOINT MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 102(1) AND 105, FED. R. BANKR. P. 9006 AND BANKR. D. DEL. L.R. 9006-1(e) SHORTENING NOTICE RELATING TO THE JOINT REQUEST FOR CERTIFICATION OF THE JOINT ADMINISTRATORS' NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(D)(2)

Upon the joint motion dated April 23, 2013 (the "Motion to Shorten"),² of Nortel Networks Inc. and its affiliated debtors, as respective debtors and debtors in possession (collectively, the "Debtors" or the "U.S. Debtors"), the Official Committee of Unsecured Creditors (the "Committee," together with the U.S. Debtors, the "Movants"), pursuant to sections 102(1) and 105 of the Bankruptcy Code, Bankruptcy Rule 9006 and Local Rule 9006-1(e), requesting an order shortening notice to allow the *Joint Request for Certification of the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit* (the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion to Shorten.

"Request") to be considered at the hearing currently scheduled for April 24, 2013, at 10:00 a.m.;

and the Court having jurisdiction to consider the Motion to Shorten and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion to Shorten and

the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice

of the Motion to Shorten having been provided to the parties listed therein and no adverse

interest being affected; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion to Shorten is **GRANTED** as set forth herein.

2.      The Request will be considered at the hearing currently scheduled for

April 24, 2013, at 10:00 a.m.

3.      Objections, if any, to the Request may be raised at any time prior to or at

the hearing on the Request.

4.      This Court retains jurisdiction to construe and enforce the terms of this

Order.

Dated: APRIL 24, 2013
        Wilmington, Delaware

THE HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

2

1339

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------X
                                      :
In re                                 :      Chapter 11
                                      :
Nortel Networks Inc., et al.,¹        :      Case No. 09-10138 (KG)
                                      :
                  Debtors.            :      Jointly Administered
                                      :
                                      :      Re: D.I. 10245
                                      :
-------------------------------------------------------X
```

## ORDER GRANTING THE JOINT MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 102(1) AND 105, FED. R. BANKR. P. 9006 AND BANKR. D. DEL. L.R. 9006-1(e) SHORTENING NOTICE RELATING TO THE JOINT MOTION FOR AN ORDER RETAINING JURISDICTION PENDING APPEAL

Upon the joint motion dated April 23, 2013 (the "Motion to Shorten")[2] of Nortel

Networks Inc. ("NNI") and its affiliated debtors, as respective debtors and debtors in possession

(collectively, the "Debtors" or the "U.S. Debtors"), jointly with the Official Committee of

Unsecured Creditors (the "Committee" and collectively with the U.S. Debtors, the "Movants"),

pursuant to sections 102(1) and 105 of the Bankruptcy Code, Bankruptcy Rule 9006 and Local

Rule 9006-1(e), requesting an order shortening notice to allow the *Joint Motion for an Order*

*Retaining Jurisdiction Pending Appeal* (the "Motion") to be considered at the Court's earliest

convenience; and the Court having jurisdiction to consider the Motion to Shorten and the relief

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion to Shorten.

requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion to Shorten and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion to Shorten having been provided to the parties listed therein and no adverse interest being affected; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.   The Motion to Shorten is **GRANTED** as set forth herein.

2.   The Motion will be considered at the hearing scheduled on May 1, 2013 at 10:00 am

3.   Objections, if any, to the Motion may be raised on or before April 29, 2013.

4.   This Court retains jurisdiction to construe and enforce the terms of this Order.

Dated: April 24, 2013
       Wilmington, Delaware

THE HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

2

1341

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| NORTEL NETWORKS INC., *et al.*, | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **RE:  Docket No. 10244** |

## JOINT ADMINISTRATORS' JOINDER IN PART AND RESPONSE TO JOINT REQUEST FOR CERTIFICATION OF THE JOINT ADMINISTRATORS' NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

The court-appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators")[1] for Nortel Networks UK Limited ("NNUK") and certain of its affiliates (collectively, and including NNUK, the "EMEA Debtors"),[2] hereby join in part and respond (the "Response") to the *Joint Request for Certification of the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2)* (the "Certification Request," D.I. 10244), filed by Nortel

---

1.  The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the English proceedings for Nortel Networks (Ireland) Limited are:  Alan Robert Bloom and David Martin Hughes.

2.  The EMEA Debtors are located in Europe, the Middle East and Africa and are in proceedings pending before the High Court of Justice of England and Wales.  They are:  Nortel Networks UK Limited; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks s.r.o.

Networks Inc. and its affiliated chapter 11 debtors[3] and the Official Committee of Unsecured

Creditors (the "Committee").   In support of this Response, the Joint Administrators respectfully

state as follows:

## PRELIMINARY STATEMENT

1.     The Joint Administrators join the request of the U.S. Debtors and the

Committee for an Order certifying the Joint Administrators' appeal from the Order Approving

Allocation Protocol, entered by the United States Bankruptcy Court for the District of Delaware

(the "U.S. Court") on April 3, 2013 (the "Allocation Protocol Order," D.I. 9947) and the

accompanying Opinion (the "Allocation Opinion," D.I. 9946) directly to the United States Court

of Appeals for the Third Circuit (the "Third Circuit") pursuant to 28 U.S.C. § 158(d)(2).

2.     However, the U.S. Debtors and the Committee's request excludes the Joint

Administrators' appeal from the interlocutory portions of the Allocation Protocol Order and

Allocation Opinion approving the entry of a protocol that provides for joint trial of the allocation

disputes by the U.S. and Canadian Courts.  The interlocutory appeal should also be certified

directly to the Third Circuit.  The U.S. Debtors and the Committee correctly assert that "an

immediate expedited appeal would allow the parties to receive a resolution of this appeal before

significant time is lost in this already four-year old bankruptcy."  (Certification Request ¶ 23.)

This interest applies equally to the appeal as of right and the interlocutory appeal.  Accordingly,

the appeals should be consolidated and addressed on the same expedited track.

---

3.     The debtors in these chapter 11 cases (the "U.S. Debtors"), along with the last four digits of each tax
identification number, are:  Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel
Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073);
Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc.
(2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel
Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International
Inc. (6286), Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

62321726_2

3.      Certification of both the appeal as of right and the appeal from the interlocutory portions of the Allocation Protocol Order and Allocation Opinion for immediate appeal to the Third Circuit is appropriate because immediate appeal would materially advance the ultimate resolution of the parties' dispute as to the allocation of sale proceeds.  Additionally, the absence of any precedent for the portions of the Allocation Protocol Order and Allocation Opinion providing that the allocation dispute should be decided through joint cross-border trials leading to two independent judgments and two separate appeal processes in the U.S. and Canada warrants certification for immediate appeal to the Third Circuit.  As the Allocation Protocol will serve as a roadmap to debtors in future cross-border insolvencies, a prompt and binding determination as to whether it exceeds the U.S. Court's authority as an improper diminution of its sovereignty, and related questions, are matters of public importance.  Thus, under the circumstances presented here, there is ample cause to allow a single, direct appeal to the Third Circuit.

## BACKGROUND

4.      On April 25, 2011, the U.S. Debtors and the Committee filed the Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding Settlement Agreement, and for Related Relief [D.I. 5307], in which they moved the U.S. Court for entry of an order approving an Allocation Protocol establishing procedures and an expedited schedule for joint determination by the U.S. and Canadian Courts of the allocation of the IFSA sale proceeds.[4]  The Joint Administrators filed objections to the Allocation Protocol

---

4.   A companion application was filed by the Canadian Debtors before the Canadian Court.

62321726_2

Motion and made a cross-motion to compel arbitration of the allocation dispute as provided for under the IFSA (the "Cross-Motion," D.I. 5444).

5.      Argument on the Allocation Protocol Motion and Cross-Motion (together with submissions from other parties) was heard in joint hearings before the U.S. Court and Canadian Court on June 7, 2011, after which the U.S. and Canadian Courts reserved decision and ordered the parties to try to mediate the dispute.  This mediation was unsuccessful, and was declared ended in January 2013.

6.      On April 3, 2013, this Court entered the Allocation Protocol Order and Allocation Opinion, denying the Joint Administrators' motion to compel arbitration and ordering the parties to submit an Allocation Protocol.  Mr. Justice Morawetz for the Canadian Court, having previously issued an endorsement on March 8, 2013, issued a further endorsement on April 3, 2013 (the "Allocation Endorsement"), which reached the same result.

7.      Pursuant to Section 16(a) of the Federal Arbitration Act (the "FAA"), the Bankruptcy Court's decision denying the Joint Administrators' motion to compel arbitration is appealable as of right.[5]  On April 17, 2013, the Joint Administrators filed a timely notice of appeal [D.I. 10166] together with the Motion for Leave to appeal the interlocutory portions of the Allocation Protocol Order and Opinion approving the entry of a protocol which outlines the process for joint litigation of the allocation disputes by the U.S. and Canadian Courts.  The Joint Administrators seek certification directly to the United States Court of Appeals for the Third Circuit of both the appeal as of right and the appeal from the interlocutory portions of the

_____

5.   9 U.S.C. § 16(a) (2006); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 214 (3d Cir. 2007) ("In no uncertain terms, Section 16 'makes clear that any order favoring litigation over arbitration is immediately appealable and any order favoring arbitration over litigation is not.'") (citation omitted).

62321726_2

Allocation Protocol Order and Allocation Opinion, which shall be consolidated and addressed in a single brief, provided the motion for leave to appeal is granted.

### RELIEF REQUESTED

8. Pursuant to Bankruptcy Rule 8001(f) and 28 U.S.C. § 158(d)(2), the Joint Administrators request that this Court certify both the appeal as of right and the appeal from the interlocutory portions of the Allocation Protocol Order and Allocation Opinion for immediate appeal to the Third Circuit. A counter-proposed form of Certification Order is attached hereto as Exhibit A and a redline reflecting the proposed revisions to the U.S. Debtors and Committees' proposed Order is attached hereto as Exhibit B.

### ARGUMENT

I. **GROUNDS EXIST TO CERTIFY BOTH THE APPEAL AS OF RIGHT AND THE INTERLOCUTORY APPEAL DIRECTLY TO THE THIRD CIRCUIT.**

9. Under 28 U.S.C. § 158(d)(2), a bankruptcy court may certify an order for immediate appeal to the federal court of appeals. *Arrow Oil & Gas, Inc. v. SemCrude, L.P. (In re SemCrude, L.P.),* 407 B.R. 112, 139–40 (Bankr. D. Del. 2009) (certifying direct appeal to the Third Circuit pursuant to 28 U.S.C. 158(d)(2)). As set forth in 28 U.S.C. § 158(d)(2)(A), certification of an order for immediate appeal is required if the Court, "acting on its own motion or on the request of a party," determines that:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

28 U.S.C. § 158(d)(2)(A).

10.     Each of section 158(d)(2)(A)'s three prongs presents an independent ground upon which to grant certification.  28 U.S.C. § 158(d)(2)(A); *In re MPF Holding U.S. LLC*, 444 B.R. 719, 725–28 (Bankr. S.D. Tex. 2011) (granting certification where only two of the independent grounds listed in § 158(d) apply).  While only one of the circumstances under section 158(d) must exist to require certification of the Allocation Protocol Order, the Joint Administrators respectfully submit that certification is particularly appropriate with respect to appeal from the interlocutory portion of the Allocation Protocol Order and Allocation Opinion as the interlocutory appeal involves a question of law as to which there is no controlling decision and involves matters of public importance.

11.     The U.S. Debtors and the Committee cite the same standard, but exclude the Joint Administrators' appeal from the interlocutory portions of the Allocation Protocol Order and Allocation Opinion from the Certification Request based on their stated intention to oppose the Motion for Leave.  The Certification Request fails, however, to articulate a single reason why the criteria the U.S. Debtors and the Committee argue supports certification of the appeal as of right does not apply equally to the Joint Administrators' appeal from the interlocutory portions of the Allocation Protocol Order and Allocation Opinion.[6]  If the U.S. Debtors and the Committee are truly interested in avoiding "delay in the resolution of the Allocation Dispute [which] could

---

6.  There is no requirement that leave to appeal be granted before certification of a direct appeal to a court of appeals is sought.  *See* Fed. R. Bankr. P. 8001(f)(1), 8003(d).

62321726_2

result in further inefficiencies" (Certification Request ¶ 24), they would not oppose a

certification of the both portions of the Allocation Protocol Order and Allocation Opinion.

> **A.** **No Controlling Decisions Govern the Questions Raised by the Appeal, which Involves Matters of Public Importance.**

12.     In addition to the grounds stated by the U.S. Debtors and the Creditors, the

Allocation Protocol Opinion and Order involves a question of law as to which there is no

controlling decision of the United States Court of Appeals for the Third Circuit or of the

Supreme Court of the United States and raises a matter of public importance.  The Allocation

Protocol contemplated by the U.S. Court represents a departure from any established procedure

for litigating substantive claims and defenses and cannot be executed without either a violation

of its participants' substantive and procedural due process rights, a violation of the Court's

sovereignty, or breaches of other U.S. law.

13.     The proposed Allocation Protocol will either (1) require the application of

two separate (and conflicting) sets of procedural and evidentiary rules or (2) require

reconciliation of conflicting procedural and evidentiary rules which may result in either limited

or compelled disclosure where such limitations or expansions would not exist absent the attempt

to coordinate two separate legal proceedings, as well as other violations of the parties'

procedural rights.  Further, the Allocation Protocol Order will subject Allocation Protocol

participants to two separate, concurrent, and potentially conflicting orders and judgments of the

U.S. Court and the Canadian Court.  In order for the decisions of the Courts to be useful and

enforceable, they would need to be identical, which would be highly unlikely if each Court

independently arrived at its decision.  Engaging in joint deliberations in order to reach consensus,

however would be a violation of this Court's sovereignty.  The absence of any precedent for the

proposed Allocation Protocol and the lack of any governing authority establishing that the

-7-

proposed Allocation Protocol does not violate the Court's sovereignty warrants certification of the Allocation Protocol Order for immediate appeal to the Third Circuit.  *See SemCrude*, 407 B.R. at 139–40 (certifying order for direct appeal to the Third Circuit on the grounds that, *inter alia*, "there [was] no governing law on the issue before the Court").

14.     In addition, the Allocation Protocol Order involves a matter of public importance.  *MPF Holding*, 444 B.R. at 725 n.7 (recognizing that whether the issues relate to a matter of public importance is an independent, separate and distinct ground for certification).  In addition to the importance of concluding the Nortel bankruptcy and insolvency matters in an expeditious and procedurally proper manner, the Allocation Protocol will serve as a roadmap to Debtors in future cross-border insolvencies and establish the proper limit of cross-border cooperation in international insolvency proceedings.  *See Ransom v. MBNA Am. Bank (In re Ransom)*, 380 B.R. 809, 812 (9th Cir. B.A.P. 2007) (certifying appeal where resolution of issue on appeal would affect numerous prospective debtors and was thus a matter of public importance).  As a result, there is a strong public interest in certifying the portion of the Joint Administrators' appeal regarding the propriety of the proposed Allocation Protocol for immediate consideration of the Third Circuit.

**B.     Certifying the Appeal will Materially Advance the Progress of the Case.**

15.     As the U.S. Debtors and the Committee represent in the Certification Request, an immediate appeal from the Allocation Protocol Order will materially advance the progress of the case or proceeding in which the appeal is taken.  This factor applies equally with respect to the appeal as of right and the appeal from the interlocutory portions of the Allocation Protocol Order and Allocation Opinion.

16.     Where resolution of an appeal will have significant practical effect upon the administration of the bankruptcy estate, certification is proper.  *See In re Virissimo*, 332 B.R.

208, 209–10 (Bankr. D. Nev. 2005).  Ultimately, allocation of the sale proceeds is necessary to

the successful administration of each of the U.S., the Canadian and the EMEA estates.

Permitting the Courts to proceed under the proposed Allocation Protocol has the potential to

result in two separate appeal tracks, one proceeding in the United States and one proceeding in

Canada, from separate, concurrent and conflicting orders and opinions of the U.S. Court and the

Canadian Court.  *MPF Holding*, 444 B.R. at 727 (certifying an appeal under 158(d)(2)(A)(iii)

because the fact that the parties would inevitably appeal to the court of appeals meant that it

would materially advance the case to certify a direct appeal); *Official Comm. Of Unsecured*

*Creditors of Motors Liq. Comp. v. JPMorgan Chase Bank, N.A. (In re Motor Liq. Co.*, 486 B.R.

596, 647 (Bankr. S.D.N.Y. 2013) ("A second level of appeal (which would otherwise be likely,

given the stakes of the controversy) would have a foreseeable adverse effect on the timing and

finality of creditor distributions.").

17.     Further, if the appellate court ultimately reverses the determination of the

U.S. Court, the allocation dispute will be resolved either through arbitration or significantly

simplified court proceedings that eliminate the issues of potential procedural and substantive

conflict.  Eliminating the concept of a joint cross-border trial applying two separate sets of

procedural rules and resulting in two potentially conflicting substantive opinions (and two

separate appeal tracks from each of those decisions) will materially advance both the allocation

of the sale proceeds and the ultimate reorganization of the respective Nortel debtors.

62321726_2

## **CONCLUSION**

18.     Certification of both the appeal as of right and the appeal from the interlocutory portions of the Allocation Protocol Order and Allocation Opinion for immediate appeal to the Third Circuit is appropriate.  Significant issues as to which there is no controlling Third Circuit or Supreme Court authority and matters of public importance are presented by the Appeals. Moreover, resolution of both the allocation dispute and the administration of each of the U.S. Debtors', the Canadian Debtors', and the EMEA Debtors' estates will be materially advanced by the expedited resolution of these issues by the Third Circuit.  As such, this Court should certify both the appeal as of right and the appeal from the interlocutory portions of the Allocation Protocol Order and Allocation Opinion for direct review by the Third Circuit.

WHEREFORE, the Joint Administrators' respectfully request that this Court certify both the appeal as of right and the appeal from the interlocutory portions of the Allocation Protocol Order and Allocation Opinion directly to the Third Circuit, and grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      April 29, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Jaime Luton Chapman
James L. Patton (No. 2202)
Edwin J. Harron (No. 3396)
John T. Dorsey (No. 2988)
Jaime Luton Chapman (No. 4936)

Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  302-571-6600
Fax:  302-571-1253

– and –

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
David W. Wiltenburg
Neil J. Oxford
Gabrielle Glemann
Charles H. Huberty

One Battery Park Plaza
New York, New York 10004
Telephone:  212-837-6000
Fax:  212-422-4726

– and –

HERBERT SMITH FREEHILLS LLP

Kevin Lloyd
John Whiteoak
Richard Lawton

Exchange House
Primrose Street
London EC2A 2EG

*Counsel for Joint Administrators*

01:13567530.1

62321726_2

-11-

**<u>EXHIBIT A</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------X
                                        :        Chapter 11
                                        :
*In re*                                 :        Case No. 09-10138 (KG)
                                        :
Nortel Networks Inc., *et al.*,[1]      :        Jointly Administered
                                        :
                                        :        **RE: Docket Nos. 10244 and _____**
                     Debtors.           :
-----------------------------------------------------X

## ORDER CERTIFYING THE JOINT ADMINISTRATORS'
## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

This matter coming before the Court on the Joint Request of Nortel Networks Inc.

and its affiliated debtors, as respective debtors and debtors in possession (collectively, the

"Debtors" or the "U.S. Debtors") and the Official Committee of Unsecured Creditors (the

"Committee") for certification of the Joint Administrators' Notice of Appeal [D.I. 10166]

directly to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C

§ 158(d)(2); and the Court having found that (i) the Court has jurisdiction over the matter

pursuant to 28 U.S.C. §§ 1334 and 157, (ii) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b), and (iii) notice of the Request was sufficient under the circumstances; and the Court

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

01:13567730.1

having determined that the legal and factual bases set forth in the Request establish just cause for the relief herein granted;

IT IS HEREBY ORDERED THAT:

1.      The Request is GRANTED as set forth herein.

2.      The Court certifies that an immediate appeal from the portions of the April 3, 2013 Order denying the Cross-Motion to Compel Arbitration and accompanying Opinion is appropriate because an immediate appeal may materially advance the progress of the case and because multiple parties have requested certification.

3.      The Court certifies that an immediate appeal from the interlocutory portions of the April 3, 2013 Order and accompanying Opinion is appropriate because an immediate appeal may materially advance the progress of the case and because the Order and accompanying Opinion involve a matter of public importance.

4.      This Court thus certifies the Notice of Appeal pursuant to 28 U.S.C. § 158(d)(2).

5.      The Court suggests that expedition of any direct appeal regarding the *Notice of Appeal* is appropriate and would facilitate resolution and materially advance the progress of these cases.

Dated: _____, 2013
       Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

01:13567730.1

2

1355

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------X
|  |  |
|---|---|
|  | : | Chapter 11 |
|  | : |  |
| *In re* | : | Case No. 09-10138 (KG) |
|  | : |  |
| Nortel Networks Inc., *et al.*,[1] | : | Jointly Administered |
|  | : |  |
| Debtors. | : | RE:  Docket Nos. 10244 and____ |

------------------------------------------------------X

## ORDER CERTIFYING THE JOINT ADMINISTRATORS'
## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

This matter coming before the Court on the Joint Request of Nortel Networks Inc.
and its affiliated debtors, as respective debtors and debtors in possession (collectively, the
"Debtors" or the "U.S. Debtors") and the Official Committee of Unsecured Creditors (the
"Committee") for certification of the Joint Administrators' Notice of Appeal [D.I. 10166]
directly to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C §
158(d)(2); and the Court having found that (i) the Court has jurisdiction over the matter pursuant
to 28 U.S.C. §§ 1334 and 157, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and
(iii) notice of the Request was sufficient under the circumstances; and the Court having
determined that the legal and factual bases set forth in the Request establish just cause for the
relief herein granted;

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

01:13567792.1

IT IS HEREBY ORDERED THAT:

1.      The Request is GRANTED as set forth herein.

2.      The Court certifies that an immediate appeal from the ~~portion~~portions of the April 3, 2013 Order denying the Cross-Motion to Compel Arbitration and accompanying Opinion is appropriate because an immediate appeal may materially advance the progress of the case and because multiple parties have requested certification.

3.      The Court certifies that an immediate appeal from the interlocutory portions of the April 3, 2013 Order and accompanying Opinion is appropriate because an immediate appeal may materially advance the progress of the case and because the Order and accompanying Opinion involve a matter of public importance.

4.      This Court thus certifies the Notice of Appeal pursuant to 28 U.S.C. § 158(d)(2).

~~4.      This certification does not apply to *the Joint Administrators' Motion for Leave to Appeal from Order Approving Allocation Protocol*, filed April 17, 2013 [D.I. 10167].~~

5.      The Court suggests that expedition of any direct appeal regarding the *Notice of Appeal* is appropriate and would facilitate resolution and materially advance the progress of these cases.

Dated: _____, 2013
          Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

01:13567792.1

2

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| NORTEL NETWORKS INC., *et al.*, | Case No. 09-10138 (KG) |
| Debtors.[1] | Jointly Administered |
|  | **RE: Docket Nos. 9946, 9947, and 10246**<br>**Hearing Date:  May 1, 2013 at 10:00 a.m. (ET)** |

## THE JOINT ADMINISTRATORS' OBJECTION TO JOINT MOTION
## FOR AN ORDER RETAINING JURISDICTION PENDING
## APPEAL AND CROSS-MOTION TO CONFIRM STAY PENDING APPEAL

The court-appointed administrators and authorized foreign representatives

(collectively, the "Joint Administrators")[2] for Nortel Networks UK Limited ("NNUK") and

certain of its affiliates (collectively, and including NNUK, the "EMEA Debtors")[3] located in the

region known as EMEA (Europe, Middle East, and Africa) in proceedings under the *Insolvency*

*Act 1986*, pending before the High Court of Justice of England and Wales (the "English Court"),

respectfully submit this objection and cross-motion (the "Cross-Motion") to the joint motion

[D.I. 10246] (the "Joint Motion") of the U.S. Debtors and the Official Committee of Unsecured

---

1.  The debtors in these chapter 11 cases (the "U.S. Debtors"), along with the last four digits of each tax identification number, are:  Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

2.  The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited ("NNIR"), are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the English proceedings for NNIR are: Alan Robert Bloom and David Martin Hughes.

3.  The EMEA Debtors are:  NNUK; Nortel GmbH; Nortel Networks (Austria) GmbH; NNIR; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A. ("NNSA"); Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

01:13568608.1

Creditors (the "Committee" and, together with the U.S. Debtors, "Movants") for entry of an

order declaring the Joint Administrators' appeal (the "Appeal") from this Court's *Opinion* [D.I.

9946] and *Order Approving Allocation Protocol*, entered April 3, 2013 [D.I. 9947] (together, the

"Allocation Protocol Order") to be frivolous and retaining jurisdiction over all aspects of the

above-referenced proceedings pending resolution of the Appeal, and in support of their Cross-

Motion to confirm that a stay of proceedings is in effect.  In support of this Cross-Motion, the

Joint Administrators respectfully state as follows:

**PRELIMINARY STATEMENT**

The Joint Administrators have no desire to prolong these proceedings or delay the

ultimate decision on how to allocate the proceeds of the Nortel asset sales.  However, they

continue to believe that arbitration is not only the dispute resolution procedure that was agreed

by the parties, but also that conducting proceedings in one single forum (whether arbitration or a

court) is the only feasible and appropriate way to determine how to allocate the asset sale

proceeds.

It is black letter law in the Third Circuit that proceedings on a dispute that is

asserted to be arbitrable are stayed upon the filing of an appeal from an order denying a motion

to compel arbitration.  The Allocation Protocol Order denied the Joint Administrators' cross-

motion to compel arbitration, a decision that is immediately appealable as of right under § 16(a)

of the Federal Arbitration Act (the "FAA").  Thus, the Joint Administrators' filing a notice of

appeal from the Allocation Protocol Order causes an automatic stay of allocation proceedings

before this Court pending the outcome of the Appeal.

Notwithstanding this automatic stay, the Joint Administrators and Movants agree

that it would be most efficient if pleadings and discovery on allocation-related issues can proceed

during the pendency of the Appeal.  This may need to be done on the understanding that, once

01:13568608.1

the Appeal has been decided, the pleadings and discovery will be deployed in the ultimate hearings on allocation, whether these are to be held in arbitration or court.  The Joint Administrators continue to believe that it would be feasible and appropriate to enter into an express agreement by the parties, confirmed by the Courts, to proceed in this fashion, and that this will be without prejudice to and without waiver of the Joint Administrators' challenge to litigating the allocation dispute through a joint trial by the U.S. and Canadian Courts.

Movants have, however, elected to proceed in a different fashion.  Instead of negotiating towards an agreement that will allow appropriate matters to proceed while preserving the rights of all parties, they argue that the current case comes under an exception to the automatic stay that applies where an appeal is frivolous.  This argument fails.  In essence, Movants argue that the Appeal is frivolous because the Court decided against the Joint Administrators in the decision under appeal.  If this were the standard for finding an appeal to be frivolous, all appeals would by definition be frivolous.  Here, the arguments in favor of the Joint Administrators' cross-motion to compel arbitration were more than colorable.  They asserted each of the elements that are required in order to demonstrate the existence of a written agreement to arbitrate enforceable under the Federal Arbitration Act.  The Court's decision boiled down to a matter of contract interpretation in which there was no controlling precedent on point.  The Joint Administrators provided myriad legal authority, and substantial extrinsic evidence, to support their argument that Section 12 of the IFSA was intended by the parties to contain a binding agreement to arbitrate allocation disputes.  The fact that the Court disagreed does not mean that these arguments "lack[ed] colorable support" or were "wholly without merit."

Contrary to Movants' accusations to the contrary, the Joint Administrators seek the most equitable, efficient, and practical means of resolving the allocation dispute – through

01:13568608.1

the binding arbitration already agreed between the parties, as made manifest by evidence of the

parties' negotiations prior to and following the execution of the IFSA.  Upon noticing their

Appeal, it was the Joint Administrators who reached out to Movants and offered to exchange

allocation pleadings and go forward with allocation discovery, notwithstanding the automatic

stay, provided that the parties agreed that doing so would not constitute a waiver of the Joint

Administrators' right to seek to have allocation determined in an arbitral proceeding.  Movants

claimed to agree, only to renege mere hours before filing the Joint Motion in which they accuse

the Joint Administrators of "[o]nce again . . . doing their level best to delay and disrupt these

proceedings."  (*See* Mot. ¶ 7.)  The Joint Administrators continue to believe that the best way

forward would be to negotiate a stipulation along the lines of the one they proposed.

## BACKGROUND

On January 14, 2009 (the "Petition Date"), the principal companies in the global

Nortel group commenced insolvency proceedings, with the individual Nortel entities filing for

relief in their respective jurisdictions.  These entities included:  the ultimate corporate parent

Nortel Networks Corporation ("NNC"), NNUK's direct corporate parent Nortel Networks

Limited ("NNL"), and certain Canadian affiliates of NNC and NNL (collectively, the "Canadian

Debtors") in the Ontario Superior Court of Justice – Commercial List (the "Canadian Court");

the U.S. Debtors in the United States Bankruptcy Court for the District of Delaware (the "U.S.

Court");[4] and the EMEA Debtors in the English Court.

In order to facilitate the rapid sale of the Nortel group's assets, without being

subject to the delay of resolving how such proceeds would be shared among the Nortel entities,

---

4.   Nortel Networks (CALA) Inc. filed for relief on July 14, 2009, which was consolidated and is being jointly
     administered with the U.S. Debtors' chapter 11 cases for procedural purposes only [D.I. 1098].

01:13568608.1

the U.S. Debtors, the Canadian Debtors, and the EMEA Debtors entered into the IFSA.[5]

Sections 11 and 12(a) of the IFSA capture the parties' intention to ensure that the various global

sales were able to continue, while reserving discussions about the allocation of sale proceeds for

a later point.

> Section 12(b) of the IFSA provides:
>
> [T]he entire amount of the Sale Proceeds . . . shall be deposited in an escrow account pursuant to an escrow agreement, the terms of which shall be negotiated and agreed by all Selling Debtors, in each case acting reasonably (the "Escrow Account"). In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol . . . applicable to the Sale Proceeds, and subject in each case to payment of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

It is clear on the face of Section 12(b) that sale proceeds placed into escrow may only be released

on the occurrence of one of two events: (i) if an agreement on allocation is reached by the

parties; or (ii) if the parties fail to reach agreement, a determination is made by the relevant

dispute resolver(s) under the terms of the protocol to be agreed between the parties.

At all times, both before and after the entry of the IFSA, the parties understood

and agreed that the "dispute resolver" that would be appointed to resolve disputes about

allocation would be one or more private individuals acting in the capacity of arbitrators. Shortly

---

5.  Interim Funding and Settlement Agreement, dated as of June 9, 2009, by and between the parties listed on Schedules 1, 2, and 3 thereto (the "IFSA"). A copy of the IFSA is attached as Exhibit 1 to the *Declaration of Inna Rozenberg in Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief*, dated April 25, 2011 [D.I. 5308].

    The IFSA was approved by the U.S. Court by order dated June 29, 2009 [D.I. 993] (the "U.S. IFSA Order"), and by the Canadian Court by order dated June 29, 2009 (the "Canadian IFSA Order"), which ordered that the parties to the IFSA be directed to comply with their obligations thereunder. By order dated June 23, 2009, the English Court ordered that the Joint Administrators "be at liberty" to enter into the IFSA. Initially, NNSA and Nortel Networks AG were not signatories to the IFSA. However, the Joint Administrators entered into the IFSA on behalf of NNSA by an Accession and Amendment Agreement dated September 11, 2009.

after execution and judicial approval of the IFSA, the parties to the IFSA commenced

negotiations towards a protocol to specify the procedures that would be followed in this

arbitration proceeding.  The parties had reached agreement on the main points of a 29-page

protocol, pursuant to which each of the three main debtor groups (Canadian, U.S., and EMEA)

would appoint one arbitrator to form a three-member arbitration panel to resolve allocation

disputes.  Before finalizing this protocol, those negotiations were suspended in favor of

mediation regarding the allocation of the sale proceeds.  Mediation sessions took place in

November 2010 and April 2011, without success.

      After the failure of the mediation, the U.S. Debtors abruptly reversed course and

refused to continue negotiations towards finalizing the IFSA dispute resolution protocol.  They

decided that they would no longer honor the understanding upon which the Nortel asset sales had

been consummated, *i.e.*, that disputes about allocation of the sale proceeds would be decided in

an international arbitration proceeding rather than by any particular national court.  Thus, on

April 25, 2011, the U.S. Debtors and the Official Committee of Unsecured Creditors filed the

*Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim*

*Funding Settlement Agreement, and for Related Relief* [D.I. 5307] (the "Allocation Protocol

Motion") moving the U.S. Court for entry of an order approving an allocation protocol

establishing procedures and an expedited schedule for joint determination by the U.S. and

Canadian Courts of the allocation of the sale proceeds pursuant to the IFSA.[6]

      The Joint Administrators filed objections to the Allocation Protocol Motion and

made a cross-motion to compel arbitration of the allocation dispute as provided for under the

IFSA [D.I. 5444] (the "Cross-Motion to Compel Arbitration").  In support of the Cross-Motion

---

6.   A companion application was filed by the Canadian Debtors before the Canadian Court.

to Compel Arbitration, the Joint Administrators argued that the parties had agreed that the

allocation of the sale proceeds should be decided in a private, transnational arbitration

proceeding and not by any national court or courts.  The Joint Administrators noted that from the

earliest negotiations of the IFSA until the date of the Allocation Protocol Motion, all parties had

recognized and agreed that the allocation of the sale proceeds would be decided in an arbitral

proceeding.  The Joint Administrators argued that based upon the terms of the IFSA and the

history of negotiations regarding the IFSA:

> All evidence confirms that the parties bound themselves to submit
> allocation disputes to arbitration, regardless of whether they were
> successful in negotiating a procedural protocol to be followed in
> such arbitration.   Accordingly, under the [FAA], the Court's
> jurisdiction over allocation disputes is limited to compelling the
> parties to submit those disputes to arbitration.

(*The Joint Administrators' Memorandum of Law in Support of Their Objection and Cross-*

*Motion to Compel Arbitration* [D.I. 5531] at 3.)

Argument on the Allocation Protocol Motion and Cross-Motion to Compel

Arbitration (together with submissions from other parties) was heard in joint hearings before the

U.S. Court and Canadian Court on June 7, 2011, after which the U.S. and Canadian Courts

reserved decision and ordered the parties to mediation.  This mediation was again unsuccessful

and was declared ended in January 2013.  Following supplemental briefing by the parties and

further oral argument before the U.S. and Canadian Courts, the U.S. Court entered the Allocation

Protocol Order and the Canadian Court entered its reasons and endorsement on April 3, 2013.

The Joint Administrators concurrently filed a *Notice of Appeal* [D.I. 10166] from

the Allocation Protocol Order and a *Motion for Leave to Appeal From Order Approving*

*Allocation Protocol* [D.I. 10167].  As set forth in the Motion for Leave to Appeal, the portion of

the Allocation Protocol Order in which this Court denied the Joint Administrators' Cross-Motion

01:13568608.1

to Compel Arbitration is immediately appealable as of right under the FAA. *See* 9 U.S.C.

§ 16(a). The portion of the Allocation Protocol Order in which this Court granted the Allocation

Protocol Motion and denied the Joint Administrators' objection thereto is an interlocutory order,

but is inextricably intertwined with the issues arising from the denial of the Joint Administrators'

Cross-Motion to Compel Arbitration.

On April 17, 2013, while in the process of finalizing the Appeal, the Joint

Administrators, through counsel, reached out to Movants' counsel. Further discussions occurred

on April 18. The U.S. Debtors agreed in principle that the parties could consent to move forward

with allocation pleadings and allocation discovery without waiver of the Joint Administrators'

objection to having allocation heard in a joint hearing before the U.S. and Canadian Courts. The

parties agreed to exchange drafts of a stipulation to memorialize this agreement. Despite this

good-faith effort by the Joint Administrators to move the allocation process forward,

notwithstanding the automatic stay, the U.S. Debtors on April 23 abruptly declared that they

would no longer consent to the limited stay previously contemplated by the parties and, hours

later, filed the Joint Motion.

## ARGUMENT

## I. THE APPEAL AUTOMATICALLY DIVESTS THE COURT OF JURISDICTION TO PROCEED PURSUANT TO THE ALLOCATION PROTOCOL ORDER.

### A. The Stay Is Automatic.

Under controlling Third Circuit authority, an appeal from a decision to deny a

motion to compel arbitration automatically stays the proceedings below during the pendency of

the appeal. Such an appeal "automatically deprives the trial court of jurisdiction to proceed until

such time as the appeal is fully litigated or determined to be frivolous or forfeited." *Ehleiter v.*

*Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007); *see also Guidotti v. Legal Helpers*

*Debt Resolution, L.L.C.*, Civil No. 11-1219, 2012 WL 3262461, at *2 (D.N.J. Aug. 7, 2012) (granting automatic stay); *V.I. Water & Power Auth. v. Gen. Elec. Int'l, Inc.*, Civil No. 2006-131, 2009 WL 2413670, at *1 (D.V.I. Aug. 4, 2009) (same).

      In the Allocation Protocol Order, the Court denied the Joint Administrators' Cross-Motion to Compel Arbitration under the terms of the IFSA, finding that the language in the IFSA did not evince a clear intention to submit allocation disputes to arbitration.  The Appeal from that determination, made pursuant to § 16(a) of the FAA, triggers a nondiscretionary stay of the allocation proceedings before this Court.  *See Ehleiter*, 482 F.3d at 215 n.6; *Cohen v. Ernst & Young LLC (In re Friedman's, Inc.)*, Bankr. No. 05-40129, Adv. No. 07-4043, 2007 WL 7647111, at *1 (Bankr. S.D. Ga. June 26, 2007) ("[A] stay of litigation pending the appeal of a denial of a motion to compel arbitration should be granted so long as the appeal is non-frivolous." (citing *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251-53 (11th Cir. 2004) (per curiam))).  Absent a stay, a subsequent appellate decision in favor of the Joint Administrators could be rendered a nullity because they might already have been denied their right to have the allocation dispute determined in by arbitration.  *See Ehleiter*, 482 F.3d at 214.

      Movants acknowledge this binding precedent, citing the same Third Circuit authority referenced above, while noting only that the stay can be lifted where an appeal is "frivolous or forfeited."  (Mot. ¶ 8 (citing *Ehleiter*, 482 F.3d at 215 n.6).)  Movants argue that the Appeal is frivolous.  As set forth below, the Appeal is not frivolous.

**B.**     **Proceedings on Allocation Are Stayed As To All Parties.**

      Movants have suggested that any stay of proceedings on allocation would apply only to the Joint Administrators, disabling them from participating in allocation pleadings, discovery and trial while all other parties move forward.  This is incorrect.

01:13568608.1

An automatic stay of proceedings pending appeal from an order denying a motion to compel arbitration serves to balance competing concerns of "promoting efficient dispute resolution; avoiding inconsistent handling of a case; and preventing a party from disrupting a schedule or stalling by filing a frivolous appeal."  *Guidotti*, 2012 WL 3262461, at *2 (internal quotation and citations omitted).  To avoid upsetting this balance, as well as compounded litigation efforts, increased expense, and inconsistency between progress at the bankruptcy-court level and the determination of an appellate court, allocation proceedings must be stayed as to all parties.  Indeed, the only way to accomplish the Third Circuit's stated goal of preserving the contractual right to arbitrate pending appeal from the denial of a motion to compel arbitration is by staying all matters related to the order appealed.  *See V.I. Water & Power Auth.*, 2009 WL 2413670, at *1 ("[I]t makes little sense for the litigation to continue in the district court while the appeal is pending." (quoting *Blinco*, 366 F.3d at 1253)).

The Joint Administrators contend that <u>all</u> parties are bound by a contractual obligation to arbitrate.  A stay as to all parties is therefore necessary in order for their right to arbitration to be effectuated in the event that the appeal is successful.  Furthermore, the various claims here – where each of the various debtors assert a claim to the same pool of funds held in escrow – cannot be litigated independently of one another.  Moving forward with allocation as to some parties – but not the parties to the appeal[7] – would clearly require the Court to exercise jurisdiction over "issues which . . .  so impact the appeal so as to interfere with or effectively circumvent the appeal process."  *Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re*

---

7.  *Cf. Guidotti*, 2012 WL 3262461, at *3 (stating court's "order to stay will apply only to Plaintiff's claims against Global and RMBT, the sole parties to the pending appeal").  Thus, at the very least, allocation proceedings must be stayed as to the EMEA Debtors, the U.S. Debtors, and the Committee, all parties to the appeal.

*Whispering Pines Estates, Inc.*), 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007);[8] *see also Blinco*, 366

F.3d at 1251 ("The only aspect of the case involved in an appeal from an order denying a motion

to compel arbitration is whether the case should be litigated at all in the district court.  The issue

of continued litigation in the district court is not collateral to the question presented by an appeal

under § 16(a)(1)(A); it is the mirror image of the question presented on appeal.") (internal

citation and quotation marks omitted); *Bradford-Scott Data Corp. v. Physician Computer*

*Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997) ("The worst possible outcome would be to

litigate the dispute, to have the court of appeals reverse and order the dispute arbitrated, to

arbitrate the dispute, and finally to return to court to have the award enforced.").

Accordingly, since binding Third Circuit precedent divests the Court of

jurisdiction in connection with the Allocation Protocol Order, in the absence of a suitable

agreement that protects the rights of the parties, allocation proceedings must be stayed as to all

---

8.   Moreover, the sale proceeds subject to the allocation proceedings will remain secure in the lockboxes pending
     the Appeal, and the amount to be allocated to the parties will increase through accrued interest, rather than
     diminish, in the interim.  *See Schroeder v. New Century Liquidating Trust (In re New Century TRS Holdings),*
     *Inc.*, Bankr. No. 07-10416, Civ. No. 08-546-SLR, 2009 WL 1833875, at *2 (D. Del. June 26, 2009) (finding
     that a stay will not harm the non-moving parties because "the relief they ultimately seek – funds . . . currently in
     escrow – is unaffected by this appeal").

parties pending the outcome of the Appeal.  The Court does not, as Movants suggest, "retain[] jurisdiction to enforce its [Allocation Protocol] order[] pending any appeal."  (Mot. ¶ 14.)[9]

## II.     THE APPEAL IS NOT FRIVOLOUS.

Movants note that the Court can retain jurisdiction over allocation proceedings pending appeal from the Allocation Protocol Order if it determines that the Appeal is frivolous. (*See* Mot. ¶ 9.)  An appeal is frivolous only if "upon review of the record and the law, it lacks colorable support or is wholly without merit."  *Guidotti*, 2012 WL 3262461, at *2 (granting automatic stay where appeal not frivolous) (internal quotation omitted).  This is a high bar. Courts are generally "reluctant to classify appeals as frivolous, so that novel theories will not be chilled and litigants advancing any claim or defense which has colorable support under existing law or reasonable extensions thereof will not be deterred."  *Id.* at 3 (quotation omitted).  Indeed, many courts within the Third Circuit, including the authority cited by Movants, derive the standard for determining whether an appeal is frivolous from the test used to determine whether sanctions should be assessed against appellant's counsel under Rule 38 of the Federal Rules of

---

9.    The Joint Administrators do not contend that the Appeal has divested the Court of jurisdiction over the entire bankruptcy, but only as to the enforcement of the Allocation Protocol Order, which is subject to the stay. Movants cite two divestiture rule cases that do not support their argument and that do not arise on appeal from the denial of a motion to compel arbitration.  (*See* Mot. ¶ 14.)  These cases stand for the proposition that a court may not alter a judgment that has been appealed, but may enforce it *so long as no stay exists*.  *In re Wash. Mut., Inc.*, 461 B.R. 200, 218, 219 (Bankr. D. Del. 2011) ("*absent a stay pending appeal*, the lower court may take all actions necessary to implement or enforce the order from which an appeal has been taken" and court "may retain jurisdiction to decide issues and proceedings *different from and collateral to those involved in the appeal*" where no stay is in place) (emphases added, citations omitted); *In re Whispering Pines Estates, Inc.*, 369 B.R. 752, 759 (1st Cir. BAP 2007) ("[O]nce an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.").  In the Washington Mutual bankruptcy, the court noted that "the bankruptcy judge may suspend or order the continuation *of other proceedings in the case* under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of *all* parties in interest."  *In re Wash. Mut.*, 461 B.R. at 218 (emphases added).

01:13568608.1

Appellate Procedure.  *See, e.g.*, *Nagle v. Alspach*, 8 F.3d 141, 145-46 (3d Cir. 1993) (noting

appeal is frivolous only where there is "no possibility of success") (cited Mot. ¶ 8).[10]

**A.      The Fact That The Court Ruled Against The Joint**
**         Administrators Does Not Mean That The Appeal Is Frivolous.**

Movants' primary argument is that the Appeal should be found to be frivolous

because this Court has already considered, and rejected, the Joint Administrators' arguments that

Section 12 of the IFSA is a binding agreement to arbitrate allocation disputes.  (Mot. ¶¶ 9-13.)

Much of the Joint Motion consists of a re-hash of the arguments that were made in relation to the

original Allocation Protocol Motion and Cross-Motion to Compel Arbitration.

The cases Movants rely on are readily distinguishable and show just how high the

bar is for showing that an appeal is frivolous.  *See In re Magna Entm't Corp.*, No. 09-10720,

2012 WL 272847, at *3 (Bankr. D. Del. Jan. 30, 2012) (appeal was frivolous where appellee was

not even a party to the alleged arbitration agreement); *Traxys N. Am. LLC v. Evraz Claymont*

*Steel, Inc.*, Civil No. 09-684, 2011 WL 1868836, at *2 (D. Del. May 16, 2011) (appeal frivolous

where defendants waived arbitration by engaging in litigation for nineteen months before raising

arbitration argument on the eve of trial); *Kirleis v. Dickie, McCamey & Chicolte, PC*, Civil

No. 06-1495, 2007 WL 3023950, at *3 (W.D. Pa. Oct. 12, 2007) (appeal was frivolous where

party advocating for arbitration could not point to any written agreement between the parties that

contained any purported arbitration clause); *Kuntz v. Saul, Ewing, Remick & Saul (In re Grand*

---

10.  Although there is limited guidance, those authorities that have addressed the burden issue have placed the
     burden on appellees advocating that an appeal is frivolous.  *See, e.g.*, *Bradford-Scott Data*, 128 F.3d at 506
     (noting that "appellee may ask the court of appeals to dismiss the appeal as frivolous" (citations omitted));
     *Marriott v. Opes Grp.*, No. 04-C-945, 2006 WL 452431, at *2 (E.D. Wis. Feb. 22, 2006) ("[Appellee] argues
     that [appellants] must establish the non-frivolity of their appeal in order to obtain a stay.  The Court is not
     convinced.  . . . The burden of such a showing would fall to [appellee] in the present instance."); 5 Am. Jur. 2d
     Appellate Review § 886 (2d ed. 2013) ("A case-by-case approach is generally used to identify and deter
     frivolous appeals, and the burden of proof is on the moving party to establish the frivolity of the appeal.  . . .
     Any doubt regarding the frivolous nature of an appeal must be resolved in favor of the appellant.").

01:13568608.1

*Union Co.)*, 200 B.R. 101, 106-08 (D. Del. 1996) (sanctioning appellant for frivolous appeal in

which appellant cited no cases to support arguments, provided no factual basis for arguments,

misstated facts, deliberately delayed disposition of appeal by failing to comply with procedural

rules, filed appellate brief six months late, and had a "well documented history of abusing the

court system").

But as these cases illustrate, the mere fact that the Court found against the Joint

Administrators below is insufficient to show that the Appeal from that decision is frivolous. "In

fact, a court may grant a motion for a stay pending appeal even when it has confidence in the

rectitude of its decision." *Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures,

Inc.)*, 367 B.R. 516, 521 (Bankr. D. Del. 2007) (quotation omitted) ("For the purposes of this

motion, it does not matter whether this Court believes that Defendants should succeed on appeal.

In considering the likelihood of success on the merits, it seems illogical to require that the court

in effect conclude that its original decision in the matter was wrong before a stay can be issued.")

(internal quotation and citation omitted).

Simply rearguing the motion already decided and citing to the Court's opinion, as

Movants do, is insufficient to demonstrate that the Appeal "lacks colorable support or is wholly

without merit"; to find otherwise would extend the meaning of "frivolousness" to every appeal.

**B.      The Joint Administrators Have Strong Arguments On Appeal.**

In papers submitted by the Joint Administrators in support of their Cross-Motion

to Compel Arbitration, the Joint Administrators set forth a *prima facie* case under § 4 of the FAA

that the IFSA contains an enforceable agreement to arbitrate. The record contains substantial

factual and legal bases for the Appeal, only briefly summarized below, which go far beyond the

"colorable support" required to determine an appeal is not frivolous. *See Guidotti*, 2012 WL

3262461, at *2-3 (finding appeal not frivolous and granting automatic stay pending appeal from

denial of motion to compel arbitration); *V.I. Water & Power Auth.*, 2009 WL 2413670, at *1 (same); *In re Friedman's, Inc.*, 2007 WL 7647111, at *1 (same).

First, the Joint Administrators argued that the parties' intent to submit allocation disputes to arbitration rather than litigation is clear from the terms of the IFSA itself.  As Movants note, arbitration is a creature of contract, and Section 12 of the IFSA satisfies the requirements for a contractual agreement to arbitrate because it (i) is in writing, (ii) identifies the disputes – regarding the allocation of sale proceeds – to be resolved, and (iii) explicitly states that the parties will submit such disputes to "dispute resolver(s)."  (*See* IFSA § 12(b).) Regarding this third criterion, the Joint Administrators presented numerous authorities showing that it is not necessary that the word "arbitration" or "arbitrator" be used in order for a court to find that an enforceable arbitration agreement exists.  (*See* EMEA Opening Br. at 17-18; Movants' Reply Br. at 17; EMEA Reply Br. at 3-5.)  Although the procedures that would govern the arbitration were not explicitly set forth, the IFSA memorialized the parties' intent to negotiate an "Interim Sales Protocol" that would contain these procedures.  (*See* IFSA § 12(c).)

Second, the Joint Administrators pointed out that any ambiguity or lack of clarity about what type of "dispute resolver(s)" the parties intended to appoint can resolved by looking at the wealth of extrinsic evidence regarding the negotiating history, the surrounding circumstances, the parties' public statements, and the positions taken in the negotiations toward an allocation protocol.  (*See generally* EMEA Opening Br.; EMEA Reply Br. at 6.)  The Joint Administrators provided substantial extrinsic evidence in the *Declaration of Kevin Francis Lloyd*, dated May 19, 2011 [D.I. 5532] (the "Lloyd Declaration"), which details how it had been recognized and agreed by all parties that the allocation of sale proceeds would be decided in a private, transnational arbitration proceeding and not by any national court or courts.  The Joint

Administrators cited myriad authorities to support the admission of extrinsic evidence to resolve this apparent ambiguity regarding the definition of "dispute resolver(s)."  (*See, e.g.*, EMEA Opening Br. at 18-20.)  In opposing the Cross-Motion to Compel Arbitration, Movants put in no extrinsic evidence to rebut the showing that all parties understood and agreed that allocation disputes would be submitted to arbitration.

<u>Third</u>, the Joint Administrators noted that neither the IFSA, nor other agreements or protocols executed by the parties, nor any legal principle, grants the jurisdiction necessary for this Court and the Canadian Court to allocate sale proceeds among dozens of Nortel affiliates located around the world.  The Joint Administrators cited authority that under the FAA, a court's jurisdiction pursuant to a contract containing an arbitration clause, such as the IFSA, is limited to providing relief ancillary to arbitration, such as compelling arbitration, staying an action pending arbitration, or enforcing an arbitral award.  (*See, e.g.*, EMEA Opening Br. at 24-25.)  Accordingly, if the Joint Administrators succeed on the Appeal, the Court's jurisdiction over allocation disputes is limited to compelling the parties to submit those disputes to arbitration, and any substantive order of the Court with respect to the allocation of sale proceeds under the IFSA would not be within the jurisdiction of this Court.

These and other arguments were presented by the Joint Administrators below.  Not only do they demonstrate "colorable support" for the Appeal, but they are also reflected in public comments made by the mediator appointed by the U.S. and Canadian Courts to resolve the allocation dispute.  As Chief Justice Winkler observed:

> The Nortel Insolvency is one of the most complex trans-national legal proceedings in history. It directly involves companies resident in almost twenty countries, and appears to involve participants from every continent except Antarctica. Amongst those affected are pensioners, employees, disabled former employees, bondholders, trade creditors and governments.

01:13568608.1

There are existing proceedings before the courts of the United Kingdom, the United States and Canada. That said, no single court has ultimate authority over the subject matter of this mediation. . . .

As you may have gathered from the legal proceedings to date, these circumstances give rise to many difficult legal issues, not the least of which is the determination of which law applies and whose courts have jurisdiction to apply that law. In legal terms, this is what is known as a "conflict of laws" issue. However, the complexity of this case would make even a conflict of laws professor cringe!

As if this were not enough to attempt to work through to bring about a timely resolution to the Nortel Insolvency, the fact that there may be more than one avenue of appeal available to the parties through the courts of numerous countries adds yet another layer of complexity. This, of course, raises the prospect of additional delays and the potential for conflicting decisions. There is a point here worth repeating. There is no single jurisdiction with the ultimate, final authority in the matter; no final court of appeal or supreme court with the power to issue a decision that conclusively determines the outcome of litigation.

Chief Justice Warren K. Winkler, Court of Appeal for Ontario, Opening Remarks at the Nortel

Mediation 2-5 (Apr. 24, 2012).

The complexity and novelty of the issues raised by the Appeal militates strongly against any finding that the appeal frivolous.

### C. The Joint Administrators Have Offered To Move Forward With Allocation Procedures On A Limited Basis.

Finally, Movants make the legally irrelevant argument that "the Court should find that the Appeal is frivolous to permit discovery to commence immediately and maintain the schedule so critical to creditors around the world." (Mot. ¶ 15.)[11] The Joint Administrators' chief priority is fairly resolving the allocation dispute and making distributions to creditors around the world. It is for this reason the Joint Administrators have taken the Appeal: because

---

11. Whether the Appeal is frivolous obviously does not depend on whether such a finding would speed resolution of the case, and Movants cite no authority to support such an argument.

arbitration represents the most efficient path to a speedy, cost-effective, and enforceable resolution of the allocation dispute, in addition to the path previously agreed by the parties.

The Joint Administrators note that while allocation proceedings before this Court must be stayed pending the Appeal, other matters, such as the EMEA Debtors' claims against the U.S. Debtors, will go forward.  As set forth above, the Joint Administrators have sought Movants' agreement to exchange allocation position papers with other core parties and to coordinate discovery on allocation issues with discovery already scheduled on the EMEA Debtors' claims during the pendency of the appeal.  Such an undertaking would benefit all parties, since discovery on allocation and claims is likely to overlap, and the parties will then be able to proceed more rapidly once arbitration commences without having to engage in a lengthy second discovery exercise.  The Joint Administrators stand ready to do so, provided the parties agree that the EMEA Debtors have not waived their right to an arbitral proceeding for allocation.

# CONCLUSION

For the foregoing reasons, the Joint Administrators respectfully request that the Court (i) deny the Joint Motion; (ii) grant the Cross-Motion; (iii) enter an Order substantially in the form attached hereto as <u>Exhibit A</u>; and (iv) grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
April 29, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Jaime Luton Chapman
James L. Patton (No. 2202)
Edwin J. Harron (No. 3396)
John T. Dorsey (No. 2988)
Jaime Luton Chapman (No. 4936)

Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  302-571-6600
Fax:  302-571-1253

– and –

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty

One Battery Park Plaza
New York, New York 10004
Telephone:  212-837-6000
Fax:  212-422-4726

– and –

HERBERT SMITH FREEHILLS LLP

Kevin Lloyd
John Whiteoak
Richard Lawton

Exchange House
Primrose Street
London EC2A 2EG

*Counsel for Joint Administrators*

01:13568608.1

-19-

1377

**Exhibit A**

**Proposed Order**

01:13568608.1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>NORTEL NETWORKS INC., *et al.*,<br><br>                                    Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>Jointly Administered<br><br>**RE: Docket No.  _____** |

## ORDER STAYING ALLOCATION PROTOCOL ORDER PENDING APPEAL

Upon consideration of (A) the *Joint Motion For An Order Retaining Jurisdiction Pending Appeal* [D.I. 10246] (the "Joint Motion") filed by Nortel Networks, Inc. ("NNI") and its affiliated debtors and debtors-in-possession (collectively, and including NNI, the "U.S. Debtors"),[1] and the Official Committee of Unsecured Creditors (the "Committee," and together with the U.S. Debtors, "Movants"), and (B) the *Objection To Joint Motion And Cross-Motion To Confirm Stay Pending Appeal* (the "Cross-Motion") filed by the court-appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators")[2] for Nortel Networks UK Limited ("NNUK") and certain of its affiliates (collectively, and including NNUK,

---

1.   The U.S. Debtors in these chapter 11 cases, along with the last four digits of each tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

2.   The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited ("NNIR"), are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the English proceedings for NNIR are: Alan Robert Bloom and David Martin Hughes.

the "EMEA Debtors")[3] requesting an order (this "Order") staying this Court's *Opinion* [D.I. 9946] and *Order Approving Allocation Protocol*, entered April 3, 2013 [D.I. 9947] (together, the "Allocation Protocol Order"), pending the Joint Administrators' appeal (the "Appeal") from the Allocation Protocol Order; and upon all prior submissions regarding the Allocation Protocol Order; and a hearing having been held to consider the relief requested in the Joint Motion and the Cross-Motion; and upon the record of the hearing and these chapter 11 proceedings; and due and sufficient notice of the Joint Motion and the Cross-Motion having been given under the circumstances and it appearing that no other or further notice need be given; and the Court having jurisdiction to consider the Cross-Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined that consideration of the Cross-Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and after due deliberation thereon and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Joint Motion is DENIED.

2.      The Cross-Motion is GRANTED.

3.      All proceedings before this Court in connection with the Allocation Protocol Order shall be and are hereby stayed pending the Appeal thereof.

---

3.   The EMEA Debtors are:  NNUK; Nortel GmbH; Nortel Networks (Austria) GmbH; NNIR; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A. ("NNSA"); Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

1380

4.      Notwithstanding any federal or local rule to the contrary, this Order shall

take effect immediately upon its entry.

Dated: May _____, 2013
         Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- X
                :

*In re*                :      Chapter 11
                :

Nortel Networks Inc., *et al.*,[1]  :      Case No. 09-10138 (KG)
                :

           Debtors.  :      Jointly Administered
                :      **RE:  D.I. 9946, 9947, 10246, 10368**
                :

                :
---------------------------------------------------------- X

## JOINT MOTION FOR LEAVE TO FILE A REPLY (A) IN FURTHER SUPPORT OF THE JOINT MOTION FOR AN ORDER RETAINING JURISDICTION PENDING APPEAL AND (B) IN RESPONSE TO THE JOINT ADMINISTRATORS' OBJECTION TO JOINT MOTION FOR AN ORDER RETAINING JURISDICTION PENDING APPEAL AND CROSS-MOTION TO CONFIRM STAY PENDING APPEAL

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), together with the Official Committee of Unsecured

Creditors (the "Committee" and together with the U.S. Debtors, the "Movants") hereby move

this Court (the "Joint Motion for Leave"), for the entry of an order substantially in the form

attached hereto as Exhibit A, granting the Movants leave to file a reply (the "Reply"), in further

support of the Movants' *Joint Motion for an Order Retaining Jurisdiction Pending Appeal* [D.I.

10246] (the "Joint Motion to Retain Jurisdiction"), and in response to the *Joint Administrators'*

*Objection to Joint Motion for an Order Retaining Jurisdiction Pending Appeal and Cross-*

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

*Motion to Confirm Stay Pending Appeal* [D.I. 10368] (the "Objection and Cross-Motion").[2] In support of this Motion, the Movants respectfully represent as follows:

1. On April 23, 2013, the Movants filed the Joint Motion to Retain Jurisdiction and the *Joint Motion for Entry of an Order Under 11 U.S.C. §§ 102(1) and 105, Fed. R. Bankr. P. 9006 and Bankr. D. Del. L.R. 9006-1(e) Shortening Notice Relating to the Joint Motion for an Order Retaining Jurisdiction Pending Appeal* [D.I. 10247], seeking to have the Joint Motion to Retain Jurisdiction heard on an expedited basis.

2. On April 24, 2013, the Court entered the *Order Granting the Joint Motion for Entry of an Order Under 11 U.S.C. §§ 102(1) and 105, Fed. R. Bankr. P. 9006 and Bankr. D. Del. L.R. 9006-1(e) Shortening Notice Relating to the Joint Motion for an Order Retaining Jurisdiction Pending Appeal* [D.I. 10264], setting April 29, 2013 as the objection deadline for the Joint Motion to Retain Jurisdiction and setting a hearing for May 1, 2013 at 10:00 a.m. (the "Hearing").

3. On April 29, 2013, the Joint Administrators filed the Objection and Cross-Motion.

4. Rule 9006-1(d) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") states that "[r]eply papers may be filed, and if filed, shall be served so as to be received by 4:00 p.m. Eastern Time the day prior to the deadline for filing the agenda." Local Rule 9029-3(a) requires that agendas be filed by 12:00 p.m. (ET) two business days prior to the hearing. Under the Local Rules, the deadline to file the agenda for the hearing was April 29, 2013 at 12:00 p.m., and the deadline to file the Reply was April 26, 2013 at 4:00 p.m.

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Joint Motion to Retain Jurisdiction.

5.      Because the Objection and Cross-Motion was filed after the deadline for a reply under this Court's local rules, no reply is possible except by leave of the Court.

6.      The Movants hereby seek leave of the Court to file the Reply attached hereto as Exhibit B, to respond to the legal and factual arguments raised by the Joint Administrators. Under these circumstances, the Movants believe that ample cause exists to grant the Movants leave to file this brief Reply.

### Notice

7.      Notice of the Joint Motion for Leave has been given via electronic mail or facsimile to (i) the U.S. Trustee; (ii) counsel to the Joint Administrators; (iii) counsel to the ad hoc group of bondholders; (iv) the Canadian Monitor; and (v) counsel to the U.K. Pension Trust. The Movants submit that under the circumstances no other or further notice is necessary.

### No Prior Request

8.      No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Movants respectfully request that this Court (i) grant Movants leave to file the Reply; (ii) enter the proposed order attached as Exhibit A hereto; and (iii) grant the Movants such other and further relief as may be just and proper.

Dated:  April 30, 2013           CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware

                                 Howard Zelbo (admitted *pro hac vice*)
                                 James L. Bromley (admitted *pro hac vice*)
                                 Jeffrey A. Rosenthal (admitted *pro hac vice*)
                                 Lisa M. Schweitzer (admitted *pro hac vice*)
                                 One Liberty Plaza
                                 New York, New York 10006
                                 Telephone:  (212) 225-2000
                                 Facsimile:  (212) 225-3999

                                 - and -

3

1384

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee
of Unsecured Creditors*

4

**EXHIBIT A**
**Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------X
                                                       :
                                                       :      Chapter 11
                                                       :
In re                                                  :
                                                       :      Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹                         :
                                                       :      Jointly Administered
                        Debtors.                       :
                                                       :      Re: D.I. 10246, 10368
                                                       :
                                                       :
-------------------------------------------------------X
```

