## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| NORTEL NETWORKS INC., *et al.*, | Case No. 09-10138 (KG) |
| Debtors.[1] | Jointly Administered |
| | **RE: Docket Nos. 9946, 9947, and 10246**<br>**Hearing Date:  May 1, 2013 at 10:00 a.m. (ET)** |

## THE JOINT ADMINISTRATORS' OBJECTION TO JOINT MOTION
## FOR AN ORDER RETAINING JURISDICTION PENDING
## APPEAL AND CROSS-MOTION TO CONFIRM STAY PENDING APPEAL

The court-appointed administrators and authorized foreign representatives

(collectively, the "Joint Administrators")[2] for Nortel Networks UK Limited ("NNUK") and

certain of its affiliates (collectively, and including NNUK, the "EMEA Debtors")[3] located in the

region known as EMEA (Europe, Middle East, and Africa) in proceedings under the *Insolvency*

*Act 1986*, pending before the High Court of Justice of England and Wales (the "English Court"),

respectfully submit this objection and cross-motion (the "Cross-Motion") to the joint motion

[D.I. 10246] (the "Joint Motion") of the U.S. Debtors and the Official Committee of Unsecured

---

1. The debtors in these chapter 11 cases (the "U.S. Debtors"), along with the last four digits of each tax identification number, are:  Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

2. The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited ("NNIR"), are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the English proceedings for NNIR are: Alan Robert Bloom and David Martin Hughes.

3. The EMEA Debtors are:  NNUK; Nortel GmbH; Nortel Networks (Austria) GmbH; NNIR; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A. ("NNSA"); Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

Creditors (the "Committee" and, together with the U.S. Debtors, "Movants") for entry of an

order declaring the Joint Administrators' appeal (the "Appeal") from this Court's *Opinion* [D.I.

9946] and *Order Approving Allocation Protocol*, entered April 3, 2013 [D.I. 9947] (together, the

"Allocation Protocol Order") to be frivolous and retaining jurisdiction over all aspects of the

above-referenced proceedings pending resolution of the Appeal, and in support of their Cross-

Motion to confirm that a stay of proceedings is in effect.  In support of this Cross-Motion, the

Joint Administrators respectfully state as follows:

**PRELIMINARY STATEMENT**

The Joint Administrators have no desire to prolong these proceedings or delay the

ultimate decision on how to allocate the proceeds of the Nortel asset sales.  However, they

continue to believe that arbitration is not only the dispute resolution procedure that was agreed

by the parties, but also that conducting proceedings in one single forum (whether arbitration or a

court) is the only feasible and appropriate way to determine how to allocate the asset sale

proceeds.

It is black letter law in the Third Circuit that proceedings on a dispute that is

asserted to be arbitrable are stayed upon the filing of an appeal from an order denying a motion

to compel arbitration.  The Allocation Protocol Order denied the Joint Administrators' cross-

motion to compel arbitration, a decision that is immediately appealable as of right under § 16(a)

of the Federal Arbitration Act (the "FAA").  Thus, the Joint Administrators' filing a notice of

appeal from the Allocation Protocol Order causes an automatic stay of allocation proceedings

before this Court pending the outcome of the Appeal.

Notwithstanding this automatic stay, the Joint Administrators and Movants agree

that it would be most efficient if pleadings and discovery on allocation-related issues can proceed

during the pendency of the Appeal.  This may need to be done on the understanding that, once

01:13568608.1

the Appeal has been decided, the pleadings and discovery will be deployed in the ultimate hearings on allocation, whether these are to be held in arbitration or court. The Joint Administrators continue to believe that it would be feasible and appropriate to enter into an express agreement by the parties, confirmed by the Courts, to proceed in this fashion, and that this will be without prejudice to and without waiver of the Joint Administrators' challenge to litigating the allocation dispute through a joint trial by the U.S. and Canadian Courts.

Movants have, however, elected to proceed in a different fashion. Instead of negotiating towards an agreement that will allow appropriate matters to proceed while preserving the rights of all parties, they argue that the current case comes under an exception to the automatic stay that applies where an appeal is frivolous. This argument fails. In essence, Movants argue that the Appeal is frivolous because the Court decided against the Joint Administrators in the decision under appeal. If this were the standard for finding an appeal to be frivolous, all appeals would by definition be frivolous. Here, the arguments in favor of the Joint Administrators' cross-motion to compel arbitration were more than colorable. They asserted each of the elements that are required in order to demonstrate the existence of a written agreement to arbitrate enforceable under the Federal Arbitration Act. The Court's decision boiled down to a matter of contract interpretation in which there was no controlling precedent on point. The Joint Administrators provided myriad legal authority, and substantial extrinsic evidence, to support their argument that Section 12 of the IFSA was intended by the parties to contain a binding agreement to arbitrate allocation disputes. The fact that the Court disagreed does not mean that these arguments "lack[ed] colorable support" or were "wholly without merit."

