```
            IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE DISTRICT OF DELAWARE

IN RE:                        )    Case No. 09-10138 (KG)
                              )    (Jointly Administered)
                              )
NORTEL NETWORKS, INC.,        )
     et al.,                  )    Chapter 11
                              )
        Debtors.              )
                              )    Courtroom 3
                              )    824 Market Street
                              )    Wilmington, Delaware
                              )
                              )    May 1, 2013
                              )    10:00 a.m.
```

```
              TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE JUDGE KEVIN GROSS
           UNITED STATES BANKRUPTCY JUDGE
```

APPEARANCES:

For Debtors:              Morris Nichols Arsht & Tunnell, LLP
                          BY: DEREK ABBOTT, ESQ.
                          BY: ANN CORDO, ESQ.
                          1201 N. Market St., 18th Fl.
                          Wilmington, DE  19899-1347
                          (302) 351-9357

                          Cleary Gottlieb Steen & Hamilton
                          BY: LISA SCHWEITZER, ESQ.
                          BY: ROBERT RYAN, ESQ.
                          BY: MEGAN FLEMING, ESQ.
                          BY: ROGER COOPER, ESQ.
                          BY: JAMES BROMLEY, ESQ.
                          BY: JACQUELINE M. MOESSNER, ESQ.
                          One Liberty Plaza
                          New York, NY  10006
                          (212) 225-2000

ECRO:                     GINGER MACE

Transcription Service:    DIAZ DATA SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

For the Creditors'          Richards Layton & Finger
Committee:                  BY: CHRIS SAMIS, ESQ.
                            One Rodney Square
                            920 North King Street
                            Wilmington, DE  19801
                            (302) 651-7531

                            Akin Gump Strauss Hauer & Feld
                            BY: LISA BECKERMAN, ESQ.
                            BY: ARUN KURICHETY, ESQ.
                            BY: FRED HODARA, ESQ.
                            BY: DAVID BOTTER, ESQ.
                            BY: ABID QURESHI, ESQ.
                            One Bryant Park
                            New York, NY  10035
                            (212) 872-1000

For Bondholder Group:       Milbank Tweed Hadley & McCloy
                            BY: THOMAS MATZ, ESQ.
                            BY: NICK BASSETT, ESQ.
                            One Chase Manhattan Plaza
                            New York, NY  10005
                            (212) 530-5000

For U. S. Trustee:          Office of the U. S. Trustee
                            BY: MARK KENNEY, ESQ.
                            844 King Street, Ste. 2207
                            Lockbox 35
                            Wilmington, DE  19801
                            (302) 573-6491

For LTD Committee:          Elliott Greenleaf
                            BY: RAFAEL ZAHRALDDIN, ESQ.
                            BY: ERIC SUTTY, ESQ.
                            BY: MARY KOHART, ESQ.
                            BY: SHELLEY KINSELLA, ESQ.
                            1105 Market St., Ste. 1700
                            Wilmington, DE  19801
                            (302) 384-9405

For Monitor, Ernst &
Young:                      Buchanan Ingersoll & Rooney, PC

```
                              BY: KATHLEEN A. MURPHY, ESQ.
                              1105 North Market St., Ste. 1900
                              Wilmington, DE  19801-1054
                              (302) 552-4214

                              Allen & Overy
                              BY: DANIEL GUYDER, ESQ.
                              1221 Avenue of the Americas
                              New York, NY  10020
                              (212) 610-6417

For UK Pension
Interests:                    Willkie Farr & Gallagher, LLP
                              BY: BRIAN O'CONNOR, ESQ.
                              787 Seventh Avenue
                              New York, NY  10019-6099
                              (212) 728-8000

For EMEA Debtors/
Joint Administrators:         Young Conaway Stargatt & Taylor
                              BY: EDWIN HARON, ESQ.
                              Rodney Square
                              1000 North King Street
                              Wilmington, DE  19801
                              (302) 571-6000

                              Hughes Hubbard & Reed LLP
                              BY: DEREK ADLER, ESQ.
                              BY: GABRIELLE GLEMANN, ESQ.
                              BY: CHARLES HUBERTY, ESQ.
                              One Battery Park Plaza
                              New York, NY  10005
                              (212) 837-6068

For Canadian Creditors
Committee (CCC):              DLA Piper, LLP, U.S.
                              BY: SELINDA A. MELNIK, ESQ.
                              919 N. Market St., Ste. 1500
                              Wilmington, DE  19801
                              (302) 468-5650

For Law Debenture:            Morris James LLP
                              BY: STEPHEN M. MILLER, ESQ.
                              500 Delaware Avenue, Ste. 1500
                              Wilmington, DE  19801-1494
                              (302) 888-6853
```

```
TELEPHONIC APPEARANCES:

For the Debtor:          Cleary Gottlieb Steen & Hamilton
                         BY: MARLA A. DECKER, ESQ.
                         (212) 225-2025

For Joint
Administrators:          Lax O'Sullivan Scott & Lisus
                         BY: MATTHEW GOTTLIEB, ESQ.
                         (416) 598-1744

                         Herbert Smith
                         BY: DANIEL MINDEL, ESQ.
                         BY: JOHN WHITEOAK, ESQ.
                         (302) 571-6710

                         Davies Ward Phillips & Vineberg LLP
                         BY: ROBIN SCHWILL, ESQ.
                         (416) 863-5502

For Official Committee
to the Retirees:         Togut Segal & Segal LLP
                         BY: NEIL BERGER, ESQ.
                         (212) 594-5000

                         McCarter & English
                         BY: WILLIAM F. TAYLOR, JR., ESQ.
                         (302) 984-6310

For Creditor, Aurelius:  Kramer Levin Naftalis & Frankel LLP
                         BY: DAVID E. BLABEY, JR., ESQ.
                         (212) 715-9100

For Creditor, NN UK
Pension Trust Limited:   Willkie Farr & Gallagher, LLP
                         BY: JACK TRACY, ESQ.
                         (212) 728-8744

For Ericsson, Inc.:      Wick Phillips Gould & Martin, LLP
                         BY: ANDREW M. GOULD, ESQ.
                         (214) 692-6200

                         Ericsson, Inc.
                         BY: TARA HITTLEMAM
                         (972) 583-3585
```

```
For Monitor, Ernst &
Young:                        Allen & Overy, LLP
                              BY: JOSEPH BADTKE=BERKOW, ESQ.
                              (646) 344-6563

For Creditor,
Wilmington Trust:             Katten Muchin Rosenman, LLP, NY
                              BY: DAVID CRICHLOW, ESQ.
                              BY: KAREN B. DINE, ESQ.
                              (212) 940-8941

For U.K. Pension Trust
Limited:                      Willkie Farr & Gallagher, LLP
                              BY: ANDREW HANRAHAN, ESQ.
                              (212) 728-8170

                              Hogan Lovells International
                              BY: DIMSDALE GILL

For Law Debenture:            Patterson, Belknap Webb & Tyler
                              BY: BRIAN GUINEY, ESQ.
                              (212) 336-2305
                              BY: DANIEL A. LOWENTHAL, ESQ.
                              (212) 336-2720

For Official Committee
Of Unsecured Creditors:       Akin Gump Strauss Hauer & Feld
                              BY: ROBERT JOHNSON, ESQ.
                              (212) 872-1077

                              Dentons Canada, LLP
                              BY: MICHAEL J. WUNDER, ESQ.
                              (416) 863-4715

For Other Prof,.
Jack Mui:                     Kamunting Street
                              BY: GREGOR DANNACHER
                              (203) 541-4243
For Interested Party:         Barclays Capital, Inc.
                              BY: OLIVIA MAURO
                              (212) 412-6773

For Interested Party:         Stone Lion Capital Partners
                              BY: CARRAS HOLMSTEAD
                              (212) 843-1296

For Interested Party:         Farallon Capital Management
                              BY: MICHAEL LINN
                              (415) 421-2132
```

```
For Interested Party:      Solus LP - Client
                           BY: STEPHEN BLAUNER
                           (212) 373-1562

For Interested Party:      Dow Jones & Company
                           BY: PEG BRICKLEY
                           (215) 462-0953

For Interested Party:      Bank of America
                           BY: ESTHER Chung
                           (646) 855-6705

For Interested Party:      Aurelius Capital Management, LP
                           BY: MATTHEW A. ZLOTO
                           (646) 445-6518

For Creditor:              In Pro Per/Pro Se
                           BY: NARINDER SARAN
                           (954) 341-7363

For In Propria Persona:    In Pro Per/Pro Se
                           BY: DANIEL DAVID
                           (919) 554-9291

For In Propria Persona:    In Pro Per/Pro Se
                           BY: JANETTE HEAD
                           (603) 626-6938

For In Propria Persona:    In Pro Per/Pro Se
                           BY: RAHUL KUMAR
                           9-813055-7415

For In Propria Persona:    In Pro Per/Pro Se
                           BY: KERRY W. LOGAN
                           (813) 644-7793

For In Propria Persona:    In Pro Per/Pro Se
                           BY: BRENDA ROHRBAUGH
                           (678) 764-5569

For In Propria Persona:    In Pro Per/Pro Se
                           BY: JOHN J. ROSSI
                           (330) 264-7737
```

```
For In Propria Persona
(Employee):                    In Pro Per/Pro Se
                               BY: DEBORAH M. JONES
                               (570) 439-1153

For In Propria Persona:        Nortel Networks, Inc.
                               BY: CAROL RAYMOND
                               (305) 238-4951
```

1

1    WILMINGTON, DELAWARE, WEDNESDAY, MAY 1, 2013, 10:00 A.M.

2              THE CLERK:  Please rise.

3              THE COURT:  Good morning, everyone.  Please be

4    seated.  Mr. Abbott, good morning.

5              MR. ABBOTT:  Good morning, Your Honor.  Derek

6    Abbott of Morris Nichols here for the Debtors.

7              It seems like it's been so long since we've been

8    here.

9                        (Laughter)

10             THE COURT:  Yes.  And I think we'll spend another

11   long day together, Ms. Abbott.

12             MR. ABBOTT:  Your Honor, we're here now for the

13   ten o'clock agenda which Your Honor will recall were the

14   motions regarding the pending appeals from the Allocation --

15             THE COURT:  That's right.

16             MR. ABBOTT:  -- Orders.  Your Honor, I just

17   wanted to be sure, with apologies, somewhat later last night

18   than we had hoped, we filed a short reply and leave to file

19   that reply.  I just wanted to make sure Your Honor had seen

20   those and if you had any questions or concerns, that we

21   would address them.

22             THE COURT:  I don't.  I suppose I should ask if

23   there's any objection to the motion to file the reply.  Mr.

24   Adler?

25             MR. ADLER:  There's no objection, Your Honor.

1              THE COURT:  All right, I'm going to sign the

2    Order then.

3              MR. ABBOTT:  Thank you, Your Honor.

4              THE COURT:  You bet.

5              MR. ABBOTT:  I can hand one up if that makes it

6    easier for Your Honor.

7              THE COURT:  I've got one right here, thank you,

8    though.

9              MR. ABBOTT:  Okay.  Thank you, Your Honor.  With

10   that, Your Honor, I will cede the podium to Mr. Bromley who

11   will prosecute these motions.

12             THE COURT:  All right, thank you.  Mr. Bromley,

13   you avoided yesterday's session.

14             MR. BROMLEY:  Yes, Your Honor.  And I am certain

15   that my time was well spent back in New York.

16                         (Laughter)

17             THE COURT:  Yes, I suspect so.  Let me ask you a

18   question to start with because, you know, this is -- it's an

19   interesting issue.  But I've been asked to certify the

20   appeal here to the Third Circuit.  And I just wonder what

21   the Third Circuit is going to say when it sees that I'm

22   certifying a frivolous appeal.  So --

23                         (Laughter)

24             MR. BROMLEY:  If Your Honor would like to enter

25   an order saying you're certifying a frivolous appeal, I'm

1    more than happy to prepare one.

2                    (Laughter)

3              MR. BROMLEY:  The -- that's a very good question,

4    Your Honor.  And --

5              THE COURT:  I know you have an answer.

6              MR. BROMLEY:  I have an answer.

7                    (Laughter)

8              MR. BROMLEY:  I do, indeed.  If you go back and

9    you look at the case law that deals with the question of

10   whether or not the Lower Court retains jurisdiction --

11             THE COURT:  Yes.

12             MR. BROMLEY:  -- during the pendency of an appeal

13   with respect to an arbitration clause, the standard is one

14   of whether it's frivolous or forfeited.

15             THE COURT:  Right.

16             MR. BROMLEY:  Right?  And so you have to go --

17   and it's funny how it turns a phrase, travel through the

18   law.  And if you go back to that decision, which is the

19   *Bradford Scott* decision, it's a Seventh Circuit decision,

20   Your Honor, issued in 1997.  And by a quite illustrious

21   panel, Chief Judge Posner, Circuit Judges Flaum and

22   Easterbrook, and authored by Circuit Judge Easterbrook.

23             THE COURT:  Yes.

24             MR. BROMLEY:  And if you turn to the question

25   that the Court was trying to address, you're looking at the

1    question of whether or not there's any way that either the

2    Circuit Court or the Trial Court can say hey, wait a second,

3    the appeal that is going forward, while it may be as of

4    right, is not sufficiently credible.  That all of the

5    procedural issues that need to happen below, shouldn't go

6    forward.

7              And so, when you're looking at *Bradford Scott*,

8    there's a description of it.  This is the Ninth Circuit,

9    citing a Ninth Circuit decision where the Ninth Circuit was

10   struggling with the question.  So the Ninth Circuit's second

11   reason that an automatic stay -- and this is where the --

12   before there is a slight split in the circuits at this

13   point, and the Third Circuit had not come down in *Ehleiter*

14   yet, obviously, because it adopted the *Bradford Scott* point.

15             THE COURT:  Sure.

16             MR. BROMLEY:  So Judge Easterbrook is looking at

17   the split in the circuits.  And the Ninth Circuit was saying

18   that there is no automatic stay.  And one of the reasons

19   that the Ninth Circuit gave is that an automatic stay would

20   give an obstinate or crafty litigant, too much ability to

21   disrupt the District Court's schedule by filing frivolous

22   appeals.  I would stipulate that my opponent is crafty.

23             This is a serious concern that Judge Easterbrook

24   goes on.  But one met by the response that the Appellee may

25   ask the Court of Appeals to dismiss the appeal as frivolous

1  or to affirm summarily.  Then Judge Easterbrook cites three

2  cases, *Abney vs. United States*, a 1977 Supreme Court

3  decision, *Apostle vs. Galleon*, a Seventh Circuit 1989

4  decision, oddly enough, also authored by Judge Easterbrook.

5          THE COURT:  Okay.

6          MR. BROMLEY:  And *Goshtasbi vs. University of*

7  *Illinois*, a Seventh Circuit decision in 1997, also authored

8  by Judge Easterbrook.  And these were all questions as to

9  whether interlocutory appeals raising the question -- they

10 were all interlocutory appeals raising the question whether

11 discovery in trial should proceed.

12          *Bradford Scott* is dealing with the Federal

13 Arbitration Act in 16(a).  *Bradford Scott* goes on to say,

14 either the Court of Appeals or the District Court may

15 declare that the appeal is frivolous.  And if it is, the

16 District Court may carry on with the case.  And this was

17 then adopted in the Third Circuit in the *Ehleiter* decision.

18          So what Judge Easterbrook says is that the

19 determination of frivolousness, if you will, if something

20 that the trier of fact, the Trial Court can determine, or

21 the Court of Appeals.  And this is --

22          THE COURT:  Is he sort of saying, too, that the

23 Trial Judge should look at not only the issues, but the

24 impact on the case before him?

25          MR. BROMLEY:  I think that that is clearly one of

1    the questions that Judge Easterbrook is trying to address

2    because he goes on to say, otherwise preparation for trial

3    must be suspended until the Court of Appeals renders a

4    decision.  So this is --

5                  THE COURT:  Exactly.

6                  MR. BROMLEY:  -- a decision of great moment.

7    Because what's happening when you're looking at a question

8    of an appeal as of right, there's the argument that the

9    Court, the trier of fact is divested of jurisdiction,

10   therefore, unable to deal with the issues, the issues of

11   discovery and preparation for trial.

12                 THE COURT:  And here we have the further

13   complication that there is no stay in the Canadian

14   proceeding.  And what impact might this have on that

15   proceeding?  In other words, are we going to have two

16   separate tracks now with discovery because discovery can

17   proceed in Canada and not here?  I mean, there's also a

18   practical concern.

19                 MR. BROMLEY:  There's most definitely a practical

20   concern.  And in addition to the question of whether or not

21   it can proceed in Canada is we do have separate claims

22   objections proceedings --

23                 THE COURT:  Right.

24                 MR. BROMLEY:  -- that relate to the EMEA claims

25   and that relate to the UK Pension claims, in which this

1  Court is vested with full and complete jurisdiction as to

2  which there is no appeal because there's no decision, and as

3  to which discovery should and must commence.

4         THE COURT:  And I think that the EMEA Debtors

5  concede that point in their papers.

6         MR. BROMLEY:  I believe they do.

7         THE COURT:  Yes.

8         MR. BROMLEY:  Now we've had this argument now for

9  three years, more or less, that by founding their allocation

10  arguments on their claims, because the allocation arguments

11  of the EMEA Debtors are premised on their claims because

12  those claims they say give rise to a security interest, a

13  constructive trust over the proceeds, they have effectively

14  tied up all of the allocation issues with their claims.

15         We've argued about whether or not the claims

16  should go first or the allocation should go first.

17         THE COURT:  Right.

18         MR. BROMLEY:  And the Courts have decided,

19  independently, that because the issues are so intertwined,

20  the factual issues, that they should all proceed at the same

21  time.

22         So the danger we have here is, not only if you

23  think we talked last week about the question of how many

24  separate proceedings are going forward, and leaving apart

25  the fact that there are multiple parties, there are the UK

1   Pension claims have made against the U.S. Debtors, and

2   separate claims have been made against the Canadian Debtors.

3              THE COURT:  Yes.

4              MR. BROMLEY:  The EMEA claims have been made

5   against the U.S. Debtors and separate claims have been made

6   against the Canadian Debtors.

7              On the EMEA claims, the EMEA claims say in the

8   United States, the ones that are left, you've aided and

9   abetted these breaches of fiduciary duty that the Canadian

10  Debtors committed.

11             THE COURT:  Yes.

12             MR. BROMLEY:  There's primary and secondary

13  liability and there's no secondary liability unless there's

14  primary liability.  And the jurisdictions to determine

15  whether or not there's primary liability, sits with Justice

16  Morawetz.  And the question whether there's secondary

17  liability, sits with you, Your Honor.

18             THE COURT:  Yes.

19             MR. BROMLEY:  Sitting in the middle, and quite

20  intentionally, in my mind, is the allocation issue.  And by

21  making the claims entirely part of their allocation theory,

22  the EMEA Debtors have successfully said, you can't go

23  forward with one without all of them.  The EMEA Debtors have

24  said over and over again, this allocation issue should be

25  arbitrated.  That's the most practical thing they say.  And

1    that's a theme that comes over in every single pleading that

2    they've filed on this point.  It's the most practical thing

3    to arbitrate.

4            The problem we have though is that the Courts are

5    vested are with independent jurisdiction with respect to

6    those underlying claims.

7            THE COURT:  Yes.

8            MR. BROMLEY:  So let me give an example.  If the

9    Chief Financial Officer of Nortel Networks, Ltd., in Canada

10   is alleged to have done something with respect to the

11   operations of Nortel Networks UK, Ltd.

12           THE COURT:  Yes.

13           MR. BROMLEY:  That constitutes a breach of

14   fiduciary duty.  The EMEA Debtors have said two things.  One

15   -- or three things.  One, the Canadian Debtors should be

16   responsible for that breach of fiduciary duty and any

17   damages that flow from it.  Justice Morawetz should decide

18   that.  The U.S. Debtors have aided and abetted that breach

19   of fiduciary duty, Judge Gross you decide that.  The

20   combination of those two alleged breaches of fiduciary duty,

21   primary and secondary together, give me, the EMEA Debtors, a

22   constructive trust over the proceeds of the sales that are

23   sitting in the bank account in New York City.  Arbitrate

24   that is what they say.

25           They have very neatly knitted it all together to

1    try to leave you and Justice Morawetz with a conundrum.  And

2    that conundrum we will demonstrate over and over again by

3    filing Notices of Appeal, and Motions for Leave to Appeal,

4    and partial joinders, and partial oppositions, just how

5    complicated this all should be.  And then, perhaps, we all

6    just in a fit of exhaustion, say fine, we'll go to Oz and

7    arbitrate.  Because the idea that arbitration provides some

8    sort of solution to all this is something that requires red

9    ruby slippers.  There's no --

10           THE COURT:  But that claim issue that you've

11   raised, the breach of fiduciary duty and pending in both

12   Courts, clearly implicates allocation.

13           MR. BROMLEY:  It --

14           THE COURT:  So going to arbitration would really

15   not advance things very much.

16           MR. BROMLEY:  We have to deal with the claims --

17           THE COURT:  Yeah.

18           MR. BROMLEY:  -- in each of the jurisdictions.

19           THE COURT:  Right.

20           MR. BROMLEY:  There's not even a -- there's no

21   argument, none whatsoever, that the claims are subject to

22   arbitration clause.

23           THE COURT:  Correct.

24           MR. BROMLEY:  Or an arbitration provision.

25           THE COURT:  That's right.

1           MR. BROMLEY:  It's never been argued.  It's not

2    before the Court.  The only question is whether allocation

3    is.

4           THE COURT:  Correct.

5           MR. BROMLEY:  Right?

6           THE COURT:  Right.

7           MR. BROMLEY:  And that question has been argued

8    twice; in June of 2011, with piles of papers this high, and

9    again, in March of 2013, with a little less, but still we

10   had all the other stuff.  We had, I believe, a 12 hour

11   hearing, a joint hearing in June of 2011.

12          THE COURT:  Yes.

13          MR. BROMLEY:  We had a five, or six, or seven

14   hour hearing here in March of 2013.  And the result of that

15   is -- were two decisions.  But it's very important that we

16   don't just stop there and think that there were two

17   hearings, right?  There was a very important hearing that

18   took place well before all of that.  And that hearing took

19   place in late June of 2009.  That hearing was a joint

20   hearing.

21          THE COURT:  Yes.

22          MR. BROMLEY:  That hearing led to Orders being

23   entered by this Court and the Canadian Court, approving the

24   interim funding and Settlement Agreement.  That is the

25   agreement in Section 12, that the EMEA Debtors point to to

1    say there's an agreement to arbitrate.

2            So one of the issues that we're dealing with here

3    is that we're not introducing to this Court a contract that

4    was negotiated or signed outside of the four corners of this

5    courtroom.  It wasn't a contract that I entered into when I

6    rented a car from Enterprise that said I'm submitting myself

7    to arbitration.  Or with my broker, which says that no

8    matter what you do, I can never sue you in a Court of law, I

9    only have to arbitrate.  It's not even a contract between

10   very sophisticated parties in different jurisdictions

11   represented by sophisticated counsel who then walk in to the

12   Court as strangers and say we've signed this contract, I

13   think it says X, and he thinks it says Y, please decide.

14           This is a contract that only exists because you

15   approved it.  This is a contract that only exists because

16   Justice Morawetz approved it.

17           THE COURT:  Right.

18           MR. BROMLEY:  So when we're sitting here looking

19   at the hearings that took place in June of 2011 and March of

20   2013, it is the second and third hearing about the IFSA.

21   It's not the first and second.  The first hearing about the

22   IFSA is a hearing about what that agreement says and what it

23   allowed us to do.  That agreement is the cornerstone of the

24   entire problem we have here.  It is the reason we have $7.5

25   billion to divide.  It's a great reason, right?

1          THE COURT:  Yes.

2          MR. BROMLEY:  It was very important that we have

3  the ability, notwithstanding the corporate separateness of

4  all of these entities and the separate proceeding that were

5  taking place, that we would be able to sell all of these

6  assets together worldwide as business units.

7          THE COURT:  Yes.

8          MR. BROMLEY:  That generated the $7.5 billion.

9  That's why we're here today arguing over that money.

10         The Joint Administrators signed that agreement.

11 The only time they ever went back to their Court to say,

12 just want to let you know, I'm signing something, was for

13 that agreement.  These two Courts, Your Honor, and Justice

14 Morawetz approved that agreement.  Never once did we say

15 that we were asking you or Justice Morawetz to approve an

16 Arbitration Agreement.  What we said was we need to sell

17 these businesses.  We need to sell them as fast as we can

18 and for as much as we can.  And we're going to put off the

19 question of allocation till later.  We'll try to work out

20 something.  We'll try.

21         And as Your Honor found in your opinion last

22 month, we tried.  We tried very, very hard.  But trying

23 doesn't mean that you have to do something.  And even when

24 you look at what the agreement says, it never says we have

25 to try to reach an agreement on arbitration.  There's no

1   mention of arbitration.  The only thing that they can pin

2   their hopes on is the two words, dispute resolvers.

3           THE COURT:  Yeah, yes.

4           MR. BROMLEY:  That's it.  So when we're sitting

5   here today and we're looking at whether or not the appeal

6   that's been filed meets the standard of *Bradford Scott,* we

7   have to step back and look at the history that we have here.

8   It's 2013, Your Honor.

9           THE COURT:  Yes.

10          MR. BROMLEY:  It's 2013.  And we're scheduling a

11  hearing to begin almost on the fifth anniversary of the

12  filing of all these cases.

13          THE COURT:  That's right.

14          MR. BROMLEY:  I have people working on this case

15  that were in college when it started.  The way the EMEA

16  Debtors are proceeding, we will finish this case with people

17  who are in grammar school right now.  What we have though is

18  the opportunity to move forward.  And the question is

19  whether or not the fact of this Court, together with Justice

20  Morawetz, who were witnesses to what was going, who had to

21  approve these -- this contract, the IFSA, the IFSA was a

22  creature of your Order.  You have the inherent jurisdiction

23  to be able to determine what you were doing when you entered

24  that Order.  We have litigated it to death.  But it boils

25  down to a few basic legal issues.

1          The Supreme Court in *Granite Rock vs.*

2   *International Brotherhood of Teamsters* says very clearly,

3   the question is whether or not the parties have agreed to

4   arbitrate anything, and if they have agreed to arbitrate

5   anything, does the particular dispute at issue, fit within

6   that arbitration clause.  *Granite* says very clearly, that an

7   Arbitration Agreement is a creature of contract.  And

8   without a contract to arbitrate, there is no presumption of

9   arbitrability, there is not arbitration.  Your Honor and

10  Justice Morawetz have found very clearly, without doubt,

11  that there is no contract to arbitrate.  It doesn't even get

12  close to a contract to arbitrate.

13         New York State Law makes very clear that the

14  question of whether or not, and that -- and this contract is

15  governed by New York Law.

16         THE COURT:  Yes.

17         MR. BROMLEY:  Makes very clear that whether or

18  not parol evidence should be reviewed is a question of law.

19  It is a determination that the Court needs to make.  And you

20  have found that in footnote in your opinion.  Because the --

21  it's a question of law, all of the noise that the Joint

22  Administrators bring to bear is irrelevant because the

23  contract is unambiguous on its face.  You have found that

24  and Justice Morawetz has found that.

25         So if we're sitting here and saying that the

1  Federal Arbitration Act creates some get out of jail free

2  card, which says that as long as you put in your Notice of

3  Appeal that is pursuant to Section 16 of the Federal

4  Arbitration Act, everything is stayed below.  The easiest

5  way to stop everything from going forward is to throw in

6  some argument that there's been an agreement to arbitrate

7  and then appeal on that basis and hold everything up.  And

8  the answer is that can't be the way we're supposed to run

9  the Court.  It can't be the way that we're supposed to deal

10  with these disputes.

11           THE COURT:  My hang up is with the word,

12  frivolous because it comes across as a very severe term.

13  And it's been equated with a basis for imposing sanctions.

14  I mean, that's part of my sort of hesitation.  Because look,

15  let me say this.  Among my many, many faults, I like to

16  think that arrogance is not one of them.  And I'm sure I was

17  right in that opinion.  And the reason I'm sure I'm right is

18  that as you've indicated, the Order approving IFSA was my

19  Order.  And if somebody thought that I -- that arbitration

20  was the mechanism by which the allocation of the sales

21  process was to be decided, they would have told me and it

22  would have been clear.  And it was certainly not an

23  insignificant type of issue for the parties seeking -- who

24  might seek later arbitration.  That would have been a very

25  critical issue, it seems to me, and would have been in bold

1  letters and it wasn't.

2          And so I really am confident, and I'm not always

3  confident and I'm with these people that can see both sides

4  of the story.  I don't see the other side.  But the word,

5  frivolous, just kind of is what's sticking in me a little

6  bit and that's what I've got to -- I suppose I have to

7  overcome that initial concern.

8          MR. BROMLEY:  Well, I think the issue, you point

9  out the concern with the exact phrase, right?

10          THE COURT:  Yes.

11          MR. BROMLEY:  And I think it's important to

12  recognize that a standard was setup in this *Bradford Scott*

13  case.  And it did deal with citations to other cases where

14  the finding was that the entitlement to the appeal was

15  without merit.  The descriptive term that was used was

16  frivolous.  There's no statute that says it has to be

17  frivolous.  *Ehleiter* doesn't say you have to find that it's

18  frivolous.

19          It's instructive to look at the *Kear Leis* case

20  which is a Western District of Pennsylvania case from 2007.

21  The Court there does mention the word, frivolous, but it

22  goes on to say here, the appeal of the Order denying the

23  Motion to Compel Arbitration, lacks colorable support.

24          THE COURT:  Okay.

25          MR. BROMLEY:  And is without merit because the

1   Defendant failed to set forth a prima facie case that a

2   written Arbitration Agreement existed.  As stated above,

3   Section 16(a)(1)(b) of the Federal Arbitration Act, only

4   confers appellate jurisdiction to review a denial of the

5   petition that alleges a prima facie case under Section 4 of

6   the FAA.  Section 4 applies only where the parties have

7   entered into a written agreement, a written Arbitration

8   Agreement.  And that's citing *Ehleiter 482 F.3d 212 at note*

9   *4.*  Thus to establish a prima facie case under Section 4,

10  evidence must be presented that a written Arbitration

11  Agreement exists.

12          That is really the legal standard.  That sounds

13  much more legalistic --

14          THE COURT:  Yes.

15          MR. BROMLEY:  -- that frivolous and forfeited.

16          THE COURT:  Yes.

17          MR. BROMLEY:  And that is the question, right?

18  Right now is there a written Arbitration Agreement that

19  would entitle the Joint Administrators to be able to be

20  entitled to the stay granted by the Federal Arbitration Act.

21  As a threshold question, you don't get into the Federal

22  Arbitration Act unless there's an agreement to arbitrate.

23  And so here, the question is is there a prime facie case?

24  And the answer is no.  Your Honor's already found that and

25  Justice Morawetz has found that.

1           The question is -- was also raised by the Third

2    Circuit in *Nagle vs. Alspach*, 1993.  And the Court in

3    *Chrysalis* says you should also look at the standard that the

4    Circuit Court would apply.  And there, the Circuit Court

5    said, the Third Circuit, that if upon review of the record

6    and the law, the appeal lacks colorable support, then the

7    District Court is not divested of jurisdiction.

8           So the problem is we have a word that has

9    pejorative feel to it that's --

10          THE COURT:  Well, that's right.

11          MR. BROMLEY:  -- been adopted through the case

12   law.  But the description of what that word means, talks in

13   terms that we can understand.  Was a prima facie case stated

14   that a written contract exists?

15          THE COURT:  Is there colorable support?

16          MR. BROMLEY:  Is there colorable support?  And

17   the question we were facing, right, is that the contract's

18   governed by New York Law.  The contract is signed by the

19   Joint Administrators.  The contract says that any disputes

20   relating to that contract are going to be dealt with by this

21   Court and Justice Morawetz.  Both you and Justice Morawetz

22   have independently found the contract's unambiguous.

23   Because the contract was unambiguous, that decision is --

24   you have the -- because the question of whether the contract

25   was unambiguous is a question of law.

1              THE COURT:  Yes.

2              MR. BROMLEY:  You're entitled to make that

3    decision.  Because it's unambiguous, you don't look at any

4    parol evidence.  And you have found that its unambiguous

5    that there's no contract to arbitrate.  When you look at the

6    appeals relating to the arbitrability of issues, it's

7    usually that, well, there is an arbitration clause, but does

8    it apply here?

9              Even in *Granite vs. Teamsters*, the question was,

10   there was there was an arbitration provision in a Collective

11   Bargaining Agreement.  Was that Collective Bargaining

12   Agreement adopted and in full force and effect at the time

13   that the dispute arose, such that the dispute was related to

14   -- could be -- arise under that Arbitration Agreement.

15             THE COURT:  Right.

16             MR. BROMLEY:  There was no question there was an

17   Arbitration Agreement.  The question was does this one

18   apply?  Here, there's no Arbitration Agreement.  We can't

19   have an agreement to arbitrate unless you approve it under

20   Rule 9019.  Not only the Federal Rules, but the Local Rules

21   requires that and you found that as well.

22             So you were in the best position possible to

23   determine that there is no agreement to arbitrate.  Not only

24   were you the Court that oversaw the approval of the contract

25   in the first place, not only do the rules require that a

1   separate motion be brought on notice to approve an

2   Arbitration Agreement, not only does the IFSA itself say to

3   the extent that there is an agreement on a protocol, it

4   doesn't come into effect until we come before you and you

5   approve it.

6           THE COURT:  Right.

7           MR. BROMLEY:  The words arbitration or arbitrator

8   are simply not used.  And we have two decisions of you and

9   Justice Morawetz both say there's no Arbitration Agreement.

10  I'm not allowed to walk out of here, I shouldn't be, and

11  simply say I have an agreement to arbitrate, take me to the

12  Third Circuit.  That would completely undercut the system

13  that we have in place.

14          Now I don't want to get into the question of

15  motivation, but we are sitting here today, Your Honor,

16  waiting on a very important set of issues.  Notwithstanding

17  the fact that the allocation issue as it relates to the EMEA

18  Debtors might be subject to appeal in their view.  We need

19  to move forward with respect to the claims.

20          THE COURT:  Yes.

21          MR. BROMLEY:  Every one of their claims, every

22  one of them in both jurisdictions, is the basis for their

23  allocation argument.  Our allocation argument has nothing to

24  do with claims.  Our allocation argument relates to fair

25  market value of the assets transferred.  Valuation of stuff

1    that moved.  We have not created out of whole cloth,

2    theories that people came in and manipulated stuff and

3    ignored corporate formalities notwithstanding the evidence

4    to the contrary, to create a constructive trust.  Your

5    Honor's already reviewed their claims.  And on the direct

6    claims, you've dismissed them all.  And on the secondary

7    claims, you said that they don't have any merit, but you

8    need to go forward to hear evidence to dismiss them in that

9    fashion.

10            So here we are sitting with claims that we in the

11    strongest way possible, don't support claims against the

12    U.S. Debtors, we're hooking on to this presumption of

13    arbitrability that would give rise to an automatic stay to

14    hold up the entire process.

15            I think that there's plenty of evidence in terms

16    of not evidence in the classic sense, but the proceedings

17    before the Court, that would allow this Court to find that

18    jurisdiction should be retained during the pendency of the

19    appeal and that certification of the appeal should go to the

20    Third Circuit.

21            THE COURT:  Yes.

22            MR. BROMLEY:  Now there's another issue that

23    relates to this.  And I think it's important to point it

24    out.  The EMEA Joint Administrators have also filed a Motion

25    for Leave to Appeal the Order that said please submit an

1    allocation protocol.

2             THE COURT:  Yes.

3             MR. BROMLEY:  Okay.  That complicates the

4    certification request.  But there's a solution to that.

5    Because when we're talking about the certification request,

6    we filed, along with the Official Committee, a request that

7    the Court, together with the Movants, asked the Third

8    Circuit to deal with the Notice of Appeal and deal with it

9    fast.

10            THE COURT:  Yes.

11            MR. BROMLEY:  Okay?  And that is an important

12   step, in our view.  Separately, the Joint Administrators

13   have filed their Motion for Leave to Appeal.  That according

14   to Judge Sontchi in the 2007 decision of *Simon & Schuster*

15   *vs. Advance Marketing Services*, creates a bizarre procedural

16   posture.  And it's interesting because *Simon and Schuster* is

17   exactly the same case as the question simply isolating the

18   Motion for Leave to Appeal and the certification with

19   respect that Motion for Leave to Appeal.

20            And in that case, Judge Sontchi said, look,

21   here's what we should do.  You filed a Motion for Leave to

22   Appeal to the District Court.  The Bankruptcy Court cannot

23   decide the Motion for Leave to Appeal.  That's for the

24   District Court to decide.  If the District Court decides the

25   Motion for Leave to Appeal that there should be an appeal,

1  then you have an appeal.  But until that time, there is no

2  appeal.  So you can't certify something that doesn't exist.

3         If the District Court decides that there is an

4  appeal, the District Court can then certify it to the

5  Circuit Court.

6         THE COURT:  Right.

7         MR. BROMLEY:  But we can't tie up this Notice of

8  Appeal which is as of right with this --

9         THE COURT:  Motion for --

10        MR. BROMLEY:  -- trailer with no wheels that

11 hasn't gone to the District Court yet.  Our papers on that

12 are due to day.  We'll file them.  The District Court will

13 decide it.  We'll ask the District Court to -- we're happy

14 to move with the Joint Administrators to ask the District

15 Court to expedite consideration of that.  But until the time

16 the District Court actually determines that there's a Notice

17 of Appeal, how can you --

18        THE COURT:  Certify.

19        MR. BROMLEY:  -- certify that to the Third

20 Circuit?  You'd be, in effect, divesting the District Court

21 of jurisdiction to decide the Motion for Leave to Appeal by

22 saying that the appeal should go directly to the Third

23 Circuit.  We think there's plenty of reasons why that's

24 entirely premature.  And that there is no basis to permit

25 that interlocutory appeal.  But that, frankly, Your Honor,

1    is not on your plate.  There's plenty of things on your

2    plate, it's on the District Court's plate.  And until

3    there's an appeal to certify, we can't hold up the

4    certification of the Notice of Appeal with respect to

5    Section 16 of the Federal Arbitration Act.

6              We think that notwithstanding whatever decision

7    is made here or at the Circuit level, we have to move

8    forward on discovery.  We have to move forward on discovery

9    on the claims.  That's going to happen.  It's a --

10             THE COURT:  And it may happen in Canada, for

11   example.

12             MR. BROMLEY:  And it --

13             THE COURT:  And then where are we?

14             MR. BROMLEY:  It's going to happen -- it'll

15   happen.

16             THE COURT:  Yeah.

17             MR. BROMLEY:  There's no question.

18             THE COURT:  I mean, there are different claims I

19   recognize, but there's going to be a discovery proceeding in

20   Canada.

21             MR. BROMLEY:  And there's going to be discovery

22   here on the claims with respect to the UK Pension --

23             THE COURT:  Right.

24             MR. BROMLEY:  -- and EMEA claims.

25             THE COURT:  Right.

1        MR. BROMLEY:  Without a doubt.  And we also

2   believe that even if there was an argument to be made that

3   the Court is divested of jurisdiction with respect to the

4   appeal of the EMEA -- the Joint Administrator's appeal of

5   the denial of the cross Motion to Arbitrate, the Court is

6   not divested of jurisdiction from dealing with allocation

7   for all other purposes because everyone else is involved.

8   And the fact that they have decided that they don't want to

9   be involved and feel that they have a right to appeal,

10  they're taking the risk.

11        There's case law out there which we're not

12  arguing today, but there's clear case law that says that

13  they're entitled -- that we're entitled to continue the

14  arbitration with respect to the parties who are not subject

15  to the stay, even if there was one.

16        THE COURT:  Not the arbitration.  You said that

17  we're entitled to continue --

18        MR. BROMLEY:  If there is a stay, we're entitled

19  to go forward with respect to -- I'm sorry, not the

20  arbitration.

21        THE COURT:  Right.

22        MR. BROMLEY:  With respect to discovery and the

23  litigation of the issues for those who are not subject to

24  the stay that's alleged under the Federal Arbitration Act.

25        THE COURT:  Yes.

1          MR. BROMLEY:  So when we -- when we're sitting

2   here, you know, we're trying to solve a procedural

3   conundrum.  But I think it's a procedural conundrum that is

4   being thrown up as an example of how difficult this is all

5   going to be.  And that as well, Your Honor is something that

6   we have a very hard time dealing with.  The Joint

7   Administrators have been before you over, and over, and

8   over, and over again.  They've litigated their claims in

9   front of you.  They've appeared at every single auction.

10  They have signed onto multiple contracts, over and over

11  again, submitting themselves to your jurisdiction.

12          Part of the Notice for Leave to Appeal says that

13  it's inconceivable that there could be a joint hearing.  You

14  know, I'm sorry, but --

15          THE COURT:  We have a lot of joint hearings.

16          MR. BROMLEY:  -- there's been a lot of joint

17  hearings.  And it's inconceivable to me that those sorts of

18  arguments continue to be made.

19          And frankly, we have restrained ourselves up to

20  this point, in terms of using sanctions and bad faith and

21  all that, but at some point, we will have to reassess that.

22  This cannot continue.  And there's, we think, plenty of

23  basis for that.  We're not asking for that.  We just want a

24  determination that this Court retains jurisdiction with

25  respect to all matters relating to the allocation pending

1    the resolution of their Notice of Appeal.  And if they think

2    that Your Honor's wrong on that, they can go to the Third

3    Circuit and we'll argue that on an expedited appeal.

4                THE COURT:  Yes.

5                MR. BROMLEY:  And, you know, there are plenty of

6    examples of these things moving very quickly.  And if this

7    is able to move through the Third Circuit in three or four

8    weeks, which I've seen it happen in other cases, then the

9    fact that everything is moving, doesn't prejudice them in

10   the least.

11               THE COURT:  Well as someone pointed out in their

12   prior opinion, the Third Circuit indicated that this case

13   has to go.  And I think that they're anxious to see that

14   happen.  Has to move is what I meant.

15               MR. BROMLEY:  Yes.

16               THE COURT:  You know, not go, but get going.

17               MR. BROMLEY:  Well, the fastest way out of your

18   courtroom is through your courtroom, Your Honor.  So we need

19   to -- there's no way we're not going to have to do that.

20               THE COURT:  All right.

21               MR. BROMLEY:  So I think I've covered most of my

22   argument in responding to your question.

23               THE COURT:  Thank you, Mr. Bromley.

24               MR. BROMLEY:  If there's anything else, any other

25   questions, I'm happy to address them.  And certainly,

1   reserve my rights after Mr. Adler has spoken.

2          THE COURT:  All right.  Thank you, sir.

3          MR. BROMLEY:  Thank you.

4          THE COURT:  It was certainly helpful.  Mr.

5   Qureshi, yes, sir?

6          MR. QURESHI:  Thank you, Your Honor.  Good

7   morning.  For the record, Abid Qureshi --

8          THE COURT:  Yes.

9          MR. QURESHI:  -- Akin Gump on behalf of the

10  Committee.

11         I will be short, Your Honor.  I've got three very

12  quick points to make.  The first is I want to answer the

13  question that you posed to Mr. Bromley which is why should I

14  certify a frivolous appeal straight to the Circuit --

15         THE COURT:  And you got to sit there and think

16  about it, didn't you?

17         MR. QURESHI:  And I got to sit there and think

18  about it.

19                       (Laughter)

20         MR. QURESHI:  And Mr. Bromley answered the

21  question.  It was a long answer.  And it was the right

22  answer.  And let me sum it up this way, Your Honor.  You

23  should certify a frivolous appeal precisely because it is

24  frivolous.

25         And if Your Honor looks at the Joint

1   Certification Motion, the prong on which we are collectively

2   asking that the appeal be certified is that swift

3   disposition of this appeal will materially advance the

4   progress of the case.  To hold that up, Your Honor, for an

5   appeal that is, in fact, frivolous, and I preferred the

6   term, colorable because it doesn't have that pejorative

7   context.  But to hold it up because of an appeal that has

8   absolutely no merit, is precisely why that prong exists.

9   And that prong of materially advancing the case is a ground

10  on which appeals can be certified straight to the circuit.

11  Particularly relevant here, I might add, given what the

12  Circuit Court has said in the past about this case and the

13  need to move it forward given its size, given how recoveries

14  to creditors is being held up.

15          THE COURT:  Yes.

16          MR. QURESHI:  Okay.  Second point, Your Honor,

17  and it's a legal one, it goes to the merits of did we agree

18  to arbitrate?  And it bears mentioning.  From the creditors'

19  perspective, Your Honor, the committee provided its written

20  support for the IFSA.  The notion, Your Honor, that we, as

21  the fiduciaries for all unsecured creditors of this estate,

22  would have in so doing, submitted to arbitration without

23  mentioning that word to the Court, without mentioning that

24  word in our written support for the IFSA, is frankly,

25  fanciful.  The suggestion that as the fiduciary for

1  creditors, we would simply implicitly and without any

2  express language, give that away to an arbitration just

3  doesn't withstand the laugh test, frankly.

4          The last point, Your Honor, is a practical one

5  which is -- and as Mr. Bromley point out, there are plenty

6  of examples of the Third Circuit moving swiftly,

7  particularly, in circumstances such as this.  There needs to

8  be no concern on Your Honor's part that declaring this

9  appeal to be frivolous would somehow deny the Joint

10  Administrators the ability to have their day in front of the

11  Appellate Court.  They will have that day with a trial on

12  allocation scheduled for January of 2014, Your Honor, will

13  not be depriving them of that.

14          THE COURT:  I was more concerned, frankly, with

15  the Third Circuit's accepting the appeal by saying --

16          MR. QURESHI:  Right.

17          THE COURT:  -- it was frivolous, so, yes.

18          MR. QURESHI:  Oh, understood.  And again, I think

19  that precisely because it is frivolous is why dispensing

20  with it quickly is really important given how it has the

21  potential to hold up the whole case.

22          THE COURT:  All right.  Thank you, Mr. Qureshi.

23          MR. QURESHI:  Thank you.

24          THE COURT:  Thank you, sir.  Anyone else on the

25  -- yes?  Good morning.

1           MR. GUYDER:  Good morning, Your Honor.  Dan

2   Guyder of Allen and Overy for Ernst & Young, the Monitor --

3           THE COURT:  Yes, sir.

4           MR. GUYDER:  -- on behalf of the Canadian

5   estates.

6           I just wanted to add to the points that Mr.

7   Bromley outlined for Your Honor.  The Canadian estates and

8   the Monitor support the Debtors' position with respect to

9   the matters before the Court this morning.  And I just want

10  to make that clear.

11          THE COURT:  All right.  I appreciate that, thank

12  you.

13          MR. GUYDER:  Thank you, Your Honor.

14          THE COURT:  Mr. Adler, you're up.  And I

15  certainly don't consider you to be a frivolous attorney.

16          MR. ADLER:  Oh, thank you very much, Your Honor.

17                     (Laughter)

18          MR. ADLER:  I appreciate that.  It's a --

19          THE COURT:  But whether your client's position is

20  frivolous or not is another issue of course.

21          MR. ADLER:  It's Derek Adler for the Joint

22  Administrators.

23          Well, you know, I'd like to address the broader

24  question up front because --

25          THE COURT:  Sure.

1          MR. ADLER:  -- I've heard Mr. Bromley say again,

2   and again, and again, that the Joint Administrators are

3   trying to delay and disrupt things and it's just not true.

4   Arbitration is, in fact, the only way out of this two

5   parallel tracks leading to a train wreck, we'd say actually,

6   when you can't -- when you have no way to reconcile the two

7   Court's decisions on allocation and two separate appeal

8   tracks that will go, we don't know where.  There's literally

9   no end in sight.

10          At one of the recent hearings, Mr. Bromley

11  accused the Joint Administrators of leading everyone around

12  in circles.  That's not the case.  We're, in fact, the only

13  ones pointing to a way out of that train wreck.  And, in

14  fact, we've been pointing to that way out since the Spring

15  of 2010.

16          When the first round of mediation failed, we

17  said, fine, that's done, let's go to arbitration now like

18  everyone has been talking about universally 100 percent in

19  every version over the protocol, in every conversation that

20  anyone had, we said fine, the mediation failed, now is the

21  time to start the arbitration.  Instead, the U.S. Debtors

22  and the committee decided they had changed their minds from

23  what they had been saying in all of the versions of the

24  allocation protocol.

25          And Mr. Qureshi had stood up today and suggested

1   that it would be some kind of breach of fiduciary duty for

2   him to agree to arbitration of his client's claims.  Well,

3   we can show you letters from him and his partners in which

4   they were quite happy to enter into a protocol that provided

5   for arbitration.  There was nothing wrong that they saw with

6   arbitration.  They were tinkering with the size -- shape of

7   the table issues in terms of what would happen in that

8   arbitration.  So if we had gone to arbitration as we thought

9   we all should in the Spring of 2010, we would not be here

10  arguing about this today.

11          Similarly, it is not the Joint Administrators

12  intention to stymie the current proceedings.  On the

13  contrary, as I said last time, the day we filed the Notice

14  of Appeal, we called up U.S. Debtors' counsel and said, we

15  filed this Notice of Appeal or it was actually even before

16  had filed it, we're about to file this Notice of Appeal.  We

17  don't think it should hold things up.  We can stipulate to

18  go forward with allocation pleading and discovery so that

19  everything will be all tidy and ready to go, whether -- when

20  the appeal has been decided and it can either be litigated

21  at a trial before Your Honor or in an arbitration.  So the

22  suggestion that we're trying to delay things or disrupt

23  things just there's no basis for that.  It's not true.

24          Now getting to the questions that are really

25  before us today.  It's common ground that this -- the

1  proceedings on allocation are stayed unless the appeal is

2  found to be frivolous or forfeited.  That has to be stayed

3  in relation to all parties of the allocation dispute.  The

4  Joint Administrators' Motion was based on the assertion that

5  all of the Nortel Debtors are bound by an agreement to

6  arbitrate the question of allocation.  This is not a case

7  where --

8          THE COURT:  Yeah, I wondered about that when Mr.

9  Bromley was arguing that point.

10         MR. ADLER:  Yeah.

11         THE COURT:  And I don't know how it could be --

12  right.

13         MR. ADLER:  I don't think it can be

14  [indiscernible].  There's a case that's in the record, this

15  *Quixote* case where there's a suggestion that discovery can

16  go forward as to some parties, but that's a case where you

17  had such a class action case against multiple Defendants.

18  Some of the Defendants said -- had Arbitration Agreements,

19  certain law firm Defendants in that case.  But that was a

20  case where there were multiple claims that could, in effect,

21  be divided and litigated separately.

22         In our case, we're fighting about how to divide

23  up one pie --

24         THE COURT:  Right.

25         MR. ADLER:  -- and you can't go and decide what

1  slice everybody else gets without also deciding the slice

2  that we get.  So it doesn't work in this case to say that

3  somehow things can go forward as to other parties and so as

4  -- but not as to us.

5          Now the Appellee does have the burden to show

6  frivolousness here.  And Third Circuit says it's a difficult

7  test to meet.

8          THE COURT:  Yes.

9          MR. ADLER:  That it was reluctant to meet it.

10 And Your Honor has rightly noted that the word, frivolous is

11 a word that's taken very seriously.  It's certainly not

12 sufficient to show that an appeal is non-meritorious.  You

13 have to show that there is no colorable argument as Mr.

14 Qureshi said.  It's certainly not sufficient to show that

15 the Lower Court ruled against the Appellant.

16          THE COURT:  No.

17          MR. ADLER:  Because obviously, every appeal would

18 be frivolous if that were the standard.

19                    (Laughter)

20          THE COURT:  That's right, certainly.

21          MR. ADLER:  So that can't be it.  Here, the

22 appeal is clearly not frivolous.  The prima facie elements

23 are made out.  There was a signed agreement in writing

24 approved by Your Honor.  The question comes down to the

25 interpretation of the terms of that agreement.  In

1  particular, the meaning of the term, dispute resolver, as

2  Your Honor well knows.  This is directly analogous to the

3  cases that Mr. Bromley was just referring to in which it's

4  not the existence of an arbitration clause, but the scope of

5  what's in it, what's covered by the written agreement.  In

6  those cases, the appeals are not found to be frivolous,

7  you're just arguing about the interpretation of an existing

8  clause in a written agreement that's actually signed by the

9  parties.

10            THE COURT:  Could there be a sliding scale in

11  this situation, Mr. Adler?  Because it -- I'm struck by

12  this.  In other words, the greater the impact on the case,

13  that the appeal might have and the stay might have, perhaps

14  the less frivolous there has -- it has to be in order to

15  find that frivolous -- to make that frivolous finding.

16            MR. ADLER:  Your Honor, I see where you're going

17  with that.  And the -- I think the answer to that is -- has

18  to do with the split in the circuits about how you deal with

19  this situation, whether an appeal from a denial of the

20  Motion to Compel Arbitration automatically stays the case

21  below.

22            THE COURT:  Right.

23            MR. ADLER:  And I confess, I haven't read all of

24  the cases in all of the circuits, but the sense I have from

25  looking at the Third Circuit and reading some of the

1    discussions of the other cases is that in some circuits, in

2    effect, the Court looks at it on a case-by-case basis as to

3    whether it's appropriate to stay or whether the Lower Court

4    proceedings can move forward in some form, during the

5    pendency of the appeal without prejudicing the rights of the

6    party that claims a right to arbitration.

7              THE COURT:  Yes.

8              MR. ADLER:  Unfortunately, I think in the Third

9    Circuit, it's kind of a bright line test.

10             THE COURT:  Yeah.

11             MR. ADLER:  And, you know, that -- I know that's

12   unhelpful.  But the solution we suggest is to -- for the

13   parties to stipulate.  Again, to agree that allocation

14   pleadings can be exchanged, allocation discovery can go

15   forward in conjunction with the discovery on the claims.

16   And that this will ultimately be usable in whatever forum

17   tries the allocation dispute.

18             So I was discussing how this basically comes down

19   to a matter of contract interpretation.  And this is a case

20   where there is no controlling authority that says what the

21   word, dispute resolver means here.  That is the key word.

22   And there was no controlling authority.  It's not a term

23   that's in lawyer's form books that has some kind of a

24   standard use.  It's really sweet generous here.

25             And we all found analogs in other cases.  There

1  were a remarkably small number of cases, actually, that had

2  ever even used the term.  It was something that the parties

3  came up here quite uniquely.  And for that reason, we said

4  that you needed to look at the discussions that they had

5  before entering into the IFSA to see what they meant by that

6  because it's very clear from the negotiations.  It's clear

7  why they chose that instead of arbitration.  And the reason

8  they chose it instead of arbitration is because in an

9  European context, there are private forms of dispute

10  resolution that are not arbitration, expert terminations by

11  accounting firms and things like that.  And some of the

12  early drafts show that they had considered these forms of

13  dispute resolutions that are not considered to be

14  "arbitration".  And they used the term, dispute resolver, to

15  encompass those.  Perhaps not focusing on the fact that for

16  purposes of the Federal Arbitration Act, that's all

17  considered arbitration.  So that was what was under

18  discussion in the -- at that time.

19          You know, frivolousness implies bad faith.  And

20  Mr. Bromley did use the word, bad faith.  Maybe not in

21  relation to this particular motion, but in general a few

22  minutes ago.  I say it can't be bad faith where you have a

23  year and a half of negotiations showing that no one ever

24  discussed doing this in Court.  It was always understood to

25  be in some private dispute resolution process.  And the only

1   question is whether as a technical matter, the IFSA properly

2   expressed that in unambiguous terms.  Because with all the

3   extrinsic evidence that we put in, there was no answer to

4   it, Your Honor.  Nobody came forward with anything that said

5   that this was ever contemplated to be decided at anything

6   other than an arbitration or a private dispute resolution

7   process of some form.

8           Now to get a little more feel for what can

9   qualify as frivolousness, I think you do have to look at the

10  cases that --

11          THE COURT:  Yes.

12          MR. ADLER:  -- the U.S. Debtor has cited in which

13  there has been a finding of frivolousness,  And then there's

14  only two cases that are -- really address this particular

15  context with an Arbitration Agreement and appeal from a

16  denial of a Motion to Compel Arbitration.  The *Kear Leis*

17  decision which Mr. Bromley mentioned, and the *Magna*

18  decision.  And in those two cases, there was no written

19  agreement that the parties pointed to, that the Appellant

20  pointed to, that contained an alleged arbitration clause.

21  There was no agreement signed by the parties.  So they

22  failed to get to first base.  They -- the parties in those

23  cases didn't allege the first element of a valid Arbitration

24  Agreement, an actual written agreement between the parties.

25          In the *Naval* case, which Mr. Bromley also

1  referred to, the appeal was found to be frivolous because

2  there were actually four independent grounds for the Lower

3  Court's decision.  And the Appellant only appealed two of

4  those grounds.  So the decision was going to stand,

5  regardless of what happened on the appeal.

6                    (Laughter)

7            THE COURT:  Understood.

8            MR. ADLER:  That was found to be frivolous.  In

9  the *Traxxas vs. Evras* [ph] case, that's really a forfeiture

10 case that the U.S. Debtor has cited.  In that case, the

11 Defendant's had effectively waived their right to arbitrate

12 because they had litigated in the Lower Court for 19 months

13 without mentioning a right to arbitration.  And then on the

14 eve of trial, they said, oh, we should go arbitrate this

15 dispute.  So that was found to be a frivolous appeal when

16 the Court said, no, you can't come to me 19 months of

17 litigation and then go up on appeal.  That that's frivolous.

18            And we're doing the opposite of that.  We're

19 calling attention to this at the beginning.  We're saying we

20 want to go forward.  Actually, we want to go forward

21 similarly to *Evras* case.  We want to go forward and do

22 everything, but we want it to be clear that if the Courts

23 above decide that this was arbitrable, that we would have

24 the allocation decided by arbitration.

25            Similarly in the *Koontz* case, which they have

1    cited, *Koontz vs. Saul Ewing*, the Appellants had engaged in

2    a very long train of abuses.  Their appeal cited no cases.

3    It had no facts alleged in support of their claims.  They

4    had delayed a disposition of the appeal in many outrageous

5    ways.  And they were raising a host of new issues in the

6    appeal that had never been brought before the Court below.

7    So it was, you know, this is an example of what's been

8    considered to be frivolous.

9               THE COURT:  Sure.

10              MR. ADLER:  Now in the papers that were submitted

11   last night and in the discussion today, Mr. Bromley has

12   referred quite reasonably to what was said to this Court,

13   what Your Honor, understood about this agreement at the

14   time, and I have to say, first of all, that we keep focusing

15   on the U.S. and Canada, but there really quite a few other

16   Courts here.  And when we made the -- our motion, we put in

17   additional information about what was said in these various

18   procedures.  And I think the French Court had, I think, said

19   arbitration.  I believe they actually used the word,

20   arbitration when they were approving this.  I could be

21   mistaken about that, I don't have it front of me right now,

22   but we had a host of things.

23              The case law says quite clearly that you don't

24   have to use the word, arbitration, provided it's clear that

25   there was an intent to decide the matter outside normal

1    Court proceedings in some independent private process.  And

2    when Mr. Bromley was presenting the IFSA to you at the

3    hearing that he referred to before back on June 29, 2009,

4    and this is on Page 33 of the transcript from that hearing,

5    he referred to the dispute would be done in a procedure that

6    would "require very little participation or intervention or

7    bother by these two Courts.  The view being that once we

8    have a fair, and reasonable, and independent body deciding

9    allocation..."  So, I mean, that's clearly not talking about

10   a Court, it's talking about a private dispute resolution

11   clause.  It's talking about an arbitration.

12            And I think Your Honor has implicitly made

13   statements that indicate the same thing as well in your

14   memorandum opinion on denying the, that pension stay, the

15   stay of the pension proceedings, stay here to pursue the

16   pension proceedings.  On Page 20 of that decision, you said

17   that in accordance with the IFSA, the purpose of the

18   protocol is to ensure a fair allocation to be determined

19   absent a consensual agreement in a single cross

20   jurisdictional forum.

21            You know, I think, Your Honor believed that there

22   would still be a protocol that would need to be entered, but

23   I think Your Honor also understood that what the parties had

24   been envisioning was an arbitration.  Some form of

25   international private dispute resolution process.

1              Now as I've said, and we said in our papers, we

2    don't see why we can't stipulate to proceed with allocation

3    pleading and discovery to get that done while this appeal is

4    pending.  We would simply need to say that it's going to be

5    without prejudice to the appeal.  That it would not be

6    considered a waiver of the Joint Administrator's right to

7    arbitrate, if that's upheld on appeal, or found on appeal,

8    rather.  And all of us would have to agree that if we

9    eventually do go to arbitration, we wouldn't redo the

10   pleadings and redo the discovery.  All of that would be

11   usable in an arbitration.

12              THE COURT:  Certainly.

13              MR. ADLER:  Last, in our last hearing, Mr.

14   Bromley suggested that this wasn't feasible because there

15   was a certain jurisdictional problem with having the Court

16   supervise discovery and supervise these pre-arbitration

17   procedures, discovery and the pleading for arbitration

18   purposes.  We don't see the support for that.  This isn't

19   the type of sort of federal subject matter jurisdiction

20   that's non-waivable, diversity and [indiscernible] question.

21   Whatever type of jurisdiction we're talking about here, it's

22   actually a contractual jurisdiction.  The -- what we've done

23   by agreeing arbitrate, you effectively waive your right to

24   proceed in Court. It's a contractual waiver --

25              THE COURT:  Yes.

1          MR. ADLER:  -- of a right to come to Court.  And

2    it's quite clear that the scope of the arbitration, how you

3    arbitrate, what use in the arbitration are all matters of

4    contract.  And it seems to us clear, that agreeing, by

5    agreeing to submit certain matters to the Court, but not the

6    ultimate issue of allocation, that's also a contractual

7    matter that should be within the power of the parties.

8          THE COURT:  Okay.

9          MR. ADLER:  It's a form of jurisdiction that can

10   be addressed by agreement, just as arbitration is a form of

11   waiver of the Court's jurisdiction.

12          Incidentally, this would only become an issue of

13   the appeal was successful.

14                    (Laughter)

15          THE COURT:  Right.

16          MR. ADLER:  Which they say it's not going to be.

17   So really, there shouldn't be any concern about anybody

18   coming back to the Court to challenge the pleadings and

19   discovery that took place before the Court, because in their

20   view we're going to be in the Court anyway.

21          So, I mean, you have this agreement.  If everyone

22   is a party to it, it's not the kind of thing that can be

23   reversed sua sponte.  So it would only be one of the parties

24   that could challenge this at some point.  And we all signed

25   it, we're all estopped from challenging it in due course.

1    So, you know, we think that's the way forward.  We're not

2    trying to delay this.

3            With regard to certification to the Third

4    Circuit, I think we all agree that the grounds plainly exist

5    and the only issue is whether you would certify both

6    aspects, the arbitrability and also the part of our appeal

7    in that we're seeking leave in relation to the joint hearing

8    protocol.  It seems to us that if one is important, they're

9    both equally important.

10           By the way, obviously, we know that you can have

11    successful joint cross border hearings here.  No one is

12    questioning that.  The question is at what point -- there's

13    quite clearly a limit to what can be decided in joint

14    hearings.  That's contemplated in all the literature on this

15    and all the, you know, the guidelines that are appended to

16    the joint cross border --

17           THE COURT:  Well, those joint hearings had a kind

18    of a common cause.  In other words, both Courts were

19    interested in maximizing the return to the estate.

20           MR. ADLER:  Correct.  And then this is --

21           THE COURT:  Here, technically, the two

22    jurisdictions could be -- well, I don't think we would be --

23    conflict is the wrong word because, obviously, we are

24    deciding matters equitably, but it could make things -- it

25    would be more difficult for certain.

1           MR. ADLER:  I mean, it seems to us that it goes

2    beyond, gets into the areas that can't properly be

3    addressed.  We also say that in a situation where there's

4    been a creation of a situation where you have two Courts

5    that are both sieves of the same subject matter, that it's

6    just contrary to all the legal principles that apply in a

7    parallel proceeding case.

8           Where, you know, as we said, I think in one of

9    our hearings, this is a situation in which one Court would

10   normally consider enjoining the other Court from proceeding

11   on things.  But certainly, you would consider staying

12   yourself in favor of Justice Morawetz or vice versa.  Or

13   you'd have a race to judgment on the principle that whoever

14   gets their first is going to be able to enforce first.  But

15   here, we're on parallel tracks which are going to end at the

16   same point.  You know, where the tracks are going to

17   converge at a certain point and that's the train wreck we

18   see which has no solutions and no way to appeal or resolve,

19   appeal to any higher authority, and that's what we're trying

20   to avoid, Your Honor.

21          THE COURT:  Yes, I certainly understand, Mr.

22   Adler.  And as you were saying that, I could see our troops

23   moving to the border even as you were speaking.

24                      (Laughter)

25          MR. ADLER:  Yeah, well we, you know, we've all

1    made jokes like that --

2              THE COURT:  Yes.

3              MR. ADLER:  -- I have to say --

4                   (Laughter)

5              MR. ADLER:  -- as to what the ultimate resort

6    would be.

7              THE COURT:  That's right.

8                        (Laughter)

9              MR. ADLER:  All right.  Thank you, Your Honor.

10             THE COURT:  Thank you for your argument, it was

11   --

12             MR. ADLER:  That's all I have, unless you have

13   any questions, that's what I have to say.

14             THE COURT:  No, it was well presented, thank you.

15             MR. ADLER:  Thank you, Your Honor.

16             THE COURT:  Mr. Bromley?

17             MR. BROMLEY:  Your Honor, Jim Bromley for the

18   U.S. Debtors.

19             A couple of points in rebuttal.  You know, I --

20   it's funny, the moving the troops to the border reminds me

21   of the first mediation we had in November of 2010.  It was a

22   full week, five full days, and at the end of it, I walked

23   away from it thinking that this was a shame that it hadn't

24   been able to proceed any further.  I am -- I went out and

25   bought, because of all the participants, I think it was 85

1   or 90 separate copies of a book and mailed it out to

2   everybody.  The Guns of August is the book by --

3            THE COURT:  Oh, yes.

4            MR. BROMLEY:  Barbara --

5            THE COURT:  A favorite book of mine, yes.

6            MR. BROMLEY:  -- Tuchman.

7            THE COURT:  Yes.

8            MR. BROMLEY:  And about all of the positioning

9   and posturing that took place in the Summer of 1914 that led

10  to a very unfortunate and damaging war.  And with the hope,

11  perhaps, of encouraging people to think a little harder

12  about trying to reach a conclusion.  And unfortunately, it

13  didn't really work out that way.  So we find ourselves in a

14  --

15           THE COURT:  But Ms. Tuchman was grateful.

16                       (Laughter)

17           MR. BROMLEY:  Yeah, I would note, one of my

18  Canadian colleagues sent me a book written by a Canadian --

19                       (Laughter)

20           MR. BROMLEY:  -- about the Peace Treaty of 1919.

21           THE COURT:  Oh, my.

22           MR. BROMLEY:  I think just to point out that it

23  was written by a Canadian, but --

24                       (Laughter)

25           MR. BROMLEY:  -- the fact is we are at that

1    point.  It's an unfortunate point.  But we can't lose sight

2    of a number of things, all right?  You know, Mr. Adler can

3    sound so reasonable that even I'm lulled into false sense of

4    security at times.

5                          (Laughter)

6                THE COURT:  Is there a problem with the

7    stipulation that they're proposing?

8                MR. BROMLEY:  Well, let me point it out this way,

9    Your Honor.  Here's the concern we have about the

10   stipulation, right?  The IFSA was an agreement signed by the

11   Joint Administrators.  We all think we know exactly what it

12   means and here we are years later litigating about it.  And

13   I don't want to find ourselves in that situation.  This was

14   the first time Mr. Adler's mentioned that, you know, that

15   this kind of stipulation would be in effect a sub-agreement

16   to arbitrate, if you will, a submission to the joint

17   jurisdiction of this Court and Justice Morawetz by contract

18   for purposes of conducting the discovery in whatever forum

19   it actually ends up being used.

20                Now that, in effect, is kind of creating a mini-

21   subset of an Arbitration Agreement --

22                THE COURT:  It gives some weight perhaps to his

23   argument about arbitration.

24                MR. BROMLEY:  Right.  And so that is problematic.

25                THE COURT:  Sure.

1          MR. BROMLEY:  You know, I think, if both Courts

2     order us to go forward on the discovery and state in that

3     Order that it's without any impact on the right to appeal in

4     either jurisdiction, that -- and that Order and any right to

5     appeal that Order is immediately waived, so that the Order

6     is immediately enforceable, that might be a way around it.

7     But we have to think a little bit about that.

8          I do -- I am concerned though because one of the

9     things about Mr. Adler's argument is that it continues to

10    focus on the wrong point of the question of whether or not

11    there's an Arbitration Agreement.  And it again focuses on

12    the idea that there are parties in a room reaching in an

13    agreement and that agreement can be enforced.  That

14    agreement has -- whatever it says, has no force and effect

15    until this Court approves it.  And the question is whether

16    these U.S. Debtors can be forced to arbitrate a dispute.

17    Rule 9019 requires that we make a motion. Rule 9019-3 of the

18    Local Rules requires that we make a motion.

19          THE COURT:  Correct.

20          MR. BROMLEY:  It says notwithstanding any

21    provision of the law to the contrary, the Court may refer a

22    dispute pending before it to mediation, and upon consent of

23    the parties to arbitration.

24          Your Honor never referred us to arbitration.

25    We've never consented to arbitration.  There's never been a

1    hearing about arbitration.  All of our creditors have never

2    had the opportunity to show up and say, I don't think this

3    should be arbitrated.  There is a fundamental missing link.

4    A condition precedent to any condition to arbitrate is an

5    Order of this Court saying we should arbitrate.  And there

6    is no such order.  It doesn't matter what the contract says.

7    It doesn't matter what the dispute resolver says.  Unless

8    you say we have to arbitrate, we can't arbitrate.  We're

9    just not allowed to do that.

10              So when we're sitting here years later, you know,

11   there's lots of things that Mr. Adler says.  And I don't

12   want to get into the parol evidence.

13              THE COURT:  No, I --

14              MR. BROMLEY:  But I can tell you, it is simply

15   not the case that the parties sat around and said we're

16   going to arbitrate and one day woke up and said, we're not

17   going to arbitrate.  That is not what happened.

18              THE COURT:  Okay.

19              MR. BROMLEY:  But it's not relevant.  We should

20   not get into what happened in those conversations.  The fact

21   is is that there's nothing in the record, in front of this

22   Court, pursuant to Rule 9019, that says that we're supposed

23   to arbitrate the allocation dispute.  And unless that is

24   here, we don't have an agreement to arbitrate.  We're

25   Debtors.  We're Chapter 11 Debtors.  There are certain

1    things that we cannot do.  If we had said we had sold the

2    headquarters building in Richardson, Texas, and we didn't

3    get approval from you to do it, Your Honor, and somebody

4    walked in and said, I've got this agreement. The question of

5    whether or not we had the authorization to do that would be

6    fundamental.

7              THE COURT:  Correct.

8              MR. BROMLEY:  So, you know, when we're sitting

9    here talking about this, I hear the statements of

10   reasonability.  But what I'm concerned about is that Mr.

11   Adler's clients have one thing in mind.  And that's we need

12   to arbitrate this.  And everything together, all of the

13   claims are going to be put together in that one place.

14   That's what they've been saying for three years.  There's no

15   agreement to arbitrate.  There's certainly no agreement to

16   arbitrate the claims.  The only reason their allocation

17   theory is premised on the claims is so that they can argue

18   that there's an arbitration obligation on the other parties.

19             I don't think there's a colorful argument that

20   there's an agreement to arbitrate here.  And, you know, if

21   the EMEA Debtors are willing to submit to an Order of this

22   Court saying that they are going to arbitrate, I mean, that

23   they are going to litigate and go through discovery and have

24   all of that apply, whatever the Third Circuit says, and they

25   do not appeal that and it's an Order of your Court, perhaps

1    that's a way we can go forward.  But to simply sit here and

2    say that we'll sign up an agreement, you know, Your Honor,

3    we've been fighting about this same agreement for three

4    years.  I just can't, in good conscience, say that we should

5    just go off and agree again.

6           THE COURT:  I appreciate that.  And look, let me

7    say this.  If the parties want to discuss an Order and they

8    had consented to a provision on the Order, I would certainly

9    give serious consideration to such an Order here.  But I

10   don't want to impose that -- obviously, I can't really

11   impose it upon the parties and I won't, but if there's

12   agreement, that would be wonderful.

13          MR. BROMLEY:  Thank you, Your Honor.

14          THE COURT:  Thank you, Mr. Bromley.  Well, look,

15   this is obviously a matter of concern.  I, frankly, have

16   never addressed the issue of the frivolousness of an appeal,

17   particularly an appeal that I'm going to be certifying to

18   the Third Circuit, and I want to be careful in what I say.

19   And so I am going to take a few days to render an opinion,

20   but I'm not going to slow down the process by any means.

21   The question for me is, as I understand it, the EMEA Debtors

22   also want this matter certified to the Third Circuit.  Is

23   that correct, Mr. Adler?

24          MR. ADLER:  Yes, that is correct.  And the -- one

25   point I forgot to mention before, the only difference

1  between the two certification Orders --

2          THE COURT:  You want both issues, if you will.

3          MR. ADLER:  Yeah, and but that doesn't -- the

4  Third Circuit would still have to decide whether it wants to

5  take, well both of them, actually.  So it doesn't deprive

6  anyone of the question of whether the other appeal, the

7  appeal that's not as of right, should be appealed or not.

8  The Third Circuit would still have to address that, but that

9  would be addressed in the context of this Motion to Certify.

10          THE COURT:  Understood.

11          MR. ADLER:  So and, in fact, it makes things go

12  faster.  Get, you know, get everything out there faster.

13          THE COURT:  But Mr. Bromley, I know or I

14  shouldn't have been saying Mr. Bromley, the Debtors oppose

15  that provision.  And --

16          MR. BROMLEY:  Well the problem --

17          THE COURT:  -- I have your Order, of course.

18          MR. BROMLEY:  I mean, the problem we have, Your

19  Honor, is that that Motion for Leave to Appeal has been

20  filed with the District Court.

21          THE COURT:  That's right.

22          MR. BROMLEY:  So I, you know --

23          THE COURT:  And God forbid I deprive them of

24  jurisdiction.

25                    (Laughter)

1        THE COURT:  I'm not going to do that, I can

2   promise you.  So I am going to enter -- but I can enter the

3   Order as far as I am concerned, even pending my decision on

4   this discreet issue.  Is that correct?  As --

5        MR. BROMLEY:  I'm sorry, which discreet issue are

6   you referring to?

7        THE COURT:  The discreet issue as to the --

8   whether or not this is a frivolous appeal.  I can certify

9   the appeal.

10        MR. BROMLEY:  Yeah, I think that's right, yeah.

11   My colleagues are pointing me to Rule 8000 -- Bankruptcy

12   Rule 8003 --

13        THE COURT:  Yes.

14        MR. BROMLEY:  --(d), Sub D, which appears to --

15   if leave to appeal is required and has not been earlier

16   granted, the authorization of a direct appeal by the Court

17   of Appeals, by a Court of Appeals, shall be deemed to

18   satisfy the requirement for leave to appeal.  So it does go

19   straight up to the Third Circuit and they decide whether to

20   take it or not in that context.

21        THE COURT:  Okay.  But the point is that the

22   District Court would not have the opportunity to decide the

23   motion.

24        MR. BROMLEY:  Well, I guess that's right, yeah,

25   it would be addressed directly in the Third Circuit.

1          THE COURT:  That's right.  That's right.  I

2    remember when I was one of those bright associates helping

3    the partner with the argument.

4                        (Laughter)

5          THE COURT:  All right.  All right.  I'm going to

6    take this very carefully under consideration.  I understand

7    where the parties -- good arguments and it was very helpful,

8    despite the fact that good arguments on both sides often

9    make it more difficult in reality, but at least it's sort of

10   pointed me in my -- in the direction.  I appreciate it and I

11   will -- yes, Mr. Bromley, I'm sorry.

12         MR. BROMLEY:  And I hesitate to get into the

13   procedural minutia, but 8003(d) says if leave to appeal is

14   required by 28 USC 158(a).

15         THE COURT:  Yes.

16         MR. BROMLEY:  And has not been -- has not earlier

17   been granted, okay.

18         THE COURT:  Right.

19         MR. BROMLEY:  So there's been a motion under

20   158(a) --

21         THE COURT:  Which I have not granted.

22         MR. BROMLEY:  Well, it's filed by the --

23         THE COURT:  I'm sorry, the District Court hasn't

24   granted it.

25         MR. BROMLEY:  -- it's filed at the Bankruptcy

1  Court, but then as soon as we file our response, it is then

2  packaged and sent to the District Court.

3           THE COURT:  That's correct.

4           MR. BROMLEY:  Our response is due to today.  And

5  so -- and we've been working all night on it, right?  So it

6  says the authorization of a direct appeal by the Court of

7  Appeals under 28 USC 158(d)(2), shall be deemed to satisfy

8  the requirement for Leave to Appeal.

9           So there's two things that are happening here,

10 right?  One is there's a Motion for Leave to Appeal.  I have

11 my response.  I have to file it today.  It's not a response

12 to the request for Leave to Appeal.  It's not the request --

13 it's not related to a request to certify the appeal.

14           THE COURT:  No.

15           MR. BROMLEY:  It's a request in response to the

16 Motion for Leave to Appeal.

17           THE COURT:  Right.

18           MR. BROMLEY:  So I'm not sure what I'm supposed

19 to do.  I have motion -- I'm going to file the response

20 today, but there's been no Motion to Authorize a Direct

21 Appeal of that to the Circuit Court.

22           THE COURT:  That's correct.

23           MR. BROMLEY:  I mean, if there is, tell me.

24           THE COURT:  Mr. Adler?

25           MR. ADLER:  Your Honor, may I introduce my

1  associate, Gabriel Glemann --

2          THE COURT:  Please.

3          MR. ADLER:  -- who has been admitted pro hoc vice

4  rather than having her whisper to me and then try and

5  translate it.  Thank you.

6          THE COURT:  All right, thank you.  Ms. Glemann,

7  welcome.  Good morning.

8          MS. GLEMANN:  Good afternoon, Your Honor.

9  Procedurally speaking, there's two aspects to any

10 certification.  First, we file an Application for

11 Certification with Your Honor.  And then we would need to

12 seek permission from the Appellate Court in order to accept

13 the appeal.

14         THE COURT:  And that's for today's purposes.

15 Right now for right now purposes.  That's dealing with the

16 arbitration issue?

17         MS. GLEMANN:  Yes, Your Honor.

18         THE COURT:  Yes.

19         MS. GLEMANN:  Now if you -- and with respect to

20 the allocation, the interlocutory appeal for the allocation,

21 because if you look at the committee notes to Rule 8003(d),

22 the reason why this provision was put in was because the

23 Courts understood that sometimes there might be a delay in

24 the District Court deciding the Motion for Leave to Appeal.

25 And so in the meantime, the only question before Your Honor

1    today is are there grounds to certify the appeal?  And you

2    enter an order that says I certify that this would

3    materially advance the case.

4              THE COURT:  Yes.

5              MS. GLEMANN:  We then go to the Third Circuit and

6    say we have an Order that says that this case has those

7    grounds and we seek your permission to accept it.

8              THE COURT:  Right.

9              MS. GLEMANN:  In the interim, if the District

10   Court grants the Motion for Leave, that decision is binding.

11   But 8003(d) leaves the procedural option open that if

12   there's been a huge delay in the District Court and they

13   haven't decided that motion, we have our Petition for

14   Permission into the Third Circuit, and they want to hear it,

15   they can say, yes, we accept the appeal, that nullifies the

16   need for the District Court to decide the Motion for Leave.

17             THE COURT:  Okay.  Now clearly, there's not been

18   any delay here.  That's -- thank you, Ms. Glemann, thank

19   you.  Now you've got me going to read the committee notes.

20                        (Laughter)

21             THE COURT:  Yes?

22             MR. BROMLEY:  Well, at least you didn't write the

23   committee notes.

24                        (Laughter)

25

1          THE COURT:  That's --

2                    (Laughter)

3          MR. BROMLEY:  The -- okay.  I think I see the

4   argument, but we have not had the opportunity to brief and

5   argue the question as to whether or not the interlocutory

6   appeal should be certified by you to the Third Circuit.

7          THE COURT:  Well, in fact, it wouldn't be me

8   anymore, it would be the District Court that would do the

9   certification.

10         MR. BROMLEY:  Well, no, I think --

11         THE COURT:  Ms. Glemann --

12         MS. GLEMANN:  Sorry, Your Honor.  No, I mean, I

13  think on our response, you know, and as Debtors' counsel

14  indicated, they are capable of doing that.  They could have

15  easily filed a Motion for Leave to file a reply and address

16  that issue in their papers.  And in counsel's argument, the

17  only thing he raised was the concept that procedurally it

18  shouldn't be granted because the Motion for Leave has not

19  been decided and that's not accurate. And so really, the

20  only question is does one of the three grounds for

21  certification exist?  And I think that they had ample

22  opportunity to address that in their papers.

23         MR. BROMLEY:  Well, Your Honor, since we're still

24  here and I have my 30 page response which we're going to

25  file today --

1         THE COURT:  Yes.

2         MR. BROMLEY:  -- I would like to take an

3  opportunity to argue right now that issue because if the

4  answer is is that the motion -- the response that they filed

5  on Monday, meant that I should have filed my 30 page

6  response to the motion that's due today yesterday, then I've

7  got it and then let's go.

8         THE COURT:  But --

9         MR. BROMLEY:  All right.

10         MS. GLEMANN:  But to clarify, the question isn't

11  whether or not leave should be granted, the question is

12  whether or not there's ample grounds under 158(d)(2) to

13  certify the appeal to the Third Circuit.  And no one's

14  asking this Court today to decide whether leave should be

15  granted.

16         MR. BROMLEY:  In *Simon & Schuster*, Judge Sontchi

17  said the standard is exactly the same.

18         THE COURT:  Right, right.

19         MR. BROMLEY:  So we're either going to argue it

20  or we're going to have an opportunity to brief it.  But we

21  should not have a situation where --

22         THE COURT:  Oh, no, I agree.

23         MR. BROMLEY:  -- we're going to have litigation

24  by ambush.

25         THE COURT:  We're certainly living unexpected

1  litigation at the very least.  Certainly, litigation that I

2  did not anticipate as well and I have, obviously, the

3  hearing on the settlement to proceed with, but I would say

4  this, Mr. Bromley.  I think you should file your response

5  with the District Court.  You've worked hard on it.  And at

6  the appropriate time, it seems to me, that the Third Circuit

7  will certainly be free.  And the EMEA Debtors will be free

8  to argue to the Third Circuit that they should also decide

9  that issue and the parties can -- the Third Circuit will do

10 what pleases it.

11          MR. BROMLEY:  I think procedurally, they have the

12 right in front of the District Court, once we file our

13 pleading which is here.

14          THE COURT:  Yes.

15          MR. BROMLEY:  Today, to ask the District Court to

16 expedite the consideration of the Motion for Leave to

17 Appeal.  And they can at that point in time, also ask the

18 District Court to certify --

19          THE COURT:  Right.

20          MR. BROMLEY:  -- directly to the Third Circuit.

21          THE COURT:  Right.

22          MR. BROMLEY:  And we can be heard in front of the

23 District Court on papers or orally on that issue.

24          THE COURT:  Right.  But I'm in no position to

25 decide that because nothing's really been filed before

1   relating to whether or not to certify the --

2           MR. BROMLEY:  I think that's right, Your Honor.

3           THE COURT:  -- what we're calling the

4   interlocutory appeal.

5           MR. ADLER:  We did argue it in the papers that

6   were submitted on Monday and submitted an Order on that, a

7   proposed Order on that on Monday, so.

8           THE COURT:  I saw your Order.  Okay.  All right.

9   But there's been no response to it and --

10          MR. BROMLEY:  There's nothing in that pleading as

11  far as I can tell, that says that they've withdrawn their

12  motion before the --

13          THE COURT:  The District Court.

14          MR. BROMLEY:  -- Court for Leave of Appeal. So

15  we're -- yeah, as Judge Sontchi mentioned in *Simon &*

16  *Schuster*, it presents a bizarre procedural posture --

17          THE COURT:  It does.

18          MR. BROMLEY:  -- in trying to deal with.  And

19  there, what Judge Sontchi said was essentially, the

20  hierarchy of the Courts say that the District Court should

21  decide it and the Bankruptcy Court should defer.

22          THE COURT:  Right.

23          MR. BROMLEY:  And so at this point, if they want

24  to withdraw their Motion for Leave to Appeal and only on

25  that basis proceed in front of Your Honor for a

1  certification, then I'm happy to submit papers and come back

2  and argue it tomorrow.

3           THE COURT:  All right.

4           MR. BROMLEY:  Because like I said, they're all

5  ready.

6           THE COURT:  I agree.  It's with the Motion for

7  Leave to Appeal pending before the District Court, it really

8  is the District Court's issue to decide and I'm going to

9  leave it with that, with the District Court for the moment.

10 And if you wish to withdraw that Motion for Leave to Appeal,

11 certainly, I will take the matter under consideration.

12          MR. ADLER:  We're not withdrawing that motion,

13 Your Honor.

14          THE COURT:  I didn't think so.

15                    (Laughter)

16          THE COURT:  All right, everyone. Thank you for a

17 good argument.  I realize I've got to get moving on this.

18 And I have a couple of matters between now and the weekend

19 which really will take my time, but I do have the weekend to

20 do some work on this and I will.  And hopefully, the

21 beginning of next week you'll hear from me.  Thank you all.

22 Good day to you.

23          MR. ADLER:  Thank you, Your Honor.

24          MR. BROMLEY:  Thank you, Your Honor.

25          MR. ABBOTT:  Your Honor, just I apologize.

1            (Off record 11:23:35 a.m. to 11:23:38 a.m.)

2            MR. ABBOTT:   -- masses assembled for the next

3   chapter of yesterday.

4            THE COURT:   Right.  Do you -- why don't I give

5   you ten minutes to --

6            MR. ABBOTT:   Ten minutes, 15 minutes, what does

7   Your Honor wish?

8            THE COURT:   Yeah, let me give you ten minutes and

9   you'll get set up and I'll come back out and we'll begin.

10            MR. ABBOTT:   Very well, thank you, Your Honor.

11            THE COURT:   Thank you.  Thanks for asking.

12            (Recess from 11:23 a.m. to 11:44 a.m.)

13            THE CLERK:   Please rise.

14            THE COURT:   Good morning, everyone.

15            MS. SCHWEITZER:   Good morning, Your Honor.

16            THE COURT:   Thank you.  You may be seated, and we

17   will proceed.  All right.

18            MR. ZAHRALDDIN:   Good morning, Your Honor.

19            THE COURT:   Mr. Zahraldin, good morning.

20            MR. ZAHRALDDIN:   Rafael Zahralddin, from Elliott

21   Greenleaf, for the Long-Term Disability Committee.  Your

22   Honor, I obviously share the podium on this last piece with

23   Ms. Schweitzer, but we're happy to report we received --

24   we've achieved a consensual resolution of the final Objection

25   to the Settlement Motion which was Emily Cullen's Objection.

1             THE COURT:  Yes.

2             MR. ZAHRALDDIN:  We have decided to provide some

3    credit for the value of the option to elect into certain

4    medical benefits and we're doing so in this manner.  It will

5    basically be a value, a present value, of seven percent per

6    year going out; you know, seven percent, 14 percent, 21

7    percent, until you reach 100 percent of the amount and that

8    will be per person and obviously up until 65 which is the

9    Plan termination year date.

10            THE COURT:  Right.

11            MS. ZAHRALDDIN:  And the value of that right will

12   affect approximately 18 to 20 people in a certain way and I

13   think it's a variance of maybe five percent.  However, of

14   course, the final numbers will be a little bit different

15   because we still have to account for any sort of attrition

16   before the end of the termination date but we believe that

17   this shifts the numbers around a little bit but in a way that

18   it achieves a consensual resolution so we can move forward

19   with the settlement.

20            THE COURT:  And by attrition I assume you mean,

21   for example, people who elected to join the Retiree --

22            MR. ZAHRALDDIN:  Yes.

23            THE COURT:  -- settlement and the like?

24            MR. ZAHRALDDIN:  Yes, and someone may reach -- we

25   have someone who is going to reach actually age 65 that

1   wasn't in the earlier projections because the June date

2   moved them out.

3            THE COURT:  Okay.

4            MR. ZAHRALDDIN:  And, of course, for those people

5   I've always told them you won the race because you got to

6   the end of your full contractual benefits with the Debtors,

7   and so once they see that, they're actually pretty happy

8   about getting there.

9            THE COURT:  Yes.

10           MR. ZAHRALDDIN:  And certainly, there could be

11  some other qualifying medical event to allow you to elect in

12  but that is true and, of course, unfortunately, we've had

13  some folks pass away.

14           THE COURT:  Yes, of course.  Yes.  All right.

15  Thank you.  Thank you, Mr. Zahralddin.  Does anyone wish to

16  be heard on this?  Mr. Cullen, is the resolution of your

17  Objection acceptable to you, sir?

18           MR. CULLEN:  Yes, Your Honor, Marc Cullen, for my

19  wife, Emily Cullen, for a say into this.  I accept the

20  resolution.  Thank you.  We'd like to, again, thank the

21  Court for their time they devoted to the issue and everybody

22  else's time.

23           THE COURT:  You bet.

24           MR. CULLEN:  Thank you.

25           THE COURT:  Thank you.

1              MR. BERGER:  Judge, it's Neil Berger, for the

2    Retiree Committee.  I'm on the phone.

3              THE COURT:  Yes, Mr. Berger.  Good morning.

4              MR. BERGER:  Good morning, Judge.  I'm happy that

5    those parties were able to find a settlement.  As was

6    discussed yesterday though, the LTD Plans are different than

7    the Retiree Welfare Medical Plan.  I just want to be certain

8    that the value credit for Mr. Cullen and the 18 or 20 other

9    people accrues in the LTD scenario but that credit doesn't

10   carry to the Retiree Committee's settlement to the extent

11   that people want to elect into the Retiree settlement under

12   our documents with very limited exception.  Once a person

13   waives medical that was final.  So that credit should not

14   accrue to anyone who's going to elect to migrate into the

15   Retiree settlement.

16             THE COURT:  That's my understanding.  It's not

17   transferable, in effect.

18             MR. ZAHRALDDIN:  My understanding is we're

19   playing in two different sandboxes.

20             THE COURT:  Yes.

21             MR. ZAHRALDDIN:  And we're going to stay in ours.

22             THE COURT:  Exactly.  And that's the Court's

23   understanding and just -- and I will state that on the

24   record that this modification, which is an important one but

25   which I consider to be immaterial for reasons that I'll

1   explain, does not affect the Retiree settlement.

2              MR. BERGER:  Thank you, Judge.  Thank you.

3              MR. CULLEN:  And, Your Honor, based on the

4   resolution, I just wanted to formally withdraw our

5   Objection.

6              THE COURT:  All right.  Thank you, Mr. Cullen.

7              MR. CULLEN:  Thank you.

8              THE COURT:  All right.

9              MR. ZAHRALDDIN:  Your Honor, I guess if you have

10  -- would you like us to also hand up an Order as well?  Do

11  you have --

12             THE COURT:  Yes.

13             MR. ZAHRALDDIN:  -- a revised Order?

14             THE COURT:  And I assume this is the final

15  version of the Order which -- does it incorporate this

16  language?

17             MR. ZAHRALDDIN:  Yes.  Well, what's incorporated

18  in it is a revised chart.

19             THE COURT:  Okay.

20             MR. ZAHRALDDIN:  And, of course, that will be

21  provided as the service of all Orders are and we will have

22  that posted on our website and, of course, it will go upon

23  the EPIC website as soon as it's entered and that will give

24  the methodology, the allocation methodology.  The

25  methodology will not change.  Obviously, the only

1  adjustments would be made were because of the attrition and

2  the other issues we just discussed.

3          THE COURT:  Understood.  Ms. Schweitzer, yes?

4          MS. SCHWEITZER:  Yes.  Too, Your Honor, I'm going

5  to approach, if I may, and hand up the revised Order as I

6  had handed you a black line yesterday.  There's just one

7  paragraph where there's a typographical error and the word

8  or was entered.  There's no other changes to the Order other

9  than as Mr. Zahralddin said as Exhibit 3 is now an updated

10 exhibit to account for the changes we just discussed, as

11 well as to reflect that the -- because the termination date

12 has moved down, moved to June --

13         THE COURT:  Yes.

14         MS. SCHWEITZER: -- that the aggregate claim

15 amount goes to $25.9 million.  And as the footnote in the

16 exhibit indicates that there is a possibility of further

17 change to account for these attrition variables and the

18 Order contemplates that a supplemental notice can be

19 submitted to the Court to reflect those adjustments for Mr.

20 Zahralddin's benefit.

21         THE COURT:  Okay.

22         MS. SCHWEITZER:  Okay?

23         THE COURT:  Very well.  Thank you.

24         MS. SCHWEITZER:  May I approach?

25         THE COURT:  You sure may.  Thank you.  So the

1  matter is now before me.  All of -- all Objections or all

2  parties who wish to be heard have been now heard and the

3  Court has entertained testimony and the submission of

4  evidence.  Are there any documents that any party wishes to

5  have introduced into evidence in support of the settlement?

6          MR. ZAHRALDDIN:  Your Honor, I think aside from

7  our Declarations and then Mr. Ray's Declaration --

8          THE COURT:  And those have been admitted.

9          MR. ZAHRALDDIN:  Those have been admitted?

10          THE COURT:  Yes.

11          MR. ZAHRALDDIN:  I do not believe we have any

12  other documents in support of the settlement but the Debtors

13  might have something.

14          MS. SCHWEITZER:  The only issue, Your Honor, is I

15  had noticed that in the -- when we originally filed the

16  Termination Motions in 2012, Mr. Ray put a Declaration in

17  support of that original Termination Motion.

18          THE COURT:  Yes.

19          MS. SCHWEITZER:  That simply authenticates a

20  couple of the Plan documents.

21          THE COURT:  All right.

22          MS. SCHWEITZER:  And so the only thing I would

23  say is that Mr. -- I would ask or request, unless anyone has

24  an objection, is Mr. Ray's prior Declarations authenticating

25  Plan documents be moved into evidence as well just so that

1  the record is formally complete --

2              THE COURT:  Yes.

3              MS. SCHWEITZER:  -- with respect to the Plan's

4  documents.

5              MR. ZAHRALDDIN:  Are those documents that we

6  received during discovery?

7              MS. SCHWEITZER:  Yes.  They've been produced.

8              MR. ZAHRALDDIN:  Okay.

9              MS. SCHWEITZER:  So, yes.

10             MR. ZAHRALDDIN:  I think, Your Honor, based on

11 the representation that we've reviewed them; they've been

12 produced, we have no problem with that.  I don't need to see

13 the document.

14             THE COURT:  All right.

15             MS. SCHWEITZER:  They're not under seal.

16             MR. ZAHRALDDIN:  Okay.

17             MS. SCHWEITZER:  And they're filed with the

18 Court.

19             MR. ZAHRALDDIN:  We have no objection.

20             THE COURT:  Then I do admit that prior

21 Declaration into evidence.

22             MS. SCHWEITZER:  Okay.  Great.

23             THE COURT:  I think it's -- it will help to

24 complete the record here.

25             MS. SCHWEITZER:  Okay.  Thank you, Your Honor.

1              THE COURT:  Thank you, Ms. Schweitzer.  Thank

2    you, Mr. Zahralddin.  And, first of all, I am going to

3    approve the settlement.  The Court is very satisfied that it

4    is in the best interest of the Debtors' Estates and, as

5    significantly, in the interests of the disabled employees of

6    the Debtors.  The alternative to this settlement would have

7    been potentially no recovery at all for disabled parties and

8    the testimony is clear and the record is clear that the

9    settlement amount is fair and reasonable and will provide

10   substantial benefits to the disabled parties.  Let me just

11   address for one moment the modification that I heard this

12   morning to resolve Mr. Cullen's -- or Mrs. Cullen's

13   Objection, Emily Cullen's Objection, because the fact is, as

14   I think the parties recognized yesterday, the Court had

15   grave concerns about the fairness of the settlement without

16   addressing the medical benefits of parties who had not

17   elected medical benefits in the prior year or years.  These

18   are disabled parties and medical benefits are clearly

19   essential to the welfare of such persons and it struck the

20   Court that it was not a fair and reasonable settlement

21   without addressing those medical benefits and allowing some

22   recovery for those benefits and, although the amount, in the

23   Court's opinion, is immaterial to the overall settlement.

24   It is very material to the fairness of the settlement and,

25   frankly, the modification, I think, enhances the settlement

1  and preserves, frankly, the settlement and allows the Court

2  to approve it.  So it was necessary and it was appropriate.

3  As far as -- I just have to really compliment any number of

4  parties because -- oh, let me also indicate that I am

5  certifying the Class.

6          MS. SCHWEITZER:  Yes, Your Honor.

7          THE COURT:  All of the requirements of Rule 23(a)

8  and -- Federal Rule of Civil Procedure 23(a) and 23(b)(2)

9  are satisfied and it certainly is the -- it's clear to the

10  Court, in particular, that the two factors really are

11  persuasive.  The first is that we have more than adequate

12  Class representatives.  The fact is they were members of the

13  Committee appointed by the Office of the United States

14  Trustee and served diligently and really with great vigor

15  and the Court recognizes their efforts and the fact that

16  they are now the Class representatives only adds, I think,

17  to the significance and the Court's approval of the

18  settlement.  I'm also satisfied that they are very ably

19  represented and that also gives the Court great

20  satisfaction, but as well, the other requirements of Federal

21  Rule of Civil Procedure 23 are satisfied here, the

22  numerosity and the like.  So we now are certified.  But I

23  started to say that, really, Mr. Zahralddin and his

24  companions, his associates, have worked tirelessly and,

25  really, this was a herculean effort and the Court is very

1  grateful and recognizes those efforts and not only the legal

2  aspects of the representation but really also, I think, as

3  much in this sensitive matter, the personal care and

4  attention that the firm brought to bear is very much

5  recognized and was critical, I think, in getting this to

6  where we are today, and the Debtors, because the Debtors

7  moved this case that was really -- that was going nowhere

8  and disabled parties who, fortunately, were still receiving

9  benefits were in kind of an uncertain status and this brings

10  certainty to them and I think that the compromise that was

11  reached is very impressive and the Court has to recognize

12  that as well.  And, of course, I also have to recognize the

13  Creditors Committee and the Bondholders who did not stand in

14  the way of this settlement and their support was also

15  important to the Court and the members, as I have already

16  indicated I think, but the members of the Committee, and now

17  the Class representatives, really it was -- I know it was a

18  labor and they had personal interest as well, but the fact

19  that they so carefully and lovingly, if you will,

20  represented their disabled colleagues is very much

21  appreciated and recognized by the Court as well.  So with

22  that, I am prepared to enter the Order approving the

23  settlement.

24          MR. ZAHRALDDIN:  Thank you very much, Your Honor.

25          THE COURT:  I am surprised Ms. Schweitzer hasn't

1    said it already.  It's May.  It's May, the lovely month of

2    May.

3              MR. ZAHRALDDIN:  It's only a few days before my

4    birthday, Your Honor, so.

5              THE COURT:  Oh, boy.  Okay.  Well, it's --

6              MR. ZAHRALDDIN:  So this is a welcomed present,

7    an early one.

8              THE COURT:  I remember that youth.

9                        (Laughter)

10             MR. ZAHRALDDIN:  Thank you, Your Honor.  I like

11   the compliment.

12             THE COURT:  Congratulations to everyone.

13             MS. SCHWEITZER:  Thank you, Your Honor.

14             COUNSEL:  Thank you, Your Honor.

15             MR. ZAHRALDDIN:  So, Your Honor, I've -- then I

16   guess that moves us to the remaining item on the Agenda

17   which is the distribution issues.

18             THE COURT:  Yes.

19             MR. ZAHRALDDIN:  And this was our Motion solely

20   and I think that, if you'd like, Your Honor, I'd like to,

21   for the benefit of the record and for you, just kind of take

22   you through the tax implications that we looked at fairly

23   quickly.

24             THE COURT:  Yes.

25             MR. ZAHRALDDIN:  And then get to the vehicle that

1   I think we have centered on, discuss the relief that we're

2   looking for and why, and then we have two witnesses.  I

3   think it might be useful to put them both up on the stand

4   and have them just walk through -- they're both fact

5   witnesses because one is Mr. Richard Mizak, who is here with

6   us who is with Alvarez & Marsal.  He's going to -- he would

7   take us through the administrative costs of the proposal.

8            THE COURT:  Okay.

9            MR. ZAHRALDDIN:  And then the other is Charles

10  Henderson, also of Alvarez & Marsal, and he will take us

11  through the tax calculations to show the savings.  So it's

12  really a cost benefit analysis and each one of them are

13  going to get together and they'll walk you through two sets,

14  two documents, two charts, which were attached to Mr.

15  Mizak's --

16           THE COURT:  Yes.

17           MR. ZAHRALDDIN:  -- Declaration.  And I think

18  that might be the most instructive way to kind of help you

19  understand the detail because that's really the big issue

20  here.

21           THE COURT:  All right.  I think that's a good

22  plan.

23           MR. ZAHRALDDIN:  Okay.  So we'll proceed in that

24  manner and, first, let me say that the big issue that's

25  facing our folks is that they have all the problems of

1   someone who is a personal injury physical injury, a disabled

2   person but none of the protection is provided to them under

3   the Tax Code and why do I say that?  Well, normally if you

4   were injured terribly and you brought a lawsuit, there are

5   exclusions from income under the Tax Code --

6           THE COURT:  That's right.

7           MR. ZAHRALDDIN:  -- for those types of benefits.

8           THE COURT:  That's right.

9           MR. ZAHRALDDIN:  And there's also particular tax

10  deferral vehicles, whether they be Disability Trusts or

11  otherwise, again, second to the Tax Code.  For all folks,

12  however, that's not the issue.  They have what is arguably

13  either an ERISA Plan/contractual or a fiduciary duty

14  violation and the Supreme Court is very careful to say, you

15  know, even emotional damage that leads to terrible physical

16  consequences has been cut off from any sort of tax

17  exemption.  And so we have all the problems of someone who

18  is disabled and has to do kind of a life Plan, including the

19  problems of, you know, early dissipation of the funds,

20  mismanagement, etc., and the tax burdens that would come on

21  top of that, not to mention the medical benefit impact which

22  comes with either higher premiums or other issues but none

23  of the protections or the vehicles to help them out, at

24  least we thought so initially.  So what we ended up looking

25  at with this Constituency is we sent them originally an

1  individualized statement that gave the full tax impact.  We

2  then figured that there were two possible ways to alleviate

3  the tax impact or -- I don't want to say the way to manage

4  this appropriately, particularly with this disabled Class.

5  And the first was to take the money that was apportioned to

6  medical benefits, which were never taxed before and so they

7  are, in essence, tax-free parts of the settlement, and move

8  them into a vehicle.  In this case, we chose an HRA which

9  would preserve that tax-free nature.  And then we had to

10  figure out a tax deferral piece of this because these folks

11  would be receiving just one big lump sum of their income

12  continuation but that's not really the way this was devised

13  when they originally purchased the insurance.  And so we

14  ended up saying well, we have to figure out a tax deferral

15  vehicle.  None seem to be available.  And then we were able

16  to find a private letter ruling which indicated that annuity

17  might be a -- there wasn't a statutory exception.  There was

18  at least a private letter ruling where an annuity had been

19  used to use tax defer.  We had also considered earlier on

20  trying to do another Disability Plan and then both of these

21  would be managed within the VEBA which is a pretty well-

22  accepted and very conservative tax vehicle to manage health

23  benefits because these were basically replacement health

24  benefits.  And the -- when we went to the IRS, they said

25  well, the annuity might work but the problem is that we see

1  transferring to the annuity as a conversion of all this into

2  deferred compensation.

3          THE COURT:  Oh.

4          MR. ZAHRALDDIN:  And, therefore, it would be

5  subject to FICA taxes so that causes a problem.  The other

6  problem with the annuity was when we went out to the market,

7  because we were looking for a conservative vehicle, a fixed

8  annuity, and those are backed up and regulated by the

9  States, the insurance companies that we've discussed this

10 with came back and said well, sure, we can do this.  We can

11 do a fixed annuity and -- but here are all the restrictions

12 and so it didn't really give us some of the flexibility we

13 needed in terms of payout and timing for these folks so that

14 was a problem.  So we really couldn't find anyone who would

15 also wait until the private letter ruling would come back

16 and allow us to dismantle the annuity and disburse out

17 because the worst case scenario would be we're going to hold

18 up your money for four years and yet you're still going to

19 get taxes if you received it this year.

20         THE COURT:  Sure.

21         MR. ZAHRALDDIN:  So that removed the annuity,

22 though the annuity was still an attractive option based upon

23 the tax savings.  So -- but lucky enough, our Tax Counsel,

24 in having informal discussions with one of the branch Chiefs

25 in charge of this issue for the IRS, he indicated that,

1    however, if we were able to create a new Disability Plan,

2    that you would then be able to do the same things tax-wise

3    that you'd been doing now if you are an LTD employee.  It

4    would be still third-party disability sick pay and,

5    therefore, not subject to FICA.  So that would solve our

6    FICA issue.

7              THE COURT:  Okay.

8              MR. ZAHRALDDIN:  And that as long as the

9    Disability Plan had -- because, really, the way the IRS

10   looks at this it's unrestricted cash that you can do

11   whatever you want with, falls into constructive receipt

12   problems, and even if you get it all and it's supposedly

13   spread out over time, as soon as you get that unrestricted

14   ability to do something with it, they say well, you received

15   it now and you're going to get taxed.  If it's put into a

16   Trust that's for your benefit and it has no strings attached

17   to it, it's irrevocable, then you fall under what -- the

18   sibling theory, which is the economic benefit theory, and

19   you get hit tax again all in one year.  However, if you put

20   it into the Disability Plan or the HRA, there are strings

21   attached to it and that's why you're allowed to either have

22   tax-free or tax deferral status for those settlement funds,

23   and what are the strings in the HRA?  Well, the strings in

24   the HRA are you can only use them for qualified medical

25   expenses.  They have to be monitored.  We'll be getting a

1   third-party administrator for that.  In some sense, it's a

2   little bit better for some of the LTD'ers because, right

3   now, if you died and your medical benefits ended, there's no

4   survivorship or slush fund.  You may have a little bit of

5   COBRA maybe and, in a way, the HRA does that because if you

6   have qualified beneficiaries, your spouse or dependents that

7   qualify, they can continue to use the HRA once you pass

8   away.

9            THE COURT:  Okay.

10           MR. ZAHRALDDIN:  Okay.  On the disability side,

11  the string is that if you pass away, the payments stop, just

12  like they do today.  The second string is we have to,

13  because it's a Disability Plan, we have to check for the

14  disabled status.  Now, we're going to try to get the records

15  from Prudential.  The Debtors have been very cooperative in

16  that.  They're going to try and do that.  But if not, we

17  have budgeted a third-party administrator who is going to

18  run the process to check for disability status.

19           THE COURT:  And there aren't an enormous number

20  of people here.

21           MR. ZAHRALDDIN:  No.  No there's not.

22           THE COURT:  There's about 195 people.

23           MR. ZAHRALDDIN:  There's not.

24           THE COURT:  Right.

25           MR. ZAHRALDDIN:  I think that -- and we'll go

1  through it in the line items but it's about 330K to run

2  that.

3          THE COURT:  Okay.

4          MR. ZAHRALDDIN:  Over a four-year period.

5          THE COURT:  Do you have to certify it each year,

6  in effect?  Is that what it is?

7          MR. ZAHRALDDIN:  Well, it just depends.  It just

8  depends.  I mean I think that is the maximum amount if you

9  were going to set everyone up and then check everyone each

10  year but we feel that that's likely not going to be the

11  case.  It's just a projection and that's a conservative

12  estimate but we -- but the quotes that we've gotten, it

13  should not be any more than that.

14          THE COURT:  Okay.

15          MR. ZAHRALDDIN:  It would probably be

16  significantly less.  So with those strings attached to the

17  Disability Plan and to the HRA, the IRS, at least, has

18  indicated that they would take a look at the Disability Plan

19  and if it qualifies as a Disability Plan, then you never get

20  to the question of FICA.  You eliminate the FICA liability.

21  You're able to achieve the tax deferral and you are also

22  able, through the HRA, to keep some sort of tax-free benefit

23  there and that is, in essence, the solution and the path

24  that we took to get to the solution.  Our papers have a lot

25  more detail about this and, obviously, our folks have

1    received, over time, individualized statements that have

2    shown them the impact of a full hit on taxes from a lump sum

3    settlement, the impacts with a 90K HRA because we looked at

4    that and that was the first cap we put on it because we

5    thought that -- we looked at prior medical usage and the

6    prior medical usage indicated that, you know, people might

7    not be using that full amount of the HRA, the full amount of

8    the benefits so we could scale that back.  We have some

9    feedback from several people on that issue.  We then went

10   back, after we got more feedback, and went to a $60,000 cap

11   because a lot of people said that they were -- you know, it

12   was a process of our folks going and talking to Medicare

13   Counselors, tax advisors, and everyone else.  As a matter of

14   fact, I mean I felt a little bit paternalistic about doing

15   this and when people called up and said hey, I just want a

16   lump sum, I would tell them, number one, I can't do that

17   because it impacts everybody else because --

18          THE COURT:  That's right.

19          MR. ZAHRALDDIN:  -- of constructive receipt and

20   the account of benefit.  I said but what you really should

21   do is go home; here's the SHIP number; the SHIP number, the

22   Counselor that's a Medicare Counselor paid for by the

23   Federal Government in each State.  We have the lists up on

24   our website of all 50 States.  I'll get on the phone with

25   you or you can do it independently or with your Counselor or

1    whatever.  I'll be there to explain the bankruptcy so that

2    you don't spend two hours doing that because, you know, it's

3    been a complicated process.  And once you planned out and

4    done some budgeting, done some actual planning, then come

5    back and tell me.  And low and behold, people would go, come

6    back, and they would say oh, I talked to somebody and they

7    didn't tell me that this program was available; I didn't

8    know about this; I can -- you know, can I -- then they

9    started asking me the right questions.  Can I use the HRA to

10   pay for my premiums?  That -- you know, that will help me

11   pay for my supplemental.  Now I can get -- and at least now

12   they got a little more clarify.

13            THE COURT:  Sure.

14            MR. ZAHRALDDIN:  So it wasn't -- so we weren't

15   able to -- because we don't want to cause a problem for the

16   entire Constituency by giving out lump sum payments just

17   based upon a request because we're not allowed to give

18   people that option.  But we felt through this process and

19   then through the Objection process that we could get enough

20   clarity on what people needed and then be able to preserve

21   the tax savings across the board for the group and I think

22   that process has worked out fairly well.  We actually only

23   have two Objections left to distribution as of yesterday.

24   We now only have one.  Ms. Day did call us yesterday.  She

25   has sent us an email; sent one to Mr. Sutty, and we have

1  resolved with her.  I will provide you -- she'll be an added

2  name onto the others that we talked about, in camera, should

3  you approve the Distribution Motion.

4           THE COURT:  Right.

5           MR. ZAHRALDDIN:  And that only leaves one

6  Objector, and again, we widely publicized this.  We had many

7  people we talked to and then I individually spoke to people.

8  So, obviously, there are going to be people who might come

9  back and say well, I wish I could do this or that.  But

10  really, what we need in this case is finality, finality in

11  terms of how we distribute the money out, not just for the

12  sake of any one individual but because they all really need

13  this, the tax savings as well as the finality and certainty

14  to go on to the next stage and that next stage is basically

15  life without the Nortel benefits.

16           THE COURT:  Right.

17           MR. ZAHRALDDIN:  So that's really my

18  presentation.  I think I'd like to call Mr. Mizak first.  He

19  can walk us through the first exhibit to show the

20  administrative costs and --

21           THE COURT:  Right.

22           MR. ZAHRALDDIN:  -- explain some of those.  And

23  then, after that, once I've relieved him, I will call up Mr.

24  Henderson and he can talk about the tax implications.

25           THE COURT:  Tax.  Very well.  Thank you.  Mr.

1 Mizak, if you'll come forward, sir.  Thank you.  And if --

2          MR. ZAHRALDDIN:  And, Your Honor, I will hand to

3 the folks in the Courtroom the same charts so they can

4 follow along and I'll bring one up to you, Your Honor.

5          THE COURT:  Thank you.  All right.  That would be

6 helpful.  If you'll just remain standing while you're sworn,

7 Mr. Mizak.

8          RICHARD JAMES MIZAK, DEBTORS' WITNESS, SWORN

9          THE COURT:  Thank you, Mr. Mizak.

10          MR. ZAHRALDDIN:  And, Your Honor, one note on

11 what I'm going to hand out to folks.  There are some lines

12 redacted.  The lines that are redacted are lines that would

13 allow someone to quickly re-engineer the purchase price

14 which --

15          THE COURT:  Okay.

16          MR. ZAHRALDDIN:  -- the purchaser has indicated

17 to us they had some material term that that price be kept

18 confidential.

19          THE COURT:  Okay.

20          MR. ZAHRALDDIN:  And so that's the only piece

21 that's been blacked out and I'm going to hand it out to

22 folks but that's for your benefits to understand why we

23 blacked that out.

24          THE COURT:  All right.  Thank you.

25          MR. ZAHRALDDIN:  May I approach, Your Honor?

1          THE COURT:  Yes you may.  Are you allowed to tell

2    me what the purchase price --

3          MR. ZAHRALDDIN:  I could whisper it to you.

4          THE COURT:  Or write it -- or something.  No,

5    that's fine.  I'm fine.

6          MR. ZAHRALDDIN:  I could actually, Your Honor, if

7    you'd like.

8          THE COURT:  Yes.  Would you mind?

9          MR. ZAHRALDDIN:  I'll get you an unredacted

10   version.

11         THE COURT:  Okay.

12         MS. SCHWEITZER:  Rafael, it's in the public

13   record what the purchase price and certain administrative

14   costs are, you know, the net amount after this amount and

15   that would give the Judge a pretty good idea also.

16         MR. ZAHRALDDIN:  All right.  But we're not

17   supposed to tell everyone.

18         MS. SCHWEITZER:  No, but that's in the --

19         MR. ZAHRALDDIN:  I'm not sure.

20         MS. SCHWEITZER:  The chart of the notices they

21   gave shows the gross amount less to account for the -- go

22   ahead.  We'll figure it out later.  Do you have the

23   document?

24         THE COURT:  Thank you.  Thank you.  Wonderful.

25   Thank you.

1                        DIRECT EXAMINATION

2    BY MR. ZAHRALDDIN:

3    Q    Though I'm not qualifying him as an expert, Mr. Mizak,

4    can you tell us a little bit about yourself and your

5    connection to the case?

6    A    My name is Richard Mizak.  I work for Alvarez &

7    Marsal.  I'm the Senior Director over the Financial Advisor

8    to the LTD Committee.  I have an undergraduate degree from

9    Xavier University in Finance and Actuarial Studies, a double

10   major; an MBA from New York University; Stern School of

11   Business.  I've been working in restructuring since 1999,

12   purely, and prior to that was in commercial banking doing a

13   lot of restructuring in the early 1990s.

14            THE COURT:  Oh, yes.  Thank you.

15            MR. MIZAK:  You're welcome.

16   BY MR. ZAHRALDDIN:

17   Q    And Mr. Mizak, can you take us to the second page?

18   A    Certainly.

19   Q    Which is the -- I'm sorry, first page.  My fault.

20   A    First page?

21   Q    Which -- and can you explain to me what this first

22   chart represents?

23   A    This chart, right?

24   Q    Yes.

25   A    Yes.  Well, there's four columns on the chart and then

1   these show the four final scenarios that Counsel explained.

2   The first scenario is the lump sum distribution with no HRA,

3   assuming you pay all the money out today, nothing -- no

4   questions asked.

5              THE COURT:  Right.

6              MR. MIZAK:  The next three scenarios assume a

7   VEBA Trust is established.  A lump sum with a 60 HRA, 60K

8   HRA cap would be paying out everybody a lump sum of the

9   income continuation portion of the settlement and

10  establishing a $60,000 HRA for the medical portion of

11  peoples' settlement.  The third column, the VEBA LTD Plan,

12  is the Disability Plan that Mr. -- that Counsel explained

13  prior.  In that situation, there would be four payments over

14  time based on peoples' years remaining to retirement.  So if

15  somebody has less than three years to retirement, they would

16  be paid in one lump sum; four to eight years to retirement,

17  two payments; greater than eight years, four years of

18  payments.

19             THE COURT:  Right.  Right.

20             MR. MIZAK:  And --

21             MR. ZAHRALDDIN:  And, Your Honor, I have a second

22  chart that might help with that if you don't mind if I

23  approach?

24             THE COURT:  Fine.  That's fine.  Thank you, Mr.

25  Zahralddin.  Thank you, sir.  Yes.

1          MR. MIZAK:  Yes.  So the second table that he's

2    just passed out shows the number of participants who are in

3    each of these three groups and, obviously, someone with less

4    than three years to retirement have the lowest actuarial

5    value so you typically don't get them bounced into the next

6    tax -- too high in the range.  And then the people with

7    three to eight have the next range and it tends to

8    approximate what they're currently receiving now and it kind

9    of matches them and keeps them kind of in line and doesn't

10   kind of knock them out of the ballpark as far as taxes go.

11          MR. ZAHRALDDIN:  And Mr. Henderson will give a

12   little more color to that.

13          THE COURT:  To the tax aspect, yes.

14          MR. ZAHRALDDIN:  Now, I wanted to introduce that

15   chart because the second chart doesn't kind of make sense

16   without the first one, but Mr. Henderson will go through the

17   tax benefits a little bit more in detail.

18   BY MR. ZAHRALDDIN:

19   Q     Mr. Mizak, if you can turn to the second page?

20   A     Certainly.

21   Q     And what I'd like you to do is because these are some

22   of the costs, can you take us through the costs or

23   preliminary projections on the costs in regard to each of

24   the variations?

25   A     Okay.  The -- not shown on here is the lump sum

1   because, in that situation, you just basically have a

2   disbursing agent and maybe a little bit of legal set aside.

3   I think we have $200,000 set aside for, you know, defending

4   claims and that sort of thing after the effective date.

5   These are all the situations if you had to establish a VEBA

6   Trust and you had an HRA account.  The first column on the

7   second page is the lump sum with a 60K HRA cap.  The second

8   is the VEBA LTD Plan and the third is the annuity that we

9   talked about.

10          THE COURT:  Yes.

11          MR. MIZAK:  In general, most of the costs are the

12  same on the various categories, the differences largely

13  being with the quirk, obviously, you know, the audit is a

14  little cheaper if you're only auditing one year of payments

15  versus four.

16          THE COURT:  Right.

17          MR. MIZAK:  You know, that sort of thing.

18          MR. ZAHRALDDIN:  And one of the things, Your

19  Honor, that we found in our Objections, people had a concern

20  over, and this was in the settlement as well, you know,

21  who's going to watch this money?

22          THE COURT:  Yes.

23          MR. ZAHRALDDIN:  You know, who's going to keep

24  people from slipping out in the middle of the night and, you

25  know, taking the team out of Baltimore and going to

1   wherever?  So the main issue -- I know, it's still smirch

2   for me; that's why I bring it up.

3              THE COURT:  I'm sure.

4              MR. ZAHRALDDIN:  So that was one of the main

5   issues and I think that one of the reasons again we chose

6   the VEBA was in order to provide a very conservative

7   established fiduciary duty laden Trust that would take care

8   of this.  And so some of the things that the Objectors are

9   actually asking for, I believe, we're providing in these

10  costs.  So they're justified not just for the tax savings,

11  but also because of the security that it will provide by

12  giving it structure.

13             THE COURT:  Excellent.

14             MR. MIZAK:  Okay. For example, one of the areas

15  that you'll notice in the blank -- in the middle is blank,

16  investment management.  The Committee has selected Delaware

17  Investments to be their investment manager.  They

18  interviewed a few firms.  All of the firms that we

19  interviewed had experience with VEBAs.  They were very

20  reasonably priced.  We kind of beat them up and narrowed

21  them down.  In this situation, we showed nothing because

22  interest rates are so low.  Like right now, for example, as

23  of Monday, the one-year T-bill was, you know, .12 percent.

24             THE COURT:  Yes.

25             MR. MIZAK:  The two-year was .2.  So we believe

1   we're going to make some money on it.  We -- hopefully, a

2   little bit, that will go back to it but we don't want to

3   guarantee and bank on some sizable return because,

4   obviously, they'll be wearing their fiduciary hats and have

5   to make sure that the money is there four years from now

6   when Mrs. Johnson swipes her debit card to pay for her

7   prescription.

8          MR. ZAHRALDDIN:  All right.  And, Your Honor, we

9   also -- we know that there was some Objections that said

10  that they would prefer to take the money on their own and

11  invest it; they'd make more money, and, of course, our aim

12  is tax mitigation, tax deferment, and preservation --

13         THE COURT:  Yes.

14         MR. ZAHRALDDIN:  -- of these amounts.  And if we

15  can cover some of the administrative costs, that's what we

16  believe should be the appropriate constructive approach to

17  handling this settlement --

18         THE COURT:  You bet.

19         MR. ZAHRALDDIN:  -- and we believe that's the

20  best for everyone here because of the status of our

21  Constituency and otherwise.

22         THE COURT:  I certainly agree with that.

23         MR. MIZAK:  Would you like me to talk down the

24  list or?

25  BY MR. ZAHRALDDIN:

1  Q     I think what might be useful, Mr. Mizak, is that, yes,

2  if you want to go down the list and then we can also -- I'll

3  ask a couple of questions that maybe talk about the what if

4  scenarios in regards to private letter ruling requests.

5  A     Okay.  On accounting, we basically -- we've identified

6  a few regional accounting firms that are reasonably priced

7  that do a lot of work in the insurance-base.  They basically

8  are going to be a virtual back office.  We're going to be a

9  virtual company.  So you have to have somebody to prepare

10  the financial statements, the quarterly reports, all the

11  things for the meeting.

12          THE COURT:  Yes.

13          MR. MIZAK:  A CPA firm who can do this and

14  qualify so that -- you know, obviously, Rafael doesn't want

15  to pull together the investment statements and make

16  presentations.  It's much more economical to have a firm

17  that can do this sort of work -- do that kind of work.  The

18  audit service provider would be an annual audit.  You'll

19  notice it's off a year because, obviously, we audit the

20  following year.

21          THE COURT:  Yes.

22          MR. MIZAK:  And we've talked to about five

23  different firms; again, all have experience with VEBAs, do

24  this kind of work.  This is an aggregate of their average

25  estimate ballpark, you know.

1          MR. ZAHRALDDIN:  And again, some of the

2    Objections, we're asking for an independent audit and,

3    despite the fact that we believe that our fiduciaries duties

4    as a Committee and as Counsel have to at least get us to the

5    point where we can get someone to do it and an audit.

6    Obviously, structure of a VEBA requires such an audit and so

7    that other concern is addressed as well by this.

8          THE COURT:  Okay.

9          MR. MIZAK:  Correct.  Tax compliance services,

10   there's certain one-time filing fees our tax professionals

11   identified that would have to be done and filed.  A

12   disbursing agent would cut the checks.  They do all the

13   withholdings.  They have to, you know, receive I believe

14   it's a W-2 from each person; what are your elections, and

15   kind of make sure that that's handled so that the Trust

16   doesn't bear any liability.  You know, gosh, God forbid

17   somebody didn't file their taxes or something happened.

18   Trustee meetings, we put in the preliminary estimate for,

19   you know, assumed people go to quarterly meetings, there

20   would be some travel costs.  There'd be some other

21   estimates.  We believe, obviously, that might taper off over

22   time but we had to forecast that.

23          THE COURT:  Okay.

24          MR. MIZAK:  Trustee fees, we put in a little

25   place older of amount per individual.  We don't know if they

1   will be paid of not to participate as a VEBA Trustee person

2   or if you have to hire a third-party in case somebody drops

3   or they --

4          MR. ZAHRALDDIN:  And many of these numbers were

5   -- the benefit of sharing both actuary and financial advisor

6   with the Retiree Committee, the Retirees already had a

7   couple months' head-start on us so Alvarez & Marsal was able

8   to investigate and pull these things together rather quickly

9   for us as well.  It may be, Your Honor, because we have a

10  disabled populated, they're not going to want to meet as

11  much in terms of in-person meetings as are Retirees do so

12  some of these costs may be less.  But we wanted to also

13  build in the fact that maybe we'd have to go out and get an

14  independent Trustee in case we had severe attrition because

15  of the health condition of these folks.

16         THE COURT:  Good.  I certainly understand that.

17         MR. MIZAK:  Insurance, there's certain D&O, E&O,

18  and fiduciary insurances and ERISA Bond that's required for

19  a VEBA Trust.  But we have two quotes from Ace and XO.

20  Actually, the quote came in on Monday at 25,000 so that's

21  less.  But that's a one-time, five-year Plan for the

22  Committee but they have -- they obviously will have to

23  choose which one they want based on the terms of those

24  quotes and get back.  The investment management actuarial,

25  we have a line in there.  We didn't put anything in it.  We

1  think we're going to have everything done by Towers Watson

2  before we go in so hopefully we don't have to.  Although

3  maybe in a few years from now, you have to do a re-

4  balancing.  Investment management custody and any income we

5  earn as we talked about earlier.  Legal for the VEBA would

6  be just the cost of Counsel for the VEBA Committee to meet

7  once a month.  The annuity fee, in this situation, you'll

8  see a negative 75,000.  We got two quotes.  One of the

9  quotes was actually a benefit.  They were going to give us

10 75,000 to invest the money.  The problem was there was also

11 the break fee.  If the private letter ruling failed, they

12 were unwilling to break it.  You know, so it sort of put us

13 in a tricky situation.

14          MR. ZAHRALDDIN:  And, Your Honor, the annuity,

15 obviously for certain reasons, is unattractive to us but we

16 wanted to put it in there for comparison sake and,

17 obviously, this also reflects what's gone out to our

18 Constituency as well and it's reflective of the information

19 they have received.

20 BY MR. ZAHRALDDIN:

21 Q     Mr. Mizak, can you tell me -- one of the questions I

22 think I'd like to ask is if the private letter ruling is

23 unsuccessful, what are the costs associated with an

24 unsuccessful private letter ruling?

25 A     So let's say we get a private letter ruling late this

1   year or early next year.  I assume you're going to incur

2   everything in the VEBA LTD Plan column one, 2013, and maybe

3   some portion of the 2014 line, maybe 200,000 or something

4   because the lessee will get it hopefully early in the year

5   so maybe up to a $1 million.  It just -- and I think, at

6   that point, you would -- you'd still have an HRA.  Everybody

7   would still have their HRA accounts so you have to run the

8   VEBA Trust for that.  You could probably run it

9   [indiscernible] down and then you'd pay out the income

10  continuation part that would have previously paid up to four

11  years, you'd pay out immediately.

12  Q    Correct.  So if, indeed, that does fall apart, those

13  are the costs and we believe strongly that that amount of

14  money is worth going and following through on the private

15  letter ruling process and Mr. Henderson will provide further

16  testimony in regard to that.  Mr. Mizak, can you -- just one

17  item.  Under disability compliance under the VEBA LTD Plan,

18  can you please tell me what that number is?

19  A    Okay.  We spoke to three providers.  One of them; I

20  don't know if you want me to mention the name, our

21  disability insurance specialists out of Connecticut, spoke

22  to us; is willing to work with a smaller group, some groups

23  who are too small.  We're only 195 people and we don't --

24  we're not adding people to the group.

25            THE COURT:  Right.

1          MR. MIZAK:  They want large companies growing.

2          THE COURT:  Right.

3          MR. MIZAK:  But they said look, we don't know

4    what we're getting into here but it's $100 to $125 to set up

5    each person and it's about $600 a year per participant per

6    test and I just assumed for a worst case where we test every

7    single person before they receive a payment and then every

8    time, every year, before you receive a payment, kind of

9    worst case scenario and he's going to work with the

10   Committee to kind of come up with a fair test.  You know,

11   someone who's permanently blind, you may not need to test

12   three years in a row to see if they're still blind.  You

13   know, so there may be --

14         MR. ZAHRALDDIN:  Yes.

15         MR. MIZAK:  -- certain things like that.

16         MR. ZAHRALDDIN:  We have been lucky to have found

17   several vendors who appeared to be very flexible and they

18   are well-respected but smaller entrepreneurial --

19         MR. MIZAK:  That's correct.

20         MR. ZAHRALDDIN:  -- groups that -- we have a

21   smaller group and a difficult group to insure and to get

22   services for so we've been lucky in that respect.

23         MR. MIZAK:  Correct.

24         MR. ZAHRALDDIN:  Your Honor, I don't think

25   there's anything else on this chart that I believe needs to

1  go into the record unless you have specific questions of Mr.

2  Mizak.  But I think those were the highlights in terms of

3  costs and the reasons for the costs and, with that, if you

4  don't have any more questions for Mr. Mizak, I'd like to

5  have the witness excused and I can bring up Mr. Henderson.

6           THE COURT:  And just looking, there isn't a lot

7  of difference between the three different --

8           MR. MIZAK:  That's correct.

9           THE COURT:  Good.  All right.  Thank you.  Thank

10  you, Mr. Mizak.  I don't have any -- does anyone else have

11  any questions or examination of Mr. Mizak?

12           MR. DAVID:  I got a couple of questions, Mr.

13  Mizak.

14           THE COURT:  Is that you, Mr. David?

15           MR. DAVID:  Yes, sir.

16           THE COURT:  All right, Mr. David, you may ask

17  your questions.

18                    CROSS EXAMINATION

19  BY MR. DAVID:

20  Q    Yes, good afternoon.  There are approximately 31

21  percent of -- 31 LTD members who don't have medical benefits

22  so they don't have an HRA and some of these people are going

23  to be in the Plan only one year and some of them people are

24  going to be on the Plan two years.  Is theirs going to be

25  different or everybody got to pay the six percent fee in the

1  Plan?

2  A    It would be a pro-rata share of your actuarial

3  estimate.  So if you were $10 and Rafael was $100, you'd pay

4  one part; he'd pay ten parts.  Does that make sense, sir?

5           MR. DAVID:  No.  It's ten percent in both cases?

6           MR. ZAHRALDDIN:  Well, obviously, Your Honor, if

7  he were no longer receiving payments in --

8           THE COURT:  Right.

9           MR. ZAHRALDDIN:  -- year three, you're not

10 carrying the administrative costs for years three and four.

11 What ends up happening, as well, if, for example, the HRA is

12 used very quickly, we've asked for -- the VEBA Trust Board

13 would meet with the administrators.

14           THE COURT:  Right.

15           MR. ZAHRALDDIN:  That's the reason for these

16 costs so you can have a functioning system and they would

17 say there's not enough people or there's -- to carry this

18 forward and then they would disburse the funds.  They would

19 be making business judgment decisions on how to operate this

20 all the way through.  But obviously, everyone is sharing in

21 the cost while they're participating in the Plans.

22           THE COURT:  Yes.  Any further questions, Mr.

23 David?

24           MR. DAVID:  I didn't get my answer but I'm

25 satisfied I guess.  Yes, Your Honor.

1          THE COURT:  Do you want to re-state your

2    question, perhaps?

3          MR. DAVID:  They are saying, Mr. Mizak and Mr.

4    Zahralddin, is saying that it will be adjusted but it seems

5    like it's already estimated at six percent cost regardless

6    of who you are.

7          THE COURT:  Is --

8          MR. MIZAK:  Again --

9          THE COURT:  -- that the average?

10          MR. MIZAK:  It's ballpark.  It's actually a

11    little less than that but it's on each person's dollar

12    value.  So if someone's receiving a very tiny, tiny --

13    they're going to pay the same percentage as somebody

14    receiving a lot.  So that will be actually, in dollars,

15    miniscule.

16          THE COURT:  Right.

17          MR. MIZAK:  Right, right.  So it's matched.

18          THE COURT:  All right.

19          MR. MIZAK:  No one's paying more or less.

20          THE COURT:  All right.  Thank you, Mr. Mizak.

21          MR. MIZAK:  Thank you, sir.

22          THE COURT:  Mr. David, anything further?

23          MR. DAVID:  Thank you, sir.

24          THE COURT:  All right.  Thank you.

25          MR. ZAHRALDDIN:  And, Your Honor, just to

1   complete the record, if there's no objection, we'd like to

2   enter Mr. Mizak's Declaration, which is at Docket No. 0382

3   into the record formally.

4               THE COURT:  All right.  I will -- any objection

5   to my admitting that Declaration, Mr. Mizak's Declaration?

6                    (No audible response)

7               THE COURT:  Hearing no one, it is admitted into

8   evidence.  And how about the document that you have handed

9   up?  Are we --

10              MR. ZAHRALDDIN:  Well, the document that was

11  handed up is -- they're already both exhibits --

12              THE COURT:  They're attached?

13              MR. ZAHRALDDIN:  -- to Mr. Mizak's.

14              THE COURT:  Thank you.

15              MR. ZAHRALDDIN:  And they're redacted so they're

16  covered --

17              THE COURT:  Yes.

18              MR. ZAHRALDDIN:  -- as well.

19              THE COURT:  Very well.  Thank you, Mr. Zahralddin

20  for that.

21              MR. ZAHRALDDIN:  Thank you, Mr. Mizak.

22              THE COURT:  Thank you, Mr. Mizak.

23              MR. ZAHRALDDIN:  If I can call Mr. Charles

24  Henderson, from Alvarez & Marsal as well?

25              THE COURT:  You certainly may.  Mr. Henderson?

1   Good afternoon, Mr. Henderson.

2            MR. HENDERSON:  Good afternoon.

3            THE COURT:  If you'll just remain standing while

4   we have you sworn, sir.

5         CHARLES A. HENDERSON, IV, DEBTORS' WITNESS SWORN

6            THE COURT:  Thank you, Mr. Henderson.

7   BY MR. ZAHRALDDIN:

8   Q    Good morning, Mr. Henderson.

9   A    Good morning.

10  Q    Or we bled into, I think, afternoon at this point, but

11  hopefully, we'll be able to get through this fairly quickly.

12  Mr. Henderson, can you give us a little bit about your

13  background?

14  A    Yes, I'm Charles A. Henderson.  I am a Managing

15  Director with Alvarez & Marsal Taxand.  I have 23 years of

16  experience.  I'm a certified public accountant.  I've spent

17  16 years in a big four environment; left the partnership in

18  2006; decided to go into the consulting business.  I

19  represent clients in business issues in finding the most

20  efficient way to do tax business so.

21  Q    And your connection to this case, Mr. Henderson?

22  A    I work with Alvarez & Marsal on the financial setting.

23  Q    Okay.  If you will please take us to page one of the

24  previously entered exhibit, which lays out the different tax

25  scenarios?  Mr. Henderson, I'd like you to take us through

1   -- perhaps, we should -- we could start first by describing

2   the tax impact in comparison to each one of these scenarios

3   in terms of income tax and then we can turn to the FICA

4   afterwards.

5   A     Excellent.  Well, if possible, I'd like to walk

6   through the methodology that we followed.

7   Q     That's fine.

8   A     Okay.

9            MR. ZAHRALDDIN:  Oh, and, Your Honor, Mr. Sutty

10  very ably reminded me that all of these exhibits are

11  reflective of the termination date in May.

12           THE COURT:  Right.

13           MR. ZAHRALDDIN:  They have not yet been adjusted

14  for June.

15           THE COURT:  Okay.

16           MR. ZAHRALDDIN:  Because that process is fairly

17  time-consuming and expensive.

18           THE COURT:  Sure.

19           MR. ZAHRALDDIN:  And so we wanted to wait until

20  we got the next round of attrition and other information

21  before we did that.

22           THE COURT:  Okay.

23           MR. ZAHRALDDIN:  Though we did want to update it

24  for, obviously, the Settlement Motion Exhibit but --

25           THE COURT:  Yes.

1        MR. ZAHRALDDIN:  So with that caveat, these are

2   all accurate.

3        THE COURT:  All right.

4        MR. HENDERSON:  Perfect.  So in all four

5   scenarios, we prepared a hypothetical tax computation by

6   estimating each individual participant's projected share of

7   the claim.  So we prepared a tax calculation for every

8   participant, taking their projected share of the net claim

9   after expenses and ran two comparative computations.  We ran

10  one assuming that they were single and using the single

11  tables, as we had no additional information about their

12  income.  We assumed one other item of income other than the

13  share of the claim and that was that each person would

14  receive $8,000 a year in Social Security disability income.

15  Excluding that other income item, we had no data on their

16  family situation, children, married, filing positions,

17  income, deductions, itemizations, the details.  So we

18  assumed the most conservative thing we could which was to

19  assume in a single scenario, they had one exemption for

20  themselves and that they claimed the standard deduction.  We

21  ran a corresponding married filing joint scenario which we

22  later determined, based on the lack of data available by the

23  Class of each of the participants, we couldn't rely on

24  because we did not know who was married; who wasn't.  So we

25  followed the single tables only for conservative purposes.

1          THE COURT:  Right.

2          MR. HENDERSON:  And we ran calculations of each

3  of the four scenarios.  In coming up with the estimated tax

4  liability, we did it, as I said, on an individual

5  participant basis and then aggregated all of their projected

6  liabilities in each scenario to get to our total income tax

7  estimate.  We only calculated this based on Federal tax.  We

8  did not look at State taxes.  And in such, you will see in

9  the lump sum scenario that we projected about $6,550,000 of

10 tax liability on an individual-by-individual basis,

11 summarized up.  In addition, we calculated with a lump sum

12 settlement, assuming each participant's maximum 60,000

13 credit to an HRA; that the aggregate group would have an

14 income tax liability of 3,675,078 and the predominance of

15 the difference here is that there is 6,375,000 credit to an

16 HRA which is exempt from taxation.  Further, by reducing the

17 amount per person, you actually lower the overall blended

18 tax rate on the income by taking some of the participants

19 out of the highest tax brackets to lower tax brackets and

20 some of the lower settlement dollar amounts from marginal

21 increased rates to the lowest rates.  So you ended up with

22 zero tax on 6.3 million and you ended up with an overall

23 blended lower rate for the entire population as well.  In

24 the -- I'm going to skip the VEBA and come back to that if I

25 could, Your Honor, and deal with the annuity.

1          THE COURT:  Okay.

2          MR. HENDERSON:  In the annuity, we took the

3  scenario and it matches the payout that we had under the

4  VEBA Plan so the payments were not in one lump sum;

5  therefore, not putting people into the highest tax rates in

6  the projections but, rather, they get their payments over

7  years, keeping their income in the lower tax brackets over

8  the period of distribution.  So you will see that the

9  annuity basically ends up in the same tax liability as the

10  Disability Plan.  Slight variation has to do with costs and,

11  finally, it has to do with the fact that the -- we assumed

12  no breakage of the contract, okay?  And then lastly, in the

13  VEBA Plan, the payments were by individual, by their number

14  of years to retirement in the original Plan, and if I could,

15  Mr. Zahralddin, I would like to cover that one portion of

16  our estimate because it affects the tax computation.

17          THE COURT:  All right.

18          MR. HENDERSON:  So in preparing our tax estimates

19  and building out the methodology, we had to arrive at an

20  estimate for the manner in which the money would be paid so

21  we could run the tax computations and, after talking with

22  Counsel and the Committee, we took the number of years to

23  the current retirement age of 65 for the participants and we

24  looked at the actual settlement claim, after expenses, to

25  come up with a net percentage that each participant were to

1   receive.  We took that percentage and multiplied time the

2   number of years left with the intent that the subsequent

3   Disability Plan within the VEBA would pay out as close to

4   the current dollar amount as participants receive today over

5   a period of one, two, or four years.  And so that was the

6   methodology that was applied and how we arrived there.  Yes.

7   BY MR. ZAHRALDDIN:

8   Q    And Mr. Henderson, can you elaborate on the rationale

9   for taking four years of -- with their administrative

10  concerns?

11  A    Yes.  We -- absolutely.  In running our computation,

12  we realized that running a Disability Plan for a certain

13  period of time, the administrative expenses for that fifth,

14  sixth, or seventh year and you have fewer participants in

15  that younger population, that the cost benefit for

16  administering the Plan would exceed the actual tax benefit

17  and it would not be administratively feasible.  So after

18  consultation and talking to Tax Counsel for the Committee,

19  we believe the IRS could understand the concept of we can't

20  run a Plan for, hypothetically speaking, eight people, and

21  incur costs that was substantially multiple of the benefits

22  there.

23         MR. ZAHRALDDIN:  And that was one concern, at

24  least preliminarily, we had with the IRS, Your Honor.  Our

25  Tax Counsel, in talking to the IRS, was concerned that well,

1  it doesn't look enough like a Disability Plan and the

2  response was that doesn't define a Disability Plan for us.

3  We still have to look at it but that's not going to be

4  something that's going to have the Plan objected.  It really

5  has to do with testing for disability and being able to cut

6  off payments upon death.

7           THE COURT:  Okay.

8           MR. HENDERSON:  So, as you will see, basically,

9  the VEBA Plan or Disability Plan inside the VEBA, the income

10 tax projection is $2.44 million over the period of time that

11 cash would be distributed, some $3 million lower, $3.5

12 million lower than other areas.  You know, even including

13 the lump sum with an HRA cap, you're saving a million two

14 and that's after all administrative expenses.  So that's how

15 we arrived at our estimate.

16          THE COURT:  Okay.

17          MR. HENDERSON:  Would you like me to move to the

18 FICA?

19          MR. ZAHRALDDIN:  Yes, I think that the -- because

20 I believe, Your Honor, that the FICA is what distinguishes,

21 aside from the practicalities of not being able to get an

22 annuity that would allow us to function with a private

23 letter ruling, the FICA is, at least on the numbers, one of

24 the strongest arguments for why the HRA, combined with the

25 VEBA, was the option the Committee chose.

1          THE COURT:  I can understand that, yes.

2          MR. HENDERSON:  So the FICA computation was

3     arrived by taking -- just to validate my numbers.  So the

4     FICA calculation was based upon taking every individual's

5     share of the settlement claim and multiplying it times the

6     applicable FICA rates, limiting each individual's base for

7     the liability at 113,700.  That's the current year cap on

8     the FICA.  And then applying the Medicare tax of 2.9 percent

9     on the income or each participant's share of the income

10    above 113,700 but below 200,000, and then applying the 3.8

11    percent on any income over the 200,000.  As you will note in

12    the lump sum, the projected liability is 2,592,000 as of

13    these projections, predominantly because a significant

14    number of the participants will actually exceed the 113,700

15    and it's a one lump, obviously.  The second portion, the

16    only difference in the lump sum and the lump sum of the HRA

17    is clearly the 6,375,000 into the HRA is not subject to

18    FICA.  So that is the mathematical difference in the two.

19    In the VEBA Plan, because the money would be inside a VEBA

20    Trust and paid out for disability benefits, it's exempt from

21    FICA under Internal Revenue Code 3121(a)(2).  So we believe

22    it is clearly exempt so there's zero FICA tax.  And then in

23    the annuity standpoint scenario, because the money was paid

24    outside of a VEBA Plan and it was paid out over multiple

25    years, the liability actually almost matches the lump sum

1  but that's because the payments are subject to FICA tax.

2  They do not meet the definition of exemption under the IRS

3  Code, and because they're paid out over multiple years, the

4  113,700 cap isn't hit the first year and so people pay the

5  entire -- a larger portion of the entire amount is subject

6  to FICA tax.

7           THE COURT:  Okay.

8  BY MR. ZAHRALDDIN:

9  Q     Can you summarize the tax savings at the bottom?

10 A     Yes.  So in our scenario, we believe, after expenses

11 and based on these estimated tax computations, that the

12 annuity would arrive with the closet value but we can't make

13 that one work, that overall variance from the VEBA Plan is

14 an additional 2,145,000 tax net of expenses.  The lump sum

15 with an HRA would end up with 2.8 million of additional cost

16 and a lump sum with no HRA is somewhere in the 5.2 million

17 range, as the numbers continue to change as we pointed out

18 earlier.  This would make 31st number before adjustments.

19 But these are current projections.  So we believe that the

20 VEBA LTD Plan, as proposed, would more than provide for

21 itself and the additional administrative expenses by saving

22 anywhere from two million to as much as $5 million.

23           MR. ZAHRALDDIN:  And, Your Honor, I think, with

24 that, unless you have further questions or if Mr. David,

25 who's our sole Objector has some questions for Mr.

1   Henderson, we can excuse him and then I can sum up fairly

2   quickly and then it's --

3           THE COURT:  Sure.  All right.

4           MR. HENDERSON:  Thank you, Your Honor.

5           THE COURT:  Thank you, Mr. Henderson.  Mr. David,

6   are you on the phone and do you have any examination of Mr.

7   Henderson?

8           MR. DAVID:  Yes, sir.  Thank you, Your Honor.

9                   CROSS EXAMINATION:

10  BY MR. DAVID:

11  Q    How did you define our income?  Is it defined under

12  non-qualified deferred compensation under 409 or is it a

13  miscellaneous compensation --

14          MR. ZAHRALDDIN:  Your Honor --

15          MR. DAVID:  -- like dividends and like gambling

16  winnings?

17          MR. ZAHRALDDIN:  Your Honor, I only object

18  because that's really a leading question and, as Alvarez &

19  Marsal has reminded me over and over again, they're good,

20  but they're not lawyers.

21          THE COURT:  Right.

22          MR. ZAHRALDDIN:  I don't know exactly what that

23  means but that's stuff that they've told us.

24                  (Laughter)

25          THE COURT:  And they have enough trouble.

1          MR. ZAHRALDDIN:  Yes, exactly.  However, our Tax

2    Counsel, and as we've put into file documents --

3          THE COURT:  Yes.

4          MR. ZAHRALDDIN:  -- has indicated that that is

5    the treatment.  There are several cases in which settlement

6    funds have been converted into basically deferred

7    compensation.  I think a lot of the Objectors, including Mr.

8    David, were indicating that well, look, I've -- that's not

9    the way it's happened before.  Things have always been

10   third-party disability sick pay and I have been able to, in

11   a few instances, some of our individual LTD'ers have been

12   able to get a complete exemption from income tax as a result

13   and that's exactly why we chose a Disability Plan as a new

14   Disability Plan function.  Their personal tax planning and

15   their personal issues on their own individual income tax

16   returns is their business, but they won't be able to get to

17   that jumping point.  They don't have a place to jump off

18   from unless we have a VEBA Plan in place with the Disability

19   Plan.

20         THE COURT:  Okay.

21         MR. ZAHRALDDIN:  And so I think that is where the

22   definition is coming from, and that's the only reason I

23   object as I don't believe that it's a legal question and I

24   don't believe that Mr. Henderson can answer it.

25

1          THE COURT:  I will sustain your -- what I think

2    is your objection at this point, Mr. Zahralddin.  Mr. David,

3    do you have another -- do you want to rephrase your question

4    or ask another question?

5          MR. DAVID:  I rephrase the question.  I just need

6    to know before we get into a plan where the definition of

7    our compensation is going to go through on our taxes.

8          MR. ZAHRALDDIN:  The -- in terms of the income

9    continuation, a proposal by the Committee is that -- as

10   detailed in our papers -- W-4s will go out to the individual

11   LTD'ers.  They then will elect the amount of the deductions,

12   withholding, et cetera.  But as far as how we are reporting

13   it, it will be reported as disability continuation payments.

14         THE COURT:  They'll get a 1099 form or something

15   of that nature?

16         MR. ZAHRALDDIN:  No, there'll be a W-2 but --

17         THE COURT:  W-2?

18         MR. ZAHRALDDIN:  -- it will be -- in other words,

19   it will be characterized -- it'll be the same type of

20   payment they've been getting today from Nortel.  That is the

21   purpose of it except for Nortel is no longer in existence.

22   We are separated from them --

23         THE COURT:  Right.

24         MR. ZAHRALDDIN:  And the VEBA has replaced it and

25   created a new VEBA Income Continuation Plan.  So it will not

1  change in nature.  That is our request to the IRS through

2  the Private Letter Rulings.  And that's how we will treat it

3  until we are told differently.  And practically speaking,

4  that means that we may have to reserve FICA until we get the

5  P -- the Private Letter Ruling.  But for people --

6               THE COURT:  Sure.

7               MR. ZAHRALDDIN:  -- with two payments, we're

8  going to reserve it against the second payment so people

9  have the most that they can have at this point in time.  And

10  hopefully, the Private Letter Ruling comes prior to the

11  January payment.

12              MR. HENDERSON:  Correct.

13              THE COURT:  All right.  Was that -- did that

14  answer your question, Mr. David?

15              MR. DAVID:  That answered my question under --

16  except for the disability plan but on --

17              MR. ZAHRALDDIN:  I will have to say, Your Honor,

18  I object to that for --

19              THE COURT:  Yes.

20              MR. ZAHRALDDIN:  -- Ms. Schweitzer.

21              THE COURT:  Yes.

22              MR. ZAHRALDDIN:  It's not a successor.  It's a

23  new one.

24              THE COURT:  That's right.

25              MR. ZAHRALDDIN:  That's a new plan.  That's the

1    reason we're using an LLC because we want to make it clear,

2    so you should love me for this Ms. Schweitzer.

3            MS. SCHWEITZER:  I love you every day.

4            MR. ZAHRALDDIN:  That would make it very -- thank

5    you very much.  Mr. Ray, too.  But this issue is one that

6    was very material to the Debtors that there be separation.

7    They do not want to be -- and we discussed --

8            THE COURT:  And there clearly is separation based

9    upon --

10           MR. ZAHRALDDIN:  Correct.

11           THE COURT:  -- the Settlement and --

12           MR. ZAHRALDDIN:  And so I didn't mean to

13   interrupt you, Mr. David, but I just wanted to correct that.

14   It's not a successor plan; it is a new VEBA plan.

15           THE COURT:  Right.

16           MR. DAVID:  Disability plan, yes.  Thank you,

17   Mr. Zahralddin.  And I just want to get information on the

18   other items to make a decision which plan we want to go

19   through -- with.  There is not enough information on other

20   plans.

21           MS. SCHWEITZER:  You have choices.

22           MR. ZAHRALDDIN:  On the choices of potential

23   disability plans?

24           MR. DAVID:  No, the lump sum you talked about --

25           MR. ZAHRALDDIN:  There will not be a choice,

1  Mr. David.   That's -- I think you're misunderstanding.

2  There is no choice.   These are comparisons.   The choice is

3  going to be a VEBA LTD Plan with an HRA capped at $60,000.

4  That will be the only choice that you will have.   Giving you

5  an option would violate constructive receipt and economic

6  benefit, which would then violate it for the entire

7  constituency, therefore eliminating any possibility of tax

8  mitigation or tax deferral.

9           MR. DAVID:   My question is, then, Mr. Zahralddin,

10  that the VEBA -- if we are in this case voluntary or

11  mandatory?

12           MR. ZAHRALDDIN:   We have arguments in our papers,

13  Mr. David, in regard to what voluntary means in this

14  situation.   If the Court would like us to brief the issue of

15  voluntary, we're happy to do so further, but we already have

16  addressed that.   It doesn't -- legal terms don't always mean

17  what you think they mean.   They have a different and

18  distinct interpretation.

19           The VEBA is a commonly accepted vehicle,

20  particularly in situations like this where there is a

21  bankruptcy and either there's a reorganized Debtor and the

22  employees have been separated from the liabilities in terms

23  of legacy cost, or in this case, where there will be no

24  entity, period, to carry any of this one.   And we have also

25  put those in our papers as well.

1          THE COURT:  All right.  All right.  Thank you,

2    Mr. Henderson.  Sir, you may step down.  You actually made

3    it very clear for me and I --

4          MR. HENDERSON:  Thank you, Your Honor.

5          THE COURT:  -- appreciate it.

6          MR. ZAHRALDDIN:  And Your Honor, Mr. Henderson

7    has a Declaration which was supposed to be filed.  I would

8    like to enter that into evidence.  That's at Docket #10384

9    and if there's no objection, we'd like to enter that as

10   well.

11         THE COURT:  Any objection?  Hearing none, I will

12   admit Mr. Henderson's Declaration into evidence.

13         MR. ZAHRALDDIN:  Your Honor, I don't want to

14   belabor the point at all so I'm going to say I believe our

15   papers and our testimony have shown that in terms of

16   exercising a cost-benefit analysis, the Committee has done

17   that.  They've done that carefully.  They've done it under

18   the guidance of very capable folks.  Our tax counsel, Morgan

19   Maxwell, who we retained specifically for these issues --

20         THE COURT:  Right.

21         MR. ZAHRALDDIN:  -- could not make -- he's en

22   route because he had another hearing in Harrisburg and I

23   told him I thought we could probably keep the ship right

24   without him tipping over, but I did want to -- I was told by

25   my wife I did not thank him yesterday, and I told him I was

1  going to wait to thank him today because really his efforts

2  and his support helped us to get here, as well as --

3               THE COURT:  As with --

4               MR. ZAHRALDDIN:  -- our folks with Alvarez &

5  Marsal.

6               THE COURT:  Absolutely.

7               MR. ZAHRALDDIN:  So I think that we've shown that

8  there is a clear benefit to this.  It protects the group.

9  We were able to resolve the people who objected -- their

10  Objections by making some site accommodations as we

11  discussed in camera -- I mean in -- under seal yesterday in

12  the courtroom.  I believe everything we've demonstrated is

13  that this is the best path for these folks.  It brings

14  finality and certainty and not least of which I think the

15  Disability Plan will assist the PBGC in being able to then

16  come to a more concrete decision because we will know when

17  the disability payments end.  They will essentially have

18  been retired at the end of this four years because they will

19  receive no more disability payments.  Now, I will leave that

20  to some other court and some other day, but I do believe

21  that helps to gel the conditions and the circumstances

22  further for all the parties involved, including the disabled

23  employees in this situation.

24               THE COURT:  All right.  Thank you.

25               MR. ZAHRALDDIN:  And with that, we are complete.

1          THE COURT:  Does anyone else wish to heard?

2          MR. SARAN:  Your Honor, my name is Narinder

3   Saran.

4          THE COURT:  And this is -- I'm sorry.  I missed

5   your name, sir.  Would you spell it for us?

6          MR. SARAN:  N as in Nancy, a-r-i-n-d-e-r, last

7   Saran --

8          MR. ZAHRALDDIN:  Your Honor, Mr. Saran was an

9   objector to the Settlement Motion.  He did not object to the

10  Distribution Motion.

11         THE COURT:  Oh, okay.  All right.

12         MR. SARAN:  So I apologize to the Court.  First

13  time I'm learning all the legal implications.  I'd like to

14  say that, Your Honor, I moved from Canada and living with my

15  wife and two children (indiscernible).  Then, I became

16  disabled at that point.  Your Honor, we have family

17  (indiscernible) to move back.  My wife lost her mother two

18  weeks ago and has an aging father who does not travel.  The

19  desire is to go and spend quality time with her father

20  (indiscernible) not with her mother.  Therefore, my case, it

21  would be --

22         THE COURT:  Forgive me.  You're --

23         MR. SARAN:  -- the lump sum.

24         THE COURT:  We're not catching everything you're

25  saying because it's breaking up on us.  I don't know if

1   you're on a speakerphone or are you -- or if you could --

2   are you calling in from --

3           MR. SARAN:  Hello?

4           THE COURT:  Yes, hello?  Can you hear me?

5           MR. SARAN:  Can you hear me now?

6           THE COURT:  Yes, I think it may be better.  Let's

7   try again.

8           MR. SARAN:  Okay.  So Your Honor, as I was saying

9   that I moved from Canada in the year 2000 with my wife and

10  two children (indiscernible).  And Your Honor, we have

11  family in -- and considering to move back (indiscernible) --

12          THE COURT:  You're breaking up --

13          MR. SARAN:  -- (indiscernible) --

14          THE COURT:  I'm sorry.  You're starting to break

15  up again.  I don't know if it's your distance from the

16  speaker or what.

17          MR. SARAN:  Okay.  Let me try again.

18          THE COURT:  All right.  I know you moved to

19  Canada with two children.

20          MR. SARAN:  And we're considering to move back.

21          THE COURT:  Yes.

22          MR. SARAN:  And my wife lost her mother two weeks

23  ago and she has an aging father.  So she would like to spend

24  some time with her father before he passes away.  Therefore,

25  in my case, it would be desirable to receive a lump sum of

1  the Settlement so -- as opposed to getting it over four

2  years.  So I'd ask the Court to consider my situation when

3  ruling.  So thank you, Your Honor, for the Court's time.

4          THE COURT:  Certainly.  I -- and I certainly am

5  sensitive to your personal situation.  The problem is that

6  if you were to receive your payment by lump sum, it would

7  impact the tax benefits of the proposed Distribution format

8  for all members of the class, and therefore, I am unable to

9  accommodate your wish because of the impact that it would

10 otherwise have.  And so I'll have to overrule your Objection

11 here.

12         MR. SARAN:  Okay.  Thank you, Your Honor.

13         THE COURT:  Yes.

14         MR. ROSSI:  Your Honor, this is John Rossi.  May

15 I ask questions of Rafael?

16         THE COURT:  Yes, you may, Mr. Rossi.

17         MR. ROSSI:  My question is this: is anyone going

18 to help us with the PBGC?

19         MR. ZAHRALDDIN:  Mr. Rossi, we can have that

20 conversation offline.  I believe --

21         MR. ROSSI:  Oh, okay.

22         MR. ZAHRALDDIN:  I believe that we have --

23         MR. ROSSI:  I was just wondering if the Judge

24 has --

25         MR. ZAHRALDDIN:  -- referred folks to other

1   counsel in regards to other issues that are outside the

2   scope of the Committee, but --

3            MR. ROSSI:  Well, thank you.  Okay.  I just

4   was --

5            MR. ZAHRALDDIN:  But certainly give me a call,

6   Mr. Rossi, and we can continue that outside court time.

7            MR. ROSSI:  Thank you very much, sir.  I'm sorry

8   to bother you.

9            MR. ZAHRALDDIN:  Not a problem.

10           THE COURT:  That's fine, Mr. Rossi.  Anyone else?

11  All right.  Does anyone else wish to be heard on --

12  Ms. Schweitzer.

13           MS. SCHWEITZER:  Thank you, Your Honor.  I always

14  like to stand up and say I have nothing to do with any of

15  this, but as Mr. Zahralddin had made clear on the record

16  before and I think it's clear from the papers, but it's a

17  really essential important fact is that this Motion is

18  brought by the LTD Committee with respect to what they're

19  going to do after the Settlement is complete and after

20  they've sold the claim.  As far as the Debtors are

21  concerned, the Debtor is giving the LTD individuals a claim

22  against the estate and that's --

23           THE COURT:  Um-hum.

24           MS. SCHWEITZER:  -- the end of the Debtors'

25  obligations.  And it's their findings in the Order that

1    we're not the Plan sponsor --

2              THE COURT:  Yes.

3              MS. SCHWEITZER:  -- and we've resolved -- I'll

4    also remind you that we resolved on the record yesterday an

5    Objection from the IRS with regard to certain tax issues.

6    But that's really what the important issue is is the Debtor

7    doesn't have secondary liability on any of these issues once

8    they go out the door.

9              I'll also -- I don't hear Mr. Berger but I'll say

10   it for him that I think he would be the first to say on

11   behalf of the Retiree Committee but also to the Debtors as

12   well that there was a lot of testimony on tax positions and

13   tax analysis.  And these -- while we're allowing them to go

14   forward for them to describe what positions they are

15   exploring or taking to such different benefits, the Debtors

16   and the Retiree Committee to say none of this is binding on

17   us or makes findings regarding our own tax liabilities or

18   what the Retiree Committee needs to do and it's --

19             THE COURT:  And you're offering no opinion or

20   advice with respect to what the Committee does?

21             MS. SCHWEITZER:  That's right.  That's right.

22   And I think that's noncontroversial but everyone will feel

23   better if I say it on the record so --

24             THE COURT:  All right.

25             MR. ZAHRALDDIN:  I understand the trepidation

1  everyone takes walking through tax land, but let me also

2  state that, Your Honor, our relief that we're requesting is

3  based upon the powers that we have as an 1102 Committee.

4            THE COURT:  Yes.

5            MR. ZAHRALDDIN:  We weren't able to deliver on

6  some things because of that status, but we are able to

7  deliver on this, I believe.  And, as an 1102 Committee, we

8  are really asking Your Honor for the authority to segregate

9  some of these settlement funds to be able to go before the

10 IRS and resolve tax issues.

11           THE COURT:  Understood.

12           MR. ZAHRALDDIN:  So while we have done and we

13 rely upon our tax counsel in terms of guiding us to this

14 point, the tax issues are not really before this Court.

15           THE COURT:  No, no, I'm --

16           MR. ZAHRALDDIN:  They are in front of the IRS for

17 Private Letter Ruling and, if need be, at Tax Court or

18 Circuit Court at some time after that.

19           THE COURT:  Yes.

20           MR. ZAHRALDDIN:  If indeed that's -- because I'm

21 not a tax lawyer -- the path you would take.  I have to rely

22 on Morgan Maxwell, our tax counselor, to do that.  So we

23 presented those because we wanted to make sure we had

24 executed our fiduciary duty relying upon the right experts

25 at the right time, but obviously, we're not asking for tax

1  relief from you either.

2         THE COURT:  No, and -- or any really ruling on

3  the tax implications here --

4         MR. ZAHRALDDIN:  Absolutely.

5         THE COURT:  -- because I'm not in a position to

6  do that, nor do I really have the authority to do so.  But I

7  do have the authority to say that I think that, based upon

8  the testimony of Mr. Henderson and Mr. Mizak and the

9  evidence that was -- that they presented, I'm satisfied that

10 the Committee has explored various options with the advice

11 of very highly respected professionals and has very

12 carefully, the evidence shows, taken into consideration many

13 factors in determining which plan it wishes to pursue with

14 the Settlement funds and what expenses to incur, and among

15 those expenses is one to, in effect, obtain tax relief to

16 the extent possible.  And the Court finds that the Committee

17 has exercised its fiduciary duties responsibly and has

18 exercised its judgment appropriately.  And accordingly, the

19 Court will approve the --

20        MR. ZAHRALDDIN:  And, Your Honor --

21        THE COURT:  -- Motion --

22        MR. ZAHRALDDIN:  -- I ask for one last

23 indulgence.

24        THE COURT:  Yes.

25        MR. ZAHRALDDIN:  One of the other things that we

1  ask for that I would like if possible we -- you could

2  discuss if you're so inclined, it's a tremendous amount of

3  work we spent in educating and informing this group.  One of

4  the things which is also important to the group as a whole

5  is finality.  And in situations where you have disabled -- a

6  disabled constituency, because dissipation is a known issue,

7  we want everyone -- we would like a finding that what we

8  have done has gone above and beyond.  I believe you stated

9  those things in the past, but we did make a concerted effort

10  to educate and inform everyone, including putting it in the

11  hands of any sort of free resource we could find for them,

12  plus supplementing that with our time and energy as well.

13          And I want to make sure that that's a finding and

14  that that's clear and it's something we requested in our

15  papers because it affects all of them.  I -- we do not want

16  this to become unraveled at some later time because that

17  wasn't clearly driven home as best we can in this Order and

18  in the finding.

19          THE COURT:  Well, it is clear that this -- that

20  the Committee's decision and the adoption of the Plan, the

21  Distribution Plan, is binding upon all members of the

22  disabled group.  And it is final and there can't be one plan

23  for one person and another plan for another person, because

24  to do so would impact everyone and perhaps some adversely.

25  The Committee I think -- and its counsel -- have clearly

1  made every piece of information available possible to the

2  disabled parties and have made it -- people available to

3  discuss the Plans with them.  The -- it's gone far beyond

4  what normally we see in providing the information and

5  education to the Long-Term Disability parties, and

6  accordingly, it's clear that this is the Distribution Plan

7  today and for everyone.

8          MR. ZAHRALDDIN:  Your Honor, I have a revised

9  Order.  It also includes Exhibit A from our discussions of

10  the resolution of Objections yesterday, which will be -- is

11  marked "filed under seal."

12          THE COURT:  Yes.

13          MR. ZAHRALDDIN:  And we've passed that along as a

14  caution because I know sometimes that message could get

15  lost.

16          THE COURT:  And you mentioned earlier there was

17  one objector whose Objection is resolved, and is that person

18  reflected --

19          MR. ZAHRALDDIN:  And that person --

20          THE COURT:  -- on this --

21          MR. ZAHRALDDIN:  -- is also included.

22          THE COURT:  All right.

23          MR. ZAHRALDDIN:  I also, Your Honor, I have a

24  black line of the changes.  I will tell you the changes

25  really are to the additional tax language, which was read on

1    the record yesterday, and also there -- I believe there was

2    a change requested by the Department of Labor as well --

3              MS. SCHWEITZER:  That was (indiscernible).

4              MR. ZAHRALDDIN:  -- which was -- and the other

5    changes simply solidify that the VEBA -- because the

6    original Order had the annuity before we spoke to the IRS

7    and they told us that that might not be the best way to go.

8              THE COURT:  Right.

9              MR. ZAHRALDDIN:  That has the VEBA LTD Plan and

10   the 60K HRA.  Those are the only other changes.  I can hand

11   this up and I can walk you through --

12             THE COURT:  Let me look -- yes, why don't we do

13   that.

14             MR. ZAHRALDDIN:  Okay.  May I approach?

15             THE COURT:  Yes, you certainly may.  We'll do

16   that just in an abundance of caution.  Thank you,

17   Mr. Zahralddin.

18             MR. BERGER:  Judge?

19             THE COURT:  Yes.

20             MR. BERGER:  Neil Berger.  One of the

21   disadvantages of being on the phone is that it doesn't

22   gather attention.

23             THE COURT:  I'm sorry, Mr. Berger.  And if

24   someone is speaking, then you can't be heard at the same

25   time, so yes, what is it you would like to address?

1          MR. BERGER:  Simply to repeat what I said briefly

2    yesterday, that the Retiree Committee certainly is a

3    committee under a different section of the Bankruptcy Code.

4    Our constituents have benefits and rights under separate

5    Welfare Plans.  We have our own proposed tax solution, and

6    we're proceeding on our track.  Certainly, we didn't

7    participate in anything that the LTD Committee is -- has

8    done.  They haven't -- and ours, and so that the two

9    different propositions for tax efficiencies ought to be

10   viewed separately.

11         THE COURT:  And to the extent an LTD party elects

12   to come under the coverage of the Retirees, they would then,

13   I'm assuming, be subject to whatever Plan it is you've

14   adopted?

15         MR. BERGER:  That's correct, Judge.

16         THE COURT:  Sure.

17         MR. ZAHRALDDIN:  And, Your Honor, my

18   understanding is that the disabled nature of my group

19   requires in certain material ways -- which I don't think I

20   need to go into -- but differences to treatment under the

21   Retiree Plan.

22         THE COURT:  Okay.

23         MR. ZAHRALDDIN:  They are separate, which just

24   reinforces what Mr. Berger's saying.  These are separate

25   tracks because we have -- really have significantly separate

1    constituencies.

2              THE COURT:  Okay.  I certainly understand that.

3              MR. BERGER:  Thank you, Judge.

4              THE COURT:  Thank you, Mr. Berger.  It's a good

5    thing you're hanging in with us.

6              MR. BERGER:  Yes.

7              MR. ZAHRALDDIN:  He can't get away from us, Your

8    Honor, as much as he tried.

9              THE COURT:  All right.  Yes.  I'm reading the

10   preamble paragraphs if you will, and so far I don't have any

11   concerns.  Is there anything particularly, Mr. Zahralddin,

12   you wish to --

13             MR. ZAHRALDDIN:  Your Honor, if you turn --

14             THE COURT:  -- point out to me --

15             MR. ZAHRALDDIN:  -- to page --

16             THE COURT:  I think paragraph 6 is clearly

17   significant.

18             MR. ZAHRALDDIN:  Yes.  Paragraph 6, as I

19   discussed before, updates to the new plan of attack --

20             THE COURT:  Right.

21             MR. ZAHRALDDIN:  -- in terms of Private Letter

22   Ruling --

23             THE COURT:  Yes.

24             MR. ZAHRALDDIN:  -- and the new structure and

25   utilizing the VEBA LTD Plan and the HRA, the New Income

1    Continuation Plan.  And there are changes in paragraph 8 of

2    significance to the Debtor that indicate that the Debtors

3    are not the Plan sponsor of the VEBA --

4            THE COURT:  Right.

5            MR. ZAHRALDDIN:  -- the VEBA LTD Plan or

6    basically anything else related to this structure.  Those

7    are carried into -- more of the VEBA updates are carried

8    into paragraph 9 and that addresses the Private Letter

9    Ruling and what happens --

10            THE COURT:  Yes.

11            MR. ZAHRALDDIN:  -- in terms of the wind-down if

12    that proves not to be the appropriate vehicle.  Paragraph 10

13    simply adds in language dealing with the HRA administrator

14    and the selection of the HRA administrator.  And then in

15    paragraph 13 there was language added by the Department of

16    Labor at the beginning, which qualifies this Limitation of

17    Liability for the Debtors' paragraph I'll call it.  And

18    further down in paragraph 13 is --

19            THE COURT:  There's the IRS --

20            MR. ZAHRALDDIN:  -- the language --

21            THE COURT:  -- Objection --

22            MR. ZAHRALDDIN:  -- and it's written --

23            THE COURT:  -- yes.

24            MR. ZAHRALDDIN:  -- by the IRS.  Paragraph 14 and

25    15, those were requested by -- I can't read Mr. Sutty's

1  handwriting.  Once I figured out the hieroglyphic, I

2  understood it.  It's -- which I have worse handwriting.  You

3  can actually get prescriptions at CVS with my handwriting.

4  But the -- those were inserted by the claims purchaser.

5                THE COURT:  All right.

6                MR. ZAHRALDDIN:  They were requests by the claims

7  purchaser.

8                THE COURT:  Got you.  Yes.

9                MR. ZAHRALDDIN:  And I believe 16 talks about the

10  Settlements being filed under seal --

11                THE COURT:  Right.

12                MR. ZAHRALDDIN:  -- which would address our

13  issue, and I think that's the full sum and substance of the

14  changes.

15                THE COURT:  And then we've got the exhibit to the

16  Order.  And with that, I'm going to sign the Order.

17                MR. ZAHRALDDIN:  Thank you, Your Honor.

18                MS. ROHRBAUGH:  Your Honor?

19                THE COURT:  Yes?

20                MS. ROHRBAUGH:  Good afternoon.  This is Brenda

21  Rohrbaugh.

22                THE COURT:  Yes, Ms. Rohrbaugh.

23                MS. ROHRBAUGH:  Just to round up the day before

24  you dismiss the Court, if I may, I had signed a letter of

25  support for the Settlement and the Disbursement --

1          THE COURT:  Yes.

2          MS. ROHRBAUGH:  -- and I felt I'd be remiss not

3  to, if I may, just take a moment and again, you know, just

4  offer my support to the lawyers of the Committee and the

5  officers of the Court that I think I would not be out of

6  bounds to offer a personal thanks on behalf of myself and

7  our constituency to you for all of the help and the fair

8  treatment that you have given us all of these years.

9          THE COURT:  Well --

10          MS. ROHRBAUGH:  You have been patient with us and

11  our medical disabilities and our inability to speak at times

12  to help us understand and stay within our boundaries, the

13  patience with us.  And honestly, it's been an honor to stand

14  before you.

15          THE COURT:  Well, you're very --

16          MS. ROHRBAUGH:  Thank you.

17          THE COURT:  You're very kind and it was really a

18  -- it was an honor to preside over these matters, and I am

19  very pleased that it was a successful endeavor based upon

20  the efforts of all of the good people in the courtroom and

21  as well all of you folks who were patient yourselves and had

22  faith in the system.  Thank you, Ms. Rohrbaugh.

23          MS. SCHWEITZER:  Your Honor, it's --

24          THE COURT:  Yes.

25          MS. SCHWEITZER:  -- Lisa Schweitzer.  And I had

1    actually risen to share the same sentiment is that I feel

2    like in the last two days we've done a great job of

3    congratulating ourselves and convincing ourselves what a

4    wonderful group of people we are --

5             THE COURT:  Yes, you are.

6             MS. SCHWEITZER:  -- but we really do need to take

7    a moment to thank you and your entire chambers because we

8    realize that we've probably only come in front of you with

9    novel and complicated issues and --

10            THE COURT:  It seems that way.

11            MS. SCHWEITZER:  -- but we get to choose what

12   issues we present to you.  You don't get to choose which

13   ones you have to hear and it -- these are really important

14   issues, as you know well, from all the constituencies, the

15   hundreds of thousands of people whose lives you've affected

16   and I think in a positive way.

17            And I was going to share all the same sentiments

18   about your patience and diligence and your complete empathy

19   for all sides throughout the process.

20            THE COURT:  Thank you.

21            MS. SCHWEITZER:  It was -- and for your chambers'

22   patience.  I know there have been last-minute, short-notice

23   exercises sometimes, but it was all in the effort to bring

24   this to a successful conclusion.  So we thank you and your

25   entire staff for your help in getting us there.

1          THE COURT:  Especially my staff, Ms. Schweitzer.

2   I must say they are -- not only are they patient with me,

3   but they're patient with really everyone, and I do

4   appreciate their efforts.  But thank you.  I appreciate it,

5   and I appreciate, again, everyone's effort.  And if you --

6   maybe if somebody could just write a note of explanation to

7   my wife --

8                    (Laughter)

9          THE COURT:  -- why I was walking around saying

10  what am I going to do?

11         MS. SCHWEITZER:  Yes.  Well, better than that,

12  we'll put on the record that we thank your wife for sharing

13  us -- so --

14         THE COURT:  Thank you.

15         MR. ZAHRALDDIN:  I don't know if that's going to

16  help but we'll do that.  And, Your Honor, obviously, we

17  thank you --

18         THE COURT:  Of course.

19         MR. ZAHRALDDIN:  -- as well.

20         THE COURT:  Of course.

21         MR. ZAHRALDDIN:  And --

22         THE COURT:  Congratulations really to everyone,

23  and I really respect everyone's hard work on this matter.

24  And it was, you know, just critically important and a real

25  human nature and a matter of great personal importance for

1   many people.

2           MS. SCHWEITZER:  Thank you, Your Honor.

3           THE COURT:  Are we finished?

4           MR. ZAHRALDDIN:  Your Honor, I believe that

5   brings us to the end.  I know Mr. Abbott likes to close

6   everything off usually but --

7           THE COURT:  Oh, Mr. -- it's not done until --

8           MR. ABBOTT:  Your Honor, I'm happy to defer to --

9           THE COURT:  -- Mr. Abbott speaks.

10          MR. ABBOTT:  -- Mr. Zahralddin in this instance.

11          MR. ZAHRALDDIN:  I am so --

12          THE COURT:  All right.

13          MR. ZAHRALDDIN:  -- happy the one thing we've

14  gotten out of this is there are at least 10 out of -- 9 out

15  of 10 people on average now that can say my name correctly.

16                      (Laughter)

17          THE COURT:  It took a long time.

18          MR. ZAHRALDDIN:  It did.  It did.

19          THE COURT:  I noticed that your lovely wife did

20  not adopt your name probably for that very reason.

21                      (Laughter)

22          MR. ZAHRALDDIN:  Yes.  She has trouble with

23  phonics and spelling so --

24          THE COURT:  All right, Counselor.

25          MR. ZAHRALDDIN:  -- it just made it harder.

1          THE COURT:  I wish you all a good afternoon.

2    Celebrate a good result and good work done for many people.

3          MS. SCHWEITZER:  Thank you, Your Honor.

4          THE COURT:  And we'll stand in recess.

5          BY ALL:  Thank you, Your Honor.

6       (Whereupon, at 1:07 p.m., the hearing was adjourned.)

7

8                        CERTIFICATION

9          I certify that the foregoing is a correct

10   transcript from the electronic sound recording of the

11   proceedings in the above-entitled matter.

12

13   _____        1 May 2013
14   Christy Snyder, Transcriber                Date
15   Diaz Data Services, LLC
16

1                                  INDEX

2  WITNESSES:                Direct    Cross    Redirect    Recross

3  Richard Mizak                97      109

4  Charles A. Henderson, IV    113      122

5

6

7  EXHIBITS:                             Marked        Admitted

8  Mr. Ray's Declaration               Previously        80

9  Mr. Mizak's Declaration             Previously       112

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **158(d)2(2)** 65:7 69:12 | | **additional**(6) 49:17 115:11 121:14 121:15 121:21 138:25 | | **agreed**(2) 22:3 22:4 | | **always**(6) 24:2 46:24 75:5 123:9 127:16 133:13 | |
| **16(a)(1)(b**(1) 25:3 | | | | **agreeing**(3) 51:23 52:4 52:5 | | | |
| **23(b)(2)(1)** 82:8 | | **address**(12) 8:21 10:25 13:1 35:25 39:23 47:14 62:8 68:15 68:22 81:11 139:25 143:12 | | **agreement**(58) 18:24 18:25 19:1 19:22 19:23 20:10 20:13 20:14 20:16 20:24 20:25 22:7 23:6 25:2 25:7 25:8 25:11 25:18 25:22 27:11 27:12 27:14 27:17 27:18 27:19 27:23 28:2 28:3 28:9 28:11 42:5 43:23 43:25 44:5 44:8 47:15 47:19 47:21 47:24 47:24 49:13 50:19 52:10 52:21 57:10 57:21 58:11 58:13 58:13 58:14 59:24 60:4 60:15 60:15 60:20 61:2 61:3 61:12 | | **ambush**(1) 69:24 | |
| **3121(a)2(1)** 120:21 | | | | | | **america**(1) 6:10 | |
| **a-r-i-n-d-e-r**(1) 130:6 | | | | | | **americas**(1) 3:8 | |
| **a.m**(6) 1:16 8:1 73:1 73:1 73:12 73:12 73:12 73:16 | | **addressed**(7) 52:10 54:3 61:16 62:9 63:25 104:7 127:16 | | | | **among**(2) 23:15 136:14 | |
| **abbott**(18) 1:23 8:4 8:5 8:6 8:11 8:12 8:16 9:3 9:5 9:9 72:25 73:2 73:6 73:10 147:5 147:8 147:9 147:10 | | | | | | **amount**(17) 74:7 78:15 81:9 81:22 91:8 92:7 92:7 96:14 96:14 96:21 104:25 107:13 116:17 118:4 121:5 124:11 137:2 | |
| | | **addresses**(1) 142:8 | | | | | |
| **abetted**(2) 15:9 16:18 | | **addressing**(4) 81:16 81:21 | | **agreements**(1) 42:18 | | **amounts**(2) 102:14 116:20 | |
| **abid**(2) 2:16 36:7 | | **adds**(2) 82:16 142:13 | | **ahead**(1) 96:2 | | **ample**(2) 68:21 69:12 | |
| **ability**(4) 11:20 20:3 38:10 89:14 55:24 76:5 87:15 89:1 89:2 91:12 93:15 93:20 105:7 113:11 119:5 119:21 123:10 123:12 123:16 129:9 129:15 135:5 135:9 | | **adequate**(1) 82:11 | | **aided**(2) 15:8 16:18 | | **analogous**(1) 44:2 | |
| | | **adjourned**(1) 148:6 | | **aim**(1) 102:11 | | **analogs**(1) 45:25 | |
| | | **adjusted**(2) 111:4 114:13 | | **akin**(3) 2:11 5:27 36:9 | | **analysis**(3) 85:12 128:16 134:13 | |
| **ably**(2) 82:18 114:10 | | **adjustments**(3) 78:1 78:19 121:18 | | **all**(145) 9:1 9:12 11:4 12:8 12:10 14:14 14:20 15:23 16:25 17:5 17:5 17:8 18:10 18:18 20:4 20:5 21:12 22:7 29:6 33:7 34:4 34:21 34:25 35:20 36:2 37:21 38:22 39:11 40:23 41:9 41:19 42:3 42:5 44:23 44:24 45:25 46:16 47:2 49:7 54:11 50:10 52:3 52:24 52:25 53:4 53:14 53:15 54:6 54:25 55:9 55:12 55:25 56:8 57:2 57:11 59:1 60:12 60:24 64:5 64:5 65:5 66:6 69:9 71:8 72:3 72:4 72:16 72:21 73:17 75:14 77:6 77:8 77:21 79:1 79:1 79:1 79:21 80:14 81:2 81:7 82:7 85:21 85:25 86:11 86:17 88:1 88:1 89:12 89:19 92:24 94:12 95:5 95:24 96:16 98:3 100:5 101:18 102:8 103:10 103:23 104:12 109:9 109:16 110:20 111:18 111:20 111:24 112:4 114:15 115:2 115:3 115:4 116:5 117:17 119:14 122:3 125:13 128:1 128:1 128:14 129:22 129:24 130:11 130:13 131:18 132:8 133:1 134:24 137:15 137:21 138:22 141:9 143:7 144:8 144:20 144:21 145:14 145:17 145:19 145:23 147:12 147:24 148:1 148:5 | | **and**(301) 8:10 8:18 8:20 9:14 9:20 10:4 10:24 11:7 11:11 11:13 11:17 11:18 12:6 12:8 12:15 12:16 12:21 13:11 13:12 13:14 13:17 13:20 13:25 14:1 14:2 14:3 14:4 14:18 14:24 14:5 15:5 15:8 15:12 15:13 15:14 15:16 15:19 15:20 15:24 15:25 16:16 16:18 16:21 17:1 17:1 17:2 17:3 17:4 17:4 17:5 17:6 17:11 18:7 18:8 18:14 18:16 18:18 18:23 18:24 19:12 19:13 19:19 19:20 19:21 19:22 20:4 20:13 20:18 20:18 20:21 20:23 21:5 21:7 21:10 21:18 22:4 22:7 22:9 22:14 22:19 22:24 22:25 23:7 23:7 23:13 23:16 23:17 23:19 23:21 23:22 23:23 23:25 24:1 24:2 24:2 24:3 24:6 24:11 24:13 24:25 25:8 25:15 25:17 25:23 25:24 25:24 26:2 26:4 26:6 26:16 26:21 26:21 27:4 27:12 27:12 27:21 28:4 28:8 28:8 28:10 29:2 29:2 29:5 29:6 29:19 29:23 30:8 30:11 30:16 30:16 30:18 30:20 31:24 32:2 32:10 32:12 32:13 32:21 32:24 33:1 33:8 33:9 33:22 34:5 34:7 34:7 34:8 34:10 34:17 34:18 34:20 34:20 34:22 35:1 35:3 35:5 35:6 35:13 35:25 36:15 36:15 36:17 36:17 36:20 36:21 36:22 36:25 37:5 37:9 37:12 37:17 37:18 38:1 38:5 38:18 39:2 39:7 39:9 39:14 40:2 40:2 40:3 40:3 40:7 40:13 40:22 40:25 40:25 41:3 41:14 41:18 41:19 41:20 42:11 42:21 42:25 42:25 43:3 43:6 43:10 44:13 44:17 44:23 44:25 45:1 46:11 46:11 46:16 46:19 46:23 46:25 47:13 47:15 47:17 47:18 48:3 48:13 48:17 48:18 48:21 49:5 49:11 49:14 49:15 49:16 50:1 50:4 50:8 50:8 50:12 51:1 51:3 51:8 51:10 51:16 51:17 51:20 52:1 52:4 52:18 52:24 53:5 53:6 53:15 53:20 54:17 54:18 54:19 54:22 55:22 55:24 56:1 56:8 56:9 56:10 56:10 56:12 57:12 57:12 57:17 57:24 58:2 58:4 58:4 58:11 58:13 58:14 58:15 58:22 59:2 59:5 59:11 59:15 59:16 59:16 59:23 60:2 60:3 60:4 60:11 60:12 60:20 60:23 60:24 60:25 | |
| **about**(58) 14:15 14:23 19:20 19:21 19:22 30:5 36:16 36:18 37:12 40:18 41:10 41:10 42:8 42:22 44:7 44:18 49:13 49:17 49:21 50:9 50:10 50:11 51:21 52:17 56:8 56:12 56:20 57:9 57:12 57:23 58:7 58:9 59:1 60:9 60:10 61:3 75:8 81:15 90:22 91:1 91:25 92:14 93:8 94:2 94:24 97:4 100:9 103:3 103:22 106:5 108:5 112:8 113:12 115:11 116:9 126:24 143:9 145:18 | | **adler**(49) 3:28 8:24 8:25 36:1 39:14 39:16 39:18 39:21 39:21 40:1 42:10 42:13 42:2 43:9 43:17 43:21 44:11 44:16 44:23 45:8 45:11 47:12 48:8 49:10 51:13 52:1 52:9 52:16 53:20 54:1 54:22 54:25 55:3 55:5 55:9 55:12 55:15 57:2 59:11 61:23 61:24 62:3 62:11 65:24 65:25 66:3 71:5 72:12 72:23 | | | | | |
| | | | | | | | |
| **above**(4) 25:2 48:23 120:10 137:8 | | **adler's**(3) 57:14 58:9 60:11 | | **allege**(1) 47:23 | | | |
| **aboveentitled**  (1) 148:11 | | **administered**(1) 1:5 | | **alleged**(5) 16:10 16:20 33:24 47:20 49:3 | | | |
| **absent**(1) 50:19 | | **administering**(1) 118:16 | | **alleges**(1) 25:5 | | | |
| **absolutely**(4) 37:8 118:11 129:6 136:4 | | **administrativ**(9) 85:7 94:20 96:13 102:15 110:10 118:9 118:13 119:14 121:21 | | **allen**(3) 3:6 5:2 39:2 | | | |
| **abundance**(1) 139:16 | | | | **alleviate**(1) 87:2 | | | |
| **abuses**(1) 49:2 | | **administratively**(1) 118:17 | | **allocation**(38) 8:14 14:9 14:10 14:14 14:16 15:20 15:21 15:24 17:12 18:2 20:19 23:24 28:17 28:23 28:23 28:24 30:1 33:6 34:25 38:12 40:7 40:24 41:18 42:1 42:3 42:6 45:13 45:14 45:17 48:8 50:18 51:22 52:6 59:23 60:16 66:20 66:20 77:24 | | | |
| **accept**(4) 66:12 67:7 67:15 75:19 | | **administrator**(4) 90:1 90:17 142:13 142:14 | | | | | |
| **acceptable**(1) 75:17 | | **administrator's**(2) 33:4 51:6 | | | | | |
| **accepted**(2) 87:22 127:19 | | **administrators**(18) 3:20 4:9 20:10 22:22 25:19 26:19 29:24 30:12 31:14 34:7 38:10 39:22 40:2 40:11 41:11 42:4 57:11 110:15 | | | | | |
| **accepting**(1) 38:15 | | | | | | | |
| **accommodate**(1) 132:9 | | | | **allocation..**(1) 50:9 | | | |
| **accommodation**(1) 129:10 | | **admit**(2) 80:20 128:12 | | **allow**(5) 29:17 75:11 88:16 95:13 119:22 | | | |
| **accordance**(1) 50:17 | | **admitted**(5) 66:3 79:8 79:9 112:7 149:7 | | **allowed**(6) 19:23 28:10 59:9 89:21 93:17 96:1 | | | |
| **according**(1) 30:13 | | **admitting**(1) 112:5 | | | | | |
| **accordingly**(2) 136:18 138:6 | | **adopt**(1) 147:20 | | **allowing**(2) 81:21 134:13 | | | |
| **account**(7) 16:23 74:15 78:10 78:17 92:20 96:21 100:6 | | **adopted**(5) 11:14 12:17 26:11 27:12 | | **allows**(1) 82:1 | | | |
| | | **adoption**(1) 137:20 | | **almost**(2) 21:11 120:25 | | | |
| **accountant**(1) 113:16 | | **advance**(4) 17:15 30:15 37:3 67:3 | | **along**(3) 30:6 95:4 138:13 | | | |
| **accounting**(3) 46:11 103:5 103:6 | | **advancing**(1) 37:9 | | **already**(8) 25:24 29:5 83:15 84:1 105:6 111:5 112:11 127:15 | | | |
| **accounts**(1) 107:7 | | **adversely**(1) 137:24 | | | | | |
| **accrue**(1) 76:9 | | **advice**(2) 134:20 136:10 | | | | | |
| **accrues**(1) 76:9 | | **advisor**(2) 97:7 105:5 | | **also**(45) 12:4 12:7 13:17 26:1 26:3 29:24 33:1 43:1 47:25 50:23 52:6 53:6 54:3 61:22 70:8 70:17 77:10 82:4 82:18 82:19 83:2 83:12 83:14 85:10 86:9 87:19 88:15 91:21 96:15 101:11 102:9 103:2 105:12 106:10 106:17 127:24 134:4 134:9 134:11 135:1 137:4 138:9 138:21 138:23 139:1 | | | |
| **accurate**(2) 68:19 115:2 | | **advisors**(1) 92:13 | | | | | |
| **accused**(1) 40:11 | | **affect**(2) 74:12 77:1 | | | | | |
| **ace**(1) 105:19 | | **affected**(1) 145:15 | | | | | |
| **achieve**(1) 91:21 | | **affects**(2) 117:16 137:15 | | | | | |
| **achieved**(1) 73:24 | | **affirm**(1) 12:1 | | | | | |
| **achieves**(1) 74:18 | | **after**(14) 36:1 92:10 94:23 96:14 100:4 115:9 117:21 117:24 118:17 119:14 121:1 133:19 133:19 135:18 | | | | | |
| **across**(2) 23:12 93:21 | | | | **alspach**(1) 26:2 | | | |
| **act**(9) 12:13 23:1 23:4 25:3 25:20 25:22 32:5 33:24 46:16 | | | | **alternative**(1) 81:6 | | | |
| | | **afternoon**(7) 66:8 109:20 113:1 113:2 113:10 143:20 148:1 | | **although**(2) 81:22 106:2 | | | |
| **action**(1) 42:17 | | | | **alvarez**(9) 85:6 85:10 97:6 105:7 112:24 113:15 113:22 122:18 129:4 | | | |
| **actual**(4) 47:24 93:4 117:24 118:16 | | **afterwards**(1) 114:4 | | | | | |
| **actually**(26) 31:16 40:5 41:15 44:8 46:1 48:2 48:20 49:19 51:22 57:19 62:5 74:25 75:7 93:22 96:6 101:9 105:20 106:9 111:10 111:14 116:17 120:14 120:25 128:2 143:3 145:1 | | **again**(26) 15:24 17:2 18:9 34:8 34:11 38:18 40:1 40:2 40:2 45:13 58:11 61:5 75:20 86:11 89:19 94:6 101:5 103:23 104:1 111:8 122:19 131:7 131:15 131:17 144:3 146:5 | | | | | |
| | | | | | | | |
| **actuarial**(4) 97:9 99:4 105:24 110:2 | | **against**(9) 15:1 15:2 15:5 15:6 29:11 42:17 43:15 125:8 133:22 | | | | | |
| **actuary**(1) 105:5 | | **age**(2) 74:25 117:23 | | | | | |
| **add**(2) 37:11 39:6 | | **agenda**(2) 8:13 84:16 | | | | | |
| **added**(2) 94:1 142:15 | | **agent**(2) 100:2 104:12 | | | | | |
| **adding**(1) 107:24 | | **aggregate**(3) 78:14 103:24 116:13 | | | | | |
| **addition**(2) 13:20 116:11 | | **aggregated**(1) 116:5 | | | | | |
| | | **aging**(2) 130:18 131:23 | | | | | |
| | | **ago**(3) 46:22 130:18 131:23 | | | | | |
| | | **agree**(9) 37:17 41:2 45:13 51:8 53:4 61:5 69:22 72:6 102:22 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**and(301)** 61:1 61:5 61:6 61:7 61:11 61:18 61:19 61:24 62:3 62:11 62:15 62:23 63:15 63:19 64:7 64:10 64:12 64:16 65:2 65:4 65:5 66:4 66:6 66:14 66:16 66:19 66:25 67:1 67:5 67:7 67:12 67:14 68:4 68:13 68:15 68:16 68:19 68:21 68:24 69:7 69:13 70:2 70:5 70:7 70:9 70:17 70:22 71:6 71:9 71:18 71:21 71:23 71:24 72:1 72:2 72:8 72:10 72:18 72:18 72:20 72:20 73:8 73:9 73:9 73:16 74:4 74:7 74:8 74:11 74:12 74:20 74:23 74:24 75:4 75:7 75:10 75:12 75:21 76:8 76:21 76:22 76:23 77:3 77:14 77:20 77:21 77:22 77:23 78:1 78:5 78:7 78:15 78:17 79:2 79:3 79:7 79:8 79:22 80:17 81:7 81:4 81:7 81:8 81:9 81:9 81:18 81:20 81:21 81:22 81:24 82:1 82:1 82:2 82:8 82:8 82:9 82:14 82:14 82:15 82:15 82:17 82:19 82:22 82:23 82:24 82:25 83:1 83:1 83:3 83:5 83:6 83:8 83:9 83:10 83:11 83:12 83:13 83:14 83:15 83:16 83:18 83:19 83:21 84:19 84:20 84:21 84:25 85:2 85:4 85:5 85:9 85:10 85:12 85:13 85:17 85:24 86:3 86:4 86:9 86:14 86:18 86:20 87:5 87:6 87:7 87:9 87:13 87:15 87:20 87:22 87:24 88:4 88:8 88:8 88:10 88:11 88:12 88:13 88:16 88:16 88:18 89:4 89:8 89:12 89:12 89:15 89:16 89:18 89:21 89:23 90:3 90:5 90:16 90:19 90:25 91:9 91:11 91:17 91:19 91:21 91:23 91:23 91:25 92:4 92:5 92:10 92:12 92:13 92:15 92:15 92:19 93:3 93:3 93:5 93:5 93:6 93:9 93:11 93:18 93:20 93:21 93:25 94:5 94:6 94:7 94:9 94:13 94:14 94:20 94:22 94:24 95:1 95:2 95:4 95:10 95:20 95:21 96:13 96:14 97:4 97:9 97:12 97:17 97:21 97:25 98:9 98:20 98:21 99:3 99:6 99:7 99:8 99:9 99:9 99:11 99:21 100:2 100:4 100:6 100:8 100:18 100:20 100:24 100:25 101:5 101:8 101:20 102:3 102:4 102:8 102:10 102:11 102:12 102:14 102:1 102:21 103:2 103:13 103:15 103:22 104:1 104:2 104:4 104:5 104:6 104:11 104:14 105:4 105:5 105:8 105:13 105:18 105:19 105:24 106:4

**and(255)** 106:14 106:16 106:18 107:2 107:5 107:9 107:13 107:14 107:15 107:23 108:5 108:6 108:7 108:9 108:17 108:21 108:21 109:3 109:3 109:5 109:6 109:22 109:23 110:3 110:10 110:16 110:18 111:3 111:25 112:8 112:15 113:21 114:3 114:9 114:17 114:19 114:20 115:9 115:10 115:1 115:20 116:2 116:5 116:8 116:14 116:19 116:22 116:24 116:25 117:13 117:10 117:11 117:14 117:19 117:21 117:22 117:23 118:1 118:5 118:6 118:8 118:14 118:17 118:18 118:20 118:23 119:1 119:5 119:14 120:5 120:8 120:10 120:15 120:16 120:20 120:22 120:24 121:3 121:4 121:11 121:16 121:21 121:23 121:1 122:2 122:6 122:15 122:18 122:19 122:25 123:2 123:10 123:13 123:14 123:21 123:22 123:23 124:24 124:24 125:2 125:5 125:9 126:7 126:8 126:11 126:12 126:17 127:5 127:17 127:2 127:21 127:24 128:3 128:6 128:9 128:15 128:22 128:25 129:2 129:14 129:22 129:21 129:25 130:14 130:15 130:19 131:9 131:10 131:11 131:2 131:22 132:2 132:4 132:8 132:10 132:18 133:14 133:16 133:19 133:22 133:25 134:11 134:12 134:13 134:16 134:18 134:19 134:22 135:1 135:10 135:12 135:17 136:2 136:8 136:8 136:11 136:14 136:14 136:16 136:17 136:18 136:20 137:3 137:5 137:8 137:10 137:12 137:13 137:14 137:17 137:20 137:22 137:23 138:13 138:16 138:17 138:19 139:1 139:4 139:7 139:9 139:11 139:23 140:4 140:5 140:8 140:8 140:11 140:17 141:10 141:24 141:24 141:25 142:1 142:8 142:18 142:20 142:24 143:9 143:1 143:13 143:15 143:16 143:25 144:2 144:4 144:4 144:6 144:7 144:10 144:11 144:12 144:13 144:17 144:18 144:20 144:21 144:25 145:3 145:7 145:9 145:9 145:13 145:24 145:17 145:18 145:18 145:21 145:24 146:3 146:5 146:5 146:16 146:21 146:24 146:24 146:24 146:25 147:23 148:4

**andrew(2)** 4:43 5:14
**ann(1)** 1:24
**anniversary(1)** 21:11
**annual(1)** 103:18
**annuity(20)** 87:16 87:18 87:25 88:1 88:6 88:8 88:11 88:16 88:21 88:22 100:8 106: 106:14 116:25 117:2 117:9 119:22 120:23 121:12 139:6
**another(9)** 8:10 29:22 39:20 87:20 124:3 124:4 128:22 137:23 137:23
**answer(2)** 10:5 10:6 23:8 25:24 36:12 36:21 36:22 44:17 47:3 69:4 110:24 123:24 125:14
**answered(2)** 36:20 125:15
**anticipate(1)** 70:2
**anxious(1)** 35:13
**any(45)** 8:20 8:23 11:1 16:16 26:19 27:3 29:7 35:24 38:1 52:17 54:19 55:13 55:24 58:3 58:4 58:20 59:4 61:20 66:9 67:18 74:15 79:4 79:4 79:11 82:3 86:16 91:3 94:12 104:16 106:4 109:4 109:10 109:11 110:22 112:14 120:11 122:6 127:7 127:24 128:11 133:14 136:7 136:2 137:11 141:10
**anybody(1)** 52:17
**anymore(1)** 68:8
**anyone(12)** 38:24 40:20 62:6 75:15 76:14 79:23 88:14 109:10 130:1 132:17 133:10 133:11

**anything(11)** 22:4 22:5 35:24 47:4 47:5 105:25 108:25 111:22 140:7 141:11 142:6
**anyway(1)** 52:20
**anywhere(1)** 121:22
**apart(2)** 14:24 107:12
**apologies(1)** 8:17
**apologize(2)** 72:25 130:12
**apostle(1)** 12:3
**appeal(115)** 9:20 9:22 9:25 10:12 11:3 11:25 12:15 13:8 14:2 17:3 17:3 21:5 23:3 23:7 24:14 24:22 26:6 28:18 29:19 29:19 29:25 30:8 30:13 30:18 30:19 30:22 30:23 30:25 30:5 31:1 31:2 31:4 31:8 31:17 31:21 31:22 31:25 32:3 32:4 33:4 33:9 34:12 35:1 35:3 36:14 36:23 37:2 37:3 37:5 37:7 38:9 38:15 40:7 41:14 41:15 41:16 41:20 42:1 43:12 43:17 43:22 44:13 44:19 45:5 47:15 48:1 48:5 48:15 48:17 49:2 49:4 49:6 51:3 51:5 51:7 51:7 52:13 53:6 54:18 54:19 58:3 58:5 60:25 61:16 61:17 62:6 62:7 62:19 63:8 63:9 63:15 63:16 63:18 64:13 65:6 65:8 65:10 65:12 65:15 65:16 65:21 66:13 66:20 66:24 67:1 67:15 68:6 69:13 70:17 71:4 71:14 71:24 72:7 72:10
**appealed(2)** 48:3 62:7
**appeals(14)** 8:14 11:22 11:25 12:9 12:10 12:14 12:21 13:3 27:6 37:10 44:6 63:17 63:17 65:7
**appearances(1)** 4:2
**appeared(2)** 34:9 108:17
**appears(1)** 63:14
**appellant(3)** 43:15 47:19 48:3
**appellants(1)** 49:1
**appellate(3)** 25:4 38:11 66:12
**appellee(2)** 11:24 43:5
**appended(1)** 53:15
**applicable(1)** 120:6
**application(1)** 66:10
**applied(1)** 118:6
**applies(1)** 25:6
**apply(5)** 26:4 27:8 27:18 54:6 60:24
**applying(2)** 120:8 120:10
**appointed(1)** 82:13
**apportioned(1)** 87:5
**appreciate(8)** 39:11 39:18 61:6 64:10 128:5 146:4 146:4 146:5
**appreciated(1)** 83:21
**approach(6)** 78:5 78:24 95:25 98:23 102:16 139:14
**appropriate(5)** 45:3 70:6 82:2 102:16 142:12
**appropriately(2)** 87:4 136:18
**approval(3)** 27:24 60:3 82:17
**approve(9)** 20:15 21:21 27:19 28:1 28:5 81:3 82:3 94:9
**approved(4)** 19:15 19:16 20:14 43:24
**approves(1)** 58:15
**approving(4)** 18:23 23:18 49:20 83:22
**approximate(1)** 99:8
**approximately(2)** 74:12 109:20
**arbitrability(4)** 22:9 27:6 29:13 53:6
**arbitrable(1)** 48:23
**arbitrate(39)** 16:3 16:23 17:7 19:1 19:9 22:4 22:24 22:8 22:11 22:12 23:6 23:6 25:22 27:5 27:19 27:23 28:11 33:5 37:18 42:6 48:11 48:14 51:7 51:23 52:3 57:16 58:16 59:4 59:5 59:8 59:8 59:16 59:17 59:23 59:24 60:12 60:15 60:16 60:20 60:22
**arbitrated(2)** 15:25 59:3

**arbitration(86)** 10:13 12:13 17:7 17:14 17:22 17:24 19:7 20:16 20:25 21:1 22:6 22:7 22:9 23:7 23:4 23:19 23:24 24:23 25:2 25:3 25:7 25:10 25:18 25:20 25:22 27:7 27:10 27:14 27:17 27:18 28:2 28:7 28:9 32:5 33:14 33:16 33:20 33:24 37:22 38:2 40:4 40:17 40:21 41:2 41:5 41:6 41:8 41:8 41:21 42:18 44:4 44:20 45:6 46:7 46:8 46:10 46:14 46:16 46:17 47:6 47:15 47:16 47:20 47:23 48:13 48:24 49:19 49:20 49:24 50:11 50:24 51:9 51:1 51:17 52:2 52:21 57:14 57:23 58:11 58:23 58:24 58:25 59:1 60:18 66:16

**arbitrator(1)** 28:7
**are(139)** 13:15 14:11 14:19 14:24 14:25 14:25 15:8 16:4 16:5 16:22 17:21 21:13 21:17 26:20 28:8 28:15 29:10 31:12 32:13 32:18 33:14 33:23 35:5 37:1 38:5 40:2 41:24 42:1 42:5 43:2 44:6 46:9 46:10 46:13 47:14 52:3 53:15 53:23 54:5 54:15 54:16 56:25 57:12 58:12 59:25 60:13 60:21 60:22 60:23 63:1 63:11 65:9 67:1 68:14 76:6 77:21 79:4 80:5 81:18 81:18 82:9 82:10 82:16 82:18 82:21 82:22 83:6 85:12 86:4 87:7 88:8 88:11 89:3 89:20 89:23 89:24 91:21 94:8 95:11 95:12 95:12 96:1 96:14 99:2 99:21 100:5 100:11 101:8 101:22 103:6 103:8 104:14 105:11 106:23 107:13 107:23 108:18 109:20 109:22 109:23 111:3 111:6 112:9 114:10 115:1 121:1 121:19 122:6 123:5 124:12 124:22 125:3 127:2 127:10 129:25 131:1 131:2 133:1 133:20 134:14 135:6 135:8 135:14 135:16 138:25 139:10 140:23 140:24 142:1 142:3 142:7 142:17 145:4 145:5 145:13 146:2 146:2 147:3 147:14

**areas(3)** 54:2 101:14 119:12
**aren't(1)** 90:19
**arguably(1)** 86:12
**argue(8)** 35:3 60:17 68:5 69:3 69:19 70:8 71:5 72:2
**argued(3)** 14:15 18:1 18:7
**arguing(5)** 20:9 33:12 41:10 42:9 44:7
**argument(18)** 13:8 14:8 17:21 23:6 28:23 28:23 28:24 33:2 35:22 43:13 55:10 57:23 58:9 60:19 64:8 68:16 72:17
**arguments(7)** 14:10 14:10 34:18 64:7 64:8 119:24 127:12
**arise(1)** 27:14
**arose(1)** 27:13
**around(5)** 40:11 58:6 59:15 74:17 146:9
**arrive(2)** 117:19 121:12
**arrived(1)** 118:6 119:15 120:3
**arrogance(1)** 23:16
**arsht(1)** 1:22
**arun(1)** 2:13
**aside(4)** 79:6 100:2 100:3 119:21
**ask(16)** 8:22 9:17 11:25 31:13 31:14 70:15 70:17 79:23 103:3 106:22 109:16 124:4 132:2 132:15 136:22 137:1
**asked(4)** 9:19 30:7 98:4 110:12
**asking(10)** 20:15 34:23 37:2 69:14 73:11 93:9 101:9 104:2 135:8 135:25
**aspect(1)** 99:13
**aspects(3)** 53:6 66:9 83:2
**assembled(1)** 73:2
**assertion(1)** 42:4
**assets(2)** 20:6 28:25
**assist(1)** 129:15
**associate(1)** 66:1
**associated(1)** 106:23
**associates(2)** 64:2 82:24
**assume(5)** 74:20 77:14 98:6 107:1 115:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

assumed(5) 104:19 108:6 115:12 115:18 117:11

assuming(4) 98:3 115:10 116:12 140:13
attached(5) 85:14 89:16 89:21 91:16
attack(1) 141:19
attention(3) 48:19 83:4 139:22
attorney(1) 39:15
attractive(1) 88:22
attrition(6) 74:15 74:20 78:1 78:17 105:14 114:20

auction(1) 34:9
audible(1) 112:6
audit(7) 100:13 103:18 103:18 103:19 104:2 104:5 104:6

auditing(1) 100:14
august(1) 56:2
aurelius(2) 4:31 6:14
authenticates(1) 79:19
authenticating(1) 79:24
authored(3) 10:22 12:4 12:7
authority(6) 45:20 45:22 54:19 135:8 136:6 136:7

authorization(3) 60:5 63:16 65:6
authorize(1) 65:20
automatic(4) 101:11 11:18 11:19 29:13
automatically(1) 44:20
available(5) 87:15 93:7 115:22 138:1 138:3

avenue(3) 3:8 3:15 3:47
average(3) 103:24 111:9 147:15
avoid(1) 54:20
avoided(1) 9:13
away(7) 38:2 55:23 75:13 90:8 90:11 131:24 141:7

back(23) 9:15 10:8 10:18 20:11 21:7 50:3 52:18 72:1 73:9 88:10 88:15 92:8 92:10 93:5 93:6 94:9 102:2 103:8 105:24 116:24 130:17 131:11 131:20

backed(1) 88:8
background(1) 113:13
bad(4) 34:20 46:19 46:20 46:22
badtke=berkow(1) 5:3
balancing(1) 106:4
ballpark(3) 99:10 103:25 111:10
baltimore(1) 100:25
bank(3) 6:10 16:23 102:3
banking(1) 97:12
bankruptcy(9) 1:1 1:20 30:22 63:11 64:25 71:21 93:1 127:21 140:3

barbara(1) 56:4
barclays(1) 5:39
bargaining(2) 27:11 27:11
base(2) 47:22 120:6
based(15) 42:4 77:3 80:10 88:22 93:17 98:14 105:23 115:22 116:7 120:4 121:11 126:8 135:3 136:7 144:19

basic(1) 21:25
basically(11) 45:18 74:5 87:23 94:14 100:1 103:5 103:7 117:9 119:8 123:6 142:6

basis(10) 23:7 23:13 28:22 31:24 34:23 41:23 45:2 71:25 116:5 116:10

bassett(1) 2:23
battery(1) 3:31
bear(3) 22:22 83:4 104:16
bears(1) 37:18
beat(1) 101:20
became(1) 130:15

because(113) 9:18 11:14 13:2 13:7 13:16 14:2 14:10 14:11 14:19 17:7 19:14 19:15 22:20 22:22 23:12 23:14 24:25 26:23 26:24 27:3 30:5 30:16 33:7 36:23 37:6 37:7 38:19 39:24 43:17 44:11 46:6 46:8 47:2 48:1 48:12 51:14 52:19 53:25 55:25 58:8 66:21 66:22 68:18 69:3 70:25 72:4 74:15 75:1 75:5 78:1 78:11 81:13 82:4 83:6 85:5 85:19 87:10 87:23 88:7 88:17 89:9 90:2 90:5 90:13 92:3 92:4 92:11 92:17 92:17 93:2 93:15 93:17 94:12 99:15 99:21 100:1 101:11 101:21 102:3 102:20 103:19 105:19 105:14 107:4 114:16 115:24 117:16 119:19 120:13 120:19 120:23 121:1 121:3 122:18 126:1 128:22 129:1 129:16 129:18 130:25 132:9 135:6 135:20 135:23 136:5 137:6 137:15 137:16 137:21 138:14 139:5 140:25 145:7

beckerman(1) 2:12
become(2) 52:12 137:16
been(70) 8:7 8:7 9:19 15:2 15:4 15:5 18:1 18:7 21:6 23:13 23:22 23:24 23:25 26:11 34:7 34:16 40:14 40:18 40:23 41:20 47:13 49:6 49:7 50:24 54:4 55:24 58:25 60:14 61:3 62:14 62:19 63:15 64:16 64:17 64:19 65:5 65:20 66:3 67:12 67:17 68:19 70:25 71:9 79:2 79:8 79:9 80:7 80:11 81:7 86:16 87:18 89:3 90:15 93:3 95:21 97:11 108:16 108:22 114:13 123:6 123:9 123:10 123:11 124:20 127:22 129:18 144:10 144:13 145:22

before(41) 1:19 11:12 12:24 18:2 18:18 28:4 29:17 34:7 39:9 41:15 41:21 41:25 46:5 49:6 50:3 52:19 58:22 61:25 66:25 70:25 71:12 72:7 74:16 79:1 84:3 87:6 106:2 108:7 108:8 114:21 121:18 123:9 124:6 131:24 133:16 135:9 135:14 139:6 141:19 143:23 144:14

begin(2) 21:11 73:9
beginning(3) 48:19 72:21 142:16
behalf(4) 36:9 39:4 134:11 144:6
behold(1) 93:5
being(11) 18:22 34:4 37:14 50:7 57:19 100:13 119:5 119:21 129:15 139:21 143:18

labelbor(1) 128:14
believe(32) 14:6 18:10 33:2 49:19 74:16 79:11 101:9 101:25 102:16 102:19 104:3 104:13 104:21 107:13 108:25 118:19 119:20 120:21 121:10 121:19 123:23 123:24 128:14 129:12 129:20 130:20 132:22 135:7 137:18 139:1 143:9 147:4

believed(1) 50:21
belknap(1) 5:20
below(5) 11:5 23:4 44:21 49:6 120:10
beneficiaries(1) 90:6
benefit(14) 78:20 84:21 85:12 86:21 89:16 89:18 91:22 92:20 105:5 106:9 118:15 118:16 127:6 129:8

benefits(24) 74:4 75:6 81:10 81:16 81:17 81:18 81:21 81:22 83:9 86:7 87:6 87:23 87:24 90:3 92:8 94:15 95:22 99:17 109:21 118:21 120:20 132:7 134:15 140:4

berger(16) 4:24 76:1 76:1 76:3 76:4 77:2 134:9 139:18 139:20 139:20 139:23 140:1 140:15 141:3 141:4 141:6

berger's(1) 140:24
best(6) 27:22 81:4 102:20 129:13 137:17 139:7

bet(3) 9:4 75:23 102:18
better(4) 90:2 131:6 134:23 146:11
between(5) 19:9 47:24 62:1 72:18 109:7

beyond(3) 54:2 137:8 138:3
big(4) 85:19 85:24 87:11 113:17
billion(1) 19:25 20:8
binding(3) 67:10 134:16 137:21
birthday(1) 84:4
bit(12) 24:6 58:7 74:14 74:17 90:2 90:4 92:14 97:4 99:17 100:2 102:2 113:12

bizarre(2) 30:15 71:16
blabey(1) 4:32
black(2) 78:6 138:24
blacked(2) 95:21 95:23
blank(2) 101:15 101:15
blauner(1) 6:3
bled(1) 113:10
blended(2) 116:17 116:23
blind(2) 108:11 108:12
board(2) 93:21 110:12
body(1) 50:8
boils(1) 21:24
bold(1) 23:25
bond(1) 105:18
bondholder(1) 2:21
bondholders(1) 83:13
book(4) 56:1 56:2 56:5 56:18
books(1) 45:23
border(4) 53:11 53:16 54:23 55:20
both(19) 17:11 24:3 26:21 28:9 28:22 53:5 53:9 53:18 54:5 58:1 62:2 62:5 64:8 85:3 85:4 87:20 105:5 110:5 112:11

bother(2) 50:7 133:8
botter(1) 2:15
bottom(1) 121:9
bought(1) 55:25
bounced(1) 99:5
bound(1) 42:5
boundaries(1) 144:12
bounds(1) 144:6
boy(1) 84:5
brackets(3) 116:19 116:19 117:7
bradford(7) 10:19 11:7 11:14 12:12 12:13 21:6 24:12

branch(1) 88:24
breach(5) 16:13 16:16 16:18 17:11 41:1
breaches(2) 15:9 16:20
break(3) 106:11 106:12 131:14
breakage(1) 117:12
breaking(2) 130:25 131:12
brenda(2) 6:41 143:20
brian(2) 3:14 5:21
brickley(1) 6:7
brief(3) 68:4 69:20 127:14
briefly(1) 140:1
bright(2) 45:9 64:2
bring(5) 22:22 95:4 101:2 109:5 145:23
brings(3) 83:9 129:13 147:5
broader(1) 39:23
broker(1) 19:7

bromley(149) 1:34 9:10 9:12 9:14 9:24 10:3 10:6 10:8 10:12 10:16 10:24 11:16 12:6 12:25 13:6 13:19 13:24 14:6 14:8 14:18 15:4 15:12 15:19 16:8 16:13 17:13 17:16 17:18 17:20 17:24 18:1 18:5 18:7 18:13 18:22 19:18 20:2 20:8 21:4 21:10 21:14 22:17 24:8 24:11 24:25 25:15 25:17 26:11 26:16 27:2 27:16 28:7 28:21 29:22 30:3 30:11 31:7 31:10 31:19 32:12 32:14 32:17 32:21 32:24 33:1 33:18 33:22 34:1 34:16 35:5 35:15 35:17 35:21 35:23 35:24 36:3 36:13 36:20 38:5 39:7 40:1 40:10 42:9 44:3 46:20 47:17 47:25 49:11 50:2 51:14 55:16 55:17 56:17 56:4 56:6 56:8 56:17 56:20 56:22 56:25 57:8 57:24 58:1 58:20 59:14 59:19 60:8 61:13 61:14 62:13 62:14 62:16 62:18 62:22 63:5 63:10 63:14 63:24 64:11 64:12 64:16 64:19 64:22 64:25 65:4 65:15 65:18 65:23 67:22 68:3 68:10 68:23 69:2 69:9 69:16 69:19 69:23 70:4 70:11 70:15 70:20 70:22 71:2 71:10 71:14 71:18 71:23 72:4 72:24

brotherhood(1) 22:2
brought(5) 28:1 49:6 83:4 86:4 133:18
bryant(1) 2:17
buchanan(1) 2:49
budgeted(1) 90:17
budgeting(1) 93:4
build(1) 105:13
building(2) 60:2 117:19
burden(1) 43:5
burdens(1) 86:20
business(7) 20:6 97:11 110:19 113:18 113:19 113:20 123:16

businesses(1) 20:17
but(162) 9:19 11:24 12:23 17:10 18:9 18:15 20:22 21:24 24:4 24:12 27:7 27:20 28:15 29:7 29:16 30:4 31:1 31:7 31:15 31:25 32:19 33:2 34:3 34:14 34:24 44:24 45:12 46:21 48:22 49:15 49:22 57:1 58:7 59:14 59:19 60:10 61:1 61:9 61:11 61:20 62:3 62:8 62:13 63:2 63:7 64:13 65:1 65:20 67:11 68:4 69:8 69:10 69:20 70:3 70:24 71:9 72:19 73:23 74:16 74:17 75:12 76:9 76:24 79:12 82:20 82:22 83:2 83:16 83:18 86:2 86:22 87:12 87:25 88:11 88:23 90:16 91:1 91:10 91:12 91:12 92:20 93:18 94:9 94:12 95:22 96:16 96:18 99:16 101:11 102:2 104:22 105:12 105:19 105:21 105:22 106:15 108:3 108:4 108:18 109:2 110:20 110:24 111:4 111:11 113:10 114:24 117:6 119:3 120:10 121:1 121:12 121:19 122:20 122:23 123:16 124:12 124:16 125:5 125:16 126:5 126:13 127:15 128:24 129:20 133:2 133:5 133:15 133:16 134:6 134:9 134:11 134:22 135:1 135:6 135:25 136:6 137:9 140:20 143:4 145:6 145:11 145:23 146:3 146:4 146:16 147:6

calculated(2) 116:7 116:11
calculation(2) 115:7 120:4
calculations(2) 85:11 116:2
call(5) 93:24 94:18 94:23 112:23 133:5 142:17

called(2) 41:14 92:15
calling(3) 48:19 71:3 131:2
came(5) 29:2 46:3 47:4 88:10 105:20
camera(2) 94:2 129:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| can(92) 9:5 11:2 12:20 13:16 13:21 19:8 20:17 20:18 21:1 24:3 26:13 31:4 31:17 35:2 37:10 41:3 41:17 41:20 42:13 42:15 43:3 45:4 45:14 45:14 47:8 52:9 52:22 53:10 53:13 57:2 58:13 58:16 59:14 60:17 61:1 63:1 63:2 63:8 67:15 70:9 70:17 70:22 71:1 74:18 78:18 88:10 88:10 89:10 89:24 90:7 92:25 93:8 93:8 93:9 93:11 94:19 94:24 95:3 97:4 97:17 97:21 99:19 99:22 102:15 103:2 103:13 103:17 104:5 106:21 107:16 107:18 109:5 110:16 112:23 113:12 114:3 118:8 120:1 121:9 122:1 122:1 123:24 125:9 131:4 131:5 132:19 133:6 137:17 139:10 139:11 143:3 147:15 | | certainly(30) 23:22 35:25 36:4 39:15 43:11 43:14 43:20 51:12 54:11 54:21 60:15 61:8 69:25 70:1 70:7 72:11 75:10 82:9 97:18 99:20 102:23 105:16 112:25 132:4 132:4 133:5 139:15 140:2 140:6 141:2 | | claims(42) 13:21 13:24 13:25 14:10 14:11 14:12 14:14 14:15 15:1 15:2 15:4 15:5 15:7 15:7 15:21 16:6 17:16 17:21 28:19 28:21 28:24 29:5 29:6 29:7 29:10 29:11 32:9 32:18 32:22 32:24 34:8 41:2 42:20 45:6 45:15 49:3 60:13 60:16 60:17 100:4 143:4 143:6 | | compensation(5) 88:2 122:12 122:13 123:7 124:7 |
| | | | | | | complete(8) 14:1 80:1 80:24 112:1 123:12 129:25 133:19 145:18 | |
| | | certainty(3) 83:10 94:13 129:14 | | clarify(2) 69:10 93:12 | | | |
| | | certification(14) 29:19 30:4 30:5 30:18 32:4 37:1 53:3 62:1 66:10 66:11 68:9 68:21 72:1 148:8 | | clarity(1) 93:20 | | completely(1) 28:12 | |
| | | | | class(8) 42:17 82:5 82:12 82:16 83:17 87:4 115:23 132:8 | | compliance(2) 104:9 107:17 | |
| | | | | | | complicated(3) 17:5 93:3 145:9 | |
| | | certified(6) 37:2 37:10 61:22 68:6 82:22 113:16 | | | | complicates(1) 30:3 | |
| can't(22) 15:22 23:8 23:9 27:18 31:2 31:7 32:3 40:6 42:25 43:21 46:22 48:16 51:2 54:2 57:1 59:8 61:4 61:10 137:22 139:24 141:7 142:25 | | | | classic(1) 29:16 | | complication(1) 13:13 | |
| | | | | clause(8) 10:13 17:22 22:6 27:7 44:4 44:8 47:20 50:11 | | compliment(2) 82:3 84:11 | |
| | | certify(19) 9:19 31:2 31:4 31:18 31:19 36:14 36:23 53:5 62:9 63:8 65:13 67:1 67:2 69:13 70:18 71:1 91:5 148:9 | | | | compromis(1) 83:10 | |
| | | | | clear(22) 22:13 22:17 23:22 33:12 39:10 46:6 46:6 48:22 49:24 52:2 52:4 81:8 81:8 82:9 126:1 128:3 129:8 133:15 133:16 137:14 137:19 138:6 | | computation(4) 115:5 117:16 118:11 120:2 | |
| | | | | | | computations(3) 115:9 117:21 121:11 | |
| canada(10) 5:31 13:17 13:21 16:9 32:10 32:20 49:15 130:14 131:9 131:19 | | | | | | conaway(1) 3:20 | |
| | | certifying(4) 9:22 9:25 61:17 82:5 | | | | concede(1) 14:5 | |
| | | cetera(1) 124:12 | | | | concept(2) 68:17 118:19 | |
| | | challenge(2) 52:18 52:24 | | clearly(17) 12:25 17:12 22:2 22:6 22:10 43:22 49:23 50:9 53:13 67:17 81:18 120:17 120:22 126:8 137:17 137:25 141:1 | | concern(12) 11:23 13:18 13:20 24:7 24:9 38:3 52:17 57:9 61:15 100:19 104:7 118:23 | |
| canadian(12) 3:35 13:13 15:2 15:6 15:9 16:15 18:23 39:4 39:7 56:18 56:18 56:23 | | challenging(1) 52:25 | | | | | |
| | | chambers(2) 145:7 145:21 | | | | | |
| | | change(5) 77:25 78:17 121:17 125:1 139:2 | | | | concerned(6) 38:14 58:8 60:10 63:3 118:25 133:21 | |
| | | changed(1) 40:2 | | | | | |
| cannot(3) 30:22 34:22 60:1 | | changes(8) 78:8 78:10 138:24 138:24 139:5 139:10 142:1 143:14 | | cleary(2) 1:29 4:4 | | concerns(4) 8:20 81:15 118:10 141:11 | |
| can't(3) 92:16 118:19 121:12 | | | | clerk(2) 8:2 73:13 | | concerted(1) 137:9 | |
| cap(7) 92:4 92:10 98:8 100:7 119:13 120:7 121:4 | | chapter(3) 1:8 59:25 73:3 | | client(1) 6:2 | | conclusion(2) 56:12 145:24 | |
| | | characterized(1) 124:19 | | client's(2) 39:19 41:2 | | concrete(1) 129:16 | |
| | | charge(1) 88:25 | | clients(2) 60:11 113:19 | | condition(3) 59:4 59:4 105:15 | |
| capable(2) 68:14 128:18 | | charles(6) 3:30 85:9 112:23 113:5 113:14 149:4 | | close(3) 22:12 118:3 147:5 | | conditions(1) 129:21 | |
| capital(4) 5:39 5:43 5:47 6:14 | | | | closet(1) 121:12 | | conducting(1) 57:18 | |
| capped(1) 127:3 | | | | cloth(1) 29:1 | | confers(1) 25:4 | |
| car(1) 19:6 | | chart(9) 77:18 96:20 97:22 97:23 97:25 98:22 99:15 99:15 108:25 | | cobra(1) 90:5 | | confess(1) 44:23 | |
| card(2) 23:2 102:6 | | | | code(6) 86:3 86:5 86:11 120:21 121:3 | | confident(2) 24:2 24:3 | |
| care(2) 83:3 101:7 | | | | colleagues(3) 56:18 63:11 83:20 | | confidential(1) 95:18 | |
| careful(2) 61:18 86:14 | | charts(2) 85:14 95:3 | | collective(2) 27:10 27:11 | | conflict(1) 53:23 | |
| carefully(4) 64:6 83:19 128:17 136:12 | | chase(1) 2:24 | | collectively(1) 37:1 | | congratulating(1) 145:3 | |
| carol(1) 7:7 | | cheaper(1) 100:14 | | college(1) 21:15 | | congratulations(2) 84:12 146:22 | |
| carras(1) 5:44 | | check(3) 90:13 90:18 91:9 | | color(1) 99:12 | | conjunction(1) 45:15 | |
| carried(2) 142:7 142:7 | | checks(1) 104:12 | | colorable(6) 24:23 26:6 26:15 26:16 37:6 43:13 | | connecticut(1) 107:21 | |
| carry(4) 12:16 76:10 110:17 127:24 | | chief(2) 10:21 16:9 | | | | connection(2) 97:5 113:21 | |
| carrying(1) 110:10 | | chiefs(1) 88:24 | | colorful(1) 60:19 | | conscience(1) 61:4 | |
| case(63) 1:4 10:9 12:16 12:24 21:14 21:16 24:13 24:19 24:20 25:1 25:5 25:9 25:23 26:11 26:13 30:17 30:20 33:11 33:12 35:12 37:4 37:9 37:12 38:21 40:12 42:6 42:14 42:16 42:17 42:19 47:25 48:9 48:10 48:10 48:14 48:25 49:23 54:7 59:15 67:3 67:6 83:7 87:8 88:17 91:11 94:10 97:5 105:2 105:14 108:6 108:9 113:21 127:10 127:23 130:20 131:25 | | children(4) 115:16 130:15 131:10 131:19 | | column(3) 98:11 100:6 107:2 | | consensual(3) 50:19 73:24 74:18 | |
| | | choice(4) 126:25 127:2 127:2 127:4 | | columns(1) 97:25 | | consent(1) 58:22 | |
| | | choices(2) 126:21 126:22 | | combination(1) 16:20 | | consented(2) 58:25 61:8 | |
| | | choose(3) 105:23 145:11 145:12 | | combined(1) 119:24 | | consequences(1) 86:16 | |
| | | chose(6) 46:7 46:8 87:8 101:5 119:25 123:13 | | come(19) 11:13 28:4 28:4 48:16 52:1 72:1 73:9 86:20 88:15 93:4 93:5 94:8 95:1 108:10 116:24 117:25 129:16 140:12 145:2 | | conservative(6) 87:22 88:7 91:11 101:6 115:18 115:25 | |
| | | | | | | | |
| case-by-case(1) 45:2 | | chris(1) 2:5 | | | | consider(3) 39:15 54:10 54:11 76:25 132:2 | |
| cases(17) 12:2 21:12 24:13 35:8 44:3 44:6 44:24 45:1 45:25 46:1 47:10 47:14 47:18 47:23 49:2 110:5 123:5 | | christy(1) 148:14 | | | | consideration(6) 31:15 61:9 64:6 70:16 72:11 136:12 | |
| | | chrysalis(1) 26:3 | | comes(6) 16:1 23:12 43:24 45:18 86:22 125:10 | | | |
| | | chung(1) 6:11 | | | | | |
| cash(2) 89:10 119:11 | | circles(1) 40:12 | | | | considered(6) 46:12 46:13 46:17 49:8 51:6 87:19 | |
| catching(1) 130:24 | | circuit(54) 9:20 9:21 10:19 10:21 10:22 11:2 11:8 11:9 11:9 11:13 11:17 11:19 12:3 12:7 12:17 26:2 26:4 26:4 26:5 28:12 29:20 30:8 31:5 31:20 31:23 32:7 35:3 35:7 35:12 36:14 37:10 37:12 38:6 43:6 44:25 45:9 53:4 60:24 61:18 61:22 62:4 62:8 63:19 63:25 65:21 67:5 67:14 68:6 69:13 70:6 70:8 70:9 70:20 135:18 | | coming(3) 52:18 116:3 123:22 | | | |
| categories(1) 100:12 | | | | commence(1) 14:3 | | | |
| cause(2) 53:18 93:15 | | | | commercial(1) 97:12 | | considering(2) 131:11 131:20 | |
| causes(1) 88:5 | | | | committed(1) 15:10 | | constituencies(2) 141:1 145:14 | |
| caution(2) 138:14 139:16 | | | | committee(44) 2:5 2:35 3:36 4:22 5:26 30:6 36:10 37:19 40:22 66:21 67:19 67:23 73:21 76:2 82:13 83:13 83:16 97:8 101:16 104:5 105:6 105:22 106:6 108:10 117:22 118:18 119:25 124:9 128:16 133:2 133:18 134:11 134:16 134:18 134:18 135:3 135:7 136:10 136:16 137:25 140:2 140:3 140:7 144:4 | | constituency(7) 86:25 93:16 102:21 106:18 127:7 137:6 144:7 | |
| caveat(1) 115:1 | | circuit's(2) 11:10 38:15 | | | | | |
| ccc(1) 3:36 | | circuits(5) 11:12 11:17 44:18 44:24 45:1 | | | | | |
| cede(1) 9:10 | | circumstances(2) 38:7 129:21 | | | | constituents(1) 140:4 | |
| celebrate(1) 148:2 | | citations(1) 24:13 | | | | constitutes(1) 16:13 | |
| centered(1) 85:1 | | cited(4) 47:12 48:10 49:1 49:2 | | | | constructive(4) 14:13 16:22 29:4 89:11 92:19 102:16 127:5 | |
| certain(18) 9:14 42:19 51:15 52:5 53:25 54:17 59:25 74:3 74:12 76:7 96:13 104:10 105:17 106:15 108:15 118:12 134:5 140:1 | | cites(1) 12:1 | | | | | |
| | | city(1) 16:23 | | | | consultation(1) 118:18 | |
| | | civil(2) 31:19 25:8 | | | | consulting(1) 113:18 | |
| | | | | comparative(1) 115:9 | | contained(1) 47:20 | |
| | | claim(9) 17:10 78:14 115:7 115:8 115:13 117:24 120:5 133:20 133:21 | | comparison(2) 106:16 114:2 | | contemplated(2) 47:5 53:14 | |
| | | | | comparison(1) 127:2 | | contemplates(1) 78:18 | |
| | | | | compel(3) 24:23 44:20 47:16 | | context(5) 37:7 46:9 47:15 62:9 63:20 | |
| | | | | | | continuation(1) 97:12 98:9 107:10 124:9 124:13 124:25 142:1 | |
| | | claimed(1) 115:20 | | | | | |
| | | | | | | continue(7) 33:13 33:17 34:18 34:22 90:7 121:17 133:6 | |
| | | | | | | | |
| | | | | | | continued(1) 2:2 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| continues(1) 58:9 | | court(301) 1:1 8:3 8:10 8:15 8:22 9:1 9:4 9:7 9:12 9:17 10:5 10:10 10:10 10:15 10:23 10:25 11:2 11:2 11:15 11:25 12:2 12:27 12:5 12:14 12:14 12:16 12:20 12:21 12:27 13:3 13:5 13:9 13:12 13:23 14:1 14:4 14:7 14:17 15:3 15:11 15:18 16:7 16:12 17:10 17:14 17:17 17:19 17:23 17:25 18:3 18:4 18:16 18:12 18:21 18:23 18:23 19:3 19:8 19:12 19:17 20:1 20:7 20:11 21:3 21:9 21:13 21:19 22:1 22:16 22:19 23:9 23:11 24:10 24:21 24:24 25:14 25:16 26:3 26:4 26:4 26:7 26:10 26:15 26:21 27:1 27:15 27:24 28:6 28:20 29:17 29:17 29:25 30:2 30:7 30:10 30:22 30:22 30:24 30:24 31:3 31:4 31:5 31:6 31:9 31:11 31:12 31:13 31:15 31:16 31:18 31:20 32:10 32:13 32:16 32:18 32:23 32:25 33:3 33:5 33:16 33:21 33:25 34:15 34:24 35:4 35:17 35:16 35:20 35:23 36:2 36:4 36:8 36:15 37:12 37:15 37:23 38:11 38:14 38:17 38:22 38:24 39:3 39:9 39:11 39:14 39:19 39:25 42:8 42:11 42:24 43:8 43:15 43:25 43:20 44:10 44:22 45:2 45:3 45:7 45:10 46:24 47:11 48:7 48:12 48:16 49:6 49:9 49:12 49:18 50:1 50:10 51:12 51:15 51:24 51:25 52:1 52:5 52:8 52:15 52:18 52:19 52:20 53:17 53:21 54:9 54:10 54:21 55:2 55:5 55:10 55:14 55:16 56:5 56:7 56:15 56:21 57:6 57:17 57:22 57:25 58:19 58:21 59:5 59:13 59:18 59:22 60:7 60:22 60:25 61:6 61:14 62:2 62:13 62:17 62:20 62:21 62:23 63:1 63:7 63:13 63:16 63:17 63:21 63:22 64:1 64:5 64:15 64:18 64:21 64:23 64:23 65:1 65:2 65:3 65:6 65:14 65:17 65:21 65:22 65:24 66:2 66:6 66:12 66:14 66:18 66:24 67:4 67:8 67:10 67:12 67:16 67:17 67:21 68:1 68:7 68:8 68:11 69:1 69:8 69:14 69:18 69:22 69:25 70:5 70:12 70:14 70:15 70:18 70:19 71:14 71:17 71:20 71:21 71:22 72:3 72:6 72:7 72:9 72:14 72:16 73:4 73:8 73:11 73:14 73:16 73:19 74:1 74:10 74:20 74:23 75:3 75:9 | court(257) 75:14 75:21 75:23 75:25 76:3 76:16 76:20 76:22 77:6 77:8 77:12 77:14 77:19 78:3 78:13 78:19 78:21 78:23 78:25 79:3 79:8 79:10 79:18 79:21 80:2 80:14 80:18 80:20 80:23 81:1 81:3 81:14 81:20 82:1 82:7 82:10 82:15 82:19 82:25 83:1 83:21 83:21 83:25 84:5 84:8 84:12 84:18 84:24 85:8 85:16 85:21 86:6 86:8 86:14 88:3 88:20 89:7 90:9 90:19 90:22 90:24 91:3 91:5 91:14 92:18 93:13 94:4 94:16 94:25 95:5 95:9 95:15 95:19 95:24 96:1 96:4 96:8 96:11 96:24 97:14 98:5 98:19 98:24 99:13 100:10 100:16 100:22 101:3 101:13 101:24 102:13 102:18 102:2 103:12 103:21 104:8 104:23 105:16 107:25 108:2 109:6 109:9 109:14 109:16 110:8 110:14 110:22 111:1 111:7 111:9 111:16 111:18 111:20 111:22 111:24 112: 112:7 112:12 112:14 112:17 112:19 112:22 112:25 113:3 113:6 114:12 114:18 114:22 114:25 115:3 116:1 117:1 117:17 117:19 117:23 117:25 119:23 120:1 121:7 122:3 122:5 122:21 122:25 123:3 123:20 124:1 124:14 124:17 124:23 125:6 125:13 125:1 125:21 125:24 126:8 126:11 126:15 127:14 128:1 128:5 128:11 128:20 129:1 129:6 129:20 129:24 130:1 130:4 130:11 130:12 130:22 130:24 131:4 131:6 131:8 131:14 131:18 131:21 132:2 132:4 132:13 132:16 133:6 133:10 133:23 134:2 134:9 135:18 135:19 136:2 136:5 136:16 136:19 136:21 136:24 137:19 138:12 138:16 139:22 139:28 139:8 139:12 139:15 139:1 139:23 140:11 140:16 140:22 141:2 141:4 141:9 141:14 141:16 141:20 141:23 142:4 142:10 142:19 142:21 142:23 143:5 143:8 143:11 143:15 143:19 143:22 144:2 144:5 144:9 144:15 144:17 144:24 145:5 145:10 145:20 146:1 146:9 146:14 146:18 146:20 146:22 147:3 147:7 147:9 147:17 147:17 147:19 147:24 148:1 148:4 | cullen(9) 75:16 75:18 75:18 75:19 75:24 76:8 77:3 77:6 77:7 |

| Word | Page:Line |
| --- | --- |

deduction(1) 115:20
deductions(1) 115:17 124:11
deemed(2) 63:17 65:7
defendant(1) 25:1
defendant's(1) 48:11
defendants(3) 42:17 42:18 42:19
defending(1) 100:3
defer(3) 71:21 87:19 147:8
deferment(1) 102:12
deferral(6) 86:10 87:10 87:14 89:22 91:21
127:8
deferred(3) 88:2 122:12 123:6
define(2) 119:2 122:11
defined(1) 122:11
definitely(1) 13:19
definition(3) 121:2 123:22 124:6
degree(1) 97:8
delaware(5) 1:2 1:13 3:47 8:1 101:16
delay(6) 40:3 41:22 53:2 66:23 67:12
delayed(1) 49:4
deliver(2) 135:5 135:7
demonstrate(1) 17:2
demonstrated(1) 129:12
denial(4) 25:4 33:5 44:19 47:16
dentons(5) 5:31
deny(1) 38:9
denying(2) 24:22 50:14
department(2) 139:2 142:15
dependents(1) 90:6
depends(2) 91:7 91:8
deprive(2) 62:5 62:23
depriving(1) 38:13
derek(4) 1:23 3:28 8:5 39:21
describe(1) 134:14
describing(1) 114:1
description(2) 11:8 26:12
descriptive(1) 24:15
desirable(1) 131:25
desire(1) 130:19
despite(2) 64:8 104:3
detail(3) 85:19 91:25 99:17
detailed(1) 124:10
details(1) 115:17
determination(3) 12:19 22:19 34:24
determine(4) 12:20 15:14 21:23 27:23
determined(2) 50:18 115:22
determines(1) 31:16
determining(1) 136:13
devised(1) 87:12
devoted(1) 75:21
diaz(2) 1:42 148:15
did(22) 20:14 24:13 37:17 46:20 70:2 71:5
83:13 93:24 114:21 114:23 115:24 116:4
116:8 122:11 125:13 128:24 128:25 130:9
137:9 147:18 147:18 147:19
didn't(8) 36:16 47:23 56:13 60:2 67:22
72:14 126:12 140:6
didn't(6) 88:12 93:7 93:7 104:17 105:25
110:24
died(1) 90:3
difference(5) 61:25 109:7 116:15 120:16
120:18
differences(2) 100:12 140:20
different(13) 19:10 32:18 74:14 76:6
76:19 103:23 109:7 109:25 113:24 127:17
134:15 140:3 140:9
differently(1) 125:3
difficult(5) 34:4 43:6 53:25 64:9 108:21
diligence(1) 145:18
diligently(1) 82:14
dimsdale(1) 5:9
dine(1) 5:9
direct(6) 29:5 63:16 65:6 65:20 97:1 149:2

direction(1) 64:10
directly(4) 31:22 44:2 63:25 70:20
director(2) 97:7 113:15
disabilities(1) 144:11
disability(37) 73:21 86:10 87:20 89:1 89:4
89:9 89:20 90:10 90:13 90:18 91:17 91:20
91:19 98:12 107:17 107:21 115:14 117:10
118:3 118:12 119:1 119:2 119:5 119:9
120:20 123:10 123:13 123:14 123:18
124:13 125:16 126:16 126:23 129:15
129:17 129:19 138:5
disabled(18) 81:5 81:7 81:10 81:18 83:8
83:20 86:1 86:18 87:4 90:14 105:10
129:22 130:16 137:5 137:6 137:22 138:2
140:18
disadvantages(1) 139:21
disburse(2) 88:16 110:18
disbursement(1) 143:25
disbursing(2) 100:2 104:12
discovery(23) 12:11 13:11 13:16 13:16
14:3 32:8 32:19 32:21 33:22 41:18
42:15 45:14 45:15 51:3 51:10 51:16 51:19
52:19 57:18 58:2 60:23 80:6
discreet(3) 63:4 63:5 63:7
discuss(4) 61:7 85:1 137:2 138:3
discussed(8) 46:24 76:6 78:2 78:10 88:9
126:7 129:11 141:19
discussing(1) 45:18
discussion(2) 46:18 49:11
discussions(4) 45:1 46:4 88:24 138:9
dismantle(1) 88:16
dismiss(1) 11:25 29:8 143:24
dismissed(1) 29:6
dispensing(1) 38:19
disposition(2) 37:3 49:4
dispute(21) 21:2 22:5 27:13 27:13 42:3
44:1 45:17 45:21 46:9 46:13 46:14 46:25
47:6 48:15 50:5 50:10 50:25 58:16 58:22
59:7 59:23
disputes(2) 23:10 26:19
disrupt(3) 11:21 40:3 41:22
dissipation(2) 86:19 137:6
distance(1) 131:15
distinct(1) 127:18
distinguishes(1) 119:20
distribute(1) 94:11
distributed(1) 119:11
distribution(9) 84:17 93:23 94:3 98:2
117:8 130:10 132:7 137:21 138:6
district(37) 1:2 11:21 11:24 12:14 12:16 24:20
26:7 30:22 30:24 30:24 31:3 31:4 31:11
31:12 31:13 31:14 31:16 31:20 32:2 62:20
63:22 64:23 65:2 66:24 67:9 67:12 67:16
68:8 70:5 70:12 70:15 70:18 70:23 71:13
71:20 72:7 72:8 72:9
diversity(1) 51:20
divested(4) 13:9 26:7 33:3 33:6
divesting(1) 31:20
divide(2) 19:25 42:22
divided(1) 42:21
dividends(1) 122:15
dla(1) 3:36
docket(2) 112:2 128:8
document(4) 80:13 96:23 112:8 112:10
documents(9) 76:12 79:4 79:12 79:20
79:25 80:4 80:5 85:14 123:2
does(21) 22:5 24:21 27:7 27:17 28:2 43:5
63:18 68:20 71:17 73:6 75:15 77:1 77:15
90:5 107:12 109:10 110:4 130:1 130:18
133:11 134:20

doesn't(16) 20:23 22:11 24:17 28:4 31:2
35:9 37:6 38:3 43:2 59:6 59:7 62:3 62:5
127:16 134:7 139:21
doesn't(7) 76:9 99:9 99:15 103:14 104:16
119:1 119:2
doing(10) 21:23 37:22 46:24 48:18 68:14
74:4 89:3 92:14 93:2 97:12
dollar(3) 111:11 116:20 118:4
dollars(1) 111:14
don't(36) 8:22 18:16 24:4 25:21 27:3
28:14 29:7 29:11 33:8 39:15 40:8 41:17
42:11 42:13 49:21 49:23 51:2 51:18 53:22
57:13 59:2 59:11 59:24 60:19 61:10 73:4
127:16 128:13 130:25 131:15 134:9 139:1
140:19 141:10 145:12 146:15
done(18) 16:10 40:17 50:5 51:3 51:22
93:4 93:4 104:11 106:1 128:16 128:17
128:17 135:12 137:8 140:8 145:2 147:7
148:2
don't(21) 80:12 87:3 93:2 93:15 98:22
99:5 102:2 104:25 106:2 107:20 107:23
108:3 108:24 109:4 109:10 109:21 109:22
122:22 123:17 123:23 123:24
door(1) 134:8
double(1) 97:9
doubt(2) 22:10 33:1
dow(1) 6:6
down(12) 11:13 21:25 43:24 45:18 61:20
78:12 101:21 102:23 103:2 107:9 128:2
142:18
drafts(1) 46:12
driven(1) 131:17
drops(1) 105:2
due(4) 31:12 52:25 65:4 69:6
during(4) 10:12 29:18 45:4 80:6
duties(2) 104:3 136:17
duty(10) 15:9 16:14 16:16 16:19 16:20
17:11 41:1 86:13 101:7 135:24
e₀ (1) 105:17
each(20) 17:18 85:12 91:5 91:9 92:23
99:3 99:23 104:14 108:5 111:11 114:2
115:6 115:13 115:23 116:2 116:6 116:12
117:25 120:6 120:9
earlier(7) 63:15 64:16 75:1 87:19 106:5
121:18 138:16
early(6) 46:12 84:7 86:19 97:13 107:1
107:4
earn(1) 106:5
easier(1) 9:6
easiest(1) 23:4
easily(1) 68:15
easterbrook(9) 10:22 10:22 11:16 11:23
12:1 12:4 12:8 12:18 13:1
economic(2) 89:18 127:5
economical(1) 103:16
ecro(1) 1:40
educate(1) 137:10
educating(1) 137:3
education(1) 138:5
edwin(1) 3:21
effect(11) 27:12 28:4 31:20 42:20 45:2
57:15 57:20 58:14 76:17 91:6 136:15
effective(1) 100:4
effectively(3) 14:13 48:11 51:23
efficiencies(1) 140:9
efficient(1) 113:20
effort(4) 82:25 137:9 145:23 146:5
efforts(5) 82:15 83:1 129:1 144:20 146:4
ehleiter(4) 11:13 12:17 24:17 25:8

eight(4) 98:16 98:17 99:7 118:20
either(10) 11:1 12:14 41:20 58:4 69:19
86:13 86:22 89:21 127:21 136:1
elaborate(1) 118:8
elect(5) 74:3 75:11 76:11 76:14 124:11
elected(2) 74:21 81:17
elections(1) 104:14
electronic(1) 148:10
elects(1) 140:11
element(1) 47:23
elements(1) 43:22
eliminate(1) 91:20
eliminating(1) 127:7
elliott(2) 2:35 73:20
else(12) 33:7 35:24 38:24 43:1 92:13
92:17 108:25 109:10 130:1 133:10 133:11
142:6
else's(1) 75:22
email(1) 93:25
emea(20) 3:19 13:24 14:4 14:11 15:4 15:7
15:7 15:22 15:23 16:14 16:21 18:25 21:15
28:17 29:24 32:24 33:4 60:21 61:21 70:7
emily(3) 73:25 75:19 81:13
emotional(1) 86:15
empathy(1) 17:2
employee(2) 7:2 89:3
employees(3) 81:5 127:22 129:23
encompass(1) 46:15
encouraging(1) 56:11
end(10) 40:9 54:15 55:22 74:16 75:6
121:15 129:17 129:18 133:24 147:5
endeavor(1) 144:19
ended(5) 86:24 87:14 90:3 116:21 116:22
ends(3) 57:19 110:11 117:9
energy(1) 137:12
enforce(1) 54:14
enforceable(1) 58:6
enforced(1) 58:13
engaged(1) 49:1
english(1) 4:27
enhances(1) 81:25
enjoining(1) 54:10
enormous(1) 90:19
enough(7) 12:4 88:23 93:19 110:17 119:1
122:25 126:19
ensure(1) 50:18
enter(9) 9:24 41:4 63:2 63:2 67:2 83:22
112:2 128:8 128:9
entered(8) 18:23 19:5 21:23 25:7 50:22
77:23 78:8 113:24
entering(1) 46:5
enterprise(1) 19:6
entertained(1) 79:3
entire(9) 19:24 29:14 93:16 116:23 121:5
121:5 127:6 145:7 145:25
entirely(2) 15:21 31:24
entities(1) 20:4
entitle(1) 25:19
entitled(6) 25:20 27:2 33:13 33:13 33:17
33:18
entitlement(1) 24:14
entity(1) 127:24
entrepreneurial(1) 108:18
environment(1) 113:17
envisioning(1) 50:24
epic(1) 77:23
equally(1) 53:9
equated(1) 23:13
equitably(1) 53:24
eric(1) 2:37
ericsson(2) 4:42 4:46

| Word | Page:Line |
| --- | --- |

erisa(2) 86:13 105:18
ernst(3) 2:48 5:1 39:2
error(1) 78:7
especially(1) 146:1
esq(48) 1:23 1:24 1:30 1:31 1:32 1:33 1:34 1:35 2:5 2:12 2:13 2:14 2:15 2:16 2:22 2:23 2:29 2:36 2:37 2:38 2:39 3:1 3:7 3:14 3:21 3:28 3:29 3:30 3:37 3:46 4:5 4:10 4:14 4:15 4:19 4:24 4:28 4:32 4:37 4:43 5:3 5:8 5:9 5:14 5:21 5:23 5:28 5:32
essence(2) 87:7 91:23
essential(2) 81:19 133:17
essentially(2) 71:19 129:17
establish(2) 25:9 100:5
established(2) 98:7 101:7
establishing(1) 98:10
estate(3) 37:21 53:19 133:22
estates(3) 39:5 39:7 81:4
esther(1) 6:11
estimate(8) 91:12 103:25 104:18 110:3 116:7 117:16 117:20 119:15
estimated(3) 111:5 116:3 121:21
estimates(2) 104:21 117:18
estimating(1) 115:6
estopped(1) 52:25
etc(1) 86:20
european(1) 46:9
eve(1) 48:14
even(15) 17:20 19:2 20:23 22:11 27:9 33:2 33:15 41:15 46:2 54:23 57:3 63:3 86:15 89:12 119:12
event(1) 75:11
eventually(1) 51:9
ever(4) 20:11 46:2 46:23 47:5
every(14) 16:1 28:21 28:21 34:9 40:19 40:19 43:17 108:6 108:7 108:8 115:7 120:4 126:3 138:1
everybody(7) 43:1 56:2 75:21 92:17 98:8 107:6 109:25
everyone(22) 8:3 33:7 40:11 40:18 52:21 72:16 73:14 84:12 91:9 91:9 92:13 96:17 102:20 110:20 134:22 135:1 137:7 137:10 137:24 138:7 146:3 146:22
everyone's(2) 146:5 146:23
everything(13) 23:4 23:5 23:7 35:9 41:19 48:22 60:12 62:12 106:1 107:2 129:12 130:24 147:6
evidence(18) 22:18 25:10 27:4 29:3 29:8 29:15 29:16 47:3 59:12 79:4 79:5 79:25 80:21 112:8 128:8 128:12 136:9 136:12
evras(2) 48:9 48:21
ewing(1) 49:1
exact(1) 24:9
exactly(8) 13:5 30:17 57:11 69:17 76:22 122:22 123:1 123:13
examination(5) 97:1 109:11 109:18 122:6 122:9
example(8) 16:8 32:11 34:4 49:7 74:21 101:14 101:22 110:11
examples(2) 35:6 38:6
exceed(2) 118:16 120:14
excellent(2) 101:13 114:5
except(2) 124:21 125:16
exception(2) 76:12 87:17
exchanged(1) 45:14
excluding(1) 115:15
exclusions(1) 86:5
excuse(1) 122:1

excused(1) 109:5
executed(1) 15:24
exempt(3) 116:16 120:20 120:22
exemption(4) 86:17 115:19 121:2 123:12
exercised(2) 136:17 136:18
exercises(1) 145:23
exercising(1) 128:16
exhaustion(1) 17:6
exhibit(8) 78:9 78:10 78:16 94:19 113:24 114:24 138:9 143:15
exhibits(3) 112:11 114:10 149:7
exist(3) 31:2 53:4 68:21
existed(1) 25:2
existence(2) 44:4 124:21
existing(1) 44:7
exists(5) 19:14 19:15 25:11 26:14 37:8
expedite(2) 31:15 70:16
expedited(1) 35:3
expenses(10) 89:25 115:9 117:24 118:13 119:14 121:10 121:14 121:21 136:14 136:15
expensive(1) 114:17
experience(3) 101:19 103:23 113:16
expert(2) 46:10 97:3
experts(1) 135:24
explain(4) 77:1 93:1 94:22 97:21
explained(2) 98:1 98:12
explanation(1) 146:9
explored(1) 136:10
exploring(1) 134:15
express(1) 38:2
expressed(1) 47:2
extent(4) 28:3 76:10 136:16 140:11
extrinsic(1) 47:3
f.3d(1) 25:8
faa(1) 25:6
face(1) 22:33
facie(6) 25:1 25:5 25:9 25:23 26:13 43:22
facing(2) 26:17 85:25
fact(27) 12:20 13:9 14:25 21:19 28:17 33:8 35:9 37:5 40:4 40:12 40:16 54:16 56:25 59:20 62:11 64:8 68:7 81:13 82:12 82:15 83:18 85:4 92:14 104:3 105:13 117:11 133:17
factors(2) 82:10 136:13
facts(1) 49:3
factual(1) 14:20
failed(5) 25:1 40:16 40:20 47:22 106:11
fair(7) 28:24 50:8 50:18 81:9 81:20 108:10 144:7
fairly(5) 84:22 93:22 113:11 114:16 122:1
fairness(1) 81:24
faith(5) 34:20 46:19 46:20 46:22 144:22
fall(2) 89:17 107:12
falls(1) 89:11
false(1) 57:3
family(3) 115:16 130:16 131:11
fanciful(1) 37:25
far(8) 63:3 71:11 82:3 99:10 124:12 133:20 138:3 141:10
farallon(1) 5:47
farr(3) 3:13 4:36 5:13
fashion(1) 29:9
fast(2) 20:17 30:9
faster(2) 62:12 62:12
fastest(1) 35:17
father(4) 130:18 130:19 131:23 131:24
fault(1) 97:19
faults(1) 23:15
favor(1) 54:12
favorite(1) 56:5
feasible(2) 51:14 118:17
federal(15) 12:12 23:1 23:3 25:3 25:20 25:21 27:20 32:5 33:24 46:16 51:19 82:8 82:20 92:23 116:7

fee(3) 106:7 106:11 109:25
feedback(2) 92:9 92:10
feel(6) 26:9 33:9 47:8 91:10 134:22 145:1
fees(2) 104:10 104:24
feld(2) 2:11 5:27
felt(3) 92:14 93:18 144:2
few(9) 21:25 46:21 49:15 61:19 84:3 101:18 103:6 106:3 123:11
fewer(1) 118:14
fica(19) 88:5 89:5 89:6 91:20 91:20 114:3 119:18 119:20 119:23 120:2 120:4 120:6 120:8 120:18 120:21 120:22 121:1 121:6 125:4
fiduciaries(2) 37:21 104:3
fiduciary(14) 15:9 16:14 16:16 16:19 16:20 17:11 37:25 41:1 86:13 101:7 102:4 105:18 135:24 136:17
fifth(2) 21:11 118:13
fighting(2) 42:22 61:3
figure(3) 87:10 87:14 96:22
figured(2) 87:2 143:1
file(14) 8:18 8:23 31:12 41:16 65:1 65:11 65:19 66:10 68:15 68:25 70:4 70:12 104:17 123:2
filed(23) 8:18 16:2 21:6 29:24 30:6 30:13 30:21 41:13 41:15 41:16 62:20 64:22 64:25 68:15 69:4 69:5 70:25 79:15 80:17 104:11 128:7 138:11 143:10
filing(6) 11:21 17:3 21:12 104:10 115:16 115:21
final(6) 73:24 74:14 76:13 77:14 98:1 137:22
finality(5) 94:10 94:10 94:13 129:14 137:5
finally(1) 117:11
finance(1) 97:9
financial(5) 16:9 97:7 103:10 105:5 113:22
find(9) 24:17 29:17 44:15 56:13 57:13 76:5 87:16 88:14 137:11
finding(7) 24:14 44:15 47:13 113:19 137:7 137:13 137:18
findings(2) 133:25 134:17
finds(1) 136:16
fine(6) 17:6 40:17 40:20 96:5 96:5 98:24 98:24 114:7 133:10
finger(1) 2:4
finish(1) 21:16
finished(1) 147:3
firm(4) 42:19 83:4 103:13 103:16
firms(5) 46:11 101:18 101:18 103:6 103:22
first(32) 14:16 14:16 19:21 19:21 27:25 36:12 40:16 47:22 47:23 49:14 54:14 54:14 55:21 57:14 66:10 81:2 82:11 85:24 87:5 92:4 94:18 94:19 97:19 97:20 97:21 98:2 99:16 100:6 114:1 121:4 130:12 134:10
fit(2) 17:6 22:5
five(4) 18:13 55:22 74:13 103:22
five-year(1) 105:21
fixed(2) 88:7 88:11
flaum(1) 10:21
fleming(1) 1:32
flexibility(1) 88:12
flexible(1) 108:17
flow(1) 16:17
focus(1) 58:11
focuses(1) 58:11
focusing(2) 46:15 49:14
folks(16) 75:13 85:25 86:11 87:10 88:13 91:25 92:12 95:3 95:11 95:22 105:15 128:18 129:4 129:13 132:25 144:21

follow(1) 95:4
followed(2) 114:6 115:25
following(2) 103:20 107:14
footnote(2) 22:20 78:15
for(251) 1:2 1:22 2:4 2:21 2:28 2:35 2:48 3:12 3:19 3:35 3:45 4:4 4:8 4:22 4:31 4:35 4:42 5:1 5:6 5:12 5:20 5:26 5:35 5:39 5:43 5:47 6:2 6:6 6:10 6:14 6:18 6:22 6:26 6:30 6:36 6:40 6:44 7:1 7:6 8:6 8:12 9:6 13:2 13:11 14:8 16:16 17:3 20:12 20:18 23:13 23:23 28:22 29:25 30:13 30:18 30:19 30:21 30:23 30:23 30:25 31:9 31:21 32:10 33:7 33:23 34:12 34:23 34:23 36:7 37:4 37:20 37:21 37:24 37:25 38:12 39:2 39:7 39:21 41:1 41:5 41:23 45:12 46:3 46:15 47:8 48:2 48:12 51:17 51:18 53:25 55:10 55:17 57:18 60:14 61:3 61:22 61:19 63:18 65:8 65:10 65:12 65:16 66:10 66:14 66:15 66:20 66:24 67:10 67:13 67:16 67:16 68:15 68:18 68:20 70:16 71:14 71:24 71:25 72:6 72:9 72:10 72:16 73:2 73:11 73:21 74:3 74:15 74:21 75:4 75:18 75:19 75:21 76:1 76:8 76:25 78:10 78:17 78:19 81:7 81:11 81:22 84:21 84:21 85:2 86:7 86:11 88:7 88:13 88:18 88:25 89:16 89:22 89:24 90:1 90:2 90:13 90:18 92:22 93:10 93:11 93:15 93:21 94:11 95:22 96:21 97:6 98:10 100:3 101:2 101:9 101:10 101:14 101:22 102:6 102:20 103:11 104:2 104:18 105:9 105:18 105:21 106:5 106:6 106:15 106:16 107:8 108:6 108:22 109:3 109:4 110:10 110:11 110:12 110:15 112:20 114:14 114:24 115:7 115:19 115:25 116:23 117:20 117:23 118:9 118:12 118:13 118:15 118:18 118:20 119:2 119:15 119:24 120:6 120:20 121:20 121:25 124:21 125:5 125:16 125:18 126:2 127:6 128:3 128:19 129:13 129:22 130:5 132:3 132:8 134:10 134:14 135:8 135:16 135:25 136:22 137:1 137:11 137:23 137:25 138:7 140:9 142:17 143:25 144:7 145:19 145:21 145:25 146:12 146:25 147:20 148:2
forbid(2) 62:23 104:16
force(2) 27:12 58:14
forced(1) 58:16
forecast(1) 104:22
foregoing(1) 148:9
forfeited(3) 10:14 25:15 42:2
forfeiture(1) 48:9
forgive(1) 130:22
forgot(1) 61:25
form(7) 45:4 45:23 47:7 50:24 52:9 52:10 124:14
formalities(1) 29:3
formally(3) 77:4 80:1 112:3
format(1) 132:7
forms(2) 46:9 46:12
forth(1) 25:1
fortunately(1) 83:8
forum(3) 41:5 46:10 50:20 57:18
forward(28) 11:3 11:6 14:24 15:23 21:18 23:5 28:19 29:8 32:8 32:8 33:19 37:13 41:18 42:16 43:3 45:4 45:15 47:4 48:20 48:20 48:21 53:1 58:2 61:1 74:18 95:1 110:18 134:14
found(19) 20:21 22:10 22:20 22:23 22:24 25:24 25:25 26:22 27:4 27:21 42:2 44:6 45:25 48:1 48:8 48:15 51:7 100:19 108:16
founding(1) 14:9
four(20) 19:4 35:7 48:2 88:18 97:25 98:1 98:13 98:16 98:17 100:15 102:5 107:10 110:10 113:17 115:4 116:3 118:5 118:9 129:18 132:1
four-year(1) 91:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**frankel**(1) 4:31

**frankly**(8) 31:25 34:19 37:24 38:3 38:14
61:15 81:25 82:1

**fred**(1) 2:14
**free**(4) 23:1 70:7 70:7 137:11
**french**(1) 49:18
**frivolous**(36) 9:22 9:25 10:14 11:21 11:25
12:15 23:12 24:5 24:16 24:17 24:18 24:21
25:15 36:14 36:23 36:24 37:5 38:9 38:17
38:19 39:15 39:20 42:2 43:10 43:18 43:22
44:6 44:14 44:15 44:15 48:1 48:8 48:15
48:17 49:8 63:8

**frivolousness**(6) 12:19 43:6 46:19 47:9
47:13 61:16

**from**(59) 8:14 16:17 19:6 23:5 24:20 33:6
37:18 40:22 41:3 44:19 44:24 46:6 47:15
50:4 52:25 54:10 55:23 60:3 66:12 72:21
73:12 73:20 79:6 86:5 86:16 90:15 92:2
92:9 97:8 97:10 100:24 102:5 104:14
105:19 106:3 112:24 116:16 116:20 119:21
120:20 121:13 121:22 123:12 123:18
123:22 124:20 124:22 127:22 130:14 131:1
131:9 131:15 133:16 134:5 136:1 138:9
141:7 145:14 148:10

**front**(10) 34:9 38:10 39:24 49:21 59:21
70:12 70:22 71:25 135:16 145:8

**full**(10) 14:1 27:12 55:22 55:22 75:6 87:1
92:2 92:7 92:7 143:13

**function**(2) 119:22 123:14
**functioning**(1) 110:16
**fund**(1) 90:4
**fundamental**(2) 59:3 60:6
**funding**(1) 18:24
**funds**(6) 86:19 89:22 110:18 123:6 135:9
136:14

**funny**(2) 10:17 55:20
**further**(11) 13:12 55:24 78:16 107:15
110:22 111:22 116:16 121:24 127:15
129:22 142:18
**gabriel**(1) 66:1
**gabrielle**(1) 3:29
**gallagher**(3) 3:13 4:36 5:13
**galleon**(1) 12:3
**gambling**(1) 122:15
**gather**(1) 139:22
**gave**(3) 11:19 87:1 96:21
**gel**(1) 129:21
**general**(2) 46:21 100:11
**generated**(1) 20:8
**generous**(1) 45:24
**get**(56) 22:11 23:1 25:21 28:14 35:16 43:2
47:8 47:22 51:3 59:12 59:20 60:3 62:12
62:12 64:12 72:17 73:9 84:25 85:13 88:1
89:12 89:13 89:15 89:19 90:14 91:9
91:24 92:24 93:11 93:19 96:9 99:5 104:4
104:5 105:13 105:24 106:25 107:4 108:21
110:24 113:11 116:5 117:6 117:6 119:21 123:12
123:16 124:6 124:14 125:4 126:17 129:2
138:14 141:7 143:3 145:11 145:12

**gets**(3) 43:1 54:2 54:14
**getting**(8) 41:24 75:8 83:5 89:25 108:4
124:20 132:1 145:25

**gill**(1) 5:18
**ginger**(1) 1:40
**give**(17) 11:20 14:12 16:8 16:21 29:13
38:2 61:9 73:4 73:8 77:23 88:12 93:17
96:15 99:11 106:9 113:12 133:5

**given**(5) 37:11 37:13 37:13 38:20 144:8
**gives**(2) 57:22 82:19
**giving**(4) 93:16 101:12 127:4 133:21

**glemann**(12) 3:29 66:1 66:6 66:8 66:17
66:19 67:5 67:9 67:18 68:11 68:12 69:10

**god**(2) 62:23 104:16
**goes**(7) 11:24 12:13 13:2 24:22 37:17 54:1
78:15

**going**(94) 9:1 9:21 11:3 13:15 14:24 17:14
20:18 21:20 23:5 26:20 32:9 32:14 32:19
32:21 34:5 35:16 35:19 44:6 48:4 51:4
51:16 52:20 54:14 54:15 54:16 59:16
59:17 60:13 60:22 60:23 61:17 61:19
61:20 63:1 63:2 64:5 65:19 67:19 68:24
69:19 69:20 69:23 72:8 74:6 74:25 76:14
76:21 78:4 81:2 83:7 85:6 85:13 88:17
88:18 89:15 90:14 90:16 90:17 91:9 91:11
92:12 94:8 95:11 95:21 100:21 100:23
100:25 102:1 103:8 103:18 105:10 106:1
106:9 107:1 107:14 108:9 109:22 109:24
109:24 111:13 116:24 119:3 119:4 124:7
125:8 127:3 128:14 129:1 132:17 133:19
143:16 145:17 146:10 146:15

**gone**(5) 31:11 41:8 106:17 137:8 138:3
**good**(36) 4:3 6:3 10:3 36:6 38:25 39:4
61:4 64:7 64:8 66:7 66:8 72:17 72:22
73:14 73:15 73:18 73:19 76:3 76:4 85:21
96:15 105:16 109:9 109:20 113:1 113:2
113:8 113:9 122:19 141:4 143:20 144:20
148:1 148:2 148:2

**gosh**(1) 104:16
**goshtasbi**(1) 12:6
**got**(18) 9:7 24:6 36:11 36:15 36:17 60:4
67:19 69:7 72:17 75:5 92:10 93:12 106:8
109:12 109:25 114:20 143:8 143:15

**gotten**(2) 91:12 147:14
**gottlieb**(3) 1:29 4:4 4:10
**gould**(2) 4:42 4:43
**governed**(2) 22:15 26:18
**government**(1) 92:23
**grammar**(1) 21:17
**granite**(3) 22:1 22:6 27:9
**granted**(8) 25:20 63:16 64:17 64:21 64:24
68:18 69:11 69:15

**grants**(1) 67:10
**grateful**(2) 56:15 83:1
**grave**(1) 81:15
**great**(7) 13:6 19:25 80:22 82:14 82:19
145:2 146:25

**greater**(2) 44:12 98:17
**greenleaf**(2) 2:35 73:21
**gregor**(1) 5:37
**gross**(3) 1:19 16:19 96:21
**ground**(2) 37:9 41:25
**grounds**(7) 48:2 48:4 53:4 67:1 67:7
68:20 69:12

**group**(13) 2:21 93:21 107:22 107:24
108:21 108:21 116:12 129:8 137:3 137:4
137:22 140:18 145:4

**groups**(3) 99:3 107:22 108:20
**growing**(1) 108:1
**guarantee**(1) 102:3
**guess**(4) 63:24 77:9 84:16 110:25
**guidance**(1) 128:18
**guidelines**(1) 53:15
**guiding**(1) 135:13
**guiney**(1) 5:21
**gump**(3) 2:11 5:27 36:9
**guns**(1) 56:2
**guyder**(5) 3:7 39:1 39:2 39:4 39:13

**had**(70) 8:18 8:19 8:20 11:13 14:8 18:10
18:10 18:13 21:4 30:2 30:10 40:22 40:23
40:25 41:8 41:16 42:17 42:18 46:1 46:4
46:12 48:11 48:12 49:1 49:3 49:4 49:6
49:18 49:22 50:23 53:17 55:21 59:2 60:1
60:1 60:5 61:8 68:4 68:21 75:12 78:6
79:15 81:14 81:16 83:18 87:9 87:18 87:19
89:9 94:6 95:17 100:5 100:6 100:19
101:19 104:22 105:6 105:14 115:11 115:17
115:19 117:13 117:19 118:24 128:22
133:15 135:23 139:6 143:24 144:21 144:22

**hadley**(1) 2:21
**hadn't**(1) 55:23
**half**(1) 46:23
**hamilton**(1) 1:29 4:4
**hand**(7) 9:5 77:10 78:5 95:2 95:11 95:21
139:10

**handed**(3) 78:6 112:8 112:11
**handled**(1) 104:15
**handling**(1) 102:17
**hands**(1) 137:11
**handwriting**(3) 143:1 143:2 143:3
**hang**(1) 23:11
**hanging**(1) 141:5
**hanrahan**(1) 5:14
**happen**(8) 11:5 32:9 32:10 32:14 32:15
35:8 35:14 41:7

**happened**(5) 48:5 59:17 59:20 104:17
**happening**(3) 13:7 65:9 110:11
**happens**(1) 142:9
**happy**(11) 10:1 31:13 35:25 41:4 72:1
73:23 75:7 76:4 127:15 147:8 147:13

**hard**(4) 20:22 34:6 70:5 146:23
**harder**(2) 56:11 147:25
**haron**(1) 3:21
**harrisburg**(2) 1:44 128:22
**has**(68) 18:7 22:24 24:16 25:25 26:8
28:23 35:13 35:14 36:1 37:7 37:12 38:20
40:18 41:20 42:2 43:10 44:14 44:14 44:17
45:23 47:12 47:13 48:10 49:11 50:12
54:18 58:14 58:14 62:19 63:15 64:16
64:16 66:3 67:6 68:18 78:12 79:3 79:23
83:11 86:16 86:18 89:16 91:17 93:22
93:25 95:16 98:15 101:16 117:10 117:11
119:5 121:25 122:19 123:4 124:24 128:7
128:16 130:18 131:4 133:11 136:10
136:11 136:17 136:17 137:8 137:8 139:9 140:7
147:22

**hasn't**(2) 31:11 64:23
**hasn't**(1) 83:25
**hats**(1) 102:4
**hauer**(2) 2:11 5:27

**have**(273) 10:5 10:6 10:16 13:12 13:14
13:15 13:21 14:13 14:18 14:22 15:1 15:2
15:4 15:5 15:22 15:23 16:4 16:10 16:14
16:18 16:25 17:16 19:9 19:24 19:24 20:2
20:23 20:24 21:7 21:7 21:14 21:17 21:22
21:24 22:3 22:4 22:10 22:20 22:23 23:21
23:22 23:24 23:25 24:6 24:17 25:6 26:8
26:22 26:24 27:4 27:19 28:8 28:11 28:13
29:1 29:7 29:24 30:13 31:1 32:7 32:8
33:8 33:9 34:6 34:7 34:10 34:15 34:19
34:21 35:19 37:6 37:22 38:10 38:11 40:6
43:5 43:13 44:1 44:13 44:24 46:22 47:9
48:23 48:25 49:14 49:21 49:24 50:8 51:8
52:21 53:10 54:4 54:8 55:12 55:12 55:12
55:13 57:9 58:7 59:1 59:8 59:24 60:11
60:23 61:15 62:4 62:8 62:14 62:17 62:18
63:22 64:21 65:10 65:11 65:19 67:6 67:13
68:4 68:14 68:24 69:6 69:20 69:21 69:23
70:2 70:11 72:18 72:19 74:2 74:15 74:25
77:9 77:11 77:21 79:2 79:5 79:8 79:9
79:11 79:13 80:12 80:19 81:6 82:3 82:11
82:24 83:12 83:15 85:1 85:2 85:4 85:25
86:12 86:17 87:14 89:21 89:25 90:4 90:6
90:12 90:13 90:15 90:17 91:5 91:24 91:25
92:1 92:8 92:23 92:3 93:24 93:25 96:22
97:8 98:21 99:4 99:7 100:1 100:3 102:4
103:9 103:9 103:16 103:23 104:4 104:11
104:13 105:2 105:9 105:13 105:19 105:22
105:22 105:25 106:1 106:2 106:3 106:19
107:6 107:7 107:7 107:10 108:16 108:16
108:20 109:1 109:4 109:5 109:10 109:10
109:21 109:22 110:16 112:8 113:4 113:15
114:13 116:13 118:14 119:3 119:4 121:24
122:6 122:25 123:6 123:9 123:10 123:11
123:17 123:18 124:3 125:4 125:9 125:9
125:17 126:21 127:4 127:12 127:15 127:17
127:22 127:24 128:15 129:17 130:16
131:10 132:10 132:10 132:19 132:22
133:14 134:7 135:3 135:12 135:21 136:6
136:7 137:5 137:8 137:25 138:2 138:8
138:23 140:4 140:5 140:25 140:25 141:10
143:2 144:8 144:10 145:13 145:22

**haven't**(3) 44:23 67:13 140:8
**having**(3) 51:15 66:4 88:24
**he's**(1) 128:21
**head**(1) 6:27
**head-start**(1) 105:7
**headquarters**(1) 60:2
**health**(3) 87:22 87:23 105:15
**hear**(8) 29:8 60:9 67:14 72:21 131:4
131:5 134:9 145:13

**heard**(9) 40:1 70:22 75:16 79:2 79:2
81:11 130:1 133:11 139:24

**hearing**(23) 18:11 18:11 18:14 18:17
18:18 18:19 18:20 18:22 19:20 19:21
19:22 21:11 34:13 50:3 50:4 51:13 53:7
59:1 70:3 112:7 128:11 128:22 148:6

**hearings**(9) 18:17 19:19 34:15 34:17 40:10
53:11 53:14 53:17 54:9

**held**(1) 37:14
**hello**(2) 131:3 131:4
**help**(10) 80:23 85:18 86:23 93:10 98:22
132:18 144:7 144:12 145:25 146:16

**helped**(1) 129:2
**helpful**(3) 36:4 64:7 95:6
**helping**(1) 64:2
**helps**(1) 129:21
**henderson**(36) 85:10 94:24 99:11 99:16
107:15 109:5 112:24 112:25 113:1 113:2
113:5 113:6 113:8 113:12 113:14 113:21
113:25 115:4 116:2 117:2 117:18 118:8
119:8 119:17 120:2 122:1 122:4 122:5
122:7 123:24 125:12 128:2 128:4 128:6
136:8 149:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **henderson's**(1) 128:12 | | **hopefully**(6) 72:20 102:1 106:2 107:4 113:11 125:10 | | **income**(25) 86:5 87:11 98:9 106:4 107:9 114:3 115:12 115:12 115:14 115:15 115:17 116:6 116:14 116:18 117:7 119:9 120:9 120:9 120:11 122:11 123:12 123:15 124:8 124:25 141:25 | | **into**(43) 19:5 25:7 25:21 28:4 28:14 41:4 46:5 54:2 57:3 59:12 59:20 64:12 67:14 74:3 75:19 76:11 76:14 79:5 79:25 80:21 87:8 88:1 89:11 89:15 89:20 99:5 108:4 109:1 112:3 112:7 113:10 113:18 117:5 120:17 123:2 123:6 124:6 128:8 128:12 136:12 140:20 142:7 142:8 |
| **her**(9) 66:4 94:1 102:6 102:6 130:17 130:19 130:20 131:22 131:24 | | **hopes**(1) 21:2 | | | | | |
| | | **host**(2) 49:5 49:22 | | **inconceivable**(2) 34:13 34:17 | | **introduce**(2) 65:25 99:14 | |
| **herbert**(1) 4:13 | | **hour**(2) 18:10 18:14 | | **incorporate**(1) 77:15 | | **introduced**(1) 79:5 | |
| **herculean**(1) 82:25 | | **hours**(1) 93:2 | | **incorporated**(1) 77:17 | | **introducing**(1) 19:3 | |
| **here**(63) 8:6 8:8 8:12 9:7 9:20 13:12 13:17 14:22 18:14 19:2 19:18 19:24 20:9 21:5 21:7 22:25 24:22 25:23 27:8 27:18 28:10 28:15 29:10 32:7 32:22 34:2 37:11 41:9 43:6 43:21 45:21 45:24 46:3 49:16 50:15 51:21 53:11 53:21 54:15 57:12 59:10 59:24 60:9 60:20 61:1 61:9 65:9 67:18 68:24 70:13 80:24 82:21 85:5 85:20 88:11 90:20 99:25 102:20 108:4 116:15 129:2 132:11 136:3 | | **how**(20) 10:17 14:23 17:4 31:17 34:4 37:13 38:20 42:11 42:22 44:18 45:18 52:4 94:11 110:19 112:8 118:6 119:14 122:11 124:12 125:2 | | **increased**(1) 116:21 | | **invest**(2) 102:11 106:10 | |
| | | **however**(5) 74:13 86:12 89:1 89:19 123:1 | | **incur**(3) 107:1 118:21 136:14 | | **investigate**(1) 105:8 | |
| | | **hra**(34) 87:8 89:20 89:23 89:24 90:5 90:7 91:17 91:22 92:3 92:7 93:9 98:2 98:7 98:8 98:10 100:6 100:7 107:6 107:7 109:22 110:11 116:13 116:16 119:13 119:24 120:16 120:17 121:15 121:16 127:1 139:10 141:25 142:13 142:14 | | **indeed**(3) 10:8 107:12 135:20 | | **investment**(5) 101:16 101:17 103:15 105:24 106:4 | |
| | | | | **independent**(6) 16:5 48:2 50:1 50:8 104:2 105:14 | | | |
| **here's**(2) 30:21 57:9 | | | | | | **investments**(1) 101:17 | |
| **here's**(1) 92:21 | | | | **independently**(3) 14:19 26:22 92:25 | | **involved**(3) 33:7 33:9 129:22 | |
| **hesitate**(1) 64:12 | | | | **index**(1) 149:1 | | **irrelevant**(1) 22:22 | |
| **hesitation**(2) 23:14 | | **hubbard**(1) 3:27 | | **indicate**(3) 50:13 82:4 142:2 | | **irrevocable**(1) 89:17 | |
| **hey**(2) 11:2 92:15 | | **huberty**(1) 3:30 | | **indicated**(10) 23:18 35:12 68:14 83:16 87:16 88:25 91:18 92:6 95:16 123:4 | | **irs**(15) 87:24 88:25 89:9 91:17 118:19 118:24 118:25 121:2 125:1 134:5 135:10 135:16 139:6 142:19 142:24 | |
| **he'd**(1) 110:4 | | **huge**(1) 67:12 | | | | | |
| **he's**(3) 85:6 99:1 108:9 | | **hughes**(1) 3:27 | | **indicates**(1) 78:16 | | | |
| **hierarchy**(1) 71:20 | | **human**(1) 146:25 | | **indicating**(1) 123:8 | | **isn't**(2) 51:18 69:10 | |
| **hieroglyphic**(1) 143:1 | | **hundreds**(1) 145:15 | | **indiscernible**(10) 42:14 51:20 107:9 130:15 130:17 130:20 131:10 131:11 131:13 139:3 | | **isn't**(2) 109:6 121:4 | |
| **high**(2) 18:8 99:6 | | **hypothetical**(1) 115:5 | | | | **isolating**(1) 30:17 | |
| **higher**(2) 54:19 86:22 | | **hypothetically**(1) 118:20 | | | | **issue**(38) 9:19 15:20 15:24 17:10 22:5 23:23 23:25 24:8 28:17 29:22 39:20 52:6 52:12 53:5 61:16 63:4 63:5 63:7 66:16 68:16 69:3 70:9 70:23 72:8 75:21 79:14 85:19 85:24 86:12 88:25 89:6 92:9 101:1 126:5 127:14 134:6 137:6 143:13 | |
| **highest**(2) 116:19 117:5 | | **i'd**(4) 39:23 130:13 132:2 144:2 | | **individual**(8) 94:12 104:25 115:6 116:4 117:13 123:11 123:15 124:10 | | | |
| **highlights**(1) 109:2 | | **i'll**(6) 73:9 132:10 134:3 134:9 134:9 142:17 | | | | | |
| **highly**(1) 115:1 | | | | **individual-by-individua**(1) 116:10 | | | |
| **him**(12) 12:24 41:2 41:3 94:23 97:3 122:1 128:23 128:24 128:25 128:25 129:1 134:10 | | **i'm**(44) 9:1 9:21 9:25 19:6 20:12 23:16 23:17 23:17 24:2 24:3 28:10 33:19 34:14 35:25 44:11 57:3 60:10 61:17 61:20 63:1 63:5 64:5 64:11 64:23 65:18 65:19 70:24 72:1 72:8 128:14 130:4 130:13 131:14 133:7 135:15 135:20 136:5 136:9 139:23 140:13 141:9 143:16 147:8 | | **individualized**(2) 87:1 92:1 | | **issued**(1) 10:20 | |
| | | | | **individually**(1) 94:7 | | | |
| **hire**(1) 105:2 | | | | **individuals**(1) 133:21 | | **issues**(30) 11:5 12:23 13:10 13:10 14:14 14:19 14:20 19:2 21:25 27:6 28:16 33:23 41:7 49:5 62:2 78:2 84:17 86:22 101:5 113:19 123:15 128:19 133:1 134:5 134:7 135:10 135:14 145:9 145:12 145:14 | |
| **his**(7) 41:2 41:3 57:22 82:23 82:24 129:1 129:2 | | | | **individual's**(2) 120:4 120:6 | | | |
| | | | | **indulgence**(1) 136:23 | | | |
| **history**(1) 21:7 | | | | **inform**(1) 137:10 | | | |
| **hit**(3) 89:19 92:2 121:4 | | **i've**(11) 9:7 9:19 24:6 35:8 35:21 36:11 40:1 51:1 60:4 69:6 72:17 | | **informal**(1) 88:24 | | **it'll**(2) 32:14 124:19 | |
| **hittlemam**(1) 4:47 | | | | **information**(8) 49:17 106:18 114:20 115:11 126:17 126:19 138:1 138:4 | | **it's**(88) 8:7 9:18 10:14 10:17 10:19 16:2 18:1 18:1 18:15 19:9 19:21 19:25 21:8 21:10 22:21 23:13 24:11 24:17 24:19 27:3 27:6 29:23 30:16 32:2 32:9 32:14 34:3 34:13 34:17 37:17 39:18 39:21 40:3 41:23 41:25 43:6 43:11 43:14 44:3 45:3 45:9 45:22 45:24 46:6 46:22 49:24 50:10 50:11 51:4 51:21 51:24 52:2 52:9 52:16 52:22 54:5 55:20 57:1 58:3 59:19 60:25 64:9 64:22 64:25 65:11 65:12 65:13 65:15 72:6 125:22 125:22 126:14 130:25 131:15 133:16 133:16 133:25 134:18 137:2 137:14 138:3 138:6 141:4 142:22 143:2 144:13 144:23 147:7 | |
| **hoc**(1) 66:3 | | | | | | | |
| **hodara**(1) 2:14 | | **idea**(3) 17:7 58:12 96:15 | | **informing**(1) 137:3 | | | |
| **hogan**(1) 5:17 | | **identified**(2) 103:5 104:11 | | **ingersoll**(1) 2:49 | | | |
| **hold**(8) 23:7 29:14 32:3 37:4 37:7 38:21 41:17 88:17 | | **ifsa**(13) 19:20 19:22 21:21 21:21 23:18 28:2 37:20 37:24 46:5 47:1 50:2 50:17 57:10 | | **inherent**(1) 21:22 | | | |
| | | | | **initial**(1) 24:7 | | | |
| **holmstead**(1) 5:44 | | **ignored**(1) 29:3 | | **initially**(1) 86:24 | | | |
| **home**(2) 92:21 137:17 | | **illinois**(1) 12:7 | | **injured**(1) 86:4 | | | |
| **honestly**(1) 144:13 | | **illustrious**(1) 10:20 | | **injury**(2) 86:1 86:1 | | | |
| **honor**(147) 8:5 8:12 8:13 8:16 8:19 8:25 9:3 9:6 9:9 9:10 9:14 9:24 10:4 10:20 15:17 20:13 20:21 21:8 22:9 28:15 31:25 34:5 35:18 36:6 36:11 36:22 36:25 37:4 37:16 37:19 37:20 38:4 38:12 39:1 39:7 39:13 39:16 41:21 43:10 43:24 44:2 44:16 47:4 49:13 50:12 50:21 50:23 54:20 55:9 55:15 55:17 57:9 58:24 60:3 61:2 61:13 62:19 65:25 66:8 66:11 66:17 66:25 68:13 68:23 71:2 71:25 72:17 72:23 72:24 72:25 73:7 73:10 73:13 73:18 73:22 75:18 77:3 77:9 78:4 79:6 79:14 80:10 80:25 82:6 83:24 84:4 84:10 84:13 84:14 84:15 84:25 95:2 95:4 95:10 95:25 96:6 98:21 100:19 102:8 105:9 106:14 108:24 110:6 110:25 111:25 114:9 116:25 118:24 119:20 121:23 122:4 122:8 122:14 122:17 125:17 128:4 128:6 128:13 130:2 130:8 130:14 130:16 131:8 131:10 132:3 132:12 132:14 133:13 135:2 135:8 136:20 138:8 138:23 140:17 141:8 141:13 143:17 143:18 144:13 144:1 144:23 146:16 147:2 147:4 147:8 148:3 148:5 | | **immaterial**(2) 76:25 81:23 | | **inserted**(1) 143:4 | | **item**(4) 84:16 107:17 115:12 115:15 | |
| | | **immediately**(3) 58:5 58:6 107:11 | | **inside**(2) 119:9 120:19 | | **itemizations**(1) 115:17 | |
| | | **impact**(12) 12:24 13:14 44:12 58:3 86:21 87:1 87:3 92:2 114:2 132:7 132:9 137:24 | | **insignificant**(1) 23:23 | | **items**(2) 91:1 126:18 | |
| | | | | **instance**(1) 147:10 | | **its**(7) 22:23 27:4 37:13 37:19 136:17 136:18 137:25 | |
| | | | | **instances**(1) 123:11 | | | |
| | | **impacts**(2) 92:3 92:17 | | **instead**(3) 40:21 46:7 46:8 | | | |
| | | **implicates**(1) 17:12 | | **instructive**(2) 24:19 85:18 | | **itself**(2) 28:2 121:21 | |
| | | **implications**(4) 84:22 94:24 130:13 136:3 | | **insurance**(4) 87:13 88:9 105:17 107:21 | | | |
| | | **implicitly**(2) 38:1 50:12 | | **insurance-base**(1) 103:7 | | | |
| | | **implies**(1) 46:19 | | **insurances**(1) 105:18 | | **it's**(39) 74:13 76:1 76:16 77:23 80:23 82:9 84:1 84:1 84:3 84:5 85:11 89:10 89:12 89:15 89:17 90:1 90:13 91:1 91:11 93:2 96:12 101:1 103:16 103:19 104:14 106:18 108:4 108:5 110:5 111:5 111:10 111:10 111:11 111:17 120:15 120:20 122:2 123:9 123:23 | |
| | | **important**(17) 18:15 18:17 20:2 24:11 28:16 29:23 30:11 38:20 53:8 53:9 76:24 83:15 133:17 134:6 137:4 145:13 146:24 | | **insure**(1) 108:21 | | | |
| | | | | **intent**(2) 49:25 118:2 | | | |
| **honor's**(4) 25:24 29:5 35:2 38:8 | | | | **intention**(1) 41:12 | | | |
| **honorable**(1) 1:19 | | **impose**(2) 61:10 61:11 | | **intentionally**(1) 15:20 | | | |
| **hooking**(1) 29:12 | | **imposing**(1) 23:13 | | **interest**(4) 14:12 81:4 83:18 101:22 | | **i'd**(7) 84:20 94:18 99:21 106:22 109:4 113:25 114:5 | |
| **hope**(1) 56:10 | | **impressive**(1) 83:11 | | **interested**(8) 5:39 5:43 5:47 6:2 6:6 6:10 6:14 53:19 | | | |
| **hoped**(1) 8:18 | | **in-person**(1) 105:11 | | | | **i'll**(6) 76:25 92:24 93:1 95:4 96:9 103:2 | |
| | | **inability**(1) 144:11 | | | | **i'm**(16) 76:2 76:4 78:4 82:18 95:11 95:21 96:5 96:19 97:3 97:7 97:19 101:3 110:24 113:14 113:16 116:24 | |
| | | **inc**(5) 1:7 4:42 4:46 5:39 7:6 | | **interesting**(2) 9:19 30:16 | | | |
| | | **incidentally**(1) 52:12 | | **interests**(2) 3:13 81:5 | | | |
| | | **inclined**(1) 137:2 | | **interim**(2) 18:24 67:9 | | | |
| | | **included**(1) 138:21 | | **interlocutory**(6) 12:9 12:10 31:25 66:20 68:5 71:4 | | | |
| | | **includes**(1) 138:9 | | | | | |
| | | **including**(5) 86:18 119:12 123:7 129:22 137:10 | | **internal**(1) 120:21 | | | |
| | | | | **international**(3) 5:17 22:2 50:25 | | | |
| | | | | **interpretation**(4) 43:25 44:7 45:19 127:18 | | | |
| | | | | **interrupt**(1) 126:13 | | | |
| | | | | **intertwined**(1) 129:24 | | | |
| | | | | **intervention**(1) 50:6 | | | |
| | | | | **interviewed**(2) 101:18 101:19 | | **i've**(6) 75:5 84:15 94:23 97:11 113:16 | |

| Word | Page:Line |
|------|-----------|
| **jack**(1) 4:37  5:36 | |
| **jacqueline**(1) 1:35 | |
| **jail**(1) 23:1 | |
| **james**(1) 1:34  3:45  95:8 | |
| **janette**(1) 6:27 | |
| **january**(2) 38:12  125:11 | |
| **jim**(1) 55:17 | |
| **job**(1) 145:2 | |
| **john**(3) 4:15  6:45  132:14 | |
| **johnson**(2) 5:28  102:6 | |
| **join**(1) 74:21 | |
| **joinders**(1) 17:4 | |
| **joint**(32) 3:20  4:8  18:11  18:19  20:10  22:21  25:19  26:19  29:24  30:12  31:14  33:4  34:6  34:13  34:15  34:16  36:25  38:9  39:21  40:2  40:11  41:11  42:4  51:6  53:7  53:11  53:13  53:16  53:17  57:11  57:16  115:21 | |
| **jointly**(1) 1:5 | |
| **jokes**(1) 55:11 | |
| **jones**(2) 6:6  7:3 | |
| **joseph**(1) 5:3 | |
| **judge**(26) 1:19  1:20  10:21  10:22  11:16  11:23  12:1  12:4  12:8  12:18  12:23  13:1  16:19  30:14  30:20  69:16  71:15  79:16  76:4  77:2  96:15  132:23  139:18  140:15  141:3 | |
| **judges**(1) 10:21 | |
| **judgment**(3) 54:13  110:19  136:18 | |
| **jump**(1) 123:17 | |
| **jumping**(1) 123:17 | |
| **june**(8) 18:8  18:11  18:19  19:19  50:3  75:1  78:12  114:14 | |
| **jurisdiction**(21) 10:10  13:9  14:1  16:5  21:22  25:4  26:7  29:18  31:21  33:3  33:6  34:11  34:24  51:19  51:21  51:22  52:9  52:1  57:17  58:4  62:24 | |
| **jurisdictional**(2) 50:20  51:15 | |
| **jurisdictions**(5) 15:14  17:18  19:10  28:22  53:22 | |
| **just**(67) 8:16  8:19  9:20  17:4  17:6  18:16  20:12  24:5  34:23  38:2  39:6  39:9  40:3  41:23  44:3  44:7  52:10  54:6  56:22  59:9  61:4  61:5  72:25  76:7  76:23  77:4  78:2  78:6  78:10  79:25  81:10  82:3  84:21  85:4  87:11  90:11  91:7  91:11  92:15  93:16  94:11  95:6  99:2  100:1  101:10  106:6  107:5  107:16  108:6  109:6  111:25  113:3  120:3  124:5  126:13  126:17  132:23  133:3  139:16  140:23  143:23  144:3  144:3  146:6  146:24  147:25 | |
| **justice**(15) 15:15  16:17  17:1  19:16  20:13  20:15  21:19  22:10  22:24  25:25  26:21  26:21  28:9  54:12  57:17 | |
| **justified**(1) 101:10 | |
| **kamunting**(1) 5:36 | |
| **karen**(1) 5:9 | |
| **kathleen**(1) 3:1 | |
| **katten**(1) 5:7 | |
| **kear**(2) 24:19  47:16 | |
| **keep**(4) 49:14  91:22  100:23  128:23 | |
| **keeping**(1) 117:7 | |
| **keeps**(1) 99:9 | |
| **kenney**(1) 2:29 | |
| **kept**(1) 95:17 | |
| **kerry**(1) 6:37 | |
| **kevin**(1) 1:19 | |
| **key**(1) 45:21 | |
| **kind**(23) 24:5  41:1  45:9  45:23  52:22  53:17  57:15  57:20  83:9  84:21  85:18  86:18  99:8  99:9  99:10  99:15  101:20  103:17  103:24  104:15  108:8  108:10  144:17 | |
| **king**(3) 2:7  2:30  3:23 | |
| **kinsella**(1) 2:39 | |
| **knitted**(1) 16:25 | |
| **knock**(1) 99:10 | |
| **know**(80) 9:18  10:5  20:12  34:2  34:14  35:5  35:16  39:23  40:8  42:11  45:11  45:11  46:19  49:7  50:21  53:1  53:10  53:15  54:8  54:16  54:25  55:19  57:2  57:11  57:14  58:1  59:10  60:8  60:20  61:2  62:12  62:13  62:22  68:13  74:6  83:17  86:15  86:19  92:6  92:11  93:2  93:8  93:8  93:10  96:14  100:3  100:3  100:17  100:20  100:23  100:25  101:1  101:2  102:9  103:14  103:25  104:13  104:16  104:19  104:25  106:12  107:20  108:3  108:1  108:13  115:24  119:12  122:22  124:6  129:16  130:25  131:15  131:18  138:14  144:2  145:14  145:22  146:15  146:24  147:5 | |
| **known**(1) 137:6 | |
| **knows**(1) 44:2 | |
| **kohart**(1) 2:38 | |
| **koontz**(2) 48:25  49:1 | |
| **kramer**(1) 4:31 | |
| **kumar**(1) 6:31 | |
| **kurichety**(1) 2:13 | |
| **labor**(3) 83:18  139:2  142:16 | |
| **lack**(1) 115:22 | |
| **lacks**(2) 24:23  26:6 | |
| **laden**(1) 101:7 | |
| **land**(1) 135:1 | |
| **language**(6) 38:2  77:16  138:25  142:13  142:15  142:20 | |
| **large**(1) 108:1 | |
| **largely**(1) 100:12 | |
| **larger**(1) 121:5 | |
| **last**(12) 8:17  14:23  20:21  38:4  41:13  49:11  51:13  51:13  73:22  130:6  136:22  145:2 | |
| **last-minute**(1) 145:22 | |
| **lastly**(1) 117:12 | |
| **late**(2) 18:19  106:25 | |
| **later**(8) 8:17  20:19  23:24  57:12  59:10  96:22  115:22  137:16 | |
| **laugh**(1) 38:3 | |
| **laughter**(28) 8:9  9:16  9:23  10:2  10:7  36:19  39:17  43:19  48:6  52:14  54:24  55:4  55:8  56:16  56:19  56:24  57:5  62:25  64:4  67:20  67:24  68:2  72:15  84:9  122:24  146:3  147:16  147:21 | |
| **law**(18) 3:45  5:20  10:9  10:18  19:8  22:13  22:15  22:18  22:21  26:6  26:12  26:18  26:23  33:11  33:12  42:19  49:23  58:21 | |
| **lawsuit**(1) 86:4 | |
| **lawyer**(1) 135:21 | |
| **lawyer's**(1) 45:23 | |
| **lawyers**(2) 122:20  144:4 | |
| **lax**(1) 4:9 | |
| **lays**(1) 113:24 | |
| **layton**(1) 2:4 | |
| **leading**(3) 40:5  40:11  122:18 | |
| **leads**(1) 86:15 | |
| **learning**(1) 130:13 | |
| **least**(13) 35:10  64:9  67:22  70:1  86:24  87:18  91:17  93:11  104:4  118:24  119:23  129:14  147:14 | |
| **leave**(35) 8:18  17:1  17:3  29:25  30:13  30:18  30:19  30:21  30:23  30:25  31:21  34:12  53:7  62:19  63:15  63:18  64:13  65:8  65:10  65:12  65:16  66:24  67:10  67:16  68:15  68:18  69:11  69:14  70:16  71:14  71:24  72:7  72:9  72:10  129:19 | |
| **leaves**(2) 67:11  94:5 | |
| **leaving**(1) 14:24 | |
| **led**(2) 18:22  56:9 | |
| **left**(4) 15:8  93:23  113:17  118:2 | |
| **legacy**(1) 127:23 | |
| **legal**(10) 21:25  25:12  37:17  54:6  83:1  100:2  106:5  123:23  127:16  130:13 | |
| **legalistic**(1) 125:13 | |
| **leis**(2) 24:19  47:16 | |
| **less**(11) 14:9  18:9  44:14  91:16  96:21  98:15  99:3  105:12  105:21  111:11  111:19 | |
| **lessee**(1) 107:4 | |
| **let**(14) 9:17  16:8  20:12  23:15  36:22  57:8  61:6  73:8  81:10  82:4  85:24  131:17  135:1  139:12 | |
| **let's**(3) 40:17  69:7  131:6 | |
| **letter**(17) 87:16  87:18  88:15  103:4  106:11  106:22  106:24  106:25  107:15  119:23  125:2  125:5  125:10  135:17  141:21  142:8  143:24 | |
| **letters**(2) 24:1  41:3 | |
| **let's**(1) 106:25 | |
| **level**(1) 32:7 | |
| **levin**(1) 4:31 | |
| **liabilities**(3) 116:6  127:22  134:17 | |
| **liability**(16) 15:13  15:13  15:14  15:15  15:17  91:20  104:16  116:4  116:10  116:14  117:9  120:7  120:12  120:25  134:7  142:17 | |
| **liberty**(1) 1:36 | |
| **life**(2) 86:18  94:15 | |
| **like**(45) 8:7  9:24  23:15  39:23  40:17  46:11  55:1  69:2  72:4  74:25  75:20  77:10  82:22  84:10  84:20  84:20  90:12  94:18  96:7  99:2  101:22  102:23  106:22  108:15  109:4  111:5  112:1  113:25  114:5  117:15  119:1  119:2  122:15  122:15  127:14  127:20  128:8  128:9  130:13  131:23  133:14  137:1  137:7  139:25  145:2 | |
| **likely**(1) 91:10 | |
| **likes**(1) 147:5 | |
| **limit**(1) 53:13 | |
| **limitation**(1) 142:16 | |
| **limited**(3) 4:36  5:13  76:12 | |
| **limiting**(1) 120:6 | |
| **line**(7) 45:9  78:6  91:1  99:9  105:25  107:3  138:24 | |
| **lines**(3) 95:11  95:12  95:12 | |
| **link**(1) 59:3 | |
| **linn**(1) 5:48 | |
| **lion**(1) 5:43 | |
| **lisa**(3) 1:30  2:12  144:25 | |
| **list**(2) 102:24  103:2 | |
| **lists**(1) 92:23 | |
| **lisus**(1) 4:9 | |
| **literally**(1) 40:8 | |
| **literature**(1) 53:14 | |
| **litigant**(1) 11:20 | |
| **litigate**(1) 60:23 | |
| **litigated**(5) 21:24  34:8  41:20  42:21  48:12  57:12 | |
| **litigating**(1) 57:12 | |
| **litigation**(5) 33:23  48:17  69:23  70:1  70:1  74:14  74:17  90:2  90:4  92:14  93:12  97:4  99:12  99:17  100:2  100:14  102:2  104:24  111:11  113:12 | |
| **lives**(1) 145:15 | |
| **living**(2) 69:25  130:14 | |
| **llc**(2) 126:1  148:15 | |
| **llp**(14) 1:22  3:13  3:27  3:36  3:45  4:18  4:2  4:31  4:36  4:42  5:2  5:7  5:13  5:31 | |
| **local**(2) 27:20  58:18 | |
| **lockbox**(1) 2:31 | |
| **logan**(1) 6:37 | |
| **long**(7) 8:7  8:11  23:2  36:21  49:2  89:8  147:17 | |
| **long-term**(2) 73:21  138:5 | |
| **longer**(2) 110:7  124:21 | |
| **look**(22) 10:9  12:23  20:24  21:7  23:14  24:19  26:3  27:3  27:5  30:20  46:4  47:9  61:6  61:14  66:21  91:18  108:3  116:8  119:1  119:3  123:8  139:12 | |
| **looked**(4) 84:22  92:3  92:5  117:24 | |
| **looking**(11) 10:25  11:7  11:16  13:7  19:18  21:5  44:25  85:2  86:24  88:7  109:6 | |
| **looks**(3) 36:25  45:2  89:10 | |
| **lose**(1) 57:1 | |
| **lost**(3) 130:17  131:22  138:15 | |
| **lot**(10) 34:15  34:16  91:24  92:11  97:13  103:7  109:6  111:14  123:7  134:12 | |
| **lots**(1) 59:11 | |
| **love**(2) 126:2  126:3 | |
| **lovells**(1) 5:17 | |
| **lovely**(2) 84:1  147:19 | |
| **lovingly**(1) 83:19 | |
| **low**(2) 93:5  101:22 | |
| **lowenthal**(1) 5:23 | |
| **lower**(12) 10:10  43:15  45:3  48:2  48:12  116:17  116:19  116:20  116:23  117:7  119:11  119:12 | |
| **lowest**(2) 99:4  116:21 | |
| **ltd**(21) 2:35  16:9  16:11  76:6  76:9  89:3  97:8  98:11  100:8  107:2  107:17  109:21  121:20  127:3  133:18  133:21  139:9  140:7  140:11  141:25  142:5 | |
| **ltd'ers**(1) 124:11 | |
| **ltd'ers**(2) 90:2  123:11 | |
| **lucky**(3) 88:23  108:16  108:22 | |
| **lulled**(1) 57:3 | |
| **lump**(25) 87:11  92:2  92:16  93:16  98:2  98:7  98:8  98:16  99:25  100:7  116:9  116:11  117:4  119:13  120:12  120:15  120:16  120:16  120:25  121:14  121:16  126:24  130:23  131:25  132:6 | |
| **mace**(1) 1:40 | |
| **made**(17) 15:1  15:2  15:4  15:5  32:7  33:2  34:18  43:23  49:16  50:12  55:1  78:1  128:2  133:15  138:1  138:2  147:25 | |
| **magna**(1) 47:17 | |
| **mailed**(1) 56:1 | |
| **main**(2) 101:1  101:4 | |
| **major**(1) 97:10 | |
| **make**(26) 8:19  22:19  27:2  36:12  39:10  44:15  53:24  58:17  58:18  64:9  99:15  102:1  102:5  102:11  103:15  104:15  110:4  121:12  121:18  126:1  126:4  126:18  128:21  135:23  137:9  137:13 | |
| **makes**(5) 9:5  22:13  22:17  62:11  134:17 | |
| **making**(3) 15:21  110:19  129:10 | |
| **manage**(2) 87:3  87:22 | |
| **managed**(1) 87:21 | |
| **management**(5) 5:47  6:14  101:16  105:24  106:4 | |
| **manager**(1) 101:17 | |
| **managing**(1) 113:14 | |
| **mandatory**(1) 127:11 | |
| **manhattan**(1) 2:24 | |
| **manipulated**(1) 29:2 | |
| **manner**(3) 74:4  85:24  117:20 | |
| **many**(9) 14:23  23:15  23:15  49:4  94:6  105:4  136:12  147:1  148:2 | |
| **marc**(1) 75:18 | |
| **march**(3) 18:9  18:14  19:19 | |
| **marginal**(1) 116:20 | |
| **mark**(1) 2:29 | |
| **marked**(2) 138:11  149:7 | |

| Word | Page:Line |
|---|---|
| market(7) 1:12 1:25 2:40 3:2 3:38 28:25 88:6 | |
| marketing(1) 30:15 | |
| marla(1) 4:5 | |
| married(3) 115:16 115:21 115:24 | |
| marsak(9) 85:6 85:10 97:7 105:7 112:24 113:15 113:22 122:19 129:5 | |
| martin(1) 4:42 | |
| mary(1) 2:38 | |
| masses(1) 73:2 | |
| matched(1) 111:17 | |
| matches(3) 99:9 117:3 120:25 | |
| material(4) 81:24 95:17 126:6 140:19 | |
| materially(3) 37:3 37:9 67:3 | |
| mathematica(1) 120:18 | |
| matter(18) 19:8 45:19 47:1 49:25 51:19 52:7 54:5 59:6 59:7 61:15 61:22 72:11 79:1 83:3 92:13 146:23 146:25 148:11 | |
| matters(7) 34:25 39:9 52:3 52:5 53:24 72:18 144:18 | |
| matthew(2) 4:10 6:15 | |
| matz(1) 2:22 | |
| mauro(1) 5:40 | |
| maximizing(1) 53:19 | |
| maximum(2) 91:8 116:12 | |
| maxwell(2) 128:19 135:22 | |
| may(37) 1:15 8:1 11:3 11:24 12:14 12:16 32:10 58:21 65:25 73:16 74:24 78:5 78:24 78:25 84:1 84:1 84:2 90:4 95:25 96:1 105:9 105:12 108:11 108:13 109:16 112:2 114:11 125:4 128:2 131:6 132:14 132:16 139:14 139:15 143:24 144:3 148:13 | |
| maybe(11) 46:20 74:13 90:5 100:2 103:3 105:13 106:3 107:2 107:3 107:5 146:6 | |
| mba(1) 97:10 | |
| mccarter(1) 4:27 | |
| mccloy(1) 2:21 | |
| mean(18) 13:17 20:23 23:14 32:18 50:9 52:21 54:1 60:22 62:18 65:23 68:12 74:20 91:8 92:14 126:12 127:16 127:17 129:11 | |
| meaning(1) 44:1 | |
| means(7) 26:12 45:21 57:12 61:20 122:23 125:4 127:13 | |
| meant(3) 35:14 46:5 69:5 | |
| meantime(1) 66:25 | |
| mechanism(1) 23:20 | |
| mediation(4) 40:16 40:20 55:21 58:22 | |
| medical(17) 74:4 75:11 76:7 76:13 81:16 81:17 81:18 81:21 86:21 87:6 89:24 90:3 92:5 92:16 98:10 109:21 144:11 | |
| medicare(3) 92:12 92:22 120:8 | |
| meet(6) 43:7 43:9 95:10 106:6 110:13 121:2 | |
| meeting(1) 103:11 | |
| meetings(3) 104:18 104:19 105:11 | |
| meets(1) 21:6 | |
| megan(1) 1:32 | |
| melnik(1) 3:37 | |
| members(6) 82:12 83:15 83:16 109:21 132:8 137:21 | |
| memorandum(1) 50:14 | |
| mention(5) 21:1 24:21 61:25 86:21 107:20 | |
| mentioned(4) 47:17 57:14 71:15 138:16 | |
| mentioning(4) 37:18 37:23 37:23 48:18 | |
| merit(4) 24:15 24:25 29:7 37:8 | |
| merits(1) 37:17 | |
| message(1) 138:14 | |
| met(1) 11:24 | |
| methodology(6) 77:24 77:24 77:25 114:6 117:19 118:6 | |
| michael(2) 5:32 5:48 | |
| middle(3) 15:19 100:24 101:15 | |
| might(19) 13:14 23:24 28:18 37:11 44:13 44:13 53:6 66:23 79:13 85:3 85:18 87:17 87:25 92:6 94:8 98:22 103:1 104:21 139: | |
| migrate(1) 76:14 | |
| milbank(1) 2:21 | |
| miller(1) 3:46 | |
| million(11) 78:15 107:5 116:22 119:10 119:11 119:12 119:13 121:15 121:16 121:22 121:22 | |
| mind(4) 15:20 60:11 96:8 98:22 | |
| mindel(1) 4:14 | |
| minds(1) 40:22 | |
| mine(1) 56:5 | |
| mini(1) 57:20 | |
| miniscule(1) 111:15 | |
| minutes(5) 46:22 73:5 73:6 73:6 73:8 | |
| minutia(1) 64:13 | |
| miscellaneous(1) 122:13 | |
| mismanagemen(1) 86:20 | |
| missed(1) 130:4 | |
| missing(1) 59:3 | |
| mistaken(1) 49:21 | |
| misunderstanding(1) 127:1 | |
| mitigation(2) 102:12 127:8 | |
| mizak(49) 85:5 94:18 95:1 95:7 95:8 95:9 97:3 97:6 97:15 97:17 98:6 98:20 99:1 99:19 100:11 100:17 101:14 101:25 102:2 103:1 103:13 103:22 104:9 104:24 105:17 106:21 107:16 108:1 108:3 108:15 108:19 108:23 109:2 109:4 109:8 109:10 109:11 109:13 111:3 111:8 111:10 111:17 111:19 111:20 111:21 112:21 112:22 136:8 149:3 | |
| mizak's(4) 85:15 112:2 112:5 112:13 | |
| modification(3) 76:24 81:11 81:25 | |
| moessner(1) 1:35 | |
| moment(5) 13:6 72:9 81:11 144:3 145:7 | |
| monday(5) 69:5 71:6 71:7 101:23 105:20 | |
| money(15) 20:9 87:5 88:18 94:11 98:3 100:21 102:1 102:5 102:10 102:11 106:10 107:14 117:20 120:19 120:23 | |
| monitor(3) 2:48 5:1 39:2 39:8 | |
| monitored(1) 89:25 | |
| month(3) 20:22 84:1 106:7 | |
| months(3) 48:12 48:16 | |
| months'(1) 105:7 | |
| morawetz(15) 15:16 16:17 17:1 19:16 20:14 20:15 21:20 22:10 22:24 22:25 26:21 26:21 28:9 54:12 57:17 | |
| more(22) 10:1 14:9 25:13 38:14 47:8 53:25 64:9 82:11 91:13 91:25 92:10 93:1 99:12 99:17 102:11 103:16 109:4 111:19 121:20 129:16 129:19 142:7 | |
| morgan(2) 128:18 135:22 | |
| morning(17) 8:3 8:4 8:5 36:7 38:25 39:1 39:9 66:7 73:14 73:15 73:18 73:19 76:3 76:4 81:12 113:8 113:9 | |
| morris(1) 1:22 3:45 8:6 | |
| most(9) 13:19 15:25 16:2 35:21 85:18 100:11 113:19 115:18 125:9 | |
| mother(3) 130:17 130:20 131:22 | |
| motion(52) 8:23 24:23 28:1 29:24 30:13 30:18 30:19 30:21 30:23 30:25 31:9 31:2 33:5 37:1 42:4 44:20 46:21 47:16 49:16 58:17 58:18 62:9 62:19 63:23 64:19 65:10 65:16 65:19 65:20 66:24 67:10 67:13 67:16 68:15 68:18 69:4 69:6 70:16 71:12 71:24 72:6 72:10 72:12 73:25 79:17 84:19 94:3 114:24 130:9 130:10 133:17 136:21 | |
| motions(4) 8:14 9:11 17:3 79:16 | |
| motivation(1) 28:15 | |
| movants(1) 30:7 | |
| move(15) 21:18 28:19 31:14 32:7 32:8 35:7 35:14 37:13 45:4 74:18 87:7 119:17 130:17 131:11 131:20 | |
| moved(9) 29:1 75:2 78:12 78:12 79:25 83:7 130:14 131:9 131:18 | |
| moves(1) 84:16 | |
| moving(6) 35:6 35:9 38:6 54:23 55:20 72:17 | |
| mrs(2) 81:12 102:6 | |
| much(15) 11:20 17:15 20:18 25:13 39:16 83:3 83:4 83:20 83:24 103:16 105:11 121:22 126:5 133:7 141:8 | |
| muchin(1) 5:7 | |
| mui(1) 5:36 | |
| multiple(7) 14:25 34:10 42:17 42:20 118:21 120:24 121:3 | |
| multiplied(1) 118:1 | |
| multiplying(1) 120:5 | |
| murphy(1) 3:1 | |
| must(4) 13:4 13:4 25:10 146:2 | |
| myself(2) 19:6 144:6 | |
| naftalis(1) 4:31 | |
| nagle(1) 26:2 | |
| name(7) 94:2 97:6 107:20 130:2 130:5 147:15 147:20 | |
| nancy(1) 130:6 | |
| narinder(2) 6:19 130:2 | |
| narrowed(1) 101:20 | |
| nature(5) 87:9 124:15 125:1 140:18 146:25 | |
| naval(1) 47:25 | |
| neatly(1) 16:25 | |
| necessary(1) 82:2 | |
| need(20) 11:5 20:16 20:17 28:18 29:8 35:18 37:13 50:22 51:4 60:11 66:11 67:16 80:12 94:10 94:12 108:11 124:5 135:17 140:20 145:6 | |
| needed(3) 46:4 88:13 93:20 | |
| needs(4) 22:19 38:7 108:25 134:18 | |
| negative(1) 106:8 | |
| negotiated(1) 19:4 | |
| negotiations(2) 46:6 46:23 | |
| neil(3) 4:24 76:1 139:20 | |
| net(4) 96:14 115:8 117:25 121:14 | |
| networks(4) 1:7 7:6 16:9 16:11 | |
| never(12) 18:1 19:8 20:14 20:24 49:6 58:24 58:25 58:25 59:1 61:16 87:6 91:19 | |
| new(22) 1:37 2:18 2:25 3:9 3:16 3:32 9:15 16:23 22:13 22:15 26:18 49:5 89:1 97:10 123:13 124:25 125:23 125:25 126:1 141:19 141:24 141:25 | |
| next(9) 72:21 73:2 94:14 94:14 98:6 99:5 99:7 107:1 114:20 | |
| nichols(1) 1:22 8:6 | |
| nick(1) 2:23 | |
| night(4) 8:17 49:11 65:5 100:24 | |
| ninth(6) 11:8 11:9 11:9 11:10 11:17 11:19 | |
| nobody(1) 47:4 | |
| noise(1) 22:21 | |
| non-meritorious(1) 43:12 | |
| non-qualified(1) 122:12 | |
| non-waivable(1) 51:20 | |
| noncontroversia(1) 134:22 | |
| none(6) 17:21 86:2 86:22 87:15 128:11 134:16 | |
| nor(1) 136:6 | |
| normal(1) 49:25 | |
| normally(5) 54:10 86:3 138:4 | |
| nortel(8) 1:7 7:6 16:9 16:11 42:5 94:15 124:20 124:21 | |
| north(3) 2:7 3:2 3:23 | |
| not(177) 10:10 11:1 11:4 11:13 12:23 13:17 13:20 14:15 14:22 15:15 17:15 17:20 18:1 19:3 19:9 19:21 21:5 21:19 22:3 22:9 22:14 22:18 23:16 23:22 24:2 26:7 27:20 27:23 27:25 28:2 28:8 28:10 29:1 29:16 32:1 33:6 33:11 33:14 33:16 33:19 33:23 34:23 35:16 35:19 38:13 39:20 40:3 40:17 41:9 41:11 41:23 42:6 43:4 43:11 43:14 43:22 44:4 44:6 45:22 46:10 46:13 46:15 46:20 50:9 51:5 52:5 52:16 52:22 53:1 58:10 59:9 59:15 59:16 59:17 59:19 59:20 60:5 60:25 61:20 62:7 62:7 63:1 63:8 63:15 63:20 63:22 64:16 64:16 64:21 65:11 65:12 65:13 65:18 67:17 68:4 68:5 68:18 68:19 69:11 69:12 69:21 70:2 71:1 72:12 76:13 76:16 77:1 77:25 79:11 80:15 81:16 81:20 83:1 83:13 86:12 86:21 87:12 89:5 90:16 90:21 90:23 91:10 91:13 92:7 93:17 94:11 96:16 96:19 97:3 99:25 101:10 105:1 105:10 107:24 108:11 110:9 110:17 114:13 115:24 116:8 117:4 117:5 118:17 119:3 119:21 120:17 121:2 122:20 123:8 124:25 125:22 126:7 126:14 126:19 126:25 128:21 128:25 129:14 130:9 130:18 130:20 130:24 133:9 134:1 135:14 135:21 135:25 136:5 137:15 139:7 142:3 142:12 144:2 144:5 146:2 147:7 147:20 | |
| note(5) 25:8 56:17 95:10 120:11 146:6 | |
| noted(1) 43:10 | |
| notes(3) 66:21 67:19 67:23 | |
| nothing(7) 28:23 41:5 59:21 71:10 98:3 101:21 133:14 | |
| nothing's(1) 70:25 | |
| notice(14) 23:2 28:1 30:8 31:7 31:16 32:4 34:12 35:1 41:13 41:15 41:16 78:18 101:15 103:19 | |
| noticed(2) 79:15 147:19 | |
| notices(2) 17:3 96:20 | |
| notion(1) 37:20 | |
| notwithstanding(5) 20:3 28:16 29:3 32:6 58:20 | |
| novel(1) 145:9 | |
| november(1) 55:21 | |
| now(45) 8:12 13:16 14:8 14:8 21:17 25:18 28:14 29:22 40:17 40:20 41:24 43:5 47:8 49:10 49:21 51:1 57:20 66:15 66:15 66:19 67:17 67:19 69:3 72:18 78:9 79:1 79:2 82:16 82:22 83:16 88:9 89:15 90:3 90:14 93:11 93:11 93:24 99:8 99:14 101:22 102:5 106:3 129:19 131:5 147:15 | |
| nowhere(1) 83:7 | |
| nullifies(1) 67:15 | |
| number(14) 46:1 57:2 82:3 90:19 92:16 92:21 92:21 99:2 107:18 117:13 117:22 118:2 120:14 121:18 | |
| numbers(6) 74:14 74:17 105:4 119:23 120:3 121:17 | |
| numerosity(1) 82:22 | |
| o'clock(1) 8:13 | |
| o'sullivan(1) 4:9 | |

| Word | Page:Line |
| --- | --- |

**object**(4) 122:17 123:23 125:18 130:9

**objected**(2) 119:4 129:9

**objection**(20) 8:23 8:25 73:24 73:25 75:17 77:5 79:24 80:19 81:13 81:13 93:19 112:4 124:2 128:9 128:11 132:10 134:5 138:17 142:21

**objections**(8) 13:22 79:1 93:23 100:19 102:9 104:2 129:10 138:10

**objector**(4) 94:6 121:25 130:9 138:17

**objectors**(2) 101:8 123:7

**obligation**(1) 60:18

**obligations**(1) 133:25

**obstinate**(1) 11:20

**obtain**(1) 136:15

**obviously**(28) 11:14 43:17 53:10 53:23 61:10 61:15 70:2 73:22 74:8 77:25 91:25 94:8 99:3 100:13 102:4 103:14 103:19 104:6 104:21 105:22 106:15 106:17 110:6 110:20 114:24 120:15 135:25 146:16

**oddly**(1) 12:4

**off**(9) 20:18 61:5 73:1 86:16 103:19 104:21 119:6 123:17 147:6

**offer**(2) 144:4 146:6

**offering**(1) 134:19

**office**(3) 2:28 82:13 103:8

**officer**(1) 16:9

**officers**(1) 144:5

**official**(3) 4:22 5:26 30:6

**offline**(1) 132:20

**often**(1) 64:8

**okay**(57) 9:9 12:5 24:24 30:3 30:11 37:16 52:8 59:18 63:21 64:17 67:17 68:3 71:8 75:3 77:19 78:21 78:22 80:8 80:16 80:22 80:25 84:5 85:8 85:23 89:7 90:9 90:10 91:3 91:14 95:15 95:19 96:11 99:25 101:14 103:5 104:8 104:23 107:19 113:23 114:8 114:15 114:22 117:1 117:12 119:7 119:16 121:7 123:20 130:11 131:8 131:17 132:12 132:21 133:3 139:14 140:22 141:2

**older**(1) 104:25

**olivia**(1) 5:40

**once**(11) 20:14 50:7 70:12 75:7 76:12 90:7 93:3 94:23 106:7 134:7 143:1

**one**(96) 1:36 2:6 2:17 2:24 3:31 9:5 9:7 10:1 10:13 11:18 11:24 12:25 15:8 16:14 16:15 19:2 23:16 27:17 28:21 28:22 33:11 37:17 38:4 40:10 42:3 46:23 52:23 53:8 53:11 54:8 54:9 56:17 58:8 59:16 60:11 60:13 61:24 64:2 65:10 68:20 76:24 78:6 81:11 84:7 85:5 85:12 87:11 88:24 89:19 92:16 93:24 93:25 94:5 94:12 94:15 95:10 98:16 99:16 100:14 100:18 101:4 101:15 101:14 105:23 106:8 106:21 107:12 107:16 107:19 109:23 110:4 112:7 113:23 114:2 115:10 115:12 115:19 117:4 117:15 118:5 118:23 119:23 120:15 121:13 125:23 126:1 127:24 136:15 136:22 136:25 137:3 137:22 137:23 138:17 139:20 147:13

**one's**(1) 69:13

**one-time**(2) 104:10 105:21

**one-year**(1) 101:23

**ones**(3) 15:8 40:13 145:13

**one's**(1) 111:19

**only**(51) 12:23 14:22 18:2 19:9 19:14 19:15 20:11 21:1 25:3 25:6 27:20 27:23 27:25 28:2 40:4 40:12 46:25 47:14 48:3 52:12 52:23 53:5 60:16 61:25 66:25 68:1 68:20 71:24 77:25 79:14 79:22 82:16 83:1 84:3 89:24 93:22 93:24 94:5 95:20 100:14 107:23 109:23 115:25 116:7 120:16 122:17 123:22 127:4 139:10 145:8 146:2

**onto**(2) 34:10 94:2

**open**(1) 67:11

**operate**(1) 110:19

**operations**(1) 16:11

**opinion**(8) 20:21 22:20 23:17 35:12 50:14 61:19 81:23 134:19

**opponent**(1) 11:22

**opportunity**(7) 21:18 59:2 63:22 68:4 68:22 69:3 69:20

**oppose**(1) 62:14

**opposed**(1) 132:1

**opposite**(1) 48:18

**oppositions**(1) 17:4

**option**(6) 67:11 74:3 88:22 93:18 119:25 127:5

**options**(1) 136:10

**orally**(1) 70:23

**order**(43) 9:2 9:25 21:22 21:24 23:18 23:19 24:22 29:25 44:14 58:2 58:3 58:4 58:5 58:5 59:5 59:6 60:21 60:25 61:7 61:8 61:9 62:17 63:3 66:12 67:2 67:6 71:6 71:7 71:8 77:10 77:13 77:15 78:5 78:8 78:18 83:22 101:6 133:25 137:17 138:9 139:6 143:16 143:16

**orders**(4) 8:16 18:22 62:1 77:21

**original**(3) 79:17 117:14 139:6

**originally**(3) 79:15 86:25 87:13

**other**(45) 5:35 13:15 18:10 24:4 24:13 33:7 35:8 35:24 43:3 44:12 45:1 45:25 47:6 49:15 53:18 54:10 60:18 62:6 75:11 76:8 78:2 78:8 78:8 79:12 82:20 85:9 86:22 88:5 104:7 104:20 114:20 115:12 115:12 115:15 119:12 124:18 126:18 126:19 129:20 129:20 132:25 133:1 136:2 139:4 139:10

**others**(1) 94:2

**otherwise**(4) 13:2 86:11 102:21 132:10

**ought**(1) 140:9

**our**(74) 28:23 28:24 30:12 31:11 37:24 42:22 47:16 51:1 51:13 53:6 54:9 54:22 59:1 65:1 65:4 67:13 68:13 70:12 76:12 77:4 77:22 79:7 84:19 85:25 88:23 89:5 91:24 91:25 92:12 92:24 100:19 102:11 102:20 104:3 104:10 106:17 107:20 116:6 117:16 117:18 118:11 118:24 119:15 121:10 121:25 122:11 123:1 123:11 124:7 124:7 124:10 125:1 127:12 127:25 128:14 128:15 128:18 129:4 134:17 135:2 135:13 140:5 140:6 143:12 144:7 144:11 144:11 144:12

**ours**(2) 76:21 140:8

**ourselves**(5) 34:19 56:13 57:13 145:3

**out**(65) 20:19 23:1 24:9 28:10 29:1 29:24 33:11 35:11 35:17 38:5 40:4 40:13 40:14 43:23 55:24 56:1 56:13 56:22 57:8 62:12 73:9 74:6 75:2 86:23 87:10 87:18 88:16 88:19 89:13 93:16 93:22 94:11 95:1 95:21 95:21 95:23 96:22 98:3 98:8 99:2 99:10 100:24 100:25 105:13 106:17 107:9 107:11 107:21 107:24 116:19 117:18 118:2 118:20 120:24 121:3 121:17 124:10 134:1 141:14 143:1 144:5 147:14 147:14 147:14

**outlined**(1) 39:7

**outrageous**(1) 49:4

**outside**(5) 19:4 49:25 120:24 133:1 133:6

**over**(34) 14:13 15:24 15:24 16:1 16:22 17:2 17:22 20:9 34:7 34:7 34:8 34:8 34:10 40:19 89:13 91:4 92:7 97:7 98:13 100:20 104:21 117:6 117:7 118:4 119:10 120:11 120:24 121:3 122:19 122:19 128:2 132:1 144:18

**overall**(4) 81:23 116:17 116:22 121:13

**overcome**(1) 24:7

**overrule**(1) 132:10

**oversaw**(1) 17:24

**overy**(3) 3:6 5:2 39:2

**own**(4) 102:10 123:15 134:17 140:5

**o'connor**(1) 3:14

**p.m**(1) 148:6

**packaged**(1) 65:2

**page**(11) 50:4 50:16 68:24 69:5 97:17 97:19 97:20 99:19 100:7 113:23 141:15

**paid**(9) 92:22 98:16 105:1 107:10 117:20 120:20 120:23 120:24 121:3

**panel**(1) 10:21

**papers**(17) 14:5 18:8 31:11 49:10 51:1 68:16 68:22 70:23 71:5 72:1 91:24 124:10 127:12 127:25 128:15 133:16 137:15

**paragraph**(10) 78:7 141:16 141:18 142:1 142:8 142:12 142:15 142:17 142:18 142:2

**paragraphs**(1) 141:10

**parallel**(3) 40:5 54:7 54:15

**park**(2) 2:17 3:31

**parol**(3) 22:18 27:4 59:12

**part**(7) 15:21 23:14 34:12 38:8 53:6 107:10 110:4

**partial**(2) 17:4 17:4

**participant**(4) 108:5 115:8 116:5 117:25

**participants**(8) 55:25 99:2 115:23 116:18 117:23 118:4 118:14 120:14

**participant's**(3) 115:6 116:12 120:9

**participate**(2) 105:1 140:7

**participating**(1) 110:21

**participation**(1) 50:6

**particular**(6) 22:5 44:1 46:21 47:14 82:10 86:9

**particularly**(6) 37:11 38:7 61:17 87:4 127:20 141:11

**parties**(39) 14:25 19:10 22:3 23:23 25:6 33:14 42:3 42:16 43:3 44:9 45:13 46:2 47:19 47:21 47:22 47:24 50:23 52:7 52:23 58:12 58:23 59:5 60:18 61:7 61:11 64:7 70:9 76:5 79:2 81:7 81:10 81:14 81:16 81:18 82:4 83:8 129:22 138:2 138:5

**partner**(1) 64:3

**partners**(2) 5:43 41:3

**partnership**(1) 113:17

**parts**(2) 87:7 110:4

**party**(11) 5:39 5:43 5:47 6:2 6:6 6:10 6:14 45:6 52:22 79:4 140:11

**pass**(3) 75:13 90:7 90:11

**passed**(2) 99:7 138:13

**passes**(1) 131:24

**past**(2) 37:12 137:9

**paternalistic**(1) 92:14

**patience**(3) 144:13 145:18 145:22

**patient**(4) 144:10 144:21 146:2 146:3

**patterson**(1) 5:20

**pay**(14) 89:4 92:10 93:11 98:3 102:6 107:9 107:11 109:25 110:3 110:4 111:13 118:3 121:4 123:10

**paying**(2) 98:8 111:19

**payment**(6) 108:7 108:8 124:20 125:8 125:11 132:6

**payments**(16) 90:11 93:16 98:13 98:17 98:18 100:14 107:4 117:4 117:6 117:13 119:6 121:1 124:13 125:7 129:17 129:19

**payout**(2) 88:13 117:3

**pbgc**(2) 129:15 132:18

**peace**(1) 56:20

**peg**(1) 6:7

**pejorative**(2) 26:9 37:6

**pendency**(3) 10:12 29:18 45:5

**pending**(7) 8:14 117:11 34:25 51:4 58:22 63:3 72:7

**pennsylvania**(2) 1:44 24:20

**pension**(9) 3:12 4:36 5:12 13:25 15:1 32:22 50:14 50:15 50:16

**people**(44) 21:14 21:16 24:3 29:2 56:11 74:12 74:21 75:4 76:9 76:11 90:20 90:22 92:6 92:9 92:11 92:15 93:5 93:18 93:20 94:7 94:7 94:8 99:6 100:19 100:24 104:19 107:23 107:24 109:22 109:23 117:17 117:5 118:20 121:14 125:5 125:8 129:9 138:2 144:20 145:4 145:15 147:1 147:15 148:2

**peoples'**(2) 98:11 98:14

**per**(6) 74:5 74:8 104:25 108:5 108:5 per/pro(6) 6:18 6:22 6:26 6:30 6:36 6:40 6:44 7:2

**percent**(14) 40:18 74:5 74:6 74:6 74:7 74:7 74:13 101:23 109:21 109:25 110:5 111:5 120:8 120:11

**percentage**(3) 111:13 117:25 118:1

**perfect**(1) 115:4

**perhaps**(9) 17:5 44:13 46:15 56:11 57:22 60:25 111:2 114:1 137:24

**period**(6) 91:4 117:8 118:5 118:13 119:10 127:24

**permanently**(1) 108:11

**permission**(3) 66:12 67:7 67:14

**permit**(1) 31:24

**person**(13) 74:8 76:12 86:2 104:14 105:1 108:5 108:7 115:13 116:17 117:23 137:23 138:17 138:19

**persona**(8) 6:22 6:26 6:30 6:36 6:40 6:44 7:1 7:6

**personal**(8) 83:3 83:18 86:1 123:14 123:15 132:5 144:6 146:25

**persons**(1) 81:19

**person's**(1) 111:11

**perspective**(1) 37:19

**persuasive**(1) 82:7

**petition**(2) 25:5 67:13

**phillips**(2) 4:18 4:42

**phone**(4) 76:2 92:24 122:6 139:21

**phonics**(1) 147:23

**phrase**(2) 10:17 24:9

**physical**(2) 86:1 86:15

**pie**(1) 42:23

**piece**(4) 73:22 87:10 95:20 138:1

**piles**(1) 18:8

**pin**(1) 21:1

**piper**(1) 3:36

**place**(12) 18:18 18:19 19:19 20:5 27:25 28:13 52:19 56:9 60:13 104:25 123:17 123:18

**plainly**(1) 53:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| plan(69) 74:9 76:7 79:20 79:25 85:22 86:18 87:20 89:1 89:9 89:20 90:13 91:7 91:18 91:19 98:11 98:12 100:8 105:21 107:2 107:17 109:23 109:24 110:1 117:4 117:10 117:13 117:14 118:3 118:12 118:1 118:20 119:1 119:2 119:4 119:9 119:9 120:19 120:24 121:13 121:20 121:13 123:14 123:18 123:19 124:6 124:25 125:1 125:25 126:14 126:14 126:16 126:18 127:3 129:15 134:1 136:13 137:20 137:21 137:22 137:23 138:6 139:9 140:13 140:21 141:19 141:25 142:1 142:3 142:5 | | prejudice(2) 35:9 51:5 prejudicing(1) 45:5 preliminarily(1) 118:24 preliminary(2) 99:23 104:18 premature(1) 31:24 premised(2) 14:11 60:17 premiums(2) 86:22 93:10 preparation(2) 13:2 13:11 prepare(2) 10:1 103:9 prepared(3) 83:22 115:5 115:7 preparing(1) 117:18 prescription(1) 102:7 prescriptions(1) 143:3 present(3) 74:5 84:6 145:12 presentation(1) 94:18 presentations(1) 103:16 presented(4) 25:10 55:14 135:23 136:9 | | projected(5) 115:6 115:8 116:5 116:9 120:12 projection(2) 91:11 119:10 projections(5) 75:1 99:23 117:6 120:13 121:19 promise(1) 63:2 prong(3) 37:1 37:8 37:9 properly(2) 47:1 54:2 proposal(2) 85:7 124:9 proposed(4) 71:7 121:20 132:7 140:5 proposing(1) 57:7 propositions(1) 140:9 propria(8) 6:22 6:26 6:30 6:36 6:40 6:44 7:1 7:6 | | quick(1) 36:12 quickly(4) 35:6 38:20 84:23 95:13 105:8 110:12 113:11 122:2 quirk(1) 100:13 quite(9) 10:20 15:19 41:4 46:3 49:12 49:15 49:23 52:2 53:13 quixote(1) 42:15 quote(1) 105:20 quotes(5) 91:12 105:19 105:24 106:8 106:9 qureshi(14) 2:16 36:5 36:6 36:7 36:9 36:17 36:20 37:16 38:16 38:18 38:22 38:23 40:25 43:14 |
| plan/contractua(1) 86:13 planned(1) 93:3 planning(2) 93:4 123:14 plans(6) 76:6 110:21 126:20 126:23 138:3 140:5 | | presenting(1) 50:2 presents(1) 71:16 preservation(1) 102:12 preserve(2) 87:9 93:20 preserves(1) 82:1 preside(1) 144:18 | | prosecute(1) 9:11 protection(1) 86:2 protections(1) 86:23 protects(1) 129:8 protocol(8) 28:3 30:1 40:19 40:24 41:4 50:18 50:22 53:8 | | race(2) 54:13 75:5 rafael(6) 2:36 73:20 96:12 103:14 110:3 132:15 |
| plan's(1) 80:3 plate(3) 32:1 32:2 32:2 playing(1) 76:19 plaza(3) 1:36 2:24 3:31 pleading(6) 16:1 41:18 51:3 51:17 70:13 71:10 | | presumption(2) 22:8 29:12 pretty(3) 75:7 87:21 96:15 previously(3) 107:10 113:24 149:8 prevail(4) 95:13 95:17 96:2 96:13 priced(2) 101:20 103:6 | | proves(1) 142:12 provide(7) 74:2 81:9 94:1 101:6 101:11 107:15 121:20 provided(5) 37:19 41:4 49:24 77:21 86:2 | | rahul(1) 6:31 raised(3) 17:11 26:1 68:17 raising(3) 12:9 12:10 49:5 ran(4) 115:9 115:9 115:21 116:2 range(3) 99:6 99:7 121:17 |
| pleadings(3) 45:14 51:10 52:18 please(8) 8:2 8:3 19:13 29:25 66:2 73:13 107:18 113:23 | | prima(5) 25:1 25:5 25:9 26:13 43:22 primary(4) 15:12 15:14 15:15 16:21 prime(1) 25:23 principle(1) 54:13 principles(1) 54:6 prior(9) 35:12 79:24 80:20 81:17 92:5 92:6 97:12 98:13 125:10 | | provider(1) 103:18 providers(1) 107:19 provides(1) 17:7 providing(2) 101:9 138:4 provision(6) 17:24 27:10 58:21 61:8 62:15 66:22 | | rate(2) 116:18 116:23 rates(5) 101:22 116:21 116:21 117:5 120:6 rather(4) 51:8 66:4 105:8 117:6 rationale(1) 118:8 ray(2) 79:16 126:5 ray's(1) 149:8 raymond(1) 7:7 |
| pleased(1) 144:19 pleases(1) 70:10 plenty(6) 29:15 31:23 32:1 34:22 35:5 plus(1) 137:12 podium(2) 9:10 73:22 point(36) 11:13 11:14 14:5 16:2 18:25 24:8 29:23 34:20 34:21 37:16 38:4 38:5 42:9 52:24 53:12 54:16 54:17 56:22 57:1 57:1 57:8 58:10 61:25 63:21 70:17 71:23 104:5 107:6 113:10 123:17 124:2 125:9 128:14 130:16 134:14 141:14 | | private(22) 46:9 46:25 47:6 50:1 50:10 50:25 87:16 87:18 88:15 103:4 106:11 106:22 106:24 106:25 107:14 119:22 125: 125:5 125:10 135:17 141:21 142:8 | | prudential(1) 90:15 public(2) 96:12 113:16 publicized(1) 94:6 pull(2) 103:15 105:8 purchase(3) 95:13 96:2 96:13 purchased(1) 87:13 purchase(3) 95:16 143:4 143:7 purely(1) 97:12 purpose(2) 50:17 124:21 purposes(7) 33:7 46:16 51:18 57:18 66:14 66:15 115:25 | | ray's(2) 79:7 79:24 re-engineer(1) 95:13 re-state(1) 111:1 reach(5) 20:25 56:12 74:7 74:24 74:25 reached(1) 83:11 reaching(1) 58:12 read(4) 44:23 67:19 138:25 142:25 reading(2) 44:25 141:9 ready(2) 41:19 72:5 real(1) 146:24 reality(1) 64:9 realize(2) 72:17 145:8 realized(1) 118:12 |
| pointed(5) 35:11 47:19 47:20 64:10 121:17 pointing(3) 40:13 40:14 63:11 points(3) 36:12 39:6 55:19 populated(1) 105:10 population(2) 116:23 118:15 portion(2) 98:9 98:10 107:3 117:15 120:1 121:5 | | pro(9) 6:18 6:22 6:26 6:30 6:36 6:40 6:44 7:2 6:63 pro-rata(1) 110:2 probably(5) 91:15 107:8 128:23 145:8 147:20 | | pursuant(2) 23:3 59:22 pursue(2) 50:15 136:13 put(19) 20:18 23:2 47:3 49:16 60:13 66:22 79:16 85:3 89:15 89:19 92:4 104:1 104:24 105:25 106:12 106:16 123:2 127:25 146:12 | | really(51) 17:14 24:2 25:12 38:20 41:24 45:24 47:14 48:9 49:15 52:17 56:13 61:10 68:19 70:25 72:7 72:19 82:3 82:10 82:14 82:23 82:25 83:2 83:7 83:17 85:12 85:19 87:12 88:12 88:14 89:9 92:20 94:10 94:12 94:17 119:4 122:18 129:1 133:17 134:6 135:8 135:14 136:2 136:6 138:25 140:25 144:17 145:4 145:13 146:3 146:22 146:23 |
| posed(1) 36:13 position(5) 27:22 39:8 39:19 70:24 136:5 positioning(1) 56:8 positions(3) 115:16 134:12 134:14 positive(1) 145:16 posner(1) 10:21 possibility(2) 78:16 127:7 possible(7) 27:22 29:11 87:2 114:5 136:16 137:1 138:1 | | problem(16) 16:4 19:24 26:8 51:15 57:6 62:16 62:18 80:12 87:25 88:5 88:6 88:14 93:15 106:10 132:5 133:9 problematic(1) 57:24 problems(4) 85:25 86:17 86:19 89:12 procedural(7) 11:5 30:15 34:2 34:3 64:13 67:11 71:16 | | putting(2) 117:5 137:10 qualified(2) 89:24 90:6 qualifies(2) 91:19 142:16 qualify(3) 47:9 90:7 103:14 qualifying(2) 75:11 97:3 quality(1) 130:19 | | reason(12) 11:11 19:24 19:25 23:17 46:3 46:7 60:16 66:22 110:15 123:22 126:1 147:20 reasonability(1) 60:10 reasonable(4) 50:8 57:3 81:9 81:20 reasonably(3) 49:12 101:20 103:6 reasons(6) 11:18 31:23 76:25 101:5 106:15 109:3 |
| posted(1) 77:22 posture(2) 30:16 71:16 posturing(1) 56:9 potential(2) 38:21 126:22 potentially(1) 81:7 power(1) 52:7 powers(1) 135:3 ppearances(2) 1:21 2:1 practical(5) 13:18 13:19 15:25 16:2 38:4 practicalities(1) 119:21 practically(1) 125:3 pre-arbitration(1) 51:16 preamble(1) 141:10 precedent(1) 59:4 precisely(3) 36:23 37:8 38:19 predominanc(1) 104:12 predominantly(1) 120:13 prefer(1) 102:10 preferred(1) 37:5 | | procedurally(3) 66:9 68:17 70:11 procedure(3) 50:5 82:8 82:21 procedures(2) 49:18 51:17 proceed(11) 12:11 13:17 13:21 14:20 51:2 51:24 55:24 70:3 71:25 73:17 85:23 proceeding(8) 13:14 13:15 20:4 21:16 32:19 54:7 54:10 140:6 proceedings(12) 1:18 1:48 13:22 14:24 29:16 41:12 42:1 45:4 50:1 50:15 50:16 148:11 proceeds(2) 14:13 16:22 process(16) 23:21 29:14 46:25 47:7 50:1 50:25 61:20 90:18 92:12 93:3 93:18 93:19 93:22 107:15 114:16 145:19 produced(3) 1:49 80:7 80:12 prof(1) 5:35 professionals(2) 104:10 136:11 program(1) 93:7 progress(1) 37:4 | | quarterly(2) 103:10 104:19 question(63) 9:18 10:3 10:9 10:24 11:1 11:10 12:9 12:10 13:7 13:20 14:23 15:16 18:2 18:7 20:19 21:18 22:3 22:14 22:18 22:21 25:17 25:21 25:23 26:1 26:17 26:24 26:25 27:9 27:16 27:17 28:14 30:17 32:3 35:22 36:13 36:21 39:24 42:24 47:1 51:20 53:12 58:10 58:15 60:4 61:21 62:6 66:25 68:5 68:20 69:10 69:11 91:20 111:2 122:18 123:23 124:3 124:4 124:5 124:14 125:15 127:9 132:17 questioning(1) 53:12 questions(19) 8:20 12:8 13:1 35:25 41:24 55:13 93:9 98:4 103:3 106:21 109:1 109:4 109:11 109:12 109:17 110:22 121:24 121:25 132:15 | | reassess(1) 34:21 rebuttal(1) 55:19 recall(1) 8:13 receipt(3) 89:11 92:19 127:5 receive(9) 104:13 108:7 108:8 115:14 118:1 118:4 129:19 131:25 132:6 received(6) 73:23 80:6 88:19 89:14 92:1 106:19 receiving(6) 83:8 87:11 99:8 110:7 111:12 111:14 recent(1) 40:10 recess(2) 73:12 148:4 recognize(4) 24:12 32:19 83:11 83:12 recognized(3) 81:14 83:5 83:21 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

recognizes(2) 82:15  83:1
reconcile(1) 40:6
record(19) 26:5  36:7  42:14  59:21  73:1
76:24  80:1  80:24  81:8  84:21  96:13  109:1
112:1  112:3  133:15  134:4  134:23  139:1
146:12
recorded(1) 1:48
recording(2) 1:48  148:10
records(1) 90:14
recoveries(1) 37:13
recovery(2) 81:7  81:22
recross(1) 149:2
red(1) 17:8
redacted(3) 95:12  95:12  112:15
redirect(1) 149:2
redo(2) 51:9  51:10
reducing(1) 116:16
reed(1) 3:27
refer(1) 58:21
referred(6) 48:1  49:12  50:3  50:5  58:24
132:25

referring(2) 44:3  63:6
reflect(2) 78:11  78:19
reflected(1) 138:18
reflective(2) 106:18  114:11
reflects(1) 106:17
regard(5) 53:3  99:23  107:16  127:13  134:5
regarding(2) 8:14  134:17
regardless(2) 48:5  111:5
regards(2) 103:4  133:1
regional(1) 103:6
regulated(1) 88:8
reinforces(1) 140:24
relate(2) 13:24  13:25
related(3) 27:13  65:13  142:6
relates(3) 28:17  28:24  29:23
relating(3) 26:20  27:6  34:25  71:1
relation(3) 42:3  46:21  53:7
relevant(2) 37:11  59:19
relief(4) 85:1  135:2  136:1  136:15
relieved(1) 94:23
reluctant(1) 43:9
rely(3) 115:23  135:13  135:21
relying(1) 135:24
remain(2) 95:6  113:3
remaining(2) 84:16  98:14
remarkably(1) 46:1
remember(2) 64:2  84:8
remind(1) 134:4
reminded(2) 114:10  122:19
reminds(1) 55:20
remiss(1) 144:2
removed(1) 88:21
render(1) 61:19
renders(1) 13:3
rented(1) 19:6
reorganized(1) 127:21
repeat(1) 140:1
rephrase(2) 124:4  124:5
replaced(1) 124:24
replacement(1) 87:23
reply(4) 8:18  8:19  8:23  68:15
report(1) 73:23
reported(1) 124:13
reporting(1) 124:12
reports(1) 103:10
represent(1) 113:19
representation(2) 80:11  83:2
representatives(3) 82:12  82:16  83:17
represented(3) 19:11  82:19  83:20
represents(1) 97:22
request(10) 30:4  30:5  30:6  65:12  65:12
65:13  65:15  79:23  93:17  125:1

requested(3) 137:14  139:2  142:25
requesting(1) 135:2
requests(2) 103:4  143:6
require(2) 27:25  50:6

required(3) 63:15  64:14  105:18
requirement(2) 63:18  65:8
requirements(2) 82:7  82:20
requires(6) 17:8  27:21  58:17  58:18  104:6
140:19

reserve(3) 36:1  125:4  125:8
resolution(12) 35:1  46:10  46:25  47:6
50:10  50:25  73:24  74:18  75:16  75:20  77:5
138:10
resolutions(1) 46:13
resolve(4) 54:18  81:12  129:9  135:10
resolved(4) 94:1  134:3  134:4  138:17
resolver(4) 44:1  45:21  46:14  59:7
resolvers(1) 21:2
resort(1) 55:5
resource(1) 137:11
respect(19) 10:13  16:5  16:10  28:19  30:19
32:4  32:22  33:3  33:14  33:19  33:22  34:25
39:8  66:19  80:3  108:22  133:18  134:20
146:23
respected(1) 136:11
responding(1) 35:22
response(15) 11:24  65:1  65:4  65:11  65:11
65:15  65:19  68:13  68:24  69:4  69:6  70:4
71:9  112:6  119:2

responsible(1) 16:16
responsibly(1) 136:17
restrained(1) 34:19
restrictions(1) 88:11
restructuring(2) 97:11  97:13
result(3) 18:14  123:12  148:2
retained(2) 29:18  128:19
retains(2) 10:10  34:24
retired(1) 129:18
retiree(13) 74:21  76:2  76:7  76:10  76:11
76:15  77:1  105:16  134:11  134:16  134:18
140:2  140:21

retirees(4) 4:23  105:6  105:11  140:12
retirement(6) 98:14  98:15  98:16  99:4
117:14  117:23

return(2) 53:19  102:3
returns(1) 123:16
revenue(1) 120:21
review(2) 25:4  26:5
reviewed(3) 12:18  29:5  80:11
revised(4) 77:13  77:18  78:5  138:8
richard(4) 85:5  95:8  97:6  149:3
richards(1) 2:4
richardson(1) 60:2

right(162) 8:15  9:1  9:7  9:12  10:15  10:16
11:4  13:8  13:23  14:17  17:19  17:25  18:5
18:6  18:17  19:17  19:25  21:13  21:17  23:17
23:17  24:9  25:17  25:18  26:10  26:17  27:15
28:6  31:6  31:8  32:23  32:25  33:9  33:21
35:20  36:2  36:21  38:16  38:22  39:11  42:12
42:24  43:20  44:22  45:6  48:11  48:13  49:2
51:6  51:23  52:1  52:15  55:7  55:9  57:2
57:10  57:24  58:3  58:4  62:7  62:21  63:10
63:24  64:1  64:1  64:5  64:5  64:18  65:5
65:10  65:17  66:6  66:15  66:15  67:8  69:3
69:9  69:18  69:18  70:12  70:19  70:21  70:24
71:2  71:8  71:22  72:3  72:16  73:4  73:17
74:10  74:11  75:14  77:6  77:8  79:21  81:14
85:21  86:6  86:8  90:2  90:24  92:18  93:9
94:4  94:16  94:21  95:5  95:24  96:16  97:23
98:5  98:19  98:19  100:16  101:22  102:8
107:25  108:2  109:9  109:16  110:8  110:14
111:16  111:17  111:17  111:18  111:20
111:24  112:4  114:12  115:3  116:1  117:17
122:3  122:21  124:23  125:13  125:24  126:1
128:1  128:1  128:20  128:23  129:24  130:1
131:18  133:11  134:21  134:21  134:24
135:24  135:25  138:22  139:8  141:9  141:20
142:4  143:5  143:11  147:12  147:24

rightly(1) 43:10
rights(3) 36:1  45:5  140:4
rise(4) 8:2  14:12  29:13  73:13
risen(1) 145:1
risk(1) 33:10
robert(2) 1:31  5:28
robin(1) 4:19
rock(1) 22:1
rodney(2) 2:6  3:22
roger(1) 1:33
rohrbaugh(10) 6:41  143:18  143:20  143:21
143:22  143:23  144:2  144:10  144:16  144:2

room(1) 58:12
rooney(1) 2:49
rosenman(1) 5:7
rossi(12) 6:45  132:14  132:14  132:16
132:17  132:19  132:21  132:23  133:3  133:6
133:7  133:10
round(3) 40:16  114:20  143:23
route(1) 128:22
row(1) 108:12
ruby(1) 17:9
rule(10) 27:20  58:17  58:17  59:22  63:11
63:12  66:21  82:7  82:8  82:21

ruled(1) 43:15
rules(4) 27:20  27:20  27:25  58:18
ruling(17) 87:16  87:18  88:15  103:4  106:11
106:22  106:24  106:25  107:15  119:23
125:5  125:10  132:3  135:17  136:2  141:22
142:9
rulings(1) 125:2
run(7) 23:8  90:18  91:1  107:7  107:8
117:21  118:20

running(2) 118:11  118:12
ryan(1) 1:31

said(46) 15:22  15:24  16:14  19:6  20:16
26:5  29:7  29:25  30:20  33:16  37:12  40:17
40:20  41:13  41:14  42:18  43:14  46:3  47:4
48:14  48:16  49:12  49:17  49:18  50:16  51:3
51:1  54:8  59:15  59:16  60:1  60:4  69:17
71:19  72:4  78:9  84:1  87:24  88:10  92:11
92:15  92:20  102:9  108:3  116:4  140:1

sake(2) 94:12  106:16
sales(2) 16:22  23:20
same(16) 14:20  30:17  50:13  54:5  54:16
61:3  69:17  89:2  95:3  100:12  111:13  117:9
124:19  139:24  145:1  145:17

samis(1) 2:5

sanctions(2) 23:13  34:20
sandboxes(1) 76:19
saran(16) 6:19  130:2  130:3  130:6  130:7
130:8  130:12  130:23  131:3  131:5  131:8
131:13  131:17  131:20  131:22  132:12

sat(1) 59:15
satisfaction(1) 82:20
satisfied(6) 81:3  82:9  82:18  82:21  110:25
136:9

satisfy(2) 63:18  65:7
saul(1) 49:1
saving(1) 119:13  121:21
savings(6) 85:11  88:23  93:21  94:13  101:10
121:9

saw(2) 41:5  71:8
say(62) 9:21  11:2  12:13  13:2  14:12  15:7
15:25  16:24  17:6  19:1  19:12  20:11  20:14
23:15  24:17  24:22  28:2  28:9  28:11  40:1
40:5  43:2  46:22  49:14  51:4  52:16  54:3
55:3  55:13  59:2  59:8  61:2  61:4  61:7
61:18  67:6  67:15  70:3  71:20  75:19  79:23
82:23  85:24  86:3  86:14  87:3  89:14  93:6
94:9  106:25  110:17  125:17  128:14  130:14
133:14  134:9  134:10  134:16  134:23  136:7
146:2  147:15

saying(20) 9:25  11:17  12:22  22:25  31:22
38:15  40:23  48:19  54:22  59:5  60:14  60:22
62:14  87:14  111:3  111:4  130:25  131:8
140:24  146:9

says(30) 12:18  19:7  19:13  19:13  19:22
20:24  20:24  22:2  22:6  23:2  24:16  26:3
26:19  33:12  34:12  43:6  45:20  49:23  58:14
58:20  59:6  59:7  59:11  59:22  60:24  64:13
65:6  67:2  67:6  71:11

scale(2) 44:10  92:8
scenario(11) 76:9  88:17  98:2  108:9  115:19
115:21  116:6  116:9  117:3  120:23  121:10
scenarios(7) 98:1  98:6  103:4  113:25  114:2
115:5  116:3
schedule(1) 11:21
scheduled(1) 38:12
scheduling(1) 21:10
school(2) 21:17  97:10
schuster(4) 30:14  30:16  69:16  71:16
schuylkill(1) 1:43
schweitzer(45) 1:30  73:15  73:23  78:3  78:4
78:14  78:22  78:24  79:14  79:19  79:22  80:3
80:7  80:9  80:15  80:17  80:22  80:25  81:1
82:6  83:25  84:13  96:12  96:18  96:20
125:20  126:2  126:3  126:21  133:12  133:13
133:24  134:3  134:21  139:3  144:23  144:25
144:25  145:6  145:11  145:21  146:1  146:11
147:2  148:3

schwill(1) 4:19
scope(3) 44:4  52:2  133:2
scott(8) 4:9  10:19  11:7  11:14  12:12  12:13
21:6  24:12

seal(4) 80:15  129:11  138:11  143:10
seated(2) 8:4  73:16
second(16) 11:2  11:10  19:20  19:21  37:16
86:11  90:12  97:17  98:21  99:1  99:15  99:19
100:7  100:7  125:15  125:8

secondary(6) 15:12  15:13  15:16  16:21
29:6  134:7

section(8) 18:25  23:3  25:3  25:5  25:6  25:9
32:5  140:3

security(4) 14:12  57:4  101:11  115:14

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| see(19) 24:3 24:4 35:13 44:16 46:5 51:2 51:18 54:18 54:22 68:3 75:7 80:12 87:25 106:8 108:12 116:8 117:8 119:8 138:4 | | show(10) 41:3 43:5 43:12 43:13 43:14 46:12 59:2 85:11 94:19 98:1 | | some(61) 17:7 23:1 23:6 34:21 41:1 42:16 42:18 44:25 45:1 45:4 45:23 46:11 46:25 47:7 50:1 50:24 52:24 57:22 72:20 74:2 75:11 75:13 81:21 88:12 90:1 90:2 91:22 92:8 93:4 93:4 94:22 95:11 95:17 99:21 101:8 102:1 102:3 102:9 102:15 104:1 104:20 104:20 105:12 107:3 107:22 109:2 109:23 116:18 116:20 119:11 121:25 123:11 129:10 129:20 129:20 131:24 135:9 135:18 137:16 137:24 | | states(7) 1:1 1:20 12:2 15:8 82:13 88:9 92:24 |
| | | showed(1) 101:21 | | | | status(6) 83:9 89:22 90:14 90:18 102:20 135:6 |
| seek(3) 23:24 66:12 67:7 | | showing(1) 46:23 | | | | statute(1) 24:16 |
| seeking(2) 23:23 53:7 | | shown(4) 92:2 99:25 128:15 129:7 | | | | statutory(1) 87:17 |
| seem(1) 87:15 | | shows(3) 96:21 99:2 136:12 | | | | stay(16) 11:11 11:18 11:19 13:13 25:20 29:13 33:15 33:18 33:24 44:13 45:3 50:14 50:15 50:15 76:21 144:12 |
| seems(8) 8:7 23:25 52:4 53:8 54:1 70:6 111:4 145:10 | | sibling(1) 89:18 | | | | |
| | | sick(2) 89:4 123:10 | | somebody(9) 23:19 60:3 93:6 98:15 103:9 104:17 105:2 111:13 146:6 | | stayed(3) 23:4 42:1 42:2 |
| seen(2) 8:19 35:8 | | side(2) 24:4 90:10 | | | | staying(1) 54:11 |
| sees(1) 9:21 | | sides(3) 24:3 64:8 145:19 | | | | stays(1) 44:20 |
| segal(2) 4:23 4:23 | | sieves(1) 54:5 | | somehow(2) 38:9 43:3 | | ste(5) 2:30 2:40 3:2 3:38 3:47 |
| segregate(1) 135:8 | | sight(2) 40:9 57:1 | | | | steen(2) 1:29 4:4 |
| selected(1) 101:16 | | sign(3) 9:1 61:2 143:16 | | someone(10) 35:11 74:24 74:25 86:1 86:17 95:13 99:3 104:5 108:11 139:24 | | step(3) 21:7 30:12 128:2 |
| selection(1) 142:14 | | signed(11) 19:4 19:12 20:10 26:18 34:10 43:23 44:8 47:21 52:24 57:10 143:24 | | | | stephen(2) 3:46 6:3 |
| selinda(1) 3:37 | | | | someone's(1) 111:12 | | stern(1) 97:10 |
| sell(3) 20:5 20:16 20:17 | | | | something(17) 12:19 16:10 17:8 20:12 20:20 20:23 31:2 34:5 46:2 79:13 89:14 96:4 104:17 107:3 119:4 124:14 137:14 | | sticking(1) 24:5 |
| senior(1) 97:7 | | significance(2) 82:17 142:2 | | | | still(15) 18:9 50:22 62:4 62:8 68:23 74:15 83:8 88:18 88:22 89:4 101:1 107:6 107:7 108:12 119:3 |
| sense(6) 29:16 44:24 57:3 90:1 99:15 | | significant(2) 120:13 141:17 | | | | |
| sensitive(2) 83:3 132:5 | | significantly(1) 81:5 91:16 140:25 | | | | stipulate(4) 11:22 41:17 45:13 51:2 |
| sent(5) 56:18 65:2 86:25 93:25 93:25 | | signing(1) 20:12 | | sometimes(3) 66:23 138:14 145:23 | | stipulation(3) 57:7 57:10 57:15 |
| sentiment(1) 145:1 | | similarly(3) 41:11 48:21 48:25 | | somewhat(1) 8:17 | | stone(1) 5:43 |
| sentiments(1) 145:17 | | simon(4) 3:10 34:16 69:16 71:15 | | somewhere(1) 121:16 | | stood(1) 40:25 |
| separate(13) 13:16 13:21 14:24 15:2 15:5 20:4 28:1 40:7 56:1 140:4 140:23 140:24 140:25 | | simply(11) 28:8 28:11 30:17 38:1 51:4 59:14 61:1 79:19 139:5 140:1 142:13 | | sontchi(5) 30:14 30:20 69:16 71:15 71:19 | | stop(3) 18:16 23:5 90:11 |
| | | | | soon(3) 65:1 77:23 89:13 | | story(1) 24:4 |
| separated(2) 124:22 127:22 | | since(4) 8:7 40:14 68:23 97:11 | | sophisticated(2) 19:10 19:11 | | straight(3) 36:14 37:10 63:19 |
| separately(3) 30:12 42:21 140:10 | | single(8) 16:1 34:9 50:19 108:7 115:10 115:10 115:19 115:25 | | sorry(11) 33:19 34:14 63:5 64:11 64:23 68:12 97:19 130:4 131:14 133:7 139:23 | | strangers(1) 19:12 |
| separateness(1) 20:3 | | | | | | strauss(2) 2:11 5:27 |
| separation(2) 126:6 126:8 | | sir(16) 36:2 36:5 38:24 39:3 75:17 95:1 98:25 109:15 110:4 111:21 111:23 113:4 122:8 128:2 130:5 133:7 | | sort(13) 12:22 17:8 23:14 51:19 64:9 74:15 86:16 91:22 100:4 100:17 103:17 106:12 137:11 | | street(6) 1:12 1:43 2:7 2:30 3:23 5:36 |
| serious(1) 11:23 61:9 | | | | | | string(2) 90:11 90:12 |
| seriously(1) 43:11 | | | | | | strings(5) 89:16 89:20 89:23 89:23 91:16 |
| served(1) 82:14 | | sit(3) 36:15 36:17 61:1 | | sorts(1) 34:17 | | strongest(2) 29:11 119:24 |
| service(1) 1:42 1:49 77:21 103:18 | | site(1) 129:10 | | sound(3) 1:48 57:3 148:10 | | strongly(1) 107:13 |
| services(5) 1:42 30:15 104:9 108:22 148:1 | | sits(2) 15:15 15:17 | | sounds(1) 25:12 | | struck(2) 44:11 81:19 |
| session(1) 9:13 | | sitting(10) 15:19 16:23 19:18 21:4 22:25 28:15 29:10 34:1 59:10 60:8 | | speak(1) 144:11 | | structure(4) 101:12 104:6 141:24 142:6 |
| set(7) 25:1 28:16 73:9 91:9 100:2 100:3 108:4 | | | | speaker(1) 131:16 | | struggling(1) 11:10 |
| | | situation(17) 44:11 44:19 54:3 54:4 54:9 57:13 69:21 98:13 100:1 101:21 106:7 106:13 115:16 127:14 129:23 132:2 132:5 | | speakerphon(1) 131:1 | | studies(1) 97:9 |
| sets(1) 85:13 | | | | speaking(5) 54:23 66:9 118:20 125:3 | | stuff(4) 18:10 28:25 29:2 122:23 |
| setting(1) 113:22 | | | | speaks(1) 147:9 | | stymie(1) 41:12 |
| settlement(44) 18:24 70:3 73:25 74:19 74:23 76:5 76:10 76:11 76:15 77:1 79:5 79:12 81:3 81:8 81:9 81:15 81:20 81:23 81:24 81:25 82:1 82:18 83:14 83:23 87:7 89:22 92:3 98:9 98:11 100:20 102:17 114:24 116:12 116:20 117:24 120:5 123:5 126:11 130:9 132:1 133:19 135:9 136:14 143:25 | | situations(3) 100:5 127:20 137:5 | | specialists(1) 107:21 | | sua(1) 52:23 |
| | | six(3) 18:13 109:25 111:5 | | specific(1) 109:1 | | sub(1) 63:14 |
| | | sixth(1) 118:14 | | specifically(1) 128:19 | | sub-agreement(1) 57:15 |
| | | sizable(1) 102:3 | | spell(1) 130:5 | | |
| | | size(2) 37:13 41:6 | | spelling(1) 147:23 | | subject(12) 17:21 28:18 33:14 33:23 51:19 54:5 88:5 89:5 120:17 121:1 121:5 140:13 |
| | | skip(1) 116:24 | | spend(4) 8:10 93:2 130:19 131:23 | | |
| settlements(1) 143:10 | | slice(2) 43:1 43:1 | | spent(2) 9:15 113:16 137:3 | | |
| setup(1) 24:12 | | sliding(1) 44:10 | | split(3) 11:12 11:17 44:18 | | submission(2) 57:16 79:3 |
| seven(3) 18:13 74:5 74:6 | | slight(2) 11:12 117:10 | | spoke(4) 94:7 107:19 107:21 139:6 | | submit(4) 29:25 52:5 60:21 72:1 |
| seventh(5) 3:15 10:19 12:3 12:7 118:14 | | slippers(1) 17:9 | | spoken(1) 36:1 | | submitted(5) 37:22 49:10 71:6 71:6 78:19 |
| several(2) 92:9 108:17 123:5 | | slipping(1) 100:24 | | sponsor(2) 134:1 142:3 | | submitting(1) 19:6 34:11 |
| severe(2) 23:12 105:14 | | slow(1) 61:20 | | sponte(1) 52:23 | | subsequent(1) 118:2 |
| shall(2) 63:17 65:7 | | slush(1) 90:4 | | spouse(1) 90:6 | | subset(1) 57:21 |
| shame(1) 55:23 | | small(2) 46:1 107:23 | | spread(1) 89:13 | | substance(1) 143:13 |
| shape(1) 41:6 | | smaller(3) 107:22 108:18 108:21 | | spring(2) 40:14 41:9 | | substantial(1) 81:10 |
| share(9) 73:22 110:2 115:6 115:8 115:13 120:5 120:9 145:1 145:17 | | smirch(1) 101:1 | | square(2) 2:6 3:22 | | substantially(1) 118:21 |
| | | smith(1) 4:13 | | staff(2) 145:25 146:1 | | successful(4) 52:13 53:11 144:19 145:24 |
| | | snyder(1) 148:14 | | stage(2) 94:14 94:14 | | successfully(1) 15:22 |
| sharing(3) 105:5 110:20 146:12 | | social(1) 115:14 | | stand(6) 48:4 83:13 85:3 133:14 144:13 148:4 | | successor(2) 125:22 126:14 |
| she(4) 93:24 131:23 131:23 147:22 | | sold(2) 60:1 133:20 | | | | such(9) 27:13 38:7 42:17 59:6 61:9 81:19 104:6 116:8 134:15 |
| shelley(1) 2:39 | | sole(1) 121:25 | | | | |
| she'll(1) 94:1 | | solely(1) 84:19 | | standard(9) 10:13 21:6 24:12 25:12 26:3 43:18 45:24 69:17 115:20 | | sue(1) 19:8 |
| shifts(1) 74:17 | | solidify(1) 139:5 | | | | sufficient(2) 43:12 43:14 |
| ship(3) 92:21 92:21 128:23 | | solus(1) 6:2 | | | | sufficiently(1) 11:4 |
| short(2) 8:18 36:11 | | solution(6) 17:8 30:4 42:12 91:23 91:24 140:5 | | standing(2) 95:6 113:3 | | suggest(1) 45:12 |
| short-notice(1) 145:22 | | | | standpoint(1) 120:23 | | suggested(2) 40:25 51:14 |
| should(45) 8:22 12:11 12:23 14:3 14:16 14:16 14:20 15:24 16:15 16:17 17:5 22:18 26:3 29:18 29:19 30:21 30:25 31:22 36:13 36:23 41:9 41:17 48:14 52:7 59:3 59:5 59:19 61:4 62:7 68:6 69:5 69:11 69:14 70:20 70:8 71:20 71:21 76:13 91:13 92:20 94:2 102:16 114:1 126:2 | | solutions(1) 54:18 | | stargatt(1) 3:20 | | suggestion(5) 37:25 41:22 42:15 |
| | | solve(2) 34:2 89:5 | | start(3) 9:18 40:21 114:1 | | sum(27) 36:22 87:11 92:2 92:16 93:16 98:2 98:7 98:8 98:16 99:25 100:7 116:9 116:11 117:4 119:13 120:12 120:16 120:15 120:25 121:14 121:16 122:1 126:24 130:23 131:25 132:6 143:13 |
| | | | | started(3) 21:15 82:23 93:9 | | |
| | | | | starting(1) 131:14 | | |
| | | | | state(6) 22:13 58:2 76:23 92:23 116:8 | | |
| | | | | stated(3) 25:2 26:13 137:8 | | |
| | | | | statement(1) 87:1 | | |
| | | | | statements(5) 50:13 60:9 92:1 103:10 103:15 | | |
| shouldn't(1) 11:5 28:10 52:17 62:14 68:18 | | | | | | summarily(1) 12:1 |

| Word | Page:Line |
|---|---|

**summariz**(1) 121:9
**summarized**(1) 116:11
**summer**(1) 56:9
**supervise**(2) 51:16 51:16
**supplemental**(2) 78:18 93:11
**supplementing**(1) 137:12
**support**(17) 24:23 26:6 26:15 26:16 29:11 37:20 37:24 39:8 49:3 51:18 79:5 79:12 79:17 83:14 129:2 143:25 144:4

**suppose**(2) 8:22 24:6
**supposed**(6) 23:8 23:9 59:22 65:18 96:17 128:7

**supposedly**(1) 89:12
**supreme**(3) 12:2 22:1 86:14
**sure**(23) 8:17 8:19 11:15 23:16 23:17 39:25 49:9 57:25 65:18 78:25 88:10 88:20 93:13 96:19 101:3 102:5 104:15 114:18 122:3 125:6 135:23 137:13 140:16

**surprised**(1) 83:25
**survivorship**(1) 90:4
**suspect**(1) 9:17
**suspended**(1) 13:3
**sustain**(1) 124:1
**sutty**(3) 2:37 93:25 114:9
**sutty's**(1) 142:25
**sweet**(1) 45:24
**swift**(1) 37:2
**swiftly**(1) 38:6
**swipes**(1) 102:6
**sworn**(4) 95:6 95:8 113:4 113:5
**system**(3) 28:12 110:16 144:22
**t-bill**(1) 101:23
**table**(2) 41:7 99:1
**tables**(2) 115:11 115:25
**take**(22) 28:11 61:19 62:5 63:20 64:6 69:25 72:11 72:19 84:21 85:7 85:10 87:5 91:18 97:17 99:22 101:7 102:10 113:23 113:25 135:21 143:3 145:6

**taken**(2) 43:11 136:12
**takes**(1) 135:1
**taking**(9) 20:5 33:10 100:25 115:8 116:18 118:9 120:3 120:4 134:15

**talk**(3) 94:24 102:23 103:3
**talked**(8) 14:23 93:6 94:2 94:7 100:9 103:22 106:5 126:24

**talking**(11) 30:5 40:18 50:9 50:10 50:11 51:21 60:9 92:12 117:21 118:18 118:25

**talks**(2) 26:12 143:9
**taper**(1) 104:21
**tara**(1) 4:47
**tax**(89) 84:22 85:11 86:3 86:5 86:9 86:11 86:16 86:20 87:1 87:3 87:10 87:14 87:19 87:22 88:23 88:23 89:19 89:22 91:21 92:13 93:21 94:13 94:24 94:25 99:6 99:13 99:17 101:10 102:12 102:12 104:9 104:10 113:20 113:24 114:2 114:3 115:5 115:7 116:3 116:6 116:7 116:10 116:14 116:18 116:19 116:19 116:22 117:5 117:7 117:9 117:16 117:18 117:21 118:16 118:18 118:25 119:10 120:8 120:22 121:1 121:6 121:9 121:11 121:14 123:1 123:12 123:14 123:15 127:7 127:8 128:18 132:7 134:5 134:12 134:13 134:17 135:1 135:10 135:13 135:14 135:17 135:21 135:22 135:25 136:3 136:15 138:25 140:7 140:9

**tax-free**(4) 87:7 87:9 89:22 91:22
**tax-wise**(1) 89:2
**taxand**(1) 113:15
**taxation**(1) 116:16
**taxed**(2) 87:6 89:15

**taxes**(7) 88:5 88:19 92:2 99:10 104:17 116:8 124:7

**taylor**(2) 3:20 4:28
**team**(1) 100:25
**teamsters**(2) 22:2 27:9
**technical**(1) 47:1
**technically**(1) 53:21
**telephonic**(1) 4:2
**tell**(12) 59:14 65:23 71:11 92:16 93:5 93:7 96:1 96:17 97:4 106:21 107:18 138:24

**ten**(6) 8:13 73:5 73:6 73:8 110:4 110:5
**tends**(1) 99:7
**term**(8) 23:12 24:15 37:6 44:1 45:22 46:2 46:14 95:17

**termination**(6) 74:9 74:16 78:11 79:16 79:17 114:11

**terminations**(1) 46:10
**terms**(19) 26:13 29:15 34:20 41:7 43:25 47:2 88:13 94:11 105:11 105:23 109:2 114:3 124:8 127:16 127:22 128:15 135:13 141:21 142:11

**terrible**(1) 86:15
**terribly**(1) 86:4
**test**(7) 38:3 43:7 45:9 108:6 108:6 108:10 108:11

**testimony**(6) 79:3 81:8 107:16 128:15 134:12 136:8

**testing**(1) 119:5
**texas**(1) 60:2
**than**(16) 8:18 10:1 47:6 66:4 76:6 78:9 82:11 91:13 98:15 98:17 99:4 111:11 115:12 119:12 121:20 146:11

**thank**(103) 9:3 9:7 9:9 9:12 35:23 36:2 36:3 36:6 38:22 38:23 38:24 39:11 39:13 39:16 55:9 55:10 55:14 55:15 61:14 66:5 66:6 67:18 67:18 72:16 72:21 72:23 72:24 73:10 73:11 73:16 75:15 75:15 75:20 75:20 75:24 75:25 77:2 77:2 77:6 77:7 78:23 78:25 80:25 81:1 81:1 83:24 84:10 84:13 84:14 94:25 95:1 95:5 95:9 95:24 96:24 96:24 96:25 97:14 98:24 98:25 109:9 109:9 111:20 111:21 111:23 111:24 112:14 112:19 112:21 112:22 113:6 122:4 122:5 122:8 126:4 126:16 128:1 128:4 128:25 129:1 129:24 132:3 132:12 133:3 133:7 133:13 139:16 141:3 141:4 143:17 144:16 144:22 145:7 145:20 145:24 146:4 146:12 146:14 146:17 147:2 148:3 148:5

**thanks**(2) 73:11 144:6

**that**(301) 8:19 8:20 9:5 9:10 9:15 9:21 10:9 10:18 10:25 11:1 11:3 11:4 11:5 11:11 11:18 11:19 11:19 11:22 11:23 11:24 12:15 12:18 12:20 12:22 12:25 12:25 13:1 13:8 13:13 13:14 13:24 13:25 14:4 14:5 14:9 14:19 14:20 14:25 15:8 15:9 16:1 16:1 16:4 16:13 16:16 16:17 16:18 16:18 16:19 16:22 16:24 17:2 17:7 17:8 17:10 17:10 17:21 18:7 18:14 18:15 18:16 18:17 18:18 18:18 18:19 18:22 18:24 18:25 19:2 19:3 19:3 19:5 19:6 19:14 19:15 19:19 19:22 19:23 20:2 20:4 20:5 20:8 20:9 20:10 20:13 20:14 20:15 20:23 21:1 21:7 21:15 21:24 22:6 22:6 22:11 22:13 22:14 22:17 22:19 22:22 23:7 23:8 23:9 23:16 23:17 23:18 23:19 23:19 23:24 24:3 24:7 24:12 24:14 24:15 24:16 24:17 25:1 25:5 25:10 25:12 25:12 25:15 25:17 25:18 25:24 25:26 26:5 26:8 26:12 26:13 26:14 26:17 26:19 26:20 26:23 27:2 27:4 27:5 27:7 27:11 27:13 27:13 27:14 27:21 27:21 27:23 27:24 27:25 28:3 28:12 28:13 28:17 29:1 29:2 29:7 29:8 29:10 29:13 29:15 29:17 29:17 29:19 29:22 29:25 30:3 30:4 30:6 30:11 30:13 30:19 30:20 30:25 31:1 31:2 31:3 31:10 31:11 31:15 31:16 31:24 31:25 31:25 32:6 33:2 33:2 33:8 34:5 34:5 34:12 34:13 34:17 34:21 34:21 34:23 34:23 34:24 35:2 35:2 35:3 35:9 35:12 35:13 35:13 35:19 36:13 37:2 37:2 37:4 37:5 37:6 37:7 37:8 37:9 37:20 37:23 37:23 37:25 38:2 38:8 38:11 38:13 38:19 39:6 39:10 39:11 39:18 40:2 40:8 40:13 40:14 40:19 41:1 41:4 41:5 41:7 41:18 41:22 41:23 41:24 41:25 42:4 42:8 42:9 42:15 42:19 42:19 42:20 43:2 43:2 43:9 43:10 43:12 43:13 43:14 43:18 43:21 43:25 44:3 44:13 44:15 44:15 44:17 44:17 45:1 45:6 45:11 45:15 45:20 45:21 45:23 46:1 46:2 46:3 46:4 46:4 46:5 46:7 46:10 46:11 46:12 46:13

**that**(301) 46:15 46:17 46:18 46:23 47:2 47:3 47:4 47:5 47:10 47:14 47:19 47:19 47:20 48:8 48:10 48:10 48:15 48:17 48:18 48:22 48:23 48:23 49:6 49:10 49:14 49:21 49:23 49:24 50:3 50:4 50:5 50:7 50:13 50:14 50:16 50:17 50:21 50:22 50:23 51:3 51:4 51:5 51:8 51:10 51:14 51:18 52:2 52:4 52:7 52:9 52:19 52:22 52:24 53:4 53:7 53:8 53:10 53:12 53:15 54:1 54:2 54:3 54:5 54:5 54:6 54:13 54:22 55:1 55:23 55:23 56:9 56:13 56:22 56:25 57:3 57:7 57:13 57:14 57:14 57:20 57:24 58:2 58:3 58:4 58:4 58:5 58:5 58:6 58:7 58:9 58:12 58:13 58:13 58:17 58:18 58:9 59:11 59:15 59:17 59:21 59:22 59:22 59:23 60:1 60:5 60:10 60:13 60:17 60:18 60:19 60:22 60:22 60:24 60:25 61:2 61:4 61:6 61:10 61:12 61:17 61:23 61:24 62:3 62:8 62:8 62:15 62:19 62:19 63:1 63:4 63:20 63:21 64:8 65:9 65:21 66:23 67:2 67:2 67:6 67:6 67:10 67:11 67:13 67:15 68:8 68:14 68:16 68:17 68:21 68:22 69:3 69:4 69:4 69:5 70:1 70:6 70:8 70:9 70:17 70:23 70:25 71:5 71:6 71:7 71:10 71:11 71:11 71:20 71:25 72:9 72:10 72:12 74:7 74:11 74:16 74:17 74:25 75:7 75:12 76:4 76:8 76:9 76:11 76:13 76:13 76:23 76:24 76:25 77:20 77:22 77:23 78:11 78:14 78:16 78:18 79:4 79:15 79:17 79:19 79:23 79:25 80:5 80:11 80:12 80:20 81:3 81:8 81:11 81:20 82:4 82:10 82:11 82:15 82:18 82:19 82:23 83:4 83:7 83:7 83:10 83:10 83:12 83:19 83:22 84:8 84:16 84:20 84:22 84:25 85:1 85:18 85:23 85:24 85:25 86:3 86:15 86:20 86:21 87:1 87:2 87:5 87:9 87:16 87:25 88:5 88:9 88:13 88:21 88:25 89:2 89:3 89:5 89:8 89:10 89:13 90:1 90:5 90:6 90:11 90:16 90:16 90:25 91:2 91:6 91:8 91:10 91:12 91:13 91:18 91:23 91:24 92:1 92:4 92:4 92:5 92:6 92:7 92:8 92:9 92:11 92:16 93:1 93:2 93:7 93:10 93:10 93:18 93:19 93:22 94:2 94:5 94:9 94:14 94:23 95:12 95:12 95:17 95:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(223) 96:15 97:12 98:1 98:12 98:12 98:13 98:22 98:22 99:1 99:12 99:14 100:1 100:4 100:8 100:17 100:19 101:4 101:5 101:7 101:8 101:11 101:15 101:18 102:2 102:5 102:9 102:9 102:10 102:22 103:1 103:3 103:6 103:7 103:14 103:17 103:17 104:3 104:3 104:7 104:11 104:15 104:15 104:21 104:22 105:13 105:16 107:6 107:8 107:10 107:12 107:13 107:13 107:16 107:18 108:15 108:20 108:22 108:25 109:1 109:14 110:4 111:4 111:9 111:11 111:14 112:5 112:8 112:10 112:20 114:6 114:10 114:16 114:21 115:1 115:10 115:13 115:1 115:15 115:20 116:9 116:13 116:15 116:24 117:3 117:8 117:11 117:15 117:25 118:1 118:2 118:5 118:6 118:12 118:13 118:15 118:15 118:21 118:23 118:25 119: 119:10 119:19 119:20 119:22 120:1 120:18 121:11 121:13 121:13 121:19 121:24 122:22 122:23 123:4 123:4 123:8 123:17 123:21 123:23 123:24 124:9 124:1 124:20 125:1 125:4 125:4 125:9 125:13 125:13 125:15 125:18 126:4 126:5 126:6 126:13 127:4 127:4 127:10 127:16 128:8 128:9 128:15 128:17 128:17 129:7 129:7 129:13 129:19 129:21 129:25 130:14 130:16 131:9 132:5 132:9 132:19 132:22 133:1 133:6 133:17 133:25 134:4 134:10 134:12 135:2 135:2 135:3 135:6 135:18 135:22 136:6 136:7 136:7 136:9 136:9 136:9 136:16 136:25 137:1 137:7 137:12 137:13 137:14 137:16 137:19 137:19 138: 138:13 138:14 138:17 138:19 139:3 139: 139:7 139:7 139:9 139:13 139:16 139:21 140:2 140:7 140:8 140:18 141:2 142:2 142:2 142:8 142:12 143:16 144:5 144:8 144:19 145:1 145:8 145:10 146:11 146:12 146:16 147:4 147:15 147:19 147:20 148:9 | | **the**(301) 1:1 1:2 1:19 2:4 2:28 3:8 4:4 4:23 8:2 8:3 8:6 8:10 8:12 8:13 8:14 8:14 8:15 8:22 8:23 8:23 9:1 9:1 9:4 9:7 9:10 9:12 9:17 9:19 9:20 9:21 10:3 10:5 10:9 10:9 10:10 10:11 10:12 10:13 10:15 10:17 10:18 10:23 10:24 10:25 10:25 11:1 11:2 11:3 11:4 11:8 11:9 11:10 11:10 11:11 11:12 11:13 11:14 11:15 11:17 11:17 11:17 11:18 11:19 11:21 11:24 11:24 11:25 11:25 12:5 12:9 12:10 12:12 12:14 12:14 12:15 12:15 12:16 12:17 12:17 12:18 12:20 12:20 12:21 12:22 12:22 12:23 12:23 12:24 13:1 13:3 13:5 13:8 13:8 13:9 13:10 13:10 13:12 13:12 13:13 13:20 13:23 13:24 13:25 14:4 14:4 14:7 14:10 14:11 14:13 14:14 14:16 14:17 14:18 14:19 14:20 14:20 14:22 14:23 14:25 14:25 15:1 15:2 15:3 15:4 15:5 15:6 15:7 15:7 15:7 15:8 15:9 15:11 15:14 15:16 15:18 15:19 15:20 15:21 15:22 15:23 15:25 16:2 16:4 16:4 16:7 16:8 16:10 16:12 16:14 16:15 16:18 16:18 16:21 16:22 16:22 16:23 17:7 17:10 17:1 17:14 17:16 17:17 17:18 17:19 17:21 17:23 17:25 18:2 18:2 18:4 18:6 18:10 18:12 18:14 18:21 18:23 18:23 18:24 18:25 19:2 19:4 19:11 19:17 19:19 19:20 19:20 19:21 19:21 19:21 19:23 19:23 19:24 20:1 20:3 20:3 20:4 20:7 20:8 20:10 20:11 20:18 20:24 21:1 21:2 21:3 21:5 21:6 21:7 21:9 21:11 21:11 21:13 21:15 21:15 21:18 21:18 21:19 21:21 21:21 21:22 22:1 22:3 22:3 22:5 22:13 22:25 23:3 23:4 23:8 23:8 23:9 23:9 23:11 23:11 23:17 23:18 23:20 23:20 23:20 23:23 23:4 24:4 24:4 24:4 24:8 24:9 24:9 24:10 24:14 24:14 24:14 24:15 24:15 24:21 24:21 24:22 24:22 24:22 24:24 24:25 25:3 25:4 25:6 25:9 25:14 25:16 25:17 25:19 25:20 25:20 25:21 25:23 25:24 26:1 26:1 26:2 26:3 26:4 26:5 26:5 26:6 26:6 26:6 26:8 26:10 26:11 26:12 26:15 26:17 26:17 26:18 26:18 26:19 | | **the**(301) 26:22 26:23 26:24 26:24 26:24 27:1 27:5 27:6 27:9 27:12 27:13 27:13 27:15 27:17 27:20 27:20 27:22 27:24 27:24 27:24 27:25 27:25 28:2 28:3 28:6 28:7 28:11 28:12 28:14 28:17 28:17 28:19 28:20 28:22 28:25 29:3 29:4 29:5 29:6 29:10 29:11 29:14 29:16 29:16 29:18 29:18 29:19 29:19 29:21 29:24 29:25 30:2 30:3 30:5 30:6 30:7 30:7 30:8 30:10 30:12 30:13 30:15 30:17 30:17 30:18 30:22 30:22 30:23 30:23 30:24 30:24 31:3 31:4 31:4 31:6 31:9 31:11 31:12 31:13 31:14 31:14 31:15 31:16 31:18 31:19 31:21 31:22 32: 32:3 32:4 32:5 32:7 32:9 32:10 32:13 32:16 32:18 32:22 32:22 32:23 32:25 33:3 33:3 33:4 33:4 33:5 33:5 33:8 33:10 33:13 33:14 33:15 33:16 33:16 33:19 33:21 33:22 33:23 33:24 33:24 33:25 34:5 34:12 34:15 34:25 35:1 35:2 35:4 35:7 35:8 35:10 35:11 35:12 35:16 35:17 35:25 36:12 36:14 36:15 36:20 36:21 36:25 37:2 37:3 37:4 37:5 37:9 37:10 37:11 37:12 37:12 37:15 37:17 37:18 37:19 37:20 37:20 37:21 37:23 37:24 37:25 37:25 38:3 38:4 38:6 38:9 38:10 38:10 38:14 38:15 38:15 38:17 38:20 38:21 38:22 38:24 38:24 39:2 39:3 39:4 39:6 39:7 39:8 39:8 39:9 39:9 39:11 39:14 39:19 39:21 39:23 39:25 40:2 40:4 40:6 40:10 40:11 40:12 40:12 40:14 40:16 40:19 40:20 40:20 40:21 40:21 40:22 40:23 40:23 41:6 41:7 41:9 41:11 41:12 41:12 41:13 41:13 41:20 41:21 41:24 41:25 42:1 42:3 42:3 42:4 42:8 42:9 42:11 42:14 42:18 42:24 43:1 43:5 43:5 43:8 43:10 43:15 43:15 43:16 43:20 43:21 43:22 43:24 43:24 43:25 44:1 44:1 44:2 44:4 44:4 44:5 44:7 44:8 44:10 44:12 44:12 44:12 44:13 44:13 44:14 44:17 44:17 44:18 44:18 44:19 44:20 44:24 44:24 44:24 44:24 44:25 44:25 45:2 45:3 45:4 45:5 45:5 45:5 45:7 45:8 45:10 45:12 45:12 | | **the**(301) 45:15 45:15 45:17 45:20 45:21 46:2 46:2 46:4 46:5 46:6 46:7 46:11 46:14 46:15 46:16 46:18 46:20 46:25 47: 47:2 47:9 47:11 47:12 47:16 47:17 47:19 47:19 47:21 47:22 47:23 47:24 47:25 48: 48:2 48:3 48:4 48:5 48:7 48:9 48:10 48:10 48:12 48:13 48:16 48:18 48:19 48:22 48:24 48:25 49:1 49:4 49:5 49:6 49:9 49:10 49:11 49:13 49:15 49:16 49:18 49:19 49:23 49:24 49:25 50:2 50:2 50:4 50:5 50:7 50:13 50:14 50:14 50:15 50:17 50:17 50:17 50:23 51:5 51:6 51:9 51:10 51:12 51:15 51:17 51:18 51:19 51:22 51:25 52:2 52:2 52:3 52:5 52:5 52:7 52:7 52:8 52:11 52:13 52:15 52:18 52:18 52:19 52:20 52:22 52:23 53:1 53:3 53:4 53:5 53:6 53:6 53:7 53:10 53:12 53:14 53:15 53:15 53:16 53:17 53:19 53:19 53:21 53:21 53:23 54:2 54:5 54:6 54:10 54:13 54:15 54:16 54:17 54:21 54:23 55:2 55:5 55:7 55:10 55:14 55:16 55:17 55:20 55:20 55:20 55:21 55:22 55:25 56:2 56:2 56:3 56:5 56:7 56:8 56:9 56:10 56:15 56:20 56:21 56:25 57:6 57:6 57:9 57:9 57:10 57:10 57:14 57:16 57:18 57:22 57:25 58:2 58:3 58:5 58:8 58:10 58:12 58:15 58:17 58:19 58:21 58:21 58:21 58:23 59:2 59:6 59:7 59:12 59:13 59:15 59:15 59:18 59:20 59:21 59:23 60:1 60:4 60:5 60:7 60:9 60:12 60:16 60:16 60:17 60:18 60:21 60:24 61: 61:7 61:8 61:11 61:14 61:16 61:16 61:18 61:20 61:21 61:21 61:22 61:24 61:25 62: 62:2 62:3 62:6 62:6 62:6 62:8 62:9 62:10 62:13 62:14 62:16 62:17 62:18 62:20 62:21 62:23 63:1 63:2 63:7 63:7 63:7 63:9 63:13 63:16 63:16 63:18 63:19 63:21 63:21 63:21 63:25 64:1 64:3 64:3 64:5 64:7 64:8 64:10 64:12 64:15 65:6 65:6 65:8 65:12 65:12 65:13 65:14 65:15 65:17 65:19 65:21 65:22 65:24 66:2 66:6 66:12 66:13 66:14 66:15 66:18 66:20 66:20 66:20 66:21 66:22 66:22 66:24 66:24 |
| **that's**(77) 8:15 10:3 15:25 16:1 17:25 20:9 21:4 21:6 21:13 23:14 24:6 25:8 26:9 26:10 30:23 31:23 32:9 33:24 40:12 40:17 42:14 42:16 43:11 43:20 44:8 45:11 45:23 46:16 48:9 48:17 50:9 51:7 51:20 52:6 53:1 53:14 54:17 54:19 55:7 55:12 55:13 60:11 60:14 61:1 62:7 62:21 63:10 63:24 64:1 64:1 65:3 65:22 66:14 66:15 67:18 68:1 68:19 69:6 71:2 125:2 125:24 125:25 125:25 127:1 128:8 133:10 133:22 134:6 134:21 134:21 134:22 135:20 137:13 137:14 140:15 143:13 146:15 | | | | | | | |
| **that's**(44) 76:16 76:22 85:19 85:21 85:24 86:6 86:8 86:12 87:12 89:16 89:21 91:10 91:11 92:18 92:22 94:17 95:20 95:21 95:22 96:5 96:18 98:24 101:2 102:15 102:19 104:15 105:18 105:20 105:21 108:19 109:8 110:15 114:7 119:3 119:4 119:14 119:14 120:7 121:1 122:18 122:23 123:8 123:13 123:22 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) | 66:25 66:25 67:1 67:3 67:4 67:5 67:8 67:9 67:9 67:10 67:11 67:12 67:14 67:15 67:15 67:16 67:16 67:17 67:19 67:21 67:22 68:1 68:3 68:3 68:4 68:5 68:5 68:6 68:7 68:8 68:8 68:11 68:16 68:17 68:18 68:19 68:20 69:1 69:3 69:4 69:4 69:6 69:8 69:10 69:11 69:13 69:13 69:17 69:17 69:18 69:22 69:25 70:1 70:2 70:3 70:5 70:6 70:6 70:7 70:8 70:9 70:9 70:11 70:12 70:14 70:15 70:16 70:16 70:17 70:19 70:20 70:21 70:22 70:24 71:1 71:3 71:3 71:5 71:8 71:12 71:13 71:13 71:17 71:19 71:20 71:20 71:21 71:22 72:2 72:6 72:6 72:7 72:8 72:9 72:9 72:11 72:14 72:16 72:18 72:19 72:20 73:2 73:4 73:8 73:11 73:13 73:14 73:16 73:19 73:21 73:22 73:24 73:25 74:1 74:3 74:3 74:7 74:8 74:10 74:11 74:14 74:16 74:16 74:17 74:19 74:20 74:21 74:23 74:23 75:1 75:1 75:3 75:5 75:6 75:6 75:9 75:14 75:16 75:19 75:20 75:21 75:23 75:25 76:1 76:2 76:3 76:6 76:7 76:8 76:8 76:9 76:10 76:11 76:14 76:16 76:20 76:22 76:22 76:23 77:1 77:3 77:6 77:8 77:12 77:14 77:14 77:15 77:19 77:21 77:23 77:24 77:24 77:25 78:1 78:2 78:3 78:5 78:7 78:8 78:10 78:11 78:11 78:13 78:14 78:15 78:15 78:17 78:19 78:21 78:23 78:25 78:25 79:2 79:3 79:5 79:8 79:10 79:12 79:12 79:14 79:15 79:15 79:18 79:20 79:21 79:22 80:1 80:2 80:3 80:11 80:13 80:14 80:17 80:20 80:23 80:24 81:1 81:3 81:3 81:4 81:4 81:5 81:6 81:6 81:8 81:8 81:8 81:10 81:11 81:13 81:14 81:14 81:15 81:15 81:16 81:17 81:19 81:19 81:22 81:22 81:23 81:24 81:24 81:25 81:25 82:1 82:5 82:7 82:7 82:9 82:9 82:10 82:11 82:12 82:12 82:13 82:13 82:15 82:15 82:16 82:17 82:17 82:17 82:19 82:20 82:22 82:22 82:25 83:1 83:2 83:3 83:4 83:6 83:6 83:10 83:11 83:12 83:13 83:14 83:15 83:15 83:16 83:16 83:17 83:18 83:21 83:22 83:22 83:25 84:1 84:5 84:8 84:11 84:12 84:16 84:16 84:17 | **the**(301) | 84:18 84:21 84:21 84:22 84:24 84:25 85:1 85:3 85:7 85:7 85:8 85:9 85:11 85:11 85:16 85:18 85:19 85:19 85:21 85:24 85:25 86:2 86:3 86:5 86:6 86:8 86:11 86:12 86:14 86:17 86:18 86:19 86:20 86:21 86:23 86:23 87:1 87:3 87:3 87:5 87:5 87:7 87:12 87:13 87:17 87:24 87:25 87:25 88:1 88:3 88:5 88:6 88:6 88:8 88:9 88:11 88:12 88:15 88:16 88:17 88:20 88:21 88:22 88:23 88:24 88:25 89:2 89:7 89:8 89:9 89:9 89:17 89:18 89:20 89:20 89:23 89:23 89:23 89:24 90:2 90:5 90:7 90:9 90:10 90:11 90:11 90:12 90:13 90:14 90:15 90:18 90:19 90:22 90:24 91:1 91:3 91:5 91:8 91:10 91:12 91:14 91:16 91:17 91:17 91:18 91:20 91:20 91:21 91:22 91:23 91:23 91:24 92:2 92:3 92:4 92:5 92:7 92:7 92:8 92:18 92:20 92:21 92:21 92:21 92:22 92:23 92:24 93:1 93:9 93:9 93:13 93:15 93:19 93:21 93:21 93:21 94:2 94:3 94:4 94:11 94:11 94:13 94:13 94:14 94:15 94:16 94:19 94:19 94:21 94:24 94:25 95:1 95:3 95:3 95:5 95:9 95:12 95:13 95:15 95:16 95:19 95:20 95:24 96:1 96:2 96:4 96:8 96:11 96:12 96:13 96:14 96:15 96:18 96:20 96:20 96:21 96:21 96:24 96:24 97:7 97:7 97:8 97:13 97:14 97:17 97:19 97:25 98:1 98:2 98:2 98:3 98:5 98:6 98:8 98:9 98:10 98:11 98:11 98:12 98:19 98:24 99:1 99:2 99:4 99:5 99:6 99:6 99:7 99:10 99:13 99:13 99:15 99:16 99:16 99:19 99:22 99:22 99:23 99:24 99:25 99:25 100:4 100:5 100:6 100:6 100:7 100:7 100:8 100:8 100:8 100:10 100:11 100:11 100:12 100:12 100:13 100:13 100:16 100:18 100:20 100:22 100:24 100:24 100:25 101:1 101:3 101:4 101:5 101:6 101:8 101:8 101:10 101:11 101:13 101:14 101:15 101:15 101:16 101:18 101:23 101:24 101:25 102:5 102:10 102:13 102:1 102:16 102:18 102:19 102:20 102:22 102:23 103:2 103:3 103:7 103:10 103:10 103:10 103:11 103:12 103:15 103:17 103:19 103:21 104:1 104:3 104:4 104:8 104:12 104:12 104:15 104:18 104:23 105: 105:6 105:6 105:13 105:15 105:16 | **the**(301) | 105:20 105:21 105:23 105:24 106:5 106:6 106:6 106:7 106:8 106:10 106:10 106:11 106:11 106:14 106:18 106:21 106:22 106:23 107:2 107:3 107:4 107:4 107:7 107:9 107:13 107:14 107:17 107:20 107:24 107:25 108:2 108:9 109:1 109:2 109:3 109:3 109:5 109:6 109:7 109:25 110:8 110:10 110:11 110:12 110:13 110:14 110:15 110:18 110:20 110:21 110:21 110:22 111:1 111:7 111:9 111:9 111:13 111:16 111:18 111:20 111:22 111:24 112:1 112:3 112:4 112:7 112:8 112:10 112:12 112:14 112:17 112:19 112:22 112:25 113:3 113:6 113:17 113:18 113:22 113:22 113:23 113:24 114:2 114:3 114:6 114:11 114:12 114:15 114:18 114:2 114:22 114:24 114:25 115:3 115:7 115:8 115:10 115:12 115:13 115:17 115:18 115:20 115:22 115:23 115:23 115:25 116: 116:3 116:3 116:9 116:13 116:14 116:15 116:16 116:17 116:18 116:18 116:18 116:20 116:21 116:23 116:24 116:24 116:25 117:1 117:2 117:2 117:3 117:3 117:4 117:5 117:6 117:7 117:8 117:9 117:11 117:11 117:12 117:12 117:13 117:14 117:16 117:17 117:19 117:20 117:21 117:22 117:22 117:23 117:24 118:1 118:2 118:3 118:4 118:5 118:8 118:13 118:15 118:16 118:16 118:18 118:19 118:19 118:21 118:24 118:25 119:1 119:4 119:7 119:9 119:9 119:10 119:13 119:16 119:17 119:19 119:20 119:21 119:23 119:23 119:24 119:24 119:24 119:25 120:1 120:2 120:3 120:5 120:5 120:7 120:7 120:8 120:8 120:9 120:9 120:10 120:11 120:12 120:12 120:14 120:14 120:15 120:15 120:16 120:16 120:16 120:17 120:17 120:18 120:18 120:19 120:19 120:23 120:23 120:25 120:25 121:1 121:2 121:2 121:3 121:4 121:4 121:5 121:7 121:9 121:9 121:11 121:12 121:13 121:14 121:16 121:17 121:19 121:21 122:3 122:5 122:6 122:21 122:25 123:3 123:5 123:7 123:9 123:18 123:20 123:21 123:22 124:1 124:5 124:6 124:8 124:8 124:9 124:10 124:11 124:11 124:14 124:17 124:19 124:20 124:23 124:24 125:1 125:4 125:5 125:6 125:8 125:9 125:10 125:10 125:13 125:16 125:19 125:21 125:24 125:25 126:6 126:8 126:11 126:11 126:15 126:17 126:22 126:24 127:2 127:4 127:6 | **the**(288) | 127:10 127:14 127:14 127:19 127:21 127:22 128:1 128:5 128:11 128:14 128:16 128:18 128:20 128:23 129:3 129:6 129:8 129:9 129:12 129:13 129:14 129:15 129:17 129:18 129:21 129:21 129:22 129:22 129:24 130:1 130:4 130:9 130:9 130:11 130:12 130:13 130:18 130:22 130:23 130:24 131:4 131:6 131:9 131:12 131:14 131:15 131:18 131:21 132:1 132:2 132:3 132:4 132:5 132:7 132:7 132:8 132:9 132:13 132:16 132:18 132:23 133:1 132:2 133:10 133:15 133:16 133:18 133:19 133:20 133:20 133:21 133:21 133:22 133:23 133:24 133:24 133:25 134:1 134:2 134:4 134:5 134:6 134:6 134:8 134:10 134:11 134:11 134:15 134:16 134:18 134:19 134:20 134:23 134:24 134:25 135:3 135:4 135:8 135:9 135:11 135:14 135:15 135:16 135:19 135:21 135:24 135:25 136:2 136:3 136:5 136:6 136:7 136:8 136:8 136:10 136:10 136:12 136:14 136:16 136:16 136:16 136:18 136:19 136:21 136:24 136:25 137:4 137:4 137:9 137:10 137:18 137:19 137:20 137:20 137:20 137:20 137:21 137:25 138:1 138:3 138:3 138:4 138:5 138:6 138:10 138:12 138:16 138:20 138:22 138:24 138:24 138:25 139:1 139:2 139:4 139:5 139:5 139:6 139:6 139:7 139:8 139:9 139:9 139:10 139:12 139:15 139:19 139:20 139:21 139:23 139:24 140:2 140:3 140:7 140:8 140:11 140:11 140:12 140:12 140:16 140:18 140:20 140:22 141:2 141:4 141:9 141:9 141:14 141:16 141:19 141:20 141:23 141:24 141:25 141:25 142:5 142:2 142:3 142:3 142:4 142:5 142:7 142:8 142:10 142:11 142:12 142:13 142:14 142:14 142:15 142:16 142:17 142:19 142:19 142:20 142:21 142:23 142:24 143:1 143:4 143:4 143:5 143:6 143:8 143:9 143:11 143:13 143:13 143:15 143:15 143:15 143:16 143:19 143:22 143:23 143:24 143:25 143:25 144:1 144:4 144:4 144:4 144:5 144:7 144:7 144:9 144:12 144:15 144:17 144:20 144:20 144:20 144:22 144:24 145:1 145:2 145:5 145:10 145:14 145:14 145:17 145:19 145:20 145:23 146:1 146:9 146:12 146:14 146:18 146:20 146:22 147:3 147:5 147:7 147:9 147:12 147:13 147:17 147:19 147:24 148:1 148:4 148:6 148:9 148:10 148:10 148:11 |
| | | | | | | **their**(54) | 14:5 14:9 14:10 14:11 14:14 15:21 20:11 21:2 28:18 28:21 28:22 29:5 30:13 34:8 35:1 35:11 38:10 40:22 48:11 49:2 49:3 52:19 54:14 60:16 68:16 68:22 71:11 71:24 75:21 82:15 83:14 83:20 87:11 101:17 102:4 102:10 103:24 104:17 107:7 115:8 115:11 115:15 116:5 117:6 117:7 117:13 118:9 123:14 123:15 123:15 123:16 129:9 133:25 146:4 |
| | | | | | | **theirs**(1) | 109:24 |
| | | | | | | **them**(41) | 8:21 15:23 20:17 23:16 28:22 29:6 29:8 31:12 35:9 35:25 38:13 62:5 62:23 75:2 75:5 80:11 83:10 85:3 85:4 85:12 86:2 86:23 86:25 87:8 89:24 92:2 92:16 99:5 99:9 99:9 99:10 101:20 101:21 107:19 109:23 124:22 134:13 134:14 137:11 137:15 138:3 |
| | | | | | | **theme**(1) | 16:1 |
| | | | | | | **themselves**(2) | 34:11 115:20 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**then**(67) 9:2 12:1 12:17 17:5 19:11 23:7 26:6 31:1 31:4 32:13 35:8 47:13 48:13 48:17 53:20 65:1 65:1 66:4 66:11 67:5 69:6 69:7 72:1 79:7 80:20 84:15 84:25 85:2 85:9 87:2 87:9 87:15 87:20 89:2 89:17 91:9 91:19 92:9 93:4 93:8 93:19 93:20 94:7 94:23 97:25 99:6 103:2 107:9 108:7 110:18 114:3 116:5 117:12 120:8 120:10 120:22 122:1 122:2 124:11 127:6 127:9 129:15 130:15 139:24 140:12 142:1 143:15

**theories**(1) 29:2
**theory**(4) 15:21 60:17 89:18 89:18

**there**(117) 11:12 11:18 13:13 14:2 14:25 14:25 18:16 18:16 18:17 22:8 22:9 22:11 24:21 25:18 25:23 26:4 26:15 26:16 27:7 27:10 27:10 27:16 27:23 28:3 30:25 31:1 31:3 31:24 32:18 33:2 33:11 33:15 33:18 34:13 35:5 36:15 36:17 38:5 38:7 41:5 42:20 43:13 43:23 44:10 44:14 45:20 45:22 45:25 46:9 47:3 47:13 47:18 47:21 48:2 49:15 49:25 50:21 51:14 52:17 57:6 58:12 59:3 59:5 59:25 62:12 65:23 66:23 67:1 71:19 75:8 75:10 78:16 79:4 86:4 87:2 87:17 87:17 89:20 90:19 91:23 93:1 94:8 95:11 98:13 102:5 102:9 104:19 105:25 106:10 106:16 108:13 109:6 109:22 116:15 118:6 118:22 123:5 126:6 126:8 126:19 126:25 127:2 127:20 127:23 129:8 134:12 137:22 138:16 139:1 139:1 141:11 142:1 142:15 145:22 145:25 147:14

**there'll**(1) 124:16
**there's**(70) 8:23 8:25 11:1 11:8 13:8 13:17 13:19 14:2 15:12 15:13 15:13 15:15 15:17 17:9 17:20 17:20 19:1 20:25 23:6 24:16 25:22 27:5 27:18 28:9 29:15 29:22 30:4 31:16 31:23 32:1 32:3 32:17 32:19 32:21 33:11 33:12 34:16 34:22 35:19 35:24 40:23 41:23 42:14 42:15 47:13 53:12 54:3 58:1 58:25 59:11 59:21 60:14 60:15 60:18 60:19 60:20 61:11 64:19 65:9 65:10 65:20 66:9 67:12 67:17 69:12 71:9 71:10 127:2 128:9 142:19

**therefore**(8) 13:10 88:4 89:5 117:5 127:7 130:20 131:24 132:8

**there'd**(1) 104:20
**there's**(16) 78:6 78:7 78:8 86:9 90:3 90:21 90:22 90:23 97:25 104:10 105:17 108:25 110:17 110:17 112:1 120:22

**these**(51) 9:11 12:8 15:9 20:4 20:5 20:13 20:17 21:12 21:21 23:10 24:3 35:6 46:12 49:17 50:7 51:16 58:16 78:17 81:17 87:18 87:20 87:23 88:13 98:1 99:3 99:21 100:5 101:9 102:14 105:4 105:8 105:12 105:15 109:22 110:15 114:2 114:10 115:1 120:13 121:11 121:19 127:2 128:19 134:17 134:13 134:13 135:9 146:24 144:8 144:18 145:13

**they**(136) 12:9 14:6 14:12 14:13 14:20 15:25 16:24 16:25 20:11 21:1 22:4 23:21 29:7 33:8 33:8 33:9 34:10 35:1 35:2 38:11 40:22 40:23 41:4 41:5 41:6 46:4 46:5 46:7 46:8 46:12 46:14 47:21 47:22 48:12 48:14 48:25 49:3 49:5 49:19 49:20 52:16 60:17 60:22 60:23 60:24 61:7 63:15 67:12 67:14 67:15 68:14 68:14 68:21 69:5 70:8 70:11 70:17 71:23 75:7 75:21 82:12 82:16 82:18 83:18 83:19 85:25 86:10 86:12 87:6 87:13 87:24 89:14 89:25 90:7 90:12 91:18 92:11 93:6 93:6 93:8 93:12 94:12 95:3 95:17 96:20 98:15 101:17 101:19 102:10 103:7 104:12 104:13 104:22 105:3 105:22 105:22 105:23 106:9 106:1 106:19 108:1 108:3 108:7 108:17 109:22 110:16 110:18 110:18 111:3 114:13 115:16 115:19 115:20 117:6 121:2 122:25 123:1 123:17 124:11 125:9 126:7 127:17 127:17 129:18 134:8 134:14 135:16 136:9 137:10 139:7 140:8 140:12 140:23 143:6 146:2 146:2

**they'll**(1) 124:14
**they're**(63) 33:10 33:13 35:13 53:8 57:7 72:4 133:18 146:3

**they've**(9) 16:2 34:8 34:9 60:14 71:11 124:20 128:17 128:17 133:20

**they'd**(1) 102:11
**they'll**(2) 85:13 102:4
**they're**(18) 75:7 80:15 80:17 85:4 90:16 99:8 101:10 105:10 108:12 110:21 111:13 112:11 112:12 112:15 112:15 121:3 122:19 122:20

**they've**(3) 80:7 80:11 122:23
**thing**(13) 15:25 16:2 21:1 50:13 52:22 60:11 68:17 79:22 100:4 100:17 115:18 141:5 147:13

**things**(31) 16:14 16:15 17:15 32:1 35:6 40:3 41:17 41:22 41:23 43:3 46:11 49:22 53:24 54:11 57:2 58:9 59:11 60:1 62:11 65:9 89:2 100:18 101:8 103:11 105:8 108:15 123:9 135:6 136:25 137:4 137:9

**think**(101) 8:10 12:25 14:4 14:23 18:16 19:13 23:16 24:8 24:11 29:15 29:23 31:23 32:6 34:3 34:22 35:1 35:13 35:21 36:15 36:17 38:18 41:17 42:13 44:17 45:8 47:9 49:18 49:18 50:12 50:21 50:23 53:1 53:4 53:22 54:8 55:25 56:11 56:22 57:11 58:1 58:7 59:2 60:19 63:10 68:3 68:10 68:13 68:21 70:4 70:11 71:2 72:14 74:13 79:6 80:10 80:23 81:14 81:25 82:16 82:23 83:19 83:16 84:20 85:1 85:3 85:17 85:21 90:25 91:8 93:21 94:18 100:3 101:5 103:1 106:1 106:22 107:5 108:24 109:2 113:10 119:19 121:23 123:7 123:21 124:1 127:1 127:17 129:7 129:14 131:16 133:16 134:10 134:22 136:7 137:25 140:19 141:16 143:1 144:5 145:16

**thinking**(1) 55:23
**thinks**(1) 19:13
**third**(38) 9:20 9:21 11:13 12:17 19:20 26:1 26:5 28:12 29:20 30:7 31:19 31:22 35:2 35:7 35:12 38:6 38:15 43:6 44:25 45:8 53:3 60:24 61:18 62:12 62:4 62:8 63:19 63:25 67:5 67:14 68:6 69:13 70:6 70:8 70:9 70:20 98:11 100:8

**third-party**(5) 89:4 90:1 90:17 105:2

**this**(214) 9:18 11:8 11:11 11:12 11:23 12:16 12:21 13:4 13:14 13:25 14:8 15:24 16:2 17:5 17:8 18:8 18:23 19:3 19:4 19:12 19:14 19:15 21:14 21:16 21:19 21:21 22:14 23:15 24:12 26:20 27:17 29:12 29:17 29:23 31:7 31:8 34:4 34:20 34:22 34:24 35:6 35:12 36:22 37:3 37:12 37:21 38:7 38:8 39:9 40:4 41:10 41:15 41:16 41:25 42:6 42:14 43:2 44:2 44:11 44:12 44:19 45:16 45:18 45:19 46:21 46:24 47:5 47:14 48:14 48:19 48:23 49:7 49:12 49:19 50:20 54:3 51:3 51:14 51:18 52:12 52:21 52:24 53:2 53:14 53:20 54:9 55:23 57:8 57:13 57:15 57:17 58:15 59:2 59:5 59:21 60:4 60:9 60:12 60:21 61:3 61:7 61:15 61:22 62:9 63:4 63:8 64:6 66:22 67:2 67:6 69:14 70:4 71:23 72:17 72:20 73:22 74:4 74:17 75:16 75:19 76:24 77:14 77:15 81:6 81:11 82:25 83:3 83:5 83:7 83:9 83:14 84:6 84:19 86:25 87:4 87:4 87:8 87:10 87:12 88:1 88:9 88:10 88:19 88:25 89:10 91:25 92:15 93:7 93:8 93:18 94:6 94:9 94:10 94:13 96:14 97:21 97:23 100:20 100:21 101:8 101:21 102:17 103:13 103:17 103:24 103:24 104:7 106:7 106:17 106:25 108:25 110:17 110:19 113:10 113:11 113:21 116:7 121:18 124:2 125:9 126:2 126:5 127:10 127:13 127:22 127:23 127:24 129:8 129:13 129:18 129:2 130:4 132:14 132:17 133:15 133:17 134:16 135:7 135:13 135:14 137:3 137:16 137:17 137:19 138:6 138:20 139:11 142:6 142:16 143:20 145:24 146:23 147:10

**thomas**(1) 2:22
**those**(40) 8:20 14:12 16:6 16:20 33:23 34:17 44:6 46:15 47:18 47:22 48:4 53:17 59:20 64:2 67:6 74:5 76:5 78:19 79:8 79:9 80:5 81:21 81:22 83:1 86:7 88:8 89:22 91:16 94:22 105:23 107:12 109:2 127:25 135:23 136:15 137:9 139:10 142:6 142:25 143:4

**though**(8) 9:8 16:4 21:17 58:8 76:6 88:22 97:3 114:23

**thought**(5) 23:19 41:8 86:24 92:5 128:23
**thousands**(1) 145:15
**three**(18) 12:1 14:9 16:15 35:7 36:11 60:14 61:3 68:20 98:6 98:15 99:3 99:4 99:7 107:19 108:12 109:7 110:9 110:10

**threshold**(1) 25:21
**through**(27) 10:17 26:11 35:7 35:18 60:23 84:22 85:4 85:7 85:11 85:13 91:1 91:22 93:18 93:19 94:19 99:16 99:22 107:14 110:20 113:11 113:25 114:6 124:7 125:1 126:19 135:1 139:11

**throughout**(1) 145:19
**throw**(1) 23:5
**thrown**(1) 34:4
**thus**(1) 25:9
**tidy**(1) 41:19
**tie**(1) 31:7
**tied**(1) 14:14
**till**(1) 20:19
**time**(37) 9:15 14:21 20:11 27:12 31:1 31:15 34:6 40:21 41:13 46:18 49:14 57:13 70:6 70:17 72:19 75:21 75:22 89:13 92:1 98:14 104:22 108:8 118:1 118:13 119:10 125:9 130:13 130:19 131:24 132:3 133:6 135:18 135:25 137:12 137:16 139:25 147:17

**time-consuming**(1) 114:17
**times**(3) 57:4 120:5 144:11
**timing**(1) 88:13
**tinkering**(1) 41:6
**tiny**(2) 111:12 111:12
**tipping**(1) 128:24

**tirelessly**(1) 82:24
**today**(23) 20:9 21:5 28:15 33:12 40:25 41:10 41:25 49:11 65:4 65:11 65:20 67:1 68:25 69:6 69:14 70:15 83:6 90:12 98:3 118:4 124:20 129:1 138:7

**today's**(1) 66:14
**together**(11) 8:11 16:21 16:25 20:6 21:19 30:7 60:12 60:13 85:13 103:15 105:8

**togut**(1) 4:23
**told**(8) 23:21 75:5 122:23 125:3 128:23 128:24 128:25 139:7

**tomorrow**(1) 72:2
**too**(6) 11:20 12:22 78:4 99:6 107:23 126:5
**took**(10) 18:18 18:18 19:19 52:19 56:9 91:24 117:2 117:22 118:1 147:17

**top**(1) 86:21
**total**(1) 116:6
**towers**(1) 106:1
**track**(1) 140:6
**tracks**(6) 13:16 40:5 40:8 54:15 54:16 140:25

**tracy**(1) 4:37
**trailer**(1) 31:10
**train**(4) 40:5 40:13 49:2 54:17
**transcriber**(1) 148:14
**transcript**(4) 1:18 1:49 50:4 148:10
**transcription**(2) 1:42 1:49
**transferable**(1) 76:17
**transferred**(1) 28:25
**transferring**(1) 88:1
**translate**(1) 66:5
**travel**(3) 10:17 104:20 130:18
**traxxas**(1) 48:9
**treat**(1) 125:2
**treatment**(3) 123:5 140:20 144:8
**treaty**(1) 56:20
**tremendous**(1) 137:2
**trepidation**(1) 134:25
**trial**(9) 11:2 12:11 12:20 12:23 13:2 13:11 38:11 41:21 48:14

**tricky**(1) 106:13
**tried**(3) 20:22 20:22 141:8
**trier**(2) 12:20 13:9
**tries**(1) 45:17
**troops**(2) 54:22 55:20
**trouble**(2) 122:25 147:22
**true**(3) 40:3 41:23 75:12
**trust**(15) 4:36 5:7 5:12 14:13 16:22 29:4 89:16 98:7 100:6 101:7 104:15 105:19 107:8 110:12 120:20

**trustee**(7) 2:28 2:28 82:14 104:18 104:24 105:1 105:14

**trusts**(1) 86:10
**try**(9) 17:1 20:19 20:20 20:25 66:4 90:14 90:16 131:7 131:17

**trying**(11) 10:25 13:1 10:22 34:2 40:3 41:22 53:2 54:19 56:12 71:18 87:20
**tuchman**(2) 56:6 56:15
**tunnell**(1) 1:22
**turn**(4) 10:24 99:19 114:3 141:13
**turns**(1) 10:17
**tweed**(1) 2:21
**twice**(1) 18:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| two(46) 13:15 16:14 16:20 18:15 18:16 20:13 21:2 28:8 40:4 40:6 40:7 47:14 47:18 48:3 50:7 53:21 54:4 62:1 65:9 66:9 76:19 82:10 85:2 85:13 85:14 85:14 87:2 93:2 93:23 98:17 105:19 106:8 109:24 115:9 118:5 119:13 120:18 121:22 125:7 130:15 130:17 131:10 131:19 131:2 140:8 145:2 | | use(8) 45:24 46:20 49:24 52:3 87:19 89:24 90:7 93:9 | | want(44) 20:12 28:14 33:8 34:23 36:12 39:9 48:20 48:20 48:21 48:22 57:13 59:1 61:7 61:10 61:18 61:22 62:2 67:14 71:23 76:7 76:11 87:3 89:11 92:15 93:15 102:2 103:2 103:14 105:10 105:23 107:20 108:1 111:1 114:23 124:3 126:1 126:7 126:17 126:18 128:13 128:24 137:7 137:13 137:1 | | welcomed(1) 84:6 |
| | | used(8) 24:15 28:8 46:2 46:14 49:19 57:19 87:19 110:12 | | | | welfare(3) 76:7 81:19 140:5 |
| two-year(1) 101:25 | | | | | | well(80) 9:15 18:18 24:8 26:10 27:7 27:21 34:5 35:11 35:17 39:23 41:2 44:2 50:13 53:17 53:22 54:25 55:14 57:8 61:14 62:5 62:16 63:24 64:22 67:22 68:7 68:10 68:23 70:2 73:10 77:10 77:17 78:11 78:23 79:25 82:20 83:12 83:18 83:21 84:5 86:3 87:14 87:21 87:25 88:10 89:14 89:23 91:7 93:22 94:9 94:13 94:25 97:25 100:20 104:7 105:9 106:18 110:6 110:11 112:10 112:18 112:19 112:24 114:5 116:23 118:25 123:8 127:25 128:10 129:2 133:3 134:12 137:12 137:19 139:2 144:9 144:15 144:21 145:14 146:11 146:19 |
| tyler(1) 5:20 | | useful(2) 85:3 103:1 | | wanted(10) 8:17 8:19 39:6 77:4 99:14 105:12 106:16 114:19 126:13 135:23 | | |
| type(4) 23:23 51:19 51:21 124:19 | | using(4) 34:20 92:7 115:10 126:1 | | | | |
| types(1) 86:7 | | usually(2) 27:7 147:6 | | | | |
| typically(1) 99:5 | | utilizing(1) 141:25 | | wants(1) 62:4 | | |
| typographical(1) 78:7 | | valid(1) 47:23 | | war(1) 56:10 | | |
| u.k(1) 5:12 | | validate(1) 120:3 | | ward(1) 4:18 | | well-respected(1) 108:18 |
| u.s.(12) 3:36 15:1 15:5 16:18 29:12 40:21 41:14 47:12 48:10 49:15 55:18 58:16 | | valuation(1) 28:25 | | was(167) 9:15 10:25 11:9 11:17 12:16 18:17 18:19 19:4 20:2 20:12 20:16 21:20 21:21 23:16 23:18 23:20 23:21 23:22 24:12 24:14 24:14 24:15 24:15 26:1 26:1 26:23 26:25 27:9 27:10 27:10 27:11 27:15 27:16 27:16 27:17 33:2 33:3 35:14 36:21 38:14 38:17 41:5 41:15 42:4 42:9 42:19 43:9 43:23 44:3 45:18 45:22 46:2 46:17 46:17 46:24 47:3 47:5 47:18 47:21 48:1 48:4 48:8 48:15 48:23 49:7 49:12 49:17 49:25 50:2 50:24 51:15 52:13 55:10 55:14 55:21 55:23 55:25 56:15 56:23 57:10 57:13 64:2 64:7 66:22 66:22 68:17 71:19 73:25 76:5 76:13 78:8 81:20 82:2 82:2 82:25 83:5 83:7 83:7 83:10 83:14 83:17 83:17 84:19 87:5 87:5 87:12 87:17 88:6 88:14 88:22 92:4 92:12 93:7 97:12 100:20 101:4 101:16 101:23 101:25 102:9 105:7 106:9 106:10 106:10 110:3 110:12 115:13 115:18 115:24 118:5 118:6 118:21 118:23 118:25 119:2 119:25 120:2 120:4 120:23 120:24 125:13 126:6 128:7 128:24 128:25 130:8 131:8 132:23 133:4 134:12 136:9 138:16 138:25 139:1 139:3 139:4 142:15 144:17 144:18 144:19 145:17 145:21 145:23 146:9 146:24 148:6 | | went(6) 20:11 55:24 87:24 88:6 92:9 92:10 20:4 20:15 21:15 21:20 21:23 26:17 27:22 27:24 41:4 41:6 42:20 43:18 46:1 48:2 49:5 49:10 49:20 53:18 54:22 54:23 71:6 76:5 78:1 82:12 83:8 83:9 85:14 86:4 87:2 87:6 87:15 87:23 88:7 89:1 91:9 92:11 101:19 105:4 106:9 106:12 109:2 110:3 110:17 115:10 117:4 117:13 117:25 123:8 129:9 132:6 142:5 143:4 143:6 144:21 |
| | | variables(1) 78:17 | | | | |
| ultimate(2) 52:6 55:5 | | variance(2) 74:13 121:13 | | | | weren't(1) 135:5 |
| ultimately(1) 45:16 | | variation(1) 117:10 | | | | weren't(1) 93:14 |
| um-hum(1) 133:23 | | variations(1) 99:24 | | | | western(1) 24:20 |
| unable(2) 13:10 132:8 | | various(3) 49:17 100:12 136:10 | | | | we'd(3) 75:20 105:13 112:1 |
| unambiguous(7) 22:23 26:22 26:23 26:25 27:3 27:4 47:2 | | veba(40) 87:21 98:7 98:11 100:5 100:8 101:6 104:6 105:1 105:19 106:5 106:6 107:2 107:8 107:17 110:12 116:24 117:4 117:13 118:3 119:9 119:19 120:19 120:19 120:24 121:13 121:20 123:18 124:24 124:25 126:14 127:3 127:10 127:1 139:5 139:9 141:25 142:3 142:5 142:7 | | | | we'll(5) 85:23 89:25 90:25 96:22 113:11 88:17 90:14 93:17 96:16 101:9 102:1 103:8 104:2 106:1 107:23 107:24 108:4 |
| unattractive(1) 106:15 | | | | | | we're(17) 73:23 74:4 76:18 76:21 85:1 |
| uncertain(1) 83:9 | | | | | | |
| under(32) 25:5 25:9 27:14 27:19 33:24 46:17 64:6 64:19 65:7 69:12 72:11 76:11 80:15 86:2 86:5 89:17 107:17 107:17 117:3 120:21 121:2 122:11 122:12 125:15 128:17 129:11 138:11 140:3 140:4 140:12 140:20 143:10 | | vebas(2) 101:19 103:23 | | | | we've(10) 73:24 75:12 80:11 88:9 91:12 103:5 103:22 108:22 110:12 123:7 |
| | | vehicle(7) 84:25 87:8 87:15 87:22 88:7 127:19 142:12 | | | | |
| | | | | | | what(92) 9:20 12:18 13:14 16:24 19:8 19:22 19:22 20:16 20:24 21:17 21:20 21:23 24:6 26:2 30:21 30:21 35:14 37:11 40:23 49:12 49:13 49:17 50:23 51:22 52:3 53:12 53:13 54:19 55:5 55:13 57:11 59:6 59:7 59:17 59:20 60:10 60:14 61:18 65:18 70:10 71:3 71:19 73:6 86:12 86:24 89:17 89:23 91:6 92:20 93:4 94:10 95:11 96:2 96:13 97:21 99:8 99:21 102:15 103:1 103:3 104:14 106:23 107:18 108:4 110:11 119:20 122:22 124:1 127:13 127:17 131:15 133:18 134:6 134:14 134:18 134:20 136:14 137:7 138:4 139:25 140:1 140:24 142:9 145:3 145:14 146:18 |
| undercut(1) 28:12 | | vehicles(2) 86:10 86:23 | | | | |
| undergraduate(1) 97:8 | | vendors(1) 108:17 | | | | |
| underlying(1) 16:6 | | versa(1) 54:12 | | | | |
| understand(12) 26:13 54:21 61:21 64:6 85:19 95:22 105:16 118:19 120:1 134:25 141:2 144:12 | | version(3) 40:19 77:15 96:10 | | | | |
| | | versions(1) 40:23 | | | | |
| | | versus(1) 100:15 | | | | |
| understanding(4) 76:16 76:18 76:23 | | very(63) 10:3 16:25 17:15 18:15 18:17 19:10 20:2 20:22 20:22 22:2 22:6 22:10 22:13 22:17 23:12 23:24 28:16 34:6 35:6 36:11 39:16 43:11 46:6 49:2 50:6 56:10 64:6 64:7 70:1 73:10 76:12 78:23 81:3 81:24 82:18 82:25 83:4 83:11 83:20 83:22 86:14 87:22 90:15 94:25 101:6 101:19 108:17 110:12 111:12 112:19 114:10 126:5 126:6 118:8 118:25 119:2 119:25 120:2 120:4 120:23 120:24 121:3 126:6 128:7 128:24 136:11 136:11 144:15 144:17 144:19 147:20 | | | | whatever(9) 32:6 45:16 51:21 57:18 58:14 60:24 89:11 93:1 140:13 |
| understood(10) 38:18 46:24 48:7 49:13 50:23 62:10 66:23 78:3 135:11 143:2 | | | | | | |
| | | | | | | whatsoever(1) 17:21 |
| unexpected(1) 69:25 | | | | way(34) 11:1 21:15 23:5 23:8 23:9 29:11 35:17 35:19 36:22 40:4 40:6 40:13 40:14 53:1 53:10 54:18 56:13 57:8 58:6 61:1 74:12 74:17 83:14 85:18 87:3 87:12 89:7 90:5 110:20 113:20 123:9 139:7 145:10 145:16 | | what's(2) 77:17 106:17 |
| unfortunate(2) 56:10 57:1 | | | | | | wheels(1) 31:10 |
| unfortunately(3) 45:8 56:12 75:12 | | vested(2) 14:1 16:5 | | | | when(33) 9:21 11:7 13:7 19:5 19:18 20:23 21:4 21:15 21:23 27:5 30:5 34:1 34:1 40:6 40:6 40:16 41:19 42:8 48:15 49:9 49:20 50:2 59:10 60:8 64:2 79:15 87:13 87:24 88:6 92:15 102:6 129:16 132:2 |
| unhelpful(1) 45:12 | | vice(2) 54:12 66:3 | | | | |
| uniquely(1) 64:1 | | view(4) 28:18 30:12 50:7 52:20 | | ways(3) 49:5 87:2 140:19 | | |
| united(5) 1:1 1:20 12:2 15:8 82:13 | | viewed(1) 140:10 | | we'd(2) 40:5 128:9 | | |
| units(1) 20:6 | | vigor(1) 82:14 | | we'll(13) 8:10 17:6 20:19 20:20 31:12 31:13 35:3 61:2 73:9 139:15 146:12 146:16 148:4 | | |
| universally(1) 40:18 | | vineberg(1) 4:18 | | | | |
| university(3) 12:6 97:9 97:10 | | violate(2) 127:5 127:6 | | | | |
| unless(11) 15:13 25:22 27:19 42:1 55:12 59:7 59:23 79:23 109:1 121:24 123:18 | | violation(1) 86:14 | | we're(64) 8:12 19:2 19:3 19:18 20:9 20:18 21:4 21:5 21:10 22:25 23:8 23:9 29:12 30:5 31:13 33:11 33:13 33:17 33:18 34:1 34:2 34:23 35:19 40:12 41:16 41:22 42:22 48:18 48:18 48:19 51:21 52:20 52:25 53:3 53:7 54:15 54:19 59:8 59:10 59:15 59:16 59:22 59:24 59:25 60:8 68:23 68:24 69:19 69:20 69:23 69:25 71:3 71:15 72:12 125:1 126:1 127:15 130:24 131:20 134:1 134:13 135:2 135:25 140:6 | | |
| | | virtual(2) 103:8 103:9 | | | | |
| | | voluntary(3) 127:10 127:13 127:15 | | | | |
| unraveled(1) 137:16 | | w-2(3) 104:14 124:16 124:17 | | | | whatever(9) 32:6 45:16 51:21 57:18 58:14 |
| unredacted(1) 96:9 | | w-4s(1) 124:10 | | | | |
| unrestricted(2) 89:10 89:13 | | wait(4) 11:2 88:15 114:19 129:1 | | | | |
| unsecured(2) 5:27 37:21 | | waiting(1) 28:16 | | | | |
| unsuccessful(2) 106:23 106:24 | | waive(1) 51:23 | | | | where(29) 11:9 11:11 24:13 25:6 32:13 40:8 42:7 42:13 42:16 42:20 44:16 45:20 46:22 54:3 54:4 54:8 54:16 64:7 69:21 78:7 83:6 87:18 104:5 108:6 123:21 124:6 127:20 127:23 137:5 |
| until(13) 13:3 28:4 31:1 31:15 32:2 58:15 74:7 74:8 88:15 114:19 125:3 125:4 147:5 | | waived(2) 48:11 58:5 | | we've(18) 8:7 14:8 14:15 19:12 40:14 51:22 54:25 58:25 61:3 65:5 129:7 129:12 134:3 138:13 143:15 145:2 145:17 147:13 | | |
| | | waiver(3) 51:6 51:24 52:11 | | | | |
| unwilling(1) 106:12 | | waives(1) 76:13 | | | | |
| update(1) 114:23 | | walk(7) 19:11 28:10 85:4 85:13 94:19 114:5 139:11 | | | | |
| updated(1) 78:9 | | | | wearing(1) 102:4 | | |
| updates(2) 141:19 142:7 | | | | webb(1) 5:20 | | |
| upheld(1) 51:7 | | | | website(3) 77:22 77:23 92:24 | | whereupon(1) 148:6 |
| upon(15) 26:5 58:22 61:11 77:22 88:22 93:17 119:6 120:4 126:9 135:3 135:13 135:24 136:7 137:21 144:19 | | walked(2) 55:22 60:4 | | wednesday(1) 8:1 | | wherever(1) 101:1 |
| | | walking(2) 135:1 146:9 | | week(3) 14:23 55:22 72:21 | | |
| | | | | weekend(2) 72:18 72:19 | | |
| usable(2) 45:16 51:11 | | | | weeks(3) 35:8 130:18 131:22 | | |
| usage(2) 92:5 92:6 | | | | weight(1) 57:22 | | |
| usc(2) 64:14 65:7 | | | | welcome(2) 66:7 97:15 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**whether**(36) 10:10  10:14  11:1  12:9  12:10  13:20  14:15  15:15  15:16  18:2  21:5  21:9  22:3  22:14  22:17  26:24  39:19  41:19  44:19  45:3  45:3  47:1  53:5  58:10  58:15  60:5  62:4  62:6  63:8  63:19  68:5  69:11  69:12  69:14  71:1  86:10

**which**(71) 8:13  10:18  13:25  14:2  14:3  19:7  23:2  23:20  24:20  31:8  33:11  35:8  36:13  37:1  37:10  38:5  41:3  44:7  45:12  47:17  47:25  48:25  52:16  54:9  54:15  54:18  63:5  63:14  64:21  68:24  70:13  72:19  73:25  74:8  76:24  76:25  77:15  84:17  85:14  86:21  87:6  87:8  87:16  87:21  89:18  95:14  97:19  97:21  105:23  112:2  113:24  115:18  115:21  116:16  117:20  123:5  126:18  127:6  128:7  129:14  136:13  137:4  138:10  138:25  139:4  140:19  140:23  142:16  143:2  143:12  145:1

**while**(7) 11:3  51:3  95:6  110:21  113:3  134:13  135:12

**whisper**(2) 66:4  96:3

**whiteoak**(1) 4:15

**who**(34) 9:10  19:11  21:17  21:20  21:20  23:23  33:14  33:23  66:3  74:21  74:25  79:2  81:16  83:8  83:13  85:5  85:6  86:1  86:17  88:14  90:17  94:8  99:2  103:13  107:23  108:17  109:21  111:6  115:24  115:24  128:1  129:9  130:18  144:21

**whoever**(1) 54:13

**whole**(3) 29:1  38:21  137:4

**who's**(5) 76:14  100:21  100:23  108:11  121:25

**why**(18) 20:9  31:23  36:13  37:8  38:19  46:7  51:2  66:22  73:4  85:2  86:3  89:21  95:22  101:2  119:24  123:13  139:12  146:9

**wick**(1) 4:42

**widely**(1) 94:6

**wife**(9) 75:19  128:25  130:15  130:17  131:9  131:22  146:7  146:12  147:19

**will**(84) 8:13  9:10  9:11  12:19  17:2  21:16  31:12  34:21  36:11  37:3  38:11  38:12  40:8  41:19  45:16  57:16  62:2  64:11  70:7  70:7  70:9  72:11  72:19  72:20  73:17  74:4  74:8  74:11  74:14  76:23  77:20  77:21  77:22  77:23  77:25  80:23  81:9  83:19  85:10  93:10  94:1  94:23  95:2  99:11  99:16  101:11  102:2  105:1  105:22  107:4  107:15  111:4  111:14  112:4  113:23  116:8  117:8  119:8  120:11  120:14  124:1  124:10  124:11  124:13  124:1  124:19  124:25  125:2  125:17  126:25  127:4  127:4  127:23  128:11  129:15  129:16  129:17  129:18  129:19  134:22  136:19  138:10  138:24  141:10

**william**(1) 4:28

**willing**(2) 60:21  107:22

**willkie**(3) 3:13  4:36  5:13

**wilmington**(11) 1:13  1:26  2:8  2:32  2:41  3:3  3:24  3:39  3:48  5:7  8:1

**wind-down**(1) 142:11

**winnings**(1) 122:16

**wish**(10) 72:10  73:7  75:15  79:2  94:9  130:1  132:9  133:11  141:12  148:1

**wishes**(2) 79:4  136:13

**with**(181) 8:17  9:9  9:18  10:9  10:13  11:10  12:12  12:16  13:10  13:16  14:1  14:14  15:15  15:17  15:23  16:5  16:5  16:10  17:1  17:16  18:8  18:9  19:2  19:7  21:16  21:19  23:10  23:11  23:13  24:3  24:9  24:13  26:20  28:19  28:24  29:10  30:6  30:7  30:8  30:8  30:18  31:8  31:10  31:14  32:4  32:22  33:3  33:6  33:14  33:19  33:22  34:6  34:24  38:11  38:14  38:20  39:8  41:5  41:6  41:18  44:17  44:18  44:18  45:15  47:2  47:4  47:15  50:17  51:2  51:15  53:3  56:10  57:6  62:20  64:3  66:11  66:15  66:19  70:3  70:5  71:18  72:6  72:9  72:19  73:22  74:19  75:6  76:12  80:3  80:12  80:17  82:14  83:21  85:5  85:6  86:22  86:25  87:4  88:6  88:10  88:24  89:11  89:14  91:16  92:3  92:24  92:25  94:1  98:2  98:7  98:22  93:9  99:6  100:7  100:13  101:19  102:22  103:23  105:6  106:23  107:22  108:9  108:10  109:3  110:13  113:15  113:22  115:1  116:3  116:11  116:21  116:22  116:25  117:10  117:11  117:21  117:25  118:2  118:9  118:24  119:5  119:13  119:22  119:24  121:12  121:1  121:15  121:16  121:23  123:18  125:7  126:19  127:3  129:3  129:4  129:25  130:14  130:19  130:20  131:9  131:19  131:24  132:1  133:14  133:18  134:9  134:10  136:10  136:13  137:12  138:3  141:5  142:13  143:3  143:16  144:10  144:13  145:8  146:2  146:3  147:22

**withdraw**(3) 71:24  72:10  77:4

**withdrawing**(1) 72:12

**withdrawn**(1) 71:11

**withholding**(1) 124:12

**withholdings**(1) 104:13

**within**(5) 22:5  52:7  87:21  118:3  144:12

**without**(19) 15:23  22:8  22:10  24:15  24:25  33:1  37:22  37:23  38:1  43:1  45:5  48:13  51:5  58:3  81:15  81:21  94:15  99:16  128:24

**withstand**(1) 38:3

**witness**(3) 95:8  109:5  113:5

**witnesses**(4) 21:20  85:2  85:5  149:2

**woke**(1) 59:16

**won**(1) 75:5

**won't**(1) 61:11

**wonder**(1) 9:20

**wondered**(1) 42:8

**wonderful**(3) 61:12  96:24  145:4

**wondering**(1) 132:23

**won't**(1) 123:16

**word**(16) 23:11  24:4  24:21  26:8  26:12  37:23  37:24  43:10  45:11  45:21  45:21  46:20  49:19  49:24  53:23  78:7

**words**(6) 13:15  21:2  28:7  44:12  53:18  124:18

**work**(17) 20:19  43:2  56:13  72:20  87:25  97:6  103:7  103:17  103:17  103:24  107:22  108:9  113:22  111:13  137:3  146:23  148:2

**worked**(3) 70:5  82:24  93:22

**working**(3) 21:14  65:5  97:11

**worldwide**(1) 20:6

**worse**(1) 143:2

**worst**(3) 88:17  108:6  108:9

**worth**(1) 107:14

**would**(135) 8:21  9:24  11:19  11:22  17:14  20:5  23:21  23:22  23:24  23:25  25:19  26:4  28:12  29:13  29:17  37:22  38:1  38:9  41:1  41:7  41:9  43:17  48:23  50:5  50:6  50:22  50:22  51:4  51:5  51:8  51:10  52:12  52:23  53:5  53:22  53:25  54:9  54:11  55:6  56:17  57:15  60:5  61:8  61:12  62:4  62:8  62:9  63:22  63:25  66:11  67:2  68:8  68:8  69:2  70:3  77:10  78:1  79:22  79:23  81:6  85:6  86:20  87:9  87:11  87:21  88:8  88:14  88:15  88:17  89:2  89:4  89:5  91:15  91:18  92:16  93:5  93:6  95:5  95:12  96:8  96:15  98:8  98:13  98:15  101:7  102:10  102:23  103:18  104:11  104:12  104:20  106:5  107:6  107:7  107:10  110:2  110:13  110:16  110:18  110:13  115:13  116:13  117:15  117:20  118:3  118:16  118:17  119:11  119:17  119:22  120:19  121:12  121:15  121:18  121:20  126:2  127:5  127:6  127:14  128:7  130:5  130:21  131:23  131:25  132:4  139:25  140:12  143:12  144:5

**wouldn't**(2) 51:9  68:7

**wreck**(3) 40:5  40:13  54:17

**write**(3) 67:22  96:4  146:6

**writing**(1) 4:33

**written**(15) 25:2  25:7  25:7  25:10  25:18  26:14  37:19  37:24  44:5  44:8  47:18  47:24  56:18  56:23  142:22

**wrong**(4) 35:2  41:5  53:23  58:10

**wunder**(1) 5:32

**www.diazdata.com**(1) 1:46

**xavier**(1) 97:9

**yeah**(14) 17:17  21:3  32:16  42:8  42:10  45:10  54:25  56:17  62:3  63:10  63:10  63:24  71:15  73:8

**year**(23) 46:23  74:6  74:9  81:17  88:19  89:19  91:5  91:10  100:14  103:19  103:20  107:1  107:1  107:4  108:5  108:8  109:23  110:9  115:14  118:14  120:7  121:4  131:9

**years**(32) 14:9  57:12  59:10  60:14  61:4  81:17  88:18  98:14  98:15  98:16  98:17  98:17  99:4  102:5  106:3  107:11  108:12  109:24  110:10  113:15  113:17  117:7  117:14  117:22  118:2  118:5  118:9  120:25  121:3  129:18  132:2  144:8

**yes**(140) 8:10  9:14  9:17  10:11  10:23  14:7  15:3  15:11  15:18  16:7  16:12  18:12  18:21  20:1  20:7  21:3  21:9  22:16  24:10  25:14  25:16  27:1  28:20  29:21  30:2  30:10  33:25  35:4  35:15  36:5  36:8  37:15  38:17  38:25  39:3  43:8  45:7  47:11  51:25  54:21  56:2  56:3  56:5  56:7  61:24  63:13  64:11  64:15  66:17  66:18  67:4  67:15  67:21  69:1  70:14  74:1  74:22  74:24  75:9  75:14  75:14  75:18  76:3  76:20  77:12  77:17  78:2  79:10  79:18  80:2  80:7  80:9  82:6  84:18  84:24  85:16  96:1  96:8  97:14  97:24  97:25  98:25  99:1  99:13  100:10  100:22  101:24  102:13  103:1  103:12  103:21  108:14  109:1  109:20  110:22  110:25  112:17  113:14  114:25  118:6  118:11  119:19  120:1  121:10  122:8  123:1  123:3  125:19  125:21  126:16  131:4  131:6  131:21  132:13  132:16  134:2  135:4  135:19  136:24  138:12  139:12  139:1  139:19  139:25  141:6  141:9  141:18  141:23  142:10  142:23  143:8  143:19  143:22  144:1  144:24  145:5  146:11  147:22

**yesterday**(13) 69:6  73:3  76:6  78:6  81:14  93:23  93:24  128:25  129:11  134:4  138:10  139:1  140:2

**yesterday's**(1) 9:13

**yet**(4) 11:14  31:11  88:18  114:13

**york**(12) 1:37  2:18  2:25  3:9  3:16  3:32  9:15  16:23  22:13  22:15  26:18  97:10

**you**(301) 8:20  9:3  9:4  9:7  9:9  9:12  9:13  9:17  9:18  10:5  10:8  10:9  10:16  10:18  10:24  12:19  14:22  15:17  15:22  16:19  17:1  19:8  19:8  19:14  20:12  20:15  20:23  20:24  21:22  21:23  21:23  22:19  22:23  23:2  24:8  24:17  25:21  26:3  26:21  26:24  27:3  27:4  27:5  27:19  27:21  27:22  27:24  28:4  28:4  28:8  29:7  29:7  30:21  31:1  31:2  31:17  33:16  34:2  34:7  34:9  34:13  35:5  35:16  35:23  36:2  36:3  36:6  36:13  36:15  36:16  36:22  38:22  38:23  38:24  39:12  39:13  39:15  39:16  39:23  40:6  40:6  41:3  42:16  42:25  43:12  44:18  45:11  46:4  46:19  46:22  47:9  48:16  49:7  49:23  50:2  50:16  50:21  51:23  52:2  52:21  53:1  53:5  53:10  53:15  54:4  54:8  54:11  54:16  54:22  54:23  54:25  55:9  55:10  55:12  55:14  55:15  55:19  57:2  57:14  57:16  58:1  59:8  59:10  59:14  60:3  60:8  60:20  61:2  61:13  61:14  62:2  62:2  62:12  62:22  63:2  63:6  66:5  66:6  66:19  66:21  67:1  67:18  67:19  67:22  68:6  68:13  70:4  72:10  72:16  72:21  72:22  72:23  72:24  73:4  73:5  73:8  73:10  73:11  73:16  73:16  74:6  74:7  74:20  75:5  75:15  75:15  75:15  75:17  75:20  75:23  75:24  75:25  77:2  77:7  77:6  77:7  77:9  77:10  77:11  78:6  78:23  78:25  78:25  80:25  81:1  81:2  83:19  83:24  84:10  84:13  84:14  84:21  84:22  85:13  85:18  86:3  86:4  86:14  86:19  88:19  89:2  89:3  89:10  89:11  89:12  89:13  89:14  89:17  89:19  89:19  89:24  90:3  90:4  90:5  90:7  90:11  91:5  91:8  91:19  91:20  91:21  92:6  92:11  92:20  92:25  92:25  93:2  93:2  93:3  93:8  93:10  94:1  94:3  94:25  95:1  95:4  95:5  95:9  95:24  96:1  96:3  96:8  96:9  96:14  96:22  96:24  96:24  96:25  97:4  97:14  97:17  97:21  98:3  98:22  98:24  98:25  99:5  99:19  99:21  99:22  100:1  100:3  100:5  100:6  100:13  100:17  100:20  100:23  100:24  101:23  102:18  102:23  103:2  103:9  103:14  103:25  104:13  104:16  104:19  105:2  106:3  106:12  106:21  107:6  107:7  107:8  107:16  107:18  107:20  108:8  108:10  108:11  108:12  109:1  109:3  109:9  109:10  109:14  109:16

**you**(118) 110:3  110:16  111:1  111:6  111:20  111:21  111:23  111:24  112:8  112:14  112:19  112:21  112:22  112:25  113:4  113:6  113:12  113:23  113:25  116:8  116:17  116:21  116:22  117:8  118:8  118:14  119:8  119:12  119:17  120:11  121:9  121:24  122:4  122:5  122:6  122:6  122:8  122:11  124:3  124:3  126:2  126:3  126:5  126:13  126:16  126:21  126:24  127:4  127:4  127:17  128:1  128:2  128:2  128:4  129:24  130:5  131:1  131:1  131:2  131:4  131:5  131:18  132:3  132:6  132:12  132:16  133:3  133:7  133:8  133:13  134:4  135:21  136:1  137:1  137:5  137:8  138:16  138:24  139:11  139:15  139:16  139:24  139:25  141:3  141:4  141:10  141:12  141:13  143:2  143:8  143:17  143:24  144:3  144:7  144:8  144:10  144:14  144:16  144:22  145:5  145:7  145:8  145:12  145:12  145:13  145:14  145:20  145:24  146:4  146:5  146:14  146:17  146:24  147:2  148:1  148:5  148:5

**you'd**(2) 31:20  54:13

**you'll**(2) 72:21  73:9

**you're**(19) 9:25  10:25  11:7  13:7  27:2  39:14  44:7  44:16  127:1  130:22  130:24  131:1  131:12  131:14  134:19  137:2  141:5  144:15  144:17

**you've**(8) 15:8  17:10  23:18  29:6  67:19  134:10  145:15  145:15

**young**(4) 2:49  3:20  5:2  39:2

| Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|

**younger**(1) 118:15
**your**(202) 8:5  8:12  8:13  8:16  8:19  8:25
9:3  9:6  9:9  9:10  9:14  9:24  10:4  10:20
15:17  20:13  20:21  20:21  21:8  21:22  22:9
22:20  23:2  25:24  28:15  29:4  31:25  32:1
32:1  34:5  34:11  35:2  35:17  35:18  35:18
35:22  36:6  36:11  36:22  36:25  37:4  37:16
37:19  37:20  38:4  38:8  38:12  39:1  39:7
39:13  39:16  39:19  41:21  43:10  43:24  44:2
44:16  47:4  49:13  50:12  50:13  50:21  50:23
51:23  54:20  55:9  55:10  55:15  55:17  57:9
58:24  60:3  60:25  61:2  61:13  62:17  62:18
65:25  66:8  66:11  66:17  66:25  67:7  68:12
68:23  70:4  71:2  71:8  71:25  72:13  72:23
72:24  72:25  73:7  73:10  73:15  73:18  73:21
75:6  75:16  75:18  77:3  77:9  78:4  79:6
79:14  80:10  80:25  82:6  83:24  84:4  84:10
84:13  84:14  84:15  84:20  88:18  89:16  90:3
90:6  92:25  95:2  95:4  95:10  95:22  95:25
96:6  97:4  98:21  100:18  102:8  104:14
105:9  106:14  108:24  109:17  110:2  110:6
110:25  111:1  111:25  113:12  113:21  114:9
116:25  118:24  119:20  121:23  122:4  122:8
122:14  122:17  124:1  124:2  124:3  125:14
125:17  128:4  128:6  128:13  130:2  130:5
130:8  130:14  130:16  131:8  131:10  131:15
132:3  132:5  132:6  132:9  132:10  132:12
132:14  133:13  135:2  135:8  136:20  138:8
138:23  140:17  141:7  141:13  143:17  143:18
144:23  145:7  145:18  145:18  145:21
145:24  145:25  146:12  146:16  147:2  147:4
147:8  147:19  147:20  148:3  148:5

**yourself**(2) 54:12  97:4
**yourselves**(1) 144:21
**youth**(1) 84:8
**you'd**(7) 84:20  89:3  96:7  107:6  107:9
107:11  110:3

**you'll**(6) 95:1  95:6  101:15  103:18  106:7
113:3

**you're**(10) 88:18  89:15  89:21  91:21  95:6
97:15  100:14  107:1  110:9  119:13

**zahralddin**(196) 2:36  73:18  73:19  73:20
73:20  74:2  74:11  74:22  74:24  75:4  75:10
75:15  76:18  76:21  77:9  77:13  77:17  77:20
78:9  79:6  79:9  79:11  80:5  80:8  80:10
80:16  80:19  81:2  82:23  83:24  84:3  84:6
84:10  84:15  84:19  84:25  85:9  85:17  85:23
86:7  86:9  88:4  88:21  89:8  90:10  90:21
90:23  90:25  91:4  91:7  91:15  92:19  93:14
94:5  94:17  94:22  95:2  95:10  95:16  95:20
95:25  96:3  96:6  96:9  96:16  96:19  97:2
97:16  98:21  98:25  99:11  99:14  99:18
100:18  100:23  101:4  102:8  102:14  102:19
102:25  104:1  105:4  106:14  106:20  108:14
108:16  108:20  108:24  110:6  110:9  110:15
111:4  111:25  112:10  112:13  112:15  112:18
112:19  112:21  112:23  113:7  113:9  114:13
114:16  114:19  114:23  115:1  117:15  118:7
118:23  119:19  121:8  121:23  122:14  122:17
122:22  123:1  123:4  123:21  124:2  124:8
124:16  124:18  124:24  125:7  125:17  125:20
125:22  125:25  126:4  126:10  126:12
126:17  126:22  126:25  127:9  127:12  128:6
128:13  128:21  129:4  129:7  129:25  130:8
132:19  132:22  132:25  133:5  133:9  133:15
134:25  135:5  135:12  135:16  135:20  136:4
136:20  136:22  136:25  138:8  138:13  138:19
138:21  138:23  139:4  139:9  139:14  139:17
140:17  140:23  141:7  141:11  141:13  141:15
141:18  141:21  141:24  142:5  142:11
142:20  142:22  142:24  143:6  143:9  143:12
143:17  146:15  146:19  146:21  147:4  147:10
147:11  147:13  147:18  147:22  147:25

**zahralddin's**(1) 78:20
**zero**(2) 116:22  120:22

**zloto**(1) 6:15