## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

In re

Nortel Networks Inc., *et al.*,[1]

                 Debtors.

-------------------------------------------------------- X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date:  To be Determined**
**Objections due:  To be Determined**

## EMERGENCY JOINT MOTION FOR ENTRY OF AN ORDER
## (I) ESTABLISHING TUESDAY MAY 14, 2013 AS THE DEADLINE FOR
## OPENING ALLOCATION SUBMISSIONS AND (II) SETTING A
## JOINT HEARING DATE WITH THE CANADIAN COURT THIS WEEK
## TO ESTABLISH A LITIGATION TIMETABLE AND DISCOVERY PLAN

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors

in possession, (collectively, the "US Debtors") and the Official Committee of Unsecured

Creditors (the "Committee," and together with the US Debtors, the "US Interests"), hereby move

this Court (the "Emergency Motion"), for the entry of an order substantially in the form attached

hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105, 502 and 541 of title 11 of

the United States Code (the "Bankruptcy Code"), rules 7016 and 7026 of the Federal Rules of

Bankruptcy Procedure, rules 7016-1, 9006-1 and 9013-1 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (this

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

"Court") and the Cross-Border Protocol,[2] (i) establishing Tuesday, May 14 as the deadline for

any Core Party who wishes to participate in the Allocation dispute to serve an initial submission;

and (ii) setting a joint hearing as soon as possible with the Canadian Court to establish a

Litigation Timetable and Discovery Plan for Allocation, EMEA Claims, and UK Pension Claims

and granting them such other and further relief as the Court deems just and proper.  In support of

this Emergency Motion, the Debtors and Committee respectfully represent as follows:

Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue

is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory basis for the relief requested herein is section 105(a) of the

Bankruptcy Code, as supplemented by Rules 9019-2, 9013-3 and 9019-5 of the Local Rules.

Introduction and the Need for Emergency Relief

3.      The US Interests respectfully submit this Emergency Motion for an order

(i) establishing Tuesday, May 14 as the deadline for any Core Party who wishes to participate in

the Allocation dispute to serve an initial submission; and (ii) setting a joint hearing as soon as

possible with the Canadian Court to establish a Litigation Timetable and Discovery Plan for

Allocation, EMEA Claims, and UK Pension Claims.

4.      The Emergency Motion is necessary because the US Interests were

informed on the evening of Friday, May 10, 2013 by the Monitor that it scheduled a Chambers

conference with the Canadian Court for 10:30 a.m. on Monday, May 13, 2013 for the purpose of

apprising the Canadian Court of scheduling issues concerning the Allocation, EMEA Claims and

---

[2]      Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Litigation Timetable, attached hereto as **Exhibit B**, and the Allocation Protocol, attached to the Certification of Counsel filed contemporaneously with this Emergency Motion.

2

UK Pension Claims matters.  On the afternoon of Saturday, May 12, 2013, after negotiations to

reach a stipulation with respect to at least initial dates broke down, the Monitor distributed the

proposed litigation schedule that they intend to present at the Chambers conference.  On the

evening of Sunday, May 12, 2013, the Joint Administrators stated that they would be submitting

their own proposed timetable to the Canadian Court.  Given that the planned Chambers

conference will not be a joint hearing, and for the reasons discussed herein, the US Interests have

concluded that this Emergency Motion is necessary.

           5.        It is clear that the assistance of both Courts is urgently needed to put in

place a scheduling order.  Even though more than a month has passed since the Courts set

January 6, 2014 as the date on which a joint trial will commence on some or all of Allocation,

US Claims and Canadian Claims, the parties have been unable to reach agreement on even a date

for the delivery of opening pleadings or for the commencement of discovery.  The US Interests

have been mindful of the limited time available to accomplish a substantial amount of work –

from opening pleadings to written discovery to depositions to expert discovery to pre-trial briefs

to preparation for trial – in less than eight months and thus first proposed the Litigation

Timetable and Discovery Plan to the parties on March 19, in response to the Monitor's proposal

dated March 15.  Yet nearly two months later – after exchanging numerous drafts, offering

compromises, and submissions to and appearances before the Courts – unfortunately, not a single

one of the tasks on that schedule has been accomplished, and there is no agreement on a

schedule.

           6.        Numerous conferences have been conducted with the Core Parties over the

past several weeks.  From these conferences, the US Interests believe that most of the Core

Parties share the view that the limited time between now and January 6, 2014 requires the

immediate commencement of discovery.  However, others have been able to essentially pocket veto early deadlines with which they disagree merely by refusing to agree to a schedule.  With nearly half of May already passed, the US Interests believe this stalemate cannot persist even for another week.

