# EXHIBIT 1

Court of Appeal File No.: M38604
Court File No.: 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985 c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

# FACTUM OF THE MOVING PARTY
# THE UK PENSIONS REGULATOR
# MOTION TO EXPEDITE THE APPEAL

**BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
Scotia Plaza
40 King Street West
Toronto, Ontario
M5H 3Y4

**JOHN D. MARSHALL**
Direct Dial: (416) 367-6024
Direct Fax: (416) 361-2763
LSUC REG. #16960Q

**CRAIG J. HILL**
Direct Dial 416-367-6156
Direct Fax 416-361-7301
LSUC Reg. #31888K

Lawyers for The U.K. Pensions Regulator

Court of Appeal File No.: M38604
Superior Court of Justice File No.: 09-CL-7950

**COURT OF APPEAL FOR ONTARIO**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985 c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

# FACTUM OF THE MOVING PARTY,
# THE U.K. PENSIONS REGULATOR ON
# MOTION TO EXPEDITE APPEAL

## PART I - OVERVIEW

1.      This is a motion for an order that a motion for leave to appeal by The UK Pensions
Regulator (the "U.K. Regulator") be heard orally by a panel of this Court and that the
motion for leave to appeal and the appeal, if leave is granted, be heard as a single
proceeding, on an expedited basis.

2.      The U.K. Regulator seeks leave to appeal from the order of the Honourable Mr. Justice
Morawetz dated February 26, 2010, (the reasons for which are contained in an
endorsement dated March 18, 2010) in Nortel's proceedings under the *Companies'*

*Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended, ("CCAA") which order purported to declare (i) that a regulatory proceeding initiated by the U.K. Regulator in the United Kingdom against the applicants Nortel Network Corporation ("NNC") and Nortel Network Limited ("NNL") pursuant to the U.K. *Pensions Act 2004* (the "*U.K. Pensions Act*") amounted to a breach of the stay provisions of the initial order obtained by NNC and NNL under the CCAA, and (ii) that the U.K proceeding is void and unenforceable.

3.    The U.K. Regulator's proceeding involves the determination of whether a Financial Support Direction should be issued against NNC and NNL pursuant to the *U.K. Pensions Act.* Under that Act the determination must be made by no later than June 30, 2010. Otherwise, the U.K. Regulator will lose jurisdiction to issue a Financial Support Direction against NNC and NNL. Accordingly, it is necessary that the U.K. Regulator's motion for leave to appeal and the appeal, if leave be granted, be heard on an expedited basis so that the appeal does not become academic.

## PART II - THE FACTS

### The CCAA Proceedings

4.    On January 14, 2009, NNC and NNL (collectively "Nortel") filed for and obtained protection under the CCAA. Pursuant to an order of the Superior Court of Justice (the "Initial Order") a comprehensive stay of proceedings was granted in favour of Nortel.

> Third Amended and Restated Initial Order, dated January 14, 2009
> ["Initial Order"], paras. 14 and 15, Moving Party's Motion Record
> ["Motion Record"], Tab 4, p. 57

5.      Ernst & Young Inc. was appointed monitor (the "Monitor") for the purposes of the

CCAA proceedings in the Initial Order.

>       **Initial Order, para. 24, Motion Record, Tab 4, p. 60**

6.      Similar proceedings were brought on behalf of Nortel's international subsidiaries and

affiliates.  The British subsidiary Nortel Networks U.K. Limited ("NNUK"), as well as

certain other Nortel subsidiaries located in Europe, the Middle East and Africa, were

granted Administration Orders by the High Court of England and Wales on January 14,

2009.

>       **Thirty-Eighth Report of the Monitor, dated February 17, 2010 ["Monitor's**
>       **38th Report"], para. 5, Motion Record, Tab 5, p. 94**

7.      Paragraph 52 of the Initial Order authorized the applicant and the Monitor to apply to any

court, tribunal, regulatory or administrative body, wherever located, for the recognition of

the Initial Order and assistance in carrying out its terms.  However, neither the Applicants

nor the Monitor made any such application to any court or tribunal in the U.K.

>       **Monitor's 38th Report, paras. 36- 41, Motion Record, Tab 5, pp. 101-102**

## The U.K. Regulator's U.K. Proceeding

8.      In order to understand the urgency of the U.K. Regulator's proposed appeal it is

necessary to understand the procedural basis of the impugned U.K. proceeding, which is

explained in the following paragraphs.

