# EXHIBIT 3



## SUPERIOR COURT OF JUSTICE
COUR SUPÉRIEURE DE JUSTICE

*361 University Avenue*
*Toronto, ON M5G 1T3*

*Telephone: (416) 327-5284  Fax: (416) 327-5417*

# FAX COVER SHEET

Date: March 18, 2010

TO:                                              FAX NO.:

Jennifer Stam                                    416-216-3930

Christopher Armstrong                            416-979-1234

FROM:         The Honourable Mr. Justice Morawetz

TOTAL PAGES (INCLUDING COVER PAGE):   9

MESSAGE:      Endorsement: Nortel Networks #09-CL-7950
              (Heard Feb. 25/10)

              **PLEASE ENSURE THAT COPIES ARE GIVEN TO THE
              SERVICE LIST PER MR. JUSTICE MORAWETZ'S
              INSTRUCTIONS.**

                                              Thank you.
                                              Cathy Lanni

*The Information contained in this facsimile message is confidential information. If the person actually receiving this facsimile or any other reader of the facsimile is not the named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address*

Original will NOT follow. If you do not receive all pages, please telephone us immediately at the above number.

**CITATION:** Nortel Networks Corporation (Re), 2010 ONSC 1304
**COURT FILE NO.:** 09-CL-7950
**DATE:** 20100318

**SUPERIOR COURT OF JUSTICE – ONTARIO (COMMERCIAL LIST)**

**RE:** IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION, Applicants

**BEFORE:** MORAWETZ J.

**COUNSEL:** Fred Myers, J. Carfagnini and C. Armstrong, for Ernst & Young, Inc., Monitor

Derrick Tay, Alan Merskey and Suzanne Wood, for the Applicants

Adam Hirsh, for the Board of Directors of Nortel Networks Limited and Nortel Networks Corporation

Arthur O. Jacques, for Nortel Canadian Continuing Employees

Kevin Zych, for Informal Noteholder Group

John Marshall and James Szunski, for The Pensions Regulator (U.K.)

Mark Zigler, for the Former and Disabled Canadian Employees

William Burden and David Ward, for the UK Pension Trustee and the Pension Protection Fund

M. Starnino, for the Pension Benefit Guarantee Fund

Alex MacFarlane, for the Unsecured Creditors' Committee

**HEARD:** FEBRUARY 25, 2010

**RELEASED:** FEBRUARY 26, 2010

**REASONS:** MARCH 18, 2010

**ENDORSEMENT**

## INTRODUCTION

[1] Ernst & Young, Inc., in its capacity as Monitor of the Applicants (the "Monitor") brings this motion for an order:

(a) validating short service;

(b) declaring that the purported exercise of rights and the commencement of proceedings against the Applicants, Nortel Networks Corporation and Nortel Networks Limited, by The Pensions Regulator under the *Pensions Act 2004* (U.K.) amount to breaches of paragraphs 14 and 15 of the Initial Order;

(c) authorizing, directing and requiring the Applicants and the Monitor to refrain from participating in any proceedings commenced by The Pensions Regulator in breach of the Initial Order; and

(d) declaring that the for the purposes of these proceedings all acts taken by the U.K. Pensions Regulator in the purported exercise of rights and in commencing any proceedings against any of the Applicants, without the consent of those Applicants and the Monitor or without leave of this court having been first obtained, are null and void and should be given no force or effect in these proceedings nor otherwise recognized as creating or forming the basis of any valid or enforceable rights, remedies or claims against the Applicants or any of their assets, property or undertaking in Canada.

[2] The motion was heard on February 25, 2010.

[3] On February 26, 2010, the Record was endorsed: "The Stay applies. The relief requested in (a), (b) and (d) of the Notice of Motion is granted. No order in respect of (c). Reasons will follow".

[4] These are those reasons.

## FACTS

[5] Paragraphs 14 and 15 of the Initial Order, granted January 14, 2009, provide as follows:

> 14. THIS COURT ORDERS that until and including February 13, 2009 or such later date as this Court may order (the "Stay Period"), no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced, or continued against or in respect of any of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the affected Applicant and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the affected Applicant or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.
>
> 15. THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of

the foregoing, collectively being "Persons" and each being a "Person") against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the affected Applicant and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (ii) exempt the Applicants from compliance with statutory or regulatory provisions relating to health, safety or the environment, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

[6] The Pensions Regulator ("The Pensions Regulator") is the body charged with the enforcement of certain provisions of the *Pensions Act 2004* (U.K.) (the "U.K. Statute").

