# EXHIBIT A-3





## Ruby, Peter

| | |
|---|---|
| **From:** | Lily.Harmer@paliareroland.com |
| **Sent:** | Tuesday, May 14, 2013 2:10 PM |
| **To:** | Ruby, Peter; Pasquariello, Joe |
| **Cc:** | Sarita.Sanasie@paliareroland.com; anackan@farberfinancial.com; akaplan@kmlaw.ca; Arthur Jacques; bwalancik@kmlaw.ca; Barry.Wadsworth@caw.ca; BBoake@mccarthy.ca; emarques@mccarthy.ca; Gus.Tertigas@ca.ey.com; jgage@mccarthy.ca; Karen.Jones@paliareroland.com; Ken.Rosenberg@paliareroland.com; mzigler@kmlaw.ca; Max.Starnino@paliareroland.com; psteep@mccarthy.ca; richard.grudzinski@rbccm.com; richard.hans@dlapiper.com; Sarita.Sanasie@paliareroland.com; selinda.melnik@dlapiper.com; bdshaw@mccarthy.ca; sphilpott@kmlaw.ca; timothy.hoeffner@dlapiper.com; Tina.Lie@paliareroland.com |
| **Subject:** | CCC response to Monitor's proposed Discovery Plan |
| **Attachments:** | CCC_s response to Discovery Plan (3) - May 14_13.DOC |

Dear Peter,

As requested, attached please find the CCC's response to the Monitor's proposed Discovery Plan.  While we support the vast majority of the proposed plan, we are concerned that it will be very difficult for the parties such as the CCC who do not have custody or control of any of the relevant documents to gain access to documents if parties can refuse access merely because there is no index of hard copy documents, or because they happen to exist within a large database somewhere to which we have been given access with no adequate means of knowing what is contained therein. Similarly, in respect of the requirement to provide suggested sources and search parameters for documents, while we will do our best, this information may not always be available to us.

We would be happy to discuss these issues further with you.  Thank you,

Lily Harmer

Paliare Roland Rosenberg Rothstein LLP
155 Wellington Street West, 35th Floor
Toronto, Ontario  M5V 3H1

P: 416-646-4326
F: 416-646-4300
E: lily.harmer@paliareroland.com

Schedule "1"
to the Litigation Timetable

**Ontario Superior Court of Justice – Commercial List Court File No. 09-CL-7950**
**United States Bankruptcy Court for the District of Delaware Court file No. 09-10138(KG)**

**RE: IN THE MATTER OF NORTEL NETWORKS CORPORATION ET AL**

# DISCOVERY PLAN

| | |
|---|---|
| 1. **Definitions** | Capitalized terms used herein and not otherwise defined shall have the same meaning ascribed in the Litigation Timetable to which this document is a schedule and the Joint Discovery Scheduling Order. |
| 2. **Applicable Procedural Regime:** | The following procedural regimes apply:<br><br>(a) in the Ontario Superior Court of Justice, the *Rules of Civil Procedure* for Ontario; and<br><br>(b) in the District Court of Delaware, the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court District of Delaware. |
| 3. **Scope of Documentary Discovery:** | **General Principles:**<br><br>All in accordance with the dates and steps set out in the Litigation Timetable:<br><br>*a) Definition of Documents*<br><br>References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the *Rules of Civil Procedure*.<br><br>*b) Reasonably Accessible Documents and Proportionality*<br><br>No Core Party will be required to search data sources, including applications and databases, that it reasonably understands already to be in the possession, custody or control of the Core Party making the request. In such circumstances, each Core Party will, when reasonably requested, make best efforts to assist the requesting party to provide direction in respect of the appropriate application or database. |

Each Core Party will search only ~~reasonably accessible data, which excludes data~~ that cannot be accessed without ~~considerable~~disproportionate burden, time or expense. If a Core Party determines that a document request would require a search that cannot be conducted without disproportionate burden, time or expense, it shall provide an explanation as to the efforts made, if any, and the reasons for why the data was not accessed.

~~In light of the volume of the Debtors' hard copy documents maintained in off-site storage facilities, and the abundance of available overlapping electronic data,~~ Each Core Party will produce indices of its hard-copy documents and ~~no Core Party is obligated to search hard copy documents, and rather~~ will ~~produce indices of such documents (to the extent they exist) and~~ meet and confer in good faith regarding what hard copy documents will be made available for inspection upon request. If any such documents inspected are copied for any requesting party, all other parties shall be notified and copies shall be provided to all parties at their own expense. If any party creates an electronic version of those documents that party shall be responsible for loading the electronic version of the document(s) onto the Merrill Lextranet database in accordance with Appendix 1 hereto.

*c) Previously Produced Documents*

All documents already produced into the Merrill Lextranet database for the purpose of the several mediations in this proceeding are to be treated as having been produced in this litigation and any Core Party that does not already have such documents shall be provided access to the Merrill Lextranet database, subject to appropriate confidentiality, protective and/or sealing orders from the Court(s) and a provision allowing the Core Parties to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this Discovery Plan.

*d) No Waiver of Privilege*

The fact that a document has been produced by any Core Party shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Core Party who asserts privilege over the document), any Core Party who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a confidentiality or protective order.

