Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
Kevin M. Baum
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for Wilmington Trust, National Association,
as Successor Indenture Trustee*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------------ x
| | |
|---|---|
| In re: | : Chapter 11 |
| Nortel Networks, Inc., et al. | : Case No. 09-10138 (KG) |
| Debtors. | : (Jointly Administered) |

------------------------------------------------------------------ x

**OPENING SUBMISSION OF ALLOCATION POSITION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS SUCCESSOR INDENTURE TRUSTEE**

Wilmington Trust, National Association, as successor indenture trustee (solely in its capacity as trustee, the "Trustee" or "Wilmington Trust"), by and through its undersigned attorneys, submits this opening submission (the "Opening Submission") in accordance with the Allocation Protocol[1] and in connection with the dispute regarding the proper method of allocation of the funds being held in escrow representing the proceeds realized from the sale of substantially all of the business and intellectual property of Nortel (as defined below) and its affiliates around the globe (the "Allocation Dispute"), and in furtherance thereof, respectfully

_____

[1] Each of the Canadian and U.S. Courts has approved the parties proceeding with the allocation dispute in accordance with an "Allocation Protocol" and has approved the "Litigation Timetable" that provides for the filing and serving of opening submissions.

1

84714055

submits as follows:

Background

1. On January 14, 2009, the U.S. Debtors[2] commenced the above-captioned proceedings pursuant to Chapter 11 of the U.S. Bankruptcy Code (the "Chapter 11 Proceedings"). On or about the same date, the Canadian Debtors[3] commenced proceedings pursuant to the *Companies' Creditors Arrangement Act (Canada)* (the "CCAA Proceedings"), and the Joint Administrators were appointed in respect of the EMEA Debtors[4] (the EMEA Debtors, collectively with the Canadian Debtors and the US Debtors, "Nortel" or the "Nortel Group") by the High Court of England and Wales (the "UK Proceedings" and collectively with the CCAA Proceedings and the Chapter 11 Proceedings, the "Nortel Group Proceedings").

2. Wilmington Trust is successor indenture trustee under an Indenture, dated as of November 30, 1988 (as amended, supplemented or modified, the "Canadian Indenture"), between NNL and The Bank of New York Mellon (formerly known as The Bank of New York) ("BNY Mellon" or the "Resigned Trustee") as successor trustee to the Toronto-Dominion Bank Trust Company for the aggregate principal amount of US $200 Million of Nortel Networks

---

[2] The U.S. Debtors are Nortel Networks Inc., Nortel Networks Capital Corporation, Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical, Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc.

[3] The Canadian Debtors are Nortel Group, Nortel Networks Limited, Nortel Networks International Corporation, Nortel Networks Global Corporation and Nortel Networks Technology Corporation.

[4] The EMEA Debtors are Nortel Networks UK Limited, Nortel Networks (Ireland) Limited, Nortel Networks NV Nortel Networks SpA, Nortel Networks BV, Nortel Networks Polska Sp z.o.o., Nortel Networks Hispania, SA, Nortel Networks (Austria) GmbH, Nortel Networks sro, Nortel Networks Engineering Services Kft, Nortel Networks Portugal SA, Norte1 Networks Slovensko, sro, Nortel Networks Romania Sri, Nortel GmbH, Nortel Networks Oy, Nortel Networks AB, Nortel Networks International Finance and Holding BV, Nortel Networks France S.A.S.

84714055

Limited (formerly known as Northern Telecom Limited, "NNL") 6.875% Notes due 2023 (the "Canadian Notes").

3.  Wilmington Trust is a national banking association duly organized and existing under the laws of the United States of America and having its corporate trust office at 166 Mercer Street, Suite 2-R, New York, New York 10012.

## The Trustee's Opening Submission

4.  The Trustee became involved in the Allocation Dispute in April of 2012 and participated in the mediation that began in April, 2012 and culminated in January, 2013.

5.  The Trustee has not had the opportunity to participate in any prior discovery or review materials previously produced in connection with such discovery. Specifically, the Trustee has not been afforded the opportunity to obtain any of the documents that are included in the Merrill database – which documents the Trustee submits are critical to the understanding and development of any theory to resolve the Allocation Dispute. In addition, the Trustee has not yet engaged an independent financial advisor

6.  The Trustee, on information and belief, understands that the Nortel Group operated as an integrated economic unit in a manner to maximize the value of the Nortel Group as a whole. The operations were described in the Memorandum of Understanding dated December 31, 2008 ("MOU"), as the "highly integrated and inter-connected nature of the worldwide business of the Nortel group of companies." MOU at Section 10.

