## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x
In re:                                            :   Chapter 11
                                                  :
                                                  :   Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                :
                                                  :   Jointly Administered
                        Debtors.                  :
                                                  :   **Hearing Date: To be Determined**
                                                  :   **Objection Deadline: To be Determined**
                                                  :
------------------------------------------------- x
```

## MOTION OF THE U.K. PENSION CLAIMANTS TO STRIKE THE JOINT OBJECTION TO THE AMENDED PROOFS OF CLAIM FILED BY THE NORTEL NETWORKS UK PENSION TRUST LIMITED (AS TRUSTEE OF THE NORTEL NETWORKS UK PENSION PLAN) AND THE BOARD OF THE PENSION PROTECTION FUND

The Trustee (the "Trustee") of the Nortel Networks UK Pension Plan and the

Board of the Pension Protection Fund (the "PPF," and together with the Trustee, the "U.K.

Pension Claimants") hereby respectfully request (the "Motion") that the Court enter an order,

pursuant to Federal Rule of Civil Procedure (the "Federal Rules") 12(f) (as made applicable by

Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 7012), striking the Joint

Objection to the Amended Proofs of Claim Filed By The Nortel Networks UK Pension Trust

Limited (as Trustee of the Nortel Networks UK Pension Plan) and the Board of the Pension

Protection Fund, filed by the Debtors and the Official Committee of Unsecured Creditors (the

"Committee") on May 14, 2013 (the "Joint Objection," annexed as Exhibit A to the Declaration

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332) ("NNI"), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226) ("NN CALA").

of Justin R. Alberto, executed May 20, 2013, and filed concurrently herewith), on the grounds

that it neither constitutes an answer complying with Federal Rule 8 (as made applicable by

Bankruptcy Rule 7008) or a motion under Bankruptcy Rule 7012, and directing the Debtors to

file a responsive pleading complying with Bankruptcy Rules 7012 and 7008 within five days of

entry of an order granting this Motion.[2]  In support of the Motion, the U.K. Pension Claimants,

by and through their undersigned counsel, respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Having persuaded the Court last Summer to apply Bankruptcy Rule 7012 to the

U.K. Pension Claimants' Claims, the Debtors were required under Bankruptcy Rule 7012 to

serve a "responsive pleading" to the U.K. Pension Claimants' more definite statement within

fourteen days of its service upon them.  That responsive pleading was required to be either an

answer complying with the pleading requirements of Bankruptcy Rule 7008 or a motion under

Bankruptcy Rule 7012.  The Joint Objection filed by the Debtors on May 14, 2013 – more than

*eight months* after receiving the Amended Claims they demanded the U.K. Pension Claimants

file in short order – is neither.

2.      As is plain from even a cursory review, the Joint Objection is not an answer

complying with the pleading requirements of Bankruptcy Rule 7008.  Nor is it a motion based on

one of the grounds permitted under Bankruptcy Rule 7012.  Rather, the Debtors and the

Committee filed an "objection" to the Amended Claims pursuant to Bankruptcy "Rules 3001,

3002, 3003, 3007 and 9014."

3.      The Joint Objection makes *no* attempt to address the detailed allegations of fact

and law asserted in the Amended Claims, as the Debtors were required to do by Bankruptcy Rule

---

[2]      Without prejudice to their right to challenge standing, the U.K. Pension Claimants respectfully submit that the Court should similarly strike the joinders to the Joint Objection filed by the Monitor and the Canadian Debtors, and the Ad Hoc Group of Bondholders.  [D.I. 10575, 10549]

7008.  (A party must "admit or deny the allegations made against it by an opposing party.")

Federal Rule 8(b)(1)(B).  Instead, the Joint Objection is essentially a brief or memorandum of

law, the lion's share of which is devoted to irrelevant legal arguments about choice of law and

purported public policy principles, and the balance of which consists of conclusory assertions –

devoid of any reference to the detailed allegations set forth in the Amended Claims – that the

U.K. Pension Claimants' Claims are without merit.  In short, the Amended Claims and the Joint

Objection are like passing ships in the night.

