## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

                         :

*In re*                        :        Chapter 11

                         :

Nortel Networks Inc., *et al.*,[1]      :        Case No. 09-10138 (KG)

                         :

               Debtors.       :        Jointly Administered

                         :

                         :        **Hearing date: June 25, 2013 at 10:00 a.m. (ET)**

                         :        **Objections due: June 3, 2012 at 10:00 a.m. (ET)**

                         :        **RE: D.I.s 9598, 9600, 9647, 9665, 9674, 10151,**

                         :        **10170, 10186, 10452, 10454, 10603, 10730**

-------------------------------------------------------- X

## DEBTORS' OMNIBUS OBJECTION TO VARIOUS
## NORTEL US LTD EMPLOYEES' MOTIONS COMPELLING DEBTORS TO
## ADMIT MY CLAIM FOR SEVERANCE ALLOWANCE AS VALID PER
## NORTEL NETWORKS SEVERANCE ALLOWANCE PLAN AND ISSUE PAYMENT

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby respectfully submit this omnibus objection (the

"Objection"), to the motions filed by several long-term disabled individuals (the "Movants")[2]

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]       Motions raising substantially similar arguments have been filed by the following eight (8) Movants: *Najam ud Dean, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment*, filed March 7, 2013 [D.I. 9598]; *Scott David Howard, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment*, filed March 7, 2013 [D.I. 9600]; *Remajos Brown, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment*, filed March 11, 2013 [D.I. 9647]; *Fred Lindow, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment*, filed March 15, 2013 [D.I. 9665]; *Estelle Loggins, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment*, filed March 18, 2013 [D.I. 9674]; *Vada Wilson Motion*, filed April 15, 2013 and 10151 [D.I.s 10151 and 10730]; *John J. Rossi, Nortel US LTD Employee, Motion Compelling Debtors to Admit My*

generally stylized as *Nortel US LTD Employee Motion Compelling Debtors to Admit My Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment* (collectively, the "Motions").

      1.      After almost two years of extensive litigation and negotiation by and among the Debtors and the LTD Committee, on behalf of the individual long-termed disabled employees of the Debtors, this Court approved the Settlement Agreement finally settling and resolving those issues (the "Settlement Agreement") on May 1, 2013 [D.I. 10406]. As the Court is aware, in relevant part the Settlement Agreement provides for the termination of the employment of the Debtors' long-term disabled employees who are participating in Nortel Networks Inc.'s Long Term Disability Plan and certain other plans and programs (such employees are collectively referred to herein as the "LTD Employees") as of June 30, 2013. Eight individuals who are current or former LTD Employees have filed the Motions seeking to compel the Debtors to pay them severance as a result of their scheduled separation from the Debtors. While the Debtors sympathize with the Movants' desire to receive severance payments, the LTD Employees are not entitled to receive severance under the language of the Severance Plans (as defined below), which provide that an employee must be regularly scheduled to work a minimum number of hours per week in order to be eligible. Accordingly, the Motions should be denied.

## FACTS RELEVANT TO THE OBJECTION

      2.      The Debtors maintain two plans providing severance benefits to compensate their employees for a non-voluntary loss of employment without cause – the Nortel Networks Severance Allowance Plan, attached to the *Declaration of John J. Ray III in Support of Debtors'*

---

*Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment*, filed April 18, 2013 [D.I. 10170]; *Dennis Wayne Bullock, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment*, filed May 6, 2013 [D.I. 10454]. The Debtors reserve all of their rights and defenses against any motion filed in the future, or not otherwise listed here. As explained in further detail below, Estelle Loggins is not a long-term disabled employee.

*Omnibus Objection to Various Nortel US LTD Employees' Motions Compelling Debtors to*

*Admit My Claim for Severance Allowance Plan and Issue Payment* (the "Ray Declaration") as

Exhibit 1, and the Nortel Networks Enhanced Severance Allowance Plan, attached to the Ray

Declaration as Exhibit 2 (together, the "Severance Plans").[3]   Under each of the Severance Plans

only certain qualifying employees are entitled to severance upon their severance from the

Debtors.  In order to be eligible for severance an individual must qualify as an "Employee".  See

Severance Plans § 1.3(g).  In particular, the Nortel Networks Severance Allowance Plan defines

"Employee" as any "Full-Time Employee or Part-Time Employee," and "Employee" under the

Nortel Networks Enhanced Severance Allowance Plan is only an individual who qualifies as a

"Full-Time Employee."  Id.  Both Severance Plans define Full-Time Employees as those who are

