```
              IN THE UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF DELAWARE


IN RE:                          )   Case No. 09-10138
                                )   (Jointly Administered)
                                )
NORTEL NETWORKS, INC.,          )   Chapter 11
                                )   Courtroom
          et al.,               )
                                )   824 Market Street
          Debtors.             )   Wilmington, Delaware
                                )
                                )   August 23, 2011
                                )   10:00 a.m.
```

                   TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE KEVIN GROSS
                 UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor:                 Morris, Nichols, Arsht & Tunnell
                            BY: ANN CORDO, ESQ.
                            BY: ERIC SCHWARTZ, ESQ.
                            1201 North Market Street
                            18th Floor
                            Wilmington, DE 19899-1347
                            (302) 351-9459


                            Cleary Gottlieb Steen & Hamilton
                            BY: LISA SCHWEITZER, ESQ.
                            BY: JAMES BROMLEY, ESQ.
                            BY: DAVID HERRINGTON, ESQ.
                            BY: JANE KIM, ESQ.
                            One Liberty Plaza
                            New York, NY  10006
                            (212) 225-2629


ECRO:                       GINGER MACE

Transcription Service:      DIAZ DATA SERVICES
                            331 Schuylkill Street
                            Harrisburg, Pennsylvania 17110
                            (717) 233-6664
                            www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

For GENBAND:                        Latham & Watkins, LLP
                                    BY: ELI KAY-OLIPHANT, ESQ.
                                    885 Third Avenue
                                    New York, NY  10022-4834
                                    (212)906-1884

                                    Duane Morris, LLP
                                    BY: SOMMER L. ROSS, ESQ.
                                    Suite 1600
                                    222 Delaware Avenue
                                    Wilmington, DE 19801-1659
                                    (302) 657-4951

For Joint Administrators:           Hughes Hubbard & Reed, LLP
                                    BY: KATHRYN COLEMAN, ESQ.
                                    One Battery Park Plaza
                                    New York, NY  10004-1482
                                    (212) 837-6447

For Bondholder Group:               Milbank Tweed Hadley McCloy
                                    BY: CINDY CHEN DELANO, ESQ.
                                    One Chase Manhattan Plaza
                                    New York, NY  10005-1413
                                    (212) 530-5885

For Ad Hoc Committee of
Deferred Comp Plan
Beneficiaries:                      Blank Rome, LLP
                                    BY: BONNIE GLANTZ FATELL, ESQ.
                                    1201 Market Street, Ste. 800
                                    Wilmington, DE  19801
                                    (302) 425-6423

                                    Bernstein Shur
                                    BY: ROBERT KEACH, ESQ.
                                    100 Middle Street
                                    Portland, ME  04104-5029
                                    (207) 228-7334

For E&Y, Canadian                   Allen & Overy, LLP
Monitor & Canadian                  BY: KEN COLEMAN, ESQ.
Debtors:                            1221 Avenue of the Americas
                                    New York, NY 10020
                                    (212) 610-7300

APPEARANCES:
(Continued)

For Unsecured Creditors'
Committee:                      Akin Gump
                                BY: DAVID BOTTER, ESQ.
                                BY: BRAD KAHN, ESQ.
                                BY: JOSHUA STURM, ESQ.
                                One Bryant Park
                                New York, NY 10036
                                (212) 872-1000

                                Richards Layton & Finger
                                BY: CHRIS SAMIS, ESQ.
                                One Rodney Square
                                920 North King Street
                                Wilmington, DE  19801
                                (302) 651-7531

TELEPHONIC APPEARANCES:

For Interested Party:           Dow Jones & Co.
                                BY: PEG BRICKLEY
                                (215) 462-0953

For Robert Horne:               Robert Horne-In Pro Per/Pro se
                                (404) 374-5277

For Bond Holders Group:         Milbank Tweed Hadley & McCloy
                                BY: THOMAS KRELLER, ESQ.
                                (213) 892-4463

For Barclay's Capital, Inc.:    Barclays Capital, Inc.
                                BY: OLIVIA MAURO
                                (212) 412-6773

For Hondo Sen:                  Cetus Capital
                                BY: HONDO SEN
                                (203) 552-3528

For CITI:                       CITI
                                BY: REBECCA SONG
                                (212) 559-9933

1

1   WILMINGTON, DELAWARE, TUESDAY, AUGUST 23, 2011, 10:28 A.M.

2              THE CLERK:  Please rise.

3              THE COURT:  Good morning, everyone.  Thank you,

4   and please be seated.  Good morning to you, Justice

5   Morawetz.

6              JUSTICE MORAWETZ:  Good morning, Judge Gross, and

7   counsel in both Toronto and Wilmington.  So you understand,

8   both Judge Gross and me, that we have three motions on for

9   today:  one concerning the [indiscernible] and other assets

10  [indiscernible] inter-estate settlement matters

11  [indiscernible], as had been our previous practice and

12  determine them, subject to counsels' views [indiscernible]

13  admissions [indiscernible] in Delaware.  I do not have any

14  idea as to which one you're going to proceed with first, but

15  I'll turn it over to Judge Gross, and you can make that

16  inquiry in your Court.

17             THE COURT:  Thank you, Mr. Justice --

18             JUSTICE MORAWETZ:  Thank you.

19             THE COURT:  -- Morawetz.  Good morning, Ms.

20  Cordo.

21             MS. CORDO:  Good morning, Your Honor.  Annie

22  Cordo, Morris, Nichols, Arsht & Tunnell on behalf of the

23  debtors.

24             THE COURT:  Yes.

25             MS. CORDO:  The first item on our agenda is

1  agenda item eight, which is our motion for approval

2  regarding the Nortel Russia agreements, and I will be

3  handing the podium over to Mr. Bromley, who will --

4              THE COURT:  All right.

5              MS. CORDO:  -- be handling --

6              THE COURT:  All right.  Thank you.  Mr. Bromley,

7  good morning.

8              MR. BROMLEY:  Good morning, Your Honor.  Good

9  morning, Mr. Justice Morawetz.  We have --

10             JUSTICE MORAWETZ:  Good morning.

11             MR. BROMLEY:  -- three matters that I think

12  warrant the joint hearing, and I have coordinated with Ms.

13  Stam prior to the hearing, and I think I'll go through all

14  three of them.  Matter of fact, I'll do two, and my

15  colleague, Mr. Herrington, will do the third.

16             THE COURT:  Okay.

17             MR. BROMLEY:  If I can start with Russia, and

18  then I'll move into the intercompany agreements, and then

19  we'll finish with GENBAND, with Mr. Herrington taking the

20  lead on that.  Is that okay, Your Honor?

21             THE COURT:  That's perfect.  Thank you.  Thank

22  you --

23             MR. BROMLEY:  Thank you.

24             THE COURT:  -- Mr. Bromley.

25             MR. BROMLEY:  Your Honor, I think what we have

1  before us today are a series of resolutions that are proof

2  of the old adage that good things come to those who wait,

3  that -- and it is possible to make progress, and indeed,

4  resolve inter-estate issues in the Nortel cases.

5          The first is Russia.  It is a settlement

6  agreement and a resolution of certain issues with respect to

7  NN Russia.  It is very much like the resolution that we have

8  achieved with respect to NN Israel.

9          By way of background, Your Honors, we -- as

10  you're well aware, we have the black boxes, in which all of

11  the proceeds have been deposited with respect to the sales

12  that we've had.  The keys to those black boxes are held by

13  the various sellers.  Aside from the major estates that have

14  been -- that are here today, there are smaller estates

15  around the world, who are sellers, and the first set of keys

16  that we purchased, in effect, were the keys to the Israeli

17  right to participate in several of the black boxes.  We're

18  here today, Your Honor, to resolve a matter with respect to

19  NN Russia, to, in effect, remove NN Russia from several of

20  the lock boxes and remove them in -- by the same token, from

21  the allocation process.

22          This is important for a variety of reasons.

23  First, the insolvency laws and regulations in Russia are a

24  little bit different than they are here in the United States

25  and Canada as well as in the United Kingdom.  And because

1   the sales have taken place and all of the assets of NN

2   Russia have transferred to purchasers, they are in a

3   position where they have to wind down the NN Russia estate.

4   In order to make sure that the NN Russia estate is wound

5   down in a manner that is consistent with the best interests

6   of all of these estates, the joint administrators in London

7   approached both the U.S. and Canadian debtors with a

8   proposal, which is that one of the EMEA debtors, an entity

9   known as Nortel Networks International Finance Holdings NV.

10  It is an EMEA debtor.  It is part of the COMI proceedings in

11  London.  And it also happens to be the direct parent of NN

12  Russia.  That Nortel Networks Finance Holdings would, in

13  effect, take over NN Russia's role in all of the various

14  black box and allocation exercises.

15          In order to do that, certain funds need to be

16  dispersed out of the escrow accounts that Russia is a

17  signatory to.  And there's an amount of money that will be

18  paid to NN Russia, and that amount is $7.4 million.  When

19  this proposal was made to the U.S. estates as well as to the

20  Canadian estates and the monitor, the question that

21  immediately came up was, is $7.4 million the correct number,

22  because it is, in effect, an allocation with respect to the

23  sales that Russia participated in?  What we've been able to

24  do, Your Honor, is to reverse-engineer this exercise.  The

25  7.4 million is required under Russian law with respect to

1  certain tax returns that have been filed.  We believe, and

2  we have had represented to us by counsel to the joint

3  administrators, that eventually NN Russia, when it is wound

4  down, will be solvent, and these funds would return to its

5  parent, which is, indeed, NN International Finance Holdings.

6          So what we have put together is a set of

7  agreements that will allow the funds to be dispersed out of

8  the escrow accounts.  They will -- to NN Russia.  They will

9  only be dispersed out to NN Russia after NN International

10  Finance Holdings first puts additional monies into the

11  escrow accounts in the amount of $7.4 million.  So this is a

12  sequenced arrangement:  First, 7.4 million would be put into

13  the escrow accounts by NNIFH.  Then, once those funds are

14  in, the other signatories to those escrow accounts,

15  including NNI, NNL, and the rest, we'll then issue

16  instructions to the escrow agent to disperse 7.4 million out

17  to Russia.  So --

18          THE COURT:  Okay.

19          MR. BROMLEY:  -- the funds will be first, in

20  effect, grossed up in the escrow, then the funds will be

21  released.  The agreements that we have in place, if approved

22  today, will also make it clear that, to the extent that

23  there's an allocation to NN Russia in the allocation

24  exercise that is less than 7.4 million, the risk of that is

25  borne entirely by NNIFH.  So to the extent that 5 million or

1  3 million or zero were actually eventually allocated to NN

2  Russia, the difference between 7.4 and whatever is

3  eventually allocated to NN Russia will be borne by NNIFH.

4  So this is a riskless transaction, if you will, Your Honor,

5  with respect to the U.S. debtors, and, because it simplifies

6  the exercise, allows the joint administrators, in effect, to

7  take over the keys with respect to the lock boxes on NN

8  Russia, and as well, for the joint administrators, allows

9  them to argue for whatever allocation they believe is

10  appropriate for NN Russia.  It's, in effect, an elaborate

11  way of maintaining the status quo but removing the risk of a

12  Russian liquidation, where we would have a -- potentially a

13  public official in Russia that we don't know put into the

14  process and having to be brought up to speed.

15          So the Russian settlement, very much like Israel,

16  is, we think, an element of progress in these cases to

17  simplify who actually needs to agree to the distribution of

18  funds and the allocation of funds.

19          There have been no changes to the settlement

20  agreement with respect to NN Russia.  There are a lot of

21  documents relating to it, including escrow instructions and

22  the like.  And the specific relief that we're looking for

23  today, from this Court, is the ability of the U.S. debtors,

24  as necessary, to deliver the escrow instructions to the

25  escrow agent, to allow the funds to be distributed.

1    Throughout the process, we have been coordinating very

2    closely, as we always do with the creditors committee, and

3    they are supportive of the exercise, as well as the

4    bondholders.

5            So that's the Russian exercise.  It is part and

6    parcel of the rest of what we're talking about, so maybe if

7    I can go into the other elements, that would be helpful.

8            One of the reasons that we had, in effect, held

9    up on the GENBAND settlement, and I know there's been a fair

10   amount of litigation and frustration by various parties

11   here, was the inability to fully deliver the Russian

12   settlement, because the GENBAND settlement has to be signed

13   off on by NN Russia, and NN Russia was unwilling to sign off

14   on the GENBAND settlement until this resolution, with

15   respect to NN Russia, was approved by the Court.  So, in

16   effect, Mr. Herrington's motion, with respect to the 9019 on

17   GENBAND is dependent on the relief being granted with

18   respect to NN Russia.  And it has not been a necessarily

19   smooth exercise in getting the agreement on Russia, because

20   it's not simply that the U.S. debtors and the Canadian

21   debtors need to agree, but every single seller that is a

22   party to every one of these escrow agreements had to agree.

23   And so, for instance, the French office holders needed to

24   agree, as well as NN Russia, and others.

25           But right now, where we are today is with the

1    approval of both Courts to allow the U.S. debtors and the

2    Canadian debtors to perform, the Russian agreement will be

3    able to be performed, and that precondition to the GENBAND

4    settlement will be satisfied.

5          If Your Honor has any questions on Russia, I'm

6    happy to address them.  Otherwise, I can just go onto the

7    next.

8          THE COURT:  Yes, I do not have any questions.  It

9    seems fairly straightforward, now that you have explained

10   it, Mr. Bromley.

11         MR. BROMLEY:  Well, thank you, Your Honor.

12   Fairly straightforward is not something we're used to --

13   (Laughter)

14   -- here.  The next motion is a motion with respect to

15   certain intercompany arrangements.

16         THE COURT:  Yes.

17         MR. BROMLEY:  And these intercompany arrangements

18   include two, main agreements.  One is known as the Q1

19   settlement agreement.  And I think it's worthwhile to pause

20   for a second.  Q1, obviously, means quarter one, but it's

21   quarter one of 2010 that --

22         THE COURT:  Yeah.

23         MR. BROMLEY:  -- we're settling.  We have been in

24   active discussion, sometimes very spirited discussion about

25   these agreements since the end of Q1 of 2010.  So it is --

1  we think 18 months is the right gestation period --

2  (Laughter)

3          THE COURT:  Yes.

4          MR. BROMLEY:  -- for this type of exercise.

5          THE COURT:  Yes.

6          MR. BROMLEY:  We're just about ready to pour the

7  wine --

8  (Laughter)

9  -- but we're happy that we're here to get this one done.

10          The second is an agreement that has been titled

11  the "Agreement on transfer pricing amendments and certain

12  other matters".  That, as well, is -- it's like saying the

13  adventures of David Copperfield and his friends.

14  (Laughter)

15          THE COURT:  Yes.

16          MR. BROMLEY:  There's a lot built into that

17  agreement, but let me take each one by -- in order.

18          The Q1 settlement agreement relates, in part, to

19  the transfer pricing regime that Nortel had employed during

20  the pre-petition as well as in the post-petition period.

21  It's worthwhile saying that the transfer pricing regime is

22  one of the issues that is at the forefront of the allocation

23  exercise, and so I will say, up front, that all rights are

24  reserved with respect to all arguments with respect to

25  allocation --

1              THE COURT:  Okay.

2              MR. BROMLEY:  -- and nothing in any of these

3    agreements compromises anyone's ability to argue anything or

4    dispute anything with respect to transfer pricing or

5    allocation.  So that is -- that was one of the first things

6    that we all agreed upon, but just to make it very clear to

7    both Courts.

8              The Q1 settlement agreement is a -- more or less

9    an agreement that is driven by the fact that when the IFSA

10   was put in place, we dealt with certain claims with respect

11   to transfer pricing.  For the U.S. debtors and the Canadian

12   debtors, it covered the period from the petition date to

13   September 30, 2009.  For the EMEA debtors, it covered the

14   period from the petition date to December 31, 2009.  The

15   U.S. debtors and Canadian debtors entered into the final

16   Canadian funding settlement agreement.  That then resolved

17   any issues that the U.S. and Canadian debtors could have

18   from October 1, 2009 to the end of that -- these cases.

19              THE COURT:  Okay.

20              MR. BROMLEY:  So in effect, U.S. and Canada, on

21   transfer pricing issues and payments, those issues were

22   resolved.  With respect to EMEA, however, and Canada, things

23   have not been resolved.  It, more or less, stopped as to

24   December 31, 2009, and more or less, there was one quarter

25   left of things that needed to be trued up.  So what happened

1    with respect to the Q1 settlement agreement is that with

2    respect to any arguments that could be made that -- with

3    respect to transfer pricing for that quarter, with respect

4    to the Canadian debtors or the EMEA debtors, this agreement

5    resolves it.  And I'll let Ms. Stam go into the details.

6              As to the U.S. debtors, what it does, however, is

7    it also resolves any issues that the U.S. debtors could have

8    with the EMEA debtors under the MRDA with respect to

9    transfer pricing.  As it turns out, there's no money that

10   changes hands, and there is no money that -- due and owing

11   back and forth, but it resolves, from a U.S. perspective,

12   any issues that the EMEA debtors, and that would include, in

13   particular, NNSA France, NNUK, and NN Ireland --

14             THE COURT:  Um-hum.

15             MR. BROMLEY:  -- three of the main participants

16   under the MRDA, along with Canada and the U.S.  Now, there's

17   one issue --

18   (Laughter)

19   -- that relates to the Q1 settlement agreement with respect

20   to France, which is that, as to the Q1 settlement agreement,

21   France has not yet signed it.  But all of the other estates

22   have agreed that it's binding with respect to everyone else.

23   So we are waiting for the French office holders to cede to

24   this agreement, and we have an expectation that they will,

25   but at the present time, in terms of -- assuming approval is

1   provided today, it will be binding and enforceable amongst

2   NN Ireland, NNUK, NNL, and NNI, four of the five members of

3   the MRDA group.

4          Now, the second agreement is the agreement on

5   transfer pricing amendments and certain other matters.

6          THE COURT:  Yes.

7          MR. BROMLEY:  That is an agreement that contains

8   a variety of different matters.  It is important, from a --

9   the perspective of resolving a number of group issues, and

10  what it does, among other things, is that it halts, without

11  prejudice to any arguments, any transfer pricing obligations

12  retroactive to April 1, 2010.  So, to the extent that there

13  were any transfer pricing arraignments that were supposed to

14  flow around the Nortel world, they have been halted,

15  retroactive to April 1, 2010.  And again, that's without

16  prejudice to any arguments on allocation for or against, on

17  any basis, including on any transfer pricing or -- agreement

18  basis.  And it doesn't terminate any of the transfer pricing

19  agreements, again preserving all rights.  It simply freezes

20  any payments that have to be made.

21         That's important for a number of reasons.  One of

22  the things that we did put in place, Your Honor, you may

23  remember in 2009, something known as the Asia restructuring

24  agreement.  They're a group of --

25         THE COURT:  Um-hum.

1          MR. BROMLEY:  -- Nortel entities that are not

2   under the jurisdiction of either of these Courts or of the

3   English Court.  And there are arrangements that were put in

4   place to wind down and resolve those entities.  This

5   agreement, by freezing any payments after April 1, 2010,

6   allows the effective wind-down of these entities.  The

7   netting of certain amounts and the repatriation of cash out

8   of it and of certain entities.  For the U.S. in particular,

9   it facilitates the repatriation of cash out of NN Japan,

10  which is a U.S. subsidiary, a non-debtor, but had -- was

11  part of the business operations of Nortel in Asia.

12          There are also some material payments that are

13  allowed to be made that had been held up under this

14  agreement, and I'll go through them in order.  The first is

15  a payment -- is a release, essentially, of cash to NNI in

16  the amount of $53 million, give or take a couple of dollars.

17  When the Enterprise transaction closed, one of the

18  businesses that was sold was an entity known as Nortel

19  Government Services.  Your Honor will remember, we had the

20  IRS in --

21  (Laughter)

22          THE COURT:  Yeah.

23          MR. BROMLEY:  -- and they somewhat reluctantly

24  participated in the exercise and allowed us to sell that

25  business.  At the time the closing took place, there was

1    cash on the balance sheet of NGS.  That cash was available

2    to be dividend'd to its equity holder, NNI, but as a result

3    of certain issues and questions that were raised at the

4    closing, the funds were not sent out as a dividend.  This

5    agreement allows the release out of the Enterprise escrow of

6    the $53 million to NNI.

7              Also, with respect to the retention of Lazard

8    over the course of these cases, Lazard has served as the

9    investment bank very successfully for all of the sales that

10   have benefited all of the estates.  There has been an

11   arrangement amongst the various debtors, but in particular

12   between NNI, NNL, and NNUK, that certain funds would be

13   advanced on a -- the monthly fees would be advanced by NNI,

14   and then they would be reimbursed.  And so, we have about

15   $5.4 million of funds that had been advanced by NNI and that

16   have not yet been reimbursed.  They will be reimbursed as a

17   result of this agreement, if it is approved.  They are not

18   being reimbursed from any other debtor estate.  They are

19   going to be paid out at the escrows.

20             THE COURT:  Okay.

21             MR. BROMLEY:  So there's been a very elaborate

22   mathematical equation that has been put in place to say so

23   much of these fees related to that transaction and so many

24   of these --

25   (Laughter)

1   -- fees related to this transaction.  Suffice it to say, the

2   U.S. estates will bear their fair share, and the remainder,

3   which is due out of the escrow accounts of 5.4 million, will

4   come to the U.S.

5        There's an additional set of -- amount of funds

6   that are -- that have been held up in the NEN escrow.  Your

7   Honors may recall that, like Israel and like Russia, we have

8   run into an issue with respect to the NEN escrow agreement,

9   and that relates to NN Colombia, where there's simply no one

10  available to execute the directions.  And Your Honors both

11  entered an order, allowing NN Colombia to be removed from

12  the escrow agreements.  As a result of that removal, Lazard

13  is now able to receive the success fee that it -- that has

14  been approved by this Court, but has been -- remained due

15  and unpaid for nearly a year, and that is $3.3 million.  So

16  as a result of the approval of this, if it is approved,

17  Lazard will be able to get the success fee from the NEN

18  transaction, which closed in 2009.

19        THE COURT:  Yes.

20        MR. BROMLEY:  In addition, Your Honors will

21  recall that, when we were selling the businesses, one of the

22  issues that we were dealing with, with the businesses, is

23  that there needed to be separate financial statements

24  created, carve-out financials.  And Your Honor, Judge Gross,

25  you did enter an order, allowing NNI to deliver escrow

1    instructions to allow funds to be reimbursed by --

2                 THE COURT:  Yes.

3                 MR. BROMLEY:  -- NNL -- to NNL.  So whereas NNI

4    fronted, in effect, the Lazard monthly fees, NNL, in effect,

5    fronted the carve-out financial fees.  That amount is 30

6    million -- $30.1 million.  And with entry of this order,

7    Your Honor, we'll be able to deliver the escrow instructions

8    to allow NNL to be reimbursed.  So there are substantial

9    payments here, 50 -- roughly 59 million to the U.S., 30

10   million to Canada, and 3.3 to Lazard that would be flowing

11   at -- when we close these transactions, if the -- if

12   agreement is provided.

13                I should note, Your Honors, that there are a

14   couple of things that -- there's one thing in the U.S. order

15   that we've -- have added, which is that we want to get

16   approval of these agreements, subject to a clarification

17   made on the record.  And this is the clarification: that

18   both the Q1 settlement agreement and the ATPA, as we say,

19   both contain requirements to their -- or conditions to their

20   effectiveness.  That's as presently drafted, which say that

21   the approval of the French Court is required.

22                THE COURT:  Okay.

23                MR. BROMLEY:  We have had, in the past couple of

24   days, confirmation from counsel to the joint administrators

25   in the form of forwarding confirmation from the counsel to

1  the French office holders that French Court approval is not

2  required.  And we have looked at it from the U.S. debtor

3  perspective, and we are comfortable that French Court

4  approval is not required.  And we believe that the monitor

5  and the Canadian debtors, as well as the joint

6  administrators, are comfortable with that as well.  And so,

7  what we would need to do is the form of agreements that we

8  have filed with the Court would need to be re-executed,

9  removing the French Court approval condition to

10  effectiveness.  And no one is in opposition to that, that I

11  know of, and if I -- and if anyone is, I would encourage

12  them to stand up and let us know.  But that is the main

13  condition -- main amendment that we need to make, so it's

14  exactly as filed.  And there are lots -- again, lots of

15  escrow instructions that need to be provided and -- to the

16  various escrow accounts, but in effect, the inter-estate

17  issues are resolved in these two agreements.

18            I would note that there's one other thing that we

19  have, and it is referenced in the order, and it is

20  referenced in our motion papers, which is that there's also

21  a term sheet that has been in process, again, for over a

22  year, trying to list out and resolve a number of issues

23  between the U.S. estates and the Canadian estates.  And that

24  term sheet is to be executed as a condition to allow us to

25  perform under these other agreements.

1                 And we are -- we have one amendment to that term

2      sheet, and I'll describe that in a moment, but let me just

3      go through it.  There are certain transfer pricing issues

4      with respect to Nortel Networks Japan, a non-debtor.  I've

5      described them as -- in connection with the other

6      agreements, certain true -- obligations relating to NN CALA

7      and NNL, certain issues relating to the Nortel Mexican

8      entities, Nortel Networks III, which is a U.S., non-debtor

9      affiliate that had certain operations in India, certain

10     arrangements with respect to Nortel China, Nortel Pakistan,

11     Nortel Trinidad and Tobago, and then a couple of other

12     smaller issues relating to license payments and, with

13     respect to MicroVision, resolution of an issue relating to

14     the Sea Vas [ph] side letter, agreements with respect to a

15     claim from the Atlanta Telephone Company.  This is a bit of

16     a laundry list.  All of those, as listed in the term sheet,

17     are exactly as they were as submitted, and those issues,

18     many of which have actually already been resolved in the

19     course of the past year, but they have been, in effect, the

20     framework for the relief we're seeking.

21                 The one thing that I would note, Your Honor, is

22     that in the past couple of days, there has been one change

23     to the term sheet, which is with respect to GDNT, and that's

24     the last item on the term sheet.  GDNT is an entity that was

25     a joint venture in China.  The U.S. had no interest in that

1  joint venture.  The Canadian debtors did.  They entered into

2  a sale transaction, with respect to their interest with

3  Ericsson.

4          And with respect to GDNT, there were certain

5  ongoing obligations to provide transition services, if you

6  will, to Ericsson in connection with that sale.  And the

7  original draft of the term sheet said that those services

8  would continue to be provided.

9          In the past week, we have discovered that,

10 indeed, there's really one work order remaining.  That's it.

11 The other work orders that had been opened were terminated

12 on or about July 7 of 2011, when the transition services

13 agreements with Ericsson with respect to the CDMA and GSM

14 transactions terminated.  So what we have done is we've

15 rewritten this footnote -- or this provision in the term

16 sheet to make it clear that the CDMA-500 work order, which

17 remains outstanding, will be performed by NNL and NNI

18 through the Nortel business service unit.  And then,

19 services under any amendments or extensions or replacements

20 of that work order will also be performed, to the extent

21 that those amendments, extensions, or replacements are

22 agreed in writing by both NNI and NNL in their sole

23 discretion.  And to the extent that there are funds received

24 from Ericsson in respect of any of these services, they will

25 be split between NNI and NNL on a 60/40 basis, with NNI

1  receiving 60 percent and NNL receiving 40 percent.  Also,

2  the parties will work to bring any post-filing intercompany

3  accounts current and reconcile any disputes that are

4  outstanding, and if any payments are agreed to, that those

5  payments would be made.  I should note, though, that I think

6  in the reconciliation of the intercompany accounts, that

7  there are open questions, and that by agreeing to this, NNI

8  isn't agreeing to the -- any amounts that might be

9  outstanding under anyone's books, whether in the U.S. or

10  China.  We will simply agree that we'll work towards

11  reconciling it and figuring out if there are disputes, and

12  if there are disputes, we can bring them to the Courts for

13  resolution.  So that is the change, with respect to the GDNT

14  provision on the term sheet.

15          I apologize for taking up so much time in terms

16  of describing everything, but that, I think, is the

17  background of the first two motions.  And if Your Honor has

18  any questions, I'm happy to address them.  Otherwise, I

19  would turn it over to Mr. Herrington to commend with the

20  finale on GENBAND.

21          THE COURT:  All right.  Well, I'll hear from Mr.

22  Herrington.  Thank you, Mr. Bromley.

23          Good morning.

24          MR. HERRINGTON:  Good morning, Judge Gross, and

25  good morning, Mr. Justice Morawetz.

1          David Herrington --

2          JUSTICE MORAWETZ:  Good morning.

3          MR. HERRINGTON:  -- on behalf of NNI.  And my

4    part of the proceedings is much simpler, and therefore, I

5    think can be --

6          THE COURT:  Yes.

7          MR. HERRINGTON:  -- relatively short.

8          The settlement I will address is, you know, the

9    settlement of the dispute that we had with GENBAND

10   concerning the sale of the Sea Vas business.

11         THE COURT:  Right.

12         MR. HERRINGTON:  And the settlement resolves a

13   number of matters, including the adjustment of the purchase

14   price based on the calculation of deferred profit amount.

15   So that matter, plus a number of other issues, including

16   some issues relating to the TSA agreement.

17         The details of the settlement are set forth in

18   our papers and set forth in the settlement stipulation that

19   was attached to our papers.  We certainly believe the

20   settlement is appropriate and in the best interest of the

21   estates and the estates' creditors.  There have been no

22   objections to the settlement, and accordingly, we would ask

23   the Court to sign the order that was submitted with our

24   papers, which will authorize the NNI to execute the

25   settlement, subject to the other parties, the other Nortel

1  sellers, being willing to execute.  And of course, as to

2  Nortel Russia, that depends on the first motion that Mr.

3  Bromley --

4            THE COURT:  Yes.

5            MR. HERRINGTON:  -- addressed being approved as

6  well.  But assuming that all happens, the order that we

7  would ask the Court to approve would authorize NNI to

8  execute the settlement, and I think all sides will be very

9  pleased to have this matter resolved and put to bed and put

10 behind us.

11           And Your Honor, if you wish, I could give to the

12 Court a copy of the order that we've asked the Court to

13 approve.

14           THE COURT:  Please.  Thank you, Mr. Herrington.

15           MR. HERRINGTON:  Okay.  If I may approach.

16           THE COURT:  Yes, you sure may.  Thank you.  Good

17 to see you.

18           MR. HERRINGTON:  And Your Honor, that's all I

19 have on the GENBAND matter.

20           THE COURT:  All right.  Thank you.  Anyone else

21 on any of these matters?

22 (No audible response)

23 Okay.  Does it go back to Canada now, Mr. Bromley?  I think

24 it does.

25           MR. BROMLEY:  I think so.

1          THE COURT:  Mr. Justice Morawetz, I'll turn it

2    over to you, sir.

3          JUSTICE MORAWETZ:  Thank you.  Thank you, Judge

4    Gross.  Ms. Stam?

5          MS. STAM:  Your Honor, we're going to proceed in

6    the same order as the U.S.  Mr. Cobb's going to speak to the

7    Russian motion first, and then --

8          JUSTICE MORAWETZ:  Okay.

9          MS. STAM:  -- I will --

10         JUSTICE MORAWETZ:  Mr. Cobb, go ahead.

11         MR. COBB:  Good morning, Your Honor.  Good

12   morning, Judge Gross.

13         THE COURT:  Good morning.

14         MR. COBB:  I don't have very much to add to what

15   Mr. Bromley already described on the Russia agreements, and

16   that's the topic that I'm going to be covering.  The only

17   points that I wanted to emphasize are firstly that there's

18   very -- well, there's no clients [indiscernible] these

19   agreements on the applicants.  It's purely a financial

20   transaction as between NAIFH and impacting also Nortel

21   Russia.  So from the applicants' perspective, it's

22   financially neutral.

23         The benefits of the transaction include, as

24   already discussed, the solicitation of the GENBAND

25   settlement and the simplification of inter-estate matters

1  going forward.

2          And finally, the last point I just want to

3  emphasize is again the reservation of the [indiscernible]

4  that Mr. Bromley discussed with respect to the allocation of

5  proceeds.  Nothing in this particular agreement is going to

6  be relied upon by any of the parties to the [indiscernible]

7  of any allocation matters, notwithstanding the fact that

8  certain proceeds are being paid out and dealt with through

9  this agreement.

10          Subject to any questions you might have, those

11  are my submissions.

12          JUSTICE MORAWETZ:  Thank you.  Anybody else

13  wishing to add anything on the N -- the Nortel Russia matter

14  [indiscernible]?

15  (No audible response)

16          Thank you.

17          UNIDENTIFIED:  Your Honor, I'll speak briefly to

18  the Q1SA and the ATPA, which are the other inter-estate

19  agreements that are up for approval today.  I think Mr.

20  Bromley did a great job going through the background in

21  terms of leading up to the negotiations on settling the --

22  these two agreements.

23          The one thing I will point out is, as Mr. Bromley

24  said, the IFSA settle transfer pricing post-filing between

25  Canada and EMEA up through the end of 2009.  The Q1SA

1    settles transfer pricing for Q1 of 2010, as between Canada

2    and EMEA, and the terms of the settlement for Q1 are set out

3    both in the motion record and the monitor's report.  It's at

4    paragraph 22 of the monitor's report, and sets out the way

5    that it would be set off against shortfall payments, which

6    Your Honor will recall were amounts owing under certain

7    conditions by the applicants to the EMEA debtors under IFSA

8    and payments going forward, which are set out in 22A and C

9    that monitor was involved in the negotiations of the

10   reconciliation of those amounts.

11          Beyond that, I think Mr. Bromley went through all

12   of the benefits in both the Q1 and the ATPA for both

13   estates, including the reimbursement of the carve-out

14   financial fees that NNR had funded in [indiscernible], which

15   amount to $30,000.

16          And just to close the gap on the remaining inter-

17   estate matters, these are just two agreements that are --

18   require Court approval, of the many items that are being

19   resolved on the U.S./Canada term sheet.  For the record, the

20   U.S./Canada term sheet does appear as Exhibit D to the Q1SA,

21   which is Appendix A to the monitor's report, so it's about

22   ten pages from the back, in Appendix A there.  You'll see

23   that it does resolve a number of transfer pricing items.

24   There a number of amending agreements that are to be entered

25   into as a result of that.  And our ancillary documents,

1  which have been negotiated but don't require Court approval,

2  we will be executing those simultaneously with the

3  implementation of all of these items.

4          I can also confirm, on behalf of the applicants,

5  that the amendments to the term sheet related to GDMT [ph]

6  that Mr. Bromley outlined are accurate.  We have agreed to

7  those.  At the time that the term sheet was originally

8  negotiated, which was started last year, GDMT's sale hadn't

9  been completed yet.  There were no specific orders -- work

10 orders to reference, so we've agreed to bring the facts up

11 to date and make those changes before we sign it.

12         So unless you have any questions, Your Honor,

13 those are my submissions.

14         JUSTICE MORAWETZ:  I thank you.  Mr.

15 [indiscernible].

16         UNIDENTIFIED:  Yes, Your Honor.  Just briefly on

17 GENBAND.

18         JUSTICE MORAWETZ:  Yes.

19         UNIDENTIFIED:  I'll be as brief as Mr. Herrington

20 was.

21         There's also a motion before you for approval of

22 the GENBAND settlement.  The salient details are also set

23 out in the motion materials for your particular reference,

24 for the test that you must approve that they are reasonable,

25 we've set out the parameters in our factum.  If you want

1   them for the purpose of the endorsement, they're at

2   paragraph 35, page 10 of the factum.

3              Really, I have nothing to add to that.  The

4   monitor supports the settlement and concurs with the

5   arrangement.  Unless you have any further questions --

6              JUSTICE MORAWETZ:  I've found the materials to be

7   comprehensive, and I see they were fully responsive to the

8   issues.

9              Anybody else wishing to make submissions?

10             UNIDENTIFIED:  We've got the order to pass out.

11             JUSTICE MORAWETZ:  If you could, provide all of

12  the draft orders for me.

13             UNIDENTIFIED:  Okay.

14             UNIDENTIFIED:  Your Honor, the GENBAND settlement

15  order is large.  I was handed two copies of the inter-estate

16  order.  Also, there is one item in that draft order, which

17  is not in the subject of the joint Canada [indiscernible]

18  dispute [indiscernible] after the [indiscernible] link is --

19             JUSTICE MORAWETZ:  All right.  Are there any

20  further submissions [indiscernible]?

21  (No audible response)

22             Judge Gross, is there anything further that

23  counsel have to offer to you in Delaware, or should we take

24  a very brief break, because I will have to just write about

25  two pages on this?

1              THE COURT:  All right.  Mr. Bromley?

2              MR. BROMLEY:  If I could just hand up, Your

3   Honor, the orders with respect to the first two motions.

4              THE COURT:  Yes, thank you, Mr. Bromley.  Please.

5   Thank you.  All right.  Oh, with the -- yes.  Okay.  Great.

6   Thank you.  Shall we take a brief recess?

7              JUSTICE MORAWETZ:  Okay.  Thank you.

8              THE COURT:  Thank you.  We'll stand in brief

9   recess.  Thank you.

10  (Recess at 11:07 a.m. to 11:35 a.m.)

11             THE CLERK:  Please rise.

12             THE COURT:  Thank you, everyone.  Please, be

13  seated.

14             Justice Morawetz, we are ready down here to

15  proceed.

16             JUSTICE MORAWETZ:  And Judge Gross, if we can

17  just wait for about -- about another 15 seconds.  We're just

18  [indiscernible] procedures here and [indiscernible] one

19  document.

20             THE COURT:  Very well.

21             JUSTICE MORAWETZ:  [indiscernible] will be

22  dealing with this in two short endorsements from this Court,

23  followed by the rulings by Judge Gross, the joint hearing

24  with the [indiscernible] be terminated, and I gather Ms.

25  Stam will -- you have two further matters to bring to my

1    attention.  I know that Judge Gross has to deal with another

2    matter in Delaware.

3           So the first endorsement, [indiscernible] to

4    Nortel Russia and the [indiscernible] in that matter.  This

5    hearing was conducted by conference with a companion motion

6    being heard in the United States Bankruptcy Court with His

7    Honor, Judge Gross, presiding over the hearing in

8    Wilmington, Delaware.  This joint hearing is being conducted

9    in accordance with the provisions of the cross-border

10   protocol, which has been previously approved by both the

11   U.S. Court and by this Court.  This motion was not opposed.

12   The motion record includes the detailed affidavit of Mr.

13   Byfield [ph] as well.  The monitor has commented on issues

14   relating to Nortel Russia.

15          The effect of the proposed settlement is to

16   provide [indiscernible] funds to Nortel Russia, and in

17   exchange, Nortel Russia will no longer be participating in

18   the allocation process.  The applicant recommends the

19   settlement.  Mr. Byfield states that the potential benefit

20   of the proposed settlement outweighs the risk in both

21   litigation and delay.  Mr. Cobb advised that the settlement

22   is financially neutral for the applicant.  The monitor has

23   reviewed the basis of the proposed settlement and recommends

24   the same.

25          I'm satisfied that the Nortel Russia settlement

1  should be and is approved.  It is noted that this settlement

2  is approved on the basis that it's without prejudice to any

3  party's arguments relating to the allocation issues.

4       The affidavit of Mr. Byfield also comments on

5  transfer pricing in the context of an agreement on transfer

6  pricing amendments and a Q1 2010 transfer pricing settlement

7  agreement.  This issue is also the subject of commentary by

8  the monitory.  Transfer pricing issues have been present in

9  these proceedings from the outset.  As a result of

10  considerable negotiation, transfer pricing issues have been

11  resolved.  The total impact of these agreements will bring

12  to an end post-filing transfer pricing reconciliations.  Mr.

13  Byfield states that it is advisable, given the sale of

14  Nortel's business and other wind-down activities.  The

15  monitor recommends approval of the agreement on transfer

16  pricing agreements and the Q1 2010 transfer pricing

17  settlement agreement.  These agreements are approved.

18       And I will deal with the LPT issue later.  That

19  concludes the first endorsement.

20       The second deals with GENBAND.  It will commence

21  with the standard opening paragraph that I will not repeat

22  at this time.  This motion was not opposed.  The record

23  contains the affidavit of Mr. Doolittle, sworn August 16,

24  2011.  The monitor has also commented on the issue in its

25  72nd report.  In addition, the applicant has filed a

1   comprehensive factum, which contains a summary of

2   [indiscernible] facts and details of the settlement.

3           The issue for the Court is two-fold: one, the

4   Court's jurisdiction to approve the settlement; and two, if

5   the Court has such jurisdiction, then the settlement should

6   be approved.  The first issue has previously been considered

7   in these proceedings to [indiscernible] Nortel 2009 OJ 3169

8   and 2010 ONSC 1096 as well as other cases in the factum.

9           I am satisfied, for reasons set out in the

10  applicants' factum at 28 and 33, that the Court has the

11  jurisdiction to approve this type of settlement.  On the

12  second issue, I'm satisfied, for the reasons set forth at 34

13  to 36 of the factum, that the settlement should be, and it

14  is, approved.  Order to go on the form presented.

15          That concludes the two formal endorsements on

16  these matters.  Judge Gross, over to you.

17          THE COURT:  Thank you, Justice Morawetz.  I have

18  certainly -- I am certainly in agreement with Justice

19  Morawetz that the motions should be granted, based upon the

20  fact that the record clearly establishes that they are --

21  that all of the agreements and the settlement with GENBAND

22  are fair and reasonable and in the best interest of the

23  debtors' estates.  If there is no objection in particular,

24  these -- the entry of these orders is without prejudice to

25  anyone's position with respect to the allocation issues.

1   And most importantly, these resolutions move the matter

2   toward an ultimate resolution of the case, and that is of

3   great significance to the Court.  And accordingly, I am

4   granting the motions and will sign the orders.

5              UNIDENTIFIED:  Thank you, Your Honor.

6              THE COURT:  I think we've concluded now, Justice

7   Morawetz, at least as far as the joint hearing is concerned.

8              JUSTICE MORAWETZ:  Yes, subject to any comment

9   from counsel, I see none, so that concludes the joint

10  hearing.  Thank you very much, Judge Gross, and counsel, and

11  thank you.  Have --

12             THE COURT:  Thank --

13             JUSTICE MORAWETZ:  -- a nice day.

14             THE COURT:  Thank you, Justice Morawetz.  We --

15  we'll stand in recess of the joint hearing.  And we'll

16  proceed with the --

17             JUSTICE MORAWETZ:  Now --

18             THE COURT:  -- discovery matter that is now

19  before the Court in the United States case alone.

20             MS. CORDO:  Yes, Your Honor.  We're now to item

21  number 11 on --

22             THE COURT:  Yes.

23             MS. CORDO:  -- the agenda, which is the motion of

24  Robert Horne, and I will turn the podium over to their

25  counsel to present the motion.

1          THE COURT:  Of course.  Thank you, Ms. Cordo.

2          MR. McDONALD:  Good morning, Your Honor.

3          THE COURT:  Good morning.

4          MR. McDONALD:  Paul McDonald, and I represent

5  Robert Horne, James Young, and the ad hoc group of

6  beneficiaries of the Nortel Networks U.S. deferred

7  compensation plan.

8          THE COURT:  Yes, sir.

9          MR. McDONALD:  My local counsel, Bonnie Fatell,

10 is here, and I believe that she has just walked into the

11 courtroom and wanted to make some introductory remarks, so -

12 -

13         THE COURT:  I'll --

14         MR. McDONALD:  -- with the Court's indulgence, I

15 will turn the podium over to Ms. Fatell.

16         THE COURT:  Absolutely.  Thank you, Mr. McDonald.

17         Ms. Fatell, good morning.

18         MS. FATELL:  Good morning, Your Honor.  Good to

19 see you today.

20         THE COURT:  Nice to see you, likewise.

21         MS. FATELL:  Timing is everything, so I'm --

22 (Laughter)

23         THE COURT:  Yes.

24         MS. FATELL:  -- glad I walked in at the right

25 moment.

1   (Laughter)

2           THE COURT:  Yes.

3           MS. FATELL:  I just wanted to sort of set the

4   table a little bit, because --

5           THE COURT:  Okay.

6           MS. FATELL:  -- this is in somewhat of a peculiar

7   posture.  The debtors filed their motion to approve a

8   settlement, which would have released the money from the

9   Rabbi Trust into the estate.  And on behalf of the ad hoc

10  committee, we filed an objection.  And that has teed up this

11  contested matter.  And we've been in --

12          THE COURT:  Yes.

13          MS. FATELL:  -- discovery.  We filed a motion to

14  compel.  We also went to mediation recently.  It did not

15  result in a resolution, although I think the parties are

16  still willing to continue to meet.  They are very, very far

17  apart.

18          THE COURT:  Oh.

19          MS. FATELL:  And so, we want to continue to

20  complete our discovery and move forward.  But in working

21  through this process, one of the things that, obviously,

22  we're going to want is affirmative relief if, in fact, we

23  prevail in this matter.  And the way it's teed up, as a

24  contested matter and an objection to the debtors' settlement

25  motion, it's not quite postured correctly, and so we just

1  wanted to give the Court a heads-up that we will be shortly

2  filing an adversary proceeding and initiating a complaint so

3  that we can request the affirmative relief that we would

4  want.  Obviously, we've already engaged in discovery --

5          THE COURT:  Yes.

6          MS. FATELL:  -- so in working through a

7  scheduling order with the Court and with debtors' counsel,

8  we would take that into consideration, obviously, and try

9  and work that through.  We're not doing this in any effort

10 to delay.  I think everybody, you know, is looking forward

11 to a conclusion on this matter, but unless there is another

12 suggestion as to how we can get the affirmative relief that

13 we want, we think we're sort of compelled to file this at

14 this juncture.

15         THE COURT:  I understand your position.  I don't

16 know whether, by agreement, the parties could make

17 arrangements for your right to seek the affirmative relief

18 by stipulation.  I don't know whether -- has this matter

19 been discussed with --

20         MS. FATELL:  No, it has --

21         THE COURT:  -- with opposing --

22         MS. FATELL:  -- not.

23         THE COURT:  -- counsel?  Okay.

24         MS. FATELL:  It has not.

25         THE COURT:  All right.

1          MS. FATELL:  But the concept came up recently in

2     discussions, and it became apparent to us that we may have a

3     problem --

4          THE COURT:  Yeah.

5          MS. FATELL:  -- with the posture of the matter.

6          THE COURT:  I understand your concern, Ms.

7     Fatell, and let me hear from Ms. Kim.  Perhaps she can

8     address this as well.

9          MS. FATELL:  Okay.  Thank you.

10          THE COURT:  Ms. Kim, good morning.

11          MS. KIM:  Good morning, Your Honor.  For the

12     record, Jane Kim from Cleary Gottlieb Steen & Hamilton on

13     behalf of the debtors.

14          Your Honor, we haven't had the opportunity to

15     discuss with the ad hoc group as to the procedural posture

16     of this case.  I would note, the debtors have produced

17     documents and responded to discovery requests propounded by

18     the ad hoc group, but throughout this process, the debtors

19     have reserved the right to propound its own discovery

20     requests on the ad hoc group.  The way that we were working

21     through this was in the hopes that confirmatory discovery

22     would be sufficient.  And at this point --

23          THE COURT:  Yes.

24          MS. KIM:  -- given where we are, I think that it

25     would make sense for us to -- the debtors to propound their

1  own discovery requests, and so, obviously, there's going to

2  be some issues in terms of the timing and scheduling of

3  that, as well as everything else.  I don't think it's an

4  issue that we couldn't discuss with the other side.  We

5  haven't had the opportunity to do so, but that's one other

6  issue that we would have to add into the mix and discuss how

7  that discovery would work as well.  And so, you know, to the

8  extent that there's any idea that discovery is now done,

9  it's -- it isn't.

10         THE COURT:  I think the main issue that Ms.

11 Fatell was raising was the concern about this being a

12 contested matter and affirmative relief to the pensioners.

13         MS. KIM:  Yeah.  I mean, we haven't had the

14 opportunity.  I don't think that it's not -- it -- I mean,

15 we can talk about whether it makes more sense in the form of

16 an adversary proceeding or whether we can --

17         THE COURT:  And it may.

18         MS. KIM:  -- just do it through a contested

19 motion, but we'll -- we should have those discussions before

20 going before the Court.

21         THE COURT:  All right.  Why don't we do this?

22 Why don't you have those discussions?  Then, to the extent

23 you need a telephonic conference, we can certainly do that,

24 you know, on the record.  That's usually just -- it's just

25 usually a little simpler for all of the parties, as well as

1    the Court, to do it that way, and we can get to that fairly

2    promptly.

3              MS. FATELL:  Okay.  Thank you, Your Honor.

4              THE COURT:  Just call --

5              MS. FATELL:  We will --

6              THE COURT:  -- chambers and we'll --

7              MS. FATELL:  -- have discussions.

8              THE COURT:  -- we'll find time for you.

9              MS. FATELL:  Great.  Thank you.  We will have

10   discussions with debtors' counsel.  We just wanted to make

11   the Court aware, so if we conclude that we need to file the

12   complaint, the -- Your Honor is not caught off guard.

13             THE COURT:  Okay.  Thank you, Ms. Fatell.  That's

14   helpful.

15             Mr. McDonald, you're back.

16             MR. McDONALD:  Thank you, Your Honor.  Again,

17   Paul McDonald for the ad hoc group of beneficiaries of the

18   Nortel Networks U.S. deferred compensation plan, which the

19   parties affectionately refer to alternately as the DCP or

20   the plan, and with Your Honor's indulgence, I will shorten

21   it for today's proceedings to the DCP or the plan.

22             THE COURT:  Great.  That -- it's helpful.

23             MR. McDONALD:  Okay.  We're here on the

24   beneficiaries' motion to compel.  And this discovery dispute

25   arises out of the debtors' original motion to turn over the

1    assets in a trust, which contains funds that were

2    contributed to the plan.  The motion to compel seeks the

3    Court's assistance in resolving four issues that the

4    parties, despite numerous meet-and-confer conferences, have

5    been unable to resolve.

6              THE COURT:  Yes.

7              MR. McDONALD:  And those four issues that we

8    haven't been able to work out are as follows.  Number one is

9    the debtors' refusal to search for electronically stored

10   information of any more than six of their employees.  And

11   again, another shorthand that I may employ here today, Your

12   Honor, is the acronym ESI for electronically stored

13   information.  With the Court's permission, I can shorten

14   that --

15             THE COURT:  Yes.

16             MR. McDONALD:  -- term as well, to move things

17   along.

18             The second issue is the debtors' over-inclusive

19   designation of the documents they've produced with an

20   attorneys'-eyes-only legend.  As of the date of the filing

21   of the motion, approximately 90-plus percent of the pages

22   that we had received were stamped with an attorneys'-eyes-

23   only legend.  There has been subsequent production since

24   that date, and I don't have the current figures, but under

25   any scenario, we contend that the attorneys'-eyes-only

1    legend has been abused in this case.

2              The third issue is the debtors' refusal to

3    provide certain identifying information for their employees.

4    And in particular, it has been the redaction of names and

5    addresses of Nortel employees.

6              And the fourth issue, Your Honor, is the debtors'

7    inadequate and incomplete answers to certain of the

8    interrogatories that the beneficiaries have propounded.

9    Those are interrogatories 5, 6, 8 through 10, and 12 through

10   16.  And we covered all of these issues, obviously, in our

11   opening brief.  We tried to be thorough.

12             I do want to touch on all four of the issues here

13   today, but before I begin the discussion of the issues

14   themselves, I wanted to take a minute and talk about a

15   couple of themes that have pervaded the discovery process to

16   date and over -- are over-arching on all of the issues

17   raised in the motion.

18             And the first issue -- the first theme is that

19   the debtors' approach to discovery in this case, we believe,

20   has turned the process of the federal rules on its head.

21   And what I mean by that is that we start from the familiar

22   standard, under Rule 26B, that a party is entitled to

23   discover non-privileged information that is relevant to the

24   claims and the defenses raised by any party in this case.

25   The way the federal rules operate, under Rules 26, 33, and

1    34, is that the requesting party makes the decision what

2    documents and what information it would like to receive.  It

3    propounds those requests on the other party.  And assuming

4    that it requests information that's relevant and non-

5    privileged, the responding party has an obligation to

6    provide that discovery, so long as they are -- again, it's

7    not privileged, and it's not otherwise unduly burdensome.

8              Well, in this case, from the outset, we believe

9    the debtors have approached the process from the opposite

10   perspective.  They have deemed to dictate what are the

11   relevant issues.  They have deemed to dictate the type of

12   documents and information that we should need to resolve the

13   issues in this case.  and they have limited their discovery

14   responses to what they deem is appropriate, as opposed to

15   what we think is necessary in order to resolve the core

16   issue with respect to the turnover motion, which is whether

17   or not the DCP complies with the top-hat requirements.  So

18   that's the first theme.

19             The second theme, which we think is inescapable

20   from the kind of response we've received to day, is that it

21   appears apparent to us that the debtors are trying to hide

22   the ball here.  The issues that have been brought before the

23   Court on this motion to compel are issues where we are not

24   receiving full and complete responsive productions to the

25   documents requests that we've made.  And we've not received

1   full and complete responses to the interrogatories that

2   we've served.  This is not the first time that we've been to

3   this rodeo.  Mr. Keech  and I represented the ad hoc

4   committees in both the *Home Bank* case and the *New Century*

5   case, which were both before Judge Carey of this Court.

6          THE COURT:  Yes.

7          MR. McDONALD:  And in both of those cases, we

8   asked for and we received the kind of information that we

9   believe the debtors and their third-party administrators

10  have in this case.  And to date, the type of productions

11  that we've gotten have been made -- have made it exceedingly

12  difficult for us to get to the top-hat analysis, really the

13  essential information, which is who is eligible to

14  participate in the plan --

15         THE COURT:  Right.

16         MR. McDONALD:  -- and how much money did they

17  earn?

18         THE COURT:  Right.

19         MR. McDONALD:  We'll get to that a little later,

20  but that's another over-arching theme that I think the Court

21  should keep in mind.

22         Turning to the four issues, I will take --

23         THE COURT:  And what I'd like you do is raise the

24  issue and then have Nortel respond, one at a -- you know,

25  one --

1            MR. McDONALD:  Yes, I --

2            THE COURT:  -- at a time.

3            MR. McDONALD:  I think that makes sense, Your

4    Honor.

5    (11:54:23)

6            MR. MCDONALD:  Yes, I think that makes sense,

7    Your Honor.  I will take the debtors up on their construct

8    of compressing into a single argument the two discrete

9    issues that we had in our motion which are the attorneys'

10   eyes only legends and the employee information withholding.

11           I think it -- for both of these issues, it's

12   important for the Court to keep in mind at the outset that

13   the documents at issue here are concededly both relevant and

14   responsive to the requests that have been made by the

15   beneficiaries.

16           THE COURT:  And you're concerned about the

17   redactions.  Is that correct?

18           MR. MCDONALD:  We are.  We are.  Redactions of

19   names and addresses.  There's been an issue about social

20   security numbers.  We don't need that kind of information.

21           THE COURT:  Okay.  All right.

22           MR. MCDONALD:  But I will get to in a moment why

23   the names and the addresses are important.

24           THE COURT:  All right.  I was concerned about the

25   social security numbers as well.

1          MR. MCDONALD:  Okay.  No, we can move beyond

2    that.

3          THE COURT:  Okay.

4          MR. MCDONALD:  It's also important for the Court

5    to keep in mind that there is already a protective order in

6    place in this case which Your Honor has signed.  That order

7    contains great protection against disclosure of any of this

8    information to any third parties and limits the use of these

9    documents and information to the matter before the Court.

10   So there's no issue here about dissemination of this type of

11   allegedly private information beyond the litigants and the

12   Court in this case.

13          With respect to the attorneys' eyes only

14   designation, the debtors argue that good cause exists to

15   prevent the disclosure of most of their documents beyond the

16   beneficiary's attorneys because there exists something

17   called a privacy and data protection procedure that

18   apparently was in place from 2005 onward.  And I guess

19   there's a copy of that at the graph in the Kaplan

20   declaration in the debtors' objection.

21          THE COURT:  Yes.

22          MR. MCDONALD:  An initial point that we would

23   make is that's only been in place apparently since 2005.

24   And we're talking about a deferred compensation plan that

25   went into existence in January of 2000 and actually

1    incorporated into it prior existing plans that dated back as

2    far as 1996.  So we don't think that that privacy procedure

3    has any impact on any documents that would have been

4    generated prior to its inception in 2005.

5             But more importantly, I think the burden that

6    the debtors have on this issue, putting aside that we have a

7    confidentiality order in place, is that they have to

8    articulate to the Court some clearly defined articulable

9    injury that would occur if these documents were shared

10   beyond the eyes of the beneficiary's lawyers.  And we submit

11   that they've made no such showing in this case.

12            We represent approximately 178 of the

13   participants in the deferred compensation plan.  We -- our

14   group is structured such that we have a steering committee

15   of seven with whom we regularly communicate.  They are a

16   very active and interested group.  We believe that under the

17   federal rules, they have a right to see this information

18   absent the debtors demonstrating some clear injury that

19   would result from the dissemination of the documents.  But

20   we also are hindered in our ability to prosecute this case

21   if we are not able to share these documents and the

22   information contained in them with our clients.

23            Again, if we operate from the starting point that

24   90 percent of the pages have been marked attorneys' eyes

25   only and we have a confidentiality order in place that

1  obligates us as counsel not only to not share the documents,

2  but to share the information that is contained in the

3  documents beyond ourselves --

4         THE COURT:  Are you concerned about sharing it

5  with the seven members of the steering committee or with all

6  178?

7         MR. MCDONALD:  Right now the primary concern is

8  with the steering committee.  We have no intention of

9  republishing this stuff to the group as a whole.  We deal

10  with the steering committee on a daily and a weekly basis.

11  And that's really the primary concern.  I think perhaps a

12  compromise would be that we're able to share with the

13  steering committee.  But I would suggest to the Court though

14  that that compromise also presents problems.  The debtors

15  are correct.  They have suggested some compromises and we've

16  rejected them all.  And it's because procedurally it's very

17  cumbersome.

18         Say if we agreed to only share that information

19  with the steering committee and it came time to have

20  communications with the group as a whole.  We would be put

21  in the position of wondering whether or not the information

22  we are sharing with the group as a whole came from a

23  document that had been stamped attorneys' eyes only or

24  steering committee only and it hampers our ability to

25  communicate.

1          Again, to the extent any of this is shared with

2    any of our clients, it's all going to be subject to the

3    protective order.  And we believe that the protective order

4    by its own terms provides more than adequate protection

5    against the privacy concerns that have been raised by the

6    debtors.

7          THE COURT:  What is your need for the addresses?

8          MR. MCDONALD:  The need for the addresses, Your

9    Honor, are to be able to contact potential witnesses in the

10   case.  We need both the names and the addresses.  I'll give

11   the Court a hypothetical example.  Often times one will find

12   a discussion in an email of a particular eligible and/or

13   participating employee.  The production as it exists right

14   now is that that employee's name is redacted from the email.

15   So let's assume we get the name.  We know it's John Smith.

16   But there's an issue that's raised that we need further

17   information on and we need to talk to John Smith.  We don't

18   know who he is or where he lives, but if we have the

19   addresses for the employees, we'd at least know a last known

20   address from Nortel's perspective of Mr. Smith.  And we'd be

21   able to contact him and discuss with him the issues that

22   have been raised in the document.  So it's to be able to

23   locate and contact potential witnesses.

24          I think I've covered in answering your question

25   our basic points with respects to the names and addresses

1  issue which --

2            THE COURT:  Yes.

3            MR. MCDONALD:  -- is similar to the attorneys'

4  eyes only question.  But there's one other point besides

5  being able to contact people as potential witnesses on the

6  redaction of names.  And that is that a lot of the documents

7  that we have gotten as a compromise, Nortel has said well

8  we'll give you identifying numbers for the employees.  But

9  again, if we take the hypothetical example that I was just

10 discussing, if an employee discusses -- is discussing John

11 Smith's particular issue with respect to the DCP and his

12 name is redacted out, we have no -- his employee ID number

13 is never going to be mentioned in that email, so we'll never

14 know who they're talking about unless we actually have the

15 name of that person.  So we need the names in able to do

16 appropriate searches of the documents to be able to link up

17 correspondence to an Excel spreadsheet run that will show

18 who that person is.  So it's witnesses and word searches.

19 We need to know the names of the people involved in the

20 plan.

21            THE COURT:  Okay.  All right.  Thank you, Mr.

22 McDonald.  Ms. Kim?

23            MS. KIM:  Thank you, Your Honor.  Before we get

24 to -- for the record again, June Kim.  Before we get to the

25 merits, I think it would be helpful to understand and

1  remember how this dispute began.

2          U.S. Bank is a trustee of a rabbi trust.  And

3  that trust is in the name of NNI.  And that trust clearly

4  says that the assets in the trust are subject to the claims

5  of NNI's general creditors.

6          THE COURT:  Yes.

7          MS. KIM:  And there's a simple reason for setting

8  up the trust that way.  It's because people don't want to

9  pay taxes.  And the law allows individual employees to avoid

10  paying taxes on deferred income so long as those funds are -

11  - that that income is not earmarked for the employees.

12          THE COURT:  Right.

13          MS. KIM:  That's the hallmark of tax law and

14  deferral plans.  Notwithstanding that, many companies set up

15  what are called rabbi trusts and NNI did that here as part

16  of the administration of the deferred compensation plan.  As

17  required under the tax law, those rabbi trusts provide as

18  this one did, that the trust assets are subject to the

19  claims of the company's general creditors and that the

20  beneficiaries of the plan have no greater right to the

21  assets in that trust than other general unsecured creditors

22  of the company.

23          And that is how the beneficiaries of the deferred

24  compensation plan were able to avoid paying taxes on their

25  deferred income.  So the trust documents, the plan, all of

1  the underlying documents and agreements are clear on this

2  point and nothing in the ad hoc group's pleadings say

3  otherwise.

4          So based on the clear language of the trust and

5  the clear language of the plan and all of the other

6  agreements, the -- and as part of the general process of the

7  debtors bringing money into their estates, the debtors filed

8  a turnover motion nine months ago in December.  The debtors

9  had the declaration and a witness and were prepared to

10 present the hearing and to present the motion of the hearing

11 in February when this turnover motion was first up for

12 hearing.  And the day before the hearing, Mr. McDonald filed

13 an objection.  The debtors were sensitive to the issues

14 raised and to the concerns of the beneficiaries of the plan.

15 And so the debtors agreed to adjourn the hearing and to

16 engage in confirmatory discovery.

17         So six months later or over six months later this

18 is where we are.  The discovery requests that were

19 propounded were much broader than had been contemplated and

20 they were all inclusive.  There were 35 document requests

21 and 16 interrogatories about every issue relating to every

22 aspect of the plan.  The debtors met and conferred with Mr.

23 McDonald and his colleagues a number of -- on a number of

24 occasions trying to window the discovery to make it more

25 reasonable.  And the debtors have always been willing to

1   produce documents and to accommodate the concerns of the ad

2   hoc group, but within reasonable bounds.

3          The requests went well beyond general information

4   about the plan.  What the ad hoc group asked for was what

5   amounts to information from the personnel files of every

6   single employee that the debtors have employed over a 13

7   year period from the beginning of 1996 to the end of the

8   2008.  And all of their compensation information and the

9   like, as well as, every aspect of the administration of the

10  plan.

11         But the central issue here is whether the trust

12  belongs to the ad hoc group.  And the fact that the plan is

13  unfunded is not in dispute.  Nevertheless, even though we

14  did not think that the issues that were raised were

15  relevant, we did give information on whether the plan was

16  offered to a select group of highly compensated individuals

17  or management.  The debtors gave all of their information on

18  compensation, and job titles, and other information for all

19  of the employees that were employed by the debtors over that

20  period from 1996 to 2008.  We responded to all the document

21  requests and the interrogatory responses by producing over

22  9,000 documents and over 170,000 pages.

23         And even after all of this time and with

24  everything produced, the debtors still believe that the plan

25  was properly maintained as a top hat plan.  It was always

1  offered to 10 percent or less of the total workforce and to

2  employees who were expected to earn at least over $145,000.

3  So this is not a case like *New Century* or *Home Bank*, the two

4  cases that Mr. McDonald was involved in where plans were

5  offered to far greater percentages and to people who were

6  earning far less.  This is not a case where people were --

7  had salaries of $18,000 and were put into the plan.

8          But we're not here to argue the merits.  We're

9  here to deal with Mr. McDonald's four issues.

10         THE COURT:  When you're talking, Ms. Kim about 10

11 percent --

12         MS. KIM:  Yes.

13         THE COURT:  -- of the employees, what does 10

14 percent represent in numbers of employees?

15         MS. KIM:  So for the years where there were the

16 most employees and --

17         THE COURT:  Yes.

18         MS. KIM:  -- you know, over time from especially

19 beginning in 2000, the employee workforce started to decline

20 over time, the U.S. debtors at the time employed as many as

21 maybe a little over 30,000 people.  And so we're talking

22 about somewhere between 7 to 10 percent of those individuals

23 who are allowed to participate in the plan.

24         THE COURT:  So the maximum for any given year

25 would be approximately 3,000 employees.

1          MS. KIM:  Yeah and that was when -- and as time

2     went by there was quite a bit of attrition just because of

3     the economy and --

4          THE COURT:  Sure.

5          MS. KIM:  So we can begin with the issues on the

6     confidentiality of the documents that were produced.  And

7     just to begin with, it would be helpful to understand

8     exactly what the debtors produced and why the debtors are

9     treating those documents the way that they are.

10          As I said, the debtors produced information about

11    the compensation of every employee that the debtors have

12    employed since 1996 to the end of 2008.  So we're talking

13    about tens of thousands of employees, the majority of whom

14    were never eligible to participate in the plan.  Those

15    spreadsheets had the name, the social security number, the

16    home address, the home phone number, other personal

17    identifying information, the targeted compensation for that

18    individual and all aspects of the targeted compensation.

19    And some of those documents also had actual compensation for

20    that individual.  They had their job title, their

21    termination date, the hire date.  I mean it was very

22    complete for every single employee for every single year

23    that the plan was in effect.

24          So naturally, when you have a spreadsheet which

25    is what Mr. McDonald and his colleagues asked for that was

1    printed off of the debtors' databases that list all of these

2    employees, these spreadsheets are going to be hundreds or

3    thousands of pages long.  So even if by percentage of

4    document number they were maybe 9 percent of the total

5    documents that the debtors produced were attorneys' eyes --

6    were designated attorneys' eyes only, when you look at the

7    size of these spreadsheets, they're very voluminous.  And so

8    if you take the page count, they are going to be a larger

9    percentage of the total documents designated attorneys' eyes

10   only.

11            THE COURT:  Sure.

12            MS. KIM:  But that's not because we over

13   designated.  The only -- for the most part, those -- the

14   only documents that we designated as attorneys' eyes only

15   were ones where you had that kind of information.  And we

16   were sensitive to the confidentiality of those documents.

17            The other thing that I should emphasize is that

18   Mr. McDonald represents a little over half of the total

19   participants and current participants in the plan.  I think

20   the numbers might have gone up since the last time we filed

21   the 2019 statement, but it's at least 150, 178, I think he -

22   - Mr. McDonald just said.

23            THE COURT:  178, yes.

24            MS. KIM:  So but he wants information not just

25   about the rest of the participants in the plan, the rest of

1    the -- and there are 325 current beneficiaries in the plan.

2    And not just about the other eligible employees who are able

3    to participate in the plan, but may have chosen not to, but

4    all of the tens of thousands of employees who never had the

5    opportunity to participate in the plan.  And he wants to be

6    able to show those, all of that information have the right

7    and the discretion to show all of that information to his

8    178 clients.

9            Some of this is confidential information that we

10   cannot disclose at all because of the corporate policy of

11   the debtors.  And so we redacted that information.  That's

12   really the names and the personally identifying information

13   like social security numbers and home addresses.

14           And then the other information was information

15   that we were happy to produce in an attorneys' eyes only

16   basis, but that we did not want Mr. McDonald's clients to be

17   able to see.  And that's why when we produced these

18   documents, we would have produced the unique employee

19   identifying -- the unique employee identification number

20   which would have allowed you to sort through and check

21   through other documents and be able to see where that number

22   comes up and be able to do a word search with that number

23   and then see how the compensation information would line up

24   over time.

25           So the company has a history of protecting

1  employee identifying information.  The most recent policy is

2  the 2005 policy, but there were policies in effect before

3  then identifying, protecting the information about

4  employees.  And it's helpful to just know a little bit of

5  background about why those corporate policies were in place.

6              Nortel was until the filing the bankruptcy, a

7  global corporation with employees all over the world.  And

8  so there was an effort to make sure that there was a single

9  policy in terms of how to deal with employee identifying

10  information that could be used consistently throughout the

11  world and different companies have different privacy laws.

12  And so there was a policy in place to be able to make sure

13  that the company was complying with all of the laws of all

14  of the countries in which it operated.

15              That policy was something that employees relied

16  upon the company to comply with and they expected that the

17  company would protect its information.  And particularly,

18  with respect to information like compensation information

19  over time, that was information that the employees had a

20  great interest in making sure it was protected.

21              So this is not the kind of information that the

22  debtors have produced in any other litigation.  And

23  particularly when you're talking about a case where the

24  number of employees who are potentially impacted by this

25  litigation or who are party to this litigation is a small,

1    very, very, small percentage of the total number of

2    employees whose information is being sought, that really

3    this is not the kind of case that you would produce that

4    kind of information.

5         So when we were looking at these documents and

6    trying to figure out what we wanted to do, well how we

7    should treat this information, we dealt with two questions.

8    The first was does it violate the corporate policy so that

9    we can't give that kind of information at all.  And if --

10   even if it didn't, does it violate -- does it affect

11   confidentiality concerns that would prevent us from wanting

12   it to be disseminated on a larger than attorneys' eyes only

13   basis.

14        And we weighed that against the need for that

15   disclosure and Mr. McDonald's interests in seeing that

16   information.  And as he said, he really wants it for -- to

17   see who's eligible and how much money they were making.  And

18   to take -- and really to be able to compare the amount of

19   money that an eligible employee is making and compare that

20   against the total workforce at large to make sure that

21   relatively speaking we're talking about a highly compensated

22   group of people.

23        So we did, we tried on numerous occasions to

24   explore to take those interests, the weighing of those

25   interests and try to see if there was a way for us to be

1  able to find a solution that we could then take back to our

2  client and to this Court, if needed.  We offered on an

3  attorneys' eyes only basis because of the complaints that

4  the spreadsheets might have been hard to read without names

5  attached, we could take names of eligible and participating

6  employees and match it up to the employee identification

7  numbers and give effectively a key so that they could look

8  at the ID numbers and match it up with the names and then be

9  able to see where else those names and ID numbers showed up.

10          We offered to show the names of participating and

11  eligible employees divorced from any compensation

12  information.  And one thing I would -- so that he could see

13  a list of here are the people who are participating

14  employees, here are the people who are eligible employees

15  and, you know, we would consider being able to show that

16  outside of an attorneys' eyes only basis, subject to the

17  confidentiality order.

18          And one thing that I would note, you know, we

19  never talked about the distinction between being able to

20  share information with the steering committee and with the

21  clients and that -- so that just never actually ended up

22  coming into the equation.  We -- but, you know, that was

23  something else that if, you know, we could have considered.

24          And on top of all of that, you know, Mr. McDonald

25  talked about that there are some emails that show up with

1    names that have been redacted and they want to see for

2    purposes of identifying potential witnesses, who those

3    people are and how they match up with those spreadsheets.

4    And we could did offer on a case by case basis for him --

5    that if he identified specific categories of documents or

6    specific individuals, that we could look at that on a case

7    by case basis and see what we could do in terms of

8    disclosure of that.

9         Keeping in mind on all of that, that at the end

10   of the day, Mr. McDonald represents a small percentage of

11   the total employees and so we really were not -- we have a

12   great concern about being able to open up all of this

13   information to, you know, his substantial number clients,

14   but clearly relatively speaking, you know, small.

15        So and in all of these discussions instead of

16   discussing a solution or engaging in compromises, the

17   response that we got that was that he was not in a position

18   to discuss a compromise or to try to limit what he could get

19   his -- their -- that they -- their position was that they

20   were entitled to everything and that they could -- they

21   wanted the right be able to show everything to their clients

22   in their discretion.  And that just does not -- there are

23   privacy interests that are legitimate for a finding that

24   could cause exist for a protective order.  This is not the

25   kind of case where you can just allow that type of

1  disclosure.

2           We can't -- we are and have always been willing

3  to discuss compromises, but what we can't have is what Mr.

4  McDonald is asking for and what he wants which is to share

5  all of this personal information about the tens of thousands

6  of employees at Nortel that the U.S. debtors have employed

7  over a 13 year period with his 178 clients at his

8  discretion.  There has to be some balancing of the need for

9  this discovery against the legitimate privacy interests of

10 these employees.

11          THE COURT:  Thank you, Ms. Kim.

12          MS. KIM:  Oh, I'm sorry, there was one other

13 thing.  Mr. McDonald had also raised a concern that even if

14 he were to limit his -- most of this information to a

15 steering committee, that the concern about not being able to

16 show documents that were derived from individual -- from

17 information that might have been confidential or attorneys'

18 eyes only to his -- the larger group of his clients and that

19 there would always be that concern that he wouldn't know

20 what to share.  We are fine with and have always said we are

21 fine with his showing documents that were derived from

22 confidential information but, you know, may be aggregated

23 and so that you don't see individual personal information,

24 but even if the source were information that were

25 confidential, the derived documents from that so long as it

1   does not show that kind of confidential information, we're

2   fine with his sharing that information with his clients.  We

3   understand why he would have to and we're not trying to

4   chill that type of disclosure.

5           THE COURT:  All right.  Thank you.

6           MR. COLEMAN:  Your Honor, may I be heard briefly

7   --

8           THE COURT:  You certainly may, Mr. Coleman.  Any

9   time, certainly, Mr. Coleman.

10          MR. COLEMAN:  Thank you very much.  Ken Coleman,

11  Allen & Overy on behalf of Ernest & Young as the monitor

12  appearing once again I think as Justice Morawetz's

13  jurisdictional police.

14          THE COURT:  Yes.

15          MR. COLEMAN:  We filed a very brief statement in

16  reservation of rights on this issue and I just wanted to

17  point out a couple of things here.

18          THE COURT:  Please.

19          MR. COLEMAN:  The ad hoc committees' pleading

20  makes reference to a small handful of people that we

21  identify in our pleading at Paragraph No. 1 who we

22  understand to be former employees of the Canadian companies.

23  So there are obvious issues there in terms of disclosure of

24  documents and ESI pertaining to them.

25          Secondly, their papers make a passing reference

1  to turnover of information held by agents and other third

2  parties, including the debtors' Canadian affiliates raising

3  all sorts of alarm bells and confusion.  And I suspect it

4  was not intended to be, you know, and end run around Justice

5  Morawetz's order.  But just to be absolutely clear, if

6  there's any sort of discovery that's to be taken of the

7  Canadian debtors, it needs to be done in Canada.  It can be

8  done pursuant to a joint hearing with the Canadian Court.

9          So what we filed our papers to make clear, Your

10 Honor is that if there is any information to be obtained

11 from employees of the Canadian former or current employees

12 of the Canadian companies, if there's any documents or other

13 information that constitutes property of the Canadian

14 companies and that property is protected by the Canadian

15 stay which is recognized in this country by force of Your

16 Honor's order, or certainly any document requests or other

17 discovery directed even indirectly at the Canadian debtors,

18 that's a matter for Justice Morawetz.

19          THE COURT:  Yes.

20          MR. COLEMAN:  So to the extent there's any relief

21 to be granted to this committee today, we would ask that we

22 be careful not to have any crossing of the border, if you

23 will, in terms of implicating the Canadian companies.

24          THE COURT:  Thank you, Mr. Coleman.

25          MR. COLEMAN:  Thank you very much.

1          THE COURT:  I think that clearly should be

2   understood and I certainly understand that.

3          MR. COLEMAN:  Thank you.

4          THE COURT:  Yes, thank you.  Mr. McDonald, any

5   response?  Because I'm concerned as to why you want the

6   information for all of the employees as opposed to the plan

7   participants or plan eligible employees.

8          MR. MCDONALD:  I can explain that hopefully to

9   Your Honor's satisfaction.  I don't want to see all of that

10  information, Your Honor, but I need to see all of that

11  information.  We discussed both in our objection to the

12  turnover motion and in the motion to compel papers, the

13  tests that the Courts employee --

14          THE COURT:  Yes.

15          MR. MCDONALD:  -- to make a determination of the

16  qualitative and quantitative top hat factors.  And, indeed,

17  we are required to look at the actual compensation of all of

18  the employees that were employed by the debtors to make a

19  comparison between those salary ranges and those of the

20  people within the plant.

21          THE COURT:  I understand that, but you have that

22  compensation information.  What you want to do is match it

23  up with names and addresses of those people.

24          MR. MCDONALD:  Yes, yes.  Let me give you another

25  real world example about why we need not only the names and

1  addresses of the eligible employees, but those who are not

2  eligible.

3         In the typical deferred compensation plan

4  scenario for a top hat plan, the employer picks a figure

5  which will distinguish a figure either being a management

6  status or an earnings level --

7         THE COURT:  Right.

8         MR. MCDONALD:  -- that will distinguish the

9  eligible employees from those of the remaining employee

10  population.  That's the way it worked in previous cases.

11  That's not the way it worked here.  What happened in this

12  case is that Nortel in effect reverse engineered their

13  compensation thresholds.  Their benefits department would

14  pick a number which they believed was sufficiently high and

15  then they ran a test to see how many employees that would

16  pull in.  So let's say in 2003, they picked $152,000 as the

17  earning's threshold.  They ran a report that showed how --

18  what percentage of the total employee population would earn

19  $152,000 and above.  And if the number came in too low, they

20  tweaked the figure a little bit to make it go a little bit

21  higher.

22         THE COURT:  Right.

23         MR. MCDONALD:  So they could get the percentages

24  to the neighborhood that they believed was protectable under

25  the top hat factor regime.

1           So we're going to deal with a situation in this

2   case, Your Honor, where the cutoff between eligible and

3   ineligible is going to be $1.00.  You're not going to have,

4   you know, $200,000 and above and then the rest of the

5   population be significantly below that.  We're really

6   dealing with gradations of a dollar or a few.

7           So we, again, in terms of finding potential

8   witnesses, we're going to need to talk to the people who

9   actually fell below the threshold by minimal amounts to

10  discuss with them what they knew about the plan and other

11  issues that are related here.  So we are going to need

12  potentially to locate and talk to those employees who were

13  not eligible to participate in the plan.  And there's really

14  no meaningful way to cut those people's names and addresses

15  off because we have a, you know, we have a sliding scale

16  here and we don't know how far down below the threshold

17  we'll need to go.

18          On that, I guess I'd raise the larger point, Your

19  Honor, which is that again, we come from the starting point

20  that we're entitled to this information.  We've already

21  built in protections against disclosure by agreeing to the

22  protective order that Your Honor has signed.  Nobody but the

23  participants, the litigants in this case are ever going to

24  see that information.  Otherwise, they'd be in violation of

25  the protective order.  And Rule 26(c) which governs

1    protective orders, again, I would reiterate, it requires the

2    defendants, the debtors in this case, to make a clear

3    showing of annoyance, embarrassment, or oppression.  And all

4    I've heard today is that well we had this policy in place

5    and we want to honor it.  There's been no evidence that any

6    employee is going to object to any of this, it's just simply

7    not before the Court.  So we think we're entitled to it.

8              On the issue of compromise, I would just say that

9    yes, we have refused to compromise here.  It's not because

10   we don't believe in compromise when one is appropriate.  But

11   in this situation, we have a right to the information.  We

12   have a need to the information.  And we cannot fashion what

13   we believe to be a suitable compromise, otherwise we would

14   pursue it.

15             For us, it really is all or nothing.  And we

16   think the downside of an all as opposed to a nothing is very

17   minimal given the current protections we have in place under

18   the protective order.

19             THE COURT:  Well look, normally, protective

20   orders are limited to disclosure to parties and so there's a

21   finite number of parties who will obtain information.  For

22   example, the class actions.  If a class action attorney were

23   before me today saying that he wanted to disclose all of the

24   information to all the class members.  I mean, that would be

25   -- that would render the protective order unenforceable and

1   I wouldn't -- I certainly wouldn't countenance that.  And I

2   am concerned about privacy.  And I think that it's

3   applicable.  We have terms for example for the appointment

4   of a privacy ombudsman in appropriate cases.  And I think

5   that Courts today are protecting individual's privacy

6   rights.  And I think that is a fair concern that Nortel has.

7            I'm also concerned that very often attorneys in

8   discovery seek an awful lot more information than they can

9   possibly deal with.  And I don't think that you can deal

10  with 10,000 or however many thousands of names there are

11  here.

12           And I think that the way to proceed is this.  And

13  I'm going -- this is a little bit, you know, off the cuff so

14  I may have to do a little bit of refining.  But it seems to

15  me that if you want to approach members or employees for the

16  purposes of their serving as witnesses, that you will

17  identify, you know, a certain number of those.  And I think

18  it has to be a reasonable number.  We're not going to have a

19  hearing with 100 witnesses for example.  A reasonable number

20  of those employees and the company will then write to that

21  number of employees and ask whether or not they have any

22  objection to disclosing that information to you.  And if

23  they don't, then the information will be disclosed.  If they

24  do have an objection, then that information obviously will

25  not be disclosed.

1              But I think that to sort of -- for the company to

2    unleash all of this information which is sensitive

3    information, there's nothing more sensitive to a person then

4    their compensation.  I don't know anybody who would ever ask

5    anyone how much do you make, you know, and expect to get an

6    answer.

7    (Laughter)

8              THE COURT:  So compensation is a sensitive issue.

9    And I think that employees who worked for Nortel had a

10   reasonable expectation that that sort of information would

11   not be just disclosed to anyone.

12             Now as far as the plan participants are

13   concerned, that may be another matter.  And I still haven't

14   addressed the attorneys' eyes only matter.  But I think that

15   -- is there a need for that information?  You already know

16   they're participating.  Do you need the names and addresses?

17             MR. MCDONALD:  Your Honor, it's not that I am

18   looking for an independent list of a name and address.  In

19   fact, that has been suggested to us as something that I

20   believe the debtors would be willing to give us.  But the

21   problem is with the existing documents themselves, we're

22   talking in many instances here as Ms. Kim had mentioned,

23   with large runs of payroll type information that have

24   columns set up for --

25             THE COURT:  Okay.

1          MR. MCDONALD:  -- name, address, compensation,

2    targeted compensation, hire date, termination date, things

3    like that.

4          THE COURT:  Yes.

5          MR. MCDONALD:  When the information is redacted,

6    any information from those, and then we need to -- that --

7    let's say that particular Excel spreadsheet which is a

8    contemporaneously produced document to 2005, contains

9    everything we need except for total compensation.  And we

10   need to then go to some other document that actually has the

11   information.  It makes it difficult and cumbersome for us

12   without names or addresses, the full panoply of information

13   to derive the information that we need.  That's the problem.

14   I'm not independently concerned just with getting the

15   address of potential witnesses.  It's the redaction on

16   contemporaneous documents which makes our ability to

17   synthesize and analyze the information more difficult

18   because we're missing fields that existed on the original

19   document.

20         THE COURT:  Okay.  Ms. Kim?

21         MS. KIM:  Your Honor, all the spreadsheets that

22   we produced have --

23         THE COURT:  Have identifying numbers.

24         MS. KIM:  Exactly.  And so you can take that

25   identifying number, put it into a Control F function and

 1  find the same number in every other spreadsheet that we

 2  produced.  And, in fact, in some circumstances, it might

 3  even be easier than names because there are people who might

 4  have the same name who -- you know, and so this is one clear

 5  way of being able to make sure that you are capturing the

 6  right person and looking at the same information for the

 7  same person over all of these spreadsheets.  But there's no

 8  difficulty in being able to do that anymore than being able

 9  to look at a name.

10            THE COURT:  A name versus a number is basically

11  the same and there's an identifying feature.

12            MS. KIM:  Correct.  And all of the spreadsheets

13  that we produced are searchable in that way.

14            THE COURT:  All right.  Have you identified by

15  name, Mr. McDonald's clients, the 178 clients that he

16  represents?

17            MS. KIM:  We -- you mean from the -- on the

18  spreadsheets?

19            THE COURT:  Yes.

20            MS. KIM:  We haven't.  We have not un-redacted

21  those.  We're happy to -- that is something that we could

22  consider and do.  I don't think that that --

23            MS. SCHWEITZER:  I'm sorry.

24            THE COURT:  Go ahead, certainly, Ms. Schweitzer.

25            MS. SCHWEITZER:  Your Honor, I'm sorry, if you

1  don't mind me just rising in caucus.  Is it -- first, the

2  employees know their own GID numbers.  It's not a secret

3  number.  But I don't think it would be -- it's the

4  equivalent of, you know, instead of logging in with your

5  name, you use your ID number.

6               THE COURT:  Okay.

7               MS. SCHWEITZER:  So it's not a secret number.  I

8  don't think there would be any issue with giving him that

9  key for his employees.  The only issue would be that now

10  that we've produced as he likes to say flooded him with

11  documents, that there's a cost to going and individually,

12  you know, to re-un-redact line item by line item.

13               THE COURT:  Yes.

14               MS. SCHWEITZER:  For historic things that are

15  already produced would be difficult.  But as far as a key --

16               THE COURT:  A key.

17               MS. SCHWEITZER:  -- that's not an issue.

18               THE COURT:  Okay.  I think that would be

19  appropriate and at least at this stage sufficient.  That way

20  Mr. McDonald will know -- be able to match up his clients

21  and identify them without any question.  And that should

22  prove at least somewhat helpful to him.

23               MS. KIM:  Yeah, we're happy to do that.

24               THE COURT:  Okay.  But Mr. McDonald, yes, sir.

25  But I still hear no reason for addresses.  As you identify

1  potential witnesses, Mr. McDonald, it seems to me at that

2  time you can approach the issue of whether or not addresses

3  are disclosed.

4           MR. MCDONALD:  Thank you, Your Honor.  And I'm

5  seeing which way the wind is blowing here so I'll be brief.

6  I do think that it's important though for the Court to keep

7  in mind a very important distinction between a participating

8  employee and an eligible employee.

9           THE COURT:  Okay.

10          MR. MCDONALD:  We are representing people who

11 actually participated in the plan.

12          THE COURT:  Right.

13          MR. MCDONALD:  But the important criterion for

14 the top hat analysis is not those employees who chose to

15 participate, but those who were deemed eligible.  And the

16 eligibility pool is almost always larger than the

17 participant pool.  So if I heard Your Honor earlier, you

18 were suggesting that we would get the names and perhaps the

19 addresses of the participating employees, but it is vitally

20 important that we get that information for all of the

21 eligible employees whether they participated or not.

22          THE COURT:  Ms. Kim?

23          MS. KIM:  If I understood you correctly, Your

24 Honor, I actually thought that you had said something

25 different than that which is that we would match up the GID

1  numbers with the names of his clients.

2              THE COURT:  That's right.

3              MS. KIM:  And one thing that actually I would add

4  on that is obviously he represents the -- it's an ad hoc

5  committee, it's not individual people who have -- who we're

6  dealing with individually.  So one of the concerns that we

7  might have at this point is we would want confirmation from

8  each of his clients that we're okay with providing this

9  personal information so that they can share it with each

10 other.  I think once we have confirmation that all of the

11 members of the ad hoc committee, we're fine with that, with

12 us providing that information, then we would prepared to do

13 so.

14             THE COURT:  I think that's an appropriate

15 comment, Ms. Kim and qualification, yes.  Now as far as the

16 eligible, parties are concerned, they have been identified.

17 Is that correct?  In other words, all of the -- you know who

18 the participants were by the code.  Do you also know who the

19 eligible participants were?

20             MR. MCDONALD:  Recently we have been provided

21 with lists, I believe that identify the eligible employees

22 for each year.

23             THE COURT:  Okay.  So you do -- so you have that

24 information?

25             MR. MCDONALD:  Yes, but I just want to make sure

1    that that is available for discovery in this case.  Prior to

2    the mediation, there was a flurry of activity in an attempt

3    to get to the core of the issues and documents were

4    exchanged.  And many of them bore a designation subject to

5    thorough rule of evidence 408, you know, for mediation

6    purposes only.  To the extent the documents we received for

7    purposes of the mediation are now part of the discovery here

8    and those include the names of the eligible's, then I think

9    we're satisfied there.

10                   THE COURT:  Ms. Kim?

11                   MS. KIM:  We were clear in our production as to

12   which documents we were producing as part of a larger

13   litigation and which documents we were producing for

14   purposes --

15                   THE COURT:  For the mediation.

16                   MS. KIM:  -- of mediation that were, you know,

17   just for that purpose.

18                   THE COURT:  Yes.

19                   MS. KIM:  And so we did produce lists of eligible

20   employees and we gave the names as part of the -- for

21   purposes of mediation.  We gave the GID numbers, the

22   employee identifying numbers --

23                   THE COURT:  Yes.

24                   MS. KIM:  -- as part of the actual production.

25                   THE COURT:  And that production is to be utilized

1  for purposes of the litigation and not just the mediation.

2           MS. KIM:  Correct.

3           MS. SCHWEITZER:  No, no, no.

4           MS. KIM:  The production with the names that are

5  -- the names of the -- sorry.  The GID numbers of the

6  eligible employees that we produced, that would be that you

7  can use as part of this litigation.

8           THE COURT:  Okay.  Very well.  I see.  So you

9  actually produced for the mediation names.

10          MS. KIM:  Correct.

11          THE COURT:  Okay.

12          MS. KIM:  Just for purposes of mediation.

13          THE COURT:  Understood, all right.  That's

14 understood then.  The production with the GID numbers is for

15 -- was produced for purposes of the entire litigation, not

16 the names, however.  That was just for purposes of the

17 mediation.  Okay.

18          MR. MCDONALD:  Is the Court's ruling that we're

19 not able to use those for purposes of this litigation or can

20 we at least use them on an attorneys' eyes only basis?

21          THE COURT:  You're able to use the production

22 with the GID numbers, but not with the names.

23          MS. KIM:  And those documents are clearly

24 designated, the ones that would be able to be used for the

25 litigation have Bates numbers on them, the rest of them say

1   for purposes of mediation.

2             THE COURT:  Okay.  That should -- that's helpful

3   then, Ms. Kim, thank you, yes.  So those are clearly

4   demarcated and should be fairly clear.  All right.

5             Let me turn, if you don't mind, to the answers to

6   interrogatories because I had understood from Nortel's

7   response, that they are in the process of answering those

8   other interrogatories that they hadn't done so previously,

9   but were now in the process now that they have gathered all

10  of the information that they need to respond are in that

11  process.  Is that right, Ms Kim?  In other words, is that

12  really not an issue here at this point?

13            MS. KIM:  Yes, that's correct.  For purposes of

14  mediation, we actually have already provided that

15  information that was requested in the interrogatories.  And

16  so, you know, we would have to put it into the actual

17  interrogatory form and have it verified but --

18            THE COURT:  Yes.

19            MS. KIM:  -- you know, we are prepared to do so

20  and we've always said that we're willing to do so.  So at

21  this point, we had -- when -- we had always said that we

22  were going to do so at the completion, after the completion

23  of the document production.  When we finished our document

24  production, we had agreed to mediation, so that's how we

25  ended up kind of getting sidetracked a little bit, but here

1  we are and we're prepared to amend our interrogatory

2  responses.  We would be prepared to do so within 30 days.

3              THE COURT:  All right.  Thank you.  Mr. McDonald

4  is that acceptable to you at this point that it's --

5              MS. KIM:  I'm sorry, there is one issue that he,

6  Mr. McDonald raised just before we had this hearing.

7              THE COURT:  Okay.

8              MS. KIM:  Which was about the documents that, you

9  know, a part of Rule 33(d) allows the debtors to either

10 actually provide the interrogatory response or to respond by

11 -- to the interrogatories by referencing documents that have

12 been produced.

13             THE COURT:  Yes.

14             MS. KIM:  And what we were -- Mr. McDonald

15 approached us right before the hearing and indicated that he

16 would like us to reformat the documents that we have

17 produced to I guess effectively make them more user friendly

18 and take documents that we've produced and merge them

19 together and merge them with other documents and have

20 something, a template that has all of the information in one

21 document.

22             And at this point, the -- there's no less burden

23 on the ad hoc group in doing that than on the debtors.  And,

24 in fact, you know, the debtors would -- we have very limited

25 resources at this point.  There's I think one person at the

1  company who would be able to do this and she is tied up on

2  many other things as well.  So we would have to do -- hire

3  somebody to be able to do that.  So it's not -- you know, we

4  printed all the documents, produced them in the form that

5  they were so the process of being able to mix and match them

6  and merge them is not anything more that we could do then

7  they could do just as easily.

8          THE COURT:  Okay.  Thank you, Ms. Kim.  Mr.

9  McDonald can certainly address that issue as well, but

10  overall as far as the response that the interrogatories are

11  in the process of being responded to by Nortel is that -- do

12  you take issue with that?

13          MR. MCDONALD:  I do not, Your Honor.

14          THE COURT:  Okay.

15          MR. MCDONALD:  So long as we agree upon a date

16  certain.  I would, however, reserve the right to challenge

17  the completeness of the responses.  I have my doubts as to

18  whether I'll be entirely satisfied with what we see, but at

19  least we'll have a timetable in place.

20          THE COURT:  Okay.  Thirty days is that

21  satisfactory for your purposes?

22          MR. MCDONALD:  If that's what they need, that's

23  what they need. I --

24          THE COURT:  All right.  Thirty days it is then.

25          MS. SCHWEITZER:  The only thing, Your Honor, and

1   we're totally prepared to comply with that.  The only thing

2   I would add is that it's new to us today that Mr. McDonald

3   now wants to start an adversary proceeding and file a

4   complaint.

5            THE COURT:  Yes.

6            MS. SCHWEITZER:  And the only thing I have pause

7   on is that if we're -- if he's going to bring a complaint, I

8   don't want to provide him with verified interrogatory

9   responses.  He already has the raw data, but it makes me

10  feel uncomfortable that we would be providing responses pre-

11  complaint discovery effectively.  So we're prepared -- we'll

12  keep working on these, but I would just put a footnote that

13  if there is going to be complaint and we're going to

14  bilateral discovery, we might ask to submit that answer

15  after the complaint is filed.  I'm not saying we're going to

16  get to a complaint. I'm not saying that we haven't already

17  treated this as an adversary proceeding.  There's a lot of

18  caveats around that.

19            THE COURT:  Yes.

20            MS. SCHWEITZER:  But I would just put that

21  footnote down that it would be unfortunate if the debtors

22  were put in a position of providing pre-complaint discovery

23  in order to help them in their perception put a better

24  complaint forward.

25            THE COURT:  To the extent these answers to

1  interrogatories would go to your affirmative relief, and I

2  think they -- my recollection is they -- it's not clear, but

3  I think that there were aspects that did.  By what date

4  would you planning to file your complaint, Mr. McDonald?  Is

5  it something you're in the process --

6          MR. MCDONALD:   I would believe we would do it

7  before 30 days were up.

8          THE COURT:  Okay.  All right.  That will be then

9  the one sort of caveat --

10          MS. SCHWEITZER:  Right.

11          THE COURT:  -- that we will employ Ms. Schweitzer

12  and Ms. Kim and Mr. McDonald and Ms. Fatell for that matter.

13  And that is that the complaint will first be filed and

14  served prior to the answers to interrogatories.  It will be

15  30 days, whichever, I guess is later?

16          MS. SCHWEITZER:  Right.

17          THE COURT:  Whichever is later.

18          MS. SCHWEITZER:  Right.

19          THE COURT:  The filing of the adversary or the 30

20  days.

21          MS. SCHWEITZER:  Right. Thank you, Your Honor.

22          THE COURT:  Sure.

23          MS. SCHWEITZER:  And I hope that my comment

24  didn't preclude their offer to meet with us and discuss with

25  us before filing any complaint, because it would be nice if

1  we could obviate some of these issues.

2         THE COURT:  Sure.

3         MS. SCHWEITZER:  But I just wanted to raise that

4  so it's not deemed to be a new issue if we raise it in that

5  discussion, but we appreciate that.

6         THE COURT:  Very well, thank you.  That brings us

7  to the ESI's.

8         MR. MCDONALD:  The ESI's, yes.  There's another

9  issue that came up in the context of the interrogatories,

10 but I think I'll wait, Your Honor, for the end --

11        THE COURT:  Okay.

12        MR. MCDONALD:  -- and we can clean up on that.

13 There's also one point that it was at least out of the order

14 that I understood us to be proceeding.  Mr. Coleman's

15 comments about the impact on the Canadian debtors --

16        THE COURT:  Yes.

17        MR. MCDONALD:  -- at least discovery responses.

18 I am not a bankruptcy lawyer.  I know little or nothing

19 about cross border protocols so I wouldn't presume to speak

20 substantively about the process, but just so the Court is

21 aware.  We've taken the position in the discovery in this

22 case, that the debtors have an obligation under the federal

23 rules, the North American debtors, to produce to us all

24 documents and information that are within their possession,

25 custody, and control.  And based off the case law that has

1   interpreted that phrase, we've taken the position that the

2   debtors are obligated to produce information to us if they

3   have the right to obtain that information or those documents

4   from another party.

5           So I believe there are going to be implications

6   here involving the Canadian debtors simply by the fact that

7   the Canadian debtors would -- one of them was the plan

8   sponsor for most of the years.  So it's not clear to us what

9   we have gotten from the Canadian debtors.  The objection to

10  the motion to compel makes some motion, some mention that

11  some documents have been received from the Canadian debtors.

12  It's an issue that's not ripe for purposes of today's

13  hearing, but it is an issue that we will obviously have to

14  explore through depositions or otherwise to understand the

15  completeness of the production that we've gotten.  And to

16  the extent we need to travel north, it's not that far for us

17  being in Maine so.

18          THE COURT:  Certainly.

19          MR. MCDONALD:  Okay.  The ESI issue.

20          THE COURT:  Yes.  Just so it's clear on that last

21  point, Mr. McDonald.

22          MR. MCDONALD:  Yes.

23          THE COURT:  That any discovery of the Canadian

24  entities should proceed through the Canadian Court.  I think

25  that's the point that Mr. Coleman is making and it can't be

1    -- there can't be sort of an indirect production of Canadian

2    documents through the U.S. debtors.  Is that your point, Mr.

3    Coleman?

4              MR. MCDONALD:  Well, yes and no.  I believe, in

5    fact, that there has been an indirect production through the

6    Canadian debtors, if I'm understanding the objection to the

7    motion at this point.

8              THE COURT:  Ms. Kim?

9              MS. KIM:  We have consistently said that the

10   Canadian debtors are not in the U.S. debtors control.  That

11   we did reach out to the Canadian debtors and said if you

12   happen to -- do you have documents relating to the U.S.

13   deferred comp plan.

14             THE COURT:  Yes.

15             MS. KIM:  And they did search their files.  They

16   didn't do an electronic search, but they did search their

17   files and sent us things voluntarily reserving all rights to

18   assist us and we did give that. It was not something that we

19   had -- that we took the position that we had the right to

20   demand of the Canadian debtors, but we did get on a

21   voluntary basis, documents from Canada and then produced

22   those.  So we don't want that voluntary production to then

23   be construed as us taking the position that we had the right

24   to get that -- those documents.

25             THE COURT:  I see.  Okay.  Thank you.

1          MR. COLEMAN:  Your Honor, Ken Coleman again.

2          THE COURT:  Yes.

3          MR. COLEMAN:  There's another sort of further

4    point here, too, that's a bit more subtle and it's not as

5    simple as possession, custody, and control because some of

6    this stuff is property of Canada.

7          THE COURT:  Yes.

8          MR. COLEMAN:  Right.  And we have the Canadian

9    stay that operates.  So to the extent there is any

10   compulsion of information that is owned by Canada that comes

11   from a former Canadian employee or even more obvious

12   discovery directed at Canada, it needs to be the subject of

13   a hearing before Justice Morawetz.

14         THE COURT:  That's -- yes.

15         MR. COLEMAN:  Okay.  And I think we --

16         THE COURT:  I think that's a better --

17         MR. COLEMAN:  -- have an understanding on the

18   obvious point, but I'm not so sure we have an understanding

19   on the more subtle point which is the property issue.

20         THE COURT:  Mr. McDonald?  You know, if you're

21   getting tired of coming back and forth, I don't mind if you

22   sit and use the microphone at the table.

23         MR. COLEMAN:  Sure.

24         MR. MCDONALD:  Thank you, Your Honor.

25         THE COURT:  Whichever you -- some lawyers prefer

1  to stand and whatever is easier for you, Mr. McDonald.

2        MR. MCDONALD:  I'll stand and I may eventually

3  wander over to the podium from time to time as well.  Your

4  Honor --

5        THE COURT:  Are we picking Mr. McDonald up?

6  Good.

7        MR. MCDONALD:  Are we picking up all right?

8        THE COURT:  Yes.

9        MR. MCDONALD:  Yes.  Okay.  Your Honor, I don't

10  believe there's any misunderstanding.  We -- to the extent

11  we're talking about compulsory process to require discovery

12  of any of the Canadian entities, we would not be doing that

13  without the assistance of the Canadian Court.  I was just --

14        THE COURT:  All right.

15        MR. MCDONALD:  -- bringing up the issue that Ms.

16  Kim had clarified regarding a voluntary production of

17  certain documents and that's as far as we pursued it.  We

18  served interrogatories and document requests on the North

19  American entities.

20        THE COURT:  Right.

21        MR. MCDONALD:  To the extent we wanted

22  depositions outside of the United States, we have to go

23  through the proper --

24        THE COURT:  And it appears that perhaps some

25  Canadian entities voluntarily produced some documents.

1          MR. MCDONALD:  Correct.

2          THE COURT:  And those have been now produced to

3   the plan beneficiaries.

4          MR. COLEMAN:  To the extent we can cooperate,

5   we'll cooperate.  And we're good at monitoring things, so

6   we'll be in touch with the debtors and attempt to do that.

7   And if there's an issue, we'll bring it to Your Honor's

8   attention.

9          THE COURT:  Certainly.  Ms. Schweitzer?

10         MS. SCHWEITZER:  Your Honor -- sorry, Your Honor,

11  not to overcomplicate things.  I just know that things get

12  used in other contexts.  This reference to Canadian property

13  versus Canadian possession and control, we all think this is

14  not an issue ripe for today.  We all do agree with the basic

15  general principle of Canada discovery goes to Canada.  But I

16  don't want anything later to be used as prejudicial to the

17  U.S. as what's Canadian property versus U.S. property.  So I

18  think we all have a complete understanding on the general

19  principle.  We, the debtors, as well as, everyone else,

20  reserve our rights on the details, but I think it's

21  sufficient for today's purposes.

22         THE COURT:  I am making no rulings today.

23  (Laughter)

24         THE COURT:  Because really, the matter is not

25  before me and I would want to understand in more particular

1  detail what, you know, what the real facts and issues are

2  before I would make such a ruling.  And so the parties are

3  each I suppose reserving their rights perhaps, but nothing

4  has been --

5          MS. SCHWEITZER:  Yes.

6          THE COURT:  -- determined.

7          MS. SCHWEITZER:  Thank you, Your Honor.

8          MR. COLEMAN:  Thank you, Your Honor.

9          THE COURT:  Certainly.

10          MR. MCDONALD:  Now shall we move on to the search

11  for ESI, Your Honor?

12          THE COURT:  Yes.

13          MR. MCDONALD:  Okay.

14          THE COURT:  You've gotten from six employees the

15  emails thus far.

16          MR. MCDONALD:  Well they've conducted a search of

17  six custodians and the search determined that only three of

18  them had extent electronically stored information.  So we've

19  gotten email searches of the three employees.  And I would

20  add that the debtors have gone beyond that to do an email

21  search from the third party administrator of the plan, an

22  entity known as TBG Mullen.

23          THE COURT:  Okay.

24          MR. MCDONALD:  And apparently, they searched for

25  all of the emails to or from Nortel employees, but while we

1  appreciate that effort, we respectfully suggest that it's

2  not nearly enough.  We're talking about again, a plan that

3  spanned in the Years 1996 to 2008.  A company that we've

4  heard today had tens of thousands of employees, operated

5  globally.  And the debtors have said they're going to six

6  people's email accounts.  I think on its face that is just

7  not consistent with what Rule 26 would require in this

8  instance.

9         The debtors have raised three arguments as to why

10  they believe their search thus far has been adequate and

11  they should not be required to go further.  And I thought I

12  would take a moment to address all three of them in turn.

13         THE COURT:  Yes.

14         MR. MCDONALD:  The first argument which kind of

15  merges into the second in a way is that they've essentially

16  put the rabbit in the hat by saying well, this plan

17  satisfies the top had requirements and, therefore, you don't

18  need this discovery because I think the term was used

19  earlier today, confirmatory discovery.  It kind of goes back

20  to the theme I mentioned at the beginning of this hearing

21  that the debtors basically are telling us what we need

22  because they firmly believe that this is a top hat plan and

23  we firmly believe that we will prove otherwise.

24         The elements as Ms. Kim properly stated that must

25  be satisfied to establish that a term is -- that a plan is a

1   top hat plan is that it must be one, unfunded.  And two,

2   that participation must be limited to a select group of

3   highly compensated or management employees.  We believe that

4   the debtors whole approach to this case is entirely feculent

5   based on an incorrect application of the law to the facts.

6           We went into some detail in our motion papers as

7   to what the appropriate tests are.  But the debtors have

8   basically taken the position that this unfunded and we only

9   made it available to less than 10 percent of the population.

10  And oh, by the way, these people earned a lot of money,

11  therefore, this has got to be a top hat plan and you don't

12  need any more.

13          I agree with Ms. Kim at least on one point that

14  this is not the appropriate forum, the time and place to

15  argue whether this is or is not a top had plan.

16          THE COURT:  Absolutely, right.

17          MR. MCDONALD:  But suffice it to say that we

18  firmly believe otherwise.  And based on the limited

19  discovery that we've seen to date and the quantitative and

20  qualitative factors that must be evaluated, that we are

21  going to be able to prove that this not a plan that complies

22  with the top hat requirements.  And we need all of the

23  relevant information to enable us to make that

24  determination.

25          THE COURT:  What are the emails?  What would you

1   hope they would reveal?

2           MR. MCDONALD:  I again will relate to prior

3   experience.

4           THE COURT:  Yes.

5           MR. MCDONALD:  In those cases, what was done is

6   there was an identification of the employees that worked in

7   the benefits group.

8           THE COURT:  Right.

9           MR. MCDONALD:  And there was an identification of

10  those employees whose work touched the deferred compensation

11  plan.  The debtors want to limit this search to those who

12  were primarily responsible for the day to day operations of

13  the plan.  But we know based on the emails that we've seen

14  to date, that many other people had a touch on this stuff

15  and we want to be able to say what those people sent and

16  received that deal with the plan.

17          What are the kinds of things that you see in

18  those emails?  Well, you see people sometimes questioning

19  whether or not they're in compliance with the top hat

20  requirements.  You see debate going back and forth about

21  well should we let so and so into the plan even though he

22  doesn't mean the total compensation requirement because he's

23  the cousin of the CEO.  I mean, those are the kinds of

24  discussions that we have seen in other cases and expect to

25  see in this case.  And it's not going to be simply limited

1   to the emails of those that had primary responsibility for a

2   particular plan year.

3          So we -- there's -- I don't think it's a stretch

4   to say that most civil litigation these days is made or

5   broken based on email communications between the

6   participants in the drama.  And we think that there's must

7   more to be seen from the secondary and tertiary level

8   players in the benefits department at Nortel and that's what

9   we would like to see.

10          THE COURT:  All right.  How many people roughly

11   does that constitute?  I --

12          MR. MCDONALD:  We don't know yet.  In our motion,

13   we identified 14 people who through a rather cursory review

14   of email that we had received to date, their names popped up

15   on very important communications.  Some of the other people

16   that we identified in the motion, their names showed up on

17   the privilege log and we suggested it's rather ironic that

18   people are senders, recipients, or carbon copies on

19   documents that are worthy of protection on the

20   attorney/clinic privilege basis.  And yet the debtors have

21   no obligation to search those people's email accounts for

22   other non-privileged information.  We think that's a given.

23   Those people's emails accounts should be searched.

24          So what we would like to do is to have a

25   discussion about who worked in the benefits department

1    during the relevant periods of time.   Identify those people

2    who we reasonably expect would have relevant information.

3    And then have a search done of those people's email

4    accounts?  We don't --

5              THE COURT:  And you would not take an all or

6    nothing approach with respect to this?

7              MR. MCDONALD:  No, no.  There has to be

8    compromise on this one.  We understand that, but we've never

9    gotten to the point of compromise.

10              THE COURT:  All right.

11              MR. MCDONALD:  I just wanted to mention another

12   issue that's brought up in the objection to the motion which

13   is that we shouldn't go beyond what the debtors have done so

14   far in searching these three email accounts because even if

15   we, the beneficiaries were to win the top hat argument,

16   we're still going to lose the war because based on Judge

17   Walrath's recent opinion in the *Washington Mutual* case, the

18   debtors are never going to establish any better than that of

19   a general unsecured creditor.

20              Your Honor will know from reading the *WaMu* case

21   that that was a case in which participants in a deferred

22   compensation claim were making claims against the plan

23   administrator for pre-petition conduct.

24              MR. MCDONALD:  Yes.

25              MS. KIM:  But the critical and defining

1    distinction between that case and this case is that the *WaMu*

2    deferred compensation plan was a top hot plan.  All of the

3    parties agreed it was a top hat plan and that's the reason

4    that Judge Walrath would not impose a constructive trust

5    over the rabbi trust in that case.

6             This is an entirely different case where we are

7    contesting whether or not the deferred compensation plan

8    satisfied the top hat requirements.  And if we win, then

9    that plan is going to be subject to all of ERISA's

10   substantive provisions, including on alienation, non

11   [indiscernible] provision, the exclusive benefit rule.  And

12   in this case, if we are correct that this is not a top hat

13   plan, then the assets of the rabbi trust cannot and will not

14   become property of the bankruptcy estate.  A constructive

15   trust will be imposed over those monies for the exclusive

16   benefit of the beneficiary.  So *WaMu*, it's an entirely

17   distinguishable case and doesn't serve the purpose here.  I

18   mean, if they were right on *WaMu* why are we engaging in

19   discovery in any event?

20             The last point that --

21             THE COURT:  That's what they would say.

22   (Laughter)

23             MR. MCDONALD:  I think that horse is out of the

24   barn, Your Honor.

25             MS. SCHWEITZER:  Pretty hard to believe, right.

1              MR. MCDONALD:  The last point that I wanted to

2    make on the burdensomeness issue.

3              THE COURT:  Yes.

4              MR. MCDONALD:  The revisions to the federal rules

5    a couple of years ago made a specific provision for relief

6    where electronic discovery imposed an undue burden, Rule

7    26(b)(2)(b).

8              THE COURT:  Yes.

9              MR. MCDONALD:  It's their burden to show that the

10   requested ESI is not reasonably accessible because of undue

11   burden and expense.  And we read the store declaration

12   attached to the objection as making it pretty clear that

13   those email accounts are readily retrievable.  Once we

14   identify who the custodians are and in the parlance of the,

15   you know, the recently ESI discovery cases, we need to

16   identify those people who are the key custodians.

17             THE COURT:  Yes.

18             MR. MCDONALD:  Once we identify those people, all

19   that has to have happened is the names are sent to the

20   Nortel IT department.  They do a search to see whether or

21   not there's a hard drive or a backup tape.  And if there is,

22   they retrieve it, they upload it to the debtors' counsel and

23   then a review takes place.  So we don't think that there's

24   any issue about whether or not the stuff is reasonably

25   accessible or not.

1          THE COURT:  One of the issues of course and

2   problems is it's not an operating entity any longer and that

3   always creates problems for production such as this.

4          MR. MCDONALD:  And it's not the first time that

5   we've heard that excuse, but our reply, Your Honor, would be

6   that just because they are a debtor in bankruptcy does not

7   relieve them of the obligation to comply with the discovery

8   rules.  From --

9          THE COURT:  Oh, no, I don't -- I agree with that.

10  And clearly, I'm not suggesting that.  I think it just goes

11  to the burdensomeness concern.

12          MR. MCDONALD:  Yes, yes.  But again, we don't

13  believe that there is an undue burden to simply identify the

14  custodians and make the request and upload the information.

15          THE COURT:  All right.  Thank you, Mr. McDonald.

16          MR. MCDONALD:  Thank you.

17          THE COURT:  Let me hear from Ms. Kim on this.  It

18  sounds like maybe the first step is to talk about -- or to

19  identify and discuss who the what do I call them, the ESI

20  victims or whatever are --

21  (Laughter)

22          THE COURT:  -- in this particular case.

23          MS. KIM:   I mean, Your Honor, the -- I mean, to

24  backup a little bit first.

25          THE COURT:  Yes.

1              MS. KIM:  The debtors produced a large volume of

2    documents.  It was ESI, but there was also the debtors went

3    to their central HR records and pulled all of those

4    documents and produced the responsive ones.  We pulled hard

5    cop files from storage facilities that were all across the

6    country and in Canada and produced responsive documents from

7    those files.  We produced all the agreements and their

8    drafts as you heard earlier.  We asked the Canadian debtors

9    to produce their documents voluntarily and they did

10   voluntarily produce their documents.  And Mullen TBG

11   searched their records and then also did an email search of

12   their own email system.

13             And then we did production of ESI relating to the

14   plan primes.  Now the way that this company that the U.S.

15   debtors administered their plan and, in fact, administered

16   most of their benefits was there was one person whose sole -

17   - who's job it was to administer all aspects of the plan.

18   So all of the decisions about who went into the plan,

19   whether to -- what the determination, the threshold

20   eligibility requirements were for allowing somebody into the

21   plan, and how that plan was administered on a day to day

22   basis, all of those questions which were questions that Mr.

23   McDonald said are the key questions, that -- those decisions

24   were all made by the plan prime.  One person at any given

25   time, that was their responsibility.

1          THE COURT:  And presumably, that person would

2    have either initiated or received or been copied on

3    virtually every email.

4          MS. KIM:  Right, exactly.  And so when we asked

5    the company is there anybody else who would have non-

6    duplicative information that would be relevant about the

7    plan, we were told there wasn't.  The only other place that

8    really it made sense to look was Mullen which is why we

9    asked Mullen to produce their emails and they did.

10          We -- the production of ESI is not -- it's

11    expensive.

12          THE COURT:  Yes.

13          MS. KIM:  It's even if you have the hard drives

14    stored in a central location and you can restore them, it

15    takes time to restore those.  The IT people and at this

16    point, there's only I think two people or maybe three people

17    at the debtors who are able to do this, have to spend time

18    to be able to restore those hard drives.  And then

19    obviously, once you restore the hard drive, you don't just

20    hand that hard drive over, you have to get it into a system.

21    That takes money and then you need to review --

22          THE COURT:  Review them.

23          MS. KIM:  -- them because we would not be doing

24    our job if we were not reviewing the documents first before

25    producing the documents.

1          THE COURT:  That's right.

2          MS. KIM:  And so -- and because of that whole

3   process, that's why up until now having produced all of the

4   documents that I just listed and the -- and reviewing the

5   electronic documents which we've produced from the

6   custodians who are the most likely to have relevant

7   information, that's what has caused the debtors at this

8   point well over $1 million and 5,000 hours of legal hours,

9   legal personnel professionals, and the company's very small

10  work staff.  So and that's to be able to get the documents

11  that were the most relevant, the most responsive, the really

12  what the ad hoc group was looking for.

13          And so if at this point they have the documents

14  that would show -- that would have the eligibility

15  requirements and who was allowed into the plant and who

16  wasn't allowed into the plan, Mr. McDonald has said it is --

17  as a justification for needing more emails is essentially

18  boils down to they're wanting to see what else is out there

19  to see if there is anything there that might show something

20  that our -- the emails that we have produced so far and all

21  the documents that we have produced so far haven't been able

22  to show.

23          And that's really -- that just -- it's a fishing

24  expedition. It's not permitted by the federal rules.  And

25  particularly, in this case, where the burden that the

1  debtors would have to undergo in order to be able to

2  undertake that kind of a search is great.  And particularly,

3  when we don't have people really left at the company who are

4  able to do this and spend all of their time doing this, you

5  know, that burden versus likely benefit test is really the

6  key one that this Court should be considering.  And I think

7  that everything that you've heard shows that the likely

8  benefit of any kind of discovery really has nothing to -- is

9  far outweighed by the burden.

10             THE COURT:  Remind me who the prime employee was

11  in charge of the plan.

12             MS. KIM:  There were six at any given time.

13             THE COURT:  And it was all six?

14             MS. KIM:  Yes.

15             THE COURT:  Over the years?

16             MS. KIM:  No, over the years, sorry, yes.

17             THE COURT:  Right.

18             MS. KIM:  So there were from, you know, from the

19  beginning of the plan for a few years and then every few

20  years it might have switched off to somebody else.  And

21  those six people were -- are in our papers.

22             THE COURT:  Yes.

23             MS. KIM:  But -- and then it's also worth noting

24  that there were some years where there would be people who

25  went -- who were plan prime, then wasn't a plan prime and

1  then came back to being a plan prime.  And during that time

2  when they might not have actually been the plan prime, they

3  still might have had some documents.  And so those documents

4  we obviously didn't withhold just because they weren't the

5  plan prime.

6          All that said, you know, we've looked at the --

7  an actually, I only saw nine people.  There were eleven

8  people -- or sorry, eleven people, but two of them I think

9  were people we've already looked for.  Nine additional

10  individuals that were identified in the objection.  I mean,

11  in the motion to compel.  I would note three of them are

12  employed by Canada or were employed by Canada so there's all

13  the issues that we just previously discussed.  One was

14  employed by Mullen TBG and so we produced their documents.

15  There are two lawyers.  One who didn't really have anything

16  to do with the plan.  And if you look at the privilege log

17  that was attached to the motion to compel, you'll see that

18  he pops up in one email.  And then in any event, our -- it

19  would be our belief that -- and understanding, that all of

20  those documents would be privileged.

21          So again, you have to weigh the burden of

22  producing, of reviewing those documents.  And in an event,

23  these are all documents that if you look at them, it's clear

24  from the documents that were attached to the motion, that

25  these are the additional people, the non-plan primes, the

1  people we haven't already searched for are people who at

2  most needed information about the plan because they were

3  getting inquiries.  And so this is all -- they're not people

4  who actually had information about the plan.  And certainly

5  not people who were administering the plan or dealing with

6  questions about who was eligible, who could go into the

7  plan.

8          All of that said, while we haven't been

9  approached by the ad hoc group about additional people, we

10  had specific individuals.  And, you know, they do have 178

11  clients who were part of the plan and would have known who

12  they would have spoken with about the plan.  So if there are

13  specific individuals who are employed by the benefits group

14  who they really do think have information about the plan and

15  would have had emails that would be relevant, we're willing

16  to speak about that and we always have been.

17          THE COURT:  All right.  Thank you, Ms. Kim.  Mr.

18  McDonald, responses?

19          MR. MCDONALD:  I do, Your Honor.  If I understand

20  their position, it was only appropriate to search for the

21  electronically stored information of six individuals because

22  in any given year, only one individual was primarily

23  responsible for the day to day administration of the plan.

24  But what's curious about that position, Your Honor, is for

25  three of the people that they've identified, they've said

1    there is no electronic information for those people.  We say

2    that points out the need to go farther than the six because

3    if for a number of plan years the person that they say is

4    going to have the real information, we can't get their

5    email, we then need to go to the secondary sources.  And it

6    needs to go beyond simply the people who were involved in

7    the other plan years.  Again, we think that what needs to be

8    done is that the people who were secondarily and tertiarily

9    involved in the plan have to have their email records looked

10   at as well.

11          I also want to comment on the fact that, you

12   know, this issue has arisen because it's an E -- in the E

13   discovery context.  And again, I'll come back to at least my

14   understanding of the debtors' position here.  It doesn't

15   seem to me that the retrieval of electronic information is

16   something that is burdensome and costly here.  If I'm

17   reading this right, what's costly is the attorney review

18   time to go through those records.  And, you know, the world

19   of electronic discovery didn't change the need for attorney

20   review.  If we were having this discussion 15 years ago,

21   we'd be talking about going to the file drawers of more than

22   six people.  Well we're now just going to the electronic

23   file drawers.  The argument that, Your Honor, it takes a lot

24   of time to review all of those people's documents, that

25   wasn't a sufficient excuse.  And it shouldn't be a

1   sufficient excuse in this case.  What the ESI exception in

2   Rule 26 talks about is when it's really expensive to extract

3   the data from archived materials --

4            THE COURT:  Yes.

5            MR. MCDONALD:  -- backup tapes and things like

6   that.  We're talking about finding a name and pressing a

7   button here.  And then the debtors' counsel would have to

8   review them, but there's no extraordinary expense there

9   because this happens to be electronically stored

10  information.  That's what 26(b)2(b) talks about, not the

11  attorney review time.  Thank you.

12           THE COURT:  Thank you, Mr. McDonald.  Are we

13  talking about pushing a button here, Ms. Kim?

14           MS. KIM:  No, we're not, Your Honor.  I mean,

15  first, in order to restore the hard drive, there is a cost

16  involved.  That cost is people cost.  There are people,

17  they're not very many.  There are very few people at the

18  company now who are able to do this.  They have to take the

19  physical hard drive.  You can't just take the hard drive and

20  then look in it and see what's in there.  You have to take

21  the hard drive, stick it into a computer and take some time

22  to be able to retrieve the information and that takes time

23  and there's not a lot of people who can do that.  But then

24  on top of that, once you've done that, you have to take all

25  of that information and put it into a platform that people

1  can then review.  And I don't want to bore you with the

2  details of that, but there's a system provider who's able to

3  do that, a vendor who's able to do that and we have to pay

4  that vendor money to be able to take that money, put it onto

5  its -- their platform and allow it to be in a forum that the

6  lawyers can then review.  But so all of that costs money.

7          And then obviously, Your Honor, there's a

8  difference between going into a file cabinet and looking at

9  the files that are clearly relevant to whatever you're

10  looking for and looking at somebody's emails who at best

11  might have been tangentially involved in a plan and looking

12  for the few emails that might be there that might have

13  anything to do with it.

14          The -- you know, we had -- we negotiated with the

15  ad hoc group on a list of search terms that were pretty

16  broad search terms that we then generated and there were a

17  lot of documents that may have had some of the search terms

18  in it like eligible, but not have that -- just because a

19  document says the word eligible, it doesn't mean that it has

20  something to do with the plan that we're talking about.  So,

21  you know, it's not just a -- it's not a simple matter of

22  pushing a button.  And it's not a simple matter of us just

23  looking at it to, you know, a few documents to make sure

24  that they're all good.

25          And the other thing I would note is that it is

1    true that we only -- of the six plan primes who are

2    responsible for the plan at any given time, there were three

3    custodians who we didn't have electronic information for.

4    But we didn't just say, oh, I'm sorry that's it.  We went to

5    Mullen TBG and we asked them to give us all of their

6    responsive documents so that we could cover any gaps in the

7    production that might have been there.  And so at this

8    point, you know, it's not -- and like I said before, there

9    were people -- some of the plan primes went back and forth

10   between the plan and other responsibilities and so who also

11   had information.  So there aren't at this point gaps of that

12   type in our production.

13          And so we're at a point where we have spent many

14   -- much -- a lot of time and a lot of money to be able to

15   produce these documents.  And the burden that we would have

16   to undertake to be able to see if there might be something

17   else out there, some gem is just not worth the cost to the

18   debtors and the expense.

19          One other thing that I had forgotten to discuss.

20   Mr. McDonald had talked about the *WaMu* case and Judge

21   Walrath's decision.

22          THE COURT:  Yes, yes.

23          MS. KIM:  And I don't want to belabor at this

24   point and then get into it because it's not really at issue

25   here.  But I would note that that's -- that case is a case

1  where there was a top hat plan and there was an ERISA

2  violation as to how that top hat plan was administered.  It

3  was a top hat plan.  There was a finding there was a top hat

4  plan, but there it was an unfunded plan and because it was

5  an unfunded plan, Judge Walrath said that money is not money

6  that you can use to satisfy this ERISA -- to reform this

7  ERISA violation.  The same thing here.  We have an unfunded

8  plan.  And so if there was an ERISA violation in terms of

9  how we administered the top hat plan, that there is no case

10  that we have found.  The ad hoc group has not identified any

11  cases where the remedy for the -- for the -- for an ERISA

12  violation relating to the administration of a top hat plan

13  would take an unfunded plan and a trust that was a rabbi

14  trust that was unfunded and transform that into a funded

15  trust.

16            So I would just note that.  Obviously, that's not

17  for here, but I just couldn't let that stand.

18            THE COURT:  The parties are softening me up for

19  later.

20  (Laughter)

21            THE COURT:  Let me say this.  And I appreciate

22  that Mr. McDonald and on behalf of his clients would like

23  every document, you know, that could be produced.  And I

24  respect that as an advocate.  But I also premise my ruling

25  on the observation that the debtors are really acting in

1    good faith in their production.  I've read the declarations.

2    I've heard the arguments in the volume of documents and the

3    amount of effort and expense that the debtors have expended

4    here.  And I find at least for the moment based upon further

5    evidence, that the information that's been produced relating

6    to the electronic storage information is complete compared

7    to the burden and the expense necessary to satisfy the plan

8    beneficiary's effort to want more.  And there's always more.

9            I think Mr. McDonald, you'll have an opportunity

10   to take depositions.  And if and when names arise or

11   information arises that you think requires further

12   electronic storage information, I would certainly hear you

13   at that time, but based upon what I've heard thus far, I

14   think particularly with the plan primes and the TBG Mullen

15   production, that -- I am satisfied that that production

16   thereby has been complete at this time.  Subject again to

17   your being able to demonstrate at a later date that there

18   really is more information that should or could have been

19   produced.

20           And so I will, I will deny the motion to compel

21   at this time.  Ms. Kim?

22           MS. KIM:  Thank you, Your Honor.  There is just

23   one housekeeping matter which is that the debtors had

24   attached three declarations to --

25           THE COURT:  Yes.

1          MS. KIM:  -- the objection.

2          THE COURT:  Yes.

3          MS. KIM:  We just wanted for completeness sake

4   and for the record's sake to offer those declarations into

5   evidence.

6          THE COURT:  Any objection, Mr. McDonald at this

7   point?

8          MR. MCDONALD:  No, Your Honor, but we reserve the

9   right to object to them to the extent they're used any

10  subsequent proceedings in this matter.

11         THE COURT:  Well they are admitted certainly

12  purposes -- I think you mean if you want to impeach them at

13  a later date or something of that --

14         MR. MCDONALD:  Yeah, absolutely, yes.

15         THE COURT:  Yes.

16         MR. MCDONALD:  Yes.

17         THE COURT:  Of course.  All right.  They're

18  accepted into evidence.

19         MR. MCDONALD:  Your Honor, a couple of last

20  points --

21         MS. SCHWEITZER:  Go ahead.

22         MR. MCDONALD:  -- on the motion.

23         THE COURT:  Yes, yes.

24         MR. MCDONALD:  Will you be issuing an order that

25  encapsulates all --

1          THE COURT:  I'll issue an order.

2          MR. MCDONALD:  -- of your rulings today?

3          MS. SCHWEITZER:  Okay.

4          THE COURT:  Unless the debtors want to propose

5  one and submit it to you for your review first?

6          MS. SCHWEITZER:  Oh, we're happy to propose, but

7  otherwise we didn't know if you would prefer to just order

8  the record -- we're happy to do it either way.  I don't --

9          THE COURT:   I think it would be well to have a

10  written order --

11          MS. SCHWEITZER:  Okay.

12          THE COURT:  -- which is a little more precise.

13  Ms. Kim, do you think you could take a crack at that?

14          MS. KIM:  Yes, absolutely, Your Honor.

15          THE COURT:  All right.  All right.  If you need

16  assistance, obviously, Mr. McDonald will assist you.

17  (Laughter)

18          MR. MCDONALD:  I'll try if and when appropriate.

19          THE COURT:  And then I'll look and if there are

20  disputes as to the form of order and you want to submit an

21  alternative form of order or get me on the telephone and

22  talk it through, that's fine, too.

23          MS. SCHWEITZER:  Great.

24          MS. KIM:  Yes, we'll do so, Your Honor.

25          MR. MCDONALD:  Thank you, Your Honor.  Your

1  Honor, may I indulge you for another moment or so?  As long

2  as we're here, it's another issue that we had discussed

3  before the proceedings today.  I was going to bring it up in

4  the context of the redaction of the names and addresses, but

5  we continue to be we believed stymied by the production of

6  information that's not in a usable format to us.  And the

7  lynchpin to the top hat analysis is actual compensation.  We

8  covered that in various permutations here today.  I thought

9  it would be helpful to show Your Honor the kind of document

10  that we're getting.  And to hopefully be able to reach some

11  sort of an agreement on what we can expect to get in the

12  future because right now we continued to be hamstrung on

13  this essential issue in the case.  So if I may approach the

14  bench, I just wanted Your Honor to take a peek at the kind

15  of information we're getting.

16          THE COURT:  Have you discussed this issue at this

17  point with Nortel?

18          MR. MCDONALD:  We discussed it before the hearing

19  today, yeah.

20          THE COURT:  Well I don't know that that's a very

21  -- you know, I think discovery has to be a more cooperative

22  venture than this.  And I think it's going to require a

23  little more discussion before I get involved in a discovery

24  dispute.

25          MR. MCDONALD:  Okay.

1          THE COURT:  And I don't want to really be making

2    sort of advisory rulings without the benefit of your further

3    discussions and my further opportunity to review the parties

4    positions.

5          MR. MCDONALD:  I just did not want to be

6    pestering the Court with serial motions to compel --

7          THE COURT:  I understand.

8          MR. MCDONALD:  -- if weren't able to work it out.

9    So I just thought if we were here today, perhaps we could

10   take it up.

11         THE COURT:  Okay.

12         MR. MCDONALD:  But I appreciate Your Honor's

13   thoughts.

14         THE COURT:  Absolutely, certainly, Mr. McDonald.

15   Anything further?  Oh, Ms. Kim, you were -- did you take

16   care of the housekeeping matter already?  Yes, of course you

17   did.

18         MS. KIM:  Yes, I did, Your Honor, thank you.

19   (Laughter)

20         THE COURT:  All right.  Anything further,

21   Counsel?

22   (No audible response.)

23         THE COURT:  All right.  Thank you, all.  And we

24   will stand in recess.

25         ALL:  Thank you, Your Honor.

1          THE COURT:  And good day to all of you.

2     (Whereupon, at 1:27 p.m., the hearing was adjourned.)

3

4                         CERTIFICATION

5          I certify that the foregoing is a correct

6     transcript from the electronic sound recording of the

7     proceedings in the above-entitled matter.

8

9

10     _____          23 August 2011
11     Traci L. Calaman, Transcriber                Date

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **26(b)(2)(b)(1)** 97:7 | | **administered**(6) 1:6 99:15 99:15 99:21 109:2 109:9 | | **all**(138) 5:4 5:6 5:13 6:10 7:1 7:6 7:13 12:23 12:23 13:11 15:19 17:9 17:10 21:16 23:21 25:6 25:8 25:18 25:20 28:11 29:3 30:11 30:19 31:1 31:5 34:21 38:25 40:21 40:25 43:10 43:12 43:16 46:21 46:24 49:5 49:16 50:2 51:21 52:25 53:5 53:20 54:8 54:17 54:18 54:20 54:23 56:18 57:1 58:4 58:6 58:7 58:10 59:7 59:13 59:13 60:9 61:24 62:9 62:12 62:15 63:5 64:5 65:3 66:6 66:9 66:16 66:17 69:3 69:15 69:16 69:23 69:24 71:2 72:21 73:7 73:12 73:14 75:20 76:10 76:17 78:13 79:9 79:9 80:3 80:20 81:4 81:24 83:8 84:23 86:17 88:7 88:14 89:13 89:14 89:18 90:25 91:12 92:22 94:10 95:5 95:10 96:2 96:9 97:18 98:15 99:3 99:5 99:7 99:17 99:18 99:22 99:24 101:3 101:20 102:4 102:13 103:6 103:12 103:19 103:23 104:3 104:8 104:17 105:24 106:24 107:6 107:24 108:5 111:17 111:25 112:15 112:15 114:20 114:23 114:23 114:25 115:1 | | **and**(301) 4:4 4:6 4:7 4:8 4:9 4:11 4:15 5:2 5:12 5:13 5:14 5:17 5:18 6:3 6:3 6:6 6:15 6:20 6:23 6:25 6:25 7:1 7:7 7:11 7:14 7:17 7:18 7:20 8:1 8:4 8:15 9:2 9:5 9:8 9:14 9:19 9:21 9:22 10:2 10:5 10:9 10:10 10:13 10:18 10:20 10:23 10:24 11:1 11:3 11:17 11:19 12:11 12:13 12:23 13:2 13:11 13:15 13:17 13:20 13:21 13:22 13:24 14:5 14:10 14:10 14:11 14:12 14:13 14:16 14:24 15:1 15:2 15:5 15:9 15:15 15:18 16:3 16:4 16:7 16:8 16:14 16:23 16:24 17:3 17:12 17:14 17:14 17:15 17:23 18:2 18:7 18:9 18:10 18:15 18:15 18:24 19:6 19:10 19:17 19:18 20:2 20:3 20:4 20:5 20:6 20:10 20:10 20:11 20:12 20:14 20:15 20:19 20:19 20:22 20:23 20:23 21:1 21:2 21:7 21:11 21:11 21:12 21:17 21:23 22:4 22:6 22:13 22:17 22:18 22:22 22:23 22:25 23:1 23:3 23:4 23:7 23:11 23:11 23:17 23:24 24:3 24:4 24:12 24:18 24:20 24:21 24:22 25:1 25:8 25:9 25:9 25:11 25:18 26:7 26:15 26:20 26:25 27:2 27:8 27:18 27:25 28:2 28:3 28:4 28:8 28:8 28:12 28:16 28:25 29:11 30:4 30:7 31:16 31:18 31:24 32:4 32:11 32:16 32:21 32:23 33:1 33:6 33:14 33:16 33:18 34:2 34:4 34:8 34:10 34:13 34:21 34:22 35:1 35:2 35:3 35:4 35:10 35:10 35:15 35:24 36:4 36:5 36:10 36:11 37:9 37:10 37:11 37:19 37:20 37:23 37:24 37:25 38:2 38:7 38:8 38:9 39:2 39:7 39:17 39:22 40:1 40:2 40:6 40:7 40:12 40:17 41:1 41:6 41:20 41:24 42:7 42:10 42:24 43:4 43:4 43:6 43:7 43:9 43:10 43:14 43:16 43:18 43:21 43:24 43:25 44:2 44:3 44:4 44:7 44:12 44:13 44:24 44:25 45:1 45:3 45:4 45:7 45:8 45:9 45:10 45:16 45:23 45:24 46:10 46:13 46:16 46:23 47:8 47:9 47:11 47:17 47:18 47:24 47:25 48:10 48:16 48:21 48:25 49:10 49:11 49:15 49:16 49:19 49:24 50:3 50:10 50:17 50:20 50:21 50:23 50:25 51:6 51:11 51:18 51:25 52:2 52:3 52:7 |
| **26(b)(2)(b)(1)** 106:10 | | **administering**(1) 104:5 | | | | | |
| **90-plus**(1) 42:21 | | **administration**(4) 52:16 54:9 104:23 | | | | | |
| **a.m**(4) 1:15 4:1 31:10 31:10 | | **administrator**(2) 90:21 95:23 | | | | | |
| **ability**(5) 9:23 13:3 48:20 49:24 72:16 | | **administrators**(8) 2:17 7:6 8:3 9:6 9:8 19:24 20:6 45:9 | | | | | |
| **able**(57) 7:23 11:3 18:13 18:17 19:7 42:8 48:21 49:12 50:9 50:21 50:22 51:5 51:15 51:16 52:24 58:2 58:6 58:17 58:21 58:22 59:12 60:18 61:1 61:9 61:15 61:19 62:12 62:21 63:15 73:5 73:8 73:8 74:20 78:19 78:21 78:24 81:1 81:3 81:5 92:21 93:15 100:17 100:18 101:10 101:21 102:1 102:4 106:18 106:22 107:2 107:3 107:4 108:14 108:16 110:17 113:10 114:8 | | **admissions**(1) 4:13 | | | | | |
| **about**(66) 10:6 11:24 12:6 17:14 22:12 28:21 30:24 31:17 31:17 40:11 40:15 43:14 46:16 46:19 46:24 47:10 47:24 49:2 51:14 53:21 54:4 55:10 55:22 56:10 56:13 57:25 58:2 59:3 59:22 59:23 60:21 61:19 61:25 62:12 63:5 63:15 66:25 68:10 70:2 80:8 84:15 84:19 84:20 88:11 91:2 93:20 94:25 97:24 98:18 99:18 100:6 104:2 104:4 104:6 104:9 104:12 104:14 104:16 104:24 105:21 106:2 106:6 106:10 106:13 107:20 108:20 | | **admitted**(1) 111:11 | | | | | |
| | | **advanced**(3) 17:13 17:13 17:15 | | | | | |
| | | **adventures**(1) 12:13 | | | | | |
| | | **adversary**(5) 38:2 40:16 82:3 82:17 83:19 | | **allegedly**(1) 47:11 | | | | |
| | | **advisable**(1) 33:13 | | **allen**(2) 2:43 64:11 | | | | |
| | | **advised**(1) 32:21 | | **allocated**(2) 9:1 9:3 | | | | |
| **above**(2) 67:19 68:4 | | **advisory**(1) 114:2 | | **allocation**(16) 6:21 7:14 7:22 8:23 8:23 9:9 9:18 12:22 12:25 13:5 15:16 27:4 27:7 32:18 33:3 34:25 | | | | |
| **aboveentitled** (1) 115:7 | | **advocate**(1) 109:24 | | | | | |
| **absent**(1) 48:18 | | **affect**(1) 60:10 | | | | | |
| **absolutely**(6) 36:16 65:5 92:16 111:14 112:14 114:14 | | **affectionately**(1) 41:19 | | **allow**(8) 8:7 9:25 11:1 19:1 19:8 20:24 62:25 107:5 | | | | |
| | | **affidavit**(3) 32:12 33:4 33:23 | | | | | |
| | | **affiliate**(1) 21:9 | | **allowed**(6) 16:13 16:24 55:23 58:20 101:15 101:16 | | | | |
| **abused**(1) 43:1 | | **affiliates**(1) 65:2 | | | | | |
| **acceptable**(1) 80:4 | | **affirmative**(6) 37:22 38:3 38:12 38:17 40:12 83:1 | | **allowing**(3) 18:11 18:25 99:20 | | | | |
| **accepted**(1) 111:18 | | | | **allows**(6) 9:6 9:8 16:6 17:5 52:9 80:9 | | | | |
| **accessible**(2) 97:10 97:25 | | **after**(6) 8:9 16:5 30:18 54:23 79:22 82:15 | | **almost**(1) 75:16 | | | | |
| **accommodate**(1) 54:1 | | **again**(24) 15:15 15:19 20:14 20:21 27:3 41:16 42:11 44:6 48:23 50:1 51:9 51:24 64:12 68:7 68:19 69:1 87:1 91:2 93:2 98:12 103:21 105:7 105:13 110:16 | | **alone**(1) 35:19 | | | | |
| **accordance**(1) 32:9 | | | | **along**(2) 14:16 42:17 | | | | |
| **accordingly**(2) 24:22 35:3 | | | | **already**(14) 21:18 26:15 26:24 38:4 47:5 68:20 71:15 74:15 79:14 82:9 82:16 103:5 104:1 114:16 | | | | |
| **accounts**(15) 7:16 8:8 8:11 8:13 8:14 18:3 20:16 23:3 23:6 91:6 94:21 94:23 95:4 95:14 97:13 | | **against**(9) 15:16 28:5 47:7 50:5 60:14 60:20 63:9 68:21 95:22 | | | | | |
| | | **agenda**(3) 4:25 5:1 35:23 | | | | | |
| | | **agent**(2) 8:16 9:25 | | | | | |
| | | **agents**(1) 65:1 | | **also**(31) 7:11 8:22 14:7 16:12 17:7 20:20 22:20 23:1 26:20 29:4 29:21 29:22 30:16 33:4 33:7 33:24 37:14 47:4 48:20 49:14 56:19 63:13 70:7 76:18 84:13 99:2 99:11 102:23 105:11 108:10 109:24 | | | | |
| **accurate**(1) 29:6 | | **aggregated**(1) 63:22 | | | | | |
| **achieved**(1) 6:8 | | **ago**(3) 53:8 97:5 105:20 | | | | | |
| **acronym**(1) 42:12 | | **agree**(9) 9:17 10:21 10:22 10:24 23:10 81:15 89:14 92:13 98:9 | | | | | |
| **across**(1) 99:5 | | | | | | | |
| **acting**(1) 109:25 | | **agreed**(10) 13:6 14:22 22:22 23:4 29:6 29:10 49:18 53:15 79:24 96:3 | | | | | |
| **action**(1) 69:22 | | | | **alternately**(1) 41:19 | | | | |
| **actions**(1) 69:22 | | **agreeing**(3) 23:7 23:8 68:21 | | **alternative**(1) 112:21 | | | | |
| **active**(2) 11:24 48:16 | | **agreement**(38) 6:6 9:20 10:19 11:2 11:19 12:10 12:17 12:18 13:3 13:9 13:16 14:1 14:4 14:19 14:20 14:24 15:4 15:4 15:7 15:17 15:24 16:5 16:14 17:3 17:18 18:12 19:18 24:16 27:5 27:9 33:5 33:7 33:15 33:17 34:18 38:16 113:11 | | **although**(3) 37:15 | | | | |
| **activities**(1) 33:14 | | | | **always**(12) 10:2 53:25 54:25 63:2 63:19 63:20 75:16 79:20 79:21 98:3 104:16 110:8 | | | | |
| **activity**(1) 77:2 | | | | | | | |
| **actual**(5) 5:9 16:19 66:17 77:24 79:16 113:7 | | | | **amend**(1) 80:1 | | | | |
| **actually**(17) 9:1 9:17 21:18 47:25 51:14 61:21 68:9 72:10 75:11 75:24 76:3 78:9 79:14 80:10 103:2 103:7 104:4 | | **agreements**(30) 5:2 5:18 8:7 8:21 10:22 11:18 11:25 13:3 15:19 18:12 19:16 20:7 20:17 20:25 21:6 21:14 22:13 26:15 26:17 27:19 27:22 28:17 28:24 33:11 33:16 33:17 34:21 53:1 53:6 99:7 | | **amending**(1) 28:24 | | | | |
| | | | | **amendment**(2) 20:13 21:1 | | | | |
| | | | | **amendments**(6) 12:11 15:5 22:19 22:21 29:5 33:6 | | | | |
| **adage**(1) 6:2 | | **ahead**(3) 26:10 73:24 111:21 | | | | | |
| **add**(7) 26:14 27:13 30:3 40:6 76:3 82:2 90:20 | | **akin**(1) 3:5 | | **american**(2) 84:23 88:19 | | | | |
| | | **alarm**(1) 65:3 | | **americas**(1) 2:45 | | | | |
| **added**(1) 19:15 | | **alienation**(1) 96:10 | | **among**(1) 15:10 | | | | |
| **addition**(2) 18:20 33:25 | | | | **amongst**(2) 15:1 17:11 | | | | |
| **additional**(5) 8:10 18:5 103:9 103:25 104:9 | | | | **amount**(11) 7:17 7:18 8:11 10:10 16:16 18:5 19:5 24:14 28:15 60:18 110:3 | | | | |
| **address**(11) 11:6 23:18 24:8 39:8 50:20 56:16 71:18 72:1 72:15 81:9 91:12 | | | | | | | |
| **addressed**(2) 25:5 71:14 | | | | **amounts**(6) 16:7 23:8 28:6 28:10 54:5 68:5 | | | | |
| **addresses**(18) 43:5 46:19 46:23 50:7 50:8 50:10 50:19 50:25 58:13 66:23 67:1 68:14 71:16 72:12 74:25 75:2 75:19 113:4 | | | | **analysis**(3) 45:12 75:14 113:7 | | | | |
| | | | | **analyze**(1) 72:17 | | | | |
| | | | | **ancillary**(1) 28:25 | | | | |
| **adequate**(2) 50:4 91:10 | | | | | | | |
| **adjourn**(1) 53:15 | | | | | | | |
| **adjourned**(1) 115:2 | | | | | | | |
| **adjustment**(1) 24:13 | | | | | | | |
| **administer**(1) 99:17 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**and**(301) 52:9 52:13 52:15 52:19 52:23 53:1 53:2 53:4 53:5 53:6 53:9 53:9 53:10 53:12 53:14 53:15 53:15 53:19 53:21 53:22 53:23 53:25 54:1 54:8 54:8 54:12 54:18 54:18 54:21 54:22 54:23 54:23 55:5 55:5 57:7 55:16 55:21 56:1 56:1 56:3 56:6 56:8 56:18 56:19 56:25 57:7 57:15 57:19 58:1 58:2 58:5 58:7 58:11 58:12 58:13 58:14 58:17 58:20 58:21 58:22 58:23 59:4 59:7 59:11 59:12 59:16 59:17 59:22 60:5 60:9 60:14 60:15 60:16 60:17 60:17 60:18 60:19 60:25 61:2 61:5 61:6 61:7 61:8 61:9 61:9 61:10 61:12 61:15 61:18 61:20 61:21 61:24 62:1 62:3 62:4 62:7 62:11 62:15 62:20 62:22 63:2 63:4 63:18 63:20 63:23 64:3 64:16 64:24 65:1 65:3 65:3 65:4 65:7 66:2 66:12 66:16 66:16 66:19 66:23 66:25 67:14 67:19 67:19 68:2 68:4 68:4 68:10 68:12 68:13 68:14 68:16 68:25 69:3 69:5 69:12 69:15 69:20 69:25 70:1 70:2 70:4 70:6 70:9 70:12 70:12 70:17 70:20 70:21 70:22 71:5 71:9 71:13 71:16 71:18 72:6 72:9 72:11 72:17 72:24 72:25 73:2 73:4 73:6 73:11 73:12 73:22 74:11 74:19 74:21 74:21 75:3 75:8 75:15 75:18 76:3 76:15 77:3 77:4 77:8 77:13 77:19 77:20 77:25 78:1 78:23 79:4 79:15 79:17 79:20 80:1 80:14 80:15 80:18 80:18 80:19 80:19 80:22 80:23 81:1 81:5 81:6 81:25 82:3 82:6 82:13 83:1 83:12 83:12 83:12 83:13 83:13 83:23 83:24 84:12 84:24 84:25 84:25 85:15 85:25 86:4 86:11 86:15 86:17 86:18 86:2 87:4 87:5 87:8 87:15 87:21 87:22 88:1 88:2 88:17 88:18 88:24 89:2 89:5 89:6 89:7 89:13 89:25 90:1 90:2 90:17 90:19 90:24 91:5 91:10 91:11 91:17 91:22 92:1 92:8 92:10 92:11 92:14 92:18 92:19 92:2 92:22 93:9 93:15 93:15 93:20 93:21 93:2 93:25 94:6 94:7 94:8 94:17 94:20 95:3 95:5 95:25 96:1 96:3 96:8 96:11 96:13 96:17 97:11 97:11 97:14 97:21 97:22 98:2 98:2 98:4 98:10 98:14 98:14 98:19 99:3 99:4 99:6 99:6 99:7 99:9 99:10

**and**(115) 99:11 99:13 99:15 99:21 100:1 100:4 100:9 100:14 100:15 100:18 100:21 101:2 101:2 101:4 101:4 101:8 101:9 101:10 101:13 101:15 101:15 101:20 101:23 101:24 102:2 102:4 102:6 102:13 102:19 102:20 102:23 102:25 103:1 103:3 103:14 103:16 103:18 103:19 103:22 104:2 104:4 104:10 104:11 104:14 104:16 105:5 105:8 105:13 105:16 105:18 105:25 106:5 106:6 106:7 106:19 106:20 106:21 106:22 106:23 106:25 107:1 107:3 107:5 107:7 107:8 107:10 107:11 107:16 107:22 107:2 108:5 108:7 108:8 108:9 108:10 108:10 108:13 108:14 108:15 108:18 108:20 108:23 108:24 109:1 109:4 109:8 109:13 109:14 109:21 109:22 109:23 110:2 110:3 110:4 110:7 110:8 110:10 110:10 110:14 110:20 111:4 112:5 112:18 112:19 112:19 112:20 112:21 113:4 113:6 113:10 113:22 114:1 114:3 114:23 115:1

**and/or**(1) 50:12
**ann**(1) 1:25
**annie**(1) 4:21
**annoyance**(1) 69:3
**another**(13) 31:17 32:1 38:11 42:11 45:20 66:24 71:13 84:8 85:4 87:3 95:11 113:1 113:2
**answer**(2) 71:6 82:14
**answering**(2) 50:24 79:7
**answers**(4) 43:7 79:5 82:25 83:14

**any**(82) 4:13 11:5 11:8 13:2 13:17 14:2 14:7 14:12 15:11 15:11 15:13 15:16 15:19 15:17 15:18 15:20 16:5 17:18 22:19 22:24 23:2 23:3 23:4 23:8 23:18 25:21 27:6 27:7 27:10 29:12 30:5 30:19 33:2 35:8 38:9 40:8 42:10 42:25 43:24 47:7 47:8 48:3 48:3 50:1 50:2 55:24 59:22 61:11 64:8 65:6 65:10 65:12 65:16 65:20 65:22 66:4 69:5 69:6 70:21 72:6 74:8 74:21 83:25 85:23 87:9 88:10 88:2 92:12 95:1 96:19 97:24 98:2 99:24 102:8 102:12 103:18 104:22 108:2 108:6 109:10 111:6 111:9
**anybody**(4) 27:12 30:9 71:4 100:5
**anymore**(1) 73:8
**anyone**(4) 20:11 25:20 71:5 71:11
**anyone's**(3) 13:3 23:9 34:25
**anything**(11) 13:3 14:3 27:13 30:22 81:6 89:16 101:19 103:15 107:13 114:15 114:2
**apart**(1) 37:17
**apologize**(1) 23:15
**apparent**(2) 39:2 44:21
**apparently**(3) 47:18 47:23 90:24
**appear**(1) 28:20
**appearances**(1) 3:20
**appearing**(1) 64:12
**appears**(2) 44:21 88:24
**appendix**(2) 28:21 28:22
**applicable**(1) 70:3
**applicant**(3) 32:18 32:22 33:25
**applicants**(3) 26:19 28:7 29:4
**applicants'**(2) 26:21 34:10
**application**(1) 92:5
**appointment**(1) 70:3
**approach**(7) 25:15 43:19 70:15 75:2 92:4 95:6 113:13
**approached**(4) 7:7 44:9 80:15 104:9
**appropriate**(12) 9:10 24:20 44:14 51:16 69:10 70:4 74:19 76:14 92:7 92:14 104:20 112:18
**approval**(14) 5:1 11:1 14:25 18:16 19:16 19:21 20:1 20:4 20:9 27:19 28:18 29:1 29:21 33:15
**approve**(6) 25:7 25:13 29:24 34:4 34:11 37:7
**approved**(12) 8:21 10:15 17:17 18:14 18:16 25:5 32:10 33:1 33:2 33:17 34:6 34:14
**approximately**(3) 42:21 48:12 55:25
**april**(3) 15:12 15:15 16:5
**archived**(1) 106:3

**are**(182) 6:1 6:1 6:12 6:14 6:14 6:15 6:23 6:24 7:2 8:13 9:20 10:3 10:25 12:23 14:2 16:1 16:3 16:12 16:12 17:17 17:18 18:6 19:8 19:13 20:3 20:6 20:14 20:17 21:1 21:3 21:17 22:21 22:23 23:3 23:4 23:7 23:11 23:12 24:17 26:17 27:8 27:11 27:18 27:19 28:2 28:8 28:17 28:17 28:18 28:24 29:6 29:13 29:22 29:24 30:19 31:14 33:17 34:20 34:22 37:15 37:16 39:24 42:8 43:9 43:16 44:6 44:10 44:21 44:23 44:23 46:9 46:13 46:18 46:18 46:23 48:15 48:20 48:21 49:4 49:15 49:22 50:9 52:4 52:10 52:15 52:18 53:1 53:18 55:23 56:8 56:9 57:2 57:8 58:1 58:2 59:24 59:25 61:13 61:13 61:14 61:14 61:25 62:3 62:22 62:2 63:2 63:20 63:20 64:23 66:17 67:1 68:11 68:11 68:23 69:20 70:5 70:10 71:12 73:3 73:13 73:13 74:14 75:3 75:10 76:16 77:7 78:4 78:23 79:3 79:7 79:10 79:19 80:1 81:10 84:24 85:2 85:5 86:10 88:5 88:7 90:1 90:2 91:21 92:7 92:20 92:25 93:17 93:23 94:18 94:19 95:18 96:6 96:12 96:18 97:13 97:14 97:16 97:19 98:6 98:20 99:2 100:17 101:6 102:3 102:21 103:11 103:15 103:23 103:25 104:1 104:12 104:13 106:12 106:16 106:17 106:18 107:9 108:1 109:18 109:25 111:11 112:19
**aren't**(1) 108:11
**argue**(5) 9:9 13:3 47:14 55:8 92:15
**argument**(4) 46:8 91:14 95:15 105:23
**arguments**(7) 12:24 14:2 15:11 15:16 33:3 91:9 110:2
**arise**(1) 110:10
**arisen**(1) 105:12
**arises**(2) 41:25 110:11
**around**(4) 6:15 15:14 65:4 82:18
**arraignments**(1) 15:13
**arrangement**(3) 8:12 17:11 30:5
**arrangements**(5) 11:15 11:17 16:3 21:10 38:17
**arsht**(2) 1:24 4:22
**articulable**(1) 48:8
**articulate**(1) 48:8
**asia**(2) 15:23 16:11
**aside**(2) 6:13 48:6
**ask**(6) 24:22 25:7 65:21 70:21 71:4 82:14
**asked**(8) 25:12 45:8 54:4 56:25 99:8 100:4 100:9 108:5
**asking**(1) 63:4
**aspect**(2) 53:22 54:9
**aspects**(3) 56:18 83:3 99:17
**assets**(7) 4:9 7:1 42:1 52:4 52:18 52:21 96:13
**assist**(2) 86:18 112:16
**assistance**(3) 42:3 88:13 112:16
**assume**(1) 50:15
**assuming**(3) 14:25 25:6 44:3
**atlanta**(1) 21:15
**atpa**(3) 19:18 27:18 28:12
**attached**(6) 24:19 61:5 97:12 103:17 103:24 110:24
**attempt**(2) 77:2 89:6
**attention**(2) 32:1 89:8
**attorney**(4) 69:22 105:17 105:19 106:11
**attorney/clinic**(1) 94:20
**attorneys**(18) 46:9 47:13 47:16 48:24 49:23 51:3 57:5 57:6 57:9 57:14 58:15 60:12 61:3 61:16 63:17 70:7 71:14 78:20
**attorneys'-eyes**(1) 42:22
**attorneys'-eyes-only**(2) 42:20 42:25
**attrition**(1) 56:2
**audible**(4) 25:22 27:15 30:21 114:22
**august**(4) 1:14 4:1 33:23 115:10

**authorize**(2) 24:24 25:7
**available**(4) 17:1 18:10 77:1 92:9
**avenue**(3) 2:6 2:13 2:45
**avoid**(2) 52:9 52:24
**aware**(3) 6:10 41:11 84:21
**awful**(1) 70:8
**back**(12) 14:11 25:23 28:22 41:15 48:1 61:1 87:21 91:19 93:20 103:1 105:13 108:9
**background**(4) 6:9 23:17 27:20 59:5
**backup**(3) 97:21 98:24 106:5
**balance**(1) 17:1
**balancing**(1) 63:8
**ball**(1) 44:22
**bank**(4) 17:9 45:4 52:2 55:3
**bankruptcy**(7) 1:1 1:20 32:6 59:6 84:18 96:14 98:6
**barclays**(1) 3:33
**barclay's**(1) 3:33
**barn**(1) 96:24
**based**(11) 24:14 34:19 53:4 84:25 92:5 92:18 93:13 94:5 95:16 110:4 110:13
**basic**(2) 50:25 89:14
**basically**(3) 73:10 91:21 92:8
**basis**(16) 15:17 15:18 22:25 32:23 33:2 49:10 58:16 60:13 61:3 61:16 62:4 62:7 78:20 86:21 94:20 99:22
**bates**(1) 78:25
**battery**(1) 2:19
**bear**(1) 18:2
**became**(1) 39:2
**because**(42) 6:25 7:22 9:5 10:12 10:19 30:24 37:4 47:16 49:16 52:8 56:2 57:12 58:10 61:3 66:5 68:15 69:9 72:18 73:3 79:6 83:25 87:5 89:24 91:18 91:22 93:22 95:14 95:16 97:10 98:6 100:23 101:2 103:4 104:2 104:21 105:2 105:12 106:9 107:18 108:24 109:4 113:12
**become**(1) 96:14
**bed**(1) 25:9
**been**(78) 4:11 6:11 6:14 7:23 8:1 9:19 10:1 10:9 10:18 11:23 12:10 13:23 15:14 16:13 17:10 17:15 17:16 17:21 17:22 18:6 18:14 18:14 20:21 21:18 21:19 21:22 22:11 24:21 29:1 29:9 32:10 33:8 33:10 34:6 37:11 38:19 42:5 42:8 42:23 43:1 43:4 44:22 45:2 45:11 46:14 46:19 47:23 48:3 48:24 49:23 50:5 50:22 53:19 53:25 61:4 62:1 63:2 63:17 69:5 71:19 76:16 76:20 80:12 85:11 86:5 89:2 90:4 91:10 100:2 101:21 103:2 104:8 104:16 107:11 108:7 110:5 110:16 110:18
**before**(29) 1:19 6:1 29:11 29:21 35:19 40:19 40:20 43:13 44:22 45:5 47:9 51:23 51:24 53:12 59:2 69:7 69:23 80:6 80:15 83:7 83:25 87:13 89:25 90:2 100:24 108:8 113:3 113:18 113:23
**began**(1) 52:1
**begin**(3) 43:13 56:5 56:7
**beginning**(4) 54:7 55:19 91:20 102:19
**behalf**(7) 4:22 24:3 29:4 37:9 39:13 64:11 109:22
**behind**(1) 25:10
**being**(24) 10:17 17:18 25:1 25:5 27:8 28:18 32:6 32:8 40:11 51:5 60:2 61:15 61:19 62:12 63:15 67:5 73:5 73:8 73:8 81:5 81:11 85:17 103:1 110:17
**belabor**(1) 108:23
**belief**(1) 103:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**believe**(26) 8:1 9:9 20:4 24:19 36:10 43:19 44:8 45:9 48:16 50:3 54:24 69:10 69:13 71:20 76:21 83:6 85:5 86:4 88:10 91:10 91:22 91:23 92:3 92:18 96:25 98:13

**believed**(3) 67:14 67:24 113:5

**bells**(1) 65:3

**belongs**(1) 54:12

**below**(3) 68:5 68:9 68:16

**bench**(1) 113:14

**beneficiaries**(11) 2:31 36:6 41:17 43:8 46:15 52:20 52:23 53:14 58:1 89:3 95:15

**beneficiaries'**(1) 41:24

**beneficiary**(1) 96:16

**beneficiary's**(3) 47:16 48:10 110:8

**benefit**(6) 32:19 96:11 96:16 102:5 102:8 114:2

**benefited**(1) 17:10

**benefits**(8) 26:23 28:12 67:13 93:7 94:8 94:25 99:16 104:13

**bernstein**(1) 2:37

**besides**(1) 51:4

**best**(4) 7:5 24:20 34:22 107:10

**better**(3) 82:23 87:16 95:18

**between**(16) 9:2 17:12 20:23 22:25 26:20 27:24 28:1 55:2 62:21 61:19 66:19 68:2 75:7 94:5 96:1 107:8 108:10

**beyond**(10) 28:11 47:1 47:11 47:15 48:10 49:3 54:3 90:20 95:13 105:6

**bilateral**(1) 82:14

**binding**(2) 14:22 15:1

**bit**(12) 6:24 21:15 37:4 56:2 59:4 67:20 67:20 70:13 70:14 79:25 87:4 98:24

**black**(4) 6:10 6:12 6:17 7:14

**blank**(1) 2:31

**blowing**(1) 75:5

**boils**(2) 101:18

**bond**(1) 3:29

**bondholder**(1) 2:23

**bondholders**(1) 10:4

**bonnie**(2) 2:32 36:9

**books**(1) 23:9

**border**(2) 65:22 84:19

**bore**(2) 77:4 107:1

**borne**(2) 8:25 9:3

**both**(21) 4:7 4:8 7:7 11:1 13:7 18:10 19:18 19:19 22:22 28:3 28:12 28:12 32:10 32:20 45:4 45:5 45:7 46:11 46:13 50:10 66:11

**botter**(1) 3:6

**bounds**(1) 54:2

**box**(1) 7:14

**boxes**(5) 6:10 6:12 6:17 6:20 9:7

**brad**(1) 3:7

**break**(1) 30:24

**brickley**(1) 3:23

**brief**(7) 29:19 30:24 31:6 31:8 43:11 64:15 75:5

**briefly**(3) 27:17 29:16 64:6

**bring**(8) 23:2 23:12 29:10 31:25 33:11 82:7 89:7 113:3

**bringing**(2) 53:7 88:15

**brings**(1) 84:6

**broad**(1) 107:16

**broader**(1) 53:19

**broken**(1) 94:5

**bromley**(40) 1:34 5:3 5:6 5:8 5:11 5:17 5:23 5:24 5:25 8:19 11:10 11:11 11:17 11:23 12:4 12:6 12:16 13:2 13:20 14:15 15:7 16:1 16:23 17:21 18:20 19:3 19:23 23:22 25:3 25:23 25:25 26:15 27:4 27:20 27:23 28:11 29:6 31:1 31:2 31:4

**brought**(3) 9:14 44:22 95:12

**bryant**(1) 3:9

**built**(2) 12:16 68:21

**burden**(12) 48:5 80:22 97:6 97:9 97:11 98:13 101:25 102:5 102:9 103:21 108:15 110:7

**burdensome**(2) 44:7 105:16

**burdensomeness**(2) 97:2 98:11

**business**(5) 16:11 16:25 22:18 24:10 33:14

**businesses**(3) 16:18 18:21 18:22

**but**(122) 4:14 9:11 10:21 10:25 11:20 12:9 12:17 13:6 14:11 14:21 14:25 16:10 17:2 17:11 18:14 20:12 20:16 21:2 21:19 23:16 25:6 29:1 37:20 38:11 39:1 39:18 40:5 40:19 42:24 43:13 45:20 46:22 48:5 48:19 49:2 49:13 50:16 50:18 51:4 51:8 54:2 54:11 55:8 57:12 57:21 57:24 58:3 58:3 58:16 59:2 61:22 62:14 63:3 63:22 63:24 65:5 66:10 66:21 67:1 68:22 69:10 70:14 71:1 71:14 71:20 73:7 74:3 74:15 74:24 74:25 75:13 75:15 75:19 76:25 78:22 79:9 79:17 79:25 81:9 81:18 82:9 82:12 82:20 83:2 84:3 84:5 84:10 84:20 85:13 86:16 86:20 87:18 89:15 89:20 90:3 90:25 92:7 92:17 93:13 95:8 95:25 98:5 98:12 99:2 102:23 103:8 104:24 106:8 106:23 107:2 107:6 107:18 108:4 108:25 109:4 109:17 109:24 110:13 111:8 112:6 113:4 114:12

**button**(3) 106:7 106:13 107:22

**byfield**(3) 32:13 32:19 33:4 33:13

**cabinet**(1) 107:8

**cala**(1) 21:6

**calculation**(1) 24:14

**call**(2) 41:4 98:19

**called**(2) 47:17 52:15

**came**(7) 7:21 39:1 49:19 49:22 67:19 84:9 103:1

**can**(37) 4:15 5:17 10:7 11:6 23:12 24:5 29:4 31:16 38:3 38:12 39:7 40:15 40:16 40:23 41:1 42:13 47:1 54:5 62:25 65:7 66:8 70:8 70:9 72:24 75:2 76:9 78:7 78:19 81:9 84:12 89:4 100:14 106:23 107:1 107:6 109:6 113:11

**can't**(7) 60:9 63:2 63:3 85:25 86:1 105:14 106:19

**canada**(19) 6:25 13:20 13:22 14:16 19:10 25:23 27:25 28:1 30:17 65:7 86:21 87:6 87:10 87:12 89:15 89:15 99:6 103:12 103:12

**canadian**(45) 2:43 2:44 7:7 7:20 10:20 11:2 13:11 13:15 13:16 13:17 14:4 20:5 20:23 22:1 64:22 65:2 65:7 65:8 65:11 65:12 65:13 65:14 65:17 65:23 84:15 85:7 85:9 85:11 85:23 85:24 86:1 86:6 86:10 86:11 86:20 87:8 87:11 88:12 88:13 88:25 89:12 89:13 89:17 99:8

**cannot**(3) 58:10 69:12 96:13

**capital**(3) 3:33 3:33 3:37

**capturing**(1) 73:5

**carbon**(1) 94:18

**care**(1) 114:16

**careful**(1) 65:22

**carey**(1) 45:5

**carve-out**(3) 18:24 19:5 28:13

**case**(52) 1:5 35:2 35:19 39:16 43:1 43:19 43:24 44:8 44:13 45:4 45:5 45:10 47:6 47:12 48:11 48:20 50:10 55:3 55:6 59:23 60:3 62:4 62:4 62:6 62:7 62:25 67:12 68:2 68:23 69:2 77:1 84:22 84:25 92:4 93:25 95:17 95:20 95:21 96:1 96:1 96:5 96:6 96:12 96:17 98:22 101:25 106:1 108:20 108:25 108:25 109:9 113:13

**cases**(13) 6:4 9:16 13:18 17:8 34:8 45:7 55:4 67:10 70:4 93:5 93:24 97:15 109:11

**cash**(5) 16:7 16:9 16:15 17:1 17:1

**categories**(1) 62:5

**caucus**(1) 74:1

**caught**(1) 41:12

**cause**(2) 47:14 62:24

**caused**(1) 101:7

**caveat**(1) 83:9

**caveats**(1) 82:18

**cdma**(1) 22:13

**cdma-500**(1) 22:16

**cede**(1) 14:23

**central**(3) 54:11 99:3 100:14

**century**(2) 45:4 55:2

**ceo**(1) 93:23

**certain**(24) 6:6 7:15 8:1 11:15 12:11 13:10 15:5 16:7 16:8 17:3 17:12 21:3 21:6 21:7 21:9 21:9 22:2 22:24 27:8 28:6 43:3 43:7 70:17 81:16 88:17

**certainly**(18) 24:19 34:18 34:18 40:23 64:8 64:9 65:16 66:2 70:1 73:24 81:9 85:18 89:9 90:9 104:4 110:12 111:11 114:14

**certification**(1) 115:4

**certify**(1) 115:5

**cetus**(1) 3:37

**challenge**(1) 81:16

**chambers**(1) 41:6

**change**(3) 21:22 23:13 105:19

**changes**(3) 9:19 14:10 29:11

**chapter**(1) 1:8

**charge**(1) 102:11

**chase**(1) 2:25

**check**(1) 58:20

**chen**(1) 2:24

**chill**(1) 64:4

**china**(3) 21:11 21:25 23:10

**chose**(1) 75:14

**chosen**(1) 58:3

**chris**(1) 3:14

**cindy**(1) 2:24

**circumstance**(1) 73:2

**citi**(2) 3:41 3:41

**civil**(1) 94:4

**claim**(2) 21:15 95:22

**claims**(5) 13:10 43:24 52:4 52:19 95:22

**clarification**(2) 19:16 19:17

**clarified**(1) 88:16

**class**(3) 69:22 69:22 69:24

**clean**(1) 84:12

**clear**(18) 8:22 13:6 22:16 48:18 53:1 53:4 53:5 65:5 65:9 69:2 73:4 77:11 79:4 83:2 85:8 85:20 97:12 103:23

**clearly**(9) 34:20 48:8 52:3 62:14 66:1 78:23 79:3 98:10 107:9

**cleary**(1) 1:32 39:12

**clerk**(2) 4:2 31:11

**client**(1) 61:2

**clients**(18) 36:18 48:22 50:2 58:8 58:16 61:21 62:13 63:23 64:18 64:2 73:15 73:15 74:20 76:1 76:8 104:11 109:22

**close**(2) 19:11 28:16

**closed**(2) 16:17 18:18

**closely**(1) 10:2

**closing**(2) 16:25 17:4

**cobb**(4) 26:10 26:11 26:14 32:21

**cobb's**(1) 26:6

**code**(1) 76:18

**coleman**(24) 2:18 2:44 64:6 64:8 64:9 64:10 64:10 64:11 64:15 64:19 65:20 65:24 65:25 66:3 85:25 86:3 87:1 87:1 87:3 87:8 87:15 87:17 87:23 89:4 90:8

**coleman's**(1) 84:14

**colleague**(1) 5:15

**colleagues**(2) 53:23 56:25

**colombia**(2) 18:9 18:11

**columns**(1) 71:24

**come**(4) 6:2 18:4 68:19 105:13

**comes**(2) 58:22 87:10

**comfortable**(2) 20:3 20:6

**comi**(1) 7:10

**coming**(2) 61:22 87:21

**commence**(1) 33:20

**commend**(1) 23:19

**comment**(4) 35:8 76:15 83:23 105:11

**commentary**(1) 33:7

**commented**(2) 32:13 33:24

**comments**(2) 33:4 84:15

**committee**(16) 2:29 3:5 10:2 37:10 48:14 49:5 49:8 49:10 49:13 49:19 49:24 61:20 63:15 65:21 76:5 76:11

**committees**(2) 45:4 64:19

**communicate**(2) 48:15 49:25

**communications**(3) 49:20 94:5 94:15

**comp**(2) 2:30 86:13

**companies**(6) 52:14 59:11 64:22 65:12 65:14 65:23

**companion**(1) 32:5

**company**(14) 21:15 52:22 58:25 59:13 59:16 59:17 70:20 71:1 81:1 91:3 99:14 100:5 102:3 106:18

**company's**(2) 52:19 101:9

**compare**(2) 60:18 60:19

**compared**(1) 110:6

**comparison**(1) 66:19

**compel**(10) 37:14 41:24 42:2 44:23 66:12 85:10 103:11 103:17 110:20 114:6

**compelled**(1) 38:13

**compensated**(3) 54:16 60:21 92:3

**compensation**(30) 36:7 41:18 47:24 48:13 52:16 52:24 54:8 54:18 56:11 56:17 56:18 56:19 58:23 59:18 61:11 66:17 66:22 67:3 67:13 71:4 71:8 72:1 72:2 72:9 93:10 93:22 95:22 96:2 96:7 113:7

**complaint**(12) 38:2 41:12 82:4 82:7 82:11 82:13 82:15 82:16 82:24 83:4 83:13 83:25

**complaints**(1) 61:3

**complete**(7) 37:20 44:24 45:1 56:22 89:18 110:6 110:16

**completed**(1) 29:9

**completeness**(3) 81:17 85:15 111:3

**completion**(2) 79:22 79:22

**compliance**(1) 93:19

**complies**(2) 44:17 92:21

**comply**(3) 59:16 82:1 98:7

**complying**(1) 59:13

**comprehensive**(2) 30:7 34:1

**compressing**(1) 46:8

**compromise**(10) 49:12 49:14 51:7 62:18 69:8 69:9 69:10 69:13 95:8 95:9

**compromises**(4) 13:3 49:15 62:16 63:3

**compulsion**(1) 87:10

**compulsory**(1) 88:11

**computer**(1) 106:21

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**concededly**(1) 46:13
**concept**(1) 39:1
**concern**(10) 39:6 40:11 49:7 49:11 62:12 63:13 63:15 63:19 70:6 98:11

**concerned**(10) 35:7 46:16 46:24 49:4 66:5 70:2 70:7 71:13 72:14 76:16

**concerning**(2) 4:9 24:10
**concerns**(5) 50:5 53:14 54:1 60:11 76:6
**conclude**(1) 41:11
**concluded**(1) 35:6
**concludes**(3) 33:19 34:15 35:9
**conclusion**(1) 38:11
**concurs**(1) 30:4
**condition**(3) 20:9 20:13 20:24
**conditions**(2) 19:19 28:7
**conduct**(1) 95:23
**conducted**(3) 32:5 32:8 90:16
**conference**(3) 32:5 40:23
**conferences**(1) 42:4
**conferred**(1) 53:22

**confidential**(5) 58:9 63:17 63:22 63:25
**confidentiality**(6) 48:7 48:25 56:6 57:6 60:11 61:17

**confirm**(1) 29:4
**confirmation**(4) 19:24 19:25 76:7 76:10
**confirmatory**(3) 39:21 53:16 91:19
**confusion**(1) 65:3

**connection**(2) 21:5 22:6
**consider**(2) 61:15 73:22
**considerable**(1) 33:10
**consideration**(1) 38:8
**considered**(2) 34:6 61:23
**considering**(1) 102:6
**consistent**(2) 7:5 91:7
**consistently**(2) 59:10 86:9
**constitute**(1) 94:11
**constitutes**(1) 65:13
**construct**(1) 46:7
**constructive**(2) 96:4 96:14
**construed**(1) 86:23
**contact**(4) 50:9 50:21 50:23 51:5
**contain**(1) 19:19
**contained**(2) 48:22 49:2
**contains**(6) 15:7 33:23 34:1 42:1 47:7 72:5
**contemplated**(1) 53:19
**contemporaneous**(1) 72:16
**contemporaneously**(1) 72:8
**contend**(1) 42:25
**contested**(4) 37:11 37:24 40:12 40:18
**contesting**(1) 96:7
**context**(4) 33:5 84:9 105:13 113:4
**contexts**(1) 89:12
**continue**(4) 22:8 37:16 37:19 113:5
**continued**(3) 2:2 3:2 113:12
**contributed**(1) 42:2
**control**(5) 72:25 84:25 86:10 87:5 89:13
**cooperate**(2) 89:4 89:5
**cooperative**(1) 113:21
**coordinated**(1) 5:12
**coordinating**(1) 10:1
**cop**(1) 99:5
**copied**(1) 100:2
**copies**(2) 30:15 94:18
**copperfield**(1) 12:13
**copy**(2) 25:12 47:19
**cordo**(5) 1:25 4:20 4:21 4:22 4:25 5:5 35:20 35:23 36:1

**core**(2) 44:15 77:3
**corporate**(3) 58:10 59:5 60:8
**corporation**(1) 59:7
**correct**(11) 7:21 46:17 49:15 73:12 76:17 78:2 78:10 79:13 89:1 96:12 115:5

**correctly**(2) 37:25 75:23
**correspondence**(1) 51:17

**cost**(5) 74:11 106:15 106:16 106:16 108:17
**costly**(2) 105:16 105:17
**costs**(1) 107:6
**could**(30) 13:17 14:2 14:7 25:11 30:11 31:2 38:16 59:10 61:1 61:5 61:7 61:12 61:23 62:4 62:6 62:7 62:18 62:20 62:24 67:23 73:21 81:6 81:7 84:1 104:6 108:6 109:23 110:18 112:13 114:9

**couldn't**(1) 109:17
**couldn't**(1) 40:4
**counsel**(16) 4:7 8:2 19:24 19:25 30:23 35:9 35:10 35:25 36:9 38:7 38:23 41:10 49:1 97:22 106:7 114:21

**counsels'**(1) 4:12
**count**(1) 57:8
**countenance**(1) 70:1
**countries**(1) 59:14
**country**(2) 65:15 99:6

**course**(7) 17:8 21:19 25:1 36:1 98:1 111:17 114:16

**court**(294) 1:1 4:3 4:16 4:17 4:19 4:24 5:4 5:6 5:16 5:21 5:24 8:18 9:23 10:15 11:8 11:16 11:22 12:3 12:5 12:15 13:1 13:19 14:14 15:6 15:25 16:3 16:22 17:20 18:14 18:19 19:2 19:21 19:22 20:1 20:3 20:8 20:9 23:21 24:6 24:11 24:23 25:4 25:7 25:12 25:12 25:14 25:16 25:20 26:1 26:13 28:18 29:1 31:1 31:4 31:8 31:22 31:20 31:22 32:6 32:11 34:3 34:5 34:10 34:17 35:3 35:6 35:12 35:14 35:18 35:19 35:22 36:1 36:3 36:8 36:13 36:16 36:20 36:23 37:2 37:5 37:12 37:18 38:1 38:5 38:7 38:15 38:21 38:23 39:4 39:6 39:10 39:23 40:10 40:17 40:20 40:22 41:1 41:4 41:6 41:8 41:11 41:13 41:22 42:6 42:15 44:23 45:5 45:6 45:14 45:18 45:20 45:23 46:2 46:12 46:16 46:21 46:24 47:3 47:4 47:9 47:12 47:21 48:8 49:13 50:7 50:11 51:2 51:21 52:6 52:12 55:10 55:13 55:17 55:24 56:4 57:11 57:23 61:2 63:11 64:5 64:8 64:14 64:18 65:19 65:24 66:1 66:6 66:14 66:21 67:7 67:22 69:7 69:19 71:8 71:25 72:4 72:20 72:23 73:10 73:14 73:19 73:24 74:6 74:11 74:16 74:18 74:24 75:6 75:9 75:12 75:22 76:2 76:14 76:23 77:10 77:15 77:18 77:25 77:25 78:8 78:11 78:13 78:21 79:2 79:18 80:3 80:7 80:13 81:8 81:8 81:14 81:20 81:24 82:5 82:19 82:25 83:8 83:11 83:17 83:22 84:2 84:6 84:11 84:16 84:20 85:18 85:20 85:23 85:24 86:8 86:14 86:17 87:7 87:14 87:16 87:20 87:22 88:5 88:8 88:13 88:14 88:20 88:24 89:2 89:9 89:22 89:24 90:6 90:9 90:12 90:14 90:23 91:13 92:16 92:25 93:4 93:8 94:10 95:5 95:10 96:21 97:3 97:8 97:17 98:1 98:9 98:15 98:17 98:22 98:25 100:1 100:12 100:22 101:1 102:6 102:10 102:13 102:15 102:17 102:22 104:17 106:4 106:12 108:22 109:11 109:21 110:25 111:2 111:6 111:11 111:15 111:17 111:23 112:11 112:4 112:9 112:12 112:15 112:19 113:16 113:20 114:1 114:6 114:7 114:11 114:14 114:20 114:23 115:1

**court's**(1) 78:18
**courtroom**(2) 1:9 36:11
**courts**(6) 11:1 13:7 16:2 23:12 66:13 70:5
**court's**(4) 34:4 36:14 42:3 42:13
**cousin**(1) 93:23
**cover**(1) 108:6
**covered**(5) 13:12 13:13 43:10 50:24 113:8
**covering**(1) 26:16
**crack**(1) 112:13

**created**(1) 18:24
**creates**(1) 98:3
**creditor**(1) 95:19
**creditors**(5) 10:2 24:21 52:5 52:19 52:21
**creditors'**(1) 3:4
**criterion**(1) 75:13
**critical**(1) 95:25
**cross**(1) 84:19
**cross-border**(1) 32:9
**crossing**(1) 65:22
**cuff**(1) 70:13
**cumbersome**(2) 49:17 72:11
**curious**(1) 104:24
**current**(6) 23:3 42:24 57:19 58:1 65:11 69:17

**cursory**(1) 94:13
**custodians**(6) 90:17 97:14 97:16 98:14 101:6 108:3

**custody**(2) 84:25 87:5
**cut**(1) 68:14
**cutoff**(1) 68:2
**daily**(1) 49:10
**data**(4) 1:43 47:17 82:9 106:3
**databases**(1) 57:1
**date**(18) 13:12 13:14 29:11 42:20 42:24 43:16 45:10 56:21 56:21 72:2 72:2 81:15 83:3 92:19 93:14 94:14 110:17 111:13

**dated**(1) 48:1
**david**(4) 1:35 3:6 12:13 24:1
**day**(11) 35:13 44:20 53:12 62:10 93:12 93:12 99:21 104:23 104:23 115:1

**days**(9) 19:24 21:22 80:2 81:20 81:24 83:7 83:15 83:20 94:4

**dcp**(2) 41:19 41:21 44:17 51:11
**deal**(9) 32:1 33:18 49:9 55:9 59:9 68:1 70:9 70:9 93:16

**dealing**(5) 18:22 31:22 68:6 76:6 104:5
**deals**(1) 33:20
**dealt**(3) 13:10 27:8 60:7
**debate**(1) 93:20
**debtor**(5) 1:24 7:10 17:18 20:2 98:6
**debtors**(114) 1:12 2:45 4:23 7:7 7:8 9:5 9:23 10:20 10:21 11:1 11:2 13:11 13:12 13:13 13:15 13:15 13:17 14:4 14:4 14:6 14:7 14:8 14:12 17:11 20:5 22:1 28:7 37:7 39:13 39:16 39:18 39:25 44:9 44:21 45:9 46:7 47:14 47:20 48:6 48:18 49:14 50:6 53:7 53:7 53:8 53:13 53:15 53:22 53:25 54:6 54:17 54:19 54:24 55:20 56:8 56:8 56:10 56:11 57:1 57:5 58:11 59:22 63:6 65:2 65:7 65:17 66:18 69:2 71:20 80:9 80:23 80:24 82:21 84:15 84:22 84:23 85:2 85:6 85:7 85:9 85:11 86:2 86:6 86:10 86:10 86:11 86:20 89:6 89:19 90:20 91:5 91:9 91:21 92:4 92:7 93:11 94:20 95:13 95:18 97:22 99:1 99:2 99:8 99:15 100:17 101:7 102:1 105:14 106:7 108:18 109:25 110:3 110:23 112:4

**debtors'**(10) 34:23 37:24 38:7 41:10 41:25 42:9 42:18 43:2 43:6 43:19

**december**(3) 13:14 13:24 53:8
**decision**(2) 44:1 108:21
**decisions**(2) 99:18 99:23
**declaration**(3) 47:20 53:9 97:11
**declarations**(3) 110:1 110:24 111:4
**decline**(1) 55:19
**deem**(1) 44:14
**deemed**(4) 44:10 44:11 75:15 84:4
**defendants**(1) 69:2
**defenses**(1) 43:24
**deferral**(1) 52:14

**deferred**(16) 2:30 24:14 36:6 41:18 47:24 48:13 52:10 52:16 52:23 52:25 67:3 86:13 93:10 95:21 96:2 96:7

**defined**(1) 48:8
**defining**(1) 95:25
**delano**(1) 2:24
**delaware**(8) 1:2 1:12 2:13 4:1 4:13 30:23 32:2 32:8

**delay**(2) 32:21 38:10
**deliver**(2) 9:24 10:11 18:25 19:7
**demand**(1) 86:20
**demarcated**(1) 79:4
**demonstrate**(1) 110:17
**demonstrating**(1) 48:18
**deny**(1) 110:20
**department**(4) 67:13 94:8 94:25 97:20
**dependent**(1) 10:17
**depends**(1) 25:2
**deposited**(1) 6:11
**depositions**(3) 85:14 88:22 110:10
**derive**(1) 72:13
**derived**(3) 63:16 63:21 63:25
**describe**(1) 21:2
**described**(2) 21:5 26:15
**describing**(1) 23:16
**designated**(5) 57:6 57:9 57:13 57:14 78:24
**designation**(3) 42:19 47:14 77:4
**despite**(1) 42:4
**detail**(2) 90:1 92:6
**detailed**(1) 32:12
**details**(6) 14:5 24:17 29:22 34:2 89:20 107:2

**determination**(3) 66:15 92:24 99:19
**determine**(1) 4:12
**determined**(2) 90:6 90:17
**diaz**(1) 1:43
**dictate**(2) 44:10 44:11
**did**(23) 15:22 18:25 22:1 27:20 37:14 45:16 52:15 52:18 54:14 54:15 58:16 60:23 62:4 77:19 83:3 86:11 86:15 86:16 86:18 86:20 99:9 99:11 99:13 100:9 114:5 114:15 114:17 114:18

**didn't**(9) 60:10 83:24 86:16 103:4 103:15 105:19 108:3 108:4 112:7

**difference**(2) 9:2 107:8
**different**(6) 6:24 15:8 59:11 59:11 75:25 96:6

**difficult**(4) 45:12 72:11 72:17 74:15
**difficulty**(1) 73:8
**direct**(1) 7:11
**directed**(2) 65:17 87:12
**directions**(1) 18:10
**disclose**(2) 58:10 69:23
**disclosed**(4) 70:23 70:25 71:11 75:3
**disclosing**(1) 70:22
**disclosure**(9) 47:7 47:15 60:15 62:8 63:1 64:4 64:23 68:21 69:20

**discover**(1) 43:23
**discovered**(1) 22:9
**discovery**(45) 35:18 37:13 37:20 38:4 39:17 39:19 39:21 40:1 40:7 40:8 41:24 43:15 43:19 44:6 44:13 53:16 53:18 53:24 63:9 65:6 65:17 70:8 77:1 77:7 82:11 82:14 82:22 84:17 84:21 85:23 87:12 88:11 89:15 91:18 91:19 92:19 96:19 97:6 97:15 98:7 102:8 105:13 105:19 113:21 113:23

**discrete**(1) 46:8
**discretion**(4) 22:23 58:7 62:22 63:8
**discuss**(10) 39:15 40:4 40:6 50:21 62:18 63:3 68:10 83:24 98:19 108:19

| Word | Page:Line |
|---|---|
| discussed(8) 26:24 27:4 38:19 66:11 103:13 113:2 113:16 113:18 | |
| discusses(1) 51:10 | |
| discussing(3) 51:10 51:10 62:16 | |
| discussion(8) 11:24 11:24 43:13 50:12 84:5 94:25 105:20 113:23 | |
| discussions(8) 39:2 40:19 40:22 41:7 41:10 62:15 93:24 114:3 | |
| disperse(1) 8:16 | |
| dispersed(3) 7:16 8:7 8:9 | |
| dispute(7) 13:4 24:9 30:18 41:24 52:1 54:13 113:24 | |
| disputes(4) 23:3 23:11 23:12 112:20 | |
| disseminated(1) 60:12 | |
| dissemination(2) 47:10 48:19 | |
| distinction(3) 61:19 75:7 96:1 | |
| distinguish(2) 67:5 67:8 | |
| distinguishable(1) 96:17 | |
| distributed(1) 9:25 | |
| distribution(1) 9:17 | |
| district(1) 1:2 | |
| dividend(1) 17:4 | |
| dividend'd(1) 17:2 | |
| divorced(1) 61:11 | |
| document(13) 12:19 95:1 103:1 54:20 57:4 65:16 72:8 72:10 72:19 79:23 80:21 88:18 107:19 109:23 113:9 | |
| documents(87) 9:21 28:25 39:17 42:19 44:2 44:12 44:25 46:13 47:9 47:15 48:3 48:9 48:19 48:21 49:1 49:3 51:6 51:16 52:25 53:1 54:1 54:22 56:6 56:9 56:19 57:5 57:9 57:14 57:16 58:18 58:21 60:5 62:5 63:16 63:21 63:25 64:24 65:12 71:2 72:16 74:11 77:3 77:6 77:12 77:13 78:23 80:8 80:11 80:16 80:18 80:19 81:4 84:24 85:3 85:11 86:2 86:12 86:21 88:24 88:17 88:25 94:19 99:2 99:4 99:6 99:9 99:19 100:24 100:25 101:4 101:10 101:13 101:21 103:3 103:3 103:14 103:20 103:22 103:23 103:24 105:24 107:17 107:23 108: 108:15 110:2 | |
| does(14) 14:6 15:10 25:23 25:24 28:20 28:23 55:13 60:8 60:10 60:10 62:22 64:1 94:11 98:6 | |
| doesn't(4) 93:22 96:17 105:14 107:19 | |
| doesn't(1) 15:18 | |
| doing(5) 38:9 80:23 88:12 100:23 102:4 | |
| dollar(1) 68:6 | |
| dollars(1) 16:16 | |
| don't(36) 46:20 48:2 50:17 52:8 63:23 66:9 68:16 69:10 70:9 70:23 71:4 73:22 74:1 74:3 74:8 79:5 82:8 86:22 87:21 88:9 89:16 91:17 92:11 94:3 94:12 95:4 97:23 98:9 98:12 100:19 102:3 107:1 108:23 112:8 113:20 114:1 | |
| done(11) 12:9 22:14 40:8 65:7 65:8 79:8 93:5 95:3 95:13 105:8 106:24 | |
| don't(10) 9:13 26:14 29:1 38:15 38:18 40:3 40:14 40:22 40:22 42:24 | |
| doolittle(1) 33:23 | |
| doubts(1) 81:17 | |
| dow(1) 3:22 | |
| down(8) 7:3 7:5 8:4 16:4 31:14 68:16 82:21 101:18 | |
| downside(1) 69:16 | |
| draft(3) 22:7 30:12 30:16 | |
| drafted(1) 19:20 | |
| drafts(1) 99:8 | |
| drama(1) 94:6 | |

| Word | Page:Line |
|---|---|
| drawers(2) 105:21 105:23 | |
| drive(7) 97:21 100:19 100:20 100:16 106:19 106:19 106:21 | |
| driven(1) 13:9 | |
| drives(2) 100:13 100:18 | |
| duane(1) 2:10 | |
| due(3) 14:10 18:3 18:14 | |
| duplicative(1) 100:6 | |
| during(3) 12:19 95:1 103:1 | |
| ex.  (1) 2:43 | |
| each(5) 12:17 76:8 76:9 76:22 90:3 | |
| earlier(3) 75:17 91:19 99:8 | |
| earmarked(1) 52:11 | |
| earn(3) 45:17 55:2 67:18 | |
| earned(1) 92:10 | |
| earning(1) 55:6 | |
| earning's(1) 67:17 | |
| earnings(1) 67:6 | |
| easier(2) 73:3 88:1 | |
| easily(1) 81:7 | |
| economy(1) 56:3 | |
| ecro(1) 1:41 | |
| effect(18) 6:16 6:19 7:13 7:22 8:20 9:6 9:10 10:8 10:16 13:20 19:4 19:4 20:16 21:19 32:15 56:23 59:2 67:12 | |
| effective(1) 16:6 | |
| effectively(3) 61:7 80:17 82:11 | |
| effectiveness(1) 19:20 20:10 | |
| effort(5) 38:9 59:8 91:1 110:3 110:8 | |
| eight(1) 5:1 | |
| either(5) 16:2 67:5 80:9 100:2 112:8 | |
| elaborate(2) 9:10 17:21 | |
| electronic(12) 1:50 86:16 97:6 101:5 105:1 105:15 105:19 105:22 108:3 110:6 110:12 115:6 | |
| electronically(5) 42:9 42:12 90:18 104:21 106:9 | |
| element(1) 9:16 | |
| elements(2) 10:7 91:24 | |
| eleven(2) 103:7 103:8 | |
| eligibility(3) 75:16 99:20 101:14 | |
| eligible(26) 45:13 50:12 56:14 58:2 60:17 60:19 61:5 61:11 61:14 66:7 67:1 67:2 67:9 68:2 68:13 75:8 75:15 75:21 76:16 76:19 76:21 77:19 78:6 104:6 107:18 107:19 | |
| eligible's(1) 77:8 | |
| else(14) 14:22 25:20 27:12 30:9 40:3 61:9 61:23 89:19 100:5 101:18 102:20 108:17 | |
| email(18) 50:12 50:14 51:13 90:19 90:20 91:6 94:5 94:14 94:21 95:3 95:14 97:13 99:11 99:12 100:3 103:18 105:5 105:9 | |
| emails(14) 61:25 90:15 90:25 92:25 93:13 93:18 94:1 94:23 100:9 101:17 101:20 104:15 107:10 107:12 | |
| embarrassmen(1) 69:3 | |
| emea(10) 7:8 7:10 13:13 13:22 14:4 14:8 14:12 27:25 28:2 28:7 | |
| emphasize(3) 26:17 27:3 57:17 | |
| employ(2) 42:11 83:11 | |
| employed(11) 12:19 54:6 54:19 55:20 56:12 63:6 66:18 103:12 103:14 104:13 | |
| employee(23) 46:10 50:13 51:10 51:12 54:6 55:19 56:11 56:22 58:18 58:19 59:1 59:9 60:19 61:6 66:13 67:9 67:18 69:6 75:8 75:8 77:22 87:11 102:10 | |
| employee's(1) 50:14 | |

| Word | Page:Line |
|---|---|
| employees(59) 42:10 43:3 43:5 50:19 51:8 52:9 52:11 54:19 55:2 55:13 55:14 55:16 55:25 56:13 57:2 58:2 58:4 58:4 59:4 59:7 59:15 59:19 59:24 60:2 61:6 61:11 61:14 66:6 66:7 66:18 67:1 67:9 67:15 68:12 70:15 70:20 70:21 71:9 74:2 74:9 75:14 75:19 75:21 76:21 77:20 78:6 90:14 90:1 90:25 91:4 92:3 93:6 93:10 | |
| employer(1) 67:4 | |
| enable(1) 92:23 | |
| encapsulates(1) 111:25 | |
| encourage(1) 20:11 | |
| end(9) 11:25 13:18 27:25 33:12 54:7 56:12 62:9 65:4 84:10 | |
| ended(1) 61:21 79:25 | |
| endorsement(3) 30:1 32:3 33:19 | |
| endorsements(2) 31:22 34:15 | |
| enforceable(1) 15:1 | |
| engage(1) 53:16 | |
| engaged(1) 38:4 | |
| engaging(2) 62:16 96:18 | |
| engineered(1) 67:12 | |
| english(1) 16:3 | |
| enough(1) 91:2 | |
| enter(1) 18:25 | |
| entered(4) 13:15 18:11 22:1 28:24 | |
| enterprise(2) 16:17 17:5 | |
| entire(1) 78:15 | |
| entirely(5) 8:25 81:18 92:4 96:6 96:16 | |
| entities(9) 16:1 16:4 16:6 16:8 21:8 85:24 88:12 88:19 88:25 | |
| entitled(4) 43:22 62:20 68:20 69:7 | |
| entity(5) 7:8 16:18 21:24 90:22 98:2 | |
| entry(2) 19:6 34:24 | |
| equation(2) 17:22 61:22 | |
| equity(1) 17:2 | |
| equivalent(1) 74:4 | |
| eric(1) 1:26 | |
| ericsson(4) 22:3 22:6 22:13 22:24 | |
| erisa(5) 109:1 109:6 109:7 109:8 109:11 | |
| erisa's(1) 96:9 | |
| ernest(1) 64:11 | |
| escrow(20) 7:16 8:8 8:11 8:13 8:14 8:16 8:20 9:21 9:24 9:25 10:22 17:5 18:3 18:6 18:8 18:12 18:25 19:7 20:15 20:16 | |
| escrows(1) 17:19 | |
| esi(11) 42:12 64:24 85:19 90:11 97:10 97:15 98:19 99:2 99:13 100:10 106:1 | |
| esi's(2) 84:7 84:8 | |
| especially(1) 55:18 | |
| esq(18) 1:25 1:26 1:33 1:34 1:35 1:36 2:5 2:11 2:18 2:24 2:32 2:38 2:44 3:6 3:7 3:8 3:14 3:30 | |
| essential(2) 45:13 113:13 | |
| essentially(5) 16:15 91:15 101:17 | |
| establish(2) 34:20 | |
| establishes(1) 13:24 | |
| estate(6) 7:3 7:4 17:18 28:17 37:9 96:14 | |
| estates(14) 6:13 6:14 7:6 7:19 7:20 14:21 17:10 18:2 20:23 20:23 24:21 28:13 34:23 53:7 | |
| estates'(1) 24:21 | |
| evaluated(1) 92:20 | |
| even(12) 54:13 54:23 57:3 60:10 63:13 63:24 65:17 73:3 87:11 93:21 95:14 100:13 | |
| event(3) 96:19 103:18 103:22 | |
| eventually(4) 8:3 9:1 9:3 88:2 | |
| ever(2) 68:23 71:4 | |

| Word | Page:Line |
|---|---|
| every(13) 10:21 10:22 53:21 53:21 54:5 54:9 56:11 56:22 56:22 73:1 100:3 102:19 109:23 | |
| everybody(1) 38:10 | |
| everyone(4) 14:3 14:22 31:12 89:19 | |
| everything(8) 23:16 36:21 40:3 54:24 62:20 62:21 72:9 102:7 | |
| evidence(5) 69:5 77:5 110:5 111:5 111:18 | |
| exactly(5) 20:14 21:17 56:8 72:24 100:4 | |
| example(6) 50:11 51:9 66:25 69:22 70:3 70:19 | |
| exceedingly(1) 45:11 | |
| excel(2) 51:17 72:7 | |
| except(1) 72:9 | |
| exception(1) 106:1 | |
| exchange(1) 32:17 | |
| exchanged(1) 77:4 | |
| exclusive(2) 96:11 96:15 | |
| excuse(3) 98:5 105:25 106:1 | |
| execute(4) 18:10 24:24 25:1 25:8 | |
| executed(1) 20:24 | |
| executing(1) 29:2 | |
| exercise(9) 7:24 8:24 9:6 10:3 10:5 10:19 12:4 12:23 16:24 | |
| exercises(1) 7:14 | |
| exhibit(1) 28:20 | |
| exist(1) 62:24 | |
| existed(1) 72:18 | |
| existence(1) 47:25 | |
| existing(2) 48:1 71:21 | |
| exists(3) 47:14 47:16 50:13 | |
| expect(4) 71:5 93:24 95:2 113:11 | |
| expectation(2) 14:24 71:10 | |
| expected(2) 55:2 59:16 | |
| expedition(1) 101:24 | |
| expended(1) 110:3 | |
| expense(5) 97:11 106:8 108:18 110:3 110:7 | |
| expensive(2) 100:1 106:2 | |
| experience(1) 93:3 | |
| explain(1) 66:8 | |
| explained(1) 11:9 | |
| explore(2) 60:24 85:14 | |
| extensions(2) 22:19 22:21 | |
| extent(18) 8:22 8:25 15:12 22:20 22:23 40:8 40:22 50:1 65:20 77:6 82:25 85:16 87:9 88:10 88:21 89:4 90:18 111:9 | |
| extract(1) 106:2 | |
| extraordinary(1) 106:8 | |
| eyes(17) 46:10 47:13 48:10 48:24 49:23 51:4 57:5 57:6 57:9 57:14 58:15 60:12 61:3 61:16 63:18 71:14 78:20 | |
| face(1) 91:6 | |
| facilitates(1) 16:9 | |
| facilities(1) | |
| fact(13) 5:14 13:9 27:7 34:20 37:22 54:12 71:19 73:2 80:24 85:6 86:5 99:15 105:11 | |
| factor(1) 67:25 | |
| factors(2) 66:16 92:20 | |
| facts(4) 29:10 34:2 90:1 92:5 | |
| factum(6) 29:25 30:2 34:1 34:8 34:10 | |
| fair(4) 10:9 18:12 34:22 70:6 | |
| fairly(4) 11:9 11:12 41:1 79:4 | |
| faith(1) 110:1 | |
| familiar(1) 43:21 | |
| far(13) 35:7 37:16 48:2 55:5 55:6 68:16 71:12 74:15 76:15 81:10 85:16 88:17 90:15 91:10 95:14 101:20 101:21 102:9 110:13 | |
| farther(1) 105:2 | |
| fashion(1) 69:12 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **fatell**(26) 2:32 36:9 36:15 36:17 36:18 36:21 36:24 37:3 37:6 37:13 37:19 38:6 38:20 38:22 38:24 39:1 39:5 39:7 39:9 40:11 41:3 41:5 41:7 41:9 41:13 83:12 | | **for**(179) 1:2 1:24 2:4 2:17 2:23 2:29 2:43 3:4 3:22 3:26 3:29 3:33 3:37 3:41 4:8 5: 6:22 9:8 9:9 9:10 9:22 10:23 11:20 12:4 13:11 13:13 14:3 14:23 15:16 15:21 16:8 17:9 18:15 20:21 21:20 23:12 23:15 27:19 28:1 28:2 28:12 28:19 29:21 29:23 29:24 30:1 30:12 31:17 32:22 34:3 34:9 34:12 38:17 39:11 39:25 40:25 41:8 41:17 41:2 42:9 42:12 43:3 45:8 45:12 46:11 46:12 47:4 50:7 50:8 50:19 51:8 51:24 52:7 52:11 53:11 54:4 54:18 55:15 55:24 56:1 56:19 56:22 56:22 56:25 57:13 60:14 60:16 60:25 62:1 62:4 62:23 62:24 63:4 63:8 65:18 66:6 67:4 69:15 69:21 70:3 70:3 70:15 70:19 71:1 71:9 71:15 71:18 71:24 72:9 72:11 73:6 74:9 74:14 74:25 75:6 75:13 75:20 76:22 77:1 77:5 77:6 77:13 77:15 77:17 77:20 78:1 78:9 78:12 78:14 78:15 78:16 78:19 78:24 79:1 79:12 81:21 83:12 84:10 85:8 85:12 85:16 88:21 89:14 89:21 90:11 90:24 93:12 94:1 94:2 95:23 96:15 97:5 98:3 99:20 101:12 101:17 102:19 103:9 104:1 104:20 104:23 104:24 105:1 105:3 105:19 107:10 107:12 108:2 108:3 109:11 109:11 109:11 109:17 109:18 110:4 111:3 111:4 112:5 113:1 | | **further**(13) 30:5 30:20 30:22 31:25 50:16 87:3 91:11 110:4 110:11 114:2 114:3 114:15 114:20 | | **grossed**(1) 8:20 |
| **feature**(1) 73:11 | | | | **future**(1) 113:12 | | **group**(29) 2:23 3:29 15:3 15:9 15:24 36:5 39:15 39:18 39:20 41:17 48:14 48:16 49:9 49:20 49:22 54:2 54:4 54:12 54:16 60:22 63:18 80:23 92:2 93:7 101:12 104:9 104:13 107:15 109:10 |
| **february**(1) 53:11 | | | | **gap**(1) 28:16 | | |
| **feculent**(1) 92:4 | | | | **gaps**(2) 108:6 108:11 | | **group's**(1) 35:2 |
| **federal**(6) 43:20 43:25 48:17 84:22 97:4 101:24 | | | | **gather**(1) 31:24 | | **gsm**(1) 22:13 |
| | | | | **gathered**(1) 79:9 | | **guard**(1) 41:12 |
| **fee**(2) 18:13 18:17 | | | | **gave**(3) 54:17 77:20 77:21 | | **guess**(4) 47:18 68:18 80:17 83:15 |
| **feel**(1) 82:10 | | | | **gdmt**(1) 29:5 | | **gump**(1) 3:5 |
| **fees**(6) 17:13 17:23 18:1 19:4 19:5 28:14 | | **force**(1) 65:15 | | **gdmt's**(1) 29:8 | | **had**(63) 4:11 6:12 8:2 10:8 10:22 12:19 16:10 16:13 16:19 17:15 19:23 21:9 21:25 22:11 24:9 28:14 39:14 40:5 40:13 42:22 46:9 49:23 53:9 53:19 55:7 56:15 56:19 56:20 57:15 58:4 59:19 63:13 69:4 71:9 71:22 75:24 79:6 79:21 79:21 79:24 80:6 86:19 86:19 86:23 88:16 90:18 91:4 91:17 92:15 93:14 94:1 94:14 103:3 104:4 104:10 104:15 107:14 107:17 108:11 108:19 108:20 110:23 113:2 |
| **fell**(1) 68:9 | | **forefront**(1) 12:22 | | **gdnt**(4) 21:23 21:24 22:4 23:13 | | |
| **few**(6) 68:6 102:19 102:19 106:17 107:12 107:23 | | **foregoing**(1) 115:5 | | **gem**(1) 108:17 | | |
| | | **forgotten**(1) 108:19 | | **genband**(16) 2:4 5:19 10:9 10:12 10:14 10:17 11:3 23:20 24:9 25:19 26:24 29:17 29:22 30:14 33:20 34:21 | | |
| **fields**(1) 72:18 | | **form**(8) 19:25 20:7 34:14 40:15 79:17 81:4 112:20 112:21 | | | | |
| **figure**(4) 60:6 67:4 67:5 67:20 | | | | | | |
| **figures**(1) 42:24 | | | | **general**(8) 52:5 52:19 52:21 53:6 54:3 89:15 89:18 95:19 | | |
| **figuring**(1) 23:11 | | **formal**(1) 34:15 | | | | |
| **file**(7) 38:13 41:11 82:3 83:4 105:21 105:23 107:8 | | **format**(1) 113:6 | | **generated**(2) 48:4 107:16 | | **hadley**(2) 2:23 3:29 |
| | | **former**(3) 64:22 65:11 87:11 | | **gestation**(1) 12:1 | | **hadn't**(1) 79:8 |
| **filed**(14) 8:1 20:8 20:14 33:25 37:7 37:10 37:13 53:7 53:12 57:20 64:15 65:9 82:15 83:13 | | **forth**(7) 14:11 24:17 24:18 34:12 87:21 93:20 108:9 | | **get**(28) 12:9 18:17 19:15 38:12 41:1 45:12 45:19 46:22 50:15 51:23 51:24 62:18 67:23 71:5 75:18 75:20 77:3 82:16 86:20 86:24 89:11 100:20 101:10 105:4 108:24 112:21 113:11 113:23 | | **hadn't**(1) 29:8 |
| | | | | | | **half**(1) 57:18 |
| **files**(6) 54:5 86:15 86:17 99:5 99:7 107:3 | | **forum**(2) 92:14 107:5 | | | | **hallmark**(1) 52:13 |
| **filing**(5) 38:2 42:20 59:6 83:19 83:25 | | **forward**(5) 27:1 28:8 37:20 38:10 82:24 | | | | **halted**(1) 51:14 |
| **final**(1) 13:15 | | **forwarding**(1) 19:25 | | **getting**(7) 10:19 72:14 79:25 87:21 104:3 113:10 113:15 | | **halts**(1) 15:10 |
| **finale**(1) 23:20 | | **found**(2) 30:6 109:10 | | | | **hamilton**(1) 1:32 39:12 |
| **finally**(1) 27:2 | | **four**(6) 15:2 42:3 42:7 43:12 45:22 55:9 | | **gid**(6) 74:2 75:25 77:21 78:5 78:14 78:22 | | **hampers**(1) 49:24 |
| **finance**(4) 7:9 7:12 8:5 8:10 | | **fourth**(1) 43:6 | | **ginger**(1) 1:41 | | **hamstrung**(1) 113:12 |
| **financial**(4) 18:23 19:5 26:19 28:14 | | **framework**(1) 21:20 | | **give**(12) 16:16 25:11 38:1 50:10 51:8 54:15 60:9 61:7 66:24 71:20 86:18 108:5 | | **hand**(2) 31:2 100:20 |
| **financially**(2) 26:22 32:22 | | **france**(3) 14:13 14:20 14:21 | | | | **handed**(1) 30:15 |
| **financials**(1) 18:24 | | **freezes**(1) 15:19 | | | | **handful**(1) 64:20 |
| **find**(5) 41:8 50:11 61:1 73:1 110:4 | | **freezing**(1) 16:5 | | **given**(9) 33:13 39:24 55:24 69:17 94:22 99:24 102:12 104:22 108:2 | | **handing**(1) 5:3 |
| **finding**(4) 62:23 68:7 106:6 109:3 | | **french**(7) 10:23 14:23 19:21 20:1 20:1 20:3 20:9 | | | | **handling**(1) 5:5 |
| **fine**(5) 63:20 63:21 64:2 76:11 112:22 | | | | | | **hands**(1) 14:10 |
| **finger**(1) 3:13 | | | | **giving**(1) 74:8 | | **happen**(1) 86:12 |
| **finish**(1) 5:19 | | **friendly**(1) 80:17 | | **glad**(1) 36:24 | | **happened**(3) 13:25 67:11 97:19 |
| **finished**(1) 79:23 | | **friends**(1) 12:13 | | **glantz**(1) 2:32 | | **happens**(3) 7:11 25:6 106:9 |
| **finite**(1) 69:21 | | **from**(74) 6:13 6:19 6:20 9:23 13:12 13:14 13:18 14:11 15:8 17:18 18:11 18:17 19:25 19:25 20:2 21:15 22:24 23:21 26:21 28:22 31:22 33:9 35:9 37:8 39:7 39:12 43:21 44:8 44:9 44:20 47:18 48:19 48:23 49:22 50:14 50:20 54:5 54:7 54:20 55:18 60:11 61:11 63:16 63:16 63:21 63:25 65:11 67:5 68:19 72:6 73:17 76:7 79:6 85:4 85:9 85:11 86:21 87:11 88:3 90:14 90:21 90:25 94:7 95:20 98:8 98:17 99:5 99:6 101:5 102:18 102:18 103:24 106:3 115:6 | | **global**(1) 59:7 | | **happy**(8) 11:6 12:9 23:18 58:15 73:21 74:23 112:6 112:8 |
| **firmly**(1) 92:12 91:23 92:18 | | | | **globally**(1) 91:5 | | |
| **first**(32) 4:14 4:25 6:5 6:15 6:23 8:10 8:12 8:19 13:5 16:14 23:17 25:2 26:7 31:3 32:3 33:19 34:6 43:18 43:18 44:18 45:2 53:11 60:8 74:1 83:13 91:14 98:4 98:18 98:24 100:24 106:15 112:5 | | | | **goes**(3) 89:15 91:19 98:10 | | **hard**(12) 61:4 96:25 97:21 99:4 100:13 100:18 100:19 100:20 106:15 106:19 106:19 106:21 |
| | | | | **going**(45) 4:14 17:19 26:5 26:6 26:16 27:17 27:5 27:20 28:8 37:22 40:1 40:20 50:2 51:13 57:2 57:8 68:1 68:3 68:3 68:8 68:11 68:23 69:6 70:13 70:18 74:11 79:2 82:7 82:13 82:13 82:13 85:5 91:5 91:21 93:20 93:25 95:16 95:18 96:9 105:4 105:15 105:22 107:8 113:3 113:22 | | |
| **firstly**(1) 26:17 | | | | | | |
| **fishing**(1) 101:23 | | | | | | **harrisburg**(1) 1:45 |
| **five**(1) 15:2 | | | | | | **has**(59) 10:12 10:18 11:5 12:10 14:21 23:17 32:1 32:10 32:13 32:22 33:24 33:25 34:5 34:6 34:10 36:10 37:10 38:18 38:20 38:24 42:23 43:1 43:4 43:20 44:5 47:6 48:3 51:7 58:25 63:8 68:22 70:6 70:18 71:19 72:10 80:20 82:9 84:25 86:5 90:4 91:10 92:11 95:7 97:19 101:7 101:16 102:8 105:12 107:19 109:10 110:16 113:21 |
| **flooded**(1) 74:10 | | | | **gone**(2) 57:20 90:20 | | |
| **floor**(1) 1:28 | | | | **good**(31) 4:3 4:4 4:6 4:19 4:21 5:7 5:8 5:8 5:10 6:2 8:2 23:23 23:24 23:25 24:2 25:16 26:11 26:11 26:13 36:2 36:3 36:17 36:18 36:18 39:10 39:11 47:14 88:6 89:5 107:24 110:1 115:1 | | |
| **flow**(1) 15:14 | | | | | | |
| **flowing**(1) 19:10 | | | | | | |
| **flurry**(1) 77:2 | | | | | | |
| **followed**(1) 31:23 | | | | **got**(3) 30:10 62:17 92:11 | | **hat**(22) 54:25 66:16 67:4 67:25 75:14 91:16 91:22 92:1 92:11 92:22 93:19 95:15 96:3 96:8 96:12 109:1 109:2 109:3 109:3 109:9 109:12 113:7 |
| **follows**(1) 42:8 | | **front**(1) 12:23 | | **gotten**(7) 45:11 51:7 85:9 85:15 90:14 90:19 95:9 | | |
| **footnote**(3) 22:15 82:12 82:21 | | **fronted**(2) 19:4 19:5 | | | | |
| | | **frustration**(1) 10:10 | | **gottlieb**(2) 1:32 39:12 | | |
| | | **full**(3) 44:24 45:1 72:12 | | **government**(1) 16:19 | | |
| | | **fully**(2) 10:11 30:7 | | **governs**(1) 68:25 | | |
| | | **function**(1) 72:25 | | **gradations**(1) 68:6 | | |
| | | **funded**(2) 28:14 109:14 | | **granted**(3) 10:17 34:19 65:21 | | |
| | | **funding**(1) 13:16 | | **granting**(1) 35:4 | | |
| | | **funds**(18) 7:15 8:4 8:7 8:13 8:19 8:20 9:18 9:18 9:25 17:4 17:12 17:15 18:5 19:1 22:23 32:16 42:1 52:10 | | **graph**(1) 47:19 | | |
| | | | | **great**(10) 27:20 31:5 35:3 41:9 41:22 47:7 59:20 62:12 102:2 112:23 | | |
| | | | | | | |
| | | | | **greater**(2) 52:20 55:5 | | |
| | | | | **gross**(15) 1:19 4:6 4:8 4:15 18:24 23:24 26:4 26:12 30:22 31:16 31:23 32:1 32:7 34:16 35:10 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **have(232)** 4:8 4:13 5:9 5:12 5:25 6:7 6:10 6:11 6:13 7:1 7:2 7:3 8:1 8:2 8:6 8:21 9:12 9:19 10:1 11:8 11:9 11:23 13:17 13:23 14:7 14:22 14:24 15:14 15:20 17:10 17:14 17:16 18:6 18:7 19:15 19:23 20:2 20:8 20:19 21:1 21:18 21:19 22:9 22:14 24:21 25:9 25:19 26:14 27:10 29:1 29:6 29:12 30:3 30:5 30:23 30:24 31:25 33:8 33:10 34:17 35:11 37:8 39:2 39:16 39:19 40:6 40:19 40:22 41:7 41:9 42:4 42:24 43:8 43:15 44:9 44:10 44:11 44:13 44:22 45:10 45:11 45:11 45:24 46:14 48:3 48:6 48:6 48:7 48:14 48:17 48:24 48:25 49:8 49:15 49:19 50:5 50:18 50:22 51:7 51:12 51:14 52:20 53:25 54:6 56:11 56:24 57:25 58:3 58:6 58:18 58:20 59:11 59:22 61:4 61:23 62:1 62:11 63:2 63:6 63:17 63:20 64:3 65:22 66:21 68:3 68:15 68:15 69:9 69:11 69:12 69:17 70:3 70:14 70:18 70:21 70:24 71:23 72:22 72:23 73:4 73:4 73:20 76:5 76:7 76:10 76:16 76:20 76:23 78:25 79:9 79:14 79:16 79:17 80:11 80:19 80:24 81:2 81:17 81:19 82:6 84:22 85:3 85:9 85:11 85:13 86:9 86:12 87:8 87:17 87:18 88:22 89:2 89:18 90:20 91:5 91:9 92:7 93:24 94:20 94:24 95:3 95:13 97:19 100:2 100:5 100:13 100:17 100:20 101:6 101:13 101:14 101:20 101:2 102:1 102:3 102:20 103:2 103:3 103:15 103:21 104:10 104:11 104:12 104:14 104:15 104:16 105:4 105:9 105:9 106:7 106:18 106:20 106:24 107:3 107:11 107:1 107:17 107:18 108:3 108:7 108:13 108:1 109:7 109:10 110:3 110:9 110:18 112:9 113:16 | **haven't(6)** 71:13 73:20 82:16 101:21 104:1 104:8 | **haven't(4)** 39:14 40:5 40:13 42:8 | **having(3)** 9:14 101:3 105:20 | **he's(2)** 82:7 93:22 | **head(1)** 43:20 | **heads-up(1)** 38:1 | **hear(5)** 23:21 39:7 74:25 98:17 110:12 | **heard(10)** 32:6 64:6 69:4 75:17 91:4 98:5 99:8 102:7 110:2 110:21 | **hearing(23)** 5:12 5:13 31:23 32:5 32:7 32:8 35:7 35:10 35:15 53:10 53:10 53:12 53:12 53:15 65:8 70:19 80:6 80:15 85:13 87:13 91:20 113:18 115:2 | **held(5)** 6:12 10:8 16:13 18:6 65:1 | **help(1)** 82:23 | **helpful(9)** 10:7 41:14 41:22 51:25 56:7 59:4 74:22 79:2 113:9 | **here(47)** 6:14 6:18 6:24 10:11 11:14 12:9 19:9 31:14 31:18 36:10 41:23 42:11 43:12 44:22 46:13 47:10 52:15 54:11 55:8 59:5 61:13 61:14 64:17 67:11 68:11 68:16 69:9 70:11 71:22 75:5 77:7 79:12 79:25 85:6 87:4 96:17 105:16 106:7 106:13 108:25 109:7 109:17 110:4 113:2 113:8 114:9 | **herrington(15)** 1:35 5:15 5:19 23:19 23:22 23:24 24:1 24:3 24:7 24:12 25:5 25:14 25:15 25:18 29:19 | **herrington's(1)** 10:16 | **hide(1)** 44:21 | **high(1)** 67:14 | **higher(1)** 67:21 | **highly(3)** 54:16 60:21 92:3 | **him(7)** 50:21 50:21 62:4 74:8 74:10 74:22 82:8 | **hindered(1)** 48:20 | **hire(3)** 56:21 72:2 81:2 | **his(22)** 12:13 32:6 51:11 51:12 53:23 56:25 58:7 62:13 62:19 63:7 63:10 63:18 63:18 63:21 64:2 64:2 64:7 74:9 74:20 76:1 76:8 109:22 | **historic(1)** 74:14 | **history(1)** 58:25 | **hoc(20)** 2:29 36:5 37:9 39:15 39:18 39:20 41:17 45:3 53:2 54:2 54:4 54:12 64:19 76:4 76:11 80:23 101:12 104:9 107:15 109:10 | **holder(1)** 17:2 | **holders(4)** 3:29 10:23 14:23 20:1 | **holdings(4)** 7:9 7:12 8:5 8:10 | **home(5)** 5:5 53:5 56:16 56:16 58:13 | **hondo(2)** 3:37 3:38 | **honor(88)** 4:21 5:8 5:20 5:25 6:18 7:24 9:4 11:5 11:11 15:22 16:19 18:24 19:7 21:21 23:17 25:11 25:18 26:5 26:11 27:1 28:6 29:12 29:16 30:14 31:3 32:7 35:5 35:20 36:2 36:18 39:11 39:14 41:3 41:12 41:16 42:12 43:6 46:4 46:7 47:6 50:9 51:23 64:6 65:10 66:10 68:2 68:19 68:22 69:5 71:17 72:21 73:25 75:4 75:17 75:24 80:24 81:3 81:25 83:21 84:10 87:1 87:24 88:4 88:9 89:10 89:10 90:7 90:8 90:11 95:20 96:24 98:5 98:23 104:19 104:24 105:23 106:14 107:7 110:22 111:8 111:19 112:14 112:24 112:25 113:1 113:9 113:14 114:18 114:25 | **honor's(4)** 65:16 66:9 89:7 114:12 | **honorable(1)** 1:19 | **honors(5)** 6:9 18:7 18:10 18:20 19:13 | **honor's(1)** 41:20 | **hope(2)** 83:23 93:1 | **hopefully(2)** 66:8 113:10 | **hopes(1)** 39:21 | **horne(3)** 3:26 35:24 36:5 | **horne-in(1)** 3:26 | **horse(1)** 96:23 | **hot(1)** 96:2 | **hours(2)** 101:8 101:8 | **housekeeping(2)** 110:23 114:16 | **how(19)** 38:12 40:6 45:16 52:1 52:23 53:23 59:9 60:6 60:17 62:3 67:15 67:17 68:16 71:5 79:24 94:10 99:21 109:2 109:9 | **however(5)** 13:22 14:6 70:10 78:16 81:16 | **hubbard(1)** 2:17 | **hughes(1)** 2:17 | **hundreds(1)** 57:2 | **hypothetical(2)** 50:11 51:9 | **i'd(1)** 68:18 | **i'll(9)** 50:10 75:5 81:18 84:10 98:2 105:13 112:1 112:18 112:19 | **i'm(16)** 63:12 66:5 70:7 70:13 72:14 73:2 73:25 75:4 80:5 82:15 82:16 86:6 87:18 98:10 105:16 108:4 | **i've(5)** 50:24 69:4 110:1 110:2 110:13 | **idea(2)** 4:14 40:8 | **identification(4)** 58:19 61:6 93:6 93:9 | **identified(8)** 62:5 73:14 76:16 94:13 94:16 103:10 104:25 109:10 | **identify(11)** 64:21 70:17 74:21 74:25 76:21 95:17 97:14 97:16 97:18 98:13 98:1 | **identifying(13)** 43:3 51:8 56:17 58:12 58:19 59:1 59:3 59:9 62:2 72:23 72:25 73:11 77:22 | **ifsa(3)** 13:9 27:24 28:7 | **iii(1)** 21:8 | **immediately(1)** 7:21 | **impact(3)** 33:11 48:3 84:15 | **impacted(1)** 59:24 | **impacting(1)** 26:20 | **impeach(1)** 111:12 | **implementation(1)** 29:3 | **implicating(1)** 65:23 | **implications(1)** 85:5 | **important(11)** 6:22 15:8 15:21 46:12 46:23 47:4 75:6 75:7 75:13 75:20 94:15 | **importantly(2)** 35:1 48:5 | **impose(1)** 96:4 | **imposed(2)** 96:15 97:6 | **inability(1)** 10:11 | **inadequate(1)** 43:7 | **inc(3)** 1:8 3:33 3:33 | **inception(1)** 48:4 | **include(4)** 11:18 14:12 26:23 77:8 | **includes(1)** 32:12 | **including(8)** 8:15 9:21 15:17 24:13 24:15 28:13 65:2 96:10 | **inclusive(1)** 53:20 | **income(3)** 52:10 52:11 52:25 | **incomplete(1)** 43:7 | **incorporated(1)** 48:1 | **incorrect(1)** 92:5 | **indeed(4)** 6:3 8:5 22:10 66:16 | **independent(1)** 71:18 | **independently(1)** 72:14 | **india(1)** 21:9 | **indicated(1)** 80:15 | **indirect(2)** 86:1 86:5 | **indirectly(1)** 65:1 | **indiscernible(25)** 4:9 4:10 4:11 4:12 4:13 26:18 27:3 27:6 27:7 28:14 29:15 30:17 30:18 30:18 30:20 31:18 31:18 31:21 31:24 32:3 32:4 32:16 34:2 34:7 96:11 | **individual(7)** 52:9 56:18 56:20 63:16 63:23 76:5 104:22 | **individual's(1)** 70:5 | **individually(2)** 74:11 76:6 | **individuals(7)** 54:16 55:22 62:6 103:10 104:10 104:13 104:21 | **indulge(1)** 113:1 | **indulgence(2)** 36:14 41:20 | **ineligible(1)** 68:3 | **inescapable(1)** 44:19 | **information(128)** 42:10 42:13 43:3 43:23 44:2 44:4 44:4 44:12 45:8 45:13 46:10 46:20 47:8 47:9 47:11 48:17 48:22 49:2 49:18 49:21 50:17 54:3 54:5 54:8 54:15 54:17 54:18 56:10 56:17 57:15 57:24 58:6 58:7 58:9 58:11 58:12 58:14 58:14 58:23 59:1 59:3 59:10 59:17 59:18 59:18 59:19 59:22 62:13 63:5 63:14 63:17 63:22 63:23 63:24 64:2 64:6 65:10 65:13 66:6 66:10 66:11 66:22 68:20 68:24 69:11 69:12 69:21 69:24 70:18 70:22 70:23 70:24 71:2 71:3 71:10 71:15 71:23 72:5 72:6 72:11 72:12 72:13 72:17 73:6 73:20 76:9 76:12 76:24 79:10 79:15 80:20 84:24 85:2 85:3 87:10 90:18 92:23 94:22 95:2 98:14 100:1 101:7 104:2 104:4 104:14 104:21 105:1 105:4 105:15 106:10 106:22 106:25 108:3 108:11 110:5 110:6 110:11 110:12 110:18 113:6 113:15 | **initial(1)** 47:22 | **initiated(1)** 100:2 | **initiating(1)** 38:2 | **injury(2)** 48:9 48:18 | **inquiries(1)** 104:3 | **inquiry(1)** 4:16 | **insolvency(1)** 6:23 | **instance(2)** 10:23 91:8 | **instances(1)** 71:22 | **instead(2)** 62:15 74:4 | **instructions(6)** 8:16 9:21 9:24 19:1 19:7 20:15 | **intended(1)** 65:4 | **intention(1)** 49:8 | **inter(1)** 28:16 | **inter-estate(6)** 4:10 6:4 20:16 26:25 27:18 30:15 | **intercompany(5)** 5:18 11:15 11:17 23:2 23:6 | **interest(5)** 21:25 22:2 24:20 34:22 59:20 | **interested(2)** 3:22 48:16 | **interests(6)** 7:5 60:15 60:24 60:25 62:23 63:9 | **international(3)** 7:9 8:5 8:9 | **interpreted(1)** 85:1 | **interrogatories(13)** 43:8 43:9 45:1 53:21 79:6 79:8 79:15 80:11 81:10 83:1 83:14 84:9 88:18 | **interrogatory(5)** 54:21 79:17 80:1 80:10 82:8 | **into(39)** 5:18 8:10 8:12 9:13 10:7 12:16 13:15 14:5 18:8 22:1 28:25 36:10 37:9 38:8 40:6 46:8 47:25 48:1 53:7 55:7 61:22 72:25 79:16 91:15 92:6 93:21 99:18 99:20 100:20 101:15 101:16 104:6 106:21 106:25 107:8 108:24 109:14 111:4 111:18 | **introductory(1)** 36:11 | **investment(1)** 17:9 | **involved(8)** 28:9 51:19 55:4 105:6 105:9 106:16 107:11 113:23 | **involving(1)** 85:6 | **ireland(2)** 14:13 15:2 | **ironic(1)** 94:17 | **irs(1)** 16:20 | **israel(3)** 6:8 9:15 18:7 | **israeli(1)** 6:16 | **issue(57)** 8:15 14:17 18:8 21:13 33:7 33:18 33:24 34:3 34:6 34:12 40:4 40:6 40:10 42:18 43:2 43:6 43:18 44:16 45:24 46:13 46:19 47:10 48:6 50:16 51:1 51:11 53:21 54:11 64:16 69:8 71:8 74:8 74:9 74:17 75:2 79:12 80:5 81:9 81:12 84:4 84:9 85:12 85:13 85:19 87:19 88:15 89:7 89:14 95:12 97:2 97:24 105:12 108:24 112:1 113:12 113:13 113:16 | **issues(51)** 6:4 6:6 12:22 13:17 13:21 13:21 14:7 14:12 15:9 17:3 18:22 20:17 20:22 21:3 21:7 21:12 21:17 24:5 24:16 30:8 32:13 33:3 33:8 33:10 34:25 40:2 42:3 42:7 43:10 43:12 43:13 43:16 44:13 44:22 44:23 45:22 46:9 46:11 50:21 53:13 54:14 55:9 56:5 64:23 68:11 77:3 84:1 90:1 98:1 103:13 | **issuing(1)** 114:24 | **it's(56)** 46:11 47:4 49:16 49:16 50:2 50:15 50:22 51:18 52:8 57:21 59:4 69:6 69:9 70:2 71:17 72:15 74:2 74:3 74:7 75:6 76:4 76:5 80:4 81:3 82:2 83:2 84:4 85:8 85:12 85:16 85:20 87:4 89:20 91:1 93:25 94:3 94:17 96:16 97:9 98:2 98:4 100:10 100:13 101:23 101:24 102:23 103:23 105:12 106:2 107:21 107:21 107:22 108:8 108:24 113:2 113:22 | **item(7)** 4:25 5:1 21:24 30:16 35:20 74:12 74:12 | **items(3)** 28:18 28:23 29:3 | **its(10)** 8:4 17:2 33:24 39:19 43:20 48:4 50:4 59:17 91:6 107:5 |

| Word | Page:Line |
|---|---|
| **it's**(22) 9:10 10:20 11:19 11:20 12:12 12:21 14:22 20:13 26:19 26:21 28:3 28:2 33:2 37:23 37:25 40:3 40:9 40:14 40:24 41:22 44:6 44:7 | |
| **i'd**(1) 45:23 | |
| **i'll**(12) 4:15 5:13 5:14 5:18 14:5 16:14 21:2 23:21 26:1 27:17 29:19 36:13 | |
| **i'm**(6) 11:5 23:18 26:16 32:25 34:12 36:2 | |
| **i've**(2) 21:4 30:6 | |
| **james**(2) 1:34 36:5 | |
| **jane**(1) 39:12 | |
| **january**(1) 47:25 | |
| **japan**(2) 16:9 21:4 | |
| **job**(5) 27:20 54:18 56:20 99:17 100:24 | |
| **john**(3) 50:15 50:17 51:10 | |
| **joint**(17) 2:17 5:12 7:6 8:2 9:6 9:8 19:24 20:5 21:25 22:1 30:17 31:23 32:8 35:7 35:9 35:15 65:8 | |
| **jointly**(1) 1:6 | |
| **jones**(1) 3:22 | |
| **joshua**(1) 3:8 | |
| **judge**(20) 1:20 4:6 4:8 4:15 18:24 23:24 26:3 26:12 30:22 31:16 31:23 32:1 32:7 34:16 35:10 45:5 95:16 96:4 108:20 109:5 | |
| **july**(1) 22:12 | |
| **juncture**(1) 38:14 | |
| **june**(2) 1:36 51:24 | |
| **jurisdiction**(4) 16:2 34:4 34:5 34:11 | |
| **jurisdictional**(1) 64:13 | |
| **just**(75) 11:6 12:6 13:6 21:2 27:2 28:16 28:17 29:16 30:24 31:2 31:17 31:17 36:10 37:3 37:25 40:18 40:24 40:24 41:4 41:10 51:9 56:2 56:7 57:22 57:24 58:2 59:4 61:21 62:22 62:25 64:16 65:5 69:6 69:8 71:11 72:14 74:5 76:25 77:17 78:1 78:12 78:16 80:6 81:7 82:12 82:20 84:3 84:20 85:20 88:13 89:11 91:6 95:11 98:6 98:10 100:19 101:4 101:23 103:4 103:13 105:22 106:19 107:18 107:21 107:22 108:4 108:1 109:16 109:17 110:22 111:3 112:7 113:17 114:5 114:9 | |
| **justice**(33) 4:4 4:6 4:17 4:18 5:9 5:10 23:25 24:2 26:1 26:3 26:8 26:10 27:12 29:14 29:18 30:6 30:11 30:19 31:3 31:14 31:16 31:21 34:17 34:18 35:6 35:8 35:13 35:14 35:17 64:12 65:4 65:8 87:13 | |
| **justification**(1) 101:17 | |
| **kahn**(1) 3:7 | |
| **kaplan**(1) 47:19 | |
| **kathryn**(2) 2:18 | |
| **kay-oliphant**(1) 2:5 | |
| **keach**(1) 2:38 | |
| **keech**(1) 45:3 | |
| **keep**(5) 45:21 46:12 47:5 75:6 82:12 | |
| **keeping**(1) 62:9 | |
| **ken**(2) 2:44 64:10 87:1 | |
| **kevin**(1) 1:19 | |
| **key**(7) 61:7 74:9 74:15 74:16 97:16 99:23 102:6 | |
| **keys**(4) 6:12 6:15 6:16 9:7 | |

| Word | Page:Line |
|---|---|
| **kim**(86) 1:36 39:7 39:10 39:11 39:12 52:13 55:10 55:12 55:15 55:18 56:1 56:5 57:12 57:24 63:11 63:12 71:22 72:20 72:21 72:24 73:12 73:17 73:20 74:23 75:22 75:23 76:3 76:15 77:10 77:11 77:17 77:19 77:24 78:2 78:4 78:10 78:12 78:23 79:3 79:11 79:13 79:19 79:19 80:5 80:8 81:8 83:12 86:8 86:9 86:15 88:16 91:24 92:13 95:25 98:17 98:23 99:1 100:4 100:13 100:23 101:2 102:12 102:14 102:18 102:18 102:23 104:17 106:13 106:14 108:23 110:21 110:22 111:1 111:3 112:13 112:14 112:24 114:15 114:18 | |
| **kind**(17) 44:20 45:8 46:20 57:15 59:21 60:3 60:4 60:9 62:25 64:1 79:25 91:14 91:19 102:2 102:8 113:9 113:14 | |
| **kinds**(2) 93:17 93:23 | |
| **king**(1) 3:16 | |
| **kingdom**(1) 6:25 | |
| **knew**(1) 68:10 | |
| **know**(73) 9:13 10:9 20:11 20:12 24:8 32: 38:10 38:16 38:18 40:7 40:24 45:24 50:1 50:18 50:19 51:14 51:19 55:18 59:4 61:1 61:18 61:22 61:23 61:24 62:13 62:14 63:19 63:22 65:4 68:4 68:15 68:16 70:13 70:17 71:4 71:5 71:15 73:4 74:2 74:4 74:12 74:20 76:17 76:18 77:5 77:16 79:17 79:19 80:9 80:24 81:3 84:18 87:20 89:11 90:1 93:13 94:12 95:20 97:15 102:5 102:18 103:6 104:10 105:12 105:18 107:1 107:21 107:23 108:8 109:23 112:7 113:2 113:21 | |
| **known**(7) 7:9 11:18 15:23 16:18 50:19 90:22 104:11 | |
| **kreller**(1) 3:30 | |
| **language**(2) 53:4 53:5 | |
| **large**(4) 30:15 60:20 71:23 99:1 | |
| **larger**(6) 57:8 60:12 63:18 68:18 75:16 112:1 | |
| **last**(9) 21:24 27:2 29:8 50:19 57:20 85:20 96:20 97:11 111:9 | |
| **later**(10) 33:18 45:19 53:17 53:17 83:15 83:17 89:16 109:19 110:17 111:13 | |
| **latham**(1) 2:4 | |
| **laughter**(16) 11:13 12:2 12:8 12:14 14:18 16:21 17:25 36:22 37:1 71:7 89:23 96:22 98:21 109:20 112:17 114:19 | |
| **laundry**(1) 21:16 | |
| **law**(6) 7:25 52:9 52:13 52:17 84:25 92:5 | |
| **laws**(3) 6:23 59:11 59:13 | |
| **lawyer**(1) 84:18 | |
| **lawyers**(4) 48:10 87:25 103:15 107:6 | |
| **layton**(1) 3:13 | |
| **lazard**(6) 17:7 17:8 18:12 18:17 19:4 | |
| **lead**(1) 5:20 | |
| **leading**(1) 27:21 | |
| **least**(13) 35:7 50:19 55:2 57:21 74:19 74:22 78:20 81:19 84:13 84:17 92:13 105:13 110:4 | |
| **left**(2) 13:25 102:3 | |
| **legal**(2) 101:8 101:9 | |
| **legend**(3) 42:20 42:23 43:1 | |
| **legends**(1) 46:10 | |
| **legitimate**(2) 62:23 63:9 | |
| **less**(8) 8:24 13:8 13:23 13:24 55:1 55:6 80:22 92:9 | |
| **let**(11) 12:17 14:5 20:12 21:2 39:7 66:24 79:5 93:21 98:17 109:17 109:21 | |
| **let's**(3) 50:15 67:16 72:7 | |

| Word | Page:Line |
|---|---|
| **letter**(1) 21:14 | |
| **level**(2) 67:6 94:7 | |
| **liberty**(1) 1:37 | |
| **license**(1) 21:12 | |
| **like**(21) 6:7 9:15 9:22 12:12 18:7 18:7 44:2 45:23 54:9 55:3 58:13 59:18 72:3 80:16 94:9 94:24 98:18 106:5 107:18 108:8 109:22 | |
| **likely**(3) 101:6 102:5 102:7 | |
| **likes**(1) 74:10 | |
| **likewise**(1) 36:20 | |
| **limit**(3) 62:18 63:14 93:11 | |
| **limited**(6) 44:13 69:20 80:24 92:2 92:18 93:25 | |
| **limits**(1) 47:8 | |
| **line**(3) 58:23 74:12 74:12 | |
| **link**(2) 30:18 51:16 | |
| **liquidation**(1) 9:12 | |
| **lisa**(1) 1:33 | |
| **list**(6) 20:22 21:16 57:1 61:13 71:18 | |
| **listed**(2) 21:16 101:4 | |
| **lists**(2) 76:21 77:19 | |
| **litigants**(1) 47:11 68:23 | |
| **litigation**(12) 10:10 32:21 59:22 59:25 59:25 77:13 78:1 78:7 78:15 78:19 78:25 94:4 | |
| **little**(16) 6:24 37:4 40:25 45:19 55:21 57:18 59:4 67:20 67:20 70:13 70:14 79:2 84:18 98:24 112:12 112:17 113:23 | |
| **lives**(1) 50:18 | |
| **llp**(5) 2:4 2:10 2:17 2:31 2:43 | |
| **local**(1) 36:9 | |
| **locate**(2) 50:23 68:12 | |
| **location**(1) 100:14 | |
| **lock**(2) 6:20 9:7 | |
| **log**(2) 94:17 103:16 | |
| **logging**(1) 74:4 | |
| **london**(2) 7:6 7:11 | |
| **long**(6) 44:6 52:10 57:3 63:25 81:15 113:1 | |
| **longer**(2) 32:17 98:2 | |
| **look**(11) 57:6 61:7 62:6 66:17 69:19 73:9 100:8 103:16 103:23 106:20 112:19 | |
| **looked**(4) 20:2 103:6 103:9 105:9 | |
| **looking**(11) 9:22 38:10 60:5 71:18 73:6 101:12 107:8 107:10 107:10 107:11 107:2 | |
| **lose**(1) 95:16 | |
| **lot**(11) 9:20 12:16 51:6 70:8 82:17 92:10 105:23 106:23 107:17 108:14 108:14 | |
| **lots**(2) 20:14 20:14 | |
| **low**(1) 67:19 | |
| **lpt**(1) 33:18 | |
| **lynchpin**(1) 113:7 | |
| **mace**(1) 1:41 | |
| **made**(16) 7:19 14:2 15:20 16:13 19:17 23:5 44:25 45:11 45:11 46:14 48:11 92:9 94:4 97:5 99:24 100:8 | |
| **main**(5) 11:18 14:15 20:12 20:13 40:10 | |
| **maine**(1) 85:17 | |
| **maintained**(1) 54:25 | |
| **maintaining**(1) 9:11 | |
| **major**(1) 6:13 | |
| **majority**(1) 51:25 | |
| **make**(33) 4:15 6:3 7:4 8:22 13:6 20:13 22:16 29:11 30:9 36:1 38:16 39:25 41:10 47:23 53:24 59:8 59:12 60:20 64:25 65:9 65:15 66:18 67:20 69:2 71:5 73:5 76:25 80:17 90:2 92:23 97:2 98:14 107:23 | |
| **makes**(9) 40:15 44:1 46:3 46:6 64:20 72:11 72:16 82:9 85:10 | |

| Word | Page:Line |
|---|---|
| **making**(8) 59:20 60:17 60:19 85:25 89:22 95:22 97:12 114:1 | |
| **management**(3) 54:17 67:5 92:3 | |
| **manhattan**(1) 2:25 | |
| **manner**(1) 7:5 | |
| **many**(14) 17:23 21:18 28:18 52:14 55:20 67:15 70:10 71:22 77:4 81:2 93:14 94:10 106:17 108:13 | |
| **marked**(1) 48:24 | |
| **market**(3) 1:11 1:27 2:33 | |
| **match**(7) 61:6 61:8 62:3 66:22 74:20 75:25 81:5 | |
| **material**(1) 16:12 | |
| **materials**(3) 29:23 30:6 106:3 | |
| **mathematical**(1) 17:22 | |
| **matter**(29) 5:14 6:18 24:15 25:9 25:19 27:13 32:2 32:4 35:1 35:18 37:11 37:23 37:24 38:11 38:18 39:5 40:12 47:9 65:18 71:13 71:14 83:12 89:24 107:21 107:22 110:23 111:10 114:16 115:7 | |
| **matters**(11) 4:10 5:11 15:5 15:8 24:13 25:21 26:25 27:7 28:17 31:25 34:16 | |
| **matters"**(1) 12:12 | |
| **mauro**(1) 3:34 | |
| **maximum**(1) 55:24 | |
| **may**(17) 15:22 18:7 25:15 25:16 39:2 40:17 42:11 58:3 63:22 64:6 64:8 70:14 71:13 88:2 107:17 113:1 113:13 | |
| **maybe**(5) 10:6 55:21 57:4 98:18 100:16 | |
| **mccloy**(2) 2:23 3:29 | |
| **mcdonald**(131) 36:2 36:4 36:4 36:9 36:14 36:16 41:15 41:16 41:17 41:23 42:7 42:16 45:7 45:16 45:19 46:1 46:3 46:6 46:18 46:22 47:1 47:4 47:22 49:7 50:8 51:3 51:22 53:12 53:23 55:4 56:25 57:18 57:22 61:24 62:10 63:4 63:13 66:4 66:8 66:15 66:24 67:8 67:23 71:17 72:1 72:5 74:20 74:24 75:1 75:4 75:10 75:13 76:20 76:25 78:18 80:3 80:6 80:14 81:9 81:13 81:15 81:22 82:3 83:4 83:6 83:12 84:8 84:12 84:17 85:19 85:21 85:22 86:4 87:20 87:24 88:1 88:2 88:5 88:7 88:9 88:15 88:21 89:1 90:10 90:13 90:16 90:24 91:14 92:17 93:2 93:5 93:9 94:12 95:7 95:11 95:24 96:23 97:1 97:7 97:9 97:18 98:4 98:12 98:15 98:16 99:23 101:16 104:18 104:19 106:5 106:12 108:20 110:9 111:6 111:8 111:14 111:16 111:19 111:22 111:24 112:2 112:16 112:18 112:25 113:18 113:25 114:5 114:8 114:12 114:14 | |
| **mcdonald's**(4) 55:9 58:16 60:15 73:15 | |
| **mean**(5) 40:13 40:14 43:21 56:21 69:24 73:17 93:22 93:23 96:18 98:23 103:10 106:14 107:19 111:12 | |
| **meaningful**(1) 68:14 | |
| **means**(1) 11:20 | |
| **mediation**(14) 37:14 77:2 77:5 77:7 77:15 77:16 77:21 78:1 78:9 78:12 78:17 79:1 79:14 79:24 | |
| **meet**(2) 37:16 83:24 | |
| **meet-and-confer**(1) 42:4 | |
| **members**(5) 15:2 49:5 69:24 70:15 76:11 | |
| **mention**(2) 85:10 95:11 | |
| **mentioned**(3) 51:13 71:22 91:20 | |
| **merge**(3) 80:18 80:19 81:6 | |
| **merges**(1) 91:15 | |
| **merits**(5) 51:25 55:8 | |
| **met**(1) 53:22 | |
| **mexican**(1) 21:7 | |
| **microphon**(1) 87:22 | |
| **microvision**(1) 21:13 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**middle**(1) 2:39
**might**(18) 23:8 27:10 57:20 61:4 63:17 73:2 73:3 76:7 82:14 101:19 102:20 103:3 107:11 107:12 107:12 108:7 108:16

**milbank**(2) 2:23 3:29
**million**(19) 7:18 7:21 7:25 8:11 8:12 8:16 8:24 8:25 9:1 16:16 17:6 17:15 18:3 18:15 19:6 19:6 19:9 19:10 101:8

**mind**(8) 45:21 46:12 47:5 62:9 74:1 75:7 79:5 87:21

**minimal**(2) 68:9 69:17
**minute**(1) 43:14
**missing**(1) 72:18
**misunderstanding**(1) 88:10
**mix**(2) 40:6 81:5
**moment**(6) 21:2 36:25 46:22 91:12 110:4 113:1

**money**(16) 7:17 14:9 14:10 37:8 45:16 53:7 60:17 60:19 92:10 100:21 107:4 107:4 107:6 108:14 109:5 109:5

**monies**(2) 8:10 96:15
**monitor**(10) 2:44 7:20 20:4 28:9 30:4 32:13 32:22 33:15 33:24 64:11

**monitoring**(1) 89:5
**monitory**(1) 33:8
**monitor's**(3) 28:3 28:4 28:21
**monthly**(2) 17:13 19:4
**months**(4) 12:1 53:8 53:17 53:17
**morawetz**(31) 4:5 4:6 4:18 4:19 5:9 5:10 23:25 24:2 26:1 26:8 26:10 27:12 29:14 29:18 30:6 30:11 30:19 31:7 31:14 31:16 31:21 34:17 34:19 35:7 35:8 35:14 35:17 65:18 87:13

**morawetz's**(2) 64:12 65:5
**more**(27) 13:8 13:23 13:24 40:15 42:10 48:5 50:4 53:24 70:8 71:3 72:17 80:17 81:6 87:4 87:11 87:19 89:25 92:12 94:7 101:17 105:21 110:8 110:8 110:18 112:12 113:21 113:23

**morning**(22) 4:3 4:4 4:6 4:19 4:21 5:7 5:8 5:9 5:10 23:23 23:24 23:25 24:2 26:11 26:12 26:13 36:2 36:3 36:17 38:18 39:10 39:11

**morris**(3) 1:24 2:10 4:22
**most**(11) 35:1 47:15 55:16 57:13 59:1 63:14 85:8 94:4 99:16 101:6 101:11 101:11 104:2

**motion**(45) 5:1 10:16 11:14 11:14 20:20 25:2 26:7 28:3 29:21 29:23 32:5 32:11 32:12 33:22 35:23 35:25 37:7 37:13 37:25 40:19 41:24 41:25 42:2 42:21 43:17 44:14 44:23 46:9 53:8 53:10 53:11 63:12 66:12 85:10 85:10 86:7 92:6 94:12 94:16 95:12 103:11 103:17 103:24 110:20 111:22

**motions**(6) 4:8 23:17 31:3 34:19 35:4
**move**(6) 5:18 35:1 37:20 42:16 47:1 90:10
**mrda**(3) 14:8 14:16 15:3
**much**(14) 6:7 9:15 17:23 23:15 24:4 26:14 35:10 45:16 53:19 60:17 64:10 65:25 71:6 108:14
**mullen**(7) 90:22 99:10 100:8 100:9 103:14 108:5 110:14

**must**(6) 29:24 91:24 92:1 92:2 92:20 94:6
**mutual**(1) 95:17
**naifh**(1) 26:20
**name**(14) 50:14 50:15 51:12 51:15 52:3 56:15 71:18 72:1 73:4 73:9 73:10 73:15 74:5 106:6

**names**(36) 43:4 46:19 46:23 50:10 50:25 51:6 51:15 51:19 58:12 61:4 61:5 61:8 61:9 61:10 62:1 66:23 66:25 68:14 70:10 71:16 72:12 73:3 75:18 76:1 77:8 77:20 78:4 78:5 78:9 78:16 78:22 94:14 94:16 97:19 110:10 113:4

**naturally**(1) 56:24
**nearly**(2) 18:15 91:2
**necessarily**(1) 10:18
**necessary**(3) 9:24 44:15 110:7
**need**(45) 7:15 10:21 20:7 20:8 20:18 20:15 40:23 41:11 44:12 46:20 50:7 50:8 50:10 50:16 50:17 51:15 51:19 60:14 63:8 66:10 66:25 68:8 68:11 68:17 69:12 71:15 71:16 72:6 72:9 72:10 72:13 79:10 81:22 81:23 85:16 91:18 91:21 92:12 92:22 97:15 100:21 105:2 105:5 105:19 112:15

**needed**(5) 10:23 13:25 18:23 61:2 104:2
**needing**(1) 101:17
**needs**(5) 9:17 65:7 87:12 105:6 105:7
**negotiated**(3) 29:1 29:8 107:14
**negotiation**(1) 33:10
**negotiations**(2) 27:21 28:9
**neighborhood**(1) 67:24
**nen**(3) 18:6 18:8 18:17
**netting**(1) 16:7
**networks**(7) 1:8 7:9 7:12 21:4 21:8 36:6 41:18

**neutral**(2) 26:22 32:22
**never**(8) 51:13 51:13 56:14 58:4 61:19 61:21 95:8 95:18

**nevertheless**(1) 54:13
**new**(10) 1:38 2:7 2:20 2:26 2:46 3:10 45:4 55:3 82:2 84:4

**next**(2) 11:7 11:14
**ngs**(1) 17:1
**nice**(3) 35:13 36:20 83:25
**nichols**(2) 1:24 4:22
**nine**(3) 53:8 103:7 103:9
**nni**(20) 8:15 15:2 16:15 17:2 17:6 17:12 17:13 17:15 18:25 19:3 22:17 22:22 22:25 22:25 23:7 24:3 24:24 25:7 52:3 52:15

**nni's**(1) 52:5
**nnifh**(3) 8:13 8:25 9:3
**nnl**(12) 8:15 15:2 17:12 19:3 19:3 19:4 19:8 21:7 22:17 22:22 22:25 23:1

**nnr**(1) 28:14
**nnsa**(1) 14:13
**nnuk**(3) 14:13 15:2 17:12
**nobody**(1) 68:22
**non**(3) 44:4 96:10 100:5
**non-debtor**(3) 16:10 21:4 21:8
**non-plan**(1) 103:25
**non-privileged**(2) 43:23 94:22
**none**(1) 35:9

**normally**(1) 66:19
**nortel**(42) 1:8 5:2 6:4 7:9 7:12 12:19 15:14 16:1 16:11 16:18 21:4 21:7 21:8 21:10 21:10 21:11 22:18 24:25 25:2 26:22 27:13 32:4 32:14 32:16 32:17 32:25 34:7 36:1 43:4 43:5 45:24 51:7 59:6 63:6 67:12 70:6 71:9 81:11 90:25 94:8 97:20 113:17

**nortel's**(2) 50:20 79:6
**nortel's**(1) 33:14
**north**(5) 1:27 3:16 84:23 85:16 88:18

**not**(145) 4:13 10:18 10:20 11:8 11:12 13:23 14:21 16:1 17:4 17:16 17:17 20:1 20:4 30:17 32:11 33:21 33:22 37:14 37:25 38:9 38:22 38:24 40:14 41:12 44:7 44:7 44:17 44:23 44:25 45:2 48:21 49:1 49:1 49:21 52:11 54:13 54:14 55:3 55:6 55:8 57:12 57:24 58:2 58:3 58:16 59:21 60:3 62:11 62:17 62:22 62:24 63:15 64:1 64:3 65:4 65:22 66:25 67:11 68:3 68:13 69:7 69:9 70:18 70:21 70:25 71:11 71:17 72:14 73:20 74:2 74:7 74:17 75:2 75:14 72:51 76:5 78:1 78:15 78:19 78:22 79:12 81:3 81:6 81:13 82:15 82:16 83:2 84:4 84:18 85:8 85:10 86:18 87:4 91:11 92:14 92:15 92:21 93:19 93:25 95:2 96:4 96:7 96:12 96:13 97:10 97:21 97:24 97:25 98:2 98:4 98:6 98:10 100:22 100:24 101:24 103:2 104:3 104:5 106:10 106:14 106:17 106:23 107:18 107:21 107:21 107:22 108:8 108:17 108:24 109:5 109:10 109:16 113:6 114:5

**note**(10) 19:13 20:18 21:21 23:5 39:16 61:18 103:11 107:25 108:25 109:16
**noted**(1) 33:1
**nothing**(11) 13:2 27:5 30:3 53:2 69:15 69:16 71:3 84:18 90:3 95:6 102:8
**noting**(1) 102:23
**notwithstanding**(2) 27:7 52:14
**now**(27) 10:25 11:9 14:16 15:4 18:13 25:23 35:6 35:17 35:18 35:20 40:8 49:7 50:14 71:12 74:9 76:15 77:7 79:9 79:9 82:3 89:2 90:10 99:14 101:3 105:22 106:18 113:12

**number**(36) 7:21 15:9 15:21 20:22 24:13 24:15 28:23 28:24 35:21 42:8 51:12 53:22 53:23 56:15 56:16 57:4 58:19 58:21 58:22 59:24 60:1 62:13 67:14 67:19 69:21 70:1 70:18 70:19 70:21 72:25 73:1 73:10 74:3 74:5 74:7 105:3

**numbers**(18) 46:20 46:25 51:8 55:14 57:20 58:13 61:7 61:8 61:9 72:23 74:2 76:1 77:21 77:22 78:5 78:14 78:22 78:25
**numerous**(2) 42:4 60:23
**object**(2) 69:6 111:9
**objection**(15) 34:23 37:10 37:24 47:20 53:13 66:11 70:22 70:24 85:9 86:6 95:12 97:12 103:11 111:1 111:6

**objections**(1) 24:22
**obligated**(1) 85:2
**obligates**(1) 49:1
**obligation**(4) 44:5 84:22 94:21 98:7
**obligations**(3) 15:11 21:6 22:5
**observation**(1) 109:25
**obtain**(2) 69:21 85:3
**obtained**(1) 65:10
**obviate**(1) 84:1
**obvious**(3) 64:23 87:11 87:18
**obviously**(14) 11:20 37:21 38:4 38:8 40:1 43:10 70:24 76:4 85:13 100:19 103:4 107:7 109:16 112:16

**occasions**(2) 53:24 60:23
**occur**(1) 48:9
**october**(1) 13:18
**off**(9) 10:13 10:13 28:5 41:12 57:1 68:15 70:13 84:25 102:20

**offer**(4) 30:23 62:4 83:24 111:4
**offered**(5) 54:16 55:1 55:5 61:2 61:10
**office**(3) 10:23 14:23 20:1
**official**(1) 9:13
**often**(2) 50:11 70:7

**okay**(51) 5:16 5:20 8:18 13:1 13:19 17:20 19:22 25:15 25:23 26:8 30:13 31:5 31:7 37:5 38:23 39:9 41:3 41:13 41:23 46:21 47:1 47:3 51:21 71:25 72:20 74:6 74:18 74:24 75:9 76:8 76:23 78:8 78:11 78:17 79:2 80:7 81:8 81:14 81:20 83:8 84:11 85:19 86:25 87:15 88:9 90:13 90:23 112:3 112:11 113:25 114:11

**old**(1) 6:2
**olivia**(1) 3:34
**ombudsman**(1) 70:4
**once**(7) 8:13 64:12 76:10 97:13 97:18 100:19 106:24

**one**(69) 1:37 2:19 2:25 3:9 3:15 4:9 4:14 7:8 10:8 10:22 11:18 11:20 11:21 12:9 12:17 12:22 13:5 13:24 14:17 15:21 16:17 18:9 18:21 19:14 20:10 20:18 21:1 21:21 21:22 22:10 27:23 30:16 31:18 34:3 37:21 40:5 42:8 45:24 45:25 50:11 51:4 52:18 61:12 61:18 63:12 69:10 73:4 76:3 76:6 80:5 80:20 80:25 83:9 84:13 85:7 92:13 95:8 98:1 99:16 99:24 102:6 103:13 103:15 103:18 104:22 108:19 110:23 112:5

**ones**(3) 57:15 78:24 99:4
**ongoing**(1) 22:5
**only**(38) 8:9 26:16 42:23 46:10 47:13 47:23 48:25 49:1 49:18 49:23 49:24 51:4 57:6 57:10 57:13 57:14 57:14 58:15 60:12 61:3 61:16 63:18 66:25 71:14 74:9 77:6 78:20 81:25 82:1 82:6 90:17 92:8 100:7 100:16 103:7 104:20 104:22 108:1

**onsc**(1) 34:8
**onto**(1) 11:6 107:4
**onward**(1) 47:18
**open**(2) 23:7 62:12
**opened**(1) 22:11
**opening**(2) 33:21 43:11
**operate**(2) 43:25 48:23
**operated**(2) 59:14 91:4
**operates**(1) 87:9
**operating**(1) 98:2
**operations**(3) 16:11 21:9 93:12
**opinion**(1) 95:17
**opportunity**(6) 39:14 40:5 40:14 58:5 110:9 114:3

**opposed**(5) 32:11 33:22 44:14 66:6 69:16
**opposing**(1) 38:21
**opposite**(1) 44:9
**opposition**(1) 20:10
**oppression**(1) 69:3
**order**(47) 7:4 7:15 12:17 16:14 18:11 18:25 19:6 19:14 20:19 22:10 22:16 22:20 24:23 25:6 25:12 26:6 30:10 30:15 30:16 30:16 34:14 38:7 44:15 47:5 47:6 48:7 48:25 50:3 50:3 61:17 62:24 65:5 65:16 68:22 68:25 69:18 69:25 82:23 84:13 102:1 106:15 111:24 112:1 112:7 112:10 112:20 112:21
**orders**(9) 22:11 29:9 29:10 30:12 31:3 34:24 35:4 69:1 69:20

**original**(3) 22:7 41:25 72:18
**originally**(1) 29:7
**other**(55) 4:9 8:14 10:7 12:12 14:21 15:5 15:10 17:18 20:18 20:25 21:5 21:11 22:11 24:15 24:25 24:25 27:18 33:14 34:8 40:4 40:5 44:3 51:4 52:21 53:5 54:18 56:16 57:17 58:22 58:24 59:22 63:12 65:1 65:12 65:16 68:10 72:10 73:1 76:10 76:17 79:8 79:11 80:19 81:2 89:12 93:14 93:24 94:15 94:22 100:7 105:7 107:25 108:10 108:19
**others**(1) 10:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**otherwise**(10) 11:6 23:18 44:7 53:3 68:24 69:13 85:14 91:23 92:18 112:7

**our**(34) 4:11 4:25 5:1 20:20 24:18 24:19 24:23 28:25 29:25 37:20 43:10 46:9 48:1 48:20 48:22 49:24 50:2 50:25 61:1 64:21 65:9 66:11 72:16 77:11 79:23 80:1 89:20 92:6 94:12 98:5 100:24 101:20 102:21 103:18 103:19 108:12

**ourselves**(1) 49:3

**out**(34) 7:16 8:7 8:9 8:16 14:9 16:7 16:9 17:4 17:5 17:19 18:3 20:22 23:11 27:8 27:23 28:2 28:4 28:8 29:23 29:25 30:10 34:9 41:25 42:8 51:12 60:6 64:17 84:13 86:11 96:23 101:18 105:2 108:17 114:8

**outlined**(1) 29:6

**outset**(3) 33:9 44:8 46:12
**outside**(2) 61:16 88:22
**outstanding**(3) 22:17 23:4 23:9
**outweighed**(1) 102:9
**outweighs**(1) 32:20
**over**(37) 4:15 5:3 7:13 9:7 17:8 20:21 23:19 26:2 32:7 34:16 35:24 36:15 41:25 43:16 53:17 54:6 54:19 54:21 54:22 55:2 55:18 55:20 55:21 57:12 57:18 58:24 59:11 59:19 63:7 73:7 88:3 96:5 96:15 100:20 101:8 102:15 102:16

**over-arching**(2) 43:16 45:20
**over-inclusive**(1) 42:18
**overall**(1) 81:10
**overcomplicat**(1) 89:11
**overy**(2) 2:43 64:11
**owing**(2) 14:10 28:6
**own**(5) 39:19 40:1 50:4 74:2 99:12
**owned**(1) 87:10

**p.m**(1) 115:10
**page**(2) 30:2 57:8
**pages**(5) 28:22 30:25 42:21 48:24 54:22 57:3

**paid**(3) 7:18 17:19 27:8
**pakistan**(1) 21:10
**panoply**(1) 72:12
**papers**(9) 20:20 24:18 24:19 24:24 64:25 65:9 66:12 92:6 102:21

**paragraph**(4) 28:4 30:2 33:21 64:21
**parameters**(1) 29:25
**parcel**(1) 10:6
**parent**(2) 7:11 8:5
**park**(2) 2:19 3:9
**parlance**(1) 97:14
**part**(15) 7:10 10:5 12:18 16:11 24:4 52:15 53:6 57:13 77:7 77:12 77:20 77:24 78:7 80:9 104:11

**participant**(1) 75:17
**participants**(12) 14:15 48:13 57:19 57:19 57:25 66:7 68:23 71:12 76:18 76:19 94:6 95:21

**participate**(8) 6:17 45:14 55:23 56:14 58:3 58:5 68:13 75:15

**participated**(4) 7:23 16:24 75:11 75:21
**participating**(8) 32:17 50:13 61:5 61:10 61:13 71:16 75:7 75:19

**participation**(1) 92:2
**particular**(13) 14:13 16:8 17:11 27:5 29:23 34:23 43:4 50:12 51:11 72:7 89:25 94:2 98:22
**particularly**(5) 59:17 59:23 101:25 102:2 110:14

**parties**(18) 10:10 23:2 24:25 27:6 37:15 38:16 40:25 41:19 42:4 47:8 65:2 69:20 69:21 76:16 90:2 96:3 109:18 114:3

**party**(10) 3:22 10:22 43:22 43:24 44:1 44:3 44:5 59:25 85:4 90:21

**party's**(1) 33:3
**pass**(1) 30:10
**passing**(1) 64:25
**past**(4) 19:23 21:19 21:22 22:9
**paul**(2) 36:4 41:17
**pause**(2) 11:19 82:6
**pay**(2) 52:9 107:3
**paying**(2) 52:10 52:24
**payment**(1) 16:15
**payments**(10) 13:21 15:20 16:5 16:12 19:5 21:12 23:4 23:5 28:5 28:8

**payroll**(1) 71:23
**peculiar**(1) 9:7
**peek**(1) 113:14
**peg**(1) 3:23
**pennsylvania**(1) 1:45
**pensioners**(1) 40:12
**people**(55) 51:5 51:19 52:8 55:5 55:6 56:2 60:22 61:13 61:14 62:3 64:20 66:20 66:23 68:8 73:3 75:10 76:5 92:10 93:14 93:15 93:18 94:10 94:13 94:15 94:18 95:6 97:16 97:18 100:15 100:16 100:16 102:3 102:21 102:24 103:7 103:8 103:10 103:9 103:25 104:1 104:1 104:3 104:5 104:9 104:25 105:1 105:6 105:8 105:22 106:16 106:16 106:17 106:23 106:25 108:9

**people's**(6) 68:14 91:6 94:21 94:23 95:3 105:24

**per/pro**(1) 3:26
**percent**(10) 23:1 23:1 42:21 48:24 55:1 55:11 55:14 55:22 57:4 92:9

**percentage**(5) 57:3 57:9 60:1 62:10 67:18
**percentages**(1) 55:5 67:23
**perception**(1) 82:23
**perfect**(1) 5:21
**perform**(2) 11:2 20:25
**performed**(1) 11:3 22:17 22:20
**perhaps**(6) 39:7 49:11 75:18 88:24 90:3 114:9

**period**(7) 12:1 12:20 13:12 13:14 54:7 54:20 63:7
**periods**(1) 95:1
**permission**(1) 42:13
**permitted**(1) 101:24
**permutations**(1) 113:8
**person**(10) 51:15 51:18 71:3 73:6 73:7 80:25 99:16 99:24 100:1 105:3

**personal**(4) 56:16 63:5 63:23 76:9
**personally**(1) 58:12
**personnel**(2) 54:5 101:9
**perspective**(6) 44:11 15:9 20:3 26:21 44:10 50:20

**pertaining**(1) 64:24
**pervaded**(1) 43:15
**pestering**(1) 114:6
**petition**(2) 13:12 13:14
**phone**(1) 56:16
**phrase**(1) 85:1
**physical**(1) 106:19
**pick**(1) 67:14
**picked**(1) 67:16
**picking**(2) 88:5 88:7
**picks**(1) 67:4

**place**(20) 7:1 8:21 13:10 15:22 16:4 16:25 17:22 47:6 47:18 47:23 48:7 48:25 59:5 59:12 69:4 69:17 81:19 92:14 97:23 100:

**plan**(110) 2:30 36:7 41:18 41:20 41:21 42:2 45:14 47:24 48:13 51:20 52:16 52:20 52:24 52:25 53:5 53:14 53:22 54:4 54:10 54:12 54:15 54:24 54:25 55:7 55:23 56:14 56:23 57:19 57:25 58:1 58:3 58:5 66:6 66:7 67:3 67:4 68:10 68:13 71:12 75:11 85:7 86:13 89:3 90:21 91:2 91:16 91:22 91:25 92:1 92:11 92:15 92:21 93:11 93:1 93:16 93:21 94:2 95:22 96:2 96:3 96:7 96:9 96:13 99:14 99:15 99:17 99:18 99:21 99:21 99:24 100:7 101:16 102:11 102:19 102:25 102:25 103:1 103:2 103:5 103:16 104:2 104:4 104:5 104:7 104:11 104:12 104:14 104:23 105:3 105:7 105:9 107:11 107:20 108:1 108:2 108:9 108:10 109:1 109:2 109:3 109:4 109:4 109:5 109:8 109:9 109:12 109:13 110:7 110:14

**planning**(1) 83:4
**plans**(3) 48:1 52:14 55:4
**plant**(2) 66:20 101:15
**platform**(2) 106:25 107:5
**players**(1) 94:8
**plaza**(3) 1:37 2:19 2:25
**pleading**(2) 64:19 64:21
**pleadings**(1) 53:2
**please**(7) 4:2 4:4 25:14 31:4 31:11 31:12 64:18

**pleased**(1) 25:9
**plus**(1) 24:15
**podium**(4) 5:3 35:24 36:15 88:3
**point**(37) 27:2 27:23 39:22 47:22 48:23 51:4 53:2 64:17 68:18 68:19 76:7 79:12 79:21 80:4 80:22 80:25 84:13 85:21 85:25 86:2 86:7 87:4 87:18 87:19 92:13 95:9 96:20 97:1 100:16 101:8 101:13 108:8 108:11 108:13 108:24 111:7 113:17

**points**(4) 26:17 50:25 105:2 111:20
**police**(1) 64:13
**policies**(1) 59:2 59:5
**policy**(8) 58:10 59:1 59:2 59:9 59:12 59:15 60:8 69:4

**pool**(2) 75:16 75:17
**popped**(1) 94:14
**pops**(1) 103:18
**population**(4) 67:10 67:18 68:5 92:9
**portland**(1) 2:40
**position**(15) 7:3 34:25 38:15 49:21 62:17 62:19 82:22 84:21 85:1 86:19 86:23 92:8 104:20 104:24 105:14

**positions**(1) 114:4
**possession**(3) 84:24 87:5 89:13
**possible**(1) 6:3
**possibly**(1) 70:9
**post-filing**(3) 23:2 27:24 33:12
**post-petition**(1) 12:20
**posture**(3) 37:7 39:5 39:15
**postured**(1) 37:25
**potential**(8) 32:19 50:9 50:23 51:5 62:2 68:7 72:15 75:1

**potentially**(3) 9:12 59:24 68:12
**pour**(1) 12:6
**ppearances**(3) 1:22 2:1 3:1
**practice**(1) 4:11
**pre**(1) 82:10
**pre-complain**(1) 82:22
**pre-petition**(2) 12:20 95:23
**precise**(1) 112:12
**preclude**(1) 83:24
**precondition**(1) 11:3
**prefer**(2) 87:25 112:7

**prejudice**(4) 15:11 15:16 33:2 34:24
**prejudicial**(1) 89:16
**premise**(1) 109:24
**prepared**(5) 53:9 76:12 79:19 80:1 80:2 82:1 82:11

**present**(5) 14:25 33:8 35:25 53:10 53:10
**presented**(1) 34:14
**presently**(1) 19:20
**presents**(1) 49:14
**preserving**(1) 15:19
**presiding**(1) 32:7
**pressing**(1) 106:6
**presumably**(1) 100:1
**presume**(1) 84:19
**pretty**(3) 96:25 97:12 107:15
**prevail**(1) 37:23
**prevent**(2) 47:15 60:11
**previous**(2) 4:11 67:10
**previously**(4) 32:10 34:6 79:8 103:13
**price**(1) 24:14
**pricing**(25) 12:11 12:19 12:21 13:4 13:11 13:21 14:3 14:9 15:5 15:11 15:13 15:17 15:18 21:3 27:24 28:1 28:23 33:5 33:6 33:6 33:8 33:10 33:12 33:16 33:16

**primarily**(2) 93:12 104:22
**primary**(3) 49:7 49:11 94:1
**prime**(7) 99:24 102:10 102:25 102:25 103:1 103:2 103:5

**primes**(5) 99:14 103:25 108:1 108:9
**principle**(2) 89:15 89:19
**printed**(2) 57:1 81:4
**prior**(6) 5:13 48:1 48:4 77:1 83:14 93:2
**privacy**(7) 47:17 48:2 50:5 59:11 62:23 63:9 70:2 70:4 70:5

**private**(1) 47:11
**privilege**(3) 94:17 94:20 103:16
**privileged**(3) 44:5 44:7 103:20
**pro**(1) 3:26
**problem**(3) 39:3 71:21 72:13
**problems**(3) 49:14 98:2 98:3
**procedural**(1) 39:15
**procedurally**(1) 49:16
**procedure**(2) 47:17 48:2
**procedures**(1) 31:18
**proceed**(6) 4:14 26:5 31:15 35:16 70:2 85:24

**proceeding**(5) 38:2 40:16 82:3 82:17 84:14 34:7 41:21 111:10 113:3 115:7
**proceedings**(10) 1:18 1:50 7:10 24:4 33:9

**proceeds**(3) 6:11 27:5 27:8
**process**(20) 6:21 9:14 10:1 20:21 32:18 37:21 39:18 43:15 43:20 44:9 53:6 79:7 79:9 79:11 81:5 81:11 83:5 84:20 88:11 101:3

**produce**(10) 54:1 58:15 60:3 77:19 84:23 85:2 99:9 99:10 100:9 108:15
**produced**(39) 1:51 39:16 42:19 54:24 56:6 56:8 56:10 57:5 58:17 58:18 59:22 72:8 72:22 73:2 73:3 74:10 74:15 78:6 78:9 78:15 80:12 80:17 80:18 81:4 86:21 88:25 89:2 99:1 99:4 99:6 99:7 101:3 101:15 101:20 101:21 103:14 109:23 110:5 110:19

**producing**(5) 54:21 77:12 77:13 100:25 103:22

**production**(24) 42:23 50:13 77:11 77:24 77:25 78:4 78:14 78:21 79:23 79:24 85:15 86:1 86:5 86:22 88:16 98:3 99:13 100:10 108:7 108:12 110:1 110:15 110:15 113:5

**productions**(2) 44:24 45:10

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **professionals**(1) 101:9 | | **raised**(11) 17:3 43:17 43:24 50:5 50:16 50:22 53:14 54:14 63:13 80:6 91:9 | | **relating**(13) 9:21 21:6 21:7 21:12 21:13 24:16 32:14 33:3 53:21 86:12 99:13 109:12 110:5 | | **respect**(46) 6:6 6:8 6:11 6:18 7:22 7:25 9:5 9:7 9:20 10:15 10:16 10:18 11:14 12:24 12:24 13:4 13:10 13:22 14:1 14:2 14:3 14:3 14:8 14:14 14:22 17:7 18:8 21:4 21:10 21:13 21:14 21:23 22:2 22:4 22:13 22:24 23:4 27:4 31:3 34:25 44:16 47:13 51:11 59:18 95:6 109:24 | |
| **profit**(1) 24:14 | | | | | | | |
| **progress**(2) 6:3 9:16 | | **raising**(2) 40:11 65:2 | | **relatively**(3) 24:7 60:21 62:14 | | | |
| **promptly**(1) 41:2 | | **ran**(2) 67:15 67:17 | | **release**(2) 16:15 17:5 | | **respectfully**(1) 91:1 | |
| **proof**(1) 6:1 | | **ranges**(1) 66:19 | | **released**(2) 8:21 37:8 | | **respects**(1) 50:25 | |
| **proper**(1) 88:23 | | **rather**(2) 94:13 94:17 | | **relevant**(13) 43:23 44:4 44:11 46:13 54:15 92:23 95:1 95:2 100:6 101:6 101:11 104:15 107:9 | | **respond**(5) 45:24 79:10 80:10 | |
| **properly**(2) 54:25 91:24 | | **raw**(1) 82:9 | | | | **responded**(3) 39:17 54:20 81:11 | |
| **property**(8) 65:13 65:14 87:6 87:19 89:12 89:17 89:17 96:14 | | **re-executed**(1) 20:8 | | | | **responding**(1) 44:5 | |
| | | **re-un-redact**(1) 74:12 | | **relied**(2) 27:6 59:15 | | **response**(10) 25:22 27:15 30:21 44:20 62:17 66:5 79:7 80:10 81:10 114:22 | |
| **proposal**(2) 7:8 7:19 | | **reach**(2) 86:11 113:10 | | **relief**(11) 9:22 10:17 21:20 37:22 38:3 38:12 38:17 40:12 65:20 83:1 97:5 | | | |
| **propose**(2) 112:4 112:6 | | **read**(3) 61:4 97:11 110:1 | | | | | |
| **proposed**(3) 32:15 32:20 32:23 | | **readily**(1) 97:13 | | **relieve**(1) 98:7 | | **responses**(9) 44:14 45:1 54:21 80:2 81:17 82:9 82:10 84:17 104:18 | |
| **propound**(2) 39:19 39:25 | | **reading**(2) 95:20 105:17 | | **reluctantly**(1) 16:23 | | | |
| **propounded**(3) 39:17 43:8 53:19 | | **ready**(2) 12:6 31:14 | | **remainder**(1) 18:2 | | | |
| **propounds**(1) 44:3 | | **real**(3) 66:25 90:1 105:4 | | **remained**(1) 18:14 | | **responsibilities**(1) 108:10 | |
| **prosecute**(1) 48:20 | | **really**(27) 22:10 30:3 45:12 49:11 58:12 60:2 60:16 60:18 62:11 68:5 68:13 69:15 79:12 89:24 100:8 101:11 101:23 102:3 102:5 102:8 103:15 104:14 106:2 108:24 109:25 110:18 114:1 | | **remaining**(3) 22:10 28:16 67:9 | | **responsibility**(2) 94:1 99:25 | |
| **protect**(1) 59:17 | | | | **remains**(1) 22:17 | | **responsible**(3) 93:12 104:23 108:2 | |
| **protectable**(1) 67:24 | | | | **remarks**(1) 36:11 | | **responsive**(7) 30:7 44:24 46:14 99:4 99:6 101:11 108:6 | |
| **protected**(2) 59:20 65:14 | | | | **remedy**(1) 109:11 | | | |
| **protecting**(3) 58:25 59:3 70:5 | | **reason**(3) 52:7 74:25 96:3 | | **remember**(3) 15:23 16:19 52:1 | | | |
| **protection**(4) 47:7 47:17 50:4 94:19 | | **reasonable**(7) 29:24 34:22 53:25 54:2 70:18 70:19 71:10 | | **remind**(1) 102:10 | | **rest**(6) 8:15 10:6 57:25 57:25 68:4 78:25 | |
| **protections**(2) 68:21 69:17 | | | | **removal**(1) 18:12 | | **restore**(5) 100:14 100:15 100:18 100:19 106:15 | |
| **protective**(10) 47:5 50:3 50:3 62:24 68:22 68:25 69:1 69:18 69:19 69:25 | | **reasonably**(3) 95:2 97:10 97:24 | | **remove**(2) 6:19 6:20 | | | |
| | | **reasons**(5) 6:22 10:8 15:21 34:9 34:12 | | **removed**(1) 18:11 | | | |
| | | **rebecca**(1) 3:42 | | **removing**(2) 9:11 20:9 | | **restructuring**(1) 15:23 | |
| **protocol**(1) 32:10 | | **recall**(3) 18:7 18:21 28:6 | | **render**(1) 69:25 | | **result**(8) 17:2 17:17 18:12 18:16 28:25 33:9 37:15 48:19 | |
| **protocols**(1) 84:19 | | **receive**(2) 18:13 44:24 | | **repatriation**(2) 16:7 16:9 | | | |
| **prove**(3) 74:22 91:23 92:21 | | **received**(10) 22:23 42:22 44:20 44:25 45:8 77:6 85:11 93:16 94:14 100:2 | | **repeat**(1) 33:21 | | **retention**(1) 17:7 | |
| **provide**(8) 22:5 30:11 32:16 43:3 44:6 52:17 80:10 82:8 | | | | **replacements**(2) 22:19 22:21 | | **retrievable**(1) 17:8 | |
| | | | | **reply**(1) 98:5 | | **retrieval**(1) 105:15 | |
| **provided**(6) 15:1 19:12 20:15 22:8 76:20 79:14 | | **receiving**(3) 23:1 23:11 44:24 | | **report**(5) 28:3 28:4 28:21 33:25 67:17 | | **retrieve**(2) 97:22 106:22 | |
| | | **recent**(2) 59:1 95:17 | | **represent**(1) 36:4 48:12 55:14 | | **retroactive**(2) 15:12 15:15 | |
| **provider**(1) 107:2 | | **recently**(4) 37:14 39:1 76:20 97:15 | | **represented**(2) 8:2 45:3 | | **return**(1) 8:4 | |
| **provides**(1) 50:4 | | **recess**(5) 31:6 31:9 31:10 35:15 114:24 | | **representing**(1) 75:10 | | **returns**(1) 8:1 | |
| **providing**(4) 76:8 76:12 82:10 82:22 | | **recipients**(1) 94:18 | | **represents**(4) 57:18 62:10 73:16 76:4 | | **reveal**(1) 93:1 | |
| **provision**(4) 22:15 23:14 96:11 97:5 | | **recognized**(1) 65:15 | | **republishing**(1) 49:9 | | **reverse**(1) 67:12 | |
| **provisions**(2) 32:9 96:10 | | **recollection**(1) 83:2 | | **request**(2) 38:3 98:14 | | **reverse-engineer**(1) 7:24 | |
| **public**(1) 9:13 | | **recommends**(3) 32:18 32:23 33:15 | | **requested**(2) 79:15 97:10 | | **review**(13) 94:13 97:23 100:21 100:22 105:17 105:20 105:24 106:8 106:11 107:1 107:6 112:5 114:3 | |
| **pull**(1) 67:16 | | **reconcile**(1) 23:3 | | **requesting**(1) 44:1 | | | |
| **pulled**(2) 99:3 99:4 | | **reconciliation**(2) 23:6 28:10 | | **requests**(13) 39:17 39:20 40:1 44:3 44:4 44:25 46:14 53:18 53:20 54:3 54:21 65:16 88:18 | | | |
| **purchase**(1) 24:13 | | **reconciliations**(1) 33:12 | | | | | |
| **purchased**(1) 6:16 | | **reconciling**(1) 23:11 | | | | **reviewed**(1) 32:23 | |
| **purchasers**(1) 7:2 | | **record**(10) 19:17 28:3 28:19 32:12 33:22 34:20 40:24 51:24 112:8 | | **require**(5) 28:18 29:1 88:11 91:7 113:22 | | **reviewing**(3) 100:24 101:4 103:22 | |
| **purely**(1) 26:19 | | **record's**(1) 111:4 | | **required**(7) 7:25 19:21 20:2 20:4 52:17 66:17 91:11 | | **revisions**(1) 97:4 | |
| **purpose**(3) 30:1 77:17 96:17 | | **recorded**(1) 1:50 | | | | **rewritten**(1) 22:15 | |
| **purposes**(17) 62:2 70:16 77:6 77:7 77:14 77:21 78:1 78:12 78:15 78:16 78:19 79:1 79:13 81:21 85:12 89:21 111:12 | | **recording**(2) 1:50 115:6 | | **requirement**(1) 93:22 | | **richards**(1) 3:13 | |
| | | **records**(4) 99:3 99:11 105:9 105:18 | | **requirements**(8) 19:19 44:17 91:17 92:22 93:20 96:8 99:20 101:15 | | **right**(74) 5:4 5:6 6:17 10:25 12:1 23:21 24:11 25:20 30:19 31:1 31:5 36:24 38:17 38:25 39:19 40:2 45:15 45:18 46:21 46:24 48:17 49:7 50:13 51:21 52:12 52:20 58:6 62:21 64:5 67:7 67:22 69:11 73:6 73:14 75:12 76:2 78:13 79:4 79:11 80:3 80:15 81:16 81:24 83:8 83:10 83:16 83:18 83:21 85:3 86:19 86:23 87:8 88:7 88:14 88:20 92:16 93:8 94:10 95:10 96:18 96:25 98:15 100:4 101:1 102:17 104:17 105:17 111:9 111:17 112:15 112:15 113:12 114:20 114:23 | |
| **pursuant**(1) 65:8 | | **redacted**(5) 50:14 51:12 58:11 62:1 72:5 | | | | | |
| **pursue**(1) 69:14 | | **redaction**(4) 43:4 51:6 72:15 113:4 | | **requires**(2) 69:1 110:11 | | | |
| **pursued**(1) 88:17 | | **redactions**(2) 46:17 46:18 | | **reservation**(2) 27:3 64:16 | | | |
| **pushing**(2) 106:13 107:22 | | **reed**(1) 2:17 | | **reserve**(3) 81:16 89:20 111:8 | | | |
| **put**(20) 8:6 8:12 9:13 13:10 15:22 16:3 17:22 25:9 25:9 49:20 55:7 72:25 79:16 82:12 82:20 82:22 82:23 91:1 96:25 107:4 | | **refer**(1) 41:19 | | **reserved**(2) 12:24 39:19 | | | |
| | | **reference**(5) 29:10 29:23 64:20 64:25 | | **reserving**(2) 86:17 90:3 | | | |
| **puts**(1) 8:10 | | **referenced**(2) 20:19 20:20 | | **resolution**(7) 6:6 6:7 10:14 21:13 23:13 35:2 37:15 | | **rights**(7) 12:23 15:19 64:16 70:6 86:17 89:20 90:3 | |
| **putting**(1) 48:6 | | **referencing**(1) 80:11 | | | | | |
| | | **refining**(1) 70:14 | | | | | |
| **q1sa**(3) 27:18 27:25 28:20 | | **reform**(1) 109:6 | | **resolutions**(2) 6:1 35:1 | | **ripe**(2) 85:12 89:14 | |
| **qualification**(1) 76:15 | | **reformat**(1) 80:16 | | **resolve**(8) 6:4 6:18 16:4 20:22 28:23 42:5 44:12 44:15 | | **rise**(2) 4:2 31:11 | |
| **qualitative**(1) 66:16 92:20 | | **refusal**(2) 42:9 43:2 | | | | **rising**(1) 74:1 | |
| **quantitative**(2) 66:16 92:19 | | **refused**(1) 65:9 | | **resolved**(8) 13:16 13:22 13:23 20:17 21:18 25:19 28:19 33:11 | | **risk**(3) 8:24 9:11 32:20 | |
| **quarter**(4) 11:20 11:21 13:24 14:3 | | **regarding**(5) 52:8 88:16 | | | | **riskless**(1) 9:4 | |
| **question**(4) 7:20 50:24 51:4 74:21 | | **regime**(3) 12:19 12:21 67:25 | | **resolves**(4) 14:5 14:7 14:11 24:12 | | **robert**(5) 2:38 3:26 3:26 35:24 36:5 | |
| **questioning**(1) 93:18 | | **regularly**(1) 48:15 | | **resolving**(2) 15:9 42:3 | | **rodeo**(1) 45:3 | |
| **questions**(13) 11:5 11:8 17:3 23:7 23:18 27:10 29:12 30:5 60:7 99:22 99:22 99:23 104:6 | | **regulations**(1) 6:23 | | **resources**(1) 80:25 | | **rodney**(1) 3:15 | |
| | | **reimbursed**(6) 17:14 17:16 17:16 17:18 19:1 19:8 | | | | **role**(1) 7:13 | |
| **quite**(2) 37:25 56:2 | | | | | | **rome**(1) 2:31 | |
| **quo**(1) 9:11 | | **reimbursement**(1) 28:13 | | | | **ross**(1) 2:11 | |
| **rabbi**(3) 37:9 52:2 52:15 52:17 96:5 96:13 109:13 | | **reiterate**(1) 69:1 | | | | **roughly**(2) 19:9 94:10 | |
| | | **rejected**(1) 49:16 | | | | | |
| | | **relate**(1) 93:2 | | | | | |
| **rabbit**(1) 91:16 | | **related**(4) 17:23 18:1 29:5 68:11 | | | | | |
| **raise**(4) 45:23 68:18 84:3 84:4 | | **relates**(3) 12:18 14:19 18:9 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **rule(8)** 43:22 68:25 77:5 80:9 91:7 96:11 97:6 106:2 | | **secret(2)** 74:2 74:7 | | **show(14)** 51:17 58:6 58:7 61:10 61:15 61:25 62:21 63:16 64:1 97:9 101:14 101:19 101:22 113:9 | | **source(1)** 63:24 | |

**rule(8)** 43:22 68:25 77:5 80:9 91:7 96:11 97:6 106:2

**rules(8)** 43:20 43:25 43:25 48:17 84:23 97:4 98:8 101:24

**ruling(3)** 78:18 90:2 109:24
**rulings(4)** 31:23 89:22 112:2 114:2
**run(3)** 18:8 51:17 65:4
**runs(1)** 71:23
**russia(42)** 5:2 5:17 6:5 6:7 6:19 6:19 6:23 7:2 7:3 7:4 7:12 7:16 7:18 7:23 8:3 8:8 8:9 8:17 8:23 9:2 9:3 9:8 9:10 9:13 9:20 10:13 10:15 10:15 10:18 10:19 10:24 11:5 18:7 25:2 26:15 26:21 27:13 32:4 32:14 32:16 32:17 32:25

**russian(7)** 7:25 9:12 9:15 10:5 10:11 11:2 26:7

**russia's(1)** 7:13

**said(20)** 22:7 27:24 51:7 56:10 57:22 60:16 63:20 75:24 79:20 79:21 86:9 86:11 91:5 99:23 101:16 103:6 104:8 104:25 108:8 109:5
**sake(2)** 111:3 111:4
**salaries(1)** 55:7
**salary(1)** 66:19
**sale(5)** 22:2 22:6 24:10 29:8 33:13
**sales(4)** 6:11 7:1 7:23 17:9
**salient(1)** 29:22
**same(9)** 6:20 26:6 32:24 73:1 73:4 73:6 73:7 73:11 109:7

**samis(1)** 3:14
**satisfaction(1)** 66:9
**satisfactory(1)** 81:21
**satisfied(9)** 11:4 32:25 34:9 34:12 77:9 81:18 91:25 96:8 110:15

**satisfies(1)** 91:17
**satisfy(2)** 109:6 110:7
**saw(1)** 103:7
**say(20)** 12:23 17:22 18:1 19:18 19:20 49:18 53:2 67:16 69:8 72:7 74:10 78:25 92:17 93:15 94:4 96:21 105:1 105:3 108:1 109:21
**saying(6)** 12:12 12:21 69:23 82:15 82:16 91:16

**says(2)** 52:4 107:19
**scale(1)** 68:15
**scenario(2)** 42:25 67:4
**scheduling(2)** 38:7 40:2
**schuylkill(1)** 1:44
**schwartz(1)** 1:26
**schweitzer(28)** 1:33 73:23 73:24 73:25 74:7 74:14 74:17 78:1 81:25 82:6 82:20 83:10 83:11 83:16 83:18 83:21 83:23 84:3 89:9 89:10 90:5 90:17 96:25 111:21 112:3 112:6 112:11 112:23

**sea(2)** 21:14 24:10
**search(20)** 42:9 58:22 86:15 86:16 86:16 90:10 90:16 90:17 90:21 91:10 93:11 94:21 95:3 97:20 99:11 102:2 104:20 107:15 107:16 107:17

**searchable(1)** 73:13
**searched(4)** 90:24 94:23 99:11 104:1
**searches(3)** 51:16 51:18 90:19
**searching(1)** 95:14
**seated(2)** 4:4 31:13
**second(8)** 11:20 12:10 15:4 33:20 34:12 42:18 44:19 91:15

**secondarily(1)** 105:8
**secondary(2)** 94:7 105:5
**secondly(1)** 64:25
**seconds(1)** 31:17

**secret(2)** 74:2 74:7
**security(4)** 46:20 46:25 56:15 58:13
**see(35)** 25:17 28:22 30:7 35:9 36:19 36:20 48:17 58:17 58:21 58:23 60:17 60:25 61:9 61:12 62:1 62:7 63:23 66:9 66:10 67:15 68:24 78:8 81:18 86:25 93:17 93:18 93:2 93:25 94:9 97:20 101:18 101:19 103:17 106:20 108:16

**seeing(2)** 60:15 75:5
**seek(3)** 38:17 70:8
**seeking(1)** 21:20
**seeks(1)** 42:2
**seem(1)** 105:15
**seems(3)** 11:9 70:14 75:1
**seen(4)** 92:19 93:13 93:24 94:7
**select(2)** 54:16 92:2
**sell(1)** 16:24
**seller(1)** 10:21
**sellers(3)** 6:13 6:15 25:1
**selling(1)** 18:21
**sen(2)** 3:37 3:38
**senders(1)** 94:18
**sense(5)** 39:25 40:15 46:3 46:6 100:8
**sensitive(5)** 53:13 57:16 71:2 71:3 71:8
**sent(1)** 17:4 86:17 93:15 97:19

**separate(1)** 18:23
**september(1)** 13:13
**sequenced(1)** 8:12
**serial(1)** 114:6
**series(1)** 6:1
**serve(1)** 96:17
**served(4)** 17:8 45:2 83:14 88:18
**service(1)** 1:43 1:51 22:18
**services(7)** 1:43 16:19 22:5 22:7 22:12 22:19 22:24

**serving(1)** 70:16
**set(15)** 6:15 8:6 18:5 24:17 24:18 28:2 28:5 28:8 29:22 29:25 34:9 34:12 37:3 52:14 71:24
**sets(1)** 28:4
**setting(1)** 52:7
**settle(1)** 27:24
**settlement(48)** 4:10 6:5 9:15 9:19 10:9 10:12 10:12 10:14 11:4 11:19 12:18 13:8 13:16 14:1 14:19 14:20 19:18 24:8 24:9 24:12 24:17 24:18 24:20 24:22 24:25 25:5 26:25 28:2 29:22 30:4 30:14 32:15 32:19 32:20 32:21 32:23 32:25 33:1 33:6 33:17 34:2 34:4 34:5 34:11 34:13 34:21 37:8 37:24
**settles(1)** 28:1
**settling(1)** 11:23 27:21
**seven(2)** 48:15 49:5
**several(2)** 6:17 6:19
**shall(1)** 31:6 90:10
**share(10)** 18:2 48:21 49:1 49:2 49:12 49:18 61:20 63:4 63:20 76:9

**shared(2)** 48:9 50:1
**sharing(3)** 49:4 49:22 64:2
**she(3)** 36:10 39:7 81:1
**sheet(14)** 17:1 20:21 20:24 21:2 21:16 21:23 21:24 22:7 22:16 23:14 28:19 28:20 29:5 29:7
**short(2)** 24:7 31:22
**shorten(2)** 41:20 42:13
**shortfall(1)** 28:5
**shorthand(1)** 42:11
**shortly(1)** 38:1
**should(22)** 19:13 23:5 30:23 33:1 34:5 34:13 34:19 40:19 44:12 45:21 57:17 60:1 66:1 74:21 79:2 79:4 85:24 91:11 93:21 94:23 102:6 110:18

**shouldn't(2)** 95:13 105:25

**show(14)** 51:17 58:6 58:7 61:10 61:15 61:25 62:21 63:16 64:1 97:9 101:14 101:19 101:22 113:9

**showed(3)** 61:9 67:17 94:16
**showing(3)** 48:11 63:21 69:3
**shows(1)** 102:7
**shur(1)** 2:37
**side(2)** 21:14 40:4
**sides(1)** 25:8
**sidetracked(1)** 79:25
**sign(4)** 10:13 24:23 29:11 35:4
**signatories(1)** 8:14
**signatory(1)** 7:17
**signed(4)** 10:12 14:21 47:6 68:22
**significance(1)** 35:3
**significantly(1)** 68:5
**similar(1)** 51:3
**simple(5)** 52:7 87:5 107:21 107:22
**simpler(2)** 24:4 40:25
**simplification(1)** 26:25
**simplifies(1)** 9:5
**simplify(1)** 9:17
**simply(9)** 10:20 15:19 18:9 23:10 69:6 85:6 93:25 98:13 105:6

**simultaneously(1)** 29:2
**since(5)** 11:25 42:23 47:23 56:12 57:20
**single(6)** 10:21 46:3 54:6 54:6 56:22 56:22 59:3
**sir(3)** 26:2 36:8 74:24
**sit(1)** 87:22
**situation(2)** 68:1 69:11
**six(13)** 42:10 53:17 53:17 90:14 90:17 91:5 102:12 102:13 102:21 104:21 105:2 105:22 108:1
**size(1)** 57:7
**sliding(1)** 68:15
**small(6)** 59:25 60:1 62:10 62:14 64:20 101:9

**smaller(2)** 6:14 21:12
**smith(3)** 50:15 50:17 50:20
**smith's(1)** 51:11
**smooth(1)** 10:19
**social(4)** 46:19 46:25 56:15 58:13
**softening(1)** 109:18
**sold(1)** 16:18
**sole(2)** 22:22 99:16
**solicitation(1)** 26:24
**solution(2)** 61:1 62:16
**solvent(1)** 8:4
**some(30)** 16:12 24:16 36:11 40:2 48:8 48:18 49:15 56:19 58:9 61:25 63:8 72:10 73:2 84:1 85:10 85:10 85:11 87:5 87:25 88:24 88:25 92:6 94:15 102:24 103:3 106:21 107:17 108:9 108:17 113:10
**somebody(3)** 81:3 99:20 102:20
**somebody's(1)** 107:10
**something(16)** 11:12 15:23 47:16 59:15 61:23 71:19 73:21 75:24 80:20 83:5 86:18 101:19 105:16 107:20 108:16 111:13
**sometimes(2)** 11:24 93:18
**somewhat(3)** 16:23 37:6 74:22
**somewhere(1)** 55:22
**sommer(1)** 2:11
**song(1)** 3:42
**sorry(9)** 63:12 73:23 73:25 78:5 80:5 89:10 102:16 103:8 108:4

**sort(11)** 37:3 38:13 58:20 65:6 71:1 71:10 83:9 86:1 87:3 113:11 114:2

**sorts(1)** 65:3
**sought(1)** 60:2
**sound(2)** 1:50 115:6
**sounds(1)** 98:18

**source(1)** 63:24
**sources(1)** 105:5
**spanned(1)** 91:3
**speak(4)** 26:6 27:17 84:19 104:16
**speaking(2)** 60:21 62:14
**specific(7)** 9:22 29:9 62:5 62:6 97:5 104:10 104:13

**speed(1)** 9:14
**spend(2)** 100:17 102:4
**spent(1)** 108:13
**spirited(1)** 11:24
**split(1)** 22:25
**spoken(1)** 104:12
**sponsor(1)** 85:8
**spreadsheet(4)** 51:17 56:24 72:7 73:1
**spreadsheets(9)** 56:15 57:2 57:7 61:4 62:3 72:21 73:7 73:12 73:18

**square(1)** 3:15
**staff(1)** 101:10
**stage(1)** 74:19
**stam(6)** 5:13 14:5 26:4 26:5 26:9 31:25
**stamped(1)** 42:22 49:23
**stand(7)** 20:12 31:8 35:15 88:1 88:2 109:17 114:24

**standard(2)** 33:21 43:22
**start(5)** 5:17 43:21 82:3
**started(2)** 29:8 55:19
**starting(2)** 48:23 68:19
**stated(1)** 91:24
**statement(2)** 57:21 64:15
**statements(1)** 18:23
**states(8)** 1:1 1:20 6:24 32:6 32:19 33:13 35:19 88:22

**status(2)** 9:11 67:6
**stay(2)** 65:15 87:9
**ste(1)** 2:33
**steen(2)** 1:32 39:12
**steering(9)** 48:14 49:5 49:8 49:10 49:13 49:19 49:24 61:20 63:15

**step(1)** 98:18
**stick(1)** 106:21
**still(6)** 37:16 54:24 71:13 74:25 95:16
**stipulation(2)** 24:18 38:18
**stopped(1)** 13:23
**storage(3)** 99:5 110:6 110:12
**store(1)** 97:11
**stored(6)** 42:9 42:12 90:18 100:14 104:21 106:9

**straightforward(2)** 11:9 11:12
**street(6)** 1:11 1:27 1:44 2:33 2:39 3:16
**stretch(1)** 94:3
**structured(1)** 48:14
**stuff(4)** 49:9 87:6 93:14 97:24
**sturm(1)** 3:8
**stymied(1)** 113:5
**subject(15)** 4:12 19:16 24:25 27:10 30:17 33:7 35:8 50:2 52:4 52:18 61:16 77:4 87:12 96:9 110:16
**submissions(4)** 27:11 29:13 30:9 30:20
**submit(4)** 48:10 82:14 112:5 112:20
**submitted(2)** 21:17 24:23
**subsequent(2)** 42:23 111:10
**subsidiary(1)** 16:10
**substantial(2)** 19:8 62:13
**substantive(1)** 96:10
**substantively(1)** 84:20
**subtle(2)** 87:4 87:19
**success(2)** 18:13 18:17
**successfully(1)** 17:9
**such(4)** 34:5 48:11 48:14 90:2 98:3
**suffice(2)** 18:1 92:17

| Word | Page:Line |
|---|---|
| **sufficient**(5) | 39:22 74:19 89:21 105:25 106:1 |
| **sufficiently**(1) | 67:14 |
| **suggest**(2) | 49:13 91:1 |
| **suggested**(3) | 49:15 71:19 94:17 |
| **suggesting**(2) | 75:18 98:10 |
| **suggestion**(1) | 38:12 |
| **suitable**(1) | 69:13 |
| **suite**(1) | 2:12 |
| **summary**(1) | 34:1 |
| **supportive**(1) | 10:3 |
| **supports**(1) | 30:4 |
| **suppose**(1) | 90:3 |
| **supposed**(1) | 15:13 |
| **sure**(15) | 7:4 25:16 56:4 57:11 59:8 59:12 59:20 60:20 73:5 76:25 83:22 84:2 87:18 87:23 107:23 |
| **suspect**(1) | 65:3 |
| **switched**(1) | 102:20 |
| **sworn**(1) | 33:23 |
| **synthesize**(1) | 72:17 |
| **system**(3) | 99:12 100:20 107:2 |
| **table**(2) | 37:4 87:22 |
| **take**(33) | 7:13 9:7 12:17 16:16 30:23 31:6 38:8 43:14 45:22 46:7 51:9 57:8 60:18 60:24 61:1 61:5 72:24 80:18 81:12 91:12 95:5 106:18 106:19 106:20 106:21 106:24 107:4 109:13 110:10 112:13 113:14 114:1 114:15 |
| **taken**(5) | 7:1 65:6 84:21 85:1 92:8 |
| **takes**(5) | 97:23 100:15 100:21 105:23 |
| **taking**(3) | 5:19 23:15 86:23 |
| **talk**(7) | 40:15 43:14 50:17 68:8 68:12 98:18 112:22 |
| **talked**(3) | 61:19 61:25 108:20 |
| **talking**(15) | 10:6 47:24 51:14 55:10 55:21 56:12 59:23 60:21 71:22 88:11 91:2 105:21 106:6 106:13 107:20 |
| **talks**(2) | 106:2 106:10 |
| **tangentially**(1) | 107:11 |
| **tape**(1) | 97:21 |
| **tapes**(1) | 106:5 |
| **targeted**(3) | 56:17 56:18 72:2 |
| **tax**(3) | 8:1 52:13 52:17 |
| **taxes**(3) | 52:9 52:10 52:24 |
| **tbg**(5) | 90:22 99:10 103:14 108:5 110:14 |
| **teed**(2) | 37:10 37:23 |
| **telephone**(2) | 21:15 112:21 |
| **telephonic**(2) | 3:20 40:23 |
| **telling**(1) | 91:21 |
| **template**(1) | 80:20 |
| **ten**(1) | 28:22 |
| **tens**(4) | 56:13 58:4 63:5 91:4 |
| **term**(16) | 20:21 20:24 21:1 21:16 21:23 21:24 22:7 22:15 23:14 28:19 28:20 29:5 29:7 42:16 91:18 91:25 |
| **terminate**(1) | 15:18 |
| **terminated**(3) | 22:11 22:14 31:24 |
| **termination**(2) | 56:21 72:2 |
| **terms**(16) | 14:25 23:15 27:21 28:2 40:2 50:4 59:9 62:7 64:23 65:23 68:7 70:3 107:15 107:16 107:17 109:8 |
| **tertiarily**(1) | 105:8 |
| **tertiary**(1) | 94:7 |
| **test**(3) | 29:24 67:15 102:5 |
| **tests**(2) | 66:13 92:7 |
| **than**(18) | 6:24 8:24 42:10 50:4 52:21 53:19 60:12 70:8 73:3 73:8 75:16 75:25 80:23 92:9 95:18 105:2 105:21 113:22 |

| Word | Page:Line |
|---|---|
| **thank**(66) | 4:3 4:17 4:18 5:6 5:21 5:21 5:23 11:11 23:22 25:14 25:16 25:20 26:3 26:3 27:12 27:16 29:14 31:4 31:5 31:6 31:7 31:8 31:9 31:12 34:17 35:5 35:10 35:11 35:12 35:14 36:1 36:16 39:9 41:3 41:9 41:13 41:16 51:21 51:23 63:11 64:5 64:10 65:24 65:25 66:3 66:4 75:4 79:3 80:3 81:8 83:21 84:6 86:25 87:24 90:7 90:8 98:15 98:16 104:17 106:11 106:12 110:22 112:25 114:18 114:23 114:25 |
| **that**(301) | 4:8 4:15 5:11 5:20 5:20 6:1 6:2 6:3 6:7 6:12 6:13 6:14 6:16 7:4 7:5 7:8 7:12 7:15 7:16 7:17 7:18 7:20 7:23 8:1 8:3 8:7 8:21 8:22 8:22 8:24 8:24 8:25 9:13 9:22 10:7 10:8 10:20 10:21 11:3 11:9 11:21 12:9 12:10 12:12 12:16 12:19 12:21 12:22 12:23 13:5 13:5 13:6 13:9 13:9 13:16 13:17 13:18 13:25 14:1 14:2 14:2 14:3 14:7 14:9 14:10 14:12 14:12 14:19 14:20 14:22 14:24 15:7 15:7 15:10 15:12 15:13 15:20 15:22 16:1 16:3 16:12 16:13 16:18 16:24 17:1 17:3 17:9 17:12 17:15 17:15 17:22 17:23 18:6 18:6 18:7 18:9 18:12 18:13 18:13 18:15 18:21 18:23 18:25 19:10 19:13 19:14 19:15 19:15 19:17 19:20 20:1 20:3 20:4 20:6 20:7 20:10 20:10 20:12 20:13 20:15 20:18 20:18 20:20 20:21 20:23 21:1 21:2 21:9 21:21 21:22 21:24 21:25 22:6 22:7 22:9 22:11 22:16 22:20 22:21 22:23 23:3 23:4 23:5 23:6 23:7 23:8 23:10 23:13 23:16 24:9 24:15 24:18 24:23 25:2 25:2 25:6 25:6 25:12 26:16 26:17 26:17 27:4 27:7 27:19 28:5 28:9 28:11 28:14 28:17 28:18 28:23 28:24 28:25 29:5 29:6 29:7 29:24 29:24 30:3 30:16 30:22 32:1 32:4 32:19 32:21 32:25 33:1 33:2 33:13 33:18 33:21 34:10 34:13 34:15 34:19 34:20 34:20 34:21 35:2 35:9 35:18 36:10 37:10 37:21 38:1 38:3 38:7 38:8 38:9 38:12 39:2 39:20 39:21 39:24 40:3 40:4 40:6 40:7 40:8 40:10 40:10 40:14 40:23 41:1 41:1 41:11 41:22 42:1 42:3 42:7 42:11 42:14 42:22 42:24 42:25 43:8 43:15 43:18 43:21 43:21 43:22 43:23 44:1 44:4 44:6 44:12 44:20 44:21 44:22 44:25 45:1 45:2 45:8 45:11 45:19 45:20 46:6 46:9 46:12 46:14 46:17 46:20 47:2 47:5 47:6 47:14 47:17 47:19 47:22 47:24 48:1 48:2 48:2 48:3 48:5 48:6 48:7 48:9 48:11 48:14 48:16 48:18 48:23 48:25 49:2 49:12 49:14 49:14 49:18 49:23 50:3 50:5 50:14 50:14 50:16 50:21 51:6 51:6 51:7 |

| Word | Page:Line |
|---|---|
| **that**(301) | 51:9 51:13 51:15 51:17 51:18 52:3 52:3 52:4 52:8 52:11 52:11 52:14 52:15 52:18 52:19 52:21 52:23 53:18 54:12 54:14 54:14 54:19 54:19 54:24 55:4 56:1 56:6 56:9 56:11 56:17 56:20 56:23 56:25 57:1 57:5 57:14 57:15 57:17 57:17 58:6 58:7 58:9 58:11 58:15 58:16 58:21 58:22 59:8 59:10 59:13 59:15 59:15 59:16 59:19 59:19 59:21 60:2 60:3 60:8 60:9 60:11 60:14 60:14 60:15 60:19 60:19 60:20 60:21 61:3 61:7 61:12 61:15 61:18 61:21 61:21 61:22 61:23 61:24 61:25 61:25 62:1 62:5 62:6 62:6 62:8 62:9 62:9 62:17 62:17 62:17 62:19 62:19 62:20 62:22 62:23 62:23 62:25 63:4 63:13 63:16 63:17 63:18 63:19 63:19 63:21 63:23 63:24 63:25 64:1 64:2 64:4 64:20 65:10 65:13 65:14 65:21 66:1 66:2 66:8 66:9 66:10 66:13 66:18 66:21 66:21 67:8 67:12 67:15 67:17 67:24 68:5 68:11 68:18 68:19 68:20 68:22 68:24 69:4 69:5 69:8 69:23 69:24 69:25 70:1 70:2 70:5 70:6 70:6 70:7 70:9 70:15 70:16 70:20 70:22 70:24 71:1 71:7 71:9 71:10 71:13 71:14 71:15 71:17 71:19 71:19 71:23 72:6 72:7 72:10 72:13 72:18 72:22 72:24 73:1 73:5 73:8 73:13 73:13 73:15 73:21 73:21 73:22 73:22 74:8 74:9 74:10 74:11 74:14 74:18 74:19 74:21 74:23 75:1 75:6 75:15 75:16 75:20 75:24 75:25 75:25 76:4 76:6 76:8 76:9 76:10 76:11 76:12 76:17 76:21 77:1 77:1 77:16 77:17 77:25 78:4 78:6 78:6 78:6 78:16 78:18 78:24 79:2 79:7 79:8 79:9 79:10 79:10 79:11 79:11 79:14 79:15 79:20 79:21 80:4 80:5 80:8 80:11 80:15 80:16 80:18 80:20 80:23 81:3 81:4 81:6 81:9 81:10 81:11 81:12 81:20 82:1 82:2 82:2 82:7 82:10 82:12 82:14 82:16 82:18 82:20 82:21 83:3 83:3 83:8 83:11 83:12 83:13 83:13 83:23 84:3 84:4 84:5 84:6 84:9 84:12 84:13 84:14 84:22 84:24 84:25 85:1 85:3 85:6 85:10 85:13 85:15 85:16 85:20 85:23 85:25 86:2 86:5 |
| **that**(204) | 86:9 86:10 86:18 86:18 86:19 86:19 86:22 86:23 86:24 87:9 87:10 87:10 88:12 88:15 88:9 89:6 89:11 90:17 90:20 90:20 91:1 91:1 91:2 91:3 91:6 91:15 91:21 91:22 91:23 91:24 91:25 91:25 92:2 92:3 92:8 92:13 92:17 92:19 92:20 92:20 92:21 92:21 92:23 93:6 93:13 93:16 93:17 93:24 94:1 94:4 94:6 94:11 94:14 94:16 94:17 94:19 95:8 95:13 95:18 95:21 95:21 96:1 96:1 96:4 96:5 96:9 96:12 96:20 96:23 97:1 97:9 97:12 97:19 97:23 98:2 98:4 98:5 98:6 98:9 98:10 98:13 99:5 99:14 99:14 99:24 99:22 99:23 99:25 100:1 100:6 100:7 100:20 100:21 101:2 101:4 101:11 101:14 101:14 101:19 101:20 101:20 101:21 101:23 101:25 102:2 102:5 102:6 102:7 102:7 102:7 102:24 103:1 103:6 103:10 103:13 103:17 103:17 103:19 103:19 103:23 103:24 104:8 104:15 104:16 104:24 104:25 105:2 105:3 105:7 105:8 105:11 105:15 105:16 105:23 105:24 106:6 106:16 106:22 106:23 106:24 106:24 106:25 106:25 107:2 107:3 107:3 107:4 107:4 107:5 107:6 107:9 107:12 107:12 107:15 107:16 107:17 107:18 107:19 107:20 107:22 107:25 108:1 108:6 108:7 108:11 108:15 108:19 108:25 108:25 109:2 109:5 109:6 109:9 109:10 109:13 109:14 109:14 109:16 109:17 109:22 109:23 109:24 109:25 110:3 110:5 110:11 110:13 110:15 110:15 110:17 110:18 110:23 111:13 111:24 112:13 113:2 113:8 113:10 113:20 115:5 |

| Word | Page:Line |
|---|---|
| **that's**(45) | 47:23 49:11 50:16 52:13 57:12 58:11 58:17 65:6 65:18 67:10 67:11 72:13 74:17 76:2 76:14 78:13 79:2 79:13 79:24 81:22 81:22 85:12 85:25 87:4 87:14 87:16 88:17 94:8 94:22 95:12 96:3 96:21 101:1 101:3 101:10 101:23 106:10 108:4 108:25 109:16 110:5 112:22 113:6 113:20 |
| **that's**(15) | 5:21 10:5 15:15 15:21 19:20 21:23 22:10 25:18 26:16 40:5 40:24 41:13 44:4 44:18 45:20 |
| **the**(301) | 1:1 1:2 1:19 2:45 4:2 4:3 4:9 4:17 4:19 4:22 4:24 4:25 5:2 5:3 5:4 5:6 5:12 5:13 5:15 5:16 5:18 5:19 5:21 5:24 6:2 6:4 6:5 6:7 6:10 6:11 6:11 6:12 6:13 6:13 6:15 6:15 6:16 6:16 6:17 6:20 6:20 6:21 6:23 6:24 6:25 7:1 7:1 7:3 7:4 7:5 7:6 7:7 7:8 7:10 7:11 7:13 7:16 7:19 7:19 7:20 7:20 7:21 7:22 7:24 8:2 8:7 8:8 8:10 8:11 8:13 8:14 8:15 8:16 8:18 8:19 8:20 8:20 8:21 8:22 8:23 8:24 8:25 9:2 9:5 9:6 9:6 9:7 9:7 9:8 9:11 9:11 9:13 9:15 9:17 9:18 9:19 9:22 9:22 9:22 9:23 9:24 9:24 9:25 10:1 10:2 10:3 10:5 10:6 10:7 10:8 10:9 10:11 10:11 10:12 10:14 10:15 10:16 10:17 10:19 10:20 10:20 10:23 10:25 11:1 11:1 11:2 11:3 11:6 11:8 11:14 11:16 11:18 11:22 11:25 12:1 12:3 12:5 12:6 12:10 12:11 12:12 12:15 12:18 12:19 12:20 12:20 12:21 12:22 12:22 12:22 12:23 13:1 13:5 13:8 13:9 13:9 13:11 13:11 13:12 13:12 13:13 13:13 13:14 13:14 13:15 13:17 13:18 13:19 14:1 14:4 14:4 14:5 14:6 14:7 14:8 14:8 14:12 14:14 14:15 14:16 14:16 14:19 14:20 14:21 14:24 14:25 15:2 15:3 15:4 15:4 15:6 15:9 15:12 15:14 15:18 15:22 15:23 15:25 16:2 16:2 16:6 16:6 16:7 16:8 16:9 16:11 16:14 16:16 16:17 16:17 16:19 16:22 16:24 16:25 16:25 17:1 17:3 17:4 17:5 17:7 17:8 17:9 17:10 17:11 17:13 17:19 17:20 18:1 18:2 18:3 18:4 18:6 18:8 18:10 18:12 18:13 18:16 18:17 18:17 18:19 18:21 18:22 19:2 19:4 19:5 19:7 19:9 19:11 19:14 19:17 19:17 19:18 19:18 19:21 19:21 19:22 19:23 19:24 19:25 19:25 20:2 20:4 20:5 20:5 20:7 20:8 20:9 20:12 20:15 20:16 20:19 20:23 20:23 21:5 21:7 21:14 21:15 21:16 21:18 21:19 21:19 21:20 21:21 21:22 21:23 21:24 21:25 22:1 22:6 22:7 22:9 22:11 22:12 22:13 22:15 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) 22:16 22:18 22:20 22:23 23:2 23:6 23:6 23:8 23:9 23:12 23:13 23:13 23:14 23:16 23:17 23:19 23:21 24:4 24:6 24:8 24:8 24:9 24:10 24:10 24:11 24:12 24:13 24:13 24:14 24:16 24:17 24:17 24:18 24:19 24:20 24:20 24:21 24:22 24:23 24:23 24:24 24:24 24:25 24:25 25:1 25:4 25:6 25:7 25:8 25:11 25:12 25:12 25:14 25:16 25:19 25:20 26:1 26:6 26:6 26:6 26:13 26:16 26:16 26:16 26:19 26:21 26:23 26:23 26:24 26:24 26:25 27:2 27:3 27:3 27:4 27:6 27:6 27:7 27:13 27:13 27:18 27:18 27:18 27:20 27:21 27:21 27:23 27:24 27:25 27:25 28:2 28:2 28:3 28:3 28:4 28:4 28:7 28:7 28:9 28:9 28:12 28:12 28:12 28:13 28:13 28:16 28:16 28:18 28:19 28:19 28:19 28:20 28:21 28:22 29:2 29:4 29:5 29:5 29:7 29:7 29:10 29:22 29:22 29:23 29:24 29:25 30:1 30:1 30:2 30:3 30:4 30:4 30:6 30:7 30:10 30:12 30:14 30:15 30:17 30:17 30:18 31:3 31:3 31:3 31:4 31:5 31:8 31:11 31:12 31:20 31:23 31:23 31:24 32:3 32:4 32:6 32:7 32:9 32:9 32:10 32:12 32:12 32:13 32:15 32:15 32:18 32:18 32:18 32:19 32:20 32:20 32:21 32:22 32:22 32:23 32:23 32:24 32:25 33:2 33:3 33:4 33:5 33:7 33:8 33:9 33:11 33:13 33:14 33:15 33:16 33:18 33:19 33:20 33:21 33:22 33:23 33:24 33:24 33:25 34:2 34:3 34:3 34:3 34:3 34:4 34:5 34:5 34:6 34:8 34:9 34:10 34:10 34:11 34:12 34:13 34:13 34:14 34:15 34:17 34:19 34:19 34:20 34:21 34:21 34:22 34:22 34:24 34:25 35:1 35:2 35:3 35:4 35:4 35:6 35:7 35:9 35:12 35:14 35:15 35:16 35:18 35:19 35:19 35:22 35:23 35:23 35:24 35:25 36:1 36:3 36:5 36:6 36:8 36:10 36:13 36:14 36:15 36:16 36:20 36:23 36:24 37:2 37:3 37:5 37:7 37:8 37:9 37:9 37:12 37:12 37:18 37:21 37:23 37:24 38:1 38:3 38:5 38:7 38:12 38:15 38:16 38:17 38:21 38:23 38:25 39:1 39:4 39:5 39:5 39:6 39:10 39:11 39:13 39:14 39:15 39:15 39:16 39:18 39:18 39:19 39:20 | | **the**(301) 39:20 39:21 39:23 39:25 40:2 40:4 40:5 40:6 40:7 40:10 40:10 40:11 40:12 40:13 40:15 40:17 40:20 40:21 40:22 40:24 40:25 41:1 41:4 41:6 41:8 41:11 41:11 41:12 41:13 41:17 41:17 41:18 41:19 41:20 41:21 41:21 41:22 41:23 41:25 41:25 42:2 42:2 42:2 42:3 42:6 42:9 42:12 42:13 42:15 42:18 42:18 42:19 42:20 42:20 42:21 42:21 42:24 42:25 43:2 43:2 43:4 43:6 43:7 43:8 43:12 43:13 43:13 43:15 43:16 43:17 43:18 43:18 43:19 43:20 43:20 43:21 43:23 43:24 43:25 43:25 44:1 44:1 44:3 44:5 44:8 44:9 44:9 44:9 44:10 44:11 44:12 44:15 44:16 44:17 44:17 44:18 44:19 44:20 44:21 44:22 44:22 44:22 44:24 45:1 45:2 45:3 45:4 45:4 45:6 45:9 45:10 45:12 45:12 45:14 45:15 45:16 45:20 45:22 45:23 45:23 46:2 46:7 46:8 46:16 46:16 46:21 46:12 46:13 46:14 46:14 46:24 47:3 47:4 47:8 47:9 47:9 47:11 47:11 47:13 47:14 47:15 47:15 47:19 47:19 47:20 47:21 48:5 48:6 48:8 48:10 48:10 48:12 48:13 48:16 48:18 48:19 49:1 49:2 49:2 49:4 49:5 49:5 49:7 49:8 49:9 49:10 49:11 49:12 49:13 49:14 49:19 49:20 49:21 49:21 49:22 50:1 50:2 50:3 50:5 50:10 50:11 50:13 50:14 50:15 50:18 50:19 50:21 50:22 50:25 51:2 51:3 51:5 51:6 51:8 51:9 51:11 51:14 51:15 51:16 51:19 51:19 51:19 51:21 51:24 52:2 52:4 52:4 52:4 52:6 52:8 52:9 52:11 52:18 52:19 52:19 52:20 52:20 52:22 52:23 52:23 52:25 52:25 53:1 53:2 53:4 53:4 53:5 53:5 53:5 53:6 53:6 53:6 53:7 53:8 53:9 53:10 53:10 53:10 53:12 53:12 53:13 53:13 53:14 53:14 53:14 53:15 53:15 53:18 53:22 53:22 53:24 53:25 54:1 54:3 54:4 54:4 54:5 54:6 54:7 54:7 54:7 54:8 54:9 54:9 54:11 54:11 54:12 54:12 54:12 54:14 54:15 54:17 54:19 54:19 | | **the**(301) 54:20 54:21 54:24 54:24 55:1 55:3 55:7 55:8 55:10 55:13 55:13 55:15 55:15 55:17 55:19 55:20 55:20 55:23 55:24 55:24 56:3 56:4 56:5 56:5 56:6 56:8 56:8 56:9 56:10 56:11 56:11 56:12 56:13 56:14 56:15 56:15 56:15 56:16 56:17 56:18 56:21 56:23 57:1 57:4 57:5 57:6 57:8 57:9 57:11 57:13 57:13 57:13 57:16 57:17 57:18 57:19 57:20 57:20 57:23 57:25 57:25 57:25 57:25 58:1 58:2 58:3 58:4 58:4 58:5 58:6 58:7 58:10 58:11 58:12 58:12 58:14 58:18 58:19 58:23 58:25 59:1 59:2 59:3 59:6 59:6 59:7 59:10 59:13 59:13 59:14 59:16 59:16 59:19 59:21 59:21 59:23 60:1 60:3 60:5 60:8 60:14 60:18 60:20 60:24 61:3 61:4 61:6 61:8 61:8 61:10 61:13 61:14 61:16 61:19 61:20 61:20 61:22 62:9 62:10 62:11 62:16 62:21 62:24 63:5 63:6 63:8 63:9 63:11 63:15 63:18 63:24 63:25 64:5 64:8 64:11 64:14 64:18 64:19 64:22 65:2 65:5 65:8 65:11 65:12 65:13 65:14 65:17 65:19 65:20 65:22 65:23 65:24 66:1 66:4 66:5 66:6 66:6 66:11 66:12 66:12 66:13 66:14 66:15 66:17 66:18 66:18 66:19 66:21 66:21 66:25 67:1 67:3 67:4 67:7 67:8 67:9 67:10 67:11 67:16 67:18 67:19 67:20 67:22 67:23 67:24 67:25 68:2 68:4 68:4 68:8 68:9 68:10 68:13 68:16 68:18 68:19 68:21 68:22 68:23 68:25 69:1 69:2 69:7 69:8 69:11 69:12 69:16 69:17 69:18 69:19 69:22 69:23 69:24 69:25 70:3 70:10 70:13 70:15 70:20 70:23 71:1 71:8 71:12 71:14 71:16 71:20 71:21 71:21 71:25 72:5 72:10 72:12 72:13 72:13 72:14 72:17 72:18 72:20 72:21 72:23 73:1 73:4 73:5 73:6 73:6 73:10 73:11 73:12 73:14 73:15 73:17 73:17 73:19 73:24 74:1 74:3 74:6 74:9 74:13 74:16 74:18 74:24 75:2 75:5 75:6 75:9 75:11 75:12 75:13 75:14 75:15 75:16 75:18 75:19 75:20 75:22 75:25 76:1 76:2 76:4 76:6 76:10 76:11 76:14 76:15 76:17 76:18 76:18 76:18 76:21 76:23 77:2 77:3 77:3 77:6 77:6 | | **the**(301) 77:7 77:7 77:8 77:8 77:10 77:15 77:15 77:18 77:20 77:20 77:21 77:21 77:23 77:24 77:25 78:1 78:1 78:4 78:4 78:5 78:5 78:5 78:5 78:8 78:9 78:11 78:13 78:14 78:14 78:15 78:16 78:16 78:18 78:21 78:21 78:22 78:22 78:24 78:24 78:25 79:2 79:5 79:7 79:9 79:10 79:15 79:16 79:18 79:22 79:22 79:23 80:3 80:7 80:8 80:9 80:10 80:11 80:13 80:15 80:16 80:20 80:22 80:23 80:23 80:24 80:25 81:4 81:4 81:5 81:8 81:10 81:10 81:11 81:14 81:16 81:17 81:17 81:20 81:24 81:25 82:1 82:5 82:6 82:9 82:15 82:19 82:21 82:25 82:25 83:5 83:8 83:9 83:11 83:13 83:14 83:17 83:19 83:19 83:19 83:19 83:22 84:2 84:6 84:7 84:8 84:9 84:9 84:10 84:11 84:13 84:15 84:15 84:16 84:20 84:20 84:21 84:21 84:22 84:22 84:23 84:25 85:1 85:1 85:3 85:6 85:6 85:7 85:7 85:8 85:9 85:9 85:10 85:11 85:14 85:15 85:16 85:18 85:19 85:20 85:23 85:23 85:24 85:25 86:2 86:5 86:6 86:6 86:8 86:9 86:10 86:11 86:12 86:14 86:19 86:19 86:20 86:23 86:23 86:25 87:2 87:7 87:8 87:9 87:12 87:14 87:16 87:17 87:19 87:19 87:20 87:22 87:22 87:25 88:3 88:5 88:8 88:10 88:12 88:13 88:13 88:14 88:15 88:18 88:20 88:21 88:22 88:23 88:24 89:2 89:3 89:4 89:6 89:9 89:14 89:16 89:18 89:19 89:20 89:22 89:24 89:24 90:1 90:2 90:6 90:9 90:10 90:12 90:14 90:14 90:17 90:19 90:20 90:21 90:21 90:23 90:25 91:3 91:5 91:9 91:13 91:14 91:15 91:16 91:16 91:17 91:18 91:20 91:20 91:21 91:24 92:4 92:5 92:5 92:7 92:7 92:8 92:9 92:10 92:14 92:14 92:16 92:18 92:19 92:22 92:22 92:25 92:25 93:4 93:6 93:7 93:8 93:10 93:11 93:12 93:13 93:13 93:16 93:17 93:19 93:21 93:22 93:23 93:23 93:23 94:1 94:5 94:6 94:7 94:8 94:10 94:15 94:16 94:17 94:19 94:20 94:25 95:1 95:5 95:9 95:10 95:12 95:12 95:13 95:15 95:15 95:16 95:17 95:17 95:20 95:22 95:25 96:1 96:2 96:3 96:5 96:7 96:8 96:11 96:13 96:13 96:14 |

| Word | Page:Line |
|---|---|
| **the(271)** | 96:15 96:16 96:17 96:20 96:21 96:23 97:1 97:2 97:3 97:4 97:4 97:8 97:9 97:11 97:12 97:14 97:14 97:14 97:15 97:16 97:17 97:19 97:19 97:22 97:24 98:1 98:4 98:7 98:7 98:9 98:11 98:13 98:14 98:16 98:15 98:17 98:18 98:19 98:19 98:22 98:23 98:25 99:1 99:2 99:4 99:5 99:7 99:8 99:13 99:14 99:14 99:17 99:18 99:18 99:19 99:19 99:20 99:23 99:24 100:1 100:5 100:6 100:7 100:10 100:12 100:13 100:15 100:17 100:19 100:22 100:24 100:25 101:1 101:3 101:4 101:4 101:5 101:6 101:7 101:9 101:10 101:11 101:11 101:11 101:12 101:13 101:14 101:16 101:16 101:20 101:21 101:24 101:25 101:25 102:3 102:5 102:7 102:9 102:10 102:10 102:11 102:13 102:1 102:15 102:16 102:17 102:18 102:19 102:22 103:2 103:4 103:4 103:6 103:10 103:11 103:13 103:16 103:16 103:17 103:21 103:24 103:24 103:25 103:25 103:25 104:1 104:4 104:5 104:6 104:9 104:11 104:12 104:13 104:14 104:17 104:20 104:23 104:23 104:25 105:2 105:2 105:3 105:4 105:5 105:6 105:7 105:8 105:9 105:11 105:12 105:14 105:15 105:17 105:18 105:19 105:21 105:22 105:25 106:1 106:3 106:4 106:7 106:10 106:12 106:15 106:17 106:18 106:19 106:21 106:22 107:1 107:5 107:9 107:12 107:14 107:14 107:17 107:17 107:20 107:25 108:1 108:2 108:6 108:9 108:10 108:15 108:17 108:17 108:18 108:20 108:22 109:7 109:9 109:10 109:11 109:11 109:11 109:12 109:18 109:19 109:21 109:25 109:25 110:1 110:2 110:2 110:2 110:3 110:4 110:5 110:6 110:7 110:7 110:7 110:10 110:14 110:20 110:23 110:25 111:1 111:2 111:4 111:6 111:8 111:9 111:11 111:15 111:17 111:22 111:22 112:1 112:4 112:4 112:8 112:9 112:12 112:15 112:19 112:20 112:21 113:3 113:4 113:4 113:4 113:5 113:6 113:7 113:9 113:11 113:13 113:13 113:14 113:16 113:18 113:20 114:1 114:2 114:3 114:6 114:7 114:11 114:14 114:16 114:20 114:2 115:1 115:2 115:5 115:6 115:6 115:7 |
| **their(58)** | 18:2 19:19 19:19 22:2 22:22 35:24 37:7 39:25 42:10 43:3 44:13 45:9 46:7 47:15 52:24 53:7 54:8 54:17 56:20 56:20 62:19 62:19 62:21 62:22 64:25 67:12 67:13 70:16 71:4 74:2 82:23 83:24 84:24 86:15 86:16 90:3 91:10 94:14 94:16 97:9 99:3 99:7 99:9 99:10 99:11 99:12 99:15 99:16 99:25 100:9 103:4 103:11 104:20 105:4 105:9 107:5 108:5 110:1 |
| **them(42)** | 4:12 5:14 6:20 9:9 11:6 16:14 20:12 21:5 23:12 23:18 30:1 48:22 49:16 64:24 68:10 74:21 77:4 78:20 78:25 78:25 80:17 80:18 80:19 81:4 81:5 81:6 82:23 85:7 90:18 91:12 98:7 98:19 100:14 100:22 100:23 103:8 103:11 103:23 106:8 108:5 111:9 111:12 |
| **theme(5)** | 43:18 44:18 44:19 45:20 91:20 |
| **themes(1)** | 43:15 |
| **themselves(2)** | 43:14 71:21 |
| **then(58)** | 5:18 5:18 8:13 8:15 8:20 13:16 17:14 21:11 22:18 26:7 34:5 40:22 45:24 58:14 58:23 59:3 61:1 61:8 67:5 68:4 70:20 70:23 70:24 71:3 72:6 72:10 76:12 77:8 78:14 79:3 81:6 81:24 83:8 86:21 86:22 95:3 96:8 96:13 97:23 99:11 99:13 100:18 100:21 102:19 102:23 102:25 103:1 103:18 105:5 106:7 106:20 106:23 107:1 107:6 107:7 107:16 108:24 112:19 |
| **there(106)** | 6:14 9:19 9:20 13:24 14:10 15:12 16:3 16:12 16:25 17:10 18:23 19:8 19:13 20:14 21:3 21:22 22:4 22:23 23:7 23:11 23:12 24:21 28:22 28:24 29:9 30:16 30:19 30:22 34:23 38:11 42:23 47:5 47:10 53:20 55:15 56:2 58:1 59:2 59:8 59:8 59:12 60:25 61:25 62:22 63:8 63:12 63:15 64:23 64:23 65:10 70:10 71:15 73:3 74:8 77:2 77:9 80:5 82:13 83:3 85:5 86:1 86:5 87:9 93:6 93:9 95:7 97:21 98:13 99:2 99:16 100:5 100:17 101:18 101:19 101:19 102:12 102:18 102:24 102:24 103:7 103:1 104:12 105:1 106:8 106:15 106:16 106:17 106:20 107:12 107:16 108:2 108:7 108:8 108:11 108:16 108:17 109:1 109:1 109:3 109:3 109:4 109:8 109:9 110:17 110:22 112:19 |
| **there's(35)** | 46:19 47:10 47:19 50:16 51:4 52:7 65:6 65:12 65:20 68:13 69:5 69:20 71:3 73:7 73:11 74:11 80:22 80:25 82:17 84:8 84:13 87:3 88:10 89:7 94:3 94:6 97:21 97:23 100:16 103:12 106:8 106:23 107:2 107:7 110:8 |
| **thereby(1)** | 110:16 |
| **therefore(3)** | 24:4 91:17 92:11 |
| **there's(18)** | 7:17 8:23 10:9 12:16 14:9 14:16 17:21 18:5 18:9 19:14 20:18 20:20 22:10 26:17 26:18 29:21 40:1 40:8 |
| **these(53)** | 7:6 8:4 9:16 10:22 11:17 11:25 13:2 13:18 16:2 16:6 17:8 17:23 17:24 19:11 19:16 20:17 20:25 22:24 25:21 26:18 27:22 28:17 29:3 33:9 33:11 33:17 34:7 34:16 34:24 34:24 35:1 43:10 46:11 47:8 48:9 48:21 57:1 57:2 57:7 58:17 60:5 62:15 63:10 73:7 82:12 82:25 84:1 92:10 94:4 95:14 103:23 103:25 108:15 |
| **they(99)** | 6:24 7:2 7:3 8:8 8:8 9:9 10:3 14:24 15:14 16:23 17:14 17:16 17:17 17:18 21:17 21:19 22:17 22:24 29:24 30:7 34:20 37:16 44:6 44:10 44:11 44:13 44:14 45:16 48:7 48:15 48:17 49:15 53:20 56:9 56:20 57:4 57:8 59:16 60:17 61:7 62:1 62:3 62:19 62:19 62:20 62:20 67:14 67:15 67:16 67:17 67:19 67:23 67:24 68:10 70:8 70:21 70:23 70:23 75:21 76:9 76:16 79:7 79:8 79:9 79:10 81:5 81:7 81:22 81:23 83:2 83:2 85:2 86:15 86:15 86:16 90:24 91:10 91:11 91:22 93:1 96:9 97:22 97:22 98:6 99:9 100:9 101:13 103:2 103:4 104:10 104:12 104:14 105:3 106:18 111:11 |
| **they'd(1)** | 68:24 |
| **they're(11)** | 51:14 57:7 71:16 91:5 93:19 91:18 103:4 106:17 107:24 111:9 111:17 |
| **they've(5)** | 48:11 90:16 91:15 104:25 |
| **they're(2)** | 15:24 30:1 |
| **they've(1)** | 42:19 |
| **thing(15)** | 19:14 20:18 21:21 27:23 57:17 61:12 61:18 63:13 76:3 81:25 82:1 82:6 107:25 108:19 109:7 |
| **things(19)** | 6:2 13:5 13:22 13:25 15:10 15:22 19:14 37:21 42:16 64:17 72:2 74:1 81:2 86:17 89:5 89:11 89:11 93:17 106:5 |
| **think(88)** | 5:11 5:13 5:25 9:16 11:19 12:1 23:5 23:16 24:5 25:8 25:23 25:25 27:19 28:11 35:6 37:15 38:10 38:13 39:24 40:3 40:10 40:14 44:15 44:19 45:20 46:3 46:6 46:11 48:2 48:5 49:11 50:24 51:25 54:14 57:19 57:21 64:12 66:1 69:7 69:16 70:2 70:4 70:6 70:9 70:12 70:17 71:1 71:9 71:14 73:22 74:3 74:8 74:18 75:6 76:10 76:14 77:8 80:25 83:2 83:3 84:10 85:24 87:15 87:16 89:13 89:18 89:20 91:6 91:18 94:3 94:6 94:22 96:23 97:23 98:10 100:16 102:6 103:8 104:14 105:7 110:9 110:11 110:14 111:12 112:9 112:13 113:21 113:2 |
| **third(6)** | 2:6 5:15 43:2 47:8 65:1 90:21 |
| **third-party(1)** | 45:9 |
| **thirty(2)** | 81:20 81:24 |
| **this(183)** | 6:22 7:19 7:24 8:11 9:4 9:23 10:14 12:4 12:9 14:4 14:24 16:4 16:13 17:4 17:17 18:1 18:14 18:16 19:6 19:17 21:15 22:15 22:15 23:7 25:9 27:5 27:9 30:25 31:22 31:22 32:4 32:8 32:11 32:11 33:1 33:7 33:22 33:22 34:11 37:6 37:10 37:21 37:23 38:9 38:11 38:13 38:14 38:18 39:8 39:16 39:18 39:21 39:22 40:11 40:21 41:24 43:1 43:19 43:24 44:8 44:13 44:23 45:2 45:3 45:5 45:10 47:6 47:7 47:10 47:12 48:6 48:11 48:17 48:20 49:9 50:1 52:1 52:18 53:1 53:11 53:17 54:23 55:3 55:6 58:9 59:21 59:24 59:25 60:3 60:7 62:1 62:12 62:24 63:5 63:9 63:14 64:16 64:9 69:6 69:11 70:12 70:13 71:2 73:4 74:19 76:7 76:8 77:1 78:7 78:19 79:12 79:21 80:4 80:6 80:22 80:25 81:1 82:17 84:21 86:7 87:6 89:12 89:13 91:7 91:16 91:18 91:20 91:22 92:4 92:8 92:11 92:14 92:15 92:21 93:11 93:14 93:25 95:6 95:8 96:1 96:6 96:12 96:13 98:17 98:17 99:14 100:15 100:17 101:13 101:25 102:4 102:4 102:6 104:3 105:12 105:17 105:20 106:1 106:9 106:18 108:7 108:11 108:23 109:6 109:21 110:16 110:21 111:6 111:10 113:13 113:16 113:16 113:2 |
| **thomas(1)** | 3:30 |
| **thorough(2)** | 41:11 77:5 |
| **those(89)** | 6:2 6:12 8:13 8:14 13:21 16:4 21:16 21:17 22:7 22:21 23:4 27:10 28:10 29:2 29:7 29:11 29:13 40:19 40:22 42:7 46:14 56:19 57:13 57:16 58:6 59:5 60:24 60:24 61:9 62:2 62:3 66:16 66:19 66:23 67:1 67:9 68:12 68:14 70:17 70:20 72:6 73:21 75:14 75:15 77:8 78:19 78:23 79:3 79:7 85:3 86:22 86:24 89:2 93:5 93:10 93:11 93:15 93:18 93:23 94:1 94:21 94:23 95:7 95:13 96:15 97:13 97:16 97:18 99:3 99:7 99:22 99:23 100:15 100:18 102:21 103:3 103:20 103:22 105:1 105:18 105:24 111:4 |
| **though(5)** | 23:5 49:13 54:13 75:6 93:21 |
| **thought(4)** | 75:24 91:11 113:8 114:9 |
| **thoughts(1)** | 114:13 |
| **thousands(6)** | 56:13 57:3 58:4 63:5 70:10 91:4 |
| **three(14)** | 4:8 5:11 5:14 14:15 90:17 90:19 91:9 91:12 95:14 100:16 103:11 104:25 108:2 110:24 |
| **threshold(4)** | 67:17 68:9 68:16 99:19 |
| **thresholds(1)** | 67:13 |
| **through(25)** | 5:13 16:14 21:3 22:18 27:8 27:20 27:23 28:11 37:21 38:6 38:9 39:21 40:18 43:9 43:9 58:20 58:21 85:14 85:24 86:2 86:5 88:23 94:13 105:18 112:22 |
| **throughout(3)** | 10:1 39:18 59:10 |
| **thus(3)** | 90:15 91:10 110:13 |
| **tied(1)** | 81:1 |
| **time(40)** | 14:25 16:25 23:15 29:7 33:22 41:8 45:2 46:2 49:19 54:23 55:18 55:20 55:20 56:1 57:20 58:24 59:19 64:9 75:2 88:3 88:3 92:14 95:1 98:4 99:25 100:15 100:17 102:4 102:12 103:1 105:18 105:24 106:11 106:21 106:22 108:2 108:14 110:13 110:16 110:21 |
| **times(1)** | 50:11 |
| **timetable(1)** | 81:19 |
| **timing(2)** | 36:21 40:2 |
| **tired(1)** | 87:21 |
| **title(1)** | 56:20 |
| **title(1)** | 12:10 |
| **titled(1)** | 12:10 |
| **titles(1)** | 54:18 |
| **tobago(1)** | 21:11 |
| **today(26)** | 4:9 6:1 6:14 6:18 8:22 9:23 10:25 15:1 27:19 36:19 42:11 43:13 65:21 69:4 69:23 70:5 82:2 89:14 89:22 91:4 91:19 112:2 113:3 113:8 113:19 114:9 |
| **today's(2)** | 85:12 89:21 |
| **today's(1)** | 41:21 |
| **together(2)** | 8:6 80:19 |
| **token(1)** | 6:20 |
| **told(1)** | 100:7 |
| **toe(3)** | 67:19 87:4 112:22 |
| **took(2)** | 16:25 86:19 |
| **top(26)** | 54:25 61:24 66:16 67:4 67:25 75:14 91:17 91:22 92:1 92:11 92:15 92:22 93:19 95:15 96:2 96:3 96:8 96:12 106:24 109:1 109:2 109:3 109:3 109:9 109:12 113:7 |
| **top-hat(2)** | 44:17 45:12 |
| **topic(1)** | 26:16 |
| **toronto(1)** | 4:7 |
| **total(11)** | 33:11 55:1 57:4 57:9 57:18 60:1 60:20 62:11 67:18 72:9 93:22 |
| **totally(1)** | 82:1 |
| **touch(3)** | 43:12 89:6 93:14 |
| **touched(1)** | 93:10 |
| **toward(1)** | 35:2 |
| **towards(1)** | 23:10 |
| **transaction(8)** | 9:4 16:17 17:23 18:1 18:18 22:2 26:20 26:23 |
| **transactions(2)** | 19:11 22:14 |
| **transcript(3)** | 1:18 1:51 115:6 |
| **transcription(2)** | 1:43 1:51 |
| **transfer(25)** | 12:11 12:19 12:21 13:4 13:11 13:21 14:3 14:9 15:5 15:11 15:13 15:17 15:18 21:3 27:24 28:1 28:23 33:5 33:5 33:6 33:8 33:10 33:12 33:15 33:16 |
| **transferred(1)** | 7:2 |
| **transform(1)** | 109:14 |
| **transition(2)** | 22:5 22:12 |
| **travel(1)** | 85:16 |
| **treat(1)** | 60:7 |
| **treated(1)** | 82:17 |
| **treating(1)** | 56:9 |
| **tried(2)** | 43:11 60:23 |
| **trinidad(1)** | 21:11 |
| **true(2)** | 21:6 108:1 |
| **trued(1)** | 13:25 |
| **trust(19)** | 37:9 42:1 52:2 52:3 52:3 52:4 52:8 52:18 52:21 52:25 53:4 54:11 96:4 96:5 96:13 96:15 109:13 109:14 109:15 |
| **trustee(1)** | 52:2 |
| **trusts(2)** | 52:15 52:17 |
| **try(4)** | 38:8 60:25 62:18 112:18 |
| **trying(5)** | 20:22 44:21 53:24 60:6 64:3 |
| **tsa(1)** | 24:16 |
| **tuesday(1)** | 4:1 |
| **tunnell(2)** | 1:24 4:22 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**turn**(8) 4:15 23:19 26:1 35:24 36:15 41:25 79:5 91:12

**turned**(1) 43:20
**turning**(1) 45:22
**turnover**(5) 44:16 53:8 53:11 65:1 66:12
**turns**(1) 14:9
**tweaked**(1) 51:4
**tweed**(2) 2:23 3:29
**two**(20) 5:14 11:18 20:17 23:17 27:22 28:17 30:15 30:25 31:3 31:22 31:25 34:4 34:15 46:8 55:3 60:7 92:1 100:16 103:8 103:15
**two-fold**(1) 34:3
**type**(9) 12:4 34:11 44:11 45:10 47:10 62:25 64:4 71:23 108:12

**typical**(1) 67:3
**u.s.**(38) 7:7 7:19 9:5 9:23 10:20 11:1 13:11 13:15 13:17 13:20 14:6 14:7 14:11 14:16 16:8 16:10 18:2 18:4 19:10 19:14 20:2 20:23 21:18 21:25 23:9 26:6 32:11 36:6 41:18 52:2 55:20 63:6 86:2 86:10 86:12 89:17 89:17 99:14
**u.s./canada**(2) 28:19 28:20
**ultimate**(1) 35:2
**um-hum**(2) 14:14 15:25
**un-redacted**(1) 73:20
**unable**(1) 42:5
**uncomfortable**(1) 82:10
**under**(18) 7:25 14:8 14:16 16:2 16:13 20:25 22:19 23:9 28:6 28:7 42:24 43:22 43:25 48:16 52:17 67:24 69:17 84:22
**undergo**(1) 102:1
**underlying**(1) 35:2
**understand**(14) 4:7 38:15 39:6 51:25 56:7 64:3 64:22 66:2 66:21 85:14 89:25 95:8 104:19 114:7
**understanding**(6) 86:6 87:17 87:18 89:18 103:19 105:14
**understood**(6) 66:2 75:23 78:13 78:14 79:6 84:14
**undertake**(2) 102:2 108:16
**undue**(3) 97:6 97:10 98:13
**unduly**(1) 44:7
**unenforceable**(1) 69:25
**unfortunate**(1) 82:21
**unfunded**(8) 54:13 92:1 92:8 109:4 109:5 109:7 109:13 109:14
**unidentified**(7) 27:17 29:16 29:19 30:10 30:13 30:14 35:5
**unique**(2) 58:18 58:19
**unit**(1) 22:18
**united**(7) 1:1 1:20 6:24 6:25 32:6 35:19 88:22
**unleash**(1) 71:2
**unless**(5) 29:12 30:5 38:11 51:14 112:4
**unpaid**(1) 18:15
**unsecured**(3) 3:4 52:21 95:19
**until**(3) 10:14 59:6 101:3
**unwilling**(1) 10:13
**upload**(2) 97:22 98:14
**upon**(7) 13:6 27:6 34:19 59:16 81:15 110:4 110:13
**usable**(1) 113:6
**use**(8) 47:8 74:5 78:7 78:19 78:20 78:21 87:22 109:6
**used**(7) 11:12 59:10 78:24 89:12 89:16 91:18 111:9

**user**(1) 80:17
**usually**(2) 40:24 40:25
**utilized**(1) 77:25
**variety**(2) 6:22 15:8
**various**(6) 6:13 7:13 10:10 17:11 20:16 113:8
**vas**(2) 21:14 24:10
**vendor**(2) 107:3 107:4
**venture**(3) 21:25 22:1 113:22
**verified**(2) 79:17 82:8
**versus**(4) 73:10 89:13 89:17 102:5
**very**(35) 6:7 9:15 10:1 11:24 13:6 17:9 17:21 25:8 26:14 26:18 30:24 31:20 35:10 37:16 37:16 48:16 49:16 56:21 57:7 60:1 60:1 64:15 65:25 69:16 70:7 75:7 78:8 80:24 84:6 94:15 101:9 106:17 106:17 113:20

**victims**(1) 98:20
**views**(1) 4:12
**violate**(2) 60:8 60:10
**violation**(5) 68:24 109:2 109:7 109:8
**virtually**(1) 100:3
**vitally**(1) 75:19
**volume**(2) 99:1 110:2
**voluminous**(1) 57:7
**voluntarily**(4) 86:17 88:25 99:9 99:10
**voluntary**(3) 86:21 86:22 88:16
**wait**(3) 6:2 31:17 84:10
**waiting**(1) 14:23
**walked**(2) 36:10 36:24
**walrath**(2) 96:4 109:5
**walrath's**(2) 95:17 108:21
**wamu**(5) 95:20 96:1 96:16 96:18 108:20
**wander**(1) 88:3
**want**(33) 19:15 27:2 29:25 37:19 37:22 38:4 38:13 43:12 52:8 58:16 62:1 66:5 66:9 66:22 69:5 70:15 76:7 76:25 82:8 86:22 89:16 89:25 93:11 93:15 105:11 107:1 108:23 110:8 111:12 112:4 112:20 114:1 114:5
**wanted**(16) 26:17 36:11 37:3 38:1 41:10 43:14 60:6 62:21 64:16 69:23 84:3 88:21 108:9 114:9 114:15
**wanting**(2) 60:11 101:18
**wants**(5) 57:24 58:5 60:16 63:4 82:3
**war**(1) 95:16
**warrant**(1) 5:12
**was**(106) 7:19 7:21 10:11 10:13 10:15 13:5 13:10 13:24 16:10 16:18 16:18 16:25 17:1 21:24 24:19 24:23 28:9 29:7 29:8 29:20 30:15 32:5 32:11 33:22 39:21 40:1 40:11 46:24 47:18 51:9 53:11 54:4 54:15 54:25 54:25 55:4 56:1 56:2 56:21 56:23 56:25 58:14 59:6 59:8 59:8 59:12 59:13 59:15 59:19 59:20 60:8 60:25 61:22 62:1 62:17 62:19 63:12 65:4 67:14 67:24 77:2 78:15 78:16 79:15 80:8 84:13 85:7 86:18 88:13 91:18 93:5 93:6 93:9 95:21 96:2 96:3 99:2 99:2 99:16 99:16 99:17 99:21 99:25 100:8 101:12 101:15 102:10 102:13 103:17 104:6 104:20 104:22 109:1 109:1 109:2 109:3 109:3 109:4 109:4 109:8 109:9 113:3 115:2
**washington**(1) 95:17
**wasn't**(4) 100:7 101:16 102:25 105:25
**watkins**(1) 2:4
**way**(22) 6:9 9:11 28:4 37:23 39:20 41:1 43:25 52:8 56:9 60:25 67:10 67:11 68:14 70:12 73:5 73:13 74:19 75:5 91:15 92:10 99:14 112:8
**we'd**(3) 50:19 50:20 105:21
**we'll**(9) 51:8 51:13 68:17 81:19 82:11 89:5 89:6 89:7 112:24

**we're**(46) 47:24 49:12 55:8 55:8 55:21 56:12 60:21 64:1 64:3 68:1 68:5 68:8 68:20 69:7 70:18 71:21 72:18 73:21 74:2 76:5 76:8 76:11 77:9 78:18 79:20 80:1 82:1 82:7 82:11 82:13 82:15 88:11 89:5 91:2 95:16 104:15 105:22 106:6 106:14 107:20 108:13 112:6 112:8 113:2 113:10 113:15
**we've**(17) 49:15 68:20 74:10 79:20 80:18 84:21 85:1 85:15 90:18 91:3 92:19 93:13 95:8 98:5 101:5 103:6 103:9

**week**(1) 22:9
**weekly**(1) 49:10
**weigh**(1) 103:21
**weighed**(1) 60:14
**weighing**(1) 60:24
**well**(47) 6:10 6:25 7:19 9:8 10:3 10:24 11:11 12:12 12:20 20:5 20:6 23:21 25:6 26:18 31:20 32:13 34:8 39:7 40:3 40:7 40:25 42:16 44:8 46:25 51:7 54:3 54:9 60:6 69:4 69:19 78:8 81:2 81:9 84:6 86:6 88:3 89:19 90:16 91:16 93:18 93:21 101:8 105:10 105:22 111:11 112:9 113:20
**went**(11) 28:11 37:14 47:25 54:3 56:2 92:6 99:2 99:18 102:25 108:4 108:9
**were**(108) 6:16 9:1 13:21 15:13 15:13 16:3 17:3 17:4 18:21 18:22 21:17 22:4 22:11 28:6 29:9 30:7 39:20 42:1 42:22 45:5 48:9 52:24 53:9 53:13 53:18 53:19 53:20 53:20 54:14 54:14 54:19 55:2 55:4 55:5 55:6 55:7 55:15 56:6 56:14 57:4 57:5 57:6 57:15 57:16 58:15 59:2 59:5 60:5 60:17 62:1 62:20 63:14 63:16 63:24 63:24 66:18 68:12 69:22 75:15 75:18 76:18 76:19 77:3 77:11 77:12 77:13 77:16 79:9 79:22 80:14 81:5 82:22 83:3 83:7 93:12 95:15 95:22 96:18 99:5 99:20 99:22 99:24 100:7 100:24 101:11 102:12 102:18 102:21 102:24 102:25 103:7 103:9 103:10 103:12 103:24 104:2 104:5 104:11 105:6 105:8 105:20 107:15 107:16 108:2 108:9 108:9
**weren't**(2) 103:4 114:8
**we'll**(11) 5:19 8:15 19:7 23:10 31:8 35:15 35:15 40:19 41:6 41:8 45:19
**we're**(16) 6:17 9:22 10:6 11:12 11:23 12:6 12:9 12:9 21:20 26:5 31:17 35:20 37:22 38:9 38:13 41:23
**we've**(17) 6:12 7:23 19:15 22:14 25:12 29:10 29:25 30:10 35:6 37:11 38:4 44:20 44:25 44:25 45:2 45:2 45:11
**what**(67) 5:25 7:23 8:16 13:25 14:6 15:10 20:7 22:14 26:14 43:21 44:1 44:2 44:10 44:14 44:15 45:23 50:7 52:15 54:4 54:4 55:13 56:8 56:25 60:6 62:7 62:18 63:3 63:3 63:4 63:20 65:9 66:22 67:11 67:18 68:10 69:12 80:14 81:18 81:22 81:23 83:3 85:8 90:1 90:1 91:7 91:21 92:7 92:25 92:25 93:3 93:15 93:17 94:8 94:24 95:13 96:21 98:19 99:19 100:17 101:12 101:18 105:7 106:1 106:10 110:13 113:11
**what's**(4) 89:17 104:24 105:17 106:20
**whatever**(5) 9:2 9:9 88:1 98:20 107:9
**when**(25) 7:18 8:3 13:9 16:17 18:21 19:11 22:12 53:11 55:1 56:1 56:24 57:6 58:17 59:23 60:5 69:10 72:5 79:21 79:23 100:4 102:3 103:2 106:2 110:10 112:8
**where**(24) 7:3 9:12 10:25 18:9 39:24 44:23 50:18 53:18 55:4 55:6 55:15 57:15 58:21 59:23 61:9 62:25 68:2 96:6 97:6 101:25 102:24 108:13 109:1 109:11

**whereas**(1) 19:3
**whereupon**(1) 115:2
**whether**(19) 23:9 38:16 38:18 40:15 40:16 44:16 49:21 54:11 54:15 70:21 75:2 75:21 81:18 92:15 93:19 96:7 97:20 97:24 99:19
**which**(64) 4:14 5:1 6:10 7:8 8:5 14:20 16:10 18:3 18:18 19:15 19:20 20:20 21:18 21:18 21:23 22:16 24:24 27:18 28:5 28:8 28:14 28:21 29:1 29:8 30:16 32:10 34:1 35:23 37:8 41:18 42:1 44:16 44:19 45:5 45:13 46:9 47:6 51:1 56:24 58:20 59:14 63:4 65:15 67:14 68:19 68:25 71:2 72:7 72:16 75:5 75:25 77:12 77:13 80:8 87:19 91:14 95:12 95:21 99:22 101:5 110:23 112:12
**whichever**(3) 83:15 83:17 87:25
**while**(2) 90:25 104:8
**who**(50) 5:3 6:2 6:15 9:17 45:13 50:18 51:14 51:18 55:2 55:5 55:23 58:2 58:4 59:24 59:25 61:13 61:14 62:2 64:21 67:1 68:8 68:12 69:21 71:4 71:9 73:3 73:4 75:10 75:14 75:15 76:5 76:5 76:17 76:18 81:1 93:11 94:13 94:25 95:2 97:14 97:16 98:19 99:18 100:5 100:17 101:6 101:15 101:15 102:3 102:10 102:24 102:25 103:15 104:1 104:4 104:5 104:6 104:6 104:11 104:11 104:13 104:14 105:6 105:8 106:18 106:23 107:10 108:1 108:3 108:10
**who's**(4) 60:17 99:17 107:2 107:3
**whole**(5) 49:9 49:20 49:22 92:4 101:2
**whom**(2) 48:15 56:13
**whose**(3) 60:2 93:10 99:16
**why**(13) 40:21 40:22 46:22 56:8 58:17 59:5 64:3 66:5 66:25 91:9 96:18 100:8 101:3
**will**(81) 5:2 5:3 5:15 7:17 8:4 8:7 8:8 8:8 8:19 8:20 8:22 9:3 9:4 11:2 11:4 12:23 14:24 15:1 16:19 17:16 18:2 18:3 18:17 18:20 22:6 22:17 22:20 22:24 23:2 23:10 24:8 24:24 25:6 26:9 27:23 28:6 29:2 30:24 31:21 31:25 32:17 33:11 33:18 33:20 33:21 35:4 36:15 38:1 41:5 41:9 41:20 45:22 46:7 46:22 50:11 51:17 65:23 67:5 67:8 69:21 70:16 70:20 70:23 70:24 74:20 83:8 83:11 83:13 83:14 85:13 91:23 93:2 95:20 96:13 96:15 110:20 110:20 111:24 112:16 114:24
**willing**(7) 25:1 37:16 53:25 63:2 71:20 79:20 104:15
**wilmington**(8) 1:12 1:29 2:14 2:34 3:17 4:1 4:7 32:8
**win**(2) 95:15 96:8
**wind**(3) 7:3 16:4 75:5
**wind-down**(2) 16:6 33:14
**window**(1) 53:24
**wine**(1) 12:7
**wish**(1) 25:11
**wishing**(2) 27:13 30:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|

**with**(184) 4:14 5:12 5:17 5:19 5:19 6:6 6:8 6:11 6:18 7:5 7:7 7:22 7:25 9:5 9:7 9:20 10:2 10:14 10:16 10:17 10:25 11:14 12:24 12:24 13:4 13:10 13:10 13:22 14:1 14:1 14:2 14:3 14:8 14:8 14:16 14:19 14:22 17:7 18:8 18:22 18:22 19:6 20:6 20:8 21:4 21:5 21:10 21:12 21:14 21:23 22:2 22:2 22:4 22:6 22:13 22:13 22:25 23:13 23:19 24:9 24:23 27:4 27:8 29:2 30:4 31:3 31:5 31:22 31:24 32:1 32:5 32:6 32:9 33:18 33:20 33:21 34:18 34:21 34:25 35:16 36:14 38:7 38:7 38:19 38:21 39:5 39:15 40:4 41:10 41:20 42:13 42:19 42:22 44:16 44:17 47:13 48:15 48:22 49:5 49:5 49:8 49:10 49:12 49:19 49:20 49:22 50:1 50:21 50:25 51:11 53:22 54:23 55:9 56:5 56:7 58:22 59:7 59:9 59:13 59:16 59:18 60:7 61:8 61:20 61:20 61:25 62:3 63:7 63:20 63:21 64:2 64:2 65:8 66:23 68:1 68:6 68:10 70:9 70:10 70:19 71:21 71:23 72:14 74:4 74:8 74:10 76:1 76:6 76:8 76:9 76:11 76:11 76:21 78:4 78:14 78:22 78:22 80:19 81:12 81:18 82:1 82:8 83:24 83:24 89:6 89:14 91:7 92:13 92:22 93:16 93:19 95:6 98:7 98:9 103:16 104:5 104:12 107:1 107:13 107:14 107:20 110:14 113:17 114:6

**withhold**(1) 103:4
**withholding**(1) 46:10
**within**(4) 54:2 66:20 80:2 84:24
**without**(9) 15:10 15:15 33:2 34:24 61:4 72:12 74:21 88:13 114:2

**witness**(1) 53:9
**witnesses**(10) 50:9 50:23 51:5 51:18 62:2 68:8 70:16 70:19 72:15 75:1

**wondering**(1) 49:21
**word**(3) 51:18 58:22 107:19
**words**(2) 76:17 79:11
**work**(13) 22:10 22:11 22:16 22:20 23:2 23:10 29:9 38:9 40:7 42:8 93:10 101:10 114:8
**worked**(5) 67:10 67:11 71:9 93:6 94:25
**workforce**(3) 55:1 55:19 60:20
**working**(4) 37:20 38:6 39:20 82:12
**world**(6) 6:15 15:14 59:7 59:11 66:25 105:18

**worth**(2) 102:23 108:17
**worthwhile**(2) 11:19 12:21
**worthy**(1) 94:19
**would**(135) 7:12 8:4 8:12 9:12 10:7 14:12 17:12 17:13 17:14 19:10 20:7 20:8 20:11 20:18 21:21 22:8 23:5 23:19 24:22 25:7 25:7 28:5 37:8 38:3 38:8 39:16 39:22 39:25 40:6 40:7 44:2 47:22 48:3 48:9 48:19 49:12 49:13 49:20 51:25 55:25 56:7 58:18 58:20 58:23 59:17 60:3 60:11 61:12 61:15 61:18 63:19 64:3 65:21 67:13 67:15 67:18 69:1 69:8 69:13 69:24 69:25 71:4 71:10 71:20 74:3 74:8 74:9 74:15 74:18 75:18 75:25 76:3 76:7 76:12 78:6 78:24 79:16 80:2 80:16 80:24 81:1 81:2 81:16 82:2 82:10 82:12 82:20 82:21 83:1 83:4 83:6 83:6 83:25 85:7 88:12 89:25 90:2 90:19 91:7 91:12 92:25 93:1 94:9 94:24 95:2 95:5 96:4 96:21 98:5 100:1 100:5 100:6 100:23 101:14 101:14 102:1 102:24 103:11 103:19 103:20 104:11 104:12 104:15 104:15 106:7 107:25 108:15 108:25 109:13 109:16 109:22 110:12 112:7 112:9 113:9

**wouldn't**(4) 63:19 70:1 70:1 84:19
**wound**(2) 7:4 8:3
**write**(2) 30:24 70:20
**writing**(1) 22:22
**written**(1) 112:10

**www.diazdata.com**(1) 1:47

**year**(11) 18:15 20:22 21:19 29:8 54:7 55:24 56:22 63:7 76:22 94:2 104:22

**years**(12) 55:15 85:8 91:3 97:5 102:15 102:16 102:19 102:20 102:24 105:3 105:7 105:20
**yes**(97) 4:24 11:8 11:16 12:3 12:5 12:15 15:6 18:19 19:2 24:6 25:4 25:16 29:16 29:18 31:4 31:5 35:8 35:20 35:22 36:8 36:23 37:2 37:12 38:5 39:23 42:6 42:15 45:6 46:1 46:6 47:21 51:2 52:6 55:12 55:17 57:23 64:14 65:19 66:4 66:4 76:16 66:24 69:9 72:4 73:19 74:13 74:24 76:15 76:25 77:18 77:23 79:3 79:13 79:18 80:13 82:5 82:19 84:8 84:16 85:20 85:22 86:4 86:14 87:2 87:7 87:14 88:8 88:9 90:5 90:12 91:13 93:4 95:24 97:3 97:8 97:17 98:12 98:12 98:25 100:12 102:14 102:16 102:22 106:4 108:22 108:22 110:25 111:2 111:14 111:15 111:16 111:23 111:23 112:14 112:24 114:16 114:18

**yet**(5) 14:21 17:16 29:9 94:12 94:20
**york**(6) 1:38 2:7 2:20 2:26 2:46 3:10
**you**(227) 4:3 4:4 4:7 4:15 4:17 4:18 5:6 5:21 5:22 5:23 9:4 11:9 11:11 15:22 18:25 22:5 23:22 24:8 25:11 25:14 25:16 25:16 25:17 25:20 26:2 26:3 26:3 27:10 27:12 27:16 29:12 29:14 29:21 29:24 29:25 30:5 30:11 30:23 31:4 31:5 31:6 31:7 31:8 31:9 31:12 31:25 34:16 34:17 35:5 35:10 35:11 35:14 36:1 36:16 36:19 36:20 38:10 39:9 40:7 40:22 40:23 40:24 41:3 41:8 41:9 41:13 41:16 45:23 45:24 49:4 51:8 51:21 51:23 55:18 56:24 57:6 57:8 57:15 58:20 60:3 61:15 61:18 61:22 61:23 61:24 62:13 62:14 62:25 63:11 63:22 63:23 64:5 64:8 64:10 65:4 65:22 65:24 65:25 66:3 66:4 66:5 66:21 66:22 66:24 68:4 68:15 70:9 70:13 70:15 70:16 70:17 70:22 71:5 71:5 71:15 71:16 72:24 73:4 73:5 73:14 73:17 73:25 74:4 74:5 74:12 74:25 75:2 75:4 75:17 75:23 75:24 76:17 76:18 76:23 76:23 77:5 77:16 78:6 78:8 79:3 79:5 79:16 79:19 80:3 80:4 80:8 80:24 81:3 81:8 81:12 83:4 83:21 84:6 86:11 86:12 86:25 87:20 87:21 87:24 87:25 88:1 90:1 90:7 90:8 91:17 92:11 92:25 93:17 93:18 93:20 95:5 97:15 98:15 98:16 99:8 100:13 100:14 100:19 100:19 100:20 100:21 102:4 102:18 103:6 103:16 103:21 103:23 104:10 104:17 105:11 105:18 106:11 106:12 106:19 106:20 106:24 107:1 107:14 107:21 107:23 108:8 109:6 109:23 110:11 110:12 110:22 111:12 111:12 111:24 112:5 112:7 112:13 112:13 112:15 112:16 112:20 112:25 113:1 113:16 113:21 114:15 114:15 114:16 114:18 114:23 114:25 115:1

**you'll**(2) 103:17 110:9
**you're**(8) 46:16 55:10 59:23 68:3 78:21 83:5 87:20 107:9

**you've**(3) 90:14 102:7 106:24
**young**(2) 36:5 64:11

**your**(113) 4:16 4:21 5:8 5:20 5:25 6:9 6:18 7:24 9:4 11:5 11:11 15:22 16:19 18:6 18:10 18:20 18:24 19:7 19:13 21:21 23:17 25:11 25:18 26:5 26:11 27:17 28:6 29:12 29:16 29:23 30:14 31:2 35:5 35:20 36:2 36:18 38:15 38:17 39:6 39:11 39:14 41:3 41:12 41:16 41:20 42:11 43:6 46:3 46:7 47:6 50:7 50:8 50:24 51:23 64:6 65:9 65:15 66:9 66:10 68:2 68:18 68:22 71:17 72:21 73:25 74:4 74:5 74:17 75:23 81:13 81:21 81:25 83:1 83:4 83:21 84:10 86:2 87:1 87:24 88:3 88:9 89:7 89:10 89:10 90:7 90:8 90:11 95:20 96:24 98:5 98:23 104:19 104:24 105:23 106:14 107:7 110:17 110:22 111:8 111:19 112:2 112:5 112:14 112:24 112:25 112:25 113:9 113:14 114:2 114:12 114:18 114:25

**you'll**(1) 28:22
**you're**(3) 4:14 6:10 41:15
**zero**(1) 9:1
**^agreement**(1) 12:11