# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
*In re*                                                  :   Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                       :   Case No. 09-10138 (KG)
:
              Debtors.                                     :   Jointly Administered
---------------------------------------------------------X
:
Nortel Networks Inc.,                                    :
:
              Plaintiff,                                   :
:
v.                                                       :   Adv. Proc. No. 12-50773 (KG)
:
State of Michigan                                        :   **Hearing Date:** June 25, 2013 at 10:00 a.m. (ET)
Department of Treasury,                                  :   **Objections Due:** June 18, 2013 at 4:00 p.m. (ET)
:
              Defendant.                                   :
:
---------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND
## BANKRUPTCY RULE 9019 APPROVING STIPULATION BETWEEN
## NORTEL NETWORKS INC. AND MICHIGAN DEPARTMENT OF TREASURY

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing NNI's entry

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

into and approving a stipulation attached hereto as **Exhibit B** (the "Stipulation") with the State of Michigan Department of Treasury ("Michigan Treasury", and together with NNI, the "Parties"), and (ii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

2

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.     Since the Petition Date, Nortel has sold its business units and other assets to various purchasers.  For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7.     By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation, and (ii) granting the Debtors such other and further relief as this Court deems just and proper.

---

[3]   The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]   The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**Facts Relevant to this Motion**

A. **Background**

8. Prior to the Petition Date and during the 2009 and 2010 tax years, NNI sold networking products and in some instances provided services to entities located in Michigan. Under the Michigan Single Business Tax Act (the "SBT") for tax years 2001-2005 and the Michigan Business Tax Act (the "MBT") for tax years 2008-2011, NNI was required to pay Michigan business tax each year it operated within the state.

B. **The Michigan Tax Claims**

9. On or about June 1, 2010, NNI filed amended SBT returns for tax years 2001, 2002, 2003, 2004 and 2005 (the "Amended Returns") as a result of NNI's amendment of its federal corporate income tax returns for the same years, which arose from a $2 billion income adjustment. On March 9, 2011, Michigan Treasury filed a motion to assert a late claim in the amount of $1,486,114.81 against NNI as a result of the Amended Returns [D.I. 5091], and on March 31, 2011, this Court entered a modified order granting such motion [D.I. 5190]. On April 27, 2011, Michigan Treasury filed a proof of claim against NNI in the amount of $1,486,114.81 (Claim No. 7719) with respect to the Amended Returns (the "Amended Return Claim").[5]

10. Pursuant to the State of Michigan's third party liability statute, Mich. Comp. Laws § 205.27a(5), Michigan Treasury issued assessments against certain current and former NNI employees, including, without limitation, Allen Stout, Paul Karr, Clare Barbieri and Jeffrey Wood (collectively, "NNI Employees"),[6] purportedly asserting that such NNI Employees may be

---

[5] In addition to Claim No. 7719, Michigan Treasury previously filed Claim No. 7242 against NNI for a total amount of $77,974.87 (the "2008 Penalty and Interest Claim") allegedly owed to Michigan Treasury as a result of an initial underpayment of NNI's 2008 MBT liability. Michigan Treasury withdrew the 2008 Penalty and Interest Claim on August 11, 2010 [D.I. 3771] and subsequently withdrew Claim Nos. 863 and 995 on August 19, 2010.

[6] The term "NNI Employees," as used in this Motion, is not limited to those individuals referenced herein, but includes individuals that have been identified and assessed or may later be identified and assessed by Michigan Treasury as potentially liable third parties pursuant to Mich. Comp. Laws § 205.27a.

derivatively liable for the 2008 Penalty and Interest Claim and/or the Amended Return Claim (the "Employee Assessments").

11. On March 14, 2012, March 20, 2012 and September 18, 2012, respectively, Michigan Treasury issued assessments against NNI for additional taxes, interest and penalties in connection with NNI's 2009, 2010 and 2011 MBT returns (the "Postpetition Assessments"). The Postpetition Assessments were issued in the following amounts: $1,460,060 for NNI's 2009 MBT return; $196,478.00 for NNI's 2010 MBT return; and $12,505.00 for NNI's 2011 MBT return.

C.  **The Adversary Proceeding**

12. On June 15, 2012, in response to the issuance of the Employee Assessments and certain of the Postpetition Assessments, NNI instituted an adversary proceeding against Michigan Treasury (Adv. Proc. No. 12-50773) (the "Adversary Proceeding"). NNI's complaint against Michigan Treasury [Adv. D.I. 1] (the "Adversary Complaint") sought (a) injunctive or declaratory relief to prevent Michigan Treasury from taking any action against NNI Employees to collect, assess, enforce or otherwise pursue in any manner whatsoever fees, taxes, interest, penalties or any derivations thereof allegedly owed, owing or to be owed by NNI; (b) a determination that NNI Employees are not liable for any amounts related to prepetition and postpetition claims against NNI; and (c) a determination that NNI has been discharged from any liability for the Postpetition Assessments. Michigan Treasury filed an answer to the Adversary Complaint on July 19, 2012 [Adv. D.I. 28].

13. Contemporaneously with the filing of the Adversary Complaint, NNI filed a motion for a preliminary injunction or declaratory judgment enjoining and staying Michigan Treasury from collecting taxes allegedly owing by NNI, and any interest or penalties thereon, from NNI Employees [Adv. D.I. 4]. On July 11, 2012, this Court granted NNI a preliminary

injunction enjoining and staying Michigan Treasury from "[t]aking any action against [NNI Employees] to collect, assess, enforce or otherwise pursue in any manner whatsoever, fees, taxes, interest, penalties or any derivations thereof allegedly owed, owing or to be owed by NNI" pending a determination by the Court of the Adversary Complaint. See *Order for Preliminary Injunction*, dated July 11, 2012 [Adv. D.I. 24].

