IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------- x
In re:                                               :   Chapter 11
                                                     :
                                                     :   Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                   :
                                                     :   (Jointly Administered)
                Debtors.                             :
                                                     :   **Re: Docket No. 10607**
                                                     :
---------------------------------------------------- x

**RESPONSE OF THE U.K. PENSION CLAIMANTS
TO THE COURT'S ORDER TO SHOW CAUSE WHY
THE COURT SHOULD NOT IMPOSE SANCTIONS**

Nortel Networks UK Pension Trust (the "Trustee") and the Board of the Pension Protection Fund (the "PPF," and together with the Trustee, the "U.K. Pension Claimants") hereby respectfully respond to the Court's May 21, 2013 Order Requiring the U.K. Pension Claimants to Show Cause Why The Court Should Not Impose Sanctions (the "Order"). [D.I. 10607]  In support of the response, the U.K. Pension Claimants, by and through their undersigned counsel, respectfully state as follows:

**Preliminary Statement**

The U.K. Pension Claimants were surprised by the Court's Order and take very seriously any concerns that the Court may have with the Motion to Shorten Notice.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332) ("NNI"), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226) ("NN CALA").

{BAY:02297198v1}

Contrary to the inaccurate impression created by the Debtors' and Committee's Joint Objection to the Motion to Shorten Notice (the "Objection") [D.I. 10602], at no time did the U.K. Pension Claimants seek to "attack" or signal their intention not to "abide by the Court's Litigation Timetable and Discovery Plan." (Obj. ¶ 1.) Specifically, the U.K. Pension Claimants did not seek, and had no intention of seeking, relief of any kind from the Litigation Timetable deadline of May 22, 2013 to serve document requests and interrogatories (the "May 22 Deadline"). Although the U.K. Pension Claimants did note that the Debtors' failure to respond to the Amended Claims as required by Rule 7012 was effectively precluding them from serving as limited and specific requests as they would have otherwise been able to serve, they fully intended to comply with the May 22 Deadline, which they in fact did by serving the Debtors and the Committee with timely discovery requests on May 22. As discussed below, the Motion to Shorten Notice was filed to facilitate an adjudication of the Motion to Strike in sufficient time to enable the U.K. Pension Claimants to prepare efficiently and intelligently to comply with the impending deadlines in the Litigation Timetable beyond the May 22 Deadline. Specifically, the U.K. Pension Claimants asserted that the Debtors' failure to respond properly to the Amended Claims "impedes the U.K. Pension Claimants' ability to identify their own relevant fact and expert witnesses, or witnesses from parties to be deposed, as well as their ability to determine how to properly focus the questioning of witnesses in depositions or at trial." (Mot. to Shorten Notice, ¶ 7.) [D.I. 10660]

Counsel to the U.K Pension Claimants take their obligations of candor and good faith to the Court very seriously. Consistent with those obligations, counsel also has an obligation to represent their clients zealously within the bounds of the law. Del.

R. Prof. Cond. Preamble.  In turn, the Trustee is a fiduciary to over 40,000 members of the Plan, whose lives have been upended by Nortel's worldwide insolvency proceedings.  Both the Trustee and the PPF, a statutory fund established by the U.K. Government under the U.K. Pensions Act 2004, also take their duties and responsibilities with respect to the Plan and its members with the utmost seriousness.

The U.K. Pension Claimants respectfully submit that in filing the Motion to Shorten Notice and the Motion to Strike they acted consistently with both their obligations to the Court and their duties to the members they represent.

I. **Background To The Motion To Strike And Motion To Shorten Notice**

Although the focus of this submission is on the propriety of the Motion to Shorten Notice, that Motion cannot be viewed in a vacuum: the context in which it was filed must be considered briefly.  Last summer, the Debtors insisted that it was imperative that the Court apply Rule 7012 to the U.K. Pension Claimants' claims and that they be required to serve a more definite statement of their claims within 20 days of the hearing on the Debtors' motion.  That relief was necessary, according to the Debtors, because the U.K. Pension Claimants' claims were insufficiently particularized, making a response to them difficult.  The Debtors told the Court that requiring the U.K. Pension Claimants to file a more particularized statement of their claims under Rule 7012 would "promote the efficient resolution of [the U.K. Pension Claimants'] Claims," "avoid undue delay in administration of [the Debtors'] estates," and "provide for similarity between bankruptcy court and district court proceedings."  (June 11, 2012 Debtors' Obj., ¶ 31.) [D.I. 7818]  Based on the Debtors' representations, the Court granted the Debtors' motion.  (July 11, 2012 Order) [D.I. 7984]

The U.K. Pension Claimants worked tirelessly under challenging circumstances (occasioned by the virtual shutdown of business in London as a result of the Summer Olympics) to comply with the Court's order, which they did by serving, on September 5, 2012, a 93-page complaint-styled pleading containing 325 paragraphs of particularized allegations of fact and law supporting their claim.

