# EXHIBIT A

Court File No: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**MOTION RECORD**
**(Protective Order)**
**(returnable June 11, 2013)**

Date: June 5, 2013

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay** (LSUC #: 21152A)
**Jennifer Stam** (LSUC #: 46735J)
Tel: (416) 862-5697
Fax: (416) 862-7661

Lawyers for the Applicants

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON M5H 2S7

**Jay A. Carfagnini** (LSUC#: 22293T)
**Jessica Kimmel** (LSUC#: 32312W)
**Peter Ruby** (LSUC#: 38439P)
**Joseph Pasquariello** (LSUC#: 38390C)
Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

# INDEX

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**INDEX**

| TAB | | PAGE NO. |
|---|---|---|
| 1 | Notice of Motion returnable June 11, 2013 | 1 |
| 2 | Ninety-Fifth Report of the Monitor dated June 5, 2013 | 46 |
| 3 | Draft Order (Protective Order) | 129 |

# TAB 1

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**NOTICE OF MOTION**
**(returnable June 11, 2013)**

Nortel Networks Corporation ("**NNC**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "**Canadian Debtors**") jointly with Ernst & Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors will make a motion to Justice Morawetz of the Commercial List court, on June 11, 2013, 10:00 am, at 393 University Avenue, Toronto, Ontario.

**PROPOSED METHOD OF HEARING**: The motion is to be heard orally.

**THE MOTION IS FOR**:

1. An Order approving the Canadian Debtors' and Monitor's form of Protective Order (as defined below); and

2. Such further relief as may be required in the circumstances and this Honourable Court deems just and equitable.

**THE GROUNDS FOR THE MOTION ARE:**

1. References to "Nortel" herein are references to the global enterprise as a whole;

2. On January 14, 2009, the Applicants were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, (the "**CCAA**") pursuant to an initial order (as subsequently amended and restated, the "**Initial Order**") of this Honourable Court;

3. Pursuant to an Order dated April 13, 2013, this Court approved an allocation protocol and established core parties ("**Core Parties**") who may participate in the trial;

4. Pursuant to an Order dated May 15, 2013, this Court (and the US Court) approved orders establishing a litigation timetable and discovery plan for the purposes of trial;

5. The trial has been set to commence January 6, 2014 and will require the production of documents;

6. In order to protect material that is confidential, it is necessary to put a protective order in place to address the Canadian Debtors' (and other estates') numerous confidentiality concerns including:

   (a) Respecting confidentiality agreements with third parties including post-filing buyers of the businesses and other contract counterparties;

   (b) Potential prejudice to other third party claims still being resolved in one or more of the estates (including, without limitation, tax claims); and

   (c) Compliance with privacy laws in multiple jurisdictions;

7. The Canadian Debtors and the Monitor have worked with the other Core Parties and have largely reached consensus on the terms of a protective order (the "**Protective Order**") other than the following:

(a)     The administrator of the UK pension plan and the pension protection fund (the **"UK Pension Claimants"**) disagree on point relating to language pertaining to the Beddoe Court proceedings in the UK; and

(b)     The Canadian creditors committee (the **"CCC"**) who disagree on a number of points;

8.     The remaining Core Parties agree to the form of Protective Order;

9.     The proposed Protective Order addresses the many confidentiality concerns that the Canadian Debtors, the US Debtors and EMEA Debtors all face (particularly given the Sale Agreements) and represents a practical and largely consensual basis for the treatment of "Confidential and Highly Confidential Discovery Material" in the proceedings;

10.    It provides for specified limitations which are consistent with Canadian legal principles on those documents which may reasonably be designated as Confidential or Highly Confidential and allows for Parties who disagree with that designation to object and seek direction from the Court(s);

11.    The Canadian Debtors and the Monitor believe that the Protective Order represents the most practical and efficient way of moving forward with document production in this compressed discovery time period;

*Miscellaneous*

12.    Such further and other grounds as counsel may advise and this Honourable Court may permit.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

13.    The ninety-fifth report of the Monitor dated June 5, 2013; and

14.    Such further and other evidence as counsel may advise and this Honourable Court may permit.

June 5, 2013

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay** (LSUC #: 21152A)
**Jennifer Stam** (LSUC #: 46735J)
Tel:    (416) 862-5697
Fax:    (416) 862-7661

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini** (LSUC#: 22293T)
**Jessica Kimmel** (LSUC#: 32312W)
**Peter Ruby** (LSUC#: 38439P)
**Joseph Pasquariello** (LSUC#: 38390C)
Tel: 416.979.2211
Fax: 416.979.1234

**TO:    THE MAIN SERVICE LIST**

**AND TO: THE CORE PARTIES SERVICE
LIST**

5

*May 29, 2013*

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**SERVICE LIST**

TO: **NORTON ROSE CANADA LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Catherine Ma

Email: catherine.ma@nortonrose.com

Tel: 416.216.4000
Fax: 416.216.3930

Lawyers for the Applicants

AND TO: **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario M5X 1G5

Derrick Tay
Jennifer Stam
Katie Parent

Email: derrick.tay@gowlings.com
jennifer.stam@gowlings.com
katie.parent@gowlings.com

Tel: 416.862.5697
Fax: 416.862.7661

Lawyers for the Applicants

6

TO: **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, Ontario M5K 1J7

Murray McDonald
Brent Beekenkamp

Email: nortel.monitor@ca.ey.com

Tel: 416.943.3016
Fax: 416.943.3300

AND TO: **GOODMANS LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Fred Myers
Chris Armstrong
Peter Ruby

Email: jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
fmyers@goodmans.ca
carmstrong@goodmans.ca
pruby@goodmans.ca

Tel: 416.597.4107
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND TO: **OSLER HOSKIN AND HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, Ontario M5X 1B8

Lyndon Barnes
Edward Sellers
Betsy Putnam
Adam Hirsh

Email: lbarnes@osler.com
esellers@osler.com
eputnam@osler.com
ahirsh@osler.com

Tel: 416.362.2111
Fax: 416.862.6666

Lawyers for the Boards of Directors of Nortel Networks Corporation and Nortel Networks Limited

AND TO: **FASKEN MARTINEAU DUMOULIN LLP**
66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, Ontario M5K 1N6

Donald E. Milner
Aubrey Kauffman
Jon Levin

Email: dmilner@fasken.com
akauffman@fasken.com
jlevin@fasken.com

Tel: 416.868.3538
Fax: 416.364.7813

Lawyers for Export Development Canada

AND TO: **EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, Ontario K1A 1K3

Jennifer Sullivan

Email: jsullivan@edc.ca

Tel: 613.597.8651
Fax: 613.598.3113

AND TO: **THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, Ontario M5K 1K7

Leanne M. Williams

Email: lwilliams@tgf.ca

Tel: 416.304.1616
Fax: 416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

AND TO: **McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email: john.stringer@mcinnescooper.com
stephen.kingston@mcinnescooper.com

Tel: 902.425.6500
Fax: 902.425.6350

Lawyers for Convergys EMEA Limited

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario M5H 3S1

Jeffrey Carhart

Email: jcarhart@millerthomson.com

Tel: 416.595.8615/8577
Fax: 416.595.8695

Lawyers for Toronto-Dominion Bank

AND TO: **CAW-CANADA**
Legal Department
205 Placer Court
Toronto, Ontario M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email: barry.wadsworth@caw.ca
lewis.gottheil@caw.ca

Tel.: 416.495.3776
Fax: 416.495.3786

Lawyers for all active and retired Nortel employees represented by the CAW-Canada

AND TO: **BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC V7X 1S8

R. Hoops Harrison

Email: hharrison@boughton.ca

Tel: 604.687.6789
Fax: 604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd., in its capacity as duly authorized agent for Holdings 1506 Enterprises Ltd.

8

AND TO: **BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, Ontario M5H 3Y4

Roger Jaipargas

Email: rjaipargas@blgcanada.com
Tel: 416.367.6266
Fax: 416.361.7067

Lawyers for Bell Canada

AND TO: **SISKINDS LLP**
680 Waterloo Street
London, Ontario N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Emilie E. M. Maxwell

Email: ray.leach@siskinds.com
dimitri.lascaris@siskinds.com
emilie.maxwell@siskinds.com

Tel: 519.672.2121
Fax: 519.672.6065

Lawyers for Indiana Electrical Workers Pension Trust Fund IBEW, Laborers Local 100 and 397 Pension Fund, and Bruce William Lapare

AND TO: **KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario M5H 3R3

Mark Zigler
Susan Philpott
Ari Kaplan
Barbara Walancik

Email: mzigler@kmlaw.ca
Tel: 416.595.2090
Fax: 416.204.2877

Email: sphilpott@kmlaw.ca
Tel: 416.595.2104
Fax: 416.204.2882

Email: akaplan@kmlaw.ca
Tel: 416.595.2087
Fax: 416.204.2875

Email: bwalancik@kmlaw.ca
Tel: 416.542.6288
Fax: 416.204.2906

Lawyers for the Former Employees of Nortel

AND TO: **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan

Email: zychk@bennettjones.com
Tel: 416.777.5738
Fax: 416.863.1716

Email: orzyr@bennettjones.com
Tel: 416.777.5737
Fax: 416.863.1716

Email: finlaysong@bennettjones.com
Tel: 416.777.5762
Fax: 416.863.1716

Email: swanr@bennettjones.com
Tel: 416.777.7479
Fax: 416.863.1716

Canadian Lawyers for The Informal Nortel Noteholder Group

9

AND TO: **PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, Ontario M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Karen Jones
Tina Lie
Michelle Jackson

Email: ken.rosenberg@paliareroland.com
Tel: 416.646.4304
Fax: 416.646.4301

Email: max.starnino@paliareroland.com
Tel: 416.646.7431
Fax: 416.646.4301

Email: lily.harmer@paliareroland.com
Tel: 416.646.4326
Fax: 416.646.4301

Email: karen.jones@paliareroland.com
Tel: 416.646.4339
Fax: 416.646.4301

Email: tina.lie@paliareroland.com
Tel: 416.646.4332
Fax: 416.646.4301

Email: michelle.jackson@paliareroland.com
Tel: 416.646.7470
Fax: 416.646.4301

Lawyers for the Superintendent of Financial Services as Administrator of the Pension Benefits Guarantee Fund

AND TO: **KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario M5H 3R3

Mark Zigler
Susan Philpott
Ari Kaplan
Barbara Walancik

Email: mzigler@kmlaw.ca
Tel: 416.595.2090
Fax: 416.204.2877

Email: sphilpott@kmlaw.ca
Tel: 416.595.2104
Fax: 416.204.2882

Email: akaplan@kmlaw.ca
Tel: 416.595.2087
Fax: 416.204.2875

Email: bwalancik@kmlaw.ca
Tel: 416.542.6288
Fax: 416.204.2906

Lawyers for the LTD Beneficiaries

10

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario M5H 3S1

Jeffrey Carhart

Email: jcarhart@millerthomson.com
Tel: 416.595.8615
Fax: 416.595.8695

Lawyers for LG Electronics Inc.

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario M5H 3S1

Jeffrey Carhart

Email: jcarhart@millerthomson.com
Tel: 416.595.8615
Fax: 416.595.8695

Canadian Lawyers for Telmar Network Technology, Inc. and Precision Communication Services, Inc.

AND TO: **CHAITONS LLP**
Barristers & Solicitors
5000 Yonge Street, 10th Floor
Toronto, Ontario M2N 7E9

Harvey G. Chaiton

Email: harvey@chaitons.com
Tel: 416.218.1129
Fax: 416.218.1849

Lawyers for IBM Canada Limited

AND TO: **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario M5X 1G5

E. Patrick Shea

Email: patrick.shea@gowlings.com

Tel: 416.369.7399
Fax: 416.862.7661

Lawyers for Westcon Group

AND TO: **FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, Ontario M5X 1B2

R. Shayne Kukulowicz
Michael J. Wunder
Ryan Jacobs

Email: Shayne.kukulowicz@fmc-law.com
Michael.wunder@fmc-law.com
ryan.jacobs@fmc-law.com

Tel: 416.863.4511
Fax: 416.863.4592

Canadian Lawyers for the Official Committee of Unsecured Creditors

AND TO: **GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, Ontario M5H 3Y2

Jonathan Wigley

Email: jwigley@gardiner-roberts.com
Tel: 416.865.6655
Fax: 416.865.6636

Lawyers for Andrew, LLC

AND TO: **AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Harry Fogul
Peter K. Czegledy

Email: hfogul@airdberlis.com
Tel: 416.865.7773
Fax: 416.863.1515

Email: pczegledy@airdberlis.com
Tel: 416.865.7749
Fax: 416.863.1515

Lawyers for Microsoft Corporation

AND TO: **MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email: rslattery@mindengross.com
dullmann@mindengross.com
Tel: 416.369.4149
Fax: 416.864.9223

Lawyers for Verizon Communications Inc.

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Steven L. Graff
Ian E. Aversa

Email: sgraff@airdberlis.com
Tel: 416.865.7726
Fax: 416.863.1515

Email: iaversa@airdberlis.com
Tel: 416.865.3082
Fax: 416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email: renglish@airdberlis.com
smitra@airdberlis.com

Tel: 416.863.1500
Fax: 416.863.1515

Lawyers for Tata Consultancy Services Limited and Tata America International Corporation

AND TO: **VERINT SYSTEMS, INC.**
800 North Point Parkway
Alpharetta, Georgia 30005

Paige Honeycutt
Assistant General Counsel

Email: paige.honeycutt@verint.com
Tel: 770.754.1900
Fax: 678.319.0732

Lawyers for Verint Americas Inc. and Verint Systems, Inc.

AND TO: **ALEXANDER HOLBURN BEAUDIN & LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia V7Y 1B8

Sharon M. Urquhart

Email: surquhart@ahbl.ca
Tel: 604.484.1757
Fax: 604.484.1957

Lawyers for Algo Communication Products Ltd.

12

AND TO: **McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario M5J 2T3

Andrew F. Kent

Email: andrew.kent@mcmillan.ca
Tel: 416.865.7160
Fax: 416.865.7048

Lawyers for Royal Bank of Canada

AND TO: **DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, Ontario M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email: bdarlington@davis.ca
Tel: 416.365.3529
Fax: 416.369.5210

Email: jdavissydor@davis.ca
Tel: 416.941.5397
Fax: 416.365.7886

Lawyers for Brookfield LePage Johnson Controls Facility Management Services

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Steven L. Graff
Ian E. Aversa

Email: sgraff@airdberlis.com
Tel: 416.865.7726
Fax: 416.863.1515

Email: iaversa@airdberlis.com
Tel: 416.865.3082
Fax: 416.863.1515

Lawyers for Perot Systems Corporation

AND TO: **McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario M5J 2T3

Brett Harrison
Jeffrey Levine

Email: brett.harrison@mcmillan.ca
Tel : 416.865.7932
Fax : 416.865.7048

Email: jeffrey.levine@mcmillan.ca
Tel: 416.865.7791
Fax: 416.865.7048

Lawyers for Citibank

AND TO: **CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario M5H 3C2

Deborah S. Grieve

Email: dgrieve@casselsbrock.com
Tel: 416.860.5219
Fax: 416.350.6923

Lawyers for Alvarion Ltd.

AND TO: **GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3Y2

Jonathan Wigley

Email: jwigley@gardiner-roberts.com
Tel: 416.865.6655
Fax: 416.865.6636

Lawyers for Amphenol Corporation

\13

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Sanjeev P.R. Mitra

Email: smitra@airdberlis.com

Tel: 416.863.1500
Fax: 416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

AND TO: **MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario K2P 0A2

Paul K. Lepsoe

Email: pklepsoe@mcfarlanelaw.com

Tel: 613.233.2679
Fax: 613.233.3774

Lawyers for Iron Mountain Canada Corporation and Iron Mountain Information Management, Inc.

AND TO: **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario M5K 1E6

Junior Sirivar
Geoff R. Hall

Email: jsirivar@mccarthy.ca
Tel: 416.601.7750
Fax: 416.868.0673

Email: ghall@mccarthy.ca
Tel: 416.601.7856
Fax: 416.868.0673

Lawyers for Frank Andrew Dunn

AND TO: **McMILLAN LLP**
1900, 736-6th Avenue S.W.
Calgary, Alberta T2P 3T7

Adam Maerov

Email: adam.maerov@mcmillan.ca
Tel: 403.215.2752
Fax: 403.531.4720

Lawyers for Right Management Inc.

AND TO: **BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario M5J 2T3

Chris Besant
Lydia Salvi

Email: chris.besant@bakernet.com

Tel: 416.865.2318
Fax: 416.863.6275

Email: lydia.salvi@bakernet.com

Tel: 416.865.6944
Fax: 416.863.6275

Lawyers for Jabil Circuit Inc.

AND TO: **CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario M5H 3C2

E. Bruce Leonard
David S. Ward
Bill Burden
Lara Jackson

Email: bleonard@casselsbrock.com
dward@casselsbrock.com
bburden@casselsbrock.com
ljackson@casselsbrock.com

Tel: 416.860.6455
Fax: 416.640.3054

Co-Counsel for the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited

14

AND TO: **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email: ryanbellr@bennettjones.com
laugesenm@bennettjones.com

Tel: 416.863.1200
Fax: 416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and Tel-e Connect Systems (Toronto) Ltd.

AND TO: **IRVING MITCHELL KALICHMAN LLP**
Place Alexis Nihon, Tour 2
3500 Boulevard De Maisonneuve Ouest
Bureau 1400
Montreal, Quebec H3Z 3C1

Kurt A. Johnson

Email : kjohnson@imk.ca
Tel: 514.935.5755
Fax : 514.935.2999

Lawyers for GFI INC., a division of Thomas & Betts Manufacturing Inc.

AND TO: **SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec H9S 2A5

Dan Goldstein
Marco Gaggino

Email: dgoldstein@schneidergaggino.com
mgaggino@schneidergaggino.com

Tel: 514.631.8787
Fax: 514.631.0220

Lawyers for the Teamsters Quebec Local 1999

AND TO: **NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham
Ainslie Benedict

Email: janice.payne@nelligan.ca
steven.levitt@nelligan.ca
christopher.rootham@nelligan.ca
ainslie.benedict@nelligan.ca

Tel: 613.231.8245
Fax: 613.788.3655

Lawyers for the Steering Committee of Nortel Canadian Continuing Employees – Post CCAA as at January 14, 2009

15

AND TO: **AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Raffy Lorentzian

Email: raffy.lorentzian@ntscorp.com
Tel: 714.998.4351
Fax: 714.998.7142

Lawyers for AETL Testing, Inc

AND TO: **EURODATA**
2574 Sheffield Road
Ottawa, Ontario K1B 3V7

Nanci Shore

Email: nanci@eurodata.ca
Tel: 613.745.0921
Fax: 613.745.1172

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON M5J 2T9

Steven L. Graff
Ian E. Aversa

Email: sgraff@airdberlis.com
Tel: 416.865.7726
Fax: 416.863.1515

Email: iaversa@airdberlis.com
Tel: 416.865.3082
Fax: 416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND TO: **MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario M5H 4G2

Timothy R. Dunn

Email: tdunn@mindengross.com
Tel: 416.369.4335
Fax: 416.864.9223

Lawyers for 2748355 Canada Inc.

AND TO: **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON M5X 1G5

David F.W. Cohen

Email: david.cohen@gowlings.com

Tel: 416.369.6667
Fax: 416.862.7661

Lawyers for General Electric Canada Equipment Finance G.P. and GE Capital Canada Leasing Services Inc.

AND TO: **BALDWIN LAW PROFESSIONAL CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email: ibrady@baldwinlaw.ca
Tel: 613.771.9991
Fax: 613.771.9998

Lawyers for Sydney Street Properties Corp.

16

AND TO: **DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email: bdarlington@davis.ca
Tel: 416.365.3529
Fax: 416.369.5210

Email: jdavissydor@davis.ca
Tel: 416.941.5397
Fax: 416.365.7886

Lawyers for Computershare Trust Company of Canada

AND TO: **LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail: tosullivan@counsel-toronto.com
Tel: 416.598.1744
Fax: 416.598.3730

Email: slaubman@counsel-toronto.com
Tel: 416.598.1744
Fax: 416.598.3730

Lawyers for William A. Owens

AND TO: **SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel: 416.214.5213
Fax: 416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel : 416.214.5206
Fax : 416.214.5400

Lawyers for The Recently Severed Canadian Nortel Employees Committee

AND TO: **SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel: 416.214.5213
Fax: 416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel : 416.214.5206
Fax : 416.214.5400

Co-Counsel for the Steering Committee of Nortel Canadian Continuing Employees – Post CCAA as at January 14, 2009

17

AND TO: **NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Raffy Lorentzian

Email: raffy.lorentzian@ntscorp.com
Tel: 714.998.4351

AND TO: **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON M5J 2T9

Steven L. Graff
Ian E. Aversa

Email: sgraff@airdberlis.com
Tel: 416.865.7726
Fax: 416.863.1515

Email: iaversa@airdberlis.com
Tel: 416.865.3082
Fax: 416.863.1515

Lawyers for the Current and Former Employees of Nortel Networks Inc. who are or were Participants in the Long-Term Investment Plan Sponsored by Nortel Networks Inc.

AND TO: **DAVIES WARD PHILLIPS & VINEBERG LLP**
44th Floor
1 First Canadian Place
Toronto, ON M5X 1B1

Robin B. Schwill
Sean Campbell
James Doris
Louis Sarabia

Email: rschwill@dwpv.com
Email: scampbell@dwpv.com
Email: jdoris@dwpv.com
Email: lsarabia@dwpv.com

Tel: 416.863.0900
Fax: 416.863.0871

Counsel to the Joint Administrators of Nortel Networks UK Limited

AND TO: **LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario M5H 1J8

Matthew P. Gottlieb
Tracy Wynne
Paul Michell

Email: mgottlieb@counsel-toronto.com
Tel: 416.644.5353
Fax: 416.598.3730

Email: twynne@counsel-toronto.com
Tel: 416.598.7835
Fax: 416.598.3730

Email: pmichell@counsel-toronto.com
Tel: 416.644.5359
Fax: 416.598.3730

Counsel to the Joint Administrators of Nortel Networks UK Limited

18

AND TO: **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario, M5J 2T3

Sheryl E. Seigel

Email: sheryl.seigel@mcmillan.ca
Tel: 416.307.4063
Fax: 416.365.1719

Lawyers for The Bank of New York Mellon

AND TO: **DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario M5X 1K6

Diane Winters

Email: dwinters@justice.gc.ca
Tel: 416.973.3172
Fax: 416.973.0810

AND TO: **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario M5L 1A9

Susan M. Grundy
Marc Flynn

Email: susan.grundy@blakes.com
Tel: 416.863.2572
Fax: 416.863.2653

Email: marc.flynn@blakes.com
Tel: 416.863.2685
Fax: 416.863.2653

Lawyers for Telefonaktiebolaget L M Ericsson (publ)

AND TO: **SIMMONS, DA SILVA & SINTON LLP**
Suite 200, 201 County Court Blvd.
Brampton, Ontario
L6W 4L2

Puneet S. Kohli
Email: puneet@sdslawfirm.com

Tel: 905.861.2819

Lawyers for Wipro Limited

AND TO: **McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario M5K 1E6

Heather Meredith

Email: hmeredith@mccarthy.ca
Tel: 416.601.8342
Fax: 416.868.0673

Lawyers for Hitachi Communications Technologies, Ltd.

AND TO: **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario M5K 1E6

Kevin P. McElcheran

Email: kmcelcheran@mccarthy.ca
Tel: 416.601.7730
Fax: 416.868.0673

Lawyers for Avaya Inc.

\9

AND TO: **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email: pamela.huff@blakes.com
Tel: 416.863.2958
Fax: 416.863.2653

Email: milly.chow@blakes.com
Tel: 416.863.2594
Fax: 416.863.2653

Email: hugh.desbrisay@blakes.com
Tel: 416.863.2426
Fax: 416.863.2653

Email: craig.thorburn@blakes.com
Tel: 416.863.2965
Fax: 416.863.2653

Lawyers for MatlinPatterson Global Advisers LLC, MatlinPatterson Global Opportunities Partners III L.P. and MatlinPatterson Opportunities Partners (Cayman) III L.P.

AND TO: **FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario M5J 2Z9

Jeffrey K. Spiegelman

Email: jspiegelman@foglers.com
Tel: 416.864.9700
Fax: 416.941.8852

Vern W. DaRe

Email: vdare@foglers.com
Tel: 416-941-8842
Fax: 416-941-8852

Lawyers for Belden (Canada) Inc.

AND TO: **VINCENT DAGENAIS GIBSON LLP/s.r.l**
Barristers and Solicitors
600-325 Dalhousie Street
Ottawa, ON K1N 7G2

Thomas Wallis

E-mail: thomas.wallis@vdg.ca
Tel: 613.241.2701
Fax: 613.241.2599

Lawyers for La Regie des Rentes du Quebec

AND TO: **STIKEMAN ELLIOTT LLP**
445 Park Avenue, 7th Floor
New York, NY 10022

Ron Ferguson

Email: rferguson@stikeman.com
Tel: 212.845.7477
Fax: 212.371.7087

Lawyers for GENBAND Inc.

AND TO: **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario M5K 1E6

Barbara J. Boake
James D. Gage
Elder C. Marques

E-mail: bboake@mccarthy.ca
Tel: 416.601.7557
Fax: 416.868.0673

Email: jgage@mccarthy.ca
Tel: 416.601.7539
Fax: 416.686.0673

Email: emarques@mccarthy.ca
Tel: 416.601.7822
Fax: 416.686.0673

Lawyers for Morneau Shepell Limited

AND TO: **BLAKE, CASSELS & GRAYDON**
Box 25, Commerce Court West
199 Bay Street, Suite 2800
Toronto, Ontario M5L 1A9

Pamela J. Huff
J. Jeremy Forgie

Email: pamela.huff@blakes.com
Tel: 416.863.2958
Fax: 416.863.2653

Email: jeremy.forgie@blakes.com
Tel: 416.863.3888
Fax: 416.863.2653

Lawyers for The Northern Trust Company, Canada

AND TO: **CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer
Jeremy Opolsky

Email: jbromley@cgsh.com
lschweitzer@cgsh.com
jopolsky@cgsh.com

Tel: 212.225.2000
Fax: 212.225.3999

Lawyers for Nortel Networks Inc.

AND TO: **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, ON M5J 2T3

D. Brent McPherson

Email: brent.mcpherson@mcmillan.ca
Tel: 416.307.4103
Fax: 416.304.3769

Lawyers for Wells Fargo Bank, National Association, as successor by merger to Wachovia Bank, N.A., in its capacity as Servicer for the Nortel Networks Pass-Through Trust, Series 1-1

AND TO: **DAVID STEER**
10 Cypress Court
Nepean, ON K2H 8Z8

E-mail: davidsteer127@sympatico.ca

AND TO: **ROCHON GENOVA LLP**
121 Richmond Street West
Suite 900
Toronto, ON M5H 2K1

Joel P. Rochon

Email: jrochon@rochongenova.com
Tel: 416.363.1867
Fax: 416.363.0263

Lawyers for the Opposing LTD Employees

21

AND TO: **TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray
Adam Slavens

Email: tdemarinis@torys.com
sbomhof@torys.com
sblock@torys.com
agray@torys.com
aslavens@torys.com

Tel: 416.865.0040
Fax: 416.865.8730

Lawyers for Nortel Networks Inc.

AND TO: **FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario M5J 2Z9

Jeffrey K. Spiegelman

Email: jspiegelman@foglers.com

Tel: 416.864.9700
Fax: 416.941.8852

Lawyers for Apex Logistics Inc.

AND TO: **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Andrew J. F. Kent
Wael Rostom

Email: andrew.kent@mcmillan.ca
Tel : 416.865.7160
Fax : 416.865.7048

Email: wael.rostom@mcmillan.ca
Tel : 416.865.7790
Fax : 416.865.7048

Lawyers for the Norpax LLC and RPX Corporation, in its capacity as Managing Member of Norpax LLC

AND TO: **TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email: hvw@tmlegal.ca
rbm@tmlegal.ca

Tel: 613.542.1889
Fax: 613.542.8202

Lawyers for The Corporation of the City of Belleville

22

AND TO: **TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email: hvw@tmlegal.ca
rbm@tmlegal.ca

Tel: 613.542.1889
Fax: 613.542.8202

Lawyers for Algonquin and Lakeshore Catholic District School Board

AND TO: **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario M5L 1A9

Steven J. Weisz
Jenna Willis

Email: steven.weisz@blakes.com
Tel: 416.863.2616
Fax: 416.863.2653

Email: jenna.willis@blakes.com
Tel: 416.863.3348
Fax: 416.863.2653

Lawyers for the American Registry for Internet Numbers

AND TO: **STIKEMAN ELLIOTT LLP**
Barristers & Solicitors
5300 Commerce Court West
199 Bay Street
Toronto, Ontario M5L 1B9

Dan Murdoch

Email: dmurdoch@stikeman.com
Tel: 416.869.5529
Fax: 416.947.0866

Lawyers for Apple Inc.

AND TO: **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Brett Harrison

Email: brett.harrison@mcmillan.ca
Tel : 416.865.7932
Fax : 416.865.7048

Lawyers for Rogers Communications Inc.

AND TO: **ATTORNEY GENERAL FOR ONTARIO**
Crown Law Office – Civil
720 Bay Street, 8th Floor
Toronto, Ontario M7A 2S9

Leonard Marsello
William MacLarkey
Mario Faieta

Email: leonard.marsello@ontario.ca
Tel: 416.326.4939
Fax: 416.326.4181

Email: William.MacLarkey@ontario.ca
Tel: 416.326.4082
Fax: 416.326.4181

Email: mario.faieta@ontario.ca
Tel: 416.314.6482
Fax: 416.314.6579

Lawyers for Her Majesty the Queen in right of Ontario, as represented by the Ministry of the Environment

AND TO: **DAVIS LLP**
1 First Canadian Place, Suite 6000
100 King Street West
P.O. Box 367,
Toronto, Ontario M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email: bdarlington@davis.ca
Tel: 416.365.3529
Fax: 416.369.5210

Email: jdavissydor@davis.ca
Tel: 416.941.5397
Fax: 416.365.7886

Lawyers for Lenovo (Singapore) Pte. Ltd.

AND TO: **CHAITONS LLP**
Barristers & Solicitors
5000 Yonge Street, 10th Floor
Toronto, Ontario M2N 7E9

Harvey G. Chaiton
Doug Bourassa

Email: harvey@chaitons.com
Tel : 416.218.1129
Fax : 416.218.1849

Email: doug@chaitons.com
Tel : 416.218.1145
Fax : 416.218.1845

Lawyers for SMNP Research International, Inc. and SMNP Research, Inc.

