Court File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

## CROSS MOTION RECORD

June 5, 2013

**Paliare Roland Rosenberg Rothstein LLP**
155 Wellington Street West
35th Floor
Toronto ON  M5V 3H1
Tel:    416.646.4300
Fax:    416.646.4301

**Kenneth T. Rosenberg (LSUC #21102H)**
**Andrew K. Lokan (LSUC #31629Q)**

Email: ken.rosenberg@paliareroland.com
          andrew.lokan@paliareroland.com

Lawyers for the Canadian Creditors'
Committee

TO:          **THE SERVICE LIST ATTACHED**

*May 29, 2013*

Court File No.  09-CL-7950

**ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL
CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL
NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**SERVICE LIST**

| TO: | **NORTON ROSE CANADA LLP**<br>Royal Bank Plaza, South Tower<br>200 Bay Street, Suite 3800<br>Toronto, Ontario M5J 2Z4 | AND<br>TO: | **GOWLING LAFLEUR HENDERSON LLP**<br>Suite 1600, First Canadian Place<br>100 King Street West<br>Toronto, Ontario  M5X 1G5 |
|---|---|---|---|
| | Catherine Ma | | Derrick Tay<br>Jennifer Stam<br>Katie Parent |
| | Email:  catherine.ma@nortonrose.com | | Email:  derrick.tay@gowlings.com<br>jennifer.stam@gowlings.com<br>katie.parent@gowlings.com |
| | Tel:      416.216.4000<br>Fax:     416.216.3930 | | Tel:      416.862.5697<br>Fax:     416.862.7661 |
| | Lawyers for the Applicants | | Lawyers for the Applicants |

- 2 -

TO:   **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, Ontario  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:  nortel.monitor@ca.ey.com

Tel:   416.943.3016
Fax:  416.943.3300

AND
TO:   **GOODMANS LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario  M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Fred Myers
Chris Armstrong
Peter Ruby

Email:  jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
fmyers@goodmans.ca
carmstrong@goodmans.ca
pruby@goodmans.ca

Tel:   416.597.4107
Fax:  416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND
TO:   **OSLER HOSKIN AND HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, Ontario  M5X 1B8

Lyndon Barnes
Edward Sellers
Betsy Putnam
Adam Hirsh

Email:  lbarnes@osler.com
esellers@osler.com
eputnam@osler.com
ahirsh@osler.com

Tel:   416.362.2111
Fax:  416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND
TO:   **FASKEN MARTINEAU DUMOULIN LLP**
66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, Ontario  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Jon Levin

Email:  dmilner@fasken.com
akauffman@fasken.com
jlevin@fasken.com

Tel:   416.868.3538
Fax:  416.364.7813

Lawyers for Export Development Canada

- 3 -

| | |
|---|---|
| AND TO: | **EXPORT DEVELOPMENT CANADA**<br>151 O'Connor Street<br>Ottawa, Ontario  K1A 1K3<br><br>Jennifer Sullivan<br><br>Email:  jsullivan@edc.ca<br><br>Tel:      613.597.8651<br>Fax:     613.598.3113 | AND TO: | **THORNTON GROUT FINNIGAN LLP**<br>3200-100 Wellington Street West<br>Toronto-Dominion Centre, Canadian Pacific Tower<br>Toronto, Ontario  M5K 1K7<br><br>Leanne M. Williams<br><br>Email:  lwilliams@tgf.ca<br><br>Tel:      416.304.1616<br>Fax:     416.304.1313<br><br>Lawyers for Flextronics Telecom Systems Ltd. |

**AND TO:** **EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, Ontario  K1A 1K3

Jennifer Sullivan

Email:  jsullivan@edc.ca

Tel:      613.597.8651
Fax:     613.598.3113

**AND TO:** **THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, Ontario  M5K 1K7

Leanne M. Williams

Email:  lwilliams@tgf.ca

Tel:      416.304.1616
Fax:     416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

**AND TO:** **McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS  B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:  john.stringer@mcinnescooper.com
            stephen.kingston@mcinnescooper.com

Tel:      902.425.6500
Fax:     902.425.6350

Lawyers for Convergys EMEA Limited

**AND TO:** **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M5H 3S1

Jeffrey Carhart

Email:  jcarhart@millerthomson.com

Tel:      416.595.8615/8577
Fax:     416.595.8695

Lawyers for Toronto-Dominion Bank

**AND TO:** **CAW-CANADA**
Legal Department
205 Placer Court
Toronto, Ontario M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:  barry.wadsworth@caw.ca
            lewis.gottheil@caw.ca

Tel.:     416.495.3776
Fax:     416.495.3786

Lawyers for all active and retired Nortel employees represented by the CAW-Canada

**AND TO:** **BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC  V7X 1S8

R. Hoops Harrison

Email:  hharrison@boughton.ca

Tel:      604.687.6789
Fax:     604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd., in its capacity as duly authorized agent for Holdings 1506 Enterprises Ltd.

- 4 -

AND TO:
**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, Ontario  M5H 3Y4

Roger Jaipargas

Email:  rjaipargas@blgcanada.com
Tel:    416.367.6266
Fax:    416.361.7067

Lawyers for Bell Canada

AND TO:
**SISKINDS LLP**
680 Waterloo Street
London, Ontario  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Emilie E. M. Maxwell

Email:  ray.leach@siskinds.com
         dimitri.lascaris@siskinds.com
         emilie.maxwell@siskinds.com

Tel:    519.672.2121
Fax:    519.672.6065

Lawyers for Indiana Electrical Workers
Pension Trust Fund IBEW, Laborers Local
100 and 397 Pension Fund, and Bruce
William Lapare

AND TO:
**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario  M5H 3R3

Mark Zigler
Susan Philpott
Ari Kaplan
Barbara Walancik

Email:  mzigler@kmlaw.ca
Tel:    416.595.2090
Fax:    416.204.2877

Email:  sphilpott@kmlaw.ca
Tel:    416.595.2104
Fax:    416.204.2882

Email:  akaplan@kmlaw.ca
Tel:    416.595.2087
Fax:    416.204.2875

Email:  bwalancik@kmlaw.ca
Tel:    416.542.6288
Fax:    416.204.2906

Lawyers for the Former Employees of Nortel

AND TO:
**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan

Email:  zychk@bennettjones.com
Tel:    416.777.5738
Fax:    416.863.1716

Email:  orzyr@bennettjones.com
Tel:    416.777.5737
Fax:    416.863.1716

Email:  finlaysong@bennettjones.com
Tel:    416.777.5762
Fax:    416.863.1716

Email:  swanr@bennettjones.com
Tel:    416.777.7479
Fax:    416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

- 5 -

AND TO:

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, Ontario  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Karen Jones
Tina Lie
Michelle Jackson

Email:   ken.rosenberg@paliareroland.com
Tel:      416.646.4304
Fax:      416.646.4301

Email:   max.starnino@paliareroland.com
Tel:      416.646.7431
Fax:      416.646.4301

Email:   lily.harmer@paliareroland.com
Tel:      416.646.4326
Fax:      416.646.4301

Email:   karen.jones@paliareroland.com
Tel:      416.646.4339
Fax:      416.646.4301

Email:   tina.lie@paliareroland.com
Tel:      416.646.4332
Fax:      416.646.4301

Email:   michelle.jackson@paliareroland.com
Tel:      416.646.7470
Fax:      416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario  M5H 3R3

Mark Zigler
Susan Philpott
Ari Kaplan
Barbara Walancik

Email:   mzigler@kmlaw.ca
Tel:      416.595.2090
Fax:      416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:      416.595.2104
Fax:      416.204.2882

Email:   akaplan@kmlaw.ca
Tel:      416.595.2087
Fax:      416.204.2875

Email:   bwalancik@kmlaw.ca
Tel:      416.542.6288
Fax:      416.204.2906

Lawyers for the LTD Beneficiaries

- 6 -

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario M5H 3S1

Jeffrey Carhart

Email: jcarhart@millerthomson.com
Tel: 416.595.8615
Fax: 416.595.8695

Lawyers for LG Electronics Inc.

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario M5H 3S1

Jeffrey Carhart

Email: jcarhart@millerthomson.com
Tel: 416.595.8615
Fax: 416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

AND TO:

**CHAITONS LLP**
Barristers & Solicitors
5000 Yonge Street, 10th Floor
Toronto, Ontario M2N 7E9

Harvey G. Chaiton

Email: harvey@chaitons.com
Tel: 416.218.1129
Fax: 416.218.1849

Lawyers for IBM Canada Limited

AND TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario M5X 1G5

E. Patrick Shea

Email: patrick.shea@gowlings.com

Tel: 416.369.7399
Fax: 416.862.7661

Lawyers for Westcon Group

AND TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, Ontario M5X 1B2

R. Shayne Kukulowicz
Michael J. Wunder
Ryan Jacobs

Email: Shayne.kukulowicz@fmc-law.com
Michael.wunder@fmc-law.com
ryan.jacobs@fmc-law.com

Tel: 416.863.4511
Fax: 416.863.4592

Canadian Lawyers for the Official
Committee of Unsecured Creditors

AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, Ontario M5H 3Y2

Jonathan Wigley

Email: jwigley@gardiner-roberts.com
Tel: 416.865.6655
Fax: 416.865.6636

Lawyers for Andrew, LLC

- 7 -

AND
TO:
**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:    hfogul@airdberlis.com
Tel:      416.865.7773
Fax:      416.863.1515

Email:    pczegledy@airdberlis.com
Tel:      416.865.7749
Fax:      416.863.1515

Lawyers for Microsoft Corporation

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:    sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:    iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND
TO:
**VERINT SYSTEMS, INC.**
800 North Point Parkway
Alpharetta, Georgia  30005

Paige Honeycutt
Assistant General Counsel

Email:    paige.honeycutt@verint.com
Tel:      770.754.1900
Fax:      678.319.0732

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

AND
TO:
**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:    rslattery@mindengross.com
          dullmann@mindengross.com
Tel:      416.369.4149
Fax:      416.864.9223

Lawyers for Verizon Communications Inc.

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:    renglish@airdberlis.com
          smitra@airdberlis.com

Tel:      416.863.1500
Fax:      416.863.1515

Lawyers for Tata Consultancy Services
Limited and Tata America International
Corporation

AND
TO:
**ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:    surquhart@ahbl.ca
Tel:      604.484.1757
Fax:      604.484.1957

Lawyers for Algo Communication Products
Ltd.

- 8 -

AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent

Email:   andrew.kent@mcmillan.ca
Tel:      416.865.7160
Fax:     416.865.7048

Lawyers for Royal Bank of Canada

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, Ontario  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:     416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:     416.365.7886

Lawyers for Brookfield LePage Johnson
Controls Facility Management Services

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for Perot Systems Corporation

AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Brett Harrison
Jeffrey Levine

Email:   brett.harrison@mcmillan.ca
Tel :     416.865.7932
Fax :    416.865.7048

Email:   jeffrey.levine@mcmillan.ca
Tel:      416.865.7791
Fax:     416.865.7048

Lawyers for Citibank

AND
TO:

**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:   dgrieve@casselsbrock.com
Tel:      416.860.5219
Fax:     416.350.6923

Lawyers for Alvarion Ltd.

AND
TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley

Email:   jwigley@gardiner-roberts.com
Tel:      416.865.6655
Fax:     416.865.6636

Lawyers for Amphenol Corporation

- 9 -

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra

Email:  smitra@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

AND TO:
**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Junior Sirivar
Geoff R. Hall

Email:  jsirivar@mccarthy.ca
Tel:    416.601.7750
Fax:    416.868.0673

Email:  ghall@mccarthy.ca
Tel:    416.601.7856
Fax:    416.868.0673

Lawyers for Frank Andrew Dunn

AND TO:
**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Chris Besant
Lydia Salvi

Email:  chris.besant@bakernet.com

Tel:    416.865.2318
Fax:    416.863.6275

Email:  lydia.salvi@bakernet.com

Tel:    416.865.6944
Fax:    416.863.6275

Lawyers for Jabil Circuit Inc.

AND TO:
**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:  pklepsoe@mcfarlanelaw.com

Tel:    613.233.2679
Fax:    613.233.3774

Lawyers for Iron Mountain Canada
Corporation and Iron Mountain Information
Management, Inc.

AND TO:
**McMILLAN LLP**
1900, 736-6th Avenue S.W.
Calgary, Alberta  T2P 3T7

Adam Maerov

Email:  adam.maerov@mcmillan.ca
Tel:    403.215.2752
Fax:    403.531.4720

Lawyers for Right Management Inc.

AND TO:
**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
David S. Ward
Bill Burden
Lara Jackson

Email:  bleonard@casselsbrock.com
         dward@casselsbrock.com
         bburden@casselsbrock.com
         ljackson@casselsbrock.com

Tel:    416.860.6455
Fax:    416.640.3054

Co-Counsel for the UK Pension Protection
Fund and Nortel Networks UK Pension Trust
Limited

- 10 -

AND TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:  ryanbellr@bennettjones.com
laugesenm@bennettjones.com

Tel:    416.863.1200
Fax:   416.863.1716

Lawyers for Tel-e Connect Systems Ltd.
and
Tel-e Connect Systems (Toronto) Ltd.

AND TO:

**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:  dgoldstein@schneidergaggino.com
mgaggino@schneidergaggino.com

Tel:    514.631.8787
Fax:   514.631.0220

Lawyers for the Teamsters Quebec Local
1999

AND TO:

**IRVING MITCHELL KALICHMAN LLP**
Place Alexis Nihon, Tour 2
3500 Boulevard De Maisonneuve Ouest
Bureau 1400
Montreal, Quebec  H3Z 3C1

Kurt A. Johnson

Email :  kjohnson@imk.ca
Tel:    514.935.5755
Fax :   514.935.2999

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham
Ainslie Benedict

Email:  janice.payne@nelligan.ca
steven.levitt@nelligan.ca
christopher.rootham@nelligan.ca
ainslie.benedict@nelligan.ca

Tel:    613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post
CCAA as at January 14, 2009

- 11 -

AND TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Raffy Lorentzian

Email: raffy.lorentzian@ntscorp.com
Tel: 714.998.4351
Fax: 714.998.7142

Lawyers for AETL Testing, Inc

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON M5J 2T9

Steven L. Graff
Ian E. Aversa

Email: sgraff@airdberlis.com
Tel: 416.865.7726
Fax: 416.863.1515

Email: iaversa@airdberlis.com
Tel: 416.865.3082
Fax: 416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND TO:
**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON M5X 1G5

David F.W. Cohen

Email: david.cohen@gowlings.com

Tel: 416.369.6667
Fax: 416.862.7661

Lawyers for General Electric Canada
Equipment Finance G.P. and GE Capital
Canada Leasing Services Inc.

AND TO:
**EURODATA**
2574 Sheffield Road
Ottawa, Ontario K1B 3V7

Nanci Shore

Email: nanci@eurodata.ca
Tel: 613.745.0921
Fax: 613.745.1172

AND TO:
**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario M5H 4G2

Timothy R. Dunn

Email: tdunn@mindengross.com
Tel: 416.369.4335
Fax: 416.864.9223

Lawyers for 2748355 Canada Inc.

AND TO:
**BALDWIN LAW PROFESSIONAL CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email: ibrady@baldwinlaw.ca
Tel: 613.771.9991
Fax: 613.771.9998

Lawyers for Sydney Street Properties Corp.

- 12 -

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:     416.365.3529
Fax:     416.369.5210

Email:  jdavissydor@davis.ca
Tel:     416.941.5397
Fax:     416.365.7886

Lawyers for Computershare Trust Company
of Canada

AND
TO:

**LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:      416.598.1744
Fax:      416.598.3730

Email:  slaubman@counsel-toronto.com
Tel:     416.598.1744
Fax:     416.598.3730

Lawyers for William A. Owens

AND
TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:    arthur.jacques@shibleyrighton.com
Tel:       416.214.5213
Fax:       416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND
TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:    arthur.jacques@shibleyrighton.com
Tel:       416.214.5213
Fax:       416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees –
Post CCAA as at January 14, 2009

- 13 -

AND
TO:

**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Raffy Lorentzian

Email:   raffy.lorentzian@ntscorp.com
Tel:      714.998.4351

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON   M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for the Current and Former
Employees of Nortel Networks Inc. who are
or were Participants in the Long-Term
Investment Plan Sponsored by Nortel
Networks Inc.

AND
TO:

**DAVIES WARD PHILLIPS & VINEBERG
LLP**
44th Floor
1 First Canadian Place
Toronto, ON   M5X 1B1

Robin B. Schwill
Sean Campbell
James Doris
Louis Sarabia

Email:   rschwill@dwpv.com
Email:   scampbell@dwpv.com
Email:   jdoris@dwpv.com
Email:   lsarabia@dwpv.com

Tel:      416.863.0900
Fax:      416.863.0871

Counsel to the Joint Administrators of Nortel
Networks UK Limited

AND
TO:

**LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario   M5H 1J8

Matthew P. Gottlieb
Tracy Wynne
Paul Michell

Email:   mgottlieb@counsel-toronto.com
Tel:      416.644.5353
Fax:      416.598.3730

Email:   twynne@counsel-toronto.com
Tel:      416.598.7835
Fax:      416.598.3730

Email:   pmichell@counsel-toronto.com
Tel:      416.644.5359
Fax:      416.598.3730

Counsel to the Joint Administrators of Nortel
Networks UK Limited

- 14 -

AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario, M5J 2T3

Sheryl E. Seigel

Email: sheryl.seigel@mcmillan.ca
Tel:    416.307.4063
Fax:    416.365.1719

Lawyers for The Bank of New York Mellon

AND
TO:

**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email: dwinters@justice.gc.ca
Tel:    416.973.3172
Fax:    416.973.0810

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email: susan.grundy@blakes.com
Tel:    416.863.2572
Fax:    416.863.2653

Email: marc.flynn@blakes.com
Tel:    416.863.2685
Fax:    416.863.2653

Lawyers for Telefonaktiebolaget L M
Ericsson (publ)

AND
TO:

**SIMMONS, DA SILVA & SINTON LLP**
Suite 200, 201 County Court Blvd.
Brampton, Ontario
L6W 4L2

Puneet S. Kohli
Email: puneet@sdslawfirm.com

Tel:    905.861.2819

Lawyers for Wipro Limited

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email: hmeredith@mccarthy.ca
Tel:    416.601.8342
Fax:    416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran

Email: kmcelcheran@mccarthy.ca
Tel:    416.601.7730
Fax:    416.868.0673

Lawyers for Avaya Inc.

- 15 -

AND TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:    416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:    416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:    416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:    416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global Advisers
LLC, MatlinPatterson Global Opportunities
Partners III L.P. and MatlinPatterson
Opportunities Partners (Cayman) III L.P.

AND TO:

**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:  jspiegelman@foglers.com
Tel:    416.864.9700
Fax:    416.941.8852

Vern W. DaRe

Email:  vdare@foglers.com
Tel:    416-941-8842
Fax:    416-941-8852

Lawyers for Belden (Canada) Inc.

AND TO:

**VINCENT DAGENAIS GIBSON LLP/s.r.l**
Barristers and Solicitors
600-325 Dalhousie Street
Ottawa, ON  K1N 7G2

Thomas Wallis

E-mail:  thomas.wallis@vdg.ca
Tel:     613.241.2701
Fax:     613.241.2599

Lawyers for La Regie des Rentes du
Quebec

AND TO:

**STIKEMAN ELLIOTT LLP**
445 Park Avenue, 7th Floor
New York, NY  10022

Ron Ferguson

Email:  rferguson@stikeman.com
Tel:    212.845.7477
Fax:    212.371.7087

Lawyers for GENBAND Inc.

- 16 -

AND TO:
**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Barbara J. Boake
James D. Gage
Elder C. Marques

E-mail:  bboake@mccarthy.ca
Tel:     416.601.7557
Fax:     416.868.0673

Email:   jgage@mccarthy.ca
Tel:     416.601.7539
Fax:     416.686.0673

Email:   emarques@mccarthy.ca
Tel:     416.601.7822
Fax:     416.686.0673

Lawyers for Morneau Shepell Limited

AND TO:
**BLAKE, CASSELS & GRAYDON**
Box 25, Commerce Court West
199 Bay Street, Suite 2800
Toronto, Ontario  M5L 1A9

Pamela J. Huff
J. Jeremy Forgie

Email:   pamela.huff@blakes.com
Tel:     416.863.2958
Fax:     416.863.2653

Email:   jeremy.forgie@blakes.com
Tel:     416.863.3888
Fax:     416.863.2653

Lawyers for The Northern Trust Company, Canada

AND TO:
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer
Jeremy Opolsky

Email:   jbromley@cgsh.com
         lschweitzer@cgsh.com
         jopolsky@cgsh.com

Tel:     212.225.2000
Fax:     212.225.3999

Lawyers for Nortel Networks Inc.

AND TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, ON  M5J 2T3

D. Brent McPherson

Email:   brent.mcpherson@mcmillan.ca
Tel:     416.307.4103
Fax:     416.304.3769

Lawyers for Wells Fargo Bank, National Association, as successor by merger to Wachovia Bank, N.A., in its capacity as Servicer for the Nortel Networks Pass-Through Trust, Series 1-1

AND TO:
**DAVID STEER**
10 Cypress Court
Nepean, ON  K2H 8Z8

E-mail:  davidsteer127@sympatico.ca

AND TO:
**ROCHON GENOVA LLP**
121 Richmond Street West
Suite 900
Toronto, ON  M5H 2K1

Joel P. Rochon

Email:   jrochon@rochongenova.com
Tel:     416.363.1867
Fax:     416.363.0263

Lawyers for the Opposing LTD Employees

- 17 -

AND TO:

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray
Adam Slavens

Email:   tdemarinis@torys.com
         sbomhof@torys.com
         sblock@torys.com
         agray@torys.com
         aslavens@torys.com

Tel:    416.865.0040
Fax:    416.865.8730

Lawyers for Nortel Networks Inc.

AND TO:

**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:   jspiegelman@foglers.com

Tel:    416.864.9700
Fax:    416.941.8852

Lawyers for Apex Logistics Inc.

AND TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Andrew J. F. Kent
Wael Rostom

Email:   andrew.kent@mcmillan.ca
Tel :    416.865.7160
Fax :    416.865.7048

Email:   wael.rostom@mcmillan.ca
Tel :    416.865.7790
Fax :    416.865.7048

Lawyers for the Norpax LLC and RPX
Corporation, in its capacity as Managing
Member of Norpax LLC

AND TO:

**TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:   hvw@tmlegal.ca
         rbm@tmlegal.ca

Tel:    613.542.1889
Fax:    613.542.8202

Lawyers for The Corporation of the City of
Belleville

- 18 -

AND TO:
**TEMPLEMAN MENNINGA LLP**
401-366 King Street East
Kingston, Ontario  K7K 6Y3

Harold Van Winssen
R. Benjamin Mills

Email:  hvw@tmlegal.ca
        rbm@tmlegal.ca

Tel:    613.542.1889
Fax:    613.542.8202

Lawyers for Algonquin and Lakeshore
Catholic District School Board


AND TO:
**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Steven J. Weisz
Jenna Willis

Email:  steven.weisz@blakes.com
Tel:    416.863.2616
Fax:    416.863.2653

Email:  jenna.willis@blakes.com
Tel:    416.863.3348
Fax:    416.863.2653

Lawyers for the American Registry for Internet
Numbers


AND TO:
**STIKEMAN ELLIOTT LLP**
Barristers & Solicitors
5300 Commerce Court West
199 Bay Street
Toronto, Ontario  M5L 1B9

Dan Murdoch

Email:  dmurdoch@stikeman.com
Tel:    416.869.5529
Fax:    416.947.0866

Lawyers for Apple Inc.


AND TO:
**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario M5J 2T3

Brett Harrison

Email:  brett.harrison@mcmillan.ca
Tel :   416.865.7932
Fax :   416.865.7048

Lawyers for Rogers Communications Inc.

- 19 -

| | |
|---|---|
| AND TO: | **ATTORNEY GENERAL FOR ONTARIO**<br>Crown Law Office – Civil<br>720 Bay Street, 8th Floor<br>Toronto, Ontario  M7A 2S9 |

Leonard Marsello
William MacLarkey
Mario Faieta

Email:   leonard.marsello@ontario.ca
Tel:      416.326.4939
Fax:     416.326.4181

Email:   William.MacLarkey@ontario.ca
Tel:      416.326.4082
Fax:     416.326.4181

Email:   mario.faieta@ontario.ca
Tel:      416.314.6482
Fax:     416.314.6579

Lawyers for Her Majesty the Queen in right
of Ontario, as represented by the Ministry of
the Environment

AND TO:  **DAVIS LLP**
1 First Canadian Place, Suite 6000
100 King Street West
P.O. Box 367,
Toronto, Ontario  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:     416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:     416.365.7886

Lawyers for Lenovo (Singapore) Pte. Ltd.

AND TO:  **CHAITONS LLP**
Barristers & Solicitors
5000 Yonge Street, 10th Floor
Toronto, Ontario  M2N 7E9

Harvey G. Chaiton
Doug Bourassa

Email:   harvey@chaitons.com
Tel :     416.218.1129
Fax :    416.218.1849

Email:   doug@chaitons.com
Tel :     416.218.1145
Fax :    416.218.1845

Lawyers for SMNP Research International,
Inc. and SMNP Research, Inc.

AND TO:  **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, Ontario  M6H 3S1

Craig A. Mills

Email:   cmills@millerthomson.com
Tel :     416.595.8596
Fax :    416.595.8695

Lawyers for 2058756 Ontario Limited

- 20 -

AND TO:
**STIKEMAN ELLIOTT LLP**
Barristers & Solicitors
5300 Commerce Court West,
199 Bay Street
Toronto, Ontario  M5L 1B9

Ashley John Taylor
Kathryn Esaw

Email:   ataylor@stikeman.com
Tel :    416.869.5236
Fax :    416.947.0866

Email:   kesaw@stikeman.com
Tel:     416.869.6820
Fax :    416.947.0866

Lawyers for Sanmina SCI Corporation

AND TO:
**STIKEMAN ELLIOTT LLP**
Barristers & Solicitors
5300 Commerce Court West,
199 Bay Street
Toronto, Ontario  M5L 1B9

Alan D'Silva
Ellen Snow

Email:   adsilva@stikeman.com
Tel:     416.869.5204
Fax:     416.947.0866

Email:   esnow@stikeman.com
Tel:     416.869.5286
Fax:     416.947.0866

Counsel to Chartis Insurance Company of
Canada Inc.

