**<u>EXHIBIT A</u>**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**FACTUM OF ERNST & YOUNG INC. IN ITS CAPACITY AS MONITOR**
**AND THE CANADIAN DEBTORS**

**(Motion for Approval of Protective Order)**
**(Returnable June 11, 2013)**

| | |
|---|---|
| **Goodmans LLP** | **Gowling Lafleur Henderson LLP** |
| Barristers & Solicitors | Barristers & Solicitors |
| Bay Adelaide Centre | 1 First Canadian Place |
| 333 Bay Street, Suite 3400 | 100 King Street West, Suite 1600 |
| Toronto, ON  M5H 2S7 | Toronto, ON  M5X 1G5 |
| | |
| Jay A. Carfagnini  LSUC#: 22293T | Derrick Tay  LSUC#: 21152A |
| Peter Ruby  LSUC#: 38439P | Jennifer Stam  LSUC#: 46735J |
| Joseph Pasquariello  LSUC#: 37389C | |
| | |
| Tel:    416.979.2211 | |
| Fax:    416.979.1234 | Tel:  416.862.5697 |
| | Fax:  416.862.7661 |
| Lawyers for the Monitor, | |
| Ernst & Young Inc. | Lawyers for the Canadian Debtors |

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE** *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, **R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**FACTUM OF ERNST & YOUNG INC. IN ITS CAPACITY AS MONITOR AND THE**
**CANADIAN DEBTORS**

**(Motion for Approval of Protective Order)**
**(Returnable June 11, 2013)**

## I.    OVERVIEW

1.      The Monitor and Canadian Debtors request that this Court make a Protective Order in the

form attached as Appendix A of the Monitor's ninety-fifth report (the "Ninety-Fifth

Report").  It is anticipated that the U.S. Debtors will make a motion to the U.S. Court

seeking the same form of Protective Order.

2.      The proposed Protective Order covers documents containing information protected by

confidentiality agreements with third parties, sensitive personal and compensation

information of individuals, and other sensitive, non-public information whose disclosure

could harm the interests of third parties including the purchasers of the debtors' various

lines of business. These are precisely the type of documents whose confidentiality the

- 3 -

courts, including the Supreme Court of Canada, have found there is an important public interest in protecting.

3.      The Protective Order balances the Core Parties' interest in preparing the case for trial with the need to protect the confidentiality of certain documents in a practical manner in the context of CCAA litigation moving very quickly toward a January 6, 2014 trial date. It provides for disclosure to counsel, witnesses and party representatives to be examined for discovery, experts, and Court-appointed Monitors, Trustees and Administrators, even of information designated "highly confidential".  It also preserves the parties' rights to challenge the designation of documents as "confidential" or "highly confidential", sets out a procedure for the parties to attempt to resolve such challenges between themselves and specifies that, if Court intervention is necessary, the burden will be on the producing party to justify the designation.

4.      The proposed Protective Order reflects the unique nature of the discovery process in this unique joint insolvency proceeding. Discovery is taking place within strict time constraints and, given the cross-border nature of this proceeding, without the full protection of the deemed undertaking usually applicable in an Ontario proceeding.  The designation as "highly confidential" or "confidential" of large blocks of documents which are known to contain at least some information that requires protection ensures the most rapid and cost-effective resolution of the issues so as to maximize recovery for all stakeholders.

5.      With respect to the trial itself, the Protective Order explicitly provides for the parties to meet, confer and seek instructions from the Courts as necessary prior to trial regarding the use of confidential material at trial, and reserves all of the parties' rights with respect

to trial procedures.  The Monitor and Canadian Debtor expect that, through the discovery process, both the universe of relevant documents and the universe of confidential documents will be considerably narrowed.  This should make it easier later in the process to design a more tailored confidentiality regime, if any, for trial.  Any remaining issue may be addressed at or around the anticipated pre-trial conference in November, 2013 or otherwise by the Courts.

6.      As a practical matter a Protective Order cannot be effective in this cross-border proceeding unless both this Court and the US Court made the same Order.  This reality has required the Core Parties to work and compromise on the form of proposed Protective Order that works practically in both jurisdictions while remaining compliant with the laws of both jurisdictions.  These discussions continue even after the filing of this factum in the hope of achieving universal consensus prior to the joint hearing on June 11, 2013.

