IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
*In re* : Chapter 11
:
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
Debtors. :
: **Re: Docket No. 10598**
:
---------------------------------------------------------X

**JOINT OBJECTION TO THE MOTION OF THE UK PENSION CLAIMANTS
TO STRIKE THE JOINT OBJECTION TO THE AMENDED PROOFS OF CLAIM
FILED BY THE NORTEL NETWORKS UK PENSION TRUST LIMITED
(AS TRUSTEE OF THE NORTEL NETWORKS UK PENSION PLAN)
AND THE BOARD OF THE PENSION PROTECTION FUND**

Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "US Debtors" or "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee," and together with the US Debtors, the "US Interests"), hereby object (the "Objection") to the Motion of the UK Pension Claimants to Strike the Joint Objection to the Amended Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and the Board of the Pension Protection Fund, dated May 20, 2013 [D.I. 10598] (the "Motion to Strike"), filed by the Trustee of the Nortel Networks UK Pension Plan (the "UK Pension Trustee") and the Board of the Pension Protection Fund (the "PPF" and together with the UK Pension Trustee, the "UK Pension

---

[1] The US Debtors in these chapter 11 cases, along with the last four digits of each US Debtor's tax identification number, are: Nortel Networks Inc. ("NNI") (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. ("NN CALA") (4226). Addresses for the US Debtors can be found in the US Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

1

Claimants" or the "Claimants"). In support of this Objection, the US Interests respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Joint Claims Objection[2] filed by the US Interests was consistent with applicable law and procedure. No answer or motion was required in response to the Amended Claims.[3] Moreover, the Joint Claims Objection is far more substantive and informative to the Court and to the UK Pension Claimants than any answer of the sort that would be filed in response to an adversary proceeding complaint. It is for these reasons, and because the UK Pension Claimants had already received the Joint Claims Objection prior to supporting the approval of the Litigation Timetable and Discovery Plan, that the US Interests were genuinely surprised to be met with the Motion to Strike together with a motion to greatly shorten the US Interests' time to respond to the Motion to Strike.[4] The Motion to Shorten Notice was filed without prior consultation and left the US Interests with less than a day to respond. By the same token, it also is clear from their recent submissions that the UK Pension Claimants genuinely expected that the US Interests' response would be in the form of an answer or motion rather than an objection. The US Interests regret that this misunderstanding between the parties led to a chain reaction that did not reflect the spirit of cooperation and civility between the parties that has prevailed to date in this important litigation, a spirit that the US Interests are confident will prevail going forward.

---

[2]    Joint Objection to the Amended Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and the Board of the Pension Protection Fund, dated May 14, 2013 [D.I. 10519] (the "Joint Claims Objection").

[3]    There are two amended claims (collectively, the "Amended Claims," the "UK Pension Claims" or the "Claims") filed by the UK Pension Claimants against NNI and NN CALA, dated September 5, 2012, which are listed on the US Debtors' claim register as proof of claim numbers 8357 and 8358.

[4]    Motion to Shorten Notice Period With Respect to the Motion to Strike, dated May 20, 2013 [D.I. 10600] (the "Motion To Shorten Notice").

2. Despite the heated skirmish triggered by the Motion to Shorten Notice, the issue before the Court is narrow. The question is whether the US Interests were required to, or must, file an answer or motion rather than the Joint Claims Objection. For at least four reasons, the Court should conclude that the Joint Claims Objection satisfies the US Interests' obligations.

3. *First*, the UK Pension Claimants argue that an answer should be required because the Joint Claims Objection "makes no attempt to address the detailed allegations of fact and law asserted in the Amended Claims" (Motion to Strike ¶ 3) and thus they have been "left in the dark" and will be unable to "comply with the terms of the Discovery Plan" (Motion to Strike ¶ 25). This is not the case. The Joint Claims Objection both addresses the substance of the Amended Claims and provides the UK Pension Claimants with extensive guidance on the views of the US Interests on critical threshold legal issues. The Joint Claims Objection both provides more information than would an answer and serves as a preview of the US Interests' potential dispositive motions on these claims. Answers rarely provide such great detail, including factual and legal defenses, and they are never required to do so.

