## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.,*[1]

                     Debtors.

--------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: June 25, 2013 at 10:00 a.m. (ET)**
**Objections due: June 18, 2013 at 4:00 p.m. (ET)**

**RE: D.I.s 9598, 9600, 9647, 9665, 9674, 10151, 10170, 10186, 10452, 10454, 10603, 10730, 10731, 10732, 10741, 10742, 10744, 10850, 10851, 10852, 10853, 10854, 10848, 10866, 10867, 10869, 10870, 10872, 10873, 10874, 10875, 10876, 10877, 10879, 10885, 10886, 10887, 10888, 10889, 10890, 10891, 10893, 10894, 10895, 10896, 10897, 10898, 10900, 10901, 10903, 10904, 10906, 10907, 10908, 10922, 10923, 10925, 10926**

## DEBTORS' SUPPLEMENTAL OMNIBUS OBJECTION TO VARIOUS NORTEL US LTD EMPLOYEES' MOTIONS COMPELLING DEBTORS TO ADMIT MY CLAIM FOR SEVERANCE ALLOWANCE AS VALID PER NORTEL NETWORKS SEVERANCE ALLOWANCE PLAN AND ISSUE PAYMENT

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby respectfully submit this supplemental omnibus

objection (the "Supplemental Objection"), to the *Motion Compelling Debtors to Issue Payment*

*for Severance Per Nortel Networks Severance Allowance Plan Upon Debtors Planned*

*Termination of My Employment on June 30, 2013 by Mark R. Janis, a Nortel U.S. LTD*

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

*Employee*, filed on June 3, 2013 [D.I. 10741] (the "Janis Motion"), the *Ralph MacIver, Nortel*

*US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance Allowance as*

*Valid Per Nortel Networks Severance Allowance Plan and Issue Payment*, filed on June 14, 2013

[D.I. 10907], the *Bonnie J. Boyer, Nortel US LTD Employee, Motion Compelling Debtors to*

*Admit My Claim for Severance Allowance as Valid Per Nortel Networks Severance Allowance*

*Plan and Issue Payment*, filed on June 18, 2013 [D.I. 10926] and all Joinders to the Janis Motion

(the "Joinders") (collectively, the "June Motions").[2]

## FACTS RELEVANT TO THE OBJECTION

1.      As this court is aware, eight individuals who are current or former LTD

Employees filed motions seeking to compel the Debtors to pay them severance as a result of their

scheduled separation from the Debtors.[3]  In response to those motions, on June 2, 2013, the

Debtors filed the *Debtors' Omnibus Objection to Various Nortel US LTD Employees' Motions*

*Compelling Debtors to Admit My Claim for Severance Allowance as Valid per Nortel Networks*

---

[2]      A list of the June Motions filed to date it attached hereto as Exhibit A.  The Debtors reserve all of their rights and defenses against any motion filed in the future, or not otherwise listed on Exhibit A.

[3]      These motions include *Najam ud Dean, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment*, filed March 7, 2013 [D.I. 9598]; *Scott David Howard, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment*, filed March 7, 2013 [D.I. 9600]; *Remajos Brown, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment*, filed March 11, 2013 [D.I. 9647]; *Fred Lindow, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment*, filed March 15, 2013 [D.I. 9665]; *Estelle Loggins, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment*, filed March 18, 2013 [D.I. 9674]; *Vada Wilson Motion*, filed April 15, 2013 [D.I.s 10151 and 10730]; *John J. Rossi, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment*, filed April 18, 2013 [D.I. 10170]; *Dennis Wayne Bullock, Nortel US LTD Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment*, filed May 6, 2013 [D.I. 10454] (the "Previous Motions").  The Previous Motions, together with the June Motions filed by current and former long-term disabled individuals (the "Movants") are collectively referred to as the "LTD Severance Motions."

