IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------X
                                                             :
*In re*                                                      :   Chapter 11
                                                             :
Nortel Networks Inc., *et al.*,[1]                           :   Case No. 09-10138 (KG)
                                                             :
                                    Debtors.                 :   Jointly Administered
                                                             :
                                                             :
                                                             :
-------------------------------------------------------------X

**DECLARATION OF JULIE GRAFFAM-KAPLAN IN
SUPPORT OF THE DEBTORS' OMNIBUS OBJECTIONS TO VARIOUS
NORTEL US LTD EMPLOYEES' MOTIONS COMPELLING DEBTORS TO
ADMIT MY CLAIM FOR SEVERANCE ALLOWANCE AS VALID PER
NORTEL NETWORKS SEVERANCE ALLOWANCE PLAN AND ISSUE PAYMENT**

I, Julie Graffam-Kaplan, do hereby declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the former Human Resources Leader for Nortel Networks Inc. ("NNI"), which position I held from December 2010 to March 2012. I joined NNI in September of 1998 and held the position of Director, Human Resources Operations prior to my promotion to Human Resources Leader. My job responsibilities as Human Resources Leader included supervising the Human Resources function for Nortel Business Services, assisting in the wind down of NNI and overseeing the administration of the Severance Plans (as defined below).

2. I respectfully submit this declaration in support of the *Debtors' Omnibus Objection to Various Nortel US LTD Employees Motions Compelling Debtors to Admit My*

---

[1] The U.S. Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the U.S. Debtors and their petitions are available at http://dm.epiq11.com/nortel.

*Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment* [D.I. 10731], and the *Debtors' Supplemental Omnibus Objection to Various Nortel US LTD Employees Motions Compelling Debtors to Admit My Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment* [D.I. 10932] (together, the "Objections").[2] Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, information supplied to me by consultants employed by NNI and the other above-captioned debtors (together, the "Debtors" or "Nortel") or their affiliates and professionals retained by the Debtors, or learned from my review of relevant documents. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

3.  The Debtors maintain two plans providing severance benefits to compensate their employees for a non-voluntary loss of employment without cause – the Nortel Networks Severance Allowance Plan and the Nortel Networks Enhanced Severance Allowance Plan (together, the "Severance Plans"). The summary plan descriptions ("SPDs") for the Nortel Networks Severance Allowance Plan briefly describe the plan language of the Nortel Networks Severance Allowance Plan, as amended and restated effective January 1, 2008 (the "2008 Plan"), and are subject to the terms of the 2008 Plan. True and correct copies of the Summary of Material Modifications Nortel Networks Severance Plan 2009, Nortel Networks Severance Allowance Plan SPD 2010 and the Nortel Networks Severance Allowance Plan SPD 2011 are attached hereto respectively as Exhibit 1, Exhibit 2 and Exhibit 3. It is my understanding that the 2012 SPD, as the most recent SPD of the Nortel Networks Severance Allowance Plan, would apply to certain individuals whose employment is terminated this calendar year. To the extent that the Debtors issue an SPD for 2013, it is my understanding that the Debtors do not currently

---

[2] Capitalized terms used herein, but not otherwise defined have the meaning ascribed to them in the Objections.

2

intend to amend or modify the manner in which the amount of severance allowance is calculated. However, certain other benefits described in section 2.11 of the 2008 Plan, including, without limitation, life insurance, accidental death and dismemberment insurance, medical and dental, vision and hearing coverage, will terminate as of June 30, 2013 in accordance with the settlement agreement reached with the Official Committee of Long-Term Disability Participants, and therefore will not be available after that date.

4. In my experience, it was the Debtors' practice to require an individual to satisfy the Severance Plans' definition of "Employee" in order to receive severance. Historically, the Debtors have identified LTD Employees as current employees of the Debtors for purposes of administering the LTD Plans and benefits provided thereunder. However, the LTD Employees are not regularly scheduled for work and do not actively perform services for the Debtors while on long-term disability, and in some cases may have been unable to do so for years as a result of their disabilities. Under the terms of the Nortel Networks Inc. Long-Term Disability Plan, in order to receive income continuation benefits, an individual must be unable to work because of a disease or injury.

5. I have been informed that there are currently approximately 192 LTD Employees receiving benefits under the LTD Plans, approximately 21 of whom returned Retirement Election Forms on or before May 17, 2013. The Retirement Election Form provides that in order to participate in the settlement with the Official Committee of Retired Employees (the "<u>Retiree Settlement Agreement</u>"), an LTD Employee who is otherwise eligible to participate in the settlement under the terms of the Retiree Settlement Agreement must release all claims related to or arising under the LTD Plans and acknowledge that, in accordance with the terms of

the Severance Plans and the Debtors' past practice, that he or she is not entitled to severance benefits as a result of his or her voluntary retirement from the Debtors.

6. While LTD Employees are current employees of the Debtors, there are certain changes to their benefits at the time they become disabled. For instance, unlike the Severance Plans, the Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan SPD 2008 and the Nortel Networks Inc. Long-Term Disability Plan SPD 2010 specifically provide that medical, dental/vision/hearing care, life insurance and accidental death and dismemberment insurance benefits continue to be available to LTD Employees. True and correct copies of the Nortel Networks Inc. Short-Term Disability Plan and Long-Term Disability Plan SPD 2008 and the Nortel Networks Inc. Long-Term Disability Plan SPD 2010 are attached hereto respectively as Exhibit 4 and Exhibit 5. However, LTD Employees are paid for their accrued vacation days upon transitioning from receiving short-term disability benefits to receiving long-term disability income continuation benefits, and they do not continue to accrue vacation during their leaves of absence. Moreover, Nortel requests that company property is returned and access to facilities and networks is revoked, such that an LTD Employee generally is unable to perform work for the Debtors unless he or she changes his or her status with the company. While receiving long-term disability income continuation benefits, LTD Employees are not permitted to increase their optional life insurance or optional accidental death and dismemberment coverage during the Debtors' annual benefit enrollment periods.

7. The Debtors have interpreted and administered the Severance Plans as denying LTD Employees severance unless they return to active status at work and are then subsequently terminated. LTD Employees who reach the maximum age of eligibility for benefits under the LTD Plans, and do not return to work are terminated for "failure to return to work,"

which is treated as a voluntary termination that is not subject to payment under the Severance Plans. By contrast, LTD Employees who return to work with a release from their doctor and are subsequently terminated because the Debtors do not have a position for them historically would have been treated as having met the definition of "Employee" under the Severance Plans because they returned to be regularly scheduled for active work and therefore would have received severance. At this time, none of the LTD Employees have requested to return to being regularly scheduled to work, or have informed the Debtors of a change in their medical status that would enable them to work at this time.

8. If the LTD Plans had not been terminated pursuant to the Settlement Agreement, upon reaching the maximum age of eligibility for benefits under the LTD Plans, the LTD Employees would have had no further entitlement to benefits under the LTD Plans and would have been considered to have voluntarily separated their employment from the Debtors if they were unable to return to work or otherwise chose not to. As a result of the voluntary nature of such an LTD Employee's departure from the Debtors, he or she would not have been eligible to receive severance benefits under the Severance Plans regardless of whether he or she met any other of the eligibility requirements.

*[Remainder of Page Intentionally Left Blank]*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Windham, New Hampshire
June 20, 2013

_____
Julie Graffam-Kaplan