## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

|  |  |  |
|---|---|---|
|  | : | Chapter 11 |
|  | : |  |
| *In re* | : | Case No. 09-10138 (KG) |
|  | : |  |
| Nortel Networks Inc., *et al.*,[1] | : | Jointly Administered |
|  | : |  |
| Debtors. | : | **Hearing Date:** To commence |
|  | : | January 6, 2014 |

-------------------------------------------------------X

## JOINT APPLICATION FOR ISSUANCE OF
## INTERNATIONAL LETTERS OF REQUEST (LETTERS ROGATORY)

Nortel Networks Inc. ("NNI"), and its affiliated debtors, as respective debtors and debtors

in possession (collectively, the "U.S. Debtors"), together with the Official Committee of

Unsecured Creditors (the "Committee," and collectively with the U.S. Debtors, the

"Applicants"), respectfully petition this Court pursuant to the provisions of the Hague

Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial

Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence

Convention"), for the issuance of letters of request (the "Letters Rogatory") in the form annexed

hereto as Exhibits B through H, addressed to the Senior Master of the Supreme Court (Queen's

Bench Division) acting as the Competent Judicial Authority of the United Kingdom, requesting

that the Senior Master cause the Letters Rogatory to be served upon the designated recipients,

who (i) were auditors or advisers to Nortel Networks UK Limited ("NNUK") or the other EMEA

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Debtors (as defined hereinafter); (ii) were auditors, performed actuarial services or provided

other advice to Nortel Networks UK Pension Trust Limited (the "U.K. Pension Trustee") as

trustee of the Nortel Networks UK Pension Plan; (iii) performed actuarial or financial

calculations or analysis on which the U.K. Pensions Regulator ("TPR") relied in purporting to

issue a Warning Notice to various Nortel entities, including NNI and Nortel Networks (CALA)

Inc. ("NN CALA"); (iv) provided reports to the Determinations Panel of TPR in connection with

the decision to issue Financial Support Directions in respect of the Nortel Networks UK Pension

Plan; and/or (v) were principally responsible for the determination by TPR that the NNUK was

"insufficiently resourced" within the meaning of the U.K. Pensions Act 2004.  In support thereof,

Applicants respectfully represent as follows:

**BACKGROUND**

1.      On January 14, 2009 (the "Petition Date"), the Debtors other than NN

CALA[2] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which

cases are consolidated for procedural purposes only.

2.      Also on January 14, 2009, the Debtors' ultimate corporate parent, Nortel

Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited

("NNL"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors") filed an

application with the Ontario Superior Court of Justice (the "Canadian Court") under the

Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors

(collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. was appointed by

the Canadian Court.

---

[2]      NN CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

3.      On the same date, upon the request of NNUK and eighteen of its affiliates in the EMEA Region (the "EMEA Debtors"), the High Court of Justice of England and Wales (the "English Court") placed the EMEA Debtors into administration, and appointed individuals from Ernst & Young LLP as administrators (collectively, the "Joint Administrators").

4.      Since the Petition Date, the various Nortel affiliates have sold assets related to Nortel's business units and other assets to various purchasers (the "Sales").  For further information regarding these Chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and to the information contained at http://dm.epiq11.com/nortel.

5.      Upon the Applicants' joint motion, this Court on April 3, 2013 entered an Order Approving Allocation Protocol [D.I. 9947] and an associated Opinion [D.I. 9946] determining, *inter alia*, that coordinated cross-border trials to determine the allocation among the U.S. Debtors, Canadian Debtors, and EMEA Debtors of proceeds from the Sales (the "Sale Proceeds") will commence on January 6, 2014 in the U.S. Court and Canadian Court (the "Trials").  Also to be resolved by the U.S. and Canadian Courts during the Trials are certain claims against the U.S. Debtors and Canadian Debtors brought by the EMEA Debtors (the "EMEA Claims") and additional claims (the "U.K. Pension Claims") brought by the U.K. Pension Trustee and the Board of the Pension Protection Fund (the "PPF," and together with the U.K. Pension Trustee, the "U.K. Pension Claimants").  See Order Approving Allocation Protocol at ¶ 4.

6.      The Canadian Court issued an Endorsement on April 3, 2013, which likewise held that the above matters would be decided in the Trials.[3]

---

[3]      See Nortel Networks Corporation (Re), 2013 ONSC 1757, 09-CL-7950 (April 3, 2013).

