**EXHIBIT E**

**Request for International Judicial Assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| 1. | **Sender** | Jonathan Kelly<br>Cleary Gottlieb Steen & Hamilton LLP<br>City Place House<br>55 Basinghall Street<br>London EC2V 5EH |
| 2. | **Central Authority of the Requested State** | The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| 3. | **Person to whom the executed request is to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |

4. **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

    **Date**                                      30 August 2013

    **Reason for urgency**              The trial for which the evidence will be used will begin on 6 January 2014. The parties' exchange of evidence and depositions must be concluded by 27 September 2013.

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | |
|---|---|---|
| 5. *a* | **Requesting judicial authority (Article 3,a))** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |
| *b* | **To the competent authority of (Article 3,a))** | United Kingdom of Great Britain and Northern Ireland |

**6. Names and addresses of the parties and their representatives (including representatives in the requested State) (Article 3,b))**

   *a* **Plaintiff** (Claimants)     **Joint Administrators and EMEA Debtors**

      **Representatives**

Derek J.T. Adler
Amera Z. Chowhan
Gabrielle Glemann
Charles H. Huberty
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

James L. Patton
Edwin J. Harron
John T. Dorsey
Jamie Luton Chapman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

John Whiteoak
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2HS

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

2

                                      Charlene D. Davis
                                      Justin Alberto
                                      Bayard, P.A.
                                      222 Delaware Avenue, Suite 900
                                      Wilmington, Delaware 19899
                                      Telephone: (302) 655-5000
                                      Facsimile: (212) 658-6395

                                      Angela Dimsdale Gill
                                      John Tillman
                                      Matthew Bullen
                                      Hogan Lovells International LLP
                                      Atlantic House
                                      Holborn Viaduct
                                      London  EC1A 2FG

*b*  **Defendant** (Debtors)        **Nortel Networks Inc., *et al.*[1]**

    **Representatives**                  Howard S. Zelbo
                                      James L. Bromley
                                      Jeffrey A. Rosenthal
                                      Lisa M. Schweitzer
                                      Cleary Gottlieb Steen & Hamilton LLP
                                      One Liberty Plaza
                                      New York, New York 10006
                                      (212) 225-2000

                                      Jonathan Kelly
                                      Cleary Gottlieb Steen & Hamilton LLP
                                      City Place House
                                      55 Basinghall Street
                                      London EC2V 5EH

                                      Derek C. Abbott
                                      Eric D. Schwartz
                                      Ann C. Cordo
                                      Morris, Nichols, Arsht & Tunnell LLP
                                      1201 North Market Street
                                      P.O. Box 1347

---

[1]    The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

|  |  |
|---|---|
|  | Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989 |
| *c* **Other Parties**<br><br>**Representatives** | **Monitor and Canadian Debtors**<br><br>Ken Coleman<br>Daniel Guyder<br>Paul Keller<br>Laura Hall<br>Allen & Overy LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 610-6300<br>Facsimile: (212) 610-6399<br><br>Mary F. Caloway<br>Kathleen A. Murphy<br>Buchanan Ingersoll & Rooney PC<br>1105 North Market Street<br>Suite 1900<br>Wilmington, Delaware 19801<br>Telephone: (302) 552-4200<br>Facsimile: (302) 552-4295<br><br>**Official Committee of Unsecured Creditors**<br><br>Fred Hodara<br>David Botter<br>Abid Qureshi<br>Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, New York 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br><br>Mark D. Collins<br>Christopher M. Samis<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651-7701 |

**7.     Nature of the proceedings and summary of claims (Article 3,c))**

7.1     This action, captioned <u>In re Nortel Networks Inc., et al.</u>, Case No. 09-10138 (KG) (the "<u>Action</u>"), is a bankruptcy proceeding pending before the Requesting Court. On 14 January 2009, Nortel Networks Inc. ("<u>NNI</u>") and its affiliated debtors (collectively, the "<u>U.S. Debtors</u>"), with the exception of Nortel Networks (CALA) Inc. ("<u>NN CALA</u>"), each filed a voluntary petition for relief in the Requesting Court under Chapter 11 of the United States Bankruptcy Code. NN CALA filed its petition on 14 July 2009. NNI is incorporated in the United States in the State of Delaware, with its former principal place of business in the State of North Carolina.

