**<u>EXHIBIT F</u>**

**Request for International Judicial Assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| **1.** | **Sender** | Jonathan Kelly<br>Cleary Gottlieb Steen & Hamilton LLP<br>City Place House<br>55 Basinghall Street<br>London EC2V 5EH |
| **2.** | **Central Authority of the Requested State** | The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| **3.** | **Person to whom the executed request is to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |

**4.    Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | |
|---|---|
| **Date** | 30 August 2013 |
| **Reason for urgency** | The trial for which the evidence will be used will begin on 6 January 2014.  The parties' exchange of evidence and depositions must be concluded by 27 September 2013. |

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | |
|---|---|---|
| **5.** *a* | **Requesting judicial authority (Article 3,a))** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |
| *b* | **To the competent authority of (Article 3,a))** | United Kingdom of Great Britain and Northern Ireland |

**6.** **Names and addresses of the parties and their representatives (including representatives in the requested State) (Article 3,b))**

   *a*  **Plaintiff** (Claimants)                 **Joint Administrators and EMEA Debtors**

            **Representatives**                       Derek J.T. Adler
Amera Z. Chowhan
Gabrielle Glemann
Charles H. Huberty
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

James L. Patton
Edwin J. Harron
John T. Dorsey
Jamie Luton Chapman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

John Whiteoak
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2HS

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Charlene D. Davis
Justin Alberto
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
Telephone: (302) 655-5000
Facsimile: (212) 658-6395

Angela Dimsdale Gill
John Tillman
Matthew Bullen
Hogan Lovells International LLP
Atlantic House
Holborn Viaduct
London  EC1A 2FG

| | | |
|---|---|---|
| *b* | **Defendant** (Debtors) | **Nortel Networks Inc.,** *et al.*[1] |
| | **Representatives** | Howard S. Zelbo |

James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347

---

[1]    The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

|   | Wilmington, Delaware 19801 |
|---|---|
|   | Telephone:  (302) 658-9200 |
|   | Facsimile: (302) 658-3989 |

*c*  **Other Parties**                    **Monitor and Canadian Debtors**

    **Representatives**

Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 610-6300
Facsimile:  (212) 610-6399

Mary F. Caloway
Kathleen A. Murphy
Buchanan Ingersoll & Rooney PC
1105 North Market Street
Suite 1900
Wilmington, Delaware 19801
Telephone:  (302) 552-4200
Facsimile:  (302) 552-4295

**Official Committee of Unsecured Creditors**

Fred Hodara
David Botter
Abid Qureshi
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

**7.**     **Nature of the proceedings and summary of claims (Article 3,c))**

7.1     This action, captioned In re Nortel Networks Inc., et al., Case No. 09-10138 (KG) (the "Action"), is a bankruptcy proceeding pending before the Requesting Court.  On 14 January 2009, Nortel Networks Inc. ("NNI") and its affiliated debtors (collectively, the "U.S. Debtors"), with the exception of Nortel Networks (CALA) Inc. ("NN CALA"), each filed a voluntary petition for relief in the Requesting Court under Chapter 11 of the United States Bankruptcy Code.  NN CALA filed its petition on 14 July 2009.  NNI is incorporated in the United States in the State of Delaware, with its former principal place of business in the State of North Carolina.

7.2     Also on 14 January 2009, the U.S. Debtors' ultimate corporate parent, Nortel Networks Corporation ("NNC"), NNI's direct corporate parent, Nortel Networks Limited ("NNL"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors") filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors, and a monitor, Ernst & Young Inc., was appointed by the Canadian Court.

7.3     On the same date, upon the request of Nortel Networks UK Limited ("NNUK") and eighteen of its affiliates from the Europe, Middle East and Africa region (collectively with NNUK, the "EMEA Debtors"), the High Court of Justice of England and Wales placed the EMEA Debtors into administration, and appointed individuals from Ernst & Young LLP as administrators (collectively, the "Joint Administrators").[2]  NNUK is an English corporation

---

[2]     In addition to NNUK, orders of administration were sought with respect to: Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V.; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; and Nortel Networks, s.r.o.

with its former registered office at Maidenhead Office Park, Westacott Way, Maidenhead, Berkshire SL6 3QH.

7.4     Pursuant to a cross-border protocol, the Requesting Court and the Canadian Court will hold coordinated cross-border trials commencing 6 January 2014 (the "Trials") to decide certain issues, including principally:  (i) the allocation of proceeds from sales of the assets of the Nortel group; (ii) claims filed against the U.S. Debtors and Canadian Debtors by NNUK and the other EMEA Debtors; and (iii) claims filed by certain entities asserting claims relating to NNUK's pension fund, namely, the Nortel Network UK Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "U.K. Pension Trustee"), and the Board of the Pension Protection Fund, a privately funded insurer (the "PPF," and together with the U.K. Pension Trustee, the "U.K. Pension Claimants").  The U.S. Debtors have objected to the claims asserted by the EMEA Debtors and the U.K. Pension Claimants.  The EMEA Debtors and the U.K. Pension Claimants also have filed claims against the Canadian Debtors in the Canadian Court.

