IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**Nortel Networks Inc.,** *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>(Jointly Administered)<br><br>Related to Docket Nos. 9598, 9600, 9647, 966, 9674, 10151, 10170, 10452, 10454, 10603, 10730, 10731, 10732, 10741, 10742, 10744, 10848, 10850, 10851, 10852, 10853, 10854, 10848, 10866, 10867, 10869, 10870, 10872, 10873, 10874, 10875, 10876, 10877, 10879, 10885, 10886, 10887, 10888, 10889, 10890, 10891, 10893, 10894, 10895, 10896, 10897, 10898, 10900, 10901, 10903, 10904, 10906, 10907, 10911, 10922, 10923, 10925, 10926, 10932, 10936, 10940, 10953 |

## **MEMORANDUM OPINION**

Before this Court are the Motions filed by certain long-term disabled individuals generally stylized as *Nortel US Employee, Motion Compelling Debtors to Admit My Claim for Severance as Valid per Nortel Networks Severance Allowance Plan and Issue Payment;* the *Motion Compelling Debtors to Issue Payment for Severance Per Nortel Networks Severance Allowance Plan Upon Debtors Planned Termination of My Employment on June 30, 2013 by Mark R. Janis, a Nortel U.S. LTD Employee* [D.I. 10741] (the "Janis Motion"), filed on June 3, 2013; and all Joinders to the Janis Motion (the "Joinders") (all together, the "Movants" or "LTD Employees"). Resolution of these Motions turns on whether long-term

disabled individuals are included in NNI's Severance Allowance Plan, as amended and restated in 2008. For the reasons explained below, the Court will grant the Motions.

## I. BACKGROUND

On January 14, 2009, Nortel Networks Inc. ("NNI") and certain of its affiliates (collectively, the "Debtors")[1] petitioned for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq*. *See* Chapter 11 Voluntary Petition [D.I. 1]. Prior to filing for bankruptcy, the Debtors maintained two plans providing severance benefits to their employees for a non-voluntary loss of employment. The Plans are the Nortel Networks Severance Allowance Plan (*see* Decl. of John J. Ray III in Support of Debtors' Omnibus Objection [D.I. 10732] ("Ray Decl.") Ex. 1), and the Nortel Networks Enhanced Severance Allowance Plan (*see* Ray. Decl. Ex. 2. (collectively, the "Severance Plan")). Debtors' Omnibus Objection to Various Nortel US LTD Employees' Mots. [D.I. 10731] (the "Debtors Omnibus Objection") at 2-3.

On June 22, 2011, well after the Debtors petitioned for bankruptcy, the Court signed an *Order Appointing An Official Committee of Long-Term Disability Participants* [D.I. 5790] (hereafter, the "LTD Committee").

---

[1]    The U.S. Debtors in these Chapter 11 cases are Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.

On May 24, 2012, the Court issued an *Order Authorizing and Approving Procedures to Resolve or Otherwise Settle Claims of Employees Terminated Post-Petition.* [D.I. 7685]. On January 18, 2013, the Debtors and the LTD Committee jointly filed a Settlement Agreement[2], which sought permission for NNI to terminate the LTD Plan as of June 30, 2013, upon granting the LTD Committee an allowed general unsecured claim in the gross amount of $28,000,000 for the benefit of the members of the Settlement Class. Settlement Agreement at 3.

Beginning on March 7, 2013, LTD Employees filed motions seeking to determine the Debtors' liability to LTD Employees under the Severance Plans. *See, e.g.*, Najam Ud Dean, Nortel US LTD Employee, Motion to Compel Debtors to Admit My Claim for Severance Allowance as Valid Per Nortel Networks Severance Allowance Plan and Issue Payment [D.I. 9598].

Prior to the Court's approval of the Settlement Agreement, the LTD Committee filed on April 26, 2013, a *Motion to Compel Debtors to Disclose Critical Benefit Information Towards Discernment of Transition From LTD Plans to Retiree Plan* [D.I. 10364], which the Court approved on May 7, 2013[3]. Specifically, the LTD Committee sought to compel the "Debtors to disclose critical information with respect to Debtors['] intent towards

---

[2]   *Joint Motion Pursuant to 363 and 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023 to (I)(A) Preliminarily Approve the Settlement Agreement Regarding Long-Term Disability Plans and Claims, (B) Conditionally Certify a Class for Settlement Purposes Only, (C) Approve the Notice Procedures, and (D) Schedule a Fairness Hearing; and (II)(A) Finally Approve the Settlement Agreement, (B) Finally Certify a Class, (C) Authorize the Debtors to Terminate the LTD Plans, and (D) Grant Related Relief.* [D.I. 9304] (hereafter, the "Settlement Agreement").

