# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re

NORTEL NETWORKS INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

## NOTICE OF SUBPOENA *DUCES TECUM*
## DIRECTED TO SUTHERLAND ASBILL & BRENNAN LLP

TO:    Sutherland Asbill & Brennan LLP
       The Grace Building, 40th Floor
       1114 Avenue of the Americas
       New York, New York 10036-7703

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure,

as made applicable by Rules 7034 and 9016 of the Federal Rules of Bankruptcy Procedure, the

court-appointed administrators and authorized foreign representatives (collectively, the "Joint

Administrators")[2] for Nortel Networks UK Limited ("NNUK") and certain of its affiliates

(collectively, and including NNUK, the "EMEA Debtors")[3] located in the region known as EMEA

---

1. The debtors in these chapter 11 cases (the "U.S. Debtors"), along with the last four digits of each tax identification number, are:  Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

2. The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited ("NNIR"), are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the English proceedings for NNIR are:  Alan Robert Bloom and David Martin Hughes.

3. The EMEA Debtors are:  NNUK; Nortel GmbH; Nortel Networks (Austria) GmbH; NNIR; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL;

(Europe, Middle East, and Africa) in proceedings under the *Insolvency Act 1986*, pending before the High Court of Justice of England and Wales (the "English Court"), by and through their undersigned counsel, caused to be served on Sutherland Asbill & Brennan LLP on July 26, 2013 the attached Subpoena requesting that Sutherland Asbill & Brennan LLP produce and permit for inspection and copying the documents listed on Schedule A annexed to the Subpoena (collectively, the "Document Requests") on or before the 22nd day of August, 2013, at 10:00 a.m. at the offices of Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004-1482, or at such other agreed time and place.  A true and correct copy of the Subpoena is attached hereto and incorporated herein by reference.

---

Nortel Networks S.A. ("NNSA"); Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

01:13956858.1

Dated: Wilmington, Delaware
July 30, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By: /s/ Michael S. Neiburg

James L. Patton (No. 2202)
Edwin J. Harron (No. 3396)
John T. Dorsey (No. 2988)
Michael S. Neiburg (No. 5275)

Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  302-571-6600
Fax:  302-571-1253

– and –

HUGHES HUBBARD & REED LLP

Neil J. Oxford
Kenneth M. Katz
Gabrielle Glemann

One Battery Park Plaza
New York, New York 10004
Telephone:  212-837-6000
Fax:  212-422-4726

*Counsel for the Joint Administrators*

3

01:13956858.1

# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SUBPOENA IN A CIVIL CASE

In re:

Nortel Networks Inc., *et al.*

                         Debtors.

-------------------------------------------------------------

Case No. 09-10138 (KG)
Jointly Administered
Bankr. D. Del.
Chapter 11
*PENDING IN THE UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF
DELAWARE*

To:     Sutherland Asbill & Brennan LLP
          The Grace Building, 40th Floor
          1114 Avenue of the Americas
          New York, New York 10036-7703

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED **to produce and permit inspection and copying the documents listed on the attached Schedule A at the place, date and time listed below.**

| PLACE: **Hughes Hubbard & Reed LLP**<br>       **One Battery Park Plaza**<br>       **New York, New York 10004-1482** | DATE AND TIME<br><br>**August 22, 2013 at 10:00 a.m. (ET)** |
|---|---|

YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)<br><br>**Counsel to the** Joint Administrators for Nortel Networks UK Limited and certain of its affiliates located in the region known as EMEA (Europe, Middle East, and Africa) | Date: **July 25, 2013** |
|---|---|

Issuing Officer's Name, Address, and Phone Number

     **Neil J. Oxford, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (212-837-6843)**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

| PROOF OF SERVICE | |
|---|---|
| DATE | PLACE |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on_____          _____
           DATE          SIGNATURE OF SERVER

                                           _____
                                           ADDRESS OF SERVER

**(c) Protecting a Person Subject to a Subpoena.**
  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction–which may include lost earnings and reasonable attorney's fees–on a party or attorney who fails to comply.
  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that –
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person – except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information;
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
    **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

    **(A)** *Documents*. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

    **(B)** *Form for Producing Electronically Stored Information Not Specified*. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonable usable form or forms.

