**EXHIBIT E**

CITATION: Nortel Networks Corporation (Re), 2013 ONSC 2612
COURT FILE NO.: 09-CL-7950
DATE: 20130503

**SUPERIOR COURT OF JUSTICE – ONTARIO**
**(COMMERCIAL LIST)**

RE:      IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION, Applicants

BEFORE:   MORAWETZ J.

COUNSEL:  D. Tay and J. Stam, for Nortel Networks Corporation

J. Salmas, for Wilmington Trust, National Association

Scott Bomhof and Andrew Gray, Nortel Networks Inc.

Arthur Jacques, Nortel Continuing Employees Committee

Michael Barrack and Bill Burden, Nortel Networks U.K. Pension Trustee and the U.K. Pension Protection Fund

S. Kukulowicz, for the Unsecured Creditors' Committee

Matthew Gottlieb, Tracy Wynne and Robin Schwill, for EHEA Debtors

Mark Zigler, for the Former & Disabled Canadian Employees

Lyndon Barnes, for the Former Directors

J. Pasquariello, B. Zarnett and Peter Ruby, for Ernst & Young Inc., Monitor

Paul Steep and Byron Shaw, for the Canadian Creditors' Committee

Gavin Finlayson and Jonathan Bell, for the Noteholder Group

Lily Harmer, for the Superintendent of Financial Institutions

HEARD:    APRIL 24, 2013

## ENDORSEMENT

[1]     On March 8, 2013, an endorsement was issued granting the allocation protocol motion of the Canadian Debtors and approving the form of allocation protocol presented by the Canadian Debtors subject to certain specified modifications. The cross-motion of the Joint Administrators seeking to direct the parties to the Interim Funding and Settlement Agreement to arbitrate the allocation dispute was dismissed.

[2]     The U.S. Court similarly granted the motion of the U.S. Debtors for approval of the allocation protocol and dismissed the cross-motion of the Joint Administrators to compel arbitration.

[3]     On April 3, 2013, I issued a further endorsement providing reasons in respect of the allocation protocol motion. On the same date, the U.S. Court issued an opinion.

[4]     The effect of the decisions of both courts is that allocation of the Nortel global sale proceeds and resolution of the claims filed by the EMEA Debtors, certain other inter-company creditors and the U.K. pension interests against the Canadian Debtors and the U.S. Debtors, respectively, will be resolved through a joint trial of this court and the U.S. Court, which trial is to commence on January 6, 2014.

[5]     On April 17, 2013, both this court and the U.S. Court scheduled this joint hearing to address a Litigation Timetable and Discovery Plan for this upcoming trial.

[6]     The joint hearing was conducted by way of video conference. His Honor Chief Judge Gross presided over the hearing in the U.S. Court. The joint hearing was conducted in accordance with the provisions of the Cross-Border Protocol, previously approved by both courts.

[7]     At the outset, a jurisdictional issue was raised as a result of a pending motion for leave to appeal and any appeal in respect of my decision of March 8, 2013 and the decision of the U.S. Court.

[8]     By agreement of the parties, nothing in the participation of the EMEA Debtors in this hearing or in complying with the allocation protocol or timetable directed by this court, shall prejudice their request for leave to appeal, or any appeal if leave is granted, from the order of this court released March 8, 2013 with reasons delivered on April 3, 2013. Any party may, however, rely in the leave to appeal or any appeal on any failure of the EMEA Debtors to expedite the leave to appeal or appeal or on the state of the proceedings under the allocation protocol at the time of the hearing of the leave to appeal or appeal.

[9]     In considering the issues relating to the Litigation Timetable and Discovery Plan, it is advisable to state the obvious. The trial is scheduled for January 6, 2014. It is the responsibility of all parties to be prepared to proceed on that date. This court expects the parties to communicate with each other, to cooperate with each other and to use their common sense in a productive way such that all parties will be prepared to commence the trial on January 6, 2014.

[10] Having considered the various submissions provided by the parties and, referencing the comparative chart filed by the U.S. Debtors entitled "Comparison of Parties' Litigation Timetables and Discovery Plans" (attached as Schedule A, (the "Chart")), the following directions are provided.

[11] For matters in this court, the *Rules of Civil Procedure* apply.

[12] All parties should take specific note of Rules 1.04(1) and (1.1), 29.1 and 29.2.

[13] At this stage of the proceedings, it is impossible to provide specific directions on certain issues that have been identified by the parties as they are hypothetical. Some of these issues will likely result in differences between the parties that will have to be adjudicated. To the extent that disputes arise in the weeks and months ahead, it could very well be that it will be necessary to have such disputes resolved by a judicial officer. This issue will be given further consideration, depending on the court's schedule. Rather, at this stage, it seems to me that it may be constructive to provide guidance in the form of a response to the Chart.

**SCHEDULING**

[14] The position put forth by the EMEA Claimants is accepted. Fact discovery is to last 4.5 months and be completed by September 27, 2013. Expert discovery lasts 1.5 months and is to be completed by December 6, 2013.

[15] In making this determination, I have taken into account that the EMEA Claimants and the U.K. Pension Claimants are major creditors in the global Nortel insolvency and it is necessary to ensure that they have the full opportunity to put forth their case, within the confines of the trial schedule.

**SEPARATE LITIGATIONS**

[16] The proposal of the U.S. Debtors is accepted. Although a joint trial will be conducted, this does not alter the fact that the U.S. Court and this court are separate and the independent jurisdiction and different procedural rules of each court need to be respected.

