**EXHIBIT B**

**Request for International Judicial Assistance pursuant to the Hague Convention of 18
March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| **1.** | **Sender** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |
| **2.** | **Central Authority of<br>the Requested State** | The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| **3.** | **Person to whom the<br>executed request is<br>to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |

**4.   Specification of the date by which the requesting authority requires receipt of the
response to the Letter of Request**

| | |
|---|---|
| **Date** | Examination to occur on November 12 and 13 or as the parties may agree. |
| **Reason for urgency** | The trials for which the evidence will be used will begin on or after 31 March 2014.  The parties' pre-trial examinations must be concluded by 13 December 2013. |

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE
UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING
REQUEST:

| | | |
|---|---|---|
| **5.** *a* | **Requesting judicial<br>authority (Article 3,a)** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |
| *b* | **To the competent<br>authority of (Article 3,a)** | United Kingdom of Great Britain and Northern Ireland |

**6.** **Names and addresses of the parties and their representatives (including the representatives in the requested State) (Article 3,b)**

   *a*  **Plaintiff** (Claimants)         **Joint Administrators and EMEA Debtors**

       **Representatives**            Derek J.T. Adler
Amera Z. Chowhan
Gabrielle Glemann
Charles H. Huberty
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

James L. Patton
Edwin J. Harron
John T. Dorsey
Jamie Luton Chapman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Robin Schwill
Sean Campbell
Davies Ward Phillips & Vineberg LLP
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

Matthew P. Gottlieb
Lax O'Sullivan Scott Lisus LLP
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

John Whiteoak
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2HS

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Charlene D. Davis
Justin Alberto
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
Telephone: (302) 655-5000
Facsimile: (212) 658-6395

David Ward
William Burden
Lara Jackson
Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

Angela Dimsdale Gill
John Tillman
Matthew Bullen
Hogan Lovells International LLP
Atlantic House
Holborn Viaduct
London EC1A 2FG

*b*  **Defendants** (U.S. Debtors)        **Nortel Networks Inc.,** *et al.*[1]

    **Representatives**

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000

Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

---

[1]    The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

| *c* Other Parties | The Monitor and Canadian Debtors |
|---|---|
| **Representatives** | Ken Coleman |
| | Daniel Guyder |
| | Paul Keller |
| | Laura Hall |
| | James Barabas |
| | Michael Sadowitz |
| | Jacob S. Pultman |
| | Allen & Overy LLP |
| | 1221 Avenue of the Americas |
| | New York, New York 10020 |
| | Telephone: (212) 610-6300 |
| | Facsimile: (212) 610-6399 |
| | |
| | Marc Florent |
| | Allen & Overy LLP |
| | One Bishops Square |
| | London E1 6AD |
| | United Kingdom |
| | |
| | Mary F. Caloway |
| | Kathleen A. Murphy |
| | Buchanan Ingersoll & Rooney PC |
| | 1105 North Market Street |
| | Suite 1900 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 552-4200 |
| | Facsimile: (302) 552-4295 |
| | |
| | Jay Carfagnini |
| | Fred Myers |
| | Joseph Pasquariello |
| | Benjamin Zarnett |
| | Jessica Kimmel |
| | Peter Ruby |
| | Alan Mark |
| | Jason Wadden |
| | Lauren Butti |
| | Goodmans LLP |
| | Bay Adelaide Centre |
| | 333 Bay Street |
| | Suite 3400 |
| | Toronto, ON M5H 257 |
| | Telephone: (416) 979-2211 |
| | Facsimile: (416) 979-1234 |

5

Jennifer Stam
Derrick Tay
Peter Choe
Graham Smith
Gowling Lafleur Henderson LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Telephone: (416) 216-4000
Facsimile: (416) 216-3930

Alan Merskey
Norton Rose Canada LLP
TD Waterhouse Tower, Suite 2300
79 Wellington Street West, P.O. Box 128
Toronto, ON M5K 1H1
Telephone: (416) 216-4805
Facsimile: (416) 216-3930

**Official Committee of Unsecured Creditors**

Fred Hodara
David Botter
Robert A. Johnson
Abid Qureshi
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
Dentons Canada LLP

