**EXHIBIT D**

**Request for International Judicial Assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| 1. | **Sender** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |
| 2. | **Central Authority of the Requested State** | The District Court in The Hague (Rechtbank Den Haag)<br>Sector Civiel & Algemene Zaken<br>Postbus 20302<br>2500 EH THE HAGUE<br>Netherlands |
| 3. | **Person to whom the executed request is to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |

**4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | | |
|---|---|---|
| | **Date** | Examination to occur on October 16, October 30 or as the Court directs. |
| | **Reason for urgency** | The trials for which the evidence will be used will begin on or after 31 March 2014.  The parties' pre-trial examinations must be concluded by 13 December 2013. |

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | | |
|---|---|---|---|
| 5. | *a* | **Requesting judicial authority (Article 3,a)** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |
| | *b* | **To the competent authority of (Article 3,a)** | The Netherlands |

**6.** **Names and addresses of the parties and their representatives (including the representatives in the requested State) (Article 3,b)**

   *a*   **Plaintiff** (Claimants)              **Joint Administrators and EMEA Debtors**

       **Representatives**               Derek J.T. Adler
Amera Z. Chowhan
Gabrielle Glemann
Charles H. Huberty
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

James L. Patton
Edwin J. Harron
John T. Dorsey
Jamie Luton Chapman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Robin Schwill
Sean Campbell
Davies Ward Phillips & Vineberg LLP
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone:  (416) 863-0900
Facsimile:  (416) 863-0871

Matthew P. Gottlieb
Lax O'Sullivan Scott Lisus LLP
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

John Whiteoak
Herbert Smith Freehills LLP

2

Exchange House
Primrose Street
London EC2A 2HS

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Charlene D. Davis
Justin Alberto
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
Telephone: (302) 655-5000
Facsimile: (212) 658-6395

David Ward
William Burden
Lara Jackson
Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Telephone:  (416) 869-5300
Facsimile:  (416) 360-8877

Angela Dimsdale Gill
John Tillman
Matthew Bullen
Hogan Lovells International LLP
Atlantic House
Holborn Viaduct
London EC1A 2FG

*b*  **Defendants** (U.S. Debtors)          **Nortel Networks Inc.,** *et al.*[1]

  **Representatives**                 Howard S. Zelbo
                                      James L. Bromley
                                      Jeffrey A. Rosenthal
                                      Lisa M. Schweitzer
                                      Cleary Gottlieb Steen & Hamilton LLP
                                      One Liberty Plaza
                                      New York, New York 10006
                                      Telephone: (212) 225-2000

                                      Jonathan Kelly
                                      Cleary Gottlieb Steen & Hamilton LLP
                                      City Place House
                                      55 Basinghall Street
                                      London EC2V 5EH

                                      Derek C. Abbott
                                      Eric D. Schwartz
                                      Ann C. Cordo
                                      Morris, Nichols, Arsht & Tunnell LLP
                                      1201 North Market Street
                                      P.O. Box 1347
                                      Wilmington, Delaware 19801
                                      Telephone: (302) 658-9200
                                      Facsimile: (302) 658-3989

                                      Scott Bomhof
                                      Tony DeMarinis
                                      Andrew Gray
                                      Adam Slavens
                                      79 Wellington Street West
                                      Suite 3000, Box 270, TD Centre
                                      Toronto ON M5K 1N2
                                      Telephone: (416) 865-0040
                                      Facsimile: (416) 865-7380

---

[1]      The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

*c* **Other Parties**                          **The Monitor and Canadian Debtors**

   **Representatives**                          Ken Coleman
                                                Daniel Guyder
                                                Paul Keller
                                                Laura Hall
                                                James Barabas
                                                Michael Sadowitz
                                                Jacob S. Pultman
                                                Allen & Overy LLP
                                                1221 Avenue of the Americas
                                                New York, New York 10020
                                                Telephone: (212) 610-6300
                                                Facsimile: (212) 610-6399

                                                Mary F. Caloway
                                                Kathleen A. Murphy
                                                Buchanan Ingersoll & Rooney PC
                                                1105 North Market Street
                                                Suite 1900
                                                Wilmington, Delaware 19801
                                                Telephone: (302) 552-4200
                                                Facsimile: (302) 552-4295

