**EXHIBIT F**

**Request for International Judicial Assistance pursuant to Chapter I of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| 1. | **Sender** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |
| 2. | **Central Authority of the Requested State** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau de l'entraide civile et commerciale internationale (D3)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
| 3. | **Person to whom the executed request is to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |

4. **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | |
|---|---|
| **Date** | Examination to occur on October 31 and November 1 or as the Court directs. |
| **Reason for urgency** | The trials for which the evidence will be used will begin on or after 31 March 2014. The parties' pre-trial examinations must be concluded by 13 December 2013. |

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | |
|---|---|---|
| 5. *a* | **Requesting judicial authority (Article 3,a)** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |

| | | |
|---|---|---|
| *b* | **To the competent authority of (Article 3,a)** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau de l'entraide civile et commerciale internationale (D3)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
| *c* | **Names of the case and any identifying number** | *In re Nortel Networks Inc., et al* – Case No. 09-10138 (KG)<br>United States Bankruptcy Court for the District of Delaware |

**6.** **Names and addresses of the parties and their representatives (including the representatives in the requested State) (Article 3,b)**

| | | |
|---|---|---|
| *a* | **Plaintiff** (Claimants) | **Joint Administrators and EMEA Debtors** |
| | **Representatives** | Derek J.T. Adler<br>Amera Z. Chowhan<br>Gabrielle Glemann<br>Charles H. Huberty<br>Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, New York 10004<br>United States of America<br>Telephone: (212) 837-6000<br>Facsimile: (212) 422-4726 |
| | | James L. Patton<br>Edwin J. Harron<br>John T. Dorsey<br>Jamie Luton Chapman<br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>United States of America<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253 |
| | | Robin Schwill<br>Sean Campbell |

Davies Ward Phillips & Vineberg LLP
155 Wellington Street West
Toronto, ON M5V 3J7
Canada
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

Matthew P. Gottlieb
Lax O'Sullivan Scott Lisus LLP
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

John Whiteoak
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2HS
United Kingdom

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
United States of America
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Charlene D. Davis
Justin Alberto
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
United States of America
Telephone: (302) 655-5000
Facsimile: (212) 658-6395

David Ward
William Burden

3

Lara Jackson
Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

Angela Dimsdale Gill
John Tillman
Matthew Bullen
Hogan Lovells International LLP
Atlantic House
Holborn Viaduct
London EC1A 2FG
United Kingdom

| | | |
|---|---|---|
| *b* | **Defendants** (U.S. Debtors) | **Nortel Networks Inc.,** *et al.*[1] |
| | **Representatives** | Howard S. Zelbo |

James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
United States of America
Telephone: (212) 225-2000

Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH
United Kingdom

Derek C. Abbott
Eric D. Schwartz

---

[1]     The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Ann C. Cordo
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
United States of America
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2
Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

*c*  **Other Parties**                    **The Monitor and Canadian Debtors**

   **Representatives**                    Ken Coleman
                                          Daniel Guyder
                                          Paul Keller
                                          Laura Hall
                                          James Barabas
                                          Michael Sadowitz
                                          Jacob S. Pultman
                                          Allen & Overy LLP
                                          1221 Avenue of the Americas
                                          New York, New York 10020
                                          United States of America
                                          Telephone: (212) 610-6300
                                          Facsimile: (212) 610-6399

                                          David Por
                                          Allen & Overy LLP
                                          52 avenue Hoche
                                          CS 90005
                                          75379 Paris Cedex 08
                                          Paris 75379
                                          France

                                          Mary F. Caloway
                                          Kathleen A. Murphy

Buchanan Ingersoll & Rooney PC
1105 North Market Street
Suite 1900
Wilmington, Delaware 19801
United States of America
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Jessica Kimmel
Peter Ruby
Alan Mark
Jason Wadden
Lauren Butti
Goodmans LLP
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979-2211
Facsimile: (416) 979-1234

Jennifer Stam
Derrick Tay
Peter Choe
Graham Smith
Gowling Lafleur Henderson LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Telephone: (416) 216-4000
Facsimile: (416) 216-3930

Alan Merskey
Norton Rose Canada LLP
TD Waterhouse Tower, Suite 2300
79 Wellington Street West, P.O. Box 128
Toronto, ON M5K 1H1
Canada
Telephone: (416) 216-4805

