IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- X
:
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
                       Debtors. : Jointly Administered
:
: Hearing date: October 8, 2013 at 10:00 a.m. (ET)
: Objections due: September 26, 2013 at 4:00 p.m. (ET)
---------------------------------------------------------- X

### DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND BANKRUPTCY RULE 9019 APPROVING STIPULATION BETWEEN NORTEL NETWORKS INC. AND RADWARE LTD.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing NNI's entry into and approving a stipulation attached hereto as **Exhibit B** (the "Stipulation") with Radware Ltd. ("Radware," and together with NNI, the "Parties"), and (ii) granting the Debtors such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6. Since the Petition Date, Nortel has sold its business units and other assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7. By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation, and (ii) granting the Debtors such other and further relief as this Court deems just and proper.

## Facts Relevant to this Motion

**A.   Sale of Certain Assets to Radware**

8. On February 20, 2009, the Debtors filed the *Debtors' Motion for Orders (I) Authorizing and Approving (A) Purchase Agreement, (B) Bidding Procedures, (C) Break-Up Fee and Expense Reimbursement, (D) Notice Procedures, (E) Assumption and Assignment Procedures, (F) Filing of Certain Schedules Under Seal and (G) Date for the Sale Hearing, and*

---

[4]   The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

*(II) Authorizing and Approving (A) Sale of Certain Non-Core Assets Free and Clear of All Liens, Claims and Encumbrances and (B) Assumption and Assignment of Certain Contracts* [D.I. 353] (the "Sale Motion") seeking approval of the sale of certain non-core assets (as more fully described in the Asset Purchase Agreement attached to the Sale Motion, the "Alteon Assets") to Radware for a purchase price of $17,650,000 (subject to certain adjustments) pursuant to a stalking-horse purchase agreement, which was subject to the receipt of a higher or better offer at auction.

9. Following this Court's approval of the bidding procedures and the granting of certain related relief by order dated February 27, 2009 [D.I. 386], and the Debtors' subsequent marketing of the Alteon Assets to other parties, this Court approved the sale of the Alteon Assets to Radware by order dated March 26, 2009 [D.I. 539], and the sale closed on March 31, 2009 (the "Closing").

10. In connection with the Closing, on March 31, 2009, Radware entered into a Master Purchase and Sale Agreement (the "MPSA") with NNL, which, among other things, set terms applicable to (i) the purchase by various Nortel entities of products and services related to the Alteon Assets post-Closing from Radware, and (ii) Radware's obligations to provide such products and services, both to Nortel as well as Nortel's third-party customers. The MPSA requires, under certain circumstances, that Nortel remit a portion of revenues collected from third party customers on account of services provided by Radware post-Closing.

B.     **The Radware Demand**

11. On January 3, 2012, Radware delivered a letter to NNI, NNC and Avaya Inc., alleging that Nortel was liable for $6,376,650 on account of unpaid remittances owed to Radware under the MPSA (as amended, the "Demand"). On March 7, 2012, Radware delivered a letter to NNI amending the amount identified in the Demand to $4,862,051 (the "Demand Amount").

Approximately $4,077,203 of the Demand Amount relates to agreements with customers of NNI, as opposed to those of other Nortel entities.

**C.     The Proposed Settlement**

12. In an effort to avoid the cost and risk inherent in litigating the Demand, the Parties engaged in arm's-length negotiations to resolve the disputes between the Debtors and Radware. As a result of these negotiations, subject to this Court's approval, NNI has reached a compromise with Radware as memorialized in the Stipulation.

13. The Stipulation provides that, subject to this Court's approval:[5]

   a. Upon the Settlement Date of the Stipulation, NNI shall pay $780,000 to Radware.  Stipulation ¶ 2.

   b. Effective upon the Settlement Date, Radware and its affiliates release and forever discharge the Debtors and their subsidiaries, general partners, limited partners, directors, officers, employees, agents and attorneys, and each of their predecessors, successors and assigns, from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, costs and expenses (including, without limitation, attorneys' fees) whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that any of Radware or its affiliates now has, had, may have had, or hereafter may have against any of the Debtors and each of their subsidiaries arising from or related to the MPSA and the Demand.  Stipulation ¶ 3.

   c. Effective upon the Settlement Date, NNI releases and forever discharges Radware and its subsidiaries, general partners, limited partners, directors, officers, employees, agents and attorneys, and each of their predecessors, successors and assigns, from any and all claims, rights, defenses, demands, liabilities, obligations, damages, actions, suits, causes of action, and setoffs, costs and expenses (including, without limitation, attorneys' fees) whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that NNI now has, had, may have had, or hereafter may have against Radware or its affiliates arising from or related to the MPSA and the Demand.  Stipulation ¶ 4.

