**EXHIBIT G**

**Request for International Judicial Assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| 1. | **Sender** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |
| 2. | **Central Authority of the Requested State** | The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| 3. | **Person to whom the executed request is to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |

4. **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | |
|---|---|
| **Date** | Examination to occur on 21 and 22 October 2013 or as the parties may agree. |
| **Reason for urgency** | The trials for which the evidence will be used will begin on or after 31 March 2014. The parties' pre-trial examinations must be concluded by 13 December 2013. |

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | | |
|---|---|---|---|
| 5. | *a* | **Requesting judicial authority (Article 3,a)** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street N, 3rd Floor<br>Wilmington, Delaware 19801 |
| | *b* | **To the competent authority of (Article 3,a)** | United Kingdom of Great Britain and Northern Ireland |

**6.    Names and addresses of the parties and their representatives (including the representatives in the requested State) (Article 3,b)**

    *a*    **Plaintiff** (Claimants)          **Joint Administrators and EMEA Debtors**

        **Representatives**

Derek J.T. Adler
Amera Z. Chowhan
Gabrielle Glemann
Charles H. Huberty
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

James L. Patton
Edwin J. Harron
John T. Dorsey
Jamie Luton Chapman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Robin Schwill
Sean Campbell
Davies Ward Phillips & Vineberg LLP
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

Matthew P. Gottlieb
Lax O'Sullivan Scott Lisus LLP
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

John Whiteoak
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2HS

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Charlene D. Davis
Justin Alberto
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
Telephone: (302) 655-5000
Facsimile: (212) 658-6395

David Ward
William Burden
Lara Jackson
Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

Angela Dimsdale Gill
John Tillman
Matthew Bullen
Hogan Lovells International LLP
Atlantic House
Holborn Viaduct
London EC1A 2FG

| | |
|---|---|
| ***b*  **Defendants** (U.S. Debtors) | **Nortel Networks Inc.,** *et al.*[1] |
| **Representatives** | Howard S. Zelbo<br>James L. Bromley<br>Jeffrey A. Rosenthal<br>Lisa M. Schweitzer<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000 |
| | Jonathan Kelly<br>Cleary Gottlieb Steen & Hamilton LLP<br>City Place House<br>55 Basinghall Street<br>London EC2V 5EH |
| | Derek C. Abbott<br>Eric D. Schwartz<br>Ann C. Cordo<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone:  (302) 658-9200<br>Facsimile: (302) 658-3989 |
| | Scott Bomhof<br>Tony DeMarinis<br>Andrew Gray<br>Adam Slavens<br>79 Wellington Street West<br>Suite 3000, Box 270, TD Centre<br>Toronto ON M5K 1N2<br>Telephone: (416) 865-0040<br>Facsimile: (416) 865-7380 |

---

[1]    The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc. Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

*c*  **Other Parties**                    **The Monitor and Canadian Debtors**

   **Representatives**                    Ken Coleman
                                          Daniel Guyder
                                          Paul Keller
                                          Laura Hall
                                          James Barabas
                                          Michael Sadowitz
                                          Jacob S. Pultman
                                          Allen & Overy LLP
                                          1221 Avenue of the Americas
                                          New York, New York 10020
                                          Telephone: (212) 610-6300
                                          Facsimile: (212) 610-6399

                                          Marc Florent
                                          Allen & Overy LLP
                                          One Bishops Square
                                          London E1 6AD
                                          United Kingdom

                                          Mary F. Caloway
                                          Kathleen A. Murphy
                                          Buchanan Ingersoll & Rooney PC
                                          1105 North Market Street
                                          Suite 1900
                                          Wilmington, Delaware 19801
                                          Telephone: (302) 552-4200
                                          Facsimile: (302) 552-4295

                                          Jay Carfagnini
                                          Fred Myers
                                          Joseph Pasquariello
                                          Benjamin Zarnett
                                          Jessica Kimmel
                                          Peter Ruby
                                          Alan Mark
                                          Jason Wadden
                                          Lauren Butti
                                          Goodmans LLP
                                          Bay Adelaide Centre
                                          333 Bay Street
                                          Suite 3400
                                          Toronto, ON M5H 257
                                          Telephone: (416) 979-2211
                                          Facsimile: (416) 979-1234

