# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200
(302) 658-3989 Fax

Derek C. Abbott
302 351 9357
302 425 4664 Fax
dabbott@mnat.com

October 8, 2013

**VIA HAND DELIVERY**

The Honorable Kevin Gross
United States Bankruptcy Court
for the District of Delaware
824 N. Market St., 6th Floor
Wilmington, DE 19801

      Re:    *In re: Nortel Networks Inc., et al.*, Case No. 09-10138 (KG)

Dear Judge Gross:

      We write on behalf of the U.S. Interests to correct the errors in yesterday's letter from the EMEA Debtors with regard to the French depositions.

      First, while we wish to take Mr. Adler's representation to the Court at face value, it is inconceivable that counsel for the French liquidator and NNSA, which include the French firm FTPA and global firms, with extensive Paris litigation practices, Hughes Hubbard & Reed and Herbert Smith – all first "learned" of the so-called "French blocking statute" last week and were unaware of it when they scheduled these depositions more than a month ago and when the French liquidator himself agreed to voluntarily appear for deposition and submitted a consent order to that effect to Your Honor two weeks ago. Rather, as explained below, this is another 11th hour effort by the EMEA Debtors to disrupt the other parties' efforts to conduct necessary discovery into their meritless claims.

      Second, Mr. Adler inaccurately describes his conversations this past weekend with counsel for the U.S. Debtors. Rather than engage in a dispute over who said what, we note for the Court that the EMEA Debtors still have not cited a single instance in which any proceedings have ever been commenced by the French authorities, or any sanctions have ever been imposed by them, on account of the taking of a voluntary deposition in France for a lawsuit venued in the United States, let alone such a deposition of a French national at a location outside of France. The reason for this telling failure is that, to our understanding, no such proceeding has ever been commenced since the blocking statute was enacted. And there is abundant U.S. federal court precedent declining to relieve parties of their discovery obligations due to the

blocking statute in circumstances involving discovery requests addressed, unlike here, to parties who objected to them. See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa, 482 U.S. 522, 539-40 (1987) (holding that the Hague Convention did not deprive the District Court of the jurisdiction to order a foreign national party before it to produce evidence located in France); Trueposition, Inc. v. LM Ericsson Telephone Co., Civil Action No. 11-4574, 2012 WL 707012, at *6 n.6 (E.D. Penn. Mar. 6, 2012) (denying defendant's motion for a protective order upon distinguishing the lone instance in which the French blocking statute has been enforced as a situation in which the attorney had made false representations to the witness); In re Air Cargo Shipping Servs. Antitrust Litig., 278 F.R.D. 51, 53-54 (E.D.N.Y. 2010) (permitting discovery where defendant offered little proof that compliance would lead to prosecution because, unlike the one case in which the statute was enforced, the attorney seeking discovery "has not sought to circumvent the blocking statute through deceptive means"); Strauss v. Credit Lyonnais S.A., 249 F.R.D. 429, 450-51 (E.D.N.Y. 2008) (distinguishing the one prosecution under the blocking statute on the ground that the attorney "was not conducting discovery against a party within the confines of the Federal Rules of Civil Procedure"); In re Global Power Equipment Group, 418 B.R. 833, 849-51 (Bankr. Del. 2009) (concluding that that the "chance of prosecution under the French Blocking Statute is minimal"). Mr. Adler's failure to address these authorities is puzzling because the parties discussed the U.S. courts' views of the blocking statute over this past weekend. Further, unlike some of the cases cited above, the case for proceeding here is even more compelling insofar as NNSA is a claimant pursuing affirmative claims in this Court. This point bears particular emphasis – whatever argument may exist to protect from aggressive discovery a French defendant hauled into a foreign court against its will logically does not apply to a French plaintiff who has elected to bring hundreds of millions of dollars of claims here.

