

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

October 8, 2013

**<u>VIA HAND DELIVERY</u>**

The Honorable Kevin Gross
United States Bankruptcy Court
for the District of Delaware
824 North Market Street, Sixth Floor
Wilmington, Delaware 19801

   Re:  <u>*In re Nortel Networks Inc., et al.*, Case No. 09-10138 (KG)</u>

Dear Judge Gross:

   We write on behalf of the Joint Administrators for the EMEA Debtors to supplement our letter of October 7, 2013 responding to the October 4, 2013 letter from counsel for the U.S. Debtors with respect to the depositions of French witnesses.  Since sending our letter, we have obtained additional relevant information about French procedure that may be of assistance to the Court in considering the issues raised by the correspondence from the U.S. Debtors and other parties.

   In looking for guidance on the timing and procedures for conducting voluntary depositions in France pursuant to Chapter II of the Hague Evidence Convention, we have come across the attached Memorandum of Law and Declaration of Alexander B. Blumrosen that were submitted by the U.S. Debtor's counsel, Cleary Gottlieb Steen & Hamilton LLP, in a proceeding entitled *In re Sanofi-Aventis Securities Litigation*, No. 07-CV-10279 (S.D.N.Y.).  The U.S. Debtors' counsel, representing the Defendant French company and two of its former executives, argued that French parties to a U.S. litigation should not be required to violate the French blocking statute by providing discovery other than in compliance with the voluntary procedures under Chapter II of the Hague Evidence Convention.  (Mem. of Law at 2 ("[Defendants] should not now be ordered to break French law, when accommodating French law, along with U.S. law and Plaintiffs' interests, is so plainly possible.").)

   In *Sanofi-Aventis*, the U.S. Debtors' counsel noted that there were no limitations on the scope of discovery available in France through the voluntary procedures under Chapter II of the Hague Evidence Convention.  (Mem. of Law at 8 n.5; *see also* Blumrosen Decl. ¶¶ 9, 21.)

With regard to the timing required to accomplish the necessary procedures under Chapter II, the U.S. Debtors' counsel noted that:

> The approval of discovery under Chapter II often requires no more than a total of 2-3 weeks (including the time necessary for processing by the French Ministry of Justice) from the date of issue of the Commission by the U.S. jurisdiction.  Indeed, a French defendant seeking to further expedite the relevant application is free to write to the Ministry of Justice in support of the application and to send its local counsel to visit the Ministry in order to advocate for further expedited treatment.  Given the broad scope of discovery available under a Chapter II proceeding with a Commissioner, and the very quick turnaround for obtaining authorizations from the Ministry of Justice, it has now become a simple matter for French parties to comply with the requirements of both French and U.S. law by producing requested discovery under Chapter II of the Hague Convention.

(Mem. of Law at 8-9 (citations omitted); *see also* Blumrosen Decl. ¶ 10 ("Chapter II document productions and depositions may be organized much faster than Chapter I discovery, and, as noted above, generally can take place within 2-3 weeks after the approval of the Commission by the U.S. judge.").)

We note that the attached Declaration was supplied by Alexander B. Blumrosen, an American attorney admitted in both the State of New York and Paris, France.  Mr. Blumrosen has specialized in handling Hague Evidence Convention matters in Paris for over 25 years.  Coincidentally, and not yet having seen Mr. Blumrosen's declaration, we had proposed to the U.S. Debtors' counsel that Mr. Blumrosen should be appointed to act as the Commissioner for the French depositions in the current case.

Respectfully,


/s/ Derek J.T. Adler


Enclosure

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: SANOFI-AVENTIS SECURITIES LITIGATION | 07-CV-10279 (GBD); 08-CV-00021 (GBD) <br><br> **CLASS ACTION** |
| This document relates to: <br><br> ALL ACTIONS | **ECF CASE** |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <br> MOTION FOR A PROTECTIVE ORDER

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York, 10006
(212) 225-2000

Attorneys for Defendants sanofi-aventis, Gérard Le Fur,
and Hanspeter Spek

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT ...................................................................................................................... 5

I.   CONSIDERATIONS OF INTERNATIONAL COMITY FAVOR
     DEFENDANTS IN THIS DISPUTE ........................................................................ 5

II.  THE CASE LAW DOES NOT REQUIRE DENIAL OF SANOFI'S MOTION ..... 11

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

28 U.S.C. § 1781 ............................................................................................................... 1

21 C.F.R. § 314.110 ......................................................................................................... 2

**Cases**

Adidas (Canada) Ltd. v. SS Seatrain Bennington,
Nos. 80 Civ. 1911 (PNL), 82 Civ. 0375 (PNL), 1984 WL 423 (S.D.N.Y. May 30, 1984)    11-12

Bodner v. Paribas,
202 F.R.D. 370 (E.D.N.Y. 2000) ..................................................................................... 13

Compagnie Francaise d'Assurance v. Phillips Petroleum Co.,
105 F.R.D. 16 (S.D.N.Y. 1984) ....................................................................................... 8

First Am. Corp. v. Price Waterhouse LLP,
154 F.3d 16 (2d Cir. 1998)................................................................................. 6-7, 10, 14

In re Air Cargo Shipping Servs. Antitrust Litig.,
No. 06-MD-1775, 2010 WL 1189341 (E.D.N.Y. Mar. 29, 2010)...................................... 7, 13

In re Perrier Bottled Water Litig.,
138 F.R.D. 348 (D. Conn 1991)........................................................................................ 7-8

In re Vivendi Universal, S.A. Sec. Litig.,
No. 02 Civ. 5571 (RJH), 2004 WL 3019766 (S.D.N.Y. Dec. 30, 2004)............................ 11

In re Vivendi Universal, S.A. Sec. Litig.,
No. 02 Civ. 5571 (RJH) (HBP), 2006 WL 3378115 (S.D.N.Y. Nov. 16, 2006)................ 6, 12

Minpeco, S.A. v. ContiCommodity Servs. Inc.,
116 F.R.D. 517 (S.D.N.Y. 1987) ...................................................................................... 6, 9

Société Nationale Industrielle Aérospatiale v. United States District Court,
482 U.S. 522 (1987)........................................................................................................... 5, 8, 12

Strauss v. Credit Lyonnais, S.A.,
249 F.R.D. 429 (E.D.N.Y. 2008)....................................................................................... 9, 12

Strauss v. Credit Lyonnais, S.A.,
242 F.R.D. 199 (E.D.N.Y. 2007)....................................................................................... 12

Valois of Am., Inc. v. Risdon Corp.,
183 F.R.D. 344 (D. Conn. 1997)........................................................................................ 12

Defendants sanofi-aventis ("sanofi"), Gérard Le Fur and Hanspeter Spek (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion for a protective order compelling plaintiffs City of Edinburgh Council of Lothian Pension Fund and New England Carpenters Guaranteed Annuity Funds (together, "Plaintiffs"), to seek discovery from Defendants by employing the procedures of Chapter II of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231, reprinted at 28 U.S.C. § 1781 (the "Hague Convention").

