

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

October 15, 2013

**VIA HAND DELIVERY**

The Honorable Kevin Gross
United States Bankruptcy Court
for the District of Delaware
824 North Market Street, Sixth Floor
Wilmington, Delaware 19801

      Re:      *In re Nortel Networks Inc., et al.*, Case No. 09-10138 (KG)

Dear Judge Gross:

      We write on behalf of the Joint Administrators for the EMEA Debtors in order to address certain matters that arise from the Order Resolving Discovery Related Issue entered October 10, 2013 (the "October 10 Order").

      At the outset, we note that we appreciate the Court's recognition that the parties can work together to pursue the procedures available under Chapter II of the Hague Evidence Convention in a manner that will both accord with French law and meet the discovery schedule that has been set by the Courts. In accordance with Paragraph 1 of the October 10 Order, we have conferred with the U.S. Debtors' counsel about the form of the necessary papers and will be filing the application with the Court this morning.

      However, we and our clients are very concerned about other aspects of the October 10 Order — in particular those parts which appear to reject representations we, as officers of the court, had made about our good faith efforts to comply with the Joint Administrators' discovery obligations. We and our clients were especially troubled by the Court's apparent finding that the EMEA Debtors have acted in bad faith and are therefore subject to discovery sanctions. The U.S. Debtors had not sought such finding or sanctions, and we do not believe that the record presented to the Court supported such an outcome. The sanctions imposed threaten to impair the

EMEA Debtors' due process rights. For reasons explained further below, we respectfully suggest that the Court misapprehended certain facts in reaching its decision.[1]

In the October 10 Order, the Court ordered that:

> In the meantime, the EMEA Claimants will not be entitled to take any depositions of witnesses they seek to depose until the [French] Witnesses are available to be deposed. They will, of course, be permitted to examine witnesses who are appearing at the request of other parties.

(October 10 Order at 3 ¶ 2.)

This portion of the October 10 Order is problematic for a number of reasons:

First, the October 10 Order was issued in the context of a joint proceeding pending before this Court and the Commercial List in Ontario. As such, the above-quoted language arguably can be read to impair the ability of the EMEA Debtors to proceed with trial preparation for those matters that are pending exclusively before the Canadian Court, i.e., the Canadian Claims and the Canadian Allocation proceedings. Indeed, some of the Core Parties have taken the position that Paragraph 2 of the October 10 Order affects the proceedings in both jurisdictions. Under the terms of the Discovery Plan, such an order should properly have been addressed in a joint hearing at which Justice Morawetz also had the opportunity to consider the issues and rule on them. Section 9 of the Discovery Plan provides:

> All motions or directions sought from the Court(s) pursuant to this Discovery Plan shall be brought before the following Court or Courts: with respect to Allocation, before Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and Justice Morawetz of the Ontario Superior Court of Justice; with respect to US Claims, before Judge Gross; and with respect to Canadian Claims, before Justice Morawetz. The Courts shall hold regularly scheduled joint discovery conferences for discovery disputes in Allocation and those discovery disputes that affect both jurisdictions.

We therefore request that Paragraph 2 of the October 10 Order be reconsidered in a joint hearing. Our Canadian co-counsel is writing to Justice Morawetz this morning to raise these same issues. (Letter from Matthew P. Gottlieb to Justice Morawetz (Oct. 15, 2013), attached as

---

[1]. "A decision should be reconsidered when facts that would alter or impact the decision have been overlooked or misapprehended." *In re Tribune Co.*, 464 B.R. 208, 213 (Bankr. D. Del. 2011) (citations omitted); *see also Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Exhibit A.)[2] We also respectfully request that the effect of Paragraph 2 of the October 10 Order be stayed pending reconsideration at such a joint hearing.

Second, the other parties have taken what appears to be an unreasonably broad view of the effect of Paragraph 2, in a manner that threatens to cause exactly the result the Court is trying to avoid, i.e., to delay the detailed discovery schedule negotiated between the parties. (October 10 Order at 3 ("[T]he Court will not countenance delay of the carefully negotiated discovery schedule.").) Specifically, the Canadian Monitor/Debtors and the Canadian Creditors Committee have written to the Core Parties Service List and appear to take the position that the October 10 Order would prevent the EMEA Debtors from participating in any depositions at all, even of witnesses who have been designated in the first instance by other parties. Similarly, the U.S. Debtors have asserted that the October 10 Order should have applied to cancel the deposition of a witness (Mary Cross) who had been designated in the first instance not by the EMEA Debtors, but by the U.K. Pension Claimants. The restrictions imposed by the Court in the October 10 Order are very serious, and we believe they should be construed narrowly in accordance with their terms. We respectfully request that the application of Paragraph 2 of the October 10 Order, if upheld, be clarified at the joint hearing on reconsideration.

