# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>NORTEL NETWORKS INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>Jointly Administered |

## APPLICATION FOR ISSUANCE OF LETTERS OF REQUEST, APPOINTMENT OF COMMISSIONER, AND DIRECTION OF SUBMISSION OF HAGUE CONVENTION APPLICATION

The court-appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators")[2] of Nortel Networks UK Limited ("NNUK") and certain of its affiliates (collectively, and including NNUK, the "EMEA Debtors")[3] located in the region known as EMEA (Europe, Middle East, and Africa) in proceedings under the Insolvency Act 1986 pending before the High Court of Justice of England and Wales (the "English Court"), respectfully petition this Court for an Order, in the form annexed hereto as Exhibit A, pursuant to 28 U.S.C. § 1781 and the Hague Convention of March 18, 1970 on Taking of Evidence Abroad

---

1. The debtors in these chapter 11 cases (the "U.S. Debtors") are:  Nortel Networks Inc.; Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros, Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc. ("NN CALA").

2. The Joint Administrators for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators for Nortel Networks (Ireland) Limited are:  Alan Robert Bloom and David Martin Hughes.

3. The EMEA Debtors are:  NNUK; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S. ("NN France SAS"); Nortel Networks Hispania, S.A. ("NN Spain"); Nortel Networks International Finance & Holding B.V.; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A. ("NNSA"); Nortel Networks S.p.A. ("NN Italy"); Nortel Networks Slovensko, s.r.o.; and Nortel Networks, s.r.o.

in Civil or Commercial Matters (the "Hague Convention"), issuing Letters of Request, in the form annexed hereto as Exhibits B through E, directed to the Ministère de la Justice, Direction des Affaires Civiles et du Sceau, Bureau de l'entraide civile et commerciale internationale (D3), 13, Place Vendôme, 75042 Paris Cedex 01, France (the "Ministère de la Justice"), appointing a Commissioner pursuant to Article 17 of the Hague Convention, and directing submission of the Order and Letters of Request to the Ministère de la Justice.  In support thereof, the Joint Administrators respectfully represent as follows:

## BACKGROUND

1.      On January 14, 2009 (the "Petition Date"), the U.S. Debtors, other than NN CALA, filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.  NN CALA filed a voluntary petition for relief on July 14, 2009 [D.I. 1098].  The U.S. Debtors' cases are consolidated for procedural purposes only.

2.      Also on the Petition Date, Nortel Networks Corporation and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (collectively, the "Canadian Debtors") filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors, and Ernst & Young Inc. (the "Monitor") was appointed by the Canadian Court as the monitor and authorized foreign representative of the Canadian Debtors.

3.      On the same date, upon the request of the EMEA Debtors, the English Court placed the EMEA Debtors into administration and appointed the Joint Administrators.

4.     On May 28, 2009, NNSA entered secondary insolvency proceedings in the Commercial Court of Versailles and Cosmé Rogeau was appointed as the French Liquidator.

5.     Since the Petition Date, the various Nortel affiliates have sold assets related to Nortel's business units and other assets to various purchasers.

6.     Upon the joint motion of the U.S. Debtors and the Official Committee of Unsecured Creditors (collectively, the "U.S. Interests"), this Court on April 3, 2013 entered an Order Approving Allocation Protocol [D.I. 9947] and an associated Opinion [D.I. 9946] determining, *inter alia*, that the allocation among the U.S. Debtors, Canadian Debtors, and EMEA Debtors of proceeds from the asset sales (the "Allocation Dispute") would be decided in joint hearings before this Court (Case No. 09-10138(KG)) and the Canadian Court (Court File No.: 09-CL-7950) (collectively, the "Courts").  Also to be resolved by the Courts are claims against the U.S. Debtors and Canadian Debtors brought by the EMEA Debtors, certain affiliates of the EMEA Debtors, and the French Liquidator (the "EMEA Claims"), and additional claims (the "U.K. Pension Claims") brought by the Nortel Networks UK Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan, and the Board of the Pension Protection Fund, a privately funded insurer.  *See* Order Approving Allocation Protocol ¶ 4.

7.     The Canadian Court issued an Endorsement on April 3, 2013 to the same effect.

8.     Subsequently, this Court entered (i) the Order Entering Allocation Protocol dated May 17, 2013 [D.I. 10565], in which the Court specified certain procedures to be used for resolving the Allocation Dispute, EMEA Claims, and U.K. Pension Claims, and (ii) the Order Approving Litigation Timetable and Discovery Plan dated May 17, 2013 [D.I. 10566], setting parameters and deadlines for preparations for the joint hearings.

9.      On August 26, 2013, this Court entered an Order Modifying Scheduling Orders in Joint Cross-Border Proceedings to Determine Allocation of Asset Sale Proceeds and Certain Claims [D.I. 11437], which moved the commencement of the joint hearings to a date on or after March 31, 2014 and modified various pretrial deadlines.  The Canadian Court entered a corresponding order on August 27, 2013.  The deadline to complete fact depositions is December 13, 2013.

10.      On August 26, 2013, this Court entered an Order Approving Deposition Protocol [D.I. 11439], which sets forth guidelines and procedures to govern all out-of-court depositions and examinations of fact deponents in these proceedings.  The Canadian Court entered a corresponding order on August 27, 2013.

11.      On September 25, 2013, this Court entered an Order Resolving Certain Discovery Disputes and Denying Related Relief [D.I. 11762], approving, *inter alia*, the Joint Administrators' agreement to produce the French Liquidator for deposition in Paris, France on a mutually convenient date to be agreed pursuant to the Deposition Protocol.

12.      On October 2, 2013, the Joint Administrators sent an email to the U.S. Interests raising an "issue under French law that affects the depositions of" four French witnesses:  Michel Clément, Pascal Debon, Philippe Albert-Lebrun, and Cosmé Rogeau, the French Liquidator.  The Joint Administrators noted they had been advised that French law "prohibits French nationals from giving evidence to be used in foreign proceedings unless that evidence is obtained through the Hague Convention."

13.      On October 4, 2013, the U.S. Interests submitted a letter to the Court regarding the depositions of those four French witnesses.  The U.S. Interests asserted that the Joint Administrators had informed them that the French witnesses could not appear for voluntary

deposition because French law precludes these witnesses from doing so absent compliance with Hague Convention procedures.

14.     The Joint Administrators submitted a response letter on October 7, 2013, clarifying that the French witnesses will appear voluntarily for their depositions, but that under French law even witnesses who are willing to appear voluntarily for depositions in foreign proceedings are required to comply with the formalities set forth in Chapter II of the Hague Convention, which procedures can be accomplished without causing undue delay in the parties' deposition schedule.

15.     The ad hoc group of bondholders and the Monitor submitted letters on the same date in support of the U.S. Interests.

16.     Also on October 7, 2013, counsel for the Canadian Directors and Officers wrote to the Court to clarify that Mr. Debon is a trial witness for the Canadian Directors and Officers, not for the EMEA Debtors, and will appear voluntarily for his deposition.[4]

17.     On October 8, 2013, the U.S. Interests sent a further letter to the Court, stating that while they disagree with the Joint Administrators' position on French law, they have no objection to pursuing Hague Convention procedures in respect of the French witnesses and are prepared to assist in that endeavor.  In addition, the U.S. Interests requested that the Court order the witnesses to appear on their scheduled dates for deposition.

18.     On the same date, the Joint Administrators submitted a supplemental letter proposing that Alexander B. Blumrosen, Avocat au Barreau de Paris, Bernard-Hertz-Béjot, 8, rue

---

4.   The Joint Administrators have had no contact with Mr. Debon.  However, the Joint Administrators understand that the same French law prohibiting French witnesses from appearing for voluntary depositions absent compliance with Hague Convention procedures potentially applies to persons who would be conducting those depositions, pursuant to Article 1*bis* of the French Penal Code Law No. 80-358.  Accordingly, the Joint Administrators seek a Letter of Request in connection with Mr. Debon's deposition.

Murillo, 75008 Paris, France, should be appointed as the Commissioner under Chapter II of the Hague Convention for the voluntary French depositions in this case.

19.    The U.S. Interests submitted a second letter on the same date in response to the Joint Administrators' letter.

20.    On October 10, 2013, this Court entered an Order Resolving Discovery Related Issue [D.I. 11861].  In that Order, the Court stated that it would not consider the merits of the parties' arguments regarding French law and that it did not want to impede the parties' cooperation.  To prevent delay in the discovery schedule, the Court ordered the U.S. Interests and EMEA Claimants to continue to work together to expedite the Hague Convention process to obtain depositions of the French witnesses before the discovery deadline.  The Court directed the EMEA Claimants to submit this application for the Court's signature no later than October 18, 2013.

21.    Notwithstanding their letter to this Court on October 7 advising that Mr. Debon will appear voluntarily, counsel for the Canadian Directors and Officers contacted counsel for the Joint Administrators on October 11, 2013 to request, because they believed French law on the issue was not clear, that Mr. Debon be included in the Joint Administrators' application.

22.    As discussed in the Joint Administrators' October 7 and October 8 letters, and as shown by Mr. Blumrosen's detailed resume attached to the Joint Administrators' October 8 letter, Mr. Blumrosen is an American attorney admitted in both the State of New York and Paris, France.  He is independent from the parties in this case.  Mr. Blumrosen has specialized in handling Hague Convention matters in Paris for more than 25 years and has sound experience acting as a Commissioner.

**RELIEF REQUESTED**

23.    By this Application, the Joint Administrators hereby request that this

Court issue an Order in the form attached hereto as Exhibit A:

    a.    Appointing Alexander B. Blumrosen, pending the approval of the

Ministère de la Justice, as the Commissioner to take evidence and

testimony in France in connection with the above-captioned action;

    b.    Providing for this Court to sign the Letters of Request and affix the seal of

the United States Bankruptcy Court for the District of Delaware over said

signature in the Letters of Request; and

    c.    Requiring that the Clerk of the Bankruptcy Court return the original,

signed Letters of Request and Order to John T. Dorsey and Jaime Luton

Chapman of Young Conaway Stargatt & Taylor, LLP, who will request

the Commissioner to file the documents, along with corresponding French

translations, with the Ministère de la Justice, Direction des Affaires

Civiles et du Sceau, Bureau de l'entraide civile et commerciale

internationale (D3), 13, Place Vendôme, 75042 Paris Cedex 01, France.

The Joint Administrators seek the requested relief so that the parties may obtain for use at the

joint hearings potential evidence material to the resolution of the Allocation Dispute, the EMEA

Claims, and the U.K. Pension Claims.[5]

24.    As more fully detailed in the Letters of Request, the designated recipients

served the EMEA Debtors as directors, officers, and/or in other capacities; have been designated

by the EMEA Debtors as among the persons affiliated with them who are most knowledgeable

---

5.    In seeking the evidence specified in the Letter of Request, the Joint Administrators do not concede its relevance
    or admissibility.

regarding certain topics relevant to these proceedings; and/or are otherwise believed to have knowledge that may be relevant to the resolution of these proceedings:

a.   Michel Clément was a Director for NNSA from 2000 to 2010, NN Italy from 2007 to 2010, NN Spain from 2009 to 2010, NN France SAS from 2002 to 2010, and Nortel Networks South Africa (Proprietary) Limited from 2006 to 2009.

b.   Pascal Debon was a Director for NN France SAS from 2000 to 2001 and for NNSA from 2002 to 2006, and was employed as Group Vice President for Northern Telecom Inc. from 1999 to 2002, Leadership for Northern Telecom Inc. from 2001 to 2002, and Business Management Officer for Northern Telecom Inc. from 2002 to 2005.  In response to interrogatories, the EMEA Debtors have identified Mr. Debon as among those persons affiliated with them most knowledgeable regarding decisions that concerned Nortel expenditure on customer affairs and NNUK's role in the management and operations of the EMEA region.  Mr. Debon has been designated as a trial witness by the Canadian Directors and Officers.

c.   Philippe Albert-Lebrun was employed as Manager Treasury Operations for NNSA from 1999 to 2001, Treasury Professional Services Europe for NNSA from 2001 to 2003, Director of Finance and Control for NNSA in 2003, Finance – Treasury for NNUK from 2003 to 2008, Financial Results Accounting for NNUK from 2008 to 2011, and a Non Payroll Worker for NNUK from 2011 to 2012.  In response to interrogatories, the EMEA Debtors have identified Mr. Albert-Lebrun as among those persons

affiliated with them most knowledgeable regarding Nortel's transfer pricing agreements, intercompany loans, and which Nortel entity or entities would (a) contract with customers; (b) receive revenue earned from customers; and (c) distribute Nortel products within the jurisdiction of EMEA Entities.  Mr. Albert-Lebrun has been designated as a trial witness by the EMEA Debtors.

d.      Cosmé Rogeau is the French Liquidator appointed by the Commercial Court of Versailles.  In his capacity as the court-appointed French Liquidator, Mr. Rogeau has asserted claims against the U.S. Debtors and Canadian Debtors on behalf of NNSA and its subsidiaries.

25.     The Joint Administrators have considered the requirements of the Republic of France in respect of the Letters of Request, including the form in which the Letters of Request should be presented to the Ministère de la Justice and their permissible content.  The Joint Administrators believe that the Letters of Request are consistent with these requirements, as contained in the Decree No. 75-250 of April 9, 1975 and the French Code of Civil Procedure Articles 736-748.  The Joint Administrators respectfully request that this Court issue the Letters of Request on this basis.

26.     The Joint Administrators request that after this Court has signed the Letters of Request, they be returned to John T. Dorsey and Jaime Luton Chapman of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, for forwarding to the Commissioner and the Ministère de la Justice.

WHEREFORE, the Joint Administrators respectfully request that the Court enter the attached form of Order (i) appointing Alexander B. Blumrosen, pending the approval of the

9

Ministère de la Justice, as the Commissioner to take evidence and testimony in France in connection with the above-captioned action; (ii) providing for this Court to sign the Letters of Request and affix the seal of the United States Bankruptcy Court for the District of Delaware over said signature in the Letters of Request; (iii) directing that the Clerk of the Bankruptcy Court return the original, signed Letters of Request and Order to John T. Dorsey and Jaime Luton Chapman of Young Conaway Stargatt & Taylor, LLP, so that said documents may be transmitted to the Ministère de la Justice; (iv) directing counsel for the Joint Administrators to transmit the original, signed Letters of Request and Order to the Commissioner for forwarding, along with French translations, to the Ministère de la Justice; and (v) granting such other relief as the Court deems just and proper.

Dated:  Wilmington, Delaware
         October 15, 2013

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              /s/  Jaime Luton Chapman
                              Edwin J. Harron (No. 3396)
                              John T. Dorsey (No. 2988)
                              Jaime Luton Chapman (No. 4936)

                              Rodney Square
                              1000 North King Street
                              Wilmington, Delaware 19801
                              Telephone:  302-571-6600
                              Fax:  302-571-1253

                                        – and –

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Neil J. Oxford
Fara Tabatabai
Charles H. Huberty

One Battery Park Plaza
New York, New York 10004
Telephone:  212-837-6000
Fax:  212-422-4726

– and –

HERBERT SMITH FREEHILLS LLP

John Whiteoak
James Norris-Jones
Exchange House
Primrose Street
London EC2A 2EG
Telephone:  +44 20 7374 8000
Fax:  +44 20 7374 0888

*Counsel for the Joint Administrators*

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| NORTEL NETWORKS INC., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

**ORDER ISSUING LETTERS OF REQUEST, APPOINTING COMMISSIONER,**
**AND DIRECTING SUBMISSION OF HAGUE CONVENTION APPLICATION**

Upon consideration of the application (the "Application") of the court-appointed

administrators and authorized foreign representatives (collectively, the "Joint Administrators")[2]

of Nortel Networks UK Limited ("NNUK") and certain of its affiliates (collectively, and

including NNUK, the "EMEA Debtors")[3] located in the region known as EMEA (Europe,

Middle East, and Africa) in proceedings under the Insolvency Act 1986 pending before the High

Court of Justice of England and Wales, requesting the issuance of international letters of request

(the "Letters of Request") pursuant to Chapter II of the Hague Convention of March 18, 1970 on

the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"); and

---

1.  The debtors in these chapter 11 cases are:  Nortel Networks Inc.; Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros, Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc.

2.  The Joint Administrators for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators for Nortel Networks (Ireland) Limited are:  Alan Robert Bloom and David Martin Hughes.

3.  The EMEA Debtors are:  NNUK; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V.; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A.; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; and Nortel Networks, s.r.o.

upon the record of these chapter 11 proceedings; and the Court having jurisdiction to consider

the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and due

and sufficient notice having been given under the circumstances and it appearing that no other or

further notice need be given; and after due deliberation; and it appearing that good and sufficient

cause exists;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Application is GRANTED.

2.      Pursuant to Article 17 of the Hague Convention, Alexander B. Blumrosen,

Avocat au Barreau de Paris, Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France (the

"Commissioner"), is duly appointed and is hereby appointed, pending the approval of the French

Ministère de la Justice and subject to the terms of the Letters of Request, as the Commissioner to

take evidence and testimony in the above-captioned action in France.

3.      This Court shall sign the Letters of Request attached to the Application as

Exhibits B through E and affix the seal of the United States Bankruptcy Court for the District of

Delaware over said signature in each of the Letters of Request.

