## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                         :

*In re*                              :      Chapter 11
                         :

Nortel Networks Inc., *et al.*,[1]         :      Case No. 09-10138 (KG)
                         :

                Debtors.        :      Jointly Administered
                         :
                         :      **Hearing date: October 22nd, 2013 at 10:00 a.m. (ET)**
                         :      **Objections due: October 11, 2013 at 4:00 p.m. (ET)**
                         :      **RE: D.I.s 11739, 11741**
                         :
-------------------------------------------------------- X

## DEBTORS' OMNIBUS REPLY TO RESPONSES TO DEBTORS' THIRTY-FIRST AND THIRTY-SECOND OMNIBUS OBJECTIONS (SUBSTANTIVE) TO CERTAIN CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby respectfully submit this Reply (the "Reply"), to the response filed by Joseph. A. Pino, Sr. [D.I. 11851] (the "Pino Response") to the *Debtors' Thirty-First Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended or Superseded Claims, No-Basis 503(b)(9) Claims and No-Basis Pension Claims)* [D.I. 11739] (the "Thirty-First Omnibus Objection"), and the responses filed by Ursula H. Phommanirat [D.I. 11860] (the "Phommanirat Response") and Alicja M. Reimann [D.I. 11954] (the "Reimann Response," and collectively with the Phommanirat Response and the Pino Response, the "Responses") to the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

*Debtors' Thirty-Second Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended or Superseded Claims, No-Basis 503(b)(9) Claims and No-Basis Pension Claims)* [D.I. 11741] (the "Thirty-Second Omnibus Objection").  In support of this Reply, the Debtors rely on the Declaration of Deborah Parker, dated October 17, 2013, attached hereto as Exhibit A (the "Parker Decl.").  In further support of this Reply, the Debtors respectfully represent as follows:

## Reply

1.    The Debtors, through the Thirty-First and Thirty-Second Omnibus Objections seek disallowance of certain claims for severance benefits as not entitled to such benefits under the Nortel Networks Severance Allowance Plan (the "Severance Plan").[2]  Mr. Pino, Ms. Phommanirat, and Ms. Reimann, three former employees of the Debtors (the "Objecting Parties"), seek allowed claims for severance benefits under the Severance Plan, even though they transferred to Avaya Inc. ("Avaya") in connection with the closing of the sale of the Enterprise Solutions Business to Avaya on December 18, 2009.  The Objecting Parties argue that they should be entitled to termination benefits from the Debtors because they are displeased with the ultimate length of their employment at Avaya and the amount of severance received from Avaya upon their termination.  However, the Severance Plan expressly provides that employees transferred in connection with a "Business Transaction," such as the sale of the Enterprise Solutions Business to Avaya, are not entitled to severance.

2.    The Debtors cannot award severance to former employees who transferred to buyers in the various business sales, both because the Severance Plan does not provide for the

---

[2]    The Severance Plan is attached to the Parker Decl. as Exhibit 1 and the Summary Plan Description for the Severance Plan (the "Summary Plan Description") is attached to the Parker Decl. as Exhibit 2.

award of severance in such circumstances, and because the Debtors have a duty to manage their estates for the benefit of all their creditors.  Accordingly, the Debtors respectfully request that the Court overrule the Responses and disallow the Objecting Parties' claims for termination benefits in accordance with the Thirty-First and Thirty-Second Omnibus Objections.

3.    The Objecting Parties have filed the following claims for termination benefits[3] against NNI:

| Name | Claim No. | Date Filed[4] | Amount Asserted |
|---|---|---|---|
| Joseph. A. Pino, Sr. | 3177 | 9/18/2009 | $91,520.00 |
| Ursula H. Phommanirat | 8468 | 3/8/2013 | $24,400.17[5] |
| Alicja M. Reimann | 8465 | 3/5/2013 | $38,424.50 |

4.    The Debtors objected to each of these claims and sought disallowance in the Thirty-First and Thirty-Second Omnibus Objections because the Objecting Parties are not entitled to severance claims under the Severance Plan.  As more fully described and subject to the conditions set forth therein, NNI and certain of its subsidiary Debtors that adopted the Severance Plan agreed to pay termination benefits upon certain qualified termination events, including certain workforce reductions.  However, the Severance Plan provides that severance benefits are not payable in connection with a "Business Transaction,"[6] including the divestiture

---

[3]    The proofs of claim filed by Mr. Pino, Ms. Phommanirat and Ms. Reimann are attached hereto as Exhibits B, C and D, respectively.

