**Exhibit E – Excerpt of March 5, 2013 Hearing Transcript [D.I. 9592]**

1  books and records' numbers with the amounts asserted by the
2  claimants.
3              THE COURT:  Yes.  And again, based upon the facts
4  presented to me, I will sustain that objection -- the
5  objection of those claims as well, Mr. Croft.
6              MR. CROFT:  Thank you, Your Honor.
7              THE COURT:  Sure.
8              MR. CROFT:  And then the last exhibit, Your Honor,
9  is Exhibit A and, structurally, this exhibit is a list of
10 claims that are not supported by the debtors' books and
11 records and it's the debtors' position that, with respect to
12 every claimant listed on Exhibit A, they hold no claims
13 against any of the U.S. debtors.
14             THE COURT:  Right.
15             MR. CROFT:  There are 21 claims on this exhibit and
16 we only received one response, and that response was filed by
17 Mr. Randal Clay and his response is at D.I. 9483, and we
18 actually filed a Reply to Mr. Clay's response and that Reply
19 is at D.I. 9525.
20             THE COURT:  Yes.
21             MR. CROFT:  By way of background, Your Honor, Mr.
22 Clay filed Claim No. 7479 against Nortel Networks (CALA) Inc.
23 for termination benefits in the amount of $54,992.  And, Your
24 Honor, our Objection to Mr. Clay's claim boils down to this.
25 He wasn't employed by Nortel when he was terminated.  He was

1   employed by Avaya at the time of his termination.  He is one
2   of the employees that went over to Avaya as part of the Court-
3   approved sale of Nortel's Enterprise Solutions business.  And
4   even before he was terminated by Avaya, Your Honor, he was
5   employed by a non-debtor, Nortel Government Solutions, Inc.,
6   which the shares of NGS went over to Avaya as part of the
7   Enterprise sale and prior to that share sale, NGS was not a
8   debtor in these proceedings.
9            THE COURT:  Exactly.
10           MR. CROFT:  So for the past several years, he has
11  not been employed by a debtor and we think that that
12  sufficiently resolves his claim.  Because he was not employed
13  by a debtor, he could not be entitled to termination benefits
14  from a debtor.  And if we actually look at the language of the
15  severance plan, Your Honor, particularly Section 3.7 of that
16  plan, it says that the severance awards under this plan are
17  unfunded benefits of the relevant employer.  So even if you
18  were to make some type of equitable argument that he ought to
19  be entitled to severance from, you know, Avaya Government
20  Solutions or Nortel Government Solutions, those claims would
21  be against those legal entities and not against any of the
22  debtors that have proceedings before you.
23           THE COURT:  Okay.
24           MR. CROFT:  And then just one final point on Mr.
25  Clay, Your Honor.  When he transferred to NGS in 2008, he was

1 previously employed by NNI which is a participant in the
2 severance plan.
3       THE COURT: Okay.
4       MR. CROFT: His transfer was technically a
5 termination from NNI with a simultaneous re-hire by NGS which
6 is an affiliate. And if we look at the severance plan, in
7 particular, Section 2.2 of the plan, that's not a qualified
8 termination. If you leave a participating employer and you
9 are subsequently re-hired by an affiliate, here, leaving NNI
10 and being subsequently re-hired by NGS --
11       THE COURT: Yes.
12       MR. CROFT: -- that's not a trigger for termination
13 benefits under the severance plan.
14       THE COURT: All right.
15       MR. CROFT: So with that, Your Honor, we
16 respectfully submit that Mr. Clay does not hold any claims
17 against the debtor with respect to severance awards.
18       THE COURT: All right. I thank you, Mr. Croft.
19 Mr. Clay, are you in the Courtroom or on the telephone?
20       (No audible response)
21       THE COURT: Neither. Okay. I don't see Mr. Clay
22 among the list of telephone participants and I've, as
23 indicated, he's not in the Courtroom and I'm going to sustain
24 the objection for the reasons stated ably by Mr. Croft and
25 that is, frankly, that I suppose the most straightforward is

1  that Mr. Clay was not employed by the debtors most recently.
2  He was employed by Avaya when terminated.  And even if we go
3  back to when he was employed by the debtor, NNI, nonetheless,
4  his termination was not one which would have qualified him to
5  participate under the severance program.  So, on that basis, I
6  will sustain the objection, Mr. Croft.
7              MR. CROFT:  Thank you, Your Honor.  I have a
8  revised Order.  May I approach?
9              THE COURT:  Yes you may.  Thank you.  Thank you
10 very much.  Well done.  All right.  We have a little blackline
11 with a few changes which is directed, I see, to Mr. Clay's
12 information and issue.
13             MR. CROFT:  Yes, that's right, Your Honor.  Just
14 briefly to go through the changes, in the "Re:" line, we added
15 the docket index numbers and the Twenty-Ninth Omnibus
16 Objections --
17             THE COURT:  Yes.
18             MR. CROFT:  -- Mr. Clay's response and our Reply,
19 and then in the introductory paragraph, we added the
20 references to Mr. Clay's response and our Reply.  And then the
21 only other change is in paragraph two where we struck the
22 language, "if any" --
23             THE COURT:  Oh, yes.
24             MR. CROFT:  -- speaking about claims that were
25 responses to the Twenty-Ninth Omni.

1    THE COURT:  Of course.  I missed that one.  Thank
2 you, Mr. Croft.
3    MR. CROFT:  You're welcome.  I don't have anything
4 further, Your Honor, unless you have questions.
5    THE COURT:  No, I don't, and thank you very much
6 for a well-done presentation.
7    MR. CROFT:  Thank you, Your Honor.
8    THE COURT:  Yes, Mr. Abbott?
9    MR. ABBOTT:  Good morning, Your Honor, Derek
10 Abbott, again.  I'm on deck for Item No. 4 on the Agenda, Your
11 Honor, which is the Debtors' Motion for Certain Relief from
12 Newly Enacted Local Rules.
13    THE COURT:  Yes.
14    MR. ABBOTT:  We seem to have a knack for
15 unfortunate timing in this case, Your Honor.
16    THE COURT:  Yes, I'd say.
17    MR. ABBOTT:  Just like the Third Circuit aced us in
18 Visteon.
19    THE COURT:  Exactly.
20    MR. ABBOTT:  Here, at a critical time in these
21 cases when we're about to launch obviously quite a serious
22 litigation effort, the Court has promulgated new Local Rules
23 2014-1(c) and 2016-2(f) and they are liable, as written, Your
24 Honor, to throw a wrench into the works, and that's what we're
25 here trying to avoid.  At the outset, I think, Your Honor,