

# YOUNG CONAWAY
# STARGATT & TAYLOR, LLP

*Attorneys at Law*

WILMINGTON

GEORGETOWN

MIDDLETOWN

NEW YORK

**Jaime Luton Chapman**
P 302.571.5030
F 302.576.3463
jchapman@ycst.com

October 24, 2013

**HAND DELIVERY**

The Honorable Kevin Gross
U.S. Bankruptcy Court
824 N. Market Street
Wilmington, DE 19801

    Re: In re: Nortel Networks, Inc., et al., Case No. 09-10138 (KG)

Dear Judge Gross:

   On October 23, 2013, the Joint Administrators for the EMEA Debtors sent a letter to the Honourable Mr. Justice Morawetz regarding the Canadian Debtors' refusal to produce certain key post-petition documents. A copy of the letter is enclosed and its contents are incorporated herein and fully adopted. As set forth therein, the Joint Administrators are respectfully requesting that (i) a joint hearing with the Canadian Court be scheduled to consider the issue and (ii) the Courts enter an order directing the Canadian Debtors to produce the referenced documents.

            Respectfully,

            Jaime Luton Chapman

JLC:dl

Enclosure

cc: Core Parties (via email)

MATTHEW P. GOTTLIEB
Direct: (416) 644-5353
mgottlieb@counsel-toronto.com
File No. 12379

LAX O'SULLIVAN SCOTT LISUS LLP
Suite 2750, 145 King Street West
Toronto ON M5H 1J8 Canada
Tel: 416 598 1744 Fax: 416 598 3730



October 23, 2013

The Honourable Mr. Justice Morawetz
Ontario Superior Court of Justice
361 University Avenue
Toronto, ON  M5G 1T3

Dear Justice Morawetz:

> **Re:  In the Matter of a Plan of Compromise or Arrangement of Nortel Networks Corporation et al.  (Court File No. 09-CL-7950)**

We write on behalf of the Joint Administrators for the EMEA Debtors in order to address the Canadian Debtors' refusal to produce certain key post-petition documents.

During the course of gathering documents for production in this case, each of the US, Canadian, and EMEA Debtors identified large volumes of documents that were subject to a joint privilege held by two or more of the estates.  On September 6 and 7, 2013, each of the three estates produced joint privileged documents only to the other estate(s) that shared in the joint privilege.  Recognizing the impracticality of litigating a case in which some Core Parties would have access to key documents that the others would not, the estates subsequently agreed to produce all joint privileged documents to all Core Parties.[1]  In accordance with this agreement, the EMEA Debtors produced their responsive joint privileged documents to all Core Parties more than two weeks ago. The EMEA Debtors' production included both pre-petition and post-petition documents. The US Debtors have agreed to produce their responsive post-petition joint privileged documents by October 25, 2013.  The Canadian Debtors, however, have unilaterally decided to withhold *all* post-petition joint privileged documents, including documents responsive to searches that the estates, including the Canadian Debtors, had previously agreed were relevant for that time period.

---

[1].  At the urging of the EMEA Debtors, who had been arguing for months that it would be unworkable to hold depositions and a trial where different parties had access to different set of documents and certain parties would have to leave the room when certain documents were referenced, on September 20, 2013, the Core Parties entered into a stipulation amending the Protective Order entered by this Court on June 11, 2013.

- 2 -

The Canadian Debtors' position means that they are withholding some of the key documents in this case. Specifically, the Canadian Debtors are refusing to produce documents concerning the details and basis of the $2 billion settlement and related Advanced Pricing Agreement ("APA") among NNL, NNI, the Canadian Revenue Authority, and the Internal Revenue Service ("the 2010 APA Settlement"). The 2010 APA Settlement is important, not only because it demonstrates that the Nortel Group's transfer pricing arrangements were not at arm's length and were therefore invalid, but also because the settlement is the basis for the only defense that the Canadian Debtors have raised against NNUK's claim for repayment of the outstanding balance on its interest-free loan to NNL. (Joint Response of the Monitor and Canadian Debtors to the Claims Filed on Behalf of the EMEA Claimants ¶¶ 111, 317 & Schedule B (May 29, 2013).) Leaving aside for now the legal frailties of the Canadian Debtors' argument — including the fact that neither NNUK nor the UK tax authorities were a party to the settlement by which they are now allegedly bound — the Canadian Debtors, having raised this defense, cannot be permitted to make anything other than a full production of relevant documents to allow the EMEA Debtors to test whether the set-off defense has any factual basis. A full production is particularly important here because the EMEA Debtors were not a party to the settlement and so must rely upon the US and Canadian Debtors to produce documents concerning the settlement.

