Exhibit A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re                                      :   Chapter 11
:
NORTEL NETWORKS INC., *et al.*,            :   Case No. 09-10138 (KG)
:
Debtors.                                   :   (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DECLARATION OF JAMES P. SEERY, JR.
IN SUPPORT OF 6⅞ TRUSTEE'S OBJECTION TO CLAIMS

I, James P. Seery, Jr., hereby declare as follows:

1.      I am a partner in River Birch Capital LLC ("River Birch"). River Birch is the investment adviser for River Birch Master Fund, LP and P River Birch, Ltd., which are holders of 6.875% Notes due 2023 (the "6⅞ Notes") issued by Nortel Networks Limited ("NNL"). Wilmington Trust, N.A., as successor indenture trustee (the "6⅞ Trustee"), is the indenture trustee for the 6⅞ Notes.

2.      I submit this declaration (the "Declaration") in support of the *Objection of Wilmington Trust, N.A., as Trustee, to Claims of the Bank of New York Mellon, as Trustee and Law Debenture Trust Company of New York, as Trustee* (the "Claim Objection"). Except as otherwise indicated, all statements set forth in this Declaration are true and correct to the best of my knowledge and belief and are based on: (i) my personal knowledge; (ii) information supplied to me by other members of River Birch's management or their professionals; (iii) my review of relevant documents; or (iv) my opinion based upon my experience and knowledge of the Debtor's business affairs and financial condition. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration. I am authorized by River Birch and the 6⅞ Trustee to submit this Declaration.

3. These liquidating cases were commenced more than four years ago. Since January 14, 2009 (the "Petition Date"), virtually all of the estates' (Canadian and U.S.) assets have been sold, and approximately $9.5 billion awaits distribution.[1] Since the cases began, unsecured creditors, be they U.S., Canadian or EMEA,[2] have received virtually nothing. Since the filings, it is estimated that advisor fees across the jurisdictions presently exceed $900 million and are growing rapidly as the parties prepare for trial.[3]

4. After the asset sales were largely completed, public statements indicate that various key parties negotiated over the allocation of the approximately $7.3 billion in sale proceeds (the "Allocation Dispute"). They had no success. This Court and the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") then ordered successive mediation proceedings. However, both of those mediations ended in failure. In May 2013, this Court and the Canadian Court ordered the parties to commence the Allocation Protocol,[4] a protocol to litigate the Allocation Dispute. The 6⅞ Trustee is a "Core Party" to the Allocation Dispute. A trial on the Allocation Dispute is not scheduled until next spring, at the earliest.

---

[1] Total Sale Proceeds of $7.3 billion plus approximately $907.5 million in cash as of June 30, 2013 in the U.S. estates, plus approximately $500 million in cash in the Canadian estates and their subsidiaries, plus approximately $750 million in the EMEA estates. *See* Debtor in Possession Monthly Operating Report, *In re Nortel Networks Inc.*, No. 09-10138-KG (Bankr. D. Del. Sept. 25, 2013), ECF No. 11765; Ninety-First Report of the Monitor dated January 25, 2013, *In re Companies' Creditors Arrangement Act* (2013), File No. 09-CL-7950 (Can. Ont. Sup. Ct. J.)

[2] European, Middle Eastern, or African.

[3] *See* Theresa Tedesco, *No End in Sight to Nortel Fees Frenzy*, Financial Post (June 24, 2013, 8:43 AM), http://business.financialpost.com/2013/06/24/nortel-bankruptcy-fees/ (citing results from analysis conducted by Diane Urquhart, independent financial analyst for representatives of the Nortel Long-term Disabled Former Employees).

[4] *See* Order Entering Allocation Protocol, *In re Nortel Networks Inc.*, No. 09-10138-KG (Bankr. D. Del. May 17, 2013), ECF No. 10565; Order (Allocation Protocol), *In re Companies' Creditors Arrangement Act* (2013), File No. 09-CL-7950 (Can. Ont. Sup. Ct. J.).

