#415  P. 038/102    01/16/2009  14:00    12128155802    From:Bank of NY Mellon

succeeding Business Day at such Place of Payment with the same force and effect as if made on the Interest Payment Date, Redemption Date or Stated Maturity Date, and no interest shall accrue on such payment for the period from and after such Interest Payment Date, Redemption Date or Stated Maturity Date, as the case may be on account of such delay; *provided*, in the case of any series of Debt Securities for which interest accrues at a floating rate, payment of interest shall accrue until, and be paid upon, the next succeeding Business Day.

## ARTICLE TWO
### DEBT SECURITY FORMS

SECTION 201.    *FORMS GENERALLY.*

(a)    All Debt Securities, all Guarantees and the Trustee's certificate of authentication shall have such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture or by a Board Resolution and as set forth in an Officers' Certificate or any indenture supplemental hereto and may have such letters, numbers or other marks of identification or designation and such legends or endorsements placed thereon as the Issuer or the applicable Guarantor, as the case may be, may deem appropriate and as are not inconsistent with the provisions of this Indenture, or as may be required to comply with any law or with any rule or regulation made pursuant thereto or with any rule or regulation of any securities exchange on which any of the Debt Securities may be listed, or to conform to usage.

(b)    The Certificated Securities of any series and Guarantees, if any, shall be printed, lithographed or engraved or produced by any combination of these methods on steel engraved borders or may be produced in any other manner; *provided* that such manner is permitted by the rules of any securities exchange on which such Debt Securities may be listed or of any automated quotation system on which such Debt Securities may be quoted, all as determined by the officers executing such Debt Securities and Guarantees, as conclusively evidenced by their execution of such Debt Securities and Guarantees.

SECTION 202.    *FORMS OF DEBT SECURITIES.*

Debt Securities shall be in the forms approved by the officers executing such Debt Securities, as conclusively evidenced by their execution of such Debt Securities, having those terms approved by or pursuant to a Board Resolution and set forth in an Officers' Certificate or one or more indentures supplemental hereto which shall set forth the information required by Section 301. The Debt Securities of each series shall be issuable in registered form without coupons and may be in the form of one or more Global Securities in whole or in part.

SECTION 203.    *GUARANTEE BY GUARANTOR; FORM OF GUARANTEE; RELEASE OF GUARANTEE.*

(a)    Each Guarantor by its execution of this Indenture hereby agrees with each Holder of a Debt Security of each series authenticated and delivered by the Trustee and with the Trustee on behalf of each such Holder, to be unconditionally bound by the terms and provisions of the Guarantees set forth below and authorizes the Trustee to confirm such Guarantees to the Holder of each such Debt Security by its execution and delivery of each such Debt Security, with such Guarantees endorsed thereon, authenticated and delivered by the Trustee.

Guarantees to be endorsed on the Debt Securities shall, subject to this Section 203, be in substantially the form set forth below:

## GUARANTEE

## OF

## [GUARANTOR]

For value received, [Guarantor] (the "Guarantor") hereby unconditionally and irrevocably guarantees, jointly and severally to the Holder of the Debt Security upon which this Guarantee is endorsed and to the Trustee on behalf of each such Holder the due and punctual payment of the principal of, premium, if any, interest and Additional Amounts, if any, on such Debt Security and the due and punctual payment of any sinking fund or analogous payments referred to therein, if any, when and as the same shall become due and payable, whether on the Stated Maturity Date, by declaration of acceleration, call for redemption or otherwise, according to the terms thereof and of the indenture dated as of July 5, 2006 among Nortel Networks Limited, as issuer, Nortel Networks Corporation and Nortel Networks Inc., as guarantors and The Bank of New York, as trustee (the "Indenture" and as supplemented by [any applicable supplemental indenture], the "Indenture"). In case of the failure of Nortel Networks Limited, a corporation organized under the laws of Canada (herein called the "Issuer," which term includes any successor Person under the Indenture), punctually to make any such payment of principal, premium, if any, or interest, and Additional Amounts, if any, or any sinking fund or analogous payment, the Guarantor, for so long as this Guarantee shall be in effect, hereby agrees to cause any such payment to be made to or to the order of the Trustee punctually when and as the same shall become due and payable, whether on the Stated Maturity Date or by declaration of acceleration, call for redemption or otherwise, and as if such payment were made by the Issuer.

The Guarantor hereby agrees that its obligations hereunder shall be as if it were the principal debtor and not merely surety, and shall be absolute and unconditional, irrespective of, and shall be unaffected by, any invalidity, irregularity or unenforceability of such Debt Security or the Indenture, any failure to enforce the provisions of such Debt Security or the Indenture, or any waiver, modification or indulgence granted to the Issuer with respect thereto, by the Holder of such Debt Security or the Trustee or any other circumstance which may otherwise constitute a legal or equitable discharge of a surety or guarantor. The Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of merger or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest or notice with respect to such Debt Security or the indebtedness evidenced thereby or with respect to any sinking fund or analogous payment required under such Debt Security and all demands whatsoever, and covenants that this Guarantee will not be discharged except by payment in full of the principal of, premium, if any, and interest on such Debt Security or as otherwise described in Section 203 of the Indenture.

This Guarantee shall be automatically and unconditionally released on the terms set forth in Section 203(b) of the Indenture.

The Guarantor shall be subrogated to all rights of the Holder of such Debt Security and the Trustee against the Issuer in respect of any amounts paid to such Holder by the Guarantor

[New York #1531721 v17]

29

From:Bank of NY Mellon    12128155802    01/16/2009 14:00    #415 P. 039/102

pursuant to the provisions of this Guarantee; *provided* that the Guarantor shall not be entitled to enforce, or to receive any payments arising out of or based upon such right of subrogation until the principal of, premium, if any, and interest on all Debt Securities of the same series issued under the Indenture shall have been paid in full.

The Guarantor hereby agrees that its obligations hereunder shall be direct, unconditioned and unsubordinated and will rank equally and ratably without preference and at least equally with other senior unsecured obligations of the Guarantor, except to the extent prescribed by law. The Holder of a guaranteed Debt Security will be entitled to payment under the relevant Guarantee without taking any action whatsoever against the Issuer.

No reference herein to the Indenture and no provision of this Guarantee or of the Indenture shall alter or impair the guarantee of the Guarantor, which is absolute and unconditional, of the due and punctual payment of the principal of, premium, if any, and interest on, any Additional Amounts, and any sinking fund or analogous payments with respect to, the Debt Security upon which this Guarantee is endorsed.

This Guarantee shall not be valid or obligatory for any purpose until the certificate of authentication of such Debt Security shall have been manually executed by or on behalf of the Trustee under the Indenture.

All terms used in this Guarantee which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, but without giving effect to applicable principles of conflicts of law to the extent that the application of the law of another jurisdiction would be required thereby.

Executed and dated the date on the face hereof.

[GUARANTOR]

By _____
    Name:
    Title:

By _____
    Name:
    Title:

(b)    Release of Guarantee.

(i)    The Guarantee of each Guarantor shall be released automatically with respect to any series of Debt Securities upon discharge or defeasance of such series of Debt Securities as provided below under Article Four or Article Thirteen of this Indenture.

[New York #1531721 v17]

(ii)   The Guarantee of NNI will be automatically and unconditionally released and such Guarantor relieved of any obligations under its Guarantee with respect to any series of Debt Securities upon the occurrence of a Suspension Period.

(iii)  At such time as NNI's Guarantee is released with respect to any series of Debt Securities, NNI will no longer be considered a "Guarantor" of such series of Debt Securities. Within 15 Business Days of the occurrence of a Reversion Date with respect to such series of Debt Securities, NNI will enter into a supplemental indenture in order to provide a Guarantee of such series of Debt Securities on the terms set forth herein.

(iv)   The Trustee shall promptly execute any documents reasonably requested by the Issuer or a Guarantor in order to evidence the release of such Guarantor from its obligations under its Guarantee; provided that the Trustee shall not be obligated to execute or deliver any document evidencing the release of a Guarantee pursuant this Section 203(b) unless the Issuer has delivered an Officers' Certificate or an Opinion of Counsel to the effect that such release is in accordance with the provisions of this Indenture. Notwithstanding the foregoing, upon the occurrence of a Reversion Date, NNI hereby agrees to promptly execute and deliver to Trustee a supplemental indenture guaranteeing such series of Debt Securities on terms substantially similar to those under NNI's Guarantee in effect on the date of this Indenture.

SECTION 204.    *FORM OF TRUSTEE'S CERTIFICATE OF AUTHENTICATION.*

The form of the Trustee's certificate of authentication to be borne by the Debt Securities shall be substantially as follows:

Dated:

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

This is one of the Debt Securities issued under the within-mentioned Indenture.

THE BANK OF NEW YORK,
*as Trustee*

By: _____
*Authorized Signatory*

ARTICLE THREE

THE DEBT SECURITIES

SECTION 301.    *AMOUNT UNLIMITED; ISSUABLE IN SERIES.*

(a)    The aggregate principal amount of Debt Securities that may be authenticated and delivered under this Indenture is unlimited.

