#415  P.088/102    01/16/2009 14:08    12128155802    From:Bank of NY Mellon

SECTION 510.    *TRUSTEE MAY FILE PROOFS OF CLAIM.*

The Trustee may file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee and the Holders allowed in any judicial proceedings relative to the Issuer or a Guarantor, its creditors or its property.

SECTION 511.    *UNDERTAKING FOR COSTS.*

In any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant in the suit of an undertaking to pay the costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorneys' fees and expenses, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant.  This Section does not apply to a suit by the Trustee, a suit by a Holder pursuant to Section 507, or a suit by any Holder or group of Holders of more than 10% in principal amount of the Outstanding Debt Securities.

SECTION 512.    *DELAY OR OMISSION NOT WAIVER.*

No delay or omission of the Trustee or of any Holder of any Debt Security to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein.  Every right and remedy given by this Article or by law to the Trustee or to the Holders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Holders, as the case may be.

SECTION 513.    *WAIVER OF STAY OR EXTENSION LAWS.*

The Issuer and each Guarantor, severally and not jointly, covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and the Issuer and the Guarantors each, severally and not jointly (to the extent that it may lawfully do so), hereby expressly waives all benefit or advantage of any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

## ARTICLE SIX

### THE TRUSTEE

SECTION 601.    *DUTIES OF TRUSTEE.*

(a)    If an Event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of his own affairs.

[New York #1531721 v17]                          58

(b)     Except during the continuance of an Event of Default:

(i)     the Trustee need perform only those duties that are specifically set forth in this Indenture and no others shall be inferred or implied; and

(ii)    in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; however, the Trustee shall examine the certificates and opinions required to be delivered to it pursuant to the terms of this Indenture to determine whether or not they so conform.

(c)     The Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(i)     this paragraph does not limit the effect of paragraph (b) of this Section;

(ii)    the Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer, unless it is proved that the Trustee was negligent in ascertaining the pertinent facts;

(iii)   the Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 506; and

(iv)    no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(d)     Every provision of this Indenture that in any way relates to the Trustee is subject to the above paragraphs of this Section. The Trustee may refuse to perform any duty or exercise any right or power under this Indenture (including with respect to Section 506) unless it receives indemnity reasonably satisfactory to it for actions taken under this Indenture. The Trustee shall not be liable for interest on any money received by it except as the Trustee may agree in writing with the Issuer or the applicable Guarantor. Money held in trust by the Trustee need not be segregated from other funds except to the extent required by law.

SECTION 602.    *RIGHTS OF TRUSTEE.*

The Trustee may rely on any document (whether in its original or facsimile form) believed by it to be genuine and to have been signed or presented by the proper person. The Trustee need not investigate any fact or matter stated in the document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Issuer, personally or by agent or attorney at the sole cost of the Issuer and shall incur no liability or additional liability of any kind by reason of

[New York #1531721 v17]                    59

such inquiry or investigation. Before the Trustee acts or refrains from acting, it may require an Officers' Certificate or an Opinion of Counsel. The Trustee shall not be liable for any action it takes or omits to take in good faith in reliance thereon. The Trustee may act through agents or attorneys and shall not be responsible for the misconduct or negligence of any agent or attorney appointed with due care. The Trustee shall not be liable for any action it takes or omits to take in good faith, except as otherwise provided in this Indenture, which it reasonably believes to be authorized or within its rights or powers. The Trustee may consult with counsel of its selection and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon.

The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder as Security Registrar and Security Custodian and each agent, custodian and other Person employed by the Trustee to act hereunder.

SECTION 603.    *INDIVIDUAL RIGHTS OF TRUSTEE.*

The Trustee in its individual or any other capacity may become the owner or pledgee of Debt Securities and may otherwise deal with the Issuer or the Guarantors with the same rights it would have if it were not Trustee. Any agent of the Trustee may do the same with like rights. However, the Trustee is at all times subject to Sections 609 and 610.

SECTION 604.    *TRUSTEE'S DISCLAIMER.*

The recitals contained herein and in the Debt Securities, except the Trustee's certificate of authentication, shall be taken as the statements of the Issuer and the Trustee assumes no responsibility for the correctness of same. The Trustee makes no representations as to the validity or sufficiency of any offering materials, this Indenture or of the Debt Securities. The Trustee shall not be accountable for the use or application by the Issuer of any of the Debt Securities or proceeds of the Debt Securities.

SECTION 605.    *NOTICE OF DEFAULTS.*

(a)    If an Event of Default with respect to a series of Debt Securities occurs and is continuing, the Trustee shall mail to Holders of Debt Securities of such series a notice of the Event of Default within 90 days after it occurs. Except in the case of an Event of Default resulting from nonpayment on any Debt Securities, the Trustee may withhold the notice if and so long as a committee of its Responsible Officers in good faith determines that withholding the notice is in the interests of the Holders of Debt Securities.

(b)    The Trustee shall not be deemed to have notice of any Default or Event of Default unless a Responsible Officer of the Trustee has knowledge thereof or unless written notice of any event which is in fact such a Default is received by the Trustee at the Corporate Trust Office of the Trustee, and such notice references the Debt Securities and this Indenture.

[New York #1531721 v17]

60

SECTION 606.    *COMPENSATION AND INDEMNITY.*

(a)    The Issuer shall pay to the Trustee from time to time compensation for its services as agreed separately by the Issuer and the Trustee. The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust.

(b)    The Issuer shall fully indemnify the Trustee and any predecessor Trustee and their agents for, and to hold them harmless against, any and all loss, damage, claims, liability or expense (including reasonable attorneys' fees and expenses) arising out of or in connection with the acceptance or administration of the trust or trusts hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its rights, powers, trusts or duties hereunder, except to the extent that such loss, damage, claim, liability or expense is caused by its own negligent action or failure to act, willful misconduct or bad faith or, with respect to indemnification of an agent hereunder, the negligent action or failure to act, willful misconduct or bad faith of such agent. The Trustee shall notify the Issuer promptly of any claim for which it may seek indemnity. The Issuer need not pay for any settlement made without its consent.

(c)    Except as otherwise expressly provided herein, the Issuer agrees to reimburse the Trustee upon its request for all reasonable and documented expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable and documented compensation, expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to its negligent action or failure to act, willful misconduct or bad faith or, with respect to documented compensation, expenses and disbursements of an agent or attorney, the negligent action or failure to act, willful misconduct or bad faith of such agent or attorney.

(d)    To secure the Issuer's respective payment obligations in this Section, the Trustee shall have a lien prior to Debt Securities on all money or property held or collected by the Trustee, except that held in trust to pay principal of, premium, if any, on and interest on Debt Securities.

When the Trustee incurs expenses or renders services in connection with an Event of Default specified in Section 501(5) or Section 501(6), the reasonable and documented expenses (including the reasonable and documented charges and expenses of its counsel) and compensation for the services are intended to constitute expenses of administration under any applicable Federal or state bankruptcy, insolvency or other similar law.

The provisions of this Section shall survive the satisfaction and discharge of the Debt Securities, termination of this Indenture and the resignation or removal of the Trustee.

SECTION 607.    *REPLACEMENT OF TRUSTEE.*

(a)    A resignation or removal of the Trustee and appointment of a successor Trustee for the Debt Securities of any series shall become effective only upon the successor Trustee's acceptance of appointment as provided in this Section.

(b)    The Trustee may resign at any time with respect to Debt Securities of one or more series by giving written notice thereof to the Issuer and the Guarantors. If an instrument of acceptance

[New York #1531721 v17]                          61

by a successor Trustee shall not have been delivered to the Trustee within 30 days after the giving of such notice of resignation, the resigning Trustee may at the expense of the Issuer petition any court of competent jurisdiction for the appointment of a successor Trustee to the Trustee. The Holders of at least a majority in principal amount of the then Outstanding Debt Securities of such series may remove the Trustee by so notifying the Trustee, the Issuer and the Guarantors if: (i) the Trustee fails to comply with Section 609; (ii) the Trustee is adjudged a bankrupt or an insolvent; (iii) a receiver or public officer takes charge of the Trustee or its property; or (iv) the Trustee becomes incapable of acting; in addition, in any such case, (1) the Issuer by a Board Resolution may remove the Trustee with respect to all Debt Securities, or (2) any Holder who has been a bona fide Holder of a Debt Security of any series for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee for the Debt Securities of such series and the appointment of a successor Trustee.

(c)     If the Trustee resigns or is removed or if a vacancy exists in the office of Trustee for any reason with respect to the Debt Securities of one or more series, the Issuer shall promptly appoint a successor Trustee or Trustees with respect to the Debt Securities of that or those series (it being understood that any such successor Trustee may be appointed with respect to the Debt Securities of one or more or all of such series and that, except as provided by Section 611, at any time there shall be only one Trustee with respect to the Debt Securities of any particular series) and shall comply with the applicable requirements of this Section 607. Within one year after the successor Trustee takes office, the Holders of a majority in principal amount of the Outstanding Debt Securities of any series may appoint a successor Trustee to replace the successor Trustee appointed by the Issuer with respect to the Debt Securities of such series. If such a successor Trustee does not take office within 60 days after the retiring Trustee resigns or is removed, the retiring Trustee, the Issuer or the Holders of at least 10% in principal amount of the Debt Securities of any series may petition any court of competent jurisdiction for the appointment of a successor Trustee with respect to the Debt Securities of such series.

(d)     If the Trustee fails to comply with Section 609, any Holder of Debt Securities may petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

(e)     The Issuer shall give notice of each resignation and each removal of the Trustee with respect to Debt Securities of any series and each appointment of a successor Trustee with respect to Debt Securities of any series in the manner provided in Section 106. Each notice shall include the name of the successor Trustee with respect to the Debt Securities of such series and the address of its Corporate Trust Office.

(f)     In the case of an appointment hereunder of a successor Trustee with respect to all Debt Securities, every such successor Trustee so appointed shall execute, acknowledge and deliver to the Issuer and to the Guarantors and to the retiring Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee; but, on request of the Issuer, any Guarantor or the successor Trustee, such retiring Trustee shall, upon payment of its charges, execute and deliver an instrument transferring to such successor Trustee all the rights,

[New York #1531721 v17]                           62

From:Bank of NY Mellon    12128155802    01/16/2009 14:09    #415 P. 073/102

powers, trusts and duties of the retiring Trustee, and shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder.

