**NORTEL NETWORKS LIMITED**

*as Issuer,*

**NORTEL NETWORKS CORPORATION**

**AND**

**NORTEL NETWORKS INC.**

*as Guarantors,*

**AND**

**THE BANK OF NEW YORK**

*as Trustee and Calculation Agent*

---

*FIRST SUPPLEMENTAL INDENTURE*

*Dated as of July 5, 2006*

*to*

*Indenture Dated as of July 5, 2006*

---

**FIRST SUPPLEMENTAL INDENTURE** dated as of July 5, 2006 (this "First Supplemental Indenture") to the Indenture dated as of July 5, 2006 among Nortel Networks Limited (together with any successors, "NNL" or the "Issuer"), a Canadian corporation having its principal place of business at 8200 Dixie Road, Suite 100, Brampton, Ontario, Canada L6T 5P6, Nortel Networks Corporation (together with any successors, "NNC"), a Canadian corporation having its principal place of business at 8200 Dixie Road, Suite 100, Brampton, Ontario, Canada L6T5P6 and Nortel Networks Inc. (together with any successors, "NNI"), a Delaware corporation having its principal place of business at 4008 Chapel Hill - Nelson Highway, Research Triangle Park, North Carolina, U.S.A., 27709, and The Bank of New York (the "Trustee"), a New York corporation authorized to conduct a banking business, having its Corporate Trust Office at 101 Barclay Street 21W, New York, New York, U.S.A., 10286 (the "Original Indenture," and as supplemented by this First Supplemental Indenture, the "Indenture").

WHEREAS, NNC, NNL, NNI and the Trustee have heretofore executed and delivered the Original Indenture to provide for the issuance of securities of NNL in one or more registered series;

WHEREAS, Article Nine of the Original Indenture provides, among other things, that NNC, NNL, NNI and the Trustee may enter into indentures supplemental to the Original Indenture to, among other things, provide for the issuance of any series of securities and to set forth the terms thereof;

WHEREAS, NNL has duly authorized the creation of an issue of its 10.750% Senior Notes due 2016 of substantially the tenor and amount hereinafter set forth (the "Original 2016 Fixed Rate Notes") and an issue of securities evidencing the same continuing indebtedness and with substantially identical terms (except that such securities shall be registered under the Securities Act and shall not have a provision for additional interest pursuant to the Issue Date Registration Rights Agreement) in exchange for such Notes (herein called the "2016 Fixed Rate Exchange Notes," and together with the Original 2016 Fixed Rate Notes, the "2016 Fixed Rate Notes");

WHEREAS, NNL has duly authorized the creation of an issue of its 10.125% Senior Notes due 2013 of substantially the tenor and amount hereinafter set forth (the "Original 2013 Fixed Rate Notes") and an issue of securities evidencing the same continuing indebtedness and with substantially identical terms (except that such securities shall be registered under the Securities Act and shall not have a provision for additional interest pursuant to the Issue Date Registration Rights Agreement) to be issued in exchange for such Notes (herein called the "2013 Fixed Rate Exchange Notes," and together with the Original 2013 Fixed Rate Notes, the "2013 Fixed Rate Notes");

WHEREAS, NNL has duly authorized the creation of an issue of its Floating Rate Senior Notes due 2011 of substantially the tenor and amount hereinafter set forth (the "Original Floating Rate Notes") and an issue of securities evidencing the same continuing indebtedness and with substantially identical terms (except that such securities shall be registered under the Securities Act and shall not have a provision for additional interest pursuant to the Issue Date Registration Rights Agreement) to be issued in exchange for such Notes (herein called the "Floating Rate Exchange Notes," and together with the Original Floating Rate Notes, the "Floating Rate

Notes"). We refer herein to the 2016 Fixed Rate Notes, the 2013 Fixed Rate Notes and the Floating Rate Notes collectively, or separately as to any series thereof as the context requires, as the "Notes;"

WHEREAS, each of NNC and NNI (collectively, the "Guarantors") has duly authorized its guarantee of the Notes and to provide therefor, each of the Guarantors has duly authorized the execution and delivery of the Original Indenture, this First Supplemental Indenture and its Guarantee under the terms set forth herein; and

WHEREAS, all acts and things necessary to make the Notes, when executed by NNL, endorsed by the Guarantors and authenticated and delivered by the Trustee as provided in the Original Indenture, the valid and binding obligations of NNL and the Guarantors and to constitute a valid and binding supplemental indenture according to its terms binding on NNL and the Guarantors have been done and performed;

NOW, THEREFORE, THIS FIRST SUPPLEMENTAL INDENTURE WITNESSETH:

SECTION 1. *CREATION OF NOTES*.

(a)    Pursuant to Section 301 of the Original Indenture, there is hereby created a new series of Debt Securities designated as the "10.750% Senior Notes due 2016" issuable by NNL and guaranteed by NNC and NNI.

(b)    Pursuant to Section 301 of the Original Indenture, there is hereby created a new series of Debt Securities designated as the "10.125% Senior Notes due 2013" issuable by NNL and guaranteed by NNC and NNI.

(c)    Pursuant to Section 301 of the Original Indenture, there is hereby created a new series of Debt Securities designated as the "Floating Rate Senior Notes due 2011" issuable by NNL and guaranteed by NNC and NNI.

(d)    Each series of Notes shall be issued as one or more Global Securities in the form specified in Exhibit A to this First Supplemental Indenture, shall have the terms set forth therein and shall be entitled to the benefits of the other provisions of the Original Indenture as modified by this First Supplemental Indenture and specified herein. The Depository Trust Company ("DTC") and its nominees and any successor corporation of DTC and such successor's nominees are hereby designated as the Depositary for the Global Securities representing the Notes.

SECTION 2. *DEFINITIONS*.

(a)    Capitalized terms used herein and not otherwise defined shall have the respective meanings assigned thereto in the Original Indenture.

(b)    Solely for purposes of this First Supplemental Indenture and the Notes and except as otherwise expressly provided or unless the context otherwise requires, the following terms shall have the indicated meanings (such meanings shall apply equally to both the singular and plural forms of the respective terms):

"2013 Applicable Premium" means with respect to any 2013 Fixed Rate Note at any Redemption Date, the greater of (1) 1.0% of the principal amount of such 2013 Fixed Rate Note and (2) the excess of (a) the present value at such Redemption Date of (i) the principal amount of such 2013 Fixed Rate Note on July 15, 2013, plus (ii) all required remaining scheduled interest payments due on such 2013 Fixed Rate Note through July 15, 2013 (other than interest accrued to such Redemption Date), computed using a discount rate equal to the Treasury Rate plus 50 basis points over (b) the principal amount of such 2013 Fixed Rate Note on such Redemption Date.  Calculation of the 2013 Applicable Premium will be made by the Issuer or on behalf of the Issuer by such Person as the Issuer shall designate; *provided* that such calculation shall not be a duty or obligation of the Trustee or the Calculation Agent.

"2013 Fixed Rate Exchange Notes" has the meaning specified in the recitals of the Issuer in this First Supplemental Indenture.

"2013 Fixed Rate Notes" has the meaning specified in the recitals of the Issuer in this First Supplemental Indenture.

"2016 Applicable Premium" means with respect to any 2016 Fixed Rate Note at any Redemption Date, the greater of (1) 1.0% of the principal amount of such 2016 Fixed Rate Note and (2) the excess of (a) the present value at such Redemption Date of (i) the redemption price of such 2016 Fixed Rate Note on July 15, 2011 plus (ii) all required remaining scheduled interest payments due on such 2016 Fixed Rate Note through July 15, 2011 (other than interest accrued to such Redemption Date), computed using a discount rate equal to the Treasury Rate plus 50 basis points over (b) the principal amount of such 2016 Fixed Rate Note on such Redemption Date.  Calculation of the 2016 Applicable Premium will be made by the Issuer or on behalf of the Issuer by such Person as the Issuer shall designate; *provided* that such calculation shall not be a duty or obligation of the Trustee or the Calculation Agent.

