# ARTICLE 3
# REDEMPTION

SECTION 3.01. Optional Redemption.

(a)     On or after April 15, 2011, the Issuer may, at its option, redeem the 2012 Notes, in whole or from time to time in part, in cash at a repurchase price equal to 100.35% of the principal amount of the 2012 Notes so redeemed, plus accrued and unpaid interest and Additional Interest, if any, up to but excluding the applicable Redemption Date.

(b)     On or after April 15, 2013, the Issuer may, at its option, redeem the 2014 Notes, in whole or from time to time in part, in cash at a repurchase price equal to 100.30% of the principal amount of the 2014 Notes so redeemed, plus accrued and unpaid interest and Additional Interest, if any, up to but excluding the applicable Redemption Date.

SECTION 3.02. Notices to Trustee.

If the Issuer elects to redeem Notes of any series pursuant to Section 3.01 (the "Optional Redemption"), it shall notify the Trustee in writing at least 45 days before a Redemption Date (unless a shorter period shall be agreed upon in writing by the Trustee) of (i) the Section of this Indenture pursuant to which the redemption shall occur, (ii) the Redemption Date, (iii) the series and principal amount of Notes (if less than all) to be redeemed, (iv) the Redemption Price, (v) the place where such Notes are to be surrendered and (vi) the CUSIP number of the Notes being redeemed.  In case the Issuer elects to redeem Notes pursuant to the optional redemption provisions of Section 3.03 relating to changes in Canadian withholding taxes (the "Change in Tax Redemption"), the Issuer shall similarly notify the Trustee in writing at least 20 days but not more than 60 days before a Redemption Date and in addition furnish to the Trustee an Opinion of Counsel and an Officers' Certificate attesting to such change or amendment of Canadian withholding taxes.

SECTION 3.03. Redemption for Changes in Canadian Withholding Taxes.

The Issuer may redeem the Notes in whole, but not in part, at its option at any time in cash at a repurchase price equal to 100% of the aggregate principal amount, together with accrued and unpaid interest and Additional Interest, if any, to the Redemption Date and all Additional Amounts then due or becoming due with respect to the Notes on the Redemption Date, in the event the Issuer or NNL (or either of their successors) is, has become or would become obligated to pay, on the next date on which any amount would be payable with respect to the Notes, any Additional Amount as a result of a change or amendment in the laws or treaties (including any regulations promulgated thereunder) of Canada (or any political subdivision or taxing authority thereof or therein) or any change in or new or different position regarding the application, interpretation or administration of such laws, treaties or regulations of the Canada Revenue Agency or another applicable taxing authority of Canada (or any political subdivision thereof or therein) (including a holding, judgment or order by a court of competent jurisdiction) or any proposed change in law that if enacted would be retroactive to a date prior to the Redemption Date, which change is announced or becomes effective on or after March 22, 2007; *provided* that the Issuer or NNL (or either of their successors) (a) delivers to the Trustee an

28

Opinion of Counsel and an Officers' Certificate attesting to such change or amendment and (b) determines, in its business judgment, that such obligation cannot be avoided by the use of reasonable measures available to it.

SECTION 3.04.  <u>Selection of Notes To Be Redeemed</u>.

If less than all the Notes of a series are to be redeemed, the Trustee shall select the Notes of such series to be redeemed by a method that complies with the requirements of the Applicable Securities Exchange (which requirements shall be provided or caused to be provided by the Issuer to the Trustee), if any, on which the Notes are listed or quoted or, if the Notes are not so listed, on a pro rata basis by lot or by any other method that the Trustee considers fair and appropriate.  The Trustee shall make the selection not more than 45 days before the Redemption Date from Notes of such series outstanding and not previously called for redemption.  The Trustee may select for redemption a portion of the principal of any Notes of such series that have a denomination larger than $1,000.  Notes and portions thereof will be redeemed in the amount of $1,000 or integral multiples of $1,000.

Provisions of this Indenture that apply to Notes called for redemption also apply to portions of Notes called for redemption.  The Trustee shall notify the Issuer promptly of the Notes or portions of Notes to be called for redemption.

If any Note selected for partial redemption is converted in part after such selection, the converted portion of such Note shall be deemed (so far as may be deemed) to be the portion to be selected for redemption.  The Notes (or portion thereof) so selected shall be deemed duly selected for redemption for all purposes hereof, notwithstanding that any such Note is converted in whole or in part before the mailing of the notice of redemption.  Upon any redemption of less than all the Notes, the Issuer and the Trustee may treat as outstanding any Notes surrendered for conversion during the period of 15 days next preceding the mailing of a notice of redemption and need not treat as outstanding any Note authenticated and delivered during such period in exchange for the unconverted portion of any Note converted in part during such period.

SECTION 3.05.  <u>Notice of Redemption</u>.

At least 20 days but not more than 60 days before a Redemption Date of an Optional Redemption or a Change in Tax Redemption, the Issuer shall mail by first class mail a notice of redemption to each holder whose Notes are to be redeemed, at such holder's address shown on the Register maintained by the Registrar.

The notice shall identify the Notes to be redeemed and shall state:

(1)     the Redemption Date;

(2)     the Redemption Price;

(3)     the series of Notes being called for redemption;

(4)     if any Note is being redeemed in part, the portion of the principal amount of such Note to be redeemed and that, after the Redemption Date, upon surrender of such Note, a

29

new Note or Notes of the same series in principal amount equal to the unredeemed portion will be issued in the name of the holder thereof;

(5)   that Notes called for redemption must be surrendered to the Paying Agent to collect the Redemption Price;

(6)   that interest and Additional Interest, if applicable, on Notes called for redemption and for which funds have been set apart for payment, ceases to accrue on and after the Redemption Date (unless the Issuer and the Guarantors default in the payment of the Redemption Price);

(7)   the Section of this Article III pursuant to which the Notes called for redemption are being redeemed;

(8)   the aggregate principal amount of Notes of the relevant series (if less than all) that are being redeemed;

(9)   the CUSIP number of the Notes (*provided* that the disclaimer permitted by Section 2.12 may be made);

(10)   the name and address of the Paying Agent;

(11)   that Notes called for redemption may be converted at any time prior to the close of business on the last Trading Day immediately preceding the Redemption Date and if not converted prior to the close of business on such date, the right of conversion will be lost; and

(12)   that in the case of Notes or portions thereof called for redemption on a date that is also an Interest Payment Date, the interest payment and Additional Interest, if any, due on such date shall be paid to the person in whose name the Note is registered at the close of business on the relevant Regular Record Date.

The notice if mailed in the manner herein provided shall be conclusively presumed to have been given, whether or not the holder receives such notice. In any case, failure to give such notice by mail or any defect in the notice to the holder of any Note designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any Note.

At the Issuer's request, the Trustee shall give notice of redemption in the Issuer's name and at its expense.

SECTION 3.06.   Effect of Notice of Redemption.

Once notice of redemption is mailed, Notes of any series called for redemption become due and payable on the Redemption Date at the Redemption Price set forth in Section 3.01.

SECTION 3.07.   Deposit of Redemption Price.

On or before the Redemption Date, the Issuer shall deposit with the Trustee or with the Paying Agent (or, if the Issuer is acting as its own Paying Agent, segregate and hold in trust as

provided in Section 2.03) money sufficient to pay the Redemption Price of and accrued interest (including Additional Interest, if any) on all Notes to be redeemed on that date, provided, however, that any funds deposited on the Redemption Date shall be deposited by the Issuer no later than 10:00 a.m., New York City time on such Redemption Date. The Trustee or the Paying Agent shall promptly return to the Issuer any money not required for that purpose.

On and after the Redemption Date, unless the Issuer and the Guarantors shall default in the payment of the Redemption Price, interest and Additional Interest, if applicable, will cease to accrue on the principal amount of the Notes or portions thereof called for redemption and for which funds have been set apart for payment and such Notes, or portions thereof, shall cease after the close of business on the Trading Day immediately preceding the Redemption Date to be convertible into Common Shares and, except as provided in this Section 3.07, to be entitled to any benefit or security under this Indenture, and the holders thereof shall have no right in respect of such Notes, or portions thereof, except the right to receive the Redemption Price thereof and unpaid interest and Additional Interest, if any, to (but excluding) the Redemption Date. In the case of Notes or portions thereof redeemed on a Redemption Date which is also an Interest Payment Date, the interest payment and Additional Interest, if any, due on such date shall be paid to the person in whose name the Note is registered at the close of business on the relevant Regular Record Date.

SECTION 3.08.  Notes Redeemed in Part.

Upon surrender of a Note that is redeemed in part only, the Issuer shall issue, the Guarantors shall endorse and the Trustee shall authenticate and deliver to the holder of a Note a new Note of the same series equal in principal amount to the unredeemed portion of the Note surrendered, at the expense of the Issuer, except as specified in Section 2.05.

SECTION 3.09.  Conversion Arrangement on Call for Redemption.

In connection with any redemption of Notes, the Issuer at its option may arrange for the purchase and conversion of any Notes by an arrangement with one or more investment bankers or other purchasers to purchase such Notes by paying to the Trustee in trust for the holders, on or before the date fixed for redemption, an amount not less than the applicable Redemption Price, together with interest and Additional Interest, if any, accrued to the date fixed for redemption, of such Notes. Notwithstanding anything to the contrary contained in this Article 3, the obligation of the Issuer to pay the Redemption Price of such Notes, together with interest and Additional Interest, if any, accrued to the date fixed for redemption, shall be deemed to be satisfied and discharged to the extent such amount is so paid by the purchasers. If such an agreement is entered into, a copy of which will be filed with the Trustee prior to the date fixed for redemption, any Notes not duly surrendered for conversion by the holders thereof may, at the option of the Issuer, be deemed, to the fullest extent permitted by law, acquired by such purchasers from such holders and (notwithstanding anything to the contrary contained in Article 12) surrendered by such purchasers for conversion, all as of immediately prior to the close of business on the date fixed for redemption (and the right to convert any such Notes shall be deemed to have been extended through such time), subject to payment of the above amount as aforesaid. At the written direction of the Issuer, the Trustee shall hold and dispose of any such amount paid to it in the same manner as it would monies deposited with it by the Issuer for the redemption of Notes.

31

Without the Trustee's prior written consent, no arrangement between the Issuer and such purchasers for the purchase and conversion of any Notes shall increase or otherwise affect any of the powers, duties, responsibilities or obligations of the Trustee as set forth in this Indenture, and the Issuer agrees to indemnify the Trustee from, and hold it harmless against, any loss, liability or expense arising out of or in connection with any such arrangement for the purchase and conversion of any Notes between the Issuer and such purchasers to which the Trustee has not consented in writing, including the costs and expenses incurred by the Trustee in the defense of any claim or liability arising out of or in connection with the exercise or performance of any of its powers, duties, responsibilities or obligations under this Indenture.

ARTICLE 4
COVENANTS

SECTION 4.01. Payment of Notes.

The Issuer shall pay the principal of and interest (including Additional Interest, if any) on the Notes on the dates and in the manner provided in the Notes. Principal, interest (including Additional Interest, if any), the Redemption Price and Change of Control Payments shall be considered paid on the date due if the Trustee or Paying Agent (other than the Issuer or a Subsidiary of the Issuer) holds on that date immediately available funds designated for and sufficient to pay all principal, interest (including Additional Interest, if any), the Redemption Price then due or the Change of Control Payment then due.

To the extent lawful, the Issuer shall pay interest (including post-petition interest in any proceeding under any bankruptcy, insolvency or other similar applicable law) on (i) overdue principal, at the rate borne by Notes; and (ii) overdue installments of interest (without regard to any applicable grace period) at the same rate.

SECTION 4.02. Reports.

(a)    The Issuer will:

   (i)    file with the Trustee, within 15 days after the Issuer is required to file the same with the Commission, copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may from time to time by rules and regulations prescribe) which the Issuer may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act; or, if the Issuer is not required to file information, documents or reports pursuant to either of these Sections, the Issuer will file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such of the supplementary and periodic information, documents and reports that may be required pursuant to Section 13 of the Exchange Act in respect of a security listed and registered on a national securities exchange as may be prescribed from time to time in such rules and regulations;

   (ii)   file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such additional

32

information, documents and reports with respect to compliance thereby with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

(iii)     notify the Trustee when Notes of any series are listed on any stock exchange.

