Exhibit B

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | District of Delaware | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: <br> Nortel Networks Capital Corporation f/k/a Northern Telecom Capital Corporation | Case Number: <br> 09-10139 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): <br> Law Debenture Trust Company of New York | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent: <br> Law Debenture Trust Company of New York <br> c/o Robert L. Bice, II, Senior Vice President <br> 400 Madison Avenue, 4th Floor, New York, NY 10017; Fax: (212) 750-1361 <br><br> Telephone number: <br> (212) 750-6474          Email: robert.bice@lawdeb.com | Court Claim Number:_____ <br> *(If known)* <br><br> Filed on:_____ |
| Name and address where payment should be sent (if different from above): <br> Same as above. <br> Information regarding the claim can also be emailed Mr. Bice at: robert.bice@lawdeb.com. <br><br> Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. <br><br> ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $_____150,986,875.00___ (Liquidated) <br> See attachments for explanation of Liquidated and Unliquidated Claim. <br> If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. <br><br> If all or part of your claim is entitled to priority, complete item 5. <br><br> ☑Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. See attached Addendum | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** <br><br> Specify the priority of the claim. <br><br> ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:**   See attached Addendum_____ <br> (See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:**   N/A <br><br>     **3a. Debtor may have scheduled account as:**   See Addendum_____ <br>       (See instruction #3a on reverse side.) | |
| **4. Secured Claim (See instruction #4 on reverse side.)** <br> Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. <br><br> **Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other <br> **Describe:** <br><br> **Value of Property:**$_____ **Annual Interest Rate**_____% <br><br> **Amount of arrearage and other charges as of time case filed included in secured claim,** <br><br> **if any:** $_____ **Basis for perfection:** _____ <br><br> **Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). <br><br> ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). <br><br> ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| **7. Documents:** Attach redacted copies of any documents ~~such as promissory notes, purchase~~ orders, invoices, itemized statements of running account~~s, contracts, judgments, mortgages, and security agreements.~~ You may also attach a summary. Attach redacted cop~~ies of documents providing evidence of perfection of~~ a security interest. You may also attach a summary. (~~See instruction 7 and definition of "redacted" on reverse side.~~) <br><br> DO NOT SEND ORIGINAL DOCUMENTS. ATTA~~CHED DOCUMENTS MAY BE DESTROYED AFTER~~ SCANNING. <br><br> If the documents are not available, please explain: Please see attached Addendum | **Amount entitled to priority:** <br><br> $_____ <br><br> *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

Filed: USBC - District of Delaware
Nortel Networks Inc., Et Al.
09-10138 (KG)          0000003946

| | |
|---|---|
| **Date:** <br> 09/25/2009 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *[signature]* <br><br> Mr. Robert L. Bice, II, Senior Vice President, Law Debenture Trust Company of New York |

| | |
|---|---|
| | FOR COURT USE ONLY <br> **FILED / RECEIVED** <br><br> SEP 2 8 2009 <br><br> EPIQ BANKRUPTCY SOLUTIONS, LLC |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§152 and 3571.

## ADDENDUM TO PROOFS OF CLAIM

Law Debenture Trust Company of New York, ("Law Debenture") hereby submits this addendum (the "Addendum") in support of and incorporated by this reference within and expressly made a part of each of its proofs of claim (the "Proofs of Claim") against each of Nortel Networks Capital Corporation ("NNCC") f/k/a Northern Telecom Capital Corporation., Case No. 09-10139 and Nortel Networks Limited ("NNL") f/k/a Northern Telecom Limited, Case No. 09-CL-7950, and in support thereof states as follows.

1.      On January 14 2009 (the "Petition Date"), Nortel Networks, Inc. ("NNI") and fourteen of its subsidiaries, including NNCC (collectively, the "US Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "US Bankruptcy Court"). The US Debtors' cases are being jointly administered for procedural purposes under Nortel Networks Inc., Case No. 09-10138 (collectively, the "US Proceedings"). Also on January 14, 2009, the US Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNL, and certain of their affiliates (collectively, the "Canadian Debtors") filed an application with the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) ("CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").

2.      The US Proceedings are being managed by the US Debtors as debtors-in-possession. The Canadian Court appointed Ernst & Young Inc. to serve as Monitor for the Canadian Debtors in the Canadian Proceedings. On January 14, 2009, Ernst & Young Inc., as foreign representative for the Canadian Debtors, filed petitions for recognition of the

Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code with the Bankruptcy Court for the District of Delaware.

3.     On July 15, 2009, the US Debtors filed a motion ("Bar Date Motion") seeking entry of an Order establishing deadlines and procedures for filing proofs of claim or interest in the US Proceedings (Dkt. No. 1084). In an Order dated August 4, 2009 (the "US Claims Procedure Order"), the US Bankruptcy Court set September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) as the deadline for creditors to assert claims against the US Debtors arising prior to the Petition Date. On July 30, 2009, the Canadian Court approved and issued the Claims Procedure Order (the "Canadian Claims Procedure Order") setting a general claims bar date against the Canadian Debtors of September 30, 2009 at 4:00 p.m. (prevailing Eastern Time).

4.     Law Debenture is successor indenture trustee ("Successor Trustee")[1] to The Bank of New York Mellon, formerly known as The Bank of New York,[2] with respect to $150,000,000 in 7.875% senior unsecured debt securities due June 15, 2026 (the "Debt Securities") issued by NNL and NNCC, and guaranteed by NNL. A true and correct copy of the Indenture dated February 15, 1996 by and between NNL and NNCC as Issuers, NNL as Guarantor, and The Bank of New York as Trustee, as amended and supplemented from time to time (the "Indenture"), with respect to the Debt Securities is attached hereto for reference purposes at "**Exhibit B**".

---

[1]     Under the Indenture, as defined below, the Successor Trustee is vested with the same rights, powers and obligations as the predecessor Trustee. The Indenture provides that "every such successor Trustee . . . shall execute, acknowledge and deliver to [NNCC and NNL] and to the retiring Trustee an instrument accepting such appointment, and thereupon . . . the successor trustee, without any further act, deed or conveyance, shall become vested with all of the rights, powers, trusts and duties of the retiring Trustee. *See, e.g.*, Indenture, Section 607(f), pp. 42-43.

[2]     *See* Agreement of Resignation, Appointment and Acceptance dated February 12, 2009 (the "Successor Trustee Agreement") by and between NNCC, NNL, The Bank of New York, and Law Debenture, a true and correct copy of which is attached hereto for reference purposes at "**Exhibit A**."

5.     As Successor Trustee, Law Debenture is entitled to file proofs of claim on behalf of the holders of the Debt Securities under the Indenture[3] as well as under the US and Canadian Claims Procedure Orders.[4]  As of the Petition Date, the amount outstanding on the Debt Securities under the Indenture was **$150,986,875.00** (the "Liquidated Claim"). The Liquidated Claim consists of (i) the outstanding principal balance ($150,000,000) and interest amount ($984,375.00)[5] due and owing under the Indenture on the Debt Securities; (ii) amounts due and owing to The Bank of New York and/or the Successor Trustee[6] for fees and expenses under the Indenture, $2,500.00;[7] and (iii) amounts due and owing for fees and expenses of agents and counsel of The Bank of New York and/or the Successor

---

[3]     Specifically, the Indenture provides that in case of bankruptcy of the Issuers, "the Trustee may file such proofs of claim and other papers or documents as may be necessary or advisable to have the claims of the Trustee and the Holders allowed in any judicial proceedings relative to the applicable Issuer or the Guarantor . . . its creditors or its property." Indenture, Section 510, p. 38.

[4]     See, e.g., Order Establishing Deadlines for Filing Proofs of Claims and Approving Form and Manner of Notice Thereof entered in the US Proceedings on August 4, 2009 (Paragraph 6(j) authorizing and requiring Indenture Trustees to file "a single proof of claim pursuant to section 501(a) of the Bankruptcy Code, on or before the General Bar Date, on account of the Note Claims against the Debtors under their respective Note Indentures." See also Claims Procedures Order entered in the Canadian Proceedings on July 30, 2009 (Paragraph 13 providing that each "Bondholder Trustee is authorized and directed to file one or more Proofs of Claim on or before the Prefiling Claims Bar Date (September 30, 2009 at 4 p.m. Eastern Time) in respect of all of the Bonds for which such Bondholder Trustee acts . . .").

[5]     For purposes of the Proofs of Claim, the Successor Trustee has included only interest due and payable as of the Petition Date.  Interest was calculated at 7.875% for a period of 30 days from the date of last interest payment (December 15, 2008) through the Petition Date (January 14, 2009).  See also Reservation of Rights below.

[6]     Law Debenture was appointed as Successor Trustee after the Petition Date.  As described below, given Law Debenture's continuing role as Successor Trustee, the amount of its fees and expenses continues to accrue and is unliquidated at this time.

[7]     The amount noted above includes fees and expenses payable as of the Petition Date for The Bank of New York, as preceding trustee.  The Indenture provides that the " the Issuers shall pay to the Trustee from time to time compensation for its services as agreed separately by the Issuers and the Trustee."  Indenture, Section 606(a), p.41.  The Indenture further provides that "the Issuers agree to reimburse the Trustee upon its request for all reasonable and documented expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable and documented compensation, expenses and disbursements of its agents and counsel) . . . ." Indenture, Section 606(c), p.41. See also Section 505 of the Indenture which provides that any money collected by the Trustee under Article five of the Indenture (dealing with defaults) shall be applied "first: to the payment of all amounts due the Trustee under Section 606."

