IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ X
: 
*In re* : Chapter 11
: 
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
: 
                Debtors. : Jointly Administered
: 
: Hearing date: November 19, 2013 at 10:00 a.m. (ET)
: Objections due: November 12, 2013 at 4:00 p.m. (ET)
------------------------------------------------------------ X

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019
FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
RESOLVING CLAIM NOS. 5520 AND 6096 WITH MEDNAX SERVICES, INC.**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing NNI's entry into and approving a stipulation (the "Stipulation") with Mednax Services, Inc., formerly known as Pediatrix Medical Group, Inc. (the "Claimant" and together with the Debtors, the "Parties"), attached hereto as **Exhibit B**, which resolves the Claimant' claims against NNI; and (ii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.      Since the Petition Date, Nortel has sold its business units and other assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7.      By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

**Facts Relevant to this Motion**

8.      On or about December 22, 2006, a Sublease Agreement ("Sublease") was entered into between NNI, as the sublessor, and the Claimant, as the sublessee. The leased premises are non-residential real property and improvements thereto located at the fifth floor of 1500 Concord Terrace, Sawgrass Corporate Park, Sunrise, Florida (the "Subleased Premises").

---

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

9. Both before and after the Petition Date, Claimant made various improvements to the Subleased Premises.

10. On September 29, 2009, Debtor rejected the Sublease [D.I. 1576].

11. On or about September 30, 2009, Claimant filed proof of claim number 5520 in the amount of $166,020.00 ("Claim No. 5520").

12. A portion of Claim No. 5520 is for Claimants' improvements to the Subleased Premises made after the Petition Date of the Nortel Debtor, and that portion of the claim is eligible for administrative priority pursuant to 11 U.S.C §§ 365(d)(3), 503(b) and 507(a)(2).

13. On or about November 3, 2009, Claimant filed proof of claim number 6096 in an unliquidated amount for rejection damages arising from the Rejection, including a claim for the return of the security deposit and the amount of the security deposit that is actually held by the Nortel Debtor ("Claim No. 6096").

14. In an effort to negotiate an expeditious resolution of the dispute between the Debtors and the Claimant regarding the Claims, the Parties entered into arm's-length settlement discussions.

15. As a result of these negotiations, subject to this Court's approval, NNI has reached a compromise with the Claimant, as memorialized in the Stipulation, to allow Claim No. 5520 as an administrative priority claim pursuant to 11 U.S.C §§ 365(d)(3), 503(b) and 507(a)(2) in the amount of $83,010.00 and Claim No. 6096 as an administrative priority claim pursuant to 11 U.S.C §§ 365(d)(3) and 503(b) in the amount of $152,667.92.[5]  Under the terms of the Stipulation, the administrative claim would be paid within fifteen days of the issuance of a Final Order by the Court approving this Stipulation. For purposes of this Motion, a "Final Order"

---

[5] This overview is intended as a summary of the terms of the Stipulation. If any conflict arises between this overview and the Stipulation, the terms of the Stipulation shall control.

means an order, the operation or effect of which has not been stayed, reversed or amended and as to which the time to appeal or move for review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

16.     In consideration for the partial allowance of the Claims, Claimant has agreed, subject to this Court's approval, to release all claims against the Debtors that Claimant now has or hereafter may have arising from or related to the Claims.

17.     The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Claims through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

**Basis for Relief**

18.     The Debtors seek authorization to enter into the Stipulation under sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

19.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019.  Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Additionally, the Third Circuit has recognized that "(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (internal quotation omitted)

(quoting <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. <u>See, e.g.</u>, <u>In re Coram Healthcare Corp.</u>, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

20. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." <u>In re Marvel Entm't Group, Inc.</u>, 222 B.R. 243, 249 (D. Del. 1998) (quoting <u>In re Louise's, Inc.</u>, 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." <u>TMT Trailer Ferry</u>, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. <u>In re Coram Healthcare Corp.</u>, 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." <u>Travelers Cas. & Sur. Co. v. Future Claimants Representative</u>, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing <u>Matter of Jasmine, Ltd.</u>, 258 B.R. 119 (D.N.J. 2000)); see also <u>In re Coram Healthcare Corp.</u>, 315 B.R. at 330.

21. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "<u>Martin Factors</u>"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." <u>In re Martin</u>, 91 F.3d at 393 (citing <u>In re Neshaminy Office Bldg. Assocs.</u>, 62 B.R. 798, 803 (E.D. Pa. 1986)); see also <u>Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)</u>, 283 F.3d 159, 165 (3d Cir. 2002); <u>In re eToys, Inc.</u>, 331 B.R. 176, 198 (Bankr. D. Del. 2005).

6

22.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation, and request that NNI's entry into the Stipulation be authorized under Bankruptcy Rule 9019.  While the Debtors are prepared to litigate the Claims and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there is no assurance that such litigation would achieve a better result than the one set forth in the Stipulation.  Also, the settlement reflected in the Stipulation reduces the Claims filed by the Claimant against NNI's estate by at least $83,010.00.  This resolution fairly balances the Debtors' likelihood of success on the merits of the Claims against their interest in avoiding the uncertainty of litigation.

23.     In addition, litigation of the Claims would result in the estate's expenditure of significant legal fees.  Finally, the interests of the creditors militate in favor of approval of the Stipulation.  The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claims and the avoidance of legal expenses that would be incurred if the Claims were to be litigated.

24.     In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

25.     Notice of the Motion has been given via electronic transmission, hand delivery or first class mail to (i) the Claimant; (ii) counsel to Claimant; (iii) the U.S. Trustee; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; and (vi) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

26. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: October 28, 2013
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*