# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------------ X | : | |
| *In re* | : | Chapter 11 |
| | : | |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | Hearing date: November 19, 2013 at 10:00 a.m. (ET) |
| | : | Objections due: November 12, 2013 at 4:00 p.m. (ET) |
| ------------------------------------------------------------ X | | |

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION RESOLVING CLAIM NOS. 5523, 5524, 5525, 5526, 5527, 5528, 5529, 5530, 5531 AND 5532 WITH PRICE PASCHALL, KEITH WEINER, RUDY MATHIEU, WENDELL ALLEN NEFF, CHARLES ROWE, NEAL SHACT, FRED SCOTT, JAC GOUDSMIT, DWAYNE ROBERTS AND WILLIAM WEIDNER

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing NNI's entry into and approving a stipulation (the "Stipulation") with Price Paschall, Keith Weiner, Rudy Mathieu, Wendell Allen Neff, Charles Rowe, Neal Shact, Fred Scott, Jac Goudsmit, Dwayne Roberts and William Weidner (the "Claimants" and together with the Debtors, the "Parties"), attached hereto

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

as **Exhibit B**, which resolves the Claimants' claims against NNI; and (ii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

2

Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6.  Since the Petition Date, Nortel has sold its business units and other assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

**Relief Requested**

7.  By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

---

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**Facts Relevant to this Motion**

8.     On or about August 1, 2008, NNI and Keith Weiner entered into a certain Stock Purchase Agreement (the "SPA Agreement") whereby Weiner, as the record and beneficial owner of all of the issued and outstanding shares of capital stock of DiamondWare, Ltd. ("DiamondWare"), sold all of said shares to NNI upon the terms and subject to the conditions set forth in the SPA Agreement (the "Sale").

9.     Weiner represented the holders of DiamondWare options (Claimants Rudy Mathieu, Allen Neff, Charles Rowe, Neal Shact, Fred Scott, Jac Goudsmit and Dwayne Roberts) and the holder of a DiamondWare option right (Claimant William Weidner) in the Sale.

10.     On or about August 9, 2008, the Sale closed.

11.     Pursuant to the SPA Agreement, NNI withheld $771,861.68 from the Sale purchase price (the "Escrow Amount") to cover additional payments due to NNI, if any, and any indemnification liabilities arising after the close of the Sale, if any. The SPA Agreement provided that NNI would credit interest on the Escrow Amount at a rate of three percent per annum.  The SPA Agreement further provided that NNI was obligated to distribute the funds remaining in the escrow account plus interest thereupon to Claimants on February 9, 2010 (the "Escrow Obligation").

12.     Pursuant to the SPA Agreement, NNI was obligated to make an earn-out payment to some or all of the Claimants following each of three earn-out periods in the event that DiamondWare satisfied certain revenue goals in each earn-out period (the "Earn Out Obligation"). The earn-out periods are defined in the SPA Agreement as the periods ending December 31, 2009, December 31, 2010, and December 31, 2011.

13.     On or about July 20, 2009, NNI moved this Court to approve the sale of DiamondWare to Avaya, Inc ("Avaya") [D.I. 1131].

4

14. On September 16, 2009, the Court entered an order (the "Sale Order") approving the sale of NNI's equity interest in DiamondWare to Avaya. [D.I. 1514]. The Sale Order provided that it did not "authorize[] or otherwise provide[] for the assumption, assignment or rejection, in whole or in part," of the SPA, and further stated that rights of the Claimants with respect to the SPA were preserved in all respects [D.I. 1514 at 24-25].

15. On or about September 30, 2009, Keith Weiner filed proof of claim number 5523 in the amount of $3,867,935.00 ("Claim No. 5523").

16. On or about September 30, 2009, Rudy Mathieu filed proof of claim number 5524 in the amount of $575,168.00 ("Claim No. 5524").

17. On or about September 30, 2009, Wendell Allen Neff filed proof of claim number 5525 in the amount of $178,669.00 ("Claim No. 5525").

18. On or about September 30, 2009, Charles Rowe filed proof of claim number 5526 in the amount of $219,556.00 ("Claim No. 5526").

19. On or about September 30, 2009, Neal Shact filed proof of claim number 5527 in the amount of $592,950.00 ("Claim No. 5527").

20. On or about September 30, 2009, Fred Scott filed proof of claim number 5528 in the amount of $9,889.00 ("Claim No. 5528").

21. On or about September 30, 2009, Jac Goudsmit filed proof of claim number 5529 in the amount of $395.00 ("Claim No. 5529").

