**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
                                                            :
*In re*                                                     :    Chapter 11
                                                            :
Nortel Networks Inc., *et al.*,[1]                          :    Case No. 09-10138 (KG)
                                                            :
                          Debtors.                          :    Jointly Administered
                                                            :
------------------------------------------------------------X

### STIPULATION RESOLVING CLAIMS BY AND AMONG NORTEL NETWORKS INC. AND PRICE PASCHALL, KEITH WEINER, RUDY MATHIEU, WENDELL ALLEN NEFF, CHARLES ROWE, NEAL SHACT, FRED SCOTT, JAC GOUDSMIT, DWAYNE ROBERTS AND WILLIAM WEIDNER

This stipulation (the "Stipulation") is entered into by and among Nortel Networks Inc. (the "Nortel Debtor") and Price Paschall, Keith Weiner, Rudy Mathieu, Wendell Allen Neff, Charles Rowe, Neal Shact, Fred Scott, Jac Goudsmit, Dwayne Roberts and William Weidner (the "Claimants" and together with the Nortel Debtor, the "Parties"). The Parties hereby stipulate and agree as follows:

WHEREAS, on January 14, 2009 and July 14, 2009 (the "Petition Dates"), the Nortel Debtor and its affiliated debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (Case No. 09-10138 (KG) (Jointly Administered)); and

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq.com/nortel.

1

WHEREAS, the Bankruptcy Court established the general bar dates of September 30, 2009 (other than for claims against Nortel Networks (CALA) Inc.) and January 25, 2010 (for claims against Nortel Networks (CALA) Inc.) for filing proofs of claim in these cases; and

WHEREAS, on or about August 1, 2008, the Nortel Debtor and Keith Weiner entered into a certain Stock Purchase Agreement (the "SPA Agreement") whereby Weiner, as the record and beneficial owner of all of the issued and outstanding shares of capital stock of DiamondWare, Ltd. ("DiamondWare"), sold all of said shares to Nortel upon the terms and subject to the conditions set forth in the SPA Agreement (the "Sale"); and

WHEREAS, Weiner represented the holders of DiamondWare options (Claimants Rudy Mathieu, Allen Neff, Charles Rowe, Neal Shact, Fred Scott, Jac Goudsmit and Dwayne Roberts) and the holder of a DiamondWare option right (Claimant William Weidner) in the Sale; and

WHEREAS, on or about August 9, 2008, the Sale closed; and

WHEREAS, pursuant to the SPA Agreement, the Nortel Debtor withheld $771,861.68 from the Sale purchase price (the "Escrow Amount") to cover additional payments due to the Nortel Debtor, if any, and any indemnification liabilities arising after the close of the Sale, if any. The SPA Agreement provided that the Nortel Debtor would credit interest on the Escrow Amount at a rate of three percent per annum.  The SPA Agreement further provided that the Nortel Debtor was obligated to distribute the funds remaining in the escrow account plus interest thereupon to Claimants on February 9, 2010 (the "Escrow Obligation"); and

WHEREAS, pursuant to the SPA Agreement, the Nortel Debtor was obligated to make an earn-out payment to some or all of the Claimants following each of three earn-out periods in the event that DiamondWare satisfied certain revenue goals in each earn-out period (the "Earn Out Obligation"). The earn-out periods are defined in the SPA Agreement as the periods ending December 31, 2009, December 31, 2010, and December 31, 2011; and

WHEREAS, on or about July 20, 2009, the Nortel Debtor moved this Court to approve the sale of DiamondWare to Avaya, Inc ("Avaya") [D.I. 1131]; and

WHEREAS, on or about September 16, 2009, the Court entered an order (the "Sale Order") approving the sale of the Nortel Debtor's equity interest in DiamondWare to Avaya. [D.I. 1514].  The Sale Order provided that it did not "authorize[] or otherwise provide[] for the assumption, assignment or rejection, in whole or in part," of the SPA, and further stated that rights of the Claimants with respect to the SPA were preserved in all respects.  [D.I. 1514 at 24-25]; and

WHEREAS, on or about September 30, 2009, Keith Weiner filed proof of claim number 5523 in the amount of $3,867,935.00 for amounts allegedly owed by the Nortel Debtor pursuant to the SPA Agreement ("Claim No. 5523"); and

WHEREAS, on or about September 30, 2009, Rudy Mathieu filed proof of claim number 5524 in the amount of $575,168.00 for amounts allegedly owed by the Nortel Debtor pursuant to the SPA Agreement ("Claim No. 5524"); and

WHEREAS, on or about September 30, 2009, Wendell Allen Neff filed proof of claim number 5525 in the amount of $178,669.00 for amounts allegedly owed by the Nortel Debtor pursuant to the SPA Agreement ("Claim No. 5525").

