**<u>EXHIBIT B</u>**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>NORTEL NETWORKS INC., *et al.*,<br><br>               Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>Jointly Administered |

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO CHAPTER II OF THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS: <u>DEPOSITION OF JEAN-MARIE LESUR</u>**

      A request is hereby made by the United States Bankruptcy Court for the District of Delaware to the Ministère de la Justice, Direction des Affaires Civiles et du Sceau, Bureau de l'entraide civile et commerciale internationale (D3), 13, Place Vendôme, 75042 Paris Cedex 01, France (the "<u>Ministère de la Justice</u>"), for assistance in obtaining evidence to be used in a civil proceeding before the Court in the above-captioned action. This Court (the "<u>Requesting Court</u>") has determined that it would further the interests of justice if the persons identified herein were deposed, under oath, as to their knowledge of the facts relevant to the issues of this action. This request is made pursuant to Chapter II of the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters (the "<u>Hague Convention</u>").

      In conformity with Article 17 of the Hague Convention, the Requesting Court presents its compliments to the Ministère de la Justice, and has the honor of requesting assistance in obtaining approval for a Commissioner to take evidence and testimony with the consent of the parties and the French witness identified herein pursuant to Chapter II of the Hague Convention. The proposed Commissioner, Alexander B. Blumrosen, is an attorney at law resident in France and is qualified to serve as a Commissioner in this matter. Mr. Blumrosen has advised the

parties that he is willing to serve as a Commissioner in this matter, if appointed.  Attached hereto is the Order of the Requesting Court appointing Mr. Blumrosen as Commissioner, pending the approval of the Ministère de la Justice.  Mr. Blumrosen's office address is as follows:  Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France.  Mr. Blumrosen's telephone number is (01) 43 18 80 80 and his fax number is (01) 43 18 80 90.

The Requesting Court previously requested the assistance of the Ministère de la Justice in taking evidence and testimony of the French witness identified herein pursuant to the compulsory process of Chapter I of the Hague Convention, as the witness had previously refused to appear voluntarily.  The witness has since agreed to appear voluntarily.  Thus, in the interests of judicial economy and efficiency, the Requesting Court respectfully requests the assistance of the Ministère de la Justice in authorizing the use of the voluntary procedures of Chapter II of the Hague Convention.  The Requesting Court respectfully maintains its previous request that the compulsory process of Chapter I of the Hague Convention be authorized in the event that Mr. Lesur does not appear voluntarily.

| | | |
|---|---|---|
| **1.** | **Sender** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |
| **2.** | **Central Authority of the Requested State** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau de l'entraide civile et commerciale internationale (D3)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
| **3.** | **Person to whom the executed request is to be returned** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware |

824 Market Street North, 3rd Floor
Wilmington, Delaware 19801
United States of America

**4.    Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | |
|---|---|
| **Date** | Examination to occur on a date prior to 13 December 2013 at Cleary Gottlieb Steen & Hamilton LLP, 12, rue de Tilsitt, 75008 Paris, France, or at a location to be agreed by the parties and the witness and communicated by the Commissioner to the Ministère de la Justice in advance of the examination, if it is not possible to hold the deposition at the United States Embassy. |
| **Reason for urgency** | The joint hearings for which the evidence will be used will begin on 1 April 2014.  The parties' pretrial examinations must be concluded by 13 December 2013. |

IN CONFORMITY WITH CHAPTER II, ARTICLE 17 OF THE HAGUE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | |
|---|---|---|
| **5.** | **(a)  Requesting judicial authority** | The Honorable Kevin Gross<br>United States Bankruptcy Court<br>District of Delaware<br>824 Market Street North, 3rd Floor<br>Wilmington, Delaware 19801<br>United States of America |
| | **(b)  To the competent authority of** | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau de l'entraide civile et commerciale internationale (D3)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
| | **(c)  Names of the case and any identifying number** | *In re Nortel Networks Inc., et al* – Case No. 09-10138 (KG)<br>United States Bankruptcy Court for the District of Delaware |

