IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
: 
*In re* : Chapter 11
: 
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
: 
                Debtors. : Jointly Administered
: 
: **Hearing date: November 19, 2013 at 10:00 a.m. (ET)**
: **Objections due: October 11, 2013 at 4:00 p.m. (ET)**
: 
: RE: D.I.s 11739, 11953, 11956
: 
------------------------------------------------------------X

**DEBTORS' REPLY TO THE RESPONSE OF ALEX THOMPSON TO THE DEBTORS' THIRTY-FIRST OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby respectfully submit this Reply (the "Reply"), to the response filed by Alex Thompson [D.I. 11953] (the "Thompson Response") to the *Debtors' Thirty-First Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended or Superseded Claims, No-Basis 503(b)(9) Claims and No-Basis Pension Claims)* [D.I. 11739] (the "Thirty-First Omnibus Objection"). In support of this Reply, the Debtors rely on the Declaration of Deborah Parker, dated November 14, 2013, attached hereto as Exhibit A (the "Parker Decl."). In further support of this Reply, the Debtors respectfully represent as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

## Reply

1.  In the Thirty-First Omnibus Objection, the Debtors sought to disallow claim numbers 8338 and 8348 filed by Mr. Thompson.[2] Pursuant to the Thirty-First Omnibus Order, the Thirty-First Omnibus Objection was continued with respect to claim number 8338 to the omnibus hearing scheduled for November 19, 2013 at 10:00 a.m. (ET).[3] The Debtors objected to claim number 8338, which asserts a claim for $53,492.13 of severance benefits, because Mr. Thompson elected to terminate his employment with NNI upon securing new employment with Ericsson Inc. ("Ericsson"), and therefore is not entitled to such benefits under the terms of the Nortel Networks Severance Allowance Plan (the "Severance Plan").[4]

2.  A summary of the events surrounding the termination of Mr. Thompson's employment with NNI is as follows.

3.  In 2009 and 2010, Ericsson purchased assets related to a number of the Debtors' businesses, including the CDMA/LTE, GSM/GSM-R and MSS businesses. The applicable sale agreements restricted Ericsson's ability to solicit the Debtors' employees for employment post-closing.[5]

---

[2] Claim number 8348 for pension benefits was disallowed pursuant to this Court's *Order Granting Debtors' Thirty-First Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended or Superseded Claims, No-Basis 503(b)(9) Claims and No-Basis Pension Claims)* [D.I. 11979] (the "Thirty-First Omnibus Order"). Accordingly, this Reply does not address the merits of claim number 8348, which has already been expunged.

[3] Mr. Thompson's proof of claim number 8338, which was filed on August 13, 2012, is attached hereto as Exhibit B.

[4] The Severance Plan is attached as Exhibit 1 to the *Declaration of Deborah Parker in Support of Debtors' Omnibus Reply to Responses to Debtors' Thirty-First and Thirty-Second Omnibus Objections (Substantive) to Certain Claims* [D.I. 11956-1] (the "Prior Parker Decl."), which was filed as Exhibit A to the *Debtors' Omnibus Reply to Responses to Debtors' Thirty-First and Thirty-Second Omnibus Objections (Substantive) to Certain Claims* [D.I. 11956]. The Summary Plan Description for the Severance Plan (the "Summary Plan Description") is attached to the Prior Parker Decl. as Exhibit 2. The Prior Parker Decl. is hereby incorporated into this Reply by reference.

[5] Pursuant and subject to the terms of the Debtors' various asset sale agreements with Ericsson, Ericsson agreed not to solicit for employment or hire any employee of the Debtors for a certain period of time post-closing of each transaction. Accordingly, Ericsson sought NNI's consent before offering employment to Mr. Thompson.

4. On November 16, 2010, Ericsson expressed to NNI an interest in making an offer of employment to Mr. Thompson. Parker Decl. ¶ 4. At that time, Mr. Thompson had continuing responsibilities to NNI. During the next several months, Ericsson and NNI negotiated in an attempt to find a mutually agreeable transition date for Mr. Thompson. See id. In the course of these negotiations, NNI initially sought a departure date of November 30, 2011 so that Mr. Thompson could be available to continue to provide any necessary transition services in light of the Debtors' contractual obligations to provide such services to the purchasers of their business lines. See id. Ericsson initially sought a start date of January 24, 2011. Id. During this time period, Mr. Thompson formally applied for a job via the Ericsson website. Id. The parties ultimately agreed that Mr. Thompson could depart employment with NNI on April 29, 2011. Id.

