## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS, INC., *et al.*, | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| ―――――――――――――――――― | ) | **Re Dkt Nos. 11739, 11741 & 11956** |

## ORDER ADDRESSING DEBTORS' THIRTY-FIRST AND THIRTY-SECOND OMNIBUS OBJECTIONS (SUBSTANTIVE) TO THREE CLAIMS

Debtors objected to claims and three claimants (the "Claimants") filed exceptions to the objections (the "Objections") to their claims (the "Claims") which this Order addresses. The Claims belong to former employees of Debtors and a reminder of the human toll resulting from these massive, complex corporate bankruptcies. As discussed below, the Court must sustain the Objections. The Claims at issue are:

1.  Joseph A. Pino, Sr. - Claim No. 3177, $91,520.00

Mr. Pino worked for Debtors for approximately 36 years. He accepted a position with Avaya, Inc. ("Avaya") immediately following the Debtors' sale of the Enterprise Solutions Business to Avaya on December 18, 2009. Thereafter, Avaya terminated Mr. Pino's position in August 2010.

2.  Ursala H. Phommanirat - Claim No. 8468, $24,400.17

Ms. Phommanirat worked for Debtors for more than 23 years. She accepted a position with Avaya upon the sale of the Enterprise Solutions Business. Three months later, Avaya terminated Ms. Phommanirat's position (transferred it out of the United States).

3.      Alicja M. Reimann - Claim No. 8465, $38,424.50

Ms. Reimann's claim is based on similar circumstances to those of Ms. Phommanirat, except that she worked for Debtors for more than 33 years.  Avaya also terminated Ms. Reimann's job (position transferred) after three months.

The Claimants are each seeking the amounts they believe they would have received from Debtors as severance if they had not accepted positions with Avaya.  It turns out that the Claimants would not have qualified for severance even had they refused the Avaya opportunities.

Debtors' Severance Allowance Plan (the "Plan") provides that employees transferred in connection with a "business transaction" are not entitled to severance from Debtors.  The sale to Avaya clearly qualifies as a "business transaction."  The Plan, Section 1.3 (attached to the Declaration of Deborah Parker, D.I. 11956, Exhibit A).

The Avaya positions were very short lived.  The Claimants argue that they were cheated out of their severance because the Avaya jobs were nothing more than temporary jobs from the outset for which they sacrificed their severance benefits.  It is clear from the evidence and the Claimants' own statements that what they view as unfair and discriminatory treatment was, if it all, at the hands of Avaya, not Debtors.  There is no evidence that Debtors knew the Avaya positions would be short lived.  Ms. Phommanirat and Ms. Reimann point to the Avaya Separation Plan, dated January 10, 2010, issued only weeks after they began to work for Avaya, as proof that Avaya intended them to be short-term employees from the

outset. They call their hiring by Avaya a "bait and switch." But Debtors are not in fairness the cause of such feelings.

The Court will not venture to speculate whether Avaya's hiring was in good faith. To be clear, the Claimants do not suggest and there is not a shred of evidence that Debtors acted unfairly, coerced, made any misrepresentations to or in any way deceived the Claimants. The positions at Avaya were entirely between Avaya and the Claimants.

The Plan governs and the Plan supports the Debtors' Objection. The Plan provides in pertinent part, that:

> [N]o severance allowance shall be paid to an Employee where his employment with [Debtors] is terminated in connection with a Business Transaction if either:

> > a.      The terminated Employee is offered and accepts a position as a Part-Time or Full-time Employee with the Company, irrespective of any difference between the new position and the former position, including, without limitation, any differences between the new position and the former position, including, without limitation, any resulting change in the location of the new position from that of the former position, any difference in the manner or amount of the compensation between the new position and the former position, any difference in work schedule or number of hours in the work week, or otherwise; or

> > b.      The terminated Full-Time or Part-Time Employee is offered and refuses another position as a Full-Time or Part-time Employee, respectively, for which he is qualified by the Company at the same or Reasonably Contiguous Location as his former position with the Employer and with a Base Weekly Salary which is not less than eighty percent (80%) of the base Weekly Salary of the Employee's former position.

3

The Plan, Article 2, Section 2.3. There is no question that the sale to Avaya was a "Business Transaction." The Plan, Article 1, 1.3.d.

Therefore, by accepting the Avaya positions, the Claimants were not eligible for severance. It also appears that even if the Claimants had not accepted an offered position with Avaya, the Plan would have precluded the allowance of severance benefits to them. Section 2.3 of the Plan provides that if an employee's job is terminated because of a business transaction, severance is not available if (1) the employee accepts a position with the buyer or (2) is offered and refuses a position under circumstances applicable here. However, it is not necessary to discuss the consequences of a refusal of employment because the Claimants did accept employment and are therefore not entitled to severance.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Objections are GRANTED with respect to Claims Nos. 3177, 8465 and 8468.

2.    The Claimants' responses to the Objections are overruled.

3.    This Order shall be deemed a separate order with respect to each Claim. Any stay of this order pending appeal by any of the Claimants shall only apply to the contested matter that involves such claimant and shall not act to stay the applicability and/or finality of this order with respect to the other contested matters listed in the Objections or this Order.

4

4.    The Debtors, the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of this Court are authorized to take all actions necessary and appropriate to give effect to this Order.

5.    This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.

Dated: November 22, 2013

Kevin Gross, U.S.B.J.

5