**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Hearing Date: December 17, 2013 at 10:00 a.m. (ET)**<br>**Objections Due: December 10, 2013 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND BANKRUPTCY RULE 9019 APPROVING THE STIPULATION BETWEEN NORTEL NETWORKS INC. AND CALIFORNIA STATE BOARD OF EQUALIZATION**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing NNI's entry into and approving a stipulation attached hereto as Exhibit B (the "Stipulation") with the California State Board of Equalization (the "Board", and together with NNI, the "Parties"), and (ii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the U.S. Debtors and their petitions are available at http://dm.epiq11.com/nortel.

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc.,[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which cases are consolidated for procedural purposes only. The Debtors continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has appointed an Official Committee of Unsecured Creditors (the "Committee") in respect of the Debtors [D.I.s 141, 142], and an ad hoc group of bondholders has been organized (the "Bondholder Group").

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] commenced a proceeding with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA), seeking relief from their creditors (collectively, the

---

[2] Nortel Networks (CALA) Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009, which was consolidated and is being jointly administered with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098].

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

"Canadian Proceedings") and a Monitor, Ernst & Young Inc. (the "Monitor"), was appointed by the Canadian Court. Also on the Petition Date, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration (the "English Proceedings") under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). Other Nortel affiliates have commenced and in the future may commence additional creditor protection, insolvency and dissolution proceedings around the world.

6. Since the Petition Date, Nortel has sold its business units and other assets to various purchasers. For further information regarding these chapter 11 cases, reference may be made to the Monthly Operating Reports filed by the Debtors and http://dm.epiq11.com/nortel.

## Relief Requested

7. By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing NNI's entry into and approving the Stipulation, and (ii) granting the Debtors such other and further relief as this Court deems just and proper.

## Facts Relevant to this Motion

### A. The Claim and the Refund Claims

8. For the period of January 1, 2004 through January 14, 2009 (the "Audit Period"), NNI was in the business of developing and selling telecommunications solutions to carrier and enterprise customers. Specifically, during the Audit Period, NNI sold networking products to entities in California, including the United States government, state and local governments, non-

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

profit organizations and telecommunications companies, and in some instances provided services to such purchasers.

9. The Board audited NNI with respect to its payment of California sales and use tax for transactions during the Audit Period (the "Audit"). On or about August 4, 2009, the Board filed proof of claim number 1641 against NNI, asserting additional sales and use taxes, including interest, in the aggregate amount of $2,333,743.76, with respect to transactions during the Audit Period ("Claim No. 1641").[5]

10. As a result of certain adjustments applied to the Board's assessment of sales and use tax and interest owing for the Audit Period, on or about October 5, 2010, the Board filed proof of claim number 7448 amending and superseding Claim No. 1641 in the aggregate amount of $1,854,484.44 (the "Claim").

11. Pursuant to the State of California's third party liability statute, Cal. Rev. & Tax. Code § 6829, the Board initiated a sales tax investigation of the liabilities included in the Claim with respect to NNI's current and former employees (collectively, the "NNI Employees").

12. NNI has filed several refund claims with respect to certain sales tax overpayments remitted to the Board prior to the Petition Date (the "Refund Claims"). Certain of these Refund Claims being pursued on behalf of customers remain pending while others were accepted and credited to NNI, in whole or in part, during the course of an audit of NNI.

B. **The Proposed Settlement**

13. In order to avoid the cost and risk inherent in litigating the Claim, the Parties engaged in arm's-length negotiations to resolve the amounts asserted in the Claim and the outstanding disputes between the Debtors and the Board. As a result of these negotiations,

---

[5] Claim No. 1641 was subsequently withdrawn by the Board on November 23, 2010 in the Notice of Withdrawal of the State Board of Equalization's Priority Claim [D.I. 4399].

subject to the approval of this Court, NNI has reached a compromise with the Board as memorialized in the Stipulation.

