**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: <br><br> Nortel Networks Inc., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 09-10138 (KG) <br><br> (Jointly Administered) <br><br> **Re: Dkt. No. 12618** |

**RESPONSE AND LIMITED OBJECTION OF THE MONITOR AND THE CANADIAN DEBTORS TO THE US DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE US CLAIMS LITIGATION SETTLEMENT AGREEMENT**

Ernst & Young Inc., the court-appointed monitor (the "**Monitor**") in proceedings (the "**Canadian Proceedings**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List) (the "**Ontario Court**"), and Nortel Networks Corporation and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (the "**Canadian Debtors**", and with the Monitor, the "**Canadian Parties**"), hereby file this Response and Limited Objection *to the Debtors' Motion For Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363, 503(b) and 507(a)(2) and Bankruptcy Rules 6004(h) and 9019 Approving the US Claims Litigation Settlement Agreement by and Among the Debtors, the Creditors' Committee, the Joint Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited, Nortel*

---

[1] The debtors in the chapter 11 cases, along with the last four digits of each such debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

1

*Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates* (the "**Motion**").[2]

In support thereof, the Canadian Parties respectfully submit as follows:

**RESPONSE AND LIMITED OBJECTION**

1. The Canadian Parties support efforts to settle a portion of this litigation in order to distribute as much value to stakeholders as quickly as possible. However, inasmuch as the Settlement Agreement impacts the Litigation Timetable and Discovery Plan approved by the Courts as well as the protocol governing the conduct of the trial that is currently being negotiated by the Core Parties, it is important for both Courts to provide specific directions such that the Core Parties have certainty on key matters moving forward.[3] Specifically, Section 6.1 of the Settlement Agreement creates substantial uncertainty and a real risk of prejudice to the Canadian Parties at this advanced stage of the process. It provides that:

> [T]he US Debtors, the Committee, the UK Pension Parties, the Joint Administrators on behalf of the EMEA Debtors, the Liquidator on behalf of NNOCL and the EMEA Non-Filed Entities agree that they will work in good faith commencing on the date of execution of this Agreement by all of the Parties (with the exception of the US Non-Filed Entities) . . . in an effort to see if they can develop a common allocation position and other agreements related to the conduct of the trial. To that end, such Parties will use commercially reasonable best efforts during the Allocation Cooperation Period[4] to coordinate and co-operate in respect of (a) discussion of experts on allocation methodologies in connection with the Allocation Dispute and preparation of submissions and reports regarding the same; (b) remaining depositions and discovery; (c) conduct of the trial of the Allocation Dispute; (d) pre-trial motion practice and pre and post-trial briefing in respect of the Allocation Dispute; and (e) appeals, if any, from determinations

---

[2]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[3]   The proposed settlement of the EMEA Claims and the UK Pension Claims as against the Debtors does not in any way change the Courts' prior direction to simultaneously hear the allocation and EMEA and UK pension claims disputes or the requirement that both this Court and the Ontario Court be given the opportunity to fully consider all relevant factual and legal matters that impact on those disputes.

[4]   The "Allocation Cooperation Period" is an open-ended period that commenced upon execution of the Settlement Agreement and that ends at the discretion and election of any Settlement Party upon five (5) business days written notice of its intention to no longer seek to develop a common allocation position.

2

in respect of the Allocation Dispute at or following trial.

Settlement Agreement ¶ 6.1.

2. In May 2013, each of the Core Parties filed opening statements setting out their positions and theories of allocation. Many decisions have been made and enormous resources have been invested based on those statements. Discovery thus far has involved the production of millions of documents and over 100 depositions. All of this has been done with an understanding of various positions as set out in the statements and based on the rigorously negotiated timelines and agreements reflected in the Litigation Timetable and Discovery Plan and related agreements which govern the conduct of this litigation and which were approved by both this Court and the Ontario Court.

3. The *possibility* that Section 6.1 may lead to yet another allocation position or to an existing allocation position not being pursued is itself prejudicial to the Canadian Parties, and is not something presently contemplated by the Litigation Timetable and Discovery Plan. Other parties cannot effectively or efficiently prepare for trial with the risk that a new theory (or theories) might be sprung on them at any time, or that an existing theory might be "dropped" and need not ultimately be addressed. Indeed, such actions could threaten to derail the (already twice-extended and modified) Litigation Timetable and Discovery Plan. Moreover, it is not possible to agree on the key terms of a trial protocol until there is clarity on whether the US and EMEA interests are united on allocation, or whether they will be presenting independent positions, each of which will need to be addressed by the Canadian Parties in response.

4. The Settlement Parties cannot now, at nearly the end of fact discovery, be given *carte blanche* to develop a new theory or theories of allocation or switch to another existing theory. Therefore, the Canadian Parties request that: (i) any common allocation position

3

developed by any combination of the Settlement Parties be limited to an allocation position previously asserted by a Core Party; and (ii) the Settlement Parties be required to disclose their final allocation positions to the other Core Parties, this Court, and the Ontario Court no later than January 8, 2014.

5. The Debtors have proposed a hearing on the Motion for January 7, 2014, which would proceed solely before this Court. In light of the substantial impact the Settlement Agreement has on the allocation and claims dispute as a whole, the Canadian Parties request that the Motion be heard in a joint hearing with the Ontario Court pursuant to the provisions of the Cross-Border Insolvency Protocol approved in these cases by the Court's Order dated June 29, 2009 [Dkt. No. 990].[5]

6. In addition to the matters addressed above, the Settlement Agreement raises other issues that impact the rights and interests of the Canadian Parties. The Canadian Parties will discuss these matters with the Settlement Parties in the coming weeks with a view to providing for their resolution without the involvement of the Courts. However, should they not be resolved, the Canadian Parties reserve the right to supplement and amend this Response and Limited Objection to specifically address such matters and seek further relief from the Courts.

## **CONCLUSION**

7. The Canadian Parties respectfully request that (i) to the extent any of the Settlement Parties seek to develop a common allocation position as contemplated by the Settlement Agreement, such Settlement Parties be limited to a position previously asserted by a Core Party in its initial allocation pleadings, (ii) the Settlement Parties be required to disclose

---

[5] Additionally, a joint hearing is appropriate because the Canadian Parties were not informed of any discussions regarding the EMEA Claims until a few minutes prior to the filing of the Motion, notwithstanding the consultation requirements of the Cross-Border Protocol on the Resolution of Claims, as approved by this Court on September 16, 2010 [Dkt. Nos. 3922 and 3956], with respect to "Material Overlapping Claims" such as the EMEA Claims.

4

their final allocation positions to the other Core Parties, this Court, and the Ontario Court no later than January 8, 2014, and (iii) the Motion be heard jointly with the Ontario Court on a date to be determined following consultation with the Ontario Court.

Dated: December 19, 2013
      Wilmington, Delaware

**BUCHANAN INGERSOLL & ROONEY PC**

/s/   Kathleen A. Murphy
Mary F. Caloway (No. 3059)
Kathleen A. Murphy (No. 5215)
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

-and-

**ALLEN & OVERY LLP**

Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
ken.coleman@allenovery.com
daniel.guyder@allenovery.com
paul.keller@allenovery.com
laura.hall@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor and Foreign Representative of the Canadian Debtors*

5