# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
302 658 9200
302 658 3989 Fax

Derek C. Abbott
302 351 9357
302 425 4664 Fax
dabbott@mnat.com

December 20, 2013

**VIA ELECTRONIC FILING AND
HAND-DELIVERY**

The Honorable Kevin Gross
United States Bankruptcy Court
for the District of Delaware
824 N. Market St., 6th Floor
Wilmington, DE 19801

     Re: *In re: Nortel Networks Inc., et al.*, Case No. 09-10138 (KG)

Dear Judge Gross:

  We write on behalf of the U.S. Debtors to request a joint hearing with the Canadian Court with respect to "representative witness" depositions in this litigation. For the reasons set forth below, the U.S. Debtors respectfully submit that given the comprehensive discovery that has occurred to date, representative witness depositions are unnecessary, and would impose undue expense on all of the Nortel Debtor estates with little to no corresponding benefit. It is our understanding that all of the Core Parties other than those in the Canadian Discovery Group agree that representative witness depositions should not proceed. We regret the need to send this letter, and have only done so after our numerous efforts to persuade counsel for the Canadian Monitor (including on separate calls yesterday morning, afternoon and night) have been unsuccessful.

  By way of background, the original Discovery Protocol in this litigation contemplated fact depositions followed by representative witness depositions. The representative witness depositions were designed to be a hybrid of the Rule 30(b)(6) process in the United States and the traditional representative witness deposition procedure in Canada. Notably, this hybrid procedure was intended as a "clean up" process to enable the parties to obtain testimony on factual subjects as to which the percipient witnesses with first-hand knowledge were either unknown or unavailable for deposition.

It is our understanding that in typical Canadian litigation, fact witnesses are not commonly deposed and certainly not 100 of them;[1] instead, each party offers one representative to testify as to the party's position. Topics are not disclosed in advance and undertakings are common in which a party provides missing information in writing at a later date. Our Rule 30(b)(6) process, of course, entails the advance disclosure of specified topics and imposes a duty upon the witness to prepare to testify on such topics.

When the Discovery Protocol was negotiated, the parties faced the daunting task of deposing numerous former Nortel employees and other potential witnesses around the world within a narrow window of less than three months. The parties also knew that many of these witnesses were outside the subpoena power of the courts in the United States or Canada. If these witnesses did not appear voluntarily, the parties would then have to resort to the time consuming and burdensome process of obtaining letters rogatory. Given the time constraints and other logistical concerns, it appeared likely that the parties would be unable to obtain testimony from a substantial number of these witnesses. Accordingly, the parties envisioned that the representative witness deposition process would be a gap-filling measure in the event they were unable to obtain depositions from a significant number of these witnesses.

Remarkably, due to the collective efforts of all Core Parties, approximately 99% of all former Nortel employees, officers or directors and pension trustees that the Core Parties sought to depose ultimately testified. These witnesses included one of Nortel's former Chief Executive Officers, several Chief Financial Officers, and numerous Treasurers, general counsels, senior executives in the tax and treasury departments, present and former directors of various Nortel affiliates, senior intellectual property lawyers, merger & acquisition executives, pension trustees and many others, including two EMEA joint administrators, two representatives of the Canadian monitor, the U.S. principal officer and the French liquidator. In all, more than 100 witnesses were deposed in more than 15 cities on three continents in less than three months.

In the face of such wide-ranging deposition discovery of the witnesses with first-hand knowledge of the events underlying this litigation, it has become self-evident to nearly every Core Party that further depositions of party representatives to obtain their second-hand account – not based on personal knowledge – of facts is unnecessary and would be a tremendous waste of time and resources. There can be no doubt that the cost to all estates of proceeding with representative depositions (including preparation time, travel expenses and responding to undertakings) would be substantial.

Not only has deposition discovery of fact witnesses been extensive and complete, but any possible concern about the potential for a surprise witness at trial has been eliminated in

---

[1] Indeed, when we posed the question to our Canadian colleagues from all of the Core Parties during a telephone conference yesterday, nobody could recall being involved in a Canadian litigation where that has ever occurred.

the Discovery Protocol. The Protocol expressly required parties to identify potential trial witnesses at the outset and prohibits a party from calling any witness who has not been deposed.

