**Buchanan Ingersoll ∧ Rooney** PC
Attorneys & Government Relations Professionals

**Kathleen A. Murphy**
302 552 4214
kathleen.murphy@bipc.com

1105 North Market Street
Suite1900
Wilmington, DE  19801-1228
T 302 552 4200
F 302 552 4295
www.buchananingersoll.com

December 22, 2013

The Honorable Kevin Gross
United States Bankruptcy Court
District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

　　　Re:  *In re Nortel Networks, Inc., et al.*, Case No. 09-10138 (KG)

Dear Chief Judge Gross:

We write on behalf of the Monitor and the Canadian Debtors in response to the letter filed with this Court by counsel to the US Debtors on December 20, 2013 [Dkt. No. 12688], seeking relief to dispense with the "representative witness" stage of the discovery plan and litigation schedule which has been approved by this Court and Justice Morawetz, and in response to each of the letters in support thereof filed by counsel to the Joint Administrators of the EMEA Debtors [Dkt. No. 12693] and the Official Committee of Unsecured Creditors [Dkt. No. 12694].

*Overview of Position*

Notwithstanding (a) the extensive negotiations and prior agreements among the Core Parties regarding the need for the representative party discovery (b) the positions asserted in these proceedings by the US Debtors regarding their entitlement to such representative party discovery, at least while the EMEA Debtors were resisting such representative party discovery and (c) this Court and the Canadian Court having sanctioned the use of representative party discovery as an integral stage of discovery before any trial in this matter, the US and EMEA Debtors seek to change the existing litigation timetable and discovery plan which form part of scheduling orders of this Court and the Canadian Court (amended as recently as a month ago on consent to provide for the completion of the representative party discovery by January 17, 2014) to now preclude the Monitor and Canadian Debtors from engaging in any representative party discovery on any topic.  Despite the Canadian Debtors' and the Monitor's attempts to present proposals to reach agreement on a further narrowed scope for representative party discovery, including substituting live witness testimony with written interrogatories on a more limited number of the designated topics (with the disclosures relating to the balance of the topics being deferred to the expert reports and trial briefing process), the US Debtors and the other supporting parties now seek to dispense with the use of *any* representative witnesses, all under the guise of conserving resources based on their

December 22, 2013
Page - 2 -

assertion that the other discovery and witness testimony completed to date is sufficient *for all parties* and all purposes for litigating and resolving the claims and allocation disputes.

From the commencement of the discovery process, it has been contemplated that there would be representative party discovery as an integral part of the discovery process.[1]  The basic right to engage in such representative party discovery has not been in dispute and it has consistently been something that the Canadian parties (including the Monitor and Canadian Debtors) have insisted upon.[2]  Each time the litigation timetable and discovery plan was amended, representative party discovery was preserved.  The extension of the litigation schedule submitted by joint motion of all Core Parties (except the Bondholders) on November 11, 2013 and approved by the Courts  was sought for the very purpose of allowing an appropriate amount of time to prepare for the representative party discovery following the extended date for the completion of fact depositions and contemplated eight days of representative party discovery.  The Canadian Debtors, the Monitor and other parties in interest have relied on the Courts' orders, and their ability at this stage in the agreed, court-approved schedule, to engage in representative party discovery.

For the avoidance of doubt, the Canadian Debtors and the Monitor have been continually mindful of the overall need to ensure efficiency and avoid duplication of costs as it relates to this trial process generally. Indeed, the Canadian Debtors and Monitor have made proposals to the US Debtors and others to narrow the scope of the representative party discovery and the overall costs to the estates, including re-formulating the topics that they themselves were served with in order to ensure that they are clear and capable of being addressed in a meaningful way.[3]  Most recently, for example, the Monitor and Canadian Debtors offered to reduce the total number of topics to five topics on allocation and five on the claims asserted by the EMEA Debtors against the Canadian estates and to allow the parties to respond to questions by way of written responses, which would be submitted by January 17, 2014.   The other parties, in contrast, have not articulated the basis for objection to any single topic designated for them (with the time for doing so under the litigation timetable and discovery plan having now passed [4]) and

---

[1]      The discovery process initially encompassed both US Federal Rules of Civil Procedure 30(b)(6) depositions and Ontario Rules of Civil Procedure Rule 31 examinations for discovery, as set forth in section 6 of the Discovery Plan.

[2]      The discovery process under the Ontario rules permits questioning about any matter in issue in the litigation, the scope of which is determined by the submissions/pleadings.   The purpose of such discovery is to "obtain factual information/admissions relevant to Allocation . . .  or Canadian Claims".   *Discovery Plan* [Dkt. No. 10566 at 9].  The representative party discovery was intentionally sequenced to occur after fact witness depositions but before expert reports and submission of fact evidence was to be finalized.  The parties agreed to dispense with 30(b)(6) examinations and the notices that had been exchanged which contained hundreds of designated topics by each party under the original discovery protocol and instead to conduct   "Ontario style" representative party discovery  after the fact depositions so that the information learned in the fact depositions could be taken into account in the representative party discovery.

[3]      Email of December 19, 2013 to the Core Party Service List and follow up email of December 21, 2013 to the Core Party Service List (attached hereto). The proposals are designed to make the completion of the trial evidence (both expert and affiants) more efficient.

[4]      It is noteworthy that:

        a) the US Debtors purport to object to the scope of the questions and the total number but neglect to mention that there are 30 or *fewer* topics designated for each representative witness and they are repeated on allocation and on claims – their emphasis on 92 pages of questions is misleading in that most of the pages are

December 22, 2013
Page - 3 -

instead take the extraordinary position that because they have determined that they do not need or want to conduct representative party discovery of other parties, that the Canadian Monitor and the Canadian Debtors (and other Canadian interests) should be bound by their determination and deprived of their right to do so.  That the US Debtors and other supporting parties have rejected all of these proposals without offering any meaningful alternative casts serious doubts on their stated motivations here simply to ensure efficiency and reduced costs.

The fact is that because the US Debtors and other supporting parties have recently proposed to settle the EMEA Debtors' and UK Pension Claimants claims against the US Debtors, these parties now seek to eliminate altogether the representative party discovery to obtain a strategic advantage in the allocation litigation.  Eliminating representative party discovery will allow these parties maximum flexibility to develop new allocation theories (something expressly contemplated by the proposed settlement agreement) without the opportunity for the Canadian Debtors and the Monitor to obtain essential fact discovery to defend these positions.  As discussed below, granting the request of the US Debtors would deprive the Canadian Debtors, the Monitor and, for that matter, the Courts, the benefit of essential discovery required to analyze and resolve these cross-border disputes over claims and allocation, irrespective of any proposed settlement of the EMEA Debtors' and UK Pension claims against the US Debtors.

***The Evolution and Preservation of Representative Party Discovery in These Proceedings***

From the commencement of discovery, either Federal Rules of Civil Procedure 30(b)(6) depositions or representative party discovery have been contemplated as an integral part of the process of this litigation

---

repeating the same topics on either allocation or claims for the different parties, including 24 different EMEA entities who have filed claims against the Canadian estate, for many of which there has been little or no opportunity for fact depositions.  It was expressly contemplated that the representative party discovery would take into account testimony covered in the fact depositions and be used to identify the facts or documents pertaining to a particular subject (tied to the pleadings) that a party relies upon not otherwise disclosed in the fact deposition process – now the US Debtors claim that the very process that they agreed to and advocated is too burdensome and offer no alternative;

b) the only purported objection that the EMEA Debtors make in their submission in support of the US Debtors is that they should not have to respond to 561 broad subjects – which are in reality 30 or fewer subjects for each EMEA Debtor that has made a multitude of claims in the Canadian estate and taken an interdependent position on allocation,  and they offer no basis on which they should not be required to disclose the factual and documentary basis upon which they base their assertions – if they are aware of nothing  beyond what has been disclosed through the fact deposition testimony and exhibits then surely it would not impose a disproportionate burden for them to state that on the record particularly given the offer for it to be done in writing; and

c) the UCC in its letter to the Court  in  support  of the US Debtors' position [Dkt. No. 12694] purports to object because the topics listed for them (derived from their own submission/ pleading or positions they themselves have adopted) relate to matters that pre-date the UCC's formation and matters that will probably be the subject of expert testimony – if that is their response to the topics designated for them - namely that they have no knowledge of any facts or documents in support of their position on allocation beyond what may be disclosed in the expert reports to be delivered on January 24, 2014 -  then the Monitor and Canadian Debtors are entitled to have that on the record and binding, and surely it would not impose a disproportionate burden for them to state that on the record particularly given the offer for it to be done in writing;

December 22, 2013
Page - 4 -

and the basic right to engage in such depositions has not been in dispute. Each time the schedule was amended representative party discovery was contemplated.

