# MILBANK, TWEED, HADLEY & McCLOY LLP

INTERNATIONAL SQUARE BUILDING

1850 K STREET, NW, SUITE 1100

WASHINGTON, D.C. 20006

202-835-7500

FAX: 202-835-7586

| | |
|---|---|
| NEW YORK<br>212-530-5000<br>FAX: 212-530-5219 | BEIJING<br>8610-5969-2700<br>FAX: 8610-5969-2707 |
| LOS ANGELES<br>213-892-4000<br>FAX: 213-629-5063 | HONG KONG<br>852-2971-4888<br>FAX: 852-2840-0792 |
| LONDON<br>44-20-7615-3000<br>FAX: 44-20-7615-3100 | SINGAPORE<br>65-6428-2400<br>FAX: 65-6428-2500 |
| FRANKFURT<br>49-69-71914-3400<br>FAX: 49-69-71914-3500 | TOKYO<br>813-5410-2801<br>FAX: 813-5410-2891 |
| MUNICH<br>49-89-25559-3600<br>FAX: 49-89-25559-3700 | SÃO PAULO<br>55-11-3927-7700<br>FAX: 55-11-3927-7777 |

ANDREW M. LEBLANC
PARTNER
DIRECT DIAL NUMBER
202-835-7574
FAX: 202-263-7574
E-MAIL: aleblanc@milbank.com

December 23, 2013

**VIA ELECTRONIC FILING AND HAND-DELIVERY**

The Honorable Kevin Gross
Chief Judge, United States Bankruptcy Court For The District of
Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

  Re: In re Nortel Networks, Inc., et al., Case No. 09-10138 (KG)

Dear Chief Judge Gross:

  On behalf of the Ad Hoc Group of Bondholders (the "Bondholder Group"), we write to respond to the letter to the Court dated December 22, 2013 from Selinda Melnick, as counsel to the Canadian Creditors' Committee (the "CCC"). Although we are loath to involve the Courts in disputes over discovery issues, it is essential that we correct the record and leave no doubt about the matter.

  To begin with, the CCC is entirely incorrect when it suggests that the Bondholder Group has "failed" to produce a witness in this litigation. The Bondholder Group has taken a consistent position regarding the relevance of information sought by the CCC with respect to the allocation dispute. From the outset of the dispute, the CCC has sought information on the prices and timing of purchases of Nortel bonds by individual members of the Bondholder Group. The Bondholder Group has consistently told the CCC that it views that information to be entirely irrelevant to how the Courts should allocate the proceeds of the sales of Nortel's businesses among the various estates. The CCC has nevertheless sought this information in document production, in interrogatories, through notices of deposition of individual members of the Bondholder Group, and finally through the representative deposition process. The Bondholder Group has consistently told the CCC that if it wanted this information, it would need to go to the Courts.

The Honorable Kevin Gross
December 23, 2013
Page Two

The CCC never did so, however, and indeed *said nothing* regarding the depositions it sought for nearly five months, until filing its letter with the Court on December 22.

Also inaccurate is any suggestion that the Bondholder Group ever committed to present a corporate representative for deposition. When responding to the CCC's initial request for depositions more than five months ago, the Bondholder Group suggested that testimony of the Bondholder Group, *if any*, should be taken through a deposition of a corporate representative. This exchange, however, took place before the parties had finished document discovery or even started fact depositions. Now that well over 100 depositions have occurred and approximately two million documents have been produced, the Bondholder Group agrees completely with the position of the US and EMEA interests that representative depositions at this stage would be unnecessary, duplicative, and entirely wasteful. A deposition of a Bondholder Group representative would also be wasteful because the information that the CCC has said it wants from the Bondholder Group is wholly irrelevant.

Finally, the CCC's suggestion that the Bondholder Group refused to meet and confer regarding representative depositions is incorrect. On December 13, 2013, the Bondholder Group received a request (the "Deposition Request") for a representative deposition from the Canadian Discovery Group on thirty-three unreasonably broad and wholly irrelevant topics.[1] As required by the Amended Scheduling Order, the Bondholder Group responded to the Deposition Request on December 18, 2013 by serving a letter generally objecting to representative depositions *and also* providing a detailed set of objections in which the Bondholder Group also offered to meet and confer regarding the Deposition Request.[2] The Bondholder Group followed up with an email on the morning of December 19, 2013, again offering to meet and confer.[3]

Neither the CCC nor the Monitor responded until nearly 10:30 p.m. on December 19, when counsel for the CCC sent an email to my partner, Atara Miller, and no other attorneys for the Bondholder Group, despite the fact that there are eleven Milbank lawyers and six Bennett Jones lawyers on the general service list for discovery issues and that the undersigned signed the objections to their deposition topics. In the email to Ms. Miller, the CCC suggested a meet and confer the following morning. Ms. Miller responded *two minutes later* suggesting the call proceed at 2:30 p.m. on December 20, as she was scheduled to be in court the next day and would not have access to her mobile device. Counsel for the CCC did not respond to Ms.

---

[1] The topics directed to the Bondholder Group include *all twenty-seven topics* directed to the US Debtors, which seek deposition testimony relating to the debtors' business affairs, the vast majority of which no member of the Bondholder Group could have any admissible first hand evidence of, *plus* three additional, unique topics. Moreover, one of the twenty-seven topics directed to the US Debtors contains three subparts that are, in actuality, standalone topics. Thus, a grand total of thirty-three topics are directed toward the Bondholder Group.

[2] See Letter from A. Leblanc to Core Parties, dated December 18, 2013, Enclosing Objections of the Bondholder Group, attached hereto as Exhibit A.

[3] See Email from A. Miller to Core Parties, dated December 19, 2013, attached hereto as Exhibit B.

The Honorable Kevin Gross
December 23, 2013
Page Three

Miller's email until 10:00 a.m. the next morning, when it purported to accept her proposed time and sent a dial in.  By that time, Ms. Miller was already in court without her mobile device.  Because the acceptance of the proposed time came so late after it was suggested, Ms. Miller was no longer available and did not join the call at 2:30 p.m. and did not answer when the CCC called her office.  Other than an email sent to Ms. Miller asking if she was joining the 2:30 p.m. call, the CCC made no effort to contact any of the Bondholder Group counsel regarding the meet-and-confer process before filing its letter on the evening of Sunday, December 22.  The CCC's suggestion to the Court that the Bondholder Group "failed" to join a meet-and-confer is made without regard to what actually transpired.

     The Bondholder Group reserves all rights to further respond to the Deposition Request prior to the joint hearing requested by the US Debtors.  In the meantime, the Bondholder Group remains willing to meet and confer with the CCC and the Monitor (at a reasonable time with reasonable notice to the relevant counsel) in good faith to attempt to resolve its objections to the Deposition Request.  The Bondholder Group agrees with the positions taken by the EMEA and US Estates, however, that representative depositions are superfluous and wasteful in light of the extensive depositions and other discovery already had in this matter to date.

                                        Very truly yours,

                                        Andrew M. Leblanc /pp

Enclosures