## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| | (Jointly Administered) |
| Debtors. | **Re: Dkt. Nos. 12618, 12686** |

### SUPPLEMENTAL RESPONSE AND LIMITED OBJECTION OF THE MONITOR AND THE CANADIAN DEBTORS TO THE US DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE US CLAIMS LITIGATION SETTLEMENT AGREEMENT

Ernst & Young Inc., the court-appointed monitor (the "**Monitor**") in proceedings (the "**Canadian Proceedings**") under *Canada's Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List) (the "**Ontario Court**," and together with this Court, the "**Courts**"), and Nortel Networks Corporation and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (the "**Canadian Debtors**," and with the Monitor, the "**Canadian Parties**"), hereby file this Supplemental Response and Limited Objection to the *Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363, 503(b) and 507(a)(2) and Bankruptcy Rules 6004(h) and 9019 Approving the US Claims Litigation Settlement Agreement by and Among the Debtors, the Creditors' Committee, the Joint Administrators, the EMEA Debtors,*

---

[1]     The debtors in the chapter 11 cases, along with the last four digits of each such debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

*Nortel Networks Optical Components Limited, Nortel Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates* (the "**Motion**").[2]

In support thereof, the Canadian Parties respectfully submit as follows:

## SUPPLEMENTAL RESPONSE AND LIMITED OBJECTION

### A.    Overview

1.    The Canadian Parties file this Supplemental Response and Limited Objection further to their filing of the *Response and Limited Objection of the Monitor and the Canadian Debtors to the US Debtors' Motion for Entry of an Order Approving the US Claims Litigation Settlement Agreement* on December 19, 2013 (the "**Initial Response**") [Dkt. No. 12686], which accompanied their request for a joint hearing by the Courts to ensure due consideration of their concerns [Dkt. No. 12687].

2.    The Canadian Parties do not object to the proposed Settlement Agreement in principle. Nor do the Canadian Parties question the sole jurisdiction of this Court to approve the US Debtors entry into the Settlement Agreement.

3.    However, the Settlement Agreement, and in particular the Settlement Parties' agreement to work to develop a common allocation position, has a significant impact on the allocation and claims litigation pending under the Allocation Protocol approved by both this Court and the Ontario Court (the "**Allocation Protocol Litigation**").[3] In order to avoid prejudice to the Canadian Parties and the potential for further time-consuming motion practice, the Canadian Parties are requesting that as a condition to approval of the Settlement Agreement, the Courts order that an "outside date" of January 24, 2014, be established for each Settlement Party to advise whether it is adopting a common allocation position with any other Settlement Party.

---

[2]       Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[3]       *See Order Entering Allocation Protocol* dated May 17, 2013 [Dkt. No. 10565].

This will provide the Canadian Parties with certainty regarding the number of competing allocation theories they will need to respond to and avoid further unnecessary expense being incurred addressing allocation theories that will ultimately not be pursued at trial.[4] In addition, the Canadian Parties request that the Courts order that the Settlement Agreement not enhance a Settlement Party's rights in respect of, or otherwise impact, any subsequent motion brought by such Settlement Party seeking leave to amend its allocation pleading. Such conditions are appropriately considered and ordered by both Courts in the context of a joint hearing insofar as they relate to the Allocation Protocol Litigation.

4.      Further, the Settlement Agreement proposes to resolve "Material Overlapping Claims"[5] against the US Debtors that, in addition to being subject to the Allocation Protocol, are the subject of the Cross-Border Protocol on the Resolution of Claims (the "**Cross-Border Claims Protocol**") approved by both this Court and the Ontario Court, which, by its terms, provides for resolution of any disputes concerning such Material Overlapping Claims to be resolved by joint hearing.[6] As detailed below, the Canadian Parties object to a provision of the US Debtors' proposed order approving the Settlement Agreement (the "**Proposed Order**") that would purport to bind non-parties to the agreement among the Settlement Parties that the Settlement Agreement does not affect claims by or against non-parties. In addition to it being

---

[4]      The Canadian Parties' Initial Response requested that an outside date of January 8, 2014, be imposed. The Canadian Parties are prepared to extend that date to January 24, 2014, being the date expert reports are due. The formal Allocation Cooperation Period commenced on December 17, 2013, giving the Settlement Parties approximately 7 weeks in total to attempt to reach a common allocation position.

