**Exhibit A**

Court File No: 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

### MOTION RECORD OF NORTEL NETWORKS INC. AND
### THE OTHER US DEBTORS
### (Representative Depositions)

Date: December 30, 2013

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, ON  M5K 1N2

Fax:  416.865.7380

**Sheila Block** (LSUC#: 14089N)
Tel: 416.865.7319
Email: sblock@torys.com

**Scott A. Bomhof** (LSUC#: 37006F)
Tel: 416.865.7370
Email: sbomhof@torys.com

**Andrew Gray** (LSUC#: 46626V)
Tel: 416.865.7630
Email: agray@torys.com

**Adam M. Slavens** (LSUC#: 54433J)
Tel: 416.865.7333
Email: aslavens@torys.com

Lawyers for Nortel Networks Inc.
and the other US Debtors

35873-2001 16402327.1

Court File No: 09-CL-7950

*ONTARIO*
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

## INDEX

| Tab | Document |
| --- | --- |
| 1. | Notice of Motion |
| 2. | Affidavit of Jeffrey A. Rosenthal (to be sworn) |
| 3. | Draft Order |

# TAB 1

Court File No: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**NOTICE OF MOTION**

Nortel Networks Inc. and the other companies listed on Schedule "A" hereto (collectively, the "US Debtors") will make a motion to a judge presiding over the Ontario Superior Court of Justice (Commercial List) on January 7, 2014, at 10:00 a.m. or as soon after such time as the motion can be heard, at 330 University Avenue, Toronto, Ontario.

**PROPOSED METHOD OF HEARING**: The motion is to be heard orally.

**THE MOTION IS FOR** an order (the "Amending Order"):

(a)     abridging and validating the time for service of the motion record in respect of this motion, including the Affidavit of Jeffrey A. Rosenthal, to be sworn, (the "Rosenthal Affidavit"), and dispensing with further service thereof;

(b)     further amending the Amended Litigation Timetable set out at Schedule "A" of the order of the Court dated November 19, 2013 by dispensing with the representative witness depositions and modifying each of the Allocation Protocol, the Litigation Timetable and Discovery Plan and the Deposition Protocol, accordingly (each, as defined in the November 19 Order); and

(c)     such further and other relief as counsel may request and this Court deems just.

- 2 -

## THE GROUNDS FOR THE MOTION ARE:

(a)     Representative Depositions (as that term is defined in the Deposition Protocol) were first contemplated, and incorporated into the Litigation Timetable and Discovery Plan, by the Core Parties prior to the comprehensive discovery that has occurred to date:

        (i)     more than 100 witness depositions were taken in more than 15 cities on three continents in less than three months;

        (ii)    approximately 99% of all former Nortel employees, officers or directors and pension trustees that the Core Parties sought to depose ultimately testified;

        (iii)   deposed witnesses included one of Nortel's former Chief Executive Officers, several Chief Financial Officers, and numerous Treasurers, general counsels, senior executives in the tax and treasury departments, present and former directors of various Nortel affiliates, senior intellectual property lawyers, merger & acquisition executives, and pension trustees; and

        (iv)    deposed witnesses also included two EMEA joint administrators, two representatives of the Monitor, the US principal officer and the French liquidator, and In addition, depositions have been taken and documents have been obtained from third parties, including financial and other advisors

(b)     There is therefore no need for any additional "clean-up" discovery;

(c)     Any possible concern about the potential for surprise at trial has been eliminated by the Discovery Protocol and ongoing negotiations that will require: (i) identification of potential trial witnesses at the outset, and a prohibition against calling any witness who has not been deposed; (ii) exchange of expert reports and expert depositions; and (iii) filing in advance of trial fact affidavits and designating exhibits and deposition testimony to be used at trial;

(d)     The EMEA Debtors, the UK Pension Claimants, the Official Committee of Unsecured Creditors and the Ad Hoc Bondholders Group have all taken the position that the representative depositions should be dispensed with, leaving the Canadian Discovery Group as the only discovery group that is taking the position that they must proceed;

- 3 -

(e)    Representative Depositions (and the new alternative to them proposed by the Canadian Debtors and Monitor) would be burdensome and in any event what is sought from the Canadian Discovery Group is impermissible discovery; and

(a)    Such further and other grounds as counsel may advise and this Court may permit.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

(a)    the Rosenthal Affidavit;

(b)    Allocation Protocol, the Litigation Timetable and Discovery Plan and the Deposition Protocol;

(c)    such supplementary or reply evidence as may be required based on the materials to be delivered by the other parties; and

(d)    such further and other evidence as counsel may advise and this Court may permit.

Date:  December 30, 2013

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, ON  M5K 1N2

Fax:  416.865.7380

**Sheila Block** (LSUC#: 14089N)
Tel: 416.865.7319
Email: sblock@torys.com

**Scott A. Bomhof** (LSUC#: 37006F)
Tel: 416.865.7370
Email: sbomhof@torys.com

**Andrew Gray** (LSUC#: 46626V)
Tel: 416.865.7630
Email: agray@torys.com

**Adam M. Slavens** (LSUC#: 54433J)
Tel: 416.865.7333
Email: aslavens@torys.com

Lawyers for Nortel Networks Inc.
and the other US Debtors

TO:    **SERVICE LIST ATTACHED**

## SCHEDULE "A"

Nortel Networks Capital Corporation
Nortel Altsystems Inc. (previously "Alteon Websystems, Inc.")
Nortel Altsystems International Inc. (previously "Alteon Websystems International, Inc.")
XROS, Inc.
Sonoma Systems
QTERA Corp.
CoreTek, Inc.
Nortel Networks Applications Management Solutions Inc.
Nortel Networks Optical Components Inc.
Nortel Networks HPOCS Inc.
Architel Systems (U.S.) Corp.
Nortel Networks International Inc.
Nortel Telecom International Inc.
Nortel Networks Cable Solutions Inc.
Nortel Networks (CALA) Inc.

Court File No.  09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

CORE PARTIES SERVICE LIST
(Allocation Litigation)

Updated as of September 11, 2013

1991328\TOR_LAW\ 8152227\12

- 2 -

**CANADIAN DEBTORS**

TO:     **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1G5

Derrick Tay
Jennifer Stam

Email:    derrick.tay@gowlings.com
jennifer.stam@gowlings.com

Tel:     416.862.5697
Fax:     416.862.7661

Lawyers for the Applicants

AND     **GOODMANS LLP**
TO:     Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario  M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Ben Zarnett
Fred Myers
Peter Ruby
Jessica Kimmel
Chris Armstrong

Email:    jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
bzarnett@goodmans.ca
fmyers@goodmans.ca
pruby@goodmans.ca
jkimmel@goodmans.ca
carmstrong@goodmans.ca

Tel:     416.597.4107
Fax:     416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND     **ERNST & YOUNG INC.**
TO:     Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, Ontario  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:    nortel.monitor@ca.ey.com

Tel:     416.943.3016
Fax:     416.943.3300

- 3 -

AND
TO:

**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020

Ken Coleman
Paul Keller
Daniel Guyder
Laura Hall
Joseph Badtke-Berkow
Jonathan Cho
Nicolette Ward

