any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 2:**

The facts and documents, other than the MRDA, demonstrating the ownership interests that the US Debtors allegedly had in any of the intellectual property sold in the line of business sales and in the Rockstar transaction.

**Response to US Debtors' Subject No. 2:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) seeks information that is outside the possession, custody or control of the Bondholder Group; (ii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

Subject to and without waiving the foregoing General and Specific Objections, the Bondholder Group is willing to meet and confer regarding the scope and form of its response, if any, to US Debtors' Subject No. 2.

**US Debtors' Subject No. 3:**

The factual and documentary basis for and scope of the alleged beneficial/equitable interest in Nortel's intellectual property held by parties other than NNL.

**Response to US Debtors' Subject No. 3:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) seeks information that is outside the

6

possession, custody or control of the Bondholder Group; (ii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

Subject to and without waiving the foregoing General and Specific Objections, the Bondholder Group is willing to meet and confer regarding the scope and form of its response, if any, to US Debtors' Subject No. 3.

**US Debtors' Subject No. 4**:

The factual and documentary basis for and scope of licenses of Nortel's intellectual property, including any enhanced licences [sic], held by parties other than NNL.

**Response to US Debtors' Subject No. 4**:

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous insofar as it refers to "licenses of Nortel's intellectual property, including any enhanced licenses" without greater specificity; (ii) seeks information that is outside the possession, custody or control of the Bondholder Group; (iii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily obtained from other sources; (iv) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (v) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 5:**

   The past practices of NNL and its subsidiaries concerning the scope of the licenses to Nortel intellectual property under the Cost-Sharing Agreements and the MRDA.

**Response to US Debtors' Subject No. 5:**

   In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous insofar as it refers to "[t]he past practices of NNL and its subsidiaries"; (ii) seeks discovery that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence relating to the Allocation dispute; (iii) seeks information that is outside the possession, custody or control of the Bondholder Group; (iv) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily obtained from other sources; (v) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (vi) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 6:**

   The factual and documentary basis, other than the MRDA, demonstrating that the Licensed MRDA Participants' agreement to have the patents and all other registered forms of Nortel IP filed in NNL's name and to share the cost of global R&D through transfer pricing payments was in exchange for enhanced exclusive licenses that constituted effective ownership of the IP in their respective jurisdictions, including the factual and documentary basis for demonstrating that this choice was a conscious decision.

**Response to US Debtors' Subject No. 6:**

   In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) seeks information that is outside the

possession, custody or control of the Bondholder Group; (ii) is duplicative, overly broad and

unduly burdensome to the extent that it seeks information that may be more easily obtained from

other sources; (iii) seeks information protected from discovery by the attorney-client privilege,

the attorney work product doctrine, common interest privilege or any other applicable privilege

or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 7:**

> The factual and documentary basis, other than the MRDA, demonstrating that the

Licensed MRDA Participants' agreement to have the patents and all other registered forms of

Nortel IP filed in NNL's name and to share the cost of global R&D through transfer pricing

payments was in exchange for enhanced exclusive licenses that constituted effective ownership

of the IP in their respective jurisdictions, including the factual and documentary basis for

demonstrating that this choice was a conscious decision.

**Response to US Debtors' Subject No. 7:**

> In addition to the foregoing General Objections, the Bondholder Group

specifically objects to this Subject on grounds that it: (i) is duplicative of Subject No. 6; (ii) seeks

information that is outside the possession, custody or control of the Bondholder Group; (iii) is

duplicative, overly broad and unduly burdensome to the extent that it seeks information that may

be more easily and appropriately obtained from other sources; (iv) seeks information protected

from discovery by the attorney-client privilege, the attorney work product doctrine, common

interest privilege or any other applicable privilege or protection; and (v) violates Section G(1)(a)

and principles of proportionality in discovery.

**US Debtors' Subject No. 8:**

      The facts and documents demonstrating the reasons why it was decided that NNL would be the registered owner of all of the NN Technology (as that term is defined in the MRDA).

**Response to US Debtors' Subject No. 8:**

      In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) seeks information that is outside the possession, custody or control of the Bondholder Group; (ii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 9:**

      The facts and documents demonstrating how and to what extent intellectual property was assigned to NNL by NNL's subsidiaries, inventors/authors and others.

**Response to US Debtors' Subject No. 9:**

      In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous insofar as it refers to "intellectual property" without greater specificity; (ii) is vague and ambiguous insofar as it refers to "NNL's subsidiaries" without greater specificity; (iii) is vague and ambiguous insofar as it refers to "inventors/authors and others"; (iv) seeks information that is outside the possession, custody or control of the Bondholder Group; (v) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and

appropriately obtained from other sources; (vi) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (vii) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 10:**

      The facts and documents demonstrating Nortel's processes for the identification and development of products, including as they varied over time before and after January 14, 2009.

**Response to US Debtors' Subject No. 10:**

      In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous insofar as it refers to "Nortel's processes for the identification and development of products"; (ii) seeks discovery that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence relating to the Allocation dispute; (iii) seeks information that is outside the possession, custody or control of the Bondholder Group; (iv) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources; (v) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (vi) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 11:**

      The scope and use of third-party products and components used or embodied in Nortel products and the marketing of third party Original Equipment Manufacturer products by Nortel.

**Response to US Debtors' Subject No. 11:**

In addition to the foregoing General Objections, the Bondholder Group

specifically objects to this Subject on grounds that it: (i) is vague and ambiguous insofar as it

refers to "third-party products and components"; (ii) seeks discovery that is neither relevant to

the claims or defenses of any party nor reasonably calculated to lead to the discovery of

admissible evidence relating to the Allocation dispute; (iii) seeks information that is outside the

possession, custody or control of the Bondholder Group; (iv) is duplicative, overly broad and

unduly burdensome to the extent that it seeks information that may be more easily and

appropriately obtained from other sources; (v) seeks information protected from discovery by the

attorney-client privilege, the attorney work product doctrine, common interest privilege or any

other applicable privilege or protection; and (vi) violates Section G(1)(a) and principles of

proportionality in discovery.

**US Debtors' Subject No. 12:**

At the time each of the lines of business were sold and when the Rockstar

transaction closed, the value, including the dollar value, of the US Debtors' alleged interest in the

Nortel global patent portfolio and the factual bases for those values.

**Response to US Debtors' Subject No. 12:**

In addition to the foregoing General Objections, the Bondholder Group

specifically objects to this Subject on grounds that it: (i) seeks information that is more

appropriately obtained through expert testimony; (ii) is vague and ambiguous insofar as it refers

to "the Nortel global patent portfolio" without greater specificity; (iii) seeks information that is

outside the possession, custody or control of the Bondholder Group; (iv) is duplicative, overly

broad and unduly burdensome to the extent that it seeks information that may be more easily and

appropriately obtained from other sources, including without limitation the US Debtors; (v)

seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (vi) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 13:**

The facts and documents underlying the contention of the US Debtors that they could have generated value from the intellectual property sold in the Rockstar transaction in the absence of a sale of that intellectual property.

**Response to US Debtors' Subject No. 13:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous; (ii) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation information regarding the contentions of the US Debtors in their allocation pleadings; (iii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iv) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (v) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 14:**

The value the US Debtors attribute to intangible assets other than intellectual property sold as part of each of the line of business sales and the Rockstar transaction, including without limitation goodwill and customer relationships, and all factual bases for those values.

**Response to US Debtors' Subject No. 14:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) vague and ambiguous insofar as it refers to "intangible assets other than intellectual property"; (ii) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation values attributed by the US Debtors to assets sold in the line of business sales and the Rockstar transaction; (iii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iv) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (v) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 15:**

The value the US Debtors attribute to tangible assets sold as part of each of the line of business sales and the factual bases supporting those values.

