# EXHIBIT A

Court File No.  09-CL-7950

*ONTARIO*
## SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**FACTUM OF NORTEL NETWORKS UK PENSION TRUST LIMITED
AND THE BOARD OF THE PENSION PROTECTION FUND (the "UKPC")**
(Motion to Dispense with Representative Examinations)

### PART I – NATURE OF THE PROCEEDINGS

A.    STATEMENT OF THE ORDER SOUGHT

1.    The UKPC supports the motion by the US Debtors for an order amending the Amended

Litigation Timetable by dispensing with the Representative Witness depositions and

modifying each of the Allocation Protocol, the Litigation Timetable, the Discovery Plan

and the Deposition Protocol accordingly.

B.    **OVERVIEW**

2.    There is no need for Representative Witness examinations in this case.  More than two million documents have been produced and over 100 fact witnesses have been deposed, including former Nortel chief financial officers, treasurers, general counsels, senior executives in tax and treasury, present and former directors of various Nortel affiliates, senior intellectual property lawyers, pension trustees, joint administrators, representatives of the Monitor and others.

3.    The discovery process has cost tens of millions of dollars and the enormous additional costs of complying with the topics noticed by the Canadian Discovery Group for the Representative Witness examinations cannot be justified.  The Court has the power to control this process and should do so by dispensing with the Representative Witness process.

4.    The extensive list of topics noticed by the Canadian Discovery Group is abusive and wholly inappropriate.  The list requires the immediate disclosure of all "facts and documents" for each of the topics.  There is no requirement under Canadian law to answer the discovery question "tell me all the facts and documents now that you will rely on at trial".  This is a thinly veiled attempt by the Canadian Discovery Group to have disclosure of the adverse parties' analysis of the evidence and work product.

5.    Any further information that the Canadian Discovery Group are entitled to will be provided through the existing mechanisms for further pre-trial disclosures, including expert reports and depositions, fact witness identification and affidavits and the

disclosure of exhibits and deposition transcript excerpts.  There is no risk that any party will be taken by surprise with the existing procedural protections in place.

6.      The Court has expressed its legitimate concern over the unprecedented costs incurred in litigating these cases.  This is an ideal opportunity to avoid the expenditure of millions of dollars of incremental costs on unnecessary Representative Witness examinations.

## PART II – THE FACTS

**The Fact Depositions**

7.      Representative Witness examinations were intended as "clean up" examinations in the event that adequate evidence could not be obtained from the one hundred plus fact witnesses who were scheduled to be deposed.

**Affidavit of Jeffrey Rosenthal (the "Rosenthal Affidavit"), para. 14 and 15**

8.      The Deposition Protocol contemplated that a party could serve "a very limited number of subjects on which it believed that no fact witness currently or formally associated with the party producing the Representative Witness has provided first-hand testimony".  The topics for Representative Depositions were to be "small in number and reasonably in scope".

**Rosenthal Affidavit, para. 14**

9.      Ninety-nine percent of the fact witnesses identified for the parties were deposed.  Accordingly, virtually all the witnesses who the parties identified as having first-hand information on the matters in issue have been deposed.  The Canadian Discovery Group has had access to all the witnesses they identified and had the ability to obtain the

relevant information they saw fit to ask for.  The Canadian Discovery Group has not explained what information is missing from the evidence made available to them.

**The Topics Noticed by the Canadian Discovery Group**

10.     The deadline for providing notice of the topics for the proposed Representative Witness depositions was December 13, 2013.

11.     The Canadian Discovery Group did not deliver any topic list for the UKPC on December 13.  On December 19 (six days after the deadline) the Canadian Discovery Group delivered a list of seventeen topics on which they proposed to examine a Representative Witness for the UKPC.  Objections were delivered on behalf of the UKPC and are attached as Schedule "A" hereto.

