This is Exhibit............"A"............referred to in the

affidavit of.... Fara Tabatabai ......

sworn before me, this.....2nd

day of.....January....................20.14

A COMMISSIONER FOR TAKING AFFIDAVITS

DAVID BRADLEY SHANIES
NOTARY PUBLIC, State of New York
No. 02SH6160748
Qualified in Kings County
Commission Expires Feb. 12, 2015

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 15TH DAY OF |
| JUSTICE MORAWETZ | ) | MAY, 2013 |
| | ) | |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION (the "Canadian Debtors")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**
(Allocation Protocol – Litigation Timetable and Discovery Plan)

**WHEREAS** this Court approved an allocation protocol (the "Allocation Protocol")

pursuant to an Order (Allocation Protocol) dated April 3, 2013.

**WHEREAS** pursuant to an Endorsement of this Court dated April 17, 2013, a joint

hearing was convened between this Court and the United States Bankruptcy Court for the

District of Delaware to consider a litigation timetable and discovery plan in connection with the

Allocation Protocol, which hearing was heard on April 24, 2013.

**ON HEARING** the submissions of counsel for the Canadian Debtors, Ernst & Young

Inc. in its capacity as monitor of the Canadian Debtors (the "Monitor"), the members of the

- 2 -

Canadian Creditors Committee, the Joint Administrators of Nortel Networks UK Limited and the other EMEA Debtors, the Trustee of the Nortel Networks UK Pension Trust Limited and the Board of the UK Pension Protection Fund, the former directors and officers of Nortel Networks Corporation and Nortel Networks Limited, Nortel Networks Inc. and certain of its affiliates in US Chapter 11 bankruptcy proceedings, Wilmington Trust, National Association, the Bank of New York Mellon, the Informal Nortel Noteholders Group, the Official Committee of Unsecured Creditors of the US Debtors, and Law Debenture Trust Company of New York, this Court having issued an Endorsement dated May 3, 2013.

1.    **THIS COURT ORDERS** that the litigation timetable and discovery plan appended as Schedule "A" to this Order (the "**Litigation Timetable and Discovery Plan**") be implemented.

2.    **THIS COURT ORDERS** that the Canadian Debtors and the Monitor are authorized to take all steps necessary to carry out and give effect to the Litigation Timetable and Discovery Plan.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO..

MAY 16 2013

**SCHEDULE "A"**
**(Litigation Timetable and Discovery Plan)**

## **LITIGATION TIMETABLE**

Pursuant to the US Court's and Canadian Court's Orders approving the Allocation Protocol, the Cross-Border Protocol, and the Cross-Border Claims Protocol, it is hereby ordered:[1]

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 16 by noon E.D.T. | Any Core Party who wishes to participate in the Allocation dispute shall serve a pleading or opening submission styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought with respect to allocation, the material facts relied upon and legal bases for the allocation position being advanced by that Core Party by noon E.D.T. on May 16, 2013 and file the same within the next business day. | The US Claims Defendant Group shall file and serve their responses to the US Claims. | Deadline for the U.K. Pension Claimants to deliver their affirmative pleading (which may be deemed by them to serve as their Dispute Notices) setting forth, with reasonable particularity, the relief sought, material facts relied upon and legal bases for their claims and the grounds upon which they seek to challenge their disallowance. |
| May 17 | Any Core Party may serve a joinder before May 17 and file the same within the next business day, provided that the joinder does not advance any new legal bases and does not rely on new material facts. | | |

---

[1]    Capitalized terms shall have the meaning ascribed to them in the Allocation Protocol and Annex A attached hereto.

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 17 | The Discovery Participants shall aim to reach agreement on a Confidentiality Stipulation and Protective Order as soon as possible. To the extent the Discovery Participants are unable to agree on a Confidentiality Stipulation and Protective Order, May 17 is the deadline for the Discovery Participants to file their versions of the Confidentiality Stipulation and Protective Order with the Courts. | | |
| May 22 | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group. | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group. | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group. |
| May 22 | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group, without prejudice to an Allocation Group's right to later serve contention interrogatories, as to be discussed and/or resolved by the Courts. | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group, without prejudice to a US Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group, without prejudice to a Canadian Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. |

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 24 | Deadline for Core Party who is not in one of the Discovery Groups, and who seeks to serve document requests and/or interrogatories that are non-duplicative of those document requests and/or interrogatories already served by the Allocation Groups, to seek leave of the Court to serve such non-duplicative document requests and/or interrogatories if prior to this time, such Core Party has been unable to reach agreement with the Core Party on whom it seeks to serve the non-duplicative document requests and/or interrogatories after meeting and conferring with such Core Party in good faith. | | |

