Court File No.:  09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(Commercial List)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

---

**FACTUM OF THE JOINT ADMINISTRATORS
OF THE EMEA DEBTORS
(Motion returnable January 7, 2014)**

---

January 3, 2014

**LAX O'SULLIVAN SCOTT LISUS LLP**
Suite 2750 - 145 King Street West
Toronto, ON   M5H 1J8

Matthew P. Gottlieb  (LSUC#: 32268B)
Tel:  416.644.5344
Fax:  416.598.3730

**DAVIES WARD PHILLIPS & VINEBERG LLP**
155 Wellington Street West
Toronto, Ontario  M5V 3J7

James Doris  (LSUC#: 33236P)
Bryan D. McLeese (LSUC #55607C)
Tel: 416.863.0900.
Fax: 416.863.0871

Lawyers for the Joint Administrators of the EMEA Debtors

Court File No.: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(Commercial List)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**FACTUM OF THE JOINT ADMINISTRATORS OF THE EMEA DEBTORS**

**PART I ~ OVERVIEW**

1.          The EMEA Debtors[1] file this factum in support of the **US** Debtors' motion to dispense with the Representative Deposition process currently contemplated by the Discovery Plan and Deposition Protocol.

2.          The parties have now had an opportunity to depose over 100 fact witnesses in advance of trial, including each and every trial witness that will be called by any party.  They will also have the opportunity to depose all of the expert witnesses who will be providing opinion evidence at trial.  In addition, the parties are currently negotiating a trial protocol which is expected to include the pre-trial

---

[1]          Capitalized terms used in this factum but not otherwise defined herein shall have the meanings given to them in the Discovery Plan and Deposition Protocol attached as Exhibits "A" and "C", respectively, to the Affidavit of Fara Tabatabai, sworn January 2, 2014 (**"Tabatabai Affidavit"**).

exchange of each party's evidence in chief, including fact witnesses, through affidavits, exhibit lists, deposition designations and pre-trial briefs.

3.          In this context, the Representative Depositions initially proposed to address any gaps in testimony arising from the fact witness depositions are unnecessary, and would represent millions of dollars in unwarranted expense.

4.          Moreover, the inquiries by the Canadian Discovery Group by way of its 651 Representative Depositions topics, are not proper discovery inquiries and are comprised almost entirely of requests to simply list all of the facts and documents in support of the parties' various claims.  In any event, the trial protocol will allow all parties to receive this information in advance of trial, rendering the Representative Depositions entirely redundant.

5.          The EMEA Debtors have reviewed the factum submitted by the US Debtors and support and reiterate the arguments advanced therein.  In this factum, the EMEA Debtors intend to supplement and amplify the arguments advanced by the US Debtors to the extent necessary given the positions of the EMEA Debtors.

## PART II ~ THE FACTS

### A.    Background

6.          The present motion is brought by the US Debtors, and supported by the EMEA Debtors, the UK Pension Claimants, the UCC and the Ad Hoc Group of

Bondholders, following the completion of over 100 depositions of relevant fact witnesses.[2]

7.        Initially, the Deposition Protocol contemplated that pre-trial witness examinations would occur in two stages with depositions of fact witnesses occurring first, followed by the Representative Depositions. After the completion of fact witness depositions, each Deposition Group was entitled to seek Representative Witness testimony from the other parties, but only to the extent that the prior fact witness testimony had not addressed a relevant subject.[3]

8.        As the US Debtors have indicated, the Representative Depositions were at all times intended to be a gap-filling mechanism, which would allow the parties to seek factual testimony that they were otherwise unable to obtain from witnesses with first-hand knowledge if, for example, witnesses were unavailable or unwilling to be deposed. The clearest evidence of this intention is the Deposition Protocol, which entitles each Deposition Group to serve "a very limited number of subjects on which it believes no fact witness currently or formerly associated with the party producing the Representative Witness has provided adequate first-hand testimony." The Deposition Protocol further provides that "[p]rovided such subjects are small in number and reasonable in scope, the Representative Witness has a duty to prepare to testify on the designated subjects."[4] Finally, the Deposition Protocol

---

[2]        Tabatabai Affidavit at para. 8.

[3]        Tabatabai Affidavit at paras. 5-6.

