# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X

*In re*                                   :        Chapter 11
                                          :
Nortel Networks Inc., *et al.*,           :        Case No. 09-10138 (KG)
                                          :
                   Debtors.[1]            :        Jointly Administered
                                          :
                                          :
-------------------------------------------------------- X

## NOTICE OF FILING COURTESY COPY OF FACTUM OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NORTEL NETWORKS INC., *ET AL.* (REPRESENTATIVE PARTY DEPOSITION MOTION, RETURNABLE JANUARY 7, 2014)

PLEASE TAKE NOTICE that the Official Committee of Unsecured Creditors of Nortel Networks Inc., *et al.* has today filed a copy of the attached **Factum of the Official Committee of Unsecured Creditors of Nortel Networks Inc., *et al.* (Representative Party Deposition Motion, returnable January 7, 2014),** being filed substantially contemporaneously *In the Matter of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as Amended and In the Matter of a Plan of Compromise or Arrangement of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation* pending in the Ontario Superior

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (b), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Court of Justice (Commercial List), No. 09-CL-7950, with the United States Bankruptcy Court

for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

Dated: January 3, 2014
      Wilmington, Delaware

                                                                       
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Fred S. Hodara, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Nortel Networks Inc., et al.*

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

**FACTUM OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
NORTEL NETWORKS INC., ET AL.**
**(Representative Party Deposition Motion, returnable January 7, 2014)**

**DENTONS CANADA LLP**
77 King Street West, Suite 400
Toronto-Dominion Centre
Toronto, ON  M5K 0A1

Fax: 416-863-4592

**Shayne Kukulowicz** (LSUC#: 30729S)
Tel: 416-863-4740
Email: shayne.kukulowiz@dentons.com

**Michael Wunder** (LSUC#: 31351O)
Tel: 416-863-4715
Email: michael.wunder@dentons.com

**Ryan Jacobs** (LSUC#: 59510J)
Tel: 416-862-3407
Email: ryan.jacobs@dentons.com

**Barbara Grossman** (LSUC#: 20947K)
Tel:  416-862-3407
Email: barbara.grossman@dentons.com

Lawyers for the Official Committee of Unsecured
Creditors of Nortel Networks Inc., et al.

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

**FACTUM OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
NORTEL NETWORKS INC., ET AL.**

**PART 1 – OVERVIEW**

*The motion*

1.      The Official Committee of Unsecured Creditors (the "**UCC**") of Nortel Networks, Inc. et

al. (collectively, the "**US Debtors**") supports the motion brought by the US Debtors seeking to

further amend the Amended Litigation Timetable set out as Schedule A to this Court's Order

dated November 19, 2013 (the "**Litigation Timetable**") by dispensing with the representative

witness depositions (the "**Representative Depositions**") of the US Debtors, the UCC, and the

other Core Parties[1] in these cases and modifying each of the Allocation Protocol, the Litigation

Timetable and Discovery Plan, and the Deposition Protocol accordingly.  The UCC adopts the

submissions set out in the Factum of the US Debtors and files this Factum to supplement those

submissions from the unique vantage point of the UCC.

---

[1] All defined terms not defined herein shall have the meaning ascribed to them in the Affidavit of Jeffrey A.
Rosenthal.

- 3 -

### *Summary of the position of the UCC*

2.      The UCC adopts the US Debtors' position that Representative Depositions of any Core

Party are unnecessary. As set forth more fully in the Affidavit of Jeffrey A. Rosenthal

("**Rosenthal Affidavit**"), fact discovery in this proceeding has been on a scale unprecedented in

Canadian litigation. The UCC fully supports the position of the US Debtors and the EMEA

parties (including the EMEA Debtors (defined below) and representatives of the UK Pension

Claimants) that, after massive document discovery and more than 100 depositions across the

globe, the Monitor (defined below) and Canadian Debtors (defined below) have had more than

ample opportunity to thoroughly explore all relevant factual matters. Creditor recoveries should

not be further reduced by the incurrence of significant additional professional fees that

Representative Depositions would entail.

> *Rosenthal Affidavit* at paras. 14-17, 29-44, US Debtors' Motion Record
> Tab 2

3.      Although Representative Depositions are common practice in Canada, in this case, as part

of a unique and carefully negotiated process for the cross-border allocation and claims

litigations, the parties agreed to limit the Representative Depositions process significantly.

