**<u>EXHIBIT A-1</u>**

Court File No: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**RESPONDING MOTION RECORD OF THE MONITOR AND CANADIAN DEBTORS**
**(returnable January 7, 2014)**

Date:  January 3, 2014

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON  M5H 2S7

**Jay A. Carfagnini** (LSUC#: 22293T)
**Jessica Kimmel** (LSUC#: 32312W)
**Peter Ruby** (LSUC#: 38439P)
**Joseph Pasquariello** (LSUC#: 38390C)
Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay** (LSUC #: 21152A)
**Jennifer Stam** (LSUC #: 46735J)
Tel:    (416) 862-5697
Fax:    (416) 862-7661

Lawyers for the Applicants

# INDEX

.

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**INDEX**

| TAB | | PAGE NO. |
|---|---|---|
| 1 | One-Hundred First Report of the Monitor dated January 3, 2014 | 1 |

# TAB 1

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**ONE-HUNDRED FIRST REPORT OF THE MONITOR**
**DATED JANUARY 3, 2014**

**INTRODUCTION**

1.  On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "Applicants" or "Canadian Debtors") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA"). Pursuant to the Order of this Court dated January 14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "Monitor") in the CCAA proceedings. The stay of proceedings has been extended to April 1, 2014.

2.  Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries and affiliates concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") on January 14, 2009 (the "Chapter 11 Proceedings"). As required by U.S. law, an official committee of unsecured creditors (the "Committee") was established in January, 2009.

3.  An ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "Bondholder Group"). In addition, pursuant to Orders of this Court, representative counsel was appointed on behalf of the former employees of the Applicants, the continuing employees of the Applicants and the LTD Beneficiaries (collectively, "Representative Counsel") and each of these groups is participating in the CCAA proceedings.

4.  Nortel Networks (CALA) Inc. ("NN CALA" and together with NNI and certain of its subsidiaries and affiliates that filed on January 14, 2009, the "U.S. Debtors") filed a voluntary petition under Chapter 11 of the Code in the U.S. Court on July 14, 2009.

5.  Nortel Networks UK Limited ("NNUK") and certain of its affiliates located in EMEA were granted administration orders (the "UK Administration Orders") by the High Court of England and Wales on January 14, 2009 (collectively the "EMEA Debtors"). The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as administrators of the various EMEA Debtors, except for Nortel Networks (Ireland) Limited, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "Joint Administrators").

6.  Subsequent to the filing date, Nortel Networks S.A. ("NNSA") commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

7.  The CCAA proceedings and the UK Administration proceedings of NNUK and the other EMEA Debtors have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code.

8.  Subsequent to the Filing Date, certain other Nortel subsidiaries have filed for creditor protection or bankruptcy proceedings in the local jurisdiction in which they are located.

**PURPOSE**

9.     The purpose of this one-hundred first report of the Monitor (the "One-Hundred First Report") is to report to this Court on the Monitor's and Canadian Debtors' position regarding (a) the U.S. Debtors' motion to dispense with representative party discovery ("Representative Party Discovery"); and (b) the U.S. Debtors' motion to approve Settlement Agreement (defined below).

**TERMS OF REFERENCE**

10.   In preparing this One-Hundred First Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with the Company. The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of this information and accordingly, the Monitor expresses no opinion or other form of assurance on the information contained in this One-Hundred First Report. Unless otherwise stated, all monetary amounts contained herein are expressed in U.S. dollars.

11.   Capitalized terms not defined in this One-Hundred First Report are as defined in the Allocation Dispute Orders (defined below), the Pre-Filing Report or previous reports of the Monitor.

12.   The Monitor has made various materials relating to the CCAA proceedings available on its website at www.ey.com/ca/nortel. The Monitor's website also contains a dynamic link to Epiq Bankruptcy LLC's website where materials relating to the Chapter 11 Proceedings are posted.

## ALLOCATION AND RELATED CLAIM MATTERS

*Background*

13.  For several months, the primary focus of the Applicants and Monitor has been the pending joint hearings (the "Trial") to resolve the dispute on allocation of over $7.3 billion of sale proceeds as well as certain claims asserted against the Applicants (in the Canadian proceedings) and U.S. Debtors (in the Chapter 11 Proceedings) by the EMEA Debtors and the UKPC[1] (the "Allocation Dispute").

14.  To date, a number of procedural Orders have been granted in respect of the Allocation Dispute.  A brief summary is below with further detailed discussion in the following paragraphs:

  a)  on May 15, 2013 and May 17, 2013, respectively, this Court and the U.S. Court (collectively, the "Courts") approved a Litigation Timetable (the "Litigation Timetable") and Discovery Plan (the "Discovery Plan") which, together with certain related Orders, agreements and relevant applicable law, governs the conduct of the discovery process and established timelines for the Allocation Dispute;

  b)  on August 26, 2013 and August 27, 2013, the Courts approved a Deposition Protocol (the "Deposition Protocol") which set out the process for the identification and conduct of depositions by the Parties;

  c)  the Litigation Timetable, Discovery Plan and Deposition Protocol have subsequently been amended from time to time to, among other things: (i) resolve certain ongoing procedural disputes among the Parties; and (ii) amend certain deadlines and dates previously agreed to (collectively and including subsequent amendments and together with the Allocation Protocol, the "Allocation Dispute Orders").  Those amendments have included the following orders:

---

[1] The UKPC consists of the trustee of the UK pension plan and the Pension Protection Fund.

i.    Order of this Court dated August 27, 2013 approving the amended litigation schedule (the "August 27 Order");

ii.   Order of this Court dated September 20, 2013 amending the Deposition Protocol (the "Amended Deposition Protocol Order");

iii.  U.S. Order resolving certain discovery disputes dated September 25, 2013 (the "September 25 Order"); and

iv.   Order of this Court dated November 19, 2013 amending the Deposition Protocol, Discovery Plan and Litigation Timetable (the "November 19 Order").[2]

Copies of the Allocation Dispute Orders are attached as Appendices A to F hereto.

*The Discovery Plan and Litigation Timetable*

15.  Promptly following the approval of the Allocation Protocol, the Core Parties began negotiating the discovery and pre-trial process including what steps to take as well as the time frame in which those steps would take place.

16.  Notwithstanding the efforts of the Core Parties to reach an agreement on a proposal for discovery, consensus was not achieved and competing proposals were put to the Courts by the U.S. Debtors and the EMEA Debtors on the one hand, and the Monitor/Canadian Debtors on the other.  Ultimately, the Courts approved the U.S. Debtors/EMEA Debtors proposal and granted the Orders approving the Litigation Timetable and Discovery Plan. Notably, the Litigation Timetable and Discovery Plan included provision for the conduct of Representative Party Discovery and contemplated the following steps:

a)  service of requests under Rule 34.04 of the Ontario Rules of Civil Procedure (the "Ontario Rules") and/or 30(b)(6) of the United States Federal Rules of Civil

---

[2] Additionally, in connection with the Discovery Plan, the Courts approved a protective order (as amended) governing certain confidentiality concerns relating to production and use of documents as well as a stipulation regarding expert disclosure.

Procedure (the "U.S. Rules") specifying topics on which other Discovery Participant's representative(s) were to be examined/deposed;

b) designation, by Discovery Participants in receipt of a request set out above, of one or more representatives to be offered to be examined/deposed as though Rule 31.03 of the Ontario Rules and/or 30(b)(6) of the U.S. Rules applied; and

c) conduct of examinations/depositions of such representatives.

17. Section 6 of the Discovery Plan also specified the permitted use of such discovery answers at trial. The Litigation Timetable similarly outlined the deadlines for steps to be taken in connection with Representative Party Discovery.

18. In connection with the approval of the Litigation Timetable and Discovery Plan, this Court issued reasons dated May 3, 2013 which reaffirmed that for matters before this Court, the Ontario Rules apply. A copy of the reasons is attached as Appendix G.

*Noticing of Depositions and Deposition Topics*

19. Pursuant to the Discovery Plan and Litigation Timetable,

a) on July 24, 2013, the Core Parties sent notice of who they anticipated calling for testimony at trial. In total, over 40 names were provided (with supplemental additions, the number is now closer to 50);

b) on July 26, 2013, topics for Representative Party Discovery were exchanged (the "Original Topics"). The number of Original Topics was in the hundreds and included many topics which were broad in scope; and

c) on July 30, 2013, the Core Parties sent notices of fact witnesses they wished to depose (subsequent cross-designations were also provided) and in total, over 110 witnesses were noticed.



*The August 27 Order and the Deposition Protocol*

20. The August 27 Order and Deposition Protocol were granted in response to the request by the EMEA Debtors (along with the UKPC) for amendments to the Litigation Timetable and postponement of the start date of the trial.

21. The August 27 Order amended certain dates in the Litigation Timetable but preserved all existing steps in the discovery process including Representative Party Discovery. Specifically, the August 27 Order referred to the fact that the Deposition Protocol "shall govern all oral depositions and examinations out of court of fact depositions in these proceedings, including depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) and party representative examinations pursuant to Rule 31 of the *Ontario Rules of Civil Procedure*" (Section A.1 of the Deposition Protocol Stipulation, Exhibit 1 to the August 27 Order).

22. The Deposition Protocol was intended to provide clarification on certain ongoing discovery issues and provide certainty to the deposition (both fact and representative) stage of discovery. In fact, the Deposition Protocol elaborated on the Discovery Plan and Litigation Protocol providing further structure for the scheduling and conduct of both fact witness depositions as well as Representative Party Discovery. Notably, the Deposition Protocol amended and elaborated on each of the various steps in the Representative Party Discovery, including as follows:

   a) *Topics:* the Deposition Protocol:

      i. superseded the Original Topics previously noticed by other parties and set out a new timeframe for the service of limited topics for examination during Representative Party Discovery;

      ii. stated that Deposition Groups could "serve a very limited number of subjects on which it believes no fact witness currently or formerly associated with the party producing the Representative Witness has provided adequate first-hand testimony";

7

iii. provided for an objection process to topics including a dispute resolution process;

iv. specified that Discovery Participants "shall not be limited in their examination of the Representative Witness to the noticed subjects" but there was no obligation on the part of the producing party to prepare for examination on any subjects not noticed; and

v. provided that "any undertakings required in accordance with Rule 31 of the Ontario Rules shall be limited to specific matters of fact outside the Representative Witnesses' knowledge, information and belief that are not already the subject of first-hand deposition testimony obtained from a knowledgeable fact witness";

b) *Identification of Representative(s):* the Deposition Protocol specified which Core Parties would be required to produce a representative and the time frame in which representatives would have to be identified;

c) *Scheduling of Examinations*: the Deposition Protocol provided for the scheduling of examinations through the Scheduling Committee;

d) *Examinations:* the Deposition Protocol:

i. established the framework for the scheduling and conduct of examinations in connection with Representative Party Discovery;

ii. established that the length of examinations of the U.S. Debtors, Canadian Debtors, UKPC and NNUK representatives would be two, seven-hour days with one day allocated to each of the two other Deposition Groups; [3] and

---

[3] At the time of the Deposition Protocol, the parties continued to disagree as to the number and length of the examinations of the representatives of the EMEA Debtors other than NNUK.

iii. provided that examinations in connection with Representative Party Discovery would occur during the last two weeks before the end of fact witness depositions; and

e) *Use of Depositions at Trial*: the Deposition Protocol confirmed that the Core Parties agreed sub-paragraph 6(c) of the Discovery Plan needed to be clarified and amended regarding the permitted use of deposition testimony and agreed to meet and confer further with a view to agreeing on the parameters of such use ("Section K").

*The Amended Deposition Protocol Order and September 25 Order*

23. The Amended Deposition Protocol Order resolved certain matters that had been disputed amongst the parties and preserved the ongoing dispute of others. Specifically, the Amended Deposition Protocol amended and replaced Section K of the Deposition Protocol to resolve, in part, the use of depositions and compellability of witnesses at trial. The Amended Deposition Protocol Order, however, did not make any changes, reductions or mention of Representative Party Discovery or any proposed elimination thereof.

24. The September 25 Order resolved, among other things, certain discovery disputes that had been pending as a result of certain of the U.S. Debtors' fact witness designations and resolved the remaining dispute with respect to the EMEA Debtors representatives (other than NNUK) that had previously been preserved in section G.3.b. of the Deposition Protocol. It also specifically provided that, as requested and required by the U.S. Debtors (and generally supported by the Monitor and Canadian Debtors), Discovery Participants would have the right to a "distinct examination of each such [EMEA Debtor]."

25. The September 25 Order further provided that "no specific time limits shall be placed on these Representative Depositions at this time" unlike the other examinations for Representative Party Discovery where time limits were imposed under the Deposition Protocol. Instead, it provided for further meet and confers.

*The November 19 Order*

26.    On or about November 14, 2013, motions (the "November Motions") were jointly filed by virtually all Core Parties (other than the bond holder group and indenture trustees) to amend the Deposition Protocol, Discovery Plan and Litigation Timetable. The November Motions were filed while fact witness depositions were ongoing, but after approximately 65% (or over 70) of the fact witness depositions had taken place. It was also clear by that time, there would likely be well over 100 fact witness depositions in total.[4] The November 19 Order set out several amendments to the previous Allocation Dispute Orders. Notably, the November 19 Order made no mention of any dispute or concern surrounding whether Representative Party Discovery would proceed and not only preserved Representative Party Discovery, but made specific amendments and clarification for the conduct and scheduling of such examinations.

27.    Both the U.S. Debtors' motion and Monitor's one-hundredth report ("100[th] Report"), filed in support of the November Motions, spoke to the ongoing inclusion of Representative Party Discovery set out below.[5] Notably, the U.S. Debtors' Motion stated the following:

U.S. Debtors' Motion (paragraph 10)

"Specifically with respect to the extra time proposed for representative witness depositions, the proposal will allow for fact witness depositions to be completed prior to parties making decisions on subsequent revised (and hopefully narrow) topics for representative party depositions prior to the conduct of those representative depositions. This extra time may assist in providing for a more efficient and coordinated process."

---

[4] Paragraph 5 of the U.S. Debtors' Motion states: "As of the date hereof, more than seventy depositions have been conducted. Over twenty-six depositions are scheduled for the next four weeks and approximately seventeen more are not yet scheduled." Similarly, paragraph 17 of the 100th Report states "In excess of 110 depositions/examinations are anticipated to be conducted through the deposition period. . ."

[5] Paragraph 20-23 of the 100th Report also addressed Representative Party Discovery as a basis for the extension of the Litigation Timetable and the granting of the November 19 Order.

## DOCUMENT PRODUCTION AND FACT WITNESS DEPOSITIONS

28.   As set out in previous Monitor's Reports, extensive document production has taken place pursuant to the Discovery Plan arising out of the extensive document requests of the Core Parties. To date, approximately 1.5 million documents have been produced by the Monitor and Canadian Debtors. In total, approximately 2.8 million documents have been produced by the Core Parties as well as third parties who have either voluntarily produced documents or produced documents pursuant to Court Order.

29.   Fact witness depositions commenced at the end of September 2013 and continued through to the week ending December 14, 2013. In total, over 105 fact witness depositions were conducted in this period.

## REPRESENTATIVE PARTY DISCOVERY

*Representative Party Discovery Topics*

30.   Under the original Litigation Timetable and Discovery Plan, the Original Topics were exchanged on July 26, 2013. Collectively, several hundred topics (many of which were broad in nature) were served on many of the Core Parties. Subsequently, at the August 6 2013 meet and confer held at the offices of Cleary Gottlieb, the U.S. Debtors suggested foregoing what the Monitor understands to be traditional 30(b)(6) depositions under the U.S. Rules in favour of a Canadian discovery approach.[6] The result was agreement that Representative Party Discovery examinations would take place over an 8-10 day period at the end of fact witness depositions. Further, as a result of the Deposition Protocol, the Core Parties agreed to disregard the Original Topics and exchange new topics by (as a result of the latest amendments to the Litigation Timetable) December 13, 2013 (other than with respect to NNSA for which the deadline was December 17, 2013).

31.   Fact witness depositions were largely completed by the week ending December 14, 2013. In accordance with the revised timeline under the November 19 Order:

---

[6] It is also the case that the Representative Party Discovery has replaced "contention interrogatories" which the parties would otherwise be entitled to under the U.S. Rules.

a) on December 13, 2013, each Discovery Group served its revised topics for Representative Party Discovery (other than with respect to NNSA); [7]

b) on December 17, 2013, the Canadian Discovery Group served its revised topics with respect to NNSA; and

c) on December 18, 2013, each Discovery Group served notice of its representative (other than the Committee, discussed below) as well as their objections to the topics that had been notice to them.

Copies of the Representative Party Discovery topics and objections are attached as exhibits A through L of the affidavit of Jeff Rosenthal (to be sworn) in support of the U.S. Debtors motion (the "Rosenthal Affidavit").

32.   As set out above, the Committee has refused to provide a representative, even under objection.  All other parties who received notices provided a representative (albeit some under objection).

*The U.S. Debtors' Position*

33.   Prior to the early part of December, the Monitor and Canadian Debtors had not been aware the U.S. Debtors were even contemplating making the request to dispense with Representative Party Discovery.  In fact, the opposite appeared to be case as the U.S. Debtors:

a) suggested the approach for more traditional Canadian discovery under the Ontario Rules in lieu of traditional 30(b)(6) depositions under the U.S. Rules;

b) earlier sought to expand the scope of Representative Party Discovery by requiring each EMEA Debtor to produce a separate representative witness for each EMEA Debtor claimant and bringing this issue to the U.S. Court for resolution when the

---

[7] Through inadvertence, the Canadian Debtors' and Monitor's topics for the UKPC (attached as Exhibit K to the Rosenthal Affidavit) were not delivered on December 13, 2013, but were sent on December 19, 2013.  A copy of the cover email attaching those topics is attached as Appendix H.

EMEA Debtors would not agree (which relief was generally supported by the Monitor and Canadian Debtors);

c) objected to questions made during the deposition of John Ray on the grounds that Mr. Ray was "not here either as a representative witness, nor is he here to give our legal theories or position in this case";[8]

d) acknowledged during the deposition of Mr. McDonald that Mr. McDonald was not appearing as a representative but as a fact witness;[9] and

e) relied on the existence of Representative Party Discovery as one of the grounds for granting the November 19 Order by the U.S. Court.

34. On December 10, 2013, Jessica Kimmel, counsel to the Monitor, sent an email to the Core Party Service List in anticipation of the upcoming Representative Party Discovery and with a view to coordinating the examinations. Ms. Kimmel's email set out three (3) main objectives:

a) "To determine if there is any further "evidence/facts" on subjects raised by the pleadings not yet covered by the first-hand deposition testimony of fact witnesses currently or formerly associated with the party (or any such subjects that an adverse party believes have not been adequately covered). There is also the option to designate a limited number of these subjects in advance with the expectation that the party representative will inform him/her self about them before the examination  – these "advance preparation" subjects are what we understand are to be identified by this Friday December 13, 2013. We would propose that each Deposition Group agree to limit the number of subjects that can be designated in advance for any Core Party representative who they will be examining to 30 or less;

---

[8] Deposition of John Ray [page 91, lines 10-12].

