**<u>EXHIBIT A-2</u>**

# APPENDIX D

## AMENDED DEPOSITION PROTOCOL ODER

140

File No. 09-CL-7950

### ONTARIO
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

| | | |
|---|---|---|
| THE  HONOURABLE  MR.  JUSTICE | ) | FRIDAY, THE 20TH DAY OF |
| | ) | |
| MORAWETZ | ) | SEPTEMBER, 2013 |
| | ) | |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

### ORDER
### (Amended Deposition Protocol)

**THIS MOTION** made by Nortel Networks Corporation, Nortel Networks Limited, Nortel

Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks

International Corporation (collectively, the "**Canadian Debtors**") jointly with Ernst & Young Inc. in its

capacity as monitor (the "**Monitor**") of the Canadian Debtors for the relief set out in the Notice of

Motion dated September 17, 2013, was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the Notice of Motion dated September 17, 2013, and on hearing submissions of

counsel for the Canadian Debtors and the Monitor, and on being advised of the consent or non-

opposition of the other Core Parties, no one appearing for any other person on the service list or the core

141

- 2 -

party service list although duly served as appears from the affidavit of Christopher G. Armstrong sworn September 18, 2013, filed.

1.      **THIS COURT ORDERS** that the time for the service of the Notice of Motion and other motion materials is hereby abridged and validated so that this Motion is property returnable today and hereby dispenses with further service thereof.

2.      **THIS COURT ORDERS** that the Amendment to Deposition Protocol Stipulation appended as Exhibit "A" hereto be and is hereby approved.

3.      **THIS COURT ORDERS** that, without derogating from the Order (Protective Order) of this Court dated June 11, 2013, in connection with evidence obtained on any examination/deposition of a witness or party that is conducted in these proceedings, the laws of the jurisdiction where the examination/deposition is conducted shall apply, for all purposes, as relate to protections against self-incrimination and the use or derivative use of evidence for collateral purposes or in other proceedings, as applicable.

**MISCELLANEOUS**

4.      **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors, the Monitor and their respective agents in carrying out the terms of this Order.   All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign

142

- 3 -

proceeding, or to assist the Canadian Debtors and the Monitor and their respective agents in carrying out the terms of this Order.

5.      **THIS COURT ORDERS** that each of the Canadian Debtors and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

SEP 2 0 2013

143

- 4 -

## EXHIBIT "A"
## AMENDMENT TO DEPOSITION PROTOCOL STIPULATION

### [ATTACHED]

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| | (Jointly Administered) |
| Debtors. | |

## AMENDMENT TO DEPOSITION PROTOCOL STIPULATION

Having conferred and agreed on certain matters related to the use of depositions in the litigations concerning the Allocation dispute, the US Claims and the Canadian Claims, as required by the Deposition Protocol, which protocol was approved by orders of the U.S. and Canadian Courts dated August 26, 2013 and August 27, 2013, respectively, the parties hereto stipulate and agree that, subject to orders of the U.S. and Canadian Courts approving this Amendment to Deposition Protocol Stipulation, Section K of the Deposition Protocol shall be amended so that the last paragraph thereof is deleted in its entirety and replaced with the following two paragraphs:[2]

### K.    USE OF DEPOSITIONS AT TRIAL

[. . .]

Except as ordered by the Courts for good cause, for any fact witness who is not appearing to testify at trial, each Discovery Participant may submit into evidence the transcript of

---

[1]    The debtors in the chapter 11 cases, along with the last four digits of each such debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Litigation Timetable, approved by this Court's order dated May 17, 2013 [Dkt. No. 10566], and/or the Allocation Protocol, approved by this Court's order dated May 17, 2013 [Dkt. No. 10565].

such fact witness' deposition testimony or compelled testimony taken on any examination conducted pursuant to letters rogatory or letters of request, regardless of where the deponent resides, as part of a Discovery Participant's direct or rebuttal case, or as part of a cross-examination, at trial to determine Allocation, U.S. Claims and/or Canadian Claims. This submission will continue to be subject to the local rules of evidence and procedure that would apply if the witness were present and testifying in the U.S. or Canada, respectively. If a party offers only part of a deposition/examination, a party adverse in interest with respect to the topics covered in the part of the deposition so designated may designate other parts of the deposition/examination for context and any party may itself introduce other parts. Deposition/examination evidence must be provided to the courts in transcript form but may also be provided by video recording if available.

The dispute about the compellability of witnesses at trial will be deferred, on the basis of a complete reservation of the Discovery Participants' rights and positions as to the entitlement to compel witnesses and, if permitted, any limitations on the number that may be compelled or time limits that should be imposed on their testimony and any provision for the manner in which their deposition transcripts may be used. The parties have also agreed to defer the issue as to how deposition transcripts may be used at trial, if at all, with respect to fact witnesses who have provided an affidavit and are appearing to provide brief introductory direct testimony and to be cross-examined. All of this is to be decided by the Courts at the first pre-trial conference, which under the current schedule is to be held the week of February 17 (or such earlier pre-trial conference as the Courts may be willing to convene following the completion of fact depositions in order to resolve this

146

issue), if the Discovery Participants are not able to reach agreement on some or all of these matters before then.

The parties further stipulate and agree that all of the other terms and conditions of the Deposition Protocol remain in effect except as expressly amended herein.

[*Intentionally left blank*]

Dated:   September 20, 2013

*Counsel for the Official Committee of Unsecured Creditors*

/s/ Robert A. Johnson
AKIN GUMP STRAUSS HAUER & FELD LLP

David H. Botter
Fred Hodara
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002


RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins
Christopher M. Samis
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701


DENTONS CANADA LLP
(formerly Fraser Milner Casgrain LLP)

Ryan Jacobs
R. Shayne Kukulowicz
Michael J. Wunder
77 King Street West
4th Floor
Toronto, ON M5K 0A1
Canada
Telephone:  (416) 863-4511
Facsimile:  (416) 863-4592

*Counsel for the Debtors and Debtors in Possession*

/s/ Jeffrey A. Rosenthal
CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard S. Zelbo
James L. Bromley
Jeffrey A. Rosenthal
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989


TORYS LLP

Scott Bomhof
Tony DeMarinis
Andrew Gray
Adam Slavens
79 Wellington Street West
Suite 3000, Box 270, TD Centre
Toronto ON M5K 1N2, Canada
Telephone:  (416) 865-0040
Facsimile:  (416) 865-7380

*Counsel for the Bondholders*

*/s/ Atara Miller*

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones
Kathleen P. Makowski
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*Counsel for Ernst & Young Inc. as Monitor*

*/s/ Paul Keller*

GOODMANS LLP
Jay Carfagnini
Fred Myers
Joseph Pasquariello
Benjamin Zarnett
Bay Adelaide Centre
333 Bay Street Suite 3400
Toronto, ON M5H 2S7
Canada
Telephone: (416) 979 2211
Facsimile: (416) 979 1234

MILBANK, TWEED, HADLEY & McCLOY LLP

Dennis F. Dunne
Thomas R. Kreller
Albert A. Pisa
Andrew M. Leblanc
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BENNETT JONES

Gavin Finlayson
Richard B. Swan
Kevin Zych
S. Richard Orzy
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario M5X 1A4
Canada

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Canadian Debtors*

*/s/ Paul Keller*

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam
Derrick Tay
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON M5J 2Z4
Canada
Tel: +1 416 216 4000
Fax: +1 416 216 3930


ALLEN & OVERY LLP

Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

BUCHANAN INGERSOLL & ROONEY PC

Mary F. Caloway
Kathleen A. Murphy
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295

*Counsel for the Joint Administrators*

*/s/ Neil Oxford*

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

James L. Patton
Edwin J. Harron
John T. Dorsey
Jaime Luton Chapman
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

HUGHES HUBBARD & REED LLP

Derek J.T. Adler
Gabrielle Glemann
Charles H. Huberty
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

DAVIES WARD PHILLIPS & VINEBERG LLP

Robin Schwill
Sean Campbell
155 Wellington Street West
Toronto, ON M5V 3J7
Telephone: (416) 863-0900
Facsimile: (416) 863-0871

LAX O'SULLIVAN SCOTT LISUS LLP

Matthew P. Gottlieb
145 King Street West
Suite 2750
Toronto, ON M5H 1J8
Canada
Telephone: (416) 598-1744
Facsimile: (416) 598-3730

*Counsel for the Canadian Creditors Committee*

*/s/ Selinda A. Melnik*
Selinda A. Melnik (DE Bar No. 4032)

*on behalf of*

DLA PIPER LLP (US)
*U.S. Counsel for the Canadian Creditors Committee*

Selinda A. Melnik
919 North Market Street
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5650
Facsimile: (302) 778-7914
- *and* -
Richard Hans
Timothy Hoeffner
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4530

CAW-CANADA LEGAL DEPARTMENT
*Lawyers for the Canadian Autoworkers Union*

Barry Wadsworth
205 Placer Court
Toronto, ON M2H 3H9
Telephone: (416) 495-3776
Facsimile: (416) 495-3786

KOSKIE MINSKY LLP
*Lawyers for the Former and Disabled Canadian Employees*

Mark Zigler
Susan Philpott
Ari Kaplan
20 Queen Street West, Suite 900
Toronto, ON M5H 3R3
Telephone: (416) 595-2090\
Facsimile: (416) 204-2877

*Counsel for The Bank of New York Mellon, as Indenture Trustee*

*/s/ Michael Riela*

LATHAM & WATKINS LLP

Michael J. Riela
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

MCMILLAN LLP

Sheryl E. Seigel
Brookfield Place, Suite 4400
181 Bay Street
Toronto, ON M5J 2T3
Canada
Telephone: (416) 865-7000
Facsimile: (416) 865-7048

McCARTHY TÉTRAULT LLP
*Lawyers for Morneau Shepell Ltd.,*
*as administrator of the Nortel Canada registered*
*pension plans*

R. Paul Steep
Byron D. Shaw
Elder Marques
James D. Gage
Barbara J. Boake
TD Bank Tower, Suite 5300
Toronto Dominion Centre
66 Wellington Street West
Toronto ON M5K 1E6
Telephone: (416) 601-7998
Facsimile: (416) 868-0673

PALIARE ROLAND ROSENBERG ROTHSTEIN
LLP

Ken Rosenberg
Lily Harmer
Karen Jones
Massimo Starnino
155 Wellington Street West, 35th Floor
Toronto, ON M5V 3H1
Telephone: (416) 646-4300
Facsimile: (416) 646-4301

SHIBLEY RIGHTON LLP
w/ NELLIGAN O'BRIEN PAYNE LLP
Barristers and Solicitors
*Lawyers for the Active and Transferred Canadian*
*Employees*

Arthur O. Jacques / Thomas McRae
Co-Counsel: Janice Payne / Steve Levitt
250 University Avenue, Suite 700
Toronto, ON M5H 3E5
Telephone: (416) 214-5213/5206
Facsimile: (416) 214-5413/5400

*Counsel for the Trustee of Nortel Networks UK*
*Pension Plan and the Board of the Pension*
*Protection Fund*

*/s/ Sameer Advani*
BAYARD, P.A.

Charlene D. Davis
Justin R. Alberto
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

WILLKIE FARR & GALLAGHER LLP

Brian E. O'Connor
787 7th Ave.
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9251

CASSELS BROCK & BLACKWELL LLP

David Ward
William Burden
Lara Jackson
Suite 2100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3C2
Canada
Telephone: (416) 869-5300
Facsimile: (416) 360-8877

THORNTON GROUT FINNIGAN LLP

Michael Barrack
D.J. Miller
Rebecca Lewis
Andrea McEwan
Suite 3200, 100 Wellington Street West
P.O. Box 329
Toronto-Dominion Centre
Toronto, ON M5K 1K7

8

*Counsel for the Wilmington Trust Company, not in its individual capacity but solely as Trustee*

/s/ David A. Crichlow

KATTEN MUCHIN ROSENMAN LLP

Craig A. Barbarosh
David A. Crichlow
Karen B. Dine
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

HEENAN BLAIKIE LLP

John Salmas
Kenneth David Kraft
Bay Adelaide Centre
P.O. Box 2900
333 Bay Street, Suite 2900
Toronto, ON M5H 2T4
Telephone: (416) 360-6336
Facsimile: (416) 360-8425

*Counsel for the Law Debenture Trust Company of New York*

/s/ Daniel A. Lowenthal

BORDEN LADNER GERVAIS

John D. Marshall
Craig J. Hill
Edmond Lamek
Scotia Plaza,
40 King Street West, 44th Floor
Toronto, Ontario M5H 3Y4
Canada
Telephone: (416) 367-6000
Facsimile: (416) 367-6749

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel A. Lowenthal
Brian P. Guiney
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

MORRIS JAMES LLP

Stephen M. Miller
Courtney R. Hamilton
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

*Counsel for the Former Directors and Officers of*
*Nortel Networks Corporation and Nortel Networks*
*Limited*

*/s/ Betsy Putnam*

OSLER, HOSKIN & HARCOURT LLP

Lyndon A.J. Barnes
Adam Hirsh
Box 50, 1 First Canadian Place
Toronto, Ontario
M5X 1B8
Canada

\154

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

Proceeding commenced at Toronto

**ORDER**
**(Amended Deposition Protocol)**

**Goodmans LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON   M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Joseph Pasquariello (LSUC#: 38390C)
Christopher Armstrong (LSUC#: 55148B)
Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

# APPENDIX E

## US ORDER RESOLVING CERTAIN DISCOVERY DISPUTES

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re

NORTEL NETWORKS INC., *et al.*,

Debtors.

Chapter 11

Case No. 09-10138 (KG)
(Jointly Administered)

**D.I. Nos. 11575, 11577, 11752 & 11753**

## ORDER RESOLVING CERTAIN DISCOVERY
## DISPUTES AND DENYING RELATED RELIEF

Upon consideration of the submissions regarding certain discovery disputes (the

"Discovery Disputes") made by Nortel Networks Inc. ("NNI") and certain of its affiliates, as

debtors and debtors in possession (collectively, the "U.S. Debtors"),[1] and the court-appointed

administrators and authorized foreign representatives (collectively, the "Joint Administrators,"[2]

and together with the U.S. Debtors, the Monitor in the Canadian cases and the Canadian Debtors,

the "Parties") for Nortel Networks UK Limited ("NNUK") and certain of its affiliates

(collectively, the "EMEA Debtors")[3] located in the region known as EMEA (Europe, Middle

East, and Africa) in proceedings under the Insolvency Act 1986, pending before the High Court

---

1.  The U.S. Debtors are:  NNI (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); Nortel Networks (CALA) Inc. (4226).

2.  The Joint Administrators in the English proceedings for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited ("NNIR"), are Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris.  The Joint Administrators in the English proceedings for NNIR are Alan Robert Bloom and David Martin Hughes.

3.  The EMEA Debtors are:  NNUK; NNIR; Nortel Networks S.A. ("NNSA"); Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V.; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

of Justice of England and Wales; and upon the record of the hearings held September 18, 2013

and September 20, 2013 to consider the Discovery Disputes; and due and sufficient notice

having been given under the circumstances and it appearing that no other or further notice need

be given; and after due deliberation; and it appearing that good and sufficient cause exists;

IT IS HEREBY ORDERED THAT:

1.      In order to resolve the Discovery Dispute regarding the Joint

Administrators' responses to certain Consolidated Interrogatories, the Parties agree that the Joint

Administrators will provide supplemental responses (the "Supplemental Interrogatory

Responses") to identify persons knowledgeable about certain topics who are associated with the

individual EMEA Claimants[4] and therefore, the Courts defer ruling at this time.  The Parties

further agree to meet and confer immediately regarding the scope and timing of the

Supplemental Interrogatory Responses and failing agreement, either party may seek a prompt

ruling by the Courts.  For the avoidance of doubt, the Parties agree that the Joint Administrators

shall serve the Supplemental Interrogatory Responses on all Discovery Participants.  The U.S.

Debtors shall provide to the Discovery Participants who request it, a list of the precise

interrogatories and topics which are to be the subject of the Supplemental Interrogatory

Responses.

2.      In order to resolve the Discovery Dispute regarding the U.S. Debtors'

designation of certain Joint Administrators and the French Liquidator for deposition, the Parties

agree that the Joint Administrators will produce Alan Robert Bloom, a Joint Administrator, for

deposition in London, and Cosmé Rogeau, the French Liquidator, for deposition in Paris, and

---

4.   The EMEA Claimants are:  the EMEA Debtors; Nortel Networks AS; Nortel Networks A.G.; Nortel Networks
     South Africa (Proprietary) Limited; Nortel Networks Optical Components Limited; Northern Telecom France
     S.A.; Northern Telecom PCN Limited.

157

Christopher John Wilkinson Hill, a Joint Administrator, on mutually convenient dates pursuant

to paragraph D.6 of the Deposition Protocol. The Parties further agree that Mr. Hill will be

scheduled for deposition to occur after Messrs. Bloom and Rogeau, and that following the

depositions of Messrs. Bloom and Rogeau, the Parties will meet and confer in good faith

regarding the necessity of deposing Mr. Hill. The Parties further agree that the foregoing is

without prejudice to the Joint Administrators' right to argue to the Courts that Mr. Hill's

deposition would be cumulative and unnecessary in light of all other testimony in the case. The

Parties reserve all of their rights under the Discovery Plan and Deposition Protocol to seek leave

to designate additional fact witnesses upon a showing of good cause.

3.      In order to resolve the Discovery Dispute with regard to Representative

Depositions, the Parties agree that paragraph G.3.b of the Deposition Protocol is hereby amended

as follows:

> With respect to the EMEA Claimants other than NNUK, the
> Discovery Participants shall have the right to a distinct
> examination of each such Claimant; however, the EMEA
> Claimants shall not be obligated to designate a different
> Representative Witness for each Claimant. No specific time limits
> shall be placed on these Representative Depositions at this time,
> but the parties shall confer in good faith to reach agreement on
> such limits first after notices of topics are exchanged and failing
> agreement, second, after conducting the first few such depositions
> as samples to be better able to determine a reasonable amount of
> time, failing which the Courts shall be available (telephonically, if
> necessary) to set appropriate limits;

Except as the Courts may rule, the testimony of any Representative Witness for any EMEA

Claimant, other than NNUK, shall be admissible against only the EMEA Claimant in respect of

which the testimony is taken. The EMEA Claimants, U.S. Debtors, and Canadian Debtors

disagree at this time whether each EMEA Claimant other than NNUK should be entitled to

conduct a separate Representative Deposition of the U.S. Debtors and Canadian Debtors, and the

3

Parties further agree to meet and confer in good faith to reach agreement regarding that issue and reserve all rights in connection therewith. In the event each EMEA Claimant does get such right, either by agreement or further order of the Court, the examination of Representative Witnesses by any EMEA Claimant other than NNUK shall be limited to issues unique to that EMEA Claimant and shall only be admissible with respect to the claims of that EMEA Claimant.

4.     The U.S. Debtors' request for relief from this Court regarding certain non-party disclosures sought by the U.S. Debtors from Ernst & Young LLP ("E&Y UK") is hereby DENIED without prejudice. The U.S. Debtors may ask the Joint Administrators at their depositions to discuss their efforts to obtain the E&Y UK documents at issue. If appropriate, the U.S. Debtors may thereafter seek relief from the Courts.

5.     The U.S. Debtors' request that the depositions of certain Voluntary Witnesses produced by the Joint Administrators be left open pending the U.S. Debtors' review of documents produced by the Joint Administrators is DENIED without prejudice to the rights of any Discovery Participant to seek agreement or an order from the appropriate Court or Courts regarding the designation of additional fact witnesses or the recall of previously deposed fact witnesses for good cause shown, as contemplated by section 6(b) of the Discovery Plan and paragraph D.4 of the Deposition Protocol. Any such depositions shall be taken the week of December 1, 2013.

6.     This Court shall retain jurisdiction over all matters arising from or related to the interpretation or implementation of this Order.

Dated: September 25, 2013
        Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS, U.S.B.J.

4

# APPENDIX F

# NOVEMBER 19 ORDER

159

Court File No: 09-CL-7950

**ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

| | | |
|---|---|---|
| **THE HONOURABLE MR.** | ) | **TUESDAY, THE 19th DAY OF** |
| **JUSTICE MORAWETZ** | ) | **NOVEMBER, 2013** |
| | ) | |
| | ) | |

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Amendments to Litigation Timetable, Discovery Plan and Deposition
Protocol)**

**THIS MOTION,** made by Nortel Networks Corporation, Nortel Networks Limited,

Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel

Networks International Corporation (collectively, the **"Canadian Debtors"**) jointly with Ernst &

Young Inc. in its capacity as monitor (the **"Monitor"**) of the Canadian Debtors, the U.S.

Debtors, Committee, the EMEA Debtors/ Joint Administrators, the UK Pension Claimants **and

the CCC** (all as defined in the Allocation Protocol (as defined in Schedule A hereto) and

collectively, the **"Moving Parties"**) for the relief set out in the Notice of Motion dated

November 14, 2013 was heard this day at 393 University Avenue, Toronto, Ontario.

TOR_LAW\ 8296198\7

**ON READING** the one-hundredth report of the Monitor dated November 14, 2013, and on hearing submissions of counsel for the Moving Parties and the objection of the ad hoc bondholder group, no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Kiran Dhillon sworn November 14, 2013, filed.

1.      THIS COURT ORDERS that the time for the service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.      THIS COURT ORDERS that capitalized terms used herein and not otherwise defined have the meaning given to them in Schedule A hereto.

3.      THIS COURT ORDERS that the terms of amendment set out in Schedule A hereto are hereby approved and the Allocation Protocol, the Litigation Timetable, the Discovery Plan and the Deposition Protocol be and they are hereby amended in accordance with such terms.

4.      THIS COURT ORDERS that the parties shall be permitted to adjust interim deadlines in the time table in accordance with the following procedures:

> a.  The Moving Parties shall meet and confer to determine whether further adjustments to the time table should be made and may upon unanimous agreement (subject to sub-paragraph (c) below), without further Order of the Court(s), propose amendments to the timetable provided that such dates shall not impact the Court ordered commencement date of the Trial;

> b.  Any objections by Core Parties to any proposed amendments shall be made within two (2) Business Days of such proposal being made to them in writing; and

c. All objections shall be resolved through a meet and confer among all the Moving Parties (or designated members) and the objector(s) within two (2) Business Days, failing which, the objector must seek relief from the Court(s) within two (2) Business Days thereafter (by letter). Absent relief from the Court(s), any changes to the time table proposed by the Moving Parties shall be effective.

MISCELLANEOUS

5.     THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

6.     THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

DEC – 3 2013
MB

TOR_LAW\ 8296198\7

162

# SCHEDULE A

## Attached.

## SCHEDULE "A" –AMENDMENT TERMS

Capitalized terms used herein and not otherwise defined have the meaning given to them in (i) the allocation procedure protocol approved by the Ontario Superior Court of Justice and the United States Bankruptcy Court for the District of Delaware (the "**Courts**") in Orders dated on or about April 3, 2013 and May 16, 2013, respectively (as amended and restated, the "**Allocation Protocol**"), (ii) the litigation timetable and discovery plan approved by the Courts in Orders dated on or about May 16, 2013 and as amended by Orders of the Courts dated on or about August 27, 2013 (as amended, the "**Litigation Timetable and Discovery Plan**"), and (iii) the Deposition Protocol as approved by the Courts in Orders dated on or about August 27, 2013 and as amended by Orders dated on or about September 20, 2013 and September 25, 2013 (as amended, the "**Deposition Protocol**") as applicable.

1.     The Allocation Protocol, Litigation Timetable and Discovery Plan and the Deposition Protocol are modified as follows:

| Deadline | Former Date | Revised Date |
|---|---|---|
| Deadline to complete witness depositions other than third party depositions (i.e., those other than current or former employees or directors of a Core Party) and Representative Witness depositions | December 13, 2013 | December 13, 2013[1] |
| Deadline for each Deposition Group to serve Representative Witness subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | 10 business days prior to the commencement of Representative Witness depositions | 5pm (EST) December 13, 2013 other than with respect to topics relating to NNSA which shall be delivered no later than 5pm (EST) on December 17, 2013 |
| Identification of Representative Witnesses by each Core Party required to produce a Representative Witness | 5 business days prior to the commencement of Representative Witness | 5pm (EST) on December 18, 2013 |

---

[1] The parties shall be permitted to extend this date to December 18, 2013 with unanimous approval of the Scheduling Committee to the extent irreconcilable conflicts prevent a witness from being scheduled by December 13, 2013 provided however, except for good cause shown, that such extension shall not impact any other deadlines or dates in the timetable including the deadlines for noticing with respect to topics for and the scheduling of Representative Witness Depositions.

