| p.168 Q454 Vol.6B-108 | BATCo/Investments to the group of companies including Imperial Tobacco Canada, as to what to say with respect to this matter | almost 50 years old and the author is no longer employed by Investments. | | Refusal upheld |
|---|---|---|---|---|
| Cordeschi (Investments) p.169 Q458 Vol. 6B-109 | Enquire whether the reference to "strictly confidential to all number ones in associated companies" in the document attached to the letter dated June 12, 1970, refers to chief executive officers including Imperial Tobacco Canada | The question is unduly onerous and disproportionate in that the document is over 40 years old and its author is no longer employed by Investments. | Answer | Premature discovery request – Refusal upheld |
| Cordeschi (Investments) p.171 Q463 Vol.6B-109 | Confirm whether reference to members of the group in the statement on page 2 of the document – "it is thought desirable to set out revised guidelines to be observed wherever possible in future by members of the group in their approaching to the smoking and health controversy" – includes Imperial Tobacco Canada | This question is unduly onerous and disproportionate in that the document is 40 years old and the author of the document is unknown. | Answer | Premature discovery request – Refusal upheld |
| Cordeschi (Investments) p.172 Q467 Vol.6A-6 | Enquire whether the reference to "all number ones of associated companies" in the memo includes the chief executive officer of Imperial Tobacco Canada | This question is unduly onerous and disproportionate in that the document is nearly 40 years old. Further, it is unlikely that any author is still employed by Investments. | Answer | Premature discovery request – Refusal upheld |
| Cordeschi (Investments) p.173 Q473 Vol.6A-15 | Enquire whether reference to "all associated number ones" in the memo dated June 26, 1974, includes Imperial Tobacco Canada | The question is unduly onerous and disproportionate in that, even assuming that GC Hargrove authored the document and was an Investments employee at the time, the document is 37 years old and Mr. Hargrove is no longer employed by Investments. | Answer | Premature discovery request – Refusal upheld |
| Cordeschi (Investments) p.174 Q475 | Confirm whether the memo from Mr. Hargrove dated June 20, 1975, was sent to Imperial Tobacco Canada | This question is unduly onerous and disproportionate in that the document is 36 years old and Mr. Hargrove is no longer employed by | Answer | Premature discovery request – Refusal upheld |

| Vol.6A-16 | | Investments. Moreover, the determination of whether the document was sent to Imperial would require a search of millions of document pages, which may still not provide an answer. The question would more properly be directed to Imperial. | | |
|---|---|---|---|---|
| Cordeschi (Investments) p.175 Q477 Vo.6B.-114 | Confirm whether the memo dated April 25, 1983, and the attached guidelines, were created by BATCo/Investments | This question is unduly onerous and disproportionate in that the author of this 28 year old document is unknown. | Answer | **Premature discovery request— Refusal upheld** |
| Cordeschi (Investments) p.175 Q479 Vo.6B.-114 | Enquire whether the reference to "associated companies" in the last paragraph of the first page of the memo dated April 25, 1983, includes Imperial Tobacco Canada | This question is unduly onerous and disproportionate in that the document is 28 years old and the author of the constituent document is unknown. | Answer | **Premature discovery request— Refusal upheld** |
| Cordeschi (Investments) p.177 Q484 Vol. 6B-115 | Enquire whether the document entitled "Public Affairs Interim Guidelines" dated April 11, 1988, was prepared by a BATCo/Investments employee | This question is unduly onerous and disproportionate in that the document was prepared 23 years ago. Further, it is unlikely that any author is still employed by Investments. | Answer | **Premature discovery request— Refusal upheld** |
| Cordeschi (Investments) p.177 Q485 Vol. 6B-115 | Advise whether the document entitled "Public Affairs Interim Guidelines" dated April 11, 1988, was forwarded to Imperial Tobacco Canada | This question is unduly onerous and disproportionate in that the document is 23 years old. The question is irrelevant to the issues on the motion. Without conceding relevance, excerpts from the document have been located in Investments' files. Further undertakings would be unduly onerous and disproportionate. Further, it is unlikely that any author is still employed by Investments. Moreover, the determination of whether the document | Answer | **Premature discovery request— Refusal upheld** |

| | | was sent to Imperial would require a search of millions of document pages, which may still not provide an answer. The question would more properly be directed to Imperial. | | |
|---|---|---|---|---|
| Cordeschi (Investments)<br><br>p.178 Q488<br><br>Vol. 6B-115 | Enquire whether the reference to "operating companies" on the last paragraph of page two of the document includes Imperial Tobacco Canada | This question is unduly onerous and disproportionate in that the document is over 20 years old. Further, it is unlikely that any author is still employed by Investments. | Answer | **Premature discovery request –<br>Refusal upheld** |
| Cordeschi (Investments)<br><br>p.178 Q489<br><br>Vol. 6B-116 | Enquire whether the document entitled "BAT Environmental Tobacco Smoke -- Improving the Quality of Public Debate: Strategies" was prepared by a BATCo/Investments employee | This question is irrelevant to the issues on the motion. Even if it were not irrelevant, the question is unduly onerous and disproportionate in that there is no indication as to the author of this document, which is 21 years old. | Answer | **Premature discovery request –<br>Refusal upheld** |
| Cordeschi (Investments)<br><br>p.179 Q492 | Confirm whether the document entitled "BAT Environmental Tobacco Smoke -- Improving the Quality of Public Debate: Strategies" was sent to the chief executive officer of Imperial Tobacco Canada | This question is unduly onerous and disproportionate. The document is 21 years old and its author is not indicated. Moreover, the determination of whether the document was sent to Imperial would require a search of millions of document pages, which may still not provide an answer. The question would more properly be directed to Imperial. | Answer | **Premature discovery request –<br>Refusal upheld** |
| Cordeschi (Investments)<br><br>p.182 Q502<br><br>Vol. 6A-43 | Confirm whether Mr. Patrick Sheehy and Mr. Stuart Lockhart from BATCo/Investments attended the meeting referred to as Operation Berkshire in or about June 1977 | The statement contained therein is hearsay with respect to Investments. This question is also unduly onerous and disproportionate given that Mr. Cordeschi is being asked to confirm attendance at a meeting that purportedly took place 34 years ago and given that Messrs. Sheehy and Stewart- | Advise if any information they did not attend | **Premature discovery request –<br>Refusal upheld** |

| | | Lockhart are no longer employed by Investments. | | |
|---|---|---|---|---|
| Cordeschi (Investments)<br><br>p.186-7 Q516<br><br>Vol. 6A-48 | Enquire whether BATCo/Investments either prepared or received a copy of the document entitled "Third Meeting of the International Committee on Smoking Issues: Conclusions and Recommendations." | The question is irrelevant to the issues on the motion. Without conceding relevance, excerpts from the document have been located in Investments' files. Further undertakings would be unduly onerous and disproportionate. Further, even if the document were prepared by an employee of Investments, it is unlikely that that person is still employed by Investments as the document is over 30 years old. | Answer | **Premature discovery request – Refusal upheld** |
| Cordeschi (Investments)<br><br>p.188 Q519 | Confirm whether Mr. Lockhart was the chairman of the ICOSI Committee in 1978 | This question is unduly onerous and disproportionate given that none of the Investments employees who were purportedly at that meeting currently work for Investments. | Answer | **Premature discovery request – Refusal upheld** |
| Cordeschi (Investments)<br><br>p.192 Q528<br><br>Vol. 6A.-7 | Confirm whether BATCo/Investments created the divisional boards referred to in the memo dated May 15, 1973, and whether the individuals under number one sat on the tobacco divisional board | This document is unduly onerous and disproportionate given that this document is almost 40 years old and none of the persons who purportedly sat on the tobacco divisional board at this time are currently employed by Investments | Answer | **Premature discovery request – Refusal upheld** |
| Cordeschi (Investments)<br><br>p.194 Q534<br><br>Vol.6A-9 | Enquire whether Mr. Sheehy was responsible for Canada in the tobacco division at the time the chart entitled "British-American Tobacco Company Limited: Outline Organisation" was prepared | This question is misleading as the chart indicates Mr. Sheehy was purportedly the liaison with operating companies in Canada. Moreover, Mr. Sheehy is no longer employed by Investments. | Answer | **Premature discovery request – Refusal upheld** |
| Cordeschi (Investments) | Confirm whether the reference to "group" in the statement on page 2, paragraph 2 – "the | The question is unduly onerous and disproportionate as the author of this paper | Answer | **Premature discovery request –** |

| p.203 Q11 | divisional board's report to group headquarters through the chairman's policy committee, whose members include the vice chairman, chairman of the four operating divisions and the senior finance director, the policy committee is responsible to the BAT board for the overall development and well being of the group and for the control and allocation of central group resources" includes Imperial Tobacco Canada | cannot be consulted. | | **Refusal upheld** |
|---|---|---|---|---|
| Cordeschi (Investments)<br><br>p.244 Q148<br><br>Vol.6C-145 | Advise whether BATCo/Investments representatives were present at the conference in Chelwood, England on Nov. 6 1979 | This question is irrelevant to the issues on the motion. Even if it were not irrelevant, the question is unduly onerous and disproportionate given that the purported conference took place 32 years ago and there is no indication on the face of the document who the attendees at the conference were. | Answer | **Withdrawn by Crown** |
| Cordeschi (Investments)<br><br>p.248 Q157<br><br>Vol.6C-147 | Enquire whether the document entitled "Research Progress and Policy" was authored by Dr. Blackman, an employee of BATCo/Investments | The question is irrelevant to the issues on the motion. Even if it were not irrelevant, the question is unduly onerous and disproportionate in that Dr. Blackman is not currently employed by Investments. | Answer | **Withdrawn by Crown** |
| Cordeschi (Investments)<br><br>pp.249-50 Q164<br><br>Vol.6C-147 | Confirm whether the reference to "number ones and senior marketing staff" on page 1, paragraph 4 of the document entitled "Research Progress and Policy" includes Imperial Tobacco Canada's personnel | This question is unduly onerous and disproportionate in that the document is 31 years old and the author of the document is no longer employed by Investments. | Answer | **Premature discovery request – Refusal upheld** |
| Cordeschi (Investments)<br><br>pp.250-1 Q168 | Confirm whether the reference to CAC companies on page 2, paragraph 4 of the document entitled "Research Progress and | This question is unduly onerous and disproportionate in that the document is 31 years old and the author of the document is no | Answer | **Premature discovery request – Refusal upheld** |