## ORDER AUTHORIZING MOVANTS
## TO FILE A REPLY TO DOCKET ITEM 10368

Upon the motion (the "Joint Motion for Leave") of Nortel Networks Inc. and certain of

its affiliates, as debtors and debtors in possession in the above-captioned cases (the "Debtors")

and the Official Committee of Unsecured Creditors (the "Committee" and together with the U.S.

Debtors, the "Movants"), for entry of an order, as more fully described in the Joint Motion for

Leave, providing leave to file a reply (the "Reply") to the Objection and Cross-Motion and in

further support of the Joint Motion to Retain Jurisdiction; and it appearing that no other or

further notice is necessary; and the Court having jurisdiction to consider the Joint Motion for

Leave and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court

having determined that consideration of the Joint Motion for Leave is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2); and the Court having determined that the legal and factual bases set

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

forth in the Joint Motion for Leave establish just cause for the relief requested in the Joint

Motion for Leave, and that such relief is in the best interests of the Debtors, their estates, their

creditors and the parties in interest; and upon the record in these proceedings; and after due

deliberation;

IT IS HEREBY ORDERED THAT:

1.      The Joint Motion for Leave is GRANTED.

2.      The Movants are hereby granted leave to file the Reply.

3.      The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: _____, 2013          _____
          Wilmington, Delaware              THE HONORABLE KEVIN GROSS
                                            CHIEF UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**
**Reply**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
:
:                                              Chapter 11
:
*In re*                                         :
:                                              Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,                 :
:                                              Jointly Administered
Debtors.       :
:                                              **Hearing Date:**
:                                              May 1, 2013 at 10:00 a.m. ET
:
:                                              **RE:  D.I. 9946, 9947, 10246, 10368**
:
-------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOINT MOTION FOR AN ORDER RETAINING JURISDICTION PENDING APPEAL AND IN RESPONSE TO THE JOINT ADMINISTRATORS' OBJECTION TO JOINT MOTION FOR AN ORDER RETAINING JURISDICTION PENDING APPEAL AND CROSS-MOTION TO CONFIRM STAY PENDING APPEAL

The Movants respectfully submit this reply in further support of the Movants'

*Joint Motion for an Order Retaining Jurisdiction Pending Appeal* [D.I. 10246] (the "Joint

Motion"),[1] and in response to the *Joint Administrators' Objection to Joint Motion for an Order*

*Retaining Jurisdiction Pending Appeal and Cross-Motion to Confirm Stay Pending Appeal* [D.I.

10368] (the "Objection and Cross-Motion").  In reply to the Objection and Cross-Motion, and in

further support of the Joint Motion, the Movants respectfully represent as follows:

## ARGUMENT

1.      The Movants agree with the Joint Administrators – up to a point – that the

Joint Motion and the Objection and Cross-Motion do not present the typical dispute over the

existence of an arbitration agreement.  This is not a situation where two parties – without any

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Joint
Motion.

prior Court involvement – entered into commercial negotiations that led to a contract, as to which a later dispute has arisen and the Court is being asked – after the fact – to determine whether the parties agreed to arbitrate that dispute.  Unlike in the typical situation and the situation described in all of the cases cited by the Joint Administrators, the Court is no stranger to the agreement in dispute.  Rather, because the US Debtors are subject to this Court's oversight, the Court was well aware of the context in which the IFSA was negotiated, and approved the IFSA before it became effective.  This Court is thus best positioned to know – to a certainty – whether when it approved the IFSA it intended to and did approve an arbitration agreement, which would have had the effect of divesting this Court of jurisdiction on the most important issue in this bankruptcy proceeding.[2]  The Court has ruled definitively that it did not approve an arbitration agreement when it approved the IFSA and it is now frivolous for the Joint Administrators to claim the Court misunderstood its own order.  This is in addition to the fact that the IFSA is, on its face, plainly not an arbitration agreement.

2.      As this Court is also aware, very early in these cases, a decision was made to sell all of the businesses and assets of the Nortel group.  These sales took place over a period of two years, pursuant to auctions supervised by this Court and the Canadian Court.  Before any sale took place, the Joint Administrators agreed, along with the US Debtors and the Canadian Debtors (and indeed any other selling corporate entity in the Nortel group) to not condition agreement to any sale on a particular allocation of sale proceeds.  The document containing this cornerstone agreement is the IFSA, the Interim Funding and Settlement Agreement, which was approved by this Court and the Canadian Court on June 29, 2009.  In reliance on the IFSA, a series of sales took place and approximately $7.5 billion in sale proceeds was generated.  The

---

[2]      As noted in the Joint Motion, the Bankruptcy Rules prohibit arbitration without this Court's consent.  See Fed. R. Bankr. P. 9019(c).

allocation of these sales proceeds is one of three gating items that is preventing the winding up of the US Debtors (the other two being resolution of the claims of the EMEA Debtors, on which the Joint Administrators' allocation theory is based, and the resolution of the claims of the UK Pension Parties, whose claims are even further attenuated, but premised on the same sort of unsupported allegations against the US Debtors on which the EMEA claims are premised).

       3.     The Joint Administrators voluntarily participated in all of the major sales processes. They and their representatives traveled to the United States and Canada repeatedly to participate in the lengthy and contentious negotiations over the sales. Every sale was subject to an auction process, all held in New York. Representatives of the Joint Administrators attended every auction. Every sale was subject to a joint evidentiary hearing before this Court and the Canadian Court. Representatives of the Joint Administrators attended every major sale hearing, both in Toronto and in Wilmington. Every sale was approved by complementary orders entered by both courts, where both courts retained jurisdiction to jointly decide disputes. The proceeds of every sale were deposited in accounts with JP Morgan Chase in New York subject to escrow agreements under which both courts retained jurisdiction to jointly decide disputes, including disputes involving the Joint Administrators. This Court is entitled to take judicial notice of all of the foregoing as all of it took place before this Court and subject to this Court's express approval.

       4.     The question presented by the Joint Motion and Objection and Cross-Motion boils down to a simple one – whether the Joint Administrators' appeal of the denial of their May 19, 2011, Cross-Motion to Compel Arbitration (the "Appeal") is frivolous and as such this Court should retain jurisdiction during the pendency of the Appeal. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007). In the *Ehleiter* decision, the Third Circuit adopted the Seventh Circuit's decision in *Bradford-Scott Data Corp., Inc. v. Physician*

3

*Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir 1997), holding that a trial court can retain

jurisdiction over a pending matter, notwithstanding an appeal as of right under Section 16(a) of

the Federal Arbitration Act, 9 U.S.C. § 16(a), where the trial court determines that the appeal is

"frivolous or forfeited."

      5.      The Joint Administrators' admit that their Appeal is based on their view

that the IFSA contained, in section 12(b), an agreement to arbitrate.  This view conflicts directly

with the decision of this Court, issued on April 3, 2013, [D.I. 9946] and the accompanying order,

issued on the same day, [D.I. 9947].   It also conflicts with the endorsement of the Canadian

Court issued on April 3, 2013.  The Joint Administrators protest that the definition of an appeal

requires that the appellant disagree with the decision of the trial court and that, in and of itself, is

not enough to satisfy the standard of frivolousness.  If mere disagreement were the end of the

inquiry, the Joint Administrators might have a point.  However, it is not the end of the inquiry.

      6.      The IFSA is not a document created in a vacuum.  The IFSA is the central

document of these global insolvency proceedings.  Without the IFSA, there would have been no

sales, no auctions, no $7.5 billion.  The Nortel entities would have dissolved each in their own

jurisdiction and the assets would have been sold piecemeal for far less consideration.  There

would be no allocation dispute, but there would be far less money to satisfy creditors.  For this

reason alone, the IFSA is a very different sort of document.