Contrary to Movants' accusations to the contrary, the Joint Administrators seek the most equitable, efficient, and practical means of resolving the allocation dispute – through

01:13568608.1

the binding arbitration already agreed between the parties, as made manifest by evidence of the parties' negotiations prior to and following the execution of the IFSA.  Upon noticing their Appeal, it was the Joint Administrators who reached out to Movants and offered to exchange allocation pleadings and go forward with allocation discovery, notwithstanding the automatic stay, provided that the parties agreed that doing so would not constitute a waiver of the Joint Administrators' right to seek to have allocation determined in an arbitral proceeding.  Movants claimed to agree, only to renege mere hours before filing the Joint Motion in which they accuse the Joint Administrators of "[o]nce again . . . doing their level best to delay and disrupt these proceedings."  (*See* Mot. ¶ 7.)  The Joint Administrators continue to believe that the best way forward would be to negotiate a stipulation along the lines of the one they proposed.

**BACKGROUND**

On January 14, 2009 (the "Petition Date"), the principal companies in the global Nortel group commenced insolvency proceedings, with the individual Nortel entities filing for relief in their respective jurisdictions.  These entities included:  the ultimate corporate parent Nortel Networks Corporation ("NNC"), NNUK's direct corporate parent Nortel Networks Limited ("NNL"), and certain Canadian affiliates of NNC and NNL (collectively, the "Canadian Debtors") in the Ontario Superior Court of Justice – Commercial List (the "Canadian Court"); the U.S. Debtors in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court");[4] and the EMEA Debtors in the English Court.

In order to facilitate the rapid sale of the Nortel group's assets, without being subject to the delay of resolving how such proceeds would be shared among the Nortel entities,

---

4.   Nortel Networks (CALA) Inc. filed for relief on July 14, 2009, which was consolidated and is being jointly administered with the U.S. Debtors' chapter 11 cases for procedural purposes only [D.I. 1098].

the U.S. Debtors, the Canadian Debtors, and the EMEA Debtors entered into the IFSA.[5]

Sections 11 and 12(a) of the IFSA capture the parties' intention to ensure that the various global

sales were able to continue, while reserving discussions about the allocation of sale proceeds for

a later point.

> Section 12(b) of the IFSA provides:
>
> [T]he entire amount of the Sale Proceeds . . . shall be deposited in an escrow account pursuant to an escrow agreement, the terms of which shall be negotiated and agreed by all Selling Debtors, in each case acting reasonably (the "Escrow Account").  In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol . . . applicable to the Sale Proceeds, and subject in each case to payment of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

It is clear on the face of Section 12(b) that sale proceeds placed into escrow may only be released

on the occurrence of one of two events:  (i) if an agreement on allocation is reached by the

parties; or (ii) if the parties fail to reach agreement, a determination is made by the relevant

dispute resolver(s) under the terms of the protocol to be agreed between the parties.

At all times, both before and after the entry of the IFSA, the parties understood

and agreed that the "dispute resolver" that would be appointed to resolve disputes about

allocation would be one or more private individuals acting in the capacity of arbitrators.  Shortly

---

5.    Interim Funding and Settlement Agreement, dated as of June 9, 2009, by and between the parties listed on Schedules 1, 2, and 3 thereto (the "IFSA").  A copy of the IFSA is attached as Exhibit 1 to the *Declaration of Inna Rozenberg in Support of Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim Funding and Settlement Agreement, and for Related Relief*, dated April 25, 2011 [D.I. 5308].

The IFSA was approved by the U.S. Court by order dated June 29, 2009 [D.I. 993] (the "U.S. IFSA Order"), and by the Canadian Court by order dated June 29, 2009 (the "Canadian IFSA Order"), which ordered that the parties to the IFSA be directed to comply with their obligations thereunder.  By order dated June 23, 2009, the English Court ordered that the Joint Administrators "be at liberty" to enter into the IFSA.  Initially, NNSA and Nortel Networks AG were not signatories to the IFSA.  However, the Joint Administrators entered into the IFSA on behalf of NNSA by an Accession and Amendment Agreement dated September 11, 2009.

after execution and judicial approval of the IFSA, the parties to the IFSA commenced

negotiations towards a protocol to specify the procedures that would be followed in this

arbitration proceeding.  The parties had reached agreement on the main points of a 29-page

protocol, pursuant to which each of the three main debtor groups (Canadian, U.S., and EMEA)

would appoint one arbitrator to form a three-member arbitration panel to resolve allocation

disputes.  Before finalizing this protocol, those negotiations were suspended in favor of

mediation regarding the allocation of the sale proceeds.  Mediation sessions took place in

November 2010 and April 2011, without success.