7.     The US Interests have been urging the other Core Parties to reach agreement on dates for the simultaneous submission of opening allocation positions and replies. After the Canadian Court directed the Monitor to submit a revised schedule consistent with his May 3, 2013 Endorsement, the US Debtors proposed a schedule to the Monitor on Monday 6, 2013, which proposed May 10, 2013 as the date for opening submissions.  Deadline after deadline proposed by the US Interests has passed, and still no agreement has been reached nor discovery commenced.

8.     Late last week, still believing that all parties shared a common goal of exchanging opening submissions this Monday, May 13, 2013, the US Interests circulated a stipulation to be submitted to the Courts for approval.  Despite apparent agreement on the opening submission date and the inclusion of other deadlines to reach consensus, various parties put enough conflicting conditions on their willingness to execute the stipulation that any agreed stipulation would be impossible – a conclusion that became apparent during a conference call among the parties on Saturday, May 11, 2013.  After this call, the Monitor circulated a proposed schedule to the entire Core Party group that it said it planned to submit to the Canadian court at the Monday conference, even though agreement had not been reached among the parties.

9.     As the Monitor is presenting its proposed timetable to the Canadian Court on Monday, May 13, we attach hereto, as **Exhibit B,** a copy of the US Interests' proposed Litigation Timetable (the "US Litigation Timetable").  Because the calendar is only further

4

compressed by delay, we request that the Court enter the first date, requiring opening allocation submissions on May 14, 2013, and set a date for a joint hearing with the Canadian Court to establish a litigation timetable and discovery plan as soon as possible. Under separate Certification of Counsel filed contemporaneously with this Emergency Motion, the US Interests have also submitted the Allocation Protocol. Given that the Courts already ordered three particular dates – the close of fact discovery on September 27, 2013, the close of expert discovery on December 6, 2013 and, of course, the jointly ordered trial commencement date of January 6, 2014 – a great many of the dates in the US Litigation Timetable have been accepted by most, if not all, of the other Core Parties.

<u>Opening Submissions</u>

10.     Given that the necessary commencement of discovery is being held hostage to the exchange of these submissions, the US Interests are prepared to file and serve (on all Core Parties) their opening allocation submission on Tuesday, May 14, 2013, and are prepared to serve discovery requests on May 22, 2013. The US Interests respectfully request that the Court and the Canadian Court enter orders establishing May 14, 2013 as the deadline for all parties to submit their initial allocation positions. The US Debtors will file their objections to the EMEA and UK Pension on Tuesday, May 14. The following summarizes the outstanding issues and conflicting positions with respect to the components of the discovery schedule.

<u>Discovery Requests</u>

11.     There are two principal areas of disagreement. First, it seems that all parties except the Monitor and CCC are eager to serve discovery requests promptly after the exchange of opening submissions. The US Interests have proposed May 22, a week from this Wednesday. The Monitor and CCC, however, wish to delay service of discovery requests until at least a week after responsive submissions, if not longer, or supplement any initial requests

without limitation in the future if an earlier date is agreed to.  The consensus if not unanimous

view of the other, non-Canadian Core Parties is that the service of discovery requests must occur

much earlier if the Core Parties are to have time to evaluate the requests, search for, review and

produce documents, review the others parties' document productions and then have the

minimum amount of time necessary to schedule and conduct all fact depositions.

   12. With respect to the May 22 discovery request date, for this date to be

adopted, Court action this week is necessary or we will have been frustrated by the simple

refusal of certain other Core Parties to agree.  With regard to the Canadian Core Parties'

expressed concern that discovery requests should come after reply pleadings on allocation, the

US Interests believe that is an unnecessary luxury that the schedule cannot afford.  Waiting

another two weeks to serve discovery requests necessarily means either two fewer weeks for the

review and production of documents or whittling more time from the already short period for

deposition discovery during the summer months when many non-party witnesses will

undoubtedly be vacationing, introducing additional scheduling constraints.

   13. The Core Parties will almost certainly gain sufficient – if not complete –

knowledge necessary to draft discovery requests from the parties' opening pleadings on

allocation.  Frankly, it is difficult to comprehend that at this point in these proceedings, after

three mediations in which the Core Parties exchanged substantial materials on their respective

positions, that any Core Party cannot issue discovery requests immediately.  However, should

unexpected issues arise for the first time in reply pleadings, the Core Parties can agree to very

narrow supplemental requests directed specifically at newly identified issues.  Under the

circumstances and given the January 6, 2014 trial date, there is no reason to allow the passage of

two weeks before the service of discovery requests because of the hypothetical prospect that a subset of Core Parties may desire a handful of supplemental requests after reply pleadings.

14.    Second, the US Interests believe that rolling document productions should commence three weeks after the service of document requests and be completed within six weeks of the service of such requests.  Assuming requests are served on May 22, rolling productions would begin on June 12 and end by July 3.  In contrast, the Monitor desires a five week period for the production of all documents, commencing on June 3 and concluding on July 9, which leaves less time both to produce documents and to conduct fact depositions.