9.      The U.K. Regulator is a statutory regulatory body created by section 1 of the *U.K.*

*Pensions Act*.  One of the main statutory functions of the U.K. Regulator is to protect, by

regulatory action, the pension benefits of members of pension plans sponsored by U.K. entities such as NNUK.

> *U.K. Pensions Act*, ss. 1, 5, and 96, Affidavit of Robin Knowles, sworn February 17, 2010 [the "Knowles Affidavit"], Exhibit "C", Motion Record, Tab 7C, pp. 260, 261, 272-275

10.     One of the regulatory powers available to the U.K. Regulator is the issuance of a Financial Support Direction ("FSD") directed to any company, wherever situate, which is associated with a U.K. company whose pension plan is underfunded, so long as certain financial conditions are met. The details of the FSD process are set forth in the affidavit of Mr. Robin Knowles, Q.C. contained in the motion record.

> Knowles Affidavit, Motion Record, Tab 7C, p. 231

11.     In essence an FSD is a directive requiring a company (referred as a "Target Company") to provide financial support – including the provision of cash or security – to an underfunded pension plan sponsored by a U.K. company (referred as the "Employer"). In order for an FSD to be issued the U.K. Regulator must be satisfied that certain financial tests are met by both the Employer and the Target Company. It must also be satisfied that there are reasonable grounds upon which to require the Target Company to provide such support. The financial tests are described in more detail below.

12.     If, after investigation, the U.K. Regulator determines that the tests have been met and an FSD should be issued, the matter is referred to a Determinations Panel. The Determinations Panel is a panel established by the U.K. Regulator under s. 9 of the *U.K.*

*Pensions Act.* Its role, as set out in s. 10 of the Act, is to determine whether to exercise the U.K. Regulator's functions, including the issuance of an FSD.

> **U.K. Pensions Act, ss. 9, 10, and 96, Knowles Affidavit, Exhibit "C", Motion Record, Tab 7C, pp. 262-263, 272-275**

13.    The Determinations Panel considers the evidence provided by the Regulator, as well as any material or submissions provided by interested parties including the Target Company. If the Determinations Panel is satisfied that there are grounds to issue an FSD, that the required financial tests have been met and that it is otherwise reasonable to do so, it may issue an FSD.

> **U.K. Pensions Act, ss. 43 through 45 and 96, Knowles Affidavit, Exhibit "C", Motion Record, Tab 7C, pp. 264-271, 272-275**

14.    The FSD is not an enforcement proceeding and the issuance of an FSD against a Target Company does not make the U.K. Regulator a creditor of the Target Company. The FSD establishes a liability on the part of the Target. The beneficiaries of that liability are the trustee of the NNUK Pension Plan (the "Trustee") and the U.K. Pension Protection Fund ("PPF"). The PPF is another U.K. statutory body that may be required to make payments for the benefit of the beneficiaries of an underfunded pension plan. The PPF and the trustee of the NNUK pension plan are separately represented in the CCAA proceeding.

15.    It is important to note that neither the U.K. Regulator nor the Determinations Panel acts as an arbiter of an existing claim asserted by a pension plan trustee against a Target Company. An FSD is purely a statute-based liability that does not come into existence until it is issued by a Determinations Panel in the exercise of its regulatory powers.

16. If a Target Company does not comply with an FSD the U.K. Regulator may issue a Contribution Notice ("CN") which is similar to a judgment and requires the Target Company to pay to the trustee of the pension plan the sum specified in the CN. In effect, the CN constitutes the enforcement stage of the process.

> *U.K. Pensions Act*, s. 49, Knowles Affidavit, Exhibit "C", Motion Record, Tab 7C, pp. 270-271

17. A Target Company is entitled, but not obliged, to participate in the FSD proceeding by providing written responses to the U.K. Regulator or to the Determinations Panel and may request a hearing.

> *U.K. Pensions Act*, s. 96, Knowles Affidavit, Exhibit "C", Motion Record, Tab 7C, pp. 272-275

18. A Target Company has a right of appeal *de novo* to an appeal tribunal from the issuance of an FSD and a further appeal to the U.K. Court of Appeal on a question of law. On the appeal *de novo* a Target Company is free to adduce any evidence in support of its position.