[7] The U.K. Statute's objectives include protecting the benefits of employees in work-based pension schemes and promoting proper administration of those schemes. Under s. 96 of the U.K. Statute, the Regulator may determine whether or not to take regulatory action, which includes, *inter alia*, determining whether the applicable pension is underfunded, quantifying the deficit and holding the employer or a related party responsible for such deficit. The Determinations Panel, an internal group, determines whether the regulatory functions should be exercised.

[8] On August 24, 2009, The Pensions Regulator advised the Administrators of the Nortel Networks UK Limited ("NNUK") (the "Administrators") Pension Plan that it was considering issuing a warning notice, a mandatory step towards issuing a financial support direction ("FSD"). A warning notice sets out the grounds for the potential issuance of an FSD, which is a direction requiring a party to put financial supports in place for an underfunded pension scheme. Any company that is an associate of or is otherwise connected with an employer may be issued an FSD.

[9] On September 4, 2009, The Pensions Regulator wrote to Nortel Networks Corporation ("NNC") advising that it was considering issuing a warning notice seeking an FSD against NNC and other members in the Nortel Group.

[10] On September 16, 2009, NNC wrote to The Pensions Regulator advising that because of the stay issued by this court under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 ("CCAA"), it could not consider individual potential claims.

[11] On January 11, 2010, The Pensions Regulator issued a warning notice to NNC, NNI and 27 other companies in the Nortel Group (the "Notice"). The Notice was sent to Nortel Networks Limited ("NNL") and NNC in Canada.

[12] The Pensions Regulator informed NNL and NNC that they had until March 1, 2010 to make submissions under the U.K. Statute, failing which default proceedings would be taken. The court was advised that the issuance of an FSD is subject to time limits and that the decision to issue an FSD must occur no more than two years after the "relevant time." The relevant time is designated by The Pensions Regulator in this case as June 30, 2008, such that any decision to issue an FSD in respect of this matter must be made by June 30, 2010.

## ISSUE

[13]   By issuing the Notice, did The Pensions Regulator contravene the stay granted in the Initial Order?

## POSITIONS OF THE PARTIES

[14]   Counsel to the Monitor submits that the issuance of the Notice constitutes the commencement of an enforcement process by a tribunal that is stayed by paragraph 14 of the Initial Order and an assertion of rights by a governmental body that is stayed by paragraph 15 of the Initial Order.

[15]   The Monitor takes the position that the Notice is effectively a pleading required under the U.K. Statute to enable The Pensions Regulator to make an FSD under the U.K. Statute. Such a determination would cause foreign affiliates of NNUK, including NNL and NNC, to become liable to provide financial support for the pension plan maintained by NNUK.

[16]   The Monitor contends that in the Notice, The Pensions Regulator purports to exercise rights under the U.K. Statute including, without limitation, the commencement of proceedings to require NNL and NNC to pay up to £2.1 billion (approximately CDN$4 billion) to fund the deficit in NNUK's pension plan. The Pensions Regulator also exercises purported statutory rights, such as deeming certain facts for the purposes of the U.K. Statute and demanding a response by a time limit under threat of default proceedings. Counsel submits that these exercises of rights without consent or leave are stayed by paragraphs 14 and 15 of the Initial Order.

[17]   Counsel to the Monitor further submits that if The Pensions Regulator is allowed to proceed under the Notice and the process described therein, the result would be extremely prejudicial to the Applicants' ongoing restructuring efforts and to their creditors generally because:

> i. Management is fully engaged in the restructuring process and the Applicants cannot afford to sacrifice the time and resources required to participate in the complex process envisaged in the Notice.
>
> ii. The restructuring would be disrupted and the progress already made therein, including the international efforts to negotiate the Allocation Protocol under the IFSA, would be threatened by The Pension Regulator's proceedings or its efforts to make determinations therein.
>
> iii. This Court is the proper forum for proceedings to determine the validity of and resolve all claims against the Applicants at an appropriate time and in an appropriate manner.

[18]   Regarding forum, the Monitor submits that the issues put forth by The Pensions Regulator can only be properly determined under the CCAA. The NNUK Pension Trust Limited (the "Trustee") and the U.K. Pension Protection Fund (the "PPF") filed proofs of claim in accordance with the October 7, 2009 Claims Process Order (the "Claims Process Order"). The

- Page 5 -

Trustee and the PPF claim "in the amount to be determined to be owing to [the Trustee and the PPF] pursuant to the Financial Support Direction Proceedings undertaken pursuant to the provisions of the [Pension Act]". Counsel to the Monitor submits that the filing under the Claims Procedure Order expressly raises the issues in the Notice.