*e) Deemed Undertaking*

- 3 -

All of the Core Parties and their counsel shall be deemed to have undertaken not to use any evidence or information obtained in the course of the discovery (including document discovery and depositions) contemplated hereby for any purposes other than the litigation being conducted under the court-ordered Allocation Protocol and Litigation Timetable.

## Document Requests and Interrogatories

Document requests are to be made further to the Litigation Timetable, specified and categorized with reference to the issues between the Core Parties as raised by the pleadings and to be accompanied <u>where possible</u> by suggested sources and search parameters.

Core Parties will work in good faith to eliminate duplication and redundancy between document requests and will meet and confer about the discovery requests both before and after they have been made.

Core Parties will also work in good faith to streamline interrogatories so as to minimize duplication as between the different anticipated requests where interests can be aligned on particular topics or for particular Opposing Core Parties with interrogatories in common.

The Core Parties shall meet and confer as is reasonable and in accordance with the Litigation Timetable.

## Responses and Objections

Core Parties may object to document requests and identification interrogatories. When objecting to any discovery request, the recipient of such discovery request shall state the basis for objection as provided for herein. Objections may be made only on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), subsisting privilege and proportionality. <u>If a party withholds documents or information on these grounds, it may not later introduce such evidence in its case in chief.</u>

## Rolling Production

Subject to any objections made and sustained if challenged (see motions procedure below), each Core Party shall produce any responsive non-privileged documents to any request made of it to all other Core Parties (to the extent they overlap, responses to multiple request may be combined or cross-referenced to each other to avoid duplication), in accordance with Appendix 1.

- 4 -

In this same time frame, each Core Party shall produce any further documents that they may introduce into evidence at trial that are not already stored in the Merrill Lextranet database.

**Motion to Compel**

Any Core Party who served a document request or interrogatory, and who seeks to compel production of a document or answer to an interrogatory, must do so by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on 7 days notice on all other Core Parties and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The Core Party whose objection is challenged shall respond to this motion within 4 days and any other Core Party whose interests are affected by the request may serve a supplementary response within 2 days thereafter.   All Core Parties shall attempt to resolve any discovery disputes in good faith and to file any necessary motions promptly.

Agreement to accept and respond to a discovery request does not constitute submission to jurisdiction or a waiver of rights or defences for any other purpose.

| | | |
|---|---|---|
| 4. | Format of Production of Records: | **Format for Exchange of Electronic Records:** Electronic documents to be produced in accordance with Appendix 1.<br><br>**Format for Exchange of Paper Records:** If a record only exists in hard copy and there is no electronic version, at the option of the producing party or any party who inspects and obtains a copy of it, it may be scanned and produced in accordance with Appendix 1 hereto. |
| 5. | Trial Witness Identification | Should a Core Party wish to present evidence at trial from a witness who is not willing to swear an affidavit, such witness shall be identified at this same time, and leave of the Court(s) sought by the Core Party seeking to rely on their evidence to take that witnesses' testimony by deposition (examination out of court) so as to preserve their testimony so it can be submitted by the Core Party as evidence at trial. |
| 6. | Oral Examinations out of Court | **Examinations of Core Party Representatives**<br><br>Each Core Party shall identify its representative (who may, but is not required to be, a current or former officer, director or employee of that Core Party) to be examined for oral examination (discovery), who is knowledgeable about, or will become reasonably informed of, the topics identified by other Opposing Core Parties to be examined upon, |

in lieu of contention interrogatories (unless they are agreed or ordered to be taken in writing).

Testimony of discovery representatives may be used as evidence at trial only by Opposing Core Parties whose interests are adverse to those of the proffering Core Party on the issue for which the evidence is being used.

## Oral Depositions:

All Core Parties shall have the right to ask questions of any witnesses who are designated by any party to be deposed but if more than one party designates the same witness that witness shall only be deposed one time.

## Use of Depositions at Trial

Designated portions of any deposition may be filed as part of the evidence that any party may rely upon at trial (subject to objections which may be ruled upon by the Court as contemplated herein), except that testimony of a deponent who is employed by, party to a cooperation agreement with or otherwise under the control of a Core Party may not be relied upon as evidence by that Core Party or by others sharing its interests on the issue to which the testimony relates.

If a witness who has been deposed is later called as a witness to give *viva voce* evidence at the trial, the transcript (or designated portions thereof) will still form part of the trial evidence and the entire transcript may also be used to impeach the witness or challenge his/her credibility.

## Use of Cross Examinations at Trial

If a witness who previously made a sworn statement in these proceedings and whose prior evidence is designated by a Core Party to be tendered at trial is cross examined prior to trial, the entire cross examination transcript will form part of the trial evidence.

## Scheduling of all Examinations, Cross-Examinations and Depositions

Once all fact witnesses have been identified, the relevant Core Parties shall attempt to agree on a schedule that contemplates the completion of all witness examinations, cross-examinations and depositions ("Examinations") in this time frame that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time

for completion of all examinations and the residence of the witness). Each Examination shall be co-ordinated so that a lead examiner is identified and the order of Examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness who has been designated to be examined by up to 3 Discovery Groups shall be examined for longer than 7 hours in total (by all Discovery Groups) and any single witness designated by more than 3 Discovery Groups shall not be examined for more than 14 hours, without leave of the Court(s) or the agreement of all Core Parties.