7.  The integrated and inter-connected nature of the of the Nortel Group enterprise was evidenced by the Master R&D Agreement dated December 22, 2004, as the same may have been amended, modified or supplemented from time to time (the "MRDA").

8.  Article 4(a) of the MRDA provides that "legal title to any and all [Nortel

3

Networks] Technology whether now in existence or hereafter acquired or developed pursuant to the terms of this Agreement, shall be vested in NNL.  In consideration therefor, NNL agrees to enter into an Exclusive License and Non-Exclusive License with each of the Licensed Participants as set forth in Article 5."

9. It is the Trustee's understanding that well over $4 billion of the proceeds now held in escrow were generated by the sale of the intellectual property to which NNL held legal title.

10. Because of NNL's ownership of the intellectual property, it may be appropriate for all or nearly all of the value attributable to such sales to be allocated to NNL in the first instance.  While other members of the Nortel Group may have intercompany claims relating to the use of NNL's intellectual property, such claims could be addressed through the appropriate claims procedures pursuant to the Cross-Border Protocol.  In the first instance, the proceeds of the sales of NNL's intellectual property should be allocated to NNL.

11. Any determination of allocation based simply on what some have termed a "fair market value" approach for all of the proceeds does not properly account for the true contributions of value of the different entities.  Based on the highly integrated nature of the business, the Trustee submits that simply looking at accounting metrics and purported locations of revenue generation does not tell the whole story of the key role different entities played in the generation of the value of the assets that were sold.

12. For example, while the U.S. Debtors may argue that based on their rights as a licensee that they effectively had an ownership interest in Nortel's intellectual property, the simple fact is that legal title of those assets was held by NNL.  While the Trustee has not yet had an opportunity to participate in discovery and related analysis on this issue, it understands that

the legal relationships among the Nortel entities were carefully determined to maximize the value of the entire operational enterprise. Thus, the legal ownership of the intellectual property being vested in and held NNL was presumably a critical and valuable part of the structuring of the global enterprise and a recognition of NNL's key and value-laden role.[5]

13.     The Trustee is continuing its analysis of the facts and legal issues with respect to allocation and recognizes that, in the alternative, the facts and the equities of the case may also support a global *pari passu* approach for resolving the Allocation Dispute in light of the highly integrated and inter-connected nature of the worldwide business of NNL and its affiliates.[6] In addition to the supporting facts, principles of equity and fairness to all creditors may support *pro rata* sharing of the proceeds of the sale of Nortel Group's assets. Simply put, the facts may demonstrate that the Nortel Group operated as a single integrated economic entity even though it had separate and legally distinct units and that the fairest and most equitable approach to allocation would be a sharing of proceeds.[7]

14.     In light of the fact that this Opening Submission is being filed prior to the Trustee having the opportunity to conduct discovery or analyze information already produced, the Trustee hereby reserves its rights to modify or amend its position as facts become fully known and developed during discovery.

---

[5] It is for this reason that the Trustee submits that NNL should be allocated the share of proceeds attributable to the sale of intellectual property to which NNL held title.

[6] See 11 U.S.C. § 105(a).

[7] C.f. In re Stayton SW Assisted Living, L.L.C., 2009 WL 5173512, at *5 (D. Or. 2009) ("Substantive consolidation requires the consideration of two factors: (a) whether creditors dealt with entities as a single economic unit and did not rely on their separate identity in extending credit or (b) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors. The presence of either factor is a sufficient basis to order substantive consolidation. The language 'benefit of all creditors' does not mean each and every creditor. Rather, it means benefit

(continued)

84714055

15. The Trustee also reserves the right to join in the submissions or portions of the submissions of other parties to the Allocation Dispute after having an opportunity to review such submissions. Additionally, in accordance with the terms of the proposed Allocation Protocol, the Trustee reserves its right to respond to the submissions of any of the other parties.

Dated: New York, New York
       May 16, 2013

                         KATTEN MUCHIN ROSENMAN LLP
*Attorneys for Wilmington Trust, National Association, solely in its capacity as Successor Indenture Trustee and not in its individual capacity*

By: /s/ David A. Crichlow
    David A. Crichlow
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

---

(continued from previous page . . .)

to the creditor body as a whole. Substantive consolidation is premised on a sole aim: fairness to all creditors, and a cost benefit analysis is not required.").