      4.      The Debtors' wholesale failure to comply with Bankruptcy Rules 7012 and 7008

after obtaining an order of this Court applying Bankruptcy Rule 7012 to the U.K. Pension

Claimants' Claims and directing them to serve a more definite statement of their claims would be

inappropriate in any context.  But it is far more egregious in this case.  The Litigation Timetable

approved by the Court requires the Core Parties to serve "limited and specific requests" for

production of documents and identification interrogatories by May 22, 2013.  [D.I. 10566].

Because the Debtors have entirely failed to join issue with the U.K. Pension Claimants by

admitting or denying *any* of the detailed allegations in the Amended Claims, the U.K. Pension

Claimants are left with no choice but to assume that at trial the Debtors will deny *all* the

allegations in the Amended Claims.  As a result, it will be virtually impossible for the U.K.

Pension Claimants to serve "limited and specific requests" and at the same time adequately

prepare for trial.  The burden on the U.K. Pension Claimants is further exacerbated by the fact

that, unlike other Core Parties, who have had access to the 40,000 plus documents in the Merrill

database for years, the U.K. Pension Claimants are just being given access to the database for the

first time now.

5.        Resolution of the claims in this case on such an abbreviated timetable is hard enough as it is: it should not be made more difficult by gamesmanship.  Due process requires that the Court ensure that *all* parties play by the rules.  The Debtors are no exception.  Having obtained an order of this Court applying Bankruptcy Rule 7012 to the U.K. Pension Claimants' Claims, the Debtors were required to serve a responsive pleading to the Amended Claims that complies with Bankruptcy Rules 7012 and 7008, not simply a brief-like objection under Bankruptcy Rule 3007 in support of disallowance. Accordingly, the U.K. Pension Claimants are entitled to appropriate relief, as set forth below.

## JURISDICTION AND VENUE

6.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue over the Debtors' Chapter 11 cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7.        On January 14, 2009 (the "Petition Date"), the Debtors (other than Nortel Networks (CALA) Inc. ("NN CALA")) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 15, 2009, this Court entered an order directing that the above-captioned chapter 11 cases be jointly administered and consolidated for procedural purposes. [D.I. 36]  NN CALA filed its chapter 11 petition on July 14, 2009, which was subsequently consolidated with the other Debtors' cases.[3] [D.I. 1098, 1099]

8.        The filing of the Debtors' chapter 11 petitions was part of a coordinated global restructuring process that was undertaken by numerous entities across the Nortel group of

---

[3]        On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain orders previously entered in the Debtors' chapter 11 cases [D.I. 1099].

companies.  On January 14, 2009, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC") and certain of its Canadian affiliates (collectively, the "Canadian

Debtors") filed applications with the Ontario Superior Court of Justice (the "Canadian Court")

under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from

their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to

manage their properties and operate their businesses under the supervision of the Canadian

Court.  The Canadian Court issued an order on January 14, 2009 recognizing these chapter 11

proceedings as a "foreign proceeding" under section 18.6 of the CCAA.[4]

9.       Pursuant to the Court's orders dated August 4, 2009 and December 3, 2009

(collectively, the "Bar Date Orders"), September 30, 2009 was set as the deadline for the filing

of proofs of claims against the Debtors (other than NN CALA), and January 25, 2010 for filing

proofs of claims against NN CALA.  In compliance with the Bankruptcy Court's bar date orders,

the U.K. Pension Claimants timely filed proofs of claim (the "Claims") on September 30, 2009

(against all Debtors except NN CALA) and on January 25, 2010 (against NN CALA), asserting

contingent, unliquidated claims arising under U.K. statutory law.

10.      Almost three years later, on June 11, 2012, the Debtors filed an *Objection to the

Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the

Nortel Networks UK Pension Plan) and the Board of the Pension Protection Fund, and Motion

For an Order Requiring a More Definite Statement of Claim* [D.I. 7818] (the "Debtors' Rule

7012 Motion").  The Debtors' Rule 7012 Motion sought, inter alia, an order applying Rule 12(e)

of the Federal Rules and compelling the U.K. Pension Claimants to "file a more definite

---

[4]      On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main
proceedings under chapter 15 of the Bankruptcy Code.  *See In re Nortel Networks Corp., et al.*, Case No.