"regularly scheduled to work at least thirty-five (35) hours per week," and Part-Time Employees

under the Nortel Networks Severance Allowance Plan are those who are "regularly scheduled to

work at least twenty (20) hours but less than thirty-five (35) hours per week."  See id. § 1.3(i);

Nortel Networks Severance Allowance Plan § 1.3(j).  Both Severance Plans further include

provisions clarifying that an individual who would otherwise qualify for severance,[4] but is not an

Employee on the day immediately preceding the effective date of his or her termination of

employment, shall not receive a severance allowance.  See Severance Plans § 2.5.  As this Court

is aware and as the Movants point out, procedures proposed by the Debtors to resolve certain

post-petition employee claims, including claims filed under the Severance Plans, were approved

on May 24, 2012.  See *Motion to Authorize and Approve Procedures to Resolve or Otherwise*

*Settle Claims of Employees Terminated Post-Petition* [D.I. 7617] ("Motion to Resolve Employee

---

[3]      The Debtors plan to terminate the Severance Plans in conjunction with the termination of their other benefit plans on June 30, 2013, and the termination of employment of all of their remaining employees.

[4]      Section 2.1 of the Severance Plans provides a list of specific reasons that an Employee would be eligible for severance payments under the Severance Plans.

Claims"); *Order Authorizing and Approving Procedures to Resolve or Otherwise Settle Claims of Employees Terminated Post-Petition* [D.I. 7685].  Indeed, the Debtors have used those procedures to settle claims under the Severance Plans it found to be valid.  However, as set forth in footnote 7 of the Motion to Resolve Employee Claims, the Debtors did not and do not concede the validity of any individual claim by seeking approval of those procedures.

       3.      There currently are approximately 193 LTD Employees[5] receiving benefits under the LTD Plans.[6]  Historically, the Debtors have identified LTD Employees as current employees of the Debtors for purposes of administering the LTD Plans and benefits provided thereunder.  However, the LTD Employees are not regularly scheduled for work and do not actively perform services for the Debtors while on long-term disability, and in some cases may have been unable to do so for years as a result of their disabilities.  Indeed, to qualify for income continuation benefits under the LTD Plans, an individual must have been unable to work and receiving short-term disability benefits for a minimum of 6 months.  Nortel Networks Inc. Long-Term Disability Plan Summary Plan Description 2009 at 5-6, 16, attached to the *Declaration of John J. Ray III in Further Support of the Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code,*

---

[5]      Of these 193 LTD Employees, 21 have returned retirement election forms as of May 17, 2013, opting to retire in order to participate in the settlement reached with the Official Committee of Retired Employees.  Under retirement election form signed by these individuals the individual waives his or her right to receive benefits under the Severance Plans as part of this election.  This is consistent with the Severance Plans, as voluntary retirement is not a basis to receive benefits under the Severance Plans under any circumstances.

[6]      The Debtors historically have provided a number of benefits to their employees through various benefit plans and other programs, including (as amended or modified from time to time) the Nortel Networks Inc. Long-Term Disability Plan, the Nortel Networks Inc. Short-Term Disability Plan, the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan, and any other formal or informal benefit plans, agreements, or programs (including plans, agreements, arrangements or programs that are funded through the purchase of insurance) or arrangements for disabled employees, their surviving spouses and eligible dependents, including for medical, surgical, or hospital care benefits, income continuation benefits or any other benefits in the event of sickness, accident, disability, or death (collectively, and in each case as such plans have been amended or modified from time to time, the "LTD Plans").

*and Bankruptcy Rules 9019 and 7023 to (A) Finally Approve the Settlement Agreement, (B)*

*Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant*

*Related Relief* [D.I. 10318] (the "<u>Joint Motion Ray Declaration</u>") as Exhibit 27.  Furthermore, in

order to receive income continuation benefits an individual must be unable to work because of a

disease or injury.  While the specific language used varies across plan years, eligibility for

income continuation benefits beyond a 18-month period requires that the person in question be

unable to return to work at a "reasonable occupation."  Nortel Networks Inc. Long-Term

Disability Plan Summary Plan Description 2009 at 15, attached to the Joint Motion Ray

Declaration as Exhibit 27.  The most recent LTD Employee went out on disability status more

than three years ago, in 2009.  Consistent with this change in status, at the time an individual

qualifies as an LTD Employee, he or she is paid his or her accrued vacation days.  Moreover,

company property is returned and access to facilities is revoked, such that an LTD Employee is

unable to perform work for the Debtors unless he or she changes his or her status with the

company.