D.   **The Proposed Settlement**

14.   In an effort to avoid the cost and risk inherent in litigating the Adversary Proceeding, the Parties engaged in arm's-length negotiations to resolve the disputes between the Debtors and Michigan Treasury. As a result of these negotiations, subject to this Court's approval, NNI has reached a compromise with Michigan Treasury as memorialized in the Stipulation.

15.   The Stipulation provides that, subject to this Court's approval:[7]

    a.   Within ten business days of an order approving the Stipulation becoming a final, non-appealable order (the "Effective Date"), NNI shall pay $1,086,924.11 (the "Settlement Amount") in full and final satisfaction of any and all claims that have been or could have been asserted in the Amended Return Claim, Postpetition Assessments and/or NNI Employee Assessments (the date the payment is made by NNI, the "Payment Date").

    b.   In exchange for the Settlement Amount, Michigan Treasury will withdraw with prejudice the Amended Return Claim.

    c.   Michigan Treasury will release and forever discharge the Debtors and the NNI Employees from any and all liability they now have or hereafter may have arising from or related to the period prior to the Petition Date (including, without limitation, the Amended Return Claim) and/or the Postpetition Assessments. This release will not affect Michigan Treasury's right to assert a claim against NNI arising from tax liabilities that may be incurred after the Effective Date, including, but not limited to, tax liability resulting from NNI's 2012 corporate income tax or other business tax filings ("Future Claims"). The Debtors reserve all rights and defenses to setoff any and all refunds, credits and/or overpayments that

---

[7]   This discussion is intended as a summary of the terms of the Stipulation. To the extent that the summary and the terms of the Stipulation are inconsistent, the terms of the Stipulation shall control.

    may arise as part of any Future Claims asserted by Michigan Treasury against NNI.[8]

d.  The Debtors will grant Michigan Treasury a release from any claims that the Debtors now have or hereafter may have arising from or related to the period prior to the Petition Date (including, without limitation, the Amended Return Claim) and/or the Postpetition Assessments.

e.  Within ten business days of the Payment Date, NNI shall dismiss with prejudice the Adversary Proceeding.

### Basis for Relief

16.  The Debtors seek authorization to enter into the Stipulation under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

17.  Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease the property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b). Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction. Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996).

18.  The use or transfer of estate property under this provision must be supported by a sound business purpose. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459 JJF, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re

---

[8]  NNI filed a Notice of Discontinuance with Michigan Treasury indicating that it would cease continued business activity in the State of Michigan as of December 6, 2012 (the "Discontinuance Date"). However, as NNI may be required to periodically file withholding returns with the State of Michigan after the Discontinuance Date as a result of the chapter 11 proceedings, withholding filings have been expressly excluded from contemplation of the Notice of Discontinuance.

Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, Civil Action No. 07-2785 (FLW), 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward Holding Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in exchange. See In re Decora Indus., Inc., 2002 WL 32332749, at *2; In re Del. & Hudson Ry. Co., 124 B.R. at 176.

19.     Bankruptcy Rule 9019 provides, in pertinent part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "'[c]ompromises are favored in bankruptcy.'" In re Martin, 91 F.3d at 393 (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the

8

bankruptcy court.  See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

20. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "'the compromise is fair, reasonable, and in the interest of the estate.'"  In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.  Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  Travelers Cas. & Sur. Co., 2008 WL 821088, at *5 (citing Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.), 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

21. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

22. The Debtors respectfully submit that the Stipulation meets the requirements under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  As required by section 363, the Stipulation was negotiated and entered into by the Parties in good faith as a means of resolving

the Adversary Proceeding and all outstanding issues relating to the prepetition and postpetition claims asserted by Michigan Treasury against NNI and NNI Employees. The compromise embodied by the Stipulation rises well above the necessary threshold of reasonableness and serves the sound business purposes of resolving the Debtors' disputes with Michigan Treasury.

23. While NNI is prepared to litigate the Adversary Proceeding and believes that there is a reasonable likelihood it would prevail in such litigation, NNI recognizes that litigation of the Adversary Proceeding carries with it inherent uncertainties and risks. Pursuant to the settlement reflected in the Stipulation, Michigan Treasury has agreed to release the Debtors and NNI Employees from prepetition liabilities and liabilities arising from the Postpetition Assessments in exchange for the Settlement Amount. Moreover, the Stipulation will resolve Michigan Treasury's Amended Return Claim against NNI in these chapter 11 proceedings. This resolution fairly balances NNI's likelihood of success on the merits of the claims asserted in the Adversary Proceeding against its interest in avoiding the uncertainty and potential risks of litigation. In particular, the terms of the Stipulation will provide NNI Employees, including current officers, with certainty regarding the outcome of the assessments issued against NNI and NNI Employees without further detracting resources from the Debtors' estates.

24. Finally, the interests of the creditors militate in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Adversary Proceeding and the avoidance of litigation risk and further legal expenses that would be incurred if the Adversary Proceeding were to be further litigated.

25. In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

**Notice**

26.     Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) the State of Michigan Department of Treasury; (v) the State of Michigan Attorney General; and (vi) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

27.     No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: June 4, 2013
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*