Although under Rule 7012, the Debtors were obligated to file a responsive pleading to the Amended Claims[2] within fourteen days, they ignored the rule's requirements.  When they finally did respond to the Amended Claims on May 14, they totally ignored the particularized allegations they insisted the U.K. Pension Claimants were required to make and, instead, served a generalized brief asserting purported legal arguments in support of disallowance of the Amended Claims.  In short, after demanding that the U.K. Pension Claimants lay their cards on the table, the Debtors held their cards to their vests, leaving the U.K. Pension Claimants entirely in the dark as to which of the 325 paragraphs of particularized allegations the Debtors deny and which, if any, they admit.  It is against that background that the U.K. Pension Claimants filed the Motion to Strike and the Motion to Shorten Notice.

II.   **The U.K. Pension Claimants Filed The Motion To Strike And Motion To Shorten Notice As Promptly As Possible.**

The Debtors' and Committee's criticism that the U.K. Pension Claimants "never raised any objection or concern regarding the form of the Joint Claims Objection at any time over the last week before filing their Motion to Strike" and that they "waited six days after the Joint Claims Objection was served on them, and until the eve of the

---

[2]   Indeed, the Debtors acknowledged as much in the Allocation Protocol submitted to, and approved by, this Court.  (See Order Entering Allocation Protocol, Exhibit 1, ¶ 6 ("Certain claims have been made by the UK Pension Claimants against (a) the U.S. Debtors. . .to which the U.S. Debtors intend to file responsive pleadings. . .")) (emphasis added).  [D.I. 10565]

deadline to serve discovery requests to file their Motion," (Obj. ¶ 7.), is truly remarkable in its palpable temerity.³ After having had the Amended Claims for in excess of eight months, the Debtors and Committee filed their Joint Objection at 7:30pm on Tuesday, May 14 (and served it by email on the U.K. Pension Claimants at just after 9 p.m. that evening). As the Court is well aware, all Core Parties were working virtually around the clock that week attempting to narrow their differences with respect to the Litigation Timetable and Discovery Plan. This Court together with the Canadian Court held a joint hearing at 4:30 p.m. on Wednesday, May 15 with respect to approval of the Litigation Timetable and Discovery Plan. That joint hearing, which the parties were informed had a hard-stop of 5:30 p.m., provided neither the occasion, nor sufficient time, to address the inadequacy of the Joint Objection (which the U.K. Pension Claimants had received less than 24 hours prior). Moreover, the U.K. Pension Claimants had no intention of seeking relief from the May 22 Deadline in the event the Court were to approve the Litigation Timetable and Discovery Plan after the conclusion of the May 15 hearing. The Court entered its order approving the Litigation Timetable and Discovery Plan on Friday, May 17, 2013. [D.I. 10566]

---

3   The Debtors' and Committee's simplistic assertion that the U.K. Pension Claimants "supported the entry of the Litigation Timetable and Discovery Plan without reservation (other than on a narrow unrelated issue)," (Obj. ¶ 7) (emphasis added), takes extreme liberties with the record. The U.K. Pension Claimants have been clear from the outset that, in their view, it is not realistic to litigate the Allocation Dispute, the U.K. Pension Claims, and the EMEA Claims on a schedule that contemplates a January 6, 2014 trial date. (See March 27, 2013 Hr'g Tr. at 67:6-68:6.) Despite that belief, the U.K. Pension Claimants complied with the Courts' direction and negotiated in good faith with the Debtors and other Core Parties to establish more reasonable interim deadlines leading to a January 6, 2014 trial date. In addition, the Debtors' and Committee's characterization of the U.K. Pension Claimants' reservation of rights with respect to the Litigation Timetable and Discovery Plan "on a narrow unrelated issue," is disingenuous. The "narrow unrelated issue" is whether the Debtors should be given a blanket exemption from searching any hard-copy files, as distinguished from electronic files, for documents responsive to discovery requests. Given that the U.K. Pension Claimants were granted access to the Merrill Lextranet database for the first time on May 17 (i.e. after the Litigation Timetable was submitted to the Court), they were plainly in no position to consent to such a broad and arbitrary limitation on discovery.