AND TO: **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario M6H 3S1

Craig A. Mills

Email: cmills@millerthomson.com
Tel : 416.595.8596
Fax : 416.595.8695

Lawyers for 2058756 Ontario Limited

24

AND TO: **STIKEMAN ELLIOTT LLP**
Barristers & Solicitors
5300 Commerce Court West,
199 Bay Street
Toronto, Ontario M5L 1B9

Ashley John Taylor
Kathryn Esaw

Email: ataylor@stikeman.com
Tel : 416.869.5236
Fax : 416.947.0866

Email: kesaw@stikeman.com
Tel: 416.869.6820
Fax : 416.947.0866

Lawyers for Sanmina SCI Corporation

AND TO: **STIKEMAN ELLIOTT LLP**
Barristers & Solicitors
5300 Commerce Court West,
199 Bay Street
Toronto, Ontario M5L 1B9

Alan D'Silva
Ellen Snow

Email: adsilva@stikeman.com
Tel: 416.869.5204
Fax: 416.947.0866

Email: esnow@stikeman.com
Tel: 416.869.5286
Fax: 416.947.0866

Counsel to Chartis Insurance Company of Canada Inc.

AND TO: **KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10022-2585

Craig A. Barbarosh
Email: craig.barbarosh@kattenlaw.com
Tel: 212.940.8665
Fax: 212.940.8776

David A. Crichlow
Email: david.crichlow@kattenlaw.com
Tel: 212.940.8941
Fax: 212.940.8776

Karen B. Dine
Email: Karen.dine@kattenlaw.com
Tel: 212.940.8772
Fax: 212.940.8776

U.S. Counsel to Wilmington Trust

AND TO: **CONSTELLATION ENERGY GROUP, INC.**
100 Constellation Way
Suite 600
Baltimore, MD 21202

David Quagliana
Manager, Credit Workout

Email: david.quagliana@constellation.com
Tel: 410.470.2058

AND TO: **HEENAN BLAIKIE LLP**
Bay Adelaide Centre
333 Bay Street, Suite 2900
P.O. Box 2900
Toronto, Ontario M5H 2T4

John Salmas
Kenneth Kraft
Sara-Ann Van Allen

Email: jsalmas@heenan.ca
Tel: 416.360.3570
Fax: 416.360.8425

Email: kkraft@heenan.ca
Tel: 416.643.6822
Fax: 416.360.8425

Email: svanallen@heenan.ca
Tel: 416.360.3570
Fax: 416.360.8425

Canadian Lawyers for Wilmington Trust, National Association

AND TO: **BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
40 King Street West
Toronto, ON M5H 3Y4

Edmond F. B. Lamek
James Szumski

Email: elamek@blg.com
Tel: 416.367.6311
Fax: 416.361.2436

Email: jszumski@blg.com
Tel: 416.367.6310
Fax: 416.682.2811

Lawyers for Law Debenture Trust Company of New York

AND TO: **PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, NY 10036

Daniel A. Lowenthal

Email: dalowenthal@pbwt.com
Tel: 212.336.2720
Fax: 212.336.1253

U.S. Counsel for Law Debenture Trust Company of New York

AND TO: **THORNTON GROUT FINNIGAN LLP**
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

Michael Barrack
D.J. Miller
Rebecca Lewis
Andrea McEwan

Email: mbarrack@tgf.ca
Tel: 416.304.1109
Fax: 416.304.1313

Email: djmiller@tgf.ca
Tel: 416.304.0559
Fax: 416.304.1313

Email: rlewis@tgf.ca
Tel: 416.304.0603
Fax: 416.304.1313

Email: amcewan@tgf.ca
Tel: 416.304.0596
Fax: 416.304.1313

Co-Counsel to the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited

26

**COURTESY COPIES:**

AND TO: **LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email: sbrown@lrlaw.com

Tel: 602.262.5321
Fax: 602.734.3866

Lawyers for The Prudential Insurance Company of America

AND TO: **CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail: sreisman@curtis.com
jdrew@curtis.com

Tel: 212.696.6000
Fax: 212-697-1559

Lawyers for Flextronics International

AND TO: **AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036

Fred S. Hodara

Email: fhodara@akingump.com

Tel: 212.872.1000
Fax: 212.872.1002

U.S. Lawyers for the Official Committee of Unsecured Creditors

AND TO: **MILBANK, TWEED, HADLEY McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005

Thomas R. Kreller
Jennifer P. Harris
Albert A. Pisa

Email: TKreller@milbank.com
Tel: 213.892.4463
Fax: 213.629.5063

Email: JHarris@milbank.com
Tel: 212.530.5475
Fax: 212.530.5219

Email: APisa@milbank.com
Tel: 212.530.5319
Fax: 212.530.5219

U.S. Lawyers for The Informal Nortel Noteholder Group

27

AND TO: **VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York 10019

Michael L. Schein

Email: mschein@vedderprice.com

Tel: 212.407.6920
Fax: 212.407.7799

U.S. Lawyers for Telmar Network Technology, Inc. and Precision Communication Services, Inc.

AND TO: **LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email: michael.riela@lw.com

Tel : 212.906.1373
Fax : 212.751.4864

U.S. Lawyers for The Bank of New York Mellon

AND TO: **BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois 60601

Eric S. Prezant

Email: eric.prezant@bryancave.com
Tel: 312.602.5033
Fax: 312.602.5050

U.S. Lawyers for Tellabs, Inc.

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**CORE PARTIES SERVICE LIST**
**(Allocation Litigation)**

**Updated as of May 30, 2013**

**CANADIAN DEBTORS**

TO: **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario M5X 1G5

Derrick Tay
Jennifer Stam

Email: derrick.tay@gowlings.com
jennifer.stam@gowlings.com

Tel: 416.862.5697
Fax: 416.862.7661

Lawyers for the Applicants

AND TO: **GOODMANS LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Ben Zarnett
Fred Myers
Peter Ruby
Jessica Kimmel
Chris Armstrong

Email: jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
bzarnett@goodmans.ca
fmyers@goodmans.ca
pruby@goodmans.ca
jkimmel@goodmans.ca
carmstrong@goodmans.ca

Tel: 416.597.4107
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND TO: **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, Ontario M5K 1J7

Murray McDonald
Brent Beekenkamp

Email: nortel.monitor@ca.ey.com

Tel: 416.943.3016
Fax: 416.943.3300

30

AND TO: **ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020

Ken Coleman
Paul Keller
Daniel Guyder
Laura Hall
Joseph Badtke-Berkow
Jonathan Cho
Nicolette Ward

Email: ken.coleman@allenovery.com
Tel: 212.610.6434
Fax: 212.610.6399

Email: paul.keller@allenovery.com
Tel: 212.610.6414
Fax: 212.610.6399

Email: daniel.guyder@allenovery.com
Tel: 212.756.1132
Fax: 212.610.6399

Email: laura.hall@allenovery.com
Tel: 212.756.1171
Fax: 212.610.6399

Email: Joseph.Badtke-Berkow@AllenOvery.com
Tel: 212.610.6417
Fax: 212.610.6399

Email: jonathan.cho@allenovery.com
Tel: 212.756.1118
Fax: 212.610.6399

Email: Nicolette.ward@allenovery.com
Tel: 212.610.6412
Fax: 212.610.6399

U.S. Lawyers for the Canadian Debtors

AND TO: **BUCHANAN INGERSOLL & ROONEY**
1105 North Market Street,
Suite 1900
Wilmington, DE 19801-1054

Kathleen A. Murphy
Mary F. Caloway

Email: Kathleen.murphy@bipc.com
Tel: 302.552.4214
Fax: 302.552.4295

Email: mary.caloway@bipc.com
Tel: 302.552.4209
Fax: 302.552.4295

Local U.S. Lawyers for the Canadian Debtors

31

**U.S. DEBTORS**

AND TO: **TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray
Adam Slavens

Email: tdemarinis@torys.com
sbomhof@torys.com
sblock@torys.com
agray@torys.com
aslavens@torys.com

Tel: 416.865.0040
Fax: 416.865.8730

Canadian Lawyers for Nortel Networks Inc.

AND TO: **CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer
Howard Zelbo
Jeffrey Rosenthal
Darryl Stein
Marla Decker
Lauren Peacock
Jacqueline Moessner
Neil Forrest
Dan Queen

Email: jbromley@cgsh.com
lschweitzer@cgsh.com
hzelbo@cgsh.com
jrosenthal@cgsh.com
dstein@cgsh.com
mdecker@cgsh.com
lpeacock@cgsh.com
jmoessner@cgsh.com
nforrest@cgsh.com
dqueen@cgsh.com

Tel: 212.225.2000
Fax: 212.225.3999

U.S. Lawyers for Nortel Networks Inc.

AND TO: **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347

Derek Abbott
Annie Cordo

Email: dabbott@mnat.com
Tel: 302.351.9357
Fax: 302.425.4664

Email: acordo@mnat.com
Tel: 302.351.9459
Fax: 302.225.2559

Local U.S. Lawyers for the U.S. Debtors

32

**EMEA DEBTORS**

AND TO: **DAVIES WARD PHILLIPS & VINEBERG LLP**
44th Floor
1 First Canadian Place
Toronto, ON M5X 1B1

Robin B. Schwill
Sean Campbell
James Doris
Louis Sarabia

Email: rschwill@dwpv.com
Email: scampbell@dwpv.com
Email: jdoris@dwpv.com
Email: lsarabia@dwpv.com

Tel: 416.863.0900
Fax: 416.863.0871

Co-Counsel to the Joint Administrators of Nortel Networks UK Limited

AND TO: **LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario M5H 1J8

Matthew P. Gottlieb
Tracy Wynne
Paul Michell

Email: mgottlieb@counsel-toronto.com
Tel: 416.644.5353
Fax: 416.598.3730

Email: twynne@counsel-toronto.com
Tel: 416.598.7835
Fax: 416.598.3730

Email: pmichell@counsel-toronto.com
Tel: 416.644.5359
Fax: 416.598.3730

Co-Counsel to the Joint Administrators of Nortel Networks UK Limited

AND TO: **HUGHES HUBBARD & REED**
One Battery Park Plaza
New York, NY 10004-1482

Derek Adler
Neil Oxford
Fara Tabatabai
Charles Huberty

Email: adler@hugheshubbard.com
Tel: 212.837.6086
Fax: 212.422.4726

Email: oxford@hugheshubbard.com
Tel: 212.837.6843
Fax: 212.422.4726

Email: tabataba@hugheshubbard.com
Tel: 212.837.6296
Fax: 212.299.6269

Email: huberty@hugheshubbard.com
Tel: 212.837.6045
Fax: 212.299.6045

U.S. Lawyers the Joint Administrators of Nortel Networks UK Limited

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801

Ed Harron
John Dorsey

Email: eharron@ycst.com
Tel: 302.571.6703
Fax: 302.576.3298

Email: jdorsey@ycst.com
Tel: 302.571.6712
Fax: 302.576.3401

Local U.S. Lawyers for the Joint Administrators of Nortel Networks UK Limited

**CANADIAN CREDITORS COMMITTEE**

AND TO: **KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario M5H 3R3

Mark Zigler
Susan Philpott
Ari Kaplan
Barbara Walancik

Email: mzigler@kmlaw.ca
Tel: 416.595.2090
Fax: 416.204.2877

Email: sphilpott@kmlaw.ca
Tel: 416.595.2104
Fax: 416.204.2882

Email: akaplan@kmlaw.ca
Tel: 416.595.2087
Fax: 416.204.2875

Email: bwalancik@kmlaw.ca
Tel: 416.542.6288
Fax: 416.204.2906

Lawyers for the Former Employees of Nortel and LTD Beneficiaries

AND TO: **PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, Ontario M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Karen Jones
Tina Lie
Michelle Jackson

Email: ken.rosenberg@paliareroland.com
Tel: 416.646.4304
Fax: 416.646.4301

Email: max.starnino@paliareroland.com
Tel: 416.646.7431
Fax: 416.646.4301

Email: lily.harmer@paliareroland.com
Tel: 416.646.4326
Fax: 416.646.4301

Email: karen.jones@paliareroland.com
Tel: 416.646.4339
Fax: 416.646.4301

Email: tina.lie@paliareroland.com
Tel: 416.646.4332
Fax: 416.646.4301

Email: michelle.jackson@paliareroland.com
Tel: 416.646.7470
Fax: 416.646.4301

Lawyers for the Superintendent of Financial Services as Administrator of the Pension Benefits Guarantee Fund

34

AND TO: **CAW-CANADA**
Legal Department
205 Placer Court
Toronto, Ontario M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email: barry.wadsworth@caw.ca
lewis.gottheil@caw.ca

Tel.: 416.495.3776
Fax: 416.495.3786

Lawyers for all active and retired Nortel employees represented by the CAW-Canada

AND TO: **SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel: 416.214.5213
Fax: 416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel : 416.214.5206
Fax : 416.214.5400

Lawyers for The Recently Severed Canadian Nortel Employees Committee

AND TO: **NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham
Ainslie Benedict

Email: janice.payne@nelligan.ca
steven.levitt@nelligan.ca
christopher.rootham@nelligan.ca
ainslie.benedict@nelligan.ca

Tel: 613.231.8245
Fax: 613.788.3655

Lawyers for the Steering Committee of Nortel Canadian Continuing Employees – Post CCAA as at January 14, 2009

AND TO: **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario M5K 1E6

Barbara J. Boake
James D. Gage
Elder C. Marques
Paul Steep
Byron Shaw

E-mail: bboake@mccarthy.ca
Tel: 416.601.7557
Fax: 416.868.0673

Email: jgage@mccarthy.ca
Tel: 416.601.7539
Fax: 416.686.0673

Email: emarques@mccarthy.ca
Tel: 416.601.7822
Fax: 416.686.0673

Email: psteep@mccarthy.ca
Tel: 416.601.7998
Fax: 416.686.0673

Email: bdshaw@mccarthy.ca
Tel: 416.601.8256
Fax: 416.686.0673

Lawyers for Morneau Shepell Limited

AND TO: **DLA PIPER**
919 North Market Street
Suite 1500
Wilmington, Delaware 19801

Selinda A. Melnik
Richard Hans
Timothy Hoeffner
Farah Lisa Whitley-Sebti

Email: selinda.melnik@dlapiper.com
Tel: 302.468.5650
Fax: 302.778.7914

Email: richard.hans@dlapiper.com
Tel: 212.335.4530
Fax: 212.884.8730

Email: timothy.hoeffner@dlapiper.com
Tel: 212.656.3341
Fax: 215.606.3341

Email: farahlisa.sebti@dlapiper.com
Tel: 212.335.4829
Fax: 212.884.8529

U.S. Lawyers for the Canadian Creditors Committee

**INFORMAL NORTEL NOTEHOLDER GROUP**

AND TO: **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan
Sean Zweig
Jonathan Bell

Email: zychk@bennettjones.com
Tel: 416.777.5738
Fax: 416.863.1716

Email: orzyr@bennettjones.com
Tel: 416.777.5737
Fax: 416.863.1716

Email: finlaysong@bennettjones.com
Tel: 416.777.5762
Fax: 416.863.1716

Email: swanr@bennettjones.com
Tel: 416.777.7479
Fax: 416.863.1716

Email: zweigs@bennettjones.com
Tel: 416.777.6254
Fax: 416.863.1716

Email: bellj@bennettjones.com
Tel: 416.777.6511
Fax: 416.863.1716

Canadian Lawyers for The Informal Nortel Noteholder Group

AND TO: **MILBANK, TWEED, HADLEY McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005

Thomas R. Kreller
Jennifer P. Harris
Albert A. Pisa
Samir Vora
Andrew LeBlanc
Michael Hirschfeld
Atara Miller
Tom Matz
Nick Bassett
Gabrielle Ruha
Rachel Pojunas

Email: TKreller@milbank.com
Tel: 213.892.4463
Fax: 213.629.5063

Email: JHarris@milbank.com
Tel: 212.530.5475
Fax: 212.530.5219

Email: APisa@milbank.com
Tel: 212.530.5319
Fax: 212.530.5219

Email: svora@milbank.com
Tel: 213.892.4595
Fax: 213.629.5063

Email: aleblanc@milbank.com
Tel: 202.835.7574
Fax: 202.263.7574

Email: mhirschfeld@milbank.com
Tel: 212.530.5832
Fax: 212.822.5832

Email: amiller@milbank.com
Tel: 212.530.5421
Fax: 212.822.5421

Email: tmatz@milbank.com
Tel: 212.530.5885
Fax: 212.822.5885

Email: nbassett@milbank.com
Tel: 202.835.7546
Fax: 202.263.7546

Email: gruha@milbank.com
Tel: 212.530.5155
Fax: 212.822.5155

Email: rpojunas@milbank.com

37



Tel: 202.835.7551
Fax: 202.263.7551

U.S. Lawyers for The Informal Nortel Noteholder Group

38

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

AND TO: **DENTONS CANADA LLP**
77 King Street West, Suite 400
TD Centre
Toronto, ON M5K 0A1

R. Shayne Kukulowicz
Michael J. Wunder
Ryan Jacobs
Barbara Grossman

Email: Shayne.kukulowicz@dentons.com
Michael.wunder@dentons.com
ryan.jacobs@dentons.com
Barbara.grossman@dentons.com

Tel: 416.863.4511
Fax: 416.863.4592

Canadian Lawyers for the Official Committee of Unsecured Creditors

AND TO: **AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036

Fred S. Hodara
David H. Botter
Abid Qureshi
Robert A. Johnson
Brad M. Kahn

Email: fhodara@akingump.com
dbotter@akingump.com
aqureshi@akingump.com
rajohnson@akingump.com
bkahn@akingump.com

Tel: 212.872.1000
Fax: 212.872.1002

U.S. Lawyers for the Official Committee of Unsecured Creditors

AND TO: **ASHURST LLP**
Boardwalk House
5 Appold Street
London, EC2A 2HA
United Kingdom

Angela Pearson
Antonia Croke

Email: angela.pearson@ashurst.com
antonia.croke@ashurst.com

Tel: +44 (0)20 7638 1111
Fax: +44 (0)20 7638 1112

U.K. Lawyers for the Official Committee of Unsecured Creditors

AND TO: **RICHARDS LAYTON & FINGER, P.A.**
920 North King Street
Wilmington, DE 19801

Christopher Samis

Email: samis@rlf.com
Tel: 302.651.7845
Fax: 302.498.7845

Local U.S. Lawyers for the Official Committee of Unsecured Creditors

**UK PENSION PROTECTION FUND AND NORTEL NETWORKS UK PENSION TRUST LIMITED**

AND TO: **CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario M5H 3C2

E. Bruce Leonard
David S. Ward
Bill Burden
Christopher Horkins
Lara Jackson

Email: bleonard@casselsbrock.com
dward@casselsbrock.com
bburden@casselsbrock.com
chorkins@casselsbrock.com
ljackson@casselsbrock.com

Tel: 416.860.6455
Fax: 416.640.3054

Co-Counsel for the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited

AND TO: **THORNTON GROUT FINNIGAN LLP**
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

Michael Barrack
D.J. Miller
Rebecca Lewis
Andrea McEwan

Email: mbarrack@tgf.ca
Tel: 416.304.1109
Fax: 416.304.1313

Email: djmiller@tgf.ca
Tel: 416.304.0559
Fax: 416.304.1313

Email: rlewis@tgf.ca
Tel: 416.304.0603
Fax: 416.304.1313

Email: amcewan@tgf.ca
Tel: 416.304.0596
Fax: 416.304.1313

Co-Counsel to the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited

AND TO: **WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, N.Y. 10019-6099, U.S.A.

Brian O'Connor
Sameer Advani
Andrew Hanrahan

Email: boconnor@willkie.com
Tel: (212) 728-8251
Fax: (212) 728-9251

Email: sadvani@willkie.com
Tel: (212) 728-8587
Fax: (212) 728-9587

Email: ahanrahan@willkie.com
Tel: (212) 728-8170
Fax: (212) 728-9170

US Counsel for the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited

AND TO: **BAYARD, P.A.**
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899

Charlene D. Davis
Justin Alberto

Email: cdavis@bayardlaw.com
jalberto@bayardlaw.com

Tel: 302.655.5000
Fax: 302.658.6395

Local U.S. Lawyers for the UK Pension Protection Fund and Nortel Networks UK Pension Trust Limited

40

**THE BANK OF NEW YORK MELLON**

AND TO: **McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario, M5J 2T3

Sheryl E. Seigel

Email: sheryl.seigel@mcmillan.ca
Tel: 416.307.4063
Fax: 416.365.1719

Canadian Lawyers for The Bank of New York Mellon

AND TO: **LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email: michael.riela@lw.com

Tel: 212.906.1373
Fax: 212.751.4864

U.S. Lawyers for The Bank of New York Mellon

41

**WILMINGTON TRUST, NATIONAL ASSOCIATION**

AND TO: **HEENAN BLAIKIE LLP**
Bay Adelaide Centre
333 Bay Street, Suite 2900
P.O. Box 2900
Toronto, Ontario M5H 2T4

John Salmas
Kenneth Kraft
Sara-Ann Van Allen

Email: jsalmas@heenan.ca
Tel: 416.360.3570
Fax: 416.360.8425

Email: kkraft@heenan.ca
Tel: 416.643.6822
Fax: 416.360.8425

Email: svanallen@heenan.ca
Tel: 416.360.3570
Fax: 416.360.8425

Canadian Lawyers for Wilmington Trust, National Association

AND TO: **KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10022-2585

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine

Email: craig.barbarosh@kattenlaw.com
Tel: 212.940.8665
Fax: 212.940.8776

Email: david.crichlow@kattenlaw.com
Tel: 212.940.8941
Fax: 212.940.8776

Email: Karen.dine@kattenlaw.com
Tel: 212.940.8772
Fax: 212.940.8776

U.S. Lawyers to Wilmington Trust, National Association

**LAW DEBENTURE TRUST COMPANY OF NEW YORK**

AND TO: **BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
40 King Street West
Toronto, ON M5H 3Y4

Edmond F. B. Lamek
James Szumski

Email: elamek@blg.com
Tel: 416.367.6311
Fax: 416.361.2436

Email: jszumski@blg.com
Tel: 416.367.6310
Fax: 416.682.2811

Lawyers for Law Debenture Trust Company of New York

AND TO: **PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, NY 10036

Daniel A. Lowenthal

Email: dalowenthal@pbwt.com
Tel: 212.336.2720
Fax: 212.336.1253

U.S. Lawyers for Law Debenture Trust Company of New York

43

**BOARDS OF DIRECTORS OF NORTEL NETWORKS CORPORATION AND NORTEL NETWORKS LIMITED**

AND TO: **OSLER HOSKIN AND HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, Ontario M5X 1B8

Lyndon Barnes
Edward Sellers
Betsy Putnam
Adam Hirsh

Email: lbarnes@osler.com
esellers@osler.com
eputnam@osler.com
ahirsh@osler.com

Tel: 416.362.2111
Fax: 416.862.6666

Lawyers for the Boards of Directors of Nortel Networks Corporation and Nortel Networks Limited

44

**COURTESY COPIES:**

AND TO: **NORTON ROSE CANADA LLP**

Suite 3800, Royal Bank Plaza
South Tower, 200 Bay Street
P.O. Box 84
Toronto, ON M5J 2Z4

Michael Lang

Email: michael.lang@nortonrose.com

Tel: 416.216.3939
Fax: 416.216.3930

AND TO: **HOGAN LOVELLS INTERNATIONAL LLP**

Atlantic House
Holborn Viaduct
London EC1A 2FG
United Kingdom

Angela Dimsdale Gill
John Tillman
Matthew Bullen

Email: amdg@hoganlovells.com
john.tillman@hoganlovells.com
Matthew.bullen@hoganlovells.com

Tel: +44 20 7296 2000
Fax: +44 20 7296 2001

| IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION | Court File No.:09-CL-7950 |
|---|---|
| | *ONTARIO*<br>**SUPERIOR COURT OF JUSTICE**<br>Proceeding Commenced at Toronto |
| | **NOTICE OF MOTION**<br>**(returnable June 11, 2013)** |
| | **GOWLING LAFLEUR HENDERSON LLP**<br>Barristers & Solicitors<br>1 First Canadian Place,<br>100 King Street West, Suite 1600<br>Toronto ON M5X 1G5<br><br>**Derrick Tay (LSUC #: 21152A)**<br>**Jennifer Stam (LSUC #: 46735J)**<br>Tel: (416) 862-5697<br>Fax: (416) 862-7661<br><br>**GOODMANS LLP**<br>Barristers & Solicitors<br>333 Bay Street, Suite 3400<br>Toronto ON M5H 2S7<br><br>**Jay A. Carfagnini** (LSUC#: 22293T)<br>**Jessica Kimmel** (LSUC#: 32312W)<br>**Peter Ruby** (LSUC#: 38439P)<br>**Joseph Pasquariello** (LSUC#: 38390C)<br>Tel: 416.979.2211<br>Fax: 416.979.1234 |

# TAB 2

46

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**NINETY-FIFTH REPORT OF THE MONITOR**
**DATED JUNE 5, 2013**

## INTRODUCTION

1. On January 14, 2009, Nortel Networks Corporation ("**NNC**" and collectively with all its subsidiaries "**Nortel**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "**Canadian Debtors**") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("**CCAA**"). Pursuant to the Order of this Court dated January 14, 2009, as amended and restated (the "**Initial Order**"), Ernst & Young Inc. was appointed as the Monitor of the Canadian Debtors (the "**Monitor**") in the CCAA proceedings.

2. Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**US Court**") on January 14, 2009 (the "**Chapter 11 Proceedings**"). As required by US law, an official committee of unsecured creditors (the "**Committee**") was established in January, 2009.

3. An ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of this Court, representative counsel was appointed on behalf of the former employees of the Canadian Debtors, the continuing employees of the Canadian Debtors and the LTD Beneficiaries (and together with other Canadian creditors, "**CCC**") and each of these groups is participating in the CCAA proceedings.

4. Nortel Networks (CALA) Inc. ("**NN CALA**" and together with NNI and certain of its subsidiaries and affiliates that filed on January 14, 2009, the "**US Debtors**") filed a voluntary petition under Chapter 11 of the Code in the U.S. Court on July 14, 2009.

5. Nortel Networks UK Limited ("**NNUK**") and certain of its affiliates located in EMEA were granted administration orders (the "**UK Administration Orders**") by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as administrators of the various EMEA Debtors, except for Nortel Networks (Ireland) Limited, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "**Joint Administrators**").

**PURPOSE**

6. The purpose of this Ninety-Fifth report of the Monitor (the "**Ninety-Fifth Report**") is to support the joint motion of the Monitor and Canadian Debtors seeking approval of a protective order (attached as Appendix "A" hereto) relating to the disclosure and discovery of documents in the context of the trial in respect of the allocation of sale proceeds and the resolution of claims filed by the EMEA Debtors, certain other intercompany creditors and UK pension interests (the "**Trial**") scheduled to commence January 6, 2014.

7. The following appendices are attached to this Ninety-Fifth Report:

a) Appendix A – Monitor's and Canadian Debtors' form of Protective Order;

b) Appendix B – UK Pension Claimants' form of Protective Order;

c) Appendix C – CCC's form of Protective Order; and

d) Appendix D – Excerpts from Sale Agreements showing confidentiality clauses.

**TERMS OF REFERENCE**

8. In preparing this Ninety-Fifth Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with the Company. The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of this information and accordingly, the Monitor expresses no opinion or other form of assurance on the information contained in this Ninety-Fifth Report. Unless otherwise stated, all monetary amounts contained herein are expressed in U.S. dollars.

9. The Monitor has made various materials relating to the CCAA proceedings available on its website at www.ey.com/ca/nortel. The Monitor's website also contains a dynamic link to Epiq Bankruptcy LLC's website where materials relating to the Chapter 11 Proceedings are posted.

**BACKGROUND**

10. Pursuant to an Order of this Court made on April 13, 2013, this Court approved the Canadian Debtors' form of allocation protocol and established the core parties ("**Core Parties**") who may participate in the Trial. A similar order also approving the allocation protocol has been granted by the US Court. Among the Core Parties are the Canadian Debtors, US Debtors, EMEA Debtors/ Joint Administrators, Committee, CCC, Bondholder Group, administrator of the UK pension plan and pension protection fund (the "**UK Pension Claimants**"), indenture trustees under the bond trust indentures and former directors and officers of the Canadian Debtors.

11. On May 15, 2013, this Court and the US Court approved orders establishing a litigation timetable (the "**Litigation Timetable**") and discovery plan (the "**Discovery Plan**") for the purposes of the Trial.

12. The Trial has been set to commence January 6, 2014. Prior to that time, in accordance with the Litigation Timetable and Discovery Plan, significant document production is required to take place. Notably, the deadline for requests for document production was May 22, 2013. Under the Litigation Timetable, rolling production of documents is to commence on June 10, 2013 and must be substantially complete by July 22, 2013 (the "**Document Production Period**").

13. In order to protect material that is confidential, it is necessary to put a protective order in place.

14. On May 22, 2013, the Canadian Allocation Group, the US Allocation Group, the EMEA Allocation Group and the Bondholder Allocation Group (all as defined in the Litigation Timetable) served their requests for production of non-privileged documents pursuant to the Litigation Timetable. Similar requests were delivered in connection with the EMEA Debtor and UK Pension Claims in both Canada and the US. The scope of the document requests is wide ranging and includes requests for documents produced during a period of over a decade in respect of wide ranging issues, some of which are listed below:

a) valuation of business lines;

b) valuation of intellectual property;

c) financial statements;

d) intercompany sales;

e) allocation of proceeds of pre-petition asset sales;

f) pre-petition asset sale valuation;

g) communications with asset purchasers;

h) value of post-petition asset sales;

i) monetizing intellectual property;



j) legal title to intellectual property;

k) patent filings;

l) research and development;

m) interim funding and settlement agreement;

n) transfer pricing agreements, calculations and payments;

o) Project Swift;

p) customer relationships;

q) intercompany loans;

r) UK pension matters;

s) board materials including minutes, presentations and other materials;

t) UK pension trustee materials;

u) cabinet meetings; and

v) tax documents.

15. The Canadian Debtors and Monitor are in the process of reviewing the requests with a view to the commencement of production of documents substantially in accordance with the Litigation Timetable.[1]

**CONFIDENTIALITY CONCERNS**

16. The Litigation Timetable and Discovery Plan provide for the production of documents for the purposes of the allocation litigation (including related claims). However, as set out

[1] Pursuant to the Litigation Timetable, rolling production of documents is set to commence on June 10, 2013. In light of the timing of the hearing, no Confidential or Highly Confidential Material will be produced until this issue has been resolved or a further interim protective order is in place.



below, the production of documents must be carried out in a way that addresses the many remaining confidentiality concerns.

*Business Sale Confidentiality Concerns*

17. The asset purchase agreements (the "**Sale Agreements**") for all of the major business sales and the sale of Nortel's residual intellectual property contained extensive confidentiality clauses which, in most or all instances, impose confidentiality restrictions on the Sellers (as defined in Sale Agreements). Attached as Appendix D are excerpts/summaries relating to confidentiality from the asset purchase agreements relating to the CDMA/LTE, Enterprise, GSM, MEN, CVAS, MSS and Residual IP sale.