AND TO:
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY  10022-2585

Craig A. Barbarosh
Email:   craig.barbarosh@kattenlaw.com
Tel:     212.940.8665
Fax:     212.940.8776

David A. Crichlow
Email:   david.crichlow@kattenlaw.com
Tel:     212.940.8941
Fax:     212.940.8776

Karen B. Dine
Email:   Karen.dine@kattenlaw.com
Tel:     212.940.8772
Fax:     212.940.8776

U.S. Counsel to Wilmington Trust

AND TO:
**CONSTELLATION ENERGY GROUP, INC.**
100 Constellation Way
Suite 600
Baltimore, MD 21202

David Quagliana
Manager, Credit Workout

Email:   david.quagliana@constellation.com
Tel:     410.470.2058

AND
TO:

**HEENAN BLAIKIE LLP**
Bay Adelaide Centre
333 Bay Street, Suite 2900
P.O. Box 2900
Toronto, Ontario  M5H 2T4

John Salmas
Kenneth Kraft
Sara-Ann Van Allen

Email:   jsalmas@heenan.ca
Tel:      416.360.3570
Fax:     416.360.8425

Email:   kkraft@heenan.ca
Tel:      416.643.6822
Fax:     416.360.8425

Email:   svanallen@heenan.ca
Tel:      416.360.3570
Fax:     416.360.8425

Canadian Lawyers for Wilmington Trust,
National Association

AND
TO:

**PATTERSON BELKNAP WEBB & TYLER
LLP**
1133 Avenue of the Americas
New York, NY  10036

Daniel A. Lowenthal

Email:   dalowenthal@pbwt.com
Tel:      212.336.2720
Fax:     212.336.1253

U.S. Counsel for Law Debenture Trust
Company of New York

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
40 King Street West
Toronto, ON  M5H 3Y4

Edmond F. B. Lamek
James Szumski

Email:   elamek@blg.com
Tel:      416.367.6311
Fax:     416.361.2436

Email:   jszumski@blg.com
Tel:      416.367.6310
Fax:     416.682.2811

Lawyers for Law Debenture Trust Company
of New York

AND
TO:

**THORNTON GROUT FINNIGAN LLP**
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON  M5K 1K7

Michael Barrack
D.J. Miller
Rebecca Lewis
Andrea McEwan

Email:   mbarrack@tgf.ca
Tel:      416.304.1109
Fax:     416.304.1313

Email:   djmiller@tgf.ca
Tel:      416.304.0559
Fax:     416.304.1313

Email:   rlewis@tgf.ca
Tel:      416.304.0603
Fax:     416.304.1313

Email:   amcewan@tgf.ca
Tel:      416.304.0596
Fax:     416.304.1313

Co-Counsel to the UK Pension Protection Fund
and Nortel Networks UK Pension Trust Limited

**COURTESY COPIES:**

AND
TO:

**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:     602.262.5321
Fax:     602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:

**CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail: sreisman@curtis.com
        jdrew@curtis.com

Tel:     212.696.6000
Fax:     212-697-1559

Lawyers for Flextronics International

AND
TO:

**AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY 10036

Fred S. Hodara

Email:   fhodara@akingump.com

Tel:     212.872.1000
Fax:     212.872.1002

U.S. Lawyers for the Official Committee
of Unsecured Creditors

AND
TO:

**MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005

Thomas R. Kreller
Jennifer P. Harris
Albert A. Pisa

Email:   TKreller@milbank.com
Tel:     213.892.4463
Fax:     213.629.5063

Email:   JHarris@milbank.com
Tel:     212.530.5475
Fax:     212.530.5219

Email:   APisa@milbank.com
Tel:     212.530.5319
Fax:     212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

- 23 -

AND
TO:

**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York  10019

Michael L. Schein

Email:  mschein@vedderprice.com

Tel:      212.407.6920
Fax:     212.407.7799

U.S. Lawyers for Telmar Network
Technology, Inc. and Precision
Communication Services, Inc.

AND
TO:

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email:  michael.riela@lw.com

Tel :    212.906.1373
Fax :   212.751.4864

U.S. Lawyers for The Bank of New York
Mellon

AND
TO:

**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:   eric.prezant@bryancave.com
Tel:      312.602.5033
Fax:     312.602.5050

U.S. Lawyers for Tellabs, Inc.

Court File No.  09-CL-7950

**_ONTARIO_**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**


IN THE MATTER OF THE _COMPANIES' CREDITORS ARRANGEMENT ACT_,
R.S.C. 1985, c. c-36, AS AMENDED


AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION


APPLICATION UNDER THE _COMPANIES' CREDITORS ARRANGEMENT ACT_,
R.S.C. 1985, c. C-36, AS AMENDED


**CORE PARTIES SERVICE LIST**
**(Allocation Litigation)**

**Updated as of May 30, 2013**

- 2 -

**CANADIAN DEBTORS**

TO:  **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

Derrick Tay
Jennifer Stam

Email:  derrick.tay@gowlings.com
jennifer.stam@gowlings.com

Tel:  416.862.5697
Fax:  416.862.7661

Lawyers for the Applicants

AND  **GOODMANS LLP**
TO:  Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario  M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Ben Zarnett
Fred Myers
Peter Ruby
Jessica Kimmel
Chris Armstrong

Email:  jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
bzarnett@goodmans.ca
fmyers@goodmans.ca
pruby@goodmans.ca
jkimmel@goodmans.ca
carmstrong@goodmans.ca

Tel:  416.597.4107
Fax:  416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND  **ERNST & YOUNG INC.**
TO:  Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, Ontario  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:  nortel.monitor@ca.ey.com

Tel:  416.943.3016
Fax:  416.943.3300

T991328\TOR_LAW\ 8152227\5

- 3 -

AND
TO:

**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020

Ken Coleman
Paul Keller
Daniel Guyder
Laura Hall
Joseph Badtke-Berkow
Jonathan Cho
Nicolette Ward

Email:   ken.coleman@allenovery.com
Tel:   212.610.6434
Fax:   212.610.6399

Email:   paul.keller@allenovery.com
Tel:   212.610.6414
Fax:   212.610.6399

Email:   daniel.guyder@allenovery.com
Tel:   212.756.1132
Fax:   212.610.6399

Email:   laura.hall@allenovery.com
Tel:   212.756.1171
Fax:   212.610.6399

Email:   Joseph.Badtke-Berkow@AllenOvery.com
Tel:   212.610.6417
Fax:   212.610.6399

Email:   jonathan.cho@allenovery.com
Tel:   212.756.1118
Fax:   212.610.6399

Email:   Nicolette.ward@allenovery.com
Tel:   212.610.6412
Fax:   212.610.6399

U.S. Lawyers for the Canadian Debtors

AND
TO:

**BUCHANAN INGERSOLL & ROONEY**
1105 North Market Street,
Suite 1900
Wilmington, DE 19801-1054

Kathleen A. Murphy
Mary F. Caloway

Email:   Kathleen.murphy@bipc.com
Tel:   302.552.4214
Fax:   302.552.4295

Email:   mary.caloway@bipc.com
Tel:   302.552.4209
Fax:   302.552.4295

Local U.S. Lawyers for the Canadian Debtors

- 4 -

**U.S. DEBTORS**

AND
TO:

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray
Adam Slavens

Email:   tdemarinis@torys.com
         sbomhof@torys.com
         sblock@torys.com
         agray@torys.com
         aslavens@torys.com

Tel:    416.865.0040
Fax:    416.865.8730

Canadian Lawyers for Nortel Networks Inc.

AND
TO:

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer
Howard Zelbo
Jeffrey Rosenthal
Darryl Stein
Marla Decker
Lauren Peacock
Jacqueline Moessner
Neil Forrest
Dan Queen

Email:   jbromley@cgsh.com
         lschweitzer@cgsh.com
         hzelbo@cgsh.com
         jrosenthal@cgsh.com
         dstein@cgsh.com
         mdecker@cgsh.com
         lpeacock@cgsh.com
         jmoessner@cgsh.com
         nforrest@cgsh.com
         dqueen@cgsh.com

Tel:    212.225.2000
Fax:    212.225.3999

U.S. Lawyers for Nortel Networks Inc.

AND
TO:

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347

Derek Abbott
Annie Cordo

Email:   dabbott@mnat.com
Tel:     302.351.9357
Fax:     302.425.4664

Email:   acordo@mnat.com
Tel:     302.351.9459
Fax:     302.225.2559

Local U.S. Lawyers for the U.S. Debtors

- 5 -

**EMEA DEBTORS**

AND
TO:
**DAVIES WARD PHILLIPS & VINEBERG LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Sean Campbell
James Doris
Louis Sarabia

Email:    rschwill@dwpv.com
Email:    scampbell@dwpv.com
Email:    jdoris@dwpv.com
Email:    lsarabia@dwpv.com

Tel:       416.863.0900
Fax:       416.863.0871

Co-Counsel to the Joint Administrators of Nortel
Networks UK Limited

AND
TO:
**LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Matthew P. Gottlieb
Tracy Wynne
Paul Michell

Email:    mgottlieb@counsel-toronto.com
Tel:       416.644.5353
Fax:       416.598.3730

Email:    twynne@counsel-toronto.com
Tel:       416.598.7835
Fax:       416.598.3730

Email:    pmichell@counsel-toronto.com
Tel:       416.644.5359
Fax:       416.598.3730

Co-Counsel to the Joint Administrators of Nortel
Networks UK Limited

AND
TO:
**HUGHES HUBBARD & REED**
One Battery Park Plaza
New York, NY 10004-1482

Derek Adler
Neil Oxford
Fara Tabatabai
Charles Huberty

Email:    adler@hugheshubbard.com
Tel:       212.837.6086
Fax:       212.422.4726

Email:    oxford@hugheshubbard.com
Tel:       212.837.6843
Fax:       212.422.4726

Email:    tabataba@hugheshubbard.com
Tel:       212.837.6296
Fax:       212.299.6269

Email:    huberty@hugheshubbard.com
Tel:       212.837.6045
Fax:       212.299.6045

U.S. Lawyers the Joint Administrators of Nortel
Networks UK Limited

**YOUNG CONAWAY STARGATT & TAYLOR
LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801

Ed Harron
John Dorsey

Email:    eharron@ycst.com
Tel:       302.571.6703
Fax:       302.576.3298

Email:    jdorsey@ycst.com
Tel:       302.571.6712
Fax:       302.576.3401

Local U.S. Lawyers for the Joint Administrators of
Nortel Networks UK Limited

- 6 -

**CANADIAN CREDITORS COMMITTEE**

| | | | |
|---|---|---|---|
| AND TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, Ontario  M5H 3R3 | AND TO: | **PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**<br>Suite 501<br>250 University Avenue<br>Toronto, Ontario  M5H 3E5 |

<table>
<tr>
<td>

Mark Zigler
Susan Philpott
Ari Kaplan
Barbara Walancik

Email:  mzigler@kmlaw.ca
Tel:    416.595.2090
Fax:   416.204.2877

Email:  sphilpott@kmlaw.ca
Tel:    416.595.2104
Fax:   416.204.2882

Email:  akaplan@kmlaw.ca
Tel:    416.595.2087
Fax:   416.204.2875

Email:  bwalancik@kmlaw.ca
Tel:    416.542.6288
Fax:   416.204.2906

Lawyers for the Former Employees of Nortel and LTD Beneficiaries

</td>
<td>

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Karen Jones
Tina Lie
Michelle Jackson

Email:  ken.rosenberg@paliareroland.com
Tel:    416.646.4304
Fax:   416.646.4301

Email:  max.starnino@paliareroland.com
Tel:    416.646.7431
Fax:   416.646.4301

Email:  lily.harmer@paliareroland.com
Tel:    416.646.4326
Fax:   416.646.4301

Email:  karen.jones@paliareroland.com
Tel:    416.646.4339
Fax:   416.646.4301

Email:  tina.lie@paliareroland.com
Tel:    416.646.4332
Fax:   416.646.4301

Email:  michelle.jackson@paliareroland.com
Tel:    416.646.7470
Fax:   416.646.4301

Lawyers for the Superintendent of Financial Services as Administrator of the Pension Benefits Guarantee Fund

</td>
</tr>
</table>

- 7 -

AND
TO:

**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, Ontario M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:   barry.wadsworth@caw.ca
         lewis.gottheil@caw.ca

Tel.:    416.495.3776
Fax:     416.495.3786

Lawyers for all active and retired Nortel employees
represented by the CAW-Canada

AND
TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham
Ainslie Benedict

Email:   janice.payne@nelligan.ca
         steven.levitt@nelligan.ca
         christopher.rootham@nelligan.ca
         ainslie.benedict@nelligan.ca

Tel:     613.231.8245
Fax:     613.788.3655

Lawyers for the Steering Committee of Nortel Canadian
Continuing Employees -- Post CCAA as at January 14,
2009

AND
TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:   arthur.jacques@shibleyrighton.com
Tel:     416.214.5213
Fax:     416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :    416.214.5206
Fax :    416.214.5400

Lawyers for The Recently Severed Canadian Nortel
Employees Committee

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Barbara J. Boake
James D. Gage
Elder C. Marques
Paul Steep
Byron Shaw

E-mail:  bboake@mccarthy.ca
Tel:     416.601.7557
Fax:     416.868.0673

Email:   jgage@mccarthy.ca
Tel:     416.601.7539
Fax:     416.686.0673

Email:   emarques@mccarthy.ca
Tel:     416.601.7822
Fax:     416.686.0673

Email:   psteep@mccarthy.ca
Tel:     416.601.7998
Fax:     416.686.0673

Email:   bdshaw@mccarthy.ca
Tel:     416.601.8256
Fax:     416.686.0673

Lawyers for Morneau Shepell Limited

T991328\TOR_LAW\ 8152227\5

- 8 -

AND   **DLA PIPER**
TO:    919 North Market Street
        Suite 1500
        Wilmington, Delaware 19801

        Selinda A. Melnik
        Richard Hans
        Timothy Hoeffner
        Farah Lisa Whitley-Sebti

        Email:   selinda.melnik@dlapiper.com
        Tel:     302.468.5650
        Fax:     302.778.7914

        Email:   richard.hans@dlapiper.com
        Tel:     212.335.4530
        Fax:     212.884.8730

        Email:   timothy.hoeffner@dlapiper.com
        Tel:     212.656.3341
        Fax:     215.606.3341

        Email:   farahlisa.sebti@dlapiper.com
        Tel:     212.335.4829
        Fax:     212.884.8529

        U.S. Lawyers for the Canadian Creditors Committee

**INFORMAL NORTEL NOTEHOLDER GROUP**

| | | | | |
|---|---|---|---|---|
| AND TO: | **BENNETT JONES LLP**<br>1 First Canadian Place<br>Suite 3400<br>Toronto, Ontario  M5X 1A4 | | AND TO: | **MILBANK, TWEED, HADLEY McCLOY LLP**<br>1 Chase Manhattan Plaza<br>New York, NY 10005 |

BENNETT JONES LLP:

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan
Sean Zweig
Jonathan Bell

| | |
|---|---|
| Email: | zychk@bennettjones.com |
| Tel: | 416.777.5738 |
| Fax: | 416.863.1716 |

| | |
|---|---|
| Email: | orzyr@bennettjones.com |
| Tel: | 416.777.5737 |
| Fax: | 416.863.1716 |

| | |
|---|---|
| Email: | finlaysong@bennettjones.com |
| Tel: | 416.777.5762 |
| Fax: | 416.863.1716 |

| | |
|---|---|
| Email: | swanr@bennettjones.com |
| Tel: | 416.777.7479 |
| Fax: | 416.863.1716 |

| | |
|---|---|
| Email: | zweigs@bennettjones.com |
| Tel: | 416.777.6254 |
| Fax: | 416.863.1716 |

| | |
|---|---|
| Email: | bellj@bennettjones.com |
| Tel: | 416.777.6511 |
| Fax: | 416.863.1716 |

Canadian Lawyers for The Informal Nortel Noteholder Group

MILBANK, TWEED, HADLEY McCLOY LLP:

Thomas R. Kreller
Jennifer P. Harris
Albert A. Pisa
Samir Vora
Andrew LeBlanc
Michael Hirschfeld
Atara Miller
Tom Matz
Nick Bassett
Gabrielle Ruha
Rachel Pojunas

| | |
|---|---|
| Email: | TKreller@milbank.com |
| Tel: | 213.892.4463 |
| Fax: | 213.629.5063 |

| | |
|---|---|
| Email: | JHarris@milbank.com |
| Tel: | 212.530.5475 |
| Fax: | 212.530.5219 |

| | |
|---|---|
| Email: | APisa@milbank.com |
| Tel: | 212.530.5319 |
| Fax: | 212.530.5219 |

| | |
|---|---|
| Email: | svora@milbank.com |
| Tel: | 213.892.4595 |
| Fax: | 213.629.5063 |

| | |
|---|---|
| Email: | aleblanc@milbank.com |
| Tel: | 202.835.7574 |
| Fax: | 202.263.7574 |

| | |
|---|---|
| Email: | mhirschfeld@milbank.com |
| Tel: | 212.530.5832 |
| Fax: | 212.822.5832 |

| | |
|---|---|
| Email: | amiller@milbank.com |
| Tel: | 212.530.5421 |
| Fax: | 212.822.5421 |

| | |
|---|---|
| Email: | tmatz@milbank.com |
| Tel: | 212.530.5885 |
| Fax: | 212.822.5885 |

| | |
|---|---|
| Email: | nbassett@milbank.com |
| Tel: | 202.835.7546 |
| Fax: | 202.263.7546 |

| | |
|---|---|
| Email: | gruha@milbank.com |
| Tel: | 212.530.5155 |
| Fax: | 212.822.5155 |

| | |
|---|---|
| Email: | rpojunas@milbank.com |

- 10 -

Tel:    202.835.7551
Fax:    202.263.7551

U.S. Lawyers for The Informal Nortel Noteholder
Group

- 11 -

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

AND TO:
**DENTONS CANADA LLP**
77 King Street West, Suite 400
TD Centre
Toronto, ON  M5K 0A1

R. Shayne Kukulowicz
Michael J. Wunder
Ryan Jacobs
Barbara Grossman

Email:  Shayne.kukulowicz@dentons.com
Michael.wunder@dentons.com
ryan.jacobs@dentons.com
Barbara.grossman@dentons.com

Tel:  416.863.4511
Fax:  416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors

AND TO:
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036

Fred S. Hodara
David H. Botter
Abid Qureshi
Robert A. Johnson
Brad M. Kahn

Email:  fhodara@akingump.com
dbotter@akingump.com
aqureshi@akingump.com
rajohnson@akingump.com
bkahn@akingump.com

Tel:  212.872.1000
Fax:  212.872.1002

U.S. Lawyers for the Official Committee of Unsecured
Creditors

AND TO:
**ASHURST LLP**
Boardwalk House
5 Appold Street
London, EC2A 2HA
United Kingdom

Angela Pearson
Antonia Croke

Email:  angela.pearson@ashurst.com
antonia.croke@ashurst.com

Tel:  +44 (0)20 7638 1111
Fax:  +44 (0)20 7638 1112

U.K. Lawyers for the Official Committee of Unsecured
Creditors

AND TO:
**RICHARDS LAYTON & FINGER, P.A.**
920 North King Street
Wilmington, DE 19801

Christopher Samis

Email:  samis@rlf.com
Tel:  302.651.7845
Fax:  302.498.7845

Local U.S. Lawyers for the Official Committee of
Unsecured Creditors

- 12 -

**UK PENSION PROTECTION FUND AND NORTEL NETWORKS UK PENSION TRUST LIMITED**

AND TO:  **CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
David S. Ward
Bill Burden
Christopher Horkins
Lara Jackson

Email:  bleonard@casselsbrock.com
dward@casselsbrock.com
bburden@casselsbrock.com
chorkins@casselsbrock.com
ljackson@casselsbrock.com

Tel:  416.860.6455
Fax:  416.640.3054

Co-Counsel for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

AND TO:  **THORNTON GROUT FINNIGAN LLP**
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON  M5K 1K7

Michael Barrack
D.J. Miller
Rebecca Lewis
Andrea McEwan

Email:  mbarrack@tgf.ca
Tel:  416.304.1109
Fax:  416.304.1313

Email:  djmiller@tgf.ca
Tel:  416.304.0559
Fax:  416.304.1313

Email:  rlewis@tgf.ca
Tel:  416.304.0603
Fax:  416.304.1313

Email:  amcewan@tgf.ca
Tel:  416.304.0596
Fax:  416.304.1313

Co-Counsel to the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

AND TO:  **WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, N.Y. 10019-6099, U.S.A.

Brian O'Connor
Sameer Advani
Andrew Hanrahan

Email:  boconnor@willkie.com
Tel:  (212) 728-8251
Fax:  (212) 728-9251

Email:  sadvani@willkie.com
Tel:  (212) 728-8587
Fax:  (212) 728-9587

Email:  ahanrahan@willkie.com
Tel:  (212) 728-8170
Fax:  (212) 728-9170

US Counsel for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

AND TO:  **BAYARD, P.A.**
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899

Charlene D. Davis
Justin Alberto

Email:  cdavis@bayardlaw.com
jalberto@bayardlaw.com

Tel:  302.655.5000
Fax:  302.658.6395

Local U.S. Lawyers for the UK Pension Protection
Fund and Nortel Networks UK Pension Trust Limited

- 13 -

**THE BANK OF NEW YORK MELLON**

| | | | | |
|---|---|---|---|---|
| AND TO: | **McMILLAN LLP** | | AND TO: | **LATHAM & WATKINS LLP** |

AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario, M5J 2T3

Sheryl E. Seigel

Email: sheryl.seigel@mcmillan.ca
Tel:    416.307.4063
Fax:    416.365.1719

Canadian Lawyers for The Bank of New York Mellon

AND
TO:

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email:    michael.riela@lw.com

Tel :    212.906.1373
Fax :    212.751.4864

U.S. Lawyers for The Bank of New York Mellon

- 14 -

**WILMINGTON TRUST, NATIONAL ASSOCIATION**

AND
TO:

**HEENAN BLAIKIE LLP**
Bay Adelaide Centre
333 Bay Street, Suite 2900
P.O. Box 2900
Toronto, Ontario  M5H 2T4

John Salmas
Kenneth Kraft
Sara-Ann Van Allen

Email:   jsalmas@heenan.ca
Tel:      416.360.3570
Fax:     416.360.8425

Email:   kkraft@heenan.ca
Tel:      416.643.6822
Fax:     416.360.8425

Email:   svanallen@heenan.ca
Tel:      416.360.3570
Fax:     416.360.8425

Canadian Lawyers for Wilmington Trust, National
Association

AND
TO:

**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10022-2585

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine

Email:   craig.barbarosh@kattenlaw.com
Tel:      212.940.8665
Fax:     212.940.8776

Email:   david.crichlow@kattenlaw.com
Tel:      212.940.8941
Fax:     212.940.8776

Email:   Karen.dine@kattenlaw.com
Tel:      212.940.8772
Fax:     212.940.8776

U.S. Lawyers to Wilmington Trust, National
Association

- 15 -

## LAW DEBENTURE TRUST COMPANY OF NEW YORK

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
40 King Street West
Toronto, ON  M5H 3Y4

Edmond F. B. Lamek
James Szumski

Email:   elamek@blg.com
Tel:      416.367.6311
Fax:      416.361.2436

Email:   jszumski@blg.com
Tel:      416.367.6310
Fax:      416.682.2811

Lawyers for Law Debenture Trust Company of New York

AND
TO:

**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, NY  10036

Daniel A. Lowenthal

Email:   dalowenthal@pbwt.com
Tel:      212.336.2720
Fax:      212.336.1253

U.S. Lawyers for Law Debenture Trust Company of
New York

- 16 -

**BOARDS OF DIRECTORS OF NORTEL NETWORKS CORPORATION AND NORTEL NETWORKS LIMITED**

AND
TO:

**OSLER HOSKIN AND HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, Ontario  M5X 1B8

Lyndon Barnes
Edward Sellers
Betsy Putnam
Adam Hirsh

Email:    lbarnes@osler.com
          esellers@osler.com
          eputnam@osler.com
          ahirsh@osler.com

Tel:      416.362.2111
Fax:      416.862.6666

Lawyers for the Boards of Directors of Nortel Networks
Corporation and Nortel Networks Limited

- 17 -

**COURTESY COPIES:**

<table>
<tr><td>AND<br>TO:</td><td><strong>NORTON ROSE CANADA LLP</strong><br>Suite 3800, Royal Bank Plaza<br>South Tower, 200 Bay Street<br>P.O. Box 84<br>Toronto, ON  M5J 2Z4</td><td>AND<br>TO:</td><td><strong>HOGAN LOVELLS INTERNATIONAL LLP</strong><br>Atlantic House<br>Holborn Viaduct<br>London  EC1A 2FG<br>United Kingdom</td></tr>
</table>

Michael Lang

Email:    michael.lang@nortonrose.com

Tel:       416.216.3939
Fax:      416.216.3930

Angela Dimsdale Gill
John Tillman
Matthew Bullen

Email:    amdg@hoganlovells.com
            john.tillman@hoganlovells.com
            Matthew.bullen@hoganlovells.com

Tel:       +44 20 7296 2000
Fax:      +44 20 7296 2001

# INDEX

Court File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, c. C-36, AS AMENDED

**INDEX**

| TAB | | PAGE |
|---|---|---|
| 1 | Notice of Cross Motion, dated June 5, 2013 | 1 |
| 2 | Affidavit of Kristian Borg-Olivier, affirmed June 5, 2013 | 7 |
| A | Confidentiality Agreement, March 25, 2009 | 13 |
| B | Confidentiality Acknowledgement and Agreement (LGE Electronics Inc.), July 2009 | 23 |
| C | Addendum to Confidentiality Agreement, November 10, 2010 | 36 |
| D | Interim Confidentiality Agreement, June 30, 2011 | 44 |
| E | Interim Protective Order, May 16, 2013 | 47 |
| F | Monitor's Draft Protective Order | 69 |
| G | CCC's Draft Protective Order | 87 |

# TAB 1

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED**

## NOTICE OF CROSS-MOTION

The CCC[1] will make a motion to a judge of the Commercial List at the courthouse at 393 University Avenue, Toronto, Ontario, on June 11, 2013 at 10:00 a.m. or as soon thereafter as the motion can be heard.