## II.    FACTS

## A.    <u>Procedural Background</u>

7.      By Order dated April 13, 2013, this Court approved an allocation protocol and established Core Parties who may participate in the trial. The US Court granted a similar order approving the allocation protocol.

Ninety-fifth report of the Monitor dated June 5, 2013 (the "Ninety-Fifth Report"), at para. 10, Protective Order Motion Record, Tab 2.

8.      On May 15, 2013, this Court and the US Court approved orders establishing a Litigation Timetable and Discovery Plan.

Ninety-Fifth Report, at para. 11, Protective Order Motion Record, Tab 2.

9.     The trial has been set to commence January 6, 2014.   This proceeding involves the production at the discovery stage of a significant number of documents. Under the Litigation Timetable, document production must be substantially complete by July 22, 2013 (the "Document Production Period").   Rolling production is to start on June 10, 2013.

Ninety-Fifth Report, at para. 12, Protective Order Motion Record, Tab 2.

10.     On May 16 and 17, 2013, this Court and the US Court made interim Protective Orders.

Ninety-Fifth Report, at para. 27, Protective Order Motion Record, Tab 2.


**B.**     **Confidentiality Concerns**

11.     The Litigation Timetable and Discovery Plan provide for the production of documents in this proceeding. However, as set out below, production of documents must be carried out in a way that addresses the confidentiality concerns summarized below.

**Business Sale Confidentiality Concerns**

12.     The asset purchase agreements (the "Sale Agreements") for  many of the major business sales and the sale of Nortel's residual intellectual property contained extensive confidentiality clauses imposing confidentiality restrictions on the Sellers (the Nortel entities listed in the Sale Agreements many of which are Core Parties).

Ninety-Fifth Report, at para. 17, Protective Order Motion Record, Tab 2.

13.     Although the specific terms of the agreements vary, the confidentiality restrictions in each sale agreement generally prohibit the Sellers (or their affiliates) from disclosing competitively sensitive information relating to the business being sold (subject to certain exceptions). For example, certain of these provisions prohibit the Sellers (or their affiliates from) disclosing:

(a)     all confidential information relating to the business and assets being sold including trade secrets, customer lists, marketing plans and pricing information;

(b)     all competitively sensitive information and data related to the business, the assets and/or the Sellers (including intellectual property and competitively sensitive "business information"); and

(c)     all competitively sensitive, proprietary or confidential information that pertains to the assets (including any portions of notes, dockets, reports, analyses, compilations, studies, files, claim charts, or other documents or material, whether prepared by the Sellers or others, which contain or otherwise reflect such information) and all information on the Sellers disclosure schedules.

        Ninety-Fifth Report, at para. 18, Protective Order Motion Record, Tab 2.

14.     The permitted exceptions in the confidentiality clauses generally relate to the sale and approval process itself. Additionally, most or all the Sale Agreements provide that where required by applicable law, the Sellers may disclose confidential information, with advance notice to the purchaser in certain circumstances. There are two instances where the terms of the purchase agreements allow the Sellers to "share" information for the purposes of allocating proceeds.

Ninety-Fifth Report, at para. 19, Protective Order Motion Record, Tab 2.

15.     Despite the fact that Nortel no longer operates any business, the businesses themselves, now in the hands of third party buyers, continue to operate. The third party buyers, as evidenced by the terms of the Sale Agreements themselves, will be concerned with ensuring that documents related to the businesses that they are operating (or the assets they acquired), remain confidential. The Canadian Debtors (as well as the other Sellers) have contractual obligations to ensure this information is kept confidential.

Ninety-Fifth Report, at para. 20, Protective Order Motion Record, Tab 2.

16.     It is in the interest of most of the Core Parties to ensure that the confidentiality provisions of the Sale Agreements are not breached and the estates are not exposed to liability.

**Third Party Contracts Assigned to Purchasers Contain Confidentiality Clauses**

17.     In addition to the confidentiality obligations set out above, many of the contracts that Nortel had entered into (including those assigned to third party purchasers) contained confidentiality clauses about information commercially sensitive to those third parties. Indeed, in the context of the sales, in many instances potential buyers were not provided with copies of these sensitive contracts.  These confidentiality provisions must continue to be observed.