4. *Second*, the US Interests have read the arguments of the UK Pension Claimants to be that further particularization of the US Interests' positions is necessary for them to comply with the terms of the Litigation Timetable. The UK Pension Claimants, however, agreed to that Litigation Timetable after they received the Joint Claims Objection. In addition, since the Motion to Strike and related Motion to Shorten Notice were filed on May 20, 2013, substantial progress has been made on discovery. Document requests and interrogatories were served on May 22, 2013 by all parties (including the UK Pension Claimants) and since then all parties have worked together in good faith (participating in an all-day meet and confer in Toronto on Thursday, June 6 and follow-up telephone conferences nearly the entire day yesterday, Sunday,

June 9, until after 10pm) to narrow the scope of discovery for these litigations. During this process, largely coordinated by the US Debtors, all parties have worked hard to agree, where possible, on a consolidated list of discovery requests and interrogatories that would be accepted by all parties without the need for objections or to drag the Courts into resolving any such objections. While the UK Pension Claimants correctly foreshadowed that they would serve very broad discovery requests, the receipt of the Joint Claims Objection rather than an answer or a motion to dismiss their Amended Claims does not appear to have hampered the UK Pension Claimants from participating fully in the successful kick-off of the discovery process, and the breadth of the requests (which the US Interests do not concede is proper) does not appear to relate to matters that would be resolved by an answer or motion rather than an objection.

5.      *Third*, the US Interests are not required, and never agreed, to file an answer or motion to the Amended Claims. Nor did the US Interests waive the right to file an objection to the Amended Claims. To explain these points, it is best to go back to the beginning. The initial claims filed by the UK Pension Claimants in 2009 were placeholder claims and insufficient on their face. Rather than merely object on the basis of that insufficiency, the US Debtors filed the Motion for a More Definite Statement.[5] The Motion for a More Definite Statement was the US Debtors' attempt to compel the UK Pension Claimants to file more than a placeholder claim, one to which an objection could be crafted and filed.[6] The Court's Order Requiring a More Definite

---

[5]   Objection to the Proofs of Claims Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and the Board of the Pension Protection Fund, and Motion for an Order Requiring a More Definite Statement of Claim, dated June 11, 2012 [D.I. 7818] (the "Motion for a More Definite Statement").

[6]   As noted in paragraph 4 of the Motion for a More Definite Statement, the UK Pension Claimants had already filed substantive amended claims against the Canadian Debtors in substitution for the placeholder claims filed previously in those proceedings.

Statement[7] did not require that the Debtors respond to the Amended Claims by filing an answer or a motion; indeed, had the UK Pension Claimants filed a claim with sufficient detail at the outset, there would be no doubt that the US Interests would have been entitled to respond by objection. While the US Interests asked the Court to exercise its discretion to apply a specific portion (subparagraph (e)) of Federal Rule of Civil Procedure 12[8] at that time, with which the Court agreed, the Motion for a More Definite Statement did not create an adversary proceeding and the order granting that motion did not require that a Rule 8 answer or Rule 12(b) motion be made after the Claimants filed a more definite statement.

6.    *Fourth*, the UK Pension Claimants do not explain why the Court should exercise its discretion to apply Rule 8 or Rule 12(b) here, instead implying only that they have somehow been prejudiced, that their due process rights have been violated and that they may be unable to comply with discovery. The purpose of the 43-page Joint Claims Objection was to provide the Court and the Claimants with at least as much information as would be provided in a Rule 12(b) motion to dismiss and is far more informative than an answer. More than 200 paragraphs of the Amended Claims consist of discussions of facts and law that have no relevance to the Debtors or for which an answer would otherwise not narrow issues in dispute. These paragraphs include lengthy discussions of the U.K. statutory framework, the automatic stay litigation, the U.K. administrative proceedings in which the Debtors did not participate, the funding of the NNUK Pension Plan and several transactions to which NNI and NN CALA were not parties. These are not allegations of facts that are susceptible to admission or denial via an answer, and many are

---

[7]    Order Requiring the Trustee for the Nortel Networks UK Pension Plan and the Board of the Pension Protection Fund to File a More Definite Statement of Claim, dated July 11, 2012 [D.I. 7984] ("Order Requiring a More Definite Statement").

[8]    Federal Rule of Civil Procedure 12 is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012.

not allegations of fact at all.  By filing the Joint Claims Objection rather than an answer, the US Interests were able to provide significantly more information as to their position and defenses.