*Severance Allowance Plan and Issue Payment* [D.I. 10731] (the "Objection").[4]  Simultaneously

with the filing of the Objection, the Debtors also filed the *Declaration of John J. Ray III in*

*Support of Debtors' Omnibus Objection to Various Nortel US LTD Employees Motions*

*Compelling Debtors to Admit My Claim for Severance Allowance as Valid per Nortel Networks*

*Severance Allowance Plan and Issue Payment* [D.I. 10732] on June 2, 2013 (the "Ray

Declaration") to place documents relevant to arguments presented by the Previous Motions and

the Objection before the Court.

2.      Since the filing of the Objection, additional motions seeking payment of

severance – the Janis Motion and the MacIver Motion – have been filed and other long-term

disabled individuals have filed the Joinders, joining in the arguments asserted in the Janis Motion.

The Janis Motion was noticed to be heard at the June 25, 2013 hearing date along with the other

pending motions for payment of severance (the "Severance Motion Hearing"), with an objection

deadline of June 20, 2013.  The Joinders each set the same hearing date of June 25, 2013, but

changed the objection deadline to June 15, 2013.  As the Debtors indicated in the *Notice of*

*Objection to LTD Employees Joinders in Motion Compelling Debtors to Issue Payment for*

*Severance Per Nortel Networks Severance Allowance Plan Upon Debtors Planned Termination*

*of My Employment on June 30, 2013 by Mark R. Janis, a Nortel U.S. LTD Employee (D.I. 10741,*

*Filed 6/3/13)* [D.I. 10911] filed on June 14, 2013, while none of the Joinders were timely filed to

be heard at the Severance Motion Hearing, the Debtors are prepared to proceed with a hearing on

all of the LTD Severance Motions, including the Joinders, at the Severance Motion Hearing

because all of the LTD Severance Motions seek substantially the same relief.

---

[4]       Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the
Objection.

3.      The June Motions  make some of the same arguments set forth in the Previous

Motions, and also include additional arguments as to why the Movants should be entitled to

severance payments upon the termination of their employment.  While the Debtors sympathize

with the LTD Employees' desire to receive payments under the Severance Plans, these

arguments do not establish a right to severance.  The terms of the  Severance Plans govern any

right to payment of severance, and provide that an employee must be regularly scheduled to

work a minimum number of hours per week in order to be eligible, which prevents the LTD

Employees from being eligible for such severance payments.  The Debtors submit this

Supplemental Objection to respond to additional arguments raised by the June Motions, and

incorporate herein all of the arguments, facts and defenses raised in the Objection and the Ray

Declaration.

## BASIS FOR OBJECTION

4.      As set forth in more detail in the Objection, the LTD Severance Motions should

be denied because the clear language of the Severance Plans requires an individual to be an

"Employee" of the Debtors who is regularly scheduled to work a minimum number of hours per

week at the time of separation in order to be eligible for severance benefits.  See Severance Plans

§ 1.3(g), (i); Nortel Networks Severance Allowance Plan § 1.3(j).  Although they are classified

as current employees of the Debtors for administrative purposes, the LTD Employees are not

active employees and are not regularly scheduled to work at all during their period of disability,

and therefore are not eligible "Employees" within the stricter definitions of the Severance Plans

governing who is entitled to receive severance benefits.  The June Motions raise four main

arguments to counter the Debtors' position.

5.      First, the June Motions argue that because the Debtors have previously asserted

that the LTD Employees are not retired employees under section 1114 of the Bankruptcy Code,

then the LTD Employees are therefore employees of the Debtors who are eligible for severance.
<u>See</u> Janis Motion ¶¶ 17-18.  For purposes of administering the LTD Plans and the benefits
provided thereunder, the Debtors historically have identified the LTD Employees as current
employees of the Debtors.  However, that the LTD Employees are not retired employees does
not mean that they are "Employees" within the definition of that term in the Severance Plans.
Not all employees of the Debtors are "Employees" for purposes of the Severance Plans and, as
described below, the LTD Employees are not the only employees who do not satisfy the stricter
requirements of such definition.