7.      Subsequently, this Court has entered further orders in support of the Trials, including, *inter alia*, the Order Entering Allocation Protocol dated May 17, 2013 [D.I. 10565], in which the Court approved binding procedures to be used for determining the allocation of the Sale Proceeds and for resolving the EMEA Claims and U.K. Pension Claims, and the Order Approving Litigation Timetable and Discovery Plan of the May 17, 2013 [D.I. 10566], setting parameters and deadlines trial preparations.

## RELIEF REQUESTED

8.      By this Application, the Applicants hereby request that this Court issue an Order in the form attached hereto as Exhibit A:

    (a)    providing for this Court to sign the Letters Rogatory and affix the seal of the United States Bankruptcy Court for the District of Delaware over said signature in each of the Letters Rogatory;

    (b)    requiring that the Clerk of the Bankruptcy Court return the original, signed Letters Rogatory to Derek C. Abbott and Ann C. Cordo of Morris, Nichols, Arsht & Tunnell LLP, so that said Letters Rogatory may be issued to the Senior Master of the Supreme Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, which is the domicile of the designated recipients from whom evidence is sought; and

    (c)    directing counsel for the U.S. Debtors to transmit the original, signed Letters Rogatory to the Competent Judicial Authority of the United Kingdom.

so that the Applicants may obtain for use at trial potential evidence material to the U.S. Debtors' defenses to the EMEA Claims and the U.K. Pension Claims.[4]

9.      A significant number of the remaining claims brought by NNUK (i.e., the claims that were not dismissed by this Court's opinion and accompanying order dated March 20,

---

[4]      In seeking the materials specified in the Letters Rogatory, the U.S. Debtors do not concede their relevance or admissibility.

2012 [D.I. 7403, 7404]) are premised on the notion that it was improper for affiliates or individuals who allegedly owed fiduciary duties to NNUK – whether NNI, NNL, or NNUK's own *de jure* directors – to consider the interests of NNL or the Nortel group as a whole in making various tax and treasury decisions.  See Joint Omnibus Objection to the Remaining Amended Claims Filed by the EMEA Claimants, dated May 14, 2013 (the "Omnibus Obj.") [D.I. 10521] at ¶ 66.  Without conceding that NNI or any other affiliates or individuals owed such fiduciary duties, even if such duties existed, if an entity is solvent, the directors and any other fiduciaries of the entity are fully entitled to consider and act in the interest of the entity's shareholders, and indeed should do so.  Without conceding any burden of proof, Applicants intend to show at trial that NNUK was solvent at all relevant times and therefore that its alleged fiduciaries violated no duties to the extent that they acted in the interests of NNUK's sole shareholder NNL or the Nortel group, and that in any event NNL ratified any breaches of duty that are alleged to have occurred.  See id. ¶¶ 66-69.  The information sought by the Letters Rogatory that are directed to NNUK's former auditors, Deloitte & Touche LLP and KPMG Europe LLP ("KPMG"), see Exhibits B and C, may be material to the Applicants' efforts to demonstrate at trial that NNUK was solvent.

        10.     In addition, the U.K. Pension Claims and the remaining EMEA Claims variously allege that NNUK was harmed by an intercompany transaction called Project Swift, that Nortel's transfer pricing system was unfair to NNUK and the other EMEA Debtors, that the EMEA Debtors were unfairly required to bear certain restructuring costs, and that intercompany dividends deprived one of the EMEA Debtors of value.[5]  However, upon information and belief, NNUK retained the U.K. affiliate of Ernst & Young ("E&Y U.K.") to conduct an extensive

---

[5]     See, e.g., Claim No. 7786 (NNUK) ¶¶ 47-56, 69-68; Claim No. 7774 (Nortel Networks (Ireland) Limited) ¶¶ 51-65; Claim No. 8357 (U.K. Pension Claimants) ¶¶ 142-86, 200-06.

valuation of the consideration transferred in Project Swift, whose report confirmed that NNUK received fair consideration for the loan forgiveness it provided to NNL in the transaction and also described tax-related and other benefits from Project Swift. See Omnibus Obj. ¶ 32. The U.K. Pension Trustee similarly received independent advice regarding Project Swift from the U.K. affiliate of PricewaterhouseCoopers ("PwC U.K."). See Joint Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and the Board of the Pension Protection Fund, dated May 14, 2013 (the "Pension Obj.") [D.I. 10519] at ¶ 59. Further, in response to interrogatories, the EMEA Debtors have stated that (i) KPMG advised the EMEA Debtors regarding Project Swift, transfer pricing and intercompany dividends; (ii) E&Y U.K. advised the EMEA Debtors regarding Project Swift, transfer pricing and Nortel's restructuring; and (iii) PwC U.K. advised the EMEA Debtors regarding transfer pricing. The information sought by the Letters Rogatory that are directed towards KPMG, E&Y U.K., and PwC U.K., see Exhibits C, D, and E, may be material to the Applicants' efforts to show at trial that NNUK was not harmed by Project Swift and that the alleged fiduciaries of NNUK breached no duties in approving Project Swift, and that the EMEA Debtors were not treated unfairly in respect of transfer pricing, restructuring costs, or intercompany dividends.