7.2     Also on 14 January 2009, the U.S. Debtors' ultimate corporate parent, Nortel Networks Corporation ("<u>NNC</u>"), NNI's direct corporate parent, Nortel Networks Limited ("<u>NNL</u>"), and certain of their Canadian affiliates (collectively, the "<u>Canadian Debtors</u>") filed an application with the Ontario Superior Court of Justice (the "<u>Canadian Court</u>") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors, and a monitor, Ernst & Young Inc., was appointed by the Canadian Court.

7.3     On the same date, upon the request of Nortel Networks UK Limited ("<u>NNUK</u>") and eighteen of its affiliates from the Europe, Middle East and Africa region (collectively with NNUK, the "<u>EMEA Debtors</u>"), the High Court of Justice of England and Wales placed the EMEA Debtors into administration, and appointed individuals from Ernst & Young LLP as administrators (collectively, the "<u>Joint Administrators</u>").[2]   NNUK is an English corporation

---

[2]     In addition to NNUK, orders of administration were sought with respect to: Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V.; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; and Nortel Networks, s.r.o.

5

with its former registered office at Maidenhead Office Park, Westacott Way, Maidenhead, Berkshire SL6 3QH.

7.4 Pursuant to a cross-border protocol, the Requesting Court and the Canadian Court will hold coordinated cross-border trials commencing 6 January 2014 (the "Trials") to decide certain issues, including principally: (i) the allocation of proceeds from sales of the assets of the Nortel group; (ii) claims filed against the U.S. Debtors and Canadian Debtors by NNUK and the other EMEA Debtors; and (iii) claims filed by certain entities asserting claims relating to NNUK's pension fund, namely, the Nortel Network UK Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "U.K. Pension Trustee"), and the Board of the Pension Protection Fund, a privately funded insurer (the "PPF," and together with the U.K. Pension Trustee, the "U.K. Pension Claimants"). The U.S. Debtors have objected to the claims asserted by the EMEA Debtors and the U.K. Pension Claimants. The EMEA Debtors and the U.K. Pension Claimants also have filed claims against the Canadian Debtors in the Canadian Court.

7.5 Other parties to the proceedings before the Requesting Court include an Official Committee of Unsecured Creditors of the U.S. Debtors (the "U.S. Committee").

7.6 All of the parties (including NNUK and the U.K. Pension Claimants) are currently engaged in the process of obtaining evidence by order of the Requesting Court and Canadian Court in anticipation of the Trials.

7.7 Certain of the claims brought by NNUK and the U.K. Pension Claimants put at issue the solvency of NNUK during the years 2000 through 2008, whether NNUK or other EMEA Debtors were harmed by an intercompany transaction known as Project Swift, whether the EMEA Debtors were harmed by Nortel's transfer pricing system, the restructuring of

Nortel or intercompany dividends, and whether NNUK had sufficient resources to fund the Nortel Networks UK Pension Plan during the relevant time period. The evidence sought from the entities identified below may be material to the resolution of these factual disputes.