7.5     Other parties to the proceedings before the Requesting Court include an Official Committee of Unsecured Creditors of the U.S. Debtors (the "U.S. Committee").

7.6     All of the parties (including NNUK and the U.K. Pension Claimants) are currently engaged in the process of obtaining evidence by order of the Requesting Court and Canadian Court in anticipation of the Trials.

7.7     Certain of the claims brought by NNUK and the U.K. Pension Claimants put at issue the solvency of NNUK during the years 2000 through 2008, whether NNUK or other EMEA Debtors were harmed by an intercompany transaction known as Project Swift, whether the EMEA Debtors were harmed by Nortel's transfer pricing system, the restructuring of

Nortel or intercompany dividends, and whether NNUK had sufficient resources to fund the Nortel Networks UK Pension Plan during the relevant time period.  The evidence sought from the entities identified below may be material to the resolution of these factual disputes.

**8.      Evidence to be obtained or other judicial act to be performed (Article 3,d))**

8.1      Towers Watson (formerly Watson Wyatt, and formerly R. Watson & Sons), whose office is Watson House, London Road, Reingate RH2 9PQ ("<u>Towers Watson</u>"), is a global professional services company.  Towers Watson performed actuarial valuation services for NNUK and the U.K. Pension Trustee.  In the proceedings before the Requesting Court, the U.K. Pension Claimants rely on actuarial calculations performed by Mr. Neil Mobbs of Watson Wyatt to assert that NNUK was insufficiently resourced within the meaning of the U.K. Pensions Act 2004.  Absent voluntary cooperation, evidence from Towers Watson is available only by an order of the High Court.

8.2      It is accordingly requested that for the purpose of justice and for due determination of the matters in dispute between the parties that you direct Towers Watson to produce the specified documents below in Section 11, as exist in its power, possession, or control, to counsel for the U.S. Debtors and the U.S. Committee for use at trial (if appropriate), subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court.[3]

8.3      It is further requested that you also direct Neil Mobbs of Towers Watson, Watson House, London Road, Reingate RH2 9PQ (the "<u>Witness</u>") to provide oral testimony

---

[3]      The Requesting Court is aware that Towers Watson maintains multiple offices within the United Kingdom and that the office listed above may be different from the office that performed the actual services described.  The address provided is solely for the convenient delivery of these requests, and should not be interpreted by Towers Watson as a limitation upon its obligation to provide documents responsive to the requests enumerated herein, regardless of where the relevant documents may be found in the United Kingdom.

for use at trial (if appropriate) to counsel for U.S. Debtors and the U.S. Committee, subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court.  The Witness' unique importance to the claims and defenses is described in detail in Section 10 below.

| | | |
|---|---|---|
| **9.** | **Identity and address of any person to be examined (Article 3,e))** | Neil Mobbs<br>Watson House<br>London Road<br>Reigate RH2 9PQ<br>United Kingdom |

**10.    Statement of the subject matter about which the person is to be examined (Article 3,e))**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court, on the following subjects:

(a)     The actuarial valuations performed for NNUK, for the U.K. Pension Trustee, or with respect to the Nortel Networks UK Pension Plan by Towers Watson, Watson Wyatt or R. Watson & Sons;

(b)     The 17 December 2009 letter of Mr. Neil Mobbs to the U.K. Pension Trustee calculating the debt of the Nortel Networks UK Pension Plan pursuant to Section 75 of the U.K. Pensions Act 1995 (the "17 December 2009 Letter"), the drafts, working papers, or other analyses associated with the 17 December 2009 Letter; the basis for the methodologies and assumptions used in these calculations; and communications concerning such calculations or aspects thereof;

(c)     The data and information held or used by Watson Wyatt for the purposes of

preparing the 17 December 2009 Letter;

(d)     The other analyses, calculations or determinations by Towers Watson, Watson

Wyatt or R. Watson & Sons of the debt of the Nortel Networks UK Pension

Plan pursuant to Section 75 of the U.K. Pensions Act 1995, or of other aspects

of the "insufficiently resourced" test contained in Sections 43 and 44 of the

U.K. Pensions Act 2004, and communications concerning such calculations or

aspects thereof;