[3]   *See Order Granting Nortel US LTD Employees' Motion Compelling Debtors to Disclose Critical Benefits Information Towards Discernment of Transition from LTD Plans to Retirement Plans* [D.I. 10462].

3

honoring Severance benefits promised LTD employees per Nortel Networks Severance Allowance Plan." Mot. to Compel Debtors to Disclose Critical Benefit Information at 1. On April 29, 2013, the Debtors filed a *Response to Nortel US LTD Employees Motion Compelling Debtors to Disclose Critical Benefit Information Towards Discernment of Transaction From LTD Plans to Retiree Plan.* [D.I. 10375]. In their Response, the Debtors stated their position that they did not have any obligation to pay the LTD Employees any severance amounts under the applicable Severance Plan. Resp. to Nortel US LTD Employee Mot. at 3.

On May 1, 2013, the Court approved the Settlement Agreement. *See Order (A) Approving the Settlement Agreement on a Final Basis (B) Certifying a Class for Settlement Purposes Only on a Final Basis (C) Authorizing the Debtors to Terminate the LTD Plans and (D) Granting related Relief* [D.I. 10406]. Also on May 1, 2013, the Court entered an *Order Approving Motion of the Official Committee of Long Term Disability Participants for Approval of Distribution and Related Relief* [D.I. 10411].

The Court heard argument on the LTD Employees' Motions on June 25, 2013. See Hr'g Mins. [D.I. 11028].

## II. PARTIES' POSITIONS

### A. LTD EMPLOYEES' POSITION

The many Motions and Joinders filed by the LTD Employees reflect similar language and arguments that can be summarized into a handful of key points. First, the LTD Employees argue that they are entitled to receive severance pay because

they meet all the criteria in the Debtors' Severance Plans. Janis Mot. ¶ 13. The LTD Employees primarily rely on the language in the Severance Plans[4] and the U.S. Benefits Nortel Networks Severance Allowance Plan Summary Plan Description (the "Severance Plan SPD"), Janis Mot. Ex. A. The LTD Employees refer Question 1 in the 2011 Severance SPD which states that the Severance Plan covers employees who are full-time or part-time employees of NNI. *See* Janis Mot., Ex. A. at 7. The LTD Employees then refer to Question 9 in the Severance Plan SPD which states that "[m]edical and authorized leaves of absence are not considered to be 'breaks' in employment." Janis Mot. Ex. A at 8. Long Term Disability is an authorized leave of absence approved by NNI's LTD Claims Administrator. Janis Mot. ¶ 12. The LTD Employees argue that if they were considered regular employees working 20 hours or more per week up until the moment of their disability and Long Term Disability is an authorized leave of absence, then their status as part-time or full-time employees has been maintained by the approved leave of absence. Janis Mot. ¶¶ 12, 13, 16.

The LTD Employees also rely on several other documents to support their position that Nortel has consistently considered LTD Employees to be "active employees." First, the LTD employees argue that the Settlement Agreement explicitly excluded claims under the Severance Plan as subject to release or expungement by the Debtors. Janis Mot. ¶ 23. *See also* Settlement Agreement at 11. Second, the LTD Employees argue that the "HR Shared Services U.S.–Termination Notification" sent by

---

[4] Here the Court refers to the 2008 Severance Plan, which was the last version of the Severance Plan to be updated and amended with new language and provisions.

the Debtors to LTD Employees in June 2010 ("June 2010 Notices") demonstrated that the LTD Employees maintained their employee status as full time or part-time, that their employment was terminated due to workforce reduction and that LTD Employees were offered severance allowance upon termination of the LTD Plan. Janis Mot. ¶ 21. *See also* Janis Mot. Ex. B. Third, the LTD Employees argue that the "Nortel Networks Inc. and Affiliated U.S. Debtors Retirement Election and Release Form for Long-Term Disabled Employees" which retiree eligible LTD Employees received on or about April 22, 2013 ("April 2013 Retirement Notice") also indicated that by participating in the Retiree Settlement, LTD Employees would waive any severance. Janis Mot. ¶ 22. *See also* Janis Mot. Ex. D.

### A. DEBTORS' RESPONSE

The Debtors' response is that Nortel's historical practice has always been to deny LTD Employees any severance unless they returned to active status at work and were subsequently terminated. Debtors' Omnibus Objection ¶ 10. The Debtors rely primarily on the language in the Severance Plan to argue that the LTD Employees do not meet the eligibility requirements that would entitle them to receive benefits under the Severance Plan. *Id.* ¶ 8. The Debtors refer to § 1.3(g), (i), (j) of the Severance Plans which require an individual to be an "Employee" of the Debtors who is regularly scheduled to work a minimum number of hours per week at the time of separation in order to be eligible for severance benefits. Debtors' Supplemental Omnibus Objection to Various Nortel US LTD Employees' Mots. [D.I. 10932] ("Debtors' Supplemental Omnibus Objection") ¶ 4.