    **(C)** *Electronically Stored Information Produced in Only One Form*. The person responding need not produce the same electronically stored information in more than one form.

    **(D)** *Inaccessible Electronically Stored Information*. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for that discovery.

**(2) *Claiming Privilege or Protection.***

    **(A)** *Information Withheld*. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

        **(i)** expressly make the claim; and

        **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

    **(B)** *Information Produced*. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any other copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A non-party's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

3

## SCHEDULE A

## DEFINITIONS

A.      "Concerning" or "concerning" shall mean assessing, describing, constituting, containing, discussing, embodying, evidencing, identifying, recording, referring to, reflecting, regarding, relating to, showing, or stating the subject matter identified.

B.      "Cost Sharing Method" shall mean the cost sharing or cost contribution Transfer Pricing arrangement that was used by one or more Nortel entities and was replaced by the RPSM.

C.      "Distribution Agreement" shall mean an agreement between NNL and another Nortel entity that governed the returns to the latter for its distribution of Nortel products and/or related services.

D.      "Document" or "document" shall mean a true copy of any writings, drawings, graphs, charts, photographs, phone records or other data compilations from which information can be obtained, whether maintained in hard copy or electronic form, including, but not limited to books, records, correspondence, notes or memoranda of personal conversations, telephone calls or interviews, contracts, agreements, communications, letters, diaries, appointment calendars, financial statements, reports, working papers, instructions, minutes or other communications (including but not limited to) inter- and intra-office communications, orders, invoices, statements, bills, checks, vouchers, ledger sheets, accounts, journals, cancelled checks, bank statements, bank instructions and confirmations, statements of accounts, analyses, diaries, graphs, notebooks, charts, tables, tabulations, indices, summaries or records of meetings or conferences, summaries, reports of investigations or negotiations, opinions or reports of accountants or consultants.

E.    "EMEA Entity" shall mean any of the following entities and any agents, directors,

officers, employees, secondees, or representatives thereof:  Nortel Networks UK Limited; Nortel

Networks (Ireland) Limited; Nortel Networks S.A.; Nortel Networks NV; Nortel Networks SpA;

Nortel Networks B.V.; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel

Networks (Austria) GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Service Kft;

Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks Romania

SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International

Finance & Holding B.V.; Nortel Networks France S.A.S.; Nortel Networks AG; Nortel

Networks AS; Nortel Networks South Africa (Proprietary) Limited; Nortel Networks Optical

Components Limited; and Nortel Networks (Northern Ireland) Limited.

F.    "EY" shall mean Ernst & Young Global Limited, a United Kingdom company,

and the member firms of Ernst & Young Global Limited (including but not limited to member

firms with offices in the United States, Canada, the United Kingdom, France, and Ireland), the

divisions, subsidiaries, and affiliates of Ernst & Young Global Limited and its member firms,

and any present or former officers, directors, employees, agents, representatives, attorneys and

persons acting on behalf of Ernst & Young Global Limited and its member firms.

G.    "MRDA" shall mean the Master Research and Development Agreement among

Nortel Networks Limited, Nortel Networks Inc., Nortel Networks UK Limited, Nortel Networks

S.A., Nortel Networks France S.A.S., Nortel Networks Australia, and Nortel Networks (Ireland)

Limited, dated December 22, 2004, and all amendments or addenda thereto.

H.    "NNL" shall mean Nortel Networks Limited and any agents, directors, officers,

employees, secondees, or representatives thereof.

I.    "NNUK" shall mean Nortel Networks UK Limited and any agents, directors,

officers, employees, secondees, or representatives thereof.