[17] All parties are expected to exhibit a considerable degree of cooperation in this area.

**LIMITATIONS ON DISCOVERY**

[18] In my view, it is both necessary and appropriate to provide for discovery groups, which require parties with aligned interests to serve consolidated discovery requests and notice depositions together. In this respect, the proposal of the U.S. Debtors is accepted.

[19] On the issue of the number of witnesses, in my view, it is premature to impose numerical limits on depositions at this stage. This issue may be revisited at a later stage.

## CORE PARTIES

[20]  It was noted, in submissions, that no additional parties have sought to be included as a Core Party since the release of the decisions on March 8, 2013. No additional parties are to be granted the status of Core Party, without leave of the court.

## EMEA CLAIM

[21]  The EMEA Debtors take issue with the submission of the Canadian Debtors that new pleadings be delivered. The EMEA Debtors have filed claims in response to the EMEA Claim Procedure Order. The Canadian Debtors and the Monitor are to respond to the claim, as filed.

## ELECTRONIC DOCUMENTS

[22]  With respect to issues relating to the Merrill database, I can see no principled reason why all parties should not have access to the database.

[23]  With respect to document discovery to electronic documents, the Monitor and the Canadian Debtors propose to use several tools to reach a balance, including:

(a) making use of the over 44,000 documents already produced by the parties for the purpose of mediation and stored in a Merrill Lextranet database;

(b) providing for parties to make limited and specific document discovery requests, so as to avoid fishing expeditions, extensive document search exercises and voluminous productions – or making any further relevant documents available.

[24]  In my view this proposal represents a reasonable approach under the circumstances, taking into account the available amount of time between now and the start of the trial. To the extent that there are unresolved issues, specific directions can be sought.

## MONITOR

[25]  In my view the parties will benefit from some general comment about the role of the Monitor. These comments are in response to the submission of the U.K. Pension Claimants that the only party who should respond to their claim is the Monitor who should deliver a responding pleading and that cross-examinations in connection with the Canadian claim should be conducted only by the Monitor and the U.K. Pension Claimants as the parties directly interested in the resolution of the claims.

[26]  It is not necessary to provide specific directions in respect of this issue. The role of a monitor may vary in each CCAA proceeding, but at all times, the monitor remains a court-appointed officer and whose position cannot be restricted in the manner suggested by the U.K. Pension Claimants. If further direction is required at some point in the future on this issue, directions can be sought.

[27]  The draft Litigation Timetables and the draft Discovery Plan attached to the submissions of the Canadian Debtors are to be amended to take into account the foregoing.

[28]    Finally, all parties should recognize that it is the objective of both the U.S. Court and this court to set out a fair, effective and efficient process designed to achieve a just result on the merits within the timelines that have been allocated. By the time the trial commences on January 6, 2014, these proceedings will have been ongoing for five years less one week. The issues involved in this joint trial were identified by the parties several years ago. It is time to have the issues determined with finality.

MORAWETZ J.

**Date:** May 3, 2013

## SCHEDULE A

|  | Scheduling | Separate Litigations | Reasonable Limitations on Discovery Plans |
|---|---|---|---|
| U.S. Debtors | Fact discovery last 3.5 months and is completed by August 30.<br><br>Expert discovery lasts 2.5 months and is completed by November 22. | Provides for separate discovery procedures for Allocation, U.S. Claims and Canadian Claims which reflects the independent jurisdiction and different procedural rules of each court.<br><br>Specifies which parties have standing to participate in each of the litigations. | Provides for discovery groups, which require parties with aligned interests to serve consolidated discovery requests and notice depositions together.<br><br>Limits discovery groups to 10 fact witness depositions, yielding a maximum of 30.<br><br>Produces indices of hard-copy documents; may provide hard-copy documents for inspection. |
| Monitor/CCC | Same end dates as U.S. Debtors.<br><br>Later date for the start of document discovery shortens this period by one week. | Provides for one discovery procedure for Allocation, U.S. Claims and Canadian Claims.<br><br>Allows parties without standing to propound discovery in US Claims. | Allows each Core Party to serve discovery requests individually, increasing objections and inefficiency.<br><br>Allows each Core Party to designate 10 fact witness depositions, yielding up to 100 or more depositions.<br><br>Aligned with U.S. Debtors re: hard-copy documents. |
| EMEA Claimants | Fact discovery lasts 4.5 months and is completed by September 27.<br><br>Expert discovery lasts less than 1.5 months and is completed by December 6. | Aligned with U.S. Debtors | Generally aligned with the U.S. Debtors on concept of discovery groups.<br><br>Disagree with U.S. Debtors that document requests should be "limited" and "reasonable".<br><br>Disagree with U.S. Debtors that numerical limits can be placed on depositions at this stage.<br><br>Aligned with U.S. Debtors re: hard-copy documents. |
| U.K. Pension Claimants | Fact discovery lasts 4.5 months and is completed by September 30.<br><br>Expert discovery lasts 1.5 months and is completed by December 15. | Aligned with U.S. Debtors. | Generally aligned with the U.S. Debtors on concept of discovery groups.<br><br>Disagree with U.S. Debtors that document requests should be "limited" and "reasonable" at this stage.<br><br>Disagree with U.S. Debtors that numerical limits can be placed on depositions at this stage.<br><br>Disagree with U.S. Debtors re: hard-copy documents; would require parties to search hard-copy documents. |