77 King Street West
4th Floor
Toronto, ON M5K 0A1
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

**7.      Nature of the proceedings and summary of claims (Article 3,c)**

7.1      This action, captioned <u>In re Nortel Networks Inc., et al.</u>, Case No. 09-10138

(KG) (the "<u>Action</u>"), is a bankruptcy proceeding pending before the Requesting Court.  On 14

January 2009 (the "<u>Petition Date</u>"), Nortel Networks Inc. ("<u>NNI</u>") and its affiliated debtors

(collectively, the "<u>U.S. Debtors</u>," and together with the U.S. Committee, the Canadian

Debtors, and the Monitor, each defined hereinafter, the "<u>Applicants</u>"), with the exception of

Nortel Networks (CALA) Inc. ("<u>NN CALA</u>"), each filed a voluntary petition for relief in the

Requesting Court under Chapter 11 of the United States Bankruptcy Code.  NN CALA filed

its petition on 14 July 2009.  NNI is incorporated in the United States in the State of Delaware,

with its former principal place of business in the State of North Carolina.  Other parties with

interests related to the U.S. Debtors include an Official Committee of Unsecured Creditors of

the U.S. Debtors (the "<u>U.S. Committee</u>").

7.2      Also on 14 January 2009, the U.S. Debtors' ultimate corporate parent, Nortel

Networks Corporation ("<u>NNC</u>"), NNI's direct corporate parent, Nortel Networks Limited

("<u>NNL</u>"), and certain of their Canadian affiliates (collectively, the "<u>Canadian Debtors</u>") filed

an application with the Ontario Superior Court of Justice (the "<u>Canadian Court</u>") under the

Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors, and a

monitor, Ernst & Young Inc. (the "<u>Monitor</u>"), was appointed by the Canadian Court.  Other

parties with interests related to the Canadian Debtors include a Canadian Creditors Committee

(the "<u>CCC</u>") and former directors and officers of the Canadian Debtors (the "<u>Directors and</u>

7

Officers").

7.3     On the same date, upon the request of Nortel Networks UK Limited ("NNUK")

and eighteen of its affiliates from the Europe, Middle East and Africa region (collectively with

NNUK, the "EMEA Debtors"), the High Court of Justice of England and Wales placed the

EMEA Debtors into administration, and appointed individuals from Ernst & Young LLP as

administrators (collectively, the "Joint Administrators").[2]  NNUK is an English corporation

with its former registered office at Maidenhead Office Park, Westacott Way, Maidenhead,

Berkshire SL6 3QH.[3]

7.4     Pursuant to a cross-border protocol, the Requesting Court and the Canadian

Court will hold coordinated cross-border trials commencing on or after 31 March 2014 (the

"Trials") to decide certain issues, including principally:  (i) the allocation of proceeds from

sales of the assets of the Nortel group among the U.S. Debtors, Canadian Debtors, and EMEA

Debtors (the "Allocation Dispute"); (ii) claims filed against the U.S. Debtors and Canadian

Debtors by NNUK, other EMEA Debtors, Nortel Networks AG and Nortel Networks AS (the

---

[2]     In addition to NNUK, orders of administration were sought with respect to: Nortel GmbH ("NN Germany"); Nortel Networks (Austria) GmbH ("NN Austria"); Nortel Networks (Ireland) Limited ("NN Ireland"); Nortel Networks AB ("NN Sweden"); Nortel Networks B.V. ("NN Holland"); Nortel Networks Engineering Service Kft ("NN Hungary"); Nortel Networks France S.A.S. ("NNSAS"); Nortel Networks Hispania, S.A. ("NN Spain"); Nortel Networks International Finance & Holding B.V. ("NNIF"); Nortel Networks N.V. ("NN Belgium"); Nortel Networks Oy ("NN Finland"); Nortel Networks Polska Sp. z.o.o. ("NN Poland"); Nortel Networks Portugal S.A. ("NN Portugal"); Nortel Networks Romania SRL ("NN Romania"); Nortel Networks S.A. ("NNSA"); Nortel Networks S.p.A. ("NN Italy"); Nortel Networks Slovensko, s.r.o. ("NN Slovakia"); and Nortel Networks, s.r.o. ("NN Czech Rep.").