                                                Jay Carfagnini
                                                Fred Myers
                                                Joseph Pasquariello
                                                Benjamin Zarnett
                                                Jessica Kimmel
                                                Peter Ruby
                                                Alan Mark
                                                Jason Wadden
                                                Lauren Butti
                                                Goodmans LLP
                                                Bay Adelaide Centre
                                                333 Bay Street
                                                Suite 3400
                                                Toronto, ON M5H 257
                                                Telephone: (416) 979-2211
                                                Facsimile: (416) 979-1234

                                                Jennifer Stam
                                                Derrick Tay
                                                Peter Choe
                                                Graham Smith
                                                Gowling Lafleur Henderson LLP
                                                Suite 3800
                                                Royal Bank Plaza, South Tower

200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Telephone: (416) 216-4000
Facsimile: (416) 216-3930

Alan Merskey
Norton Rose Canada LLP
TD Waterhouse Tower, Suite 2300
79 Wellington Street West, P.O. Box 128
Toronto, ON M5K 1H1
Telephone: (416) 216-4805
Facsimile: (416) 216-3930

Marieke Hooijdonk
Allen & Overy LLP
Apollolaan 15
1077 AB Amsterdam
PO Box 75440
Amsterdam
1070 AK

**Official Committee of Unsecured Creditors**

Fred Hodara
David Botter
Robert A. Johnson
Abid Qureshi
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
Dentons Canada LLP
77 King Street West
4th Floor

6

Toronto, ON M5K 0A1
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

**7.      Nature of the proceedings and summary of claims (Article 3,c)**

7.1      This action, captioned In re Nortel Networks Inc., et al., Case No. 09-10138 (KG) (the "Action"), is a bankruptcy proceeding pending before the Requesting Court.  On 14 January 2009 (the "Petition Date"), Nortel Networks Inc. ("NNI") and its affiliated debtors (collectively, the "U.S. Debtors," and together with the U.S. Committee, the Canadian Debtors, and the Monitor, each defined hereinafter, the "Applicants"), with the exception of Nortel Networks (CALA) Inc. ("NN CALA"), each filed a voluntary petition for relief in the Requesting Court under Chapter 11 of the United States Bankruptcy Code.  NN CALA filed its petition on 14 July 2009.  NNI is incorporated in the United States in the State of Delaware, with its former principal place of business in the State of North Carolina. Other parties with interests related to the U.S. Debtors include an Official Committee of Unsecured Creditors of the U.S. Debtors (the "U.S. Committee").

7.2      Also on 14 January 2009, the U.S. Debtors' ultimate corporate parent, Nortel Networks Corporation ("NNC"), NNI's direct corporate parent, Nortel Networks Limited ("NNL"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors") filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors, and a monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Other parties with interests related to the Canadian Debtors include a Canadian Creditors Committee (the "CCC") and former directors and officers of the Canadian Debtors (the "Directors and Officers").

7.3      On the same date, upon the request of Nortel Networks UK Limited ("NNUK")

7

and eighteen of its affiliates from the Europe, Middle East and Africa region including Nortel Networks International Finance & Holding B.V. ("NNIF") and Nortel Networks B.V. ("NN Holland") (collectively with NNUK, the "EMEA Debtors"), the High Court of Justice of England and Wales placed the EMEA Debtors into administration, and appointed individuals from Ernst & Young LLP as administrators (collectively, the "Joint Administrators").[2]  NNIF and NN Holland are Dutch corporations with their former registered offices at Evert van de Beekstraat 310 Schiphol Airport, 1118 CX Schiphol, The Netherlands.[3]

      7.4      Pursuant to a cross-border protocol, the Requesting Court and the Canadian Court will hold coordinated cross-border trials commencing on or after 31 March 2014 (the "Trials") to decide certain issues, including principally:  (i) the allocation of proceeds from sales of the assets of the Nortel group among the U.S. Debtors, Canadian Debtors, and EMEA Debtors  (the "Allocation Dispute"); (ii) claims filed against the U.S. Debtors and Canadian Debtors by NNUK, other EMEA Debtors, Nortel Networks AG and Nortel Networks AS (the "EMEA Claims"); and (iii) claims filed against the U.S. Debtors and Canadian Debtors relating to NNUK's pension fund (the "U.K. Pension Claims") by the Nortel Network UK