6

Facsimile: (416) 216-3930

**Official Committee of Unsecured Creditors**

Fred Hodara
David Botter
Robert A. Johnson
Abid Qureshi
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
United States of America
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
Dentons Canada LLP
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

**7.**

| | | |
|---|---|---|
| *a* | **Nature of the proceedings (Article 3,c)** | Bankruptcy proceeding |
| *b* | **Summary of complaint** | This action, captioned <u>In re Nortel Networks Inc., et al.</u>, Case No. 09-10138 (KG) (the "<u>Action</u>"), is a bankruptcy proceeding pending before the Requesting Court.  On 14 January 2009 (the "<u>Petition Date</u>"), Nortel Networks |

Inc. ("<u>NNI</u>") and its affiliated debtors (collectively, the "<u>U.S. Debtors</u>," and together with the U.S. Committee, the Canadian Debtors, and the Monitor, each defined hereinafter, the "<u>Applicants</u>"), with the exception of Nortel Networks (CALA) Inc. ("<u>NN CALA</u>"), each filed a voluntary petition for relief in the Requesting Court under Chapter 11 of the United States Bankruptcy Code. NN CALA filed its petition on 14 July 2009. NNI is incorporated in the United States in the State of Delaware, with its former principal place of business in the State of North Carolina. Other parties with interests related to the U.S. Debtors include an Official Committee of Unsecured Creditors of the U.S. Debtors (the "<u>U.S. Committee</u>").

Also on 14 January 2009, the U.S. Debtors' ultimate corporate parent, Nortel Networks Corporation ("<u>NNC</u>"), NNI's direct corporate parent, Nortel Networks Limited ("<u>NNL</u>"), and certain of their Canadian affiliates (collectively, the "<u>Canadian Debtors</u>") filed an application with the Ontario Superior Court of Justice (the "<u>Canadian Court</u>") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors, and a monitor, Ernst & Young Inc. (the "<u>Monitor</u>"), was appointed by the Canadian Court. Other parties with interests related to the Canadian Debtors include a Canadian Creditors Committee (the "<u>CCC</u>") and former directors and officers of the Canadian Debtors (the "<u>Directors and Officers</u>").

On the same date, upon the request of Nortel Networks UK Limited ("<u>NNUK</u>") and eighteen of its affiliates from the Europe, Middle East and Africa region including Nortel Networks S.A. ("<u>NNSA</u>") (collectively with NNUK, the "<u>EMEA Debtors</u>"), the High Court of Justice of England and Wales placed the EMEA Debtors into administration, and appointed individuals from Ernst & Young LLP as administrators (collectively, the "<u>Joint</u>

Administrators").[2]  NNSA is a French
corporation with its former registered office at
Centre d'Affaires Parc Lumiere, 46 Avenue
des Freres Lumiere, F78190 Trappes, France.

Pursuant to a cross-border protocol, the
Requesting Court and the Canadian Court will
hold coordinated cross-border trials
commencing on or after 31 March 2014 (the
"Trials") to decide certain issues, including
principally:  (i) the allocation of proceeds from
sales of the assets of the Nortel group among
the U.S. Debtors, Canadian Debtors, and
EMEA Debtors (the "Allocation Dispute"); (ii)
claims filed against the U.S. Debtors and
Canadian Debtors by NNUK, other EMEA
Debtors, Nortel Networks AG and Nortel
Networks AS (the "EMEA Claims"); and (iii)
claims filed against the U.S. Debtors and
Canadian Debtors relating to NNUK's pension
fund (the "U.K. Pension Claims") by the
Nortel Network UK Pension Trust Limited, as
trustee of the Nortel Networks UK Pension
Plan (the "U.K. Pension Trustee"), and the
Board of the Pension Protection Fund, a
privately funded insurer (the "PPF," and
together with the U.K. Pension Trustee, the
"U.K. Pension Claimants").  The Applicants
dispute the validity of the EMEA Claims and
U.K. Pension Claims and have filed objections
to them.