---

[5] This discussion is intended as a summary of the terms of the Stipulation.  To the extent that the summary and the terms of the Stipulation are inconsistent, the terms of the Stipulation shall control.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Stipulation.

    d.    On the Settlement Date, each of Radware and the Debtors shall be forever barred from filing or otherwise asserting any further claim or cause of action against one another with respect to the matters covered by the releases set forth above. Stipulation ¶ 6.

    e.    Radware agrees to indemnify, defend and hold harmless each of the Debtors from and against any and all actions, suits, claims, proceedings, costs, damages, losses, liabilities, judgments, amounts, taxes, fines, penalties, levies, compensations paid in settlement, and expenses (including without limitation reasonable attorneys' fees and disbursements), resulting from a claim, demand, lawsuit, action or proceeding initiated by Radware, relating to, arising from or in connection with the matters set forth in the Demand or the MPSA (a "Radware Action"), and any claim, demand, lawsuit, action or proceeding initiated by any party against the Debtors relating to, arising from or in connection with any such Radware Action. Stipulation ¶ 7.

**Basis for Relief**

14. The Debtors seek authorization to enter into the Stipulation under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

15. Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease the property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b). Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction. Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996).

16. The use or transfer of estate property under this provision must be supported by a sound business purpose. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459 JJF, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re

6

Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, Civil Action No. 07-2785 (FLW), 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward Holding Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in exchange. See In re Decora Industries, Inc., 2002 WL 32332749, at *2; In re Del. & Hudson Ry. Co., 124 B.R. at 176.

17.     Bankruptcy Rule 9019 provides, in pertinent part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "'[c]ompromises are favored in bankruptcy.'" In re Martin, 91 F.3d at 393 (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the

bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

18.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "'the compromise is fair, reasonable, and in the interest of the estate.'" In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co., 2008 WL 821088, at *5 (citing Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.), 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

19.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

20.     The Debtors respectfully submit that the Stipulation meets the requirements under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. As required by section 363, the Stipulation was negotiated and entered into by the Parties in good faith as a means of resolving

8

the Demand, and all outstanding issues relating to the MPSA and the Demand. The compromise embodied by the Stipulation rises well above the necessary threshold of reasonableness and serves the sound business purposes of resolving the Debtors' disputes with Radware and reducing the number and amount of administrative claims prosecuted against the Debtors in these chapter 11 cases.

21.     While NNI is prepared to litigate the Demand and believes that there is a reasonable likelihood it would prevail in such litigation, NNI recognizes that litigation regarding the Demand carries with it inherent uncertainties and risks. Pursuant to the settlement reflected in the Stipulation, Radware has agreed to release the Debtors from liabilities asserted in the Demand or otherwise under the MPSA in exchange for a cash payment of approximately 19% of the Demand Amount that relates to agreements with customers of NNI. This resolution fairly balances NNI's likelihood of success on the merits of the claims asserted in the Demand against its interest in avoiding the uncertainty and potential risks of litigation. In addition, the disputes underlying the Demand are highly fact-intensive and litigation would result in the estate's expenditure of considerable additional legal fees and fees paid to outside consultants. Accordingly, in the absence of a settlement, NNI's estate would be burdened with the time and costs of litigation, which would disrupt the estate's efforts to resolve the many matters that are essential to the ultimate resolution of these cases.

22.     Finally, the interests of the creditors militate in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the allegations raised by the Demand, and the avoidance of litigation risk and further legal expenses that would be incurred if the Demand were to be litigated. The

Debtors have reviewed the terms of the Stipulation with counsel to the Committee and understand that the Committee has no objection to the relief sought in this Motion.

23. In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

## Notice

24. Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) Radware; (v) counsel to Radware; and (vi) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

25. No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: September 12, 2013  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors in Possession*