Jennifer Stam
Derrick Tay
Peter Choe
Graham Smith
Gowling Lafleur Henderson LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Telephone: (416) 216-4000
Facsimile: (416) 216-3930

Alan Merskey
Norton Rose Canada LLP
TD Waterhouse Tower, Suite 2300
79 Wellington Street West, P.O. Box 128
Toronto, ON M5K 1H1
Telephone: (416) 216-4805
Facsimile: (416) 216-3930

**Official Committee of Unsecured Creditors**

Fred Hodara
David Botter
Robert A. Johnson
Abid Qureshi
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
Dentons Canada LLP

77 King Street West
4th Floor
Toronto, ON M5K 0A1
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

**7.      Nature of the proceedings and summary of claims (Article 3,c)**

7.1      This action, captioned <u>In re Nortel Networks Inc., et al.</u>, Case No. 09-10138

(KG) (the "<u>Action</u>"), is a bankruptcy proceeding pending before the Requesting Court.  On 14

January 2009 (the "<u>Petition Date</u>"), Nortel Networks Inc. ("<u>NNI</u>") and its affiliated debtors

(collectively, the "<u>U.S. Debtors</u>," and together with the U.S. Committee, the Canadian

Debtors, and the Monitor, each defined hereinafter, the "<u>Applicants</u>"), with the exception of

Nortel Networks (CALA) Inc. ("<u>NN CALA</u>"), each filed a voluntary petition for relief in the

Requesting Court under Chapter 11 of the United States Bankruptcy Code.  NN CALA filed

its petition on 14 July 2009.  NNI is incorporated in the United States in the State of Delaware,

with its former principal place of business in the State of North Carolina. Other parties with

interests related to the U.S. Debtors include an Official Committee of Unsecured Creditors of

the U.S. Debtors (the "<u>U.S. Committee</u>").

7.2      Also on 14 January 2009, the U.S. Debtors' ultimate corporate parent, Nortel

Networks Corporation ("<u>NNC</u>"), NNI's direct corporate parent, Nortel Networks Limited

("<u>NNL</u>"), and certain of their Canadian affiliates (collectively, the "<u>Canadian Debtors</u>") filed

an application with the Ontario Superior Court of Justice (the "<u>Canadian Court</u>") under the

Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors, and a

monitor, Ernst & Young Inc. (the "<u>Monitor</u>"), was appointed by the Canadian Court.  Other

parties with interests related to the Canadian Debtors include a Canadian Creditors Committee

(the "<u>CCC</u>") and former directors and officers of the Canadian Debtors (the "<u>Directors and</u>

7

Officers").

7.3     On the same date, upon the request of Nortel Networks UK Limited ("NNUK")
and eighteen of its affiliates from the Europe, Middle East and Africa region (collectively with
NNUK, the "EMEA Debtors"), the High Court of Justice of England and Wales placed the
EMEA Debtors into administration, and appointed individuals from Ernst & Young LLP as
administrators (collectively, the "Joint Administrators").[2]  NNUK is an English corporation
with its former registered office at Maidenhead Office Park, Westacott Way, Maidenhead,
Berkshire SL6 3QH.[3]

7.4     Pursuant to a cross-border protocol, the Requesting Court and the Canadian
Court will hold coordinated cross-border trials commencing on or after 31 March 2014 (the
"Trials") to decide certain issues, including principally:  (i) the allocation of proceeds from
sales of the assets of the Nortel group among the U.S. Debtors, Canadian Debtors, and EMEA
Debtors (the "Allocation Dispute"); (ii) claims filed against the U.S. Debtors and Canadian
Debtors by NNUK, other EMEA Debtors, Nortel Networks AG and Nortel Networks AS (the
"EMEA Claims"); and (iii) claims filed against the U.S. Debtors and Canadian Debtors