Third, while the U.S. Interests have no objection to NNSA pursuing commissions and our firm is prepared to assist NNSA's counsel for that purpose (as we advised Mr. Adler), if they are not obtained by the agreed-upon dates for these depositions, they must proceed as scheduled. The U.S. Interests should not be prejudiced because this issue was raised by the EMEA Debtors in October rather than July. Notably, the EMEA Debtors do not pledge that commissions can be obtained in time for these depositions to proceed as scheduled, but instead assert only that they hope (but also do not ensure) that they can be completed by December 13. Any delay of depositions long ago scheduled for October and November itself would be prejudicial. As the Court is aware (and Sections D.6.a and G.5 of the Deposition Protocol reflect), the de facto cut-off for voluntary fact witnesses is November 27, with the first two weeks of December reserved primarily for representative depositions. The EMEA Debtors' suggestion that their untimely and unfounded concern about the blocking statute should permit them to delay the depositions of all of NNSA's witnesses into the period for representative depositions would yield an unfair result. Even under the EMEA Debtors' best-case scenario, permitting NNSA to cancel their October and November depositions will force the U.S. Debtors to divide their attention and resources between conducting all of the French depositions and representative party depositions during the period set aside for representative depositions. And, perhaps worse, it would mean that we would have to conduct the representative deposition of NNSA without time to evaluate previously obtained fact testimony from NNSA (especially from

the French liquidator himself, about whom the Court heard argument three weeks ago when the EMEA Debtors first argued that he not be deposed until the period for representative depositions), as the EMEA Debtors will have before they depose the U.S. Debtors' representative witness. This second effort to mandate what the Court did not grant the EMEA Debtors two weeks ago undermines the very structure of the schedule itself.

Fourth, to the extent the Court has any concerns about how real the threat of French prosecution is, we note that yesterday's letter from the Oslers firm to the Court states that the Canadian Directors and Officers are producing Mr. Debon voluntarily for his deposition in Paris.[1]

We would also note that until the EMEA Debtors offered to produce Mr. Rogeau, the French liquidator who signed NNSA's claim here, in Paris, and submitted a court order to that effect, they had actually been obligated to produce him in London, New York or Toronto. Section B.7 of the Deposition Protocol states that "[a]ll witnesses who a Discovery Participant has the ability to compel attendance in Toronto or New York [or London] shall be produced for deposition in either Toronto, New York [or London] at the option of the producing Discovery Participant. Discovery Participants shall use reasonable efforts to produce all cooperating witnesses in either Toronto, New York [or London], and each Discovery Participant producing a cooperating witness shall offer to pay that witnesses' reasonable travel expenses to do so."[2] We remain prepared to depose them in any of those three cities, where to our understanding the purported "risk" created by the blocking statute would be even less than proceeding in Paris.

---

[1] We mistakenly identified Mr. Debon as an EMEA witness. In fact, he is a defendant on claims brought by the EMEA Debtors.

[2] As the footnote in the Deposition Protocol and the brackets around London reflect, the parties had disagreed as to whether the EMEA Debtors and U.K. Pension Claimants had an obligation to bring witnesses under their control to the United States or Toronto. Notwithstanding the abundant case law that requires a party who pursues a claim to bring its witnesses to the forum state for deposition, in order to avoid further delay and burden on the Courts, the U.S. and Canadian Interests bended to the EMEA Debtors' and U.K. Pension Claimants' demand that we incur the time and expense of deposing all of their witnesses (including their current employees) in London.

The Honorable Kevin Gross
October 8, 2013
Page 4

      Accordingly, we respectfully request that the Court order the NNSA witnesses to appear on their scheduled dates for deposition and that Mr. Rogeau be ordered to appear for deposition in Delaware on a date to be selected by the U.S. Interests if he continues to refuse by the end of this week to offer mutually acceptable dates in compliance with the Court's September 25 order.

      Respectfully submitted,

*Derek C. Abbott/tkm*

Derek C. Abbott

cc:    All Core Parties (via email)

7630195.1