## PRELIMINARY STATEMENT

Defendants, a French company and two of its former executives who worked for the company in France, are faced with a duty to comply with both French and United States law. There are circumstances where the laws of these two countries come into irresolvable conflict with one another – but this is not one of those cases. Defendants could comply with French law without compromising Plaintiffs' interests or United States law.

Consistently and from the very beginning of discovery, Defendants have maintained that relevant documents located in France, which represent only a subset of the huge number of documents in this complicated securities fraud case, should be produced through the procedures of the Hague Convention, an approach Plaintiffs themselves requested with respect to discovery they sought earlier in this case.[1] Defendants ask that production of French documents proceed through the Hague Convention so as to avoid violating the French Blocking Statute.[2] Defendants have consistently and in good faith maintained their position that discovery of

---

[1]    See Plaintiffs' Memorandum in Support of Motion for a Letter of Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on Taking of Evidence Abroad in Civil or Criminal Matters, dated August 17, 2010, Declaration of Matthew C. Vogele in Support of Defendants' Motion for a Protective Order, dated August 12, 2011 ("Vogele Decl."), Ex. A.

[2]    Article 1 bis of French law No.80-538 of July 16, 1980, Declaration of Alexander B. Blumrosen in Support of Defendants' Motion for a Protective Order, dated August 5, 2011 ("Blumrosen Decl."), ¶ 22.

French documents should proceed by way of the Hague Convention. They have repeatedly demonstrated their willingness to assist Plaintiffs with Convention procedures, even at their own cost. They have also explained and adduced evidence that Convention procedures will result in no delay or prejudice to Plaintiffs. Given these circumstances and good faith efforts, they should not now be ordered to break French law, when accommodating French law, along with U.S. law and Plaintiffs' interests, is so plainly possible.

## STATEMENT OF FACTS

This case arises out of the June 13, 2007 decision of an advisory committee to the United States Food and Drug Administration (the "FDA") not to recommend for approval a first-in-class drug for morbid obesity named rimonabant. In April 2005, sanofi submitted a New Drug Application ("NDA") for rimonabant for diabetes and other indications and, in February 2006, the FDA issued an approvable letter for the drug, reflecting the FDA's conclusion that the application was "basically approvable providing certain issues are resolved." 21 C.F.R. § 314.110 (2008). Published studies at the time showed the drug was associated with depression and other central nervous system disorders, but that it was effective and its side-effects were otherwise mild. In June 2007, however, an advisory committee of the FDA determined not to recommend the drug for approval because based on "the [then] currently available data," the advisory committee could not conclude that the drug presented "a favorable risk/benefit profile." Transcript of the United States Food and Drug Administration's Endocrinologic and Metabolic Drugs Advisory Committee Meeting, dated June 13, 2007, Vogele Decl., Ex. B at 335, 383-84. Thereafter, sanofi determined to withdraw the NDA rather than to further pursue the application.

Sanofi's stock price fell on June 13, 2007 upon the news of the advisory committee vote, and these lawsuits predictably followed. On November 13, 2007, the first securities class action lawsuits were filed against sanofi, and on April 29, 2008, Plaintiffs filed a

2

Consolidated Complaint for Violations of Securities Laws (the "Consolidated Complaint").[3] On July 28, 2010, Plaintiffs filed the First Amended Complaint for Violations of Securities Laws (the "Amended Complaint").[4] As subsequently narrowed by the Court, the Amended Complaint, on behalf of a putative class of purchasers of sanofi securities between February 20, 2006 and June 13, 2007 (the "Class Period"), alleges only two misstatements made by sanofi and the two individual defendants: a February 24, 2006 statement (7 days after receipt of the approvable letter) by sanofi's then-Chief Executive Officer, Gérard Le Fur, that "in the approvable letter, no additional trial in obesity has been requested by the agency," Transcript of sanofi's conference call dated February 24, 2006, Vogele Decl., Ex. C at 15, and an October 31, 2006 statement by sanofi's Chief Operating Officer Hanspeter Spek (made shortly after sanofi had made its resubmission to the FDA) that sanofi had received an approvable letter, had answered the FDA's questions and that "the approvable letter did not ask for new additional clinical trials, [and] we have not submitted new data in this respect." Transcript of sanofi's conference call dated October 31, 2006, Vogele Decl., Ex. D at 21. For purposes of the motion to dismiss, the Court held that the first statement could have left a misleading impression that "with respect to rimonabant as an obesity drug, the FDA had made no other requests and/or that the FDA approval process was on track without any major concerns." Memorandum Decision and Order, March 30, 2011, Vogele Decl., Ex. E at 15-16. The Court held that the second statement could have left a misleading impression that "sanofi had not submitted new data on some issue that concerned the FDA." Id. at 22. As it turned out, an FDA scientist subsequently opined that there

---

[3]    On September 25, 2009, the Court dismissed the Consolidated Complaint for failure to state a claim. On July 27, 2010, the Court granted Plaintiffs' request for leave to file an Amended Complaint.

[4]    On September 27, 2010, Defendants filed a Motion to Dismiss the Amended Complaint, and on March 30, 2011, the Court substantially granted that Motion.

was a relationship between rimonabant and a new concept called "suicidality," and the advisory committee thereafter concluded that it needed more information regarding the drug's safety before it could be recommended for approval.

On April 14, 2011, following the Court's decision sustaining a portion of the Amended Complaint, the parties held their initial Rule 26(f) conference. The following day, April 15, 2011, Plaintiffs served their First Request to Defendants for Production of Documents ("Document Requests"). Many of the documents requested in the Document Requests reside in the United States; Defendants are in the process of negotiating the scope of production and the collection of those documents with Plaintiffs. Vogele Decl., ¶ 3. They are not at issue in this motion. Other documents, however, reside only in France. As to these documents, Defendants have consistently and uniformly taken the position that discovery of all documents residing in France should proceed via the Hague Convention. Defendants have offered to assist Plaintiffs in processing any letter of request through the French Ministry of Justice in an effort to ensure that any documents the parties agree that sanofi should produce or any documents this Court orders sanofi to produce are in fact authorized to be produced by the French Ministry without delay and without limitation.

Defendants took that position as of April 15, 2011 (the day the Document Requests were served), on May 18, 2011 in their Responses and Objections to Plaintiffs' First Request for Production of Documents (Vogele Decl., Ex. F at ¶ 15), in contemporaneous correspondence (Letter from Matthew C. Vogele to Trig Smith of May 18, 2011, Vogele Decl., Ex. G), and in repeated meets and confers. Vogele Decl., ¶ 4. Indeed, Defendants even arranged a call with counsel in France, who explained that – based on his 10 years of experience, he would take the Letter of Request to the Ministry himself and that there would be no added delay by

4

proceeding through the Hague Convention, adding that he had been to the Ministry 12-15 times over the past 10 years and had never been refused a request. Vogele Decl., ¶ 5.