Finally, comments made by the Court suggest that it may have misapprehended certain factual matters that led it to "suspect[] the bona fides of the EMEA Claimants' position." (October 10 Order at 2.) In particular, the Court appears to have found that the EMEA Debtors acted in bad faith by moving to extend the litigation schedule (a motion which was ultimately agreed to by all parties) and by scheduling such motion at a time when Your Honor and Justice Morawetz were unavailable. (*Id.* at 3 n.2.)

Section 9 of the Discovery Plan gives the parties an affirmative obligation to monitor whether the Litigation Timetable and Discovery Plan can be complied with, and to promptly inform the other parties and the Courts of any issues with the schedule:

> The Discovery Participants recognize that, as additional information becomes available throughout the Allocation, US Claims and Canadian Claims litigation, it may become apparent that: (a) it is impracticable or impossible for a Discovery Participant to comply with the terms of the Discovery Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery Plan, are required in order for a Discovery Participant to obtain access to potentially relevant documents, information or witness testimony. Each Discovery Participant agrees to notify the other Discovery Participants promptly when it reasonably believes that it will not comply with any term of the Discovery Plan or when it reasonably concludes that further steps beyond those set out in this Discovery Plan are required. The Discovery Participants agree to negotiate in good faith with respect to any amendments to the Discovery Plan

---

2. The letter to Justice Morawetz is submitted to this Court in accordance with Paragraph 19 of the Cross-Border Insolvency Protocol.

> requested by a Discovery Participant on that basis, and to seek the assistance of the Court(s) when appropriate in order to resolve disputes between the Discovery Participants.
>
> . . . <u>Discovery Participants are required to promptly seek relief from the applicable Court or Courts if an impasse is reached in any dispute and shall not be heard to complain of any prejudice resulting from their own delay in seeking relief</u>.

(Discovery Plan at 14 § 9 (emphasis added).)

By the first week of August, it had become apparent that despite diligent efforts each of the U.S. Debtors, the Canadian Debtors, and the EMEA Debtors would produce large volumes of documents after the July 22 deadline for parties to achieve "substantial completion" of their document productions. Indeed, it appeared that it would take until the end of August for the parties to complete their productions, i.e., halfway through the eight week period allowed for depositions. In addition, the parties had identified a much larger number of necessary deponents than had been anticipated — over 100. <u>These matters were not the fault of the EMEA Debtors</u>. The scope of the document requests, and the list of persons to be deposed, were the result of negotiation between the parties and were not in dispute.

The EMEA Debtors pointed these facts out to the other parties and suggested that the schedule would need to be modified, both in advance of and at the August 6 meet and confer session held in accordance with the Discovery Plan. Although the other parties did not dispute the basic facts, they were initially reluctant to negotiate towards a modification of the Discovery Plan.

By this time, we understood that Your Honor had already become unavailable. However, there was still time to seek guidance from Justice Morawetz, who was in his final week before departing. Counsel for the Core Parties attended before Justice Morawetz on August 8, 2013. Canadian counsel for the EMEA Debtors advised Justice Morawetz that the parties were negotiating in an attempt to come to mutually agreed amendments to the Litigation Timetable. Counsel for the EMEA Debtors noted that, under the Discovery Plan, they would be required to bring a prompt motion in the event an agreement could not be reached. Counsel for the EMEA Debtors asked for Justice Morawetz's direction as to the timing of such a motion, given that Justice Morawetz had advised the parties that he would not be available for some period of time. <u>Justice Morawetz directed that, if a motion was necessary, it should be brought before the duty judges who would be sitting in his absence</u> (Justice Newbould or Justice Pattillo, depending on the date the motion would be brought). Justice Morawetz advised that both judges had been briefed on the Nortel matter and would be prepared to hear the motion.