4.      The Clerk of the Bankruptcy Court is directed to return the original,

signed Letters of Request and this Order to John T. Dorsey and Jaime Luton Chapman of Young

Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington,

Delaware 19801, so that said documents may be transmitted to the Ministère de la Justice,

Direction des Affaires Civiles et du Sceau, Bureau de l'entraide civile et commerciale

internationale (D3), 13, Place Vendôme, 75042 Paris Cedex 01, France.

5.      The Joint Administrators are directed to transmit the original, signed Letters of Request and Order to the Commissioner for forwarding, along with French translations, to the Ministère de la Justice.

6.      Nothing contained in this Order or the granting of relief hereunder shall waive or modify the protections afforded pursuant to section 362 of title 11 of the United States Code or the Order Enforcing Section 362 of the Bankruptcy Code entered by this Court on January 15, 2009.

7.      The Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this order.


Dated: _____, 2013
            Wilmington, Delaware

                                                    _____
                                                    THE HONORABLE KEVIN GROSS
                                                    CHIEF UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re

NORTEL NETWORKS INC., *et al.*,

Debtors.

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO
CHAPTER II OF THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE
TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS:
<u>DEPOSITION OF MICHEL CLEMENT</u>**

A request is hereby made by the United States Bankruptcy Court for the District

of Delaware to the Ministère de la Justice, Direction des Affaires Civiles et du Sceau, Bureau de

l'entraide civile et commerciale internationale (D3), 13, Place Vendôme, 75042 Paris Cedex 01,

France (the "<u>Ministère de la Justice</u>"), for assistance in obtaining evidence to be used in a civil

proceeding before the Court in the above-captioned action.  This Court (the "<u>Requesting Court</u>")

has determined that it would further the interests of justice if the persons identified herein were

deposed, under oath, as to their knowledge of the facts relevant to the issues of this action.  This

request is made pursuant to Chapter II of the Hague Convention of 18 March 1970 on the Taking

of Evidence in Civil or Commercial Matters (the "<u>Hague Convention</u>").

In conformity with Article 17 of the Hague Convention, the Requesting Court

presents its compliments to the Ministère de la Justice, and has the honor of requesting assistance

in obtaining approval for a Commissioner to take evidence and testimony with the consent of the

parties and the French witness identified herein in France pursuant to Chapter II of the Hague

Convention.  The proposed Commissioner, Alexander B. Blumrosen, is an attorney at law

resident in France and is qualified to serve as a Commissioner in this matter.  Mr. Blumrosen has

advised the parties that he is willing to serve as a Commissioner in this matter, if appointed.

Attached hereto is the Order of the Requesting Court appointing Mr. Blumrosen as

Commissioner, pending the approval of the Ministère de la Justice.  Mr. Blumrosen's office

address is as follows:  Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France.  Mr.

Blumrosen's telephone number is (01) 43 18 80 80 and his fax number is (01) 43 18 80 90.  The

parties have chosen this method to take evidence and testimony in the interests of judicial

economy and efficiency, as the French witness identified herein has agreed to appear voluntarily.

| | | |
|---|---|---|
| **1.** | **Sender** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |
| **2.** | **Central Authority of the Requested State** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau de l'entraide civile et commerciale internationale (D3)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
| **3.** | **Person to whom the executed request is to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |

**4.**    **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | |
|---|---|
| **Date** | Examination to occur on 10 December 2013 and 11 December 2013 at Cleary Gottlieb Steen & Hamilton LLP, 12, rue de Tilsitt, 75008 Paris, France, if it is not possible to hold the deposition at the United States Embassy. |
| **Reason for urgency** | The joint hearings for which the evidence will |

be used will begin on or after 31 March 2014. The parties' pretrial examinations must be concluded by 13 December 2013.

IN CONFORMITY WITH CHAPTER II, ARTICLE 17 OF THE HAGUE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

5.      **(a)  Requesting judicial authority**

The Honorable Kevin Gross
United States Bankruptcy Court
District of Delaware
824 Market Street North, 3rd Floor
Wilmington, Delaware 19801
United States of America

**(b)  To the competent authority of**

Ministère de la Justice
Direction des Affaires Civiles et du Sceau
Bureau de l'entraide civile et commerciale internationale (D3)
13, Place Vendôme
75042 Paris Cedex 01
France

**(c)  Names of the case and any identifying number**

*In re Nortel Networks Inc., et al* – Case No. 09-10138 (KG)
United States Bankruptcy Court for the District of Delaware

6.      **Names and addresses of the parties and their representatives**

**(a)  Plaintiff** (Claimants)

**Joint Administrators and EMEA Debtors**

**Representatives**

Derek J.T. Adler
Neil J. Oxford
Fara Tabatabai
Charles H. Huberty
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
United States of America
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Edwin J. Harron
John T. Dorsey

Jamie Luton Chapman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Robin Schwill
Sean R. Campbell
Davies Ward Phillips & Vineberg LLP
155 Wellington Street West
Toronto, ON M5V 3J7
Canada
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

Matthew P. Gottlieb
Tracy Wynne
Lax O'Sullivan Scott Lisus LLP
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

John Whiteoak
James Norris-Jones
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2HS
United Kingdom

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
United States of America
Telephone: (212) 728-8000

Facsimile: (212) 728-8111

Charlene D. Davis
Justin Alberto
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
United States of America
Telephone: (302) 655-5000
Facsimile: (212) 658-6395

David Ward
William Burden
Lara Jackson
Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

Angela Dimsdale Gill
John Tillman
Matthew Bullen
Hogan Lovells International LLP
Atlantic House
Holborn Viaduct
London EC1A 2FG
United Kingdom

**(b)  Defendants** (U.S. Debtors)          **Nortel Networks Inc.,** *et al.*

**Representatives**          Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
United States of America
Telephone: (212) 225-2000

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
United States of America
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
Torys LLP
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2
Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

**(c)  Other Parties**              **The Monitor and Canadian Debtors**

**Representatives**                 Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
James Barabas
Michael Sadowitz
Jacob S. Pultman
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
United States of America
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

David Por
Allen & Overy LLP
52 avenue Hoche
CS 90005
75379 Paris Cedex 08
Paris 75379
France

Mary F. Caloway
Kathleen A. Murphy

Buchanan Ingersoll & Rooney PC
1105 North Market Street
Suite 1900
Wilmington, Delaware 19801
United States of America
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Jessica Kimmel
Peter Ruby
Alan Mark
Jason Wadden
Lauren Butti
Goodmans LLP
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979-2211
Facsimile: (416) 979-1234

Jennifer Stam
Derrick Tay
Peter Choe
Graham Smith
Gowling Lafleur Henderson LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Telephone: (416) 216-4000
Facsimile: (416) 216-3930

Alan Merskey
Norton Rose Canada LLP
TD Waterhouse Tower, Suite 2300
79 Wellington Street West, P.O. Box 128
Toronto, ON M5K 1H1
Canada
Telephone: (416) 216-4805

Facsimile: (416) 216-3930

**Official Committee of Unsecured Creditors**

Fred Hodara
David Botter
Robert A. Johnson
Abid Qureshi
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
United States of America
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
Dentons Canada LLP
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

7.    **(a)  Nature of the proceedings**          Bankruptcy proceeding

      **(b)  Summary of complaint**

    This action, captioned *In re Nortel Networks Inc., et al.*, Case No. 09-10138 (KG), is a

bankruptcy proceeding pending before the Requesting Court.  On 14 January 2009 (the "<u>Petition</u>

Date"), the U.S. Debtors,[1] with the exception of NN CALA, each filed a voluntary petition for

relief in the Requesting Court under chapter 11 of the United States Bankruptcy Code.  NN

CALA filed its petition on 14 July 2009 [D.I. 1098].  NNI is incorporated in the United States in

the State of Delaware.  Other parties with interests related to the U.S. Debtors include an Official

Committee of Unsecured Creditors of the U.S. Debtors (the "U.S. Committee").

　　　　Also on the Petition Date, the Nortel group's ultimate corporate parent, Nortel Networks

Corporation ("NNC"), its operating subsidiary Nortel Networks Limited ("NNL"), and certain of

their Canadian affiliates (collectively, the "Canadian Debtors") filed an application with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada), seeking relief from their creditors, and a monitor, Ernst & Young

Inc. (the "Monitor"), was appointed by the Canadian Court.  Other parties with interests related

to the Canadian Debtors include a Canadian Creditors Committee (the "CCC") and former

directors and officers of the Canadian Debtors (the "Directors and Officers").

　　　　On the same date, upon the request of Nortel Networks UK Limited ("NNUK") and

eighteen of its affiliates from Europe, the Middle East, and Africa (collectively, the "EMEA

Debtors"), which included NNUK's French affiliate Nortel Networks S.A. ("NNSA"),[2] the High

---

1.    The debtors in these chapter 11 cases (the "U.S. Debtors") are:  Nortel Networks Inc. ("NNI"); Nortel Networks
      Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros, Inc.; Sonoma Systems;
      Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks
      Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks
      International Inc.; Northern Telecom International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel
      Networks (CALA) Inc. ("NN CALA").

2.    In addition to NNUK and NNSA, orders of administration were sought with respect to: Nortel Networks
      (Ireland) Limited ("NN Ireland"); Nortel GmbH ("NN Germany"); Nortel Networks (Austria) GmbH ("NN
      Austria"); Nortel Networks AB ("NN Sweden"); Nortel Networks Engineering Service Kft ("NN Hungary");
      Nortel Networks France S.A.S. ("NN France SAS"); Nortel Networks Hispania, S.A. ("NN Spain"); Nortel
      Networks N.V. ("NN Belgium"); Nortel Networks Oy ("NN Finland"); Nortel Networks Polska Sp. z.o.o. ("NN
      Poland"); Nortel Networks Portugal S.A. ("NN Portugal"); Nortel Networks Romania SRL ("NN Romania");
      Nortel Networks S.p.A. ("NN Italy"); Nortel Networks Slovensko, s.r.o. ("NN Slovakia"); Nortel Networks,

Court of Justice of England and Wales (the "English Court") placed the EMEA Debtors into administration (the "English Proceedings"), and appointed individuals from Ernst & Young LLP as administrators (collectively, the "Joint Administrators").[3]  On 28 May 2009, NNSA entered secondary insolvency proceedings in the Commercial Court of Versailles and Cosmé Rogeau was appointed as the French Liquidator.  NNSA is a French corporation with its former registered office at Centre d'Affaires Parc Lumiere, 46 Avenue des Freres Lumiere, F78190 Trappes, France.

Pursuant to an Order Approving Allocation Protocol dated 3 April 2013 [D.I. 9947] entered by the Requesting Court and a corresponding endorsement by the Canadian Court on the same date, the Requesting Court and the Canadian Court (together, the "Courts") will hold joint hearings commencing on or after 31 March 2014 to decide certain issues, including principally: (i) the allocation of proceeds from sales of the assets of the Nortel group among the U.S. Debtors, Canadian Debtors, and EMEA Debtors (the "Allocation Dispute"); (ii) claims filed against the U.S. Debtors and Canadian Debtors by NNUK, other EMEA Debtors, certain affiliates of the EMEA Debtors, and the French Liquidator (the "EMEA Claims"); and (iii) claims filed against the U.S. Debtors and Canadian Debtors relating to NNUK's pension fund (the "U.K. Pension Claims") by the Nortel Networks UK Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "U.K. Pension Trustee"), and the Board of the Pension Protection Fund, a privately funded insurer (the "PPF," and together with the U.K. Pension Trustee, the "U.K. Pension Claimants").

---

s.r.o. ("NN Czech Rep."); Nortel Networks International Finance & Holding B.V. ("NNIF"); and Nortel Networks B.V. ("NN Holland").

3.    The Joint Administrators for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators for Nortel Networks (Ireland) Limited are:  Alan Robert Bloom and David Martin Hughes.

As part of the upcoming joint hearings, each party submitted to the Requesting Court an allocation position detailing its proposed methodology for determining the allocation of proceeds from sales of the assets of the Nortel group.  The parties' allocation positions put at issue a variety of factors, including but not limited to the significance of intercompany agreements governing transfer pricing to the estates' respective entitlement to Nortel intellectual property; the proportion of Nortel's revenue and cash flow generated by the U.S. Debtors, Canadian Debtors, and EMEA Debtors; the location, nature, and results of Nortel's research and development activities and the proportional contribution of the estates to such activities; pre- and post-petition asset sales; and the locus of other fixed and intangible Nortel assets, including customer relationships.[4]

The EMEA Claims and U.K. Pension Claims likewise put at issue a variety of factors, including but not limited to the solvency of the various EMEA Debtors during the years 2000 through 2008; whether NNUK had sufficient resources to fund the Nortel Networks UK Pension Plan and whether it is reasonable to impose upon the Canadian Debtors and U.S. Debtors an obligation to make up for any shortfall; and whether the EMEA Debtors were harmed by various

---

4.  The Core Parties' opening and responsive allocation positions are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers indicated:  allocation position of the Joint Administrators and EMEA Debtors [D.I. 10536]; allocation position of the U.S. Debtors and U.S. Committee [D.I. 10537]; allocation position of the CCC [D.I. 10538]; allocation position of the U.K. Pension Claimants [D.I. 10539]; allocation position of the Bondholders [D.I. 10540]; allocation position of the Monitor and Canadian Debtors [D.I. 10543]; joinder of the Bank of New York Mellon in the allocation position of the U.S. Debtors and U.S. Committee [D.I. 10547]; joinder of Law Debenture Trust Company of New York in the allocation position of the U.S. Debtors and U.S. Committee and in the allocation position of the Bondholders [D.I. 10548]; joinder of Wilmington Trust, National Association, in the allocation position of the Monitor and Canadian Debtors and in the allocation position of the CCC [D.I. 10563]; responsive allocation submission of the Joint Administrators and EMEA Debtors [D.I. 10687]; responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10690]; joinder of Law Debenture Trust Company of New York in the responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10691]; responsive allocation submission of Wilmington Trust, National Association [D.I. 10692]; responsive allocation submission of the U.K. Pension Claimants [D.I. 10693]; responsive allocation submission of the Bondholders [D.I. 10694]; responsive allocation submission of the CCC [D.I. 10695]; responsive allocation submission of the Monitor and Canadian Debtors [D.I. 10696].

11

Nortel arrangements and intercompany transactions, including Nortel's transfer pricing system, a

transaction known as Project Swift and the accompanying reorganization of Nortel, certain

intercompany loans and dividends, and sales of Nortel assets that preceded the Petition Date.

The EMEA Claims and U.K. Pension Claims allege that the U.S. Debtors and Canadian Debtors

are liable for these transactions because they dominated or controlled the EMEA Debtors or were

otherwise culpable for breaches of duties owed to the EMEA Debtors, because the transactions

resulted in unjust enrichment, or for other reasons.[5]

All of the parties (including NNUK, NNSA, the other EMEA Debtors, and the U.K.

Pension Claimants) are currently engaged in the process of obtaining evidence by order of the

Requesting Court and Canadian Court in anticipation of the joint hearings.

The evidence sought from the person identified below may be material to the resolution

of these factual disputes.

| **(c) Summary of defense and counterclaims** | The U.S. Debtors, U.S. Committee, Monitor, and Canadian Debtors have objected to the EMEA Claims and U.K. Pension Claims on a variety of grounds, claiming that the U.S. Debtors and Canadian Debtors did not owe duties to the EMEA Debtors, no duties were breached, no assistance was provided in respect of any such breaches, there was no unjust enrichment or other factual basis for the claims, the claims are barred by various |

---

5. The operative claims filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers or claim numbers indicated: amended claims of NNUK [C.I. 7786]; amended claims of NNSA's court-appointed liquidator [C.I. 7784]; amended claims of NNSA [C.I. 7785]; amended claims of NNIF [C.I. 7776]; amended claims of NNIR [C.I. 7774]; amended claims of NN Italy [C.I. 7775]; amended claims of NN Spain [C.I. 7787]; amended claims of NN Holland [C.I. 7780]; amended claims of NN Belgium [C.I. 7781]; amended claims of NN Poland [C.I. 7754]; amended claims of NN Switzerland [C.I. 7752]; amended claims of NN Germany [C.I. 7778]; amended claims of NN Portugal [C.I. 7751]; amended claims of NN Czech Rep. [C.I. 7782]; amended claims of NN Austria [C.I. 7755]; amended claims of NN Sweden [C.I. 7779]; amended claims of NN Hungary [C.I. 7756]; amended claims of NN Slovakia [C.I. 7750]; amended claims of NN Norway [C.I. 7762]; amended claims of NN Romania [C.I. 7783]; amended claims of NN Finland [C.I. 7753]; amended claims of the Nortel Networks U.K. Pension Trust Limited and Board of the Pension Protection Fund [C.I. 8357, 8358]. The operative claims filed in the Canadian Court are publicly available at http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

|  | |
|---|---|
|  | equitable and other doctrines, the claims should be disallowed as a matter of comity, and other reasons.[6] |
| **(d)  Other necessary information or documents** | All such documents and statements designated as such shall be treated by counsel to the parties in this lawsuit as "Confidential" or "Highly Confidential" pursuant to the Order Entering a Protective Order entered on 11 June 2013 [D.I. 10805], as amended, such that designated documents may only be disclosed to attorneys for the parties, third party witnesses, the Commissioner, and the Courts, under specific confidentiality restrictions, absent further order of the Courts. |
| **8.    (a)  Evidence to be obtained or other judicial act to be performed** | An examination is requested of Mr. Michel Clément (the "<u>Witness</u>"), Director for NNSA from 2000 to 2010, NN Italy from 2007 to 2010, NN Spain from 2009 to 2010, NN France SAS from 2002 to 2010, and Nortel Networks South Africa (Proprietary) Limited ("<u>NN South Africa</u>") from 2006 to 2009. |

**(b)  Purpose of the evidence or judicial action sought**

As a former Director of NNSA, NN Italy, NN Spain, NN France SAS, and NN South Africa, the Witness is likely to have knowledge relevant to the parties' allocation positions, claims, and defenses, as described above.