[4]    Those proofs of claim filed by Ms. Phommanirat and Ms. Reimann were filed after the September 30, 2009 bar date set by this Court's *Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [D.I. 1280].

[5]    Ms. Phommanirat filed a proof of claim in the amount of $23,000, but updated the amount asserted to $24,400.17 in the Phommanirat Response.

[6]    The Severance Plan defines "Business Transaction" as "an agreement entered into by or on behalf of Employer and a Company(ies) (e.g., divestiture or a spin-off of a business, creation of a joint venture, an

of a business.  Specifically, the Severance Plan provides that an employee terminated in connection with a "Business Transaction" shall not be entitled to a severance allowance if: (a) such employee accepts an offer of employment with the buyer of the business (i.e., Avaya, in this case), irrespective of any differences between the new position and the former position, including without limitation, location, compensation, work schedule, or otherwise or (b) the terminated employee is offered and refuses a position as an employee at the buyer, which position (i) is at a location that is no more than 25 miles from the location of such employee's position prior to the Business Transaction and (ii) includes a base weekly salary not less than 80% of the employee's base weekly salary at such employee's former position (a "Qualifying Offer").  See Severance Plan § 2.3; Summary Plan Description § 6.

5.       Here, each of the Objecting Parties accepted a Qualifying Offer by accepting a position with Avaya in connection with the Enterprise Sale.  The Objecting Parties are squarely not entitled to a claim for severance benefits under the Severance Plan.  Moreover, while the Severance Plan does not require terms of employment with Avaya to match those previously offered by the Debtors in order for the Business Transaction exception to apply, pursuant to Section 7.1.1 of the Amended and Restated Asset and Share Sale Agreement approved by this Court (the "Sale Agreement"),[7] those offers made by Avaya were required to include, among other things, (i) an annual base salary for each employee equal to the employee's then-current salary, (ii) employment in a reasonably comparable position to the employee's then-current position, and (iii) at a location reasonably contiguous to the employee's then-current location.

---

outsourcing transaction or any transaction similar to the foregoing) and as a result thereof the Employer determines that the services of an Employee(s) are no longer required by Employer."  Severance Plan § 1.3(d).

[7]       A copy of the Sale Agreement is attached to this Court's *Order Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases* [D.I. 1514].

See Sale Agreement § 7.1.1.  Accordingly, even if the Objecting Parties had not accepted offers of employment, which they did, Avaya's offers of employment would have been considered Qualifying Offers under the Severance Plan and would have precluded claims for severance benefits under the Severance Plan.

6.      Certain of the Objecting Parties have suggested that it was difficult to ascertain what severance arrangements were in place at the time they transitioned to Avaya.  However, the Summary Plan Description, which includes a summary of the relevant terms and conditions of the Severance Plan, including the exception for employees terminated in connection with a Business Transaction, was available to active employees of the Debtors at all times through the Debtors' intranet.  Parker Decl. ¶ 4.  In addition, employees received email alerts if and when the Summary Plan Description was modified, and employees were free to consult with the Debtors' HR Shared Services staff if they had questions about the Severance Plan.  Id.  Accordingly, the terms of the Severance Plan were properly made available to employees, and the Debtors' HR Shared Services call tracking tool does not contain any record of inquiries by the Objecting Parties on this point on or around the time of their transfer to Avaya.  Id.