The Canadian Debtors' refusal to produce joint privileged documents concerning the 2010 APA Settlement is unprincipled, unacceptable, in stark contrast to the position of the other debtors,[2] and contrary to the understanding of the other parties in making their productions. The EMEA Debtors had in fact understood that the Canadian Debtors had agreed to produce post-petition joint privileged documents concerning the 2010 APA Settlement. On August 13, 2013, the Canadian Debtors informed the Core Parties by letter that they had decided not to search for or produce any post-petition documents. The EMEA Debtors responded on August 16, requesting that, given the importance of the post-petition documents concerning the 2010 APA Settlement, the Canadian Debtors agree to produce documents dated on or before January 31, 2010

---

[2]    The EMEA Debtors produced all of their responsive, joint privileged documents on October 4. On October 10, 2013, the US Debtors advised the EMEA Debtors that they would make their joint privileged production on October 11, but disclosed for the first time that their production would not include any documents dated on or after October 1, 2008 because (i) the Canadian Debtors were not producing any post-petition joint privileged documents, and (ii) October 1, 2008 was effectively the beginning of the post-petition period. At a telephonic meet and confer with all three estates, the US Debtors agreed to produce joint privileged documents dated October 1, 2008 through January 13, 2009. By email dated October 18, the US Debtors also agreed to produce their post-petition joint privileged documents by October 25. While the EMEA Debtors are pleased that the US Debtors have now agreed that they must produce these documents, we note that the position that the US Debtors initially took on October 10 has resulted in a significant delay in the production of their joint privileged documents. The US Debtors did not produce their pre-October 1, 2008 joint privileged documents until October 11, did not produce their October 1, 2008 through January 13, 2009 joint privileged documents until October 18, and (as of the date of this letter) still have not produced their post-petition joint privileged documents. Depositions in this case have been underway for more than a month, and the fact that the EMEA Debtors do not yet have any post-petition US-Canada joint privileged documents has already resulted in prejudice to the EMEA Debtors. The EMEA Debtors therefore reserve all rights.

- 3 -

that were responsive to the agreed "Tax Authority" and "APA" searches that the estates had drafted specifically to capture such documents. In a letter dated August 23, 2013, the Canadian Debtors responded that they were "not yet agreeing to do this," but would "on a without prejudice basis consider th[e] request and either produce the non-privileged documents that come out of such a search or advise you of our position if we determine not to do it." By email dated September 3, 2013, the Canadian Debtors stated that they had "honoured" the EMEA Debtors' request "to extend the outer date for searches from January 13, 2009 to January 31, 2010" and indicated that their September 3 production of non-privileged documents included post-petition documents responsive to those searches. Notably, the Canadian Debtors did not state in their email that they were refusing to produce joint privileged documents responsive to the agreed search terms, nor can there be any principled basis for producing responsive non-privileged — but not joint privileged — documents.

In an October 16, 2013 email confirming their refusal to produce post-petition joint privileged documents, the Canadian Debtors argued that the Stipulation Regarding EMEA Motion for Extension of Schedule ordered by this Court on August 26, 2013, bars the EMEA Debtors from requesting any additional production from the Canadian Debtors. That is incorrect for two reasons. First, the EMEA Debtors are not requesting additional production from the Canadian Debtors. They are simply requesting that the Canadian Debtors produce post-petition joint privileged documents concerning the 2010 APA Settlement, consistent with their discovery obligations, the positions of the US and EMEA Debtors, and their statements in response to the EMEA Debtors' August 16 request that they produce such documents. Second, even if the EMEA Debtors were making the request for these documents for the first time (which they are not), the Stipulation explicitly states that parties have the "right to seek additional limited, targeted disclosure" of "particular material documents or types of documents that were not captured by the prior searches" and that, in the event of a dispute over any such request, the requesting party could make an application to the Court(s). (*See* Stipulation Regarding EMEA Motion for Extension of Schedule ¶ 3 (Aug. 25, 2013).) Here, the EMEA Debtors are seeking disclosure of a very limited set of highly relevant documents, *i.e.*, joint privileged documents responsive to the "Tax Authority" and "APA" searches that are dated January 14, 2009 to January 31, 2010. There can be no question that the EMEA Debtors are entitled to these documents, which concern key issues relevant to the parties' transfer pricing and allocation arguments and a key defense upon which the Canadian Debtors rely.

- 4 -

The EMEA Debtors therefore respectfully request that (i) this Court schedule a joint hearing with the Delaware Court to consider this issue on an expedited basis (and we would be pleased to schedule a 9:30 appointment for that purpose) and (ii) the Courts enter an order directing the Canadian Debtors to produce to the EMEA Debtors and all other Core Parties as soon as possible all joint privileged documents responsive to the agreed "Tax Authority" and "APA" searches dated January 14, 2009 through January 31, 2010.

Yours truly,

Matthew P. Gottlieb

MPG:amh