5. On September 25, 2009, the Bank of New York Mellon ("BNYM"), as indenture trustee for various notes and convertible notes guaranteed by Nortel Networks Inc. ("NNI"), filed two proofs of claim (Nos. 3971 & 3972) (collectively, the "BNYM Claims")[5] against NNI, one claim for $2,785,241,840.28 (plus unliquidated amounts) as guarantor of the various notes issued under an indenture dated as of July 5, 2006, and the other claim for $1,155,508,420.14 (plus unliquidated amounts) as guarantor of various convertible notes under an indenture dated as of March 28, 2007. BNYM asserts postpetition interest as part of each of the BNYM Claims.

6. On September 28, 2009, Law Debenture Trust Company of New York ("Law Debenture"), as trustee for the notes issued by Nortel Networks Capital Corporation ("NNCC"), filed one proof of claim (No. 3946) (the "Law Debenture Claim" and, together with the BNYM Claims, the "Claims")[6] against NNCC for $150,986,875.00 (plus unliquidated amounts) as issuer under an indenture dated as of February 15, 1996. Law Debenture expressly reserved its rights with respect to postpetition interest. We understand and believe that the Claims constitute approximately 77% of all unsecured claims against the U.S. estates.

7. The Canadian creditors, as the ultimate beneficiaries of the equity in the U.S. estates, will receive distributions from the U.S. estates if the U.S. estates are solvent.[7] Because the Bankruptcy Code mandates that the maximum rate of postpetition interest payable

---

[5] Copies of the BNYM Claims are attached hereto as Exhibit A.

[6] A copy of the Law Debenture Claim is attached hereto as Exhibit B.

[7] Neither we nor the 6⅞ Trustee concedes that any appropriate allocation of the asset sale proceeds would render any of the U.S. estates solvent. As noted in the Trustee's May 16, 2013 Opening Submission of Allocation Position in the Allocation Protocol, it may be appropriate to allocate all of the value attributable to the asset sales to NNL in the first instance or alternatively on a global *pari passu* basis. Under either of those allocations, the U.S. estates will not be solvent and no postpetition interest can be awarded.

3

to unsecured creditors is the Federal Judgment Rate as of the Petition Date (0.44% per annum), even an allocation of <u>all</u> the sale proceeds to the U.S. estates will leave significant value for the Canadian estates.[8]  Indeed, we believe that a "win" for U.S. creditors means that Canadian creditors would receive only $91 million less than if the Canadian estates had "won" the Allocation Dispute.[9]  Simply put, the Allocation Dispute is a dispute over the incremental amount of postpetition interest payable to U.S. creditors, no more than $91 million.

        8.      The parties to the Allocation Dispute are immersed in extensive discovery preparing for a trial scheduled to begin next spring.  Between now and the trial, we believe that the Core Parties will spend tens of millions more and then millions of dollars again on the trial and the inevitable appeals.  Absent this Court's ruling on the Claim Objection, the spending on professional fees will continue unabated, and Nortel's global creditors will continue to wait with little more in view than the inevitable appeals and more delay.

---

[8] Assuming, *arguendo*, that the U.S. estates prevail entirely in the Allocation Dispute (i.e., every single dollar goes to the U.S. estates), distributions on the Claims are capped, as of December 31, 2013, at $4,181,898,419.96.

[9] The $91 million in postpetition interest through December 31, 2013 is calculated as follows.  According to the BNYM Claims, the total outstanding principal as of the Petition Date was $3.825 billion, and the total claimed accrued prepetition interest was $115,750,260.42.  According to the Law Debenture Claim, the total outstanding principal as of the Petition Date was $150,000,000, the total claimed accrued prepetition interest was $984,375.00, and prepetition fees and expenses were $2,500.00.  Therefore the total amount of the Claims is $4,091,737,135.42.  As of the Petition Date, the Federal Judgment Rate was 0.44%.  Therefore, based on the claimed amount, the annual postpetition interest accruing on the Claims is approximately $18,003,643.40 ($4,091,737,135.42 x 0.44%).  The amount of postpetition interest that will have accrued on the Claims from the Petition Date through December 31, 2013, or 1,813 days, and compounded annually is approximately $90,161,284.54 (($4,091,737,135.42*((1+0.0044)^4)) + ($4,164,228,400.92*0.0044/365*352) -$4,091,737,135.42).

## Declaration

Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 23, 2013
      New York, New York

_____
James P. Seery, Jr.