[New York #1531721 v17]                                31

From:Bank of NY Mellon                12128155802                01/16/2009 14:01        #415 P. 041/102

(b)      The Debt Securities may be issued in one or more series. Not all Debt Securities of any one series need be issued at the same time, and, unless otherwise provided, a series may be reopened for issuances of Additional Debt Securities of such series. There shall be established in or pursuant to a Board Resolution of the Issuer and set forth in an Officers' Certificate of the Issuer and the Guarantors, or established in one or more indentures supplemental hereto, prior to the issuance of Debt Securities of any series:

(1)      the title of the Debt Securities of such series (which shall distinguish the Debt Securities of such series from all other Debt Securities);

(2)      the limit, if any, upon the aggregate principal amount of the Debt Securities of such series that may be authenticated and delivered under this Indenture (except for Debt Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Debt Securities of such series pursuant to Sections 304, 305, 311, 906 or 1107);

(3)      the date or dates on which the principal of, or premium on, the Debt Securities of such series is payable;

(4)      the rate or rates or the method of determination thereof at which the Debt Securities of such series shall bear interest, if any, the date or dates from which such interest shall accrue, the Interest Payment Dates on which such interest shall be payable, and the Regular Record Dates for the interest payable on such Interest Payment Dates;

(5)      the place or places where the principal of (and premium, if any) and interest on Debt Securities of such series shall be payable;

(6)      the period or periods within which or the date or dates on which, if any, the price or prices at which and the terms and conditions upon which Debt Securities of such series may be repurchased or redeemed, in whole or in part, at the option of the Issuer;

(7)      the obligation, if any, of the Issuer to redeem, repay or purchase Debt Securities of such series either pursuant to any sinking fund or analogous provisions or at the option of a Holder thereof and the period or periods within which, the price or prices at which and the terms and conditions upon which Debt Securities of such series shall be redeemed, repaid or purchased, in whole or in part, pursuant to such obligation;

(8)      whether the Debt Securities of such series shall be issued in whole or in part in the form of one or more Global Securities and, in such case, the Depositary for such Global Security or Global Securities and the terms and conditions, if any, upon which interests in such Global Security or Global Securities may be exchanged in whole or in part for the individual Debt Securities represented thereby;

(9)      the denominations in which Debt Securities of such series shall be issuable;

(10)   if other than the principal amount thereof, the portion of the principal amount of Debt Securities of such series that shall be payable upon declaration of acceleration of the Maturity thereof pursuant to Section 501;

(11)   the currency or currencies of denominations of the Debt Securities of such series, which may be in Dollars or any Foreign Currency or any currency unit, and, if any such currency of denomination is a currency unit, the agency or organization, if any, responsible for overseeing such currency unit;

(12)   the currency or currencies in which payment of the principal of (and premium, if any) and interest on the Debt Securities of such series will be made, and the currency or currencies, if any, in which payment of the principal of (and premium, if any) or interest on Debt Securities of such series, at the election of each of the Holders thereof, may also be payable;

(13)   if the amount of payments of principal of (and premium, if any) or interest on the Debt Securities of such series may be determined with reference to an index based on a currency or currencies other than that in which the Debt Securities of the series are denominated or designated to be payable, the manner in which such amounts shall be determined;

(14)   if the payments of principal of (and premium, if any) or the interest on the Debt Securities of such series are to be made in a Foreign Currency, other than the Foreign Currency in which such Debt Securities are denominated, the manner in which the Exchange Rate with respect to such payments shall be determined;

(15)   the terms, if any, upon which the Debt Securities of such series will be defeasable;

(16)   whether any legends shall be stamped or imprinted on all or a portion of the Debt Securities of such series, and the terms and conditions upon which any such legends may be removed;

(17)   whether the Debt Securities of such series will be entitled to the benefit of a Registration Rights Agreement, and, if so, any Additional Interest provisions applicable to such Debt Securities;

(18)   any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture);

(19)   the form of the face and reverse of the Debt Securities of such series; and

(20)   CUSIP numbers, if any.

(c)     Any terms so established by the Issuer or any Guarantor in accordance with Section 301(b) must be reasonably satisfactory to the Trustee.

(d)     Notwithstanding the foregoing, a series may not be reopened to issue Additional Debt Securities of such series within five years of the Maturity of the Outstanding Debt Securities of such series.

(c)    All Debt Securities of any one series shall be identical except as to denomination, original Issue Date, aggregate principal amount, initial interest period, initial Restricted Period, registration rights and any changes related thereto and except as may otherwise be provided in or pursuant to such Board Resolution and set forth in such Officers' Certificate or in such indenture or indentures supplemental hereto.

(f)    If any of the terms of a series of Debt Securities are established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Corporate Secretary, the Secretary or an Assistant Secretary of the Issuer and delivered to the Trustee at or prior to the delivery of the Officers' Certificate setting forth the terms of the series.

(g)    Debt Securities of any series that are repayable at the option of the Holders shall be repaid in accordance with the terms of the Debt Securities of such series.

(h)    Debt Securities originally offered and sold to QIBs in reliance on Rule 144A will be issued in the form of one or more permanent Global Securities (each, a "Rule 144A Global Security").

(i)    Debt Securities originally offered and sold outside the United States in reliance on Regulation S will be issued in the form of one or more permanent Global Securities (each, a "Regulation S Global Security").

SECTION 302.    *DENOMINATIONS.*

Unless otherwise provided as contemplated by Section 301 with respect to any series of Debt Securities and except as provided in Section 303, Debt Securities will be issued in denominations of $2,000 and integral multiples of $1,000.

SECTION 303.    *EXECUTION, AUTHENTICATION, DELIVERY AND DATING.*

(a)    The Debt Securities shall be executed on behalf of the Issuer and the Guarantees shall be executed on behalf of each Guarantor by the Authorized Officers of the Issuer or such Guarantor, as the case may be.  The Debt Securities and the Guarantee of each Guarantor may but need not be under the corporate seal of the Issuer or such Guarantor, as the case may be, or a reproduction thereof (which reproduction shall for such purposes be deemed to be the corporate seal of the Issuer or such Guarantor, as the case may be).  The signature of any of these Authorized Officers on the Debt Securities or the Guarantees may be manual or facsimile.  Debt Securities or Guarantees bearing the manual or facsimile signatures of individuals who were at any time the Authorized Officers of the Issuer or applicable Guarantor, as the case may be, shall bind the Issuer or such Guarantor, as the case may be, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Debt Securities or Guarantees.

(b)    At any time and from time to time after the execution and delivery of this Indenture, the Issuer may deliver Debt Securities of any series and the related Guarantees executed by the Issuer and the applicable Guarantors to the Trustee for authentication, together with an Issuer Order for the authentication and delivery of such Debt Securities; whereupon the Trustee, in accordance with such Issuer Order shall authenticate and deliver such Debt Securities.  At any

time and from time to time after the execution and delivery of this Indenture and after the effectiveness of a registration statement under the Securities Act with respect to the Debt Securities of any series, the Issuer may deliver Exchange Debt Securities evidencing the same, continuing indebtedness and of such series executed by the Issuer (with the Guarantee endorsed thereon executed by the applicable Guarantors) together with an Issuer Order for the authentication and delivery of such Exchange Debt Securities and of a like principal amount of Initial Debt Securities of such series for cancellation in accordance with Section 316, and the Trustee in accordance with the Issuer Order shall authenticate and deliver such Exchange Debt Securities.  The Trustee shall be entitled to receive, prior to the authentication and delivery of such Debt Securities, the supplemental indenture or the Board Resolution by or pursuant to which the terms of such Debt Securities have been approved, (x) an Opinion or Opinions of Counsel of the Issuer and applicable Guarantor(s) to the effect that:

(i)    in the event that the forms or terms of such Debt Securities and Guarantees have been established in a supplemental indenture, the execution and delivery of such supplemental indenture have been duly authorized by all necessary corporate action of the Issuer and the Guarantors, such supplemental indenture has been duly executed and delivered by the Issuer and the Guarantors and, assuming due authorization, execution and delivery by the Trustee, is a valid and binding obligation enforceable against the Issuer and the Guarantors in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, to general principles of equity and, with regard to NNC and the Issuer, to the effect of judicial application of foreign laws or foreign governmental actions affecting creditors' rights;

(ii)   the execution and delivery of such Debt Securities have been duly authorized by all necessary corporate action of the Issuer and such Debt Securities have been duly executed by the Issuer and, assuming due authentication by the Trustee and delivery by the Issuer, are valid and binding obligations of the Issuer enforceable against the Issuer in accordance with their terms, entitled to the benefits of the Indenture, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, to general principles of equity and, with regard to the Issuer, to the effect of judicial application of foreign laws or foreign governmental actions affecting creditors' rights;

(iii)  the execution and delivery of such Guarantees have been duly authorized by all necessary corporate action of the Guarantors and such Guarantees, if any, have been duly executed by the Guarantors and, assuming due authentication by the Trustee of the Debt Securities and delivery of the Debt Securities by the Issuer and delivery of the Guarantees by the Guarantors, are valid and binding obligations of the Guarantors enforceable against such Guarantors in accordance with their terms, entitled to the benefits of the Indenture, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, to general principles of equity and, with regard to NNC, to the effect of judicial application of foreign laws or foreign governmental actions affecting creditors' rights; and

(iv)   such other matters as the Trustee may reasonably request;

[New York #1531721 v17]                                    35

and (y) an Officers' Certificate to the effect that:

(i)    the forms of such Debt Securities and Guarantees have been established in conformity with the provisions of this Indenture;

(ii)    the terms of such Debt Securities and Guarantees have been established in conformity with the provisions of this Indenture;

(iii)    the amount of Outstanding Debt Securities of such series, together with the amount of such Debt Securities, does not exceed any limit established under the terms of this Indenture, a Board Resolution or any supplemental indenture on the amount of Debt Securities of such series that may be authenticated and delivered; and

(iv)    the absence of any event that is, or after notice or lapse of time or both would become, an Event of Default.