(g)    In case of the appointment hereunder of a successor Trustee with respect to the Debt Securities of one or more (but not all) series, the Issuer, the Guarantors, the retiring Trustee upon payment of its charges and each successor Trustee with respect to the Debt Securities of one or more series shall execute and deliver an indenture supplemental hereto wherein each successor Trustee shall accept such appointment and which: (i) shall contain such provisions as shall be necessary or desirable to transfer and confirm to, and to vest in, each successor Trustee all the rights, powers, trusts and duties of the retiring Trustee with respect to the Debt Securities of that or those series to which the appointment of such successor Trustee relates; (ii) if the retiring Trustee is not retiring with respect to all Debt Securities, shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the retiring Trustee with respect to the Debt Securities of that or those series as to which the retiring Trustee is not retiring shall continue to be vested in the retiring Trustee; and (iii) shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such Trustees co-trustees of the same trust and that each such Trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such Trustee; and upon the execution and delivery of such supplemental indenture the resignation or removal of the retiring Trustee shall become effective to the extent provided therein and each such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee with respect to the Debt Securities of that or those series to which the appointment of such successor Trustee relates; but, on request of the Issuer, any Guarantor or any successor Trustee, such retiring Trustee shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder with respect to the Debt Securities of that or those series to which the appointment of such successor Trustee relates.

(h)    Upon request of any such successor Trustee, the Issuer and the Guarantors shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Trustee all such rights, powers, trusts and duties referred to in paragraph (f) or (g) of this Section, as the case may be.

(i)    No successor Trustee shall accept its appointment unless at the time of such acceptance such successor Trustee shall be qualified and eligible under this Article.

SECTION 608.    *SUCCESSOR TRUSTEE BY MERGER, ETC.*

If the Trustee consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business, including this transaction, to, another corporation, the successor corporation without any further act shall be the successor Trustee; *provided* that prior written notice thereof is given to the Issuer and the Guarantors and such successor corporation is acceptable to the Issuer and the Guarantors.

[New York #1531721 v17]                63

SECTION 609.    *ELIGIBILITY; DISQUALIFICATION.*

This Indenture shall always have a Trustee who satisfies the requirements of Section 310(a)(1) of the Trust Indenture Act as then in effect. The Trustee shall always have a combined capital and surplus of at least $5 million, calculated as permitted by Section 310(a)(2) of the Trust Indenture Act as then in effect. The Trustee is subject to Section 310(b) of the Trust Indenture Act, including the optional provision permitted by the second sentence of Section 310(b)(9) of the Trust Indenture Act.

SECTION 610.    *PREFERENTIAL COLLECTION OF CLAIMS AGAINST THE ISSUER.*

The Trustee is subject to Section 311(a) of the Trust Indenture Act, except with respect to any creditor relationship listed in Section 311(b) of the Trust Indenture Act. A Trustee who has resigned or been removed is subject to Section 311(a) of the Trust Indenture Act to the extent indicated.

SECTION 611.    *APPOINTMENT OF CO-TRUSTEE.*

The Issuer, the Guarantors and the Trustee may, at any time, appoint a co-trustee for any purpose or purposes of this Indenture if considered necessary or desirable in the circumstances including, without limitation, to fulfill any legal requirement under the applicable laws of any jurisdiction, including any applicable provision of the Canada Business Corporations Act, subject to the following provisions and conditions:

(1)    the instrument appointing the co-trustee shall refer to this Indenture and the conditions of this Section 611;

(2)    the instrument appointing the co-trustee shall set forth the rights, powers, duties, trusts and obligations under or in connection with this Indenture to be made available to, imposed upon, exercised and performed by each co-trustee and may, for greater certainty, identify those rights, powers, duties, trusts and obligations that will not be made available to, imposed upon, exercised or performed by each such co-trustee; and

(3)    no trustee hereunder shall be responsible for or personally liable by reason of any act or omission of any other trustee hereunder.

## ARTICLE SEVEN

### HOLDERS' LISTS AND REPORTS BY TRUSTEE, ISSUER AND GUARANTORS

SECTION 701.    *PRESERVATION OF INFORMATION; COMMUNICATIONS TO HOLDERS.*

(a)    The Trustee shall preserve, in as current a form as is reasonably practicable, the names and addresses of the Holders of Debt Securities received by the Security Registrar.

(b)    If three or more Holders of a series of Debt Securities (hereinafter referred to as "applicants") apply in writing to the Trustee, and furnish to the Trustee reasonable proof that each such applicant has owned a Debt Security for a period of at least six months immediately

[New York #1531721 v17]    64

preceding the date of such application, and such application states that the applicants desire to communicate with other Holders of Debt Securities of a particular series (in which case the applicants must hold Debt Securities of such series) or with all Holders of Debt Securities with respect to their rights under this Indenture or under the Debt Securities and is accompanied by a copy of the form of proxy or other communication which such applicants propose to transmit, then the Trustee shall, within five Business Days after the receipt of such application, at its election, either:

(i)     afford such applicants access to the information preserved at the time by the Trustee in accordance with Section 701(a); or

(ii)    inform such applicants as to the approximate number of the Holders of Debt Securities of such series or of all Debt Securities, as the case may be, whose names and addresses appear in the information preserved at the time by the Trustee in accordance with Section 701(a), and as to the approximate cost to the applicant of mailing to such Holders the form of proxy or other communication, if any, specified in such application.

If the Trustee shall elect not to afford such applicants access to such information, the Trustee shall, upon the written request of such applicants, mail to each Holder whose name and address appears in the information preserved at the time by the Trustee in accordance with Section 701(a), a copy of the form of proxy or other communication that is specified in such request, with reasonable promptness after a tender to the Trustee of the material to be mailed and of payment, or provision for the payment, by the applicant, of the reasonable expenses of mailing, unless within five days after such tender, the Trustee shall mail to such applicants and file with the Commission, together with a copy of the material to be mailed, a written statement to the effect that, in the opinion of the Trustee, such mailing would be contr━━━━ ━━ ━━━ ━━━━ ━━━━━━━━ ━━ the Holders or would be in violation of applicable law.  Such written basis of such opinion.  If the Commission, after opportunity for a hea specified in the written statement so filed, shall enter an order refusin objections or if, after the entry of an order sustaining one or more of Commission shall find, after notice and opportunity for hearing, that sustained have been met and shall enter an order so declaring, the Tr such material to all such Holders with reasonable promptness after th the renewal of such tender, otherwise the Trustee shall be relieved of such applicants respecting their application.

(c)     Every Holder of Debt Securities, by receiving and holding the same, agrees with the Issuer, the Guarantors and the Trustee that none of the Issuer, Guarantors and the Trustee shall be held accountable by reason of the disclosure of any such information as to the names and addresses of the Holders in accordance with Section 701(b), regardless of the source from which such information was derived, and that the Trustee shall not be held accountable by reason of mailing any material pursuant to a request made under Section 701(b).

SECTION 702.     *REPORTS BY TRUSTEE.*

(a)     Within 60 days after May 15 of each year following the date of this Indenture, the Trustee shall mail to Holders a brief report dated as of such reporting date that complies with

[New York #1531721 v17]                                     65

Section 313(a) of the Trust Indenture Act. The Trustee shall also comply with Sections 313(b)(2) and 313(c) of the Trust Indenture Act.

(b)    A copy of each report at the time of its mailing to Holders shall be filed with the Commission and each stock exchange on which Debt Securities of any series are listed.

SECTION 703.    *REPORTS BY ISSUER AND GUARANTORS.*

(a)    NNC or the Issuer will:

    (i)    file with the Trustee, within 15 days after NNC is required to file the same with the Commission, copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may from time to time by rules and regulations prescribe) which NNC may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act; or, if NNC is not required to file information, documents or reports pursuant to either of these Sections, NNC will file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such of the supplementary and periodic information, documents and reports that may be required pursuant to Section 13 of the Exchange Act in respect of a security listed and registered on a national securities exchange as may be prescribed from time to time in such rules and regulations;

    (ii)    file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such additional information, documents and reports with respect to compliance thereby with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

    (iii)    notify the Trustee when Debt Securities of any series are listed on any stock exchange.

(b)    Delivery of such reports, information and documents to the Trustee is for informational purposes only and the Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Issuer's compliance with any of its covenants hereunder (as to which the Trustee is entitled to rely exclusively on Officers' Certificates).

(c)    The Issuer and the Guarantors shall also comply with the provisions of Section 314(a) of the Trust Indenture Act.

[New York #1531721 v17]    66

## ARTICLE EIGHT

### AMALGAMATION, MERGER, CONVEYANCE, TRANSFER OR LEASE

SECTION 801.    *AMALGAMATIONS AND MERGERS OF ISSUER OR A GUARANTOR AND CONVEYANCES PERMITTED SUBJECT TO CERTAIN CONDITIONS.*

So long as any Debt Security of a particular series remains Outstanding, none of NNC, the Issuer or, during any period in which NNI is a Guarantor, NNI, will amalgamate or merge with any other corporation or enter into any reorganization or arrangement or effect any conveyance, transfer or lease of all or substantially all of its and its Subsidiaries' assets, taken as a whole, unless in any such case:

    (i)    either (A) it shall be the surviving Person or one of the continuing Persons, or (B) the successor corporation (or the Person that leases or that acquires by conveyance or transfer all or substantially all of its and its Subsidiaries' assets, taken as a whole) expressly assumes the due and punctual payment of the principal of (and premium, if any) and interest on all Outstanding Debt Securities issued hereunder, according to their tenor, and the due and punctual performance and observance of all of the covenants and conditions of this Indenture to be performed by it by supplemental indenture pursuant to Article Nine satisfactory to the Trustee, executed and delivered to the Trustee by such Person; and

    (ii)    NNC, the Issuer or, during any period in which NNI is a Guarantor, NNI, or any successor Person, as the case may be, are not immediately thereafter in Default under this Indenture or the Debt Securities.