"2016 Fixed Rate Exchange Notes" has the meaning specified in the recitals of the Issuer in this First Supplemental Indenture.

"2016 Fixed Rate Notes" has the meaning specified in the recitals of the Issuer in this First Supplemental Indenture.

"Calculation Agent" means the agent appointed by the Issuer to calculate Three-Month LIBOR for purposes of this First Supplemental Indenture, which shall initially be the Trustee.

"Determination Date," with respect to an Interest Period, will be the second London Banking Day preceding the first day of such Interest Period.

"Floating Rate Exchange Notes" has the meaning specified in the recitals of the Issuer of this First Supplemental Indenture.

"Floating Rate Notes" has the meaning specified in the recitals of the Issuer of this First Supplemental Indenture.

"Interest Period" means the period commencing on and including an interest payment date and ending on and including the day immediately preceding the next succeeding Interest Payment Date, with the exception that the first Interest Period shall commence on and include the Issue Date and end on and include October 15, 2006.

"London Banking Day" means any day in which dealings in Dollars are transacted or, with respect to any future date, are expected to be transacted in the London interbank market.

"Original 2013 Fixed Rate Notes" has the meaning specified in the recitals of the Issuer in this First Supplemental Indenture.

"Original 2016 Fixed Rate Notes" has the meaning specified in the recitals of the Issuer in this First Supplemental Indenture.

"Original Floating Rate Notes" has the meaning specified in the recitals of the Issuer in this First Supplemental Indenture.

"Original Notes" means the Original 2013 Fixed Rate Notes, the Original 2016 Fixed Rate Notes and the Original Floating Rate Notes.

"Representative Amount" means a principal amount of not less than $1,000,000 for a single transaction in the relevant market at the relevant time.

"Reuters Screen LIBO Page" means the display designated as page "LIBO" on the Reuters Monitor Money Rates Service (or such other page as may replace the LIBO page on that service or a successor service for the purpose of displaying London interbank offered rates of major banks).

"Three-Month LIBOR," with respect to an Interest Period, will be the offered rate (or, if more than one such rate appears, the arithmetic mean of the rates), expressed as a percentage per annum, for deposits in United States dollars for a three-month period that appears on the Reuters Screen LIBO Page as of 11:00 a.m., London time, on the Determination Date for such Interest Period.  If fewer than two rates appear on the Reuters Screen LIBO Page or the Reuters Screen LIBO Page is unavailable on such Determination Date, the Calculation Agent will request the principal London office of each of four major banks in the London interbank market, as selected by the Calculation Agent, to provide such bank's offered quotation (expressed as a percentage per annum), as of approximately 11:00 a.m., London time, on such Determination Date, to prime banks in the London interbank market for deposits in a Representative Amount in United States dollars for a three-month period beginning on the first day of such Interest Period. If at least two such offered quotations are so provided, Three-Month LIBOR for the Interest Period will be the arithmetic mean of such quotations.  If fewer than two such quotations are so provided, the Calculation Agent will request each of four major banks in New York City, as selected by the Calculation Agent, to provide such bank's rate (expressed as a percentage per annum), as of approximately 11:00 a.m., New York City time, on such Determination Date, for loans in a Representative Amount in United States dollars to leading European banks for a three-month period beginning on such

4

Determination Date. If at least two such rates are so provided, Three-Month LIBOR for the applicable Interest Period will be the arithmetic mean of such rates. If fewer than two such rates are so provided, then Three-Month LIBOR for the applicable Interest Period will be Three-Month LIBOR in effect with respect to the immediately preceding Interest Period.

"Treasury Rate" means, with respect to any Redemption Date, the yield to maturity at the time of computation (which shall be at approximately 11:00 a.m. on the second business day preceding such Redemption Date) of United States Treasury securities with a constant maturity (as compiled and published in the most recent Federal Reserve Statistical Release H.15(519) that has become publicly available at least two business days prior to such Redemption Date (or, if such Statistical Release is no longer published, any publicly available source of similar market data selected by the Issuer)) most nearly equal to the period from such Redemption Date to July 15, 2011 with respect to the 2016 Fixed Rate Notes (the "2016 Fixed Rate Notes Applicable Period") and to July 15, 2013 with respect to the 2013 Fixed Rate Notes (the "2013 Fixed Rate Notes Applicable Period"); *provided* that if the 2016 Fixed Rate Notes Applicable Period or the 2013 Fixed Rate Notes Applicable Period, as the case may be, is not equal to the constant maturity of the United States Treasury security for which a weekly average yield is given, the Treasury Rate shall be obtained by linear interpolation (calculated to the nearest one-twelfth of a year) from the weekly average yields of United States Treasury securities for which such yields are given, except that if the 2016 Fixed Rate Notes Applicable Period or the 2013 Fixed Rate Notes Applicable Period, as the case may be, is less than one year, the weekly average yield on actually traded United States Treasury securities adjusted to a constant maturity of one year shall be used.

SECTION 3. *APPOINTMENT OF CALCULATION AGENT.*

(a)   The Issuer hereby appoints The Bank of New York ("BONY") as its Calculation Agent with respect to the Floating Rate Notes, and BONY hereby accepts such appointment. BONY agrees to perform the duties and obligations of the Calculation Agent for the Floating Rate Notes as set forth in the form of Note for the Floating Rate Notes attached hereto.

(b)   The rights, privileges, protections, immunities and benefits given to the Trustee under Article Six of the Indenture, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in its capacity hereunder as Calculation Agent for the Floating Rate Notes

(c)   BONY may at any time resign or be removed from such appointment as Calculation Agent; *provided* that BONY simultaneously resigns or is removed as Trustee under the Indenture, in which case a successor Calculation Agent with respect to the Floating Rate Notes shall be appointed in the same manner in which a successor Trustee is appointed under Section 607 of the Indenture.

SECTION 4. *OPTIONAL REDEMPTION.*

(a)    At any time prior to July 15, 2011, the Issuer may redeem the 2016 Fixed Rate Notes at its option, in whole at any time or in part from time to time, at a redemption price equal to 100% of the principal amount plus the 2016 Applicable Premium as of, and accrued and unpaid interest, if any, to, the applicable Redemption Date (subject to the right of Holders of record on the relevant record date to receive interest due on the relevant Interest Payment Date). At any time on or after July 15, 2011, the Issuer may redeem the 2016 Fixed Rate Notes at its option, in whole at any time or in part from time to time at the redemption prices (expressed as percentages of the principal amount) set forth below plus accrued and unpaid interest on the 2016 Fixed Rate Notes redeemed to the applicable Redemption Date (subject to the right of Holders of record on the relevant record date to receive interest due on the relevant Interest Payment Date), if redeemed during the twelve-month period beginning on July 15 of the years indicated below:

| Year | Redemption Price |
|---|---|
| 2011 | 105.375 % |
| 2012 | 103.583 % |
| 2013 | 101.792 % |
| 2014 and each year thereafter | 100.000% |

(b)    The Issuer may redeem the 2013 Fixed Rate Notes at its option, in whole at any time or in part from time to time, at a redemption price equal to 100% of the principal amount plus the 2013 Applicable Premium as of, and accrued and unpaid interest, if any, to, the Redemption Date (subject to the right of Holders of record on the relevant record date to receive interest due on the relevant Interest Payment Date).