(b)     Delivery of such reports, information and documents to the Trustee is for informational purposes only and the Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Issuer's compliance with any of its covenants hereunder (as to which the Trustee is entitled to rely exclusively on Officers' Certificates).

SECTION 4.03.  Compliance Certificate.

The Issuer shall deliver to the Trustee within 120 days after the end of each fiscal year of the Issuer, an Officers' Certificate stating whether the signers know of any Event of Default that occurred during the fiscal year.  If any Event of Default shall have occurred, the applicable certificate shall describe the nature of the Event of Default and its current status.  The certificate shall be in a form in compliance with the TIA.

SECTION 4.04.  Maintenance of Office or Agency.

The Issuer shall maintain or cause to be maintained the office or agency required under Section 2.02. The Issuer shall give prompt written notice to the Trustee of the location, and any change in the location, of such office or agency not maintained by the Trustee.  If at any time the Issuer shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof, presentations, surrenders, notices and demands with respect to the Notes may be made or served at the Corporate Trust Office of the Trustee.

The Issuer may also from time to time designate one or more other offices or agencies where the Notes may be presented or surrendered for any or all such purposes and may from time to time rescind such designation; *provided however*, that no such designation shall in any manner relieve the Issuer of its obligation to maintain an office or agency in the borough of Manhattan.  The Issuer will give prompt written notice to the Trustee of any such designation and any change in the location of any such other office or agency.

SECTION 4.05.  Reserved.

SECTION 4.06.  Offer to Repurchase Upon a Change of Control.

Following a Change of Control (the date of each such occurrence being the "Change of Control Date"), the Issuer shall notify the holders of Notes in writing of such occurrence and shall make an offer (the "Change of Control Offer") to repurchase all Notes then outstanding at a repurchase price equal to 100% of the aggregate principal amount thereof (the "Change of Control Payment"), plus accrued and unpaid interest and Additional Interest, if any, to, but not including, the Change of Control Payment Date (as defined below).

33

Notice of a Change of Control (the "Issuer Notice") shall be mailed by or at the direction and expense of the Issuer through the Trustee to the holders of Notes as shown on the Register of such holders maintained by the Registrar not more than 30 days after the applicable Change of Control Date at the addresses as shown on the Register of holders maintained by the Registrar, with a copy to the Trustee and the Paying Agent. The Change of Control Offer shall remain open until a specified date (the "Change of Control Offer Termination Date") which is at least 20 Business Days from the date such Issuer Notice is mailed. During the period specified in such notice, holders of Notes of any series may elect to tender their Notes in whole or in part in integral multiples of $1,000. Payment shall be made by the Issuer in the manner elected by the Issuer pursuant to Section 4.06(b) in respect of Notes properly tendered pursuant to this Section on a specified Business Day (the "Change of Control Payment Date") which shall be no earlier than 20 Business Days and no later than 35 Business Days after the date of the Issuer Notice.

The notice, which shall govern the terms of the Change of Control Offer, shall include such disclosures as are required by law and shall state:

(1)     that a Change of Control Offer is being made pursuant to this Section 4.06 and that all Notes will be accepted for payment;

(2)     the event, transaction or transactions that constitute the Change of Control;

(3)     the Change of Control Payment for each Note, the Change of Control Offer Termination Date and the Change of Control Payment Date;

(4)     the Conversion Rate applicable to the Notes of each series and any adjustments to such Conversion Rate;

(5)     that a Note subject to the Change of Control Offer may be converted only if the holder of such Note declines the Change of Control Offer or has withdrawn its acceptance of the Change of Control Offer in accordance with the terms of such Change of Control Offer and the provisions of this Indenture;

(6)     that any Note not accepted for payment will continue to accrue interest and Additional Interest, if applicable, in accordance with the terms thereof;

(7)     that, unless the Issuer and the Guarantors default on making the Change of Control Payment, any Note accepted for payment pursuant to the Change of Control Offer shall cease to accrue interest and Additional Interest, if applicable, on the Change of Control Payment Date and no further interest or Additional Interest shall accrue on or after such date;

(8)     the name and address of the Paying Agent and Conversion Agent;

(9)     that holders electing to have Notes repurchased pursuant to a Change of Control Offer will be required to surrender their Notes, if in certificated form, together with any necessary endorsements, to the Paying Agent at the address specified in the notice prior to 5:00 p.m., New York City time on the Change of Control Offer Termination Date and must complete any form letter of transmittal proposed by the Issuer and acceptable to the Trustee and the Paying Agent (a "Purchase Notice");

34

(10)    that holders of Notes will be entitled to withdraw their election if the Paying Agent receives, not later than 5:00 p.m., New York City time, on the Change of Control Offer Termination Date, a facsimile transmission or letter setting forth the name of the holder, the series and principal amount of Notes the holder delivered for repurchase, the Note certificate number (if any) and a statement that such holder is withdrawing his election to have such Notes purchased;

(11)    that holders whose Notes of any series are repurchased only in part will be issued Notes of such series equal in principal amount to the unpurchased portion of the Notes surrendered;

(12)    the instructions that holders must follow in order to tender their Notes; and

(13)    that in the case of a Change of Control Offer Termination Date that is also an Interest Payment Date, the interest payment and Additional Interest, if any, due on such date shall be paid to the person in whose name the Note is registered at the close of business on the relevant Change of Control Offer Termination Date.

To accept a Change of Control Offer, a holder of Notes subject to such Change of Control Offer must deliver a written notice so as to be received by the Paying Agent no later than 5:00 pm, New York City Time on the Change of Control Offer Termination Date. The required notice must state:

(1)    the series of the Notes to be delivered by the holder for repurchase;

(2)    the certificate numbers of the Notes to be delivered by the holder for repurchase, if applicable;

(3)    the portion of the principal amount of Notes to be repurchased, which portion must be an integral multiple of $1,000; and

(4)    that the holder accepts the Change of Control Offer pursuant to the terms of such Change of Control Offer and the provisions of this Indenture.

A holder may withdraw any acceptance of the Change of Control Offer by delivering to the Paying Agent a written notice of withdrawal prior to the close of business on the Business Day immediately preceding the Change of Control Payment Date. Such notice of withdrawal must state:

(1)    the series of Notes being withdrawn;

(2)    the principal amount of Notes being withdrawn, which must be an integral multiple of $1,000;

(3)    the certificate numbers of the Notes being withdrawn, if applicable; and

(4)    the principal amount, if any, of the Notes that remain subject to acceptance of the Change of Control Offer.

35

On the Business Day following the Change of Control Offer Termination Date the Issuer shall, to the extent lawful, (i) accept for payment all Notes or portions thereof that have been properly tendered (and not properly withdrawn) pursuant to the Change of Control Offer, (ii) by 10:00 a.m., New York City time, deposit with the Paying Agent, an amount in U.S. legal tender ("cash") sufficient to pay the Change of Control Payment with respect to all Notes or portions thereof so tendered and accepted, and an amount in cash equal to accrued and unpaid interest and Additional Interest, if any, and (iii) deliver or cause to be delivered to the Trustee the Notes so accepted together with an Officers' Certificate setting forth the aggregate principal amount of Notes or portions thereof tendered to and accepted for payment by the Issuer. On the Change of Control Payment Date, the Paying Agent shall mail or deliver (or cause to be transferred by book entry) to the holders of Notes so accepted, the Change of Control Payment, and the Trustee shall promptly authenticate and mail or cause to be transferred by book entry to such holders a new Note of the same series equal in principal amount to any unpurchased portion of the Note surrendered, if any; *provided* that such new Notes will be in a principal amount of $1,000 or an integral multiple thereof. Any Notes not so accepted shall be promptly mailed or delivered by the Issuer to the holder thereof.

Immediately after the Change of Control Payment Date, (i) each properly tendered Note accepted for purchase in such Change of Control Offer will cease to be outstanding, (ii) interest will cease to accrue on each properly tendered Note, and (iii) all other rights of the holder of a properly tendered Note will terminate, other than the right to receive the Change of Control Payment upon delivery of such Note, in each case, regardless of whether or not book-entry transfer of the Note has been made or the Note has been delivered to the Paying Agent.

In the case of any reclassification, change, amalgamation, consolidation, merger, combination or sale or conveyance to which Section 12.06 applies, in which the Common Shares of the Issuer are changed or exchanged as a result into the right to receive stock, securities or other property or assets (including cash) which includes Common Shares or common shares of another person, then the person formed by such amalgamation, or consolidation or resulting from such merger or which acquires such assets, as the case may be, shall execute and deliver to the Trustee a supplemental indenture (which shall comply with the TIA as in force at the date of execution of such supplemental indenture) modifying the provisions of this Indenture relating to the right of holders of Notes to cause the Issuer to repurchase Notes following a Change of Control, including the applicable provisions of this Section 4.06 and the definition of Change of Control, as determined in good faith by the Issuer (which determination shall be conclusive and binding), to make such provision apply to such common shares and the issuer thereof if different from the Issuer and Common Shares (in lieu of the Issuer and the Common Shares of the Issuer).

Each Change of Control Offer shall be made by the Issuer in compliance with Rule 14e-4 and Rule 13e-4 and all other applicable provisions of the Exchange Act and, with respect to Canadian holders, Canadian securities laws, and all applicable tender offer rules promulgated thereunder and any other applicable securities laws and regulations, to the extent such laws and regulations are then applicable and shall include all instructions and materials that the Issuer shall reasonably deem necessary to enable such holders of Notes to tender their Notes.

Notwithstanding the foregoing, the Issuer may not repurchase any Note in connection with a Change of Control Offer if there has occurred and is continuing an Event of Default with

36

respect to such Note, other than a Default in the payment of the Change of Control Payment with respect to such Note.

Subject to the foregoing, a Change of Control will be an "event of failure" within the meaning of paragraph 212(1)(b)(vii) of the Income Tax Act (Canada) that requires the Issuer to make a Change of Control Offer. For the avoidance of doubt, the occurrence of such an event of failure is not an Event of Default under Section 6.01 hereof.

SECTION 4.07. Payment of Additional Amounts.

(a)    All payments of principal and premium, if any, and interest and Additional Interest, if any, by the Issuer under this Indenture or by a Guarantor under a Guarantee shall be made without withholding or deduction for, or on account of, Canadian Taxes. In the event withholding or deduction for Canadian Taxes is required by law or by the interpretation or administration thereof by the relevant governmental authority, the Issuer or Guarantors, as the case may be, will pay such Additional Amounts as may be necessary in order that the net amounts received by a holder after such withholding or deduction will not be less than the amount which would have been receivable in respect of the Notes in the absence of such withholding or deduction, except that no such Additional Amounts shall be payable to a holder in respect of a beneficial owner:

(i)    with whom the Issuer or the applicable Guarantor does not deal at arm's length (within the meaning of the Income Tax Act (Canada)) at the time of the making of such payment;

(ii)    who is subject to such Canadian Taxes by reason of its being connected with Canada or any province or territory thereof otherwise than solely by reason of the holder's activity in connection with purchasing the Notes, the mere holding of Notes or the receipt of payments thereunder; or

(iii)    who could lawfully avoid (but has not so avoided) such withholding or deduction by complying, or procuring that any third party complies with, any statutory requirements or by making, or procuring that any third party make, a declaration of non-residence or other similar claim for exemption to any relevant tax authority.