Trustee under the Indenture, $0.00.[8]  In addition, Law Debenture asserts an unliquidated

claim (the "Unliquidated Claim," and, together with the Liquidated Claim, the "Law

Debenture Claim") in the amount of the Successor Trustee's fees and expenses and its

counsel and agents' fees and expenses incurred post-petition in the enforcement of rights

and remedies under the Indenture.[9]  Law Debenture asserts a general unsecured claim

against each of NNCC[10] and NNL[11] in the amount of the Law Debenture Claim.  The Law

Debenture Claim is jointly and severally payable by each of NNCC and NNL.[12]

---

[8]        As of the date of the filing of the Law Debenture Claim, Law Debenture was not aware of any pre-petition agents and counsel fees incurred by The Bank of New York as preceding trustee. To the extent any such amounts are discovered to be due and outstanding, Law Debenture reserves the right to supplement its claims. The Successor Trustee has retained Dewey & LeBouef LLP to represent it in the US and Canadian Debtors' bankruptcy cases. As noted in the reservation of rights below, to the extent any such amounts are later brought to the attention of Law Debenture, Law Debenture reserves the right to amend and supplement its Proofs of Claim to include such amounts.

[9]        *See, e.g., Travelers Cas. & Sur. Co. of Am. v. PG&E,* 549 U.S. 443 (2007) (providing for allowance and payment of post-petition attorneys fees and expenses asserted as part of a pre-petition contract and claim); *see also Ades & Berg Group Investors v. Breeden (In re Ades & Berg Group Investors),* 550 F.3d 240 (2d Cir. 2008) (same). *But, see,* Reservation of Rights below regarding assertion of such claims as administrative expenses as provided under the Indenture. As noted above, Law Debenture's agents and counsel fees continue to accrue during the pendency of the US and Canadian Proceedings.

[10]        The Indenture provides that "the applicable Issuer (NNCC and NNL) covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities in accordance with their terms and this Indenture. Indenture, Section 1001, p. 51. Schedule F-1 for NNCC lists a general, unsecured claim for Law Debenture in the aggregate amount of $150,951,562.50.

[11]        The Indenture provides that "the Guarantor (NNL) by its execution of this Indenture hereby agrees with each Holder of a Guaranteed Debt Security of each series authenticated and delivered by the Trustee and with the Trustee on behalf of each such Holder, to be unconditionally bound by the terms and provisions of the Guarantees set forth below and authorizes the Trustee to confirm such Guarantees to the Holder of each such Guaranteed Debt Security . . . ." Indenture, Section 203, p.15. The Indenture further provides, in that same section, the terms of the guaranty, which includes, in relevant part, the following: "for value received, [NNL] . . . hereby unconditionally guarantees to the Holder of the Guaranteed Debt Security . . . and to the Trustee . . . the due and punctual payment of the principal of, premium, if any, and interest on such Guaranteed Debt Security . . . when and as the same shall become due and payable . . . In case of the failure of [NNCC] . . . punctually to make any such payment of principal, premium, if any, or interest . . . the Guarantor hereby agrees to cause any such payment to be made punctually when and as the same shall become due and payable . . . ." Indenture, Section 203, pp. 15-16.

[12]        The Indenture further provides, for example, that "the Guarantor hereby agrees that its obligations . . . . shall be as if it were principal debtor and not merely surety, and shall be absolute and unconditional, irrespective of, and shall be unaffected by, any invalidity, irregularity or unenforceability of such Guaranteed Debt Security or such Indenture . . . ." Indenture, Section 203, pp. 15-16. The Indenture also provides that the "Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of merger or bankruptcy . . . any right to require a proceeding first against the Borrower (NNCC) . . .

### Reservation of Other Claims and Rights

1.      Nothing contained in the Proofs of Claim or herein shall affect the right of any holder of a Debt Security to file its own proof(s) of claim against one or more of the US or Canadian Debtors, including, but not limited to NNCC and NNL, or to separately vote the amount of its respective claim(s) with regard to any plan of reorganization (or liquidation) or similar process for which solicitation of acceptances will be sought in the US Proceedings or in the Canadian Proceedings.

2.      Nothing in or relating to the Proofs of Claim or this Addendum is intended to or shall limit or affect the right of Law Debenture as Successor Trustee to seek payment and reimbursement of its fees and expenses and its agents and counsel's fees and expenses as administrative expenses in the US Proceedings or the Canadian Proceedings.[13]

3.      Nothing in this Addendum or the Proofs of Claim shall be deemed to waive the Successor Trustee or any individual holders' arguments toward payment in full of all post-petition interest due and payable under the Indenture (or at the legal rate)[14] to the extent subsequently permitted in the US Proceedings or Canadian Proceedings, whether as a result that some or all of the US Debtors or Canadian Debtors, including NNCC and NNL, are deemed solvent (payable, for instance, under section 726(a)(5) of the Bankruptcy Code made applicable to chapter 11 cases) or for any other legal or equitable reason.

---

and covenants that this Guarantee will not be discharged except by payment in full of the principal of, premium, if any, and interest on such Guaranteed Debt Security." *Id.*

[13]      The Indenture provides that "when the Trustee incurs expenses or renders services in connection with an Event of Default specified in Section 501(5) (dealing, for example, with involuntary bankruptcy) or Section 501(6) (dealing, for example, with voluntary bankruptcy), the reasonable and documented expenses (including the reasonable and documented charges and expenses of its counsel) and compensation for the services are intended to constitute expenses of administration under any applicable Federal or state bankruptcy, insolvency or other similar law." Indenture, Section 606(d), p. 41.

[14]      *See, e.g.,* 11 U.S.C. §726(a)(5).

4.      In addition to the foregoing, Law Debenture expressly reserves its rights, remedies, interests, priorities, protections, and claims against each of the US and Canadian Debtors, including, but not limited to NNCC and NNL, under the Bankruptcy Code, including Sections 510, 544, 545, 548, 549, and 550 thereof, and any applicable provisions under the CCAA.

5.      Law Debenture reserves the right to amend and/or supplement each Proof of Claim and to file additional claims against any of the US or Canadian Debtors, including, but not limited to, NNCC and NNL, whether arising from the Indenture or otherwise, for any reason whatsoever.

6.      The filing of these Proofs of Claim is not and shall not be construed as (1) an election of remedy; (2) a waiver of jury trial rights; or (3) a waiver or limitation of any right, interest, or cause of action held by Law Debenture in the US or Canadian Proceedings.

*[Space Left Intentionally Blank]*

7.    Law Debenture further reserves any and all rights against parties other than the US and Canadian Debtors based on the foregoing facts and circumstances.

Law Debenture Trust Company of New York

_____

By:  Robert L. Bice II
Its:  Senior Vice President
Dated:  September 25, 2009

**EXHIBIT A**

**THE SUCCESSOR TRUSTEE AGREEMENT**

AGREEMENT OF RESIGNATION, APPOINTMENT AND ACCEPTANCE, dated as of February 12, 2009 among NORTEL NETWORKS LIMITED, formerly known as NORTHERN TELECOM LIMITED, a Canadian corporation (the "Guarantor"), NORTEL NETWORKS CAPITAL CORPORATION, formerly known as NORTHERN TELECOM CAPITAL CORPORATION, a Delaware corporation (the "Issuer"), THE BANK OF NEW YORK MELLON, formerly known as The Bank of New York, a national banking association duly organized and existing under the laws of the United States of America, having its corporate trust office at 101 Barclay Street New York, New York 10286 (the "Resigning Trustee"), and LAW DEBENTURE TRUST COMPANY OF NEW YORK, a New York banking corporation duly organized and existing under the laws of the State of New York and having a corporate trust office at 400 Madison Avenue, 4th Floor, New York, New York 10017, as successor Trustee (the "Successor Trustee").

## RECITALS:

WHEREAS, there was originally authorized and issued $150 million aggregate principal amount of the Issuer's 7.875% Notes due 2026, fully and unconditionally guaranteed by the Guarantor (the "Securities"), under an Indenture, dated as of February 15, 1996 (the "Indenture"), between the Issuer, the Guarantor and the Resigning Trustee;

WHEREAS, an Event of Default under the Indenture has occurred and is continuing;

WHEREAS, Section 607 of the Indenture provides that the Trustee may resign at any time by so notifying the Issuer and the Guarantor ;

WHEREAS, Section 607 of the Indenture further provides that, if the Trustee shall resign, the Issuer shall promptly appoint a successor Trustee;

WHEREAS, Section 607 of the Indenture further provides that the successor Trustee shall deliver a written acceptance of its appointment to the retiring Trustee and to the Issuer and the Guarantor ;

WHEREAS, in accordance with Section 607 of the Indenture, the resignation or removal of the retiring Trustee shall become effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under the Indenture, upon the acceptance by a successor Trustee of its appointment as a successor Trustee;

WHEREAS, Section 609 of the Indenture provides that the Trustee (i) must satisfy with the requirements of Section 310(a)(1) of the Trust Indenture Act; (ii) at all times shall have a combined capital and surplus of at least $5 million, calculated as permitted by Section 310(a)(2) of the Trust Indenture Act; and (iii) is subject to Section 310(b) of the Trust Indenture Act including the optional provision permitted by the second sentence of Section 310(b)(9) of the Trust Indenture Act;

WHEREAS, the Resigning Trustee was appointed Registrar and Paying Agent under the Indenture; and

WHEREAS, the Resigning Trustee wishes to resign as Trustee, Registrar and Paying Agent under the Indenture; the Issuer wishes to appoint the Successor Trustee to succeed the Resigning Trustee as Trustee, Registrar and Paying Agent under the Indenture; and the Successor Trustee meets the qualification and eligibility requirements of Section 609 of the Indenture and wishes to accept its appointment as Trustee, Registrar and Paying Agent under the Indenture;

NOW, THEREFORE, the Issuer, the Guarantor, the Resigning Trustee and the Successor Trustee, for and in consideration of the premises and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby consent and agree as follows:

ARTICLE ONE
THE RESIGNING TRUSTEE

Section 101. Pursuant to Section 607 of the Indenture, the Resigning Trustee has notified the Issuer and the Guarantor that the Resigning Trustee is resigning as the Trustee, Registrar and Paying Agent under the Indenture.