22. On or about September 30, 2009, Dwayne Roberts filed proof of claim number 5530 in the amount of $395.00 ("Claim No. 5530").

23. On or about September 30, 2009, William Weidner filed proof of claim number 5531 in the amount of $395.00 ("Claim No. 5531").

24. On or about September 30, 2009, Price Paschall filed proof of claim number 5532 in the amount of $164,485.00 ("Claim No. 5532", and together with Claim No. 5523, Claim No. 5524, Claim No. 5525, Claim No. 5526, Claim No. 5527, Claim No. 5528, Claim No. 5529, Claim No. 5530 and Claim No. 5531, the "Claims").

25. Each of the Claims seeks to recover portions of both the Escrow Obligation and the Earn Out Obligation.

26. In an effort to negotiate an expeditious resolution of the dispute between the Debtors and the Claimants regarding the Claims, the Parties entered into arm's-length settlement discussions.

27. As a result of these negotiations, subject to this Court's approval, NNI has reached a compromise with the Claimants, as memorialized in the Stipulation, to allow Claim No. 5523 as a general unsecured claim in the amount of $33,830.14, Claim No. 5524 as a general unsecured claim in the amount of $4,795.21, Claim No. 5525 as a general unsecured claim in the amount of $1,438.58, Claim No. 5526 as a general unsecured claim in the amount of $479.54, Claim No. 5527 as a general unsecured claim in the amount of $7,192.82, Claim No. 5528 as a general unsecured claim in the amount of $119.89, Claim No. 5529 as a general unsecured claim in the amount of $47.95, Claim No. 5530 as a general unsecured claim in the amount of $47.95, Claim No. 5531 as a general unsecured claim in the amount of $47.95, and Claim No. 5532 as a general unsecured claim in the amount of $2,000.00.[5]

28. Separately and in addition to the foregoing allowed Claims, the Parties have agreed that NNI shall cause the amount placed in escrow in connection with the Sale plus actual earned interest thereupon, a sum of $806,595.46 (the "Escrow Payment"), to be paid to

---

[5] This overview is intended as a summary of the terms of the Stipulation. If any conflict arises between this overview and the Stipulation, the terms of the Stipulation shall control.

Claimants. Under the terms of the Stipulation, the Escrow Payment would be paid within twenty days of the issuance of a Final Order by the Court approving this Stipulation. For purposes of this Motion, a "Final Order" means an order, the operation or effect of which has not been stayed, reversed or amended and as to which the time to appeal or move for review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

29.  The Escrow Payment shall be distributed among the Claimants as follows: Keith Weiner shall receive $545,744.75, Rudy Mathieu shall receive $77,355.89, Wendell Allen Neff shall receive $23,206.96, Charles Rowe shall receive $7,735.90, Neal Shact shall receive $116,033.84, Fred Scott shall receive $1,933.97, Jac Goudsmit shall receive $773.44, Dwayne Roberts shall receive $773.44, William Weidner shall receive $773.44, and Price Paschall shall receive $32,263.82.

30.  In consideration for the partial allowance of the Claims and the Escrow Payment, Claimants have agreed, subject to this Court's approval, to release all claims against the Debtors that Claimants now have or hereafter may have arising from or related to the Claims.

31.  The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Claims through the Stipulation is appropriate and in the best interest of both their estates and their creditors.

**Basis for Relief**

32.  The Debtors seek authorization to enter into the Stipulation under sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

33. Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (internal quotation omitted) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

34. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25. The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

35.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

36.     The Debtors respectfully submit that the Martin Factors weigh in favor of approving the Stipulation, and request that NNI's entry into the Stipulation be authorized under Bankruptcy Rule 9019.  While the Debtors are prepared to litigate the Claims and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there is no assurance that such litigation would achieve a better result than the one set forth in the Stipulation.  Also, the settlement reflected in the Stipulation reduces the Claims filed by the Claimanta against NNI's estate by $4,753,241.54.  This resolution fairly balances the Debtors' likelihood of success on the merits of the Claims against their interest in avoiding the uncertainty of litigation.

37.     In addition, litigation of the Claims would result in the estate's expenditure of significant legal fees.  Finally, the interests of the creditors militate in favor of approval of the Stipulation.  The Debtors believe that the interests of their creditors are served by the prompt and

efficient resolution of the Claims and the avoidance of legal expenses that would be incurred if the Claims were to be litigated.

38.     In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

39.     Notice of the Motion has been given via electronic transmission, hand delivery or first class mail to (i) the Claimants; (ii) counsel to Claimants; (iii) the U.S. Trustee; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; and (vi) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

40.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: October 28, 2013
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

   */s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*