3

WHEREAS, on or about September 30, 2009, Charles Rowe filed proof of claim number 5526 in the amount of $219,556.00 for amounts allegedly owed by the Nortel Debtor pursuant to the SPA Agreement ("Claim No. 5526"); and

WHEREAS, on or about September 30, 2009, Neal Shact filed proof of claim number 5527 in the amount of $592,950.00 for amounts allegedly owed by the Nortel Debtor pursuant to the SPA Agreement ("Claim No. 5527"); and

WHEREAS, on or about September 30, 2009, Fred Scott filed proof of claim number 5528 in the amount of $9,889.00 for amounts allegedly owed by the Nortel Debtor pursuant to the SPA Agreement ("Claim No. 5528"); and

WHEREAS, on or about September 30, 2009, Jac Goudsmit filed proof of claim number 5529 in the amount of $395.00 for amounts allegedly owed by the Nortel Debtor pursuant to the SPA Agreement ("Claim No. 5529"); and

WHEREAS, on or about September 30, 2009, Dwayne Roberts filed proof of claim number 5530 in the amount of $395.00 for amounts allegedly owed by the Nortel Debtor pursuant to the SPA Agreement ("Claim No. 5530"); and

WHEREAS, on or about September 30, 2009, William Weidner filed proof of claim number 5531 in the amount of $395.00 for amounts allegedly owed by the Nortel Debtor pursuant to the SPA Agreement ("Claim No. 5531"); and

WHEREAS, on or about September 30, 2009, Price Paschall filed proof of claim number 5532 in the amount of $164,485.00 for amounts allegedly owed by the Nortel Debtor pursuant to the SPA Agreement ("Claim No. 5532", and together with Claim No. 5523, Claim No. 5524, Claim No. 5525, Claim No. 5526, Claim No. 5527, Claim No. 5528, Claim No. 5529, Claim No. 5530 and Claim No. 5531, the "Claims"); and

WHEREAS, each of the Claims seeks to recover portions of both the Escrow Obligation and the Earn Out Obligation; and

WHEREAS, on September 16, 2010, the Bankruptcy Court entered an Order Authorizing and Approving Settlement Procedures to Settle Certain Prepetition Claims [D.I. 3953] (the "Settlement Procedures Order") in which the Bankruptcy Court authorized the Debtors to settle certain prepetition claims on limited notice; and

WHEREAS, the Parties have engaged in arm's-length negotiations and, in order to avoid the cost and risk inherent in litigating the Claims, the Parties have agreed to this Stipulation to resolve their disputes; and

WHEREAS, the Parties have agreed that Claim No. 5523 should be allowed as a general unsecured claim in the amount of $33,830.14; and

WHEREAS, the Parties have agreed that Claim No. 5524 should be allowed as a general unsecured claim in the amount of $4,795.21; and

WHEREAS, the Parties have agreed that Claim No. 5525 should be allowed as a general unsecured claim in the amount of $1,438.58; and

WHEREAS, the Parties have agreed that Claim No. 5526 should be allowed as a general unsecured claim in the amount of $479.54; and

WHEREAS, the Parties have agreed that Claim No. 5527 should be allowed as a general unsecured claim in the amount of $7,192.82; and

WHEREAS, the Parties have agreed that Claim No. 5528 should be allowed as a general unsecured claim in the amount of $119.89; and

WHEREAS, the Parties have agreed that Claim No. 5529 should be allowed as a general unsecured claim in the amount of $47.95; and

WHEREAS, the Parties have agreed that Claim No. 5530 should be allowed as a general unsecured claim in the amount of $47.95; and

WHEREAS, the Parties have agreed that Claim No. 5531 should be allowed as a general unsecured claim in the amount of $47.95; and

WHEREAS, the Parties have agreed that Claim No. 5532 should be allowed as a general unsecured claim in the amount of $2,000.00; and

WHEREAS, the Parties have further agreed that the Nortel Debtor shall cause the Escrow Amount plus actual earned interest thereupon, a sum total of $806,595.46, to be paid in accordance with the terms of this Stipulation to Claimants within twenty days (the "Escrow Payment") of the issuance of a Final Order (as defined below) by the Court approving this Stipulation; and

WHEREAS, the Escrow Payment shall be distributed among the Claimants as follows: Keith Weiner shall receive $545,744.75; Rudy Mathieu shall receive $77,355.89; Wendell Allen Neff shall receive $23,206.96; Charles Rowe shall receive $7,735.90; Neal Shact shall receive $116,033.84; Fred Scott shall receive $1,933.97; Jac Goudsmit shall receive $773.44; Dwayne Roberts shall receive $773.44; William Weidner shall receive $773.44; and Price Paschall shall receive $32,263.82.