6.    **Names and addresses of the parties
      and their representatives**

    **(a)  Plaintiff** (Claimants)               **Joint Administrators and EMEA Debtors**

**Representatives**                                 Derek J.T. Adler
Neil J. Oxford
Fara Tabatabai
Charles H. Huberty
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
United States of America
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Edwin J. Harron
John T. Dorsey
Jamie Luton Chapman
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Robin Schwill
Sean R. Campbell
Davies Ward Phillips & Vineberg LLP
155 Wellington Street West
Toronto, ON M5V 3J7
Canada
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

Matthew P. Gottlieb
Tracy Wynne
Lax O'Sullivan Scott Lisus LLP
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

John Whiteoak
James Norris-Jones
Herbert Smith Freehills LLP
Exchange House
Primrose Street
London EC2A 2HS
United Kingdom

**U.K. Pension Claimants**

Marc Abrams
Brian E. O'Connor
Sameer Advani
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
United States of America
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Charlene D. Davis
Justin Alberto
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
United States of America
Telephone: (302) 655-5000
Facsimile: (212) 658-6395

David Ward
William Burden
Lara Jackson
Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

Angela Dimsdale Gill
John Tillman
Matthew Bullen
Hogan Lovells International LLP
Atlantic House
Holborn Viaduct

|  |  |
|---|---|
|  | London EC1A 2FG |
|  | United Kingdom |

**(b) Defendants** (U.S. Debtors)          **Nortel Networks Inc.,** *et al.*

**Representatives**

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
United States of America
Telephone: (212) 225-2000

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
United States of America
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
Torys LLP
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2
Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

**(c) Other Parties**          **The Monitor and Canadian Debtors**

**Representatives**

Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
James Barabas
Michael Sadowitz

Jacob S. Pultman
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
United States of America
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

David Por
Allen & Overy LLP
52 avenue Hoche
CS 90005
75379 Paris Cedex 08
Paris 75379
France

Mary F. Caloway
Kathleen A. Murphy
Buchanan Ingersoll & Rooney PC
1105 North Market Street
Suite 1900
Wilmington, Delaware 19801
United States of America
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Jessica Kimmel
Peter Ruby
Alan Mark
Jason Wadden
Lauren Butti
Goodmans LLP
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979-2211
Facsimile: (416) 979-1234

Jennifer Stam
Derrick Tay

Peter Choe
Graham Smith
Gowling Lafleur Henderson LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Telephone: (416) 216-4000
Facsimile: (416) 216-3930

Alan Merskey
Norton Rose Canada LLP
TD Waterhouse Tower, Suite 2300
79 Wellington Street West, P.O. Box 128
Toronto, ON M5K 1H1
Canada
Telephone: (416) 216-4805
Facsimile: (416) 216-3930

**Official Committee of Unsecured Creditors**

Fred Hodara
David Botter
Robert A. Johnson
Abid Qureshi
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
United States of America
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
United States of America
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder

Dentons Canada LLP
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

7.    **(a)  Nature of the proceedings**          Bankruptcy proceeding

    **(b)  Summary of complaint**

This action, captioned *In re Nortel Networks Inc., et al.*, Case No. 09-10138 (KG), is a bankruptcy proceeding pending before the Requesting Court.  On 14 January 2009 (the "Petition Date"), the U.S. Debtors,[1] with the exception of NN CALA, each filed a voluntary petition for relief in the Requesting Court under chapter 11 of the United States Bankruptcy Code.  NN CALA filed its petition on 14 July 2009 [D.I. 1098].  NNI is incorporated in the United States in the State of Delaware.  Other parties with interests related to the U.S. Debtors include an Official Committee of Unsecured Creditors of the U.S. Debtors (the "U.S. Committee").

Also on the Petition Date, the Nortel group's ultimate corporate parent, Nortel Networks Corporation ("NNC"), its operating subsidiary Nortel Networks Limited ("NNL"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors") filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors, and a monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court.  Other parties with interests related to the Canadian Debtors include a Canadian Creditors Committee (the "CCC") and former

---

1.    The debtors in these chapter 11 cases (the "U.S. Debtors") are:  Nortel Networks Inc. ("NNI"); Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros, Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; Nortel Networks Cable Solutions Inc.; and Nortel Networks (CALA) Inc. ("NN CALA").

directors and officers of the Canadian Debtors (the "Directors and Officers").