5. On January 26, 2011, Mr. Thompson received a formal offer of employment from Ericsson for the position of Process Management Specialist III as part of the CDMA Mobile Systems Business Unit in Richardson, Texas.[6] Parker Decl. ¶ 5. Mr. Thompson accepted his offer, with a start date of May 2, 2011, and continued work at NNI until April 29, 2011. See id.

6. On March 25, 2011, Mr. Thompson received $51,511 in incentive plan payments under the Nortel Special Incentive Plan (the "NSIP"),[7] and a total of $10,284 in incentive plan payments under the Nortel Networks Limited Annual Incentive Plan for Nortel Business Services and Corporate Group (the "AIP"),[8] for work performed in 2010. Parker Decl. ¶ 6. On May 20, 2011, Mr. Thompson received an additional $25,276 in incentive plan payments under

---

[6] A copy of the email alerting Mr. Thompson of such offer of employment is attached to the Parker Decl. as Exhibit 3.

[7] The NSIP is attached as Exhibit 1 to the Parker Decl. This Court approved the NSIP – which was designed to properly incentivize the Debtors' employees as necessary to ensure the smooth transition of Nortel's business lines to their respective purchasers, and the steady continuation of the Debtors' bankruptcy proceedings – by its *Order (A) Approving the Nortel Special Incentive Plan; (B) Authorizing Certain Payments Under the Key Employee Retention Plan and Key Executive Incentive Plan; and (C) Approving Certain Employment Agreements*, dated March 4, 2010 [D.I. 2639].

[8] The AIP is an ordinary course incentive program maintained by the Debtors and certain of their affiliates.

3

the NSIP, and subsequently received $5,175 in incentive plan payments under the AIP and $25,756 in incentive plan payments under the NSIP, all relating to work performed for NNI in 2011.  Parker Decl. ¶ 8.

7.  Mr. Thompson is not entitled to severance under the Severance Plan because he was not involuntarily terminated by NNI.  Rather, he left employment with NNI voluntarily after accepting a job with Ericsson.  Though not articulated formally in the Thompson Response, Mr. Thompson has subsequently advised the Debtors that he believes he is entitled to severance benefits because his termination was due to a planned workforce reduction.  However, the series of events set forth above shows that Mr. Thompson was not terminated by NNI as part of a workforce reduction.  Mr. Thompson's employment with NNI was terminated after a process initiated by Ericsson, and during which Mr. Thompson formally applied for and received an offer of employment from Ericsson.  Voluntarily leaving NNI for employment with another company is simply not a qualifying event under the Severance Plan.  See Severance Plan §§ 2.1, 2.6.  Notably, Mr. Thompson received significant additional benefits as a result of his arrangements with NNI surrounding his new job.  Had Mr. Thompson accepted an offer of employment in connection with the closing of the CDMA sale, he would not have been entitled to severance.  See Severance Plan §§ 1.1, 2.1, 2.3 (identifying the population of employees entitled to severance benefits under the Severance Plan and carving out those employees who are transferred in connection with a "Business Transaction").  And if Mr. Thompson had resigned in January 2011 to accept employment with Ericsson he similarly would not have been entitled to severance.

8.  In total, by continuing to work for NNI after accepting his offer of employment at Ericsson, and as a result of terms negotiated by NNI, Mr. Thompson was paid $103,023 in NSIP

4

payments and $15,459 in AIP payments (for a total of $118,482, an amount greater than one year's salary). Mr. Thompson would not have been eligible for any of these payments under the terms of the NSIP and the AIP if he had simply resigned from employment with NNI and ceased work there at the time he accepted his employment offer from Ericsson.[9] Accordingly, Mr. Thompson benefitted from the arrangement NNI agreed to, whereby he secured employment with Ericsson and also negotiated a transition date that entitled him to substantial additional incentive payments from NNI.

9. As more fully described and subject to the conditions set forth therein, NNI and certain of its subsidiary Debtors that adopted the Severance Plan agreed to pay termination benefits upon certain qualified termination events, including certain workforce reductions. More specifically, the Severance Plan provides three alternative bases under which an employee covered by the Severance Plan may be eligible for severance:

> a. Termination of employment as part of a "Reduction in Force,"[10] with certain exceptions not applicable here; Severance Plan § 2.1(a); Summary Plan Description § 3.
>
> b. Any other termination of employment with an employer (including terminations in connection with business transactions) initiated by an employer, except in certain circumstances not applicable here; Severance Plan § 2.1(b);