14. The Stipulation provides that, subject to this Court's approval:[6]

a. Within ten calendar days of the Effective Date, NNI shall pay the Board $1,390,863.33 (the "Settlement Amount") in full and final satisfaction of any and all claims that have been or could have been asserted in the Claim. Stipulation ¶ 3.

b. The Board will release and forever discharge the Debtors and their respective current and former affiliates, subsidiaries, shareholders, employees, officers, directors, agents, attorneys, and their personal representatives, successors and assigns (collectively, the "Debtor Releasees"), from any and all liability for any claims (including those for personal liability asserted under California Revenue and Taxation Code § 6829), which the Board now has, had, may have had or hereafter may have against any of the Debtor Releasees arising from or related to the period prior to the Petition Date (including, without limitation, the amounts included in the Claim). Stipulation ¶ 4.

c. The Debtors will release and forever discharge the Board and its attorneys, employees, and their successors and assigns from any claims that the Debtors now have, had, may have had or hereafter may have arising from or related to the period prior to the Petition Date (including, without limitation, the Refund Claims). Stipulation ¶ 5.

d. On the Payment Date, the Claim shall be deemed withdrawn with prejudice and the Board shall be forever barred from filing any further proofs of claim arising from or related to the period prior to the Petition Date against any of the Debtors in the Debtors' chapter 11 cases. Stipulation ¶ 6(a).

e. On the Payment Date, the Refund Claims shall be deemed withdrawn and NNI shall be forever barred from filing any further refund claims arising from or related to the period prior to the Petition Date against the Board. Stipulation ¶ 6(b).

[6] This discussion is intended as a summary of the terms of the Stipulation. To the extent that the summary and the terms of the Stipulation are inconsistent, the terms of the Stipulation shall control. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Stipulation.

**Basis for Relief**

15. The Debtors seek authorization to enter into the Stipulation under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

16. Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease the property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b). Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction. Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996).

17. The use or transfer of estate property under this provision must be supported by a sound business purpose. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, Civil Action No. 07-2785 (FLW), 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward Holding Corp., 242 B.R. at 153-54 & n.1 (quoting In re Lionel Corp., 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and

reasonable value in exchange. See In re Decora Indus., Inc., 2002 WL 32332749, at *2; In re Del. & Hudson Ry. Co., 124 B.R. at 176.

18. Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Citing this authority, the Third Circuit has emphasized that "'[c]ompromises are favored in bankruptcy.'" In re Martin, 91 F.3d at 393 (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

19. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "'the compromise is fair, reasonable, and in the interest of the estate.'" In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). The court need not be convinced that the settlement is the best possible compromise in

order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Travelers Cas. & Sur. Co., 2008 WL 821088, at *5 (citing Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.), 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

20. The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

21. The Debtors respectfully submit that the Stipulation meets the requirements under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. As required by section 363, the Stipulation was negotiated and entered into by the Parties in good faith as a means of resolving the Claim and all outstanding issues relating to the Audit and the Refund Claims. The compromise embodied by the Stipulation rises well above the necessary threshold of reasonableness and serves the sound business purposes of resolving the Debtors' disputes with the Board.

22. While NNI is prepared to litigate the Claim and believes that there is a reasonable likelihood it would prevail in such litigation, NNI recognizes that litigation regarding the Claim carries with it inherent uncertainties and risks. Pursuant to the settlement reflected in the Stipulation, the Board has agreed to release the Debtors and NNI Employees from prepetition

liabilities arising from the Claim in exchange for the Settlement Amount and a release from the Refund Claims. This resolution fairly balances NNI's likelihood of success on the merits of the Claim against its interest in avoiding the uncertainty and potential risks of litigation. In particular, the terms of the Stipulation will provide NNI Employees with certainty regarding the outcome of the Boards' prepetition claims against NNI without further detracting resources from the Debtors' estates.

23. Finally, the interests of the creditors militate in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claim and the avoidance of litigation risk and further legal expenses that would be incurred if the Claim were to be litigated.

24. In light of the foregoing, the Debtors respectfully seek authorization for NNI to enter into the Stipulation and approval of the Stipulation.

**Notice**

25. Notice of the Motion has been given via first class mail to (i) the Board; (ii) counsel to the Board; (iii) the U.S. Trustee; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; and (vi) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

26. No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as Exhibit A hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: November 26, 2013
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*