As a result of the foregoing, we recently proposed to the other Core Parties eliminating the representative witness depositions so the parties could save millions of dollars in additional expenses and focus their resources on expert reports and trial preparation. The EMEA Debtors, UKP Pension Claimants, Official Committee of Unsecured Creditors and Ad Hoc Bondholders Group all readily agreed with our suggestion. Only the Canadian Discovery Group has refused to so agree.[2]

In several Monitor reports recently filed with the Canadian Court (including with respect to their own recent joint request for an extension of the trial date), the Canadian Monitor has expressed concerns about the expense of this litigation and its alleged desire to contain litigation costs. We are thus surprised that the Canadian Discovery Group alone will not agree to the sensible cost-saving measure of eliminating representative depositions given the extraordinary and extensive discovery that has occurred to date.

In the past, the U.S. Debtors have successfully spearheaded efforts to avoid the need to judicial intervention regarding discovery objections. For example, after the Canadian Discovery Group had served 747 document requests (compared to 248 by the U.S. Group and 211 by the EMEA Group), the U.S. Debtors took it upon themselves to draft, and persuade the other Core Parties to accept following lengthy negotiations, a set of 140 common requests in order to avoid significant motion practice.

Similarly, the Canadian Discovery Group served 158 interrogatories, compared to 97 for the EMEA and U.S. Groups combined. As with the document requests, the U.S. Debtors undertook significant time and expense to draft a consolidated set of interrogatories (which resulted in a negotiated set of 54) so as to avoid the need to burden the Courts with motions.

Unfortunately, this time we are unable to persuade the Canadian Discovery Group to agree to sensible restraints on the discovery process. Last Friday, the parties exchanged topics on which they desired the representative witnesses to prepare in advance of their depositions. While the U.S. Discovery Group and the EMEA Discovery Group served 2 ½-page and 1 ½ -page letters, respectively, with an aggregate total of 16 topics to all other parties combined (with an express reservation of rights to move the Courts to eliminate representative depositions), the

---

[2] We recognize that the parties' request to extend the trial filed on November 14, 2013 contemplated representative witness depositions in January. However, since that date, 35 more witnesses have been deposed, thus making it clear to us (and, we believe, every Core Party other than those in the Canadian Discovery Group) that this would be an unnecessary and wasteful exercise.

Canadian Discovery Group served a pleading with 92 pages of topics.[3] These documents are annexed.

The Canadian Discovery Group's 92 pages of topics include 27 all-encompassing subjects specifically directed to the U.S. Debtors. They are extraordinarily overbroad and unduly burdensome. Whereas the U.S. Discovery Group (without prejudice to its position that no representative depositions were needed) identified four specific topics directed to the Canadian Debtors – consisting specifically of "[s]tatements made… to any third party" regarding certain subjects, "[t]hird-party licensing," "[t]he practice of prosecuting or defending patents in litigation" and "[i]nternal valuations of Nortel intellectual property" – the Canadian Discovery Group has demanded that the U.S. representative witness identify four months before trial the "factual and documentary basis" for nearly every U.S. allocation position and defense against the Canadian allocation position. We invite Your Honor to peruse pages 2-5 of the attached Canadian pleading as, in our view, it seeks an inappropriate and enormously burdensome exercise.

The extremely broad designation of 92 pages of topics by the Canadian Discovery Group seeking "any and all evidence" on every potential subject violates both the spirit (streamlining and narrowing discovery whenever possible) and the letter of the Discovery Protocol entered by the Courts. Section G(1)(a) is unambiguous: "a Deposition group may serve a very limited number of subjects" and prohibits a party from designating "an unreasonable number of subjects relative to the time limitations for the examination, subjects of an impermissibly broad scope or subjects inappropriate for a Representative Deposition." The Canadian Discovery Group's topic lists contravene all of these prohibitions. They underscore why representative witness depositions are unnecessary, inappropriate and a waste of estate resources given all that has transpired in deposition discovery thus far.