Throughout the discovery process, the parties have worked cooperatively to narrow the scope of representative party discovery. Initially, the parties collectively served hundreds of topics for examination under Rule 30(b)(6) of the Federal Rules of Civil Procedure. It was the US Debtors who encouraged the other parties to forego traditional Rule 30(b)(6) depositions in favor of a modified Canadian representative party discovery approach.[5] The fact that the parties ultimately agreed to narrow the depositions from hundreds of topics to eight days of depositions is a significant curtailment in scope and demonstrated the parties' efforts to conduct discovery as efficiently and expediently as possible.

The US Debtors have themselves sought to expand the scope of the representative party discovery. The EMEA Debtors initially contemplated producing one representative witness for all of the EMEA entities making claims against the US estates. The US Debtors strenuously objected and urged this Court to require the EMEA Debtors to provide a representative witness for *each* EMEA entity claimant. Ultimately, the parties reached a compromise position and this Court and the Canadian Court amended the deposition protocol to reflect that the EMEA Debtors were not obliged to designate a different representative witness for each EMEA entity claimant, but that "[n]o specific time limits shall be placed on these Representative Depositions at this time. . . ."[6] This revised language reflected the careful consideration of the parties of the need to strike an appropriate balance between minimizing duplication of efforts and costs and ensuring the parties have the opportunity to engage in meaningful representative party discovery. The agreement amongst the parties, as endorsed by the Courts, to engage in a significantly narrowed version of representative party discovery, should not be eviscerated at this late stage.

Moreover, at the time the most recent joint motion to amend the litigation schedule was made, premised in large part on the need for additional time to prepare for and conduct representative party discovery, the parties were fully aware that the number of fact witness depositions would likely exceed 100 depositions, but at no point did any of the parties moving for the extension suggest that the number of fact depositions completed should foreclose the opportunity for representative party discovery. This Court should not allow the US Debtors to waste the Court and parties' resources by forcing the re-litigation of previously resolved discovery issues, particularly where they jointly proposed the existing schedule to the Court only a little more than a month ago.

---

[5]     Letter to the Honorable Kevin Gross on behalf of the US Debtors [Dkt. No. 11575 at 8]. The US Debtors represented to this Court in this letter that: "[a]t our suggestion, the core parties all agreed to forego traditional Rule 30(b)(6) examinations and instead utilize a modified Canadian representative party discovery approach whereby each party would put a witness for a one or two day examination (parties who did not file a pleading were excepted)." As the US Debtors stated, the only exception to the agreement to engage in party representative party discovery was for those parties that did not file a pleading. This limited exception makes sense and comports with the essential goal of Rule 30(b)(6) depositions: to allow a party to know the basis of the claims made against them before their trial evidence is finalized.

[6]     *Order Resolving Certain Discovery Disputes and Denying Related Relief* [Dkt. No. 11762 at 3].

December 22, 2013
Page - 5 -

The US Debtors have not provided any meaningful explanation for their request to alter the *status quo*. All that has changed since the November 14, 2013 joint motion is that the US Debtors have reached a settlement with the EMEA Debtors and the UK Pension Claimants with respect to the claims those parties have asserted against the US estates.[7]  Without making any reference to that fundamental change in circumstances, the US Debtors suggest that the last 35 fact witness depositions were somehow sufficient to alter their position on their own need for representative party discovery, but many of those final depositions involved third parties and the majority of the approximately 105 depositions that have taken place to date have not involved parties whose testimony is binding on the parties.  In all of the prior depositions, even those of officers of the parties, the deponents appeared in their individual capacity.  In fact, inquiry into the bases for the parties' positions was forestalled—at the deposition of John Ray, the principal officer of the US Debtors, his counsel objected on grounds of privilege to questions relating to the US Debtors' allocation position because "[h]e's not here either as a representative witness, nor is he here to give our legal theories or positions in this case."

***The Monitor and Canadian Debtors Have Made Reasonable Efforts to Curtail Costs and Streamline the Process***

In the spirit of compromise, on December 19, 2013, following the deadline for objections to the representative party topics, the Monitor and Canadian Debtors offered to further narrow the scope of the representative party discovery with the aim of minimizing any potential burden on the parties and witnesses.  The Monitor and Canadian Debtors offered to reduce the total number of topics to five topics on allocation and five on the claims asserted by the EMEA Debtors against the Canadian estates (with the disclosures relating to the balance of the topics being deferred to the expert reports and trial briefing process)  and to allow the parties to respond to questions by way of written responses, which would be provided by January 17, 2014.  This proposal accomplishes the goals of the current litigation timetable and discovery plan, which is to complete certain aspects of the representative party discovery in advance of the completion of expert witness reports and trial affidavits.[8] It is a meaningful benchmark in the pre-trial process to have disclosure of and admissions from opposing parties and this is built into the current litigation timetable and discovery plan.  The Monitor and Canadian Debtors' proposal to limit the number of topics for discovery in advance of expert reports and the trial briefing was in response to the US Debtors' suggestion that would be a manageable number of topics to deal with in the timeframe.[9]  The Canadian Debtors' and Monitor's proposal that written responses could be provided to questions was a direct response to the concern professed by counsel to the US Debtors that there would be insufficient time to prepare representative witnesses for live testimony.

---

[7]      *See Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363, 503(B) and 507(A)(2) and Bankruptcy Rules 6004(H) and 9019 Approving the US Claims Litigation Settlement Agreement By and Among the Debtors, the Creditors' Committee, the Joint Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited, Nortel Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates* [Dkt. No. 12618].

[8]      Under the current schedule initial reports are due January 24, 2014 and reply reports are due February 28, 2014.  The dates for the trial briefing process are still being discussed by the parties.

[9]      December 21, 2013 email from Jennifer Stam (attached hereto) delineating the proper topics for each Core Party.

December 22, 2013
Page - 6 -

Despite these efforts made by the Monitor and Canadian Debtors to find middle ground, the US Debtors continue to claim that they could not possibly be prepared for any narrowed version of representative party discovery, even though the current dates were heavily negotiated and agreed upon previously and specifically endorsed by this Court and the Canadian Court.  In response to repeated conversations about the scope of the representative party discovery, dating back more than ten days prior to the US Debtors' filing of its letter raising this issue with the Court, neither the US Debtors nor any other party that has endorsed their position have offered a meaningful alternative to the position that all representative party discovery should be eliminated.

The US Debtors claim their request to prevent the parties from engaging in representative party discovery is based on a desire to conserve the resources of the estate.  As explained above, the scope of these depositions has already been significantly curtailed.  The US Debtors made no similar entreaties to reduce expenses while conducting over 105 fact witness depositions around the globe over a three-month period. It is reasonable to expect the currently scheduled eight days of representative party discovery, which will take place in two central locations, will be far more cost-efficient.[10]  Further, the Monitor's and Canadian Debtors' compromise offer to narrow the scope to five topics and to allow written responses to questions as opposed to live testimony would further reduce costs.

### Representative Party Discovery Is Essential to Fair and Efficient Trial Preparation

To the extent that the US Debtors believe they have obtained all the testimony necessary for their case and they do not require any further discovery, they are entitled to reduce costs and increase efficiencies by electing to not proceed with the discovery topics that they noticed to other Core Parties.[11]  However, the present effort to foreclose other parties from conducting representative party discovery is contrary to the goals of discovery.[12]  It is fundamental that all parties have a right to know the basis of the contentions and facts that opposing parties intend to present at trial.  To that end, the discovery process is based on the fundamental goal of preventing surprise at trial.  As counsel to the US Debtors represented to this Court

---

[10]    Considering that the US Debtors' primary counsel incurred approximately $9.3 million in fees and expenses in a single month, it strains credulity to allege that eliminating, at most, eight days of representative party discovery will represent a substantial savings in the aggregate.  *See Fifty-Eighth Interim Application of Cleary Gottlieb Steen & Hamilton LLP, As Attorneys for Debtors and Debtors-In-Possession, for Allowance of Interim Compensation and for Interim Reimbursement of All Actual and Necessary Expenses Incurred for the Period October 1, 2013 Through October 31, 2013*, [Dkt. No. 12502] (seeking compensation of $9,327,407.50 for the month of October as "actual, reasonable and necessary").