[5]      That is, claims that have been filed in both these chapter 11 cases and the Canadian Proceedings by the same party, and that arise from the same claim, action, liability, property, agreement lease, debt or transaction.

[6]      See this Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 502 Approving a Cross-Border Court-to-Court Claims Protocol* dated September 16, 2010 [Dkt. No. 3956] (the "**Cross-Border Claims Protocol Order**"), which order, *inter alia*, approved the Cross-Border Claims Protocol, which protocol was attached as Exhibit B to the US Debtors' motion for approval of a cross-border claims protocol dated September 11, 2010 [Dkt No. 3922]. Copies of the Cross-Border Claims Protocol Order and the Cross-Border Claims Protocol as approved by the Court (and the Ontario Court) are attached hereto as Exhibit A and B, respectively.

generally inappropriate to bind non-parties to the Settlement Parties' agreement, this provision is unnecessary to the extent it purports to affirm what is contained in the prior Order of this Court which provides that the resolution of claims in these chapter 11 cases is without prejudice to the rights and defenses of the Canadian Debtors and the Monitor in the Canadian Proceedings. In accordance with the Cross-Border Claims Protocol, these disputes are also appropriately considered and resolved at a joint hearing.[7]

5.      Finally, the Canadian Parties also object to a provision of the Settlement Agreement which suggests that certain of its provisions supersede the IFSA and the CFSA (as defined below), which were agreements among a broader group of parties than those who are party to the Settlement Agreement. As the IFSA and CFSA were approved by both this Court and the Ontario Court and the approval of both Courts is required for any material amendments to such agreements, a joint hearing is also required to resolve this dispute.

**B.      A Joint Hearing is Appropriate to Consider the Motion and the Limited Objection of the Canadian Parties**

6.      Pursuant to the Cross-Border Insolvency Protocol approved by this Court[8] and the Ontario Court (the "**Cross-Border Protocol**"), a copy of which is attached hereto as Exhibit C, this Court and the Ontario Court may conduct joint hearings with respect to any cross-border matter. *See* Cross-Border Protocol, Section 12(d). The Settlement Agreement is clearly a cross-border matter as it has a significant impact on the Allocation Protocol Litigation currently pending before both Courts in light of the Settlement Parties' agreement to work to develop a common allocation position, and also because it resolves claims asserted against the US Debtors

---

[7]      In addition, the claims filed by the UK Pension Parties against the US Debtors (and the parallel claims by the UK Pension Parties against the Canadian Debtors) (collectively, the "**UK Pension Claims**") are also the subject of the Allocation Protocol Litigation, so it is appropriate for disputes regarding their resolution to also be resolved via joint hearing.

[8]      The Cross-Border Insolvency Protocol was approved by the Order of this Court dated June 29, 2009 [Dkt. No. 990].

that are the subject of the Allocation Protocol Litigation, while purporting to preserve the parallel claims against the Canadian Debtors that are also the subject of the Allocation Protocol Litigation. Moreover the Settlement Agreement resolves Material Overlapping Claims as defined under the Cross-Border Claims Protocol. Disputes regarding the resolution of such claims are clearly a cross-border matter and, in any event, such disputes are expressly subject to resolution at a joint hearing pursuant to the terms of the Cross-Border Claims Protocol.

7.    In addition to the jurisdiction of both Courts to hear the Motion pursuant to Section 12 of the Cross-Border Protocol, upon any motion being filed or relief sought in either Court seeking certain specified "Requested Relief," a Core Party (as defined in the Cross-Border Protocol, which as defined includes the Monitor and Canadian Debtors) may request that the party filing the motion seek a joint hearing for the requested relief. *See* Cross-Border Protocol Section 15. The various specified forms of Requested Relief include, *inter alia*, any motion *relating* to any motion to allocate sale proceeds which are in the aggregate more than US $30 million and where at least one US Debtor and one Canadian Debtor are parties to the related sale agreement or that involves assets owned by at least one US Debtor and one Canadian Debtor. Given the impacts of the Settlement Agreement on the Allocation Protocol Litigation as described herein, the Motion is for Requested Relief as it *relates* to a motion to allocate sale proceeds (i.e. the joint motions of the US Debtors and the Canadian Parties to establish the Allocation Protocol that gave rise to the Allocation Protocol Litigation).