Email:     ken.coleman@allenovery.com
Tel:        212.610.6434
Fax:        212.610.6399

Email:     paul.keller@allenovery.com
Tel:        212.610.6414
Fax:        212.610.6399

Email:     daniel.guyder@allenovery.com
Tel:        212.756.1132
Fax:        212.610.6399

Email:     laura.hall@allenovery.com
Tel:        212.756.1171
Fax:        212.610.6399

Email:     Joseph.Badtke-Berkow@AllenOvery.com
Tel:        212.610.6417
Fax:        212.610.6399

Email:     jonathan.cho@allenovery.com
Tel:        212.756.1118
Fax:        212.610.6399

Email:     Nicolette.ward@allenovery.com
Tel:        212.610.6412
Fax:        212.610.6399

U.S. Lawyers for the Canadian Debtors

AND
TO:

**BUCHANAN INGERSOLL & ROONEY**
1105 North Market Street,
Suite 1900
Wilmington, DE 19801-1054

Kathleen A. Murphy
Mary F. Caloway

Email:     Kathleen.murphy@bipc.com
Tel:        302.552.4214
Fax:        302.552.4295

Email:     mary.caloway@bipc.com
Tel:        302.552.4209
Fax:        302.552.4295

Local U.S. Lawyers for the Canadian Debtors

- 4 -

**U.S. DEBTORS**

AND
TO:

**TORYS LLP**

79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Tony DeMarinis
Scott Bomhof
Sheila Block
Andrew Gray
Adam Slavens

Email:    tdemarinis@torys.com
          sbomhof@torys.com
          sblock@torys.com
          agray@torys.com
          aslavens@torys.com

Tel:      416.865.0040
Fax:      416.865.7380

Canadian Lawyers for Nortel Networks Inc.

AND
TO:

**CLEARY GOTTLIEB STEEN & HAMILTON
LLP**

One Liberty Plaza
New York, NY 10006

James Bromley
Lisa Schweitzer
Howard Zelbo
Jeffrey Rosenthal
Darryl Stein
Marla Decker
Lauren Peacock
Jacqueline Moessner
Neil Forrest
Dan Queen

Email:    jbromley@cgsh.com
          lschweitzer@cgsh.com
          hzelbo@cgsh.com
          jrosenthal@cgsh.com
          dstein@cgsh.com
          mdecker@cgsh.com
          lpeacock@cgsh.com
          jmoessner@cgsh.com
          nforrest@cgsh.com
          dqueen@cgsh.com

Tel:      212.225.2000
Fax:      212.225.3999

U.S. Lawyers for Nortel Networks Inc.

AND
TO:

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE  19899-1347

Derek Abbott
Annie Cordo

Email:    dabbott@mnat.com
Tel:      302.351.9357
Fax:      302.425.4664

Email:    acordo@mnat.com
Tel:      302.351.9459
Fax:      302.225.2559

Local U.S. Lawyers for the U.S. Debtors

- 5 -

## EMEA DEBTORS

AND TO:

**DAVIES WARD PHILLIPS & VINEBERG LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Sean Campbell
James Doris
Louis Sarabia

Email:    rschwill@dwpv.com
Email:    scampbell@dwpv.com
Email:    jdoris@dwpv.com
Email:    lsarabia@dwpv.com

Tel:      416.863.0900
Fax:      416.863.0871

Co-Counsel to the Joint Administrators of Nortel
Networks UK Limited

AND TO:

**HUGHES HUBBARD & REED**
One Battery Park Plaza
New York, NY 10004-1482

Derek Adler
Neil Oxford
Fara Tabatabai
Charles Huberty

Email:    adler@hugheshubbard.com
Tel:      212.837.6086
Fax:      212.422.4726

Email:    oxford@hugheshubbard.com
Tel:      212.837.6843
Fax:      212.422.4726

Email:    tabataba@hugheshubbard.com
Tel:      212.837.6296
Fax:      212.299.6269

Email:    huberty@hugheshubbard.com
Tel:      212.837.6045
Fax:      212.299.6045

U.S. Lawyers the Joint Administrators of Nortel
Networks UK Limited

AND TO:

**LAX O'SULLIVAN SCOTT LISUS LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Matthew P. Gottlieb
Tracy Wynne
Paul Michell

Email:    mgottlieb@counsel-toronto.com
Tel:      416.644.5353
Fax:      416.598.3730

Email:    twynne@counsel-toronto.com
Tel:      416.598.7835
Fax:      416.598.3730

Email:    pmichell@counsel-toronto.com
Tel:      416.644.5359
Fax:      416.598.3730

Co-Counsel to the Joint Administrators of Nortel
Networks UK Limited

**YOUNG CONAWAY STARGATT & TAYLOR
LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801

Ed Harron
John Dorsey

Email:    eharron@ycst.com
Tel:      302.571.6703
Fax:      302.576.3298

Email:    jdorsey@ycst.com
Tel:      302.571.6712
Fax:      302.576.3401

Local U.S. Lawyers for the Joint Administrators
of Nortel Networks UK Limited

- 6 -

**CANADIAN CREDITORS COMMITTEE**

AND TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario  M5H 3R3

Mark Zigler
Susan Philpott
Ari Kaplan
Barbara Walancik

Email:     mzigler@kmlaw.ca
Tel:        416.595.2090
Fax:       416.204.2877

Email:     sphilpott@kmlaw.ca
Tel:        416.595.2104
Fax:       416.204.2882

Email:     akaplan@kmlaw.ca
Tel:        416.595.2087
Fax:       416.204.2875

Email:     bwalancik@kmlaw.ca
Tel:        416.542.6288
Fax:       416.204.2906

Lawyers for the Former Employees of Nortel and
LTD Beneficiaries

AND TO:

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
35th Floor
155 Wellington Street West
Toronto, Ontario  M5V 3H1

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Karen Jones
Tina Lie
Michelle Jackson
Jacqueline Cummins

Email:     ken.rosenberg@paliareroland.com
Tel:        416.646.4304
Fax:       416.646.4301

Email:     max.starnino@paliareroland.com
Tel:        416.646.7431
Fax:       416.646.4301

Email:     lily.harmer@paliareroland.com
Tel:        416.646.4326
Fax:       416.646.4301

Email:     karen.jones@paliareroland.com
Tel:        416.646.4339
Fax:       416.646.4301

Email:     tina.lie@paliareroland.com
Tel:        416.646.4332
Fax:       416.646.4301

Email:     michelle.jackson@paliareroland.com
Tel:        416.646.7470
Fax:       416.646.4301

Email:     Jacqueline.cummins@paliareroland.com
Tel:        416.646.7446
Fax:       416.646.4301

Lawyers for the Superintendent of Financial Services
as Administrator of the Pension Benefits Guarantee
Fund

- 7 -

AND
TO:

**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, Ontario M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:    barry.wadsworth@caw.ca
          lewis.gottheil@caw.ca

Tel.:     416.495.3776
Fax:      416.495.3786

Lawyers for all active and retired Nortel
employees represented by the CAW-Canada