**Response to US Debtors' Subject No. 15:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation values attributed by the US Debtors to assets sold in the line of business sales; (ii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work

product doctrine, common interest privilege or any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 16:**

The US Debtors' position on what amounts should be allocated to each of the estates in respect of the sales of tangible assets and on what factual basis.

**Response to US Debtors' Subject No. 16:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation information regarding the positions of the US Debtors; (ii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 17:**

The facts and documents evidencing: (1) the $7.2 billion NNI contends it paid between 2001 and 2009 for directly funded research and development; (2) the amounts that NNL, NN Ireland, NNUK, and NNSA paid for direct funding of research and development from 2001 and 2009; (3) the amounts that NNI contends were paid by NNL to NN Ireland, NNUK, and NNSA in the form of transfer pricing adjustment payments to fund research and development by Nortel group entities; and (4) the amounts that NNI contends were paid in transfer pricing adjustments under the Nortel transfer pricing model between 2001 and 2009.

**Response to US Debtors' Subject No. 17**:

        In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation information regarding any contentions made by NNI; (ii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 18**:

        The facts and documents supporting the US Debtors' position that without the backing of NNI's balance sheet the Nortel Group's access to credit markets would not have been possible or would have been greatly reduced.

**Response to US Debtors' Subject No. 18**:

        In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous insofar as it refers to "the Nortel Group's access to credit markets"; (ii) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation information regarding the positions of the US Debtors; (iii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iv) seeks information protected from discovery by the attorney-client privilege, the attorney work

product doctrine, common interest privilege or any other applicable privilege or protection; and (v) violates Section G(1)(a) and  principles of proportionality in discovery.

**US Debtors' Subject No. 19:**

   The facts and documents supporting the US Debtors' position that without access to the pre-petition NNI revolving credit facility NNL would not have been able to operate.

**Response to US Debtors' Subject No. 19:**

   In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous insofar as it refers to "the pre-petition NNI revolving credit facility"; (ii) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation information regarding the positions of the US Debtors; (iii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iv) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (v) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 20:**

      The facts and documents demonstrating the US Debtors' recognition that the best way to maximize value for creditors was to sell the Nortel Group's rights, property and other assets together in each of the line of business sales and the Rockstar transaction instead of turning it into an intellectual property licensing business, including

    a.    the facts and documents demonstrating all efforts made to determine the US Debtors' ability, after January 14, 2009, to use a contract manufacturer to manufacture products embodying Nortel intellectual property.

    b.    the facts and documents demonstrating all efforts made to determine the feasibility of sublicensing NNI's license rights under the MRDA after January 14, 2009.

    c.    the facts and documents demonstrating all efforts undertaken by the US Debtors to determine the feasibility of forming a new reorganized company or corporate group to enforce the Nortel patents.

**Response to US Debtors' Subject No. 20:**

      In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation information regarding the "US Debtors' recognition" of the best way to maximize value for creditors; (ii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any

other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 21:**

The facts and documents demonstrating which Nortel entity paid for the prosecution and maintenance of the patents in Nortel's global patent portfolio, including but not limited to patents registered in the United States.

**Response to US Debtors' Subject No. 21:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous with respect to the meaning of the word "paid"; (ii) is vague and ambiguous insofar as it refers to "the Nortel global patent portfolio" without greater specificity; (iii) seeks discovery that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence relating to the Allocation dispute; (iv) seeks information that is outside the possession, custody or control of the Bondholder Group; (v) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources; (vi) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (vii) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 22:**

The facts and documents demonstrating when and under what circumstances the US Debtors came to the understanding that at the time of the Rockstar transaction the value of the US Debtors' rights with respect to Nortel's intellectual property had changed.

19

**Response to US Debtors' Subject No. 22:**

        In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous; (ii) seeks discovery that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence relating to the Allocation dispute; (iii) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation information regarding the understanding of the US Debtors; (iv) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (v) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (vi) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 23:**

        The facts and documents related to the US Debtors [sic] understanding that the sale processes put in place to dispose of the Nortel Group's assets would not succeed if a selling party could hold up a sale pending agreement on the allocation of sale proceeds.

**Response to US Debtors' Subject No. 23:**

        In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous; (ii) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation information regarding the understanding of the US Debtors; (iii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iv) seeks information protected from discovery by the attorney-client privilege, the

attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (v) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 24:**

The facts and documents upon which the US Debtors rely upon to assert that the Monitor and Canadian Debtors are estopped or should not otherwise be permitted to assert entitlement to all of the proceeds of the Rockstar transaction.

**Response to US Debtors' Subject No. 24:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) seeks information that is outside the possession, custody or control of the Bondholder Group, including without limitation information regarding the assertions of the US Debtors; (ii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 25:**

The facts and documents demonstrating the estimated gross and net assets of the Estate available for distribution to creditors, without recourse to the allocation proceeds, and the best estimate of valid claims (by creditor category) against the Estate, excluding inter-company claims.

**Response to US Debtors' Subject No. 25:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) seeks information that is outside the

possession, custody or control of the Bondholder Group; (ii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources, including without limitation the US Debtors; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 26:**

The facts and documents demonstrating Funds and other financial accommodations, including, without limitation, lines of credit and guarantees, received by the Estate from NNL/NNC from January 1, 2000 to present and how such receipts were characterized and booked by the Estate.

**Response to US Debtors' Subject No. 26:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous because it uses the term "Funds," which has not been defined; (ii) seeks information that is outside the possession, custody or control of the Bondholder Group; (iii) is duplicative, overly broad and unduly burdensome to the extent that it seeks information that may be more easily and appropriately obtained from other sources; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

**US Debtors' Subject No. 27:**

The facts and documents that relate to any other topics designated by any other parties for this witness.

**Response to US Debtors' Subject No. 27:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous; and (ii) is overly broad, unduly burdensome, unduly prejudicial, and violates Section G(1)(a) and principles of proportionality in discovery.

Subject to and without waiving the foregoing General and Specific Objections, the Bondholder Group fully reserves its rights to incorporate herein any objections to any topics or subjects designated by any other party for any witness of the Bondholder Group.

**Subject No. 2:**

The terms of the Nortel Bonds, including the guarantees of the Bonds and the enforceability of such guarantees.

**Response to Subject No. 2:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous because it uses the terms "Nortel Bonds" and "Bonds," which have not been defined; (ii) seeks discovery that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence relating to the Allocation dispute; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; (iv) violates Section G(1)(a) and principles of proportionality in discovery; (v) seeks discovery that calls for a legal conclusion; and (vi) seeks discovery that is duplicative of the information contained in the bonds issued by Nortel and any guarantees thereof.

**Subject No. 3:**

The expectations of the Bondholder Group with respect to any guarantees to proceeds from the line of business sales and Rockstar transaction, and to the Nortel assets available to satisfy creditors, and the Bondholder Group's expectations of priority relative to other creditors in each of the US and Canadian Estates.

**Response to Subject No. 3:**

In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) lacks foundation and assumes facts not in evidence; (ii) seeks discovery that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence relating to the Allocation dispute; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; and (iv) violates Section G(1)(a) and principles of proportionality in discovery.

Subject to and without waiving the foregoing General and Specific Objections, the Bondholder Group is willing to meet and confer regarding the scope and form of its response, if any, to Subject No. 3.

**Subject No. 4:**

The Claims asserted by the Ad Hoc Group of Bondholders in In re Nortel Networks Inc. et al, case No. 09-10138 (KG) (jointly administered), including but not limited to the subjects addressed in any Bankruptcy Rule 2019 Statements regarding membership of the Bondholder Group and member holdings of the bonds, and the current facts respecting such subjects as of the deposition of the Bondholder Group representative witness.