12.     The UKPC's objections articulated the basis for their objections to the topics noticed by the Canadian Discovery Group.   These topics were unreasonable in number, impermissibly broad in scope and inappropriate for representative deposition. They included the following:

> "Topic 6 – The facts and documents relating to UKPC's claim that NNUK is entitled to any or all of NNSA's assets as a result of Project Swift.
>
> Topic 10 – The facts and documents relating to UKPC's claim that NNUK was insufficiently resourced as at the relevant time for the purpose of the FSD.
>
> Topic 14 - The facts and documents relating to UKPC's claim that the RPSM failed to adequately take account of NNUK's restructuring costs, pension obligations and the reciprocal agreement, and that such alleged failures had an adverse impact on the funding contributions made NNUK to the Scheme or otherwise harm the Scheme."

13.   Each of the topics in the original list has been the subject of extensive fact witness deposition and documentary production.

14.   Under the Litigation Timetable to which the parties agreed, all parties have until shortly before the trial to review the extensive record and ascertain which documents and testimony support their position.   The Canadian Discovery Group seeks to impose an obligation on the UKPC, through the Representative Witness process, to marshal its evidence now and disclose it to the Canadian Deposition Group.   This is an extremely onerous, unworkable and unnecessary task.   Even if the topics were appropriate (they are not) there is no way that in the short timeframe available to exhaustively identify each document and all the facts based on the millions of pages of documents produced and the facts gathered over 100 depositions taken over the last few months.

15.   Implicitly recognizing that their initial seventeen original requests were overbroad, on the very same day that the original list was provided the Canadian Discovery Group proposed to limit the number of topics for the UKPC to five.   These topics remain extremely overbroad and the Canadian Discovery Group proposes to be permitted to ask an unlimited number of questions on each topic.   Moreover, the nature of the topics themselves are improper as they seek specific identification before the trial of all "facts and documents" relating to each of the five topics listed.

16.   There is no obligation on the UKPC to identify the "facts and documents" in relation to any of the noticed topics.   To the extent the Canadian Discovery Group is entitled to more disclosure, they will receive it via the existing pre-trial disclosure mechanisms.

17.   The five topics are as follows:

(a)     The facts and documents relating to the amount of each of the NNUK Pension Plan deficit and section 75 debt including but not limited to: (i) the basis of the calculation of each; (ii) the assumptions used in the calculation of each; (iii) the potential costs of annuitizing member's benefits; (iv) the information that the Trustee provided to its pension advisors and consultants to enable them to calculate the deficit and section 75 debt; and (v) the liabilities used in the calculation of the deficit and section 75 debt referable to (a) discretionary pension benefit increases awarded in the years 1995 and following, (b) deferred pensioners, (c) pensioners whose basic benefits are being paid in full, and (d) pensioners whose pensions have been reduced.

(b)     The facts and documents relating to the age and the amount of the benefit of pension plan members, before and after reduction.

(c)     The facts and documents relating to the mortality assumptions proposed by Trustee and the Scheme's actuary for the March 31, 2008 actuarial valuation of the Scheme and the 2005 actuarial valuation of the Scheme.

(d)     The facts and documents relating to the UKPC's claim that NNUK is entitled to any or all of NNSA's assets as a result of Project Swift.

(e)     The facts and documents relating to the UKPC's claim that NNUK was insufficiently resourced as at the Relevant Time for purposes of the FSD.

18.    Without acknowledging in any way that any of these topics are proper, each topic has been the subject of extensive fact witness deposition and documentary disclosure. In

addition, UKPC will rely on expert evidence on some of the issues identified in topics. Accordingly, the Canadian Discovery Group either:

(a)    already has disclosure of the facts and documents through the fact witness deposition and documentary disclosure;

(b)    had the opportunity to obtain the facts and documents it now seeks through the Representative Witness deposition;

(c)    will obtain the further information they are entitled to through the existing mechanisms for further pre-trial disclosures;

(d)    will have expert evidence from the UKPC on which they can depose the experts.

19.    There is no justification for the extremely expensive, burdensome and improper discovery request by the Canadian Discovery Group.