3

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 29 | The US Debtors, UCC, EMEA Debtors, Joint Administrators, Canadian Debtors, Monitor, Bondholder Group, and any other Core Party who filed an opening submission may each file and serve a response to any opposing Core Party's opening submission or designate its opening submission as a cross-response. Each of the responses may be made individually, jointly, and/or by joining another Core Party's response. | | With respect to the Canadian Claims, each Disputing Creditor shall receive from the Monitor and the Canadian Debtors, by May 29, 2013, a response to such Disputing Creditor's Affirmative Pleading setting forth, with reasonable particularity, the grounds for the disallowance, the material facts relied upon and the legal bases for the disallowance. |
| June 3 | Deadline for supplemental document requests and identification interrogatories related to new issues raised in responsive submissions. | | |
| June 6 | In-person meet and confer between the Discovery Participants regarding the discovery requests and interrogatories served, procedures governing the production of documents, deposition procedures, and any other issues that have arisen thereof. | | |
| June 10 | Deadline for responses and objections to document requests and objections to interrogatories in accordance with the Discovery Plan. | | |
| June 10 | Subject to any objections, deadline for the recipients of document requests to commence the rolling production of documents in accordance with the Discovery Plan. | | |
| July 3 | Date by which parties served with document requests must certify to parties requesting their documents substantial progress with regard to production of documents. | | |
| July 22 | Date by which parties served with document requests must certify to parties requesting their documents substantial completion with regard to production of documents. | | |

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| July 24 | Deadline for identification by each Core Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Core Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Core Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each US Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other US Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that US Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each Canadian Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Canadian Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Canadian Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. |
| July 26 | Deadline to file motions to compel and/or motions for a protective order with respect to document discovery. Notwithstanding this deadline, when a dispute arises, the affected Discovery Participants shall promptly attempt to resolve any discovery disputes in good faith and once an impasse is reached, file any motions with the relevant Court(s) promptly. | | |
| July 26 | Deadline for each of the Canadian Allocation Group, the EMEA Allocation Group, and the US Allocation Group to serve on any opposing Core Party the topics on which that Core Party's representative is to be examined or deposed in accordance with the Discovery Plan. | Deadline for each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group to serve on any opposing Claim Party and/or a member of the Canadian Claims Defendant Group the topics on which that Claim Party's representative is to be deposed pursuant to Rule 30(b)(6) in accordance with the Discovery Plan. | Deadline for each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group to serve on any opposing Claim Party and/or a member of the US Claims Defendant Group the topics on which that Claim Party's representative is to be examined in accordance with the Discovery Plan. |

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| July 29 | Deadline for parties to designate witnesses to be examined or deposed, subject to later additions for the reasons set forth in the Discovery Plan.  Each of (1) the Canadian Allocation Group and the Canadian Claims Defendant Group together; (2) the EMEA Allocation Group, the US EMEA Claimants Group, the Canadian EMEA Claimants Group, and the UK Pension Claimants together; and (3) the US Allocation Group and the US Claims Defendant Group together may designate a limited number of fact witnesses for examination or deposition in accordance with the Discovery Plan.  Parties are encouraged to identify witnesses as early as possible in order to facilitate scheduling. | | |
| August 2 | Deadline for each Core Party that is timely served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for oral examination or deposition. | Deadline for each US Claim Party (other than the Committee) that is timely served with a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for deposition. | Deadline for each Canadian Claim Party that is timely served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure to identify its representative for an oral examination. |
| August 5 | In-person meet and confer between the Discovery Participants regarding witnesses to be deposed or examined, deposition procedures and any other issues that have arisen. | | |
| September 13 | Deadline to identify experts and the subject matter of their reports in accordance with the Discovery Plan. | | |

6

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| September 27 | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions. | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any Rule 30(b)(6) depositions. | Deadline to complete witness depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within three weeks of each examination), in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to representative party examinations. |
| October 4 | Deadline for service of expert reports (including exhibits) in accordance with the Discovery Plan. | | |
| November 1 | Deadline for service of responding experts' reports (including exhibits) in accordance with the Discovery Plan. | | |
| Week of November 11 | Preliminary pre-trial conference. | | |
| December 6 | Deadline to complete depositions of experts in accordance with the Discovery Plan. | | |
| December 9* | Deadline to file a list of all witnesses and exhibits that each Discovery Participant intends to rely upon as part of its direct case. | | |
| December 13* | Deadline to file pre-trial motions. | | |

---

\*     All dates for pre-trial submissions are subject to modification by the Courts at the preliminary pre-trial conference.