[4]        *Ibid.*

provides that undertakings would not need to be given regarding matters that were "the subject of first-hand deposition testimony obtained from a knowledgeable fact witness".

## B.    The Depositions Conducted To Date

9.          In order to arrive at the list of fact witnesses to be deposed, each Core Party was given the opportunity to designate witnesses they believed to have relevant knowledge based on documents or other information available to them. Of the fact witnesses identified by the parties, nearly every one was ultimately deposed. In total, since the depositions in connection with these proceedings began in late September 2013, over 100 individuals have been deposed in more than 15 cities on three continents at significant cost to all parties.[5]

10.          With respect to the EMEA entities specifically, 39 former EMEA employees, directors and officers were deposed in connection with these proceedings, including numerous former senior EMEA directors, vice presidents and general counsel.[6] The parties also deposed Ryan Smith and Graham Richardson who, while not EMEA employees, were seconded by NNL or NNI to the EMEA region.[7]

---

[5]     Tabatabai Affidavit at paras. 7-8.

[6]     A complete list of the former EMEA personnel deposed in connection with these proceedings is appended as Schedule "A" to the Tabatabai Affidavit.

[7]     Tabatabai Affidavit at para. 9.

11.         During many, if not most, of the 41 depositions of EMEA personnel, the Canadian Debtors and Monitor did not utilize all of the time allotted to them for questioning.[8]

12.         In addition to these 41 individuals, two of the court-appointed Joint Administrators for the EMEA Debtors were deposed: (i) Alan Bloom, partner in the restructuring practice at Ernst & Young UK; and (ii) Chris Hill, Executive Director of the Ernst & Young Ltd. local office in the British Virgin Islands (formerly also of Ernst & Young UK).[9]

13.         The Canadian Discovery Group examined Mr. Bloom for approximately three hours and Mr. Hill for approximately two hours, but asked virtually no questions on any of the EMEA claims, despite the fact that either Mr. Bloom or Mr. Hill had personally signed nearly every Proof of Claim filed on behalf of the EMEA Debtors. Instead, the Canadian Discovery Group chose to examine Mr. Bloom and Mr. Hill primarily on the relationships among the various Ernst & Young entities around the globe.  In the case of Mr. Hill, at the time of his deposition, the EMEA and US Discovery Groups had already advised that they intended to challenge the need for the Representative Deposition process.  If the Canadian Discovery Group believed that they had not obtained adequate fact witness testimony on the Proofs of Claim, it was incumbent on them to ask outstanding questions of the individuals who signed

---

[8]     Tabatabai Affidavit at para. 10.

[9]     Tabatabai Affidavit at para. 11.

the Proofs of Claim. Their decision not to do so should not be a basis for requiring Representative Witness depositions.[10]

C.    **The Representative Examinations Proposed by the Canadian Debtors**

14.    On December 11, 2013, the EMEA Debtors and the US Debtors sought consent from all Core Parties to dispense with the Representative Depositions as a result of the comprehensive fact witness depositions that had taken place. Unfortunately, the Canadian Discovery Group would not consent to this request.[11]

15.    On December 13, 2013, the Discovery Groups each served lists of the topics on which they intended to seek Representative Witness testimony (and upon which they requested that the Representative Witnesses inform themselves and be prepared to testify). Without prejudice to their positions in the current motion, the EMEA Discovery Group and US Discovery Group together served, in aggregate combined total, 16 topics comprising 4 pages.[12]

16.    Notwithstanding the requirement in the Deposition Protocol that the topics be "very limited" in number and "reasonable in scope", the Canadian Discovery Group served a total of 651 topics comprising 101 pages. Of these, 567

---

[10]    Tabatabai Affidavit at para. 12.

[11]    Tabatabai Affidavit at para. 13

[12]    Tabatabai Affidavit at para. 14.

topics comprising 92 pages are specifically directed at Representative Witnesses for the EMEA Debtors.[13]

17.        Not only are the topics served by the Canadian Discovery Group numerous, but they are also extremely broad, unreasonable in scope and represent improper questions on discovery.