Specifically, the Deposition Protocol—as agreed by the Core Parties and as approved by this

Court on August 27, 2013—provides that Representative Depositions are designed to address the

"very limited number of subjects on which [a Deposition Group] believes no fact witness

currently or formerly associated with the party producing the Representative Witness has

provided adequate first-hand testimony"[2]. As explained in the Rosenthal Affidavit,

---

[2] Section G of the Deposition Protocol approved by Order of this Court dated August 27, 2013 dealing with
Representative Depositions is excerpted at Schedule C to this Factum for ease of reference.

- 4 -

Representative Depositions were included in the Deposition Protocol for the limited purpose, if

necessary, of "filling the gaps", if any, that remained after the close of fact witness discovery.

> *August 27, 2013 Order of Justice Pattillo, Deposition Protocol, Schedule*
> *A, Exhibit 1, p. 14 at para. G(1)(a), Tabatabai Affidavit, Exhibit C,*
> EMEA Debtors' Motion Record, Tab C

> *Rosenthal Affidavit* at paras. 14-15, US Debtors' Motion Record, Tab 2

4.      Yet, the Monitor and Canadian Debtors have not adhered to the factual gap-filling

purpose envisioned by the Deposition Protocol, instead adopting a scattershot approach across 27

wide-ranging subjects. Their revised and purportedly narrower list of five subjects is, as set forth

in the Rosenthal Affidavit, equally broad and arguably even more burdensome on the parties.

Most importantly, Representative Depositions on these five topics are just as inconsistent with

the purpose of such depositions as the original 27 topics, and should not be permitted to proceed.

Moreover, the need for Representative Depositions to hedge against the risk of surprise at trial is

nil. The extensive factual discovery has not left any gaps to be filled, and the agreed procedures

would not allow the Core Parties to name additional fact witnesses at this late date.

> *Rosenthal Affidavit* at paras. 37-44, US Debtors' Motion Record, Tab 2

5.      If, however, this Court finds that some form of Representative Depositions are necessary,

these depositions should be restricted to the "very limited number of subjects" on which "no fact

witness . . . has provided adequate first-hand testimony" in accordance with the Deposition

Protocol. As evidenced by the Monitor and Canadian Debtors' scattershot approach, they have

not identified any specific gaps in the factual record that need to be filled by representative

witness testimony.

> See Schedule "C" to this Factum for relevant para. G(1)(a) in Deposition
> Protocol

> *Rosenthal Affidavit* at paras. 14-17, 37-44, US Debtors' Motion Record, Tab 2

6.      The nature of the Monitor and Canadian Debtors' strategy is particularly evident in its topic requests to the UCC. Even if this Court concludes that Representative Depositions from some of the Core Parties are necessary, it should not permit a Representative Deposition from a UCC-designated witness for three reasons:

(i)      certain subjects noticed to the UCC by the Monitor and Canadian Debtors relate to events that pre-date the UCC's formation on January 22, 2009, and therefore a UCC-designated witness cannot offer first-hand testimony on those subjects;

(ii)      other subjects seek testimony concerning matters that are properly within the scope of expert testimony, with initial expert disclosures occurring within three weeks pursuant to the schedule agreed to by the parties; and

(iii)      some subjects call for the disclosure of legal positions, or the factual bases underlying those positions, and these disclosures will occur through the trial preparation briefing process which is to take place closer to trial, as specifically provided for in the Litigation Timetable.

## PART II – FACTS

7.      On January 14, 2009, Nortel Networks Corporation et al. (collectively, the "**Canadian Debtors**") commenced a proceeding in the Canadian Court under the *Companies' Creditors Arrangement Act* seeking relief from their creditors. Ernst & Young Inc. was appointed as Monitor by the Canadian Court (the "**Monitor**").

8.      Also on January 14, 2009, the US Debtors (other than Nortel Networks (CALA) Inc.) filed voluntary petitions for relief under Chapter 11 of the US Bankruptcy Code in the US Court, the cases of which are consolidated for procedural purposes only.