[9] Deposition of Murray McDonald [page 178, lines 9 – 13]

b) To determine if the party accepts/adopts and/or is prepared to be bound by specific testimony of fact witnesses who have been deposed on subjects that any party chooses to examine another party upon or, if not, if there is other "evidence/facts" that will be relied on at trial ("door closing"); and

c) Examining on positions/assertions in pleadings."

35.    On December 11, 2013, Jeff Rosenthal, counsel for the U.S. Debtors, in response to Ms. Kimmel's email, indicated the U.S. Debtors were "strongly leaning" towards the position the Representative Party Discovery was no longer necessary.  Mr. Rosenthal's email further stated "the discussions surrounding the right to name any topics, and the language of our stipulations itself, contemplate it being far more limited and, indeed, we've been thinking that it should likely be fewer than 5 very targeted issues per party, if representative depositions at all".  The position was supported by the EMEA Debtors, UKPC and others.  A copy of these emails is attached as Appendix I hereto.

36.    The Representative Party topics delivered by the Monitor and Canadian Debtors on December 13, 2013, were consistent with Ms. Kimmel's December 10 email and were limited to 30 per party.  Although they were 92 pages long, there was significant overlap with respect to allocation, (the topics were almost identical for each of the other parties) and claims (the topics were largely repeated separately for each EMEA Debtor).

37.    In the following days, the Monitor and Canadian Debtors attempted to work with the U.S. Debtors (and others) to determine whether a compromise could be reached so that involvement of the Courts could be avoided.  While these discussions were ongoing (and unbeknownst to the Monitor and Canadian Debtors until that morning), on December 17, 2013, the U.S. Debtors filed a motion with the U.S. Court for the approval of a settlement they had reached with the EMEA Debtors and UKPC resolving all claims of the EMEA Debtors and UKPC against the U.S. Debtors.   The settlement is discussed in further detail below.

38.    Cognizant of Mr. Rosenthal's suggestion in his December 11 email that Representative depositions be limited to 5 topics, the Monitor and Canadian Debtors made various

alternative proposals to determine whether a compromise could be reached.   These included a suggestion, as set out in the email of Jennifer Stam dated December 19, 2013, that Representative Party Discovery would be narrowed and conducted as follows:

a) the number of topics be narrowed to five (5) with respect to allocation and five (5) with respect to claims; and

b) responses could be provided in writing

(the "December 19 Proposal"). A copy of the email setting out the December 19 Proposal is attached hereto as Appendix J.

39.   The position of the Monitor and Canadian Debtors was supported by the CCC and Directors and Officers.

40.   All such proposals were rejected by the U.S. Debtors and others and no meaningful alternatives were provided by any other party.   On December 20, 2013, the U.S. Debtors filed a letter (the "December 20 Letter") with the U.S. Court seeking to dispense with Representative Party Discovery.

41.   A subsequent email was sent by Ms. Stam on December 21, 2013 (the "December 21 Email") which outlined the topics noticed by the U.S. Debtors and EMEA Debtors to the Canadian Debtors revised to reflect the objections that had been filed by the Canadian Debtors.   A copy of that December 21 email and attachments is attached hereto as Appendix K.

42.   The EMEA Debtors have taken a similar position to that of the U.S. Debtors claiming that given the number of fact witness depositions that took place including the depositions of Alan Bloom and Chris Hill, Representative Party Discovery is not necessary.   Ms. Tabatabai, in her affidavit sworn January 2, 2014 in connection with the U.S. Debtors' motion states that the Canadian Discovery Group asked Mr. Bloom and Mr. Hill "virtually no questions on any of the EMEA Claims".[10]   To the contrary, the Canadian Discovery

---

[10] The Monitor and Canadian Debtors note that Ms. Tabatabai has attached transcripts (or excerpts therefrom) as

Group did examine both witnesses on the claims.[11] It was apparent, particularly, from the deposition of Mr. Bloom, that he did not have any specific factual knowledge regarding the facts underlying the claims, which only bolsters the need for Representative Party Discovery.

## THE MONITOR'S AND CANADIAN DEBTORS' POSITION AND PROPOSAL

43. Although the Monitor and Canadian Debtors were of the view that any relief regarding the dispensing of Representative Party Discovery should be properly put before both Courts on a formal motion, Delaware counsel to the Monitor and Canadian Debtors filed a response to the December 20 Letter with the U.S. Court (a copy of which was provided to this Court) on December 22, 2013 (the "December 22 Responding Letter"). A copy of the December 22 Responding Letter is attached hereto as Appendix L.[12]    The December 22 Responding Letter provides a detailed response with respect to the Monitor's and Canadian Debtors' position regarding this issue.

44. The Monitor and Canadian Debtors wish to exercise their basic right to Representative Party Discovery under the Ontario Rules (and embodied in the Discovery Plan and Litigation Timetable, as amended) in advance of finalizing expert reports and evidence for trial.

45. Despite the position that the topics are too broad, neither the U.S. Debtors nor EMEA Debtors have provided alternative suggestions or amendments to the five (5) topics set out in the December 19 Proposal to make the proposal workable in their eyes. In contrast, the Canadian Debtors have provided a detailed mark up of the four (4) or five (5) topics noticed of them as set out in the December 21 Email in an effort to reach a workable conclusion. The Monitor notes that despite the complaints of the U.S. Debtors and EMEA

---

appendices E and F to her affidavit which is in violation of the Protective Order. These transcripts, unless de-designated, have all been marked "highly confidential". The Monitor and Canadian Debtors reserve all of their rights with respect to the same.

[11] See, for example, deposition of Alan Bloom, pages 245- 247, 251, 252. Deposition of Chris Hill, pages 74-77, 79, 82- 83, 86-87.

[12] The various letters exchanged between the parties in this time frame are attached to the Rosenthal Affidavit as Exhibits M through R. On December 23, 2013, Ms. Kimmel also responded to the letter of the U.S. Debtors attached as Exhibit R to the Rosenthal affidavit which is attached as Appendix M hereto.

Debtors about the breadth of topics sent to them, the topics noticed to the Canadian Debtors by the U.S. Debtors and EMEA Debtors are very broad in nature as well. However, rather than dismiss them entirely, the Monitor and Canadian Debtors have attempted to provide a workable alternative through the December 21 Email.

46. The Monitor and Canadian Debtors are of course concerned with the cost of this entire process. They have made suggestions, since the beginning of the discovery process, to limit discovery. These suggestions were rejected by the other Core Parties. Subsequently, the Monitor and Canadian Debtors have also made further cost saving suggestions, including the cancellation of certain fact witness depositions and third party depositions, which would have saved significant cost. For instance, the Monitor and Canadian Debtors did not believe it was necessary to pursue the letters rogatory process for the production of documents by and examination of numerous third parties in Europe which was initiated and pursued by the U.S. Debtors. Similarly, the Monitor and Canadian Debtors suggested the cancellation of a trip to Hong Kong for the deposition of one tax witness[13] (when approximately 20 other tax witnesses had been or were going to be deposed). All of these suggestions have similarly been rejected.

47. Although the Monitor and Canadian Debtors are prepared to curtail the process to make it as cost efficient as possible, it is the Monitor's and Canadian Debtors' view that the cancellation of Representative Party Discovery in its entirety does not result in more efficiency or save time in the overall trial process. Further, it is the Monitor and Canadian Debtors' view that conducting Representative Party Discovery (either in writing, as recently proposed, or through 5 days of depositions taking place entirely in 2 North American cities)[14] is not a disproportionate burden or cost in the context of this trial and serves a distinct and important purpose.

48. Starting with the original Discovery Plan through to the November 19 Order, Representative Party Discovery has always been contemplated under the pre-trial process

---

[13] This position was supported by the U.S. Debtors.

[14] The contemplated time period of Representative Party Discovery should be weighed in contrast to the approximately 90 days of fact witness depositions that took place in 15 cities in North America, Europe and Asia.

ordered by the Courts and the Monitor and Canadian Debtors conducted the fact witness depositions in contemplation they would be entitled to subsequent Representative Party Discovery. Further, given that the other parties have known for months the Representative Party Discovery stage of the pre-trial process would occur and as recently as November 19, 2013, the parties still anticipated conducting such discovery, the Monitor and Canadian Debtors do not believe it is a plausible position for the U.S. Debtors to now say they cannot possibly prepare for this stage of the process or that it is unduly burdensome for them to do so.

## SETTLEMENT OF EMEA DEBTORS' AND UKPC'S CLAIMS AGAINST THE U.S. DEBTORS

49. On December 17, 2013, the U.S. Debtors served a motion (the "Motion") seeking approval of a U.S. Claims Litigation Settlement Agreement (the "Settlement Agreement") among the U.S. Debtors, the Committee, the Joint Administrators, the EMEA Debtors, the French Liquidator, the UKPC and certain other Nortel affiliates and their representatives (collectively, the "Settlement Parties"). A copy of the Motion was filed by the U.S. Debtors with this Court pursuant to the Cross-Border Protocol.

50. The Settlement Agreement settles the billions of dollars of claims asserted by the EMEA Debtors and the UKPC against the U.S. Debtors for payments to each of them of $37.5 million. The Settlement Agreement also provides for the Settlement Parties to enter into an "allocation cooperation period" during which they will work in good faith to develop a common allocation position and other agreements related to the conduct of the Trial.

51. On December 19, 2013, the Monitor and Canadian Debtors filed a Response and Limited Objection to the Motion and also filed a Notice of Request for Joint Hearing pursuant to the Cross-Border Protocol approved by this Court in the Initial Order and the Cross-Border Claims Protocol approved by this Court in its Order Approving Cross-Border Claims Protocol dated September 16, 2010 (the "Canadian Cross-Border Claims Protocol Order"). On January 2, 2014, the Monitor and Canadian Debtors filed a Supplemental Response and Limited Objection to the Motion (the "Supplemental Response"). Copies of the Monitor and Canadian Debtors' Supplemental Response and other filings with the U.S. Court are

attached as Appendices N through P hereof. Copies of the Initial Order (and the appended Cross-Border Protocol) and the Canadian Cross-Border Claims Protocol Order are attached as Appendices Q and R, respectively.

52.    The Settlement Agreement, and in particular the Settlement Parties' agreement to work to develop a common allocation position, has a significant impact on the Allocation Dispute. As detailed in the Supplemental Response, in order to avoid prejudice to the Canadian Debtors and Monitor they are requesting that as a condition to approval of the Settlement Agreement an "outside date" of January 24, 2014, be established for each Settlement Party to advise the Courts and the other Core Parties whether it is adopting a common allocation position with any other Settlement Party. In addition, the Monitor and Canadian Debtors object to a provision of the U.S. Debtors' proposed order approving the Settlement Agreement that would purport to bind non-parties to the Settlement Parties' agreement that the Settlement Agreement does not affect claims by or against non-parties, which provision (in addition to being inappropriate and unsupported generally) is contrary to the Cross-Border Claims Protocol (and each of this Court and the U.S. Courts' Orders approving it) which provides that the resolution of Overlapping Claims in the Chapter 11 Proceedings shall be without prejudice to the rights and defences of the Canadian Debtors and Monitor in these CCAA proceedings. Finally, the Monitor and Canadian Debtors also object to a provision of the Settlement Agreement which suggests certain of its provisions may supersede the Interim Funding and Settlement Agreement and the Final Canadian Funding and Settlement Agreement, both of which agreements were approved by this Court and the U.S. Court.[15]

53.    In light of the foregoing, the Monitor and Canadian Debtors are requesting certain amendments to the form of order approving the Settlement Agreement presented by the

---

[15] In light of the Settlement Agreement's impact on and relation to the Allocation Dispute, the Monitor and Canadian Debtors are of the view these disputes are appropriately resolved by joint hearing. In addition, disputes regarding the resolution of "Material Overlapping Claims" (as the EMEA Claims are) are expressly subject to a joint hearing under the terms of the Cross-Border Claims Protocol. The U.S. Debtors have agreed to a joint hearing while purporting to reserve the right to contest the jurisdiction of this Court at such hearing. In addition to the substantive reasons outlined above (and detailed in the Supplemental Response) that demonstrate why a joint hearing is appropriate, the Canadian Parties contend that the U.S. Debtors are estopped from contesting a joint hearing in respect of the Motion in light of their agreement to schedule a joint hearing.

U.S. Debtors to the U.S. Court, and also that this Court issue a parallel Order establishing an outside date for the Settlement Parties to advise if they are adopting a common allocation position and ordering that the Settlement Agreement does not enhance a Settlement Party's rights in respect of, or otherwise impact, any motion brought by a Settlement Party seeking leave to amend its allocation pleading. A copy of the proposed Order to be issued by this Court is attached hereto as Appendix S.

All of which is respectfully submitted this 3rd day of January, 2014.

**ERNST & YOUNG INC.**
**In its capacity as Monitor of the Applicants**
**and not in its personal capacity**

Per:

**Murray A. McDonald**
**President**

# APPENDIX A

# LITIGATION TIMETABLE AND DISCOVERY PLAN ORDER

21

Court File No: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| **THE HONOURABLE MR.** | ) | **WEDNESDAY, THE 15TH DAY OF** |
| **JUSTICE MORAWETZ** | ) | **MAY, 2013** |
| | ) | |
| | ) | |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION (the "Canadian Debtors")**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Allocation Protocol – Litigation Timetable and Discovery Plan)**

**WHEREAS** this Court approved an allocation protocol (the "Allocation Protocol")
pursuant to an Order (Allocation Protocol) dated April 3, 2013.

**WHEREAS** pursuant to an Endorsement of this Court dated April 17, 2013, a joint
hearing was convened between this Court and the United States Bankruptcy Court for the
District of Delaware to consider a litigation timetable and discovery plan in connection with the
Allocation Protocol, which hearing was heard on April 24, 2013.

**ON HEARING** the submissions of counsel for the Canadian Debtors, Ernst & Young
Inc. in its capacity as monitor of the Canadian Debtors (the "Monitor"), the members of the

Canadian Creditors Committee, the Joint Administrators of Nortel Networks UK Limited and the other EMEA Debtors, the Trustee of the Nortel Networks UK Pension Trust Limited and the Board of the UK Pension Protection Fund, the former directors and officers of Nortel Networks Corporation and Nortel Networks Limited, Nortel Networks Inc. and certain of its affiliates in US Chapter 11 bankruptcy proceedings, Wilmington Trust, National Association, the Bank of New York Mellon, the Informal Nortel Noteholders Group, the Official Committee of Unsecured Creditors of the US Debtors, and Law Debenture Trust Company of New York, this Court having issued an Endorsement dated May 3, 2013.

1.    **THIS COURT ORDERS** that the litigation timetable and discovery plan appended as Schedule "A" to this Order (the **"Litigation Timetable and Discovery Plan"**) be implemented.

2.    **THIS COURT ORDERS** that the Canadian Debtors and the Monitor are authorized to take all steps necessary to carry out and give effect to the Litigation Timetable and Discovery Plan.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO
LE / DANS LE REGISTRE NO..

MAY 16 2013

23

**SCHEDULE "A"**
**(Litigation Timetable and Discovery Plan)**

24

US Interests and EMEA Debtors' Proposed Litigation Timetable as of May 15, 2013

## LITIGATION TIMETABLE

Pursuant to the US Court's and Canadian Court's Orders approving the Allocation Protocol, the Cross-Border Protocol, and the Cross-Border Claims Protocol, it is hereby ordered:[1]

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 16 by noon E.D.T. | Any Core Party who wishes to participate in the Allocation dispute shall serve a pleading or opening submission styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought with respect to allocation, the material facts relied upon and legal bases for the allocation position being advanced by that Core Party by noon E.D.T. on May 16, 2013 and file the same within the next business day. | The US Claims Defendant Group shall file and serve their responses to the US Claims. | Deadline for the U.K. Pension Claimants to deliver their affirmative pleading (which may be deemed by them to serve as their Dispute Notices) setting forth, with reasonable particularity, the relief sought, material facts relied upon and legal bases for their claims and the grounds upon which they seek to challenge their disallowance. |
| May 17 | Any Core Party may serve a joinder before May 17 and file the same within the next business day, provided that the joinder does not advance any new legal bases and does not rely on new material facts. | | |

---

[1]     Capitalized terms shall have the meaning ascribed to them in the Allocation Protocol and Annex A attached hereto.

| Due Date 2013 | Step in US Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 17 | The Discovery Participants shall aim to reach agreement on a Confidentiality Stipulation and Protective Order as soon as possible. To the extent the Discovery Participants are unable to agree on a Confidentiality Stipulation and Protective Order, May 17 is the deadline for the Discovery Participants to file their versions of the Confidentiality Stipulation and Protective Order with the Courts. | | |
| May 22 | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group. | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group. | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group. |
| May 22 | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group, without prejudice to an Allocation Group's right to later serve contention interrogatories, as to be discussed and/or resolved by the Courts. | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group, without prejudice to a US Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group, without prejudice to a Canadian Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. |

26

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 24 | Deadline for Core Party who is not in one of the Discovery Groups, and who seeks to serve document requests and/or interrogatories that are non-duplicative of those document requests and/or interrogatories already served by the Allocation Groups, to seek leave of the Court to serve such non-duplicative document requests and/or interrogatories if prior to this time, such Core Party has been unable to reach agreement with the Core Party on whom it seeks to serve the non-duplicative document requests and/or interrogatories after meeting and conferring with such Core Party in good faith. | | |

27

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 29 | The US Debtors, UCC, EMEA Debtors, Joint Administrators, Canadian Debtors, Monitor, Bondholder Group, and any other Core Party who filed an opening submission may each file and serve a response to any opposing Core Party's opening submission or designate its opening submission as a cross-response. Each of the responses may be made individually, jointly, and/or by joining another Core Party's response. | | With respect to the Canadian Claims, each Disputing Creditor shall receive from the Monitor and the Canadian Debtors, by May 29, 2013, a response to such Disputing Creditor's Affirmative Pleading setting forth, with reasonable particularity, the grounds for the disallowance, the material facts relied upon and the legal bases for the disallowance. |
| June 3 | Deadline for supplemental document requests and identification interrogatories related to new issues raised in responsive submissions. | | |
| June 6 | In-person meet and confer between the Discovery Participants regarding the discovery requests and interrogatories served, procedures governing the production of documents, deposition procedures, and any other issues that have arisen thereof. | | |
| June 10 | Deadline for responses and objections to document requests and objections to interrogatories in accordance with the Discovery Plan. | | |
| June 10 | Subject to any objections, deadline for the recipients of document requests to commence the rolling production of documents in accordance with the Discovery Plan. | | |
| July 3 | Date by which parties served with document requests must certify to parties requesting their documents substantial progress with regard to production of documents. | | |
| July 22 | Date by which parties served with document requests must certify to parties requesting their documents substantial completion with regard to production of documents. | | |

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| July 24 | Deadline for identification by each Core Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Core Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Core Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each US Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other US Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that US Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each Canadian Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Canadian Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Canadian Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. |
| July 26 | Deadline to file motions to compel and/or motions for a protective order with respect to document discovery. Notwithstanding this deadline, when a dispute arises, the affected Discovery Participants shall promptly attempt to resolve any discovery disputes in good faith and once an impasse is reached, file any motions with the relevant Court(s) promptly. | | |
| July 26 | Deadline for each of the Canadian Allocation Group, the EMEA Allocation Group, and the US Allocation Group to serve on any opposing Core Party the topics on which that Core Party's representative is to be examined or deposed in accordance with the Discovery Plan. | Deadline for each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group to serve on any opposing Claim Party and/or a member of the Canadian Claims Defendant Group the topics on which that Claim Party's representative is to be deposed pursuant to Rule 30(b)(6) in accordance with the Discovery Plan. | Deadline for each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group to serve on any opposing Claim Party and/or a member of the US Claims Defendant Group the topics on which that Claim Party's representative is to be examined in accordance with the Discovery Plan. |

29

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| July 29 | Deadline for parties to designate witnesses to be examined or deposed, subject to later additions for the reasons set forth in the Discovery Plan. Each of (1) the Canadian Allocation Group and the Canadian Claims Defendant Group together; (2) the EMEA Allocation Group, the US EMEA Claimants Group, the Canadian EMEA Claimants Group, and the UK Pension Claimants together; and (3) the US Allocation Group and the US Claims Defendant Group together may designate a limited number of fact witnesses for examination or deposition in accordance with the Discovery Plan. Parties are encouraged to identify witnesses as early as possible in order to facilitate scheduling. | | |
| August 2 | Deadline for each Core Party that is timely served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for oral examination or deposition. | Deadline for each US Claim Party (other than the Committee) that is timely served with a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for deposition. | Deadline for each Canadian Claim Party that is timely served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure to identify its representative for an oral examination. |
| August 5 | In-person meet and confer between the Discovery Participants regarding witnesses to be deposed or examined, deposition procedures and any other issues that have arisen. | | |
| September 13 | Deadline to identify experts and the subject matter of their reports in accordance with the Discovery Plan. | | |

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| September 27 | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions. | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any Rule 30(b)(6) depositions. | Deadline to complete witness examinations on previously filed depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within three weeks of each examination), in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to representative party examinations. |
| October 4 | Deadline for service of expert reports (including exhibits) in accordance with the Discovery Plan. | | |
| November 1 | Deadline for service of responding experts' reports (including exhibits) in accordance with the Discovery Plan. | | |
| Week of November 11 | Preliminary pre-trial conference. | | |
| December 6 | Deadline to complete depositions of experts in accordance with the Discovery Plan. | | |
| December 9* | Deadline to file a list of all witnesses and exhibits that each Discovery Participant intends to rely upon as part of its direct case. | | |
| December 13* | Deadline to file pre-trial motions. | | |

---

*   All dates for pre-trial submissions are subject to modification by the Courts at the preliminary pre-trial conference.