1

| Deadline | Former Date | Revised Date |
|---|---|---|
| | depositions | |
| Deadline for objections to Representative Witness subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | Three business days after service of the subjects | 5pm (EST) on December 18, 2013 |
| Meet and confer of the Scheduling Committee to schedule Representative Witness Depositions | NA | December 19, 2013 and/or December 20, 2013 |
| Meet and confer regarding any objections on Representative Witness deposition subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | Within two business days of service of the objections | December 20, 2013 |
| Deadline to identify experts and the subject matter of their reports | November 27, 2013 | January 8, 2014 |
| Representative Witness depositions | December 13, 2013 | January 8, 2014 to January 17, 2014 |
| Deadline for service of expert reports | December 20, 2013 | January 24, 2014 |
| Meet and confer to discuss foreign law experts | NA | No later than January 31, 2014 |
| Deadline for Discovery Groups to provide list of available dates of their experts to the Scheduling Committee | NA | 5pm (EST) on January 31, 2014 |
| Deadline to complete third party depositions | Due date of rebuttal expert reports | February 28, 2014 (solely for witnesses for whom process was started by Sept. 30, 2013 and except for good cause shown as per the current order) |
| Deadline for service of rebuttal expert reports | January 24, 2014 | February 28, 2014 |

2



| Deadline | Former Date | Revised Date |
|---|---|---|
| Preliminary pre-trial conference | Week of February 17, 2014 | January 29, 2014 |
| Expert depositions | February 28, 2014 | March 17, 2014 to April 4, 2014 |
| Deadline to file a list of all witnesses and exhibits that each Core Party intends to rely upon as part of its direct case | March 6, 2014 | April 10, 2014 |
| Deadline to file:<br><br>• Pre-trial motions<br><br>• Pre-trial briefs<br><br>• All fact affidavits to be used in direct case<br><br>• All exhibits to be used in direct case<br><br>• All deposition testimony to be used in direct case | March 14, 2014 | April 17, 2014 for service with filing on the following business day |
| Pre-trial conference | Week of March 17, 2014 (if the Courts desire) | Between April 21 and April 28, 2014 |
| Beginning of Trial | April 1, 2014 | Beginning on May 12, 2014 and continuing for 19 trial days thereafter |

2.    **Fact Witness Depositions**

    a.    Third Party Witnesses.

        i.    Notwithstanding any prior orders, absent good cause shown to the Court(s), no Core Parties shall provide any further notices to third parties for production of documents and/or depositions (other than those currently disclosed to the Scheduling Committee).

7790706.2



ii. Provided that appropriate judicial process to compel the production of documents or testimony from third parties was issued or commenced on or before September 30, 2013, or currently disclosed to the Scheduling Committee, the production of documents from such third parties and/or the depositions of such third party witnesses may be completed after the deadline for fact witness depositions, but must be completed by no later than February 28, 2014, except for good cause shown and by agreement of the Core Parties or order(s) of the Court(s).

3. **Representative Witness Examinations**.

    a. The Deposition Protocol is hereby amended as follows:

        i. The second sentence of paragraph G(1)(a) is amended as follows:

        "At least ten business days before the commencement of Representative Depositions" is hereby deleted and replaced with the words "On or before 5pm (EST) on December 13, 2013 (other than with respect to NNSA for which the deadline shall be December 17, 2013)"

        ii. The fourth sentence of paragraph G(1)(a) is amended as follows:

        "objections shall be served within three business days" is hereby deleted and replaced with the words "objections shall be served no later than 5pm (EST) on December 18, 2013"

        iii. The fifth sentence of paragraph G(1)(a) is amended as follows:

        "applicable parties shall meet and confer in good faith ~~within two business days thereafter~~ on or about December 20, 2013 and, failing agreement, the burden shall be on the noticing party to obtain judicial relief at least two business days (in order to enable preparation) prior to the Representative Deposition"

    b. On or before 5pm (EST) December 18, 2013, each Core Party that is required to

4

produce a Representative Witness under the Deposition Protocol shall identify their Representative Witness(es) and provide the Scheduling Committee with a list of all available deposition dates of their Representative Witness(es) for the period January 8, 2014 to January 17, 2014.

c. Representative Witness examinations will take place in accordance with the Deposition Protocol and will be scheduled between January 8, 2014 and January 17, 2014 to take place in New York or Toronto.

d. Each Core Party that is required to produce a Representative Witness under the Deposition Protocol will ensure that its Representative Witness can be produced on several pairs of days for the period January 8, 2014 to January 17, 2014.

e. The Deposition Groups will meet and confer during the week of December 16, 2013 to attempt to resolve any remaining disputes with respect to the Representative Witness depositions.

4. **Expert Witness Examinations**.

a. Expert witness examinations will take place between March 17, 2014 and April 4, 2014 in New York and Toronto.

b. Each Discovery Group will ensure that their expert witnesses can be produced for examination in either New York or Toronto on several days between March 17, 2014 and April 4, 2014 and, unless excused by the Scheduling Committee or the Courts, at a minimum

    i. each expert shall be required to offer at least 5 days on which they are available for deposition,

    ii. the deposition dates offered by the experts must be spread over at least two of the weeks; and

    iii. each Discovery Group must offer enough availability so that its experts' depositions can be scheduled equally over the three weeks of expert

5

depositions.

c.  On or before 5pm (EST) January 31, 2014, each Discovery Group shall provide the Scheduling Committee with all available deposition dates of their experts for the period March 17, 2014 to April 4, 2014.

d.  The Core Parties shall meet and confer no later than January 31, 2014 to attempt to reach agreement on the necessity of the examination of foreign law experts for deposition and trial.

5.    **Trial Logistics**

a.  The Core Parties shall meet and confer as soon as possible (but in any event no later than the week of December 16, 2013) with a view to attempting to reach consensus with respect to a proposal for the conduct of the trial, including the

   i.   material to be served/filed on April 10, 2014 and April 17, 2014;

   ii.  the feasibility of providing the Courts with a statement of agreed facts; and

   iii. proposed length of the trial.

b.  On or before January 20, 2014, the US Debtors, Canadian Debtors/Monitor, the EMEA Debtors and the UK Pension Claimants shall submit (either jointly or separately) their proposals for the conduct of the trial to the Courts.  Other Core Parties shall be entitled to file their own proposal on or before January 20, 2014 or, alternatively, they may file a joinder to indicate support of one or more of the proposals on or before January 27, 2014.

6.    **Miscellaneous**

a.  Other than as expressly modified herein, all other terms, dates, provisions in the Allocation Protocol, Litigation Timetable, Discovery Plan and all amendments thereto remain in full force and effect.

7790706.2

169

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
Proceeding commenced at Toronto

ORDER
(Amendments to Litigation Timetable, Discovery
Plan and Deposition Protocol)

GOWLING LAFLEUR HENDERSON LLP
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

Derrick Tay (LSUC #: 21152A)
Jennifer Stam (LSUC #: 46735J)
Tel:   (416) 862-5697
Fax:   (416) 862-7661

GOODMANS LLP
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON  M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Alan Mark (LSUC#: 21772U)
Jessica Kimmel (LSUC#: 32312W)
Joseph Pasquariello (LSUC#: 38390C)
Peter Ruby (LSUC#: 38439P)
Tel: 416.979.2211
Fax: 416.979.1234

## APPENDIX G

## ENDORSEMENT OF JUSTICE MORAWTEZ DATED MAY 3, 2013



CITATION: Nortel Networks Corporation (Re), 2013 ONSC 2612
COURT FILE NO.: 09-CL-7950
DATE: 20130503

**SUPERIOR COURT OF JUSTICE – ONTARIO**
**(COMMERCIAL LIST)**


RE:        IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

                AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION, Applicants

BEFORE:    MORAWETZ J.

COUNSEL:   D. Tay and J. Stam, for Nortel Networks Corporation

                J. Salmas, for Wilmington Trust, National Association

                Scott Bomhof and Andrew Gray, Nortel Networks Inc.

                Arthur Jacques, Nortel Continuing Employees Committee

                Michael Barrack and Bill Burden, Nortel Networks U.K. Pension Trustee and the U.K. Pension Protection Fund

                S. Kukulowicz, for the Unsecured Creditors' Committee

                Matthew Gottlieb, Tracy Wynne and Robin Schwill, for EHEA Debtors

                Mark Zigler, for the Former & Disabled Canadian Employees

                Lyndon Barnes, for the Former Directors

                J. Pasquariello, B. Zarnett and Peter Ruby, for Ernst & Young Inc., Monitor

                Paul Steep and Byron Shaw, for the Canadian Creditors' Committee

                Gavin Finlayson and Jonathan Bell, for the Noteholder Group

                Lily Harmer, for the Superintendent of Financial Institutions

HEARD:     APRIL 24, 2013

- Page 2 -

## ENDORSEMENT

[1]    On March 8, 2013, an endorsement was issued granting the allocation protocol motion of the Canadian Debtors and approving the form of allocation protocol presented by the Canadian Debtors subject to certain specified modifications. The cross-motion of the Joint Administrators seeking to direct the parties to the Interim Funding and Settlement Agreement to arbitrate the allocation dispute was dismissed.

[2]    The U.S. Court similarly granted the motion of the U.S. Debtors for approval of the allocation protocol and dismissed the cross-motion of the Joint Administrators to compel arbitration.

[3]    On April 3, 2013, I issued a further endorsement providing reasons in respect of the allocation protocol motion. On the same date, the U.S. Court issued an opinion.

[4]    The effect of the decisions of both courts is that allocation of the Nortel global sale proceeds and resolution of the claims filed by the EMEA Debtors, certain other inter-company creditors and the U.K. pension interests against the Canadian Debtors and the U.S. Debtors, respectively, will be resolved through a joint trial of this court and the U.S. Court, which trial is to commence on January 6, 2014.

[5]    On April 17, 2013, both this court and the U.S. Court scheduled this joint hearing to address a Litigation Timetable and Discovery Plan for this upcoming trial.

[6]    The joint hearing was conducted by way of video conference. His Honor Chief Judge Gross presided over the hearing in the U.S. Court. The joint hearing was conducted in accordance with the provisions of the Cross-Border Protocol, previously approved by both courts.

[7]    At the outset, a jurisdictional issue was raised as a result of a pending motion for leave to appeal and any appeal in respect of my decision of March 8, 2013 and the decision of the U.S. Court.

[8]    By agreement of the parties, nothing in the participation of the EMEA Debtors in this hearing or in complying with the allocation protocol or timetable directed by this court, shall prejudice their request for leave to appeal, or any appeal if leave is granted, from the order of this court released March 8, 2013 with reasons delivered on April 3, 2013. Any party may, however, rely in the leave to appeal or any appeal on any failure of the EMEA Debtors to expedite the leave to appeal or appeal or on the state of the proceedings under the allocation protocol at the time of the hearing of the leave to appeal or appeal.

[9]    In considering the issues relating to the Litigation Timetable and Discovery Plan, it is advisable to state the obvious. The trial is scheduled for January 6, 2014. It is the responsibility of all parties to be prepared to proceed on that date. This court expects the parties to communicate with each other, to cooperate with each other and to use their common sense in a productive way such that all parties will be prepared to commence the trial on January 6, 2014.

172

- Page 3 -

[10]    Having considered the various submissions provided by the parties and, referencing the comparative chart filed by the U.S. Debtors entitled "Comparison of Parties' Litigation Timetables and Discovery Plans" (attached as Schedule A, (the "Chart")), the following directions are provided.

[11]    For matters in this court, the *Rules of Civil Procedure* apply.

[12]    All parties should take specific note of Rules 1.04(1) and (1.1), 29.1 and 29.2.

[13]    At this stage of the proceedings, it is impossible to provide specific directions on certain issues that have been identified by the parties as they are hypothetical.    Some of these issues will likely result in differences between the parties that will have to be adjudicated.  To the extent that disputes arise in the weeks and months ahead, it could very well be that it will be necessary to have such disputes resolved by a judicial officer.  This issue will be given further consideration, depending on the court's schedule.    Rather, at this stage, it seems to me that it may be constructive to provide guidance in the form of a response to the Chart.

## SCHEDULING

[14]    The position put forth by the EMEA Claimants is accepted.  Fact discovery is to last 4.5 months and be completed by September 27, 2013.  Expert discovery lasts 1.5 months and is to be completed by December 6, 2013.

[15]    In making this determination, I have taken into account that the EMEA Claimants and the U.K. Pension Claimants are major creditors in the global Nortel insolvency and it is necessary to ensure that they have the full opportunity to put forth their case, within the confines of the trial schedule.

## SEPARATE LITIGATIONS

[16]    The proposal of the U.S. Debtors is accepted.  Although a joint trial will be conducted, this does not alter the fact that the U.S. Court and this court are separate and the independent jurisdiction and different procedural rules of each court need to be respected.

[17]    All parties are expected to exhibit a considerable degree of cooperation in this area.

## LIMITATIONS ON DISCOVERY

[18]    In my view, it is both necessary and appropriate to provide for discovery groups, which require parties with aligned interests to serve consolidated discovery requests and notice depositions together.  In this respect, the proposal of the U.S. Debtors is accepted.

[19]    On the issue of the number of witnesses, in my view, it is premature to impose numerical limits on depositions at this stage.  This issue may be revisited at a later stage.

- Page 4 -

## CORE PARTIES

[20]    It was noted, in submissions, that no additional parties have sought to be included as a Core Party since the release of the decisions on March 8, 2013.  No additional parties are to be granted the status of Core Party, without leave of the court.

## EMEA CLAIM

[21]    The EMEA Debtors take issue with the submission of the Canadian Debtors that new pleadings be delivered.  The EMEA Debtors have filed claims in response to the EMEA Claim Procedure Order.  The Canadian Debtors and the Monitor are to respond to the claim, as filed.

## ELECTRONIC DOCUMENTS

[22]    With respect to issues relating to the Merrill database, I can see no principled reason why all parties should not have access to the database.

[23]    With respect to document discovery to electronic documents, the Monitor and the Canadian Debtors propose to use several tools to reach a balance, including:

> (a) making use of the over 44,000 documents already produced by the parties for the purpose of mediation and stored in a Merrill Lextranet database;
>
> (b) providing for parties to make limited and specific document discovery requests, so as to avoid fishing expeditions, extensive document search exercises and voluminous productions – or making any further relevant documents available.

[24]    In my view this proposal represents a reasonable approach under the circumstances, taking into account the available amount of time between now and the start of the trial.  To the extent that there are unresolved issues, specific directions can be sought.

## MONITOR

[25]    In my view the parties will benefit from some general comment about the role of the Monitor.  These comments are in response to the submission of the U.K. Pension Claimants that the only party who should respond to their claim is the Monitor who should deliver a responding pleading and that cross-examinations in connection with the Canadian claim should be conducted only by the Monitor and the U.K. Pension Claimants as the parties directly interested in the resolution of the claims.

[26]    It is not necessary to provide specific directions in respect of this issue.  The role of a monitor may vary in each CCAA proceeding, but at all times, the monitor remains a court-appointed officer and whose position cannot be restricted in the manner suggested by the U.K. Pension Claimants.  If further direction is required at some point in the future on this issue, directions can be sought.

[27]    The draft Litigation Timetables and the draft Discovery Plan attached to the submissions of the Canadian Debtors are to be amended to take into account the foregoing.

- Page 5 -

[28]    Finally, all parties should recognize that it is the objective of both the U.S. Court and this court to set out a fair, effective and efficient process designed to achieve a just result on the merits within the timelines that have been allocated.  By the time the trial commences on January 6, 2014, these proceedings will have been ongoing for five years less one week.  The issues involved in this joint trial were identified by the parties several years ago.  It is time to have the issues determined with finality.

MORAWETZ J.

**Date:**   May 3, 2013

**SCHEDULE A**

| | Scheduling | Separate Litigations | Reasonable Limitations on Discovery Plans |
|---|---|---|---|
| U.S. Debtors | Fact discovery last 3.5 months and is completed by August 30.<br><br>Expert discovery lasts 2.5 months and is completed by November 22. | Provides for separate discovery procedures for Allocation, U.S. Claims and Canadian Claims which reflects the independent jurisdiction and different procedural rules of each court.<br><br>Specifies which parties have standing to participate in each of the litigations. | Provides for discovery groups, which require parties with aligned interests to serve consolidated discovery requests and notice depositions together.<br><br>Limits discovery groups to 10 fact witness depositions, yielding a maximum of 30.<br><br>Produces indices of hard-copy documents; may provide hard-copy documents for inspection. |
| Monitor/CCC | Same end dates as U.S. Debtors.<br><br>Later date for the start of document discovery shortens this period by one week. | Provides for one discovery procedure for Allocation, U.S. Claims and Canadian Claims.<br><br>Allows parties without standing to propound discovery in US Claims. | Allows each Core Party to serve discovery requests individually, increasing objections and inefficiency.<br><br>Allows each Core Party to designate 10 fact witness depositions, yielding up to 100 or more depositions.<br><br>Aligned with U.S. Debtors re: hard-copy documents. |
| EMEA Claimants | Fact discovery lasts 4.5 months and is completed by September 27.<br><br>Expert discovery lasts less than 1.5 months and is completed by December 6.<br><br>. | Aligned with U.S. Debtors | Generally aligned with U.S. Debtors on concept of discovery groups.<br><br>Disagree with U.S. Debtors that document requests should be "limited" and "reasonable".<br><br>Disagree with U.S. Debtors that numerical limits can be placed on depositions at this stage.<br><br>Aligned with U.S. Debtors re: hard-copy documents. |
| U.K. Pension Claimants | Fact discovery lasts 4.5 months and is completed by September 30.<br><br>Expert discovery lasts 1.5 months and is completed by December 15. | Aligned with U.S. Debtors. | Generally aligned with the U.S. Debtors on concept of discovery groups.<br><br>Disagree with U.S. Debtors that numerical limits can be placed on depositions at this stage.<br><br>Disagree with U.S. Debtors re: hard-copy documents; would require parties to search hard-copy documents. |



# APPENDIX H

## EMAIL RE: UKPC REPRESENTATIVE WITNESS SUBJECTS



## Dhillon, Kiran

**From:** Stam, Jennifer
**Sent:** January-03-14 10:37 AM
**To:** Dhillon, Kiran
**Subject:** FW: UKPC Representative Witness Subjects

**From:** Kimmel, Jessica [mailto:jkimmel@goodmans.ca]
**Sent:** December-19-13 10:20 AM
**To:** Ruby, Peter; 'nortel.monitor@ca.ey.com'; Tay, Derrick; Stam, Jennifer; 'ken.coleman@allenovery.com';
'paul.keller@allenovery.com'; 'daniel.guyder@allenovery.com'; 'laura.hall@allenovery.com'; 'Joseph.Badtke-
Berkow@AllenOvery.com'; 'jonathan.cho@allenovery.com'; 'Nicolette.ward@allenovery.com';
'Kathleen.murphy@bipc.com'; 'mary.caloway@bipc.com'; 'tdemarinis@torys.com'; 'sbomhof@torys.com';
'sblock@torys.com'; 'agray@torys.com'; 'aslavens@torys.com'; 'jbromley@cgsh.com'; 'lschweitzer@cgsh.com';
'hzelbo@cgsh.com'; 'jrosenthal@cgsh.com'; 'dstein@cgsh.com'; 'mdecker@cgsh.com'; 'lpeacock@cgsh.com';
'jmoessner@cgsh.com'; 'nforrest@cgsh.com'; 'dqueen@cgsh.com'; 'dabbott@mnat.com'; 'acordo@mnat.com';
'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'jdoris@dwpv.com'; 'lsarabia@dwpv.com'; 'mgottlieb@counsel-
toronto.com'; 'twynne@counsel-toronto.com'; 'pmichell@counsel-toronto.com'; 'adler@hugheshubbard.com';
'oxford@hugheshubbard.com'; 'tabataba@hugheshubbard.com'; 'huberty@hugheshubbard.com'; 'eharron@ycst.com';
'jdorsey@ycst.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'akaplan@kmlaw.ca'; 'bwalancik@kmlaw.ca';
'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com'; 'lily.harmer@paliareroland.com';
'karen.jones@paliareroland.com'; 'tina.lie@paliareroland.com'; 'michelle.jackson@paliareroland.com';
'jacqueline.cummins@paliareroland.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca'; Arthur Jacques;
'thomas.mcrae@shibleyrighton.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca';
'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca';
'emarques@mccarthy.ca'; 'psteep@mccarthy.ca'; 'skour@mccarthy.ca'; 'bdshaw@mccarthy.ca'; 'kpeters@mccarthy.ca';
'selinda.melnik@dlapiper.com'; 'richard.hans@dlapiper.com'; 'timothy.hoeffner@dlapiper.com';
'farahlisa.sebti@dlapiper.com'; 'zychk@bennettjones.com'; 'orzyr@bennettjones.com'; 'finlaysong@bennettjones.com';
'swanr@bennettjones.com'; 'zweigs@bennettjones.com'; 'bellj@bennettjones.com'; 'TKreller@milbank.com';
'JHarris@milbank.com'; 'APisa@milbank.com'; 'svora@milbank.com'; 'aleblanc@milbank.com'; 'mhirschfeld@milbank.com';
'amiller@milbank.com'; 'tmatz@milbank.com'; 'nbassett@milbank.com'; 'gruha@milbank.com'; 'rpojunas@milbank.com';
'Shayne.kukulowicz@dentons.com'; 'Michael.wunder@dentons.com'; 'ryan.jacobs@dentons.com';
'Barbara.grossman@dentons.com'; 'fhodara@akingump.com'; 'dbotter@akingump.com'; 'aqureshi@akingump.com';
'rajohnson@akingump.com'; 'bkahn@akingump.com'; 'cdoniak@akingump.com'; 'sgulati@akingump.com';
'angela.pearson@ashurst.com'; 'Antonia.croke@ashurst.com'; 'samis@rlf.com'; 'bleonard@casselsbrock.com';
'dward@casselsbrock.com'; 'bburden@casselsbrock.com'; 'chorkins@casselsbrock.com'; 'ljackson@casselsbrock.com';
'mbarrack@tgf.ca'; 'djmiller@tgf.ca'; 'rlewis@tgf.ca'; 'amcewan@tgf.ca'; 'jfinnigan@tgf.ca'; 'boconnor@willkie.com';
'sadvani@willkie.com'; 'ahanrahan@willkie.com'; 'sheryl.seigel@mcmillan.ca'; 'michael.riela@lw.com';
'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; 'svanallen@heenan.ca'; 'craig.barbarosh@kattenlaw.com';
'david.crichlow@kattenlaw.com'; 'Karen.dine@kattenlaw.com'; 'elamek@blg.com'; 'jszumski@blg.com';
'dalowenthal@pbwt.com'; 'lbarnes@osler.com'; 'esellers@osler.com'; 'eputnam@osler.com'; 'ahirsh@osler.com';
'acobb@osler.com'; 'michael.lang@nortonrosefulbright.com'; 'amdg@hoganlovells.com'; 'john.tillman@hoganlovells.com';
'Matthew.bullen@hoganlovells.com'; 'david.graves@hoganlovells.com'; 'katherine.tallett-williams@hoganlovells.com';
'james.norris-jones@hsf.com'; 'cdavis@bayardlaw.com'; 'jalberto@bayardlaw.com'
**Cc:** Zarnett, Benjamin; Myers, Fred; Pasquariello, Joe; Carfagnini, Jay; Armstrong, Christopher; Anderson, Michel;
Sarabura, Alexander
**Subject:** UKPC Representative Witness Subjects

Unfortunately, it came to our attention this morning (after not receiving any objections to the UKPC witness subjects
that we had thought were delivered last Friday) that our difficulties with the delivery of our subject lists last Friday were
more extensive than we had appreciated, in that this list was not included in the material that we did deliver, through
inadvertence.

I wanted to get it to everyone now before the meet and confers begin today and we will obviously need to discuss this
with counsel for the UKPC separately.

1

Irrespective of the subject lists, we have been transparent in our views that that subjects are only one part of the representative party examinations and thus we would still expect that a UKPC representative be designated.