| | | | | |
|---|---|---|---|---|
| Vol. 6C-147 | Policy" refers to Imperial Tobacco Canada | longer employed by Investments. | | |
| Cordeschi (Investments)<br><br>pp.252-3<br>Q176<br><br>Vol.6C-147 | Confirm that Dr. Massey was an employee of BATCo/Investments and was transferred to Imperial Tobacco at or about October 1982 | Currently believed that we can respond in most cases as to past associations with BATCo/Investments but may be not be able to provide precise positions held or dates worked - partial (as to whether BATCo employee). | Answere | **Premature discovery request – Refusal upheld** |
| Cordeschi (Investments)<br><br>p.264-5 Q205<br><br>Vol.6C-162 | Confirm that BATCo/Investments undertook research and development for the group of companies, including Imperial Tobacco Canada, in or around Dec 2000 | This question is irrelevant to the issues on the motion. The question is tantamount to discovery in the action generally. | Answer | **Relevancy not established – Refusal upheld** |
| Cordeschi (Investments)<br><br>p.267 Q 214<br><br>Vol.6C-162 | Confirm whether BAT BATCo/Investments undertook to do research into tobacco-related issues to be shared with Imperial Tobacco Canada in 2009 | The question is irrelevant to the issues on the motion. The question is tantamount to discovery in the action generally. | Answer | **Relevancy not established – Refusal upheld** |
| Cordeschi (Investments)<br><br>p.269 Q219<br><br>Vol.6C-153 | Confirm that Mr. Sheehy was a director of the tobacco board of the tobacco division of BAT on Dec. 1, 1986 | Currently believed that we can respond in most cases as to past associations with BATCo/Investments but may be not be able to provide precise positions held or dates worked. | Answer | **Premature discovery request – Refusal upheld** |
| Cordeschi (Investments)<br><br>p.272 Q229<br><br>Vol.6C-154 | Confirm that JL Mercier referenced as an attendee of the May 18, 1990, meeting of the Tobacco Strategy Review Team is JL Mercier from Imperial Tobacco Canada | This question is unduly onerous and disproportionate in that the author of the document is not indicated and because it asks Mr. Cordeschi to confirm the employment of someone who is not employed by Investments. The question would more properly be directed to Imperial. | Advise if any information he is not | **Premature discovery request – Refusal upheld** |
| Cordeschi | Confirm whether the document entitled "Hot | This question is irrelevant with respect | Answer | **Premature discovery** |

| | | | | |
|---|---|---|---|---|
| (Investments)<br><br>p.274 Q232<br><br>Exhibit9-165 | Springs Papers on Social Unacceptability Issues" dated Sept. 8, 1976, was authored by Mr. Haddon, a BATCo/Investments employee | to the issues on the motion. Even if it were not irrelevant, the question is unduly onerous and disproportionate in that Mr. Haddon is not currently employed by Investments and because the document is 35 years old. | | request –<br>Refusal upheld |
| Cordeschi<br>(Investments)<br><br>p.288 Q270<br><br>Exhibit11-167 | Confirm whether a copy of the document entitled "To all members of the BAT Industries board" dated July 1987 was sent to BATCo/BAT Industries | This document is irrelevant to the issues on the motion. Even if it were not irrelevant, it is unduly onerous and disproportionate in that the document is 24 years old. Further, it is unlikely that any author is still employed by Investments. In addition, the document appears to be a BAT Industries document and not a Investments document. | Answer | Premature discovery request –<br>Refusal upheld |
| Cordeschi<br>(Investments)<br><br>p.290 Q277<br><br>Ex11-167 | Confirm whether the reference to "group wide programme" on page 2, paragraph 15 includes Imperial Tobacco Canada | This question is unduly onerous and disproportionate in that Mr. Cordeschi should not be required to ascertain the meaning of a word or phrase contained in a document which appears to be a BAT Industries document and whose author was likely an employee of that company. | Answer | Premature discovery request –<br>Refusal upheld |
| Cordeschi<br>(Investments)<br><br>p.291 Q279<br><br>Page    Bates Number 1747 | Enquire whether a copy of the document entitled "Guidelines for IMASCO July 1987" was sent by BATCo/Investments to IMASCO | This question is unduly onerous and disproportionate given that the document in question appears to be 24 years old. Moreover, the determination of whether the document was sent to Imperial would require a search of millions of document pages, which may still not provide an answer. The question would more properly be | Answer | Premature discovery request –<br>Refusal upheld |

| | | directed to Imperial. | | |
|---|---|---|---|---|
| Cordeschi (Investments)<br><br>p.291 Q281<br><br>Exhibit 12-168 | Enquire whether the document entitled "Smoking: The Scientific Controversy" was produced by BATCo/Investments | This question is not relevant to the issues on the motion and is tantamount to discovery in the action generally. Even if it were not irrelevant, the question is unduly onerous and disproportionate in that there is no indication who was the author of this document. | Answer | **Premature discovery request – Refusal upheld** |
| Cordeschi (Investments)<br><br>p.293 Q289<br><br>Exhibit 13-169 | Advise whether the document entitled "Note for the Tobacco Strategy Review Team" was distributed to Imperial Tobacco Canada at or about Jan. 24, 1990 | This question is unduly onerous and disproportionate given that the document in question is over 20 years old. Moreover, the determination of whether the document was sent to Imperial would require a search of millions of document pages, which may still not provide an answer. The question would more properly be directed to Imperial. | Answer | **Premature discovery request – Refusal upheld** |
| Cordeschi (Investments)<br><br>p.299 Q305<br><br>Ex14-172 | Enquire whether the statement at page 180 of the document – "BAT has six regional research and development and production technology centre around the world" – includes Imperial Tobacco Canada | This question is unduly onerous and disproportionate. The author of this document is not indicated and it appears to be a BAT Industries document rather than a Investments documents. | Answer | **Premature discovery request – Refusal upheld** |

### K. *The Determination of Industries' Appeal*

**181**     For the above Reasons, it is my opinion that the Master made several errors in principal and his decision should be set aside in its entirety.

**182**     I have completed my own analysis of the undertakings requested from Ms. Snook as Industries' deponent for the jurisdictional motion. In my opinion, the refusals were proper. My discrete rulings are set out in the following chart:

| Reference | Questions | Industries Response | Master's Disposition | Ruling |
|---|---|---|---|---|
| Snook (Industries)<br><br>p.34, Q103<br><br>ExI-50 | Check the records of Industries and advise whether the document dated July 23, 1976 was sent to either Imasco Limited ("Imasco") or Imperial Tobacco Company Limited ("Imperial") | The question is irrelevant to the pending motion. Even if it were not irrelevant, the Industries employee to whom this document, which is almost 35 years old, is attributed is no longer with Industries. The determination of whether the document was sent to Imperial/Imasco is unduly onerous and disproportionate as it would require a search of millions of document pages, which may still not provide an answer. Given the foregoing, the question would more properly be directed to Imperial. | Answer | **Premature discovery request – Refusal upheld** |
| Snook (Industries)<br><br>p. 47 Q 140<br><br>Ex I, Tab 9 | Was a copy of this letter sent to Imasco or Imperial | The question is irrelevant to the pending motion. Even if it were not irrelevant, the Industries employee to whom this document, the exact date of which is unknown, is attributed is no longer with Industries. The determination of whether the document was sent to Imperial/Imasco is unduly onerous and disproportionate as it would require a search of millions of document pages, which may still not provide an answer. Given the foregoing, the question would more properly be directed to Imperial. | Answer | **Premature discovery request – Refusal upheld** |
| Snook (Industries)<br><br>p. 50 Q 150 | Check the records of Industries and advise whether the document "Issues Update" was sent to either Imasco or | The question is irrelevant to the pending motion. Even if it were not irrelevant, the whereabouts of the author of this document, which appears to be | Answer | **Premature discovery request – Refusal upheld** |

| | | | | |
|---|---|---|---|---|
| Ex. I-10 | Imperial | several decades old, are not known. The determination of whether the document was sent to Imperial/Imasco is unduly onerous and disproportionate as it would require a search of millions of document pages, which may still not provide an answer. Given the foregoing, the question would more properly be directed to Imperial. | | |
| Snook (Industries) p.66 Q201 ExI-53 | Advise whether Industries ever produced a set of party line answers to the main criticisms of multinationals | The question relates to a document that is not an Industries document and is irrelevant to the pending motion and tantamount to discovery in the underlying action. Even if the question were not irrelevant, the determination of whether Industries ever produced a set of "party line answers" is unduly onerous and disproportionate as it would require a search of millions of document pages, which may still not provide an answer. | Answer | **Relevancy not established - Refusal upheld** |
| Snook (Industries) p.87 Q 267 ExI-62 | Was it a policy of Industries that the companies speak with one voice on policy matters in Sept 1976 | The question relates to a document that is not an Industries document. The question is irrelevant to the pending motion and tantamount to discovery in the underlying action. Even if it were not irrelevant, the determination of whether the purported "policy" is attributable to Industries is unduly onerous and disproportionate as it would require a search of millions of document pages, which may still not provide an answer. | Answer | **Relevancy not established - Refusal Upheld** |
| Snook | Was it a policy of Industries that it | The question relates to a document that is not an | Answer | **Premature discovery** |

| | | | | |
|---|---|---|---|---|
| (Industries)<br><br>p.88 Q 268<br><br>ExI-62 | influence medical and official opinion against incautious imposition of constraints and any unnecessary restriction on smoking | Industries document. Moreover, the question is irrelevant to the pending motion and tantamount to discovery in the underlying action. Even if it were not irrelevant, the determination of whether the purported "policy" is attributable to Industries is unduly onerous and disproportionate as it would require a search of millions of document pages, which may still not provide an answer. | | **request – Refusal upheld** |
| Snook<br>(Industries)<br><br>p.108 Q 323<br><br>ExI-87 | Was this document distributed to Imasco or Imperial | The question is irrelevant to the pending motion. Even if it were not irrelevant, the document, which is almost 35 years old, does not originate from Industries' files. Moreover, the determination of whether the document was sent to Imperial/Imasco is unduly onerous and disproportionate as it would require a search of millions of document pages, which may still not provide an answer. Given the foregoing, the question would more properly be directed to Imperial. | Answer | **Premature discovery request – Refusal upheld** |
| Snook<br>(Industries)<br><br>p.163 Q499<br><br>ExI-138 | Enquire whether Mr. Sheehy, from and after June 30, 1981, as a member of the Board of Industries, retained responsibility of that board for Imasco | The question is vague and open-ended and would require an unduly onerous and disproportionate search of millions of document pages, which may still not provide an answer. Moreover, Mr. Sheehy is no longer with Industries. | Answer | **Premature discovery request – Refusal upheld** |
| Snook<br>(Industries)<br><br>p.177 Q 546<br><br>ExI-166 | Advise whether a copy of this document was sent to Imperial or Imasco | The question is irrelevant to the pending motion. Even if it were not irrelevant, the Industries employee to whom this document, which is over 25 years old, is attributed is no longer with | Answer | **Premature discovery request – Refusal upheld** |

| | | Industries. The determination of whether the document was sent to Imperial/Imasco is unduly onerous and disproportionate as it would require a search of millions of document pages, which may still not provide an answer. Given the foregoing, the question would more properly be directed to Imperial. | | |
|---|---|---|---|---|
| Snook (Industries)<br><br>p.188 Q 588<br><br>ExI-203 | Determine whether the July 1987 guidelines were sent to Imasco | The question is irrelevant to the pending motion. Even if it were not irrelevant, the authors of the constituent parts of this document, which is more than 23 years old, are either unknown or no longer with Industries. The determination of whether the document was sent to Imperial/Imasco is unduly onerous and disproportionate as it would require a search of millions of document pages, which may still not provide an answer. Given the foregoing, the question would more properly be directed to Imperial. | Answer | **Premature discovery request – Refusal upheld** |
| Snook (Industries)<br><br>p.203 Q625<br><br>ExI-236 | Advise whether the material attached to this letter is a document retention policy of Imperial that Mr. Ackman is sending to Mr. Chalfen for questions or thoughts of Industries | The question is irrelevant to the pending motion. The issue of a document retention policy is not an issue in the pleadings or the affidavits. Even if it were not irrelevant, Mr. Chalfen is no longer with Industries. | Answer | **Relevancy not established – Refusal upheld** |
| Snook (Industries)<br><br>p.205 Q628<br><br>ExI-237 | Confirm that Mr. Chalfen is suggesting some revisions of the draft document retention policy of Imperial for Mr. Mercier's consideration | The question is irrelevant to the pending motion. The issue of a document retention policy is not an issue in the pleadings or the affidavits. Even if it were not irrelevant, Mr. Chalfen is no longer with Industries. | Answer | **Relevancy not established - Refusal upheld** |

| Snook (Industries) p.225 Q684 ExI-273 | Confirm that Mr. Levitt of Imasco attended meetings of the financial services strategy group of Industries from July 1992 to 2000 | The question is irrelevant as the financial services strategy group has no relevance to the pending motion. Moreover, it would be unduly onerous and disproportionate to search millions of document pages, which may still not provide an answer. | Answer | **Relevancy not established - Refusal upheld** |

## L. *The Determination of Carreras' Appeal*

**183**    For the above Reasons, it is my opinion that the Master made several errors in principle and his decision should be set aside in its entirety.