      7.      The IFSA was also a document that had no legal effect until it was

approved by an order of this Court.  Thus, the IFSA is a creature of this Court and of this Court's

inherent jurisdiction to issue orders relating to the Nortel US Debtors and to interpret those

orders.  The IFSA was negotiated in May, 2009 and approved by US and Canadian Courts on

June 29, 2009.  The Joint Administrators were present in the courtrooms in Toronto and

4

Wilmington when the IFSA was approved.  Never once during that entire approval process were the words arbitrate or arbitration used.  In fact, the US IFSA Order, which was subsequently recognized by the Canadian Court pursuant to section 18.6 of the CCAA, explicitly noted that no protocol was being approved and affirmatively required that the parties return for court approval of any protocol.  U.S. IFSA Order ¶ 8 [D.I. 993].  That requirement of subsequent approval is dispositive.  The IFSA contained no agreement to arbitrate, as the Joint Administrators recognized publicly when they admitted, long after the IFSA had been approved, that "in the event that it is not possible to agree on an arbitration process with the Canadian and U.S. entities, the process for determining the allocation of the sale proceeds is likely to be decided by the courts."  *Supplemental Submission of U.S. Debtors and Official Committee of Unsecured Creditors on Allocation Protocol Issues* dated March 4, 2013, at 7 [D.I. 9570] (quoting Joint Administrators' second progress report to creditors, dated February 12, 2010).

       8.     With the IFSA being a creature of this Court, and after massive briefing and two lengthy joint hearings in June 2011 and March 2013, this Court issued its Opinion finding – without any doubt or hesitation – that the IFSA did not contain an agreement to arbitrate and that it did contain a dispute resolution clause pursuant to which the EMEA Debtors agreed to joint hearings before the US and Canadian Courts.  This Court made it clear that the parties did not even come close to an agreement to arbitrate in the IFSA.  Opinion at 12 ("[T]he parties did not even approach any agreement on arbitration.").  The language of this Court's opinion is clear, definitive and without doubt.  It is also entirely consistent with the language used by the Canadian Court, language which is important as the IFSA was also a creature of the Canadian Court (it having been subject as well to Canadian Court approval).   In the light of such strong language from the Courts that not only oversaw the Cross-Motion to Compel Arbitration,

but also approved the IFSA in 2009, there can no doubt that the Appeal is frivolous and that the "frivolous or forfeited" standard adopted in *Bradford-Scott* and *Ehleiter* to address appeals that have no basis and are calculated to delay and distract has been satisfied.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court (i) grant the Joint Motion; (ii) deny the Objection and Cross-Motion; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: April 30, 2013
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

6

1395

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee*
*of Unsecured Creditors*

7

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------X
                                                     :
                                                     :    Chapter 11
                                                     :
In re                                                :    Case No. 09-10138 (KG)
                                                     :
Nortel Networks Inc., et al.,                        :
                                                     :    Jointly Administered
                              Debtors.               :
                                                     :    Hearing Date:
                                                     :    May 1, 2013 at 10:00 a.m. ET
                                                     :
                                                     :    RE:  D.I. 9946, 9947, 10246, 10368
                                                     :
-----------------------------------------------------X
```

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOINT MOTION FOR AN ORDER RETAINING JURISDICTION PENDING APPEAL AND IN RESPONSE TO THE JOINT ADMINISTRATORS' OBJECTION TO JOINT MOTION FOR AN ORDER RETAINING JURISDICTION PENDING APPEAL AND CROSS-MOTION TO CONFIRM STAY PENDING APPEAL

The Movants respectfully submit this reply in further support of the Movants'

*Joint Motion for an Order Retaining Jurisdiction Pending Appeal* [D.I. 10246] (the "Joint

Motion"),[1] and in response to the *Joint Administrators' Objection to Joint Motion for an Order

Retaining Jurisdiction Pending Appeal and Cross-Motion to Confirm Stay Pending Appeal* [D.I.

10368] (the "Objection and Cross-Motion").  In reply to the Objection and Cross-Motion, and in

further support of the Joint Motion, the Movants respectfully represent as follows:

### ARGUMENT

1.      The Movants agree with the Joint Administrators – up to a point – that the

Joint Motion and the Objection and Cross-Motion do not present the typical dispute over the

existence of an arbitration agreement.  This is not a situation where two parties – without any

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Joint
Motion.

prior Court involvement – entered into commercial negotiations that led to a contract, as to which a later dispute has arisen and the Court is being asked – after the fact – to determine whether the parties agreed to arbitrate that dispute. Unlike in the typical situation and the situation described in all of the cases cited by the Joint Administrators, the Court is no stranger to the agreement in dispute. Rather, because the US Debtors are subject to this Court's oversight, the Court was well aware of the context in which the IFSA was negotiated, and approved the IFSA before it became effective. This Court is thus best positioned to know – to a certainty – whether when it approved the IFSA it intended to and did approve an arbitration agreement, which would have had the effect of divesting this Court of jurisdiction on the most important issue in this bankruptcy proceeding.[2] The Court has ruled definitively that it did not approve an arbitration agreement when it approved the IFSA and it is now frivolous for the Joint Administrators to claim the Court misunderstood its own order. This is in addition to the fact that the IFSA is, on its face, plainly not an arbitration agreement.

2. As this Court is also aware, very early in these cases, a decision was made to sell all of the businesses and assets of the Nortel group. These sales took place over a period of two years, pursuant to auctions supervised by this Court and the Canadian Court. Before any sale took place, the Joint Administrators agreed, along with the US Debtors and the Canadian Debtors (and indeed any other selling corporate entity in the Nortel group) to not condition agreement to any sale on a particular allocation of sale proceeds. The document containing this cornerstone agreement is the IFSA, the Interim Funding and Settlement Agreement, which was approved by this Court and the Canadian Court on June 29, 2009. In reliance on the IFSA, a series of sales took place and approximately $7.5 billion in sale proceeds was generated. The

---

[2]     As noted in the Joint Motion, the Bankruptcy Rules prohibit arbitration without this Court's consent. See Fed. R. Bankr. P. 9019(c).

allocation of these sales proceeds is one of three gating items that is preventing the winding up of the US Debtors (the other two being resolution of the claims of the EMEA Debtors, on which the Joint Administrators' allocation theory is based, and the resolution of the claims of the UK Pension Parties, whose claims are even further attenuated, but premised on the same sort of unsupported allegations against the US Debtors on which the EMEA claims are premised).

3.     The Joint Administrators voluntarily participated in all of the major sales processes.  They and their representatives traveled to the United States and Canada repeatedly to participate in the lengthy and contentious negotiations over the sales.  Every sale was subject to an auction process, all held in New York.  Representatives of the Joint Administrators attended every auction.  Every sale was subject to a joint evidentiary hearing before this Court and the Canadian Court.  Representatives of the Joint Administrators attended every major sale hearing, both in Toronto and in Wilmington.  Every sale was approved by complementary orders entered by both courts, where both courts retained jurisdiction to jointly decide disputes.  The proceeds of every sale were deposited in accounts with JP Morgan Chase in New York subject to escrow agreements under which both courts retained jurisdiction to jointly decide disputes, including disputes involving the Joint Administrators.  This Court is entitled to take judicial notice of all of the foregoing as all of it took place before this Court and subject to this Court's express approval.

4.     The question presented by the Joint Motion and Objection and Cross-Motion boils down to a simple one – whether the Joint Administrators' appeal of the denial of their May 19, 2011, Cross-Motion to Compel Arbitration (the "Appeal") is frivolous and as such this Court should retain jurisdiction during the pendency of the Appeal.  *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007).  In the *Ehleiter* decision, the Third Circuit adopted the Seventh Circuit's decision in *Bradford-Scott Data Corp., Inc. v. Physician*

3

*Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir 1997), holding that a trial court can retain jurisdiction over a pending matter, notwithstanding an appeal as of right under Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a), where the trial court determines that the appeal is "frivolous or forfeited."

       5.      The Joint Administrators' admit that their Appeal is based on their view that the IFSA contained, in section 12(b), an agreement to arbitrate.  This view conflicts directly with the decision of this Court, issued on April 3, 2013, [D.I. 9946] and the accompanying order, issued on the same day, [D.I. 9947].   It also conflicts with the endorsement of the Canadian Court issued on April 3, 2013.  The Joint Administrators protest that the definition of an appeal requires that the appellant disagree with the decision of the trial court and that, in and of itself, is not enough to satisfy the standard of frivolousness.  If mere disagreement were the end of the inquiry, the Joint Administrators might have a point.  However, it is not the end of the inquiry.

       6.      The IFSA is not a document created in a vacuum.  The IFSA is the central document of these global insolvency proceedings.  Without the IFSA, there would have been no sales, no auctions, no $7.5 billion.  The Nortel entities would have dissolved each in their own jurisdiction and the assets would have been sold piecemeal for far less consideration.  There would be no allocation dispute, but there would be far less money to satisfy creditors.  For this reason alone, the IFSA is a very different sort of document.

       7.      The IFSA was also a document that had no legal effect until it was approved by an order of this Court.  Thus, the IFSA is a creature of this Court and of this Court's inherent jurisdiction to issue orders relating to the Nortel US Debtors and to interpret those orders.  The IFSA was negotiated in May, 2009 and approved by US and Canadian Courts on June 29, 2009.  The Joint Administrators were present in the courtrooms in Toronto and

Wilmington when the IFSA was approved. Never once during that entire approval process were the words arbitrate or arbitration used. In fact, the US IFSA Order, which was subsequently recognized by the Canadian Court pursuant to section 18.6 of the CCAA, explicitly noted that no protocol was being approved and affirmatively required that the parties return for court approval of any protocol. U.S. IFSA Order ¶ 8 [D.I. 993]. That requirement of subsequent approval is dispositive. The IFSA contained no agreement to arbitrate, as the Joint Administrators recognized publicly when they admitted, long after the IFSA had been approved, that "in the event that it is not possible to agree on an arbitration process with the Canadian and U.S. entities, the process for determining the allocation of the sale proceeds is likely to be decided by the courts." *Supplemental Submission of U.S. Debtors and Official Committee of Unsecured Creditors on Allocation Protocol Issues* dated March 4, 2013, at 7 [D.I. 9570] (quoting Joint Administrators' second progress report to creditors, dated February 12, 2010).

       8.     With the IFSA being a creature of this Court, and after massive briefing and two lengthy joint hearings in June 2011 and March 2013, this Court issued its Opinion finding – without any doubt or hesitation – that the IFSA did not contain an agreement to arbitrate and that it did contain a dispute resolution clause pursuant to which the EMEA Debtors agreed to joint hearings before the US and Canadian Courts. This Court made it clear that the parties did not even come close to an agreement to arbitrate in the IFSA. Opinion at 12 ("[T]he parties did not even approach any agreement on arbitration."). The language of this Court's opinion is clear, definitive and without doubt. It is also entirely consistent with the language used by the Canadian Court, language which is important as the IFSA was also a creature of the Canadian Court (it having been subject as well to Canadian Court approval). In the light of such strong language from the Courts that not only oversaw the Cross-Motion to Compel Arbitration,

but also approved the IFSA in 2009, there can no doubt that the Appeal is frivolous and that the "frivolous or forfeited" standard adopted in *Bradford-Scott* and *Ehleiter* to address appeals that have no basis and are calculated to delay and distract has been satisfied.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court (i) grant the Joint Motion; (ii) deny the Objection and Cross-Motion; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: April 30, 2013
   Wilmington, Delaware

        CLEARY GOTTLIEB STEEN & HAMILTON LLP

        Howard Zelbo (admitted *pro hac vice*)
        James L. Bromley (admitted *pro hac vice*)
        Jeffrey A. Rosenthal (admitted *pro hac vice*)
        Lisa M. Schweitzer (admitted *pro hac vice*)
        One Liberty Plaza
        New York, New York 10006
        Telephone: (212) 225-2000
        Facsimile: (212) 225-3999

         - and -

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

        */s/ Ann C. Cordo*
        Derek C. Abbott (No. 3376)
        Eric D. Schwartz (No. 3134)
        Ann C. Cordo (No. 4817)
        1201 North Market Street
        P.O. Box 1347
        Wilmington, Delaware 19801
        Telephone: (302) 658-9200
        Facsimile: (302) 658-3989

        *Counsel for the Debtors*
        *and Debtors in Possession*

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee
of Unsecured Creditors*

7

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------X
                                        :    Chapter 11
                                        :
In re                                   :    Case No. 09-10138 (KG)
                                        :
Nortel Networks Inc., et al.,[1]        :    Jointly Administered
                                        :    RE: D.I. 10244
                          Debtors.      :
-----------------------------------------------------X
```

### ORDER CERTIFYING THE JOINT ADMINISTRATORS'
### NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS
### FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

This matter coming before the Court on the Joint Request of Nortel Networks Inc.

and its affiliated debtors, as respective debtors and debtors in possession (collectively, the

"Debtors" or the "U.S. Debtors") and the Official Committee of Unsecured Creditors (the

"Committee") for certification of the Joint Administrators' Notice of Appeal [D.I. 10166]

directly to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C §

158(d)(2); and the Court having found that (i) the Court has jurisdiction over the matter pursuant

to 28 U.S.C. §§ 1334 and 157, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and

(iii) notice of the Request was sufficient under the circumstances; and the Court having

determined that the legal and factual bases set forth in the Request establish just cause for the

relief herein granted;

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

IT IS HEREBY ORDERED THAT:

1.    The Request is GRANTED as set forth herein.

2.    The Court certifies that an immediate appeal from the portion of the April 3, 2013 Order denying the Cross-Motion to Compel Arbitration is appropriate because an immediate appeal may materially advance the progress of these long-standing cases and because multiple parties have requested certification.

3.    This Court thus certifies the Notice of Appeal pursuant to 28 U.S.C. § 158(d)(2).

4.    This certification does not apply to *the Joint Administrators' Motion for Leave to Appeal from Order Approving Allocation Protocol*, filed April 17, 2013 [D.I. 10167].

5.    The Court suggests that expedition of any direct appeal regarding the *Notice of Appeal* is appropriate and would facilitate resolution and materially advance the progress of these cases.

Dated:   May 1, 2013
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

2

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---

------------------------------------------------------------------- X
                              :

In re:                                :   Chapter 11
                               :

NORTEL NETWORKS INC., *et al.*,[1]    :   Case No. 09-10138 (KG)
                               :

             Debtors.        :   (Jointly Administered)
                               :
                               :   **RE: Docket No. 10166**
------------------------------------------------------------------- X

## NOTICE OF FILING OF ITEMS DESIGNATED FOR RECORD ON APPEAL

      **PLEASE TAKE NOTICE** that in accordance with Rule 8006-1(c) of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for

the District of Delaware, the court-appointed administrators and authorized foreign

representatives (collectively, the "Joint Administrators")[2] for Nortel Networks UK Limited

("NNUK") and certain of its affiliates (collectively, and including NNUK, the "EMEA

Debtors"),[3] filed the following items, which will be designated in the record of their appeal

[D.I. 10166] of the Order Approving Allocation Protocol, entered by the United States

---

[1].   The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc.

[2]   The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris. The Joint Administrators in the English proceedings for Nortel Networks (Ireland) Limited are: Alan Robert Bloom and David Martin Hughes.

[3]   The EMEA Debtors are located in Europe, the Middle East and Africa and are in proceedings pending before the High Court of Justice of England and Wales. They are: Nortel Networks UK Limited; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks s.r.o.

Bankruptcy Court for the District of Delaware on April 3, 2013 [D.I. 9947] and the

accompanying Opinion [D.I. 9946]:

| Attached Hereto As Exhibit: | Description |
|---|---|
| A | Affidavit of Tai-Heng Cheng |
| B | The Nortel Mediation Opening Remarks of Chief Justice Warren K. Winkler on April 24, 2012 |
| C | Endorsement of Justice Morawetz of the Ontario Superior Court of Justice–Commercial List dated March 8, 2013 |
| D | Endorsement of Justice Morawetz of the Ontario Superior Court of Justice–Commercial List dated April 3, 2013 |
| E | Amended Notice of Motion for Leave to Appeal |
| F | Notice of Motion to Expedite and Consolidate |

068476.1001

1407

Dated: Wilmington, Delaware
May 1, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Jaime Luton Chapman
Edwin J. Harron (No. 3396)
John T. Dorsey (No. 2988)
Jaime Luton Chapman (No. 4936)

Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  302-571-6600
Fax:  302-571-1253

– and –

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Amera Z. Chowhan
Gabrielle Glemann
Charles H. Huberty

One Battery Park Plaza
New York, New York 10004
Telephone:  212-837-6000
Fax:  212-422-4726

– and –

HERBERT SMITH FREEHILLS LLP

Kevin Lloyd
John Whiteoak
Richard Lawton

Exchange House
Primrose Street
London EC2A 2HS

*Counsel for Joint Administrators*

3

**EXHIBIT A**

Court File No: 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERICAL LIST

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORTATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AFFIDAVIT OF TAI-HENG CHENG
(sworn May 31, 2011)

I, Tai-Heng Cheng, of the City of New York, in the State of New York, MAKE OATH AND SAY:

1.     I have been asked to provide my independent expert opinion under New York law, as well as applicable U.S. federal law and international law, on certain issues relating to this case.

## I.     QUALIFICATIONS

2.     I am Senior Legal Advisor at Hoguet Newman Regal & Kenney, LLP.   I am a member of the bars of the State of New York, the U.S. District Courts for the Southern, Eastern and Western Districts of New York, and the U.S. Court of Appeals for the Second Circuit.  I have litigated several cases involving contract law in New York state and U.S. federal courts, and have assisted the U.S. Court of Appeals for the Second Circuit as *amicus curiae* on international law issues.

3.     I have served as an arbitrator, expert and counsel in international arbitrations under ICSID, UNCITRAL, ICDR, ICC, SCC, and JAMS rules, and am a member of the panels of neutrals of the ICDR, CPR, and HKIAC.  I have also advised the Republic of Kosovo on international law matters, including treaties.  In 2010, I chaired an arbitration tribunal that resolved an international contract dispute governed by New York law.  I am presently serving as an expert in international law and arbitration agreements in two international arbitrations.

4.     In addition to being a practicing New York attorney, I am a tenured Professor of Law and Director of the Institute for Global Law, Justice and Policy at New York Law School, where I have taught contract law and international arbitration almost annually since 2006.  I am the author of forty published and forthcoming books, articles and essays in international law, of which a dozen of them address international dispute resolution.  I have given sixty lectures worldwide on international law, including twenty addressing international dispute resolution.  U.S. federal appeals and district court decisions, as well

as U.S. Supreme Court briefs, have cited and relied on my scholarship as authoritative on international law.  I have been a visiting professor at Vanderbilt Law School and City University of Hong Kong School of Law, in 2010 and 2008, respectively, and will be a visiting professor at Hebrew University School of Law in 2012.  In all my visiting professorships, I teach courses and give public lectures on international law and international dispute resolution.

5.      I am an elected member of the Executive Council of the American Society of International Law ("ASIL"), and was co-chair of its 2011 Annual Meeting.  In 2008, I served on its Awards Committee, which selected preeminent works to receive ASIL's Certificate of Merit, its highest award for scholarship.  I am also an elected member of the American Law Institute, and serve on its Members Consultative Committees that assist in the preparation of the Restatement (Third) of the U.S. Law of International Commercial Arbitration, and the Principles of World Trade Organization Law.  I also serve on the Academic Council of the Institute for Transnational Arbitration, and am Honorary Fellow of the Foreign Policy Association.

6.      I hold Doctor of the Science of Law and Master of Laws degrees from Yale Law School from 2004 and 2000, respectively, where I was a Howard M. Holtzmann Fellow for International Law.  I also received a Bachelor of Arts in Law with First Class Honors from Oxford University in 1999, where I was an Oxford University Scholar.

7.      A *curriculum vitae* setting forth a complete list of my professional activities and publications is appended to this affidavit as Exhibit A.

## II.   SUMMARY OF OPINION

8.      The court-appointed administrators and authorized foreign representatives for Nortel Networks UK Limited and the EMEA Debtors (collectively, the "Joint Administrators") have asked me to express my independent expert opinion, under New York law and applicable U.S. federal law: (i) on whether the Joint Administrators and

2

other debtors of the Nortel estate are required to resolve disputes over the allocation of the sale proceeds of Nortel assets (the "Sale Proceeds") through arbitration (as opposed to judicial adjudication); (ii) on whether courts have jurisdiction to resolve the merits of any dispute over the allocation of the Sale Proceeds considering the provisions of the IFSA; and (iii) on what evidence would be admissible to interpret an ambiguous arbitration agreement.

9.      In my opinion, under New York law and the U.S. Federal Arbitration Act (the "FAA"), the Joint Administrators and other debtors of the Nortel estate are required to resolve any disputes over the allocation of the Sale Proceeds through international arbitration, by which I mean an arbitration involving parties of more than one nationality. They must resolve such disputes through international arbitration because they signed the Interim Funding and Settlement Agreement dated as of June 9, 2009 ("IFSA"), which contains a binding arbitration agreement in Section 12(b).   In light of international commercial practices and terminology, and the entire context of Section 12, the words of Section 12(b) plainly and unequivocally require the parties to the IFSA to resolve all disputes concerning the allocation of the Sale Proceeds through an *ad hoc* arbitration.  An *ad hoc* arbitration is an arbitration in which the parties did not select the rules of any arbitral institution in their arbitration agreement.  As with some other *ad hoc* arbitration agreements, the IFSA parties agreed to negotiate in good faith to establish binding procedures for the *ad hoc* arbitration.  As an objective matter, this further shows that the parties did not intend for their disputes to be resolved by a court because they do not have the legal authority to bind a court to the procedures to which they agreed.

10.     Because the IFSA parties have specifically agreed to *ad hoc* arbitration, the general jurisdiction provision in Section 16(b) of the IFSA granting jurisdiction to U.S. and Ontario courts must be interpreted, as a matter of contract law, to confer only limited jurisdiction to courts.  This limited jurisdiction is jurisdiction to determine whether the arbitration agreement is valid and if so, to compel arbitration, and to review the arbitration award after an arbitration tribunal issues it, bearing in mind that the standard of review is much higher than an appellate standard.  This interpretation is consistent

3

with the FAA and the U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), to which both the United States and Canada are treaty parties and which the United States implemented domestically through the FAA. The court has no jurisdiction to adjudicate the merits of a dispute over the allocation of the Sale Proceeds, which is subject to dispute resolution only through international arbitration.

11.   In New York, if a court were to find that Section 12 is ambiguous, extrinsic evidence of the parties' intent to arbitrate these issues is admissible to resolve the ambiguity. Such evidence includes oral agreements or writings between the parties made prior to or contemporaneous with the execution of the IFSA, as well as evidence of the course of conduct between the parties following the execution of the IFSA. If, after reviewing all evidence submitted, any doubt remained as to the existence of an agreement to arbitrate between the parties, New York law requires courts to support the federal policy favoring arbitration and therefore to resolve any ambiguities in favor of arbitration.

12.   My opinions are explained fully below and are supported by statutes, binding precedents, and persuasive authority.

## III.   QUESTIONS PRESENTED AND ANSWERS

13.   The Joint Administrators have asked me to express an opinion on the following specific questions of New York law:

> (A)   The requirements for there to be an enforceable agreement to arbitrate a dispute;
>
> (B)   Whether Section 12(b) of the IFSA constitutes an agreement to arbitrate relating to the allocation of Sales Proceeds;

4

(C)     Whether Section 16(b) of the IFSA provides the Court with jurisdiction to determine any disputes relating to the allocation of Sales Proceeds;

(D)     Whether Section 12(c) of the IFSA creates a binding obligation on any party to negotiate in good faith towards an agreement on the Interim Sales Protocol referred to in the IFSA;

(E)     Whether extrinsic evidence is admissible in order to consider and determine the proper interpretation of the IFSA with respect to whether the parties agreed to arbitration and regarding what the term "dispute resolver(s)" in the IFSA means; and

(F)     Whether evidence regarding the parties' negotiations is admissible to determine whether such negotiations were conducted in good faith.

14.     For the reasons set forth in more detail below, it is my opinion that:

(A)     Under New York law, an arbitration agreement is valid and enforceable if it is in writing and evinces an intent of the parties to the agreement to submit themselves to binding arbitration.  The parties need not agree to the arbitration procedures; rather, New York law only requires an agreement to be bound.  Additionally, the terms "arbitration," "arbitrator," or "arbitrate" need not appear in the text of the agreement so long as the agreement evidences the intent of the parties to submit to arbitration.  Where the parties' intent is discernible from the plain meaning of the language of the contract, there is no need to look further.

(B)     Section 12(b) of the IFSA is a valid and enforceable arbitration agreement because it is a written agreement evidencing the intent of the parties to submit themselves to binding *ad hoc* arbitration and is consistent with public policy favoring arbitration of international commercial disputes.

5

(C)     Section 16(b) of the IFSA does not provide a court with jurisdiction to determine the merits of any dispute relating to the allocation of the Sales Proceeds because it is displaced by and must be interpreted consistently with the more specific arbitration clause contained in Section 12(b).  Section 16(b) confers on the court limited jurisdiction to determine the validity of the arbitration agreement in Section 12(b) and to enforce it, as well as to review the arbitration award after an arbitration tribunal renders it.  If the parties are unable to reach an agreement on binding procedures for arbitration, the FAA requires the court to appoint an arbitral tribunal, and the tribunal will decide the rules of the arbitration as well as the merits of the arbitral dispute.

(D)     Section 12(c) of the IFSA creates a binding obligation on the parties to negotiate in good faith towards an agreement on the Interim Sales Protocol referred to in the IFSA.  As noted above, where the parties are unable to reach such agreement, the court shall, under the FAA, appoint an arbitration panel, which will then decide the rules to apply and adjudicate the merits of the dispute.  The fact that the parties do not agree on a protocol will not invalidate either the arbitration agreement or the obligation to arbitrate thereunder.

(E)     To the extent that a court determines that Section 12(b) is ambiguous as to the parties' intent to enter into an arbitration agreement, extrinsic evidence of words and actions before and after the conclusion of the IFSA is admissible to determine the parties' intent.

(F)     Evidence regarding the parties' negotiations after the IFSA was concluded is admissible to determine whether such negotiations were conducted in good faith.

6

1416

## IV.   MATERIALS CONSIDERED

15.   In preparing this opinion, I have reviewed the following documents:

(A)   Notice of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, filed in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. Apr. 25, 2011);

(B)   Declaration of Inna Rozenberg in Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, and its attached exhibits, filed in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. Apr. 25, 2011);

(C)   Declaration of Kevin Francis Lloyd ("Lloyd Declaration" or "Lloyd Decl.") in Opposition to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and in Support of Cross-Motion to Compel Arbitration, and its attached exhibits, filed in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. May 19, 2011);

(D)   The Joint Administrators' Motion for an Order Pursuant to § 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018 for Authorization To File Under Seal (i) the Joint Administrators' Memorandum of Law in Opposition to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and in Support of Cross-Motion to Compel Arbitration, filed in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. May 19, 2011);

(E)   The Joint Administrators' (i) Objection To Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (ii) Cross-Motion

7

to Compel Arbitration, filed in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. May 19, 2011);

(F)     The Joint Administrators' Memorandum of Law in Support of Their (i) Objection to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (ii) Cross-Motion to Compel Arbitration, in *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Bankr. Del. May 19, 2011);

(G)     Motion Record for *In re Companies' Creditors Arrangement Act, R.S.C.1985, c. C-36, as Amended*, (Ontario Sup. Ct., Commercial List, returnable June 7, 2011).

## V.     APPLICABLE LAW

16.     I have been asked to provide my opinion under New York law, as well as applicable U.S. federal law and international law.  Preliminarily, I note that New York law is harmonized with and modified by the FAA on issues relating to international arbitration.[1]  The FAA is the implementing legislation in the United States of the New York Convention.

## VI.    THE REQUIREMENTS FOR AN ENFORCEABLE AGREEMENT TO ARBITRATE UNDER NEW YORK LAW

17.     The requirements for an enforceable agreement to arbitrate a dispute under New York law are that there must be a written agreement to arbitrate that evinces an intent of

---

[1] *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that where New York law applies to interpreting an arbitration agreement, "under the FAA certain presumptions inform the analysis," including "the federal policy in favor of arbitration [which] requires that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

8

the parties to submit themselves to binding arbitration.[2]  Such an arbitration agreement is valid and must be enforced unless there is a clear public policy against arbitrating the dispute covered by the agreement.[3]

### A.    The Agreement to Arbitrate

18.    When deciding if there is an enforceable arbitration agreement, New York courts first consider whether the parties agreed to arbitrate the dispute at issue.  Whether an arbitration agreement exists raises basic questions of contract formation, such as whether the parties have assented to arbitration, either by agreeing to a freestanding arbitration agreement or by agreeing to an arbitration clause in a contract.[4]  An arbitration agreement must be in writing, and evince an intent by the parties to arbitrate.[5]

19.    The Court will infer the parties' intention from all the provisions of the agreement, interpreting the "document as a whole to determine the parties' purpose and intent, giving a practical interpretation to the language employed so that the parties' reasonable expectations are realized."[6]  Where the parties' intent is discernible from the plain meaning of the language of the contract, there is no need to look further.[7]

20.    It is not necessary to use the terms "arbitrate," "arbitration," or "arbitrator" for an agreement to arbitrate to be enforceable as such.[8]  "[N]o particular wording is required to

---

[2] *Crawford v. Feldman*, 604 N.Y.S.2d 585, 587 (N.Y. App. Div. 1993); *Just In-Material Designs, Ltd. v. I.T.A.D. Assocs., Inc.*, 463 N.Y.S.2d 202, 204-06 (N.Y. App. Div. 1983).

[3] *Broome v. N.Y. State Law Enforcement Officers Union. Dist. Council 82, AFSCME, AFL-CIO*, 915 N.Y.S.2d 708, 710 (N.Y. App. Div. 2011); *In re Arbitration Between City of Kingston and Kingston Prof'l Fire Fighters Assoc.*, 921 N.Y.S.2d 384 (N.Y. App. Div. 2011).

[4] *See, e.g.*, *Merrill Lynch Int'l Fin., Inc. v. Donaldson*, 895 N.Y.S.2d 698, 702 (N.Y. Sup. Ct. 2010) (noting that ordinary principles of contract interpretation determine whether a party is bound by an agreement to arbitrate).

[5] *Crawford*, 604 N.Y.S.2d at 586-86; *Just In-Material Designs,* 463 N.Y.S.2d at 204-06.

[6] *In re Same Time Holdings Ltd. & Red Board Ltd.*, No. 101119/06, 2006 WL 2079332, at *3 (N.Y. Sup. Ct. May 20, 2006).

[7] *Evan v. Famous Music Corp.*, 807 N.E.2d 869, 872 (N.Y. 2004).

[8] Carmody-Wait 2d § 141:14; 5 N.Y. Jur. 2d Arbitration & Award § 89.

9

constitute a valid, binding arbitration agreement, nor even the inclusion of the words 'arbitrate' or 'arbitrator.'"[9]

21.    In interpreting whether an agreement evinces an intention to arbitrate, New York law is consistent with the federal presumption in favor of arbitration enacted in the FAA. The FAA "creates a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act."[10]    It was implemented to give effect to the "liberal federal policy favoring arbitration agreements."[11]    "[U]nder the FAA, certain presumptions inform the analysis," including "the federal policy in favor of arbitration [which] requires that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[12]

22.    Like the FAA, New York law follows a liberal policy of promoting arbitration both to give effect to the intention of the parties and to ease congestion of court calendars.[13]    The New York Court of Appeals has instructed that New York "favors and encourages arbitration as a means of conserving time and resources of the courts and the contracting parties."[14]    As such, New York courts "interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration."[15]    Accordingly, New

---

[9] *Railworks Corp. v. Villafane Elec. Corp.*, 788 N.Y.S2d 834, 837 (N.Y. Sup. Ct. 2004) (quoting *Lovisa Constr. Co. v. Ctny. of Suffolk.*, 485 N.Y.S.2d 309, 310 (N.Y. App. Div. 1985)).
[10] 9 U.S.C. §§ 1-16; *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) (quoting *Moses*, 460 U.S. at 24-25.).
[11] *Moses*, 460 U.S. at 24; *Singer v. Jeffries & Co. Inc.*, 575 N.E.2d 98, 100-01 (N.Y. 1991).
[12] *Shaw Group*, 322 F.3d at 120 (quoting *Moses*, 460 U.S. at 24-25.).
[13] *Grayson-Robinson Stores, Inc. v. Iris Const. Corp.*, 168 N.E.2d 377, 379 (N.Y. 1960).
[14] *Smith Barney Shearson v. Sacharow*, 689 N.E.2d 884, 890 (N.Y. 1997) (quoting *Matter of Nationwide Gen. Ins. Co. v. Investors Ins. Co.*, 332 N.E.2d 333, 335 (N.Y. 1975).
[15] *Smith Barney*, 689 N.E.2d at 890 (quoting *Matter of 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 575 N.E.2d 104, 107 (N.Y. 1991).

10

York courts have favored arbitration as a practical means to dispose of differences between parties in commercial settings.[16]

23.    If there is a written agreement evincing an intention to arbitrate, New York courts will examine whether the dispute is arbitrable.  In other words, the court will inquire whether there is any statute, decisional law, or public policy that would prohibit arbitration of the subject matter in dispute.[17]  In light of the overriding New York and federal policy favoring arbitration, New York law invalidates arbitration agreements only very rarely and on narrow public policy grounds, which, in any event, do not apply to this arbitrable dispute.  These limited situations "constitute a very narrow exception to the otherwise broad power of parties to agree to arbitrate all of the disputes arising out of their juridical relationships."[18]

## VII.    WHETHER SECTION 12(B) OF THE IFSA IS AN ENFORCEABLE AGREEMENT TO ARBITRATE

24.    According to New York law, Section 12(b) of the IFSA is a valid and enforceable agreement to submit any disputes among the IFSA parties regarding the allocation of the Sale Proceeds to *ad hoc* arbitration.  It is an enforceable arbitration agreement because it is a written agreement evidencing the intent of the parties to submit themselves to binding *ad hoc* arbitration, and there is no policy against the arbitrability of disputes among debtors to allocate assets from the estate of a bankrupt corporation.

### A.    Section 12(b) Is a Written Agreement that Evinces an Intent to Arbitrate

25.    Section 12(b) of the IFSA is a binding agreement of the IFSA parties to submit disputes on the allocation of Sale Proceeds to  *ad hoc* arbitration.  Although Section 12(b)

---

[16] *Maye v. Bluestein*, 351 N.E.2d 717, 720 (N.Y. 1967); *Guadano v. Long Isl. Plastic Surgical Group, P.C.*, 607 F. Supp. 136, 139 (E.D.N.Y. 1982).

[17] *Broome v. N.Y. State Law Enforcement Officers Union. Dist. Council 82, AFSCME, AFL-CIO*, 915 N.Y.S.2d 708, 710 (N.Y. App. Div. 2011); *City of Kingston v. Kingston Prof'l Fire Fighters Assoc.*, 921 N.Y.S.2d 384, 385-86 (N.Y. App. Div. 2011).

[18] *Broome*, 915 N.Y.S.2d at 710; *Kingston*, 921 N.Y.S.2d at 385-86.

11

does not adopt the wording of model arbitration clauses provided by arbitral institutions because it is an *ad hoc* arbitration agreement, it is nonetheless evident from a straightforward interpretation of the words of Section 12(b), in the context of the other sub-sections of Section 12, that the parties intended to submit disputes about the allocation of Sale Proceeds to arbitration.