    After the failure of the mediation, the U.S. Debtors abruptly reversed course and

refused to continue negotiations towards finalizing the IFSA dispute resolution protocol.  They

decided that they would no longer honor the understanding upon which the Nortel asset sales had

been consummated, *i.e.*, that disputes about allocation of the sale proceeds would be decided in

an international arbitration proceeding rather than by any particular national court.  Thus, on

April 25, 2011, the U.S. Debtors and the Official Committee of Unsecured Creditors filed the

*Joint Motion for Entry of an Order Establishing an Allocation Protocol Pursuant to the Interim*

*Funding Settlement Agreement, and for Related Relief* [D.I. 5307] (the "Allocation Protocol

Motion") moving the U.S. Court for entry of an order approving an allocation protocol

establishing procedures and an expedited schedule for joint determination by the U.S. and

Canadian Courts of the allocation of the sale proceeds pursuant to the IFSA.[6]

    The Joint Administrators filed objections to the Allocation Protocol Motion and

made a cross-motion to compel arbitration of the allocation dispute as provided for under the

IFSA [D.I. 5444] (the "Cross-Motion to Compel Arbitration").  In support of the Cross-Motion

---

6.   A companion application was filed by the Canadian Debtors before the Canadian Court.

to Compel Arbitration, the Joint Administrators argued that the parties had agreed that the

allocation of the sale proceeds should be decided in a private, transnational arbitration

proceeding and not by any national court or courts.  The Joint Administrators noted that from the

earliest negotiations of the IFSA until the date of the Allocation Protocol Motion, all parties had

recognized and agreed that the allocation of the sale proceeds would be decided in an arbitral

proceeding.  The Joint Administrators argued that based upon the terms of the IFSA and the

history of negotiations regarding the IFSA:

> All evidence confirms that the parties bound themselves to submit
> allocation disputes to arbitration, regardless of whether they were
> successful in negotiating a procedural protocol to be followed in
> such arbitration.    Accordingly, under the [FAA], the Court's
> jurisdiction over allocation disputes is limited to compelling the
> parties to submit those disputes to arbitration.

(*The Joint Administrators' Memorandum of Law in Support of Their Objection and Cross-*

*Motion to Compel Arbitration* [D.I. 5531] at 3.)

Argument on the Allocation Protocol Motion and Cross-Motion to Compel

Arbitration (together with submissions from other parties) was heard in joint hearings before the

U.S. Court and Canadian Court on June 7, 2011, after which the U.S. and Canadian Courts

reserved decision and ordered the parties to mediation.  This mediation was again unsuccessful

and was declared ended in January 2013.  Following supplemental briefing by the parties and

further oral argument before the U.S. and Canadian Courts, the U.S. Court entered the Allocation

Protocol Order and the Canadian Court entered its reasons and endorsement on April 3, 2013.

The Joint Administrators concurrently filed a *Notice of Appeal* [D.I. 10166] from

the Allocation Protocol Order and a *Motion for Leave to Appeal From Order Approving*

*Allocation Protocol* [D.I. 10167].  As set forth in the Motion for Leave to Appeal, the portion of

the Allocation Protocol Order in which this Court denied the Joint Administrators' Cross-Motion

01:13568608.1

to Compel Arbitration is immediately appealable as of right under the FAA. *See* 9 U.S.C. § 16(a). The portion of the Allocation Protocol Order in which this Court granted the Allocation Protocol Motion and denied the Joint Administrators' objection thereto is an interlocutory order, but is inextricably intertwined with the issues arising from the denial of the Joint Administrators' Cross-Motion to Compel Arbitration.

On April 17, 2013, while in the process of finalizing the Appeal, the Joint Administrators, through counsel, reached out to Movants' counsel. Further discussions occurred on April 18. The U.S. Debtors agreed in principle that the parties could consent to move forward with allocation pleadings and allocation discovery without waiver of the Joint Administrators' objection to having allocation heard in a joint hearing before the U.S. and Canadian Courts. The parties agreed to exchange drafts of a stipulation to memorialize this agreement. Despite this good-faith effort by the Joint Administrators to move the allocation process forward, notwithstanding the automatic stay, the U.S. Debtors on April 23 abruptly declared that they would no longer consent to the limited stay previously contemplated by the parties and, hours later, filed the Joint Motion.