15.    Conversely, while the EMEA Debtors agree that requests could be served as early as May 22, they propose that document productions continue until the end of July.  But given the time needed to review documents between the completion of productions and the start of depositions, the US Interests believe that this schedule would leave far too little time before the September 27 deadline for the completion of fact depositions.  For that matter, the Monitor's schedule moves the court-ordered date for the conclusion of fact discovery forward by two days, from September 27 to September 25, a position with which the US Interests disagree.

<u>Other Discovery-Related Dates</u>

16.    The US Litigation Timetable has various dates for meet and confers, motions to compel, the identification of witnesses and the like, none of which we believe to be controversial once the other dates are set by the Courts.

<u>Expert Discovery</u>

17.    With regard to expert discovery, there is virtually no disagreement among the parties who have expressed opinions except that the EMEA Debtors propose that initial expert reports be due two weeks after fact discovery concludes, on October 11, while both the US Interests and the Monitor propose that they be due one week after, on October 4.  The EMEA

Debtors, as a result, have rebuttal reports likewise due a week later than the US Interests and the Monitor propose – on November 8 rather than November 1 – and thus one less week for expert depositions which must conclude by December 6.

Pre-Trial Schedule

18.     Finally, the US Interests believe that they and the Monitor are in agreement regarding the pre-trial schedule, which puts all papers before the Courts by December 20, 2013:

19.     In addition to the US Litigation Timetable, enclosed herewith as **Exhibit C** to this Emergency Motion is a related proposed Discovery Plan, which provides many important details with respect to discovery.

Participation in Claims Processes

20.     The EMEA Debtors and the UK Pension Claimants have advised the other parties that they object to the participation of the US Interests in the Canadian claims proceedings and the participation of the Monitor and Canadian Debtors in the US claims proceedings.  Indeed, this was identified on the May 11, 2013 call as a reason for their refusal to sign the stipulation regarding initial dates.  This objection is misplaced, as the Courts have already ruled – in the Claims Resolution Order entered by this Court on November 5, 2010 and by the Ontario Court on September 16, 2010 on notice to the EMEA Debtors and UK Pension Claimants – that the US Interests have a right to participate in the Canadian claims proceedings and, conversely, that the Monitor and Canadian Debtors have corresponding rights with respect to the US claims proceedings.

Discovery Groups

21.     Despite the Courts' orders approving discovery groups, the CCC has insisted that it be placed in its own group, apart from the Canadian Debtors and the Monitor.

The US Interests strongly disagree with this proposal, which undermines the idea behind discovery groups: that Core Parties who share common interests be required to work together to avoid duplicative discovery.  There is no way in which the CCC's goals should diverge from those of the other members of the Canadian Allocation Group, and the CCC has proffered no explanation for its position.  The CCC's goals in Allocation should be entirely congruent with the Canadian Debtors and the Monitor, and they must remain in the discovery group endorsed by the Courts.

<u>Confidentiality Stipulation</u>

22.     Finally, the CCC advised the other Core Parties late Friday afternoon on a conference call among all Core Parties that they intend to seek relief from the Canadian Court about the proposed confidentiality stipulation that the Core Parties have been negotiating and are nearly in a position to submit for judicial approval.  While the CCC declined to reveal on that call the substance of the complaint they intend to raise; they have expressed a frustration, which is shared by the UK Pension Claimants, that the lack of a confidentiality stipulation prevents them from accessing the Merrill data room, to which the US Interests offered to submit such a stipulation to the Courts on any schedule they desire.  The CCC, however, declined to advise what could be done to accommodate their concerns.  The Monitor has been leading the negotiation of the confidentiality stipulation, and although the US Interests have not been involved in many of the discussions, we understand we are close to reaching agreement with the other parties.

23.     It is worth noting that after receiving a new draft of the confidentiality stipulation from the Monitor late Friday, the US Interests provided comments on Sunday evening.  Accordingly, the draft is currently awaiting action by the Canadian parties.

## **Notice**

24.     Notice of the Emergency Motion has been given via email to (i) the U.S. Trustee; and (ii) counsel to the Core Parties.  The US Interests submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

25.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Left Intentionally Blank]*

WHEREFORE, the US Interests respectfully request that this Court (i) grant this Emergency Motion and the relief requested herein; (ii) enter the Proposed Order attached hereto as **Exhibit A** (a) establishing Tuesday, May 14 as the deadline for any Core Party who wishes to participate in the Allocation dispute to serve an initial submission; and (b) setting a joint hearing as soon as possible with the Canadian Court to establish a Litigation Timetable and Discovery Plan for Allocation, EMEA Claims, and UK Pension Claims and granting them such other and further relief as the Court deems just and proper.

Dated:  May 13, 2013          CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

Howard Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

- and -

11

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee*
*of Unsecured Creditors*