> *U.K. Pensions Act*, s. 103, Knowles Affidavit, Exhibit "C", Motion Record, Tab 7C, pp. 276-277

## The NNUK – NNC/NNL FSD

19. Following the institution of the various Nortel insolvency proceedings the U.K. Regulator conducted an investigation and determined that the pension plan sponsored by NNUK had been underfunded over the course of several years and had a deficit in excess of £1.3 billion. The U.K. Regulator also concluded that based on Nortel's historical business

practices there were grounds upon which to issue an FSD against NNC and NNL requiring them to provide financial support to the underfunded NNUK pension plan. By a letter dated September 4, 2009 the Regulator informed NNC that it was considering issuing a warning notice which could lead to the issuance of an FSD against NNC and other entities in the Nortel group.

> **Letter from the U.K. Regulator to NNC dated September 4, 2009, Monitor's 38th Report, Exhibit "H", Motion Record, Tab 5H, p. 151**
>
> **Monitor's 38th Report, paras. 36-41, Motion Record, Tab 5, pp. 101-102**

20.     As noted above, the beneficiaries of any FSD issued against NNC or NNL are the Trustee and the PPF. Both the Trustee and the PPF filed proofs of claim in the Nortel CCAA proceeding in accordance with the October 7, 2009 Claims Order made in the CCAA Proceeding. Those proofs of claim include contingent claims for any amount that may be determined to be owing to the Trustee and the PPF pursuant to the Financial Support Direction Proceedings undertaken by the U.K. Regulator pursuant to the provisions of the *U.K. Pension Act*.

> **Proofs of Claim of the PPF and Trustee, Ventresca Affidavit, Exhibit "D", Motion Record, Tab 6D**
>
> **Claims Procedure Order dated July 30, 2009, Ventresca Affidavit, Exhibit "C", Motion Record, Tab 6C**

**The Warning Notice**

21.     Under the provisions of the *U.K. Pension Act*, before appointing a Determinations Panel with a view to issuing an FSD, the U.K. Pensions Regulator is required to deliver a "Warning Notice" to all interested parties. On January 11, 2010 the Regulator delivered a Warning Notice to a number of Nortel Targets, including NNC and NNL in Canada (the

"Warning Notice"). The Warning Notice explained in detail the basis for the Regulator's reasons for seeking an FSD and was accompanied by extensive supporting material.

> *U.K. Pensions Act*, s. 96, Knowles Affidavit, Exhibit "C", Motion Record, Tab 7C, pp. 272-275

> Affidavit of Andrew John Murray Spink, sworn March 25, 2010 ["Spink Affidavit"], para. 4(b), Motion Record, Tab 2, p. 9

22.     The Warning Notice informed NNC and NNL that they were entitled to make written representations in response to the Warning Notice as well as to make oral representations to the Determinations Panel.  NNC and NNL declined to participate in the process.

> Warning Notice, dated January 11, 2010, Supplementary Motion Record, Tab 1, p. 92

23.     A copy of the Warning Notice was provided to the court on the motion before the Honourable Mr. Justice Morawetz but it was sealed on the agreement of the parties due to U.K. statutory confidentiality concerns.

## The Monitor's Motion and the Order subject to proposed Appeal

24.     By notice of motion dated February 17, 2010 the Monitor brought a motion returnable on an expedited basis on February 25, 2010 before the Honourable Mr. Justice Morawetz. The substantive relief sought by the Monitor was an order on the following terms:

> (a)     Abridging the time for service of its Notice of Motion and the Motion Record herein and validating service thereof so that this motion is properly returnable on February 25, 2010;

(b)     Declaring that the purported exercise of rights and the commencement of
proceedings against the Applicants, Nortel Networks Corporation and
Nortel Networks Limited, by the Pensions Regulator under *The Pensions
Act 2004* (U.K.) amounted to breaches of paragraphs 14 and 15 of the
Initial Order [i.e. the stay provisions];

(c)     Authorizing, directing and requiring the Applicants and the Monitor to
refrain from participating in any proceedings commenced by The Pensions
Regulator in breach of the Initial Order;

(d)     Declaring that for the purposes of these proceedings all acts taken by the
U.K. Pensions Regulator in the purported exercise of rights and in
commencing any proceedings against any of the Applicants, without the
consent of those Applicants and the Monitor or without leave of this Court
having been first obtained, are null and void and shall be given no force or
effect in these proceedings nor otherwise recognized as creating or
forming the basis of any valid or enforceable rights, remedies or claims
against the Applicants or any of their assets, property or undertakings in
Canada.