[19]   The Monitor submits that there are extensive issues of fact and law for resolution in those proceedings. Moreover, there are issues as to whether any FSD determination can or ought to be recognized as a proper claim under the CCAA. Counsel submits that these are substantial issues upon which determination may or may not be required depending on the outcome of the Allocation Protocol negotiations, and regardless of when such issues may be resolved, there are issues that have been raised in these proceedings by the parties having the economic interest in the FSD claims and who have appeared before this Court and have filed proofs of claims under the Claims Process Order. Counsel argues that it is not efficient, reasonable or appropriate for the Applicants to proceed with massive litigation now in a severely compressed timeframe before a foreign tribunal with an expressed interest in benefiting one group of creditors.

[20]   At the very least, the Monitor submits that the Notice, having been issued in breach of the stay, should be declared null and void and of no force or effect due to the court's power to compel observance of its orders and to fulfill the purpose of the CCAA.

[21]   The Monitor also seeks a direction that it refrain from engaging in the proceedings commenced by The Pensions Regulator due to the prejudice caused by a diversion of resources.

[22]   The Applicants substantially adopt the Monitor's characterization of the Notice and the prejudice it would cause the parties.

[23]   The Applicants support the Monitor's request for an order declaring that any findings or claims emanating from the Notice and the associated process be null and void, and not recognizable or enforceable in this proceeding.

[24]   The position of the Monitor is also supported by counsel to the Noteholders, the Unsecured Creditors' Committee, the Former Disabled Canadian Employees and the Nortel Continuing Canadian Employees.

[25]   Counsel to the PPGF and the Board of Directors of NNL and NNC took no position.

[26]   The motion was opposed by counsel on behalf of The Pensions Regulator, which responds only to one of the heads of relief sought in the Monitor's Notice of Motion: whether the activities of The Pensions Regulator are a breach of paragraphs 14 and 15 of the Initial Order. The Pensions Regulator submits that the issue is whether this court has jurisdiction to make the order sought by the Monitor in relation to The Pensions Regulator.

[27]   The Pensions Regulator further submits that if this Court does have such jurisdiction, it should not be exercised in this case in any event.

[28]   Regarding the assertion by the Monitor and Applicants that the Notice is a pleading, Counsel for The Pensions Regulator took the position that that the Notice provides a standard

procedure for determining, internally, whether The Pensions Regulator should commence proceedings to exercise its statutory powers (the "Standard Procedure").

[29]   Counsel to The Pensions Regulator submits that pursuant to the Notice, the Determinations Panel will consider exercising its powers to issue an FSD and that these powers have not yet been exercised and may never be exercised. A determination in this regard will not be made until the responding parties to the Notice have had an opportunity to make representations and those representations have been considered by the Determinations Panel pursuant to the Standard Procedure set out at sections 96(2)(b) and (c) of the U.K. Statute.

[30]   Counsel further submitted that the FSD powers which The Pensions Regulator is considering exercising will not result in additional *ex post facto* claims in the proceedings under the CCAA as the Monitor has alleged, as the activities of the Determinations Panel will not result in making The Pensions Regulator a creditor of the Applicants.

[31]   Counsel to The Pensions Regulators submits this court does not have jurisdiction to make, and/or ought not to make, the order sought by the Monitor for the following reasons:

   (a)   The Initial Order is of no effect in the UK;

   (b)   The Monitor has not sought to enforce the Initial Order in the UK by way of an application for a recognition order;

   (c)   Although it is speculative to predict whether a UK court would make a recognition order enforcing the Initial Order in the UK, a number of factors suggest that any such recognition would not stay the regulatory proceedings;

   (d)   The blanket request for aid and recognition in the Initial Order does not eliminate the need for an application for a recognition order and the inquiry by the UK court that would be triggered thereby; and

[32]   Counsel further submits that this court lacks the jurisdiction to make an order under the CCAA that purports to have an inherent effect in a foreign state.

[33]   Counsel to the Trustee of the NNUK Pension Plan also opposed the making of any order. In particular, counsel submitted that an FSD could assist this court in CCAA proceedings, as the Panel making the determination has expertise and operates in a similar legal system as Canada.

**LAW AND ANALYSIS**

[34]   The CCAA stay of proceedings has been described as "the engine that drives a broad and flexible statutory scheme": see *Re Stelco Inc.*, 2005 CarswellOnt 1188 at para 36 (C.A.).

[35]   This court had the jurisdiction to make the Orders in paragraphs 14 and 15 of the Initial Order. Subsection 11(3) (with respect to initial applications) and subsection 11(4) (with respect to subsequent applications such as extensions of the initial stay) of the CCAA expressly empower the Court to make an order staying "any action, suit or proceeding" against the company on such terms as it may impose.