## 7. Experts

### Expert Reports

Each Core Party shall deliver an affidavit or a report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by bates number if previously produced, and containing the disclosures required under Rule 26(a)(2) (B) of the United States Federal Rules of Civil Procedure and Rule 53.03 of the Ontario Rules of Civil Procedure regarding the expert's qualifications, prior engagements, compensation and independence.

Any Core Party that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial. If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

### Reply Expert Reports

Each Core Party shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another Core Party that addresses an issue that is adverse to any position of the Core Party in this litigation. Responses shall be permitted even if the Core Party did not initially tender an expert's affidavit or report, if an issue is raised by an expert whose evidence is tendered by another party that calls for response. Responsive reports shall be limited to responding to issues on which an affirmative expert has been proffered and shall not go beyond such issues.

### Cross-Examination of Experts

Any Core Party who wishes to cross-examine or depose an expert of an Opposing Core Party may serve notice of its intention to do so, regardless of whether or not that party has filed its own expert

evidence.

The Core Parties will attempt to agree to a schedule that contemplates the completion of all expert witness depositions between the notice date and the deadline set in the Litigation Timetable that reflects the practicalities of examining each witness (having regard to the number of parties examining, the subject matter of the examinations, the available time for completion of all examinations and the residence of the witness).

Each examination shall be co-ordinated so that a lead examiner is identified and the order of examination shall reflect a co-ordinated effort to avoid duplication of questions. No single witness shall be examined for longer than 14 hours in total (by all Core Parties combined) without leave of the Court(s) or the agreement of all Core Parties.

### Expert Evidence at Trial

The affidavits and transcripts of depositions of the experts shall be filed as evidence with the court at the trial, subject only to cross examination at trial and any applicable objections (including, without limitation, as to qualifications) that may be made and determined at the outset of the trial and directions from the Court(s) arising therefrom. The Core Party proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless agreed to by all Core Parties adverse to the expert's evidence.

### Communications with Experts

The experts shall not be examined about or asked to produce prior drafts of their affidavits/reports and/or their communications with counsel who retained them (although they may be asked to disclose the specific questions they were asked to answer).

8. General Procedure Applicable to all pre-trial Examinations

### Attendance at Oral Examinations/Depositions

For the avoidance of doubt, all Core Parties shall have the right to attend all oral Examinations that relate to any issue, regardless of whether or not they have a right to examine that witness.

### Coordinating Oral Examinations/Depositions

Each Examination shall be coordinated so that a lead examiner is

identified. Lead examiners shall work in good faith with any others who are participating in the examination to try to use the available time most efficiently and avoid, to the extent possible, duplication of questions.

## Transcripts and video taping

All Examinations shall be taken under oath and transcribed and the transcripts made available to all Core Parties, whether or not they are in attendance at the examination. At the option of any examining party, the Examination may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining party(ies) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

## Objections

Objections may be made on grounds of relevance (having regard to the issues between the parties as raised by the pleadings), form, subsisting privilege and proportionality only. An objection to form shall not be made solely on the basis that a question is leading unless the deponent is employed by, party to a cooperation agreement with or otherwise under the control of the Core Party represented by the questioner. Questions that are objected to solely on grounds of relevance or form shall be answered under reserve of that objection. All other objections shall be preserved.

## Requirement for Summons

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Estates and the Joint Administrators shall assist in issuing process or otherwise procuring a witness's attendance irrespective of which Core Party has sought the witness's deposition. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment to that jurisdiction for any other purpose.

## Undertakings

The witness shall answer any undertakings that were agreed to on his/her examination within three weeks of the date of his/her examination.

**9. General Terms**

Any Core Party may make a motion to the Court to compel another Core Party to take the steps contemplated by the Discovery Plan or other steps, and the Parties agree that the Court(s) may take the existence of the Discovery Plan into account in determining whether to grant the Order sought. The respondent on such a motion may seek to justify its non-compliance with the Discovery Plan on the basis of, among other things, any information that was unknown or unavailable to that Party at the time the Discovery Plan was entered into.

Breach of this Discovery Plan does not, in and of itself, give rise to a right to damages or any other monetary relief, or to injunctive relief, although the Core Parties agree that the Court(s) may take any breach of this Discovery Plan into account in exercising discretion with respect to costs or other sanctions, or on an application for injunctive relief.

The Core Parties recognize that, as additional information becomes available throughout the litigation, it may become apparent that: (a) it is impracticable or impossible for a Core Party to comply with the terms of the Discovery Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery Plan, are required in order for a Core Party to obtain access to relevant documents in the litigation. Each Core Party agrees to notify the other Core Parties promptly when it knows that it will not comply with any term of the Discovery and Deposition Plan or when it concludes that another Core Party should take further steps beyond those set out in this Discovery Plan. The Core Parties agree to negotiate in good faith with respect to any amendments to the Discovery Plan requested by a Core Party on the basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Core Parties.