09-10164 (Bankr. D. Del. filed Jan. 14, 2009) [D.I. No. 40].

statement of their Claims" and requiring them to "attach to the amended claims all supporting documentation on which they intend to rely." (Debtors' Rule 7012 Mot. at 4-5.)

11.     In response to the Debtors' Rule 7012 Motion, the U.K. Pension Claimants advised the Debtors and the Court that they did not object to filing a more definite statement of their Claims, (Response of the Trustee and PPF at 2) [D.I. 7919], but requested that they be given until October 31, 2012 to do so, given the difficulty of consulting with clients and advisors during the July/August holiday period in the U.K.— a difficulty greatly exacerbated by the occurrence of the Summer Olympics in London at the time. (Response at 13-14.) The Debtors refused to offer the U.K. Pension Claimants anything but a limited perfunctory extension.

12.     On July 11, 2012, the Court heard argument on the Debtors' Rule 7012 Motion and issued an order [D.I. 7984] requiring the U.K. Pension Claimants to "serve a more definite statement of their Claims on or before September 5, 2012, which shall attach supporting documentation." (July 11, 2012 Order at 2.)

13.     In compliance with the Court's July 11 Order, on September 5, 2012, the U.K. Pension Claimants served a more definite statement of their Claims in the form of Amended Proofs of Claim (the "Amended Claims") against Debtors Nortel Networks Inc. ("NNI")[5] and Nortel Networks (CALA) Inc. ("NN CALA").[6] The rider to the Amended Claims, which exceeds 90 pages in length and contains 325 paragraphs, sets forth in detail the facts and law supporting the U.K. Pension Claimants' Claims against NNI and NN CALA arising under U.K. statutory law. The U.K. Pension Claimants also attached to the Amended Claims over 200 pages of relevant documentation in support thereof.

---

[5]     Annexed hereto as Exhibit B to the Declaration of Justin R. Alberto, executed May 20, 2013, and filed concurrently herewith.

[6]     The U.K. Pension Claimants withdrew the Claims filed against the remaining Debtors.

14.     Because the Court, at the request of the Debtors, ordered that Bankruptcy Rule
7012 apply to the U.K. Pension Claimants' Claims, the Debtors were required under Bankruptcy
Rule 7012(a)(2) to serve a "responsive pleading" to the U.K. Pension Claimants' more definite
statement within fourteen days of its service.  Fed. R. Bankr. P. 7012(a)(2).  Pursuant to
Bankruptcy Rule 7012, the Debtors' response was required to consist of either (i) an answer
complying with Federal Rule 8 (incorporated by Bankruptcy Rule 7008(a)) or (ii) a motion based
on one of the grounds set forth in Federal Rule 12(b) (incorporated by Bankruptcy Rule
7012(b)).  The Debtors failed to serve <u>any</u> responsive pleading to the Amended Claims within
the required period.

15.     Not only were the Debtors in default under Bankruptcy Rule 7012, but they were
on notice of their default for months before they finally filed the Joint Objection.  In the U.K.
Pension Claimants' March 4, 2013 Submission in Response to the Court's February 14, 2013
Order [D.I. 9577] (the "<u>UKPC Rule 7012 Response</u>"), the U.K. Pension Claimants pointed out
that Bankruptcy Rule 7012 required a responsive pleading within fourteen days and that the
Debtors were in default and had been for many months.  (UKPC Rule 7012 Response at 7-8.)  At
the next hearing before the Court, on March 7, 2013, the Debtors did not deny that they were in
default, and, in fact, indicated that they would respond as fast as the Court wished.  (Mar. 7, 2013
Hearing Tr. at 109:21-110:5, excerpts annexed as <u>Exhibit C</u> to the Declaration of Justin R.
Alberto, executed May 20, 2013, and filed concurrently herewith) ("[W]e will move as fast as
you tell us to move.  And we want it to be fast.")  More than two more months passed before the
Debtors filed their "response."