       4.      As this Court is aware, the Debtors and the LTD Committee jointly filed the *Joint*

*Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019*

*and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long-Term*

*Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C)*

*Approve the Notice Procedures, and (D) Schedule a Fairness Hearing; and (II)(A) Finally*

*Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the Debtors to*

*Terminate the LTD Plans, and (D) Grant Related Relief*, on January 18, 2013 [D.I. 9304],

seeking, among other relief, approval of the Settlement Agreement permitting NNI to terminate

the LTD Plans as of June 30, 2013 upon granting an allowed general unsecured claim in the

gross amount of $25,960,000 to the LTD Committee for the benefit of the members of the

Settlement Class.[7]  Section 7 of the Settlement Agreement provides that the employment of the

LTD Employees shall be terminated on the Termination Date, which has been established as

June 30, 2013.  See Settlement Agreement § 7.  While the Settlement Agreement also contains

general release provisions, claims arising under the Severance Allowance Plans are specifically

excluded as the Debtors had not sought to terminate such plans with respect to the LTD

Employees, believing them inapplicable.  See Id. § 9(b)(ii).  This court entered the *Order (A)*

*Approving the Settlement Agreement on a Final Basis (B) Certifying a Class for Settlement*

*Purposes Only on a Final Basis (C) Authorizing the Debtors to Terminate the LTD Plans and*

*(D) Granting Related Relief* on May 1, 2013 [D.I. 10406], approving the Settlement Agreement

and it has since become effective.

5.      The Settlement Agreement represented the conclusion of an effort to terminate

certain of the LTD Plans that began with the filing of the *Debtors' Motion for Entry of an Order*

*Authorizing Debtors to Terminate Certain Retiree and Long-Term Disability Plans*, on June 21,

2010 [D.I. 3204] (the "2010 Plan Termination Motion").  That motion later was withdrawn by

the Debtors without prejudice on July 16, 2010 [D.I. 3651], including without limitation as a

result of the Third Circuit's ruling in IUE-CWA  v. Visteon Corp. (In re Visteon Corp.), 612

F.3d 210 (3d Cir. 2010).

6.      In conjunction with the filing of the 2010 Plan Termination Motion, the Debtors

sent their standard form termination notifications to the LTD Employees in June of 2010, which

included a section regarding the severance benefits (and other benefits) that would have been

available had the LTD Employees been eligible (the "2010 Notices").  The cover letter for the

---

[7]      The description of the Settlement Agreement contained in this Objection  is for informational purposes only
and is qualified in its entirety by the terms of the Settlement Agreement itself.

6

notification made clear that, "Employment termination packages are standard, and as such there may be information that is not relevant to you given your long-term disability status." See, e.g., June 28, 2010 Letter from Nortel, attached to the Ray Declaration as Exhibit 3.  Furthermore, the notification contained language in other paragraphs making clear that the provisions only applied, "if Employee qualifies for benefits under the Severance Plan."  See HR Shared Services U.S. – Termination Notification, attached to Remajos Brown's Motion as Exhibit A. Approximately two weeks later, the Debtors sent out a letter retracting the previous termination notification letters in light of the withdrawal of the 2010 Plan Termination Motion and making it clear that LTD Employees should "disregard the Employment Termination Package and COBRA notifications you have already received as they are **no longer applicable**."  See July 20, 2010 letter from Nortel (emphasis in original), attached to the Ray Declaration as Exhibit 4.

       7.      Prior to the approval of the Settlement Agreement, certain LTD Employees filed the *Nortel US LTD Employees Motion Compelling Debtors to Disclose Critical Benefits Information Towards Discernment of Transition from LTD Plans to Retiree Plan* [D.I. 10364] on April 26, 2013 (the "Severance Information Motion").  That motion sought to compel the Debtors to state their position as to whether the Debtors intend to pay LTD Employees severance pursuant to the Severance Plans.  Specifically, the Severance Information Motion argued that such information was critical to LTD Employees when deciding whether they should elect to terminate their employment with the Debtors to share in the Retiree settlement, or rather to remain an LTD Employee and share in the LTD Settlement Agreement.  The Debtors filed the *Debtors' Response to Nortel US LTD Employees Motion Compelling Debtors to Disclose Critical Benefits Information Towards Discernment of Transition from LTD Plans to Retiree Plans* on April 29, 2013 [D.I. 10375], and stated that the Debtors did not intend to pay LTD

7

Employees severance pursuant to the Severance Plans, based on their reading of the Severance

Plans and noting the pending Motions that had been filed seeking adjudication of this issue.  This

Court heard this matter during a hearing on May 7, 2013, and granted the Severance Information

Motion, as the Debtors had already provided the requested information.  See *Order Granting*

*Nortel US LTD Employees Motion Compelling Debtors to Disclose Critical Benefits Information*

*Towards Discernment of Transition from LTD Plans to Retiree Plans* [D.I. 10462].