The U.K. Pension Claimants filed their Motion to Strike and Motion to Shorten Notice on Monday May 20. Contrary to the Debtors' and Committee's assertion, the U.K. Pension Claimants' motion papers made clear that the need for expedited resolution of the Debtors' failure to comply with Rule 7012 was not based solely on the May 22 Deadline, but also the "cascading series of negative consequences for numerous rapidly approaching discovery deadlines," including the identification of witnesses, experts and preparation for depositions and trial. (Mot. to Shorten Notice, ¶ 7; see also Mot. to Strike, ¶¶ 26-27 [D.I. 10598].)

The U.K. Pension Claimants timely served their document requests and interrogatories on the Debtors and Committee on May 22—without seeking any relief from the May 22 Deadline. In doing so, the U.K. Pension Claimants propounded as limited and as reasonable discovery requests as they could under the circumstances. Their ability to do so was greatly curtailed by the Debtors' utter failure to join issue with the particularized allegations in the Amended Claims. Without knowing which of the 325 paragraphs of particularized allegations the Debtors dispute and which, if any, they admit, the U.K. Pension Claimants had no choice but to assume that they need to prove and, therefore, take discovery with respect to, each of the allegations in the Amended Claims. Given the abbreviated schedule on which the parties are proceeding, it is imperative that the parties join issue in their pleadings to narrow the scope of required discovery. To that end, the U.K. Pension Claimants' goal in filing the Motion to Strike was to limit the scope of discovery once the Debtors took a position on which factual allegations they admitted or denied. This concern is not a "contrived" tactic newly created by the U.K. Pension Claimants to "distract" the Debtors. (Obj. ¶¶ 2-3.) Indeed,

the U.K. Pension Claimants first raised this very issue three months ago.  (See March 4, 2013 Submission of the UKPC ¶ 18 ("The Debtors' response to the detailed allegations set forth in the Amended Claims will identify facts in dispute and narrow the scope of discovery necessary to resolve the Amended Claims in a timely, efficient and cost-effective manner."))  [D.I. 9577]  The U.K. Pension Claimants also raised the issue again a few days later at a hearing before this Court.  (Mar. 7, 2013 Hr'g Tr. at 103:24-104:7) ("In the end, we filed a hundred page more definite statement in the form of an adversary complaint.  And under the rules, since you applied 7012, they had 14 days to respond to that, which they didn't do, and they still haven't done.  We certainly think it makes sense, before we start talking about discovery, to know what aspects of that pleading do the Debtors object to.  It makes no sense drafting discovery requests, until we know what material facts are in dispute.").  The Debtors stated that they would respond to the Amended Claims "as fast as [the Court] tell[s] us to move," and did not dispute that they were required to file an answer pursuant to Rule 7012.  (Id. at 109:21-110:5)

### III.    The Urgency For The Relief Sought Continues Despite The Passage Of The May 22 Deadline.

The fact that the May 22 Deadline would have passed even if the Court had granted the Motion to Shorten Notice does not, as the Debtors and Committee suggest, demonstrate that the U.K. Pension Claimants filed the Motion to Shorten Notice to "distract the Objectors from the critical task at hand," and that "[t]here is no other reason under these circumstances for any Motion to Shorten or for any such urgent deadline to be sought."  (Obj.

¶ 3.)[4]  As noted above, and in the U.K. Pension Claimants' motion papers, the problem facing the U.K. Pension Claimants goes far beyond the May 22 Deadline.  Under the Litigation Timetable and Discovery Plan, the Debtors have until July 22 to certify that their document production is substantially complete.  Only two days later, on July 24, the U.K. Pension Claimants are required to identify their anticipated trial witnesses.  On July 26, the U.K. Pension Claimants are required to serve their Rule 30(b)(6) deposition topics, and on July 29, they are required to identify their deposition witnesses.[5]

In light of these fast-approaching expedited deadlines, the U.K. Pension Claimants thoughtfully considered whether to file the Motion to Strike on regular notice or to file the Motion to Shorten Notice.  Proceeding on a regular motion schedule would have required at least 18 days notice before a hearing on the Motion to Strike.  That would have meant that the earliest date on which the Motion to Strike could be heard was June 11, 2013.  Waiting that long for a hearing was problematic.  As is evident from the Debtors' Objection, they will certainly argue on the merits of the Motion to Strike that, in