18. Although the specific terms of the agreements vary, the confidentiality restrictions in each sale agreement generally prohibit the Sellers (or their affiliates) from disclosing competitively sensitive information relating to the business being sold (subject to certain exceptions). For example, certain of these provisions prohibit the Sellers (or their affiliates) from disclosing:

a) all confidential information relating to the business and assets being sold including trade secrets, customer lists, marketing plans and pricing information;[2]

b) all competitively sensitive information and data related to the business, the assets and/or the Sellers (including intellectual property and competitively sensitive "business information");[3] and

c) all competitively sensitive, proprietary or confidential information that pertains to the assets (including any portions of notes, dockets, reports, analyses, compilations, studies, files, claim charts, or other documents or material, whether prepared by the Sellers or others, which contain or otherwise reflect such information) and all information on the Sellers disclosure schedules.[4]

[2] Section 5.11 of the Sale Agreement for the sale of the MEN business.
[3] Section 5.11 of the Sale Agreement for the sale of the Enterprise business.
[4] Section 5.11 of the Sale Agreement for the sale of the residual IP and definition of "Purchaser Confidential Information".

19. The permitted exceptions in the confidentiality clauses in the Sale Agreements generally relate to the sale and approval process itself. Additionally, most or all the Sale Agreements provide that where required by applicable law, the Sellers may disclose confidential information with advance notice to the purchaser. There are two (2) instances where the terms of the purchase agreements allow the Sellers to "share" information for the purposes of allocating proceeds.[5]

20. Despite the fact that Nortel no longer operates any business, the businesses themselves, now in the hands of third party buyers, continue to operate. The third party buyers, as evidenced by the terms of the Sale Agreements themselves, are concerned with ensuring that documents related to the businesses they are operating (or the assets they acquired), remain confidential. The Canadian Debtors (as well as the other Sellers) have contractual obligations to ensure their information is kept confidential.

*Third Party Contracts Assigned to Purchasers Contain Confidentiality Clauses*

21. In addition to the confidentiality obligations set out above, many of the contracts Nortel had entered into pre-petition (including those assigned to third party purchasers) contained confidentiality clauses and information commercially sensitive to those third parties. Indeed, in the context of the sales processes, in many instances potential buyers were not provided with copies of these sensitive contracts. These confidentiality provisions must continue to be observed.

*Personal Information*

22. The Canadian Debtors, US Debtors and EMEA Debtors are all subject to privacy and related laws in their various jurisdictions when it comes to personal information (including personal information that is financial information) – Furthermore, public disclosure of this information could be harmful to individuals to whom the information pertains.

---

[5] Section 5.11 of each of the Sale Agreements for the sale of the CVAS business and the MSS business.

*Third Parties not involved in the Allocation Proceedings*

23. As set out in prior reports, the Monitor and Canadian Debtors are still in the process of resolving several outstanding third party claims including with Canada Revenue Agency and other government entities. The Monitor and Canadian Debtors understand the US Debtors also have outstanding third party claims that remain unresolved and the EMEA Debtors have not even commenced a process for addressing third party claims. The production of documents with respect to those third party claims should be informed and shaped by those claims and not by this current process.

## THE PROTECTIVE ORDER[6]

24. In order to address the confidentiality concerns, the Monitor and Canadian Debtors have worked with the other Core Parties to attempt to reach consensus on the terms of a form of protective order (the "**Protective Order**") and now propose that the form of Protective Order attached hereto as Appendix A be approved by this Court. The Monitor and Canadian Debtors are aware the US Debtors will be seeking approval of the same form of Protective Order from the US Court at the joint hearing scheduled in respect of this matter.

*The Proposed Terms of the Protective Order*

25. The proposed Protective Order imposes a designation system whereby "producing parties" may designate material as "Confidential" or "Highly Confidential" if they reasonably believe such material meets specified criteria. Other parties have the right to object to such designations and ultimately, any unresolved disputes may be resolved by the Court(s).

26. A summary of the key terms of the Protective Order is set out below:

a) Application (Section 1). The Protective Order will govern all parties' participation in discovery undertaken in connection with the litigation or

[6] Capitalized terms used herein and not otherwise defined have the meaning given to them in the proposed Protective Order (Appendix A). The summary contained herein is for informational purposes only. Reference should be made to the Protective Order itself for the full proposed terms.

arbitration of allocation, EMEA claims and UK pension claims, with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information production, given or disclosed by any Party or any non-parties (a "**Producing Party**") to any other Party or non-party receiving or viewing such materials (a "**Receiving Party**").

b) <u>Confidential and Highly Confidential Material</u>. The Protective Order provides that a Producing Party may designate Discovery Material as "Highly Confidential Discovery Material" or "Confidential Discovery Material" if such material meets certain criteria:

i. <u>Highly Confidential Discovery Material</u> (Section 2(b)). Discovery Material may be designated as Highly Confidential Discovery Material where the Producing Party reasonably believes that it contains or constitutes:

A) personal information that requires the protections provided in this Protective Order, including, but not limited to, social security numbers, information about current or former employee compensation and/or benefits, health information and financial information;

B) information required to be kept confidential pursuant to law or regulation; or

C) information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party.

ii. <u>Confidential Discovery Material</u> (Section 3(b)). Discovery Material may be designated as Confidential Discovery Material where the Producing Party reasonably believes that it contains or constitutes:

A) non-public proprietary information about a Party;

B) non-public financial or accounting results or data;

C) tax returns, any tax-related correspondence or agreements with any government and other tax information ("**Tax Information**");

55

D) information subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party; or

E) confidential communications offered in mediation or compromise negotiations, including, but not limited to, Discovery Material bearing a designation that it is subject to Federal Rule of Evidence 408.

c) Confidential and Highly Confidential Discovery Material shall not include (Section 2(a)):

i. information that is publicly available in substantially the same form in which it was provided;

ii. information that was, is or becomes public knowledge, not in violation of this Protective Order;

iii. information that is voluntarily de-designated by the Producing Party;

iv. information that a Court order has de-designated;

v. information rightfully acquired from an independent source without restrictions as to use; or

vi. information that is at any time independently developed by a Party without use of or reliance upon any Discovery Material.

d) <u>Designation</u> (Section 4). A Producing Party may designate material as Confidential or Highly Confidential Discovery Material by applying a legend indicating as much to each page or portion of the relevant material. At the request of a Party, a Producing Party shall designate material as Confidential or Highly Confidential Discovery Material where such requesting Party reasonably believes the material meets the criteria for designation. Thereafter, that requesting Party shall be deemed a "Producing Party" for certain purposes in the Protective Order.

e) <u>Treatment of Highly Confidential Information</u> (Section 5). Highly Confidential Discovery Material will be maintained in confidence by any Receiving Party and

may only be shared with permitted third parties as set out in the Protective Order (subject to the terms and conditions of the Protective Order).

The Protective Order addresses the processes for use of or reference to Highly Confidential Discovery Material in final or draft pleadings and for showing Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses.

f) Treatment of Confidential Information (Section 6). Confidential Discovery Material will be maintained in confidence by any Receiving Party and may only be shared with permitted third parties as set out in the Protective Order (subject to the terms and conditions of the Protective Order). Those parties whom Receiving Parties may share Confidential Discovery Material include parties or persons to whom Highly Confidential Discovery Material may be disclosed, current employees, officers, or directors of a Receiving Party, former employees of a Receiving Party and persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons.

g) Permitted Purposes (Section 7). The Protective Order generally provides that Confidential or Highly Confidential Discovery Material may only be used by permitted persons and that all Discovery Material shall only be used in connection with the Proceedings (subject to certain exceptions related to the UK Pension Claimants' Beddoe proceedings).

h) Court Filings (Section 8). The Protective Order provides that Confidential or Highly Confidential Discovery Material shall not be filed with the Court(s) (subject to certain exceptions), but that the Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing. The Parties reserve all rights with respect to trial procedures.



i) No Waiver (Section 10).

i. Where a Producing Party subsequently realizes that certain Discovery Material it previously produced should be designated as Confidential or Highly Confidential, it may notify Receiving Parties of such and provide substituted copies of the Discovery Material with the appropriate legend.

ii. The Protective Order does not prevent any Party from applying to the Court(s), in writing and on notice to the Parties, for relief from the Protective Order or for applying for additional Protective Orders.

j) Objections to Designation (Section 11). Any Party may object to the designation of Discovery Material as Confidential or Highly Confidential and, absent consensual resolution within seven (7) business days, may seek a ruling from the Court(s). The burden shall be on the Producing Party to justify the claim that dispute material has been properly designated and is entitled to protection from disclosure.

k) Effective Date (Section 19). The Effective Date of the Protective Order is the date on which it has been approved by both Courts.

l) Allocation Dataroom Access (Section 20).

i. Allocation Dataroom Documents will be treated as Confidential Discovery Material unless marked as "Highly Confidential Discovery Material" within 21 days following the Effective Date.

ii. If a Party objects to the designation of specifically identified documents in the Allocation Dataroom, the Producing Party shall reconsider such designation and within ten (10) days either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material.

m) Other Provisions. The Protective Order contains other provisions which address certain matters including, the requirement that certain persons sign a Non-

58

Disclosure Declaration prior to receiving Confidential or Highly Confidential Material, use in depositions, redaction of personal information, third party beneficiaries, survival of the Protective Order, disposal of Confidential or Highly Confidential Material and privileged documents.

**CURRENT STATUS OF THE PROTECTIVE ORDER AND KNOWN OBJECTIONS**

27. The proposed Protective Order represents the result of negotiations and compromises agreed to by the Monitor and Canadian Debtors, the US Debtors and Committee, the EMEA Debtors, the UK Pension Claimants, the CCC and other Core Parties. Certain steps have already been accomplished. In particular, on May 16, 2013, this Court granted an interim protective order (the "**Interim Protective Order**") to allow Core Parties who did not previously have access to the Allocation Dataroom to gain immediate access to those documents. A similar order was granted by the US Court on May 17, 2013.

28. In accordance with the Litigation Timetable, the Monitor and Canadian Debtors served and filed their proposed Protective Order (attached as Appendix A) on May 17, 2013. In response, the UK Pension Claimants and CCC also served their proposed Protective Order (attached as Appendices B and C, respectively). Other than the differences set out in those proposed forms, neither the Monitor nor Canadian Debtors are aware of any remaining differences in the proposed Protective Order.

*The UK Pension Claimants*

29. With respect to the UK Pension Claimants, there appears to be only one point of dispute with respect to the Protective Order. As set out above, the Monitor and Canadian Debtors' proposed form of Protective Order contains the following provision in the "permitted use" section of the Order:[7]

> provided that, the Protective Order shall not prohibit the UK Pension Claimants from complying with the Beddoe proceeding pending under

[7] The Monitor understands that a Beddoe application is a directions application to court seeking the court's approval to trustees bringing or defending proceedings in order to avoid potential personal liability being imposed on the trustees.

> U.K. law in the English High Court by disclosing Discovery Material to the Beddoe court and counsel (including barristers and solicitors) for the representative beneficiary in those proceedings (provided that such counsel is informed of the terms of this Protective Order and the UK Pension Claimants make a good faith effort to have such counsel comply with the requirements of Section 13) for purposes of obtaining periodic directions from the Beddoe court with respect to the Proceedings, provided the Discovery Material is filed under seal and is not available as a matter of public record. (emphasis added)

30. The UK Pension Claimants have not included the underlined wording in their proposed form of Order.

31. The Monitor's and Canadian Debtors' concern is that once shared with the representative beneficiary, documents may be subject to 'leakage'. In order to mitigate this risk, the UK Pension Claimants are being asked by the other Core Parties to inform counsel for the representative beneficiary of the terms of the Protective Order and use a "good faith effort" to obtain a non-disclosure declaration from the representative beneficiary. This approach is reasonable and not overly burdensome upon the UK Pension Claimants. Absent an Order of this Court specifically providing for the disclosure of information to counsel for the representative beneficiary in the Beddoe proceedings, the Canadian Debtors (as well as the other Sellers under the Sale Agreements) would risk being in violation of their confidentiality obligations to third parties by disclosing confidential information to persons who may not be aware of the information's confidential nature.

*The CCC*

32. The CCC has raised objections which are reflected in its blackline to the proposed Protective Order (the "**CCC Protective Order**"). The CCC's concerns fall into a number of categories including, scope of material that may be designated, categories of people who may view designated information, treatment of designated information at trial and de facto treatment of the Allocation Dataroom.



33.   While the Monitor and Canadian Debtors do not oppose the committee members of the CCC receiving "Confidential Discovery Material", certain other elements of CCC's concerns remain at issue. The Monitor, Canadian Debtors and CCC continue to engage in discussions to try and resolve outstanding issues with the form of Protective Order and will provide any further updates to the Court prior to the return of the motion.

**CONCLUSION**

34.   The Monitor and Canadian Debtors recognize the proposed Protective Order is unusual in the context of standard Canadian litigation. However; the Nortel process which includes companies from all around the world, three (3) major insolvency proceedings, debtors subject to the laws of numerous jurisdictions and a joint trial to be conducted by two (2) Courts simultaneously is equally unusual.

35.   The Parties are faced with the enormous task of now litigating entitlement to over $7 billion at a trial commencing in approximately six (6) months. In that time, there is an incredible amount that must be accomplished. In fact, the Document Production Period must be substantially complete within two (2) months from the date requests were made. The document production requests received by the Monitor and Canadian Debtors (as well as other Producing Parties) are wide in scope. As set out above the Monitor and Canadian Debtors are continuing to review the requests and reserve the right to file objections or other motions as contemplated by the Litigation Timetable and Discovery Plan.

36.   Given the time frame for production of documents set out in the Litigation Timetable as well as the scope of documents requested, it is necessary to adopt a practical approach to confidentiality issues.

37.   The proposed Protective Order addresses the many confidentiality concerns the Monitor and Canadian Debtors, US Debtors and EMEA Debtors all face (particularly given the Sale Agreements) and represents a practical and largely consensual basis for the treatment of Confidential and Highly Confidential Discovery Material in the Proceedings. It provides for specified limitations, which are consistent with Canadian legal principles,

61

on those documents that may reasonably be designated as Confidential or Highly Confidential and allows for Parties who disagree with that designation to object and seek direction from the Court(s).

38. Furthermore, the Monitor and Canadian Debtors believe the proposed Protective Order balances both the need for discovery (pursuant to the Court-approved Litigation Timetable and Discovery Plan) as well as the reality of the condensed time for discovery including the cost of such a process, reduced personnel and the massive volume of documents that have been requested for production. If the onus were placed on Producing Parties to seek confidentiality orders prior to producing documents in the Allocation Database or for the purposes of filing with the Court(s), the Court(s) would likely be faced with lengthy sealing motions during which the Court(s) would be asked to make decisions regarding confidentiality when it would not even yet be known whether all or even any such documents would be used at Trial.

39. The Monitor and Canadian Debtors are hopeful that once production is underway, the Parties will act reasonably in resolving matters as production occurs. However, the Protective Order does not prejudice the right of any Receiving Party to object to designations or seek direction from the Court(s) where there are disputes.

40. For the reasons set out above, the Monitor and Canadian Debtors believe the form of Protective Order attached as Appendix A is fair and reasonable and respectfully request it be approved by this Court.

All of which is respectfully submitted this 5th day of June, 2013.

**ERNST & YOUNG INC.**
**In its capacity as Monitor of the Canadian Debtors**
**and not in its personal capacity**

Per:

Murray A. McDonald
President

# TAB A

62

# PROTECTIVE ORDER

**1. Application of this Protective Order.**

(a) This Protective Order (the "Protective Order") shall govern the participation of any person, entity or group, including, but not limited to, the Canadian Debtors,[1] EMEA Debtors, US Debtors, Committee, Bondholder Group, Monitor, Joint Administrators, CCC, Indenture Trustees, UK Pension Claimants, and Officers and Directors (the "Parties" and each a "Party") and the Parties' counsel (and, where a Party is a committee or group, counsel to each member), in discovery undertaken in connection with the litigation or arbitration (subject to any Party's right to oppose any request for arbitration on any grounds and/or to oppose the use of any Discovery Material, as defined below, in any such arbitration) of Allocation, the EMEA Claims, and the UK Pension Claims in the US and/or Canadian Court (collectively the "Proceedings"), notwithstanding anything to the contrary previously agreed to or ordered by the United States Bankruptcy Court for the District of Delaware (the "US Court") or the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" and, together with the US Court, the "Courts"), and subject to approval by both Courts.

(b) This Protective Order shall govern the Proceedings with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information produced, given or disclosed by any Party or any non-parties (in each case, a "Producing Party") to any other Party or non-party receiving or viewing such materials(in each case, "Receiving Party"), including through access to a shared dataroom (all such materials and the substance of such materials, hereinafter referred to as "Discovery Material").

**2. Highly Confidential Discovery Material.**

(a) Any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that "Highly Confidential" documents and information shall not include:

(i) information that is publicly available in substantially the same form in which it was provided;

(ii) information that was, is or becomes public knowledge, not in violation of this Protective Order;

(iii) information that is voluntarily de-designated by the Producing Party;

(iv) information that a Court order has de-designated;

(v) information rightfully acquired from an independent source without restrictions as to use; or

[1] Capitalized terms not defined herein shall have the meaning given in the Allocation Protocol.



     (vi) information that is at any time independently developed by a Party without use of or reliance upon any Discovery Material.

(b) Subject to these conditions and limitations, any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i) personal information that requires the protections provided in this Protective Order, including, but not limited to, social security numbers, information about current or former employee compensation and/or benefits, health information and financial information;

(ii) information required to be kept confidential pursuant to law or regulation; or

(iii) information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party;

(all information designated as such, including the document itself as well as the information therein, the "Highly Confidential Discovery Material").

**3. Confidential Discovery Material.**

(a) Any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that Confidential information shall not include any documents or information as set forth in Section 2(a) hereof.

(b) Subject to these conditions and limitations, any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i) non-public proprietary information about a Party;

(ii) non-public financial or accounting results or data;

(iii) tax returns, any tax-related correspondence or agreements with any government, all workpapers, books and records relating to taxes, any tax opinions, records (including accounting records) relating to taxes paid or payable by the parties, all intercompany agreements related to taxes, and all financial and tax records relating to the estate that form part of a parties' general ledger or otherwise constitute accounting records, as well as drafts with respect to any of the foregoing;

(iv) information subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party; or

(v) confidential communications offered in mediation or compromise negotiations, including, but not limited to, Discovery Material bearing a designation that it is subject to Federal Rule of Evidence 408;

(all documents or information designated as such, including the document itself as well as the information therein, the "Confidential Discovery Material").

**4. Designation of Documents.**

(a) A Producing Party may designate Discovery Material as Confidential Discovery Material by applying the legend "Confidential" to each page or portion containing any Confidential Discovery Material.

(b) A Producing Party may designate Discovery Material as Highly Confidential Discovery Material by applying the legend "Highly Confidential" to each page or portion containing any Highly Confidential Discovery Material.

(c) In the case of electronically produced information, the "Confidential" or "Highly Confidential" legend, if any, shall be printed on the cover or container of the disk, tape, or other medium in which the electronic form data is stored, and the "Confidential" or "Highly Confidential" legend shall be applied, by electronic means to each electronic document or other electronically stored information containing any Confidential or Highly Confidential Discovery Material, unless such electronic materials are produced in native format. If produced in native format, such materials will be produced without alteration along with a corresponding Bates-numbered slipsheet bearing the "Confidential" or "Highly Confidential" legend.

(d) The failure to designate a document as "Confidential" or "Highly Confidential" does not constitute a waiver of such claim, and a Producing Party may so designate a document after such document has been produced in accordance with Section 10, with the effect that such document is subject thereafter to the protections of this Protective Order.

(e) At the request of a Party (the "Requesting Party"), a Producing Party shall designate as Confidential or Highly Confidential Discovery Material containing information of the Requesting Party that the Requesting Party reasonably believes in good faith meets any of the criteria for such designation. With respect to Discovery Material designated as Confidential or Highly Confidential Discovery Material pursuant to request, the Requesting Party shall thereafter be deemed a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. The costs of providing new copies of such re-designated documents to each Receiving Party and/or a shared dataroom shall be borne by the Requesting Party, and the "Confidential" or "Highly Confidential" legend on such copies must clearly indicate the Party who requested the designation.

(f) A Party may designate as Confidential or Highly Confidential Discovery Material produced by another Party pursuant to subsection (e), even if such Discovery Material has already been designated as Confidential or Highly Confidential. If more than one Party designates the same Discovery Material as Confidential or Highly Confidential, all such Parties shall be considered a Producing Party with respect to such Discovery Material and be treated as a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order.



For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

**5. Treatment of Highly Confidential Information.**

(a) Any information designated as Highly Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b) Provided that disclosure is not otherwise prohibited by this Protective Order, and subject to Section 7(d), a Receiving Party shall only disclose Highly Confidential Discovery Material to:

(i) current employees, officers and directors of a Receiving Party who previously had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material;

(ii) former employees of a Receiving Party who are currently retained by that Party as consultants or independent contractors who during their employment with the Receiving Party had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material provided that they comply with the requirements of Section 13 hereof;

(iii) court-appointed Monitors, Trustees and Administrators and their respective staffs, and for the US Debtors, the employees of RLKS Executive Solutions LLC and the employees of Avidity Partners, LLC;

(iv) outside or in-house counsel for the Parties or outside or in-house counsel for members of a committee or group (where a Party is a committee or group), and legal assistants, secretaries, staff or agents and consultants working with or for such counsel, but only to the extent that it is reasonably necessary to share Highly Confidential Discovery Material;

(v) litigation support personnel, including outside copying, scanning and coding services and court reporters;

(vi) persons expected to be deponents, trial witnesses or hearing witnesses in the Proceedings and counsel to such persons, provided that counsel providing the Highly Confidential Discovery Material has a good-faith basis for believing that such witnesses had prior, rightful access to or knowledge of the Highly Confidential Discovery Material, and provided that counsel ascertain as soon as practicable whether such witnesses had such access or knowledge, and provided that upon the first indication that such witnesses did not have such access or knowledge, counsel must immediately refrain from any further disclosure to such witnesses and procure the return or destruction of such Highly Confidential Discovery Material;

TOR_LAW\ 8173441\1



(vii)    witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and/or party representatives designated for discovery examination pursuant to the Ontario Rule of Civil Procedure and/or alternative procedures agreed to by the Parties;

(viii)    any experts retained for the purpose of providing advice and assistance to outside counsel of record and/or giving evidence in the Proceedings, including their staff, provided that they comply with the requirements of Section 13 hereof;

(ix)    personnel of the Courts;

(x)    any other person upon written agreement of the Producing Party, provided that he or she complies with the requirements of Section 13 hereof;

(xi)    any other person upon order of the Court(s) and upon such conditions as may be imposed by the Court(s); and

(xii)    any other person, as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, subject to Section 9 of this Protective Order.

(c)    In addition to the foregoing, draft or final pleadings that cite to or quote Highly Confidential Discovery Material (but not any attachments thereto designated as Highly Confidential) may be shared with non-attorney representatives from each Party (or, where the Party is a committee or group, non-attorney representatives of each committee or group, who represent such member or group in committee or group matters), provided that they comply with the requirements of Section 13 hereof, but only to the extent that sharing such draft or final pleadings that cite to or quote Highly Confidential Discovery Material is necessary to render advice to or receive guidance or approval from the Party in the Proceedings.

(d)    Any Receiving Party may request leave of a Producing Party to show Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses in the Proceedings by providing notice to the Producing Party of the Highly Confidential Discovery Material the Receiving Party seeks to use and the parties shall use their best efforts within five business days to determine whether such material may be disclosed by the Receiving Party to such persons while protecting the Producing Party's need for confidentiality, including, but not limited to, considering whether portions of such material can be redacted and re-evaluating whether such material must be protected as Highly Confidential. In the event the Producing Party and the Receiving Party cannot resolve an issue concerning the use of Highly Confidential Discovery Material, the matter may be presented to the Courts for resolution on an expedited basis.

(e)    Persons receiving Highly Confidential Discovery Material pursuant to this Section shall not copy or disclose such Highly Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(f)     Treatment of Highly Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

**6.     Treatment of Confidential Information.**

(a)     Any information designated as Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)     Provided that disclosure is not otherwise prohibited by this Protective Order and subject to Section 7(d), a Receiving Party shall only disclose Confidential Discovery Material to:

(i)     parties or persons to whom Highly Confidential Discovery Material may be disclosed as set forth in Section 5;

(ii)     current employees, officers, or directors of a Receiving Party (including current employees, officers or directors of members of a committee or group that is a Party provided that they comply with the requirements of Section 13 hereof), provided that disclosure is reasonably necessary to the Proceedings;

(iii)     former employees of a Receiving Party, provided that disclosure is reasonably necessary to the Proceedings and that they comply with the requirements of Section 13 hereof; or

(iv)     persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons.

(c)     Persons receiving Confidential Discovery Material pursuant to this Section shall not copy or disclose such Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(d)     Treatment of Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

**7.     Permitted Purposes.**

(a)     Confidential or Highly Confidential Discovery Material shall not be made public by any Party, shall be used only by persons permitted access to it per this Protective Order and shall be disclosed only to persons specified in this Protective Order.

(b)     All Discovery Material (except such materials publicly available in substantially the same form), whether or not designated as Confidential or Highly Confidential Discovery Material, shall be used by Receiving Parties solely in connection with the Proceedings (including appeals), and not in connection with any other litigation, judicial or regulatory proceeding or for any business, commercial, competitive, personal or other purpose except as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory



authority or court order, provided, however, that this Protective Order shall not prohibit the UK Pension Claimants from complying with the Beddoe proceeding pending under U.K. law in the English High Court by disclosing Discovery Material to the Beddoe court and counsel (including barristers and solicitors) for the representative beneficiary in those proceedings (provided that such counsel is informed of the terms of this Protective Order and the UK Pension Claimants make a good faith effort to have such counsel comply with the requirements of Section 13) for purposes of obtaining periodic directions from the Beddoe court with respect to the Proceedings, provided that the Discovery Material is filed under seal and not available as a matter of public record.

(c) Any summary, compilation, notes, memoranda, analysis or copy containing Confidential or Highly Confidential Discovery Material, and any electronic image or database containing Confidential or Highly Confidential Discovery Material shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, memoranda, analysis, copy, electronic image or database is derived.

(d) This Protective Order has no effect upon, and shall not apply to, a Party's use of its own Confidential or Highly Confidential Discovery Material, including information designated as such under Section 4(e) and information that was, prior to disclosure, rightfully in the possession or knowledge of the Party, for any purpose.

(e) This Protective Order shall not preclude any Party from showing any Confidential or Highly Confidential Discovery Material or disclosing information derived therefrom at a deposition or examination for discovery to any witness, provided that, other than the witness, only those persons who are authorized by the terms of this Agreement to receive the Confidential or Highly Confidential Discovery Material to be disclosed to the witness are present at relevant portions of the deposition and the procedures provided for in Section 12 are in place.

**8. Court Filings.**

(a) Confidential or Highly Confidential Discovery Material shall not be filed in the public record absent the consent of the Producing Party or an order of the Court(s) so permitting.

(b) If a Party wishes to file or otherwise submit to the Court(s) any documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material, including, but not limited to, pleadings, memoranda, transcripts, and discovery responses, such Party may redact the Confidential or Highly Confidential Discovery Material. If the nature of the Highly Confidential Information makes redaction unreasonable or impossible, the Party may file the documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material under seal.

(c) The entry of this Protective Order by the Courts shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any further order of either Court required.

(d) The Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing. The Parties reserve all rights with respect to trial procedures.

**9. Compelled Disclosure.**

(a) If a Receiving Party is subpoenaed in another action or proceeding, served with a document demand, or otherwise required or compelled by law, regulation, government action or other process (any of the foregoing, a "Demand") to produce Confidential or Highly Confidential Discovery Material, the Receiving Party shall, if legally permitted, (i) give prompt written notice by overnight delivery, fax or email the earlier of five (5) business days of receipt, or fourteen (14) days prior to the response date of such Demand to counsel for the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material, provided, however, that such notice shall be given as soon as practicable if the response date of the demand is within fourteen (14) business days of receipt by the Receiving Party; and (ii) refrain from producing any Confidential or Highly Confidential Discovery Material in response to such Demand until the earlier of receipt of written notice from the Producing Party that it does not object to production of the Confidential or Highly Discovery Material, or resolution of any objection asserted by the Producing Party either by agreement or by final order of the Court(s) with jurisdiction over the objection of the Producing Party.

(b) The burden of opposing the enforcement of the Demand shall fall solely upon the Producing Party.

(c) Should a Producing Party neither provide written notice to the Receiving Party that it does not object to production of the Confidential or Highly Discovery Material nor submit a timely objection seeking an order that the Demand not be complied with and serve such objection upon the Receiving Party prior to production pursuant to the Demand, the Receiving Party shall be permitted to produce documents responsive to the Demand on the Demand's response date.

(d) Subject to the provisions of this Section, compliance by the Receiving Party with any order directing production pursuant to a Demand of any Confidential or Highly Confidential Discovery Material shall not constitute a violation of this Protective Order.

(e) Nothing herein shall be construed as requiring the Receiving Party or anyone else covered by this Protective Order to challenge or appeal any order directing production of Confidential or Highly Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order.

(f) The provisions of this Section shall apply to examinations conducted by bank or other regulators to which a Party may be subject, which may include examinations of Confidential or Highly Confidential Discovery Material received by any Party and its representatives. Any such disclosure shall be limited to such portions of the Confidential or Highly Confidential Discovery Material that the applicable Party's legal counsel advises is required under the subpoena, order or process, or request or demand by a regulatory authority,



organization of regulators or self-regulatory authority received by that Party (each a "Regulator Demand"). With respect to Regulator Demands for Confidential or Highly Confidential Discovery Material, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of any such Regulator Demand before the disclosure of such Confidential or Highly Confidential Discovery Material to such regulator, if the applicable Party is entitled to do so and if practicable. Otherwise, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of such Regulator Demand after the disclosure of any Confidential Information to regulator, if the applicable Party is entitled to do so. Nothing herein shall obligate any Party to prohibit or restrict any regulator's prompt access, in violation of any law, regulation, order or other obligation applicable to such Party, to documents or information in the custody, possession or control of such Party its representatives.

**10. No Waiver.**

(a) If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced should be designated as Confidential or Highly Confidential, the Producing Party may apprise the Receiving Parties in writing, and such designated Discovery Material will thereafter be treated as Confidential or Highly Confidential Discovery Material under the terms of this Protective Order, provided, however, that the Producing Party shall, at its cost, produce to each Receiving Party and/or to the shared dataroom substitute copies, bearing the legend "Confidential" or "Highly Confidential," of any such Discovery Material at which time the Receiving Party shall promptly return to the Producing Party or (at the election of the Receiving Party) destroy the previously produced copies of such substituted Discovery Material and shall have no right to access such substituted Discovery Material electronically.