**PROPOSED METHOD OF HEARING**: The motion is to be heard orally.

**THE MOTION IS FOR:**

1. An order:

---

[1] The CCC is a committee of major creditors having claims against Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "**Canadian Debtors**"), comprised of: the Former and Disabled Canadian Employees of the Canadian Debtors through their court-appointed representatives and the Canadian Auto Workers Union; Morneau Shepell Ltd., as Administrator of Nortel's Canadian registered pension plans; the Superintendent of Financial Services of Ontario as Administrator of the Pension Benefits Guarantee Fund and the court-appointed representatives of the Current and Transferred Canadian Employees of the Canadian Debtors.

a.  approving the form of protective order previously filed with this court on behalf of the CCC and attached to this Notice of Motion as Exhibit "G" to the affidavit of Kristian Borg-Olivier affirmed June 5, 2013 (the "CCC Protective Order");

b.  declaring that documents produced to the parties in the course of the proceedings before this court contemplated by the Amended and Restated Allocation Protocol Order dated April 3, 2013 (the "Allocation Dispute") shall be produced without reference to any prior confidentiality agreements executed in the course of these proceedings by any Core Party in favour of Nortel Networks Corporation or any of its subsidiaries, and shall be subject only to the terms of the CCC Protective Order; and,

c.  abridging the time for service and filing, and validating the manner of service of notice of this motion and any supporting records, factums, books of authorities or other documents served by the CCC;

2.  such further and other relief as the CCC may request and that this court deems just.

**THE GROUNDS FOR THE MOTION ARE:**

1.  Between May 1 and May 15, 2013, certain parties to the Allocation Dispute held discussions regarding the scope of a proposed protective

order to govern the proceeding, but were unable to resolve their differences.

2. On May 15, 2013, the U.S. and Canadian Courts were advised of the dispute over the terms of the protective order, and directed that:

    a. the parties attempt to reach agreement on a protective order as soon as possible, and

    b. to the extent that agreement could not be reached, the parties file their respective versions of a protective order with the Courts by May 17, 2013.

3. On or before May 16, 2013, the Core Parties agreed to a consent interim protective order, without prejudice to their respective positions.

4. On or before May 17, 2013, as directed by the Courts, the parties filed their respective versions of a final protective order.

5. The form of protective order filed by the Canadian Debtors and the U.S. Debtors:

    a. runs afoul of the "open courts" principle at the heart of our system of litigation;

    b. would significantly disadvantage the CCC by the over-use of the confidential designation; and,

    c. is unworkable in that it places the onus on parties who may not have first hand knowledge of the documents to speculate as to the basis for their confidentiality.

6. The balance of convenience favours imposing the burden of justifying the confidential treatment of documents on the parties who are producing the documents and who have had access to them for over four years, as opposed to the parties who are only now receiving access to the documents, just 6 to 7 months prior to the start of the trial of the Allocation Dispute.

7. *Charter of Rights and Freedoms*, s. 2(b).

8. Rule 30.02 of the *Rules of Civil Procedure* (Duty to Produce Relevant Documents).

9. Rule 30.1 of the *Rules of Civil Procedure* (Deemed Undertaking).

10. Rule 3.02, 16.08 of the *Rules of Civil Procedure*.

11. Such further and other grounds as counsel may advise and of which this court will take notice.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

1. The affidavit of Kris Borg-Olivier, affirmed June 5, 2013, and the exhibits thereto; and

2.  Such further and other evidence as counsel may advise and of which this court will take notice.

June 5, 2013

**Paliare Roland Rosenberg Rothstein LLP**
Barristers
Suite 501
250 University Ave.
Toronto, ON  M5H 3E5

**Kenneth T. Rosenberg** (LSUC #21102H)
**Massimo (Max) Starnino** (LSUC #41048G)
**Lily Harmer** (LSUC #31880T)
**Tina Lie** (LSUC #54617I)

Email: ken.rosenberg@paliareroland.com
        max.starnino@paliareroland.com
        lily.harmer@paliareroland.com
        tina.lie@paliareroland.com

Tel:    (416) 646-4300
Fax:    (416) 646-4301

Lawyers for the Superintendent of Financial Services as Administrator of the Pension Benefits Guarantee Fund, and as agents for the other members of CCC.

**TO:    THE SERVICE LIST**

867384_3

Court File No: 09-CL-7950

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL
NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION
AND NORTEL NETWORKS TECHNOLOGY CORPORATION
APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL COURT)

PROCEEDING COMMENCED AT
TORONTO

NOTICE OF CROSS MOTION

**Paliare Roland Rosenberg Rothstein LLP**
155 Wellington Street West
35th Floor
Toronto ON  M5V 3H1
Tel:    416.646.4300
Fax:    416.646.4301

**Kenneth T. Rosenberg (LSUC #21102H)**
Tel:    (416) 646-4304
Email: ken.rosenberg@paliareroland.com

**Andrew K. Lokan (LSUC #31629Q)**
Tel: (416) 646-4324
Email: andrew.lokan@paliareroland.com

**Lawyers for the Canadian Creditors' Committee**

# TAB 2

7

Court File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT
ACT,
R.S.C. 1985, c. C-36, AS AMENDED

**AFFIDAVIT OF KRISTIAN BORG-OLIVIER**
**(Affirmed June 5, 2013)**

I, Kristian Borg-Olivier, of the City of Toronto in the Province of Ontario,

AFFIRM AND SAY:

1.      I am an associate with Paliare Roland Rosenberg Rothstein LLP ("Paliare

Roland"), counsel to Ontario's Superintendent of Financial Services as

Administrator of the Pension Benefits Guarantee Fund (the "Superintendent"). I

have personal knowledge of the matters described in this affidavit.

2.      I submit this affidavit in support of the motion of the Canadian Creditors'

Committee (the "CCC") to establish a procedure for dealing with the documents

in this proceeding that is lawful, fair, and consistent with the open court principle.

3.      The CCC represents the interests of more than 20,000 Canadian



pensioners and other pension interests, long-term disabled and other employees and former employees of Nortel who in the aggregate have asserted approximately $3 billion in claims against the Canadian Debtors.

**Background to the Allocation Proceeding**

4.    Nortel was a large multi-national technology enterprise headquartered in Canada, with a history dating to the nineteenth century. Nortel was a world leader in digital telecommunications technology, operating several lines of business and developing a catalogue of patents and next-generation applications in wireless 4G/LTE, data networking, optical, voice, internet, and semiconductor technologies. At its peak Nortel had annual revenue of approximately $30 billion and employed approximately 93,000 people.

5.    On January 14, 2009, Nortel's Canadian debtors, U.S. debtors, and UK/EMEA (Europe, Middle East, and Africa) debtors commenced insolvency proceedings in their respective jurisdictions. Thereafter, Nortel proceeded to liquidate its lines of business and a residual portfolio of patents (the "residual IP").

6.    The proceeds of sale arising from the liquidation of Nortel's lines of business and residual IP (the "Sale Proceeds") are currently being held in escrow pending the disposition of competing claims to those funds (the "Allocation Dispute").

7.    Nortel's stakeholders have participated in a number of formal mediations

9

in their attempts to negotiate a settlement of the Allocation Dispute. However, these efforts have not been successful, with the result that this case has now moved past the liquidation and mediation phases and has devolved into litigation.

8.      The U.S. and Canadian Courts have made orders establishing a protocol for the adjudication of the Allocation Dispute by way of joint trials which have been scheduled to begin on January 6, 2014.

9.      Nortel's insolvency has attracted widespread public and media interest worldwide, and particularly in Canada. The sales of Nortel's lines of business and residual IP were covered extensively.

10.     This proceeding to determine the allocation of the Sale Proceeds to Nortel's creditors will undoubtedly be the focus of comprehensive and ongoing media coverage.

**Various Confidentiality Agreements**

11.     The parties' possession and/or review of the various documents obtained in the course of the liquidation and mediation phases of the proceeding are governed by a number of overlapping confidentiality agreements.

12.     In the course of the liquidation and mediation phases of this case, Paliare Roland entered into multiple confidentiality agreements, including for example:

   (a)      a March 25, 2009 agreement with a variety of Nortel companies, pursuant to which Nortel agreed to provide certain confidential

information to Paliare Roland subject to the terms and conditions contained in the agreement, "in connection with [Paliare Roland's] representation of the [Superintendent] in connection with the Chapter 11 Cases and the CCAA Proceedings". A copy of this agreement is attached as **Exhibit "A"** to this affidavit;

(b)     a July 2009 "confidentiality acknowledgment and agreement" with LGE Electronics Inc. ("LGE"), pursuant to which Paliare Roland was entitled to receive periodic updates with respect to the sale of some or all of the interests or assets of a joint venture between LGE and Nortel, subject to Paliare Roland's agreement that LGE was entitled to all the confidentiality protections of the March 25, 2009 agreement described in (a) above. A copy of this agreement is attached as **Exhibit "B"** to this affidavit;

(c)     a November 10, 2010 addendum to the confidentiality agreement described in (a) above, pursuant to which Paliare Roland and Farber Financial Group, which is the financial advisor to the Superintendent and Paliare Roland, were granted access to certain confidential information for the purpose of participating "in settlement discussions, including a mediation", on the condition that they not "use any Confidential Information for any reason or purpose other than for the purpose of the [settlement discussions]". A copy of this addendum is attached as **Exhibit "C"** to this affidavit;

(d)     a June 30, 2011 "Interim Confidentiality Agreement" by which the Superintendent and Paliare Roland were granted access to the approximately 10,000 documents that had been placed into a database known as the Merrill database by the Monitor and the Canadian Estate. A copy of this agreement is attached as **Exhibit "D"** to this affidavit.

13.     I understand that the various other parties, their counsel, and their advisors have also executed multiple confidentiality agreements.

**New Confidentiality Protocol**

14.     Between May 1 and May 15, 2013, certain parties held discussions regarding the scope of a proposed protective order, but were unable to resolve their differences. On May 15, 2013, the U.S. and Canadian Courts were advised of the dispute over the terms of the protective order, and directed that:

(a)     the parties shall aim to reach agreement on a protective order as soon as possible, and

(b)     to the extent that agreement cannot be reached on the terms of a final protective order, the parties file their respective versions of the Confidentiality Stipulation and Protective Order with the Courts by May 17, 2013.

15.     On or before May 16, 2013, the Core Parties agreed to a consent interim protective order, without prejudice to their respective positions. A copy of the

12

interim order is attached as **Exhibit "E"** to this affidavit.

16.     On or before May 17, 2013, as directed by the Courts, the parties filed

their respective versions of a final protective order.

17.     The Monitor's draft protective order, which is identical or virtually identical

to the interim order, is attached as **Exhibit "F"** to this affidavit.

18.     The CCC's draft protective order is attached as **Exhibit "G"** to this

affidavit.

19.     The U.S. Debtors have taken the position that the interim order should be

adopted as the permanent protective order.

**SWORN BEFORE ME** at the City of
Toronto, in the Province of Ontario on
June 5, 2013

}

_____
Commissioner for Taking Affidavits

_____
Kristian Borg-Olivier

Doc 889078

6

# TAB A

13

THIS IS EXHIBIT "A" REFERRED TO
IN THE AFFIDAVIT OF KRISTIAN BORG-OLIVIER
SWORN BEFORE ME THIS 5th DAY
OF JUNE, 2013

_____

A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "**Agreement**") is entered into on this 25th day of March, 2009, by Paliare Roland Rosenberg Rothstein LLP (the "**Advisor**"), Nortel Networks Inc. ("**NNI**") and certain other Nortel companies specified on Exhibit A (such companies collectively with NNI, the "**U.S. Debtors**") and Nortel Networks Corporation ("**NNC**") and certain other Nortel companies specified in Exhibit B (such companies collectively with NNC, the "**Canadian Debtors**") (the U.S. Debtors, the Canadian Debtors together with all other Nortel subsidiaries and affiliates, including without limitation NNC, Nortel Networks Limited ("**NNL**") and Nortel Networks Capital Corporation ("**NNCC**") are hereinafter collectively referred to as the "**Company**").

RECITALS

WHEREAS on January 14, 2009 the Canadian Debtors obtained protection pursuant to the Companies' Creditors Arrangement Act by order of the Superior Court of Justice of Ontario (the "**CCAA Proceedings**").

WHEREAS, on January 14, 2009, the U.S. Debtors filed voluntary petitions and certain orders for relief (the "**Chapter 11 Cases**") pursuant to Title 11 of the United States Code (the "**Bankruptcy Code**").

WHEREAS NNL administers pension plans registered in Ontario, bearing registration numbers 0587766, 0342048 and 1072305.

WHEREAS, the Advisor has been retained in connection with the CCAA Proceedings and the Chapter 11 Cases, as legal counsel to the Superintendent of Financial Services (Ontario), in its capacity as administrator of the Pension Benefit Guarantee Fund, (the "**Creditor**").

WHEREAS, the Company is willing to provide the Advisor with Confidential Information (as defined below), subject to the terms and conditions contained in this Agreement, in connection with the Advisor's representation of the Creditor in connection with the Chapter 11 Cases and the CCAA Proceedings.

NOW, THEREFORE, in consideration of the mutual agreements contained herein, the Advisor and each of the U.S. Debtors and the Canadian Debtors agree as follows:

**I.    Confidentiality**

1.    With respect to the Advisor, as used in this Agreement, "Confidential Information" shall mean any information relating to the Company that is non-public, confidential, or proprietary in nature, including the content of all discussions, communications, negotiations, and evaluations in writing, orally, or otherwise, in each case received after the date hereof by the Advisor or any of its affiliates, members, partners, counsels, associates, employees, agents, advisors or representatives (each of the foregoing, other than the Advisor, a "**Representative**") from the Company, Ernst & Young Inc., as the Court-appointed Monitor in connection with the proceedings under the Companies' Creditors Arrangement Act (the "**Monitor**"), any of Alan Bloom, Stephen Harris, Chris Hill and Alan Hudson of Ernst & Young LLP, as the Court-appointed joint administrators

of certain Nortel companies incorporated in the Europe, Middle East and Africa region in connection with the proceedings under the Insolvency Act 1986 (such individuals collectively, the "**Administrator**") or any of their respective representatives, agents, advisors or counsels, all notes, reports, analyses, compilations, studies, files or other documents or material, whether prepared by the Advisor or others, which are based on, contain or otherwise reflect such information.

Notwithstanding the foregoing, Confidential Information shall not include any information:

(a)     that was already in the possession of the Advisor or a Representative, or that was available to them on a non-confidential basis from a source other than the Company, its agents or representatives, the Monitor or Administrator, in each case prior to the time of disclosure by the Company, the Monitor or Administrator to the Advisor or such Representative;

(b)     obtained by the Advisor or a Representative from a third person, which insofar as is known to the Advisor or such Representative, is not subject to any legal, contractual, or fiduciary prohibition or obligation against disclosure by that third person in favour of the Company (the Advisor or the Representative, as applicable, shall be deemed to have "knowledge" if it reasonably should have known of such violation);

(c)     received by the Advisor pursuant to Subsections 106 (3), (4) or (5) of the *Pensions Benefits Act* (Ontario);

(d)      which is or becomes generally available to the public other than as a result of a violation of this Agreement by the Advisor or any of its Representatives; or

(e)     that is developed by the Advisor or its Representatives without use of or reference to the Confidential Information.

2.    The Advisor agrees, except as otherwise provided herein:

(a)     not to disclose in any manner whatsoever to any person or entity other than its Representatives on a need-to-know basis all or any part of the Confidential Information without the prior written consent of the U.S. Debtors and the Canadian Debtors;

(b)     not to use the whole or any part of the Confidential Information for any purpose other than in connection with its function as advisor to the Creditor in the Chapter 11 Cases and the CCAA Proceedings; and

(c)     to disclose the Confidential Information only to its Representatives who have a need to know the Confidential Information in connection with such Advisor's function as advisor to the Creditor in the Chapter 11 Cases and the CCAA Proceedings.

The Advisor will be liable for any action or failure to act that would constitute a breach of the obligations of this Agreement by any of its Representatives to whom it provides Confidential Information.

Neither the Advisor nor its Representatives shall share the Confidential Information with any of their respective members, partners, counsels, associates, employees, agents, advisors or representatives that the Advisor or its Representatives have actual knowledge are advising an entity or person making a bid to acquire any assets or securities of the Company and the Advisor and each Representative will at all times establish and maintain information barriers to ensure that Confidential Information will not be available to such persons.

The Advisor acknowledges that the U.S. Debtors and the Canadian Debtors have not as of the date hereof entered into any agreement with the Creditor with respect to the Confidential Information and hereby agrees that it shall not, and shall cause its Representatives not to, share the Confidential Information with any of such Creditor or their respective partners, counsels, members, associates, employees, agents, advisors or representatives unless and until the U.S. Debtors and the Canadian Debtors and such Creditor have agreed upon an arrangement to protect Confidential Information of the Company, in form and substance satisfactory to the Creditor and the U.S. Debtors and the Canadian Debtors, or as may be ordered by a court of competent jurisdiction. It is understood and agreed, however, that the Advisor may provide advice based upon such Confidential Information to the Creditor and their representatives, prior to and after such arrangements to protect the Confidential Information satisfactory to the Creditor and the U.S. Debtors and the Canadian Debtors are reached, provided that, except as otherwise provided herein, prior to such arrangements being reached, no Confidential Information in whole or in part is provided to the Creditor or their representatives.

The Advisor is aware, and the Advisor will advise its Representatives, the Creditor and their respective representatives who are informed of the matters that are the subject of this Agreement, that applicable United States and Canadian securities laws restrict persons with material, non-public information concerning the Company (including matters that may be the subject of this Agreement) from purchasing or selling securities of the Company, or from communicating such information to any other person, except in circumstances expressly permitted under applicable securities laws.

3.    If the Advisor (i) receives any request or requirement, arising in connection with any judicial, regulatory, self-regulatory, or other proceedings, for the Advisor to disclose all or any portion of the Confidential Information and (ii) in the opinion of the Advisor's legal counsel, is legally required to disclose such Confidential Information, an Advisor may disclose such Confidential Information; provided, however, that where legally permissible under the circumstances, prior to making any such disclosure, the Advisor shall provide prompt notice of such request or requirement for disclosure to the U.S. Debtors and the Canadian Debtors so that the U.S. Debtors and the Canadian Debtors may seek a protective order or other appropriate remedy at the U.S. Debtors' and the Canadian Debtors' sole cost and expense or waive compliance with the applicable provisions of this Agreement by the Advisor, and in any event, shall provide notice to the U.S. Debtors and the Canadian Debtors concurrently with such disclosure. In the event

the U.S. Debtors and the Canadian Debtors determine to seek such protective order or other remedy, the Advisor will cooperate with the U.S. Debtors and the Canadian Debtors in seeking such protective order or other remedy. In the event that such protective order or other remedy is not obtained and disclosure of Confidential Information is required, or the U.S. Debtors and the Canadian Debtors grant a waiver hereunder, the Advisor (A) may, without liability hereunder furnish that portion (and only that portion) of the Confidential Information which, in the written good faith opinion of the Advisor's legal counsel, such Advisor is legally required to disclose and (B) will exercise its commercially reasonable efforts to have confidential treatment accorded any Confidential Information so furnished.

4.    Other than Derivative Information (as hereinafter defined), the Advisor acknowledges that the Confidential Information is and remains the property of the Company and in no event shall the Advisor or any of its Representatives be deemed, by virtue of this Agreement, to have acquired any right or interest of any kind or nature whatsoever, in or to, any Confidential Information other than Derivative Information. The Advisor shall, promptly upon request by the U.S. Debtors or the Canadian Debtors, destroy any Confidential Information provided by the Company, the Monitor, the Administrator or any of their respective representatives, agents, advisors or counsels to the Advisor or any of its Representatives that exists in any tangible form, including all copies and notes thereof, and including Confidential Information incorporated into analyses, compilations, studies, or other documents prepared by the Advisor or its Representatives, such analysis, compilations, studies prepared by the Advisor or its Representatives being "Derivative Information" (with such destruction being certified in writing by the Advisor), except for (i) copies of Confidential Information which the Advisor is required to retain in order to satisfy the requirements of any law, regulation, or securities exchange rule governing the conduct of the Advisor or (ii) copies of any computer records and files containing any Confidential Information which have been created pursuant to the Advisor's automatic electronic archiving and back-up procedures to the extent such copies are retained in accordance with the confidentiality obligations specified in this Agreement. Notwithstanding the foregoing, in order to preserve its research trail and analysis for the purpose of any continuing or further restructuring of Nortel and for any other purpose permitted hereunder, the Advisor shall have the option, upon receiving a request from the U.S. Debtors or the Canadian Debtors to destroy any Confidential Information, of placing a password-protected, electronic copy of such Confidential Information as it wishes to preserve into escrow, with an escrow agent and on terms satisfactory to both the Advisor and the Company, acting reasonably, for a period of up to three years, at the Advisor's sole cost and expense.

5.    Although the Advisor understands that the Company has endeavoured to include in the Confidential Information information known to it which it believes to be relevant for the purpose of the Advisor's compliance with its duties as an Advisor of the Creditor, the Advisor further understands and acknowledges that none of the Company, the Monitor, the Administrator or any of their respective representatives, agents, advisors, counsels, affiliates or control person (within the meaning of the *Securities Act of Ontario*) makes any representation or warranty, express or implied, as to the accuracy or completeness of the Confidential Information or any other information provided to the Advisor or its respective Representatives by the Company, the Monitor, the Administrator or any of

*18*

their respective representatives, agents, advisors, counsels, affiliates or controlling persons in connection with matters contemplated hereby. Only those representations or warranties, if any, that are made in the disclosure statement, when, as and if it is approved by the United States Bankruptcy Court for the District of Delaware (the "**U.S. Court**") or by the Superior Court of Justice of Ontario (the "**CCAA Court**") or the plan of reorganization, when, as and if it is confirmed or sanctioned by the U.S. Court or the CCAA Court, and, in either case subject to such limitations and restrictions as may be specified in such documentation, will have any legal effect. Furthermore, none of the Company, the Monitor, the Administrator or any of their respective representatives, agents, advisors, counsels, affiliates or controlling persons shall have any liability to the Advisor or any other party, including, without limitation, the Representatives, the Creditor or any other unsecured creditor, resulting from the use of, or reliance on, Confidential Information by the Advisor or the Representatives, except as may be provided by any separate agreement between any of the parties that has been approved by the U.S. Court or the CCAA Court, if and when approved and then, only with respect to any party to such separate agreement and only to the extent provided therein.

## II.    Termination

6.    This Agreement shall terminate on the date that the U.S. Debtors and the Canadian Debtors notify the Advisor in writing that the Company has publicly disclosed any material non-public information included in the Confidential Information but only with respect to such portion of the Confidential Information that has been disclosed; provided that following termination of this Agreement, any right that the U.S. Debtors and the Canadian Debtors may have to enforce the provisions of this Agreement or to seek any remedy for any action or failure to act by any of the Advisor or its respective Representatives or other breach of this Agreement prior to such termination shall survive any such terminations, subject to any applicable statute of limitations.

## III.    Miscellaneous

7.    This Agreement shall be governed by and construed in accordance with the laws of the Province of Ontario without giving effect to the choice of law provisions thereof. The parties agree and consent to personal jurisdiction and venue in the CCAA Court, for the purposes of any action, suit or proceeding arising out of or relating to this Agreement. To the fullest extent permitted by law, the Advisor and the U.S. Debtors and the Canadian Debtors hereby agree to waive trial by jury in any action proceeding or counterclaim brought by or on behalf of either party with respect to any matter whatsoever relating to this Agreement.

8.    It is understood and agreed that money damages are not an appropriate remedy for any breach of this Agreement and, accordingly, the U.S. Debtors and the Canadian Debtors shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach.

9.    If any portion of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall be unaffected thereby and shall remain in full force and effect. This Agreement may be signed in one or more counterparts (including by means of telecopied or electronically mailed facsimiles of signatures pages), each of which need

not contain the signature of all parties hereto, and all of such counterparts taken together shall constitute a single agreement. This Agreement contains the entire agreement between the parties concerning the confidentiality of the Confidential Information and shall be binding upon any respective successors and permitted assigns. This Agreement may be modified or waived only by a separate writing executed by the U.S. Debtors and the Canadian Debtors and the Advisor expressly so modifying this Agreement or waiving any provision thereof. No course of dealing between the parties shall be deemed to modify or amend any provision of this Agreement.

10. No delay in exercising any rights hereunder shall be construed to be a waiver of such rights, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right hereunder.

11. Any notices or consents to be given hereunder by any party to another party may be effected in writing by personal delivery, overnight courier, or facsimile. Notices to the Company shall be provided to Nortel Networks Corporation, Attn: Gordon A. Davies, Esq., Chief Legal Officer, 195 The West Mall, Toronto, Ontario, Canada, M9C 5K1, (Fax No: 905-863-7386) with a copy (which shall not constitute notice) to Derrick Tay, Ogilvy Renault LLP, Suite 3800, Royal Bank Plaza, South Tower, P.O. Box 84, 200 Bay Street, Toronto, Ontario, Canada, M5J 2Z4. Notices to the Advisor shall be provided to Paliare Roland Rosenberg Rothstein LLP, Attn: Kenneth Rosenberg, 250 University Avenue, Suite 501, Toronto, Ontario, Canada, M5H 3E5, (Fax No: 416-646-4301).

IN WITNESS WHEREOF, the U.S. Debtors and the Canadian Debtors and the Advisor have executed this Agreement by its duly authorized officers as of the date first set forth above.

**NORTEL NETWORKS INC. AND THE OTHER U.S. DEBTORS**

Per: _____

Name: Gordon A Davies

Title: Chief Legal Officer

**NORTEL NETWORKS CORPORATION AND THE OTHER CANADIAN DEBTORS**

Per: _____

Name: J Doolittle

Title: Treasurer

Gordon A. Davies
Chief Legal Officer
and Corporate Secretary

20

- 7 -

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**

Per: _____

Name: Kenneth T. Rosenberg

Title:  Partner

21

## **EXHIBIT A**

## **U.S. DEBTORS**

NNI

Nortel Networks Capital Corporation

Nortel Networks Cable Solutions Inc.

Xros, Inc.

NN Applications Management Solutions Inc.

CoreTek, Inc.

Alteon WebSystems Inc.

Alteon WebSystems International Inc.

Sonoma Systems, Qtera Corporation

Nortel Networks International Inc.

Northern Telecom International Inc.

Nortel Networks Optical Components Inc.

Nortel Networks HPOCS Inc.