Ninety-Fifth Report, at para. 21, Protective Order Motion Record, Tab 2.

**Personal Information**

18.     The Canadian Debtors, the US Debtors and the EMEA Debtors are all subject to privacy and related laws in their various jurisdictions when it comes to personal information

(including personal information that is financial information). Furthermore, public disclosure of this information could be harmful to the individuals to whom the information pertains.

Ninety-Fifth Report, at para. 22, Protective Order Motion Record, Tab 2.

**Third Parties not involved in the Allocation Proceedings**

19.     The Monitor and the Canadian Debtors are still in the process of resolving several outstanding third party claims, including with Canada Revenue Agency and other government entities. The Monitor and Canadian Debtors understand that the US Debtors also have outstanding third party claims that remain unresolved and that the EMEA Debtors have not even commenced a process for addressing third party claims against them. The production of documents should be informed and shaped by those processes and not the public production of documents in the current process.

Ninety-Fifth Report, at para. 23, Protective Order Motion Record, Tab 2.

**C.      The Protective Order**

20.     In order to address the confidentiality concerns described above and others, the Monitor and the Canadian Debtors have worked with the other Core Parties to attempt to reach consensus on the terms of a form of Protective Order (the "Protective Order") and now propose that the form of Protective Order attached as Appendix A to the Ninety-Fifth Report be approved by this Court. The Monitor and Canadian Debtors are aware that the US Debtors will be seeking approval of the same form of Protective Order from the US Court.

Ninety-Fifth Report, at para. 24, Protective Order Motion Record, Tab 2.

**The Proposed Terms of the Protective Order**

21.     The proposed Protective Order imposes a designation system whereby "producing parties" may designate material as "confidential" or "highly confidential" if they reasonably believe such material meets specified criteria. Other parties have the right to object to such designations and ultimately, any unresolved disputes may be resolved by the Court(s).

> Ninety-Fifth Report, at para. 25, Protective Order Motion Record, Tab 2.

22.     A summary of some of the key terms of the Protective Order is set out below:

(a)     The Protective Order will govern participation in discovery undertaken in connection with the litigation or arbitration of the allocation, EMEA claims, and UK pension claims, with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information produced ("Discovery Material") (section 1).

(b)     Discovery Material may be designated as "Highly Confidential Discovery Material" (section 2(b)) where the Producing Party reasonably believes that it contains or constitutes:

(i)     personal information that requires the protections provided in the Protective Order, including, but not limited to, social security numbers, information about current or former employee compensation and/or benefits, health information and financial information;

(ii)    information required to be kept confidential pursuant to law or regulation; or

(iii)    information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party.

(c)    Discovery Material may be designated as "Confidential Discovery Material" (Section 3(b)) where the Producing Party reasonably believes that it contains or constitutes:

(i)    non-public proprietary information about a Party;

(ii)    non-public financial or accounting results or data;

(iii)    tax returns and other specified tax information;

(iv)    information subject to a non-disclosure agreement with a third party; or

(v)    confidential communications offered in mediation or compromise negotiations.

(d)    Highly Confidential Discovery Material will be maintained in confidence by any Receiving Party and may only be shared with permitted third parties as set out in the Protective Order (section 5). The persons with whom Receiving Parties may share Highly Confidential Discovery Material include:

(i)      current employees, officers and directors, and former employees currently retained as consultants or independent contractors, who previously had rightful access to or knowledge of such material,

(ii)     court-appointed Monitors, Trustees and Administrators,

(iii)    the employees of RLKS Executive Solutions LLC, the employees of Avidity Partners, LLC,

(iv)    outside or in-house counsel for the Parties or for members of a committee or group (where a Party is a committee or group),

(v)     litigation support personnel,

(vi)    persons expected to be deponents, trial witnesses or hearing witnesses in the Proceedings and counsel to such persons, provided that counsel providing the material has a good-faith basis for believing that such witnesses had prior rightful access to or knowledge of the material,

(vii)   witnesses designated pursuant to Rule 30(b)(6) of the U.S. Federal Rules of Civil Procedure and party representatives designated for discovery examination pursuant to the Ontario Rules of Civil Procedure or alternative procedures agreed to by the Parties,

(viii)  experts,

(ix)    Court personnel, and

- 12 -

(x)     any other person upon written agreement of the Producing Party, provided they execute a non-disclosure agreement, any other person upon order of the Court(s), and any other person as required by law.