7. The US Interests have no doubt that the Amended Claims are without merit and can and should be disposed of before trial.  However, given the tight timeframe under which the parties are operating, rather than filing a motion to dismiss, the US Interests have been laser-focused on expediting discovery and eliminating obstacles to a prompt and final disposition of the intertwined issues relating to allocation, the Amended Claims and the claims of the Joint Administrators.  It is for this reason that the US Interests championed and agreed to a schedule, the Litigation Timetable, providing that pre-trial motions be addressed after discovery, not before.[9]  The Joint Claims Objection was consistent with this framework.  If, however, it is determined that the filing of the Amended Claims amounted to the commencement of an adversary proceeding and as such required an answer or a motion from the US Interests, the US Interests reserve the right to file a motion to dismiss these claims – claims that exist solely as a result of a UK statutory scheme, as interpreted by the UK Pension Claimants, that would pierce the corporate veils of two US corporations (one a Delaware corporation and the other a Florida corporation) to fund recoveries to individuals who never worked for these US Debtors and who are beneficiaries of pension plans over which these US Debtors had no influence or control.

8. For the reasons set forth herein, the Motion to Strike should be denied so that all parties can focus their efforts on the monumental tasks at hand in respect of discovery, with dispositive motions being filed at a later time consistent with the Litigation Timetable.

---

[9]  The already streamlined Litigation Timetable tentatively lists December 13, 2013 as the date to file "pre-trial" motions with the Courts.  The US Interests read December 13, 2013 as the deadline by which dispositive motions and motions in limine must be filed, although as with all deadlines, there is no bar to moving earlier.  The US Interests reserve the right to elect to brief and argue a motion to dismiss the Amended Claims during the summer, while also proceeding diligently with pre-trial discovery.

**OBJECTION**

**A.     The US Interests Are Not Required to File an Answer**

9.      The US Interests are not required to, and have never agreed to, file an answer to the Amended Claims.  Nor have the US Interests waived the right to file an objection to the Amended Claims.

10.     The US Debtors filed the Motion for a More Definite Statement on June 11, 2012, asking the Court to exercise its discretion to apply Rule 12(e) of the Federal Rules of Civil Procedure to the placeholder proofs of claim originally filed by the UK Pension Claimants for the narrow purpose of requiring the Claimants to file a more definite statement of their claims. *See* Motion for a More Definite Statement at 14, Section I ("The Court Should Apply Rule 12(E) to the Proofs of Claim and Require A More Definite Statement of Claim, Including By Attaching All Supporting Documentation").  The Court granted the motion on July 11, 2012, shortly after the UK Pension Claimants had exhausted their appeal (through to a denial of their petition for certiorari) to have the substance of these claims litigated in the United Kingdom.  *See* Order Requiring a More Definite Statement.

11.     The Debtors never agreed that the filing of the Amended Claims (which merely articulated the claims in the manner they should have been articulated in the first place) would cause Bankruptcy Rule 7012—which applies to adversary proceedings, and may be applied in contested matters only by order of the Court—to apply to the Claims for all purposes.  In fact, in the Debtors' Reply in support of the Motion for a More Definite Statement, the Debtors explicitly reaffirmed the general rules applicable to Proofs of Claim, noting that "[i]t does not follow, however, and Claimants cite no authority to support their contention, that if the federal pleading rules apply, their Proofs of Claim should be treated as complaints and the requirements

7

of Bankruptcy Rule 3001 should not apply." Debtors' Reply in Further Support of their Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and the Board of the Pension Protection Fund, and Motion for an Order Requiring a More Definite Statement of Claim, dated July 6, 2012 ¶ 9 [D.I. 7942].

12.     At the hearing regarding the Motion for a More Definite Statement, counsel for the Debtors further stated explicitly that they were not seeking to convert the claims dispute from a contested matter to an adversary proceeding.

> "[I]n bringing th[e] motion, we are not seeking conversion to an adversary proceeding . . . We're not invoking the entire adversary proceeding system. What Your Honor has the discretion to do is take those parts of the . . . bankruptcy procedure, and bring them into the proof of claim setting. So it's still a proof of claim . . . It doesn't convert it to a complaint, but it does have to plead like a complaint."

(Tr. of July 11, 2012 Hr'g at 90:20-91:11 [D.I. 8011]). The purpose behind the request that the Court use its discretion to apply Rule 12(e) was to permit the US Interests to know, with particularity, the basis for whatever claims the UK Pension Claimants are asserting against NNI and NN CALA. The original claims were without substance and amounted to mere placeholder claims. The prior allegations made against NNI and NN CALA in the Warning Notice—which was secret under UK law until the UK Pension Claimants finally allowed both the Court and the Committee to see the document—were almost entirely allegations referencing the Canadian Debtors. Invocation of Rule 12(e) was aimed at making it as clear as possible that the US Interests required any claims asserted by the UK Pension Claimants to be stated with particularity.