   6.  In addition to not being eligible for severance while on long-term disability, the
LTD Employees' eligibility for benefits differed from that of the Debtors' active employees in
other respects as well.  For instance, pursuant to the Debtors' policy and practice, LTD
Employees are paid for their accrued vacation days upon transitioning from receiving short-term
disability benefits to receiving long-term disability income continuation benefits and do not
continue to accrue vacation pay during their leaves of absence.  Moreover, unlike the Debtors'
active employees, the LTD Employees are not permitted to increase optional life insurance or
optional accidental death and dismemberment coverage during the Debtors' annual benefit
enrollment periods.  <u>See, e.g.</u>, Nortel Networks Inc. Long-Term Disability Summary Plan
Description, 2009, at 8, attached to the *Declaration of John J. Ray III in Further Support of the
Joint Motion Pursuant to Sections 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules
9019 and 7023 to (A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C)
Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief* [D.I. 10318] as
<u>Exhibit 27</u>.[5]

---

[5]  Certain of the June Motions also allege that the LTD Employees are eligible for severance because their
termination as of June 30, 2013 is a result of a workforce reduction.  The Debtors do not respond to that argument

7.      The June Motions next argue that LTD Employees are "Employees" under the Severance Plans because they were regularly scheduled to work at least 20 hours per week at the time of their disability, and that is when the weekly service requirements should be measured.  See Janis Motion ¶ 17.  While the LTD Employees previously may have been eligible for severance as either Full-Time Employees or Part-Time Employees prior to the onset of their disabilities, both Severance Plans provide that as a condition precedent to receiving a severance allowance, an individual who otherwise qualifies for severance "must be an Employee . . . **on the day immediately preceding the effective date of his termination**."  See Severance Plans § 2.5 (emphasis added).  The LTD Employees currently are not regularly scheduled for work and will not actively perform services for the Debtors at any time prior to June 30, 2013.  Nor have any of the LTD Employees requested to return to being regularly scheduled to work as a result of a change in their medical status.  Accordingly, the LTD Employees will not be "Employees" within the meaning of the Severance Plans on the day immediately preceding their termination from the Debtors, and therefore do not meet the eligibility requirements that would entitle them to receive benefits under the Severance Plans.[6]

---

here other than to note their termination was part of a larger settlement, because it is, quite simply, irrelevant.  If an individual does not satisfy the definition of "Employee" under the Severance Plans, he or she is not eligible for severance benefits regardless of the cause for his or her separation from the company.  The Debtors reserve the right to raise additional arguments and defenses regarding the cause of the LTD Employees' loss of employment if such issues become relevant.

[6]      Similarly, Deborah Jones argues in the *Joinder of Deborah Jones in Support of Mark Janis' Motion (Docket No. 10741) "Compelling Debtors to Issue Payment for Severance Per Nortel Networks Severance Allowance Plan Upon Debtors Planned Termination of My Employment on June 30, 2013 by Mark R. Janis, a Nortel U.S. LTD Employe*e" [D.I. 10897]  (the "Jones Joinder"), that because the Debtors have in practice "preserved" LTD Employees' "Actively at Work" status by providing LTD Employees with benefits under certain other plans including the Nortel Networks Flex Overview, the Nortel Networks Inc. Dental/Vision/Hearing Care Plan and the Nortel Networks Inc. Life and Accidental Death & Dismemberment Insurance Plan, that LTD Employees are entitled to receive benefits under the Severance Plans.  See Jones Joinder at 3-7.  However, this argument lacks merit because the terms of each individual welfare plan is governed by the terms of its own document and eligibility for one benefit does not necessarily result in eligibility for another, particularly here where different definitions and eligibility criteria are applied.  Furthermore, as the Debtors have described above, in order to be eligible to receive severance under the Severance Plans, an "Employee" would have had to had been working at least 20 hours per week on the day immediately preceding the effective date of his or her termination.  Despite

8.      Alternatively, Mr. Janis suggests that "Full-time Employees" are only

"[g]enerally" "regularly scheduled to work at least 35 hours per week," so that there is some

latitude in the definition and LTD Employees can and should fall into an exception in the

definition.  See Janis Motion ¶ 19.  The relevant definitions or the eligibility requirements in

section 2 of the Severance Plans do not contain any such qualifying language in the relevant

definitions, and it appears that Mr. Janis is relying upon the Nortel Networks Severance

Allowance Plan Summary Plan Description 2001, attached as Exhibit A to the Janis Motion (the

"2011 Severance SPD") in support of his argument.  See 2011 Severance SPD at 3.  In particular,

the response to question number 2 in the 2011 Severance SPD regarding how to determine if an

individual is a Full-time or Part-time Employee covered under the Nortel Networks Severance

Allowance Plan states:  "**[g]enerally**, a Full-time Employee is one who is regularly scheduled to

work at least 35 hours per week."  See 2011 Severance SPD at 3 (emphasis added).