11.    The U.K. Pension Claims assert that NNUK was "insufficiently resourced" as of June 30, 2008 within the meaning of the U.K. Pensions Act 2004. In making this assertion, the U.K. Pension Claims rely upon actuarial calculations performed for TPR by Mr. Neil Mobbs of Watson Wyatt (now known as Towers Watson), but provide no information to suggest that these calculations were based on valid or objective measures. The U.K. Pension Claims also rely on certain "deemed" valuations of the resources of NNUK and NNC by TPR,

which, in turn, were based upon an expert report by PricewaterhouseCoopers dated December 17, 2009, but provide neither this report nor any of the information needed to evaluate the methodology used in the report. <u>See</u> Pension Obj. at ¶ 45. The information sought by the Letters Rogatory directed towards PwC U.K. and Towers Watson, <u>see</u> Exhibits E and F, may be material to Applicants' efforts to show at trial that NNUK was not insufficiently resourced within the meaning of the U.K. Pensions Act 2004.

12.      The U.K. Pension Claims also rely upon the Reasons of the Determinations Panel of The Pensions Regulator in the Matter of the Nortel Networks UK Pension Plan, which refer repeatedly to written and oral assertions made to the Determinations Panel regarding transfer pricing by Ms. Wendy Nicholls, a partner at Grant Thornton UK LLP ("<u>Grant Thornton</u>"). Further, in response to interrogatories, the U.K. Pension Claimants have indicated that Grant Thornton was the U.K. Pension Trustee's auditor. The information sought by the Letter Rogatory directed towards Grant Thornton, <u>see</u> Exhibit G, may be material to Applicants' efforts to show at trial that NNUK was not insufficiently resourced within the meaning of the U.K. Pensions Act 2004.

13.      In response to interrogatories, the U.K. Pension Claimants have identified several employees of TPR, including Mr. Philip Wilson and Mr. Paul Williams, as principally responsible for the determination that NNUK was insufficiently resourced. The information sought by the Letter Rogatory directed to TPR, <u>see</u> Exhibit H, may be material to Applicants' efforts to show at trial that NNUK was not insufficiently resourced within the meaning of the U.K. Pensions Act 2004.

14.      The Applicants have considered the requirements of the Courts of England and Wales in respect of Letters Rogatory, including the form in which the Letters Rogatory

should be presented to the English Court and their permissible content. The Applicants believe that the Letters Rogatory are consistent with these requirements, as contained in the UK Evidence (Proceedings in Other Jurisdictions) Act 1975 (the "1975 Act") and Part 34 of the Civil Procedure Rules.[6]  The Applicants note that under section 2(3) of the 1975 Act, English Courts will not issue a disclosure order in response to a roving inquiry, but will honor requests for identifiable documentary evidence for use at trial.  This Court is requested to issue the Letters Rogatory on this basis.

15.     The Applicants request that after this Court has signed the Letters Rogatory, they be returned to Derek C. Abbott and Ann C. Cordo of Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19801, for forwarding to the Senior Master of the Supreme Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, Royal Courts of Justice, Strand London WC2A 2LL, United Kingdom (for the attention of the Foreign Process Section, Room E16).

*[Remainder of Page Intentionally Left Blank]*

---

[6]     See Exhibits A and B to the Declaration of Matthew Gurgel, submitted concurrently herewith.

WHEREFORE, the Applicants respectfully request that the Court enter the attached form of order (i) providing for this Court to sign the Letters Rogatory and affix the seal of the United States Bankruptcy Court for the District of Delaware over said signature in each of the Letters Rogatory; (ii) directing that the Clerk of the Bankruptcy Court return the original, signed Letters Rogatory to Derek C. Abbott and Ann C. Cordo of Morris, Nichols, Arsht & Tunnell LLP, so that said Letters Rogatory may be issued to the Competent Judicial Authority of the United Kingdom; (iii) directing counsel for the U.S. Debtors to transmit the original, signed Letters Rogatory to the Competent Judicial Authority of the United Kingdom; and (iv) granting such other relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      July 10, 2013

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

-and-

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

  */s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*And Debtors in Possession*


-and-


AKIN GUMP STRAUSS HAUER & FELD LLP
Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002


- and -


RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee*
*of Unsecured Creditors*