**8.    Evidence to be obtained or other judicial act to be performed (Article 3,d))**

8.1    PricewaterhouseCoopers LLP, whose office is 7 More London Riverside, London SE1 2RT ("PwC U.K."), is an affiliate of an international accountancy firm. PwC U.K. was engaged to provide a report for the U.K. Pension Trustee concerning its interest in the potential impact of Project Swift, a corporate transaction completed in December 2007, on the ability of NNUK to fulfill its obligations to the Nortel Networks UK Pension Plan. PwC U.K. also provided advice to the EMEA Debtors regarding Nortel's transfer pricing system. The claims brought by the EMEA Debtors and the U.K. Pension Claimants in the Requesting Court include allegations that Project Swift was unfair to NNUK, and that Nortel's transfer pricing system was unfair to the EMEA Debtors. Further, in asserting before the Requesting Court that NNUK was insufficiently resourced within the meaning of the U.K. Pensions Act 2004, the U.K. Pension Claimants also rely on certain "deemed" valuations of the resources of NNUK and NNC by The Pensions Regulator ("TPR"), which valuations in turn were based upon an expert report authored by PwC U.K., dated 17 December 2009. Absent voluntary cooperation, evidence from PwC U.K. is available only by an order of the High Court.

8.2    It is accordingly requested that for the purpose of justice and for due determination of the matters in dispute between the parties that you direct PwC U.K. to produce the specified documents below in Section 11, as exist in its power, possession, or control, to counsel for the U.S. Debtors and the U.S. Committee for use at trial (if appropriate), subject to any applicable privileges that may apply under the rules and

7

procedures of the Requesting Court.[3]

8.3   It is further requested that you also direct Mr. Peter Clokey and Mr. Jonathon Land of PricewaterhouseCoopers LLP, 7 More London Riverside, London SE1 2RT (the "<u>Witnesses</u>") to provide oral testimony for use at trial (if appropriate) to counsel for U.S. Debtors and the U.S. Committee, subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court.  The Witnesses' unique importance to the claims and defenses is described in detail in Section 10 below.

| | | |
|---|---|---|
| **9.** | **Identity and address of any person to be examined (Article 3,e))** | Peter Clokey<br>PricewaterhouseCoopers LLP<br>7 More London Riverside<br>London SE1 2RT<br>United Kingdom<br><br>Jonathon Land<br>PricewaterhouseCoopers LLP<br>7 More London Riverside<br>London SE1 2RT<br>United Kingdom |

**10.   Statement of the subject matter about which the persons are to be examined (Article 3,e))**

It is requested that Mr. Peter Clokey[4] be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court, on the following subjects:

---

[3]   The Requesting Court is aware that PwC U.K. maintains multiple offices within the United Kingdom and that the office listed above may be different from the office that performed the actual services described.  The address provided is solely for the convenient delivery of these requests, and should not be interpreted by PwC U.K. as a limitation upon its obligation to provide documents responsive to the requests enumerated herein, regardless of where the relevant documents may be found in the United Kingdom.

[4]   Mr. Peter Clokey is described on the website of PwC U.K. as "lead[ing] the group that provides expert determinations of value and Fairness Opinions where these are required under UK law."  Profile: Peter Clokey, http://www.pwc.co.uk/people/peter-clokey (last visited 8 July 2013).

8

(a) The analyses, calculations and determinations of the value of the resources of NNC, NNUK, or the assets and liabilities of the Nortel Networks UK Pension Plan performed by PwC U.K., including the report calculating the value of the resources of NNC and NNUK, dated 17 December 2009, provided to the Determinations Panel of TPR (the "<u>Report</u>"), and including the associated drafts, working papers, or other analyses of PwC U.K., and the basis for the methodologies and assumptions used by PwC U.K. in these calculations;

(b) The data and information held or used by PwC U.K. for the purposes of preparing the Report;

(c) The communications between PwC U.K. and TPR concerning either (i) the Nortel Networks UK Pension Plan or (ii) the analysis, calculation or determination of the value of the resources of NNC, NNUK, or the assets and liabilities of the Nortel Networks UK Pension Plan, including the Report;

(d) The communications between PwC U.K. and Nortel entities concerning either (i) the Nortel Networks UK Pension Plan or (ii) the analysis, calculation or determination of the value of the resources of NNC, NNUK, or the assets and liabilities of the Nortel Networks UK Pension Plan, including the Report; and

(e) The communications between PwC U.K. and the U.K. Pension Trustee, the PPF, or other representatives of or advisers to the Nortel Networks UK Pension Plan concerning either (i) the Nortel Networks UK Pension Plan or (ii) the analysis, calculation or determination of the value of the resources of NNC, NNUK, or the assets and liabilities of the Nortel Networks UK Pension Plan, including the Report.