(e)     The communications by Towers Watson, Watson Wyatt or R. Watson & Sons

with The Pensions Regulator, the U.K. Pension Trustee, the PPF or other

representatives of advisers to the Nortel Networks UK Pension Plan, or with

Nortel entities concerning either (i) the Nortel Networks UK Pension Plan or

(ii) the 17 December 2009 Letter; and

(f)     The provision, management, administration, governance and funding of the

Nortel Networks UK Pension Plan and the pension plans of STC plc and Nortel

Networks Optical Components Limited, including (i) funding recommendations

and financial valuations on both an ongoing basis and a buyout basis; (ii)

contributions and contribution schedules, including the schedule of

contributions dated June 2006 and the alleged "contribution holiday" from

1989 to 2002 and the financial impact thereof on the funding position of the

Nortel Networks UK Pension Plan; and (iii) pension policies in respect of

assets transferred out for plan members exiting such plans.

**11.    Documents or other property to be inspected (Article 3,g))**

It is requested that Towers Watson be required to produce the documents described

herein as are believed to exist in its power, possession or control.  Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties.

     (a)     The calculations of Watson Wyatt estimating the S.75 deficit position of the Nortel Networks UK Pension Plan, referenced in the 17 December 2009 Letter;

     (b)     The  working papers of Watson Wyatt relating to the calculations estimating the S.75 deficit position of the Nortel Networks UK Pension Plan referenced in the 17 December 2009 Letter;

     (c)     The communications between Watson Wyatt and advisers for the U.K. Pension Trustee referenced in the 17 December 2009 Letter;

     (d)     The documents reflecting the methodology used by Watson Wyatt to determine the liabilities referenced in the fourth paragraph of page 2 of the 17 December 2009 Letter;

     (e)     The documents discussing the methodology used by Watson Wyatt to value the liabilities of the Nortel Networks UK Pension Plan referenced on page 3 of the 17 December 2009 Letter;

     (f)     The documents discussing the assumptions used by Watson Wyatt in valuing the liabilities of the Nortel Networks UK Pension Plan referenced on page 3 of the 17 December 2009 Letter;

     (g)     The  actuarial valuations of the Nortel Networks UK Pension Plan prepared by Watson Wyatt as at 5 April 2005 and 31 December 2007;

     (h)     The formal triennial actuarial valuation reports and annual update reports, and other similar periodic reports prepared by Watson Wyatt or R. Watson & Sons

on the funding position of the Nortel Networks UK Pension Plan in the period 1985 through 2009;

(i)    The formal triennial actuarial valuation reports and annual update reports, and other similar periodic reports prepared by Watson Wyatt or R. Watson & Sons on the funding position of the pension plan of STC plc in the period 1985 through 2000;

(j)    The formal triennial actuarial valuation reports and annual update reports, and other similar periodic reports prepared by Towers Watson, Watson Wyatt or R. Watson & Sons, on the funding position of the pension plan of Nortel Networks Optical Components Limited;

(k)    The Funding Agreement between NNUK and the U.K. Pension Trustee dated 21 November 2006;

(l)    The contribution schedules for the Nortel Networks UK Pension Plan in the period 1987 through 2009;

(m)    The contribution schedules for the pension plan of STC plc in the period 1985 through 2000;

(n)    The contribution schedules for the pension plan of Nortel Networks Optical Components Limited in the period 1987 through 2009;

(o)    The calculations of the Minimum Funding Requirement by Watson Wyatt or R. Watson & Sons, within the meaning of the U.K. Pensions Act 1995, for the Nortel Networks UK Pension Plan in the period 1987 through 2009;

(p)    The working papers of Watson Wyatt or R. Watson & Sons which show the method and assumptions used to prepare the pension disclosures included in the

statutory accounts of NNUK (both under UK GAAP and US GAAP) in the period 1989 through 2009;

(q)     The working papers of Towers Watson, Watson Wyatt or R. Watson & Sons which show the method and assumptions used to prepare the pension disclosures included in the statutory accounts of STC plc (both under UK GAAP and US GAAP) in the period 1985 through 2000;

(r)     The working papers of Towers Watson ,Watson Wyatt or R. Watson & Sons which show the method and assumptions used to prepare the pension disclosures included in the statutory accounts of Nortel Networks Optical Components Limited (both under UK GAAP and US GAAP) in the period 1987 through 2009;

(s)     The analyses by Towers Watson or Watson Wyatt of the guarantees issued by NNL to the U.K. Pension Trustee dated 25 August 2005, 21 November 2006 and 21 December 2007;

(t)     The data held by Towers Watson which identifies each member of the Nortel Networks UK Pension Plan;

(u)     The data held by Towers Watson which identifies the benefits of each member of the Nortel Networks UK Pension Plan;

(v)     The data held by Towers Watson which identifies the number of members of the pension plan of STC plc at the time that Northern Telecom acquired STC plc, and the benefits of each member;