6

The Debtors contend that LTD Employees are not active employees who are eligible "Employees" under the Severance Plan because they are not regularly scheduled to work at all during their period of disability. *Id.* Furthermore, the Debtors argue that § 2.5 of the Severance Plan requires as a condition precedent to receiving a severance allowance that an individual who otherwise qualifies for severance "must be an Employee…on the day immediately preceding the effective date of his termination." *See* Ray Decl. Ex. 2 at 10. The Debtors argue that LTD Employees are not "Employees" within the meaning of the Severance Plan on the day immediately preceding their termination from the Debtors because they were not regularly scheduled for work at any time prior to June 30, 2013. Debtors' Supplemental Omnibus Objection ¶ 7. Finally, the Debtors argue that the Severance Plan carves out individuals who would otherwise be considered "Employees" of the Debtors but are excluded from the definition of the Severance Plan and are not eligible for severance benefits. *Id.* ¶ 9.

The Debtors also address the additional documents which the LTD Employees rely on in their Motions and Joinders. First, the Debtors argue that language contained in the Severance Plan SPD does not govern entitlement to benefits, while the Severance Plan does. *Id.* ¶ 9. Moreover, Question 9 of the Severance Plan SPD contemplates that the Employee will return to work as an "Active Employee" and be subsequently terminated. *Id.* ¶ 10.

Second, the Debtors argue that claims arising under the Severance Allowance Plan were specifically excluded in the Settlement Agreement as the Debtors had not sought to terminate such plans with respect to LTD Employees, because the Debtors believed the Severance Plans was inapplicable to the LTD Employees. *Id.* ¶ 11.

Third, the Debtors argue that the June 2010 Notice was standard and included information that would not have been applicable to the individual employees with long term disability status. Debtors' Omnibus Objection ¶ 6. The Debtors also argue that the Cover Letter contained language which stated that certain provisions applied only if the employee qualified for benefits under the Severance Plans. *Id.* The Debtors also point out that two weeks after the June 2010 Notice, the Debtors sent notice retracting the Notice and making it clear that LTD Employees should disregard the previous language because it was no longer applicable. *Id.* The Debtors argue that the June 2010 Notice was not inconsistent with the Severance Plans because it expressly stated that an individual must be eligible under the relevant benefit plans to receive the benefits, regardless of whether an estimated benefit was listed on the attachments. *Id.* at ¶ 9. Additionally, the Debtors argue that the 2010 Notices could not have modified the Severance Plan. *Id.*

Fourth, the Debtors argue that the April 2013 Retirement Notice did not state that LTD Employees were entitled to severance and only served to confirm or clarify that those who voluntarily terminate their employment with the Debtors by retiring would waive any claim to severance as a result of their elective departure. Debtors' Supplemental Omnibus Objection ¶ 13.

## III. ANALYSIS

The Debtors opine that "denying the Motions requesting severance [by the LTD Employees] both is reasonable and consistent with a plain reading of the Severance Plans." Debtors' Omnibus Objection ¶ 8. The Court disagrees. At best, the Severance Plans are ambiguous to the status of LTD Employees. The Severance Plans cover any Employee with at least six (6) months of Service whose employment with NNI is terminated for particular reasons, including a reduction in workforce. *See* Ray Decl. Ex. 1 at § 2.1(a). "Employee" is defined under Article I of the Severance Plans to mean any "Full-Time Employee or Part-Time Employee, as defined herein, of the Employer." *Id.* at § 1.3(g). A "'Full-Time Employee' shall mean an Employee who is regularly scheduled to work at least thirty-five (35) hours per week, as determined solely by the Employer." *Id.* at § 1.3(i). A "'Part-Time Employee' shall mean an Employee who is regularly scheduled to work at least twenty (20) hours but less than thirty-five (35) hours per week, as determined solely by the Employer. *Id.* at § 1.3(j).[5] None of these definitions mention LTD Employees. Additionally, all LTD Employees were working at least twenty-hours per week up until the onset of disability. *See* Janis Mot. ¶ 10. There is no indication in the Severance Plans that the status as an LTD Employee alters the LTD Employees' status as Full-Time or Part-Time Employees under the Plan. The Debtors' reliance on § 2.5 is also not persuasive because that provision hinges on whether the employee is an "Employee" on the day immediately preceding the effective date of his

---

[5] This section is only applicable to the Nortel Networks Severance Allowance Plan and does not exist in the Enhanced Severance Allowance Plan.