J.       "NN Technology" shall mean any and all intangible assets, including patents, industrial designs, copyrights, and applications thereof, derivative works, technical know-how, drawings, reports, practices, specifications, designs, software, and other documentation or information produced or conceived as a result of research and development by or for any Nortel entity.

K.       "Nortel" shall mean any entity within the global enterprise of NNL and its corporate affiliates, including all parent companies, holding companies, affiliates, subsidiaries, and branches of any Nortel entity, whether domestic or foreign, direct or indirect, and any agents, servants, directors, employees, or representatives of each of the foregoing.

L.       "Person" shall mean and include a natural person, individual, partnership, firm, labor organization, corporation, governmental body, or any kind of business or legal entity, its agents or employees.

M.       The "Relevant Period" shall mean January 1, 1999 through January 14, 2009.

N.       "RPSM" shall mean the methodology of Transfer Pricing known as the Residual Profit Split Methodology, including the methodology that was applied by one or more Nortel entities with effect from January 1, 2001.

O.       "Sutherland" shall mean Sutherland Asbill & Brennan LLP, a District of Columbia limited liability partnership and each of Sutherland's present or former officers, directors, employees, agents, representatives, attorneys and persons acting on behalf of Sutherland.

P.       "Tax Authority" shall mean any tax or revenue authorities in Canada, the U.S., the U.K., France, Ireland, or in any other jurisdiction relevant to an EMEA Entity, including the Internal Revenue Service, Canada Revenue Agency, Her Majesty's Revenue & Customs, the

3

French Tax Authority, the French Revenue Authority, the French General Tax Office, and all state and federal tax authorities.

Q.    "Transfer Pricing" shall mean the inter-company pricing methodologies and arrangements, including in relation to the allocation of costs, revenue and/or profit, that were applied, reviewed, discussed, or considered for application as between the various Nortel entities from time to time, including but not limited to the Cost Sharing Method, the RPSM, the MRDA and the Distribution Agreements.

R.     "Transfer Pricing Arrangement(s)" shall mean any scheme or practice of distributing moneys or assets between Nortel entities.

S.   "You," "your," and "yours" shall mean Sutherland.

## **INSTRUCTIONS**

1.    You shall produce all documents called for by these Document Requests that are in your possession, custody or control, including but not by way of limitation, documents in the possession of representatives, agents, servants, employees, accountants, attorneys, investment advisors or financial advisors.

2.    Documents and things shall be produced in full, without abbreviation or expurgation, regardless of whether Sutherland considers the entire document to be relevant or responsive.

3.    Documents and things should be produced pursuant to Rule 34(b) of the Federal Rules of Civil Procedure (as made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7034 and 9014) as they are kept in the usual course of business or organized and labeled to correspond to the categories identified in these Document Requests.

4.    Whenever necessary to bring within the scope of these requests documents that might otherwise be construed to be outside their scope:

4

a.   the use of a verb in any tense shall be construed as the use of that verb in all other tenses;

b.   the use of a word in its singular form shall be construed to include within its use the plural form as well;

c.   the use of a word in its plural form shall be construed to include within its use the singular form as well;

d.   the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Document Requests all responses  that might otherwise be construed to be outside of its scope;

e.   the terms "all" and "each" shall be construed as both all and each; and the term "any" shall be construed as any and all; and

f.   the term "including" shall be construed to mean "including, without limitation."

5.   With respect to any document or thing responsive to these Requests that is withheld from production based on a claim of privilege, or for any other reason, the following information shall be provided in the objection:  (i) the type of Document; (ii) the general subject matter of the Document; (iii) the date of the Document; (iv) such other information as is necessary to identify the Document for a subpoena *duces tecum*, including the author of the Document, the addressee of the Document, copyee or other recipients of the Document, and where not apparent, the relationship of the author, addressee and recipients to each other; and (v) identification of the nature of the privilege (including work product) that is being claimed. To the extent that any document is withheld from production on the bases of privilege and also

5

contains non-privileged information, such document shall be produced with privileged

information redacted.