[3]     In addition to the U.S. Debtors, U.S. Committee, Monitor, Canadian Debtors, CCC, Directors & Officers, EMEA Debtors, Joint Administrators, and UK Pension Claimants, additional parties have been designated as "Core Parties" in the proceedings before the U.S. Court and Canadian Court, with the right, *inter alia*, to participate fully in hearings relating to the Allocation Dispute.  The other Core Parties include the ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI and Nortel Networks Capital Corporation (the "Bondholders"); certain indenture trustees – Wilmington Trust, National Association; The Bank of New York Mellon; and Law Debenture Trust Company of New York – in respect of notes issued or guaranteed by Nortel affiliates; and other Nortel affiliates with an interest in the Allocation Dispute, which are Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited.

"<u>EMEA Claims</u>"); and (iii) claims filed against the U.S. Debtors and Canadian Debtors

relating to NNUK's pension fund (the "<u>U.K. Pension Claims</u>") by the Nortel Network UK

Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "<u>U.K. Pension</u>

<u>Trustee</u>"), and the Board of the Pension Protection Fund, a privately funded insurer (the

"<u>PPF</u>," and together with the U.K. Pension Trustee, the "<u>U.K. Pension Claimants</u>").  The

Applicants dispute the validity of the EMEA Claims and U.K. Pension Claims and have filed

objections to them.

   7.5  As part of the upcoming Trials, each party submitted to the Requesting Court

an allocation position detailing its proposed methodology for determining the allocation of

proceeds from sales of the assets of the Nortel group.  The parties' allocation positions put at

issue a variety of factors, including but not limited to the significance of intercompany

agreements governing transfer pricing to the estates' respective entitlement to Nortel

intellectual property; the proportion of Nortel's revenue and cash flow generated by the U.S.

Debtors, Canadian Debtors, and EMEA Debtors; the location and nature of Nortel's research

and development activities and the proportional contribution of the estates to such activities;

pre- and post-petition asset sales; and the locus of other fixed and intangible Nortel assets,

including customer relationships.[4]

---

[4]  The Core Parties' opening and responsive allocation positions are publicly available at
http://dm.epiq11.com/NNI/Project, under the docket numbers indicated:  allocation position of the Joint
Administrators and EMEA Debtors [D.I. 10536]; allocation position of the U.S. Debtors and U.S. Committee [D.I.
10537]; allocation position of the CCC [D.I. 10538]; allocation position of the U.K. Pension Claimants [D.I. 10539];
allocation position of the Bondholders [D.I. 10540]; allocation position of the Monitor and Canadian Debtors [D.I.
10543]; joinder of the Bank of New York Mellon in the allocation position of the U.S. Debtors and U.S. Committee
[D.I. 10547]; joinder of Law Debenture Trust Company of New York in the allocation position of the U.S. Debtors
and U.S. Committee and in the allocation position of the Bondholders [D.I. 10548]; joinder of Wilmington Trust,
National Association, in the allocation position of the Monitor and Canadian Debtors and in the allocation position
of the CCC [D.I. 10563]; responsive allocation submission of the Joint Administrators and EMEA Debtors [D.I.
10687]; responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10690]; joinder of Law
Debenture Trust Company of New York in the responsive allocation submission of the U.S. Debtors and U.S.
Committee [D.I. 10691]; responsive allocation submission of Wilmington Trust, National Association [D.I. 10692];
responsive allocation submission of the U.K. Pension Claimants [D.I. 10693]; responsive allocation submission of

7.6     The EMEA Claims and U.K. Pension Claims likewise put at issue a variety of factors, including but not limited to the solvency of the various EMEA Debtors during the years 2000 through 2008; whether NNUK had sufficient resources to fund the Nortel Networks UK Pension Plan and whether it is reasonable to impose upon the Canadian Debtors and U.S. Debtors an obligation to make up for any shortfall; and whether the EMEA Debtors were harmed by various Nortel arrangements and intercompany transactions, including Nortel's transfer pricing system, a transaction known as Project Swift and the accompanying reorganization of Nortel, certain intercompany loans and dividends, and sales of Nortel assets that preceded the Petition Date.[5]

7.7     All of the parties (including NNUK, the other EMEA Debtors, and the U.K. Pension Claimants) are currently engaged in the process of obtaining evidence by order of the Requesting Court and Canadian Court in anticipation of the Trials.