---

[2]      In addition to NNUK, NNIF, and NN Holland, orders of administration were sought with respect to: Nortel Networks (Ireland) Limited ("NN Ireland"); Nortel GmbH ("NN Germany"); Nortel Networks (Austria) GmbH ("NN Austria"); Nortel Networks AB ("NN Sweden"); Nortel Networks Engineering Service Kft ("NN Hungary"); Nortel Networks France S.A.S. ("NNSAS"); Nortel Networks Hispania, S.A. ("NN Spain"); Nortel Networks N.V. ("NN Belgium"); Nortel Networks Oy ("NN Finland"); Nortel Networks Polska Sp. z.o.o. ("NN Poland"); Nortel Networks Portugal S.A. ("NN Portugal"); Nortel Networks Romania SRL ("NN Romania"); Nortel Networks S.A. ("NNSA"); Nortel Networks S.p.A. ("NN Italy"); Nortel Networks Slovensko, s.r.o. ("NN Slovakia"); and Nortel Networks, s.r.o. ("NN Czech Rep.").

[3]      In addition to the U.S. Debtors, U.S. Committee, Monitor, Canadian Debtors, CCC, Directors & Officers, EMEA Debtors, Joint Administrators, and UK Pension Claimants, additional parties have been designated as "Core Parties" in the proceedings before the U.S. Court and Canadian Court, with the right, *inter alia*, to participate fully in hearings relating to the Allocation Dispute.  The other Core Parties include the ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI and Nortel Networks Capital Corporation (the "Bondholders"); certain indenture trustees – Wilmington Trust, National Association; The Bank of New York Mellon; and Law Debenture Trust Company of New York – in respect of notes issued or guaranteed by Nortel affiliates; and other Nortel affiliates with an interest in the Allocation Dispute, which are Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited.

Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "U.K. Pension Trustee"), and the Board of the Pension Protection Fund, a privately funded insurer (the "PPF," and together with the U.K. Pension Trustee, the "U.K. Pension Claimants").  The Applicants dispute the validity of the EMEA Claims and U.K. Pension Claims and have filed objections to them.

7.5      As part of the upcoming Trials, each party submitted to the Requesting Court an allocation position detailing its proposed methodology for determining the allocation of proceeds from sales of the assets of the Nortel group.  The parties' allocation positions put at issue a variety of factors, including but not limited to the significance of intercompany agreements governing transfer pricing to the estates' respective entitlement to Nortel intellectual property; the proportion of Nortel's revenue and cash flow generated by the U.S. Debtors, Canadian Debtors, and EMEA Debtors; the location and nature of Nortel's research and development activities and the proportional contribution of the estates to such activities; pre- and post-petition asset sales; and the locus of other fixed and intangible Nortel assets, including customer relationships.[4]

7.6      The EMEA Claims and U.K. Pension Claims likewise put at issue a variety of

---

[4]      The Core Parties' opening and responsive allocation positions are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers indicated:  allocation position of the Joint Administrators and EMEA Debtors [D.I. 10536]; allocation position of the U.S. Debtors and U.S. Committee [D.I. 10537]; allocation position of the CCC [D.I. 10538]; allocation position of the U.K. Pension Claimants [D.I. 10539]; allocation position of the Bondholders [D.I. 10540]; allocation position of the Monitor and Canadian Debtors [D.I. 10543]; joinder of the Bank of New York Mellon in the allocation position of the U.S. Debtors and U.S. Committee [D.I. 10547]; joinder of Law Debenture Trust Company of New York in the allocation position of the U.S. Debtors and U.S. Committee and in the allocation position of the Bondholders [D.I. 10548]; joinder of Wilmington Trust, National Association, in the allocation position of the Monitor and Canadian Debtors and in the allocation position of the CCC [D.I. 10563]; responsive allocation submission of the Joint Administrators and EMEA Debtors [D.I. 10687]; responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10690]; joinder of Law Debenture Trust Company of New York in the responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10691]; responsive allocation submission of Wilmington Trust, National Association [D.I. 10692]; responsive allocation submission of the U.K. Pension Claimants [D.I. 10693]; responsive allocation submission of the Bondholders [D.I. 10694]; responsive allocation submission of the CCC [D.I. 10695]; responsive allocation submission of the Monitor and Canadian Debtors [D.I. 10696].