As part of the upcoming Trials, each party
submitted to the Requesting Court an
allocation position detailing its proposed
methodology for determining the allocation of
proceeds from sales of the assets of the Nortel
group.  The parties' allocation positions put at

---

[2]      In addition to NNUK and NNSA, orders of administration were sought with respect to: Nortel Networks
(Ireland) Limited ("NN Ireland"); Nortel GmbH ("NN Germany"); Nortel Networks (Austria) GmbH ("NN
Austria"); Nortel Networks AB ("NN Sweden"); Nortel Networks Engineering Service Kft ("NN Hungary"); Nortel
Networks France S.A.S. ("NNSAS"); Nortel Networks Hispania, S.A. ("NN Spain"); Nortel Networks N.V. ("NN
Belgium"); Nortel Networks Oy ("NN Finland"); Nortel Networks Polska Sp. z.o.o. ("NN Poland"); Nortel
Networks Portugal S.A. ("NN Portugal"); Nortel Networks Romania SRL ("NN Romania"); Nortel Networks S.p.A.
("NN Italy"); Nortel Networks Slovensko, s.r.o. ("NN Slovakia"); and Nortel Networks, s.r.o. ("NN Czech Rep.");
Nortel Networks International Finance & Holding B.V. ("NNIF"); and Nortel Networks B.V. ("NN Holland").

issue a variety of factors, including but not limited to the significance of intercompany agreements governing transfer pricing to the estates' respective entitlement to Nortel intellectual property; the proportion of Nortel's revenue and cash flow generated by the U.S. Debtors, Canadian Debtors, and EMEA Debtors; the location and nature of Nortel's research and development activities and the proportional contribution of the estates to such activities; pre- and post-petition asset sales; and the locus of other fixed and intangible Nortel assets, including customer relationships.[3]

The EMEA Claims and U.K. Pension Claims likewise put at issue a variety of factors, including but not limited to the solvency of the various EMEA Debtors during the years 2000 through 2008; whether NNUK had sufficient resources to fund the Nortel Networks UK Pension Plan and whether it is reasonable to impose upon the Canadian Debtors and U.S. Debtors an obligation to make up for any shortfall; and whether the EMEA Debtors were harmed by various Nortel arrangements and intercompany transactions, including Nortel's transfer pricing system, a transaction known as Project Swift and the accompanying reorganization of Nortel, certain intercompany loans and dividends, and sales of Nortel assets

---

[3]     The Core Parties' opening and responsive allocation positions are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers indicated:  allocation position of the Joint Administrators and EMEA Debtors [D.I. 10536]; allocation position of the U.S. Debtors and U.S. Committee [D.I. 10537]; allocation position of the CCC [D.I. 10538]; allocation position of the U.K. Pension Claimants [D.I. 10539]; allocation position of the Bondholders [D.I. 10540]; allocation position of the Monitor and Canadian Debtors [D.I. 10543]; joinder of the Bank of New York Mellon in the allocation position of the U.S. Debtors and U.S. Committee [D.I. 10547]; joinder of Law Debenture Trust Company of New York in the allocation position of the U.S. Debtors and U.S. Committee and in the allocation position of the Bondholders [D.I. 10548]; joinder of Wilmington Trust, National Association, in the allocation position of the Monitor and Canadian Debtors and in the allocation position of the CCC [D.I. 10563]; responsive allocation submission of the Joint Administrators and EMEA Debtors [D.I. 10687]; responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10690]; joinder of Law Debenture Trust Company of New York in the responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10691]; responsive allocation submission of Wilmington Trust, National Association [D.I. 10692]; responsive allocation submission of the U.K. Pension Claimants [D.I. 10693]; responsive allocation submission of the Bondholders [D.I. 10694]; responsive allocation submission of the CCC [D.I. 10695]; responsive allocation submission of the Monitor and Canadian Debtors [D.I. 10696].

that preceded the Petition Date.  The EMEA Claims and U.K. Pension Claims allege that the U.S. Debtors and Canadian Debtors are liable for these transactions because they dominated or controlled the EMEA Debtors or were otherwise culpable for breaches of duties owed to the EMEA Debtors, because the transactions resulted in unjust enrichment, or for other reasons.[4]

All of the parties (including NNUK, NNSA, the other EMEA Debtors, and the U.K. Pension Claimants) are currently engaged in the process of obtaining evidence by order of the Requesting Court and Canadian Court in anticipation of the Trials.

The evidence sought from the person identified below may be material to the resolution of these factual disputes.