---

[2]     In addition to NNUK, orders of administration were sought with respect to: Nortel GmbH ("NN
Germany"); Nortel Networks (Austria) GmbH ("NN Austria"); Nortel Networks (Ireland) Limited ("NN Ireland");
Nortel Networks AB ("NN Sweden"); Nortel Networks B.V. ("NN Holland"); Nortel Networks Engineering Service
Kft ("NN Hungary"); Nortel Networks France S.A.S. ("NNSAS"); Nortel Networks Hispania, S.A. ("NN Spain");
Nortel Networks International Finance & Holding B.V. ("NNIF"); Nortel Networks N.V. ("NN Belgium"); Nortel
Networks Oy ("NN Finland"); Nortel Networks Polska Sp. z.o.o. ("NN Poland"); Nortel Networks Portugal S.A.
("NN Portugal"); Nortel Networks Romania SRL ("NN Romania"); Nortel Networks S.A. ("NNSA"); Nortel
Networks S.p.A. ("NN Italy"); Nortel Networks Slovensko, s.r.o. ("NN Slovakia"); and Nortel Networks, s.r.o.
("NN Czech Rep.").
[3]     In addition to the U.S. Debtors, U.S. Committee, Monitor, Canadian Debtors, CCC, Directors & Officers,
EMEA Debtors, Joint Administrators, and UK Pension Claimants, additional parties have been designated as "Core
Parties" in the proceedings before the U.S. Court and Canadian Court, with the right, *inter alia*, to participate fully
in hearings relating to the Allocation Dispute.  The other Core Parties include the ad hoc group of bondholders that
hold claims issued and/or guaranteed by NNC, NNL, NNI and Nortel Networks Capital Corporation (the
"Bondholders"); certain indenture trustees – Wilmington Trust, National Association; The Bank of New York
Mellon; and Law Debenture Trust Company of New York – in respect of notes issued or guaranteed by Nortel
affiliates; and other Nortel affiliates with an interest in the Allocation Dispute, which are Nortel Networks Optical
Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and
Nortel Networks (Northern Ireland) Limited.

relating to NNUK's pension fund (the "U.K. Pension Claims") by the Nortel Network UK

Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "U.K. Pension

Trustee"), and the Board of the Pension Protection Fund, a privately funded insurer (the

"PPF," and together with the U.K. Pension Trustee, the "U.K. Pension Claimants").  The

Applicants dispute the validity of the EMEA Claims and U.K. Pension Claims and have filed

objections to them.

       7.5     As part of the upcoming Trials, each party submitted to the Requesting Court

an allocation position detailing its proposed methodology for determining the allocation of

proceeds from sales of the assets of the Nortel group.  The parties' allocation positions put at

issue a variety of factors, including but not limited to the significance of intercompany

agreements governing transfer pricing to the estates' respective entitlement to Nortel

intellectual property; the proportion of Nortel's revenue and cash flow generated by the U.S.

Debtors, Canadian Debtors, and EMEA Debtors; the location and nature of Nortel's research

and development activities and the proportional contribution of the estates to such activities;

pre- and post-petition asset sales; and the locus of other fixed and intangible Nortel assets,

including customer relationships.[4]

---

[4]      The Core Parties' opening and responsive allocation positions are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers indicated:  allocation position of the Joint Administrators and EMEA Debtors [D.I. 10536]; allocation position of the U.S. Debtors and U.S. Committee [D.I. 10537]; allocation position of the CCC [D.I. 10538]; allocation position of the U.K. Pension Claimants [D.I. 10539]; allocation position of the Bondholders [D.I. 10540]; allocation position of the Monitor and Canadian Debtors [D.I. 10543]; joinder of the Bank of New York Mellon in the allocation position of the U.S. Debtors and U.S. Committee [D.I. 10547]; joinder of Law Debenture Trust Company of New York in the allocation position of the U.S. Debtors and U.S. Committee and in the allocation position of the Bondholders [D.I. 10548]; joinder of Wilmington Trust, National Association, in the allocation position of the Monitor and Canadian Debtors and in the allocation position of the CCC [D.I. 10563]; responsive allocation submission of the Joint Administrators and EMEA Debtors [D.I. 10687]; responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10690]; joinder of Law Debenture Trust Company of New York in the responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10691]; responsive allocation submission of Wilmington Trust, National Association [D.I. 10692]; responsive allocation submission of the U.K. Pension Claimants [D.I. 10693]; responsive allocation submission of the Bondholders [D.I. 10694]; responsive allocation submission of the CCC [D.I. 10695]; responsive allocation submission of the Monitor and Canadian Debtors [D.I. 10696].