Plaintiffs refused to entertain all of those requests for assistance or to permit Defendants to produce documents in a manner that honored French law as well as American law, and this dispute ensued.

## ARGUMENT

## I.  CONSIDERATIONS OF INTERNATIONAL COMITY FAVOR DEFENDANTS IN THIS DISPUTE

The Supreme Court laid down the standards that United States courts must follow in considering requests for discovery against foreign companies subject to foreign laws in Société Nationale Industrielle Aérospatiale v. United States District Court, 482 U.S. 522 (1987). First and foremost, the Court instructed that "American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations." Id. at 546. Thus, the Court held that a court considering a request for documents under the Federal Rules of Civil Procedure should not lightly disregard the laws of a foreign sovereign that might prohibit compliance with such a request. Although foreign blocking statutes of course "do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence," the Aérospatiale Court stressed in the strongest possible language that "[t]he lesson of comity is that neither the discovery order nor the blocking statute can have the same omnipresent effect that it would have in a world of only one sovereign." Id. at 544 n.29. Courts are required to give "prior scrutiny in each case [to] the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." Id. at 544.

Following Aérospatiale, the courts in this Circuit have adopted a four factor test to determine whether a party must comply with the Federal Rules of Civil Procedure at the cost of violating foreign law:  1) the competing interests of the nations whose laws are in conflict; 2) the hardship of compliance on the party from whom discovery is sought; 3) the importance to the litigation of the information and documents requested; and 4) the good faith of the party resisting discovery under the Federal Rules.  See First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16, 22 (2d Cir. 1998); In re Vivendi Universal, S.A. Sec. Litig., No. 02 Civ. 5571 (RJH) (HBP), 2006 WL 3378115, (S.D.N.Y. Nov. 16, 2006) at *2 ; Minpeco, S.A. v. ContiCommodity Servs. Inc., 116 F.R.D. 517, 523 (S.D.N.Y. 1987).

Here, each of those factors either favors Defendants or is, at best, neutral.  First, there can be no question regarding sanofi's good faith.  See Minpeco, S.A. v. ContiCommodity Services, 116 F.R.D. 517, 522 (S.D.N.Y. 1987) ("Courts in [the 2nd Circuit] have considered a resisting party's good faith efforts to comply with discovery at the order stage….").  Sanofi is a French company and it is not disputed that the laws of France prohibit it from communicating the documents or information requested outside of the Hague Convention.  In particular, the French Blocking Statute, Law no. 80-538 of July 16, 1980, provides in unambiguous language:

> Subject to treaties or international agreements and applicable laws and regulations, it is prohibited for any party to request, seek or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith.

Blumrosen Decl., ¶ 22.  Violations of the Blocking Statute are punishable by criminal sanctions, including prison.  Id.  Thus, as a French company, sanofi is strictly prohibited from communicating, "with a view to foreign judicial or administrative proceedings or in connection therewith," "economic, commercial, industrial, financial or technical documents or information."

No exceptions are permitted except pursuant to "treaties or international agreements and applicable laws and regulations." French law therefore prohibits sanofi from communicating the documents or information requested from France.

Defendants' refusal to communicate documents and information covered by the French Blocking Statute thus can hardly be characterized as pretextual or in bad faith. Sanofi is required to follow the law; it will not voluntarily violate French – or any other – law. That is a point that Defendants have made from the outset – and with respect to all documents subject to the statute. There is, and could be, no claim of selective invocation of the Blocking Statute or the Hague Convention. Nor could there be a claim that Defendants have asserted the Blocking Statute only in response to the Document Requests. Defendants made clear their intent to comply with French law, absent court order, from the very first conference between the parties in this case. See In re Air Cargo Shipping Servs. Antitrust Litig., No. 06-MD-1775, 2010 WL 1189341, (E.D.N.Y. Mar. 29, 2010) at *2 (finding "scant evidence" that defendants were lacking in good faith where defendants had "consistently" asserted the bar of the French blocking statute in support of their contention that discovery proceed through the Hague Convention, and where it was "not a case where defendant has rested on the statute to block discovery in one instance, while ignoring the statute in another when it served the defendant's interests to do so").

Second, the "competing interests of the nations whose laws are in conflict" also favors Defendants here. First Am. Corp. v. Price Waterhouse LLP, 154 F.3d at 22. The Blocking Statute reflects the strong French sovereign interest that French officials – and not the Federal Rules of Civil Procedure – should address the communication of economic, commercial, industrial, financial or technical information from within its borders. See In re Perrier Bottled Water Litig., 138 F.R.D. 348, 355 (D. Conn 1991) ("Although not all civil-law countries have

7

expressed their disfavor of private litigants' use of the Federal Rules' procedures within its

borders, France has been among the most emphatic."). That judgment is entitled to the respect

due to legislative acts of foreign sovereigns. See Aérospatiale, 482 U.S. at 546 ("American

courts should therefore take care to demonstrate due respect . . . for any sovereign interest

expressed by a foreign state.")

Moreover, while the United States has "a substantial interest in fully and fairly

adjudicating matters before its courts," Compagnie Francaise d'Assurance v. Phillips Petroleum

Co., 105 F.R.D. 16, 30 (S.D.N.Y. 1984), there are no "competing" interests here. Perrier, 138

F.R.D. 348, 355 ("there is no reason, on the record before the Court, to believe that Convention

procedures will be ineffective in producing the discovery to which plaintiffs are entitled"). The

differing interests of the United States and France are easily reconciled. Defendants have agreed

to facilitate the production of any documents located in France that may be ordered by this Court

or agreed to by the parties pursuant to Chapter II of the Hague Convention. Vogele Decl., ¶ 6.

The approval of discovery under Chapter II often requires no more than a total of 2-3 weeks

(including the time necessary for processing by the French Ministry of Justice) from the date of

issue of the Commission by the U.S. jurisdiction. Blumrosen Decl., ¶ 9. Indeed, a French

defendant seeking to further expedite the relevant application is free to write to the Ministry of

Justice in support of the application and to send its local counsel to visit the Ministry in order to

advocate for further expedited treatment. Blumrosen Decl., ¶ 9.[5]  Given the broad scope of

---

[5]    As affirmed by a 2003 ruling by the Paris Court of Appeals, the discovery available in France under the
Hague Convention is very broad. Blumrosen Decl., ¶ 12. Defendants' expert, in over 20 matters over the last 25
years, has never been involved in any Hague discovery in France in which the French Ministry of Justice rejected
discovery from a U.S. judge, or refused to transmit the discovery to the proper authority for execution of the request.
Blumrosen Decl., ¶ 12. Nor has the expert ever been involved in a discovery matter in which the Ministry of Justice
attempted to limit the scope in any way of the requested discovery. Id. Challenges to the scope of discovery
requests in duly issued Letters of Request approved by US judges have become increasingly rare and largely
unsuccessful in France. Blumrosen Decl., ¶ 18. Defendants' expert has encountered no obstacle to making multiple

discovery available under a Chapter II proceeding with a Commissioner, and the very quick

turnaround for obtaining authorizations from the Ministry of Justice, it has now become a simple

matter for French parties to comply with the requirements of both French and U.S. law by

producing requested discovery under Chapter II of the Hague Convention. Blumrosen Decl., ¶

24.