We hope that these facts persuade the Court to reconsider its view that the EMEA Debtors' motion to amend the schedule was brought in bad faith or for some improper purpose. The amendments to the schedule were necessitated by the scope of disclosure <u>agreed by all of the parties</u>. The amended schedule was the result of negotiations between the parties, as required by the Discovery Plan, and was ultimately <u>supported by all parties</u>. The timing of the joint motion was in accordance with (i) the instructions from Justice Morawetz, (ii) the fact that the parties

4

had breached or were on the brink of breaching the Litigation Timetable, and (iii) the express requirement under the Discovery Plan to bring such a motion "promptly."

We believe the Court should be aware of certain other matters that bear on the EMEA Debtors' good faith with respect to the position of the French witnesses, in particular:

- None of the French witnesses is in the control of the Joint Administrators. Most are former officers, directors, and employees. Cosmé Rogeau is an independent Liquidator, advised by separate French counsel. Paragraph 2 of the October 10 Order thus has the effect of punishing the Joint Administrators for a failure to provide witnesses who are not under their control.[3]

- At no time did "[t]he EMEA Claimants say that they will not produce the [French] Witnesses because of a 'French Blocking Statute.'" (October 10 Order at 2.) Promptly after we became aware of the applicability of the French blocking statute (which no one disputes), we informed the parties that we would need to proceed with these witnesses by way of the voluntary procedure for appointing commissioners under Chapter II of the Hague Evidence Convention. We invited the parties to cooperate with us in that process, and to let us know if they had a different view of French law. (E-mail from Fara Tabatabai to Jeffrey A. Rosenthal et al. (Oct. 2, 2013), attached as Exhibit B.) This cooperative approach was confirmed in a phone call with the U.S. Debtors' counsel. The U.S. Debtors' next action was to write their October 4, 2013 letter to the Court.

- Out of the five French witnesses for whom Hague Evidence Convention procedures must be pursued, two are witnesses who were designated in the first instance by the Joint Administrators themselves. It does not make sense that we would engage in gamesmanship in relation to these witnesses.

- The EMEA Debtors have acted in good faith in seeking, and securing, the cooperation of dozens of their former employees. In accordance with the procedures agreed between the parties, counsel for the EMEA Debtors contacted at least 39 former EMEA officers, directors, and employees who had been requested by various parties to appear for depositions. Of these, 32 agreed to appear voluntarily, in advance of any form of compulsory process. Any reluctance by the others (four of whom have subsequently agreed to appear) is not the fault of the Joint Administrators, who have been acting in good faith.

- The U.S. Debtors' counsel suggested that the EMEA Debtors' concerns about the French blocking statute must be unfounded because one of the French witnesses who is represented by the Osler firm (Pascal Debon) was apparently willing to appear voluntarily, without the protection of the Hague Evidence Convention. This is incorrect. Although Mr. Debon's counsel wrote to the Court and stated

---

3. It was Mr. Rogeau's French counsel who pointed out the issues raised by the French blocking statute, after Mr. Rogeau was first put on the schedule to be deposed in order to resolve various disputes that were submitted to the Court several weeks ago.

5

that Mr. Debon "is, at present, appearing voluntarily for a deposition," they have subsequently written to us and asked us to include Mr. Debon in our Hague Evidence Convention application in order to protect him from any possible problems under French law. It should be plain from this that the concerns about French law have not been fabricated by us for some improper purpose.

In a case where each of the debtors has arranged for the cooperation of dozens of former employees who are not in their direct control, it is not surprising that problems can arise with witnesses who have previously agreed to cooperate. On Friday, October 11, the Canadian Debtors notified the parties that one of their witnesses (Tim Collins), who had a longstanding appointment to appear for his deposition on October 15, had changed his mind and was no longer willing to appear for his deposition unless compelled to do so. The EMEA Debtors, who originally designated Mr. Collins for deposition, will now be forced to seek compulsory process in order to obtain Mr. Collins's testimony. (Mr. Collins had been cross-designated by the Canadian Debtors themselves.) The fact that such problems with independent third parties arise does not mean that any of the debtors is acting in bad faith.