As a former Director of NNSA, NN Italy, NN Spain, NN France SAS, and NN South Africa, the Witness is likely to have knowledge relevant to the EMEA Claims.  The factual predicates of the Claims brought by NNSA and the other EMEA Debtors – including the alleged unfairness of Nortel's transfer pricing system, Project Swift, the accompanying reorganization of

---

6.   The objections of the U.S. Debtors and U.S. Committee filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project under the docket numbers indicated:  Joint Omnibus Objection to the Remaining Amended Claims Filed by the EMEA Claimants [D.I. 10521]; Joint Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and Board of the Pension Protection Fund [D.I. 10519].  Objections to the claims filed in the Canadian Court are publicly available at: http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

NNIF, intercompany loans, and pre-petition asset sales – relate to the time period of the Witness's directorships.  The EMEA Claims and U.K. Pension Claims also allege that the EMEA Debtors' directors – including those of NNSA – breached their fiduciary duties in connection with those transactions.

Further, the EMEA Claims allege, *inter alia*, that the U.S. Debtors and Canadian Debtors are liable to the EMEA Debtors in connection with the above transactions because the U.S. Debtors and Canadian Debtors dominated or controlled the decision-making of the EMEA Debtors.  In connection with their application for initial orders from the English Court placing the EMEA Debtors into administration, the EMEA Debtors submitted sworn witness statements, including from the Witness (the "Clément Witness Statement"), which included various assertions relating to control over the EMEA Debtors.  The U.S. Debtors have argued that the Clément Witness Statement is inconsistent with the assertions in the EMEA Claims of U.S. or Canadian domination or control.  As a former Director of NNSA, the Witness may have knowledge relevant to the issue of alleged U.S. or Canadian domination or control.

Based upon these and other considerations, the U.S. Debtors and Canadian Debtors have designated, and the EMEA Debtors have cross-designated, the Witness to be examined.  The Witness has indicated that he is willing to appear voluntarily for his deposition.

By order of the Requesting Court, Alexander B. Blumrosen, Avocat au Barreau de Paris, Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France, has been appointed as the Commissioner to take evidence and testimony in the above-captioned action in France, pending the approval of the Ministère de la Justice.

| | |
|---|---|
| 9.    **Identity and address of any person to be examined** | Mr. Michel Clément<br>40 Rue Marius Aufan<br>Levallois Perret, FR 92300 |

**10.     Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court, on the facts within the Witness's knowledge that relate to the following subjects:

a.    The organization, management, and operation of the Nortel group, including the tax and treasury functions, accounting, cash management, planning, budgeting, research and development, sales, purchasing, manufacturing, outsourcing, and third-party intellectual property ownership and licensing;

b.    The history, functioning, and organization of Nortel's "matrix" corporate structure, including how financial reporting was conducted and the roles within the corporate structure of the EMEA Debtors, the U.S. Debtors, and the Canadian Debtors;

c.    The management, operations, and governance of the Nortel group, and each of NNSA, NN Italy, NN Spain, NN France SAS, and the other EMEA Debtors, including but not limited to the powers, actions, and control of the boards of directors and senior officers of NNL, NNC, NNI, NNSA, NN Italy, NN Spain, NN France SAS, and the other EMEA Debtors;

d.    The identity and location of the officers or other senior management for NNSA, NN Italy, NN Spain, NN France SAS, and the other EMEA Debtors involved in finance, control, tax, treasury, and banking functions, human resources, operations, sales and dealings with customers and suppliers, and the settlement of

15

intercompany accounts;

e.    The statements and factual assertions contained in the EMEA Debtors' chapter 15
      petitions, the Clément Witness Statement, and the witness statements submitted
      by EMEA Director Sharon Rolston;

f.    The factual bases underlying recognition of the English Proceedings as foreign
      main proceedings as to the EMEA Debtors;

g.    The allegations made in the EMEA Claims to the effect that NNC and/or NNL
      controlled the Nortel Group's operations, and that NNI participated in or assisted
      such control, including but not limited to control of group tax, transfer pricing,
      and treasury functions;

h.    The allegations made in the EMEA Claims that the de jure directors of NNSA,
      NN Italy, NN Spain, NN France SAS, and the other EMEA Debtors breached
      their fiduciary duties or otherwise failed to act properly, any claims threatened or
      asserted or litigation commenced against any of the current or former directors or
      officers of NNSA, NN Italy, NN Spain, NN France SAS, or the other EMEA
      Debtors related to their breaches of fiduciary duties or any of the matters alleged
      in the EMEA Claims, and any communications with such directors regarding
      those proceedings or the subject matter of those proceedings;

i.    Any policy, practice, or control concerning directors' and officers' fiduciary or
      other duties under relevant law;

j.    The profitability, revenue, expenses, cash flow, and value of, and accounting for,
      the various Nortel entities and Lines of Business, including ownership and
      valuation of tangible assets associated with each Line of Business;

k.  Debt financing transactions and credit facilities;

l.  Pre-petition Asset Sales involving NNSA, NN Italy, NN Spain, NN France SAS, or the other EMEA Debtors and the classification of assets and allocation of proceeds therefrom, including but not limited to related planning, negotiations, discussions, consideration, approvals, and involvement by the boards of directors or personnel of NNSA, NN Italy, NN Spain, NN France SAS, or the other EMEA Debtors, or any tax authority, and any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect thereto, and the factual basis for the allegations in the EMEA Claims concerning such sales;

m.  Business acquisitions by Nortel, the significance of intellectual property in acquisitions as the value driver for the transactions, and the integration of acquired businesses into Nortel;

n.  Pre-petition restructurings and associated costs, including the decision-making process regarding such restructurings and the determination of which entities bore associated costs;

o.  Pre-petition vendor financing;

p.  Ownership (including beneficial ownership), registration, maintenance, enforcement, valuation, amortization, business and/or strategic importance, licensing (intercompany, related party, and third party), acquisition, and sale of Nortel's intellectual property and associated rights;

q.  Intellectual property-related costs and revenue streams, allocation of such costs and revenue streams, and accounting therefor;

17

r.    The organization, make-up, and activity of Nortel's intellectual property-related legal and business teams;

s.    Valuations or analyses commissioned or conducted, whether pre-petition or post-petition, concerning the value of Nortel's intellectual property, business lines, research and development efforts, or other business-related tangibles or intangibles in any jurisdiction or for any subsidiary;

t.    Agreements and practices among Nortel entities in respect of intellectual property and rights and obligations in or to intellectual property;

u.    Research and development planning, strategy, decision-making, and policies;

v.    Nortel companies' relative and respective contributions to research and development of intellectual property;

w.    The negotiation, drafting, approval, and operation of the Master Research and Development Agreement ("MRDA") and its subsequent amendments, the Residual Profit Split Method ("RPSM"), previous cost-sharing arrangements, related agreements, Nortel's transfer pricing system generally, including its development and implementation, and communications and filings with tax authorities regarding same;

x.    Advance Pricing Arrangements/Agreements ("APAs") and communications, filings with tax authorities, and any settlement in connection with any APAs;

y.    The involvement by the boards of directors or personnel of NNSA, NN Italy, NN Spain, NN France SAS, or the other EMEA Debtors in Nortel's transfer pricing arrangements or agreements, any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect of

transfer pricing, the role and responsibilities of the auditors of NNSA, NN Italy,

NN Spain, NN France SAS, or the other EMEA Debtors with respect to transfer

pricing, and the factual basis for the allegations regarding transfer pricing made in

the EMEA Claims;

z.      The manner in which Nortel entities represented themselves to investors, credit

agencies, governments, tax authorities, auditors, or other third parties;

aa.     The outsourcing of Nortel's manufacturing business and related sale or

outsourcing agreements;

bb.     The accounting for and distribution of revenue and costs related to Nortel Lines of

Business and any other Nortel revenue-generating activity;

cc.     Sales, contracts, and dealings with customers or suppliers, including policies,

procedures, and practices used to determine which Nortel Entity received revenue

from any customer or supplier relationships;

dd.     The negotiation and drafting of the Interim Funding and Settlement Agreement

("IFSA") and Final Canadian Funding and Settlement Agreement ("FCFSA");

ee.     The negotiation, deal structure, and closing of post-petition sales of Nortel assets;

ff.     The "cash to Canada" policy referenced in the EMEA Claims;

gg.     Project Swift, the alleged extraction of cash from various Nortel subsidiaries prior

to Project Swift, the accompanying reorganization of NNIF, and the allegations in

the EMEA Claims relating thereto;

hh.     Intercompany loans, intercompany dividends, and any other intercompany

financing and/or borrowing of money among the Nortel entities, and the

allegations in the EMEA Claims relating thereto;

ii.    The allegations in the EMEA Claims that NNI, NNC, or NNL benefitted from Nortel policies, transactions, or other occurrences that harmed NNSA, NN Italy, NN Spain, NN France SAS, or the other EMEA Debtors;

jj.    Any transactions, agreements, or benefits received by NN CALA from the EMEA Debtors that either harmed the EMEA Debtors or for which the EMEA Debtors were not fairly compensated;

kk.   The financial condition of NNSA, NN Italy, NN Spain, NN France SAS, or the other EMEA Debtors;

ll.    The preparation, approval, and auditing of the financial statements of NNSA, NN Italy, NN Spain, NN France SAS, or the other EMEA Debtors;

mm.  Nortel human resources, including employee compensation, transfers, bonuses, benefit plans, pensions, hires, downsizing, and terminations;

nn.   The trading debt claims alleged in the EMEA Claims;

oo.   Any additional claims in the EMEA Claims not already addressed by these deposition topics, and the factual basis for all such claims;

pp.   The alleged factual basis for any defenses or positions taken by the U.S. Debtors and the Canadian Debtors in response to the EMEA Claims; and

qq.   Any other matter relevant to the positions, claims, and defenses asserted by the Core Parties before the Requesting Court and Canadian Court, including but not limited to those contained in the filings referenced in footnotes 5 and 6.

| | | |
|---|---|---|
| **11.** | **Documents or other property to be inspected** | None. |
| **12.** | **Any requirement that the evidence be given on oath or affirmation and any special form to be used** | The Witness shall testify under oath. |

**13.    Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or summary, cross-examination, etc.)**

By order of the Requesting Court, Alexander B. Blumrosen has been appointed as the Commissioner to take evidence and testimony in the above-captioned action in France, pending the approval of the Ministère de la Justice.  The Commissioner will provide reasonable notice to the Witness as required by the Hague Convention.

It is requested that the legal representatives of the U.S. Debtors and the U.S. Committee, the legal representatives of the Monitor and Canadian Debtors, the legal representatives of the EMEA Debtors and U.K. Pension Claimants, and the legal representatives of the Witness, if any, be permitted to conduct the examination of the Witness in France.  The questions will be created and asked by counsel for the party conducting the deposition and any other party attending the deposition who may desire to ask questions, without opportunity for prior review of the questions (including the counsel listed in paragraph 6 above and any other counsel designated by the parties attending the deposition).  The Commissioner will administer the deposition, but will not rule upon counsel's questions or conduct any of the questioning himself.

The Witness has agreed to provide testimony orally in English with no interpreter, with a transcript only in English.  The Witness will then be provided with a copy of the transcript in English and a reasonable time and opportunity to correct any errors in the transcript.

In accordance with Articles 3(i) and 9 of the Hague Convention, the Requesting Court requests that the examination be executed in compliance with American proceedings rules.  The Witness would be posed questions in accordance with United States Federal Rules of Civil Procedure, specifically F.R.C.P. 30.  In accordance with F.R.C.P. 30(b)(1), attorneys for all parties must be provided notice of the examination and an opportunity to be present.  The party

seeking the testimony is obligated under U.S. law to notify the attorneys for any other party to

the case of the time and place of the examination.  Pursuant to F.R.C.P. 30(b)(3), it is requested

that the testimony of each witness be recorded by both stenographic and video means.  When a

party or parties desire that testimony be recorded by stenographic and video means, they are

obligated under U.S. law to provide for the presence of the stenographer (court reporter) and

videographer and to bear the costs associated with their work.  The parties would bear the costs

of the recordings as well as the costs associated with providing a certified interpreter.  The

Witness would be entitled to be represented by an attorney present during the examination.

The Requesting Court respectfully requests that the representatives of the EMEA Debtors

and U.K. Pension Claimants be allotted a total of three hours and twenty minutes for their

examination, that the representatives of the Monitor and Canadian Debtors be allotted a total of

five hours and forty minutes for their examination, and that the representatives of the U.S.

Debtors and U.S. Committee be allotted a total of five hours for their examination.  Counsel for

these parties are available to conduct the examination on 10 December 2013 and 11 December

2013, the dates on which the Witness has agreed to appear voluntarily for examination.

| | | |
|---|---|---|
| **14.** | **Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified**[7] | Not applicable. |
| **15.** | **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request** | None. |
| **16.** | **Specification of privilege or duty to refuse to give evidence under the law** | The Witness may refuse to answer any question asked during the examination if such |

---

7. For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by any party to the jurisdiction of the courts of France, nor are the legal representatives of any party instructed to accept service of any proceedings in France.

|  |  |
|---|---|
| **of the State of origin** | answer would subject the Witness to a real and appreciable danger of criminal liability in the United States, or would disclose a privileged communication. |
| **17.** **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by** | EMEA Debtors<br>c/o Bruno Basuyaux<br>Herbert Smith Freehills Paris LLP<br>66, avenue Marceau<br>75008 Paris<br>France |

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the costs of the Commissioner, and the costs of the transcript of the evidence will be initially borne by the EMEA Debtors.  The payment of any such fees and costs is without prejudice to the right of the EMEA Debtors to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.


DATE OF REQUEST                    _____


SIGNATURE AND SEAL OF THE          _____
REQUESTING AUTHORITY

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re

NORTEL NETWORKS INC., *et al.*,

Debtors.

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO**
**CHAPTER II OF THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE**
**TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS:**
**DEPOSITION OF PASCAL DEBON**

A request is hereby made by the United States Bankruptcy Court for the District

of Delaware to the Ministère de la Justice, Direction des Affaires Civiles et du Sceau, Bureau de

l'entraide civile et commerciale internationale (D3), 13, Place Vendôme, 75042 Paris Cedex 01,

France (the "Ministère de la Justice"), for assistance in obtaining evidence to be used in a civil

proceeding before the Court in the above-captioned action.  This Court (the "Requesting Court")

has determined that it would further the interests of justice if the persons identified herein were

deposed, under oath, as to their knowledge of the facts relevant to the issues of this action.  This

request is made pursuant to Chapter II of the Hague Convention of 18 March 1970 on the Taking

of Evidence in Civil or Commercial Matters (the "Hague Convention").

In conformity with Article 17 of the Hague Convention, the Requesting Court

presents its compliments to the Ministère de la Justice, and has the honor of requesting assistance

in obtaining approval for a Commissioner to take evidence and testimony with the consent of the

parties and the French witness identified herein in France pursuant to Chapter II of the Hague

Convention.  The proposed Commissioner, Alexander B. Blumrosen, is an attorney at law

resident in France and is qualified to serve as a Commissioner in this matter.  Mr. Blumrosen has

advised the parties that he is willing to serve as a Commissioner in this matter, if appointed.

Attached hereto is the Order of the Requesting Court appointing Mr. Blumrosen as

Commissioner, pending the approval of the Ministère de la Justice.  Mr. Blumrosen's office

address is as follows:  Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France.  Mr.

Blumrosen's telephone number is (01) 43 18 80 80 and his fax number is (01) 43 18 80 90.  The

parties have chosen this method to take evidence and testimony in the interests of judicial

economy and efficiency, as the French witness identified herein has agreed to appear voluntarily.

| 1. | **Sender** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |
|---|---|---|
| 2. | **Central Authority of the Requested State** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau de l'entraide civile et commerciale internationale (D3)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
| 3. | **Person to whom the executed request is to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |

4.     **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | **Date** | Examination to occur on 28 October 2013 and 29 October 2013 at Cleary Gottlieb Steen & Hamilton LLP, 12, rue de Tilsitt, 75008 Paris, France, if it is not possible to hold the deposition at the United States Embassy. |
|---|---|---|
| | **Reason for urgency** | The joint hearings for which the evidence will |

be used will begin on or after 31 March 2014. The parties' pretrial examinations must be concluded by 13 December 2013.