7.      The Objecting Parties do not dispute these facts.  Rather, they appear to argue that it would be equitable to pay them severance because they were laid off by Avaya between three and nine months after starting work there.  While the Debtors are sympathetic to the fact that these employees hoped for longer employment with and/or more generous severance from Avaya, that alone does not create a claim against the Debtors.  The matter of any severance owed to such employees is between them and their subsequent employer – Avaya.  Once an employee receives a Qualifying Offer in connection with a Business Transaction, the employee is no longer

eligible for benefits under the Severance Plan.[8]  As this Court has previously acknowledged, in order to be eligible for severance benefits, an employee must have been employed by the Debtors at the time of the termination that triggered a severance obligation.  See *Order Granting Debtors' Twenty-Ninth Omnibus Objection (Substantive) to Certain Claims Pursuant to  11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended or Superseded Claims, No-Basis 503(b)(9) Claims and No-Basis Pension Claims)* [D.I. 9585] (overruling objection of claimant Randall Scott Clay to Debtors' objection denying claimant severance benefits, because (i) claimant had most recently been employed by non-debtor Avaya Government Solutions, a successor to non-debtor Nortel Government Solutions Inc. ("NGS"), and not a Debtor and (ii) claimant's prior transfer from employment at a Debtor to employment for NGS would not have qualified him for severance benefits in accordance with the terms of the applicable severance plan).[9]  See Transcript of Hearing on March 5, 2013 [D.I. 9592] at 9-10.[10]

8.    In addition, the terms of any Avaya severance plan are irrelevant to the question of whether a specific employee is entitled to severance benefits from the Debtors.  As discussed above, the Severance Plan provided for benefits upon an involuntary termination that are simply not available to employees who accepted offers of employment or received Qualifying Offers in connection with a Business Transaction.  See Severance Plan at §§ 1.1, 2.1, 2.3 (identifying the

---

[8]    Under Section 7.1.2 of the Sale Agreement, Avaya agreed to recognize former Nortel employees' term of service with the Debtors for the purpose of calculating the levels of severance benefits owed to such employees under Avaya's severance plan.  Avaya also agreed, for a period of twelve months following closing, to provide such employees with the same severance payments and benefits as similarly situated employees of Avaya.  The Debtors are not aware of what severance benefits Avaya offers to its employees, or if the amounts received by the Objecting Parties from Avaya reflect the severance packages a similarly situated employee of Avaya would have received.

[9]    As the Court may recall, the sale of the Enterprise Solutions Business to Avaya included NNI's sale of its equity interest in non-debtor, NGS, which was later renamed Avaya Government Solutions after the closing of the transaction.

[10]    For the Court's convenience, an excerpt of the relevant hearing transcript is attached hereto as Exhibit E.

population of employees entitled to severance benefits under the Severance Plan and carving out

those employees subject to the Business Transaction exception).  The ultimate treatment of

employees who transitioned to Avaya, which the Debtors did not control, should not and does

not, as a matter of law, affect whether NNI is liable for severance benefits to such former

employees.  See Kotrosits v. Gatx Corp. Non-Contributory Pension Plan for Salaried Employees,

970 F.2d 1165, 1174 (3d Cir. 1992) (holding that a former employer is not responsible for

changes made to benefit plans post-closing over which such former employer had no control).

9.      At bottom, the Objecting Parties' argument is that the severance benefits available

at Avaya were not as generous as those available at Nortel.  Allowing the Objecting Parties'

claims for severance could open the door to an unknown number of new claims for severance,

unsupported by the terms of the Severance Plan, based on the longevity of individuals'

employment with buyers of the Debtors' businesses.  Over 4,900 employees of the Debtors were

transferred to employment with buyers in connection with such sales.  Parker Decl. ¶ 5.  None of

them, nor others who received, but did not accept Qualifying Offers, are entitled to severance,

and there is no principled basis or reason, consistent with the Debtors' duties to their entire

creditor body, to make exceptions or open the door to new claims.  The Debtors respectfully

submit that such treatment would also not be in accordance with NNI's duty to administer the

Severance Plan in accordance with its governing documents pursuant to ERISA.  See 29 U.S.C.

§ 1104.

## Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court

overrule the Responses, enter the proposed orders approving the Thirty-First and Thirty-Second

Omnibus Objections, and grant such other relief as the Court deems just and proper.

Dated:  October 17, 2013
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

8