Notwithstanding any contrary provision herein, if the Issuer and applicable Guarantor(s) shall establish pursuant to Section 301 that the Debt Securities of a series may be issued from time to time, it shall not be necessary to deliver the Board Resolution, Officers' Certificate and Opinion of Counsel otherwise required pursuant to this Section 303 or Section 301 at or prior to the time of authentication of each Debt Security of such series if such documents are delivered at or prior to the authentication upon original issuance of the first Debt Security of such series to be issued.

(c)    If the Issuer shall establish pursuant to Section 301 that the Debt Securities of a series are to be issued in whole or in part in the form of one or more Global Securities, then the Issuer and the Guarantors shall execute and the Trustee shall authenticate and deliver one or more Global Securities that shall: (i) represent an aggregate amount equal to the aggregate principal amount of the Outstanding Debt Securities of such series to be represented by one or more Global Securities; (ii) be registered in the name of the Depositary for such Global Security or Global Securities or the nominee of such Depositary; (iii) be held or be delivered by the Trustee to such Depositary or pursuant to such Depositary's instruction; and (iv) bear the legends set forth in Section 307(a) and (c).

(d)    Each Depositary designated pursuant to Section 301 for a Global Security must, at the time of its designation and at all times while it serves as such Depositary, be a clearing agency registered under the Exchange Act and any other applicable statute or regulation.

(e)    The Trustee shall not be required to authenticate any Debt Securities if the issuance of such Debt Securities pursuant to this Indenture will adversely affect the Trustee's own rights, duties or immunities under this Indenture.

(f)    Each Debt Security shall be dated the date of its issue, except as otherwise provided pursuant to Section 301 with respect to Debt Securities of such series.

(g)    No Debt Security or Guarantee endorsed thereon shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Debt Security a certificate of authentication substantially in the form provided for herein duly

executed by the Trustee by manual signature of one of its Responsible Officers, and such certificate upon any Debt Security shall be conclusive evidence, and the only evidence, that such Debt Security has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture.

SECTION 304.    *TEMPORARY DEBT SECURITIES.*

(a)    Pending the preparation of Certificated Securities of any series, the Issuer may execute, and, upon receipt of an Issuer Order, the Trustee shall authenticate and deliver, temporary Debt Securities that are printed, lithographed, typewritten, photocopied or otherwise produced, in any authorized denomination, substantially of the tenor of the Certificated Securities in lieu of which they are issued, in registered form and having endorsed thereon Guarantees executed by the applicable Guarantors substantially of the tenor of the definitive Guarantees, and in all cases with such appropriate insertions, omissions, substitutions and other variations as the officers of the Issuer and the Guarantors executing such Debt Securities and Guarantees may determine, as conclusively evidenced by their execution of such Debt Securities. Any such temporary Debt Securities may be in global form, representing all or a portion of the Outstanding Debt Securities of such series. Every such temporary Debt Security and Guarantee shall be executed by Authorized Officers of the Issuer and the Guarantors and shall be authenticated and delivered by the Trustee upon the same terms and conditions and in substantially the same manner, and with the same effect, as the Certificated Securities and Guarantees in lieu of which they are issued.

(b)    If temporary Debt Securities of any series are issued, the Issuer will cause Certificated Securities of such series to be prepared without unreasonable delay. Upon surrender for cancellation of any one or more temporary Debt Securities of any series, the Issuer shall execute and the Trustee shall authenticate and deliver in exchange therefor a like principal amount of Certificated Securities of the same series of authorized denominations and of like tenor and having endorsed thereon the Guarantees executed by the applicable Guarantor(s). Until so exchanged, temporary Debt Securities of any series shall in all respects be entitled to the same benefits under this Indenture as individual Debt Securities of such series, except as otherwise specified as contemplated by Section 301 with respect to the payment of interest on Global Securities in temporary form.

(c)    Upon any exchange of a portion of a temporary Global Security for a Certificated Global Security or for the individual Debt Securities represented thereby pursuant to this Section 304 or Section 305, the temporary Global Security shall be endorsed by the Trustee to reflect the reduction of the principal amount evidenced thereby, whereupon the principal amount of such temporary Global Security shall be reduced for all purposes by the amount so exchanged and endorsed.

SECTION 305.    *REGISTRATION, REGISTRATION OF TRANSFER AND EXCHANGE.*

(a)    The Issuer will maintain an office or agency (the "Security Registrar") at which shall be kept a register (the "Security Register") which, subject to such reasonable regulations as it may prescribe, shall contain the names and addresses of the Holders and provide for the registration of Debt Securities and of transfers of Debt Securities. Unless and until otherwise determined by the Issuer, the Trustee shall act as Security Registrar and the Security Registers shall be kept at the office or agency of the Trustee in the Borough of Manhattan, The City of New York. Such

[New York 61531721 v17]

37

From:Bank of NY Mellon          12128156802          01/16/2009 14:03          #415 P. 048/102

Security Registers shall be in written form or in any other form capable of being converted into written form within a reasonable period of time. At all reasonable times, the Security Registers shall be open for inspection by the Trustee.

(b)    Upon surrender for registration of transfer of any Debt Security of any series at the office or agency of the Issuer maintained for such purpose, the Issuer shall execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Debt Securities of the same series of any authorized denomination or denominations, of like tenor and aggregate principal amount and having endorsed thereon the Guarantees executed by the applicable Guarantor(s). Every Debt Security presented or surrendered for registration of transfer or for exchange shall (if so required by the Issuer, the Security Registrar or the Trustee) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Issuer, the Security Registrar and the Trustee, and duly executed, by the Holder thereof or his attorney duly authorized in writing.

(c)    Notwithstanding any other provision of this Section 305, unless and until it is exchanged in whole or in part for a Certificated Security, a Global Security representing all or a portion of the Debt Securities of a series may not be transferred except as a whole by the Depositary for such series to a nominee of such Depositary or by a nominee of such Depositary to such Depositary or another nominee of such Depositary or by such Depositary or any such nominee to a successor Depositary for such series or a nominee of such successor Depositary.

(d)    At the option of the Holder, Debt Securities of any series (other than a Global Security) may be exchanged for other Debt Securities of the same series of any authorized denomination or denominations of a like aggregate principal amount, upon surrender of the Debt Securities to be exchanged at such office or agency. Whenever any Debt Securities are so surrendered for exchange, the Issuer shall execute the Debt Securities which the Holder making the exchange is entitled to receive, the applicable Guarantor(s) shall execute the Guarantees endorsed thereon, and the Trustee shall authenticate and deliver such Debt Securities.

(e)    If at any time the Depositary for the Debt Securities of a series notifies the Issuer that it is unwilling or unable to continue as Depositary for the Debt Securities of such series or if at any time the Depositary for the Debt Securities of such series shall no longer be eligible under Section 303(d), the Issuer shall appoint a successor Depositary with respect to the Debt Securities of such series.

(f)    The Issuer may at any time and in its sole discretion determine that individual Debt Securities of any series issued in the form of one or more Global Securities shall no longer be represented by such Global Security or Global Securities. In such event, the Issuer will execute, and the Trustee, upon receipt of an Issuer Order for the authentication and delivery of individual Certificated Securities of such series, will authenticate and deliver, individual Certificated Securities of such series in an aggregate principal amount equal to the principal amount of the Global Security or Global Securities representing Debt Securities of such series (which shall have endorsed thereon Guarantee(s) executed by the applicable Guarantor(s)) in exchange for such Global Security or Global Securities.

(g)    If specified by the Issuer pursuant to Section 301 with respect to a series of Debt Securities, the Depositary for such series of Debt Securities may surrender a Global Security for

such series of Debt Securities in exchange in whole or in part for individual Certificated Securities of such series on such terms as are acceptable to the Issuer and such Depositary. Thereupon, the Issuer shall execute, and the Trustee shall authenticate and deliver, without service charge:  (i) to each Person specified by such Depositary a new individual Certificated Security or Certificated Securities of the same series (which shall have endorsed thereon Guarantee(s) executed by the applicable Guarantor(s)), of any authorized denomination as requested by such Person in aggregate principal amount equal to and in exchange for such Person's beneficial interest in the Global Security; and (ii) to such Depositary a new Global Security (which shall have endorsed thereon Guarantee(s) executed by the applicable Guarantor(s)) in a denomination equal to the difference, if any, between the principal amount of the surrendered Global Security and the aggregate principal amount of Certificated Securities delivered to Holders thereof.

(h)       In any exchange provided for in Section 305(f) or Section 305(g), the Issuer shall execute and the Trustee will authenticate and deliver Debt Securities, which shall have endorsed thereon Guarantee(s) executed by the applicable Guarantor(s), in registered form in authorized denominations.