SECTION 802.    *RIGHTS AND DUTIES OF SUCCESSOR.*

(a)    In case of any such amalgamation, merger, reorganization, arrangement, conveyance, transfer or lease and upon any such assumption by the successor Person, such successor Person shall agree to be bound by the terms of this Indenture as principal obligor or guarantor in place of NNC, the Issuer or NNI with the same effect as if it had been named herein as such. Such successor Person thereupon may cause to be signed, and may issue either in its own name or in the name of NNC, the Issuer or NNI, as the case may be, any or all of Debt Securities of any series issuable and the Guarantees endorsed thereon, hereunder which theretofore shall not have been signed by NNC, the Issuer or NNI, as the case may be, and delivered to the Trustee. All Debt Securities so issued and Guarantees endorsed thereon shall in all respects have the same legal rank and benefit under this Indenture as the Debt Securities and Guarantees theretofore or thereafter issued or endorsed in accordance with the terms of this Indenture as though all of such Debt Securities and Guarantees had been issued or endorsed at the date on which the Debt Securities of such series were originally signed by NNC, the Issuer or NNI, as the case may be, and delivered to the Trustee.

(b)    In the case of any such amalgamation, merger, reorganization, arrangement, conveyance, transfer or lease, such changes in phraseology and form (but not in substance) may be made in Debt Securities and, the Guarantees endorsed thereon, thereafter to be issued as may be appropriate.

[New York #1531721 v17]          67

01/16/2009 14:10    12128155802    From:Bank of NY Mellon    #415 P.077/102

SECTION 803.    *OPINION OF COUNSEL.*

The Trustee shall receive an Opinion of Counsel as conclusive evidence that any such amalgamation, merger, reorganization, arrangement, consolidation, lease, transfer or conveyance, and any such assumption, comply with the provisions of this Article Eight.

## ARTICLE NINE

### SUPPLEMENTAL INDENTURES

SECTION 901.    *SUPPLEMENTAL INDENTURES WITHOUT CONSENT OF HOLDERS.*

Without the consent of any Holders, the Issuer and the Guarantors, when authorized by a Board Resolution of the Issuer and Officers' Certificates of the Guarantors, and the Trustee, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Trustee, for any of the following purposes:

(1)    to evidence the succession of another corporation to the Issuer or a Guarantor, and the assumption by such successor of the covenants of the Issuer or such Guarantor herein and in the Debt Securities;

(2)    , to add to the covenants of the Issuer or a Guarantor, as the case may be, for the benefit of the Holders of all or any series of Debt Securities (and, if such covenants are to be for the benefit of less than all series of Debt Securities, stating that such covenants are expressly being included solely for the benefit of such series), or to surrender any right or power herein conferred upon the Issuer or such Guarantor;

(3)    to add additional items to the definition of Permitted Liens or Permitted Funded Debt which shall apply only to one or more series of Debt Securities; *provided* that such supplemental indenture is entered into on or prior to the initial Issue Date of any Debt Securities of such series;

(4)    , to add any additional Events of Default (and, if such Events of Default are to be applicable to less than all series of Debt Securities, stating that such Events of Default are expressly being included solely to be applicable to such series); *provided* that in respect of any such additional Events of Default such supplemental indenture may provide for a particular grace period after Default (which period may be shorter or longer than that allowed in the case of other Defaults) or may provide for an immediate enforcement upon such Default or may limit the remedies available to the Trustee upon such Default or may limit the right of the Holders of a majority in aggregate principal amount of the series of Debt Securities to which such additional Events of Default apply to waive such Default;

(5)    to change or eliminate any restrictions on the payment of principal (or premium, if any) of Debt Securities; *provided* that any such action shall not adversely affect the interests of the Holders of Debt Securities of any series in any material respect;

(6)    to change or eliminate any of the provisions of this Indenture; *provided* that any such change or elimination shall become effective only when there is no Outstanding Debt Security of

01/16/2009 14:10    #415 P.078/102

12128155802

From:Bank of NY Mellon

any series created prior to the execution of such supplemental indenture that is entitled to the benefit of such provision;

(7)     to establish the form or terms of Debt Securities of any series as permitted by Sections 201 and 301;

(8)     to evidence and provide for the acceptance of appointment hereunder by a successor Trustee with respect to the Debt Securities of one or more series and to add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee;

(9)     to secure the Debt Securities;

(10)    to add an additional Guarantor in respect of the Debt Securities;

(11)    to supplement any of the provisions of this Indenture to such extent as shall be necessary to permit or facilitate the defeasance and discharge of any series of Debt Securities pursuant to Section 401, Section 1301 or Section 1302; *provided* that any such action shall not adversely affect the interests of the Holders of Debt Securities of such series or any other series of Debt Securities in any material respect; or

(12)    to cure any ambiguity, to correct or supplement any provision herein that may be defective or inconsistent with any other provision herein, or to make any other provisions with respect to matters or questions arising under this Indenture that shall not be inconsistent with any provisions of this Indenture; *provided* that such other provisions shall not adversely affect the interests of the Holders of Debt Securities of any series in any material respect.

SECTION 902.     *SUPPLEMENTAL INDENTURES WITH CONSENT OF HOLDERS.*

(a)     With the consent of the Holders of not less than a majority in principal amount of the Outstanding Debt Securities of any series affected by such supplemental indenture, by Act of said Holders delivered to the Issuer, the Guarantors and the Trustee, the Issuer and the Guarantors, when authorized by a Board Resolution of the Issuer and Officers' Certificates of the Guarantors, and the Trustee may enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of modifying in any manner the rights of the Holders of such series of Debt Securities under this Indenture or under such series of Debt Securities; provided that no such supplemental indenture shall, without the consent of the Holder of each Outstanding Debt Security affected thereby:

(i)     change the Stated Maturity Date of the principal of, or any installment of interest on, any Debt Security, or reduce the principal amount thereof or the interest thereon or any premium payable upon redemption thereof, or reduce the amount of the principal of an Original Issue Discount Security that would be due and payable upon a declaration of acceleration of the Maturity thereof pursuant to Section 501, or change any Place of Payment, or change the currency in which any Debt Security or interest thereon is payable, or impair the right to institute

[New York #1531721 v17]

69

suit for the enforcement of any such payment on or after the Stated Maturity Date thereof (or, in the case of redemption, on or after the Redemption Date);

(ii)     reduce the percentage in principal amount of the Outstanding Debt Securities of any series, the consent of whose Holders is required for any such supplemental indenture, or the consent of whose Holders is required for any waiver (of compliance with certain provisions of this Indenture or certain Defaults hereunder and their consequences) provided for in this Indenture, or reduce the requirements of Section 1404 for quorum or voting;

(iii)    modify any of the provisions of this Section, Section 503 or Section 1009, except to increase any such percentage or to provide that certain other provisions of this Indenture cannot be modified or waived without the consent of the Holder of each Outstanding Debt Security affected thereby; *provided* that this clause shall not be deemed to require the consent of any Holder with respect to changes in the references to "the Trustee" and concomitant changes in this Section and Section 1009, or the deletion of this proviso, in accordance with the requirements of Section 901(8); or

(iv)    change in any manner adverse to the interests of the Holders of any Outstanding Debt Securities the terms and conditions of the obligations of the Guarantors in respect of the due and punctual payment of the principal (or, if the context so requires, lesser amount in the case of Original Issue Discount Securities) thereof (and premium, if any, thereon) and interest thereon or any Additional Amounts or any sinking fund or analogous payments provided in respect thereof.

(b)    It shall not be necessary for any Act of Holders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

(c)    A supplemental indenture that changes or eliminates any covenant or other provisions of this Indenture that has expressly been included solely for the benefit of one or more particular series of Debt Securities, or that modifies the rights of the Holders of Debt Securities of such series with respect to such covenant or other provision, shall be deemed not to affect the rights under this Indenture of the Holders of Debt Securities of any other series.

SECTION 903.    *EXECUTION OF SUPPLEMENTAL INDENTURES.*

In executing, or accepting the additional trusts created by, any supplemental indenture permitted by this Article or the modifications thereby of the trusts created by this Indenture, the Trustee shall be entitled to receive, and, subject to Section 601, shall be fully protected in relying upon, an Opinion of Counsel or Officers' Certificate stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Trustee may, but shall not be obligated to, enter into any such supplemental indenture that affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

From:Bank of NY Mellon                12128155802                01/16/2009 14:11                #415 P.080/102

01/16/2009  14:11    12128155802    From:Bank of NY Mellon    #415  P. 081/102

SECTION 904.    *EFFECT OF SUPPLEMENTAL INDENTURES.*

Upon the execution of any supplemental indenture under this Article, this Indenture shall be modified in accordance therewith, and such supplemental indenture shall form a part of this Indenture for all purposes; and every Holder of Debt Securities theretofore or thereafter authenticated and delivered under this Indenture shall be bound by the supplemental indenture.

SECTION 905.    *CONFORMITY WITH TRUST INDENTURE ACT.*

Every supplemental indenture executed pursuant to this Article shall conform to the requirements of the Trust Indenture Act as then in effect.

SECTION 906.    *REFERENCE IN DEBT SECURITIES TO SUPPLEMENTAL INDENTURES.*

Debt Securities of any series authenticated and delivered after the execution of any supplemental indenture pursuant to this Article may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Issuer or the Guarantors shall so determine, new Debt Securities of any series and any Guarantees endorsed thereon so modified as to conform, in the opinion of the Trustee and the Board of Directors of the Issuer, to any such supplemental indenture may be prepared and executed by the Issuer and the Guarantors and authenticated and delivered by the Trustee in exchange for Outstanding Debt Securities of such series.

## ARTICLE TEN

### COVENANTS

SECTION 1001.    *PAYMENT OF PRINCIPAL, PREMIUM AND INTEREST.*

The Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities of such series in accordance with their terms and this Indenture. Principal (and premium, if any) or interest payable with respect to any Debt Securities shall be considered paid on the date due if the Paying Agent, or the Issuer if it acts as its own Paying Agent, holds on that date money sufficient to pay all principal (and premium, if any) and interest then due.