(c)    Any redemption pursuant to this Section 4 shall be in accordance with the procedures of Article XI of the Original Indenture.

SECTION 5. *OPTIONAL REDEMPTION WITH QUALIFIED EQUITY PROCEEDS.*

On or prior to July 15, 2009, the Issuer may, at its option, in whole at any time or in part from time to time, use Qualified Equity Proceeds to redeem up to 35% of the original aggregate principal amount of any series of Notes (including any Additional Debt Securities of such series), in whole at any time or in part from time to time, at a redemption price equal to (i) in the case of the 2016 Fixed Rate Notes, 110.750% of the principal amount thereof, (ii) in the case of the 2013 Fixed Rate Notes, 110.125% of the principal amount thereof and (iii) in the case of the Floating Rate Notes, 100% of the principal amount so redeemed plus a premium equal to the interest rate per annum of such Floating Rate Notes applicable on the Redemption Date, in each case, plus accrued and unpaid interest thereon, if any, to the applicable Redemption Date; *provided* that, in each case, the Issuer makes such redemption not more than 90 days after the receipt by NNC or the Issuer of such Qualified Equity Proceeds; *provided further* that such redemption shall be in accordance with the procedures of Article XI of the Original Indenture.

SECTION 6. *REDEMPTION FOR CHANGES IN APPLICABLE WITHHOLDING TAXES.*

The Notes of each series are also subject to redemption in whole, but not in part, at the Issuer's option at any time in cash, on not less than 30 nor more than 60 days' notice to the Holders, at a price equal to 100% of the aggregate principal amount, together with accrued and unpaid interest to the Redemption Date and all Additional Amounts then due or becoming due on the Redemption Date, in the event the Issuer or a Guarantor is, has become or would become obligated to pay, on the next date on which any amount would be payable by the Issuer or the Guarantor, as the case may be, with respect to the Notes of such Series, any Additional Amount as a result of an actual or proposed change or amendment in the laws (including any regulations promulgated thereunder) or treaties of any jurisdiction (including Canada or any province or territory thereof) or any change in or new or different position regarding the application, interpretation or administration of such laws, treaties or regulations (including a holding, judgment or order by a court of competent jurisdiction), which change is announced or becomes effective on or after the Issue Date; *provided* that the Issuer delivers to the Trustee an Opinion of Counsel attesting to such change or amendment. For greater certainty, the provisions of this Section 6 shall only apply to any series of the Notes in the case of a Guarantor if the Guarantee of such Guarantor has been called and such Guarantor is required under its Guarantee to make payments of principal, interest or premium, if any, in respect of such series of Notes.

SECTION 7. *GOVERNING LAW.*

This First Supplemental Indenture and each of the Notes shall be governed by, and construed in accordance with, the laws of the State of New York, but without giving effect to applicable principles of conflicts of law to the extent that the application of the law of another jurisdiction would be required thereby.

SECTION 8. *NO RECOURSE AGAINST OTHERS.*

No recourse for the payment of the principal of, premium, if any, or interest on any of the Notes, or payment under any of the Guarantees, or for any claim based thereon or otherwise in respect thereof, and no recourse under or upon any obligation, covenant or agreement of the Issuer or any Guarantor contained in this First Supplemental Indenture, or in any of the Notes or Guarantees, or because of the creation of any indebtedness represented thereby shall be had against any incorporator or against any past, present or future partner, shareholder, other equityholder, officer, director, employee or controlling person, as such, of the Issuer, any Guarantor or of any successor Person thereof, either directly or through the Issuer, any Guarantor or any successor Person thereof, whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise, it being expressly understood that all such liability is hereby expressly waived and released as condition of, and as a consideration for, the execution of this First Supplemental Indenture and the issuance of the Notes and the Guarantees.

SECTION 9. *COUNTERPARTS.*

This First Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original but such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this First Supplemental Indenture to be duly executed as of the day, month and year first above written.

NORTEL NETWORKS LIMITED,
as Issuer

By: _____
Name: Katharine B. Stevenson
Title:  Treasurer

By: _____
Name: Gordon A. Davies
Title:  General Counsel — Corporate
and Corporate Secretary


NORTEL NETWORKS CORPORATION,
as Guarantor

By: _____
Name: Katharine B. Stevenson
Title:  Treasurer

By: _____
Name: Gordon A. Davies
Title:  General Counsel — Corporate
and Corporate Secretary


NORTEL NETWORKS INC.,
as Guarantor

By: _____
Name: Allen K. Stout
Title:  Vice President, Finance


THE BANK OF NEW YORK,
as Trustee and Calculation Agent

By: _____
Name:
Title:

Supplemental Indenture

IN WITNESS WHEREOF, the parties hereto have caused this First Supplemental Indenture to be duly executed as of the day, month and year first above written.

NORTEL NETWORKS LIMITED,
    as Issuer


By:_____
    Name: Katharine B. Stevenson
    Title:  Treasurer


By:_____
    Name: Gordon A. Davies
    Title:  General Counsel — Corporate
          and Corporate Secretary


NORTEL NETWORKS CORPORATION,
    as Guarantor


By:_____
    Name: Katharine B. Stevenson
    Title:  Treasurer


By:_____
    Name: Gordon A. Davies
    Title:  General Counsel — Corporate
          and Corporate Secretary


NORTEL NETWORKS INC.,
    as Guarantor


By: *Allen K Stout*
    Name: Allen K. Stout
    Title:  Vice President, Finance


THE BANK OF NEW YORK,
    as Trustee and Calculation Agent


By:_____
    Name:
    Title:

*EXECUTION VERSION*

NORTEL NETWORKS LIMITED

*as Issuer,*

NORTEL NETWORKS CORPORATION

**AND**

NORTEL NETWORKS INC.

*as Guarantors,*

**AND**

THE BANK OF NEW YORK

*as Trustee*

---

*SECOND SUPPLEMENTAL INDENTURE*

*Dated as of May 1, 2007*

*to*

*Indenture Dated as of July 5, 2006*

---

**SECOND SUPPLEMENTAL INDENTURE** dated as of May 1, 2007 (this "Second Supplemental Indenture") to the Indenture dated as of July 5, 2006 among Nortel Networks Limited (together with any successors, "NNL" or the "Issuer"), a Canadian corporation having its principal place of business at 195 The West Mall, Toronto, Ontario, Canada M9C 5K1, Nortel Networks Corporation (together with any successors, "NNC"), a Canadian corporation having its principal place of business at 195 The West Mall, Toronto, Ontario, Canada M9C 5K1, and Nortel Networks Inc. (together with any successors, "NNI"), a Delaware corporation having its principal place of business at 4008 Chapel Hill - Nelson Highway, Research Triangle Park, North Carolina, U.S.A. 27709, and The Bank of New York (the "Trustee"), a New York corporation authorized to conduct a banking business, having its Corporate Trust Office at 101 Barclay Street 21W, New York, New York, U.S.A. 10286 (the "Original Indenture," and as supplemented by the First Supplemental Indenture dated as of July 5, 2006 (the "First Supplemental Indenture") among the Issuer, NNC, NNI and the Trustee and this Second Supplemental Indenture, the "Indenture").