(b)    The Issuer or the applicable Guarantor shall make such withholding or deduction and remit the full amount deducted or withheld to the relevant authority in accordance with applicable law. The Issuer shall furnish to the Trustee, within 30 days after the date the payment of any Canadian Taxes is due pursuant to applicable law, certified copies of tax receipts evidencing that such payment has been made or other evidence of such payment satisfactory to the Trustee. The Issuer or the applicable Guarantor shall indemnify and hold harmless each holder of Notes (other than a holder described under clauses (i), (ii) or (iii) of Section 4.07(a)) and upon written request reimburse each such holder for the amount of (x) any Canadian Taxes so levied or imposed and paid by such holder as a result of payments made under or with respect to the Notes or the Guarantee, and (y) any Canadian Taxes levied or imposed and paid by such holder with respect to any reimbursement under (x) above, but excluding any such Canadian Taxes on such holder's net income or capital.

37

(c)　　At least 30 days prior to each date on which any payment under or with respect to the Notes is due and payable, if the Issuer or any Guarantor is obligated to pay Additional Amounts with respect to such payment, the Issuer or the applicable Guarantor shall deliver to the Trustee and the Paying Agent an Officers' Certificate stating the fact that such Additional Amounts will be payable, and the amounts so payable, and certifying that the Issuer or one or both of the Guarantors, as applicable, will pay such deduction or withholding amount to the relevant taxing authority and will set forth such other information necessary to enable the Trustee or the Paying Agent to pay such Additional Amounts to holders of the Notes on such payment date. References in this Indenture to the payment of principal of, premium, interest or Additional Interest on any Note shall be deemed to include the payment of Additional Amounts to the extent that, in such context, Additional Amounts are, were or would be payable.

(d)　　Each of the Issuer and the Guarantors agrees to indemnify the Trustee and the Paying Agents for, and to hold each harmless against, any loss, liability or expense reasonably incurred without willful misconduct or bad faith on its part arising out of or in connection with actions taken or omitted by it in reliance on any Officers' Certificate furnished pursuant to this Section 4.07 or any failure to furnish such a certificate.

(e)　　The obligations of the Issuer and the Guarantors pursuant to this Section 4.07 shall survive termination or discharge of this Indenture, payment of the Notes and/or resignation or removal of the Trustee or the Paying Agent.

SECTION 4.08.　Registration Rights.

The Issuer agrees that all holders are entitled to the benefits of the Registration Rights Agreement. If a Note and related Guarantees constitute Registrable Securities, and the holder thereof elects to sell such Registrable Securities pursuant to the Shelf Registration Statement (which is defined herein as defined in the Registration Rights Agreement) then, by its acceptance thereof, the holder of such Registrable Securities will have agreed to be bound by the terms of the Registration Rights Agreement relating to the Registrable Securities that are subject of such election.

If liquidated damages in the form of Additional Interest are payable by the Issuer pursuant to the Registration Rights Agreement, the Issuer shall deliver to the Trustee an Officers' Certificate to that effect stating (i) the amount of such Additional Interest that is payable, (ii) the reason why such Additional Interest is payable and (iii) the date on which such Additional Interest is payable. Unless and until a Trust Officer of the Trustee receives such an Officers' Certificate, the Trustee may assume without inquiry that no Additional Interest is payable. If the Issuer has paid Additional Interest directly to the persons entitled to such amounts, the Issuer shall deliver to the Trustee a certificate setting forth the particulars of such payment.

ARTICLE 5
SUCCESSORS

SECTION 5.01.　Amalgamation, Merger, Conveyance, Transfer or Lease.

(a)　　So long as the Notes of any series remains outstanding, the Issuer will not amalgamate or merge with any other corporation or enter into any reorganization or arrangement

38

[New York #1699265 v7]

or effect any conveyance, transfer or lease of all or substantially all of its and its Subsidiaries' assets, taken as a whole (other than with or to NNL), unless in any such case (i)(x) the Issuer is the surviving corporation or one of the continuing corporations or (y) the successor corporation (or the person that leases or that acquires by conveyance or transfer all or substantially all of the Issuer's and the Issuer's Subsidiaries' assets, taken as a whole) is a corporation with shares listed on the TSX or a major exchange or quotation system in the United States or the United Kingdom and expressly assumes, by supplemental indenture, the Issuer's obligations under this Indenture and (ii) immediately after giving effect to such transaction, no Default or Event of Default has occurred and is continuing.

(b)     So long as the Notes of any series remains outstanding, NNL will not amalgamate or merge with any other corporation or enter into any reorganization or arrangement or effect any conveyance, transfer or lease of all or substantially all of its and its Subsidiaries' assets, taken as a whole (other than with or to the Issuer), unless in any such case (i)(x) NNL is the surviving corporation or one of the continuing corporations; (y) the surviving corporation is a wholly-owned Subsidiary of the Issuer and expressly assumes, by supplemental indenture, NNL's obligations under the Indenture and NNL's Guarantee; or (z) the successor corporation (or the person that leases or that acquires by conveyance or transfer all or substantially all of its and its Subsidiaries' assets, taken as a whole) is a corporation with shares listed on the TSX or a major exchange or quotation system in the United States or the United Kingdom and expressly assumes, by supplemental indenture, NNL's obligations under the Indenture and NNL's Guarantee and (ii) immediately after giving effect to such transaction, no Default or Event of Default has occurred and is continuing.

SECTION 5.02.  Successor Corporation Substituted.

In case of any such amalgamation, merger, reorganization, conveyance, transfer or lease and upon any such assumption by the successor corporation, such successor corporation shall agree to be bound by the terms of this Indenture as principal obligor or Guarantor in place of either the Issuer or NNL, as the case may be, with the same effect as if it had been named herein as the Issuer or NNL, as the case may be.

SECTION 5.03.  Offer to Repurchase on Change of Control.

This Article 5 does not affect the obligations of the Issuer (including without limitation any successor to the Issuer) under Section 4.06.

SECTION 5.04.  Amalgamation of the Issuer and NNL.

In the event that the Issuer shall merge, amalgamate or consolidate with or into NNL, thereafter all references herein to the Issuer and NNL shall mean the merged, amalgamated or consolidated corporation and clause (b) of the definition of "Change of Control" shall cease to apply.

[New York #1699265 v7]

# ARTICLE 6
## DEFAULTS AND REMEDIES

SECTION 6.01. <u>Events of Default</u>.

An "Event of Default" with respect to any series of Notes occurs if:

(a)    the Issuer defaults in the payment of principal of, or premium, if any, on the Notes of such series when due at maturity, upon acceleration or otherwise, including, without limitation, failure of the Issuer to make a Change of Control Payment with respect to Notes of such series or any payment of the Redemption Price with respect to Notes of such series when required pursuant to Article 3; or

(b)    the Issuer defaults in the payment of any installment of interest, Additional Interest or Additional Amounts on the Notes of such series when due (including any interest or Additional Interest payable in connection with any optional redemption payment pursuant to Article 3 or any offer to repurchase pursuant to Section 4.06) and continuance of such default for a continuous period of 30 days or more; or

(c)    a default in performing or observing any of the respective covenants, agreements or other obligations under this Indenture of the Issuer, NNL or during any period in which NNI is a Guarantor, NNL, as described herein for a continuous period of 90 days after receipt of written notice by the Issuer or such Guarantor from the holders of not less than 25% in aggregate principal amount of the then outstanding Notes of such series requiring the same to be remedied; or

(d)    the Issuer defaults in performing its obligation to deliver Common Shares, together with cash in lieu thereof in respect of any fractional Common Shares, upon conversion of any Note of such series, pursuant to Section 12.02 and that failure continues for 10 days; or

(e)    the Issuer defaults in performing its obligation to make a Change of Control Offer or give any notice of a Change of Control or a Make Whole Change of Control required hereunder with respect to Notes of such series, in each case, within the time period specified for doing so hereunder; or

(f)    the occurrence of a default as defined in any evidence of indebtedness for borrowed money of the Issuer or any Guarantor exceeding on its face $100,000,000 in principal amount, whether such indebtedness now exists or shall hereafter be created, which results in such indebtedness becoming or being declared due and payable prior to the date on which it would otherwise become due and payable and such acceleration shall not be rescinded or annulled within 10 days after written notice (i) specifying such default, (ii) requiring such defaulting entity to cause such acceleration to be rescinded or annulled, and (iii) that meets the specific requirements for such a notice of default under the applicable indenture, loan agreement or similar document governing the terms of such indebtedness; or

(g)    a decree, judgment, or order by a court having jurisdiction in the premises shall have been entered adjudging the Issuer or NNL a bankrupt or insolvent or approving as properly filed a petition seeking reorganization, readjustment, arrangement, composition or similar relief

[New York #1699265 v7]

for the Issuer or NNL under any bankruptcy, insolvency or other similar applicable law and such decree, judgment or order of a court having jurisdiction in the premises for the appointment of a receiver or liquidator or trustee or assignee in bankruptcy or insolvency of the Issuer or NNL, as the case may be, of a substantial part of its property, or for the winding up or liquidation of its affairs, shall have remained in force for a period of 60 consecutive days; or any substantial part of the property of the Issuer or NNL shall be sequestered or attached and shall not be returned to the possession of the Issuer or NNL or released from such attachment whether by filing of a bond, or stay or otherwise within 60 consecutive days thereafter; or

      (h)      the Issuer or NNL shall institute proceedings to be adjudicated a voluntary bankrupt, or shall consent to the filing of a bankruptcy proceeding against it, or shall file a petition or answer or consent seeking reorganization, readjustment, arrangement, composition or similar relief under any bankruptcy, insolvency or other similar applicable law or the Issuer or NNL shall consent to the filing of any such petition, or shall consent to the appointment of a receiver or liquidator or trustee or assignee in bankruptcy or insolvency for it or of a substantial part of its property, or shall make an assignment for the benefit of creditors, or shall be unable, or admit in writing its inability, to pay its debts generally as they become due, or corporate action shall be taken by the Issuer or NNL in furtherance of any of the aforesaid actions.

SECTION 6.02.  Acceleration.

      (a)      Subject to clause (b) below, if an Event of Default with respect to any series of Notes occurs and is continuing, then and in every such case the Trustee, by written notice to the Issuer, or the holders of at least 25% in aggregate principal amount of the then outstanding Notes of such series, by written notice to the Issuer and the Trustee, may declare the unpaid principal of, premium, if any, and accrued and unpaid interest and Additional Interest, if any, on all the Notes of such series to be due and payable. Upon such declaration, such principal amount, premium, if any, and accrued and unpaid interest and Additional Interest, if any, shall become immediately due and payable, notwithstanding anything contained in this Indenture or the Notes of such series to the contrary.

      (b)      The sole remedy for any breach of the obligations of the Issuer or any Guarantor under this Indenture (including without limitation under Section 4.02 and Section 4.03) to file periodic or other reports (including pursuant to section 314(a)(1) of the TIA) shall, except as provided in the final sentence of this Section 6.02(b) be the payment of liquidated damages in the form of Additional Interest, and holders of the Notes will not have any right under the Indenture to accelerate the maturity of the Notes as a result of any such breach. If a breach of the obligations under the Indenture to file periodic or other reports (including pursuant to section 314(a)(1) of the TIA) continues for 90 days after notice thereof is given in accordance with Section 6.01(c), the Issuer will pay Additional Interest to all holders of Notes at a rate per annum equal to (i) 0.25% per annum of the principal amount of the Notes from the 90th day following such notice to but not including the 180th day following such notice (or such earlier date on which the Event of Default relating to the reporting obligations referred to in this Section 6.02(b) shall have been cured or waived) and (ii) 0.50% per annum of the principal amount of the Notes from the 180th day following such notice to but not including the 270th day following such notice (or such earlier date on which the Event of Default relating to the reporting obligations referred to in this Section 6.02(b) shall have been cured or waived). On such 270th

41

day (or earlier, if the Event of Default relating to the reporting obligations referred to in this Section 6.02(b) shall have been cured or waived prior to such 270th day), such Additional Interest will cease to accrue, and the Notes will be subject to acceleration as provided above if the Event of Default is continuing.

SECTION 6.03.  Other Remedies.

. If an Event of Default with respect to any series of Notes occurs and is continuing, the Trustee may pursue any available remedy by proceeding at law or in equity to collect the payment of principal of or interest or Additional Interest, if applicable, on such Notes or to enforce the performance of any provision of such Notes or this Indenture.  The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding.  A delay or omission by the Trustee in exercising any right or remedy occurring upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default.  All remedies are cumulative to the extent permitted by law.