Section 102. The Resigning Trustee hereby represents and warrants to the Successor Trustee that:

(a) No covenant or condition contained in the Indenture has been waived by the Resigning Trustee or, to the best of the knowledge of the responsible officers of the Resigning Trustee's corporate trust department, by the Holders of the percentage in aggregate principal amount of the Securities required by the Indenture to effect any such waiver.

(b) There is no action, suit or proceeding pending or, to the best of the knowledge of the responsible officers assigned to the Resigning Trustee's corporate trust department, threatened against the Resigning Trustee before any court or any governmental authority arising out of any action or omission by the Resigning Trustee as the Trustee under the Indenture.

(c) The Resigning Trustee does not and as of the Effective Date (as defined in Section 402) will not hold any property under the Indenture.

(d) This Agreement has been duly authorized, executed and delivered on behalf of the Resigning Trustee.

(e) The current outstanding principal amount of the Securities as of the Effective Date is $150,000,000.

(f) Interest on the Securities was paid to November 15, 2008.

(g) The name and contact information of the registered holders and known beneficial holders of the Securities are listed on Schedule I.

(h) The Event of Default is based on Section 501 (5) of the Indenture.

Section 103. The Resigning Trustee hereby assigns, transfers, delivers and confirms to the Successor Trustee all right, title and interest of the Resigning Trustee in and to the trust under the Indenture and all the rights, powers and trusts of the Trustee, Registrar and Paying Agent under the Indenture. The Resigning Trustee shall execute and deliver such further instruments and shall do such other things as the Successor Trustee may reasonably require so as to more fully and certainly vest and confirm in the Successor Trustee all the rights, trusts and powers hereby assigned, transferred, delivered and confirmed to the Successor Trustee as the Trustee, Registrar and Paying Agent.

Section 104. The Resigning Trustee shall deliver to the Successor Trustee, as of or immediately after the effective date hereof, all of the documents listed on Exhibit A hereto.

2

ARTICLE TWO
THE ISSUER AND THE GUARANTOR

Section 201. Each of the Issuer and the Guarantor hereby certifies that it is, and the officers of each of the Issuer and the Guarantor who have executed this Agreement are, duly authorized to: (a) accept the Resigning Trustee's resignation as Trustee, Registrar and Paying Agent under the Indenture; (b) appoint the Successor Trustee as Trustee, Registrar and Paying Agent under the Indenture; and (c) execute and deliver such agreements and other instruments as may be necessary or desirable to effectuate the succession of the Successor Trustee as Trustee, Registrar and Paying Agent under the Indenture.

Section 202. Each of the Issuer and the Guarantor hereby accept the resignation of the Resigning Trustee as Trustee, Registrar and Paying Agent under the Indenture. Pursuant to Section 607 of the Indenture, the Issuer hereby appoints the Successor Trustee as Trustee, Registrar and Paying Agent under the Indenture and confirms to the Successor Trustee all the rights, powers and duties of the Resigning Trustee under the Indenture and with respect to all property and money held by such Resigning Trustee under the Indenture, with like effect as if the Successor Trustee was originally named as Trustee, Registrar and Paying Agent under the Indenture. Each of the Issuer and the Guarantor shall execute and deliver such further instruments and shall do such other things as the Successor Trustee may reasonably require so as to more fully and certainly vest and confirm in the Successor Trustee all the rights, powers, and duties hereby assigned, transferred, delivered and confirmed to the Successor Trustee.

Section 203.

(a) The Issuer hereby represents and warrants to the Successor Trustee that it is a corporation duly formed and validly existing under the laws of the State of Delaware.

(b) The Guarantor hereby represents and warrants to the Successor Trustee that it is a corporation duly incorporated and validly existing under the laws of Canada.

(c) Each of the Issuer and the Guarantor represents and warrants to the Successor Trustee that (i) the Indenture was validly and lawfully executed and delivered by the Issuer and the Guarantor and is in full force and effect; and (ii)the Securities are validly issued securities of the Issuer.

ARTICLE THREE
THE SUCCESSOR TRUSTEE

Section 301. The Successor Trustee hereby represents and warrants to the Resigning Trustee and to the Property Trustee that:

(a)     The Successor Trustee is qualified and eligible under the provisions of Section 609 of the Indenture to act as the Trustee under the Indenture.

3

(b)    This Agreement has been duly authorized, executed and delivered on behalf of the Successor Trustee.

Section 302.  The Successor Trustee hereby accepts its appointment as the successor Trustee, Registrar and Paying Agent under the Indenture and accepts the rights, powers, duties and obligations of the Resigning Trustee as the Trustee, Registrar and Paying Agent under the Indenture, upon the terms and conditions set forth therein, with like effect as if originally named as the Trustee, Registrar and Paying Agent under the Indenture.

Section 303.  References in the Indenture to "Corporate Trust Office" or other similar terms shall be deemed to refer to the Corporate Trust Office of the Successor Trustee at 400 Madison Avenue, 4th Floor, New York, NY  10017 or any other office of the Successor Trustee at which, at any particular time, its corporate trust business shall be administered.

Section 304.  Promptly after the execution and delivery of this Agreement, the Successor Trustee, on behalf of the Issuer, shall cause a notice, the form of which is annexed hereto marked Exhibit B to be sent to all Holders in the manner provided in Section 607 of the Indenture.


ARTICLE FOUR
MISCELLANEOUS

Section 401.  Except as otherwise expressly provided herein or unless the context otherwise requires, all terms used herein which are defined in the Indenture shall have the meaning assigned to them in the Indenture.

Section 402.  This Agreement and the resignation, appointment and acceptance effected hereby shall be effective as of the opening of business on the date first above written, upon the execution and delivery hereof by each of the parties hereto (the "Effective Date"); provided, however, that the resignation of the Resigning Trustee as Registrar and Paying Agent and appointment of the Successor Trustee as Registrar and Paying Agent shall be effective as of the close of business 10 days after the date first written above and until such date the Resigning Trustee shall continue to perform its duties under the Indenture.

Section 403.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

Section 404.  This Agreement may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

Section 405.  The Issuer, the Guarantor, the Resigning Trustee and the Successor Trustee hereby acknowledge receipt of an executed counterpart of this Agreement and the effectiveness thereof.

Section 406.  Notwithstanding the resignation of the Resigning Trustee effected hereby, the Issuer and the Guarantor shall remain obligated to compensate, reimburse and indemnify the Resigning Trustee in accordance with, and to the extent provided in, Section 606 of the Indenture.  The Issuer also acknowledges and reaffirms its obligations to compensate, reimburse and indemnify the Successor Trustee  in accordance with, and to the extent provided in, Section

4

606 of the Indenture, which obligations to the Successor Trustee shall survive the execution hereof.

IN WITNESS WHEREOF, the parties hereby have caused this Agreement of Resignation, Appointment and Acceptance to be duly executed as of the day and year first above written.

NORTEL NETWORKS LIMITED, as Guarantor

By:_____
Name: J Doolittle
Title: Treasurer

By:_____,
Name:
Title: Tracy S.J. Connelly McGilley
Assistant Secretary

NORTEL NETWORKS CAPITAL CORPORATION, as Issuer

By:_____
Name: J Doolittle
Title: Vice President

THE BANK OF NEW YORK MELLON, as Resigning Trustee

By:_____
Name:
Title:

LAW DEBENTURE TRUST COMPANY OF NEW YORK, as Successor Trustee

By:_____
Name:
Title:

5

IN WITNESS WHEREOF, the parties hereby have caused this Agreement of Resignation, Appointment and Acceptance to be duly executed as of the day and year first above written.

NORTEL NETWORKS LIMITED, as Guarantor

By:_____
Name:
Title:


By:_____
Name:
Title:


NORTEL NETWORKS CAPITAL CORPORATION, as Issuer

By:_____
Name:
Title:


THE BANK OF NEW YORK MELLON, as Resigning Trustee

By:_____
Name:
Title:     Martin Feig
           Vice President


LAW DEBENTURE TRUST COMPANY OF NEW YORK, as Successor Trustee

By:_____

Name:
Title:


[Trustee Resignation, Appointment and Acceptance Agreement]

IN WITNESS WHEREOF, the parties hereby have caused this Agreement of Resignation, Appointment and Acceptance to be duly executed as of the day and year first above written.

NORTEL NETWORKS LIMITED, as an Issuer

By:_____
    Name:
    Title:
    Address:
    Telephone number:

NORTEL NETWORKS CAPITAL CORPORATION, as an Issuer

By:_____
    Name:
    Title:
    Address:
    Telephone number:

THE BANK OF NEW YORK MELLON, as Resigning Trustee

By:_____
    Name:
    Title:
    Address:
    Telephone number:

LAW DEBENTURE TRUST COMPANY OF NEW YORK, as Successor Trustee

By: _Robert L. Bice II_____
    Name: _Robert L. Bice II_
    Title: _Senior Vice President_
    Address: _400 Madison Ave, NY, NY 10017_
    Telephone number: _646-747-1254_

5

EXHIBIT A

Documents to the extent available to be delivered to the Successor Trustee:

1.    Executed copy of Indenture dated as of February 15, 1996

2.    File of Closing Documents

3.    A copy of the most recent Compliance Certificate delivered pursuant to Section 1005 of the Indenture.

4.    Copies of any official notices sent by the Trustee to all the Holders of the Securities pursuant to the terms of the Indenture during the past twelve months and a copy of the most recent Trustee's Annual Report to Holders, if any.