NOW, THEREFORE, the Parties agree and stipulate as follows:

1. Resolution of Claims.

   (a)    Claim No. 5523 is allowed as a general unsecured claim against the Nortel Debtor in the amount of $33,830.14;

   (b)    Claim No. 5524 is allowed as a general unsecured claim against the Nortel Debtor in the amount of $4,795.21;

(c) Claim No. 5525 is allowed as a general unsecured claim against the Nortel Debtor in the amount of $1,438.58;

(d) Claim No. 5526 is allowed as a general unsecured claim against the Nortel Debtor in the amount of $479.54;

(e) Claim No. 5527 is allowed as a general unsecured claim against the Nortel Debtor in the amount of $7,192.82;

(f) Claim No. 5528 is allowed as a general unsecured claim against the Nortel Debtor in the amount of $119.89;

(g) Claim No. 5529 is allowed as a general unsecured claim against the Nortel Debtor in the amount of $47.95;

(h) Claim No. 5530 is allowed as a general unsecured claim against the Nortel Debtor in the amount of $47.95;

(i) Claim No. 5531 is allowed as a general unsecured claim against the Nortel Debtor in the amount of $47.95;

(j) Claim No. 5532 is allowed as a general unsecured claim against the Nortel Debtor in the amount of $2,000.00;

(k) Separately and in addition to the foregoing allowed Claims, the Escrow Payment shall be distributed among the Claimants as follows: Keith Weiner shall receive $545,744.75; Rudy Mathieu shall receive $77,355.89; Wendell Allen Neff shall receive $23,206.96; Charles Rowe shall receive $7,735.90; Neal Shact shall receive $116,033.84; Fred Scott shall receive $1,933.97; Jac Goudsmit shall receive $773.44; Dwayne Roberts shall receive $773.44; William Weidner shall receive $773.44; and Price Paschall shall receive $32,263.82;

(l) The Nortel Debtor shall use commercially reasonable efforts to effectuate the distribution of the Escrow Payment, as described in paragraph 1(k) above, within twenty (20) calendar days after the order by the Bankruptcy Court granting Court Approval becomes a Final Order. For purposes of this Stipulation, a "Final Order" means an order, the operation or effect of which has not been stayed, reversed or amended and as to which the time to appeal or move for review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; and

(m) The allowance of the Claims described in paragraphs 1(a) through (j) and the Escrow Payment described in paragraphs 1(k) and (l) are granted in full satisfaction of any and all claims that have been or could have been asserted in the Claims and shall amend and supersede any and all claim amounts the Debtors list on their schedules filed with the Bankruptcy Court arising from or related to the facts underlying the Claims. Claimants shall not have any further claims against the Debtors, based on the Debtors' schedules.

2. Release.

(a) Except as provided in paragraphs 1(a) through (l) hereof, each Claimant releases and forever discharges the Debtors and their respective current and former affiliates, subsidiaries, shareholders, directors, officers, employees, agents, attorneys, and their personal representatives, successors and assigns, from any and all liability from any claims, defenses, demands, liabilities and obligations, damages, actions, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorney's fees),

known or unknown, past or present, fixed or contingent, liquidated or unliquidated which each Claimant now has or hereafter may have arising from or related to the Claims.

(b) **WITH RESPECT TO THE RELEASES PROVIDED HEREIN, CLAIMANTS FURTHER ACKNOWLEDGE AND EXPRESSLY WAIVE THE BENEFIT OF ANY STATUTORY PROVISION OR COMMON LAW RULE THAT PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH CLAIMANTS DO NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTION, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542.**

3. No Further Claims.  Each Claimant agrees that it shall be forever barred from (i) amending the Claims or (ii) filing or otherwise asserting any further claim arising from or relating to the Claims, or the facts underlying the Claims, against any of the Debtors in the Debtors' chapter 11 cases.