On the same date, upon the request of Nortel Networks UK Limited ("NNUK") and eighteen of its affiliates from Europe, the Middle East, and Africa (collectively, the "EMEA Debtors"), which included NNUK's French affiliate Nortel Networks S.A. ("NNSA"),[2] the High Court of Justice of England and Wales (the "English Court") placed the EMEA Debtors into administration (the "English Proceedings"), and appointed individuals from Ernst & Young LLP as administrators (collectively, the "Joint Administrators").[3]  On 28 May 2009, NNSA entered secondary insolvency proceedings in the Commercial Court of Versailles and Cosmé Rogeau was appointed as the French Liquidator.  NNSA is a French corporation with its former registered office at Centre d'Affaires Parc Lumiere, 46 Avenue des Freres Lumiere, F78190 Trappes, France.

Pursuant to an Order Approving Allocation Protocol dated 3 April 2013 [D.I. 9947] entered by the Requesting Court and a corresponding endorsement by the Canadian Court on the same date, as well as an Order dated October 18, 2013 [D.I. 11967] and a corresponding endorsement by the Canadian Court on October 29, 2013, the Requesting Court and the Canadian Court (together, the "Courts") will hold joint hearings commencing on 1 April 2014 to

---

2.  In addition to NNUK and NNSA, orders of administration were sought with respect to: Nortel Networks (Ireland) Limited ("NN Ireland"); Nortel GmbH ("NN Germany"); Nortel Networks (Austria) GmbH ("NN Austria"); Nortel Networks AB ("NN Sweden"); Nortel Networks Engineering Service Kft ("NN Hungary"); Nortel Networks France S.A.S. ("NN France SAS"); Nortel Networks Hispania, S.A. ("NN Spain"); Nortel Networks N.V. ("NN Belgium"); Nortel Networks Oy ("NN Finland"); Nortel Networks Polska Sp. z.o.o. ("NN Poland"); Nortel Networks Portugal S.A. ("NN Portugal"); Nortel Networks Romania SRL ("NN Romania"); Nortel Networks S.p.A. ("NN Italy"); Nortel Networks Slovensko, s.r.o. ("NN Slovakia"); Nortel Networks, s.r.o. ("NN Czech Rep."); Nortel Networks International Finance & Holding B.V. ("NNIF"); and Nortel Networks B.V. ("NN Holland").

3.  The Joint Administrators for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited, are:  Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators for Nortel Networks (Ireland) Limited are:  Alan Robert Bloom and David Martin Hughes.

decide certain issues, including principally:  (i) the allocation of proceeds from sales of the assets

of the Nortel group among the U.S. Debtors, Canadian Debtors, and EMEA Debtors (the

"Allocation Dispute"); (ii) claims filed against the U.S. Debtors and Canadian Debtors by

NNUK, other EMEA Debtors, certain affiliates of the EMEA Debtors, and the French Liquidator

(the "EMEA Claims"); and (iii) claims filed against the U.S. Debtors and Canadian Debtors

relating to NNUK's pension fund (the "U.K. Pension Claims") by the Nortel Networks UK

Pension Trust Limited, as trustee of the Nortel Networks UK Pension Plan (the "U.K. Pension

Trustee"), and the Board of the Pension Protection Fund, a privately funded insurer (the "PPF,"

and together with the U.K. Pension Trustee, the "U.K. Pension Claimants").