---

[9] Compare NSIP § VII(h), VII(c) (providing that in connection with a "Transfer" to employment with a purchaser of Nortel assets that is agreed between Nortel and such purchaser, plan participants receive completion payments on an accelerated basis shortly following their departure date, and performance payments at the same time active employees receive such payments) with NSIP § VII(a) (providing that in connection with a voluntary termination of employment by a plan participant for any reason, such participant would forfeit any unpaid payments on the date of such employment termination and have no further rights under the NSIP). Compare AIP § 2(5)(b)(ii) (providing that employees terminated in connection with a "Transfer" are eligible to receive an award even if they are not employed as of the applicable payment date for the relevant plan period) with AIP § 2(5)(a)(ii) (providing that employees who were not employed by NNI on the applicable payment date are ineligible to receive an award for the relevant plan period).

[10] The Severance Plan defines "Reduction In Force" as "the Termination of Employment of an Employee resulting from a reduction in an Employer's work force and/or from the elimination or consolidation of job functions of an Employer due to economic or other business reasons." Severance Plan § 1.3(s). The Summary Plan Description, which is written in a question and answer format, defines "Reduction In Force" as "a reduction in your Employer's work force or the elimination or consolidation of jobs by your Employer." Summary Plan Description § 3.

Summary Plan Description § 3.

c. Any other termination of employment with an employer initiated by an employee following the employer's notification of the Reclassification[11] of the employee's current position, except in certain circumstances not applicable here. Severance Plan § 2.1(c), (d); Summary Plan Description § 3.

10. The Severance Plan further provides that "[n]o severance allowance shall be paid to an Employee whose employment with an Employer is terminated for any reason other than as specified in Section 2.1." Severance Plan § 2.6.

11. While it is true that Mr. Thompson – like every other employee of the Debtors throughout these chapter 11 cases – worked for the Debtors at a time when his future prospects were uncertain, his employment was not terminated as part of a "Reduction In Force" or otherwise initiated by the Debtors, and Mr. Thompson was specifically compensated for the additional time he worked at NNI after receiving an offer of employment from Ericsson. As set forth above, the termination of Mr. Thompson's employment was initiated by Ericsson and Mr. Thompson himself. Accordingly, Mr. Thompson is flatly ineligible for severance benefits under the Severance Plan.

12. The Debtors' willingness to negotiate a mutually agreeable termination date for Mr. Thompson with Ericsson allowed Mr. Thompson to receive the benefits of both transitioning smoothly from employment at Nortel to employment at Ericsson, and making Mr. Thompson eligible to receive $118,482 in incentive plan payments that he would have forfeited if he had simply resigned as of the date he accepted his offer of employment from Ericsson. The Debtors have no obligation to pay Mr. Thompson any additional amounts.

---

[11] The Severance Plan defines "Reclassification" as "the reclassification of the Employee's current position to a lower Job Complexity Indicator/Job Family Compensation Structure ("Job Complexity Indicator/Market Reference Range" prior to April 8, 2002) ("JCI/JFCS") as a result of changes to the duties, responsibilities or scope of that position. The benefits under this Plan that apply to "Reclassification" situations shall not apply to reclassifications that occur for reasons other than those stated above, such as but not limited to re-classifications made to correct prior misclassification of a position." Severance Plan § 1.3(m).

6

13. In sum, the Debtors cannot award severance benefits to Mr. Thompson because the Severance Plan does not provide for the award of severance in the circumstances of his departure – where he voluntarily chose to terminate his employment after obtaining a new position with Ericsson – and because the Debtors have a duty to preserve and manage their estates for the benefit of all their creditors. Accordingly, the Debtors respectfully request that the Court overrule the Thompson Response and disallow Mr. Thompson's claim for termination benefits in accordance with the Thirty-First Omnibus Objection and this Reply. The Debtors respectfully submit that allowing a claim for severance benefits to Mr. Thompson under the circumstances set forth above would also not be in accordance with NNI's duty to administer the Severance Plan in accordance with its governing documents pursuant to ERISA. See 29 U.S.C. § 1104.

[*Remainder of page intentionally left blank*]

**Conclusion**

For the reasons set forth above, the Debtors respectfully request that the Court overrule the Thompson Response, enter the proposed order attached hereto as Exhibit C approving the Thirty-First Omnibus Objection, and grant such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: November 14, 2013<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (admitted *pro hac vice*)<br>Lisa M. Schweitzer (admitted *pro hac vice*)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and –<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>     */s/ Tamara K. Minott*     <br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Tamara K. Minott (No. 5643)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |

8