Further, the Canadian Debtors and Monitor have objected to each and every one of the four topics served by the U.S. Discovery Group (and also to each of the five topics served by the EMEA Discovery Group). The Canadian Creditors Committee – which has likewise objected to every one of the four topics directed at it – has served an objection that highlights why the depositions sought by the Canadian Discovery Group is improper. In the words of the CCC, some of the topics directed to it are "improper request[s] to supplement interrogatory responses via the representative witness process. To the extent the CCC has a continuing obligation to supplement and/or update its interrogatory responses, it will do so at the appropriate time." It is impossible to review the Canadian Group's topics and not reach the same conclusion

---

[3] The Canadian Discovery Group was not finished. After amending their requests Sunday to add several more topics, they served six more pages with 30 additional topics on one of the EMEA Debtors this past Tuesday. Just yesterday, they served an additional set of 17 topics upon the U.K. Pension Claimants after asserting that they had been inadvertently omitted from their 92-page document last Friday.

drawn by the CCC itself. We annex hereto copies of the Canadian Monitor's and Debtors' and the CCC's respective responses, as they preview for the Courts what an objection-riddled, lawyer-driven exercise these depositions will be if they are permitted to proceed.

In requesting that the Canadian Discovery Group take a practical and cost-effective approach at this stage of the proceedings, we recognize that representative witness depositions are the norm in Canadian litigation, and that the parties did contemplate conducting such depositions here. Notwithstanding that, litigants – particularly in insolvency proceedings – have an ongoing obligation to continually assess at all stages the discovery obtained and the necessity of further discovery relative to its costs. Typical Canadian litigants do not have the opportunity to depose over 100 fact witnesses, and thus representative depositions serve as critical means to learn a party's factual contentions and the supporting evidence. Here, given the breadth of deposition discovery from the over 100 percipient witnesses themselves, it would be inappropriate to force the estates to incur millions of dollars of additional costs collectively on representative depositions.

Following extensive efforts by the U.S. Debtors to avoid seeking judicial relief, last night the Canadian Debtors and Monitor proposed substituting representative witness depositions for written responses to questions on five allocation and five claims topics per party by January 17. While we were initially hopeful that it could form the basis for an amicable resolution, after disclosure by the Canadian Debtors and Monitor of the five topics on which they desire responses from the U.S. Debtors (but not the questions themselves), it became apparent that the proposed solution could be even more burdensome than representative depositions.4 The parties are in the process of negotiating a detailed pre-trial exchange of witness affidavits,

---

[4] The all-encompassing topics on which the Canadian Discovery Group seeks written responses from the U.S. Debtors (which were already the subject of numerous depositions) in just a few weeks are:

1. "[t]he facts and documents, other than the MRDA, demonstrating the US Debtors' understanding of the phrase 'equitable and beneficial ownership' as used in the MRDA and the term 'economic ownership' as used in the US Debtors' allocation pleadings"
2. "[t]he factual and documentary basis for and scope of licenses of Nortel's intellectual property, including any enhanced licences, held by parties other than NNL"
3. "[t]he facts and documents demonstrating how and to what extent intellectual property was assigned to NNL by NNL's subsidiaries, inventors/authors and others"
4. "[t]he facts and documents demonstrating Nortel's processes for the identification and development of products, including as they varied over time before and after January 14, 2009"
5. "[t]he facts and documents underlying the contention of the US Debtors that they could have generated value from the intellectual property sold in the Rockstar transaction in the absence of a sale of that intellectual property."

expert reports, deposition designations and exhibits such that each party's case will be fully revealed before pre-trial memoranda are submitted and trial begins. Given the volume of discovery, including millions of documents produced (the review of which remains ongoing), it is simply impossible to be able to list all of our ultimate factual and documentary support now rather than on or close to the schedule negotiated in the Discovery Protocol and Litigation Timetable (i.e., in the weeks leading up to trial).

Given the upcoming holidays and the anticipated commencement of representative depositions shortly thereafter, we feel compelled to raise this with the Court at this time and we look forward to addressing this at the Court's earliest convenience. Of course, we do not expect that our dialogue with the Canadian Debtors and Monitor will end and are committed to continuing our efforts to reach an amicable resolution to obviate the need for court involvement. Our Canadian co-counsel is concurrently providing a copy of this letter to Justice Morawetz. Together with our colleagues in Canada, we ask that the Courts set a briefing schedule and joint hearing to consider the request to modify the Discovery Protocol to eliminate representative witness depositions.

While we hope the other litigants will refrain from attempting to proceed with representative witness depositions while the Courts consider this issue, we reserve the right to seek interim relief from the Court if any party seeks to proceed without the Courts having had a fair opportunity to rule on this issue. We hope and trust that this will be unnecessary.

Respectfully submitted,

Derek C. Abbott

cc:    All Core Parties (via email)

7867556