[11]    In light of their repeated assertions that representative party discovery is unnecessary, it is unclear why the US Debtors have themselves noticed topics for the Canadian discovery group.  *See* US Deposition Group's December 13, 2013, letter enumerating deposition topics (attached to the US Debtors' December 20, 2013, letter to this Court raising the present discovery dispute) (claiming that US Debtors believe the depositions are unnecessary, but that they are providing topics "to avoid any claim of waiver.").  It is unclear how the US Debtors could be concerned about a claim of waiver when they are simultaneously claiming that representative party discovery is unnecessary in its entirety.

[12]    The US Debtors' entreaties to this Court to consider the volume and type of discovery available to a "typical Canadian litigant" in a "typical Canadian litigation" are wholly irrelevant given the procedural posture of this case.  Even if it were a relevant consideration, a typical Canadian litigant would, if nothing else, be entitled to representative party discovery.

December 22, 2013

Page - 7 -

just three months ago, any particular circumstance unique to this case "is not a reason to deprive the US Debtors of their basic right to depose a party representative for each Claimant."[13]   And as counsel for the US Debtors further noted back in September: "[i]t is axiomatic that each EMEA Claimant must participate fully in the discovery process.  This includes, at the most basic level, identifying and producing for deposition witnesses associated with each Claimant who are knowledgeable on key topics raised in the Claims and a party representative of each Claimant."[14]   The US Debtors' letter seeking a complete end to representative party discovery process fails to explain why these axioms no longer apply.

The Monitor and Canadian Debtors previously agreed to forego interrogatories as well as the standard Rule 30(b)(6) depositions.  The representative party discovery remained as the only defensive discovery tool available in this case.  Cooperative efforts have been made to narrow the scope of the representative party discovery and to allow written responses in lieu of presenting a live witness.  However, foreclosing the opportunity to obtain any representative party discovery would be extremely prejudicial, particularly in the circumstances of this litigation.  The discovery process, including the more than 105 fact witness depositions that have been conducted to date, has been based in material part on the understanding that parties would have the opportunity to partake in representative party discovery.  This understanding influenced not only who would be deposed, but also whether to reserve lines of questioning for party representatives.[15]

Representative witnesses have "a unique status" that is "substantially different" from fact witnesses because a representative witness "testifies as the entity, not as an individual."  *Ethypharm SA France v. Abbott Labs.*, 271 F.R.D. 82, 90 (D. Del. 2010) (quoting *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, No. 01 CIV. 3016(AGS)(HB), 2002 WL 1835439 (S.D.N.Y.  Aug. 8, 2002) (internal quotation marks omitted)).  Eliminating the parties' ability to engage in discovery that binds the parties would ignore this fundamental difference between these types of witnesses.  A representative witness "is not simply testifying about matters within his or her personal knowledge, but rather is speaking for the corporation about matters to which the corporation has reasonable access."  *Oy v. Verizon Servs. Corp.*, No. 12–715–CJB, 2013 WL 5675516, at *2 (D. Del. Oct. 15, 2013) (citing *Penn Mut. Life Ins. Co. v. Rodney Reed 2006 Ins. Trust*, No. 09–CV–0663 (JCJ), 2011 WL 1636985, at *1 (D. Del. Apr. 29, 2011)).  Particularly here, where the fact witnesses only have personal knowledge of facts that occurred during a discrete period of time, and which often occurred over ten years ago, having the opportunity to understand the parties' positions and the facts supporting those positions is essential.

---

[13]     Letter to The Honorable Kevin Gross on behalf of the US Interests [Dkt. No. 11707 at 5].

[14]     *Id.* at 1 (emphasis in original).

[15]     For example, when the Monitor and Canadian Debtors noticed depositions of certain individuals, the Ad Hoc Committee of Bondholders objected on the grounds that the individuals noticed did not have knowledge of the claims for which their testimony was sought and that the testimony would be better addressed in the representative party discovery.  August 1, 2013 email from Atara Miller on behalf of the Bondholders to the Core Party Service List (attached hereto).

December 22, 2013
Page - 8 -

The Monitor and Canadian Debtors respectfully request that this Court reject any entreaties to alter the litigation schedule by eliminating representative party discovery.  We hope to continue to negotiate with our counterparties to agree on a reasonable alternative that does not prejudice any party, but we continue to believe that the Canadian Debtors' and Monitor's proposal to reduce the number of topics to five and to allow all responses to be in writing strikes the appropriate balance.

Very truly yours,

/s/ *Kathleen A. Murphy*

Kathleen A. Murphy (No. 5215)

KAM/
1027550-001116

**Rajan, Claire:BK (DC)**

| | |
|---|---|
| **From:** | Stam, Jennifer <Jennifer.Stam@gowlings.com> |
| **Sent:** | Thursday, December 19, 2013 4:52 PM |
| **To:** | (Akin Gump) Abid Qureshi; (Akin Gump) Brad M. Kahn; (Akin Gump) Christine Doniak; (Akin Gump) David Botter; (Akin Gump) Fred Hodara; (Akin Gump) Jackie Yecies; (Akin Gump) Robert Johnson ; (Akin Gump) Sunny Gulati; Guyder, Daniel:BK (NY); Cho, Jonathan:BK (NY); Badtke-Berkow, Joseph:BK (NY); Coleman, Ken:BK (NY); Hall, Laura R:LT (NY); Ward, Nicolette:LT (NY); Keller, Paul B.:LT (NY); (Ashurst) Angela Pearson; (Ashurst) Antonia Croke; (Bayard) Charlene D. Davis; (Bayard) Justin Alberto; (Bennett Jones )  Jonathan Bell; (Bennett Jones) Gavin Finlayson; (Bennett Jones) Kevin Zych; (Bennett Jones) Richard Orzy; (Bennett Jones) Richard Swan; (Bennett Jones) Sean Zweig; (Borden) Edmond Lamek; (Borden) James Szumski; (Buchanan Ingersoll) Kathleen Murphy; (Buchanan Ingersoll) Mary Caloway; (Cassels) Bill Burden; (Cassels) Bruce Leonard; (Cassels) Christopher Horkins; (Cassels) David S. Ward; (Cassels) Lara Jackson; (CAW) Barry Wadsworth; (CAW) Lewis Gottheil; (Cleary) Dan Queen; (Cleary) Darryl Stein; (Cleary) Howard Zelbo; (Cleary) Jacqueline Moessner; (Cleary) James Bromley; (Cleary) Jeffrey Rosenthal; (Cleary) Jodi Erickson; (Cleary) Lauren Peacock; (Cleary) Lisa Schweitzer; (Cleary) Marla Decker; (Cleary) Neil Forrest; (Davies Ward) James Doris; (Davies Ward) Louis Sarabia; (Davies Ward) Robin Schwill; (Davies Ward) Sean Campbell; (Dentons) Barbara Grossman; (Dentons) Michael Wunder; (Dentons) Ryan Jacobs; (Dentons) Shayne Kukulowicz; (DLA Piper)  Richard Hans; (DLA Piper) Farah Lisa Whitley-Sebti; (DLA Piper) Jason Gerstein; (DLA Piper) Selinda Melnik; (DLA Piper) Timothy Hoeffner; (E&Y) Monitor; (Goodmans) Alan Mark; (Goodmans) Ben Zarnett; (Goodmans) Chris Armstrong; (Goodmans) Fred Myers; (Goodmans) Jay Carfagnini; (Goodmans) Jessica Kimmel; (Goodmans) Joseph Pasquariello; (Goodmans) Peter Ruby; (Gowlings) Derrick Tay; (Gowlings) Jennifer Stam; (Heenan) John Salmas; (Heenan) Kenneth Kraft; (Heenan) Sara-Ann Van Allen; (Hogan Lovells) Angela Dimsdale Gill; (Hogan Lovells) David Graves; (Hogan Lovells) John Tillman; (Hogan Lovells) Katherine Tallett-Williams; (Hogan Lovells) Matthew Bullen; (Hughes Hubbard) Charles Huberty; (Hughes Hubbard) Derek Adler; (Hughes Hubbard) Fara Tabatabai; (Hughes Hubbard) Neil Oxford; (Katten) Craig Barbarosh; (Katten) David Crichlow; (Katten) Karen Dine; (Koskie) Ari Kaplan; (Koskie) Barbara Walancik; (Koskie) Mark Zigler; (Koskie) Susan Philpott; (Latham & Watkins) Michael Riela; (Lax O'Sullivan) Matthew Gottlieb; (Lax O'Sullivan) Paul Michell; (Lax O'Sullivan) Tracy Wynne; (McCarthy) Barbara Boake; (McCarthy) Byron Shaw; (McCarthy) Elder Marques; (McCarthy) James Gage; (McCarthy) Kelly Peters; (McCarthy) Paul Steep; (McCarthy) Sharon Kour; (McMillan) Sheryl Seigel; (Milbank) Albert Pisa; (Milbank) Andrew LeBlanc; (Milbank) Atara Miller; (Milbank) Gabrielle Ruha; (Milbank) Jennifer Harris; (Milbank) Michael Hirschfeld; (Milbank) Nick Bassett; (Milbank) Rachel Pojunas; (Milbank) Samir Vora; (Milbank) Thomas Kreller; (Milbank) Tom Matz; (Morris Nichols) Annie Cordo; (Morris Nichols) Derek Abbott; (Nelligan) Ainslie Benedict; (Nelligan) Christpher Rootham; (Nelligan) Janice Payne; (Nelligan) Steven Levitt; (Norton Rose) Michael Lang; (Osler) Adam Hirsh; (Osler) Alexander Cobb; (Osler) Betsy Putnam; (Osler) Edward Sellers; (Osler) Lyndon Barnes; (Paliare) Jacqueline Cummins; (Paliare) Karen Jones; (Paliare) Ken Rosenberg; (Paliare) Lily Harmer; (Paliare) Max Starnino; (Paliare) Michelle Jackson; (Paliare) Tina Lie; (Patterson) Daniel Lowenthal; (Richards Layton) Christopher Samis; (Shibley) Arthur Jacques; (Shibley) Thomas McRae; (Thornton Grout) D.J. Miller; (Thornton Grout) John Finnigan; (Thornton Grout) Michael Barrack; (Thronton Grout) Andrea McEwan; (Thronton Grout) Rebecca Lewis; (Torys) Adam Slavens; (Torys) Andrew Gray; (Torys) Scott Bomhof; (Torys) Sheila Block; (Torys) Tony DeMarinis; (Willkie Farr) Andrew Hanrahan; (Willkie Farr) Brian O'Connor; (Willkie Farr) Sameer |