8.    The Motion is also appropriately heard at a joint hearing insofar as it relates to "Material Overlapping Claims," the resolution of which are (in part) contested by the Canadian Parties. The Courts approved the Cross-Border Claims Protocol to supplement their respective claims resolution procedures and to "[. . .] establish an efficient and consistent procedure to address the filing and resolution of claims in the Insolvency Proceedings." Cross-Border Claims

Protocol, Section 7. Further, the Cross-Border Claims Protocol Order specifically provides that, "[t]he Debtors' resolution of Same-Creditor Claims and Overlapping Claims (each as defined in the [Cross-Border Claims Protocol] is subject to the [Cross-Border Claims Protocol] in accordance with the terms thereof." Cross-Border Claims Protocol Order, Section 3.

9.    The claims filed by the EMEA Debtors and their administrators and liquidators against the US Debtors and Canadian Debtors (the "**EMEA Claims**")[9] that are proposed to be settled as against the US Debtors pursuant to the Settlement Agreement are "Overlapping Claims" as defined in the Cross-Border Claims Protocol in that: (i) they have been filed in both these chapter 11 cases and the Canadian Proceedings; (ii) they were filed by the same parties (i.e., the EMEA Debtors and their administrators and liquidators); and (iii) they arise from the same underlying claim, action, liability, property, agreement, lease, debt or transaction.[10] *See* Cross-Border Claims Protocol, Section 11. Further, they are further *Material* Overlapping Claims in that they assert an amount over $1 million in either jurisdiction (or are wholly or partially unliquidated) and the US Debtors have proposed to settle them for an amount equal to or greater than $1 million. *See* Cross-Border Claims Protocol, Section 17(c).

10.    By virtue of being Overlapping Claims, the EMEA Claims are subject to various provisions of the Cross-Border Claims Protocol, including provisions regarding cooperation and consultation regarding such claims between the US Debtors, on the one hand, and the Canadian

---

[9]    For ease of reference, the term "EMEA Claims" as used herein shall be taken to include claims asserted by certain non-debtor subsidiaries of the EMEA Debtors that are also the subject of the Allocation Protocol Litigation and "EMEA Debtors" shall be taken to include such non-debtor subsidiaries.

[10]    The EMEA Claims against both the US Debtors and Canadian Debtors are based on the same "underlying claim, action, liability, property, agreement, lease, debt or transaction" insofar as they are for the most based based on the alleged impropriety of certain intercompany arrangements and transactions, such as (and without limitation) Nortel's transfer pricing regime (as agreed to under the Master Research & Development Agreement) and "Project Swift." Although by their facts the claims filed by the UK Pension Parties against the US Debtors and Canadian Debtors would also be Overlapping Claims, they are expressly excluded from the definition of Overlapping Claims by virtue of Section 13(a) of the Cross-Border Claims Protocol.

Debtors and the Monitor, on the other, and provisions regarding limits on aggregate distributions.

*See* Cross-Border Claims Protocol, Sections 15-17, and 23. In addition, by virtue of being

Material Overlapping Claims, the Cross-Border Claims Protocol provides:

> [. . .] if the Monitor, the Canadian Debtors and the U.S. Debtors in accordance with the terms hereof cannot agree on the appropriate resolution of Material Overlapping Claims in each jurisdiction, then the Monitor, the Canadian Debtors and the U.S. Debtors shall seek *joint direction from the Judges of both the Canadian Court and the U.S. Court* regarding the resolution of the claims, absent other agreement by the Canadian Debtors, the Monitor and the U.S. Debtors. [emphasis added]

Cross-Border Claims Protocol, Section 17.

As such, it is appropriate that the Motion and the objections of the Canadian Parties in response

thereto be considered by both Courts. Indeed, the US Debtors are obligated under the Cross-

Border Claims Protocol to seek a joint hearing in the circumstances.