AND
TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham
Ainslie Benedict

Email:    janice.payne@nelligan.ca
          steven.levitt@nelligan.ca
          christopher.rootham@nelligan.ca
          ainslie.benedict@nelligan.ca

Tel:      613.231.8245
Fax:      613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA
as at January 14, 2009

AND
TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:    arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:      416.214.5413

Email :   thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Lawyers for The Recently Severed Canadian Nortel
Employees Committee

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Barbara J. Boake
James D. Gage
Elder C. Marques
Paul Steep
Byron Shaw
Sharon Kour
Kelly Peters

E-mail:   bboake@mccarthy.ca
Tel:      416.601.7557
Fax:      416.868.0673

Email:    jgage@mccarthy.ca
Tel:      416.601.7539
Fax:      416.686.0673

Email:    emarques@mccarthy.ca
Tel:      416.601.7822
Fax:      416.686.0673

Email:    psteep@mccarthy.ca
Tel:      416.601.7998
Fax:      416.686.0673

Email:    bdshaw@mccarthy.ca
Tel:      416.601.8256
Fax:      416.686.0673

Email:    skour@mccarthy.ca
Tel:      416.601.8305
Fax:      416.686.0673

Email:    kpeters@mccarthy.ca
Tel:      416.601.8281
Fax:      416.686.0673

Lawyers for Morneau Shepell Limited

- 8 -

AND
TO:

**DLA PIPER**

919 North Market Street
Suite 1500
Wilmington, Delaware 19801

Selinda A. Melnik
Richard Hans
Timothy Hoeffner
Farah Lisa Whitley-Sebti

Email:   selinda.melnik@dlapiper.com
Tel:     302.468.5650
Fax:     302.778.7914

Email:   richard.hans@dlapiper.com
Tel:     212.335.4530
Fax:     212.884.8730

Email:   timothy.hoeffner@dlapiper.com
Tel:     212.656.3341
Fax:     215.606.3341

Email:   farahlisa.sebti@dlapiper.com
Tel:     212.335.4829
Fax:     212.884.8529

U.S. Lawyers for the Canadian Creditors
Committee

**INFORMAL NORTEL NOTEHOLDER GROUP**

AND
TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson
Richard Swan
Sean Zweig
Jonathan Bell

Email:   zychk@bennettjones.com
Tel:      416.777.5738
Fax:     416.863.1716

Email:   orzyr@bennettjones.com
Tel:      416.777.5737
Fax:     416.863.1716

Email:   finlaysong@bennettjones.com
Tel:      416.777.5762
Fax:     416.863.1716

Email:   swanr@bennettjones.com
Tel:      416.777.7479
Fax:     416.863.1716

Email:   zweigs@bennettjones.com
Tel:      416.777.6254
Fax:     416.863.1716

Email:   bellj@bennettjones.com
Tel:      416.777.6511
Fax:     416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

AND
TO:

**MILBANK, TWEED, HADLEY McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Thomas R. Kreller
Jennifer P. Harris
Albert A. Pisa
Samir Vora
Andrew LeBlanc
Michael Hirschfeld
Atara Miller
Tom Matz
Nick Bassett
Gabrielle Ruha
Rachel Pojunas

Email:   TKreller@milbank.com
Tel:      213.892.4463
Fax:     213.629.5063

Email:   JHarris@milbank.com
Tel:      212.530.5475
Fax:     212.530.5219

Email:   APisa@milbank.com
Tel:      212.530.5319
Fax:     212.530.5219

Email:   svora@milbank.com
Tel:      213.892.4595
Fax:     213.629.5063

Email:   aleblanc@milbank.com
Tel:      202.835.7574
Fax:     202.263.7574

Email:   mhirschfeld@milbank.com
Tel:      212.530.5832
Fax:     212.822.5832

Email:   amiller@milbank.com
Tel:      212.530.5421
Fax:     212.822.5421

Email:   tmatz@milbank.com
Tel:      212.530.5885
Fax:     212.822.5885

Email:   nbassett@milbank.com
Tel:      202.835.7546
Fax:     202.263.7546

Email:   gruha@milbank.com
Tel:      212.530.5155
Fax:     212.822.5155

- 10 -

Email:    rpojunas@milbank.com
Tel:       202.835.7551
Fax:      202.263.7551

U.S. Lawyers for The Informal Nortel Noteholder
Group

- 11 -

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

AND TO:

**DENTONS CANADA LLP**
77 King Street West, Suite 400
TD Centre
Toronto, ON  M5K 0A1

R. Shayne Kukulowicz
Michael J. Wunder
Ryan Jacobs
Barbara Grossman

Email:    Shayne.kukulowicz@dentons.com
Michael.wunder@dentons.com
ryan.jacobs@dentons.com
Barbara.grossman@dentons.com

Tel:      416.863.4511
Fax:     416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors

AND TO:

**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara
David H. Botter
Abid Qureshi
Robert A. Johnson
Brad M. Kahn
Christine Doniak
Sunny Gulati

Email:    fhodara@akingump.com
dbotter@akingump.com
aqureshi@akingump.com
rajohnson@akingump.com
bkahn@akingump.com
cdoniak@akingump.com
sgulati@akingump.com

Tel:      212.872.1000
Fax:     212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND TO:

**ASHURST LLP**
Boardwalk House
5 Appold Street
London, EC2A 2HA
United Kingdom

Angela Pearson
Antonia Croke

Email:    angela.pearson@ashurst.com
antonia.croke@ashurst.com

Tel:      +44 (0)20 7638 1111
Fax:     +44 (0)20 7638 1112

U.K. Lawyers for the Official Committee of
Unsecured Creditors

AND TO:

**RICHARDS LAYTON & FINGER, P.A.**
920 North King Street
Wilmington, DE  19801

Christopher Samis

Email:    samis@rlf.com
Tel:      302.651.7845
Fax:     302.498.7845

Local U.S. Lawyers for the Official Committee of
Unsecured Creditors

- 12 -

**UK PENSION PROTECTION FUND AND NORTEL NETWORKS UK PENSION TRUST LIMITED**

AND
TO:

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
David S. Ward
Bill Burden
Christopher Horkins
Lara Jackson

Email:    bleonard@casselsbrock.com
          dward@casselsbrock.com
          bburden@casselsbrock.com
          chorkins@casselsbrock.com
          ljackson@casselsbrock.com

Tel:      416.860.6455
Fax:      416.640.3054

Co-Counsel for the UK Pension Protection Fund
and Nortel Networks UK Pension Trust Limited

AND
TO:

**THORNTON GROUT FINNIGAN LLP**
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON  M5K 1K7

Michael Barrack
D.J. Miller
Rebecca Lewis
Andrea McEwan
John Finnigan

Email:    mbarrack@tgf.ca
Tel:      416.304.1109
Fax:      416.304.1313

Email:    djmiller@tgf.ca
Tel:      416.304.0559
Fax:      416.304.1313

Email:    rlewis@tgf.ca
Tel:      416.304.0603
Fax:      416.304.1313

Email:    amcewan@tgf.ca
Tel:      416.304.0596
Fax:      416.304.1313

Email:    jfinnigan@tgf.ca
Tel:      416.304.0558
Fax:      416.304.1313

Co-Counsel to the UK Pension Protection Fund
and Nortel Networks UK Pension Trust Limited