**Response to Subject No. 4:**

> In addition to the foregoing General Objections, the Bondholder Group specifically objects to this Subject on grounds that it: (i) is vague and ambiguous insofar as it refers to "the current facts respecting such subjects"; (ii) seeks discovery that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence relating to the Allocation dispute; (iii) seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or protection; (iv) violates Section G(1)(a) and principles of proportionality in discovery; and (v) seeks discovery that is duplicative of the Bondholder Group's Bankruptcy Rule 2019 Statements.

Dated:  December 18, 2013

**MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP**

/s/ Andrew M. Leblanc
Dennis F. Dunne
Albert A. Pisa
Andrew M. Leblanc
Atara Miller
1 Chase Manhattan Plaza
New York, New York 10005-1413
Telephone:  (212) 530-5000

Thomas R. Kreller
601 S. Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4463

 -and-

**BENNETT JONES LLP**
Richard B. Swan
Gavin H. Finlayson
3400 One First Canadian Place, P.O. Box 130
Toronto, Ontario, M5X 1A4
Telephone:  (416) 777-5762

***Attorneys for the Ad Hoc Group of Bondholders***

This is Exhibit "G" referred to
in the affidavit of JEFFREY A.
ROSENTHAL, sworn before me,
this

_____.


_____
A commissioner, etc.



**Abid Qureshi**
+1 212.872.8027/fax: +1 212.872.1002
aqureshi@akingump.com

December 18, 2013

VIA E-MAIL

Peter Ruby
Goodmans LLP
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto M5H 2S7

> Re:   In re Nortel Networks Inc., et al., Case No. 09-10138
>         Nortel Networks Corporation, et al., Court File No. 09-CL7950

Dear Peter:

On behalf of the Official Committee of Unsecured Creditors of the US Debtors ("UCC"), we write in response to the representative witness topics noticed on December 13, 2013 (as amended on December 15, 2013) for testimony from the UCC.  As we have previously informed you, we believe that representative witness depositions are entirely unnecessary given the very extensive discovery process that, over the past four months, has resulted in well over 100 fact depositions. Moreover, the agreed Discovery Plan provides that a Deposition Group may serve representative party deposition notices only on "**a very limited number of subjects on which it believes no fact witness currently or formerly associated with the party producing the Representative Witness has provided adequate first-hand testimony**".  The Monitor and Canadian Debtors have not adhered to this restriction in our negotiated Discovery Plan, and instead have adopted a scattershot approach that is inappropriate.

Furthermore, as you know, the UCC came into existence post-petition, pursuant to the U.S. Bankruptcy Code, and therefore cannot put forth a percipient witness to events that took place prior to January 22, 2009.  Additionally, a number of the noticed representative witness topics concern matters that are properly the subject of expert reports and expert testimony, disclosure of which is already provided for in our amended litigation schedule.  Finally, many of the proposed topics call for testimony on matters that are clearly protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine and thus inappropriate for representative witness testimony.



**Akin Gump**
STRAUSS HAUER & FELD LLP

Peter Ruby
Goodmans LLP
December 18, 2013
Page 2

In light of the foregoing, the UCC does not believe it is necessary or appropriate to designate a person who will sit for a representative witness deposition. We are, of course, available to meet and confer on this matter and will participate in the call that is scheduled for tomorrow.

Sincerely,

Abid Qureshi

cc: all Core Parties

This is Exhibit "H" referred to
in the affidavit of JEFFREY A.
ROSENTHAL, sworn before me,
this

_____.



_____
A commissioner, etc.

ALLEN & OVERY

Allen & Overy LLP
1221 Avenue of the Americas
New York  NY  10020

Marla A. Decker
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY  10006-1470

| | |
|---|---|
| Tel | 212 610 6300 |
| Fax | 212 610 6399 |
| Direct line | 212 610 6414 |
| Personal fax | 212 610 6399 |

paul.keller@allenovery.com

Our ref          /0017242-0000008 NY:18434047.1

December 18, 2013

*In re Nortel Networks Inc., et al., Case No. 09-1-138*
*Nortel Networks Corporation, et al.:  Court File No. 09-CL-7950*

Re:     Objections to the Representative Topics Served on the Candadian
         Deposition Group by the US Deposition Group

Dear Ms. Decker:

Below please find the Canadian Debtors and the Monitor's objections to the representative topics served by the US Deposition Group.

**Topic No. 1:  Statements made by Nortel Networks Limited ("NNL") or any affiliated entity or any employee, advisor or representative thereof (including, but not limited to, the Monitor, E&Y U.S. and E&Y Canada, Horst Frisch and Oslers) to any third party regarding the Master Research and Development Agreement ("MRDA"), transfer pricing, ownership (including with respect to economic, beneficial and/or legal ownership) of intellectual property or intellectual property license rights of any MRDA participant, including but not limited to, government authorities, including tax authorities, debt-rating agencies, underwriters, or any entity evaluating the credit-worthiness of NNL, and prepetition and post-petition potential asset purchasers.**

**RESPONSE TO TOPIC 1:**

The Canadian Debtors and the Monitor object to this topic to the extent it seeks information protected from

disclosure by the attorney-client privilege, work product immunity, as well as other applicable privileges and

immunities.  The Canadian Debtors and the Monitor further object to the extent it seeks information concerning

"affiliated entities" and "any employee, advisor or representative" over which neither the Canadian Debtors or

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales. Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practise in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office. One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.

Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Athens, Bangkok, Beijing, Belfast, Bratislava, Brussels, Bucharest (associated office), Budapest, Casablanca, Doha, Dubai, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), London, Luxembourg, Madrid, Mannheim, Milan, Moscow, Munich, New York, Paris, Perth, Prague, Riyadh (associated office), Rome, São Paulo, Shanghai, Singapore, Sydney, Tokyo, Warsaw and Washington, D.C.

the Monitor have any custody or control.  The Canadian Debtors and the Monitor further object to this topic to the extent it seeks information that is not reasonably available to them, and thus is unduly burdensome.  The Canadian Debtors and the Monitor further object to the extent it seeks to obligate them to review and analyze materials that have not otherwise been produced in these proceedings.  The Canadian Debtors and the Monitor further object to the extent it seeks information concerning the broad categories of the "MRDA" and "transfer pricing", which cover a nine year time period, as well as information from four other third-parties.  The Canadian Debtors and the Monitor object to the extent this topic seeks information beyond the information maintained by the Canadian Debtors and the Monitor with respect to statements made by them concerning ownership of intellectual property or intellectual property license rights.

**Topic No. 2:  Third-party licensing by any Nortel entity of its intellectual property, including with respect to which Nortel entity had the right to and did engage in such licensing activity and which Nortel entity recognized revenue on royalty payments.**

**RESPONSE TO TOPIC 2:**

The Canadian Debtors and the Monitor object to this topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product immunity, as well as other applicable privileges and immunities.  The Canadian Debtors and the Monitor further object to this topic to the extent it seeks information that is not reasonably available to them, and thus is unduly burdensome.  The Canadian Debtors and the Monitor further object to the extent it seeks to obligate them to review and analyze materials that have not otherwise been produced in these proceedings.  The Canadian Debtors and the Monitor further object to this topic as overly broad and ambiguous to the extent it seeks information concerning every license of intellectual property and to the extent it seeks information relating to Commercial Licenses as described in the Rockstar Agreement or licenses of intellectual property other than patents.

**Topic No. 3:  The practice of prosecuting or defending patents in litigation, including decisions with respect to which Nortel entities should participate and/or bear financial risk with respect to the litigation.**

**RESPONSE TO TOPIC 3:**

The Canadian Debtors and the Monitor object to this topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product immunity, as well as other applicable privileges and immunities. The Canadian Debtors and the Monitor further object to the extent it seeks to obligate them to review and analyze materials that have not otherwise been produced in these proceedings.