## PART III – THE LAW

20.    The UKPC adopts and relies on the factum of the US Debtors.


## PART V – RELIEF REQUESTED

21.    The UKPC asks that the US Debtors motion be granted with costs.


January 2, 2014                **ALL OF WHICH IS RESPECTFULLY SUBMITTED**

**Thornton Grout Finnigan LLP**
Barristers and Solicitors
100 Wellington Street West
Suite 3200
Toronto, Ontario
M5K 1K7

**John L. Finnigan (LSUC# 24040L)**
Tel:    416-304-1616
Fax:    416-304-1313

Lawyers for the Nortel Networks UK Pension Trust Limited
and the Board of the Pension Protection Fund

9

**Schedule "A"**

Attached

Court File No.: 09-CL-7950

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED**

- and -

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>    NORTEL NETWORKS, INC., *et al.*,<br>                                    Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>(Jointly Administered) |

### U.K. PENSION CLAIMANTS' RESPONSES AND OBJECTIONS TO THE REPRESENTATIVE WITNESS SUBJECTS SERVED BY THE CANADIAN ALLOCATION GROUP AND THE CANADIAN CLAIMS DEFENDANT GROUP

Pursuant to the Order Entering Litigation Timetable and Discovery Plan, Case No. 09-10138-KG [D.I. 10566], Ontario Superior Court of Justice (Commercial List) Court File No. 09-CL-7950 (the "**Discovery Order**") and the Order Amending Litigation Schedule in Joint Cross-Border Proceedings to Determine Allocation of Asset Sale Proceeds and Certain Claims (the "**Discovery Amendment**" and together with the Discovery Order, the "**Amended Discovery Order**") [D.I. 12522], the Deposition Protocol Stipulation (the "**Deposition**

- 2 -

Protocol") [D.I. 11439] and the Amendment to Deposition Protocol Stipulation (the "**Protocol Amendment**" and together with the Deposition Protocol, the "**Amended Deposition Protocol**") [D.I. 11747], Nortel Networks UK Pension Trust Limited (the "**Trustee**") and the Board of the Pension Protection Fund (the "**PPF**" and together with the Trustee, the "**U.K. Pension Claimants**"), by their counsel hereby respond and object to the UKPC Representative Witness Subjects Served by the Canadian Allocation Group and the Canadian Claims Defendant Group, dated December 19, 2013 (collectively, the "**Topics**" and each, a "**Topic**"). The U.K. Pension Claimants submit these objections to the Topics solely on their own behalf.

## GENERAL OBJECTIONS

The U.K. Pension Claimants, in addition to other Core Parties, are of the view that Representative Witness or 30(b)(6) depositions are unnecessary given the extensive fact witness depositions and documentary production that have taken place to date.  Accordingly, the U.K. Pension Claimants reserve their rights to argue that any such Representative Witness or 30(b)(6) depositions should not proceed. These objections are filed without prejudice to that primary position.

The following general objections (the "**General Objections**") apply to and are incorporated in each individual response herein, whether or not expressly incorporated by reference in such response.  The failure to specify any General Objection in response to a particular Topic is not intended to waive the General Objection:

1.    The U.K. Pension Claimants object to the Topics as they were not served in a timely manner. The Topics were required to be delivered by December 13, 2013 but were not

- 3 -

served until December 19, 2013. The U.K. Pension Claimants reserve all their rights in relation to the late delivery of the Topics.

2.      The U.K. Pension Claimants object to the Topics to the extent they purport to impose obligations beyond those required by, or inconsistent with, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Ontario Rules of Civil Procedure, the *Companies' Creditors Arrangement Act* (the "CCAA"), other applicable law, or orders of these Courts.

3.      The U.K. Pension Claimants object to the Topics to the extent they seek information that is not within the U.K. Pension Claimants' possession, custody, or control.

4.      The U.K. Pension Claimants object to the Topics to the extent they seek information protected by any privilege or immunity, including the attorney-client privilege, work-product doctrine, the joint defense privilege, the common-interest privilege, litigation privilege, or any other privilege or protection from disclosure provided by any applicable law.