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| December 13* | Deadline for filing of opening written submissions with the Courts.  The content of such submissions will include:<br><br>a) Pre-trial briefs;<br><br>b) All fact affidavits to be used as direct testimony;<br><br>c) All exhibits to be used in a Discovery Participant's direct case; and<br><br>d) All deposition testimony to be used in a Discovery Participant's direct case. | | |
| Week of December 16,* if the Courts desire | Pre-Trial Conference(s) –<br><br>By this date, the Core Parties shall have met and conferred with an effort to reach agreement on:<br><br>a)  the undisputed facts to be agreed upon for trial; and<br><br>b)  the contents of document briefs for use at the Joint Hearing/ the exhibits for use at the Joint Hearing.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | Pre-Trial Conference(s) –<br><br>By this date, the US Claim Parties and the Canadian Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a)  the undisputed facts to be agreed upon for trial; and<br><br>b)  the exhibits for use at the Joint Hearing.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | Pre-Trial Conference(s) –<br><br>By this date, the Canadian Claim Parties and the US Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a)  the undisputed facts to be agreed upon for trial; and<br><br>b)  the contents of document briefs for use at the Joint Hearing.<br><br>All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| Begins January 6, 2014 | The US and Canadian courts will (a) hold simultaneously (i) hearings before the US and Canadian courts regarding Allocation, (ii) hearings before the US Court on the merits of any remaining US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining Canadian Claims, provided, however, that the US and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only the US Claims or only the Canadian Claims, and (b) issue their respective decisions on (i), (ii), and (iii). The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims. | | |
| Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the US Court through the filing of a certification of counsel and to the Canadian Court through the filing of a letter from the Monitor to Justice Morawetz on notice to the Core Parties. Any Core Party may also file a motion with the applicable Court or Courts to modify this Litigation Timetable upon a showing of good cause. | | | |

9

## ANNEX A

### DEFINITIONS

Capitalized terms used in this Litigation Timetable but not otherwise defined in this Annex A shall have the meanings ascribed to them in the Allocation Protocol.

Allocation Group:  Any of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, or the Bondholder Allocation Group.

Bondholder Allocation Group:  The Bondholder Group.

Canadian Allocation Group:  The Canadian Debtors, the Monitor, and the CCC.

Canadian Claim Party:  Any party in the Canadian EMEA Claimants Group or the Canadian Claims Defendant Group, or the UK Pension Claimants.

Canadian Claims:  Claims made by the Canadian EMEA Claimants Group and the UK Pension Claimants against any or all of the Canadian Debtors.

Canadian Claims Defendant Group:  The Canadian Debtors against whom the Canadian EMEA Claimants Group and the UK Pensions Claimants have brought claims, the Directors and Officers (but only with respect to claims of the Canadian EMEA Claimants Group), and the Monitor.

Canadian EMEA Claimants Group:  The EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor who made claims against any or all of the Canadian Debtors or Directors and Officers, and the UK Pension Claimants who made claims against NNC and NNL. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

Claim Group:  Any of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, the Canadian Claims Defendant Group, or the UK Pension Claimants.

Discovery Participant:  Any Core Party or party of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, or the Canadian Claims Defendant Group who is participating in discovery pursuant to the Discovery Plan.

Discovery Plan:  The Discovery Plan that will be entered by the Courts.

<u>Disputing Creditor</u>: Any party who has delivered an Affirmative Pleading to dispute the disallowance of its claim by the Monitor and the Canadian Debtors, which shall be deemed to include the EMEA Debtors.

<u>EMEA Allocation Group</u>:  The UK Pension Claimants, the EMEA Debtors (including Nortel Networks International Finance & Holding BV as behalf of itself and as assignee of Nortel Networks o.o.o.), and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

<u>Identification Interrogatories</u>: Interrogatories seeking identification of (i) the names, roles and last known contact information of witnesses with knowledge of information relevant to the subject matter of Allocation, EMEA Claims or UK Pension Claims, (ii) information sufficient to identify transactions upon which any positions, claims, and/or defenses of the recipient of the interrogatory rely.  An interrogatory seeking the names of multiple individuals or transactions shall be considered one interrogatory for purposes of any numerical limit on the number of interrogatories.

<u>Representatives</u>:  Directors, officers, employees, attorneys, accountants, experts, consultants, financial advisors, or agents of any of the Core Parties, US Claim Parties, or Canadian Claim Parties.

<u>U.K. Pension Claimants</u>: Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund.

<u>US Allocation Group</u>:  The US Debtors and the Committee.

<u>US Claims</u>:  Claims made by the US EMEA Claimants Group and the UK Pension Claimants against any or all of the US Debtors.

<u>US Claims Defendant Group</u>:  The US Debtors against whom the US EMEA Claimants Group and the UK Pension Claimants have brought claims and the Committee.

<u>US EMEA Claimants Group</u>:  The EMEA Debtors and/or Joint Administrators or any other administrator or liquidator of an EMEA Debtor who made claims against any or all of the US Debtors, Nortel Networks AS, Nortel Networks South Africa (Proprietary) Limited, Nortel Networks AG, Nortel Networks Optical Components Limited, Northern Telecom France SA, Northern Telecom PCN limited.  Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

<u>US Claim Party</u>:  Any party in the US EMEA Claimants Group or the US Claims Defendant Group, or the UK Pension Claimants.