18.        The vast majority of the topics identified by the Canadian Discovery Group ask the various EMEA Debtor Representative Witnesses to inform themselves and be prepared to testify to all of the "facts and documents demonstrating" or the "facts and documents that form the basis for" nearly every aspect of the claims and positions advanced by the EMEA Debtors.[14]

19.        These topics, together with the other topics the Canadian Discovery Group served on the EMEA Debtors, cover nearly every fact and document at issue in this litigation.  In addition, the vast majority of these topics, even individually, are improper inquiries for an examination for discovery.  In essence, they represent a request that the EMEA Debtors set out, at this stage, a comprehensive list of all of their trial evidence well in advance of trial.  What makes this request more perplexing in the context of the current proceedings is that the parties deposed more than 100 fact witnesses and are currently negotiating a trial protocol which is expected to

---

[13]    Tabatabai Affidavit at para. 15.  As outlined in the factum of the US Debtors, the Canadian Debtors and Monitor have proposed a potential alternative for discussion, which, for the reasons outlined by the US Debtors, is potentially even more problematic than the 651 topic list they originally served.

[14]    Tabatabai Affidavit at para. 16.  See, e.g. Exhibit "I" to the Tabatabai Affidavit, "Subjects for NNUK Representative Witness", at paras. 4, 13, 15, 20, 27.

include the pre-trial exchange of each party's evidence in chief, including fact witnesses, through affidavits, exhibit lists, deposition designations, and pre-trial briefs. As a result, the parties will receive a comprehensive list of trial evidence in advance of trial, without the need for the Representative Depositions currently at issue.[15]

20.        Notwithstanding the unreasonably broad scope of their own topics under the Deposition Protocol, the Canadian Debtors and Monitor objected to each of the five topics that the EMEA Discovery Group served on them, asserting, among other things, that the topics were improper to the extent that they called for information already available in fact witness testimony or through the documents produced to date.[16]

21.        To prepare properly to respond to the sheer volume and unreasonably broad nature of the questions the Canadian Discovery Group has posed would require a massive amount of effort and time at enormous expense, running into the millions of dollars. This task could not be undertaken in the short period of time allotted for it, and even with significant additional time it would be impossible to answer the vast majority of the questions given their breadth. Moreover, it is unlikely that the Representative Depositions would result in the discovery of any new information that was not already available to the parties as a result of the more than

---

[15]        Tabatabai Affidavit at paras. 17, 20.

[16]        Tabatabai Affidavit at para. 18.

100 depositions conducted to date or through the production of more than two million documents.[17]

22.        As indicated above, there will be extensive pre-trial exchange of evidence.  Importantly, the proposed trial procedures will also prohibit any party from calling at trial a witness that has not been deposed.[18]  Given this pre-trial exchange of evidence and the extensive fact discovery already conducted to date, including the fact that each party has had the opportunity to depose every single potential trial witness, Representative Depositions are not necessary and cannot be justified in light of the enormous expense that would be required to prepare for and conduct them.

## PART III ~ LAW AND ARGUMENT

23.        As mentioned above, the EMEA Debtors agree with and rely upon the submissions of the US Debtors.   In addition to those submissions, each of the following is addressed briefly below: (i) the scope of depositions to date combined with the trial protocol being negotiated renders the Representative Depositions unnecessary; and (ii) the nature of the topics served by the Canadian Deposition Group reveal that the Representative Depositions are unnecessary.

A.     **The Depositions Conducted to Date and the Anticipated Trial Protocol Render Representative Depositions Unnecessary.**

24.        To the surprise of the parties, almost every single witness designated for pre-trial deposition testimony was ultimately deposed, including 41 EMEA-related

---

[17]     Tabatabai Affidavit at para. 19.

[18]     Affidavit of Jeffrey A. Rosenthal, to be sworn, at para. 36(i).

deponents.  As a result, the parties have had an unprecedented opportunity (at least in the Canadian context) to examine, in advance of trial, every single witness[19] who will ultimately testify at trial as well as dozens of additional witnesses (assuming that not all of the 100-plus deponents will be trial witnesses).  As a corollary, every single fact that will be led by any party at trial either was, or could have been, obtained during the deposition process.

25.        It is in this context that the intended purpose of the Representative Depositions as a "gap-filling" mechanism, is most relevant.  Because the parties have obtained such a significant volume and percentage of the pre-trial testimony sought, and because they have agreed to limit trial witnesses to those individuals deposed, there are no gaps to be filled.  Furthermore, the Canadian Discovery Group has also already examined two Joint Administrators for the EMEA Debtors.