9.      Also on January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates into administration under the control of individuals from Ernst & Young LLP (collectively, the "**EMEA Debtors**," and, with the Canadian Debtors and the US Debtors, collectively the "**Debtors**").

10.     On January 15, 2009, the US and Canadian Courts each approved the Cross-Border Court-To-Court Protocol, which was later amended by order of both courts.

11.     On January 22, 2009, the US Court approved the formation of the UCC, a statutory committee consisting of representatives of all of the US Debtors' unsecured creditors.

12.     On May 15, 2013 and May 17, 2013, this Court and the US Court, respectively, signed orders approving the Litigation Timetable and Discovery Plan pursuant to the Allocation Protocol.

> *May 15, 2013 Order of Justice Morawetz, Tabatabai Affidavit, Exhibit A,*
> EMEA Debtors' Motion Record, Tab A

13.     On August 27, 2013 and August 26, 2013, this Court and the US Court, respectively, made orders modifying the schedule set out in the Litigation Timetable and approving the Deposition Protocol.

> *August 27, 2013 Order of Justice Pattillo, Tabatabi Affidavit, Exhibit C,*
> EMEA Debtors Motion Record, Tab C

14.     On November 19, 2013 and November 27, 2013, this Court and the US Court, respectively, made orders further modifying the schedule set out in the Litigation Timetable.

*November 19, 2013 Order of Justice Morawetz, Tabatabai Affidavit,*
*Exhibit B, EMEA Debtors Motion Record, Tab B*

15.     On December 13, 2013, the Monitor and Canadian Debtors noticed the UCC, along with

the other Core Parties, with representative witness subjects, which the Monitor and Canadian

Debtors amended on December 15, 2013. Specifically, the Monitor and Canadian Debtors

noticed the UCC with 27 subjects.

*Amended Representative Witness Subjects Served by the Canadian*
*Allocation Group and the Canadian Claims Defendant Group, Rosenthal*
*Affidavit, Exhibit C, US Debtors' Motion Record, Tab C*

16.     On December 21, 2013, the Monitor and Canadians Debtors provided the UCC with a

purportedly narrower list of five general subjects. The five subjects were Subjects 1, 4, 9, 10,

and 13 from the original list. These five subjects are so broad, however, that they essentially

encompass all 27 original subjects.

*Email from Jennifer Stam of Gowlings to Core Parties (December 21,*
*2013, 10:53 p.m. EST), Rosenthal Affidavit, Exhibit P,  p. 11, US*
Debtors' Motion Record, Tab P

## PART III – THE LAW

17.     This motion should be determined in accordance with the overarching principle of

"proportionality in discovery" encapsulated in Rule 29.2 of the *Rules of Civil Procedure*. The

following considerations set out in Rule 29.2.03(1) are applicable:

(a)  the time required for the party or other person to answer the question or produce the
document would be unreasonable;

(b) the expense associated with answering the question or producing the document would
be unjustified;

(c) requiring the party or other person to answer the question or produce the document
would cause him or her undue prejudice;

- 8 -

(d) requiring the party or other person to answer the question or produce the document would unduly interfere with the orderly progress of the action; and

(e) the information or the document is readily available to the party requesting it from another source.

> *Livent Inc. (Receiver of) v. Deloitte & Touche*, 2012 ONSC 7007 at paras. 69-73

## The UCC Supports the Position of the US Debtors that Representative Depositions are Duplicative and Burdensome

18.     The UCC supports the position of the US Debtors that Representative Depositions should not occur at all, and that, in the alternative, if Representative Depositions do occur, they should be significantly limited, and adopts all arguments made by the US Debtors in their Factum in support of their motion.

19.     As explained in the Rosenthal Affidavit, the unprecedented discovery process to date has included considerable document discovery and more than 100 witness depositions, including the depositions of current and former Nortel executives and directors, third-party witnesses, and representatives of the various Nortel estates. Given this extensive factual record, the gap-filling nature of Representative Depositions envisioned by the Deposition Protocol is no longer applicable. Furthermore, there is no need to require Representative Depositions to avoid the risk of surprise at trial. As set forth in the Discovery Plan, the Core Parties were required to disclose trial witnesses long ago and cannot add trial witnesses at this late date, after fact discovery has closed. Accordingly, there is no risk whatsoever that "the door is not yet closed" regarding factual disputes. With this aspect of the Core Parties' agreed procedure, there is no need for Representative Depositions merely to reconfirm that "the door is closed" and "all gaps are filled". The comprehensive factual record, coupled with prior disclosures, has eliminated the need for Representative Depositions.