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| December 13* | Deadline for filing of opening written submissions with the Courts. The content of such submissions will include:<br><br>a) Pre-trial briefs;<br><br>b) All fact affidavits to be used as direct testimony;<br><br>c) All exhibits to be used in a Discovery Participant's direct case; and<br><br>d) All deposition testimony to be used in a Discovery Participant's direct case. | | |
| Week of December 16,* if the Courts desire | Pre-Trial Conference(s) –<br><br>By this date, the Core Parties shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the contents of document briefs for use at the Joint Hearing/ the exhibits for use at the Joint Hearing.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | Pre-Trial Conference(s) –<br><br>By this date, the US Claim Parties and the Canadian Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the exhibits for use at the Joint Hearing.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | Pre-Trial Conference(s) –<br><br>By this date, the Canadian Claim Parties and the US Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the contents of document briefs for use at the Joint Hearing.<br><br>All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |

8

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| Begins January 6, 2014 | The US and Canadian courts will (a) hold simultaneously (i) hearings before the US and Canadian courts regarding Allocation, (ii) hearings before the US Court on the merits of any remaining US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining Canadian Claims, provided, however, that the US and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only the US Claims or only the Canadian Claims, and (b) issue their respective decisions on (i), (ii), and (iii). The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims. | | |

Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the US Court through the filing of a certification of counsel and to the Canadian Court through the filing of a letter from the Monitor to Justice Morawetz on notice to the Core Parties. Any Core Party may also file a motion with the applicable Court or Courts to modify this Litigation Timetable upon a showing of good cause.

33

**ANNEX A**

**DEFINITIONS**

Capitalized terms used in this Litigation Timetable but not otherwise defined in this Annex A shall have the meanings ascribed to them in the Allocation Protocol.

Allocation Group:  Any of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, or the Bondholder Allocation Group.

Bondholder Allocation Group:  The Bondholder Group.

Canadian Allocation Group:  The Canadian Debtors, the Monitor, and the CCC.

Canadian Claim Party:  Any party in the Canadian EMEA Claimants Group or the Canadian Claims Defendant Group, or the UK Pension Claimants.

Canadian Claims:  Claims made by the Canadian EMEA Claimants Group and the UK Pension Claimants against any or all of the Canadian Debtors.

Canadian Claims Defendant Group:  The Canadian Debtors against whom the Canadian EMEA Claimants Group and the UK Pensions Claimants have brought claims, the Directors and Officers (but only with respect to claims of the Canadian EMEA Claimants Group), and the Monitor.

Canadian EMEA Claimants Group:  The EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor who made claims against any or all of the Canadian Debtors or Directors and Officers, and the UK Pension Claimants who made claims against NNC and NNL.  Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

Claim Group:  Any of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, the Canadian Claims Defendant Group, or the UK Pension Claimants.

Discovery Participant:  Any Core Party or party of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, or the Canadian Claims Defendant Group who is participating in discovery pursuant to the Discovery Plan.

Discovery Plan:  The Discovery Plan that will be entered by the Courts.

10

<u>Disputing Creditor</u>: Any party who has delivered an Affirmative Pleading to dispute the disallowance of its claim by the Monitor and the Canadian Debtors, which shall be deemed to include the EMEA Debtors.

<u>EMEA Allocation Group</u>:  The UK Pension Claimants, the EMEA Debtors (including Nortel Networks International Finance & Holding BV as behalf of itself and as assignee of Nortel Networks o.o.o.), and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

<u>Identification Interrogatories</u>: Interrogatories seeking identification of (i) the names, roles and last known contact information of witnesses with knowledge of information relevant to the subject matter of Allocation, EMEA Claims or UK Pension Claims, (ii) information sufficient to identify transactions upon which any positions, claims, and/or defenses of the recipient of the interrogatory rely.  An interrogatory seeking the names of multiple individuals or transactions shall be considered one interrogatory for purposes of any numerical limit on the number of interrogatories.

<u>Representatives</u>:  Directors, officers, employees, attorneys, accountants, experts, consultants, financial advisors, or agents of any of the Core Parties, US Claim Parties, or Canadian Claim Parties.

<u>U.K. Pension Claimants</u>: Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund.

<u>US Allocation Group</u>:  The US Debtors and the Committee.

<u>US Claims</u>:  Claims made by the US EMEA Claimants Group and the UK Pension Claimants against any or all of the US Debtors.

<u>US Claims Defendant Group</u>:  The US Debtors against whom the US EMEA Claimants Group and the UK Pension Claimants have brought claims and the Committee.

<u>US EMEA Claimants Group</u>:  The EMEA Debtors and/or Joint Administrators or any other administrator or liquidator of an EMEA Debtor who made claims against any or all of the US Debtors, Nortel Networks AS, Nortel Networks South Africa (Proprietary) Limited, Nortel Networks AG, Nortel Networks Optical Components Limited, Northern Telecom France SA, Northern Telecom PCN limited.  Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

<u>US Claim Party</u>:  Any party in the US EMEA Claimants Group or the US Claims Defendant Group, or the UK Pension Claimants.

# DISCOVERY PLAN

| | |
|---|---|
| **1. Definitions** | Capitalized terms used herein and not otherwise defined shall have the meaning ascribed in the Allocation Protocol or Litigation Timetable. |
| **2. Applicable Procedural Regime:** | In accordance with the Cross Border Protocol, the Cross-Claims Protocol and the Allocation Protocol, the following procedural regimes apply:<br><br>(1) With respect to Allocation, the Cross-Border, Cross-Claims and Allocation Protocols apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware will apply as applicable.<br><br>(2) With respect to US Claims, the Cross-Border and Cross-Claims Protocols apply to the extent not inconsistent with this Discovery Plan, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware will apply as applicable.<br><br>(3) With respect to Canadian Claims, the Cross-Border Protocol, the Cross-Claims Protocols, the Claims Resolution Order, and the EMEA Claims Procedure Order apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario will apply as applicable. |
| **3. Scope of Documentary Discovery Among Discovery Participants:** | *a) Definition of Documents*<br><br>References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the Rules of Civil Procedure for Ontario and/or the types of documents contemplated by Rule 34 of the Federal Rules of Civil Procedure.<br><br>*b) Reasonably Accessible Documents and Proportionality*<br><br>No Discovery Participant will be required to search data sources, including applications and databases, that it reasonably understands to already be in the possession, custody, or control of the Allocation Group or Claim Group making the request, provided that a Discovery Participant shall enumerate in its response to a discovery request any data sources that are not being searched on this ground. |

Each Discovery Participant will only be required to search reasonably accessible data. A Discovery Participant who believes that responsive materials are reasonably likely to be found in a decommissioned application or in storage media that cannot be accessed without considerable burden, time or expense shall give prompt notice of this in its response to a document request, and shall meet and confer in good faith with the requesting party or parties regarding the cost and practicality of accessing such responsive materials giving attention to the principle of proportionality.

A Discovery Participant shall not be required to re-produce a document that has already been produced by another Discovery Participant and the same document shall not be required to be produced by more than one Discovery Participant.

In light of the volume of the Debtors' hard-copy documents maintained in off-site storage facilities, and the abundance of available and overlapping electronic data, no Discovery Participant will be obligated to search such hard-copy documents, and rather will produce indices of such hard-copy documents (to the extent they exist) with their responses to any document request and shall meet and confer in good faith with the requesting party or parties regarding hard-copy documents that will be made available for inspection upon request. If any such documents inspected are copied for any requesting party, all other parties shall be notified and copies shall be provided to all parties at their own expense. If any party creates an electronic version of those documents, that party shall be responsible for loading the electronic version of the document(s) onto the Merrill Lextranet database in accordance with Schedule A hereto to the extent reasonable and not overly burdensome.

*c) Previously Produced Documents*

Documents produced into the Merrill Lextranet database ("Mediation Dataroom") for the purpose of the several mediations in this proceeding may be treated as having been produced in the Allocation, US Claims and Canadian Claims litigation, and any Discovery Participant that does not already have such documents shall be provided access to this Merrill Lextranet database, subject to an appropriate confidentiality, protective and/or sealing orders from the Court(s) and a provision allowing the Discovery Participants to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this Discovery Plan. Any Discovery Participant may request the load files for the Mediation Dataroom containing metadata from Merrill in order to facilitate loading such documents on a review platform of their choosing.

### d) No Waiver of Privilege

The fact that a document has been produced by any Discovery Participant shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Discovery Participant who asserts privilege over the document), and any Discovery Participant who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a confidentiality or protective order.

### f) Document Requests

**<u>By no later than May 22, 2013</u>**

For Allocation, each Allocation Group shall be entitled to serve limited reasonable requests for production of non-privileged documents, such requests to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to making such requests, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the document requests of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 24, 2013 to seek agreement with a Discovery Participant from whom it seeks documents and, failing agreement, to seek leave of the Courts to make additional document requests if it believes in good faith that such requests are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on each opposing US Claim Party. The US Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on the Canadian Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed document request and by the US Court where the US Debtors are the recipient of the disputed document request. The Canadian and US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on the US Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed document request and by the US Court where the US Debtors are the recipient of the disputed document request. The Canadian and US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation document requests and US Claims/Canadian Claims document requests. Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional document requests upon a showing of good cause.

*g) Interrogatories*

**By no later than May 22, 2013**

For Allocation, each Allocation Group shall be entitled to serve a limited number of reasonable Identification Interrogatories, such interrogatories to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to serving such interrogatories, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the interrogatories of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 24, 2013 to seek agreement with a Discovery Participant on whom it wishes to serve interrogatories and, failing agreement, to seek leave of the Courts to serve additional interrogatories if it believes in good faith that such interrogatories are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and US Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on each opposing US Claim Party. The US Claims Defendant Group and the

4

Bondholder Group shall confer on such interrogatories. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the Canadian Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed interrogatory and by the US Court where the US Debtors are the recipient of the disputed interrogatory. The Canadian and US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such interrogatories. In addition, the EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the US Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed interrogatory and by the US Court where the US Debtors are the recipient of the disputed interrogatory. The Canadian and US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation interrogatories and US Claims interrogatories. Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional Identification Interrogatories upon a showing of good cause.

The availability of contention interrogatories shall be decided by mutual agreement among the Discovery Participants at a later date, and, failing agreement, by the Court(s).

*h) Responses and Objections*

**By no later than June 10, 2013**

When objecting to any discovery request, the recipient of such discovery requests shall state the basis for objection, which may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Recipients are strongly encouraged to prepare joint objections to the same document request or interrogatories to the extent



their objections overlap.

*i) Production of Documents*

**<u>Rolling Productions of Documents Shall Commence June 10, 2013 and Shall Be Completed by July 22, 2013</u>:**

Subject to any objections made and sustained if challenged (see motions procedure below), each recipient of a document request shall produce any responsive non-privileged documents to any request made of it to all Discovery Participants by producing such documents into the Merrill Lextranet database (to the extent they overlap, responses to multiple requests may be combined or cross-referenced to each other to avoid duplication). The producing Discovery Participant shall promptly notify all Discovery Participants of the Docid range of each production.

In this same time frame, each Discovery Participant shall produce any further documents that they intend to rely upon at trial that are not already part of the mediation productions or responsive productions.

*j) Motions to Compel Document Production*

**<u>Motions to Compel Document Productions Must Be Filed by July 26, 2013</u>**

Any Discovery Participant who served document requests and who seeks to compel production of a document must do so only after meeting and conferring in good faith with the Discovery Participant against whom a motion is contemplated, and thereafter by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on seven business days notice on all Discovery Participants, and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The Discovery Participant whose objection is challenged shall respond to this motion within four business days and any other Discovery Participant whose interests are affected by the request may serve a supplementary response within two business days thereafter.

Notwithstanding this deadline, whenever a discovery dispute arises, the affected Discovery Participants shall promptly attempt to resolve the dispute in good faith and, if an impasse is reached, file any motions with the relevant Court(s) promptly.

*k) Privilege Logs*

Should a Discovery Participant withhold any document based on a claim of privilege or work product protection, the producing party shall provide a privilege log containing details about the category of documents

withheld, including at least the following information for each category: (a) the discovery participant asserting the privilege; (b) the subject matter of the category; (c) the date range; and (d) the author(s) and other recipients, which may be grouped by employer (such as Nortel entity or advisor or law firm). Discovery Participants may request additional information regarding categories on the privilege log in order to assess the basis for withholding and shall meet and confer on the same.

The following documents, to the extent created after the commencement of the bankruptcy proceedings, presumptively need not be included on a privilege log: (a) communications exclusively between a Discovery Participant and its outside counsel or (b) work product created by outside counsel and/or such counsel's agents.

Responsive documents which are jointly privileged as to two or more of the Discovery Participants shall be produced, but only to those Discovery Participants with whom the joint privilege is shared.

| | |
|---|---|
| **4.  Format of Production of Electronic Records** | For each electronic document, the responding party shall provide the metadata specified in Schedule A, but only to the extent they can reasonably be extracted or otherwise provided in a delimited text file. |
| **5.  Trial Witness Identification** | **By no later than July 24, 2013**<br><br>Each Discovery Participant shall identify any fact (non-expert) witnesses it anticipates calling or presenting testimony of at trial, by name, employer, title and functional role held during the time period relevant to their anticipated testimony. A Discovery Participant may identify trial witnesses not previously identified on good faith at a later date provided that any opposing Allocation Group or Claim Group has had or will have a reasonable opportunity to depose the later-identified witness before trial, regardless of the fact discovery cut-off or number of depositions taken.<br><br>Any Discovery Participant that has previously filed an affidavit or witness statement in the context of this litigation (the Ontario and Delaware proceedings) may also, at its option, choose to designate that evidence to be tendered at trial as long as the witness will be made available to be deposed and appears at trial for cross-examination. |
| **6.  Oral Examinations Or Depositions** | *a) Examinations of Representatives/ 30(b)(6) Depositions*<br><br>**By no later than July 26, 2013**<br><br>For Allocation, each Allocation Group (other than the Bondholder Allocation Group) may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States |

42

Federal Rules of Civil Procedure on the solicitors or counsel of record for any opposing Discovery Participant specifying the topics, if any, on which that other Discovery Participant's representative(s) is to be examined/deposed. The Bondholder Allocation Group shall consult with the Canadian Allocation Group and the US Allocation Group regarding any requests under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure it would like the US Allocation Group and the Canadian Allocation Group to serve on other Discovery Participants in accordance with the foregoing. In the event that Canadian Allocation Group and the US Allocation Group do not agree to serve such requests, the Bondholder Allocation Group may seek leave of the Court or Courts, as applicable, by motion on notice to serve its own requests for examination under Rule 34.04 of the Ontario Rules of Civil Procedure and/or depositions under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group may each serve a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the counsel of record for any opposing US Claim Party specifying the topics, if any, on which the US Claim Party's representative is to be deposed. The US Claims Defendant Group and the Bondholder Group shall confer on such requests.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group may each serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure on the solicitors/counsel of record for any opposing Canadian Claim Party specifying the topics, if any, on which the Canadian Claim Party's representative is to be examined/deposed. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests.

<u>Use of (Discovery) Answers at Trial</u>

Testimony of representatives proffered in response to requests under Ontario Rule 31.03 and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure may be used as evidence at trial only by Discovery Participants whose interests are adverse to those of the proffering Discovery Participants on the issue for which the evidence is being used.

**<u>By no later than August 2, 2013</u>**

Each Discovery Participant served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure shall designate a representative(s)

(who may, but is not required to be, a current or former officer, director or employee of that Discovery Participant) to be offered to be examined/deposed as though Rule 31.03 of the Ontario Rules of Civil Procedure applied and/or under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure as applicable. All Discovery Participants shall have the right to attend such examinations/depositions.

A Discovery Participant may designate its party representative(s) under Rule 34.04 of the Ontario Rules of Civil Procedure as its witness(es) under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure for a single examination/deposition of each such witness(es).

*b) Oral Examinations/ Deposition of Fact Witnesses:*

**By no later than July 29, 2013**

In addition to the aforementioned examinations/depositions pursuant to Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure, each Allocation Group and each Claim Group shall serve by this date notices stating the witnesses it wishes to examine or depose (which may include third parties, persons subject to the control of a Discovery Participant or both and which may be persons who have been identified as trial witnesses by another Discovery Participant, and any persons whose previously filed affidavits/witness statements have been designated by a Discovery Participant as trial evidence) in order to obtain factual information/admissions relevant to Allocation, US Claims or Canadian Claims. Each witness shall be named and his/her place of residence (if known) shall be identified. The parties shall meet as soon as practicable after this date to confer and attempt to reach agreement on the list of witnesses to be deposed and the time for examination of each witness by each party. In the absence of agreement this shall be submitted to the relevant Court(s) for decision. The attorneys for the US Debtors, the Canadian Debtors and the EMEA Debtors agree to accept requests under Rule 34.04 of the Ontario Rules of Civil Procedure and Depositions Notices the United States Federal Rules of Civil Procedure seeking to depose or examine persons under the control of their clients. All parties agree to cooperate in good faith in attempts to locate and obtain testimony from persons not under the control of any party, including through issuance of compulsory process, letters of request and other available procedures, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony.