**From:** Ruby, Peter
**Sent:** Tuesday, December 17, 2013 4:31 PM
**To:** 'nortel.monitor@ca.ey.com'; 'derrick.tay@gowlings.com'; 'jennifer.stam@gowlings.com'; 'ken.coleman@allenovery.com'; 'paul.keller@allenovery.com'; 'daniel.guyder@allenovery.com'; 'laura.hall@allenovery.com'; 'Joseph.Badtke-Berkow@AllenOvery.com'; 'jonathan.cho@allenovery.com'; 'Nicolette.ward@allenovery.com'; 'Kathleen.murphy@bipc.com'; 'mary.caloway@bipc.com'; 'tdemarinis@torys.com'; 'sbomhof@torys.com'; 'sblock@torys.com'; 'agray@torys.com'; 'aslavens@torys.com'; 'jbromley@cgsh.com'; 'lschweitzer@cgsh.com'; 'hzelbo@cgsh.com'; 'jrosenthal@cgsh.com'; 'dstein@cgsh.com'; 'mdecker@cgsh.com'; 'lpeacock@cgsh.com'; 'jmoessner@cgsh.com'; 'nforrest@cgsh.com'; 'dqueen@cgsh.com'; 'dabbott@mnat.com'; 'acordo@mnat.com'; 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'jdoris@dwpv.com'; 'lsarabia@dwpv.com'; 'mgottlieb@counsel-toronto.com'; 'twynne@counsel-toronto.com'; 'pmichell@counsel-toronto.com'; 'adler@hugheshubbard.com'; 'oxford@hugheshubbard.com'; 'tabataba@hugheshubbard.com'; 'huberty@hugheshubbard.com'; 'eharron@ycst.com'; 'jdorsey@ycst.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'akaplan@kmlaw.ca'; 'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com'; 'lily.harmer@paliareroland.com'; 'karen.jones@paliareroland.com'; 'tina.lie@paliareroland.com'; 'michelle.jackson@paliareroland.com'; 'jacqueline.cummins@paliareroland.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca'; Arthur Jacques; 'thomas.mcrae@shibleyrighton.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca'; 'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'psteep@mccarthy.ca'; 'skour@mccarthy.ca'; 'bdshaw@mccarthy.ca'; 'kpeters@mccarthy.ca'; 'selinda.melnik@dlapiper.com'; 'richard.hans@dlapiper.com'; 'timothy.hoeffner@dlapiper.com'; 'farahlisa.sebti@dlapiper.com'; 'zychk@bennettjones.com'; 'orzyr@bennettjones.com'; 'finlaysong@bennettjones.com'; 'swanr@bennettjones.com'; 'zweigs@bennettjones.com'; 'bellj@bennettjones.com'; 'TKreller@milbank.com'; 'JHarris@milbank.com'; 'APisa@milbank.com'; 'svora@milbank.com'; 'aleblanc@milbank.com'; 'mhirschfeld@milbank.com'; 'amiller@milbank.com'; 'tmatz@milbank.com'; 'nbassett@milbank.com'; 'gruha@milbank.com'; 'rpojunas@milbank.com'; 'Shayne.kukulowicz@dentons.com'; 'Michael.wunder@dentons.com'; 'ryan.jacobs@dentons.com'; 'Barbara.grossman@dentons.com'; 'fhodara@akingump.com'; 'dbotter@akingump.com'; 'aqureshi@akingump.com'; 'rajohnson@akingump.com'; 'bkahn@akingump.com'; 'cdoniak@akingump.com'; 'sgulati@akingump.com'; 'angela.pearson@ashurst.com'; 'Antonia.croke@ashurst.com'; 'samis@rlf.com'; 'bleonard@casselsbrock.com'; 'dward@casselsbrock.com'; 'bburden@casselsbrock.com'; 'chorkins@casselsbrock.com'; 'ljackson@casselsbrock.com'; 'mbarrack@tgf.ca'; 'djmiller@tgf.ca'; 'rlewis@tgf.ca'; 'amcewan@tgf.ca'; 'jfinnigan@tgf.ca'; 'boconnor@willkie.com'; 'sadvani@willkie.com'; 'ahanrahan@willkie.com'; 'sheryl.seigel@mcmillan.ca'; 'michael.riela@lw.com'; 'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; 'svanallen@heenan.ca'; 'craig.barbarosh@kattenlaw.com'; 'david.crichlow@kattenlaw.com'; 'Karen.dine@kattenlaw.com'; 'elamek@blg.com'; 'jszumski@blg.com'; 'dalowenthal@pbwt.com'; 'lbarnes@osler.com'; 'esellers@osler.com'; 'eputnam@osler.com'; 'ahirsh@osler.com'; 'acobb@osler.com'; 'michael.lang@nortonrosefulbright.com'; 'amdg@hoganlovells.com'; 'john.tillman@hoganlovells.com'; 'Matthew.bullen@hoganlovells.com'; 'david.graves@hoganlovells.com'; 'katherine.tallett-williams@hoganlovells.com'; 'james.norris-jones@hsf.com'; 'cdavis@bayardlaw.com'; 'jalberto@bayardlaw.com'
**Cc:** Zarnett, Benjamin; Myers, Fred; Kimmel, Jessica; Pasquariello, Joe; Carfagnini, Jay; Ruby, Peter; Armstrong, Christopher; Anderson, Michel; Sarabura, Alexander
**Subject:** NNSA Representative Witness Subjects

Attached are the NNSA Representative Witness Subjects served by the Canadian Allocation Group and the Canadian Claims Defendant Group. We reserve all of our rights under the litigation timetable and deposition plan, both as amended, the applicable rules of court and otherwise.

I will be away starting tomorrow so please direct any objections or other comments to Jessica Kimmel and Alan Mark.

Happy holidays all.

2



**Peter Ruby**
Goodmans LLP

416.597.4184
pruby@goodmans.ca
goodmans.ca

---

˙**\*\*\*\* Attention \*\*\*\*\***

This communication is intended solely for the named addressee(s) and may contain information that is privileged, confidential, protected or otherwise exempt from disclosure. No waiver of confidence, privilege, protection or otherwise is made. If you are not the intended recipient of this communication, please advise us immediately and delete this email without reading, copying or forwarding it to anyone.

## APPENDIX I

## DECEMBER 10 & 11 EMAILS OF JESSICA KIMMEL AND JEFF ROSENTHAL



## Dhillon, Kiran

| From: | Stam, Jennifer |
| --- | --- |
| Sent: | January-03-14 10:38 AM |
| To: | Dhillon, Kiran |
| Subject: | FW: Nortel - Representative Party Examinations |

**From:** Rosenthal, Jeffrey A. [mailto:jrosenthal@cgsh.com]
**Sent:** December-11-13 10:54 AM
**To:** Kimmel, Jessica; 'nortel.monitor@ca.ey.com'; Tay, Derrick; Stam, Jennifer; ken.coleman@allenovery.com;
'paul.keller@allenovery.com'; daniel.guyder@allenovery.com; 'laura.hall@allenovery.com'; 'Joseph.Badtke-
Berkow@AllenOvery.com'; 'jonathan.cho@allenovery.com'; 'Nicolette.ward@allenovery.com';
'Kathleen.murphy@bipc.com'; 'mary.caloway@bipc.com'; 'tdemarinis@torys.com'; sbomhof@torys.com;
sblock@torys.com; agray@torys.com; 'aslavens@torys.com'; Bromley, James L.; Schweitzer, Lisa M.; Zelbo, Howard S.;
Stein, Darryl G.; Decker, Marla; Moessner, Jacqueline; Forrest, Neil P.; Queen, Daniel D.; dabbott@mnat.com;
acordo@mnat.com; 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'jdoris@dwpv.com'; 'lsarabia@dwpv.com';
'mgottlieb@counsel-toronto.com'; 'twynne@counsel-toronto.com'; 'pmichell@counsel-toronto.com';
'adler@hugheshubbard.com'; 'oxford@hugheshubbard.com'; 'tabataba@hugheshubbard.com';
'huberty@hugheshubbard.com'; 'eharron@ycst.com'; 'jdorsey@ycst.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca';
'akaplan@kmlaw.ca'; 'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com';
'lily.harmer@paliareroland.com'; 'karen.jones@paliareroland.com'; 'tina.lie@paliareroland.com';
'michelle.jackson@paliareroland.com'; 'jacqueline.cummins@paliareroland.com'; 'barry.wadsworth@caw.ca';
'lewis.gottheil@caw.ca'; Arthur Jacques; 'thomas.mcrae@shibleyrighton.com'; 'janice.payne@nelligan.ca';
'steven.levitt@nelligan.ca'; 'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; 'bboake@mccarthy.ca';
'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'psteep@mccarthy.ca'; 'skour@mccarthy.ca'; 'bdshaw@mccarthy.ca';
'kpeters@mccarthy.ca'; 'selinda.melnik@dlapiper.com'; 'richard.hans@dlapiper.com'; 'timothy.hoeffner@dlapiper.com';
'farahlisa.sebti@dlapiper.com'; ZychK@bennettjones.com; Orzyr@bennettjones.com; finlaysong@bennettjones.com;
swanr@bennettjones.com; 'zweigs@bennettjones.com'; bellj@bennettjones.com; tkreller@milbank.com;
JHarris@milbank.com; apisa@milbank.com; svora@milbank.com; aleblanc@milbank.com; 'mhirschfeld@milbank.com';
amiller@milbank.com; tmatz@milbank.com; nbassett@milbank.com; gruha@milbank.com; rpojunas@milbank.com;
'Shayne.kukulowicz@dentons.com'; 'Michael.wunder@dentons.com'; 'ryan.jacobs@dentons.com';
'Barbara.grossman@dentons.com'; fhodara@akingump.com; dbotter@akingump.com; aqureshi@akingump.com;
rajohnson@akingump.com; bkahn@akingump.com; cdoniak@akingump.com; sgulati@akingump.com;
'angela.pearson@ashurst.com'; 'Antonia.croke@ashurst.com'; 'samis@rlf.com'; 'bleonard@casselsbrock.com';
'dward@casselsbrock.com'; 'bburden@casselsbrock.com'; 'chorkins@casselsbrock.com'; 'ljackson@casselsbrock.com';
'mbarrack@tgf.ca'; 'djmiller@tgf.ca'; 'rlewis@tgf.ca'; 'amcewan@tgf.ca'; 'jfinnigan@tgf.ca'; 'boconnor@willkie.com';
'sadvani@willkie.com'; AHanrahan@willkie.com; 'sheryl.seigel@mcmillan.ca'; 'michael.riela@lw.com';
'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; 'svanallen@heenan.ca'; 'craig.barbarosh@kattenlaw.com';
'david.crichlow@kattenlaw.com'; 'Karen.dine@kattenlaw.com'; 'elamek@blg.com'; 'jszumski@blg.com';
'dalowenthal@pbwt.com'; 'lbarnes@osler.com'; 'esellers@osler.com'; 'eputnam@osler.com'; 'ahirsh@osler.com';
'acobb@osler.com'; 'michael.lang@nortonrosefulbright.com'; 'amdg@hoganlovells.com'; 'john.tillman@hoganlovells.com';
'Matthew.bullen@hoganlovells.com'; 'david.graves@hoganlovells.com'; 'katherine.tallett-williams@hoganlovells.com';
'james.norris-jones@hsf.com'; 'cdavis@bayardlaw.com'; 'jalberto@bayardlaw.com'
**Cc:** Zarnett, Benjamin; Myers, Fred; jpasquariello@goodmans.ca; Carfagnini, Jay; Ruby, Peter;
carmstrong@goodmans.ca
**Subject:** RE: Nortel - Representative Party Examinations

Jessica,

As we have recently advised you, the US Debtors believe that the comprehensive deposition discovery to date – which
has included more than 100 depositions, including the voluntary appearance of numerous overseas witnesses that has
exceeded any reasonable expectation at the time we prepared the protocol (I think there is only one overseas former
Nortel employee who was requested but is not being deposed) – requires the parties to revisit the necessity of spending

1

millions of dollars more collectively on representative depositions. Given the number of monitor reports advising the courts of your desire to reduce litigation costs, we would have thought this would be a welcome opportunity for the parties to act rather than speak.

While we would like to hear the views of the other Core Parties besides the US Debtors and the Canadian Debtors, we are strongly leaning toward the view that representative depositions are unnecessary in this litigation and are considering presenting that position to the courts. In any event, we are surprised by your suggestion that there are so many subjects that have not been explored in depositions such that each group should have the right to designate 30 advance topics of each other party – the discussions surrounding the right to name any topics, and the language of our stipulations itself, contemplate it being far more limited and, indeed, we've been thinking that it should likely be fewer than 5 very targeted issues per party, if representative depositions proceed at all (we told you that we were contemplating around 10 topics in total for all parties, if any).

We also disagree with your description of the proper scope and purpose of representative depositions, but we need not debate this now as we agree that only #1 needs to be addressed by Friday and the whole issue could be mooted if there is a consensus that representative depositions should not proceed.

We look forward to hearing the views of others and conferring further regarding representative depositions as we finalize our position.

Best regards,

Jeff

---

Jeffrey A. Rosenthal
Cleary Gottlieb Steen & Hamilton LLP
Assistant: mconiglio@cgsh.com
One Liberty Plaza, New York NY 10006
t: +1 212 225 2086 | f: +1 212 225 3999
www.clearygottlieb.com | jrosenthal@cgsh.com

**From:** Kimmel, Jessica [mailto:jkimmel@goodmans.ca]
**Sent:** Tuesday, December 10, 2013 9:23 PM
**To:** 'nortel.monitor@ca.ey.com'; 'derrick.tay@gowlings.com'; 'jennifer.stam@gowlings.com'; ken.coleman@allenovery.com; 'paul.keller@allenovery.com'; daniel.guyder@allenovery.com; 'laura.hall@allenovery.com'; 'Joseph.Badtke-Berkow@AllenOvery.com'; 'jonathan.cho@allenovery.com'; 'Nicolette.ward@allenovery.com'; 'Kathleen.murphy@bipc.com'; 'mary.caloway@bipc.com'; 'tdemarinis@torys.com'; sbornhof@torys.com; sblock@torys.com; agray@torys.com; 'aslavens@torys.com'; Bromley, James L.; Schweitzer, Lisa M.; Zelbo, Howard S.; Rosenthal, Jeffrey A.; Stein, Darryl G.; Decker, Marla; 'lpeacock@cgsh.com'; Moessner, Jacqueline; Forrest, Neil P.; Queen, Daniel D.; dabbott@mnat.com; acordo@mnat.com; 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'jdoris@dwpv.com'; 'lsarabia@dwpv.com'; 'mgottlieb@counsel-toronto.com'; 'twynne@counsel-toronto.com'; 'pmichell@counsel-toronto.com'; 'adler@hugheshubbard.com'; 'oxford@hugheshubbard.com'; 'tabataba@hugheshubbard.com'; 'huberty@hugheshubbard.com'; 'eharron@ycst.com'; 'jdorsey@ycst.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'akaplan@kmlaw.ca'; 'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com'; 'lily.harmer@paliareroland.com'; 'karen.jones@paliareroland.com'; 'tina.lie@paliareroland.com'; 'michelle.jackson@paliareroland.com'; 'jacqueline.cummins@paliareroland.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca'; Arthur Jacques; 'thomas.mcrae@shibleyrighton.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca'; 'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'psteep@mccarthy.ca'; 'skour@mccarthy.ca'; 'bdshaw@mccarthy.ca'; 'kpeters@mccarthy.ca'; 'selinda.melnik@dlapiper.com'; 'richard.hans@dlapiper.com'; 'timothy.hoeffner@dlapiper.com'; 'farahlisa.sebti@dlapiper.com'; ZychK@bennettjones.com; Orzyr@bennettjones.com; finlaysong@bennettjones.com; swanr@bennettjones.com; 'zweigs@bennettjones.com'; bellj@bennettjones.com; tkreller@milbank.com; JHarris@milbank.com; apisa@milbank.com; svora@milbank.com; aleblanc@milbank.com; 'mhirschfeld@milbank.com';

amiller@milbank.com; tmatz@milbank.com; nbassett@milbank.com; gruha@milbank.com; rpojunas@milbank.com; 'Shayne.kukulowicz@dentons.com'; 'Michael.wunder@dentons.com'; 'ryan.jacobs@dentons.com'; 'Barbara.grossman@dentons.com'; fhodara@akingump.com; dbotter@akingump.com; agureshi@akingump.com; rajohnson@akingump.com; bkahn@akingump.com; cdoniak@akingump.com; sgulati@akingump.com; 'angela.pearson@ashurst.com'; 'Antonia.croke@ashurst.com'; 'samis@rlf.com'; 'bleonard@casselsbrock.com'; 'dward@casselsbrock.com'; 'bburden@casselsbrock.com'; 'chorkins@casselsbrock.com'; 'ljackson@casselsbrock.com'; 'mbarrack@tgf.ca'; 'djmiller@tgf.ca'; 'rlewis@tgf.ca'; 'amcewan@tgf.ca'; 'jfinnigan@tgf.ca'; 'boconnor@willkie.com'; 'sadvani@willkie.com'; AHanrahan@willkie.com; 'sheryl.seigel@mcmillan.ca'; 'michael.riela@lw.com'; 'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; 'svanallen@heenan.ca'; 'craig.barbarosh@kattenlaw.com'; 'david.crichlow@kattenlaw.com'; 'Karen.dine@kattenlaw.com'; 'elamek@blg.com'; 'jszumski@blg.com'; 'dalowenthal@pbwt.com'; 'lbarnes@osler.com'; 'esellers@osler.com'; 'eputnam@osler.com'; 'ahirsh@osler.com'; 'acobb@osler.com'; 'michael.lang@nortonrosefulbright.com'; 'amdg@hoganlovells.com'; 'john.tillman@hoganlovells.com'; 'Matthew.bullen@hoganlovells.com'; 'david.graves@hoganlovells.com'; 'katherine.tallett-williams@hoganlovells.com'; 'james.norris-jones@hsf.com'; 'cdavis@bayardlaw.com'; 'jalberto@bayardlaw.com'
**Cc:** Zarnett, Benjamin; Myers, Fred; Kimmel, Jessica; jpasquariello@goodmans.ca; Carfagnini, Jay; Ruby, Peter; carmstrong@goodmans.ca
**Subject:** Nortel - Representative Party Examinations

We are writing with a view to co-ordinating the representative party examination process. In advance of the first deadline that is approaching for the exchange of the topics for representative parties (other than NNSA) this Friday December 13, 2013, we are communicating to this Core Party group what we understand the expected approach to be to this process and we invite your comments if others are approaching it any differently so that we can try to manage expectations.

We understand the objectives of the representative party examinations in broad strokes to be three-fold, all with a view to avoiding any surprises at trial:

1.  To determine if there is any further "evidence/facts" on subjects raised by the pleadings not yet covered by the first-hand deposition testimony of fact witnesses currently or formerly associated with the party (or any such subjects that an adverse party believes have not been adequately covered). There is also the option to designate a limited number of these subjects in advance with the expectation that the party representative will inform him/her self about them before the examination  – these "advance preparation" subjects are what we understand are to be identified by this Friday December 13, 2013. **We would propose that each Deposition Group agree to limit the number of subjects that can be designated in advance for any Core Party representative who they will be examining to 30 or less**;
2.  To determine if the party accepts/adopts and/or is prepared to be bound by specific testimony of fact witnesses who have been deposed on subjects that any party chooses to examine another party upon or, if not, if there is other "evidence/facts" that will be relied on at trial ("door closing"); and
3.  Examining on positions/assertions in pleadings.

While not required to anticipate every question that may be asked under items 2 and 3, the representative parties will be expected to have reasonably anticipated other topics under these categories and be prepared to answer (or adopt their counsel's answer if they do not have the facts and information and counsel does) at the examination. If not reasonably anticipated or the complete factual basis is not available at the examination, to be provided by way of undertaking within the two week period in the protocol.

To the extent there may be different approaches taken to the subjects to be designated this Friday (described in item #1 above) there is a mechanism for dealing with those through the prescribed objection procedure. However, we believe that it is in all Parties' interests to try to work out any differences in the approach to these designations before we exchange them on Friday, rather than through the objection and meet and confer process afterwards (which will all have to take place next week). Thus, it would be useful to know if others are in agreement with what we have described and proposed **(particularly the part in bold in item #1 above)** and/or if others have different approaches to this in mind that we might all usefully consider before Friday's deadline.

To the extent there are any differences in the approach to the rest of the matters noted in items 2 and 3 (or a view that there are other matters not noted above that may be properly addressed on the representative party examinations) again we think it would be preferable to work those out before hand.  If we have feedback this week from all parties this may be a useful item to add to the meet and confer agenda for next week.

We look forward to any comments/suggestions that others may have and would encourage you to provide those relating to item #1 by close of business on Wednesday December 11, 2013 and any others in relation to items #2 and #3 by close of business on Thursday December 12.

If you would prefer to discuss any aspect of this please fee free to contact us so we can set up a convenient time to speak.