**184**    I have completed my own analysis of the undertakings requested from Mr. Cordeschi as Carreras' deponent for the jurisdictional motion. In my opinion, the refusals were proper. My discrete rulings are set out in the following chart:

| Reference | Questions | Industries Response | Master's Disposition | Ruling |
|---|---|---|---|---|
| Cordeschi (Carreras)<br><br>p.19 Q54 | To make enquiries as to whether Carreras has documents that predate 1984 | Mr Cordeschi responded to this question during the cross examination. He does not know the answer and that should end the inquiry. To compel Mr. Cordeschi to undertake a search for documents or make inquiries of others upon whom he did not rely to swear his affidavit is contrary to established legal principle. Further, the question posed is irrelevant to a determination of the jurisdiction motion. Regardless of whether Mr. Cordeschi is able to determine if the answer is "yes" or "no", the answer will not advance the analysis of the Court hearing the Jurisdiction Challenge. The inquiry is simply in the nature of discovery that amounts to a fishing expedition. | Answer | **Premature discovery request- Refusal upheld** |
| Cordeschi (Carreras)<br><br>p.19 Q56 | To provide a description generally of what documents still exist that predate 1984 | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information found in the documents readily available to him in the course of carrying out his responsibilities as director for CRL. In circumstances where Mr. Cordeschi swore a narrow uncontroversial affidavit on behalf of a non-attorning foreign entity, it is inconsistent with legal principle to have him make further inquiries to determine if documents exist and to | Answer | **Premature discovery request - Refusal upheld** |

| | | review them. Further, the question is irrelevant to a determination of the jurisdiction motion. Regardless of Mr. Cordeschi's "description generally" of the nature of any documents that exist, the answer will not advance the analysis of the Court hearing the Jurisdiction Challenge. The inquiry is simply in the nature of discovery that amounts to a fishing expedition. | | |
|---|---|---|---|---|
| Cordeschi (Carreras)<br><br>p.21 Q62 | To provide a copy of Carreras' current business records policy (requirement to retain all business records and documents in relation to the company) | Mr. Cordeschi indicated on cross examination that he could not recall the exact words of this policy. That should end the matter. The question does not relate in any way to the Cordeschi Affidavit, nor is its relevance to the jurisdiction motion even apparent. In these circumstances, compelling a non-attorning defendant, who has no discovery obligations, to produce a document for some speculative purpose of the plaintiff is improper and contrary to the legal principles applicable to undertakings on cross examination on an affidavit. | Answer | **Relevancy not established - Refusal upheld** |
| Cordeschi<br><br>p.21 Q62 | To provide a copy of Carreras' current business records policy (requirement to retain all business records and documents in relation to the company) | Mr. Cordeschi indicated on cross examination that he could not recall the exact words of this policy. That should end the matter. The question does not relate in any way to the Cordeschi Affidavit, nor is its relevance to the jurisdiction motion even apparent. In these circumstances, compelling a non- | Answer | **Premature discovery request - Refusal upheld** |

| | | | | |
|---|---|---|---|---|
| | | attorning defendant, who has no discovery obligations, to produce a document for some speculative purpose of the plaintiff is improper and contrary to the legal principles applicable to undertakings on cross examination on an affidavit. | | |
| Cordeschi (Carreras) p.21 Q64 | To advise whether Carreras had a similar policy or some kind of business records policy in place prior to 1984 | Mr Cordeschi responded to this question during the cross examination. He does not know the answer and that should end the inquiry. The question does not relate to the Cordeschi Affidavit nor is its relevance to the jurisdiction motion apparent. Mr. Cordeschi swore a narrow uncontroversial affidavit on behalf of a non-attorning entity and to compel him, in these circumstances, to undertake a search for a document (that may or may not exist) on the basis of a speculative position of the plaintiff is improper in the context of a cross examination on an affidavit. | Answer | **Premature discovery request – Refusal upheld** |
| Cordeschi (Carreras) p.29 Q95 | To confirm that during the time when Carreras' ultimate parent was Rothmans International Limited, Rothmans International Limited was also the parent of a company called Pall Mall of Canada Limited | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information found in the documents readily available to him in the course of carrying out his responsibilities as director for CRL. That is not surprising as this is a question to which one would expect Rothmans of Pall Mall Canada Limited (a predecessor | Answer with best available information | **Premature discovery request – Refusal upheld** |

| | | | | |
|---|---|---|---|---|
| | | company to a defendant in these proceedings) to have the answer. The plaintiff chose not to undertake inquiries of that entity to obtain this information in support its position on the motion. The burden of finding this information ought not now be placed on Mr. Cordeschi particularly in circumstances where he has sworn only a narrow and uncontroversial affidavit on behalf of a non-attorning foreign entity and the inquiry does not relate to his affidavit. An order compelling a response to this request is not consistent with the applicable legal principles. | | |
| Cordeschi (Carreras)

p.29-30 Q96 | To confirm the period of time when Rothmans International plc was Carreras' ultimate parent, that it was also the ultimate parent of Rothmans of Pall Mall Canada Limited | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information found in the documents readily available to him in the course of carrying out his responsibilities as director for CRL. That is not surprising as this is a question (like the one above) to which one would expect Rothmans of Pall Mall Canada Limited to have the answer. The plaintiff chose not to undertake inquiries of these entities to obtain this information in support its position on the motion. The burden of finding this information ought not now be placed on Mr. Cordeschi | Answer | **Premature discovery request – Refusal upheld** |

| | | particularly in circumstances where he has sworn only a narrow and uncontroversial affidavit on behalf of a non-attorning foreign entity and the inquiry does not relate to his affidavit. An order compelling a response to this request is not consistent with the applicable legal principles. | | |
|---|---|---|---|---|
| Cordeschi (Carreras)<br><br>p.32 Q106 | To confirm that for some period up to 1984, at least during the period 1978 to 1984, Carreras was the Rothmans group research centre | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information found in the documents readily available to him in the course of carrying out his responsibilities as director for CRL. That should end the inquiry. Further inquiries of documents or of others who did not provide information for Mr Cordeschi's affidavit and on issues unrelated to the affidavit is not consistent with the applicable legal principles Further, the question is irrelevant to a determination of the jurisdiction motion. Mr. Cordeschi's opinion today on whether CRL was a "group research centre" is of no assistance to the Court on the Jurisdiction Challenge. The inquiry is simply in the nature of discovery that amounts to a fishing expedition. | Answer whether had responsibility for research during period | **Premature discovery request – Refusal upheld** |
| Cordeschi (Carreras)<br><br>p.32 Q108 | To confirm that Carreras conducted research for companies in the Rothmans group in | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not | Answer | **Premature discovery request – Refusal upheld** |

| | 1978-1984 | know the answer to this question, nor is the information found in the documents readily available to him in the course of carrying out his responsibilities as director for CRL. That should end the inquiry. To compel Mr. Cordeschi to undertake searches for, and review of, documents unrelated to his affidavit or to make inquiries of others upon whom Mr. Cordeschi did not rely to swear his affidavit is not consistent with established legal principle. Further, the question is irrelevant to a determination of the jurisdiction motion. Mr. Cordeschi's opinion today on whether CRL "directed and coordinated smoking and health policies for companies in the Rothmans Group" for a period of time over 25 years ago is of no assistance to the Court on the Jurisdiction Challenge. The question is also inappropriate as it asks for what is, in essence, a legal conclusion. | | |
|---|---|---|---|---|
| Cordeschi (Carreras)<br><br>p.32-33 Q109 | To confirm that Rothmans of Pall Mall Canada was part of the Rothmans group in 1978-1984 | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information found in the documents readily available to him in the course of carrying out his responsibilities as director for CRL. That is not surprising as this is a question to which one | Answer | **Premature discovery request – Refusal upheld** |

| | | would expect Rothmans of Pall Mall Canada Limited (a predecessor company to a defendant in this proceeding) to have the answer. The plaintiff chose not to undertake inquiries of this entity to obtain this information in support its position on the motion. The burden of finding this information ought not now be placed on Mr. Cordeschi particularly in circumstances where he has sworn only a narrow and uncontroversial affidavit on behalf of a non-attorning foreign entity and the inquiry does not relate to his affidavit. An order of this nature is not consistent with the applicable legal principles. | | |
|---|---|---|---|---|
| Cordeschi (Carreras)<br><br>p.33 Q 111 | To advise whether Carreras has documents and reports prior to 1984 that include records of who was employed by the company and the term of their employment | Mr Cordeschi responded to this question during the cross examination. He does not know the answer and that should end the inquiry. To compel Mr. Cordeschi to undertake a search for documents or make inquiries of others upon whom he did not rely to swear his affidavit is contrary to established legal principle. Further, the question is irrelevant to a determination of the jurisdiction motion. Regardless of whether Mr. Cordeschi is able to determine if the answer is "yes" or "no", the answer will not advance the analysis of the Court hearing the Jurisdiction Challenge. The inquiry is simply in the nature of discovery that amounts | Answer | **Premature discovery request - Refusal upheld** |

| | | to a fishing expedition. | | |
|---|---|---|---|---|
| Cordeschi (Carreras)<br><br>p.33 Q 112 | To advise whether Peter Brown was employed by Carreras, for what period of time, and his position | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information found in the documents readily available to him in the course of carrying out of his responsibilities as director for CRL. Mr. Cordeschi also indicated that he does not know Peter Brown or his whereabouts. That should end the inquiry. In the context of a jurisdiction motion, where Mr. Cordeschi has sworn a narrow uncontroversial affidavit, it is a misapplication of legal principle to compel him to undertake efforts to search for and (if found) review documents or attempt to find Mr. Brown in an attempt to answer the plaintiff's question, particularly where Mr. Brown has nothing to do with Mr. Cordeschi's affidavit. | Answer | **Premature discovery request - Refusal upheld** |
| Cordeschi (Carreras)<br><br>p.34 Q113 | To advise whether RWJ Williams was employed by Carreras, for what period of time, and his position | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information in the documents readily available to him in the course of carrying out of his responsibilities as director for CRL. Mr. Cordeschi also indicated that he does not know RWJ Williams or his whereabouts. That should end the inquiry. | Answer | **Premature discovery request - Refusal upheld** |

| | | | | |
|---|---|---|---|---|
| | | In the context of a jurisdiction motion, where Mr. Cordeschi has sworn a narrow uncontroversial affidavit, it is a misapplication of legal principle to compel him to undertake efforts to search for and (if found) review documents or attempt to find RWJ Williams in an attempt to answer the plaintiff's question, particularly where RWJ Williams has nothing to do with Mr. Cordeschi's affidavit. | | |
| Cordeschi (Carreras)i  p.40 Q125  Supplemental Appeal Record of CRL, Tab 5, p. 223 | To advise if Mr. Brown was employed by Carreras in January 1982, the length of employment, his position, and confirm that the letter was sent by Carreras | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information found in the documents readily available to him in the course of carrying out of his responsibilities as director for CRL.  Mr. Cordeschi also indicated that he does not know Peter Brown or his whereabouts.  That should end the inquiry.  In the context of a jurisdiction motion, where Mr. Cordeschi has sworn a narrow uncontroversial affidavit, it is a misapplication of legal principle to compel him to undertake efforts to search for and (if found) review documents or attempt to find Mr. Brown in an attempt to answer the plaintiff's question, particularly where Mr. Brown has nothing to do with Mr. Cordeschi's affidavit. | Answer | **Premature discovery request - Refusal upheld** |