26.     Section 12(b) states:

> In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all of the Selling Debtors or (ii) in a case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol applicable to the Sale Proceeds.[19]

27.     There is no dispute that Section 12(b) is a written agreement.

28.     It also unambiguously refers to *ad hoc* arbitration, even though the word "arbitration" is not used.   Contract language is ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."[20]   When viewed objectively by a reasonably intelligent person who has examined the entire context of Section 12 and international commercial usages, Section 12(b) can only mean that disputes would be submitted to *ad hoc* arbitration.   The agreement provides that any disputes over the allocation of the Sale Proceeds would be resolved by "dispute resolver(s)."   There is no need to use the word "arbitrator,"[21] when the phrase "dispute resolver" is commonly used internationally to refer to decision-makers in alternative dispute resolution.   Under the terminology of international commercial practices, the reference to "dispute resolver(s)" evinces a clear intention of

---

[19] IFSA § 12(b).
[20] *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396-97 (2d Cir. 2009) (quoting *Reuson v. Cinque & Cinque P.C.*, 221 F.3d 59, 66 (2d Cir. 2008)); *Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 115 (2d Cir. 1994)
[21] Carmody-Wait 2d § 141:14; 5 N.Y. Jur. 2d Arbitration & Award § 89; *Railworks Corp.,* 788 N.Y.S.2d at 837.

12

the multinational parties to the IFSA to have any dispute arising from the allocation of the Nortel Sale Proceeds adjudicated by an alternative form of dispute resolution rather than through the judicial system.

29.     Section 12(c) further confirms that Section 12(b) is an agreement to submit disputes over the allocation of Sale Proceeds to *ad hoc* arbitration.  Section 12(c) states:

> [T]he Debtors shall, as soon as reasonably practicable, following the execution of this Agreement, negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (the "Interim Sales Protocol"), which Protocol shall provide binding procedures for the allocation of Sales Proceeds where the Selling Debtors in such transactions have been unable to reach agreement regarding such allocation.[22]

30.     Section 12(c) thus envisages good faith negotiations to agree on a binding procedure for the arbitration.  This is similar to other *ad hoc* arbitration agreements, where the parties agree to binding resolution of their disagreements, but do not set forth the procedure for such arbitration in the arbitration agreement.  Such *ad hoc* arbitration agreements are valid under New York law.  As the New York Appellate Division has instructed, where "[t]he dominant intent was to arbitrate," the machinery of procedures is "subordinate and incidental."[23]

31.     Further, because Section 12(c) explicitly refers to procedures to which the parties would bind themselves and the "dispute resolver(s)," the reference to "dispute resolver(s)" cannot mean courts under New York law.  In New York, procedures for adjudication in court are set by the New York Civil Practice Law and Rules and not by the parties.[24]  It is not open to the parties in a court case to mutually agree to set those rules aside.  Although they could seek the court's permission to vary procedures and

---

[22] IFSA § 12(c).

[23] *Lory Fabrics v. Dress Rehearsal, Inc.*, 434 N.Y.S.2d 359 (N.Y. App. Div. 1980) (quoting *Delma Eng'g Corp. v. K & L Constr. Co.*, 155 N.E.2d 675 (N.Y. 1958)).

[24] N.Y. C.P.L.R § 101 (the CPLR governs "the procedure in civil judicial proceedings in all courts of the state and before all judges"); *see also Ling Ling Yung v. Cnty of Nassau*, 571 N.E.2d 669, 670-71 (N.Y. 1991).

stipulate that the parties all agree to make the request, it is ultimately the court's decision whether to grant the motion. In contrast, Section 12(c) explicitly provides that the parties determine the binding procedures for dispute resolution. Because the parties cannot exert such authority over a New York court, it is clear that the parties did not intend to submit their disputes to a court when they expressed their agreement to arbitrate in Section 12(b).

32.     Section 12(c) is consistent with the parties' agreement in Section 12(b) to submit disputes relating to allocation of the Sales Proceeds to arbitration because in an *ad hoc* arbitration, the parties can agree to the rules governing arbitration. Although it will be up to the arbitral tribunal to apply those rules, should the tribunal depart from any of those mutually agreed arbitration rules, it may have committed a reviewable error that could result in annulment of the award.

### B.     New York Public Policy Supports Arbitrating Disputes Over the Proper Allocation of the Sale Proceeds

33.     Because Section 12(b) is a clear arbitration agreement, it is unenforceable only if arbitrating the disputes it covers violates public policy.[25] I am not aware of any policy, in the form of statute or otherwise, that would prohibit the arbitrability of disputes over the allocation of the Sale Proceeds.[26] On the contrary, the consistent public policy of New York and the FAA, as recognized by New York courts, is to favor arbitration of international commercial disputes such as the one here.[27] International arbitration provides a neutral forum for dispute resolution that avoids giving any one party real or perceived advantages by bringing claims in their own courts rather than the courts of another foreign party. It also promotes comity among courts around the world by avoiding different courts asserting jurisdiction over the same dispute when an international arbitration tribunal can resolve it. Enforcing the *ad hoc* arbitration

---

[25] *Broome*, 915 N.Y.S.2d at 710; *Kingston*, 921 N.Y.S.2d at 385-86.
[26] *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (holding that an international commercial dispute was arbitrable even though it involved U.S. antitrust issues).
[27] *Grayson-Robinson Stores, Inc. v. Iris Const. Corp.*, 168 N.E.2d 377, 379 (N.Y. 1960).

14

agreement contained in Section 12 would thus promote judicially-recognized public policy.

## VIII. THE JURISDICTION OF THE COURT UNDER SECTION 16(B) OF THE IFSA

34.    Section 16(b) of the IFSA does not provide the U.S. and Ontario courts with jurisdiction to determine disputes relating to the allocation of Nortel Sales Proceeds. As explained at Part VII, *supra*, Section 12(b) is a valid and enforceable arbitration agreement. Because Section 12(b) is a more specific provision providing for arbitration, it precludes interpreting the more general jurisdiction provision in Section 16(b) to grant jurisdiction to the court to resolve disputes that are subject to arbitration under Section 12(b). Instead, under New York principles of contract interpretation, Sections 16(b) must be harmonized with Section 12(b) by interpreting Section 16(b) to confer jurisdiction to the court only to determine the validity of the Section 12 arbitration agreement, and to confirm, enforce or annul the arbitration award after an arbitral tribunal issues the award. Notably, however, the grounds for review of arbitral awards under the FAA and the New York Convention, to which the United States and Canada are both parties, is significantly narrower than the grounds for appeal of court decisions by an appellate court.[28]

35.    Under New York law, when a contract contains an arbitration provision, the existence of a general jurisdiction provision in that contract does not negate the enforceability of the arbitration agreement. This is true regardless of whether the

---

[28] *Compare* FAA §§ 10-11, 9 U.S.C. §§ 10-11 (limiting review of arbitral awards to instances where (1) the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators were guilty of misconduct; (4) where the arbitrators exceeded their powers; or (5) where there was evident miscalculation of figures in the award) *with* Fed. R. App. Proc. 4 & 5 (providing permissive procedures for appeals of lower court decisions, through which a lower court's legal and factual findings may both be reviewed (generally under "de novo" and clearly erroneous standards, respectively)). *See also* U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 10 June 1958), 330 U.N.T.S. 3, 21 U.S.T. 2517, codified at 9 U.S.C. § 201 et. seq. (the "New York Convention"), Art. V(2) (restricting non-recognition of arbitral awards to limited instances, such as if the award is contrary to the public policy of the New York Convention signatory state where enforcement is sought).

15

arbitration agreement is contained in a specific clause and pertains only to a subset of disputes within the agreement, or whether the arbitration agreement is broader and refers to the disputes embodied in the entire contract.[29]  The New York Appellate Division has instructed:

> The express provision in the parties' agreement to arbitrate disputes was not negated by an additional clause in the agreement vesting the courts of this State with exclusive jurisdiction in all actions and proceedings, particularly where there was no express denial of the agreement to arbitrate.   The purpose of the exclusive jurisdiction provision was simply to fix "the required venue of applications to compel arbitration or confirm or reject arbitration awards."[30]

36.    These legal principles apply to Section 16(b) of the IFSA.  That section provides, in relevant part:

> To the fullest extent permitted by applicable law, each Party (i) agrees to submit to the non-exclusive jurisdiction of the US and Canadian Courts . . . for purposes of all legal proceedings to the extent relating to the matters agreed in this Agreement (but not, for any doubt, any Transfer Pricing Agreement matter generally) . . . .[31]

37.    Here, the broader jurisdictional provision of Section 16(b) does not negate the specific arbitration agreement embodied in Section 12.  Moreover, the *ejusdem generis* principle of contract interpretation would give precedence to the specific clause for arbitration rather than the general clause for the exclusive jurisdiction of the courts.[32]

38.    The principle that conflicting contract provisions should be harmonized, if reasonably possible, so as not to leave any provision without force and effect, would also require that the arbitration agreement be given full force such that any dispute arising

---

[29] *Isaacs v. Westchester Wood Works, Inc.*, 718 N.Y.S.2d 338 (N.Y. App. Div. 2000); *Edgewater Growth Capital Partners, LP v. Greenstar N. Am. Holdings, Inc.*, 891 N.Y.S.2d 278 (N.Y. App. Div. 2010).

[30] *Isaacs,* 718 N.Y.S.2d at 338.

[31] IFSA § 16(b).

[32] *Edgewater Growth N. Am.*, 891 N.Y.S.2d at 278-79; *Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956).

16

from the allocation of the Sales Proceeds would need to be adjudicated by an arbitrator, as required by Section 12 and discussed more fully below.[33] The court's jurisdiction under Section 16(b) is thus restricted to examining the validity of the arbitration agreement in Section 12(b), and to enforcing it.

39.    If parties cannot agree on a protocol for dispute resolution including the appointment of arbitrators, the court must, pursuant to Section 5 of the FAA, appoint arbitrators, who themselves can determine the rules to apply, as well as to adjudicate the merits of the dispute.[34]

40.    At the end of the arbitration, a court may review the award of arbitration.[35] However, as noted earlier, the standard of review by a court of an arbitral award is very narrow.[36] The U.S. Court of Appeals for the Second Circuit has instructed that "the courts will not assume the role of overseers to mold the award to conform to their sense of justice.  Thus, an arbitrator's award will not be vacated for errors of law and fact

---

[33] *Edgewater Growth*, 891 N.Y.S.2d at 278-79 ; *Muzak*, 133 N.E.2d at 690.

[34] FAA § 5 ("[I]f for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein[.]"); *CAE Ind., Ltd. v. Aerospace Holdings Co.*, 741 F. Supp. 388, 392 (S.D.N.Y. 1989) ("[I]n the absence of an explicit provision in the Agreement, or if for any other reason there shall be a lapse in the naming of an arbitrator, [Section 5 of the FAA] authorizes the court to appoint an arbitrator which it will do pursuant to an order accompanying this opinion."); *Neptune Maritime, Ltd. v. H&J Isbrandtsen, Ltd.*, 559 F. Supp. 531, 532 (S.D.N.Y. 1983) (district court had authority to appoint arbitrator to decide carrier's claim against merchant where merchant refused to comply with proper demand for arbitration); *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 642 F. Supp. 1155 (N.D. Ill. 1986), *aff'd* 831 F.2d 709 (even if parties' prior dealings did not dictate who would arbitrate dispute, court was authorized, under Arbitration Act, to designate and appoint arbitrator upon either parties' application).

[35] FAA § 9.

[36] *See* FAA §§ 10, 11.

17

committed by the arbitrator[.]"[37]  A decision can be annulled only if, for example, the arbitrators committed fraud or were corrupt.[38]

41.     This interpretation of Section 16(b) is consistent with New York legislation on arbitration.  Section 7501 of New York's Civil Practice Laws and Rules provides:

> A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award. In determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.

42.     It is also consistent with the FAA.  Section 3 of the FAA provides that when a court is confronted with a lawsuit involving a dispute that is subject to an arbitration agreement, the court shall, on an application of one of the parties, stay the suit.[39]

---

[37] *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 689 F.2d 301, 306 (2d Cir. 1982) (*citing Sprinzen v. Nomberg*, 389 N.E.2d 456, 458 (1979); *accord Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) ("[I]t would stretch basic interpretive principles to expand the stated grounds [Sections 10 and 11] to the point of evidentiary and legal review generally.").

[38] *See* FAA § 10; *see, e.g., Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 34 (2d Cir. 1951) (recognizing that although there should be "great hesitation in upsetting an arbitration award," an award may be overturned under the FAA when it is made "abundantly clear" that it has been obtained through "corruption, fraud, or undue means"); *Geyer Roofing Inc. v. Roofers Local 30B, United Union of Roofers, Water Proofers and Allied Workers, AFL-CIO*, 736 F. Supp. 573, 578 (D.N.J. 1990) (in spite of deference owed arbitration awards, courts will not enforce awards procured by fraud or coercion).

[39] FAA § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.")

18

1428

Likewise, Section 4 of the FAA provides that if a party fails to arbitrate a dispute subject to an arbitration agreement, the court shall compel the parties to arbitrate the dispute.[40]

43.    Similarly, the New York Convention, to which both the United States and Canada are signatories, and which was implemented by the FAA in the United States, requires a court that is faced with a dispute that is subject to an arbitration agreement to refer the dispute to arbitration.[41]  The court may not adjudicate the merits of the dispute, and may only review the award under narrow grounds when it is asked to enforce the award.[42]

## IV.    THE OBLIGATION TO NEGOTIATE A PROTOCOL IN GOOD FAITH UNDER SECTION 12(C)

44.    In my opinion, Section 12(c) of the IFSA creates a binding obligation on each party to negotiate in good faith towards an agreement on the Interim Sales Protocol referred to in the IFSA.  Section 12(c) explicitly states, in relevant part:

> [t]he Debtors shall, as soon as reasonably practicable, following the execution of this Agreement, negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (the "Interim Sales Protocol")[.][43]

45.    Neither party has argued that Section 12(c) is invalid, and there is no reason to interpret it any differently than as expressly stated to impose an obligation of negotiating in good faith.  Importantly, however, as stated above in Part VII, the obligation to agree to a protocol setting forth procedures for an *ad hoc* arbitration in Section 12(c) does not nullify the *ad hoc* arbitration agreement contained in Section 12(b) of the IFSA.

46.    Further, as explained in Section VIII, *supra*, to the extent the parties are unable to agree on such a protocol, the courts shall, under Section 5 of the FAA, appoint

---

[40] FAA § 4.
[41] New York Convention, Art. II(3).
[42] New York Convention, Art. V(2).
[43] IFSA § 12(c).

19

arbitrators.[44] The arbitrators will then, themselves, determine what arbitral rules to apply, and will render an award on the merits of the dispute.

## X.    RELEVANCE AND ADMISSIBILITY OF EXTRINSIC EVIDENCE TO DETERMINE THE PARTIES' INTENT AND MEANING IN SECTION 12(B)

47.    Even though it is my view that Section 12(b) clearly and unequivocally provides for *ad hoc* arbitration on its face, I have been asked to opine on what evidence would be relevant to resolve any ambiguity in Section 12(b).

48.    If Section 12(b) is found to be ambiguous as to the parties' intent to enter into an arbitration agreement, extrinsic evidence would be relevant and admissible to prove the parties' intent.  In New York, it is well-settled that when an agreement's terms are "ambiguous, indefinite or uncertain" extrinsic or parol evidence is relevant and admissible to determine their meaning.[45]  The purpose of permitting the introduction of parol evidence is to "place the court in the position of the parties when they made the contract," which "enables it to appreciate the force of the words [the parties] used in reducing it to writing."[46] Such evidence is explanatory and admissible unless the contract explicitly prohibits reference to parol and extrinsic evidence to interpret the contract.[47]

49.    Parol evidence may include evidence of preliminary negotiations and all dealings between the parties, which may be considered to "explain the meaning of particular terms

---

[44] 9 U.S.C. § 5; *CAE Ind.*, 741 F. Supp. at 392; *Neptune*, 559 F. Supp. at 532; *Schultze & Burch*, 642 F. Supp. at 1155.

[45] *Korff v. Corbett*, 794 N.Y.S.2d 374, 377 (N.Y. App. Div. 2005) ("To the extent that any of the agreement's terms may be ambiguous, indefinite or uncertain, it is well settled that extrinsic or parol evidence is admissible to determine their meaning."); N.Y. Jur. 2d Evidence & Witnesses § 583 ("Whenever the terms of a contract are susceptible of more than one interpretation, or an ambiguity arises, or the extent and object of the contract cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of making the contract. . . . The construction of the instrument is aided by the admission of parol evidence explaining ambiguities.").

[46] N.Y. Jur. 2d Evidence & Witnesses § 585.

[47] N.Y. Jur. 2d Evidence & Witnesses § 583.

used."[48]   Additionally, when contract language is ambiguous, the parties can testify as to the intent of the provisions.[49]   It also may include not only the subject matter of the contract, but also the relations of the parties to each other, and the facts and circumstances surrounding the parties when they entered into the contract.[50]   Prior course of conduct is also relevant to proving intent.[51]

50.     Evidence of industry custom or practice may also be considered to determine the parties' intent.[52]   As stated in the American Law Institute's Restatement (Second) of Contracts, "[u]nless otherwise agreed, a usage of trade in the vocation or trade in which the parties are engaged or a usage or trade of which they know or have reason to know gives meaning to or supplements or qualifies their agreement."[53]

51.     Moreover, New York law is clear that consideration of extrinsic evidence is not limited to negotiations or agreements made prior to or contemporaneous with the execution of a contract, but may also include an examination of the parties' conduct after signing of the agreement.   As the U.S. Supreme Court recognized in *Old Colony Trust Co. v. Omaha* in 1913, in a principle that has since been endorsed by numerous New York courts: "the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence."[54]   In fact, the parties' course of performance under

---

[48] *Korff*, 794 N.Y.S.2d at 377; *see also Kenneth D. Laub & Co. v. 101 Park Ave. Assocs.*, 556 N.Y.S.2d 881, 882 (N.Y. App. Div. 1990).

[49] *Carter v. Broadway 48th-49th Street Assocs.*, No. 103378/03, 2008 WL 1745143, at *7 (N.Y. Sup. Ct. Apr. 7, 2008); *Phalen v. Vineyard L.V., Inc.*, 683 N.Y.S.2d 615, 616 (N.Y. App. Div. 1998).

[50] N.Y. Jur. 2d Evidence & Witnesses § 583.

[51] *Railworks Corp.*, 788 N.Y.S.2d at 837 ("[T]he parties' course of conduct prior to their execution of the Stipulation makes clear that [respondent] intended that the dispute be settled by arbitration.").

[52] *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1049 (2d Cir. 1989).

[53] Restatement (Second) of Contracts § 222(3).

[54] *Old Colony Trust Co. v. Omaha*, 230 U.S. 100, 118, (1913).   As the Supreme Court observed, although not strictly treated as such, this rule is sometimes treated as a branch of estoppel.   In effect, by permitting consideration of subsequent conduct, courts prevent parties from asserting a meaning of a contract in litigation that is inconsistent with their

the contract has often been considered by New York courts to be the "best" and "most persuasive evidence of the agreed intention of the parties."[55]  As explained in the Restatement (Second) of Contracts, "[t]he parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning."[56]

52.    In my view, Section 12 is not ambiguous; however, were a court to determine that any party's intent was not clear from the face of the agreement, or that the term "dispute resolver" is ambiguous, the Lloyd Declaration and the exhibits attached to it provide relevant extrinsic evidence to clarify the ambiguity.  Such evidence includes the written or oral communications among the IFSA parties made prior to or contemporaneous with the execution of the IFSA, as well as drafts of the IFSA and communications regarding the drafting thereof.

53.    Admissible extrinsic evidence also extends to words and conduct after the conclusion of the IFSA.  This includes drafts of the Interim Protocol negotiated by the parties and any related communications during that negotiation process as course of conduct evidence that the parties intended for the disputes to be adjudicated by arbitrators.  This same evidence could be admitted to prove the meaning of the term "dispute resolver."  The Joint Administrators could also introduce expert evidence

---

pre-litigation conduct.  See also Coliseum Towers Assoc. v. Cnty of Nassau, 769 N.Y.S.2d 293, 296 (N.Y. App. Div. 2003) (finding plaintiff's payment of land taxes without protest for seven years to be probative of the parties' intent that plaintiff was obligated to pay land taxes); Fed. Ins. Co. v. Americas Ins. Co., 691 N.Y.S.2d 508, 512-13 (N.Y. App. Div. 1999) (viewing examination of subsequent conduct as part and parcel of judicial function to give effect to the parties' pre-contractual intentions).

[55] Fed. Ins. Co., 691 N.Y.S.2d at 512-13 (citing Webster's Red Seal Publ. v. Gilberton World-Wide Publ., 415 N.Y.S.2d 229, 230 (N.Y. App. Div. 1979), aff'd 421 N.E.2d 118. See also T.L.C. West, LLC v. Fashion Outlets of Niagara, LLC, 875 N.Y.S.2d 367, 369 (N.Y. App. Div. 2009) ("[t]he best evidence of the intent of parties to a contract is their conduct after the contract is formed") (citing Waverly Corp. v. City of New York, 851 N.Y.S.2d 176, 179 (N.Y. App. Div. 2008)).

[56] Restatement (Second) of Contracts § 202(comment g); see also N.Y. Jur. Contracts § 216 (In the determination of the meaning of an indefinite or ambiguous contract, "the practical construction put upon a contract by the parties to it, is sometimes almost conclusive as to its meaning.").

22

regarding the use of the term "dispute resolver" internationally to encompass arbitrators.[57]

54. In my opinion, the extrinsic evidence detailed in the Declaration of Kevin Lloyd and the transcripts of hearings to which he refers – including his description of the negotiations predating entry of the IFSA, representations made by various parties to various courts in connection with seeking approval of the IFSA, and the conduct of the parties' post-dating execution of the IFSA, including the various drafts of an Interim Sales Protocol which contained reference to binding arbitration by a three-person panel – confirms that the parties intended to submit any disputes regarding the distribution of the Sales Proceeds to binding arbitration.[58]

## XI. EVIDENCE REGARDING THE PARTIES' NEGOTIATIONS IS ADMISSIBLE TO DETERMINE WHETHER SUCH NEGOTIATIONS WERE CONDUCTED IN GOOD FAITH

55. As described in Section IX, above, Section 12(c) of the IFSA imposed on all parties a binding obligation to negotiate in good faith to arrive at a protocol for resolving disputes concerning the allocation of the Sales Proceeds. It appears clear that beginning soon after the IFSA was agreed, the parties did undertake negotiations towards agreement on an Interim Sales Protocol, which extended off and on for close to one year. However, neither the fact that those negotiations occurred, nor that the negotiations spanned a significant time period, is the end of the inquiry. To ascertain whether the parties in fact complied with their contractual obligations, a factfinder must necessarily look to the negotiations to ascertain whether the parties were in fact negotiating in good faith.[59]

---

[57] *See, e.g.,* Restatement (Second) of Contracts § 222(3) (evidence of industry custom admissible to determine meaning of ambiguous contractual provision).
[58] *See, e.g.,* Lloyd Decl. at ¶¶ 12-22, 40, 44, 49-52, 85. *See also* Transcript of June 29, 2009 Hearing, at 34.
[59] *See, e.g., CanWest Global Commc'ns Corp. v. Mirkaei Tikshort Ltd.,* 804 N.Y.S.2d 549, 570 (N.Y. Sup. Ct. 2005) (concluding that party had failed to meet his obligation to negotiate in good faith upon review of course and conduct of such negotiations).

1433

56.     Although the determination of whether a party met an obligation to negotiate in good faith is necessarily a highly-fact based inquiry, the obligation to negotiate in good faith has been generally described as preventing one party from "renouncing the deal, abandoning the negotiations or insisting on conditions that do not conform to the preliminary agreement."[60] A party might also breach its obligation to bargain in good faith by unreasonably insisting on a condition outside of the scope of the parties' preliminary agreement, especially where such insistence is a "thinly disguised pretext for scotching the deal . . . ."[61]

57.     As set forth in the Lloyd Declaration, although the U.S. and Canadian Debtors participated in negotiations towards an Interim Sales Protocol, and now insist their efforts were in good faith, it appears from the Lloyd Declaration that ultimately the agreement broke down when the Canadian Debtors sought to limit the information and arguments that could be put before the dispute resolvers, including by attempting to limit the ability of the EMEA Debtors to make certain arguments respecting the allocation of the Sale Proceeds.[62] Effectively, the Canadian Debtors made their agreement to participate in arbitration contingent on the EMEA Debtors' agreement to not make certain arguments in their dispute. A negotiating posture through which a party insists on objectively unreasonable conditions as a pretext for reneging on a deal altogether cannot possibly meet a standard of good faith.

## XII.   CONCLUSION

58.     For the foregoing reasons, my opinions may be summarized as follows:

---

[60] *Teachers Ins. & Annuity Assoc. of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987); *see also CanWest*, 804 N.Y.S.2d at 570 (injunctive relief appropriate where defendant breached its duty to negotiate partnership agreement in good faith by "drastically altering the terms" previously agreed by the parties).
[61] *Milex Products, Inc. v. Alra Labs., Inc.*, 603 N.E.2d 1226, 1234 (Ill. App. Ct. 1992).
[62] Lloyd Decl. at ¶ 57.

24

(A)     Under New York law, an arbitration agreement is valid and
        enforceable if it is in writing and evinces an intent of the parties to
        the agreement to submit themselves to binding arbitration.  The
        parties need not agree to the arbitration procedures; rather, New
        York law only requires an agreement to be bound.  Additionally,
        the terms "arbitration," "arbitrator," or "arbitrate" need not appear
        in the text of the agreement so long as the agreement evidences the
        intent of the parties to submit to arbitration.  Where the parties'
        intent is discernible from the plain meaning of the language of the
        contract, there is no need to look further.

(B)     Section 12(b) of the IFSA is a valid and enforceable arbitration
        agreement because it is a written agreement evidencing the intent
        of the parties to submit themselves to binding *ad hoc* arbitration
        and is consistent with public policy favoring arbitration of
        international commercial disputes.

(C)     Section 16(b) of the IFSA does not provide a court with
        jurisdiction to determine the merits of any dispute relating to the
        allocation of the Sales Proceeds because it is displaced by and
        must be interpreted consistently with the more specific arbitration
        clause contained in Section 12(b).  Section 16(b) confers on the
        court limited jurisdiction to determine the validity of the arbitration
        agreement in Section 12(b) and to enforce it, as well as to review
        the arbitration award after an arbitration tribunal renders it.  If the
        parties are unable to reach an agreement on binding procedures for
        arbitration, the FAA requires the court to appoint an arbitral
        tribunal, and the tribunal will decide the rules of the arbitration as
        well as the merits of the arbitral dispute.

(D)     Section 12(c) of the IFSA creates a binding obligation on the
        parties to negotiate in good faith towards an agreement on the
        Interim Sales Protocol referred to in the IFSA.  As noted above,
        where the parties are unable to reach such agreement, the court

25

shall, under the FAA, appoint an arbitration panel, which will then decide the rules to apply and adjudicate the merits of the dispute.

(E)     To the extent that a court determines that Section 12(b) is ambiguous as to the parties' intent to enter into an arbitration agreement, extrinsic evidence of words and actions before and after the conclusion of the IFSA is admissible to determine the parties' intent.

(F)     Evidence regarding the parties' negotiations after the IFSA was concluded is admissible to determine whether such negotiations were conducted in good faith.

59.     At the Court's request, a case book containing all of the case law and other authority referenced herein will be made available.

_____
Tai-Heng Cheng

STATE OF NEW YORK     }
                      }
COUNTY OF NEW YORK    }

Sworn to before me this
31st day of May, 2011

_____
Notary Public

MARC AARON MELZER
Notary Public, State of New York
No. 02ME6150927
Qualified in New York County
Commission Expires Dec. 20, 2014

26

1436

# EXHIBIT A

# PROFESSOR TAI-HENG CHENG
## HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, NY 10016
tcheng@hnrklaw.com; (646) 239 4054

## EMPLOYMENT

- New York Law School, Professor of Law & Co-Director, Institute for Global Law, Justice & Policy, 2006-present.

  Classes taught: international law, international commercial arbitration, investment treaty arbitration, contracts.

- Hoguet Newman Regal & Kenney, LLP, Senior Legal Advisor, 2007-present.

- Vanderbilt Law School, Visiting Associate Professor, 2010.

- City University of Hong Kong School of Law, Visiting Associate Professor, 2008.

- Sarah Lawrence College, Visiting Professor, 2006-2008.

- Simpson Thacher & Bartlett LLP, New York, Associate, 2003-2006.

- National University of Singapore School of Law, Tutor-in-Law (Adjunct Professor), 2001.

## RECENT ARBITRATION AND LITIGATION MATTERS

- Expert on arbitration agreements in an SCC arbitration.

- Expert on international law in an ICSID bilateral investment treaty arbitration.

- Amicus curiae in a $400 mn. appeal in U.S. federal court concerning Germany's liability for Prussian bonds.

- Chair of an ICDR tribunal in a franchise dispute between European and Latin American corporations (drafted the award).

- Arbitrator on a three-person ICC tribunal in an intellectual property dispute between an American and Japanese corporation.

- Consultant to the Republic of Kosovo Ministry of Foreign Affairs on international law issues.

- Consultant to the UN Transitional Administration in East Timor on their criminal procedure code.

1438

- Consultant to the Singapore Police Force on operations and international matters.

- Lead counsel for an English hedgefund in a JAMS international arbitration against a French financial institution (won $5mn. award and 90% of fees).

- Counsel for a CFO in a white collar trial in U.S. federal court.

- Counsel for a corporate executive in parallel lawsuits in New York, Atlanta, Singapore and the Cayman Islands.

- Counsel for Blackrock, Inc., in securities litigation in U.S. federal court.

- Counsel for Toys "R" Us, Inc., in securities litigation in Delaware chancery court.

- Counsel for GE and Bechtel in a $6.6 bn. international arbitration against the Republic of India.

## ARBITRATION PANELS

- Panel of Neutrals, ICDR, 2009-present.

- Panel of Neutrals, HKIAC, 2009-present.

- Panel of Neutrals, CPR, 2009-present.

## BAR ADMISSIONS

- U.S. District Court for the Western District of New York, 2009.

- U.S. Court for Appeals for the Second Circuit, 2008.

- U.S. District Court for the Eastern District of New York, 2005.

- U.S. District Court for the Southern District of New York, 2005.

- State of New York, 2004.

## EDUCATION

- J.S.D., Yale Law School, 2004.

- M.A., Oxford University, 2004.

- LL.M., Yale Law School, 2000.

- B.A. (Law), First Class Honors, Oxford University, 1999.

## LEARNED SOCIETIES, HONORS, AND AWARDS

- Elected Member, Executive Council, American Society of International Law, 2010-present.

- Co-Chair, American Society of International Law 2011 Annual Meeting.

- Elected Member, American Law Institute, 2009-present.

- Elected Member, Academic Council, Institute for Transnational Arbitration, 2008-present.

- Awards Committee, American Society of International Law, 2008-2009.

- Elected Honorary Fellow, Foreign Policy Association, 2007-present.

- Howard M. Holtzman Fellow for International Law, Yale Law School, 2000-01.

- Oxford University Scholar, Oxford University, 1997-99.

## SCHOLARSHIP

### Book Monographs
- WHEN INTERNATIONAL LAW WORKS (Oxford University Press, forthcoming 2011).

- STATE SUCCESSION AND COMMERCIAL OBLIGATIONS (BRILL, 2006).

  Cited as authoritative in <u>Mortimer Offshore Servs. Ltd. v. Fed. Rep. Germany</u>, 05 Civ. 10699 (S.D.N.Y. Apr. 9, 2008), slip op. at 2, *aff'd*, 615 F.3d 27 (2010).

  Reviewed in 2007 SING. Y.B. INT'L L., 25 WIS. J. INT'L L. 129 (2007), 30 FORD. J. INT'L L. 1288 (2007), 6 CHI. J. INT'L L. 254 (2007), 23 ARB. INT'L 511 (2007), 51 N.Y.L.S. L. REV. 580 (2007).

### Law Review Articles
- *Why New States Accept Old Obligations*, 2011 U. ILL. L. REV. 1 (2011).

- *Making International Law Without Agreeing What It Is*, 10 WASH. U. GLOBAL STUDIES L. REV. _ (forthcoming 2011).

- *Shaping an Obama Doctrine of Preemptive Force*, 82 TEMPLE L. REV. 737 (2010) (with E. Valaitis, Statistics Professsor, American University).

  Selected as a "New Voice" at the American Society of International Law 2008 Annual Meeting.

1440

- *Reasons, Reasoning and Reasonableness*, 32 SUFFOLK TRANSNATIONAL L. REV. 409 (2009) (with R. Trisotto, NYLS J.D., 2009).

- *The Universal Declaration of Human Rights at Sixty: Is it Still Right for the United States?*, 41 CORNELL J. INT'L L. 251 (2008).

- *Renegotiating the Odious Debt Doctrine*, 70 L. & CONTEMP. PROBS. 7 (2007).

  Cited as authoritative in <u>Mortimer Offshore Servs., Ltd. v. Fed. Rep. Germany</u>, 08-1783-cv, 615 F.3d 110, n. 12 (2d Cir. 2010); <u>Iraq v. Beaty & Simon</u>, 07-1090, Resp. Br. at 54 (U.S. Supreme Court, Mar. 18, 2009).

- *Precedent and Control in Investment Treaty Arbitration*, 30 FORD. J. INT'L L. 1014 (2007).

  Presented at the British Institute of International & Comparative Law (2007), republished 5:3 TRANSNAT'L DISPUTE MGMT. (May, 2008).

- *Power, Norms and International Intellectual Property Law*, 28 MICH. J. INT'L L. 109 (2006).

- *Power, Authority and International Investment Law*, 20 AM. U. INT'L L. REV. 465 (2005).

- *The Central Case Approach to Human Rights*, 13 PAC. RIM L. & POL'Y 257 (2004).

## Book Chapters, Essays & Other Publications

- 106 AM. SOC'Y INT'L L. PROC. (T. Cheng et al eds., forthcoming 2012).

- *International Arbitration, in* JUDICIAL BENCHBOOK ON INTERNATIONAL LAW (D. Amann ed., ASIL, forthcoming 2011).

- *Developing Narratives in Investment Treaty Arbitration,* 8 SANTA CLARA TRANSNAT'L L. J_ (forthcoming 2010).

- *Positivism, New Haven Jurisprudence and the Fragmentation of International Law, in* ESSAYS IN HONOR OF THOMAS WALDE _ (T Weiler ed., forthcoming 2010).

- *The Structure and Policies of International Mediation*, 5 CONTEMPORARY ISSUES IN INTERNATIONAL ARBITRATION AND MEDIATION _ (R. Rovine ed. forthcoming 2010)

- *Law on Loan: Legal Reconstruction after Armed Conflict, in* CORPORATE SOCIAL RESPONSIBILITY IN ZONES OF CONFLICT _ (forthcoming 2010).

- *The Idea of Law*, 104 PROC. AM. SOC'Y INT'L L. _ (forthcoming 2010).

- *State Succession and Commercial Obligations: Reflections on Kosovo, in* LOOKING TO THE FUTURE: ESSAYS IN HONOR OF W. MICHAEL REISMAN 675 (M. Arsanjani et al. eds.

2010).

- Preface, *in* TRANSNATIONAL DISPUTE MANAGEMENT SPECIAL EDITION: INTERNATIONAL ARBITRATION IN CHINA (T. Cheng & P. Thorp eds, 2010).

- Remarks, *"Consent and the Jurisdiction of Investment Arbitrations, in* INVESTMENT TREATY ARBITRATION AND INTERNATIONAL LAW 85 (I. Laird & T. Weiler eds., 2010).