## ARGUMENT

## I.    THE APPEAL AUTOMATICALLY DIVESTS THE COURT OF JURISDICTION TO PROCEED PURSUANT TO THE ALLOCATION PROTOCOL ORDER.

### A.    The Stay Is Automatic.

Under controlling Third Circuit authority, an appeal from a decision to deny a motion to compel arbitration automatically stays the proceedings below during the pendency of the appeal. Such an appeal "automatically deprives the trial court of jurisdiction to proceed until such time as the appeal is fully litigated or determined to be frivolous or forfeited." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007); *see also Guidotti v. Legal Helpers*

*Debt Resolution, L.L.C.*, Civil No. 11-1219, 2012 WL 3262461, at *2 (D.N.J. Aug. 7, 2012) (granting automatic stay); *V.I. Water & Power Auth. v. Gen. Elec. Int'l, Inc.*, Civil No. 2006-131, 2009 WL 2413670, at *1 (D.V.I. Aug. 4, 2009) (same).

In the Allocation Protocol Order, the Court denied the Joint Administrators' Cross-Motion to Compel Arbitration under the terms of the IFSA, finding that the language in the IFSA did not evince a clear intention to submit allocation disputes to arbitration. The Appeal from that determination, made pursuant to § 16(a) of the FAA, triggers a nondiscretionary stay of the allocation proceedings before this Court. *See Ehleiter*, 482 F.3d at 215 n.6; *Cohen v. Ernst & Young LLC (In re Friedman's, Inc.)*, Bankr. No. 05-40129, Adv. No. 07-4043, 2007 WL 7647111, at *1 (Bankr. S.D. Ga. June 26, 2007) ("[A] stay of litigation pending the appeal of a denial of a motion to compel arbitration should be granted so long as the appeal is non-frivolous." (citing *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251-53 (11th Cir. 2004) (per curiam))). Absent a stay, a subsequent appellate decision in favor of the Joint Administrators could be rendered a nullity because they might already have been denied their right to have the allocation dispute determined in by arbitration. *See Ehleiter*, 482 F.3d at 214.

Movants acknowledge this binding precedent, citing the same Third Circuit authority referenced above, while noting only that the stay can be lifted where an appeal is "frivolous or forfeited." (Mot. ¶ 8 (citing *Ehleiter*, 482 F.3d at 215 n.6).) Movants argue that the Appeal is frivolous. As set forth below, the Appeal is not frivolous.

### B. Proceedings on Allocation Are Stayed As To All Parties.

Movants have suggested that any stay of proceedings on allocation would apply only to the Joint Administrators, disabling them from participating in allocation pleadings, discovery and trial while all other parties move forward. This is incorrect.

01:13568608.1

An automatic stay of proceedings pending appeal from an order denying a motion to compel arbitration serves to balance competing concerns of "promoting efficient dispute resolution; avoiding inconsistent handling of a case; and preventing a party from disrupting a schedule or stalling by filing a frivolous appeal." *Guidotti*, 2012 WL 3262461, at *2 (internal quotation and citations omitted).  To avoid upsetting this balance, as well as compounded litigation efforts, increased expense, and inconsistency between progress at the bankruptcy-court level and the determination of an appellate court, allocation proceedings must be stayed as to all parties.  Indeed, the only way to accomplish the Third Circuit's stated goal of preserving the contractual right to arbitrate pending appeal from the denial of a motion to compel arbitration is by staying all matters related to the order appealed. *See V.I. Water & Power Auth.*, 2009 WL 2413670, at *1 ("[I]t makes little sense for the litigation to continue in the district court while the appeal is pending." (quoting *Blinco*, 366 F.3d at 1253)).

The Joint Administrators contend that <u>all</u> parties are bound by a contractual obligation to arbitrate.  A stay as to all parties is therefore necessary in order for their right to arbitration to be effectuated in the event that the appeal is successful.  Furthermore, the various claims here – where each of the various debtors assert a claim to the same pool of funds held in escrow – cannot be litigated independently of one another.  Moving forward with allocation as to some parties – but not the parties to the appeal[7] – would clearly require the Court to exercise jurisdiction over "issues which . . . so impact the appeal so as to interfere with or effectively circumvent the appeal process." *Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re*

---

7.    *Cf. Guidotti*, 2012 WL 3262461, at *3 (stating court's "order to stay will apply only to Plaintiff's claims against Global and RMBT, the sole parties to the pending appeal").  Thus, at the very least, allocation proceedings must be stayed as to the EMEA Debtors, the U.S. Debtors, and the Committee, all parties to the appeal.