**Notice of Motion returnable February 25, 2010, Motion Record, Tab 3**

25.     The next day, February 26, 2010, the Honourable Mr. Justice Morawetz released an
endorsement by email which read as follows:

> "The Stay applies.  The relief requested in (a), (b) and (d) of the Notice of Motion
> is granted.  No order in respect of (c).  Reasons will follow."

**Endorsement dated February 26, 2010, Motion Record, Tab 12**

26.     On March 18, 2010 the Honourable Mr. Justice Morawetz released written reasons for his
decision.

**Reasons dated March 18, 2010 [the "Reasons"], Motion Record, Tab 13**

- 10 -

27.    Mr. Justice Morawetz's formal order was issued and entered on April 9, 2010.

> **Order of Justice Morawetz dated February 26, 2010, Motion Record, Tab 14**

28.    On March 11, 2010, the U.K. Regulator served and filed a notice of motion for leave to appeal to the Court of Appeal for Ontario in respect of Justice Morawetz's February 26, 2010 order, pursuant to section 13 of the CCAA.  The main issues on the proposed appeal are (i) whether the Initial Order could apply to the U.K. FSD proceeding in the first place, and (ii) whether Mr. Justice Morawetz had the power or jurisdiction to declare that proceeding to be void or unenforceable at this stage in the proceedings.

**Urgency of Proposed Appeal - the June 30, 2010 Deadline**

29.    For reasons explained in more detail in Part IV of this factum, pursuant to the *U.K. Pensions Act* the Determinations Panel will be unable to issue an FSD against NNC and NNL after June 30, 2010.  If an FSD is not issued by that date no FSD can be issued.

> **Reasons, para. 12, Motion Record, Tab 13, p. 362**
>
> **Spink Affidavit, para. 20, Motion Record, Tab 2, p. 18**
>
> **Affidavit of Robert Wallace Ham, Q.C., affirmed February 24, 2010 [the "Ham Affidavit"], para. 65(4), Motion Record, Tab 10, p. 344**
>
> **Knowles Affidavit, para. 35, Motion Record, Tab 7, p. 243**

30.    If an FSD is not issued by June 30, 2010 the U.K. Regulator's proposed appeal will become academic and the component of the claims filed by the Trustee and the PPF in the Nortel CCAA proceeding that are based on any FSD that might be issued will be

effectively extinguished as those claims depend entirely upon the issuance of an FSD by the Determinations Panel.

## PART III – THE ISSUES

31.    The issues on this motion are:

(1)    Whether the motion by the U.K. Regulator for leave to appeal and its proposed appeal from the decision of the Honourable Mr. Justice Morawetz dated February 26, 2010 should be expedited; and

(2)    Whether the U.K. Regulator's motion for leave to appeal ought to be heard orally and, if leave be granted, be heard at the same time as the appeal itself.

## PART IV - LAW AND ARGUMENT

**Jurisdiction to Expedite Leave Motion and Appeal**

32.    Subrule 3.02 (1) of the *Rules of Civil Procedure* permits a judge of the Court of Appeal to abridge a time relating to an appeal:

> 3.02 (1) Subject to subrule (3), the court may by order extend or abridge any time prescribed by these rules or an order, on such terms as are just. [...]
>
> (3) An order under subrule (1) extending or abridging a time prescribed by these rules and relating to an appeal to an appellate court may be made only by a judge of the appellate court.
>
> *Rules of Civil Procedure*, R.R.O. 1990, Reg. 194, as amended, [the "*Rules of Civil Procedure*" or the "*Rules*"] Rules 3.02(1) and (3)

33.    Pursuant to the Practice Direction Concerning Civil Appeals in the Court of Appeal, appeals may be expedited by a judge of the court on being satisfied, on motion, that the urgency of the matter is such that an early hearing date is necessary.  Motions to expedite appeals may be brought to a judge in chambers.

> **Practice Direction Concerning Civil Appeals in the Court of Appeal, ss. 5.1.1(7), 11.2(6)**

**Urgency of Motion for Leave and Appeal**

34.    As submitted above, if an FSD is not issued by June 30, 2010 the Determinations Panel will lose jurisdiction and will be unable thereafter to issue an FSD against NNC or NNL. In that event, the proposed appeal would be rendered academic and the claims made by the Trustee and the PPF in the Nortel CCAA proceeding would be extinguished.  It is therefore crucial that the U.K. Regulator's motion for leave to appeal and the appeal itself be heard before June 30, 2010.