[36]   The court retains the ability to control its own process including litigation against CCAA debtors and claims procedures within a CCAA process. To ensure its effectiveness, s. 11, and in particular "proceedings" has been broadly interpreted to cover both judicial and extra-judicial proceedings which could prejudice an eventual arrangement.

[37]   In *Re Woodward's Ltd.*, (1993) 17 C.B.R. (3d) 236 (B.C.S.C.), the court found that "if a step must be taken vis-a-vis the insolvent company" for the creditor to enforce its rights, that step was a proceeding (at para. 27). The B.C. court looked to Black's Law Dictionary's definition of "proceeding" to base its finding:

> "proceeding" may refer not only to a complete remedy but also to a mere procedural step that is part of a larger action or special proceeding.

[38]   In *Meridian Development Inc. v. Toronto Dominion Bank*, (1984) 52 C.B.R. (N.S.) 109 (Alta Q.B.), Wachowich J. provided a helpful analysis of the breadth of the definition of "proceeding" at para 27:

> ... I am mindful of the wide scope of action which Parliament intended for this section of the Act. To narrow the interpretation of "proceeding" could lessen the ability of a court to restrain a creditor from acting to prejudice an eventual arrangement in the interim when other creditors are being consulted. As I indicated earlier, it is necessary to give this section a wide interpretation in order to ensure its effectiveness. I hesitate therefore to restrict the term "proceedings" to those necessarily involving a court or court official, because there are situations in which to do so would allow non-judicial proceedings to go against the creditor which would effectively prejudice other creditors and make effective arrangement impossible. The restriction could thus defeat the purpose of the Act ... (i)n the absence of a clear indication from Parliament of an intention to restrict proceedings" to "proceedings which involve either a court or court official", I cannot find that the term should be so restricted. Had Parliament intended to so restrict the term, it would have been easy to qualify it by saying for instance "proceedings before a court or tribunal".

[39]   It has also been established that the term "proceeding" may refer to any procedural step that is part of a larger proceeding. Delivery of a certificate to the debtor company as a prerequisite to drawing on a letter of credit has been stayed as a proceeding against a CCAA debtor: see *Re Woodward's Ltd., supra*, at paras 26-27.

[40]   It seems to me that, even though the Notice may be described as a warning shot across the bow, the effect of the Notice in this case is something far more significant. It clearly puts the Applicants and the Monitor on notice that there is a substantial claim that is being considered in the CCAA proceedings. At the present time, the claim as filed by the U.K. Pension Trustee makes reference to the FSD which may very well flow from the activities being undertaken by The Pensions Regulator. Having already set out the parameters of this claim in the proof of claim, the claim has to be considered a contingent claim in the CCAA proceedings. In my view, the issuance of the Notice is another step on the road to crystallizing the contingent claim.

[41] The issuance of an FSD is a remedy created by a statute of the United Kingdom. Regardless of whether the U.K. Statute purports to extend its reach beyond the borders of the U.K., the Notice, naming the Applicants, NNC and NNL, as "target companies" affects these entities which are clearly within the jurisdiction of this Court. Moreover, The Pensions Regulator purported to deliver the Notice to NNL and NNC by sending it to them in Canada in purported compliance with the U.K. Statute. In my view, The Pensions Regulator took steps in Canada in respect of a proceeding. In this context, The Pensions Regulator is, in my view, a person affected by the Initial Order, with which it must comply when it takes any proceedings in Canada.

[42] The Pensions Regulator did not obtain the consent of NNC and NNL or the Monitor, and did not obtain the leave of this court, before taking steps in Canada which affected NNC and NNL. In my view, the delivery of the Notice in Canada was in breach of the Initial Order. It follows that any continuation of these proceedings in Canada and attempted enforcement of rights in Canada will also be in breach of the Initial Order.

[43] As such, section (b) of the relief requested by the Monitor should be granted.

[44] It also follows that for the purposes of the CCAA proceedings, the actions taken by The Pensions Regulator, are null and void in Canada and are to be given no force or effect in these CCAA proceedings. Accordingly, section (d) of the requested relief should also be granted.

[45] Having made this determination, in my view, it is not necessary to consider the arguments outlined at [17]. The points raised in [17] may be relevant to any motion to lift the stay, but that issue is not before the court.

[46] The Monitor also requested an order authorizing, directing or requiring the Applicants and the Monitor to refrain from participating in any proceedings commenced by The Pensions Regulator. In my view, it is not necessary to comment further and provide directions with respect to a proceeding which, on its face, is null and void. The UK proceedings operate under UK law, and I decline to make a declaration on their legitimacy or to provide direction to the Monitor and the Applicants on their obligations to attend.

[47] An order shall issue to give effect to the foregoing.

_____
MORAWETZ J.

Date: March 18, 2010