The Core Parties shall meet and confer in good faith without the assistance of the Court(s) and attempt to resolve any disputes in the interpretation or implementation of the Discovery Plan. Core Parties are required to promptly seek relief from the applicable Court(s) once an impasse has been reached in any dispute. This relief may be raised for the Court(s) for initial consideration at an informal case conference before taking any other procedural steps by way or motion or otherwise as long as that can be arranged promptly.

All motions or directions sought from the Court(s) pursuant to this Discovery and Deposition Plan shall be brought to Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and/or Justice Morawetz of the Ontario Superior Court of Justice as

the case may dictate, or any referee who they may direct:

- 11 -

# APPENDIX 1

Format for Exchange of Productions: Productions will be exchanged by loading each production into the Merrill Lextranet database with the following objectively coded metadata, if reasonably possible, and in the following form:

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| **Document Numbering** | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note text | Docid(s) attached to Parentid | AA0000001 |
| **Fields/Coded Data for E-mails** | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents and attachments. | As per metadata |
| **Fields/Coded Data for Attachments and Loose Electronic Documents** | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents and attachments. | As per metadata |

- 12 -

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| **Fields/Coded Data for Paper Documents** | *Docdate* | Date | Date of document (subjectively coded) | MM/DD/YYYY |
| | *Doctype* | Note Text | Type of document (subjectively coded) | |
| | *Doctitle* | Note Text | Title of document (subjectively coded) | |
| | *Attach#* | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | *Author* | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | *Recip* | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| **Fields/Coded Data for Paper and Electronic Documents (Chronological Review)** | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| **Redactions** | *Redact* | Note | Document has redactions | "Redacted" stamped on document |

1.    Each document shall be individually produced with a unique document ID number.

2.    OCR text searchable, to the extent the document permits.

3.    All images will be single page tiff format (excluding spreadsheets which will be provided in native format) with 300 dpi specifications.   Spreadsheets to be provided in native format.

\6205368



## Rohwer, Ursula

| | |
|---|---|
| **From:** | Ruby, Peter |
| **Sent:** | Tuesday, May 14, 2013 6:15 PM |
| **To:** | Rohwer, Ursula |
| **Subject:** | FW: Nortel - Revised Litigation Timetable - Clean and Blackline [BJ-L.FID1690986] |
| **Attachments:** | Pleading - Nortel - Revised Timetable - v1-v3(01) - 13 May 2013.DOCX; Pleading - Nortel - Revised Timetable - v3 - 13 May 2013.DOCX |
| | |
| **Importance:** | High |

Please print

**From:** Gavin Finlayson [mailto:FinlaysonG@bennettjones.com]
**Sent:** Tuesday, May 14, 2013 6:14 PM
**To:** Ruby, Peter
**Cc:** Zarnett, Benjamin; Myers, Fred; Kimmel, Jessica; Pasquariello, Joe; Carfagnini, Jay; Armstrong, Christopher; Kevin Zych; S. Richard Orzy; Richard Swan
**Subject:** Nortel - Revised Litigation Timetable - Clean and Blackline [BJ-L.FID1690986]
**Importance:** High

Peter:

Please find attached the comments of the Noteholder Group on the Monitor's proposed Litigation Schedule. We are providing these changes to the Monitor's form of Litigation Schedule to be cooperative and to assist in moving the litigation process forward.

**Please note that the Noteholder Group supports the proposal filed with the Courts by the US Debtors and UCC reflecting agreement with the EMEA debtors on the Litigation Timetable and Discovery Plan and intends to support that proposal at the joint hearing tomorrow. In particular, given the well documented alignment of interests between the Canadian Debtors, the Monitor and the CCC, the Noteholder Group does not support the designation under the Monitor's proposal of the CCC as its own discovery group. It is our position that this designation is inconsistent with paragraph 18 of Justice Morawetz's May 3rd Endorsement.**

The majority of the comments seek to regularize the participation of the noteholders in discovery as between the two proposals.

Pursuant to the US Debtor proposal the noteholders are given express consultation rights to participate in Claims discovery, but we currently do not appear have such rights under the Monitor's proposal.

As well, under the Monitor's proposal there is asymmetrical treatment of the Noteholder Group in comparison to other groups with respect to allocation discovery rights. Specifically, it appears that the Noteholder Group must identify and make available a discovery witness, but does not have the right to serve its own discovery requests on the discovery witnesses of other parties.

Please let us know if you will accept these changes so that we may understand our position for tomorrow's hearing and the necessity of drawing these matters to the attention of the Courts.

We are happy to discuss our comments and concerns with you cooperatively at your convenience.

Thank you

 Gavin H. Finlayson
Partner, Bennett Jones LLP

3400 One First Canadian Place, P.O. Box 130, Toronto, ON, M5X 1A4
P. 416 777 5762 | F. 416 863 1716
E. finlaysong@bennettjones.com

  Download my vCard

Plug into Bennett Jones
Plug Into my bio

  

The contents of this message may contain confidential and/or privileged
subject matter. If this message has been received in error, please contact
the sender and delete all copies. Like other forms of communication,
e-mail communications may be vulnerable to interception by unauthorized
parties. If you do not wish us to communicate with you by e-mail, please
notify us at your earliest convenience. In the absence of such
notification, your consent is assumed. Should you choose to allow us to
communicate by e-mail, we will not take any additional security measures
(such as encryption) unless specifically requested.