16.     Finally, on May 14, 2013, the Debtors and the Committee filed the Joint
Objection pursuant to Bankruptcy "Rules 3001, 3002, 3003, 3007 and 9014."  (Joint Objection at

1.)  The Joint Objection does not even reference Bankruptcy Rule 7012, which the Debtors had previously invoked and which requires that they serve a "responsive pleading" to the U.K. Pension Claimants' more definite statement.  Rather than a "responsive pleading" that admits or denies the allegations in the Amended Claims, the Joint Objection is a brief or memorandum of law asserting legal arguments and theories that purport to show why the U.K. Pension Claimants' Claims are subject to disallowance.  It is simply not a responsive pleading within the meaning of Bankruptcy Rule 7012 and it does not remotely comply with Bankruptcy Rule 8.

**BASIS FOR RELIEF**

**A.    The Objection Fails to Satisfy the Requirements of Bankruptcy Rules 7012 and 7008.**

17.     In their Rule 7012 Motion, the Debtors insisted that an order applying Bankruptcy Rule 7012 and Federal Rule 12(e) to the Claims and requiring the U.K. Pension Claimants to serve a more definite statement of their Claims "will plainly promote the efficient resolution of their Claims by allowing the Debtors to fully understand the factual basis for the Claimants' assertions…."  (Debtors' Rule 7012 Mot. at 15).  According to the Debtors, the Claims were "so vague and ambiguous that the Debtors cannot respond to them."  (Debtors' Rule 7012 Mot. at 19; *id.* at 15 (arguing that applying Bankruptcy Rule 7012 is appropriate where "a pleading is so vague or ambiguous that a party cannot reasonably be required to *frame a responsive pleading*") (emphasis added) (quotation omitted).)  The Debtors further complained that the U.K. Pension Claimants "have not even met the minimal requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure that their pleading provide 'fair notice of what…[their] claim is and the ground upon which it rests.'" (Debtors' Rule 7012 Reply Br. at 8 n.10, quoting *Gwynne v. Credit Suisse First Boston (USA), Inc. (In re Quintas Corp.)*, 332 B.R. 110, 114 (Bankr. D. Del. 2005)) [D.I. 7942].  The Debtors also insisted that time was of the essence and

that the U.K. Pension Claimants should be required to file a more definite statement of their Claims by July 31, 2012.  (Debtors' Rule 7012 Mot. at 4.)

18.    This is not the only time the Debtors have urged the Court to apply the pleading requirements of Federal Rules 8 and 12 to a proof of claim.  The Debtors made the exact same arguments when they sought an order directing the Joint Administrators to file a more definite statement of NNUK's claims.  (*See* Objection to Joint Administrators' Proofs of Claim at 10-14) [D.I. 5200] (seeking, <u>inter alia</u>, order applying Bankruptcy Rule 7012 to NNUK claims).)  After NNUK filed its more definite statement, the Debtors filed a motion to dismiss, again arguing for the application of both Federal Rules 8 and 12 – the very same rules that the Debtors now ignore – to determine the sufficiency of NNUK's claims.  (Debtors' Mot. to Dismiss at 16-20) [D.I. 5970] ("To survive scrutiny under Bankruptcy Rule 7012 and Federal Rule 12(b)(6), Rule 8 requires that a pleading 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).)  In seeking such relief, the Debtors conceded that a proof of claim is generally recognized as a "functional equivalent" of a civil complaint and that that comparison applied with "particular force" to NNUK's claim because it was "*structured as a complaint*, with separate asserted legal causes of action."  (*Id.* at 17.)[7]

19.    Having invoked the framework applicable to pleadings under the Bankruptcy Rules and Federal Rules, the Debtors must now comply with those rules in responding to the Amended Claims, which, like the claims filed by NNUK, are "structured as a complaint."

---

[7]    *See also* Debtors' Mot. to Dismiss at 17-18 ("Movants should be entitled to move to dismiss the NNUK Claim just as one could move to dismiss a complaint, *particularly as this furthers the goal of bringing bankruptcy court procedure into line with district court procedure.*") (emphasis added); Reply in Support of Mot. to Dismiss [D.I. 6553] at 5-6 ("Incredibly, NNUK argues that it did not have proper notice that Rules 8(a) and 12(b)(6) would apply to its Claim. . .The U.S. Debtors cited to both *Twombly* and *Iqbal* for this standard.").