## **BASIS FOR OBJECTION**

8.      The Motions should be denied as the Debtors are not required to pay severance

under the plain language of the Severance Plans, as described in more detail above, which states

that in order for an individual to be eligible for severance benefits, he or she must be an

"Employee" of the Debtors who is regularly scheduled to be at work (i.e. an active employee) at

the time of termination.  Here, put simply, the LTD Employees are not regularly scheduled to

work at all during their period of disability and therefore they do not meet the eligibility

requirements that would entitle them to receive benefits under the Severance Plans.  Thus,

denying the Motions requesting severance both is reasonable and consistent with a plain reading

of the Severance Plans.

9.      Furthermore, the Movants are mistaken to the extent that they assert the 2010

Notices either modified the Severance Plans or created or acknowledged a right to severance

benefits.  Contrary to the Movants' arguments, the 2010 Notices are not inconsistent with the

Severance Plans and expressly state that an individual must be eligible under the relevant

benefits plan to receive the benefits regardless of whether an estimated benefit is listed on the

attachments.  Even if it could be argued the 2010 Notices could be read otherwise, which they

cannot, the Severance Plans terms govern and cannot be modified by the 2010 Notices.  The

Third Circuit has repeatedly held that ERISA precludes an employer from making "oral or

informal amendments" to employee benefits plans and that the only way to effect a modification of such a plan is through a valid amendment executed "according to formal procedures." See Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1163 (3d Cir. 1990); Confer v. Custom Eng'g Co., 952 F.2d 41, 43 (3d Cir. 1991); Depenbrock v. CIGNA Corp., 389 F.3d, 78, 81 (3d Cir. 2004).  Moreover, according to the terms of the Severance Plans themselves, the only way the Debtors could have amended the Severance Plans would have been by "adoption of a written instrument of amendment by the Board, or by an officer of Nortel Networks Inc. to whom such authority has been delegated by the Board." See Severance Plans § 4.1.  The 2010 Notices clearly would not satisfy this high standard and cannot be found to have modified the express terms of the plan documents.

10.    Moreover, the Debtors' historical practice has been to deny LTD Employees severance unless they return to active status at work and are then subsequently terminated.  For example, LTD Employees who age out of eligibility for benefits under the LTD Plans upon turning age 65 without returning to work are terminated for "failure to return to work," which is treated as a voluntary termination that is not subject to payment under the Severance Plans.  By contrast, if LTD Employees returned to work with a release from their doctor and were subsequently terminated because the Debtors did not have a position for them, such former LTD Employees received severance because they actively returned to work and therefore satisfied the definition of "Employee" under the Severance Plans.  None of the Movants has alleged they are able to return to work, or has sought to return to work.  To the contrary, as part of the LTD Settlement, to the extent they are eligible such individuals would receive the right to participate in distribution based on the allow claim against the Debtors, in lieu of their continued receipt of LTD benefits.

11.     Finally, Estelle Loggins also should be denied because she is not an LTD Employee.  As the Debtors have previously informed the Court, Ms. Loggins no longer is eligible for LTD Benefits after she passed the maximum age in December 2012.  <u>See</u> Letter from Stephen X. Miller, Disability Claim Manager at The Prudential Insurance Company of America, to Estelle Loggins, dated October 4, 2012, attached to the Joint Motion Ray Declaration as Exhibit 1.  This Court has previously ruled that Ms. Loggins was not an LTD Employee and thus she was not eligible to share in the LTD settlement.   <u>See</u> April 30, 2013 Hearing Transcipt at 54, 5-10 (The Court: "I am going to sustain your Objection to Ms. Loggins' claim on the grounds that she is no longer a member of the LTD group.  She is now a retiree and receiving – will receive those benefits.").  Since Ms. Loggins is retired and is not an employee of the Debtors even for administrative purposes, she would not be eligible for payment under the Severance Plans on that basis.

## Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court deny each of the Motions and enter the order attached hereto as <u>Exhibit A</u>.

*[Remainder of Page Intentionally Left Blank]*

Dated:  June 2, 2013          CLEARY GOTTLIEB STEEN & HAMILTON LLP
      Wilmington, Delaware

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999


    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*