---

[4]  The Debtors and Committee contend that, because the Litigation Timetable does not provide for the Monitor's response to the U.K. Pension Claimants' Canadian claims until after the deadline for document requests and interrogatories, it is clear that the U.K. Pension Claimants did not need a particularized response to the Amended Claims in order to propound discovery requests by May 22.  (Obj. ¶ 2.)  That argument should be rejected for several independent reasons.  *First*, the prejudice created by the Debtors' failure to serve an appropriate responsive pleading goes far beyond compliance with the May 22 Deadline.  Unless remedied, it will continue to ripple through all of the deadlines in the Litigation Timetable.  *Second*, the rules of procedure in the CCAA are not the same as the Bankruptcy Rules, and the U.K Pension Claimants will not necessarily receive the type of "answer" to their Canadian Claims, which are not identical to the claims asserted against the US Debtors, that they are entitled to receive in this Court.  *Last,* in any event, as with the US Debtors, the U.K. Pension Claimants have been demanding a particularized responsive pleading from the Monitor for months.

[5]  The Debtors' and Committee's argument that they did the U.K. Pension Claimants a favor by serving them with a claims objection that is purportedly "more responsive and illuminating" than an answer would have been (Obj. ¶ 8), does not merit a serious response.  Suffice it to say, what the Debtors and Committee purportedly consider more 'illuminating" to the U.K. Pension Claimants is both self-serving and, more importantly,  irrelevant.  The U.K. Pension Claimants are entitled to receive what Rule 7012 requires: either a motion or an answer.  The Joint Objection is indisputably neither.

the event the Court grants the motion, they should be given an extended period of time in which to respond to the Amended Claims.[6]  Assuming the Court were to decide the motion within seven days of the hearing (i.e., by June 18), and assuming the Court gave the Debtors thirty days to file a responsive pleading, the U.K. Pension Claimants would not receive it until July 18.  That would leave the U.K. Pension Claimants with only <u>six days</u> to identify their trial witnesses, <u>eight days</u> to serve their Rule 30(b)(6) topics and <u>eleven days</u> to identify their deposition witnesses—all after the Debtors would have had the Amended Claims for in excess of <u>ten months</u>.  That would not have been consistent with even a modicum of due process.  Under the circumstances, the U.K. Pension Claimants respectfully submit that their decision to file the Motion to Shorten Notice was taken entirely in good faith and for reasons they believed to be consistent with the goal that these expedited proceedings be conducted in a manner that is both efficient and fair.

## Conclusion

The U.K. Pension Claimants regret that the Court appears to have been under the impression – created by the Objection – that the U.K. Pension Claimants did not intend to "abide" by the Litigation Timetable or were otherwise attempting to "undermine" it. (Obj. ¶¶ 1, 4.)  Particularly egregious in this regard was the Debtors' and Committee's request that the Court send a "stern message" to the U.K. Pension Claimants for what the Debtors' mischaracterized as an "attack" on the Court's "effort to enforce" the Litigation Timetable and Discovery Plan. (Obj. ¶ 1.)  The Debtors and Committee should have known full well, as the U.K. Pension Claimants trust the Court does now, that the U.K. Pension Claimants had no such intentions.  Rather, by their Motion to

---

[6]  In the Objection, the Debtors and Committee take umbrage at the U.K. Pension Claimants' request in the Motion to Strike that they be ordered to serve their Rule 7012 responsive pleading in "a mere five days" (Obj. ¶ 3), despite having had the Amended Claims for over eight months.

Strike, they were seeking an order requiring that the Debtors comply with their obligations under the Bankruptcy Rules, which compliance would materially facilitate the efficient litigation of the U.K. Pension Claimants' claims.

The U.K. Pension Claimants trust that this submission allays any concerns the Court may have had about their conduct and that the Court accepts that no party in these proceedings ought to be permitted to chill reasonable efforts by another party to enforce their rights to fundamental fairness and due process.

Dated: June 4, 2013
      Wilmington, Delaware

BAYARD, P.A.

*/s/ Justin R. Alberto*
Charlene D. Davis (No. 2336)
Justin Alberto (No. 5126)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: cdavis@bayardlaw.com
       jalberto@bayardlaw.com

-and-

WILLKIE FARR & GALLAGHER LLP
Marc Abrams
Brian E. O'Connor
Sameer Advani
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Counsel for the Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund*

*9647620*