(b) This Protective Order shall not prevent any Party from applying to the Court(s) in writing and on notice to the Parties for relief from this Protective Order or from any provision(s) thereof, or from applying to the Court(s) in writing and on notice to the Parties for further or additional protective orders.

(c) Producing or receiving Confidential or Highly Confidential Discovery Material or otherwise complying with the terms of this Protective Order shall not:

(i) prejudice in any way a Producing Party's rights to object to the authenticity or admissibility into evidence of any testimony or other evidence;

(ii) prejudice in any way the rights of the Parties to object to the production of documents that they consider not subject to discovery, or operate as an admission by any Party in the context of any other litigation or proceeding that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;

(iii) prejudice in any way the rights of a Party to seek a determination by the Court(s) whether any Discovery Material should be treated as Confidential

or Highly Confidential Discovery Material or subject to the terms of this Protective Order, provided that a Party seeking to challenge the designation of any Discovery Material as Confidential or Highly Confidential shall be obligated to meet and confer in good faith prior to seeking judicial resolution and follow the procedures provided in Section 11; or

(iv) prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided herein with respect to any particular Discovery Material.

**11. Objections to Designation.**

(a) Any Party objecting to the designation of any particular Discovery Material or testimony as Confidential or Highly Confidential Discovery Material shall so inform the Producing Party, stating the grounds of the objection, and, unless provided otherwise by the discovery plan adopted by the Courts, they shall have seven (7) business days to attempt to resolve the objection, at the end of which the Party objecting to the designation may seek a ruling from the Court(s), on no less than three (3) business days' notice to the Producing Party, that such information should not be treated as Confidential or Highly Confidential Discovery Material, provided that no Confidential or Highly Confidential Discovery Material shall be filed in the public record or disclosed other than in accordance with the terms of this Protective Order prior to such a determination by the Court(s), and provided further that the burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure.

(b) Each Party hereby agrees that it will not contest a Party's request for expedited consideration of any relief sought from the Court(s) pursuant to this Section.

**12. Use in Depositions / Examinations for Discovery.**

(a) If Confidential or Highly Confidential Discovery Material is utilized in a deposition, including a deposition of a party representative, examination for discovery or other recorded testimony, the Producing Party of the Confidential or Highly Confidential Discovery Material may designate the portion of the transcript relating to the Confidential or Highly Confidential Discovery Material as Confidential or Highly Confidential.

(b) Any deponent or examinee for discovery or his or her counsel may designate all or part of the transcript of a deposition or examination for discovery as Highly Confidential or Confidential. Such deponent or examinee will be the Producing Party of the deposition or examination testimony for purposes of this Protective Order, except that testimony about Confidential or Highly Confidential Discovery Material for which the deponent or examinee is not a Producing Party shall also be deemed to have been produced by the Producing Party of the Confidential or Highly Confidential Discovery Material discussed.

(c) Designation of all or part of a transcript as Highly Confidential or Confidential may be made on the record during the deposition or examination or may be made by giving written notice to the court reporter and counsel for all Parties within seven (7) business days after



receiving the transcript from the court reporter. All deposition or examination transcripts will be considered Confidential for the first seven (7) business days after receiving the transcript from the court reporter, unless designated otherwise by agreement of the Parties, by the Producing Party of Confidential or Highly Confidential Discovery Material discussed therein and/or by the deponent or examinee, as the case may be.

(d) The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition.

**13. Disclosure to Certain Firms and Individuals.**

(a) Prior to disclosure of Confidential or Highly Confidential Discovery Material pursuant to Sections 5(b)(ii), (viii) and (x) (including as incorporated by reference in Section 6(b)(i) hereof); 5(c) and 6(b)(ii) and (iii) hereof, counsel for the Receiving Party shall provide a copy of this Protective Order to the person or the representative of the firm to whom disclosure is intended and such person or representative must execute a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

(b) A Receiving Party shall not disclose any Confidential or Highly Confidential Discovery Material to any holder of, or the investment manager for holders of, debt securities issued and/or guaranteed by the Canadian Debtors, EMEA Debtors or US Debtors, or to any officers, employees, counsel, accountants, advisors or agents of the Receiving Party that might be involved in acquiring any assets of or trading in claims against (including debt securities issued by any of) the Canadian Debtors, EMEA Debtors or US Debtors, unless such person or the representative of the person or firm to whom disclosure is intended executes a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

**14. Third-Party Beneficiaries.**

Third parties that produce documents for use in the Proceedings, either voluntarily or pursuant to a subpoena or in response to discovery requests in connection with the Proceedings, are intended third-party beneficiaries of this Protective Order and shall have the right to designate materials as Confidential or Highly Confidential Discovery Material in accordance with the terms hereof and shall otherwise have the same rights and responsibilities as a Producing Party.

**15. Redaction of Personal Information.**

(a) Each Producing Party may redact from Discovery Material it produces, whether or not such Discovery Material are designated Confidential or Highly Confidential, such personal information (e.g., social security numbers, home addresses, bank account information) as the Producing Party deems appropriate, such as information required not to be disclosed by the data protection, privacy or similar laws of the Producing Party's jurisdiction.

(b) If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced contains personal information to which a non-disclosure

obligation applies, the Producing Party may apprise the Receiving Parties in writing. Promptly after receiving written notice of an inadvertent production of personal information, each Receiving Party shall return to the Producing Party or (at the election of the Receiving Party) destroy the Discovery Material as to which the claim of inadvertent production has been made and shall not use the inadvertently produced personal information for any purpose. The Producing Party shall, at its cost, provide each Receiving Party and/or the shared dataroom with substitute copies, bearing appropriate redactions, of any such Discovery Material.

(c) Each Receiving Party retains the right to move for the disclosure of the redacted information.

**16. Survival.**

(a) The provisions of this Protective Order shall, absent written permission of the Producing Party or further order of the Court(s), continue to be binding throughout and after the conclusion of the Proceedings, including without limitation any appeals therefrom.

(b) When any Party receives a notice from a court as to the release, unsealing or disposal of Confidential or Highly Confidential Discovery Material submitted by that Party, but designated Confidential or Highly Confidential by another Producing Party, the Party receiving the notice shall promptly send the notice to all Parties by overnight delivery, fax or email, so as to enable the Parties to take any actions they deem appropriate. The provisions of this Section may be waived only with the written consent of the Producing Party.

**17. Disposal of Confidential and Highly Confidential Discovery Material.**

(a) Within thirty (30) days after the time for appeal of an order, judgment, or decree finally disposing of or resolving the Proceedings has expired, all persons having received Confidential or Highly Confidential Discovery Material shall, at their own cost and expense, either return such material and all copies thereof (including summaries and excerpts) to counsel for the Producing Parties or (at the election of the Receiving Party) destroy all such Confidential or Highly Confidential Discovery Material and certify that fact to the Producing Parties. Documents that have been received electronically must be electronically deleted and deleted from "trash" files; provided, however, that to the extent that Confidential or Highly Confidential Discovery Material exists in whole or in part on computer backup tapes or other not readily accessible media used for disaster recovery purposes, information from such media does not need to be restored for purposes of destroying or returning Confidential or Highly Confidential Discovery Material, but such retained information shall continue to be treated in accordance with this Protective Order.

(b) Notwithstanding the preceding paragraph, outside counsel for the Parties shall be entitled to retain court papers, deposition and court transcripts, and attorney work product that includes or summarizes Confidential Discovery Material or Highly Confidential Discovery Material provided that such outside counsel, and employees of such outside counsel, shall not disclose such court papers, deposition or trial transcripts, or attorney work product to any person except pursuant to court order or agreement with the Producing Party as to the Confidential Discovery Material or Highly Confidential Discovery Material at issue.

(c) Notwithstanding anything herein to the contrary, the obligations of this Section shall not preclude any Party or its experts or consultants from complying with document retention policies imposed by applicable law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, provided that the Party, expert or consultant provides notice of its retention of the documents to the Producing Party.

**18. Privileged Documents.**

(a) Nothing in this Protective Order shall require disclosure of information that counsel contends is protected from disclosure by solicitor-client privilege, attorney-client privilege, work-product immunity, or any other applicable privilege, immunity or protection from disclosure under any applicable law (each a "Privilege" and, collectively, the "Privileges").

(b) Consistent with Rule 502(d) of the United States Federal Rules of Evidence, if information subject to a claim of Privilege is produced, such production shall not constitute or be deemed a waiver of any claim of a Privilege that the Producing Party would otherwise be entitled to assert in the Proceedings or any other proceeding, either with respect to the produced Discovery Material or any other documents, communications, or information concerning the same subject matter. The production of information subject to a claim of Privilege is without prejudice to the right of a Producing Party to seek the return or destruction of any document as to which a claim of Privilege is later asserted.

(c) If information subject to a claim of Privilege is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of a Privilege for such information or any other information that may be protected from disclosure by Privilege. If a Party has inadvertently or mistakenly produced a document or information that is subject to a good faith claim of Privilege, upon request by the Producing Party promptly after discovery of such inadvertent or mistaken production, the document for which a claim of inadvertent production is made shall be returned within three (3) business days of such request and all copies of that document that may have been made shall be destroyed to the extent reasonably practicable, and the Receiving Party shall not use such information for any purpose.

(d) The Party returning such material may then file under seal a motion for an order compelling production of the material, but such motion shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent production, and such motion shall not quote from or attach such material. While the motion for an order compelling production is pending before the Court(s), the moving Party shall not maintain a copy of, quote from or otherwise use the material.

(e) No public disclosure of the contents of the Discovery Material as to which the claim of Privilege has been made shall occur absent order of the Court(s).

(f) If, at trial, at a hearing, at a deposition, at an examination for discovery or on a motion, a Producing Party marks for identification or offers into evidence information subject to a claim of Privilege by the Producing Party, or proffers or elicits testimonial or other evidence that incorporates or relies on information subject to a claim of Privilege, that act shall be deemed

to effect a waiver and forfeiture by the Producing Party of Privilege. The preceding sentence shall not apply to (1) proceedings to determine whether the information is subject to a claim of Privilege, or (2) information subject to a claim of Privilege that is marked for identification, offered into evidence, or incorporated in evidence proffered or elicited by a Party other than the Producing Party, or relied on by a witness proffered by a Party other than the Producing Party. By marking for identification or offering into evidence information subject to a claim of Privilege, the Producing Party shall not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter.

(g)     If information is subject to a claim of privilege ("Joint Privileged Information"), which appears on its face to be held by two or more Parties ("Joint Privilege"), a Party who claims the Joint Privilege shall not refuse to produce any such Joint Privileged Information to any other Party or Parties with whom the Joint Privilege is shared. A Party who holds the Joint Privilege may produce Joint Privileged Information only to those other Parties with whom it shares the Joint Privilege and shall not produce such Joint Privileged Information to Parties that do not share in the Joint Privilege or to a shared dataroom. If a Party who wishes to rely on Discovery Material containing Joint Privileged Information, such Party shall, without prejudice to its position on the claim of privilege, provide notice to the other Parties with whom it shares the Joint Privilege and such other Parties shall have seven days after receiving notice to seek a protective order from the Court(s) in writing and on notice to the Parties. Absent an order from the Court(s) granting such protective order, the Party seeking to rely on Discovery Material containing Joint Privileged Information shall designate such Discovery Material as "Highly Confidential" and produce it to the other Parties and/or to a shared dataroom. Disclosure to a shared dataroom or to persons permitted to view Highly Confidential Discovery Material under this Protective Order does not effect a waiver of privilege as to Parties other than the Producing Party subject to the foregoing sections. The production of such Discovery Material containing Joint Privileged Information does not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter as the Joint Privileged Information.

**19.     Effective Date and Enforceability.**

(a)     This Protective Order will become effective upon the date that it has been approved by both Courts (the "Effective Date").

(b)     Nothing in this Protective Order shall preclude any Party from seeking judicial relief, upon notice to the other Parties, with regard to any provision hereof.

(c)     No amendment or modification of this Protective Order shall be binding or enforceable unless in writing and signed by the Parties, or ordered by the Courts.

**20.     Allocation Dataroom Access**

(a)     Upon the Effective Date, all documents ("Allocation Dataroom Documents") in the electronic data site established to facilitate settlement discussions (the "Allocation Dataroom") shall be deemed produced in the Proceedings pursuant to this Protective Order, and subject to its terms, including but not limited to the provisions of Section 18.



(b) From and after the Effective Date, this Protective Order shall govern and shall supersede the provisions in prior confidentiality agreements with respect to Allocation Dataroom Documents, but only as to the Parties and any other persons or entities who are entitled to receive documents under this Protective Order (subject to any requirements herein, including, but not limited to, Section 13).

(c) The Parties shall have twenty-one (21) days following the Effective Date to designate documents in the Allocation Dataroom as Highly Confidential Discovery Material. Any Party making such designation will be required to provide new documents with the Highly Confidential legend to replace existing or to otherwise bear the cost of the designation of such documents. Until such period expires, all Parties with access to the Allocation Dataroom will treat documents therein as Highly Confidential Discovery Material.

(d) After the expiration of the 21-day period, a Party shall have the right at any time to designate such documents in the Allocation Dataroom as Highly Confidential in accordance with paragraph 10(a). Such documents will thereafter be treated as if they had been designated as Highly Confidential in the 21-day period after the Effective Date.

(e) Notwithstanding anything to the contrary herein, all documents in the Allocation Dataroom shall be deemed Confidential upon the Effective Date and will be electronically stamped with the Confidential legend. Where it is evident from the Bates Stamp which Party supplied the document to the Allocation Dataroom, that Party will be deemed the Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. Absent such evidence, the document will be deemed produced by the US Debtors, Canadian Debtors and EMEA Debtors and all such Parties shall each be considered a Producing Party with respect to such documents and be treated as a Producing Party for purposes of Subsection (f) *infra*, and Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

(f) In the event any Party objects to the designation of specifically identified documents from the Allocation Dataroom, the Producing Party shall reconsider such designation and, within ten (10) days, either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material.

**21. Intentional or Negligent Disclosure of Confidential or Highly Confidential Discovery Material.**

In the event of an alleged intentional or negligent disclosure of Highly Confidential Discovery Material or Confidential Discovery Material in violation of this Protective Order, the Parties shall first seek to resolve the alleged violation through prompt and reasonable discussion. In the event such efforts fail to promptly resolve the alleged violation, the Parties reserve the right to seek any available remedy from the Courts, including, *inter alia*, money damages, injunctive relief or any other relief as appropriate.

**22. Enforcement Pending Entry.**

The Parties agree to be bound by the terms of this Protective Order pending the entry of this Protective Order by the Courts, and any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order has been issued and entered by the Courts.

**23. Jurisdiction.**

The US Court and the Canadian Court shall retain jurisdiction and venue for the purposes of any dispute arising out of or relating to this Protective Order. For the avoidance of doubt, the Parties' obligations remain ongoing, and such jurisdiction and venue is retained even to the extent this Protective Order is utilized in connection with any arbitration proceeding.

# EXHIBIT A

I, ______________________________________, declare under penalty of perjury, the following:

I reside at ________________________________________ in the City of ______________ and State/Province of ___________________________________;

I have read the annexed Protective Order dated ____________, 2013;

I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order and consent and attorn to the jurisdiction of the United States Bankruptcy Court for the District of Delaware and the Ontario Superior Court of Justice solely for the purpose of enforcement of the provisions of the Confidentiality Protective Order and Protective Order. I will not divulge any Discovery Material to persons other than those specifically authorized by the Protective Order, and will take reasonable steps, including, but not limited to, establishing information firewalls, to prevent the inadvertent disclosure of Discovery Material to any persons not so authorized. I understand, in particular, that any Confidential or Highly Confidential Discovery Material, and any copies, excerpts or summaries thereof, or materials containing Confidential or Highly Confidential Discovery Material derived therefrom, as well as any knowledge or information derived from any of these items, may be used only for the Proceedings and may not be used to inform the purchase or sale of securities or for any other purpose, including, without limitation, any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order may result in legal action against me, such as for contempt of court or liability for monetary damages.

Dated: _______________ Signature: ____________________________________

# TAB B

# PROTECTIVE ORDER

**1. Application of this Protective Order.**

(a) This Protective Order (the "Protective Order") shall govern the participation of any person, entity or group, including, but not limited to, the Canadian Debtors,[1] EMEA Debtors, US Debtors, Committee, Bondholder Group, Monitor, Joint Administrators, CCC, Indenture Trustees, UK Pension Claimants, and Officers and Directors (the "Parties" and each a "Party") and the Parties' counsel (and, where a Party is a committee or group, counsel to each member), in discovery undertaken in connection with the litigation or arbitration (subject to any Party's right to oppose any request for arbitration on any grounds and/or to oppose the use of any Discovery Material, as defined below, in any such arbitration) of Allocation, the EMEA Claims, and the UK Pension Claims in the US and/or Canadian Court (collectively the "Proceedings"), notwithstanding anything to the contrary previously agreed to or ordered by the United States Bankruptcy Court for the District of Delaware (the "US Court") or the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" and, together with the US Court, the "Courts"), and subject to approval by both Courts.

(b) This Protective Order shall govern the Proceedings with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information produced, given or disclosed by any Party or any non-parties (in each case, a "Producing Party") to any other Party or non-party receiving or viewing such materials(in each case, "Receiving Party"), including through access to a shared dataroom (all such materials and the substance of such materials, hereinafter referred to as "Discovery Material").

**2. Highly Confidential Discovery Material.**

(a) Any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that "Highly Confidential" documents and information shall not include:

(i) information that is publicly available in substantially the same form in which it was provided;

(ii) information that was, is or becomes public knowledge, not in violation of this Protective Order;

(iii) information that is voluntarily de-designated by the Producing Party;

(iv) information that a Court order has de-designated;

(v) information rightfully acquired from an independent source without restrictions as to use; or

[1] Capitalized terms not defined herein shall have the meaning given in the Allocation Protocol.



(vi) information that is at any time independently developed by a Party without use of or reliance upon any Discovery Material.

(b) Subject to these conditions and limitations, any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i) personal information that requires the protections provided in this Protective Order, including, but not limited to, social security numbers, information about current or former employee compensation and/or benefits, health information and financial information;

(ii) information required to be kept confidential pursuant to law or regulation; or

(iii) information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party;

(all information designated as such, including the document itself as well as the information therein, the "Highly Confidential Discovery Material").

**3. Confidential Discovery Material.**

(a) Any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that Confidential information shall not include any documents or information as set forth in Section 2(a) hereof.

(b) Subject to these conditions and limitations, any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i) non-public proprietary information about a Party;

(ii) non-public financial or accounting results or data;

(iii) tax returns, any tax-related correspondence or agreements with any government, all workpapers, books and records relating to taxes, any tax opinions, records (including accounting records) relating to taxes paid or payable by the parties, all intercompany agreements related to taxes, and all financial and tax records relating to the estate that form part of a parties' general ledger or otherwise constitute accounting records, as well as drafts with respect to any of the foregoing;

(iv) information subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party; or

(v) confidential communications offered in mediation or compromise negotiations, including, but not limited to, Discovery Material bearing a designation that it is subject to Federal Rule of Evidence 408;

(all documents or information designated as such, including the document itself as well as the information therein, the "Confidential Discovery Material").

**4. Designation of Documents.**

(a) A Producing Party may designate Discovery Material as Confidential Discovery Material by applying the legend "Confidential" to each page or portion containing any Confidential Discovery Material.

(b) A Producing Party may designate Discovery Material as Highly Confidential Discovery Material by applying the legend "Highly Confidential" to each page or portion containing any Highly Confidential Discovery Material.

(c) In the case of electronically produced information, the "Confidential" or "Highly Confidential" legend, if any, shall be printed on the cover or container of the disk, tape, or other medium in which the electronic form data is stored, and the "Confidential" or "Highly Confidential" legend shall be applied, by electronic means to each electronic document or other electronically stored information containing any Confidential or Highly Confidential Discovery Material, unless such electronic materials are produced in native format. If produced in native format, such materials will be produced without alteration along with a corresponding Bates-numbered slipsheet bearing the "Confidential" or "Highly Confidential" legend.

(d) The failure to designate a document as "Confidential" or "Highly Confidential" does not constitute a waiver of such claim, and a Producing Party may so designate a document after such document has been produced in accordance with Section 10, with the effect that such document is subject thereafter to the protections of this Protective Order.

(e) At the request of a Party (the "Requesting Party"), a Producing Party shall designate as Confidential or Highly Confidential Discovery Material containing information of the Requesting Party that the Requesting Party reasonably believes in good faith meets any of the criteria for such designation. With respect to Discovery Material designated as Confidential or Highly Confidential Discovery Material pursuant to request, the Requesting Party shall thereafter be deemed a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. The costs of providing new copies of such re-designated documents to each Receiving Party and/or a shared dataroom shall be borne by the Requesting Party, and the "Confidential" or "Highly Confidential" legend on such copies must clearly indicate the Party who requested the designation.

(f) A Party may designate as Confidential or Highly Confidential Discovery Material produced by another Party pursuant to subsection (e), even if such Discovery Material has already been designated as Confidential or Highly Confidential. If more than one Party designates the same Discovery Material as Confidential or Highly Confidential, all such Parties shall be considered a Producing Party with respect to such Discovery Material and be treated as a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order.

For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

**5. Treatment of Highly Confidential Information.**

(a) Any information designated as Highly Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b) Provided that disclosure is not otherwise prohibited by this Protective Order, and subject to Section 7(d), a Receiving Party shall only disclose Highly Confidential Discovery Material to:

(i) current employees, officers and directors of a Receiving Party who previously had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material;

(ii) former employees of a Receiving Party who are currently retained by that Party as consultants or independent contractors who during their employment with the Receiving Party had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material provided that they comply with the requirements of Section 13 hereof;

(iii) court-appointed Monitors, Trustees and Administrators and their respective staffs, and for the US Debtors, the employees of RLKS Executive Solutions LLC and the employees of Avidity Partners, LLC;

(iv) outside or in-house counsel for the Parties or outside or in-house counsel for members of a committee or group (where a Party is a committee or group), and legal assistants, secretaries, staff or agents and consultants working with or for such counsel, but only to the extent that it is reasonably necessary to share Highly Confidential Discovery Material;

(v) litigation support personnel, including outside copying, scanning and coding services and court reporters;

(vi) persons expected to be deponents, trial witnesses or hearing witnesses in the Proceedings and counsel to such persons, provided that counsel providing the Highly Confidential Discovery Material has a good-faith basis for believing that such witnesses had prior, rightful access to or knowledge of the Highly Confidential Discovery Material, and provided that counsel ascertain as soon as practicable whether such witnesses had such access or knowledge, and provided that upon the first indication that such witnesses did not have such access or knowledge, counsel must immediately refrain from any further disclosure to such witnesses and procure the return or destruction of such Highly Confidential Discovery Material;



(vii)    witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and/or party representatives designated for discovery examination pursuant to the Ontario Rule of Civil Procedure and/or alternative procedures agreed to by the Parties;

(viii)    any experts retained for the purpose of providing advice and assistance to outside counsel of record and/or giving evidence in the Proceedings, including their staff, provided that they comply with the requirements of Section 13 hereof;

(ix)    personnel of the Courts;

(x)    any other person upon written agreement of the Producing Party, provided that he or she complies with the requirements of Section 13 hereof;

(xi)    any other person upon order of the Court(s) and upon such conditions as may be imposed by the Court(s); and

(xii)    any other person, as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, subject to Section 9 of this Protective Order.

(c)    In addition to the foregoing, draft or final pleadings that cite to or quote Highly Confidential Discovery Material (but not any attachments thereto designated as Highly Confidential) may be shared with non-attorney representatives from each Party (or, where the Party is a committee or group, non-attorney representatives of each committee or group, who represent such member or group in committee or group matters), provided that they comply with the requirements of Section 13 hereof, but only to the extent that sharing such draft or final pleadings that cite to or quote Highly Confidential Discovery Material is necessary to render advice to or receive guidance or approval from the Party in the Proceedings.

(d)    Any Receiving Party may request leave of a Producing Party to show Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses in the Proceedings by providing notice to the Producing Party of the Highly Confidential Discovery Material the Receiving Party seeks to use and the parties shall use their best efforts within five business days to determine whether such material may be disclosed by the Receiving Party to such persons while protecting the Producing Party's need for confidentiality, including, but not limited to, considering whether portions of such material can be redacted and re-evaluating whether such material must be protected as Highly Confidential.  In the event the Producing Party and the Receiving Party cannot resolve an issue concerning the use of Highly Confidential Discovery Material, the matter may be presented to the Courts for resolution on an expedited basis.

(e)    Persons receiving Highly Confidential Discovery Material pursuant to this Section shall not copy or disclose such Highly Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(f) Treatment of Highly Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

**6. Treatment of Confidential Information.**

(a) Any information designated as Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b) Provided that disclosure is not otherwise prohibited by this Protective Order and subject to Section 7(d), a Receiving Party shall only disclose Confidential Discovery Material to:

(i) parties or persons to whom Highly Confidential Discovery Material may be disclosed as set forth in Section 5;

(ii) current employees, officers, or directors of a Receiving Party (including current employees, officers or directors of members of a committee or group that is a Party provided that they comply with the requirements of Section 13 hereof), provided that disclosure is reasonably necessary to the Proceedings;

(iii) former employees of a Receiving Party, provided that disclosure is reasonably necessary to the Proceedings and that they comply with the requirements of Section 13 hereof; or

(iv) persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons.

(c) Persons receiving Confidential Discovery Material pursuant to this Section shall not copy or disclose such Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(d) Treatment of Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

**7. Permitted Purposes.**

(a) Confidential or Highly Confidential Discovery Material shall not be made public by any Party, shall be used only by persons permitted access to it per this Protective Order and shall be disclosed only to persons specified in this Protective Order.

(b) All Discovery Material (except such materials publicly available in substantially the same form), whether or not designated as Confidential or Highly Confidential Discovery Material, shall be used by Receiving Parties solely in connection with the Proceedings (including appeals), and not in connection with any other litigation, judicial or regulatory proceeding or for any business, commercial, competitive, personal or other purpose except as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory



authority or court order, provided, however, that this Protective Order shall not prohibit the UK Pension Claimants from complying with the Beddoe proceeding pending under U.K. law in the English High Court by disclosing Discovery Material to the Beddoe court and counsel (including barristers and solicitors) for the representative beneficiary in those proceedings ~~(provided that such counsel is informed of the terms of this Protective Order and the UK Pension Claimants make a good faith effort to have such counsel comply with the requirements of Section 13)~~ for purposes of obtaining periodic directions from the Beddoe court with respect to the Proceedings, provided that the Discovery Material is filed under seal and not available as a matter of public record.

(c) Any summary, compilation, notes, memoranda, analysis or copy containing Confidential or Highly Confidential Discovery Material, and any electronic image or database containing Confidential or Highly Confidential Discovery Material shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, memoranda, analysis, copy, electronic image or database is derived.

(d) This Protective Order has no effect upon, and shall not apply to, a Party's use of its own Confidential or Highly Confidential Discovery Material, including information designated as such under Section 4(e) and information that was, prior to disclosure, rightfully in the possession or knowledge of the Party, for any purpose.

(e) This Protective Order shall not preclude any Party from showing any Confidential or Highly Confidential Discovery Material or disclosing information derived therefrom at a deposition or examination for discovery to any witness, provided that, other than the witness, only those persons who are authorized by the terms of this Agreement to receive the Confidential or Highly Confidential Discovery Material to be disclosed to the witness are present at relevant portions of the deposition and the procedures provided for in Section 12 are in place.

**8. Court Filings.**

(a) Confidential or Highly Confidential Discovery Material shall not be filed in the public record absent the consent of the Producing Party or an order of the Court(s) so permitting.

(b) If a Party wishes to file or otherwise submit to the Court(s) any documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material, including, but not limited to, pleadings, memoranda, transcripts, and discovery responses, such Party may redact the Confidential or Highly Confidential Discovery Material. If the nature of the Highly Confidential Information makes redaction unreasonable or impossible, the Party may file the documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material under seal.

(c) The entry of this Protective Order by the Courts shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any further order of either Court required.

(d) The Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing. The Parties reserve all rights with respect to trial procedures.

**9. Compelled Disclosure.**

(a) If a Receiving Party is subpoenaed in another action or proceeding, served with a document demand, or otherwise required or compelled by law, regulation, government action or other process (any of the foregoing, a "Demand") to produce Confidential or Highly Confidential Discovery Material, the Receiving Party shall, if legally permitted, (i) give prompt written notice by overnight delivery, fax or email the earlier of five (5) business days of receipt, or fourteen (14) days prior to the response date of such Demand to counsel for the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material, provided, however, that such notice shall be given as soon as practicable if the response date of the demand is within fourteen (14) business days of receipt by the Receiving Party; and (ii) refrain from producing any Confidential or Highly Confidential Discovery Material in response to such Demand until the earlier of receipt of written notice from the Producing Party that it does not object to production of the Confidential or Highly Discovery Material, or resolution of any objection asserted by the Producing Party either by agreement or by final order of the Court(s) with jurisdiction over the objection of the Producing Party.

(b) The burden of opposing the enforcement of the Demand shall fall solely upon the Producing Party.

(c) Should a Producing Party neither provide written notice to the Receiving Party that it does not object to production of the Confidential or Highly Discovery Material nor submit a timely objection seeking an order that the Demand not be complied with and serve such objection upon the Receiving Party prior to production pursuant to the Demand, the Receiving Party shall be permitted to produce documents responsive to the Demand on the Demand's response date.

(d) Subject to the provisions of this Section, compliance by the Receiving Party with any order directing production pursuant to a Demand of any Confidential or Highly Confidential Discovery Material shall not constitute a violation of this Protective Order.

(e) Nothing herein shall be construed as requiring the Receiving Party or anyone else covered by this Protective Order to challenge or appeal any order directing production of Confidential or Highly Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order.

(f) The provisions of this Section shall apply to examinations conducted by bank or other regulators to which a Party may be subject, which may include examinations of Confidential or Highly Confidential Discovery Material received by any Party and its representatives. Any such disclosure shall be limited to such portions of the Confidential or Highly Confidential Discovery Material that the applicable Party's legal counsel advises is required under the subpoena, order or process, or request or demand by a regulatory authority,

organization of regulators or self-regulatory authority received by that Party (each a "Regulator Demand"). With respect to Regulator Demands for Confidential or Highly Confidential Discovery Material, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of any such Regulator Demand before the disclosure of such Confidential or Highly Confidential Discovery Material to such regulator, if the applicable Party is entitled to do so and if practicable. Otherwise, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of such Regulator Demand after the disclosure of any Confidential Information to regulator, if the applicable Party is entitled to do so. Nothing herein shall obligate any Party to prohibit or restrict any regulator's prompt access, in violation of any law, regulation, order or other obligation applicable to such Party, to documents or information in the custody, possession or control of such Party its representatives.