Architel Systems (U.S.) Corporation

22

## **EXHIBIT B**

## **CANADIAN DEBTORS**

Nortel Networks Corporation

Nortel Networks Limited

Nortel Networks Global Corporation

Nortel Networks International Corporation

Nortel Networks Technology Corporation

# TAB B

23

THIS IS EXHIBIT "B" REFERRED TO
IN THE AFFIDAVIT OF KRISTIAN BORG-OLIVIER
SWORN BEFORE ME THIS 5th DAY
OF JUNE, 2013

_____

A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.

24

**TO:   LGE ELECTRONICS INC. ("LGE")**

## CONFIDENTIALITY ACKNOWLEDGEMENT AND AGREEMENTS

Reference is made to that certain confidentiality agreement entered into as of the 25th day of March, 2009 (the **"Agreement"**) among Paliare Roland Rosenberg Rothstein LLP (the **"Advisor"**), Nortel Networks Inc. (**"NNI"**) and certain other Nortel companies specified on Exhibit A thereto (such companies collectively with NNI, the **"U.S. Debtors"**) and Nortel Networks Corporation (**"NNC"**) and certain other Nortel companies specified in Exhibit B thereto (such companies collectively with NNC, the **"Canadian Debtors"**) (the U.S. Debtors, the Canadian Debtors together with all other Nortel subsidiaries and affiliates, including without limitation NNC, Nortel Networks Limited (**"NNL"**) and Nortel Networks Capital Corporation (**"NNCC"**) are hereinafter collectively referred to as the **"Company"**)

RECITALS

WHEREAS the Advisor and the Company entered into the Agreement to set out the confidentiality terms pursuant to which certain Confidential Information would be provided to the Advisor;

AND WHEREAS pursuant to an LG-Nortel Joint Venture Sale Process Protocol dated as of May 27, 2009 (the **"Protocol"**), LGE and Nortel agreed to pursue a sale process (the **"JV Sale Process"**) for the sale of some or all of the interests or assets of a joint venture (the **"JV"**) between LGE and Nortel pursuant to a joint venture agreement dated as of August 17, 2005;

AND WHEREAS the Protocol was approved by an Order of the Ontario Superior Court of Justice on June 1, 2009;

AND WHEREAS  Section 5.0 of the Protocol provides that certain periodic updates with respect to the JV Sale Process may be made to the Company's stakeholders provided that certain additional confidentiality arrangements are made in favour of LGE;

NOW, THEREFORE, in consideration of $10.00 and such good and other consideration, the sufficiency of which is hereby acknowledged, the Advisor acknowledges and agrees as follows:

1.    Capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Agreement.

2.    A true copy of the Agreement is attached as Schedule "A" hereto.

3.    The Advisor hereby irrevocably undertakes and agrees that any information relating to the JV Sale Process provided to it is subject to the terms and conditions of the Agreement for the benefit of LGE.

4.    This Acknowledgement shall be governed by and construed in accordance with the laws of the Province of Ontario without giving effect to the choice of law provisions thereof. The Advisor agrees and consents to personal jurisdiction and venue in the CCAA Court, for the purposes of any action, suit or proceeding arising out of or relating to this

Agreement.  To the fullest extent permitted by law, the Advisor hereby agrees to waive trial by jury in any action proceeding or counterclaim with respect to any matter whatsoever relating to this Acknowledgement.

IN WITNESS WHEREOF, the Advisor has executed this Acknowledgement by its duly authorized officers as of the    day of July, 2009.

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**

Per: _____

    Name: _Ken Rosenberg_

    Title: _Partner_

Per: _____

    Name:

    Title:

26

**SCHEDULE "A" – CONFIDENTIALITY AGREEMENT**

**Attached.**

27

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "**Agreement**") is entered into on this 25th day of March, 2009, by Paliare Roland Rosenberg Rothstein LLP (the "**Advisor**"), Nortel Networks Inc. ("**NNI**") and certain other Nortel companies specified on Exhibit A (such companies collectively with NNI, the "**U.S. Debtors**") and Nortel Networks Corporation ("**NNC**") and certain other Nortel companies specified in Exhibit B (such companies collectively with NNC, the "**Canadian Debtors**") (the U.S. Debtors, the Canadian Debtors together with all other Nortel subsidiaries and affiliates, including without limitation NNC, Nortel Networks Limited ("**NNL**") and Nortel Networks Capital Corporation ("**NNCC**") are hereinafter collectively referred to as the "**Company**").

### RECITALS

WHEREAS on January 14, 2009 the Canadian Debtors obtained protection pursuant to the Companies' Creditors Arrangement Act by order of the Superior Court of Justice of Ontario (the "**CCAA Proceedings**").

WHEREAS, on January 14, 2009, the U.S. Debtors filed voluntary petitions and certain orders for relief (the "**Chapter 11 Cases**") pursuant to Title 11 of the United States Code (the "**Bankruptcy Code**").

WHEREAS NNL administers pension plans registered in Ontario, bearing registration numbers 0587766, 0342048 and 1072305.

WHEREAS, the Advisor has been retained in connection with the CCAA Proceedings and the Chapter 11 Cases, as legal counsel to the Superintendent of Financial Services (Ontario), in its capacity as administrator of the Pension Benefit Guarantee Fund, (the "**Creditor**").

WHEREAS, the Company is willing to provide the Advisor with Confidential Information (as defined below), subject to the terms and conditions contained in this Agreement, in connection with the Advisor's representation of the Creditor in connection with the Chapter 11 Cases and the CCAA Proceedings.

NOW, THEREFORE, in consideration of the mutual agreements contained herein, the Advisor and each of the U.S. Debtors and the Canadian Debtors agree as follows:

I.    **Confidentiality**

1.    With respect to the Advisor, as used in this Agreement, "Confidential Information" shall mean any information relating to the Company that is non-public, confidential, or proprietary in nature, including the content of all discussions, communications, negotiations, and evaluations in writing, orally, or otherwise, in each case received after the date hereof by the Advisor or any of its affiliates, members, partners, counsels, associates, employees, agents, advisors or representatives (each of the foregoing, other than the Advisor, a "**Representative**") from the Company, Ernst & Young Inc., as the Court-appointed Monitor in connection with the proceedings under the Companies' Creditors Arrangement Act (the "**Monitor**"), any of Alan Bloom, Stephen Harris, Chris Hill and Alan Hudson of Ernst & Young LLP, as the Court-appointed joint administrators

28

of certain Nortel companies incorporated in the Europe, Middle East and Africa region in connection with the proceedings under the Insolvency Act 1986 (such individuals collectively, the "**Administrator**") or any of their respective representatives, agents, advisors or counsels, all notes, reports, analyses, compilations, studies, files or other documents or material, whether prepared by the Advisor or others, which are based on, contain or otherwise reflect such information.

Notwithstanding the foregoing, Confidential Information shall not include any information:

(a)   that was already in the possession of the Advisor or a Representative, or that was available to them on a non-confidential basis from a source other than the Company, its agents or representatives, the Monitor or Administrator, in each case prior to the time of disclosure by the Company, the Monitor or Administrator to the Advisor or such Representative;

(b)   obtained by the Advisor or a Representative from a third person, which insofar as is known to the Advisor or such Representative, is not subject to any legal, contractual, or fiduciary prohibition or obligation against disclosure by that third person in favour of the Company (the Advisor or the Representative, as applicable, shall be deemed to have "knowledge" if it reasonably should have known of such violation);

(c)   received by the Advisor pursuant to Subsections 106 (3), (4) or (5) of the *Pensions Benefits Act* (Ontario);

(d)   which is or becomes generally available to the public other than as a result of a violation of this Agreement by the Advisor or any of its Representatives; or

(e)   that is developed by the Advisor or its Representatives without use of or reference to the Confidential Information.

2.   The Advisor agrees, except as otherwise provided herein:

(a)   not to disclose in any manner whatsoever to any person or entity other than its Representatives on a need-to-know basis all or any part of the Confidential Information without the prior written consent of the U.S. Debtors and the Canadian Debtors;

(b)   not to use the whole or any part of the Confidential Information for any purpose other than in connection with its function as advisor to the Creditor in the Chapter 11 Cases and the CCAA Proceedings; and

(c)   to disclose the Confidential Information only to its Representatives who have a need to know the Confidential Information in connection with such Advisor's function as advisor to the Creditor in the Chapter 11 Cases and the CCAA Proceedings.

29

The Advisor will be liable for any action or failure to act that would constitute a breach of the obligations of this Agreement by any of its Representatives to whom it provides Confidential Information.

Neither the Advisor nor its Representatives shall share the Confidential Information with any of their respective members, partners, counsels, associates, employees, agents, advisors or representatives that the Advisor or its Representatives have actual knowledge are advising an entity or person making a bid to acquire any assets or securities of the Company and the Advisor and each Representative will at all times establish and maintain information barriers to ensure that Confidential Information will not be available to such persons.

The Advisor acknowledges that the U.S. Debtors and the Canadian Debtors have not as of the date hereof entered into any agreement with the Creditor with respect to the Confidential Information and hereby agrees that it shall not, and shall cause its Representatives not to, share the Confidential Information with any of such Creditor or their respective partners, counsels, members, associates, employees, agents, advisors or representatives unless and until the U.S. Debtors and the Canadian Debtors and such Creditor have agreed upon an arrangement to protect Confidential Information of the Company, in form and substance satisfactory to the Creditor and the U.S. Debtors and the Canadian Debtors, or as may be ordered by a court of competent jurisdiction. It is understood and agreed, however, that the Advisor may provide advice based upon such Confidential Information to the Creditor and their representatives, prior to and after such arrangements to protect the Confidential Information satisfactory to the Creditor and the U.S. Debtors and the Canadian Debtors are reached, provided that, except as otherwise provided herein, prior to such arrangements being reached, no Confidential Information in whole or in part is provided to the Creditor or their representatives.

The Advisor is aware, and the Advisor will advise its Representatives, the Creditor and their respective representatives who are informed of the matters that are the subject of this Agreement, that applicable United States and Canadian securities laws restrict persons with material, non-public information concerning the Company (including matters that may be the subject of this Agreement) from purchasing or selling securities of the Company, or from communicating such information to any other person, except in circumstances expressly permitted under applicable securities laws.

3.    If the Advisor (i) receives any request or requirement, arising in connection with any judicial, regulatory, self-regulatory, or other proceedings, for the Advisor to disclose all or any portion of the Confidential Information and (ii) in the opinion of the Advisor's legal counsel, is legally required to disclose such Confidential Information, an Advisor may disclose such Confidential Information; provided, however, that where legally permissible under the circumstances, prior to making any such disclosure, the Advisor shall provide prompt notice of such request or requirement for disclosure to the U.S. Debtors and the Canadian Debtors so that the U.S. Debtors and the Canadian Debtors may seek a protective order or other appropriate remedy at the U.S. Debtors' and the Canadian Debtors' sole cost and expense or waive compliance with the applicable provisions of this Agreement by the Advisor, and in any event, shall provide notice to the U.S. Debtors and the Canadian Debtors concurrently with such disclosure. In the event

the U.S. Debtors and the Canadian Debtors determine to seek such protective order or other remedy, the Advisor will cooperate with the U.S. Debtors and the Canadian Debtors in seeking such protective order or other remedy. In the event that such protective order or other remedy is not obtained and disclosure of Confidential Information is required, or the U.S. Debtors and the Canadian Debtors grant a waiver hereunder, the Advisor (A) may, without liability hereunder furnish that portion (and only that portion) of the Confidential Information which, in the written good faith opinion of the Advisor's legal counsel, such Advisor is legally required to disclose and (B) will exercise its commercially reasonable efforts to have confidential treatment accorded any Confidential Information so furnished.

4.   Other than Derivative Information (as hereinafter defined), the Advisor acknowledges that the Confidential Information is and remains the property of the Company and in no event shall the Advisor or any of its Representatives be deemed, by virtue of this Agreement, to have acquired any right or interest of any kind or nature whatsoever, in or to, any Confidential Information other than Derivative Information. The Advisor shall, promptly upon request by the U.S. Debtors or the Canadian Debtors, destroy any Confidential Information provided by the Company, the Monitor, the Administrator or any of their respective representatives, agents, advisors or counsels to the Advisor or any of its Representatives that exists in any tangible form, including all copies and notes thereof, and including Confidential Information incorporated into analyses, compilations, studies, or other documents prepared by the Advisor or its Representatives, such analysis, compilations, studies prepared by the Advisor or its Representatives being "Derivative Information" (with such destruction being certified in writing by the Advisor), except for (i) copies of Confidential Information which the Advisor is required to retain in order to satisfy the requirements of any law, regulation, or securities exchange rule governing the conduct of the Advisor or (ii) copies of any computer records and files containing any Confidential Information which have been created pursuant to the Advisor's automatic electronic archiving and back-up procedures to the extent such copies are retained in accordance with the confidentiality obligations specified in this Agreement. Notwithstanding the foregoing, in order to preserve its research trail and analysis for the purpose of any continuing or further restructuring of Nortel and for any other purpose permitted hereunder, the Advisor shall have the option, upon receiving a request from the U.S. Debtors or the Canadian Debtors to destroy any Confidential Information, of placing a password-protected, electronic copy of such Confidential Information as it wishes to preserve into escrow, with an escrow agent and on terms satisfactory to both the Advisor and the Company, acting reasonably, for a period of up to three years, at the Advisor's sole cost and expense.

5.   Although the Advisor understands that the Company has endeavoured to include in the Confidential Information information known to it which it believes to be relevant for the purpose of the Advisor's compliance with its duties as an Advisor of the Creditor, the Advisor further understands and acknowledges that none of the Company, the Monitor, the Administrator or any of their respective representatives, agents, advisors, counsels, affiliates or control person (within the meaning of the *Securities Act of Ontario*) makes any representation or warranty, express or implied, as to the accuracy or completeness of the Confidential Information or any other information provided to the Advisor or its respective Representatives by the Company, the Monitor, the Administrator or any of

their respective representatives, agents, advisors, counsels, affiliates or controlling persons in connection with matters contemplated hereby. Only those representations or warranties, if any, that are made in the disclosure statement, when, as and if it is approved by the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") or by the Superior Court of Justice of Ontario (the "CCAA Court") or the plan of reorganization, when, as and if it is confirmed or sanctioned by the U.S. Court or the CCAA Court, and, in either case subject to such limitations and restrictions as may be specified in such documentation, will have any legal effect. Furthermore, none of the Company, the Monitor, the Administrator or any of their respective representatives, agents, advisors, counsels, affiliates or controlling persons shall have any liability to the Advisor or any other party, including, without limitation, the Representatives, the Creditor or any other unsecured creditor, resulting from the use of, or reliance on, Confidential Information by the Advisor or the Representatives, except as may be provided by any separate agreement between any of the parties that has been approved by the U.S. Court or the CCAA Court, if and when approved and then, only with respect to any party to such separate agreement and only to the extent provided therein.

## II.    Termination

6.    This Agreement shall terminate on the date that the U.S. Debtors and the Canadian Debtors notify the Advisor in writing that the Company has publicly disclosed any material non-public information included in the Confidential Information but only with respect to such portion of the Confidential Information that has been disclosed; provided that following termination of this Agreement, any right that the U.S. Debtors and the Canadian Debtors may have to enforce the provisions of this Agreement or to seek any remedy for any action or failure to act by any of the Advisor or its respective Representatives or other breach of this Agreement prior to such termination shall survive any such terminations, subject to any applicable statute of limitations.

## III.    Miscellaneous

7.    This Agreement shall be governed by and construed in accordance with the laws of the Province of Ontario without giving effect to the choice of law provisions thereof. The parties agree and consent to personal jurisdiction and venue in the CCAA Court, for the purposes of any action, suit or proceeding arising out of or relating to this Agreement. To the fullest extent permitted by law, the Advisor and the U.S. Debtors and the Canadian Debtors hereby agree to waive trial by jury in any action proceeding or counterclaim brought by or on behalf of either party with respect to any matter whatsoever relating to this Agreement.

8.    It is understood and agreed that money damages are not an appropriate remedy for any breach of this Agreement and, accordingly, the U.S. Debtors and the Canadian Debtors shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach.

9.    If any portion of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall be unaffected thereby and shall remain in full force and effect. This Agreement may be signed in one or more counterparts (including by means of telecopied or electronically mailed facsimiles of signatures pages), each of which need

not contain the signature of all parties hereto, and all of such counterparts taken together shall constitute a single agreement. This Agreement contains the entire agreement between the parties concerning the confidentiality of the Confidential Information and shall be binding upon any respective successors and permitted assigns. This Agreement may be modified or waived only by a separate writing executed by the U.S. Debtors and the Canadian Debtors and the Advisor expressly so modifying this Agreement or waiving any provision thereof. No course of dealing between the parties shall be deemed to modify or amend any provision of this Agreement.

10. No delay in exercising any rights hereunder shall be construed to be a waiver of such rights, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right hereunder.

11. Any notices or consents to be given hereunder by any party to another party may be effected in writing by personal delivery, overnight courier, or facsimile. Notices to the Company shall be provided to Nortel Networks Corporation, Attn: Gordon A. Davies, Esq., Chief Legal Officer, 195 The West Mall, Toronto, Ontario, Canada, M9C 5K1, (Fax No: 905-863-7386) with a copy (which shall not constitute notice) to Derrick Tay, Ogilvy Renault LLP, Suite 3800, Royal Bank Plaza, South Tower, P.O. Box 84, 200 Bay Street, Toronto, Ontario, Canada, M5J 2Z4. Notices to the Advisor shall be provided to Paliare Roland Rosenberg Rothstein LLP, Attn: Kenneth Rosenberg, 250 University Avenue, Suite 501, Toronto, Ontario, Canada, M5H 3E5, (Fax No: 416-646-4301).

IN WITNESS WHEREOF, the U.S. Debtors and the Canadian Debtors and the Advisor have executed this Agreement by its duly authorized officers as of the date first set forth above.

NORTEL NETWORKS INC. AND THE
OTHER U.S. DEBTORS

Per: _____

Name: Gordon A Davies
Title: Chief Legal Officer

NORTEL NETWORKS CORPORATION
AND THE OTHER CANADIAN DEBTORS

Per: _____

Name: J Doolittle
Title: Treasurer -

Gordon A. Davies
Chief Legal Officer
and Corporate Secretary

33

- 7 -

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**

Per: _____

     Name: Kenneth T. Rosenberg

     Title:  Partner

*34*

## EXHIBIT A

## U.S. DEBTORS

NNI

Nortel Networks Capital Corporation

Nortel Networks Cable Solutions Inc.

Xros, Inc.

NN Applications Management Solutions Inc.

CoreTek, Inc.

Alteon WebSystems Inc.

Alteon WebSystems International Inc.

Sonoma Systems, Qtera Corporation

Nortel Networks International Inc.

Northern Telecom International Inc.

Nortel Networks Optical Components Inc.

Nortel Networks HPOCS Inc.

Architel Systems (U.S.) Corporation

## EXHIBIT B

## CANADIAN DEBTORS

Nortel Networks Corporation

Nortel Networks Limited

Nortel Networks Global Corporation

Nortel Networks International Corporation

Nortel Networks Technology Corporation

# TAB C

36

THIS IS EXHIBIT "C" REFERRED TO
IN THE AFFIDAVIT OF KRISTIAN BORG-OLIVIER
SWORN BEFORE ME THIS 5th DAY
OF JUNE, 2013

_____

A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.

37

Execution Version

## ADDENDUM TO CONFIDENTIALITY AGREEMENT

This Addendum (the "Addendum") to the Confidentiality Agreements entered into on March 25, 2009 by Paliare Roland Rosenberg Rothstein LLP ("Paliare") and on March 4, 2009 by A. Farber & Partners Inc. ("Farber") is entered into on this 10th day of November, 2010 between Paliare, Farber and Edwards Angell Palmer & Dodge LLP (collectively, the "PBGF Advisors"), in their capacities as advisors to the Superintendent of Financial Services in his capacity as administrator of Ontario's Pension Benefits Guarantee Fund (the "Superintendent"); Nortel Networks Inc. ("NNI") and certain of its United States affiliates that have filed petitions in the United States Bankruptcy Court for the District of Delaware under chapter 11 of title 11 of the United States Code (collectively, the "U.S. Debtors"); Nortel Networks Corporation, Nortel Networks Limited, and certain of their Canadian affiliates that have commenced creditor protection proceedings before the Ontario Superior Court of Justice (collectively, the "Canadian Debtors"); Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited, Nortel Networks S.A., and certain of NNUK's affiliates in the Europe, Middle East and Africa region that have commenced administration proceedings before the High Court of Justice in London, England (collectively, the "EMEA Debtors"), which court appointed individuals from Ernst & Young LLP and Ernst & Young Chartered Accountants as administrators in such proceedings (the "Joint Administrators"). The U.S. Debtors, the Canadian Debtors, the EMEA Debtors, and all other Nortel subsidiaries and affiliates are hereinafter collectively referred to as the "Company."

WHEREAS, the U.S. Debtors, the Canadian Debtors, the EMEA Debtors and certain other parties are engaged in settlement discussions, including a mediation, regarding the allocation of the proceeds from the sale of certain assets of Nortel between and among the Nortel entities (the "Allocation Discussions").

WHEREAS, the U.S. Debtors, the Canadian Debtors, the EMEA Debtors, and other Nortel subsidiaries and affiliates have exchanged and will exchange papers during the Allocation Discussions and have had and will have discussions in the course of the Allocation Discussions ("Confidential Information").

WHEREAS, the PBGF Advisors wish to participate in the Allocation Discussions and have access to Confidential Information

NOW, THEREFORE, in consideration of and as a condition to participating in the Allocation Discussions and being furnished Confidential Information, the PBGF Advisors agree as follows:

1.    The PBGF Advisors shall not, and shall cause their employees, agents, advisors, accountants, consultants, attorneys or representatives (each of the foregoing, a "Representative") not to, use any Confidential Information for any reason or purpose other than for the purpose of the Allocation Discussions.

2.    The PBGF Advisors may disclose Confidential Information only to (i) their Representatives and to the Superintendent as required for the purpose of the Allocation

38

Discussions and only to the extent necessary for such purpose; provided, however, that disclosure of Confidential Information to the Superintendent is permitted in reliance on the confirmation by Paliare, on behalf of the Superintendent, of the Superintendent's agreement to the confidentiality provisions contained in the email dated October 27, 2010, and the subsequent modifying email of the same date, regarding the Allocation Discussions, which agreement Paliare reconfirms on behalf of the Superintendent as of the date hereof, (ii) any mediator appointed in connection with the Allocation Discussions and any personnel assisting such mediator, and (iii) any party participating in the Allocation Discussions that has agreed to this Addendum or a substantially similar confidentiality agreement or undertaking providing that Confidential Information may be used only for purposes of the Allocation Discussions.

3.      With respect to the PBGF Advisors, the term "Confidential Information" does not include information or materials: (i) that were already in the possession of the PBGF Advisors or their Representatives on a non-confidential basis prior to the time of disclosure on the Site or during the Allocation Discussions; (ii) obtained by the PBGF Advisors or their Representatives from a third person, which insofar as is known to the PBGF Advisors or their Representatives is not subject to any legal, contractual or fiduciary obligation or prohibition against disclosure by that third person; (iii) were, are or become generally available to the public other than as a result of breach of this Addendum or in breach of any other contractual, legal or fiduciary obligation to maintain the confidentiality of such information or materials; (iv) the PBGF Advisors can establish that they or their Representatives independently developed without use of or reference to Confidential Information or any derivative thereof; or (v) that were received by the PBGF Advisors pursuant to Subsections 106 (3), (4) or (5) of the *Pensions Benefits Act* (Ontario).

4.      Notwithstanding anything to the contrary in this Addendum, the PBGF Advisors may disclose the Confidential Information pursuant to a subpoena or other governmental order or process served on or received by the PBGF Advisors or otherwise compelled by law or regulation, provided that the PBGF Advisors, if legally permitted, promptly inform the U.S. Debtors, the Canadian Debtors and the EMEA Debtors in writing of such requirement sufficient to give the U.S. Debtors, the Canadian Debtors and/or the EMEA Debtors the opportunity to seek a protective order, injunction or other measure to limit or prevent the disclosure of the Confidential Information, and provided further that any such disclosure shall be limited to such portions of the Confidential Information that the legal counsel of the PBGF Advisors receiving such subpoena, governmental order or process advises is required under the subpoena, order or process.

5.      Inadvertent disclosure during the Allocation Discussions of any document or portion of a document that is subject to a claim of privilege, including the attorney-client privilege, the work product doctrine and/or any other applicable privilege, protection or immunity from disclosure (collectively referred to hereafter as an "Inadvertently Disclosed Privileged Document"), will not constitute or be deemed a waiver or forfeiture of any claim of such privilege or protection that the Nortel party or parties who had control, custody or possession of the Inadvertently Disclosed Privileged Document at the time of disclosure during the Allocation Discussions (and not solely as a result of disclosure during the Allocation Discussions) would otherwise be entitled to assert with respect to the Inadvertently Disclosed Privileged Document and its subject matter. Any Nortel party or parties who had such control, custody or possession of the Inadvertently Disclosed Privileged Document may request the

2

39

return of the Inadvertently Disclosed Privileged Document by identifying it in writing and stating in writing the basis for requesting its return. The PBGF Advisors shall promptly, but in any event no later than within five business days of receipt of that notice, return or destroy all copies of the Inadvertently Disclosed Privileged Document and notify the Nortel party or parties requesting the return of the Inadvertently Disclosed Privileged Document that such document has been returned or destroyed. For the avoidance of doubt, nothing herein is an acknowledgement that any document or portion of a document is subject to a claim of privilege, protection or immunity from disclosure as between the subsidiaries and affiliates of the Company.

6.     It is understood and agreed that money damages are not an appropriate remedy for any breach of this Addendum and, accordingly, the U.S. Debtors, the Canadian Debtors, the EMEA Debtors and any other subsidiaries or affiliates of the Company that have made or will make available Confidential Information during the Allocation Discussions shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach. Such remedy shall not be deemed to be the exclusive remedy for the breach or threatened breach of this Addendum, but shall be in addition to all other remedies available at law or in equity.