(e)     Confidential Discovery Material will be maintained in confidence by any Receiving Party and may only be shared with permitted third parties as set out in the Protective Order. Those with whom Receiving Parties may share Confidential Discovery Material include parties or persons to whom Highly Confidential Discovery Material may be disclosed, current employees, officers, or directors of a Receiving Party, former employees of a Receiving Party and persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons (section 6).

(f)     Confidential or Highly Confidential Discovery Material shall not be filed in the public record absent consent of the Producing Party or an order of the Court(s) so permitting (section 8).

(g)     The entry of this Protective Order by the Courts shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any further order of either Court required.

(h)     The Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding

the use of Confidential or Highly Confidential Discovery Material at such trial or hearing. The Parties reserve all rights with respect to trial procedures.

(i)     Producing or receiving Confidential or Highly Confidential Discovery Material does not prejudice a Producing Party's rights, including the right of a Party to seek a determination by the Court(s) whether any Discovery Material should be treated as Confidential or Highly Confidential Discovery Material or subject to the terms of this Protective Order.  Any Party may object to the designation of Discovery Material as Confidential or Highly Confidential and, absent consensual resolution within seven business days, may seek a ruling from the Court(s). The burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure (sections 10 and 11).

(j)     Allocation Dataroom Documents (the mediation database) will be treated as Confidential Discovery Material unless marked as "Highly Confidential Discovery Material" within 21 days following the Effective Date.  If a Party objects to the designation of specifically identified documents in the Allocation Dataroom, the Producing Party shall reconsider such designation and within ten (10) days either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material (section 20).

Ninety-Fifth Report, at para. 26, Protective Order Motion Record, Tab 2.

**D.**     **Current Status of the Protective Order and Known Objections**

23.     The proposed Protective Order represents the result of negotiations and compromises agreed to by the Monitor and the Canadian Debtors, the US Debtors and the Committee, the EMEA Debtors, the UK Pension Claimants, the CCC and other Core Parties. Certain steps have already been accomplished. In particular, on May 16, 2013, this Court granted an Interim Protective Order to allow Core Parties who did not previously have access to the Allocation Dataroom to gain immediate access to those documents. A similar order was granted by the US Court.

Ninety-Fifth Report, at para. 27, Protective Order Motion Record, Tab 2.

24.     In accordance with the Litigation Timetable, on May 17, 2013 the Monitor and the Canadian Debtors served and filed their proposed Protective Order. In response, the UK Pension Claimants and the CCC also served their proposed Protective Orders. Other than the differences set out in those proposed forms, neither the Monitor nor the Canadian Debtors is aware of any remaining concerns with the proposed Protective Order.  The Monitor continues to work toward resolving these concerns.

Ninety-Fifth Report, at para. 28, Protective Order Motion Record, Tab 2.

**III.     LAW AND ARGUMENT**

25.     It is trite law that a confidentiality order may be granted when:

(a)     such an order is necessary in order to prevent a serious risk to an important interest, including a commercial interest, in the context of litigation because reasonably alternative measures will not prevent the risk; and

(b)      the salutary effects of the confidentiality order, including the effects on the right

of civil litigants to a fair trial, outweigh its deleterious effects, including the

effects on the right to free expression, which includes the public interest in open

and accessible court proceedings.

> *Sierra Club v. Canada (Minister of Finance),* [2002] 2 S.C.R. 522 at para. 53

**(b)      The Protective Order is necessary to prevent a serious risk to an important interest because reasonably alternative measures will not prevent the risk**

26.      An "important commercial interest" is one which is not merely specific to the party

requesting the order but engages a public interest in confidentiality. Where, as here,

exposure of information, such as Nortel customer lists and licensee information, would

cause a breach of a confidentiality agreement, the general commercial interest of

preserving confidential information is engaged. The preservation of the confidentiality of

information protected by contractual obligations of confidentiality constitutes a

sufficiently important commercial interest to pass the first branch of the test as long as

the information has been accumulated with a reasonable expectation of its being kept

confidential and its disclosure could reasonably harm the interests of the parties to the

confidentiality agreement.