13.     In addition, the UK Pension Claimants' assertion that the US Interests owed them an answer or other responsive pleading long ago is simply incorrect. It was in August

8

2012, shortly after the granting of the Motion for a More Definite Statement and *prior* to the filing of the Amended Claims themselves, that the Court stayed further proceedings on other similar claims filed by the Joint Administrators and admonished the parties to focus exclusively on the resolution of all matters through mediation. As soon as that mediation concluded, the US Interests sought to restart these proceedings and began working on their objection and the numerous other tasks required by the Court.

14. With this background, it is clear that the Court's Order Requiring a More Definite Statement did not convert the entire proceeding from a contested matter under Part III of the Bankruptcy Rules to an adversary proceeding under Part VII of the Bankruptcy Rules or expand the application of Bankruptcy Rules 7008 and 7012 to the entire course of the proceedings. Instead, the Court merely required Claimants to "serve a more definite statement of their Claims on or before September 5, 2012, which shall attach supporting documentation." Order Requiring a More Definite Statement ¶ 2. The Court exercised its discretion to apply Bankruptcy Rule 7012 for the narrow issue of requiring the filing of more detailed amended proofs of claim. The Claimants cite to no case law which suggests that the limited invocation of Bankruptcy Rule 7012 to one particular type of pleading and at one particular stage of the proceedings makes the rule applicable to the entire proceedings. To the US Interests' knowledge, no such case law exists.

15. Objections are the standard responsive pleading to a proof of claim in claims proceedings. *See* Fed. R. Bankr. Pro. 3007; *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173 (3d Cir. 1992). In the context of a claims proceeding, such as the case at bar, an objection serves the same role as a "responsive pleading" under Bankruptcy Rule 7012 in adversary proceedings. *See, e.g.*, *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552 (5th Cir. 1985) ("It has been

9

said that the filing of a proof of claim is tantamount to the filing of a complaint in a civil action . . . and the trustee's formal objection to the claim, the answer."); *In re Lomas Fin. Corp.*, 212 B.R. 46, 55 (Bankr. D. Del. 1997) ("[A] claim objection proceeding (often in the form of an omnibus objection to claims) is fundamentally different from a conventional adversary proceeding in that the objection is, in essence, a responsive pleading—the proceeding having been initiated by the filing of a proof of claim, not by the filing of the objection. Thus, the objection may be viewed as an answer to the proof of claim.").

16. The cases cited by the Claimants that purportedly support the necessity of a responsive pleading in the form of an answer are entirely inapposite. *In re Valentino's Restoration & Cleaning Serv.*, 215 B.R. 153 (Bankr. N.D. Ill. 1997), involved a debtor that had responded to the claimant's *complaint*, not to a proof of claim, with a *legal memorandum*, not an objection, in which it conceded the claimant's version of the facts but contended that the claimant had erred on legal theory. *Id.* at 154 n. 1. In other words, the *Valentino's* Court determined that the debtor had admitted all of the factual allegations outlined in the complaint, because it had, in fact, admitted them. *In re Brooks Shoe Mfg. Co., Inc.*, 21 B.R. 604 (Bankr. E.D. Pa. 1982), involved a case where defendant filed an *answer* to plaintiff's *complaint*, which answer failed to deny *any* of the allegations in the complaint. *Id.* at 606 n. 2. This is plainly not the case with the Joint Claims Objection. Both cases cited also involved adversary proceedings, to which Bankruptcy Rule 7012 automatically applies, rather than contested claims proceedings to which it does not automatically apply. *Id.* at 606; *In re Valentino's*, 215 B.R. at 154.

**B. An Answer Would Not Narrow the Issues in Dispute**

17. Moreover, given the nature of the Claims, the Joint Claims Objection is more responsive to the UK Pension Claims than "an answer complying with the pleading requirements of Bankruptcy Rule 7008 or a motion under Bankruptcy Rule 7012," would have been. (Motion

10

to Strike ¶ 1.) The Joint Claims Objection addresses the Claims' failure to plead facts that would warrant an imposition of liability on NNI or NN CALA and also sets forth at length the various other legal and factual grounds that warrant disallowance of the Claims, thereby better positioning the UK Pension Claimants to "identify their own relevant fact and expert witnesses, or witnesses from other parties to be deposed, as well as [ ] to determine how properly to focus the questioning of witnesses in depositions or at trial" (Motion to Strike ¶ 26) than an answer or motion would.