9.      However, the question and answer section of the 2011 Severance SPD does not

govern entitlement to benefits – the Severance Plans do.  See 2011 Severance SPD at 3.

Moreover, the definition of "Full-time Employee" in the glossary of the 2011 Severance SPD

matches the definition of "Full-Time Employee" in the Severance Plans, which states that a

"Full-Time Employee" means "an Employee who is regularly scheduled to work at least thirty-

five (35) hours per week, as determined solely by the Employer."  See 2011 Severance SPD at

14; Severance Plans § 1.3(i).  Accordingly, it is clear that the use of the word "generally" in the

question and answer section was not intended to carve out exceptions to the eligibility

requirements for severance for the LTD Employees or others.  Rather,  there are specifically

listed carve-outs for individuals who would otherwise satisfy the definition of "Employee," such

---

Ms. Jones's eligibility for employee benefits and income continuation throughout the period of her long-term
disability, she simply does not satisfy the requirements of the Severance Plans at issue.

as individuals covered by a collective bargaining agreement that does not provide for

participation in the Severance Plans, interns or an individual whose severance benefits are set

forth in a separate writing, which the glossary of the 2011 Severance SPD specifically

enumerates.  See 2011 Severance SPD at 14.  Again, although such carved out individuals may

be considered employees of the Debtors, they would not be "Employees" under the Severance

Plans eligible to receive benefits thereunder.  The Severance Plans contain lengthy definitions

regarding which individuals qualify as "Employees" for eligibility purposes and notably do not

contain an exception under which individuals out on "approved leaves of absence" would qualify

as eligible Employees.

       10.     The June Motions also note that under the Severance Plans, time spent away from

work on "medical and other authorized leaves of absence" such as long-term disability, is

included when calculating length of service for severance payments and is not a break in service.

See 2011 Severance SPD at 7; Janis Motion ¶ 20.  Mr. Janis argues that since there is no penalty

for medical or authorized leaves of absence when calculating years of service under the

Severance Plans for an otherwise eligible employee, all LTD Employees are therefore eligible

"Employees" under the Severance Plans even while they are disabled.  However, the language

relied on by Mr. Janis explains how length of service is determined if and only if an individual is

otherwise determined to be eligible for severance benefits under the definition of an Employee,

and does not amend or impact the underlying eligibility requirements.  See 2011 Severance SPD

at 7.  This provision contemplates that time spent on long-term disability may not be considered

a "break in employment" for calculating an LTD Employee's length of service for coverage

under the Severance Plans **if** the LTD Employee eventually comes back to work and ultimately

reestablishes himself as an eligible "Employee" under the eligibility provisions of the Severance

Plans who is regularly scheduled to work at least twenty hours per week prior to his or her separation from the Debtors.[7]

11.     Finally, the June Motions further argue that the LTD Employees are entitled to severance based on the terms of the Settlement Agreement and the payment of severance to other non-disabled employees.  Neither of these arguments creates an entitlement to severance for the Movants.  First, the June Motions note that because the Settlement Agreement, which generally resolved claims of LTD Employees related to the termination of their long-term disability benefits, excluded claims under the Severance Plans (along with a litany of other matters, such as claims against the Debtors' pension plans) from the scope of matters resolved by the settlement, the Settlement Agreement implies that severance claims would be allowed.  See Janis Motion ¶¶ 23-24; Settlement Agreement § 9(b)(ii).  However, the mere exclusion of severance claims from the Settlement Agreement results from the historic scope of negotiation of the settlement and does not constitute an agreement by the Debtors that the LTD Employees have any right to receive severance.  The LTD Committee was appointed to serve as the authorized representative of long-term disabled individuals in connection with negotiating a consensual modification or termination of the LTD Plans, and as the Debtors did not consider LTD Employees eligible for severance, they did not seek relief with respect to such severance claims at the start of such negotiations and it was not a focus of discussions with the LTD Committee.  While such claims