It is further requested that Mr. Jonathon Land[5] be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court, on the following subjects:

(f) The December 2007 transaction known as Project Swift or Project Eagle (the "Project");

(g) The reorganization of Nortel Networks International Finance & Holding BV related to the Project (the "Reorganization");

(h) The valuation of the consideration transferred between Nortel affiliates in connection with the Project and Reorganization;

(i) The impact of the Project and Reorganization upon NNUK, the Nortel Networks UK Pension Plan, other Nortel entities, or the Nortel group as a whole;

(j) The guaranty provided by NNL in connection with the Project and Reorganization;

(k) The reports, presentations, or analyses prepared by PwC U.K. concerning the topics referred to in (f) though (j);

(l) The data and information used or relied upon by PwC U.K. for the purposes of preparing the reports, presentations, or analyses referred to in (k);

(m) The communications between PwC U.K. and TPR concerning either the Nortel Networks UK Pension Plan or the topics referred to in (f) through (j);

(n) The communications between PwC U.K. and Nortel entities concerning either

---

[5] The U.K. Pension Trustee has identified Mr. Jonathon Land by name as its financial adviser.

10

      the Nortel Networks UK Pension Plan or the topics referred to in (f) through (j); and

(o)    The communications between PwC U.K. and the U.K. Pension Trustee, the PPF, or other representatives of or advisers to the Nortel Networks UK Pension Plan concerning either the Nortel Networks UK Pension Plan or the topics referred to in (f) through (j).

**11.    Documents or other property to be inspected (Article 3,g))**

It is requested that PwC U.K. be required to produce the specified documents described herein as are believed to exist in its power, possession or control. Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties.

(a)    The working papers of PwC U.K. relating to the Project;

(b)    The working papers of PwC U.K. relating to the Reorganization;

(c)    The valuation by PwC U.K. of the consideration transferred between Nortel affiliates in connection with the Project and Reorganization;

(d)    The reports and analyses by PwC U.K. of the Project and the Reorganization;

(e)    The analyses by PwC U.K. of the impact of the Project and Reorganization upon NNUK, the Nortel Networks UK Pension Plan, other Nortel entities, or the Nortel group as a whole;

(f)    The analyses by PwC U.K. of the guaranty provided by NNL in connection with the Project and Reorganization;

(g)    The presentations prepared by PwC U.K. for the U.K. Pension Trustee about the Project and Reorganization;

(h)   The drafts of the presentations referred to in (g);

(i)   The supporting documents to the presentations referred to in (g);

(j)   The presentations prepared by PwC U.K. for the board of directors of NNUK or other Nortel personnel relating to the Project and the Reorganization;

(k)   The drafts of the presentations referred to in (j);

(l)   The supporting documents to the presentations referred to in (j);

(m)  The valuations of NNUK or NNC performed by PwC U.K. for TPR;

(n)   The calculations performed by PwC U.K. for TPR about whether NNUK was "insufficiently resourced" (within the meaning of the U.K. Pensions Act 2004) as of any time after January 1, 2008;

(o)   The Report prepared by PwC U.K.;

(p)   The drafts of the Report;

(q)   The working papers of PwC U.K. used in preparing the Report;

(r)   The analyses of PwC U.K. used in preparing the Report;

(s)   The written communications between PwC U.K. and TPR in relation to the Report;

(t)   The written communications between PwC U.K. and the U.K. Pension Trustee (and its advisers) in relation to the Report;

(u)   The written communications between PwC U.K. and any other party in relation to the Report;

(v)   The written communications and documents submitted by PwC U.K. to the Determinations Panel of the U.K. Pensions Regulator in the Matter of Nortel Networks UK Pension Plan;

12

(w)     The analyses performed and advice provided by PwC U.K. concerning NNUK or Nortel's transfer pricing arrangements during the years 2000 through 2009; and

(x)     The documents referenced or relied upon in (w).