(w)     The governing trust deeds, deeds of amendment, rules and formation documents for the Nortel Networks UK Pension Plan, including amendments

thereto;

(x) The governing trust deeds, deeds of amendment, rules and formation

documents for the pension plan of STC plc, including amendments thereto;

(y) The governing trust deeds, deeds of amendment, rules and formation

documents for the pension plan of Nortel Networks Optical Components

Limited, including amendments thereto;

(z) The Report of the 2003 Governance of the Nortel Networks UK Pension Plan

produced by Watson Wyatt;

(aa) The communications between Watson Wyatt and the U.K. Pension Trustee in

relation to the Report of the 2003 Governance of the Nortel Networks UK

Pension Plan in the period 2001 through 2005.

(bb) The other governance reports produced by Watson Wyatt or R. Watson & Sons

concerning the Nortel Networks UK Pension Plan in the period 1987 through

2009;

(cc) The communications between Watson Wyatt or R. Watson & Sons and the

U.K. Pension Trustee in relation to the other governance reports referred to in

(bb) in the period 1987 through 2009;

(dd) The reports of Watson Wyatt concerning the proposal to close the Defined

Benefit section of the Nortel Networks UK Pension Plan to new entrants and

open a Defined Contribution section for new participants in 1999;

(ee) The communications between Watson Wyatt and the U.K. Pension Trustee and

NNUK in relation to the reports referred to in (dd) in the period 1998 through

2003; and

13

(ff)    The pension policies in respect of assets transferred out for plan members

exiting the Nortel Networks UK Pension Plan.

**12.    Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h))**

The Requesting Court requests that in the interest of justice you cause, by your proper

and usual process, the Witness to appear to be examined under oath or affirmation at the office

of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London

EC2V 5EH.

**13.    Special methods or procedure to be followed (Articles 3,i) and 9)**

13.1    The Requesting Court requests that Howard S. Zelbo, James L. Bromley,

Jeffrey A. Rosenthal, Lisa M. Schweitzer, Fred Hodara, David Botter, and Abid Qureshi, who

have been admitted to practice before it in the Action, be appointed as Commissioners

pursuant to Article 17 of the Convention, and be authorized to question the Witness on the

subjects identified above and elicit their sworn testimony.

13.2    Pursuant to Article 9 of the Convention it is requested that the legal

representatives of the U.S. Debtors and the U.S. Committee, and the legal representatives of

the Witness, if any, be permitted to conduct the examination of the Witness in England before

an impartial Barrister of the Bar of England and Wales (the "Examiner"), to be nominated by

Cleary Gottlieb Steen & Hamilton LLP, who, subject to approval by you, shall act as referee.

It is requested that the Witness be placed under oath or solemn affirmation in accordance with

whatever procedure English law provides for in these matters before answering the oral

questions and cross-questions on the subjects identified above which are put to them by the

legal representatives of the U.S. Debtors and the U.S. Committee, and the Witness' legal

representatives, if any.

13.3    The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with the relevant events and transactions in this complex matter.  Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible.  If the questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.4    The U.S. Debtors and the U.S Committee expect that their taking of the Witness' testimony will take one day.  Counsel for the U.S. Debtors and the U.S Committee are available to begin the testimony at such time and place as may be mutually agreed with the Witness' legal representatives, if any, and approved by you.

13.5    The Requesting Court also respectfully requests that the questions and the responses of the Witness be recorded verbatim and that the Witness sign the verbatim transcript or other record of his or her response to the questions.  The Requesting Court also respectfully requests that you cause the testimony of the Witness and all of the documents produced at his or her examination as a result of this Letter of Request be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case when required.

13.6    In the event the evidence cannot be taken in the manner requested above, the

Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of England and Wales.

13.7    The appearance of the Witness for his testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear.  However, the Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel the Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

**14.    Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)[4]**

Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

**15.    Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

None.

**16.    Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b))**

The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States, or would disclose a privileged communication between the Witness and the Witness' attorney.

Towers Watson may refuse to provide documents if providing such documents would

---

[4]    For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the U.S. Debtors to the jurisdiction of the courts of England and Wales, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the U.S. Debtors to accept service of any proceedings in England and Wales.

disclose a privileged communication between it and its attorneys.

**17.** **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

Nortel Networks Inc.
c/o Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the cost of the Examiner and the costs of the transcript of the evidence will be initially borne by the U.S. Debtors.  The U.S. Debtors' payment of any such fees and costs is without prejudice to the U.S. Debtors' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court, in the event that other parties request copies of the documents produced in connection with this request for documents.


DATE OF REQUEST                                        ........................................................


SIGNATURE AND SEAL OF THE                    ........................................................
REQUESTING AUTHORITY