9

termination. *See* Ray Decl. Ex. 1 at § 2.5. Because the Plan does not clarify whether the LTD Employees fit within the definition of "Employee" in the first place, this provision is not determinative of the LTD Employees' status. Finally, the Court observes that §1.3(g) of the Severance Plan outlines several types of employees who would traditionally be considered employees of NNI but are explicitly excluded from the definition of "Employee" under the Severance Plan. *See id.* at §1.3(g). Unlike other types of employees, § 1.3 does not explicitly exclude LTD Employees from the definition of "Employee."

Because the Court finds that the Severance Plan is ambiguous towards the treatment of LTD Employees, it will look to outside documents to determine the treatment of LTD Employees. *See La Fata v. Ratheon Co.*, 302 F.Supp.2d 398, 408 (E.D. Pa. 2004) (A severance policy under ERISA is interpreted under the principles of contract law. When plan provisions are ambiguous, extrisince evidence may used to aid in the interpretation.)

Three documents outside the Severance Plan establish that the LTD Employees were considered beneficiaries of the Severance Plans because their status as Part-Time or Full-Time Employees was maintained by an approved leave of absence. These documents are the Severance Plan SPD, the June 2010 Notice, and the April 2013 Retirement Notice.

The Severance Plans SPD demonstrate that LTD status was not considered a "break" in employment. First, the SPD do not explicitly exclude LTD Employees as beneficiaries of the Severance Plans. The Severance Plan SPD contains the same

definitions of "Employee," "Full-time" and "Part-time" as the Severance Plan Descriptions. *See* Janis Mot. Ex. A at 15-16. In addition, Question 1 "Does the Plan cover me?" is answered by "The Plan covers you if you are a Full-Time or Part-time Employee of Nortel Networks." *See Id.* at 4. The Severance Plan SPD continues "Some classes of Employees are not covered by the Plan. See Question 2 below for a description of which classes are excluded and for a description of Full-time and Part-time Employee." *Id.* Question 2 provides "The Plan also excludes certain categories of employees. Refer to the definition of "Employee" in the Glossary in this document for a detailed definition of "Employee" and list of exclusions." *Id.* Like the Severance Plans themselves, the Severance Plan SPD does not include LTD Employees as employees excluded from the severance plan. *See id.* at 5. Furthermore, Questions 8 and 9 together indicate that long term disability status, an authorized leave of absence, is not considered a discontinuance of service or employment with NNI. *Id.* at 8. Therefore, the Severance Plan SPD does not establish that LTD Employees are excluded from the Severance Plan. If anything, the Severance Plan SPD indicates that long term disability does not alter an employee's status as a full-time or part-time employee.

In addition, the April 2013 Retirement Notice also indicates that that LTD Employees are entitled to severance pay. The April 2013 Retirement Notice reads "…by electing to retire and completing and returning this election form you will…acknowledge that, in accordance with the terms of the Nortel Networks Severance Allowance Plan, the Nortel Networks Enhanced Severance Allowance Plan and Nortel's Past Practice, you are not entitled to severance benefits as a result of your

voluntary retirement from Nortel." Janis Mot. Ex. D at 4. The April 2013 Retirement Notice indicated that the terms of Severance Plan applied to the LTD Employees unless they voluntarily retired.

Finally, the June 2010 Notice also indicates that NNI has always considered LTD Employees "Employees" entitle to severance benefits. The Debtors are correct that the June 2010 Notice was later retracted. The letter stated that the LTD Employees should "disregard the Employment Termination Package and Cobra notifications you have already received as they are no longer applicable." See Ray Decl. Ex. 4. The Debtors are also correct that the June 2010 Notices cannot modify or amend the Severance Plan. However, the June 2010 Notice do shed light on how NNI viewed LTD Employees. On the first page of each June 2010 Notice distributed to the LTD Employees, the category "Employee Status" is listed as "F" for full-time or "P" for part-Time. *See* Janis Mot. Ex. B at 2. Furthermore, on the same page, the reason for termination is listed as "work force reduction." *Id.* The June 2010 Notice clearly indicate that LTD Employees were considered by NNI to be full-time or part-time employees who were being terminated due to a workforce reduction. Such language clearly mimics the terms used in the Severance Plan. Collectively, these three documents indicate that NNI treated LTD Employees as eligible beneficiaries under the Severance Plans.

The Severance Plan's treatment of LTD Employees is at best ambiguous and, at worst, non-existent. Additionally, all other documentation indicated that these LTD Employees would be beneficiaries under the Severance Plan. In light of this ambiguity and the reliance that LTD Employees placed on these documents, it would be unjust for

12

the Court to hold that the LTD Employees are not covered by the Severance Plan. Therefore, this Court finds that the LTD Employees are covered under the Severance Plans and should receive an allowed general unsecured claim to represent their interest in severance pay.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Movants have met their burden with respect to their Motions. Therefore, the Motions are **GRANTED.**

**BY THE COURT**:

Dated: July 16, 2013
Wilmington, Delaware

Kevin Gross
United States Bankruptcy Judge