6.      Please provide documents as single-page TIFFs, with document level OCR,

delimited (.DAT) document load file, LFP or OPT image load files, and metadata for the

following fields: BegDoc, EndDoc, BegAttach, EndAttach, Subject, FileName, SentDate,

Created Date, Last Modified Date, Author, From, To, CC, BCC, Recipients, Custodian, FilePath,

Parent, MD5, ConfidentialStamp, TextPath, and FilePath.

7.      Please provide separate copies of spreadsheets (Excel), presentations

(PowerPoint), and database files in their native format.  The produced file should be named with

the Bates number of the first page of the corresponding TIFF production of the document (*e.g.*,

"SAB0000001.xls").

8.      Unless otherwise specified, the time period encompassed by these Document

Requests shall apply to documents obtained, created, or revised during the Relevant Period.


## DOCUMENT REQUESTS

REQUEST NO. 1.      Documents, including engagement letters, sufficient to show the

scope, duration, objectives, and nature of services rendered or to be rendered during the Relevant

Period by You for or on behalf of any Nortel entity, or the Nortel entities on a consolidated basis.

REQUEST NO. 2.      Documents sufficient to show bills and/or invoices, including all

narrative descriptions of the work undertaken, prepared by You concerning services rendered or

to be rendered by You for or on behalf of any Nortel entity, or the Nortel entities on a

consolidated basis, for the Relevant Period.

REQUEST NO. 3.    Documents sufficient to show Sutherland personnel who billed or recorded time concerning services rendered for or on behalf of any Nortel entity, or the Nortel entities on a consolidated basis, for the Relevant Period, and, with respect to each time entry, the amount of time billed or recorded, any description of the work performed, and the matter and/or engagement to which the time was billed or recorded.

REQUEST NO. 4.    All documents concerning the legal or beneficial ownership of any NN Technology by and between any Nortel entity or Nortel entities.

REQUEST NO. 5.    All documents concerning the exploitation of any NN Technology by and between any Nortel entity or Nortel entities.

REQUEST NO. 6.    All documents concerning the allocation of litigation expenses or proceeds (including but not limited to attorneys' fees, judgments, or settlements) by one or more Nortel entities concerning the prosecution, defense, or enforcement of any NN Technology.

REQUEST NO. 7.    All documents concerning Transfer Pricing Arrangements considered or applied by Nortel during the Relevant Period, including the Cost Sharing Agreement, RPSM, the MRDA and the Distribution Agreements, and including without limitation:

a.    documents concerning the change in Transfer Pricing Arrangement from the Cost Sharing Agreement to RPSM;

b.    any intra-group agreements between or among one or more Nortel entities implementing, or relating to, the Transfer Pricing Arrangements (including the MRDA and the Distribution Agreements), and documents concerning such agreements;

7

c.      documents concerning the design, development, evaluation, assessment, approval, adoption, implementation, operation, impact or amendment of the RPSM;

d.      the calculations or model(s) underlying the RPSM, and documents concerning such calculations or model(s);

e.      documents concerning the costs, losses, expenses or profits considered for inclusion in or exclusion from the RPSM or the MRDA and their treatment under the RPSM and the MRDA, including vendor financing losses, headquarter or stewardships costs, regional head office costs, restructuring costs, foreign exchange gains and losses, gains and losses on sale of business and amortization of intangibles;

f.      documents concerning the Functional Routine Return and/or the Functional Rate of Return (as those terms are used in the MRDA);

g.      documents concerning the effective life of Nortel's intellectual property as considered with respect to or reflected in the Transfer Pricing Arrangements and in the MRDA;

h.      documents concerning the arm's length nature of the RPSM, the MRDA or the Distribution Agreements;

i.      documents reviewed, received from, created, used, provided or submitted to, or relied upon in connection with the approval, rejection, acceptance, amendment (proposed or actual), or assessment by any Tax Authority of any Transfer Pricing Arrangement during the Relevant Period; and

j.      any documents related to the interpretation or amendment of any of the legal agreements implementing Nortel's Transfer Pricing Arrangements

8

for that Nortel entity, including but not limited to the MRDA and the Distribution Agreements.