7.8     The evidence sought from the person identified below may be material to the resolution of these factual disputes.

---

the Bondholders [D.I. 10694]; responsive allocation submission of the CCC [D.I. 10695]; responsive allocation submission of the Monitor and Canadian Debtors [D.I. 10696].

[5]     The operative claims filed in the Requesting Court and objections thereto are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers or claim numbers indicated: amended claims of NNUK [C.I. 7786]; amended claims of NNSA's court-appointed liquidator [C.I. 7784]; amended claims of NNSA [C.I. 7785]; amended claims of NNIF [C.I. 7776]; amended claims of NNIR [C.I. 7774]; amended claims of NN Italy [C.I. 7775]; amended claims of NN Spain [C.I. 7787]; amended claims of NN Holland [C.I. 7780]; amended claims of NN Belgium [C.I. 7781]; amended claims of NN Poland [C.I. 7754]; amended claims of NN Switzerland [C.I. 7752]; amended claims of NN Germany [C.I. 7778]; amended claims of NN Portugal [C.I. 7751]; amended claims of NN Czech Rep. [C.I. 7782]; amended claims of NN Austria [C.I. 7755]; amended claims of NN Sweden [C.I. 7779]; amended claims of NN Hungary [C.I. 7756]; amended claims of NN Slovakia [C.I. 7750]; amended claims of NN Norway [C.I. 7762]; amended claims of NN Romania [C.I. 7783]; amended claims of NN Finland [C.I. 7753]; amended claims of the Nortel Networks U.K. Pension Trust Limited and Board of the Pension Protection Fund [C.I. 8357, 8358]; Joint Omnibus Objection to the Remaining Amended Claims Filed by the EMEA Claimants [D.I. 10521]; Joint Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and Board of the Pension Protection Fund [D.I. 10519]. The operative claims filed in the Canadian Court and objections thereto are publicly available at http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

**8.**        **Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1        Ms. Sharon Rolston was a Director of NNUK, NN Ireland and other EMEA

entities between 2006 and 2010.[6]  She was employed by Nortel in various finance-related roles

beginning in 1992, including in the United Kingdom from 1999, as Controller for the EMEA

region from 2005 to 2006, and as Vice President of Finance for the EMEA region from 2006

to 2008.  In response to interrogatories, the EMEA Debtors and U.K. Pension Claimants have

identified Ms. Rolston as among those persons affiliated with them most knowledgeable

regarding NNUK's role in the management and operations of the Nortel Group's EMEA

region and regarding Nortel's customer relationships.  In the course of their continuing review

of documents provided by the EMEA Debtors, the Applicants may identify additional subjects

regarding which Ms. Rolston is knowledgeable.

8.2        As a former director, vice president of finance, controller, and employee in

other finance-related roles, and as a person allegedly most knowledgeable about NNUK's role

in the management and operations of the Nortel Group's EMEA region and about customer

relationships, Ms. Rolston is likely to have knowledge relevant to the parties' allocation

positions, as discussed in paragraph 7.5 above.

8.3        As a former director, vice president of finance, controller, and employee in

other finance-related roles, Ms. Rolston is likely to have knowledge relevant to the EMEA

Claims and U.K. Pension Claims.  The factual predicates of the EMEA Claims and U.K.

---

[6]        Ms. Rolston served as a director of NNUK from 2006 to 2010, NN Finland from 2006 to 2010, NN Ireland from 2006 to 2010, NN Italy from 2006 to 2010, NN Sweden from 2006 to 2010, and  NN Spain from 2007 to 2010. In addition, from 2009 to 2010 she was a director of NN Austria, NN Belgium, NN Czech Rep, NN Germany, NN Holland, NN Hungary, NNIF, NN Poland, NN Portugal, NN Romania, NNSA, and NN Slovakia.