factors, including but not limited to the solvency of the various EMEA Debtors during the

years 2000 through 2008; whether NNUK had sufficient resources to fund the Nortel

Networks UK Pension Plan and whether it is reasonable to impose upon the Canadian Debtors

and U.S. Debtors an obligation to make up for any shortfall; and whether the EMEA Debtors

were harmed by various Nortel arrangements and intercompany transactions, including

Nortel's transfer pricing system, a transaction known as Project Swift and the accompanying

reorganization of Nortel, certain intercompany loans and dividends, and sales of Nortel assets

that preceded the Petition Date.[5]

7.7    All of the parties (including NNUK, NNIF, NN Holland, the other EMEA

Debtors, and the U.K. Pension Claimants) are currently engaged in the process of obtaining

evidence by order of the Requesting Court and Canadian Court in anticipation of the Trials.

7.8    The evidence sought from the person identified below may be material to the

resolution of these factual disputes.

**8.    Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1    Mr. Rob Haitsma was a Director of NNIF, NN Holland and Nortel Networks

B.V. from 2001 to 2009 and a Director of NN Finland and NN Sweden from 2003 to 2009.

---

[5]    The operative claims filed in the Requesting Court and objections thereto are publicly available at
http://dm.epiq11.com/NNI/Project, under the docket numbers or claim numbers indicated: amended claims of
NNUK [C.I. 7786]; amended claims of NNSA's court-appointed liquidator [C.I. 7784]; amended claims of NNSA
[C.I. 7785]; amended claims of NNIF [C.I. 7776]; amended claims of NNIR [C.I. 7774]; amended claims of NN
Italy [C.I. 7775]; amended claims of NN Spain [C.I. 7787]; amended claims of NN Holland [C.I. 7780]; amended
claims of NN Belgium [C.I. 7781]; amended claims of NN Poland [C.I. 7754]; amended claims of NN Switzerland
[C.I. 7752]; amended claims of NN Germany [C.I. 7778]; amended claims of NN Portugal [C.I. 7751]; amended
claims of NN Czech Rep. [C.I. 7782]; amended claims of NN Austria [C.I. 7755]; amended claims of NN Sweden
[C.I. 7779]; amended claims of NN Hungary [C.I. 7756]; amended claims of NN Slovakia [C.I. 7750]; amended
claims of NN Norway [C.I. 7762]; amended claims of NN Romania [C.I. 7783]; amended claims of NN Finland
[C.I. 7753]; amended claims of the Nortel Networks U.K. Pension Trust Limited and Board of the Pension
Protection Fund [C.I. 8357, 8358]; Joint Omnibus Objection to the Remaining Amended Claims Filed by the EMEA
Claimants [D.I. 10521]; Joint Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust
Limited (as Trustee of the Nortel Networks UK Pension Plan) and Board of the Pension Protection Fund [D.I.
10519].  The operative claims filed in the Canadian Court and objections thereto are publicly available at
http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

Mr. Haitsma was also employed in the EMEA region in various finance roles, including as Regional Controller for EMEA, beginning in 1996.  In the course of their continuing review of documents provided by the EMEA Debtors, the Applicants may identify additional subjects regarding which Mr. Haitsma is knowledgeable.

8.2     As a former Director of NNIF, NN Holland, NN Finland and NN Sweden and his employment in finance roles such as Regional Controller for EMEA, Mr. Haitsma is likely to have knowledge relevant to the parties' allocation positions, as discussed in paragraph 7.5 above.