*c*    **Summary of defense and counterclaims**

The U.S. Debtors, U.S. Committee, Monitor, and Canadian Debtors have objected to the EMEA Claims and U.K. Pension Claims on a variety of grounds, including because the U.S. Debtors and Canadian Debtors did not owe duties to the EMEA Debtors, because no duties were breached, because no assistance was provided in respect of any such breaches, because there was no unjust enrichment or other factual basis for the claims, because the claims are barred by various equitable and other doctrines, because the claims should be disallowed as a matter of comity, and for other

---

[4]    The operative claims filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers or claim numbers indicated: amended claims of NNUK [C.I. 7786]; amended claims of NNSA's court-appointed liquidator [C.I. 7784]; amended claims of NNSA [C.I. 7785]; amended claims of NNIF [C.I. 7776]; amended claims of NNIR [C.I. 7774]; amended claims of NN Italy [C.I. 7775]; amended claims of NN Spain [C.I. 7787]; amended claims of NN Holland [C.I. 7780]; amended claims of NN Belgium [C.I. 7781]; amended claims of NN Poland [C.I. 7754]; amended claims of NN Switzerland [C.I. 7752]; amended claims of NN Germany [C.I. 7778]; amended claims of NN Portugal [C.I. 7751]; amended claims of NN Czech Rep. [C.I. 7782]; amended claims of NN Austria [C.I. 7755]; amended claims of NN Sweden [C.I. 7779]; amended claims of NN Hungary [C.I. 7756]; amended claims of NN Slovakia [C.I. 7750]; amended claims of NN Norway [C.I. 7762]; amended claims of NN Romania [C.I. 7783]; amended claims of NN Finland [C.I. 7753]; amended claims of the Nortel Networks U.K. Pension Trust Limited and Board of the Pension Protection Fund [C.I. 8357, 8358].  The operative claims filed in the Canadian Court are publicly available at http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

reasons.[5]

| | | |
|---|---|---|
| *d* | **Other necessary information or documents** | All such documents and statements designated as such shall be treated by counsel to the parties in this lawsuit as "Confidential" or "Highly Confidential" pursuant to the <u>Order Entering a Protective Order</u> entered on June 11, 2013, such that designated documents may only be disclosed to attorneys for the parties, third party witnesses and the Court, under specific confidentiality restrictions, absent further order of the Court. |

**8.**

| | | |
|---|---|---|
| *a* | **Evidence to be obtained or other judicial act to be performed (Article 3,d)** | An examination is requested of Mr. Jean-Marie Lesur, Director for NNSA from 2006 to 2009, Northern Telecom France SA from 2005 to 2009, and employed as Directeur, Financier D'Activité for NNSA from 2000 to 2002, and in Financial Planning & Analysis for NNSA from 2000 to 2009.  Between 2001 and 2007, Mr. Lesur also had finance responsibilities for the GPS and UMTS line of business.  In response to interrogatories, the EMEA Debtors have identified Mr. Lesur as among those persons affiliated with them most knowledgeable regarding pre-petition asset sales, which are among the factual predicates of the EMEA Claims.  In the course of their continuing review of documents provided by the EMEA Debtors, the Applicants may identify additional subjects regarding which Mr. Lesur is knowledgeable. |
| *b* | **Purpose of the evidence or judicial action sought** | As a former Director of NNSA and Northern Telecom France SA, an employee in finance-related roles, and a person allegedly most-knowledgeable regarding pre-petition asset sales, Mr. Lesur is likely to have knowledge relevant to the parties' allocation positions, claims, and |

---

[5]     The objections of the U.S. Debtors and U.S. Committee  filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project under the docket numbers indicated:  Joint Omnibus Objection to the Remaining Amended Claims Filed by the EMEA Claimants [D.I. 10521]; Joint Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and Board of the Pension Protection Fund [D.I. 10519].  Objections to the claims filed in the Canadian Court are publicly available at:  http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

defenses, as described above.

As a former Director of NNSA and Northern Telecom France SA, an employee in finance-related roles, Mr. Lesur is also likely to have knowledge relevant to the EMEA Claims.  The factual predicates of the Claims brought by NNSA and the other EMEA Debtors – including the alleged unfairness of Nortel's transfer pricing system, Project Swift, the accompanying reorganization of NNIF, intercompany loans, and pre-petition asset sales – relate to the time period of Mr. Lesur's directorships and/or employment, and he has been identified specifically as being knowledgeable regarding the sales.  The EMEA Claims and U.K. Pension Claims also allege that the EMEA Debtors' directors – including those of NNSA – breached their fiduciary duties in connection with those transactions.