7.6     The EMEA Claims and U.K. Pension Claims likewise put at issue a variety of factors, including but not limited to the solvency of the various EMEA Debtors during the years 2000 through 2008; whether NNUK had sufficient resources to fund the Nortel Networks UK Pension Plan and whether it is reasonable to impose upon the Canadian Debtors and U.S. Debtors an obligation to make up for any shortfall; and whether the EMEA Debtors were harmed by various Nortel arrangements and intercompany transactions, including Nortel's transfer pricing system, a transaction known as Project Swift and the accompanying reorganization of Nortel, certain intercompany loans and dividends, and sales of Nortel assets that preceded the Petition Date.[5]

7.7     All of the parties (including NNUK, the other EMEA Debtors, and the U.K. Pension Claimants) are currently engaged in the process of obtaining evidence by order of the Requesting Court and Canadian Court in anticipation of the Trials.

7.8     The evidence sought from the person identified below may be material to the resolution of these factual disputes.

**8.     Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1     Ms. Lorraine Harper (Smeaton) was employed by NNUK as Senior Tax

---

[5]     The operative claims filed in the Requesting Court and objections thereto are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers or claim numbers indicated amended claims of NNUK [C.I. 7786]; amended claims of NNSA's court-appointed liquidator [C.I. 7784]; amended claims of NNSA [C.I. 7785]; amended claims of NNIF [C.I. 7776]; amended claims of NNIR [C.I. 7774]; amended claims of NN Italy [C.I. 7775]; amended claims of NN Spain [C.I. 7787]; amended claims of NN Holland [C.I. 7780]; amended claims of NN Belgium [C.I. 7781]; amended claims of NN Poland [C.I. 7754]; amended claims of NN Switzerland [C.I. 7752]; amended claims of NN Germany [C.I. 7778]; amended claims of NN Portugal [C.I. 7751]; amended claims of NN Czech Rep. [C.I. 7782]; amended claims of NN Austria [C.I. 7755]; amended claims of NN Sweden [C.I. 7779]; amended claims of NN Hungary [C.I. 7756]; amended claims of NN Slovakia [C.I. 7750]; amended claims of NN Norway [C.I. 7762]; amended claims of NN Romania [C.I. 7783]; amended claims of NN Finland [C.I. 7753]; amended claims of the Nortel Networks U.K. Pension Trust Limited and Board of the Pension Protection Fund [C.I. 8357, 8358]; Joint Omnibus Objection to the Remaining Amended Claims Filed by the EMEA Claimants [D.I. 10521]; Joint Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and Board of the Pension Protection Fund [D.I. 10519]. The operative claims filed in the Canadian Court and objections thereto are publicly available at http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

Manager of EMEA from July 9, 2007 to November 27, 2009 and Leader of EMEA Tax from

April 1, 2008 to November 27, 2009.  In response to interrogatories, the EMEA Debtors have

identified Ms. Harper as among those persons affiliated with them most knowledgeable

regarding taxation issues.  In addition, documents reviewed to date by the Canadian Debtors

indicate that Ms. Harper was involved in discussions regarding tax issues, treatment of the

transfer pricing regime and tax treatment of Nortel's business operations as well as mergers

and acquisitions, intercompany loans, transaction avoidance, dividend issuance and other

topics as discussed in paragraph 7.5 above.  In the course of their continuing review of

documents provided by the EMEA Debtors, the Applicants may identify additional subjects

regarding which Ms. Harper is knowledgeable.

      8.2      As a former senior tax manager and leader of EMEA tax, Ms. Harper is also

likely to have knowledge relevant to the EMEA Claims and U.K. Pension Claims.  The factual

predicates of the EMEA Claims and U.K. Pension Claims – including the alleged unfairness of

Nortel's transfer pricing system, intercompany loans and dividends, and pre-petition asset

sales – relate to the time period of Ms. Harper's employment by Nortel.