Third, the relative hardship to the parties also favors Defendants. A person who

obtains information for a U.S. litigation from France without resort to the Hague Convention

faces criminal prosecution in France. Christopher X, Case No. 07-83228 (French Supreme

Court, Dec. 12, 2007) (Blumrosen Decl., ¶ 23); see Strauss v. Credit Lyonnais, S.A., 249 F.R.D.

429, 454 (E.D.N.Y. 2008) ("The prospect that the foreign litigant would face criminal penalties

rather than civil liabilities weighs in favor of the objecting party"); Minpeco, S.A. v.

ContiCommodity Svcs., Inc., 116 F.R.D. 517, 526 ("In examining the hardship on the party from

whom compliance is sought, courts . . . look at the likelihood that enforcement of foreign law

will be successful."). Thus, apart from the plain interest of a French corporation in complying

with French law, the prejudice to it of disregarding such law and the sovereign interest of France

in having its law respected, Defendants would be placed in jeopardy by production outside the

Hague Convention.

By contrast, Plaintiffs would suffer no hardship if the requirements of the Hague

Convention and Blocking Statute were respected by this Court. This case concerns the failure of

an application by the U.S. subsidiary of a French corporation to a U.S. regulatory agency; a

substantial portion of the relevant documents reside in the United States. And Defendants are in

the process of producing millions of pages of relevant discovery located in the United States

---

discovery requests in several different letters of request addressed to the same French party or witness. Blumrosen Decl., ¶ 19.

(that are not subject to dispute). The parties still have not resolved their disputes over the Document Requests and, even after they do, it will take significant time for the relevant electronic documents to be restored, for email searches to be conducted, and for documents to be reviewed. In short, the documents would not be immediately ready for production even after the parties agree on the scope of document production. There thus is no conceivable hardship to Plaintiffs in permitting Defendants to present Plaintiffs' application to the French Ministry of Justice.[6] See Aérospatiale, 482 U.S. at 546 ("American courts should … take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations . . . .").

Fourth, "the importance to the litigation of the information and documents requested" is at best a neutral factor. First Am. Corp., 154 F.3d at 22. Although this case concerns statements made by French Defendants, it is significant that the subject of their statements was the conduct of a U.S. corporation with respect to an application in the United States to a U.S. regulatory agency. Plaintiffs themselves have admitted that a "significant portion" of responsive documents in the litigation are located in the United States. Letter from Laurie Largent to Matthew C. Vogele, dated June 13, 201, Vogele Decl., Ex. H at 3. Thus, while sanofi is in the process of producing documents from France through the Hague Convention, Plaintiffs will have extensive documents from the United States to review. Given that circumstance, the fact that *some* of the many relevant documents in this litigation are located in France should not tip the balance of factors in Plaintiffs' favor.

---

[6]  Even if the French Ministry of Justice somehow denied the Letter of Request, Plaintiffs could reapply to this Court for an order compelling production pursuant to the Federal Rules of Civil Procedure.

## II.    THE CASE LAW DOES NOT REQUIRE DENIAL OF SANOFI'S MOTION

At the pre-motion conference, the Court inquired whether there had been "any cases in the last five years in the Southern District where somebody has upheld the French blocking statute." July 28, 2011 Hr'g Transcript at 2:25-3:2.  Defendants have found none. However, In re Vivendi Universal, S.A. Sec. Litig., No. 02 Civ. 5571 (RJH), 2004 WL 3019766 (S.D.N.Y. Dec. 30, 2004), decided on December 30, 2004, is on point.  In that case, the court held that defendant's employees should be deposed in France pursuant to Chapter II of the Hague Convention.  Id. at *1.  Finding that plaintiffs had failed to justify a departure from the presumption that a deposition be taken at the witness's place of residence, the court confirmed that "courts are free to determine based on the facts of a particular case that it is 'more appropriate to take discovery abroad under the Hague Convention'."  Id.  (internal citation omitted).

The current dispute is easily distinguishable from those in which courts have found that foreign discovery should proceed under the Federal Rules of Civil Procedure. Virtually all of the cases cited by Plaintiffs in their letters have been characterized by one or more of the following facts, none of which is present in the instant dispute: the court found that the substantial U.S. interest in enforcing a particular law was shared by, rather than opposed by, the foreign government (negating any sovereignty concerns), the court found that the party resisting disclosure lacked good faith (in part by selectively invoking concerns regarding foreign law), the information had already been disclosed outside of Hague procedures and thus the foreign sovereign interest was illusory, or proceeding through the Hague Convention would have entailed delay.[7]

---

[7]    Plaintiffs' cite to Adidas (Canada) Ltd. v. SS Seatrain Bennington, Nos. 80 Civ. 1911 (PNL), 82 Civ. 0375 (PNL), 1984 WL 423 (S.D.N.Y. May 30, 1984) is not instructive, as that case was decided before the Supreme

In both Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199 (E.D.N.Y. 2007) and Strauss v. Credit Lyonnais, S.A., 249 F.R.D. 429 (E.D.N.Y. 2008) ("Strauss II"), the court, noting that the comity factor is of "the greatest importance in determining whether to defer to the foreign jurisdiction," held that this factor weighed strongly in favor of plaintiffs given that "[t]he mutual interests of the United States and France in combating terrorism outweigh the French interest, if any, regarding the disputed discovery." Strauss at 213; Strauss II at 443 (internal citations omitted). The court reasoned that "France's [national] interest in having [defendant] respond to plaintiffs' discovery requests is evident from France's execution of international treaties facilitating international cooperation to combat terrorism." Strauss at 214, Strauss II at 443. Concerning the U.S. interest, the court found that the "'substantial interest in fully and fairly adjudicating matters before [U.S.] courts,'" when "combined with the United States' goals of combating terrorism," was "elevated 'to nearly its highest point,' and diminishes any competing interest of the foreign state." Strauss at 214; Strauss II at 443. Thus, in both instances, the court relied almost entirely on the fact that the case involved the heated issue of terrorism, a problem that both the U.S. and France had placed at the highest levels of importance on their domestic and international agendas, and that the court deemed was as important to France as it was to the United States. The Strauss courts also relied on the fact that the defendant

---

Court's decision in Aérospatiale and does not apply the factor test at all. In re Vivendi Universal, S.A. Sec. Litig., 2006 WL 3378115 was decided before the recent prosecution in the Christopher X matter, and as such, the court's reasoning that "the French Blocking Statute does not subject defendants to a realistic risk of prosecution" is inaccurate. Id. at *3. In Valois of Am., Inc. v. Risdon Corp., 183 F.R.D. 344, 349 (D. Conn. 1997), the court held that the "critical examination" in its comity analysis was "the particular facts of the case, particularly with regard to the nature of the discovery requested," a factor that the Supreme Court and other courts have declined to treat as dispositive. Id. (internal citations omitted). The Valois case is further distinguishable because the defendant in that case had asserted a counterclaim against plaintiff, leaving the court to reason that it would not produce an "equitable result" if plaintiff's discovery were governed by Hague procedures while defendant could employ the Federal Rules in seeking discovery from plaintiff. Id.

only attempted to assist plaintiffs in obtaining discovery after having been ordered to do so. 242 F.R.D. at 226; 249 F.R.D. at 456.