Respectfully,

*NEIL OXFORD (by CHH)*

Neil J. Oxford

Enclosures

**EXHIBIT A**

**MATTHEW P. GOTTLIEB**
Direct: (416) 644-5353
mgottlieb@counsel-toronto.com
File No. 12379



**LAX O'SULLIVAN SCOTT LISUS LLP**
Suite 2750, 145 King Street West
Toronto ON  M5H 1J8  Canada
Tel: 416 598 1744  Fax: 416 598 3730

October 15, 2013

The Honourable Mr. Justice Morawetz
Ontario Superior Court of Justice
361 University Avenue
Toronto, ON  M5G 1T3

Dear Justice Morawetz:

>    **Re:   In the Matter of a Plan of Compromise or Arrangement of Nortel Networks Corporation et al.**

We write in connection with the Order Resolving Discovery Related Issue granted on October 10, 2013 by Judge Gross in the United States Bankruptcy Court for the District of Delaware (the "Order") and correspondence that has been sent by various Canadian parties with respect to the Order. It appears that there is a dispute regarding the application of the Order.

Specifically, the Monitor/Canadian Debtors and the CCC have written to the Core Parties Service List and appear to take the position that the Order granted by Judge Gross applies to the proceedings in the Ontario Court and, in particular, restricts the EMEA Debtors' rights with respect to depositions in connection with the Allocation proceeding and Canadian Claims proceeding taking place in this Court. In that regard, the Order would in effect vary and amend the Order of this Court dated May 15, 2013 (the Allocation Protocol – Litigation Timetable and Discovery Plan), as amended, and the Order dated August 27, 2013 (Deposition Protocol) (the "Ontario Orders"). For completeness, we also point out that beyond the issue of application to the Ontario proceedings, we disagree with the interpretation of the Order by the Monitor/Canadian Debtors and the CCC.

Contrary to the above-noted parties' positions, the Order does not apply to the Allocation proceeding and Canadian Claims proceeding before this Court. As Your Honour is aware, pursuant to the Ontario Orders, Your Honour's Endorsement dated May 3, 2013 (para. 16) and the Cross-Border Protocol, although a joint trial will be conducted with respect to these matters, the U.S. Court and the Ontario Court are nonetheless separate and the independent jurisdiction and different procedural rules of each Court need to be respected. Simply, the Courts are dealing with "separate litigations".

If an Order were to be sought in the proceedings before the Ontario Court, either a motion needs to be brought before the Ontario Court or a joint hearing needs to be convened so that both Courts can consider and determine the issues. This is also clear from the Discovery Plan (s. 9), which provides:

> "All Discovery Participants shall meet and confer in good faith without the assistance of the Court(s) in attempting to resolve any disputes in the interpretation or implementation of this Discovery Plan. Discovery Participants are required to promptly seek relief from the applicable Court or Courts if an impasse is reached in any dispute and shall not be heard to complain of any prejudice resulting from their own delay in seeking relief.
>
> All motions or directions sought from the Court(s) pursuant to this Discovery Plan shall be brought before the following Court or Courts: with respect to Allocation, before Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and Justice Morawetz of the Ontario Superior Court of Justice; with respect to US Claims, before Judge Gross; and with respect to Canadian Claims, before Justice Morawetz. The Courts shall hold regularly scheduled joint discovery conferences for discovery disputes in Allocation and those discovery disputes that affect both jurisdictions."

As no joint hearing was sought or held and no motion was made or sought before the Ontario Court, the proceedings in Ontario are not impacted by the Order. For the Order to apply in the Ontario proceedings, a joint hearing would need to be held to have that matter dealt with regarding Allocation and a motion before the Ontario Court alone regarding Canadian Claims. With respect to any proposed hearing or joint hearing, it will be necessary to provide notice as to what relief is being sought. It is important to point out that the Order restricts the EMEA Debtors' rights with respect to depositions notwithstanding that no such relief was sought by any party in the U.S. proceeding. In fairness to the EMEA Debtors, it is only appropriate that they be given notice as to what relief is being sought against them, if any relief is sought before the Ontario Court.

We would also like to bring to Your Honour's attention a particular statement made in the Order questioning the EMEA Debtors' *bona fides* "given the history of this case". The Order states that the EMEA Debtors scheduled their motion to amend the litigation schedule in this matter while "the Judges who have been overseeing these cases for more than four years were unavailable and brought the motion before 'duty judges' here and in Canada who were totally unfamiliar with the cases". As Your Honour will recall, counsel for the Core Parties attended before you on August 8, 2013 in accordance with the provisions of the Discovery Plan Order (referred to above). In particular, the EMEA Debtors had notified the other Discovery Participants that the Timetable was not being met and would not be met and that unless an agreement could be reached, a motion would be brought.