IN CONFORMITY WITH CHAPTER II, ARTICLE 17 OF THE HAGUE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

5.  **(a)  Requesting judicial authority**

The Honorable Kevin Gross
United States Bankruptcy Court
District of Delaware
824 Market Street North, 3rd Floor
Wilmington, Delaware 19801
United States of America

**(b)  To the competent authority of**

Ministère de la Justice
Direction des Affaires Civiles et du Sceau
Bureau de l'entraide civile et commerciale internationale (D3)
13, Place Vendôme
75042 Paris Cedex 01
France

**(c)  Names of the case and any identifying number**

*In re Nortel Networks Inc., et al* – Case No. 09-10138 (KG)
United States Bankruptcy Court for the District of Delaware

6.  **Names and addresses of the parties and their representatives**

**(a)  Plaintiff** (Claimants)

**Joint Administrators and EMEA Debtors**

**Representatives**

Derek J.T. Adler
Neil J. Oxford
Fara Tabatabai
Charles H. Huberty
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
United States of America
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Edwin J. Harron
John T. Dorsey

3

Jamie Luton Chapman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Robin Schwill
Sean R. Campbell
Davies Ward Phillips & Vineberg LLP
155 Wellington Street West
Toronto, ON M5V 3J7
Canada
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

Matthew P. Gottlieb
Tracy Wynne
Lax O'Sullivan Scott Lisus LLP
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

John Whiteoak
James Norris-Jones
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2HS
United Kingdom

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
United States of America
Telephone: (212) 728-8000

Facsimile: (212) 728-8111

Charlene D. Davis
Justin Alberto
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
United States of America
Telephone: (302) 655-5000
Facsimile: (212) 658-6395

David Ward
William Burden
Lara Jackson
Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

Angela Dimsdale Gill
John Tillman
Matthew Bullen
Hogan Lovells International LLP
Atlantic House
Holborn Viaduct
London EC1A 2FG
United Kingdom

**(b)  Defendants** (U.S. Debtors)          **Nortel Networks Inc.,** *et al.*

**Representatives**                          Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
United States of America
Telephone: (212) 225-2000

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
United States of America
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
Torys LLP
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2
Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

**(c)  Other Parties**                    **The Monitor and Canadian Debtors**

**Representatives**                       Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
James Barabas
Michael Sadowitz
Jacob S. Pultman
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
United States of America
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

David Por
Allen & Overy LLP
52 avenue Hoche
CS 90005
75379 Paris Cedex 08
Paris 75379
France

Mary F. Caloway
Kathleen A. Murphy

Buchanan Ingersoll & Rooney PC
1105 North Market Street
Suite 1900
Wilmington, Delaware 19801
United States of America
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Jessica Kimmel
Peter Ruby
Alan Mark
Jason Wadden
Lauren Butti
Goodmans LLP
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979-2211
Facsimile: (416) 979-1234

Jennifer Stam
Derrick Tay
Peter Choe
Graham Smith
Gowling Lafleur Henderson LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Telephone: (416) 216-4000
Facsimile: (416) 216-3930

Alan Merskey
Norton Rose Canada LLP
TD Waterhouse Tower, Suite 2300
79 Wellington Street West, P.O. Box 128
Toronto, ON M5K 1H1
Canada
Telephone: (416) 216-4805

Facsimile: (416) 216-3930

**Official Committee of Unsecured Creditors**

Fred Hodara
David Botter
Robert A. Johnson
Abid Qureshi
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
United States of America
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
Dentons Canada LLP
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

7.    **(a)  Nature of the proceedings**        Bankruptcy proceeding

   **(b)  Summary of complaint**

This action, captioned *In re Nortel Networks Inc., et al.*, Case No. 09-10138 (KG), is a

bankruptcy proceeding pending before the Requesting Court.  On 14 January 2009 (the "<u>Petition</u>

Date"), the U.S. Debtors,[1] with the exception of NN CALA, each filed a voluntary petition for

relief in the Requesting Court under chapter 11 of the United States Bankruptcy Code.  NN

CALA filed its petition on 14 July 2009 [D.I. 1098].  NNI is incorporated in the United States in

the State of Delaware.  Other parties with interests related to the U.S. Debtors include an Official

Committee of Unsecured Creditors of the U.S. Debtors (the "U.S. Committee").

On the Petition Date, the Nortel group's ultimate corporate parent, Nortel Networks

Corporation ("NNC"), its operating subsidiary Nortel Networks Limited ("NNL"), and certain of

their Canadian affiliates (collectively, the "Canadian Debtors") filed an application with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada), seeking relief from their creditors, and a monitor, Ernst & Young

Inc. (the "Monitor"), was appointed by the Canadian Court.  Other parties with interests related

to the Canadian Debtors include a Canadian Creditors Committee (the "CCC") and former

directors and officers of the Canadian Debtors (the "Directors and Officers").

On the same date, upon the request of Nortel Networks UK Limited ("NNUK") and

eighteen of its affiliates from Europe, the Middle East, and Africa (collectively, the "EMEA

Debtors"), which included NNUK's French affiliate Nortel Networks S.A. ("NNSA"),[2] the High

---

1.  The debtors in these chapter 11 cases (the "U.S. Debtors") are:  Nortel Networks Inc. ("NNI"); Nortel Networks
Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros, Inc.; Sonoma Systems;
Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks
Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks
International Inc.; Northern Telecom International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel
Networks (CALA) Inc. ("NN CALA").

2.  In addition to NNUK and NNSA, orders of administration were sought with respect to: Nortel Networks
(Ireland) Limited ("NN Ireland"); Nortel GmbH ("NN Germany"); Nortel Networks (Austria) GmbH ("NN
Austria"); Nortel Networks AB ("NN Sweden"); Nortel Networks Engineering Service Kft ("NN Hungary");
Nortel Networks France S.A.S. ("NN France SAS"); Nortel Networks Hispania, S.A. ("NN Spain"); Nortel
Networks N.V. ("NN Belgium"); Nortel Networks Oy ("NN Finland"); Nortel Networks Polska Sp. z.o.o. ("NN
Poland"); Nortel Networks Portugal S.A. ("NN Portugal"); Nortel Networks Romania SRL ("NN Romania");
Nortel Networks S.p.A. ("NN Italy"); Nortel Networks Slovensko, s.r.o. ("NN Slovakia"); Nortel Networks,

Court of Justice of England and Wales (the "English Court") placed the EMEA Debtors into administration (the "English Proceedings"), and appointed individuals from Ernst & Young LLP as administrators (collectively, the "Joint Administrators").[3]  On 28 May 2009, NNSA entered secondary insolvency proceedings in the Commercial Court of Versailles and Cosmé Rogeau was appointed as the French Liquidator.  NNSA is a French corporation with its former registered office at Centre d'Affaires Parc Lumiere, 46 Avenue des Freres Lumiere, F78190 Trappes, France.

Pursuant to an Order Approving Allocation Protocol dated 3 April 2013 [D.I. 9947] entered by the Requesting Court and a corresponding endorsement by the Canadian Court on the same date, the Requesting Court and the Canadian Court (together, the "Courts") will hold joint hearings commencing on or after 31 March 2014 to decide certain issues, including principally: (i) the allocation of proceeds from sales of the assets of the Nortel group among the U.S. Debtors, Canadian Debtors, and EMEA Debtors (the "Allocation Dispute"); (ii) claims filed against the U.S. Debtors and Canadian Debtors by NNUK, other EMEA Debtors, certain affiliates of the EMEA Debtors, and the French Liquidator (the "EMEA Claims"); and (iii) claims filed against the U.S. Debtors and Canadian Debtors relating to NNUK's pension fund (the "U.K. Pension Claims") by the Nortel Networks UK Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "U.K. Pension Trustee"), and the Board of the Pension Protection Fund, a privately funded insurer (the "PPF," and together with the U.K. Pension Trustee, the "U.K. Pension Claimants").

---

s.r.o. ("NN Czech Rep."); Nortel Networks International Finance & Holding B.V. ("NNIF"); and Nortel Networks B.V. ("NN Holland").

3.   The Joint Administrators for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators for Nortel Networks (Ireland) Limited are:  Alan Robert Bloom and David Martin Hughes.

As part of the upcoming joint hearings, each party submitted to the Requesting Court an

allocation position detailing its proposed methodology for determining the allocation of proceeds

from sales of the assets of the Nortel group.  The parties' allocation positions put at issue a

variety of factors, including but not limited to the significance of intercompany agreements

governing transfer pricing to the estates' respective entitlement to Nortel intellectual property;

the proportion of Nortel's revenue and cash flow generated by the U.S. Debtors, Canadian

Debtors, and EMEA Debtors; the location, nature, and results of Nortel's research and

development activities and the proportional contribution of the estates to such activities; pre- and

post-petition asset sales; and the locus of other fixed and intangible Nortel assets, including

customer relationships.[4]

The EMEA Claims and U.K. Pension Claims likewise put at issue a variety of factors,

including but not limited to the solvency of the various EMEA Debtors during the years 2000

through 2008; whether NNUK had sufficient resources to fund the Nortel Networks UK Pension

Plan and whether it is reasonable to impose upon the Canadian Debtors and U.S. Debtors an

obligation to make up for any shortfall; and whether the EMEA Debtors were harmed by various

---

4. The Core Parties' opening and responsive allocation positions are publicly available at
   http://dm.epiq11.com/NNI/Project, under the docket numbers indicated:  allocation position of the Joint
   Administrators and EMEA Debtors [D.I. 10536]; allocation position of the U.S. Debtors and U.S. Committee
   [D.I. 10537]; allocation position of the CCC [D.I. 10538]; allocation position of the U.K. Pension Claimants
   [D.I. 10539]; allocation position of the Bondholders [D.I. 10540]; allocation position of the Monitor and
   Canadian Debtors [D.I. 10543]; joinder of the Bank of New York Mellon in the allocation position of the U.S.
   Debtors and U.S. Committee [D.I. 10547]; joinder of Law Debenture Trust Company of New York in the
   allocation position of the U.S. Debtors and U.S. Committee and in the allocation position of the Bondholders
   [D.I. 10548]; joinder of Wilmington Trust, National Association, in the allocation position of the Monitor and
   Canadian Debtors and in the allocation position of the CCC [D.I. 10563]; responsive allocation submission of
   the Joint Administrators and EMEA Debtors [D.I. 10687]; responsive allocation submission of the U.S. Debtors
   and U.S. Committee [D.I. 10690]; joinder of Law Debenture Trust Company of New York in the responsive
   allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10691]; responsive allocation submission
   of Wilmington Trust, National Association [D.I. 10692]; responsive allocation submission of the U.K. Pension
   Claimants [D.I. 10693]; responsive allocation submission of the Bondholders [D.I. 10694]; responsive
   allocation submission of the CCC [D.I. 10695]; responsive allocation submission of the Monitor and Canadian
   Debtors [D.I. 10696].

Nortel arrangements and intercompany transactions, including Nortel's transfer pricing system, a transaction known as Project Swift and the accompanying reorganization of Nortel, certain intercompany loans and dividends, and sales of Nortel assets that preceded the Petition Date. The EMEA Claims and U.K. Pension Claims allege that the U.S. Debtors and Canadian Debtors are liable for these transactions because they dominated or controlled the EMEA Debtors or were otherwise culpable for breaches of duties owed to the EMEA Debtors, because the transactions resulted in unjust enrichment, or for other reasons.[5]

All of the parties (including NNUK, NNSA, the other EMEA Debtors, and the U.K. Pension Claimants) are currently engaged in the process of obtaining evidence by order of the Requesting Court and Canadian Court in anticipation of the joint hearings.

The evidence sought from the person identified below may be material to the resolution of these factual disputes.

| | |
|---|---|
| **(c) Summary of defense and counterclaims** | The U.S. Debtors, U.S. Committee, Monitor, and Canadian Debtors have objected to the EMEA Claims and U.K. Pension Claims on a variety of grounds, claiming that the U.S. Debtors and Canadian Debtors did not owe duties to the EMEA Debtors, no duties were breached, no assistance was provided in respect of any such breaches, there was no unjust enrichment or other factual basis for the claims, the claims are barred by various |

---

5.   The operative claims filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers or claim numbers indicated:  amended claims of NNUK [C.I. 7786]; amended claims of NNSA's court-appointed liquidator [C.I. 7784]; amended claims of NNSA [C.I. 7785]; amended claims of NNIF [C.I. 7776]; amended claims of NNIR [C.I. 7774]; amended claims of NN Italy [C.I. 7775]; amended claims of NN Spain [C.I. 7787]; amended claims of NN Holland [C.I. 7780]; amended claims of NN Belgium [C.I. 7781]; amended claims of NN Poland [C.I. 7754]; amended claims of NN Switzerland [C.I. 7752]; amended claims of NN Germany [C.I. 7778]; amended claims of NN Portugal [C.I. 7751]; amended claims of NN Czech Rep. [C.I. 7782]; amended claims of NN Austria [C.I. 7755]; amended claims of NN Sweden [C.I. 7779]; amended claims of NN Hungary [C.I. 7756]; amended claims of NN Slovakia [C.I. 7750]; amended claims of NN Norway [C.I. 7762]; amended claims of NN Romania [C.I. 7783]; amended claims of NN Finland [C.I. 7753]; amended claims of the Nortel Networks U.K. Pension Trust Limited and Board of the Pension Protection Fund [C.I. 8357, 8358].  The operative claims filed in the Canadian Court are publicly available at http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

equitable and other doctrines, the claims should be disallowed as a matter of comity, and other reasons.[6]

**(d)  Other necessary information or documents**

All such documents and statements designated as such shall be treated by counsel to the parties in this lawsuit as "Confidential" or "Highly Confidential" pursuant to the Order Entering a Protective Order entered on 11 June 2013 [D.I. 10805], as amended, such that designated documents may only be disclosed to attorneys for the parties, third party witnesses, the Commissioner, and the Courts, under specific confidentiality restrictions, absent further order of the Courts.

8.    **(a)  Evidence to be obtained or other judicial act to be performed**

An examination is requested of Mr. Pascal Debon (the "Witness"), Director for NN France SAS from 2000 to 2001 and for NNSA from 2002 to 2006, and employed as Group Vice President for Northern Telecom Inc. from 1999 to 2002, Leadership for Northern Telecom Inc. from 2001 to 2002, and Business Management Officer for Northern Telecom Inc. from 2002 to 2005.  In response to interrogatories, the EMEA Debtors have identified the Witness as among those persons affiliated with them most knowledgeable regarding decisions that concerned Nortel expenditure on customer affairs and NNUK's role in the management and operations of the Nortel Group's EMEA Region.  In the course of their continuing review of documents provided by the parties, the Joint Administrators may identify additional subjects regarding which the Witness is knowledgeable.

**(b)  Purpose of the evidence or judicial action sought**

---

6.    The objections of the U.S. Debtors and U.S. Committee filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project under the docket numbers indicated:  Joint Omnibus Objection to the Remaining Amended Claims Filed by the EMEA Claimants [D.I. 10521]; Joint Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and Board of the Pension Protection Fund [D.I. 10519].  Objections to the claims filed in the Canadian Court are publicly available at: http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

As a former Director of NNSA and NN France SAS, and a person allegedly most-knowledgeable regarding decisions that concerned Nortel expenditure on customer affairs and NNUK's role in the management and operations of the Nortel Group's EMEA Region, the Witness is likely to have knowledge relevant to the parties' allocation positions, claims, and defenses, as described above.

As a former Director of NNSA and NN France SAS, the Witness is likely to have knowledge relevant to the EMEA Claims.  The factual predicates of the Claims brought by NNSA and the other EMEA Debtors – including the alleged unfairness of Nortel's transfer pricing system, Project Swift, the accompanying reorganization of NNIF, intercompany loans, and pre-petition asset sales – relate to the time period of the Witness's directorships.  The EMEA Claims and U.K. Pension Claims also allege that the EMEA Debtors' directors – including those of NNSA – breached their fiduciary duties in connection with those transactions.

Further, the EMEA Claims allege, *inter alia*, that the U.S. Debtors and Canadian Debtors are liable to the EMEA Debtors in connection with the above transactions because the U.S. Debtors and Canadian Debtors dominated or controlled the decision-making of the EMEA Debtors.  In connection with their application for initial orders from the English Court placing the EMEA Debtors into administration, the EMEA Debtors submitted sworn witness statements, including from Michel Clément, a president and director of NNSA (the "Clément Witness Statement"), which included various assertions relating to control over the EMEA Debtors.  The U.S. Debtors have argued that the Clément Witness Statement is inconsistent with the assertions in the EMEA Claims of U.S. or Canadian domination or control.  As a former Director of NNSA, the Witness may have knowledge relevant to the issue of alleged U.S. or Canadian domination or control.

14

Based upon these and other considerations, the EMEA Debtors have designated, and the U.S. Debtors and Canadian Debtors have cross-designated, the Witness to be examined.  The Witness has also been designated as a trial witness for the Directors and Officers.  The Witness has indicated that he is willing to appear voluntarily for his deposition.