(i)       Upon the exchange of a Global Security for individual Certificated Securities, such Global Security shall be cancelled by the Trustee.  Individual Certificated Securities exchanged for portions of a Global Security pursuant to this Section shall be registered in such names and in such authorized denominations as the Depositary for such Global Security, pursuant to instructions from its direct or indirect participants or otherwise, shall instruct the Trustee.  The Trustee shall deliver such Certificated Securities to the Persons in whose names such Certificated Securities are so registered.

(j)       All Debt Securities executed for delivery upon any transfer or exchange of Debt Securities shall be valid obligations of the Issuer evidencing the same debt, and entitled to the same benefits under this Indenture, as the Debt Securities surrendered for such transfer or exchange.  No service charge shall be made for any registration of transfer or exchange of Debt Securities, but the Issuer may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any transfer, registration of transfer or exchange of Debt Securities, other than exchanges pursuant to Sections 304, 906 or 1107 not involving any transfer.

(k)       The Issuer shall not be required to: (i) execute for delivery, register the transfer of or exchange of Debt Securities of any particular series during a period beginning at the opening of business 15 days before the day of the mailing of a notice of redemption of Debt Securities of such series selected for redemption under Section 1103 and ending at the close of business on the day of such mailing; or (ii) register the transfer of or exchange of any Debt Security so selected for redemption in whole or in part, except the unredeemed portion of any Debt Security being redeemed in part.

SECTION 306.       *GLOBAL SECURITY PROVISIONS.*

(a)       Each Global Security initially shall: (i) be registered in the name of the Depositary or the nominee of the Depositary, (ii) be delivered to the Security Custodian, and (iii) bear the appropriate legend, as set forth in Section 307.  Any Global Security may be represented by more

From:Bank of NY Mellon          12128155802          01/16/2009 14:03          #415  P. 049/102

than one certificate.  The aggregate principal amount of each Global Security may from time to time be increased or decreased by adjustments made on the records of the Security Custodian, as provided in this Indenture.

(b)      Participants shall have no rights under this Indenture with respect to any Global Security held on their behalf by the Depositary or by the Security Custodian under such Global Security, and the Depositary may be treated by the Issuer, the Guarantors, the Trustee, the Paying Agent and the Security Registrar and any of their agents as the absolute owner of such Global Security for all purposes whatsoever.  Notwithstanding the foregoing, nothing herein shall prevent the Issuer, the Guarantors, the Trustee, the Paying Agent or the Security Registrar or any of their agents from giving effect to any written certification, proxy or other authorization furnished by the Depositary or impair, as between the Depositary and its Participants, the operation of customary practices of the Depositary governing the exercise of the rights of an owner of a beneficial interest in any Global Security.  The registered Holder of a Global Security may grant proxies and otherwise authorize any Person, including Participants and Persons that may hold interests through Participants, to take any action that a Holder is entitled to take under this Indenture or the Debt Securities.

(c)      Except as provided below or in Sections 305(f) or (g), owners of beneficial interests in Global Securities will not be entitled to receive Certificated Securities.  Certificated Securities shall be issued to all owners of beneficial interests in a Global Security in exchange for such interests if:

(i)      the Depositary notifies the Issuer that it is unwilling or unable to continue as depositary for such Global Security or the Depositary ceases to be a clearing agency registered under the Exchange Act, at a time when the Depositary is required to be so registered in order to act as depositary, and in each case a successor depositary is not appointed by the Issuer within 90 days of such notice,

(ii)     the Issuer executes and delivers to the Trustee and Security Registrar an Officers' Certificate stating that such Global Security shall be so exchangeable, or

(iii)    an Event of Default has occurred and is continuing and the Security Registrar has received a request to issue Certificated Securities from the Depositary.

In connection with the exchange of an entire Global Security for Certificated Securities pursuant to this paragraph (c), such Global Security shall be surrendered to the Trustee for cancellation, and the Issuer shall execute, and upon Issuer Order the Trustee shall authenticate and deliver, to each beneficial owner identified by the Depositary in exchange for its beneficial interest in such Global Security, an equal aggregate principal amount of Certificated Securities of authorized denominations.

SECTION 307.      *LEGENDS*

(a)      Global Security Legends. (i) Each Global Security shall bear a legend in substantially the following form:

[New York #1531721 v17]                    40

"THIS IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE REFERRED TO HEREINAFTER.

TRANSFERS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS IN WHOLE, BUT NOT IN PART, TO NOMINEES OF [INSERT NAME OF DEPOSITARY] OR TO A SUCCESSOR THEREOF OR SUCH SUCCESSOR'S NOMINEE AND TRANSFERS OF PORTIONS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE INDENTURE REFERRED TO ON THE REVERSE HEREOF."

(ii)  If DTC is the Depositary for a Global Security, such Global Security shall also bear the following legend:

"UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), NEW YORK, NEW YORK, TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN."

(b) (i) Securities Act Legends.  Restricted Debt Securities and their Successor Debt Securities shall bear a Restricted Debt Securities Legend substantially in the form set forth below:

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION.  THE HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS PURCHASED SECURITIES, TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE DATE (THE "RESALE RESTRICTION TERMINATION DATE") THAT IS TWO YEARS (IN THE CASE OF RULE 144A DEBT SECURITIES) OR 40 DAYS (IN THE CASE OF REGULATION S DEBT SECURITIES) AFTER THE LATER OF THE ORIGINAL ISSUE DATE HEREOF AND THE LAST DATE ON WHICH THE ISSUER, ANY GUARANTOR OR ANY AFFILIATE OF THE ISSUER OR ANY GUARANTOR WAS THE OWNER OF THIS SECURITY (OR ANY PREDECESSOR OF SUCH SECURITY), ONLY (A) TO THE ISSUER OR A GUARANTOR, (B) PURSUANT TO A REGISTRATION

[New York #1531721 v17]                    41

STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT, TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (D) PURSUANT TO OFFERS AND SALES THAT OCCUR OUTSIDE THE UNITED STATES WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, (E) TO AN INSTITUTIONAL "ACCREDITED INVESTOR" WITHIN THE MEANING OF RULE 501(a)(1), (2), (3) OR (7) UNDER THE SECURITIES ACT THAT IS AN INSTITUTIONAL ACCREDITED INVESTOR ACQUIRING THE SECURITY FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF SUCH AN INSTITUTIONAL ACCREDITED INVESTOR, IN EACH CASE IN A MINIMUM PRINCIPAL AMOUNT OF THE SECURITIES OF $250,000, FOR INVESTMENT PURPOSES AND NOT WITH A VIEW TO OR FOR OFFER OR SALE IN CONNECTION WITH ANY DISTRIBUTION IN VIOLATION OF THE SECURITIES ACT, OR (F) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S, ANY GUARANTOR'S AND THE TRUSTEE'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSES (D), (E) OR (F) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM. THIS LEGEND WILL BE REMOVED UPON THE REQUEST OF THE HOLDER AFTER THE RESALE RESTRICTION TERMINATION DATE.

(c)    Canadian Securities Legend.  Unless the Security Registrar receives an Officers' Certificate confirming that the following legend is not required, each Global Security shall bear a legend in substantially the following form:

"UNLESS PERMITTED UNDER CANADIAN SECURITIES LEGISLATION, THE HOLDER OF THE SECURITY MUST NOT TRADE THE SECURITY IN CANADA BEFORE [INSERT DATE THAT IS FOUR MONTHS PLUS ONE DAY AFTER THE ISSUE DATE]."

SECTION 308.    *TRANSFER AND EXCHANGE.*

(a)    The following provisions shall apply with respect to any proposed transfer of an interest in a Rule 144A Global Security that is a Restricted Debt Security:  If (1) the owner of a beneficial interest in a Rule 144A Global Security wishes to transfer such interest (or portion thereof) to a Non-U.S. Person pursuant to Regulation S and (2) such Non-U.S. Person wishes to hold its interest in the Debt Securities through a beneficial interest in the Regulation S Global Security, (x) upon receipt by the Security Custodian and Security Registrar of:

(i)      instructions from the Holder of the Rule 144A Global Security directing the Security Custodian and Security Registrar to credit or cause to be credited a beneficial interest in the Regulation S Global Security equal to the principal

#415  P. 053/102

01/16/2009  14:04

12128155802

From: Bank of NY Mellon

amount of the beneficial interest in the Rule 144A Global Security to be transferred, and

(ii)     a certificate in the form of Exhibit B from the transferor,

(y) subject to the rules and procedures of the Depositary, the Security Custodian and Security Registrar shall increase the Regulation S Global Security and decrease the Rule 144A Global Security by such amount in accordance with the foregoing and (z) compliance with the requirements of Section 308(b)(ii), if applicable.

(b)     Other Transfers.  (i) Any transfer of Restricted Debt Securities not described above (other than a transfer of a beneficial interest in a Global Security that does not involve an exchange of such interest for a Certificated Security or a beneficial interest in another Global Security, which must be effected in accordance with applicable law and the rules and procedures of the Depositary, but is not subject to any procedure required by this Indenture) shall be made only upon receipt by the Security Registrar of such Opinions of Counsel, certificates and/or other information reasonably required by and satisfactory to it in order to ensure compliance with the Securities Act and this Section 308.