SECTION 1002.    *MAINTENANCE OF OFFICE OR AGENCY.*

(a)    The Issuer will maintain in each Place of Payment for any series of Debt Securities issued hereunder an office or agency where Debt Securities of such series may be presented or surrendered for payment, where Debt Securities of such series may be surrendered for registration of transfer or exchange and where notices and demands to or upon the Issuer in respect of the Debt Securities of such series and this Indenture may be served; and the Guarantors will maintain in The City of New York an office or agency where notices and demands to or upon the Guarantors in respect of Debt Securities of any series and this Indenture may be served. The Issuer and the Guarantors will give prompt written notice to the Trustee of the location, and any change in the location of, any such office or agency. If at any time the Issuer or any Guarantor shall fail to maintain any such required office or agency or shall fail to

71

[New York #1531721 v17]

From:Bank of NY Mellon          12128155802          01/16/2009 14:11          #415 P. 082/102

furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the Corporate Trust Office of the Trustee and the Issuer and the Guarantors each hereby appoints the Trustee its agent to receive all such presentations, surrenders, notices and demands.

(b)     The Issuer may also from time to time designate one or more other offices or agencies (in- or outside of such Place of Payment) where the Debt Securities of one or more series may be presented or surrendered for any or all of such purposes, and may from time to time rescind such designations; *provided* that no such designation or rescission shall in any manner relieve the Issuer of its obligation to maintain an office or agency in each Place of Payment for any series of Debt Securities, for such purposes. The Issuer will give prompt written notice to the Trustee of any such designation and any change in the location of any such other office or agency.

SECTION 1003.    *MONEY FOR DEBT SECURITIES PAYMENTS TO BE HELD IN TRUST.*

(a)     If the Issuer or a Guarantor shall at any time act as its own Paying Agent with respect to any series of Debt Securities, it will, on or before each due date of the principal of (and premium, if any) or interest on any of the Debt Securities of such series, segregate and hold in trust for the benefit of the Persons entitled thereto a sum sufficient to pay the principal (and premium, if any) or interest so becoming due until such sums shall be paid to such Persons or otherwise disposed of as herein provided, and will promptly notify the Trustee of its action or failure so to act.

(b)     Whenever the Issuer shall have one or more Paying Agents with respect to any series of Debt Securities, it will, prior to each due date of the principal of (and premium, if any) or interest on any Debt Securities of such series, deposit with a Paying Agent a sum sufficient to pay the principal (and premium, if any) or interest so becoming due, such sum to be held in trust for the benefit of the Persons entitled to such principal, premium or interest, and (unless such Paying Agent is the Trustee) the Issuer will promptly notify the Trustee of its action or failure so to act.

(c)     The Issuer will cause each Paying Agent with respect to any series of Debt Securities, other than the Trustee, to execute and deliver to the Trustee an instrument in which such Paying Agent shall agree with the Trustee, subject to the provisions of this Section, that such Paying Agent will:

    (i)     hold all sums held by it for the payment of the principal of (and premium, if any) or interest on Debt Securities of such series in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided;

    (ii)    give the Trustee notice of any Default by the Issuer or a Guarantor (or any other obligor upon the Debt Securities of such series or Guarantees endorsed thereon) in the making of any payment of principal of (and premium, if any) or interest on the Debt Securities of such series or Guarantees endorsed thereon; and

    (iii)   at any time during the continuance of any such Default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such Paying Agent.

(d)    The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, pay, or by Issuer Order direct any Paying Agent to pay, to the Trustee all sums held in trust by the Issuer or such Paying Agent, such sums to be held by the Trustee upon the same trusts as those upon which such sums were held by the Issuer or such Paying Agent; and, upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability with respect to such money.

(e)    Any money deposited with the Trustee or any Paying Agent, or then held by the Issuer or any Guarantor, in trust for the payment of the principal of (and premium, if any) or interest on any Debt Security of any series and remaining unclaimed for two years after Maturity shall be paid to the Issuer or such Guarantor on Issuer Request or Guarantor Request of such Guarantor, as the case may be, or (if then held by the Issuer or such Guarantor) shall be discharged from such trust; and the Holder of such Debt Security shall thereafter, as an unsecured general creditor, look only to the Issuer or such Guarantor, as the case may be, for payment thereof, and all liability of the Trustee or such Paying Agent with respect to such trust money, and all liability of the Issuer or such Guarantor, as the case may be, as trustee thereof, shall thereupon cease; provided that the Trustee or such Paying Agent, before being required to make any such repayment, may at the expense of the Issuer or such Guarantor, as the case may be, cause to be published once, in an Authorized Newspaper of general circulation in the Borough of Manhattan, The City of New York, and each Place of Payment or mailed to each such Holder, or both, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication or mailing, any unclaimed balance of such money then remaining will be repaid to the Issuer or such Guarantor, as the case may be.

SECTION 1004.    *OFFER TO REPURCHASE UPON CHANGE OF CONTROL.*

(a)    If a Change of Control occurs, the Issuer shall make an offer (a "Change of Control Offer") to each Holder to purchase each Holder's Debt Securities at a purchase price, in cash, equal to 101% of the aggregate principal amount thereof, plus accrued and unpaid interest thereon, if any, up to the date of purchase (the "Change of Control Payment").

(b)    Within 30 days following the date upon which the Change of Control occurs, the Issuer shall mail, or shall cause the Trustee to mail, by first-class mail, a notice to each Holder, with a copy to the Trustee, which notice shall govern the terms of the Change of Control Offer and stating:

(i)    the CUSIP number, if any, of each series of Debt Securities to which the Change in Control Offer applies;

(ii)    that the Change of Control Offer is being made pursuant to this Section 1004 and that all Debt Securities tendered will be accepted for payment;

(iii)    the Change of Control Payment and the purchase date (the "Change of Control Payment Date"), which shall be no earlier than 30 days and no later than 60 days after the date such notice is mailed, other than as may be required to comply with any applicable laws;

(iv)    that any Debt Security not tendered will continue to accrue interest;

(v)  that unless the Issuer defaults in the payment of the Change of Control Payment, all Debt Securities accepted for payment pursuant to the Change of Control Offer shall cease to accrue interest after the Change of Control Payment Date;

(vi)  that Holders electing to have any Debt Securities purchased pursuant to a Change of Control Offer will be required to surrender the Debt Securities, with the form entitled "Option of Holder to Elect Purchase" (including specifying the portion (in integral multiples of $1,000) of such Holder's Debt Securities that it agrees to sell to the Issuer pursuant to the Change of Control Offer, on the reverse of the Debt Securities completed), to the Paying Agent at the address specified in the notice prior to the close of business on the third Business Day preceding the Change of Control Payment Date;

(vii)  that Holders will be entitled to withdraw their election if the Paying Agent receives, not later than the close of business on the second Business Day preceding the Change of Control Payment Date, a telegram, telex, facsimile transmission or letter setting forth the name of the Holder, the principal amount of Debt Securities delivered for purchase, and a statement that such Holder is withdrawing his election to have the Debt Securities purchased;

(viii)  that Holders whose Debt Securities are being purchased only in part will be issued new Debt Securities equal in principal amount to the unpurchased portion of the Debt Securities surrendered, which unpurchased portion must be an authorized denomination of such Debt Securities; and

(ix)  that Holders electing to have a Debt Security purchased pursuant to a Change of Control Offer may elect to have Debt Securities purchased in authorized denominations of such Debt Securities only.

(c)  On the Change of Control Payment Date, the Issuer shall, to the extent lawful,

(i)  accept for payment all Debt Securities or portions of Debt Securities properly tendered pursuant to the Change of Control Offer;

(ii)  deposit with the Paying Agent an amount equal to the Change of Control Payment in respect of all Debt Securities or portions of Debt Securities properly tendered; and

(iii)  deliver or cause to be delivered to the Trustee the Debt Securities so accepted together with an Officers' Certificate stating the aggregate principal amount of Debt Securities or portions thereof being purchased by the Issuer.

(d)  The Paying Agent shall promptly mail to each Holder of Debt Securities properly tendered the Change of Control Payment for such Debt Securities, and the Trustee shall promptly authenticate and mail (or cause to be transferred by book entry) to each Holder a new Debt Security equal in principal amount to any unpurchased portion of the Debt Securities surrendered, if any; *provided* that each new Debt Security shall be in an authorized denomination of such Debt Securities.

[New York #1531721 v17]                    74

(e)     The provisions of this Section 1004 will be applicable whether or not any other covenants or similar provisions of this Indenture are applicable.  The Issuer shall comply with the requirements of Rule 14e-1 under the Exchange Act and any other securities laws or regulations to the extent those laws and regulations are applicable to any Change of Control Offer.  If the provisions of any of the applicable securities laws or securities regulations conflict with the provisions of this Section 1004, the Issuer shall comply with the applicable securities laws and regulations and shall not be deemed to have breached its obligations under this Section 1004 by virtue of the compliance.

(f)     The Issuer shall not be required to make a Change of Control Offer upon a Change of Control if a third party makes the Change of Control Offer in the manner, at the times and otherwise in compliance with the requirements set forth in this Section 1004 and purchases all Debt Securities properly tendered and not withdrawn under such Change of Control Offer.