WHEREAS, NNC, NNL, NNI and the Trustee have heretofore executed and delivered the Original Indenture and the First Supplemental Indenture;

WHEREAS, Section 901(12) of the Original Indenture provides that NNC, NNL, NNI and the Trustee may enter into indentures supplemental to the Original Indenture to cure any ambiguity or to correct or supplement any provision therein that may be defective or inconsistent with any other provision therein;

WHEREAS, NNC, NNL and NNI have determined that clause (b) of the definition of Consolidated Fixed Charge Coverage Ratio in the Original Indenture is defective and inconsistent with the other provisions of such definition; and

WHEREAS, EACH OF NNC and NNL has changed the location of its principal place of business;

NOW, THEREFORE, THIS SECOND SUPPLEMENTAL INDENTURE WITNESSETH:

SECTION 1. *AMENDMENT.*

    (a)    The preamble of the Original Indenture is hereby amended by replacing each reference to "8200 Dixie Road, Suite 100, Brampton, Ontario, Canada L6T 5P6" with "195 The West Mall, Toronto, Ontario, Canada M9C 5K1."

    (b)    Clause (b) of the definition of Consolidated Fixed Charge Coverage Ratio in the Original Indenture is hereby amended and restated in its entirety to read as follows: "(i) any asset sale during the Four Quarter Period or at any time subsequent to the last day of the Four Quarter Period and on or prior to the Transaction Date involving the sale of a Subsidiary or line of business by NNC or any of its Subsidiaries, in each case, that accounted for at least $150,000,000 of NNC's consolidated revenue for the Four Quarter Period and (ii) any Asset Acquisition by NNC or any of its Subsidiaries during the Four Quarter Period or at any time subsequent to the last day of the Four Quarter Period and on or prior to the Transaction Date which would have accounted for at least $150,000,000 of NNC's consolidated revenue for the

2

Four Quarter Period, in each case, so as to exclude or include, as the case may be, NNC's good faith estimate of any Adjusted EBITDA (including any pro forma expense and cost reductions calculated on a basis consistent with Regulation S-X under the Exchange Act) attributable to the assets which are the subject of such asset sale or Asset Acquisition, as if such asset sale or Asset Acquisition occurred on the first day of the Four Quarter Period."

SECTION 2. *COUNTERPARTS.*

This Second Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original but such counterparts shall together constitute but one and the same instrument.

3

IN WITNESS WHEREOF, the parties hereto have caused this Second Supplemental Indenture to be duly executed as of the day, month and year first above written.

NORTEL NETWORKS LIMITED, as Issuer

By:_____

   Name:  Katharine B. Stevenson
   Title:  Treasurer

By:_____

   Name:  Gordon A. Davies
   Title:  General Counsel — Corporate and Corporate
   Secretary


NORTEL NETWORKS CORPORATION, as Guarantor

By:_____

   Name:  Katharine B. Stevenson
   Title:  Treasurer

By:_____

   Name:  Gordon A. Davies
   Title:  General Counsel — Corporate and Corporate
   Secretary


NORTEL NETWORKS INC., as Guarantor

By:_____

   Name:  Gordon A. Davies
   Title:  Assistant Secretary


THE BANK OF NEW YORK, as Trustee

By:_____

   Name:
   Title:

4

IN WITNESS WHEREOF, the parties hereto have caused this Second Supplemental Indenture to be duly executed as of the day, month and year first above written.

NORTEL NETWORKS LIMITED, as Issuer

By:_____

    Name:  Katharine B. Stevenson
    Title:  Treasurer

By:_____

    Name:  Gordon A. Davies
    Title:  General Counsel — Corporate and Corporate
    Secretary

NORTEL NETWORKS CORPORATION, as Guarantor

By:_____

    Name:  Katharine B. Stevenson
    Title:  Treasurer

By:_____

    Name:  Gordon A. Davies
    Title:  General Counsel — Corporate and Corporate
    Secretary

NORTEL NETWORKS INC., as Guarantor

By:_____

    Name:  Allen K. Stout
    Title:  Vice President, Finance

THE BANK OF NEW YORK, as Trustee

By: *Vanessa Mack*

    Name:  *Vanessa Mack*
    Title:  *Vice President*

4

**NORTEL NETWORKS LIMITED**

*as Issuer,*

**NORTEL NETWORKS CORPORATION**

**AND**

**NORTEL NETWORKS INC.**

*as Guarantors,*

**AND**

**THE BANK OF NEW YORK**

*as Trustee*

———————————————

*THIRD SUPPLEMENTAL INDENTURE*

*Dated as of May 28, 2008*

*to*

*Indenture Dated as of July 5, 2006*

———————————————

**THIRD SUPPLEMENTAL INDENTURE** dated as of May 28, 2008 (this "Third Supplemental Indenture") to the Indenture dated as of July 5, 2006 among Nortel Networks Limited (together with any successors, "NNL" or the "Issuer"), a Canadian corporation having its principal place of business at 195 The West Mall, Toronto, Ontario, Canada M9C 5K1, Nortel Networks Corporation (together with any successors, "NNC"), a Canadian corporation having its principal place of business at 195 The West Mall, Toronto, Ontario, Canada M9C 5K1, and Nortel Networks Inc. (together with any successors, "NNI" and, together with NNC, the "Guarantors"), a Delaware corporation having its principal place of business at 2221 Lakeside Boulevard, Richardson, Texas, U.S.A. 75082, and The Bank of New York (the "Trustee"), a New York corporation authorized to conduct a banking business, having its Corporate Trust Office at 101 Barclay Street 4 East, New York, New York, U.S.A. 10286 (the "Original Indenture," and, as supplemented by the First Supplemental Indenture dated as of July 5, 2006 (the "First Supplemental Indenture"), among the parties hereto, the Second Supplemental Indenture dated as of May 1, 2007 (the "Second Supplemental Indenture") among the parties hereto and this Third Supplemental Indenture, the "Indenture").

WHEREAS, the Issuer, the Guarantors and the Trustee have heretofore executed and delivered the Original Indenture, the First Supplemental Indenture and the Second Supplemental Indenture;

WHEREAS, the Issuer, pursuant to the Original Indenture and the First Supplemental Indenture, issued, and the Guarantors guaranteed, its 10.750% Senior Notes due 2016 (the "2016 Fixed Rate Notes");

WHEREAS, Section 310 of the Original Indenture provides that from time to time the Issuer may create and issue Additional Debt Securities, carrying the Guarantees executed by the Guarantors, on terms and conditions substantially similar to those of the 2016 Fixed Rate Notes, which Additional Debt Securities shall increase the aggregate principal amount of the 2016 Fixed Rate Notes and shall have the right to vote together with Holders of the 2016 Fixed Rate Notes as one class;

WHEREAS, Article Nine of the Original Indenture provides, among other things, that the Issuer, the Guarantors and the Trustee may enter into indentures supplemental to the Original Indenture to, among other things, provide for the form or terms of Additional Debt Securities;

WHEREAS, the Issuer has duly authorized the creation of an additional issue of the Original 2016 Fixed Rate Notes under the Original Indenture (the "Additional Original 2016 Fixed Rate Notes"), and an issue of securities evidencing the same continuing indebtedness and with substantially identical terms (except that such securities shall be registered under the Securities Act and shall not have a provision for additional interest pursuant to the 2008 Registration Rights Agreement) in exchange for such Debt Securities (the "Additional 2016 Fixed Rate Exchange Notes," and together with the Additional Original 2016 Fixed Rate Notes, the "Additional 2016 Fixed Rate Notes"), to be consolidated and form a single series with the 2016 Fixed Rate Notes, and the terms and provisions of which are to be as specified in this Third Supplemental Indenture;

WHEREAS, each Guarantor has duly authorized its guarantee of the Additional 2016 Fixed Rate Notes and to provide therefor, each of the Guarantors has duly authorized the execution and delivery of this Third Supplemental Indenture and its Guarantee under the terms set forth herein; and

WHEREAS, all acts and things necessary to make the Additional 2016 Fixed Rate Notes, when executed by the Issuer, endorsed by the Guarantors and authenticated and delivered by the Trustee as provided in the Original Indenture, the valid and binding obligations of the Issuer and the Guarantors and to constitute a valid and binding supplemental indenture according to its terms binding on the Issuer and the Guarantors have been done and performed;

NOW, THEREFORE, THIS THIRD SUPPLEMENTAL INDENTURE WITNESSETH:

SECTION 1. *ISSUANCE OF ADDITIONAL 2016 FIXED RATE NOTES*.