SECTION 6.04.  Waiver of Past Defaults.

The holders of a majority in aggregate principal amount of the Notes of a series then outstanding may, on behalf of the holders of all the Notes of such series, waive an existing Default or Event of Default and its consequences, except a Default or Event of Default in the payment of the principal of, premium, if any, or interest or Additional Interest, if applicable, on such Notes (other than the non-payment of principal of and premium, if any, and interest and Additional Interest, if any, on such Notes which has become due solely by virtue of an acceleration which has been duly rescinded as provided above), or in respect of a covenant or provision of this Indenture which cannot be modified or amended without the consent of all holders of Notes.  When a Default or Event of Default with respect to such series is waived, it is cured and stops continuing with respect to such series.  No waiver shall extend to any subsequent or other Default or Event of Default or impair any right consequent thereon.

SECTION 6.05.  Control by Majority.

The holders of a majority in aggregate principal amount of the then outstanding Notes of any series may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on it with respect to such series of Notes.  However, the Trustee may refuse to follow any direction that conflicts with law or this Indenture that the Trustee determines may be unduly prejudicial to the rights of other holders of Notes; *provided, further*, that the Trustee may take any other action the Trustee deems proper that is not inconsistent with such directions.

SECTION 6.06.  Limitation on Suits.

A holder of a Note may not pursue any remedy with respect to this Indenture or the Notes unless:

(1)     the holder gives to the Trustee written notice of a continuing Event of Default;

42

(2)     the holders of at least 25% in aggregate principal amount of the then outstanding Notes (treated as a single class) make a request to the Trustee to pursue the remedy;

(3)     such holder or holders offer and, if requested, provide to the Trustee indemnity satisfactory to the Trustee against any loss, liability or expense;

(4)     the Trustee does not comply with the request within 60 days after receipt of the request and the offer and, if requested, the provision of indemnity; and

(5)     during such 60-day period the holders of a majority in aggregate principal amount of the then outstanding Notes (treated as a single class) do not give the Trustee a direction inconsistent with the request.

A holder of a Note may not use this Indenture to prejudice the rights of another holder or to obtain a preference or priority over another holder.

SECTION 6.07.   Rights of Holders to Receive Payment.

Notwithstanding any other provision of this Indenture, the right of any holder of a Note to receive payment of principal, premium, if any, and interest and Additional Interest, if any, on the Note, on or after the respective due dates expressed in the Note, or to bring suit for the enforcement of any such payment on or after such respective dates, or to bring suit for the enforcement of the right to convert the Note shall not be impaired or affected without the consent of the holder of a Note.

SECTION 6.08.   Collection Suit by Trustee.

If an Event of Default with respect to a series of Notes specified in Section 6.01(a) or (b) occurs and is continuing, the Trustee may recover judgment in its own name and as trustee of an express trust against the Issuer and the Guarantors for the whole amount of principal and interest and Additional Interest, if any, remaining unpaid on the Notes of such series and interest on overdue principal and interest and Additional Interest, if any.

SECTION 6.09.   Trustee May File Proofs of Claim.

The Trustee may file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee and the holders of Notes allowed in any judicial proceedings relative to the Issuer, its creditors or its property.  Nothing contained herein shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any holder of a Note any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any holder thereof, or to authorize the Trustee to vote in respect of the claim of any holder in any such proceeding.

SECTION 6.10.   Priorities.

If the Trustee collects any money pursuant to this Article, it shall pay out the money upon presentation of the Notes of such series and the notation thereon of the payment if only partially paid and upon surrender thereof if fully paid, in the following order:

43

First: to the Trustee and the Agents for amounts due under Section 7.07, including payment of all compensation, expenses and liabilities incurred by the Trustee, and the costs and expenses of collection;

Second: to holders of Notes of such series (treated as a single series for such purposes) for amounts due and unpaid on such Notes for principal, premium, if any, and interest and Additional Interest, if any, ratably, without preference or priority of any kind, according to the amounts due and payable on the Notes of such series for principal, premium, if any, and interest and Additional Interest, if any, respectively; and

Third: to the Issuer or, to the extent the Trustee collects any amount pursuant to the Guarantee from the Guarantor, to the Guarantor.

Except as otherwise provided in Section 2.12, the Trustee may fix a record date and payment date for any payment to holders of Notes of a series.

SECTION 6.11. Undertaking for Costs.

In any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as a Trustee, a court in its discretion may require the filing by any party litigant in the suit, other than the Trustee, of an undertaking to pay the costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorneys fees, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant. This Section does not apply to a suit by the Trustee, a suit by a holder pursuant to Section 6.07 or a suit by holders of more than 10% in aggregate principal amount of the then outstanding Notes of a series.

ARTICLE 7
THE TRUSTEE

The Trustee hereby accepts the trust imposed upon it by this Indenture and covenants and agrees to perform the same, as herein expressed. Whether or not herein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Article 7.

SECTION 7.01. Duties of the Trustee.

(a)      If an Event of Default actually known to a Trust Officer of the Trustee has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs.

(b)      Except during the continuance of an Event of Default known to the Trustee:

(1)      The duties of the Trustee shall be determined solely by the express provisions of this Indenture and the Trustee need perform only those duties that are specifically

44

set forth in this Indenture and no others and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(2)    In the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any statements, certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture. However, the Trustee shall examine the certificates and opinions required to be delivered to it pursuant to the terms of this Indenture to determine whether or not they conform to the form required by this Indenture.

(c)    The Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(1)    This paragraph does not limit the effect of paragraph (b) of this Section;

(2)    The Trustee shall not be liable for any error of judgment made in good faith by a Trust Officer, unless it is proved that the Trustee was negligent in ascertaining the pertinent facts; and

(3)    The Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 6.05.

(4)    No provision of this Indenture shall require the Trustee to expend or risk its own funds or incur any financial liability in the performance of any of its duties or the exercise of any of its rights and powers hereunder, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk of liability is not reasonably assured to it.

(d)    Whether or not therein expressly so provided, every provision of this Indenture that is in any way related to the Trustee is subject to paragraphs (a), (b) and (c) of this Section 7.01.

(e)    The Trustee shall not be liable for interest on any money received by it except as the Trustee may agree in writing with the Issuer. Money held in trust by the Trustee need not be segregated from other funds except to the extent required by law.

SECTION 7.02.  Rights of the Trustee.

(a)    The Trustee may conclusively rely on and shall be fully protected in acting or refraining from acting upon any resolution, Officers' Certificate, or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, security or other document believed by it to be genuine and to have been signed or presented by the proper person or persons. The Trustee need not investigate any fact or matter contained therein but the Trustee, in its discretions, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Issuer, personally or by agent or attorney at the sole cost of the Issuer and shall incur no liability or additional liability of any kind by reason of such inquiry or investigation.

45

(b)    Any request, direction, order or demand of the Issuer or any Guarantor mentioned herein shall be sufficiently evidenced by an Officers' Certificate (unless other evidence in respect thereof is herein specifically prescribed). In addition, before the Trustee acts or refrains from acting, it may require an Officers' Certificate, an Opinion of Counsel or both. The Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on such Officers' Certificate or Opinion of Counsel. The Trustee may consult with counsel and the written advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection from liability in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon.

(c)    The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through the appointment of co-trustees or through its attorneys, agents, custodians or nominees and other persons not regularly in its employ and shall not be responsible for the misconduct or negligence of any attorneys, agents, custodians or nominees appointed with due care.

(d)    The Trustee shall not be liable for any error of judgment made in good faith by a Trust Officer, unless it is proved that the Trustee was negligent in ascertaining the pertinent facts; and

(e)    The Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 6.05.

(f)    Unless otherwise specifically provided in this Indenture, any demand, request, direction or notice from the Issuer shall be sufficient if signed by any two Authorized Officers of the Issuer or NNL or any Authorized Officer of NNI, as the case may be.

(g)    The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request, order or direction of any of the holders of Notes pursuant to the provisions of this Indenture, unless such holders have offered to the Trustee security or indemnity satisfactory to it against the costs, expenses and liabilities which might be incurred therein or thereby.

(h)    The permissive rights of the Trustee to do things enumerated in this Indenture shall not be construed as a duty and the Trustee shall not be answerable for other than its negligence or willful misconduct.

(i)    The Trustee shall not be responsible for the computation of any Additional Interest of the type described in clause (i) of the definition thereof or of any adjustment to the Conversion Rate or Conversion Price or for any determination as to whether an adjustment is required and shall not be deemed to have knowledge of any adjustment unless and until it shall have received written notice from the Issuer of such adjustment.

(j)    The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder as Registrar, Paying Agent and Conversion Agent, each Agent and each other agent, custodian and person employed to act hereunder.

46

[New York #1699265 v7]

SECTION 7.03.  <u>Individual Rights of the Trustee</u>.

Subject to Sections 7.10 and 7.11, the Trustee in its individual or any other capacity may become the owner or pledgee of Notes with the same rights it would have if it were not the Trustee and may otherwise deal with the Issuer or an Affiliate of the Issuer and receive, collect, hold and retain collections from the Issuer with the same rights it would have if it were not Trustee.  Any Agent may do the same with like rights.

SECTION 7.04.  <u>Trustee's Disclaimer</u>.

The Trustee shall not be responsible for and makes no representation as to the validity or adequacy of the Offering Memorandum, this Indenture, the Notes or the Guarantee.  It shall not be accountable for the Issuer's use of the proceeds from the Notes or any money paid to the Issuer or upon the Issuer's direction under any provision of this Indenture.  It shall not be responsible for the use or application of any money received by any Paying Agent other than the Trustee, and it shall not be responsible for any statement or recital in any offering materials, herein or any statement in the Notes or any other document in connection with the sale of the Notes or pursuant to this Indenture other than its certificate of authentication.

SECTION 7.05.  <u>Notice of Defaults</u>.

If a Default or Event of Default occurs and is continuing and if it is actually known to a Trust Officer of the Trustee, the Trustee shall mail to each holder of a Note a notice of the Default or Event of Default within 90 days after it occurs.  A Default or an Event of Default shall not be considered known to the Trustee unless it is a Default or Event of Default in the payment of principal or interest when due under Section 6.01(a) or (b) or the Trustee shall have received written notice thereof, in accordance with this Indenture, from the Issuer or from the holders of a majority in aggregate principal amount of the outstanding Notes of the relevant series.  Except in the case of a Default or Event of Default in payment of principal of, premium, if any, or interest or Additional Interest, if any, on any Note, the Trustee may withhold the notice if and so long as a committee of its Trust Officers in good faith determines that withholding the notice is in the interest of the holders of the Notes.

SECTION 7.06.  <u>Reports by the Trustee to Holders</u>.

Within 60 days after May 15 of each year, the Trustee shall mail to holders of Notes a brief report dated as of such reporting date that complies with TIA § 313(a).  The Trustee also shall comply with TIA § 313(b)(2).  The Trustee shall also transmit by mail all reports as required by TIA § 313(c).

A copy of each report at the time of its mailing to holders of Notes shall be filed by the Trustee with the Commission and each stock exchange or securities market, if any, on which the Notes are listed.

SECTION 7.07.  <u>Compensation and Indemnity</u>.

The Issuer shall pay to the Trustee from time to time and the Trustee shall be entitled to reasonable compensation for its acceptance of this Indenture and its services hereunder as agreed

47

to in writing. The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust. The Issuer shall reimburse the Trustee promptly upon request for all reasonable disbursements and expenses incurred or made by or on behalf of it in addition to the compensation for its services.