5.    The original Securities.

EXHIBIT B

[LAW DEBENTURE TRUST COMPANY OF NEW YORK LETTERHEAD]

NOTICE

To the Holders of
Nortel Networks Limited and
Nortel Networks Capital Corporation
7.875% Notes due 2026
CUSIP No. 665810AB3

NOTICE IS HEREBY GIVEN, pursuant to Section 607 of the Indenture dated as of February 15, 1996 by and between Nortel Networks Limited, formerly known as Northern Telecom Limited, as Guarantor, Nortel Networks Capital Corporation, formerly known as Northern Telecom Capital Corporation, as Issuer, and The Bank of New York Mellon, formerly known as The Bank of New York, as Trustee, that The Bank of New York Mellon has resigned as Trustee under the Indenture.

Pursuant to Section 607 of the Indenture, Law Debenture Trust Company of New York, a New York banking corporation duly organized and existing under the laws of the State of New York, has accepted appointment as Trustee under the Indenture. The address of the Corporate Trust Office of Law Debenture Trust Company of New York is 400 Madison Avenue, 4th Floor, New York, NY 10017.

The Bank of New York Mellon's resignation as Trustee and Law Debenture Trust Company of New York's appointment as successor Trustee were effective as of the opening of business on February 12, 2009.

Dated: New York, New York
       February 12, 2009

Very truly yours,

By:_____
   Name:
   Title:

7

SCHEDULE I

NAME & ADDRESS OF REGISTERED HOLDERS:

NAME & ADDRESS OF BENEFICIAL HOLDERS:

**EXHIBIT B**

**<u>THE INDENTURE</u>**

Issue: NORTHERN TELECOM CAPITAL 7.875% 06/15/26    665810AB3        665810AB3

| Account/TIN | Name & Address | Shares Held |
|---|---|---|
| 1 | CEDE & CO | 150,000,000 |
| 13-2555119 | 55 WATER ST | 100.000% |
|  | NEW YORK NY 10041-0004 |  |

|  | * BOOK * | 06/20/1996 | 150,000,000 |
|---|---|---|---|
|  |  |  | 150,000,000* |

                                                    ------------------
                        1 Holders Qualified    TOTAL -->      150,000,000

NORTHERN TELECOM LIMITED

AND

NORTHERN TELECOM CAPITAL CORPORATION

*as Issuers,*

NORTHERN TELECOM LIMITED

*as Guarantor,*

AND

THE BANK OF NEW YORK

*as Trustee*

---

*INDENTURE*

*Dated as of February 15, 1996*

---

# NORTHERN TELECOM LIMITED
# NORTHERN TELECOM CAPITAL CORPORATION
### Reconciliation and tie between Trust Indenture Act of 1939 and Indenture, dated as of February 15, 1996

| Trust Indenture Act Section | Indenture Section |
|---|---|
| 310(a)(1) | 609 |
| (a)(2) | 609 |
| (a)(3) | Not Applicable |
| (a)(4) | Not Applicable |
| (b) | 609 |
| (c) | Not Applicable |
| 311(a) | 610 |
| (b) | 610 |
| 312(a) | 701 |
| (b) | 701(b) |
| (c) | 701(c) |
| 313(a) | 702(a) |
| (b) | 702(a) |
| (c) | 702(a) |
| (d) | 702(b) |
| 314(a) | 703(b) |
| (b) | Not Applicable |
| (c)(1) | 102 |
| (c)(2) | 102 |
| (c)(3) | Not Applicable |
| (d) | Not Applicable |
| (e) | 102 |
| 315(a) | 601(b) |
| (b) | 605 |
| (c) | 601(a) |
| (d) | 601(c) |
| (d)(1) | 601(b) |
| (d)(2) | 601(c)(2) |
| (d)(3) | 601(c)(3) |
| (e) | 511 |
| 316(a)(1)(A) | 506(a)(1) |
| (a)(1)(B) | 506(a)(2) |
| | 503(a) |
| (a)(2) | Not Applicable |
| (b) | 508 |
| 317(a)(1) | 509 |
| (a)(2) | 510 |
| (b) | 1003 |
| 318(a) | 107(b) |

Note: This reconciliation and tie shall not, for any purpose, be deemed to be a part of the Indenture.

# TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| PARTIES | ........................................................................................ | 1 |
| RECITALS | ........................................................................................ | 1 |

## ARTICLE ONE
### DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 101.   Definitions:

| (1) | Act | 1 |
|---|---|---|
| (2) | Affiliate | 1 |
| (3) | Attributable Debt | 2 |
| (4) | Authorized Newspaper | 2 |
| (5) | Board of Directors | 2 |
| (6) | Board Resolution | 2 |
| (7) | Business Day | 2 |
| (8) | Commission | 2 |
| (9) | Components | 2 |
| (10) | Consolidated Net Tangible Assets | 3 |
| (11) | Conversion Date | 3 |
| (12) | Corporate Trust Office | 3 |
| (13) | corporation | 3 |
| (14) | Corporation | 3 |
| (15) | Corporation Debt Securities | 3 |
| (16) | Debt Securities | 3 |
| (17) | Defaulted Interest | 3 |
| (18) | Depositary | 3 |
| (19) | Dollar or $ | 3 |
| (20) | ECU | 4 |
| (21) | European Communities | 4 |
| (22) | Event of Default | 4 |
| (23) | Exchange Act | 4 |
| (24) | Exchange Rate | 4 |
| (25) | Exchange Rate Officer's Certificate | 5 |
| (26) | Finance Subsidiary | 5 |
| (27) | Financing Leases | 5 |
| (28) | Foreign Currency | 5 |
| (29) | Funded Debt | 5 |
| (30) | Global Security | 5 |
| (31) | Guarantee | 5 |
| (32) | Guaranteed Debt Securities | 5 |
| (33) | Guarantor | 6 |
| (34) | Guarantor Request and Guarantor Order | 6 |
| (35) | Holder | 6 |

ii

|  |  | PAGE |
|---|---|---|
| (36) | Indenture | 6 |
| (37) | interest | 6 |
| (38) | Interest Payment Date | 6 |
| (39) | Issuer Request and Issuer Order | 6 |
| (40) | Issuers | 6 |
| (41) | Maturity | 6 |
| (42) | Mortgage | 6 |
| (43) | Northern Telecom | 7 |
| (44) | Officers' Certificate | 7 |
| (45) | Opinion of Counsel | 7 |
| (46) | Original Issue Discount Security | 7 |
| (47) | Outstanding | 7 |
| (48) | Paying Agent | 8 |
| (49) | Person | 8 |
| (50) | Place of Payment | 8 |
| (51) | Predecessor Security | 8 |
| (52) | Purchase Money Mortgage | 8 |
| (53) | Redemption Date | 9 |
| (54) | Redemption Price | 9 |
| (55) | Regular Record Date | 9 |
| (56) | Responsible Officer | 9 |
| (57) | Restricted Subsidiary | 9 |
| (58) | Security Register and Security Registrar | 9 |
| (59) | Special Record Date | 9 |
| (60) | Stated Maturity Date | 9 |
| (61) | Subsidiary | 9 |
| (62) | Trust Indenture Act | 9 |
| (63) | Trustee | 10 |

| SECTION 102. | Compliance Certificates and Opinions | 10 |
|---|---|---|
| SECTION 103. | Form of Documents Delivered to Trustee | 10 |
| SECTION 104. | Acts of Holders | 11 |
| SECTION 105. | Notices, etc., to Trustee, Corporation, Finance Subsidiary and Guarantor | 12 |
| SECTION 106. | Notice to Holders; Waiver | 13 |
| SECTION 107. | Conflict with Trust Indenture Act | 13 |
| SECTION 108. | Effect of Headings and Table of Contents | 13 |
| SECTION 109. | Successors and Assigns | 13 |
| SECTION 110. | Separability Clause | 14 |
| SECTION 111. | Benefits of Indenture | 14 |
| SECTION 112. | Governing Law | 14 |
| SECTION 113. | Legal Holidays | 14 |

iii

PAGE

## ARTICLE TWO
### DEBT SECURITY FORMS

| SECTION 201. | Forms Generally | 14 |
| SECTION 202. | Forms of Debt Securities | 15 |
| SECTION 203. | Guarantee by Guarantor; Form of Guarantee | 15 |
| SECTION 204. | Form of Trustee's Certificate of Authentication | 17 |

## ARTICLE THREE
### THE DEBT SECURITIES

| SECTION 301. | Amount Unlimited; Issuable in Series | 18 |
| SECTION 302. | Denominations | 20 |
| SECTION 303. | Execution, Authentication, Delivery and Dating | 20 |
| SECTION 304. | Temporary Debt Securities | 22 |
| SECTION 305. | Registration, Registration of Transfer and Exchange | 23 |
| SECTION 306. | Mutilated, Destroyed, Lost or Stolen Debt Securities | 25 |
| SECTION 307. | Payment of Interest; Interest Rights Preserved | 26 |
| SECTION 308. | Persons Deemed Owners | 27 |
| SECTION 309. | Cancellation | 28 |
| SECTION 310. | Computation of Interest | 28 |
| SECTION 311. | Payment in Currencies | 28 |
| SECTION 312. | Judgments | 31 |

## ARTICLE FOUR
### SATISFACTION AND DISCHARGE

| SECTION 401. | Satisfaction and Discharge of Indenture | 32 |
| SECTION 402. | Application of Trust Money | 33 |