4. Binding Effect.  Effective upon the entry of an order by the Bankruptcy Court approving this Stipulation, this Stipulation and the order approving this Stipulation shall be binding upon any successors or assigns of the Parties, including any trustee or receiver subsequently appointed in the Debtors' Chapter 11 cases.

5. Entire Agreement.  This Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof and this Stipulation cannot be amended except by an authorized written agreement between the Parties.

6. <u>No Transfer to a Third Party</u>.  Each Claimant represents that it has not sold, assigned or otherwise transferred the Claims or any of the claims being released pursuant to this Stipulation to a third party as of the date of the stipulation.

7. <u>No Admissions</u>.  Without limiting the legal effect of the substantive provisions of this Stipulation, including without limitation the allowance of the Claims in paragraphs 1(a) through (j) and the Escrow Payment described in paragraphs 1(k) and (l), each Party acknowledges and agrees that nothing in this Stipulation constitutes an admission or concession of any fact or legal issue raised in or relating to the Claims.

8. <u>Costs and Expenses</u>.  Each Party agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and preparation of this Stipulation and to not seek from each other reimbursement of any such costs, expenses or attorneys' fees.

9. <u>Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction over the implementation of this Stipulation and any disputes arising hereunder.

10. <u>Manner of Execution</u>.  This Stipulation may be executed in counterparts, each of which shall be an original, and such counterparts shall be construed together as one instrument.  Facsimile or pdf signatures shall be deemed original signatures.

11. <u>Court Approval</u>.  All provisions of this Stipulation are subject to the approval of the Bankruptcy Court ("<u>Court Approval</u>").  The Debtors shall file a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking Court Approval within fifteen (15) calendar days of the execution of this Stipulation by all parties hereto.  In the event this Stipulation is not approved by the Bankruptcy Court, the Parties reserve all of their rights and defenses with respect to the Claim and this proposed settlement shall not

constitute an admission by the Debtors or their affiliates regarding the validity of the Claim or that they have any liability thereunder.

12. <u>Claims Register</u>.  The Debtors, the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

[Remainder of Page Left Intentionally Blank]

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: ~~[May]~~ Aug. 16, 2013

Nortel Networks Inc.

By:_____
Name: John J. Ray, III
Title:   Principal Officer

_____
Price Paschall

_____
Keith Weiner

_____
Rudy Mathieu

_____
Wendell Allen Neff

*Charles A. Rowe*  8/16/2013
_____
Charles Rowe

_____
Neal Shact

_____
Fred Scott

_____
Jac Goudsmit

_____
Dwayne Roberts

_____
William Weidner

12

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: [May] October 28, 2013

Nortel Networks Inc.

By:_____
Name: John J. Ray, III
Title: Principal Officer

_____
Price Paschall *(signed)*

_____
Keith Weiner

_____
Rudy Mathieu

_____
Wendell Allen Neff

_____
Charles Rowe

_____
Neal Shact

_____
Fred Scott

_____
Jac Goudsmit

_____
Dwayne Roberts

_____
William Weidner

12

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: ~~May~~ Aug 16, 2013

Nortel Networks Inc.

By:_____
Name:  John J. Ray, III
Title:   Principal Officer

_____
Price Paschall

_____
Keith Weiner

_____
Rudy Mathieu

_____
Wendell Allen Neff

_____
Charles Rowe

_____
Neal Shact

_____
Fred Scott

_____
Jay Goudsmit

_____
Dwayne Roberts

_____
William Weidner

12

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: [~~May~~] August 16, 2013

*(NJR)*

Nortel Networks Inc.

By:_____
Name: John J. Ray, III
Title: Principal Officer

_____
Price Paschall

_____
Keith Weiner

_____
Rudy Mathieu

_____
Wendell Allen Neff

_____
Charles Rowe

*/s/ Neal Shact*
_____
Neal Shact

_____
Fred Scott

_____
Jac Goudsmit

_____
Dwayne Roberts

_____
William Weidner

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: October 28, 2013

Nortel Networks Inc.

By: _____
Name: John J. Ray, III
Title: Principal Officer

_____
Price Paschall

_____
Keith Weiner

_____
Rudy Mathieu

_____
Wendell Allen Neff

_____
Charles Rowe

_____
Neal Shact

_____
Fred Scott

_____
Jac Goudsmit

_____
Dwayne Roberts

_____
William Weidner

12