As part of the upcoming joint hearings, each party submitted to the Requesting Court an

allocation position detailing its proposed methodology for determining the allocation of proceeds

from sales of the assets of the Nortel group.  The parties' allocation positions put at issue a

variety of factors, including but not limited to the significance of intercompany agreements

governing transfer pricing to the estates' respective entitlement to Nortel intellectual property;

the proportion of Nortel's revenue and cash flow generated by the U.S. Debtors, Canadian

Debtors, and EMEA Debtors; the location, nature, and results of Nortel's research and

development activities and the proportional contribution of the estates to such activities; pre- and

post-petition asset sales; and the locus of other fixed and intangible Nortel assets, including

customer relationships.[4]

---

4.   The Core Parties' opening and responsive allocation positions are publicly available at
     http://dm.epiq11.com/NNI/Project, under the docket numbers indicated:  allocation position of the Joint
     Administrators and EMEA Debtors [D.I. 10536]; allocation position of the U.S. Debtors and U.S. Committee
     [D.I. 10537]; allocation position of the CCC [D.I. 10538]; allocation position of the U.K. Pension Claimants
     [D.I. 10539]; allocation position of the Bondholders [D.I. 10540]; allocation position of the Monitor and
     Canadian Debtors [D.I. 10543]; joinder of the Bank of New York Mellon in the allocation position of the U.S.
     Debtors and U.S. Committee [D.I. 10547]; joinder of Law Debenture Trust Company of New York in the
     allocation position of the U.S. Debtors and U.S. Committee and in the allocation position of the Bondholders

The EMEA Claims and U.K. Pension Claims likewise put at issue a variety of factors, including but not limited to the solvency of the various EMEA Debtors during the years 2000 through 2008; whether NNUK had sufficient resources to fund the Nortel Networks UK Pension Plan and whether it is reasonable to impose upon the Canadian Debtors and U.S. Debtors an obligation to make up for any shortfall; and whether the EMEA Debtors were harmed by various Nortel arrangements and intercompany transactions, including Nortel's transfer pricing system, a transaction known as Project Swift and the accompanying reorganization of Nortel, certain intercompany loans and dividends, and sales of Nortel assets that preceded the Petition Date. The EMEA Claims and U.K. Pension Claims allege that the U.S. Debtors and Canadian Debtors are liable for these transactions because they dominated or controlled the EMEA Debtors or were otherwise culpable for breaches of duties owed to the EMEA Debtors, because the transactions resulted in unjust enrichment, or for other reasons.[5]

All of the parties (including NNUK, NNSA, the other EMEA Debtors, and the U.K.

---

[D.I. 10548]; joinder of Wilmington Trust, National Association, in the allocation position of the Monitor and Canadian Debtors and in the allocation position of the CCC [D.I. 10563]; responsive allocation submission of the Joint Administrators and EMEA Debtors [D.I. 10687]; responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10690]; joinder of Law Debenture Trust Company of New York in the responsive allocation submission of the U.S. Debtors and U.S. Committee [D.I. 10691]; responsive allocation submission of Wilmington Trust, National Association [D.I. 10692]; responsive allocation submission of the U.K. Pension Claimants [D.I. 10693]; responsive allocation submission of the Bondholders [D.I. 10694]; responsive allocation submission of the CCC [D.I. 10695]; responsive allocation submission of the Monitor and Canadian Debtors [D.I. 10696].

5.    The operative claims filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project, under the docket numbers or claim numbers indicated:  amended claims of NNUK [C.I. 7786]; amended claims of NNSA's court-appointed liquidator [C.I. 7784]; amended claims of NNSA [C.I. 7785]; amended claims of NNIF [C.I. 7776]; amended claims of NNIR [C.I. 7774]; amended claims of NN Italy [C.I. 7775]; amended claims of NN Spain [C.I. 7787]; amended claims of NN Holland [C.I. 7780]; amended claims of NN Belgium [C.I. 7781]; amended claims of NN Poland [C.I. 7754]; amended claims of NN Switzerland [C.I. 7752]; amended claims of NN Germany [C.I. 7778]; amended claims of NN Portugal [C.I. 7751]; amended claims of NN Czech Rep. [C.I. 7782]; amended claims of NN Austria [C.I. 7755]; amended claims of NN Sweden [C.I. 7779]; amended claims of NN Hungary [C.I. 7756]; amended claims of NN Slovakia [C.I. 7750]; amended claims of NN Norway [C.I. 7762]; amended claims of NN Romania [C.I. 7783]; amended claims of NN Finland [C.I. 7753]; amended claims of the Nortel Networks U.K. Pension Trust Limited and Board of the Pension Protection Fund [C.I. 8357, 8358].  The operative claims filed in the Canadian Court are publicly available at http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

Pension Claimants) are currently engaged in the process of obtaining evidence by order of the

Requesting Court and Canadian Court in anticipation of the joint hearings.