**To:**          Advani; (Young Conaway) Ed Harron; (Young Conaway) John Dorsey
**Cc:**          Anderson, Michel
**Subject:**     Nortel: Representative Witness Depositions

**Categories:**       Copied to Virtual File

The Monitor and the Canadian Debtors do not agree with the position that the representative party examinations should be dispensed with in their entirety.  We understand that there is an objection to the extent of information that a given representative might have to absorb and come prepared to address based on the subjects that we designated. While we remain of the view that the designated subject areas are entirely appropriate for purposes of discovery/representative party examinations under both Ontario and US procedure, in order to address that objection so that we obtain meaningful answers in the available time, the Monitor and Canadian Debtors would be prepared to agree to cap the number of subject areas that would be dealt with through the representative party examinations in January in advance of the trial briefing process (we are thinking along the lines of capping for this purpose our designated subject areas to a maximum of 5 for allocation and 5 for claims), some or all of which we would be prepared to consider dealing with in writing (with the specific questions to be formalized by an agreed upon date) on the condition that we have agreement that the responses will be provided by January 17, 2014.  The Monitor and Canadian Debtors would similarly be prepared to answer questions in writing within your designated subject areas (subject to the noted objections which we remain willing to meet and confer with you about).  This proposal assumes that the identification of facts and documents for the balance of our designated subject areas will be addressed through a trial briefing procedure that would entail exhibits, affidavits, reply affidavits and deposition designations being exchanged in sequence and concluded in early May in advance of the May 12, 2014 trial commencement date.  If this is an agreeable way of proceeding please confirm and we will identify the questions that would remain designated from our lists for this purpose.  All rights continue to be reserved.

**Jennifer Stam**
Partner
T 416-862-5697
jennifer.stam@gowlings.com



**Gowling Lafleur Henderson LLP**
**Lawyers • Patent and Trade-mark Agents**
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, Ontario
M5X 1G5 Canada
T 416-862-7525  F 416-862-7661
**gowlings.com**



IMPORTANT NOTICE: This message is intended only for the use of the individual or entity to which it is addressed. The message may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify Gowlings immediately by email at postmaster@gowlings.com. Thank you.

**Nixdorf, Mark:BK (NY)**

| | |
|---|---|
| **From:** | Stam, Jennifer <Jennifer.Stam@gowlings.com> |
| **Sent:** | Saturday, December 21, 2013 10:53 PM |
| **To:** | Stam, Jennifer; (Akin Gump) Abid Qureshi; (Akin Gump) Brad M. Kahn; (Akin Gump) Christine Doniak; (Akin Gump) David Botter; (Akin Gump) Fred Hodara; (Akin Gump) Jackie Yecies; (Akin Gump) Robert Johnson ; (Akin Gump) Sunny Gulati; Guyder, Daniel:BK (NY); Cho, Jonathan:BK (NY); Badtke-Berkow, Joseph:BK (NY); Coleman, Ken:BK (NY); Hall, Laura R:LT (NY); Ward, Nicolette:LT (NY); Keller, Paul B.:LT (NY); (Ashurst) Angela Pearson; (Ashurst) Antonia Croke; (Bayard) Charlene D. Davis; (Bayard) Justin Alberto; (Bennett Jones )  Jonathan Bell; (Bennett Jones) Gavin Finlayson; (Bennett Jones) Kevin Zych; (Bennett Jones) Richard Orzy; (Bennett Jones) Richard Swan; (Bennett Jones) Sean Zweig; (Borden) Edmond Lamek; (Borden) James Szumski; (Buchanan Ingersoll) Kathleen Murphy; (Buchanan Ingersoll) Mary Caloway; (Cassels) Bill Burden; (Cassels) Bruce Leonard; (Cassels) Christopher Horkins; (Cassels) David S. Ward; (Cassels) Lara Jackson; (CAW) Barry Wadsworth; (CAW) Lewis Gottheil; (Cleary) Dan Queen; (Cleary) Darryl Stein; (Cleary) Howard Zelbo; (Cleary) Jacqueline Moessner; (Cleary) James Bromley; (Cleary) Jeffrey Rosenthal; (Cleary) Jodi Erickson; (Cleary) Lauren Peacock; (Cleary) Lisa Schweitzer; (Cleary) Marla Decker; (Cleary) Neil Forrest; (Davies Ward) James Doris; (Davies Ward) Louis Sarabia; (Davies Ward) Robin Schwill; (Davies Ward) Sean Campbell; (Dentons) Barbara Grossman; (Dentons) Michael Wunder; (Dentons) Ryan Jacobs; (Dentons) Shayne Kukulowicz; (DLA Piper)  Richard Hans; (DLA Piper) Farah Lisa Whitley-Sebti; (DLA Piper) Jason Gerstein; (DLA Piper) Selinda Melnik; (DLA Piper) Timothy Hoeffner; (E&Y Monitor); (Goodmans) Alan Mark; (Goodmans) Ben Zarnett; (Goodmans) Chris Armstrong; (Goodmans) Fred Myers; (Goodmans) Jay Carfagnini; (Goodmans) Jessica Kimmel; (Goodmans) Joseph Pasquariello; (Goodmans) Peter Ruby; Tay, Derrick; Stam, Jennifer; (Heenan) John Salmas; (Heenan) Kenneth Kraft; (Heenan) Sara-Ann Van Allen; (Hogan Lovells) Angela Dimsdale Gill; (Hogan Lovells) David Graves; (Hogan Lovells) John Tillman; (Hogan Lovells) Katherine Tallett-Williams; (Hogan Lovells) Matthew Bullen; (Hughes Hubbard) Charles Huberty; (Hughes Hubbard) Derek Adler; (Hughes Hubbard) Fara Tabatabai; (Hughes Hubbard) Neil Oxford; (Katten) Craig Barbarosh; (Katten) David Crichlow; (Katten) Karen Dine; (Koskie) Ari Kaplan; (Koskie) Barbara Walancik; (Koskie) Mark Zigler; (Koskie) Susan Philpott; (Latham & Watkins) Michael Riela; (Lax O'Sullivan) Matthew Gottlieb; (Lax O'Sullivan) Paul Michell; (Lax O'Sullivan) Tracy Wynne; (McCarthy) Barbara Boake; (McCarthy) Byron Shaw; (McCarthy) Elder Marques; (McCarthy) James Gage; (McCarthy) Kelly Peters; (McCarthy) Paul Steep; (McCarthy) Sharon Kour; (McMillan) Sheryl Seigel; (Milbank) Albert Pisa; (Milbank) Andrew LeBlanc; (Milbank) Atara Miller; (Milbank) Gabrielle Ruha; (Milbank) Jennifer Harris; (Milbank) Michael Hirschfeld; (Milbank) Nick Bassett; (Milbank) Rachel Pojunas; (Milbank) Samir Vora; (Milbank) Thomas Kreller; (Milbank) Tom Matz; (Morris Nichols) Annie Cordo; (Morris Nichols) Derek Abbott; (Nelligan) Ainslie Benedict; (Nelligan) Christpher Rootham; (Nelligan) Janice Payne; (Nelligan) Steven Levitt; (Norton Rose) Michael Lang; (Osler) Adam Hirsh; (Osler) Alexander Cobb; (Osler) Betsy Putnam; (Osler) Edward Sellers; (Osler) Lyndon Barnes; (Paliare) Jacqueline Cummins; (Paliare) Karen Jones; (Paliare) Ken Rosenberg; (Paliare) Lily Harmer; (Paliare) Max Starnino; (Paliare) Michelle Jackson; (Paliare) Tina Lie; (Patterson) Daniel Lowenthal; (Richards Layton) Christopher Samis; (Shibley) Arthur Jacques; (Shibley) Thomas McRae; (Thornton Grout) D.J. Miller; (Thornton Grout) John Finnigan; (Thornton Grout) Michael Barrack; (Thronton Grout) Andrea McEwan; (Thronton Grout) Rebecca Lewis; (Torys) Adam Slavens; (Torys) Andrew Gray; (Torys) Scott Bomhof; (Torys) Sheila Block; (Torys) Tony DeMarinis; |