11.    In accordance with the Cross-Border Protocol, on December 19, 2013, the

Canadian Parties filed a Notice of Request for Joint Hearing [Dkt. No. 12687] (the "**Joint**

**Hearing Request**") in respect of the Motion. The Cross-Border Protocol provides that if a joint

hearing request is agreed to, "[. . .] the Requested Relief shall be heard at a Joint Hearing

conducted by the Courts in accordance with the procedures set forth in paragraph 12 of the

[Cross-Border Protocol] [. . .]." Cross-Border Protocol, Section 15(c). If the filing party does not

agree to seek a joint hearing, the party seeking to have the Requested Relief heard at a joint

hearing may file a notice of joint hearing dispute in both Courts whereupon the Courts may

consult with one another to determine whether a joint hearing is necessary or may otherwise

consult with the Core Parties prior to any party proceeding with the underlying Requested Relief

in the original proposed forum country. *See* Cross-Border Protocol, Section 15(d).[11]

---

[11]    In addition, where the issue of the proper jurisdiction of either Court to determine an issue is raised by an interested party with respect to a motion filed in either Court, the Court before which such motion was initially filed

12.     The US Debtors have agreed to a joint hearing while purporting to reserve the right to contest the jurisdiction of the Ontario Court at such hearing. In addition to the substantive reasons outlined herein that demonstrate why a joint hearing is appropriate, the Canadian Parties contend that the US Debtors are estopped from contesting a joint hearing in respect of the Motion in light of their agreement to schedule a joint hearing.[12]

**C.      An Outside Date Needs to be Imposed by the Courts for the Settlement Parties to Advise of Whether they are Adopting Another Allocation Position**

13.     As outlined in the Initial Response, Section 6.1 of the Settlement Agreement has a significant impact on the Allocation Protocol Litigation as it provides for the Settlement Parties to work in good faith to reach a common allocation position. No outside date or other condition is imposed on such obligation; rather, a Settlement Parties' obligation to work towards developing a common allocation position ends only upon its provision of notice to the other Settlement Parties. *See* Settlement Agreement, Section 6.2.

14.     In light of the Settlement Parties agreement to enter into this open-ended Allocation Cooperation Period that began on December 17, 2013, the Canadian Parties' request that the Courts impose an outside date on the Settlement Parties' ability to adopt a common allocation position in order to prevent undue prejudice to the Canadian Parties and the other Core Parties. The imposition of this reasonable condition will ensure that the Canadian Parties and other Core Parties will not have to waste (further) limited resources addressing allocation

---

may contact the other Court to determine an appropriate process by which the issue of jurisdiction will be determined, which process shall be subject to submissions by the Core Parties (which includes, among others, the US Debtors, the Canadian Debtors and the Monitor) and any interested party prior to a determination on the issue of jurisdiction being made by either Court. See Cross-Border Protocol, Sections 12(b) and 12(d).

[12]     Solely to the extent determined necessary by the Courts, this Supplemental Limited Response and Objection shall constitute the Canadian Parties' Notice of Joint Hearing Dispute in accordance with Section 15(d) of the Cross-Border Protocol, notice of same is hereby given to each of the other Core Parties, and the Canadian Parties hereby reaffirm their Joint Hearing Request as supplemented hereby and request that the Courts Order that the Motion is properly the subject of a joint hearing pursuant to the Cross-Border Protocol and the Cross-Border Claims Protocol.

positions that will ultimately not be pursued at trial. In addition, the Canadian Parties request that the Courts' order that the Settlement Agreement shall not in any way enhance a Settlement Party's rights in respect of, or otherwise impact, any motion brought by such Settlement Party seeking leave to amend its allocation pleading.[13]

15.     The Core Parties' initial allocation pleadings were filed in May 2013. Since that time, enormous resources have been spent by the Canadian Parties in a document discovery and deposition process that was guided by the content of those pleadings, including the three unique allocation positions set forth by each of the US Debtors (joined by the Official Committee of Unsecured Creditors, the Ad Hoc Group of Bondholders, Law Debenture Trust Company of New York and The Bank of New York Mellon), the EMEA Debtors and the UK Pension Parties. Further significant resources have and will continue to be spent by the Canadian Parties based on the existing allocation pleadings as the Core Parties move into the representative witness and expert phase of the discovery process that will take place over the course of the first three months of 2014 and into early April. If each of the Settlement Parties is not required to "show their cards" and adopt an allocation position in principle in the near future, there is the prospect of significant wasted expense and gamesmanship.