AND
TO:

**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, N.Y. 10019-6099, U.S.A.

Brian O'Connor
Sameer Advani
Andrew Hanrahan

Email:    boconnor@willkie.com
Tel:      (212) 728-8251
Fax:      (212) 728-9251

Email:    sadvani@willkie.com
Tel:      (212) 728-8587
Fax:      (212) 728-9587

Email:    ahanrahan@willkie.com
Tel:      (212) 728-8170
Fax:      (212) 728-9170

US Counsel for the UK Pension Protection Fund
and Nortel Networks UK Pension Trust Limited

AND
TO:

**BAYARD, P.A.**
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899

Charlene D. Davis
Justin Alberto

Email:    cdavis@bayardlaw.com
          jalberto@bayardlaw.com

Tel:      302.655.5000
Fax:      302.658.6395

Local U.S. Lawyers for the UK Pension
Protection Fund and Nortel Networks UK
Pension Trust Limited

- 13 -

<u>THE BANK OF NEW YORK MELLON</u>

AND
TO:

**McMILLAN LLP**
Brookfield Place
181 Bay Street, Suite 4400
Toronto, Ontario, M5J 2T3

Sheryl E. Seigel

Email:  sheryl.seigel@mcmillan.ca
Tel:      416.307.4063
Fax:     416.365.1719

Canadian Lawyers for The Bank of New York
Mellon

AND
TO:

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4834

Michael J. Riela

Email:  michael.riela@lw.com

Tel :    212.906.1373
Fax :   212.751.4864

U.S. Lawyers for The Bank of New York Mellon

- 14 -

**WILMINGTON TRUST, NATIONAL ASSOCIATION**

AND
TO:

**HEENAN BLAIKIE LLP**
Bay Adelaide Centre
333 Bay Street, Suite 2900
P.O. Box 2900
Toronto, Ontario  M5H 2T4

John Salmas
Kenneth Kraft
Sara-Ann Van Allen

Email:  jsalmas@heenan.ca
Tel:      416.360.3570
Fax:     416.360.8425

Email:  kkraft@heenan.ca
Tel:      416.643.6822
Fax:     416.360.8425

Email:  svanallen@heenan.ca
Tel:      416.360.3570
Fax:     416.360.8425

Canadian Lawyers for Wilmington Trust, National
Association

AND
TO:

**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY  10022-2585

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine

Email:  craig.barbarosh@kattenlaw.com
Tel:      212.940.8665
Fax:     212.940.8776

Email:  david.crichlow@kattenlaw.com
Tel:      212.940.8941
Fax:     212.940.8776

Email:  Karen.dine@kattenlaw.com
Tel:      212.940.8772
Fax:     212.940.8776

U.S. Lawyers to Wilmington Trust, National
Association

- 15 -

LAW DEBENTURE TRUST COMPANY OF NEW YORK

AND
TO:
**BORDEN LADNER GERVAIS LLP**
Barristers and Solicitors
40 King Street West
Toronto, ON  M5H 3Y4

Edmond F. B. Lamek
James Szumski

Email:    elamek@blg.com
Tel:       416.367.6311
Fax:      416.361.2436

Email:    jszumski@blg.com
Tel:       416.367.6310
Fax:      416.682.2811

Lawyers for Law Debenture Trust Company of New
York

AND
TO:
**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, NY  10036

Daniel A. Lowenthal

Email:    dalowenthal@pbwt.com
Tel:       212.336.2720
Fax:      212.336.1253

U.S. Lawyers for Law Debenture Trust
Company of New York

- 16 -

**BOARDS OF DIRECTORS OF NORTEL NETWORKS CORPORATION AND NORTEL NETWORKS LIMITED**

AND
TO:

**OSLER HOSKIN AND HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, Ontario  M5X 1B8

Lyndon Barnes
Edward Sellers
Betsy Putnam
Adam Hirsh
Alexander Cobb

Email:    lbarnes@osler.com
          esellers@osler.com
          eputnam@osler.com
          ahirsh@osler.com
          acobb@osler.com

Tel:     416.362.2111
Fax:     416.862.6666

Lawyers for the Boards of Directors of Nortel
Networks Corporation and Nortel Networks Limited

- 17 -

**COURTESY COPIES:**

AND
TO:   **NORTON ROSE FULBRIGHT LLP**
      Suite 3800, Royal Bank Plaza
      South Tower, 200 Bay Street
      P.O. Box 84
      Toronto, ON  M5J 2Z4

      Michael Lang

      Email:    michael.lang@nortonrosefulbright.com

      Tel:    416.216.3939
      Fax:    416.216.3930

AND
TO:   **HOGAN LOVELLS INTERNATIONAL LLP**
      Atlantic House
      Holborn Viaduct
      London  EC1A 2FG
      United Kingdom

      Angela Dimsdale Gill
      John Tillman
      Matthew Bullen
      David Graves
      Katherine Tallett-Williams

      Email:    amdg@hoganlovells.com
                john.tillman@hoganlovells.com
                Matthew.bullen@hoganlovells.com
                david.graves@hoganlovells.com
                katherine.tallett-williams@hoganlovells.com

      Tel:    +44 20 7296 2000
      Fax:    +44 20 7296 2001

Court File No. 09-CL-7950

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**
Proceeding commenced at TORONTO

**NOTICE OF MOTION OF**
**NORTEL NETWORKS INC. AND**
**THE OTHER US DEBTORS**
**(Representative Depositions)**

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, ON M5K 1N2
Tel:  416.865.0040
Fax:  416.865.7380

**Sheila Block** (LSUC#: 14089N)
Email: sblock@torys.com

**Scott A. Bomhof** (LSUC#: 37006F)
Email: sbomhof@torys.com

**Andrew Gray** (LSUC#: 46626V)
Email: agray@torys.com

**Adam M. Slavens** (LSUC#: 54433J)
Email: aslavens@torys.com

Lawyers for Nortel Networks Inc.
and the other US Debtors

5563-2004 t-#6525-1

**TAB 2**

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**AFFIDAVIT OF JEFFREY A. ROSENTHAL**

I, Jeffrey A. Rosenthal, of the City of New York, in the State of New York in the United States of America, MAKE OATH AND SAY:

1.  I am a partner of the law firm Cleary Gottlieb Steen & Hamilton LLP, counsel to Nortel Networks Inc. and its affiliated debtors[1] (collectively, the "US Debtors"). Except as otherwise indicated, I have knowledge of the matters to which I hereinafter depose. Where in my Affidavit I rely on information provided to me by other persons, I state the source of that information and in each case I believe that the information is true.

2.  I swear this Affidavit in support of the motion of the US Debtors for an order (the "Amending Order") further amending the Amended Litigation Timetable set out at Schedule "A" of the order of the Court dated November 19, 2013 (the "November 19

---

[1] The US Debtors are Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.