**Topic No. 4: Internal valuations of Nortel intellectual property by estate, by business line in whole or in part and the methods used in such valuations, whether conducted by third parties or by Nortel personnel.**

**RESPONSE TO TOPIC 4:**

The Canadian Debtors and the Monitor object to this topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product immunity, as well as other applicable privileges and immunities. The Canadian Debtors and the Monitor further object to this topic to the extent it seeks expert discovery prior to Court ordered date for such disclosures. The Canadian Debtors and the Monitor further object to this topic to the extent it seeks information that is not reasonably available to them, and thus is unduly burdensome. The Canadian Debtors and the Monitor further object to the extent it seeks to obligate them to review and analyze materials that have not otherwise been produced in these proceedings. The Canadian Debtors and the Monitor further object to this topic as overly broad and ambiguous to the extent it seeks information concerning every divesture, acquisition or transaction.

*     *     *

Finally, the Canadian Debtors and the Monitor further object to the extent the US Debtors intend to seek information from the Canadian Debtors and the Monitor on topics and subject matter beyond the topics enumerated above.

Very truly yours,

**Paul B. Keller**
Partner

This is Exhibit "I" referred to
in the affidavit of JEFFREY A.
ROSENTHAL, sworn before me,
this

_____.


_____
A commissioner, etc.

# ALLEN & OVERY

December 18, 2013

Neil J. Oxford
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482

Allen & Overy LLP
1221 Avenue of the Americas
New York NY 10020

| | |
|---|---|
| Tel | 212 610 6300 |
| Fax | 212 610 6399 |
| Direct line | 212 610 6414 |
| Personal fax | 212 610 6399 |

paul.keller@allenovery.com

Our ref        /0017242-0000008 NY:18433045.1

*In re Nortel Networks Inc. et al., Case No. 09-10138 (KG) (Bankr. D. Del.)*

*In the Matter of Nortel Networks Corporation et al.,*
*Court File No. 09-CL-7950 (Ontario Superior Court of Justice*

Re:     **Objections to the Representative Topics Served on**
        **the Canadian Deposition Group by the Joint Administrators and the U.K. Pension Claimants**

Dear Mr. Oxford:

Below please find the Canadian Debtors and the Monitor's objections to the Representative Topics served by the Joint Administrators and the U.K. Pension Claimants.

**Topic No. 1.:  The circumstances surrounding the partial repayment in or around February 2008 of the NNL-NNSA subordinated loan.**

**RESPONSE TO TOPIC 1:**

The Canadian Debtors and the Monitor object to this topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product immunity, as well as other applicable privileges and immunities.  The Canadian Debtors and the Monitor further object to the extent that this information has been provided through the testimony of the witnesses deposed and the documents produced to date.  The Canadian Debtors and the Monitor further object to the extent it seeks to obligate them to review and analyze materials that have not otherwise been produced in these proceedings.

**Topic No. 2:  The circumstances surrounding the negotiation and drafting of the Insolvency Guarantee dated December 21, 2007 and provided by NNL to the Nortel Networks UK Pension Trust Limited, including the exclusion of administration from the definition of "Insolvency Event" within that document.**

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales. Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practise in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.

Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Athens, Bangkok, Beijing, Belfast, Bratislava, Brussels, Bucharest (associated office), Budapest, Casablanca, Doha, Dubai, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), London, Luxembourg, Madrid, Mannheim, Milan, Moscow, Munich, New York, Paris, Perth, Prague, Riyadh (associated office), Rome, São Paulo, Shanghai, Singapore, Sydney, Tokyo, Warsaw and Washington, D.C.

**RESPONSE TO TOPIC 2:**

The Canadian Debtors and the Monitor object to this topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product immunity, as well as other applicable privileges and immunities. The Canadian Debtors and the Monitor further object to the extent that this information has been provided through the testimony of the witnesses deposed and the documents produced to date. The Canadian Debtors and the Monitor further object to the extent it seeks to obligate them to review and analyze materials that have not otherwise been produced in these proceedings.

**Topic No. 3:  The conception, proposal, negotiation, and documentation of the Third Addendum to the MRDA and Schedule A thereto.**

**RESPONSE TO TOPIC 3:**

The Canadian Debtors and the Monitor object to this topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product immunity, as well as other applicable privileges and immunities. The Canadian Debtors and the Monitor further object to the extent that this information has been provided through the testimony of the witnesses deposed and the documents produced to date. The Canadian Debtors and the Monitor further object to this request to the extent it seeks information from either of them that is not in their possession, custody or control.  The Canadian Debtors and the Monitor further object to the extent it seeks to obligate them to review and analyze materials that have not otherwise been produced in these proceedings.

**Topic No. 4:  The negotiation, reporting, and purported application to the EMEA Entities of the settlement(s) between Nortel and the Internal Revenue Service and Canada Revenue Agency that resulted in a $2 billion adjustment in favor of NNI in or around January 2010.**

**RESPONSE TO TOPIC 4:**

The Canadian Debtors and the Monitor object to this topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product immunity, as well as other applicable privileges and immunities. The Canadian Debtors and the Monitor further object to the extent that this information has been provided through the testimony of the witnesses deposed and the documents produced to date. The Canadian Debtors and the Monitor further object to the extent it seeks to obligate them to review and analyze materials that have not otherwise been produced in these proceedings.

**Topic No. 5:  Post-petition models for valuing or assessing the potential revenues from (a) the intellectual property assets sold in the Residual Patents Sale or any portion thereof, or (b) a Residual IP Co., which were prepared by, with, or at the request of Nortel, the Global IP Law Group, or Lazard.\\**

**RESPONSE TO TOPIC 5:**

The Canadian Debtors and the Monitor object to this topic to the extent it seeks information protected from disclosure by the attorney-client privilege, work product immunity, as well as other applicable privileges and immunities.  The Canadian Debtors and the Monitor further object to the extent that this information has been provided through the testimony of the witnesses deposed and the documents produced to date.  The Canadian Debtors and the Monitor further object to this topic to the extent it seeks expert discovery prior to the Court ordered date for such disclosures.  The Canadian Debtors and the Monitor further object to the extent it seeks to obligate them to review and analyze materials that have not otherwise been produced in these proceedings.

Very truly yours,

**Paul B. Keller**
Partner

This is Exhibit "J" referred to
in the affidavit of JEFFREY A.
ROSENTHAL, sworn before me,
this