5.      The U.K. Pension Claimants object to the Topics to the extent they seek information or testimony requiring legal conclusions.

6.      The U.K. Pension Claimants object to the Topics to the extent they lack particularity or are vague, ambiguous, incomprehensible, contain terms that are not adequately defined, or otherwise lack sufficient precision and thereby require the U.K. Pension Claimants to engage in conjecture as to their meaning.

- 4 -

7.    The U.K. Pension Claimants object to the Topics to the extent that they presume to impose a standard of proof on the U.K. Pension Claimants in proving contingent claims in a CCAA proceeding that is inconsistent with and more burdensome than the legal test under Canadian law.

8.    The U.K. Pension Claimants object to the Topics to the extent they are not relevant to a claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence.

9.    The U.K. Pension Claimants object to the Topics to the extent they violate section G(1)(a) of the Amended Deposition Protocol, which states, in part:

> [A] Deposition Group may serve <u>a very limited number of subjects</u> on which it believes no fact witness currently or formerly associated with the party producing the Representative Witness has provided adequate first hand testimony. <u>Provided such subjects are small in number and reasonable in scope,</u> the Representative Witness has a duty to prepare to testify on the designated subject. (emphasis added)

10.    The U.K. Pension Claimants object to the Topics to the extent each Topic has been adequately addressed by the extensive fact witness depositions and documentary disclosures that have already been completed. To the extent that the Canadian Allocation Group and the Canadian Claims Defendants Group failed to elicit the evidence they now seek from fact witnesses they had an opportunity to depose, the U.K. Pension Claimants should not bear the burden of providing this evidence through a representative witness.

11.    The U.K. Pension Claimants object to any explicit or implicit characterizations of facts, events, circumstances, claims, allegations or issues in the Topics.  These Objections do not,

- 5 -

and are not intended to, mean that the U.K. Pension Claimants agree with or accept such any explicit or implicit characterizations.

12.    By producing or agreeing to produce a witness in response to any specific Topic, the U.K. Pension Claimants do not in any way waive their rights to object on grounds of competency, relevancy, materiality, privilege, or the admissibility of evidence for any purpose in the above-captioned proceedings or any other proceeding.

13.    In providing responses and objections to the Topics, the U.K. Pension Claimants reserve all objections as to the competency, relevancy, materiality and admissibility of any responsive information.

14.    All responses to the Topics are provided subject to the provisions of the Protective Order entered by the United States Bankruptcy Court for the District of Delaware and the Ontario Superior Court of Justice on June 11, 2013, as amended, including but not limited to section 18 thereof, which provides that the inadvertent disclosure of any information in response to the Topics shall not constitute a waiver of privilege or of any other ground for objection to discovery with respect to such information or the subject matter thereof.

15.    The U.K. Pension Claimants reserve their rights to amend or supplement these responses and objections.

## SPECIFIC OBJECTIONS

Without waiving or limiting, and subject to the foregoing General Objections, which are hereby expressly incorporated by reference into each objection below, the U.K.

- 6 -

Pension Claimants object specifically as follows to the Topics (the "**Specific Objections**"):

**Topic No. 1**

The facts and documents relating to the amount of each of the NNUK Pension Plan deficit and section 75 debt including but not limited to: (i) the basis of the calculation of each; (ii) the assumptions used in the calculation of each; (iii) the potential costs of annuitizing member's benefits; (iv) the information that the Trustee provided to its pension advisors and consultants to enable them to calculate the deficit and section 75 debt; and (v) the liabilities used in the calculation of the deficit and section 75 debt referable to (a) discretionary pension benefit increases awarded in the years 1995 and following, (b) deferred pensioners, (c) pensioners whose basic benefits are being paid in full, and (d) pensioners whose pensions have been reduced.