## DISCOVERY PLAN

| | |
|---|---|
| 1. **Definitions** | Capitalized terms used herein and not otherwise defined shall have the meaning ascribed in the Allocation Protocol or Litigation Timetable. |
| 2. **Applicable Procedural Regime:** | In accordance with the Cross Border Protocol, the Cross-Claims Protocol and the Allocation Protocol, the following procedural regimes apply:<br><br>(1) With respect to Allocation, the Cross-Border, Cross-Claims and Allocation Protocols apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware will apply as applicable.<br><br>(2) With respect to US Claims, the Cross-Border and Cross-Claims Protocols apply to the extent not inconsistent with this Discovery Plan, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware will apply as applicable.<br><br>(3) With respect to Canadian Claims, the Cross-Border Protocol, the Cross-Claims Protocols, the Claims Resolution Order, and the EMEA Claims Procedure Order apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario will apply as applicable. |
| 3. **Scope of Documentary Discovery Among Discovery Participants:** | *a) Definition of Documents*<br><br>References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the Rules of Civil Procedure for Ontario and/or the types of documents contemplated by Rule 34 of the Federal Rules of Civil Procedure.<br><br>*b) Reasonably Accessible Documents and Proportionality*<br><br>No Discovery Participant will be required to search data sources, including applications and databases, that it reasonably understands to already be in the possession, custody, or control of the Allocation Group or Claim Group making the request, provided that a Discovery Participant shall enumerate in its response to a discovery request any data sources that are not being searched on this ground. |

Each Discovery Participant will only be required to search reasonably accessible data. A Discovery Participant who believes that responsive materials are reasonably likely to be found in a decommissioned application or in storage media that cannot be accessed without considerable burden, time or expense shall give prompt notice of this in its response to a document request, and shall meet and confer in good faith with the requesting party or parties regarding the cost and practicality of accessing such responsive materials giving attention to the principle of proportionality.

A Discovery Participant shall not be required to re-produce a document that has already been produced by another Discovery Participant and the same document shall not be required to be produced by more than one Discovery Participant.

In light of the volume of the Debtors' hard-copy documents maintained in off-site storage facilities, and the abundance of available and overlapping electronic data, no Discovery Participant will be obligated to search such hard-copy documents, and rather will produce indices of such hard-copy documents (to the extent they exist) with their responses to any document request and shall meet and confer in good faith with the requesting party or parties regarding hard-copy documents that will be made available for inspection upon request. If any such documents inspected are copied for any requesting party, all other parties shall be notified and copies shall be provided to all parties at their own expense. If any party creates an electronic version of those documents, that party shall be responsible for loading the electronic version of the document(s) onto the Merrill Lextranet database in accordance with Schedule A hereto to the extent reasonable and not overly burdensome.

### c) *Previously Produced Documents*

Documents produced into the Merrill Lextranet database ("Mediation Dataroom") for the purpose of the several mediations in this proceeding may be treated as having been produced in the Allocation, US Claims and Canadian Claims litigation, and any Discovery Participant that does not already have such documents shall be provided access to this Merrill Lextranet database, subject to an appropriate confidentiality, protective and/or sealing orders from the Court(s) and a provision allowing the Discovery Participants to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this Discovery Plan. Any Discovery Participant may request the load files for the Mediation Dataroom containing metadata from Merrill in order to facilitate loading such documents on a review platform of their choosing.

2

*d) No Waiver of Privilege*

The fact that a document has been produced by any Discovery Participant shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Discovery Participant who asserts privilege over the document), and any Discovery Participant who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a confidentiality or protective order.

*f) Document Requests*

**By no later than May 22, 2013**

For Allocation, each Allocation Group shall be entitled to serve limited reasonable requests for production of non-privileged documents, such requests to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to making such requests, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden.  The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the document requests of an Allocation Group with similarly aligned interests.  Further, such Discovery Participants who do not belong to an Allocation Group will have until May 24, 2013 to seek agreement with a Discovery Participant from whom it seeks documents and, failing agreement, to seek leave of the Courts to make additional document requests if it believes in good faith that such requests are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on each opposing US Claim Party.  The US Claims Defendant Group and the Bondholder Group shall confer on such requests.  In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on the Canadian Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed document request and by the US Court where the US Debtors are the recipient of the disputed document request.  The Canadian and US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

3

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on the US Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed document request and by the US Court where the US Debtors are the recipient of the disputed document request. The Canadian and US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation document requests and US Claims/Canadian Claims document requests. Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional document requests upon a showing of good cause.