26.        The only two effects of the Representative Depositions will be to require the parties to exchange this information months before trial, before any party would have a reasonable opportunity to consider the evidence adduced so far (particularly as document review is ongoing) and determine all of the facts and documents on which they intend to rely at trial; and to do so twice, inserting into the pre-trial process an additional and extremely expensive process.  As outlined above, the expense associated with the Representative Depositions will be expanded significantly by the

---

[19]    While they have not been deposed to date, this also includes expert witnesses who are also slated to submit to depositions in advance of trial.

extreme breadth of topics (651 topics in total) that the Canadian Deposition Group

has requested that the Representative Witnesses inform themselves on.

**B.    The Nature of the Topics Served by the Canadian Deposition Group Reveal that Representative Depositions Are Unnecessary**

27.        The vast majority of what the Canadian Discovery Group seeks to

obtain by way of the Representative Deposition process are complete lists of all of

the "facts and documents" demonstrating or supporting the various claims made by

the other parties.   As a representative example, of the 30 separate topics directed

specifically towards the Representative Witness for Nortel Networks UK Ltd., 26

request such exhaustive lists of facts and documents.[20]

28.        Questions of this nature were clearly not what was contemplated by the

Discovery Plan and Deposition Protocol.   As discussed above, the Deposition

Protocol requires that the parties serve "a very limited number of subjects on which it

believes no fact witness currently or formerly associated with the party producing the

Representative Witness has provided adequate first-hand testimony."   It is not

possible that any witness could provide adequate first-hand testimony on all of the

"facts and documents" in support of any particular claim or position of any party and it

is therefore implicit in the wording of the Deposition Protocol that this type of inquiry

is not what was intended for the Representative Depositions.

---

[20]        Tabatabai Affidavit, Exhibit "I", "Subjects for NNUK Representative Witness at paras. 1-4, 7-8, 10-22, 24-30.

29.        Moreover, for all the reasons set out by the US Debtors and by the Court in the *Livent* decision, in particular when discovery has been extensive, there is no requirement for a party to identify all of the documents it will be relying on at trial.[21] In any event, the parties have agreed to the pre-trial exchange of evidence in chief by way of affidavits, exhibit lists, deposition designations and pre-trial briefs.  Where they disagree is whether such disclosure is required as part of the Representative Deposition process as well.  Given the enormous expense, running into the millions of dollars, of embarking on the entirely redundant exercise of Representative Depositions, the process cannot possibly be justified.

## PART IV ~ CONCLUSION

30.        For all of the foregoing reasons, the Joint Administrators of the EMEA Debtors respectfully request that the US Debtors' motion be granted with costs.

January 3, 2014            ALL OF WHICH IS RESPECTFULLY SUBMITTED.

LAX O'SULLIVAN SCOTT LISUS LLP

DAVIES WARD PHILLIPS & VINEBERG LLP

---

[21]    *Livent Inc. (Special Receiver) v. Deloitte & Touche*, 2012 ONSC 7007, US Debtors' Brief of Authorities, Tab 1.

## SCHEDULE "A"
## LIST OF AUTHORITIES

1. *Livent Inc. (Special Receiver) v. Deloitte & Touche*, 2012 ONSC 7007 (S.C.J. (Master).

## SCHEDULE "B"
## STATUTES

Nil

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C.
1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, et al.

Court File No. 09-CL-7950

**ONTARIO**
SUPERIOR COURT OF JUSTICE
(Commercial List)

Proceeding commenced at Toronto

**FACTUM OF THE JOINT ADMINISTRATORS
OF THE EMEA DEBTORS**

LAX O'SULLIVAN SCOTT LISUS LLP
Suite 2750 - 145 King Street West
Toronto, ON   M5H 1J8

Matthew P. Gottlieb  (LSUC#: 32268B)
Tel:  416.644.5344
Fax:  416.598.3730

DAVIES WARD PHILLIPS & VINEBERG LLP
155 Wellington Street West
Toronto, Ontario  M5V 3J7

James Doris  (LSUC#: 33236P)
Bryan D. McLeese (LSUC #55607C)
Tel: 416.863.0900.
Fax: 416.863.0871

Lawyers for the Joint Administrators of the EMEA
Debtors