> *May 15, 2013 Order of Justice Morawetz, Schedule A, Discovery Plan, p.*
> *7, section 5,  Tabatabai Affidavit, Exhibit A*, EMEA Debtors' Motion
> Record, Tab A
>
> *Rosenthal Affidavit* at paras. 14-17, 29-36, US Debtors' Motion Record,
> Tab 2

20.     If, however, this Court permits some form of Representative Depositions to proceed, the

deposition subjects should be curtailed in accordance with the Deposition Protocol. In the

protocol, the parties agreed to significantly curtail the Representative Deposition process to

"a very limited number of subjects on which [a Discovery Group] believes no fact witness

currently or formerly associated with the party producing the Representative Witness has

provided adequate first-hand testimony". Despite this explicit restriction, the Monitor and

Canadian Debtors have not identified any gaps in the factual record that representative witness

testimony would be needed to fill.

> See Schedule "C" to this Factum for relevant para. G(1)(a) in Deposition
> Protocol
>
> *Rosenthal Affidavit* at paras. 14-15, 29-36, US Debtors' Motion Record,
> Tab 2

21.     Even under their purportedly narrowed five subjects, the Monitor and Canadian Debtors

seek all "the facts and documents" underlying each of the wide-ranging subjects relating to the

historic intellectual property and "products" practices of the Nortel affiliates. Rather than

plugging isolated factual holes in the record, the Monitor and Canadian Debtors are seeking to

use Representative Depositions to obtain a comprehensive anthology of the information upon

which the UCC will rely in support of their positions. But identifying the underlying factual

bases of a party's litigation position does not comport with the narrow purpose of Representative

Depositions agreed to by the parties—namely to fill gaps in the factual record.[3]

22.     Although the UCC agrees with the US Debtors that Representative Depositions are in the present circumstances wholly unnecessary, if the Court permits the Representative Depositions to proceed, the Monitor and Canadian Debtors should be required to limit the deposition subjects to filling gaps in the factual record, as agreed to by the parties in the Deposition Protocol.

**A Representative Deposition of a UCC-Designated Witness Is Particularly Unnecessary and Wasteful**

23.     The deposition of a UCC-designated witness, whether on the 27 original subjects or the purportedly narrower five general subjects, would be duplicative, unlikely to lead to the discovery of any admissible evidence, and a waste of the estates' resources for three principal reasons: (i) the vast majority of the events about which the Monitor and Canadian Debtors seek testimony pre-dates the UCC's formation; (ii) the Monitor and Canadian Debtors seek testimony from a UCC fact witness on matters that will properly be the subject of expert discovery; and (iii) many topics call for testimony that is protected from disclosure by the attorney-client privilege or the work-product doctrine.

24.     First, the Monitor and Canadian Debtors have requested testimony on subjects relating to events that occurred before the bankruptcy filing and prior to the formation of the UCC. As a statutory committee, the UCC came into existence post-petition, pursuant to the US Bankruptcy Code, on January 22, 2009. Therefore, the UCC cannot put forth a witness with personal knowledge regarding events that took place prior to January 22, 2009.

---

[3] Moreover, the parties agreed in the Litigation Timetable and Discovery Plan approved and amended by Orders of this Court dated May 15, 2013, August 27, 2013 and November 19, 2013 that they would have until shortly before trial to review the enormous record and determine the information that supports their positions. Overturning that timetable at this stage would be burdensome and inappropriate.  See p. 3 and p. 6 (item 5 Trial Logistics) of Schedule A to the November 19, 2013 Order which provides for deadlines in mid-April 2014.

- 11 -

25.     At least 22 of the 27 topics originally served on the UCC expressly call for testimony concerning matters pre-dating the UCC's formation.[4] For example:

    (a)    Subject #5: "The past practices of NNL and its subsidiaries concerning the scope of the licenses to Nortel intellectual property under the Cost-Sharing Agreements and the MRDA."