The Bondholder Group shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, regarding any fact witnesses

9

it seeks to examine/depose. In the event that the Canadian Allocation Group and the US Allocation Group do not intend to designate such fact witnesses that the Bondholder Group seeks to designate, the Bondholder Group may seek leave of the Court or Courts, as applicable, by motion on notice to designate such fact witnesses.

Either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to designate additional fact witnesses upon a showing of good cause.

### All examinations/depositions to be completed by no later than September 27, 2013

The relevant parties shall meet and confer and attempt to agree on the fact witnesses to be examined/deposed and on an examination/deposition schedule that contemplates the completion of all witness examinations/depositions (including any examinations/depositions for testimony preservation that the Court(s) may have granted leave to conduct) in this time frame that reflects the practicalities of examining/deposing each witness (having regard to the number of Discovery Participants examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness). All Discovery Participants shall have the right to attend such examinations/depositions.

The relevant parties will attempt to schedule depositions with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions.

*c) Use of Examinations/Depositions at Trial*

Designated portions of any examination/deposition may be filed as part of the evidence that any Discovery Participant may rely upon at trial in accordance with the usual rules that apply in the Canadian and US Courts, respectively.

10

45

**7. Experts**

<u>By no later than September 13, 2013</u>

Each Discovery Participant that intends to rely on the opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

<u>By no later than October 4, 2013</u>

Each Discovery Participant shall deliver an affidavit or report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by Bates number if previously produced, and containing the disclosures required by the Applicable Procedural Regime set forth in section 2.

Any Discovery Participant that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial, provided that the expert will be made available to be examined/deposed and appears at trial as set out below.  If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

Promptly after the submission of initial expert affidavits or reports, the Discovery Participants shall attempt to agree upon an expert examination/deposition schedule so that depositions can commence by November 8, 2013.

<u>By no later than November 1, 2013</u>

Each Discovery Participant shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another Discovery Participant that addresses an issue that is adverse to the Discovery Participant's position in the Allocation, US Claims, or Canadian Claims litigation.  Responses shall be permitted even if the Discovery Participant did not initially tender an expert's affidavit, if an issue is raised by an expert whose evidence is tendered by another Discovery Participant that calls for response. Responsive reports shall be limited to responding to issues on which an affirmative expert report has been proffered and shall not go beyond such issues.

<u>By no later than December 6, 2013</u>

As soon as practicable, the Discovery Participants shall meet and confer and attempt to agree on a schedule that contemplates the completion of all expert witness examinations/depositions between November 8, 2013 and December 6, 2013 that reflects the practicalities of examining/deposing



each witness (having regard to the number of parties examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness). All Discovery Participants shall have the right to attend such depositions.

A Discovery Participant may request that any expert be present at trial for cross-examination, and the affidavit or report of any expert not appearing at trial if requested to appear cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

The affidavits and/or reports shall be filed as evidence with the court at the trial, subject only to cross-examination at trial and any applicable objections that may be made and determined at the outset of the trial and directions or rulings from the Court(s) arising therefrom. The Discovery Participant proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

<u>Communications with Experts</u>:

The experts shall not be examined/deposed about or asked to produce prior drafts of their affidavits/reports and/or their communications with the Discovery Participant who retained them or other Discovery Participants within the same Allocation Group or Claim Group, or their respective Representatives, or any other topic protected from disclosure by the Applicable Procedural Regime set forth in section 2.

With respect to Allocation and US Claims, Rule 26 of the United States Federal Rules of Civil Procedure applies to expert discovery.

| 8. **General Procedure Applicable to All Oral Examinations/ Depositions** | <u>Length of Oral Examinations/Depositions</u><br><br>The Discovery Participants will include for discussion in the meet and confer scheduled for August 5 the Discovery Participants' proposals for limits on the length of oral examinations/depositions and the procedure for conducting such examinations/depositions.<br><br><u>Coordinating Oral Examinations/Depositions</u><br><br>Each examination/deposition shall be coordinated so that a lead examiner is identified for each group that noticed the oral examination/deposition (where an Allocation Group and Claim Group from the same jurisdiction counts as one group). Lead examiners shall work in good faith with any other lead examiners as well as other affected Discovery Participants to |

reflect a coordinated effort to avoid duplication of questions. For the avoidance of doubt, the US Claim Parties shall have the right to attend oral examinations/depositions that relate to the Canadian Claims, and the Canadian Claim Parties shall have the right to attend oral examinations/depositions that relate to the US Claims.

<u>Transcripts and video taping</u>:

All examinations/depositions shall be taken under oath in the presence of a Canadian or US certified court reporter and transcribed and the transcripts made available to all Discovery Participants, whether or not they are in attendance at the examination/deposition. At the option of any examining/deposing Discovery Participant, the examination/deposition may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining/deposing Discovery Participant(s) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

<u>Objections</u>:

Objections may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Questions that are objected to on grounds other than privilege shall be answered under reserve of that objection. All other objections shall be preserved.

<u>Requirement for Summons</u>:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Debtors, the Joint Administrators, and the UK Pension Claimants shall reasonably assist in issuing process or otherwise procuring a witness's attendance irrespective of which Discovery Participant has sought the witness's deposition, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment or consent to that jurisdiction for any other purpose.

<u>Undertakings</u>:

With respect to Allocation and Canadian Claims, the witness shall answer any undertakings that were agreed to on his/her examination/deposition within two weeks of the date of his/her examination/deposition, unless otherwise agreed to by the affected Discovery Participants.

**9. General Terms**

Any Discovery Participant may make a motion to the Court to compel another Discovery Participant to take the steps contemplated by the Discovery Plan or other steps, and the parties agree that the Court(s) may take the existence of the Discovery Plan into account in determining whether to grant the order sought. The Discovery Participants that are parties to such a motion may seek to justify their respective positions on the basis of, among other things, any information that was unknown or not reasonably available to that Discovery Participant at the time the Discovery Plan was entered into.

The Discovery Participants recognize that, as additional information becomes available throughout the Allocation, US Claims and Canadian Claims litigation, it may become apparent that: (a) it is impracticable or impossible for a Discovery Participant to comply with the terms of the Discovery Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery Plan, are required in order for a Discovery Participant to obtain access to potentially relevant documents, information or witness testimony. Each Discovery Participant agrees to notify the other Discovery Participants promptly when it reasonably believes that it will not comply with any term of the Discovery Plan or when it reasonably concludes that further steps beyond those set out in this Discovery Plan are required. The Discovery Participants agree to negotiate in good faith with respect to any amendments to the Discovery Plan requested by a Discovery Participant on that basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Discovery Participants.

All Discovery Participants shall meet and confer in good faith without the assistance of the Court(s) in attempting to resolve any disputes in the interpretation or implementation of this Discovery Plan. Discovery Participants are required to promptly seek relief from the applicable Court or Courts if an impasse is reached in any dispute and shall not be heard to complain of any prejudice resulting from their own delay in seeking relief.

All motions or directions sought from the Court(s) pursuant to this Discovery Plan shall be brought before the following Court or Courts: with respect to Allocation, before Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and Justice Morawetz of the Ontario Superior Court of Justice; with respect to US Claims, before Judge Gross; and with respect to Canadian Claims, before Justice Morawetz. The Courts shall hold regularly scheduled joint discovery conferences for discovery disputes in Allocation and those discovery disputes that affect both jurisdictions.

The EMEA Debtors' participation in the procedures addressed herein is without prejudice to their contention that Allocation should be decided by arbitration rather than the US and Canadian Courts, and shall not be

construed as a waiver of their objection to determining Allocation in accordance with the procedures set forth in the Allocation Protocol, this Discovery Plan and the Litigation Timetable.

All Discovery Participants reserve any rights they may have to object to the standing of any party to participate in any trial.

50

## SCHEDULE A

Format for Exchange of Productions: Productions will be exchanged by loading each production into the Merrill Lextranet database with the following objectively coded metadata, if reasonably possible, and in the following form:

| Item | Field | Field Type | Description | Format |
|---|---|---|---|---|
| **Document Numbering** | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note Text | Docid(s) attached to Parentid | AA0000001 |
| **Fields/Coded Data for E-mails** | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Bcc* | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents and attachments | As per metadata |
| **Fields/Coded Data for Attachments and Loose Electronic Documents** | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc This field is required for loading electronic documents and attachments. | As per metadata |

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| **Fields/Coded Data for Paper Documents** | *Docdate* | Date | Date of document (subjectively coded) | MM/DD/YYYY |
| | *CollectDate* | Date | Creation Date of Electronic File | MM/DD/YYYY |
| | *Source* | Note Text | Location or person from whom document was collected (subjectively coded) | |
| | *Attach#* | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | *Author* | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | *Recip* | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| **Fields/Coded Data for Electronic Documents (Chronological Review)** | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| | *Leadtime* | Date | Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together  Allows for further sorting of documents dated the same day by time | HH:MM:SS |

1.    Each document shall be individually produced with a unique document ID number.

2.    For each document, the Discovery Participant shall provide a text file containing the text extracted directly from the native electronic version of that document, unless the document was redacted, is an image file, is a scanned hardcopy document, or is in another format from which text cannot be reasonably extracted.  In these instances, provide a text file created using document-level optical character recognition (OCR) to the extent reasonably practicable.

3.    All images will be single page tiff format (excluding spreadsheets, Powerpoint presentations, and database files which will be provided in native format) with 300 dpi specifications to the extent practicable.  Native format files to be provided in the eDocs folder.

4.    Parties will provide the following load files formatted as follows:

(a)    Image folder (single page tiff, 300 dpi);

(b)    eDocs folder (for native files);

(c)    OCR folder (with text files and a control list for loading);

(d)    data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

17

S2

(e)    imginfo.txt or imginfo.csv or other formats at the request of the receiving party to the extent practicable.

5.    If a document and its exact duplicates are associated with the same custodian, the responding party may withhold the exact duplicates from production.  If a document and its exact duplicates are associated with different custodians, the responding party may withhold the exact duplicates from production and provide a metadata field for the produced document indicating the custodians for whom duplicates were withheld where practicable.

6.    While Discovery Participants will attempt in good faith to comply with all of the above, Discovery Participants shall produce documents and comply with the above to the extent practicable.

53

**IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

Court File No: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

**ORDER**
**(Litigation Timetable and**
**Discovery Plan)**

**Goodmans LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON    M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Jessica Kimmel (LSUC#: 32312W)
Peter Ruby (LSUC#: 38439P)
Joseph Pasquariello (LSUC#: 38390C)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

\6205385

# APPENDIX B

## DEPOSITION PROTOCOL ORDER

54

Court File No: 09-CL-7950

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

| | | |
|---|---|---|
| **THE HONOURABLE MR.** | ) | **TUESDAY, THE 27th DAY OF** |
| **JUSTICE PATTILLO** | ) | **AUGUST, 2013** |
| | ) | |
| | ) | |

## IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

## APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## ORDER
## (Deposition Protocol)

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "**Canadian Debtors**") jointly with Ernst & Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors for the relief set out in the Notice of Motion dated August 26, 2013 was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the Ninety-Seventh Report of the Monitor dated August 26, 2013 (the "**Ninety-Seventh Report**") and on hearing submissions of counsel for the Canadian Debtors, the Monitor, and on being advised of the support of the other Core Parties (as defined in the Ninety-



Seventh Report), no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Jennifer Stam, sworn August 26, 2013, filed.

1.    THIS COURT ORDERS that the time for the service of the Notice of Motion, the Ninety-Seventh Report, and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.    THIS COURT ORDERS that the deposition protocol which is Exhibit "1" to the Stipulation, both of which are attached as Schedule A hereto, be and are hereby approved.

MISCELLANEOUS

3.    THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

4.    THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative

body, wherever located, for the recognition of this Order and for assistance in carrying out the

terms of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

AUG 2 7 2013

## SCHEDULE A

### Attached.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| NORTEL NETWORKS INC., *et al.*, | Case No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |

— and —

Court File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C.
1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER PART IV OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, R.S.C. 1985, c. C-36, AS AMENDED.

**STIPULATION REGARDING EMEA MOTION FOR EXTENSION OF SCHEDULE**

In conjunction with the agreement of the U.S. Debtors and Canadian Monitor

and Debtors (together with the EMEA Debtors, the "Estates"), as well as all other Core Parties

(together with the Estates, the "Parties"), to support the modification to the Litigation Timetable,

Discovery Plan and Allocation Protocol set forth in EMEA Debtors' Motion to Modify

Scheduling Orders (the "Motion"), the Parties hereby agree as follows, which agreement shall be

submitted to the Courts for concurrent approval with modification to the Litigation Timetable,

Discovery Plan and Allocation Protocol set forth in the Motion.  The Parties all acknowledge that

01:14041454.1

rather than seek piecemeal extensions and the burden such practice would have on the Courts and the Parties, the Motion and the Parties' support of modification to the Litigation Timetable, Discovery Plan and Allocation Protocol as set forth in the Motion is intended both to compensate for delays in the Litigation Timetable to date and reasonably anticipated future adjustments that will best enable the Parties to meet the proposed amended Litigation Timetable. This Stipulation shall be without effect in the event the modification to the Litigation Timetable, Discovery Plan and Allocation Protocol as set forth Motion is rejected by the Courts and it is recognized that the Parties may have different positions on how the existing or any other proposed amended Litigation Timetable can be met, with different conditions, if these ones are not adopted.

      1.      The Parties agree that they will complete their non-privileged document productions heretofore promised in the manner each of them has described no later than September 3, 2013 (the date by which productions will be sent, not necessarily received). Privilege logs shall be exchanged, and the production of joint privileged documents to the other Estates shall be completed, no later than September 7, 2013.

      2.      (a)      The Parties agree that none of them will challenge the methodology that any other Party has disclosed it has used to gather, review and produce responsive documents, including the use of predictive coding, manual reviews, particular promised key words, particular promised date ranges, the particular promised custodians whose documents have been searched and the particular identified repositories that have been searched.

      (b)      Notwithstanding the foregoing, on or before 10:00 am (EDT) August 26, 2013, the UKPC shall disclose to the Parties a description of the methodology used to gather, review and produce responsive documents and, in the event any other Party notifies the other Parties, on or before 10:00 am (EDT) August 29, 2013, that it intends to reserve its right to

challenge the methodology disclosed by the UKPC, the preceding sub-paragraph 2(a) shall not apply as between any member of that Party's Deposition Group and the UKPC.

3.    Save for Parties' right to seek additional limited, targeted disclosure as set forth below, the Parties agree to forego further document requests of other Parties or requests that additional custodians or repositories of documents be searched. With due consideration being given to the associated cost or burden, Parties may seek limited, targeted disclosure of particular material documents or types of documents that were not captured by the prior searches or whose existence or relevance is discovered after the date hereof. Any Party receiving such a request shall reserve all rights to oppose such request. In the event of any dispute over such request, the requesting Party may make an application to the applicable Court(s) with a showing of good cause for the further disclosure. Nothing herein shall prevent any Party from assessing and if appropriate challenging assertions of privilege by other Parties.

4.    After completion of their non-privileged document production as contemplated in paragraph 1 above and the completion of their privilege logs and any associated production, it is not expected that the Parties will make further productions of documents. In order to prevent the selective disclosure and use of favorable documents while avoiding the production of documents favorable to other Parties, if any of the Parties do in the future produce additional documents other than as a result of a request, agreement or court order providing for a targeted search, that Party will perform a full search for responsive documents consistent with that Party's methodology or the general methodology employed by any of the Estates. Other than pursuant to a specific targeted request, agreement or court order, any partial search for documents shall obligate that Party to perform a full search and production consistent with that Party's search and review methodology or with the general search and review methodology

employed by any of the Estates. In the event of future disagreement or perceived ambiguity concerning this paragraph, the Parties describe this agreement as intending for no "cherry-picking."

5.      The proposed schedule in the Motion shall be amended such that the date for depositions or examinations to begin shall be September 23, 2013. Notwithstanding the foregoing, depositions or examinations previously scheduled through judicial process may proceed prior to September 23, 2013 if, upon request, the deponent or examinee does not agree with the noticing party at least five business days before the scheduled deposition or examination date to a mutually acceptable alternative date between September 23, 2013 and the close of fact discovery.

6.      The Parties agree to undertake reasonable efforts to spread depositions and examinations evenly throughout the period for fact discovery and shall offer dates for witnesses they are producing voluntarily that enables depositions and examinations to be scheduled in such manner.

7.      The Parties agree that the pendency of any third party discovery requests, or the receipt after August 31, 2013 of any third party documents, shall not be grounds to adjourn, delay or refuse to schedule the deposition or examination of any witness currently or formerly associated with a Party except upon a showing of good cause and determination of the Court(s) that it would advance the interests of justice. In the event of objections by third parties with regard to the scope of third party discovery requests or assertions of privilege, the Parties agree that they will meet and confer promptly with such third parties (and, as appropriate, among themselves) to consider the propriety of narrowing or limiting their scope to avoid the need for judicial intervention.

01:14041454.1

4

62

8.    Provided appropriate judicial process to compel the production of documents or testimony from third parties (which excludes persons currently or formerly associated with a Party who are being voluntarily produced for deposition or examination by a Party) is issued or commenced no later than September 30, 2013 and the noticing Party proceeds thereafter with reasonable diligence, the inability to compel such production of documents or testimony by the deadline to complete fact witness depositions or examinations shall not be a bar to obtaining such documents or testimony thereafter; provided, however, that

   a.  nothing herein shall prohibit a Party from seeking third party discovery (through judicial process or otherwise) after September 30, 2013 that is completed by the deadline for completion of fact depositions and examinations (extendable by agreement of the Parties or court order for good cause); and

   b.  absent court order, the absolute deadline for the receipt of such documents or testimony shall be the date for the service of rebuttal expert reports.

   c.  Except for good cause shown and upon determination of the Courts that it would be in the interests of justice, the pursuit of any discovery from third parties shall not provide a basis for further deferral of the trial date or adjournment of any of the interim dates set forth in the Motion.

*[Remainder of Page Left Intentionally Blank]*

01:14041454.1

9.    The Parties support, and will move for, the prompt entry/approval of the

draft of the Deposition Protocol dated August 23, 2013 in the form annexed hereto as **Exhibit 1**.