Jessica Kimmel
**GOODMANS LLP**
416-597-4219

---

˙  ˙˙ Attention ˙˙˙˙

This communication is intended solely for the named addressee(s) and may contain information that is privileged, confidential, protected or otherwise exempt from disclosure  No waiver of confidence, privilege, protection or otherwise is made  If you are not the intended recipient of this communication, please advise us immediately and delete this email without reading  copying or forwarding it to anyone

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the
intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and
its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

# APPENDIX J

## DECEMBER 19 PROPOSAL



## Dhillon, Kiran

| | |
|---|---|
| **From:** | Stam, Jennifer |
| **Sent:** | January-03-14 10:39 AM |
| **To:** | Dhillon, Kiran |
| **Subject:** | FW: Nortel: Representative Witness Depositions |

**From:** Stam, Jennifer
**Sent:** December-19-13 4:52 PM
**To:** (Akin Gump) Abid Qureshi; (Akin Gump) Brad M. Kahn; (Akin Gump) Christine Doniak; (Akin Gump) David Botter; (Akin Gump) Fred Hodara; (Akin Gump) Jackie Yecies; (Akin Gump) Robert Johnson ; (Akin Gump) Sunny Gulati; (Allen & Overy) Daniel Guyder; (Allen & Overy) Jonathan Cho; (Allen & Overy) Joseph Badtke-Berkow; (Allen & Overy) Ken Coleman; (Allen & Overy) Laura Hall; (Allen & Overy) Nicolette Ward; (Allen & Overy) Paul Keller; (Ashurst) Angela Pearson; (Ashurst) Antonia Croke; (Bayard) Charlene D. Davis; (Bayard) Justin Alberto; (Bennett Jones ) Jonathan Bell; (Bennett Jones) Gavin Finlayson; (Bennett Jones) Kevin Zych; (Bennett Jones) Richard Orzy; (Bennett Jones) Richard Swan; (Bennett Jones) Sean Zweig; (Borden) Edmond Lamek; (Borden) James Szumski; (Buchanan Ingersoll) Kathleen Murphy; (Buchanan Ingersoll) Mary Caloway; (Cassels) Bill Burden; (Cassels) Bruce Leonard; (Cassels) Christopher Horkins; (Cassels) David S. Ward; (Cassels) Lara Jackson; (CAW) Barry Wadsworth; (CAW) Lewis Gottheil; (Cleary) Dan Queen; (Cleary) Darryl Stein; (Cleary) Howard Zelbo; (Cleary) Jacqueline Moessner; (Cleary) James Bromley; (Cleary) Jeffrey Rosenthal; (Cleary) Jodi Erickson; (Cleary) Lauren Peacock; (Cleary) Lisa Schweitzer; (Cleary) Marla Decker; (Cleary) Neil Forrest; (Davies Ward) James Doris; (Davies Ward) Louis Sarabia; (Davies Ward) Robin Schwill; (Davies Ward) Sean Campbell; (Dentons) Barbara Grossman; (Dentons) Michael Wunder; (Dentons) Ryan Jacobs; (Dentons) Shayne Kukulowicz; (DLA Piper) Richard Hans; (DLA Piper) Farah Lisa Whitley-Sebti; (DLA Piper) Jason Gerstein; (DLA Piper) Selinda Melnik; (DLA Piper) Timothy Hoeffner; (E&Y Monitor; (Goodmans) Alan Mark; (Goodmans) Ben Zarnett; (Goodmans) Chris Armstrong; (Goodmans) Fred Myers; (Goodmans) Jay Carfagnini; (Goodmans) Jessica Kimmel; (Goodmans) Joseph Pasquariello; (Goodmans) Peter Ruby; (Gowlings) Derrick Tay; (Gowlings) Jennifer Stam; (Heenan) John Salmas; (Heenan) Kenneth Kraft; (Heenan) Sara-Ann Van Allen; (Hogan Lovells) Angela Dimsdale Gill; (Hogan Lovells) David Graves; (Hogan Lovells) John Tillman; (Hogan Lovells) Katherine Tallett-Williams; (Hogan Lovells) Matthew Bullen; (Hughes Hubbard) Charles Huberty; (Hughes Hubbard) Derek Adler; (Hughes Hubbard) Fara Tabatabai; (Hughes Hubbard) Neil Oxford; (Katten) Craig Barbarosh; (Katten) David Crichlow; (Katten) Karen Dine; (Koskie) Ari Kaplan; (Koskie) Barbara Walancik; (Koskie) Mark Zigler; (Koskie) Susan Philpott; (Latham & Watkins) Michael Riela; (Lax O'Sullivan) Matthew Gottlieb; (Lax O'Sullivan) Paul Michell; (Lax O'Sullivan) Tracy Wynne; (McCarthy) Barbara Boake; (McCarthy) Byron Shaw; (McCarthy) Elder Marques; (McCarthy) James Gage; (McCarthy) Kelly Peters; (McCarthy) Paul Steep; (McCarthy) Sharon Kour; (McMillan) Sheryl Seigel; (Milbank) Albert Pisa; (Milbank) Andrew LeBlanc; (Milbank) Atara Miller; (Milbank) Gabrielle Ruha; (Milbank) Jennifer Harris; (Milbank) Michael Hirschfeld; (Milbank) Nick Bassett; (Milbank) Rachel Pojunas; (Milbank) Samir Vora; (Milbank) Thomas Kreller; (Milbank) Tom Matz; (Morris Nichols) Annie Cordo; (Morris Nichols) Derek Abbott; (Nelligan) Ainslie Benedict; (Nelligan) Christpher Rootham; (Nelligan) Janice Payne; (Nelligan) Steven Levitt; (Norton Rose) Michael Lang; (Osler) Adam Hirsh; (Osler) Alexander Cobb; (Osler) Betsy Putnam; (Osler) Edward Sellers; (Osler) Lyndon Barnes; (Paliare) Jacqueline Cummins; (Paliare) Karen Jones; (Paliare) Ken Rosenberg; (Paliare) Lily Harmer; (Paliare) Max Starnino; (Paliare) Michelle Jackson; (Paliare) Tina Lie; (Patterson) Daniel Lowenthal; (Richards Layton) Christopher Samis; (Shibley) Arthur Jacques; (Shibley) Thomas McRae; (Thornton Grout) D.J. Miller; (Thornton Grout) John Finnigan; (Thornton Grout) Michael Barrack; (Thronton Grout) Andrea McEwan; (Thronton Grout) Rebecca Lewis; (Torys) Adam Slavens; (Torys) Andrew Gray; (Torys) Scott Bomhof; (Torys) Sheila Block; (Torys) Tony DeMarinis; (Willkie Farr) Andrew Hanrahan; (Willkie Farr) Brian O'Connor; (Willkie Farr) Sameer Advani; (Young Conaway) Ed Harron; (Young Conaway) John Dorsey
**Cc:** Anderson, Michel
**Subject:** Nortel: Representative Witness Depositions

The Monitor and the Canadian Debtors do not agree with the position that the representative party examinations should be dispensed with in their entirety. We understand that there is an objection to the extent of information that a given representative might have to absorb and come prepared to address based on the subjects that we designated. While we remain of the view that the designated subject areas are entirely appropriate for purposes of discovery/representative party examinations under both Ontario and US procedure, in order to address that objection so that we obtain meaningful answers in the available time, the Monitor and Canadian Debtors would be prepared to

184

agree to cap the number of subject areas that would be dealt with through the representative party examinations in January in advance of the trial briefing process (we are thinking along the lines of capping for this purpose our designated subject areas to a maximum of 5 for allocation and 5 for claims), some or all of which we would be prepared to consider dealing with in writing (with the specific questions to be formalized by an agreed upon date) on the condition that we have agreement that the responses will be provided by January 17, 2014. The Monitor and Canadian Debtors would similarly be prepared to answer questions in writing within your designated subject areas (subject to the noted objections which we remain willing to meet and confer with you about). This proposal assumes that the identification of facts and documents for the balance of our designated subject areas will be addressed through a trial briefing procedure that would entail exhibits, affidavits, reply affidavits and deposition designations being exchanged in sequence and concluded in early May in advance of the May 12, 2014 trial commencement date. If this is an agreeable way of proceeding please confirm and we will identify the questions that would remain designated from our lists for this purpose. All rights continue to be reserved.

Jennifer Stam
Partner
T 415-362-5697
jennifer.stam@gowlings.com



Gowling Lafleur Henderson LLP
Lawyers • Patent and Trade-mark Agents
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, Ontario
M5X 1G5 Canada
T 416-862-7525  F 416-862-7661
gowlings.com



Best
Employers

# APPENDIX K

## DECEMBER 21 EMAIL

185

## Dhillon, Kiran

| From: | Stam, Jennifer |
|---|---|
| Sent: | January-03-14 10:39 AM |
| To: | Dhillon, Kiran |
| Subject: | FW: Nortel: Representative Witness Depositions |
| Attachments: | EMEA Debtors Topics for the Canadian Debtors-TOR_LAW-8323829-v2.DOC; US Debtors Topics for Cdn Debtors (revised)-TOR_LAW-8324669-v1.DOC; Blackline (US Debtors Topics for Cdn Debtors)-TOR_LAW-8324701-v1.DOC; Blackline (EMEA Debtors Topics to Cdn Debtors)-TOR_LAW-8324702-v1.DOC |

**From:** Stam, Jennifer
**Sent:** December-21-13 10:53 PM
**To:** Stam, Jennifer; '(Akin Gump) Abid Qureshi'; '(Akin Gump) Brad M. Kahn'; '(Akin Gump) Christine Doniak'; '(Akin Gump) David Botter'; '(Akin Gump) Fred Hodara'; '(Akin Gump) Jackie Yecies'; '(Akin Gump) Robert Johnson '; '(Akin Gump) Sunny Gulati'; '(Allen & Overy) Daniel Guyder'; '(Allen & Overy) Jonathan Cho'; '(Allen & Overy) Joseph Badtke-Berkow'; '(Allen & Overy) Ken Coleman'; '(Allen & Overy) Laura Hall'; '(Allen & Overy) Nicolette Ward'; '(Allen & Overy) Paul Keller'; '(Ashurst) Angela Pearson'; '(Ashurst) Antonia Croke'; '(Bayard) Charlene D. Davis'; '(Bayard) Justin Alberto'; '(Bennett Jones ) Jonathan Bell'; '(Bennett Jones) Gavin Finlayson'; '(Bennett Jones) Kevin Zych'; '(Bennett Jones) Richard Orzy'; '(Bennett Jones) Richard Swan'; '(Bennett Jones) Sean Zweig'; '(Borden) Edmond Lamek'; '(Borden) James Szumski'; '(Buchanan Ingersoll) Kathleen Murphy'; '(Buchanan Ingersoll) Mary Caloway'; '(Cassels) Bill Burden'; '(Cassels) Bruce Leonard'; '(Cassels) Christopher Horkins'; '(Cassels) David S. Ward'; '(Cassels) Lara Jackson'; '(CAW) Barry Wadsworth'; '(CAW) Lewis Gottheil'; '(Cleary) Dan Queen'; '(Cleary) Darryl Stein'; '(Cleary) Howard Zelbo'; '(Cleary) Jacqueline Moessner'; '(Cleary) James Bromley'; '(Cleary) Jeffrey Rosenthal'; '(Cleary) Jodi Erickson'; '(Cleary) Lauren Peacock'; '(Cleary) Lisa Schweitzer'; '(Cleary) Marla Decker'; '(Cleary) Neil Forrest'; '(Davies Ward) James Doris'; '(Davies Ward) Louis Sarabia'; '(Davies Ward) Robin Schwill'; '(Davies Ward) Sean Campbell'; '(Dentons) Barbara Grossman'; '(Dentons) Michael Wunder'; '(Dentons) Ryan Jacobs'; '(Dentons) Shayne Kukulowicz'; '(DLA Piper) Richard Hans'; '(DLA Piper) Farah Lisa Whitley-Sebti'; '(DLA Piper) Jason Gerstein'; '(DLA Piper) Selinda Melnik'; '(DLA Piper) Timothy Hoeffner'; '(E&Y) Monitor'; '(Goodmans) Alan Mark'; '(Goodmans) Ben Zarnett'; '(Goodmans) Chris Armstrong'; '(Goodmans) Fred Myers'; '(Goodmans) Jay Carfagnini'; '(Goodmans) Jessica Kimmel'; '(Goodmans) Joseph Pasquariello'; '(Goodmans) Peter Ruby'; Tay, Derrick; Stam, Jennifer; '(Heenan) John Salmas'; '(Heenan) Kenneth Kraft'; '(Heenan) Sara-Ann Van Allen'; '(Hogan Lovells) Angela Dimsdale Gill'; '(Hogan Lovells) David Graves'; '(Hogan Lovells) John Tillman'; '(Hogan Lovells) Katherine Tallett-Williams'; '(Hogan Lovells) Matthew Bullen'; '(Hughes Hubbard) Charles Huberty'; '(Hughes Hubbard) Derek Adler'; '(Hughes Hubbard) Fara Tabatabai'; '(Hughes Hubbard) Neil Oxford'; '(Katten) Craig Barbarosh'; '(Katten) David Crichlow'; '(Katten) Karen Dine'; '(Koskie) Ari Kaplan'; '(Koskie) Barbara Walancik'; '(Koskie) Mark Zigler'; '(Koskie) Susan Philpott'; '(Latham & Watkins) Michael Riela'; '(Lax O'Sullivan) Matthew Gottlieb'; '(Lax O'Sullivan) Paul Michell'; '(Lax O'Sullivan) Tracy Wynne'; '(McCarthy) Barbara Boake'; '(McCarthy) Byron Shaw'; '(McCarthy) Elder Marques'; '(McCarthy) James Gage'; '(McCarthy) Kelly Peters'; '(McCarthy) Paul Steep'; '(McCarthy) Sharon Kour'; '(McMillan) Sheryl Seigel'; '(Milbank) Albert Pisa'; '(Milbank) Andrew LeBlanc'; '(Milbank) Atara Miller'; '(Milbank) Gabrielle Ruha'; '(Milbank) Jennifer Harris'; '(Milbank) Michael Hirschfeld'; '(Milbank) Nick Bassett'; '(Milbank) Rachel Pojunas'; '(Milbank) Samir Vora'; '(Milbank) Thomas Kreller'; '(Milbank) Tom Matz'; '(Morris Nichols) Annie Cordo'; '(Morris Nichols) Derek Abbott'; '(Nelligan) Ainslie Benedict'; '(Nelligan) Christpher Rootham'; '(Nelligan) Janice Payne'; '(Nelligan) Steven Levitt'; '(Norton Rose) Michael Lang'; '(Osler) Adam Hirsh'; '(Osler) Alexander Cobb'; '(Osler) Betsy Putnam'; '(Osler) Edward Sellers'; '(Osler) Lyndon Barnes'; '(Paliare) Jacqueline Cummins'; '(Paliare) Karen Jones'; '(Paliare) Ken Rosenberg'; '(Paliare) Lily Harmer'; '(Paliare) Max Starnino'; '(Paliare) Michelle Jackson'; '(Paliare) Tina Lie'; '(Patterson) Daniel Lowenthal'; '(Richards Layton) Christopher Samis'; '(Shibley) Arthur Jacques'; '(Shibley) Thomas McRae'; '(Thornton Grout) D.J. Miller'; '(Thornton Grout) John Finnigan'; '(Thornton Grout) Michael Barrack'; '(Thronton Grout) Andrea McEwan'; '(Thronton Grout) Rebecca Lewis'; '(Torys) Adam Slavens'; '(Torys) Andrew Gray'; '(Torys) Scott Bomhof'; '(Torys) Sheila Block'; '(Torys) Tony DeMarinis'; '(Willkie Farr) Andrew Hanrahan'; '(Willkie Farr) Brian O'Connor'; '(Willkie Farr) Sameer Advani'; '(Young Conaway) Ed Harron'; '(Young Conaway) John Dorsey'
**Cc:** 'Anderson, Michel'
**Subject:** RE: Nortel: Representative Witness Depositions

Further to the email sent on behalf of the Canadian Debtors and the Monitor at 4:54 pm on Thursday December 19, 2013 following our meet and confer earlier that day, we wish to delineate the particular topics for each Core Party for

186

whom we have designated representative party topics which ones we would include in the cap of 5 about which we would like to be able to ask questions in the time frame contemplated by the Amended Discovery Plan (with the disclosures about the remaining topics to be covered in the trial briefing process). The US Debtors asked and were provided with their topics previously but we are including them again in this listing for completeness (we note that no others have asked what the topics would be).

US Debtors on allocation : 1, 4, 9, 10, 13 [Note these topics do not include those that relate to the separate allocation theory of the CCC]
Bondholders and UCC on allocation: same topics as for US Debtors –parties to advise of any additional or different responses that they have to the responses of the US Debtors [Note these topics do not include those that relate to the separate allocation theory of the CCC]
All EMEA Debtors on allocation: 1, 3, 4, 6, 7  (or corresponding questions if numbering is different for any particular claimant)
Northern Ireland, NNOCL, South Africa: 1,2,3, 4, 5
All EMEA Debtors (except NNSA) on claims: 8,9,21,23,25
NNSA on claims: 8,20,22,24,30
UKPC: 1, 2, 5, 6, 10

For ease of reference, we also attach two schedules which re-state the topics designated by the US Debtors and EMEA Debtors for the Canadian Debtors so as to reflect the objections that we delivered in respect of those topics and sets forth any concerns we have about the clarity and/or scope of what may be asked about.

**From:** Stam, Jennifer
**Sent:** December-19-13 4:52 PM
**To:** (Akin Gump) Abid Qureshi; (Akin Gump) Brad M. Kahn; (Akin Gump) Christine Doniak; (Akin Gump) David Botter; (Akin Gump) Fred Hodara; (Akin Gump) Jackie Yecies; (Akin Gump) Robert Johnson ; (Akin Gump) Sunny Gulati; (Allen & Overy) Daniel Guyder; (Allen & Overy) Jonathan Cho; (Allen & Overy) Joseph Badtke-Berkow; (Allen & Overy) Ken Coleman; (Allen & Overy) Laura Hall; (Allen & Overy) Nicolette Ward; (Allen & Overy) Paul Keller; (Ashurst) Angela Pearson; (Ashurst) Antonia Croke; (Bayard) Charlene D. Davis; (Bayard) Justin Alberto; (Bennett Jones ) Jonathan Bell; (Bennett Jones) Gavin Finlayson; (Bennett Jones) Kevin Zych; (Bennett Jones) Richard Orzy; (Bennett Jones) Richard Swan; (Bennett Jones) Sean Zweig; (Borden) Edmond Lamek; (Borden) James Szumski; (Buchanan Ingersoll) Kathleen Murphy; (Buchanan Ingersoll) Mary Caloway; (Cassels) Bill Burden; (Cassels) Bruce Leonard; (Cassels) Christopher Horkins; (Cassels) David S. Ward; (Cassels) Lara Jackson; (CAW) Barry Wadsworth; (CAW) Lewis Gottheil; (Cleary) Dan Queen; (Cleary) Darryl Stein; (Cleary) Howard Zelbo; (Cleary) Jacqueline Moessner; (Cleary) James Bromley; (Cleary) Jeffrey Rosenthal; (Cleary) Jodi Erickson; (Cleary) Lauren Peacock; (Cleary) Lisa Schweitzer; (Cleary) Marla Decker; (Cleary) Neil Forrest; (Davies Ward) James Doris; (Davies Ward) Louis Sarabia; (Davies Ward) Robin Schwill; (Davies Ward) Sean Campbell; (Dentons) Barbara Grossman; (Dentons) Michael Wunder; (Dentons) Ryan Jacobs; (Dentons) Shayne Kukulowicz; (DLA Piper) Richard Hans; (DLA Piper) Farah Lisa Whitley-Sebti; (DLA Piper) Jason Gerstein; (DLA Piper) Selinda Melnik; (DLA Piper) Timothy Hoeffner; (E&Y) Monitor; (Goodmans) Alan Mark; (Goodmans) Ben Zarnett; (Goodmans) Chris Armstrong; (Goodmans) Fred Myers; (Goodmans) Jay Carfagnini; (Goodmans) Jessica Kimmel; (Goodmans) Joseph Pasquariello; (Goodmans) Peter Ruby; (Gowlings) Derrick Tay; (Gowlings) Jennifer Stam; (Heenan) John Salmas; (Heenan) Kenneth Kraft; (Heenan) Sara-Ann Van Allen; (Hogan Lovells) Angela Dimsdale Gill; (Hogan Lovells) David Graves; (Hogan Lovells) John Tillman; (Hogan Lovells) Katherine Tallett-Williams; (Hogan Lovells) Matthew Bullen; (Hughes Hubbard) Charles Huberty; (Hughes Hubbard) Derek Adler; (Hughes Hubbard) Fara Tabatabai; (Hughes Hubbard) Neil Oxford; (Katten) Craig Barbarosh; (Katten) David Crichlow; (Katten) Karen Dine; (Koskie) Ari Kaplan; (Koskie) Barbara Walancik; (Koskie) Mark Zigler; (Koskie) Susan Philpott; (Latham & Watkins) Michael Riela; (Lax O'Sullivan) Matthew Gottlieb; (Lax O'Sullivan) Paul Michell; (Lax O'Sullivan) Tracy Wynne; (McCarthy) Barbara Boake; (McCarthy) Byron Shaw; (McCarthy) Elder Marques; (McCarthy) James Gage; (McCarthy) Kelly Peters; (McCarthy) Paul Steep; (McCarthy) Sharon Kour; (McMillan) Sheryl Seigel; (Milbank) Albert Pisa; (Milbank) Andrew LeBlanc; (Milbank) Atara Miller; (Milbank) Gabrielle Ruha; (Milbank) Jennifer Harris; (Milbank) Michael Hirschfeld; (Milbank) Nick Bassett; (Milbank) Rachel Pojunas; (Milbank) Samir Vora; (Milbank) Thomas Kreller; (Milbank) Tom Matz; (Morris Nichols) Annie Cordo; (Morris Nichols) Derek Abbott; (Nelligan) Ainslie Benedict; (Nelligan) Christpher Rootham; (Nelligan) Janice Payne; (Nelligan) Steven Levitt; (Norton Rose) Michael Lang; (Osler) Adam Hirsh; (Osler) Alexander Cobb; (Osler) Betsy Putnam; (Osler) Edward Sellers; (Osler) Lyndon Barnes; (Paliare) Jacqueline Cummins; (Paliare) Karen Jones; (Paliare) Ken

Rosenberg; (Paliare) Lily Harmer; (Paliare) Max Starnino; (Paliare) Michelle Jackson; (Paliare) Tina Lie; (Patterson) Daniel Lowenthal; (Richards Layton) Christopher Samis; (Shibley) Arthur Jacques; (Shibley) Thomas McRae; (Thornton Grout) D.J. Miller; (Thornton Grout) John Finnigan; (Thornton Grout) Michael Barrack; (Thronton Grout) Andrea McEwan; (Thronton Grout) Rebecca Lewis; (Torys) Adam Slavens; (Torys) Andrew Gray; (Torys) Scott Bomhof; (Torys) Sheila Block; (Torys) Tony DeMarinis; (Willkie Farr) Andrew Hanrahan; (Willkie Farr) Brian O'Connor; (Willkie Farr) Sameer Advani; (Young Conaway) Ed Harron; (Young Conaway) John Dorsey
**Cc:** Anderson, Michel
**Subject:** Nortel: Representative Witness Depositions

The Monitor and the Canadian Debtors do not agree with the position that the representative party examinations should be dispensed with in their entirety. We understand that there is an objection to the extent of information that a given representative might have to absorb and come prepared to address based on the subjects that we designated. While we remain of the view that the designated subject areas are entirely appropriate for purposes of discovery/representative party examinations under both Ontario and US procedure, in order to address that objection so that we obtain meaningful answers in the available time, the Monitor and Canadian Debtors would be prepared to agree to cap the number of subject areas that would be dealt with through the representative party examinations in January in advance of the trial briefing process (we are thinking along the lines of capping for this purpose our designated subject areas to a maximum of 5 for allocation and 5 for claims), some or all of which we would be prepared to consider dealing with in writing (with the specific questions to be formalized by an agreed upon date) on the condition that we have agreement that the responses will be provided by January 17, 2014. The Monitor and Canadian Debtors would similarly be prepared to answer questions in writing within your designated subject areas (subject to the noted objections which we remain willing to meet and confer with you about). This proposal assumes that the identification of facts and documents for the balance of our designated subject areas will be addressed through a trial briefing procedure that would entail exhibits, affidavits, reply affidavits and deposition designations being exchanged in sequence and concluded in early May in advance of the May 12, 2014 trial commencement date. If this is an agreeable way of proceeding please confirm and we will identify the questions that would remain designated from our lists for this purpose. All rights continue to be reserved.

**Jennifer Stam**
Partner
1 416-862-5697
jennifer.stam@gowlings.com



---

**Gowling Lafleur Henderson LLP**
**Lawyers • Patent and Trade-mark Agents**
1 First Canadian Place
100 King Street West  Suite 1600
Toronto, Ontario
M5X 1G5 Canada
T 416-862-7525  F 416-862-7661
**gowlings.com**



188

*December 21, 2013*

**EMEA Debtors Topics for the Canadian Debtors**

The Canadian Debtors[1] shall respond to specific questions identified on the following topics provided that with respect to all such topics, the Canadian Debtors shall only be required to: (a) review document productions made as of December 20, 2013; (b) review deposition testimony made as of December 20, 2013; and (c) make reasonable inquiries of current and former employees of the Canadian Debtors. Further, the Canadian Debtors shall not be required to respond to the extent that response would require disclosure of information covered by attorney-client privilege, work product immunity or any other applicable privileges and immunities.

1. The circumstances surrounding the partial repayment in or around February 2008 of the NNL-NNSA subordinated loan.

2. The circumstances surrounding the negotiation and drafting of the Insolvency Guarantee dated December 21, 2007 and provided by NNL to the Nortel Networks UK Pension Trust Limited, including the exclusion of administration from the definition of "Insolvency Event" within that document.

3. The conception, proposal, negotiation, and documentation of the Third Addendum to the MRDA and Schedule A thereto.

4. The negotiation, reporting, and purported application to the EMEA Entities of the settlement(s) between NNL and Canada Revenue Agency that resulted in a $2 billion adjustment in favor of NNI in or around January 2010.

5. Post-petition models for valuing or assessing the potential revenues from (a) the intellectual property assets sold in the Residual Patents Sale or any portion thereof, or (b) a Residual IP Co., which were prepared by, with, or at the request of Nortel, the Global IP Law Group, or Lazard. **[Note to the EMEA Debtors: we will need further clarification about what is intended about on this topic beyond what was produced as part of the Global IP or Lazard productions before the Canadian Debtors can determine whether they can respond to this topic.]**

---

[1] The "Canadian Debtors" are Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

*December 21, 2013*

## US Debtors' Topics for the Canadian Debtors

The Canadian Debtors[1] shall respond to specific questions identified on the following topics provided that with respect to all such topics, the Canadian Debtors shall only be required to: (a) review document productions made as of December 20, 2013; (b) review deposition testimony made as of December 20, 2013; and (c) make reasonable inquiries of current and former employees of the Canadian Debtors. Further, the Canadian Debtors shall not be required to respond to the extent that response would require disclosure of information covered by attorney-client privilege, work product immunity or any other applicable privileges and immunities.

1.    Statements made by any Canadian Debtor or the Monitor, to government authorities (including tax authorities), debt-rating agencies, underwriters, or any entity evaluating the credit worthiness of NNL and pre-petition and post-petition potential asset purchasers regarding ownership (including with respect to economic, beneficial and/or legal ownership) of intellectual property or intellectual property license rights of any participant in the Master Research & Development Agreement.