| Cordeschi (Carreras) pp.44-5 Q137 Supplemental Appeal Record of CRL, Tab 5, p. 211 | To confirm that Mr. Wesnos was an employee of Carreras in Sept. 1980, his position and length of employment | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information in the documents readily available to him in the course of carrying out of his responsibilities as director for CRL. Mr. Cordeschi also indicated that he does not know Mr. Wesnos or his whereabouts. That should end the inquiry. In the context of a jurisdiction motion, where Mr. Cordeschi has sworn a narrow uncontroversial affidavit, it is a misapplication of legal principle to compel him to undertake efforts to search for and (if found) review documents or attempt to find Mr. Wesnos in an attempt to answer the plaintiff's question, particularly where Mr. Wesnos has nothing to do with Mr. Cordeschi's affidavit. | Answer | **Premature discovery request - Refusal upheld** |
| Cordeschi (Carreras) p.46 Q141 Supplemental Appeal Record of CRL, Tab 5, p. 216 | To confirm that R. Allen and N. Cohen were employed by Rothmans Pall Mall Canada in Dec. 1980 | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information found in the documents readily available to him in the course of carrying out his responsibilities as director for CRL. That is not surprising as this is a question to which one would expect Rothmans of Pall Mall Canada Limited (a predecessor company to a defendant | Answer | **Premature discovery request - Refusal upheld** |

| | | | | |
|---|---|---|---|---|
| | | in this proceeding) to have the answer. The plaintiff chose not to undertake inquiries of this entity to obtain this information in support its position on the motion. The burden of finding this information ought not now be placed on Mr. Cordeschi particularly in circumstances where he has sworn only a narrow and uncontroversial affidavit on behalf of a non-attorning foreign entity and the inquiry does not relate to his affidavit. An order of this nature is not consistent with the applicable legal principles | | |
| Cordeschi (Carreras)

pp.54-5 Q163

Supplemental Appeal Record of CRL, Tab 5, p. 246 | To confirm that Dr. WD Rowland was an employee of Carreras Rothmans and the length of his employment in his position | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information in the documents readily available to him in the course of carrying out of his responsibilities as director for CRL. Mr. Cordeschi also indicated that he does not know Dr. W.D. Rowland or his whereabouts. That should end the inquiry. In the context of a jurisdiction motion, where Mr. Cordeschi has sworn a narrow uncontroversial affidavit, it is a misapplication of legal principle to compel him to undertake efforts to search for and (if found) review documents or attempt to find Dr. W.D. Rowland in an attempt to answer | Answer | Premature discovery request- Refusal upheld |

| | | | Answer | |
|---|---|---|---|---|
| | | the plaintiff's question, particularly where Dr. W.D. Rowland has nothing to do with Mr. Cordeschi's affidavit. | | |
| Cordeschi (Carreras)<br><br>p.55 Q164<br><br>Supplemental Appeal Record of CRL, Tab 5, p. 246 | To confirm that Mr. RW Allan was an employee of Rothmans of Pall Mall Canada | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the information found in the documents readily available to him in the course of carrying out his responsibilities as director for CRL. That is not surprising as this is a question to which one would expect Rothmans of Pall Mall Canada Limited (a predecessor company to a defendant in this proceeding) to have the answer. The plaintiff chose not to undertake inquiries of this entity to obtain this information in support its position on the motion. The burden of finding this information ought not now be placed on Mr. Cordeschi particularly in circumstances where he has sworn only a narrow and uncontroversial affidavit on behalf of a non-attorning foreign entity and the inquiry does not relate to his affidavit. An order of this nature is not consistent with the applicable legal principles. | Answer | **Premature discovery request - Refusal upheld** |
| Cordeschi (Carreras)<br><br>pp.59-60 Q176<br><br>Supplemental | To confirm that Mr. Matchett was an employee of Carreras Rothmans in June 1977, his position and the length of his employment | In Mr. Cordeschi's responses to the "under advisements" from his cross examination, he advised that he does not know the answer to this question, nor is the | Answer | **Premature discovery request - Refusal upheld** |

| | | | | |
|---|---|---|---|---|
| Appeal Record of CRL, Tab 5, p. 203 | | information in the documents readily available to him in the course of carrying out of his responsibilities as director for CRL. Mr. Cordeschi also indicated that he does not know Mr. Matchett or his whereabouts. That should end the inquiry. In the context of a jurisdiction motion, where Mr. Cordeschi has sworn a narrow uncontroversial affidavit, it is a misapplication of legal principle to compel him to undertake efforts to search for and (if found) review documents or attempt to find Mr. Matchett in an attempt to answer the plaintiff's question, particularly where Mr. Matchett has nothing to do with Mr. Cordeschi's affidavit. | | |

## M. *Conclusion*

**185**     For the above Reasons, I allow the appeal and set aside the Master's order.

**186**     If the parties cannot agree about the matter of costs, they may make submissions in writing beginning with Investments, Industries, and Carreras within 20 days of the release of these Reasons for Decision followed by the Crown within a further 20 days.

**187**     Counsel are to be commended for their helpful argument and factums and for their admirable skill in arguing a refusals motion, which is not an easy task for lawyers, judges, or Masters.

P.M. PERELL J.

cp/e/qlcct/qlvxw/qlced/qlhcs

# TAB 2

*Indexed as:*

# Six Nations of the Grand River Band v. Canada (Attorney General)

**Between**
**Six Nations of the Grand River Band of Indians, plaintiff**
**(respondent in appeal), and**
**The Attorney General of Canada, appellant, and**
**Her Majesty the Queen in Right of Ontario, defendant**

[2000] O.J. No. 1431

48 O.R. (3d) 377

132 O.A.C. 316

46 C.P.C. (4th) 365

96 A.C.W.S. (3d) 358

Court File No. 690/99

Ontario Superior Court of Justice
Divisional Court - Toronto, Ontario

**A. Campbell, Molloy and Lamek JJ.**

Heard: April 12, 2000.
Oral judgment: April 26, 2000.

(15 paras.)

**Counsel:**

Burton H. Kellock, Q.C., Ben A. Jetten and Kirsten Nicolson, for the plaintiff (respondent in appeal).
Gary Penner, for the appellant.

The judgment of the Court was delivered by

**1**   **A. CAMPBELL J.** (orally):-- The issue raised in this appeal is whether a party to a complex action may be required to respond to interrogatories about, and to give particulars of, its legal position during the discovery process.

**2**   For approximately five years Kent J. in Brantford has been the Rule 37.15 case management judge in an action by the Six Nations of the Grand River Band of Indians against the governments of Canada and Ontario for an accounting for the disposition between 1784 and 1850 of about 900,000 acres along the Grand River. He required the federal government to respond to questions and give particulars of its legal position in respect of matters that go to the heart of the action.

**3**   His reasons for judgment as to the refusals to answer are these:

> [7] Canada's refusals to answer are primarily based on its objections that the questions asked are wholly, or at least in part, questions of law, questions seeking a legal opinion or ultimate issue questions. It is correct that legal argument of one's case or position is not required until trial. Some support for Canada's contention may be found in the decision of Trainor, J. in Ontario Bean Producers' Marketing Board v. W.G. Thompson et al. (1981), 32 O.R. (2d) 69 at 73. In that case, Trainor, J. reluctantly concluded that it was not a proper discovery question to ask what the position of the party is with respect to the law applicable to the issues between the parties. Since such questions are often asked in various ways during discovery, it must be concluded that Trainor J. believed that the specific questions in the Ontario Bean case went to the ultimate issue. Especially in a complex case, unless the answer is for the court to ultimately deliver, a question concerning a party's position should be answered by the discovery witness.

> [8] One can readily understand that, in litigation of this magnitude, those drafting pleadings, answering discovery questions or providing particulars will be as protective of their position as possible. The desire to preserve the option of arguing any and every particular point that may be in issue becomes almost irresistible. But, practically speaking, each party needs to know the position of the opposite party. A distinction must, therefore, be drawn between final legal argument and the position being taken by a party on a particular point or issue. A question of law, which is more often than not really a question of mixed fact and law, cannot be held to be improper. In this case, for example, Six Nations needs to know,

(a)    the position Canada takes concerning the extent to which history will be required to be proven;

(b)    the position that Canada takes regarding the effect of:

*    The Royal Proclamation of 1763
*    The Quebec Act of 1774
*    The Haldimand Proclamation of 1784
*    The devolution of pre-confederation obligations

(c)    the position that Canada takes regarding whether or not Canada is estopped from taking a different position than was taken on its behalf and accepted by the Court in R. v. Secretary of State of Foreign and Commonwealth Affairs, [1982] 1 Q.B. 892 (U.K.C.A.) and Isaac v. Davey (1974), 5 O.R. (2nd) 610 C.A.

[9] All of the foregoing can fairly be said to be "matters" that may be in issue, could be argued, but are probably not determinative of the ultimate issue. Six Nations needs to know Canada's position on those matters. Without the answers sought the litigation will remain unfocused. The issues need to be narrowed or at least joined or the trial could become unmanageable. Futhermore [sic], no harm can come to Canada by being required to determine its position and state it.

[10] Canada also raised a concern that its discovery witness was a non-lawyer who, if required to answer many of the questions, would be asked to set out essentially legal positions. While technically correct, it is clear that such a witness will be giving answers only on the advice of counsel or that counsel may even answer for the witness.

[11] For all of these reasons, both legal and practical, I have concluded that Canada's objections to the questions are not valid and that the questions listed should be answered.

4    His reasons for judgment as to particulars are these:

[12] Some of the arguments raised for refusing to answer questions could be applied to this topic as well. To the extent that they do, what I have already observed and ruled also applies on this issue. Counsel for Canada contends further that particulars are normally provided where necessary to enable a party

to plead. Six Nations, having completed the pleadings and taken the fresh step of commencing discovery should not, Canada argues, be entitled to further particulars. Counsel also expressed a concern that should particulars now be ordered, the door will be opened to continued requests. The decision of Lerner J. in Steiner v. Lindzon (1976), 14 O.R. (2d) 122, (H.C.J.) is supportive of Canada's position. That judgment confirms that an order for particulars is in the discretion of the court, that discretion to be exercised in the circumstances of the case, to do justice to all parties.

[13] Is there any basis in law, then, to order particulars during the discovery process? The answer would appear to be yes. In Mexican Northern Power Co. v. S. Pearson & Son Limited (1914), 5 O.W.N. 648, (H.C.J.), Middleton J. at page 650 indicated that one of the functions of particulars was to define the issues to be dealt with at trial. He allowed that a party in a complex case could move for particulars, even after discovery and if a new matter was raised in the particulars could have further discovery. In Fairbairn v Sage (1924), 56 O.L.R. 462 (App. Div.) an appellate court upheld the decision of Riddell J. who had drawn a distinction between particulars for the purpose of pleadings and particulars for the purpose of preparation for trial. Notwithstanding the Steiner decision, it would seem that, at least in a complex case, particulars may be ordered to enable a party to prepare for trial. This is clearly a complex case. For the same practical reasons expressed above in these reasons, the particulars sought will focus the litigation. That is in the interests of both parties. It does justice to both parties. It will enable the court to better know the real issued to be tried.