- Expert Opinion, *Bosh Int'l v. Republic of Ukraine*, ICSID Case No. ARB/008/11 (2010).

- *Reflections on Culture Med-Arb*, 4 CONTEMPORARY ISSUES IN INTERNATIONAL ARBITRATION AND MEDIATION 421 (A Rovine ed. 2010).

- *Is Investment Treaty Arbitration Undertheorized?*, Kluwerarbitrationblog (Apr. 16, 2010).

- *A Renaissance Career in International Law, in* ASIL, *in* CAREERS IN INTERNATIONAL LAW 7 (2009-2010 ed.)

- *New Tools for an Old Quest*, 3 WORLD 3 MED. & ARB. REV. 121 (2009).

- *Some Limits in Applying Chinese Med-Arb Internationally*, 2 NYBSA N.Y. DISPUTE RESOLUTION LAW. 95 (2009) (with A. Kohtio).

- *A Policy and Empirical Appraisal of U.S. Preemptive Self-Defense*, 102 AM. SOC'Y INT'L L. PROC. 430 (2009).

- *What's Reasonable Depends on Who's Asking*, 8 BALTIC Y.B. INT'L L. 382 (2008).

- Brief Amici Curiae, *Mortimer Offshore Servs. Ltd. v. Fed. Rep. Germany*, 08-1783-cv, _ F.3d _ (2d Cir. 2010), 2010 WL 2891069.

- *Commentary on "Who is Sovereign in Sovereign Debt?,"* in Opinio Juris blog (June 10, 2008)

- *The Succession of Kosovo and Minimum Public Order*, in Opinio Juris blog (Feb. 21, 2008).

- *Precedent and Control in Investment Treaty Arbitration, in* INVESTMENT TREATY LAW: CURRENT ISSUES III (A. Bjorklund *et al.* eds., BIICL, 2009)*, revising* 30 FORD. J INT'L L. 1014 (2007).

- *Reframing Iran: A View from the Field* (2007) (with P. Huntington and G. Billard)

- *HIV Surveillance: Individual Rights Versus the Common Good*, 1 YALE J. HUM. RTS. 17 (2001).

- LAW MANUAL FOR FRONTLINE POLICING (Singapore Police Force, 2002).

## INVITED PRESENTATIONS

- Governance Trends in Singapore, Pennsylvania University, 2011.

- Why New States Accept Old Obligations, Michigan State University, 2011.

- Why New States Accept Old Obligations, Florida State University, 2011.

- State Succession After Kosovo, International Civilian Office, Kosovo, 2010.

- Negotiating Bilateral Investment Treaties, Ministry of Foreign Affairs, Kosovo, 2010.

- Arbitration in Asia, ICC San Francisco Meeting, 2010.

- Narratives in Investment Treaty Arbitration, Santa Clara Law School, 2010.

- Making International Law Without Agreeing What It Is, Maryland Law School, 2010.

- Emerging Trends in ADR, Vanderbilt Law School, 2010.

- Why New States Accept Old Obligations, Vanderbilt Law School, 2010.

- Arbitration in Singapore, CPR Annual Meeting, 2010.

- Confidentiality and Privilege in Asia, ABA/NYU Law School, 2010.

- The Fragmentation of International Law, Conference in Honor of Thomas Walde, Scotland, 2009.

- The Future of FTAs and BITS, New York State Bar Association Singapore Meeting, 2009.

- Developments in Med-Arb, Fordham Law School, 2009.

- International Law as Paradigm, Vanderbilt Law School, 2009.

- The Idea of Law, American Society of International Law Annual Meeting, 2009.

- The Global Regulation of Intellectual Property, Hong Kong University School of Law, 2009.

- International Law as Paradigm, Temple Law School, 2009.

- Public Interests and Arbitration's Efficiency, Institute for Transnational Arbitration Academic Council Retreat, 2009.

1443

- The Use of Force by the United States: A Policy & Empirical Appraisal, American Society of International Law Annual Meeting, 2008.

- The Law and Practice of Secession: Kosovo and the International Court of Justice, American Foreign Law Association, 2008.

- State Succession and Recognition, International Civilian Office, Kosovo, 2008.

- Secession, Succession, and Recognition, University of Pristina, Kosovo, 2008.

- Pakistan: A Different Kind of Partner, New York Law School C.V. Starr Presentation, 2008.

- Pakistan: A Different Kind of Partner, U.S. Trust Corporation, 2008.

- Emerging Trends in Investment Treaty Arbitration, Michigan Law School, 2008.

- Would Wider Authorization to Use Force Make Us Safer: Lessons from Iran, Pakistan and 60 Years of U.S. Practice, City University of Hong Kong School of Law, 2008.

- Would Wider Authorization to Use Force Make the United States Safer, Junior International Law Scholars Annual Meeting, 2008.

- New Developments in Med-Arb, Southeast Association of Law Schools Annual Meeting, 2008.

- Med-Arb in China, American Bar Association, ADR Section, 2008.

- Reasons and Reasoning in Investment Treaty Arbitration, Suffolk Law School, 2008.

- The Universal Declaration of Human Rights at Sixty, Sarah Lawrence College, 2008.

- The Reasons Requirement in Investor State Arbitration, Association of the Bar of the City of New York.

- Corruption in Investment Treaty Arbitration, Yale Law School, 2007.

- Precedent and Control in Investment Treaty Arbitration, British Institute of International and Comparative Law, 2007.

- Attracting Foreign Direct Investment in Post-Conflict Zones, Cardozo School of Law, 2007.

- Are There Lawful Exceptions to Investment Treaty Obligations, International Bar Association International Law Weekend, 2007.

- Power, Norms and International Intellectual Property Law, Humbolt University, 2007.

Tai-Heng Cheng May 31, 2011.

7

- The Universal Declaration at Sixty, New York Law School, 2007.

- Finding Your Voice as an Emerging Legal Scholar, Yale Law School, 2007.

- Iran: What Next?, United Nations Association of New York, 2007.

- Reframing Iran, U.S. Trust Corporation, New York, 2007.

- Iran: What Next?, New York Law School, 2007.

- The UN's Strategy in Iran and Middle East, UN Department of Political Affairs, 2007.

- Dialogues: Islamic World-U.S.-The West, Singapore Mission to the UN, 2007.

- Renegotiating the Doctrine of Odious Debt, Duke Law School, 2007.

- International Investment Law During and After Armed Conflict, UNCTAD Conference on Corporate Responsibility in Conflict Zones, 2007.

- Pursuing an Advanced Law Degree, Yale Law School, 2006.

- Is the Fair and Equitable Treatment Standard Fair and Equitable?, International Bar Association International Law Weekend, 2006.

- Precedent in Investment Treaty Arbitration, USCIB Young Arbitrators Form, 2006.

- Intellectual Property, International Law and Power, Southeast Association of Law Schools Annual Meeting, 2006.

- State Succession and Iraq, Duke Law School, 2006.

- State Succession and Commercial Obligations, William & Mary School of Law, 2005.

- Current Issues in U.S.-Turkey Relations, U.S. House of Representatives, Committee on International Relations, 2005.

- Seoul Train and North Korean Refugees, Columbia University School of International and Public Affairs, 2005.

- Harmonizing International IP Law: Why Processes Matter, Seton Hall School of Law, 2005.

- Talking Turkey: A Private Perspective on Public Diplomacy, Turkey Consulate, New York, 2005.

- Report on Turkey, United Nations Committee, Association of the Bar of the City of New York, 2005.

- Human Rights in Singapore: Flying Below the Radar, Yale Law School, 2003.

- Enforcing Private Morality: A Cautionary Note, Yale Law School, 2000.

- Introduction to International Law, Lowenstein International Human Rights Clinic, Yale Law School, 1999.

## MEDIA APPERANCES

- *Somali Pirates,* Al-Jeezera English News, February 15, 2011.

- *Palestine Turns to UN in Battle for Statehood,* Al-Jeezera English News, Dec. 10, 2010.

- *Dominican Republic Settles Triple Proceedings*, WORLD MEDIATION AND ARBITRATION REVIEW, Sept. 21, 2009.

- *International Law Forum Addresses Foreign Direct Investment in High-Risk Developing Countries*, 2008:1 CARDOZO LIFE 9.

- *BIICL Forum Draws a Crowd*, GLOBAL ARBITRATION REVIEW, Sept. 14, 2007.

- *Australia-EEUU: Cuestionado Canje de Refugiados*, GLOBAL INFORMATION NETWORK NOTICIAS EN ESPAÑOL, Apr. 23, 2007.

- *Inside the Glass House*, SRI LANKA SUNDAY TIMES, Apr. 22, 2007.

- *U.S.-Aussie Refugee Swap Comes Under Fire*, INTER PRESS NEWS SERVICE AGENCY, Apr. 19, 2007.

- *Next Stop: Iran*, NEW YORK LAW JOURNAL, Sept. 22, 2006.

- *Next Stop: Iran*, NYLAWYER.COM, Sept. 22, 2006.

- *For These Law Students, the Next Stop is Tehran*, THE NATIONAL LAW JOURNAL, Sept. 11, 2006.

- *Diplomacy Newsline*, TURKISH DAILY NEWS, Jan. 20, 2005.

- *Deals and Suits, KKR/Vornado/Toys "R" Us,* 12:7 CORPORATE COUNSEL, July 2005.

- *Big Deals, KKR/Vornado/Toys "R" Us*, 27:6 AMERICAN LAWYER, June 2005.

- *New Deals: Lawyers on Major Transactions*, 231 NEW YORK LAW JOURNAL, Mar. 2005.

- *Criminal Justice in Singapore: Not Just Black and White*, THE STRAITS TIMES, Nov. 25, 2005.

**LANGUAGES**

- English and Mandarin.

**CITIZENSHIP**

- Singapore citizen; United States permanent resident.

1447

**EXHIBIT B**

# The Nortel Mediation

Opening Remarks
of
Chief Justice Warren K. Winkler
Metropolitan Hotel, Toronto
April 24, 2012

Good morning, and thank you for attending this initial Nortel Mediation session.

Following my appointment as mediator by Judge Gross of the U.S. Bankruptcy Court and Justice Morawetz of the Ontario Superior Court of Justice, those courts ordered that this mediation be stood down until Judge Gross released his decision on an important matter related to certain claims being advanced against the U.S. Estate.

1

Judge Gross released his decision on March 20, 2012.  Shortly afterwards, I scheduled this meeting so that we could begin the mediation process.

The Nortel Insolvency is one of the most complex trans-national legal proceedings in history.  It directly involves companies resident in almost twenty countries, and appears to involve participants from every continent except Antarctica. Amongst those affected are pensioners, employees, disabled former employees, bondholders, trade creditors and governments.

There are existing proceedings before the courts of the United Kingdom, the United States and Canada.  That said, no single

2

court has ultimate authority over the subject matter of this mediation.

At the heart of the Nortel Insolvency is the distribution of the assets of the Nortel companies.  The sales of Nortel's global business lines and residual intellectual property have produced over $7.0 billion (USD) in cash now held in escrow awaiting distribution.   Funds available for distribution to Nortel's creditors total almost $9 billion (USD).

This is a significant amount of money.  However, the claims made against the Nortel companies substantially exceed this number.  To further complicate matters, there are unresolved

3

Case 09-10138-KG   Doc 10442   Filed 05/01/13   Page 43 of 15

issues as to priorities of claims, validity of claims and the allocation of funds to various jurisdictions.

As you may have gathered from the legal proceedings to date, these circumstances give rise to many difficult legal issues, not the least of which is the determination of which law applies and whose courts have jurisdiction to apply that law.  In legal terms, this is what is known as a "conflict of laws" issue.  However, the complexity of this case would make even a conflict of laws professor cringe!

As if this were not enough to attempt to work through to bring about a timely resolution to the Nortel Insolvency, the fact that there may be more than one avenue of appeal available to the

4

parties through the courts of numerous countries adds yet another layer of complexity. This, of course, raises the prospect of additional delays and the potential for conflicting decisions. There is a point here worth repeating. There is no single jurisdiction with the ultimate, final authority in the matter; no final court of appeal or supreme court with the power to issue a decision that conclusively determines the outcome of litigation.

This is all by way of saying that I see this as being a situation in which productive and co-operative mediation is essential. Simply put, there does not appear to be any realistic "litigation option" to resolve this dispute. The circumstances cry out for a mediated resolution. Most importantly, mediation has the potential to cut through the myriad of legal complications

5

underpinning the positions taken by each of the parties and enable them to participate in crafting a solution.

As I said, I do not see a realistic "litigation option" in this case. What I mean is that the alternative to a mediated outcome is a lengthy litigation process canvassing the issues I have already discussed.  Even if judgments are rendered, it would be entirely possible that those judgments would have no legal effect beyond the jurisdiction of the courts rendering them. It will take years to get through this process, with an uncertain outcome, and significant amounts of the assets now available will have been depleted as a result.  This would be a catastrophic outcome for some, and unsatisfactory for most, of those affected by this case.

6

Justice Morawetz and Judge Gross have ordered that this mediation take place to attempt to avert protracted litigation. I believe their decisions speak for themselves regarding the desirability of mediation over litigation. The United States Court of Appeals for the Third Circuit (one of the courts in line to hear an appeal from litigation in this matter in the United States) has also indicated that a mediated solution is the preferred outcome. As Judge Sloviter wrote late last year,

> We are concerned that the attorneys representing the respective sparring parties may be focusing on some of the technical differences governing bankruptcy in the various jurisdictions without considering that there are real live individuals who will ultimately be affected by the decisions being made in the courtrooms. It appears that the largest claimants are pension funds in the U.K. and the United States, representing pensioners who are undoubtedly dependent, or who will become dependent, on their pensions. They are the Pawns in the moves being made by the Knights and the Rooks.

7

Mediation, or continuation of whatever mediation is ongoing, by the parties in good faith is needed to resolve the differences.  No party will benefit if the parties continue to clash over every statement and over every step in the process.

This will result in wasteful depletion of the available assets from which each seeks a portion.  There appears to be one constructive solution – the protocol agreed upon by appointing Justice Winkler to resolve the allocation issues.

I agree with Judge Sloviter that mediation is the only realistic course in which this matter may be advanced.

I am not ignoring the fact that mediation has been attempted without success twice before by a very able mediator and that, despite his best efforts, the parties were not able to come to an agreement.

8

In my view, there is no point in repeating steps that have not yielded a resolution. For example, it is obvious from the prior mediation attempts that the complexities of the Nortel proceedings require something different than putting all parties together in the same room, the same hotel or, for that matter, the same city for concentrated and extended mediation sessions. That process has not worked and it is not manageable. It will not be the path that I will follow.

I intend to take a fresh approach to this mediation. In the coming weeks, I will be meeting with the parties separately in order to explore possible avenues toward a global resolution. This process may evolve into broader meetings of multiple parties if I begin to see the alignment of interests and the emergence of a foundation for possible agreement.

9

While this mediation is not a public process, it is a matter of real and substantial personal interest for thousands of individuals around the world.  They deserve assurances that genuine efforts to resolve these issues are underway.

Accordingly, updates of a general nature will be posted on the Nortel mediation website.  However, no confidential information will be posted on the website.

In that respect, the usual conditions will apply to this mediation. It will be a confidential, without prejudice process.  Nothing disclosed to me or anyone else in the course of this mediation can be used in any other process.  I will not communicate a

10

party's position to any other party unless I am expressly authorized to do so.

Some parties have expressed concerns regarding the confidentiality and distribution of the mediation briefs which have been provided to me and my counsel.  As I have previously indicated, in recognition of these concerns, I will not distribute briefs.  Should the parties wish to exchange briefs amongst themselves, they may do so on their own terms.

In any event, there will be no rebuttal or responding briefs.  I must emphasize above all that this is not an adversarial process. Mediation is primarily concerned with crafting a solution which addresses the interests of all parties.  Positional bargaining and

11

adversarial mindsets do nothing to advance a mediated settlement.

I will spend today by meeting with the parties privately. These meetings will allow me to determine the next steps that need to be taken in this process. Rest assured that there is no significance to the order of the meetings. The schedule has been arranged on the basis of practicality and efficiency, allowing for travel schedules and several requests for joint meetings.

This room will remain available for your use for the remainder of the day, and I will provide an update as to the advancement of this process in the next several days.

12

I look forward to working with you in the hopes of reaching a satisfactory resolution.

Thank you.

13

# EXHIBIT C

**CITATION:** Nortel Networks Corporation, 2013 ONSC 1470
**COURT FILE NO.:** 09-CL-7950
**DATE:** 2013/03/08

**SUPERIOR COURT OF JUSTICE – ONTARIO**
(COMMERCIAL LIST)

| | |
|---|---|
| **RE:** | IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED |
| | AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS COROPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION |
| | APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED |
| **BEFORE:** | MORAWETZ J. |
| **COUNSEL:** | *Derrick Tay and Jennifer Stam*, for Nortel Neworks Corporation |
| | *Benjamin Zarnett, Fred. Myers* and *Jay Carfagnini* for Ernst & Young Inc., Monitor |
| | *Mark Zigler, Ken Rosenberg, Arthur Jacques, Barry Wadsworth* and *Elder C. Marques* for Canadian Creditors' Committee |
| | *Matthew P. Gottlieb, Robin B. Schwill* and *James Reinihan* for Nortel Networks UK Limited (in Administration) |
| | *David Ward* for PPF/Trustee |
| | *Adam Hirsh* for Former Directors & Officers of Nortel Networks Corporation and Nortel Networks Limited |
| | *Andrew Gray* and *Scott Bomhof* for Nortel Networks Inc. and other U.S. Debtors |
| | *John Salmas* for Wilmington Trust, National Association |

- 2 -

*Sheryl Seigel* for the Bank of New York Mellon

*Richard Swan* and *Gavin Finlayson* for Informal Committee of Noteholders

*Shayne Kukulowicz, Ryan Jacobs* and *Mike Wunder* for Unsecured Creditors' Committee

*Edmond Lamek* for Law Debenture Trust Company of New York

**HEARD:**     March 7, 2013

**DECISION:**     March 8, 2013

## E N D O R S E M E N T

[1]     For reasons to follow, the motion of Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Canadian Debtors") for an order approving an Allocation Protocol, substantially in the form of Schedule "A" to the motion originally returnable June 7, 2011 is granted, subject to the following modifications:

> (i)  the Allocation Protocol is to be based on the protocol presented on the original return date, namely June 7, 2011, and is not to be based on the protocol presented during argument on March 7, 2013;

> (ii) the list of "core parties" referenced in paragraph (o)(iii) of the Motion Record is to be expanded. Representations were received from numerous indenture trustees on March 7, 2013. These parties are to be included as "core parties"; and

> (iii) the Monitor is directed to provide the court with a revised list of proposed "core parties" for its consideration, balancing interests of natural justice as well as the objective to resolve outstanding issues in the most expeditious and least expensive manner possible.

[2]     The Monitor is also directed to coordinate input from the parties with respect to a litigation schedule. Directions in respect of the litigation schedule will be addressed in the full reasons for this decision.

[3]     The cross motion of the Joint Administrators of Nortel Networks UK Limited, originally returnable June 7, 2011 requesting an order compelling and directing the parties to the Interim Funding and Settlement Agreement dated June 9, 2009 (the "IFSA") to engage in arbitration

- 3 -

regarding all disputes concerning the allocation of Sales Proceeds (as defined in the IFSA), is dismissed.

[4]    The appeal period in respect of this endorsement will commence on the date when full reasons are released, which date will coincide with the release of reasons of Chief Judge Kevin Gross of the United States Bankruptcy Court for the District of Delaware.

Morawetz, J.

**DATE:**         March 8, 2013

**EXHIBIT D**

YCST01:11138091.1

068476.1001

**CITATION:** Nortel Networks Corporation (Re), 2013 ONSC 1757
**COURT FILE NO.:** 09-CL-7950
**DATE:** 20130403

**SUPERIOR COURT OF JUSTICE – ONTARIO**
**(COMMERCIAL LIST)**

| | |
|---|---|
| **RE:** | IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED |
| | AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION, Applicants |
| **BEFORE:** | MORAWETZ J. |
| **COUNSEL:** | D. Tay and J. Stam, for Nortel Networks Corporation |
| | B. Zarnett, J. Carfagnini and F. Myers, for Ernst & Young Inc., the Monitor |
| | M. Zigler, K. Rosenberg, A. Jacques, B. Wadsworth and E. Marques, for the Canadian Creditors Committee |
| | M. P. Gottlieb, J. Renihan and R. B. Schwill, for Nortel Networks UK Limited (in Administration) |
| | D. Ward, for the UK Pension Trustees/PPF |
| | A. Hirsh, for the Former Directors and Officers of Nortel Networks Corporation and Nortel Networks Limited |
| | A. Gray and S. Bomhof, for Nortel Networks Inc. and other U.S. Debtors |
| | J. Salmas, for Wilmington Trust, National Association |
| | S. Seigel, for the Bank of New York Mellon |
| | R. Swan and G. Finlayson, for the Informal Committee of Noteholders |
| | S. Kukulowicz, R. Jacobs, and M. Wunder, for the Unsecured Creditors' Committee |
| | E. Lamek, for the Law Debenture Trust Company of New York |
| **HEARD:** | March 7, 2013 |
| **ENDORSED:** | March 8, 2013 |
| **REASONS:** | April 3, 2013 |

- Page 2 -

# ENDORSEMENT

Background

[1]     On June 7, 2011, Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Canadian Debtors") brought a motion requesting approval of a proposed protocol (the "Allocation Protocol") for the allocation of proceeds of the sale of their assets, the assets of Nortel Networks Inc. and certain of its U.S. affiliates including Nortel Networks (CALA) Inc. (collectively, the "U.S. Debtors"), and the assets of Nortel Networks U.K. Limited and certain of its affiliates located in Europe, the Middle East and Africa (collectively, the "EMEA Debtors").

[2]     An endorsement in respect of this motion was released on June 17, 2011 (the "June 17 Endorsement").  It is attached as Schedule "A", and is incorporated by reference into this endorsement.

[3]     A further endorsement was released on June 29, 2011 (the "June 29 Endorsement").  It is attached as Schedule "B", and is incorporated by reference into this endorsement. While the mediation referenced in the June 17 Endorsement and June 29 Endorsement took place, it failed to be worthwhile and was consequently terminated by declaration of the mediator.

[4]     A further endorsement was released on March 8, 2013 (the "March 8 Endorsement").  It is attached as Schedule "C", and is incorporated by reference into this endorsement. The March 8 Endorsement approved the Allocation Protocol, substantially in the form of Schedule "A" to the motion originally returnable June 7, 2011, with reasons to follow.  These are the reasons.

[5]     The parties' inability to resolve their differences is unfortunate, as approximately $9 billion, raised from various asset sales and other realizations, awaits distribution to Nortel's global creditors, and the significant time lapse is exacerbating the negative effects of the previously identified public-interest issues (see the June 29 Endorsement). The only positive development for stakeholders since June 2011 was the sale of Nortel's patent portfolio for proceeds exceeding $4 billion (substantially surpassing the $900 million estimated amount).

[6]     The sad reality for all creditors is that four years have passed from when Nortel filed for *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 ("CCAA") protection.

Interim Funding and Settlement Agreement

[7]     In June 2009, the Canadian Debtors, certain U.S. Debtors, and certain EMEA Debtors (collectively, the "Debtors") entered into an Interim Funding and Settlement Agreement ("IFSA"), which provided for cooperation in the global sale of Nortel's business units.

[8]     Under the IFSA, these parties agreed to "negotiate in good faith and attempt to reach agreement on a timely basis" on a protocol (the "Protocol") for resolving disputes concerning the allocation of sale proceeds ("Sale Proceeds") from sale transactions. Importantly, for the purpose of determining this motion, the parties agreed, to the "fullest extent permitted by applicable law", that any "claim, action or proceeding" seeking "any relief whatsoever to the extent relating to the matters agreed in [IFSA]" must be commenced in the U.S. Court and the Canadian Court, in a

Case 09-10138-MFW   Doc 10412-4   Filed 05/02/13   Page 439 of 515
Case 09-10138-KG   Doc 10412-4   Filed 05/03/13   Page 439 of 515

- Page 3 -

joint hearing of both courts under the cross-border protocol ("Cross-Border Protocol"), if such claim, action or proceeding would affect the Canadian Debtors and the U.S. Debtors or the EMEA Debtors.

[9]     Since the parties entered into the IFSA, they concluded several sales of global Nortel businesses and, in connection with these sales, they entered into escrow agreements ("Escrow Agreements"). These Escrow Agreements provided for the deposit of Sale Proceeds into escrow and the conditional distribution of the proceeds.

[10]     Significantly, under each Escrow Agreement, the parties irrevocably and unconditionally submitted to the exclusive jurisdiction of the U.S. Court and the Canadian Court, and agreed to be bound by any judgment arising "under or out of in respect of or in connection with" the Escrow Agreements.

The Protocol/Allocation Protocol

[11]     Failing to come to an agreement on a Protocol, after one-year of talks, prompted a suspension of negotiation between the parties.  The parties, according to the Canadian Debtors, specifically could not agree on the scope of the dispute to be determined under a Protocol and the dispute resolution process (for example, deciding whether the resolution should take the form of an arbitral award).

[12]     The parties subsequently attempted to reach a consensual resolution on these issues through mediation; however, mediation failed twice.

[13]     The U.S. Debtors and the Official Committee of Unsecured Creditors of the U.S. Debtors (the "Committee") subsequently filed this joint motion in the U.S. Court and the Canadian Court seeking orders approving the Allocation Protocol. The Canadian Debtors concurrently filed a motion seeking approval of the proposed Allocation Protocol, which they developed in conjunction with Ernst & Young Inc. (the "Monitor"), the U.S. Debtors, the Committee and others.

[14]     The Allocation Protocol proposed the following:

(a) The Canadian Court and the U.S. Court would establish binding procedures, including discovery, for determining the allocation of the Sale Proceeds of the global sales to the Debtors' estates;

(b) Creditor claims, including but not limited to intercompany claims, shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any intercompany claim is made;

(c) The relevant Nortel selling entities (including the Debtors), the Committee, the Bondholder Group, the Monitor, the Joint Administrators (defined below) and the Ad Hoc Committee of Major Creditors Having Claims Only Against the Canadian Debtors would be "core parties" in the Allocation Protocol hearings, with full rights of participation.  Any other party in interest could seek to establish itself as a core party;

(d) The U.S. Debtors intend to file promptly motions with the U.S. Court to dismiss the EMEA Debtors' claims against the U.S. Debtors ("EMEA U.S. Claims").   The Canadian Debtors may file motions with the Canadian Court to dismiss the EMEA Debtors' claims against the Canadian Debtors ("EMEA Canadian Claims"); and

(e) The Canadian and U.S. Courts will hold, simultaneously, (i) a joint hearing regarding allocation of global proceeds and (ii) a hearing into unresolved EMEA Canadian Claims and EMEA U.S. Claims, provided that the Courts, in their discretion, may sit separately to hear evidence or argument that is relevant to only the Canadian or U.S. Debtors, respectively.  Each Court would then issue its respective decisions.

<u>Party Submissions</u>

[15]   The parties disagree on the following fundamental issues: whether an agreement to arbitrate was reached (and, correspondingly, whether the Canadian Court and U.S. Court should compel arbitration), whether the Canadian Court and U.S. Court have jurisdiction to approve the Allocation Protocol, and whether the parties negotiated the Protocol in good faith.

*Submissions of the Canadian Debtors and the Monitor*

[16]   The Monitor's submissions essentially corroborate, or expand on, the following submissions of the Canadian Debtors.

[17]   Because the parties were unable to successfully negotiate a Protocol, the Canadian Debtors requests that the Canadian Court exercise its discretionary power to determine allocation issues and accordingly order the parties to direct payments from the escrow funds. Pursuant to section 5 of the IFSA, Sale Proceeds of each significant global transaction may only be distributed if instructed jointly by the depositors and estate fiduciaries (very unlikely at this point) or where the parties have entered into a Protocol (as previously mentioned, the parties could not come to an agreement); however, the distribution agent is able to distribute the proceeds if there is an "any order, judgment or decree" made or entered by any court "affecting the property deposited under th[e] Agreement".

[18]   The Canadian Debtors argue that the court lacks requisite authority to compel the parties to arbitrate their disputes because there has been no agreement to arbitrate. The parties merely agreed, pursuant to section 12(c) of the IFSA, to "negotiate in good faith and <u>attempt</u> to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions". Further, section 12(b) of the IFSA does not constitute an agreement to arbitrate because it has none of the features typically found in an enforceable commercial arbitration agreement, does not provide any methodology for an arbitration and does not reference the word "arbitration". It reads as follows:

> 12(b) In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all of the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol (as defined below) applicable to the Sale Proceeds, and subject in each case to payment of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

[19]    The Canadian Debtors further argue that the parties submitted irrevocably and unconditionally to the exclusive jurisdiction of the Canadian Court and U.S. Court. For example, under their many Escrow Agreements, the parties "irrevocably submit[ed] to and accept[ed] for itself and its properties, generally and unconditionally to the exclusive jurisdiction of … the U.S. Bankruptcy Court for the District of Delaware and the Ontario Superior Court of Justice" and agreed to be bound by any judgment "arising under or out of in respect of or in connection with" the Escrow Agreements. In addition, the parties submitted all legal proceedings seeking "any relief whatsoever" to the extent "relating to" the matters agreed in the IFSA to the exclusive joint jurisdiction of the Canadian Court and U.S. Court, pursuant to section 16(b) of the IFSA, as follows:

> 16(b) To the fullest extent permitted by applicable law, each Party…(ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters agreed in this Agreement must be commenced in … a joint hearing of both the Canadian and US Courts conducted under the Cross-Border Protocol if such claim, action or proceeding would affect the Canadian Debtors and the US Debtors or the EMEA Debtors …

[20]    Finally, the Canadian Debtors claim that there is nothing to substantiate allegations that any party acted in bad faith. An agreement to negotiate in good faith, and attempt to reach agreement on a Protocol, does not require any party to ultimately acquiesce to an agreement.

*Submissions of the Joint Administrators of Nortel Networks U.K. Limited*

[21]    The Joint Administrators of Nortel Networks U.K. Limited (the "Joint Administrators"), acting as the court-appointed administrators and authorized foreign representatives for the EMEA Debtors, makes four submissions for dismissing this motion.

[22]    First, section 12(b) of the IFSA (articulated above) constitutes an enforceable arbitration clause to arbitrate the allocation of Sale Proceeds because it is a written agreement evidencing the intention of the parties to submit to binding *ad hoc* arbitration.  In exchange for the arbitration provision, which was designed to provide protection to each of the many worldwide Nortel entities by ensuring that they would have input into the Protocol and the appointment of the dispute resolvers, the parties agreed to give up significant rights in businesses and assets to enable the sale of Nortel's global assets to be completed without delay.

[23]    While the parties' agreement to arbitrate is clear on the face of the IFSA, any possible ambiguity is resolved by reviewing the negotiating history, surrounding circumstances, various courts understanding of how the allocation was to be determined, public statements and positions taken in negotiating a Protocol.

[24]    Second, neither the Canadian Court nor the U.S. Court has the jurisdiction to determine how the proceeds of the sale of the global Nortel assets and businesses should be divided among the estates of the various Nortel Debtors around the world. It is neither proper nor feasible for

Case 09-10138-MFW   Doc 10442-4   Filed 05/02/13   Page 442 of 515
Case 09-10138-MFW   Doc 10442-4   Filed 05/02/13   Page 442 of 515

- Page 6 -

courts of two independent nations to reach, in effect, a joint decision for the following three reasons:

- such a process violates the Cross-Border Protocol;

- the Ontario Court does not have jurisdiction to allocate Sale Proceeds that were outside the U.S. and Canada by entities outside the U.S. and Canada; and

- there are practical impediments to the Courts proceeding on the basis of a joint hearing regarding the Sale Proceeds allocation.

[25]    Third, and in the alternative, the Ontario Court has jurisdiction to order the Canadian Debtors to submit to arbitration under a panel of arbitrators. The proper role of the courts in their supervisory function in relation to the U.S. Debtors and Canadian Debtors is to require that the parties appoint an arbitration panel possessing the power to set a procedure for such arbitration.

[26]    Fourth, the parties to the IFSA made an enforceable promise to negotiate a Protocol for the arbitration procedures in good faith; counsel submits that there has been a *bona fide* failure in those negotiations.

[27]    In the Joint Administrators' supplementary submissions, counsel highlights practical problems invariably arising from the U.S. Court and Canadian Court trying to jointly address the division of assets among approximately 40 international entities. Counsel submits that it is unlikely that both courts independently will identically allocate the assets, resulting in conflicting decisions and no process for determining how to move forward. Counsel also anticipates that the inevitable appeal process is not governed by a uniform set of procedural or legal rules. The result would not only be years of litigation but potentially also two incompatible judgments, neither of which would be enforceable.

<u>Analysis and Conclusion</u>

[28]    I will assess the merits of the arguments made by all parties on the fundamental issues of divergence, in turn, before rendering my determination.

*Agreement to Arbitrate*

[29]    A common theme permeating the Joint Administrators' arguments is that the parties agreed to arbitrate. As I disagree with this underlying premise, I find many of their arguments to be inherently flawed.

[30]    Simply put, the parties agreed to enter into negotiations to agree on a Protocol; the best position of the Joint Administrators is an agreement to agree, which is unenforceable. I do not find the IFSA, or any of the documents, to be ambiguous in this regard.

[31]    A detailed review of the wording used in the Joint Administrators' argument is telling. The parties struck an <u>agreement</u> embodied in the IFSA; the parties would give up their…ownership rights in the assets to be sold in return for an <u>agreement</u> that, failing an agreement by the parties, the allocation of the sale proceeds would be decided in an arbitral form

that did not prejudice any of the parties by forcing any one of them to submit to the jurisdiction of a foreign court.

[32]   It could very well be that, from their standpoint, the asset sales were predicated on the allocation being decided by way of arbitration. However, in the IFSA, I am unable to find that the parties actually entered into an agreement to arbitrate.

[33]   Contrary to the Joint Administrators view that section 12(b) of the IFSA constitutes an enforceable arbitration clause, a plain and common-sense reading of this section leads to the conclusion that, if the objective of the provision was to create a mechanism for the distribution from the escrow account, the parties failed to achieve such objective. More particularly, section 12(b)(i) has not been met as there has been no agreement of all of the selling debtors; section 12(b)(ii) is irrelevant or inapplicable as the parties have failed to reach agreement on the terms of a Protocol.

*Court's Jurisdiction*

[34]   Conforming to the views espoused by the Canadian Debtors and the Monitor, I am satisfied that this court has discretionary authority under the CCAA to approve the Allocation Protocol. Considering, and potentially approving, the Allocation Protocol is consistent with the CCAA objectives of promoting efficiency and fairness by avoiding a multiplicity of inconsistent proceedings: *Re Muscletech Research and Development Inc.* (2006), 19 C.B.R. (5th) 54 (Ont. S.C.J.). This court's authority extends to the subject matter and the persons at issue here and this court has the authority to make the order sought approving the Allocation Protocol.

[35]   It is my view that all parties have irrevocably and unconditionally submitted to the jurisdiction of the Canadian Court and the U.S. Court.  This is established as a result of the jurisdiction clause in each of the Escrow Agreements, the filing of claims by the EMEA Debtors and section 16 of the IFSA.  In this respect, I accept the arguments put forth by the Canadian Debtors.

[36]   No compelling argument accompanied the Joint Administrators' assertion that this court has jurisdiction to order the Canadian Debtors to submit to arbitration under a panel of arbitrators.  While there may be a presumption in favour of international arbitration, it presupposes that the parties have agreed to arbitrate (which is not the case in the present circumstances).