*Whispering Pines Estates, Inc.*), 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007);[8] *see also Blinco*, 366

F.3d at 1251 ("The only aspect of the case involved in an appeal from an order denying a motion

to compel arbitration is whether the case should be litigated at all in the district court.  The issue

of continued litigation in the district court is not collateral to the question presented by an appeal

under § 16(a)(1)(A); it is the mirror image of the question presented on appeal.") (internal

citation and quotation marks omitted); *Bradford-Scott Data Corp. v. Physician Computer*

*Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997) ("The worst possible outcome would be to

litigate the dispute, to have the court of appeals reverse and order the dispute arbitrated, to

arbitrate the dispute, and finally to return to court to have the award enforced.").

        Accordingly, since binding Third Circuit precedent divests the Court of

jurisdiction in connection with the Allocation Protocol Order, in the absence of a suitable

agreement that protects the rights of the parties, allocation proceedings must be stayed as to all

---

8.   Moreover, the sale proceeds subject to the allocation proceedings will remain secure in the lockboxes pending
the Appeal, and the amount to be allocated to the parties will increase through accrued interest, rather than
diminish, in the interim.  *See Schroeder v. New Century Liquidating Trust (In re New Century TRS Holdings),*
*Inc.*, Bankr. No. 07-10416, Civ. No. 08-546-SLR, 2009 WL 1833875, at *2 (D. Del. June 26, 2009) (finding
that a stay will not harm the non-moving parties because "the relief they ultimately seek – funds . . . currently in
escrow – is unaffected by this appeal").

parties pending the outcome of the Appeal.  The Court does not, as Movants suggest, "retain[]

jurisdiction to enforce its [Allocation Protocol] order[] pending any appeal."  (Mot. ¶ 14.)[9]

## II.     THE APPEAL IS NOT FRIVOLOUS.

Movants note that the Court can retain jurisdiction over allocation proceedings

pending appeal from the Allocation Protocol Order if it determines that the Appeal is frivolous.

(*See* Mot. ¶ 9.)  An appeal is frivolous only if "upon review of the record and the law, it lacks

colorable support or is wholly without merit."  *Guidotti*, 2012 WL 3262461, at *2 (granting

automatic stay where appeal not frivolous) (internal quotation omitted).  This is a high bar.

Courts are generally "reluctant to classify appeals as frivolous, so that novel theories will not be

chilled and litigants advancing any claim or defense which has colorable support under existing

law or reasonable extensions thereof will not be deterred."  *Id.* at 3 (quotation omitted).  Indeed,

many courts within the Third Circuit, including the authority cited by Movants, derive the

standard for determining whether an appeal is frivolous from the test used to determine whether

sanctions should be assessed against appellant's counsel under Rule 38 of the Federal Rules of

---

9.  The Joint Administrators do not contend that the Appeal has divested the Court of jurisdiction over the entire bankruptcy, but only as to the enforcement of the Allocation Protocol Order, which is subject to the stay. Movants cite two divestiture rule cases that do not support their argument and that do not arise on appeal from the denial of a motion to compel arbitration.  (*See* Mot. ¶ 14.)  These cases stand for the proposition that a court may not alter a judgment that has been appealed, but may enforce it *so long as no stay exists.  In re Wash. Mut., Inc.*, 461 B.R. 200, 218, 219 (Bankr. D. Del. 2011) ("*absent a stay pending appeal*, the lower court may take all actions necessary to implement or enforce the order from which an appeal has been taken" and court "may retain jurisdiction to decide issues and proceedings *different from and collateral to those involved in the appeal*" where no stay is in place) (emphases added, citations omitted); *In re Whispering Pines Estates, Inc.*, 369 B.R. 752, 759 (1st Cir. BAP 2007) ("[O]nce an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.").  In the Washington Mutual bankruptcy, the court noted that "the bankruptcy judge may suspend or order the continuation *of other proceedings in the case* under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of *all* parties in interest."  *In re Wash. Mut.*, 461 B.R. at 218 (emphases added).

01:13568608.1

Appellate Procedure. *See, e.g.*, *Nagle v. Alspach*, 8 F.3d 141, 145-46 (3d Cir. 1993) (noting

appeal is frivolous only where there is "no possibility of success") (cited Mot. ¶ 8).[10]

> ### A.    The Fact That The Court Ruled Against The Joint Administrators Does Not Mean That The Appeal Is Frivolous.

Movants' primary argument is that the Appeal should be found to be frivolous

because this Court has already considered, and rejected, the Joint Administrators' arguments that

Section 12 of the IFSA is a binding agreement to arbitrate allocation disputes. (Mot. ¶¶ 9-13.)