35.    In order to illustrate the significance of the June 30, 2010 date, and therefore the urgency of the leave motion and appeal, it is necessary to explain in some detail the statutory pre-conditions that must be established before an FSD can be issued.

36.    The mechanics and preconditions of issuing an FSD are explained in detail in the affidavit of Andrew John Murray Spink, Q.C. filed in support of this motion.  In summary, the pre-conditions are as follows.

> **Spink Affidavit, Motion Record, Tab 2**

37.    In order for an FSD to be issued the U.K. Regulator must establish what is referred to as
the "insufficiently resourced" test under the *U.K. Pensions Act* and the regulations
thereunder. There are two elements to the test, both of which must be established. First,
it must be shown that the value of the "resources" (roughly equivalent to net assets) of the
Employer sponsoring the pension plan (in this case NNUK) at the "Relevant time" is less
than 50% of the estimated s. 75 debt (i.e. the funding deficit) in relation to the Plan. That
is referred to as the "Employer Test". Second, it must be shown that the value of the
resources of the Target Company (i.e. NNC and NNL) at the Relevant Time were more
than the difference between the value of the Employer's resources and 50% of the NNUK
plan funding deficit. This is referred to as the "Associate Test".

> **U.K. Pensions Act, ss. 43, 44, Knowles Affidavit, Exhibit "C", Motion
> Record, Tab 7C, pp. 264-269**
>
> **Spink Affidavit, para. 11, Motion Record, Tab 2, p. 12**

38.    It is up to the U.K. Regulator to select the Relevant Time at which both the Employer
Test and the Associate Test are applied. In this case, the Regulator chose June 30, 2008
as the Relevant Time. The Regulator explained the rationale for the choice of that date in
paragraph 257 of the Warning Notice as follows:

> *The relevant time that the Regulator has chosen is 30th June, 2008 because
> this is the last quarterly date for which reliable financial information for
> the Group is available before its market capitalization was adversely
> impacted by the exceptional conditions in the financial market in the
> second half of 2008. Accordingly, the Regulator considers this to be an
> appropriate relevant time.*

> **Warning Notice, para. 257, Supplementary Motion Record, Tab 1**

- 14 -

39.     Under the provisions of the *U.K. Pensions Act* an FSD can only be issued within two years after the Relevant Time chosen by the U.K. Regulator. Accordingly, if an FSD is to be issued against NNC and NNL at all, it must be issued on or before June 30, 2010.

**Ham Affidavit, paras. 32(2), 65(4), Motion Record, Tab 10, pp. 335, 344**

40.     It has been suggested on behalf of the Monitor and the Applicants that the U.K. Regulator could avoid the urgency issue by choosing a date after June 30, 2008 as the Relevant Time. However, if a later date were substituted it is virtually certain that one element of the "insufficiently resourced" test would not be met at such later date. The U.K. Regulator is satisfied that both the Employer Test and the Associate Test are satisfied as at June 30, 2008. The Regulator is also satisfied that the Employer Test would be met at any time after that date. However, the position relating to the Associate Test (i.e. the value of the resources of NNC and NNL) is different. That test could not be met at any date after June 30, 2008 if, as at that subsequent date, the value of the resources of NNC and NNL ceased to be greater than the difference between the value of NNUK's resources and 50% of the estimated pension plan deficit. Any significant decrease in the value of the resources of NNC and NNL following June 30, 2008 would result in the Associate Test not being met as of any such later date. Accordingly, as noted above, if the Associate Test would not be met as of the Relevant Time, no FSD could be issued as the pre-conditions would not be satisfied.

**Spink Affidavit, para. 20, Motion Record, Tab 2, p. 18**

41.    Due to the general economic downturn following June 30, 2008 and the insolvent circumstances of NNC and NNL following that date it is likely that the resources of NNC and NNL would not meet the Associate Test as of a date after June 30, 2008.

            **Spink Affidavit, para. 12, Motion Record, Tab 2, p. 14**

42.    In short, were the U.K. Regulator to choose as the Relevant Time a date after June 30, 2008 it would virtually assure that no FSD could be issued against NNC or NNL. That would constitute a failure on the part of the U.K. Regulator to fulfill its statutory obligations and objectives.