## LITIGATION TIMETABLE
### NORTEL PROCEEDING

Pursuant to the Orders, dated April 3, 2013, of the Ontario Superior Court of Justice (the "Ontario Court") and the United States Bankruptcy Court for the District of Delaware (the "U.S. Court" and together with the Ontario Court, the "Courts") and endorsement of the Ontario Court dated May 3, 2013, this Litigation Timetable is intended to supplement or amend, as the circumstances require, the Claims Procedure Resolution Order as entered by the Ontario Court on September 16, 2010 (the "Claims Procedure Resolution Order"),[1] and the Ontario Court's EMEA Claims Procedure Order dated January 21, 2011 (the "EMEA Claims Procedures Order") and Intercompany Claims Procedure Order dated July 27, 2012 (the "Intercompany Claims Procedures Order") and all other Orders or agreements governing the procedure for resolving the claims that are the subject matter of this schedule and the issue of allocation among the estates of asset sale proceeds.

| [Milestone] | [Step/Action] | [EMEA Claims] | [Allocation Claims] |
|---|---|---|---|
| Motion date to be determined by the Courts if necessary | The Discovery Participants to negotiate in good faith to try to come to agreement on a Discovery Plan substantially in the form attached as Schedule "1" hereto[2] and confidentiality and privilege clawback order substantially in the form attached as Schedule "2" hereto , or to file motions seeking an interim order addressing these matters if agreement cannot be reached. | | |
| May 16 | Any Core Party who wishes to participate in the allocation dispute shall deliver a pleading or opening submission styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought with respect to allocation, the material facts relied upon and legal bases for the allocation position being advanced by that Core Party at the Joint | | |

---

[1]    On November 5, 2010, the U.S. Court entered an order enforcing in the United States the Claims Procedure Resolution Order along with the Cross-Border Claims Protocol Order, also entered by the Ontario Court on September 16, 2010.

[2]    In the event of any inconsistency between this Litigation Timetable and the Discovery Plan, the terms of this Litigation Timetable shall govern.

| Due Date 2013 | Step in Allocation Proceeding | Step in US Claims Proceeding | Step in Canadian Claims Proceeding |
|---|---|---|---|
| | Hearing. Each pleading/submission may be made individually, jointly by two or more Core Parties or by one Core Party adopting another Core Party's pleading/submission as applicable. | | |
| May 20 through June 3 | Service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian CCC Allocation Group, Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group must be made by no later than June 30. Earlier document requests are encouraged commencing May 20 and all requests should, to the extent possible, take into account and avoid duplicating requests that have already been delivered. | Service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group must be made by no later than June 30. **The US Claims Defendant Group and the Bondholder Allocation Group shall confer on such requests.** Earlier document requests are encouraged commencing May 20 and all requests should, to the extent possible, take into account and avoid duplicating requests that have already been delivered. | Service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group must be made by no later than June 30. **The Canadian Claims Defendant Group and the Bondholder Allocation Group shall confer on such requests.** Earlier document requests are encouraged commencing May 20 and all requests should, to the extent possible, take into account and avoid duplicating requests that have already been delivered. |
| May 30 | Deadline for any Core Party who delivered an Allocation Position and who disputes the Allocation Position of any other Core Party to deliver a responding pleading, entitled "Allocation Response" | The US Claims Defendant Group, Monitor and Canadian Debtors shall file and serve their responses to the US Claims, which may include by reference that Core Party's Allocation Position and | The members of the Canadian Claims Defendant Group and US Debtors to file and serve their responses to the applicable Canadian Claims, setting forth with reasonable particularity the |

| The Date 2013 | Step in the Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| | which sets out with reasonable particularity the material facts relied upon and legal bases for any affirmative responses to the disputed Allocation Position advanced by any other Core Party or to designate its Allocation Position as its Allocation Response. Each of the responses may be made individually, jointly by two or more Core Parties or by one Core Party adopting another Core Party's Allocation Response as applicable. | Allocation Response as applicable. | material facts relied upon and legal bases, which may include by reference that Core Party's Allocation Position and Allocation Response as applicable. |
| June 3 | Deadline for delivery of limited written interrogatories, by each of the Canadian CCC Allocation Group, Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group, seeking identification of (i) the names, roles and last known contact information of witnesses with knowledge of information relevant to the subject matter of Allocation, EMEA Claims or UK Pension Claims, (ii) the storage form and extent of the potentially relevant documents of these individuals and (iii) information sufficient to identify transactions upon which any positions, claims, and/or | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group, without prejudice to a US Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. **The US Claims Defendant Group and the Bondholder Allocation Group shall confer on such requests.** | Deadline for delivery of Identification Interrogatories, by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group. Further written interrogatories may only be made with the agreement of the Core Party to whom it is directed, or leave of the Court(s). **The Canadian Claims Defendant Group and the Bondholder Allocation Group shall confer on such requests.** |