Bankruptcy Rule 7008 provides that in an answer a party must "admit or deny the allegations asserted against it by an opposing party."  Fed. R. Civ. P. 8(b).  "Under Fed. R. Civ. P. 8(b), a defendant has three choices when answering an allegation made in a complaint: (1) admit the allegation; (2) deny the allegation; or (3) state that it is without knowledge or information sufficient to form a belief as to the truth of the allegation."  *In re TCW/Camil Holding LLC v. Fox Haron & Camerini LLP*, No. 03-10717, 2004 WL 1151562, at *5 (D. Del. May 12, 2004); *King Vision Pay Per View, Ltd. v. J.C. Dimitri's Rest., Inc.*, 180 F.R.D. 332, 333 (N.D. Ill. 1998) ("For too many years and in too many hundreds of cases this Court has been reading, and has been compelled to order the correction of, allegedly responsive pleadings that are written by lawyers who are either unaware of or who choose to depart from Rule 8(b)'s plain roadmap. It identifies only three alternatives as available for use in an answer to the allegations of a complaint: to admit those allegations, to deny them or to state a disclaimer . . . in the express terms of the second sentence of Rule 8(b), which then entitles the pleader to the benefit of a deemed denial").

20.    Moreover, there are consequences for a party's failure to follow the rules: an allegation "is admitted if a responsive pleading is required and the allegation is not denied."  Fed. R. Civ. P. 8(b)(6); *see also In re Valentino's Restoration & Cleaning Serv. v. Valentino's Restoration & Cleaning Serv.,* 215 B.R. 153, 154 n.1 (Bankr. N.D. Ill. 1997) (where debtor responded to an adversary complaint with a legal memorandum, the court found that "[s]ince that memorandum denies none of the factual assertions of the [plaintiff], they have been admitted."); *In re Brooks Shoe Mfg. Co., Inc.*, 21 B.R. 604, 606 n.2 (Bankr. E.D.Pa. 1982) ("In its answer, [Defendant] failed to deny any of the allegations contained in [Debtor's] complaint, and, therefore, those allegations are deemed admitted.").

21.    The Joint Objection violates the fundamental requirements of Bankruptcy Rules 7012 and 7008 because it neither answers the Amended Claims nor constitutes a motion under Bankruptcy Rule 7012(b).  Rather than filing a responsive pleading, as the rules require, the Debtors and Committee have filed the Joint Objection, which is, for all intents and purposes, a legal brief.  The Joint Objection, while making several legal arguments that purportedly provide a basis for disallowing the Amended Claims,[8] is not a responsive pleading.  It does not admit or deny *any* of the hundreds of specific allegations in the Amended Claims.

22.    The Debtors cannot have it both ways.  The U.K. Pension Claimants cannot be compelled to satisfy the pleading requirements of Bankruptcy Rule 7012 by filing a more definite statement of their Claims in compliance with the pleading requirements of Bankruptcy Rule 7008, only to have the Debtors ignore their pleading obligations under Bankruptcy Rules 7012 and 7008, the very rules they asked the Court to apply to these claims.

23.    Accordingly, the Court should strike the Joint Objection and direct the Debtors and Committee to file a proper responsive pleading that addresses each of the allegations set forth in the Amended Claims, as required by Bankruptcy Rules 7012 and 7008, within five days of entry of an order granting this Motion.[9]

**B.    The Objection's Deficiencies Will Impede The Efficient Conduct Of Discovery In These Expedited Proceedings.**

24.    More than four years after these chapter 11 cases began, and more than three years since the U.K. Pension Claimants originally filed their Claims, the parties are embarking

---

[8]    The U.K. Pensions Claimants will save for another day a response to the Debtors' remarkable assertion that, contrary to their consistent representations in this Court, the District Court, and the Third Circuit that the Court would be applying U.K. law in determining the Amended Claims, the Court should now recast these statutory U.K. law claims into "veil piercing" claims and apply the laws of Delaware and Florida to disallow them.

[9]    In the event the Debtors once again fail to file a compliant responsive pleading, the Court should find that the allegations contained in the Amended Claims (other than those relating to the amount of damages) are deemed admitted.  *See* Fed. R. Civ. P. 8(b)(6).