**10. No Waiver.**

(a) If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced should be designated as Confidential or Highly Confidential, the Producing Party may apprise the Receiving Parties in writing, and such designated Discovery Material will thereafter be treated as Confidential or Highly Confidential Discovery Material under the terms of this Protective Order, provided, however, that the Producing Party shall, at its cost, produce to each Receiving Party and/or to the shared dataroom substitute copies, bearing the legend "Confidential" or "Highly Confidential," of any such Discovery Material at which time the Receiving Party shall promptly return to the Producing Party or (at the election of the Receiving Party) destroy the previously produced copies of such substituted Discovery Material and shall have no right to access such substituted Discovery Material electronically.

(b) This Protective Order shall not prevent any Party from applying to the Court(s) in writing and on notice to the Parties for relief from this Protective Order or from any provision(s) thereof, or from applying to the Court(s) in writing and on notice to the Parties for further or additional protective orders.

(c) Producing or receiving Confidential or Highly Confidential Discovery Material or otherwise complying with the terms of this Protective Order shall not:

(i) prejudice in any way a Producing Party's rights to object to the authenticity or admissibility into evidence of any testimony or other evidence;

(ii) prejudice in any way the rights of the Parties to object to the production of documents that they consider not subject to discovery, or operate as an admission by any Party in the context of any other litigation or proceeding that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;

(iii) prejudice in any way the rights of a Party to seek a determination by the Court(s) whether any Discovery Material should be treated as Confidential

88

or Highly Confidential Discovery Material or subject to the terms of this Protective Order, provided that a Party seeking to challenge the designation of any Discovery Material as Confidential or Highly Confidential shall be obligated to meet and confer in good faith prior to seeking judicial resolution and follow the procedures provided in Section 11; or

(iv) prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided herein with respect to any particular Discovery Material.

**11. Objections to Designation.**

(a) Any Party objecting to the designation of any particular Discovery Material or testimony as Confidential or Highly Confidential Discovery Material shall so inform the Producing Party, stating the grounds of the objection, and, unless provided otherwise by the discovery plan adopted by the Courts, they shall have seven (7) business days to attempt to resolve the objection, at the end of which the Party objecting to the designation may seek a ruling from the Court(s), on no less than three (3) business days' notice to the Producing Party, that such information should not be treated as Confidential or Highly Confidential Discovery Material, provided that no Confidential or Highly Confidential Discovery Material shall be filed in the public record or disclosed other than in accordance with the terms of this Protective Order prior to such a determination by the Court(s), and provided further that the burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure.

(b) Each Party hereby agrees that it will not contest a Party's request for expedited consideration of any relief sought from the Court(s) pursuant to this Section.

**12. Use in Depositions / Examinations for Discovery.**

(a) If Confidential or Highly Confidential Discovery Material is utilized in a deposition, including a deposition of a party representative, examination for discovery or other recorded testimony, the Producing Party of the Confidential or Highly Confidential Discovery Material may designate the portion of the transcript relating to the Confidential or Highly Confidential Discovery Material as Confidential or Highly Confidential.

(b) Any deponent or examinee for discovery or his or her counsel may designate all or part of the transcript of a deposition or examination for discovery as Highly Confidential or Confidential. Such deponent or examinee will be the Producing Party of the deposition or examination testimony for purposes of this Protective Order, except that testimony about Confidential or Highly Confidential Discovery Material for which the deponent or examinee is not a Producing Party shall also be deemed to have been produced by the Producing Party of the Confidential or Highly Confidential Discovery Material discussed.

(c) Designation of all or part of a transcript as Highly Confidential or Confidential may be made on the record during the deposition or examination or may be made by giving written notice to the court reporter and counsel for all Parties within seven (7) business days after

receiving the transcript from the court reporter. All deposition or examination transcripts will be considered Confidential for the first seven (7) business days after receiving the transcript from the court reporter, unless designated otherwise by agreement of the Parties, by the Producing Party of Confidential or Highly Confidential Discovery Material discussed therein and/or by the deponent or examinee, as the case may be.

(d)     The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition.

**13.     Disclosure to Certain Firms and Individuals.**

(a)     Prior to disclosure of Confidential or Highly Confidential Discovery Material pursuant to Sections 5(b)(ii), (viii) and (x) (including as incorporated by reference in Section 6(b)(i) hereof); 5(c) and 6(b)(ii) and (iii) hereof, counsel for the Receiving Party shall provide a copy of this Protective Order to the person or the representative of the firm to whom disclosure is intended and such person or representative must execute a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

(b)     A Receiving Party shall not disclose any Confidential or Highly Confidential Discovery Material to any holder of, or the investment manager for holders of, debt securities issued and/or guaranteed by the Canadian Debtors, EMEA Debtors or US Debtors, or to any officers, employees, counsel, accountants, advisors or agents of the Receiving Party that might be involved in acquiring any assets of or trading in claims against (including debt securities issued by any of) the Canadian Debtors, EMEA Debtors or US Debtors, unless such person or the representative of the person or firm to whom disclosure is intended executes a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

**14.     Third-Party Beneficiaries.**

Third parties that produce documents for use in the Proceedings, either voluntarily or pursuant to a subpoena or in response to discovery requests in connection with the Proceedings, are intended third-party beneficiaries of this Protective Order and shall have the right to designate materials as Confidential or Highly Confidential Discovery Material in accordance with the terms hereof and shall otherwise have the same rights and responsibilities as a Producing Party.

**15.     Redaction of Personal Information.**

(a)     Each Producing Party may redact from Discovery Material it produces, whether or not such Discovery Material are designated Confidential or Highly Confidential, such personal information (e.g., social security numbers, home addresses, bank account information) as the Producing Party deems appropriate, such as information required not to be disclosed by the data protection, privacy or similar laws of the Producing Party's jurisdiction.

(b)     If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced contains personal information to which a non-disclosure



obligation applies, the Producing Party may apprise the Receiving Parties in writing. Promptly after receiving written notice of an inadvertent production of personal information, each Receiving Party shall return to the Producing Party or (at the election of the Receiving Party) destroy the Discovery Material as to which the claim of inadvertent production has been made and shall not use the inadvertently produced personal information for any purpose. The Producing Party shall, at its cost, provide each Receiving Party and/or the shared dataroom with substitute copies, bearing appropriate redactions, of any such Discovery Material.

(c) Each Receiving Party retains the right to move for the disclosure of the redacted information.

**16. Survival.**

(a) The provisions of this Protective Order shall, absent written permission of the Producing Party or further order of the Court(s), continue to be binding throughout and after the conclusion of the Proceedings, including without limitation any appeals therefrom.

(b) When any Party receives a notice from a court as to the release, unsealing or disposal of Confidential or Highly Confidential Discovery Material submitted by that Party, but designated Confidential or Highly Confidential by another Producing Party, the Party receiving the notice shall promptly send the notice to all Parties by overnight delivery, fax or email, so as to enable the Parties to take any actions they deem appropriate. The provisions of this Section may be waived only with the written consent of the Producing Party.

**17. Disposal of Confidential and Highly Confidential Discovery Material.**

(a) Within thirty (30) days after the time for appeal of an order, judgment, or decree finally disposing of or resolving the Proceedings has expired, all persons having received Confidential or Highly Confidential Discovery Material shall, at their own cost and expense, either return such material and all copies thereof (including summaries and excerpts) to counsel for the Producing Parties or (at the election of the Receiving Party) destroy all such Confidential or Highly Confidential Discovery Material and certify that fact to the Producing Parties. Documents that have been received electronically must be electronically deleted and deleted from "trash" files; provided, however, that to the extent that Confidential or Highly Confidential Discovery Material exists in whole or in part on computer backup tapes or other not readily accessible media used for disaster recovery purposes, information from such media does not need to be restored for purposes of destroying or returning Confidential or Highly Confidential Discovery Material, but such retained information shall continue to be treated in accordance with this Protective Order.

(b) Notwithstanding the preceding paragraph, outside counsel for the Parties shall be entitled to retain court papers, deposition and court transcripts, and attorney work product that includes or summarizes Confidential Discovery Material or Highly Confidential Discovery Material provided that such outside counsel, and employees of such outside counsel, shall not disclose such court papers, deposition or trial transcripts, or attorney work product to any person except pursuant to court order or agreement with the Producing Party as to the Confidential Discovery Material or Highly Confidential Discovery Material at issue.

(c) Notwithstanding anything herein to the contrary, the obligations of this Section shall not preclude any Party or its experts or consultants from complying with document retention policies imposed by applicable law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, provided that the Party, expert or consultant provides notice of its retention of the documents to the Producing Party.

**18. Privileged Documents.**

(a) Nothing in this Protective Order shall require disclosure of information that counsel contends is protected from disclosure by solicitor-client privilege, attorney-client privilege, work-product immunity, or any other applicable privilege, immunity or protection from disclosure under any applicable law (each a "Privilege" and, collectively, the "Privileges").

(b) Consistent with Rule 502(d) of the United States Federal Rules of Evidence, if information subject to a claim of Privilege is produced, such production shall not constitute or be deemed a waiver of any claim of a Privilege that the Producing Party would otherwise be entitled to assert in the Proceedings or any other proceeding, either with respect to the produced Discovery Material or any other documents, communications, or information concerning the same subject matter. The production of information subject to a claim of Privilege is without prejudice to the right of a Producing Party to seek the return or destruction of any document as to which a claim of Privilege is later asserted.

(c) If information subject to a claim of Privilege is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of a Privilege for such information or any other information that may be protected from disclosure by Privilege. If a Party has inadvertently or mistakenly produced a document or information that is subject to a good faith claim of Privilege, upon request by the Producing Party promptly after discovery of such inadvertent or mistaken production, the document for which a claim of inadvertent production is made shall be returned within three (3) business days of such request and all copies of that document that may have been made shall be destroyed to the extent reasonably practicable, and the Receiving Party shall not use such information for any purpose.

(d) The Party returning such material may then file under seal a motion for an order compelling production of the material, but such motion shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent production, and such motion shall not quote from or attach such material. While the motion for an order compelling production is pending before the Court(s), the moving Party shall not maintain a copy of, quote from or otherwise use the material.

(e) No public disclosure of the contents of the Discovery Material as to which the claim of Privilege has been made shall occur absent order of the Court(s).

(f) If, at trial, at a hearing, at a deposition, at an examination for discovery or on a motion, a Producing Party marks for identification or offers into evidence information subject to a claim of Privilege by the Producing Party, or proffers or elicits testimonial or other evidence that incorporates or relies on information subject to a claim of Privilege, that act shall be deemed

to effect a waiver and forfeiture by the Producing Party of Privilege. The preceding sentence shall not apply to (1) proceedings to determine whether the information is subject to a claim of Privilege, or (2) information subject to a claim of Privilege that is marked for identification, offered into evidence, or incorporated in evidence proffered or elicited by a Party other than the Producing Party, or relied on by a witness proffered by a Party other than the Producing Party. By marking for identification or offering into evidence information subject to a claim of Privilege, the Producing Party shall not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter.

(g)     If information is subject to a claim of privilege ("Joint Privileged Information"), which appears on its face to be held by two or more Parties ("Joint Privilege"), a Party who claims the Joint Privilege shall not refuse to produce any such Joint Privileged Information to any other Party or Parties with whom the Joint Privilege is shared. A Party who holds the Joint Privilege may produce Joint Privileged Information only to those other Parties with whom it shares the Joint Privilege and shall not produce such Joint Privileged Information to Parties that do not share in the Joint Privilege or to a shared dataroom. If a Party who wishes to rely on Discovery Material containing Joint Privileged Information, such Party shall, without prejudice to its position on the claim of privilege, provide notice to the other Parties with whom it shares the Joint Privilege and such other Parties shall have seven days after receiving notice to seek a protective order from the Court(s) in writing and on notice to the Parties. Absent an order from the Court(s) granting such protective order, the Party seeking to rely on Discovery Material containing Joint Privileged Information shall designate such Discovery Material as "Highly Confidential" and produce it to the other Parties and/or to a shared dataroom. Disclosure to a shared dataroom or to persons permitted to view Highly Confidential Discovery Material under this Protective Order does not effect a waiver of privilege as to Parties other than the Producing Party subject to the foregoing sections. The production of such Discovery Material containing Joint Privileged Information does not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter as the Joint Privileged Information.

**19.    Effective Date and Enforceability.**

(a)     This Protective Order will become effective upon the date that it has been approved by both Courts (the "Effective Date").

(b)     Nothing in this Protective Order shall preclude any Party from seeking judicial relief, upon notice to the other Parties, with regard to any provision hereof.

(c)     No amendment or modification of this Protective Order shall be binding or enforceable unless in writing and signed by the Parties, or ordered by the Courts.

**20.    Allocation Dataroom Access**

(a)     Upon the Effective Date, all documents ("Allocation Dataroom Documents") in the electronic data site established to facilitate settlement discussions (the "Allocation Dataroom") shall be deemed produced in the Proceedings pursuant to this Protective Order, and subject to its terms, including but not limited to the provisions of Section 18.



(b)     From and after the Effective Date, this Protective Order shall govern and shall supersede the provisions in prior confidentiality agreements with respect to Allocation Dataroom Documents, but only as to the Parties and any other persons or entities who are entitled to receive documents under this Protective Order (subject to any requirements herein, including, but not limited to, Section 13).

(c)     The Parties shall have twenty-one (21) days following the Effective Date to designate documents in the Allocation Dataroom as Highly Confidential Discovery Material. Any Party making such designation will be required to provide new documents with the Highly Confidential legend to replace existing or to otherwise bear the cost of the designation of such documents. Until such period expires, all Parties with access to the Allocation Dataroom will treat documents therein as Highly Confidential Discovery Material.

(d)     After the expiration of the 21-day period, a Party shall have the right at any time to designate such documents in the Allocation Dataroom as Highly Confidential in accordance with paragraph 10(a). Such documents will thereafter be treated as if they had been designated as Highly Confidential in the 21-day period after the Effective Date.

(e)     Notwithstanding anything to the contrary herein, all documents in the Allocation Dataroom shall be deemed Confidential upon the Effective Date and will be electronically stamped with the Confidential legend. Where it is evident from the Bates Stamp which Party supplied the document to the Allocation Dataroom, that Party will be deemed the Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. Absent such evidence, the document will be deemed produced by the US Debtors, Canadian Debtors and EMEA Debtors and all such Parties shall each be considered a Producing Party with respect to such documents and be treated as a Producing Party for purposes of Subsection (f) *infra*, and Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

(f)     In the event any Party objects to the designation of specifically identified documents from the Allocation Dataroom, the Producing Party shall reconsider such designation and, within ten (10) days, either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material.

**21.     Intentional or Negligent Disclosure of Confidential or Highly Confidential Discovery Material.**

In the event of an alleged intentional or negligent disclosure of Highly Confidential Discovery Material or Confidential Discovery Material in violation of this Protective Order, the Parties shall first seek to resolve the alleged violation through prompt and reasonable discussion. In the event such efforts fail to promptly resolve the alleged violation, the Parties reserve the right to seek any available remedy from the Courts, including, *inter alia*, money damages, injunctive relief or any other relief as appropriate.



**22.    Enforcement Pending Entry.**

The Parties agree to be bound by the terms of this Protective Order pending the entry of this Protective Order by the Courts, and any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order has been issued and entered by the Courts.

**23.    Jurisdiction.**

The US Court and the Canadian Court shall retain jurisdiction and venue for the purposes of any dispute arising out of or relating to this Protective Order. For the avoidance of doubt, the Parties' obligations remain ongoing, and such jurisdiction and venue is retained even to the extent this Protective Order is utilized in connection with any arbitration proceeding.

**EXHIBIT A**

I, ______________________________, declare under penalty of perjury, the following:

I reside at ______________________________ in the City of ____________ and State/Province of ______________________________;

I have read the annexed Protective Order dated __________, 2013;

I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order and consent and attorn to the jurisdiction of the United States Bankruptcy Court for the District of Delaware and the Ontario Superior Court of Justice solely for the purpose of enforcement of the provisions of the Confidentiality Protective Order and Protective Order. I will not divulge any Discovery Material to persons other than those specifically authorized by the Protective Order, and will take reasonable steps, including, but not limited to, establishing information firewalls, to prevent the inadvertent disclosure of Discovery Material to any persons not so authorized. I understand, in particular, that any Confidential or Highly Confidential Discovery Material, and any copies, excerpts or summaries thereof, or materials containing Confidential or Highly Confidential Discovery Material derived therefrom, as well as any knowledge or information derived from any of these items, may be used only for the Proceedings and may not be used to inform the purchase or sale of securities or for any other purpose, including, without limitation, any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order may result in legal action against me, such as for contempt of court or liability for monetary damages.

Dated: ______________ Signature: ______________________________

# TAB C



Court File No. 09-CL-7950

*ONTARIO*

SUPERIOR COURT OF JUSTICE

(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*

R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

# CCC PROPOSED PROTECTIVE ORDER

(Filed pursuant to May 16, 2013 order of Morawetz J.)

97

CCC blackline of Monitor's 10/5/13 Draft

Deleted: 10/5/13

May 14, 2013

**PROTECTIVE ORDER**

**1. Application of this Protective Order.**

(a) This Protective Order (the "Protective Order") shall govern the participation of any person, entity or group, including, but not limited to, the Canadian Debtors,[1] EMEA Debtors, US Debtors, Unsecured Creditors Committee, Bondholder Group, Monitor, Joint Administrators, CCC, Indenture Trustees, UK Pension Claimants, and Officers and Directors (the "Parties" and each a "Party"), in discovery undertaken in connection with the litigation or arbitration (subject to any Party's right to oppose any request for arbitration on any grounds and/or to oppose the use of any Discovery Material, as defined below, in any such arbitration) of Allocation, the EMEA Claims, and the UK Pension Claims in the US and/or Canadian Court (collectively the "Proceedings"), notwithstanding anything to the contrary previously agreed to or ordered by the United States Bankruptcy Court for the District of Delaware (the "US Court") or the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" and, together with the US Court, the "Courts"), and subject to approval by both Courts.

(b) This Protective Order shall govern the Proceedings with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information produced, given or disclosed by any Party or any non-parties (in each case, a "Producing Party") to any other Party or non-party receiving or viewing such materials(in each case, "Receiving Party"), including through access to a shared dataroom (all such materials and the substance of such materials, hereinafter referred to as "Discovery Material").

(c) This Protective Order shall supersede all prior existing confidentiality and non-disclosure agreements among and between the Parties, which are hereby terminated, and all materials disclosed pursuant to those agreements shall be deemed to have been produced pursuant to this Protective Order and subject to the provisions hereof.

**2. Highly Confidential Discovery Material.**

(a) Any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that "Highly Confidential" documents and information shall not include:

(i) information that is publicly available in substantially the same form in which it was provided;

(ii) information that was, is or becomes public knowledge, not in violation of this Protective Order;

[1] Capitalized terms not defined herein shall have the meaning given in the Allocation Protocol.

98

(iii) information that is voluntarily de-designated by the Producing Party;

(iv) information that a Court order has de-designated;

(v) information rightfully acquired from an independent source without restrictions as to use;

Deleted: or

(vi) information that is at any time independently developed by a Party without use of or reliance upon any Discovery Material; or

(vii) information regarding the Canadian Debtors, the US Debtors, and the EMEA Debtors which is not subject to a nondisclosure agreement with a third party.

Formatted: Bullets and Numbering

(b) Subject to these conditions and limitations, any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i) information required to be kept confidential pursuant to law or regulation in a Party's jurisdiction; or

Deleted: <#>personal information that requires the protections provided in this Protective Order, including, but not limited to, social security numbers, information about current or former employee compensation and/or benefits, health information and financial information; ¶

Formatted: Bullets and Numbering

(ii) information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party;

(all information designated as such, including the document itself as well as the information therein, the "Highly Confidential Discovery Material").

**3. Confidential Discovery Material.**

(a) Any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that Confidential information shall not include any documents or information as set forth in Section 2(a)(i)-2(a)(vi) hereof.

(b) Subject to these conditions and limitations, any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i) non-public proprietary information about a Party;

(ii) ;

Deleted: non-public financial or accounting results or data

(iii) ;

Deleted: tax returns, any tax-related correspondence or agreements with any government, all workpapers, books and records relating to taxes, any tax opinions, records (including accounting records) relating to taxes paid or payable by the parties, all intercompany agreements related to taxes, and all financial and tax records relating to the estate that form part of a parties' general ledger or otherwise constitute accounting records, as well as drafts with respect to any of the foregoing

(iv) information subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party; or

(v) information that is protected by Federal Rule of Evidence 408;

99

(all documents or information designated as such, including the document itself as well as the information therein, the "Confidential Discovery Material").

**4. Designation of Documents.**

(a) A Producing Party may designate Discovery Material as Confidential Discovery Material by applying the legend "Confidential" to each page or portion containing any Confidential Discovery Material and the reason the page or portion is being designated as Confidential.

(b) A Producing Party may designate Discovery Material as Highly Confidential Discovery Material by applying the legend "Highly Confidential" to each page or portion containing any Highly Confidential Discovery Material and the reason the page or portion is being designated as Highly Confidential.

Formatted: Bullets and Numbering

(c) In the case of electronically produced information, the "Confidential" or "Highly Confidential" legend, if any, shall be printed on the cover or container of the disk, tape, or other medium in which the electronic form data is stored, and the "Confidential" or "Highly Confidential" legend shall be applied, as well as the reason that the electronic document or electronically stored information is being designated as Confidential or Highly Confidential, by electronic means to each electronic document or other electronically stored information containing any Confidential or Highly Confidential Discovery Material, unless such electronic materials are produced in native format. If produced in native format, such materials will be produced without alteration along with a corresponding Bates-numbered slipsheet bearing the "Confidential" or "Highly Confidential" legend as well as the reason that the material is being designated as Confidential or Highly Confidential.

Deleted: <#>¶

(d) The failure to designate a document as "Confidential" or "Highly Confidential" does not constitute a waiver of such claim, and a Producing Party may so designate a document after such document has been produced in accordance with Section 10, with the effect that such document is subject thereafter to the protections of this Protective Order.

(e) At the request of a Party (the "Requesting Party"), a Producing Party shall designate as Confidential or Highly Confidential Discovery Material containing information of the Requesting Party that the Requesting Party reasonably believes in good faith meets any of the criteria for such designation. With respect to Discovery Material designated as Confidential or Highly Confidential Discovery Material pursuant to request, the Requesting Party shall thereafter be deemed a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12, 15-17 and 20 of this Protective Order. The costs of providing new copies of such re-designated documents to each Receiving Party and/or a shared dataroom shall be borne by the Requesting Party, and the "Confidential" or "Highly Confidential" legend on such copies must clearly indicate the Party who requested the designation.

(f) A Party may designate as Confidential or Highly Confidential Discovery Material produced by another Party pursuant to subsection (e), even if such Discovery Material has already been designated as Confidential or Highly Confidential. If more than one Party designates the same Discovery Material as Confidential or Highly Confidential, all such Parties shall be considered a Producing Party with respect to such Discovery Material and be treated as a

Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12, 15-17 and 20 of this Protective Order. For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

**5. Treatment of Highly Confidential Information.**

(a) Any information designated as Highly Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b) Provided that disclosure is not otherwise prohibited by this Protective Order, and subject to Section 7(d), a Receiving Party shall only disclose Highly Confidential Discovery Material to:

(i) current employees, officers and directors of a Receiving Party who previously had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material;

(ii) former employees of a Receiving Party who are currently retained by that Party as consultants or independent contractors who during their employment with the Receiving Party had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material provided that they comply with the requirements of Section 13 hereof;

(iii) court-appointed Monitors, Trustees and Administrators and their respective staffs, and for the US Debtors, the employees of RLKS Executive Solutions LLC and the employees of Avidity Partners, LLC;

(iv) outside or in-house counsel for the Parties or outside or in-house counsel for members of a committee or group (where a Party is a committee or group), and legal assistants, secretaries, staff or agents and consultants working with or for such counsel, but only to the extent that it is reasonably necessary to share Highly Confidential Discovery Material;

(v) litigation support personnel, including outside copying, scanning and coding services and court reporters;

(vi) persons expected to be deponents, trial witnesses or hearing witnesses in the Proceedings and counsel to such persons, provided that counsel providing the Highly Confidential Discovery Material has a good-faith basis for believing that such witnesses had prior, rightful access to or knowledge of the Highly Confidential Discovery Material, and provided that counsel ascertain as soon as practicable whether such witnesses had such access or knowledge, and provided that upon the first indication that such witnesses did not have such access or knowledge, counsel must immediately refrain from any further disclosure to such witnesses and procure the return or destruction of such Highly Confidential Discovery Material;

\O\

(vii) witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and/or party representatives designated for discovery examination pursuant to the Ontario Rule of Civil Procedure and/or alternative procedures agreed to by the Parties;

(viii) experts, professional firms or persons retained for the purpose of providing advice and assistance to outside counsel of record and/or giving evidence in the Proceedings, including their staff, provided that they comply with the requirements of Section 13 hereof;

Deleted: any

Deleted:

(ix) non-attorney representatives from each Party (or, where the Party is a committee, non-attorney representatives of each committee member, who represent such member in committee matters), provided that they comply with the requirements of Section 13 hereof.

Formatted: Bullets and Numbering

(x) personnel of the Courts;

(xi) any other person upon written agreement of the Producing Party, provided that he or she complies with the requirements of Section 13 hereof;

(xii) any other person upon order of the Court(s) and upon such conditions as may be imposed by the Court(s); and

(xiii) any other person, as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, subject to Section 9 of this Protective Order.

(c) In addition to the foregoing, draft or final pleadings that cite to or quote Highly Confidential Discovery Material (but not any attachments thereto designated as Highly Confidential) may be shared with non-attorney representatives from each Party (or, where the Party is a committee, non-attorney representatives of each committee member, who represent such member in committee matters), provided that they comply with the requirements of Section 13 hereof, but only to the extent that sharing such draft or final pleadings that cite to or quote Highly Confidential Discovery Material is necessary to render advice to or receive guidance or approval from the Party in the Proceedings.

(d) Any Receiving Party may request leave of a Producing Party to show Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses in the Proceedings by providing notice to the Producing Party of the Highly Confidential Discovery Material the Receiving Party seeks to use and the parties shall use their best efforts within five business days to determine whether such material may be disclosed by the Receiving Party to such persons while protecting the Producing Party's need for confidentiality, including, but not limited to, considering whether portions of such material can be redacted and re-evaluating whether such material must be protected as Highly Confidential. In the event the Producing Party and the Receiving Party cannot resolve an issue concerning the use of Highly Confidential Discovery Material, the matter may be presented to the Courts for resolution on an expedited basis.

(e) Persons receiving Highly Confidential Discovery Material pursuant to this Section shall not copy or disclose such Highly Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(f) Treatment of Highly Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

**6. Treatment of Confidential Information.**

(a) Any information designated as Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b) Provided that disclosure is not otherwise prohibited by this Protective Order and subject to Section 7(d), a Receiving Party shall only disclose Confidential Discovery Material to:

(i) parties or persons to whom Highly Confidential Discovery Material may be disclosed as set forth in Section 5;

(ii) current employees, officers, or directors of a Receiving Party (including current employees, officers or directors of members of a committee that is a Party provided that they comply with the requirements of Section 13 hereof), provided that disclosure is reasonably necessary to the Proceedings;

(iii) former employees of a Receiving Party, provided that disclosure is reasonably necessary to the Proceedings and that they comply with the requirements of Section 13 hereof; or

(iv) persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons.

(c) Persons receiving Confidential Discovery Material pursuant to this Section shall not copy or disclose such Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(d) Treatment of Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

**7. Permitted Purposes.**

(a) Confidential or Highly Confidential Discovery Material shall not be made public by any Party, shall be used only by persons permitted access to it per this Protective Order and shall be disclosed only to persons specified in this Protective Order.

(b) All Discovery Material (except such materials publicly available in substantially the same form), whether or not designated as Confidential or Highly Confidential Discovery



Material, shall be used by Receiving Parties solely in connection with the Proceedings (including appeals), and not in connection with any other litigation, judicial or regulatory proceeding or for any business, commercial, competitive, personal or other purpose except as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order.

(c) Any summary, compilation, notes, memoranda, analysis or copy containing Confidential or Highly Confidential Discovery Material, and any electronic image or database containing Confidential or Highly Confidential Discovery Material shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, memoranda, analysis, copy, electronic image or database is derived.

(d) This Protective Order has no effect upon, and shall not apply to, a Party's use of its own Confidential or Highly Confidential Discovery Material, including information designated as such under Section 4(c) and information that was, prior to disclosure, rightfully in the possession or knowledge of the Party, for any purpose.

(e) This Protective Order shall not preclude any Party from showing any Confidential or Highly Confidential Discovery Material or disclosing information derived therefrom at a deposition or examination for discovery to any witness, provided that, other than the witness, only those persons who are authorized by the terms of this Agreement to receive the Confidential or Highly Confidential Discovery Material to be disclosed to the witness are present at relevant portions of the deposition and the procedures provided for in Section 12 are in place.

**8. Court Filings.**

(a) A Party who intends to file Highly Confidential or Confidential Discovery Material shall give 5 days notice to the Party or Parties who designated the Discovery Materials as Highly Confidential or Confidential ("Designating Party") so that the Designating Party may bring a motion for a sealing order.

(b) If a Party wishes to file or otherwise submit to the Court(s) any documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material, including, but not limited to, pleadings, memoranda, transcripts, and discovery responses, such Party may redact the Confidential or Highly Confidential Discovery Material. If the nature of the Highly Confidential Information makes redaction unreasonable or impossible, the Party shall give 5 days notice to the Designating Party so that the designating Party may bring a motion for a sealing order.

(c) The Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing. The Parties reserve all rights with respect to trial procedures.

**Deleted:** Confidential or Highly Confidential Discovery Material shall not be filed in the public record absent the consent of the Producing Party or an order of the Court(s) so permitting.

**Deleted:** may file the documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material under seal.

**Deleted:** <#>The entry of this Protective Order by the Courts shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any further order of either Court required.¶

**Formatted:** Bullets and Numbering

**9. Compelled Disclosure.**

(a) If a Receiving Party is subpoenaed in another action or proceeding, served with a document demand, or otherwise required or compelled by law, regulation, government action or other process (any of the foregoing, a "Demand") to produce Confidential or Highly Confidential Discovery Material, the Receiving Party shall, if legally permitted, (i) give prompt written notice by overnight delivery, fax or email the earlier of five (5) business days of receipt, or fourteen (14) days prior to the response date of such Demand to counsel for the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material, provided, however, that such notice shall be given as soon as practicable if the response date of the demand is within fourteen (14) business days of receipt by the Receiving Party; and (ii) refrain from producing any Confidential or Highly Confidential Discovery Material in response to such Demand until the earlier of receipt of written notice from the Producing Party that it does not object to production of the Confidential or Highly Discovery Material, or resolution of any objection asserted by the Producing Party either by agreement or by final order of the Court(s) with jurisdiction over the objection of the Producing Party.

(b) The burden of opposing the enforcement of the Demand shall fall solely upon the Producing Party.

(c) Should a Producing Party neither provide written notice to the Receiving Party that it does not object to production of the Confidential or Highly Discovery Material nor submit a timely objection seeking an order that the Demand not be complied with and serve such objection upon the Receiving Party prior to production pursuant to the Demand, the Receiving Party shall be permitted to produce documents responsive to the Demand on the Demand's response date.