7.     This Addendum and any dispute or claim arising out of or in connection with it (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of the State of New York without giving effect to the choice of law provisions thereof, but the foregoing is not intended to be interpreted to extend to any issue(s) or claim(s) as to whether an Inadvertently Disclosed Privileged Document is a document or a portion of a document that is subject to privilege, protection or immunity from disclosure. The PBGF Advisors and their Representatives irrevocably agree and consent to exclusive joint personal jurisdiction and venue in the Ontario Superior Court of Justice (Commercial List) and the United States Bankruptcy Court for the District of Delaware (the "Courts") under the Cross-Border Insolvency Protocol, as amended from time to time, approved by the Courts on June 29, 2009 and June 30, 2009, respectively, for the purposes of any action, suit or proceeding arising out of or relating to this Addendum. To the fullest extent permitted by law, The PBGF Advisors and their Representatives hereby agree to waive trial by jury in any action, proceeding or counterclaim brought in connection with any matter whatsoever relating to this Addendum.

8.     This Addendum may be executed in separate counterparts (which may include counterparts delivered by facsimile transmission or electronically) and all of said counterparts taken together shall be an original and shall be binding on the party who signed the counterpart and all of which together shall constitute a single agreement.

IN WITNESS WHEREOF, the U.S. Debtors, the Canadian Debtors, the EMEA Debtors and each of the PBGF Advisors have executed this Addendum by their duly authorized officers as of the date first set forth above.

*40*

NORTEL NETWORKS INC. AND THE OTHER U.S. DEBTORS

    By:_____
    Name:_____
    Title:_____

NORTEL NETWORKS CORPORATION AND THE OTHER CANADIAN DEBTORS

    By:_____
    Name:_____
    Title:_____

THE JOINT ADMINISTRATORS, ACTING AS AGENTS OF THE EMEA DEBTORS

    By:_____
    Name:_____
    Title:_____

PALIARE ROLAND ROSENBERG ROTHSTEIN LLP

    By:_____
    Name:_____
    Title:_____

4

41

NORTEL NETWORKS INC. AND THE OTHER U.S. DEBTORS

By: _____
Name: _____
Title: _____

NORTEL NETWORKS CORPORATION AND THE OTHER CANADIAN DEBTORS

By: _____
Name: John Doolittle
Title: Senior Vice-President, Corporate Services
       and Chief Financial Officer

By: _____
Name: Clarke Glaspell
Title:   Controller

THE JOINT ADMINISTRATORS, ACTING AS AGENTS OF THE EMEA DEBTORS

By: _____
Name: _____
Title: _____

PALIARE ROLAND ROSENBERG ROTHSTEIN LLP

By: _____
Name: _____
Title: _____

4

42

NORTEL NETWORKS INC. AND THE OTHER U.S. DEBTORS

    By:_____
    Name: _____
    Title: _____

NORTEL NETWORKS CORPORATION AND THE OTHER CANADIAN DEBTORS

    By:_____
    Name: _____
    Title: _____

THE JOINT ADMINISTRATORS, ACTING AS AGENTS OF THE EMEA DEBTORS

    By:_____
    Name: \_\_\_\_Alan Bloom_____
    Title: \_\_\_\_Administrator\_\_\_\_\_

PALIARE ROLAND ROSENBERG ROTHSTEIN LLP

    By:_____
    Name: _____
    Title: _____

4

43

NORTEL NETWORKS INC. AND THE OTHER U.S. DEBTORS

By:_____
Name:_____
Title:_____

NORTEL NETWORKS CORPORATION AND THE OTHER CANADIAN DEBTORS

By:_____
Name:_____
Title:_____

THE JOINT ADMINISTRATORS, ACTING AS AGENTS OF THE EMEA DEBTORS

By:_____
Name:_____
Title:_____

PALIARE ROLAND ROSENBERG ROTHSTEIN LLP

By: _MASSIMO STARNINO_
Name:_____
Title: _Partner_

4

# TAB D

44

THIS IS EXHIBIT "D" REFERRED TO
IN THE AFFIDAVIT OF KRISTIAN BORG-OLIVIER
SWORN BEFORE ME THIS 5th DAY
OF JUNE, 2013

A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.

45

## INTERIM CONFIDENTIALITY AGREEMENT

TO:    Nortel Networks Corporation
       Nortel Networks Limited
       Nortel Networks Global Corporation
       Nortel Networks International Corporation
       Nortel Networks Technology Corporation (collectively "Nortel")
       Ernst & Young Inc. as court appointed Monitor of the above corporations

A Confidentiality Agreement was entered into as of June 23, 2010 (the "Confidentiality Agreement") between Nortel Networks Corporation and Nortel Networks Limited and the other Canadian Debtors; Nortel Networks Inc. and the other U.S. Debtors; the Monitor; the Joint Administrators on behalf of the EMEA Debtors, and the Joint Administrators on their own behalf (the "Parties").

In this Interim Confidentiality Agreement capitalized terms have the same meaning as in the Confidentiality Agreement, except to the extent redefined herein.

**WHEREAS**, the Courts have ordered further Allocation Discussions in the form of mediation.

**WHEREAS**, the undersigned intend to continue to participate in the Allocation Discussions and seek access to materials on the Site that were contributed by the Canadian Debtors.

**WHEREAS**, pending the amendment or termination of the Confidentiality Agreement by the Parties, for the purpose of preparing for the Allocation Discussions and for no other purpose, the undersigned agree to restrict the use of documents made available to them by the Canadian Debtors and the Monitor in accordance with the terms hereof.

**NOW, THEREFORE** in consideration of the foregoing, and the covenants and agreements set forth herein, the undersigned agree as follows:

1.     The undersigned, by their counsel, agree to be bound by the terms of the Confidentiality Agreement, as amended as set out below, in respect of the documents of Nortel and its subsidiaries to which the undersigned are provided access by the Canadian Debtors and the Monitor.

2.     For the purposes of this Interim Confidentiality Agreement, the Parties shall include the undersigned within the meaning of the Confidentiality Agreement.

46

2

**WITNESS** the following signatures:

Superintendent of Financial Services of Ontario
in his capacity as Administrator of the Pension Benefit Guarantee Fund,
by his counsel Paliare Roland Rosenberg Rothstein LLP

By: _____    Date: June 30, 2011 .

\5983933
\5983933

# TAB E

47

THIS IS EXHIBIT "E" REFERRED TO
IN THE AFFIDAVIT OF KRISTIAN BORG-OLIVIER
SWORN BEFORE ME THIS 5th DAY
OF JUNE, 2013

A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.

48

File No. 09-CL-7950

### ONTARIO
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

THE   HONOURABLE   MR.   JUSTICE       )       ~~[WEDNESDAY]~~ THURSDAY, THE ~~[15TH]~~ 16th DAY OF
                                                               )
MORAWETZ                                           )       MAY, 2013
                                                               )

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

### O R D E R
### (Interim Protective Order)

**WHEREAS** for the purpose of providing access to the Merrill database, it has been determined
that an interim protective order should be granted pending the issuance of a final protective order.

**WHEREAS** the terms of this Order are without prejudice to any position any Core Party may
take in respect of the form of the final protective order.

**ON HEARING SUBMISSIONS** from counsel for the Canadian Debtors, the US Debtors, the
unsecured creditors committee, the Canadian creditors committee, the UK Pension Interests and the ad
hoc bondholders group:

49

- 2 -

1.      **THIS COURT ORDERS** that the Core Parties (as defined in the allocation protocol order of

this Court dated April 22, 2013, the **"Allocation Protocol Order"**) who do not already have access to

the Merrill database (referred to in the endorsement of this Court made in connection with the Allocation

Protocol Order) shall be provided access thereto forthwith on the basis that pending the issuance of a

final protective order, all information in the database shall be treated by such Core Parties as "Highly

Confidential Discovery Material" in accordance with the terms of the draft protective order attached as

Schedule A hereto.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO
LE / DANS LE REGISTRE NO..

MAY 1 7 2013

50

- 3 -

## SCHEDULE A – DRAFT PROTECTIVE ORDER

Attached.

51

## INTERIM PROTECTIVE ORDER

1. **Application of this Protective Order.**

(a)    This Protective Order (the "Protective Order") shall govern the participation of any person, entity or group, including, but not limited to, the Canadian Debtors,[1] EMEA Debtors, US Debtors, Committee, Bondholder Group, Monitor, Joint Administrators, CCC, Indenture Trustees, UK Pension Claimants, and Officers and Directors (the "Parties" and each a "Party") and the Parties' counsel (and, where a Party is a committee or group, counsel to each member), in discovery undertaken in connection with the litigation or arbitration (subject to any Party's right to oppose any request for arbitration on any grounds and/or to oppose the use of any Discovery Material, as defined below, in any such arbitration) of Allocation, the EMEA Claims, and the UK Pension Claims in the US and/or Canadian Court (collectively the "Proceedings"), notwithstanding anything to the contrary previously agreed to or ordered by the United States Bankruptcy Court for the District of Delaware (the "US Court") or the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" and, together with the US Court, the "Courts"), and subject to approval by both Courts.

(b)    This Protective Order shall govern the Proceedings with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information produced, given or disclosed by any Party or any non-parties (in each case, a "Producing Party") to any other Party or non-party receiving or viewing such materials(in each case, "Receiving Party"), including through access to a shared dataroom (all such materials and the substance of such materials, hereinafter referred to as "Discovery Material").

2. **Highly Confidential Discovery Material.**

(a)    Any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that "Highly Confidential" documents and information shall not include:

    (i)     information that is publicly available in substantially the same form in which it was provided;

    (ii)    information that was, is or becomes public knowledge, not in violation of this Protective Order;

    (iii)   information that is voluntarily de-designated by the Producing Party;

    (iv)    information that a Court order has de-designated;

    (v)     information rightfully acquired from an independent source without restrictions as to use; or

---

[1]    Capitalized terms not defined herein shall have the meaning given in the Allocation Protocol.

(vi)    information that is at any time independently developed by a Party without use of or reliance upon any Discovery Material.

(b)    Subject to these conditions and limitations, any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i)    personal information that requires the protections provided in this Protective Order, including, but not limited to, social security numbers, information about current or former employee compensation and/or benefits, health information and financial information;

(ii)    information required to be kept confidential pursuant to law or regulation; or

(iii)    information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party;

(all information designated as such, including the document itself as well as the information therein, the "Highly Confidential Discovery Material").

**3.    Confidential Discovery Material.**

(a)    Any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that Confidential information shall not include any documents or information as set forth in Section 2(a)(i)-2(a)(vi) hereof.

(b)    Subject to these conditions and limitations, any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i)    non-public proprietary information about a Party;

(ii)    non-public financial or accounting results or data;

(iii)    tax returns, any tax-related correspondence or agreements with any government, all workpapers, books and records relating to taxes, any tax opinions, records (including accounting records) relating to taxes paid or payable by the parties, all intercompany agreements related to taxes, and all financial and tax records relating to the estate that form part of a parties' general ledger or otherwise constitute accounting records, as well as drafts with respect to any of the foregoing;

(iv)    information subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party; or

2

53

(v)    confidential communications offered in mediation or compromise negotiations, including, but not limited to, Discovery Material bearing a designation that it is subject to Federal Rule of Evidence 408;

(all documents or information designated as such, including the document itself as well as the information therein, the "Confidential Discovery Material").

## 4.    Designation of Documents.

(a)    A Producing Party may designate Discovery Material as Confidential Discovery Material by applying the legend "Confidential" to each page or portion containing any Confidential Discovery Material.

(b)    A Producing Party may designate Discovery Material as Highly Confidential Discovery Material by applying the legend "Highly Confidential" to each page or portion containing any Highly Confidential Discovery Material.

(c)    In the case of electronically produced information, the "Confidential" or "Highly Confidential" legend, if any, shall be printed on the cover or container of the disk, tape, or other medium in which the electronic form data is stored, and the "Confidential" or "Highly Confidential" legend shall be applied, by electronic means to each electronic document or other electronically stored information containing any Confidential or Highly Confidential Discovery Material, unless such electronic materials are produced in native format.  If produced in native format, such materials will be produced without alteration along with a corresponding Bates-numbered slipsheet bearing the "Confidential" or "Highly Confidential" legend.

(d)    The failure to designate a document as "Confidential" or "Highly Confidential" does not constitute a waiver of such claim, and a Producing Party may so designate a document after such document has been produced in accordance with Section 10, with the effect that such document is subject thereafter to the protections of this Protective Order.

(e)    At the request of a Party (the "Requesting Party"), a Producing Party shall designate as Confidential or Highly Confidential Discovery Material containing information of the Requesting Party that the Requesting Party reasonably believes in good faith meets any of the criteria for such designation.  With respect to Discovery Material designated as Confidential or Highly Confidential Discovery Material pursuant to request, the Requesting Party shall thereafter be deemed a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order.  The costs of providing new copies of such re-designated documents to each Receiving Party and/or a shared dataroom shall be borne by the Requesting Party, and the "Confidential" or "Highly Confidential" legend on such copies must clearly indicate the Party who requested the designation.

(f)    A Party may designate as Confidential or Highly Confidential Discovery Material produced by another Party pursuant to subsection (e), even if such Discovery Material has already been designated as Confidential or Highly Confidential.  If more than one Party designates the same Discovery Material as Confidential or Highly Confidential, all such Parties shall be considered a Producing Party with respect to such Discovery Material and be treated as a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order.

3

54

For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

5.    **Treatment of Highly Confidential Information.**

(a)    Any information designated as Highly Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)    Provided that disclosure is not otherwise prohibited by this Protective Order, and subject to Section 7(d), a Receiving Party shall only disclose Highly Confidential Discovery Material to:

(i)    current employees, officers and directors of a Receiving Party who previously had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material;

(ii)    former employees of a Receiving Party who are currently retained by that Party as consultants or independent contractors who during their employment with the Receiving Party had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material provided that they comply with the requirements of Section 13 hereof;

(iii)    court-appointed Monitors, Trustees and Administrators and their respective staffs, and for the US Debtors, the employees of RLKS Executive Solutions LLC and the employees of Avidity Partners, LLC;

(iv)    outside or in-house counsel for the Parties or outside or in-house counsel for members of a committee or group (where a Party is a committee or group), and legal assistants, secretaries, staff or agents and consultants working with or for such counsel, but only to the extent that it is reasonably necessary to share Highly Confidential Discovery Material;

(v)    litigation support personnel, including outside copying, scanning and coding services and court reporters;

(vi)    persons expected to be deponents, trial witnesses or hearing witnesses in the Proceedings and counsel to such persons, provided that counsel providing the Highly Confidential Discovery Material has a good-faith basis for believing that such witnesses had prior, rightful access to or knowledge of the Highly Confidential Discovery Material, and provided that counsel ascertain as soon as practicable whether such witnesses had such access or knowledge, and provided that upon the first indication that such witnesses did not have such access or knowledge, counsel must immediately refrain from any further disclosure to such witnesses and procure the return or destruction of such Highly Confidential Discovery Material;

4

(vii)    witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and/or party representatives designated for discovery examination pursuant to the Ontario Rule of Civil Procedure and/or alternative procedures agreed to by the Parties;

(viii)    any experts retained for the purpose of providing advice and assistance to outside counsel of record and/or giving evidence in the Proceedings, including their staff, provided that they comply with the requirements of Section 13 hereof;

(ix)    personnel of the Courts;

(x)    any other person upon written agreement of the Producing Party, provided that he or she complies with the requirements of Section 13 hereof;

(xi)    any other person upon order of the Court(s) and upon such conditions as may be imposed by the Court(s); and

(xii)    any other person, as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, subject to Section 9 of this Protective Order.

(c)    In addition to the foregoing, draft or final pleadings that cite to or quote Highly Confidential Discovery Material (but not any attachments thereto designated as Highly Confidential) may be shared with non-attorney representatives from each Party (or, where the Party is a committee or group, non-attorney representatives of each committee or group, who represent such member or group in committee or group matters), provided that they comply with the requirements of Section 13 hereof, but only to the extent that sharing such draft or final pleadings that cite to or quote Highly Confidential Discovery Material is necessary to render advice to or receive guidance or approval from the Party in the Proceedings.

(d)    Any Receiving Party may request leave of a Producing Party to show Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses in the Proceedings by providing notice to the Producing Party of the Highly Confidential Discovery Material the Receiving Party seeks to use and the parties shall use their best efforts within five business days to determine whether such material may be disclosed by the Receiving Party to such persons while protecting the Producing Party's need for confidentiality, including, but not limited to, considering whether portions of such material can be redacted and re-evaluating whether such material must be protected as Highly Confidential.  In the event the Producing Party and the Receiving Party cannot resolve an issue concerning the use of Highly Confidential Discovery Material, the matter may be presented to the Courts for resolution on an expedited basis.

(e)    Persons receiving Highly Confidential Discovery Material pursuant to this Section shall not copy or disclose such Highly Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

[NEWYORK 2716802_20]

56

(f)    Treatment of Highly Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

## 6.    Treatment of Confidential Information.

(a)    Any information designated as Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)    Provided that disclosure is not otherwise prohibited by this Protective Order and subject to Section 7(d), a Receiving Party shall only disclose Confidential Discovery Material to:

(i)    parties or persons to whom Highly Confidential Discovery Material may be disclosed as set forth in Section 5;

(ii)    current employees, officers, or directors of a Receiving Party (including current employees, officers or directors of members of a committee or group that is a Party provided that they comply with the requirements of Section 13 hereof), provided that disclosure is reasonably necessary to the Proceedings;

(iii)    former employees of a Receiving Party, provided that disclosure is reasonably necessary to the Proceedings and that they comply with the requirements of Section 13 hereof; or

(iv)    persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons.

(c)    Persons receiving Confidential Discovery Material pursuant to this Section shall not copy or disclose such Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(d)    Treatment of Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

## 7.    Permitted Purposes.

(a)    Confidential or Highly Confidential Discovery Material shall not be made public by any Party, shall be used only by persons permitted access to it per this Protective Order and shall be disclosed only to persons specified in this Protective Order.

(b)    All Discovery Material (except such materials publicly available in substantially the same form), whether or not designated as Confidential or Highly Confidential Discovery Material, shall be used by Receiving Parties solely in connection with the Proceedings (including appeals), and not in connection with any other litigation, judicial or regulatory proceeding or for any business, commercial, competitive, personal or other purpose except as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory

6

57

authority or court order, provided, however, that this Protective Order shall not prohibit the UK Pension Claimants from complying with the Beddoe proceeding pending under U.K. law in the English High Court by disclosing Discovery Material to the Beddoe court and counsel (including barristers and solicitors) for the representative beneficiary in those proceedings (provided that such counsel is informed of the terms of this Protective Order and the UK Pension Claimants make a good faith effort to have such counsel comply with the requirements of Section 13) for purposes of obtaining periodic directions from the Beddoe court with respect to the Proceedings, provided that the Discovery Material is filed under seal and not available as a matter of public record.

(c)     Any summary, compilation, notes, memoranda, analysis or copy containing Confidential or Highly Confidential Discovery Material, and any electronic image or database containing Confidential or Highly Confidential Discovery Material shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, memoranda, analysis, copy, electronic image or database is derived.

(d)     This Protective Order has no effect upon, and shall not apply to, a Party's use of its own Confidential or Highly Confidential Discovery Material, including information designated as such under Section 4(e) and information that was, prior to disclosure, rightfully in the possession or knowledge of the Party, for any purpose.

(e)     This Protective Order shall not preclude any Party from showing any Confidential or Highly Confidential Discovery Material or disclosing information derived therefrom at a deposition or examination for discovery to any witness, provided that, other than the witness, only those persons who are authorized by the terms of this Agreement to receive the Confidential or Highly Confidential Discovery Material to be disclosed to the witness are present at relevant portions of the deposition and the procedures provided for in Section 12 are in place.

**8.     Court Filings.**

(a)     Confidential or Highly Confidential Discovery Material shall not be filed in the public record absent the consent of the Producing Party or an order of the Court(s) so permitting.

(b)     If a Party wishes to file or otherwise submit to the Court(s) any documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material, including, but not limited to, pleadings, memoranda, transcripts, and discovery responses, such Party may redact the Confidential or Highly Confidential Discovery Material. If the nature of the Highly Confidential Information makes redaction unreasonable or impossible, the Party may file the documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material under seal.

(c)     The entry of this Protective Order by the Courts shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any further order of either Court required.

7

[NEWYORK 2716802_20]

*58*

(d)    The Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing. The Parties reserve all rights with respect to trial procedures.

**9.    Compelled Disclosure.**

(a)    If a Receiving Party is subpoenaed in another action or proceeding, served with a document demand, or otherwise required or compelled by law, regulation, government action or other process (any of the foregoing, a "Demand") to produce Confidential or Highly Confidential Discovery Material, the Receiving Party shall, if legally permitted, (i) give prompt written notice by overnight delivery, fax or email the earlier of five (5) business days of receipt, or fourteen (14) days prior to the response date of such Demand to counsel for the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material, provided, however, that such notice shall be given as soon as practicable if the response date of the demand is within fourteen (14) business days of receipt by the Receiving Party; and (ii) refrain from producing any Confidential or Highly Confidential Discovery Material in response to such Demand until the earlier of receipt of written notice from the Producing Party that it does not object to production of the Confidential or Highly Discovery Material, or resolution of any objection asserted by the Producing Party either by agreement or by final order of the Court(s) with jurisdiction over the objection of the Producing Party.

(b)    The burden of opposing the enforcement of the Demand shall fall solely upon the Producing Party.

(c)    Should a Producing Party neither provide written notice to the Receiving Party that it does not object to production of the Confidential or Highly Discovery Material nor submit a timely objection seeking an order that the Demand not be complied with and serve such objection upon the Receiving Party prior to production pursuant to the Demand, the Receiving Party shall be permitted to produce documents responsive to the Demand on the Demand's response date.

(d)    Subject to the provisions of this Section, compliance by the Receiving Party with any order directing production pursuant to a Demand of any Confidential or Highly Confidential Discovery Material shall not constitute a violation of this Protective Order.

(e)    Nothing herein shall be construed as requiring the Receiving Party or anyone else covered by this Protective Order to challenge or appeal any order directing production of Confidential or Highly Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order.

(f)    The provisions of this Section shall apply to examinations conducted by bank or other regulators to which a Party may be subject, which may include examinations of Confidential or Highly Confidential Discovery Material received by any Party and its representatives. Any such disclosure shall be limited to such portions of the Confidential or Highly Confidential Discovery Material that the applicable Party's legal counsel advises is required under the subpoena, order or process, or request or demand by a regulatory authority,

8

59

organization of regulators or self-regulatory authority received by that Party (each a "Regulator Demand"). With respect to Regulator Demands for Confidential or Highly Confidential Discovery Material, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of any such Regulator Demand before the disclosure of such Confidential or Highly Confidential Discovery Material to such regulator, if the applicable Party is entitled to do so and if practicable. Otherwise, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of such Regulator Demand after the disclosure of any Confidential Information to regulator, if the applicable Party is entitled to do so. Nothing herein shall obligate any Party to prohibit or restrict any regulator's prompt access, in violation of any law, regulation, order or other obligation applicable to such Party, to documents or information in the custody, possession or control of such Party its representatives.

**10.    No Waiver.**

(a)    If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced should be designated as Confidential or Highly Confidential, the Producing Party may apprise the Receiving Parties in writing, and such designated Discovery Material will thereafter be treated as Confidential or Highly Confidential Discovery Material under the terms of this Protective Order, provided, however, that the Producing Party shall, at its cost, produce to each Receiving Party and/or to the shared dataroom substitute copies, bearing the legend "Confidential" or "Highly Confidential," of any such Discovery Material at which time the Receiving Party shall promptly return to the Producing Party or (at the election of the Receiving Party) destroy the previously produced copies of such substituted Discovery Material and shall have no right to access such substituted Discovery Material electronically.

(b)    This Protective Order shall not prevent any Party from applying to the Court(s) in writing and on notice to the Parties for relief from this Protective Order or from any provision(s) thereof, or from applying to the Court(s) in writing and on notice to the Parties for further or additional protective orders.

(c)    Producing or receiving Confidential or Highly Confidential Discovery Material or otherwise complying with the terms of this Protective Order shall not:

> (i)    prejudice in any way a Producing Party's rights to object to the authenticity or admissibility into evidence of any testimony or other evidence;

> (ii)    prejudice in any way the rights of the Parties to object to the production of documents that they consider not subject to discovery, or operate as an admission by any Party in the context of any other litigation or proceeding that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;

> (iii)    prejudice in any way the rights of a Party to seek a determination by the Court(s) whether any Discovery Material should be treated as Confidential

9



or Highly Confidential Discovery Material or subject to the terms of this Protective Order, provided that a Party seeking to challenge the designation of any Discovery Material as Confidential or Highly Confidential shall be obligated to meet and confer in good faith prior to seeking judicial resolution and follow the procedures provided in Section 11; or

(iv)     prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided herein with respect to any particular Discovery Material.

## 11.     Objections to Designation.

(a)     Any Party objecting to the designation of any particular Discovery Material or testimony as Confidential or Highly Confidential Discovery Material shall so inform the Producing Party, stating the grounds of the objection, and, unless provided otherwise by the discovery plan adopted by the Courts, they shall have seven (7) business days to attempt to resolve the objection, at the end of which the Party objecting to the designation may seek a ruling from the Court(s), on no less than three (3) business days' notice to the Producing Party, that such information should not be treated as Confidential or Highly Confidential Discovery Material, provided that no Confidential or Highly Confidential Discovery Material shall be filed in the public record or disclosed other than in accordance with the terms of this Protective Order prior to such a determination by the Court(s), and provided further that the burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure.

(b)     Each Party hereby agrees that it will not contest a Party's request for expedited consideration of any relief sought from the Court(s) pursuant to this Section.

## 12.     Use in Depositions / Examinations for Discovery.

(a)     If Confidential or Highly Confidential Discovery Material is utilized in a deposition, including a deposition of a party representative, examination for discovery or other recorded testimony, the Producing Party of the Confidential or Highly Confidential Discovery Material may designate the portion of the transcript relating to the Confidential or Highly Confidential Discovery Material as Confidential or Highly Confidential.

(b)     Any deponent or examinee for discovery or his or her counsel may designate all or part of the transcript of a deposition or examination for discovery as Highly Confidential or Confidential.  Such deponent or examinee will be the Producing Party of the deposition or examination testimony for purposes of this Protective Order, except that testimony about Confidential or Highly Confidential Discovery Material for which the deponent or examinee is not a Producing Party shall also be deemed to have been produced by the Producing Party of the Confidential or Highly Confidential Discovery Material discussed.

(c)     Designation of all or part of a transcript as Highly Confidential or Confidential may be made on the record during the deposition or examination or may be made by giving written notice to the court reporter and counsel for all Parties within seven (7) business days after

10

61

receiving the transcript from the court reporter. All deposition or examination transcripts will be considered Confidential for the first seven (7) business days after receiving the transcript from the court reporter, unless designated otherwise by agreement of the Parties, by the Producing Party of Confidential or Highly Confidential Discovery Material discussed therein and/or by the deponent or examinee, as the case may be.