> *Sierra Club* at paras. 55, 59-61

27.      Following *Sierra Club,* the courts have recognized that "there is a broad public interest in

preserving contractual confidentiality obligations and in preserving the confidential

information of non-parties." (This is to be distinguished from the protection of financial

information on the sole basis that its disclosure would imperil the commercial interests of

a party to the proceeding, as was at issue in *Pattison Outdoor Advertising LP v. Toronto (City),* 2012 ONCA 212.)

> *Andersen v. St. Jude Medical, Inc.* 2010 ONSC 5191 (S.C.J.) at para. 19

28.    The concern to preserve the confidential information of non-parties extends to the protection of sensitive personal and compensation information. (This is to be distinguished from the protection of similar information relating to a party itself, the issue addressed in cases such as the *M.E.H. v. Williams,* 2012 ONCA 35 (CanLII).)

> *Re Canwest Global Communications Corp.,* [2009] O.J. No. 4286 at para. 52
> (S.C.J.—Commercial List)

29.    Where the confidential information sought to be protected is of a particularly sensitive nature, courts have been willing to restrict its disclosure to counsel and experts unless such a restriction is unduly prejudicial. Where there is no evidence that the receiving party's solicitors would be unable to properly conduct the case without input from their clients, such a Protective Order represents an appropriate balancing of the disclosure necessary for the conduct of an action and a party's right to protection of confidential and sensitive information.   There is no such evidence that has been put forward in this proceeding.

> *Shaw v. Shaw,* [2007] O.J. No. 4999 at paras. 15-16, 4 (S.C.J.)
>
> *Reichmann v. Toronto Life Publishing Co.,* [1990] O.J. No. 538 (H.C.J.) at p. 3 of QL print-out

30.    While Protective Orders of this nature are most often imposed in cases involving direct business competitors, they are not restricted to such situations. Anderson J. pointed out in granting a Protective Order preventing the disclosure to the defendants Toronto Life

Publishing Co. and others of the financial statements of the corporate plaintiff Olympia &

York Developments Limited that:

> It is indiscriminate disclosure which is of concern and no authority is
> required for the proposition that the danger of such disclosure is directly
> increased with an increase in the number of persons having the
> information. If the defendant's solicitors find a legitimate need to make
> some disclosure to the defendants, leave may be sought.
>
> *Reichmann v. Toronto Life Publishing Co.*, [1990] O.J. No. 538 (H.C.J.) at p. 3
> of QL print-out

31.     The proposed Protective Order's criteria for designating information as "confidential" or

"highly confidential" reflect these principles. For example, the proposed Protective Order

would allow a Producing Party to designate as "highly confidential" material that it

reasonably believes in good faith contains personal information including information

about employee compensation, or information of a commercially sensitive nature subject

to a non-disclosure agreement with a third party, and to designate as "confidential

information" subject to a non-disclosure agreement with a third party.

> Protective Order, paras. 2(b) and 3(b)

32.     Canadian courts have recognized that the unique circumstances of CCAA proceedings

can give rise to the need for confidentiality orders. Strathy J., in a recent decision,

reviewed the application of the *Sierra Club* test in various contexts and noted that sealing

orders had been granted in several Ontario cases under the CCAA "where the release of

commercial information would have undermined the efficacy of the proceedings or

prejudiced the position of stakeholders."

> *Fairview Donut Inc. v. TDL Group Corp.*, [2010] O.J. No. 502 at para. 45
> (S.C.J.)
>
> See also:

*Re Nortel Networks Corp.,* [2009] O.J. No. 4487 at para. 38 (S.C.J.—Commercial List), sealing the confidential appendices to the Monitor's Report concerning an asset sale.

*Re Canwest Global Communications Corp.,* [2009] O.J. No. 4286 at paras. 51-52 (S.C.J.—Commercial List), sealing Key Employee Retention Plans ("KERPs") that revealed individually identifiable information and compensation information on the basis that protection of sensitive personal and compensation information, the disclosure of which could cause harm to the individuals and the debtor companies, was an important commercial interest that should be protected and thus met the first branch of the test, and that, the aggregate amount of the KERPs having been disclosed, the individual personal information added nothing, such that the second branch of the test was met.