18. The vast majority of the allegations in the Claims consist of either legal allegations to which no response would be needed or factual allegations that concern NNUK's role within the Nortel group or transactions to which NNI or NN CALA were not parties, to which the Debtors largely lack the information and knowledge to respond. For example, the Claims discuss:

- various research and development activities and other services allegedly performed by NNUK (Claims ¶¶ 89-138);

- the NNUK Pension Plan and the funding thereof (Claims ¶¶ 13, 17, 42-43, 139-141);

- various transactions to which neither NNI or NN CALA were parties (Claims ¶¶ 187-206, 216-227);

- the UK statutory framework (Claims ¶¶ 230-263);

- the UK administrative proceedings in which the Debtors did not participate (Claims ¶¶ 264-278); and

- other legal conclusions (Claims ¶¶ 17-19, 279-283, 286-308, 320-325).

11

While the US Interests would have been within their rights to file an answer saying that the US Interests lack the information and knowledge to respond, or that no response is required with regard to the vast majority of these allegations, the US Interests instead filed the Joint Claims Objection, which addresses many of the factual allegations and legal conclusions and explains why they do not provide a basis for allowance of the Claims, providing much more information than an answer would give.  (Joint Claims Objection ¶¶ 35-73.)[10]

19.    Of the allegations that do involve NNI or NN CALA, or as to which the Debtors otherwise have enough knowledge or information to respond, the Joint Claims Objection often provides information above and beyond that which an answer would have provided.  For example, the Joint Claims Objection not only denies the Claimants' allegation that NNI "jointly controlled the Group Tax and Group Treasury functions" (Claims ¶ 78) but goes well beyond an answer by also explaining that this allegation contradicts prior representations by the EMEA Debtors to the High Court of Justice of England and Wales in connection with the commencement of their administration proceedings (Joint Claims Objection ¶ 50).  The Joint Claims Objection addresses the allegation that the Debtors were "involved in the Group's pension policy and directly with the management and funding of the Plan" because a number of individuals who were NNI and NN CALA directors at various times also served on the UK Pension Fund Policy Committee, (Claims ¶¶ 213-15), not merely by denying the allegation of NNI's involvement in the NNUK Pension Plan (Joint Claims Objection ¶¶ 63-69), but also by explaining why the listed individuals' alleged membership in the UK Pension Fund Policy Committee is irrelevant to the question of the US Debtors', as opposed to the Canadian Debtors',

---

[10]    Similarly, the Joint Claims Objection, which is 43 pages and 87 paragraphs long and contains several legal grounds warranting disallowance of the Claims, includes at least as much particularization of the US Interests' position as a "motion under Bankruptcy Rule 7012" (Motion to Strike ¶ 1), such as a motion to dismiss on grounds of a failure to state a claim upon which relief can be granted, would have provided.

involvement with the NNUK Pension Plan (Joint Claims Objection ¶ 63). By way of further example, the Joint Claims Objection also responds to the Claimants' allegations about Project Swift (Claims ¶¶ 200-206) by denying US Debtor involvement in the transaction and providing additional facts about the Claimants' involvement in that transaction that the Claims had neglected to mention (Joint Claims Objection ¶¶ 57-59).

20. In light of the foregoing, the US Interests were both surprised, and admittedly frustrated, that the UK Pension Interests filed the Motion to Strike and sought an emergency hearing on an extremely tight time-frame while the parties were busy on other significant matters in this litigation, without prior consultation—not even a phone call. The gravamen of the Motion to Strike—the assertion that the Joint Claims Objection somehow leaves the Claimants "in the dark" as to the US Interests' position such that the Claimants may not be able to comply with the Discovery Plan (Motion to Strike ¶ 25)—is plainly wrong. The US Interests have filed a responsive pleading that is replete with reasoned denials and substantive rebuttals, both on the facts and on the law. If it is determined that the Joint Claims Objection is somehow insufficient, then the US Interests respectfully request that the Court enter an order setting a schedule for the US Interests to file a motion to dismiss or answer, and requiring the parties to continue to participate in discovery pending resolution of any such motion to dismiss should one be filed.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, the US Interests respectfully request that the Court (i) deny the Motion to Strike and (ii) grant such other and further relief as is just and appropriate under the circumstances.

Dated: June 10, 2013
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the US Debtors*

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036

Telephone: (212) 872-1000
Facsimile: (212) 872-1002

   - and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee
of Unsecured Creditors*