---

[7]     The Debtors assume *arguendo* for the limited purpose of responding to the LTD Severance Motions that long-term disability would be considered an authorized medical leave of absence, but reserve all rights and defenses with respect to the calculation of the LTD Employees' severance benefits should the LTD Severance Motions be granted.  Furthermore, the allowance of the LTD General Unsecured Claim (as defined in the Settlement Agreement) settled and finally resolved the LTD Employees' claims for benefits provided under the LTD Plans through the age of 65.  Upon reaching age 65, if the LTD Plans had not been terminated pursuant to the Settlement Agreement, the LTD Employees would have had no further entitlement to benefits provided under the LTD Plans and would have been considered to have voluntarily separated from the Debtors (and therefore not eligible to receive severance benefits under the Severance Plans) if they were unable to return to work or otherwise chose not to.  Consequently, paying severance to the LTD Employees at this time would ignore this important aspect of the compromise embodied in the Settlement Agreement.

were excluded from the scope of claims released by the Settlement Agreement, the LTD

Committee has not sought relief with respect such claims as a committee and nothing regarding

the merits of such claims should be read into the exclusion of severance claims from the releases

granted under the Settlement Agreement.

12.     Nor should the Debtors' allowance of any other individual's post-petition

severance claim have any bearing on the analysis here.  To the extent that the Debtors have

allowed severance claims of employees who have been terminated post-petition, such claims

have only been allowed as general unsecured claims reflecting the amount the Debtors believe

are owed based on the Severance Plans and their books and records.  Holders of such claims

have not received distributions at this time.  The issue is not that the Debtors are disallowing

valid severance claims – it is that the LTD Employees do not meet the requirements for

eligibility under the Severance Plans.

13.     The June Motions also suggest that the 2010 Notices sent to long-term disabled

individuals and the retirement election forms (the "Retirement Election Forms") distributed to

the LTD Employees in connection with the Settlement Agreement and the settlement reached

with the Official Committee of Retired Employees (the "Retiree Settlement") are evidence of the

Debtors' intent to pay the LTD Employees severance.  See Janis Motion ¶¶ 15, 19, 22.  As set

forth at length in the Objection, and incorporated by the Debtors herein, the 2010 Notices cannot

and do not amend or  modify the Severance Plans.  In the same vein, while the Retiree Election

Forms provided to LTD Employees who wanted to elect to participate in the Retiree Settlement

did confirm that the LTD Employees would formally retire and waive any claim for severance as

part of that election, the Retirement Election Forms sent to the LTD Employees do not state that

the LTD Employees are entitled to severance either.  The language in the Retirement Election

10

Forms regarding severance states that LTD Employees electing to retire from the Debtors on a voluntary basis "[a]cknowledge[ ] that, in accordance with the terms of the Nortel Networks Severance Allowance Plan, the Nortel Networks Enhanced Severance Allowance Plan and Nortel's past practice, he/she is not entitled to any severance benefits as a result of his/her voluntary retirement from the Debtors." See Retirement Election Form at 3, attached as Exhibit D to the Janis Motion.  This language in the Retirement Election Form was intended to clarify that individuals who voluntarily terminate their employment by retiring from the Debtors would not be eligible for benefits under the Severance Plans (as well as other potential benefits) as a result of their elective departure, regardless of any other eligibility requirements, and therefore, does not state or imply that such a right to severance benefits would otherwise exist.  While the Debtors understand the LTD Employees' desire to receive severance in addition to the other amounts they are receiving under the Settlement Agreement or through their participation in the Retiree Settlement, they simply are not entitled to such additional payments based on the terms of the Severance Plans or otherwise, and accordingly, the requested relief should be denied.

## Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court deny each of the LTD Severance Motions.

[*Remainder of Page Intentionally Left Blank*]

11

Dated:  June 18, 2013
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*