**12.    Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h))**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, the Witnesses to appear to be examined under oath or affirmation at the office of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH.

**13.    Special methods or procedure to be followed (Articles 3,i) and 9)**

13.1    The Requesting Court requests that Howard S. Zelbo, James L. Bromley, Jeffrey A. Rosenthal, Lisa M. Schweitzer, Fred Hodara, David Botter, and Abid Qureshi, who have been admitted to practice before it in the Action, be appointed as Commissioners pursuant to Article 17 of the Convention, and be authorized to question the Witnesses on the subjects identified above and elicit their sworn testimony.

13.2    Pursuant to Article 9 of the Convention it is requested that the legal representatives of the U.S. Debtors and the U.S. Committee, and the legal representatives of the Witnesses, if any, be permitted to conduct the examination of the Witnesses in England before an impartial Barrister of the Bar of England and Wales (the "Examiner"), to be nominated by Cleary Gottlieb Steen & Hamilton LLP, who, subject to approval by you, shall act as referee. It is requested that the Witnesses be placed under oath or solemn affirmation in accordance with whatever procedure English law provides for in these matters before

answering the oral questions and cross-questions on the subjects identified above which are put to them by the legal representatives of the U.S. Debtors and the U.S. Committee, and the Witnesses' legal representatives, if any.

13.3   The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary. These attorneys are familiar with the relevant events and transactions in this complex matter. Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible. If the questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.4   The U.S. Debtors and the U.S. Committee expect that their taking of each Witness' testimony will take one day. Counsel for the U.S. Debtors and the U.S. Committee are available to begin the testimony at such time and place as may be mutually agreed with the Witnesses' legal representatives, if any, and approved by you.

13.5   The Requesting Court also respectfully requests that the questions and the responses of each Witness be recorded verbatim and that each Witness sign the verbatim transcript or other record of his or her response to the questions. The Requesting Court also respectfully requests that you cause the testimony of each Witness and all of the documents produced at his or her examination as a result of this Letter of Request be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case

when required.

13.6    In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of England and Wales.

13.7    The appearance of each Witness for his testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear.  However, the Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel each Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

**14.    Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)**[6]

>   Jonathan Kelly
>   Cleary Gottlieb Steen & Hamilton LLP
>   City Place House
>   55 Basinghall Street
>   London EC2V 5EH

**15.    Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

>   None.

**16.    Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b))**

A Witness may refuse to answer any question asked during the examination if such answer would subject such Witness to a real and appreciable danger of criminal liability in the United States, or would disclose a privileged communication between such Witness and such

---

[6]    For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the U.S. Debtors to the jurisdiction of the courts of England and Wales, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the U.S. Debtors to accept service of any proceedings in England and Wales.

Witness' attorney.

PwC U.K. may refuse to provide documents if providing such documents would disclose a privileged communication between it and its attorneys.

17. **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

> Nortel Networks Inc.
> c/o Jonathan Kelly
> Cleary Gottlieb Steen & Hamilton LLP
> City Place House
> 55 Basinghall Street
> London EC2V 5EH

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witnesses, the cost of the Examiner and the costs of the transcript of the evidence will be initially borne by the U.S. Debtors.  The U.S. Debtors' payment of any such fees and costs is without prejudice to the U.S. Debtors' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court, in the event that other parties request copies of the documents produced in connection with this request for documents.

DATE OF REQUEST                                              .........................................................

SIGNATURE AND SEAL OF THE                       .........................................................
REQUESTING AUTHORITY