REQUEST NO. 8.    All documents concerning acquisitions or the transfer, sale, or other disposition of assets, or the assumption of liabilities by any Nortel entity, or the Nortel entities on a consolidated basis, including but not limited to the sale of the Universal Mobile Telecommunications System ("UMTS") business to Alcatel Lucent S.A. in December 2006.

REQUEST NO. 9.    All documents concerning any proposed or actual corporate restructuring of NNUK, including but not limited to documents concerning the proposed or actual tax treatment of such corporate restructuring.

REQUEST NO. 10.    All documents concerning the proposed or actual exit of any Nortel entity from the Transfer Pricing Arrangements, including the Cost Sharing Method, the MRDA, the Distribution Agreements or the RPSM.

REQUEST NO. 11.    All documents received from or sent to EY regarding any Nortel entity, or the Nortel entities on a consolidated basis.

9

# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

## SUBPOENA IN A CIVIL CASE

In re:

Nortel Networks Inc., *et al.*

                              Debtors.

---------------------------------------------------------------

Case No. 09-10138 (KG)
Jointly Administered
Bankr. D. Del.
Chapter 11
*PENDING IN THE UNITED STATES*
*BANKRUPTCY COURT FOR THE DISTRICT OF*
*DELAWARE*

To:     Sutherland Asbill & Brennan LLP
           The Grace Building, 40th Floor
           1114 Avenue of the Americas
           New York, New York 10036-7703

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED **to produce and permit inspection and copying the documents listed on the attached <u>Schedule A</u> at the place, date, and time listed below.**

| PLACE:  **Hughes Hubbard & Reed LLP**<br>**One Battery Park Plaza**<br>**New York, New York 10004-1482** | DATE AND TIME<br>**August 22, 2013 at 10:00 a.m. (ET)** |
|---|---|

YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) | Date:  **July 25, 2013** |
|---|---|
| **Counsel to the** Joint Administrators for Nortel Networks UK Limited and certain of its affiliates located in the region known as EMEA (Europe, Middle East, and Africa) | |

Issuing Officer's Name, Address, and Phone Number
     **Neil J. Oxford, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (212-837-6843)**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on_____        _____
            DATE                                SIGNATURE OF SERVER

                                                _____
                                                ADDRESS OF SERVER

**(c) Protecting a Person Subject to a Subpoena.**

   **(1)** *Avoiding Undue Burden or Expense; Sanctions*.  A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and impose an appropriate sanction–which may include lost earnings and reasonable attorney's fees–on a party or attorney who fails to comply.

   **(2)** *Command to Produce Materials or Permit Inspection.*

      **(A)** *Appearance Not Required*.  A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

      **(B)** *Objections*.  A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested.  The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.  If an objection is made, the following rules apply:

         **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

         **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

   **(3)** *Quashing or Modifying a Subpoena.*

      **(A)** *When Required*.  On timely motion, the issuing court must quash or modify a subpoena that –

         **(i)** fails to allow a reasonable time to comply;

         **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person – except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

         **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

         **(iv)** subjects a person to undue burden.

      **(B)** *When Permitted*.  To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

         **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

         **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

         **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

      **(C)** *Specifying Conditions as an Alternative*.  In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

         **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

         **(ii)** ensures that the subpoenaed person will be reasonably compensated.

2

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonable usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for that discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any other copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A non-party's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

## DEFINITIONS

A.      "Concerning" or "concerning" shall mean assessing, describing, constituting, containing, discussing, embodying, evidencing, identifying, recording, referring to, reflecting, regarding, relating to, showing, or stating the subject matter identified.