Pension Claims – including the alleged unfairness of Nortel's transfer pricing system, Project Swift, the accompanying reorganization of NNIF, intercompany loans and dividends, and pre-petition asset sales – relate to the time period of Ms. Rolston's directorships and/or her employment by Nortel, including as Controller or Vice President of Finance for Nortel's EMEA region.  The EMEA Claims and U.K. Pension Claims also allege that the EMEA Debtors' directors breached their fiduciary duties in connection with those transactions.

       8.4     Further, the EMEA Claims and U.K. Pension Claims allege, *inter alia*, that the U.S. Debtors and Canadian Debtors are liable to the EMEA Debtors in connection with the above transactions because the U.S. Debtors and Canadian Debtors dominated or controlled the decision-making of the EMEA Debtors.  To obtain the initial orders from the English Court placing the EMEA Debtors into administration, the EMEA Debtors submitted sworn witness statements from Ms. Rolston (the "Rolston Witness Statements"), which included various assertions relating to control over the EMEA Debtors.  The U.S. Debtors have argued that the Rolston Witness Statements (which were also filed in the Requesting Court in order to obtain recognition of the EMEA Debtors' administration proceedings) are inconsistent with the assertions in the EMEA Claims of U.S. or Canadian domination or control.

       8.5     Based upon these and other considerations, the Applicants have designated Ms. Rolston as a witness to be examined.

       8.6     As of the date of this application, the EMEA Debtors have indicated that they have attempted to contact Ms. Rolston, but are unable to voluntarily produce Ms. Rolston to be deposed.

       8.7     It is accordingly requested that for the purpose of justice and for due determination of the matters in dispute between the parties that you direct Ms. Rolston (the

"<u>Witness</u>") to provide oral testimony for use at the Trials (if appropriate) to counsel for the Applicants, subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court or the courts of England and Wales.  The Witness' unique importance to the claims and defenses in these proceedings is described both above and in the subject matter as to which she is to be examined, detailed in Section 10 below.  Absent voluntary cooperation, evidence from Ms. Rolston is available only by an order of the High Court.

| | | |
|---|---|---|
| **9.** | **Identity and address of any person to be examined (Article 3,e)** | Ms. Sharon Rolston<br>153 Hallowell Road<br>Northwood, MS, GB HA6 1DZ |

**10.**   **Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (Article 3,f)**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court or the courts of England and Wales on the following subjects:

(a)    The organization, management and operation of the Nortel group as a multinational enterprise, including as compared to other multinational enterprises and including the tax and treasury functions, accounting, cash management, planning, budgeting, research and development, sales, purchasing, manufacturing, outsourcing and third-party intellectual property licensing;

(b)    The history, functioning and organization of Nortel's "matrix" corporate structure, including how financial reporting was conducted and the EMEA Debtors' roles within the corporate structure;

(c)     The management, operations, and governance of the EMEA Debtors, including but not limited to the powers, actions, and control of the boards of directors and senior officers of the EMEA Debtors;

(d)     The identity and location of the EMEA Debtors' officers or other senior management responsible for finance and control functions, human resources, operational decisions, sales and dealings with customers, suppliers, taxation, the settlement of intercompany accounts, and treasury and banking functions;

(e)     The statements and factual assertions contained in the EMEA Debtors' Chapter 15 Petitions, the Rolston Witness Statements and the witness statements submitted by EMEA Director Michel Clément in support of those Chapter 15 Petitions;

(f)     The factual bases underlying recognition of the English Proceedings as foreign main proceedings as to the EMEA Debtors;

(g)     Facts in Ms. Rolston's knowledge that support, refute or otherwise pertain to the allegations made in the EMEA Claims and/or U.K. Pension Claims to the effect that NNC and/or NNL controlled the Nortel Group's operations, and that NNI participated in or assisted such control, including but not limited to control of group tax, transfer pricing, and treasury functions;

(h)     Facts in Ms. Rolston's knowledge that support, refute or otherwise pertain to the allegations made in the EMEA Claims and/or U.K. Pension Claims to the effect that the EMEA Debtors' own *de jure* directors breached their fiduciary duties or otherwise failed to act properly, any claims threatened or asserted or litigation commenced against any of the current or former directors or officers

14

of the EMEA Debtors related to their breaches of fiduciary duties or any of the matters alleged in the EMEA Claims and/or U.K. Pension Claims, and any communications with such directors regarding those proceedings or the subject matter of those proceedings;