8.3     As a former Director of NNIF, NN Holland, NN Finland and NN Sweden and his employment in finance roles such as Regional Controller for EMEA, Mr. Haitsma is also likely to have knowledge relevant to the EMEA Claims.  The factual predicates of the EMEA Claims brought by NNIF and NN Holland – including the alleged unfairness of Nortel's transfer pricing system, Project Swift and the accompanying reorganization of NNIF, and pre-petition asset sales – relate to the time period of Mr. Haitsma's directorship and employment.  The EMEA Claims also allege that the EMEA Debtors' directors breached their fiduciary duties in connection with those transactions.

8.4     Further, the EMEA Claims allege, *inter alia*, that the U.S. Debtors and Canadian Debtors are liable to the EMEA Debtors in connection with the above transactions because the U.S. Debtors and Canadian Debtors dominated or controlled the decision-making of the EMEA Debtors.  To obtain the initial orders from the English Court placing the EMEA Debtors into administration, the EMEA Debtors submitted sworn witness statements from another Nortel director and employee, Ms. Sharon Rolston (the "Rolston Witness Statements"), which included various assertions relating to control over the EMEA Debtors.  The U.S. Debtors have argued that the Rolston Witness Statements (which were also filed in

the Requesting Court in order to obtain recognition of the EMEA Debtors' administration

proceedings) are inconsistent with the assertions in the EMEA Claims of U.S. or Canadian

domination or control.  As a former Director of NNIF, NN Holland, NN Finland and NN

Sweden, Mr. Haitsma may have knowledge relevant to the issue of alleged U.S. or Canadian

domination or control.

8.5     Based upon these and other considerations, the Applicants have designated Mr.

Haitsma as a witness to be examined.

8.6     As of the date of this application, the EMEA Debtors have not indicated that

they are able to voluntarily produce Mr. Haitsma to be deposed.

8.7     It is accordingly requested that for the purpose of justice and for due

determination of the matters in dispute between the parties that you direct Mr. Haitsma (the

"Witness") to provide oral testimony for use at the Trials (if appropriate) to counsel for the

Applicants, subject to any applicable privileges that may apply under the rules and procedures

of the Requesting Court or the courts of the Netherlands.  The Witness' unique importance to

the claims and defenses in these proceedings is described both above and in the subject matter

as to which he is to be examined, detailed in Section 10 below.  Absent voluntary cooperation,

evidence from Mr. Haitsma is available only by an order of the District Court.

| 9. | **Identity and address of any person to be examined (Article 3,e)** | Mr. Rob Haitsma AVG Technologies, N.V. Gatwickstraat 9 – 39 1043 GL Amsterdam Netherlands |
|----|----|----|

**10.     Questions to be put to the persons to be examined or statement of the
         subject matter about which they are to be examined (Article 3,f)**

It is requested that the Witness be questioned, subject to any applicable privileges as

may apply under the rules and procedures of the Requesting Court or the courts of the

Netherlands, on the following subjects:

(a)     The organization, management and operation of the Nortel group as a multinational enterprise, including as compared to other multinational enterprises and including the tax and treasury functions, accounting, cash management, planning, budgeting, research and development, sales, purchasing, manufacturing, outsourcing, and third-party intellectual property licensing;

(b)     The history, functioning and organization of Nortel's "matrix" corporate structure, including how financial reporting was conducted and the EMEA Debtors' roles within the corporate structure;

(c)     The management, operations and governance of NNIF, NN Holland, NN Sweden, NN Finland and the other EMEA Debtors, including but not limited to the powers, actions, and control of the boards of directors and senior officers of NNIF, NN Holland, NN Sweden, NN Finland, and the other EMEA Debtors;

(d)     The identity and location of the officers or other senior management for NNIF, NN Holland, NN Sweden, NN Finland, and the other EMEA Debtors responsible for finance and control functions, human resources, operational decisions, sales and dealings with customers, suppliers, taxation, the settlement of intercompany accounts, and treasury and banking functions;

(e)     The statements and factual assertions contained in the EMEA Debtors' Chapter 15 Petitions, the Rolston Witness Statements and the witness statements submitted by EMEA Director Michel Clément in support of those Chapter 15 Petitions;

(f)     The factual bases underlying recognition of the English Proceedings as foreign

main proceedings as to the EMEA Debtors;