Further, the EMEA Claims allege, *inter alia*, that the U.S. Debtors and Canadian Debtors are liable to the EMEA Debtors in connection with the above transactions because the U.S. Debtors and Canadian Debtors dominated or controlled the decision-making of the EMEA Debtors.  To obtain the initial orders from the English Court placing the EMEA Debtors into administration, the EMEA Debtors submitted sworn witnesses statements, including from Michel Clément, a president and director of NNSA (the "Clément Witness Statement"), which included various assertions relating to control over the EMEA Debtors.  The U.S. Debtors have argued that the Clément Witness Statement is inconsistent with the assertions in the EMEA Claims of U.S. or Canadian domination or control.  As a former director of NNSA, Mr. Lesur may have knowledge relevant to the issue of alleged U.S. or Canadian domination or control.

Based upon these and other considerations, the Applicants have designated Mr. Lesur as a witness to be examined.

As of the date of this application, the EMEA

Debtors have not indicated that they are able to voluntarily produce Mr. Lesur to be deposed.

It is accordingly requested that for the purpose of justice and for due determination of the matters in dispute between the parties that you direct Mr. Lesur (the "Witness") to provide oral testimony for use at the Trials (if appropriate) to counsel for the Applicants, subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court or the courts of France.  The Witness' unique importance to the claims and defenses in these proceedings is described both above and in the subject matter as to which he is to be examined, detailed in Section 10 below.  Absent voluntary cooperation, evidence from Mr. Lesur is available only by an order of the Court.

**9.    Identity and address of**     Mr. Jean-Marie Lesur
**any person to be examined**   29 rue Rémusat
**(Article 3,e)**                          75016 Paris
                                                France

**10.    Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (Article 3,f)**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court or the courts of France on the following subjects:

(a)     The organization, management and operation of the Nortel group as a

multinational enterprise, including as compared to other multinational

enterprises and including the tax and treasury functions, accounting, cash

management, planning, budgeting, research and development, sales,

purchasing, manufacturing, outsourcing, and third-party intellectual property

licensing;

(b)     The history, functioning and organization of Nortel's "matrix" corporate

structure, including how financial reporting was conducted and the EMEA

Debtors' roles within the corporate structure;

(c)     The management, operations, and governance of NNSA and the other EMEA

Debtors, including but not limited to the powers, actions, and control of the

boards of directors and senior officers of NNSA and the other EMEA Debtors;

(d)     The identity and location of the officers or other senior management for NNSA

and the other EMEA Debtors responsible for finance and control functions,

human resources, operational decisions, sales and dealings with customers,

suppliers, taxation, the settlement of intercompany accounts, and treasury and

banking functions;

(e)     The statements and factual assertions contained in the EMEA Debtors' Chapter

15 Petitions, the Clément Witness Statement, and the witness statements

submitted by EMEA Director Sharon Rolston in support of those Chapter 15

Petitions;

(f)     The factual bases underlying recognition of the English Proceedings as foreign

main proceedings as to the EMEA Debtors;

(g)     Facts in Mr. Lesur's knowledge that support, refute or otherwise pertain to the

allegations made in the EMEA Claims to the effect that NNC and/or NNL

controlled the Nortel Group's operations, and that NNI participated in or

assisted such control, including but not limited to control of group tax, transfer

pricing, and treasury functions;

(h)     Facts in Mr. Lesur's knowledge that support, refute or otherwise pertain to the

allegations made in the EMEA Claims that the *de jure* directors of NNSA and

the other EMEA Debtors breached their fiduciary duties or otherwise failed to

act properly, any claims threatened or asserted or litigation commenced against

any of the current or former directors or officers of NNSA or the other EMEA

Debtors related to their breaches of fiduciary duties or any of the matters

alleged in the EMEA Claims, and any communications with such directors

regarding those proceedings or the subject matter of those proceedings;

(i)     Any policy, practice or control concerning directors' and officers' fiduciary or

other duties under relevant law;

(j)     The profitability, revenue, expenses, cash flow and value of, and accounting

for, the various Nortel entities and Lines of Business;

(k)     Debt financing transactions and credit facilities;