      8.3      Further, the EMEA Claims and U.K. Pension Claims allege, *inter alia*, that the

U.S. Debtors and Canadian Debtors are liable to the EMEA Debtors in connection with the

above transactions because the U.S. Debtors and Canadian Debtors dominated or controlled

the decision-making of the EMEA Debtors.  To obtain the initial orders from the English

Court placing the EMEA Debtors into administration, the EMEA Debtors submitted sworn

witness statements from another Nortel director and employee, Ms. Sharon Rolston (the

"Rolston Witness Statements"), which included various assertions relating to control over the

EMEA Debtors.  The U.S. Debtors have argued that the Rolston Witness Statements (which

11

were also filed in the Requesting Court in order to obtain recognition of the EMEA Debtors'

administration proceedings) are inconsistent with the assertions in the EMEA Claims of U.S.

or Canadian domination or control.  As a former employee of NNUK, Ms. Harper may have

knowledge relevant to the issue of alleged U.S. or Canadian domination or control.

8.4     Based upon these and other considerations, the Applicants have designated Ms.

Harper as a witness to be examined.

8.5     As of the date of this application, the EMEA Debtors have indicated that they

have attempted to contact Ms. Harper, but are unable to voluntarily produce Ms. Harper to be

deposed.

8.6     It is accordingly requested that for the purpose of justice and for due

determination of the matters in dispute between the parties that you direct Ms. Harper (the

"Witness") to provide oral testimony for use at the Trials (if appropriate) to counsel for the

Applicants, subject to any applicable privileges that may apply under the rules and procedures

of the Requesting Court or the courts of England and Wales.  The Witness' unique importance

to the claims and defenses in these proceedings is described both above and in the subject

matter as to which she is to be examined, detailed in Section 10 below.  Absent voluntary

cooperation, evidence from Ms. Harper is available only by an order of the High Court.

**9.**     **Identity and address of**      Lorraine Harper (Smeaton)
          **any person to be examined**     Talk Talk Telecom Group PLC
          **(Article 3,e)**                 11 Eversham Street
                                            London W11 4AR

**10.**     **Questions to be put to the persons to be examined or statement of the**
            **subject-matter about which they are to be examined (Article 3,f)**

It is requested that the Witness be questioned according to the procedure set out below

in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as

may apply under the rules and procedures of the Requesting Court or the courts of England
and Wales, on the following subjects:

(a)    The organization, management and operation of the Nortel group as a
        multinational enterprise, including as compared to other multinational
        enterprises and including the tax and treasury functions, accounting, cash
        management, planning, budgeting, research and development, sales, purchasing,
        manufacturing, outsourcing and third-party intellectual property licensing;

(b)    The history, functioning and organization of Nortel's "matrix" corporate
        structure, including how financial reporting was conducted and the EMEA
        Debtors' roles within the corporate structure;

(c)    The management, operations, and governance of the EMEA Debtors, including
        but not limited to the powers, actions, and control of the boards of directors and
        senior officers of the EMEA Debtors;

(d)    The identity and location of the EMEA Debtors' officers or other senior
        management responsible for finance and control functions, human resources,
        operational decisions, sales and dealings with customers, suppliers, taxation, the
        settlement of intercompany accounts, and treasury and banking functions;

(e)    The statements and factual assertions contained in the EMEA Debtors' Chapter
        15 Petitions, the Rolston Witness Statements and the witness statements
        submitted by EMEA Director Michel Clément in support of those Chapter 15
        Petitions;

(f)    The factual bases underlying recognition of the English Proceedings as foreign
        main proceedings as to the EMEA Debtors;

(g) Facts in Ms. Harper's knowledge that support, refute or otherwise pertain to the allegations made in the EMEA Claims and/or U.K. Pension Claims to the effect that NNC and/or NNL controlled the Nortel Group's operations, and that NNI participated in or assisted such control, including but not limited to control of group tax, transfer pricing, and treasury functions;

(h) Facts in Ms. Harper's knowledge that support, refute or otherwise pertain to the allegations made in the EMEA Claims and/or U.K. Pension Claims to the effect that the EMEA Debtors' own *de jure* directors breached their fiduciary duties or otherwise failed to act properly, any claims threatened or asserted or litigation commenced against any of the current or former directors or officers of the EMEA Debtors related to their breaches of fiduciary duties or any of the matters alleged in the EMEA Claims and/or U.K. Pension Claims, and any communications with such directors regarding those proceedings or the subject matter of those proceedings;