Likewise, in In re Air Cargo Shipping Svcs. Antitrust Litig., the French sovereign interest in following Convention procedures had already been eroded because the information sought had already been disclosed with French consent to the United States Department of Justice in a parallel criminal antitrust investigation. 2010 WL 1189341 at *4. The court reasoned that "implicitly, France has already made the judgment that its interest in combating anticompetitive behavior outweighs its desire to limit access to information about its citizens." Id. See also Bodner v. Paribas, 202 F.R.D. 370, 376 (E.D.N.Y. 2000) (denying request that discovery proceed through the Hague Convention where the documents were already publicly available, so that even if the Blocking Statute applied, it "would not prevent the plaintiffs from receiving information sought on this motion").[8]

Finally, other Courts have cited concerns regarding delay. See Bodner, 202 F.R.D. at 376 (denying request to proceed through Hague Convention where there would have been delay and the case involved potential class members who were "aged and in some cases infirm," creating a special "need for information and time pressure on [the] litigation"); In re Air Cargo Shipping Svcs. Antitrust Litig., 2010 WL 1189341 at *2 (declining to enforce Hague Convention procedures where court found that "making the request will undeniably result in delays of unknown, and perhaps considerable, duration").

---

[8]     Bodner is also distinguishable from the present case in that it implicated the United States's and France's shared interest in "assuring restitution to Holocaust victims and their families," which, given the French government's demonstrated dedication to the issue, convinced the court that this interest superseded any interest of the French government in its Blocking Statute, as "the goals of the plaintiffs . . . [were] consistent with the objectives of the French Government." Id. at 375-77.

By contrast here, Plaintiffs' opposition is based on no more than naked distaste for the Hague Convention or speculation not grounded in fact. The case does not involve terrorism as to which the two sovereigns have expressed a common interest in sharing documents outside the Hague Convention, but alleged securities fraud – as to which the French government has squarely taken the position that discovery should proceed through the Hague Convention. From the beginning, Defendants have taken the position that they will assist the Plaintiffs in obtaining every single category of document the parties agree between themselves should be produced or – in the absence of agreement – the Court orders. The documents requested have not previously been produced in the United States. Indeed, Defendants have already agreed to produce from the United States – without resort to the Hague Convention – all documents that are in the United States, including all documents that were sent to the FDA. Notably, Defendants have also entered into a stipulation with Plaintiffs consenting to release by the FDA of many of the relevant documents – i.e., all correspondence, email, documents and information exchanged by sanofi and the FDA regarding rimonabant as a treatment for obesity and smoking cessation, pursuant to Plaintiffs' subpoena.[9] There is no real concern regarding delay – the period of time necessary to obtain the necessary authority from the French Ministry is far shorter than the standard period for reviewing emails and getting them ready for production. And, finally, unlike in First American,[10] Defendants here are confronted with a foreign statute that absolutely prohibits the disclosure of the documents at issue except pursuant to a request under the Hague Convention.

_____

[9]    Stipulated Release Regarding Documents in the U.S. Food and Drug Administration's Possession, Custody or Control, May 20, 2011, Vogele Decl., Ex. I.

[10]    In First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16, 23 (2nd Cir. 1998), the court determined that there was "no collision between American discovery rules and the British confidentiality laws," as the lower court had determined that the "confidentiality obligations imposed by [the British law] were not absolute." Id. at 22-23.

Indeed, Plaintiffs themselves have conceded that Convention procedures are appropriate and would not result in significant delay. In June 2011, shortly before requesting the pre-motion conference on this motion, Plaintiffs agreed to production by Defendants pursuant to the Hague Convention – provided that Defendants submit Plaintiffs' original Document Requests in their entirety to the French Ministry of Justice for approval under the Hague Convention. Vogele Decl., ¶ 7. Defendants could not agree to that proposal. Defendants could not agree to present to one tribunal as reasonable a document request that they intended to present to another tribunal (this Court) as unreasonable unless modified. But the fact that Plaintiffs proposed that approach is telling and fatal. It demonstrates that Plaintiffs have no objection in principle at all to production pursuant to the Hague Convention. Plaintiffs correctly sense concern on the part of a French defendant with compliance with French law and are attempting to exploit that concern for their own litigation advantage.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for a Protective Order.

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
      Lewis J. Liman, Esq.

One Liberty Plaza
New York, New York, 10006
T: (212) 225-2000
F: (212) 225-3999

Attorneys for Defendants sanofi-aventis, Gérard Le Fur and
Hanspeter Spek

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: SANOFI-AVENTIS SECURITIES LITIGATION | 07-CV-10279 (GBD); 08-CV-00021 (GBD) |
| | CLASS ACTION |
| This document relates to: | **ECF CASE** |
| ALL ACTIONS | |

## DECLARATION OF ALEXANDER B. BLUMROSEN IN SUPPORT
## OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

Pursuant to 28 U.S.C. § 1746, Alexander B. Blumrosen declares:

1.      I am an American attorney admitted to practice in the State of New York and

in Paris, France.  I am a partner with the Paris law firm of Bernard-Hertz-Béjot, 8 rue Murillo,

75008 Paris, France.  I specialize in commercial litigation, and have extensive experience in

international discovery issues under the Hague Convention on the Taking of Evidence Abroad

in Civil or Commercial Matters of 1970[1] (hereafter the "Hague Evidence Convention").