When counsel attended before Your Honour on August 8, 2013, on behalf of the EMEA Debtors, we advised that the parties were negotiating in an attempt to come to an agreeable and amicable resolution regarding the Timetable. We advised the Court that if an agreement could not be reached, we were required to bring a motion "promptly" in accordance with the Discovery Plan (quoted above) and asked for Your Honour's direction as to the timing of the motion given that Your Honour had advised that you would not be available for some period of time. Your Honour directed that if a motion was necessary, it should be brought before Justice Newbould or Justice Pattillo (depending on the date the motion would be brought) in your absence. You advised that both judges had been briefed on the Nortel matter and were prepared to hear the motion. Given that we raised the very issue of when any motion to amend the Timetable should be brought and before whom it should be brought and followed your directions in that regard, the EMEA Debtors were quite concerned to read the comments in the Order regarding the EMEA Debtors' *bona fides* in connection with bringing the motion in accordance with Your Honour's direction. We also note that the Order amending the litigation timetable was made with the consent of all Core Parties.

Counsel to the Monitor/Canadian Debtors advised last night that they will seek to schedule a "brief appointment" with Your Honour "so that there is no ambiguity" that the Order of Judge Gross applies to the Canadian proceedings. For the reasons set out above, the EMEA Debtors do not agree that this matter can or should be dealt with at a "brief appointment" with the Ontario Court. We will of course attend any appointment scheduled to discuss this matter. Given the above issues regarding the application of the Order, it may be necessary to convene a case conference. I attach the letter of today's date sent by counsel to the EMEA Debtors to Judge Gross.

Yours truly,

Matthew P. Gottlieb

MPG:amh

## **EXHIBIT B**

# Huberty, Charles

| | |
|---|---|
| **From:** | Tabatabai, Fara |
| **Sent:** | Wednesday, October 02, 2013 2:32 PM |
| **To:** | Rosenthal, Jeffrey (jrosenthal@cgsh.com); Bromley, James (jbromley@cgsh.com); Schweitzer, Lisa (lschweitzer@cgsh.com); Ruby, Peter (pruby@goodmans.ca); Kimmel, Jessica (jkimmel@goodmans.ca); Stam, Jennifer (Jennifer.Stam@gowlings.com) |
| **Cc:** | Adler, Derek J.T.; Oxford, Neil; Norris-Jones, James (James.Norris-Jones@hsf.com); 'Matthew Gottlieb' (mgottlieb@counsel-toronto.com) |
| **Subject:** | Nortel - French Witness Depositions |
| **Importance:** | High |

Counsel,

We have just been alerted to an issue under French law that affects the depositions of the French nationals who the parties have designated for deposition, including Pascal Debon, Jean-Marie Lesur, Cosme Rogeau, Philippe Albert-Lebrun, and Michel Clement.  We have been advised that French law absolutely prohibits French nationals from giving evidence to be used in foreign proceedings unless that evidence is obtained through the Hague Convention.  In other words, French nationals cannot consent to be deposed voluntarily outside of the Hague Convention processes, even if their depositions take place outside of France.  Failure to comply with this law could result in criminal sanctions.

We understand that the most expeditious method would be for a "commissioner" to be appointed by the parties and approved by the French Ministry of Justice to monitor the giving of evidence (*i.e.*, to be present at the deposition and ensure that it complies with French law).  We have been further advised that the standard Hague Convention process could take months in France, but that appointing a commissioner ought to be faster.

We are investigating the issue further, but we note that all parties have designated French nationals for deposition, and it is in all parties' interests to work together to resolve the matter expeditiously.  In the first instance, we would appreciate it if would you indicate whether your understanding of the French legal position is the same.  We note in particular that the examinations are scheduled to be held at Cleary's Paris office and would welcome their views.  Assuming they agree with the above, we suggest that the parties work together to appoint and seek approval of a commissioner as soon as possible for the depositions of the French witnesses named above.



**Fara Tabatabai** / *Associate*
Hughes Hubbard & Reed LLP | One Battery Park Plaza | New York, NY 10004-1482
Office 212-837-6296 | Cell 646-416-1167 | Fax 212-299-6296
tabataba@hugheshubbard.com