By order of the Requesting Court, Alexander B. Blumrosen, Avocat au Barreau de Paris, Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France, has been appointed as the Commissioner to take evidence and testimony in the above-captioned action in France, pending the approval of the Ministère de la Justice.

| | |
|---|---|
| 9.    **Identity and address of any person to be examined** | Mr. Pascal Debon<br>12 rue des Poissonniers,<br>Neuilly Sur Seine, FRA 92200 |

10.    **Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court, on the facts within the Witness's knowledge that relate to the following subjects:

    a.    The organization, management, and operation of the Nortel group, including the tax and treasury functions, accounting, cash management, planning, budgeting, research and development, sales, purchasing, manufacturing, outsourcing, and third-party intellectual property ownership and licensing;

    b.    The history, functioning, and organization of Nortel's "matrix" corporate structure, including how financial reporting was conducted and the roles within the corporate structure of the EMEA Debtors, the U.S. Debtors, and the Canadian

Debtors;

c.     The management, operations, and governance of the Nortel group, and each of

NNSA, NN France SAS, and the other EMEA Debtors, including but not limited

to the powers, actions, and control of the boards of directors and senior officers of

NNL, NNC, NNI, NNSA, NN France SAS, and the other EMEA Debtors;

d.     The identity and location of the officers or other senior management for NNSA,

NN France SAS, and the other EMEA Debtors involved in finance, control, tax,

treasury, and banking functions, human resources, operations, sales and dealings

with customers and suppliers, and the settlement of intercompany accounts;

e.     The statements and factual assertions contained in the EMEA Debtors' chapter 15

petitions, the Clément Witness Statement, and the witness statements submitted

by EMEA Director Sharon Rolston;

f.     The factual bases underlying recognition of the English Proceedings as foreign

main proceedings as to the EMEA Debtors;

g.     The allegations made in the EMEA Claims to the effect that NNC and/or NNL

controlled the Nortel Group's operations, and that NNI participated in or assisted

such control, including but not limited to control of group tax, transfer pricing,

and treasury functions;

h.     The allegations made in the EMEA Claims that the de jure directors of NNSA,

NN France SAS, and the other EMEA Debtors breached their fiduciary duties or

otherwise failed to act properly, any claims threatened or asserted or litigation

commenced against any of the current or former directors or officers of NNSA,

NN France SAS, or the other EMEA Debtors related to their breaches of fiduciary

duties or any of the matters alleged in the EMEA Claims, and any communications with such directors regarding those proceedings or the subject matter of those proceedings;

i.      Any policy, practice, or control concerning directors' and officers' fiduciary or other duties under relevant law;

j.      The profitability, revenue, expenses, cash flow, and value of, and accounting for, the various Nortel entities and Lines of Business, including ownership and valuation of tangible assets associated with each Line of Business;

k.      Debt financing transactions and credit facilities;

l.      Pre-petition Asset Sales involving NNSA, NN France SAS, or the other EMEA Debtors and the classification of assets and allocation of proceeds therefrom, including but not limited to related planning, negotiations, discussions, consideration, approvals, and involvement by the boards of directors or personnel of NNSA, NN France SAS, or the other EMEA Debtors, or any tax authority, and any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect thereto, and the factual basis for the allegations in the EMEA Claims concerning such sales;

m.      Business acquisitions by Nortel, the significance of intellectual property in acquisitions as the value driver for the transactions, and the integration of acquired businesses into Nortel;

n.      Pre-petition restructurings and associated costs, including the decision-making process regarding such restructurings and the determination of which entities bore the associated costs;

o.    Pre-petition vendor financing;

p.    Ownership (including beneficial ownership), registration, maintenance, enforcement, valuation, amortization, business and/or strategic importance, licensing (intercompany, related party, and third party), acquisition, and sale of Nortel's intellectual property and associated rights;

q.    Intellectual property-related costs and revenue streams, allocation of such costs and revenue streams, and accounting therefor;

r.    The organization, make-up, and activity of Nortel's intellectual property-related legal and business teams;

s.    Valuations or analyses commissioned or conducted, whether pre-petition or post-petition, concerning the value of Nortel's intellectual property, business lines, research and development efforts, or other business-related tangibles or intangibles in any jurisdiction or for any subsidiary;

t.    Agreements and practices among Nortel entities in respect of intellectual property and rights and obligations in or to intellectual property;

u.    Research and development planning, strategy, decision-making, and policies;

v.    Nortel companies' relative and respective contributions to research and development of intellectual property;

w.    The negotiation, drafting, approval, and operation of the Master Research and Development Agreement ("MRDA") and its subsequent amendments, the Residual Profit Split Method ("RPSM"), previous cost-sharing arrangements, related agreements, Nortel's transfer pricing system generally, including its development and implementation, and communications and filings with tax

authorities regarding same;

x.    Advance Pricing Arrangements/Agreements ("APAs") and communications, filings with tax authorities, and any settlement in connection with any APAs;

y.    The involvement by the boards of directors or personnel of NNSA, NN France SAS, or the other EMEA Debtors in Nortel's transfer pricing arrangements or agreements, any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect of transfer pricing, the role and responsibilities of the auditors of NNSA, NN France SAS, or the other EMEA Debtors with respect to transfer pricing, and the factual basis for the allegations regarding transfer pricing made in the EMEA Claims;

z.    The manner in which Nortel entities represented themselves to investors, credit agencies, governments, tax authorities, auditors, or other third parties;

aa.    The outsourcing of Nortel's manufacturing business and related sale or outsourcing agreements;

bb.    The accounting for and distribution of revenue and costs related to Nortel Lines of Business and any other Nortel revenue-generating activity;

cc.    Sales, contracts, and dealings with customers or suppliers, including policies, procedures, and practices used to determine which Nortel Entity received revenue from any customer or supplier relationships;

dd.    The negotiation and drafting of the Interim Funding and Settlement Agreement ("IFSA") and Final Canadian Funding and Settlement Agreement ("FCFSA");

ee.    The negotiation, deal structure, and closing of post-petition sales of Nortel assets;

ff.    The "cash to Canada" policy referenced in the EMEA Claims;

gg.  Project Swift, the alleged extraction of cash from various Nortel subsidiaries prior to Project Swift, the accompanying reorganization of NNIF, and the allegations in the EMEA Claims relating thereto;

hh.  Intercompany loans, intercompany dividends, and any other intercompany financing and/or borrowing of money among the Nortel entities, and the allegations in the EMEA Claims relating thereto;

ii.  The allegations in the EMEA Claims that NNI, NNC, or NNL benefitted from Nortel policies, transactions, or other occurrences that harmed NNSA, NN France SAS, or the other EMEA Debtors;

jj.  Any transactions, agreements, or benefits received by NN CALA from the EMEA Debtors that either harmed the EMEA Debtors or for which the EMEA Debtors were not fairly compensated;

kk.  The financial condition of NNSA, NN France SAS, or the other EMEA Debtors;

ll.  The preparation, approval, and auditing of the financial statements of NNSA, NN France SAS, or the other EMEA Debtors;

mm.  Nortel human resources, including employee compensation, transfers, bonuses, benefit plans, pensions, hires, downsizing and terminations;

nn.  The trading debt claims alleged in the EMEA Claims;

oo.  Any additional claims in the EMEA Claims not already addressed by these deposition topics, and the factual basis for all such claims;

pp.  The alleged factual basis for any defenses or positions taken by the U.S. Debtors and the Canadian Debtors in response to the EMEA Claims; and

qq.  Any other matter relevant to the positions, claims, and defenses asserted by the

Core Parties before the Requesting Court and Canadian Court, including but not

limited to those contained in the filings referenced in footnotes 5 and 6.

| | | |
|---|---|---|
| **11.** | **Documents or other property to be inspected** | None. |
| **12.** | **Any requirement that the evidence be given on oath or affirmation and any special form to be used** | The Witness shall testify under oath. |
| **13.** | **Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or summary, cross-examination, etc.)** | |

By order of the Requesting Court, Alexander B. Blumrosen has been appointed as the

Commissioner to take evidence and testimony in the above-captioned action in France, pending

the approval of the Ministère de la Justice.  The Commissioner will provide reasonable notice to

the Witness as required by the Hague Convention.

It is requested that the legal representatives of the U.S. Debtors and the U.S. Committee,

the legal representatives of the Monitor and Canadian Debtors, the legal representatives of the

EMEA Debtors and U.K. Pension Claimants, and the legal representatives of the Witness, if any,

be permitted to conduct the examination of the Witness in France.  The questions will be created

and asked by counsel for the party conducting the deposition and any other party attending the

deposition who may desire to ask questions, without opportunity for prior review of the

questions (including the counsel listed in paragraph 6 above and any other counsel designated by

the parties attending the deposition).  The Commissioner will administer the deposition, but will

not rule upon counsel's questions or conduct any of the questioning himself.

The Witness has agreed to provide testimony orally in English with no interpreter, with a

transcript only in English.  The Witness will then be provided with a copy of the transcript in

English and a reasonable time and opportunity to correct any errors in the transcript.

In accordance with Articles 3(i) and 9 of the Hague Convention, the Requesting Court requests that the examination be executed in compliance with American proceedings rules.  The Witness would be posed questions in accordance with United States Federal Rules of Civil Procedure, specifically F.R.C.P. 30.  In accordance with F.R.C.P. 30(b)(1), attorneys for all parties must be provided notice of the examination and an opportunity to be present.  The party seeking the testimony is obligated under U.S. law to notify the attorneys for any other party to the case of the time and place of the examination.  Pursuant to F.R.C.P. 30(b)(3), it is requested that the testimony of each witness be recorded by both stenographic and video means.  When a party or parties desire that testimony be recorded by stenographic and video means, they are obligated under U.S. law to provide for the presence of the stenographer (court reporter) and videographer and to bear the costs associated with their work.  The parties would bear the costs of the recordings as well as the costs associated with providing a certified interpreter.  The Witness would be entitled to be represented by an attorney present during the examination.

The Requesting Court respectfully requests that the representatives of the EMEA Debtors and U.K. Pension Claimants be allotted a total of three hours and twenty minutes for their examination, that the representatives of the Monitor and Canadian Debtors be allotted a total of three hours and twenty minutes for their examination, and that the representatives of the U.S. Debtors and U.S. Committee be allotted a total of three hours and twenty minutes for their examination.  Counsel for these parties are available to conduct the examination on 28 October 2013 and 29 October 2013, the dates on which the Witness has agreed to appear voluntarily for examination.

| | | |
|---|---|---|
| **14.** | **Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified**[7] | Not applicable. |
| **15.** | **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request** | None. |
| **16.** | **Specification of privilege or duty to refuse to give evidence under the law of the State of origin** | The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States, or would disclose a privileged communication. |
| **17.** | **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by** | EMEA Debtors c/o Bruno Basuyaux Herbert Smith Freehills Paris LLP 66, avenue Marceau 75008 Paris France |
| | | The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the costs of the Commissioner, and the costs of the transcript of the evidence will be initially borne by the EMEA Debtors. The payment of any such fees and costs is without prejudice to the right of the EMEA Debtors to make subsequent requests for reimbursement of |

---

7.  For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by any party to the jurisdiction of the courts of France, nor are the legal representatives of any party instructed to accept service of any proceedings in France.

those fees and costs from other parties to the
proceedings before the Requesting Court.


DATE OF REQUEST                    _____


SIGNATURE AND SEAL OF THE          _____
REQUESTING AUTHORITY

**<u>EXHIBIT D</u>**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re

NORTEL NETWORKS INC., *et al.*,

                    Debtors.

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO**
**CHAPTER II OF THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE**
**TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS:**
**<u>DEPOSITION OF PHILIPPE ALBERT-LEBRUN</u>**

        A request is hereby made by the United States Bankruptcy Court for the District

of Delaware to the Ministère de la Justice, Direction des Affaires Civiles et du Sceau, Bureau de

l'entraide civile et commerciale internationale (D3), 13, Place Vendôme, 75042 Paris Cedex 01,

France (the "<u>Ministère de la Justice</u>"), for assistance in obtaining evidence to be used in a civil

proceeding before the Court in the above-captioned action.  This Court (the "<u>Requesting Court</u>")

has determined that it would further the interests of justice if the persons identified herein were

deposed, under oath, as to their knowledge of the facts relevant to the issues of this action.  This

request is made pursuant to Chapter II of the Hague Convention of 18 March 1970 on the Taking

of Evidence in Civil or Commercial Matters (the "<u>Hague Convention</u>").

        In conformity with Article 17 of the Hague Convention, the Requesting Court

presents its compliments to the Ministère de la Justice, and has the honor of requesting assistance

in obtaining approval for a Commissioner to take evidence and testimony with the consent of the

parties and the French witness identified herein in France pursuant to Chapter II of the Hague

Convention.  The proposed Commissioner, Alexander B. Blumrosen, is an attorney at law

resident in France and is qualified to serve as a Commissioner in this matter.  Mr. Blumrosen has

advised the parties that he is willing to serve as a Commissioner in this matter, if appointed.

Attached hereto is the Order of the Requesting Court appointing Mr. Blumrosen as

Commissioner, pending the approval of the Ministère de la Justice.  Mr. Blumrosen's office

address is as follows:  Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France.  Mr.

Blumrosen's telephone number is (01) 43 18 80 80 and his fax number is (01) 43 18 80 90.  The

parties have chosen this method to take evidence and testimony in the interests of judicial

economy and efficiency, as the French witness identified herein has agreed to appear voluntarily.

| | | |
|---|---|---|
| **1.** | **Sender** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |
| **2.** | **Central Authority of the Requested State** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau de l'entraide civile et commerciale internationale (D3)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
| **3.** | **Person to whom the executed request is to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |

**4.**      **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | | |
|---|---|---|
| | **Date** | Examination to occur on 21 November 2013 and 22 November 2013 at Cleary Gottlieb Steen & Hamilton LLP, 12, rue de Tilsitt, 75008 Paris, France, if it is not possible to hold the deposition at the United States Embassy. |
| | **Reason for urgency** | The joint hearings for which the evidence will |

be used will begin on or after 31 March 2014. The parties' pretrial examinations must be concluded by 13 December 2013.

IN CONFORMITY WITH CHAPTER II, ARTICLE 17 OF THE HAGUE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

5.  **(a) Requesting judicial authority**

The Honorable Kevin Gross
United States Bankruptcy Court
District of Delaware
824 Market Street North, 3rd Floor
Wilmington, Delaware 19801
United States of America

**(b) To the competent authority of**

Ministère de la Justice
Direction des Affaires Civiles et du Sceau
Bureau de l'entraide civile et commerciale internationale (D3)
13, Place Vendôme
75042 Paris Cedex 01
France

**(c) Names of the case and any identifying number**

*In re Nortel Networks Inc., et al* – Case No. 09-10138 (KG)
United States Bankruptcy Court for the District of Delaware

6.  **Names and addresses of the parties and their representatives**

**(a) Plaintiff** (Claimants)

**Joint Administrators and EMEA Debtors**

**Representatives**

Derek J.T. Adler
Neil J. Oxford
Fara Tabatabai
Charles H. Huberty
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
United States of America
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Edwin J. Harron
John T. Dorsey

3

Jamie Luton Chapman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Robin Schwill
Sean R. Campbell
Davies Ward Phillips & Vineberg LLP
155 Wellington Street West
Toronto, ON M5V 3J7
Canada
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

Matthew P. Gottlieb
Tracy Wynne
Lax O'Sullivan Scott Lisus LLP
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

John Whiteoak
James Norris-Jones
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2HS
United Kingdom

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
United States of America
Telephone: (212) 728-8000

Facsimile: (212) 728-8111

Charlene D. Davis
Justin Alberto
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
United States of America
Telephone: (302) 655-5000
Facsimile: (212) 658-6395

David Ward
William Burden
Lara Jackson
Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

Angela Dimsdale Gill
John Tillman
Matthew Bullen
Hogan Lovells International LLP
Atlantic House
Holborn Viaduct
London EC1A 2FG
United Kingdom

**(b)  Defendants** (U.S. Debtors)          **Nortel Networks Inc., *et al.***

**Representatives**                         Howard S. Zelbo
                                            James L. Bromley
                                            Jeffrey A. Rosenthal
                                            Lisa M. Schweitzer
                                            Cleary Gottlieb Steen & Hamilton LLP
                                            One Liberty Plaza
                                            New York, New York 10006
                                            United States of America
                                            Telephone: (212) 225-2000

                                            Derek C. Abbott
                                            Eric D. Schwartz
                                            Ann C. Cordo

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
United States of America
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
Torys LLP
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2
Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

**(c)  Other Parties**                    **The Monitor and Canadian Debtors**

**Representatives**                       Ken Coleman
                                          Daniel Guyder
                                          Paul Keller
                                          Laura Hall
                                          James Barabas
                                          Michael Sadowitz
                                          Jacob S. Pultman
                                          Allen & Overy LLP
                                          1221 Avenue of the Americas
                                          New York, New York 10020
                                          United States of America
                                          Telephone: (212) 610-6300
                                          Facsimile: (212) 610-6399

                                          David Por
                                          Allen & Overy LLP
                                          52 avenue Hoche
                                          CS 90005
                                          75379 Paris Cedex 08
                                          Paris 75379
                                          France

                                          Mary F. Caloway
                                          Kathleen A. Murphy

6

Buchanan Ingersoll & Rooney PC
1105 North Market Street
Suite 1900
Wilmington, Delaware 19801
United States of America
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Jessica Kimmel
Peter Ruby
Alan Mark
Jason Wadden
Lauren Butti
Goodmans LLP
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979-2211
Facsimile: (416) 979-1234

Jennifer Stam
Derrick Tay
Peter Choe
Graham Smith
Gowling Lafleur Henderson LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Telephone: (416) 216-4000
Facsimile: (416) 216-3930

Alan Merskey
Norton Rose Canada LLP
TD Waterhouse Tower, Suite 2300
79 Wellington Street West, P.O. Box 128
Toronto, ON M5K 1H1
Canada
Telephone: (416) 216-4805

Facsimile: (416) 216-3930

**Official Committee of Unsecured Creditors**

Fred Hodara
David Botter
Robert A. Johnson
Abid Qureshi
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
United States of America
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
Dentons Canada LLP
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

7.    **(a)  Nature of the proceedings**          Bankruptcy proceeding

      **(b)  Summary of complaint**

    This action, captioned *In re Nortel Networks Inc., et al.*, Case No. 09-10138 (KG), is a

bankruptcy proceeding pending before the Requesting Court.  On 14 January 2009 (the "<u>Petition</u>

Date"), the U.S. Debtors,[1] with the exception of NN CALA, each filed a voluntary petition for

relief in the Requesting Court under chapter 11 of the United States Bankruptcy Code.  NN

CALA filed its petition on 14 July 2009 [D.I. 1098].  NNI is incorporated in the United States in

the State of Delaware.  Other parties with interests related to the U.S. Debtors include an Official

Committee of Unsecured Creditors of the U.S. Debtors (the "U.S. Committee").