(ii) Restricted Debt Securities and, unless the Securities Registrar receives an Officers' Certificate confirming that this Section 308(b)(ii) does not apply to Exchange Debt Securities, Exchange Debt Securities shall not be transferred, directly or indirectly, in or into Canada before the date that is four months plus one day after the Issue Date of such Debt Securities except pursuant to an available exemption from the prospectus requirements of applicable provincial or territorial securities laws in Canada.  Any transfer of such Debt Securities in or into Canada shall be made only upon receipt by the Security Registrar of an Opinion of Counsel, certificates and/or other information reasonably required by and satisfactory to it in order to ensure compliance with applicable provincial or territorial securities laws in Canada.

(c)     Use and Removal of Restricted Debt Securities Legends.  Upon the transfer, exchange or replacement of Certificated Securities (or beneficial interests in a Global Security) not bearing (or not required to bear upon such transfer, exchange or replacement) a Restricted Debt Securities Legend, the Security Custodian and Security Registrar shall exchange such Certificated Securities (or beneficial interests) for beneficial interests in a Global Security (or Certificated Securities if they have been issued pursuant to this paragraph (c)) that does not bear a Restricted Debt Securities Legend.  Upon the transfer, exchange or replacement of Certificated Securities (or beneficial interests in a Global Security) bearing a Restricted Debt Securities Legend, the Security Custodian and Security Registrar shall deliver only Certificated Securities (or beneficial interests in a Global Security) that bear a Restricted Debt Securities Legend unless:

(i)     such Certificated Securities (or beneficial interests) are exchanged in an Exchange Offer;

(ii)    such Certificated Securities (or beneficial interests) are transferred pursuant to a Shelf Registration Statement;

(iii)   such Certificated Securities (or beneficial interests) are transferred pursuant to Rule 144 upon delivery to the Security Registrar of a certificate of the transferor

[New York #1531721 v17]

43

in the form of Exhibit B and an Opinion of Counsel reasonably satisfactory to the
Security Registrar;

(iv)    such Certificated Securities (or beneficial interests) are transferred, replaced or
exchanged after the Resale Restriction Termination Date therefor; or

(v)    in connection with such transfer, exchange or replacement the Security Registrar
shall have received an Opinion of Counsel and other evidence reasonably
satisfactory to it to the effect that neither such Restricted Debt Securities Legend
nor the related restrictions on transfer are required in order to maintain
compliance with the provisions of the Securities Act.

The Restricted Debt Securities Legend on any Certificated Security shall be removed at the
written request of the Holder on or after the Resale Restriction Termination Date therefor. The
Holder of a Global Security may exchange an interest therein for an equivalent interest in a
Global Security not bearing a Restricted Debt Securities Legend upon transfer of such interest
pursuant to any of clauses (i) through (v) of this paragraph (c). The Issuer shall deliver to the
Trustee an Officers' Certificate promptly upon effectiveness, withdrawal or suspension of any
Registration Statement.

(d)    Consolidation of Global Securities.

(i)    If a Global Security not bearing a Restricted Debt Securities Legend is
Outstanding at the time of an Exchange Offer with respect to the same series of
Debt Securities, any interests in a Global Security exchanged in such Exchange
Offer shall be exchanged for interests in such Outstanding Global Security.

(ii)    Nothing in this Indenture shall provide for the consolidation of any Debt
Securities with any other Debt Securities to the extent that they constitute, as
determined pursuant to an Opinion of Counsel, different classes of securities for
U.S. federal income tax purposes.

(e)    Retention of Documents. The Security Registrar shall retain copies of all letters, notices
and other written communications it receives pursuant to this Article Three. The Issuer and each
Guarantor shall have the right to inspect and make copies of all such letters, notices or other
written communications at any reasonable time upon the giving of reasonable written notice to
the Security Registrar.

SECTION 309.    *EXCHANGE DEBT SECURITIES.*

At any time and from time to time after the execution and delivery of this Indenture and after the
effectiveness of a Registration Statement under the Securities Act with respect thereto, the Issuer
may deliver Exchange Debt Securities executed by the Issuer and having endorsed thereon
Guarantees executed by the Guarantors to the Trustee for authentication, together with an Issuer
Order in accordance with Section 303 of this Indenture evidencing the same continuing
indebtedness and of like principal amount of Initial Debt Securities of such series for
cancellation in accordance with Section 316 of this Indenture, and the Trustee in accordance with
such Issuer Order shall authenticate and deliver such Debt Securities. Any Initial Debt Securities

[New York #1531721 v17]    44

of any series that remain Outstanding after the completion of the Exchange Offer, together with the Exchange Debt Securities of such series issued in connection with the Exchange Offer, will be treated as a single class of Debt Securities under the Indenture.

SECTION 310.      *ADDITIONAL DEBT SECURITIES.*

(a)      The Issuer may, from time to time, subject to compliance with any other applicable provisions of this Indenture, without the consent of the Holders, create and issue pursuant to this Indenture additional Debt Securities ("Additional Debt Securities") of any series currently outstanding, subject to any limitations on the principal amount of such series established pursuant to Section 301 and the limitations set forth in Section 1006 of this Indenture, and deliver such Additional Debt Securities executed by the Issuer and having endorsed thereon Guarantees executed by the Guarantors to the Trustee for authentication, together with an Issuer Order. Holders of Additional Debt Securities of a series will have the rights to vote together with Holders of Debt Securities of such series issued on the Issue Date of such series of Debt Securities and Exchange Debt Securities of such series as one class. Any Additional Debt Securities of any one series shall have terms and conditions substantially similar to those of the Initial Debt Securities and the Exchange Debt Securities of such series, except for the following changes and any other changes related thereto:

(i)      the Additional Debt Securities may have a different Issue Date;

(ii)      the Additional Debt Securities may have a different amount of interest payable on the first Interest Payment Date after issuance than is payable on other Debt Securities of such series; and

(iii)      the Additional Debt Securities may have terms specified in the Board Resolution, Officers' Certificate or supplemental indenture for such Additional Debt Securities making appropriate adjustments to this Article Three, as applicable (and related definitions) applicable to such Additional Debt Securities in order to conform to and ensure compliance with the Securities Act (or other applicable securities laws) and any registration rights or similar agreement applicable to such Additional Debt Securities, which are not adverse in any material respect to the Holder of any Debt Securities (other than such Additional Debt Securities); *provided* that any such terms must be reasonably satisfactory to the Trustee;

*and further provided*, in each case, that no adjustment pursuant to this Section 310 shall cause such Additional Debt Securities to constitute, as determined pursuant to an Opinion of Counsel, a class of securities different from the Original Debt Securities for U.S. federal income tax purposes except for Additional Debt Securities that have a separate CUSIP number from the Debt Securities pending performance by the Issuer of its obligations under the applicable Registration Rights Agreement.

SECTION 311.      *MUTILATED, DESTROYED, LOST OR STOLEN DEBT SECURITIES.*

(a)      If: (i) any mutilated Debt Security is surrendered to the Trustee; or (ii) the Issuer, the Guarantors and the Trustee receive evidence to their satisfaction of the destruction, loss or theft of any Debt Security, and the Issuer, the Guarantors and the Trustee receive such security or

From:Bank of NY Mellon                12128156802                01/16/2009 14:04        #415 P.055/102

01/16/2009 14:06    #415  P.066/102

12128155802

From:Bank of NY Mellon

indemnity satisfactory to them; then, in the absence of notice to the Issuer, any Guarantor or the Trustee that such Debt Security has been acquired by a *bona fide* purchaser, the Issuer and the Guarantors shall execute and upon such *bona fide* purchaser's written request the Trustee shall authenticate and deliver, in exchange for any such Debt Security, a new Debt Security of the same series and of like tenor and principal amount and having endorsed thereon the Guarantees executed by the Guarantors, in registered form bearing a number not contemporaneously outstanding appertaining to such destroyed, lost or stolen Debt Security.

(b)    If any such mutilated, destroyed, lost or stolen Debt Security has become or is about to become due and payable, the Issuer or the Guarantors in their discretion may, instead of executing for delivery a new Debt Security, pay such Debt Security. Upon the execution for delivery of any new Debt Security under this Section, the Issuer or any Guarantor may require the payment by the Holder of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

(c)    Every new Debt Security of any series and the Guarantees endorsed thereon executed for delivery pursuant to this Section in lieu of any destroyed, lost or stolen Debt Security shall constitute contractual obligations of the Issuer and the Guarantors, whether or not such destroyed, lost or stolen Debt Security shall be at any time enforceable by anyone, and any such new Debt Security and Guarantees shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Debt Securities of the same series and the Guarantees endorsed thereon duly issued hereunder.

(d)    The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Debt Securities.

SECTION 312.    *PAYMENT OF INTEREST; INTEREST RIGHTS PRESERVED.*

(a)    Interest on any Debt Security that is payable on any Interest Payment Date shall be paid to the Person in whose name that Debt Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest. At the option of the Issuer, payment of interest on any Debt Security may be made by check mailed to the address of the Person entitled thereto as such address shall appear in the Security Register or by wire transfer to an account designated by such Person.

(b)    Any interest on any Debt Security of any series that is payable, but is not punctually paid or duly provided for, on any Interest Payment Date (herein called "Defaulted Interest") shall be paid in accordance with the following provisions and not to the registered Holder on the relevant Regular Record Date by virtue of his having been such Holder.