SECTION 1005.          *RESTRICTIONS ON LIENS.*

(a)     Subject to the following exceptions, as long as any Debt Securities remain Outstanding, NNC and the Issuer will not, and will not permit any Restricted Subsidiary, to issue, assume or guarantee any Funded Debt secured by, and will not secure any Funded Debt by, a Lien upon any property of NNC, the Issuer or any Restricted Subsidiary (whether now owned or hereafter acquired) without in any such case effectively providing concurrently therewith that the Debt Securities then Outstanding shall be secured equally and ratably with such Funded Debt; *provided* that the foregoing restrictions shall not apply to Funded Debt secured by the following Liens ("Permitted Liens"):

(i)      any Lien existing on property at the time of the acquisition of that property by NNC, the Issuer or the relevant Restricted Subsidiary;

(ii)     any Lien on property that is incurred after the date of issuance of the Debt Securities to secure or provide for the payment of the purchase price of the property or the cost of construction or improvement thereon;

(iii)    any Lien on property of a Person existing at the time that Person is liquidated, dissolved or merged into, or amalgamated or consolidated with NNC, the Issuer or any Restricted Subsidiary, or at the time the properties of or equity interests in the Person are sold, leased or otherwise transferred to NNC, the Issuer or any Restricted Subsidiary;

(iv)    any Lien securing intercompany Funded Debt among or between NNC, the Issuer and/or the Restricted Subsidiaries;

(v)     deposits of cash, cash equivalents or investment securities against which the lender of any Credit Enhanced Foreign Subsidiary Debt has a Lien or right of set off;

(vi)    any Lien on property of a Foreign Subsidiary securing any Funded Debt incurred pursuant to clause (i) of the definition of Permitted Funded Debt;

(vii)   Liens in favor of the United States of America or any State thereof, Canada or any Province or territory thereof, or any department, agency or instrumentality or political subdivision thereof, or in favor of any other country or political subdivision, to secure partial, progress, advance or other payments pursuant to any contract or statute or to secure any Funded Debt incurred or guaranteed for the purpose of financing or refinancing all or any part of the purchase price of the property, shares of capital stock or indebtedness subject to such Liens, or the cost of constructing or improving the property subject to such Liens (including, without limitation, Liens incurred in connection with pollution control, industrial revenue or similar financings or relating to the development, restoration, demolition or remediation of property);

(viii)  any Lien created by or resulting from litigation or other proceedings against, or upon property of, NNC, the Issuer or any Restricted Subsidiary, or any Lien securing appeal bonds (or letters of credit or other similar instruments issued in support of or in lieu of appeal bonds) in respect of judgments, in each case, or any Lien for workmen's compensation awards or similar awards, so long as the finality of such judgment or award is being contested and execution thereon is stayed or such Lien relates to a final unappealable judgment which is satisfied within 30 days of such judgment or any Lien incurred by NNC, the Issuer or any Restricted Subsidiary for the purpose of obtaining a stay or discharge in the course of any litigation or other proceeding;

(ix)    any other Liens securing Funded Debt of any Foreign Subsidiary; *provided* that the aggregate outstanding principal amount of Funded Debt secured pursuant to this clause (ix) by any individual Foreign Subsidiary would not, after giving effect to the relevant transaction, exceed $5,000,000;

(x)     Liens existing on the date of this Indenture and any extension, renewal or replacement in whole or in part of any Lien existing on the date of this Indenture or referred to in the above exceptions, so long as the total amount of secured Funded Debt does not increase, and the property securing the Funded Debt is not expanded, as a result of the extension, renewal or replacement; and

(xi)    Managed Service Contract Liens.

(b)   Notwithstanding the foregoing, NNC, the Issuer and any Restricted Subsidiary may issue, assume or guarantee Funded Debt secured by a Lien upon any of their property that would otherwise be subject to the foregoing restrictions, and may carry out any other transactions which would otherwise be subject to the foregoing restrictions, *provided* that the aggregate amount at any time outstanding of all such secured Funded Debt incurred pursuant to this paragraph (b) would not, after giving effect thereto, exceed 10% of Consolidated Net Tangible Assets if incurred on or prior to the earlier of (x) the date of any refinancing or repayment (including by redemption) in full of the Existing NNC Convertible Notes and (y) September 2, 2008, and 15% of Consolidated Net Tangible Assets if incurred after such date.

[New York #1531721 v17]                                76

SECTION 1006.    *INCURRENCE OF ADDITIONAL FUNDED DEBT.*

(a)    The Issuer and the Guarantors will not, and will not permit any of their Subsidiaries to, directly or indirectly, create, incur, assume, guarantee, acquire, become liable, contingently or otherwise, with respect to, or otherwise become responsible for the payment of (collectively, "incur") any Funded Debt (other than Permitted Funded Debt); *provided* that the Issuer, any Guarantor and any other Subsidiary of NNC may incur Funded Debt (including, without limitation, Acquired Funded Debt), if on the date of the incurrence of such Funded Debt, after giving effect to the incurrence thereof, the Consolidated Fixed Charge Coverage Ratio is greater than 2.0 to 1.0.

(b)    The Issuer and the Guarantors will not, directly or indirectly, incur any Funded Debt which by its terms (or by the terms of any agreement governing such Funded Debt) is subordinated in right of payment to any other Funded Debt of the Issuer or such Guarantors, unless such Funded Debt is also by its terms (or by the terms of any agreement governing such Funded Debt) made expressly subordinate to the Debt Securities and the Guarantees, as applicable, to the same extent and in the same manner as such Funded Debt is subordinated to other Funded Debt of the Issuer and the Guarantors, as applicable.

SECTION 1007.    *RESTRICTED PAYMENTS.*

The Issuer and the Guarantors will not, and will not cause or permit any of their Subsidiaries to, directly or indirectly:

(a)    declare or pay any dividend or make any distribution (other than dividends or distributions payable in Qualified Capital Stock of NNC) on or in respect of shares of NNC's Capital Stock or the Issuer's Preferred Stock to holders of such Capital Stock or Preferred Stock, as the case may be, in their capacity as such; or

(b)    purchase, redeem or otherwise acquire or retire for value any Capital Stock of NNC or any Preferred Stock of the Issuer or any warrants, rights or options to purchase or acquire shares of any class of such Capital Stock or Preferred Stock or make any payments with respect to Synthetic Purchase Agreements, (each of the foregoing actions set forth in clauses (a) and (b) being referred to as a "Restricted Payment"), if at the time of such Restricted Payment or immediately after giving effect thereto,

    (i)    a Default or an Event of Default shall have occurred and be continuing;

    (ii)    the Issuer would not be able to incur at least $1.00 of additional Funded Debt (other than Permitted Funded Debt) in compliance with Section 1006; or

    (iii)    the aggregate amount of Restricted Payments (including such proposed Restricted Payment) made subsequent to the Measurement Date shall exceed the sum, without duplication (the "Restricted Payments Basket"), of:

        (w)    50% of the cumulative Consolidated Net Income of NNC (or if cumulative Consolidated Net Income shall be a loss, minus 100% of such loss) earned subsequent to the Measurement Date and on or prior to the last day of the

[New York #153172] v17]                    77

From:Bank of NY Mellon    12128155802    01/16/2009 14:13    #415 P.087/102

01/16/2009 14:14    #415  P. 088/102    12128155802    From:Bank of NY Mellon

most recent fiscal quarter for which consolidated financial information for NNC is available (the "Reference Date") (treating such period as a single accounting period); plus

(x)    100% of the aggregate net cash proceeds received by NNC from any Person (other than NNC or a Subsidiary of NNC) or the Issuer from any Person (other than any other Subsidiary of NNC) from the issuance and sale subsequent to the Measurement Date and on or prior to the Reference Date of Qualified Capital Stock of NNC or Preferred Stock (other than Disqualified Capital Stock) of the Issuer or warrants, options or other rights to acquire Qualified Capital Stock of NNC (but excluding any debt security that is convertible into, or exchangeable for, Qualified Capital Stock); plus

(y)    100% of the aggregate net cash proceeds of any equity contribution received by NNC or the Issuer from a holder of NNC's or the Issuer's Capital Stock (other than an equity contribution received by the Issuer from NNC) following the Measurement Date; plus

(z)    the amount by which Funded Debt of NNC, the Issuer or another Subsidiary of NNC is reduced on NNC's consolidated balance sheet subsequent to the Measurement Date upon the conversion or exchange (other than by a Subsidiary of the Issuer) of such Funded Debt for Qualified Capital Stock of NNC or Preferred Stock (other than Disqualified Capital Stock) of the Issuer (less the amount of any cash, or the fair value of any other property, distributed by NNC, the Issuer or another Subsidiary of NNC upon such conversion or exchange).

Notwithstanding the foregoing, the provisions set forth in the preceding paragraphs shall not prohibit:

(1)    the payment of any dividend within 60 days after the date of declaration of such dividend if the dividend would have complied with the provisions of this Section 1007 on the date of declaration;

(2)    the purchase, defeasance, repurchase, prepayment, redemption or other acquisition or retirement for value of Capital Stock of NNC or Preferred Stock (other than Disqualified Capital Stock) of the Issuer or any warrants, rights or options to purchase or acquire shares of any class of such Capital Stock or Preferred Stock in exchange for, or out of the proceeds of the substantially concurrent sale of, Qualified Capital Stock of NNC or Preferred Stock (other than Disqualified Capital Stock) of the Issuer (other than Capital Stock issued or sold to NNC or a Subsidiary of NNC); *provided* that the net cash proceeds from such exchange or sale shall be excluded from the calculations pursuant to clause (iii)(x) of the preceding paragraph;

(3)    the repurchase or other acquisition of Capital Stock of NNC or any warrants, rights or options to purchase or acquire shares of any such Capital Stock or securities convertible into Capital Stock of NNC, from or on behalf of current or former employees, directors, consultants or contractors of NNC or any of its

[New York #1531721 v17]                78

Subsidiaries (or permitted transferees of such current or former employees, directors, consultants or contractors), pursuant to the terms of the agreements (including employment, consulting or severance agreements) or plans (or amendments thereto) under which such individuals purchase or sell, or are granted the option to purchase or sell, shares of such Capital Stock;

(4)    the redemption by NNC of any rights to purchase shares of Common Stock of NNC outstanding from time to time under the amended and restated shareholder rights plan agreement between NNC and Computershare Trust Company of Canada, as rights agent, dated as of February 14, 2003, as the same may be further amended, restated or replaced from time to time, in accordance with the terms thereof; *provided* that such rights are redeemed for nominal consideration;

(5)    payments to holders or former holders of Capital Stock of NNC, the Issuer or any other Subsidiary of NNC pursuant to a statutory dissent right or appraisal remedy;

(6)    payments to holders of Capital Stock (or to the holders of Funded Debt or Disqualified Capital Stock that is convertible into or exchangeable for Capital Stock upon such conversion or exchange) in lieu of the issuance of fractional shares;

(7)    payments to holders of Capital Stock of NNC under any stock purchase plan or similar employee or director benefit plan in settlement of fractional shares issued under such plan;

(8)    the declaration and payment by NNC or the Issuer of regularly scheduled cash dividends with respect to, and the redemption by NNC or the Issuer on a scheduled mandatory redemption date of, any Disqualified Capital Stock (including Existing Preferred Stock) or Designated Qualified Preferred Stock;

(9)    the declaration and payment by NNC or the Issuer of regularly scheduled cash dividends with respect to, and the redemption by NNC or the Issuer on a scheduled mandatory redemption date of, any Qualified Capital Stock (other than Designated Qualified Preferred Stock) issued after the date of this Indenture in an amount not in excess of the aggregate net cash proceeds received by NNC or the Issuer from any Person (other than NNC or a Subsidiary of NNC) from such issuance; *provided* that the amount of Restricted Payments made pursuant to this clause (9) shall be excluded from the calculation pursuant to clause (iii)(x) of the preceding paragraph;

(10)    any payment or distribution to holders or former holders of Capital Stock of NNC in connection with the settlement of, or satisfaction of a judgment resulting from, any shareholder litigation or regulatory or enforcement proceeding; and

(11)    any other Restricted Payments in an aggregate amount which, when taken together with all other Restricted Payments pursuant to this clause (11), does not exceed $25,000,000.