(a)     Pursuant to Section 310 of the Original Indenture, there is hereby authorized Additional Debt Securities of the Debt Securities designated in the First Supplemental Indenture as the "10.750% Senior Notes due 2016" issuable by NNL and guaranteed by NNC and NNI. The Additional 2016 Fixed Rate Notes will be consolidated to form a single series with, and be fully fungible with, the 2016 Fixed Rate Notes, except that the Additional 2016 Fixed Rate Notes will initially not be fungible for trading purposes with, and will initially bear different CUSIP and ISIN numbers than, the 2016 Fixed Rate Notes.

(b)     The Additional 2016 Fixed Rate Notes shall be initially issued as one or more Global Securities in the form specified in <u>Exhibit A</u> to this Third Supplemental Indenture, shall have the terms set forth therein and shall be entitled to the benefits of the other provisions of the Original Indenture as modified by the First Supplemental Indenture (to the extent applicable to the 2016 Fixed Rate Notes), the Second Supplemental Indenture and this Third Supplemental Indenture and specified herein. The Depository Trust Company ("DTC") and its nominees and any successor corporation of DTC and such successor's nominees are hereby designated as the Depositary for the Global Securities representing the Additional 2016 Fixed Rate Notes.

SECTION 2. *DEFINITIONS*.

(a)     Capitalized terms used herein and not otherwise defined shall have the respective meanings assigned thereto in the Original Indenture and the First Supplemental Indenture, as applicable. Except insofar as herein otherwise expressly provided, all the definitions, terms and conditions of the Original Indenture, the First Supplemental Indenture (to the extent applicable to the 2016 Fixed Rate Notes) and the Second Supplemental Indenture shall remain in full force and effect. The Original Indenture, the First Supplemental Indenture (to the extent applicable to the 2016 Fixed Rate Notes) and the Second Supplemental Indenture shall be read, taken and considered as one and the same instrument for all purposes related to the Additional 2016 Fixed Rate Notes.

(b)     Solely for purposes of this Third Supplemental Indenture and the Additional 2016 Fixed Rate Notes and except as otherwise expressly provided or unless the context otherwise

2

requires, the following terms shall have the indicated meanings (such meanings shall apply equally to both the singular and plural forms of the respective terms):

"2008 Registration Rights Agreement" means the registration rights agreement dated as of the date of this Third Supplemental Indenture among the Issuer, the Guarantors and the Initial Purchasers.

"Clearstream Luxembourg" means Clearstream Banking, S.A., or the successor to its securities clearance and settlement operations.

"Euroclear" means Euroclear Bank, S.A./N.V., as operator of the Euroclear system, or its successor in such capacity.

"Global Security Legend" means the legend set forth in Section 5(a)(i) below.

"Initial Purchasers" means J.P. Morgan Securities Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, RBC Capital Markets Corporation, Lehman Brothers Inc., Morgan Stanley & Co. Incorporated and UBS Securities LLC.

"Regulation S Global Security" means a Regulation S Temporary Global Security or Regulation S Permanent Global Security, as applicable.

"Regulation S Permanent Global Security" means a permanent Regulation S Global Security, bearing the Global Security Legend and issued in a principal amount equal to the outstanding principal amount of the Regulation S Temporary Global Security upon expiration of the Restricted Period or such lesser portion thereof as to which the certificate required pursuant to Section 4(b) of this Third Supplemental Indenture shall have been received.

"Regulation S Temporary Global Security" means a temporary Regulation S Global Security bearing the Global Security Legend, the Restricted Debt Securities Legend and the Regulation S Temporary Global Security Legend and issued in a principal amount equal to the outstanding principal amount of the Additional 2016 Fixed Rate Notes initially sold pursuant to Regulation S.

"Regulation S Temporary Global Security Legend" means the legend set forth in Section 5(c) below.

"Resale Restriction Termination Date" means, for any Restricted Debt Security (or beneficial interest therein) the date on which the Issuer instructs the Trustee in writing to remove the Restricted Debt Securities Legend from the Restricted Debt Securities in accordance with the procedures described in this Third Supplemental Indenture (which instruction is expected to be given on or about the one-year anniversary of the issuance of such Restricted Debt Security).

SECTION 3. *Original Indenture*

(a)      Section 301(i) of the Original Indenture shall, for purposes of the Additional 2016 Fixed Rate Notes only, be replaced with the following:

"(i)      Debt Securities originally offered and sold outside the United States in reliance on Regulation S will be issued in the form of one or more Regulation S Temporary Global Securities, each of which shall be exchangeable for a Regulation S Permanent Global Security, as provided in the applicable supplemental indenture."

(b)      Section 306(c)(ii) of the Original Indenture shall, for purposes of the Additional 2016 Fixed Rate Notes only, be replaced with the following:

"(ii)      the Issuer executes and delivers to the Trustee and Security Registrar an Officers' Certificate stating that such Global Security shall be so exchangeable; *provided* that beneficial interests in a Regulation S Temporary Global Security may not be exchanged for Certificated Securities prior to the later of (1) the expiration of the applicable Restricted Period and (2) the receipt of the certificates required by Section 4(b)(i)(A) of the Third Supplemental Indenture dated as of May 28, 2008 (the "Third Supplemental Indenture") among the Issuer, the Guarantors and the Trustee."

(c)      Section 308(c)(iv) of the Original Indenture shall, for purposes of the Additional 2016 Fixed Rate Notes only, be replaced with the following:

"(iv) such Certificated Securities (or beneficial interests) are transferred, replaced or exchanged after the Resale Restriction Termination Date therefor and, in the case of any such Restricted Debt Security, the Issuer has complied with the applicable procedures for delegending in accordance with Section 6 of the Third Supplemental Indenture; or"

(d)      Exhibit B to the Original Indenture shall, for purposes of the Additional 2016 Fixed Rate Notes only, be replaced with Exhibit B attached hereto.

(e)      The following provision shall be inserted at the end of Section 308 of the Original Indenture, for purposes of the Additional 2016 Fixed Rate Notes only:

"(f)      The following provisions contained in this subsection (f) shall apply with respect to any proposed transfer of an interest in a Regulation S Temporary Global Security, during the applicable Restricted Period: If (1) the owner of a beneficial interest in such Regulation S Temporary Global Security wishes to transfer such interest (or portion thereof) to a QIB pursuant to Rule 144A and (2) such QIB wishes to hold its interest in the Debt Securities through a beneficial interest in a Rule 144A Global Security, then (x) upon receipt by the Security Custodian and Security Registrar of:

(i)      instructions from the DTC participant holding such interest in the Regulation S Temporary Global Security directing the Security Custodian and Security Registrar to credit or cause to be credited a beneficial interest in a Rule 144A Global Security equal to the principal amount of the interest in such Regulation S Temporary Global Security to be transferred, and

4

    (ii)    a certificate in the form of <u>Exhibit C</u> from the transferor,

and (y) in compliance with the requirements of Section 308(b)(i), if applicable, and (z) subject to the rules and procedures of the Depositary, the Security Custodian and Security Registrar shall increase the Rule 144A Global Security and decrease the Regulation S Temporary Global Security by such amount in accordance with the foregoing.