Each of the Issuer and the Guarantors, jointly and severally, shall indemnify and hold harmless the Issuer and its agents against any loss, damages, claims, liability or expense (including reasonable attorney's fees and expenses) incurred by it arising out of or in connection with the acceptance or administration of its duties or the exercise of its rights under this Indenture and the trusts hereunder, including the costs and expenses of defending itself against or investigating any claim of liability in the premises, except as set forth in the next paragraph. The Trustee shall notify the Issuer promptly of any claim for which it may seek indemnity. The Issuer shall defend the claim with counsel designated by the Issuer and the Guarantors, who may be outside counsel to the Issuer but shall in all events be reasonably satisfactory to the Trustee, and the Trustee shall cooperate in the defense, *provided* that the Issuer will not be liable for any settlement made without its consent; *provided further* that the Trustee may defend any such claim with another counsel selected by the Trustee and reasonably acceptable to the Issuer and the Guarantors if the Trustee determines, acting reasonably, that a conflict of interest exists between the Trustee and the Issuer in the defense of such claim.

The Issuer need not reimburse any expense or indemnify against any loss or liability incurred by the Trustee or its agent through its or such agent's own negligence, bad faith or willful misconduct.

The Trustee shall have a lien prior to the Notes on all money or property held or collected by the Trustee to secure the Issuer's payment obligations in this Section 7.07, except that held in trust to pay principal and interest and Additional Interest, if any, on Notes.

When the Trustee incurs expenses or renders services after an Event of Default specified in Section 6.01(g) or (h) occurs, the expenses and the compensation for the services (including the fees and expenses of its agents and counsel) are intended to constitute expenses of administration under any bankruptcy, insolvency or other similar applicable law.

The provisions of this Section 7.07 shall survive payment of the Notes, the termination of this Indenture and the resignation or removal of the Trustee.

SECTION 7.08. <u>Replacement of the Trustee</u>.

A resignation or removal of the Trustee and appointment of a successor Trustee shall become effective only upon the successor Trustee's acceptance of appointment as provided in this Section 7.08.

The Trustee may resign at any time and be discharged from the trust hereby created by so notifying the Issuer; *provided* that such resignation . The holders of a majority in aggregate principal amount of the then outstanding Notes (treated as a single series for such purposes) may remove the Trustee by so notifying the Trustee and the Issuer in writing and may appoint a successor Trustee if:

48

[New York #1699265 v7]

(i)     the Trustee fails to comply with Section 7.10;

(ii)    the Trustee is adjudged a bankrupt or an insolvent or an order for relief is entered with respect to the Trustee under any bankruptcy, insolvency or other similar laws;

(iii)   a custodian or public officer takes charge of the Trustee or its property; or

(iv)    the Trustee becomes incapable of acting.

In addition, in any such case the Issuer or the Guarantors may by a Board Resolution thereof remove the Trustee.

If the Trustee resigns or is removed or if a vacancy exists in the office of Trustee for any reason, the Issuer shall promptly appoint a successor Trustee. Within one year after the successor Trustee takes office, the holders of a majority in aggregate principal amount of the then outstanding Notes may appoint a successor Trustee to replace the successor Trustee appointed by the Issuer.

If a successor Trustee does not take office within 60 days after the retiring Trustee resigns or is removed, the retiring Trustee, the Issuer or the holders of at least 10% in aggregate principal amount of the then outstanding Notes (treated as a single series for such purposes) may petition any court of competent jurisdiction for the appointment of a successor Trustee.

If the Trustee after written request by any holder of a Note who has been a holder for at least six months fails to comply with Section 7.10, such holder may petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

A successor Trustee shall deliver a written acceptance of its appointment to the retiring Trustee and to the Issuer. Thereupon the resignation or removal of the retiring Trustee shall become effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under this Indenture. The successor Trustee shall mail a notice of its succession to holders of Notes. The retiring Trustee shall promptly transfer all property held by it as Trustee to the successor Trustee, *provided* that all sums owing to the retiring Trustee hereunder have been paid and subject to the lien provided for in Section 7.07. Notwithstanding the replacement of the Trustee pursuant to this Section 7.08, the Issuer's obligations under Section 7.07 shall continue for the benefit of the retiring Trustee with respect to expenses and liabilities incurred by it prior to such replacement.

Upon request of any such successor Trustee, the Issuer shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Trustee all such rights, powers and trusts referred to in the preceding paragraph.

No successor Trustee shall accept its appointment unless at the time of such acceptance such successor Trustee shall be qualified and eligible under this Article 7.

49

SECTION 7.09.  Successor Trustee by Merger, Etc.

If the Trustee consolidates with, merges or converts into, or transfers all or substantially all of its corporate trust business (including the trust created by this Indenture) to, another corporation, the resulting, surviving or transferee corporation without any further act shall be the successor Trustee with the same effect as if the successor Trustee had been named as the Trustee herein, provided that prior written notice thereof is given to the Issuer and the Guarantors and such successor corporation is acceptable to the Issuer and the Guarantors.

SECTION 7.10.  Eligibility, Disqualification.

This Indenture shall always have a Trustee who satisfies the requirements of TIA § 310(a)(1).  The Trustee shall always have a combined capital and surplus as stated in Section 10.09.  The Trustee is subject to TIA § 310(b), including the optional provision permitted by the second sentence of TIA § 310(b)(9).

SECTION 7.11.  Preferential Collection of Claims Against Issuer.

The Trustee shall comply with TIA § 311(a), excluding any creditor relationship set forth in TIA § 311(b).  A Trustee who has resigned or been removed shall be subject to TIA § 311(a) to the extent indicated therein.

SECTION 7.12.  Appointment of Co-Trustee.

The Issuer, the Guarantors and the Trustee may, at any time, appoint a co-trustee for any purpose or purposes of this Indenture if considered necessary or desirable in the circumstances including, without limitation, to fulfill any legal requirement under the applicable laws of any jurisdiction, including any applicable provision of the *Canada Business Corporations Act*, subject to the following provisions and conditions:

(i)    the instrument appointing the co-trustee shall refer to this Indenture and the conditions of this Section 7.12;

(ii)    the instrument appointing the co-trustee shall set forth the rights, powers, duties and obligations under or in connection with this Indenture to be made available to, imposed upon, exercised and performed by the co-trustee and may, for greater certainty, identify those rights, powers, duties and obligations that will not be made available to, imposed upon, exercised or performed by such co-trustee; and

(iii)    no trustee hereunder shall be responsible for or personally liable by reason of any act or omission of any other trustee hereunder.

50

# ARTICLE 8
## Satisfaction and Discharge of Indenture

SECTION 8.01. Discharge of Indenture.

When (a) the Issuer delivers to the Trustee for cancellation all Notes theretofore authenticated (other than any other Notes which have been destroyed, lost or stolen and in lieu of or in substitution for which other Notes have been authenticated and delivered) and not theretofore canceled, or (b) all the Notes not theretofore canceled or delivered to the Trustee for cancellation have become due and payable, or by their terms will become due and payable within one year or are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption, and the Issuer deposits with the Trustee, in trust, amounts sufficient to pay at maturity or upon redemption of all of the Notes (other than any Notes which have been mutilated, destroyed, lost or stolen and in lieu of or in substitution for which other Notes have been authenticated and delivered) not theretofore canceled or delivered to the Trustee for cancellation, including principal and premium, if any, and interest, Additional Interest and Additional Amounts, if any, due or to become due to such date of maturity or Redemption Date, as the case may be, and if in either case the Issuer also pays, or causes to be paid, all other sums payable hereunder by the Issuer and delivers to the Trustee an Officer's Certificate and Opinion of Counsel each stating that all conditions precedent herein provided related to the satisfaction and discharge of this Indenture have been complied with, then this Indenture shall cease to be of further effect (except as to (i) rights of registration of transfer, substitution, replacement and exchange and conversion of Notes, (ii) rights hereunder of holders of Notes to receive payments of principal of and premium, if any, and interest, and Additional Interest, if any, on, the Notes, (iii) the obligations under Section 2.03 hereof and (iv) the rights, obligations and immunities of the Trustee hereunder), and the Trustee shall execute proper instruments acknowledging satisfaction of and discharging this Indenture; the Issuer, however, hereby agrees to reimburse the Trustee for any costs or expenses thereafter reasonably and properly incurred by the Trustee and to compensate the Trustee for any services thereafter reasonably and properly rendered by the Trustee in connection with this Indenture or the Notes.

SECTION 8.02. Deposited Monies to be Held In Trust by Trustee.

All monies deposited with the Trustee pursuant to Section 8.01 shall be held in trust and applied by it to the payment, either directly or through the Paying Agent, to the holders of the particular Notes for the payment or redemption of which such monies have been deposited with the Trustee, of all sums due and to become due thereon for principal and interest, and Additional Interest, if any, and premium, if any.

# ARTICLE 9
## AMENDMENTS

SECTION 9.01. Without the Consent of Holders.

The Issuer and the Guarantors, when authorized by a Board Resolution, and the Trustee may amend this Indenture or the Notes without notice to or the consent of any holder of a Note for the purposes of:

51

[New York #1699265 v7]

(a)    curing any ambiguity or correcting or supplementing any defective or inconsistent provision contained in this Indenture or making any other changes in the provisions of this Indenture which the Issuer and the Trustee may deem necessary or desirable provided such amendment does not materially and adversely affect the interests of the holders of Notes in any material respect;

(b)    providing for uncertificated Notes in addition to or in place of Certificated Notes;

(c)    providing for the succession of another corporation to the Issuer or a Guarantor and the assumption of the Notes or the applicable Guarantee by such successor as permitted by Section 5.01;

(d)    providing for conversion rights and/or repurchase rights of holders of any series of Notes in the event of amalgamation, merger, share exchange or sale of all or substantially all of the assets of the Issuer as required to comply with Sections 5.01 and/or 12.06;

(e)    subject to Section 12.06, provide for conversion rights of holders of any series of Notes in connection with any reclassification or change of the Common Shares or in the event of any amalgamation, consolidation, merger or sale of the consolidated assets of the Issuer and its Subsidiaries substantially as an entirety occurs;

(f)    reducing the Conversion Price applicable to any series of Notes;

(g)    evidencing and providing for the acceptance of appointment under this Indenture of a successor Trustee;

(h)    making any changes that would provide the holders of the Notes of any series with any additional rights or benefits or that does not adversely affect the legal rights under this Indenture of any such holder;

(i)    adding an additional guarantor in respect of the Guarantee;

(j)    provide any liens or security for the benefit of the holders of any series of Notes;

(k)    add to the covenants for the benefit of the holders of any series of Notes;

(l)    surrender any right or power conferred upon the Issuer or any Guarantor with respect to any series of Notes;

(m)    increase the Conversion Rate in the manner described in Article 12, provided that the increase will not adversely affect the interests of the holders of the Notes in any material respect;

(n)    permitting or facilitating defeasance or discharge of any or all Notes, provided that such modification shall not adversely affect the interest of any holder of Notes in any material respect; or

52

(o)      complying with the requirements of the Commission in order to effect or maintain the qualification of this Indenture under the TIA.

SECTION 9.02.  With the Consent of Holders.

Subject to Section 6.07, the Issuer and the Guarantors, when authorized by a Board Resolution, and the Trustee may amend this Indenture or the Notes with the written consent of the holders of at least a majority in aggregate principal amount of the then outstanding Notes (including consents obtained in connection with a tender offer or exchange offer for Notes).

Subject to Sections 6.04 and 6.07, the holders of a majority in aggregate principal amount of the Notes then outstanding may also waive compliance in a particular instance by the Issuer with any provision of this Indenture or the Notes.