## ARTICLE FIVE
### DEFAULTS AND REMEDIES

| SECTION 501. | Events of Default and Enforcement | 33 |
| SECTION 502. | Waiver of Declaration | 35 |
| SECTION 503. | Waiver | 35 |
| SECTION 504. | Other Remedies | 36 |
| SECTION 505. | Application of Money Collected | 36 |
| SECTION 506. | Control by Holders | 37 |
| SECTION 507. | Limitation on Suits | 37 |
| SECTION 508. | Rights of Holders To Receive Payment | 37 |
| SECTION 509. | Collection Suit by Trustee | 38 |
| SECTION 510. | Trustee May File Proofs of Claim | 38 |
| SECTION 511. | Undertaking for Costs | 38 |
| SECTION 512. | Delay or Omission Not Waiver | 38 |

iv

SECTION 513.    Waiver of Stay or Extension Laws............................................38 **PAGE**

## ARTICLE SIX
### THE TRUSTEE

SECTION 601.    Duties of Trustee ..............................................................39
SECTION 602.    Rights of Trustee ..............................................................40
SECTION 603.    Individual Rights of Trustee ...................................................40
SECTION 604.    Trustee's Disclaimer ..........................................................40
SECTION 605.    Notice of Defaults.............................................................40
SECTION 606.    Compensation and Indemnity.....................................................41
SECTION 607.    Replacement of Trustee.........................................................41
SECTION 608.    Successor Trustee by Merger, etc...............................................44
SECTION 609.    Eligibility; Disqualification .................................................44
SECTION 610.    Preferential Collection of Claims Against the Issuers..........................44

## ARTICLE SEVEN
### HOLDERS' LISTS AND REPORTS BY TRUSTEE, ISSUERS AND GUARANTOR

SECTION 701.    Preservation of Information: Communications to Holders ................44
SECTION 702.    Reports by Trustee ............................................................45
SECTION 703.    Reports by Issuers and the Guarantor .........................................46

## ARTICLE EIGHT
### AMALGAMATION, CONSOLIDATION, CONVEYANCE, TRANSFER OR LEASE

SECTION 801.    Amalgamations and Consolidations of Issuers or Guarantor
                and Conveyances Permitted Subject to Certain Conditions..........47
SECTION 802.    Rights and Duties of Successor Corporation ...................................47
SECTION 803.    Officers' Certificate and Opinion of Counsel .................................48

## ARTICLE NINE
### SUPPLEMENTAL INDENTURES

SECTION 901.    Supplemental Indentures Without Consent of Holders.....................48
SECTION 902.    Supplemental Indentures with Consent of Holders ..........................49
SECTION 903.    Execution of Supplemental Indentures .........................................50
SECTION 904.    Effect of Supplemental Indentures.............................................51
SECTION 905.    Conformity with Trust Indenture Act ..........................................51
SECTION 906.    Reference in Debt Securities to Supplemental Indentures.................51

v

### ARTICLE TEN
#### COVENANTS
PAGE

SECTION 1001. Payment of Principal, Premium and Interest ..................... 51
SECTION 1002. Maintenance of Office or Agency .................................. 51
SECTION 1003. Money for Debt Securities Payments to Be Held in Trust ...... 52
SECTION 1004. Negative Pledge ...................................................... 54
SECTION 1005. Compliance Certificate ............................................. 55
SECTION 1006. Waiver of Certain Covenants ....................................... 55

### ARTICLE ELEVEN
#### REDEMPTION OF DEBT SECURITIES

SECTION 1101. Applicability of Article ............................................. 56
SECTION 1102. Election to Redeem; Notice to Trustee ........................... 56
SECTION 1103. Selection by Trustee of Debt Securities to be Redeemed ...... 56
SECTION 1104. Notice of Redemption .............................................. 57
SECTION 1105. Deposit of Redemption Price ...................................... 57
SECTION 1106. Debt Securities Payable on Redemption Date ................... 57
SECTION 1107. Debt Security Redeemed in Part .................................. 58

### ARTICLE TWELVE
#### SINKING FUNDS

SECTION 1201. Applicability of Article ............................................. 58
SECTION 1202. Satisfaction of Sinking Fund Payments with Debt Securities ... 58
SECTION 1203. Redemption of Debt Securities for Sinking Fund ............... 59

### ARTICLE THIRTEEN
#### DEFEASANCE

SECTION 1301. Discharge by Deposit of Money or Debt Securities ............ 59
SECTION 1302. Defeasance of Certain Obligations ............................... 61
SECTION 1303. Application of Trust Money ........................................ 61
SECTION 1304. Repayment to the Corporation .................................... 61

### ARTICLE FOURTEEN
#### MEETINGS OF HOLDERS OF DEBT SECURITIES

SECTION 1401. Purposes for Which Meetings May Be Called .................... 62
SECTION 1402. Call, Notice and Place of Meetings .............................. 62
SECTION 1403. Persons Entitled to Vote at Meetings ........................... 63
SECTION 1404. Quorum; Action ..................................................... 63

From:Bank of NY Mellon          12128155802          01/20/2009 10:35     #424 P.008/078

vi

|  |  | PAGE |
|---|---|---|
| SECTION 1405. | Determination of Voting Rights; Conduct and Adjournment of Meetings | 64 |
| SECTION 1406. | Counting Votes and Recording Action of Meetings | 64 |
| SIGNATURES |  | 66 |
| EXHIBIT A |  | A-1 |

INDENTURE dated as of February 15, 1996, among Northern Telecom Limited (the "Corporation"), a Canadian corporation having its principal place of business at 2920 Matheson Boulevard East, Mississauga, Ontario, Canada, L4W 4M7, Northern Telecom Capital Corporation (the "Finance Subsidiary" and together with the Corporation in its capacity as an Issuer of Debt Securities, the "Issuers" and each an "Issuer"), a Delaware corporation having its principal place of business at Northern Telecom Plaza, 200 Athens Way, Nashville, Tennessee, U.S.A., 37228-1397, Northern Telecom Limited, in its capacity as guarantor of Debt Securities issued by the Finance Subsidiary (the "Guarantor"), and The Bank of New York, a New York banking corporation (the "Trustee"), having its Corporate Trust Office at 101 Barclay Street, New York, New York, U.S.A. 10286.

For and in consideration of the premises and the purchase of the Debt Securities by the Holders thereof, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Debt Securities or of a series thereof, as follows.

## ARTICLE ONE

### DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 101.   *Definitions.*

For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

(A)   the terms defined in this Article have the meanings assigned to them in this Article, and include the plural as well as the singular;

(B)   all other terms used herein that are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein;

(C)   all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with Canadian generally accepted accounting principles, and, except as otherwise herein expressly provided, the term "generally accepted accounting principles" with respect to any computation required or permitted hereunder shall mean such Canadian accounting principles as are generally accepted at the date of such computation; and

(D)   the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

(1)   "Act" when used with respect to any Holder has the meaning specified in Section 104.

(2)   "Affiliate" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified

Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

(3)    "Attributable Debt" in respect of a Financing Lease means the present value of the obligations of the lessee thereunder for rental payments during the remaining term of such lease.

(4)    "Authorized Newspaper" means a newspaper in an official language of the country of publication or in the English language customarily published on each Business Day, whether or not published on Saturdays, Sundays or holidays, and of general circulation in the place in connection with which the term is used or in the financial community of such place. Where successive publications are required to be made in Authorized Newspapers, the successive publications may be made in the same or in different newspapers in the same city meeting the foregoing requirements and in each case on any Business Day.

(5)    "Board of Directors" means, in respect of an Issuer or the Guarantor, the board of directors, the executive committee or any other committee of that board or any group of directors of that board, duly authorized to make a decision on the matter in question.

(6)    "Board Resolution" means a copy of a resolution certified by the Secretary or an Assistant Secretary of an Issuer or the Guarantor, as the case may be, to have been duly adopted by the Board of Directors of such Issuer or the Guarantor, respectively, and to be in full force and effect on the date of such certification.

(7)    "Business Day", when used with respect to any Place of Payment, means any Monday, Tuesday, Wednesday, Thursday or Friday that is not a day on which banking institutions in that Place of Payment are authorized or obligated by law to close.

(8)    "Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Exchange Act, or if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties on such date.

(9)    "Components", with respect to a composite currency (including but not limited to ECU), means the currency amounts that are components of such composite currency on the Conversion Date. If after such Conversion Date the official unit of any component currency is altered by way of combination or subdivision, the number of units of such currency shall be divided or multiplied in the same proportion to calculate the Component. If after such Conversion Date two or more component currencies are consolidated into a single currency, the amounts of those currencies as Components shall be replaced by an amount in such single currency equal to the sum of the amounts of such consolidated component currencies expressed in such single currency, and such amount shall thereafter be a Component. If after such Conversion Date any component currency shall be divided into two or more currencies, the amount of such currency as a Component shall be replaced by amounts of such two or more

- 2 -

From:Bank of NY Mellon          12128155802          01/20/2009 10:35     #424 P.011/078

currencies, each of which shall be equal to the amount of such former component currency divided by the number of currencies into which such component currency was divided, and such amounts shall thereafter be Components.

(10)     "Consolidated Net Tangible Assets" means the total amount of assets after deducting therefrom (i) all current liabilities, and (ii) all goodwill, tradenames, trademarks, patents, unamortized debt discount and expense and other like intangible assets, all as shown in the then most recent consolidated balance sheet of Northern Telecom contained in Northern Telecom's annual or quarterly report to shareholders; assets shall include an amount equal to the Attributable Debt in respect of those Financing Leases not capitalized on such balance sheet.

(11)     "Conversion Date", with respect to a composite currency (including but not limited to ECU), has the meaning specified in Section 311(f).

(12)     "Corporate Trust Office" means the principal corporate trust office of the Trustee at which at any particular time its corporate trust business shall be administered.