The evidence sought from the person identified below may be material to the resolution

of these factual disputes.

| | |
|---|---|
| **(c) Summary of defense and counterclaims** | The U.S. Debtors, U.S. Committee, Monitor, and Canadian Debtors have objected to the EMEA Claims and U.K. Pension Claims on a variety of grounds, claiming that the U.S. Debtors and Canadian Debtors did not owe duties to the EMEA Debtors, no duties were breached, no assistance was provided in respect of any such breaches, there was no unjust enrichment or other factual basis for the claims, the claims are barred by various equitable and other doctrines, the claims should be disallowed as a matter of comity, and other reasons.[6] |
| **(d) Other necessary information or documents** | All such documents and statements designated as such shall be treated by counsel to the parties in this lawsuit as "Confidential" or "Highly Confidential" pursuant to the Order Entering a Protective Order entered on 11 June 2013 [D.I. 10805], as amended, such that designated documents may only be disclosed to attorneys for the parties, third party witnesses, the Commissioner, and the Courts, under specific confidentiality restrictions, absent further order of the Courts. |
| **8. (a) Evidence to be obtained or other judicial act to be performed** | An examination is requested of Mr. Jean-Marie Lesur (the "<u>Witness</u>"), Director for NNSA from 2006 to 2009, and for Northern Telecom France S.A. ("<u>NT France</u>") from 2005 to 2009, and employed as Directeur, Financier D'Activité for NNSA from 2000 to 2002, and |

---

6. The objections of the U.S. Debtors and U.S. Committee filed in the Requesting Court are publicly available at http://dm.epiq11.com/NNI/Project under the docket numbers indicated: Joint Omnibus Objection to the Remaining Amended Claims Filed by the EMEA Claimants [D.I. 10521]; Joint Objection to the Proofs of Claim Filed by the Nortel Networks UK Pension Trust Limited (as Trustee of the Nortel Networks UK Pension Plan) and Board of the Pension Protection Fund [D.I. 10519]. Objections to the claims filed in the Canadian Court are publicly available at: http://documentcentre.eycan.com/Pages/Main.aspx?SID=89&Redirect=1.

in Financial Planning & Analysis for NNSA from 2000 to 2009.  In response to interrogatories, the EMEA Debtors have identified the Witness as among those persons affiliated with them most knowledgeable regarding pre-petition asset sales, which are among the factual predicates of the EMEA Claims.  In the course of their continuing review of documents provided by the parties, the Joint Administrators may identify additional subjects regarding which the Witness is knowledgeable.

**(b)  Purpose of the evidence or judicial action sought**

As a former Director of NNSA and NT France, the Witness is likely to have knowledge relevant to the parties' allocation positions, claims, and defenses, as described above.

As a former Director of NNSA and NT France, the Witness is likely to have knowledge relevant to the EMEA Claims.  The factual predicates of the Claims brought by NNSA and the other EMEA Debtors – including the alleged unfairness of Nortel's transfer pricing system, Project Swift, the accompanying reorganization of NNIF, intercompany loans, and pre-petition asset sales – relate to the time period of the Witness's directorships.  The EMEA Claims and U.K. Pension Claims also allege that the EMEA Debtors' directors – including those of NNSA – breached their fiduciary duties in connection with those transactions.