|            |                                                                                           |
|------------|-------------------------------------------------------------------------------------------|
| **To:**    | (Willkie Farr) Andrew Hanrahan; (Willkie Farr) Brian O'Connor; (Willkie Farr) Sameer Advani; (Young Conaway) Ed Harron; (Young Conaway) John Dorsey |
| **Cc:**    | Anderson, Michel                                                                          |
| **Subject:** | RE: Nortel: Representative Witness Depositions                                           |
| **Attachments:** | EMEA Debtors Topics for the Canadian Debtors-TOR_LAW-8323829-v2.DOC; US Debtors Topics for Cdn Debtors (revised)-TOR_LAW-8324669-v1.DOC; Blackline (US Debtors Topics for Cdn Debtors)-TOR_LAW-8324701-v1.DOC; Blackline (EMEA Debtors Topics to Cdn Debtors)-TOR_LAW-8324702-v1.DOC |

Further to the email sent on behalf of the Canadian Debtors and the Monitor at 4:54 pm on Thursday December 19 , 2013 following our  meet and confer earlier that day, we wish to delineate the particular topics for each Core Party  for whom we have designated representative party topics which ones we would include in the cap of 5 about which we would like to be able to ask questions in the time frame contemplated by the Amended Discovery Plan (with the disclosures about the remaining topics to be covered in the trial briefing process).  The US Debtors asked and were provided with their topics previously but we are including them again in this listing for completeness (we note that no others have asked what the topics would be).

US Debtors on allocation : 1, 4, 9, 10, 13 [Note these topics do not include those that relate to the separate allocation theory of the CCC]
Bondholders and UCC on allocation: same topics as for US Debtors –parties to advise of any additional or different responses that they have to the responses of the US Debtors [Note these topics do not include those that relate to the separate allocation theory of the CCC]
All EMEA Debtors on allocation: 1, 3, 4, 6, 7  (or corresponding questions if numbering is different for any particular claimant)
Northern Ireland, NNOCL, South Africa: 1,2,3, 4, 5
All EMEA Debtors (except NNSA) on claims: 8,9,21,23,25
NNSA on claims: 8,20,22,24,30
UKPC: 1, 2, 5, 6, 10

For ease of reference, we also attach two schedules which re-state the topics designated by the US Debtors and EMEA Debtors for the Canadian Debtors so as to reflect the objections that we delivered in respect of those topics and sets forth any concerns we have about the clarity and/or scope of what may be asked about.

---

**From:** Stam, Jennifer
**Sent:** December-19-13 4:52 PM
**To:** (Akin Gump) Abid Qureshi; (Akin Gump) Brad M. Kahn; (Akin Gump) Christine Doniak; (Akin Gump) David Botter; (Akin Gump) Fred Hodara; (Akin Gump) Jackie Yecies; (Akin Gump) Robert Johnson ; (Akin Gump) Sunny Gulati; (Allen & Overy) Daniel Guyder; (Allen & Overy) Jonathan Cho; (Allen & Overy) Joseph Badtke-Berkow; (Allen & Overy) Ken Coleman; (Allen & Overy) Laura Hall; (Allen & Overy) Nicolette Ward; (Allen & Overy) Paul Keller; (Ashurst) Angela Pearson; (Ashurst) Antonia Croke; (Bayard) Charlene D. Davis; (Bayard) Justin Alberto; (Bennett Jones ) Jonathan Bell; (Bennett Jones) Gavin Finlayson; (Bennett Jones) Kevin Zych; (Bennett Jones) Richard Orzy; (Bennett Jones) Richard Swan; (Bennett Jones) Sean Zweig; (Borden) Edmond Lamek; (Borden) James Szumski; (Buchanan Ingersoll) Kathleen Murphy; (Buchanan Ingersoll) Mary Caloway; (Cassels) Bill Burden; (Cassels) Bruce Leonard; (Cassels) Christopher Horkins; (Cassels) David S. Ward; (Cassels) Lara Jackson; (CAW) Barry Wadsworth; (CAW) Lewis Gottheil; (Cleary) Dan Queen; (Cleary) Darryl Stein; (Cleary) Howard Zelbo; (Cleary) Jacqueline Moessner; (Cleary) James Bromley; (Cleary) Jeffrey Rosenthal; (Cleary) Jodi Erickson; (Cleary) Lauren Peacock; (Cleary) Lisa Schweitzer; (Cleary) Marla Decker; (Cleary) Neil Forrest; (Davies Ward) James Doris; (Davies Ward) Louis Sarabia; (Davies Ward) Robin Schwill; (Davies Ward) Sean Campbell; (Dentons) Barbara Grossman; (Dentons) Michael Wunder; (Dentons) Ryan Jacobs; (Dentons) Shayne Kukulowicz; (DLA Piper) Richard Hans; (DLA Piper) Farah Lisa Whitley-Sebti; (DLA Piper) Jason Gerstein; (DLA Piper) Selinda Melnik; (DLA Piper) Timothy Hoeffner; (E&Y) Monitor; (Goodmans) Alan Mark ; (Goodmans) Ben Zarnett; (Goodmans) Chris Armstrong; (Goodmans) Fred Myers; (Goodmans) Jay Carfagnini; (Goodmans) Jessica Kimmel; (Goodmans) Joseph Pasquariello; (Goodmans) Peter Ruby; (Gowlings) Derrick Tay; (Gowlings) Jennifer Stam; (Heenan)