---

[13]      The Litigation Timetable and Discovery Plan does not contemplate amendments to a Core Party's pleadings. Rule 15 of the Federal Rules of Civil Procedure (the "**FRCP**"), made applicable in these proceedings pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure, provides that once a responsive pleading is served, a party requires the opposing party's consent or leave of the court to amend its pleading or complaint. FRCP 15(a)(2). Although leave to amend should be freely granted when justice so requires, upon a showing of undue prejudice to opposing parties, a court should not grant leave. See *Forman v. Davis*, 371 U.S. 178, 182 (1962). Under Ontario law, a Court shall grant leave to a party to amend its pleadings on such terms as are just, unless prejudice would result that could not be compensated for by costs or an adjournment (*Rules of Civil Procedure* (Ontario), Rule 26.01). The Initial Response originally requested that the Courts order that any common allocation position developed by the Settlement Parties be limited to an existing allocation position. Although the Canadian Parties maintain they would suffer significant and irremediable prejudice if a "new" allocation position were adopted at this stage of the litigation, they are prepared to reserve their rights on this issue if and until such a motion is brought to the Courts. However, the fact that the current trial date is peremptory renders the remediation of any such change in position through an adjournment problematic.

16.     At present, the Canadian Parties have three competing allocation cases to disprove and must use their limited time and resources accordingly. The possibility that one (or more) of the three competing allocation positions of the Settlement Parties might be "dropped" at some unspecified future date as a result of the Settlement Parties' agreement is prejudicial to the Canadian Parties given the expense they have incurred and will continue to incur developing responses to such positions. This prejudice increases with each passing day and becomes particularly acute as the Core Parties move into the expert phase of the Allocation Protocol Litigation. In particular, it is anticipated that on January 24 expert reports will be delivered in support of each of the Settlement Parties' current allocation positions, which in turn will require the delivery of rebuttal reports by the Canadian Parties' experts by February 28.[14] The Canadian Parties submit it would be unreasonable for them to incur expense responding to expert reports in support of allocation positions that will not ultimately be pursued at trial. As such, the Canadian Parties request that January 24, 2014 (being the day expert reports are delivered), be established as the outside date for the Settlement Parties to advise if they are adopting a common allocation position with any other Settlement Party.

17.     In addition to significant (and growing) wasted effort and expense if an existing allocation theory of a Settlement Party is ultimately dropped, there is the possibility of gamesmanship in the current scenario insofar as keeping all existing allocation positions of the Settlement Parties on the table necessarily divides the attention and efforts of the Canadian Parties. Although the Canadian Parties have no doubt the Settlement Parties will proceed to consider adopting a common allocation position in good faith based on their respective best interests, the mischief, controversy and litigation that would result from late in the day changes

---

[14]     Under the Litigation Timetable and Discovery Plan (as amended), expert reports are due January 24, 2013, and rebuttal expert reports are due February 28, 2014.

to allocation positions can be headed off now by the Courts establishing a clear outside date for the Settlement Parties to reach agreement on whatever common allocation position some or all of them may elect to adopt.[15]

18.    The Canadian Parties are cognizant that the Settlement Parties have not yet sought leave to amend their allocation pleadings. However, the Settlement Agreement as a whole, and in particular the Allocation Cooperation Period, creates the clear possibility of wholesale changes to the Settlement Parties' existing allocation positions and amendments to their allocation pleadings. Left open-ended, there is the potential for significant prejudice to the Canadian Parties and other Core Parties, additional wasted cost and effort, and further costly, time-consuming motion practice to resolve the dispute that will undoubtedly arise if a Settlement Party seeks to amend its allocation pleading and adopt another position at some unascertained future date. By imposing an outside date on the Settlement Parties to reach agreement on a common allocation position, the Courts can reduce the prejudice resulting to the Canadian Parties from wholesale changes to the Settlement Parties' allocation positions, limit the wasted expense that has and will be incurred by the Canadian Parties responding to allocation positions that will not be pursued, and avoid the mischief and litigation that would result from the Settlement Parties' adopting a common allocation position at some unascertained future date.[16]

19.    To be clear, the Canadian Parties are not looking to preclude a Settlement Party's ability to make *any* amendment to its allocation position after January 24, 2013. Rather, they seek to preclude only the wholesale change and abandonment of a Settlement Party's existing

---

[15]    In addition to significant wasted expense and gamesmanship, as noted in the Initial Response, not knowing whether the Settlement Parties will adopt a common allocation position or present independent positions significantly complicates the Core Parties' negotiations regarding a trial protocol and may make it impossible to reach agreement on such a protocol.