Order") to dispense with representative witness depositions. The US Debtors also seek conforming amendments to each of the Allocation Protocol, the Litigation Timetable and Discovery Plan and the Deposition Protocol (each, as defined in the November 19 Order).

## BACKGROUND

### Nortel's Insolvency Proceedings

3.  On January 14, 2009, this Court made an Initial Order granting Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "Canadian Debtors") protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA"), and, among other things, appointing Ernst & Young Inc. as monitor in these proceedings.

4.  Also on January 14, 2009, the US Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the US Bankruptcy Court.

5.  Also on January 14, 2009, this Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect to the automatic stay under the Bankruptcy Code in Canada.

6.  Also on January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (the "EMEA Debtors"), including Nortel Networks UK Limited ("NNUK"), into administration (the "Administration Proceedings") under the control of individuals from Ernst & Young LLP (the "Joint Administrators").

7.  On February 27, 2009, the US Bankruptcy Court granted petitions recognizing the CCAA proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Bankruptcy Code.

8.  On June 26, 2009, the US Bankruptcy Court granted a petition recognizing the Administration Proceeding of NNUK as a "foreign main proceeding" pursuant to Chapter 15 of the Bankruptcy Code.

9.   On January 31, 2011, the US Bankruptcy Court granted petitions recognizing the Administration Proceedings of the other EMEA Debtors as "foreign main proceedings" pursuant to Chapter 15 of the Bankruptcy Code.

*The Allocation Protocol*

10.  On April 3, 2013 and May 17, 2013, this Court and the US Bankruptcy Court, respectively, signed orders approving the Allocation Protocol.  The Allocation Protocol set forth procedures for determining:  (i) the allocation of sale proceeds among the Canadian Debtors, the US Debtors and the EMEA Debtors; (ii) certain claims by the EMEA Debtors against the Canadian Debtors and the US Debtors; and (iii) certain claims by the UK Pension Trustee and the Board of the Pension Protection Fund (the "UK Pension Claimants") against the Canadian Debtors and the US Debtors.

11.  On May 15, 2013 and May 17, 2013, this Court and the US Bankruptcy Court, respectively, signed orders approving the Litigation Timetable and Discovery Plan pursuant to the Allocation Protocol.

12.  On August 27, 2013 and August 26, 2013, this Court and the US Bankruptcy Court, respectively, made orders modifying the schedule set out in the Litigation Timetable and approving the Deposition Protocol.

13.  On November 19, 2013 and November 27, 2013, this Court and the US Bankruptcy Court, respectively, made orders further modifying the schedule set out in the Litigation Timetable.

## THE REPRESENTATIVE DEPOSITION PROCESS

*Purpose of Representative Depositions*

14.  The Litigation Timetable and Discovery Plan originally contemplated that the parties would conduct Representative Depositions (as defined in the Deposition Protocol) after the completion of fact witness depositions.  The Deposition Protocol contemplated that a party could serve a list setting forth "a very limited number of subjects on which it believes no fact witness currently or formerly associated with the party producing the Representative Witness has provided adequate first-hand testimony."  The topics for

- 4 -

Representative Depositions were to be "small in number and reasonable in scope," and any undertakings arising from these depositions were to be limited to matters "not already the subject of first-hand deposition testimony obtained from a knowledgeable fact witness." Accordingly, and as acknowledgd by the parties throughout their negotiation of the Deposition Protocol, the purpose of the Representative Depositions was to "fill the gaps," if any, remaining after the close of fact witness discovery. The parties anticipated that such gaps might exist in the event the parties were unable to obtain testimony from witnesses with first hand knowledge of pertinent facts, particularly because most witnesses no longer worked for and were no longer under the control of any Nortel entity.

15. Representative Depositions were incorporated into the Litigation Timetable and Discovery Plan prior to the commencement of fact discovery and at a time when the parties did not have a basis to confirm whether they would ultimately be able to conduct the depositions of all of the witnesses they sought to depose, many of whom were no longer associated with the various Nortel affiliates. As noted above, it was this concern – and the corresponding potential need to fill in any remaining gaps – that animated the parties' agreement to conduct Representative Depositions.

16. As the parties neared the completion of the more than 100 fact depositions they ultimately conducted, and prior to the delivery of any topics for Representative Depositions, the US Debtors proposed that the Core Parties agree to dispense with Representative Depositions. The US Debtors noted that in light of the unexpectedly broad opportunity each party had for fact discovery of percipient witnesses, including former employees of Nortel entities and other third parties, Representative Depositions were unnecessary and that going forward with such depositions would result in a waste of resources. The particular bases for that position were set out in correspondence later sent to the US Bankruptcy Court and to this Court, as discussed below.

17. I am unaware of any Core Party other than the Monitor, the Canadian Debtors, the CCC, and the Directors and Officers who has disagreed with the US Debtors' proposal.

*Noticing of Topics for Representative Depositions*
*According to the Litigation Timetable*

18.  Because there was no agreement among all of the Core Parties whether to dispense with Representative Depositions, on December 13, 2013 (the deadline in the Litigation Timetable, as amended), while reserving their right to argue that Representative Depositions were unnecessary and should not be required, the US Debtors sent a letter listing a limited number of advance topics for Representative Depositions of the Canadian Debtors Representative (four topics), the CCC Representative (also four topics) and the Wilmington Trust Representative (three topics).  The advance topics designated by the US Debtors were narrow in scope and limited in number.  The US Debtors made it clear in their letter that they continued to believe Representative Depositions were unnecessary and inappropriate and should therefore not occur.  A copy of the US Debtors' letter setting out their advance topics is attached to my Affidavit as Exhibit "A".[2]

19.  A letter sent by counsel to the Joint Administrators set out, on behalf of the EMEA Debtors and the UK Pension Claimants, their concurrence with the US Debtors' position that there was no further need for Representative Depositions and included five advance topics for a deposition of the Canadian Debtors' Representative in the event such Depositions nonetheless went forward.  This letter is attached to my Affidavit as Exhibit "B".

20.  On December 13, 2013, the Canadian Allocation Group delivered a 92-page pleading containing, among other things, 27 broad-ranging topics for the deposition of the US Debtors' Representative.  The 92-page pleading was amended on December 15, 2013, and the amended pleading is attached to my Affidavit as Exhibit "C" (together with a supplement, dated December 17, 2013, in respect of the French affiliate, NNSA).  The Canadian Allocation Group's pleading purported to require each representative witness to

---

[2] In the US Debtors' letter, they reserved their right to examine each party's representative on "any topic, as applicable to that party, designated by that party to representatives of any of the U.S. Interests."

prepare in advance of his or her deposition to testify on all of the topics directed to his or her party, an impossible task given their breadth.[3]

### *Objections to Noticed Topics*

21. In accordance with the Deposition Protocol, on December 18, 2013, the Core Parties delivered objections to the Representative Deposition topics noticed by other Core Parties. The objections timely made by the US Debtors are attached as Exhibit "D" to my Affidavit, and the objections timely delivered by counsel for the Joint Administrators on behalf of the EMEA Debtors and the UK Pension Claimants are attached as Exhibit "E" to my Affidavit. Objections to the topics noticed by the Canadian Allocation Group were also timely delivered by the Ad Hoc Group of Bondholders (Exhibit "F" to my Affidavit) and by the Unsecured Creditors Committee of the US Debtors (the "UCC") (Exhibit "G" to my Affidavit).