_____.



_____
A commissioner, etc.

Court File No.  09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

- and-

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------- X
                                                 :
In re                                            :      Chapter 11
                                                 :
Nortel Networks Inc., et al.,[1]                 :      Case No. 09-10138 (KG)
                                                 :
                        Debtors.                 :      Jointly Administered
                                                 :
                                                 :
                                                 :
----------------------------------------------------- X
```

**RESPONSES AND OBJECTIONS OF THE CCC TO THE**
**US DEPOSITION GROUP'S AND US DEBTORS'**
**TOPICS FOR CCC REPRESENTATIVE**

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

The Canadian Creditors Committee (the "CCC"), by and through its undersigned counsel and pursuant to, *inter alia,* the Deposition Protocol, submits these objections (the "Objections") to the US Deposition Group's and US Debtors' (collectively, the "US Group") December 13, 2013 Topics for CCC Representative (the "Topics"). The CCC reserves all rights.

## GENERAL OBJECTIONS

The following General Objections are incorporated into each of the CCC's Objections to the US Group's individual topics.

1.      The CCC objects to the Topics, to the extent they seek information that is in the possession, custody or control of the requesting party. The Canadian Debtors, US Debtors, and UK/EMEA Debtors (collectively, the "Nortel Debtors") conducted the liquidation of Nortel's assets via the sale of Nortel's lines of business, including the business units (the "Business Sales") and the sale of Nortel's remaining patent portfolio to Apple, RIM, Sony and Microsoft (the "Residual IP Sale"). The Nortel Debtors operated the Nortel Entities as going concerns including interacting with employees and creditors, conducted the post-filing bidding process and ultimate sales, maintain all related financial records, and possess license agreements and all other relevant contracts. It is therefore unreasonable for the US Group to seek this same information from the CCC, which, in any event, does not possess such information.

2.      The CCC objects to the Topics to the extent they seek information that was previously provided by a fact witness currently or formerly associated with the CCC.

3.      The CCC objects to the Topics to the extent they seek information from persons or entities other than the CCC.

4.      The CCC objects to the Topics to the extent that they are overly broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and to the extent that they are unreasonable un scope pursuant to the Deposition Protocol.

5.      The CCC objects to the Topics to the extent they seek information protected by the attorney-client privilege, the attorney work product doctrine, proprietary, financial or trade secret protections, the business strategies privilege, the right to privacy, confidentiality doctrines, any protective order, or any other privilege and/or immunity, and which is not subject to an appropriate protective order entered into by the parties and approved by the Court. The inadvertent disclosure of any protected or privileged information shall not operate as a waiver of any privileges or protections.

6.      The CCC objects to the Topics to the extent they attempt or purport to impose obligations beyond those imposed or authorized by the Federal Rules of Bankruptcy Procedure, the Local Rules for the United States Bankruptcy Court for the District of Delaware, or any other applicable rules, orders, or protocols.

7.      The CCC objects to the Topics to the extent they do not contain a reasonable time limitation, on the grounds that any such Topic is overbroad, unduly burdensome, oppressive, vague, and/or ambiguous.

8.      By providing a representative witness to testify regarding any of the Topics, the CCC does not admit the relevance or admissibility of any of the testimony provided but instead reserves the right to object to the relevance and admissibility of any such testimony.

9.      These General Objections will be deemed to be continuing throughout the responses that follow, whether or not expressly referred to therein. The stating of additional or other specific objections shall not constitute a waiver or limitation of these General Objections.

Subject to and without waiver of these General Objections, the CCC objects as follows:

## OBJECTIONS TO THE US GROUP'S
## TOPICS FOR CCC REPRESENTATIVE

TOPIC NO. 1  The identity of constituent creditor groups of the CCC, the financial

condition of each, including specifically but not limited to recent financial audits and reports and

the legal relationship between any Nortel entity to each such creditor group.

RESPONSE:

The CCC objects to this Topic.  (*See* General Objections 2, 4, 7).  Further, to the extent

the Topic seeks information regarding the "financial condition" of any CCC constituent, whether

of creditor groups or of an individual court-appointed representative, the CCC objects to the

Topic.  The CCC also objects to the terms "financial condition" and "legal relationship" as vague

and ambiguous.  Subject to and without waiving the foregoing Objections, the CCC will produce

a representative witness to testify regarding the identity of constituent creditor groups of the

CCC and the legal relationship between any Nortel entity to each such creditor group.

TOPIC NO. 2  Any alleged confusion by creditors of a Nortel entity as to which Nortel

entity was the debtor.

RESPONSE:

The CCC objects to this Topic.  (*See* General Objections 1, 2, 3, 4, 7).  The CCC further

objects to this Topic as vague and ambiguous.  To the extent the CCC has relevant information,

and subject to the foregoing Objections, the CCC will produce a representative witness to testify

regarding certain creditors' perception of Nortel as a single and indivisible entity, as alleged in

paragraphs 63, 64, 66, and 74 of its allocation position.

TOPIC NO. 3  The justification for listing in response to Interrogatory Number 42 each transaction, arrangement, and event identified therein and how each such transactions, arrangement and event supports the CCC Allocation Position.

RESPONSE:

The CCC objects to this Topic.  (*See* General Objections 1, 2, 4, 6).  The CCC further objects to this Topic as an improper request to supplement interrogatory responses via the representative witness process.  To the extent the CCC has a continuing obligation to supplement and/or update its interrogatory responses, it will do so at the appropriate time.

TOPIC NO. 4  Subjects identified in interrogatories for which the CCC responded that an answer could not be provided because the parties were in the "early stage in the discovery process."

RESPONSE:

The CCC objects to this Topic.  (*See* General Objections 1, 2, 4, 6).  The CCC further objects to this Topic as an improper request to supplement interrogatory responses via the representative witness process.  To the extent the CCC has a continuing obligation to supplement and/or update its interrogatory responses, it will do so at the appropriate time.

Dated: December 18, 2013

**CANADIAN CREDITORS COMMITTEE**

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, Ontario  M5H 3R3

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, Ontario  M5H 3E5

Mark Zigler
Susan Philpott
Ari Kaplan
Barbara Walancik

Email:    mzigler@kmlaw.ca
Tel:       416.595.2090
Fax:       416.204.2877

Email:    sphilpott@kmlaw.ca
Tel:       416.595.2104
Fax:       416.204.2882

Email:    akaplan@kmlaw.ca
Tel:       416.595.2087
Fax:       416.204.2875

Email:    bwalancik@kmlaw.ca
Tel:       416.542.6288
Fax:       416.204.2906

Lawyers for the Former Employees of Nortel
and LTD Beneficiaries

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Karen Jones
Tina Lie
Michelle Jackson

Email:    ken.rosenberg@paliareroland.com
Tel:       416.646.4304
Fax:       416.646.4301

Email:    max.starnino@paliareroland.com
Tel:       416.646.7431
Fax:       416.646.4301

Email:    lily.harmer@paliareroland.com
Tel:       416.646.4326
Fax:       416.646.4301

Email:    karen.jones@paliareroland.com
Tel:       416.646.4339
Fax:       416.646.4301

Email:    tina.lie@paliareroland.com
Tel:       416.646.4332
Fax:       416.646.4301

Email:    michelle.jackson@paliareroland.com
Tel:       416.646.7470
Fax:       416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, Ontario M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:  barry.wadsworth@caw.ca
        lewis.gottheil@caw.ca

Tel.:   416.495.3776
Fax:    416.495.3786

Lawyers for all active and retired Nortel
employees represented by the CAW-Canada


**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham
Ainslie Benedict

Email:  janice.payne@nelligan.ca
        steven.levitt@nelligan.ca
        christopher.rootham@nelligan.ca
        ainslie.benedict@nelligan.ca

Tel:    613.231.8245
Fax:    613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA
as at January 14, 2009


**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:  arthur.jacques@shibleyrighton.com
Tel:    416.214.5213
Fax:    416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :   416.214.5206
Fax :   416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee


**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Barbara J. Boake
James D. Gage
Elder C. Marques
Paul Steep
Byron Shaw

E-mail: bboake@mccarthy.ca
Tel:    416.601.7557
Fax:    416.868.0673

Email:  jgage@mccarthy.ca
Tel:    416.601.7539
Fax:    416.686.0673

Email:  emarques@mccarthy.ca
Tel:    416.601.7822
Fax:    416.686.0673

Email:  psteep@mccarthy.ca