**Response No. 1**

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) is vague, excessively broad and unduly burdensome; (ii) to the extent relevant, is properly the subject of expert reports and expert testimony, disclosure of which is already provided for in the amended Litigation Timetable and Discovery Plan; (iii) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; and (iv) seeks information which may be protected from discovery by privilege or immunity, including the attorney-client privilege, work-product doctrine, the joint defense privilege, the common-interest privilege, litigation privilege, or any other privilege or protection from disclosure provided by any applicable law.

Subject to and without waiving any of the foregoing General and Specific Objections, the U.K. Pension Claimants are willing to meet and confer regarding the scope and

- 7 -

form of their response, if any, to Topic No. 1 in the event that Representative Witness or 30(b)(6) depositions do proceed.

## Topic No. 2

The facts and documents relating to the age and the amount of the benefit of pension plan members, before and after reduction.

## Response No. 2

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) is vague, excessively broad and unduly burdensome. The phrase "before and after reduction" requires clarification, including what "reduction" is referred to, to what plan members and to what time period the inquiry relates; (ii) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; (iii) to the extent relevant, is properly the subject of expert reports and expert testimony, disclosure of which is already provided for in the amended Litigation Timetable and Discovery Plan; and (iv) is not likely to lead to the discovery of admissible evidence relevant to the validity of the claim asserted by the U.K. Pension Claimants or the issues that are the subject matter of the Allocation dispute.

Subject to and without waiving any of the foregoing General and Specific Objections, the U.K. Pension Claimants are willing to meet and confer regarding the scope and form of their response, if any, to Topic No. 2 in the event that Representative Witness or 30(b)(6) depositions do proceed.

## Topic No. 3

The facts and documents relating to the quantum of the PPF claim.

## Response No. 3

- 8 -

The U.K. Pension Claimants specifically object to this Topic on grounds that: (i) it is vague, in that the "PPF Claim" is nowhere defined or identified; (ii) it is excessively broad and unduly burdensome; (iii) in so far as it is understood, such evidence was available through the fact witnesses who were deposed; (iv) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; and (v) in so far as it is understood and relevant, is properly the subject of expert reports and expert testimony, disclosure of which is already provided for in the amended Litigation Timetable and Discovery Plan.

**Topic No. 4**

The facts and documents relating to the UKPC's position that NNUK failed to follow a recommendation made by the NNUK Pension Plan's actuary in a manner that violated the Scheme's Trust Deed or Rules or any statute or other UK law or regulation or made a funding commitment that it failed to fulfill.

**Response No. 4**

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) it is excessively broad and unduly burdensome; (ii) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; (iii) was available and has been adequately addressed by the extensive fact witness depositions and documentary production that have taken place to date; and (iv) calls for a legal conclusion.

**Topic No. 5**

The facts and documents relating to the mortality assumptions proposed by Trustee and the Scheme's actuary for the March 31, 2008 actuarial valuation of the Scheme and

- 9 -

the 2005 actuarial valuation of the Scheme.

**Response No. 5**

The U.K. Pension Claimants specifically object to this Topic on grounds that: (i) such evidence was available through fact witnesses who were deposed; and (ii) it is not likely to lead to the discovery of admissible evidence relevant to the validity of the claim asserted by the U.K. Pension Claimants or the issues that are the subject matter of the Allocation dispute.

Subject to and without waiving any of the foregoing General and Specific Objections, the U.K. Pension Claimants are willing to meet and confer regarding the scope and form of their response, if any, to Topic No. 5 in the event that Representative Witness or 30(b)(6) depositions do proceed.

**Topic No. 6**

The facts and documents relating to the UKPC's claim that NNUK is entitled to any or all of NNSA's assets as a result of Project Swift.

**Response No. 6**

The U.K. Pension Claimants specifically object to this Topic on grounds that: (i) it misstates the allegation made by the U.K. Pension Claimants; (ii) there will be further pre-trial disclosure in the form of affidavits, exhibits and deposition designations on this topic; (iii) such evidence was available and has been adequately addressed by the extensive fact witness depositions and documentary production that have taken place to date; (iv) it is excessively broad and unduly burdensome; and (v) it violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery.