*g) Interrogatories*

By no later than May 22, 2013

For Allocation, each Allocation Group shall be entitled to serve a limited number of reasonable Identification Interrogatories, such interrogatories to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to serving such interrogatories, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the interrogatories of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 24, 2013 to seek agreement with a Discovery Participant on whom it wishes to serve interrogatories and, failing agreement, to seek leave of the Courts to serve additional interrogatories if it believes in good faith that such interrogatories are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and US Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on each opposing US Claim Party. The US Claims Defendant Group and the

4

Bondholder Group shall confer on such interrogatories. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the Canadian Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed interrogatory and by the US Court where the US Debtors are the recipient of the disputed interrogatory. The Canadian and US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such interrogatories. In addition, the EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the US Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed interrogatory and by the US Court where the US Debtors are the recipient of the disputed interrogatory. The Canadian and US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation interrogatories and US Claims interrogatories. Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional Identification Interrogatories upon a showing of good cause.

The availability of contention interrogatories shall be decided by mutual agreement among the Discovery Participants at a later date, and, failing agreement, by the Court(s).

*h) Responses and Objections*

<u>By no later than June 10, 2013</u>

When objecting to any discovery request, the recipient of such discovery requests shall state the basis for objection, which may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Recipients are strongly encouraged to prepare joint objections to the same document request or interrogatories to the extent

their objections overlap.

*i) Production of Documents*

**Rolling Productions of Documents Shall Commence June 10, 2013 and Shall Be Completed by July 22, 2013:**

Subject to any objections made and sustained if challenged (see motions procedure below), each recipient of a document request shall produce any responsive non-privileged documents to any request made of it to all Discovery Participants by producing such documents into the Merrill Lextranet database (to the extent they overlap, responses to multiple requests may be combined or cross-referenced to each other to avoid duplication). The producing Discovery Participant shall promptly notify all Discovery Participants of the Docid range of each production.

In this same time frame, each Discovery Participant shall produce any further documents that they intend to rely upon at trial that are not already part of the mediation productions or responsive productions.

*j) Motions to Compel Document Production*

**Motions to Compel Document Productions Must Be Filed by July 26, 2013**

Any Discovery Participant who served document requests and who seeks to compel production of a document must do so only after meeting and conferring in good faith with the Discovery Participant against whom a motion is contemplated, and thereafter by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on seven business days notice on all Discovery Participants, and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The Discovery Participant whose objection is challenged shall respond to this motion within four business days and any other Discovery Participant whose interests are affected by the request may serve a supplementary response within two business days thereafter.

Notwithstanding this deadline, whenever a discovery dispute arises, the affected Discovery Participants shall promptly attempt to resolve the dispute in good faith and, if an impasse is reached, file any motions with the relevant Court(s) promptly.

*k) Privilege Logs*

Should a Discovery Participant withhold any document based on a claim of privilege or work product protection, the producing party shall provide a privilege log containing details about the category of documents

withheld, including at least the following information for each category: (a) the discovery participant asserting the privilege; (b) the subject matter of the category; (c) the date range; and (d) the author(s) and other recipients, which may be grouped by employer (such as Nortel entity or advisor or law firm). Discovery Participants may request additional information regarding categories on the privilege log in order to assess the basis for withholding and shall meet and confer on the same.

The following documents, to the extent created after the commencement of the bankruptcy proceedings, presumptively need not be included on a privilege log: (a) communications exclusively between a Discovery Participant and its outside counsel or (b) work product created by outside counsel and/or such counsel's agents.

Responsive documents which are jointly privileged as to two or more of the Discovery Participants shall be produced, but only to those Discovery Participants with whom the joint privilege is shared.

| 4. Format of Production of Electronic Records | For each electronic document, the responding party shall provide the metadata specified in Schedule A, but only to the extent they can reasonably be extracted or otherwise provided in a delimited text file. |
| --- | --- |
| 5. Trial Witness Identification | <u>By no later than July 24, 2013</u><br><br>Each Discovery Participant shall identify any fact (non-expert) witnesses it anticipates calling or presenting testimony of at trial, by name, employer, title and functional role held during the time period relevant to their anticipated testimony. A Discovery Participant may identify trial witnesses not previously identified on good faith at a later date provided that any opposing Allocation Group or Claim Group has had or will have a reasonable opportunity to depose the later-identified witness before trial, regardless of the fact discovery cut-off or number of depositions taken.<br><br>Any Discovery Participant that has previously filed an affidavit or witness statement in the context of this litigation (the Ontario and Delaware proceedings) may also, at its option, choose to designate that evidence to be tendered at trial as long as the witness will be made available to be deposed and appears at trial for cross-examination. |
| 6. Oral Examinations Or Depositions | *a) Examinations of Representatives/ 30(b)(6) Depositions*<br><br><u>By no later than July 26, 2013</u><br><br>For Allocation, each Allocation Group (other than the Bondholder Allocation Group) may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States |