    (b)    Subject #8: "The facts and documents demonstrating the reasons why it was decided that NNL would be the registered owner of all of the NN Technology (as that term is defined in the MRDA)."

    (c)    Subject #11: "The scope and use of third-party products and components used or embodied in Nortel products and the marketing of third party Original Equipment Manufacturer products by Nortel."

26.     Moreover, each of the purportedly narrowed subjects provided by the Monitor and Canadian Debtors suffer from this same deficiency. For example, Subjects 1, 4, and 9 concern the ownership, licensing, and assignment of Nortel's intellectual property. But the facts underlying the status of Nortel's intellectual property occurred prior to the formation of the UCC.

    (a)    Subject #1: "The facts and documents, other than the MRDA, demonstrating the [UCC's] understanding of the phrase 'equitable and beneficial ownership' as used in the MRDA and the term 'economic ownership' as used in the [UCC's] allocation pleadings."

---

[4] Among the subjects that call for testimony concerning matters pre-dating the formation of the UCC are Subjects 1–15, 17–22, and 26.

(b)     Subject #4: "The factual and documentary basis for and scope of licenses of Nortel's intellectual property, including any enhanced licences, held by parties other than NNL."

(c)     Subject #9: "The facts and documents demonstrating how and to what extent intellectual property was assigned to NNL by NNL's subsidiaries, inventors/authors and others."

27.     Similarly, Subject #10 seeks information concerning "Nortel's processes for the identification and development of products." But the facts underlying Nortel's decision-making process arose before the UCC's creation.

28.     Although the UCC may take a position on certain topics through its expert witnesses and in its trial preparation briefing, there is no possibility that a UCC witness can give testimony based on first-hand knowledge because the facts underlying these positions predate the existence of the UCC. Given the Core Parties' intended purpose of Representative Depositions outlined in the Deposition Protocol—to supplement testimony where no Party provided "*adequate first-hand testimony*"—second-hand factual testimony from a UCC witness is not what the Parties contemplated. Therefore, a Representative Deposition of a UCC witness should not be required.

29.     Second, the Monitor and Canadian Debtors have requested testimony on topics that are properly the subject of expert testimony. Though Representative Depositions may serve the function of expert disclosure in other cases, in this case, the parties agreed that the Representative Deposition process would be limited to filling gaps in the record, not obtaining expert disclosure. Moreover, as outlined by the Litigation Timetable, the disclosure of expert opinion or testimony that the UCC intends to offer at trial will occur through the expert discovery process, including initial disclosures to be filed just three weeks from now, on January

24, 2013. Therefore, Representative Depositions are an inappropriate method to elicit the position of a UCC expert and, given the coming disclosures, would be burdensome and unnecessary.

30.      Among the subjects that call for testimony on matters properly within the scope of expert testimony are Subjects 1, 4, 9, 12, 15, 16, 18, 20, 23, 25, and 26. For example:

(a)      Subject #15: "The value the US Debtors attribute to tangible assets sold as part of each of the line of business sales and the factual bases supporting those values."

(b)      Subject #16: "The US debtors' position on what amounts should be allocated to each of the estates in respect of the sales of tangible assets and on what factual basis."

31.      Accordingly, because the disclosure of the UCC's expert positions will occur in accordance with the agreed-upon Litigation Timetable, representative witness testimony by the UCC on these subjects should not be required.

32.      Third, the Monitor and Canadian Debtors have requested testimony concerning the factual basis for certain legal positions that the UCC may assert at trial. But the disclosure of the legal positions that the UCC may assert at trial, along with the factual bases underlying those positions, will occur through the trial preparation briefing process, as envisioned by the parties in the Litigation Timetable.[5]

---

[5] The currently applicable deadlines and steps for the trial preparation briefing process according to the Amended Litigation Timetable provided for in this Court's Order dated November 19, 2013 are as follows:

> Deadline: April 10, 2014 to file a list of all witnesses and exhibits that each Core Party intends to reply upon as part of its direct case
>
> Deadline: April 17, 2014 for the service with filing on the following business day of: pre-trial materials; pre-trial briefs; all fact affidavits to be used in direct case; all exhibits to be used in direct case; all deposition testimony to be used in direct case

- 14 -

> *November 19, 2013 Order of Justice Morawetz, Schedule A, p. 3 and p.*
> *6 (item 5, Trial Logistics), Tabatabai Affidavit, Exhibit B,* EMEA
> Debtors' Motion Record, Tab B

33.    Among the subjects that seek the factual underpinnings of the UCC's positions are

Subjects 8, 9, 12–16, and 26. For example,

(a)    Subject #9: "The facts and documents demonstrating how and to what extent

intellectual property was assigned to NNL by NNL's subsidiaries,

inventors/authors and others."