Dated:  August 25, 2013

*Counsel for the Official Committee*
*of Unsecured Creditors*

*/s/ Fred Hodara*
AKIN GUMP STRAUSS HAUER & FELD
LLP

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

DENTONS CANADA LLP
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

*Counsel for the Debtors*
*and Debtors in Possession*

*/s/ Jeffrey A. Rosenthal*
CLEARY GOTTLIEB STEEN & HAMILTON
LLP

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

TORYS LLP

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

| | |
|---|---|
| *Counsel for the Bondholders* | *Counsel for Ernst & Young Inc. as Monitor* |
| */s/ Atara Miller* | */s/ Paul Keller* |
| PACHULSKI STANG ZIEHL & JONES LLP | GOODMANS LLP |
| Laura Davis Jones | Jay Carfagnini |
| Kathleen P. Makowski | Fred Myers |
| 919 North Market Street, 17th Floor | Joseph Pasquariello |
| P.O. Box 8705 | Benjamin Zarnett |
| Wilmington, Delaware 19801 | Bay Adelaide Centre |
| Telephone: (302) 652-4100 | 333 Bay Street |
| Facsimile: (302) 652-4400 | Suite 3400 |
| | Toronto, ON M5H 257 |
| MILBANK, TWEED, HADLEY & McCLOY LLP | Canada |
| | Telephone: (416) 979 2211 |
| | Facsimile: (416) 979 1234 |
| Dennis F. Dunne | |
| Thomas R. Kreller | ALLEN & OVERY LLP |
| Albert A. Pisa | |
| Andrew M. Leblanc | Ken Coleman |
| 1 Chase Manhattan Plaza | Daniel Guyder |
| New York, New York 10005 | 1221 Avenue of the Americas |
| Telephone: (212) 530-5000 | New York, New York 10020 |
| Facsimile: (212) 530-5219 | Telephone: (212) 610-6300 |
| | Facsimile: (212) 610-6399 |
| BENNETT JONES | BUCHANAN INGERSOLL & ROONEY PC |
| Gavin Finlayson | Mary F. Caloway |
| Richard B. Swan | Kathleen A. Murphy |
| Kevin Zych | 1105 North Market Street, Suite 1900 |
| S. Richard Orzy | Wilmington, Delaware 19801 |
| 3400 One First Canadian Place | Telephone: (302) 552-4200 |
| P.O. Box 130 | Facsimile: (302) 552-4295 |
| Toronto, Ontario M5X 1A4 | |
| Canada | |

*Counsel for the Canadian Debtors*

/s/ Paul Keller

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY
PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Joint Administrators*

/s/ Neil Oxford

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

Robin Schwill

*Counsel for the Canadian Creditors Committee*

/s/ Selinda A. Melnik

Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

DLA PIPER LLP (US)
*U.S. Counsel for the Canadian Creditors Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile: (302) 778-7914
*- and -*
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

CAW-CANADA LEGAL DEPARTMENT
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON  M2H 3H9
Telephone: (416) 495-3776
Facsimile: (416) 495-3786

KOSKIE MINSKY LLP
*Lawyers for the Former and Disabled Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON  M5H 3R3
Telephone: (416) 595-2090
Facsimile: (416) 204-2877

Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

 /s/ Michael Riela

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

01:14041454.1

9

Ce 7

McCARTHY TÉTRAULT LLP
*Lawyers for Morneau Shepell Ltd.,*
*as administrator of the Nortel Canada*
*registered pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone:  (416) 601-7998
Facsimile:  (416) 868-0673

PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON  M5V 3H1
Telephone:  (416) 646-4300
Facsimile:  (416) 646-4301

SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP
Barristers and Solicitors
*Lawyers for the Active and Transferred*
*Canadian Employees*

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON   M5H 3E5
Telephone:  (416) 214-5213/5206
Facsimile:   (416) 214-5413/5400

*Counsel for the Trustee of Nortel Networks UK*
*Pension Plan and the Board of the Pension*
*Protection Fund*

/s/ Sameer Advani
BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller
Rebecca Lewis

01:14041454.1

10

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

/s/ David A. Crichlow
_____

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Law Debenture Trust Company of New York*

/s/ Daniel A. Lowenthal
_____

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

*Counsel for the Former Directors and*
*Officers of Nortel Networks Corporation*
*and Nortel Networks Limited*