2.    Third-party licensing by any Nortel entity of its patents (other than commercial licenses granted in the ordinary course of business), including with respect to which Nortel entity had the right to and did engage in such licensing activity and which Nortel entity recognized revenue on royalty payments other than any patent license agreements that were produced or disclosed to potential purchasers during the post-petition sale transactions for the lines of business and residual patents. **[Note to the US Debtors: The additional language is intended to avoid the re-production of all of the license agreements which were produced in the sales data rooms. However, we will still need to understand what is intended by this topic before the Canadian Debtors can determine whether they will be able to respond to this topic.]**

3.    The practice of prosecuting or defending patents in litigation, including decisions with respect to which Nortel entities should participate and/or bear financial risk with respect to the litigation.

4.    Internal valuations of Nortel intellectual property prepared after 2001 by estate, by business line in whole or in part and the methods used in such valuations, whether conducted by third parties or by Nortel personnel other than in connection with divestitures, acquisitions, joint ventures, or other transactions with a value of less than US$100 million.

---

[1] The "Canadian Debtors" are Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

**US Debtors' Topics for the Canadian Debtors**

The Canadian Debtors[1] shall respond to specific questions identified on the following topics provided that with respect to all such topics, the Canadian Debtors shall only be required to: (a) review document productions made as of December 20, 2013; (b) review deposition testimony made as of December 20, 2013; and (c) make reasonable inquiries of current and former employees of the Canadian Debtors. Further, the Canadian Debtors shall not be required to respond to the extent that response would require disclosure of information covered by attorney-client privilege, work product immunity or any other applicable privileges and immunities.

1.  Statements made by ~~Nortel Networks Limited ("NNL") or any affiliated entity or any employee, advisor or representative thereof (including, but not limited to, the Monitor, E&Y U.S. and E&Y Canada, Horst Frisch and Oslers) to any third party regarding the Master Research and Development Agreement ("MRDA"), transfer pricing, ownership (including with respect to economic, beneficial and/or legal ownership) of intellectual property or intellectual property license rights of any MRDA participant, including but not limited to, government authorities,~~any Canadian Debtor or the Monitor, to government authorities (including tax authorities), debt-rating agencies, underwriters, or any entity evaluating the credit- worthiness of NNL~~,~~ and pre-petition and post-petition potential asset purchasers regarding ownership (including with respect to economic, beneficial and/or legal ownership) of intellectual property or intellectual property license rights of any participant in the Master Research & Development Agreement.

2.  Third-party licensing by any Nortel entity of its ~~intellectual property~~patents (other than commercial licenses granted in the ordinary course of business), including with respect to which Nortel entity had the right to and did engage in such licensing activity and which Nortel entity recognized revenue on royalty payments~~.~~ other than any patent license agreements that were produced or disclosed to potential purchasers during the post-petition sale transactions for the lines of business and residual patents. **[Note to the US Debtors: The additional language is intended to avoid the re-production of all of the license agreements which were produced in the sales data rooms. However, we will still need to understand what is intended by this topic before the Canadian Debtors can determine whether they will be able to respond to this topic.]**

3.  The practice of prosecuting or defending patents in litigation, including decisions with respect to which Nortel entities should participate and/or bear financial risk with respect to the litigation.

4.  Internal valuations of Nortel intellectual property prepared after 2001 by estate, by business line in whole or in part and the methods used in such valuations, whether conducted by third parties or by Nortel personnel~~.~~ other than in connection with

---

[1] The "Canadian Debtors" are Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

divestitures, acquisitions, joint ventures, or other transactions with a value of less than US$100 million.



**EMEA Debtors Topics for the Canadian Debtors**

The Canadian Debtors[1] shall respond to specific questions identified on the following topics provided that with respect to all such topics, the Canadian Debtors shall only be required to: (a) review document productions made as of December 20, 2013; (b) review deposition testimony made as of December 20, 2013; and (c) make reasonable inquiries of current and former employees of the Canadian Debtors. Further, the Canadian Debtors shall not be required to respond to the extent that response would require disclosure of information covered by attorney-client privilege, work product immunity or any other applicable privileges and immunities.

1. The circumstances surrounding the partial repayment in or around February 2008 of the NNL-NNSA subordinated loan.

2. The circumstances surrounding the negotiation and drafting of the Insolvency Guarantee dated December 21, 2007 and provided by NNL to the Nortel Networks UK Pension Trust Limited, including the exclusion of administration from the definition of "Insolvency Event" within that document.

3. The conception, proposal, negotiation, and documentation of the Third Addendum to the MRDA and Schedule A thereto.

4. The negotiation, reporting, and purported application to the EMEA Entities of the settlement(s) between ~~Nortel and the Internal Revenue Service~~NNL and Canada Revenue Agency that resulted in a $2 billion adjustment in favor of NNI in or around January 2010.

5. Post-petition models for valuing or assessing the potential revenues from (a) the intellectual property assets sold in the Residual Patents Sale or any portion thereof, or (b) a Residual IP Co., which were prepared by, with, or at the request of Nortel, the Global IP Law Group, or Lazard. **[Note to the EMEA Debtors: we will need further clarification about what is intended about on this topic beyond what was produced as part of the Global IP or Lazard productions before the Canadian Debtors can determine whether they can respond to this topic.]**

---

[1] The "Canadian Debtors" are Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

# APPENDIX L

# DECEMBER 22, 2013 LETTER

193

# Buchanan Ingersoll &. Rooney PC

Attorneys & Government Relations Professionals

1105 North Market Street
Suite 1900
Wilmington, DE  19801-1228

**Kathleen A. Murphy**                    T 302 552 4200
302 552 4214                              F 302 552 4295
kathleen.murphy@bipc.com                  www.buchananingersoll.com

December 22, 2013

The Honorable Kevin Gross
United States Bankruptcy Court
District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

Re:  *In re Nortel Networks, Inc., et al.*, Case No. 09-10138 (KG)

Dear Chief Judge Gross:

We write on behalf of the Monitor and the Canadian Debtors in response to the letter filed with this Court by counsel to the US Debtors on December 20, 2013 [Dkt. No. 12688], seeking relief to dispense with the "representative witness" stage of the discovery plan and litigation schedule which has been approved by this Court and Justice Morawetz, and in response to each of the letters in support thereof filed by counsel to the Joint Administrators of the EMEA Debtors [Dkt. No. 12693] and the Official Committee of Unsecured Creditors [Dkt. No. 12694].

*Overview of Position*

Notwithstanding (a) the extensive negotiations and prior agreements among the Core Parties regarding the need for the representative party discovery (b) the positions asserted in these proceedings by the US Debtors regarding their entitlement to such representative party discovery, at least while the EMEA Debtors were resisting such representative party discovery and (c) this Court and the Canadian Court having sanctioned the use of representative party discovery as an integral stage of discovery before any trial in this matter, the US and EMEA Debtors seek to change the existing litigation timetable and discovery plan which form part of scheduling orders of this Court and the Canadian Court (amended as recently as a month ago on consent to provide for the completion of the representative party discovery by January 17, 2014) to now preclude the Monitor and Canadian Debtors from engaging in any representative party discovery on any topic.  Despite the Canadian Debtors' and the Monitor's attempts to present proposals to reach agreement on a further narrowed scope for representative party discovery, including substituting live witness testimony with written interrogatories on a more limited number of the designated topics (with the disclosures relating to the balance of the topics being deferred to the expert reports and trial briefing process), the US Debtors and the other supporting parties now seek to dispense with the use of *any* representative witnesses, all under the guise of conserving resources based on their

\l9\u

December 22, 2013
Page - 2 -

assertion that the other discovery and witness testimony completed to date is sufficient *for all parties* and all purposes for litigating and resolving the claims and allocation disputes.

From the commencement of the discovery process, it has been contemplated that there would be representative party discovery as an integral part of the discovery process.[1] The basic right to engage in such representative party discovery has not been in dispute and it has consistently been something that the Canadian parties (including the Monitor and Canadian Debtors) have insisted upon.[2] Each time the litigation timetable and discovery plan was amended, representative party discovery was preserved. The extension of the litigation schedule submitted by joint motion of all Core Parties (except the Bondholders) on November 11, 2013 and approved by the Courts was sought for the very purpose of allowing an appropriate amount of time to prepare for the representative party discovery following the extended date for the completion of fact depositions and contemplated eight days of representative party discovery. The Canadian Debtors, the Monitor and other parties in interest have relied on the Courts' orders, and their ability at this stage in the agreed, court-approved schedule, to engage in representative party discovery.

For the avoidance of doubt, the Canadian Debtors and the Monitor have been continually mindful of the overall need to ensure efficiency and avoid duplication of costs as it relates to this trial process generally. Indeed, the Canadian Debtors and Monitor have made proposals to the US Debtors and others to narrow the scope of the representative party discovery and the overall costs to the estates, including re-formulating the topics that they themselves were served with in order to ensure that they are clear and capable of being addressed in a meaningful way.[3] Most recently, for example, the Monitor and Canadian Debtors offered to reduce the total number of topics to five topics on allocation and five on the claims asserted by the EMEA Debtors against the Canadian estates and to allow the parties to respond to questions by way of written responses, which would be submitted by January 17, 2014. The other parties, in contrast, have not articulated the basis for objection to any single topic designated for them (with the time for doing so under the litigation timetable and discovery plan having now passed [4]) and

---

[1]    The discovery process initially encompassed both US Federal Rules of Civil Procedure 30(b)(6) depositions and Ontario Rules of Civil Procedure Rule 31 examinations for discovery, as set forth in section 6 of the Discovery Plan.

[2]    The discovery process under the Ontario rules permits questioning about any matter in issue in the litigation, the scope of which is determined by the submissions/pleadings. The purpose of such discovery is to "obtain factual information/admissions relevant to Allocation . . . or Canadian Claims". *Discovery Plan* [Dkt. No. 10566 at 9]. The representative party discovery was intentionally sequenced to occur after fact witness depositions but before expert reports and submission of fact evidence was to be finalized. The parties agreed to dispense with 30(b)(6) examinations and the notices that had been exchanged which contained hundreds of designated topics by each party under the original discovery protocol and instead to conduct "Ontario style" representative party discovery after the fact depositions so that the information learned in the fact depositions could be taken into account in the representative party discovery.

[3]    Email of December 19, 2013 to the Core Party Service List and follow up email of December 21, 2013 to the Core Party Service List (attached hereto). The proposals are designed to make the completion of the trial evidence (both expert and affiants) more efficient.

[4]    It is noteworthy that:

a) the US Debtors purport to object to the scope of the questions and the total number but neglect to mention that there are 30 or *fewer* topics designated for each representative witness and they are repeated on allocation and on claims – their emphasis on 92 pages of questions is misleading in that most of the pages are

195

December 22, 2013
Page - 3 -

instead take the extraordinary position that because they have determined that they do not need or want to conduct representative party discovery of other parties, that the Canadian Monitor and the Canadian Debtors (and other Canadian interests) should be bound by their determination and deprived of their right to do so. That the US Debtors and other supporting parties have rejected all of these proposals without offering any meaningful alternative casts serious doubts on their stated motivations here simply to ensure efficiency and reduced costs.

The fact is that because the US Debtors and other supporting parties have recently proposed to settle the EMEA Debtors' and UK Pension Claimants claims against the US Debtors, these parties now seek to eliminate altogether the representative party discovery to obtain a strategic advantage in the allocation litigation.  Eliminating representative party discovery will allow these parties maximum flexibility to develop new allocation theories (something expressly contemplated by the proposed settlement agreement) without the opportunity for the Canadian Debtors and the Monitor to obtain essential fact discovery to defend these positions.  As discussed below, granting the request of the US Debtors would deprive the Canadian Debtors, the Monitor and, for that matter, the Courts, the benefit of essential discovery required to analyze and resolve these cross-border disputes over claims and allocation, irrespective of any proposed settlement of the EMEA Debtors' and UK Pension claims against the US Debtors.

### *The Evolution and Preservation of Representative Party Discovery in These Proceedings*

From the commencement of discovery, either Federal Rules of Civil Procedure 30(b)(6) depositions or representative party discovery have been contemplated as an integral part of the process of this litigation

---

repeating the same topics on either allocation or claims for the different parties, including 24 different EMEA entities who have filed claims against the Canadian estate, for many of which there has been little or no opportunity for fact depositions.  It was expressly contemplated that the representative party discovery would take into account testimony covered in the fact depositions and be used to identify the facts or documents pertaining to a particular subject (tied to the pleadings) that a party relies upon not otherwise disclosed in the fact deposition process – now the US Debtors claim that the very process that they agreed to and advocated is too burdensome and offer no alternative;

b) the only purported objection that the EMEA Debtors make in their submission in support of the US Debtors is that they should not have to respond to 561 broad subjects – which are in reality 30 or fewer subjects for each EMEA Debtor that has made a multitude of claims in the Canadian estate and taken an interdependent position on allocation,  and they offer no basis on which they should not be required to disclose the factual and documentary basis upon which they base their assertions – if they are aware of nothing  beyond what has been disclosed through the fact deposition testimony and exhibits then surely it would not impose a disproportionate burden for them to state that on the record particularly given the offer for it to be done in writing; and

c) the UCC in its letter to the Court  in support  of the US Debtors' position [Dkt. No. 12694] purports to object because the topics listed for them (derived from their own submission/ pleading or positions they themselves have adopted) relate to matters that pre-date the UCC's formation and matters that will probably be the subject of expert testimony – if that is their response to the topics designated for them - namely that they have no knowledge of any facts or documents in support of their position on allocation beyond what may be disclosed in the expert reports to be delivered on January 24, 2014 - then the Monitor and Canadian Debtors are entitled to have that on the record and binding, and surely it would not impose a disproportionate burden for them to state that on the record particularly given the offer for it to be done in writing;

December 22, 2013
Page - 4 -

and the basic right to engage in such depositions has not been in dispute. Each time the schedule was amended representative party discovery was contemplated.

Throughout the discovery process, the parties have worked cooperatively to narrow the scope of representative party discovery. Initially, the parties collectively served hundreds of topics for examination under Rule 30(b)(6) of the Federal Rules of Civil Procedure. It was the US Debtors who encouraged the other parties to forego traditional Rule 30(b)(6) depositions in favor of a modified Canadian representative party discovery approach.[5] The fact that the parties ultimately agreed to narrow the depositions from hundreds of topics to eight days of depositions is a significant curtailment in scope and demonstrated the parties' efforts to conduct discovery as efficiently and expediently as possible.

The US Debtors have themselves sought to expand the scope of the representative party discovery. The EMEA Debtors initially contemplated producing one representative witness for all of the EMEA entities making claims against the US estates. The US Debtors strenuously objected and urged this Court to require the EMEA Debtors to provide a representative witness for *each* EMEA entity claimant. Ultimately, the parties reached a compromise position and this Court and the Canadian Court amended the deposition protocol to reflect that the EMEA Debtors were not obliged to designate a different representative witness for each EMEA entity claimant, but that "[n]o specific time limits shall be placed on these Representative Depositions at this time. . . ."[6] This revised language reflected the careful consideration of the parties of the need to strike an appropriate balance between minimizing duplication of efforts and costs and ensuring the parties have the opportunity to engage in meaningful representative party discovery. The agreement amongst the parties, as endorsed by the Courts, to engage in a significantly narrowed version of representative party discovery, should not be eviscerated at this late stage.

Moreover, at the time the most recent joint motion to amend the litigation schedule was made, premised in large part on the need for additional time to prepare for and conduct representative party discovery, the parties were fully aware that the number of fact witness depositions would likely exceed 100 depositions, but at no point did any of the parties moving for the extension suggest that the number of fact depositions completed should foreclose the opportunity for representative party discovery. This Court should not allow the US Debtors to waste the Court and parties' resources by forcing the re-litigation of previously resolved discovery issues, particularly where they jointly proposed the existing schedule to the Court only a little more than a month ago.

---

[5]     Letter to the Honorable Kevin Gross on behalf of the US Debtors [Dkt. No. 11575 at 8]. The US Debtors represented to this Court in this letter that: "[a]t our suggestion, the core parties all agreed to forego traditional Rule 30(b)(6) examinations and instead utilize a modified Canadian representative party discovery approach whereby each party would put a witness for a one or two day examination (parties who did not file a pleading were excepted)." As the US Debtors stated, the only exception to the agreement to engage in party representative party discovery was for those parties that did not file a pleading. This limited exception makes sense and comports with the essential goal of Rule 30(b)(6) depositions: to allow a party to know the basis of the claims made against them before their trial evidence is finalized.

[6]     *Order Resolving Certain Discovery Disputes and Denying Related Relief* [Dkt. No. 11762 at 3].

December 22, 2013
Page - 5 -

The US Debtors have not provided any meaningful explanation for their request to alter the *status quo*. All that has changed since the November 14, 2013 joint motion is that the US Debtors have reached a settlement with the EMEA Debtors and the UK Pension Claimants with respect to the claims those parties have asserted against the US estates.[7] Without making any reference to that fundamental change in circumstances, the US Debtors suggest that the last 35 fact witness depositions were somehow sufficient to alter their position on their own need for representative party discovery, but many of those final depositions involved third parties and the majority of the approximately 105 depositions that have taken place to date have not involved parties whose testimony is binding on the parties. In all of the prior depositions, even those of officers of the parties, the deponents appeared in their individual capacity. In fact, inquiry into the bases for the parties' positions was forestalled—at the deposition of John Ray, the principal officer of the US Debtors, his counsel objected on grounds of privilege to questions relating to the US Debtors' allocation position because "[h]e's not here either as a representative witness, nor is he here to give our legal theories or positions in this case."

### *The Monitor and Canadian Debtors Have Made Reasonable Efforts to Curtail Costs and Streamline the Process*

In the spirit of compromise, on December 19, 2013, following the deadline for objections to the representative party topics, the Monitor and Canadian Debtors offered to further narrow the scope of the representative party discovery with the aim of minimizing any potential burden on the parties and witnesses. The Monitor and Canadian Debtors offered to reduce the total number of topics to five topics on allocation and five on the claims asserted by the EMEA Debtors against the Canadian estates (with the disclosures relating to the balance of the topics being deferred to the expert reports and trial briefing process) and to allow the parties to respond to questions by way of written responses, which would be provided by January 17, 2014. This proposal accomplishes the goals of the current litigation timetable and discovery plan, which is to complete certain aspects of the representative party discovery in advance of the completion of expert witness reports and trial affidavits.[8] It is a meaningful benchmark in the pre-trial process to have disclosure of and admissions from opposing parties and this is built into the current litigation timetable and discovery plan. The Monitor and Canadian Debtors' proposal to limit the number of topics for discovery in advance of expert reports and the trial briefing was in response to the US Debtors' suggestion that would be a manageable number of topics to deal with in the timeframe.[9] The Canadian Debtors' and Monitor's proposal that written responses could be provided to questions was a direct response to the concern professed by counsel to the US Debtors that there would be insufficient time to prepare representative witnesses for live testimony.

---

[7]     See *Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363, 503(B) and 507(A)(2) and Bankruptcy Rules 6004(H) and 9019 Approving the US Claims Litigation Settlement Agreement By and Among the Debtors, the Creditors' Committee, the Joint Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited, Nortel Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates* [Dkt. No. 12618].

[8]     Under the current schedule initial reports are due January 24, 2014 and reply reports are due February 28, 2014. The dates for the trial briefing process are still being discussed by the parties.

[9]     December 21, 2013 email from Jennifer Stam (attached hereto) delineating the proper topics for each Core Party.

December 22, 2013
Page - 6 -

Despite these efforts made by the Monitor and Canadian Debtors to find middle ground, the US Debtors continue to claim that they could not possibly be prepared for any narrowed version of representative party discovery, even though the current dates were heavily negotiated and agreed upon previously and specifically endorsed by this Court and the Canadian Court. In response to repeated conversations about the scope of the representative party discovery, dating back more than ten days prior to the US Debtors' filing of its letter raising this issue with the Court, neither the US Debtors nor any other party that has endorsed their position have offered a meaningful alternative to the position that all representative party discovery should be eliminated.

The US Debtors claim their request to prevent the parties from engaging in representative party discovery is based on a desire to conserve the resources of the estate. As explained above, the scope of these depositions has already been significantly curtailed. The US Debtors made no similar entreaties to reduce expenses while conducting over 105 fact witness depositions around the globe over a three-month period. It is reasonable to expect the currently scheduled eight days of representative party discovery, which will take place in two central locations, will be far more cost-efficient.[10] Further, the Monitor's and Canadian Debtors' compromise offer to narrow the scope to five topics and to allow written responses to questions as opposed to live testimony would further reduce costs.

### *Representative Party Discovery Is Essential to Fair and Efficient Trial Preparation*

To the extent that the US Debtors believe they have obtained all the testimony necessary for their case and they do not require any further discovery, they are entitled to reduce costs and increase efficiencies by electing to not proceed with the discovery topics that they noticed to other Core Parties.[11] However, the present effort to foreclose other parties from conducting representative party discovery is contrary to the goals of discovery.[12] It is fundamental that all parties have a right to know the basis of the contentions and facts that opposing parties intend to present at trial. To that end, the discovery process is based on the fundamental goal of preventing surprise at trial. As counsel to the US Debtors represented to this Court

---

[10]     Considering that the US Debtors' primary counsel incurred approximately $9.3 million in fees and expenses in a single month, it strains credulity to allege that eliminating, at most, eight days of representative party discovery will represent a substantial savings in the aggregate. *See Fifty-Eighth Interim Application of Cleary Gottlieb Steen & Hamilton LLP, As Attorneys for Debtors and Debtors-In-Possession, for Allowance of Interim Compensation and for Interim Reimbursement of All Actual and Necessary Expenses Incurred for the Period October 1, 2013 Through October 31, 2013*, [Dkt. No. 12502] (seeking compensation of $9,327,407.50 for the month of October as "actual, reasonable and necessary").

[11]     In light of their repeated assertions that representative party discovery is unnecessary, it is unclear why the US Debtors have themselves noticed topics for the Canadian discovery group. *See* US Deposition Group's December 13, 2013, letter enumerating deposition topics (attached to the US Debtors' December 20, 2013, letter to this Court raising the present discovery dispute) (claiming that US Debtors believe the depositions are unnecessary, but that they are providing topics "to avoid any claim of waiver."). It is unclear how the US Debtors could be concerned about a claim of waiver when they are simultaneously claiming that representative party discovery is unnecessary in its entirety.

[12]     The US Debtors' entreaties to this Court to consider the volume and type of discovery available to a "typical Canadian litigant" in a "typical Canadian litigation" are wholly irrelevant given the procedural posture of this case. Even if it were a relevant consideration, a typical Canadian litigant would, if nothing else, be entitled to representative party discovery.

199

December 22, 2013
Page - 7 -

just three months ago, any particular circumstance unique to this case "is not a reason to deprive the US Debtors of their basic right to depose a party representative for each Claimant."[13]   And as counsel for the US Debtors further noted back in September: "[i]t is axiomatic that each EMEA Claimant must participate fully in the discovery process.  This includes, at the most basic level, identifying and producing for deposition witnesses associated with each Claimant who are knowledgeable on key topics raised in the Claims and a party representative of each Claimant."[14]   The US Debtors' letter seeking a complete end to representative party discovery process fails to explain why these axioms no longer apply.

The Monitor and Canadian Debtors previously agreed to forego interrogatories as well as the standard Rule 30(b)(6) depositions.  The representative party discovery remained as the only defensive discovery tool available in this case.  Cooperative efforts have been made to narrow the scope of the representative party discovery and to allow written responses in lieu of presenting a live witness.  However, foreclosing the opportunity to obtain any representative party discovery would be extremely prejudicial, particularly in the circumstances of this litigation.  The discovery process, including the more than 105 fact witness depositions that have been conducted to date, has been based in material part on the understanding that parties would have the opportunity to partake in representative party discovery.  This understanding influenced not only who would be deposed, but also whether to reserve lines of questioning for party representatives.[15]

Representative witnesses have "a unique status" that is "substantially different" from fact witnesses because a representative witness "testifies as the entity, not as an individual." *Ethypharm SA France v. Abbott Labs.*, 271 F.R.D. 82, 90 (D. Del. 2010) (quoting *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, No. 01 CIV. 3016(AGS)(HB), 2002 WL 1835439 (S.D.N.Y.  Aug. 8, 2002) (internal quotation marks omitted)).  Eliminating the parties' ability to engage in discovery that binds the parties would ignore this fundamental difference between these types of witnesses.  A representative witness "is not simply testifying about matters within his or her personal knowledge, but rather is speaking for the corporation about matters to which the corporation has reasonable access." *Oy v. Verizon Servs. Corp.*, No. 12–715–CJB, 2013 WL 5675516, at *2 (D. Del. Oct. 15, 2013) (citing *Penn Mut. Life Ins. Co. v. Rodney Reed 2006 Ins. Trust*, No. 09–CV–0663 (JCJ), 2011 WL 1636985, at *1 (D. Del. Apr. 29, 2011)).  Particularly here, where the fact witnesses only have personal knowledge of facts that occurred during a discrete period of time, and which often occurred over ten years ago, having the opportunity to understand the parties' positions and the facts supporting those positions is essential.