[14] For all of these reasons I have concluded that the particulars sought should be provided.

5    As for the discovery questions, leave to appeal was granted by Lane J. mainly because of the apparent conflict between the judgment of Kent J. and the decisions of Trainor J. in Ontario Bean Producers' Marketing Board v. W.G. Thompson et al. (1981), 32 O.R. (2d) 69 at p. 73 and Can-Air Services Ltd. v. British Aviation Insurance Co. et al. (1988), 30 C.P.C. (2d) 1, (Alta. C.A.). As for particulars, leave was granted mainly because of the apparent conflict with C.S.I. Manufacturing and Distribution Inc. v. Astroflex Inc. (1992), 45 C.P.R. (3d) 195 (F.C.T.D.) which held that particulars should not be ordered which require a party to disclose its legal position.

6    On the appeal in this Court, Canada sought to argue matters that were not argued before Kent J. such as relevance, sufficiency of answer, and hardship in relation to specific questions. Leave to appeal was not granted in respect of those individual matters, but only on the questions that raise issues of general public importance. We declined to hear argument on matters not argued before

Kent J. and in respect of which leave to appeal was not granted. The only issues properly before us relate to the propriety of the demand for particulars delivered by the plaintiff (both with respect to its timing and its content) and the propriety of written interrogatories directed to ascertaining the position taken by Canada on relevant legal issues.

**7**    As for the timing of particulars, for the reasons given by Kent J., there may be cases where the complexity of the litigation requires that particulars be ordered during the discovery process in order to enable a party to prepare for trial. This is not to say that a court in a case like this should order particulars during the discovery process whenever requested. It may be that particulars such as these would be ordered at this stage only in a rare case. In most cases, the pleadings and the particulars that emerge during the pleading state will render unnecessary the kind of order made here. These are questions of discretion. The learned motions judge, who has been case managing this matter for about five years, is intimately familiar with its complex and lengthy procedural history. We cannot say that he erred in principle in his conclusion that the orders were in the interests of both parties in order to focus the issues, help the parties prepare for trial, and enable the court better to know the real issues to be tried. It cannot be said that he erred in principle in the exercise of his discretion.

**8**    As for the legal content of particulars, nothing in Rule 25.10 or its predecessors restricts particulars to allegations of fact alone. See for instance, Brazier v. T.T.C., [1946] O.W.N. 890 where Barlow J. required particulars of how the pleaded statutes were relevant.

**9**    As for discovery, Rule 31.06(1) requires the examined party to answer any proper question related to "any matter in issue in the action". On a plain reading of the Rule, the word "matter" is wide enough to include both a question of fact and the actual position taken by a party on a legal issue. Every day, parties are asked on examination for discovery, "What is your position on liability? Do you admit liability?" While the cases referred to by Lane J. give a much more restricted interpretation of the right of discovery, recent experience shows the real need, particularly in complex matters, to narrow the legal issues well in advance of trial. For the reasons given by Kent J., we agree that Rule 31.06(2) should be given the broad purposive interpretation he gave it in order to focus the issues in the litigation.

**10**    In the 1980 Ontario Bean Producers case, Trainor J. set out succinctly the broad purposes of discovery, which include the need to enable a party to know the case he has to meet and to avoid surprise at trial. Trainor J. reached the conclusion that under the Rules with respect to pleading and discovery, as they existed at that time, discoveries were limited to questions of fact and it was not proper to require a party to disclose its position on a point of law. He specifically noted that he came to that conclusion "with reluctance" and pointed out that permitting such questions would narrow the issues at trial, prevent surprise, reduce the expense of trials and implement "important policy considerations related to the purpose of discovery". However, without substantial amendments to the Rules, he felt constrained to decide the case as he did. Since that case was decided in 1982, substantial amendments to the Rules have broadened the rights of discovery. It is

much more common in today's litigation to see pleadings of law, particularly in complex litigation such as the case at bar. The changes to the rules of pleading (particularly Rules 25.06(2) and 25.07(4)) require the exercise of caution in applying case law that predates the Rule amendments. We note, for example, that Rule 25.07(4) requires a defendant to plead any "matter" on which that party intends to rely to defeat the claims of the opposite party and which, if not specifically pleaded might take the opposite party by surprise at trial. The balance of the Rule speaks of the pleading of "facts". It follows that the use of the word "matter" in Rule 25.07(4) was intended to mean something beyond mere facts. Since the Rule with respect to the scope of discovery also refers to "any matter" at issue, it follows that there is a right to discovery with respect to "matters" relevant to the lawsuit, and not just "facts".

**11**    Canada has pleaded many issues of law or issues of mixed fact and law. This is perfectly appropriate in a case of this nature. Some of these issues are stated vaguely. Canada takes the position that there is no mechanism under the Rules by which the plaintiff can compel Canada to confirm or clarify its legal position in respect of any issue of law prior to trial, that position is not consistent with the policy underlying the Rules which is to encourage full and frank disclosure prior to trial so as to minimize costs and expedite the just resolution of claims. Further, it is not an interpretation of the Rules which is in accordance with their plain and ordinary meaning.

**12**    This is not a case like McLeod Lake Indian Band v. British Columbia, [1989] B.C.J. No. 1904, where the interrogatories were argumentative and designed to box the opposite party into a logical corner instead of narrowing and finding the issue through trial. In this case, the procedural background gave Kent J. a basis for concluding that the answers and particulars were necessary in these circumstances in order to focus the outstanding issues and enable the court better know the real issues to be tried.

**13**    As for the Can-Air decision of the Alberta Court of Appeal, which is not binding upon on us, it was based on Rules of Procedure different from our own, and involved the determination of issues quite different from those before us. In Can-Air, the Court held that a party could not ask on discovery "On what facts do you rely in support of the allegations at paragraph "X" of the statement of claim?" That kind of question is commonplace in discoveries in Ontario. Therefore, the decision in Can-Air is of little assistance on the issue before us. We note that the Alberta Court of Appeal said that it would require a fortune-teller to know what legal position a party would take at trial. Counsel for the Attorney General agreed that in this case it would require a fortune-teller to foresee what legal position the Attorney General for Canada would take at trial. We do not consider that to be a position in keeping with our Rules of Civil Procedure.

**14**    Canada's argument, that the lay person produced for discovery on behalf of the defendant is unable to answer questions that call for legal conclusions, is without merit. The Rules contemplate that the person being discovered should inform herself as to issues raised (Rule 31.06(1) and Rule 35.02(1)) and is not expected to have personal knowledge of every issue. There is also specific provision for questions being answered by legal counsel (Rule 31.08). Likewise, there is no problem

created by the fact that the person being discovered is under oath. She is not required to swear to the truth of the law, but merely to state what the defendant's current legal position is. If that position changes, she is required to advise the plaintiff, as would be case for any others on discovery.

**15**    In the result, we are in agreement with the decision of Kent J. For these reasons, the appeal is dismissed with costs fixed at $20,000.00 payable forthwith.

A. CAMPBELL J.
MOLLOY J.
LAMEK J.

cp/d/qlbbd/qlalm

# TAB 3

*Case Name:*

# Ravenda Homes Ltd. v. 1372708 Ontario Inc.

**Between**
**Ravenda Homes Ltd., Plaintiff, and**
**1372708 Ontario Inc. and Vaughn Gibbons, Defendants**
**And between**
**1372708 Ontario Inc., Plaintiff by Counterclaim, and**
**Ravenda Homes Ltd. and John Ravenda, Defendants to the**
**Counterclaim**

[2008] O.J. No. 4517

171 A.C.W.S. (3d) 95

2008 CarswellOnt 6715

Welland Court File No. 5234/06

Ontario Superior Court of Justice

**J.E. Sheppard J.**

Heard: October 31, 2008.
Judgment: November 13, 2008.

(16 paras.)

*Civil litigation -- Civil procedure -- Discovery -- Examination for discovery -- Persons who may be examined -- Corporations -- Application for leave to appeal allowed -- The corporate parties were involved in a dispute related to an agreement for sale of real property -- The determinative issue was the purported execution of the agreement -- The defendant refused to produce the signatory for examination, as she had resigned her position as an officer -- A judge ordered a restricted examination of the individual as a non-party -- The appellate court found that the resignation raised issues of good faith -- Examination as a non-party imposed an unwarranted restriction to seeking relevant facts related to execution of the agreement.*

*Real property law -- Proceedings -- Practice and procedure -- Discovery -- Application for leave to appeal allowed -- The corporate parties were involved in a dispute related to an agreement for sale*

*of real property -- The determinative issue was the purported execution of the agreement -- The*
*defendant refused to produce the signatory for examination, as she had resigned her position as an*
*officer -- A judge ordered a restricted examination of the individual as a non-party -- The appellate*
*court found that the resignation raised issues of good faith -- Examination as a non-party imposed*
*an unwarranted restriction to seeking relevant facts related to execution of the agreement.*

**Statutes, Regulations and Rules Cited:**

Ontario Rules of Civil Procedure, Rule 31.03(2)(a), Rule 31.10(5), Rule 62.02(2)

**Counsel:**

Michael G. Emery, for the Plaintiff.

Robert C. Harason, for the Defendants.

Robert C. Harason, for the Plaintiff by Counterclaim.

Michael G. Emery, for the Defendants to the Counterclaim.

---

## ORDER

**1    J.E. SHEPPARD J.**:-- The plaintiff, Ravenda Homes Ltd. (herein "Homes"), claims against
the defendants, 1372708 Ontario Inc. (herein "137") and Vaughn Gibbons (presumably the main
shareholder of 137), specific performance of an agreement whereby Homes was to sell to 137
building lots on which Homes was to build houses. Alternatively, the plaintiff claims damages for
breach of contract and other relief. The defendants counterclaimed against Homes and John
Ravenda, (presumably the main shareholder of Ravenda).

**2**    What appears to be an overriding, if not probably the determining issue is: the purported
execution of the agreement which is dated December 13, 2005 by Cindy Gibbons (wife of Vaughn
Gibbons) as an authorized officer on behalf of 137. This agreement is the subject of the claim.

**3**    Paragraphs 3 and 4 of the plaintiff's Factum on the motion for leave provides as follows:

> 3.    The Contract, referred to throughout the motion materials as the "December 13,
> 2005 document" shows the signature of Cindy, described as president of 137, as
> the authorized officer executing that document on behalf of 137.
>
> 4.    137 denies that the December 13, 2005 document was agreed to or executed by
> 137 in its Statement of Defence. However, 137 pleads in the alternative that if the

December 13, 2005 document was executed by 137 (which is not admitted but is expressly denied), then a variety of further defences are pleaded. One such defence states that the December 13, 2005 document was signed by Cindy without authorization by 137 or knowledge of the terms of the document, or of the class or character of the document, and raises the doctrine of *non est factum*.

**4**    Counsel for Homes sought to examine for discovery Cindy Gibbons and served a Notice of Examination dated April 11, 2008 for discovery on May 2, 2008. Counsel for Homes had earlier written a letter dated February 8, 2008 to counsel for 137 specifying Cindy as the person counsel wished to examine on behalf of 137. As at February 8, 2008, Cindy was recorded as a director and president of 137. Counsel for 137 responded on February 26, 2008 informing counsel for Homes that 137 will not produce Cindy to be examined on behalf of 137 because she is not an officer, director or employee of 137 having resigned as of February 25, 2008, 17 days after the February 8, 2008 letter from counsel for Homes indicating their intention to examine Cindy. Clearly, the timing of the resignation raises questions, indeed suspicions, as to the motives behind such moves. Also, management of 137 were put on notice by the Notice of Examination dated April 11, 2008 that counsel for Homes were expecting to examine Cindy on May 2, 2008; yet, it was not until February 26, 2008 that counsel for 137 disclosed their intention not to produce Cindy, she having resigned as of February 25, 2008. The court asks why counsel for 137 did not move under Rule 31.03(2)(a) for an order for "the examining party to examine another officer, director or employee." Rather, it appears 137 chose to do nothing and let the appointed date for discovery, May 2, 2008, passby requiring counsel for Homes to obtain a Certificate of Non Attendance. Counsel for 137 also took the position that Cindy was not medically fit to be examined. I shall come back to this point later.