[37]   The objective of these proceedings must be, at this time, to ensure that the outcome is something that will be final and binding on all parties.  This can be accomplished, in my view, by a joint hearing of the matter with the Canadian Court and the U.S. Court.

[38]   I acknowledge the procedural difficulties identified by the Joint Administrators in their supplemental submissions, and I do not underestimate the challenges that lie ahead. However, all parties embraced joint or parallel hearings of the U.S. Court and the Canadian Court to bring forth a number of matters, most notably applications for approval of sales process and for approval of sales. Further, despite the different procedures in the U.S. Court and the Canadian Court, both courts have worked effectively with the result that billions of dollars are now available for distribution to the stakeholders.  I maintain confidence that the U.S. Court and the

Canadian Court will ensure that matters going forward are similarly dealt with in a fair and equitable manner.

[39]    Raising potential procedural issues is not sufficient to dismiss the motion of the Canadian Debtors.  Challenges of procedure will be addressed during the proceedings in the same way as procedural issues are addressed in numerous other proceedings that are brought before the court.

*Good Faith*

[40]    With respect to the Protocol negotiations, there is no shortage of conflicting viewpoints. Nevertheless, there is an overall lack of evidence either on the record, or in the parties' oral submissions, demonstrating that any party failed to negotiate the Protocol in good faith. To the contrary, there is evidence that all parties made efforts to come to a mutually beneficial agreement; as pointed out by the Canadian Debtors, failure to come to such an agreement does not necessarily evidence a lack of good faith in negotiations.

*Order*

[41]    Amendments must be made to the Allocation Protocol before it is approved, as mentioned in the March 8 Endorsement. I have specifically rejected the suggestion that there should be specified restrictions on "core parties" in the Allocation Protocol hearing; rather, I determined that certain indenture trustees should also be "core parties", and I invited suggestions as to whether there would be other "potential core parties".

[42]    I note that the U.S. Debtors filed motions with the U.S. Court to dismiss EMEA U.S. Claims, and a decision with respect to this issue has been rendered by Chief Judge Kevin Gross. The U.S. Debtors put forward an amended version of the Allocation Protocol at the March 7, 2013 hearing.  Given that substantial argument was based on the Allocation Protocol as originally presented, it is not appropriate, in my view, to consider amendments that were brought forth at the hearing which was not intended to receive new positions but rather to provide a summary of the positions previously brought forward.  The appropriate version of the Allocation Protocol to consider is the one that was previously brought before the court on June 7, 2011.

[43]    In the result, I grant the Canadian Debtors' motion and approve an amended Allocation Protocol, which incorporates the aforementioned amendments while remaining substantially in the form of Schedule "A" to the motion originally returnable June 7, 2011. The amended Allocation Protocol must be filed with this Court for approval by April 15, 2013.

[44]    By way of directions for scheduling, the trial for this matter is scheduled to commence on January 6, 2014. The trial will begin with the allocation issues and continue thereafter with remaining issues to be addressed in the Allocation Protocol, including EMEA Claims and U.K. Pension matters.

[45]    The cross-motion of the Joint Administrators, requesting an order compelling and directing the parties to the IFSA to engage in arbitration regarding all disputes concerning the allocation of Sale Proceeds, is dismissed.

MORAWETZ J.

**Date:**    April 3, 2013

# SCHEDULE "A"

**CITATION:** Nortel Networks Corporation (Re), 2011 ONSC 3805
**COURT FILE NO.:** 09-CL-7950
**DATE:** 20110617

## SUPERIOR COURT OF JUSTICE - ONTARIO

**RE:**     IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL
NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL
NETWORKS TECHNOLOGY CORPORATION, Applicants

**BEFORE:**     MORAWETZ J.

**COUNSEL:**     Alan Mark, Derrick Tay, Alan Merskey and Jennifer Stam, for Nortel Networks
Corporation et al

F. Myers, J. Pasquariello and C. Armstrong, for the Monitor, Ernst & Young Inc.

Mark Zigler, Andrea McKinnon, for the Former & Disabled Employees

G. Finlayson, R. Orzy and R. Swan, for the Noteholder Group

Lily Harmer and Max Starnino, for the Superintendent

S. Seigel, for the Bank of New York Mellon

Alex MacFarlane and Abid Quereshi, for the Official Committee of Unsecured
Creditors

R. Paul Steep and Elder C. Marques, for Morneau Shepell

Barry Wadsworth, for CAW-Canada

M. P. Gottlieb, R. Schwill and S. Campbell, for the Joint Administrators

Bill Burden, for the U.K. Pension Trustee

Lyndon Barnes, for the Board of Directors of Nortel

1476

Andrew Gray and Scott Bomhof, for the U.S. Debtors

Arthur O. Jacques, for Nortel NCCE

**HEARD:**    June 7, 2011

## ENDORSEMENT

[46]    On June 7, 2011, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Canadian Debtors") brought a motion requesting approval of an allocation protocol (the "Allocation Protocol").

[47]    A similar motion was also brought at the same time by Nortel Networks Inc. ("NNI") and certain of its U.S. affiliates (the "U.S. Debtors") in the Chapter 11 Proceedings before the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") (the "Chapter 11 Proceedings").

[48]    The hearing was conducted by video conference with the companion motion being heard in the U.S. Court before His Honor Judge Gross.  This joint hearing was conducted in accordance with the provisions of the Cross-Border Protocol which was previously approved by both the U.S. Court and by this Court.

[49]    Both motions had the support of all parties appearing, save for the Joint Administrators of Nortel Networks (U.K.) Limited ("NNUK") and certain of its subsidiaries and affiliates located in the EMEA (collectively, the "EMEA Debtors").

[50]    Decisions in respect of both motions are currently under reserve.

[51]    On June 13, 2011, at the request of both Judge Gross and me, a case conference was conducted by telephone.  It was reported to the participants that our respective decisions relating to the aforementioned motions would be under reserve for a considerable period of time.

[52]    Certain of the issues raised in the motions have been the subject of two mediation sessions.  These mediation sessions were not successful.  It is my understanding that, in addition to the allocation issue, issues of validity of quantification of certain claims and inter-company claims were discussed.

[53]    Allocation issues have arisen out of the Interim Funding and Settlement Agreement ("IFSA"), which was entered into in June 2009, between the Canadian Debtors, certain of the U.S. Debtors and certain of the EMEA Debtors.  The IFSA provides amongst other things, for the parties cooperation in the global sales of Nortel's business units as well as for the parties to attempt to negotiate the terms of an Interim Sales Protocol ("Protocol").

[54]    The parties entered into negotiations for approximately one year with respect to the terms of a Protocol. After a year of negotiations, the parties were still unable to agree on certain fundamental terms of the Protocol, including, for example, the scope of the issues to be determined under the Protocol.

[55]    As a result, according to the Canadian Debtors, the Protocol negotiations were suspended and the parties agreed to reach a consensual resolution through mediation. After the mediation was declared unsuccessful, the U.S. Debtors and the Canadian Debtors, developed the proposed Allocation Protocol.

[56]    The Allocation Protocol establishes procedures and an expedited schedule for the cross-border resolution by the U.S. Court and this Court of the allocation of the proceeds from the Sale Transactions pursuant to the IFSA.

[57]    The Allocation Protocol proposes that all hearings in respect of the Allocation Protocol proceed by way of joint hearings between the U.S. Court and this Court pursuant to the cross-border protocol.

[58]    The position of the EMEA Debtors is that issues arising out of the IFSA are to be determined by a dispute resolver, in this case, an arbitrator.

[59]    In my view, pending the release of a decision on the motion, the parties could benefit from the appointment of a mediator so that they can continue to make progress towards the ultimate resolution of Nortel matters. The parties have exhibited an ability to cooperate and have been extremely successful in realizing significant proceeds from the sale of Nortel assets globally. However, the creation of an asset pool is not ultimate resolution of Nortel matters. These proceedings can only be concluded with a distribution of proceeds to the various creditors of Nortel globally. These proceedings were commenced on January 14, 2009. Creditors have been waiting nearly two and one-half years for a meaningful distribution. A mediation will require that the parties continue a dialogue. It is possible that tangible, positive results will flow from such mediation.

[60]    In order to assist the parties with their deliberations, I am directing that the parties engage in mediation pending my ruling. I understand that Judge Gross will be issuing a similar direction in the Chapter 11 Proceedings.

[61]    I recognize that the parties may have difficulty in reaching a consensus on a mediator. In the case conference on June 13, 2011, we asked that the parties consult with each other and provide the name of an acceptable mediator. No individual has been identified. It, therefore, falls to both Judge Gross and to me to appoint a mediator.

[62]    The mandate of the mediator is to address issues raised in the motion. It is recognized that the boundary of this mandate is not clearly defined. It seems to me that defining a precise boundary, in these circumstances, may be better left to the mediator, as it may not be possible to address the issues affecting allocation without taking into consideration issues relating to the validity and quantification of claims.

[63]    The mediator shall have the right to file periodic reports with the court detailing progress, or lack thereof, recognizing that the sessions are on a without prejudice basis.

[64]    It is my understanding that, at the mediation sessions, there were a large number of parties that participated.  While I do not take issue with the right of any party to participate in the mediation, I did observe that at the hearing of the within motion, the primary submissions were made by the Canadian Debtors, the EMEA Debtors and the Monitor.  It was also my observation that the primary submissions of parties in the Chapter 11 Proceedings were likewise concentrated among a relatively small group of counsel.  The mediation will, in all likelihood, be more effective if the number of participants is significantly reduced from the number that attended the previous sessions.  It is hoped that the parties will be able to work out the details respecting participation of the mediation.

[65]    The identity of the mediator will be provided by way of Supplementary Endorsement early next week.  The mediator shall have the ability to retain advisors and counsel as he or she deems appropriate in the circumstances and to have the expenses of such advisors and counsel paid out of the assets of Nortel.

[66]    In addition, consistent with the conclusion of the U.S. Court, the mediator is to have expanded authority, if the parties agree, to conduct a mediation/arbitration or an arbitration in respect of this matter.

[67]    To the extent that further directions are required in respect of this directed mediation, the parties can contact the Commercial List Office in order to set up a case conference.

"Morawetz J."

MORAWETZ J.

**Date:**   June 17, 2011

## SCHEDULE "B"

**CITATION:** Nortel Networks Corporation (Re), 2011 ONSC 4012
**COURT FILE NO.:** 09-CL-7950
**DATE:** 20110629

### SUPERIOR COURT OF JUSTICE - ONTARIO

**RE:**     IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION, Applicants

**BEFORE:**     MORAWETZ J.

**COUNSEL:**     Alan Mark, Derrick Tay, Alan Merskey and Jennifer Stam, for Nortel Networks Corporation et al

F. Myers, J. Pasquariello and C. Armstrong, for the Monitor, Ernst & Young Inc.

Mark Zigler, Andrea McKinnon, for the Former & Disabled Employees

G. Finlayson, R. Orzy and R. Swan, for the Noteholder Group

Lily Harmer and Max Starnino, for the Superintendent

S. Seigel, for the Bank of New York Mellon

Alex MacFarlane and Abid Quereshi, for the Official Committee of Unsecured Creditors

R. Paul Steep and Elder C. Marques, for Morneau Shepell

Barry Wadsworth, for CAW-Canada

M. P. Gottlieb, R. Schwill and S. Campbell, for the Joint Administrators

Bill Burden, for the U.K. Pension Trustee

Lyndon Barnes, for the Board of Directors of Nortel

Andrew Gray and Scott Bomhof, for the U.S. Debtors

Arthur O. Jacques, for Nortel NCCE

## ENDORSEMENT

[1]     This Endorsement relates to my Endorsement of June 17, 2011.  The following directions take precedence over the directions provided on June 17, 2011.

[2]     On June 7, 2011, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Canadian Debtors") brought a motion requesting approval of a proposed protocol for the allocation of the proceeds of the sale of their assets, the assets of the U.S. Debtors (defined below) and those of Nortel Networks U.K. Limited (NNUK") and certain of its affiliates located in Europe, the Middle East and Africa (collectively, the "EMEA Debtors") (the "Allocation Protocol").

[3]     A similar motion was also brought at that time by Nortel Networks Inc. ("NNI") and certain of its U.S. affiliates (the "U.S. Debtors") in the Chapter 11 Proceedings before the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") (the "Chapter 11 Proceedings").

[4]     The hearing was conducted by video conference with the companion motion being heard in the U.S. Court before His Honor Judge Gross.  The joint hearing was conducted in accordance with the provisions of the Cross-Border Protocol which was previously approved by both the U.S. Court and by this Court.

[5]     Both motions had the support of all parties appearing, save for the joint administrators of NNUK.

[6]     Allocation issues have arisen out of the Interim Funding and Settlement Agreement ("IFSA"), which was entered into in June 2009, between the Canadian Debtors, certain of the U.S. Debtors and certain of the EMEA Debtors.  The IFSA provides amongst other things, for the parties cooperation in the global sales of Nortel's business units as well as for the parties to attempt to negotiate the terms of an Interim Sales Protocol ("Protocol").

[7]     To date, the parties have been unable to resolve these allocation issues on a consensual basis.  This has resulted in a most unfortunate situation.

[8]     Nortel's insolvency is somewhat unique.  The sale of its business units has created a sizeable asset pool.  With the exception of the IP Transaction, the auction for which commenced on June 27, 2011, the Canadian Debtors, the U.S. Debtors, the EMEA Debtors and their affiliates have now divested substantially all of Nortel's material worldwide assets.  The proceeds of these divestitures – some $3 billion currently with a minimum of a further $900 million expected to be added upon consummation of the patent portfolio and related asset transactions – now sit in escrow awaiting the resolution of allocation.

[9]     This allocation issue, together with the resolution of the EMEA claims and the U.K. pension claims, lies at the heart not only of these CCAA proceedings, but also the Chapter 11 Proceedings and proceedings in the United Kingdom.  As the Monitor noted in its 67th Report: "Simply put, they are matters that must be resolved before any creditor of an applicant (and likely any other Nortel debtor) can expect to receive a meaningful distribution on account of amounts that have now been outstanding in most cases since January 2009.

[10]     The Canadian Debtors have no significant secured creditors.  The Canadian Debtors do, however, have significant unsecured creditors, most of whom are individuals who are employed or were formerly employed by Nortel.  Many of these former employees are pensioners and this group have unsecured claims for both pension and medical benefits.

[11]     There are also significant employee and former employee claims against the U.S. Debtors and the EMEA Debtors.

[12]     For many of these individuals, the delay in receiving a meaningful distribution can be significant.  It is not just a question of calculating the time value of money.  For this group of creditors, time is not on their side.

[13]     This issue is international in scope.  It is also a public-interest issue.  A protracted delay in resolving the impasse surrounding allocation is highly prejudicial to this group.

[14]     In making these comments, I do not mean to suggest that the claims of other creditor groups are not of equal significance.  The reality is, however, that the timing of a receipt of a distribution may be less critical for a financial player as opposed to an individual.

[15]     The difficulty in resolving the allocation issue that is before both the U.S. Court and this Court is, of course, complicated by the fact that it is a multi-jurisdictional issue.  There is no simple solution to the legal predicament that faces all parties.

[16]     Decisions in respect of both motions are currently under reserve.  The nature and length of the arguments presented at the motion will necessitate careful drafting and separate rulings by the U.S. Court and this Court.  Both Courts are concerned that this delay will also delay allocation proceedings and therefore distributions to creditors.  Moreover, the risk of inconsistent decisions and the uncertainty of the appellate process (with further risk of inconsistent decisions) may further delay the progress of the cases.

[17]     A protracted delay in the progress of the cases will only exacerbate an already unfortunate situation for the many individual creditors.  With extended delay comes uncertainty. For many, uncertainty brings considerable stress and a bad situation becomes even worse. Clearly, the consequences of extended litigation are not desirable.

[18]     Both Courts concluded that the parties could benefit from the appointment of a mediator so that they can continue to make progress towards the ultimate resolution of Nortel matters. Consequently, both the U.S. Court and this Court directed that the parties, who participated in the hearing on June 7, 2011, engage in mediation pending the release of decisions in both motions.  The mediator will have the authority to include such other parties as he deems appropriate, in his discretion.

- Page 4 -

[19]    The mediator has the authority, in consultation with the parties, to determine the scope of the mediation, as he deems appropriate, including, without limitation, the allocation issue in its entirety and global issues relating to allocation and claims.

[20]    The mediator is authorized to select advisors of his choosing.  The reasonable fees and expenses of the advisors shall be reimbursed by the Canadian Debtors, the U.S. Debtors and the EMEA Debtors.

[21]    The particulars of the mediation are as follows:

|  |  |
|---|---|
| Mediator: | The Honourable Warren K. Winkler |
|  | Chief Justice of Ontario |
|  | Court of Appeal for Ontario |
|  | Osgoode Hall |
|  | 130 Queen Street West |
|  | Toronto, ON |
|  | M5H 2N5 |
|  |  |
| Timing: | To be arranged by the mediator |

[22]    Participation in this mediation is mandatory.  Any agreements reached as a result of mediation will be binding on the parties.

[23]    A settlement of the dispute being mediated shall also be subject to the approval of the U.S. Court and this Court, on notice to parties in interest.

[24]    The parties shall recognize that mediation proceedings are settlement negotiations, and that all offers, promises, conduct and statements, whether written or oral, made in the course of the proceedings, are inadmissible in any arbitration or court proceeding, to the extent allowed by law.  The parties shall not subpoena or otherwise require the mediator or any advisor to the mediator, to testify or produce records, notes or work product in any future proceedings, and no recording will be made of the mediation session.  Evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation session.  In the event that the parties do reach a settlement agreement, the terms of that settlement will be admissible in any court or arbitration proceedings required to enforce it, unless the parties agree otherwise.  Information disclosed to the mediator at a private caucus shall remain confidential unless the party authorizes disclosure.

[25]    The mediator has the right, prior to the commencement of the mediation only, to communicate with Judge Gross and me, for the purposes of obtaining background information.

[26]    The mediation process shall be terminated under any of the following circumstances:

(a) by a declaration by the mediator that a settlement has been reached;

(b) a declaration by the mediator that further efforts at mediation are no longer considered to be worthwhile; or

1483

Case 09-10138-MFW    Doc 10419-2    Filed 05/01/13    Page 454 of 515
Case 09-10138-KG    Doc 10414-2    Filed 05/01/13    Page 454 of 515

- Page 5 -

(c) for any other reason as determined by the mediator.


[27]    The Monitor is directed to circulate a copy of this endorsement to all parties who attended on the return of the motion on June 7, 2011.


                                        "Morawetz J."

                                        _____
                                                    MORAWETZ J.

**Date:**   June 29, 2011

SCHEDULE "C"


**CITATION:** Nortel Networks Corporation (Re), 2013 ONSC 1470
**COURT FILE NO.:** 09-CL-7950
**DATE:** 20130308

## SUPERIOR COURT OF JUSTICE – ONTARIO

(COMMERCIAL LIST)


**RE:** IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**BEFORE:** MORAWETZ J.

**COUNSEL:** *Derrick Tay and Jennifer Stam*, for Nortel Networks Corporation

*Benjamin Zarnett, Fred. Myers* and *Jay Carfagnini* for Ernst & Young Inc., Monitor

*Mark Zigler, Ken Rosenberg, Arthur Jacques, Barry Wadsworth* and *Elder C. Marques* for Canadian Creditors' Committee

*Matthew P. Gottlieb, Robin B. Schwill* and *James Reinihan* for Nortel Networks UK Limited (in Administration)

*David Ward* for PPF/Trustee

*Adam Hirsh* for Former Directors & Officers of Nortel Networks Corporation and Nortel Networks Limited

*Andrew Gray* and *Scott Bomhof* for Nortel Networks Inc. and other U.S. Debtors

*John Salmas* for Wilmington Trust, National Association

*Sheryl Seigel* for the Bank of New York Mellon

*Richard Swan* and *Gavin Finlayson* for Informal Committee of Noteholders

*Shayne Kukulowicz*, *Ryan Jacobs* and *Mike Wunder* for Unsecured Creditors' Committee

*Edmond Lamek* for Law Debenture Trust Company of New York

**HEARD:**   March 7, 2013

**DECISION:**   March 8, 2013

## ENDORSEMENT

[1]   For reasons to follow, the motion of Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Canadian Debtors") for an order approving an Allocation Protocol, substantially in the form of Schedule "A" to the motion originally returnable June 7, 2011 is granted, subject to the following modifications:

> (i) the Allocation Protocol is to be based on the protocol presented on the original return date, namely June 7, 2011, and is not to be based on the protocol presented during argument on March 7, 2013;

> (ii) the list of "core parties" referenced in paragraph (o)(iii) of the Motion Record is to be expanded.  Representations were received from numerous indenture trustees on March 7, 2013. These parties are to be included as "core parties"; and

> (iii) the Monitor is directed to provide the court with a revised list of proposed "core parties" for its consideration, balancing interests of natural justice as well as the objective to resolve outstanding issues in the most expeditious and least expensive manner possible.

[2]   The Monitor is also directed to coordinate input from the parties with respect to a litigation schedule.  Directions in respect of the litigation schedule will be addressed in the full reasons for this decision.

[3]   The cross motion of the Joint Administrators of Nortel Networks UK Limited, originally returnable June 7, 2011 requesting an order compelling and directing the parties to the Interim Funding and Settlement Agreement dated June 9, 2009 (the "IFSA") to engage in arbitration

regarding all disputes concerning the allocation of Sales Proceeds (as defined in the IFSA), is dismissed.

[4]     The appeal period in respect of this endorsement will commence on the date when full reasons are released, which date will coincide with the release of reasons of Chief Judge Kevin Gross of the United States Bankruptcy Court for the District of Delaware.

"Morawetz J."

_____

Morawetz, J.

**DATE:**       March 8, 2013

**EXHIBIT E**

Court File No. M42415

## COURT OF APPEAL FOR ONTARIO

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## <u>AMENDED</u> NOTICE OF MOTION FOR LEAVE TO APPEAL

The EMEA Debtors (defined below) will make a Motion to the Court of Appeal for Ontario <u>in writing 36 days after service of the moving party's motion record, factum and transcripts, if any, or on the filing of the moving party's reply factum, if any, whichever is earlier,</u> ~~on a date to be fixed by the Court of Appeal at Osgoode Hall,~~ 130 Queen Street West, Toronto, Ontario, M5H 2N5.

**THE MOVING PARTY** <u>proposes that the motion be heard in writing as an opposed motion under Rule 61.03.1.</u>

~~**PROPOSED METHOD OF HEARING**: The Motion is to be heard~~

~~[ ]    in writing under subrule 61.03.1(1);~~

~~[ ]    in writing as an opposed motion under subrule 37.12.1(4);~~

~~[X]    orally.~~

Case 09-10138-MFW   Doc 10414-2   Filed 05/02/13   Page 460 of 515
Case 09-10138-KG   Doc 10414-5   Filed 05/03/13   Page 459 of 515

-2-

## THE MOTION IS FOR

(a)    an order granting the EMEA Debtors' leave to appeal from the order of Justice Morawetz, released on March 8, 2013 with reasons delivered on April 3, 2013;

(b)    an order granting the EMEA Debtors leave to serve and file an affidavit for use on this motion and on the appeal if leave is granted, as described below;

(c)    the costs of this Motion; and,

(d)    such further and other relief as this Honourable Court may deem just.

## THE GROUNDS FOR THE MOTION ARE

### i) Background

(a)    On January 14, 2009, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "Canadian Debtors") commenced these proceedings and received protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the "CCAA") (the proceedings are referred to as the "CCAA Proceedings");

(b)    Also on January 14, 2009, Nortel Networks Inc. ("NNI"), an American subsidiary of NNC, as well as other related American companies (collectively, the "U.S. Debtors"), filed voluntary petitions pursuant to Chapter 11 of the United States Bankruptcy Code;

(c)     In addition, also on January 14, 2009, various direct and indirect subsidiaries of NNL located in Europe, the Middle East and Africa (the "EMEA Debtors") applied for and were granted administration orders under the United Kingdom's *Insolvency Act* 1986;

## ii) The Asset Sales

(d)     In the spring of 2009, the Canadian, U.S. and EMEA Debtors (collectively, the "Nortel Debtors") commenced negotiations to settle various inter-company debts and to attempt to collectively sell off their various lines of business and related assets (the "Asset Sales");

(e)     Because Nortel's business was conducted globally along "business lines", the cooperation of all Nortel entities around the world was required in order to consummate the sale of each business line. However, it became evident that it would not be possible to agree on the allocation of the proceeds of the Asset Sales (the "Proceeds") amongst the various Nortel entities prior to entering into any Asset Sale. In order to maximize the funds available for distribution to creditors and prevent the possibility that disputes over allocation would hinder the Asset Sales, the Nortel Debtors agreed that the Proceeds would be deposited into escrow pending resolution of allocation. This agreement was documented in the Interim Funding and Settlement Agreement (the "IFSA"), effective June 9, 2009;

(f)     In light of the widely differing legal regimes governing each of the Nortel Debtors, the IFSA reflected the Nortel Debtors' intention and agreement that, in the event

that they were unable to agree on an allocation of the Proceeds, allocation would be determined by way of arbitration, rather than by the various national courts;

(g)    The Asset Sales went ahead as planned, and the Nortel Debtors eventually sold substantially all of their collective assets in various sales. In total, Proceeds in the amount of approximately $7.5 billion were realized. However, the Nortel Debtors have to date been unable to agree on how to allocate the Proceeds amongst themselves;

(h)    All of the parties to the IFSA understood and agreed that any dispute regarding allocation would be determined by arbitration. The Nortel Debtors conducted extensive discussions concerning the procedures for that arbitration, including the composition of the arbitral panel that would determine allocation of the Proceeds, compensation for the arbitrators and the binding procedures that the arbitration would follow;

(i)    When seeking approval of the IFSA, American counsel for NNI explained to the United States Bankruptcy Court for the District of Delaware (the "Delaware Court") and the Commercial List of the Ontario Superior Court of Justice (the "Ontario Court") that through the IFSA there would be "a fair and reasonable independent body deciding the allocation" which "would require very little participation or intervention or bother by these two courts";

(j)    The Delaware Court, in a separate opinion, subsequently stated that the allocation was "to be determined (absent a consensual agreement) in a single cross-jurisdictional forum". Similarly, when the Commercial Court of Versailles

(the "French Court") granted approval for Nortel Networks S.A. to enter into the IFSA, the French Court's approval relied on the parties' submission that the allocation would be "determined or which may at least be determinable by a third party neutral arbitrator";

### iii) The Allocation Motions

(k)     In the spring of 2011, shortly before the last Asset Sale, the Canadian and U.S. Debtors abandoned discussions concerning the procedure for the arbitration and suddenly took the position that allocation should instead be determined jointly by the Ontario Court and the Delaware Court;

(l)     On June 7, 2011, in a joint hearing before the Ontario and Delaware Courts, the Canadian and U.S. Debtors moved for an order approving an allocation protocol that would have the Ontario and Delaware Courts jointly hear the allocation dispute, and then each render their own decision as to how the Proceeds should be allocated between more than 20 Nortel Debtors. The proposed protocol did not address how any differences in those two decisions were to be reconciled or purport to co-ordinate any appeals from those decisions;

(m)     In response to those motions, on June 7, 2011, the EMEA Debtors moved for an order directing the Nortel Debtors to arbitrate the allocation dispute, in accordance with the IFSA;

(n)     The Ontario and Delaware Courts heard submissions on June 7, 2011, and both reserved their decisions. The Ontario and Delaware Courts then ordered the parties

to participate in a mediation to attempt to settle all matters relating to the allocation of the Proceeds and the outstanding inter-company claims;

(o)     The mediation was unsuccessful, and the Ontario and Delaware Courts called for the June 7, 2011 motion to be reconvened for supplementary submissions on March 7, 2013, with a decision to follow that day;

**iv) The Decision Below**

(p)     On March 8, 2013, with reasons to follow, the Ontario Court granted the motions of the U.S. and Canadian Debtors and dismissed the EMEA Debtors' motion (the "Motions Decision"). The Motions Judge ordered that the appeal period would not begin to run until reasons for the Motions Decision were released;

(q)     The reasons of the Ontario Court were issued on April 3, 2013 (the "Reasons"). In the Reasons, the Motions Judge ordered that all issues in the CCAA Proceedings as between the EMEA Debtors and the Canadian and U.S. Debtors would be determined at joint trials held by the Ontario and Delaware Courts that would commence on January 6, 2014, beginning with a joint trial to determine allocation of the Proceeds;

(r)     The Motions Judge incorrectly held that, by the terms of the IFSA, the parties did not evince an intention to have the allocation dispute determined by arbitration, despite the clear language of the IFSA and the evidence that the Nortel Debtors all shared a common understanding that allocation would be determined by way of arbitration;

(s)      Rather than direct the parties to arbitrate the allocation issue, the Motions Judge ordered them to participate in joint trials before the Ontario and Delaware Courts, each of which must independently decide how the Proceeds are to be allocated. A joint trial is outside of the Motions Judge's jurisdiction and, in any event, will create insurmountable difficulties and improprieties. Moreover, there is a substantial risk of inconsistent decisions and the two jurisdictions have different procedural and evidentiary rules that cannot be reconciled at a joint trial. There are certain to be separate and independent appeals from the decisions of the Ontario and Delaware Courts. In the event of inconsistent decisions, allocation of the Proceeds will be impossible;

(t)      Further, the IFSA is governed by New York law and the EMEA Debtors, as well as other parties, tendered expert evidence concerning the content of New York law and the proper interpretation and consideration of arbitration agreements. However, the Motions Judge failed to apply New York law when interpreting the IFSA. At no point in the Reasons does the Motions Judge refer to the expert evidence or address the fact that the IFSA is governed by New York law.

(u)      Since the release of the Reasons, the Motions Judge has directed the parties to attempt to reach agreement on a protocol for the hearing of the allocation dispute (the "Protocol") and a timetable to be followed by the parties leading up to the January 6, 2014 trial (the "Timetable"). The Court is expected to approve a Protocol and Timetable in the near future. The Protocol and Timetable are required to be before this Court on this motion and, if granted, the subsequent appeal so that the Court will have a full appreciation of the impact of the Motions Decision.

-8-

Therefore, the EMEA Debtors seek leave to introduce both documents by way of affidavit, to be filed after the Protocol and Timetable are approved;

### v) Leave to Appeal Should be Granted

(v)     The joint trial ordered by the Motions Judge is unprecedented and raises significant questions that are of importance to the practice of insolvency law in general. The ordered joint trial would infringe on the independence and sovereignty of the Ontario Court and establish an unworkable joint trial procedure that will be wrought with inconsistencies and problems;

(w)     The issue on appeal is of significance to the CCAA Proceedings, as it will determine whether or not the allocation dispute is to be determined by both the Ontario Court and the Delaware Court or by a single arbitral panel. The result will have an enormous impact on the trial scheduled for January 6, 2014 and the procedure for resolving the allocation disputes;

(x)     The EMEA Debtors' appeal is *prima facie* meritorious. The Motions Judge misinterpreted the IFSA, ordered the parties to engage in a joint trial that could result in inconsistent and unenforceable decisions and failed to apply the proper law in interpreting the IFSA. The ordered joint trial improperly infringes on the independence and sovereignty of the Ontario Court. As the Motions Judge conceded, his order involves "procedural difficulties" and "challenges" that should not be underestimated;

(y)     The appeal will not unduly hinder the progress of the CCAA Proceedings, as the EMEA Debtors are seeking to have the appeal expedited and are committed to having it heard as quickly as is reasonably possible;

**vi) Leave to File Fresh Evidence Should be Granted**

(z)     The EMEA Debtors seek leave to file an affidavit for the purpose of putting the Protocol and Timetable before this Court on the motion for leave and, if granted, subsequent appeal;

(aa)    Neither the Protocol nor the Timetable existed at the time that the Motions were heard, and thus could not possibly have been included in the materials before the Motions Judge;

(bb)    the Protocol and Timetable are relevant to the issue of whether the Motions Judge's order improperly infringes on the jurisdiction of the Ontario Court and, as such, could affect whether the Motions Judge's decision was correct;

(cc)    the Protocol and Timetable are not contentious documents as they will be approved by the Motions Judge;

(dd)    Rules 37, 61.03.1 and 61.16 of the *Rules of Civil Procedure*;

(ee)    sections 13 and 14 of the CCAA; and

(ff)    such further and other grounds as the lawyers may advise.

-10-

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the Motion:

(a)     the materials that were before the Motions Judge on the motions;

(b)     an affidavit to be sworn and filed following approval of the Protocol and Timetable; and

(c)     such further and other evidence as the lawyers may advise and this Honourable Court may permit.

April 2325, 2013                **LAX O'SULLIVAN SCOTT LISUS LLP**
                                Counsel
                                Suite 2750, 145 King Street West
                                Toronto, Ontario  M5H 1J8

                                **Matthew P. Gottlieb**  LSUC#: 32268B
                                Email:  mgottlieb@counsel-toronto.com
                                Tel:    (416) 644-5353
                                **James Renihan**  LSUC#: 57553U
                                Email: jrenihan@counsel-toronto.com
                                Tel:    (416) 644-5344
                                Fax:    (416) 598-3730

                                and

                                **DAVIES WARD PHILLIPS & VINEBERG LLP**
                                155 Wellington Street West
                                Toronto, ON  M5V 3J7

                                **Robin B. Schwill**  LSUC#:  38452I
                                Email:  rschwill@dwpv.com
                                Tel:    (416) 863-5502
                                **Sean Campbell**  LSUC#:  49514J
                                Email:  scampbell@dwpv.com
                                Tel:    (416) 367-7473
                                Fax:    (416) 863-0871

                                Lawyers for the Joint Administrators of Nortel
                                Networks UK Limited (In Administration)

-11-

TO:        **THE SERVICE LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, et al.

Court File No. M42415

| | |
|---|---|
| | **COURT OF APPEAL FOR ONTARIO**<br><br>PROCEEDING COMMENCED AT<br>TORONTO |
| | **AMENDED NOTICE OF MOTION FOR LEAVE TO APPEAL** |
| | **LAX O'SULLIVAN SCOTT LISUS LLP**<br>Counsel<br>Suite 2750, 145 King Street West<br>Toronto, Ontario  M5H 1J8<br><br>**Matthew P. Gottlieb**  LSUC#: 32268B<br>Email:  mgottlieb@counsel-toronto.com<br>Tel:        (416) 644-5353<br>**James Renihan**  LSUC#: 57553U<br>Email: jrenihan@counsel-toronto.com<br>Tel:        (416) 644-5344<br>Fax:       (416) 598-3730<br><br>and<br><br>**DAVIES WARD PHILLIPS & VINEBERG LLP**<br>155 Wellington Street West<br>Toronto, ON  M5V 3J7<br><br>**Robin B. Schwill**  LSUC#:  38452I<br>Email:  rschwill@dwpv.com<br>Tel:        (416) 863-5502<br>**Sean Campbell**  LSUC#:  49514J<br>Email:  scampbell@dwpv.com<br>Tel:        (416) 367-7473<br>Fax:       (416) 863-0871<br><br>Lawyers for the Joint Administrators of Nortel Networks UK Limited (In Administration) |

**EXHIBIT F**

Court File No.

# COURT OF APPEAL FOR ONTARIO

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS
LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL
NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT
ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## NOTICE OF MOTION TO EXPEDITE AND CONSOLIDATE

The moving parties, the EMEA Debtors (defined below), will make a Motion to a Judge of

the Court of Appeal for Ontario on a date to be fixed by the Court of Appeal at Osgoode Hall, 130

Queen Street West, Toronto, Ontario, M5H 2N5.