Much of the Joint Motion consists of a re-hash of the arguments that were made in relation to the

original Allocation Protocol Motion and Cross-Motion to Compel Arbitration.

The cases Movants rely on are readily distinguishable and show just how high the

bar is for showing that an appeal is frivolous. *See In re Magna Entm't Corp.*, No. 09-10720,

2012 WL 272847, at *3 (Bankr. D. Del. Jan. 30, 2012) (appeal was frivolous where appellee was

not even a party to the alleged arbitration agreement); *Traxys N. Am. LLC v. Evraz Claymont

Steel, Inc.*, Civil No. 09-684, 2011 WL 1868836, at *2 (D. Del. May 16, 2011) (appeal frivolous

where defendants waived arbitration by engaging in litigation for nineteen months before raising

arbitration argument on the eve of trial); *Kirleis v. Dickie, McCamey & Chicolte, PC*, Civil

No. 06-1495, 2007 WL 3023950, at *3 (W.D. Pa. Oct. 12, 2007) (appeal was frivolous where

party advocating for arbitration could not point to any written agreement between the parties that

contained any purported arbitration clause); *Kuntz v. Saul, Ewing, Remick & Saul (In re Grand*

---

10.  Although there is limited guidance, those authorities that have addressed the burden issue have placed the burden on appellees advocating that an appeal is frivolous. *See, e.g.*, *Bradford-Scott Data*, 128 F.3d at 506 (noting that "appellee may ask the court of appeals to dismiss the appeal as frivolous" (citations omitted)); *Marriott v. Opes Grp.*, No. 04-C-945, 2006 WL 452431, at *2 (E.D. Wis. Feb. 22, 2006) ("[Appellee] argues that [appellants] must establish the non-frivolity of their appeal in order to obtain a stay.  The Court is not convinced. . . . The burden of such a showing would fall to [appellee] in the present instance."); 5 Am. Jur. 2d Appellate Review § 886 (2d ed. 2013) ("A case-by-case approach is generally used to identify and deter frivolous appeals, and the burden of proof is on the moving party to establish the frivolity of the appeal. . . . Any doubt regarding the frivolous nature of an appeal must be resolved in favor of the appellant.").

*Union Co.)*, 200 B.R. 101, 106-08 (D. Del. 1996) (sanctioning appellant for frivolous appeal in which appellant cited no cases to support arguments, provided no factual basis for arguments, misstated facts, deliberately delayed disposition of appeal by failing to comply with procedural rules, filed appellate brief six months late, and had a "well documented history of abusing the court system").

But as these cases illustrate, the mere fact that the Court found against the Joint Administrators below is insufficient to show that the Appeal from that decision is frivolous. "In fact, a court may grant a motion for a stay pending appeal even when it has confidence in the rectitude of its decision." *Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures, Inc.)*, 367 B.R. 516, 521 (Bankr. D. Del. 2007) (quotation omitted) ("For the purposes of this motion, it does not matter whether this Court believes that Defendants should succeed on appeal. In considering the likelihood of success on the merits, it seems illogical to require that the court in effect conclude that its original decision in the matter was wrong before a stay can be issued.") (internal quotation and citation omitted).

Simply rearguing the motion already decided and citing to the Court's opinion, as Movants do, is insufficient to demonstrate that the Appeal "lacks colorable support or is wholly without merit"; to find otherwise would extend the meaning of "frivolousness" to every appeal.

## B.    The Joint Administrators Have Strong Arguments On Appeal.

In papers submitted by the Joint Administrators in support of their Cross-Motion to Compel Arbitration, the Joint Administrators set forth a *prima facie* case under § 4 of the FAA that the IFSA contains an enforceable agreement to arbitrate. The record contains substantial factual and legal bases for the Appeal, only briefly summarized below, which go far beyond the "colorable support" required to determine an appeal is not frivolous. *See Guidotti*, 2012 WL 3262461, at *2-3 (finding appeal not frivolous and granting automatic stay pending appeal from

denial of motion to compel arbitration); *V.I. Water & Power Auth.*, 2009 WL 2413670, at *1 (same); *In re Friedman's, Inc.*, 2007 WL 7647111, at *1 (same).