            **Spink Affidavit, para. 20, Motion Record, Tab 2, p. 18**

**Law – Expediting Appeal**

43.    The Federal Court of Appeal has held that an appeal should be expedited where:

    (a)    irreparable harm will result if the hearing is not expedited;

    (b)    a timetable can be agreed upon which is convenient to the Court and counsel for the parties for the hearing of the appeal; and

    (c)    the appeal will not be heard to the detriment of others whose matters have already been scheduled for hearing.

            *Apotex Inc. v. Wellcome Foundation Ltd.* (1998), 228 N.R. 355 (F.C.A.) [hereinafter *Apotex*] at paras. 2 and 3, U.K. Regulator's Brief of Authorities, Tab 1

44.    In a more recent case, the Federal Court of Appeal has questioned whether the requirements to be satisfied for an expedited hearing are as strict as the test laid out in *Apotex*, in particular questioning whether an applicant must demonstrate irreparable harm to obtain an order for an expedited appeal.

> *Dragan v. Canada (Minister of Citizenship and Immigration)*, [2003] F.C.J. No. 434 (F.C.A.) [hereinafter *Dragan*] at para. 7, U.K. Regulator's Brief of Authorities, Tab 2

45.    In any event, the test for an expedited appeal set out in *Apotex* is met in the case at bar. Irreparable harm will result if the hearing is not expedited. Rendering an appeal academic or moot if the appeal is not expedited constitutes irreparable harm. If the U.K. Regulator's proposed appeal is not heard before the June 30, 2010 deadline for the issuance of an FSD the appeal will be rendered academic and the claims filed by the Trustee and PPF based on the anticipated issuance of an FSD will be effectively extinguished.

> *Dragan, supra*, at para. 9

46.    Counsel for the U.K. Regulator is prepared to endeavour to make themselves available on the soonest possible date that the Court is available to hear this matter, and to work together with the Scheduling Unit and the Monitor to ensure that a timetable can be agreed upon which is convenient to the Court and counsel for the parties for the hearing of the appeal.

**Law – Oral hearing of Motion for Leave at Same Time as the Appeal**

47.   Pursuant to Rule 2.03 of the *Rules*, a single Judge of the Court of Appeal for Ontario has

jurisdiction to order that the U.K. Regulator's motion for leave to appeal be heard orally.

> *Air Canada (Re)*, [2003] O.J. No. 2207 (Ont. C.A.) [hereinafter *Air Canada*]
> at para. 13, U.K. Regulator's Brief of Authorities, Tab 3
>
> *Rules of Civil Procedure*, Rule 2.03

48.   The Court of Appeal for Ontario has held that the test for an order that a leave motion and

the appeal itself be heard orally as a single proceeding before the same panel is as

follows:

(a)   The moving party can demonstrate that it will be substantially prejudiced if the

order is not granted; and

(b)   The responding party would not be unfairly prejudice if the order is granted.

> *Air Canada, supra* at para. 15

49.   As outlined above, due to the time constraints imposed by the June 30, 2010 deadline, the

U.K. Regulator, the PPF and the Trustee will be substantially prejudiced by delay if an

order consolidating the leave motion and the proposed appeal into a single oral

proceeding is not granted.

50.   Except for the fact that a delay in the hearing of the proposed appeal beyond June 30,

2010 might benefit the Applicants as a result of the potential extinguishment of the

claims of the Trustee and the PPF, neither the Applicants nor the Monitor would

otherwise be unfairly prejudiced by an order consolidating and expediting the leave motion and the hearing of the proposed appeal itself.

## Special Considerations in the Context of a CCAA Appeal

51.    In *Re: Stelco Inc.*, Laskin J.A. considered the issue of expediting the appeal of an order made in the course of CCAA proceedings, and directing that the motion for leave be heard orally at the same time as the appeal. Justice Laskin took a number of factors into account when granting the orders requested by the moving party, including the following factors which are relevant to the within motion:

> CCAA proceedings are invariably fast-moving, and often unpredictable. In this context, the court should strive where it can to achieve a measure of stability and certainty. To me, that means taking a generous view of "urgency". Indeed, if "real time" litigation – the speedy handling of restructurings – is to be meaningful, it must occur not just in the "commercial list", but also in this court when rulings affecting the restructuring are challenged. Otherwise the corporate community, the commercial bar and the public will lose confidence in the ability of this court to deliver justice [...]
>
> The workers brought [the motion under appeal] on an urgent basis. That urgency does not disappear because the workers obtained the order that they wanted.
>
> ***Stelco Inc. (Re)***, [2005] O.J. No. 802 (Ont. C.A.) [hereinafter *Stelco*] at para. 4, U.K. Regulator's Brief of Authorities, Tab 4

52.    Justice Laskin had previously granted a motion to expedite the appeal of an order made under the CCAA in *Air Canada*, finding that "certainty and stability in the CCAA proceedings warrant having both the leave motion and, if leave is granted, the appeal itself heard promptly."

> ***Air Canada, supra*** at para. 14

53.     The first of the two factors set out in *Stelco* applies in the case at bar.  The Order that is
        the subject of the proposed appeal was made pursuant to the CCAA in the course of a
        restructuring and a timely consideration and determination of the issues on the proposed
        appeal are necessary to do justice to all parties.

54.     The second of these two factors also applies in this case.  As outlined above, the Monitor
        advised the Regulator of its intention to bring the February 25, 2010 motion appealed
        from on February 8, 2010.  The Notice of Motion was served on February 17, 2010.  The
        Monitor's motion materials were served on the Regulator 5 days before the motion, and
        the Monitor's factum was served 4 days before the motion (calculated based on Rule 3.01
        of the *Rules*), well short of the 7 days required by the *Rules*.  The motion appealed from
        was brought on an expedited basis and the Regulator was required to respond on an
        urgent basis.  To paraphrase Laskin J.A. in *Stelco*, "that urgency does not disappear"
        because the Monitor obtained the Order that it wanted.

                    ***Stelco, supra,* at para. 4**

                    ***Rules of Civil Procedure,* Rules 37.10(1) and 37.10(7)**

55.     The issues raised on the leave motion and the proposed appeal involve important
        questions of international law and the application of orders of the Ontario Superior Court
        to the actions of foreign regulatory authorities in a CCAA context.  These issues,
        however, are narrowly defined and the expedited oral hearing sought by the U.K.
        Regulator will not impose a burden on the court's resources should the order be granted.

## PART V - ORDER REQUESTED

56.     For the above reasons, the UK Pensions Regulator requests that the relief requested in the notice of motion be granted, with costs.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED**

April 13, 2010

_____
John D. Marshall

_____
Craig J. Hill

Lawyers for the UK Pensions Regulator

## SCHEDULE "A" - AUTHORITIES

1.    *Apotex Inc. v. Wellcome Foundation Ltd.* (1998), 228 N.R. 355 (F.C.A.)

2.    *Dragan v. Canada (Minister of Citizenship and Immigration)*, [2003] F.C.J. No. 434 (F.C.A.)

3.    *Air Canada (Re)*, [2003] O.J. No. 2207 (Ont. C.A.)

4.    *Stelco Inc. (Re),* [2005] O.J. No. 802 (Ont. C.A.)

## SCHEDULE "B" – STATUTES AND REGULATIONS

*Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36

Leave to appeal

**13.** Except in Yukon, any person dissatisfied with an order or a decision made under this Act may appeal from the order or decision on obtaining leave of the judge appealed from or of the court or a judge of the court to which the appeal lies and on such terms as to security and in other respects as the judge or court directs.

*Rules of Civil Procedure*, R.R.O. 1990, Reg. 194, as amended

## COURT MAY DISPENSE WITH COMPLIANCE

**2.03** The court may, only where and as necessary in the interest of justice, dispense with compliance with any rule at any time.

## COMPUTATION

**3.01** (1) In the computation of time under these rules or an order, except where a contrary intention appears,

   (a) where there is a reference to a number of days between two events, they shall be counted by excluding the day on which the first event happens and including the day on which the second event happens, even if they are described as clear days or the words "at least" are used;

   (b) where a period of seven days or less is prescribed, holidays shall not be counted;

   (c) where the time for doing an act expires on a holiday, the act may be done on the next day that is not a holiday; and

   (d) service of a document, other than an originating process, made after 4 p.m. or at any time on a holiday shall be deemed to have been made on the next day that is not a holiday.

   (2) Where a time of day is mentioned in these rules or in any document in a proceeding, the time referred to shall be taken as the time observed locally.