| Deal Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| | defenses of the recipient of the interrogatory rely ("Identification Interrogatories"). Further written interrogatories may only be made with the agreement of the Core Party to whom it is directed, or leave of the Court(s). | | |
| June 7 | Deadline for Core Party who is not in one of the Discovery Groups, and who seeks to serve document requests and/or interrogatories that are non-duplicative of those document requests and/or interrogatories already served by the Allocation Groups, to seek leave of the Court to serve such non-duplicative document requests and/or interrogatories if prior to this time, such Core Party has been unable to reach agreement with the Core Party on whom it seeks to serve the non-duplicative document requests and/or interrogatories after meeting and conferring with such Core Party in good faith. | | |
| June 11 or soon thereafter | In-person meet and confer between the Discovery Participants regarding the discovery requests and interrogatories served, procedures governing the production of documents, and any other issues that have arisen thereof.   Earlier telephone or in-person meet and confer sessions are encouraged in respect of document requests and interrogatories as they are delivered. | | |

| Due Date 2013 | Step in Allocation | Step in US Estate | Step in Canadian Claims |
|---|---|---|---|
| June 18 | Deadline for responses (very brief descriptions of what a party will produce – i.e. objections – and why) to document requests in accordance with the Discovery Plan. Deadline for fulsome responses to interrogatories in accordance with the Discovery Plan. | | |
| June 18 | Subject to any objections, deadline for the recipients of document requests to commence the rolling production of documents in accordance with the Discovery Plan. | | |
| July 9 | Production of documents to be completed in accordance with the Discovery Plan. | | |
| July 15 | Deadline to file motions to compel with respect to document discovery and responses to interrogatories objected to or not answered. Notwithstanding this deadline, when a dispute arises, the affected Discovery Participants shall promptly attempt to resolve any discovery disputes in good faith and once an impasse is reached, file any motions with the relevant Court(s) promptly. | | |
| July 16 | Deadline for identification by each Core Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Core Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Core Party's previously filed sworn statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each US Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other US Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that US Claim Party's previously filed sworn statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each Canadian Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Canadian Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Canadian Claim Party's previously filed sworn statements are being relied upon as evidence at trial in accordance with the Discovery Plan. |
| | Deadline for each of the Canadian CCC Allocation Group, Canadian Allocation Group, the EMEA | Deadline for each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims | Deadline for each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the |

| Due Date 2013 | Step in Post-Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| July 16 | Allocation Group, and the US Allocation Group **and the Bondholder Allocation Group** to serve on any opposing Core Party the topics on which that Core Party's representative is to be examined or examined/deposed pursuant to Rule 31 of the Ontario Rules and Rule 30(b)(6) of the U.S. Rules in accordance with the Discovery Plan. | Defendant Group to serve on any opposing Claim Party and/or a member of the Canadian Claims Defendant Group the topics on which that Claim Party's representative is to be deposed pursuant to Rule 30(b)(6) of the U.S. Rules in accordance with the Discovery Plan. **The US Claims Defendant Group and the Bondholder Allocation Group shall confer on such requests.** | Canadian Claims Defendant Group to serve on any opposing Claim Party and/or a member of the Canadian Claims Defendant Group the topics on which that Claim Party's representative is to be examined in pursuant to Rule 31 of the Ontario Rules in accordance with the Discovery Plan. **The Canadian Claims Defendant Group and the Bondholder Allocation Group shall confer on such requests.** |
| July 16 | Deadline for parties to designate witnesses to be examined or deposed, subject to later additions for the reasons set forth in the Discovery Plan. Each of (1) the Canadian CCC Allocation Group (2) the Canadian Allocation Group and the Canadian Claims Defendant Group together; (3) the EMEA Allocation Group, the US EMEA Claimants Group, the Canadian EMEA Claimants Group, and the UK Pension Claimants together; and (4) the US Allocation Group and the US Claims Defendant Group together, **and (5) the Bondholder Allocation Group** shall notice examinations/depositions together. | | |
| July 19 | Deadline for each Core Party that is timely served with a notice for an examination/deposition under Rule 31 of the Ontario Rules or Rule 30(b)(6) of the U.S. Rules to identify its representative for oral examination or deposition. | Deadline for each US Claim Party (other than the Committee) that is timely served with a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for deposition. | Deadline for each Canadian Claim Party that is timely served with a notice for an examination/deposition under Rule 31 of the Ontario Rules to identify its representative for oral examination or deposition. |
| September 12 | Deadline to identify experts and the subject matter of their reports in accordance with the Discovery Plan. | | |
| | Deadline to complete witness depositions/examinations in | Deadline to complete witness depositions in accordance with the | Deadline to complete witness depositions/examinations and cross |

| Due Date 2013 | Step in Allocation | Step in US Litigation | Step in Canadian Litigation |
|---|---|---|---|
| September 25 | accordance with the Discovery Plan (with any undertakings to be answered within three weeks of each examination), with a preference to finish fact witness depositions prior to any Rule 31 representative party examinations or Rule 30(b)(6) depositions. | Discovery Plan, with a preference to finish fact witness depositions prior to any Rule 30(b)(6) depositions. | examinations on previously filed sworn statements being tendered as evidence for trial (with any undertakings to be answered within three weeks of each examination), in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to Rule 31 representative party examinations. |
| October 4 | Deadline for service of expert reports (including exhibits) in accordance with the Discovery Plan. | | |
| November 1 | Deadline for service of responding experts' reports (including exhibits) in accordance with the Discovery Plan. | | |
| December 6 | Deadline to complete depositions of experts in accordance with the Discovery Plan. | | |
| December 13 | Deadline to file all pre-trial motions. | | |
| December 13 | Deadline for filing of opening written submissions with the Courts, including:<br>a) Pre-trial briefs as referenced in Judge Gross's Proposed Final Pretrial Order;<br>b) With respect to Allocation, all fact affidavits to be used as a party's trial testimony for its case in chief;[3]<br>c) With respect to Allocation, a list of all exhibits each party intends to rely on as part of its case in chief;[3] | | |