on a grueling litigation schedule to adjudicate the Amended Claims, the Allocation Dispute, and

the claims filed by the Joint Administrators on behalf of the EMEA estates, culminating in a trial

in January 2014.  Resolution of these matters in that abbreviated time frame will be a constant

challenge for the parties and the Courts.  The importance of focused and targeted discovery

cannot be overstated.

25.    The Discovery Plan that was recently approved by the Court calls for "limited"

and "reasonable" document requests and interrogatories.  The U.K. Pension Claimants agreed to

this language in the Discovery Plan with the understanding that they would be receiving a

compliant response to the Amended Claims.  The Joint Objection is decidedly not that.  Without

knowing which of the specific allegations contained in the 325 paragraphs of the Amended

Claims are in dispute, drafting a "limited" request is not realistic or likely even possible.  Having

been left in the dark by the Debtors, the U.K. Pension Claimants cannot reasonably be expected

to be able to comply with the terms of the Discovery Plan.  This is a concern that the U.K.

Pension Claimants raised months ago, and which the Court appreciated:

> MR. O'CONNOR: We certainly think it makes sense, before we start talking
> about discovery, to know what aspects of that pleading do the Debtors object to.
> It makes no sense drafting discovery requests, until we know what material facts
> are in dispute…
>
> THE COURT: All right.  I appreciate that.
>
> (Mar. 7, 2013 Hearing Tr. at 104:3-13.)

26.    The Debtors' failure to serve a proper responsive pleading has created a cascading

series of negative consequences for discovery in this case.  In addition to the difficulties the U.K.

Pension Claimants will face in crafting specific document requests and interrogatories, the

Debtors' default also impedes the U.K. Pension Claimants' ability to identify their own relevant

fact and expert witnesses, or witnesses from other parties to be deposed, as well as their ability to determine how properly to focus the questioning of witnesses in depositions or at trial.

27.      As in any civil litigation – and all the more in one of this magnitude – focused and targeted discovery can only occur when the parties have joined issue in their pleadings and they know which allegations are admitted and which are denied.  Absent such joinder, the parties have no choice but to assume that the allegations supporting their claims will be denied putting them to the proof on all their allegations at trial.  With the parties set to embark on an intensive discovery program that will involve substantial document requests, interrogatories, and depositions of dozens of fact and expert witnesses, this is plainly an untenable situation.  It is simply no way to conduct a litigation, particularly one that is so complex, has so much at stake for creditors around the globe, and one which in any other context would be expected to require years, not months, to complete.  Due process requires more.

## NOTICE

28.      Notice of the Motion has been given via United States mail and via email to the (i) U.S. Trustee; (ii) counsel to the Debtors; (iii) counsel to the Committee; and (iv) counsel to all Core Parties.  The U.K. Pension Claimants submit that under the circumstances no other or further notice is necessary.

## NO PRIOR REQUEST

29.      No prior request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the U.K. Pension Claimants respectfully request that the Court

grant the relief requested herein and such other and further relief as it deems appropriate.


Dated: Wilmington, Delaware
      May 20, 2013

                                       BAYARD, P.A.

                                       */s/ Justin R. Alberto*
                                       Charlene D. Davis (No. 2336)
                                       Justin Alberto (No. 5126)
                                       222 Delaware Avenue, Suite 900
                                       Wilmington, Delaware 19899
                                       Telephone: (302) 655-5000
                                       Facsimile: (302) 658-6395
                                       Email: cdavis@bayardlaw.com
                                              jalberto@bayardlaw.com

                                       -and-

                                       WILLKIE FARR & GALLAGHER LLP
                                       Marc Abrams
                                       Brian E. O'Connor
                                       Sameer Advani
                                       787 Seventh Avenue
                                       New York, New York 10019
                                       Tel: (212) 728-8000
                                       Fax: (212) 728-8111

                                       *Counsel for the Trustee of Nortel Networks UK*
                                       *Pension Plan and the Board of the Pension*
                                       *Protection Fund*

*9592519*