(d) Subject to the provisions of this Section, compliance by the Receiving Party with any order directing production pursuant to a Demand of any Confidential or Highly Confidential Discovery Material shall not constitute a violation of this Protective Order.

(e) Nothing herein shall be construed as requiring the Receiving Party or anyone else covered by this Protective Order to challenge or appeal any order directing production of Confidential or Highly Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order.

(f) The provisions of this Section shall apply to examinations conducted by bank or other regulators to which a Party may be subject, which may include examinations of Confidential or Highly Confidential Discovery Material received by any Party and its representatives. Any such disclosure shall be limited to such portions of the Confidential or Highly Confidential Discovery Material that the applicable Party's legal counsel advises is required under the subpoena, order or process, or request or demand by a regulatory authority, organization of regulators or self-regulatory authority received by that Party (each a "Regulator Demand"). With respect to Regulator Demands for Confidential or Highly Confidential Discovery Material, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of any such Regulator Demand before the disclosure of such Confidential or Highly Confidential

Discovery Material to such regulator, if the applicable Party is entitled to do so and if practicable. Otherwise, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of such Regulator Demand after the disclosure of any Confidential Information to regulator, if the applicable Party is entitled to do so. Nothing herein shall obligate any Party to prohibit or restrict any regulator's prompt access, in violation of any law, regulation, order or other obligation applicable to such Party, to documents or information in the custody, possession or control of such Party its representatives.

**10. No Waiver.**

(a) If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced should be designated as Confidential or Highly Confidential, the Producing Party may apprise the Receiving Parties in writing, and such designated Discovery Material will thereafter be treated as Confidential or Highly Confidential Discovery Material under the terms of this Protective Order, provided, however, that the Producing Party shall, at its cost, produce to each Receiving Party and/or to the shared dataroom substitute copies, bearing the legend "Confidential" or "Highly Confidential," of any such Discovery Material at which time the Receiving Party shall promptly return to the Producing Party or (at the election of the Receiving Party) destroy the previously produced copies of such substituted Discovery Material and shall have no right to access such substituted Discovery Material electronically.

(b) This Protective Order shall not prevent any Party from applying to the Court(s) in writing and on notice to the Parties for relief from this Protective Order or from any provision(s) thereof, or from applying to the Court(s) in writing and on notice to the Parties for further or additional protective orders.

(c) Producing or receiving Confidential or Highly Confidential Discovery Material or otherwise complying with the terms of this Protective Order shall not:

(i) prejudice in any way a Producing Party's rights to object to the authenticity or admissibility into evidence of any testimony or other evidence;

(ii) prejudice in any way the rights of the Parties to object to the production of documents that they consider not subject to discovery, or operate as an admission by any Party in the context of any other litigation or proceeding that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;

(iii) prejudice in any way the rights of a Party to seek a determination by the Court(s) whether any Discovery Material should be treated as Confidential or Highly Confidential Discovery Material or subject to the terms of this Protective Order, provided that a Party seeking to challenge the designation of any Discovery Material as Confidential or Highly Confidential shall be obligated to meet and confer in good faith prior to

\06

seeking judicial resolution and follow the procedures provided in Section 11; or

(iv) prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided herein with respect to any particular Discovery Material.

**11. Objections to Designation.**

(a) Any Party objecting to the designation of any particular Discovery Material or testimony as Confidential or Highly Confidential Discovery Material shall so inform the Producing Party, stating the grounds of the objection, and, unless provided otherwise by the discovery plan adopted by the Courts, they shall have five (5) business days to attempt to resolve the objection, at the end of which the Party objecting to the designation may seek a ruling from the Court(s), on no less than three (3) business days' notice to the Producing Party, that such information should not be treated as Confidential or Highly Confidential Discovery Material, provided that no Confidential or Highly Confidential Discovery Material shall be filed in the public record or disclosed other than in accordance with the terms of this Protective Order prior to such a determination by the Court(s), and provided further that the burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure.

Deleted: seven

Deleted: 7

(b) Each Party hereby agrees that it will not contest a Party's request for expedited consideration of any relief sought from the Court(s) pursuant to this Section.

**12. Use in Depositions / Examinations for Discovery.**

(a) If Confidential or Highly Confidential Discovery Material is utilized in a deposition, including a deposition of a party representative, examination for discovery or other recorded testimony, the Producing Party of the Confidential or Highly Confidential Discovery Material may designate the portion of the transcript relating to the Confidential or Highly Confidential Discovery Material as Confidential or Highly Confidential.

(b) Any deponent or examinee for discovery or his or her counsel may designate all or part of the transcript of a deposition or examination for discovery as Highly Confidential or Confidential. Such deponent or examinee will be the Producing Party of the deposition or examination testimony for purposes of this Protective Order, except that testimony about Confidential or Highly Confidential Discovery Material for which the deponent or examining is not a Producing Party shall also be deemed to have been produced by the Producing Party of the Confidential or Highly Confidential Discovery Material discussed.

(c) Designation of all or part of a transcript as Highly Confidential or Confidential may be made on the record during the deposition or examination or may be made by giving written notice to the court reporter and counsel for all Parties within seven (7) business days after receiving the transcript from the court reporter. All deposition or examination transcripts will be considered Confidential for the first seven (7) business days after receiving the transcript from the court reporter, unless designated otherwise by agreement of the Parties, by the Producing

Party of Confidential or Highly Confidential Discovery Material discussed therein and/or by the deponent or examinee, as the case may be.

(d) The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition.

**13. Disclosure to Certain Firms and Individuals.**

Prior to disclosure of Confidential or Highly Confidential Discovery Material pursuant to Sections 5(b)(ii); (viii), (ix) and (xi) (including as incorporated by reference in Section 6(b)(i) hereof); 5(c) and 6(b)(ii) and (iii) hereof, counsel for the Receiving Party shall provide a copy of this Protective Order to the person or the representative of the firm to whom disclosure is intended and such person or representative must execute a Non-Disclosure Declaration in the form annexed as an Exhibit hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

**14. Third-Party Beneficiaries.**

Third parties that produce documents for use in the Proceedings, either voluntarily or pursuant to a subpoena or in response to discovery requests in connection with the Proceedings, are intended third-party beneficiaries of this Protective Order and shall have the right to designate materials as Confidential or Highly Confidential Discovery Material in accordance with the terms hereof and shall otherwise have the same rights and responsibilities as a Producing Party.

**15. Redaction of Personal Information.**

(a) Each Producing Party may redact from Discovery Material it produces, whether or not such Discovery Material are designated Confidential or Highly Confidential, such personal information (e.g., social security numbers, home addresses, bank account information) as the Producing Party deems appropriate, such as information required not to be disclosed by the data protection, privacy or similar laws of the Producing Party's jurisdiction.

(b) If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced contains personal information to which a non-disclosure obligation applies, the Producing Party may apprise the Receiving Parties in writing. Promptly after receiving written notice of an inadvertent production of personal information, each Receiving Party shall return to the Producing Party or (at the election of the Receiving Party) destroy the Discovery Material as to which the claim of inadvertent production has been made and shall not use the inadvertently produced personal information for any purpose. The Producing Party shall, at its cost, provide each Receiving Party and/or the shared dataroom with substitute copies, bearing appropriate redactions, of any such Discovery Material.

(c) Each Receiving Party retains the right to move for the disclosure of the redacted information.

**16. Survival.**

(a) The provisions of this Protective Order shall, absent written permission of the Producing Party or further order of the Court(s), continue to be binding throughout and after the conclusion of the Proceedings, including without limitation any appeals therefrom.

(b) When any Party receives a notice from a court as to the release, unsealing or disposal of Confidential or Highly Confidential Discovery Material submitted by that Party, but designated Confidential or Highly Confidential by another Producing Party, the Party receiving the notice shall promptly send the notice to all Parties by overnight delivery, fax or email, so as to enable the Parties to take any actions they deem appropriate. The provisions of this Section may be waived only with the written consent of the Producing Party.

**17. Disposal of Confidential and Highly Confidential Discovery Material.**

(a) Within thirty (30) days after the time for appeal of an order, judgment, or decree finally disposing of or resolving the Proceedings has expired, all persons having received Confidential or Highly Confidential Discovery Material shall, at their own cost and expense, either return such material and all copies thereof (including summaries and excerpts) to counsel for the Producing Parties or (at the election of the Receiving Party) destroy all such Confidential or Highly Confidential Discovery Material and certify that fact to the Producing Parties. Documents that have been received electronically must be electronically deleted and deleted from "trash" files; provided, however, that to the extent that Confidential or Highly Confidential Discovery Material exists in whole or in part on computer backup tapes or other not readily accessible media used for disaster recovery purposes, information from such media does not need to be restored for purposes of destroying or returning Confidential or Highly Confidential Discovery Material, but such retained information shall continue to be treated in accordance with this Protective Order.

(b) Notwithstanding the preceding paragraph, outside counsel for the Parties shall be entitled to retain court papers, deposition and court transcripts, and attorney work product that includes or summarizes Confidential Discovery Material or Highly Confidential Discovery Material provided that such outside counsel, and employees of such outside counsel, shall not disclose such court papers, deposition or trial transcripts, or attorney work product to any person except pursuant to court order or agreement with the Producing Party as to the Confidential Discovery Material or Highly Confidential Discovery Material at issue.

(c) Notwithstanding anything herein to the contrary, the obligations of this Section shall not preclude any Party or its experts or consultants from complying with document retention policies imposed by applicable law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, provided that the Party, expert or consultant provides notice of its retention of the documents to the Producing Party.

**18. Privileged Documents.**

(a) Nothing in this Protective Order shall require disclosure of information that counsel contends is protected from disclosure by solicitor-client privilege, attorney-client

privilege, work-product immunity, or any other applicable privilege, immunity or protection from disclosure under any applicable law (each a "Privilege" and, collectively, the "Privileges").

(b) Consistent with Rule 502(d) of the United States Federal Rules of Evidence, if information subject to a claim of Privilege is produced, such production shall not constitute or be deemed a waiver of any claim of a Privilege that the Producing Party would otherwise be entitled to assert in the Proceedings or any other proceeding, either with respect to the produced Discovery Material or any other documents, communications, or information concerning the same subject matter. The production of information subject to a claim of Privilege is without prejudice to the right of a Producing Party to seek the return or destruction of any document as to which a claim of Privilege is later asserted.

(c) If information subject to a claim of Privilege is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of a Privilege for such information or any other information that may be protected from disclosure by Privilege. If a Party has inadvertently or mistakenly produced a document or information that is subject to a good faith claim of Privilege, upon request by the Producing Party promptly after discovery of such inadvertent or mistaken production, the document for which a claim of inadvertent production is made shall be returned within three (3) business days of such request and all copies of that document that may have been made shall be destroyed to the extent reasonably practicable, and the Receiving Party shall not use such information for any purpose.

(d) The Party returning such material may then file under seal a motion for an order compelling production of the material, but such motion shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent production, and such motion shall not quote from or attach such material. While the motion for an order compelling production is pending before the Court(s), the moving Party shall not maintain a copy of, quote from or otherwise use the material.

(e) No public disclosure of the contents of the Discovery Material as to which the claim of Privilege has been made shall occur absent order of the Court(s).

(f) If, at trial, at a hearing, at a deposition, at an examination for discovery or on a motion, a Producing Party marks for identification or offers into evidence information subject to a claim of Privilege by the Producing Party, or proffers or elicits testimonial or other evidence that incorporates or relies on information subject to a claim of Privilege, that act shall be deemed to effect a waiver and forfeiture by the Producing Party of Privilege. The preceding sentence shall not apply to (1) proceedings to determine whether the information is subject to a claim of Privilege, or (2) information subject to a claim of Privilege that is marked for identification, offered into evidence, or incorporated in evidence proffered or elicited by a Party other than the Producing Party, or relied on by a witness proffered by a Party other than the Producing Party. By marking for identification or offering into evidence information subject to a claim of Privilege, the Producing Party shall not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter.

(g) If information is subject to a claim of privilege ("Joint Privileged Information"), which appears on its face to be held by two or more Parties ("Joint Privilege"), a Party who

110

claims the Joint Privilege shall not refuse to produce any such Joint Privileged Information to any other Party or Parties with whom the Joint Privilege is shared. A Party who holds the Joint Privilege may produce Joint Privileged Information only to those other Parties with whom it shares the Joint Privilege and shall not produce such Joint Privileged Information to Parties that do not share in the Joint Privilege or to a shared dataroom. If a Party who wishes to rely on Discovery Material containing Joint Privileged Information, such Party shall, without prejudice to its position on the claim of privilege, provide notice to the other Parties with whom it shares the Joint Privilege and such other Parties shall have seven days after receiving notice to seek a protective order from the Court(s) in writing and on notice to the Parties. Absent an order from the Court(s) granting such protective order, the Party seeking to rely on Discovery Material containing Joint Privileged Information shall designate such Discovery Material as "Highly Confidential" and produce it to the other Parties and/or to a shared dataroom. Disclosure to a shared dataroom or to persons permitted to view Highly Confidential Discovery Material under this Protective Order does not effect a waiver of privilege as to Parties other than the Producing Party subject to the foregoing sections. The production of such Discovery Material containing Joint Privileged Information does not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter as the Joint Privileged Information.

**19. Effective Date and Enforceability.**

(a) This Protective Order will become effective upon the date that it has been approved by both Courts (the "Effective Date").

(b) Nothing in this Protective Order shall preclude any Party from seeking judicial relief, upon notice to the other Parties, with regard to any provision hereof.

(c) No amendment or modification of this Protective Order shall be binding or enforceable unless in writing and signed by the Parties, or ordered by the Courts.

**20. Allocation Dataroom Access**

(a) Upon the Effective Date, all documents ("Allocation Dataroom Documents") in the electronic data site established to facilitate settlement discussions (the "Allocation Dataroom") shall be deemed produced in the Proceedings pursuant to this Protective Order, and subject to its terms, including but not limited to the provisions of Section 18.

(b) From and after the Effective Date, this Protective Order shall govern and shall supersede the provisions in prior confidentiality agreements with respect to Allocation Dataroom Documents, but only as to the Parties and any other persons or entities who are entitled to receive documents under this Protective Order (subject to any requirements herein, including, but not limited to, Section 13).

(c) The Parties shall have twenty-one (21) days following the Effective Date to designate documents in the Allocation Dataroom as Highly Confidential Discovery Material or Confidential Discovery Material. Any Party making such designation will be required to provide new documents with the Highly Confidential legend or the Confidential legend to replace existing or to otherwise bear the cost of the designation of such documents. Until such period expires, all Parties with access to the Allocation Dataroom will treat documents therein as Highly

Confidential Discovery Material. Thereafter, if a document has not been electronically stamped as Highly Confidential or Confidential by a Party during the 21 day period, it shall be considered a document to which neither of those designations apply, subject to the provisions of subsection 20(d).

(d) After the expiration of the 21-day period, a Party shall have the right at any time to designate such documents in the Allocation Dataroom as Highly Confidential or Confidential in accordance with paragraph 10(a). Such documents will thereafter be treated as if they had been designated as Highly Confidential in the 21-day period after the Effective Date.

(e)

Deleted: Notwithstanding anything to the contrary herein, all documents in the Allocation Dataroom shall be deemed Confidential upon the Effective Date and will be electronically stamped with the Confidential legend. Where it is evident from the Bates Stamp which Party supplied the document to the Allocation Dataroom, that Party will be deemed the Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. Absent such evidence, the document will be deemed produced by the US Debtors, Canadian Debtors and EMEA Debtors and all such Parties shall each be considered a Producing Party with respect to such documents and be treated as a Producing Party for purposes of Subsection (f) *infra*, and Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

(f) In the event any Party objects to the designation of specifically identified documents from the Allocation Dataroom, the Producing Party shall reconsider such designation and, within ten (10) days, either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material.

**21. Intentional or Negligent Disclosure of Confidential or Highly Confidential Discovery Material.**

In the event of an alleged intentional or negligent disclosure of Highly Confidential Discovery Material or Confidential Discovery Material in violation of this Protective Order, the Parties shall first seek to resolve the alleged violation through prompt and reasonable discussion. In the event such efforts fail to promptly resolve the alleged violation, the Parties reserve the right to seek any available remedy from the Courts, including, *inter alia*, money damages, injunctive relief or any other relief as appropriate.

**22. Enforcement Pending Entry.**

The Parties agree to be bound by the terms of this Protective Order pending the entry of this Protective Order by the Courts, and any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order has been issued and entered by the Courts.

**23. Jurisdiction.**

The Parties irrevocably agree and consent to the jurisdiction and venue of the US Court and the Canadian Court for the purposes of any dispute arising out of or relating to this Protective Order. For the avoidance of doubt, the Parties' obligations remain ongoing, and such jurisdiction and venue is retained even to the extent this Protective Order is utilized in connection with any arbitration proceeding.

[ENDORSEMENT BLOCKS]

\\2

**EXHIBIT**

I, ________________________________, declare under penalty of perjury, the following:

I reside at ____________________________________ in the City of ______________ and State/Province of ________________________________;

I have read the annexed Protective Order dated ____________, 2013;

I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order and consent and attorn to the jurisdiction of the United States Bankruptcy Court for the District of Delaware and the Ontario Superior Court of Justice solely for the purpose of enforcement of the provisions of the Confidentiality Protective Order and Protective Order. I will not divulge any Discovery Material to persons other than those specifically authorized by the Protective Order. I understand, in particular, that any Confidential or Highly Confidential Discovery Material, and any copies, excerpts or summaries thereof, or materials containing Confidential or Highly Confidential Discovery Material derived therefrom, as well as any knowledge or information derived from any of these items, may be used only for the Proceedings and may not be used to inform the purchase or sale of securities or for any other purpose, including, without limitation, any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order may result in legal action against me, such as for contempt of court or liability for monetary damages.

Dated: _______________ Signature: ___________________________________

\6204578

# TAB D

\\3

CDMA

(g) enter into, adopt, amend or modify any Collective Labor Agreement affecting Transferring Employees except as required by applicable Law;

(h) voluntarily terminate, waive any right under, or amend in any material respect any Assigned Contract, Bundled Contract, Inbound License Agreement, Outbound License Agreement or Patent Cross License, or enter into a Contract that would be a Material Contract other than a manufacturing or supply agreement with an annual cost not to exceed $1,000,000;

(i) waive, release, assign, settle or compromise any material claim, litigation or arbitration relating to the Business to the extent that such waiver, release, assignment, settlement or compromise imposes any binding obligation, whether contingent or realized, on the Business that will bind any of the Designated Purchasers after the Closing Date and is materially adverse to the Business;

(j) solicit bids for the sale, transfer or other disposition, directly or indirectly, including through an asset sale, stock sale, merger, amalgamation, plan of arrangement or other similar transaction of any part of the Business;

(k) manage the Adjusted Net Working Capital other than in the Ordinary Course;

(l) take any action to cause any employee of the Sellers who would otherwise be an Employee as of the Closing not to be an Employee (other than termination for cause or termination of Employees who failed to receive an offer of employment from Purchaser or a Designated Purchaser pursuant to this Agreement provided Sellers make a reasonable effort to provide notice to Purchaser prior to such employment termination); or take any action to cause any employee of the Sellers who does not provide all or substantially all of his or her services to the Business as of the date of this Agreement, to become an Employee (other than any employees hired and transferred in the Ordinary Course below Job Complexity Indicator 6); or

(m) authorize, or commit or agree to take, any of the foregoing actions.

Section 5.10. Transaction Expenses.

Except as otherwise provided in this Agreement or the Ancillary Agreements, each of the Purchaser and the Sellers shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby; provided, that all filing fees in respect of Regulatory Approvals shall be shared equally between (a) the Purchaser on the one hand and (b) the Sellers on the other hand.

Section 5.11. Confidentiality.

The Parties acknowledge that the Confidentiality Agreement remains in full force and effect in accordance with its terms, which are incorporated herein by reference, and the Parties agree to be bound thereby in the same manner and to the same extent as if the terms had

114

been set forth herein in full, except that the Sellers shall be at liberty to disclose the terms of this Agreement to any court or to any liquidator or in connection with any auction process approved by the Bankruptcy Court and show appropriate figures in their administration records, accounts and returns; provided, that after the Closing Date, the Purchaser's confidentiality obligations under this Section 5.11 and the Confidentiality Agreement with respect to information and data relating to the Business and/or the Assets shall terminate. Any Business Information or copies thereof retained by the Sellers pursuant to Section 5.24(c) shall be deemed to constitute "Evaluation Material" as such term is defined under the Confidentiality Agreement and, from and after the Closing Date, the Sellers shall treat such Business Information on the same terms and conditions applicable to the Purchaser's treatment of "Evaluation Material" as such term is defined under the Confidentiality Agreement.

Section 5.12. Disclosure Schedules and Certain Information.

(a) The Sellers shall submit to the Purchaser, every two weeks, written updates to Section 4.11(b) of the Sellers Disclosure Schedule. The Sellers shall use reasonable efforts to submit to the Purchaser, as promptly as reasonably practicable, written updates to the Sellers Disclosure Schedule in respect of ARTICLE IV disclosing any events or developments that occurred or any information learned between the date of this Agreement and the Closing Date that reflect any matters hereafter arising which, if existing, occurring or known to the Sellers at the date hereof, would have been required to be set forth or described in the Sellers Disclosure Schedule in relation to ARTICLE IV; provided, that such updates shall be disregarded for purposes of determining whether or not the condition contained in Section 8.3(a) has been fulfilled.

(b) The Sellers shall give prompt notice to the Purchaser, and the Purchaser shall give prompt notice to the Sellers, upon obtaining knowledge of the occurrence or non-occurrence of any event that, individually or in the aggregate, would make the timely satisfaction of the conditions set forth in ARTICLE VIII impossible or unlikely.

(c) The delivery of any update or notice pursuant to this Section 5.12 shall not cure any breach of any representation or warranty requiring disclosure of such matter or otherwise limit or affect the remedies available hereunder to any party receiving such notice. This Section 5.12 shall not constitute a covenant or agreement for purposes of ARTICLE VIII or ARTICLE IX.

Section 5.13. Certain Payments or Instruments Received from Third Parties.

To the extent that, after the Closing Date, (a) the Purchaser and/or any Designated Purchaser receives any payment or instrument that is for the account of a Seller according to the terms of any Transaction Document or relates primarily to any business or business segment of the Sellers other than the Business, the Purchaser shall, and shall cause the Designated Purchasers to, promptly deliver such amount or instrument to the relevant Seller, and (b) any of the Sellers receives any payment that is for the account of the Purchaser, any of the Designated Purchasers according to the terms of any Transaction Document or relates primarily to the Business, the relevant Main Sellers shall, and shall cause the other Sellers to, promptly deliver such amount or instrument to the Purchaser or the relevant Designated Purchaser, as applicable.

ENTERPRISE

115

SECTION 5.10. Transaction Expenses. Except as otherwise provided in this Agreement or the Transaction Documents, each of the Purchaser and the Sellers shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby; provided, however, that costs and expenses of the Companies shall be deemed to be costs and expenses of the Sellers.

SECTION 5.11. Confidentiality.

(a) The Parties acknowledge that the Confidentiality Agreement remains in full force and effect in accordance with its terms, which are incorporated herein by reference, and the Parties agree to be bound thereby in the same manner and to the same extent as if the terms had been set forth herein in full, except that the Sellers shall be at liberty to disclose the terms of this Agreement to any court or to any liquidator or in connection with any auction process approved by the Bankruptcy Court and show appropriate figures in their administration records, accounts and returns.

(b) From the Closing Date until the date that is five (5) years after the Closing Date, the Sellers shall not, and shall cause their Affiliates not to, and shall use reasonable best efforts to cause the respective representatives of the Sellers and their Affiliates not to, use or disclose to any Third Party, any Confidential Information. For purposes of this Agreement, "**Confidential Information**" consists of all competitively sensitive information and data related to the Business, the Assets and/or the Companies (including Transferred Intellectual Property and competitively sensitive Business Information existing as of the Closing Date), Purchaser or its Affiliates that is not, in each case, already available to the public, provided that nothing herein or in the other Transaction Documents shall be construed as precluding, prohibiting, restricting or otherwise limiting the ability of the Sellers, Seller's Affiliates or their respective representatives to (i) disclose the terms of any of the Transaction Documents to any court or to any liquidator or in connection with any auction process approved by a Bankruptcy Court and show appropriate figures in their administration records, accounts and return; (ii) make permitted disclosures under Section 5.7; (iii) exercise or enforce any of its rights, or perform any obligations under this Agreement or the other Transaction Documents, including the Transition Services Agreement and the Intellectual Property License Agreement, (iv) make any disclosures that are required by applicable Law; (v) own, use or disclose Confidential Information that is not exclusive to the Business to the extent necessary to (in the reasonable judgment of the Sellers) operate the other business segments of the Sellers or their Affiliates or otherwise engage in any manner in any business activities unrelated to the Business in compliance with Section 5.33; (vi) use Confidential Information to the extent necessary to perform Rejected Customer Contracts; or (vii) make customary disclosures, subject to customary confidentiality agreements, regarding Confidential Information that is not exclusive to the Business and is primarily related to other business segments of the Sellers in connection with acquiring, merging or otherwise combining with, or being acquired by, or selling all or part of their assets to, any Person (whether in a single transaction or a series of related transactions or whether structured as an acquisition of assets, securities or otherwise).



(h)     voluntarily terminate, waive any right under, or amend in any material respect any Assigned Contract, Bundled Contract, Inbound License Agreement, Outbound License Agreement or Patent Cross License;

(i)     enter into any Contract that would be a Material Contract, other than any manufacturing or supply agreement with annual costs not to exceed US$1,000,000 individually or US$10,000,000 in the aggregate;

(j)     waive, release, assign, settle or compromise any material claim, litigation or arbitration relating to the Business to the extent that such waiver, release, assignment, settlement or compromise imposes any binding obligation, whether contingent or realized, on the Business that will bind the Purchaser and/or any of the Designated Purchasers after the Closing Date and is materially adverse to the Business;

(k)     solicit bids for the sale, transfer or other disposition, directly or indirectly, including through an asset sale, stock sale, merger, amalgamation, plan of arrangement or other similar transaction of any part of the Business;

(l)     manage the Adjusted Net Working Capital other than in the Ordinary Course;

(m)     take any action to cause any employee of the Sellers who would otherwise be an Employee as of the Closing not to be an Employee (other than termination for cause or termination of Employees who failed to receive an offer of employment from Purchaser or a Designated Purchaser pursuant to this Agreement provided Sellers make a reasonable effort to provide notice to Purchaser prior to such employment termination); or take any action to cause any employee of the Sellers who does not provide all or substantially all of his or her services to the Business as of the date of this Agreement, to become an Employee; or

(n)     authorize, or commit or agree to take, any of the foregoing actions. If a Seller desires to take any action in this Section 5.9 requiring Purchaser's consent, the Main Sellers may, prior to any such action being taken, request the Purchaser's consent via an electronic mail or facsimile sent to the individual(s) at the addresses listed on Exhibit 5.9. The Purchaser shall respond to such notice in writing by 11:59 p.m. (New York time) on the second Business Day after the day of delivery of such email or facsimile. The failure of the Purchaser to respond within such two (2) Business Days shall not be deemed to be consent to such action.

Section 5.10.   Transaction Expenses. Except as otherwise provided in this Agreement or the Ancillary Agreements, each of the Purchaser and the Sellers shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby.

Section 5.11.   Confidentiality.

(a)     The Parties acknowledge that the Confidentiality Agreement remains in full force and effect in accordance with its terms, which are incorporated herein by reference, and the Parties agree to be bound thereby in the same manner and to the same extent as if the

117

terms had been set forth herein in full, except that the Sellers shall be at liberty to disclose the terms of this Agreement to any court or to any liquidator or in connection with any auction process approved by the Bankruptcy Court and show appropriate figures in their administration records, accounts and returns and (ii) the Purchaser or the Designated Purchaser shall be at liberty to disclose the terms of this Agreement and other "Evaluation Materials" (as defined under the Confidentiality Agreement) to the EMEA Purchaser or any Designated EMEA Purchaser; provided, that after the Closing Date, the Purchaser's confidentiality obligations under this Section 5.11 and the Confidentiality Agreement with respect to information and data relating to the Business and/or the Assets shall terminate. **Any Business Information or copies thereof retained by the Sellers pursuant to Section 5.24(c) shall be deemed to constitute "Evaluation Material" as such term is defined under the Confidentiality Agreement and, from and after the Closing Date, the Sellers shall treat such Business Information on the same terms and conditions applicable to the Purchaser's treatment of "Evaluation Material" as such term is defined under the Confidentiality Agreement.**

(b) To the extent a copy of any Bundled Contract is provided to Purchaser or a Designated Purchaser pursuant to Section 5.15 or otherwise, Purchaser or such Designated Purchaser shall not use or disclose any information therein that relates exclusively to a business of a Seller other than the Business (such information, "**Non-Business Information**"), including, without limitation, information related to product pricing, pricing strategy, production levels, production capacity or product inventories, current bids or potential bids for particular products or services, plans relating to the production, distribution, marketing, or introduction dates of specific products, including proposed territories and potential customers, matters relating to actual or potential suppliers or customers, current or project costs of procurement, development, manufacture or product research and development efforts of any specific product; provided, however, that Non-Business Information shall not include information that (i) was rightfully in Purchaser's or a Designated Purchaser's possession without a duty of confidentiality before receipt from Seller, (ii) is or has been disclosed publicly through no fault of Purchaser or a Designated Purchaser and without breach of any third parties' confidentiality obligations, (iii) is rightfully received by Purchaser or a Designated Purchaser without a duty of confidentiality, (iv) is independently developed by Purchaser or a Designated Purchaser without access to the Non-Business Information, as substantiated by written records or other documentation of Purchaser or such Designated Purchaser, or (v) is disclosed by Purchaser or a Designated Purchaser with a Seller's or its successors' or assigns' prior written approval; provided, further, that the Purchaser or the Designated Purchaser may disclose the Non-Business Information to the EMEA Purchaser or any Designated EMEA Purchaser. Furthermore, the rights of the Sellers under this Section 5.11(b) shall inure to the benefit of any buyer of a business of the Seller to which such Non-Business Information relates. Notwithstanding the foregoing, Purchaser or the relevant Designated Purchaser shall not be deemed in breach hereunder in the event that Purchaser or such Designated Purchaser is required by applicable law, regulation, legal process, or the regulations or rules of the stock exchange, or requested by a regulatory body, agency or stock exchange, to disclose any of the Non-Business Information.