(d)    The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition.

**13.    Disclosure to Certain Firms and Individuals.**

(a)    Prior to disclosure of Confidential or Highly Confidential Discovery Material pursuant to Sections 5(b)(ii), (viii) and (x) (including as incorporated by reference in Section 6(b)(i) hereof); 5(c) and 6(b)(ii) and (iii) hereof, counsel for the Receiving Party shall provide a copy of this Protective Order to the person or the representative of the firm to whom disclosure is intended and such person or representative must execute a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

(b)    A Receiving Party shall not disclose any Confidential or Highly Confidential Discovery Material to any holder of, or the investment manager for holders of, debt securities issued and/or guaranteed by the Canadian Debtors, EMEA Debtors or US Debtors, or to any officers, employees, counsel, accountants, advisors or agents of the Receiving Party that might be involved in acquiring any assets of or trading in claims against (including debt securities issued by any of) the Canadian Debtors, EMEA Debtors or US Debtors, unless such person or the representative of the person or firm to whom disclosure is intended executes a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

**14.    Third-Party Beneficiaries.**

Third parties that produce documents for use in the Proceedings, either voluntarily or pursuant to a subpoena or in response to discovery requests in connection with the Proceedings, are intended third-party beneficiaries of this Protective Order and shall have the right to designate materials as Confidential or Highly Confidential Discovery Material in accordance with the terms hereof and shall otherwise have the same rights and responsibilities as a Producing Party.

**15.    Redaction of Personal Information.**

(a)    Each Producing Party may redact from Discovery Material it produces, whether or not such Discovery Material are designated Confidential or Highly Confidential, such personal information (e.g., social security numbers, home addresses, bank account information) as the Producing Party deems appropriate, such as information required not to be disclosed by the data protection, privacy or similar laws of the Producing Party's jurisdiction.

(b)    If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced contains personal information to which a non-disclosure

11

62

obligation applies, the Producing Party may apprise the Receiving Parties in writing. Promptly after receiving written notice of an inadvertent production of personal information, each Receiving Party shall return to the Producing Party or (at the election of the Receiving Party) destroy the Discovery Material as to which the claim of inadvertent production has been made and shall not use the inadvertently produced personal information for any purpose. The Producing Party shall, at its cost, provide each Receiving Party and/or the shared dataroom with substitute copies, bearing appropriate redactions, of any such Discovery Material.

(c)     Each Receiving Party retains the right to move for the disclosure of the redacted information.

## 16.    Survival.

(a)     The provisions of this Protective Order shall, absent written permission of the Producing Party or further order of the Court(s), continue to be binding throughout and after the conclusion of the Proceedings, including without limitation any appeals therefrom.

(b)     When any Party receives a notice from a court as to the release, unsealing or disposal of Confidential or Highly Confidential Discovery Material submitted by that Party, but designated Confidential or Highly Confidential by another Producing Party, the Party receiving the notice shall promptly send the notice to all Parties by overnight delivery, fax or email, so as to enable the Parties to take any actions they deem appropriate. The provisions of this Section may be waived only with the written consent of the Producing Party.

## 17.    Disposal of Confidential and Highly Confidential Discovery Material.

(a)     Within thirty (30) days after the time for appeal of an order, judgment, or decree finally disposing of or resolving the Proceedings has expired, all persons having received Confidential or Highly Confidential Discovery Material shall, at their own cost and expense, either return such material and all copies thereof (including summaries and excerpts) to counsel for the Producing Parties or (at the election of the Receiving Party) destroy all such Confidential or Highly Confidential Discovery Material and certify that fact to the Producing Parties. Documents that have been received electronically must be electronically deleted and deleted from "trash" files; provided, however, that to the extent that Confidential or Highly Confidential Discovery Material exists in whole or in part on computer backup tapes or other not readily accessible media used for disaster recovery purposes, information from such media does not need to be restored for purposes of destroying or returning Confidential or Highly Confidential Discovery Material, but such retained information shall continue to be treated in accordance with this Protective Order.

(b)     Notwithstanding the preceding paragraph, outside counsel for the Parties shall be entitled to retain court papers, deposition and court transcripts, and attorney work product that includes or summarizes Confidential Discovery Material or Highly Confidential Discovery Material provided that such outside counsel, and employees of such outside counsel, shall not disclose such court papers, deposition or trial transcripts, or attorney work product to any person except pursuant to court order or agreement with the Producing Party as to the Confidential Discovery Material or Highly Confidential Discovery Material at issue.

12

(c)     Notwithstanding anything herein to the contrary, the obligations of this Section shall not preclude any Party or its experts or consultants from complying with document retention policies imposed by applicable law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, provided that the Party, expert or consultant provides notice of its retention of the documents to the Producing Party.

**18.     Privileged Documents.**

(a)     Nothing in this Protective Order shall require disclosure of information that counsel contends is protected from disclosure by solicitor-client privilege, attorney-client privilege, work-product immunity, or any other applicable privilege, immunity or protection from disclosure under any applicable law (each a "Privilege" and, collectively, the "Privileges").

(b)     Consistent with Rule 502(d) of the United States Federal Rules of Evidence, if information subject to a claim of Privilege is produced, such production shall not constitute or be deemed a waiver of any claim of a Privilege that the Producing Party would otherwise be entitled to assert in the Proceedings or any other proceeding, either with respect to the produced Discovery Material or any other documents, communications, or information concerning the same subject matter. The production of information subject to a claim of Privilege is without prejudice to the right of a Producing Party to seek the return or destruction of any document as to which a claim of Privilege is later asserted.

(c)     If information subject to a claim of Privilege is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of a Privilege for such information or any other information that may be protected from disclosure by Privilege. If a Party has inadvertently or mistakenly produced a document or information that is subject to a good faith claim of Privilege, upon request by the Producing Party promptly after discovery of such inadvertent or mistaken production, the document for which a claim of inadvertent production is made shall be returned within three (3) business days of such request and all copies of that document that may have been made shall be destroyed to the extent reasonably practicable, and the Receiving Party shall not use such information for any purpose.

(d)     The Party returning such material may then file under seal a motion for an order compelling production of the material, but such motion shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent production, and such motion shall not quote from or attach such material. While the motion for an order compelling production is pending before the Court(s), the moving Party shall not maintain a copy of, quote from or otherwise use the material.

(e)     No public disclosure of the contents of the Discovery Material as to which the claim of Privilege has been made shall occur absent order of the Court(s).

(f)     If, at trial, at a hearing, at a deposition, at an examination for discovery or on a motion, a Producing Party marks for identification or offers into evidence information subject to a claim of Privilege by the Producing Party, or proffers or elicits testimonial or other evidence that incorporates or relies on information subject to a claim of Privilege, that act shall be deemed

13

64

to effect a waiver and forfeiture by the Producing Party of Privilege. The preceding sentence shall not apply to (1) proceedings to determine whether the information is subject to a claim of Privilege, or (2) information subject to a claim of Privilege that is marked for identification, offered into evidence, or incorporated in evidence proffered or elicited by a Party other than the Producing Party, or relied on by a witness proffered by a Party other than the Producing Party. By marking for identification or offering into evidence information subject to a claim of Privilege, the Producing Party shall not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter.

(g)    If information is subject to a claim of privilege ("Joint Privileged Information"), which appears on its face to be held by two or more Parties ("Joint Privilege"), a Party who claims the Joint Privilege shall not refuse to produce any such Joint Privileged Information to any other Party or Parties with whom the Joint Privilege is shared. A Party who holds the Joint Privilege may produce Joint Privileged Information only to those other Parties with whom it shares the Joint Privilege and shall not produce such Joint Privileged Information to Parties that do not share in the Joint Privilege or to a shared dataroom. If a Party who wishes to rely on Discovery Material containing Joint Privileged Information, such Party shall, without prejudice to its position on the claim of privilege, provide notice to the other Parties with whom it shares the Joint Privilege and such other Parties shall have seven days after receiving notice to seek a protective order from the Court(s) in writing and on notice to the Parties. Absent an order from the Court(s) granting such protective order, the Party seeking to rely on Discovery Material containing Joint Privileged Information shall designate such Discovery Material as "Highly Confidential" and produce it to the other Parties and/or to a shared dataroom. Disclosure to a shared dataroom or to persons permitted to view Highly Confidential Discovery Material under this Protective Order does not effect a waiver of privilege as to Parties other than the Producing Party subject to the foregoing sections. The production of such Discovery Material containing Joint Privileged Information does not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter as the Joint Privileged Information.

19.    **Effective Date and Enforceability.**

(a)    This Protective Order will become effective upon the date that it has been approved by both Courts (the "Effective Date").

(b)    Nothing in this Protective Order shall preclude any Party from seeking judicial relief, upon notice to the other Parties, with regard to any provision hereof.

(c)    No amendment or modification of this Protective Order shall be binding or enforceable unless in writing and signed by the Parties, or ordered by the Courts.

20.    **Allocation Dataroom Access**

(a)    Upon the Effective Date, all documents ("Allocation Dataroom Documents") in the electronic data site established to facilitate settlement discussions (the "Allocation Dataroom") shall be deemed produced in the Proceedings pursuant to this Protective Order, and subject to its terms, including but not limited to the provisions of Section 18.

14



(b)     From and after the Effective Date, this Protective Order shall govern and shall supersede the provisions in prior confidentiality agreements with respect to Allocation Dataroom Documents, but only as to the Parties and any other persons or entities who are entitled to receive documents under this Protective Order (subject to any requirements herein, including, but not limited to, Section 13).

(c)     The Parties shall have twenty-one (21) days following the Effective Date to designate documents in the Allocation Dataroom as Highly Confidential Discovery Material. Any Party making such designation will be required to provide new documents with the Highly Confidential legend to replace existing or to otherwise bear the cost of the designation of such documents. Until such period expires, all Parties with access to the Allocation Dataroom will treat documents therein as Highly Confidential Discovery Material.

(d)     After the expiration of the 21-day period, a Party shall have the right at any time to designate such documents in the Allocation Dataroom as Highly Confidential in accordance with paragraph 10(a). Such documents will thereafter be treated as if they had been designated as Highly Confidential in the 21-day period after the Effective Date.

(e)     Notwithstanding anything to the contrary herein, all documents in the Allocation Dataroom shall be deemed Confidential upon the Effective Date and will be electronically stamped with the Confidential legend. Where it is evident from the Bates Stamp which Party supplied the document to the Allocation Dataroom, that Party will be deemed the Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. Absent such evidence, the document will be deemed produced by the US Debtors, Canadian Debtors and EMEA Debtors and all such Parties shall each be considered a Producing Party with respect to such documents and be treated as a Producing Party for purposes of Subsection (f) *infra*, and Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

(f)     In the event any Party objects to the designation of specifically identified documents from the Allocation Dataroom, the Producing Party shall reconsider such designation and, within ten (10) days, either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material.

21.    **Intentional or Negligent Disclosure of Confidential or Highly Confidential Discovery Material.**

In the event of an alleged intentional or negligent disclosure of Highly Confidential Discovery Material or Confidential Discovery Material in violation of this Protective Order, the Parties shall first seek to resolve the alleged violation through prompt and reasonable discussion. In the event such efforts fail to promptly resolve the alleged violation, the Parties reserve the right to seek any available remedy from the Courts, including, *inter alia*, money damages, injunctive relief or any other relief as appropriate.

[NEWYORK 2716802_20]

66

**22.    Enforcement Pending Entry.**

The Parties agree to be bound by the terms of this Protective Order pending the entry of this Protective Order by the Courts, and any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order has been issued and entered by the Courts.

**23.    Jurisdiction.**

The US Court and the Canadian Court shall retain jurisdiction and venue for the purposes of any dispute arising out of or relating to this Protective Order.  For the avoidance of doubt, the Parties' obligations remain ongoing, and such jurisdiction and venue is retained even to the extent this Protective Order is utilized in connection with any arbitration proceeding.

16

67

**EXHIBIT A**

I, _____, declare under penalty of perjury, the

following:

I reside at _____ in the City of

_____ and State/Province of _____;

I have read the annexed Protective Order dated _____, 2013;

I am fully familiar with and agree to comply with and be bound by the provisions of that

Protective Order and consent and attorn to the jurisdiction of the United States Bankruptcy Court

for the District of Delaware and the Ontario Superior Court of Justice solely for the purpose of

enforcement of the provisions of the Confidentiality Protective Order and Protective Order. I

will not divulge any Discovery Material to persons other than those specifically authorized by

the Protective Order, and will take reasonable steps, including, but not limited to, establishing

information firewalls, to prevent the inadvertent disclosure of Discovery Material to any persons

not so authorized. I understand, in particular, that any Confidential or Highly Confidential

Discovery Material, and any copies, excerpts or summaries thereof, or materials containing

Confidential or Highly Confidential Discovery Material derived therefrom, as well as any

knowledge or information derived from any of these items, may be used only for the Proceedings

and may not be used to inform the purchase or sale of securities or for any other purpose,

including, without limitation, any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order may

result in legal action against me, such as for contempt of court or liability for monetary damages.

Dated: _____        Signature: _____

[NEWYORK 2716802_20]

68

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

ORDER
(Interim Protective Order)

**Goodmans LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON   M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Benjamin Zarnett (LSUC#: 17247M)
Fred Myers (LSUC#: 26301A)
Joseph Pasquariello (LSUC#: 38390C)
Christopher Armstrong (LSUC#: 55148B)
Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

TOR_LAW\ 8171398\3

# TAB F

69

**THIS IS EXHIBIT "F" REFERRED TO**
**IN THE AFFIDAVIT OF KRISTIAN BORG-OLIVIER**
**SWORN BEFORE ME THIS 5th DAY**
**OF JUNE, 2013**

_____

**A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.**

70

## PROTECTIVE ORDER

1.     **Application of this Protective Order.**

(a)     This Protective Order (the "Protective Order") shall govern the participation of any person, entity or group, including, but not limited to, the Canadian Debtors,[1] EMEA Debtors, US Debtors, Committee, Bondholder Group, Monitor, Joint Administrators, CCC, Indenture Trustees, UK Pension Claimants, and Officers and Directors  (the "Parties" and each a "Party") and the Parties' counsel (and, where a Party is a committee or group, counsel to each member), in discovery undertaken in connection with the litigation or arbitration (subject to any Party's right to oppose any request for arbitration on any grounds and/or to oppose the use of any Discovery Material, as defined below, in any such arbitration) of Allocation, the EMEA Claims, and the UK Pension Claims in the US and/or Canadian Court (collectively the "Proceedings"), notwithstanding anything to the contrary previously agreed to or ordered by the United States Bankruptcy Court for the District of Delaware (the "US Court") or the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" and, together with the US Court, the "Courts"), and subject to approval by both Courts.

(b)     This Protective Order shall govern the Proceedings with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information produced, given or disclosed by any Party or any non-parties (in each case, a "Producing Party") to any other Party or non-party receiving or viewing such materials(in each case, "Receiving Party"), including through access to a shared dataroom (all such materials and the substance of such materials, hereinafter referred to as "Discovery Material").

2.     **Highly Confidential Discovery Material.**

(a)     Any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that "Highly Confidential" documents and information shall not include:

(i)     information that is publicly available in substantially the same form in which it was provided;

(ii)     information that was, is or becomes public knowledge, not in violation of this Protective Order;

(iii)     information that is voluntarily de-designated by the Producing Party;

(iv)     information that a Court order has de-designated;

(v)     information rightfully acquired from an independent source without restrictions as to use; or

---

[1]     Capitalized terms not defined herein shall have the meaning given in the Allocation Protocol.

TOR_LAW\ 8173441\1

(vi)    information that is at any time independently developed by a Party without use of or reliance upon any Discovery Material.

(b)    Subject to these conditions and limitations, any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i)    personal information that requires the protections provided in this Protective Order, including, but not limited to, social security numbers, information about current or former employee compensation and/or benefits, health information and financial information;

(ii)    information required to be kept confidential pursuant to law or regulation; or

(iii)    information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party;

(all information designated as such, including the document itself as well as the information therein, the "Highly Confidential Discovery Material").

## 3.    Confidential Discovery Material.

(a)    Any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that Confidential information shall not include any documents or information as set forth in Section 2(a) hereof.

(b)    Subject to these conditions and limitations, any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i)    non-public proprietary information about a Party;

(ii)    non-public financial or accounting results or data;

(iii)    tax returns, any tax-related correspondence or agreements with any government, all workpapers, books and records relating to taxes, any tax opinions, records (including accounting records) relating to taxes paid or payable by the parties, all intercompany agreements related to taxes, and all financial and tax records relating to the estate that form part of a parties' general ledger or otherwise constitute accounting records, as well as drafts with respect to any of the foregoing;

(iv)    information subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party; or

TOR_LAW\8173441\1

72

       (v)    confidential communications offered in mediation or compromise negotiations, including, but not limited to, Discovery Material bearing a designation that it is subject to Federal Rule of Evidence 408;

(all documents or information designated as such, including the document itself as well as the information therein, the "Confidential Discovery Material").

**4.**    **Designation of Documents.**

       (a)    A Producing Party may designate Discovery Material as Confidential Discovery Material by applying the legend "Confidential" to each page or portion containing any Confidential Discovery Material.

       (b)    A Producing Party may designate Discovery Material as Highly Confidential Discovery Material by applying the legend "Highly Confidential" to each page or portion containing any Highly Confidential Discovery Material.

       (c)    In the case of electronically produced information, the "Confidential" or "Highly Confidential" legend, if any, shall be printed on the cover or container of the disk, tape, or other medium in which the electronic form data is stored, and the "Confidential" or "Highly Confidential" legend shall be applied, by electronic means to each electronic document or other electronically stored information containing any Confidential or Highly Confidential Discovery Material, unless such electronic materials are produced in native format. If produced in native format, such materials will be produced without alteration along with a corresponding Bates-numbered slipsheet bearing the "Confidential" or "Highly Confidential" legend.

       (d)    The failure to designate a document as "Confidential" or "Highly Confidential" does not constitute a waiver of such claim, and a Producing Party may so designate a document after such document has been produced in accordance with Section 10, with the effect that such document is subject thereafter to the protections of this Protective Order.

       (e)    At the request of a Party (the "Requesting Party"), a Producing Party shall designate as Confidential or Highly Confidential Discovery Material containing information of the Requesting Party that the Requesting Party reasonably believes in good faith meets any of the criteria for such designation. With respect to Discovery Material designated as Confidential or Highly Confidential Discovery Material pursuant to request, the Requesting Party shall thereafter be deemed a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. The costs of providing new copies of such re-designated documents to each Receiving Party and/or a shared dataroom shall be borne by the Requesting Party, and the "Confidential" or "Highly Confidential" legend on such copies must clearly indicate the Party who requested the designation.

       (f)    A Party may designate as Confidential or Highly Confidential Discovery Material produced by another Party pursuant to subsection (e), even if such Discovery Material has already been designated as Confidential or Highly Confidential. If more than one Party designates the same Discovery Material as Confidential or Highly Confidential, all such Parties shall be considered a Producing Party with respect to such Discovery Material and be treated as a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order.

73

For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

**5.    Treatment of Highly Confidential Information.**

(a)    Any information designated as Highly Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)    Provided that disclosure is not otherwise prohibited by this Protective Order, and subject to Section 7(d), a Receiving Party shall only disclose Highly Confidential Discovery Material to:

(i)    current employees, officers and directors of a Receiving Party who previously had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material;

(ii)    former employees of a Receiving Party who are currently retained by that Party as consultants or independent contractors who during their employment with the Receiving Party had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material provided that they comply with the requirements of Section 13 hereof;

(iii)    court-appointed Monitors, Trustees and Administrators and their respective staffs, and for the US Debtors, the employees of RLKS Executive Solutions LLC and the employees of Avidity Partners, LLC;

(iv)    outside or in-house counsel for the Parties or outside or in-house counsel for members of a committee or group (where a Party is a committee or group), and legal assistants, secretaries, staff or agents and consultants working with or for such counsel, but only to the extent that it is reasonably necessary to share Highly Confidential Discovery Material;

(v)    litigation support personnel, including outside copying, scanning and coding services and court reporters;

(vi)    persons expected to be deponents, trial witnesses or hearing witnesses in the Proceedings and counsel to such persons, provided that counsel providing the Highly Confidential Discovery Material has a good-faith basis for believing that such witnesses had prior, rightful access to or knowledge of the Highly Confidential Discovery Material, and provided that counsel ascertain as soon as practicable whether such witnesses had such access or knowledge, and provided that upon the first indication that such witnesses did not have such access or knowledge, counsel must immediately refrain from any further disclosure to such witnesses and procure the return or destruction of such Highly Confidential Discovery Material;

4

74

(vii)    witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and/or party representatives designated for discovery examination pursuant to the Ontario Rule of Civil Procedure and/or alternative procedures agreed to by the Parties;

(viii)    any experts retained for the purpose of providing advice and assistance to outside counsel of record and/or giving evidence in the Proceedings, including their staff, provided that they comply with the requirements of Section 13 hereof;

(ix)    personnel of the Courts;

(x)    any other person upon written agreement of the Producing Party, provided that he or she complies with the requirements of Section 13 hereof;

(xi)    any other person upon order of the Court(s) and upon such conditions as may be imposed by the Court(s); and

(xii)    any other person, as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, subject to Section 9 of this Protective Order.

(c)    In addition to the foregoing, draft or final pleadings that cite to or quote Highly Confidential Discovery Material (but not any attachments thereto designated as Highly Confidential) may be shared with non-attorney representatives from each Party (or, where the Party is a committee or group, non-attorney representatives of each committee or group, who represent such member or group in committee or group matters), provided that they comply with the requirements of Section 13 hereof, but only to the extent that sharing such draft or final pleadings that cite to or quote Highly Confidential Discovery Material is necessary to render advice to or receive guidance or approval from the Party in the Proceedings.

(d)    Any Receiving Party may request leave of a Producing Party to show Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses in the Proceedings by providing notice to the Producing Party of the Highly Confidential Discovery Material the Receiving Party seeks to use and the parties shall use their best efforts within five business days to determine whether such material may be disclosed by the Receiving Party to such persons while protecting the Producing Party's need for confidentiality, including, but not limited to, considering whether portions of such material can be redacted and re-evaluating whether such material must be protected as Highly Confidential. In the event the Producing Party and the Receiving Party cannot resolve an issue concerning the use of Highly Confidential Discovery Material, the matter may be presented to the Courts for resolution on an expedited basis.

(e)    Persons receiving Highly Confidential Discovery Material pursuant to this Section shall not copy or disclose such Highly Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

TOR_LAW\ 8173441\1

75

(f)     Treatment of Highly Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

**6.     Treatment of Confidential Information.**

(a)     Any information designated as Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)     Provided that disclosure is not otherwise prohibited by this Protective Order and subject to Section 7(d), a Receiving Party shall only disclose Confidential Discovery Material to:

  (i)     parties or persons to whom Highly Confidential Discovery Material may be disclosed as set forth in Section 5;

  (ii)    current employees, officers, or directors of a Receiving Party (including current employees, officers or directors of members of a committee or group that is a Party provided that they comply with the requirements of Section 13 hereof), provided that disclosure is reasonably necessary to the Proceedings;

  (iii)   former employees of a Receiving Party, provided that disclosure is reasonably necessary to the Proceedings and that they comply with the requirements of Section 13 hereof; or

  (iv)    persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons.

(c)     Persons receiving Confidential Discovery Material pursuant to this Section shall not copy or disclose such Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(d)     Treatment of Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

**7.     Permitted Purposes.**

(a)     Confidential or Highly Confidential Discovery Material shall not be made public by any Party, shall be used only by persons permitted access to it per this Protective Order and shall be disclosed only to persons specified in this Protective Order.

(b)     All Discovery Material (except such materials publicly available in substantially the same form), whether or not designated as Confidential or Highly Confidential Discovery Material, shall be used by Receiving Parties solely in connection with the Proceedings (including appeals), and not in connection with any other litigation, judicial or regulatory proceeding or for any business, commercial, competitive, personal or other purpose except as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory

6

76

authority or court order, provided, however, that this Protective Order shall not prohibit the UK Pension Claimants from complying with the Beddoe proceeding pending under U.K. law in the English High Court by disclosing Discovery Material to the Beddoe court and counsel (including barristers and solicitors) for the representative beneficiary in those proceedings (provided that such counsel is informed of the terms of this Protective Order and the UK Pension Claimants make a good faith effort to have such counsel comply with the requirements of Section 13) for purposes of obtaining periodic directions from the Beddoe court with respect to the Proceedings, provided that the Discovery Material is filed under seal and not available as a matter of public record.

    (c)    Any summary, compilation, notes, memoranda, analysis or copy containing Confidential or Highly Confidential Discovery Material, and any electronic image or database containing Confidential or Highly Confidential Discovery Material shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, memoranda, analysis, copy, electronic image or database is derived.

    (d)    This Protective Order has no effect upon, and shall not apply to, a Party's use of its own Confidential or Highly Confidential Discovery Material, including information designated as such under Section 4(e) and information that was, prior to disclosure, rightfully in the possession or knowledge of the Party, for any purpose.

    (e)    This Protective Order shall not preclude any Party from showing any Confidential or Highly Confidential Discovery Material or disclosing information derived therefrom at a deposition or examination for discovery to any witness, provided that, other than the witness, only those persons who are authorized by the terms of this Agreement to receive the Confidential or Highly Confidential Discovery Material to be disclosed to the witness are present at relevant portions of the deposition and the procedures provided for in Section 12 are in place.

**8.    Court Filings.**

    (a)    Confidential or Highly Confidential Discovery Material shall not be filed in the public record absent the consent of the Producing Party or an order of the Court(s) so permitting.

    (b)    If a Party wishes to file or otherwise submit to the Court(s) any documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material, including, but not limited to, pleadings, memoranda, transcripts, and discovery responses, such Party may redact the Confidential or Highly Confidential Discovery Material. If the nature of the Highly Confidential Information makes redaction unreasonable or impossible, the Party may file the documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material under seal.

    (c)    The entry of this Protective Order by the Courts shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any further order of either Court required.

TOR_LAW\ 8173441\1

(d)    The Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing. The Parties reserve all rights with respect to trial procedures.