*Re Stelco Inc.,* [2006] O.J. No. 275 at paras. 2-3 (S.C.J.—Commercial List), issuing a sealing order allowing the redaction of material related to the debtor's revenues, selling prices and profitability on the basis that reasonable alternative measures would not prevent the risk to the debtor and that the salutary effects of the order, including the ability of the participants in the proceeding to deal reasonably pursuant to Non-Disclosure Agreements with submissions related to the confidential financial information, outweighed its deleterious effects, and finding the negative effect on the open court concept "minimal".

33. Often, in insolvency litigation, there will be no "reasonably alternative measures" available under the first branch of the *Sierra Club* test. As Iacobucci J. stated in *Sierra Club,* the Court must have regard to whether a proposed alternative measure is workable and effective; the test does not require that the "absolutely least restrictive option" be adopted.

*Sierra Club* at para. 66

34. Some of the balances struck in this proceedings' current litigation process are as follows:

(a)    It is not practical for all prior confidentiality agreements to terminate and be governed by the proposed Protective Order because the scope of the proposed Protective Order is not co-extensive with scope and parties involved in all the prior confidentiality agreements.  Confidential information outside the Discovery Material scope of the proposed Protective Order should continue to be governed by the applicable prior confidentiality agreements.

(b)      Non-public financial, accounting and tax information needs to be designated as "confidential" given:

(i)      the broad scope of the confidentiality clauses included in the Sales Agreements, which in many instances includes "all competitively sensitive" information; and

(ii)     the fact that the Canadian Debtors continue to resolve their claims with Canada Revenue Agency and other taxing agencies.

(c)      the Protective Order allows access, even to highly confidential information, to counsel, experts, and party representatives designated for examination for discovery; this is sufficient to ensure that counsel is able to properly conduct the case, while preventing overly broad dissemination of sensitive confidential information.

(d)      Given the condensed timeframe contemplated by the Litigation Timetable, the real time requirement that Parties file confidential and highly confidential materials under seal avoids unnecessary and time consuming motions practice.

(e)      The Allocation Dataroom documents generally consist of (i) financial information and other documents from the original "deal" databases relating to the lines of business that were sold pursuant to the Sale Agreements; and (ii) additional financial and tax information relating to the lines of business that it was reasonably thought could be relevant to allocation and which on their face addressed certain document categories.   The documents produced by the Canadian Debtors were chosen by Nortel employees, not the Nortel legal or

financial advisors (or the Monitor or its advisors). Little or no review of those documents was done prior to their inclusion in the dataroom. Since their inclusion, there has been a limited review for relevance, but none for confidentiality. Given time constraints, cost considerations and limited resources, it is impractical and overly burdensome for the Producing Parties to be required to carry out a thorough review of those documents, particularly when it is anticipated that significant additional document requests will be made. Finally, it is not even known at this stage which of the documents produced will actually be used or referred to at trial: reviewing each of the 44,000 documents for confidentiality at this stage would serve no purpose. To the extent any disagreement subsists as to confidentiality by the time of the pre-trial, issues regarding the use of documents at trial can be resolved at that stage, as provided by the proposed Protective Order.

**(c)      The salutary effects of the Protective Order, including its effect on the right of civil litigants to a fair trial, outweigh its deleterious effects, including the public interest in open court proceedings**

35.      The proposed Protective Order provides for the broadest possible production within the shortest possible time at the least possible expense. It does so by enabling the Producing Parties to disclose all of the documents in the Allocation Dataroom – which is known to contain at least some documents of a confidential nature deserving of protection in accordance with established principles – before having reviewed every one of them for confidentiality, and to disclose any future documents subject to the protection of a confidentiality order where the Producing Party reasonably believes such protection to be

necessary. This is the only practicable way for the Producing Parties to meet their production obligations within the timeframe contemplated by the Litigation Timetable.