B.      "Cost Sharing Method" shall mean the cost sharing or cost contribution Transfer Pricing arrangement that was used by one or more Nortel entities and was replaced by the RPSM.

C.      "Distribution Agreement" shall mean an agreement between NNL and another Nortel entity that governed the returns to the latter for its distribution of Nortel products and/or related services.

D.      "Document" or "document" shall mean a true copy of any writings, drawings, graphs, charts, photographs, phone records or other data compilations from which information can be obtained, whether maintained in hard copy or electronic form, including, but not limited to books, records, correspondence, notes or memoranda of personal conversations, telephone calls or interviews, contracts, agreements, communications, letters, diaries, appointment calendars, financial statements, reports, working papers, instructions, minutes or other communications (including but not limited to) inter- and intra-office communications, orders, invoices, statements, bills, checks, vouchers, ledger sheets, accounts, journals, cancelled checks, bank statements, bank instructions and confirmations, statements of accounts, analyses, diaries, graphs, notebooks, charts, tables, tabulations, indices, summaries or records of meetings or conferences, summaries, reports of investigations or negotiations, opinions or reports of accountants or consultants.

E.      "EMEA Entity" shall mean any of the following entities and any agents, directors, officers, employees, secondees, or representatives thereof:  Nortel Networks UK Limited; Nortel Networks (Ireland) Limited; Nortel Networks S.A.; Nortel Networks NV; Nortel Networks SpA; Nortel Networks B.V.; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel Networks (Austria) GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International Finance & Holding B.V.; Nortel Networks France S.A.S.; Nortel Networks AG; Nortel Networks AS; Nortel Networks South Africa (Proprietary) Limited; Nortel Networks Optical Components Limited; and Nortel Networks (Northern Ireland) Limited.

F.      "EY" shall mean Ernst & Young Global Limited, a United Kingdom company, and the member firms of Ernst & Young Global Limited (including but not limited to member firms with offices in the United States, Canada, the United Kingdom, France, and Ireland), the divisions, subsidiaries, and affiliates of Ernst & Young Global Limited and its member firms, and any present or former officers, directors, employees, agents, representatives, attorneys and persons acting on behalf of Ernst & Young Global Limited and its member firms.

G.      "MRDA" shall mean the Master Research and Development Agreement among Nortel Networks Limited, Nortel Networks Inc., Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks France S.A.S., Nortel Networks Australia, and Nortel Networks (Ireland) Limited, dated December 22, 2004, and all amendments or addenda thereto.

H.      "NNL" shall mean Nortel Networks Limited and any agents, directors, officers, employees, secondees, or representatives thereof.

I.      "NNUK" shall mean Nortel Networks UK Limited and any agents, directors, officers, employees, secondees, or representatives thereof.

2

J.      "NN Technology" shall mean any and all intangible assets, including patents, industrial designs, copyrights, and applications thereof, derivative works, technical know-how, drawings, reports, practices, specifications, designs, software, and other documentation or information produced or conceived as a result of research and development by or for any Nortel entity.

K.      "Nortel" shall mean any entity within the global enterprise of NNL and its corporate affiliates, including all parent companies, holding companies, affiliates, subsidiaries, and branches of any Nortel entity, whether domestic or foreign, direct or indirect, and any agents, servants, directors, employees, or representatives of each of the foregoing.

L.      "Person" shall mean and include a natural person, individual, partnership, firm, labor organization, corporation, governmental body, or any kind of business or legal entity, its agents or employees.

M.      The "Relevant Period" shall mean January 1, 1999 through January 14, 2009.

N.      "RPSM" shall mean the methodology of Transfer Pricing known as the Residual Profit Split Methodology, including the methodology that was applied by one or more Nortel entities with effect from January 1, 2001.

O.      "Sutherland" shall mean Sutherland Asbill & Brennan LLP, a District of Columbia limited liability partnership and each of Sutherland's present or former officers, directors, employees, agents, representatives, attorneys and persons acting on behalf of Sutherland.