(i)     Any policy, practice, or control concerning directors' and officers' fiduciary or other duties under relevant law;

(j)     The profitability, revenue, expenses, cash flow and value of, and accounting for, the various Nortel entities and Lines of Business;

(k)     Debt financing transactions and credit facilities;

(l)     Pre-petition Asset Sales involving the EMEA Debtors and the allocation of proceeds therefrom, including but not limited to related planning, negotiations, discussions, consideration, approvals and involvement by the boards of directors or personnel of the EMEA Debtors, any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect thereto, and the factual basis for the allegations in the EMEA Claims and/or U.K. Pension Claims concerning such sales;

(m)     Business acquisitions by Nortel, the significance of intellectual property in acquisitions as the value driver for the transactions, and the integration of acquired businesses into Nortel;

(n)     Pre-petition restructurings and associated costs;

(o)     Ownership, registration, maintenance, enforcement, valuation, amortization, business and/or strategic importance, licensing (intercompany, related party and third party), acquisition and sale of Nortel's intellectual property and associated

rights;

(p)    Intellectual property-related costs and revenue streams, allocation of such costs

and revenue streams and accounting therefor;

(q)    The organization, make-up and activity of Nortel's intellectual property-related

legal and business teams;

(r)    Valuations or analyses commissioned or conducted, whether pre-petition or

post-petition, concerning the value of Nortel's intellectual property, business

lines, research and development efforts or other business-related tangibles or

intangibles in any jurisdiction or for any subsidiary;

(s)    Agreements and practices among Nortel entities in respect of intellectual

property and rights and obligations in or to intellectual property;

(t)    Research and development planning, strategy, decision-making and policies;

(u)    Nortel companies' relative and respective contributions to research and

development;

(v)    The negotiation, drafting, approval, and operation of the Master Research and

Development Agreement ("MRDA") and its subsequent amendments, the

Residual Profit Split Method ("RPSM"), previous cost-sharing arrangements,

related agreements, and Nortel's transfer pricing system generally;

(w)    The involvement by the EMEA Debtors' boards of directors or personnel in

Nortel's transfer pricing arrangements or agreements, any analyses or advice

(whether internal or independent) provided to or relied on by such directors or

personnel in respect of transfer pricing, the role and responsibilities of the

EMEA Debtors' auditors with respect to transfer pricing, and the factual basis

16

for the allegations regarding transfer pricing made in the EMEA Claims and/or U.K. Pension Claims;

(x)     Advance Pricing Arrangements/Agreements ("APAs") and communications and filings with taxing authorities regarding any APAs;

(y)     The manner in which Nortel entities represented themselves to investors, credit agencies, governments or other third parties;

(z)     The outsourcing of Nortel's manufacturing business and related sale or outsourcing agreements;

(aa)    The accounting for and distribution of revenue and costs related to Nortel Lines of Business and any other Nortel revenue-generating activity;

(bb)    Sales, contracts and dealings with customers or suppliers, including policies, procedures, and practices used to determine which Nortel Entity received revenue from any customer or supplier relationships;

(cc)    The negotiation and drafting of the Interim Funding and Settlement Agreement ("IFSA") and Final Canadian Funding and Settlement Agreement ("FCFSA");

(dd)    The negotiation, deal structure, and closing of post-petition sales of Nortel assets;

(ee)    The purported "cash to Canada" policy discussed in the EMEA Claims and/or U.K. Pension Claims;

(ff)    Project Swift, the alleged extraction of cash from various Nortel subsidiaries prior to Project Swift, the accompanying reorganization of NNIF, and the facts in Ms. Rolston's knowledge that support, refute or otherwise pertain to the allegations in the EMEA Claims and/or U.K. Pension Claims relating thereto;

17

(gg)    Intercompany loans, intercompany dividends, and any other intercompany
        financing and/or borrowing of money among the Nortel entities, and the factual
        basis for the allegations in the EMEA Claims and/or U.K. Pension Claims
        relating thereto;

(hh)    Facts in Ms. Rolston's knowledge that support, refute or otherwise pertain to
        the allegations in the EMEA Claims and/or U.K. Pension Claims that NNI
        benefitted from Nortel policies, transactions, or other occurrences that allegedly
        harmed the EMEA Debtors;