(g)    Facts in Mr. Haitsma's knowledge that support, refute or otherwise pertain to the allegations made in the EMEA Claims to the effect that NNC and/or NNL controlled the Nortel Group's operations, and that NNI participated in or assisted such control, including but not limited to control of group tax, transfer pricing, and treasury functions;

(h)    Facts in Mr. Haitsma's knowledge that support, refute or otherwise pertain to the allegations made in the EMEA Claims that the *de jure* directors of NNIF, NN Holland, NN Sweden, NN Finland, and the other EMEA Debtors breached their fiduciary duties or otherwise failed to act properly, any claims threatened or asserted or litigation commenced against any of the current or former directors or officers of NNIF, NN Holland, NN Sweden, NN Finland, or the other EMEA Debtors related to their breaches of fiduciary duties or any of the matters alleged in the EMEA Claims, and any communications with such directors regarding those proceedings or the subject matter of those proceedings;

(i)    Any policy, practice or control concerning directors' and officers' fiduciary or other duties under relevant law;

(j)    The profitability, revenue, expenses, cash flow and value of, and accounting for the various Nortel entities and Lines of Business;

(k)    Debt financing transactions and credit facilities;

(l)    Pre-petition Asset Sales involving NNIF, NN Holland, NN Sweden, NN Finland, or the other EMEA Debtors and the allocation of proceeds therefrom, including but not limited to related planning, negotiations, discussions,

14

consideration, approvals and involvement by the boards of directors or personnel of NNIF, NN Holland, NN Sweden, NN Finland, or the other EMEA Debtors, and any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect thereto, and the factual basis for the allegations in the EMEA Claims concerning such sales;

(m)    Business acquisitions by Nortel, the significance of intellectual property in acquisitions as the value driver for the transactions, and the integration of acquired businesses into Nortel;

(n)    Pre-petition restructurings and associated costs;

(o)    Ownership, registration, maintenance, enforcement, valuation, amortization, business and/or strategic importance, licensing (intercompany, related party and third party), acquisition, and sale of Nortel's intellectual property and associated rights;

(p)    Intellectual property-related costs and revenue streams, allocation of such costs and revenue streams and accounting therefor;

(q)    The organization, make-up and activity of Nortel's intellectual property-related legal and business teams;

(r)    Valuations or analyses commissioned or conducted, whether pre-petition or post-petition, concerning the value of Nortel's intellectual property, business lines, research and development efforts or other business-related tangibles or intangibles in any jurisdiction or for any subsidiary;

(s)    Agreements and practices among Nortel entities in respect of intellectual property and rights and obligations in or to intellectual property;

15

(t)     Research and development planning, strategy, decision-making and policies;

(u)     Nortel companies' relative and respective contributions to research and

development;

(v)     The negotiation, drafting, approval, and operation of the Master Research and

Development Agreement ("MRDA") and its subsequent amendments, the

Residual Profit Split Method ("RPSM"), previous cost-sharing arrangements,

related agreements, and Nortel's transfer pricing system generally;

(w)     The involvement by the boards of directors or personnel of NNIF, NN Holland,

NN Sweden, NN Finland, or the other EMEA Debtors in Nortel's transfer

pricing arrangements or agreements, any analyses or advice (whether internal

or independent) provided to or relied on by such directors or personnel in

respect of transfer pricing, the role and responsibilities of the auditors of NNIF,

NN Holland, NN Sweden, NN Finland, or the other EMEA Debtors with

respect to transfer pricing, and the factual basis for the allegations regarding

transfer pricing made in the EMEA Claims;

(x)     Advance Pricing Arrangements/Agreements ("APAs") and communications

and filings with taxing authorities regarding any APAs;

(y)     The manner in which Nortel entities represented themselves to investors, credit

agencies, government or other third parties;

(z)     The outsourcing of Nortel's manufacturing business and related sale or

outsourcing agreements;

(aa)    The accounting for and distribution of revenue and costs related to Nortel Lines

of Business and any other Nortel revenue-generating activity;

(bb)    Sales, contracts and dealings with customers or suppliers, including policies, procedures, and practices used to determine which Nortel Entity received revenue from any customer or supplier relationships;