(l)     Pre-petition Asset Sales involving NNSA or the other EMEA Debtors and the

allocation of proceeds therefrom, including but not limited to related planning,

negotiations, discussions, consideration, approvals and involvement by the

boards of directors or personnel of NNSA or the other EMEA Debtors, and any

analyses or advice (whether internal or independent) provided to or relied on by

such directors or personnel in respect thereto, and the factual basis for the

allegations in the EMEA Claims concerning such sales;

(m)     Business acquisitions by Nortel, the significance of intellectual property in

acquisitions as the value driver for the transactions, and the integration of

acquired businesses into Nortel;

16

(n)     Pre-petition restructurings and associated costs;

(o)     Ownership, registration, maintenance, enforcement, valuation, amortization, business and/or strategic importance, licensing (intercompany, related party and third party), acquisition, and sale of Nortel's intellectual property and associated rights;

(p)     Intellectual property-related costs and revenue streams, allocation of such costs and revenue streams and accounting therefor;

(q)     The organization, make-up and activity of Nortel's intellectual property-related legal and business teams;

(r)     Valuations or analyses commissioned or conducted, whether pre-petition or post-petition, concerning the value of Nortel's intellectual property, business lines, research and development efforts or other business-related tangibles or intangibles in any jurisdiction or for any subsidiary;

(s)     Agreements and practices among Nortel entities in respect of intellectual property and rights and obligations in or to intellectual property;

(t)     Research and development planning, strategy, decision-making and policies;

(u)     Nortel companies' relative and respective contributions to research and development;

(v)     The negotiation, drafting, approval, and operation of the Master Research and Development Agreement ("MRDA") and its subsequent amendments, the Residual Profit Split Method ("RPSM"), previous cost-sharing arrangements, related agreements, and Nortel's transfer pricing system generally;

(w)     The involvement by the boards of directors or personnel of NNSA or the other

17

EMEA Debtors in Nortel's transfer pricing arrangements or agreements, any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect of transfer pricing, the role and responsibilities of the auditors of NNSA or the other EMEA Debtors with respect to transfer pricing, and the factual basis for the allegations regarding transfer pricing made in the EMEA Claims;

(x)     Advance Pricing Arrangements/Agreements ("APAs") and communications and filings with taxing authorities regarding any APAs;

(y)     The manner in which Nortel entities represented themselves to investors, credit agencies, governments or other third parties;

(z)     The outsourcing of Nortel's manufacturing business and related sale or outsourcing agreements;

(aa)    The accounting for and distribution of revenue and costs related to Nortel Lines of Business and any other Nortel revenue-generating activity;

(bb)    Sales, contracts and dealings with customers or suppliers, including policies, procedures, and practices used to determine which Nortel Entity received revenue from any customer or supplier relationships;

(cc)    The negotiation and drafting of the Interim Funding and Settlement Agreement ("IFSA") and Final Canadian Funding and Settlement Agreement ("FCFSA");

(dd)    The negotiation, deal structure, and closing of post-petition sales of Nortel assets;

(ee)    The purported "cash to Canada" policy discussed in the EMEA Claims;

(ff)    Project Swift, the alleged extraction of cash from various Nortel subsidiaries

18

prior to Project Swift, the accompanying reorganization of NNIF, and the facts in Mr. Lesur's knowledge that support, refute or otherwise pertain to the allegations in the EMEA Claims relating thereto;

(gg)    Intercompany loans, intercompany dividends, and any other intercompany financing and/or borrowing of money among the Nortel entities, and the factual basis for the allegations in the EMEA Claims relating thereto;

(hh)    Facts in Mr. Lesur's knowledge that support, refute or otherwise pertain to the allegations in the EMEA Claims that NNI benefitted from Nortel policies, transactions, or other occurrences that harmed NNSA or the other EMEA Debtors;

(ii)    Any transactions, agreements or benefits received by NN CALA from the EMEA Debtors that either harmed the EMEA Debtors or for which the EMEA Debtors were not fairly compensated;

(jj)    The financial condition of NNSA or the other EMEA Debtors;

(kk)    The preparation, approval and auditing of the financial statements of NNSA or the other EMEA Debtors;

(ll)    Nortel human resources, including employee compensation, transfers, bonuses, benefit plans, pensions, hires, downsizing and terminations;

(mm)    The trading debt claims alleged in the EMEA Claims, any additional claims in the EMEA Claims not already addressed by these deposition topics, and the factual basis for all such claims; and

(nn)    Any other matter relevant to the positions, claims, and defenses asserted by the Core Parties before the Requesting Court and Canadian Court, including but

19

not limited to those contained in the filings referenced in footnotes 4 and 5.