(i) Any policy, practice, or control concerning directors' and officers' fiduciary or other duties under relevant law;

(j) The profitability, revenue, expenses, cash flow and value of, and accounting for, the various Nortel entities and Lines of Business;

(k) Debt financing transactions and credit facilities;

(l) Pre-petition Asset Sales involving the EMEA Debtors and the allocation of proceeds therefrom, including but not limited to related planning, negotiations, discussions, consideration, approvals and involvement by the boards of directors or personnel of the EMEA Debtors, any analyses or advice (whether

internal or independent) provided to or relied on by such directors or personnel in respect thereto, and the factual basis for the allegations in the EMEA Claims and/or U.K. Pension Claims concerning such sales;

(m)   Business acquisitions by Nortel, the significance of intellectual property in acquisitions as the value driver for the transactions, and the integration of acquired businesses into Nortel;

(n)   Pre-petition restructurings and associated costs;

(o)   Ownership, registration, maintenance, enforcement, valuation, amortization, business and/or strategic importance, licensing (intercompany, related party and third party), acquisition and sale of Nortel's intellectual property and associated rights;

(p)   Intellectual property-related costs and revenue streams, allocation of such costs and revenue streams and accounting therefor;

(q)   The organization, make-up and activity of Nortel's intellectual property-related legal and business teams;

(r)   Valuations or analyses commissioned or conducted, whether pre-petition or post-petition, concerning the value of Nortel's intellectual property, business lines, research and development efforts or other business-related tangibles or intangibles in any jurisdiction or for any subsidiary;

(s)   Agreements and practices among Nortel entities in respect of intellectual property and rights and obligations in or to intellectual property;

(t)   Research and development planning, strategy, decision-making and policies;

(u)   Nortel companies' relative and respective contributions to research and

15

development;

(v)    The negotiation, drafting, approval, and operation of the Master Research and Development Agreement ("MRDA") and its subsequent amendments, the Residual Profit Split Method ("RPSM"), previous cost-sharing arrangements, related agreements, and Nortel's transfer pricing system generally;

(w)    The involvement by the EMEA Debtors' boards of directors or personnel in Nortel's transfer pricing arrangements or agreements, any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect of transfer pricing, the role and responsibilities of the EMEA Debtors' auditors with respect to transfer pricing, and the factual basis for the allegations regarding transfer pricing made in the EMEA Claims and/or U.K. Pension Claims;

(x)    Advance Pricing Arrangements/Agreements ("APAs") and communications and filings with taxing authorities regarding any APAs;

(y)    The manner in which Nortel entities represented themselves to investors, credit agencies, governments or other third parties;

(z)    The outsourcing of Nortel's manufacturing business and related sale or outsourcing agreements;

(aa)   The accounting for and distribution of revenue and costs related to Nortel Lines of Business and any other Nortel revenue-generating activity;

(bb)   Sales, contracts and dealings with customers or suppliers, including policies, procedures, and practices used to determine which Nortel Entity received revenue from any customer or supplier relationships;

(cc)   The purported "cash to Canada" policy discussed in the EMEA Claims and/or U.K. Pension Claims;

(dd)   Project Swift, the alleged extraction of cash from various Nortel subsidiaries prior to Project Swift, the accompanying reorganization of NNIF, and the facts in Ms. Harper's knowledge that support, refute or otherwise pertain to the allegations in the EMEA Claims and/or U.K. Pension Claims relating thereto;

(ee)   Intercompany loans, intercompany dividends, and any other intercompany financing and/or borrowing of money among the Nortel entities, and the factual basis for the allegations in the EMEA Claims and/or U.K. Pension Claims relating thereto;

(ff)   Facts in Ms. Harper's knowledge that support, refute or otherwise pertain to the allegations in the EMEA Claims and/or U.K. Pension Claims that NNI benefitted from Nortel policies, transactions, or other occurrences that allegedly harmed the EMEA Debtors;