2.      In particular, I have acted as counsel or as an expert in connection with Hague

Evidence Convention discovery in over 20 matters over the last 25 years, starting in the early

1990's as counsel to the U.S. Securities and Exchange Commission in connection with

international insider trading investigations involving French parties.  A list of such

representations is included in my Curriculum Vitae, attached as Exhibit 1 hereto.  Other

---

[1] http://www.hcch.net/index_en.php?act=conventions.text&cid=82

2

significant representations include my work as counsel for the California Department of
Insurance in the *Executive Life* case (*Garamendi v. Altus Finance, et al.*, Central Dist. Cal.,
case n° 99-2829 AHM (CWx)) from 1999 to 2005, during which I assisted in obtaining
extensive documentary and testimonial discovery in France under the Hague Evidence
Convention from French parties and non-parties for use in the United States court
proceedings. In the *Executive Life* matter, I successfully litigated for the California Insurance
Commissioner a motion before the Paris Court of Appeals regarding the scope of available
discovery under the Hague Evidence Convention (Paris Court of Appeals judgment of
September 18, 2003), which, as discussed further below, offers the most definitive statement
from the French courts on this issue.

3.     I submit this declaration in support of Defendant sanofi-aventis' Motion for a
Protective Order. I have been engaged by Cleary Gottlieb Steen & Hamilton LLP in their
capacity as counsel to defendants sanofi-aventis, Gérard Le Fur and Hanspeter Spek
(collectively, "Defendants") in this action. In particular, I have been asked to describe the
process provided for under the Hague Evidence Convention for the production of
documentary evidence located in France for use in litigation in the United States, and to
advise regarding what I believe, based upon my own professional experience, would
constitute reasonable expectations as to the timing for the processing of requests for
production under the Hague Evidence Convention by the relevant French authorities, as well
as any issues that might be expected to arise concerning the scope of permissible discovery.

## A.     Hague Evidence Convention Discovery In France

4.     American-style discovery in civil matters of the type available under Rule 26

of the Federal Rules of Civil Procedure is unknown in France or in most civil law jurisdictions. There is no obligation on a party to produce to the other parties in a pending litigation all documents or information that might be relevant to the parties' dispute, and most civil disputes are decided with no live witness testimony whatsoever. Instead, it is possible to request that the judge issue a limited order for the production of a specific and identifiable document, such as a particular memo or invoice, provided it is sufficiently identified (by type, date, addressee, etc), as follows:

> *If, during the proceeding, a party wishes to rely on a notarial deed or a deed under private signature to which he was not a party or a document held by a third party, he may request the judge, to whom the matter is referred to, to order the delivery of a certified copy or the lodging in court of the deed or the document.* (French Code of Civil Procedure, Article 138).

5. In order to accommodate discovery requests arising in international litigation, including from common law jurisdictions, France ratified the Hague Evidence Convention in 1974. Subject to certain reservations discussed below, it is possible to obtain broad discovery of documents and witnesses in France under the Hague Evidence Convention. In particular, the French legislature revised the Civil Procedure Code to require a French judge to follow U.S.-style deposition procedures when so requested by the U.S. court (article 739). Depositions under these provisions may allow for the preliminary exchange of documents, the cross-examination of the witness by parties' counsel, and the videotaping or stenographic transcription of the deposition. As a result, even though U.S.-style discovery is unknown in French civil procedure, the Hague Evidence Convention provides a means for U.S. litigants to obtain discovery in France under conditions that are substantially similar, for all intents and purposes, to discovery in the United States, both with respect to the timing of the discovery and the scope of available discovery.

**B.**    **Timing of Hague Evidence Convention Discovery**

6.     The Hague Evidence Convention provides for two very different procedures for the discovery of documents. Chapter I of the Convention (articles 1-14) requires the active intervention of a French judge who will oversee the discovery process, and is the only procedure that allows a witness to be sanctioned with a fine under French law for failing to appear, produce documents, or otherwise comply with discovery requests. Chapter II of the Convention (articles 15-22) allows for a different procedure that is founded on the voluntary compliance by the witness or producing party with the discovery requests. Chapter II discovery is carried out by the parties under the supervision of a Commissioner or Consular Officer appointed by the U.S. judge.

7.     While I understand that the Defendants have agreed to carry out any production of documents located in France that may be ordered by this Court or agreed to by the parties in relation to Plaintiffs' First Request to Defendants for Production of Documents pursuant to Chapter II of the Hague Evidence Convention, I also address Chapter I discovery below by way of background.

8.     The timing for discovery in France under the Hague Evidence Convention depends principally on whether the discovery is sought under Chapter I or II. Chapter I of the Convention takes significantly longer than Chapter II because the discovery takes place at the courthouse in the presence of a judge; any documents sought are produced to the French judge during a hearing, and depositions are taken in a courtroom with the French judge present at all times. In my experience, Chapter I discovery typically entails the following timeline: (a) the Letter of Request issued by the U.S. judge is submitted for execution and processing to the French Central Authority (Ministry of Justice), which can take up to 2-3 weeks, and (b) the Ministry of Justice then forwards the Letter of Request to the appropriate French court for

execution, at which point the French court must find both an available judge and a courtroom for the taking of testimony and/or for the production of documentary evidence. Where the French court has already been requested to supervise the taking of evidence under the Convention in other actions, the newest Letter of Request will generally be processed only after other matters submitted before it. As a result, it is not unusual for the court to schedule sessions for the taking of documentary and/or testimonial evidence up to 2-3 months from the date of receipt of the Letter of Request from the Ministry of Justice. This timeframe can be further extended when requests are referred to the French courts during the summer months, as French courts typically do not schedule Hague Convention discovery between mid-July and late August.

9.     Discovery under Chapter II of the Convention tends to be significantly faster than discovery under Chapter I, often (assuming active prosecution by the party seeking discovery) requiring no more than a total of 2-3 weeks between the date of issue of the Commission by the U.S. jurisdiction and the taking of evidence (this time period includes time necessary for processing by the French Ministry of Justice). Again, the primary factor that accounts for this difference in timing is the fact that Chapter II discovery does not require judicial intervention by the French court as part of the process. In particular, under the Chapter II procedure, the U.S. issuing jurisdiction first orders a Commission naming a Commissioner for purposes of the taking of evidence under the Hague Evidence Convention. The Letter of Request may then be directly submitted by the party seeking discovery to the French Ministry of Justice for authorization. Authorization by the Ministry of Justice typically then takes one to two weeks. A French defendant seeking to further expedite the relevant application would be free to write to the Ministry of Justice in support of the application or to have its local counsel meet with Ministry officials in order to advocate for further expedited treatment. Once authorized, the production of documents or taking of deposition testimony in a location of the parties' choosing, such as a law firm conference

6

room, may take place immediately or otherwise as agreed by the parties, much like in the
United States, and without any involvement by a French court or judge.

10.     For this reason, Chapter II document productions and depositions may be
organized much faster than Chapter I discovery, and, as noted above, generally can take place
within 2-3 weeks after the approval of the Commission by the U.S. judge. In urgent matters, I
have arranged for authorized Chapter II discovery to take place less than one week after the
signature by the U.S. judge of the Hague Convention discovery request.