Also on the Petition Date, the Nortel group's ultimate corporate parent, Nortel Networks

Corporation ("NNC"), its operating subsidiary Nortel Networks Limited ("NNL"), and certain of

their Canadian affiliates (collectively, the "Canadian Debtors") filed an application with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada), seeking relief from their creditors, and a monitor, Ernst & Young

Inc. (the "Monitor"), was appointed by the Canadian Court.  Other parties with interests related

to the Canadian Debtors include a Canadian Creditors Committee (the "CCC") and former

directors and officers of the Canadian Debtors (the "Directors and Officers").

On the same date, upon the request of Nortel Networks UK Limited ("NNUK") and

eighteen of its affiliates from Europe, the Middle East, and Africa (collectively, the "EMEA

Debtors"), which included NNUK's French affiliate Nortel Networks S.A. ("NNSA"),[2] the High

---

1.  The debtors in these chapter 11 cases (the "U.S. Debtors") are:  Nortel Networks Inc. ("NNI"); Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros, Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc. ("NN CALA").

2.  In addition to NNUK and NNSA, orders of administration were sought with respect to: Nortel Networks (Ireland) Limited ("NN Ireland"); Nortel GmbH ("NN Germany"); Nortel Networks (Austria) GmbH ("NN Austria"); Nortel Networks AB ("NN Sweden"); Nortel Networks Engineering Service Kft ("NN Hungary"); Nortel Networks France S.A.S. ("NN France SAS"); Nortel Networks Hispania, S.A. ("NN Spain"); Nortel Networks N.V. ("NN Belgium"); Nortel Networks Oy ("NN Finland"); Nortel Networks Polska Sp. z.o.o. ("NN Poland"); Nortel Networks Portugal S.A. ("NN Portugal"); Nortel Networks Romania SRL ("NN Romania"); Nortel Networks S.p.A. ("NN Italy"); Nortel Networks Slovensko, s.r.o. ("NN Slovakia"); Nortel Networks,

Court of Justice of England and Wales (the "English Court") placed the EMEA Debtors into administration (the "English Proceedings"), and appointed individuals from Ernst & Young LLP as administrators (collectively, the "Joint Administrators").[3]  On 28 May 2009, NNSA entered secondary insolvency proceedings in the Commercial Court of Versailles and Cosmé Rogeau was appointed as the French Liquidator.  NNSA is a French corporation with its former registered office at Centre d'Affaires Parc Lumiere, 46 Avenue des Freres Lumiere, F78190 Trappes, France.

Pursuant to an Order Approving Allocation Protocol dated 3 April 2013 [D.I. 9947] entered by the Requesting Court and a corresponding endorsement by the Canadian Court on the same date, the Requesting Court and the Canadian Court (together, the "Courts") will hold joint hearings commencing on or after 31 March 2014 to decide certain issues, including principally: (i) the allocation of proceeds from sales of the assets of the Nortel group among the U.S. Debtors, Canadian Debtors, and EMEA Debtors (the "Allocation Dispute"); (ii) claims filed against the U.S. Debtors and Canadian Debtors by NNUK, other EMEA Debtors, certain affiliates of the EMEA Debtors, and the French Liquidator (the "EMEA Claims"); and (iii) claims filed against the U.S. Debtors and Canadian Debtors relating to NNUK's pension fund (the "U.K. Pension Claims") by the Nortel Networks UK Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "U.K. Pension Trustee"), and the Board of the Pension Protection Fund, a privately funded insurer (the "PPF," and together with the U.K. Pension Trustee, the "U.K. Pension Claimants").

---

s.r.o. ("NN Czech Rep."); Nortel Networks International Finance & Holding B.V. ("NNIF"); and Nortel Networks B.V. ("NN Holland").

3.    The Joint Administrators for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators for Nortel Networks (Ireland) Limited are:  Alan Robert Bloom and David Martin Hughes.

As part of the upcoming joint hearings, each party submitted to the Requesting Court an allocation position detailing its proposed methodology for determining the allocation of proceeds from sales of the assets of the Nortel group.  The parties' allocation positions put at issue a variety of factors, including but not limited to the significance of intercompany agreements governing transfer pricing to the estates' respective entitlement to Nortel intellectual property; the proportion of Nortel's revenue and cash flow generated by the U.S. Debtors, Canadian Debtors, and EMEA Debtors; the location, nature, and results of Nortel's research and development activities and the proportional contribution of the estates to such activities; pre- and post-petition asset sales; and the locus of other fixed and intangible Nortel assets, including customer relationships.[4]

The EMEA Claims and U.K. Pension Claims likewise put at issue a variety of factors, including but not limited to the solvency of the various EMEA Debtors during the years 2000 through 2008; whether NNUK had sufficient resources to fund the Nortel Networks UK Pension Plan and whether it is reasonable to impose upon the Canadian Debtors and U.S. Debtors an obligation to make up for any shortfall; and whether the EMEA Debtors were harmed by various

---

4.    The Core Parties' opening and responsive allocation positions are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers indicated:  allocation position of the Joint Administrators and EMEA Debtors [D.I. 10536]; allocation position of the U.S. Debtors and U.S. Committee [D.I. 10537]; allocation position of the CCC [D.I. 10538]; allocation position of the U.K. Pension Claimants [D.I. 10539]; allocation position of the Bondholders [D.I. 10540]; allocation position of the Monitor and Canadian Debtors [D.I. 10543]; joinder of the Bank of New York Mellon in the allocation position of the U.S. Debtors and U.S. Committee [D.I. 10547]; joinder of Law Debenture Trust Company of New York in the allocation position of the U.S. Debtors and U.S. Committee and in the allocation position of the Bondholders [D.I. 10548]; joinder of Wilmington Trust, National Association, in the allocation position of the Monitor and Canadian Debtors and in the allocation position of the CCC [D.I. 10563]; responsive allocation submission of the Joint Administrators and EMEA Debtors [D.I. 10687]; responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10690]; joinder of Law Debenture Trust Company of New York in the responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10691]; responsive allocation submission of Wilmington Trust, National Association [D.I. 10692]; responsive allocation submission of the U.K. Pension Claimants [D.I. 10693]; responsive allocation submission of the Bondholders [D.I. 10694]; responsive allocation submission of the CCC [D.I. 10695]; responsive allocation submission of the Monitor and Canadian Debtors [D.I. 10696].

Nortel arrangements and intercompany transactions, including Nortel's transfer pricing system, a transaction known as Project Swift and the accompanying reorganization of Nortel, certain intercompany loans and dividends, and sales of Nortel assets that preceded the Petition Date. The EMEA Claims and U.K. Pension Claims allege that the U.S. Debtors and Canadian Debtors are liable for these transactions because they dominated or controlled the EMEA Debtors or were otherwise culpable for breaches of duties owed to the EMEA Debtors, because the transactions resulted in unjust enrichment, or for other reasons.[5]

All of the parties (including NNUK, NNSA, the other EMEA Debtors, and the U.K. Pension Claimants) are currently engaged in the process of obtaining evidence by order of the Requesting Court and Canadian Court in anticipation of the joint hearings.

The evidence sought from the person identified below may be material to the resolution of these factual disputes.

| | |
|---|---|
| **(c)  Summary of defense and counterclaims** | The U.S. Debtors, U.S. Committee, Monitor, and Canadian Debtors have objected to the EMEA Claims and U.K. Pension Claims on a variety of grounds, claiming that the U.S. Debtors and Canadian Debtors did not owe duties to the EMEA Debtors, no duties were breached, no assistance was provided in respect of any such breaches, there was no unjust enrichment or other factual basis for the claims, the claims are barred by various |

---

5.  The operative claims filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers or claim numbers indicated:  amended claims of NNUK [C.I. 7786]; amended claims of NNSA's court-appointed liquidator [C.I. 7784]; amended claims of NNSA [C.I. 7785]; amended claims of NNIF [C.I. 7776]; amended claims of NNIR [C.I. 7774]; amended claims of NN Italy [C.I. 7775]; amended claims of NN Spain [C.I. 7787]; amended claims of NN Holland [C.I. 7780]; amended claims of NN Belgium [C.I. 7781]; amended claims of NN Poland [C.I. 7754]; amended claims of NN Switzerland [C.I. 7752]; amended claims of NN Germany [C.I. 7778]; amended claims of NN Portugal [C.I. 7751]; amended claims of NN Czech Rep. [C.I. 7782]; amended claims of NN Austria [C.I. 7755]; amended claims of NN Sweden [C.I. 7779]; amended claims of NN Hungary [C.I. 7756]; amended claims of NN Slovakia [C.I. 7750]; amended claims of NN Norway [C.I. 7762]; amended claims of NN Romania [C.I. 7783]; amended claims of NN Finland [C.I. 7753]; amended claims of the Nortel Networks U.K. Pension Trust Limited and Board of the Pension Protection Fund [C.I. 8357, 8358].  The operative claims filed in the Canadian Court are publicly available at http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

equitable and other doctrines, the claims should be disallowed as a matter of comity, and other reasons.[6]

**(d)  Other necessary information or documents**

All such documents and statements designated as such shall be treated by counsel to the parties in this lawsuit as "Confidential" or "Highly Confidential" pursuant to the Order Entering a Protective Order entered on 11 June 2013 [D.I. 10805], as amended, such that designated documents may only be disclosed to attorneys for the parties, third party witnesses, the Commissioner, and the Courts, under specific confidentiality restrictions, absent further order of the Courts.

8.    **(a)  Evidence to be obtained or other judicial act to be performed**

An examination is requested of Mr. Philippe Albert-Lebrun (the "Witness"), who was employed as Manager Treasury Operations for NNSA from 1999 to 2001, Treasury Professional Services Europe for NNSA from 2001 to 2003, Director of Finance and Control for NNSA in 2003, Finance – Treasury for NNUK from 2003 to 2008, Financial Results Accounting for NNUK from 2008 to 2011, and a Non Payroll Worker for NNUK from 2011 to 2012.  In response to interrogatories, the EMEA Debtors have identified the Witness as among those persons affiliated with them most knowledgeable regarding Nortel's transfer pricing agreements, intercompany loans, and which Nortel entity or entities would (a) contract with customers; (b) receive revenue earned from customers; and (c) distribute Nortel products within the jurisdiction of EMEA Entities.  In the course of their continuing review of documents provided by the parties, the Joint Administrators may identify additional subjects regarding which the Witness is knowledgeable.

---

6.   The objections of the U.S. Debtors and U.S. Committee filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project under the docket numbers indicated:  Joint Omnibus Objection to the Remaining Amended Claims Filed by the EMEA Claimants [D.I. 10521]; Joint Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and Board of the Pension Protection Fund [D.I. 10519].  Objections to the claims filed in the Canadian Court are publicly available at: http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

**(b)  Purpose of the evidence or judicial action sought**

As an employee in finance-related roles, and a person allegedly most knowledgeable regarding Nortel's transfer pricing agreements, intercompany loans, and which Nortel entity or entities would (a) contract with customers; (b) receive revenue earned from customers; and (c) distribute Nortel products within the jurisdiction of EMEA Entities, the Witness is likely to have knowledge relevant to the parties' allocation positions, claims, and defenses, as described above.

As an employee in finance-related roles, and a person allegedly most knowledgeable regarding Nortel's transfer pricing agreements, intercompany loans, and which Nortel entity or entities would (a) contract with customers; (b) receive revenue earned from customers; and (c) distribute Nortel products within the jurisdiction of EMEA Entities, the Witness is likely to have knowledge relevant to the EMEA Claims.  The factual predicates of the Claims brought by NNSA and the other EMEA Debtors – including the alleged unfairness of Nortel's transfer pricing system, Project Swift, the accompanying reorganization of NNIF, intercompany loans, and pre-petition asset sales – relate to the time period of the Witness's employment.

Further, the EMEA Claims allege, *inter alia*, that the U.S. Debtors and Canadian Debtors are liable to the EMEA Debtors in connection with the above transactions because the U.S. Debtors and Canadian Debtors dominated or controlled the decision-making of the EMEA Debtors.  In connection with their application for initial orders from the English Court placing the EMEA Debtors into administration, the EMEA Debtors submitted sworn witness statements, including from Michel Clément, a president and director of NNSA (the "Clément Witness Statement"), which included various assertions relating to control over the EMEA Debtors.  The U.S. Debtors have argued that the Clément Witness Statement is inconsistent with the assertions

14

in the EMEA Claims of U.S. or Canadian domination or control.  As a former Director and

employee of NNSA, the Witness may have knowledge relevant to the issue of alleged U.S. or

Canadian domination or control.

Based upon these and other considerations, the U.S. Debtors and Canadian Debtors have

designated, and the EMEA Debtors have cross-designated, the Witness to be examined.  The

Witness has also been designated as a trial witness by the EMEA Debtors.  The Witness has

indicated that he is willing to appear voluntarily for his deposition.

By order of the Requesting Court, Alexander B. Blumrosen, Avocat au Barreau de Paris,

Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France, has been appointed as the

Commissioner to take evidence and testimony in the above-captioned action in France, pending

the approval of the Ministère de la Justice.

| | |
|---|---|
| **9.    Identity and address of any person to be examined** | Mr. Philippe Albert-Lebrun<br>9 rue Maurice Mallet<br>92445 Issy Les Moulineaux<br>Paris<br>France |

**10.    Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined**

It is requested that the Witness be questioned according to the procedure set out below in

Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may

apply under the rules and procedures of the Requesting Court, on the facts within the Witness's

knowledge that relate to the following subjects:

a.    The organization, management, and operation of the Nortel group, including the

tax and treasury functions, accounting, cash management, planning, budgeting,

research and development, sales, purchasing, manufacturing, outsourcing, and

third-party intellectual property ownership and licensing;

b.    The history, functioning, and organization of Nortel's "matrix" corporate

structure, including how financial reporting was conducted and the roles within

the corporate structure of the EMEA Debtors, the U.S. Debtors, and the Canadian

Debtors;

c.    The management, operations, and governance of the Nortel group, and each of

NNSA, NNUK, and the other EMEA Debtors, including but not limited to the

powers, actions, and control of the boards of directors and senior officers of NNL,

NNC, NNI, NNSA, NNUK, and the other EMEA Debtors;

d.    The identity and location of the officers or other senior management for NNSA,

NNUK, and the other EMEA Debtors involved in finance, control, tax, treasury,

and banking functions, human resources, operations, sales and dealings with

customers and suppliers, and the settlement of intercompany accounts;

e.    The statements and factual assertions contained in the EMEA Debtors' chapter 15

petitions, the Clément Witness Statement, and the witness statements submitted

by EMEA Director Sharon Rolston;

f.    The factual bases underlying recognition of the English Proceedings as foreign

main proceedings as to the EMEA Debtors;

g.    The allegations made in the EMEA Claims to the effect that NNC and/or NNL

controlled the Nortel Group's operations, and that NNI participated in or assisted

such control, including but not limited to control of group tax, transfer pricing,

and treasury functions;

h.    The allegations made in the EMEA Claims that the de jure directors of NNSA,

NNUK, and the other EMEA Debtors breached their fiduciary duties or otherwise failed to act properly, any claims threatened or asserted or litigation commenced against any of the current or former directors or officers of NNSA, NNUK, or the other EMEA Debtors related to their breaches of fiduciary duties or any of the matters alleged in the EMEA Claims, and any communications with such directors regarding those proceedings or the subject matter of those proceedings;

i.    Any policy, practice, or control concerning directors' and officers' fiduciary or other duties under relevant law;

j.    The profitability, revenue, expenses, cash flow, and value of, and accounting for, the various Nortel entities and Lines of Business, including ownership and valuation of tangible assets associated with each Line of Business;

k.    Debt financing transactions and credit facilities;

l.    Pre-petition Asset Sales involving NNSA, NNUK, or the other EMEA Debtors and the classification of assets and allocation of proceeds therefrom, including but not limited to related planning, negotiations, discussions, consideration, approvals, and involvement by the boards of directors or personnel of NNSA, NNUK, or the other EMEA Debtors, or any tax authority, and any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect thereto, and the factual basis for the allegations in the EMEA Claims concerning such sales;

m.    Business acquisitions by Nortel, the significance of intellectual property in acquisitions as the value driver for the transactions, and the integration of acquired businesses into Nortel;

n.      Pre-petition restructurings and associated costs, including the decision-making

        process regarding such restructurings and the determination of which entities bore

        associated costs;

o.      Pre-petition vendor financing;

p.      Ownership (including beneficial ownership), registration, maintenance,

        enforcement, valuation, amortization, business and/or strategic importance,

        licensing (intercompany, related party, and third party), acquisition, and sale of

        Nortel's intellectual property and associated rights;

q.      Intellectual property-related costs and revenue streams, allocation of such costs

        and revenue streams, and accounting therefor;

r.      The organization, make-up, and activity of Nortel's intellectual property-related

        legal and business teams;

s.      Valuations or analyses commissioned or conducted, whether pre-petition or post-

        petition, concerning the value of Nortel's intellectual property, business lines,

        research and development efforts, or other business-related tangibles or

        intangibles in any jurisdiction or for any subsidiary;

t.      Agreements and practices among Nortel entities in respect of intellectual property

        and rights and obligations in or to intellectual property;

u.      Research and development planning, strategy, decision-making, and policies;

v.      Nortel companies' relative and respective contributions to research and

        development of intellectual property;

w.      The negotiation, drafting, approval, and operation of the Master Research and