(i)    The Issuer may elect to make payment of any Defaulted Interest to the Persons in whose names the Debt Securities of such series (or their respective Predecessor Securities) are registered at the close of business on a Special Record Date for the payment of such Defaulted Interest, which shall be fixed in the following manner. The Issuer shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each Debt Security of such series and the date of the

01/16/2009 14:05    #415  P. 057/102

12128165802

From:Bank of NY Mellon

proposed payment, and at the same time the Issuer shall deposit with the Trustee an amount of money equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit prior to the date of the proposed payment, such money when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest. Thereupon the Trustee shall fix a Special Record Date for the payment of such Defaulted Interest, which shall be not more than 15 days and not less than 10 days prior to the date of the proposed payment and not less than 10 days after the receipt by the Trustee of the notice of the proposed payment. The Trustee shall cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, first-class postage prepaid, to each Holder of Debt Securities of such series at his address as it appears in the Security Register, not less than 10 days prior to such Special Record Date. Defaulted Interest shall be paid to the Persons in whose names the Debt Securities of such series (or their respective Predecessor Securities) are registered at the close of business on such Special Record Date and shall no longer be payable pursuant to the following clause (ii).

(ii)    The Issuer may make payment of any Defaulted Interest on the Debt Securities of any series in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Debt Securities may be listed, and upon such notice as may be required by such exchange, if, after notice given by the Issuer to the Trustee of the proposed payment pursuant to this clause, such manner of payment shall be deemed practicable by the Trustee.

(c)    Subject to the foregoing provisions of this Section, each Debt Security delivered under this Indenture upon registration of transfer of or in exchange for or in lieu of any other Debt Security shall carry the rights to interest accrued and unpaid, and to accrue, that were carried by such other Debt Security.

SECTION 313.    *ADDITIONAL AMOUNTS.*

(a)    All payments made by the Issuer or the Guarantors, as applicable, under or in respect of the Debt Securities or the Guarantees will be made without withholding or deduction for or on account of any present or future taxes, duties, assessments or governmental charges imposed or levied by or on behalf of the government of any jurisdiction, including Canada or any province or territory thereof, or by any authority or agency therein or thereof having power to tax, all of which are herein referred to as "Taxes," unless the Issuer or such Guarantor is required to withhold or deduct Taxes by law or by the interpretation or administration thereof by the relevant governmental authority. If the Issuer or any Guarantor is required to withhold or deduct any amount for or on account of Taxes from any payment made under or in respect of the Debt Securities or the Guarantees, the Issuer or such Guarantor, as applicable, will pay such additional amounts, which are herein referred to as "Additional Amounts," as may be necessary so that the net amount received by each Holder of a Debt Security (including Additional Amounts) after such withholding or deduction will not be less than the amount the Holder would have received if such Taxes had not been withheld or deducted. However, no Additional Amounts will be payable with respect to a payment made to a Holder of a Debt Security, which we refer to as an "Excluded Holder," in respect of a beneficial owner, (i) with which the Issuer or such Guarantor

[New York #1531721 v17]    47

does not deal at arm's length (within the meaning of the Income Tax Act (Canada)) at the time of making such payment, (ii) which is subject to such Taxes by reason of its being connected presently or formerly with any jurisdiction, including Canada or any province or territory thereof, otherwise than by reason of the Holder's purchase of the Debt Securities, the holding of Debt Securities or the receipt of payments in respect of the Debt Securities, (iii) which presents such Debt Security for payment (where presentation is required) more than 30 days after the relevant date (except to the extent that the Holder thereof would have been entitled to such Additional Amounts on presenting a Debt Security for payment on the last day of such 30 day period); for this purpose, the "relevant date" in relation to any payments on any Debt Security means: (A) the due date for payment thereof, or (B) if the full amount of the monies payable on such date has not been received by the Trustee on or prior to such due date, the date on which the full amount of such monies has been so received and notice to that effect has been duly given to Holders of Debt Securities in accordance with this Indenture or (iv) who could lawfully avoid or reduce (but has not so avoided or reduced) such withholding or deduction by complying, or procuring that any third party comply with, any statutory requirements or by making, or procuring that any third party make, a declaration of non-residence, eligibility for treaty benefits or other similar claim for exemption or reduction to any relevant tax authority, the Issuer and such Guarantor, as appropriate; *provided* that in the case of a reduction, the Holder shall be entitled to receive Additional Amounts up to the reduced amount that would have applied had it made the appropriate claim. The Issuer and the applicable Guarantor will also make such withholding or deduction and remit the full amount deducted or withheld to the relevant authority in accordance with applicable law. The Issuer will furnish to the Trustee, within 30 days after the date the payment of any Taxes is due pursuant to applicable law, certified copies of tax receipts evidencing that such payment has been made by the Issuer or the applicable Guarantor or other evidence of such payment satisfactory to the Trustee. If any Holder pays any Taxes or other amounts in respect of payments that the Issuer or Guarantors pay to such Holder, the Issuer and each Guarantor shall indemnify and hold harmless each Holder of Debt Securities (other than an Excluded Holder) and upon written request reimburse each such Holder for the amount of (x) any Taxes so levied or imposed and paid by such Holder as a result of payments made under or with respect to the Debt Securities or the Guarantees, and (y) any Taxes levied or imposed and paid by such Holder with respect to any reimbursement under (x) above, but excluding any such Taxes on such Holder's net income or capital. A certificate of the Holder (or the Trustee on behalf of the Holder) accompanying the written request and containing reasonable detail as to the amount of Taxes to be reimbursed shall be determinative, absent manifest error, of the amount due from the Issuer and Guarantors to the Holder under this Indemnification.

(b)     At least 30 days prior to each date on which any payment under or with respect to the Debt Securities or the Guarantees is due and payable, if the Issuer or any Guarantor is obligated to pay Additional Amounts with respect to such payment, the Issuer will deliver to the Trustee an Officers' Certificate stating the fact that such Additional Amounts will be payable, the amounts so payable and that the Issuer or such Guarantor, as the case may be, will remit such deduction or withholding to the appropriate tax authority, and will set forth such other information necessary to enable the Trustee to pay such Additional Amounts to Holders of the Debt Securities on the relevant date. All references in this Indenture to the payment of principal of, premium or any other amount, if any, and interest on, any Debt Security or Guarantee shall be deemed to include

the payment of Additional Amounts to the extent that, in such context, Additional Amounts are, were or would be payable.

SECTION 314.    *ADDITIONAL INTEREST UNDER REGISTRATION RIGHTS AGREEMENTS.*

Under certain circumstances, the Issuer may be obligated to pay Additional Interest to Holders, all as and to the extent set forth in the Issue Date Registration Rights Agreement or any other Registration Rights Agreement. The terms thereof are hereby incorporated herein by reference and such Additional Interest is deemed to be interest for all purposes of this Indenture.

SECTION 315.    *PERSONS DEEMED OWNERS.*

(a)    Prior to due presentment of a Debt Security for registration of transfer, the Issuer, the Guarantors, the Trustee and any agent of any of the foregoing may treat the Person in whose name such Debt Security is registered as the owner of such Debt Security for the purpose of receiving payment of principal of (and premium, if any) and, subject to Section 312, interest on such Debt Security and for all other purposes whatsoever, whether or not such Debt Security be overdue, and none of the Issuer, the Guarantors, the Trustee or any agent of any of the foregoing shall be affected by notice to the contrary.

(b)    None of the Issuer, the Guarantors, the Trustee, any Paying Agent or the Security Registrar will have any responsibility or liability for any aspect of the records related to or payments made on account of beneficial ownership interests of a Global Security or for maintaining, supervising or reviewing any records related to such beneficial ownership interests.

SECTION 316.    *CANCELLATION.*

Unless otherwise provided, all Debt Securities surrendered for payment, redemption, registration of transfer or exchange shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee and shall be promptly cancelled by it. The Issuer or any Guarantor may deliver to the Trustee for cancellation any Debt Securities previously authenticated and delivered hereunder that the Issuer or such Guarantor may have acquired in any manner whatsoever, and all Debt Securities so delivered shall be promptly cancelled by the Trustee. No Debt Securities shall be authenticated in lieu of or in exchange for any Debt Securities cancelled as provided in this Section, except as expressly permitted by this Indenture. All cancelled Debt Securities held by the Trustee shall be disposed of in accordance with the Trustee's policy of disposal or shall be returned to the Issuer upon Issuer Request; *provided* that the Trustee shall not be required to destroy cancelled Debt Securities.

SECTION 317.    *COMPUTATION OF INTEREST.*

Interest on any series of Debt Securities shall be computed in the manner set forth in the supplemental indenture applicable to such series of Debt Securities.

SECTION 318.    *PAYMENT IN CURRENCIES.*

(a)    Payment of principal of (and premium, if any) and interest on the Debt Securities of any series shall be made in the currency or currencies specified pursuant to Section 301; *provided* that the Holder of a Debt Security of such series may elect to receive such payment in any one of

From:Bank of NY Mellon    12128155802    01/16/2009 14:06    #415 P.058/102

01/16/2009 14:06    #415  P. 060/102

12128156802

From:Bank of NY Mellon

Dollars or any other currency designated for such purpose pursuant to Section 301. A Holder may make such election by delivering to the Trustee a written notice thereof, substantially in the form attached hereto as Exhibit A or in such other form as may be acceptable to the Trustee, not later than the close of business on the Regular Record Date or Special Record Date immediately preceding the applicable Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be. Such election shall remain in effect with respect to such Holder until such Holder delivers to the Trustee a written notice substantially in the form attached hereto as Exhibit A or in such other form as may be acceptable to the Trustee specifying a change in the currency in which such payment is to be made; *provided* that any such notice must be delivered to the Trustee not later than the close of business on the Regular Record Date or Special Record Date immediately preceding the next Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, in order to be effective for the payment to be made thereon; and *provided further* that no such change in currency may be made with respect to payments to be made on any Debt Security with respect to which notice of redemption has been given by the Issuer pursuant to Article Eleven.