[New York #1531721 v17]

79

Notwithstanding the foregoing, none of NNC, the Issuer or any other Subsidiary of NNC may make any Restricted Payment in reliance on clause (11) if, after giving effect to such Restricted Payment, a Default or Event of Default shall have occurred and be continuing. In calculating the aggregate amount of Restricted Payments made subsequent to the date of this Indenture for purposes of clause (iii) of the second preceding paragraph, amounts expended pursuant to clause (1) of the immediately preceding paragraph shall be included in such calculation and amounts expended pursuant to clauses (2) through (11) of the immediately preceding paragraph shall be excluded in such calculation.

SECTION 1008.    *COMPLIANCE CERTIFICATE.*

The Issuer and each Guarantor shall deliver an Officers' Certificate to the Trustee within 120 days after the end of each fiscal year thereof stating whether the signers know of any Event of Default that occurred during the fiscal year. If an Event of Default shall have occurred, the applicable certificate shall describe the nature of the Event of Default and its current status. The certificate shall be in a form in compliance with the Trust Indenture Act.

SECTION 1009.    *WAIVER OF CERTAIN COVENANTS.*

The Issuer and each Guarantor may omit in any particular instance to comply with any covenant or condition set forth in this Indenture or any applicable supplemental indenture, with respect to the Debt Securities of any series if, before the time for such compliance, the Holders of a majority in principal amount of the Outstanding Debt Securities of such series shall, by Act of such Holders, either waive such compliance in such instance or generally waive compliance with such covenant or condition, but no such waiver shall extend to or affect such covenant or condition except to the extent so expressly waived, and, until such waiver shall become effective, the obligations of the Issuer and such Guarantor and the duties of the Trustee in respect of any such covenant or condition shall remain in full force and effect.

SECTION 1010.    *COVENANT SUSPENSION.*

(a)    During any Suspension Period with respect to any series of Debt Securities, NNC and its Subsidiaries will not be subject to the following Sections of this Indenture for purposes of such series of Debt Securities: Section 1006 and Section 1007 (collectively, the "Suspended Covenants"). On any Reversion Date with respect to any series of Debt Securities, NNC and its subsidiaries will thereafter again be subject to the Suspended Covenants for purposes of such series of Debt Securities for all periods until the next Suspension Period, if any. Furthermore, on each Reversion Date with respect to any series of Debt Securities, (i) all Funded Debt of NNC or any Subsidiary of NNC incurred during the Suspension Period prior to such Reversion Date will be deemed for purposes of such series of Debt Securities to have been outstanding on the date of this Indenture and classified as permitted under clause (c) of the definition of Permitted Funded Debt and (ii) all Liens granted or created by any Subsidiary of NNC (other than the Issuer or any Subsidiary that was a Restricted Subsidiary during such Suspension Period) during the Suspension Period prior to such Reversion Date (other than any Lien granted or created in connection with a transaction that directly results in a downgrade in the rating of the Debt Securities of any series from S&P or Moody's to below the applicable rating specified in the definition of Investment Grade Status) will be deemed for purposes of such series of Debt

Securities to have been outstanding on the date of this Indenture and classified as permitted under Section 1005(a)(x).

(b)      For purposes of calculating the amount available to be made as Restricted Payments under clause (iii) of Section 1007(b), calculations under such clause will be made with reference to the Measurement Date as set forth in that clause. Accordingly, Restricted Payments made during the Suspension Period with respect to any series of Debt Securities not otherwise permitted pursuant to any of clauses (1) through (11) under the second paragraph of Section 1007(b) will reduce the amount available to be made as Restricted Payments under clause (iii) of Section 1007(b) for purposes of such series of Debt Securities; *provided* that the amount available to be made as Restricted Payments on the Reversion Date shall not be reduced to below zero solely as a result of such Restricted Payments, but may be reduced to below zero as a result of cumulative Consolidated Net Income for the purpose of sub-clause (w) of clause (iii) of Section 1007(b) being a loss, and the items specified in sub-clauses (w) through (z) of clause (iii) of Section 1007(b) that occur during the Suspension Period will increase the amount available to be made as Restricted Payments under clause (iii) of Section 1007(b). Any Restricted Payments made during the Suspension Period that would have been made pursuant to clause (11) of the second paragraph under the Section 1007(b) if the provisions of such Section were then applicable, shall for purposes of such series of Debt Securities reduce the amounts permitted to be incurred under such clause (11) on the Reversion Date.

## ARTICLE ELEVEN

### REDEMPTION OF DEBT SECURITIES

SECTION 1101.     *APPLICABILITY OF ARTICLE.*

Debt Securities of any series that are redeemable before their Stated Maturity Date shall be redeemable in accordance with their terms and (except as otherwise specified pursuant to Section 301 for Debt Securities of any series) in accordance with this Article.

SECTION 1102.     *ELECTION TO REDEEM; NOTICE TO TRUSTEE.*

The election of the Issuer to redeem any or all of the Debt Securities of a series pursuant to Section 1101 of this Indenture shall be evidenced by a Board Resolution of the Issuer. In case of any redemption at the election of the Issuer, the Issuer shall, not later than the earlier of the date that is 35 days prior to the Redemption Date fixed by the Issuer and the date on which notice is given to the Holders (except as provided in Section 1103 or unless a shorter notice shall be satisfactory to the Trustee), notify the Trustee of such Redemption Date and of the principal amount of the Debt Securities to be redeemed, deliver to the Trustee such documentation and records as shall enable the Trustee to select the Debt Securities to be redeemed pursuant to Section 1103 and direct the Trustee to redeem the Debt Securities in accordance with the Board Resolution. Any such notice may be canceled at any time prior to notice of such redemption being mailed to any Holder and shall thereby be void and of no effect.

[New York #1531721 v17]                            81

01/16/2009 14:14     #415  P.091/102

12128155802

From:Bank of NY Mellon

SECTION 1103.    *SELECTION BY TRUSTEE OF DEBT SECURITIES TO BE REDEEMED.*

(a)    If less than all the Debt Securities of any series are to be redeemed at any time pursuant to an optional redemption, the particular Debt Securities of such series to be redeemed shall be selected not more than 60 days prior to the Redemption Date by the Trustee, from the Outstanding Debt Securities of such series not previously called for redemption, in compliance with the requirements of the principal national securities exchange, if any, on which the Debt Securities of such series are listed, or, if such series of Debt Securities are not so listed, on a *pro rata* basis, by lot or by such other method as the Trustee shall deem fair and appropriate (and in such manner as complies with applicable legal requirements) and which may provide for the selection for redemption of portions of the principal of the Debt Securities of such series; *provided* that Debt Securities selected for partial redemption shall be in authorized denominations of such Debt Securities. If a partial redemption is made with Qualified Equity Proceeds, the Trustee will select the Debt Securities of such series only on a *pro rata* basis or on as nearly a *pro rata* basis as is practicable (subject to procedures of the Depositary).

The Trustee shall promptly notify the Issuer in writing of the Debt Securities of such series selected for redemption and, in the case of any Debt Securities of a series selected for partial redemption, the method it has chosen for the selection of Debt Securities of such series and the principal amount thereof to be redeemed and upon the Issuer's written approval of such selection, the Trustee shall redeem the selected Debt Securities of such series.

For all purposes of this Indenture, unless the context otherwise requires, all provisions relating to redemption of Debt Securities of a series shall relate, in the case of any Debt Security of a series redeemed or to be redeemed only in part, to the portion of the principal amount of such Debt Security which has been or is to be redeemed.

SECTION 1104.    *NOTICE OF REDEMPTION.*

(a)    Notice of redemption shall be given by first-class mail not less than 30 nor more than 60 days prior to the Redemption Date, to each Holder of the Debt Securities of the series to be redeemed at its address as listed in the Securities Register. The Trustee shall give notice of redemption in the Issuer's name and at the Issuer's expense; *provided* that the Issuer shall deliver to the Trustee, at least 35 days prior to the Redemption Date (unless a shorter notice period shall be satisfactory to the Trustee) an Issuer Order requesting that the Trustee give such notice at the Issuer's expense and setting forth the information to be stated in such notice, which shall include:

(i)    the Redemption Date;

(ii)    the Redemption Price and the amount of accrued interest to but excluding the Redemption Date payable as provided in Section 1105, if any;

(iii)    if less than all Outstanding Debt Securities of such series are to be redeemed, the aggregate principal amount of Debt Securities of such series to be redeemed and the aggregate principal amount of Debt Securities of such series to be Outstanding after such partial redemption,

(iv)   in case any Debt Security of such series is to be redeemed in part only, the notice that relates to such Debt Security, a statement that, on and after the Redemption Date, upon surrender of such Debt Security, the Holder will receive, without charge, a new Debt Security or Debt Securities of such series of authorized denominations for the principal amount thereof remaining unredeemed;

(v)    a statement that, on the Redemption Date, the Redemption Price of the Debt Securities to be redeemed (and accrued interest, if any, to but excluding the Redemption Date payable as provided in Section 1105 of this Indenture) will become due and payable upon each such Debt Security, or the portion thereof, to be redeemed, and, unless the Issuer defaults in making the redemption payment, that interest on the Debt Securities called for redemption (or the portion thereof) will cease to accrue on and after said date, as long as the Issuer has deposited with the Paying Agent funds in satisfaction of the applicable redemption price;

(vi)   the Place of Payment where such Debt Securities are to be surrendered for payment of the Redemption Price and accrued interest,

(vii)  the CUSIP number, if any, of the series of Debt Securities to be redeemed, *provided* that no representation need be made as to the accuracy or correctness of the CUSIP number, if any, listed in such notice or printed on the Debt Securities, and any redemption shall not be affected by any defect in such CUSIP numbers;

(viii) the paragraph of the Debt Securities pursuant to which the Debt Securities are to be redeemed,

(b)    If the Issuer exercises its right to redeem the Debt Securities, in whole or in part, the Issuer shall disseminate a press release containing information regarding the redemption, through a public medium that is customary for such press releases or publish the information on its website or through such other public medium as the Issuer may use at that time.