For the avoidance of doubt, transfers made in accordance with this Section 308(f) shall be considered in compliance with, and as contemplated by, Section 308(b)(i).

    (g)    No interest in a Regulation S Temporary Global Security will be transferred to a holder of an interest in the Regulation S Permanent Global Security except pursuant to and in compliance with Section 4 of the Third Supplemental Indenture."

SECTION 4. *TEMPORARY REGULATION S GLOBAL SECURITIES.*

    (a)    Additional 2016 Fixed Rate Notes that are Regulation S Debt Securities shall be issued initially in the form of one or more Regulation S Temporary Global Securities, which shall be delivered to the Security Custodian and registered in the name of the Depositary or the nominee of the Depositary, duly executed by the Issuer and authenticated by the Trustee as provided in the Original Indenture.

    (b)    Following (i) the termination of the Restricted Period and (ii) the receipt by the Trustee of (A) a certification in the form of <u>Exhibit D-1</u> hereto to the effect that Euroclear or Clearstream Luxembourg, as applicable (or, alternatively, by each DTC participant thereof), has received a certificate in the form of <u>Exhibit D-2</u> of non-United States beneficial ownership of 100% of the aggregate principal amount of each Regulation S Temporary Global Security (except to the extent of any beneficial owners thereof who acquired an interest therein during the Restricted Period pursuant to another exemption from registration under the Securities Act and who shall take delivery of a beneficial interest in a Rule 144A Global Security bearing the Restricted Debt Securities Legend, all as contemplated by Section 308 of the Original Indenture) and (B) an Officers' Certificate in the form of <u>Exhibit E</u> hereto from the Issuer, the Trustee shall remove the Regulation S Temporary Global Security Legend from the Regulation S Temporary Global Security, following which beneficial interests in the Regulation S Temporary Global Security shall automatically be deemed exchanged for beneficial interests in the Regulation S Permanent Global Security.

    (c)    The aggregate principal amount of a Regulation S Temporary Global Security and a Regulation S Permanent Global Security may from time to time be increased or decreased by adjustments made on the records of the Trustee and the Depositary or its nominee, as the case may be, in connection with transfers of interests as provided in the Original Indenture.

    (d)    For the avoidance of doubt, the Regulation S Temporary Global Security Legend shall not be removed if less than 100% of the aggregate principal amount of each Regulation S Temporary Global Security is certified, pursuant to clause (b) above, as being beneficially owned by non-United States persons or United States persons who purchased such Regulation S Temporary Global Securities in transactions which did not require registration under the Securities Act.

SECTION 5. *LEGENDS.*

(a)    Global Security Legends. (i) Each Global Security representing Additional 2016 Fixed Notes shall bear the legend set forth in Section 307(a)(i) of the Original Indenture.

(ii)    For so long as DTC is the Depositary for a Global Security representing Additional 2016 Fixed Notes, such Global Security shall bear the legend set forth in Section 307(a)(ii) of the Original Indenture.

(b)    Securities Act Legends.  Additional 2016 Fixed Rate Notes that are Restricted Debt Securities or their Successor Debt Securities shall, in lieu of the legend set forth in Section 307(b) of the Original Indenture, bear a Restricted Debt Securities Legend substantially in the form set forth below:

**"THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION.  NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION.  THE HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS PURCHASED SECURITIES, TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE DATE (THE "RESALE RESTRICTION TERMINATION DATE") ON WHICH THE ISSUER INSTRUCTS THE TRUSTEE THAT THIS RESTRICTIVE LEGEND SHALL BE DEEMED REMOVED (WHICH INSTRUCTION IS EXPECTED TO BE GIVEN ON OR ABOUT THE ONE-YEAR ANNIVERSARY OF THE ISSUANCE OF THIS SECURITY), ONLY (A) TO THE ISSUER OR A GUARANTOR, (B) PURSUANT TO A REGISTRATION STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT, TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (D) PURSUANT TO OFFERS AND SALES THAT OCCUR OUTSIDE THE UNITED STATES WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, (E) TO AN INSTITUTIONAL "ACCREDITED INVESTOR" WITHIN THE MEANING OF RULE 501(a)(1), (2), (3) OR (7) UNDER THE SECURITIES ACT THAT IS AN INSTITUTIONAL ACCREDITED INVESTOR ACQUIRING THE SECURITY FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF SUCH AN INSTITUTIONAL ACCREDITED INVESTOR, IN EACH CASE IN A MINIMUM PRINCIPAL AMOUNT OF THE SECURITIES OF $250,000, FOR INVESTMENT PURPOSES AND NOT WITH A VIEW TO OR FOR OFFER OR SALE IN CONNECTION WITH ANY DISTRIBUTION IN VIOLATION OF THE**

**SECURITIES ACT, OR (F) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S AND ANY GUARANTOR'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSES (E) OR (F) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM. THIS LEGEND SHALL BE DEEMED REMOVED WITHOUT FURTHER ACTION OF THE ISSUER, THE TRUSTEE OR ANY HOLDER AT SUCH TIME AS THE ISSUER INSTRUCTS THE TRUSTEE IN WRITING TO REMOVE SUCH LEGEND IN ACCORDANCE WITH THE THIRD SUPPLEMENTAL INDENTURE."**

      (c)     Regulation S Temporary Global Security Legend. Any Regulation S Temporary Global Security representing Additional 2016 Fixed Rate Notes shall bear the Regulation S Temporary Global Security Legend substantially in the form set forth below:

**"THIS SECURITY (OR ITS PREDECESSOR) WAS ORIGINALLY ISSUED IN A TRANSACTION ORIGINALLY EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE TRANSFERRED IN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, ANY U.S. PERSON EXCEPT PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND ALL APPLICABLE STATE SECURITIES LAWS. TERMS USED ABOVE HAVE THE MEANINGS GIVEN TO THEM IN REGULATION S UNDER THE SECURITIES ACT."**

      (d)     Canadian Securities Legend. Each Global Security representing Additional 2016 Fixed Rate Notes shall bear a legend in substantially the form set forth in Section 307(c) of the Original Indenture unless the Security Registrar receives an Officers' Certificate confirming that such legend is not required.

SECTION 6. *APPLICABLE PROCEDURES FOR DELEGENDING.*

      (a)     Promptly after one year has elapsed following (i) the date of original issuance of Additional 2016 Fixed Rate Notes or (ii) if the Issuer has issued any Additional Debt Securities with the same terms and the same CUSIP number as the Additional 2016 Fixed Rate Notes under Section 310 of the Original Indenture within one year following the last date of original issuance of Additional 2016 Fixed Rate Notes, the last date of original issuance of such Additional Debt Securities, if the Additional 2016 Fixed Rate Notes (including any Additional Debt Securities with the same terms and the same CUSIP number as the Additional 2016 Fixed Rate Notes) are freely tradable pursuant to Rule 144 under the Securities Act (or otherwise) without volume restrictions by Holders who are not Affiliates of the Issuer, the Issuer shall:

      1.     instruct the Trustee in writing to remove the Restricted Debt Securities Legend described in Section 5 above from the Additional 2016 Fixed Rate Notes by delivering to the Trustee a certificate in the form of <u>Exhibit F</u>, and upon such instruction the Restricted Debt Securities Legend shall be deemed removed from

any Global Securities representing such Additional 2016 Fixed Rate Notes without further action on the part of Holders;

2.  notify Holders of the Additional 2016 Fixed Rate Notes that the Restricted Debt Securities Legend has been removed or deemed removed; and

3.  notify the Trustee by delivering to the Trustee a certificate in the form of Exhibit F attached hereto and instruct DTC to change the CUSIP number for the Additional 2016 Fixed Rate Notes to the unrestricted CUSIP number.