However, without the consent of each holder of a Note affected, an amendment or waiver under this Section may not:

(a)      reduce the percentage in aggregate principal amount of outstanding Notes whose holders must consent to an amendment, supplement or waiver;

(b)      reduce the principal of or premium on or change the fixed maturity of any Note or, except as permitted pursuant to Section 9.01(a), (d), (g) or (m), alter the redemption provisions with respect thereto;

(c)      reduce the rate of or change the time for payment of interest, including defaulted interest, Additional Interest or a premium on any Note;

(d)      waive a Default or Event of Default in the payment of principal of or premium, if any, or interest or Additional Interest, if any, on the Notes (except a rescission of acceleration of the Notes by the holders of at least a majority in aggregate principal amount of the Notes then outstanding and a waiver of the payment default that resulted from such acceleration);

(e)      make the principal of, or premium, if any, or interest or Additional Interest, if any, on, any Note payable in money other than as provided for herein and in the Notes;

(f)      make any change in the provisions of this Indenture relating to waivers of past Defaults or Events of Default or the rights of holders of Notes to receive payments of principal of, premium, if any, or interest or Additional Interest, if any, on the Notes;

(g)      waive a redemption payment with respect to any Notes;

(h)      except as permitted herein (including Section 9.01(a)), increase the Conversion Price or, except as set forth in Section 9.01(a), modify the provisions contained herein relating to conversion of the Notes in a manner adverse to the holders thereof;

(i)      make any Note payable in money other than that stated in this Indenture and the Notes;

53

[New York #1699265 v7]

(j)    modify any Guarantee; or

(k)    make any change to the abilities of holders of Notes to enforce their rights hereunder or the provisions of clauses (a) through (i) of this Section 9.02.

To secure a consent of the holders of Notes under this Section, it shall not be necessary for such holders to approve the particular form of any proposed amendment or waiver, but it shall be sufficient if such consent approves the substance thereof.

After an amendment or waiver under this Section becomes effective, the Issuer shall mail to holders of Notes a notice briefly describing the amendment or waiver.

SECTION 9.03.  Compliance With the Trust Indenture Act.

Every amendment to this Indenture or the Notes shall be set forth in a supplemental indenture that complies with the TIA as then in effect.

SECTION 9.04.  Notation on or Exchange of Notes.

Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article 9 may, and shall if required by the Trustee, bear a notation in the form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Issuer shall so determine, new Notes so modified as to conform, in the opinion of the Issuer and the Trustee, to any such supplemental indenture may be prepared and executed by the Issuer and authenticated and delivered by the Trustee in exchange for outstanding Notes without charge to the holders of the Notes, except as specified in Section 2.05.

SECTION 9.05.  Trustee Protected.

The Trustee shall sign any amendment or supplemental indenture authorized pursuant to this Article 9 if such amendment or supplemental indenture does not adversely affect the rights, duties, liabilities or immunities of the Trustee. If it does, the Trustee may, but need not, sign it. In signing such amendment or supplemental indenture, the Trustee shall be entitled to receive, and shall be fully protected in relying upon, an Officers' Certificate and an Opinion of Counsel as conclusive evidence that such amendment or supplemental indenture is authorized or permitted by this Indenture, that it is not inconsistent herewith, and that it will be valid and binding upon the Issuer in accordance with its terms.

SECTION 9.06.  No Discharge, Revision, Extinguishment, Novation, Rescission or Substitution.

Any amendment made pursuant to Section 9.01 or 9.02 shall not be, nor shall it be deemed to be, a discharge, revision, extinguishment, novation, rescission or substitution of any Note, and in any event the Notes shall be considered to be a continuation of the same obligations.

54

[New York #1699265 v7]

# ARTICLE 10
## GENERAL PROVISIONS

SECTION 10.01.  Trust Indenture Act Controls.

If any provision of this Indenture limits, qualifies or conflicts with the duties imposed by TIA § 318(c), such duties imposed by such section of the TIA shall control.  If any provision of this Indenture expressly modifies or excludes any provision of the TIA that may be so modified or excluded, the Indenture provision so modifying or excluding such provision of the TIA shall be deemed to apply.

SECTION 10.02.  Notices.

Any notice or communication by the Issuer, any Guarantor or the Trustee shall be in writing and delivered in person or mailed by first-class mail, with postage prepaid, or sent by facsimile or overnight air couriers guaranteeing next day delivery, to such other's address as stated in Section 10.09.  The Issuer, any Guarantor or the Trustee by notice to the other may designate additional or different addresses for subsequent notices or communications.

All notices and communications (other than those sent to holders of Notes) shall be deemed to have been duly given at the time of delivery or upon receipt of a facsimile transmission.  However, any delivery made or facsimile sent on a day other than a business day in New York shall be deemed to be received on the next following business day in New York, any delivery made or facsimile sent on a day other than a business day in Toronto, Ontario shall be deemed to be received on the next following business day in Toronto, Ontario and any delivery made or facsimile sent on a day other than a business day in Richardson, Texas shall be deemed to be received on the next following business day in Richardson, Texas.

Any notice or communication to a holder of a Note shall be mailed by first-class mail, with postage prepaid, to his or her address shown on the Register kept by the Registrar.  Failure to mail a notice or communication to a holder or any defect in it shall not affect its sufficiency with respect to other holders.

If the regular mail service is suspended or for any other reason it shall be impracticable to give notice to holders by mail, then such notification to holders as shall be made with the approval of the Trustee shall constitute sufficient notification for every purpose hereunder.  If a notice or communication is sent in the manner provided above within the time prescribed, it is duly given, whether or not the addressee receives it.

If the Issuer sends a notice or communication to holders of Notes, it shall send a copy to the Trustee and each Agent at the same time.

All notices or communications shall be in writing and shall be in the English language.

55

[New York #1699265 v7]

SECTION 10.03.  Communication by Holders With Other Holders.

Holders may communicate pursuant to TIA § 312(b) with other holders with respect to their rights under this Indenture or the Notes.  The Issuer, the Trustee, the Registrar and anyone else shall have the protection of TIA § 312(c).

SECTION 10.04.  Certificate and Opinion as to Conditions Precedent.

Upon any request or application by the Issuer to the Trustee to take any action under this Indenture, the Issuer shall furnish to the Trustee:

(a)    an Officers' Certificate in form and substance reasonably satisfactory to the Trustee (which shall include the statements set forth in Section 10.05) stating that, in the opinion of such person, all conditions precedent and covenants, if any, provided for in this Indenture relating to the proposed action have been complied with; and

(b)    an Opinion of Counsel in form and substance reasonably satisfactory to the Trustee (which shall include the statements set forth in Section 10.05) stating that, in the opinion of such counsel, all such conditions precedent and covenants have been complied with.

SECTION 10.05.  Statements Required in Certificate or Opinion.

Each certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture (other than a certificate provided pursuant to TIA § 314(a)(4)) shall include:

(a)    a statement that the person making such certificate or opinion has read such covenant or condition;

(b)    a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(c)    a statement that, in the opinion of such person, he or she has made such examination or investigation as is necessary to enable him or her to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(d)    a statement as to whether or not, in the opinion of such person, such condition or covenant has been complied with.

Any Officers' Certificate may be based, insofar as it relates to legal matters, upon an Opinion of Counsel, unless such Authorized Officer knows that the opinion with respect to the matters upon which his or her certificate may be based as aforesaid is erroneous.  Any Opinion of Counsel may be based, insofar as it relates to factual matters, upon certificates, statements or opinions of, or representations by an officer or officers of the Issuer, or other persons or firms deemed appropriate by such counsel, unless such counsel knows that the certificates, statements or opinions or representations with respect to the matters upon which his or her opinion may be based as aforesaid are erroneous.

56

Any Officers' Certificate, statement or Opinion of Counsel may be based, insofar as it relates to accounting matters, upon a certificate or opinion of or representation by an accountant (who may be an employee of the Issuer), or firm of accountants, unless such Authorized Officer or counsel, as the case may be, knows that the certificate or opinion or representation with respect to the accounting matters upon which his or her certificate, statement or opinion may be based as aforesaid is erroneous.

SECTION 10.06. Legal Holidays.

A "Legal Holiday" is a Saturday, a Sunday or a day on which banking institutions in the City of New York or the city in which the Corporate Trust Office of the Trustee is located are not required to be open. If a payment date is a Legal Holiday at a place of payment, payment may be made at that place on the next succeeding Business Day, and no interest shall accrue for the intervening period. If any date specified in this Indenture, including, without limitation, a Redemption Date under Paragraph 5 of any of the Notes, is not a Business Day, then such date shall be the next succeeding Business Day.

SECTION 10.07. No Recourse Against Others.

No director, officer, employee, shareholder or Affiliate, as such, of the Issuer or any Guarantor from time to time shall have any liability for any obligations of the Issuer or the Guarantors under the Notes, the Guarantees or this Indenture or for any claim based on, in respect of, or by reason of such obligations or their creation. Each holder by accepting a Note waives and releases all such liability. This waiver and release are part of the consideration for the Notes. Each of such directors, officers, employees, shareholders and Affiliates is a third party beneficiary of this Section 10.07.

SECTION 10.08. Counterparts.

This Indenture may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

SECTION 10.09. Other Provisions.

The Issuer initially appoints the Trustee as Paying Agent, Registrar and authenticating agent.

The Trustee shall always have, or shall be a subsidiary of a bank or bank holding company which has, a combined capital and surplus of at least $5,000,000 as set forth in its most recent published annual report of condition.

The Issuer's address is:

      Nortel Networks Corporation
      195 The West Mall
      Toronto, Ontario, Canada
      ON M9C 5K1

[New York #1699265 v7]

Attention: Corporate Secretary
Facsimile: (905) 863-7386
Telephone:  (905) 863-7000

NNL's address is:

Nortel Networks Limited
195 The West Mall
Toronto, Ontario, Canada
ON M9C 5K1

Attention: Corporate Secretary
Facsimile: (905) 863-7386
Telephone:  (905) 863-7000

NNI's address is:

2221 Lakeside Boulevard
Richardson, Texas 75082-4399
Attention: Corporate Secretary
Facsimile (615) 432-4067
Telephone:  (615) 432-4000

The Trustee's address is:

The Bank of New York
101 Barclay Street, 4E
New York, New York  10286
Attention: Corporate Trust Department
Facsimile (212) 815-5366
Telephone: (212) 815-5213

## SECTION 10.10.  Governing Law, Etc.

This Indenture, the Notes and the Guarantees shall be governed by and construed in accordance with the laws of the State of New York, but without giving effect to applicable principles of conflicts of law to the extent that the application of the law of another jurisdiction would be required thereby.

Each of the Issuer and NNL has appointed CT Corporation System with offices at 111 Eighth Avenue, 13th Floor, New York, New York, 10011 as its authorized agent (the "Authorized Agent") upon whom all writs, process and summonses may be served in any suit, action or proceeding arising out of or based upon this Indenture or the Notes which may be instituted in any state or U.S. federal court in the City of New York, New York.  The Issuer and NNL hereby represent and warrant that the Authorized Agent has accepted such appointment and has agreed to act as said agent for service of process, and the Issuer and the Guarantors agree to take any and all action, including the filing of any and all documents, that may be reasonably necessary to continue each such appointment in full force and effect as aforesaid so long as the

58

Notes remain outstanding. The Issuer and NNL agree that the appointment of the Authorized Agent shall be irrevocable so long as any Notes remain outstanding or until the irrevocable appointment by the Issuer and the Guarantors of a successor agent in the City of New York, New York as each of their authorized agent for such purpose and the acceptance of such appointment by such successor. Service of process upon the Authorized Agent shall be deemed, in every respect, effective service of process upon the Issuer and the Guarantors.

Each of the Issuer and the Guarantors hereby:

(a)     agrees that any suit, action or proceeding against it arising out of or relating to this Indenture or the Notes, as the case may be, may be instituted in any U.S. federal or state court sitting in the City of New York,

(b)     waives to the extent permitted by applicable law, any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding, and any claim that any suit, action or proceeding in such a court has been brought in an inconvenient forum,

(c)     irrevocably submits to the non-exclusive jurisdiction of such courts in any suit, action or proceeding, and

(d)     agrees that service of process by mail to the addresses specified herein shall constitute personal service of such process on it in any such suit, action or proceeding.

SECTION 10.11. WAIVER OF JURY TRIAL.

EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO A TRIAL BY JURY (BUT NO OTHER JUDICIAL REMEDIES) IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS INDENTURE, THE NOTES OR THE TRANSACTIONS CONTEMPLATED THEREBY.

SECTION 10.12. No Adverse Interpretation of Other Agreements.

This Indenture may not be used to interpret another indenture, loan or debt agreement of the Issuer, any Guarantor or any Subsidiary of the Issuer or any Guarantor. Any such other indenture, loan or debt agreement may not be used to interpret this Indenture.