(13)     "corporation" includes corporations, associations, companies and business trusts.

(14)     "Corporation" means the Person named as the "Corporation" in the first paragraph of this Indenture until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Corporation" shall mean such successor corporation.

(15)     "Corporation Debt Securities" means Debt Securities issued by the Corporation and authenticated and delivered under this Indenture.

(16)     "Debt Securities" means Corporation Debt Securities and Guaranteed Debt Securities.

(17)     "Defaulted Interest" has the meaning specified in Section 307.

(18)     "Depositary" means, with respect to the Debt Securities of any series issuable or issued in whole or in part in the form of one or more Global Securities, the Person designated as Depositary by the applicable Issuer pursuant to Section 301 until a successor Depositary shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Depositary" shall mean or include each Person who is then a Depositary hereunder, and if at any time there is more than one such Person, "Depositary" as used with respect to the Debt Securities of any such series shall mean the Depositary with respect to the Debt Securities of that series.

(19)     "Dollar" or "$" means the currency of the United States of America which as at the time of payment is legal tender for the payment of public and private debts.

From:Bank of NY Mellon                12128155802                01/20/2009 10:36      #424 P.012/078

(20)    "ECU" means the European Currency Unit as defined and revised from time to time by the Council of the European Communities.

(21)    "European Communities" means the European Economic Community, the European Coal and Steel Community and the European Atomic Energy Community.

(22)    "Event of Default" has the meaning specified in Section 501.

(23)    "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(24)    "Exchange Rate" means:  (i) with respect to a currency (other than a composite currency) in which payment is to be made on Debt Securities denominated in a composite currency, the exchange rate between such composite currency and such currency reported by the agency or organization, if any, designated pursuant to Section 301(b)(12) or by the Council of the European Communities (in the case of ECU, whose reports are currently based on the rates in effect at 2:30 P.M., Brussels time, on the relevant exchange markets), as appropriate, or if such exchange rate is not or ceases to be so reported, then such exchange rate as shall be determined by the Trustee using quotations from one or more major banks in The City of New York or such other quotations as the Trustee shall deem appropriate, such banks being satisfactory to the applicable Issuer, on the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an installment of principal, as the case may be; (ii) with respect to payments in Dollars to be made on Debt Securities denominated in a Foreign Currency, the noon buying rate for that currency for wire transfers quoted in The City of New York on the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an installment of principal, as the case may be, as certified for customs purposes by the Federal Reserve Bank of New York; (iii) with respect to payments in a Foreign Currency to be made on Debt Securities denominated in Dollars or converted into Dollars pursuant to Section 311(f), the noon Dollar buying rate for that currency for wire transfers quoted in The City of New York on the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an installment of principal, as the case may be, as certified for customs purposes by the Federal Reserve Bank of New York; and (iv) with respect to payments in a Foreign Currency to be made on Debt Securities denominated in a different Foreign Currency, the exchange rate between such Foreign Currencies determined in the manner specified pursuant to Section 301(b)(15).  Except in the situation contemplated in (i) above, if for any reason such rates are not available with respect to one or more currencies for which an Exchange Rate is required, the Trustee shall use such quotation of the Federal Reserve Bank of New York as of the most recent available date, or quotations from one or more major banks in The City of New York or in the country of issue of the currency in question, or such other quotations as the Trustee shall deem appropriate, such banks being satisfactory to the applicable Issuer.  Unless otherwise specified by the Trustee, if there is more than one market for dealing in any currency by reason of foreign exchange regulations or otherwise, the market to be used in respect of such currency shall be that upon which a non-

- 4 -

From:Bank of NY Mellon          12128155802          01/20/2009 10:36     #424 P.013/078

resident issuer of securities designated in such currency would purchase such currency in order to make payments in respect of such securities.

(25)    "Exchange Rate Officers' Certificate", with respect to any date for the payment of principal of (and premium, if any) and interest on any series of Debt Securities, means a certificate setting forth the applicable Exchange Rate or Rates as of the Regular or Special Record Date with respect to such Interest Payment Date, date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an installment of principal, as the case may be, and the amounts payable in Dollars and Foreign Currencies in respect of the principal of (and premium, if any) and interest on Debt Securities denominated in ECU, any other composite currency or any Foreign Currency, and signed by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of the applicable Issuer and delivered to the Trustee.

(26)    "Finance Subsidiary" means the Person named as the "Finance Subsidiary" in the first paragraph of this Indenture until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Finance Subsidiary" shall mean such successor corporation.

(27)    "Financing Leases" means sale and leaseback transactions, except for: (i) temporary leases for a term, including any renewal thereof, of not more than three years; (ii) leases between Northern Telecom and any Restricted Subsidiary, between any Restricted Subsidiary and Northern Telecom or between Restricted Subsidiaries; and (iii) leases for properties executed within one year of the latest of acquisition, completion of construction and commencement of commercial operation thereof.

(28)    "Foreign Currency" means a currency issued by the government of any country other than the United States of America.

(29)    "Funded Debt" means any indebtedness for borrowed money, whether of Northern Telecom or of a third person.

(30)    "Global Security" means a Debt Security evidencing all or part of a series of Debt Securities, issued to the Depositary for such series in accordance with Section 303 and bearing the legend prescribed in Section 303(c).

(31)    "Guarantee" means any guarantee of the Guarantor as endorsed on each Guaranteed Debt Security authenticated and delivered pursuant to this Indenture and shall include the Guarantee set forth in Section 203 of this Indenture and all other obligations and covenants of the Guarantor contained in this Indenture and any Guaranteed Debt Securities.

(32)    "Guaranteed Debt Securities" means Debt Securities issued by the Finance Subsidiary and guaranteed by the Guarantor and authenticated and delivered under this Indenture.

- 5 -

(33)    "Guarantor" means the Person named as "Guarantor" in the first paragraph of this Indenture until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Guarantor" shall mean such successor corporation.

(34)    "Guarantor Request" and "Guarantor Order" mean, respectively, a written request or order signed in the name of the Guarantor by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of the Guarantor and delivered to the Trustee.

(35)    "Holder", with respect to a Debt Security, means the Person in whose name such Debt Security is registered in the Security Register.

(36)    "Indenture" means this instrument as originally executed or as it may from time to time be supplemented, amended or restated by or pursuant to one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof and, unless the context otherwise requires, shall include the terms of a particular series of Debt Securities established as contemplated by Section 301.

(37)    "interest", when used with respect to an Original Issue Discount Security that by its terms bears stated interest only after Maturity, refers to interest payable after Maturity.

(38)    "Interest Payment Date", with respect to any Debt Security, means the Stated Maturity Date of an installment of interest on such Debt Security.

(39)    "Issuer Request" and "Issuer Order" mean, respectively, a written request or order signed in the name of the applicable Issuer by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of such Issuer and delivered to the Trustee.

(40)    "Issuer" and "Issuers" have the meanings assigned to such terms in the first paragraph of this Indenture.

(41)    "Maturity", when used with respect to any Debt Security, means the date on which the principal of such Debt Security becomes due and payable as therein or herein provided, whether at the Stated Maturity Date or by declaration of acceleration, call for redemption, repayment at the option of the Holder or otherwise.

(42)    "Mortgage" means and includes any mortgage, hypothec, pledge, lien, security interest, privilege, floating charge, conditional sale or other title retention agreement or other similar encumbrance securing indebtedness for borrowed money.

- 6 -

(43)    "Northern Telecom" means Northern Telecom Limited, whether in its capacity as Issuer or Guarantor.

(44)    "Officers' Certificate" means a certificate signed by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of the applicable Issuer or the Guarantor, as the case may be, and delivered to the Trustee.

(45)    "Opinion of Counsel" means a written opinion of counsel, who may be counsel to the applicable Issuer or the Guarantor or both, as the case may be.

(46)    "Original Issue Discount Security" means any Debt Security that is issued with "original issue discount" within the meaning of Section 1273(a) of the United States Internal Revenue Code of 1986 and the regulations thereunder and any other Debt Security designated by the applicable Issuer as issued with original issue discount for United States federal income tax purposes.

(47)    "Outstanding" when used with respect to Debt Securities means, as of the date of determination, all Debt Securities theretofore authenticated and delivered under this Indenture, except:

      (i)    Debt Securities theretofore cancelled by the Trustee or delivered to the Trustee for cancellation;

      (ii)    Debt Securities for whose payment or redemption money in the necessary amount has been theretofore deposited with the Trustee or any Paying Agent (other than the applicable Issuer or the Guarantor) in trust or set aside and segregated in trust by the applicable Issuer or the Guarantor (if such Issuer or the Guarantor shall act as its own Paying Agent) for the Holders of such Debt Securities; *provided, however*, that if such Debt Securities are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision therefor satisfactory to the Trustee has been made; and

      (iii)    Debt Securities that have been surrendered to the Trustee pursuant to Section 306 or in exchange for or in lieu of which other Debt Securities have been authenticated and delivered pursuant to this Indenture, other than any such Debt Securities in respect of which there shall have been presented to the Trustee proof satisfactory to it that such Debt Securities are held by a bona fide purchaser in whose hands such Debt Securities are valid obligations of the applicable Issuer;

*provided, however*, that in determining whether the Holders of the requisite principal amount of Outstanding Debt Securities have taken any Act hereunder, Debt Securities owned by the applicable Issuer or any other obligor upon the Debt Securities or any Affiliate of such Issuer or of such other obligor shall be disregarded and deemed not to be Outstanding; *provided*

- 7 -

From:Bank of NY Mellon              12128155802              01/20/2009 10:37    #424 P.016/078

*further* that, in determining whether the Trustee shall be protected in relying upon such Act, only Debt Securities that the Trustee knows to be so owned shall be so disregarded; and *provided further* that Debt Securities so owned that have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right to act with respect to such Debt Securities and that the pledgee is not the applicable Issuer or any other obligor upon the Debt Securities or any Affiliate of such Issuer or of such other obligor.