Further, the EMEA Claims allege, *inter alia*, that the U.S. Debtors and Canadian Debtors are liable to the EMEA Debtors in connection with the above transactions because the U.S. Debtors and Canadian Debtors dominated or controlled the decision-making of the EMEA Debtors.  In connection with their application for initial orders from the English Court placing the EMEA Debtors into administration, the EMEA Debtors submitted sworn witness statements, including from Michel Clément, a president and director of NNSA (the "<u>Clément Witness</u>

Statement"), which included various assertions relating to control over the EMEA Debtors.  The U.S. Debtors have argued that the Clément Witness Statement is inconsistent with the assertions in the EMEA Claims of U.S. or Canadian domination or control.  As a former Director of NNSA, the Witness may have knowledge relevant to the issue of alleged U.S. or Canadian domination or control.

Based upon these and other considerations, the EMEA Debtors have designated, and the U.S. Debtors and Canadian Debtors have cross-designated, the Witness to be examined.  The Witness has indicated that he is willing to appear voluntarily for his deposition.

By order of the Requesting Court, Alexander B. Blumrosen, Avocat au Barreau de Paris, Bernard-Hertz-Béjot, 8, rue Murillo, 75008 Paris, France, has been appointed as the Commissioner to take evidence and testimony in the above-captioned action in France, pending the approval of the Ministère de la Justice.

| | | |
|---|---|---|
| **9.** | **Identity and address of any person to be examined** | Mr. Jean-Marie Lesur<br>29 rue Rémusat<br>75016 Paris<br>France |

**10.     Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court, on the facts within the Witness's knowledge that relate to the following subjects:

> a.    The organization, management, and operation of the Nortel group, including the tax and treasury functions, accounting, cash management, planning, budgeting, research and development, sales, purchasing, manufacturing, outsourcing, and

third-party intellectual property ownership and licensing;

b.     The history, functioning, and organization of Nortel's "matrix" corporate structure, including how financial reporting was conducted and the roles within the corporate structure of the EMEA Debtors, the U.S. Debtors, and the Canadian Debtors;

c.     The management, operations, and governance of the Nortel group, and each of NNSA and the other EMEA Debtors, including but not limited to the powers, actions, and control of the boards of directors and senior officers of NNL, NNC, NNI, NNSA, and the other EMEA Debtors;

d.     The identity and location of the officers or other senior management for NNSA and the other EMEA Debtors involved in finance, control, tax, treasury, and banking functions, human resources, operations, sales and dealings with customers and suppliers, and the settlement of intercompany accounts;

e.     The statements and factual assertions contained in the EMEA Debtors' chapter 15 petitions, the Clément Witness Statement, and the witness statements submitted by EMEA Director Sharon Rolston;

f.     The factual bases underlying recognition of the English Proceedings as foreign main proceedings as to the EMEA Debtors;

g.     The allegations made in the EMEA Claims to the effect that NNC and/or NNL controlled the Nortel Group's operations, and that NNI participated in or assisted such control, including but not limited to control of group tax, transfer pricing, and treasury functions;

h.     The allegations made in the EMEA Claims that the de jure directors of NNSA and

the other EMEA Debtors breached their fiduciary duties or otherwise failed to act properly, any claims threatened or asserted or litigation commenced against any of the current or former directors or officers of NNSA or the other EMEA Debtors related to their breaches of fiduciary duties or any of the matters alleged in the EMEA Claims, and any communications with such directors regarding those proceedings or the subject matter of those proceedings;

i.      Any policy, practice, or control concerning directors' and officers' fiduciary or other duties under relevant law;

j.      The profitability, revenue, expenses, cash flow, and value of, and accounting for, the various Nortel entities and Lines of Business, including ownership and valuation of tangible assets associated with each Line of Business;

k.      Debt financing transactions and credit facilities;

l.      Pre-petition Asset Sales involving NNSA or the other EMEA Debtors and the classification of assets and allocation of proceeds therefrom, including but not limited to related planning, negotiations, discussions, consideration, approvals, and involvement by the boards of directors or personnel of NNSA or the other EMEA Debtors, or any tax authority, and any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect thereto, and the factual basis for the allegations in the EMEA Claims concerning such sales;

m.      Business acquisitions by Nortel, the significance of intellectual property in acquisitions as the value driver for the transactions, and the integration of acquired businesses into Nortel;