John Salmas; (Heenan) Kenneth Kraft; (Heenan) Sara-Ann Van Allen; (Hogan Lovells) Angela Dimsdale Gill; (Hogan Lovells) David Graves; (Hogan Lovells) John Tillman; (Hogan Lovells) Katherine Tallett-Williams; (Hogan Lovells) Matthew Bullen; (Hughes Hubbard) Charles Huberty; (Hughes Hubbard) Derek Adler; (Hughes Hubbard) Fara Tabatabai; (Hughes Hubbard) Neil Oxford; (Katten) Craig Barbarosh; (Katten) David Crichlow; (Katten) Karen Dine; (Koskie) Ari Kaplan; (Koskie) Barbara Walancik; (Koskie) Mark Zigler; (Koskie) Susan Philpott; (Latham & Watkins) Michael Riela; (Lax O'Sullivan) Matthew Gottlieb; (Lax O'Sullivan) Paul Michell; (Lax O'Sullivan) Tracy Wynne; (McCarthy) Barbara Boake; (McCarthy) Byron Shaw; (McCarthy) Elder Marques; (McCarthy) James Gage; (McCarthy) Kelly Peters; (McCarthy) Paul Steep; (McCarthy) Sharon Kour; (McMillan) Sheryl Seigel; (Milbank) Albert Pisa; (Milbank) Andrew LeBlanc; (Milbank) Atara Miller; (Milbank) Gabrielle Ruha; (Milbank) Jennifer Harris; (Milbank) Michael Hirschfeld; (Milbank) Nick Bassett; (Milbank) Rachel Pojunas; (Milbank) Samir Vora; (Milbank) Thomas Kreller; (Milbank) Tom Matz; (Morris Nichols) Annie Cordo; (Morris Nichols) Derek Abbott; (Nelligan) Ainslie Benedict; (Nelligan) Christpher Rootham; (Nelligan) Janice Payne; (Nelligan) Steven Levitt; (Norton Rose) Michael Lang; (Osler) Adam Hirsh; (Osler) Alexander Cobb; (Osler) Betsy Putnam; (Osler) Edward Sellers; (Osler) Lyndon Barnes; (Paliare) Jacqueline Cummins; (Paliare) Karen Jones; (Paliare) Ken Rosenberg; (Paliare) Lily Harmer; (Paliare) Max Starnino; (Paliare) Michelle Jackson; (Paliare) Tina Lie; (Patterson) Daniel Lowenthal; (Richards Layton) Christopher Samis; (Shibley) Arthur Jacques; (Shibley) Thomas McRae; (Thornton Grout) D.J. Miller; (Thornton Grout) John Finnigan; (Thornton Grout) Michael Barrack; (Thronton Grout) Andrea McEwan; (Thronton Grout) Rebecca Lewis; (Torys) Adam Slavens; (Torys) Andrew Gray; (Torys) Scott Bomhof; (Torys) Sheila Block; (Torys) Tony DeMarinis; (Willkie Farr) Andrew Hanrahan; (Willkie Farr) Brian O'Connor; (Willkie Farr) Sameer Advani; (Young Conaway) Ed Harron; (Young Conaway) John Dorsey

**Cc:** Anderson, Michel
**Subject:** Nortel: Representative Witness Depositions

The Monitor and the Canadian Debtors do not agree with the position that the representative party examinations should be dispensed with in their entirety.  We understand that there is an objection to the extent of information that a given representative might have to absorb and come prepared to address based on the subjects that we designated. While we remain of the view that the designated subject areas are entirely appropriate for purposes of discovery/representative party examinations under both Ontario and US procedure, in order to address that objection so that we obtain meaningful answers in the available time, the Monitor and Canadian Debtors would be prepared to agree to cap the number of subject areas that would be dealt with through the representative party examinations in January in advance of the trial briefing process (we are thinking along the lines of capping for this purpose our designated subject areas to a maximum of 5 for allocation and 5 for claims), some or all of which we would be prepared to consider dealing with in writing (with the specific questions to be formalized by an agreed upon date) on the condition that we have agreement that the responses will be provided by January 17, 2014.  The Monitor and Canadian Debtors would similarly be prepared to answer questions in writing within your designated subject areas (subject to the noted objections which we remain willing to meet and confer with you about).  This proposal assumes that the identification of facts and documents for the balance of our designated subject areas will be addressed through a trial briefing procedure that would entail exhibits, affidavits, reply affidavits and deposition designations being exchanged in sequence and concluded in early May in advance of the May 12, 2014 trial commencement date.  If this is an agreeable way of proceeding please confirm and we will identify the questions that would remain designated from our lists for this purpose.  All rights continue to be reserved.

**Jennifer Stam**
Partner
T 416-862-5697
jennifer.stam@gowlings.com



**Gowling Lafleur Henderson LLP**
**Lawyers • Patent and Trade-mark Agents**
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, Ontario
M5X 1G5 Canada
T 416-862-7525  F 416-862-7661
**gowlings.com**



*December 21, 2013*

## EMEA Debtors Topics for the Canadian Debtors

The Canadian Debtors[1] shall respond to specific questions identified on the following topics provided that with respect to all such topics, the Canadian Debtors shall only be required to: (a) review document productions made as of December 20, 2013; (b) review deposition testimony made as of December 20, 2013; and (c) make reasonable inquiries of current and former employees of the Canadian Debtors.  Further, the Canadian Debtors shall not be required to respond to the extent that response would require disclosure of information covered by attorney-client privilege, work product immunity or any other applicable privileges and immunities.

1. The circumstances surrounding the partial repayment in or around February 2008 of the NNL-NNSA subordinated loan.

2. The circumstances surrounding the negotiation and drafting of the Insolvency Guarantee dated December 21, 2007 and provided by NNL to the Nortel Networks UK Pension Trust Limited, including the exclusion of administration from the definition of "Insolvency Event" within that document.

3. The conception, proposal, negotiation, and documentation of the Third Addendum to the MRDA and Schedule A thereto.

4. The negotiation, reporting, and purported application to the EMEA Entities of the settlement(s) between NNL and Canada Revenue Agency that resulted in a $2 billion adjustment in favor of NNI in or around January 2010.

5. Post-petition models for valuing or assessing the potential revenues from (a) the intellectual property assets sold in the Residual Patents Sale or any portion thereof, or (b) a Residual IP Co., which were prepared by, with, or at the request of Nortel, the Global IP Law Group, or Lazard. **[Note to the EMEA Debtors: we will need further clarification about what is intended about on this topic beyond what was produced as part of the Global IP or Lazard productions before the Canadian Debtors can determine whether they can respond to this topic.]**

---

[1] The "Canadian Debtors" are Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

*December 21, 2013*

**US Debtors' Topics for the Canadian Debtors**

The Canadian Debtors[1] shall respond to specific questions identified on the following topics provided that with respect to all such topics, the Canadian Debtors shall only be required to: (a) review document productions made as of December 20, 2013; (b) review deposition testimony made as of December 20, 2013; and (c) make reasonable inquiries of current and former employees of the Canadian Debtors. Further, the Canadian Debtors shall not be required to respond to the extent that response would require disclosure of information covered by attorney-client privilege, work product immunity or any other applicable privileges and immunities.

1.   Statements made by any Canadian Debtor or the Monitor, to government authorities (including tax authorities), debt-rating agencies, underwriters, or any entity evaluating the credit worthiness of NNL and pre-petition and post-petition potential asset purchasers regarding ownership (including with respect to economic, beneficial and/or legal ownership) of intellectual property or intellectual property license rights of any participant in the Master Research & Development Agreement.

2.   Third-party licensing by any Nortel entity of its patents (other than commercial licenses granted in the ordinary course of business), including with respect to which Nortel entity had the right to and did engage in such licensing activity and which Nortel entity recognized revenue on royalty payments other than any patent license agreements that were produced or disclosed to potential purchasers during the post-petition sale transactions for the lines of business and residual patents. **[Note to the US Debtors: The additional language is intended to avoid the re-production of all of the license agreements which were produced in the sales data rooms. However, we will still need to understand what is intended by this topic before the Canadian Debtors can determine whether they will be able to respond to this topic.]**

3.   The practice of prosecuting or defending patents in litigation, including decisions with respect to which Nortel entities should participate and/or bear financial risk with respect to the litigation.

4.   Internal valuations of Nortel intellectual property prepared after 2001 by estate, by business line in whole or in part and the methods used in such valuations, whether conducted by third parties or by Nortel personnel other than in connection with divestitures, acquisitions, joint ventures, or other transactions with a value of less than US$100 million.

---

[1] The "Canadian Debtors" are Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

**US Debtors' Topics for the Canadian Debtors**

The Canadian Debtors[1] shall respond to specific questions identified on the following topics provided that with respect to all such topics, the Canadian Debtors shall only be required to: (a) review document productions made as of December 20, 2013; (b) review deposition testimony made as of December 20, 2013; and (c) make reasonable inquiries of current and former employees of the Canadian Debtors.  Further, the Canadian Debtors shall not be required to respond to the extent that response would require disclosure of information covered by attorney-client privilege, work product immunity or any other applicable privileges and immunities.

1.      Statements made by ~~Nortel Networks Limited ("NNL") or any affiliated entity or any employee, advisor or representative thereof (including, but not limited to, the Monitor, E&Y U.S. and E&Y Canada, Horst Frisch and Oslers) to any third party regarding the Master Research and Development Agreement ("MRDA"), transfer pricing,~~ ownership (including with respect to economic, beneficial and/or legal ownership) of intellectual property or intellectual property license rights of any ~~MRDA participant, including but not limited to, government authorities,~~any Canadian Debtor or the Monitor, to government authorities (including tax authorities), debt-rating agencies, underwriters, or any entity evaluating the credit~~-~~ worthiness of NNL~~,~~ and pre-petition and post-petition potential asset purchasers regarding ownership (including with respect to economic, beneficial and/or legal ownership) of intellectual property or intellectual property license rights of any participant in the Master Research & Development Agreement.