[16]    This timing will also still allow for representative party discovery to proceed and be completed before the reply expert reports are due on February 28, 2014 (which is the subject of another motion being heard at the January 7 joint hearing).

allocation position in favour of a common allocation position, which change would significantly alter the landscape of the Allocation Protocol Litigation and prejudice the Canadian Parties for the reasons described above. To the extent a Settlement Party seeks to amend its allocation pleading after January 24, 2013, to refine its position, such amendment would be subject to the usual test governing amendments.

20.     In light of the foregoing it is appropriate and necessary that the Courts impose an outside date on the Settlement Parties at this juncture. The imposition of this reasonable condition on the Settlement Parties' agreement will ensure that the Canadian Parties do not suffer undue prejudice or incur further unnecessary expenses as a result of all or some of the Settlement Parties electing to adopt a common allocation position.

### D.    Consultation Obligations of the US Debtors with the Canadian Debtors and the Monitor

21.     With respect to the US Debtors' obligation to consult with the Monitor and the Canadian Debtors regarding the Settlement Agreement (as the US Debtors were obligated to do as the Settlement Agreement resolves Material Overlapping Claims), counsel to the Monitor and Canadian Debtors were first provided notice of the Settlement Agreement approximately ten minutes prior to the filing of the Motion. At paragraph 42 of the Motion, the US Debtors state that:

> No further notice is required under [the Cross-Border Claims Protocol], as approved by this Court on September 16, 2010 [D.I. 3922 and 3956] as the Debtors consulted with the Monitor and the Canadian Debtors in advance of filing the Motions to Dismiss and the entry of the Allocation Protocol, including in the course of three mediations, and this Court and the [Ontario Court] provided joint direction of the procedure for resolving the EMEA Claims, the French Liquidator Claim and the UK Pension Claims pursuant to the Allocation Protocol.

The Canadian Debtors and Monitor are prepared to adopt and rely upon the US Debtors' interpretation of the consultation provisions of the Cross-Border Claims Protocol provided that it

also applies to their own consultation obligations under both the Cross-Border Claims Protocol

and the Claims Resolution Order of the Ontario Court dated September 16, 2010.

**E.      Attempt to Bind Non-Parties to Agreement that Settlement does not Affect Claims By or Against Non-Parties is Inappropriate and is Inconsistent with the Prior Order of the Court**

22.      Notwithstanding that the EMEA Claims constitute Material Overlapping Claims,

both the Motion and the Settlement Agreement contain numerous references which provide that

the EMEA Claims as against the US Debtors are "wholly separate and distinct" from the same

claims against the Canadian Debtors. Similar language is used to describe the UK Pension

Claims as against the US Debtors relative to the same claims against the Canadian Debtors.[17]

The Canadian Parties do not agree with these characterizations.

23.      The releases and other provisions of the Settlement Agreement also make clear

the Settlement Parties' agreement that nothing in the Settlement Agreement shall: (i) constitute a

release, waiver or discharge of the EMEA Claims or UK Pension Claims as against the Canadian

Debtors; (ii) prevent or in way inhibit arguments of the EMEA Debtors or UK Pension Parties in

respect of such claims; or (iii) operate as or constitute an admission with respect to the merits of

any allegations or arguments underlying such claims. *See* Settlement Agreement, Section 4.1.

The Settlement Parties then attempt to bootstrap and expand the application of this contractual

agreement to non-parties through the Proposed Order approving the Settlement Agreement by

providing that:

> No claims by or against persons other than the Parties to the Settlement Agreement and the persons contemplated in the releases contained therein shall be affected by the Settlement Agreement.

Proposed Order, Section 4.

---

[17]      See, for instance, the Settlement Agreement at page 3, which describes the EMEA Claims and UK Pension Claims as against the US Debtors as "wholly separate and distinct" from those claims as against the Canadian Debtors.

24.     Although the Canadian Debtors and Monitor do not take issue with the Settlement Parties' contractual agreement among themselves that the releases and related provisions do not affect claims by or against non-parties, they do take issue with the attempt to bind non-parties (the Canadian Debtors presumably being the most relevant non-parties in this regard as the other persons against whom the EMEA Claims and UK Pension Claims are asserted) to this agreement and submit that such relief is not appropriate and should not be granted. In addition to such relief being inappropriate generally,[18] it is expressly contrary to the Cross-Border Claims Protocol Order previously entered by this Court, which provides that:

> The resolution of any Overlapping Claims and Same-Creditor Claims in these chapter 11 cases *shall be without prejudice to the rights and defenses of the Canadian Debtors and the Monitor with respect to such Overlapping Claims and Same-Creditor Claims* in the Canadian Proceedings. [emphasis added]

Cross-Border Claims Protocol Order, Section 9.