22. Separate objections were delivered by the Monitor and Canadian Debtors to the U.S. Debtors (Exhibit "H" to my Affidavit) and to the EMEA Debtors and the UK Pension Claimants (Exhibit "I" to my Affidavit), and by the CCC (Exhibit "J" to my Affidavit).

23. Each of the Core Parties' objections articulated the basis for their objections to the Representative Deposition topics through either general objections for all of the topics, specific objections for each of the topics, or both. The US Debtors, for example, stated that the Monitor and Canadian Debtors' topics were "unreasonable in number relative to the time limitation for the examination," that the topics had "an impermissibly broad scope," and that the subjects were " inappropriate for a representative deposition." These objections conformed to the possible bases for objections identified in the Deposition Protocol itself, which stated that objections may be made "in the event a party designates an unreasonable number of subjects relative to the time limitations for the examination, subjects of an impermissibly broad scope or subjects inappropriate for a Representative Deposition."

---

[3] While the Monitor and Canadian Debtors have sought to downplay the scope of their 92-page pleading (which itself was incomplete insofar as they later supplemented it and added topics for UK Pension Claimaints), they do seek testimony from the other parties on, collectively, every topic in their 92-page pleading irrespective of repetition among parties, and thus the total scope and expense of the representative witness depositions needs to be measured in the aggregate based upon all of the Monitor's and Canadian Debtors' topics.

24. In their December 22, 2013 letter to the US Bankruptcy Court (identified below as Exhibit "P" to my Affidavit), the Monitor and the Canadian Debtors state that all of the other parties "have not articulated the basis for objection to any single topic designated for them (with the time for doing so under the litigation timetable and discovery plan having now passed)."   In fact, the objections attached as Exhibit D reflect that the US Debtors (as well as other Core Parties, as memorialized in the other exhibits referenced above) objected to the other Core Parties' topics by timely delivering to the other parties on December 18, 2013 objections consistent with the Deposition Protocol.

25. Following the exchange of topics and objections, described above, on December 19, 2013 the Canadian Allocation Group served 17 topics on the UK Pension Claimants (Exhibit "K" to my Affidavit).  On that same date, Wilmington Trust delivered an objection to the US Debtors' topics  (Exhibit "L" to my Affidavit).

## AMENDING ORDER IS REQUIRED

### *Dispute Brought to the Attention of the Courts*

26. Pursuant to the US Bankruptcy Court's direction that the parties may bring discovery disputes to the US Bankruptcy Court's attention by letter, after meeting and conferring unsuccessfully throughout the week following service on December 13 of the representative topics by the Monitor and Canadian Debtors, the US Debtors raised the dispute regarding Representative Depositions in a letter to the US Bankruptcy Court on December 20, 2013 (the "December 20 Letter").

27. The December 20 Letter sets out the factual bases for the relief sought by the US Debtors on this motion, and the reasons why it is appropriate to dispense with Representative Depositions in light of the discovery process that has taken place to date in this litigation and the pre-trial steps to be completed.  I affirm that the factual statements in the December 20 Letter are true and correct to the best of my knowledge.  A copy of the December 20 Letter is attached as Exhibit "M" to my Affidavit, and was previously delivered to this Court on December 20, 2013 in connection with booking the December 23, 2013 chambers appointment in connection with, among other things, this discovery dispute.

28. Further correspondence was delivered to the US Bankruptcy Court on December 20, 2013 by the EMEA Debtors and the UCC (Exhibits "N" and "O" to my Affidavit), and by the Monitor and Canadian Debtors and by the CCC on December 22, 2013 (Exhibits "P" and "Q" to my Affidavit). The US Debtors delivered a second letter to the US Bankruptcy Court on December 23, 2013 (Exhibit "R" to my Affidavit).

*Representative Depositions Are Unnecessary and Unduly Burdensome*

29. As set out in the December 20 Letter, the Litigation Timetable and Discovery Plan in this litigation contemplated fact depositions followed by Representative Depositions that were a hybrid of Ontario and U.S. procedural rules and were designed to enable the Core Parties to obtain testimony on factual subjects as to which the witnesses with first-hand knowledge were either unknown or unavailable for deposition.

30. In addition to the production of more than two million documents, the discovery that has occurred to date has included over 100 witness depositions taken in more than 15 cities on three continents in less than three months.

31. Approximately 99% of all former Nortel employees, officers or directors and pension trustees that the Core Parties sought to depose ultimately testified. The deposed witnesses included one of Nortel's former Chief Executive Officers, several Chief Financial Officers, and numerous Treasurers, general counsels, senior executives in the tax and treasury departments, present and former directors of various Nortel affiliates, senior intellectual property lawyers, merger and acquisition executives and pension trustees. Deposed witnesses also included two EMEA joint administrators, two representatives of the Monitor, the US principal officer and the French liquidator.

32. In their December 22, 2013 letter (Exhibit "P"), the Monitor and Canadian Debtors assert that nothing has changed since the November 14, 2013 joint motion to amend the Litigation Timetable, at which time the US Debtors still contemplated that Representative Depositions might be appropriate, and that many of the depositions since then have involved third parties. To the contrary, since November 14, 2013, nearly one-third of all depositions have been conducted. These included the depositions of current representatives of the various Nortel estates such as representatives of the Canadian

Monitor, two Joint Administrators, the French Liquidator and NNI's Principal Officer.  In addition, since November 14, 2013, the parties have deposed several senior former officers and employees of various Nortel entities, including former senior NNUK officers with respect to NNUK's claims against the Canadian Debtors and US Debtors (Simon Freemantle and Sharon Rolston), all four of the former NNSA officers currently residing in France that the Core Parties sought to depose (Messrs. Clement, Lesur, Debon and Lebrun), former senior officers from NNL responsible for tax and transfer pricing matters (Peter Look and John Doolittle), a former senior employee from NNL also involved in tax and transfer pricing matters, and outside legal advisors to Nortel entities on tax and transfer pricing matters (Scott Wilkie and Giovanna Sparagna).  In other words, numerous factual gaps that still remained as of November 14, 2013 were filled by depositions of percipient witnesses in the subsequent month.

33. I understand that the fact discovery that has occurred in connection with the pending litigations far exceeds the examinations that typically occur in Canadian litigation.  When I posed the question during a meet and confer telephone conference on December 18, 2013, no Canadian counsel could recall another Canadian case where 100 fact depositions had been taken.

34. In addition to the depositions of fact witnesses produced by the Core Parties, examinations also have been taken and documents have been obtained from numerous third parties, including financial and other advisors.

35. The gap-filling measure of representative witness depositions has been rendered unnecessary by the breadth of witnesses made available for examination, such that there is no longer any need for an additional "clean-up" process.  The Monitor and the Canadian Debtors have not explained what information they believe is missing from the evidence they have sought to obtain through the fact witness depositions or the document productions.