Tel:    416.601.7998
Fax:    416.686.0673

Email:   bdshaw@mccarthy.ca
Tel:     416.601.8256
Fax:     416.686.0673

Lawyers for Morneau Shepell Limited

**DLA PIPER**
1201 N. Market Street
Suite 2100
Wilmington, Delaware 19801

Selinda A. Melnik
Richard Hans
Timothy Hoeffner
Farah Lisa Whitley-Sebti

Email:   selinda.melnik@dlapiper.com
Tel:     302.468.5650
Fax:     302.778.7914

Email:   richard.hans@dlapiper.com
Tel:     212.335.4530
Fax:     212.884.8730

Email:   timothy.hoeffner@dlapiper.com
Tel:     212.656.3341
Fax:     215.606.3341

Email:   farahlisa.sebti@dlapiper.com
Tel:     212.335.4829
Fax:     212.884.8529

U.S. Lawyers for the Canadian Creditors
Committee

This is Exhibit "K" referred to
in the affidavit of JEFFREY A.
ROSENTHAL, sworn before me,
this

_____.


_____
A commissioner, etc.

Representative Witness Subjects Served by the
Monitor and Canadian Debtors

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*, | Case No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |

- and –

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

**UKPC REPRESENTATIVE WITNESS SUBJECTS SERVED BY THE CANADIAN
ALLOCATION GROUP AND THE CANADIAN CLAIMS DEFENDANT GROUP**

**(December 19, 2013)**

1

Representative Witness Subjects Served by the
Monitor and Canadian Debtors

### Subjects for UKPC Representative Witness

**The Canadian Deposition Group provides notice that the above referenced party representative is expected to have informed him/herself of the relevant facts and documents known or available to that party, if any (through its existing or former employees, officers and directors as the case may be) relating to the following topics, which are not believed to have been fully canvassed with the fact deposition witnesses:[1]**

1. The facts and documents relating to the amount of each of the NNUK Pension Plan deficit and section 75 debt including but not limited to: (i) the basis of the calculation of each; (ii) the assumptions used in the calculation of each; (iii) the potential costs of annuitizing member's benefits; (iv) the information that the Trustee provided to its pension advisors and consultants to enable them to calculate the deficit and section 75 debt; and (v) the liabilities used in the calculation of the deficit and section 75 debt referable to (a) discretionary pension benefit increases awarded in the years 1995 and following, (b) deferred pensioners, (c) pensioners whose basic benefits are being paid in full, and (d) pensioners whose pensions have been reduced.

2. The facts and documents relating to the age and the amount of the benefit of pension plan members, before and after reduction.

3. The facts and documents relating to the quantum of the PPF claim.

4. The facts and documents relating to the UKPC's position that NNUK failed to follow a recommendation made by the NNUK Pension Plan's actuary in a manner that violated the Scheme's Trust Deed or Rules or any statute or other UK law or regulation or made a funding commitment that it failed to fulfill.

5. The facts and documents relating to the mortality assumptions proposed by Trustee and the Scheme's actuary for the March 31, 2008 actuarial valuation of the Scheme and the 2005 actuarial valuation of the Scheme.

6. The facts and documents relating to the UKPC's claim that NNUK is entitled to any or all of NNSA's assets as a result of Project Swift.

7. The facts and documents relating to the UKPC's claim that NNUK or Nortel Canada acted in bad faith, oppressively, or otherwise improperly during the negotiations that lead to the 2002, 2003 and 2004 funding contributions, the 2005 Interim Funding Agreement, the 2006 Long Term Funding or the negotiations regarding the 2008 actuarial valuation of the Scheme.

8. The facts and documents relating to the investment performance of the Scheme assets each year from 2002 through 2008, as a whole and by asset category.

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Joint Response Of The Monitor And Canadian Debtors To The Claims By The UK Pension Trustee and PPF re: UK Pension Scheme

Representative Witness Subjects Served by the
Monitor and Canadian Debtors

9.  The facts and documents relating to the UKPC's involvement in FSD proceedings before
    the Determinations Panel including, but not limited to: (i) all communications that the
    Trustee had with tPR; (ii) any work that the Trustee retained PwC to undertake with
    respect to the FSD proceedings; (iii) tPR's selection of June 30, 2008 as the Relevant
    Time; and (iv) any communications among any of the UKPC, PwC and the tPR with
    respect to seeking a contribution notice against Nortel Canada.

10. The facts and documents relating to the UKPC's claim that NNUK was insufficiently
    resourced as at the Relevant Time for purposes of the FSD.

11. The facts and documents relating to the UKPC's claim that it is reasonable to impose an
    FSD on Nortel Canada.

12. The facts and documents relating to the potential imposition of a Contribution Notice on
    Nortel Canada;

13. The facts and documents relating to the UKPC's claim that NNUK provided benefits to
    Nortel Canada whose value exceeded the benefits that Nortel Canada provided to NNUK;

14. The facts and documents relating to the UKPC's claim that the RPSM failed to
    adequately take into account NNUK's restructuring costs, pension obligations and the
    Reciprocal Agreement, and that such alleged failures had an adverse impact on the
    funding contributions made by NNUK to the Scheme or otherwise harmed the Scheme;.

15. The facts and documents relating to any documents or information provided by the
    Trustee to any experts that the Trustee or tPR retained to submit reports to the
    Determinations Panel in connection with the FSD proceedings including, but not limited
    to the reports of Ronald Bowie, Gary Squires and Brian Becker.

16. The facts and documents relating to the UKPC's claim that they have standing to
    commence this claim.

17. The facts and documents that disclose why the claims predicated on events that occurred
    more than two years before the proofs of claim were filed in the Canadian CCAA
    proceedings were not made within two years of these events.

6275522

This is Exhibit "L" referred to
in the affidavit of JEFFREY A.
ROSENTHAL, sworn before me,
this

_____.


_____
A commissioner, etc.

# Katten

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022-2585
212.940.8800 tel
212.940.8776 fax
www.kattenlaw.com

DAVID A. CRICHLOW
david.crichlow@kattenlaw.com
(212) 940-8941 direct
(212) 940-8776 fax

December 19, 2013

<u>Via Email</u>

Marla A. Decker, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006-1470

Re:    **In re: Nortel Networks Inc., et al., Case No. 09-10138**
       **Nortel Networks Corporation, et al.: Court File No. 09-CL7950**

Dear Marla:

On behalf of Wilmington Trust, we write in response to your letter of December 13 requesting a representative deposition of Wilmington Trust and designating certain topics for that deposition (the "Deposition Topics"). Thank you for agreeing to give us an extra day to respond with our designation and objections, while we attempted to resolve our differences about this process in advance of providing a witness designation.

The U.S. Debtors have stated that representative depositions in this matter are unnecessary, inappropriate and a waste of resources, in light of the extensive fact witness depositions that have been conducted to date. Nevertheless, in the event that the representative party depositions proceed despite the U.S. Debtors' objections, you requested a Wilmington Trust representative and set forth the proposed Deposition Topics. In light of Wilmington Trust's role as a post-petition, successor Indenture Trustee, and its specific answers to your prior interrogatories, we believe that a representative deposition of a Wilmington Trust designee would be unnecessary, and would result in a waste of time, effort and costs that you purportedly wish to avoid.

Separately, Wilmington Trust objects to the Deposition Topics on multiple grounds, including but not limited to the following: First, with respect to Topic 1, which requires a representative witness to discuss the terms and conditions of the relevant Indenture, the request is unnecessarily burdensome, as the Indenture is an integrated agreement, which speaks for itself, and the terms of which are not in controversy in the Allocation Proceeding. Second, Wilmington Trust also objects to Topics 1 and 3 to the extent they intend to elicit evidence regarding previous Trustees and their actions. We note that BNY Mellon was the Indenture Trustee at the relevant times, would be the best source for such evidence, and is a member of the Unsecured

Marla A. Decker, Esq.
December 19, 2013
Page 2


Creditors' Committee of the U.S. Estates. Finally, Wilmington Trust objects to Topic 2 to the extent that this topic has been, or will be, explored with other deponents of creditor entities during the Allocation Proceeding.

Subject to the foregoing, in the event the courts order Wilmington Trust to respond to the Deposition Topics, we would be willing to meet and confer regarding the appropriate subject matter and form of Wilmington Trust's responses. If Wilmington Trust is ultimately required to produce a witness for deposition, we would designate Steven Cimalore as our witness. Mr. Cimalore is available for deposition on Friday, January 17 in Wilmington, Delaware. This designation is made with full reservation of Wilmington Trust's rights, including our objections to a representative deposition of Wilmington Trust generally and the Deposition Topics specifically.

Very truly yours,

David A. Crichlow

DAC/vjb


cc:    All Core Parties

This is Exhibit "M" referred to
in the affidavit of JEFFREY A.
ROSENTHAL, sworn before me,