**Topic No. 7**

- 10 -

The facts and documents relating to the UKPC's claim that NNUK or Nortel Canada acted in bad faith, oppressively, or otherwise improperly during the negotiations that lead to the 2002, 2003 and 2004 funding contributions, the 2005 Interim Funding Agreement, the 2006 Long Term Funding or the negotiations regarding the 2008 actuarial valuation of the Scheme.

**Response No. 7**

The U.K. Pension Claimants specifically object to this Topic on grounds that: (i) it is excessively broad and unduly burdensome; (ii) it violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; and (iii) such evidence was available and has been adequately addressed by the extensive fact witness depositions and documentary production that have taken place to date.

**Topic No. 8**

The facts and documents relating to the investment performance of the Scheme assets each year from 2002 through 2008, as a whole and by asset category.

**Response No. 8**

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) is excessively broad and unduly burdensome; (ii) was available and has been adequately addressed by the extensive fact witness depositions and documentary production that have taken place to date; and (iii) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery.

**Topic No. 9**

- 11 -

The facts and documents relating to the UKPC's involvement in FSD proceedings before the Determinations Panel including, but not limited to: (i) all communications that the Trustee had with tPR; (ii) any work that the Trustee retained PwC to undertake with respect to the FSD proceedings; (iii) tPR's selection of June 30, 2008 as the Relevant Time; and (iv) any communications among any of the UKPC, PwC and the tPR with respect to seeking a contribution notice against Nortel Canada.

**Response No. 9**

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) is excessively broad and unduly burdensome; (ii) seeks information protected from discovery by privilege or immunity, including the attorney-client privilege, work-product doctrine, the joint defense privilege, the common-interest privilege or litigation privilege and/or any other privilege or protection from disclosure provided by any applicable law; (iii) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; and (iv) relates to a proceeding which the Monitor asserts the U.K. Pension Claimants could not rely on in the CCAA case.

**Topic No. 10**

The facts and documents relating to the UKPC's claim that NNUK was insufficiently resourced as at the Relevant Time for purposes of the FSD.

**Response No. 10**

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) is properly the subject of expert reports and expert testimony, disclosure of which is already provided for in the amended Litigation Timetable and Discovery Plan; (ii) proceeds from a false

- 12 -

premise regarding the U.K. Pension Claimants' burden of proof for their contingent claims in the CCAA case; (iii) to the extent applicable, seeks information protected from discovery by privilege or immunity, including the attorney-client privilege, work-product doctrine, the joint defense privilege, the common-interest privilege or litigation privilege and/or any other privilege or protection from disclosure provided by any applicable law; and (iv) requires a legal conclusion.

**Topic No. 11**

The facts and documents relating to the UKPC's claim that it is reasonable to impose an FSD on Nortel Canada.

**Response No. 11**

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) is excessively broad and unduly burdensome; (ii) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; (iii) is properly the subject of expert reports and expert testimony, disclosure of which is already provided for in the amended Litigation Timetable and Discovery Plan; (iv) was available and has been adequately addressed by the extensive fact witness depositions that have already been completed; and (v) calls for a legal conclusion.

**Topic No. 12**

The facts and documents relating to the potential imposition of a Contribution Notice on Nortel Canada.

**Response No. 12**

- 13 -

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) is vague and taken literally, is excessively broad and unduly burdensome; (ii) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; (iii) in so far as may be relevant, is properly the subject of expert reports and expert testimony, disclosure of which is already provided for in the amended Litigation Timetable and Discovery Plan; (iv) was available and has been adequately addressed by the extensive fact witness depositions that have already been completed; and (v) calls for a legal conclusion.

## Topic No. 13

The facts and documents relating to the UKPC's claim that NNUK provided benefits to Nortel Canada whose value exceeded the benefits that Nortel Canada provided to NNUK.