Federal Rules of Civil Procedure on the solicitors or counsel of record for any opposing Discovery Participant specifying the topics, if any, on which that other Discovery Participant's representative(s) is to be examined/deposed. The Bondholder Allocation Group shall consult with the Canadian Allocation Group and the US Allocation Group regarding any requests under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure it would like the US Allocation Group and the Canadian Allocation Group to serve on other Discovery Participants in accordance with the foregoing. In the event that Canadian Allocation Group and the US Allocation Group do not agree to serve such requests, the Bondholder Allocation Group may seek leave of the Court or Courts, as applicable, by motion on notice to serve its own requests for examination under Rule 34.04 of the Ontario Rules of Civil Procedure and/or depositions under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group may each serve a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the counsel of record for any opposing US Claim Party specifying the topics, if any, on which the US Claim Party's representative is to be deposed. The US Claims Defendant Group and the Bondholder Group shall confer on such requests.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group may each serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure on the solicitors/counsel of record for any opposing Canadian Claim Party specifying the topics, if any, on which the Canadian Claim Party's representative is to be examined/deposed. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests.

Use of (Discovery) Answers at Trial

Testimony of representatives proffered in response to requests under Ontario Rule 31.03 and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure may be used as evidence at trial only by Discovery Participants whose interests are adverse to those of the proffering Discovery Participants on the issue for which the evidence is being used.

By no later than August 2, 2013

Each Discovery Participant served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure shall designate a representative(s)

(who may, but is not required to be, a current or former officer, director or employee of that Discovery Participant) to be offered to be examined/deposed as though Rule 31.03 of the Ontario Rules of Civil Procedure applied and/or under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure as applicable. All Discovery Participants shall have the right to attend such examinations/depositions.

A Discovery Participant may designate its party representative(s) under Rule 34.04 of the Ontario Rules of Civil Procedure as its witness(es) under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure for a single examination/deposition of each such witness(es).

*b) Oral Examinations/ Deposition of Fact Witnesses:*

**By no later than July 29, 2013**

In addition to the aforementioned examinations/depositions pursuant to Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure, each Allocation Group and each Claim Group shall serve by this date notices stating the witnesses it wishes to examine or depose (which may include third parties, persons subject to the control of a Discovery Participant or both and which may be persons who have been identified as trial witnesses by another Discovery Participant, and any persons whose previously filed affidavits/witness statements have been designated by a Discovery Participant as trial evidence) in order to obtain factual information/admissions relevant to Allocation, US Claims or Canadian Claims. Each witness shall be named and his/her place of residence (if known) shall be identified. The parties shall meet as soon as practicable after this date to confer and attempt to reach agreement on the list of witnesses to be deposed and the time for examination of each witness by each party. In the absence of agreement this shall be submitted to the relevant Court(s) for decision. The attorneys for the US Debtors, the Canadian Debtors and the EMEA Debtors agree to accept requests under Rule 34.04 of the Ontario Rules of Civil Procedure and Depositions Notices the United States Federal Rules of Civil Procedure seeking to depose or examine persons under the control of their clients. All parties agree to cooperate in good faith in attempts to locate and obtain testimony from persons not under the control of any party, including through issuance of compulsory process, letters of request and other available procedures, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony.

The Bondholder Group shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, regarding any fact witnesses

it seeks to examine/depose. In the event that the Canadian Allocation Group and the US Allocation Group do not intend to designate such fact witnesses that the Bondholder Group seeks to designate, the Bondholder Group may seek leave of the Court or Courts, as applicable, by motion on notice to designate such fact witnesses.

Either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to designate additional fact witnesses upon a showing of good cause.

All examinations/depositions to be completed by no later than September 27, 2013

The relevant parties shall meet and confer and attempt to agree on the fact witnesses to be examined/deposed and on an examination/deposition schedule that contemplates the completion of all witness examinations/depositions (including any examinations/depositions for testimony preservation that the Court(s) may have granted leave to conduct) in this time frame that reflects the practicalities of examining/deposing each witness (having regard to the number of Discovery Participants examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness). All Discovery Participants shall have the right to attend such examinations/depositions.

The relevant parties will attempt to schedule depositions with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions.

*c) Use of Examinations/Depositions at Trial*

Designated portions of any examination/deposition may be filed as part of the evidence that any Discovery Participant may rely upon at trial in accordance with the usual rules that apply in the Canadian and US Courts, respectively.

**7. Experts**

By no later than September 13, 2013

Each Discovery Participant that intends to rely on the opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

By no later than October 4, 2013

Each Discovery Participant shall deliver an affidavit or report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by Bates number if previously produced, and containing the disclosures required by the Applicable Procedural Regime set forth in section **2**.