(b)    Subject #16: "The [UCC's] position on what amounts should be allocated to each

of the estates in respect of the sales of tangible assets and on what factual basis."

34.    Moreover, the UCC's legal opinions themselves are protected from disclosure by the

attorney-client privilege, attorney-work product, and other applicable privileges—and are thus

not discoverable. Therefore, given the planned disclosure of the UCC's legal position and the

underlying factual bases, representative witness testimony on these topics is inappropriate.

## PART IV – RELIEF REQUESTED

35.    The UCC requests that this Court grant the motion of the US Debtors seeking to further

amend the Amended Litigation Timetable and Expert Discovery Protocol by dispensing with the

Representative Depositions of the US Debtors, the UCC, and the other Core Parties in these

cases, and modifying each of the Allocation Protocol, the Litigation Timetable and Discovery

Plan, and the Deposition Protocol accordingly.

- 15 -

January 2, 2013                 **ALL OF WHICH IS RESPECTFULLY SUBMITTED**

_____
Shayne Kukulowicz

_____
Michael Wunder

_____
Ryan Jacobs

_____
Barbara Grossman

Lawyers for the Official Committee of Unsecured
Creditors of Nortel Networks Inc., et al.

- 16 -

**SCHEDULE "A"**
**LIST OF AUTHORITIES**

*Livent Inc. (Receiver of) v. Deloitte & Touche*, 2012 ONSC 7007

## SCHEDULE "B"
## STATUTES AND REGULATIONS

*Rules of Civil Procedure*, **R.R.O. 1990, Reg. 194**

### RULE 29.2 PROPORTIONALITY IN DISCOVERY

## DEFINITION

29.2.01  In this Rule,

"document" has the same meaning as in clause 30.01 (1) (a). O. Reg. 438/08, s. 25.

## APPLICATION

29.2.02  This Rule applies to any determination by the court under any of the following Rules as to whether a party or other person must answer a question or produce a document:

1. Rule 30 (Discovery of Documents).

2. Rule 31 (Examination for Discovery).

3. Rule 34 (Procedure on Oral Examinations).

4. Rule 35 (Examination for Discovery by Written Questions). O. Reg. 438/08, s. 25.

## CONSIDERATIONS

### General

29.2.03  (1)  In making a determination as to whether a party or other person must answer a question or produce a document, the court shall consider whether,

(a) the time required for the party or other person to answer the question or produce the document would be unreasonable;

(b) the expense associated with answering the question or producing the document would be unjustified;

(c) requiring the party or other person to answer the question or produce the document would cause him or her undue prejudice;

(d) requiring the party or other person to answer the question or produce the document would unduly interfere with the orderly progress of the action; and

(e) the information or the document is readily available to the party requesting it from another source. O. Reg. 438/08, s. 25.

### Overall Volume of Documents

(2)  In addition to the considerations listed in subrule (1), in determining whether to order a party or other person to produce one or more documents, the court shall consider whether such an order would result in an excessive volume of documents required to be produced by the party or other person. O. Reg. 438/08 s. 25.

**SCHEDULE "C"**
**SECTION G OF THE DEPOSITION PROTOCOL**
**APPROVED BY ORDER OF THIS COURT DATED AUGUST 27, 2013**

**G.    RULE 30(B)(6) AND REPRESENTATIVE PARTY DEPOSITIONS/**
**EXAMINATIONS**

1.    Notwithstanding anything in the Discovery Protocol and Litigation Timetable to the contrary, representative party depositions/examinations for discovery under Rule 31 of the Rules of Civil Procedure for Ontario (hereinafter "Representative Depositions" of "Representative Witnesses") shall be conducted as follows:

(a)    All previously served Rule 30(b)(6) notices are deemed superseded by this paragraph. At least ten business days before the commencement of Representative Depositions, a Deposition Group may serve a very limited number of subjects on which it believes no fact witness currently or formerly associated with the party producing the Representative Witness has provided adequate first-hand testimony. Provided such subjects are small in number and reasonable in scope, the Representative Witness has a duty to prepare to testify on the designated subjects. In the event a party designates an unreasonable number of subjects relative to the time limitations for the examination, subjects of an impermissibly broad scope or subjects inappropriate for a Representative Deposition, objections shall be served within three business days. The applicable parties shall meet and confer in good faith within two business days thereafter and, failing agreement, the burden shall be on the noticing party to obtain judicial relief at least two business days (in order to enable preparation) prior to the Representative Deposition. The failure to obtain judicial relief on a timely basis shall not be a basis to adjourn a Representative Deposition.

(b)     Representative Depositions shall be scheduled through the Scheduling Committee process and with similar procedures. The identity of Representative shall be disclosed at least five business days prior to their scheduled deposition dates.

(c)     Discovery Participants shall not be limited in their examination of the Representative Witness to the noticed subjects; however, the Representative Witness shall have no duty to prepare for such examination on any specific subjects other than those noticed to which no objection was raised or court order obtained.

(d)     Any undertakings required in accordance with Rule 31 of the *Rules of Civil Procedure* for Ontario shall be limited to specific matters of fact outside the Representative Witness's knowledge, information and belief that are not already the subject of first-hand deposition testimony obtained from a knowledgeable fact witness. In the event of disagreement, the applicable parties shall meet and confer promptly and promptly thereafter bring any dispute to the attention of the appropriate Court.

2.      Each Discovery Participant who filed an independent pleading (other than a non-argumentative joinder) shall designate one Representative Witness to be deposed in Toronto or New York, unless otherwise agreed by each of the Deposition Groups. Additionally, any Discovery Participant (other than the estates or UKP) who filed an independent pleading may withdraw such pleading by November 15, 2013 (and may file a non-argumentative joinder in its place) and thereby not be subject to the requirement to designate a Representative Witness. Notwithstanding the foregoing, the Directors and Officers shall not be required to designate a Representative Witness.

3.      Time allocation for Representative Depositions:

    (a)      The Representative Witness for each of the U.S. Debtors, the Canadian Debtors, the U.K. Pension Claimants and NNUK shall be deposed for two seven-hour days, with one day being allocated to each of the two other Deposition Groups.

    (b)      The Discovery Participants disagree on the amount of time for Representative Witnesses for the EMEA Debtors other than NNUK, including whether the EMEA Debtors can designate one Representative Witness for all of the EMEA Debtors collectively. To the extent they are unable to reach consensual resolution, the parties reserve all rights and will seek judicial guidance.

    (c)      Each Representative Witness for each of the other Discovery Participants who filed an independent pleading (other than a non-argumentative joinder) shall be deposed for no longer than one seven-hour day (measured by the "on-the-record" time), with half being allocated to each of the two opposing Deposition Groups.

4.     If a party designates a Representative Witness who has already been deposed as a fact witness, that party waives any objection to a second deposition. Unless agreed to by the Deposition Participants who noticed the fact deposition, Representative Depositions shall occur separate from fact depositions.

5.     Representative Depositions shall occur during the last two weeks before fact depositions end.

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

---

*ONTARIO*
### SUPERIOR COURT OF JUSTICE
(Commercial List)

PROCEEDING COMMENCED AT TORONTO

---

### FACTUM OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NORTEL NETWORKS INC. et al.
**(Representative Party Deposition Motion, returnable January 7, 2014)**

---

**DENTONS CANADA LLP**
77 King Street West, Suite 400
Toronto-Dominion Centre
Toronto, ON  M5K 0A1
Fax: 416-863-4592

**Shayne Kukulowicz** (LSUC#: 30729S)
Tel: 416-863-4740
**Michael Wunder** (LSUC#: 31351O)
Tel: 416-863-4715
**Ryan Jacobs** (LSUC#: 59510I)
Tel: 416-862-3407
**Barbara Grossman** (LSUC#: 20947K)
Tel: 416-862-3407

Lawyers for the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al.