*/s/ Betsy Putnam* _____

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada



## **EXHIBIT 1**

**Deposition Protocol**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------X
                                          :
                                          :   Chapter 11
                                          :
In re                                     :
                                          :
Nortel Networks Inc., et al.,[1]          :   Case No. 09-10138 (KG)
                                          :
                    Debtors.              :   (Jointly Administered)
                                          :
------------------------------------------------------------X
```

## DEPOSITION PROTOCOL STIPULATION

Having conferred and agreed that the orderly and efficient conduct of depositions[2] in these actions requires their mutual cooperation, the parties in this action hereby stipulate and agree that, subject to order of the U.S. and Canadian Courts, the following protocol (the "Deposition Protocol") shall apply to the taking of depositions/examinations in the Allocation dispute, and the litigations concerning the US Claims and the Canadian Claims.[3]

## A.    APPLICABILITY OF DEPOSITION PROTOCOL

1.    This Deposition Protocol shall govern all oral depositions and examinations out of court of fact deponents in these proceedings, including depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) and party representative examinations pursuant to Rule 31 of the *Ontario Rules of Civil Procedure*.

---

[1]    In addition to Nortel Networks Inc., the Debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA"). Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://epiq11.com/nortel.

[2]    The term "deposition(s)," as used herein, refers to both depositions and examinations.

[3]    Capitalized terms used in this Deposition Protocol but not otherwise defined shall have the meanings ascribed to them in the Litigation Timetable and/or the Allocation Protocol.

2. This Deposition Protocol shall apply to:

   a. The Canadian Allocation Group and Canadian Claims Defendant Group (the "Canadian Deposition Group");

   b. The US Allocation Group and US Claims Defendant Group (the "US Deposition Group");

   c. The EMEA Allocation Group, US EMEA Claimants Group, Canadian EMEA Claimants Group, and UK Pension Claimants ("EMEA Deposition Group") (each of the Canadian Deposition Group, US Deposition Group and EMEA Deposition Group a "Deposition Group") .

   d. All other Core Parties.  Except as otherwise provided herein, each Discovery Participant that is not a member of a Deposition Group will be deemed for purposes of this Deposition Protocol to be a member of the Deposition Group with similarly aligned interests for each applicable deposition.

**B.    LOCATION OF DEPOSITIONS**

To maximize the efficiency of the depositions/examinations and for the convenience of all parties:

1. Depositions taking place in New York shall take place at Cleary Gottlieb Steen & Hamilton, LLP, One Liberty Plaza, New York, New York, 10006 (or alternative nearby site in the event of capacity restrictions).

2. Depositions taking place in Toronto shall take place at Goodmans LLP, 333 Bay Street Suite #3400, Toronto, Ontario M5H 2S7 (or alternative nearby site in the event of capacity restrictions).

3. Depositions taking place in London shall take place at Herbert Smith Freehills LLP, Exchange House, Primrose Street, London EC2A 2HS (or alternative nearby site in the event of capacity restrictions).

4. Depositions taking place in Ottawa shall take place at Gowling LaFleur Henderson LLP, 160 Elgin Street, Suite 2600, Ottawa, Ontario K1P 1C3 (or alternative nearby site in the event of capacity restrictions).

5. Depositions in other cities will take place either at a location chosen by the producing Discovery Participant, if applicable, or by designation or agreement by the Deposition Group(s) with whom the witness was primarily associated, which may take into account the convenience of the witness.

6. The host of each deposition shall provide one large room for the deposition as well as one breakout room for each of the three Deposition Groups, and one additional breakout room for the witness (and his or her counsel, if the witness is separately represented).  In the event that more than one deposition occurs at a host firm on a given day, only one breakout room needs to be provided per Deposition Group.

7. All witnesses who a Discovery Participant has the ability to compel attendance in Toronto or New York [or London] shall be produced for deposition in either Toronto, New York [or London] at the option of the producing Discovery Participant. Discovery Participants shall use reasonable efforts to produce all cooperating witnesses in either Toronto, New York [or London], and each Discovery Participant producing a cooperating witness shall offer to pay that witnesses' reasonable travel expenses to do so.[4]

---

[4] The Parties have not yet reached agreement on whether witnesses currently employed by or under the control of the EMEA Debtors or the U.K. Pension Claimants must be produced in Toronto or New York, or may be produced in London, and have reserved this issue for further discussion among themselves and, failing agreement, resolution by the Court(s). The Parties do agree that the EMEA Debtors and the U.K. Pension Claimants may produce cooperating witnesses not employed by them or under their control in London.

## C.  LENGTH OF DEPOSITIONS

1.  For witnesses designated by one or two Deposition Groups,[5] the presumption shall be that depositions shall last no longer than one seven-hour day (measured by the "on-the-record" time).

    a.  For witnesses designated by one Deposition Group, five hours shall be allocated for the designating Deposition Group, and one hour each shall be allocated for the remaining two Deposition Groups.

    b.  For witnesses designated by two Deposition Groups, three hours shall be allocated for each designating Deposition Group, and one hour shall be allocated for the remaining Deposition Group.

2.  For witnesses designated by three Deposition Groups, the presumption shall be that depositions shall last no longer than one ten-hour day (measured by the "on-the-record" time), or one and one half days, at the option of the witness.  Each Deposition Group shall be allocated equal time.

3.  On August 9, 2013, each Deposition Group served all Core Parties with a list of designated witnesses that Deposition Group wishes to cross-designate.  On August 13, 2013, each Deposition Group served all Core Parties with a list of witnesses that such Deposition Group anticipates requiring more time to examine than the presumed time allotment herein, including the amount of time that the Deposition Group requests for each such witness.  In the event the total amount of time requested exceeds the presumptive maximum for a particular deposition and the witness is unwilling to agree to such additional time, the parties shall confer in good faith in an effort to reduce the total requested time and, failing agreement, shall have the right to seek judicial relief in

---

[5]      If, pursuant to Section 6 of the Discovery Plan, any Claim or Allocation Group within a Deposition Group designated or cross-designated the witness, the witness will be deemed "designated by" such Deposition Group, including for purposes of time allocations.

advance of such deposition. If the witness is willing to agree to additional time (including time over and above the total amount requested by the Deposition Groups), the Deposition Groups shall confer in good faith on a fair allocation of the additional time to depose the witness. Absent extraordinary circumstances, and to avoid the burden on a witness to appear twice, any disagreements with the allocated time for a deposition must be raised, and if unresolved, judicial relief seeking modification sought, prior to a deposition.

4. For purposes of time allocation, Core Parties that are not in one of the Deposition Groups shall be grouped by agreement with a Deposition Group with similarly aligned interests for that deposition and, if an agreement cannot be reached, may seek leave of the Court(s) or consent of the Deposition Groups for a separate time allocation.

5. The court reporter shall maintain a total running time for actual deposition testimony and record how much time is taken in each deposition by each Deposition Group.

6. Where necessary to complete the deposition and avoid unnecessary motion practice, the deponent may agree, at the request of any Discovery Participant, to extend the length of any deposition for additional time on the same day. The travel plans of other Core Parties shall not be an excuse to object to the extension of a deposition in the event of such agreement. In the event more than a de minimis amount of additional time is granted, the Core Parties shall work collaboratively to fairly allocate such additional time.

7. Time spent participating in teleconferences with the Court(s) or their agents during a deposition shall not be counted as "on the record" time for purposes of calculating the time remaining for the deposition.

**D.    SCHEDULING OF DEPOSITIONS**

1. For witnesses designated for deposition by July 30, 2013, Discovery Participants advised the other Discovery Participants on August 13, 2013 of those witnesses they have been informed will appear voluntarily. After a seven-day grace period expiring on August 20, 2013, for witnesses that have not indicated a willingness to appear voluntarily, any Discovery Participant may subpoena, issue any other applicable process, and/or contact that witness directly (subject to paragraph 2(c), below).

2. For witnesses not voluntarily appearing:

   a. The Discovery Participant with whom the witness was associated must provide last known contact information (including phone number) for the witness if not previously disclosed in interrogatory responses;

   b. The Discovery Participant with whom that witness was associated must provide the name and contact information (including phone number) of the witness's attorney, if known;

   c. Any Discovery Participant contacting such witness must first ask the witness if he or she has an attorney for purposes of this litigation, and if the answer is affirmative, further contact should occur through that counsel. Discovery Participants must otherwise comply with all applicable ethical rules for speaking with unrepresented persons; and

   d. Any contacting Discovery Participant shall notify the other Discovery Participants if he or she learns of contact or counsel information not previously disclosed to the other Discovery Participants.

3. No depositions shall be conducted on weekends absent consent of each of the relevant Deposition Groups, on Labor Day (September 2, 2013), Rosh Hashanah (September 4, 5, and 6, 2013), Yom Kippur (September 13 and 14, 2013), Canadian Thanksgiving

(October 14, 2013) and U.S. Thanksgiving (November 28 and 29, 2013). In the event a weekend deposition is requested and the requisite consent cannot be obtained, the Deposition Group proposing such deposition may proceed only with leave upon demonstration of good cause to the U.S. Court for depositions taking place in the U.S., the Canadian Court for depositions taking place in Canada, and either Court for depositions taking place outside of North America.

4. Except upon order of the Court for good cause shown, or consent of each of the Deposition Groups, fact depositions shall be taken only once.

5. A master deposition calendar shall be maintained either online in realtime or by a member of the Scheduling Committee to be designated that shall update and circulate the calendar on a daily basis.

6. Depositions of witnesses under the control of a Discovery Participant or otherwise voluntarily appearing ("Voluntary Witnesses") shall be scheduled as follows:

   a. A scheduling committee (the "Scheduling Committee") shall be comprised of one person for each Deposition Group (who may be represented by an alternate if unavailable). By August 26, 2013, all Discovery Participants shall provide the dates that they have received from each Voluntary Witness on which they are (or are not) available to be deposed from September 23, 2013 through November 27, 2013. Discovery Participants shall seek to obtain multiple potential dates from witnesses. All Discovery Participants shall make every reasonable effort to be in a position to offer a sufficiently broad range of dates for their witnesses collectively so as to enable depositions of witnesses of each Discovery Participant to be scheduled relatively evenly throughout the period for fact depositions.

   b. The Scheduling Committee shall meet and confer by August 30 and as necessary thereafter to schedule the depositions of Voluntary Witnesses whose availability is

7

known as of the date of the creation of that schedule and shall distribute a calendar as soon as possible after conferring, but no later than September 4. Objections to this initial proposed schedule shall be made on or prior to September 9, 2013. Recognizing the importance of accommodating witnesses, objections to a date preferred by or required by the witness should be made sparingly and only in extreme circumstances.

c. Subsequent to August 30, 2013, Discovery Participants shall provide notice of potential deposition dates to the Scheduling Committee promptly after obtaining them from Voluntary Witnesses from whom they were unable to provide availability prior to the creation of the initial schedule, whereupon the Scheduling Committee shall meet and confer (which may be telephonic or by email) within three business days of being advised of available dates for a witness to select a proposed date for the deposition of that witness (provided however that the Scheduling Committee shall endeavor to meet and confer sooner if necessary to comply with the notice requirements in paragraph D(7) below). Any proposed deposition date and location for each witness determined by the Scheduling Committee shall be placed on the master calendar, following which all other Discovery Participants shall have two business days to object.

d. If the Scheduling Committee is unable to agree upon a proposed date for a witness within five business days of being provided with available dates, the party with whom the Voluntary Witness is cooperating shall select the date and inform the Scheduling Committee, following which all other Discovery Participants (including members of the Scheduling Committee) shall have two business days to object.

e. All objections shall be resolved through a meet and confer among the Scheduling Committee (or designated members) and the objector(s) within one business day;

8

failing resolution, the objector must seek relief from the Court(s) within two business days thereafter (by letter) by demonstrating good cause or the objection is waived.

7. Discovery Participants shall endeavor to provide the Scheduling Committee with sufficient advance notice of the first date a Voluntary Witness is available so as to provide the Scheduling Committee with sufficient time to notify all Discovery Participants of any deposition not less than five business days before examinations in North America and not less than seven business days before examinations outside of North America if more notice is not possible.  Absent consent of each of the Discovery Groups, or authorization by one of the Courts, no deposition may be scheduled upon notice to all Discovery Participants of less than three business days if taking place in North America and five business days if taking place outside of North America.

8. Non-party depositions scheduled by compulsory process for witnesses who will not appear voluntarily ("Compulsory Witnesses") shall be immediately reflected on the calendar upon notice to the Scheduling Committee.  Where more than one Deposition Group has designated a witness who will not agree to attend voluntarily, those Groups shall endeavor to coordinate the selection of a deposition date prior to one Deposition Group moving forward unilaterally.  Except for such depositions noticed prior to the date hereof, where practicable, Discovery Participants shall adapt and utilize the Scheduling Committee procedure described in the preceding paragraphs to schedule the depositions of Compulsory Witnesses, including the deadlines set forth therein for objections, meet and confers and requests for judicial relief.

9. Once a Voluntary Witness has been placed on the master calendar and confirms the firm scheduling of his or her deposition, including its proposed length and location, and provided there are no timely objections to such scheduling, such Voluntary Witness

9

shall no longer be expected to remain available on any of the other dates that he or she may have previously indicated availability.

10. Once scheduled, depositions may not be postponed except on the unanimous consent (given or withheld in good faith) of the Scheduling Committee or for good cause authorized by the Court, except in the event of an emergency necessitated by the witness with insufficient time to obtain consent or leave.  Immediate notice of any postponement shall be provided to the other Discovery Participants.  So long as reasonable notice was provided consistent with paragraph D(7), the filing of an objection shall not result in the adjournment of a deposition unless a court order for such adjournment is obtained.

**E.    QUESTIONING AT DEPOSITIONS**

1. Deposition Groups shall allocate their time for each deposition among their members and shall each designate a lead examiner.  Non-repetitive examination may be conducted by other Discovery Participants in the same Deposition Group (within the time allotted for that Group).  The parties shall agree ahead of time on the order of questioning at each deposition and the lead examiners in each Deposition Group shall work in good faith as provided for in the Discovery Plan to coordinate the questioning in an effort to avoid duplication.

2. No more than two examiners per Discovery Participant may ask questions at a deposition.  A second examiner may question the witness only on the following conditions:  (i) the first examiner may not question the witness again after the second examiner has begun; (ii) the second examiner must have been present for the entirety of the first examiner's questioning; and (iii) the second examiner must question the witness only on a separate topic or separate topics than were covered by the first examiner.

81

3. Depositions shall begin promptly at 9:00 a.m. without exception unless absolutely necessary to accommodate the witness. As long as proper notice was provided, depositions shall commence at that time even if some Discovery Participants are not present.

4. An objection by one Discovery Participant preserves that objection for all Discovery Participants. Discovery Participants shall not make redundant objections.

   a. Objections to form shall be deemed to be on all grounds appropriate for a form objection.

   b. No objection other than to the form of the question is waived by failure to assert it during the deposition.

5. Nothing shall preclude counsel from seeking an order from the Court(s) to protect the witness where counsel has a reasonable, good faith belief that the witness is being questioned on wholly irrelevant matters or in an otherwise abusive manner, or that there are other grounds under Federal Rule of Bankruptcy Procedure 7026(c) or the Ontario Rule of Civil Procedure 34.14 for a protective order with respect to the questioning being conducted of the witness. In that event, counsel shall cooperate in deferring answers to those questions until later in the deposition to permit counsel to contact the Court. If the Court is unavailable throughout the deposition and the parties are unable to reach an agreement on the objected-to questions, the deposition may be adjourned until a court ruling can be obtained.

6. Discovery Participants are encouraged to limit attendance at depositions. There shall be no limitation on the number of attorneys viewing or listening remotely to a deposition, provided those attorneys following remotely remain silent.

7. For planning purposes, attendees shall endeavor to advise a designated person at the host location of their identities at least two business days prior to each deposition.

11

82

8. The Discovery Participants shall endeavor to have the court reporting service stream the deposition (audio, video, and/or transcription) over the internet so as to enable parties to follow the deposition remotely. Aside from limited questions (no more than ten) submitted in writing at least one business day prior to the commencement of the deposition where the number and scope of those questions do not warrant the attendance of counsel for a particular Discovery Participant at the examination, no examination may be conducted or objections asserted by any attorney not present at the deposition. No deposition shall be adjourned or delayed due to a problem with remote access technology. In the event of the advance submission of written questions, lead counsel at the deposition for the Discovery Group encompassing that Discovery Participant shall ask the questions but shall have the discretion and the duty not to ask any written questions he or she believes would be repetitive.

9. At the outset of the deposition, on the record, all counsel shall identify themselves and the Discovery Participant they represent. The Discovery Participants shall explore with the court reporting service how to record the identities of counsel following the deposition remotely.

F.    **USE OF DOCUMENTS**

1. No later than four business days before a deposition, all Discovery Participants intending to examine a deponent may, but shall not be obligated to, serve via email a non-binding list of the specific documents (by Bates number or, if previously marked, by exhibit number) that counsel anticipates using or referring to during the deposition. Discovery Participants shall endeavor to transmit pdfs of the actual documents with such email. In that circumstance, counsel need not bring extra copies of such documents except as necessary for the witness and his or her counsel.

12

2. Any counsel who does not pre-designate documents shall not forfeit the right to use those documents, but in that case, shall bring at least fifteen copies of such documents to the deposition for counsel and the witness, at least six of which must be hard copies and the balance of which can be pdfs in electronic form on individual USB drives/memory sticks.  Any Discovery Participant that requests a copy of a document used during a deposition shall be provided one by the examining Discovery Participant following the deposition.

3. Each document marked for identification at a deposition shall be numbered with a new exhibit number.  Counsel will make their best efforts to use the previously-marked exhibits by number in subsequent depositions.

4. To avoid the possibility of the same numbers being used for different exhibits during concurrently-conducted depositions, exhibits first marked during the deposition of a witness primarily associated with the Canadian Debtors shall begin with 1,000, the U.S. Debtors shall begin with 2,000, the EMEA Debtors shall begin with 3,000, the UK Pension Claimants shall begin with 4,000, and other parties shall begin with 5,000.  (To the extent that a witness is primarily associated with more than one Discovery Participant, the lower sequence shall be used).  When more than one deposition is occurring on the same day which poses risk of overlap, the examining parties shall confer in advance about starting numbers to use at those depositions to avoid overlap.[6]

5. Immediately following each deposition, the initial examiner shall be responsible for circulating a list of new exhibit numbers marked at such deposition, with reference to Bates numbers.

---

[6]    The Parties intend to confer further and, with the approval of each of the Discovery Groups prior to the commencement of depositions, may refer to exhibits by Bates numbers rather than exhibit numbers.

13

6. The court reporter shall be responsible for ensuring that the original of all deposition transcripts, including exhibits, are retained at the court reporter's offices.

G.    **RULE 30(B)(6) AND REPRESENTATIVE PARTY DEPOSITIONS/ EXAMINATIONS**

1. Notwithstanding anything in the Discovery Protocol and Litigation Timetable to the contrary, representative party depositions/examinations for discovery under Rule 31 of the *Rules of Civil Procedure for Ontario* (hereinafter "Representative Depositions" of "Representative Witnesses") shall be conducted as follows:

   a. All previously served Rule 30(b)(6) notices are deemed superseded by this paragraph. At least ten business days before the commencement of Representative Depositions, a Deposition Group may serve a very limited number of subjects on which it believes no fact witness currently or formerly associated with the party producing the Representative Witness has provided adequate first-hand testimony. Provided such subjects are small in number and reasonable in scope, the Representative Witness has a duty to prepare to testify on the designated subjects. In the event a party designates an unreasonable number of subjects relative to the time limitations for the examination, subjects of an impermissibly broad scope or subjects inappropriate for a Representative Deposition, objections shall be served within three business days. The applicable parties shall meet and confer in good faith within two business days thereafter and, failing agreement, the burden shall be on the noticing party to obtain judicial relief at least two business days (in order to enable preparation) prior to the Representative Deposition. The failure to obtain judicial relief on a timely basis shall not be a basis to adjourn a Representative Deposition.

14

85

b. Representative Depositions shall be scheduled through the Scheduling Committee process and with similar procedures. The identity of Representative Witnesses shall be disclosed at least five business days prior to their scheduled deposition dates.

c. Discovery Participants shall not be limited in their examination of the Representative Witness to the noticed subjects; however, the Representative Witness shall have no duty to prepare for such examination on any specific subjects other than those noticed to which no objection was raised or court order obtained.

d. Any undertakings required in accordance with Rule 31 of the *Rules of Civil Procedure for Ontario* shall be limited to specific matters of fact outside the Representative Witness's knowledge, information and belief that are not already the subject of first-hand deposition testimony obtained from a knowledgeable fact witness. In the event of disagreement, the applicable parties shall meet and confer promptly and promptly thereafter bring any dispute to the attention of the appropriate Court.

2. Each Discovery Participant who filed an independent pleading (other than a non-argumentative joinder) shall designate one Representative Witness to be deposed in Toronto or New York, unless otherwise agreed by each of the Deposition Groups. Additionally, any Discovery Participant (other than the estates or UKP) who filed an independent pleading may withdraw such pleading by November 15, 2013 (and may file a non-argumentative joinder in its place) and thereby not be subject to the requirement to designate a Representative Witness. Notwithstanding the foregoing, the Directors and Officers shall not be required to designate a Representative Witness.

3. Time allocation for Representative Depositions:



     a.  The Representative Witness for each of the U.S. Debtors, the Canadian Debtors, the U.K. Pension Claimants and NNUK shall be deposed for two seven-hour days, with one day being allocated to each of the two other Deposition Groups.

     b.  The Discovery Participants disagree on the amount of time for Representative Witnesses for the EMEA Debtors other than NNUK, including whether the EMEA Debtors can designate one Representative Witness for all of the EMEA Debtors collectively.  To the extent they are unable to reach consensual resolution, the parties reserve all rights and will seek judicial guidance.

     c.  Each Representative Witness for each of the other Discovery Participants who filed an independent pleading (other than a non-argumentative joinder) shall be deposed for no longer than one seven-hour day (measured by the "on-the-record" time), with half being allocated to each of the two opposing Deposition Groups.

4.  If a party designates a Representative Witness who has already been deposed as a fact witness, that party waives any objection to a second deposition.  Unless agreed to by the Deposition Participants who noticed the fact deposition, Representative Depositions shall occur separate from fact depositions.

5.  Representative Depositions shall occur during the last two weeks before fact depositions end.

**H.**    **COURT REPORTING SERVICES**

1.  For reasons of cost and efficiency, Ellen Grauer Court Reporting Co. has offered discounted rates and shall be used for all depositions.

2.  The court reporting service will provide remote access as described herein and secure real-time video streaming (if videotaped) and LiveNote, and the host party shall provide speaker-phone and internet capability for all depositions.  The court reporting service will transcribe all conference calls with the Court from the deposition site as

16

part of the deposition transcript for that day.  At the end of each day, the court reporter will provide a cleaned-up transcript of the LiveNote session (via web or email) to all Discovery Participants ordering a transcript.

3.  Depositions may be videotaped or digitally recorded at the request and at the cost of any requesting Discovery Participant upon at least five business days' notice (where sufficient notice of the deposition is provided) to the court reporting service and all Discovery Participants and counsel for the witness.  In the event multiple Discovery Participants request that a deposition be videotaped or digitally recorded, the cost of such taping shall be split equally among all Discovery Participants that request videotaping or digital recording.  Counsel for the witness shall be entitled to a copy of such videotape without cost.

## I.    STANDARD STIPULATION

The following stipulation will apply to all depositions taken in these actions and shall be included in each transcript by the court reporter:

1.  Upon completion of the transcription of today's session, the original transcript shall be sent to counsel for the witness by the court reporter.  Counsel shall promptly forward it to the witness for review, correction and signature under penalty of perjury.  The witness shall have 30 days from the day of receipt within which to review, make any corrections, sign the deposition transcript under penalty of perjury, and return it to counsel.  The witness's counsel shall then forward the original transcript plus corrections to the court reporter, who will promptly notify all counsel of its receipt and any changes to testimony made by the witness.

2.  If the witness is not represented by counsel, the original transcript will be sent to the witness by the court reporter.  After review, correction and signature within 30 days from the date of receipt, the witness shall return the original transcript to the court

17

reporter, who will notify all counsel of its receipt and any changes to testimony by the witness.

3.  The court reporter will retain the original transcript, including exhibits. If, for any reason, the original is lost, misplaced, not returned, not signed, or unavailable, a certified copy may be used in its place for all purposes. The court reporter is otherwise relieved of any statutory duties.

## J.    CONFIDENTIALITY

The Order Entering a Protective Order [D.I. 10805] / [Order (Protective Order), Ontario Superior Court of Justice, 09-CL-7950, June 11, 2013] shall govern the treatment of Confidential Discovery Material presented at each deposition.

## K.    USE OF DEPOSITIONS AT TRIAL

The Discovery Participants agree that Section 6(c) of the Discovery Plan should be clarified and amended, as necessary, to allow any Discovery Participant to use, in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Courts), deposition testimony of witnesses (other than deposition testimony of Representative Witnesses, the use of which is provided for under the Discovery Plan and the applicable Rules) as part of its direct or rebuttal case at trial, in a consistent manner for the purposes of Allocation, U.S. Claims and/or Canadian Claims. To the extent that the content of such deposition testimony would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Ontario rules of evidence or the Federal Rules of Evidence if the witness were present at trial in the relevant jurisdiction, any Discovery Participant may raise an objection to the admission of the testimony and either or both of the Court(s) may make a ruling about its admissibility at trial, based on the rules of evidence in each jurisdiction.

The Discovery Participants agree to meet and confer in good faith by no later than September 4, 2013 to endeavor to agree upon the parameters for the use and admissibility of

89

deposition testimony at trial, and any related considerations such as, without limitation, the extent to which Discovery Participants will retain the right to compel witnesses to appear at trial. If the Discovery Participants are unable to reach agreement by September 10, 2013, they will seek the guidance of the Court(s) on the issue by no later than the week of September 16, 2013.

Dated: August 25, 2013

*Counsel for the Official Committee*
*of Unsecured Creditors*

*/s/ Robert A. Johnson*
AKIN GUMP STRAUSS HAUER & FELD LLP

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

DENTONS CANADA LLP
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

*Counsel for the Debtors*
*and Debtors in Possession*

*/s/ Jeffrey A. Rosenthal*
CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

TORYS LLP

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

| | |
|---|---|
| *Counsel for the Bondholders* | *Counsel for Ernst & Young Inc. as Monitor* |
| /s/ Atara Miller | /s/ Paul Keller |
| PACHULSKI STANG ZIEHL & JONES LLP | GOODMANS LLP |
| | Jay Carfagnini |
| Laura Davis Jones | Fred Myers |
| Kathleen P. Makowski | Joseph Pasquariello |
| 919 North Market Street, 17th Floor | Benjamin Zarnett |
| P.O. Box 8705 | Bay Adelaide Centre |
| Wilmington, Delaware 19801 | 333 Bay Street |
| Telephone: (302) 652-4100 | Suite 3400 |
| Facsimile: (302) 652-4400 | Toronto, ON M5H 257 |
| | Canada |
| | Telephone: (416) 979 2211 |
| MILBANK, TWEED, HADLEY & McCLOY LLP | Facsimile: (416) 979 1234 |
| Dennis F. Dunne | ALLEN & OVERY LLP |
| Thomas R. Kreller | |
| Albert A. Pisa | Ken Coleman |
| Andrew M. Leblanc | Daniel Guyder |
| 1 Chase Manhattan Plaza | 1221 Avenue of the Americas |
| New York, New York 10005 | New York, New York 10020 |
| Telephone: (212) 530-5000 | Telephone: (212) 610-6300 |
| Facsimile: (212) 530-5219 | Facsimile: (212) 610-6399 |
| BENNETT JONES | BUCHANAN INGERSOLL & ROONEY PC |
| Gavin Finlayson | Mary F. Caloway |
| Richard B. Swan | Kathleen A. Murphy |
| Kevin Zych | 1105 North Market Street, Suite 1900 |
| S. Richard Orzy | Wilmington, Delaware 19801 |
| 3400 One First Canadian Place | Telephone: (302) 552-4200 |
| P.O. Box 130 | Facsimile: (302) 552-4295 |
| Toronto, Ontario M5X 1A4 | |
| Canada | |

*Counsel for the Canadian Debtors*

*/s/ Paul Keller* _____

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY
PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Joint Administrators*

*/s/ Neil Oxford* _____

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

*Counsel for the Canadian Creditors Committee*

*/s/ Selinda A. Melnik*
Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

DLA PIPER LLP (US)
*U.S. Counsel for the Canadian Creditors Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile:  (302) 778-7914
*- and -*
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

CAW-CANADA LEGAL DEPARTMENT
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON  M2H 3H9
Telephone: (416) 495-3776
Facsimile:  (416) 495-3786

KOSKIE MINSKY LLP
*Lawyers for the Former and Disabled Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON  M5H 3R3
Telephone:  (416) 595-2090
Facsimile:  (416) 204-2877

Robin Schwill
Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

*/s/ Michael Riela*

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048



McCARTHY TÉTRAULT LLP
*Lawyers for Morneau Shepell Ltd.,*
*as administrator of the Nortel Canada*
*registered pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone:  (416) 601-7998
Facsimile:  (416) 868-0673

PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON  M5V 3H1
Telephone:  (416) 646-4300
Facsimile:  (416) 646-4301

SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP
Barristers and Solicitors
*Lawyers for the Active and Transferred*
*Canadian Employees*

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON   M5H 3E5
Telephone:   (416) 214-5213/5206
Facsimile:   (416) 214-5413/5400

*Counsel for the Trustee of Nortel Networks UK*
*Pension Plan and the Board of the Pension*
*Protection Fund*

*/s/ Sameer Advani*
BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller

23

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

/s/ David A. Crichlow

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

Rebecca Lewis
Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Law Debenture Trust Company of New York*

/s/ Daniel A. Lowenthal

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

24

95

*Counsel for the Former Directors and*
*Officers of Nortel Networks Corporation and*
*Nortel Networks Limited*

*/s/ Betsy Putnam*

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

9 6

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-7950

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

**ORDER**
**(Deposition Protocol)**

---

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay (LSUC #: 21152A)**
**Jennifer Stam (LSUC #: 46735J)**
Tel:    (416) 862-5697
Fax:    (416) 862-7661

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON  M5H 2S7

**Jay A. Carfagnini (LSUC#: 22293T)**
**Jessica Kimmel (LSUC#: 32312W)**
**Peter Ruby (LSUC#: 38439P)**
**Joseph Pasquariello (LSUC#: 38390C)**
Tel: 416.979.2211
Fax: 416.979.1234

# APPENDIX C

# ORDER APPROVING AMENDED LITIGATION SCHEDULE

.

Court File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| THE HONOURABLE | ) | TUESDAY, THE 27th DAY OF |
| | ) | |
| MR. JUSTICE PATTILLO | ) | AUGUST, 2013 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, C.C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**ORDER APPROVING AMENDED LITIGATION SCHEDULE**

THIS MOTION, made by the court-appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators") of Nortel Networks UK Limited and certain of its affiliates (the "EMEA Debtors") was heard on this day at 330 University Avenue, Toronto, Ontario.

**ON BEING ADVISED OF THE SUPPORT OF THE CORE PARTIES PURSUANT TO THE STIPULATION ATTACHED AT SCHEDULE "A" HERETO:**

1.     THIS COURT ORDERS THAT the Allocation Protocol, approved by Morawetz J. on April 3, 2013, and the Litigation Timetable and Discovery Plan, approved by Morawetz J. on May 15, 2013, shall be and are hereby amended in the form attached at Schedule

"B" hereto. This Court shall retain jurisdiction over all matters arising from or relating to the interpretation or implementation of this Order.

2.      THIS COURT ORDERS THAT all of the dates set forth in the Allocation Protocol and the Litigation and Discovery Plan shall remain in full force and effect except to the extent expressly modified by the terms of this Order.

3.      THIS COURT ORDERS THAT the Stipulation Regarding EMEA Motion for Extension of Schedule, attached at Schedule "A" hereto, shall be and is hereby approved.

.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

AUG 2 8 2013

## SCHEDULE A

**Attached.**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re

NORTEL NETWORKS INC., *et al.*,

Debtors.

Chapter 11

Case No. 09-10138 (KG)
(Jointly Administered)

— and —

Court File No. 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C.
1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER PART IV OF THE COMPANIES' CREDITORS ARRANGEMENT
ACT, R.S.C. 1985, c. C-36, AS AMENDED.

**STIPULATION REGARDING EMEA MOTION FOR EXTENSION OF SCHEDULE**

In conjunction with the agreement of the U.S. Debtors and Canadian Monitor

and Debtors (together with the EMEA Debtors, the "Estates"), as well as all other Core Parties

(together with the Estates, the "Parties"), to support the modification to the Litigation Timetable,

Discovery Plan and Allocation Protocol set forth in EMEA Debtors' Motion to Modify

Scheduling Orders (the "Motion"), the Parties hereby agree as follows, which agreement shall be

submitted to the Courts for concurrent approval with modification to the Litigation Timetable,

Discovery Plan and Allocation Protocol set forth in the Motion. The Parties all acknowledge that

\0 \

rather than seek piecemeal extensions and the burden such practice would have on the Courts and the Parties, the Motion and the Parties' support of modification to the Litigation Timetable, Discovery Plan and Allocation Protocol as set forth in the Motion is intended both to compensate for delays in the Litigation Timetable to date and reasonably anticipated future adjustments that will best enable the Parties to meet the proposed amended Litigation Timetable. This Stipulation shall be without effect in the event the modification to the Litigation Timetable, Discovery Plan and Allocation Protocol as set forth Motion is rejected by the Courts and it is recognized that the Parties may have different positions on how the existing or any other proposed amended Litigation Timetable can be met, with different conditions, if these ones are not adopted.

1.   The Parties agree that they will complete their non-privileged document productions heretofore promised in the manner each of them has described no later than September 3, 2013 (the date by which productions will be sent, not necessarily received). Privilege logs shall be exchanged, and the production of joint privileged documents to the other Estates shall be completed, no later than September 7, 2013.

2.   (a)   The Parties agree that none of them will challenge the methodology that any other Party has disclosed it has used to gather, review and produce responsive documents, including the use of predictive coding, manual reviews, particular promised key words, particular promised date ranges, the particular promised custodians whose documents have been searched and the particular identified repositories that have been searched.

(b)   Notwithstanding the foregoing, on or before 10:00 am (EDT) August 26, 2013, the UKPC shall disclose to the Parties a description of the methodology used to gather, review and produce responsive documents and, in the event any other Party notifies the other Parties, on or before 10:00 am (EDT) August 29, 2013, that it intends to reserve its right to

2

102

challenge the methodology disclosed by the UKPC, the preceding sub-paragraph 2(a) shall not apply as between any member of that Party's Deposition Group and the UKPC.

3.      Save for Parties' right to seek additional limited, targeted disclosure as set forth below, the Parties agree to forego further document requests of other Parties or requests that additional custodians or repositories of documents be searched. With due consideration being given to the associated cost or burden, Parties may seek limited, targeted disclosure of particular material documents or types of documents that were not captured by the prior searches or whose existence or relevance is discovered after the date hereof. Any Party receiving such a request shall reserve all rights to oppose such request. In the event of any dispute over such request, the requesting Party may make an application to the applicable Court(s) with a showing of good cause for the further disclosure. Nothing herein shall prevent any Party from assessing and if appropriate challenging assertions of privilege by other Parties.

4.      After completion of their non-privileged document production as contemplated in paragraph 1 above and the completion of their privilege logs and any associated production, it is not expected that the Parties will make further productions of documents. In order to prevent the selective disclosure and use of favorable documents while avoiding the production of documents favorable to other Parties, if any of the Parties do in the future produce additional documents other than as a result of a request, agreement or court order providing for a targeted search, that Party will perform a full search for responsive documents consistent with that Party's methodology or the general methodology employed by any of the Estates. Other than pursuant to a specific targeted request, agreement or court order, any partial search for documents shall obligate that Party to perform a full search and production consistent with that Party's search and review methodology or with the general search and review methodology

3

103

employed by any of the Estates. In the event of future disagreement or perceived ambiguity concerning this paragraph, the Parties describe this agreement as intending for no "cherry-picking."

5.    The proposed schedule in the Motion shall be amended such that the date for depositions or examinations to begin shall be September 23, 2013. Notwithstanding the foregoing, depositions or examinations previously scheduled through judicial process may proceed prior to September 23, 2013 if, upon request, the deponent or examinee does not agree with the noticing party at least five business days before the scheduled deposition or examination date to a mutually acceptable alternative date between September 23, 2013 and the close of fact discovery.

6.    The Parties agree to undertake reasonable efforts to spread depositions and examinations evenly throughout the period for fact discovery and shall offer dates for witnesses they are producing voluntarily that enables depositions and examinations to be scheduled in such manner.

7.    The Parties agree that the pendency of any third party discovery requests, or the receipt after August 31, 2013 of any third party documents, shall not be grounds to adjourn, delay or refuse to schedule the deposition or examination of any witness currently or formerly associated with a Party except upon a showing of good cause and determination of the Court(s) that it would advance the interests of justice. In the event of objections by third parties with regard to the scope of third party discovery requests or assertions of privilege, the Parties agree that they will meet and confer promptly with such third parties (and, as appropriate, among themselves) to consider the propriety of narrowing or limiting their scope to avoid the need for judicial intervention.

4

104

8.    Provided appropriate judicial process to compel the production of documents or testimony from third parties (which excludes persons currently or formerly associated with a Party who are being voluntarily produced for deposition or examination by a Party) is issued or commenced no later than September 30, 2013 and the noticing Party proceeds thereafter with reasonable diligence, the inability to compel such production of documents or testimony by the deadline to complete fact witness depositions or examinations shall not be a bar to obtaining such documents or testimony thereafter; provided, however, that

a.    nothing herein shall prohibit a Party from seeking third party discovery (through judicial process or otherwise) after September 30, 2013 that is completed by the deadline for completion of fact depositions and examinations (extendable by agreement of the Parties or court order for good cause); and

b.    absent court order, the absolute deadline for the receipt of such documents or testimony shall be the date for the service of rebuttal expert reports.

c.    Except for good cause shown and upon determination of the Courts that it would be in the interests of justice, the pursuit of any discovery from third parties shall not provide a basis for further deferral of the trial date or adjournment of any of the interim dates set forth in the Motion.

[*Remainder of Page Left Intentionally Blank*]

5

9. The Parties support, and will move for, the prompt entry/approval of the

draft of the Deposition Protocol dated August 23, 2013 in the form annexed hereto as **Exhibit 1**.

Dated: August 25, 2013

*Counsel for the Official Committee*
*of Unsecured Creditors*

*/s/ Fred Hodara*
AKIN GUMP STRAUSS HAUER & FELD
LLP

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

DENTONS CANADA LLP
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

*Counsel for the Debtors*
*and Debtors in Possession*

*/s/ Jeffrey A. Rosenthal*
CLEARY GOTTLIEB STEEN & HAMILTON
LLP

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

TORYS LLP

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

*Counsel for the Bondholders*

*/s/ Atara Miller*

PACHULSKI STANG ZIEHL & JONES
LLP

Laura Davis Jones
Kathleen P. Makowski
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

MILBANK, TWEED, HADLEY &
McCLOY LLP

Dennis F. Dunne
Thomas R. Kreller
Albert A. Pisa
Andrew M. Leblanc
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

BENNETT JONES

Gavin Finlayson
Richard B. Swan
Kevin Zych
S. Richard Orzy
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario M5X 1A4
Canada

*Counsel for Ernst & Young Inc. as Monitor*

*/s/ Paul Keller*

GOODMANS LLP

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 257
Canada
Telephone: (416) 979 2211
Facsimile: (416) 979 1234

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

107

*Counsel for the Canadian Debtors*

*/s/ Paul Keller*

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY
PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Joint Administrators*

*/s/ Neil Oxford*

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

Robin Schwill

8

108

*Counsel for the Canadian Creditors Committee*

*/s/ Selinda A. Melnik*
Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

DLA PIPER LLP (US)
*U.S. Counsel for the Canadian Creditors Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile: (302) 778-7914
- *and* -
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

CAW-CANADA LEGAL DEPARTMENT
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON M2H 3H9
Telephone: (416) 495-3776
Facsimile: (416) 495-3786

KOSKIE MINSKY LLP
*Lawyers for the Former and Disabled Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON M5H 3R3
Telephone: (416) 595-2090
Facsimile: (416) 204-2877

Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

*/s/ Michael Riela*

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

9

109

McCARTHY TÉTRAULT LLP
*Lawyers for Morneau Shepell Ltd.,*
*as administrator of the Nortel Canada*
*registered pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone: (416) 601-7998
Facsimile: (416) 868-0673

PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON  M5V 3H1
Telephone: (416) 646-4300
Facsimile: (416) 646-4301

SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP
Barristers and Solicitors
*Lawyers for the Active and Transferred*
*Canadian Employees*

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON   M5H 3E5
Telephone:  (416) 214-5213/5206
Facsimile:   (416) 214-5413/5400

*Counsel for the Trustee of Nortel Networks UK*
*Pension Plan and the Board of the Pension*
*Protection Fund*

/s/ Sameer Advani
BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller
Rebecca Lewis

10

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

/s/ David A. Crichlow

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Law Debenture Trust Company of New York*

/s/ Daniel A. Lowenthal

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

11

*Counsel for the Former Directors and*
*Officers of Nortel Networks Corporation*
*and Nortel Networks Limited*

*/s/ Betsy Putnam* _____

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

12

**EXHIBIT 1**

**Deposition Protocol**

113

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------X
                                          :
                                          :    Chapter 11
In re                                     :
                                          :
Nortel Networks Inc., et al.,[1]          :    Case No. 09-10138 (KG)
                                          :
                  Debtors.                :    (Jointly Administered)
                                          :
----------------------------------------------------- X
```