---

[13]      Letter to The Honorable Kevin Gross on behalf of the US Interests [Dkt. No. 11707 at 5].

[14]      *Id.* at 1 (emphasis in original).

[15]      For example, when the Monitor and Canadian Debtors noticed depositions of certain individuals, the Ad Hoc Committee of Bondholders objected on the grounds that the individuals noticed did not have knowledge of the claims for which their testimony was sought and that the testimony would be better addressed in the representative party discovery.  August 1, 2013 email from Atara Miller on behalf of the Bondholders to the Core Party Service List (attached hereto).



December 22, 2013
Page - 8 -

The Monitor and Canadian Debtors respectfully request that this Court reject any entreaties to alter the litigation schedule by eliminating representative party discovery. We hope to continue to negotiate with our counterparties to agree on a reasonable alternative that does not prejudice any party, but we continue to believe that the Canadian Debtors' and Monitor's proposal to reduce the number of topics to five and to allow all responses to be in writing strikes the appropriate balance.

Very truly yours,

/s/ *Kathleen A. Murphy*

Kathleen A. Murphy (No. 5215)

KAM/
1027550-001116



**Rajan, Claire:BK (DC)**

| | |
|---|---|
| **From:** | Stam, Jennifer <Jennifer.Stam@gowlings.com> |
| **Sent:** | Thursday, December 19, 2013 4:52 PM |
| **To:** | (Akin Gump) Abid Qureshi; (Akin Gump) Brad M. Kahn; (Akin Gump) Christine Doniak; (Akin Gump) David Botter; (Akin Gump) Fred Hodara; (Akin Gump) Jackie Yecies; (Akin Gump) Robert Johnson ; (Akin Gump) Sunny Gulati; Guyder, Daniel:BK (NY); Cho, Jonathan:BK (NY); Badtke-Berkow, Joseph:BK (NY); Coleman, Ken:BK (NY); Hall, Laura R:LT (NY); Ward, Nicolette:LT (NY); Keller, Paul B.:LT (NY); (Ashurst) Angela Pearson; (Ashurst) Antonia Croke; (Bayard) Charlene D. Davis; (Bayard) Justin Alberto; (Bennett Jones ) Jonathan Bell; (Bennett Jones) Gavin Finlayson; (Bennett Jones) Kevin Zych; (Bennett Jones) Richard Orzy; (Bennett Jones) Richard Swan; (Bennett Jones) Sean Zweig; (Borden) Edmond Lamek; (Borden) James Szumski; (Buchanan Ingersoll) Kathleen Murphy; (Buchanan Ingersoll) Mary Caloway; (Cassels) Bill Burden; (Cassels) Bruce Leonard; (Cassels) Christopher Horkins; (Cassels) David S. Ward; (Cassels) Lara Jackson; (CAW) Barry Wadsworth; (CAW) Lewis Gottheil; (Cleary) Dan Queen; (Cleary) Darryl Stein; (Cleary) Howard Zelbo; (Cleary) Jacqueline Moessner; (Cleary) James Bromley; (Cleary) Jeffrey Rosenthal; (Cleary) Jodi Erickson; (Cleary) Lauren Peacock; (Cleary) Lisa Schweitzer; (Cleary) Marla Decker; (Cleary) Neil Forrest; (Davies Ward) James Doris; (Davies Ward) Louis Sarabia; (Davies Ward) Robin Schwill; (Davies Ward) Sean Campbell; (Dentons) Barbara Grossman; (Dentons) Michael Wunder; (Dentons) Ryan Jacobs; (Dentons) Shayne Kukulowicz; (DLA Piper)  Richard Hans; (DLA Piper) Farah Lisa Whitley-Sebti; (DLA Piper) Jason Gerstein; (DLA Piper) Selinda Melnik; (DLA Piper) Timothy Hoeffner; (E&Y) Monitor; (Goodmans) Alan Mark; (Goodmans) Ben Zarnett; (Goodmans) Chris Armstrong; (Goodmans) Fred Myers; (Goodmans) Jay Carfagnini; (Goodmans) Jessica Kimmel; (Goodmans) Joseph Pasquariello; (Goodmans) Peter Ruby; (Gowlings) Derrick Tay; (Gowlings) Jennifer Stam; (Heenan) John Salmas; (Heenan) Kenneth Kraft; (Heenan) Sara-Ann Van Allen; (Hogan Lovells) Angela Dimsdale Gill; (Hogan Lovells) David Graves; (Hogan Lovells) John Tillman; (Hogan Lovells) Katherine Tallett-Williams; (Hogan Lovells) Matthew Bullen; (Hughes Hubbard) Charles Huberty; (Hughes Hubbard) Derek Adler; (Hughes Hubbard) Fara Tabatabai; (Hughes Hubbard) Neil Oxford; (Katten) Craig Barbarosh; (Katten) David Crichlow; (Katten) Karen Dine; (Koskie) Ari Kaplan; (Koskie) Barbara Walancik; (Koskie) Mark Zigler; (Koskie) Susan Philpott; (Latham & Watkins) Michael Riela; (Lax O'Sullivan) Matthew Gottlieb; (Lax O'Sullivan) Paul Michell; (Lax O'Sullivan) Tracy Wynne; (McCarthy) Barbara Boake; (McCarthy) Byron Shaw; (McCarthy) Elder Marques; (McCarthy) James Gage; (McCarthy) Kelly Peters; (McCarthy) Paul Steep; (McCarthy) Sharon Kour; (McMillan) Sheryl Seigel; (Milbank) Albert Pisa; (Milbank) Andrew LeBlanc; (Milbank) Atara Miller; (Milbank) Gabrielle Ruha; (Milbank) Jennifer Harris; (Milbank) Michael Hirschfeld; (Milbank) Nick Bassett; (Milbank) Rachel Pojunas; (Milbank) Samir Vora; (Milbank) Thomas Kreller; (Milbank) Tom Matz; (Morris Nichols) Annie Cordo; (Morris Nichols) Derek Abbott; (Nelligan) Ainslie Benedict; (Nelligan) Christpher Rootham; (Nelligan) Janice Payne; (Nelligan) Steven Levitt; (Norton Rose) Michael Lang; (Osler) Adam Hirsh; (Osler) Alexander Cobb; (Osler) Betsy Putnam; (Osler) Edward Sellers; (Osler) Lyndon Barnes; (Paliare) Jacqueline Cummins; (Paliare) Karen Jones; (Paliare) Ken Rosenberg; (Paliare) Lily Harmer; (Paliare) Max Starnino; (Paliare) Michelle Jackson; (Paliare) Tina Lie; (Patterson) Daniel Lowenthal; (Richards Layton) Christopher Samis; (Shibley) Arthur Jacques; (Shibley) Thomas McRae; (Thornton Grout) D.J. Miller; (Thornton Grout) John Finnigan; (Thornton Grout) Michael Barrack; (Thornton Grout) Andrea McEwan; (Thronton Grout) Rebecca Lewis; (Torys) Adam Slavens; (Torys) Andrew Gray; (Torys) Scott Bomhof; (Torys) Sheila Block; (Torys) Tony DeMarinis; (Willkie Farr) Andrew Hanrahan; (Willkie Farr) Brian O'Connor; (Willkie Farr) Sameer |

2o2

| | |
|---|---|
| **To:** | Advani; (Young Conaway) Ed Harron; (Young Conaway) John Dorsey |
| **Cc:** | Anderson, Michel |
| **Subject:** | Nortel: Representative Witness Depositions |

**Categories:**         Copied to Virtual File

The Monitor and the Canadian Debtors do not agree with the position that the representative party examinations should be dispensed with in their entirety. We understand that there is an objection to the extent of information that a given representative might have to absorb and come prepared to address based on the subjects that we designated. While we remain of the view that the designated subject areas are entirely appropriate for purposes of discovery/representative party examinations under both Ontario and US procedure, in order to address that objection so that we obtain meaningful answers in the available time, the Monitor and Canadian Debtors would be prepared to agree to cap the number of subject areas that would be dealt with through the representative party examinations in January in advance of the trial briefing process (we are thinking along the lines of capping for this purpose our designated subject areas to a maximum of 5 for allocation and 5 for claims), some or all of which we would be prepared to consider dealing with in writing (with the specific questions to be formalized by an agreed upon date) on the condition that we have agreement that the responses will be provided by January 17, 2014. The Monitor and Canadian Debtors would similarly be prepared to answer questions in writing within your designated subject areas (subject to the noted objections which we remain willing to meet and confer with you about). This proposal assumes that the identification of facts and documents for the balance of our designated subject areas will be addressed through a trial briefing procedure that would entail exhibits, affidavits, reply affidavits and deposition designations being exchanged in sequence and concluded in early May in advance of the May 12, 2014 trial commencement date. If this is an agreeable way of proceeding please confirm and we will identify the questions that would remain designated from our lists for this purpose. All rights continue to be reserved.

**Jennifer Stam**
Partner
Tel (416) 369-6512
jennifer.stam@gowlings.com





**Gowling Lafleur Henderson LLP**
**Lawyers • Patent and Trade-mark Agents**
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, Ontario
M5X 1G5 Canada
T 1 (416) 369-7259 F (416) 862-7661
**gowlings.com**

IMPORTANT NOTICE: This message is intended only for the use of the individual or entity to which it is addressed. The message may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify Gowlings immediately by email at postmaster@gowlings.com. Thank you.

## Nixdorf, Mark:BK (NY)

| | |
|---|---|
| **From:** | Stam, Jennifer <Jennifer.Stam@gowlings.com> |
| **Sent:** | Saturday, December 21, 2013 10:53 PM |
| **To:** | Stam, Jennifer; (Akin Gump) Abid Qureshi; (Akin Gump) Brad M. Kahn; (Akin Gump) Christine Doniak; (Akin Gump) David Botter; (Akin Gump) Fred Hodara; (Akin Gump) Jackie Yecies; (Akin Gump) Robert Johnson ; (Akin Gump) Sunny Gulati; Guyder, Daniel:BK (NY); Cho, Jonathan:BK (NY); Badtke-Berkow, Joseph:BK (NY); Coleman, Ken:BK (NY); Hall, Laura R:LT (NY); Ward, Nicolette:LT (NY); Keller, Paul B.:LT (NY); (Ashurst) Angela Pearson; (Ashurst) Antonia Croke; (Bayard) Charlene D. Davis; (Bayard) Justin Alberto; (Bennett Jones ) Jonathan Bell; (Bennett Jones) Gavin Finlayson; (Bennett Jones) Kevin Zych; (Bennett Jones) Richard Orzy; (Bennett Jones) Richard Swan; (Bennett Jones) Sean Zweig; (Borden) Edmond Lamek; (Borden) James Szumski; (Buchanan Ingersoll) Kathleen Murphy; (Buchanan Ingersoll) Mary Caloway; (Cassels) Bill Burden; (Cassels) Bruce Leonard; (Cassels) Christopher Horkins; (Cassels) David S. Ward; (Cassels) Lara Jackson; (CAW) Barry Wadsworth; (CAW) Lewis Gottheil; (Cleary) Dan Queen; (Cleary) Darryl Stein; (Cleary) Howard Zelbo; (Cleary) Jacqueline Moessner; (Cleary) James Bromley; (Cleary) Jeffrey Rosenthal; (Cleary) Jodi Erickson; (Cleary) Lauren Peacock; (Cleary) Lisa Schweitzer; (Cleary) Marla Decker; (Cleary) Neil Forrest; (Davies Ward) James Doris; (Davies Ward) Louis Sarabia; (Davies Ward) Robin Schwill; (Davies Ward) Sean Campbell; (Dentons) Barbara Grossman; (Dentons) Michael Wunder; (Dentons) Ryan Jacobs; (Dentons) Shayne Kukulowicz; (DLA Piper) Richard Hans; (DLA Piper) Farah Lisa Whitley-Sebti; (DLA Piper) Jason Gerstein; (DLA Piper) Selinda Melnik; (DLA Piper) Timothy Hoeffner; (E&Y) Monitor; (Goodmans) Alan Mark; (Goodmans) Ben Zarnett; (Goodmans) Chris Armstrong; (Goodmans) Fred Myers; (Goodmans) Jay Carfagnini; (Goodmans) Jessica Kimmel; (Goodmans) Joseph Pasquariello; (Goodmans) Peter Ruby; Tay, Derrick; Stam, Jennifer; (Heenan) John Salmas; (Heenan) Kenneth Kraft; (Heenan) Sara-Ann Van Allen; (Hogan Lovells) Angela Dimsdale Gill; (Hogan Lovells) David Graves; (Hogan Lovells) John Tillman; (Hogan Lovells) Katherine Tallett-Williams; (Hogan Lovells) Matthew Bullen; (Hughes Hubbard) Charles Huberty; (Hughes Hubbard) Derek Adler; (Hughes Hubbard) Fara Tabatabai; (Hughes Hubbard) Neil Oxford; (Katten) Craig Barbarosh; (Katten) David Crichlow; (Katten) Karen Dine; (Koskie) Ari Kaplan; (Koskie) Barbara Walancik; (Koskie) Mark Zigler; (Koskie) Susan Philpott; (Latham & Watkins) Michael Riela; (Lax O'Sullivan) Matthew Gottlieb; (Lax O'Sullivan) Paul Michell; (Lax O'Sullivan) Tracy Wynne; (McCarthy) Barbara Boake; (McCarthy) Byron Shaw; (McCarthy) Elder Marques; (McCarthy) James Gage; (McCarthy) Kelly Peters; (McCarthy) Paul Steep; (McCarthy) Sharon Kour; (McMillan) Sheryl Seigel; (Milbank) Albert Pisa; (Milbank) Andrew LeBlanc; (Milbank) Atara Miller; (Milbank) Gabrielle Ruha; (Milbank) Jennifer Harris; (Milbank) Michael Hirschfeld; (Milbank) Nick Bassett; (Milbank) Rachel Pojunas; (Milbank) Samir Vora; (Milbank) Thomas Kreller; (Milbank) Tom Matz; (Morris Nichols) Annie Cordo; (Morris Nichols) Derek Abbott; (Nelligan) Ainslie Benedict; (Nelligan) Christpher Rootham; (Nelligan) Janice Payne; (Nelligan) Steven Levitt; (Norton Rose) Michael Lang; (Osler) Adam Hirsh; (Osler) Alexander Cobb; (Osler) Betsy Putnam; (Osler) Edward Sellers; (Osler) Lyndon Barnes; (Paliare) Jacqueline Cummins; (Paliare) Karen Jones; (Paliare) Ken Rosenberg; (Paliare) Lily Harmer; (Paliare) Max Starnino; (Paliare) Michelle Jackson; (Paliare) Tina Lie; (Patterson) Daniel Lowenthal; (Richards Layton) Christopher Samis; (Shibley) Arthur Jacques; (Shibley) Thomas McRae; (Thornton Grout) D.J. Miller; (Thornton Grout) John Finnigan; (Thornton Grout) Michael Barrack; (Thronton Grout) Andrea McEwan; (Thronton Grout) Rebecca Lewis; (Torys) Adam Slavens; (Torys) Andrew Gray; (Torys) Scott Bomhof; (Torys) Sheila Block; (Torys) Tony DeMarinis; |

1

| | |
|---|---|
| **To:** | (Willkie Farr) Andrew Hanrahan; (Willkie Farr) Brian O'Connor; (Willkie Farr) Sameer Advani; (Young Conaway) Ed Harron; (Young Conaway) John Dorsey |
| **Cc:** | Anderson, Michel |
| **Subject:** | RE: Nortel: Representative Witness Depositions |
| **Attachments:** | EMEA Debtors Topics for the Canadian Debtors-TOR_LAW-8323829-v2.DOC; US Debtors Topics for Cdn Debtors (revised)-TOR_LAW-8324669-v1.DOC; Blackline (US Debtors Topics for Cdn Debtors)-TOR_LAW-8324701-v1.DOC; Blackline (EMEA Debtors Topics to Cdn Debtors)-TOR_LAW-8324702-v1.DOC |

Further to the email sent on behalf of the Canadian Debtors and the Monitor at 4:54 pm on Thursday December 19 , 2013 following our meet and confer earlier that day, we wish to delineate the particular topics for each Core Party for whom we have designated representative party topics which ones we would include in the cap of 5 about which we would like to be able to ask questions in the time frame contemplated by the Amended Discovery Plan (with the disclosures about the remaining topics to be covered in the trial briefing process). The US Debtors asked and were provided with their topics previously but we are including them again in this listing for completeness (we note that no others have asked what the topics would be).

US Debtors on allocation : 1, 4, 9, 10, 13 [Note these topics do not include those that relate to the separate allocation theory of the CCC]
Bondholders and UCC on allocation: same topics as for US Debtors –parties to advise of any additional or different responses that they have to the responses of the US Debtors [Note these topics do not include those that relate to the separate allocation theory of the CCC]
All EMEA Debtors on allocation: 1, 3, 4, 6, 7  (or corresponding questions if numbering is different for any particular claimant)
Northern Ireland, NNOCL, South Africa: 1,2,3, 4, 5
All EMEA Debtors (except NNSA) on claims: 8,9,21,23,25
NNSA on claims: 8,20,22,24,30
UKPC: 1, 2, 5, 6, 10

For ease of reference, we also attach two schedules which re-state the topics designated by the US Debtors and EMEA Debtors for the Canadian Debtors so as to reflect the objections that we delivered in respect of those topics and sets forth any concerns we have about the clarity and/or scope of what may be asked about.

**From:** Stam, Jennifer
**Sent:** December-19-13 4:52 PM
**To:** (Akin Gump) Abid Qureshi; (Akin Gump) Brad M. Kahn; (Akin Gump) Christine Doniak; (Akin Gump) David Botter; (Akin Gump) Fred Hodara; (Akin Gump) Jackie Yecies; (Akin Gump) Robert Johnson ; (Akin Gump) Sunny Gulati; (Allen & Overy) Daniel Guyder; (Allen & Overy) Jonathan Cho; (Allen & Overy) Joseph Badtke-Berkow; (Allen & Overy) Ken Coleman; (Allen & Overy) Laura Hall; (Allen & Overy) Nicolette Ward; (Allen & Overy) Paul Keller; (Ashurst) Angela Pearson; (Ashurst) Antonia Croke; (Bayard) Charlene D. Davis; (Bayard) Justin Alberto; (Bennett Jones ) Jonathan Bell; (Bennett Jones) Gavin Finlayson; (Bennett Jones) Kevin Zych; (Bennett Jones) Richard Orzy; (Bennett Jones) Richard Swan; (Bennett Jones) Sean Zweig; (Borden) Edmond Lamek; (Borden) James Szumski; (Buchanan Ingersoll) Kathleen Murphy; (Buchanan Ingersoll) Mary Caloway; (Cassels) Bill Burden; (Cassels) Bruce Leonard; (Cassels) Christopher Horkins; (Cassels) David S. Ward; (Cassels) Lara Jackson; (CAW) Barry Wadsworth; (CAW) Lewis Gottheil; (Cleary) Dan Queen; (Cleary) Darryl Stein; (Cleary) Howard Zelbo; (Cleary) Jacqueline Moessner; (Cleary) James Bromley; (Cleary) Jeffrey Rosenthal; (Cleary) Jodi Erickson; (Cleary) Lauren Peacock; (Cleary) Lisa Schweitzer; (Cleary) Marla Decker; (Cleary) Neil Forrest; (Davies Ward) James Doris; (Davies Ward) Louis Sarabia; (Davies Ward) Robin Schwill; (Davies Ward) Sean Campbell; (Dentons) Barbara Grossman; (Dentons) Michael Wunder; (Dentons) Ryan Jacobs; (Dentons) Shayne Kukulowicz; (DLA Piper) Richard Hans; (DLA Piper) Farah Lisa Whitley-Sebti; (DLA Piper) Jason Gerstein; (DLA Piper) Selinda Melnik; (DLA Piper) Timothy Hoeffner; (E&Y) Monitor; (Goodmans) Alan Mark; (Goodmans) Ben Zarnett; (Goodmans) Chris Armstrong; (Goodmans) Fred Myers; (Goodmans) Jay Carfagnini; (Goodmans) Jessica Kimmel; (Goodmans) Joseph Pasquariello; (Goodmans) Peter Ruby; (Gowlings) Derrick Tay; (Gowlings) Jennifer Stam; (Heenan)

2

John Salmas; (Heenan) Kenneth Kraft; (Heenan) Sara-Ann Van Allen; (Hogan Lovells) Angela Dimsdale Gill; (Hogan Lovells) David Graves; (Hogan Lovells) John Tillman; (Hogan Lovells) Katherine Tallett-Williams; (Hogan Lovells) Matthew Bullen; (Hughes Hubbard) Charles Huberty; (Hughes Hubbard) Derek Adler; (Hughes Hubbard) Fara Tabatabai; (Hughes Hubbard) Neil Oxford; (Katten) Craig Barbarosh; (Katten) David Crichlow; (Katten) Karen Dine; (Koskie) Ari Kaplan; (Koskie) Barbara Walancik; (Koskie) Mark Zigler; (Koskie) Susan Philpott; (Latham & Watkins) Michael Riela; (Lax O'Sullivan) Matthew Gottlieb; (Lax O'Sullivan) Paul Michell; (Lax O'Sullivan) Tracy Wynne; (McCarthy) Barbara Boake; (McCarthy) Byron Shaw; (McCarthy) Elder Marques; (McCarthy) James Gage; (McCarthy) Kelly Peters; (McCarthy) Paul Steep; (McCarthy) Sharon Kour; (McMillan) Sheryl Seigel; (Milbank) Albert Pisa; (Milbank) Andrew LeBlanc; (Milbank) Atara Miller; (Milbank) Gabrielle Ruha; (Milbank) Jennifer Harris; (Milbank) Michael Hirschfeld; (Milbank) Nick Bassett; (Milbank) Rachel Pojunas; (Milbank) Samir Vora; (Milbank) Thomas Kreller; (Milbank) Tom Matz; (Morris Nichols) Annie Cordo; (Morris Nichols) Derek Abbott; (Nelligan) Ainslie Benedict; (Nelligan) Christpher Rootham; (Nelligan) Janice Payne; (Nelligan) Steven Levitt; (Norton Rose) Michael Lang; (Osler) Adam Hirsh; (Osler) Alexander Cobb; (Osler) Betsy Putnam; (Osler) Edward Sellers; (Osler) Lyndon Barnes; (Paliare) Jacqueline Cummins; (Paliare) Karen Jones; (Paliare) Ken Rosenberg; (Paliare) Lily Harmer; (Paliare) Max Starnino; (Paliare) Michelle Jackson; (Paliare) Tina Lie; (Patterson) Daniel Lowenthal; (Richards Layton) Christopher Samis; (Shibley) Arthur Jacques; (Shibley) Thomas McRae; (Thornton Grout) D.J. Miller; (Thornton Grout) John Finnigan; (Thornton Grout) Michael Barrack; (Thronton Grout) Andrea McEwan; (Thronton Grout) Rebecca Lewis; (Torys) Adam Slavens; (Torys) Andrew Gray; (Torys) Scott Bomhof; (Torys) Sheila Block; (Torys) Tony DeMarinis; (Willkie Farr) Andrew Hanrahan; (Willkie Farr) Brian O'Connor; (Willkie Farr) Sameer Advani; (Young Conaway) Ed Harron; (Young Conaway) John Dorsey

**Cc:** Anderson, Michel

**Subject:** Nortel: Representative Witness Depositions

The Monitor and the Canadian Debtors do not agree with the position that the representative party examinations should be dispensed with in their entirety.  We understand that there is an objection to the extent of information that a given representative might have to absorb and come prepared to address based on the subjects that we designated.  While we remain of the view that the designated subject areas are entirely appropriate for purposes of discovery/representative party examinations under both Ontario and US procedure, in order to address that objection so that we obtain meaningful answers in the available time, the Monitor and Canadian Debtors would be prepared to agree to cap the number of subject areas that would be dealt with through the representative party examinations in January in advance of the trial briefing process (we are thinking along the lines of capping for this purpose our designated subject areas to a maximum of 5 for allocation and 5 for claims), some or all of which we would be prepared to consider dealing with in writing (with the specific questions to be formalized by an agreed upon date) on the condition that we have agreement that the responses will be provided by January 17, 2014.  The Monitor and Canadian Debtors would similarly be prepared to answer questions in writing within your designated subject areas (subject to the noted objections which we remain willing to meet and confer with you about).  This proposal assumes that the identification of facts and documents for the balance of our designated subject areas will be addressed through a trial briefing procedure that would entail exhibits, affidavits, reply affidavits and deposition designations being exchanged in sequence and concluded in early May in advance of the May 12, 2014 trial commencement date.  If this is an agreeable way of proceeding please confirm and we will identify the questions that would remain designated from our lists for this purpose.  All rights continue to be reserved.