**5**    Homes moved for:

    (a)    an order striking the statement of defence of 137 for failure of Cindy to attend;

    (b)    an order dismissing the counterclaim of 137;

    (c)    an order requiring Cindy to attend for discovery as the representative of 137;

    (d)    an order that Cindy be examined as an officer, director or employee of 137;

    (e)    an order granting leave to examine Cindy as a non-party.

**6**    137 filed a cross-motion for:

    (a)    an order that cross-examinations of John Ravenda and Vaughn Gibbons be treated as discoveries of themselves and their respective corporations;

    (b)    an order that Vaughn Gibbons be discovered on behalf of 137;

    (c)    an order under Rule 31.03(2)(a) that Vaughn Gibbons be discovered on behalf of 137 instead of Cindy (the Notice of Examination dated April 11,

2008 referred to above specified Cindy).

7   By order dated August 11, 2008, Matheson J. ordered as follows:

    1.   Vaughn Gibbons would be examined as the representative for 137;

    2.   granted leave for Cindy to be discovered as a non-party, "but restricted solely to what information or belief she has to the December 13, 2005 documents"; and

    3.   granted other orders not material to the motion for leave to appeal.

8   As general principles of law, the courts have said:

    1.   Statements of the person examined on behalf of the corporation bind the corporation (see *Royal Bank of Canada v. Paul Pogue Companies Ltd.* (1972), 11 O.R. (2d) 171 (C.A.)).

    2.   Where the officer, director or employee resigns in good faith before the examination takes place the examining party loses its right to examine him (see *Stepps Investments Ltd. v. Security Capital Corp. Ltd.* (1973), 2 O.R. (2d) 648 (H.C.)).

    3.   The officer examined must be an officer of the corporation as of the date of the examination (see *Scott Transport Ltd. v. Bondy*, [1973] 2 O.R. 159 (H.C.)).

    4.   A party's *prima facie* right to name the representative of a corporate party to be examined should not be denied merely because the court is persuaded that another person would give a better examination. The court cannot substitute its opinion for that of counsel conducting his client's case (see *Cineplex Odeon Corp. v. Toronto Star Publishing Ltd.* (1986), 11 C.P.C. (2d) 291 (Ont. Master)).

    5.   There is a heavy onus on a litigant seeking a change of officer to be examined on the grounds of ill health (see *G.C.C. Ltd. v Thunder Bay* (1980), 16 C.P.C. 15 (Ont. Master)).

9   In granting an order for discovery of a non-party as ordered by Matheson J. and which had not been asked for by Homes, Rule 31.10(2) directs that such an order:

    ... shall not be made unless the court is satisfied that,

        (a)   the moving party has been unable to obtain the information from other persons whom the moving party is entitled to examine for discovery, or from the person the party seeks to examine;

10   Further Rule 31.10 (5) provides:

> The evidence of a person examined under this rule may not be read into evidence at trial under subrule 31.11(1).

**11**    Counsel for Homes must prove the agreement dated December 13, 2005. Cindy, on an earlier examination, apparently said she "had no memory of signing the document dated December 13, 2005." The question arises: how does counsel for the plaintiff prove execution of the December 13, 2005 agreement, the subject of the action, in the face of Cindy saying she has no memory of signing it? There seems to be no admission by a representative of 137 as to the execution of the agreement. Cindy has allegedly resigned as an officer and director of 137 and further claims to be medically unfit to appear at an examination for discovery. Yet, according to paragraph 26 of Homes' Factum, Cindy remains an officer and director of V. Gibbons Contracting Limited, a related company owned by her husband.

**12**    I have earlier suggested that Cindy's resignation as an officer and director raises the question of good faith and Matheson J. made no comment on it. Also, Matheson J. seemed to accept the medical evidence, such as it was, as to Cindy's medical condition and her alleged inability to sit on an examination for discovery even though Matheson J. himself questioned the sufficiency of such evidence.

**13**    Ordering Homes to examine Cindy as a non-party and further restricting the examination to her information pertaining to the December 13, 2005 agreement imposes an unwarranted restriction on counsel for Homes seeking all relevant facts and information as to the execution of the agreement by 137. If Cindy persists in saying she has no memory of signing the document, then counsel must explore with her what her role was in 137, what duties she performed, what letters, documents and agreements she signed and it may be necessary for Homes to call expert handwriting evidence on the point. This probability was mentioned on the motion for leave to appeal.

**14**    Having regard to the two-branch test laid down in Rule 62.02(4)(b) and the decision of the court in *Greslik v. Ontario Legal Aid Plan* (1988), 65 O.R. (2d) 110, I am of the view that there is good reason to doubt the correctness of the orders of Matheson J. and the proposed appeal involves matters of such importance that leave to appeal should be granted. Surely, it is a matter of importance that counsel should not be prevented from seeking all relevant and material facts on a critical issue from the person who, in this case, purportedly signed the agreement.

**15**    Leave to appeal the orders of Matheson J. dated August 11, 2008 and September 11, 2008 (the latter as to costs) is granted. I believe the Divisional Court will deal with costs on the motion.

**16**    I have not overlooked counsel's for 137 submission that the motion for leave was filed beyond the 7-day limit prescribed in Rule 62.02(2). There is good argument on both sides of this issue and in view of my decision I chose not to deal with it. For purposes of the record, however, I invoke the closing words of Rule 62.02(2) and extend the time for filing the motion for leave to the date of actual filing.

J.E. SHEPPARD J.

cp/e/qlbxm/qlprp/qlaxw/qlana/qlhcs

# TAB 4



UNITED STATES CODE SERVICE
Copyright © 2014 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved

\*\*\* Current through changes received December 20, 2013 \*\*\*

FEDERAL RULES OF BANKRUPTCY PROCEDURE AND OFFICIAL BANKRUPTCY FORMS
PART II. OFFICERS AND ADMINISTRATION; NOTICES; MEETINGS; EXAMINATIONS; ELECTIONS; AT-
TORNEYS AND ACCOUNTANTS

**Go to the United States Code Service Archive Directory**

*USCS Bankruptcy R 2019*

Review Court Orders which may amend this Rule.

Rule 2019.   Disclosure Regarding Creditors and Equity Security Holders in Chapter 9 and Chapter 11 Cases

(a) Definitions.   In this rule the following terms have the meanings indicated:
    (1) "Disclosable economic interest" means any claim, interest, pledge, lien, option, participation, derivative instru-
ment, or any other right or derivative right granting the holder an economic interest that is affected by the value, acqui-
sition, or disposition of a claim or interest.
    (2) "Represent" or "represents" means to take a position before the court or to solicit votes regarding the confirma-
tion of a plan on behalf of another.

(b) Disclosure by groups, committees, and entities.
    (1) In a chapter 9 or 11 case, a verified statement setting forth the information specified in subdivision (c) of this rule
shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple cred-
itors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed
entirely of affiliates or insiders of one another.
    (2) Unless the court orders otherwise, an entity is not required to file the verified statement described in paragraph
(1) of this subdivision solely because of its status as:
        (A) an indenture trustee;
        (B) an agent for one or more other entities under an agreement for the extension of credit;
        (C) a class action representative; or
        (D) a governmental unit that is not a person.

(c) Information required.   The verified statement shall include:
    (1) the pertinent facts and circumstances concerning:
        (A) with respect to a group or committee, other than a committee appointed under § 1102 or § 1114 of the Code
[*11 USCS § 1102* or *1114*], the formation of the group or committee, including the name of each entity at whose in-
stance the group or committee was formed or for whom the group or committee has agreed to act; or
        (B) with respect to an entity, the employment of the entity, including the name of each creditor or equity security
holder at whose instance the employment was arranged;
    (2) if not disclosed under subdivision (c)(1), with respect to an entity, and with respect to each member of a group or
committee:
        (A) name and address;

(B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date the entity was employed or the group or committee was formed; and

(C) with respect to each member of a group or committee that claims to represent any entity in addition to the members of the group or committee, other than a committee appointed under § 1102 or § 1114 of the Code [*11 USCS § 1102 or 1114*], the date of acquisition by quarter and year of each disclosable economic interest, unless acquired more than one year before the petition was filed;

(3) if not disclosed under subdivision (c)(1) or (c)(2), with respect to each creditor or equity security holder represented by an entity, group, or committee, other than a committee appointed under § 1102 or § 1114 of the Code [*11 USCS § 1102 or 1114*]:

(A) name and address; and

(B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date of the statement; and

(4) a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors or equity security holders.

(d) Supplemental statements.   If any fact disclosed in its most recently filed statement has changed materially, an entity, group, or committee shall file a verified supplemental statement whenever it takes a position before the court or solicits votes on the confirmation of a plan. The supplemental statement shall set forth the material changes in the facts required by subdivision (c) to be disclosed.

(e) Determination of failure to comply; sanctions.

(1) On motion of any party in interest, or on its own motion, the court may determine whether there has been a failure to comply with any provision of this rule.

(2) If the court finds such a failure to comply, it may:

(A) refuse to permit the entity, group, or committee to be heard or to intervene in the case;

(B) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by the entity, group, or committee; or

(C) grant other appropriate relief.

**HISTORY:**

(Amended Aug. 1, 1987; Aug. 1, 1991.)

(As amended Dec. 1, 2011.)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

Other provisions:

**Notes of Advisory Committee.** This rule is a comprehensive regulation of representation in chapter 9 municipality and in chapter 11 reorganization cases. It is derived from §§ 209-213 of the Act and former Chapter X Rule 10-211.

*Note to Subdivision (b).* Subdivision (b) is derived from §§ 212, 213 of the Act. As used in clause (2), "other authorization" would include a power or warrant of attorney which are specifically mentioned in § 212 of the Act. This rule deals with representation provisions in mortgages, trust deeds, etc. to protect the beneficiaries from unfair practices and the like. It does not deal with the validation or invalidation of security interests generally. If immediate compliance is not possible, the court may permit a representative to be heard on a specific matter, but there is no implicit waiver of compliance on a permanent basis.

**Notes of Advisory Committee on 1991 amendments.** *Note to Subdivision (a).* Subdivision (a) is amended to exclude from the requirements of this rule committees of retired employees appointed pursuant to § 1114 of the Code. The words "with the clerk" are deleted as unnecessary. See Rules 5005(a) and 9001(3).

**Notes of Advisory Committee on 2011 amendments.** The rule is substantially amended to expand the scope of its coverage and the content of its disclosure requirements. Stylistic and organizational changes are also made in order to provide greater clarity. Because the rule no longer applies only to representatives of creditors and equity security holders, the title of the rule has been changed to reflect its broadened focus on disclosure of financial information in chapter 9 and chapter 11 cases.

*Note to Subdivision (a).* The content of subdivision (a) is new. It sets forth two definitions. The first is the definition of the term "disclosable economic interest," which is used in subdivisions (c)(2) and (c)(3). The definition of the term is intended to be sufficiently broad to cover any economic interest that could affect the legal and strategic positions a stakeholder takes in a chapter 9 or chapter 11 case. A disclosable economic interest extends beyond claims and interests owned by a stakeholder and includes, among other types of holdings, short positions, credit default swaps, and total return swaps.