**PROPOSED METHOD OF HEARING**: The Motion is to be heard

[ ]     in writing under subrule 37.12.1(1) because it is;

[ ]     in writing as an opposed motion under subrule 37.12.1(4);

[X]     orally.

**THE MOTION IS FOR**

(a)     an order abridging the time for service and filing of this motion;

Case 09-10138-MFW   Doc 10442-6   Filed 05/03/13   Page 473 of 515
Case 09-10138-KG   Doc 10442-6   Filed 05/03/13   Page 473 of 515

-2-

(b)     an order expediting the hearing of the EMEA Debtors' motion for leave to appeal

        from the judgment of Justice Morawetz (the "Motions Judge") released on April 3,

        2013 (the "Motions Decision");

(c)     an order directing that the EMEA Debtors' motion for leave to appeal from the

        Motions Decision be heard orally;

(d)     an order that, if leave to appeal is granted, the appeal be heard at the same time as

        the motion for leave to appeal;

(e)     an order setting a schedule for the filing of materials;

(f)     an order staying the Motions Decision pending appeal;

(g)     the costs of this Motion; and

(h)     such further and other relief as this Honourable Court may deem just.

**THE GROUNDS FOR THE MOTION ARE**

**i) Background**

(a)     On January 14, 2009, Nortel Networks Corporation ("NNC"), Nortel Networks

        Limited ("NNL"), Nortel Networks Global Corporation, Nortel Networks

        International Corporation and Nortel Networks Technology Corporation

        (collectively, the "Canadian Debtors") commenced these proceedings and received

        protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36

        (the "CCAA") (the proceedings referred to as the "CCAA Proceedings");

(b)     Also on January 14, 2009, Nortel Networks Inc. ("NNI"), an American subsidiary of NNC, as well as other related American companies (collectively, the "U.S. Debtors"), filed voluntary petitions pursuant to Chapter 11 of the United States Bankruptcy Code;

(c)     In addition, also on January 14, 2009, various direct and indirect subsidiaries of NNL located in Europe, the Middle East and Africa (the "EMEA Debtors") applied for and were granted administration orders under the United Kingdom's *Insolvency Act* 1986;

## ii) The Asset Sales

(d)     In the spring of 2009, the Canadian, U.S. and EMEA Debtors (collectively, the "Nortel Debtors") commenced negotiations to settle various inter-company debts and to attempt to collectively sell off their various lines of business and related assets (the "Asset Sales");

(e)     Because Nortel's business was conducted globally along "business lines", the cooperation of all Nortel entities around the world was required in order to consummate the sale of each business line. However, it became evident that it would not be possible to agree on the allocation of the proceeds of the Asset Sales (the "Proceeds") amongst the various Nortel entities prior to entering into any Asset Sale. In order to maximize the funds available for distribution to creditors and prevent the possibility that disputes over allocation would hinder the Asset Sales, the Nortel Debtors agreed that the Proceeds would be deposited into escrow

pending resolution of allocation. This agreement was documented in the Interim Funding and Settlement Agreement (the "IFSA"), effective June 9, 2009;

(f)     In light of the widely differing legal regimes governing each of the Nortel Debtors, the IFSA reflected the Nortel Debtors' intention and agreement that, in the event that they were unable to agree on an allocation of the Proceeds, allocation would be determined by way of arbitration, rather than by the various national courts;

(g)     The Asset Sales went ahead as planned, and the Nortel Debtors eventually sold substantially all of their collective assets in various sales. In total, Proceeds in the amount of approximately $7.5 billion were realized. However, the Nortel Debtors were unable to agree on how to allocate the Proceeds amongst themselves;

(h)     All of the parties to the IFSA understood and agreed that any dispute regarding allocation would be determined by arbitration. The Nortel Debtors conducted extensive discussions concerning the procedures for arbitration, including the composition of the arbitral panel that would determine allocation of the Proceeds, compensation for the arbitrators and the binding procedures that the arbitration would follow;

(i)     When seeking approval of the IFSA, American counsel for NNI explained to the United States Bankruptcy Court for the District of Delaware (the "Delaware Court") and the Commercial List of the Ontario Superior Court of Justice (the "Ontario Court") that through the IFSA there would be "a fair and reasonable independent body deciding the allocation" which "would require very little participation or intervention or bother by these two courts";

(j)     The Delaware Court, in a separate opinion, subsequently stated that the allocation was "to be determined (absent a consensual agreement) in a single cross-jurisdictional forum". Similarly, when the Commercial Court of Versailles (the "French Court") granted approval for Nortel Networks S.A. to enter into the IFSA, the French Court's approval relied on the parties' submission that the allocation would be "determined or which may at least be determinable by a third party neutral arbitrator";

### iii) The Decision Below

(k)     In the spring of 2011, shortly before the last Asset Sale, the Canadian and U.S. Debtors abandoned discussions concerning the procedure for the arbitration and suddenly took the position that allocation should instead be determined jointly by the Ontario Court and the Delaware Court;

(l)     On June 7, 2011, in a joint hearing before the Ontario and Delaware Courts, the Canadian and U.S. Debtors moved for an order approving an allocation protocol that would have the Ontario and Delaware Courts jointly hear the allocation dispute, and then each render their own decision as to how the Proceeds should be allocated between over 20 different Nortel Debtors. The proposed protocol did not address how any differences in those two decisions were to be reconciled or purport to co-ordinate any appeals from those decisions;

(m)     In response to those motions, on June 7, 2011, the EMEA Debtors moved for an order directing the Nortel Debtors to arbitrate the allocation dispute, in accordance with the IFSA;

(n)     The Ontario and Delaware Courts heard submissions on June 7, 2011, and both reserved their decisions. The Ontario and Delaware Courts then ordered the parties to participate in a mediation to attempt to settle all matters relating to the allocation of the Proceeds and the outstanding inter-company claims;

(o)     The mediation was unsuccessful, and the Ontario and Delaware Courts called for the June 7, 2011 motion to be reconvened for supplementary submissions on March 7, 2013, with a decision to follow that day;

(p)     On March 8, 2013, with reasons to follow, the Ontario Court granted the motions of the U.S. and Canadian Debtors and dismissed the EMEA Debtors' motion. The Motions Judge ordered that the appeal period would not begin to run until reasons for the Motions Decision were released;

(q)     The reasons of the Ontario Court were issued on April 3, 2013. In those reasons, the Ontario Court ordered that all issues in the CCAA proceedings as between the EMEA Debtors and the Canadian and U.S. Debtors would be determined at joint trials held by the Ontario and Delaware Courts that would commence on January 6, 2014, beginning with a joint trial to determine allocation of the Proceeds;

(r)     The Monitor has proposed an aggressive schedule in which the documentary discovery process would commence in mid-May, 2013;

**iv) Leave to Appeal Must be Expedited**

(s)     The EMEA Debtors are seeking leave to appeal the Motions Decision on the bases that, *inter alia*, the Motions Judge erred in his interpretation of the IFSA, failed to

apply New York law as required by the terms of the IFSA and approved a protocol which improperly infringes the independence and sovereignty of the Ontario Court and results in parallel proceedings with the accompanying risk of inconsistent and thus unenforceable judgments;

(t)      It is important that leave to appeal (and, if granted, the consequent appeal) be heard expeditiously. The CCAA Proceedings cannot reasonably proceed until there has been a final decision as to whether the allocation dispute is to be arbitrated or determined by the Ontario Court and Delaware Court, as it is not known what the scope of pleadings or discovery within the CCAA Proceedings will be;

**v) A Stay Pending Appeal is Warranted**

(u)      There are serious issues regarding the correctness of the Motions Decisions;

(v)      The EMEA Debtors will suffer irreparable harm if the Motions Decision is not stayed pending appeal. The Motions Decision directs the parties to the CCAA Proceedings to adhere to an aggressive schedule to have determined, *inter alia*, the allocation dispute. It is the EMEA Debtors' position that the parties are bound to have allocation determined by arbitration and that the Ontario Court and Delaware Court lack jurisdiction over that dispute.

(w)      It is anticipated that the EMEA Debtors will obtain the benefit of a stay of proceedings from the Delaware Court, as an appeal in the United States from an order refusing to compel arbitration automatically divests the Delaware Court of jurisdiction over the matter pending appeal;

(x)     Rules 37, 61.03.1 and 61.16 of the *Rules of Civil Procedure*;

(y)     Sections 13 and 14 of the CCAA; and

(z)     Such further and other grounds as the lawyers may advise.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the Motion:

(a)     Such further and other evidence as the lawyers may advise and this Honourable

Court may permit.

**THE MOVING PARTIES ESTIMATE** that 60 minutes are needed to argue this motion.

Case 09-10138-MFW   Doc 10419-6   Filed 05/02/13   Page 480 of 515
Case 09-10138-KG   Doc 10419-6   Filed 05/02/13   Page 480 of 515

-9-

April 23, 2013

**LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 2750, 145 King Street West
Toronto, Ontario  M5H 1J8

**Matthew P. Gottlieb**  LSUC#: 32268B
Email:  mgottlieb@counsel-toronto.com
Tel:     (416) 644-5353
**James Renihan**  LSUC#: 57553U
Email: jrenihan@counsel-toronto.com
Tel:     (416) 644-5344
Fax:     (416) 598-3730

and

**DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto, ON  M5V 3J7

**Robin B. Schwill**  LSUC#:  38452I
Email:  rschwill@dwpv.com
Tel:     (416) 863-5502
**Sean Campbell**  LSUC#:  49514J
Email:  scampbell@dwpv.com
Tel:     (416) 367-7473
Fax:     (416) 863-0871

Lawyers for the Joint Administrators of Nortel
Networks UK Limited (In Administration)

TO:          **THE SERVICE LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, et al.

Court File No.

---

**COURT OF APPEAL FOR ONTARIO**

PROCEEDING COMMENCED AT
TORONTO

---

**NOTICE OF MOTION TO EXPEDITE AND CONSOLIDATE**

---

**LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 2750, 145 King Street West
Toronto, Ontario  M5H 1J8

**Matthew P. Gottlieb**  LSUC#: 32268B
Email:  mgottlieb@counsel-toronto.com
Tel:      (416) 644-5353
**James Renihan**  LSUC#: 57553U
Email: jrenihan@counsel-toronto.com
Tel:      (416) 644-5344
Fax:      (416) 598-3730

and

**DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto, ON  M5V 3J7

**Robin B. Schwill**  LSUC#:  38452I
Email:  rschwill@dwpv.com
Tel:      (416) 863-5502
**Sean Campbell**  LSUC#:  49514J
Email:  scampbell@dwpv.com
Tel:      (416) 367-7473
Fax:      (416) 863-0871

Lawyers for the Joint Administrators of Nortel Networks UK Limited (In Administration)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
|  |  |  |
|---|---|---|
|  | : | Chapter 11 |
|  | : |  |
| *In re* | : | Case No. 09-10138 (KG) |
|  | : |  |
| Nortel Networks Inc., *et al.*,[1] | : | Jointly Administered |
|  | : |  |
| Debtors. | : | **RE: Docket No. 10166** |

-------------------------------------------------------X

## JOINT ADMINISTRATORS' STATEMENT PURSUANT TO
## BANKRUPTCY RULE 8006 OF ISSUES TO BE PRESENTED ON
## APPEAL AND DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD

Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), the court-appointed administrators and authorized foreign representatives

(collectively, the "Joint Administrators")[2] for Nortel Networks UK Limited ("NNUK") and

certain of its affiliates (collectively, and including NNUK, the "EMEA Debtors"),[3] respectfully

submit (i) a statement of the issues to be presented on their appeal from the Order Approving

---

1. The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

2. The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris. The Joint Administrators in the English proceedings for Nortel Networks (Ireland) Limited are: Alan Robert Bloom and David Martin Hughes.

3. The EMEA Debtors are located in Europe, the Middle East and Africa and are in proceedings pending before the High Court of Justice of England and Wales. They are: Nortel Networks UK Limited; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks s.r.o.

Allocation Protocol, entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or the "U.S. Court") on April 3, 2013 (the "Allocation Protocol Order," D.I. 9947) and the accompanying Opinion (the "Allocation Opinion," D.I. 9946), and (ii) a designation of the items to be included in the record on appeal (collectively, this "Rule 8006 Statement").

Pursuant to Section 16(a) of the Federal Arbitration Act (the "FAA"), the portion of the Allocation Protocol Order and Allocation Opinion in which the Bankruptcy Court denied the Joint Administrators' motion to compel arbitration is appealable as of right.  9 U.S.C. § 16(a).  In addition, the Joint Administrators have filed a motion seeking leave to appeal from the interlocutory portions of the Allocation Protocol Order and Allocation Opinion pursuant to which the Bankruptcy Court ordered that the allocation dispute should be decided through joint pleadings, discovery, hearings and trial before the U.S. Court and the Ontario Superior Court of Justice–Commercial List. (Joint Administrators' Motion for Leave to Appeal From Order Approving Allocation Protocol, the "Motion for Leave," D.I. 10167.)

The Joint Administrators submit this Rule 8006 Statement with respect to their appeal as of right and, provisionally, with respect to their appeal from the interlocutory provisions of the Allocation Protocol Order and Allocation Opinion, and reserve the right to amend or supplement this Rule 8006 Statement or otherwise designate additional items to be included in the record on appeal upon grant of the Motion for Leave. Upon grant of the Motion for Leave, the Joint Administrators intend to seek to have the appeals from both portions of the Allocation Protocol Order and Allocation Opinion consolidated and addressed on a single, expedited track.

01:13577056.1

## STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

1.      Whether the Bankruptcy Court erred in holding that the agreement pursuant to which the Nortel debtors committed to sell the global Nortel businesses does not contain a binding agreement to arbitrate disputes about how to allocate the proceeds of those sales and that the parties instead agreed to submit allocation disputes to be heard jointly by the Bankruptcy Court and the Ontario Superior Court of Justice.

2.      Whether the Bankruptcy Court erred by failing to specifically enforce the Nortel debtors' duty to negotiate a binding arbitration protocol where the parties had agreed to arbitration and to all other material terms.

## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD

Pursuant to Bankruptcy Rule 8006, the Joint Administrators designate the listed items for inclusion in the record of their appeal from the Allocation Protocol Order and Allocation Opinion.

*In re Nortel Networks, Inc., et al.*, Bankr. No. 09-10138 (KG)

| Date | Docket No.[4] | Description |
|------|-----------|-------------|
| 01/15/2009 | 54 | Order Approving Cross-Border Court-to-Court Protocol |
| 06/29/2009 | 990 | Order Approving Stipulation of the Debtors and the Official Comm. Of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol |
| 06/29/2009 | 993 | Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief |
| 07/08/2009 | 1042 | Transcript regarding Hearing Held 6/29/2009 |
| 04/25/2011 | 5307 | Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement and for Related Relief |

---

4.   All referenced docket numbers shall be inclusive of the exhibits thereto.

01:13577056.1

| 04/25/2011 | 5308 | Declaration of Inna Rozenberg in Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement and for Related Relief |
| 05/19/2011 | 5444 | Joint Administrators' (I) Objection to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (II) Cross Motion to Compel Arbitration |
| 05/31/2011 | 5531 | Memorandum of Law in Support of Joint Administrators' (I) Objection to Joint Motion for Entry for an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (II) Cross-Motion to Compel Arbitration |
| 05/31/2011 | 5532 | Declaration of Kevin Francis Lloyd in Opposition to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and in Support of Cross-Motion to Compel Arbitration |
| 06/02/2011 | 5563 | Notice Pursuant to Section 12(d) of the Cross-Border Protocol of Filing of Motion Record Filed in the Canadian Proceedings to Grant an Order Approving an Allocation Protocol |
| 06/02/2011 | 5571 | Reply Memorandum of Law/Brief of U.S. Debtors and Committee in Further Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, and in Response to the EMEA Debtors' Cross-Motion to Compel Arbitration |
| 06/02/2011 | 5572 | Declaration of Craig B. Brod in Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, and in Response to the EMEA Debtors' Cross-Motion to Compel Arbitration |
| 06/02/2011 | 5573 | Second Declaration of Inna Rozenberg in Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement and for Related Relief, and in Response to the EMEA Debtors' Cross-Motion to Compel Arbitration |
| 06/02/2011 | 5575 | Declaration of Fred S. Hodara in Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief, and in Response to the EMEA Debtors Cross-Motion to Compel Arbitration |
| 06/03/2011 | 5580 | Notice of Filing of 67th Report of the Monitor |
| 06/05/2011 | 5597 | Notice Pursuant to Section 12(d) of the Cross-Border Protocol of Filing of Factum of the Canadian Debtors and Brief of Authorities of the Canadian Debtors Filed in the Canadian Proceedings in Support of Order Approving Allocation Protocol |

| 06/06/2011 | 5604 | Notice Pursuant to Section 12(d) of the Cross-Border Protocol of Filing of Factum of the Monitor and Book of Authorities of the Monitor Filed in the Canadian Proceedings in Support of Order Approving Allocation Protocol |
|---|---|---|
| 06/06/2011 | 5605 | Notice of Filing Pursuant to Section 12(d) of the Cross-Border Insolvency Protocol of Courtesy Copies of Documents Filed in the Canadian Proceedings by the U.S. Debtors and the Committee Related to Motions Made to the Canadian Court for its Approval of an Allocation Protocol |
| 06/06/2011 | 5606 | Exhibit(s) Notice of Filing of Courtesy Copies Pursuant to Section 12(d) of the Cross-Border Insolvency Protocol of Documents Filed in the Canadian Proceedings Filed by Joint Administrators and Foreign Representatives for Nortel Networks UK Limited. (Attachments: # (1) Responding and Cross-Motion Record of the Joint Administrators of Nortel Networks UK Limited and the Companies Listed in Schedule "A" Hereto # (2) Factum of Joint Administrators of Nortel Networks UK Limited and the Companies Listed in Schedule "A" Hereto # (3) Second Affidavit of Tai-Heng Cheng) |
| 06/06/2011 | 5608 | Reply Memorandum of Law in Further Support of the Joint Administrators' Cross-Motion to Compel Arbitration |
| 06/10/2011 | 5643 | Transcript regarding Hearing Held 6/7/11 |
| 03/04/2013 | 9569 | Supplemental Memorandum of Law in Support of Joint Administrators' (I) Objection to the Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (II) Cross-Motion to Compel Arbitration Filed by Joint Administrators and Foreign Representatives for Nortel Networks U.K. Ltd. |
| 03/04/2013 | 9570 | Exhibit(s) Supplemental Submission of U.S. Debtor and Official Committee for Unsecured Creditors on Allocation Protocol Issues |
| 03/04/2013 | 9573 | Notice Pursuant to Section 12(d) of the Cross-Border Protocol of Filing of the Supplementary Submissions of the Monitor and the Canadian Debtors in Respect of the June 7, 2011 Hearing |
| 03/08/2013 | 9617 | Transcript regarding Hearing Held 03/07/2013 |
| 04/01/2013 | 9894 | Transcript regarding Hearing Held 03/27/2013 |
| 04/02/2013 | 9933 | Transcript regarding Telephonic Hearing Held 03/08/2013 |
| 04/03/2013 | 9946 | Opinion |
| 04/03/2013 | 9947 | Order re Allocation Protocol |
| 04/15/2013 | 10133 | Certification of Counsel for the U.S. Debtors Regarding Allocation Protocol |

01:13577056.1

| 04/15/2013 | 10134 | Exhibit(s) Notice of Filing of Monitors Allocation Protocol |
|---|---|---|
| 04/17/2013 | 10166 | Notice of Appeal |
| 04/17/2013 | 10167 | Motion for Leave to Appeal |
| 04/19/2013 | 10210 | Exhibit(s) Debtors Notice of Filing of Proposed Litigation Timetable and Discovery Plan |
| 04/23/2013 | 10224 | Response and Limited Objection to U.S. Debtors Proposed Litigation Table and Discovery Plan |
| 04/26/2013 | 10324 | Transcript regarding Hearing Held 04/24/2013 |
| 05/01/2013 | 10407 | Order Certifying the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit |
| 05/01/2013 | 10414 | Notice of Filing of Items Designated for Record: (Attachments: # (1) Affidavit of Tai-Heng Cheng # (2) The Nortel Mediation Opening Remarks of Chief Justice Warren K. Winkler on April 24, 2012 # (3) Endorsement of Justice Morawetz of the Ontario Superior Court of Justice–Commercial List dated March 8, 2013 # (4) Endorsement of Justice Morawetz of the Ontario Superior Court of Justice–Commercial List dated April 3, 2013 # (5) Amended Notice of Motion for Leave to Appeal # (6) Notice of Motion to Expedite and Consolidate) |

Dated: Wilmington, Delaware
       May 1, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Jaime Luton Chapman
Edwin J. Harron (No. 3396)
John T. Dorsey (No. 2988)
Jaime Luton Chapman (No. 4936)

Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Fax: 302-571-1253

– and –

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Amera Z. Chowhan
Gabrielle Glemann
Charles H. Huberty

One Battery Park Plaza
New York, New York 10004
Telephone: 212-837-6000
Fax: 212-422-4726

– and –

HERBERT SMITH FREEHILLS LLP

Kevin Lloyd
John Whiteoak
Richard Lawton

Exchange House
Primrose Street
London EC2A 2HS

*Counsel for Joint Administrators*

01:13577056.1

7

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
|   |   |   |
|---|---|---|
|   | : | Chapter 11 |
|   | : |   |
| *In re* | : | Case No. 09-10138 (KG) |
|   | : |   |
| Nortel Networks Inc., *et al.*,[1] | : | Jointly Administered |
|   | : |   |
| Debtors. | : | **Re: D.I. 9946, 9947, 10167** |
-------------------------------------------------------X

## JOINT OPPOSITION TO THE JOINT ADMINISTRATORS' MOTION FOR LEAVE TO APPEAL FROM ORDER APPROVING ALLOCATION PROTOCOL

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Debtors and Debtors in Possession*

*Counsel for the Official Committee of Unsecured Creditors*

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ............................................................................................. ii

Nature and Stage of Proceedings ....................................................................... 1

Summary of Argument ........................................................................................ 2

Statement of Facts ............................................................................................... 4

Argument ............................................................................................................. 9

I.     THE JAs CANNOT MEET THE STANDARDS FOR INTERLOCUTORY
       APPEAL UNDER 28 U.S.C. § 1292(b) OR ESTABLISH
       EXCEPTIONAL CIRCUMSTANCES ............................................... 9

       A.     The Interlocutory Order Did Not Involve A Controlling
              Question Of Law ..................................................................... 10

       B.     There Is No Substantial Ground For Difference Of Opinion
              As To The Controlling Question Of Law................................. 12

       C.     An Immediate Appeal From The Interlocutory Order Would Not
              Materially Advance The Ultimate Termination Of This Litigation ........... 16

       D.     Even If The § 1292(b) Requirements Were Met,
              The JAs Cannot Demonstrate Exceptional Circumstances
              Justifying Interlocutory Appeal .............................................. 18

II.    THIS COURT SHOULD NOT EXERCISE PENDENT JURISDICTION
       OVER THE OTHERWISE UNAPPEALABLE ORDER
       APPROVING THE ALLOCATION PROTOCOL ............................. 19

Conclusion ........................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Rules and Statutes**

11 U.S.C. § 105(a) ............................................................................................. 11

28 U.S.C. § 1292(b) ............................................................................................ 9

Fed. R. Bankr. P. 9014(e) ................................................................................. 11

**Cases**

*Aluminium Bahr. B.S.C. v. Dahdaleh*,
Civ. No. 8-299, 2012 U.S. Dist. LEXIS 153457 (W.D. Pa. Oct. 25, 2012)...................... 10

*AMC Investors LLC v. Eugenia VI Venture Holdings Ltd.*,
Civil Nos. 11-592 (NLH), 11-593 (NLH), 2012 U.S. Dist. LEXIS 34677 (D. Del. Mar.
14, 2012)........................................................................................................... 10

*Augustin v. New Century Liquidating Trust (In re New Century Holdings, Inc.)*,
Bk. No. 07-10416 (KJC), Civ. No. 09-378-SLR, 2010 WL 1170354 (D. Del. Mar. 24,
2010) ................................................................................................................ 19

*Borden Co. v. Sylk*,
410 F.2d 843 (3d Cir. 1969) .............................................................................. 18

*Bowie Produce Co. v. Magic Am. Cafe, Inc. (In re Magic Rests., Inc.)*,
202 B.R. 24 (D. Del. 1996) ................................................................................ 12

*Brown v. City of Pittsburgh*,
586 F.3d 263 (3d Cir. 2009) .............................................................................. 20

*Brown v. Trueblue, Inc.*,
Civil Action No. 1:10-CV-0514, 2012 U.S. Dist. LEXIS 52811
(M.D. Pa. Apr. 16, 2012).................................................................................... 17

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978)........................................................................................... 18

*DeLalla v. Hanover Ins.*,
Civil No. 09-2340 (RBK/JS), 2010 U.S. Dist. LEXIS 104323 (D.N.J. Sept. 30, 2010)..... 18

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
269 F.3d 187 (3d Cir. 2001) .............................................................................. 20

*Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC (In re Los Angeles
Dodgers LLC)*,
465 B.R. 18 (D. Del. 2011) ................................................................................ 10

ii

|  | Page(s) |
|---|---|
| *Haberern v. Lehigh & New England Ry. Co.*,<br>554 F.2d 581 (3d Cir. 1977) ...................................... | 19 |
| *Hall v. Wyeth, Inc.*,<br>Civil Action No. 10-738, 2010 U.S. Dist. LEXIS 128168 (E.D. Pa. Dec. 2, 2010) .......... | 10 |
| *Hulmes v. Honda Motor Co.*,<br>936 F. Supp. 195 (D.N.J. 1996) .................................. | 18-19 |
| *In re AbitibiBowater Inc.*,<br>Case No. 09-11296 (KJC), ECF No. 760 (Bankr. D. Del. July 27, 2009) ........ | 13 |
| *In re Archibald Candy Corp., et al.*,<br>No. 04-B-03200, ECF No. 497 (Bankr. N.D. Ill. June 24, 2004) .................. | 14 |
| *In re Barzel Indus. Inc.*,<br>Case No. 09-13204 (CSS), ECF No. 55 (Bankr. D. Del. Sept. 17, 2009) ........ | 13 |
| *In re Blackwell ex rel. Estate of I.G. Servs., Ltd.*,<br>244 B.R. 377 (Bankr. W.D. Tex. 2000) ...................... | 14 |
| *In re Blackwell ex rel. Estate of I.G. Servs., Ltd.*,<br>267 B.R. 741 (Bankr. W.D. Tex. 2001) ...................... | 14, 15 |
| *In re Circuit City Stores, Inc., et al.*,<br>No. 08-35653, ECF No. 7455 (Bankr. E.D. Va. May 7, 2010) .................. | 14 |
| *In re Del. & Hudson Ry. Co.*,<br>96 B.R. 469 (D. Del. 1989) ...................................... | 9 |
| *In re Financial Asset Mgmt. Found.*,<br>No. 01-03640, ECF No. 58 (Bankr. S.D. Cal. July 25, 2001) .................. | 14 |
| *In re Frascella Enters.*,<br>Miscellaneous Action No. 08-100, 2008 U.S. Dist. LEXIS 68279<br>(E.D. Pa. Sept. 10, 2008) .......................................... | 12 |
| *In re Inverworld, Inc.*,<br>No. 99-53169-cag (Bankr. W.D. Tex. Oct. 22, 2009) .................... | 14 |
| *In re Laidlaw Inc.*,<br>No. 01-14099, ECF No. 164 (Bankr. W.D.N.Y. Aug. 20, 2001) .................. | 13 |
| *In re Lancelot Investors Fund L.P., et al.*,<br>No. 08-28225, ECF No. 279 (Bankr. N.D. Ill. Sept. 8, 2009) .................. | 14 |

1522

**Page(s)**

*In re Manhattan Inv. Fund Ltd.*,
No. 00-10922 (BRL), ECF No. 77 (Bankr. S.D.N.Y. May 31, 2000) ............................... 13

*In re Mosaic Group, Inc.*,
No. 02-81440, ECF No. 124 (Bankr. N.D. Tex. Jan. 10, 2003) ......................................... 14

*In re Pioneer Cos.*,
No. 01-38259, ECF No. 29 (Bankr. S.D. Tex. Aug. 1, 2001) ............................................ 14

*In re Quebecor World (USA) Inc.*,
No. 08-10152 (JMP), ECF No. 528 (Bankr. S.D.N.Y. Apr. 9, 2008) ............................... 13

*In re Smurfit-Stone Container Corp.*,
Case No. 09-10235 (BLS), 2010 Bankr. LEXIS 5407 (Bankr. D. Del. June 21, 2010) ..... 13

*In re Solv-Ex Canada Ltd.*,
No. 97-14361, ECF No. 255 (Bankr. D.N.M. Feb. 4, 1998) ............................................. 14

*Invista S.A.R.L. v. Rhodia, S.A.*,
625 F.3d 75 (3d Cir. 2010) ............................................................................................... 19

*Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*,
Civil Action No. 2:10–cv–05108 (DMC) (JAD), 2011 U.S. Dist. LEXIS 16533
(D.N.J. Feb. 17, 2011) ...................................................................................................... 18

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974) .............................................................................................. 9

*Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*,
451 B.R. 343 (D. Del. 2011) ................................................................................... 9, 10-11

*Maxwell Commc'n Corp. plc, Homan v. Societe Generale (In re Maxwell
Commc'n Corp. plc)*,
93 F.3d 1036, (2d Cir. 1996) ............................................................................................ 14

*Neuner v. C.G. Realty Capital Ventures-1, L.P. (In re Sharps Run Assocs., L.P.)*,
157 B.R. 766 (D.N.J. 1993) .............................................................................................. 12

*Patrick v. Dell Fin. Servs.*,
366 B.R. 378 (M.D. Pa. 2007) .................................................................................... 16, 18

*Pikes Peak Family Housing, LLC v. United States*,
40 Fed. Cl. 673 (Fed. Cl. 1998) ........................................................................................ 12

*Pollock & Riley, Inc. v. Pearl Brewing Co.*,
498 F.2d 1240 (5th Cir. 1974) .......................................................................................... 19

iv

**Page(s)**

*Resolution Trust Corp. v. Cityfed Fin. Corp.*,
57 F.3d 1231 (3d Cir. 1995) ........................................................................    11

*Samson Res. Co. v. ConocoPhillips Co. (In re SemCrude, L.P.)*,
Civ. No. 10-447-SLR, 2010 U.S. Dist. LEXIS 136391 (D. Del. Oct. 26, 2010) ..............   10, 18

*Simon & Schuster, Inc. v. Advanced Mktg. Servs., Inc. (In re Advanced Mktg.
Servs., Inc.)*,
Case No. 06-11480-CSS, 2008 U.S. Dist. LEXIS 27582 (D. Del. Apr. 3, 2008) ..............    12

*Stonington Partners Inc. v. Lernout & Hauspie Prods. N.V.*,
310 F. 3d 118 (3d Cir. 2002) ........................................................................   14-15

*Tischio v. Bontex, Inc.*,
16 F.Supp.2d 511 (D.N.J. 1998) ....................................................................    19

*Turi v. Main St. Adoption Servs., LLP*,
633 F.3d 496 (6th Cir. 2011) ........................................................................    20

*Victor v. Edison Bros. Stores, Inc. (In re Edison Bros. Stores, Inc.)*,
Civil Action No. 96-177-SLR, 1996 U.S. Dist. LEXIS 9061 (D. Del. June 27, 1996) ......     9

*Zenith Radio Corp. v. Matsushita Elec. Indus. (In re Japanese Elec. Prods.
Antitrust Litig.)*,
494 F. Supp. 1190 (E.D. Pa. 1980) ...............................................................    12

**Other Authorities**

16 Charles Alan Wright, Arthur R. Miller, et al., FEDERAL PRACTICE AND PROCEDURE §
3930 (3d ed. 2012) ......................................................................................   11, 18

American Law Institute's *Guidelines Applicable to Court-to-Court Communications in
Cross-Border Cases* ....................................................................................    15

Elizabeth Warren & Jay L. Westbrook, *Court-to-Court Negotiation*, 22-NOV Am. Bankr.
Inst. J. 28 (2003) ........................................................................................   13, 14

Nortel Networks Inc. and its affiliated debtors, as respective debtors and debtors in possession ("Debtors" or "US Debtors"), together with the Official Committee of Unsecured Creditors ("Committee"), hereby respectfully oppose the Motion for Leave to Appeal From Order Approving Allocation Protocol ("Motion") [D.I. 10167].

**Nature and Stage of Proceedings**

This Motion arises out of the Debtors' chapter 11 proceedings, which have been pending before the Delaware Bankruptcy Court ("Bankruptcy Court" or "US Court") since January 14, 2009 ("Petition Date"). The Debtors were part of a multinational group of over 140 separate companies known collectively as Nortel. On the Petition Date, in addition to the US filings, insolvency proceedings were filed in each of the United Kingdom and Canada for related entities. Partners of Ernst & Young LLC were appointed as the Joint Administrators ("JAs") of the Nortel companies in Europe.

The Nortel group liquidated over the past several years, leaving approximately $7.5 billion in sale proceeds to be allocated among the separate Nortel entities around the world. The Motion relates to the process by which those sale proceeds must be allocated and the related process to address billions of dollars of claims filed against the US Debtors by the JAs ("EMEA Claims") and by certain entities asserting claims relating to a UK pension fund established by a UK Nortel entity now under the control of the JAs ("UK Pension Claims," and with EMEA Claims, "Claims").

The governing agreement that allowed the sale of the Nortel businesses, the Interim Funding and Settlement Agreement ("IFSA"), was approved by the US Court and Ontario Superior Court of Justice ("Canadian Court," and together with the US Court, the "Courts")

pursuant to separate orders on June 29, 2009.  The JAs participated in the negotiation of the IFSA and signed it.

The various parties to the IFSA attempted to agree to an allocation of the sale proceeds multiple times but failed.  In June 2011, the US Debtors and the Committee asked the Courts to hold a joint hearing to allocate the sale proceeds.  The JAs opposed that request, arguing that the IFSA required arbitration on the issue of allocation.  All other parties to the IFSA disagreed. Pending their decisions, the Courts instructed the parties to mediate once again.  This mediation also failed, leading to the Courts issuing opinions in April 2013 denying the JAs' request to compel arbitration and granting the requests that the allocation dispute and claims proceed to trial.

The JAs filed a notice of appeal of the Bankruptcy Court's decision denying the arbitration cross-motion.  The Bankruptcy Court certified that appeal to the Third Circuit under 28 U.S.C. § 158(d)(2) on May 1, 2013.

This Motion relates to another portion of the Bankruptcy Court decision and order, which directed that the parties submit for approval a protocol setting forth certain procedures for conducting hearings relating to allocation and the Claims.  No protocol has yet been approved. Nevertheless, the JAs ask that this Court grant leave to appeal this interlocutory order.  The US Debtors and the Committee hereby oppose that relief.

**<u>Summary of Argument</u>**

1.      Interlocutory appeals are only permitted where the moving party presents a controlling question of law as to which there is a substantial ground for a difference of opinion, demonstrates that an immediate appeal from the order will materially advance the ultimate

termination of the litigation, and makes a showing of exceptional circumstances. None of these stringent requirements – much less each and every one of them – is met here.

2. <u>First</u>, as the JAs effectively concede in their papers, the question of whether the Courts can "co-adjudicate a proceeding" while respecting each courts' independence and due process rights is not a controlling question of law. Even if it were, it is not the type of controlling question of law referenced in the case law and requires a fact-intensive review of a record that does not yet exist.