First, the Joint Administrators argued that the parties' intent to submit allocation disputes to arbitration rather than litigation is clear from the terms of the IFSA itself.  As Movants note, arbitration is a creature of contract, and Section 12 of the IFSA satisfies the requirements for a contractual agreement to arbitrate because it (i) is in writing, (ii) identifies the disputes – regarding the allocation of sale proceeds – to be resolved, and (iii) explicitly states that the parties will submit such disputes to "dispute resolver(s)."  (*See* IFSA § 12(b).) Regarding this third criterion, the Joint Administrators presented numerous authorities showing that it is not necessary that the word "arbitration" or "arbitrator" be used in order for a court to find that an enforceable arbitration agreement exists.  (*See* EMEA Opening Br. at 17-18; Movants' Reply Br. at 17; EMEA Reply Br. at 3-5.)  Although the procedures that would govern the arbitration were not explicitly set forth, the IFSA memorialized the parties' intent to negotiate an "Interim Sales Protocol" that would contain these procedures.  (*See* IFSA § 12(c).)

Second, the Joint Administrators pointed out that any ambiguity or lack of clarity about what type of "dispute resolver(s)" the parties intended to appoint can resolved by looking at the wealth of extrinsic evidence regarding the negotiating history, the surrounding circumstances, the parties' public statements, and the positions taken in the negotiations toward an allocation protocol.  (*See generally* EMEA Opening Br.; EMEA Reply Br. at 6.)  The Joint Administrators provided substantial extrinsic evidence in the *Declaration of Kevin Francis Lloyd*, dated May 19, 2011 [D.I. 5532] (the "Lloyd Declaration"), which details how it had been recognized and agreed by all parties that the allocation of sale proceeds would be decided in a private, transnational arbitration proceeding and not by any national court or courts.  The Joint

01:13568608.1

Administrators cited myriad authorities to support the admission of extrinsic evidence to resolve this apparent ambiguity regarding the definition of "dispute resolver(s)."  (*See, e.g.*, EMEA Opening Br. at 18-20.)  In opposing the Cross-Motion to Compel Arbitration, Movants put in no extrinsic evidence to rebut the showing that all parties understood and agreed that allocation disputes would be submitted to arbitration.

<u>Third</u>, the Joint Administrators noted that neither the IFSA, nor other agreements or protocols executed by the parties, nor any legal principle, grants the jurisdiction necessary for this Court and the Canadian Court to allocate sale proceeds among dozens of Nortel affiliates located around the world.  The Joint Administrators cited authority that under the FAA, a court's jurisdiction pursuant to a contract containing an arbitration clause, such as the IFSA, is limited to providing relief ancillary to arbitration, such as compelling arbitration, staying an action pending arbitration, or enforcing an arbitral award.  (*See, e.g.*, EMEA Opening Br. at 24-25.) Accordingly, if the Joint Administrators succeed on the Appeal, the Court's jurisdiction over allocation disputes is limited to compelling the parties to submit those disputes to arbitration, and any substantive order of the Court with respect to the allocation of sale proceeds under the IFSA would not be within the jurisdiction of this Court.

These and other arguments were presented by the Joint Administrators below. Not only do they demonstrate "colorable support" for the Appeal, but they are also reflected in public comments made by the mediator appointed by the U.S. and Canadian Courts to resolve the allocation dispute.  As Chief Justice Winkler observed:

> The Nortel Insolvency is one of the most complex trans-national legal proceedings in history. It directly involves companies resident in almost twenty countries, and appears to involve participants from every continent except Antarctica. Amongst those affected are pensioners, employees, disabled former employees, bondholders, trade creditors and governments.

01:13568608.1

There are existing proceedings before the courts of the United Kingdom, the United States and Canada. That said, no single court has ultimate authority over the subject matter of this mediation. . . .

As you may have gathered from the legal proceedings to date, these circumstances give rise to many difficult legal issues, not the least of which is the determination of which law applies and whose courts have jurisdiction to apply that law. In legal terms, this is what is known as a "conflict of laws" issue. However, the complexity of this case would make even a conflict of laws professor cringe!

As if this were not enough to attempt to work through to bring about a timely resolution to the Nortel Insolvency, the fact that there may be more than one avenue of appeal available to the parties through the courts of numerous countries adds yet another layer of complexity. This, of course, raises the prospect of additional delays and the potential for conflicting decisions. There is a point here worth repeating. There is no single jurisdiction with the ultimate, final authority in the matter; no final court of appeal or supreme court with the power to issue a decision that conclusively determines the outcome of litigation.

Chief Justice Warren K. Winkler, Court of Appeal for Ontario, Opening Remarks at the Nortel Mediation 2-5 (Apr. 24, 2012).

The complexity and novelty of the issues raised by the Appeal militates strongly against any finding that the appeal frivolous.