## EXTENSION OR ABRIDGMENT

### *General Powers of Court*

<u>3.02</u> <u>(1)</u>  Subject to subrule (3), the court may by order extend or abridge any time prescribed by these rules or an order, on such terms as are just.

<u>(2)</u>  A motion for an order extending time may be made before or after the expiration of the time prescribed

### *Times in Appeals*

<u>(3)</u>  An order under subrule (1) extending or abridging a time prescribed by these rules and relating to an appeal to an appellate court may be made only by a judge of the appellate court.

### *Consent in Writing*

<u>(4)</u>  A time prescribed by these rules for serving, filing or delivering a document may be extended or abridged by filing a consent.


## MATERIAL FOR USE ON MOTIONS

### *Where Motion Record Required*

<u>37.10</u> <u>(1)</u>  Where a motion is made on notice, the moving party shall, unless the court orders otherwise before or at the hearing of the motion, serve a motion record on every other party to the motion and file it, with proof of service, in the court office where the motion is to be heard, at least seven days before the hearing, and the court file shall not be placed before the judge or master hearing the motion unless he or she requests it or a party requisitions it.

[...]

### *Factum*

<u>(6)</u>  A party may serve on every other party a factum consisting of a concise argument stating the facts and law relied on by the party.

<u>(7)</u>  The moving party's factum, if any, shall be served and filed with proof of service in the court office where the motion is to be heard at least seven days before the hearing.

## Practice Direction Concerning Civil Appeals in the Court of Appeal

## 5. MOTIONS TO THE COURT OF APPEAL IN CIVIL MATTERS

### 5.1. Motions to a Single Judge

### 5.1.1. General

1. A judge in Chambers hears motions daily at 10 o'clock in the morning. Counsel may select the date for the hearing of a motion provided that time limits set out in the *Rules of Civil Procedure* regarding service and filing are complied with.

2. In urgent situations where such time limits cannot be complied with, leave to file material may be obtained from the Registrar or a judge.

3. The notice of motion shall contain a statement outlining the jurisdiction of a single judge to hear the motion and grant the relief requested.

4. The notice of motion shall contain an estimated length of time for the oral argument of the motion.

5. In order to ensure the efficient use of Court resources, the Registrar may direct that a motion scheduled for hearing be removed from the list and rescheduled to a different date. Counsel or the parties will be consulted before the motion is removed from the list and the hearing rescheduled.

6. Motions to expedite the production of transcripts must be served on the opposing party and the court reporter or the local Manager/Coordinator of Court Reporters.

7. Motions to expedite appeals may be brought to a judge in Chambers.


## 11 SCHEDULING PROCEDURES

### 11.2 Expedited Appeals

1. As a result of the success of initiatives to reduce the court's backlog, most civil appeals will be heard within six months of perfection. However, it is recognized that some appeals must be heard more quickly.

2. The following appeals shall be expedited without the necessity obtaining an order to that effect: (a) Family law appeals (b)Summary judgment appeals (c) Appeals that may delay the progress of an ongoing proceeding.

3 .Counsel should advise the Appeals Scheduling Unit of the court by fax (416-327-6256) that an appeal meets one of these criteria.

4. Such appeals will be heard at the earliest practicable date, usually within three months of perfection.

5. If the proposed date for hearing such an appeal is unsuitable, a motion may be brought to a judge of the court in chambers for an earlier hearing date.

6. Other appeals may be expedited by a judge of the court on being satisfied, on motion, that the urgency of the matter is such that an early hearing date is necessary.

Court of Appeal File No.: M38604
Superior Court File No.: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985 c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## COURT OF APPEAL FOR ONTARIO
Proceeding commenced in Toronto

## FACTUM OF THE MOVING PARTY ON MOTION TO EXPEDITE LEAVE TO APPEAL

**BORDEN LADNER GERVAIS LLP**
Scotia Plaza
40 King Street West
Toronto, Ontario
M5H 3Y4

**JOHN D. MARSHALL (LSUC#: 16960Q)**
Direct Dial: (416) 367-6024
Direct Fax: (416) 361-2763

**CRAIG J. HILL (LSUC#: 31888K)**
Direct Dial (416) 367-6156
Direct Fax (416) 361-7301

Lawyers for the UK Pensions Regulator

::ODMA\PCDOCS\TOR01\4328794\4