[3]   The filings by this deadline shall be referred to as Original Filings. A Discovery Participant may (i) file supplemental affidavits as trial testimony, (ii) file supplemental exhibits, (iii) identify supplementary portions of transcripts of depositions and examinations for discovery, if necessary to supplement the Original Filings. Such supplemental filings are permissible only to the extent that an affidavit or exhibit in the Original Filings of another Core Party dealt with a matter not reasonably anticipated, such that the Discovery Participant's Original Filings do not adequately deal with that matter, and the supplemental filings are delivered as soon as possible.

| Due Date 2013 | Steps in Mediation | Steps in US Claims | Steps in Canadian Claims |
|---|---|---|---|
|  | d) By the Canadian EMEA Claimants Group and the U.S. EMEA Claimants Group, all fact affidavits to be used as those parties' trial testimony; and<br><br>a) By the Canadian EMEA Claimants Group and the U.S. EMEA Claimants Group,, a list of all exhibits those parties intend to rely on as part of their case in chief. |  |  |
| December 20 | Deadline for filing with the Courts:<br><br>a) All fact affidavits to be used as a party's trial testimony by the Canadian EMEA Defendants Group and the U.S. EMEA Defendants Group; and<br><br>b) A list of all exhibits each party intended to be relied on by the Canadian EMEA Claimants Group and the U.S. EMEA Claimants Group. |  |  |
| Week of December 16, if the Courts desire | Pre-Trial Conference(s) –<br><br>By this date, the Core Parties shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the contents of document briefs for use at the Joint Hearing/ the exhibits for use at the Joint Hearing, including categorizing the documents by issue.<br><br>By this date, the Core Parties shall also have identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of | Pre-Trial Conference(s) –<br><br>By this date, the US Claim Parties shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the contents of document briefs for use at the Joint Hearing/ the exhibits for use at the Joint Hearing, including categorizing the documents by issue.<br><br>By this date, the US Claim Parties shall also have identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest.<br><br>All Nortel documents produced by a Discovery Participant to be | Pre-Trial Conference(s) –<br><br>By this date, the Canadian Claim Parties shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the contents of document briefs for use at the Joint Hearing/ the exhibits for use at the Joint Hearing, including categorizing the documents by issue.<br><br>By this date, the Canadian Claim Parties shall also have identified the portions of transcripts of depositions and examinations for discovery relied upon by a party of adverse interest.<br><br>All Nortel documents produced by |

| Time Period | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| | authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |
| Begins January 6, 2014 | The US and Canadian courts will (a) hold simultaneously (i) hearings before the US and Canadian courts regarding Allocation, (ii) hearings before the US Court on the merits of any remaining US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining Canadian Claims, provided, however, that the US and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only the US Claims or only the Canadian Claims, and (b) issue their respective decisions on (i), (ii), and (iii). | | |

Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the US Court through the filing of a certification of counsel and to the Canadian Court through the filing of a letter from the Monitor to Justice Morawetz. Any Core Party may also file a motion with the applicable Court or Courts to modify this Litigation Timetable upon a showing of good cause.

## ANNEX A

### DEFINITIONS

Capitalized terms used in this Litigation Timetable but not otherwise defined in this Annex A shall have the meanings ascribed to them in the Allocation Protocol.

Allocation Group:  Any of the Canadian CCC Allocation Group and Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, or the Bondholder Allocation Group.

Bondholder Allocation Group:  The Bondholder Group.

Canadian Allocation Group:  The Canadian Debtors and the Monitor.

Canadian CCC Allocation Group: The CCC.

Canadian Claim Party:  Any party in the Canadian EMEA Claimants Group or the Canadian Claims Defendant Group, or the UK Pension Claimants.

Canadian Claims:  Claims made by the Canadian EMEA Claimants Group and the UK Pension Claimants against any or all of the Canadian Debtors.

Canadian Claims Defendant Group:  The Canadian Debtors against whom the Canadian EMEA Claimants Group and the UK Pensions Claimants have brought claims, the Directors and Officers (but only with respect to claims of the Canadian EMEA Claimants Group), and the Monitor.

Canadian EMEA Claimants Group:  The EMEA Debtors, French Liquidator and/or the Joint Administrators or any other administrator of an EMEA Debtor who made claims against any or all of the Canadian Debtors or Directors and Officers, and the UK Pension Claimants who made claims against NNC and NNL.