Section 5.12. Certain Payments or Instruments Received from Third Parties. To the extent that, after the Closing Date, (a) the Purchaser and/or any Designated Purchaser receives any payment or instrument that is for the account of a Seller according to the terms of any Transaction Document or relates primarily to any business or business segment of the Sellers



\\8

(o) construct, or permit to be constructed any capital improvements or major alterations at any portion of the Real Property used for the Business (excluding the EMEA Business, except with respect to any capital improvements or major alterations at any portion of the Real Property required in connection with the purchase by purchasers of other Nortel business segments), or as otherwise contemplated in the Real Estate Terms and Conditions;

(p) enter into any Collective Labor Agreement affecting Transferred Employees except as required by applicable Law; or

(q) enter into any Contract not to compete in any line of business or geographic area that would reasonably be expected to bind the Purchaser or any of its Affiliates after the Closing in any material respect;

(r) enter into any Contract granting an indemnity in respect of intellectual property infringement or misappropriation other than in the Ordinary Course that would bind the Purchaser or any of its Affiliates after the Closing in any material respect, except for those Contracts that will not be, or that the Purchaser may elect not to have, assigned to the Purchaser hereunder; or

(s) authorize, or commit or agree to take, any of the foregoing actions.

If a Seller desires to take any action described in this Section 5.9, the Main Sellers may, prior to any such action being taken, request the Purchaser's consent via an electronic mail or facsimile sent to the individual(s) at the addresses listed on Exhibit 5.9. The Purchaser shall respond to such notice in writing by 11:59 p.m. (New York time) on the second Business Day after the day of delivery of such electronic mail or facsimile. The failure of the Purchaser to respond within such two (2) Business Days shall not be deemed to be consent to such action.

The Purchaser acknowledges and agrees that: (i) prior to the Closing Date, the Sellers shall exercise, consistent with the terms and conditions of this Agreement, control and supervision of the Business (excluding the EMEA Business) and the EMEA Sellers shall exercise, consistent with the terms and conditions of the EMEA Asset Sale Agreement, the EMEA Business and (ii) notwithstanding anything to the contrary set forth in this Agreement, no consent of the Purchaser shall be required with respect to any matter set forth in Section 5.9 or elsewhere in this Agreement to the extent the requirement of such consent would, upon advice of the Purchaser's counsel, violate any Law.

**SECTION 5.10. <u>Transaction Expenses</u>.** Except as otherwise provided in this Agreement or the Ancillary Agreements, each of the Purchaser and the Sellers shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby.

**SECTION 5.11. <u>Confidentiality</u>.**

(a) The Parties acknowledge that the Confidentiality Agreement remains in full force and effect in accordance with its terms, which are incorporated herein

119

by reference, and the Parties agree to be bound thereby in the same manner and to the same extent as if the terms had been set forth herein in full, except that the Sellers shall be at liberty to disclose the terms of this Agreement to any court or to any liquidator or in connection with any auction process with respect to the Business or the Assets approved by the Bankruptcy Court and show appropriate figures in their administration records, accounts and returns; provided, that after the completion of the transactions contemplated herein, the Purchaser's confidentiality obligations under this Section 5.11 and the confidentiality agreement between the Purchaser, NNC and its subsidiaries and Alan Bloom dated March 27, 2009, with respect to information and data relating to the Business and/or the Assets shall terminate. For greater certainty, the Purchaser's confidentiality obligations under the third clean team confidentiality agreement between the Purchaser and its subsidiaries and NNL and its subsidiaries, dated June 19, 2009, shall not terminate after the completion of the transactions contemplated herein.

(b) Subject to the requirements of the Bankruptcy Laws or as may be imposed by the Bankruptcy Court or as otherwise required by applicable Law, from and after the Closing: (i) the Sellers shall, and shall cause their Affiliates to, hold in confidence all confidential information (including trade secrets, customer lists, marketing plans and pricing information) of the Sellers relating to the Business or the Assets; (ii) in the event that the Sellers or an Affiliate thereof shall be legally compelled to disclose any such information, the Sellers shall provide the Purchaser with prompt written notice of such requirement so that the Purchaser may seek a protective order or other remedy; and (iii) in the event that such protective order or other remedy is not obtained, the Sellers or their Affiliates shall furnish only such information as is legally required to be provided.

(c) It is acknowledged by the Purchaser and the Sellers that in the course of attempting to sell the Assets, one or more of the Sellers has entered into several confidentiality agreements with Third Parties in respect of information relating to the Assets and has disclosed such information to certain of those Third Parties.

(d) Each Seller shall assign to the Purchaser, at or prior to, and with effect from and after the Closing, all of its rights under any such confidentiality agreement made by such Seller with any Third Party but only as such confidentiality agreements relate to the Assets and the Business and only to the extent that such agreements permit such assignments without the consent of any Third Party. To the extent such agreements do not permit any assignment without the consent of any Third Party, at the Purchaser's request and the Purchaser's expense, provided that the Sellers receive an indemnity from the Purchaser in form and substance satisfactory to the Sellers, to the extent permitted by applicable Laws and the terms of such confidentiality agreements, shall appoint the Purchaser as such Sellers' representative and agent in respect of confidential information relating to the Business and Assets under such confidentiality agreements and any amounts recovered or expenses incurred in enforcing those confidentiality agreements in respect of the Sellers shall accrue to the benefit of or be for the account of the Purchaser.

(e) Notwithstanding anything to the contrary contained in this Section 5.11, nothing contained in this Agreement shall be construed as precluding, prohibiting, restricting or otherwise limiting the ability of the Sellers, the Sellers' Affiliates or their respective representatives to: (i) make permitted disclosures under Section 5.7 or as



otherwise permitted under this Agreement; (ii) make any disclosures that are required by applicable Law; (iii) use or disclose information that is not exclusive to the Business to the extent necessary to operate the other business segments of the Sellers or their Affiliates or otherwise engage in any manner in any business activities unrelated to the Business; (iv) perform any retained Contracts, whether or not exclusively related to the Business; or (v) make customary disclosures, subject to customary confidentiality agreements, regarding information that is not exclusive to the Business and is primarily related to other business segments of the Sellers in connection with acquiring, merging or otherwise combining with, or being acquired by, or selling all or part of their assets to, any Person (whether in a single transaction or a series of related transactions or whether structured as an acquisition of assets, securities or otherwise). Notwithstanding anything to the contrary contained in this Section 5.11, nothing contained in this Agreement shall be construed as precluding, prohibiting, restricting or otherwise limiting the ability of the Purchaser, the Purchaser's Affiliates or their respective representatives to: (i) make permitted disclosures under Section 5.7 or as otherwise permitted under this Agreement or (ii) make any disclosures that are required by applicable Law.

**SECTION 5.12. Disclosure Schedules and Certain Information.**

(a) The Sellers shall submit to the Purchaser via electronic mail or facsimile sent to the individual(s) at the addresses listed in Exhibit 5.12, every two (2) weeks, written updates to Section 4.10(b) of the Sellers Disclosure Schedule with respect to additions, deletions or other status changes of Employees or, after finalization of the Identified Employees, only with respect to Identified Employees. The Sellers shall submit to the Purchaser at least three (3) Business Days prior to the Closing Date, written updates to the Sellers Disclosure Schedules in respect of Article IV disclosing any events or developments that occurred or any information learned between the date of this Agreement and the Closing Date that reflect any matters hereafter arising which, if existing, occurring or known to the Sellers at the date hereof, would have been required to be set forth or described in the Sellers Disclosure Schedule in relation to Article IV.

(b) The Sellers shall give prompt notice to the Purchaser, and the Purchaser shall give prompt notice to the Sellers, upon obtaining knowledge of the occurrence or nonoccurrence of any event that, individually or in the aggregate, would make the timely satisfaction of the conditions set forth in Article IX impossible or unlikely.

(c) The delivery of any update or notice pursuant to this Section 5.12 shall not cure any breach of any representation or warranty requiring disclosure of such matter or otherwise limit or affect the remedies available hereunder to any party receiving such notice.

**SECTION 5.13. Certain Payments or Instruments Received from Third Parties.** To the extent that, after the Closing Date, (a) the Purchaser or any Designated Purchaser receives any payment or instrument that is for the account of a Seller according to the terms of this Agreement or relates primarily to any business or business segment of the Sellers other than the Business, the Purchaser shall, and shall cause the Designated Purchasers to promptly deliver such amount or instrument to the relevant Seller, and (b) any of the Sellers receives any payment that is for the account of the Purchaser or any of the Designated Purchasers

121

CVAS

Sellers thereunder) any Material Contract, Cross-License Agreements referenced in Exhibit 5.4(c) and listed in Exhibits 5.4(d) and 5.15(c), Inbound License Agreement that is an Assigned Contract or Bundled Contract material to the Business (other than as necessary to effect the unbundling of any Bundled Contract required with respect to any other business or business segment of the Sellers), unless (i) such Contract has become a Non-Assigned Contract, an Excluded 365 Customer Contract, an Excluded Non-365 Customer Contract or will not be assigned to the Purchaser or any Designated Purchaser at Closing or (ii) such amendment, waiver or change is contemplated pursuant to Section 5.23 hereof, and in each case other than in the Ordinary Course;

(i) fail to make commercially reasonable efforts to maintain Owned Inventory at levels consistent with customer orders;

(j) waive, release, assign, settle or compromise any material claim, litigation or arbitration relating to the Business to the extent that such waiver, release, assignment, settlement or compromise imposes any binding obligation, whether contingent or realized, on the Business that will bind the Purchaser or a Designated Purchaser after the Closing Date and is materially adverse to the Business;

(k) enter into any Material Contract pursuant to Section 4.4(a)(ii) or amend any Contract to thereafter be a Material Contract pursuant to Section 4.4(a)(ii) that would reasonably be expected to bind the Purchaser or any of its Affiliates in any material respect after the Closing;

(l) fail to maintain tangible property which, individually or in the aggregate, is material to the Business and which is included in the Assets, in the Ordinary Course;

(m) fail to maintain the material Consents with respect to the Business in the Ordinary Course;

(n) make or rescind any material election in relation to Taxes that would reasonably be expected to materially and adversely impact the Purchaser or a Designated Purchase after the Closing; or

(o) authorize, or commit or agree to take, any of the foregoing actions.

Section 5.10. Transaction Expenses. Except as otherwise provided in this Agreement or the Ancillary Agreements, each of the Purchaser and the Sellers shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby.

Section 5.11. Confidentiality.

(a) The Parties acknowledge that the Confidentiality Agreement remains in full force and effect in accordance with its terms, which are incorporated herein by reference, and the Parties agree to be bound thereby in the same manner and to the same extent as if the terms

had been set forth herein in full, except that the Sellers shall be at liberty to disclose the terms of this Agreement to any court or to any liquidator or in connection with any auction process approved by the Bankruptcy Court and show appropriate figures in their administration records, accounts and returns.

(b) From the Closing Date until the date that is five (5) years after the Closing Date, the Sellers shall not, and shall cause their Affiliates not to, and shall use commercially reasonable efforts to cause the respective representatives of the Sellers and their Affiliates not to, use or disclose to any Third Party, any Confidential Information. For purposes of this Agreement, "**Confidential Information**" consists of all competitively sensitive information and data related to the Business or the Assets (including Transferred Intellectual Property and competitively sensitive Business Information existing as of the Closing Date), Purchaser or its Affiliates that is not, in each case, already available to the public (it being agreed that disclosure of Confidential Information to prospective purchasers, their representatives and other Persons affiliated with the sale process of the Business shall not be public disclosure thereof), provided that nothing herein or in the other Transaction Documents shall be construed as precluding, prohibiting, restricting or otherwise limiting the ability of the Sellers, Seller's Affiliates or their respective representatives to (i) disclose the terms of any of the Transaction Documents to any court or to any liquidator or in connection with any auction process approved by a Bankruptcy Court and show appropriate figures in their administration records, accounts and return; (ii) exercise or enforce any of their rights, or perform any obligations under this Agreement or the other Transaction Documents, including the Transition Services Agreement and the Intellectual Property License Agreement, (iii) make permitted disclosures under Section 5.7; (iv) make any disclosures that are required by applicable Law; (v) own, use or disclose Confidential Information that is not exclusive to the Business to the extent necessary to (in the reasonable judgment of the Sellers) operate the other business segments of the Sellers or their Affiliates or otherwise engage in any manner in any business activities unrelated to the Business; (vi) use Confidential Information to the extent necessary to perform any Seller Contracts not assigned to the Purchaser; (vii) share information to the extent reasonably necessary to allocate the purchase proceeds from the sale of the Assets; or (viii) make customary disclosures, subject to customary confidentiality agreements, regarding Confidential Information that is not exclusive to the Business and is primarily related to other business segments of the Sellers in connection with acquiring, merging or otherwise combining with, or being acquired by, or selling all or part of their assets to, any Person (whether in a single transaction or a series of related transactions or whether structured as an acquisition of assets, securities or otherwise).

(c) It is acknowledged by the Purchaser and the Sellers that in the course of attempting to sell the Assets, one or more of the Sellers has entered into several confidentiality agreements with Third Parties in respect of information relating to the Assets and has disclosed such information to certain of those Third Parties.

Section 5.12. Certain Payments or Instruments Received from Third Parties. To the extent that, after the Closing Date, (a) the Purchaser and/or any Designated Purchaser receives any payment or instrument that is for the account of a Seller according to the terms of any Transaction Document or relates primarily to any business or business segment of the Sellers

123

MSS

that will not be, or that the Purchaser may elect not to have, assigned to the Purchaser hereunder; or

(s) authorize, or commit or agree to take, any of the foregoing actions.

SECTION 5.10 Transaction Expenses. Except as otherwise provided in this Agreement or the other Transaction Documents to which the Sellers are parties, each of the Purchaser and the Sellers shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby.

SECTION 5.11 Confidentiality.

(a) The Parties acknowledge that the Confidentiality Agreement (including all amendments thereto) and the Clean Team Confidentiality Agreement (including all addenda thereto) remain in full force and effect in accordance with their respective terms, which are incorporated herein by reference, and the Parties agree to be bound thereby in the same manner and to the same extent as if the terms had been set forth herein in full, except that the Sellers shall be at liberty to disclose the terms of this Agreement: (i) to the extent required by Law or any Action in respect of the Acquired Business, (ii) to any court, any liquidator or any member of any committee of creditors, Tax Authority or Government Entity, (iii) in connection with any auction process approved by the Bankruptcy Court, (iv) to show appropriate figures in their administration records, accounts and returns, or (v) subject to entering into a confidentiality agreement with the relevant Third Party, in connection with acquiring, merging or otherwise combining, or being acquired by, or selling all or part of their assets to any Third Party (whether in a single transaction or a series of related transactions and whether structured as an acquisition of assets, securities or otherwise); provided, that, with respect to information and data relating exclusively to the Business, the Purchaser's and the Purchaser's Representatives' confidentiality obligations under this Section 5.11, the Confidentiality Agreement (including all amendments thereto) and the Clean Team Confidentiality Agreement (including all addenda thereto) shall terminate after the Closing Date. The Purchaser's confidentiality obligations with respect to other Confidential Information relating to the Business and/or Assets under the Confidentiality Agreement and the Clean Team Confidentiality Agreement (including as incorporated herein) shall terminate after the Closing Date except with respect to the terms and conditions of any Patent Cross-License Agreement or Omitted Patent Cross-License Agreement listed in Section 4.5(g)(iii) of the Sellers Disclosure Schedule (but not with respect to the existence of such Patent Cross-License Agreements and Omitted Patent Cross-License Agreements and the Transferred Patents to which they relate); provided, that the Purchaser shall treat such other Confidential Information with at least the same degree of care and confidentiality as it would treat its own confidential information of similar sensitivity were it in the Sellers' position. The Purchaser acknowledges that in the course of attempting to sell the Assets and the Business, one or more of the Sellers have entered into several confidentiality agreements with Third Parties in respect of information relating to the Assets and the Business and has disclosed such information to certain of those Third Parties.

(b) For purposes of this Agreement, "**Confidential Information**" consists of all competitively sensitive information and data related to the Sellers, the Business, the Assets (including Transferred Intellectual Property and competitively sensitive Business Information existing as of the Closing Date), the Purchaser or its Affiliates that is not, in each case, already available to the public (it being agreed that disclosure of Confidential Information to prospective purchasers, their representatives and other Persons affiliated with the sale process of the Business shall not be public disclosure thereof). Nothing herein or in the other Transaction Documents shall be construed as precluding, prohibiting, restricting or otherwise limiting the ability of the Sellers, the Sellers' Affiliates or their respective representatives to (i) disclose the terms of any of the Transaction Documents to any court or to any liquidator or in connection with any auction process approved by a Bankruptcy Court and show appropriate figures in their administration records, accounts and return; (ii) exercise or enforce any of their rights, or perform any obligations under this Agreement or the other Transaction Documents, including the Transition Services Agreement and the Intellectual Property License Agreement, (iii) make permitted disclosures under Section 5.7; (iv) make any disclosures that are required by applicable Law; (v) own, use or disclose Confidential Information that is not exclusive to the Business to the extent necessary to (in the reasonable judgment of the Sellers) operate the other business segments of the Sellers or their Affiliates or otherwise engage in any manner in any business activities unrelated to the Business; (vi) use Confidential Information to the extent necessary to perform any Seller Contracts not assigned to the Purchaser; (vii) share information to the extent reasonably necessary to allocate the purchase proceeds from the sale of the Assets; or (viii) make customary disclosures, subject to customary confidentiality agreements, regarding Confidential Information that is not exclusive to the Business and is primarily related to other business segments of the Sellers in connection with acquiring, merging or otherwise combining with, or being acquired by, or selling all or part of their assets to, any Person (whether in a single transaction or a series of related transactions or whether structured as an acquisition of assets, securities or otherwise).

(c) As promptly as reasonably practicable, and in no event more than thirty (30) days, after the Closing Date, the Sellers shall deliver to the Purchaser copies of correspondence, notices, filings, prosecution files, dockets, certifications and other documents relating to the filing, prosecution, issuance and renewal of the Business Registered IP, provided that all items to be delivered hereunder shall be delivered solely by remote telecommunication to the extent the Purchaser may so request. Without limiting the generality of the foregoing, within thirty (30) days of Closing, the Sellers shall and shall cause their Affiliates to, instruct their current attorneys and agents to deliver to the Purchaser, or attorneys designated by Purchaser, any and all records in the possession of such attorneys and agents relating to the prosecution of any applications, registrations and renewals of any Business Registered IP.

SECTION 5.12 Certain Payments or Instruments Received from Third Parties. To the extent that, after the Closing Date, (a) the Purchaser and/or any Designated Purchaser receives any payment or instrument that is for the account of a Seller according to the terms of any Transaction Document or relates primarily to any business or business segment of the Sellers other than the Acquired Business, the Purchaser shall, and shall cause the Designated Purchasers to, promptly deliver such amount or instrument to the relevant Seller, and (b) any of the Sellers receives any payment that is for the account of the Purchaser or any of the Designated Purchasers according to the terms of any Transaction Document or relates primarily to the

(viii) take or omit to take any action, or request the Bankruptcy Court to approve, authorize or require the Sellers to take or to omit to take any action that would materially affect any Seller's title to or the value of any Transferred Patent, Jointly Owned Patent or Specified UK Patent or would otherwise breach the Sellers' covenants under or any other provisions of this Agreement or the Transaction Documents, or consent to any such approval or authorization;

(ix) amend, or assign to any Third Party their rights under, any Cross-License Agreement or Outbound License Agreement to which any Transferred Patent, Jointly Owned Patent or Specified UK Patent is subject;

(x) fail to exercise any termination right pursuant to the terms of any Cross-License Agreement or Outbound License Agreement provided that such exercise would not result in the Sellers' incurring any meaningful cost or Liability or losing any meaningful right under such Cross-License Agreement or Outbound License Agreement;

(xi) consent to the assignment by any counterparty to any Cross-License Agreement or Outbound License Agreement of such counterparty's rights or obligations under any such agreement to any Person; or

(xii) authorize, agree or commit to do any of the foregoing.

SECTION 5.10. Transaction Expenses. Except as otherwise provided in this Agreement or the other Transaction Documents, each of the Purchaser and the Sellers shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby.

SECTION 5.11. Confidentiality.

(a) The Parties acknowledge that the Non-Disclosure Agreement and the Supplementary Non-Disclosure Agreement, as amended from time to time, remain in full force and effect in accordance with their terms, which are incorporated herein by reference, and the Parties agree to be bound thereby in the same manner and to the same extent as if the terms had been set forth herein in full, except that the Parties, the Joint Administrators and the French Liquidator shall be at liberty to disclose the terms of this Agreement to (i) if required by order of any court of competent jurisdiction or under any applicable Law, any court or to any court-appointed liquidator of any of the Sellers to show appropriate figures in their administration records, accounts and returns, (ii) the applicable Bankruptcy Court for the purposes of obtaining the Bankruptcy Consents and to the applicable Government Entities and Third Parties for purposes of obtaining the Mandatory Regulatory Consents or any other Consents contemplated hereunder; and (iii) as otherwise required by the terms and conditions of this Agreement (in respect of Third Parties pursuant to clause (ii) other than Government Entities, without any appurtenant schedules except for Sections 1.1(d) (Jointly Owned Patents), 1.1(h) (Listed Patents), 1.1(k) (Listed Inventions): A.l(d) (Cross-License Agreements); A.l(e) (Outbound License Agreements), and A.l(m) (Joint Ownership Agreements) of the Sellers Disclosure



Schedule, and only to the extent necessary to obtain the applicable Consent). Each Primary Party agrees not to request the other Primary Party to return or destroy Evaluation Material or Interested Party Material (as such terms are defined in the Non-Disclosure Agreement) pursuant to the Non-Disclosure Agreement unless this Agreement shall have terminated. The Parties further acknowledge that the Cross License Agreements and Outbound License Agreements provided or delivered pursuant to Sections 2.3.2(b) shall be deemed to have been provided to the Purchaser as "Highly Confidential Information" under the Supplementary Non-Disclosure Agreement, and the Supplementary Non-Disclosure Agreement shall apply to such documents. The Sellers agree to treat the Sellers Disclosure Schedules as Purchaser Confidential Information from and after the Closing.

(b)     The Sellers shall not, and shall use best efforts to cause their Affiliates not to, disclose any Purchaser Confidential Information, including by means of appropriate redaction, other than (A) to any member of any committee of creditors which may include the holders of, or investment managers for holders of, equity or debt securities of the Sellers, including, without limitation, those of (i) the Official Committee of Unsecured Creditors in the Chapter 11 Cases, (ii) the Ad-Hoc Committee of Bondholders in such Chapter 11 Cases and in the filings made by the Sellers under the CCAA Cases, (iii) the unofficial Canadian creditors' committee, and (iv) any other creditors' committees or analogous bodies appointed in respect of the EMEA Sellers and their debtor affiliates, (B) to the United States Trustee for the District of Delaware in the Chapter 11 Cases, (C) to any monitor, administrator, trustee or similar appointed official in any foreign proceedings, including, without limitation, Alan Bloom, Stephen Harris, Chris Hill and Alan Hudson of Ernst & Young LLP and David Hughes of Ernst & Young Chartered Accountants, in their capacities as the Joint Administrators, Maître Cosme Rogeau as French Liquidator, the Monitor in the CCAA Cases and with respect to the Sellers and each of the foregoing persons described in clauses (A), (B) or (C), any employees, agents, advisors (including, without limitation, attorneys, accountants, investment banks and consultants) and other representatives thereof; provided that, in the case of each of the persons described in the foregoing clauses (A), (B) or (C), the Sellers shall have used reasonable efforts to inform such Persons of the confidential nature of such information, and that, to the extent such Persons are not already required by applicable Law or any confidentiality agreement with the Sellers to keep such information confidential, such Persons shall have agreed to be bound by confidentiality restrictions, or (D) as may otherwise be required, based on the advice of legal counsel, under applicable Law, including, without limitation, the Bankruptcy Laws; provided, however, that to the extent legally permissible and reasonably practicable, the Sellers shall provide the Purchaser with prompt notice of such event described in (D) above so that, where possible, the Purchaser may seek a protective order or other appropriate remedy and the Sellers shall cooperate with the Interested Party in taking steps to resist or narrow the scope of such request or legal process (at the expense of the Purchaser). In the event that such protective order or other remedy is not obtained and any of the Sellers or their representatives are advised by legal counsel that it is compelled by Law to disclose any information described in the foregoing sentence, the Sellers or its representative, as the case may be, (i) may without liability hereunder furnish that portion (and only that portion) of such information which, based on the advice of legal counsel to the Sellers or their representatives, as the case may be, the Sellers or their representatives are legally required to disclose and (ii) will use commercially reasonable efforts to have confidential treatment accorded any such information so furnished. For the avoidance of doubt, none of the Sellers shall act in furtherance of or consent to the unsealing of any Transaction Documents that

127

are filed under seal unless otherwise ordered by the applicable Bankruptcy Court or unless the Purchaser shall consent in its sole discretion.

(c) Notwithstanding the foregoing Section 5.11(a), nothing contained in this Agreement or the Transaction Documents shall be deemed to prohibit the Parties, the Joint Administrators, or the French Liquidator from disclosing any information as may be required, based on the advice of legal counsel, under applicable Law, including Title 11 of the United States Code, the CCAA, the Insolvency Act of 1986 and any other applicable bankruptcy or insolvency Laws of any jurisdiction in which bankruptcy proceedings concerning Nortel are held from time to time, any legal process before, or any order of, the U.S. Bankruptcy Court or any other court of competent jurisdiction, the applicable rules or regulations of any securities exchange or similar self-regulatory authority or applicable securities Laws; provided, however, that to the extent legally permissible and reasonably practicable, if the relevant Party believes in its reasonable judgment that such legally required disclosure includes confidential information of any other Party hereunder, the disclosing Party shall provide the other Parties with prompt notice of such event so that, where possible, the affected Parties may seek a protective order or other appropriate remedy, and the relevant Parties shall cooperate in taking steps to resist or narrow the scope of such request or legal process (at the expense of the Party requesting such action). In the event that such protective order or other remedy is not obtained and any Party or its representatives are advised by legal counsel that it is compelled by Law, regulation or legal, regulatory or judicial process or the rules of a stock exchange or similar self-regulatory authority to disclose any information described in the foregoing sentence, such Party or its representatives, as the case may be, (i) may without liability hereunder furnish that portion (and only that portion) of such information which, based on the advice of legal counsel to such Party or its representative, as the case may be, such Party or its representative is legally required to disclose and (ii) will use commercially reasonable efforts to have confidential treatment accorded any such information so furnished.

SECTION 5.12. Certain Payments or Instruments Received from Third Parties. To the extent that, after the Closing Date, (a) the Purchaser receives any payment or instrument that is for the account of a Seller according to the terms of any Transaction Document, the Purchaser shall promptly deliver such amount or instrument to the relevant Seller, and (b) any of the Sellers receives any payment or instrument that is for the account of the Purchaser according to the terms of any Transaction Document, such Seller shall promptly deliver such amount or instrument to the Purchaser. All amounts due and payable under this Section 5.12 shall be due and payable by the applicable Party in immediately available funds, by wire transfer to the account designated in writing by the relevant Party. Notwithstanding the foregoing, each Party hereby undertakes to use reasonable best efforts to direct or forward all bills, invoices or like instruments to the appropriate Party.

SECTION 5.13. License to Transferred Patents, Jointly Owned Patents, Specified UK Patents and Licensed Residual Patents; Termination of Intercompany Arrangements.

(a) Concurrently with the Closing, (i) the Purchaser shall grant the Sellers a license under the Transferred Patents, the Purchased Specified UK and other Patents acquired pursuant to this Agreement in connection with (x) the disposal of Inventory and (y) contracts that

| IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION | Court File No.:09-CL-7950 |
|---|---|
| | *ONTARIO*<br>**SUPERIOR COURT OF JUSTICE**<br>Proceeding Commenced at Toronto |
| | **NINETY-FIFTH REPORT OF THE MONITOR DATED JUNE 5, 2013** |
| | **GOWLING LAFLEUR HENDERSON LLP**<br>Barristers & Solicitors<br>1 First Canadian Place,<br>100 King Street West, Suite 1600<br>Toronto ON M5X 1G5<br><br>**Derrick Tay (LSUC #: 21152A)**<br>**Jennifer Stam (LSUC #: 46735J)**<br>Tel: (416) 862-5697<br>Fax: (416) 862-7661<br><br>**GOODMANS LLP**<br>Barristers & Solicitors<br>333 Bay Street, Suite 3400<br>Toronto ON M5H 2S7<br><br>**Jay A. Carfagnini** (LSUC#: 22293T)<br>**Jessica Kimmel** (LSUC#: 32312W)<br>**Peter Ruby** (LSUC#: 38439P)<br>**Joseph Pasquariello** (LSUC#: 38390C)<br>Tel: 416.979.2211<br>Fax: 416.979.1234 |

# TAB 3

129

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| **THE HONOURABLE MR. JUSTICE MORAWETZ** | ) ) ) ) | **TUESDAY, THE 11th DAY OF JUNE, 2013** |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Protective Order)**

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "**Canadian Debtors**") jointly with Ernst & Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors for the relief set out in the Notice of Motion dated June 5, 2013 was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the Ninety-Fifth Report of the Monitor dated June 5, 2013 (the "**Ninety-Fifth Report**") and on hearing submissions of counsel for the Canadian Debtors, the Monitor, the CCC, **[insert other parties who make submissions]** and those other parties present, no one

appearing for any other person on the service list, although served as appears from the Affidavit of Service of ■, sworn June ■, 2013, filed.

1.    **THIS COURT ORDERS** that the time for the service of the Notice of Motion, the Ninety-Fifth Report, and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.    **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the protective order in the form attached hereto as Schedule "A" (the "**Protective Order**").

3.    **THIS COURT ORDERS** that the Protective Order be and is hereby approved.

**MISCELLANEOUS**

4.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.



5. **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

______________________________

## SCHEDULE A

**Attached.**

# PROTECTIVE ORDER

## 1. Application of this Protective Order.

(a) This Protective Order (the "Protective Order") shall govern the participation of any person, entity or group, including, but not limited to, the Canadian Debtors,[1] EMEA Debtors, US Debtors, Committee, Bondholder Group, Monitor, Joint Administrators, CCC, Indenture Trustees, UK Pension Claimants, and Officers and Directors (the "Parties" and each a "Party") and the Parties' counsel (and, where a Party is a committee or group, counsel to each member), in discovery undertaken in connection with the litigation or arbitration (subject to any Party's right to oppose any request for arbitration on any grounds and/or to oppose the use of any Discovery Material, as defined below, in any such arbitration) of Allocation, the EMEA Claims, and the UK Pension Claims in the US and/or Canadian Court (collectively the "Proceedings"), notwithstanding anything to the contrary previously agreed to or ordered by the United States Bankruptcy Court for the District of Delaware (the "US Court") or the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" and, together with the US Court, the "Courts"), and subject to approval by both Courts.

(b) This Protective Order shall govern the Proceedings with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information produced, given or disclosed by any Party or any non-parties (in each case, a "Producing Party") to any other Party or non-party receiving or viewing such materials(in each case, "Receiving Party"), including through access to a shared dataroom (all such materials and the substance of such materials, hereinafter referred to as "Discovery Material").