**9.    Compelled Disclosure.**

(a)    If a Receiving Party is subpoenaed in another action or proceeding, served with a document demand, or otherwise required or compelled by law, regulation, government action or other process (any of the foregoing, a "Demand") to produce Confidential or Highly Confidential Discovery Material, the Receiving Party shall, if legally permitted, (i) give prompt written notice by overnight delivery, fax or email the earlier of five (5) business days of receipt, or fourteen (14) days prior to the response date of such Demand to counsel for the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material, provided, however, that such notice shall be given as soon as practicable if the response date of the demand is within fourteen (14) business days of receipt by the Receiving Party; and (ii) refrain from producing any Confidential or Highly Confidential Discovery Material in response to such Demand until the earlier of receipt of written notice from the Producing Party that it does not object to production of the Confidential or Highly Discovery Material, or resolution of any objection asserted by the Producing Party either by agreement or by final order of the Court(s) with jurisdiction over the objection of the Producing Party.

(b)    The burden of opposing the enforcement of the Demand shall fall solely upon the Producing Party.

(c)    Should a Producing Party neither provide written notice to the Receiving Party that it does not object to production of the Confidential or Highly Discovery Material nor submit a timely objection seeking an order that the Demand not be complied with and serve such objection upon the Receiving Party prior to production pursuant to the Demand, the Receiving Party shall be permitted to produce documents responsive to the Demand on the Demand's response date.

(d)    Subject to the provisions of this Section, compliance by the Receiving Party with any order directing production pursuant to a Demand of any Confidential or Highly Confidential Discovery Material shall not constitute a violation of this Protective Order.

(e)    Nothing herein shall be construed as requiring the Receiving Party or anyone else covered by this Protective Order to challenge or appeal any order directing production of Confidential or Highly Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order.

(f)    The provisions of this Section shall apply to examinations conducted by bank or other regulators to which a Party may be subject, which may include examinations of Confidential or Highly Confidential Discovery Material received by any Party and its representatives. Any such disclosure shall be limited to such portions of the Confidential or Highly Confidential Discovery Material that the applicable Party's legal counsel advises is required under the subpoena, order or process, or request or demand by a regulatory authority,

8

*78*

organization of regulators or self-regulatory authority received by that Party (each a "Regulator Demand"). With respect to Regulator Demands for Confidential or Highly Confidential Discovery Material, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of any such Regulator Demand before the disclosure of such Confidential or Highly Confidential Discovery Material to such regulator, if the applicable Party is entitled to do so and if practicable. Otherwise, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of such Regulator Demand after the disclosure of any Confidential Information to regulator, if the applicable Party is entitled to do so. Nothing herein shall obligate any Party to prohibit or restrict any regulator's prompt access, in violation of any law, regulation, order or other obligation applicable to such Party, to documents or information in the custody, possession or control of such Party its representatives.

**10.     No Waiver.**

(a)     If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced should be designated as Confidential or Highly Confidential, the Producing Party may apprise the Receiving Parties in writing, and such designated Discovery Material will thereafter be treated as Confidential or Highly Confidential Discovery Material under the terms of this Protective Order, provided, however, that the Producing Party shall, at its cost, produce to each Receiving Party and/or to the shared dataroom substitute copies, bearing the legend "Confidential" or "Highly Confidential," of any such Discovery Material at which time the Receiving Party shall promptly return to the Producing Party or (at the election of the Receiving Party) destroy the previously produced copies of such substituted Discovery Material and shall have no right to access such substituted Discovery Material electronically.

(b)     This Protective Order shall not prevent any Party from applying to the Court(s) in writing and on notice to the Parties for relief from this Protective Order or from any provision(s) thereof, or from applying to the Court(s) in writing and on notice to the Parties for further or additional protective orders.

(c)     Producing or receiving Confidential or Highly Confidential Discovery Material or otherwise complying with the terms of this Protective Order shall not:

(i)     prejudice in any way a Producing Party's rights to object to the authenticity or admissibility into evidence of any testimony or other evidence;

(ii)     prejudice in any way the rights of the Parties to object to the production of documents that they consider not subject to discovery, or operate as an admission by any Party in the context of any other litigation or proceeding that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;

(iii)     prejudice in any way the rights of a Party to seek a determination by the Court(s) whether any Discovery Material should be treated as Confidential

9

or Highly Confidential Discovery Material or subject to the terms of this Protective Order, provided that a Party seeking to challenge the designation of any Discovery Material as Confidential or Highly Confidential shall be obligated to meet and confer in good faith prior to seeking judicial resolution and follow the procedures provided in Section 11; or

(iv)     prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided herein with respect to any particular Discovery Material.

## 11.     Objections to Designation.

(a)     Any Party objecting to the designation of any particular Discovery Material or testimony as Confidential or Highly Confidential Discovery Material shall so inform the Producing Party, stating the grounds of the objection, and, unless provided otherwise by the discovery plan adopted by the Courts, they shall have seven (7) business days to attempt to resolve the objection, at the end of which the Party objecting to the designation may seek a ruling from the Court(s), on no less than three (3) business days' notice to the Producing Party, that such information should not be treated as Confidential or Highly Confidential Discovery Material, provided that no Confidential or Highly Confidential Discovery Material shall be filed in the public record or disclosed other than in accordance with the terms of this Protective Order prior to such a determination by the Court(s), and provided further that the burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure.

(b)     Each Party hereby agrees that it will not contest a Party's request for expedited consideration of any relief sought from the Court(s) pursuant to this Section.

## 12.     Use in Depositions / Examinations for Discovery.

(a)     If Confidential or Highly Confidential Discovery Material is utilized in a deposition, including a deposition of a party representative, examination for discovery or other recorded testimony, the Producing Party of the Confidential or Highly Confidential Discovery Material may designate the portion of the transcript relating to the Confidential or Highly Confidential Discovery Material as Confidential or Highly Confidential.

(b)     Any deponent or examinee for discovery or his or her counsel may designate all or part of the transcript of a deposition or examination for discovery as Highly Confidential or Confidential. Such deponent or examinee will be the Producing Party of the deposition or examination testimony for purposes of this Protective Order, except that testimony about Confidential or Highly Confidential Discovery Material for which the deponent or examinee is not a Producing Party shall also be deemed to have been produced by the Producing Party of the Confidential or Highly Confidential Discovery Material discussed.

(c)     Designation of all or part of a transcript as Highly Confidential or Confidential may be made on the record during the deposition or examination or may be made by giving written notice to the court reporter and counsel for all Parties within seven (7) business days after

10



receiving the transcript from the court reporter. All deposition or examination transcripts will be considered Confidential for the first seven (7) business days after receiving the transcript from the court reporter, unless designated otherwise by agreement of the Parties, by the Producing Party of Confidential or Highly Confidential Discovery Material discussed therein and/or by the deponent or examinee, as the case may be.

(d)    The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition.

**13.    Disclosure to Certain Firms and Individuals.**

(a)    Prior to disclosure of Confidential or Highly Confidential Discovery Material pursuant to Sections 5(b)(ii), (viii) and (x) (including as incorporated by reference in Section 6(b)(i) hereof); 5(c) and 6(b)(ii) and (iii) hereof, counsel for the Receiving Party shall provide a copy of this Protective Order to the person or the representative of the firm to whom disclosure is intended and such person or representative must execute a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

(b)    A Receiving Party shall not disclose any Confidential or Highly Confidential Discovery Material to any holder of, or the investment manager for holders of, debt securities issued and/or guaranteed by the Canadian Debtors, EMEA Debtors or US Debtors, or to any officers, employees, counsel, accountants, advisors or agents of the Receiving Party that might be involved in acquiring any assets of or trading in claims against (including debt securities issued by any of) the Canadian Debtors, EMEA Debtors or US Debtors, unless such person or the representative of the person or firm to whom disclosure is intended executes a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

**14.    Third-Party Beneficiaries.**

Third parties that produce documents for use in the Proceedings, either voluntarily or pursuant to a subpoena or in response to discovery requests in connection with the Proceedings, are intended third-party beneficiaries of this Protective Order and shall have the right to designate materials as Confidential or Highly Confidential Discovery Material in accordance with the terms hereof and shall otherwise have the same rights and responsibilities as a Producing Party.

**15.    Redaction of Personal Information.**

(a)    Each Producing Party may redact from Discovery Material it produces, whether or not such Discovery Material are designated Confidential or Highly Confidential, such personal information (e.g., social security numbers, home addresses, bank account information) as the Producing Party deems appropriate, such as information required not to be disclosed by the data protection, privacy or similar laws of the Producing Party's jurisdiction.

(b)    If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced contains personal information to which a non-disclosure

11

81

obligation applies, the Producing Party may apprise the Receiving Parties in writing. Promptly after receiving written notice of an inadvertent production of personal information, each Receiving Party shall return to the Producing Party or (at the election of the Receiving Party) destroy the Discovery Material as to which the claim of inadvertent production has been made and shall not use the inadvertently produced personal information for any purpose. The Producing Party shall, at its cost, provide each Receiving Party and/or the shared dataroom with substitute copies, bearing appropriate redactions, of any such Discovery Material.

(c)    Each Receiving Party retains the right to move for the disclosure of the redacted information.

16.    **Survival.**

(a)    The provisions of this Protective Order shall, absent written permission of the Producing Party or further order of the Court(s), continue to be binding throughout and after the conclusion of the Proceedings, including without limitation any appeals therefrom.

(b)    When any Party receives a notice from a court as to the release, unsealing or disposal of Confidential or Highly Confidential Discovery Material submitted by that Party, but designated Confidential or Highly Confidential by another Producing Party, the Party receiving the notice shall promptly send the notice to all Parties by overnight delivery, fax or email, so as to enable the Parties to take any actions they deem appropriate. The provisions of this Section may be waived only with the written consent of the Producing Party.

17.    **Disposal of Confidential and Highly Confidential Discovery Material.**

(a)    Within thirty (30) days after the time for appeal of an order, judgment, or decree finally disposing of or resolving the Proceedings has expired, all persons having received Confidential or Highly Confidential Discovery Material shall, at their own cost and expense, either return such material and all copies thereof (including summaries and excerpts) to counsel for the Producing Parties or (at the election of the Receiving Party) destroy all such Confidential or Highly Confidential Discovery Material and certify that fact to the Producing Parties. Documents that have been received electronically must be electronically deleted and deleted from "trash" files; provided, however, that to the extent that Confidential or Highly Confidential Discovery Material exists in whole or in part on computer backup tapes or other not readily accessible media used for disaster recovery purposes, information from such media does not need to be restored for purposes of destroying or returning Confidential or Highly Confidential Discovery Material, but such retained information shall continue to be treated in accordance with this Protective Order.

(b)    Notwithstanding the preceding paragraph, outside counsel for the Parties shall be entitled to retain court papers, deposition and court transcripts, and attorney work product that includes or summarizes Confidential Discovery Material or Highly Confidential Discovery Material provided that such outside counsel, and employees of such outside counsel, shall not disclose such court papers, deposition or trial transcripts, or attorney work product to any person except pursuant to court order or agreement with the Producing Party as to the Confidential Discovery Material or Highly Confidential Discovery Material at issue.

12

82

(c)    Notwithstanding anything herein to the contrary, the obligations of this Section shall not preclude any Party or its experts or consultants from complying with document retention policies imposed by applicable law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, provided that the Party, expert or consultant provides notice of its retention of the documents to the Producing Party.

## 18.    Privileged Documents.

(a)    Nothing in this Protective Order shall require disclosure of information that counsel contends is protected from disclosure by solicitor-client privilege, attorney-client privilege, work-product immunity, or any other applicable privilege, immunity or protection from disclosure under any applicable law (each a "<u>Privilege</u>" and, collectively, the "<u>Privileges</u>").

(b)    Consistent with Rule 502(d) of the United States Federal Rules of Evidence, if information subject to a claim of Privilege is produced, such production shall not constitute or be deemed a waiver of any claim of a Privilege that the Producing Party would otherwise be entitled to assert in the Proceedings or any other proceeding, either with respect to the produced Discovery Material or any other documents, communications, or information concerning the same subject matter.  The production of information subject to a claim of Privilege is without prejudice to the right of a Producing Party to seek the return or destruction of any document as to which a claim of Privilege is later asserted.

(c)    If information subject to a claim of Privilege is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of a Privilege for such information or any other information that may be protected from disclosure by Privilege.  If a Party has inadvertently or mistakenly produced a document or information that is subject to a good faith claim of Privilege, upon request by the Producing Party promptly after discovery of such inadvertent or mistaken production, the document for which a claim of inadvertent production is made shall be returned within three (3) business days of such request and all copies of that document that may have been made shall be destroyed to the extent reasonably practicable, and the Receiving Party shall not use such information for any purpose.

(d)    The Party returning such material may then file under seal a motion for an order compelling production of the material, but such motion shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent production, and such motion shall not quote from or attach such material.  While the motion for an order compelling production is pending before the Court(s), the moving Party shall not maintain a copy of, quote from or otherwise use the material.

(e)    No public disclosure of the contents of the Discovery Material as to which the claim of Privilege has been made shall occur absent order of the Court(s).

(f)    If, at trial, at a hearing, at a deposition, at an examination for discovery or on a motion, a Producing Party marks for identification or offers into evidence information subject to a claim of Privilege by the Producing Party, or proffers or elicits testimonial or other evidence that incorporates or relies on information subject to a claim of Privilege, that act shall be deemed

13

83

to effect a waiver and forfeiture by the Producing Party of Privilege. The preceding sentence shall not apply to (1) proceedings to determine whether the information is subject to a claim of Privilege, or (2) information subject to a claim of Privilege that is marked for identification, offered into evidence, or incorporated in evidence proffered or elicited by a Party other than the Producing Party, or relied on by a witness proffered by a Party other than the Producing Party. By marking for identification or offering into evidence information subject to a claim of Privilege, the Producing Party shall not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter.

(g)    If information is subject to a claim of privilege ("Joint Privileged Information"), which appears on its face to be held by two or more Parties ("Joint Privilege"), a Party who claims the Joint Privilege shall not refuse to produce any such Joint Privileged Information to any other Party or Parties with whom the Joint Privilege is shared. A Party who holds the Joint Privilege may produce Joint Privileged Information only to those other Parties with whom it shares the Joint Privilege and shall not produce such Joint Privileged Information to Parties that do not share in the Joint Privilege or to a shared dataroom. If a Party who wishes to rely on Discovery Material containing Joint Privileged Information, such Party shall, without prejudice to its position on the claim of privilege, provide notice to the other Parties with whom it shares the Joint Privilege and such other Parties shall have seven days after receiving notice to seek a protective order from the Court(s) in writing and on notice to the Parties. Absent an order from the Court(s) granting such protective order, the Party seeking to rely on Discovery Material containing Joint Privileged Information shall designate such Discovery Material as "Highly Confidential" and produce it to the other Parties and/or to a shared dataroom. Disclosure to a shared dataroom or to persons permitted to view Highly Confidential Discovery Material under this Protective Order does not effect a waiver of privilege as to Parties other than the Producing Party subject to the foregoing sections. The production of such Discovery Material containing Joint Privileged Information does not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter as the Joint Privileged Information.

**19.    Effective Date and Enforceability.**

(a)    This Protective Order will become effective upon the date that it has been approved by both Courts (the "Effective Date").

(b)    Nothing in this Protective Order shall preclude any Party from seeking judicial relief, upon notice to the other Parties, with regard to any provision hereof.

(c)    No amendment or modification of this Protective Order shall be binding or enforceable unless in writing and signed by the Parties, or ordered by the Courts.

**20.    Allocation Dataroom Access**

(a)    Upon the Effective Date, all documents ("Allocation Dataroom Documents") in the electronic data site established to facilitate settlement discussions (the "Allocation Dataroom") shall be deemed produced in the Proceedings pursuant to this Protective Order, and subject to its terms, including but not limited to the provisions of Section 18.

84

(b)      From and after the Effective Date, this Protective Order shall govern and shall supersede the provisions in prior confidentiality agreements with respect to Allocation Dataroom Documents, but only as to the Parties and any other persons or entities who are entitled to receive documents under this Protective Order (subject to any requirements herein, including, but not limited to, Section 13).

(c)      The Parties shall have twenty-one (21) days following the Effective Date to designate documents in the Allocation Dataroom as Highly Confidential Discovery Material. Any Party making such designation will be required to provide new documents with the Highly Confidential legend to replace existing or to otherwise bear the cost of the designation of such documents. Until such period expires, all Parties with access to the Allocation Dataroom will treat documents therein as Highly Confidential Discovery Material.

(d)      After the expiration of the 21-day period, a Party shall have the right at any time to designate such documents in the Allocation Dataroom as Highly Confidential in accordance with paragraph 10(a). Such documents will thereafter be treated as if they had been designated as Highly Confidential in the 21-day period after the Effective Date.

(e)      Notwithstanding anything to the contrary herein, all documents in the Allocation Dataroom shall be deemed Confidential upon the Effective Date and will be electronically stamped with the Confidential legend. Where it is evident from the Bates Stamp which Party supplied the document to the Allocation Dataroom, that Party will be deemed the Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. Absent such evidence, the document will be deemed produced by the US Debtors, Canadian Debtors and EMEA Debtors and all such Parties shall each be considered a Producing Party with respect to such documents and be treated as a Producing Party for purposes of Subsection (f) *infra*, and Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

(f)      In the event any Party objects to the designation of specifically identified documents from the Allocation Dataroom, the Producing Party shall reconsider such designation and, within ten (10) days, either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material.

**21.    Intentional or Negligent Disclosure of Confidential or Highly Confidential Discovery Material.**

In the event of an alleged intentional or negligent disclosure of Highly Confidential Discovery Material or Confidential Discovery Material in violation of this Protective Order, the Parties shall first seek to resolve the alleged violation through prompt and reasonable discussion. In the event such efforts fail to promptly resolve the alleged violation, the Parties reserve the right to seek any available remedy from the Courts, including, *inter alia*, money damages, injunctive relief or any other relief as appropriate.

TOR_LAW\8173441\1

*85*

**22.     Enforcement Pending Entry.**

The Parties agree to be bound by the terms of this Protective Order pending the entry of this Protective Order by the Courts, and any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order has been issued and entered by the Courts.

**23.     Jurisdiction.**

The US Court and the Canadian Court shall retain jurisdiction and venue for the purposes of any dispute arising out of or relating to this Protective Order.  For the avoidance of doubt, the Parties' obligations remain ongoing, and such jurisdiction and venue is retained even to the extent this Protective Order is utilized in connection with any arbitration proceeding.

16

86

## EXHIBIT A

I, _____, declare under penalty of perjury, the

following:

     I reside at _____ in the City of

_____ and State/Province of _____;

     I have read the annexed Protective Order dated _____, 2013;

     I am fully familiar with and agree to comply with and be bound by the provisions of that

Protective Order and consent and attorn to the jurisdiction of the United States Bankruptcy Court

for the District of Delaware and the Ontario Superior Court of Justice solely for the purpose of

enforcement of the provisions of the Confidentiality Protective Order and Protective Order. I

will not divulge any Discovery Material to persons other than those specifically authorized by

the Protective Order, and will take reasonable steps, including, but not limited to, establishing

information firewalls, to prevent the inadvertent disclosure of Discovery Material to any persons

not so authorized. I understand, in particular, that any Confidential or Highly Confidential

Discovery Material, and any copies, excerpts or summaries thereof, or materials containing

Confidential or Highly Confidential Discovery Material derived therefrom, as well as any

knowledge or information derived from any of these items, may be used only for the Proceedings

and may not be used to inform the purchase or sale of securities or for any other purpose,

including, without limitation, any business or commercial purpose.

     I further understand that failure to abide fully by the terms of the Protective Order may

result in legal action against me, such as for contempt of court or liability for monetary damages.

Dated: _____    Signature: _____

TOR_LAW\ 8173441\1

TAB G

**THIS IS EXHIBIT "G" REFERRED TO**
**IN THE AFFIDAVIT OF KRISTIAN BORG-OLIVIER**
**SWORN BEFORE ME THIS 5th DAY**
**OF JUNE, 2013**

A COMMISSIONER FOR TAKING AFFIDAVITS, ETC.



## PROTECTIVE ORDER

**1.    Application of this Protective Order.**

(a)    This Protective Order (the "<u>Protective Order</u>") shall govern the participation of any person, entity or group, including, but not limited to, the Canadian Debtors,[1] EMEA Debtors, US Debtors, Unsecured Creditors Committee, Bondholder Group, Monitor, Joint Administrators, CCC, Indenture Trustees, UK Pension Claimants, and Officers and Directors (the "<u>Parties</u>" and each a "<u>Party</u>"), in discovery undertaken in connection with the litigation or arbitration (subject to any Party's right to oppose any request for arbitration on any grounds and/or to oppose the use of any Discovery Material, as defined below, in any such arbitration) of Allocation, the EMEA Claims, and the UK Pension Claims in the US and/or Canadian Court (collectively the "<u>Proceedings</u>"), notwithstanding anything to the contrary previously agreed to or ordered by the United States Bankruptcy Court for the District of Delaware (the "<u>US Court</u>") or the Ontario Superior Court of Justice (Commercial List) (the "<u>Canadian Court</u>" and, together with the US Court, the "<u>Courts</u>"), and subject to approval by both Courts.

(b)    This Protective Order shall govern the Proceedings with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information produced, given or disclosed by any Party or any non-parties (in each case, a "<u>Producing Party</u>") to any other Party or non-party receiving or viewing such materials(in each case, "<u>Receiving Party</u>"), including through access to a shared dataroom (all such materials and the substance of such materials, hereinafter referred to as "<u>Discovery Material</u>").

(c)    This Protective Order shall supersede all prior existing confidentiality and non-disclosure agreements among and between the Parties, which are hereby terminated, and all materials disclosed pursuant to those agreements shall be deemed to have been produced pursuant to this Protective Order and subject to the provisions hereof.

**2.    Highly Confidential Discovery Material.**

(a)    Any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that "Highly Confidential" documents and information shall not include:

(i)    information that is publicly available in substantially the same form in which it was provided;

(ii)    information that was, is or becomes public knowledge, not in violation of this Protective Order;

(iii)    information that is voluntarily de-designated by the Producing Party;

---

[1]    Capitalized terms not defined herein shall have the meaning given in the Allocation Protocol.

89

(iv)    information that a Court order has de-designated;

(v)    information rightfully acquired from an independent source without restrictions as to use;

(vi)    information that is at any time independently developed by a Party without use of or reliance upon any Discovery Material; or

(vii)    information regarding the Canadian Debtors, the US Debtors, and the EMEA Debtors which is not subject to a nondisclosure agreement with a third party.

(b)    Subject to these conditions and limitations, any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i)    information required to be kept confidential pursuant to law or regulation in a Party's jurisdiction; or

(ii)    information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party;

(all information designated as such, including the document itself as well as the information therein, the "Highly Confidential Discovery Material").

## 3.    Confidential Discovery Material.

(a)    Any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that Confidential information shall not include any documents or information as set forth in Section 2(a)(i)-2(a)(vi) hereof.

(b)    Subject to these conditions and limitations, any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i)    non-public proprietary information about a Party;

(ii)    information subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party; or

(iii)    information that is protected by Federal Rule of Evidence 408;

(all documents or information designated as such, including the document itself as well as the information therein, the "Confidential Discovery Material").

**4.     Designation of Documents.**

(a)     A Producing Party may designate Discovery Material as Confidential Discovery Material by applying the legend "Confidential" to each page or portion containing any Confidential Discovery Material and the reason the page or portion is being designated as Confidential.

(b)     A Producing Party may designate Discovery Material as Highly Confidential Discovery Material by applying the legend "Highly Confidential" to each page or portion containing any Highly Confidential Discovery Material and the reason the page or portion is being designated as Highly Confidential.

(c)     In the case of electronically produced information, the "Confidential" or "Highly Confidential" legend, if any, shall be printed on the cover or container of the disk, tape, or other medium in which the electronic form data is stored, and the "Confidential" or "Highly Confidential" legend shall be applied, as well as the reason that the electronic document or electronically stored information is being designated as Confidential or Highly Confidential, by electronic means to each electronic document or other electronically stored information containing any Confidential or Highly Confidential Discovery Material, unless such electronic materials are produced in native format. If produced in native format, such materials will be produced without alteration along with a corresponding Bates-numbered slipsheet bearing the "Confidential" or "Highly Confidential" legend as well as the reason that the material is being designated as Confidential or Highly Confidential.

(d)     The failure to designate a document as "Confidential" or "Highly Confidential" does not constitute a waiver of such claim, and a Producing Party may so designate a document after such document has been produced in accordance with Section 10, with the effect that such document is subject thereafter to the protections of this Protective Order.

(e)     At the request of a Party (the "Requesting Party"), a Producing Party shall designate as Confidential or Highly Confidential Discovery Material containing information of the Requesting Party that the Requesting Party reasonably believes in good faith meets any of the criteria for such designation. With respect to Discovery Material designated as Confidential or Highly Confidential Discovery Material pursuant to request, the Requesting Party shall thereafter be deemed a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12, 15-17 and 20 of this Protective Order. The costs of providing new copies of such re-designated documents to each Receiving Party and/or a shared dataroom shall be borne by the Requesting Party, and the "Confidential" or "Highly Confidential" legend on such copies must clearly indicate the Party who requested the designation.