36.      The Protective Order requires that a Producing Party reasonably believe that a confidentiality designation is appropriate. While some documents are being so designated "en bloc", the Protective Order provides for challenges to the designation to be made and resolved between counsel, who are expected to co-operate in doing so expeditiously in accordance with the "three Cs" principle of communication, co-operation and common sense on which the Commercial List operates. Should recourse to the Court be necessary, the Protective Order clearly places the onus on the Producing Party to establish the reasonableness of the designation to the Court's satisfaction.

> Protective Order, para. 11(a): "Any party objecting to the designation of any particular Discovery Material … shall so inform the Producing Party, stating the grounds of the objection, and … they shall have seven (7) business days to attempt to resolve the objection, at the end of which the Party objecting to the designation may seek a ruling from the Court(s) … and provided further that the ***burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure.***" [Emphasis added.]

37.      As provided for by the draft Protective Order, issues relating to confidentiality at trial are left to a future good faith discussion by the parties and determination by the trial courts.

## IV.      ORDER REQUESTED

38.      The Monitor and the Canadian Debtors respectfully request that this Court approve the proposed Protective Order.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 7th day of June, 2013.

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Jay A. Carfagnini  LSUC#: 22293T
Peter Ruby  LSUC#: 38439P
Joseph Pasquariello  LSUC#: 37389C

Tel:    416.979.2211
Fax:    416.979.1234

Lawyers for the Monitor,
Ernst & Young Inc.

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

Derrick Tay  LSUC#: 21152A
Jennifer Stam  LSUC#: 46735J

Tel:  416.862.5697
Fax:  416.862.7661

Lawyers for the Canadian Debtors

**SCHEDULE "A"**
**LIST OF AUTHORITIES**

1.    *Sierra Club v. Canada (Minister of Finance)*, [2002] 2 S.C.R. 522

2.    *Andersen v. St. Jude Medical, Inc.* 2010 ONSC 5191 (S.C.J.)

3.    *Re Canwest Global Communications Corp.*, [2009] O.J. No. 4286 (S.C.J.—Commercial List)

4.    *Shaw v. Shaw,* [2007] O.J. No. 4999 (S.C.J.)

5.    *Reichmann v. Toronto Life Publishing Co.,* [1990] O.J. No. 538 (H.C.J.)

6.    *Fairview Donut Inc. v. TDL Group Corp.,* [2010] O.J. No. 502 (S.C.J.)

7.    *Re Nortel Networks Corp.,* [2009] O.J. No. 4487 (S.C.J.—Commercial List)

8.    *Re Stelco Inc.,* [2006] O.J. No. 275 (S.C.J.—Commercial List)

**For Discussion Purposes Only**
**DRAFT: 2 - June 7, 2013 at 7:38 PM**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED          Court File No. 09-CL-7950

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

|  | **ONTARIO** |
|---|---|
|  | **Superior Court of Justice** |
|  | **(Commercial List)** |
|  | Proceeding commenced at Toronto |
|  | **FACTUM OF ERNST & YOUNG INC.** |
|  | **IN ITS CAPACITY AS MONITOR AND** |
|  | **THE CANADIAN DEBTORS** |
|  | **(MOTION RE APPROVAL OF PROTECTIVE ORDER)** |
|  | **(RETURNABLE JUNE 11, 2013)** |

| **Goodmans LLP** | **Gowling Lafleur Henderson LLP** |
|---|---|
| Barristers & Solicitors | Barristers & Solicitors |
| Bay Adelaide Centre | 1 First Canadian Place |
| 333 Bay Street, Suite 3400 | 100 King Street West, Suite 1600 |
| Toronto, ON  M5H 2S7 | Toronto, ON  M5X 1G5 |
|  |  |
| Jay A. Carfagnini  LSUC#: 22293T | Derrick Tay LSUC#: 21152A |
| Peter Ruby LSUC#: 38439P | Jennifer Stam LSUC#: 46735J |
| Joseph Pasquariello LSUC#: 37389C |  |
|  |  |
| Tel:    416.979.2211 | Tel:    416.862.5697 |
| Fax:   416.979.1234 | Fax:   416.862.7661 |
|  |  |
| **Lawyers for the Monitor,** |  |
| **Ernst & Young Inc.** | **Lawyers for the Canadian Debtors** |

\6212110