P.      "Tax Authority" shall mean any tax or revenue authorities in Canada, the U.S., the U.K., France, Ireland, or in any other jurisdiction relevant to an EMEA Entity, including the Internal Revenue Service, Canada Revenue Agency, Her Majesty's Revenue & Customs, the

French Tax Authority, the French Revenue Authority, the French General Tax Office, and all state and federal tax authorities.

Q.    "Transfer Pricing" shall mean the inter-company pricing methodologies and arrangements, including in relation to the allocation of costs, revenue and/or profit, that were applied, reviewed, discussed, or considered for application as between the various Nortel entities from time to time, including but not limited to the Cost Sharing Method, the RPSM, the MRDA and the Distribution Agreements.

R.    "Transfer Pricing Arrangement(s)" shall mean any scheme or practice of distributing moneys or assets between Nortel entities.

S.  "You," "your," and "yours" shall mean Sutherland.

## INSTRUCTIONS

1.    You shall produce all documents called for by these Document Requests that are in your possession, custody or control, including but not by way of limitation, documents in the possession of representatives, agents, servants, employees, accountants, attorneys, investment advisors or financial advisors.

2.    Documents and things shall be produced in full, without abbreviation or expurgation, regardless of whether Sutherland considers the entire document to be relevant or responsive.

3.    Documents and things should be produced pursuant to Rule 34(b) of the Federal Rules of Civil Procedure (as made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7034 and 9014) as they are kept in the usual course of business or organized and labeled to correspond to the categories identified in these Document Requests.

4.    Whenever necessary to bring within the scope of these requests documents that might otherwise be construed to be outside their scope:

4

a. the use of a verb in any tense shall be construed as the use of that verb in all other tenses;

b. the use of a word in its singular form shall be construed to include within its use the plural form as well;

c. the use of a word in its plural form shall be construed to include within its use the singular form as well;

d. the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Document Requests all responses that might otherwise be construed to be outside of its scope;

e. the terms "all" and "each" shall be construed as both all and each; and the term "any" shall be construed as any and all; and

f. the term "including" shall be construed to mean "including, without limitation."

5. With respect to any document or thing responsive to these Requests that is withheld from production based on a claim of privilege, or for any other reason, the following information shall be provided in the objection: (i) the type of Document; (ii) the general subject matter of the Document; (iii) the date of the Document; (iv) such other information as is necessary to identify the Document for a subpoena *duces tecum*, including the author of the Document, the addressee of the Document, copyee or other recipients of the Document, and where not apparent, the relationship of the author, addressee and recipients to each other; and (v) identification of the nature of the privilege (including work product) that is being claimed. To the extent that any document is withheld from production on the bases of privilege and also

5

contains non-privileged information, such document shall be produced with privileged information redacted.

6.      Please provide documents as single-page TIFFs, with document level OCR, delimited (.DAT) document load file, LFP or OPT image load files, and metadata for the following fields: BegDoc, EndDoc, BegAttach, EndAttach, Subject, FileName, SentDate, Created Date, Last Modified Date, Author, From, To, CC, BCC, Recipients, Custodian, FilePath, Parent, MD5, ConfidentialStamp, TextPath, and FilePath.

7.      Please provide separate copies of spreadsheets (Excel), presentations (PowerPoint), and database files in their native format.  The produced file should be named with the Bates number of the first page of the corresponding TIFF production of the document (*e.g.*, "SAB0000001.xls").

8.      Unless otherwise specified, the time period encompassed by these Document Requests shall apply to documents obtained, created, or revised during the Relevant Period.

## DOCUMENT REQUESTS

REQUEST NO. 1.      Documents, including engagement letters, sufficient to show the scope, duration, objectives, and nature of services rendered or to be rendered during the Relevant Period by You for or on behalf of any Nortel entity, or the Nortel entities on a consolidated basis.