(ii)    Any transactions, agreements or benefits received by NN CALA from the
        EMEA Debtors that either harmed the EMEA Debtors or for which the EMEA
        Debtors were not fairly compensated;

(jj)    The financial condition of the EMEA Debtors;

(kk)    The preparation, approval and auditing of the financial statements of the EMEA
        Debtors;

(ll)    Nortel human resources, including employee compensation, transfers, bonuses,
        benefit plans, pensions, hires, downsizing and terminations;

(mm)   The NNUK Pension Plan, including the valuation of the Plan (including any
        predecessor plans), decision-making, control, and governance in respect of the
        Plan, funding agreements or guarantees relating to any obligation of the Plan by
        any Nortel entity, negotiations with any Nortel entity or the Pension Trustee or
        The Pensions Regulator concerning the Plan or the funding thereof, the
        Contribution Holiday and the impact thereof on the Plan, and the expectations
        of the U.K. Pension Claimants and stakeholders in respect thereto;

(nn)    Dealings and understandings about any "common platform" and/or the

Reciprocal Agreement in respect of Nortel pension plans;

(oo)    The trading debt claims alleged in the EMEA Claims, any additional claims in

the EMEA Claims and/or U.K. Pension Claims not already addressed by these

deposition topics, and the factual basis for all such claims; and

(pp)    Any other matter relevant to the positions, claims, and defenses asserted by the

Core Parties before the Requesting Court and Canadian Court, including but

not limited to those contained in the filings referenced in footnotes 4 and 5.

**11.    Documents or other property to be inspected (Article 3,g)**

None.

**12.    Any requirement that the evidence be given on oath or affirmation and
any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper

and usual process, the Witness to appear to be examined under oath or affirmation at the office

of Herbert Smith Freehills LLP, Exchange House, Primrose Street, London EC2A 2HS.

**13.    Special methods or procedure to be followed (Articles 3,i and 9)**

13.1    The Requesting Court requests that Howard S. Zelbo, James L. Bromley,

Jeffrey A. Rosenthal, Lisa M. Schweitzer, Jacqueline Moessner, Marla Decker, Matthew

Gurgel, Brynn Lyerly, Justin L. Ormand, Katherine Wilson-Milne, Neil Forrest, Fred Hodara,

David Botter, and Abid Qureshi, who are representatives of the U.S. Debtors or the U.S.

Committee, and Ken Coleman, Daniel Guyder, Paul Keller, Laura Hall, James Barabas,

Michael Sadowitz and Jacob S. Pultman, who are representatives of the Monitor and Canadian

Debtors, be appointed as Commissioners pursuant to Article 17 of the Convention, and be

authorized to question the Witness on the subjects identified above and elicit her sworn testimony.

13.2     The Requesting Court is informed that the U.S. Debtors, the Canadian Debtors and the Monitor intend to seek a corresponding Letter of Request for assistance from the Canadian Court and therefore requests that, subject to its receipt, Sheila Block and Andrew Gray, who are representatives of the U.S. Debtors, and Benjamin Zarnett, Jessica Kimmel, Alan Mark, Alan Merskey, Fred Myers, Peter Ruby, Jason Wadden, Lauren Butti, Graham Smith and Peter Choe, who are representatives of the Canadian Debtors and the Monitor, and all of whom have been admitted to practice before the Canadian Court in the Trials, be appointed as Commissioners pursuant to the Ontario Rules of Civil Procedure, and be authorized to question the Witness on the subjects identified above and elicit her sworn testimony on the understanding that the Canadian Court's Letter of Request will similarly list the names of all of the same attorneys requested to be appointed as Commissioners pursuant hereto so that all questioning attorneys will be appointed by both courts before whom the Trials are to be conducted.

13.3     The Requesting Court further requests that Derek J.T. Adler, Amera Z. Chowhan, Gabrielle Glemann, and Charles H. Huberty, who are the representatives of the EMEA Debtors, and Marc Abrams, Brian E. O'Connor, and Sameer Advani, who are representatives of the U.K. Pension Claimants, Lyndon Barnes and Alex Cobb, who are representatives of the Directors and Officers, and Paul Steep, Elder Marques, Tim Hoeffner, Richard Hans, Ken Rosenberg and Lily Harmer, who are representatives of the Canadian Creditors Committee, be appointed as Commissioners and be authorized to participate, if they so elect, in questioning the Witness and to elicit her sworn testimony.