(cc)    The negotiation and drafting of the Interim Funding and Settlement Agreement ("IFSA") and Final Canadian Funding and Settlement Agreement ("FCFSA");

(dd)    The negotiation, deal structure, and closing of post-petition sales of Nortel assets;

(ee)    The purported "cash to Canada" policy discussed in the EMEA Claims;

(ff)    Project Swift, the alleged extraction of cash from various Nortel subsidiaries prior to Project Swift, the accompanying reorganization of NNIF, and the facts in Mr. Haitsma's knowledge that support, refute or otherwise pertain to the allegations in the EMEA Claims relating thereto;

(gg)    Intercompany loans, intercompany dividends, and any other intercompany financing and/or borrowing of money among the Nortel entities, and the factual basis for the allegations in the EMEA Claims relating thereto;

(hh)    Facts in Mr. Haitsma's knowledge that support, refute or otherwise pertain to the allegations in the EMEA Claims that NNI benefitted from Nortel policies, transactions, or other occurrences that harmed NNIF, NN Holland, NN Sweden, NN Finland, or the other EMEA Debtors;

(ii)    Any transactions, agreements or benefits received by NN CALA from the EMEA Debtors that either harmed the EMEA Debtors or for which the EMEA Debtors were not fairly compensated;

(jj)    The financial condition of NNIF, NN Holland, NN Sweden, NN Finland or the other EMEA Debtors;

(kk)    The preparation, approval and auditing of the financial statements of NNIF, NN

Holland, NN Sweden, NN Finland, or the other EMEA Debtors;

(ll)     Nortel human resources, including employee compensation, transfers, bonuses,

benefit plans, pensions, hires, downsizing and terminations;

(mm)   The trading debt claims alleged in the EMEA Claims, any additional claims in

the EMEA Claims not already addressed by these deposition topics, and the

factual basis for all such claims; and

(nn)    Any other matter relevant to the positions, claims, and defenses asserted by the

Core Parties before the Requesting Court and Canadian Court, including but

not limited to those contained in the filings referenced in footnotes 4 and 5.

**11.    Documents or other property to be inspected (Article 3,g)**

None.

**12.    Any requirement that the evidence be given on oath or affirmation and
         any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper

and usual process, the Witness to appear to be examined under oath or affirmation.

**13.    Special methods or procedure to be followed (Articles 3,i and 9)**

13.1     The Requesting Court respectfully requests that the representatives of the U.S.

Debtors and U.S. Committee be allotted a total of three hours for their examination, that the

representatives of the Monitor and Canadian Debtors be allotted a total of three hours for their

examination, and that representatives of the EMEA Debtors and U.K. Pension Claimants be

allotted a total of one hour for their examination.  Counsel for these parties are available to

begin the examination at such a date during the period from 23 September 2013 through 13

December 2013 as may be mutually agreed with the Witness' legal representatives, if any, and

approved by you.

13.2    The Requesting Court also respectfully requests that the questions and the responses of the Witness be recorded verbatim and that the Witness sign the verbatim transcript.  The verbatim transcript of the Witness' responses to questions under oath taken pursuant to the Letters of Request issued or endorsed by the Courts will be admissible at the Trials in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Courts), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Ontario rules of evidence or the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction.

13.3    In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of the Netherlands.

13.4    The appearance of each Witness for his testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear.  However, the Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel each Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

**14.     Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7)**[6]

Please inform the following persons of the time and place for the execution of the request.

Marieke Hooijdonk

---

[6]    For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the Applicants to the jurisdiction of the courts of the Netherlands, nor are the legal representatives of the Applicants instructed to accept service of any proceedings in the Netherlands.

Allen & Overy LLP
Apollolaan 15
1077 AB Amsterdam
PO Box 75440
Amsterdam
1070 AK

**15.    Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8)**

None.

**16.    Specification of privilege or duty to refuse to give evidence under the law of the State of Origin (Article 11,b)**

The Witness may refuse to answer any question asked during the examination if such

answer would subject the Witness to a real and appreciable danger of criminal liability in the

United States, or would disclose a privileged communication.


DATE OF REQUEST                        ..........................................................


SIGNATURE AND SEAL OF THE                ..........................................................
REQUESTING AUTHORITY