**11.    Documents or other property to be inspected (Article 3,g)**

None.

**12.    Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

In compliance with Article 211 of the French Code of Civil procedure, the Witness

shall testify under oath.

**13.    Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or summary, cross-examination, etc.) (Articles 3,i and 9)**

The Witness would provide testimony orally in French with verbatim translation in

English and transcript in both French and English. The Witness would then be provided with a

copy of the transcript in French and a reasonable time and opportunity to correct any errors in

the transcript.

In accordance with Article 740 of the French Civil Procedure Code, the parties wish to

be authorized by the French magistrate presiding over depositions to put questions to the

Witness.  It is requested that the legal representatives of the U.S. Debtors and the U.S.

Committee, the legal representatives of the Monitor and Canadian Debtors, the legal

representatives of the EMEA Debtors and U.K. Pension Claimants, and the legal

representatives of the Witness, if any, be permitted to conduct the examination of the Witness

in France.  The questions would be posed in English and translated for the Witness into French

by a certified interpreter. The Witness would answer the questions in French and the certified

interpreter would then translate the answers into English.

In accordance with Articles 3(i) and 9 of the Hague Convention, the Court requests that

the examination is executed in compliance with American proceedings rules.  The Witness would be posed questions in accordance with United States Federal Rules of Civil Procedure, specifically F.R.C.P. 30.  In accordance with F.R.C.P. 30(b)(1), attorneys for all parties must be provided notice of the examination and an opportunity to be present.  The party seeking the testimony is obligated under U.S. law to notify the attorneys for any other party to the case of the time and place of the examination.  Pursuant to F.R.C.P. 30(b)(3), it is requested that the testimony of each witness be recorded by both stenographic and video means.  When a party or parties desire that testimony be recorded by stenographic and video means, they are obligated under U.S. law to provide for the presence of the stenographer (court reporter) and videographer and to bear the costs associated with their work.  The Applicants would bear the costs of the recordings as well as the costs associated with providing a certified interpreter. The Witness would be entitled to be represented by an attorney present during the examination.

The Requesting Court respectfully requests that the representatives of the U.S. Debtors and U.S. Committee be allotted a total of three hours and twenty minutes for their examination, that the representatives of the Monitor and Canadian Debtors be allotted a total of three hours and twenty minutes for their examination, and that representatives of the EMEA Debtors and U.K. Pension Claimants be allotted a total of three hours and twenty minutes for their examination.  Counsel for these parties are available to begin the examination at such a date during the period from 23 September 2013 through 13 December 2013 as may be mutually agreed with the Witness' legal representatives, if any, and approved by you.

The Requesting Court also respectfully requests that you cause the testimony of the Witness and all of the documents produced at his examination as a result of this Letter of

Request to be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jean-Yves Garaud of Cleary Gottlieb Steen & Hamilton LLP, 12, rue de Tilsitt, 75008 Paris, France, under cover duly sealed.

In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of France.

**14.    Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7)[6]**

Notification of the time when and the place where the examination will take place shall be sent directly to:

Jean-Yves Garaud
Cleary Gottlieb Steen & Hamilton LLP
12, rue de Tilsitt
75008 Paris
France

who will keep the Court and the parties informed.

**15.    Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8)**

None.

**16.    Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11,b)**

The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the

---

[6]    For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the Applicants to the jurisdiction of the courts of France, nor are the legal representatives of the Applicants instructed to accept service of any proceedings in France.

United States, or would disclose a privileged communication.

17.   **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

Nortel Networks Inc.
c/o Jean-Yves Garaud
Cleary Gottlieb Steen & Hamilton LLP
12, rue de Tilsitt
75008 Paris
France

- and -

Nortel Networks Ltd.
c/o David Por
Allen & Overy LLP
52 avenue Hoche
CS 90005
75379 Paris Cedex 08
Paris
75379
France

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the cost of the Examiner and the costs of the transcript of the evidence will be initially borne by the U.S. Debtors and Canadian Debtors.  The U.S. Debtors' and Canadian Debtors' payment of any such fees and costs is without prejudice to the U.S. Debtors' and Canadian Debtors' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.

DATE OF REQUEST                                    ..........................................................

SIGNATURE AND SEAL OF THE                          ..........................................................
REQUESTING AUTHORITY