(gg)   Any transactions, agreements, or benefits received by NN CALA from the EMEA Debtors that either harmed the EMEA Debtors or for which the EMEA Debtors were not fairly compensated;

(hh)   The financial condition of the EMEA Debtors;

(ii)   The preparation, approval and auditing of the financial statements of the EMEA Debtors;

(jj)   Nortel human resources, including employee compensation, transfers, bonuses, benefit plans, pensions, hires, downsizing and terminations;

(kk)   The NNUK Pension Plan, including the valuation of the Plan (including any

17

predecessor plans), decision-making, control, and governance in respect of the Plan, funding agreements or guarantees relating to any obligation of the Plan by any Nortel entity, negotiations with any Nortel entity or the Pension Trustee or The Pensions Regulator concerning the Plan or the funding thereof, the Contribution Holiday and the impact thereof on the Plan, and the expectations of the U.K. Pension Claimants and stakeholders in respect thereto;

(ll)    Dealings and understandings about any "common platform" and/or the Reciprocal Agreement in respect of Nortel pension plans;

(mm)    The trading debt claims alleged in the EMEA Claims, any additional claims in the EMEA Claims and/or U.K. Pension Claims not already addressed by these deposition topics, and the factual basis for all such claims; and

(nn)    Any other matter relevant to the positions, claims, and defenses asserted by the Core Parties before the Requesting Court and Canadian Court, including but not limited to those contained in the filings referenced in footnotes 4 and 5.

**11.    Documents or other property to be inspected (Article 3,g)**

None.

**12.    Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, the Witness to appear to be examined under oath or affirmation at the office of Herbert Smith Freehills LLP, Exchange House, Primrose Street, London EC2A 2HS.

**13.    Special methods or procedure to be followed (Articles 3,i and 9)**

13.1    The Requesting Court requests that Howard S. Zelbo, James L. Bromley,

Jeffrey A. Rosenthal, Lisa M. Schweitzer, Jacqueline Moessner, Marla Decker, Matthew Gurgel, Brynn Lyerly, Justin L. Ormand, Katherine Wilson-Milne, Neil Forrest, Fred Hodara, David Botter, and Abid Qureshi, who are representatives of the U.S. Debtors or the U.S. Committee, and Ken Coleman, Daniel Guyder, Paul Keller, Laura Hall, James Barabas, Michael Sadowitz and Jacob S. Pultman, who are representatives of the Monitor and Canadian Debtors, or such other persons later designated by the U.S. Debtors, the U.S. Committee or the Monitor and Canadian Debtors, be appointed as Commissioners pursuant to Article 17 of the Convention, and be authorized to question the Witness on the subjects identified above and elicit her sworn testimony.

13.2    The Requesting Court is informed that the U.S. Debtors, the U.S. Committee, the Canadian Debtors and the Monitor intend to seek a corresponding Letter of Request for assistance from the Canadian Court and therefore requests that, subject to its receipt, Sheila Block and Andrew Gray, who are representatives of the U.S. Debtors, and Benjamin Zarnett, Jessica Kimmel, Alan Mark, Alan Merskey, Fred Myers, Peter Ruby, Jason Wadden, Lauren Butti, Graham Smith and Peter Choe, who are representatives of the Canadian Debtors and the Monitor, and all of whom have been admitted to practice before the Canadian Court in the Trials, or such other persons designated at a later time by the U.S. Debtors, the U.S. Committee or the Monitor and Canadian Debtors and are admitted to practice before the Canadian Court in the Trials, be appointed as Commissioners pursuant to the Ontario Rules of Civil Procedure, and be authorized to question the Witness on the subjects identified above and elicit her sworn testimony on the understanding that the Canadian Court's Letter of Request will similarly list the names of all of the same attorneys requested to be appointed as Commissioners pursuant hereto so that all questioning attorneys will be appointed by both

courts before whom the Trials are to be conducted.