### B.      The Scope of Available Discovery Under the Hague Evidence Convention

11.     As a preliminary matter, my experience has been that the French Central
Authority, the Ministry of Justice, exercises only a *de minimis* scrutiny of incoming Letters of
Request from the U.S. under the Hague Evidence Convention, limited to ensuring the formal
validity of such requests (*i.e.*, that the request has been signed by a U.S. judge). The Ministry
does not review incoming Letters of Request regarding the scope of discovery sought. In
Chapter I discovery, the Letter of Request is forwarded to the prosecutor in the jurisdiction
where the witness resides for submission to the Court for execution, whereupon a judge will
be appointed to oversee and coordinate the execution of the discovery. In Chapter II
discovery, the Ministry will specifically authorize the Commissioner or Consular Official
appointed by the U.S. judge to perform and oversee the discovery.

12.     I understand that the Defendants have represented that they would not oppose
any discovery agreed to by mutual consent of the parties or otherwise ordered by this Court
regarding Plaintiffs' First Request to Defendants for Production of Documents pursuant to
Chapter II of the Hague Evidence Convention. Accordingly, I do not address procedures that
are available before the French courts where an objection is raised by a party resisting
production. Over 20 representations and 25 years, I note that I have never been involved in

any Hague discovery in France in which the French Ministry of Justice rejected discovery

from a U.S. judge, or refused to transmit the discovery to the proper authority for execution of

the request, for reasons relating to the scope of the request. Neither have I ever been involved

in a discovery matter in which the Ministry of Justice attempted to limit the scope in any way

of the requested discovery. To my knowledge, the French Ministry of Justice has never

narrowed a request submitted by a U.S. judge. The absence of any such narrowing is

unsurprising. Since a 2003 ruling by the influential Paris Court of Appeals, the discovery

available in France under the Hague Evidence Convention is very broad.

13.     The Hague Evidence Convention provides an optional reservation for signatory

states that wish to limit the availability of certain types of discovery that many countries with

a civil law tradition consider intrusive, burdensome, or simply inappropriate. Signatories are

able to make a declaration under Article 23 of the Hague Evidence Convention which

provides that,

> "A Contracting State may at the time of signature, ratification or accession,
> declare that it will not execute Letters of Request issued for the purpose of
> obtaining pre-trial discovery of documents as known in Common Law
> countries."

14.     Though France adopted the Article 23 reservation at the time of its accession to

the Convention, France amended in 1987 its Article 23 reservation in order to allow for

certain pre-trial discovery. The French amendment provided as follows:

> *"The declaration made by the French Republic in accordance with Article
> 23 relating to Letters of Request issued for the purpose of obtaining pre-
> trial discovery of documents does not apply when the requested documents
> are enumerated limitatively in the Letter of Request and have a direct and
> precise link with the object of the procedure."[2]*

---

[2]     http://www.hcch.net/index_en.php?act=status.comment&csid=501&disp=resdn

8

15.     French courts have interpreted the French reservation to Article 23 as allowing very broad document and witness discovery that is substantially equivalent to the type of discovery available in the US. The Paris Court of Appeal ruled on September 18, 2003, in the *Executive Life* matter (in which I acted for the California Commissioner of Insurance), that the permissible scope of discovery under this declaration is, in fact, extremely broad and allows litigants not only to make precise requests for particular documents, but also allows much broader questions for general categories of documents over a period of several years.

16.     In that matter, the document requests propounded to French parties by the California Commissioner of Insurance, by Letter of Request, were very broad in scope, seeking "all documents" relating to certain banking and financial transactions over a period of several years. As is common in U.S. discovery, the requests overlapped one another, canvassing the possible universe of potential discoverable documents from a variety of viewpoints and categories. In all, there were more than thirty separate document requests, most beginning with the phrase "All documents…".

17.     The French parties objected, asserting that the discovery sought exceeded the scope of permissible discovery under the French Article 23 reservation, because the document requests were not *"enumerated limitatively in the Letter of Request and have a direct and precise link with the object of the procedure"*.   The Paris Court of Appeals did not agree, holding that the sweeping document requests of the California Insurance Commissioner were perfectly within the scope of the French Hague Convention reservation.

18.     Since the 2003 Court of Appeals opinion, challenges to the scope of discovery requests in duly issued Letters of Request approved by US judges have become increasingly rare and, in my experience, largely unsuccessful.

19.     My experience has also been that there is no obstacle to making multiple discovery requests in several different letters of request addressed to the same French party or witness.  In one matter currently pending in which I represent a party, the U.S. plaintiff made one set of discovery requests seeking Chapter I discovery from the CEO of the French defendant located in Paris.  At the same time, the U.S. plaintiff sought "custodian of record" (FRCP 30(b)(6)) discovery from the same French defendant, and two weeks later added another subject for the production of documents and witness examination for the same witness in a new and separate Letter of Request.  The Ministry of Justice had no difficulty in transmitting all three Letters of Request on to the Paris judge for execution.

20.     It has been my experience that most challenges to the scope of incoming discovery are made in Chapter I proceedings before the French judge.  Chapter I discovery vests the French judge with the authority to impose sanctions on a non-compliant witness, and so the courts will accept arguments from the parties regarding the validity or the excessive scope of discovery requests, even though relief from allegedly overbroad requests has been rarely granted since the Paris Court of Appeals decision of 2003.

21.     Conversely, under Chapter II discovery where there is no threat of court-imposed sanctions and where compliance by the French witness is on a voluntary basis (as I understand would be the case here), the issue of excessive scope is never raised in my experience.  In practice, the parties' agreement on the scope of discovery will be enshrined in the Commission signed by the U.S. judge, and thereafter in practice the parties will simply execute the discovery that has been agreed.  As a result, the Commissioner in practice is not in my experience ever called upon to rule on the proper scope of discovery requests.  I have never seen a French witness in a Chapter II document production or deposition seek to limit, by the Commissioner or by a Court, the scope of discovery by application of French law or the Article 23 reservation of France to the Hague Evidence Convention.  In any event, if a Commissioner were ever called upon to rule on the proper scope of discovery, he/she would

10

necessarily be guided by the very broad and liberal discovery available under the September 18, 2003, Paris Court of Appeals ruling discussed above.

### C. Criminal Sanctions In France For Violating The Blocking Statute

22.     French statute N° 80-538 of July 16, 1980 (also known as the "Blocking Statute"), provides for criminal sanctions, including prison, for participating in foreign discovery that has not been authorized by the Ministry of Justice under the Hague Evidence Convention, as follows:

> "Subject to treaties or international agreements and applicable laws and regulations, it is prohibited for any party to request, seek or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith." (cited in *Societe Nationale Industrielle Aerospatiale v. District Court*, 482 U. S. 522 at 526 (fn 6) (1987).

23.     In 2007 the French Supreme Court confirmed the imposition of a criminal fine of 10,000 Euros on an attorney for violating this law (case of "Christopher X.", December 12, 2007, case n° 07-83228) (the case arose in the context of the *Executive Life* litigation referred to above, and I advised the defendant on certain aspects of the criminal investigation). This conviction was the first and so far the only criminal conviction under the Blocking Statute.