        Development Agreement ("MRDA") and its subsequent amendments, the

Residual Profit Split Method ("RPSM"), previous cost-sharing arrangements, related agreements, Nortel's transfer pricing system generally, including its development and implementation, and communications and filings with tax authorities regarding same;

x.   Advance Pricing Arrangements/Agreements ("APAs") and communications, filings with tax authorities, and any settlement in connection with any APAs;

y.   The involvement by the boards of directors or personnel of NNSA, NNUK, or the other EMEA Debtors in Nortel's transfer pricing arrangements or agreements, any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect of transfer pricing, the role and responsibilities of the auditors of NNSA, NNUK, or the other EMEA Debtors with respect to transfer pricing, and the factual basis for the allegations regarding transfer pricing made in the EMEA Claims;

z.   The manner in which Nortel entities represented themselves to investors, credit agencies, governments, tax authorities, auditors, or other third parties;

aa.   The outsourcing of Nortel's manufacturing business and related sale or outsourcing agreements;

bb.   The accounting for and distribution of revenue and costs related to Nortel Lines of Business and any other Nortel revenue-generating activity;

cc.   Sales, contracts, and dealings with customers or suppliers, including policies, procedures, and practices used to determine which Nortel Entity received revenue from any customer or supplier relationships;

dd.   The negotiation and drafting of the Interim Funding and Settlement Agreement

("IFSA") and Final Canadian Funding and Settlement Agreement ("FCFSA");

ee.   The negotiation, deal structure, and closing of post-petition sales of Nortel assets;

ff.   The "cash to Canada" policy referenced in the EMEA Claims;

gg.   Project Swift, the alleged extraction of cash from various Nortel subsidiaries prior to Project Swift, the accompanying reorganization of NNIF, and the allegations in the EMEA Claims relating thereto;

hh.   Intercompany loans, intercompany dividends, and any other intercompany financing and/or borrowing of money among the Nortel entities, and the allegations in the EMEA Claims relating thereto;

ii.   The allegations in the EMEA Claims that NNI, NNC, or NNL benefitted from Nortel policies, transactions, or other occurrences that harmed NNSA, NNUK, or the other EMEA Debtors;

jj.   Any transactions, agreements, or benefits received by NN CALA from the EMEA Debtors that either harmed the EMEA Debtors or for which the EMEA Debtors were not fairly compensated;

kk.   The financial condition of NNSA, NNUK, or the other EMEA Debtors;

ll.   The preparation, approval, and auditing of the financial statements of NNSA, NNUK, or the other EMEA Debtors;

mm.   Nortel human resources, including employee compensation, transfers, bonuses, benefit plans, pensions, hires, downsizing, and terminations;

nn.   The trading debt claims alleged in the EMEA Claims;

oo.   Any additional claims in the EMEA Claims not already addressed by these deposition topics, and the factual basis for all such claims;

pp.   The alleged factual basis for any defenses or positions taken by the U.S. Debtors and the Canadian Debtors in response to the EMEA Claims;

qq.   Any other matter relevant to the positions, claims, and defenses asserted by the Core Parties before the Requesting Court and Canadian Court, including but not limited to those contained in the filings referenced in footnotes 5 and 6.

| | | |
|---|---|---|
| **11.** | **Documents or other property to be inspected** | None. |
| **12.** | **Any requirement that the evidence be given on oath or affirmation and any special form to be used** | The Witness shall testify under oath. |
| **13.** | **Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or summary, cross-examination, etc.)** | |

By order of the Requesting Court, Alexander B. Blumrosen has been appointed as the Commissioner to take evidence and testimony in the above-captioned action in France, pending the approval of the Ministère de la Justice.  The Commissioner will provide reasonable notice to the Witness as required by the Hague Convention.

It is requested that the legal representatives of the U.S. Debtors and the U.S. Committee, the legal representatives of the Monitor and Canadian Debtors, the legal representatives of the EMEA Debtors and U.K. Pension Claimants, and the legal representatives of the Witness, if any, be permitted to conduct the examination of the Witness in France.  The questions will be created and asked by counsel for the party conducting the deposition and any other party attending the deposition who may desire to ask questions, without opportunity for prior review of the questions (including the counsel listed in paragraph 6 above and any other counsel designated by the parties attending the deposition).  The Commissioner will administer the deposition, but will not rule upon counsel's questions or conduct any of the questioning himself.

The Witness has agreed to provide testimony orally in English with no interpreter, with a transcript only in English.  The Witness will then be provided with a copy of the transcript in English and a reasonable time and opportunity to correct any errors in the transcript.

In accordance with Articles 3(i) and 9 of the Hague Convention, the Requesting Court requests that the examination be executed in compliance with American proceedings rules.  The Witness would be posed questions in accordance with United States Federal Rules of Civil Procedure, specifically F.R.C.P. 30.  In accordance with F.R.C.P. 30(b)(1), attorneys for all parties must be provided notice of the examination and an opportunity to be present.  The party seeking the testimony is obligated under U.S. law to notify the attorneys for any other party to the case of the time and place of the examination.  Pursuant to F.R.C.P. 30(b)(3), it is requested that the testimony of each witness be recorded by both stenographic and video means.  When a party or parties desire that testimony be recorded by stenographic and video means, they are obligated under U.S. law to provide for the presence of the stenographer (court reporter) and videographer and to bear the costs associated with their work.  The parties would bear the costs of the recordings as well as the costs associated with providing a certified interpreter.  The Witness would be entitled to be represented by an attorney present during the examination.

The Requesting Court respectfully requests that the representatives of the EMEA Debtors and U.K. Pension Claimants be allotted a total of four hours and thirty minutes for their examination, that the representatives of the Monitor and Canadian Debtors be allotted a total of three hours and twenty minutes for their examination, and that the representatives of the U.S. Debtors and U.S. Committee be allotted a total of three hours and twenty minutes for their examination.  Counsel for these parties are available to conduct the examination on 21 November 2013 and 22 November 2013, the dates on which the Witness has agreed to appear

voluntarily for examination.

| 14. | Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified[7] | Not applicable. |
| --- | --- | --- |
| 15. | Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request | None. |
| 16. | Specification of privilege or duty to refuse to give evidence under the law of the State of origin | The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States, or would disclose a privileged communication. |
| 17. | The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by | EMEA Debtors c/o Bruno Basuyaux Herbert Smith Freehills Paris LLP 66, avenue Marceau 75008 Paris France |

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the costs of the Commissioner, and the costs of the transcript of the evidence will be initially borne by the EMEA Debtors.  The payment of any such fees and costs is without prejudice to the right of the EMEA Debtors to make subsequent requests for reimbursement of

---

7.  For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by any party to the jurisdiction of the courts of France, nor are the legal representatives of any party instructed to accept service of any proceedings in France.

those fees and costs from other parties to the proceedings before the Requesting Court.


DATE OF REQUEST                     _____


SIGNATURE AND SEAL OF THE          _____
REQUESTING AUTHORITY

**EXHIBIT E**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re

NORTEL NETWORKS INC., *et al.*,

                     Debtors.

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO CHAPTER II OF THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS: <u>DEPOSITION OF COSME ROGEAU</u>

A request is hereby made by the United States Bankruptcy Court for the District of Delaware to the Ministère de la Justice, Direction des Affaires Civiles et du Sceau, Bureau de l'entraide civile et commerciale internationale (D3), 13, Place Vendôme, 75042 Paris Cedex 01, France (the "<u>Ministère de la Justice</u>"), for assistance in obtaining evidence to be used in a civil proceeding before the Court in the above-captioned action.  This Court (the "<u>Requesting Court</u>") has determined that it would further the interests of justice if the persons identified herein were deposed, under oath, as to their knowledge of the facts relevant to the issues of this action.  This request is made pursuant to Chapter II of the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters (the "<u>Hague Convention</u>").

In conformity with Article 17 of the Hague Convention, the Requesting Court presents its compliments to the Ministère de la Justice, and has the honor of requesting assistance in obtaining approval for a Commissioner to take evidence and testimony with the consent of the parties and the French witness identified herein in France pursuant to Chapter II of the Hague Convention.  The proposed Commissioner, Alexander B. Blumrosen, is an attorney at law resident in France and is qualified to serve as a Commissioner in this matter.  Mr. Blumrosen has

advised the parties that he is willing to serve as a Commissioner in this matter, if appointed. Attached hereto is the Order of the Requesting Court appointing Mr. Blumrosen as Commissioner, pending the approval of the Ministère de la Justice.  Mr. Blumrosen's office address is as follows:  Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France.  Mr. Blumrosen's telephone number is (01) 43 18 80 80 and his fax number is (01) 43 18 80 90.  The parties have chosen this method to take evidence and testimony in the interests of judicial economy and efficiency, as the French witness identified herein has agreed to appear voluntarily.

| | | |
|---|---|---|
| **1.** | **Sender** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |
| **2.** | **Central Authority of the Requested State** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau de l'entraide civile et commerciale internationale (D3)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
| **3.** | **Person to whom the executed request is to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |

**4.      Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | |
|---|---|
| **Date** | Examination to occur on a date prior to 13 December 2013 at Cleary Gottlieb Steen & Hamilton LLP, 12, rue de Tilsitt, 75008 Paris, France, or at a location to be agreed by the parties and the witness and communicated by the Commissioner to the Ministère de la Justice in advance of the examination, if it is not |

2

|  | possible to hold the deposition at the United States Embassy. |
|---|---|
| **Reason for urgency** | The joint hearings for which the evidence will be used will begin on or after 31 March 2014. The parties' pretrial examinations must be concluded by 13 December 2013. |

IN CONFORMITY WITH CHAPTER II, ARTICLE 17 OF THE HAGUE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| 5. | **(a) Requesting judicial authority** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |
|---|---|---|
|  | **(b) To the competent authority of** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau de l'entraide civile et commerciale internationale (D3)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
|  | **(c) Names of the case and any identifying number** | *In re Nortel Networks Inc., et al* – Case No. 09-10138 (KG)<br>United States Bankruptcy Court for the District of Delaware |
| 6. | **Names and addresses of the parties and their representatives** |  |
|  | **(a) Plaintiff** (Claimants) | **Joint Administrators and EMEA Debtors** |
|  | **Representatives** | Derek J.T. Adler<br>Neil J. Oxford<br>Fara Tabatabai<br>Charles H. Huberty<br>Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, New York 10004<br>United States of America<br>Telephone: (212) 837-6000 |

Facsimile: (212) 422-4726

Edwin J. Harron
John T. Dorsey
Jamie Luton Chapman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Robin Schwill
Sean R. Campbell
Davies Ward Phillips & Vineberg LLP
155 Wellington Street West
Toronto, ON M5V 3J7
Canada
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

Matthew P. Gottlieb
Tracy Wynne
Lax O'Sullivan Scott Lisus LLP
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

John Whiteoak
James Norris-Jones
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2HS
United Kingdom

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP

787 Seventh Avenue
New York, New York 10019
United States of America
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Charlene D. Davis
Justin Alberto
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
United States of America
Telephone: (302) 655-5000
Facsimile: (212) 658-6395

David Ward
William Burden
Lara Jackson
Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

Angela Dimsdale Gill
John Tillman
Matthew Bullen
Hogan Lovells International LLP
Atlantic House
Holborn Viaduct
London EC1A 2FG
United Kingdom

**(b)  Defendants** (U.S. Debtors)        **Nortel Networks Inc.,** *et al.*

**Representatives**                    Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
United States of America
Telephone: (212) 225-2000

5

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
United States of America
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
Torys LLP
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2
Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

**(c)  Other Parties**                    **The Monitor and Canadian Debtors**

**Representatives**                    Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
James Barabas
Michael Sadowitz
Jacob S. Pultman
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
United States of America
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

David Por
Allen & Overy LLP
52 avenue Hoche
CS 90005
75379 Paris Cedex 08
Paris 75379

France

Mary F. Caloway
Kathleen A. Murphy
Buchanan Ingersoll & Rooney PC
1105 North Market Street
Suite 1900
Wilmington, Delaware 19801
United States of America
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Jessica Kimmel
Peter Ruby
Alan Mark
Jason Wadden
Lauren Butti
Goodmans LLP
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979-2211
Facsimile: (416) 979-1234

Jennifer Stam
Derrick Tay
Peter Choe
Graham Smith
Gowling Lafleur Henderson LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Telephone: (416) 216-4000
Facsimile: (416) 216-3930

Alan Merskey
Norton Rose Canada LLP
TD Waterhouse Tower, Suite 2300

79 Wellington Street West, P.O. Box 128
Toronto, ON M5K 1H1
Canada
Telephone: (416) 216-4805
Facsimile: (416) 216-3930

**Official Committee of Unsecured Creditors**

Fred Hodara
David Botter
Robert A. Johnson
Abid Qureshi
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
United States of America
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
Dentons Canada LLP
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

7.     **(a)  Nature of the proceedings**          Bankruptcy proceeding

       **(b)  Summary of complaint**

This action, captioned *In re Nortel Networks Inc., et al.*, Case No. 09-10138 (KG), is a

bankruptcy proceeding pending before the Requesting Court.  On 14 January 2009 (the "Petition Date"), the U.S. Debtors,[1] with the exception of NN CALA, each filed a voluntary petition for relief in the Requesting Court under chapter 11 of the United States Bankruptcy Code.  NN CALA filed its petition on 14 July 2009 [D.I. 1098].  NNI is incorporated in the United States in the State of Delaware.  Other parties with interests related to the U.S. Debtors include an Official Committee of Unsecured Creditors of the U.S. Debtors (the "U.S. Committee").

Also on the Petition Date, the Nortel group's ultimate corporate parent, Nortel Networks Corporation ("NNC"), its operating subsidiary Nortel Networks Limited ("NNL"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors") filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors, and a monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Other parties with interests related to the Canadian Debtors include a Canadian Creditors Committee (the "CCC") and former directors and officers of the Canadian Debtors (the "Directors and Officers").

On the same date, upon the request of Nortel Networks UK Limited ("NNUK") and eighteen of its affiliates from Europe, the Middle East, and Africa (collectively, the "EMEA Debtors"), which included NNUK's French affiliate Nortel Networks S.A. ("NNSA"),[2] the High

---

1.  The debtors in these chapter 11 cases (the "U.S. Debtors") are:  Nortel Networks Inc. ("NNI"); Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros, Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc. ("NN CALA").

2.  In addition to NNUK and NNSA, orders of administration were sought with respect to: Nortel Networks (Ireland) Limited ("NN Ireland"); Nortel GmbH ("NN Germany"); Nortel Networks (Austria) GmbH ("NN Austria"); Nortel Networks AB ("NN Sweden"); Nortel Networks Engineering Service Kft ("NN Hungary"); Nortel Networks France S.A.S. ("NN France SAS"); Nortel Networks Hispania, S.A. ("NN Spain"); Nortel Networks N.V. ("NN Belgium"); Nortel Networks Oy ("NN Finland"); Nortel Networks Polska Sp. z.o.o. ("NN Poland"); Nortel Networks Portugal S.A. ("NN Portugal"); Nortel Networks Romania SRL ("NN Romania");

Court of Justice of England and Wales (the "English Court") placed the EMEA Debtors into administration (the "English Proceedings"), and appointed individuals from Ernst & Young LLP as administrators (collectively, the "Joint Administrators").[3]  On 28 May 2009, NNSA entered secondary insolvency proceedings in the Commercial Court of Versailles and Cosmé Rogeau was appointed as the French Liquidator.  NNSA is a French corporation with its former registered office at Centre d'Affaires Parc Lumiere, 46 Avenue des Freres Lumiere, F78190 Trappes, France.

Pursuant to an Order Approving Allocation Protocol dated 3 April 2013 [D.I. 9947] entered by the Requesting Court and a corresponding endorsement by the Canadian Court on the same date, the Requesting Court and the Canadian Court (together, the "Courts") will hold joint hearings commencing on or after 31 March 2014 to decide certain issues, including principally: (i) the allocation of proceeds from sales of the assets of the Nortel group among the U.S. Debtors, Canadian Debtors, and EMEA Debtors (the "Allocation Dispute"); (ii) claims filed against the U.S. Debtors and Canadian Debtors by NNUK, other EMEA Debtors, certain affiliates of the EMEA Debtors, and the French Liquidator (the "EMEA Claims"); and (iii) claims filed against the U.S. Debtors and Canadian Debtors relating to NNUK's pension fund (the "U.K. Pension Claims") by the Nortel Networks UK Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "U.K. Pension Trustee"), and the Board of the Pension Protection Fund, a privately funded insurer (the "PPF," and together with the U.K.

---

Nortel Networks S.p.A. ("NN Italy"); Nortel Networks Slovensko, s.r.o. ("NN Slovakia"); Nortel Networks, s.r.o. ("NN Czech Rep."); Nortel Networks International Finance & Holding B.V. ("NNIF"); and Nortel Networks B.V. ("NN Holland").

3.    The Joint Administrators for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators for Nortel Networks (Ireland) Limited are:  Alan Robert Bloom and David Martin Hughes.

Pension Trustee, the "U.K. Pension Claimants").