(b)     Except as otherwise specified pursuant to Section 301, the Trustee shall deliver to the Issuer, not later than the eighth Business Day after the Regular Record Date or Special Record Date with respect to an Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, with respect to a series of Debt Securities, a written notice specifying, in the currency or currencies in which the Debt Securities of such series are denominated, the aggregate amount of the principal of (and premium, if any) and interest on such Debt Securities to be paid on such payment date. If payments on any such Debt Securities are designated to be made in a currency other than the currency in which such Debt Securities are denominated or if at least one Holder has made the election referred to in paragraph (a) above, then such written notice shall also specify, in each currency in which payment is to be made pursuant to paragraph (a), the amount of principal of (and premium, if any) and interest on such series of Debt Securities to be paid in such currency on such payment date.

(c)     The Issuer shall deliver, not later than the fourth Business Day following each Regular Record Date or Special Record Date or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, to the Trustee an Exchange Rate Officers' Certificate in respect of the Dollar or Foreign Currency payments to be made on such payment date. Except as otherwise specified pursuant to Section 301, the amount receivable by Holders who have elected payment in a currency other than the currency in which such Debt Securities are denominated as provided in paragraph (a) above shall be determined by the Issuer on the basis of the applicable Exchange Rate set forth in the applicable Exchange Rate Officers' Certificate.

(d)     Except as otherwise specified pursuant to Section 301, if the Foreign Currency in which Debt Securities of a series is denominated ceases to be used both by the government of the country that issued such currency and for the settlement of transactions by banks, then with respect to each date for the payment of principal of (and premium, if any) and interest on such Debt Securities occurring after the final date on which the Foreign Currency was so used, all payments with respect to such Debt Securities shall be made in Dollars; *provided* that payment to a Holder of a Debt Security of such series shall be made in a different Foreign Currency if that

Holder has elected or elects payment in such Foreign Currency as provided for by paragraph (a) above. If payment is to be made in Dollars to the Holders of any such Debt Securities pursuant to the provisions of the preceding sentence, then the amount to be paid in Dollars on a payment date by the Issuer to the Trustee and by the Trustee or any Paying Agent to Holders shall be determined by the Trustee as of the Regular Record Date or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, and shall be equal to the sum obtained by converting the specified Foreign Currency into Dollars at the Exchange Rate on the last Record Date on which such Foreign Currency was so used in such capacity.

(e)    All decisions and determinations of the Trustee regarding conversion of Foreign Currency into Dollars pursuant to Sections 318(d) or 301 or the Exchange Rate shall, in the absence of manifest error, be conclusive for all purposes and irrevocably binding upon the Issuer and all Holders of the Debt Securities of the applicable series. If a Foreign Currency in which payment of Debt Securities of a series may be made ceases to be used both by the government of the country which issued such currency and for the settlement of transactions by banks, the Issuer, after learning thereof, will give written notice pursuant to Section 105 thereof to the Trustee immediately (and the Trustee promptly thereafter will give notice to the Holders in the manner provided in Section 106) specifying the last date on which the Foreign Currency was used for the payment of principal of (and premium, if any) or interest on such Debt Securities. The Trustee shall be fully justified, protected and otherwise held harmless in relying and acting upon the information so received by the Issuer and shall not otherwise have any duty or obligation to determine or verify such information independently.

SECTION 319.    *JUDGMENTS.*

Any payment in respect of principal of (and premium, if any) and interest otherwise due on Debt Securities made in Canadian currency by NNC or the Issuer to any Holder of Debt Securities (the "Payee") pursuant to a judgment or order of a court or tribunal in Canada shall constitute a discharge of NNC or the Issuer only to the extent of the amount of Dollars or Foreign Currency payable on such Debt Securities (the "Purchased Amount") that the Payee, on the date of such payment in Canadian currency, would be able to purchase with the amount so paid based on the noon buying rate for Dollars or the Foreign Currency for wire transfers quoted on the date of payment or, if such date if not a Business Day in Toronto, Canada, on the next Business Day in Toronto, Canada. If the amount otherwise due to the Payee (the "Amount Due") is greater or less than the Purchased Amount, NNC or the Issuer, as the case may be, shall indemnify and hold harmless the Payee to the extent that the Amount Due exceeds the Purchased Amount and NNC or the Issuer, as the case may be, may retain the amount, if any, by which the Amount Due is less than the Purchased Amount. This indemnity shall constitute an obligation that is separate and independent from the other obligations contained in this Indenture and shall give rise to a separate and independent cause of action and shall continue in full force and effect notwithstanding any judgment or order for a liquidated sum in respect of amounts due under the Debt Securities or any judgment or order.

SECTION 320:    *CUSIP NUMBERS.*

The Issuer in issuing the Debt Securities may use "CUSIP" numbers (if then generally accepted in use), and if so, the Trustee shall use "CUSIP" numbers in notices and redemption as a convenience to Holders; *provided* that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Debt Securities or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Debt Securities, and any such redemption shall not be affected by any defect in or omission of such numbers. The Issuer will promptly notify the Trustee of any change in the "CUSIP" numbers.

## ARTICLE FOUR

### SATISFACTION AND DISCHARGE

SECTION 401.    *SATISFACTION AND DISCHARGE OF INDENTURE.*

(a)    This Indenture shall upon Issuer Request cease to be of further effect (except as to any surviving rights of registration of transfer or exchange of Debt Securities provided for herein and rights to receive payments of principal of (and premium, if any) and interest thereon) with respect to a series of Debt Securities specified by the Issuer, and the Trustee, at the expense of the Issuer, shall execute proper instruments provided to it acknowledging satisfaction and discharge of this Indenture with respect to the Debt Securities of such series, when:

(i)    either

(A)    all Debt Securities of such series theretofore issued by the Issuer and authenticated and delivered hereunder (other than: (1) Debt Securities that have been destroyed, lost or stolen and that have been replaced or paid as provided in Section 311; and (2) Debt Securities for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 1003) have been delivered to the Trustee for cancellation; or

(B)    all Debt Securities of such series issued by the Issuer and authenticated and delivered hereunder and not theretofore delivered to the Trustee for cancellation:

(1)    have become due and payable;

(2)    will become due and payable at their Stated Maturity Date within one year; or

(3)    are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice by the Trustee in the name, and at the expense, of the Issuer,

and the Issuer, in the case of (B)(1), (B)(2) or (B)(3) above, has irrevocably deposited or caused to be deposited with the Trustee as trust funds in trust an amount sufficient to pay and discharge the entire indebtedness on such Debt Securities for principal (and

[New York #1531721 v17]

52

premium, if any) and interest to the date of such deposit (in the case of Debt Securities that have become due and payable) or to the Stated Maturity Date or Redemption Date, as the case may be;

(ii)     the Issuer or the Guarantors has paid or caused to be paid all other sums payable hereunder by the Issuer or the Guarantors; and

(iii)    the Issuer has delivered to the Trustee an Officers' Certificate and Opinion of Counsel each stating that all conditions precedent herein provided related to the satisfaction and discharge of this Indenture have been complied with.

(b)     Notwithstanding the satisfaction and discharge of this Indenture, the obligations of the Issuer to the Trustee under Section 606 and, if money shall have been deposited with the Trustee pursuant to paragraph (a)(i)(B) of this Section, the obligations of the Trustee under Section 402 and Section 1003(e) shall survive such satisfaction and discharge.

SECTION 402.     *APPLICATION OF TRUST MONEY.*

Subject to the provisions of Section 1003(e) of this Indenture, all money deposited with the Trustee pursuant to Section 401 of this Indenture shall be held in trust and applied by it, in accordance with the provisions of the Debt Securities, the Guarantees and this Indenture, to the payment, either directly or through any Paying Agent (including the Issuer or a Guarantor, acting as its own Paying Agent) as the Trustee may determine, to the Persons entitled thereto, of the principal (and premium, if any) and interest for whose payment such money has been deposited with the Trustee.