SECTION 1105.    *DEPOSIT OF REDEMPTION PRICE.*

On or before 10:00 a.m. in the Place of Payment on any Redemption Date, the Issuer shall deposit with the Trustee or with a Paying Agent (or, if the Issuer is acting as its own Paying Agent, segregate and hold in trust as provided in Section 1003(a)) an amount of money sufficient to pay the Redemption Price of the Debt Securities which are to be redeemed on that date, other than Debt Securities or portions of Debt Securities called for redemption that are beneficially owned by the Issuer and have been delivered by the Issuer to the Trustee for cancellation.

SECTION 1106.    *DEBT SECURITIES PAYABLE ON REDEMPTION DATE.*

(a)    Notice of redemption having been given as aforesaid, the Debt Securities so to be redeemed shall, on the Redemption Date, become due and payable at the Redemption Price specified in such notice. From and after such date (unless the Issuer and the Guarantors shall default in the payment of the Redemption Price and accrued interest) such Debt Securities shall cease to bear interest. Upon surrender of any such Debt Security for redemption in accordance with the notice, such Debt Security shall be paid by the Issuer at the Redemption Price, together

[New York #1531721 v17]

with accrued interest to the Redemption Date; provided that installments of interest on Debt Securities whose Stated Maturity Date is on or prior to the Redemption Date shall be payable to the Holders of such Debt Securities, or one or more Predecessor Securities, registered as such on the relevant Record Dates according to their terms and the provisions of Section 312.

(b)    If any Debt Security called for redemption shall not be so paid upon surrender thereof for redemption, the principal (and premium, if any) shall, until paid, bear interest from the Redemption Date at the rate prescribed therefor in such Debt Security.

SECTION 1107.    *DEBT SECURITY REDEEMED IN PART.*

Any Debt Security that is to be redeemed only in part shall be surrendered at a Place of Payment therefor (with, if the Issuer, any Guarantor, the Security Registrar or the Trustee so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Issuer, such Guarantor, the Security Registrar and the Trustee duly executed by, the Holder thereof or his attorney duly authorized in writing), and the Issuer shall execute, and the Trustee shall authenticate and deliver to the Holder of such Debt Security without service charge, a new Debt Security or Debt Securities of the same series, each having endorsed thereon the Guarantee(s) executed by the Guarantors, of any authorized denomination as requested by such Holder in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Debt Security so surrendered; except that if a Global Security is so surrendered, the Issuer shall execute, and the Trustee shall authenticate and deliver to the Depositary for such Global Security, without service charge, a new Global Security, each having endorsed thereon the Guarantees executed by the Guarantor(s), in a denomination equal to and in exchange for the unredeemed portion of the principal of the Global Security so surrendered.

## ARTICLE TWELVE

### SINKING FUNDS

SECTION 1201.    *APPLICABILITY OF ARTICLE.*

The provisions of this Article shall be applicable to any sinking fund for the retirement of Debt Securities of a series except as otherwise specified pursuant to Section 301 for the Debt Securities of such series. The minimum amount of any sinking fund payment provided for by the terms of Debt Securities of any series is herein referred to as a "mandatory sinking fund payment," and any payment in excess of such minimum amount provided for by the terms of Debt Securities of any series is herein referred to as an "optional sinking fund payment." If provided for by the terms of Debt Securities of any series, the amount of any sinking fund payment may be subject to reduction as provided in Section 1202. Each sinking fund payment shall be applied to the redemption of Debt Securities of any series as provided for by the terms of such Debt Securities.

SECTION 1202.    *SATISFACTION OF SINKING FUND PAYMENTS WITH DEBT SECURITIES.*

The Issuer or the Guarantors may deliver Outstanding Debt Securities of a series (other than any previously called for redemption) and may apply as a credit Debt Securities of a series that have been redeemed either at the election of the Issuer pursuant to the terms of such Debt Securities or

[New York #1531721 v17]    84

through the application of permitted optional sinking fund payments pursuant to the terms of such Debt Securities, in each case, in satisfaction of all or any part of any sinking fund payment with respect to the Debt Securities of such series required to be made pursuant to, and as provided for by, their terms; *provided* that such Debt Securities have not been previously so credited. Such Debt Securities shall be received and credited for such purpose by the Trustee at the Redemption Price specified in such Debt Securities for redemption through operation of the sinking fund and the amount of such sinking fund payment shall be reduced accordingly.

SECTION 1203.    *REDEMPTION OF DEBT SECURITIES FOR SINKING FUND.*

Not less than 60 days prior to each sinking fund payment date for any series of Debt Securities (unless a shorter period shall be satisfactory to the Trustee), the Issuer will deliver to the Trustee an Officers' Certificate of the Issuer specifying the amount of the next sinking fund payment for that series pursuant to the terms of that series, the portion thereof, if any, that is to be satisfied by payment of cash, the portion thereof, if any, that is to be satisfied by delivering and crediting Debt Securities of that series pursuant to Section 1202 and the basis for any such credit and, prior to or concurrently with the delivery of such Officers' Certificate, will also deliver to the Trustee any Debt Securities to be so credited and not theretofore delivered to the Trustee. Not less than 45 days (unless a shorter period shall be satisfactory to the Trustee) before each such sinking fund payment date the Trustee shall select the Debt Securities to be redeemed upon such sinking fund payment date in the manner specified in Section 1103 and cause notice of the redemption thereof to be given in the name of and at the expense of the Issuer in the manner provided in Section 1104. Such notice having been duly given, the redemption of such Debt Securities shall be made upon the terms and in the manner stated in Sections 1105, 1106 and 1107.

ARTICLE THIRTEEN

DEFEASANCE

SECTION 1301.    *DISCHARGE BY DEPOSIT OF MONEY OR DEBT SECURITIES.*

(a)    This Section 1301 shall be applicable to Debt Securities of a series if so provided pursuant to Section 301. All obligations, covenants and agreements of the Issuer and the Guarantors under this Indenture with respect to Debt Securities of a particular series or for the benefit of the Holders thereof (except as to any surviving rights of registration of transfer or exchange of Debt Securities or herein expressly provided for) shall cease, terminate and be discharged if:

(i)    the Issuer or a Guarantor has, at least 91 days prior thereto, irrevocably deposited with the Trustee, as specific security pledged for, and dedicated solely to, the due payment and ultimate satisfaction of its obligations under the Indenture with respect to the Debt Securities of the series affected,

(A)    funds in the currency or currencies in which the Debt Securities are payable, and/or

(B)    an amount of direct obligations of, or obligations the payment of principal of and interest, if any, on are fully guaranteed by, the government(s) that

[New York #1531721 v17]                85

01/16/2009 14:15    12128155802    From:Bank of NY Mellon    #415 P. 095/102

issued the currency or currencies in which Debt Securities of such series are payable, and that are not subject to prepayment, redemption or call,

as will together with the predetermined and certain income to accrue thereon without consideration of any reinvestment thereof, be sufficient (in the case of such obligations, through the payment of interest and principal thereunder) to pay (1) the principal of (and premium, if any) and interest on the Outstanding Debt Securities of the particular series on the Stated Maturity Date of such principal or interest or of any installment thereof, and (2) any mandatory prepayments or analogous payments applicable to such Debt Securities on the day on which such payments are due and payable in accordance with the terms of this Indenture and such Debt Securities;

(ii)  the Issuer or such Guarantor shall have received an Opinion of Counsel to the effect that Holders of such Debt Securities will not recognize income (whether taxable to them by deduction or withholding by the Issuer or such Guarantor or otherwise), gain or loss for United States federal income tax purposes as a result of such deposit and defeasance in respect of the Issuer's and the Guarantors' obligations and will be subject to United States federal income tax as if such deposit and defeasance had not occurred;

(iii)  the Issuer or such Guarantor shall have received an Opinion of Counsel to the effect that the Holders of the Debt Securities affected will not recognize income (whether taxable to them by deduction or withholding by the Issuer or such Guarantor or otherwise), gain or loss for Canadian federal income tax purposes as a result of such deposit and defeasance in respect of the Issuer's and the Guarantors' obligations and will be subject to Canadian federal income tax as if such deposit and defeasance had not occurred;

(iv)  such deposit will not result in a breach or violation of, or constitute a Default under, this Indenture or any other material agreement or instrument to which the Issuer or any Guarantor is a party or by which it is bound;

(v)  no Default with respect to the Debt Securities of such series shall have occurred and be continuing on the date of such deposit;

(vi)  the Issuer or such Guarantor, as the case may be, shall have delivered to the Trustee an Officers' Certificate or an Opinion of Counsel, stating compliance with all conditions precedent to the defeasance contemplated by Section 1301 or Section 1302; and

(vii)  such deposit shall not cause the Trustee with respect to such series of Debt Securities to have a conflicting interest, within the meaning of this Indenture, and for purposes of the Trust Indenture Act with respect to such Debt Securities.

(b)  Notwithstanding any defeasance under this Indenture with respect to such series of Debt Securities, the obligation of the Issuer to indemnify and compensate the Trustee under this Indenture and the obligations of the Trustee under Sections 1003 and 1303 shall survive with respect to such series of Debt Securities.

[New York #1551721 v17]

86

#415 P. 097/102

01/16/2009 14:16

12128155802

From:Bank of NY Mellon

SECTION 1302.    *APPLICATION OF TRUST MONEY.*

All money deposited with the Trustee pursuant to Sections 1301 and 1302 shall be held in trust and applied by it, in accordance with the provisions of the Debt Securities and this Indenture and any applicable direction of the Issuer or a Guarantor to the payment, either directly or through any Paying Agent (including the Issuer or such Guarantor acting as its own Paying Agent), as the Trustee may determine, to the Persons entitled thereto, of the principal (and premium, if any) and interest for whose payment such money has been deposited with the Trustee.