In no event will the failure of the Issuer to provide any notice set forth in this paragraph or of the Trustee to remove the Restricted Debt Securities Legend constitute a failure by the Issuer to comply with any of its covenants or agreements set forth in the Indenture for purposes of Section 501 of the Original Indenture or otherwise.  Any Restricted Debt Security (or security issued in exchange or substitution therefor) as to which such restrictions on transfer shall have expired in accordance with their terms may, upon surrender of such Restricted Debt Security for exchange to the Security Registrar in accordance with the provisions of Article Three of the Original Indenture, be exchanged for a new Debt Security or Debt Securities, of like tenor and aggregate principal amount, which shall not bear the Restricted Debt Securities Legend required by Article Three of the Original Indenture and this Section 6.  The Issuer shall notify the Trustee in writing upon the occurrence of the Resale Restriction Termination Date and promptly after a Registration Statement with respect to the Debt Securities, if any, has been declared effective under the Securities Act.

(b)   Notwithstanding any provision of Sections 5 or 6 herein or Section 308 of the Original Indenture to the contrary, in the event that Rule 144 as promulgated under the Securities Act (or any successor rule) is amended to change the one-year holding period thereunder (or the corresponding period under any successor rule), from and after receipt by the Trustee of the Officers' Certificate and Opinion of Counsel provided for in Section 308(c)(iii) of the Original Indenture, (i) each reference in this Section 6 to "one year" and in the Restricted Debt Securities Legend set forth in Section 5(c) to "ONE YEAR" shall be deemed for all purposes hereof to be references to such changed period, and (ii) all corresponding references in the Debt Securities (including the definition of Resale Restriction Termination Date) and the Restricted Debt Securities Legends thereon shall be deemed for all purposes hereof to be references to such changed period, *provided* that such changes shall not become effective if they are otherwise prohibited by, or would otherwise cause a violation of, the then-applicable federal securities laws.  The provisions of this Section 6(b) will not be effective until such time as the Opinion of Counsel and Officers' Certificate have been received by the Trustee hereunder.  This Section 6 shall apply to successive amendments to Rule 144 (or any successor rule) changing the holding period thereunder.

SECTION 7.  *AMENDMENTS*

(a)   The preamble of the Original Indenture is hereby amended by replacing each reference to "101 Barclay Street 21W" with "101 Barclay Street 4 East."

8

(b)      The preamble of the Original Indenture is hereby amended by replacing each reference to "4008 Chapel Hill - Nelson Highway, Research Triangle Park, North Carolina, U.S.A. 27709" with "2221 Lakeside Boulevard, Richardson, Texas, U.S.A. 75082."

(c)      Clause (i) of the definition of Permitted Funded Debt set forth in the Original Indenture is hereby amended and restated in its entirety to read as follows: "(i) additional Funded Debt of NNC, the Issuer and/or any Subsidiary of NNC in an aggregate outstanding principal amount not to exceed, after giving effect to the relevant transaction, $250,000,000;".

SECTION 8. *GOVERNING LAW.*

This Third Supplemental Indenture and each of the Additional 2016 Fixed Rate Notes shall be governed by, and construed in accordance with, the laws of the State of New York, but without giving effect to applicable principles of conflicts of law to the extent that the application of the law of another jurisdiction would be required thereby.

SECTION 9. *NO RECOURSE AGAINST OTHERS.*

No recourse for the payment of the principal of, premium, if any, or interest on any of the Additional 2016 Fixed Rate Notes, or payment under any of the Guarantees, or for any claim based thereon or otherwise in respect thereof, and no recourse under or upon any obligation, covenant or agreement of the Issuer or any Guarantor contained in this Third Supplemental Indenture, or in any of the Additional 2016 Fixed Rate Notes or Guarantees, or because of the creation of any indebtedness represented thereby shall be had against any incorporator or against any past, present or future partner, shareholder, other equityholder, officer, director, employee or controlling person, as such, of the Issuer, any Guarantor or of any successor Person thereof, either directly or through the Issuer, any Guarantor or any successor Person thereof, whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise, it being expressly understood that all such liability is hereby expressly waived and released as condition of, and as a consideration for, the execution of this Third Supplemental Indenture and the issuance of the Additional 2016 Fixed Rate Notes and the Guarantees.

SECTION 10. *COUNTERPARTS.*

This Third Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original but such counterparts shall together constitute but one and the same instrument.

9

IN WITNESS WHEREOF, the parties hereto have caused this Third Supplemental Indenture to be duly executed as of the day, month and year first above written.

NORTEL NETWORKS LIMITED, as Issuer

By: _____
    Name: Michael W. McCorkle
    Title:  Treasurer

By: _____
    Name: Gordon A. Davies
    Title:  Deputy General Counsel and Corporate Secretary

NORTEL NETWORKS CORPORATION, as Guarantor

By: _____
    Name: Michael W. McCorkle
    Title:  Treasurer

By: _____
    Name: Gordon A. Davies
    Title:  Deputy General Counsel and Corporate Secretary

NORTEL NETWORKS INC., as Guarantor

By: _____
    Name:
    Title:

THE BANK OF NEW YORK, as Trustee

By: _____
    Name:
    Title:

IN WITNESS WHEREOF, the parties hereto have caused this Third Supplemental Indenture to be duly executed as of the day, month and year first above written.

NORTEL NETWORKS LIMITED, as Issuer

By:_____
　　Name: Michael W. McCorkle
　　Title:　Treasurer

By:_____
　　Name: Gordon A. Davies
　　Title:　Deputy General Counsel and Corporate Secretary

NORTEL NETWORKS CORPORATION, as Guarantor

By:_____
　　Name: Michael W. McCorkle
　　Title:　Treasurer

By:_____
　　Name: Gordon A. Davies
　　Title:　Deputy General Counsel and Corporate Secretary

NORTEL NETWORKS INC., as Guarantor

By:_____
　　Name: Lynn C. Egan
　　Title:　Assistant Secretary

THE BANK OF NEW YORK, as Trustee

By:_____
　　Name:
　　Title:

IN WITNESS WHEREOF, the parties hereto have caused this Third Supplemental Indenture to be duly executed as of the day, month and year first above written.