SECTION 10.13. Successors.

All agreements of the Issuer and the Guarantors in this Indenture, the Notes and the Guarantees shall bind their respective successors. All agreements of the Trustee in this Indenture shall bind its respective successors.

SECTION 10.14. Severability.

In case any provision in this Indenture or in the Notes or the Guarantees shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

59

SECTION 10.15.  Table of Contents, Headings, Etc.

The Table of Contents, Cross-Reference Table and headings of the Articles and Sections of this Indenture have been inserted for convenience of reference only, are not to be considered a part hereof and shall in no way modify or restrict any of the terms or provisions hereof.

SECTION 10.16.  Interest Act (Canada).

Solely for the purposes of disclosure pursuant to the Interest Act (Canada) and without affecting any calculation of interest required by this Indenture or the Notes, whenever any interest payable under this Indenture or the Notes is calculated using a rate based on a year of 360 days, such rate, when expressed as an annual rate, is equivalent to such rate multiplied by the number of days in the calendar year in which interest is paid divided by 360.

SECTION 10.17.  Acts of Holders.

(a)    Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such holders in person or by an agent duly appointed in writing. Except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Trustee and, where it is hereby expressly required, to the Issuer and the Guarantors or any of them. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the holders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and, subject to Section 7.01, conclusive in favor of the Trustee, the Issuer and the Guarantors, if made in the manner provided in this Section. The record of any meeting of holders of Notes shall be proved in the manner provided in Section 13.06.

(b)    The fact and date of the execution by any person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof. Where such execution is by a signer acting in a capacity, other than his individual capacity, such certificate or affidavit shall also constitute sufficient proof of his authority. The fact and date of the execution of any such instrument or writing, or the authority of the person executing the same, may also be proved in any manner that the Trustee deems sufficient.

(c)    The ownership of Notes shall be proved by the Register.

(d)    If the Issuer or any Guarantor shall solicit from the holders of Notes any Act, the Issuer or such Guarantor, as the case may be, may, at its option, by Board Resolution, fix in advance a record date for the determination of holders of Notes entitled to take such Act, but the Issuer or such Guarantor, as the case may be, shall have no obligation to do so. Any such record date shall be fixed at the discretion of the Issuer or such Guarantor, as the case may be. If such a record date is fixed, such Act may be sought or taken before or after the record date, but only the holders of record at the close of business on such record date shall be deemed to be holders for

60

the purpose of determining whether holders of the requisite proportion of the outstanding Notes have authorized or agreed or consented to such Act, and for that purpose the Notes shall be computed as of such record date.

(e)  Any Act of the holder of Notes shall bind every future holder of the Notes issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, suffered or omitted by the Trustee, the Issuer or the Guarantors in reliance thereon, whether or not notation of such action is made upon such Notes.

ARTICLE 11
COVENANT DEFEASANCE

SECTION 11.01.  Discharge by Deposit of Money or Notes.

(a)  In addition to the provisions of Article 8 relating to the satisfaction and discharge of this Indenture, the Issuer and the Guarantors may at any time omit to comply with, and all obligations, covenants and agreements of the Issuer and such Guarantor under this Indenture with respect to the Notes of any series and the Guarantees thereof or for the benefit of the holders thereof (except for those set forth in Article 12 or as to any surviving rights of registration of transfer or exchange of Notes or herein expressly provided for) shall cease, terminate and be discharged if:

(i)  the Issuer or any Guarantor has, at least 91 days prior thereto, irrevocably deposited with the Trustee, as specific security pledged for, and dedicated solely to, the due payment and ultimate satisfaction of its obligations under this Indenture with respect to the Notes of such series an amount of cash, and/or

(ii)  an amount of U.S. Government Obligations that are not subject to prepayment, redemption or call,

as will together with the predetermined and certain income to accrue thereon without consideration of any reinvestment thereof, be sufficient (in the case of such obligations, through the payment of interest and principal thereunder) to pay (A) the principal of and premium, if any and interest and Additional Interest, if any, on the Notes of such series, on the Maturity Date of such principal or interest or of any installment thereof, and (B) any mandatory prepayments or analogous payments applicable to such Notes on the day on which such payments are due and payable in accordance with the terms of this Indenture and such Notes;

(b)  the Issuer and the Guarantors shall have received an Opinion of Counsel to the effect that holders of the Notes will not recognize income, gain or loss for United States federal income tax purposes as a result of such deposit and defeasance in respect of the Issuer's and Guarantor's obligations and will be subject to United States federal income tax as if such deposit and defeasance had not occurred;

(c)  the Issuer and the Guarantors shall have received an Opinion of Counsel to the effect that the holders of the Notes affected will not recognize income (whether taxable to them by deduction or withholding by the Issuer or the Guarantor or otherwise), gain or loss for Canadian federal income tax purposes as a result of such deposit and defeasance in respect of the

61

Issuer's and Guarantor's obligations and will be subject to Canadian federal income tax as if such deposit and defeasance had not occurred;

(d)     such deposit will not result in a breach or violation of, or constitute a default under, this Indenture or any other material agreement or instrument to which the Issuer is a party or by which it is bound;

(e)     no Default or Event of Default shall have occurred and be continuing on the date of such deposit;

(f)     if the Notes are then listed on the NYSE, the Issuer shall have delivered to the Trustee an Opinion of Counsel to the effect that such deposit and defeasance will not cause the Notes to be delisted;

(g)     the Issuer or any Guarantor, as the case may be, shall have delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating compliance with all conditions precedent to the defeasance contemplated by Section 11.01; and

(h)     the deposit of funds shall not cause the Trustee to have a conflicting interest, within the meaning of this Indenture and the TIA.

Notwithstanding any defeasance under this Indenture with respect to the Notes, the obligation of the Issuer and the Guarantors to indemnify and compensate the Trustee under this Indenture and the obligations and rights of the Trustee shall survive with respect to the Notes.

SECTION 11.02.  Application of Trust Money.

All money deposited with the Trustee pursuant to Section 11.01 shall be held in trust and applied by it, in accordance with the provisions of the Notes of the relevant series and this Indenture and any applicable written direction of the Issuer or the Guarantors to the payment, either directly or through any Paying Agent (including the Issuer or any Guarantor acting as the Paying Agent), to the persons entitled thereto, of the principal (and premium, if any) and interest and Additional Interest, if any, for whose payment such money has been deposited with the Trustee.

SECTION 11.03.  Repayment to the Issuer or the Guarantor.

(a)     The Trustee and any Paying Agent shall promptly pay to the Issuer or a Guarantor upon the Issuer Request or Guarantor Request, as the case may be, any money or U.S. Governmental Obligations not required for the payment of the principal of and premium, if any and interest and Additional Interest, if any, on Notes for which currency or U.S. Government Obligations have been deposited pursuant to Section 11.01 held by them at any time.

(b)     The Trustee and any Paying Agent shall pay to the Issuer or a Guarantor upon the Issuer Request or Guarantor Request, as the case may be, any money held by them for the payment of principal and premium, if any and interest and Additional Interest, if any, that remains unclaimed for two years after the Maturity Date of the Notes for which a deposit has been made pursuant to Section 11.01. After such payment to the Issuer or such Guarantor, as the

62

[New York #1699265 v7]

case may be, the holders of Notes shall thereafter, as unsecured general creditors, look only to the Issuer or such Guarantor, as the case may be, for payment thereof.

ARTICLE 12
CONVERSION OF NOTES

SECTION 12.01. <u>Right to Convert</u>.

Subject to and upon compliance with the provisions of this Indenture, each holder of Notes shall, with respect to any Note, have the right, at his, her or its option, at any time on or before the close of business on the last Trading Day prior to the Maturity Date of such Note (except that, (a) with respect to any Note or portion thereof which is called for redemption prior to such date, such right shall terminate, except as provided in Section 12.02(d), before the close of business on the last Trading Day preceding the date fixed for redemption (unless the Issuer defaults in payment of the Redemption Price in which case the conversion right will terminate at the close of business on the date such default is cured) and (b) with respect to any Note or portion thereof subject to a duly completed election for repurchase, such right shall terminate on the close of business on the Change of Control Offer Termination Date (unless the Issuer defaults in the payment due upon repurchase or such holder elects to withdraw the submission of such election to repurchase)) to convert the principal amount of such Note held by such holder, or any portion of such principal amount which is $1,000 or an integral multiple thereof, into the number of fully paid and non-assessable Common Shares at the Conversion Rate in effect at such time with respect to such Note, by surrender of the Note so to be converted in whole or in part in the manner provided in Section 12.02.

A holder of Notes is not entitled to any rights of a holder of Common Shares until such holder of Notes has converted his or her or its Notes to Common Shares under this Article 12.

SECTION 12.02. <u>Exercise of Conversion Privilege; Issuance of Common Shares on Conversion; No Adjustment for Interest or Dividends</u>.

(a)     To exercise, in whole or in part, the conversion privilege with respect to any Note, the holder of such Note shall (i) if such Note is in certificated form, surrender such Certificated Note, duly endorsed, at the office of the Conversion Agent, accompanied by the funds, if any, required by Section 12.02(d), and (ii) give written notice of conversion in the form provided on the Notes (or such other notice which is acceptable to the Issuer) to the office of the Conversion Agent that the holder of Notes elects to convert such Note or such portion thereof specified in said notice. Such notice shall also state the name or names (with address or addresses) in which the certificate or certificates for Common Shares which are issuable on such conversion shall be issued, and shall be accompanied by transfer taxes, if required pursuant to Section 12.08. Each such Note surrendered for conversion shall, unless the Common Shares issuable upon conversion are to be issued in the same name as the registration of such Note, be duly endorsed by, or be accompanied by instruments of transfer in form satisfactory to the Issuer duly executed by, the holder of Notes or his or her duly authorized attorney. The holder of such Notes will not be required to pay any tax or duty which may be payable in respect of the issue or delivery of Common Shares upon conversion, but will be required to pay any tax or duty which may be

63

payable in respect of any transfer involved in the issue or delivery of Common Shares in a name other than the same name as the registration of such Note.

(b) As promptly as practicable, but no later than the third Business Day, after satisfaction of the requirements for conversion set forth above, the Issuer shall issue and shall deliver to such holder at the office or agency maintained by the Issuer for such purpose pursuant to Section 4.04, a certificate or certificates for the number of full Common Shares issuable upon the conversion of such Note or portion thereof in accordance with the provisions of this Article 12 and a check or cash in respect of any fractional interest in respect of a Common Share arising upon such conversion, as provided in Section 12.03 (which payment, if any, shall be paid no later than three Business Days after satisfaction of the requirements for conversion set forth above). Certificates representing Common Shares will not be issued or delivered unless all taxes and duties, if any, payable by the holder have been paid. In case any Note of a denomination of an integral multiple greater than $1,000 is surrendered for partial conversion, and subject to Section 2.01(b), the Issuer shall execute, and the Trustee shall authenticate and deliver to the holder of the Note so surrendered, without charge to him, her or it, a new Note or Notes of the same series in authorized denominations in an aggregate principal amount equal to the unconverted portion of the surrendered Note.

(c) Each conversion shall be deemed to have been effected as to any such Note (or portion thereof) on the date on which the requirements set forth above in this Section 12.02 have been satisfied as to such Note (or portion thereof), and the person in whose name any certificate or certificates for Common Shares are issuable upon such conversion shall be deemed to have become on said date the holder of record of the shares represented thereby; *provided, however,* that any such surrender on any date when the Issuer's stock transfer books are closed shall constitute the person in whose name the certificates are to be issued as the record holder thereof for all purposes on the next succeeding day on which such stock transfer books are open, but such conversion shall be at the Conversion Price in effect on the date upon which such Note is surrendered.