(48)    "Paying Agent" means any Person authorized by the applicable Issuer to pay the principal of (and premium, if any) or interest on any Debt Securities on behalf of such Issuer.

(49)    "Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

(50)    "Place of Payment" means: (i) when used with respect to the Debt Securities of any series payable in Dollars, the Corporate Trust Office of the Trustee in the Borough of Manhattan, The City and State of New York; and, (ii) when used with respect to the Debt Securities of any series payable in a Foreign Currency, the other place or places, if any, where the principal of (and premium, if any) and interest on the Debt Securities of that series are payable as specified as contemplated by Section 301.

(51)    "Predecessor Security" of any particular Debt Security means every previous Debt Security evidencing all or a portion of the same debt as that evidenced by such particular Debt Security; and, for the purposes of this definition, any Debt Security authenticated and delivered under Section 306 in lieu of a lost, destroyed or stolen Debt Security shall be deemed to evidence the same debt as the lost, destroyed or stolen Debt Security.

(52)    "Purchase Money Mortgage" means a mortgage on property existing at the time of acquisition thereof by Northern Telecom or a Restricted Subsidiary; any mortgage on any property acquired, constructed or improved by Northern Telecom or a Restricted Subsidiary incurred after the date of the issue of the Debt Securities which is created or assumed contemporaneously with, or within 180 days after, such acquisition, or completion of such construction or improvement, to secure or provide for the payment of the purchase price thereof or the cost of construction or improvement thereon incurred after the date of issuance of the Debt Securities (including the cost of any underlying real property); *provided, however,* that in the case of any such acquisition, construction or improvement, the Mortgage shall not apply to any property previously owned by Northern Telecom or a Restricted Subsidiary, other than, in the case of any such construction or improvement, any real property, theretofore substantially unimproved for the purposes of Northern Telecom or a Restricted Subsidiary, on which the property so constructed, or the improvement, is located and other than any machinery or equipment installed at any time so as to constitute immovable property or a fixture on the real property on which the property so constructed, or the improvement, is located.

- 8 -

(53)  "Redemption Date", when used with respect to any Debt Security to be redeemed, means the date fixed for such redemption by or pursuant to this Indenture.

(54)  "Redemption Price", when used with respect to any Debt Security to be redeemed, means the price at which it is to be redeemed pursuant to this Indenture.

(55)  "Regular Record Date" for the interest payable on any Interest Payment Date on the Debt Securities of any series means the date specified for that purpose as contemplated by Section 301.

(56)  "Responsible Officer" when used with respect to the Trustee means the chairman or vice-chairman of the board of directors, the chairman or any vice-chairman of the executive committee of the board of directors, the trust committee, the president, any vice-president (whether or not designated by a number or word or words added before or after the title "vice-president"), the secretary, any assistant secretary, the treasurer, any assistant treasurer, the cashier, any assistant cashier, any trust officer or assistant trust officer, the controller or any assistant controller or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and also means, with respect to a particular corporate trust matter, any other officer to whom such matter is referred because of his knowledge of and familiarity with the particular subject.

(57)  "Restricted Subsidiary" means Northern Telecom Inc. or, if and for so long as the Finance Subsidiary has Outstanding Guaranteed Debt Securities, the Finance Subsidiary, each a Subsidiary.

(58)  "Security Register" and "Security Registrar" have the respective meanings specified in Section 305.

(59)  "Special Record Date" for the payment of any Defaulted Interest means a date fixed by the Trustee pursuant to Section 307.

(60)  "Stated Maturity Date", when used with respect to any Debt Security or any installment of interest thereon, means the date specified in such Debt Security as the fixed date on which the principal of such Debt Security or such installment of interest is due and payable.

(61)  "Subsidiary" means a corporation, a majority of the outstanding voting shares of which are owned, directly or indirectly, by Northern Telecom or by one or more other Subsidiaries, or by Northern Telecom and one or more other Subsidiaries. For the purposes of this definition, "voting shares" means shares having voting power for the election of directors, whether at all times or only so long as no other shares have such voting power by reason of any contingency.

(62)  "Trust Indenture Act" means the Trust Indenture Act of 1939 as in force at the date as of which this indenture was executed, except as provided in Sections 609, 703 and 905.

(63)    "Trustee" means the Person named as the "Trustee" in the first paragraph of this Indenture until a successor Trustee shall have become such pursuant to the applicable provisions hereof, and thereafter "Trustee" shall mean or include each Person who is then a Trustee hereunder, and if at any time there is more than one such Person, "Trustee" as used with respect to the Debt Securities of any series shall mean the Trustee with respect to Debt Securities of that series.

SECTION 102.    *Compliance Certificates and Opinions.*

(a)    Upon any application or request by an Issuer or the Guarantor to the Trustee to take any action under any provision of this Indenture, such Issuer or the Guarantor, as the case may be, shall furnish to the Trustee an Officers' Certificate and Opinion of Counsel stating that all conditions precedent, if any, provided for in this Indenture related to the proposed action have been complied with except that, in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture related to such particular application or request, no additional certificate or opinion need be furnished.

(b)    Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:  (1) a statement that each individual signing such certificate or opinion has read such covenant or condition and the definitions herein related thereto; (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of each such individual, he has made such examination or investigation as is reasonably necessary to enable him to make the statement or to express an opinion whether such covenant or condition has been complied with; and (4) a statement whether, in the opinion of each such individual, such condition or covenant has been complied with.

SECTION 103.    *Form of Documents Delivered to Trustee.*

(a)    In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

(b)    Any certificate or opinion of an officer of an Issuer or the Guarantor may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which such certificate or opinion is based is erroneous. Any such certificate or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of such Issuer or the Guarantor, as the case may be, stating that the information with respect to such factual matters is in the possession of such certifying entity

- 10 -

unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters is erroneous.

(c)     Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

SECTION 104.    *Acts of Holders.*

(a)     Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by an agent duly appointed in writing.   Except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Trustee and, where it is hereby expressly required, to the Issuers and the Guarantor or any of them. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Holders signing such instrument or instruments.  Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and, subject to Section 601, conclusive in favor of the Trustee, the Issuers and the Guarantor, if made in the manner provided in this Section.  The record of any meeting of Holders of Debt Securities shall be proved in the manner provided in Section 1406.

(b)     The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof. Where such execution is by a signer acting in a capacity, other than his individual capacity, such certificate or affidavit shall also constitute sufficient proof of his authority.  The fact and date of the execution of any such instrument or writing, or the authority of the Person executing the same, may also be proved in any manner that the Trustee deems sufficient.

(c)     The ownership of Debt Securities shall be proved by the Security Register.

(d)     If an Issuer or the Guarantor shall solicit from the Holders of Debt Securities of any series any Act, such Issuer or the Guarantor, as the case may be, may, at its option, by Board Resolution, fix in advance a record date for the determination of Holders of Debt Securities entitled to take such Act, but such Issuer or the Guarantor, as the case may be, shall have no obligation to do so.  Any such record date shall be fixed at the discretion of such Issuer or the Guarantor, as the case may be.  If such a record date is fixed, such Act may be sought or taken before or after the record date, but only the Holders of record at the close of business on such record date shall be deemed to be Holders for the purpose of determining whether Holders of the requisite proportion of Debt Securities of such series Outstanding have authorized or agreed or consented to such Act, and for that purpose the Debt Securities of such series Outstanding shall be computed as of such record date.

- 11 -

(e)      Any Act of the Holder of any Debt Security shall bind every future holder of the same Debt Security and the Holder of every Debt Security issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, suffered or omitted by the Trustee, the applicable Issuer or the Guarantor in reliance thereon, whether or not notation of such action is made upon such Debt Security.

(f)      For purposes of determining the principal amount of Outstanding Debt Securities of any series the Holders of which are required, requested or permitted to take any Act under this Indenture: (1) each Original Issue Discount Security shall be deemed to have an amount outstanding determined by the Trustee that could be declared to be due and payable pursuant to the terms of such Original Issue Discount Security as of the date such Act is delivered to the Trustee and, where it is hereby expressly required, to the applicable Issuer or the Guarantor; and (2) each Debt Security denominated in a Foreign Currency or composite currency shall be deemed to have an amount outstanding determined by the Trustee by converting the principal amount of such Debt Security in the currency in which such Debt Security is denominated into Dollars at the Exchange Rate as of the date such Act is delivered to the Trustee and, where it is hereby expressly required, to the applicable Issuer or the Guarantor (or, if there is no such rate on such date for the reasons specified in Section 311(d), such rate on the date specified in such Section).

SECTION 105.   Notices, etc., to Trustee, Corporation, Finance Subsidiary and Guarantor.

Any Act of Holders or other document provided or permitted by this Indenture to be made upon, given or furnished to, or filed with:

(1)  the Trustee by any Holder, or by either Issuer or the Guarantor shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Trustee at its Corporate Trust Office, Attention: Corporate Trust Department facsimile number (212) 815-5915, and shall be deemed to have been made at the time of delivery or facsimile transmission; provided that any delivery made or facsimile sent on a day other than a Business Day in New York, shall be deemed to be received on the next following Business Day in New York; or

(2)  either Issuer or the Guarantor, by the Trustee or by any Holder shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing to such Issuer or the Guarantor, as the case may be, addressed to it at the address of its executive office specified in the first paragraph of this Indenture, Attention: Corporate Secretary, facsimile number (905) 238-7927, in the case of Northern Telecom; or Attention:  Secretary, facsimile number (615) 734-4067, in the case of Finance Subsidiary or at any other address previously furnished in writing to the Trustee by such Issuer or the Guarantor, as the case may be, and shall be deemed to have been made at the time of delivery or facsimile transmission; provided that any delivery made or facsimile sent on a day other than a Business Day in Toronto, Ontario or Nashville, Tennessee, respectively, shall be

- 12 -

deemed to be received on the next following Business Day in Toronto, Ontario or Nashville, Tennessee, respectively.