n.     Pre-petition restructurings and associated costs, including the decision-making process regarding such restructurings and the determination of which entities bore associated costs;

o.     Pre-petition vendor financing;

p.     Ownership (including beneficial ownership), registration, maintenance, enforcement, valuation, amortization, business and/or strategic importance, licensing (intercompany, related party, and third party), acquisition, and sale of Nortel's intellectual property and associated rights;

q.     Intellectual property-related costs and revenue streams, allocation of such costs and revenue streams, and accounting therefor;

r.     The organization, make-up, and activity of Nortel's intellectual property-related legal and business teams;

s.     Valuations or analyses commissioned or conducted, whether pre-petition or post-petition, concerning the value of Nortel's intellectual property, business lines, research and development efforts, or other business-related tangibles or intangibles in any jurisdiction or for any subsidiary;

t.     Agreements and practices among Nortel entities in respect of intellectual property and rights and obligations in or to intellectual property;

u.     Research and development planning, strategy, decision-making, and policies;

v.     Nortel companies' relative and respective contributions to research and development of intellectual property;

w.     The negotiation, drafting, approval, and operation of the Master Research and Development Agreement ("MRDA") and its subsequent amendments, the

18

Residual Profit Split Method ("RPSM"), previous cost-sharing arrangements, related agreements, Nortel's transfer pricing system generally, including its development and implementation, and communications and filings with tax authorities regarding same;

x.   Advance Pricing Arrangements/Agreements ("APAs") and communications, filings with tax authorities, and any settlement in connection with any APAs;

y.   The involvement by the boards of directors or personnel of NNSA or the other EMEA Debtors in Nortel's transfer pricing arrangements or agreements, any analyses or advice (whether internal or independent) provided to or relied on by such directors or personnel in respect of transfer pricing, the role and responsibilities of the auditors of NNSA or the other EMEA Debtors with respect to transfer pricing, and the factual basis for the allegations regarding transfer pricing made in the EMEA Claims;

z.   The manner in which Nortel entities represented themselves to investors, credit agencies, governments, tax authorities, auditors, or other third parties;

aa.  The outsourcing of Nortel's manufacturing business and related sale or outsourcing agreements;

bb.  The accounting for and distribution of revenue and costs related to Nortel Lines of Business and any other Nortel revenue-generating activity;

cc.  Sales, contracts, and dealings with customers or suppliers, including policies, procedures, and practices used to determine which Nortel Entity received revenue from any customer or supplier relationships;

dd.  The negotiation and drafting of the Interim Funding and Settlement Agreement

19

("IFSA") and Final Canadian Funding and Settlement Agreement ("FCFSA");

ee.   The negotiation, deal structure, and closing of post-petition sales of Nortel assets;

ff.   The "cash to Canada" policy referenced in the EMEA Claims;

gg.   Project Swift, the alleged extraction of cash from various Nortel subsidiaries prior to Project Swift, the accompanying reorganization of NNIF, and the allegations in the EMEA Claims relating thereto;

hh.   Intercompany loans, intercompany dividends, and any other intercompany financing and/or borrowing of money among the Nortel entities, and the allegations in the EMEA Claims relating thereto;

ii.   The allegations in the EMEA Claims that NNI, NNC, or NNL benefitted from Nortel policies, transactions, or other occurrences that harmed NNSA or the other EMEA Debtors;

jj.   Any transactions, agreements, or benefits received by NN CALA from the EMEA Debtors that either harmed the EMEA Debtors or for which the EMEA Debtors were not fairly compensated;

kk.   The financial condition of NNSA or the other EMEA Debtors;

ll.   The preparation, approval, and auditing of the financial statements of NNSA or the other EMEA Debtors;

mm.   Nortel human resources, including employee compensation, transfers, bonuses, benefit plans, pensions, hires, downsizing, and terminations;

nn.   The trading debt claims alleged in the EMEA Claims;

oo.   Any additional claims in the EMEA Claims not already addressed by these deposition topics, and the factual basis for all such claims;

pp.  The alleged factual basis for any defenses or positions taken by the U.S. Debtors and the Canadian Debtors in response to the EMEA Claims; and

qq.  Any other matter relevant to the positions, claims, and defenses asserted by the Core Parties before the Requesting Court and Canadian Court, including but not limited to those contained in the filings referenced in footnotes 5 and 6.