2.      Third-party licensing by any Nortel entity of its ~~intellectual property~~patents (other than commercial licenses granted in the ordinary course of business), including with respect to which Nortel entity had the right to and did engage in such licensing activity and which Nortel entity recognized revenue on royalty payments~~.~~ other than any patent license agreements that were produced or disclosed to potential purchasers during the post-petition sale transactions for the lines of business and residual patents. **[Note to the US Debtors: The additional language is intended to avoid the re-production of all of the license agreements which were produced in the sales data rooms.  However, we will still need to understand what is intended by this topic before the Canadian Debtors can determine whether they will be able to respond to this topic.]**

3.      The practice of prosecuting or defending patents in litigation, including decisions with respect to which Nortel entities should participate and/or bear financial risk with respect to the litigation.

4.      Internal valuations of Nortel intellectual property prepared after 2001 by estate, by business line in whole or in part and the methods used in such valuations, whether conducted by third parties or by Nortel personnel~~.~~ other than in connection with

---

[1]   The "Canadian Debtors" are Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

divestitures, acquisitions, joint ventures, or other transactions with a value of less than US$100 million.

**Rajan, Claire:BK (DC)**

| | |
|---|---|
| **From:** | Miller, Atara <AMiller@milbank.com> |
| **Sent:** | Thursday, August 01, 2013 6:56 PM |
| **To:** | 'Ruby, Peter'; 'nortel.monitor@ca.ey.com'; 'derrick.tay@gowlings.com'; 'jennifer.stam@gowlings.com'; Coleman, Ken:BK (NY); Keller, Paul B.:LT (NY); Guyder, Daniel:BK (NY); Hall, Laura R:LT (NY); Badtke-Berkow, Joseph:BK (NY); Cho, Jonathan:BK (NY); Ward, Nicolette:LT (NY); 'Kathleen.murphy@bipc.com'; 'mary.caloway@bipc.com'; 'tdemarinis@torys.com'; 'sbomhof@torys.com'; 'sblock@torys.com'; 'agray@torys.com'; 'aslavens@torys.com'; 'jbromley@cgsh.com'; 'lschweitzer@cgsh.com'; 'hzelbo@cgsh.com'; 'jrosenthal@cgsh.com'; 'dstein@cgsh.com'; 'mdecker@cgsh.com'; 'lpeacock@cgsh.com'; 'jmoessner@cgsh.com'; 'nforrest@cgsh.com'; 'dqueen@cgsh.com'; 'dabbott@mnat.com'; 'acordo@mnat.com'; 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'jdoris@dwpv.com'; 'lsarabia@dwpv.com'; 'mgottlieb@counsel-toronto.com'; 'twynne@counsel-toronto.com'; 'pmichell@counsel-toronto.com'; 'adler@hugheshubbard.com'; 'oxford@hugheshubbard.com'; 'tabataba@hugheshubbard.com'; 'huberty@hugheshubbard.com'; 'eharron@ycst.com'; 'jdorsey@ycst.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'akaplan@kmlaw.ca'; 'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com'; 'lily.harmer@paliareroland.com'; 'karen.jones@paliareroland.com'; 'tina.lie@paliareroland.com'; 'michelle.jackson@paliareroland.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca'; 'Arthur Jacques'; 'thomas.mcrae@shibleyrighton.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca'; 'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'psteep@mccarthy.ca'; 'skour@mccarthy.ca'; 'bdshaw@mccarthy.ca'; 'kpeters@mccarthy.ca'; 'selinda.melnik@dlapiper.com'; 'richard.hans@dlapiper.com'; 'timothy.hoeffner@dlapiper.com'; 'farahlisa.sebti@dlapiper.com'; 'zychk@bennettjones.com'; 'orzyr@bennettjones.com'; 'finlaysong@bennettjones.com'; 'swanr@bennettjones.com'; 'zweigs@bennettjones.com'; 'bellj@bennettjones.com'; Kreller, Tom; Harris, Jennifer; Pisa, Albert A.; Vora, Samir; Leblanc, Andrew; Hirschfeld, Michael; Matz, Tom; Bassett, Nick; Ruha, Gabrielle; Pojunas, Rachel; 'Shayne.kukulowicz@dentons.com'; 'Michael.wunder@dentons.com'; 'ryan.jacobs@dentons.com'; 'Barbara.grossman@dentons.com'; 'fhodara@akingump.com'; 'dbotter@akingump.com'; 'aqureshi@akingump.com'; 'rajohnson@akingump.com'; 'bkahn@akingump.com'; 'cdoniak@akingump.com'; 'sgulati@akingump.com'; 'angela.pearson@ashurst.com'; 'Antonia.croke@ashurst.com'; 'samis@rlf.com'; 'bleonard@casselsbrock.com'; 'dward@casselsbrock.com'; 'bburden@casselsbrock.com'; 'chorkins@casselsbrock.com'; 'ljackson@casselsbrock.com'; 'mbarrack@tgf.ca'; 'djmiller@tgf.ca'; 'rlewis@tgf.ca'; 'amcewan@tgf.ca'; 'boconnor@willkie.com'; 'sadvani@willkie.com'; 'ahanrahan@willkie.com'; 'sheryl.seigel@mcmillan.ca'; 'michael.riela@lw.com'; 'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; 'svanallen@heenan.ca'; 'craig.barbarosh@kattenlaw.com'; 'david.crichlow@kattenlaw.com'; 'Karen.dine@kattenlaw.com'; 'elamek@blg.com'; 'jszumski@blg.com'; 'dalowenthal@pbwt.com'; 'lbarnes@osler.com'; 'esellers@osler.com'; 'eputnam@osler.com'; 'ahirsh@osler.com'; 'acobb@osler.com'; 'michael.lang@nortonrose.com'; 'amdg@hoganlovells.com'; 'john.tillman@hoganlovells.com'; 'Matthew.bullen@hoganlovells.com'; 'david.graves@hogan.lovells.com'; 'katherine.tallett-williams@hoganlovells.com'; |

| **To:** | 'james.norris-jones@hsf.com'; 'cdavis@bayardlaw.com'; 'jalberto@bayardlaw.com' |
| **Cc:** | 'Zarnett, Benjamin'; 'Myers, Fred'; 'Kimmel, Jessica'; 'Pasquariello, Joe'; 'Carfagnini, Jay'; 'Armstrong, Christopher' |
| **Subject:** | RE: Deposition List of the Monitor, Canadian Debtors, CCC, and Directors and Officers |
| **Categories:** | Copied to Virtual File |

Peter:

We object to the inclusion of members of the Ad Hoc Bondholder Group in your list of proposed deponents.  The five individuals you identified have no material knowledge relevant to this litigation.  Their depositions would waste the valuable time and resources of all parties.  Any information that the Ad Hoc Bondholder Group has that may be relevant to this litigation can be obtained through the deposition of a corporate representative, which you have noticed, and which notice we will respond and object to in due course.

We further object to the CCC's "addendum" insofar as it purports to request a witness from each member of the Ad Hoc Bondholder Group concerning the same topics that were the subject of the CCC's reserved document request.  As the CCC knows, we have objected to its document request on a variety of grounds as set out in our notice of objection.  We object to any depositions on these topics on the same grounds.

To be clear, as we have reiterated for months now:  the Ad Hoc Bondholder Group will not produce – whether via document productions, depositions, or otherwise – any information concerning the holdings of its members beyond what is required by Federal Rule of Bankruptcy Procedure 2019.  We will not make available any witness to testify on these topics.