Insofar as the noted provision of the Proposed Order would seek to limit the rights and defenses of the Canadian Debtors (by precluding an argument that the releases granted in the Settlement Agreement affect claims against the Canadian Debtors), it is contrary to this Court's prior order that the resolution of claims in these cases be without prejudice to the rights and defenses of the Canadian Debtors.[19]

25.     The question of what affect, if any, the Settlement Agreement has on the EMEA Claims and UK Pension Claims as against the Canadian Debtors is not one that is before the

---

[18]     No basis is provided in the Motion as to why the terms of the Settlement Agreement should be imposed on non-parties. To the extent the US Debtors or another Settlement Party subsequently provide such a basis, the Monitor and Canadian Debtors reserve the right to reply to same.

[19]     Although as noted above the UK Pension Claims are not Overlapping Claims or Same-Creditor Claims by virtue of being carved out of such definitions, the Canadian Debtors and Monitor submit that the same principle should apply to the resolution of the UK Pension Claims as against the US Debtors; that is, their resolution should be without prejudice to the rights and defenses of the Canadian Debtors and the Monitor. In any event, no basis has been provided as to why it should be otherwise.

Courts and may never need to be addressed. However, the provision of the proposed Order

seeking to bind non-parties to the Settlement Parties' agreement that the Settlement Agreement

does not affect claims by or against non-parties is inappropriate and inconsistent with this

Court's prior Order that the resolution of any claims in these chapter 11 cases is without

prejudice to the rights and defenses of the Canadian Debtors and the Monitor in the Canadian

Proceedings. As such, such provision should be struck.

**F.      The Settlement Agreement Cannot Supersede the IFSA or the CFSA**

26.      Finally, Section 8.9 of the Settlement Agreement provides:

> For the avoidance of doubt, *unless explicitly stated herein*, this Settlement
> Agreement does not supersede either the IFSA or the Final Canadian Funding and
> Settlement Agreement dated as of December 23, 2009, both of which remain in
> full force and effect. [emphasis added]

The Canadian Parties have requested that the Settlement Parties clarify the intent and meaning of

this provision insofar as it contemplates the possibility that certain provisions of the Settlement

Agreement may supersede the IFSA and the Final Canadian Funding and Settlement Agreement

(the "**CFSA**"), which settlement was approved by the Order of this Court dated January 26, 2010

[Dkt. No. 2347]. Both of these agreements require the consent of all parties thereto (including, in

both cases, the Canadian Parties) to amend and, if the amendment is material, approval of both

Courts. See IFSA, Section 15; CFSA, Section 18. In addition, in the case of the CFSA, only the

US Debtors and the Canadian Parties are party thereto, so it is unclear to the Canadian Parties

how a provision of the Settlement Agreement could purport to supersede the CFSA. The

Canadian Parties are hopeful that this issue can be resolved to their satisfaction prior to the

hearing of the Motion but reserve the right to request that language be added to the requested

Orders that nothing in the Settlement Agreement supersedes either the IFSA or the CFSA.

## **CONCLUSION**

27.     The Canadian Parties respectfully request that: (i) each Settlement Party be required to disclose to the other Core Parties, this Court, and the Ontario Court by no later than January 24, 2014, whether it is adopting a common allocation position with any other Settlement Party; (ii) the Settlement Agreement not in any way enhance a Settlement Party's rights in respect of, or otherwise impact, any motion brought by such Settlement Party seeking leave to amend its allocation pleading; and (iii) the above-referenced provision of the Proposed Order seeking to bind non-parties to the agreement of the Settlement Parties that the Settlement Agreement does not affect claims by or against non-parties be struck.

[*Intentionally left blank*]

Dated: January 2, 2013
      Wilmington, Delaware

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Kathleen A. Murphy
Mary F. Caloway (No. 3059)
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

-and-

**ALLEN & OVERY LLP**

Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
ken.coleman@allenovery.com
daniel.guyder@allenovery.com
paul.keller@allenovery.com
laura.hall@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor
and Foreign Representative of the Canadian
Debtors*

17