36. Not only has the deposition discovery of fact witnesses been extensive and complete, but any possible concern about the potential for "surprise" at trial has been addressed by the Deposition Protocol and by ongoing negotiations that have required or will require:

(i) identification of potential trial witnesses at the outset prior to the commencement of depositions and a corresponding prohibition against a party calling any witness who has not been deposed; (ii) exchange of expert reports and expert depositions; and (iii) pre-trial filing of fact affidavits and the designation of exhibits and deposition testimony to be used at trial. Thus, no evidence may be offered at trial that has not been identified by the parties to each other prior to trial (indeed, under our latest proposal, prior to the submission of pre-trial briefs).

### *The Monitor and Canadian Debtors' Proposed Alternative Is Even More Unnecessary and Burdensome than the Existing Representative Depositions and Its Topics Are In Any Event Improper*

37. Contrary to the suggestion in their December 22, 2013 letter that they have made multiple "proposals" that would "narrow the scope of the representative party discovery and the overall costs to the estates," the Monitor and Canadian Debtors have offered only one such proposal. This proposal, described in the December 22, 2013 letter, is "to reduce the total number of topics to five topics on allocation and five on the claims asserted by the EMEA Debtors against the Canadian estates . . . and to allow the parties to respond to questions by way of written responses, which would be provided by January 17, 2014." This proposal would not reduce the burden of the examinations on the other Core Parties but, rather, would create a new process that is more burdensome than the Monitor and Canadian Debtors' original topics for examination.

38. While the Monitor and Canadian Debtors have now proposed to limit the number of allocation topics to five, their proposed topics are extremely overbroad and, in fact, subsume most of the 27. Further, the Monitor and Canadian Debtors propose to be permitted to ask an unlimited number of questions on each broad topic. Moreover, the nature of their topics themselves is improper, as they appear to seek specific identification months before trial of all evidence, including all documents, that each Core Party will rely upon in support of their case and claims or to refute positions that may be taken by the Monitor and the Canadian Debtors.

39. Thus, the Monitor and Canadian Debtors purport to "reduce" their original 27 topics for the US Debtors by limiting themselves to an undefined and unlimited number of questions on the following five topics:

   (a)    The facts and documents, other than the MRDA, demonstrating the US Debtors' understanding of the phrase "equitable and beneficial ownership" as used in the MRDA and the term "economic ownership" as used in the US Debtors' allocation pleadings.

   (b)    The factual and documentary basis for and scope of licenses of Nortel's intellectual property, including any enhanced licenses, held by parties other than NNL.

   (c)    The facts and documents demonstrating how and to what extent intellectual property was assigned to NNL by NNL's subsidiaries, inventors/authors and others.

   (d)    The facts and documents demonstrating Nortel's processes for the identification and development of products, including as they varied over time before and after January 14, 2009.

   (e)    The facts and documents underlying the contention of the US Debtors that they could have generated value from the intellectual property sold in the Rockstar transaction in the absence of a sale of that intellectual property.

40. These five topics are no less broad than the Monitor and Canadian Debtors' original 27 topics for the US Debtors because they purport to include all "the facts and documents" underlying each of the listed broad topics relating to the historic intellectual property and "products" practices of the various Nortel affiliates. Each of the broad examination topics does not attempt to fill discrete gaps remaining after the voluminous fact discovery conducted to date because they were unable to depose percipient witnesses, but rather seeks an exhaustive compilation of all facts and documents the US Debtors may rely upon in support of their own allocation arguments as well as facts and documents the US Debtors may use to counter facts and arguments that the Monitor and Canadian Debtors have raised or may attempt to prove at trial, including without limitation historical conduct of the Nortel entities with respect to intellectual property and products.

41. Under the Litigation Timetable to which the parties agreed, the US Debtors (like all parties) have until shortly before trial to review the extensive record and ascertain which documents and testimony they believe support their position. The Monitor and Canadian Debtors, however, seek to overturn entirely the carefully negotiated schedule and accelerate from April/May to January or February the duty of the US Debtors (and other Core Parties) to put their "pens down" nearly four months before trial and finalize and specifically and exhaustively identify the factual evidence upon which they may rely with respect to the broadly described subjects at trial. It would be extremely onerous and simply unworkable for the parties, in such a short time-frame, to exhaustively identify each document and other facts based on the millions of pages of documents produced and facts gathered at the over 100 deposition taken over the last few months.

42. During the negotiations regarding the Allocation Protocol, the Monitor and Canadian Debtors never suggested that they would seek to use Representative Depositions as a means to obtain the US Debtors', or any other Core Party's, trial work product or to force the US Debtors, or any other Core Party, to distill from produced documents and deposition transcripts the facts they intend to rely on at trial months before trial is scheduled to commence and months before agreed-upon procedures would require the disclosure of direct testimony affidavits and pre-trial designation of exhibits and deposition testimony that parties intend to rely on at trial. Not only was this strategy not part of the discussion relating to Representative Depositions, it is improper as it would require the US Debtors (and other Core Parties) to disclose not merely facts about a specific transaction or event, but the US Debtors' privileged and work product analysis of those facts, the testimony obtained and the relevance of such information to the issues in dispute.

43. If it was accepted or is imposed notwithstanding that the Monitor and Canadian Debtors have never filed their own motion or sought relief from the Litigation Timetable, Discovery Protocol or Deposition Protocol to make any such alteration (and, to the contrary, advised our co-counsel last week that they did not intend to seek any affirmative relief from the Courts), the Monitor and Canadian Debtors' new proposal would place an even more severe burden on the US Debtors than the Representative

Deposition procedure set forth in the Allocation Protocol (if not amended) for an additional reason. To the extent Representative Depositions were permitted under the existing procedures (which the US Debtors contend have been rendered unnecessary and no longer appropriate), the existing Representative Depositions procedure would permit the parties to answer the questions by way of undertaking 60 days after the depositions took place and would also permit the parties to object to improper questions. The new Monitor and Canadian Debtor proposal would require the US Debtors to consent to examinations on topics to which the US Debtors have already objected as overly broad and unduly burdensome, would dispense with any motion practice on those objections and would instead require that any written responses to the questions be provided by January 17, 2014, less than one month after such topics were proposed by the Monitor and Canadian Debtors (without accounting for the holidays during this period). Even were this extended by a month or so, the proposed deadline for "pens down" would be impossible.

44. The US Debtors have produced a substantial volume of documents, provided numerous witnesses for deposition competent to testify to all relevant matters and will be providing appropriate pre-trial submissions, including witness affidavits, prior to trial. The Monitor and the Canadian Debtors have not offered any basis for their new proposal which increases, rather than decreases, the burden of Representative Depositions. Instead, Representative Depositions should be dispensed with entirely because they have been rendered unnecessary as a result of the exhaustive factual discovery that has already occurred.