this

_____.


_____
A commissioner, etc.

# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Derek C. Abbott
302 351 9357
302 425 4664 Fax
dabbott@mnat.com

December 20, 2013

## VIA ELECTRONIC FILING AND
## HAND-DELIVERY

The Honorable Kevin Gross
United States Bankruptcy Court
for the District of Delaware
824 N. Market St., 6th Floor
Wilmington, DE 19801

Re: *In re: Nortel Networks Inc., et al.*, Case No. 09-10138 (KG)

Dear Judge Gross:

We write on behalf of the U.S. Debtors to request a joint hearing with the Canadian Court with respect to "representative witness" depositions in this litigation. For the reasons set forth below, the U.S. Debtors respectfully submit that given the comprehensive discovery that has occurred to date, representative witness depositions are unnecessary, and would impose undue expense on all of the Nortel Debtor estates with little to no corresponding benefit. It is our understanding that all of the Core Parties other than those in the Canadian Discovery Group agree that representative witness depositions should not proceed. We regret the need to send this letter, and have only done so after our numerous efforts to persuade counsel for the Canadian Monitor (including on separate calls yesterday morning, afternoon and night) have been unsuccessful.

By way of background, the original Discovery Protocol in this litigation contemplated fact depositions followed by representative witness depositions. The representative witness depositions were designed to be a hybrid of the Rule 30(b)(6) process in the United States and the traditional representative witness deposition procedure in Canada. Notably, this hybrid procedure was intended as a "clean up" process to enable the parties to obtain testimony on factual subjects as to which the percipient witnesses with first-hand knowledge were either unknown or unavailable for deposition.

The Honorable Kevin Gross
December 20, 2013
Page 2

It is our understanding that in typical Canadian litigation, fact witnesses are not commonly deposed and certainly not 100 of them;[1] instead, each party offers one representative to testify as to the party's position. Topics are not disclosed in advance and undertakings are common in which a party provides missing information in writing at a later date. Our Rule 30(b)(6) process, of course, entails the advance disclosure of specified topics and imposes a duty upon the witness to prepare to testify on such topics.

When the Discovery Protocol was negotiated, the parties faced the daunting task of deposing numerous former Nortel employees and other potential witnesses around the world within a narrow window of less than three months. The parties also knew that many of these witnesses were outside the subpoena power of the courts in the United States or Canada. If these witnesses did not appear voluntarily, the parties would then have to resort to the time consuming and burdensome process of obtaining letters rogatory. Given the time constraints and other logistical concerns, it appeared likely that the parties would be unable to obtain testimony from a substantial number of these witnesses. Accordingly, the parties envisioned that the representative witness deposition process would be a gap-filling measure in the event they were unable to obtain depositions from a significant number of these witnesses.

Remarkably, due to the collective efforts of all Core Parties, approximately 99% of all former Nortel employees, officers or directors and pension trustees that the Core Parties sought to depose ultimately testified. These witnesses included one of Nortel's former Chief Executive Officers, several Chief Financial Officers, and numerous Treasurers, general counsels, senior executives in the tax and treasury departments, present and former directors of various Nortel affiliates, senior intellectual property lawyers, merger & acquisition executives, pension trustees and many others, including two EMEA joint administrators, two representatives of the Canadian monitor, the U.S. principal officer and the French liquidator. In all, more than 100 witnesses were deposed in more than 15 cities on three continents in less than three months.

In the face of such wide-ranging deposition discovery of the witnesses with first-hand knowledge of the events underlying this litigation, it has become self-evident to nearly every Core Party that further depositions of party representatives to obtain their second-hand account – not based on personal knowledge – of facts is unnecessary and would be a tremendous waste of time and resources. There can be no doubt that the cost to all estates of proceeding with representative depositions (including preparation time, travel expenses and responding to undertakings) would be substantial.

Not only has deposition discovery of fact witnesses been extensive and complete, but any possible concern about the potential for a surprise witness at trial has been eliminated in

---

[1]    Indeed, when we posed the question to our Canadian colleagues from all of the Core Parties during a telephone conference yesterday, nobody could recall being involved in a Canadian litigation where that has ever occurred.

The Honorable Kevin Gross
December 20, 2013
Page 3

the Discovery Protocol.    The Protocol expressly required parties to identify potential trial witnesses at the outset and prohibits a party from calling any witness who has not been deposed.

As a result of the foregoing, we recently proposed to the other Core Parties eliminating the representative witness depositions so the parties could save millions of dollars in additional expenses and focus their resources on expert reports and trial preparation. The EMEA Debtors, UKP Pension Claimants, Official Committee of Unsecured Creditors and Ad Hoc Bondholders Group all readily agreed with our suggestion. Only the Canadian Discovery Group has refused to so agree.[2]

In several Monitor reports recently filed with the Canadian Court (including with respect to their own recent joint request for an extension of the trial date), the Canadian Monitor has expressed concerns about the expense of this litigation and its alleged desire to contain litigation costs. We are thus surprised that the Canadian Discovery Group alone will not agree to the sensible cost-saving measure of eliminating representative depositions given the extraordinary and extensive discovery that has occurred to date.

In the past, the U.S. Debtors have successfully spearheaded efforts to avoid the need to judicial intervention regarding discovery objections. For example, after the Canadian Discovery Group had served 747 document requests (compared to 248 by the U.S. Group and 211 by the EMEA Group), the U.S. Debtors took it upon themselves to draft, and persuade the other Core Parties to accept following lengthy negotiations, a set of 140 common requests in order to avoid significant motion practice.

Similarly, the Canadian Discovery Group served 158 interrogatories, compared to 97 for the EMEA and U.S. Groups combined. As with the document requests, the U.S. Debtors undertook significant time and expense to draft a consolidated set of interrogatories (which resulted in a negotiated set of 54) so as to avoid the need to burden the Courts with motions.

Unfortunately, this time we are unable to persuade the Canadian Discovery Group to agree to sensible restraints on the discovery process. Last Friday, the parties exchanged topics on which they desired the representative witnesses to prepare in advance of their depositions. While the U.S. Discovery Group and the EMEA Discovery Group served 2 ½-page and 1 ½ - page letters, respectively, with an aggregate total of 16 topics to all other parties combined (with an express reservation of rights to move the Courts to eliminate representative depositions), the

---

[2]    We recognize that the parties' request to extend the trial filed on November 14, 2013 contemplated representative witness depositions in January. However, since that date, 35 more witnesses have been deposed, thus making it clear to us (and, we believe, every Core Party other than those in the Canadian Discovery Group) that this would be an unnecessary and wasteful exercise.

The Honorable Kevin Gross
December 20, 2013
Page 4

Canadian Discovery Group served a pleading with 92 pages of topics.[3]  These documents are annexed.

      The Canadian Discovery Group's 92 pages of topics include 27 all-encompassing subjects specifically directed to the U.S. Debtors. They are extraordinarily overbroad and unduly burdensome.  Whereas the U.S. Discovery Group (without prejudice to its position that no representative depositions were needed) identified four specific topics directed to the Canadian Debtors – consisting specifically of "[s]tatements made… to any third party" regarding certain subjects, "[t]hird-party licensing," "[t]he practice of prosecuting or defending patents in litigation" and "[i]nternal valuations of Nortel intellectual property" – the Canadian Discovery Group has demanded that the U.S. representative witness identify four months before trial the "factual and documentary basis" for nearly every U.S. allocation position and defense against the Canadian allocation position.  We invite Your Honor to peruse pages 2-5 of the attached Canadian pleading as, in our view, it seeks an inappropriate and enormously burdensome exercise.

      The extremely broad designation of 92 pages of topics by the Canadian Discovery Group seeking "any and all evidence" on every potential subject violates both the spirit (streamlining and narrowing discovery whenever possible) and the letter of the Discovery Protocol entered by the Courts.   Section G(1)(a) is unambiguous: "a Deposition group may serve a very limited number of subjects" and prohibits a party from designating "an unreasonable number of subjects relative to the time limitations for the examination, subjects of an impermissibly broad scope or subjects inappropriate for a Representative Deposition."   The Canadian Discovery Group's topic lists contravene all of these prohibitions.  They underscore why representative witness depositions are unnecessary, inappropriate and a waste of estate resources given all that has transpired in deposition discovery thus far.