## Response No. 13

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) is excessively broad and unduly burdensome; (ii) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; (iii) was available and has been adequately addressed by the extensive fact witness depositions and documentary production that have taken place to date; and (iv) in so far as may be relevant, is properly the subject of expert reports and expert testimony, disclosure of which is already provided for in the amended Litigation Timetable and Discovery Plan.

## Topic No. 14

The facts and documents relating to the UKPC's claim that the RPSM failed to adequately take into account NNUK's restructuring costs, pension obligations and the Reciprocal

- 14 -

Agreement, and that such alleged failures had an adverse impact on the funding contributions made by NNUK to the Scheme or otherwise harmed the Scheme.

**Response No. 14**

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) is excessively broad and unduly burdensome; (ii) is properly the subject of expert reports and expert testimony, disclosure of which is already provided for in the amended Litigation Timetable and Discovery Plan; and (iii) was available and has been adequately addressed by the extensive fact witness depositions and documentary production that have taken place to date.

**Topic No. 15**

The facts and documents relating to any documents or information provided by the Trustee to any experts that the Trustee or tPR retained to submit reports to the Determinations Panel in connection with the FSD proceedings including, but not limited to the reports of Ronald Bowie, Gary Squires and Brian Becker.

**Response No. 15**

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) is vague and ambiguous; (ii) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; and (iii) seeks information protected from discovery by privilege or immunity, including the attorney-client privilege, work-product doctrine, the joint defense privilege, the common-interest privilege, litigation privilege, or any other privilege or protection from disclosure provided by any applicable law.

**Topic No. 16**

The facts and documents relating to the UKPC's claim that they have standing to commence this claim.

**Response No. 16**

The U.K. Pension Claimants specifically object to this Topic on grounds that: (i) the issue of standing is *res judicata* or the subject of issue estoppel by virtue of the orders of the CCAA Court and the Court of Appeal for Ontario; (ii) it violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; and (iii) it calls for a legal conclusion.

**Topic No. 17**

The facts and documents that disclose why the claims predicated on events that occurred more than two years before the proofs of claim were filed in the Canadian CCAA proceedings were not made within two years of these events.

**Response No. 17**

The U.K. Pension Claimants specifically object to this Topic on grounds that it: (i) violates section G(1)(a) of the Amended Deposition Protocol and the principles of proportionality in discovery; (ii) calls for a legal conclusion; and (iii) is vague in that there is no definition of the "events" to which the inquiry relates.

- 16 -

Dated: January 2, 2014

_____/s/ John L. Finnigan_____

THORNTON GROUT FINNIGAN LLP
Barristers and Solicitors
100 Wellington Street West
Suite 3200
Toronto, ON   M5K 1K7
Michael E. Barrack (LSUC# 21941W)
John L. Finnigan (LSUC# 24040L)
D. J. Miller (LSUC# 34393P)
Andrea McEwan (LSUC# 53781P)
Rebecca Lewis (LSUC# 61146S)
Michael S. Shakra (LSUC# 64604K)

Tel:    (416) 304-1616
Fax:    (416) 304-1313

WILLKIE FARR & GALLAGHER LLP
Marc Abrams
Brian E. O'Connor
Sameer Advani
Andrew Hanrahan
787 Seventh Avenue
New York, New York 10019

Tel: (212) 728-8000
Fax: (212) 728-8111

*Counsel for the Nortel Networks UK Pension Trust Limited*
*and the Board of the Pension Protection Fund*

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL
NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No.: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
(COMMERCIAL LIST)

Proceedings commenced at Toronto

**FACTUM**

**Thornton Grout Finnigan LLP**
Barristers and Solicitors
100 Wellington Street West
Suite 3200
Toronto, Ontario
M5K 1K7

**John L. Finnigan (LSUC# 24040L)**
Tel:    416-304-1616
Fax:    416-304-1313

Lawyers for the Nortel Networks UK Pension Trust
Limited and the Board of the Pension Protection Fund