Any Discovery Participant that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial, provided that the expert will be made available to be examined/deposed and appears at trial as set out below. If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

Promptly after the submission of initial expert affidavits or reports, the Discovery Participants shall attempt to agree upon an expert examination/deposition schedule so that depositions can commence by November 8, 2013.

By no later than November 1, 2013

Each Discovery Participant shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another Discovery Participant that addresses an issue that is adverse to the Discovery Participant's position in the Allocation, US Claims, or Canadian Claims litigation. Responses shall be permitted even if the Discovery Participant did not initially tender an expert's affidavit, if an issue is raised by an expert whose evidence is tendered by another Discovery Participant that calls for response. Responsive reports shall be limited to responding to issues on which an affirmative expert report has been proffered and shall not go beyond such issues.

By no later than December 6, 2013

As soon as practicable, the Discovery Participants shall meet and confer and attempt to agree on a schedule that contemplates the completion of all expert witness examinations/depositions between November 8, 2013 and December 6, 2013 that reflects the practicalities of examining/deposing

each witness (having regard to the number of parties examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness). All Discovery Participants shall have the right to attend such depositions.

A Discovery Participant may request that any expert be present at trial for cross-examination, and the affidavit or report of any expert not appearing at trial if requested to appear cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

The affidavits and/or reports shall be filed as evidence with the court at the trial, subject only to cross-examination at trial and any applicable objections that may be made and determined at the outset of the trial and directions or rulings from the Court(s) arising therefrom. The Discovery Participant proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

Communications with Experts:

The experts shall not be examined/deposed about or asked to produce prior drafts of their affidavits/reports and/or their communications with the Discovery Participant who retained them or other Discovery Participants within the same Allocation Group or Claim Group, or their respective Representatives, or any other topic protected from disclosure by the Applicable Procedural Regime set forth in section 2.

With respect to Allocation and US Claims, Rule 26 of the United States Federal Rules of Civil Procedure applies to expert discovery.

| 8. General Procedure Applicable to All Oral Examinations/ Depositions | Length of Oral Examinations/Depositions |
|---|---|

Length of Oral Examinations/Depositions

The Discovery Participants will include for discussion in the meet and confer scheduled for August 5 the Discovery Participants' proposals for limits on the length of oral examinations/depositions and the procedure for conducting such examinations/depositions.

Coordinating Oral Examinations/Depositions

Each examination/deposition shall be coordinated so that a lead examiner is identified for each group that noticed the oral examination/deposition (where an Allocation Group and Claim Group from the same jurisdiction counts as one group). Lead examiners shall work in good faith with any other lead examiners as well as other affected Discovery Participants to

reflect a coordinated effort to avoid duplication of questions. For the avoidance of doubt, the US Claim Parties shall have the right to attend oral examinations/depositions that relate to the Canadian Claims, and the Canadian Claim Parties shall have the right to attend oral examinations/depositions that relate to the US Claims.

Transcripts and video taping:

All examinations/depositions shall be taken under oath in the presence of a Canadian or US certified court reporter and transcribed and the transcripts made available to all Discovery Participants, whether or not they are in attendance at the examination/deposition. At the option of any examining/deposing Discovery Participant, the examination/deposition may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining/deposing Discovery Participant(s) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

Objections:

Objections may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Questions that are objected to on grounds other than privilege shall be answered under reserve of that objection. All other objections shall be preserved.

Requirement for Summons:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Debtors, the Joint Administrators, and the UK Pension Claimants shall reasonably assist in issuing process or otherwise procuring a witness's attendance irrespective of which Discovery Participant has sought the witness's deposition, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment or consent to that jurisdiction for any other purpose.

Undertakings:

With respect to Allocation and Canadian Claims, the witness shall answer any undertakings that were agreed to on his/her examination/deposition within two weeks of the date of his/her examination/deposition, unless otherwise agreed to by the affected Discovery Participants.

13

**9. General Terms**

Any Discovery Participant may make a motion to the Court to compel another Discovery Participant to take the steps contemplated by the Discovery Plan or other steps, and the parties agree that the Court(s) may take the existence of the Discovery Plan into account in determining whether to grant the order sought. The Discovery Participants that are parties to such a motion may seek to justify their respective positions on the basis of, among other things, any information that was unknown or not reasonably available to that Discovery Participant at the time the Discovery Plan was entered into.

The Discovery Participants recognize that, as additional information becomes available throughout the Allocation, US Claims and Canadian Claims litigation, it may become apparent that: (a) it is impracticable or impossible for a Discovery Participant to comply with the terms of the Discovery Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery Plan, are required in order for a Discovery Participant to obtain access to potentially relevant documents, information or witness testimony. Each Discovery Participant agrees to notify the other Discovery Participants promptly when it reasonably believes that it will not comply with any term of the Discovery Plan or when it reasonably concludes that further steps beyond those set out in this Discovery Plan are required. The Discovery Participants agree to negotiate in good faith with respect to any amendments to the Discovery Plan requested by a Discovery Participant on that basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Discovery Participants.