## DEPOSITION PROTOCOL STIPULATION

Having conferred and agreed that the orderly and efficient conduct of depositions[2] in these actions requires their mutual cooperation. the parties in this action hereby stipulate and agree that, subject to order of the U.S. and Canadian Courts, the following protocol (the "Deposition Protocol") shall apply to the taking of depositions/examinations in the Allocation dispute, and the litigations concerning the US Claims and the Canadian Claims.[3]

## A.    APPLICABILITY OF DEPOSITION PROTOCOL

1. This Deposition Protocol shall govern all oral depositions and examinations out of court of fact deponents in these proceedings, including depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) and party representative examinations pursuant to Rule 31 of the *Ontario Rules of Civil Procedure*.

---

[1]     In addition to Nortel Networks Inc., the Debtors in the Chapter 11 cases are: Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc., and Nortel Networks (CALA) Inc. ("NN CALA"). Additional information regarding the Debtors can be found in their respective Chapter 11 petitions, which are available at http://epiq11.com/nortel.

[2]     The term "deposition(s)," as used herein, refers to both depositions and examinations.

[3]     Capitalized terms used in this Deposition Protocol but not otherwise defined shall have the meanings ascribed to them in the Litigation Timetable and/or the Allocation Protocol.

2. This Deposition Protocol shall apply to:

    a. The Canadian Allocation Group and Canadian Claims Defendant Group (the "Canadian Deposition Group");

    b. The US Allocation Group and US Claims Defendant Group (the "US Deposition Group");

    c. The EMEA Allocation Group, US EMEA Claimants Group, Canadian EMEA Claimants Group, and UK Pension Claimants ("EMEA Deposition Group") (each of the Canadian Deposition Group, US Deposition Group and EMEA Deposition Group a "Deposition Group") .

    d. All other Core Parties. Except as otherwise provided herein, each Discovery Participant that is not a member of a Deposition Group will be deemed for purposes of this Deposition Protocol to be a member of the Deposition Group with similarly aligned interests for each applicable deposition.

**B.    LOCATION OF DEPOSITIONS**

To maximize the efficiency of the depositions/examinations and for the convenience of all parties:

1. Depositions taking place in New York shall take place at Cleary Gottlieb Steen & Hamilton, LLP, One Liberty Plaza, New York, New York, 10006 (or alternative nearby site in the event of capacity restrictions).

2. Depositions taking place in Toronto shall take place at Goodmans LLP, 333 Bay Street Suite #3400, Toronto, Ontario M5H 2S7 (or alternative nearby site in the event of capacity restrictions).

\\5

3. Depositions taking place in London shall take place at Herbert Smith Freehills LLP, Exchange House, Primrose Street, London EC2A 2HS (or alternative nearby site in the event of capacity restrictions).

4. Depositions taking place in Ottawa shall take place at Gowling LaFleur Henderson LLP, 160 Elgin Street, Suite 2600, Ottawa, Ontario K1P 1C3 (or alternative nearby site in the event of capacity restrictions).

5. Depositions in other cities will take place either at a location chosen by the producing Discovery Participant, if applicable, or by designation or agreement by the Deposition Group(s) with whom the witness was primarily associated, which may take into account the convenience of the witness.

6. The host of each deposition shall provide one large room for the deposition as well as one breakout room for each of the three Deposition Groups, and one additional breakout room for the witness (and his or her counsel, if the witness is separately represented). In the event that more than one deposition occurs at a host firm on a given day, only one breakout room needs to be provided per Deposition Group.

7. All witnesses who a Discovery Participant has the ability to compel attendance in Toronto or New York [or London] shall be produced for deposition in either Toronto, New York [or London] at the option of the producing Discovery Participant. Discovery Participants shall use reasonable efforts to produce all cooperating witnesses in either Toronto. New York [or London], and each Discovery Participant producing a cooperating witness shall offer to pay that witnesses' reasonable travel expenses to do so.[4]

---

[4]    The Parties have not yet reached agreement on whether witnesses currently employed by or under the control of the EMEA Debtors or the U.K. Pension Claimants must be produced in Toronto or New York, or may be produced in London, and have reserved this issue for further discussion among themselves and, failing agreement, resolution by the Court(s). The Parties do agree that the EMEA Debtors and the U.K. Pension Claimants may produce cooperating witnesses not employed by them or under their control in London.

116

## C.    LENGTH OF DEPOSITIONS

1. For witnesses designated by one or two Deposition Groups,[5] the presumption shall be that depositions shall last no longer than one seven-hour day (measured by the "on-the-record" time).

   a. For witnesses designated by one Deposition Group, five hours shall be allocated for the designating Deposition Group, and one hour each shall be allocated for the remaining two Deposition Groups.

   b. For witnesses designated by two Deposition Groups, three hours shall be allocated for each designating Deposition Group, and one hour shall be allocated for the remaining Deposition Group.

2. For witnesses designated by three Deposition Groups, the presumption shall be that depositions shall last no longer than one ten-hour day (measured by the "on-the-record" time), or one and one half days, at the option of the witness. Each Deposition Group shall be allocated equal time.

3. On August 9, 2013, each Deposition Group served all Core Parties with a list of designated witnesses that Deposition Group wishes to cross-designate. On August 13, 2013, each Deposition Group served all Core Parties with a list of witnesses that such Deposition Group anticipates requiring more time to examine than the presumed time allotment herein, including the amount of time that the Deposition Group requests for each such witness. In the event the total amount of time requested exceeds the presumptive maximum for a particular deposition and the witness is unwilling to agree to such additional time, the parties shall confer in good faith in an effort to reduce the total requested time and, failing agreement, shall have the right to seek judicial relief in

---

[5]       If, pursuant to Section 6 of the Discovery Plan, any Claim or Allocation Group within a Deposition Group designated or cross-designated the witness, the witness will be deemed "designated by" such Deposition Group, including for purposes of time allocations.

advance of such deposition. If the witness is willing to agree to additional time (including time over and above the total amount requested by the Deposition Groups), the Deposition Groups shall confer in good faith on a fair allocation of the additional time to depose the witness. Absent extraordinary circumstances, and to avoid the burden on a witness to appear twice, any disagreements with the allocated time for a deposition must be raised, and if unresolved, judicial relief seeking modification sought. prior to a deposition.

4. For purposes of time allocation, Core Parties that are not in one of the Deposition Groups shall be grouped by agreement with a Deposition Group with similarly aligned interests for that deposition and, if an agreement cannot be reached, may seek leave of the Court(s) or consent of the Deposition Groups for a separate time allocation.

5. The court reporter shall maintain a total running time for actual deposition testimony and record how much time is taken in each deposition by each Deposition Group.

6. Where necessary to complete the deposition and avoid unnecessary motion practice, the deponent may agree. at the request of any Discovery Participant, to extend the length of any deposition for additional time on the same day. The travel plans of other Core Parties shall not be an excuse to object to the extension of a deposition in the event of such agreement. In the event more than a de minimis amount of additional time is granted, the Core Parties shall work collaboratively to fairly allocate such additional time.

7. Time spent participating in teleconferences with the Court(s) or their agents during a deposition shall not be counted as "on the record" time for purposes of calculating the time remaining for the deposition.

118

**D.    SCHEDULING OF DEPOSITIONS**

1.  For witnesses designated for deposition by July 30, 2013, Discovery Participants
    advised the other Discovery Participants on August 13, 2013 of those witnesses they
    have been informed will appear voluntarily.  After a seven-day grace period expiring
    on August 20, 2013, for witnesses that have not indicated a willingness to appear
    voluntarily, any Discovery Participant may subpoena, issue any other applicable
    process, and/or contact that witness directly (subject to paragraph 2(c), below).

2.  For witnesses not voluntarily appearing:

    a.  The Discovery Participant with whom the witness was associated must provide last
        known contact information (including phone number) for the witness if not
        previously disclosed in interrogatory responses;

    b.  The Discovery Participant with whom that witness was associated must provide the
        name and contact information (including phone number) of the witness's attorney,
        if known;

    c.  Any Discovery Participant contacting such witness must first ask the witness if he
        or she has an attorney for purposes of this litigation, and if the answer is
        affirmative, further contact should occur through that counsel.  Discovery
        Participants must otherwise comply with all applicable ethical rules for speaking
        with unrepresented persons; and

    d.  Any contacting Discovery Participant shall notify the other Discovery Participants
        if he or she learns of contact or counsel information not previously disclosed to the
        other Discovery Participants.

3.  No depositions shall be conducted on weekends absent consent of each of the relevant
    Deposition Groups, on Labor Day (September 2, 2013), Rosh Hashanah (September 4,
    5, and 6, 2013), Yom Kippur (September 13 and 14, 2013), Canadian Thanksgiving

6

(October 14, 2013) and U.S. Thanksgiving (November 28 and 29, 2013). In the event a weekend deposition is requested and the requisite consent cannot be obtained, the Deposition Group proposing such deposition may proceed only with leave upon demonstration of good cause to the U.S. Court for depositions taking place in the U.S., the Canadian Court for depositions taking place in Canada, and either Court for depositions taking place outside of North America.

4. Except upon order of the Court for good cause shown, or consent of each of the Deposition Groups, fact depositions shall be taken only once.

5. A master deposition calendar shall be maintained either online in realtime or by a member of the Scheduling Committee to be designated that shall update and circulate the calendar on a daily basis.

6. Depositions of witnesses under the control of a Discovery Participant or otherwise voluntarily appearing ("Voluntary Witnesses") shall be scheduled as follows:

   a. A scheduling committee (the "Scheduling Committee") shall be comprised of one person for each Deposition Group (who may be represented by an alternate if unavailable). By August 26, 2013, all Discovery Participants shall provide the dates that they have received from each Voluntary Witness on which they are (or are not) available to be deposed from September 23, 2013 through November 27, 2013. Discovery Participants shall seek to obtain multiple potential dates from witnesses. All Discovery Participants shall make every reasonable effort to be in a position to offer a sufficiently broad range of dates for their witnesses collectively so as to enable depositions of witnesses of each Discovery Participant to be scheduled relatively evenly throughout the period for fact depositions.

   b. The Scheduling Committee shall meet and confer by August 30 and as necessary thereafter to schedule the depositions of Voluntary Witnesses whose availability is

7

known as of the date of the creation of that schedule and shall distribute a calendar as soon as possible after conferring, but no later than September 4. Objections to this initial proposed schedule shall be made on or prior to September 9, 2013. Recognizing the importance of accommodating witnesses, objections to a date preferred by or required by the witness should be made sparingly and only in extreme circumstances.

c. Subsequent to August 30, 2013, Discovery Participants shall provide notice of potential deposition dates to the Scheduling Committee promptly after obtaining them from Voluntary Witnesses from whom they were unable to provide availability prior to the creation of the initial schedule, whereupon the Scheduling Committee shall meet and confer (which may be telephonic or by email) within three business days of being advised of available dates for a witness to select a proposed date for the deposition of that witness (provided however that the Scheduling Committee shall endeavor to meet and confer sooner if necessary to comply with the notice requirements in paragraph D(7) below). Any proposed deposition date and location for each witness determined by the Scheduling Committee shall be placed on the master calendar, following which all other Discovery Participants shall have two business days to object.

d. If the Scheduling Committee is unable to agree upon a proposed date for a witness within five business days of being provided with available dates, the party with whom the Voluntary Witness is cooperating shall select the date and inform the Scheduling Committee, following which all other Discovery Participants (including members of the Scheduling Committee) shall have two business days to object.

c. All objections shall be resolved through a meet and confer among the Scheduling Committee (or designated members) and the objector(s) within one business day;

8

121

failing resolution, the objector must seek relief from the Court(s) within two business days thereafter (by letter) by demonstrating good cause or the objection is waived.

7. Discovery Participants shall endeavor to provide the Scheduling Committee with sufficient advance notice of the first date a Voluntary Witness is available so as to provide the Scheduling Committee with sufficient time to notify all Discovery Participants of any deposition not less than five business days before examinations in North America and not less than seven business days before examinations outside of North America if more notice is not possible. Absent consent of each of the Discovery Groups, or authorization by one of the Courts, no deposition may be scheduled upon notice to all Discovery Participants of less than three business days if taking place in North America and five business days if taking place outside of North America.