**Jennifer Stam**
Partner
T 416-862-5697
jennifer.stam@gowlings.com

# gowlings

**Gowling Lafleur Henderson LLP**
**Lawyers • Patent and Trade-mark Agents**
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, Ontario
M5X 1G5 Canada
T 416-862-7525  F 416-862-7661
**gowlings.com**



*December 21, 2013*

**EMEA Debtors Topics for the Canadian Debtors**

The Canadian Debtors[1] shall respond to specific questions identified on the following topics provided that with respect to all such topics, the Canadian Debtors shall only be required to: (a) review document productions made as of December 20, 2013; (b) review deposition testimony made as of December 20, 2013; and (c) make reasonable inquiries of current and former employees of the Canadian Debtors.  Further, the Canadian Debtors shall not be required to respond to the extent that response would require disclosure of information covered by attorney-client privilege, work product immunity or any other applicable privileges and immunities.

1. The circumstances surrounding the partial repayment in or around February 2008 of the NNL-NNSA subordinated loan.

2. The circumstances surrounding the negotiation and drafting of the Insolvency Guarantee dated December 21, 2007 and provided by NNL to the Nortel Networks UK Pension Trust Limited, including the exclusion of administration from the definition of "Insolvency Event" within that document.

3. The conception, proposal, negotiation, and documentation of the Third Addendum to the MRDA and Schedule A thereto.

4. The negotiation, reporting, and purported application to the EMEA Entities of the settlement(s) between NNL and Canada Revenue Agency that resulted in a $2 billion adjustment in favor of NNI in or around January 2010.

5. Post-petition models for valuing or assessing the potential revenues from (a) the intellectual property assets sold in the Residual Patents Sale or any portion thereof, or (b) a Residual IP Co., which were prepared by, with, or at the request of Nortel, the Global IP Law Group, or Lazard. **[Note to the EMEA Debtors: we will need further clarification about what is intended about on this topic beyond what was produced as part of the Global IP or Lazard productions before the Canadian Debtors can determine whether they can respond to this topic.]**

---

[1] The "Canadian Debtors" are Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

*December 21, 2013*

**US Debtors' Topics for the Canadian Debtors**

The Canadian Debtors[1] shall respond to specific questions identified on the following topics provided that with respect to all such topics, the Canadian Debtors shall only be required to: (a) review document productions made as of December 20, 2013; (b) review deposition testimony made as of December 20, 2013; and (c) make reasonable inquiries of current and former employees of the Canadian Debtors. Further, the Canadian Debtors shall not be required to respond to the extent that response would require disclosure of information covered by attorney-client privilege, work product immunity or any other applicable privileges and immunities.

1. Statements made by any Canadian Debtor or the Monitor, to government authorities (including tax authorities), debt-rating agencies, underwriters, or any entity evaluating the credit worthiness of NNL and pre-petition and post-petition potential asset purchasers regarding ownership (including with respect to economic, beneficial and/or legal ownership) of intellectual property or intellectual property license rights of any participant in the Master Research & Development Agreement.

2. Third-party licensing by any Nortel entity of its patents (other than commercial licenses granted in the ordinary course of business), including with respect to which Nortel entity had the right to and did engage in such licensing activity and which Nortel entity recognized revenue on royalty payments other than any patent license agreements that were produced or disclosed to potential purchasers during the post-petition sale transactions for the lines of business and residual patents. **[Note to the US Debtors: The additional language is intended to avoid the re-production of all of the license agreements which were produced in the sales data rooms. However, we will still need to understand what is intended by this topic before the Canadian Debtors can determine whether they will be able to respond to this topic.]**

3. The practice of prosecuting or defending patents in litigation, including decisions with respect to which Nortel entities should participate and/or bear financial risk with respect to the litigation.

4. Internal valuations of Nortel intellectual property prepared after 2001 by estate, by business line in whole or in part and the methods used in such valuations, whether conducted by third parties or by Nortel personnel other than in connection with divestitures, acquisitions, joint ventures, or other transactions with a value of less than US$100 million.

---

[1] The "Canadian Debtors" are Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

**US Debtors' Topics for the Canadian Debtors**

The Canadian Debtors[1] shall respond to specific questions identified on the following topics provided that with respect to all such topics, the Canadian Debtors shall only be required to: (a) review document productions made as of December 20, 2013; (b) review deposition testimony made as of December 20, 2013; and (c) make reasonable inquiries of current and former employees of the Canadian Debtors. Further, the Canadian Debtors shall not be required to respond to the extent that response would require disclosure of information covered by attorney-client privilege, work product immunity or any other applicable privileges and immunities.

1.  Statements made by ~~Nortel Networks Limited ("NNL") or any affiliated entity or any employee, advisor or representative thereof (including, but not limited to, the Monitor, E&Y U.S. and E&Y Canada, Horst Frisch and Oslers) to any third party regarding the Master Research and Development Agreement ("MRDA"), transfer pricing, ownership or ... ding with respect to economic and/or legal ownership) of intellectual property or intellectual property license rights of any~~ **MRDA participant, including but not limited to, government authorities.**any Canadian Debtor or the Monitor, to government authorities (including tax authorities), debt-rating agencies, underwriters, or any entity evaluating the credit- worthiness of ~~NNL,~~ and pre-petition and post-petition potential asset purchasers regarding ... ~~... including with respect to economic ...~~ property or intellectual property license ... participant in the Master Research & Development Agreement.

2.  Third-party licensing by any Nortel entity of its ~~intellectual property~~patents (other than commercial licenses granted in the ordinary course of business), including with respect to which Nortel entity had the right to and did engage in such licensing activity and which Nortel entity recognized revenue on royalty payments.- other than any patent license agreements that were produced or disclosed to potential purchasers during the post-petition sale transactions for the lines of business and residual patents. **[Note to the US Debtors: The additional language is intended to avoid the re-production of all of the license agreements which were produced in the sales data rooms. However, we will still need to understand what is intended by this topic before the Canadian Debtors can determine whether they will be able to respond to this topic.]**

3.  The practice of prosecuting or defending patents in litigation, including decisions with respect to which Nortel entities should participate and/or bear financial risk with respect to the litigation.

4.  Internal valuations of Nortel intellectual property prepared after 2001 by estate, by business line in whole or in part and the methods used in such valuations, whether conducted by third parties or by Nortel personnel. other than in connection with

---

[1]   The "Canadian Debtors" are Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

210

divestitures, acquisitions, joint ventures, or other transactions with a value of less than US$100 million.

**Rajan, Claire:BK (DC)**

| | |
|---|---|
| **From:** | Miller, Atara <AMiller@milbank.com> |
| **Sent:** | Thursday, August 01, 2013 6:56 PM |
| **To:** | 'Ruby, Peter'; 'nortel.monitor@ca.ey.com'; 'derrick.tay@gowlings.com'; 'jennifer.stam@gowlings.com'; Coleman, Ken:BK (NY); Keller, Paul B.:LT (NY); Guyder, Daniel:BK (NY); Hall, Laura R:LT (NY); Badtke-Berkow, Joseph:BK (NY); Cho, Jonathan:BK (NY); Ward, Nicolette:LT (NY); 'Kathleen.murphy@bipc.com'; 'mary.caloway@bipc.com'; 'tdemarinis@torys.com'; 'sbomhof@torys.com'; 'sblock@torys.com'; 'agray@torys.com'; 'aslavens@torys.com'; 'jbromley@cgsh.com'; 'lschweitzer@cgsh.com'; 'hzelbo@cgsh.com'; 'jrosenthal@cgsh.com'; 'dstein@cgsh.com'; 'mdecker@cgsh.com'; 'lpeacock@cgsh.com'; 'jmoessner@cgsh.com'; 'nforrest@cgsh.com'; 'dqueen@cgsh.com'; 'dabbott@mnat.com'; 'acordo@mnat.com'; 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'jdoris@dwpv.com'; 'lsarabia@dwpv.com'; 'mgottlieb@counsel-toronto.com'; 'twynne@counsel-toronto.com'; 'pmichell@counsel-toronto.com'; 'adler@hugheshubbard.com'; 'oxford@hugheshubbard.com'; 'tabataba@hugheshubbard.com'; 'huberty@hugheshubbard.com'; 'eharron@ycst.com'; 'jdorsey@ycst.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'akaplan@kmlaw.ca'; 'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com'; 'lily.harmer@paliareroland.com'; 'karen.jones@paliareroland.com'; 'tina.lie@paliareroland.com'; 'michelle.jackson@paliareroland.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca'; 'Arthur Jacques'; 'thomas.mcrae@shibleyrighton.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca'; 'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'psteep@mccarthy.ca'; 'skour@mccarthy.ca'; 'bdshaw@mccarthy.ca'; 'kpeters@mccarthy.ca'; 'selinda.melnik@dlapiper.com'; 'richard.hans@dlapiper.com'; 'timothy.hoeffner@dlapiper.com'; 'farahlisa.sebti@dlapiper.com'; 'zychk@bennettjones.com'; 'orzyr@bennettjones.com'; 'finlaysong@bennettjones.com'; 'swanr@bennettjones.com'; 'zweigs@bennettjones.com'; 'bellj@bennettjones.com'; Kreller, Tom; Harris, Jennifer; Pisa, Albert A.; Vora, Samir; Leblanc, Andrew; Hirschfeld, Michael; Matz, Tom; Bassett, Nick; Ruha, Gabrielle; Pojunas, Rachel; 'Shayne.kukulowicz@dentons.com'; 'Michael.wunder@dentons.com'; 'ryan.jacobs@dentons.com'; 'Barbara.grossman@dentons.com'; 'fhodara@akingump.com'; 'dbotter@akingump.com'; 'aqureshi@akingump.com'; 'rajohnson@akingump.com'; 'bkahn@akingump.com'; 'cdoniak@akingump.com'; 'sgulati@akingump.com'; 'angela.pearson@ashurst.com'; 'Antonia.croke@ashurst.com'; 'samis@rlf.com'; 'bleonard@casselsbrock.com'; 'dward@casselsbrock.com'; 'bburden@casselsbrock.com'; 'chorkins@casselsbrock.com'; 'ljackson@casselsbrock.com'; 'mbarrack@tgf.ca'; 'djmiller@tgf.ca'; 'rlewis@tgf.ca'; 'amcewan@tgf.ca'; 'boconnor@willkie.com'; 'sadvani@willkie.com'; 'ahanrahan@willkie.com'; 'sheryl.seigel@mcmillan.ca'; 'michael.riela@lw.com'; 'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; 'svanallen@heenan.ca'; 'craig.barbarosh@kattenlaw.com'; 'david.crichlow@kattenlaw.com'; 'Karen.dine@kattenlaw.com'; 'elamek@blg.com'; 'jszumski@blg.com'; 'dalowenthal@pbwt.com'; 'lbarnes@osler.com'; 'esellers@osler.com'; 'eputnam@osler.com'; 'ahirsh@osler.com'; 'acobb@osler.com'; 'michael.lang@nortonrose.com'; 'amdg@hoganlovells.com'; 'john.tillman@hoganlovells.com'; 'Matthew.bullen@hoganlovells.com'; 'david.graves@hogan.lovells.com'; 'katherine.tallett-williams@hoganlovells.com'; |

1

| **To:** | 'james.norris-jones@hsf.com'; 'cdavis@bayardlaw.com'; 'jalberto@bayardlaw.com' |
| **Cc:** | 'Zarnett, Benjamin'; 'Myers, Fred'; 'Kimmel, Jessica'; 'Pasquariello, Joe'; 'Carfagnini, Jay'; 'Armstrong, Christopher' |
| **Subject:** | RE: Deposition List of the Monitor, Canadian Debtors, CCC, and Directors and Officers |
| **Categories:** | Copied to Virtual File |

Peter:

We object to the inclusion of members of the Ad Hoc Bondholder Group in your list of proposed deponents. The five individuals you identified have no material knowledge relevant to this litigation. Their depositions would waste the valuable time and resources of all parties. Any information that the Ad Hoc Bondholder Group has that may be relevant to this litigation can be obtained through the deposition of a corporate representative, which you have noticed, and which notice we will respond and object to in due course.

We further object to the CCC's "addendum" insofar as it purports to request a witness from each member of the Ad Hoc Bondholder Group concerning the same topics that were the subject of the CCC's reserved document request. As the CCC knows, we have objected to its document request on a variety of grounds as set out in our notice of objection. We object to any depositions on these topics on the same grounds.

To be clear, as we have reiterated for months now: the Ad Hoc Bondholder Group will not produce – whether via document productions, depositions, or otherwise – any information concerning the holdings of its members beyond what is required by Federal Rule of Bankruptcy Procedure 2019. We will not make available any witness to testify on these topics.

Atara Miller | **Milbank**
One Chase Manhattan Plaza, New York, NY 10005
P: 212-530-5421 | F: 212-822-5421
amiller@milbank.com | www.milbank.com

**From:** Ruby, Peter [mailto:pruby@goodmans.ca]
**Sent:** Tuesday, July 30, 2013 11:55 PM
**To:** 'nortel.monitor@ca.ey.com'; 'derrick.tay@gowlings.com'; 'jennifer.stam@gowlings.com'; 'ken.coleman@allenovery.com'; 'paul.keller@allenovery.com'; 'daniel.guyder@allenovery.com'; 'laura.hall@allenovery.com'; 'Joseph.Badtke-Berkow@AllenOvery.com'; 'jonathan.cho@allenovery.com'; 'Nicolette.ward@allenovery.com'; 'Kathleen.murphy@bipc.com'; 'mary.caloway@bipc.com'; 'tdemarinis@torys.com'; 'sbomhof@torys.com'; 'sblock@torys.com'; 'agray@torys.com'; 'aslavens@torys.com'; 'jbromley@cgsh.com'; 'lschweitzer@cgsh.com'; 'hzelbo@cgsh.com'; 'jrosenthal@cgsh.com'; 'dstein@cgsh.com'; 'mdecker@cgsh.com'; 'lpeacock@cgsh.com'; 'jmoessner@cgsh.com'; 'nforrest@cgsh.com'; 'dqueen@cgsh.com'; 'dabbott@mnat.com'; 'acordo@mnat.com'; 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'jdoris@dwpv.com'; 'lsarabia@dwpv.com'; 'mgottlieb@counsel-toronto.com'; 'twynne@counsel-toronto.com'; 'pmichell@counsel-toronto.com'; 'adler@hugheshubbard.com'; 'oxford@hugheshubbard.com'; 'tabataba@hugheshubbard.com'; 'huberty@hugheshubbard.com'; 'eharron@ycst.com'; 'jdorsey@ycst.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'akaplan@kmlaw.ca'; 'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com'; 'lily.harmer@paliareroland.com'; 'karen.jones@paliareroland.com'; 'tina.lie@paliareroland.com'; 'michelle.jackson@paliareroland.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca'; Arthur Jacques; 'thomas.mcrae@shibleyrighton.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca'; 'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'psteep@mccarthy.ca'; 'skour@mccarthy.ca'; 'bdshaw@mccarthy.ca'; 'kpeters@mccarthy.ca'; 'selinda.melnik@dlapiper.com'; 'richard.hans@dlapiper.com'; 'timothy.hoeffner@dlapiper.com'; 'farahlisa.sebti@dlapiper.com'; 'zychk@bennettjones.com'; 'orzyr@bennettjones.com'; 'finlaysong@bennettjones.com'; 'swanr@bennettjones.com'; 'zweigs@bennettjones.com'; 'bellj@bennettjones.com'; Kreller, Tom; Harris, Jennifer; Pisa, Albert A.; Vora, Samir; Leblanc, Andrew; Hirschfeld, Michael; Miller, Atara; Matz, Tom; Bassett, Nick; Ruha, Gabrielle; Pojunas, Rachel; 'Shayne.kukulowicz@dentons.com'; 'Michael.wunder@dentons.com'; 'ryan.jacobs@dentons.com'; 'Barbara.grossman@dentons.com'; 'fhodara@akingump.com'; 'dbotter@akingump.com'; 'aqureshi@akingump.com'; 'rajohnson@akingump.com'; 'bkahn@akingump.com'; 'cdoniak@akingump.com'; 'sgulati@akingump.com';

'angela.pearson@ashurst.com'; 'Antonia.croke@ashurst.com'; 'samis@rlf.com'; 'bleonard@casselsbrock.com'; 'dward@casselsbrock.com'; 'bburden@casselsbrock.com'; 'chorkins@casselsbrock.com'; 'ljackson@casselsbrock.com'; 'mbarrack@tgf.ca'; 'djmiller@tgf.ca'; 'rlewis@tgf.ca'; 'amcewan@tgf.ca'; 'boconnor@willkie.com'; 'sadvani@willkie.com'; 'ahanrahan@willkie.com'; 'sheryl.seigel@mcmillan.ca'; 'michael.riela@lw.com'; 'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; 'svanallen@heenan.ca'; 'craig.barbarosh@kattenlaw.com'; 'david.crichlow@kattenlaw.com'; 'Karen.dine@kattenlaw.com'; 'elamek@blg.com'; 'jszumski@blg.com'; 'dalowenthal@pbwt.com'; 'lbarnes@osler.com'; 'esellers@osler.com'; 'eputnam@osler.com'; 'ahirsh@osler.com'; 'acobb@osler.com'; 'michael.lang@nortonrose.com'; 'amdg@hoganlovells.com'; 'john.tillman@hoganlovells.com'; 'Matthew.bullen@hoganlovells.com'; 'david.graves@hogan.lovells.com'; 'katherine.tallett-williams@hoganlovells.com'; 'james.norris-jones@hsf.com'; 'cdavis@bayardlaw.com'; 'jalberto@bayardlaw.com'

**Cc:** Zarnett, Benjamin; Myers, Fred; Kimmel, Jessica; Pasquariello, Joe; Carfagnini, Jay; Ruby, Peter; Armstrong, Christopher

**Subject:** Deposition List of the Monitor, Canadian Debtors, CCC, and Directors and Officers

### Deposition Witnesses To Be Deposed by the Canadian Parties

Pursuant to the Litigation Timetable and Discovery Plan, the Monitor, Canadian Debtors, Directors and Officers and CCC (collectively, the "Canadian Parties") together give notice that they will depose the following witnesses in the Allocation proceeding and EMEA Canadian Claims proceeding as applicable.

| Name | Location |
| --- | --- |
| Albert-Lebrun, Phillipe | France |
| Badiani, Kishhor | UK |
| Barton, Ian | (Likely UK) |
| Cianciolo, Chris | USA (Massachusetts) |
| Clement, Michel | France |
| Clive Gilchrist | UK |
| Collins, Malcolm | UK |
| Culina, Rosanne | Ontario |
| Drinkwater, David | Ontario |
| Edwards, Darryl | UK |
| Fraser, Maggie | UK |
| Freemantle, Simon | UK |
| Gardiner, Kenneth | UK |
| Gill, Dara | UK |
| Goldschmid, Paul | King Street Capital Management LP |
| Harper, Lorraine (Smeaton) | UK |
| Henderson, Wally | USA (Georgia) |
| Herenstein, Andrew | Monarch Alternative Capital LP |
| Jensen, Eric | USA |
| Kay, David | Tenor Capital Management |
| McColgan, Gillian | USA (Massachusetts) |
| Morgan, Iain | UK |
| Pugh, Gareth | UK |
| Riedel, George | USA (Massachusetts) |
| Rolston, Sharon | UK |
| Smith, Ryan | USA |

| Name | Location |
|------|----------|
| Stephens, Kerry | UK |
| Stevenson, Katherine | Ontario |
| Tananbaum, Steve | Goldentree Asset Management |
| Waida, Christian | UK |
| Widdowson, Ian | UK |
| Zinman, Jon | Solus Alternative Asset Management LP |

The Canadian Parties reserve their rights to change this list and do not waive any of their rights.

**Additional Individuals The Canadian Parties May Choose to Depose or Participate in Their Depositions**

The Canadian Parties also anticipate that they may choose to depose or participate in the depositions of the following individuals whose names appear on a Core Party's trial witness list. To the extent any trial witnesses and/or deponents are removed from the witness and/or deponent lists of a Core Party, the Canadian Parties each reserve the right to depose those individuals.

Additional Trial Witnesses Listed by the US Debtors

- William Donovan
- Michael Orlando
- John Ray
- Chris Ricaurte
- Elizabeth Smith
- Mark Weisz
- Jeff Wood

Additional Trial Witnesses Listed by the EMEA Debtors

- Simon Brueckheimer
- Geoffrey Hall
- Peter Newcombe

Additional Trial Witnesses Listed by the UKPC

- Simon Brueckheimer
- David Davies
- Terence Faulkner
- Geoffrey Hall
- John Hern
- Andrew Howard
- Andrew Jeffries
- Peter Newcombe
- Nigel Rees
- Timothy Watkins

**Addendum from the CCC**

Last week the CCC received significant additional production from the Ad Hoc Bondholders Group. To the extent possible, we have identified Group members likely to have knowledge of the relevant issues. In addition, the CCC requests the production of a witness from each of the individual members of the Ad Hoc Bondholders Group to testify concerning: (i) the purchase, sale, assignment or redemption of the Nortel Bonds, (ii) the analysis of their investment in the Nortel Bonds, and (iii) the terms of the Nortel Bonds, including the guarantees and the enforceability of the guarantees. The CCC will work with counsel to identify the appropriate member witness and to avoid duplication of witnesses.

**Peter Ruby**
Goodmans LLP

416.597.4184
goodmans.ca

***** Attention *****

This communication is intended solely for the named addressee(s) and may contain information that is privileged, confidential, protected or otherwise exempt from disclosure. No waiver of confidence, privilege, protection or otherwise is made. If you are not the intended recipient of this communication, please advise us immediately and delete this email without reading, copying or forwarding it to anyone.