The second definition is of "represent" or "represents." The definition provides that representation requires active participation in the case or in a proceeding on behalf of another entity--either by taking a position on a matter before the court or by soliciting votes on the confirmation of a plan. Thus, for example, an attorney who is retained and consulted by a creditor or equity security holder to monitor the case, but who does not advocate any position before the court or engage in solicitation activities on behalf of that client, does not represent the creditor or equity security holder for purposes of this rule.

*Note to Subdivision (b).* Subdivision (b)(1) specifies who is covered by the rule's disclosure requirements. In addition to an entity, group, or committee that represents more than one creditor or equity security holder, the amendment extends the rule's coverage to groups or committees that consist of more than one creditor or equity security holder. The rule no longer excludes official committees, except as specifically indicated. The rule applies to a group of creditors or equity security holders that act in concert to advance common interests (except when the group consists exclusively of affiliates or insiders of one another), even if the group does not call itself a committee.

Subdivision (b)(2) excludes certain entities from the rule's coverage. Even though these entities may represent multiple creditors or equity security holders, they do so under formal legal arrangements of trust or contract law that preclude them from acting on the basis of conflicting economic interests. For example, an indenture trustee's responsibilities are defined by the indenture, and individual interests of bondholders would not affect the trustee's representation.

*Note to Subdivision (c).* Subdivision (c) sets forth the information that must be included in a verified statement required to be filed under this rule. Subdivision (c)(1) continues to require disclosure concerning the formation of a committee or group, other than an official committee, and the employment of an entity.

Subdivision (c)(2) specifies information that must be disclosed with respect to the entity and each member of the committee and group filing the statement. In the case of a committee or group, the information about the nature and amount of a disclosable economic interest must be specifically provided on a member-by-member basis, and not in the aggregate. The quarter and year in which each disclosable economic interest was acquired by each member of a committee or group (other than an official committee) that claims to represent others must also be specifically provided, except for a disclosable economic interest acquired more than a year before the filing of the petition. Although the rule no longer requires the disclosure of the precise date of acquisition or the amount paid for disclosable economic interests, nothing in this rule precludes either the discovery of that information or its disclosure when ordered by the court pursuant to authority outside this rule.

Subdivision (c)(3) specifies information that must be disclosed with respect to creditors or equity security holders that are represented by an entity, group, or committee. This provision does not apply with respect to those represented by official committees. The information required to be disclosed under subdivision (c)(3) parallels that required to be disclosed under subdivision (c)(2)(A) and (B). The amendment also clarifies that under (c)(3) the nature and amount of each disclosable economic interest of represented creditors and shareholders must be stated as of the date of the verified statement.

Subdivision (c)(4) requires the attachment of any instrument authorizing the filer of the verified statement to act on behalf of creditors or equity security holders.

*Note to Subdivision (d).* Subdivision (d) requires the filing of a supplemental statement at the time an entity, group, or committee takes a position before the court or solicits votes on a plan if there has been a material change in any of the information contained in its last filed statement. The supplemental verified statement must set forth the material changes that have occurred regarding the information required to be disclosed by subdivision (c) of this rule.

*Note to Subdivision (e).* Subdivision (e) addresses the court's authority to determine whether there has been a violation of this rule and to impose a sanction for any violation. It no longer addresses the court's authority to determine violations of other applicable laws regulating the activities and personnel of an entity, group, or committee.

**NOTES:**

Related Statutes & Rules:
    Creditors' and equity security holders' committees, *11 USCS §§ 1102, 1103.*

USCS Bankruptcy R 2019

Research Guide:

Am Jur:
    *9 Am Jur 2d, Bankruptcy §§ 108, 190, 651, 668, 675.*
    *9C Am Jur 2d, Bankruptcy § 2916.*

Forms:
    1 Collier Forms Manual (4th ed.), §§ 9.41-9.43, Committees in Chapter 11 Cases.

Bankruptcy:
    *1 Collier on Bankruptcy (Matthew Bender 16th ed.), ch 8, Professional Responsibility P 8.02.*
    *6 Collier on Bankruptcy (Matthew Bender 16th ed.), ch 901, Applicability of Other Sections of This Title P 901.04.*
    *7 Collier on Bankruptcy (Matthew Bender 16th ed.), ch 1102, Creditors' and Equity Security Holders' Committees P 1102.06.*
    *7 Collier on Bankruptcy (Matthew Bender 16th ed.), ch 1125, Postpetition Disclosure and Solicitation P 1125.01.*
    *9 Collier on Bankruptcy (Matthew Bender 16th ed.), ch 2018, Intervention; Right to Be Heard P 2018.04.*
    9 Collier on Bankruptcy (Matthew Bender 16th ed.), ch 2019, Representation of Creditors and Equity Security Holders in Chapter 9 Municipality and Chapter 11 Reorganization Cases PP 2019.01 et seq.
    *9 Collier on Bankruptcy (Matthew Bender 16th ed.), ch 3001, Proof of Claim PP 3001.06, 3001.08.*
    9 Collier on Bankruptcy (Matthew Bender 16th ed.), ch 3003, Filing Proof of Claim or Equity Security Interest in Chapter 9 Municipality or Chapter 11 Reorganization Cases P 3003.03.
    *10 Collier on Bankruptcy (Matthew Bender 16th ed.), ch 7023, Class Proceedings P 7023.01.*
    5 Collier Bankruptcy Practice Guide, ch 88, Filing of Claims or Interests in Chapter 11 Cases P 88.17.
    6 Collier Bankruptcy Practice Guide, ch 94, Trading Claims in *Chapter 11 P 94*.05.

Annotations:
    Construction and Application of *Fed. R. Bankr. P. 9010(a)*, Providing That Debtor, Creditor, Equity Security Holder, Indenture Trustee, Committee, or Other Party May Appear in Case Under Code and Act Either in Entity's Own Behalf or by an Attorney Authorized to Practice Law in the Court, and Perform Any Act Not Constituting the Practice of Law, by Authorized Agent, Attorney-in-Fact, or Proxy.  *43 ALR Fed 2d 101.*
    Information Filed in Bankruptcy Court as Trade Secret or Confidential Research, Development, or Commercial Information Protected from Public Disclosure Pursuant to *11 U.S.C.A. § 107(b)(1)* [*11 USCS § 107(b)(1)*].  *61 ALR Fed 2d 1.*

Interpretive Notes and Decisions:
    1. Generally 2. Filing of proofs of claims 3.--Class claims 4. Miscellaneous

### 1. Generally

    Representative of single creditors need not file statements pursuant to Bankruptcy Rule 2019.  *In re Mandalay Shores Cooperative Housing Asso. (1986, ND Ill) 63 BR 842.*

    Bankruptcy court did not error in ordering filing of informational statements, pursuant to *Fed. R. Bankr. P. 2019*, that did not require filing of powers if attorney or other empowering documents by representatives of creditors seeking recovery for asbestos-related injuries. *Certain Underwriters at Lloyds v Future Asbestos Claim Representative (In re Kaiser Aluminum Corp.) (2005, DC Del) 327 BR 554, 54 CBC2d 1139.*

Authorization by plaintiffs in District Court litigation for attorneys to represent them does not authorize attorneys to act as agents for plaintiffs in Chapter 7 bankruptcy case under Bankruptcy Rules 3001(b) and 2019(a).   *In re Great W. Cities (1988, BC ND Tex) 88 BR 109, CCH Bankr L Rptr P 72402,* vacated, in part, revd, in part, remanded on other grounds (1989, ND Tex) *107 BR 116.*

To be authorized agent of multiple grouping, Bankruptcy Rule 2019 requires that every person purporting to represent more than one creditor in Chapter 11 reorganization must file verified statement setting forth names and addresses of creditors, nature and amount of claims, and relevant facts and circumstances surrounding employment of agent; only when agent has express authorization may he file claim on behalf of another.   *In re Ionosphere Clubs (1989, BC SD NY) 101 BR 844, 21 CBC2d 331, CCH Bankr L Rptr P 72964.*

Disclosure underpinnings of Bankruptcy Rule 2019 require law firms representing multiple entities, i.e., creditors and equity interest holders, to disclose written basis, if any, for their representation of listed entities.   In re CF Holding Corp. / *Colt's Mfg. Co. (1992, BC DC Conn) 145 BR 124, 23 BCD 772.*

Unofficial committee of shareholders of debtor was required to provide disclosure of its securities trading information under *Fed. R. Bankr. P. 2019,* and could not file information under seal pursuant to *11 USCS § 107(b)*; interest in confidentiality was overridden by need for transparency in court's proceedings. *In re Northwest Airlines Corp. (2007, BC SD NY) 363 BR 704.*

Individual could not represent distinct group of unsecured creditors in Chapter 11 case simply by virtue of his appointment as unsecured creditor agent (UCA) in confirmed plan in prior case because he failed to comply with application process under *Fed. R. Bankr. P. 2019*; even if UCA had fully complied with Rule 2019, court would have denied motion to confirm his authority because UCA sought to represent only old unsecured creditors, not all unsecured creditors in second case, and he sought to represent old unsecured creditors only as to their claims in confirmed plan. *In re N. Bay Gen. Hosp., Inc. (2009, BC SD Tex) 404 BR 443, 51 BCD 95.*

**Unpublished Opinions**

Unpublished: Insurer, underwriters, and reinsurer merely speculated that there were any unethical procedures or conflicts of interest to reveal on appeal; they did not show even one actual ethical violation or conflict of interest extant in filings and failed to investigate these issues so as to support their contention; thus, they did not have standing to challenge district court's *Fed. R. Bankr. P. 2019* order. *In re Pittsburgh Corning Corp. (2008, CA3 Pa) 260 Fed Appx 463, 49 BCD 78.*

Unpublished: No showing as to agent's interests, and its alignment, or lack thereof, with creditor is required, and that absence suggests that term "authorized agent" contemplates entity authorized to act on another's behalf and not any deeper inquiry into interests, motivation, or control; therefore, "authorized agent" is limited to whether entity has been authorized to act on creditor's behalf. *Rosenfeld v Coastal Broad.Sys., Inc. (In re Coastal Broad. Sys., Inc.) (2013, DC NJ) 2013 US Dist LEXIS 91469.*

Unpublished: In chapter 11 case, where attorney and law firm did not comply with bankruptcy court's order under *Fed. R. Bankr. P. 2019* to provide explanation of any co-counsel, consultant, or fee-sharing arrangements, court declined to sanction them by drawing negative inferences as to good faith and fairness of plan and its classification system, since such broad would hurt debtors and creditors more than lawyer and firm. *In re Congoleum Corp. (2005, BC DC NJ) 2005 Bankr LEXIS 556* (criticized in *In re Quigley Co. (2008, BC SD NY) 391 BR 695, 50 BCD 72).*

### 2. Filing of proofs of claims

Bankruptcy Court did not abuse its discretion in denying attorney's proof of claim filed on behalf of debtor's former employees for severance pay where attorney totally disregarded compliance with bankruptcy procedures regulating filing of class proofs of claim by failing to confirm his representative capacity to represent class, failing to identify class he purportedly represented, failing timely to petition Bankruptcy Court to apply provisions of Bankruptcy Rules 9014 and 7023, and failing to have authorization designating him as representative of putative class.   *Reid v White Motor Corp. (1989, CA6 Ohio) 886 F2d 1462, 19 BCD 1435, 21 CBC2d 902, CCH Bankr L Rptr P 73086, 14 FR Serv 3d 1399,* reh den, en banc (1989, CA6) *1989 US App LEXIS 19158* and cert den *(1990) 494 US 1080, 110 S Ct 1809, 108 L Ed 2d 939* and (criticized in *Kahler v FirstPlus Fin., Inc. (In re FirstPlus Fin., Inc.) (2000, BC ND Tex) 248 BR 60, 36 BCD 1).*