3. <u>Second</u>, the Motion does not invoke any question where there is substantial ground for difference of opinion. The JAs assert that "whether separate courts of two sovereign nations can co-adjudicate a proceeding" is novel and highly complex. Motion at 4, 14. Even were novelty sufficient, this issue is not novel in cross-border bankruptcies or in these very cases. Cross-border insolvency procedures are commonplace in this era of global companies and insolvencies. Here, a cross-border protocol, which provides for the coordination between the US and Canadian Courts, has been in place since January 15, 2009. Moreover, the JAs repeatedly agreed, in the IFSA and in eight Escrow Agreements pertaining to eight asset sales conducted under the direction of both Courts, that disputes "*must be commenced in* . . . a joint hearing of both the Canadian and US Courts . . ." IFSA § 16(b)(ii) (emphasis added).

4. <u>Third</u>, the immediate appeal would not materially advance the litigation or avoid time and expense. Instead, it would have the opposite effect by potentially invalidating practical and logistical efficiencies that are saving the parties – and their creditors – time and money and it would increase the likelihood of successive appeals.

5.      Finally, the JAs provide no reason why this case presents "exceptional circumstances" that would justify departing from the ordinary rule disfavoring interlocutory appeals because there are none.

6.      The JAs' alternative argument – that the Court should exercise pendent jurisdiction to hear the JAs' appeal from the interlocutory portions of the Allocation Protocol Order in tandem with their appeal as of right from the denial of their motion to compel arbitration – also fails.  The issue on the appeal from the denial of the motion to compel arbitration is only whether an arbitration agreement exists between the parties; it does not concern the propriety of procedures that will be followed in the US Court in the event that (as both Courts properly found) there is no agreement to arbitrate.

7.      The Motion is also premature.  No allocation protocol has been entered and, if entered, it would be nothing more than a procedural framework that requires further procedures to be established.  Thus, there simply is nothing to yet appeal.  No decision has been made and no rights have been prejudiced.  Moreover, even if there were something to appeal, it is nothing more than an interim procedural decision, which does not meet the high criteria to justify an immediate appeal.

## **Statement of Facts**

On the Petition Date, the US Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions under chapter 11.  Also on the Petition Date, the US Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the US

---

[2]      Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009 [D.I. 1098].

1528

Debtors, "Nortel"), and certain of their Canadian affiliates (the "Canadian Debtors")[3] commenced a proceeding with the Canadian Court under the Companies' Creditors Arrangement Act (Canada) ("CCAA"), seeking relief from their creditors ("Canadian Proceedings") and a Monitor, Ernst & Young Inc., was appointed by the Canadian Court.  Similarly, on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, "EMEA Debtors")[4] into administration under the control of the JAs.

The Bankruptcy Court approved the Court-to-Court Protocol on January 15, 2009,[5] and the Canadian Court approved the Court-to-Court Protocol on the Petition Date, which was later amended by order of the Bankruptcy Court on June 29, 2009[6] and by an order of the Canadian Court on that same date (as amended, "Cross-Border Protocol").  The Cross-Border Protocol explicitly provided that the "approval and implementation of this Protocol shall not divest nor diminish the Courts' respective independent jurisdiction over the subject matter of the US Proceedings and the Canadian Proceedings, respectively."  *Id.* ¶ 7.

On or about June 9, 2009, the US Debtors, the Canadian Debtors and the EMEA Debtors, excluding Nortel Networks S.A. and Nortel Networks AG, entered into the IFSA.[7]  Among other things, the parties to the IFSA agreed not to condition the execution of any sale agreement upon

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited ("NNUK"), Nortel Networks S.A. ("NNSA"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[5]      *Order Approving Cross-Border Court-to-Court Protocol*, Jan. 15, 2009 [D.I. 54].

[6]      *Order Approving Stipulation of the Debtors and the Official Comm. of Unsecured Creditors of Nortel Networks Inc., et. al., Amending the Cross-Border Court-to-Court Protocol*, June 29, 2009 [D.I. 990].

[7]      Nortel Networks S.A. and Nortel Networks AG acceded to the IFSA as EMEA Debtors – each agreeing "to perform and comply with its obligations under the IFSA as if it had been a party from the date of execution thereof" – on or about September 11, 2009.  *Accession and Amendment Agreement relating to the Interim Funding Settlement Agreement,* Sept. 11, 2009.

1529

reaching agreement regarding the allocation (or a binding procedure for allocation) of the

ultimate sale proceeds.  IFSA § 12(a).  The IFSA instead provides that all sale proceeds shall be

held in escrow accounts (each, an "Escrow Account"), and shall not be distributed

> in advance of either (i) agreement of all of the Selling Debtors or (ii) in the case
> where the Selling Debtors fail to reach agreement, determination by the relevant
> dispute resolver(s) under the terms of the [Interim Sales] Protocol (as defined
> below) applicable to the Sale Proceeds, and subject in each case to payment of the
> agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

Id. § 12(b).  Specifically, all parties, including the JAs, on behalf of the EMEA Debtors,

"agree[d] that any claim, action or proceeding . . . seeking any relief whatsoever to the extent

relating to the matters [in the IFSA] *must be commenced in . . . a joint hearing of both the*

*Canadian and US Courts conducted under the Cross-Border Protocol. . . ."  Id.* § 16(b)(ii)

(emphasis added).

Subsequent to the IFSA, numerous sales were held (collectively, "Sale Transactions")

raising approximately $7.5 billion in sale proceeds.[8]  In connection with each of these Sale

Transactions, the US Debtors, Canadian Debtors and EMEA Debtors all agreed to submit to the

joint jurisdiction of the Courts under the separate escrow agreements for each sale.  These

agreements provide that the parties submit to the "exclusive jurisdiction" of the Courts for all

disputes "arising under or out of, in respect of, or in connection with" the escrow agreements.[9]

---

[8]      The sale orders appear on the Bankruptcy Court docket at D.I. 539, D.I. 1205, D.I. 1514, D.I. 1760, D.I. 2070, D.I. 2065, D.I. 2632, D.I. 4054, and D.I. 5935.

[9]      MEN Distribution Escrow Agreement, dated as of Mar. 19, 2010, ¶ 21; *see also* Escrow Agreement, dated as of Mar. 2009, ¶ 20; Escrow Agreement, dated as of Nov. 11, 2009, ¶ 21; Escrow Agreement, dated as of Dec. 1, 2009, ¶ 20; Escrow Agreement, dated as of Dec. 18, 2009, ¶ 21; GSM/GSM-R Distribution Escrow Agreement, dated as of Mar. 31, 2010, ¶ 21; CVAS Distribution Escrow Agreement, dated as of May 27, 2010, ¶ 20; GSM Retained Contracts Distribution Escrow Agreement, dated as of June 3, 2010, ¶ 20; MSS Distribution Escrow Agreement, dated as of Mar. 11, 2011, ¶ 20 (together, the "Escrow Agreements").  The limited exception is the jurisdictional provision in the first Escrow Agreement, executed in March of 2009, which provided for exclusive jurisdiction only in the Bankruptcy Court.  However, that agreement is otherwise substantively consistent with jurisdictional provisions in the other Escrow Agreements.  *See* Escrow Agreement, dated as of Mar. 2009, ¶ 20.

6

On April 3, 2013, the Bankruptcy Court issued an opinion regarding the Motion and Cross-Motion [D.I. 9946] ("Opinion") finding that "the Nortel Parties did not agree to arbitrate" the allocation dispute and the "Court has jurisdiction and the IFSA [calls] for the submission of an allocation protocol."  Opinion at 15.   That same day, the Bankruptcy Court issued an order granting the Allocation Protocol Motion, denying the Cross-Motion to Compel Arbitration, requesting submissions of an allocation protocol, and setting a trial to determine the allocation of the sales proceeds to commence on January 6, 2014 [D.I. 9947] ("Order").  The Order required the parties to submit to the Court their proposed versions of an allocation protocol on or before April 15, 2013, which the parties did.

The following pleadings (among others) were filed in connection with the briefing that led to the Opinion and Order:

- On April 25, 2011, the Debtors and Committee filed the *Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief* [D.I. 5307] (the "Allocation Protocol Motion").

- On May 19, 2011, the JAs filed the *(I) Objection to Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and (II) Cross-Motion to Compel Arbitration* [D.I. 5444] (the "Cross-Motion to Compel Arbitration").

- On June 3, 2011, the JAs, on behalf of the EMEA Debtors and certain other EMEA entities, filed the EMEA Claims.  The claims are unliquidated in amount, but clearly total in the billions of dollars.

- On June 7, 2011, the Bankruptcy Court heard oral argument on the Motion and Cross-Motion but reserved decision while the parties returned to mediation, which was ultimately unsuccessful.

- On March 7, 2013, the Courts heard further oral argument on the Motion and Cross-Motion.

On April 16, 2013, the Court issued an order [D.I. 10145] scheduling a joint hearing with the Canadian Court on April 24, 2013 to "resolve scheduling and discovery issues and to

consider Litigation Timetables and Discovery Plans" that relate to the allocation dispute, EMEA Claims, and UK Pension Claims.

On April 17, 2013, the JAs filed a *Notice of Appeal* [D.I. 10166] (the "Joint Administrators' Appeal") regarding the denial of their Cross-Motion to Compel Arbitration and the present Motion.

On April 23, 2013, the Debtors and the Committee filed a *Joint Request for Certification of the Joint Administrators' Notice of Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2)* [D.I. 10244] ("Certification Motion"). The JAs filed a joinder in part and response to the Certification Motion on April 29, 2013 [D.I. 10367].

On April 23, 2013, the Debtors and the Committee filed a *Joint Motion for an Order Retaining Jurisdiction Pending Appeal* [D.I. 10246] ("Jurisdiction Motion"). The JAs filed an objection to the Jurisdiction Motion and cross-motion to confirm the stay pending appeal on April 29, 2013 [D.I. 10368] ("Objection to Jurisdiction Motion").

On April 24, 2013, a joint hearing was held to resolve scheduling and discovery issues. There, the JAs argued that the Bankruptcy Court lacked jurisdiction. The Bankruptcy Court concluded that the hearing should proceed "in the interest of justice," Hr'g Tr. 35:8-9 (Apr. 24, 2013), and scheduled a hearing for Wednesday, May 1, 2013 to address the Certification and Jurisdiction Motions. *Notice of Hearing* [D.I. 10288]. On May 1, 2013, the Bankruptcy Court granted the Certification Motion and reserved decision on the Jurisdiction Motion.

1532

## Argument

I. **THE JAs CANNOT MEET THE STANDARDS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) OR ESTABLISH EXCEPTIONAL CIRCUMSTANCES**

Interlocutory orders from a bankruptcy court are appealable to the district court with leave of court pursuant to 28 U.S.C. § 158(a)(3). Although § 158 does not specify the standard for determining appealability, courts have adopted by reference the standard for interlocutory appeal from district court orders set forth in 28 U.S.C. § 1292(b). *See In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989); *Victor v. Edison Bros. Stores, Inc. (In re Edison Bros. Stores, Inc.)*, Civil Action No. 96-177-SLR, 1996 U.S. Dist. LEXIS 9061, at *9 (D. Del. June 27, 1996). Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal only if the moving party establishes that the order "[1] involves a controlling question of law [2] as to which there is substantial ground for a difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

Even if the movant satisfies these elements, however, a court should deny leave where it "does not find any circumstance or reason that distinguishes the case from the procedural norm and establishes the need for immediate review." *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 451 B.R. 343, 349 (D. Del. 2011). The party seeking leave to appeal must establish that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *Id.* at 346 (internal quotation marks omitted); *see also, Katz*, 496 F.2d at 764 (noting the policy consideration of avoiding "piecemeal review and its attendant delays and waste of time" in drafting §1292(b)). The JAs have not met their burden to justify this exceptional relief.

9

## A.    The Interlocutory Order Did Not Involve A Controlling Question Of Law

The issue raised by the JAs – whether the Courts "can co-adjudicate a proceeding, each purporting to act under its own substantive and procedural rules, while maintaining each court's sovereignty and independence and observing the due process rights of the parties," Motion at 4, – is not a controlling question of law under § 1292(b).

A controlling question of law is one which (1) if decided erroneously, would lead to reversal on appeal, or (2) is "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 F.2d at 755.   The JAs simply cannot meet the controlling question of law standard. There is no discrete legal issue that can be resolved. *Cf. Fox Sports Net West 2, LLC v. Los Angeles Dodgers LLC (In re Los Angeles Dodgers LLC)*, 465 B.R. 18, 29 (D. Del. 2011) (enforceability of a no shop provision was controlling question of law); *Aluminium Bahr. B.S.C. v. Dahdaleh*, Civ. No. 8-299, 2012 U.S. Dist. LEXIS 153457, at *12 (W.D. Pa. Oct. 25, 2012) (whether state's long-arm statue permitted exercise of personal jurisdiction over non-residents was controlling question of law); *Hall v. Wyeth, Inc.*, Civil Action No. 10-738, 2010 U.S. Dist. LEXIS 128168, at *7 (E.D. Pa. Dec. 2, 2010) (preemption of state law granting immunity was controlling question of law).   In contrast, where an issue is fact-sensitive it generally does not present a controlling question of law.  *Cf. Samson Res. Co. v. ConocoPhillips Co. (In re SemCrude, L.P.)*, Civ. No. 10-447-SLR, 2010 U.S. Dist. LEXIS 136391, at *12 (D. Del. Oct. 26, 2010) (no controlling question of law "because the bankruptcy court's [order] was based on its finding that it had related to jurisdiction, which is a fact-intensive inquiry");  *AMC Investors LLC v. Eugenia VI Venture Holdings Ltd.*, Civil Nos. 11-592 (NLH), 11-593 (NLH), 2012 U.S. Dist. LEXIS 34677, at *7-8 (D. Del. Mar. 14, 2012) (no interlocutory appeal where bankruptcy court's decision was based on case law and the facts specific to the case); *Mata*, 451 B.R. at 347 (no

10

controlling issue of law where court would have to engage in a "detailed study of the facts and the record to ultimately determine the outcome of the appeal"); *Resolution Trust Corp. v. Cityfed Fin. Corp.*, 57 F.3d 1231, 1236 n.6 (3d Cir. 1995) (issue not ripe for interlocutory appeal given its "fact-intensive nature"); 16 Charles Alan Wright, Arthur R. Miller, et al., FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed. 2012) [hereinafter Wright & Miller, FEDERAL PRACTICE AND PROCEDURE] ("There is indeed no reason to suppose that interlocutory appeals are to be certified for the purpose of inflicting upon courts of appeals an unaccustomed and ill-suited role as factfinders.").

The issue the JAs have presented is not a controlling question of law under § 1292(b), but rather a fact-intensive question that requires a review of a myriad of discretionary decisions, *many of which the Bankruptcy Court has not yet made*. To illustrate, whether or not any allocation process is improper such that it exceeds the Bankruptcy Court's broad authority to fashion remedies[10] or violates due process or "U.S. procedural law," *see* Motion at 14, will turn only on the actual procedures adopted and application of those procedures during litigation.

To date, no final allocation protocol, discovery procedures or related discovery schedule has been ordered. Instead, the JAs concede that "[t]he precise rules of procedure, rules of evidence and constitutional principles that will apply in these various phrases of the proceedings *are not specified* in the Allocation Protocol," Motion at 10-11 (emphasis added), and only assert that the Order "*threatens* to compromise [the Bankruptcy Court's] independence, sovereignty and the due process rights of the litigants," *Id.* at 13 (emphasis added), and "*may* result" in a breach of their rights. *Id.* at 14 (emphasis added).

---

[10]       A bankruptcy judge generally has broad discretion to fashion appropriate procedure in his or her Court. *See, e.g.*, 11 U.S.C. § 105(a); Fed. R. Bankr. P. 9014(e).

The Court need go no further and may deny their premature appeal given the lack of a controlling question of law. *Pikes Peak Family Housing, LLC v. United States*, 40 Fed. Cl. 673, 686 (Fed. Cl. 1998) ("Absent . . . a controlling question of law . . ., the court need not reach the question of whether there are substantial grounds for difference of opinion . . .") (internal quotation marks omitted).

**B.      There Is No Substantial Ground For Difference Of Opinion
          As To The Controlling Question Of Law**

The JAs also cannot show a substantial difference of opinion as required under § 1292(b). The JAs argue that the Allocation Protocol will be both "novel and highly complex" and "unprecedented" and therefore constitutes a substantial grounds for difference of opinion. Motion at 14-15. This argument is both legally unfounded and factually baseless.

First, as a matter of law, "[a] question of first impression [or] a lack of judicial authority on a legal question . . . do[es] not demonstrate a substantial ground for difference of opinion." *Simon & Schuster, Inc. v. Advanced Mktg. Servs., Inc. (In re Advanced Mktg. Servs., Inc.)*, Case No. 06-11480-CSS, 2008 U.S. Dist. LEXIS 27582, at *4 (D. Del. Apr. 3, 2008); *see also Bowie Produce Co. v. Magic Am. Cafe, Inc. (In re Magic Rests., Inc.)*, 202 B.R. 24, 26 (D. Del. 1996) ("[T]he Court concludes that a scarcity or void of judicial opinion alone is insufficient to justify an interlocutory appeal."); *Neuner v. C.G. Realty Capital Ventures-1, L.P. (In re Sharps Run Assocs., L.P.)*, 157 B.R. 766, 779 n.6 (D.N.J. 1993). Although a novel issue or an issue of first impression *may* be relevant to whether a substantial ground for difference of opinion exists, the mere fact that the appeal would present a question of first impression is not, of itself, sufficient to show that the question is one on which there is a substantial ground for difference of opinion; something more is needed. *See In re Frascella Enters.*, Miscellaneous Action No. 08-100, 2008 U.S. Dist. LEXIS 68279, at *7 (E.D. Pa. Sept. 10, 2008).

For example, in *In re Japanese Electronic Products Antitrust Litigation* – the sole case

the JAs cited in support – the court finds that a substantial ground for difference of opinion on

the interpretation of a 1916 statute existed because the challenged order involved an issue of first

impression and the statute had never been interpreted.  *See Zenith Radio Corp. v. Matsushita*

*Elec. Indus. (In re Japanese Elec. Prods. Antitrust Litig.)*, 494 F. Supp. 1190, 1243 (E.D. Pa.

1980).  Here, even if the allocation protocol were an issue of first impression, which it is not, the

JAs point to no additional factors that would lead this Court to hold that the second § 1292(b)

requirement has been met.

<u>Second</u>, as a matter of fact, the allocation protocol in question, which involves a cross-

border insolvency procedure, is not "novel" or "unprecedented," as the JAs assert.  *See* Motion at

3-4.  This is true both generally and in Nortel in particular.  In this age of transnational

businesses, cross-border insolvency procedures are commonplace and widely accepted in

international bankruptcies.  *See* Elizabeth Warren &  Jay L. Westbrook, *Court-to-Court*

*Negotiation*, 22-NOV Am. Bankr. Inst. J. 28, 28 (2003) ("Protocols have become enormously

important in cross-border cases.")  Cross-border insolvency protocols *have been recognized in*

*bankruptcy courts in at least 10 U.S districts*, including in the Bankruptcy Courts for the District

of Delaware,[11] Southern District of New York,[12] Western District of New York,[13] Northern

---

[11]       *See, e.g., In re Barzel Indus. Inc.*, Case No. 09-13204 (CSS), ECF No. 55 (Bankr. D. Del. Sept. 17, 2009)
(order approving cross-border court-to-court protocol); *In re AbitibiBowater Inc.*, Case No. 09-11296 (KJC), ECF
No. 760 (Bankr. D. Del. July 27, 2009) (order approving cross-border court-to-court protocol).  *See also In re
Smurfit-Stone Container Corp.*, Case No. 09-10235 (BLS), 2010 Bankr. LEXIS 5407, at *3 (Bankr. D. Del. June 21,
2010) (confirming a joint plan of reorganization and noting "the [U.S.] Bankruptcy Court and the Canadian
Bankruptcy Court approved the Cross-Border Insolvency Protocol, which facilitates coordination between the
[various proceedings] in order to effectuate an orderly and efficient administration of the Proceedings").

[12]       *See, e.g., In re Quebecor World (USA) Inc.*, No. 08-10152 (JMP), ECF No. 528 (Bankr. S.D.N.Y. Apr. 9,
2008) (order approving cross-border insolvency protocol); *In re Manhattan Inv. Fund Ltd.*, No. 00-10922 (BRL),
ECF No. 77 (Bankr. S.D.N.Y. May 31, 2000) (order approving cross-border protocol).

[13]       *See, e.g., In re Laidlaw Inc.*, No. 01-14099, ECF No. 164 (Bankr. W.D.N.Y. Aug. 20, 2001) (order
approving cross-border insolvency protocol).

District of Texas,[14] Southern District of Texas,[15] Western District of Texas,[16] Northern District

of Illinois,[17] Southern District of California,[18] Eastern District of Virginia,[19] and the District of

New Mexico.[20]  In a landmark pre-chapter 15 case in which the Bankruptcy Court for the

Southern District of New York and the High Court of Justice in London authorized the

coordination of their efforts pursuant to a cross-border protocol, the Second Circuit recognized

that "bankruptcy courts may best be able to effectuate the purposes of the bankruptcy law by

cooperating with foreign courts on a case-by-case basis."  *Maxwell Commc'n Corp. plc, Homan*

*v. Societe Generale (In re Maxwell Commc'n Corp. plc)*, 93 F.3d 1036, 1042, 1053 (2d Cir.

1996).  In a more recent Third Circuit case, although the parties were not able to agree to a

protocol, the court "strongly" recommended that the Delaware and Belgian courts make an effort

to reach agreement as to how to proceed and "urge[d] that . . . communication from one court to

---

[14]     *See, e.g., In re Mosaic Group, Inc.*, No. 02-81440, ECF No. 124 (Bankr. N.D. Tex. Jan. 10, 2003) (order approving cross-border protocol).

[15]     *See, e.g., In re Pioneer Cos.*, No. 01-38259, ECF No. 29 (Bankr. S.D. Tex. Aug. 1, 2001) (interim order approving motion for approval of cross-border insolvency protocol).

[16]     *See, e.g., In re Inverworld, Inc.*, No. 99-53169-cag (Bankr. W.D. Tex. Oct. 22, 2009) (order approving cross-border insolvency protocol); Elizabeth Warren & Jay L. Westbrook, *Court-to-Court Negotiation*, 22-NOV Am. Bankr. Inst. J. 28, 28-29 (2003) (describing favorably the creation of the protocol in *In re Inverworld*, a case "rife with possibilities for extremely expensive litigation in three national courts and for conflicting decisions"). *See also In re Blackwell ex rel. Estate of I.G. Servs., Ltd.*, 267 B.R. 741, 744 (Bankr. W.D. Tex. 2001); *In re Blackwell ex rel. Estate of I.G. Servs., Ltd.*, 244 B.R. 377, 390 n.18 (Bankr. W.D. Tex. 2000) (noting that the approved cross-border insolvency protocol was "designed to resolve potential conflicts, eliminate wasteful jurisdictional battles among courts in three different countries, maximize efficient creditor participation, and minimize administrative expenses").

[17]     *See, e.g., In re Lancelot Investors Fund L.P., et al.*, No. 08-28225, ECF No. 279 (Bankr. N.D. Ill. Sept. 8, 2009) (order approving trustee's motion for cross-border insolvency protocol agreement); *In re Archibald Candy Corp., et al.*, No. 04-B-03200, ECF No. 497 (Bankr. N.D. Ill. June 24, 2004) (order establishing protocol for cross-border joint hearings).

[18]     *See, e.g., In re Financial Asset Mgmt. Found.*, No. 01-03640, ECF No. 58 (Bankr. S.D. Cal. July 25, 2001) (order approving cross-border insolvency stipulation).

[19]     *See, e.g., In re Circuit City Stores, Inc., et al.*, No. 08-35653, ECF No. 7455 (Bankr. E.D. Va. May 7, 2010) (order approving debtors' motion for entry of an order implementing a procedural protocol for the administration of cross-border insolvency proceedings).

[20]     *See, e.g., In re Solv-Ex Canada Ltd.*, No. 97-14361, ECF No. 255 (Bankr. D.N.M. Feb. 4, 1998) (order granting motion for approval of cross-border insolvency protocol and bringing into effect the terms of the cross-border insolvency protocol).

the other regarding cooperation or the drafting of a protocol could be advantageous to the orderly administration of justice." *Stonington Partners Inc. v. Lernout & Hauspie Prods. N.V.*, 310 F. 3d 118, 133 (3d Cir. 2002) (citing *In re Maxwell* as a "good example"). Indeed, both the United States and Canada are parties to the UNCITRAL Model Law on Cross-Border Insolvency, and more than 30 cross-border insolvency protocols have been implemented in proceedings taking place concurrently in the two countries.

In these cases, the Cross-Border Protocol has been in place since the start. This Protocol specifically states one of its goals is to "honor the independence and integrity of the Courts and other courts and tribunals of the United States and Canada, respectively." Cross-Border Protocol ¶6(c). The Cross-Border Protocol confirmed such proceedings could not infringe on the sovereignty and independence of the two Courts. *See* Motion at 6 (citing Cross-Border Protocol ¶¶ 7, 8, 12(f)). At the same time, the Cross-Border Protocol allows the US and Canadian courts to "communicate with one another . . . with respect to any procedural matter relating to the Insolvency Proceedings," to "coordinate activities," and to "conduct joint hearings" with specific, listed procedures to be followed. Cross-Border Protocol ¶12(a), (c), (d). The protocol also incorporates the American Law Institute's *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases*. Cross-Border Protocol at Schedule A.

With regard to the JAs' new concern about due process, at least one case has recognized that the task of the bankruptcy court operating under a cross-border protocol is "to determine what due process rules apply, then to assure that . . . the Protocol comports with those due process rules." *In re Blackwell ex rel. Estate of I.G. Servs., Ltd.*, 267 B.R. 741, 754 (Bankr. W.D. Tex. 2001) (following the UNCITRAL Model Law in a case involving a cross-border insolvency protocol signed by district court, bankruptcy court and Grand Cayman court).

15

Moreover, the JAs have repeatedly agreed to the joint jurisdiction of the Courts and participated in joint proceedings between the Courts.  For instance, the JAs agreed to submit the EMEA Debtors to the jurisdiction of the Courts in the IFSA and in eight Escrow Agreements pertaining to eight sales that were conducted under the auspices of the US Court and the Canadian Court.  *See, supra* n.9.  In fact, the JAs specifically agreed that any disputes relating to matters under the IFSA that would affect both the US and Canadian Debtors "*must be commenced . . . in a joint hearing of both the Canadian and US Courts conducted under the Cross-Border Protocol*" – acceding to the same procedures they now describe as "novel" and "unprecedented" and complain are inherently flawed.  *See* IFSA § 16(b) (emphasis added).[21] Only after having reaped the benefits of all of these sales have the JAs begun to complain about the purportedly "unprecedented" and "novel" issues surrounding the joint resolution of issues.  This about-face litigation position must be rejected.

**C.     An Immediate Appeal From The Interlocutory Order Would Not Materially Advance The Ultimate Termination Of This Litigation**

The JAs also have failed to establish the third requirement of § 1292(b) —that resolution of the interlocutory appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  Factors relevant to this prong of the test include "(1) whether the need for trial would be eliminated; (2) whether the trial would be simplified by the elimination of complex issues; and (3) whether discovery could be conducted more expeditiously and at less expense to the parties."  *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 387 (M.D. Pa. 2007).

---

[21]     The JAs even participated in a purchase price dispute related to one of the sales and signed a stipulation entered in the US and Canadian Courts.  The stipulation provided for the exclusive jurisdiction of the Courts under the Cross-Border Protocol.  *Order Approving Stipulation by and Among the Sellers and Avaya Inc.*, Oct. 1, 2010 [D.I. 4058]; Order of the Ontario Superior Court of Justice (Commercial List) dated September 30, 2010, in proceedings under *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, in respect of Nortel Networks Corp. et al. (Court File No. 09-CL 7950).

None of these factors applies here.  First, the need for trial would not be eliminated, because even if this Court set aside the Order (but does not compel arbitration), the US Court must still allocate the proceeds from the sales of Nortel's global businesses.  Second, the trial would certainly not be simplified by the elimination of complex issues; "[o]n the contrary, the case would become exponentially more complex, expensive, and time consuming" as the parties' interim procedures would again need to be negotiated and parties may only be further encouraged to seek interlocutory review of the procedures.  *See Brown v. Trueblue, Inc.*, Civil Action No. 1:10-CV-0514, 2012 U.S. Dist. LEXIS 52811, at *22 (M.D. Pa. Apr. 16, 2012) (denying motion for interlocutory appeal).  Even if the Courts were forced to race to judgment in separate proceedings that could not be coordinated (the practical result of striking down the allocation protocol), cross-border discovery of documents and testimony would still be necessary, and the same parties would need to participate in *both* proceedings.  Further, striking down the ruling allowing the Courts to coordinate would only exacerbate the JAs' fear that allocation will be subject "to separate and potentially conflicting orders of two separate sovereign courts."  Motion at 14.  Finally, discovery would not be conducted more expeditiously and at less expense if the Order were overturned.  Again, the opposite would occur, as the parties could be forced to engage in cross-border discovery without the benefit of agreed-upon procedures – such as a joint repository for documents, shared access to deposition transcripts, coordinated expert discovery, and coordinated procedural rules intended to permit use of evidence in both U.S. and Canadian Courts – and disputes on discovery would be heard separately and likely on separate tracks causing an abundance of waste, inefficiency, and duplication.[22]

---

[22]     The JAs' assertion that "[i]f the portion of the Allocation Protocol Order approving the entry of the Allocation Protocol is not appealed, uncertainty will remain about the propriety of the procedures ordered under the

In sum, because the JAs have not established any of the necessary requirements under §1292(b) to justify an interlocutory appeal, much less each and every one, the Court should thus deny the Motion.

**D.      Even If The § 1292(b) Requirements Were Met, The JAs Cannot Demonstrate Exceptional Circumstances Justifying Interlocutory Appeal**

Interlocutory appeals are "meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *DeLalla v. Hanover Ins.*, Civil No. 09-2340 (RBK/JS), 2010 U.S. Dist. LEXIS 104323, at *8-9 (D.N.J. Sept. 30, 2010); *SemCrude*, 2010 U.S. Dist. LEXIS 136391, at *11 ("Piecemeal litigation is generally disfavored by the Third Circuit.").  As a result, even if the § 1292 requirements are met, courts in the Third Circuit only grant leave where "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (internal quotation marks omitted); *see also*, *Patrick*, 366 B.R. at 387 n.6 (M.D. Pa. 2007).

Furthermore, the JAs seek leave to appeal from a mere preliminary, procedural order. Interlocutory appeals rarely are appropriate for procedural issues.  *See Borden Co. v. Sylk*, 410 F.2d 843, 846 (3d Cir. 1969) (cautioning against turning courts of appeals into "second-stage motion courts"); Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, at § 3930 ("[T]here is little doubt that a question is not controlling if . . . it is a matter of merely formal procedure that can easily be accommodated to whatever ruling is made."); *see also*, *Hulmes v. Honda Motor*

---

Allocation Protocol," Motion at 15, is of no moment.  As the JAs themselves concede in setting forth the standard, "uncertainty" is not a basis upon which to grant an interlocutory appeal.  In any event, there is always some "uncertainty" surrounding any decision of a lower court.  Nor can the JAs meet their burden under § 1292(b) by simply highlighting the difficulty in crafting procedures to allocate the proceeds from the sales of Nortel's global businesses.  *See* Motion at 10-11, 15.  Certification under § 1292(b) was not intended merely "to provide early review of difficult rulings in hard cases."  *Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*, Civil Action No. 2:10–cv–05108 (DMC) (JAD), 2011 U.S. Dist. LEXIS 16533, at *8 (D.N.J. Feb. 17, 2011) (internal quotation marks omitted).

*Co.*, 936 F. Supp. 195, 211-12 (D.N.J. 1996) (denying interlocutory appeal from denial of motion in limine); *Augustin v. New Century Liquidating Trust (In re New Century Holdings, Inc.)*, Bk. No. 07-10416 (KJC), Civ. No. 09-378-SLR, 2010 WL 1170354, at *2 (D. Del. Mar. 24, 2010) (denying interlocutory appeal from denial of discovery order by bankruptcy court); *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 536 (D.N.J. 1998) (denying interlocutory appeal from denial from transfer of venue decision, noting that there was "no reason to certify the issue or stay the transfer pending an attempt to perfect an interlocutory appeal from a procedural order"); *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1246 (5th Cir. 1974) (pre-trial rulings excluding possible evidence from trial not ripe for review because at trial events may lead to a different ruling, and it is not possible to assess the prejudicial impact prior to trial). These types of decisions are a standard part of litigation and are generally reviewed by appellate courts only after a final judgment. There is no reason for the Court to deviate from standard appellate practice disfavoring piecemeal interlocutory appeals.

## II. THIS COURT SHOULD NOT EXERCISE PENDENT JURISDICTION OVER THE OTHERWISE UNAPPEALABLE ORDER APPROVING THE ALLOCATION PROTOCOL

Just as with interlocutory orders, a court must exercise pendent jurisdiction "sparingly," *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 88 (3d Cir. 2010), and can only do so in a case "rife with special circumstances." *Haberern v. Lehigh & New England Ry. Co.*, 554 F.2d 581, 584 (3d Cir. 1977). Those special circumstances are not present here.

The JAs' argument that the decision approving the allocation protocol and the decision denying the JAs' motion to compel arbitration are "inextricably intertwined" fails under the basic standard set forth in their Motion. Motion at 16-17. The appealable issue here – the denial of the motion to compel arbitration – can easily be "resolved without reference to the otherwise

19

1543

unappealable" decision approving an allocation protocol: that is, an appeal court reviewing an order on arbitration need pay no regard to the proposed procedural alternative.

The JAs try to combine these issues by asserting that "[i]f the appellate court finds the allocation dispute to be arbitrable without reviewing the portion of the Order approving the Allocation Protocol, the parties will be subject to two conflicting orders: one to arbitrate and one adopting the protocol." Motion at 17. This is flatly untrue. Whether the dispute is arbitrable is a threshold issue, and a decision compelling *arbitration* would take the case away from the Bankruptcy Court and render the procedural planning of *court* proceedings null and void. The JAs concede as much. Objection to Jurisdiction Motion at 16. An allocation protocol (yet to be entered) has "nothing to do with whether the [Bankruptcy Court] was foreclosed by [a purported] arbitration clause from considering" the ultimate issue and is "therefore not inextricably intertwined with the arbitrability." *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 504 (6th Cir. 2011) (denying pendent jurisdiction and holding that the unappealable issues of whether personal jurisdiction and venue are proper have "nothing to do with whether the district court was foreclosed by the parties' arbitration clause from considering the plaintiffs' claims"); *see also*, *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 204-05 (3d Cir. 2001) (refusing to exercise pendent jurisdiction to review personal jurisdiction ruling on appeal from an order denying motion to submit the dispute to arbitration). The Court must therefore decline to hear this unappealable issue.[23]

---

[23]  While the Joint Administrators are correct that the Court may also exercise pendent appellate jurisdiction over an otherwise unappealable issue to the extent necessary to ensure meaningful review of the appealable order, Motion at 16, that is not necessary here for the same reasons that the issues are not inextricably intertwined. Even were the Court to find that the issues are inextricably intertwined, however, it may still exercise its discretion to deny the Joint Administrators' Motion. *See Brown v. City of Pittsburgh*, 586 F.3d 263, 298 (3d Cir. 2009) ("The Supreme Court has admonished courts to construe the doctrine [of pendent appellate jurisdiction] narrowly.").

## Conclusion

WHEREFORE, the US Debtors and Committee respectfully request that the Court deny the Motion and grant other such and further relief as it deems appropriate

Dated:  May 1, 2013
      Wilmington, DE

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*