**C.     The Joint Administrators Have Offered To Move Forward With Allocation Procedures On A Limited Basis.**

Finally, Movants make the legally irrelevant argument that "the Court should find that the Appeal is frivolous to permit discovery to commence immediately and maintain the schedule so critical to creditors around the world." (Mot. ¶ 15.)[11]  The Joint Administrators' chief priority is fairly resolving the allocation dispute and making distributions to creditors around the world.  It is for this reason the Joint Administrators have taken the Appeal:  because

---

11.  Whether the Appeal is frivolous obviously does not depend on whether such a finding would speed resolution of the case, and Movants cite no authority to support such an argument.

arbitration represents the most efficient path to a speedy, cost-effective, and enforceable resolution of the allocation dispute, in addition to the path previously agreed by the parties.

The Joint Administrators note that while allocation proceedings before this Court must be stayed pending the Appeal, other matters, such as the EMEA Debtors' claims against the U.S. Debtors, will go forward.  As set forth above, the Joint Administrators have sought Movants' agreement to exchange allocation position papers with other core parties and to coordinate discovery on allocation issues with discovery already scheduled on the EMEA Debtors' claims during the pendency of the appeal.  Such an undertaking would benefit all parties, since discovery on allocation and claims is likely to overlap, and the parties will then be able to proceed more rapidly once arbitration commences without having to engage in a lengthy second discovery exercise.  The Joint Administrators stand ready to do so, provided the parties agree that the EMEA Debtors have not waived their right to an arbitral proceeding for allocation.

## CONCLUSION

For the foregoing reasons, the Joint Administrators respectfully request that the Court (i) deny the Joint Motion; (ii) grant the Cross-Motion; (iii) enter an Order substantially in the form attached hereto as <u>Exhibit A</u>; and (iv) grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       April 29, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Jaime Luton Chapman

James L. Patton (No. 2202)
Edwin J. Harron (No. 3396)
John T. Dorsey (No. 2988)
Jaime Luton Chapman (No. 4936)

Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302-571-6600
Fax: 302-571-1253

– and –

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty

One Battery Park Plaza
New York, New York 10004
Telephone: 212-837-6000
Fax: 212-422-4726

– and –

HERBERT SMITH FREEHILLS LLP

Kevin Lloyd
John Whiteoak
Richard Lawton

Exchange House
Primrose Street
London EC2A 2EG

*Counsel for Joint Administrators*

01:13568608.1

## Exhibit A

## Proposed Order

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>NORTEL NETWORKS INC., *et al.*,<br><br>                    Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>Jointly Administered<br><br>**RE: Docket No.  _____** |

## ORDER STAYING ALLOCATION PROTOCOL ORDER PENDING APPEAL

Upon consideration of (A) the *Joint Motion For An Order Retaining Jurisdiction Pending Appeal* [D.I. 10246] (the "Joint Motion") filed by Nortel Networks, Inc. ("NNI") and its affiliated debtors and debtors-in-possession (collectively, and including NNI, the "U.S. Debtors"),[1] and the Official Committee of Unsecured Creditors (the "Committee," and together with the U.S. Debtors, "Movants"), and (B) the *Objection To Joint Motion And Cross-Motion To Confirm Stay Pending Appeal* (the "Cross-Motion") filed by the court-appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators")[2] for Nortel Networks UK Limited ("NNUK") and certain of its affiliates (collectively, and including NNUK,

---

1. The U.S. Debtors in these chapter 11 cases, along with the last four digits of each tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

2. The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited ("NNIR"), are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the English proceedings for NNIR are: Alan Robert Bloom and David Martin Hughes.

the "EMEA Debtors")[3] requesting an order (this "Order") staying this Court's *Opinion* [D.I. 9946] and *Order Approving Allocation Protocol*, entered April 3, 2013 [D.I. 9947] (together, the "Allocation Protocol Order"), pending the Joint Administrators' appeal (the "Appeal") from the Allocation Protocol Order; and upon all prior submissions regarding the Allocation Protocol Order; and a hearing having been held to consider the relief requested in the Joint Motion and the Cross-Motion; and upon the record of the hearing and these chapter 11 proceedings; and due and sufficient notice of the Joint Motion and the Cross-Motion having been given under the circumstances and it appearing that no other or further notice need be given; and the Court having jurisdiction to consider the Cross-Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined that consideration of the Cross-Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and after due deliberation thereon and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Joint Motion is DENIED.

2.      The Cross-Motion is GRANTED.

3.      All proceedings before this Court in connection with the Allocation Protocol Order shall be and are hereby stayed pending the Appeal thereof.

---

3.    The EMEA Debtors are:  NNUK; Nortel GmbH; Nortel Networks (Austria) GmbH; NNIR; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A. ("NNSA"); Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

4.      Notwithstanding any federal or local rule to the contrary, this Order shall

take effect immediately upon its entry.

Dated: May ____, 2013
        Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

01:13568608.1