CCC:  The Canadian Creditors Committee, a committee of major creditors having claims against the Canadian Debtors, comprised of: the Former and Disabled Canadian Employees of the Canadian Debtors through their court-appointed representatives and the Canadian Auto Workers Union; Morneau Shepell Ltd., as Administrator of Nortel's Canadian registered pension plans; the Superintendent of Financial Services of Ontario as Administrator of the Pension Benefits Guarantee Fund, and the court-appointed representatives of the Current and Transferred Canadian Employees of the Canadian Debtors.

<u>Claim Group</u>:  Any of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, the Canadian Claims Defendant Group, or the UK Pension Claimants.

<u>Discovery Participant</u>:  Any Core Party or party of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, or the Canadian Claims Defendant Group who is participating in discovery pursuant to the Discovery Plan.

<u>Discovery Plan</u>:  The Discovery Plan that will be entered by the Courts.

<u>EMEA Allocation Group</u>:  The UK Pension Claimants, the French Liquidator, the EMEA Debtors (including Nortel Networks International Finance & Holding BV as behalf of itself and as assignee of Nortel Networks o.o.o.), and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited.

<u>Representatives</u>:  Directors, officers, employees, attorneys, accountants, experts, consultants, financial advisors, or agents of any of the Core Parties, US Claim Parties, or Canadian Claim Parties.

<u>US Allocation Group</u>:  The US Debtors and the Committee.

<u>US Claims</u>:  Claims made by the US EMEA Claimants Group and the UK Pension Claimants against any or all of the US Debtors.

<u>US Claims Defendant Group</u>:  The US Debtors against whom the US EMEA Claimants Group and the UK Pension Claimants have brought claims and the Committee.

<u>US EMEA Claimants Group</u>:  The EMEA Debtors, French Liquidator and/or Joint Administrators or any other administrator or liquidator of an EMEA Debtor who made claims against any or all of the US Debtors, Nortel Networks AS, Nortel Networks South Africa (Proprietary) Limited, Nortel Networks AG, Nortel Networks Optical Components Limited, Northern Telecom France SA, Northern Telecom PCN limited.

<u>US Claim Party</u>:  Any party in the US EMEA Claimants Group or the US Claims Defendant Group, or the UK Pension Claimants.

WSLegal\056381\0\0001\911\6274-v\3
Pleading - Nortel - Revised Timetable - v/3 - 13 May 2013  11

Document comparison by Workshare Professional on 14 May 2013 4:38:47 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://bjdocs/WSLegal/9116274/1 |
| Description | #9116274v1<WSLegal> - Pleading - Nortel - Revised Timetable - v1 - 13 May 2013 |
| Document 2 ID | interwovenSite://bjdocs/WSLegal/9116274/3 |
| Description | #9116274v3<WSLegal> - Pleading - Nortel - Revised Timetable - v3 - 13 May 2013 |
| Rendering set | standard |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| Moved-from | |
| **Moved to** | |
| Style change | |
| Format change | |
| Moved-deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 12 |

| Deletions | 5 |
|---|---|
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 17 |

Schedule "A"

# LITIGATION TIMETABLE
## NORTEL PROCEEDING

Pursuant to the Orders, dated April 3, 2013, of the Ontario Superior Court of Justice (the "Ontario Court") and the United States Bankruptcy Court for the District of Delaware (the "U.S. Court" and together with the Ontario Court, the "Courts") and endorsement of the Ontario Court dated May 3, 2013, this Litigation Timetable is intended to supplement or amend, as the circumstances require, the Claims Procedure Resolution Order as entered by the Ontario Court on September 16, 2010 (the "Claims Procedure Resolution Order"),[1] and the Ontario Court's EMEA Claims Procedure Order dated January 21, 2011 (the "EMEA Claims Procedures Order") and Intercompany Claims Procedure Order dated July 27, 2012 (the "Intercompany Claims Procedures Order") and all other Orders or agreements governing the procedure for resolving the claims that are the subject matter of this schedule and the issue of allocation among the estates of asset sale proceeds.

| Deadline Date | Litigation Obligation | Steps in Connection with Discovery Plan or other Process |
|---|---|---|
| Motion date to be determined by the Courts if necessary | | The Discovery Participants to negotiate in good faith to try to come to agreement on a Discovery Plan substantially in the form attached as Schedule "1" hereto[2] and confidentiality and privilege clawback order substantially in the form attached as Schedule "2" hereto , or to file motions seeking an interim order addressing these matters if agreement cannot be reached. |
| May 16 | Any Core Party who wishes to participate in the allocation dispute shall deliver a pleading or opening submission styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought with respect to allocation, the material facts relied upon and legal bases for the allocation position being advanced by that Core Party at the Joint | |

---

[1]  On November 5, 2010, the U.S. Court entered an order enforcing in the United States the Claims Procedure Resolution Order along with the Cross-Border Claims Protocol Order; also entered by the Ontario Court on September 16, 2010.

[2]  In the event of any inconsistency between this Litigation Timetable and the Discovery Plan, the terms of this Litigation Timetable shall govern.

WSLegal\065818\00001\9116274v3
Pleading - Nortel - Revised Timetable - v3 - 13 May 2013