## 2. Highly Confidential Discovery Material.

(a) Any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that "Highly Confidential" documents and information shall not include:

(i) information that is publicly available in substantially the same form in which it was provided;

(ii) information that was, is or becomes public knowledge, not in violation of this Protective Order;

(iii) information that is voluntarily de-designated by the Producing Party;

(iv) information that a Court order has de-designated;

(v) information rightfully acquired from an independent source without restrictions as to use; or

[1] Capitalized terms not defined herein shall have the meaning given in the Allocation Protocol.

(vi) information that is at any time independently developed by a Party without use of or reliance upon any Discovery Material.

(b) Subject to these conditions and limitations, any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i) personal information that requires the protections provided in this Protective Order, including, but not limited to, social security numbers, information about current or former employee compensation and/or benefits, health information and financial information;

(ii) information required to be kept confidential pursuant to law or regulation; or

(iii) information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party;

(all information designated as such, including the document itself as well as the information therein, the "Highly Confidential Discovery Material").

**3. Confidential Discovery Material.**

(a) Any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that Confidential information shall not include any documents or information as set forth in Section 2(a) hereof.

(b) Subject to these conditions and limitations, any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i) non-public proprietary information about a Party;

(ii) non-public financial or accounting results or data;

(iii) tax returns, any tax-related correspondence or agreements with any government, all workpapers, books and records relating to taxes, any tax opinions, records (including accounting records) relating to taxes paid or payable by the parties, all intercompany agreements related to taxes, and all financial and tax records relating to the estate that form part of a parties' general ledger or otherwise constitute accounting records, as well as drafts with respect to any of the foregoing;

(iv) information subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party; or



(v) confidential communications offered in mediation or compromise negotiations, including, but not limited to, Discovery Material bearing a designation that it is subject to Federal Rule of Evidence 408;

(all documents or information designated as such, including the document itself as well as the information therein, the "Confidential Discovery Material").

**4. Designation of Documents.**

(a) A Producing Party may designate Discovery Material as Confidential Discovery Material by applying the legend "Confidential" to each page or portion containing any Confidential Discovery Material.

(b) A Producing Party may designate Discovery Material as Highly Confidential Discovery Material by applying the legend "Highly Confidential" to each page or portion containing any Highly Confidential Discovery Material.

(c) In the case of electronically produced information, the "Confidential" or "Highly Confidential" legend, if any, shall be printed on the cover or container of the disk, tape, or other medium in which the electronic form data is stored, and the "Confidential" or "Highly Confidential" legend shall be applied, by electronic means to each electronic document or other electronically stored information containing any Confidential or Highly Confidential Discovery Material, unless such electronic materials are produced in native format. If produced in native format, such materials will be produced without alteration along with a corresponding Bates-numbered slipsheet bearing the "Confidential" or "Highly Confidential" legend.

(d) The failure to designate a document as "Confidential" or "Highly Confidential" does not constitute a waiver of such claim, and a Producing Party may so designate a document after such document has been produced in accordance with Section 10, with the effect that such document is subject thereafter to the protections of this Protective Order.

(e) At the request of a Party (the "Requesting Party"), a Producing Party shall designate as Confidential or Highly Confidential Discovery Material containing information of the Requesting Party that the Requesting Party reasonably believes in good faith meets any of the criteria for such designation. With respect to Discovery Material designated as Confidential or Highly Confidential Discovery Material pursuant to request, the Requesting Party shall thereafter be deemed a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. The costs of providing new copies of such re-designated documents to each Receiving Party and/or a shared dataroom shall be borne by the Requesting Party, and the "Confidential" or "Highly Confidential" legend on such copies must clearly indicate the Party who requested the designation.

(f) A Party may designate as Confidential or Highly Confidential Discovery Material produced by another Party pursuant to subsection (e), even if such Discovery Material has already been designated as Confidential or Highly Confidential. If more than one Party designates the same Discovery Material as Confidential or Highly Confidential, all such Parties shall be considered a Producing Party with respect to such Discovery Material and be treated as a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order.



For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

**5.    Treatment of Highly Confidential Information.**

(a)    Any information designated as Highly Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)    Provided that disclosure is not otherwise prohibited by this Protective Order, and subject to Section 7(d), a Receiving Party shall only disclose Highly Confidential Discovery Material to:

(i)    current employees, officers and directors of a Receiving Party who previously had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material;

(ii)    former employees of a Receiving Party who are currently retained by that Party as consultants or independent contractors who during their employment with the Receiving Party had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material provided that they comply with the requirements of Section 13 hereof;

(iii)    court-appointed Monitors, Trustees and Administrators and their respective staffs, and for the US Debtors, the employees of RLKS Executive Solutions LLC and the employees of Avidity Partners, LLC;

(iv)    outside or in-house counsel for the Parties or outside or in-house counsel for members of a committee or group (where a Party is a committee or group), and legal assistants, secretaries, staff or agents and consultants working with or for such counsel, but only to the extent that it is reasonably necessary to share Highly Confidential Discovery Material;

(v)    litigation support personnel, including outside copying, scanning and coding services and court reporters;

(vi)    persons expected to be deponents, trial witnesses or hearing witnesses in the Proceedings and counsel to such persons, provided that counsel providing the Highly Confidential Discovery Material has a good-faith basis for believing that such witnesses had prior, rightful access to or knowledge of the Highly Confidential Discovery Material, and provided that counsel ascertain as soon as practicable whether such witnesses had such access or knowledge, and provided that upon the first indication that such witnesses did not have such access or knowledge, counsel must immediately refrain from any further disclosure to such witnesses and procure the return or destruction of such Highly Confidential Discovery Material;



(vii)   witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and/or party representatives designated for discovery examination pursuant to the Ontario Rule of Civil Procedure and/or alternative procedures agreed to by the Parties;

(viii)  any experts retained for the purpose of providing advice and assistance to outside counsel of record and/or giving evidence in the Proceedings, including their staff, provided that they comply with the requirements of Section 13 hereof;

(ix)    personnel of the Courts;

(x)     any other person upon written agreement of the Producing Party, provided that he or she complies with the requirements of Section 13 hereof;

(xi)    any other person upon order of the Court(s) and upon such conditions as may be imposed by the Court(s); and

(xii)   any other person, as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, subject to Section 9 of this Protective Order.

(c)     In addition to the foregoing, draft or final pleadings that cite to or quote Highly Confidential Discovery Material (but not any attachments thereto designated as Highly Confidential) may be shared with non-attorney representatives from each Party (or, where the Party is a committee or group, non-attorney representatives of each committee or group, who represent such member or group in committee or group matters), provided that they comply with the requirements of Section 13 hereof, but only to the extent that sharing such draft or final pleadings that cite to or quote Highly Confidential Discovery Material is necessary to render advice to or receive guidance or approval from the Party in the Proceedings.

(d)     Any Receiving Party may request leave of a Producing Party to show Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses in the Proceedings by providing notice to the Producing Party of the Highly Confidential Discovery Material the Receiving Party seeks to use and the parties shall use their best efforts within five business days to determine whether such material may be disclosed by the Receiving Party to such persons while protecting the Producing Party's need for confidentiality, including, but not limited to, considering whether portions of such material can be redacted and re-evaluating whether such material must be protected as Highly Confidential. In the event the Producing Party and the Receiving Party cannot resolve an issue concerning the use of Highly Confidential Discovery Material, the matter may be presented to the Courts for resolution on an expedited basis.

(e)     Persons receiving Highly Confidential Discovery Material pursuant to this Section shall not copy or disclose such Highly Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(f) Treatment of Highly Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

**6. Treatment of Confidential Information.**

(a) Any information designated as Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b) Provided that disclosure is not otherwise prohibited by this Protective Order and subject to Section 7(d), a Receiving Party shall only disclose Confidential Discovery Material to:

(i) parties or persons to whom Highly Confidential Discovery Material may be disclosed as set forth in Section 5;

(ii) current employees, officers, or directors of a Receiving Party (including current employees, officers or directors of members of a committee or group that is a Party provided that they comply with the requirements of Section 13 hereof), provided that disclosure is reasonably necessary to the Proceedings;

(iii) former employees of a Receiving Party, provided that disclosure is reasonably necessary to the Proceedings and that they comply with the requirements of Section 13 hereof; or

(iv) persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons.

(c) Persons receiving Confidential Discovery Material pursuant to this Section shall not copy or disclose such Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(d) Treatment of Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

**7. Permitted Purposes.**

(a) Confidential or Highly Confidential Discovery Material shall not be made public by any Party, shall be used only by persons permitted access to it per this Protective Order and shall be disclosed only to persons specified in this Protective Order.

(b) All Discovery Material (except such materials publicly available in substantially the same form), whether or not designated as Confidential or Highly Confidential Discovery Material, shall be used by Receiving Parties solely in connection with the Proceedings (including appeals), and not in connection with any other litigation, judicial or regulatory proceeding or for any business, commercial, competitive, personal or other purpose except as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory

authority or court order, provided, however, that this Protective Order shall not prohibit the UK Pension Claimants from complying with the Beddoe proceeding pending under U.K. law in the English High Court by disclosing Discovery Material to the Beddoe court and counsel (including barristers and solicitors) for the representative beneficiary in those proceedings (provided that such counsel is informed of the terms of this Protective Order and the UK Pension Claimants make a good faith effort to have such counsel comply with the requirements of Section 13) for purposes of obtaining periodic directions from the Beddoe court with respect to the Proceedings, provided that the Discovery Material is filed under seal and not available as a matter of public record.

(c) Any summary, compilation, notes, memoranda, analysis or copy containing Confidential or Highly Confidential Discovery Material, and any electronic image or database containing Confidential or Highly Confidential Discovery Material shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, memoranda, analysis, copy, electronic image or database is derived.

(d) This Protective Order has no effect upon, and shall not apply to, a Party's use of its own Confidential or Highly Confidential Discovery Material, including information designated as such under Section 4(e) and information that was, prior to disclosure, rightfully in the possession or knowledge of the Party, for any purpose.

(e) This Protective Order shall not preclude any Party from showing any Confidential or Highly Confidential Discovery Material or disclosing information derived therefrom at a deposition or examination for discovery to any witness, provided that, other than the witness, only those persons who are authorized by the terms of this Agreement to receive the Confidential or Highly Confidential Discovery Material to be disclosed to the witness are present at relevant portions of the deposition and the procedures provided for in Section 12 are in place.

**8. Court Filings.**

(a) Confidential or Highly Confidential Discovery Material shall not be filed in the public record absent the consent of the Producing Party or an order of the Court(s) so permitting.

(b) If a Party wishes to file or otherwise submit to the Court(s) any documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material, including, but not limited to, pleadings, memoranda, transcripts, and discovery responses, such Party may redact the Confidential or Highly Confidential Discovery Material. If the nature of the Highly Confidential Information makes redaction unreasonable or impossible, the Party may file the documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material under seal.

(c) The entry of this Protective Order by the Courts shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any further order of either Court required.



(d) The Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing. The Parties reserve all rights with respect to trial procedures.

**9. Compelled Disclosure.**

(a) If a Receiving Party is subpoenaed in another action or proceeding, served with a document demand, or otherwise required or compelled by law, regulation, government action or other process (any of the foregoing, a "Demand") to produce Confidential or Highly Confidential Discovery Material, the Receiving Party shall, if legally permitted, (i) give prompt written notice by overnight delivery, fax or email the earlier of five (5) business days of receipt, or fourteen (14) days prior to the response date of such Demand to counsel for the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material, provided, however, that such notice shall be given as soon as practicable if the response date of the demand is within fourteen (14) business days of receipt by the Receiving Party; and (ii) refrain from producing any Confidential or Highly Confidential Discovery Material in response to such Demand until the earlier of receipt of written notice from the Producing Party that it does not object to production of the Confidential or Highly Discovery Material, or resolution of any objection asserted by the Producing Party either by agreement or by final order of the Court(s) with jurisdiction over the objection of the Producing Party.

(b) The burden of opposing the enforcement of the Demand shall fall solely upon the Producing Party.

(c) Should a Producing Party neither provide written notice to the Receiving Party that it does not object to production of the Confidential or Highly Discovery Material nor submit a timely objection seeking an order that the Demand not be complied with and serve such objection upon the Receiving Party prior to production pursuant to the Demand, the Receiving Party shall be permitted to produce documents responsive to the Demand on the Demand's response date.

(d) Subject to the provisions of this Section, compliance by the Receiving Party with any order directing production pursuant to a Demand of any Confidential or Highly Confidential Discovery Material shall not constitute a violation of this Protective Order.

(e) Nothing herein shall be construed as requiring the Receiving Party or anyone else covered by this Protective Order to challenge or appeal any order directing production of Confidential or Highly Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order.

(f) The provisions of this Section shall apply to examinations conducted by bank or other regulators to which a Party may be subject, which may include examinations of Confidential or Highly Confidential Discovery Material received by any Party and its representatives. Any such disclosure shall be limited to such portions of the Confidential or Highly Confidential Discovery Material that the applicable Party's legal counsel advises is required under the subpoena, order or process, or request or demand by a regulatory authority,

organization of regulators or self-regulatory authority received by that Party (each a "Regulator Demand"). With respect to Regulator Demands for Confidential or Highly Confidential Discovery Material, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of any such Regulator Demand before the disclosure of such Confidential or Highly Confidential Discovery Material to such regulator, if the applicable Party is entitled to do so and if practicable. Otherwise, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of such Regulator Demand after the disclosure of any Confidential Information to regulator, if the applicable Party is entitled to do so. Nothing herein shall obligate any Party to prohibit or restrict any regulator's prompt access, in violation of any law, regulation, order or other obligation applicable to such Party, to documents or information in the custody, possession or control of such Party its representatives.

**10. No Waiver.**

(a) If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced should be designated as Confidential or Highly Confidential, the Producing Party may apprise the Receiving Parties in writing, and such designated Discovery Material will thereafter be treated as Confidential or Highly Confidential Discovery Material under the terms of this Protective Order, provided, however, that the Producing Party shall, at its cost, produce to each Receiving Party and/or to the shared dataroom substitute copies, bearing the legend "Confidential" or "Highly Confidential," of any such Discovery Material at which time the Receiving Party shall promptly return to the Producing Party or (at the election of the Receiving Party) destroy the previously produced copies of such substituted Discovery Material and shall have no right to access such substituted Discovery Material electronically.

(b) This Protective Order shall not prevent any Party from applying to the Court(s) in writing and on notice to the Parties for relief from this Protective Order or from any provision(s) thereof, or from applying to the Court(s) in writing and on notice to the Parties for further or additional protective orders.

(c) Producing or receiving Confidential or Highly Confidential Discovery Material or otherwise complying with the terms of this Protective Order shall not:

(i) prejudice in any way a Producing Party's rights to object to the authenticity or admissibility into evidence of any testimony or other evidence;

(ii) prejudice in any way the rights of the Parties to object to the production of documents that they consider not subject to discovery, or operate as an admission by any Party in the context of any other litigation or proceeding that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;

(iii) prejudice in any way the rights of a Party to seek a determination by the Court(s) whether any Discovery Material should be treated as Confidential

142

or Highly Confidential Discovery Material or subject to the terms of this Protective Order, provided that a Party seeking to challenge the designation of any Discovery Material as Confidential or Highly Confidential shall be obligated to meet and confer in good faith prior to seeking judicial resolution and follow the procedures provided in Section 11; or

(iv) prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided herein with respect to any particular Discovery Material.

**11. Objections to Designation.**

(a) Any Party objecting to the designation of any particular Discovery Material or testimony as Confidential or Highly Confidential Discovery Material shall so inform the Producing Party, stating the grounds of the objection, and, unless provided otherwise by the discovery plan adopted by the Courts, they shall have seven (7) business days to attempt to resolve the objection, at the end of which the Party objecting to the designation may seek a ruling from the Court(s), on no less than three (3) business days' notice to the Producing Party, that such information should not be treated as Confidential or Highly Confidential Discovery Material, provided that no Confidential or Highly Confidential Discovery Material shall be filed in the public record or disclosed other than in accordance with the terms of this Protective Order prior to such a determination by the Court(s), and provided further that the burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure.

(b) Each Party hereby agrees that it will not contest a Party's request for expedited consideration of any relief sought from the Court(s) pursuant to this Section.

**12. Use in Depositions / Examinations for Discovery.**

(a) If Confidential or Highly Confidential Discovery Material is utilized in a deposition, including a deposition of a party representative, examination for discovery or other recorded testimony, the Producing Party of the Confidential or Highly Confidential Discovery Material may designate the portion of the transcript relating to the Confidential or Highly Confidential Discovery Material as Confidential or Highly Confidential.

(b) Any deponent or examinee for discovery or his or her counsel may designate all or part of the transcript of a deposition or examination for discovery as Highly Confidential or Confidential. Such deponent or examinee will be the Producing Party of the deposition or examination testimony for purposes of this Protective Order, except that testimony about Confidential or Highly Confidential Discovery Material for which the deponent or examinee is not a Producing Party shall also be deemed to have been produced by the Producing Party of the Confidential or Highly Confidential Discovery Material discussed.

(c) Designation of all or part of a transcript as Highly Confidential or Confidential may be made on the record during the deposition or examination or may be made by giving written notice to the court reporter and counsel for all Parties within seven (7) business days after

receiving the transcript from the court reporter. All deposition or examination transcripts will be considered Confidential for the first seven (7) business days after receiving the transcript from the court reporter, unless designated otherwise by agreement of the Parties, by the Producing Party of Confidential or Highly Confidential Discovery Material discussed therein and/or by the deponent or examinee, as the case may be.

(d) The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition.

**13. Disclosure to Certain Firms and Individuals.**

(a) Prior to disclosure of Confidential or Highly Confidential Discovery Material pursuant to Sections 5(b)(ii), (viii) and (x) (including as incorporated by reference in Section 6(b)(i) hereof); 5(c) and 6(b)(ii) and (iii) hereof, counsel for the Receiving Party shall provide a copy of this Protective Order to the person or the representative of the firm to whom disclosure is intended and such person or representative must execute a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

(b) A Receiving Party shall not disclose any Confidential or Highly Confidential Discovery Material to any holder of, or the investment manager for holders of, debt securities issued and/or guaranteed by the Canadian Debtors, EMEA Debtors or US Debtors, or to any officers, employees, counsel, accountants, advisors or agents of the Receiving Party that might be involved in acquiring any assets of or trading in claims against (including debt securities issued by any of) the Canadian Debtors, EMEA Debtors or US Debtors, unless such person or the representative of the person or firm to whom disclosure is intended executes a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

**14. Third-Party Beneficiaries.**

Third parties that produce documents for use in the Proceedings, either voluntarily or pursuant to a subpoena or in response to discovery requests in connection with the Proceedings, are intended third-party beneficiaries of this Protective Order and shall have the right to designate materials as Confidential or Highly Confidential Discovery Material in accordance with the terms hereof and shall otherwise have the same rights and responsibilities as a Producing Party.

**15. Redaction of Personal Information.**

(a) Each Producing Party may redact from Discovery Material it produces, whether or not such Discovery Material are designated Confidential or Highly Confidential, such personal information (e.g., social security numbers, home addresses, bank account information) as the Producing Party deems appropriate, such as information required not to be disclosed by the data protection, privacy or similar laws of the Producing Party's jurisdiction.

(b) If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced contains personal information to which a non-disclosure

obligation applies, the Producing Party may apprise the Receiving Parties in writing. Promptly after receiving written notice of an inadvertent production of personal information, each Receiving Party shall return to the Producing Party or (at the election of the Receiving Party) destroy the Discovery Material as to which the claim of inadvertent production has been made and shall not use the inadvertently produced personal information for any purpose. The Producing Party shall, at its cost, provide each Receiving Party and/or the shared dataroom with substitute copies, bearing appropriate redactions, of any such Discovery Material.

(c) Each Receiving Party retains the right to move for the disclosure of the redacted information.

**16. Survival.**

(a) The provisions of this Protective Order shall, absent written permission of the Producing Party or further order of the Court(s), continue to be binding throughout and after the conclusion of the Proceedings, including without limitation any appeals therefrom.

(b) When any Party receives a notice from a court as to the release, unsealing or disposal of Confidential or Highly Confidential Discovery Material submitted by that Party, but designated Confidential or Highly Confidential by another Producing Party, the Party receiving the notice shall promptly send the notice to all Parties by overnight delivery, fax or email, so as to enable the Parties to take any actions they deem appropriate. The provisions of this Section may be waived only with the written consent of the Producing Party.

**17. Disposal of Confidential and Highly Confidential Discovery Material.**

(a) Within thirty (30) days after the time for appeal of an order, judgment, or decree finally disposing of or resolving the Proceedings has expired, all persons having received Confidential or Highly Confidential Discovery Material shall, at their own cost and expense, either return such material and all copies thereof (including summaries and excerpts) to counsel for the Producing Parties or (at the election of the Receiving Party) destroy all such Confidential or Highly Confidential Discovery Material and certify that fact to the Producing Parties. Documents that have been received electronically must be electronically deleted and deleted from "trash" files; provided, however, that to the extent that Confidential or Highly Confidential Discovery Material exists in whole or in part on computer backup tapes or other not readily accessible media used for disaster recovery purposes, information from such media does not need to be restored for purposes of destroying or returning Confidential or Highly Confidential Discovery Material, but such retained information shall continue to be treated in accordance with this Protective Order.

(b) Notwithstanding the preceding paragraph, outside counsel for the Parties shall be entitled to retain court papers, deposition and court transcripts, and attorney work product that includes or summarizes Confidential Discovery Material or Highly Confidential Discovery Material provided that such outside counsel, and employees of such outside counsel, shall not disclose such court papers, deposition or trial transcripts, or attorney work product to any person except pursuant to court order or agreement with the Producing Party as to the Confidential Discovery Material or Highly Confidential Discovery Material at issue.



(c) Notwithstanding anything herein to the contrary, the obligations of this Section shall not preclude any Party or its experts or consultants from complying with document retention policies imposed by applicable law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, provided that the Party, expert or consultant provides notice of its retention of the documents to the Producing Party.

**18. Privileged Documents.**

(a) Nothing in this Protective Order shall require disclosure of information that counsel contends is protected from disclosure by solicitor-client privilege, attorney-client privilege, work-product immunity, or any other applicable privilege, immunity or protection from disclosure under any applicable law (each a "Privilege" and, collectively, the "Privileges").

(b) Consistent with Rule 502(d) of the United States Federal Rules of Evidence, if information subject to a claim of Privilege is produced, such production shall not constitute or be deemed a waiver of any claim of a Privilege that the Producing Party would otherwise be entitled to assert in the Proceedings or any other proceeding, either with respect to the produced Discovery Material or any other documents, communications, or information concerning the same subject matter. The production of information subject to a claim of Privilege is without prejudice to the right of a Producing Party to seek the return or destruction of any document as to which a claim of Privilege is later asserted.

(c) If information subject to a claim of Privilege is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of a Privilege for such information or any other information that may be protected from disclosure by Privilege. If a Party has inadvertently or mistakenly produced a document or information that is subject to a good faith claim of Privilege, upon request by the Producing Party promptly after discovery of such inadvertent or mistaken production, the document for which a claim of inadvertent production is made shall be returned within three (3) business days of such request and all copies of that document that may have been made shall be destroyed to the extent reasonably practicable, and the Receiving Party shall not use such information for any purpose.

(d) The Party returning such material may then file under seal a motion for an order compelling production of the material, but such motion shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent production, and such motion shall not quote from or attach such material. While the motion for an order compelling production is pending before the Court(s), the moving Party shall not maintain a copy of, quote from or otherwise use the material.

(e) No public disclosure of the contents of the Discovery Material as to which the claim of Privilege has been made shall occur absent order of the Court(s).

(f) If, at trial, at a hearing, at a deposition, at an examination for discovery or on a motion, a Producing Party marks for identification or offers into evidence information subject to a claim of Privilege by the Producing Party, or proffers or elicits testimonial or other evidence that incorporates or relies on information subject to a claim of Privilege, that act shall be deemed



to effect a waiver and forfeiture by the Producing Party of Privilege. The preceding sentence shall not apply to (1) proceedings to determine whether the information is subject to a claim of Privilege, or (2) information subject to a claim of Privilege that is marked for identification, offered into evidence, or incorporated in evidence proffered or elicited by a Party other than the Producing Party, or relied on by a witness proffered by a Party other than the Producing Party. By marking for identification or offering into evidence information subject to a claim of Privilege, the Producing Party shall not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter.

(g) If information is subject to a claim of privilege ("Joint Privileged Information"), which appears on its face to be held by two or more Parties ("Joint Privilege"), a Party who claims the Joint Privilege shall not refuse to produce any such Joint Privileged Information to any other Party or Parties with whom the Joint Privilege is shared. A Party who holds the Joint Privilege may produce Joint Privileged Information only to those other Parties with whom it shares the Joint Privilege and shall not produce such Joint Privileged Information to Parties that do not share in the Joint Privilege or to a shared dataroom. If a Party who wishes to rely on Discovery Material containing Joint Privileged Information, such Party shall, without prejudice to its position on the claim of privilege, provide notice to the other Parties with whom it shares the Joint Privilege and such other Parties shall have seven days after receiving notice to seek a protective order from the Court(s) in writing and on notice to the Parties. Absent an order from the Court(s) granting such protective order, the Party seeking to rely on Discovery Material containing Joint Privileged Information shall designate such Discovery Material as "Highly Confidential" and produce it to the other Parties and/or to a shared dataroom. Disclosure to a shared dataroom or to persons permitted to view Highly Confidential Discovery Material under this Protective Order does not effect a waiver of privilege as to Parties other than the Producing Party subject to the foregoing sections. The production of such Discovery Material containing Joint Privileged Information does not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter as the Joint Privileged Information.

**19. Effective Date and Enforceability.**

(a) This Protective Order will become effective upon the date that it has been approved by both Courts (the "Effective Date").

(b) Nothing in this Protective Order shall preclude any Party from seeking judicial relief, upon notice to the other Parties, with regard to any provision hereof.

(c) No amendment or modification of this Protective Order shall be binding or enforceable unless in writing and signed by the Parties, or ordered by the Courts.

**20. Allocation Dataroom Access**

(a) Upon the Effective Date, all documents ("Allocation Dataroom Documents") in the electronic data site established to facilitate settlement discussions (the "Allocation Dataroom") shall be deemed produced in the Proceedings pursuant to this Protective Order, and subject to its terms, including but not limited to the provisions of Section 18.



(b) From and after the Effective Date, this Protective Order shall govern and shall supersede the provisions in prior confidentiality agreements with respect to Allocation Dataroom Documents, but only as to the Parties and any other persons or entities who are entitled to receive documents under this Protective Order (subject to any requirements herein, including, but not limited to, Section 13).

(c) The Parties shall have twenty-one (21) days following the Effective Date to designate documents in the Allocation Dataroom as Highly Confidential Discovery Material. Any Party making such designation will be required to provide new documents with the Highly Confidential legend to replace existing or to otherwise bear the cost of the designation of such documents. Until such period expires, all Parties with access to the Allocation Dataroom will treat documents therein as Highly Confidential Discovery Material.

(d) After the expiration of the 21-day period, a Party shall have the right at any time to designate such documents in the Allocation Dataroom as Highly Confidential in accordance with paragraph 10(a). Such documents will thereafter be treated as if they had been designated as Highly Confidential in the 21-day period after the Effective Date.

(e) Notwithstanding anything to the contrary herein, all documents in the Allocation Dataroom shall be deemed Confidential upon the Effective Date and will be electronically stamped with the Confidential legend. Where it is evident from the Bates Stamp which Party supplied the document to the Allocation Dataroom, that Party will be deemed the Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. Absent such evidence, the document will be deemed produced by the US Debtors, Canadian Debtors and EMEA Debtors and all such Parties shall each be considered a Producing Party with respect to such documents and be treated as a Producing Party for purposes of Subsection (f) *infra*, and Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

(f) In the event any Party objects to the designation of specifically identified documents from the Allocation Dataroom, the Producing Party shall reconsider such designation and, within ten (10) days, either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material.

**21. Intentional or Negligent Disclosure of Confidential or Highly Confidential Discovery Material.**

In the event of an alleged intentional or negligent disclosure of Highly Confidential Discovery Material or Confidential Discovery Material in violation of this Protective Order, the Parties shall first seek to resolve the alleged violation through prompt and reasonable discussion. In the event such efforts fail to promptly resolve the alleged violation, the Parties reserve the right to seek any available remedy from the Courts, including, *inter alia*, money damages, injunctive relief or any other relief as appropriate.

**22. Enforcement Pending Entry.**

The Parties agree to be bound by the terms of this Protective Order pending the entry of this Protective Order by the Courts, and any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order has been issued and entered by the Courts.

**23. Jurisdiction.**

The US Court and the Canadian Court shall retain jurisdiction and venue for the purposes of any dispute arising out of or relating to this Protective Order. For the avoidance of doubt, the Parties' obligations remain ongoing, and such jurisdiction and venue is retained even to the extent this Protective Order is utilized in connection with any arbitration proceeding.

**EXHIBIT A**

I, ________________________________________, declare under penalty of perjury, the following:

I reside at ______________________________________________ in the City of ________________ and State/Province of ________________________________________;

I have read the annexed Protective Order dated ______________, 2013;

I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order and consent and attorn to the jurisdiction of the United States Bankruptcy Court for the District of Delaware and the Ontario Superior Court of Justice solely for the purpose of enforcement of the provisions of the Confidentiality Protective Order and Protective Order. I will not divulge any Discovery Material to persons other than those specifically authorized by the Protective Order, and will take reasonable steps, including, but not limited to, establishing information firewalls, to prevent the inadvertent disclosure of Discovery Material to any persons not so authorized. I understand, in particular, that any Confidential or Highly Confidential Discovery Material, and any copies, excerpts or summaries thereof, or materials containing Confidential or Highly Confidential Discovery Material derived therefrom, as well as any knowledge or information derived from any of these items, may be used only for the Proceedings and may not be used to inform the purchase or sale of securities or for any other purpose, including, without limitation, any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order may result in legal action against me, such as for contempt of court or liability for monetary damages.

Dated: ________________ Signature: ________________________________________

**IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

**ORDER**
**(Protective Order)**

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay** (LSUC #: 21152A)
**Jennifer Stam** (LSUC #: 46735J)
Tel: (416) 862-5697
Fax: (416) 862-7661

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON M5H 2S7

**Jay A. Carfagnini** (LSUC#: 22293T)
**Jessica Kimmel** (LSUC#: 32312W)
**Peter Ruby** (LSUC#: 38439P)
**Joseph Pasquariello** (LSUC#: 38390C)
Tel: 416.979.2211
Fax: 416.979.1234

**IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

**MOTION RECORD**
**(Protective Order)**
**(returnable June 11, 2013)**

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay** (LSUC #: 21152A)
**Jennifer Stam** (LSUC #: 46735J)
Tel: (416) 862-5697
Fax: (416) 862-7661

Lawyers for the Applicants

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON M5H 2S7

**Jay A. Carfagnini** (LSUC#: 22293T)
**Jessica Kimmel** (LSUC#: 32312W)
**Peter Ruby** (LSUC#: 38439P)
**Joseph Pasquariello** (LSUC#: 38390C)
Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.