(f)     A Party may designate as Confidential or Highly Confidential Discovery Material produced by another Party pursuant to subsection (e), even if such Discovery Material has already been designated as Confidential or Highly Confidential. If more than one Party designates the same Discovery Material as Confidential or Highly Confidential, all such Parties shall be considered a Producing Party with respect to such Discovery Material and be treated as a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12, 15-17 and 20 of this Protective Order. For the avoidance of doubt, whenever consent of or notice to a Producing Party is

required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

**5.    Treatment of Highly Confidential Information.**

(a)    Any information designated as Highly Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)    Provided that disclosure is not otherwise prohibited by this Protective Order, and subject to Section 7(d), a Receiving Party shall only disclose Highly Confidential Discovery Material to:

(i)    current employees, officers and directors of a Receiving Party who previously had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material;

(ii)    former employees of a Receiving Party who are currently retained by that Party as consultants or independent contractors who during their employment with the Receiving Party had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material provided that they comply with the requirements of Section 13 hereof;

(iii)    court-appointed Monitors, Trustees and Administrators and their respective staffs, and for the US Debtors, the employees of RLKS Executive Solutions LLC and the employees of Avidity Partners, LLC;

(iv)    outside or in-house counsel for the Parties or outside or in-house counsel for members of a committee or group (where a Party is a committee or group), and legal assistants, secretaries, staff or agents and consultants working with or for such counsel, but only to the extent that it is reasonably necessary to share Highly Confidential Discovery Material;

(v)    litigation support personnel, including outside copying, scanning and coding services and court reporters;

(vi)    persons expected to be deponents, trial witnesses or hearing witnesses in the Proceedings and counsel to such persons, provided that counsel providing the Highly Confidential Discovery Material has a good-faith basis for believing that such witnesses had prior, rightful access to or knowledge of the Highly Confidential Discovery Material, and provided that counsel ascertain as soon as practicable whether such witnesses had such access or knowledge, and provided that upon the first indication that such witnesses did not have such access or knowledge, counsel must immediately refrain from any further disclosure to such witnesses and procure the return or destruction of such Highly Confidential Discovery Material;

(vii)    witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and/or party representatives designated for discovery

4

92

examination pursuant to the Ontario Rule of Civil Procedure and/or alternative procedures agreed to by the Parties;

(viii)  experts, professional firms or persons retained for the purpose of providing advice and assistance to outside counsel of record and/or giving evidence in the Proceedings, including their staff, provided that they comply with the requirements of Section 13 hereof;

(ix)  non-attorney representatives from each Party (or, where the Party is a committee, non-attorney representatives of each committee member, who represent such member in committee matters), provided that they comply with the requirements of Section 13 hereof,

(x)  personnel of the Courts;

(xi)  any other person upon written agreement of the Producing Party, provided that he or she complies with the requirements of Section 13 hereof;

(xii)  any other person upon order of the Court(s) and upon such conditions as may be imposed by the Court(s); and

(xiii)  any other person, as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, subject to Section 9 of this Protective Order.

(c)  In addition to the foregoing, draft or final pleadings that cite to or quote Highly Confidential Discovery Material (but not any attachments thereto designated as Highly Confidential) may be shared with non-attorney representatives from each Party (or, where the Party is a committee, non-attorney representatives of each committee member, who represent such member in committee matters), provided that they comply with the requirements of Section 13 hereof, but only to the extent that sharing such draft or final pleadings that cite to or quote Highly Confidential Discovery Material is necessary to render advice to or receive guidance or approval from the Party in the Proceedings.

(d)  Any Receiving Party may request leave of a Producing Party to show Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses in the Proceedings by providing notice to the Producing Party of the Highly Confidential Discovery Material the Receiving Party seeks to use and the parties shall use their best efforts within five business days to determine whether such material may be disclosed by the Receiving Party to such persons while protecting the Producing Party's need for confidentiality, including, but not limited to, considering whether portions of such material can be redacted and re-evaluating whether such material must be protected as Highly Confidential.  In the event the Producing Party and the Receiving Party cannot resolve an issue concerning the use of Highly Confidential Discovery Material, the matter may be presented to the Courts for resolution on an expedited basis.

93

(e)    Persons receiving Highly Confidential Discovery Material pursuant to this Section shall not copy or disclose such Highly Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(f)    Treatment of Highly Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

## 6.    Treatment of Confidential Information.

(a)    Any information designated as Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)    Provided that disclosure is not otherwise prohibited by this Protective Order and subject to Section 7(d), a Receiving Party shall only disclose Confidential Discovery Material to:

(i)    parties or persons to whom Highly Confidential Discovery Material may be disclosed as set forth in Section 5;

(ii)    current employees, officers, or directors of a Receiving Party (including current employees, officers or directors of members of a committee that is a Party provided that they comply with the requirements of Section 13 hereof), provided that disclosure is reasonably necessary to the Proceedings;

(iii)    former employees of a Receiving Party, provided that disclosure is reasonably necessary to the Proceedings and that they comply with the requirements of Section 13 hereof; or

(iv)    persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons.

(c)    Persons receiving Confidential Discovery Material pursuant to this Section shall not copy or disclose such Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(d)    Treatment of Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

## 7.    Permitted Purposes.

(a)    Confidential or Highly Confidential Discovery Material shall not be made public by any Party, shall be used only by persons permitted access to it per this Protective Order and shall be disclosed only to persons specified in this Protective Order.

(b)    All Discovery Material (except such materials publicly available in substantially the same form), whether or not designated as Confidential or Highly Confidential Discovery

94

Material, shall be used by Receiving Parties solely in connection with the Proceedings (including appeals), and not in connection with any other litigation, judicial or regulatory proceeding or for any business, commercial, competitive, personal or other purpose except as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order.

(c)    Any summary, compilation, notes, memoranda, analysis or copy containing Confidential or Highly Confidential Discovery Material, and any electronic image or database containing Confidential or Highly Confidential Discovery Material shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, memoranda, analysis, copy, electronic image or database is derived.

(d)    This Protective Order has no effect upon, and shall not apply to, a Party's use of its own Confidential or Highly Confidential Discovery Material, including information designated as such under Section 4(e) and information that was, prior to disclosure, rightfully in the possession or knowledge of the Party, for any purpose.

(e)    This Protective Order shall not preclude any Party from showing any Confidential or Highly Confidential Discovery Material or disclosing information derived therefrom at a deposition or examination for discovery to any witness, provided that, other than the witness, only those persons who are authorized by the terms of this Agreement to receive the Confidential or Highly Confidential Discovery Material to be disclosed to the witness are present at relevant portions of the deposition and the procedures provided for in Section 12 are in place.

## 8.    Court Filings.

(a)    A Party who intends to file Highly Confidential or Confidential Discovery Material shall give 5 days notice to the Party or Parties who designated the Discovery Materials as Highly Confidential or Confidential ("Designating Party") so that the Designating Party may bring a motion for a sealing order.

(b)    If a Party wishes to file or otherwise submit to the Court(s) any documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material, including, but not limited to, pleadings, memoranda, transcripts, and discovery responses, such Party may redact the Confidential or Highly Confidential Discovery Material. If the nature of the Highly Confidential Information makes redaction unreasonable or impossible, the Party shall give 5 days notice to the Designating Party so that the designating Party may bring a motion for a sealing order.

(c)    The Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing. The Parties reserve all rights with respect to trial procedures.



9.      **Compelled Disclosure.**

(a)      If a Receiving Party is subpoenaed in another action or proceeding, served with a document demand, or otherwise required or compelled by law, regulation, government action or other process (any of the foregoing, a "<u>Demand</u>") to produce Confidential or Highly Confidential Discovery Material, the Receiving Party shall, if legally permitted, (i) give prompt written notice by overnight delivery, fax or email the earlier of five (5) business days of receipt, or fourteen (14) days prior to the response date of such Demand to counsel for the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material, provided, however, that such notice shall be given as soon as practicable if the response date of the demand is within fourteen (14) business days of receipt by the Receiving Party; and (ii) refrain from producing any Confidential or Highly Confidential Discovery Material in response to such Demand until the earlier of receipt of written notice from the Producing Party that it does not object to production of the Confidential or Highly Discovery Material, or resolution of any objection asserted by the Producing Party either by agreement or by final order of the Court(s) with jurisdiction over the objection of the Producing Party.

(b)      The burden of opposing the enforcement of the Demand shall fall solely upon the Producing Party.

(c)      Should a Producing Party neither provide written notice to the Receiving Party that it does not object to production of the Confidential or Highly Discovery Material nor submit a timely objection seeking an order that the Demand not be complied with and serve such objection upon the Receiving Party prior to production pursuant to the Demand, the Receiving Party shall be permitted to produce documents responsive to the Demand on the Demand's response date.

(d)      Subject to the provisions of this Section, compliance by the Receiving Party with any order directing production pursuant to a Demand of any Confidential or Highly Confidential Discovery Material shall not constitute a violation of this Protective Order.

(e)      Nothing herein shall be construed as requiring the Receiving Party or anyone else covered by this Protective Order to challenge or appeal any order directing production of Confidential or Highly Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order.

(f)      The provisions of this Section shall apply to examinations conducted by bank or other regulators to which a Party may be subject, which may include examinations of Confidential or Highly Confidential Discovery Material received by any Party and its representatives.  Any such disclosure shall be limited to such portions of the Confidential or Highly Confidential Discovery Material that the applicable Party's legal counsel advises is required under the subpoena, order or process, or request or demand by a regulatory authority, organization of regulators or self-regulatory authority received by that Party (each a "<u>Regulator Demand</u>").  With respect to Regulator Demands for Confidential or Highly Confidential Discovery Material, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of any such Regulator Demand before the disclosure of such Confidential or Highly Confidential

96

Discovery Material to such regulator, if the applicable Party is entitled to do so and if practicable. Otherwise, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of such Regulator Demand after the disclosure of any Confidential Information to regulator, if the applicable Party is entitled to do so. Nothing herein shall obligate any Party to prohibit or restrict any regulator's prompt access, in violation of any law, regulation, order or other obligation applicable to such Party, to documents or information in the custody, possession or control of such Party its representatives.

**10.    No Waiver.**

(a)    If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced should be designated as Confidential or Highly Confidential, the Producing Party may apprise the Receiving Parties in writing, and such designated Discovery Material will thereafter be treated as Confidential or Highly Confidential Discovery Material under the terms of this Protective Order, provided, however, that the Producing Party shall, at its cost, produce to each Receiving Party and/or to the shared dataroom substitute copies, bearing the legend "Confidential" or "Highly Confidential," of any such Discovery Material at which time the Receiving Party shall promptly return to the Producing Party or (at the election of the Receiving Party) destroy the previously produced copies of such substituted Discovery Material and shall have no right to access such substituted Discovery Material electronically.

(b)    This Protective Order shall not prevent any Party from applying to the Court(s) in writing and on notice to the Parties for relief from this Protective Order or from any provision(s) thereof, or from applying to the Court(s) in writing and on notice to the Parties for further or additional protective orders.

(c)    Producing or receiving Confidential or Highly Confidential Discovery Material or otherwise complying with the terms of this Protective Order shall not:

(i)    prejudice in any way a Producing Party's rights to object to the authenticity or admissibility into evidence of any testimony or other evidence;

(ii)    prejudice in any way the rights of the Parties to object to the production of documents that they consider not subject to discovery, or operate as an admission by any Party in the context of any other litigation or proceeding that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;

(iii)    prejudice in any way the rights of a Party to seek a determination by the Court(s) whether any Discovery Material should be treated as Confidential or Highly Confidential Discovery Material or subject to the terms of this Protective Order, provided that a Party seeking to challenge the designation of any Discovery Material as Confidential or Highly Confidential shall be obligated to meet and confer in good faith prior to

9

seeking judicial resolution and follow the procedures provided in Section 11; or

(iv)    prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided herein with respect to any particular Discovery Material.

## 11.    Objections to Designation.

(a)    Any Party objecting to the designation of any particular Discovery Material or testimony as Confidential or Highly Confidential Discovery Material shall so inform the Producing Party, stating the grounds of the objection, and, unless provided otherwise by the discovery plan adopted by the Courts, they shall have five (5) business days to attempt to resolve the objection, at the end of which the Party objecting to the designation may seek a ruling from the Court(s), on no less than three (3) business days' notice to the Producing Party, that such information should not be treated as Confidential or Highly Confidential Discovery Material, provided that no Confidential or Highly Confidential Discovery Material shall be filed in the public record or disclosed other than in accordance with the terms of this Protective Order prior to such a determination by the Court(s), and provided further that the burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure.

(b)    Each Party hereby agrees that it will not contest a Party's request for expedited consideration of any relief sought from the Court(s) pursuant to this Section.

## 12.    Use in Depositions / Examinations for Discovery.

(a)    If Confidential or Highly Confidential Discovery Material is utilized in a deposition, including a deposition of a party representative, examination for discovery or other recorded testimony, the Producing Party of the Confidential or Highly Confidential Discovery Material may designate the portion of the transcript relating to the Confidential or Highly Confidential Discovery Material as Confidential or Highly Confidential.

(b)    Any deponent or examinee for discovery or his or her counsel may designate all or part of the transcript of a deposition or examination for discovery as Highly Confidential or Confidential.  Such deponent or examinee will be the Producing Party of the deposition or examination testimony for purposes of this Protective Order, except that testimony about Confidential or Highly Confidential Discovery Material for which the deponent or examining is not a Producing Party shall also be deemed to have been produced by the Producing Party of the Confidential or Highly Confidential Discovery Material discussed.

(c)    Designation of all or part of a transcript as Highly Confidential or Confidential may be made on the record during the deposition or examination or may be made by giving written notice to the court reporter and counsel for all Parties within seven (7) business days after receiving the transcript from the court reporter.  All deposition or examination transcripts will be considered  Confidential for the first seven (7) business days after receiving the transcript from the court reporter, unless designated otherwise by agreement of the Parties, by the Producing



Party of Confidential or Highly Confidential Discovery Material discussed therein and/or by the deponent or examinee, as the case may be.

(d)    The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition.

**13.    Disclosure to Certain Firms and Individuals.**

Prior to disclosure of Confidential or Highly Confidential Discovery Material pursuant to Sections 5(b)(ii), (viii), (ix) and (xi) (including as incorporated by reference in Section 6(b)(i) hereof); 5(c) and 6(b)(ii) and (iii) hereof, counsel for the Receiving Party shall provide a copy of this Protective Order to the person or the representative of the firm to whom disclosure is intended and such person or representative must execute a Non-Disclosure Declaration in the form annexed as an Exhibit hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

**14.    Third-Party Beneficiaries.**

Third parties that produce documents for use in the Proceedings, either voluntarily or pursuant to a subpoena or in response to discovery requests in connection with the Proceedings, are intended third-party beneficiaries of this Protective Order and shall have the right to designate materials as Confidential or Highly Confidential Discovery Material in accordance with the terms hereof and shall otherwise have the same rights and responsibilities as a Producing Party.

**15.    Redaction of Personal Information.**

(a)    Each Producing Party may redact from Discovery Material it produces, whether or not such Discovery Material are designated Confidential or Highly Confidential, such personal information (e.g., social security numbers, home addresses, bank account information) as the Producing Party deems appropriate, such as information required not to be disclosed by the data protection, privacy or similar laws of the Producing Party's jurisdiction.

(b)    If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced contains personal information to which a non-disclosure obligation applies, the Producing Party may apprise the Receiving Parties in writing. Promptly after receiving written notice of an inadvertent production of personal information, each Receiving Party shall return to the Producing Party or (at the election of the Receiving Party) destroy the Discovery Material as to which the claim of inadvertent production has been made and shall not use the inadvertently produced personal information for any purpose. The Producing Party shall, at its cost, provide each Receiving Party and/or the shared dataroom with substitute copies, bearing appropriate redactions, of any such Discovery Material.

(c)    Each Receiving Party retains the right to move for the disclosure of the redacted information.

99

**16.    Survival.**

(a)    The provisions of this Protective Order shall, absent written permission of the Producing Party or further order of the Court(s), continue to be binding throughout and after the conclusion of the Proceedings, including without limitation any appeals therefrom.

(b)    When any Party receives a notice from a court as to the release, unsealing or disposal of Confidential or Highly Confidential Discovery Material submitted by that Party, but designated Confidential or Highly Confidential by another Producing Party, the Party receiving the notice shall promptly send the notice to all Parties by overnight delivery, fax or email, so as to enable the Parties to take any actions they deem appropriate. The provisions of this Section may be waived only with the written consent of the Producing Party.

**17.    Disposal of Confidential and Highly Confidential Discovery Material.**

(a)    Within thirty (30) days after the time for appeal of an order, judgment, or decree finally disposing of or resolving the Proceedings has expired, all persons having received Confidential or Highly Confidential Discovery Material shall, at their own cost and expense, either return such material and all copies thereof (including summaries and excerpts) to counsel for the Producing Parties or (at the election of the Receiving Party) destroy all such Confidential or Highly Confidential Discovery Material and certify that fact to the Producing Parties. Documents that have been received electronically must be electronically deleted and deleted from "trash" files; provided, however, that to the extent that Confidential or Highly Confidential Discovery Material exists in whole or in part on computer backup tapes or other not readily accessible media used for disaster recovery purposes, information from such media does not need to be restored for purposes of destroying or returning Confidential or Highly Confidential Discovery Material, but such retained information shall continue to be treated in accordance with this Protective Order.

(b)    Notwithstanding the preceding paragraph, outside counsel for the Parties shall be entitled to retain court papers, deposition and court transcripts, and attorney work product that includes or summarizes Confidential Discovery Material or Highly Confidential Discovery Material provided that such outside counsel, and employees of such outside counsel, shall not disclose such court papers, deposition or trial transcripts, or attorney work product to any person except pursuant to court order or agreement with the Producing Party as to the Confidential Discovery Material or Highly Confidential Discovery Material at issue.

(c)    Notwithstanding anything herein to the contrary, the obligations of this Section shall not preclude any Party or its experts or consultants from complying with document retention policies imposed by applicable law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, provided that the Party, expert or consultant provides notice of its retention of the documents to the Producing Party.

**18.    Privileged Documents.**

(a)    Nothing in this Protective Order shall require disclosure of information that counsel contends is protected from disclosure by solicitor-client privilege, attorney-client



privilege, work-product immunity, or any other applicable privilege, immunity or protection from disclosure under any applicable law (each a "Privilege" and, collectively, the "Privileges").

(b)    Consistent with Rule 502(d) of the United States Federal Rules of Evidence, if information subject to a claim of Privilege is produced, such production shall not constitute or be deemed a waiver of any claim of a Privilege that the Producing Party would otherwise be entitled to assert in the Proceedings or any other proceeding, either with respect to the produced Discovery Material or any other documents, communications, or information concerning the same subject matter. The production of information subject to a claim of Privilege is without prejudice to the right of a Producing Party to seek the return or destruction of any document as to which a claim of Privilege is later asserted.

(c)    If information subject to a claim of Privilege is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of a Privilege for such information or any other information that may be protected from disclosure by Privilege. If a Party has inadvertently or mistakenly produced a document or information that is subject to a good faith claim of Privilege, upon request by the Producing Party promptly after discovery of such inadvertent or mistaken production, the document for which a claim of inadvertent production is made shall be returned within three (3) business days of such request and all copies of that document that may have been made shall be destroyed to the extent reasonably practicable, and the Receiving Party shall not use such information for any purpose.

(d)    The Party returning such material may then file under seal a motion for an order compelling production of the material, but such motion shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent production, and such motion shall not quote from or attach such material. While the motion for an order compelling production is pending before the Court(s), the moving Party shall not maintain a copy of, quote from or otherwise use the material.

(e)    No public disclosure of the contents of the Discovery Material as to which the claim of Privilege has been made shall occur absent order of the Court(s).

(f)    If, at trial, at a hearing, at a deposition, at an examination for discovery or on a motion, a Producing Party marks for identification or offers into evidence information subject to a claim of Privilege by the Producing Party, or proffers or elicits testimonial or other evidence that incorporates or relies on information subject to a claim of Privilege, that act shall be deemed to effect a waiver and forfeiture by the Producing Party of Privilege. The preceding sentence shall not apply to (1) proceedings to determine whether the information is subject to a claim of Privilege, or (2) information subject to a claim of Privilege that is marked for identification, offered into evidence, or incorporated in evidence proffered or elicited by a Party other than the Producing Party, or relied on by a witness proffered by a Party other than the Producing Party. By marking for identification or offering into evidence information subject to a claim of Privilege, the Producing Party shall not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter.

(g)    If information is subject to a claim of privilege ("Joint Privileged Information"), which appears on its face to be held by two or more Parties ("Joint Privilege"), a Party who

101

claims the Joint Privilege shall not refuse to produce any such Joint Privileged Information to any other Party or Parties with whom the Joint Privilege is shared. A Party who holds the Joint Privilege may produce Joint Privileged Information only to those other Parties with whom it shares the Joint Privilege and shall not produce such Joint Privileged Information to Parties that do not share in the Joint Privilege or to a shared dataroom. If a Party who wishes to rely on Discovery Material containing Joint Privileged Information, such Party shall, without prejudice to its position on the claim of privilege, provide notice to the other Parties with whom it shares the Joint Privilege and such other Parties shall have seven days after receiving notice to seek a protective order from the Court(s) in writing and on notice to the Parties. Absent an order from the Court(s) granting such protective order, the Party seeking to rely on Discovery Material containing Joint Privileged Information shall designate such Discovery Material as "Highly Confidential" and produce it to the other Parties and/or to a shared dataroom. Disclosure to a shared dataroom or to persons permitted to view Highly Confidential Discovery Material under this Protective Order does not effect a waiver of privilege as to Parties other than the Producing Party subject to the foregoing sections. The production of such Discovery Material containing Joint Privileged Information does not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter as the Joint Privileged Information.

**19.    Effective Date and Enforceability.**

(a)    This Protective Order will become effective upon the date that it has been approved by both Courts (the "Effective Date").

(b)    Nothing in this Protective Order shall preclude any Party from seeking judicial relief, upon notice to the other Parties, with regard to any provision hereof.

(c)    No amendment or modification of this Protective Order shall be binding or enforceable unless in writing and signed by the Parties, or ordered by the Courts.

**20.    Allocation Dataroom Access**

(a)    Upon the Effective Date, all documents ("Allocation Dataroom Documents") in the electronic data site established to facilitate settlement discussions (the "Allocation Dataroom") shall be deemed produced in the Proceedings pursuant to this Protective Order, and subject to its terms, including but not limited to the provisions of Section 18.

(b)    From and after the Effective Date, this Protective Order shall govern and shall supersede the provisions in prior confidentiality agreements with respect to Allocation Dataroom Documents, but only as to the Parties and any other persons or entities who are entitled to receive documents under this Protective Order (subject to any requirements herein, including, but not limited to, Section 13).

(c)    The Parties shall have twenty-one (21) days following the Effective Date to designate documents in the Allocation Dataroom as Highly Confidential Discovery Material or Confidential Discovery Material. Any Party making such designation will be required to provide new documents with the Highly Confidential legend or the Confidential legend to replace existing or to otherwise bear the cost of the designation of such documents. Until such period expires, all Parties with access to the Allocation Dataroom will treat documents therein as Highly

102

Confidential Discovery Material. Thereafter, if a document has not been electronically stamped as Highly Confidential or Confidential by a Party during the 21 day period, it shall be considered a document to which neither of those designations apply, subject to the provisions of subsection 20(d).

(d)    After the expiration of the 21-day period, a Party shall have the right at any time to designate such documents in the Allocation Dataroom as Highly Confidential or Confidential in accordance with paragraph 10(a). Such documents will thereafter be treated as if they had been designated as Highly Confidential in the 21-day period after the Effective Date.

(e)    In the event any Party objects to the designation of specifically identified documents from the Allocation Dataroom, the Producing Party shall reconsider such designation and, within ten (10) days, either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material.

## 21.    Intentional or Negligent Disclosure of Confidential or Highly Confidential Discovery Material.

In the event of an alleged intentional or negligent disclosure of Highly Confidential Discovery Material or Confidential Discovery Material in violation of this Protective Order, the Parties shall first seek to resolve the alleged violation through prompt and reasonable discussion. In the event such efforts fail to promptly resolve the alleged violation, the Parties reserve the right to seek any available remedy from the Courts, including, *inter alia*, money damages, injunctive relief or any other relief as appropriate.

## 22.    Enforcement Pending Entry.

The Parties agree to be bound by the terms of this Protective Order pending the entry of this Protective Order by the Courts, and any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order has been issued and entered by the Courts.

## 23.    Jurisdiction.

The Parties irrevocably agree and consent to the jurisdiction and venue of the US Court and the Canadian Court for the purposes of any dispute arising out of or relating to this Protective Order. For the avoidance of doubt, the Parties' obligations remain ongoing, and such jurisdiction and venue is retained even to the extent this Protective Order is utilized in connection with any arbitration proceeding.

[ENDORSEMENT BLOCKS]

103

## EXHIBIT

I, _____, declare under penalty of perjury, the

following:

I reside at _____ in the City of

_____ and State/Province of _____;

I have read the annexed Protective Order dated _____, 2013;

I am fully familiar with and agree to comply with and be bound by the provisions of that

Protective Order and consent and attorn to the jurisdiction of the United States Bankruptcy Court

for the District of Delaware and the Ontario Superior Court of Justice solely for the purpose of

enforcement of the provisions of the Confidentiality Protective Order and Protective Order. I

will not divulge any Discovery Material to persons other than those specifically authorized by

the Protective Order. I understand, in particular, that any Confidential or Highly Confidential

Discovery Material, and any copies, excerpts or summaries thereof, or materials containing

Confidential or Highly Confidential Discovery Material derived therefrom, as well as any

knowledge or information derived from any of these items, may be used only for the Proceedings

and may not be used to inform the purchase or sale of securities or for any other purpose,

including, without limitation, any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order may

result in legal action against me, such as for contempt of court or liability for monetary damages.

Dated: _____      Signature: _____

\6204578

16

104

Court File No: 09-CL-7950

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL
NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION
AND NORTEL NETWORKS TECHNOLOGY CORPORATION
APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL COURT)

PROCEEDING COMMENCED AT
TORONTO

AFFIDAVIT OF KRISTIAN BORG-OLIVIER
(Affirmed June 5, 2013)

**Paliare Roland Rosenberg Rothstein LLP**
155 Wellington Street West
35th Floor
Toronto ON  M5V 3H1
Tel:   416.646.4300
Fax:  416.646.4301

Kenneth T. Rosenberg (LSUC #21102H)
Tel:   (416) 646-4304
Email: ken.rosenberg@paliareroland.com

Andrew K. Lokan (LSUC #31629Q)
Tel: (416) 646-4324
Email: andrew.lokan@paliareroland.com

**Lawyers for the Canadian Creditors' Committee**

Court File No. 09-CL-7950

IN THE MATTER FO THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL
NETWORKS LIMITED, NORTEL NETWORKS GLOVAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION
AND NORTEL NETWORKS TECHNOLOGY CORPORATION
APPLICATION UNDER THE COMPANIES' CREDITORS ARRAGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

| | |
|---|---|
| | **ONTARIO**<br>**SUPERIOR COURT OF JUSTICE**<br>PROCEEDING COMMENCED AT<br>TORONTO |
| | **CROSS MOTION RECORD** |
| | **Paliare Roland Rosenberg Rothstein LLP**<br>155 Wellington Street West<br>35th Floor<br>Toronto ON  M5V 3H1<br>Tel:    416.646.4300<br>Fax:   416.646.4301 |
| | **Kenneth T. Rosenberg (LSUC #21102H)**<br>**Andrew K. Lokan (LSUC #31629Q)** |
| | Email: ken.rosenberg@paliareroland.com<br>andrew.lokan@paliareroland.com |
| | Lawyers for the Canadian Creditors' Committee |