REQUEST NO. 2.      Documents sufficient to show bills and/or invoices, including all narrative descriptions of the work undertaken, prepared by You concerning services rendered or to be rendered by You for or on behalf of any Nortel entity, or the Nortel entities on a consolidated basis, for the Relevant Period.

6

REQUEST NO. 3.    Documents sufficient to show Sutherland personnel who billed or recorded time concerning services rendered for or on behalf of any Nortel entity, or the Nortel entities on a consolidated basis, for the Relevant Period, and, with respect to each time entry, the amount of time billed or recorded, any description of the work performed, and the matter and/or engagement to which the time was billed or recorded.

REQUEST NO. 4.    All documents concerning the legal or beneficial ownership of any NN Technology by and between any Nortel entity or Nortel entities.

REQUEST NO. 5.    All documents concerning the exploitation of any NN Technology by and between any Nortel entity or Nortel entities.

REQUEST NO. 6.    All documents concerning the allocation of litigation expenses or proceeds (including but not limited to attorneys' fees, judgments, or settlements) by one or more Nortel entities concerning the prosecution, defense, or enforcement of any NN Technology.

REQUEST NO. 7.    All documents concerning Transfer Pricing Arrangements considered or applied by Nortel during the Relevant Period, including the Cost Sharing Agreement, RPSM, the MRDA and the Distribution Agreements, and including without limitation:

    a.    documents concerning the change in Transfer Pricing Arrangement from the Cost Sharing Agreement to RPSM;

    b.    any intra-group agreements between or among one or more Nortel entities implementing, or relating to, the Transfer Pricing Arrangements (including the MRDA and the Distribution Agreements), and documents concerning such agreements;

c.   documents concerning the design, development, evaluation, assessment, approval, adoption, implementation, operation, impact or amendment of the RPSM;

d.   the calculations or model(s) underlying the RPSM, and documents concerning such calculations or model(s);

e.   documents concerning the costs, losses, expenses or profits considered for inclusion in or exclusion from the RPSM or the MRDA and their treatment under the RPSM and the MRDA, including vendor financing losses, headquarter or stewardships costs, regional head office costs, restructuring costs, foreign exchange gains and losses, gains and losses on sale of business and amortization of intangibles;

f.   documents concerning the Functional Routine Return and/or the Functional Rate of Return (as those terms are used in the MRDA);

g.   documents concerning the effective life of Nortel's intellectual property as considered with respect to or reflected in the Transfer Pricing Arrangements and in the MRDA;

h.   documents concerning the arm's length nature of the RPSM, the MRDA or the Distribution Agreements;

i.   documents reviewed, received from, created, used, provided or submitted to, or relied upon in connection with the approval, rejection, acceptance, amendment (proposed or actual), or assessment by any Tax Authority of any Transfer Pricing Arrangement during the Relevant Period; and

j.   any documents related to the interpretation or amendment of any of the legal agreements implementing Nortel's Transfer Pricing Arrangements

8

for that Nortel entity, including but not limited to the MRDA and the Distribution Agreements.

REQUEST NO. 8.    All documents concerning acquisitions or the transfer, sale, or other disposition of assets, or the assumption of liabilities by any Nortel entity, or the Nortel entities on a consolidated basis, including but not limited to the sale of the Universal Mobile Telecommunications System ("UMTS") business to Alcatel Lucent S.A. in December 2006.

REQUEST NO. 9.    All documents concerning any proposed or actual corporate restructuring of NNUK, including but not limited to documents concerning the proposed or actual tax treatment of such corporate restructuring.

REQUEST NO. 10.    All documents concerning the proposed or actual exit of any Nortel entity from the Transfer Pricing Arrangements, including the Cost Sharing Method, the MRDA, the Distribution Agreements or the RPSM.

REQUEST NO. 11.    All documents received from or sent to EY regarding any Nortel entity, or the Nortel entities on a consolidated basis.