13.4    Pursuant to Article 9 of the Convention it is requested that the legal representatives of the U.S. Debtors and the U.S. Committee, the legal representatives of the Monitor and Canadian Debtors, the legal representatives EMEA Debtors and U.K. Pension Claimants, and the legal representatives of the Witness, if any, be permitted to conduct the examination of the Witness in England before an impartial Barrister of the Bar of England and Wales (the "Examiner"), to be nominated by the Applicants, who, subject to approval by you, shall act as referee.  It is requested that the Witness be placed under oath or solemn affirmation in accordance with whatever procedure English law provides for in these matters before answering the oral questions and cross-questions on the subjects identified above which are put to them by the legal representatives of the U.S. Debtors and the U.S. Committee, the legal representatives of the Monitor and Canadian Debtors, the legal representatives of the EMEA Debtors and U.K. Pension Claimants, and the Witness' legal representatives, if any.

13.5    The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with the relevant events and transactions in this complex matter.  Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible.  If the questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.6    The Requesting Court respectfully requests that the representatives of the U.S. Debtors and U.S. Committee be allotted a total of seven hours for their examination, that the representatives of the Monitor and Canadian Debtors be allotted a total of seven hours for their examination, and that representatives of the EMEA Debtors and U.K. Pension Claimants be allotted a total of one hour for their examination.  Counsel for these parties are available to

begin the examination at such a date during the period from 23 September 2013 through 13 December 2013 as may be mutually agreed with the Witness' legal representatives, if any, and approved by you.

13.7     The Requesting Court also respectfully requests that the questions and the responses of the Witness be recorded verbatim and that the Witness sign the verbatim transcript.  The verbatim transcript of the Witness' responses to questions under oath taken pursuant to the Letters of Request issued or endorsed by the Courts will be admissible at the Trials in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Courts), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Ontario rules of evidence or the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction.  The Requesting Court also respectfully requests that you cause the testimony of the Witness and all of the documents produced at her examination as a result of this Letter of Request be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case when required.

13.8     In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of England and Wales.

22

13.9    The appearance of each Witness for his testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear.  However, the Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel each Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

**14.    Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7)[7]**

>    Jonathan Kelly
>    Cleary Gottlieb Steen & Hamilton LLP
>    City Place House
>    55 Basinghall Street
>    London EC2V 5EH

**15.    Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8)**

>    None.

**16.    Specification of privilege or duty to refuse to give evidence under the law of the State of Origin (Article 11,b)**

The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States, or would disclose a privileged communication.

**17.    The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

>    Nortel Networks Inc.
>    c/o Jonathan Kelly
>    Cleary Gottlieb Steen & Hamilton LLP
>    City Place House

---

[7]    For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the Applicants to the jurisdiction of the courts of England and Wales, nor are the legal representatives of the Applicants instructed to accept service of any proceedings in England and Wales.

55 Basinghall Street
London EC2V 5EH

- and -

Nortel Networks Ltd.
c/o Marc Florent
Allen & Overy LLP
One Bishops Square
London E1 6AD

The fees and costs incurred which may be reimbursable under the second paragraph of

Article 14 of the Convention and the fees and costs occasioned by the use of the special

procedure requested in Article 26 of the Convention, being the fees and costs in connection

with the execution of this Letter of Request, for the service of process necessary to secure the

appearance of the Witness, the cost of the Examiner and the costs of the transcript of the

evidence will be initially borne by the U.S. Debtors and Canadian Debtors.  The U.S. Debtors'

and Canadian Debtors' payment of any such fees and costs is without prejudice to the U.S.

Debtors' and Canadian Debtors' right to make subsequent requests for reimbursement of those

fees and costs from other parties to the proceedings before the Requesting Court.


DATE OF REQUEST                              ..........................................................


SIGNATURE AND SEAL OF THE           ..........................................................
REQUESTING AUTHORITY