13.3    The Requesting Court further requests that Derek J.T. Adler, Amera Z. Chowhan, Gabrielle Glemann, and Charles H. Huberty, who are the representatives of the EMEA Debtors, and Marc Abrams, Brian E. O'Connor, and Sameer Advani, who are representatives of the U.K. Pension Claimants, Lyndon Barnes and Alex Cobb, who are representatives of the Directors and Officers, Paul Steep, Elder Marques, Tim Hoeffner, Richard Hans, Ken Rosenberg and Lily Harmer, who are representatives of the Canadian Creditors Committee and Kevin Ashby and Atara Miller, who are the representatives of the Bondholders, or such other persons later designated by the EMEA Debtors, U.K. Pension Claimants, the Directors and Officers, the Canadian Creditors Committee or the Bondholders, be appointed as Commissioners and be authorized to participate, if they so elect, in questioning the Witness and to elicit her sworn testimony.

13.4    Pursuant to Article 9 of the Convention it is requested that the legal representatives of the U.S. Debtors and the U.S. Committee, the legal representatives of the Monitor and Canadian Debtors, the legal representatives of the EMEA Debtors and U.K. Pension Claimants, and the legal representatives of the Witness, if any, be permitted to conduct the examination of the Witness in England before an impartial Barrister of the Bar of England and Wales (the "Examiner"), to be nominated by the Applicants, who, subject to approval by you, shall act as referee.  It is requested that the Witness be placed under oath or solemn affirmation in accordance with whatever procedure English law provides for in these matters before answering the oral questions and cross-questions on the subjects identified above which are put to them by the legal representatives of the U.S. Debtors and the U.S. Committee, the legal representatives of the Monitor and Canadian Debtors, the legal

representatives of the EMEA Debtors and U.K. Pension Claimants, and the Witness' legal representatives, if any.

13.5     The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with the relevant events and transactions in this complex matter.  Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible.  If the questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.6     The Requesting Court respectfully requests that the representatives of the U.S. Debtors and U.S. Committee be allotted a total of three hours and twenty minutes for their examination, that the representatives of the Monitor and Canadian Debtors be allotted a total of three hours and twenty minutes for their examination, and that representatives of the EMEA Debtors and U.K. Pension Claimants be allotted a total of three hours and twenty minutes for their examination.  Counsel for these parties are available to conduct the examination on 21 and 22 October 2013, or at such dates during the period from 23 September 2013 through 13 December 2013 as may be mutually agreed with the Witness' legal representatives, if any, and approved by you.

13.7     The Requesting Court also respectfully requests that the questions and the responses of the Witness be recorded verbatim and that the Witness sign the verbatim transcript.  The verbatim transcript of the Witness' responses to questions under oath taken pursuant to the Letters of Request issued or endorsed by the Courts will be admissible at the Trials in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Courts), except to the extent that the content of such transcript of the

examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Ontario rules of evidence or the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction.  The Requesting Court also respectfully requests that you cause the testimony of the Witness and all of the documents produced at her examination as a result of this Letter of Request be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case when required.

13.8    In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of England and Wales.

13.9    The appearance of each Witness for her testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear.  However, the Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel each Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

**14.    Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7)**[6]

Jonathan Kelly

---

[6]    For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the Applicants to the jurisdiction of the courts of England and Wales, nor are the legal representatives of the Applicants instructed to accept service of any proceedings in England and Wales.

Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

**15.    Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8)**

None.

**16.    Specification of privilege or duty to refuse to give evidence under the law of the State of Origin (Article 11,b)**

The Witness may refuse to answer any question asked during the examination if such

answer would subject the Witness to a real and appreciable danger of criminal liability in the

United States, or would disclose a privileged communication.

**17.    The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

Nortel Networks Inc.
c/o Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

- and -

Nortel Networks Ltd.
c/o Marc Florent
Allen & Overy LLP
One Bishops Square
London E1 6AD

- and -

Joint Administrators
c/o James Norris-Jones
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2EG
United Kingdom

23

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the costs of the Examiner and the costs of the transcript of the evidence will be initially borne by the U.S. Debtors, Canadian Debtors and EMEA Debtors. The payment of any such fees and costs is without prejudice to the U.S. Debtors', Canadian Debtors' and EMEA Debtors' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.

DATE OF REQUEST                          ...........................................................

SIGNATURE AND SEAL OF THE                ...........................................................
REQUESTING AUTHORITY