24.     Given the broad scope of discovery available under the Convention, especially under a Chapter II proceeding with a Commissioner, and the very quick turnaround for obtaining authorizations from the Ministry of Justice, it is now a simple matter for French parties to comply with the requirements of both French and U.S. law, by producing the requested discovery under Chapter II of the Hague Evidence Convention. As noted above, where French parties seek to further expedite what is already a quick process under Chapter

II, it is possible in my experience for the parties to contact the Ministry of Justice and request particularly expedited treatment.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of August, 2011.

Alexander B. Blumrosen

12

**EXHIBIT 1**

**Curriculum Vitae**

**Alexander Bernet Blumrosen**
**Avocat au Barreau de Paris**
**Bernard-Hertz-Béjot**
**8, rue Murillo**
**75008 Paris, France**
**www.bhbfrance.com**

**Educational Background**

- Dartmouth College, A.B. 1982, cum laude;
- New York University, Institute of French Studies, M.A. 1983;
- Georgetown University Law Center, J.D. 1986;
- University of Paris I - Panthéon-Sorbonne, *Diplôme d'Etudes Approfondies* (D.E.A.) in
    International Economic Law, *mention bien* (with honors), 1991.

**Professional Experience**

Mr. Blumrosen is admitted to the Bars of both Paris and New York. After beginning his career in
New York, where he practiced with Shearman & Sterling LLP, and later in Paris, where he practiced
with Paul, Weiss, Rifkind, Wharton & Garrison LLP, Mr. Blumrosen joined the Bernard-Hertz-Béjot
law firm in 1991 and was elected to partnership in 1994. He specializes in the following areas:

(1) the arbitration and litigation of international business disputes, acting as counsel to parties in court
litigation in France and the United States, including extensive discovery proceedings under the Hague
Evidence Convention, or in arbitration matters under ICC, UNCITRAL, AAA and other institutional
or ad hoc rules. Mr. Blumrosen also acts as an arbitrator and appears on the appointment list of
numerous international commercial arbitration centers.

(2) Information technology law, including e-commerce, data protection under EU and US laws,
software licensing, and encryption technology import/export licensing under the Wassenaar
arrangement.

**Hague Evidence Convention Experience**

Mr. Blumrosen was a delegate to the Hague Conference Special Commission in 2008 that reviewed
the operation of the Hague Evidence Convention, and has acted as party counsel, court-appointed
commissioner, or as an expert in a large variety of Hague discovery matters ordered by US courts in
France, including (but not limited to) the following:

13

- *In re Perrier Bottled Water Litigation*, 138 F.R.D. 348 (D. Conn. 1991) (firm acted as commissioner)
- *Abbott Laboratories v. Impax Laboratories*, Inc., 2004 WL 1622223 (D. Del. 2004) (counsel)
- *Abbott Laboratories v. Teva Pharmaceuticals* USA, Inc., 2004 WL 1622427 (D. Del.) (counsel)
- *In re Vitamins Antitrust Litigation*, 120 F. Supp.2d 45 (D. D.C. 2000) (expert)
- *California Commissioner of Insurance (Executive Life Insurance Company) v. Altus Finance, et al.*, No. 99-02829 AHM (C.Dist. Cal.) (counsel)
- *AIG Retirement Services v. Altus Finance, et al.*, No. CV 05-1035-JFW (C. Dist. Cal.) (party counsel)
- *Ortho-McNeil Pharmaceuticals v. Barr Laboratories*, No. 99-CV-00235 (GEB) (Dist. NJ) (party counsel)
- *Abbott Laboratories v. Par Pharmaceuticals*, N°. 03-120 (JAP) (Dist. NJ) (counsel)
- *Pierre Chapgier, et al. v. Taitbout Prévoyance*, No. BC 173700 (Sup. Ct. of California, LA County) (counsel)
- *Sports Management Plus, et al. v. Herbert Rudoy*, No. CV2003-010486 (Arizona) (counsel)
- *Scanlan International v. Delacroix-Chevalier* (Dist. Minn.) (appointed Commissioner)
- *Unimed-Besins v. Paddock Laboratories*, N° 03-CV-2503-TWT (Dist. Ga.) (counsel)
- *In re Vivendi Universal*, S.A. Secs. Litig, No. 02 Civ. 5571(RJH) (HBP), 2006 WL 3378115 (S.D.N.Y. Nov. 16, 2006)
- *Thales Avionics v. Matsushita Avionics*, No. SACV 041-454-JVS (C.D. Cal.) (Commissioner)
- *Resonant Medical v. Varian Medical*, no. 337-TA-555 (U.S. Int'l Trade Comm'n) (counsel)
- *Reliant Pharmaceuticals v. Abbott Laboratories, et al.* (Dist. Del.) (counsel)

**Bar Admissions**

- New York State, 1st dep't (1987);
- Southern and Eastern Districts of the Federal District Court (1987), the Federal Court of International Trade, and the Federal Circuit Court of Appeals (1991);
- Paris, France (previously registered as *Conseil Juridique*; Member of the Paris Bar since January 1, 1992).

**Publications**

*The Globalization of American Class Actions: International Enforcement of Class Action Arbitral Awards, published in "Multiple Party Actions in International Arbitration" (Oxford University Press, 2009).*

*Metaleurop and the extension of French bankruptcy proceedings to controlling parent companies,* International Law News, Fall 2005

*The Enforcement of Arbitration Awards under the New York Convention* (International Chamber of Commerce PIDA Seminar, June 2004).

14

*Privacy on the Internet: «Safe Harbor» or calm before the storm,* Practising Law Institute, 21st annual Institute on Computer Law, February 2001.

*Personal Jurisdiction in the United States and the Internet,* Law and Internet conference, *Union des Avocats Européens,* April 1997.

*Recent Developments under 28.U.S.C.§ 1782,* American Bar Association International Practitioners workshop series, summer 1995.

*Arbitration in France,* International Financial Law Review, May 1993 (Co-author).

*What legal hurdles persist in SEC/COB cooperation?* International Financial Law Review, March 1993 (Co-author).

## Associations/Board Memberships

- Council on Foreign Relations (Life Member)
- American Bar Association, Section of International Law (International Litigation Committee Co-Chair) (2008-2010)
- President, International Technology Law Association (ITechLaw.org)
- Member, ICC France (French national ICC committee)
- Swiss Arbitration Association (*Association Suisse de l'Arbitrage*)
- London Court of International Arbitration
- CEPANI, Belgian Arbitration Association
- Advisory Board, Madagascar International Arbitration Center (CAMM)
- Treasurer, Lafayette Escadrille Memorial Foundation

**Biographical Information**

Date of birth: August 7, 1960
Place of birth: Montclair, New Jersey, U.S.A.
Nationality: American
Languages: bilingual English/French