　　　As part of the upcoming joint hearings, each party submitted to the Requesting Court an allocation position detailing its proposed methodology for determining the allocation of proceeds from sales of the assets of the Nortel group.  The parties' allocation positions put at issue a variety of factors, including but not limited to the significance of intercompany agreements governing transfer pricing to the estates' respective entitlement to Nortel intellectual property; the proportion of Nortel's revenue and cash flow generated by the U.S. Debtors, Canadian Debtors, and EMEA Debtors; the location, nature, and results of Nortel's research and development activities and the proportional contribution of the estates to such activities; pre- and post-petition asset sales; and the locus of other fixed and intangible Nortel assets, including customer relationships.[4]

　　　The EMEA Claims and U.K. Pension Claims likewise put at issue a variety of factors, including but not limited to the solvency of the various EMEA Debtors during the years 2000 through 2008; whether NNUK had sufficient resources to fund the Nortel Networks UK Pension Plan and whether it is reasonable to impose upon the Canadian Debtors and U.S. Debtors an

---

4.　The Core Parties' opening and responsive allocation positions are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers indicated:  allocation position of the Joint Administrators and EMEA Debtors [D.I. 10536]; allocation position of the U.S. Debtors and U.S. Committee [D.I. 10537]; allocation position of the CCC [D.I. 10538]; allocation position of the U.K. Pension Claimants [D.I. 10539]; allocation position of the Bondholders [D.I. 10540]; allocation position of the Monitor and Canadian Debtors [D.I. 10543]; joinder of the Bank of New York Mellon in the allocation position of the U.S. Debtors and U.S. Committee [D.I. 10547]; joinder of Law Debenture Trust Company of New York in the allocation position of the U.S. Debtors and U.S. Committee and in the allocation position of the Bondholders [D.I. 10548]; joinder of Wilmington Trust, National Association, in the allocation position of the Monitor and Canadian Debtors and in the allocation position of the CCC [D.I. 10563]; responsive allocation submission of the Joint Administrators and EMEA Debtors [D.I. 10687]; responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10690]; joinder of Law Debenture Trust Company of New York in the responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10691]; responsive allocation submission of Wilmington Trust, National Association [D.I. 10692]; responsive allocation submission of the U.K. Pension Claimants [D.I. 10693]; responsive allocation submission of the Bondholders [D.I. 10694]; responsive allocation submission of the CCC [D.I. 10695]; responsive allocation submission of the Monitor and Canadian Debtors [D.I. 10696].

obligation to make up for any shortfall; and whether the EMEA Debtors were harmed by various

Nortel arrangements and intercompany transactions, including Nortel's transfer pricing system, a

transaction known as Project Swift and the accompanying reorganization of Nortel, certain

intercompany loans and dividends, and sales of Nortel assets that preceded the Petition Date.

The EMEA Claims and U.K. Pension Claims allege that the U.S. Debtors and Canadian Debtors

are liable for these transactions because they dominated or controlled the EMEA Debtors or were

otherwise culpable for breaches of duties owed to the EMEA Debtors, because the transactions

resulted in unjust enrichment, or for other reasons.[5]

    All of the parties (including NNUK, NNSA, the other EMEA Debtors, and the U.K.

Pension Claimants) are currently engaged in the process of obtaining evidence by order of the

Requesting Court and Canadian Court in anticipation of the joint hearings.

    The evidence sought from the person identified below may be material to the resolution

of these factual disputes.

| **(c) Summary of defense and counterclaims** | The U.S. Debtors, U.S. Committee, Monitor, and Canadian Debtors have objected to the EMEA Claims and U.K. Pension Claims on a variety of grounds, claiming that the U.S. Debtors and Canadian Debtors did not owe duties to the EMEA Debtors, no duties were breached, no assistance was provided in respect of any such breaches, there was no |

---

5. The operative claims filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers or claim numbers indicated:  amended claims of NNUK [C.I. 7786]; amended claims of NNSA's court-appointed liquidator [C.I. 7784]; amended claims of NNSA [C.I. 7785]; amended claims of NNIF [C.I. 7776]; amended claims of NNIR [C.I. 7774]; amended claims of NN Italy [C.I. 7775]; amended claims of NN Spain [C.I. 7787]; amended claims of NN Holland [C.I. 7780]; amended claims of NN Belgium [C.I. 7781]; amended claims of NN Poland [C.I. 7754]; amended claims of NN Switzerland [C.I. 7752]; amended claims of NN Germany [C.I. 7778]; amended claims of NN Portugal [C.I. 7751]; amended claims of NN Czech Rep. [C.I. 7782]; amended claims of NN Austria [C.I. 7755]; amended claims of NN Sweden [C.I. 7779]; amended claims of NN Hungary [C.I. 7756]; amended claims of NN Slovakia [C.I. 7750]; amended claims of NN Norway [C.I. 7762]; amended claims of NN Romania [C.I. 7783]; amended claims of NN Finland [C.I. 7753]; amended claims of the Nortel Networks U.K. Pension Trust Limited and Board of the Pension Protection Fund [C.I. 8357, 8358].  The operative claims filed in the Canadian Court are publicly available at http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

|  | unjust enrichment or other factual basis for the claims, the claims are barred by various equitable and other doctrines, the claims should be disallowed as a matter of comity, and other reasons.[6] |
|---|---|
| **(d)  Other necessary information or documents** | All such documents and statements designated as such shall be treated by counsel to the parties in this lawsuit as "Confidential" or "Highly Confidential" pursuant to the Order Entering a Protective Order entered on 11 June 2013 [D.I. 10805], as amended, such that designated documents may only be disclosed to attorneys for the parties, third party witnesses, the Commissioner, and the Courts, under specific confidentiality restrictions, absent further order of the Courts. |
| **8.    (a)  Evidence to be obtained or other judicial act to be performed** | An examination is requested of Mr. Cosmé Rogeau (the "Witness"), the French Liquidator appointed by the Commercial Court of Versailles.  In his capacity as the court-appointed French Liquidator, the Witness brought claims against the U.S. Debtors and Canadian Debtors on behalf of NNSA and its subsidiaries. |

**(b)  Purpose of the evidence or judicial action sought**

As the French Liquidator, the Witness is likely to have knowledge relevant to the parties' allocation positions, claims, and defenses, as described above.  Specifically, as the person who executed claims on behalf of NNSA and its subsidiaries against the U.S. Debtors and the Canadian Debtors, the Witness is likely to have knowledge relevant to the EMEA Claims.

The Witness has indicated that he is willing to appear voluntarily for his deposition.

---

6.  The objections of the U.S. Debtors and U.S. Committee filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project under the docket numbers indicated:  Joint Omnibus Objection to the Remaining Amended Claims Filed by the EMEA Claimants [D.I. 10521]; Joint Objection to the Proofs of Claim filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and Board of the Pension Protection Fund [D.I. 10519).  Objections to the claims filed in the Canadian Court are publicly available at: http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

By order of the Requesting Court, Alexander B. Blumrosen, Avocat au Barreau de Paris, Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France, has been appointed as the Commissioner to take evidence and testimony in the above-captioned action in France, pending the approval of the Ministère de la Justice.

| | | |
|---|---|---|
| **9.** | **Identity and address of any person to be examined** | Mr. Cosmé Rogeau<br>26, rue Hoche<br>78000 Versailles |

**10.     Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court, on the facts within the Witness's knowledge that relate to the following subjects:

    a.    The organization, management, and operation of the Nortel group, including the tax and treasury functions, accounting, cash management, planning, budgeting, research and development, sales, purchasing, manufacturing, outsourcing, and third-party intellectual property ownership and licensing;

    b.    The history, functioning, and organization of Nortel's "matrix" corporate structure, including how financial reporting was conducted and the roles within the corporate structure of the EMEA Debtors, the U.S. Debtors, and the Canadian Debtors;

    c.    The management, operations, and governance of the Nortel group, and each of NNSA and the other EMEA Debtors, including but not limited to the powers, actions, and control of the boards of directors and senior officers of NNL, NNC,

14

NNI, NNSA, and the other EMEA Debtors;

d.     The identity and location of the officers or other senior management for NNSA
       and the other EMEA Debtors involved in finance, control, tax, treasury, and
       banking functions, human resources, operations, sales and dealings with
       customers and suppliers, and the settlement of intercompany accounts;

e.     The statements and factual assertions contained in the EMEA Debtors' chapter 15
       petitions and the witness statements submitted by EMEA Directors Michel
       Clément and Sharon Rolston;

f.     The factual bases underlying recognition of the English Proceedings as foreign
       main proceedings as to the EMEA Debtors;

g.     The allegations made in the EMEA Claims to the effect that NNC and/or NNL
       controlled the Nortel Group's operations, and that NNI participated in or assisted
       such control, including but not limited to control of group tax, transfer pricing,
       and treasury functions;

h.     The allegations made in the EMEA Claims that the de jure directors of NNSA and
       the other EMEA Debtors breached their fiduciary duties or otherwise failed to act
       properly, any claims threatened or asserted or litigation commenced against any
       of the current or former directors or officers of NNSA or the other EMEA Debtors
       related to their breaches of fiduciary duties or any of the matters alleged in the
       EMEA Claims, and any communications with such directors regarding those
       proceedings or the subject matter of those proceedings;

i.     Any policy, practice, or control concerning directors' and officers' fiduciary or
       other duties under relevant law;

15

j.    The profitability, revenue, expenses, cash flow, and value of, and accounting for, the various Nortel entities and Lines of Business, including ownership and valuation of tangible assets associated with each Line of Business;

k.    Debt financing transactions and credit facilities;

l.    Pre-petition Asset Sales involving NNSA or the other EMEA Debtors and the classification of assets and allocation of proceeds therefrom, including but not limited to related planning, negotiations, discussions, consideration, approvals, and involvement by the boards of directors or personnel of NNSA or the other EMEA Debtors, or any tax authority, and any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect thereto, and the factual basis for the allegations in the EMEA Claims concerning such sales;

m.    Business acquisitions by Nortel, the significance of intellectual property in acquisitions as the value driver for the transactions, and the integration of acquired businesses into Nortel;

n.    Pre-petition restructurings and associated costs, including the decision-making process regarding such restructurings and the determination of which entities bore associated costs;

o.    Pre-petition vendor financing;

p.    Ownership (including beneficial ownership), registration, maintenance, enforcement, valuation, amortization, business and/or strategic importance, licensing (intercompany, related party, and third party), acquisition, and sale of Nortel's intellectual property and associated rights;

16

q.    Intellectual property-related costs and revenue streams, allocation of such costs and revenue streams, and accounting therefor;

r.    The organization, make-up, and activity of Nortel's intellectual property-related legal and business teams;

s.    Valuations or analyses commissioned or conducted, whether pre-petition or post-petition, concerning the value of Nortel's intellectual property, business lines, research and development efforts, or other business-related tangibles or intangibles in any jurisdiction or for any subsidiary;

t.    Agreements and practices among Nortel entities in respect of intellectual property and rights and obligations in or to intellectual property;

u.    Research and development planning, strategy, decision-making, and policies;

v.    Nortel companies' relative and respective contributions to research and development of intellectual property;

w.    The negotiation, drafting, approval, and operation of the Master Research and Development Agreement ("MRDA") and its subsequent amendments, the Residual Profit Split Method ("RPSM"), previous cost-sharing arrangements, related agreements, Nortel's transfer pricing system generally, including its development and implementation, and communications and filings with tax authorities regarding same;

x.    Advance Pricing Arrangements/Agreements ("APAs") and communications, filings with tax authorities, and any settlement in connection with any APAs;

y.    The involvement by the boards of directors or personnel of NNSA or the other EMEA Debtors in Nortel's transfer pricing arrangements or agreements, any

analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect of transfer pricing, the role and responsibilities of the auditors of NNSA or the other EMEA Debtors with respect to transfer pricing, and the factual basis for the allegations regarding transfer pricing made in the EMEA Claims;

z.    The manner in which Nortel entities represented themselves to investors, credit agencies, governments, tax authorities, auditors, or other third parties;

aa.    The outsourcing of Nortel's manufacturing business and related sale or outsourcing agreements;

bb.    The accounting for and distribution of revenue and costs related to Nortel Lines of Business and any other Nortel revenue-generating activity;

cc.    Sales, contracts, and dealings with customers or suppliers, including policies, procedures, and practices used to determine which Nortel Entity received revenue from any customer or supplier relationships;

dd.    The negotiation and drafting of the Interim Funding and Settlement Agreement ("IFSA") and Final Canadian Funding and Settlement Agreement ("FCFSA");

ee.    The negotiation, deal structure, and closing of post-petition sales of Nortel assets;

ff.    The "cash to Canada" policy referenced in the EMEA Claims;

gg.    Project Swift, the alleged extraction of cash from various Nortel subsidiaries prior to Project Swift, the accompanying reorganization of NNIF, and the allegations in the EMEA Claims relating thereto;

hh.    Intercompany loans, intercompany dividends, and any other intercompany financing and/or borrowing of money among the Nortel entities, and the

allegations in the EMEA Claims relating thereto;

ii.  The allegations in the EMEA Claims that NNI, NNC, or NNL benefitted from Nortel policies, transactions, or other occurrences that harmed NNSA or the other EMEA Debtors;

jj.  Any transactions, agreements, or benefits received by NN CALA from the EMEA Debtors that either harmed the EMEA Debtors or for which the EMEA Debtors were not fairly compensated;

kk.  The financial condition of NNSA or the other EMEA Debtors;

ll.  The preparation, approval, and auditing of the financial statements of NNSA or the other EMEA Debtors;

mm.  Nortel human resources, including employee compensation, transfers, bonuses, benefit plans, pensions, hires, downsizing, and terminations;

nn.  The trading debt claims alleged in the EMEA Claims;

oo.  Any additional claims in the EMEA Claims not already addressed by these deposition topics, and the factual basis for all such claims;

pp.  The alleged factual basis for any defenses or positions taken by the U.S. Debtors and the Canadian Debtors in response to the EMEA Claims; and

qq.  Any other matter relevant to the positions, claims, and defenses asserted by the Core Parties before the Requesting Court and Canadian Court, including but not limited to those contained in the filings referenced in footnotes 5 and 6.

| | | |
|---|---|---|
| **11.** | **Documents or other property to be inspected** | None. |
| **12.** | **Any requirement that the evidence be given on oath or affirmation and any special form to be used** | The Witness shall testify under oath. |

13.     **Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or summary, cross-examination, etc.)**

By order of the Requesting Court, Alexander B. Blumrosen has been appointed as the Commissioner to take evidence and testimony in the above-captioned action in France, pending the approval of the Ministère de la Justice.  The Commissioner will provide reasonable notice to the Witness as required by the Hague Convention.

It is requested that the legal representatives of the U.S. Debtors and the U.S. Committee, the legal representatives of the Monitor and Canadian Debtors, the legal representatives of the EMEA Debtors and U.K. Pension Claimants, and the legal representatives of the Witness, if any, be permitted to conduct the examination of the Witness in France.  The questions will be created and asked by counsel for the party conducting the deposition and any other party attending the deposition who may desire to ask questions, without opportunity for prior review of the questions (including the counsel listed in paragraph 6 above and any other counsel designated by the parties attending the deposition).  The Commissioner will administer the deposition, but will not rule upon counsel's questions or conduct any of the questioning himself.

The Witness will provide testimony orally in French with verbatim translation in English and transcript in both French and English.  The Witness will then be provided with a copy of the transcript in French and a reasonable time and opportunity to correct any errors in the transcript.

In accordance with Articles 3(i) and 9 of the Hague Convention, the Requesting Court requests that the examination be executed in compliance with American proceedings rules.  The Witness would be posed questions in accordance with United States Federal Rules of Civil Procedure, specifically F.R.C.P. 30.  In accordance with F.R.C.P. 30(b)(1), attorneys for all parties must be provided notice of the examination and an opportunity to be present.  The party

seeking the testimony is obligated under U.S. law to notify the attorneys for any other party to

the case of the time and place of the examination.  Pursuant to F.R.C.P. 30(b)(3), it is requested

that the testimony of each witness be recorded by both stenographic and video means.  When a

party or parties desire that testimony be recorded by stenographic and video means, they are

obligated under U.S. law to provide for the presence of the stenographer (court reporter) and

videographer and to bear the costs associated with their work.  The parties would bear the costs

of the recordings as well as the costs associated with providing a certified interpreter.  The

Witness would be entitled to be represented by an attorney present during the examination.

The Requesting Court respectfully requests that the parties be allotted a total of seven

hours for their examination.  Counsel for the parties will negotiate a date for the examination to

occur prior to 13 December 2013 as may be mutually agreed with the Witness.

| | | |
|---|---|---|
| **14.** | **Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified**[7] | Not applicable. |
| **15.** | **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request** | None. |
| **16.** | **Specification of privilege or duty to refuse to give evidence under the law of the State of origin** | The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States, or would disclose a privileged communication. |
| **17.** | **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under** | EMEA Debtors c/o Bruno Basuyaux Herbert Smith Freehills Paris LLP |

7.  For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by any party to the jurisdiction of the courts of France, nor are the legal representatives of any party instructed to accept service of any proceedings in France.

| | |
|---|---|
| **Article 26 of the Convention will be borne by** | 66, avenue Marceau<br>75008 Paris<br>France |

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the costs of the Commissioner, and the costs of the transcript of the evidence will be initially borne by the EMEA Debtors.  The payment of any such fees and costs is without prejudice to the right of the EMEA Debtors to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.

DATE OF REQUEST                          _____

SIGNATURE AND SEAL OF THE          _____
REQUESTING AUTHORITY