## ARTICLE FIVE

### DEFAULTS AND REMEDIES

SECTION 501.     *EVENTS OF DEFAULT AND ENFORCEMENT.*

If and when any one or more of the following events (herein called an "Event of Default") shall happen and be continuing with respect to the Debt Securities of any series, namely:

(1)     the failure to pay principal of any Debt Security of such series when such principal becomes due and payable, whether at Maturity, upon redemption or otherwise;

(2)     the failure to pay interest on any Debt Security of such series when the same becomes due and the continuance of such Default for a continuous period of 30 days;

(3)     a Default in the deposit of any sinking fund payment on any Debt Security of such series when due;

(4)     a Default by the Issuer, NNC, or during any period in which NNI is a Guarantor, NNI, in the performance or observance of any of their respective covenants, agreements or other obligations set forth herein for a continuous period of 90 days

[New York #1531721 v17]                              53

after the Issuer or such Guarantor receives written notice specifying the Default (and demanding that such Default be remedied) from the Holders of not less than 25% in principal amount of the Outstanding Debt Securities of such series;

(5)     a decree, judgment or order by a court having jurisdiction in the premises shall have been entered adjudging the Issuer or any Guarantor a bankrupt or insolvent or approving as properly filed a petition seeking reorganization, readjustment, arrangement, composition or similar relief for the Issuer or any Guarantor under any bankruptcy, insolvency or other similar applicable law and such decree, judgment or order of a court having jurisdiction in the premises for the appointment of a receiver or liquidator or trustee or assignee in bankruptcy or insolvency of the Issuer or such Guarantor, as the case may be, of a substantial part of its property, or for the winding up or liquidation of its affairs, shall have remained in force for a period of 60 consecutive days; or any substantial part of the property of the Issuer or such Guarantor shall be sequestered or attached and shall not be returned to the possession of the Issuer or such Guarantor or released from such attachment whether by filing of a bond, or stay or otherwise within 60 consecutive days thereafter;

(6)     the Issuer or any Guarantor shall institute proceedings to be adjudicated a voluntary bankrupt, or shall consent to the filing of a bankruptcy proceeding against it, or shall file a petition or answer or consent seeking reorganization, readjustment, arrangement, composition or similar relief under any bankruptcy, insolvency or other similar applicable law or the Issuer or such Guarantor shall consent to the filing of any such petition, or shall consent to the appointment of a receiver or liquidator or trustee or assignee in bankruptcy or insolvency for it or of a substantial part of its property, or shall make an assignment for the benefit of creditors, or shall be unable, or admit in writing its inability, to pay its debts generally as they become due, or corporate action shall be taken by the Issuer or such Guarantor in furtherance of any of the aforesaid actions;

(7)     a Default by NNC, the Issuer or during any period in which NNI is a Guarantor, NNI, under a single obligation in respect of Funded Debt that exceeds on its face $100,000,000 in principal amount, which results in such Funded Debt becoming or being declared due and payable prior to the date on which it would otherwise become due and payable and such acceleration shall not be rescinded or annulled within 10 days after written notice (i) specifying such Default and (ii) stating that such notice is a "Notice of Default" hereunder, shall have been given to such defaulting entity by Holders of not less than 25% in principal amount of the Outstanding Debt Securities of such series;

(8)     any Guarantee shall cease to be in full force and effect (other than in accordance with the terms of this Indenture) or any Guarantor denies or disaffirms its obligations under its Guarantee;

(9)     one or more judgments in an aggregate amount in excess of $100,000,000 shall have been rendered against NNC, the Issuer or, during any period in which NNI is a Guarantor, NNI, and such judgments remain undischarged, unpaid in

[New York #1531721 v17]

54

01/16/2009 14:07    #415  P.064/102

12128165802

From:Bank of NY Mellon

accordance with its or their respective terms or unstayed for a period of 90 days after such judgment or judgments become final and non-appealable;

(10)    a failure by the Issuer to make a Change of Control Offer; and

(11)    any other Event of Default provided with respect to the Debt Securities of that series and specified in any supplemental indenture applicable to such series of Debt Security;

then, and in each and every such case, the Trustee or the Holders of not less than 25% in principal amount of the Outstanding Debt Securities of such series at such time may declare the principal of (and premium, if any) together with accrued interest on, all Debt Securities of such series to be due and payable immediately, by a notice in writing to the Issuer and the Guarantors, and to the Trustee if given by the Holders, and upon any such declaration such principal amount, together with accrued interest thereon shall become immediately due and payable.

SECTION 502.    *WAIVER OF DECLARATION.*

At any time after such a declaration of acceleration with respect to the Debt Securities of a series has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter provided, the Holders of a majority in principal amount of the Outstanding Debt Securities of such series, by written notice to the Issuer, the Guarantors and the Trustee, may rescind and annul such declaration and its consequences if:

(a)    the Issuer or a Guarantor has paid or deposited with the Trustee a sum sufficient to pay:

(i)    all overdue interest on all the Debt Securities of such series;

(ii)    the principal of any of the Debt Securities of such series that have become due otherwise than by such declaration of acceleration, and interest thereon at the rate or rates prescribed therefor in such Debt Securities; and

(iii)    to the extent that payment of such interest is lawful and applicable, interest upon overdue installments of interest at the rate or rates prescribed therefor in such Debt Securities; and

(b)    all Events of Default with respect to the Debt Securities of such series, other than the non-payment of the principal of, premium if any and interest on, such Debt Securities which have become due solely by such declaration of acceleration, have been cured or waived in accordance with the provisions of the Indenture.

SECTION 503.    *WAIVER.*

(a)    The Holders of not less than a majority in principal amount of the Outstanding Debt Securities of any series may on behalf of the Holders of all Debt Securities of such series waive any past Default hereunder with respect to such series and its consequences, except a Default:

[New York #1531721 v17]                55

(i)    in the payment of the principal of (or premium, if any) or interest on any Debt Security of such series; or

(ii)   in respect of a covenant or provision hereof that under Article Nine cannot be modified or amended without the consent of the Holder of each Outstanding Debt Security of such series affected.

(b)    Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of this Indenture. No such waiver shall extend to any subsequent or other Default or impair any right consequent thereon.

SECTION 504.    *OTHER REMEDIES.*

(a)    If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal of (and premium, if any) or interest on Debt Securities or to enforce the performance of any provision of Debt Securities or this Indenture.

(b)    The Trustee may maintain a proceeding even if it does not possess any Debt Securities or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Holder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. All remedies, except as provided in Section 311, are cumulative to the extent permitted by law.

SECTION 505.    *APPLICATION OF MONEY COLLECTED.*

Any money collected by the Trustee pursuant to this Article shall be applied in the following order, at the dates fixed by the Trustee and, in case of the distribution of such money on account of principal of (and premium, if any) or interest, upon presentation of Debt Securities and the notation thereon of the payment if only partially paid and upon surrender thereof if fully paid:

FIRST:  To the payment of all amounts due the Trustee under Section 606;

SECOND:  To the payment of the amounts then due and unpaid for principal of (and premium, if any) and interest on the Debt Securities in respect of which or for the benefit of which such money has been collected ratably, without preference or priority of any kind, according to the amounts due and payable on such Debt Securities for principal (and premium, if any) and interest, respectively. The Holders of any Debt Securities denominated in a Foreign Currency shall be entitled to receive a ratable portion of the amount determined by the Trustee converting the principal amount Outstanding of such Debt Securities and accrued but unpaid interest on such Debt Securities in the currency in which such Debt Securities are denominated into Dollars at the Exchange Rate as of the date of declaration of acceleration of the Maturity of the Debt Securities (or, if there is no such rate on such date for the reasons specified in Section 318(d), such rate on the date specified in such Section); and

THIRD:  To the Issuer or, to the extent the Trustee collects any amount pursuant to Section 203 hereof from a Guarantor, to such Guarantor.

[New York #1531721 v17]                                56

**SECTION 506.**    *CONTROL BY HOLDERS.*

(a)    The Holders of at least a majority in principal amount of the Outstanding Debt Securities of any series, may:

    (i)    direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on it with respect to the Debt Securities of such series; and

    (ii)    take any other action authorized to be taken by or on behalf of the Holders of any specified aggregate principal amount of Debt Securities under any provisions of this Indenture or under applicable law.

(b)    The Trustee may refuse, however, to follow any direction that conflicts with law or this Indenture or is unduly prejudicial to the rights of any Holders.

**SECTION 507.**    *LIMITATION ON SUITS.*

(a)    Any Holder of Debt Securities may individually pursue a remedy with respect to this Indenture directly only if: (i) such Holder gives to the Trustee written notice of a continuing Event of Default; (ii) the Holders of at least 25% in principal amount of all of the then-Outstanding Debt Securities issued under the Indenture (treated as a single class) make a request in writing to the Trustee to pursue the remedy; (iii) such Holder or Holders indemnify the Trustee in form satisfactory to it against any loss, liability, claim, damage or expense; (iv) the Trustee does not comply with the request within 60 days after receipt of such request and indemnity; and (v) during such 60-day period the Holders of a majority in principal amount of all of the Outstanding Debt Securities (treated as a single class) do not give the Trustee a direction inconsistent with the request.

(b)    Holders may not use this Indenture to prejudice the rights of another Holder or to obtain a preference or priority over another Holder.

**SECTION 508.**    *RIGHTS OF HOLDERS TO RECEIVE PAYMENT.*

Notwithstanding any other provision of this Indenture, the right of any Holder to receive payment of principal of (and, premium, if any) and interest on Debt Securities held by such Holder, on or after the respective due dates expressed in the Debt Securities (or, in the case of redemption, on the Redemption Date), or to bring suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of the Holder.

**SECTION 509.**    *COLLECTION SUIT BY TRUSTEE.*

If an Event of Default specified in Section 501(1), (2) or (3) occurs and is continuing, the Trustee may recover judgment in its own name and as trustee of an express trust against the Issuer or a Guarantor for the whole amount of principal (and premium, if any) and interest remaining unpaid.

[New York #1531721 v17]