SECTION 1303.    *REPAYMENT TO THE ISSUER OR GUARANTORS.*

(a)    The Trustee and any Paying Agent shall promptly pay to the Issuer or the applicable Guarantor upon Issuer Request or Guarantor Request of such Guarantor, as the case may be, any money or governmental obligations not required for the payment of the principal of (and premium, if any) and interest on Debt Securities of any series for which currency or government obligations have been deposited pursuant to Section 1301 or Section 1302 held by them at any time.

(b)    The Trustee and any Paying Agent shall pay to the Issuer or the applicable Guarantor upon Issuer Request or Guarantor Request of such Guarantor, as the case may be, any money held by them for the payment of principal (and premium, if any) and interest that remains unclaimed for two years after the Maturity of the Debt Securities for which a deposit has been made pursuant to Section 1301 or Section 1302. After such payment to the Issuer or such Guarantor, as the case may be, the Holders of Debt Securities of such series shall thereafter, as unsecured general creditors, look only to the Issuer and the Guarantors for payment thereof, and all liability of the Issuer or Guarantor as trustee thereof shall cease.

## ARTICLE FOURTEEN

### MEETINGS OF HOLDERS OF DEBT SECURITIES

SECTION 1401.    *PURPOSES FOR WHICH MEETINGS MAY BE CALLED.*

A meeting of Holders of Debt Securities of a series may be called at any time and from time to time pursuant to this Article to make, give or take any Act provided by this Indenture to be made, given or taken by Holders of Debt Securities of such series.

SECTION 1402.    *CALL, NOTICE AND PLACE OF MEETINGS.*

(a)    The Trustee may at any time call a meeting of Holders of Debt Securities of any series for any purpose specified in Section 1401, to be held at such time and at such place in the Borough of Manhattan, The City of New York as specified in a notice to such Holders. Notice of every meeting of Holders of Debt Securities of any series, setting forth the time and place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given, in the manner provided in Section 106, not less than 21 or more than 50 days prior to the date fixed for the meeting.

[New York #1531721 v17]                                    87

From:Bank of NY Mellon         12128155802         01/16/2009 14:16         #415 P.098/102

(b)     If at any time the Issuer or a Guarantor, pursuant to a Board Resolution of the Issuer or an Officers' Certificate of such Guarantor, or the Holders of at least 10% in principal amount of the Outstanding Debt Securities of any series shall have requested the Trustee to call a meeting of the Holders of Debt Securities of such series for any purpose specified in Section 1401, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, and the Trustee shall not have made the first publication of the notice of such meeting within 21 days after receipt of such request or shall not thereafter proceed to cause the meeting to be held as provided herein, then the Issuer, such Guarantor or the Holders of Debt Securities of such series in the amount above specified, as the case may be, may determine the time and the place in the Borough of Manhattan, The City of New York for such meeting and may call such meeting for such purposes by giving notice thereof as provided in paragraph (a) of this Section.

SECTION 1403.     *PERSONS ENTITLED TO VOTE AT MEETINGS.*

To be entitled to vote at any meeting of Holders of Debt Securities of any series, a Person shall be: (1) a Holder of one or more Outstanding Debt Securities of such series; or (2) a Person appointed by an instrument in writing as proxy for a Holder or Holders of one or more Outstanding Debt Securities of such series by such Holder or Holders. The only Persons who shall be entitled to be present or to speak at any meeting of Holders of Debt Securities of any series shall be the Persons entitled to vote at such meeting and their counsel, any representatives of the Trustee and its counsel and any representatives of the Issuer and its counsel or a Guarantor and its counsel.

SECTION 1404.     *QUORUM; ACTION.*

(a)     The Persons entitled to vote a majority in principal amount of Outstanding Debt Securities of a series shall constitute a quorum for a meeting of Holders of Debt Securities of such series. In the absence of a quorum within 45 minutes of the time appointed for any such meeting, the meeting shall, if convened at the request of Holders of Debt Securities of such series, be dissolved. In the absence of a quorum in any other case the meeting may be adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment of such meeting. In the absence of a quorum upon the re-convening of any such adjourned meeting, such re-convened meeting may be further adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment thereof. Notice of the reconvening of any adjourned meeting shall be given as provided in Section 1402(a), except that such notice need be given only once not less than five days prior to the date on which the meeting is scheduled to be reconvened.

(b)     Except as limited by the proviso to Section 902, any resolution presented to a meeting or adjourned meeting duly reconvened at which a quorum is present as aforesaid may be adopted only by the affirmative vote of the Holders of a majority in principal amount of Outstanding Debt Securities of that series; *provided* that, except as limited by the proviso to Section 902, any resolution with respect to any Act that this Indenture expressly provides may be made, given or taken by the Holders of a specified percentage, which is less than a majority, in principal amount of Outstanding Debt Securities of a series may be adopted at a meeting or an adjourned meeting duly reconvened and at which a quorum is present as aforesaid by the affirmative vote of the Holders of such specified percentage in principal amount of Outstanding Debt Securities of that series.

[New York #1531721 v17]                    88

#415  P. 099/102    01/16/2009 14:16    12128155802    From:Bank of NY Mellon

(c)    Any resolution passed or decision taken at any meeting of Holders of Debt Securities of any series duly held in accordance with this Section will be binding on all Holders of Debt Securities of such series, whether or not present or represented at the meeting.

SECTION 1405.    *DETERMINATION OF VOTING RIGHTS; CONDUCT AND ADJOURNMENT OF MEETINGS.*

(a)    Notwithstanding any other provisions of this Indenture, the Trustee may make such reasonable regulations as it may deem advisable for any meeting of Holders of Debt Securities of such series in regard to proof of the holding of Debt Securities of such series and of the appointment of proxies and in regard to the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate. Except as otherwise permitted or required by any such regulations, the holding of Debt Securities shall be proved in the manner specified in Section 104 and the appointment of any proxy shall be proved in the manner specified in Section 104. Such regulations may provide that written instruments appointing proxies, regular on their face, may be presumed valid and genuine without the proof specified in Section 104 or other proof.

(b)    The Trustee shall, by an instrument in writing, appoint a temporary chairman of the meeting, unless the meeting shall have been called by the Issuer, a Guarantor or by Holders of Debt Securities as provided in Section 1402(b), in which case the Issuer, such Guarantor or the Holders of Debt Securities of the series calling the meeting, as the case may be, shall in like manner appoint a temporary chairman. A permanent chairman and a permanent secretary of the meeting shall be elected by vote of the Persons entitled to vote a majority in principal amount of Outstanding Debt Securities of such series represented at the meeting.

(c)    At any meeting each Holder of a Debt Security of such series or proxy shall be entitled to one vote for each $1,000 principal amount (or the equivalent per the Exchange Rate in any Foreign Currency at the date of issue) of Debt Securities of such series held or represented by him; *provided* that no vote shall be cast or counted at any meeting in respect of any Debt Security challenged as not Outstanding and ruled by the chairman of the meeting to be not Outstanding. The chairman of the meeting shall have no right to vote, except as a Holder of a Debt Security of such series or proxy.

(d)    Any meeting of Holders of Debt Securities of any series duly called pursuant to Section 1402 at which a quorum is present may be adjourned from time to time by Persons entitled to vote a majority in principal amount of Outstanding Debt Securities of such series represented at the meeting; and the meeting may be re-convened without further notice.

SECTION 1406.    *COUNTING VOTES AND RECORDING ACTION OF MEETINGS.*

(a)    The vote upon any resolution submitted to any meeting of Holders of Debt Securities of any series shall be by written ballots on which shall be inscribed the signatures of the Holders of Debt Securities of such series or of their representatives by proxy and the principal amounts and serial numbers of Outstanding Debt Securities of such series held or represented by them. The permanent chairman of the meeting shall appoint two inspectors of votes who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the

[New York #1531721 v17]                                    89

secretary of the meeting their verified written reports of all votes cast at the meeting. A record of the proceedings of each meeting of Holders of Debt Securities of any series shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the inspectors of votes on any vote by ballot taken thereat and affidavits by one or more persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was given as provided in Section 1402 and, if applicable, Section 1404. Four copies of each shall be signed and verified by the affidavits of the permanent chairman and secretary of the meeting and one such copy shall be delivered to the Issuer and Guarantors and another to the Trustee to be preserved by the Trustee, the latter to have attached thereto the ballots voted at the meeting. Any record so signed and verified shall be conclusive evidence of the matters therein stated.

This instrument may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

[New York #1531721 v17]                    90

01/16/2009 14:17    #415 P. 101/102    12128155802    From:Bank of NY Mellon

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed as of the day and year first above written.

THE BANK OF NEW YORK,
    as Trustee


By:_____
    Name:
    Title:


NORTEL NETWORKS LIMITED,
    as Issuer


By:_____
    Name: Katharine B. Stevenson
    Title:   Treasurer


By:_____
    Name: Gordon A. Davies
    Title:   General Counsel — Corporate
             and Corporate Secretary


NORTEL NETWORKS CORPORATION,
    as Guarantor


By:_____
    Name: Katharine B. Stevenson
    Title:  Treasurer


By:_____
    Name: Gordon A. Davies
    Title:   General Counsel — Corporate
             and Corporate Secretary


NORTEL NETWORKS INC.,
    as Guarantor


By:_____
    Name: Allen K. Stout
    Title:  Vice President, Finance


Base Indenture

#415 P. 102/102

01/16/2009 14:17

12128155802

From:Bank of NY Mellon

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed as of the day and year first above written.

THE BANK OF NEW YORK,
as Trustee

By:_____
Name:
Title:

NORTEL NETWORKS LIMITED,
as Issuer

By:_____
Name: Katharine B. Stevenson
Title: Treasurer

By:_____
Name: Gordon A. Davies
Title:  General Counsel — Corporate
and Corporate Secretary

NORTEL NETWORKS CORPORATION,
as Guarantor

By:_____
Name: Katharine B. Stevenson
Title:  Treasurer

By:_____
Name: Gordon A. Davies
Title:  General Counsel — Corporate
and Corporate Secretary

NORTEL NETWORKS INC.,
as Guarantor

By: _Allen K Stout_____
Name: Allen K. Stout
Title:  Vice President, Finance

Base Indenture