NORTEL NETWORKS LIMITED, as Issuer

By:_____
    Name: Michael W. McCorkle
    Title:  Treasurer

By:_____
    Name: Gordon A. Davies
    Title:  Deputy General Counsel and Corporate Secretary

NORTEL NETWORKS CORPORATION, as Guarantor

By:_____
    Name: Michael W. McCorkle
    Title:  Treasurer

By:_____
    Name: Gordon A. Davies
    Title:  Deputy General Counsel and Corporate Secretary

NORTEL NETWORKS INC., as Guarantor

By:_____
    Name:
    Title:

THE BANK OF NEW YORK, as Trustee

By: *Vanessa Mack* _____
    Name:
    Title:    **VANESSA MACK**
                **VICE PRESIDENT**

EXHIBIT A

10.750% Senior Notes due 2016

[*Insert the Global Security Legend, if applicable, pursuant to Section 5 of the Third Supplemental Indenture –*

**THIS IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE REFERRED TO HEREINAFTER.**

**TRANSFERS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS IN WHOLE, BUT NOT IN PART, TO NOMINEES OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC") OR TO A SUCCESSOR THEREOF OR SUCH SUCCESSOR'S NOMINEE AND TRANSFERS OF PORTIONS OF THIS GLOBAL SECURITY SHALL BE LIMITED TO TRANSFERS MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE INDENTURE REFERRED TO ON THE REVERSE HEREOF.**

**UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF DTC, NEW YORK, NEW YORK, TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.]**

[*If a Restricted Debt Security or its Successor Debt Securities, then insert the following legend (the "Restricted Debt Security Legend") pursuant to Section 5 of the Third Supplemental Indenture –*

**THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION. THE HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS PURCHASED SECURITIES, TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE DATE (THE "RESALE RESTRICTION TERMINATION DATE") ON WHICH THE ISSUER INSTRUCTS THE**

A-1

TRUSTEE THAT THIS RESTRICTIVE LEGEND SHALL BE DEEMED REMOVED (WHICH INSTRUCTION IS EXPECTED TO BE GIVEN ON OR ABOUT THE ONE-YEAR ANNIVERSARY OF THE ISSUANCE OF THIS SECURITY), ONLY (A) TO THE ISSUER OR A GUARANTOR, (B) PURSUANT TO A REGISTRATION STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT, TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (D) PURSUANT TO OFFERS AND SALES THAT OCCUR OUTSIDE THE UNITED STATES WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, (E) TO AN INSTITUTIONAL "ACCREDITED INVESTOR" WITHIN THE MEANING OF RULE 501(a)(1), (2), (3) OR (7) UNDER THE SECURITIES ACT THAT IS AN INSTITUTIONAL ACCREDITED INVESTOR ACQUIRING THE SECURITY FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF SUCH AN INSTITUTIONAL ACCREDITED INVESTOR, IN EACH CASE IN A MINIMUM PRINCIPAL AMOUNT OF THE SECURITIES OF $250,000, FOR INVESTMENT PURPOSES AND NOT WITH A VIEW TO OR FOR OFFER OR SALE IN CONNECTION WITH ANY DISTRIBUTION IN VIOLATION OF THE SECURITIES ACT, OR (F) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S AND ANY GUARANTOR'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSES (E) OR (F) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM.  THIS LEGEND SHALL BE DEEMED REMOVED WITHOUT FURTHER ACTION OF THE ISSUER, THE TRUSTEE OR ANY HOLDER AT SUCH TIME AS THE ISSUER INSTRUCTS THE TRUSTEE IN WRITING TO REMOVE SUCH LEGEND IN ACCORDANCE WITH THE THIRD SUPPLEMENTAL INDENTURE.]

*[If this Security is a Regulation S Temporary Global Security issued during the Restricted Period therefor, then insert the following legend (the "Regulation S Temporary Global Security Legend") pursuant to Section 5 of the Third Supplemental Indenture –*

THIS SECURITY (OR ITS PREDECESSOR) WAS ORIGINALLY ISSUED IN A TRANSACTION ORIGINALLY EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE TRANSFERRED IN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, ANY U.S. PERSON EXCEPT PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND ALL APPLICABLE STATE SECURITIES LAWS.  TERMS USED ABOVE HAVE THE MEANINGS GIVEN TO THEM IN REGULATION S UNDER THE SECURITIES ACT.]

[*Insert the Canadian Securities Legend, if applicable, pursuant to Section 5 of the Third Supplemental Indenture –*

**UNLESS PERMITTED UNDER CANADIAN SECURITIES LEGISLATION, THE HOLDER OF THIS SECURITY MUST NOT TRADE THE SECURITY IN CANADA BEFORE [INSERT DATE THAT IS FOUR MONTHS PLUS ONE DAY AFTER THE ISSUE DATE].]**

CUSIP/CINS _____ †

No. ___                                           $_____


**NORTEL NETWORKS LIMITED** (together with any successors, the "Issuer"), a Canadian corporation, promises to pay to CEDE & CO. or registered assigns, the principal sum of _____ DOLLARS on July 15, 2016 (which principal sum may from time to time be reduced or increased as appropriate to reflect exchanges, redemptions, repurchases and transfers of interest, but which, when taken together with the aggregate principal sum of all other Additional 2016 Fixed Rate Notes (as defined in the Third Supplemental Indenture referred to below), shall not exceed $675,000,000 at any time, subject to increase as provided in Section 5 on the reverse of this Note).

Interest Payment Dates:  January 15 and July 15.

Regular Record Dates:  January 1 and July 1.

_____

†      At such time as the Company notifies the Trustee to remove the legend set forth in the fourth paragraph hereof pursuant to Section 6 of the Third Supplemental Indenture, the CUSIP number for this Security shall be deemed to be CUSIP No. _____.

A-4

IN WITNESS WHEREOF, the Issuer has caused this instrument to be duly executed as of the date below.

Dated: _____, 2008

NORTEL NETWORKS LIMITED

By:_____
    Name: Michael W. McCorkle
    Title:   Treasurer

By:_____
    Name: Gordon A. Davies
    Title:   Deputy General Counsel and
Corporate Secretary

GUARANTEE

OF

NORTEL NETWORKS CORPORATION
AND
NORTEL NETWORKS INC.

For value received, each Guarantor hereby unconditionally and irrevocably guarantees, jointly and severally to the Holder of this Note upon which this Guarantee is endorsed and to the Trustee on behalf of each such Holder the due and punctual payment of the principal of, premium, if any, interest and Additional Amounts, if any, on this Note, when and as the same shall become due and payable, whether on the Stated Maturity Date, by declaration of acceleration, call for redemption or otherwise, according to the terms thereof and of the indenture dated as of July 5, 2006 among Nortel Networks Limited, as issuer, Nortel Networks Corporation and Nortel Networks Inc., as guarantors, and The Bank of New York, as trustee (the "Original Indenture" and, as supplemented by the First Supplemental Indenture dated as of July 5, 2006, the Second Supplemental Indenture dated as of May 1, 2007 and the Third Supplemental Indenture dated as of May 28, 2008 (the "Third Supplemental Indenture"), in each case, among Nortel Networks Limited, as issuer, Nortel Networks Corporation and Nortel Networks Inc., as guarantors, and The Bank of New York, as trustee, the "Indenture"). In case of the failure of Nortel Networks Limited, a corporation organized under the laws of Canada (herein called the "Issuer," which term includes any successor Person under the Indenture), punctually to make any such payment of principal, premium, if any, or interest, and Additional Amounts, if any, each Guarantor, for so long as this Guarantee shall be in effect, hereby agrees to cause any such payment to be made to or to the order of the Trustee punctually when and as the same shall become due and payable, whether on the Stated Maturity Date or by declaration of acceleration, call for redemption or otherwise, and as if such payment were made by the Issuer.

Each Guarantor hereby agrees that its obligations hereunder shall be as if it were the principal debtor and not merely surety, and shall be absolute and unconditional, irrespective of, and shall be unaffected by, any invalidity, irregularity or unenforceability of this Note or the Indenture, any failure to enforce the provisions of this Note or the Indenture, or any waiver, modification or indulgence granted to the Issuer with respect thereto, by the Holder of this Note or the Trustee or any other circumstance which may otherwise constitute a legal or equitable discharge of a surety or guarantor. Each Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of merger or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest or notice with respect to this Note or the indebtedness evidenced and all demands whatsoever, and covenants that this Guarantee will not be discharged except by payment in full of the principal of, premium, if any, and interest on this Note or as otherwise described in Section 203 of the Original Indenture.

The Guarantee of each Guarantor hereunder shall be automatically and unconditionally released on the terms set forth in Section 203(b) of the Original Indenture.