(d) Upon conversion of a Note (unless such conversion occurs between a Regular Record Date and the Interest Payment Date to which it relates), a holder will not receive any cash payment of interest and the Issuer shall not adjust the Conversion Rate to account for accrued and unpaid interest. Holders of Notes at the close of business on a Regular Record Date will receive payment of interest payable on the corresponding Interest Payment Date notwithstanding the conversion of such Notes at any time after the close of business on the applicable Regular Record Date. If a holder surrenders Notes for conversion after the close of business on any Regular Record Date but prior to the next Interest Payment Date, the Notes surrendered for conversion must be accompanied by payment of an amount equal to the interest that the holder of such Note is to receive on such Note on such Interest Payment Date; *provided, however,* that no such payment need be made (i) if the Issuer has made a Change of Control Offer pursuant to Section 4.06 hereof with a proposed Change of Control Payment Date that is after a Regular Record Date and on or prior to the next Interest Payment Date, (ii) only to the extent of overdue interest, if any overdue interest exists at the time of conversion with respect to such Note, (iii) solely with respect to a 2012 Note, if such 2012 Note is surrendered for conversion on or after April 1, 2011 and prior to April 15, 2011, and (iv) solely with respect to a 2014 Note, if the 2014 Note is surrendered for conversion on or after April 1, 2013 and prior to April 15, 2013.

64

[New York #1699265 v7]

Except as set forth in this Article 12 hereof, no other payments or adjustments for interest, or any dividends with respect to Common Shares, will be made upon conversion. The Issuer's delivery to a holder of the full number of Common Shares into which any Note is convertible and cash in lieu of any fractional Common Shares will satisfy the Issuer's obligation with respect to such Note, and any accrued but unpaid interest on any Note will be deemed to be paid in full upon conversion of such Note, rather than cancelled, extinguished or forfeited. A holder of Common Shares issued upon conversion will not be entitled to receive any dividends payable to a holder of Common Shares as of any record time or date before Common Shares are delivered to such holder upon conversion of such holder's Notes.

SECTION 12.03.  Cash Payments in Lieu of Fractional Common Shares.

No fractional Common Shares or scrip representing fractional Common Shares shall be issued upon conversion of Notes. If more than one Note shall be surrendered for conversion at one time by the same holder, the number of full Common Shares which shall be issuable upon conversion shall be computed on the basis of the aggregate principal amount of the Notes (or specified portions thereof to the extent permitted hereby) so surrendered for conversion. If any fractional Common Share otherwise would be issuable upon the conversion of any Note or Notes, the Issuer shall make an adjustment therefor in cash based upon the Last Reported Sale Price of the Common Shares on the last Trading Day prior to the date of conversion.

SECTION 12.04.  Conversion Price.

The Conversion Price applicable to the 2012 Notes shall be as specified in paragraph 16 of the form of Note attached as Exhibit A hereto, subject to adjustment as provided in this Article 12. The Conversion Price applicable to the 2014 Notes shall be as specified in paragraph 16 of the form of Note attached as Exhibit B hereto, subject to adjustment as provided in this Article 12.

SECTION 12.05.  Adjustment of Conversion Rate.

The Conversion Rate applicable to any series of Notes shall be adjusted from time to time by the Issuer as follows:

(a)    If the Issuer issues Common Shares to all holders of the Common Shares as a dividend or distribution on the Common Shares, or if the Issuer effects a stock split or stock combination, the Conversion Rate will be adjusted based on the following formula:

$$CR^1 = CR_0 \times \frac{OS^1}{OS_0}$$

where,

$CR_0$ = the Conversion Rate in effect immediately prior to the Ex-Dividend Date

$CR^1$ = the Conversion Rate in effect immediately after the Ex-Dividend Date

[New York #1699265 v7]

$OS_0$ = the number of Common Shares outstanding at the close of business on the Ex-Dividend Date

$OS^1$ = the number of Common Shares outstanding immediately after such event

(b)    In case of an issuance to all holders of Common Shares of any rights, options or warrants to purchase Common Shares for a period expiring 45 days or less from the date of issuance of such rights, options or warrants at less than the Last Reported Sale Price of the Common Shares on the Business Day immediately preceding the announcement of such issuance, in which event the Conversion Rate will be adjusted based on the following formula (provided that the Conversion Rate will be readjusted to the extent that such rights or warrants are not exercised prior to the expiration):

$$CR^1 = CR_0 \ \times \ \frac{OS_0 + X}{OS_0 + Y}$$

where,

$CR_0$ = the Conversion Rate in effect immediately prior to the Ex-Dividend Date

$CR^1$ = the Conversion Rate in effect immediately after the Ex-Dividend Date

$OS_0$ = the number of Common Shares outstanding at the close of business on the Ex-Dividend Date

$X$ = the total number of Common Shares issuable pursuant to such rights

$Y$ = the number of Common Shares equal to the aggregate price payable to exercise such rights divided by the average of the Last Reported Sale Prices of the Common Shares for the ten consecutive Trading Days prior to the Business Day immediately preceding the announcement of the issuance of such rights

(c)    In case of a dividend or other distribution to all holders of Common Shares of Capital Stock of the Issuer (other than Common Shares) or evidences of indebtedness of the Issuer or assets or property of the Issuer to all holders of Common Shares (excluding (x) any dividend, distribution or issuance covered by clause (a) or (b) above and (y) any dividend or distribution paid exclusively in cash), the Conversion Rate will be adjusted based on the following formula:

$$CR^1 = CR_0 \ \times \ \frac{SP_0}{SP_0 - FMV}$$

where,

66

$CR_0$ = the Conversion Rate in effect at the close of business immediately prior to the Ex-Dividend Date

$CR^1$ = the Conversion Rate in effect immediately after the Ex-Dividend Date

$SP_0$ = the Current Market Price

$FMV$ = the fair market value (as determined by the Issuer's Board of Directors) of the shares of Capital Stock, evidences of indebtedness, assets or property distributed with respect to each outstanding Common Share on the Ex-Dividend Date for such distribution

Notwithstanding the foregoing, the Conversion Rate will be adjusted based on the following formula with respect to an adjustment pursuant to this clause (c) where there has been a payment of a dividend or other distribution on Common Shares of Capital Stock of, or similar equity interests in, a Subsidiary or other business unit of the Issuer that is listed on a U.S. national securities exchange or the TSX:

$$CR^1 = CR_0 \times \frac{FMV_0 + MP_0}{MP_0}$$

where,

$CR_0$ = the Conversion Rate in effect immediately prior to the Ex-Dividend Date

$CR^1$ = the Conversion Rate in effect immediately after the Ex-Dividend Date

$FMV_0$ = the average of the sale prices of such Capital Stock or equity interest distributed to holders of the Common Shares applicable to one of the Common Shares over the 10 Trading Days commencing on and including the fifth Trading Day after the Ex-Dividend Date

$MP_0$ = the average of the Last Reported Sale Prices of the Common Shares over the 10 Trading Days commencing on and including the fifth Trading Day after the Ex-Dividend Date

(d)  In case of dividends or other distributions consisting exclusively of cash (excluding any cash distributed upon an amalgamation, merger, share exchange, consolidation or combination) to all holders of Common Shares, the Conversion Rate will be adjusted based on the following formula:

$$CR^1 = CR_0 \times \frac{SP_0}{SP_0 - C}$$

where,

67

[New York #1699265 v7]

$CR_0 =$ the Conversion Rate in effect immediately prior to the Ex-Dividend Date

$CR^1 =$ the Conversion Rate in effect immediately after the Ex-Dividend Date

$SP_0 =$ the Current Market Price

$C =$ the amount in cash per Common Share the Issuer distributes to holders of Common Shares (and for which no adjustment has been made)

(e)    In case the Issuer or one or more of its Subsidiaries make purchases of Common Shares pursuant to a tender offer or exchange offer by the Issuer or one or more of its Subsidiaries for Common Shares to the extent that the cash and value of any other consideration included in the payment per Common Share exceeds the Current Market Price per Common Share on the Trading Day next succeeding the last date on which tenders or exchanges may be made pursuant to such tender or exchange offer (the "Expiration Date"), the Conversion Rate will be adjusted based on the following formula:

$$CR^1 = CR_0 \times \frac{FMV + (SP^1 \times OS^1)}{OS_0 \times SP^1}$$

where,

$CR_0 =$ the Conversion Rate in effect on the Expiration Date

$CR^1 =$ the Conversion Rate in effect immediately after the Expiration Date

$FMV =$ the fair market value (as determined by the Issuer's Board of Directors) of the aggregate value of all cash and any other consideration paid or payable for Common Shares validly tendered or exchanged and not withdrawn as of the Expiration Date (the "purchased shares")

$OS^1 =$ the number of Common Shares outstanding immediately after the Expiration Date less any purchased shares

$OS_0 =$ the number of Common Shares outstanding immediately after the Expiration Date, including any purchased shares

$SP^1 =$ the Last Reported Sale Price of the Common Shares on the Trading Day next succeeding the Expiration Date

(f)    To the extent the holders of Notes may participate on an as-converted basis equally with the holders of Common Shares in any event or occurrence, then clauses (a) through (e) of this Section 12.05 hereof shall not apply to such event or occurrence.

(g)    For the avoidance of doubt, no payment or issuance of securities to any plaintiffs or their counsel under the Global Class Action Settlement shall result in any of the adjustments to the Conversion Rate set forth in clauses (a) through (e) of this Section 12.05.

68

(h)    To the extent that the Issuer has a shareholder rights plan in effect upon conversion of the Notes into Common Shares, holders will receive, in addition to the Common Shares, the rights under the rights plan, unless prior to any conversion, the rights have separated from the Common Shares, in which case the Conversion Rate will be adjusted at the time of separation as if the Issuer distributed, to all holders of Common Shares, any Capital Stock, evidences of indebtedness or assets or property as described above, subject to readjustment in the event of the expiration, termination or redemption of such rights.

(i)    The Issuer may from time to time, to the extent permitted by law and subject to applicable rules of any Applicable Securities Exchange, increase the Conversion Rate of the Notes of any series by any amount for any period of at least 20 days; provided that the Issuer gives at least 15 days' prior notice of such increase to the Trustee and holders of the Notes of such series. The Issuer may make such increases in the Conversion Rate, in addition to those set forth above, as the Issuer's Board of Directors deems advisable to avoid or diminish any income tax to holders of Common Shares resulting from any dividend or distribution of Common Shares (or rights to acquire Common Shares) or from any event treated as such for income tax purposes.

(j)    The Issuer will not be required to adjust the Conversion Rate for any of the transactions described in clauses (a) through (e) of this Section 12.05 if the Issuer instead makes proper provision so that each holder of Notes who converts a Note shall be entitled to receive upon conversion, in addition to Common Shares, the amount and kind of distributions that the holder would have been entitled to receive if the holder had converted the Note immediately prior to the date fixed for determining the shareholders entitled to receive the distribution; *provided, however*, that if, prior to the date that is five years from the Issue Date, holders of Notes would otherwise be entitled to receive, upon conversion of the Notes, any property (including cash) or securities that would not constitute "prescribed securities" for the purpose of clause 212(1) (b) (vii) (E) of the Income Tax Act (Canada), or Tax Act (the "Ineligible Consideration"), pursuant to the operation of the foregoing provisions, such holders shall not be entitled to receive such Ineligible Consideration but the Issuer or the Issuer's successor, as the case may be, shall have the right (at the sole option of the Issuer or its successor, as the case may be) only on the date any Ineligible Consideration would otherwise be due, to deliver either such Ineligible Consideration or "prescribed securities" with a market value comparable to such Ineligible Consideration.

(k)    Notwithstanding the foregoing, no adjustment in the Conversion Price on any Note will be required under clauses (a) through (e) of this Section 12.05 unless such adjustment would require a change of at least 1% of the Conversion Price then in effect with respect to such Note; provided that the Issuer will (i) carry forward any adjustments that are less than 1% of the Conversion Rate with respect to such Note and take them into account when determining subsequent adjustments, (ii) make any carry forward adjustments not otherwise effected with respect to any series of Notes upon conversion of any Notes of such series upon (x) a conversion after a call for redemption of any Notes of such Series, (y) any Change of Control Payment Date applicable to such series of Notes and (z) five Business Days prior to the Maturity Date applicable to such series of Notes.

69