SECTION 106.    *Notice to Holders; Waiver.*

(a)    Except as otherwise expressly provided herein, where this Indenture provides for notice to Holders of any event such notice shall be sufficiently given to Holders if in writing and mailed, first-class postage prepaid, to each Holder affected by such event, at his address as it appears in the Security Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.

(b)    If the regular mail service is suspended or for any other reason it shall be impracticable to give notice to Holders by mail, then such notification to Holders as shall be made with the approval of the Trustee shall constitute sufficient notification for every purpose hereunder. In any case where notice to Holders is given by mail, neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder shall affect the sufficiency of such notice with respect to other Holders.

(c)    Where this Indenture provides for notice in any manner, such notice may be waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

(d)    Any Act required or permitted under this Indenture shall be in the English language.

SECTION 107.    *Conflict with Trust Indenture Act.*

If any provision of this Indenture limits, qualifies or conflicts with a provision of the Trust Indenture Act that is required under the Trust Indenture Act to be a part of and govern this Indenture, the latter provision shall control. If any provision of this Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the latter provision shall be deemed to apply to this Indenture as so modified or excluded, as the case may be.

SECTION 108.    *Effect of Headings and Table of Contents.*

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

SECTION 109.    *Successors and Assigns.*

All covenants and agreements in this Indenture by each Issuer or the Guarantor shall bind its successors and assigns, whether expressed or not.

- 13 -

SECTION 110.    *Separability Clause.*

If any provision in this Indenture or in the Debt Securities shall be invalid, illegal or
unenforceable, the validity, legality and enforceability of the remaining provisions shall not in
any way be affected or impaired thereby.

SECTION 111.    *Benefits of Indenture.*

Nothing in this Indenture or in the Debt Securities, express or implied, shall give to any
Person, other than the parties hereto and their successors hereunder, any Paying Agent and the
Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture.

SECTION 112.    *Governing Law.*

This Indenture and the Debt Securities shall be governed by and construed in accordance with
the laws of the State of New York.

SECTION 113.    *Legal Holidays.*

If any Interest Payment Date, Redemption Date or Stated Maturity Date of any Debt Security
shall not be a Business Day at any Place of Payment, then (notwithstanding any other
provision of this Indenture or of the Debt Securities) payment of interest or principal (and
premium, if any) need not be made at such Place of Payment on such date, but may be made
on the next succeeding Business Day at such Place of Payment with the same force and effect
as if made on the Interest Payment Date, Redemption Date, or Stated Maturity Date, and no
interest shall accrue on such payment for the period from and after such Interest Payment
Date, Redemption Date or Stated Maturity Date, as the case may be.

## ARTICLE TWO

### DEBT SECURITY FORMS

SECTION 201.    *Forms Generally.*

(a)    All Debt Securities, Guarantees, if any, and the Trustee's certificate of authentication
shall have such appropriate insertions, omissions, substitutions and other variations as are
required or permitted by this Indenture or by a Board Resolution and as set forth in an
Officers' Certificate or any indenture supplemental hereto and may have such letters, numbers
or other marks of identification or designation and such legends or endorsements placed
thereon as the applicable Issuer or Guarantor, as the case may be, may deem appropriate and
as are not inconsistent with the provisions of this Indenture, or as may be required to comply
with any law or with any rule or regulation made pursuant thereto or with any rule or
regulation of any securities exchange on which any of the Debt Securities may be listed, or to
conform to usage.

- 14 -

(b)    The definitive Debt Securities and Guarantees, if any, shall be printed, lithographed or engraved or produced by any combination of these methods on steel engraved borders or may be produced in any other manner; *provided* that such manner is permitted by the rules of any securities exchange on which the Debt Securities may be listed or of any automated quotation system on which such series may be quoted, all as determined by the officers executing such Debt Securities, as conclusively evidenced by their execution of such Debt Securities.

SECTION 202.    *Forms of Debt Securities.*

Debt Securities shall be in the forms approved by the officers executing such Debt Securities, as conclusively evidenced by their execution of such Debt Securities, having those terms approved by or pursuant to a Board of Resolution and set forth in an Officers' Certificate or one or more indentures supplemental hereto which shall set forth the information required by Section 301. The Debt Securities of each series shall be issuable in registered form without coupons and may be in the form of one or more Global Securities in whole or in part.

SECTION 203.    *Guarantee by Guarantor; Form of Guarantee.*

The Guarantor by its execution of this Indenture hereby agrees with each Holder of a Guaranteed Debt Security of each series authenticated and delivered by the Trustee and with the Trustee on behalf of each such Holder, to be unconditionally bound by the terms and provisions of the Guarantees set forth below and authorizes the Trustee to confirm such Guarantees to the Holder of each such Guaranteed Debt Security by its execution and delivery of each such Guaranteed Debt Security, with such Guarantees endorsed thereon, authenticated and delivered by the Trustee.

Guarantees to be endorsed on the Guaranteed Debt Securities shall, subject to Section 201, be in substantially the form set forth below:

GUARANTEE

OF

NORTHERN TELECOM LIMITED

For value received, Northern Telecom Limited, a corporation incorporated under the laws of Canada, having its principal executive offices at 2920 Matheson Boulevard East, Mississauga, Ontario, Canada, L4W 4M7 (herein called the "Guarantor", which term includes any successor Person under the Indenture referred to in the Debt Security upon which this Guarantee is endorsed), hereby unconditionally guarantees to the Holder of the Guaranteed Debt Security upon which this Guarantee is endorsed and to the Trustee on behalf of each such Holder the due and punctual payment of the principal of, premium, if any, and interest on such Guaranteed Debt Security and the due and punctual payment of the sinking fund or analogous payments referred to therein, if any, when and as the same shall become due and

- 15 -

payable, whether on the Stated Maturity Date, by declaration of acceleration, call for redemption or otherwise, according to the terms thereof and of the Indenture referred to therein. In case of the failure of Northern Telecom Capital Corporation, a corporation organized under the laws of Delaware (herein called the "Borrower", which term includes any successor Person under such Indenture), punctually to make any such payment of principal, premium, if any, or interest or any such sinking fund or analogous payment, the Guarantor hereby agrees to cause any such payment to be made punctually when and as the same shall become due and payable, whether on the Stated Maturity Date or by declaration of acceleration, call for redemption or otherwise, and as if such payment were made by the Borrower.

The Guarantor hereby agrees that its obligations hereunder shall be as if it were principal debtor and not merely surety, and shall be absolute and unconditional, irrespective of, and shall be unaffected by, any invalidity, irregularity or unenforceability of such Guaranteed Debt Security or such Indenture, any failure to enforce the provisions of such Guaranteed Debt Security or such Indenture, or any waiver, modification or indulgence granted to the Borrower with respect thereto, by the Holder of such Guaranteed Debt Security or the Trustee or any other circumstance which may otherwise constitute a legal or equitable discharge of a surety or guarantor; provided, however, that, notwithstanding the foregoing, no such waiver, modification or indulgence shall, without the consent of the Guarantor, increase the principal amount of such Guaranteed Debt Security, or increase the interest rate thereon, or increase any premium payable upon redemption thereof, or alter the Stated Maturity Date thereof, or increase the principal amount of any Original Issue Discount Security that would be due and payable upon a declaration of acceleration of the maturity thereof pursuant to Article Five of such Indenture. The Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of merger or bankruptcy of the Borrower, any right to require a proceeding first against the Borrower, protest or notice with respect to such Guaranteed Debt Security or the indebtedness evidenced thereby or with respect to any sinking fund or analogous payment required under such Debt Security and all demands whatsoever, and covenants that this Guarantee will not be discharged except by payment in full of the principal of, premium, if any, and interest on such Guaranteed Debt Security.

The Guarantor shall be surrogated to all rights of the Holder of such Guaranteed Debt Security and the Trustee against the Borrower in respect of any amounts paid to such Holder by the Guarantor pursuant to the provisions of this Guarantee; provided, however, that the Guarantor shall not be entitled to enforce, or to receive any payments arising out of or based upon such right of subrogation until the principal of, premium, if any, and interest on all Guaranteed Debt Securities of the same series issued under such Indenture shall have been paid in full.

No reference herein to such Indenture and no provision of this Guarantee or of such Indenture shall alter or impair the guarantees of the Guarantor, which are absolute and unconditional, of the due and punctual payment of the principal of, premium, if any, and interest on, and any sinking fund or analogous payments with respect to, the Guaranteed Debt Security upon which this Guarantee is endorsed.

- 16 -

This Guarantee shall not be valid or obligatory for any purpose until the certificate of authentication of such Guaranteed Debt Security shall have been manually executed by or on behalf of the Trustee under such Indenture.

All terms used in this Guarantee which are defined in such Indenture shall have the meanings assigned to them in such Indenture.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York.

Executed and dated the date on the face hereof.

NORTHERN TELECOM LIMITED

By _____
    Name:
    Title:

By _____
    Name:
    Title:

SECTION 204.    *Form of Trustee's Certificate of Authentication.*

The form of the Trustee's certificate of authentication to be borne by the Debt Securities shall be substantially as follows:

Dated:

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

This is one of the Debt Securities issued under the within-mentioned Indenture.

[Name of Trustee]
    *as Trustee*

By ..............................................
    *Authorized Signatory*