**11.**  **Documents or other property to be inspected**    None.

**12.**  **Any requirement that the evidence be given on oath or affirmation and any special form to be used**    The Witness shall testify under oath.

**13.**  **Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or summary, cross-examination, etc.)**

By order of the Requesting Court, Alexander B. Blumrosen has been appointed as the Commissioner to take evidence and testimony in the above-captioned action in France, pending the approval of the Ministère de la Justice.  The Commissioner will provide reasonable notice to the Witness as required by the Hague Convention.

It is requested that the legal representatives of the U.S. Debtors and the U.S. Committee, the legal representatives of the Monitor and Canadian Debtors, the legal representatives of the EMEA Debtors and U.K. Pension Claimants, and the legal representatives of the Witness, if any, be permitted to conduct the examination of the Witness in France.  The questions will be created and asked by counsel for the party conducting the deposition and any other party attending the deposition who may desire to ask questions (including the counsel listed in paragraph 6 above and any other counsel designated by the parties attending the deposition), without opportunity for prior review of the questions.  The Commissioner will administer the deposition, but will not rule upon counsel's questions or conduct any of the questioning himself.

The Witness will provide testimony orally in English with a transcript only in English. The Witness will then be provided with a copy of the transcript in English and a reasonable time and opportunity to correct any errors in the transcript.

In accordance with Articles 3(i) and 9 of the Hague Convention, the Requesting Court requests that the examination be executed in compliance with American proceedings rules. The Witness would be posed questions in accordance with United States Federal Rules of Civil Procedure, specifically F.R.C.P. 30. In accordance with F.R.C.P. 30(b)(1), attorneys for all parties must be provided notice of the examination and an opportunity to be present. The party seeking the testimony is obligated under U.S. law to notify the attorneys for any other party to the case of the time and place of the examination. Pursuant to F.R.C.P. 30(b)(3), it is requested that the testimony of each witness be recorded by both stenographic and video means. When a party or parties desire that testimony be recorded by stenographic and video means, they are obligated under U.S. law to provide for the presence of the stenographer (court reporter) and videographer and to bear the costs associated with their work. The parties would bear the costs of the recordings as well as the costs associated with providing a certified interpreter. The Witness would be entitled to be represented by an attorney present during the examination.

The Requesting Court respectfully requests that the representatives of the U.S. Debtors and U.S. Committee be allotted a total of three hours and twenty minutes for their examination, that the representatives of the Monitor and Canadian Debtors be allotted a total of three hours and twenty minutes for their examination, and that representatives of the EMEA Debtors and U.K. Pension Claimants be allotted a total of three hours and twenty minutes for their examination. Counsel for the parties will negotiate a date for the examination to occur prior to 13 December 2013 as may be mutually agreed with the Witness.

| | | |
|---|---|---|
| 14. | **Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified[7]** | Not applicable. |
| 15. | **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request** | None. |
| 16. | **Specification of privilege or duty to refuse to give evidence under the law of the State of origin** | The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States, or would disclose a privileged communication. |
| 17. | **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by** | EMEA Debtors<br>c/o Bruno Basuyaux<br>Herbert Smith Freehills Paris LLP<br>66, avenue Marceau<br>75008 Paris<br>France<br><br>The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the costs of the Commissioner, and the costs of the transcript of the evidence will be initially borne by the EMEA Debtors.  The payment of any such fees and costs is without prejudice to the right of the EMEA Debtors to make subsequent requests for reimbursement of |

---

7. For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by any party to the jurisdiction of the courts of France, nor are the legal representatives of any party instructed to accept service of any proceedings in France.

those fees and costs from other parties to the
proceedings before the Requesting Court.


DATE OF REQUEST                    _____


SIGNATURE AND SEAL OF THE          _____
REQUESTING AUTHORITY