_____
Atara Miller | **Milbank**
One Chase Manhattan Plaza, New York, NY 10005
P: 212-530-5421 | F: 212-822-5421
amiller@milbank.com | www.milbank.com

---

**From:** Ruby, Peter [mailto:pruby@goodmans.ca]
**Sent:** Tuesday, July 30, 2013 11:55 PM
**To:** 'nortel.monitor@ca.ey.com'; 'derrick.tay@gowlings.com'; 'jennifer.stam@gowlings.com'; 'ken.coleman@allenovery.com'; 'paul.keller@allenovery.com'; 'daniel.guyder@allenovery.com'; 'laura.hall@allenovery.com'; 'Joseph.Badtke-Berkow@AllenOvery.com'; 'jonathan.cho@allenovery.com'; 'Nicolette.ward@allenovery.com'; 'Kathleen.murphy@bipc.com'; 'mary.caloway@bipc.com'; 'tdemarinis@torys.com'; 'sbomhof@torys.com'; 'sblock@torys.com'; 'agray@torys.com'; 'aslavens@torys.com'; 'jbromley@cgsh.com'; 'lschweitzer@cgsh.com'; 'hzelbo@cgsh.com'; 'jrosenthal@cgsh.com'; 'dstein@cgsh.com'; 'mdecker@cgsh.com'; 'lpeacock@cgsh.com'; 'jmoessner@cgsh.com'; 'nforrest@cgsh.com'; 'dqueen@cgsh.com'; 'dabbott@mnat.com'; 'acordo@mnat.com'; 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'jdoris@dwpv.com'; 'lsarabia@dwpv.com'; 'mgottlieb@counsel-toronto.com'; 'twynne@counsel-toronto.com'; 'pmichell@counsel-toronto.com'; 'adler@hugheshubbard.com'; 'oxford@hugheshubbard.com'; 'tabataba@hugheshubbard.com'; 'huberty@hugheshubbard.com'; 'eharron@ycst.com'; 'jdorsey@ycst.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'akaplan@kmlaw.ca'; 'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com'; 'lily.harmer@paliareroland.com'; 'karen.jones@paliareroland.com'; 'tina.lie@paliareroland.com'; 'michelle.jackson@paliareroland.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca'; Arthur Jacques; 'thomas.mcrae@shibleyrighton.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca'; 'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'psteep@mccarthy.ca'; 'skour@mccarthy.ca'; 'bdshaw@mccarthy.ca'; 'kpeters@mccarthy.ca'; 'selinda.melnik@dlapiper.com'; 'richard.hans@dlapiper.com'; 'timothy.hoeffner@dlapiper.com'; 'farahlisa.sebti@dlapiper.com'; 'zychk@bennettjones.com'; 'orzyr@bennettjones.com'; 'finlaysong@bennettjones.com'; 'swanr@bennettjones.com'; 'zweigs@bennettjones.com'; 'bellj@bennettjones.com'; Kreller, Tom; Harris, Jennifer; Pisa, Albert A.; Vora, Samir; Leblanc, Andrew; Hirschfeld, Michael; Miller, Atara; Matz, Tom; Bassett, Nick; Ruha, Gabrielle; Pojunas, Rachel; 'Shayne.kukulowicz@dentons.com'; 'Michael.wunder@dentons.com'; 'ryan.jacobs@dentons.com'; 'Barbara.grossman@dentons.com'; 'fhodara@akingump.com'; 'dbotter@akingump.com'; 'aqureshi@akingump.com'; 'rajohnson@akingump.com'; 'bkahn@akingump.com'; 'cdoniak@akingump.com'; 'sgulati@akingump.com';

'angela.pearson@ashurst.com'; 'Antonia.croke@ashurst.com'; 'samis@rlf.com'; 'bleonard@casselsbrock.com';
'dward@casselsbrock.com'; 'bburden@casselsbrock.com'; 'chorkins@casselsbrock.com'; 'ljackson@casselsbrock.com';
'mbarrack@tgf.ca'; 'djmiller@tgf.ca'; 'rlewis@tgf.ca'; 'amcewan@tgf.ca'; 'boconnor@willkie.com'; 'sadvani@willkie.com';
'ahanrahan@willkie.com'; 'sheryl.seigel@mcmillan.ca'; 'michael.riela@lw.com'; 'jsalmas@heenan.ca'; 'kkraft@heenan.ca';
'svanallen@heenan.ca'; 'craig.barbarosh@kattenlaw.com'; 'david.crichlow@kattenlaw.com'; 'Karen.dine@kattenlaw.com';
'elamek@blg.com'; 'jszumski@blg.com'; 'dalowenthal@pbwt.com'; 'lbarnes@osler.com'; 'esellers@osler.com';
'eputnam@osler.com'; 'ahirsh@osler.com'; 'acobb@osler.com'; 'michael.lang@nortonrose.com';
'amdg@hoganlovells.com'; 'john.tillman@hoganlovells.com'; 'Matthew.bullen@hoganlovells.com';
'david.graves@hogan.lovells.com'; 'katherine.tallett-williams@hoganlovells.com'; 'james.norris-jones@hsf.com';
'cdavis@bayardlaw.com'; 'jalberto@bayardlaw.com'

**Cc:** Zarnett, Benjamin; Myers, Fred; Kimmel, Jessica; Pasquariello, Joe; Carfagnini, Jay; Ruby, Peter; Armstrong,
Christopher
**Subject:** Deposition List of the Monitor, Canadian Debtors, CCC, and Directors and Officers


**Deposition Witnesses To Be Deposed by the Canadian Parties**


Pursuant to the Litigation Timetable and Discovery Plan, the Monitor, Canadian Debtors, Directors and Officers
and CCC (collectively, the "Canadian Parties") together give notice that they will depose the following
witnesses in the Allocation proceeding and EMEA Canadian Claims proceeding as applicable.

| Name | Location |
|------|----------|
| Albert-Lebrun, Phillipe | France |
| Badiani, Kishhor | UK |
| Barton, Ian | (Likely UK) |
| Cianciolo, Chris | USA (Massachusetts) |
| Clement, Michel | France |
| Clive Gilchrist | UK |
| Collins, Malcolm | UK |
| Culina, Rosanne | Ontario |
| Drinkwater, David | Ontario |
| Edwards, Darryl | UK |
| Fraser, Maggie | UK |
| Freemantle, Simon | UK |
| Gardiner, Kenneth | UK |
| Gill, Dara | UK |
| Goldschmid, Paul | King Street Capital Management LP |
| Harper, Lorraine (Smeaton) | UK |
| Henderson, Wally | USA (Georgia) |
| Herenstein, Andrew | Monarch Alternative Capital LP |
| Jensen, Eric | USA |
| Kay, David | Tenor Capital Management |
| McColgan, Gillian | USA (Massachusetts) |
| Morgan, Iain | UK |
| Pugh, Gareth | UK |
| Riedel, George | USA (Massachusetts) |
| Rolston, Sharon | UK |
| Smith, Ryan | USA |

| Name | Location |
|------|----------|
| Stephens, Kerry | UK |
| Stevenson, Katherine | Ontario |
| Tananbaum, Steve | Goldentree Asset Management |
| Waida, Christian | UK |
| Widdowson, Ian | UK |
| Zinman, Jon | Solus Alternative Asset Management LP |

The Canadian Parties reserve their rights to change this list and do not waive any of their rights.

**Additional Individuals The Canadian Parties May Choose to Depose or Participate in Their Depositions**

The Canadian Parties also anticipate that they may choose to depose or participate in the depositions of the following individuals whose names appear on a Core Party's trial witness list. To the extent any trial witnesses and/or deponents are removed from the witness and/or deponent lists of a Core Party, the Canadian Parties each reserve the right to depose those individuals.

Additional Trial Witnesses Listed by the US Debtors

- William Donovan
- Michael Orlando
- John Ray
- Chris Ricaurte
- Elizabeth Smith
- Mark Weisz
- Jeff Wood

Additional Trial Witnesses Listed by the EMEA Debtors

- Simon Brueckheimer
- Geoffrey Hall
- Peter Newcombe

Additional Trial Witnesses Listed by the UKPC

- Simon Brueckheimer
- David Davies
- Terence Faulkner
- Geoffrey Hall
- John Hern
- Andrew Howard
- Andrew Jeffries
- Peter Newcombe
- Nigel Rees
- Timothy Watkins

**Addendum from the CCC**

Last week the CCC received significant additional production from the Ad Hoc Bondholders Group.  To the extent possible, we have identified Group members likely to have knowledge of the relevant issues.  In addition, the CCC requests the production of a witness from each of the individual members of the Ad Hoc Bondholders Group to testify concerning: (i) the purchase, sale, assignment or redemption of the Nortel Bonds, (ii) the analysis of their investment in the Nortel Bonds, and (iii) the terms of the Nortel Bonds, including the guarantees and the enforceability of the guarantees.  The CCC will work with counsel to identify the appropriate member witness and to avoid duplication of witnesses.


**Peter Ruby**
Goodmans LLP

416.597.4184
goodmans.ca

---

***** Attention *****

This communication is intended solely for the named addressee(s) and may contain information that is privileged, confidential, protected or otherwise exempt from disclosure. No waiver of confidence, privilege, protection or otherwise is made. If you are not the intended recipient of this communication, please advise us immediately and delete this email without reading, copying or forwarding it to anyone.


============================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.