**SWORN** before me at the City of New York in the State of New York, this _____ day of _____, _____.

_____
A Commissioner for taking affidavits.

_____
JEFFREY A. ROSENTHAL

- 14 -

This is Exhibit "A" referred to
in the affidavit of JEFFREY A.
ROSENTHAL, sworn before me,
this

_____.


_____
A commissioner, etc.

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS · LONDON · MOSCOW

FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG

BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

Writer's Direct Dial: +1 212 225 2025
E-Mail: mdecker@cgsh.com

December 13, 2013

<u>VIA EMAIL TO THE CORE PARTIES SERVICE LIST</u>

Re:  In re Nortel Networks Inc., et al., Case No. 09-10138
<u>Nortel Networks Corporation. et al.: Court File No 09-CL-7950</u>

To all Core Parties:

        Pursuant to the Deposition Protocol, we write on behalf of the U.S. Deposition Group to notify each Core Party as to specific topics on which the U.S. Debtors will conduct representative examinations of each Core Party listed below, to the extent such depositions occur.  In accordance with Section G(1)(c) of the Deposition Protocol, the U.S. Deposition Group is not limited in their examinations to the topics listed herein, but barring objection, the designated representatives have an obligation to be prepared to testify on the specified topics.

        As we have conveyed, it is our position that representative depositions are unnecessary, inappropriate and a waste of resources in light of the extensive discovery to date. While we identify topics to avoid any claim of waiver, this letter is served with an express reservation of all rights, including our right to seek judicial relief to modify the existing Deposition Protocol to eliminate representative depositions.

        Subject to the foregoing reservation of rights, the U.S. Interests hereby designate the following topics:

CLEARY GOTTLIEB STEEN & HAMILTON LLP OR AN AFFILIATED ENTITY HAS AN OFFICE IN EACH OF THE CITIES LISTED ABOVE.

[NEWYORK 2830407_5]

Core Parties Service List, p. 2

**Topics for Canadian Debtors Representative**

1) Statements made by Nortel Networks Limited ("NNL") or any affiliated entity or any employee, advisor or representative thereof (including, but not limited to, the Monitor, E&Y U.S. and E&Y Canada, Horst Frisch and Oslers) to any third party regarding the Master Research and Development Agreement ("MRDA"), transfer pricing, ownership (including with respect to economic, beneficial and/or legal ownership) of intellectual property or intellectual property license rights of any MRDA participant, including but not limited to, government authorities, including tax authorities, debt-rating agencies, underwriters, or any entity evaluating the credit-worthiness of NNL, and pre-petition and post-petition potential asset purchasers.

2) Third-party licensing by any Nortel entity of its intellectual property, including with respect to which Nortel entity had the right to and did engage in such licensing activity and which Nortel entity recognized revenue on royalty payments.

3) The practice of prosecuting or defending patents in litigation, including decisions with respect to which Nortel entities should participate and/or bear financial risk with respect to the litigation.

4) Internal valuations of Nortel intellectual property by estate, by business line in whole or in part and the methods used in such valuations, whether conducted by third parties or by Nortel personnel.

**Topics for CCC Representative**

1) The identity of constituent creditor groups of the CCC, the financial condition of each, including specifically but not limited to recent financial audits and reports and the legal relationship between any Nortel entity to each such creditor group.

2) Any alleged confusion by creditors of a Nortel entity as to which Nortel entity was the debtor.

3) The justification for listing in response to Interrogatory Number 42 each transaction, arrangement and event identified therein and how each such transaction, arrangement and event supports the CCC's Allocation Position.

4) Subjects identified in interrogatories for which the CCC responded that an answer could not be provided because the parties were in the "early stage in the discovery process."

Core Parties Service List, p. 3

## **Topics for Wilmington Trust Representative**

1) The terms of the Indenture dated November 30, 1988 between NNL and the Bank of New York Mellon ("Indenture") and the expected financial result to note holders under different allocation scenarios.

2) Any alleged confusion by creditors of a Nortel entity as to which Nortel entity was the debtor.

3) The understanding of Wilmington Trust or its predecessors regarding liability of any Nortel entity under the Indenture beyond the terms of the Indenture and any communications regarding same.

In addition, all party representatives should be prepared to address any topic, as applicable to that party, designated by that party to representatives of any of the U.S. Interests.

We look forward to continuing to discuss the scope and necessity of these examinations, including the possibility of foregoing live examinations in favor of an efficient written exchange with any of the core parties above.

Best regards,

/ Marla A. Decker /

Marla A.  Decker

[NEWYORK 2830407_5]

This is Exhibit "B" referred to
in the affidavit of JEFFREY A.
ROSENTHAL, sworn before me,
this

_____.


_____
A commissioner, etc.



Hughes
Hubbard

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

December 13, 2013

**VIA EMAIL TO ALL CORE PARTIES**

Re:  *In re Nortel Networks Inc. et al.*, Case No. 09-10138 (KG) (Bankr. D. Del.)

   *In the Matter of Nortel Networks Corporation et al.*, Court File No. 09-CL-7950 (Ontario Superior Court of Justice)

Dear Counsel,

         As we have previously advised, the Joint Administrators[1] and U.K. Pension Claimants believe that, given the more than 100 fact witness depositions that the parties have taken to date and the millions of documents that the parties have produced, representative witness examinations are unnecessary and cannot be justified in light of the substantial additional expenses and other resources that would be required to prepare for them, conduct them, and comply with the resulting undertakings.  Subject and without prejudice to this position, to preserve their rights in the event that representative witness examinations go forward, the Joint Administrators and U.K. Pension Claimants hereby give notice to the Canadian Debtors of the following subjects on which they would seek representative witness testimony.

         1.       The circumstances surrounding the partial repayment in or around February 2008 of the NNL-NNSA subordinated loan.

         2.       The circumstances surrounding the negotiation and drafting of the Insolvency Guarantee dated December 21, 2007 and provided by NNL to the Nortel Networks UK Pension Trust Limited, including the exclusion of administration from the definition of "Insolvency Event" within that document.

         3.       The conception, proposal, negotiation, and documentation of the Third Addendum to the MRDA and Schedule A thereto.

---

1.   Unless otherwise indicated, capitalized terms used herein shall have the same meaning as in the Joint Administrators' and U.K. Pension Claimants' Rule 30(b)(6) Deposition Notices dated July 26, 2013.

New York   ■   Washington, D.C.   ■   Los Angeles   ■   Miami   ■   Jersey City   ■   Kansas City   ■   Paris   ■   Tokyo

4.    The negotiation, reporting, and purported application to the EMEA Entities of the settlement(s) between Nortel and the Internal Revenue Service and Canada Revenue Agency that resulted in a $2 billion adjustment in favor of NNI in or around January 2010.

5.    Post-petition models for valuing or assessing the potential revenues from (a) the intellectual property assets sold in the Residual Patents Sale or any portion thereof, or (b) a Residual IP Co., which were prepared by, with, or at the request of Nortel, the Global IP Law Group, or Lazard.

\*\*\*

The Joint Administrators and U.K. Pension Claimants reserve all rights, including with respect to the appropriate scope and use of any representative witness examinations that are ultimately conducted.

Sincerely,

/s/ Neil J. Oxford

2

This is Exhibit "C" referred to
in the affidavit of JEFFREY A.
ROSENTHAL, sworn before me,
this

_____.


_____
A commissioner, etc.