      Further, the Canadian Debtors and Monitor have objected to each and every one of the four topics served by the U.S. Discovery Group (and also to each of the five topics served by the EMEA Discovery Group).  The Canadian Creditors Committee – which has likewise objected to every one of the four topics directed at it – has served an objection that highlights why the depositions sought by the Canadian Discovery Group is improper.  In the words of the CCC, some of the topics directed to it are "improper request[s] to supplement interrogatory responses via the representative witness process. To the extent the CCC has a continuing obligation to supplement and/or update its interrogatory responses, it will do so at the appropriate time." It is impossible to review the Canadian Group's topics and not reach the same conclusion

---

[3]    The Canadian Discovery Group was not finished.  After amending their requests Sunday to add several more topics, they served six more pages with 30 additional topics on one of the EMEA Debtors this past Tuesday.  Just yesterday, they served an additional set of 17 topics upon the U.K. Pension Claimants after asserting that they had been inadvertently omitted from their 92-page document last Friday.

The Honorable Kevin Gross
December 20, 2013
Page 5

drawn by the CCC itself. We annex hereto copies of the Canadian Monitor's and Debtors' and the CCC's respective responses, as they preview for the Courts what an objection-riddled, lawyer-driven exercise these depositions will be if they are permitted to proceed.

In requesting that the Canadian Discovery Group take a practical and cost-effective approach at this stage of the proceedings, we recognize that representative witness depositions are the norm in Canadian litigation, and that the parties did contemplate conducting such depositions here. Notwithstanding that, litigants – particularly in insolvency proceedings – have an ongoing obligation to continually assess at all stages the discovery obtained and the necessity of further discovery relative to its costs. Typical Canadian litigants do not have the opportunity to depose over 100 fact witnesses, and thus representative depositions serve as critical means to learn a party's factual contentions and the supporting evidence. Here, given the breadth of deposition discovery from the over 100 percipient witnesses themselves, it would be inappropriate to force the estates to incur millions of dollars of additional costs collectively on representative depositions.

Following extensive efforts by the U.S. Debtors to avoid seeking judicial relief, last night the Canadian Debtors and Monitor proposed substituting representative witness depositions for written responses to questions on five allocation and five claims topics per party by January 17. While we were initially hopeful that it could form the basis for an amicable resolution, after disclosure by the Canadian Debtors and Monitor of the five topics on which they desire responses from the U.S. Debtors (but not the questions themselves), it became apparent that the proposed solution could be even more burdensome than representative depositions.[4] The parties are in the process of negotiating a detailed pre-trial exchange of witness affidavits,

---

[4]    The all-encompassing topics on which the Canadian Discovery Group seeks written responses from the U.S. Debtors (which were already the subject of numerous depositions) in just a few weeks are:

1. "[t]he facts and documents, other than the MRDA, demonstrating the US Debtors' understanding of the phrase 'equitable and beneficial ownership' as used in the MRDA and the term 'economic ownership' as used in the US Debtors' allocation pleadings"
2. "[t]he factual and documentary basis for and scope of licenses of Nortel's intellectual property, including any enhanced licences, held by parties other than NNL"
3. "[t]he facts and documents demonstrating how and to what extent intellectual property was assigned to NNL by NNL's subsidiaries, inventors/authors and others"
4. "[t]he facts and documents demonstrating Nortel's processes for the identification and development of products, including as they varied over time before and after January 14, 2009"
5. "[t]he facts and documents underlying the contention of the US Debtors that they could have generated value from the intellectual property sold in the Rockstar transaction in the absence of a sale of that intellectual property."

The Honorable Kevin Gross
December 20, 2013
Page 6


expert reports, deposition designations and exhibits such that each party's case will be fully revealed before pre-trial memoranda are submitted and trial begins. Given the volume of discovery, including millions of documents produced (the review of which remains ongoing), it is simply impossible to be able to list all of our ultimate factual and documentary support now rather than on or close to the schedule negotiated in the Discovery Protocol and Litigation Timetable (i.e., in the weeks leading up to trial).

Given the upcoming holidays and the anticipated commencement of representative depositions shortly thereafter, we feel compelled to raise this with the Court at this time and we look forward to addressing this at the Court's earliest convenience. Of course, we do not expect that our dialogue with the Canadian Debtors and Monitor will end and are committed to continuing our efforts to reach an amicable resolution to obviate the need for court involvement. Our Canadian co-counsel is concurrently providing a copy of this letter to Justice Morawetz. Together with our colleagues in Canada, we ask that the Courts set a briefing schedule and joint hearing to consider the request to modify the Discovery Protocol to eliminate representative witness depositions.

While we hope the other litigants will refrain from attempting to proceed with representative witness depositions while the Courts consider this issue, we reserve the right to seek interim relief from the Court if any party seeks to proceed without the Courts having had a fair opportunity to rule on this issue. We hope and trust that this will be unnecessary.

Respectfully submitted,

Derek C. Abbott


cc:    All Core Parties (via email)

7867556

**Amended Representative Witness Subjects Served by the Canadian Allocation Group and the Canadian Claims Defendant Group (Sunday, Dec. 15)**

Representative Witness Subjects Served by the
Monitor and Canadian Debtors

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*, | Case No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |

- and –

Court File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

## AMENDED REPRESENTATIVE WITNESS SUBJECTS SERVED BY THE CANADIAN ALLOCATION GROUP AND THE CANADIAN CLAIMS DEFENDANT GROUP

**(December 13, 2013)**
**(December 15, 2013)**

1

Representative Witness Subjects Served by the
Monitor and Canadian Debtors

## Subjects for the Representative Witness of the US Debtors

**The Canadian Deposition Group provides notice that the above referenced party representative is expected to have informed himself or herself of the relevant facts, including documentary support, known or available to that party, if any (through its existing or former employees, officers and directors as the case may be) relating to the following subjects, which are not believed to have been fully canvassed with the fact deposition witnesses:**

1.    The facts and documents, other than the MRDA, demonstrating the US Debtors' understanding of the phrase "equitable and beneficial ownership" as used in the MRDA and the term "economic ownership" as used in the US Debtors' allocation pleadings.

2.    The facts and documents, other than the MRDA, demonstrating the ownership interests that the US Debtors allegedly had in any of the intellectual property sold in the line of business sales and in the Rockstar transaction.

3.    The factual and documentary basis for and scope of the alleged beneficial/equitable interest in Nortel's intellectual property held by parties other than NNL.

4.    The factual and documentary basis for and scope of licenses of Nortel's intellectual property, including any enhanced licences, held by parties other than NNL.

5.    The past practices of NNL and its subsidiaries concerning the scope of the licenses to Nortel intellectual property under the Cost-Sharing Agreements and the MRDA.

6.    The factual and documentary basis, other than the MRDA, demonstrating that the Licensed MRDA Participants' agreement to have the patents and all other registered forms of Nortel IP filed in NNL's name and to share the cost of global R&D through transfer pricing payments was in exchange for enhanced exclusive licenses that constituted effective ownership of the IP in their respective jurisdictions, including the factual and documentary basis for demonstrating that this choice was a conscious decision.

7.    The factual and documentary basis, other than the MRDA, demonstrating that the Licensed MRDA Participants' agreement to have the patents and all other registered forms of Nortel IP filed in NNL's name and to share the cost of global R&D through transfer pricing payments was in exchange for enhanced exclusive licenses that constituted effective ownership of the IP in their respective jurisdictions, including the factual and documentary basis for demonstrating that this choice was a conscious decision.

2