All Discovery Participants shall meet and confer in good faith without the assistance of the Court(s) in attempting to resolve any disputes in the interpretation or implementation of this Discovery Plan. Discovery Participants are required to promptly seek relief from the applicable Court or Courts if an impasse is reached in any dispute and shall not be heard to complain of any prejudice resulting from their own delay in seeking relief.

All motions or directions sought from the Court(s) pursuant to this Discovery Plan shall be brought before the following Court or Courts: with respect to Allocation, before Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and Justice Morawetz of the Ontario Superior Court of Justice; with respect to US Claims, before Judge Gross; and with respect to Canadian Claims, before Justice Morawetz. The Courts shall hold regularly scheduled joint discovery conferences for discovery disputes in Allocation and those discovery disputes that affect both jurisdictions.

The EMEA Debtors' participation in the procedures addressed herein is without prejudice to their contention that Allocation should be decided by arbitration rather than the US and Canadian Courts, and shall not be

construed as a waiver of their objection to determining Allocation in accordance with the procedures set forth in the Allocation Protocol, this Discovery Plan and the Litigation Timetable.

All Discovery Participants reserve any rights they may have to object to the standing of any party to participate in any trial.

15

**SCHEDULE A**

Format for Exchange of Productions: Productions will be exchanged by loading each production into the Merrill Lextranet database with the following objectively coded metadata, if reasonably possible, and in the following form:

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| Document Numbering | Docid | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | Parentid | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | Attchids | Note Text | Docid(s) attached to Parentid | AA0000001 |
| Fields/Coded Data for E-mails | Datesent | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | Timesent | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | Timercvd | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | To | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | From | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | Subject | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | Cc | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | Bcc | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | Media | Note Text | Used to identify the type of media for an attachment. When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc. This field is required for loading electronic documents and attachments | As per metadata |
| Fields/Coded Data for Attachments and Loose Electronic Documents | Datesvd | Date | Date an electronic file or attachment was last saved | As per metadata |
| | Datecrtd | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | Filetype | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | Filename | Note Text | File name of electronic file or attachment | As per metadata |
| | Doclink | Note Text | Used to link a document to the database record. Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | Folder | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | Custodian | Note Text | Person from whom document was collected | As per metadata |
| | Media | Note Text | Used to identify the type of media for an attachment. When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc. This field is required for loading electronic documents and attachments. | As per metadata |

16

| Item | Field | Field Type | Description | Format |
|------|-------|------------|-------------|--------|
| Fields/Coded Data for Paper Documents | Docdate | Date | Date of document (subjectively coded) | MM/DD/YYYY |
| | CollectDate | Date | Creation Date of Electronic File | MM/DD/YYYY |
| | Source | Note Text | Location or person from whom document was collected (subjectively coded) | |
| | Attach# | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | Author | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | Recip | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| Fields/Coded Data for Electronic Documents (Chronological Review) | Leaddate | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| | Leadtime | Date | Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together

Allows for further sorting of documents dated the same day by time | HH:MM:SS |

1.    Each document shall be individually produced with a unique document ID number.

2.    For each document, the Discovery Participant shall provide a text file containing the text extracted directly from the native electronic version of that document, unless the document was redacted, is an image file, is a scanned hardcopy document, or is in another format from which text cannot be reasonably extracted.  In these instances, provide a text file created using document-level optical character recognition (OCR) to the extent reasonably practicable.

3.    All images will be single page tiff format (excluding spreadsheets, Powerpoint presentations, and database files which will be provided in native format) with 300 dpi specifications to the extent practicable.  Native format files to be provided in the eDocs folder.

4.    Parties will provide the following load files formatted as follows:

(a)    Image folder (single page tiff, 300 dpi);

(b)    eDocs folder (for native files);

(c)    OCR folder (with text files and a control list for loading);

(d)    data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

(e)     imginfo.txt or imginfo.csv or other formats at the request of the receiving party to the extent practicable.

5.     If a document and its exact duplicates are associated with the same custodian, the responding party may withhold the exact duplicates from production.  If a document and its exact duplicates are associated with different custodians, the responding party may withhold the exact duplicates from production and provide a metadata field for the produced document indicating the custodians for whom duplicates were withheld where practicable.

6.     While Discovery Participants will attempt in good faith to comply with all of the above, Discovery Participants shall produce documents and comply with the above to the extent practicable.

18

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

**ORDER**
**(Litigation Timetable and Discovery Plan)**

**Goodmans LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON    M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Jessica Kimmel (LSUC#: 32312W)
Peter Ruby (LSUC#: 38439P)
Joseph Pasquariello (LSUC#: 38390C)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

\6205385