8. Non-party depositions scheduled by compulsory process for witnesses who will not appear voluntarily ("Compulsory Witnesses") shall be immediately reflected on the calendar upon notice to the Scheduling Committee. Where more than one Deposition Group has designated a witness who will not agree to attend voluntarily, those Groups shall endeavor to coordinate the selection of a deposition date prior to one Deposition Group moving forward unilaterally. Except for such depositions noticed prior to the date hereof, where practicable, Discovery Participants shall adapt and utilize the Scheduling Committee procedure described in the preceding paragraphs to schedule the depositions of Compulsory Witnesses, including the deadlines set forth therein for objections, meet and confers and requests for judicial relief.

9. Once a Voluntary Witness has been placed on the master calendar and confirms the firm scheduling of his or her deposition, including its proposed length and location, and provided there are no timely objections to such scheduling, such Voluntary Witness

9

shall no longer be expected to remain available on any of the other dates that he or she may have previously indicated availability.

10. Once scheduled, depositions may not be postponed except on the unanimous consent (given or withheld in good faith) of the Scheduling Committee or for good cause authorized by the Court, except in the event of an emergency necessitated by the witness with insufficient time to obtain consent or leave. Immediate notice of any postponement shall be provided to the other Discovery Participants. So long as reasonable notice was provided consistent with paragraph D(7), the filing of an objection shall not result in the adjournment of a deposition unless a court order for such adjournment is obtained.

E.    **QUESTIONING AT DEPOSITIONS**

1. Deposition Groups shall allocate their time for each deposition among their members and shall each designate a lead examiner. Non-repetitive examination may be conducted by other Discovery Participants in the same Deposition Group (within the time allotted for that Group). The parties shall agree ahead of time on the order of questioning at each deposition and the lead examiners in each Deposition Group shall work in good faith as provided for in the Discovery Plan to coordinate the questioning in an effort to avoid duplication.

2. No more than two examiners per Discovery Participant may ask questions at a deposition. A second examiner may question the witness only on the following conditions: (i) the first examiner may not question the witness again after the second examiner has begun; (ii) the second examiner must have been present for the entirety of the first examiner's questioning; and (iii) the second examiner must question the witness only on a separate topic or separate topics than were covered by the first examiner.

123

3. Depositions shall begin promptly at 9:00 a.m. without exception unless absolutely necessary to accommodate the witness. As long as proper notice was provided, depositions shall commence at that time even if some Discovery Participants are not present.

4. An objection by one Discovery Participant preserves that objection for all Discovery Participants. Discovery Participants shall not make redundant objections.

   a. Objections to form shall be deemed to be on all grounds appropriate for a form objection.

   b. No objection other than to the form of the question is waived by failure to assert it during the deposition.

5. Nothing shall preclude counsel from seeking an order from the Court(s) to protect the witness where counsel has a reasonable, good faith belief that the witness is being questioned on wholly irrelevant matters or in an otherwise abusive manner, or that there are other grounds under Federal Rule of Bankruptcy Procedure 7026(c) or the Ontario Rule of Civil Procedure 34.14 for a protective order with respect to the questioning being conducted of the witness. In that event, counsel shall cooperate in deferring answers to those questions until later in the deposition to permit counsel to contact the Court. If the Court is unavailable throughout the deposition and the parties are unable to reach an agreement on the objected-to questions, the deposition may be adjourned until a court ruling can be obtained.

6. Discovery Participants are encouraged to limit attendance at depositions. There shall be no limitation on the number of attorneys viewing or listening remotely to a deposition, provided those attorneys following remotely remain silent.

7. For planning purposes, attendees shall endeavor to advise a designated person at the host location of their identities at least two business days prior to each deposition.



8. The Discovery Participants shall endeavor to have the court reporting service stream the deposition (audio, video, and/or transcription) over the internet so as to enable parties to follow the deposition remotely. Aside from limited questions (no more than ten) submitted in writing at least one business day prior to the commencement of the deposition where the number and scope of those questions do not warrant the attendance of counsel for a particular Discovery Participant at the examination, no examination may be conducted or objections asserted by any attorney not present at the deposition. No deposition shall be adjourned or delayed due to a problem with remote access technology. In the event of the advance submission of written questions, lead counsel at the deposition for the Discovery Group encompassing that Discovery Participant shall ask the questions but shall have the discretion and the duty not to ask any written questions he or she believes would be repetitive.

9. At the outset of the deposition, on the record, all counsel shall identify themselves and the Discovery Participant they represent. The Discovery Participants shall explore with the court reporting service how to record the identities of counsel following the deposition remotely.

## F.    USE OF DOCUMENTS

1. No later than four business days before a deposition, all Discovery Participants intending to examine a deponent may, but shall not be obligated to, serve via email a non-binding list of the specific documents (by Bates number or, if previously marked, by exhibit number) that counsel anticipates using or referring to during the deposition. Discovery Participants shall endeavor to transmit pdfs of the actual documents with such email. In that circumstance, counsel need not bring extra copies of such documents except as necessary for the witness and his or her counsel.

125

2. Any counsel who does not pre-designate documents shall not forfeit the right to use those documents, but in that case, shall bring at least fifteen copies of such documents to the deposition for counsel and the witness, at least six of which must be hard copies and the balance of which can be pdfs in electronic form on individual USB drives/memory sticks. Any Discovery Participant that requests a copy of a document used during a deposition shall be provided one by the examining Discovery Participant following the deposition.

3. Each document marked for identification at a deposition shall be numbered with a new exhibit number. Counsel will make their best efforts to use the previously-marked exhibits by number in subsequent depositions.

4. To avoid the possibility of the same numbers being used for different exhibits during concurrently-conducted depositions, exhibits first marked during the deposition of a witness primarily associated with the Canadian Debtors shall begin with 1,000, the U.S. Debtors shall begin with 2,000, the EMEA Debtors shall begin with 3,000, the UK Pension Claimants shall begin with 4,000, and other parties shall begin with 5,000. (To the extent that a witness is primarily associated with more than one Discovery Participant, the lower sequence shall be used). When more than one deposition is occurring on the same day which poses risk of overlap, the examining parties shall confer in advance about starting numbers to use at those depositions to avoid overlap.[6]

5. Immediately following each deposition, the initial examiner shall be responsible for circulating a list of new exhibit numbers marked at such deposition, with reference to Bates numbers.

---

[6] The Parties intend to confer further and, with the approval of each of the Discovery Groups prior to the commencement of depositions, may refer to exhibits by Bates numbers rather than exhibit numbers.



6. The court reporter shall be responsible for ensuring that the original of all deposition transcripts, including exhibits, are retained at the court reporter's offices.

**G.    RULE 30(B)(6) AND REPRESENTATIVE PARTY DEPOSITIONS/ EXAMINATIONS**

1. Notwithstanding anything in the Discovery Protocol and Litigation Timetable to the contrary, representative party depositions/examinations for discovery under Rule 31 of the *Rules of Civil Procedure for Ontario* (hereinafter "Representative Depositions" of "Representative Witnesses") shall be conducted as follows:

   a. All previously served Rule 30(b)(6) notices are deemed superseded by this paragraph. At least ten business days before the commencement of Representative Depositions, a Deposition Group may serve a very limited number of subjects on which it believes no fact witness currently or formerly associated with the party producing the Representative Witness has provided adequate first-hand testimony. Provided such subjects are small in number and reasonable in scope, the Representative Witness has a duty to prepare to testify on the designated subjects. In the event a party designates an unreasonable number of subjects relative to the time limitations for the examination, subjects of an impermissibly broad scope or subjects inappropriate for a Representative Deposition, objections shall be served within three business days. The applicable parties shall meet and confer in good faith within two business days thereafter and, failing agreement, the burden shall be on the noticing party to obtain judicial relief at least two business days (in order to enable preparation) prior to the Representative Deposition. The failure to obtain judicial relief on a timely basis shall not be a basis to adjourn a Representative Deposition.

127

b. Representative Depositions shall be scheduled through the Scheduling Committee process and with similar procedures. The identity of Representative Witnesses shall be disclosed at least five business days prior to their scheduled deposition dates.

c. Discovery Participants shall not be limited in their examination of the Representative Witness to the noticed subjects; however, the Representative Witness shall have no duty to prepare for such examination on any specific subjects other than those noticed to which no objection was raised or court order obtained.

d. Any undertakings required in accordance with Rule 31 of the *Rules of Civil Procedure for Ontario* shall be limited to specific matters of fact outside the Representative Witness's knowledge, information and belief that are not already the subject of first-hand deposition testimony obtained from a knowledgeable fact witness. In the event of disagreement, the applicable parties shall meet and confer promptly and promptly thereafter bring any dispute to the attention of the appropriate Court.

2. Each Discovery Participant who filed an independent pleading (other than a non-argumentative joinder) shall designate one Representative Witness to be deposed in Toronto or New York, unless otherwise agreed by each of the Deposition Groups. Additionally, any Discovery Participant (other than the estates or UKP) who filed an independent pleading may withdraw such pleading by November 15, 2013 (and may file a non-argumentative joinder in its place) and thereby not be subject to the requirement to designate a Representative Witness. Notwithstanding the foregoing, the Directors and Officers shall not be required to designate a Representative Witness.

3. Time allocation for Representative Depositions:

15

    a.  The Representative Witness for each of the U.S. Debtors, the Canadian Debtors, the U.K. Pension Claimants and NNUK shall be deposed for two seven-hour days, with one day being allocated to each of the two other Deposition Groups.

    b.  The Discovery Participants disagree on the amount of time for Representative Witnesses for the EMEA Debtors other than NNUK, including whether the EMEA Debtors can designate one Representative Witness for all of the EMEA Debtors collectively. To the extent they are unable to reach consensual resolution, the parties reserve all rights and will seek judicial guidance.

    c.  Each Representative Witness for each of the other Discovery Participants who filed an independent pleading (other than a non-argumentative joinder) shall be deposed for no longer than one seven-hour day (measured by the "on-the-record" time), with half being allocated to each of the two opposing Deposition Groups.

4.  If a party designates a Representative Witness who has already been deposed as a fact witness, that party waives any objection to a second deposition. Unless agreed to by the Deposition Participants who noticed the fact deposition, Representative Depositions shall occur separate from fact depositions.

5.  Representative Depositions shall occur during the last two weeks before fact depositions end.

## H.   COURT REPORTING SERVICES

1.  For reasons of cost and efficiency, Ellen Grauer Court Reporting Co. has offered discounted rates and shall be used for all depositions.

2.  The court reporting service will provide remote access as described herein and secure real-time video streaming (if videotaped) and LiveNote, and the host party shall provide speaker-phone and internet capability for all depositions. The court reporting service will transcribe all conference calls with the Court from the deposition site as

129

part of the deposition transcript for that day. At the end of each day, the court reporter will provide a cleaned-up transcript of the LiveNote session (via web or email) to all Discovery Participants ordering a transcript.

3. Depositions may be videotaped or digitally recorded at the request and at the cost of any requesting Discovery Participant upon at least five business days' notice (where sufficient notice of the deposition is provided) to the court reporting service and all Discovery Participants and counsel for the witness. In the event multiple Discovery Participants request that a deposition be videotaped or digitally recorded, the cost of such taping shall be split equally among all Discovery Participants that request videotaping or digital recording. Counsel for the witness shall be entitled to a copy of such videotape without cost.

## I.  STANDARD STIPULATION

The following stipulation will apply to all depositions taken in these actions and shall be included in each transcript by the court reporter:

1. Upon completion of the transcription of today's session, the original transcript shall be sent to counsel for the witness by the court reporter. Counsel shall promptly forward it to the witness for review, correction and signature under penalty of perjury. The witness shall have 30 days from the day of receipt within which to review, make any corrections, sign the deposition transcript under penalty of perjury, and return it to counsel. The witness's counsel shall then forward the original transcript plus corrections to the court reporter, who will promptly notify all counsel of its receipt and any changes to testimony made by the witness.

2. If the witness is not represented by counsel, the original transcript will be sent to the witness by the court reporter. After review, correction and signature within 30 days from the date of receipt, the witness shall return the original transcript to the court

reporter, who will notify all counsel of its receipt and any changes to testimony by the witness.

3. The court reporter will retain the original transcript, including exhibits. If, for any reason, the original is lost, misplaced, not returned, not signed, or unavailable, a certified copy may be used in its place for all purposes. The court reporter is otherwise relieved of any statutory duties.

## J.    CONFIDENTIALITY

The Order Entering a Protective Order [D.I. 10805] / [Order (Protective Order), Ontario Superior Court of Justice, 09-CL-7950, June 11, 2013] shall govern the treatment of Confidential Discovery Material presented at each deposition.

## K.    USE OF DEPOSITIONS AT TRIAL

The Discovery Participants agree that Section 6(c) of the Discovery Plan should be clarified and amended, as necessary, to allow any Discovery Participant to use, in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Courts), deposition testimony of witnesses (other than deposition testimony of Representative Witnesses, the use of which is provided for under the Discovery Plan and the applicable Rules) as part of its direct or rebuttal case at trial, in a consistent manner for the purposes of Allocation, U.S. Claims and/or Canadian Claims. To the extent that the content of such deposition testimony would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Ontario rules of evidence or the Federal Rules of Evidence if the witness were present at trial in the relevant jurisdiction, any Discovery Participant may raise an objection to the admission of the testimony and either or both of the Court(s) may make a ruling about its admissibility at trial, based on the rules of evidence in each jurisdiction.

The Discovery Participants agree to meet and confer in good faith by no later than September 4, 2013 to endeavor to agree upon the parameters for the use and admissibility of

deposition testimony at trial, and any related considerations such as, without limitation, the extent to which Discovery Participants will retain the right to compel witnesses to appear at trial. If the Discovery Participants are unable to reach agreement by September 10, 2013, they will seek the guidance of the Court(s) on the issue by no later than the week of September 16, 2013.

Dated: August 25, 2013

*Counsel for the Official Committee of Unsecured Creditors*

/s/ Robert A. Johnson
AKIN GUMP STRAUSS HAUER & FELD LLP

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

DENTONS CANADA LLP
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone: (416) 863-4511
Facsimile: (416) 863-4592

*Counsel for the Debtors and Debtors in Possession*

/s/ Jeffrey A. Rosenthal
CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

TORYS LLP

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone: (416) 865-0040
Facsimile: (416) 865-7380

19

132

*Counsel for the Bondholders*

*Counsel for Ernst & Young Inc. as Monitor*

*/s/ Atara Miller*

*/s/ Paul Keller*

PACHULSKI STANG ZIEHL & JONES
LLP

Laura Davis Jones
Kathleen P. Makowski
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

MILBANK, TWEED, HADLEY &
McCLOY LLP

Dennis F. Dunne
Thomas R. Kreller
Albert A. Pisa
Andrew M. Leblanc
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

BENNETT JONES

Gavin Finlayson
Richard B. Swan
Kevin Zych
S. Richard Orzy
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario M5X 1A4
Canada

GOODMANS LLP

Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Bay Adelaide Centre
333 Bay Street
Suite 3400
Toronto, ON M5H 2S7
Canada
Telephone: (416) 979 2211
Facsimile: (416) 979 1234

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

20

*Counsel for the Canadian Debtors*

/s/ Paul Keller

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY
PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Joint Administrators*

/s/ Neil Oxford

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

134

*Counsel for the Canadian Creditors Committee*

/s/ Selinda A. Melnik
Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

DLA PIPER LLP (US)
*U.S. Counsel for the Canadian Creditors Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile: (302) 778-7914
- *and* -
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

CAW-CANADA LEGAL DEPARTMENT
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON  M2H 3H9
Telephone: (416) 495-3776
Facsimile: (416) 495-3786

KOSKIE MINSKY LLP
*Lawyers for the Former and Disabled Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON  M5H 3R3
Telephone: (416) 595-2090
Facsimile: (416) 204-2877

Robin Schwill
Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

/s/ Michael Riela

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048



McCARTHY TÉTRAULT LLP
*Lawyers for Morneau Shepell Ltd.,*
*as administrator of the Nortel Canada*
*registered pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone: (416) 601-7998
Facsimile: (416) 868-0673

PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON  M5V 3H1
Telephone: (416) 646-4300
Facsimile: (416) 646-4301

SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP
Barristers and Solicitors
*Lawyers for the Active and Transferred*
*Canadian Employees*

Arthur O. Jacques/ Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON   M5H 3E5
Telephone:   (416) 214-5213/5206
Facsimile:    (416) 214-5413/5400

*Counsel for the Trustee of Nortel Networks UK*
*Pension Plan and the Board of the Pension*
*Protection Fund*

/s/ *Sameer Advani*
BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller



*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

*/s/ David A. Crichlow*

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

Rebecca Lewis
Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

*Counsel for the Law Debenture Trust Company of New York*

*/s/ Daniel A. Lowenthal*

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

137

*Counsel for the Former Directors and*
*Officers of Nortel Networks Corporation and*
*Nortel Networks Limited*

*/s/ Betsy Putnam*

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

25

138

## SCHEDULE B

## AMENDED LITIGATION TIMETABLE

| Deadline | Current Date | Proposed Revised Date |
|---|---|---|
| Date for completion of outstanding non-privileged document production | No date | September 3, 2013 |
| Date for completion of joint privileged documentation production and service of privilege logs | No date | September 7, 2013 |
| Date for depositions to begin | No date | September 23, 2013 |
| Deadline to identify experts and the subject matter of their reports | September 13, 2013 | November 27, 2013 |
| Deadline to complete witness depositions, including representative witness depositions | September 27, 2013 | December 13, 2013 |
| Deadline for service of expert reports | October 4, 2013 | December 20, 2013 |
| Deadline for service of rebuttal expert reports | November 1, 2013 | January 24, 2014 |
| Preliminary pre-trial conference | Week of November 11, 2013 | Week of February 17, 2014 |
| Deadline to complete expert depositions | December 6, 2013 | February 28, 2014 |
| Deadline to file a list of all witnesses and exhibits that each Core Party intends to rely upon as part of its direct case | December 9, 2013 | March 6, 2014 |
| Deadline to file:<br><br>• Pre-trial motions<br>• Pre-trial briefs<br>• All fact affidavits to be used in direct case<br>• All exhibits to be used in direct case<br>• All deposition testimony to be used in direct case | December 13, 2013 | March 14, 2014 |
| Pre-trial conference | Week of December 16, 2013 (if the Courts desire) | Week of March 17, 2014 (if the Courts desire) |
| Beginning of trial | January 6, 2014 | March 31, 2014 (or such later date as is convenient for the Courts) |

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, et al.
Applicants

Court File No. 09-CL-7950

| | |
|---|---|
| | **ONTARIO**<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>PROCEEDING COMMENCED AT TORONTO |
| | **ORDER APPROVING**<br>**AMENDED LITIGATION TIMETABLE** |
| | **LAX O'SULLIVAN SCOTT LISUS LLP**<br>Counsel<br>Suite 2750, 145 King Street West<br>Toronto, ON  M5H 1J8<br><br>**Matthew P. Gottlieb** (LSUC #32268B)<br>**Tracy L. Wynne** (LSUC #37395R)<br>Tel: (416) 598-1744<br>Fax: (416) 598-3730<br><br>**DAVIES WARD PHILLIPS & VINEBERG LLP**<br>155 Wellington Street West<br>Toronto, ON  M5V 3J7<br><br>**Robin B. Schwill** (LSUC #38452I)<br>Tel: (416) 863-0900<br>Fax: (416) 863-0871<br><br>Lawyers for the Joint Administrators of Nortel Networks UK Limited (In Administration) |