============================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

# APPENDIX M

## EMAIL DATED DECEMBER 23

## Dhillon, Kiran

| | |
|---|---|
| **From:** | Stam, Jennifer |
| **Sent:** | January-03-14 10:41 AM |
| **To:** | Dhillon, Kiran |
| **Subject:** | FW: Nortel Networks Inc.; Response to Letter from Derek Abbott |

**From:** Kimmel, Jessica [mailto:jkimmel@goodmans.ca]
**Sent:** December-23-13 11:15 PM
**To:** 'Maddox, Marisa'; 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'jdoris@dwpv.com'; 'lsarabia@dwpv.com'; 'bmcleese@dwpv.com'; 'svanallen@heenan.ca'; 'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; Pasquariello, Joe; Carfagnini, Jay; Zarnett, Benjamin; Myers, Fred; Ruby, Peter; Armstrong, Christopher; Tay, Derrick; Stam, Jennifer; 'nortel.monitor@ca.ey.com'; 'lbarnes@osler.com'; 'esellers@osler.com'; 'ahirsh@osler.com'; 'eputnam@osler.com'; 'acobb@osler.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca'; 'ZychK@bennettjones.com'; 'Orzyr@bennettjones.com'; 'finlaysong@bennettjones.com'; 'swanr@bennettjones.com'; 'zweigs@bennettjones.com'; 'bellj@bennettjones.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'akaplan@kmlaw.ca'; 'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com'; 'lily.harmer@paliareroland.com'; 'tina.lie@paliareroland.com'; 'karen.jones@paliareroland.com'; 'michelle.jackson@paliareroland.com'; 'Shayne.kukulowicz@dentons.com'; 'michael.wunder@dentons.com'; 'Ryan.jacobs@dentons.com'; 'Barbara.grossman@dentons.com'; 'Angela.pearson@ashurst.com'; 'Antonia.croke@ashurst.com'; 'bleonard@casselsbrock.com'; 'dward@casselsbrock.com'; 'bburden@casselsbrock.com'; 'chorkins@casselsbrock.com'; 'ljackson@casselsbrock.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca'; 'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; Arthur Jacques; 'thomas.mcrae@shibleyrighton.com'; 'mgottlieb@counsel-toronto.com'; 'twynne@counsel-toronto.com'; 'pmichell@counsel-toronto.com'; 'sheryl.seigel@mcmillan.ca'; 'jmarshall@blgcanada.com'; 'chill@blgcanada.com'; 'elamek@blgcanada.com'; 'jszumski@blg.com'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'psteep@mccarthy.ca'; 'bdshaw@mccarthy.ca'; 'tdemarinis@torys.com'; 'sbomhof@torys.com'; 'sblock@torys.com'; 'agray@torys.com'; 'aslavens@torys.com'; 'tkreller@milbank.com'; 'JHarris@milbank.com'; 'apisa@milbank.com'; 'svora@milbank.com'; 'aleblanc@milbank.com'; 'mhirschfeld@milbank.com'; 'amiller@milbank.com'; 'tmatz@milbank.com'; 'nbassett@milbank.com'; 'gruha@milbank.com'; 'rpojunas@milbank.com'; 'michael.riela@lw.com'; 'ken.coleman@allenovery.com'; 'Laura.Hall@allenovery.com'; 'daniel.guyder@allenovery.com'; 'paul.keller@allenovery.com'; 'joseph.badtke-berkow@allenovery.com'; 'jonathan.cho@allenovery.com'; 'Nicolette.ward@allenovery.com'; 'Kathleen.murphy@bipc.com'; 'mary.caloway@bipc.com'; 'dalowenthal@pbwt.com'; 'aqureshi@akingump.com'; 'dbotter@akingump.com'; 'rajohnson@AkinGump.com'; 'fhodara@akingump.com'; 'bkahn@akingump.com'; 'sgulati@akingump.com'; 'cdoniak@akingump.com'; 'samis@rlf.com'; 'selinda.melnik@dlapiper.com'; 'richard.hans@dlapiper.com'; 'timothy.hoeffner@dlapiper.com'; 'farahlisa.sebti@dlapiper.com'; 'karen.dine@kattenlaw.com'; 'david.crichlow@kattenlaw.com'; 'craig.barbarosh@kattenlaw.com'; 'adler@hugheshubbard.com'; 'oxford@HughesHubbard.com'; 'tatababa@hugheshubbard.com'; 'huberty@hugheshubbard.com'; 'zhen@hugheshubbard.com'; 'eharron@ycst.com'; 'jdorsey@ycst.com'; 'boconnor@willkie.com'; 'sadvani@willkie.com'; 'AHanrahan@willkie.com'; 'mbarrack@tgf.ca'; 'DJmiller@tgf.ca'; 'rlewis@tgf.ca'; 'amcewan@tgf.ca'; 'jfinnigan@tgf.ca'; 'cdavis@bayardlaw.com'; 'jalberto@bayardlaw.com'; 'michael.lang@nortonrose.com'; 'amdg@hoganlovells.com'; 'john.tillman@hoganlovells.com'; 'matthew.bullen@hoganlovells.com'; 'ben.hemington@hsf.com'; 'rory.cochrane@hsf.com'; 'james.norris-jones@hsf.com'; 'mgurgel@csgh.com'; 'lSchweitzer@csgh.com'; jbromley@csgh.com; jrosenthal@csgh.com; 'hzelbo@csgh.com'; Opolsky, Jeremy R. <jopolsky@cgsh.com> (jopolsky@cgsh.com); 'mdecker@csgh.com'; 'Jacqueline Moessner' (jmoessner@cgsh.com); 'Darryl G Stein (dstein@cgsh.com)' (dstein@cgsh.com); 'nforrest@csgh.com'; dqueen@cgsh.com; 'kwilson@csgh.com'; Abbott, Derek; Cordo, Annie; Minott, Tamara K.; 'abeisler@csgh.com'
**Subject:** RE: Nortel Networks Inc.; Response to Letter from Derek Abbott

On behalf of the Monitor and Canadian Debtors, we wish to respond briefly to the US Debtors' letter filed with the Delaware court today (Dkt. No. 12698). The Monitor and Canadian Debtors will not burden the courts at this time with further letter writing to respond to all of today's submissions by the U.S. Debtors, but will wait to do so when the motion is briefed in advance of the January 7 hearing date. Nonetheless, and although each of the Monitor and Canadian Debtors reserves all rights with respect to this matter pending any hearings before the courts, the US Debtors' letter contains certain inaccuracies which we seek to clarify below.

Contrary to what the US Debtors indicate in the second paragraph of the letter, the Monitor and the Canadian Debtors did not express any intention one way or the other regarding an expedited briefing of the dispute about the representative party discovery (now scheduled for a joint hearing on January 7, 2014). Rather, a willingness was expressed to work with the U.S. Debtors to try to come to an arrangement that would effectively preserve the *status quo* in terms of the relative timing of the representative party discovery pending the outcome of their motion and it was indicated that if the parties could come to a reasonable agreement in that regard, the U.S. Debtors would not need to seek injunctive relief or a stay in the meantime.  Those discussions are ongoing and the Monitor and Canadian Debtors are hopeful that an accommodation can be reached, but continue to reserve all rights under the existing timetable and schedule.  We remain available to discuss at the earliest opportunity.

Jessica Kimmel
**GOODMANS LLP**
416-597-4219

**From:** Maddox, Marisa [mailto:mmaddox@MNAT.com]
**Sent:** Monday, December 23, 2013 9:56 AM
**To:** 'rschwill@dwpv.com'; 'scampbell@dwpv.com'; 'jdoris@dwpv.com'; 'lsarabia@dwpv.com'; 'bmcleese@dwpv.com';
'svanallen@heenan.ca'; 'jsalmas@heenan.ca'; 'kkraft@heenan.ca'; Pasquariello, Joe; Carfagnini, Jay; Zarnett, Benjamin;
Myers, Fred; Kimmel, Jessica; Ruby, Peter; Armstrong, Christopher; 'derrick.tay@gowlings.com';
'jennifer.stam@gowlings.com'; 'nortel.monitor@ca.ey.com'; 'lbarnes@osler.com'; 'esellers@osler.com';
'ahirsh@osler.com'; 'eputnam@osler.com'; 'acobb@osler.com'; 'barry.wadsworth@caw.ca'; 'lewis.gottheil@caw.ca';
'ZychK@bennettjones.com'; 'Orzyr@bennettjones.com'; 'finlaysong@bennettjones.com'; 'swanr@bennettjones.com';
'zweigs@bennettjones.com'; 'bellj@bennettjones.com'; 'mzigler@kmlaw.ca'; 'sphilpott@kmlaw.ca'; 'akaplan@kmlaw.ca';
'bwalancik@kmlaw.ca'; 'ken.rosenberg@paliareroland.com'; 'max.starnino@paliareroland.com';
'lily.harmer@paliareroland.com'; 'tina.lie@paliareroland.com'; 'karen.jones@paliareroland.com';
'michelle.jackson@paliareroland.com'; 'Shayne.kukulowicz@dentons.com'; 'michael.wunder@dentons.com';
'Ryan.jacobs@dentons.com'; 'Barbara.grossman@dentons.com'; 'Angela.pearson@ashurst.com';
'Antonia.croke@ashurst.com'; 'bleonard@casselsbrock.com'; 'dward@casselsbrock.com'; 'bburden@casselsbrock.com';
'chorkins@casselsbrock.com'; 'ljackson@casselsbrock.com'; 'janice.payne@nelligan.ca'; 'steven.levitt@nelligan.ca';
'christopher.rootham@nelligan.ca'; 'ainslie.benedict@nelligan.ca'; Arthur Jacques; 'thomas.mcrae@shibleyrighton.com';
'mgottlieb@counsel-toronto.com'; 'twynne@counsel-toronto.com'; 'pmichell@counsel-toronto.com';
'sheryl.seigel@mcmillan.ca'; 'jmarshall@blgcanada.com'; 'chill@blgcanada.com'; 'elamek@blgcanada.com';
'jszumski@blg.com'; 'bboake@mccarthy.ca'; 'jgage@mccarthy.ca'; 'emarques@mccarthy.ca'; 'psteep@mccarthy.ca';
'bdshaw@mccarthy.ca'; 'tdemarinis@torys.com'; 'sbomhof@torys.com'; 'sblock@torys.com'; 'agray@torys.com';
'aslavens@torys.com'; 'tkreller@milbank.com'; 'JHarris@milbank.com'; 'apisa@milbank.com'; 'svora@milbank.com';
'aleblanc@milbank.com'; 'mhirschfeld@milbank.com'; 'amiller@milbank.com'; 'tmatz@milbank.com';
'nbassett@milbank.com'; 'gruha@milbank.com'; 'rpojunas@milbank.com'; 'michael.riela@lw.com';
'ken.coleman@allenovery.com'; 'Laura.Hall@allenovery.com'; 'daniel.guyder@allenovery.com';
'paul.keller@allenovery.com'; 'joseph.badtke-berkow@allenovery.com'; 'jonathan.cho@allenovery.com';
'Nicolette.ward@allenovery.com'; 'Kathleen.murphy@bipc.com'; 'mary.caloway@bipc.com'; 'dalowenthal@pbwt.com';
'aqureshi@akingump.com'; 'dbotter@akingump.com'; 'rajohnson@AkinGump.com'; 'fhodara@akingump.com';
'bkahn@akingump.com'; 'sgulati@akingump.com'; 'cdoniak@akingump.com'; 'samis@rlf.com';
'selinda.melnik@dlapiper.com'; 'richard.hans@dlapiper.com'; 'timothy.hoeffner@dlapiper.com';
'farahlisa.sebti@dlapiper.com'; 'karen.dine@kattenlaw.com'; 'david.crichlow@kattenlaw.com';
'craig.barbarosh@kattenlaw.com'; 'adler@hugheshubbard.com'; 'oxford@HughesHubbard.com';
'tabataba@hugheshubbard.com'; 'huberty@hugheshubbard.com'; 'zhen@hugheshubbard.com'; 'eharron@ycst.com';
'jdorsey@ycst.com'; 'boconnor@willkie.com'; 'sadvani@willkie.com'; 'AHanrahan@willkie.com'; 'mbarrack@tgf.ca';
'DJmiller@tgf.ca'; 'rlewis@tgf.ca'; 'amcewan@tgf.ca'; 'jfinnigan@tgf.ca'; 'cdavis@bayardlaw.com';
'jalberto@bayardlaw.com'; 'michael.lang@nortonrose.com'; 'amdg@hoganlovells.com'; 'john.tillman@hoganlovells.com';
'matthew.bullen@hoganlovells.com'; 'ben.hemington@hsf.com'; 'rory.cochrane@hsf.com'; 'james.norris-jones@hsf.com';
'mgurgel@csgh.com'; 'ISchweitzer@csgh.com'; jbromley@csgh.com; jrosenthal@csgh.com; 'hzelbo@csgh.com'; Opolsky,
Jeremy R. <jopolsky@csgh.com> (jopolsky@csgh.com); 'mdecker@csgh.com'; 'Jacqueline Moessner'

(jmoessner@cgsh.com); 'Darryl G Stein (dstein@cgsh.com)' (dstein@cgsh.com); 'nforrest@csgh.com';
dqueen@cgsh.com; 'kwilson@csgh.com'; Abbott, Derek; Cordo, Annie; Minott, Tamara K.; 'abeisler@csgh.com'
**Subject:** Nortel Networks Inc.; Letter to the Honorable Kevin Gross

All,

Attached please find the *Letter to the Honorable Judge Gross* that was filed with the US Court today.

Thank you,

Marisa DeCarli Maddox
Bankruptcy Paralegal
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Main: 302.658.9200
Direct Dial: 302.351.9319
Fax: 302.498.6203

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

***** Attention *****

This communication is intended solely for the named addressee(s) and may contain information that is privileged. confidential protected or otherwise exempt from disclosure  No waiver of confidence. privilege. protection or otherwise is made  If you are not the intended recipient of this communication. please advise us immediately and delete this email without reading. copying or forwarding it to anyone

# APPENDIX N

## NOTICE OF REQUEST FOR JOINT HEARING



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt. No. 12618** |
| | **Hearing date: To be determined** |

### NOTICE OF REQUEST FOR JOINT HEARING PURSUANT TO SECTION 17(d) OF THE CROSS-BORDER PROTOCOL ON THE RESOLUTION OF CLAIMS AND SECTION 15 OF THE CROSS-BORDER INSOLVENCY PROTOCOL WITH RESPECT TO THE US DEBTORS' MOTION FOR AN ORDER APPROVING THE US CLAIMS LITIGATION AGREEMENT

Ernst & Young Inc., the court-appointed monitor (the "**Monitor**") in proceedings (the "**Canadian Proceedings**") under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List) (the "**Ontario Court**"), and Nortel Networks Corporation and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (the "**Canadian Debtors**", and with the Monitor, the "**Canadian Parties**"), hereby file this request for a joint hearing in connection with the *Debtors' Motion For Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363, 503(b) and 507(a)(2) and Bankruptcy Rules 6004(h) and 9019 Approving the US*

---

[1] The debtors in the chapter 11 cases, along with the last four digits of each such debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

*Claims Litigation Settlement Agreement by and Among the Debtors, the Creditors' Committee,*
*the Joint Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited,*
*Nortel Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and*
*Certain Affiliates* (the "**Motion**") [Dkt. No. 12617].[2]

The Debtors filed the Motion on December 17, 2013. The Motion was filed without
consultation with the Canadian Parties and with only a few minutes' notice prior to filing.

The EMEA Claims that the Debtors seek to resolve pursuant to the Settlement Agreement
are "Material Overlapping Claims" as that term is defined in the Cross-Border Protocol on the
Resolution of Claims (the "**Cross-Border Claims Protocol**") [Dkts. No. 3922 and 3946] in that
such claims have been asserted against both the Debtors and the Canadian Debtors.

In addition, the Motion implicates the Allocation Protocol [Dkt. No. 10565] and related
Litigation Timetable and Discovery Plan approved by this Court and the Ontario Court as well as
the protocol governing the conduct of the trial currently being negotiated by the Core Parties
such that direction is required from both Courts with respect to these matters.[3]

Pursuant to Section 17(d) of the Cross-Border Claims Protocol and Section 15 of the
Cross-Border Insolvency Protocol [Dkt. No. 990], the Canadian Parties hereby request a joint
hearing in connection with the Settlement Agreement, to be held at a date to be determined by
this Court and the Ontario Court.

*[Intentionally left blank]*

---

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[3]     On December 19 2013, the Canadian Parties filed the *Response and Limited Objection of the Monitor and the Canadian Debtors' to the US Debtors' Motion for Entry of an Order Approving the US Claims Litigation Settlement Agreement* (the "**Response and Limited Objection**"), which provides details in respect of these matters. A copy of the Response and Limited Objection is attached hereto as Exhibit A.



Dated: December 19, 2013
Wilmington, Delaware

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ Kathleen A. Murphy
Mary F. Caloway (No. 3059)
Kathleen A Murphy (No. 5215)
1105 North Market Street, Suite 1900
Wilmington, Delaware 19801
(302) 552-4200 (telephone)
(302) 552-4295 (facsimile)
mary.caloway@bipc.com
kathleen.murphy@bipc.com

-and-

**ALLEN & OVERY LLP**

Ken Coleman
Daniel Guyder
Paul Keller
Laura Hall
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300 (telephone)
(212) 610-6399 (facsimile)
ken.coleman@allenovery.com
daniel.guyder@allenovery.com
paul.keller@allenovery.com
laura.hall@allenovery.com

*Attorneys for Ernst & Young Inc., as Monitor
and Foreign Representative of the Canadian Nortel
Debtors*

22 1

## **EXHIBIT A**

Case 09-10138-KG    Doc 12661    Filed 12/19/13    Page 2 of 6

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| | (Jointly Administered) |
| Debtors. | **Re: Dkt. No. 12618** |

## RESPONSE AND LIMITED OBJECTION OF THE MONITOR AND THE CANADIAN DEBTORS TO THE US DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE US CLAIMS LITIGATION SETTLEMENT AGREEMENT

Ernst & Young Inc., the court-appointed monitor (the "**Monitor**") in proceedings (the

"**Canadian Proceedings**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C.

1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial

List) (the "**Ontario Court**"), and Nortel Networks Corporation and certain of its direct and

indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel

Networks Global Corporation, and Nortel Networks International Corporation (the "**Canadian

Debtors**", and with the Monitor, the "**Canadian Parties**"), hereby file this Response and

Limited Objection *to the Debtors' Motion For Entry of an Order Pursuant to 11 U.S.C. §§ 105,*

*363, 503(b) and 507(a)(2) and Bankruptcy Rules 6004(h) and 9019 Approving the US Claims*

*Litigation Settlement Agreement by and Among the Debtors, the Creditors' Committee, the Joint*

*Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited, Nortel*

---

[1] The debtors in the chapter 11 cases, along with the last four digits of each such debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates (the "**Motion**").[2]

In support thereof, the Canadian Parties respectfully submit as follows:

### RESPONSE AND LIMITED OBJECTION

1.    The Canadian Parties support efforts to settle a portion of this litigation in order to distribute as much value to stakeholders as quickly as possible.  However, inasmuch as the Settlement Agreement impacts the Litigation Timetable and Discovery Plan approved by the Courts as well as the protocol governing the conduct of the trial that is currently being negotiated by the Core Parties, it is important for both Courts to provide specific directions such that the Core Parties have certainty on key matters moving forward.[3] Specifically, Section 6.1 of the Settlement Agreement creates substantial uncertainty and a real risk of prejudice to the Canadian Parties at this advanced stage of the process. It  provides that:

> [T]he US Debtors, the Committee, the UK Pension Parties, the Joint Administrators on behalf of the EMEA Debtors, the Liquidator on behalf of NNOCL and the EMEA Non-Filed Entities agree that they will work in good faith commencing on the date of execution of this Agreement by all of the Parties (with the exception of the US Non-Filed Entities) . . . in an effort to see if they can develop a common allocation position and other agreements related to the conduct of the trial. To that end, such Parties will use commercially reasonable best efforts during the Allocation Cooperation Period[4] to coordinate and co-operate in respect of (a) discussion of experts on allocation methodologies in connection with the Allocation Dispute and preparation of submissions and reports regarding the same; (b) remaining depositions and discovery; (c) conduct of the trial of the Allocation Dispute; (d) pre-trial motion practice and pre and post-trial briefing in respect of the Allocation Dispute; and (e) appeals, if any, from determinations

---

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[3]     The proposed settlement of the EMEA Claims and the UK Pension Claims as against the Debtors does not in any way change the Courts' prior direction to simultaneously hear the allocation and EMEA and UK pension claims disputes or the requirement that both this Court and the Ontario Court be given the opportunity to fully consider all relevant factual and legal matters that impact on those disputes.

[4]     The "Allocation Cooperation Period" is an open-ended period that commenced upon execution of the Settlement Agreement and that ends at the discretion and election of any Settlement Party upon five (5) business days written notice of its intention to no longer seek to develop a common allocation position.

22y

in respect of the Allocation Dispute at or following trial.

Settlement Agreement ¶ 6.1.

2.      In May 2013, each of the Core Parties filed opening statements setting out their positions and theories of allocation. Many decisions have been made and enormous resources have been invested based on those statements. Discovery thus far has involved the production of millions of documents and over 100 depositions. All of this has been done with an understanding of various positions as set out in the statements and based on the rigorously negotiated timelines and agreements reflected in the Litigation Timetable and Discovery Plan and related agreements which govern the conduct of this litigation and which were approved by both this Court and the Ontario Court.

3.      The *possibility* that Section 6.1 may lead to yet another allocation position or to an existing allocation position not being pursued is itself prejudicial to the Canadian Parties, and is not something presently contemplated by the Litigation Timetable and Discovery Plan. Other parties cannot effectively or efficiently prepare for trial with the risk that a new theory (or theories) might be sprung on them at any time, or that an existing theory might be "dropped" and need not ultimately be addressed.  Indeed, such actions could threaten to derail the (already twice-extended and modified) Litigation Timetable and Discovery Plan. Moreover, it is not possible to agree on the key terms of a trial protocol until there is clarity on whether the US and EMEA interests are united on allocation, or whether they will be presenting independent positions, each of which will need to be addressed by the Canadian Parties in response.

4.      The Settlement Parties cannot now, at nearly the end of fact discovery, be given *carte blanche* to develop a new theory or theories of allocation or switch to another existing theory. Therefore, the Canadian Parties request that: (i) any common allocation position

3

225

developed by any combination of the Settlement Parties be limited to an allocation position previously asserted by a Core Party; and (ii) the Settlement Parties be required to disclose their final allocation positions to the other Core Parties, this Court, and the Ontario Court no later than January 8, 2014.

5.      The Debtors have proposed a hearing on the Motion for January 7, 2014, which would proceed solely before this Court. In light of the substantial impact the Settlement Agreement has on the allocation and claims dispute as a whole, the Canadian Parties request that the Motion be heard in a joint hearing with the Ontario Court pursuant to the provisions of the Cross-Border Insolvency Protocol approved in these cases by the Court's Order dated June 29, 2009 [Dkt. No. 990].[5]

6.      In addition to the matters addressed above, the Settlement Agreement raises other issues that impact the rights and interests of the Canadian Parties. The Canadian Parties will discuss these matters with the Settlement Parties in the coming weeks with a view to providing for their resolution without the involvement of the Courts. However, should they not be resolved, the Canadian Parties reserve the right to supplement and amend this Response and Limited Objection to specifically address such matters and seek further relief from the Courts.

## CONCLUSION

7.      The Canadian Parties respectfully request that (i) to the extent any of the Settlement Parties seek to develop a common allocation position as contemplated by the Settlement Agreement, such Settlement Parties be limited to a position previously asserted by a Core Party in its initial allocation pleadings, (ii) the Settlement Parties be required to disclose

---

[5]      Additionally, a joint hearing is appropriate because the Canadian Parties were not informed of any discussions regarding the EMEA Claims until a few minutes prior to the filing of the Motion, notwithstanding the consultation requirements of the Cross-Border Protocol on the Resolution of Claims, as approved by this Court on September 16, 2010 [Dkt. Nos. 3922 and 3956], with respect to "Material Overlapping Claims" such as the EMEA Claims.

Case 09-10138-KG     Doc 12861     Filed 12/19/13     Page 5 of 5

their final allocation positions to the other Core Parties, this Court, and the Ontario Court no later

than January 8, 2014, and (iii) the Motion be heard jointly with the Ontario Court on a date to be

determined following consultation with the Ontario Court.

Dated: December 19, 2013
      Wilmington, Delaware

                        **BUCHANAN INGERSOLL & ROONEY PC**


                        /s/   Kathleen A. Murphy
                        Mary F. Caloway (No. 3059)
                        Kathleen A. Murphy (No. 5215)
                        1105 North Market Street, Suite 1900
                        Wilmington, Delaware 19801
                        (302) 552-4200 (telephone)
                        (302) 552-4295 (facsimile)
                        mary.caloway@bipc.com
                        kathleen.murphy@bipc.com

                        -and-

                        **ALLEN & OVERY LLP**

                        Ken Coleman
                        Daniel Guyder
                        Paul Keller
                        Laura Hall
                        1221 Avenue of the Americas
                        New York, NY 10020
                        (212) 610-6300 (telephone)
                        (212) 610-6399 (facsimile)
                        ken.coleman@allenovery.com
                        daniel.guyder@allenovery.com
                        paul.keller@allenovery.com
                        laura.hall@allenovery.com

                        *Attorneys for Ernst & Young Inc., as Monitor*
                        *and Foreign Representative of the Canadian*
                        *Debtors*