Airline unions cannot represent individual employees in representative capacity to file claims against Chapter 11 debtor airline without satisfying Bankruptcy Rule 2019(a), which unions have not done. *In re Continental Airlines Corp. (1986, BC SD Tex) 64 BR 874.*

En masse filings of proof of claims by union not setting forth names, addresses, or individual amount of claims of union members violates Bankruptcy Rule 2019 and must be disallowed; however, Bankruptcy Court may, in its discretion, grant individual union members additional 60 days to file claims after summary judgment is entered disallowing en masse claim. *In re Vestra Indus. (1987, BC DC SC) 82 BR 21.*

Initial burden of proof of establishing authority to file claim, under Bankruptcy Rule 3001(b) and 2019(a), is on party claiming agency status. *In re Great W. Cities (1988, BC ND Tex) 88 BR 109, CCH Bankr L Rptr P 72402,* vacated, in part, revd, in part, remanded on other grounds (1989, ND Tex) *107 BR 116.*

In Chapter 11 bankruptcy proceeding, National Labor Relations Board filed claim based on judgment it obtained against debtor for back wages owed to three employees of debtor; court declined to strike Board's vote rejecting amended plan of reorganization because Board had not violated *Fed. R. Bankr. P. 2019* by failing to file disclosure statement that it was acting on behalf of three employees; judgment was awarded to Board, not employees. *In re MJ Metal Prods., Inc. (2003, BC DC Wyo) 292 BR 702, 172 BNA LRRM 2046.*

Debtors' motion to require ad hoc committee of equity security holders to supplement statement pursuant to *Fed. R. Bankr. P. 2019* filed by counsel for committee was granted because statement filed by counsel on behalf of committee failed to disclose amounts of claims or interests owned by members of committee, times when acquired, amounts paid therefore, and any sales or other disposition thereof; because ad hoc committee had appeared as such, committee was required to provide information plainly required by *Fed. R. Bankr. P. 2019* on behalf of each of its members. *In re Northwest Airlines Corp. (2007, BC SD NY) 363 BR 701, 47 BCD 248, 47 BCD 260.*

### 3.--Class claims

It is permissible for attorney to execute class proof of claim on behalf of representative creditor without filing any documentary evidence establishing his authority to do so under Bankruptcy Rules 3001 and 9010; verified statement is unnecessary under Bankruptcy Rule 2019. *Wilson v Valley Elec. Membership Corp. (1992, ED La) 141 BR 309, 23 BCD 97* (criticized in *Kahler v FirstPlus Fin., Inc. (In re FirstPlus Fin., Inc.) (2000, BC ND Tex) 248 BR 60, 36 BCD 1).*

Claimants who filed proofs of claims on behalf of class of creditors are not "agents" under Bankruptcy Rule 2001(b) where claimants either did not attempt to comply with Bankruptcy Rule 2019(a) or attempts were deficient. *In re Baldwin-United Corp. (1985, BC SD Ohio) 52 BR 146, 13 CBC2d 309, CCH Bankr L Rptr P 70699.*

Proof of claim filed by named plaintiff in class action suit against debtor for violations of federal securities law does not meet requirements of Bankruptcy Rule 3001 because plaintiff has failed to comply with Bankruptcy Rule 2019 in that he has failed to allege that he is agent of each and every member of class and that he is specifically authorized by each claimant to file proof of claim on their behalf. *In re Electronic Theatre Restaurants Corp. (1986, BC ND Ohio) 57 BR 147* (criticized in *In re Craft (2005, BC ND Tex) 321 BR 189, 53 CBC2d 1197).*

Class claim may not be filed in bankruptcy proceeding because purported class representative is not authorized to execute proof of claim as required by Bankruptcy Rule 2019(a), particularly where purported class representative has failed to file report required of representatives of more than 1 creditor under Bankruptcy Rule 2019(a). *In re Arrow Air, Inc. (1987, BC SD Fla) 75 BR 372.*

Court concluded that class proofs of claim were consistent with Bankruptcy Code and Rules of Bankruptcy Procedure and class proofs of claim were necessary device to ensure that relief that was afforded by Bankruptcy Code was as complete as possible; definitions of "claim" and "creditor" in *11 USCS § 101(5)(A),* (10) were not antagonistic to class claims, and class representatives did not have to comply with *Fed. R. Bankr. P. 2019* because court decision certifying class, in and of itself, satisfied requirements of Rule 2019. *In re Craft (2005, BC ND Tex) 321 BR 189, 53 CBC2d 1197.*

### 4. Miscellaneous

District court had jurisdiction under *28 USCS § 158(a)* to review bankruptcy court's *Fed. R. Bankr. P. 2019* compliance order requiring law firms that represented asbestos claimant creditors to file statements concerning their fee arrangements where information sought bore on reorganization plan confirmation procedures and overall fairness of plan

and as result, review of order was most practical before creditors voted on reorganization plan. *Baron & Budd, P.C. v Unsecured Asbestos Claimants Comm. (2005, DC NJ) 321 BR 147, 53 CBC2d 1159, 61 FR Serv 3d 42.*

Bankruptcy court's order requiring law firms that represented asbestos claimant creditors to file statements concerning their fee arrangements was within constraints of *Fed. R. Bankr. P. 2019* as it ensured that reorganization plan dealt fairly with all creditors. *Baron & Budd, P.C. v Unsecured Asbestos Claimants Comm. (2005, DC NJ) 321 BR 147, 53 CBC2d 1159, 61 FR Serv 3d 42.*

Insurers had U.S. Const. art. III standing to file *Fed. R. Bankr. P. 2019* motion where they alleged that unfairness of Chapter 11 reorganization plan bound them contractually and directly impacted their financial interests as entities responsible for insurance payments to asbestos claimant creditors, alleged unfairness was traceable to conflicts of interest among asbestos claimants' counsel that allegedly arose from fee sharing and co-counsel relationships and their bearing on reorganization plan's classification system, and alleged injury was redressable through favorable bankruptcy court decision that was made possible after review of Rule 2019 disclosure. *Baron & Budd, P.C. v Unsecured Asbestos Claimants Comm. (2005, DC NJ) 321 BR 147, 53 CBC2d 1159, 61 FR Serv 3d 42.*

In Chapter 11 bankruptcy proceeding, court denied confirmation of debtor close corporation's amended plan of reorganization; amended plan did not satisfy *11 USCS § 1129(a)(8)*, since class of general unsecured creditors was impaired class of claims and less than "two-thirds in amount" of voting creditors accepted plan, *11 USCS § 1126(c)*, and court would not strike National Labor Relation Board's rejection of proposed plan because Board had not violated *Fed. R. Bankr. P. 2019(a)*. *In re MJ Metal Prods., Inc. (2003, BC DC Wyo) 292 BR 702, 172 BNA LRRM 2046.*

In adversary proceeding filed by debtors seeking declaratory judgment that they had no successor liability for asbestos claims that had been asserted against debtors by approximately 60,000 defendant consumers in numerous state court actions, bankruptcy court authorized debtors to effect initial service of process on consumers though consumers' counsel, as agents, as had been identified in various asbestos state actions; court noted that many of attorneys had already filed statements listing their clients under *Fed. R. Bankr. P. 2019*, and thus, their representation in adversary was foregone conclusion, given successor liability issues, and was to have been reasonably expected by their clients. *Muralo Co. v All Defendants Listed on Exibits A Through D to Complaint (In re Muralo Co.) (2003, BC DC NJ) 295 BR 512* (criticized in *In re Spring Ford Indus. (2004, BC ED Pa) 51 CBC2d 1614).*

Debtor's objection to proof of claim filed by unsecured creditor agent (UCA) pursuant to confirmed plan of reorganization in prior case was sustained because UCA was without authority to file proofs of claim under *11 USCS § 501(a)*; confirmed plan's provision for UCA's powers did not empower him to act as agent in second case, and he failed to meet application requirements of *Fed. R. Bankr. P. 2019*; in addition, proof of claim itself did not comply with *Fed. R. Bankr. P. 3001(a)* and (c) because claim did not have requisite documentation attached and did not identify claimants or amounts of each claim. *In re N. Bay Gen. Hosp., Inc. (2009, BC SD Tex) 404 BR 443, 51 BCD 95.*

Where loose association of note holders of debtor appeared and filed pleadings as group, it was ordered to file disclosure pursuant to *Fed. R. Bankr. P. 2019(a)*. *In re Wash. Mut., Inc. (2009, BC DC Del) 419 BR 271, 52 BCD 141* (criticized in *In re Premier Int'l Holdings, Inc. (2010, BC DC Del) 52 BCD 183*) and (criticized in *In re Phila. Newspapers, LLC (2010, BC ED Pa) 2010 Bankr LEXIS 336).*

Under plain meaning of *Fed. R. Bankr. P. 2019*, steering group of pre-petition lenders was not covered by rule because it was not "entity" in that it was not organization that had legal identity apart from its individual members; it also was not "committee" in that it had not been appointed by any larger deliberative body. *In re Phila. Newspapers, LLC (2010, BC ED Pa) 422 BR 553, 52 BCD 224.*

In Chapter 11 case, informal or ad hoc committee of bondholders did not represent any persons other than its members either by consent or operation of law; it therefore was not "committee" under *Fed. R. Bankr. P. 2019*, and thus its members were not required to not make claim disclosures required under *Fed. R. Bankr. P. 2019*. *In re Premier Int'l Holdings, Inc. (2010, BC DC Del) 423 BR 58, 52 BCD 183.*

Third party was not entitled to obtain private medical and other information of individuals who may or may not have been creditors in particular bankruptcy cases as contained in statements filed by counsel per *Fed. R. Bankr. P. 2019* because third party lacked constitutional or prudential standing; because third party's proposed use of Rule 2019 statements was inconsistent with Rule 2019; and because access to those statements was not otherwise provided by *11 USCS § 107*. *In re ACandS, Inc. (2011, BC DC Del) 462 BR 88.*

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-35, AS AMENDED

Court File No: 09-CL-7950

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, et. al.

---

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at TORONTO

---

**BRIEF OF AUTHORITIES OF THE CANADIAN
CREDITORS' COMMITTEE**

**KOSKIE MINSKY LLP**
Mark Zigler / Susan Philpott / Ari Kaplan
  Lawyers for the Canadian Former Employees and Disabled
  Employees through their court appointed Representative

**CAW- CANADA LEGAL DEPARTMENT**
Barry Wadsworth
  Lawyers for the Canadian Autoworkers Union

**SHIBLEY RIGHTON LLP**
**NELLIGAN O'BRIEN PAYNE LLP**
Arthur O. Jacques  / Thomas McRae / Steve Levitt
  Lawyers for active and transferred employees of
  Nortel Canada

**McCARTHY TÉTRAULT LLP**
R. Paul Steep / James D. Gage / Barbara J. Boake
  Lawyers for Morneau Shepell Ltd., as administrator of the
  Nortel Canada registered pension plans

**PALIARE ROLAND ROSENBERG ROTHSTEIN LLP**
Ken Rosenberg / Lily Harmer / Massimo Starnino
  Lawyers for the Superintendent of Financial Services as
  Administrator of the Pension Benefits Guarantee Fund