**EXHIBIT B**
**Reply**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------- X
                                                        :
*In re*                                                 :   Chapter 11
                                                        :
Nortel Networks Inc., *et al.*,[1]                      :   Case No. 09-10138 (KG)
                                                        :
                               Debtors.                 :   Jointly Administered
                                                        :
                                                        :   **Hearing date: January 7, 2014 at 10:00 a.m. (ET)**
                                                        :
------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363,
503(b) AND 507(A)(2) AND BANKRUPTCY RULES 6004(H) AND 9019 APPROVING
THE US CLAIMS LITIGATION SETTLEMENT AGREEMENT BY AND AMONG
THE DEBTORS, THE CREDITORS' COMMITTEE, THE JOINT ADMINISTRATORS,
THE EMEA DEBTORS, NORTEL NETWORKS OPTICAL COMPONENTS LIMITED,
NORTEL TELECOM FRANCE SA, THE LIQUIDATOR, THE FRENCH
LIQUIDATOR, THE UK PENSION PARTIES AND CERTAIN AFFILIATES**

The Debtors respectfully submit this memorandum of law in reply to the *Response and

Limited Objection of the Monitor and the Canadian Debtors to the U.S. Debtors' Motion for

Entry of an Order Approving the US Claims Litigation Settlement Agreement*, filed on December

19, 2013 (D.I. 12687-1) ("Initial Response") and *Supplemental Response and Limited Objection

of the Monitor and the Canadian Debtors to the US Debtors' Motion for Entry of an Order

Approving the US Claims Litigation Settlement Agreement*, filed on January 2, 2014 (D.I. 12746)

("Supplemental Response" and, together with the Initial Response, the "Limited Objection"), and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

in further support of the *Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363, 503(b) and 507(a)(2) and Bankruptcy Rules 6004(h) and 9019 Approving the US Claims Litigation Settlement Agreement by and Among the Debtors, the Creditors' Committee, the Joint Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited, Nortel Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates*, filed on December 17, 2013 (D.I. 12618-3) (the "Motion").[2]  The Debtors respectfully represent as follows:

## ARGUMENT

1.      The Debtors are pleased to confirm that no party opposes the approval of the proposed Settlement Agreement, which fully and finally resolves the claims of the EMEA Parties, the UK Pension Parties and the French Liquidator against the Debtors, and substantially streamlines the number of disputes and complexity of litigation pending before the Court in the Debtors' cases.  As noted in the Motion, the settlement provides marked benefits to the Debtors and their creditors by bringing finality and certainty to the Debtors' estates with respect to claims that have been the subject of costly litigation for years and encouraging the coordination of resources and potential cost savings going forward.  As a result, the Debtors respectfully request that this Court approve the Settlement Agreement and authorize the Debtors and the Committee to enter into the agreement.[3]

2.      The Monitor and the Canadian Debtors have filed an initial "limited objection" to the Motion, as well as a supplemental "limited objection."  They are the only parties to have filed

---

[2]      Capitalized terms used herein shall have the same meaning as set forth in the Motion.

[3]      The Debtors have been informed that the French Supervisory Judge has approved NNSA to enter into and perform under the Settlement Agreement, and the UK Pension Parties have likewise obtained the requisite Beddoe Order from the English Court.  Additionally, Nortel Networks India International Inc. and Nortel Technology Excellence Centre Private Ltd. have executed the Settlement Agreement and thereby joined as settling parties.

any sort of objection with respect to the Motion.  In their pleadings, the Monitor and Canadian Debtors do not in fact object to the settlement, nor do they ask this Court to deny the Motion or dispute that the Settlement Agreement may be heard by the Court or that it should be approved. Indeed, the Monitor and the Canadian Debtors state that they "support efforts to settle a portion of this litigation in order to distribute as much value to stakeholders as quickly as possible." (Initial Response ¶ 1; see also Supplemental Response ¶ 2).  The Monitor and Canadian Debtors nonetheless request certain clarifications that are either unnecessary or easily addressed and seek orders to address hypothetical concerns that are not properly before the Courts in the context of this Motion.

3.      At bottom, the Monitor and Canadian Debtors have not put forth any credible challenge to the Settlement Agreement and their Limited Objection is as baseless as it is unnecessary.  The Settlement Agreement plainly simplifies the upcoming trial.  First, the EMEA Parties' and UKP Parties' claims against the Debtors now need not be tried as they are fully resolved.  Second, if the Debtors, the EMEA Parties and the UKP Parties can coordinate allocation theories or otherwise narrow allocation issues in dispute, this too will simplify the trial and save all parties enormous expense, reduce complexity and potentially shorten the trial. Third, the crux of the Monitor's and the Canadian Debtors' position – that there should be a January 24, 2014 deadline by when the settling parties must reach agreement on any common allocation position – is entirely counter-productive.  If the objectors' position were to be adopted, the potential for any further settlement discussions between any parties on any issues would be severely restricted.  The Courts should not sanction such a result.

**Purported Concerns Regarding the Allocation Litigation**

4.      The Monitor and Canadian Debtors raise a litany of purported concerns about the

US Debtors' agreement to work cooperatively with the EMEA Debtors and UK Pension Parties

to determine whether they can develop a common allocation position with respect to the pending

litigation involving the allocation of sale proceeds.  In particular, the Monitor and Canadian

Debtors suggest "gamesmanship," "mischief, controversy and litigation" could result from such

efforts at cooperation, and that the Monitor and Canadian Debtors may be prejudiced if any of

the settling parties' current allocation positions were "dropped" in the future as the Monitor and

Canadian Debtors would have incurred "unnecessary expense…addressing allocation theories

that will ultimately not be pursued at trial."  (Supplemental Response ¶ 3; see also id. ¶¶ 14-17).

Accordingly, they propose that any such cooperation be significantly curtailed and affirmatively

concluded by no later than January 24, 2014, and the settling parties (but no other Core Parties,

including themselves) be required to reaffirm their allocation positions by that date.[4]  These

alarmist concerns are misplaced and the relief they seek is both unnecessary and unripe.

5.      The proposal by the Monitor and Canadian Debtors to constrain and place a hard

stop on the parties' efforts at cooperation is ill-founded and should not be entertained in the

context of this Motion.  At the outset, this is not an objection to the settlement, but rather a

request to amend and add a new procedure to the Allocation Protocol and Litigation Timetable,

---

[4]      In their Initial Response, the Monitor and Canadian Debtors requested that the Court order that any
common allocation position developed by the settling parties "be limited to a position previously asserted by a Core
Party in its initial allocation pleadings."  (Initial Response ¶ 7).  They have abandoned this request in their
Supplemental Response.  They also extended the date on which they request disclosure of allocation positions from
January 8 to January 24, 2014.  (Supplemental Response n. 4).  For the reasons set forth herein, these extra two
weeks do not correct the fundamental problem with the request – it is not properly the subject of a response to the
Motion and it is not ripe for review, as it seeks to address a hypothetical situation.  In addition, January 24 is the date
on which opening expert reports are due, at which time each Core Party will be required to put in expert reports
further elaborating on their allocation positions, rendering the relief sought by the Monitor and Canadian Debtors
superfluous.

as to which the Monitor and Canadian Debtors have not filed an affirmative motion.  For this reason alone, the Court should not entertain this argument.

6.      More importantly, there is no basis for the Monitor's and Canadian Debtors' attempt to constrain the parties' ability to engage in further discussions that could reduce the issues before the Courts at trial.  Having succeeded in substantially narrowing the outstanding disputes by reaching a settlement on the claims asserted against the Debtors, the parties to the settlement agreed to continue working together to explore whether agreements can be reached with respect to allocation of sale proceeds that could further narrow the disputes pending before the Courts, in order to minimize costs, make the trials more efficient and ultimately inure to the benefit of all parties and their stakeholders.  The Debtors remain confident in the validity of their allocation position, which seeks allocation of the proceeds on a fair-market basis based on traditional valuation principles used to value the assets and rights conveyed or given up by each Nortel affiliate in each sale.  The mere fact that the Debtors have agreed to engage in good faith discussions with the other settling parties to attempt to narrow their differences does not support the Monitor's and the Canadian Debtors' accusation of "mischief" or "gamesmanship."  Rather, the Debtors' willingness to engage in such discussions demonstrates their commitment to bringing the disputes regarding the allocation of sale proceeds to a prompt and final conclusion. Towards that end, the Debtors have explored and will continue to explore ways in which the pending litigations can be streamlined and issues in dispute can be reduced or resolved.  Far from threatening to "derail" the litigation, as the Monitor and Canadian Debtors claim in the Limited Objection (Initial Response ¶ 3), coordination between the settling parties that the Settlement Agreement envisions is precisely the kind of sensible and potentially cost-saving measure that could only improve the outcome for Nortel's stakeholders by narrowing the issues in dispute.

5

See, e.g., In re Nortel Networks, Inc., 669 F3d 128, 143 (3d Cir. 2011) (reminding the parties to "consider[] that there are real live individuals who will ultimately be affected by the decisions being made in the courtrooms" and encouraging prompt resolution of these litigation disputes).

7.      Whether or not formally memorialized in an agreement, such efforts at cooperation should be encouraged rather than curtailed by arbitrary deadlines.  Not surprisingly, the Monitor and Canadian Debtors have not cited any authority that could support an order curtailing the ability of parties to engage in discussions at any time, whether such discussions are focused on settlement or a mere narrowing and reconciliation of allocation positions in order to simplify and streamline the issues presented for the Courts to decide at trial.

8.      Notably, the Monitor and Canadian Debtors do not confirm that they have settled on a single theory of allocation of the sale proceeds or that they will do so by January 24.  The Monitor and Canadian Debtors and the ad hoc group of various Canadian creditors, known in these proceedings as the CCC, have so far, in the aggregate, advocated for three alternative allocation theories.  Thus, many of the concerns advanced by the Monitor and Canadian Debtors regarding the need to prepare against multiple allocation theories and the concomitant costs and time associated with such efforts apply with equal if not greater force to the positions on allocation taken by the Canadian estates and their constituents.[5]

---

[5]      In their opening submissions in the allocation proceedings, the Monitor and Canadian Debtors advanced two alternative theories of allocation, namely that either the Canadian Debtors owned the entirety of Nortel's intellectual property and are entitled to 100 percent of all sale proceeds (other than minimal value they intend to allocate to certain fixed assets) or alternatively that if the Debtors have an interest in the patents conveyed, that the maximum amount that the Debtors could claim from the sale of intangible assets is capped by their profit split under the MRDA.  (Allocation Position of the Monitor and Canadian Debtors ¶¶ 32, 33, filed May 16, 2013 (D.I. 10543-1)).  The CCC submitted their own separate and alternative allocation theories – that either "[a]ll Sale Proceeds derived from the sale of IP belong to and must be allocated to . . . NNL," essentially the same as the first argument of the Monitor and Canadian Debtors, or that all the assets be allocated "in accordance with equitable principles so as to effect a pro rata distribution among Creditors."  (Allocation Position of the Canadian Creditors Committee ¶¶ 13, 16, filed May 16, 2013 (D.I. 10538)).

9.      Moreover, any relief sought by the Monitor and the Canadian Debtors with respect to the allocation litigation is in any event premature at best and not properly before the Courts.  The Motion seeks approval of the Settlement Agreement, and the Monitor and the Canadian Debtors do not oppose the approval of the settlement itself or suggest the requisite legal standards have not been met – to the contrary, they recognize the benefits to the Debtors to be obtained from the settlement.  The Allocation Protocol, the Litigation Timetable and the Discovery Plan, and the further trial procedures being discussed among the Core Parties, contemplate various steps before trial at which the positions of the Core Parties will be set forth and tested by the other Core Parties.  The Core Parties are scheduled to designate the experts upon whom they intend to rely to support their allocation positions on January 8, and expert reports setting forth these allocation positions will be exchanged by all Core Parties on January 24, the very day the Monitor and Canadian Debtors have asked the settling parties to confirm their allocation positions.  The current procedures contemplate the further examinations of experts, preparation of pre-trial briefs and witness affidavits, designations of exhibits and deposition testimony and various pre-trial conferences.  The Motion does not seek to modify these procedures in any way or eliminate any of these steps.  If at some future point, the "possibility" or "prospect" or "potential" of wasted expense that concerns the Monitor and Canadian Debtors (Supplemental Response ¶¶ 15-18) turns into an actual, ripe dispute as a result of any Core Party (whether a settling party or any other party) materially changing their allocation position, then the appropriate Core Parties can raise those specific objections with the other Core Parties, and with the Courts if necessary, at that time.  At this time, however, there is no ripe dispute, and therefore, no basis to order the parties to take any additional steps or impose an artificial deadline on a subset of the Core Parties of January 24, related to their allocation

7

positions.[6]  And, as noted, the Monitor and Canadian Debtors also have not filed any application

or motion seeking modification of these procedures or alternative relief and, as such, their

requests are not properly before the Courts at this time.[7]

10.    The Monitor and Canadian Debtors further request that the Courts order that "the

Settlement Agreement not in any way enhance a Settlement Party's rights in respect of, or

otherwise impact, any motion brought by such Settlement Party seeking leave to amend its

allocation pleading." (Supplemental Response ¶¶ 3, 27).[8]  This request should be denied as

simply unnecessary.  No party is seeking any relief with respect to the amendment of its

allocation pleading at this time or seeking any finding from the Courts with respect to the various

orders in place concerning the allocation dispute, and the Courts do not need to provide advisory

orders on a cross-border basis regarding that litigation in the context of the Court approving the

Debtors' entry into this Settlement Agreement.

---

[6]    Moreover, it is difficult to see how the Monitor and Canadian Debtors could ever have any legitimate objections, given that the EMEA Debtors have argued from the beginning that if their "primary position … that allocation of the Nortel Group's IP should be determined by reference to beneficial ownership and entitlement to IP … is not ultimately accepted,  allocation to the RPEs can in no event be less than the value of the exclusive and non-exclusive licenses they relinquished as part of the sale process." (Joint Administrators' Statement Regarding the Allocation Entitlement of the EMEA Debtors to Proceeds of the Sales of the Business and Residual Patent Assets ¶ 75, filed May 16, 2013 (D.I. 10536)).

[7]    In the same vein, it is discouraging that the Monitor and Canadian Debtors appear to have already concluded that possible cooperation between other Core Parties "may make it impossible to reach agreement on [a trial] protocol," where the parties are scheduled to meet and confer on such issues in three days. (Supplemental Response n. 15).

[8]    The Monitor and Canadian Debtors further argue that Rule 15 of the Federal Rules of Civil Procedure govern any amendments to a Core Party's pleadings and cite to U.S. precedents and other Ontario law that they assert govern any change in allocation position. (Supplemental Response n. 13).  As these issues are not properly before the Courts at this time and the Monitor and Canadian Debtors reserve their rights on these issues given they are currently raised in a hypothetical context, the Debtors do not address further whether such standards would govern or, if they did, how they would apply to any particular set of facts.

**Clarifications with Respect to the Relief Sought**

11.     The Monitor and Canadian Debtors also seek clarification with respect to the inclusion of the releases in the order approving the Settlement Agreement and the effect of the settlement on the IFSA and CFSA agreements.

12.     The Monitor and Canadian Debtors do not object to the releases being provided between and among the settling parties but object to the inclusion of the release provisions in the proposed order, including specifically to the extent that the releases provide that: "No claims by or against persons other than the Parties to the Settlement Agreement and the person contemplated in the releases contained therein shall be affected by the Settlement Agreement."

13.     While it was intended that the Settlement Agreement be clear that the Debtors (and other settling parties) did not intend to limit any claims or defenses held by any party with respect to the claims asserted by the EMEA Debtors or UK Pension Parties against the Canadian Debtors, and the Debtors do not concede that the inclusion of the foregoing quoted language in the proposed order either had the effect or intent that the Monitor and Canadian Debtors ascribe to it,  the Debtors have attached a revised proposed order that removes the provision (see Exhibit A), as well as a blackline showing this and other minor changes to the Order.  See Exhibit B.

14.     The Monitor and Canadian Debtors also seek clarity that the settlement is not superseding the IFSA and the CFSA.  (Supplemental Response ¶ 5).[9]  The Debtors can confirm that while the Settlement Agreement includes broad, global releases by and between the settling parties, nothing in the Settlement Agreement supersedes or in any way impairs or modifies the Canadian Debtors' or Monitor's rights under the IFSA and CFSA.

---

[9]     The provision they cite is Section 8.9, which states in relevant part, "unless explicitly stated herein, this Settlement Agreement does not supersede either the IFSA or the Final Canadian Funding and Settlement Agreement dated as of December 23, 2009 [CFSA], both of which remain in full force and effect."

**Other Issues**

15.      Finally, the Monitor and Canadian Debtors raise various points with respect to the

Cross-Border Claims Protocol and their rights with respect to a joint hearing on the settlement

motion.  Such issues are either moot or do not warrant further discussion at this time.  The

Motion is scheduled to be heard at a joint hearing before the Court and the Canadian Court on

January 7, although the Monitor and Canadian Debtors say they do not question the sole

jurisdiction of the Court to approve the Debtors' entry into the Settlement Agreement – the sole

relief being sought in the Motion.  (Supplemental Response ¶ 2).  The remaining issues the

Monitor and Canadian Debtors seek to have heard with respect to the allocation litigation are

neither governed by the Cross-Border Claims Protocol nor properly before the Courts at this

time.

16.      As stated in the Motion, the Debtors complied with the notice and consultation

provisions of the Cross-Border Claims Protocol and consulted with the Monitor and the

Canadian Debtors with respect to the settlement of these claims exhaustively – including through

three failed mediations.  The history of the efforts to resolve these claims on a cross-border basis

is extensive and exhaustive.  After that time, as contemplated by the Cross-Border Claims

Protocol, the Courts approved a formal protocol, on a cross-border basis, specifically governing

the resolution of the claims asserted by the EMEA Debtors and the UK Pension Claimants.  See

Order Entering Allocation Protocol (D.I. 10565).  To the extent the Monitor and Canadian

Debtors seek comfort that they do not need to consult with the Debtors further if they choose to

pursue their own settlement of these claims with the EMEA Debtors, the Debtors have no

objection to the Monitor and Canadian Debtors exploring settlement of the claims the EMEA

Debtors have asserted against them without further consultation with the Debtors.

(Supplemental Response ¶ 21).[10]

17.    In conclusion, the Limited Objection does not raise any challenge to the Court's approval of the Settlement Agreement, and the proposed settlement far meets and exceeds the standards of being "fair, reasonable, and in the interest of the estate" for each of the Debtors.  In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Accordingly, the Debtors respectfully request the settlement be approved by the Court and the further issues raised by the Monitor and Canadian Debtors be left for another day when they are both ripe and properly presented to the Courts.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court (i) grant the Motion and enter the proposed order attached as Exhibit A thereto; (ii) deny the request for relief contained in the Limited Objection; and (iii) grant such other and further relief as the Court deems just and proper.

---

[10]    As the Monitor and Canadian Debtors acknowledge, the claims of the UK Pension Claimants are not subject to the Cross-Border Claims Protocol consultation provisions.  (Supplemental Response n. 10).  For the avoidance of doubt, the Debtors do not waive their rights under the Cross-Border Claims Protocol or otherwise and are not aware of any other claims subject to that protocol that are in a similar posture as the EMEA Claims.

Dated:  January 6, 2014
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

– and –

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

**Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------X
                                                      :
                                                      :    Chapter 11
                                                      :
*In re*                                               :
                                                      :    Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                    :
                                                      :    Jointly Administered
                      Debtors.                        :
                                                      :
                                                      :    **RE: D.I. 12618**
                                                      :
------------------------------------------------------X

## ORDER APPROVING THE US CLAIMS LITIGATION SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS, THE CREDITORS' COMMITTEE, THE JOINT ADMINISTRATORS, THE EMEA DEBTORS, NORTEL NETWORKS OPTICAL COMPONENTS LIMITED, NORTEL TELECOM FRANCE SA, THE LIQUIDATOR, THE FRENCH LIQUIDATOR, THE UK PENSION PARTIES AND CERTAIN AFFILIATES

Upon the motion dated December 17, 2013 (the "Motion"), of Nortel Networks Inc. and

certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, pursuant to sections

105(a), 363(b), 503(b) and 507(a)(2) of the Bankruptcy Code and Bankruptcy Rules 6004(h) and

9019, (i) authorizing the Debtors' and the Committee's entry into and approving the Settlement

Agreement[2] attached to the Motion as Exhibit B, and (ii) granting them such other and further

relief as the Court deems just and proper; and the Court having determined that adequate notice

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the U.S. Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion and/or the Settlement Agreement.

of the Motion has been given as set forth in the Motion; and that no other or further notice is

necessary; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference

from the District Court dated February 29, 2012; and the Court having determined that

consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the

Court having determined that the Debtors have demonstrated sound business justifications for

entering into the Settlement Agreement and the legal and factual bases set forth in the Motion

and presented on the record establish just cause for the relief requested in the Motion; and taking

into account the complexity of the claims being settled by the Settlement Agreement and the

costs of resolving such claims by litigation, the Settlement Agreement and the related relief

requested in the Motion is fair, reasonable and in the best interests of the Debtors, their estates,

their creditors and the parties in interest;[3] and upon the record in these proceedings; and after due

deliberation;

      IT IS HEREBY ORDERED THAT:

      1.      The Motion is **GRANTED** and any objections thereto are **OVERRULED**.

      2.      The Debtors and the Committee are authorized to enter into the Settlement

Agreement, and the Settlement Agreement is approved in its entirety.

      3.      The Debtors are authorized pursuant to sections 105 and 363 of the Bankruptcy

Code and Bankruptcy Rule 9019, to enter into the Settlement Agreement and to take any and all

actions that may be reasonably necessary or appropriate to perform their obligations arising

under the Settlement Agreement, including without limitation the allowance and payment of the

Allowed Claims as administrative claims pursuant to section 503 of the Bankruptcy Code and

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  See Fed. R. Bankr. P. 7052.

entitled to priority under section 507(a)(2) of the Bankruptcy Code, in accordance with the terms of the Settlement Agreement, and to enforce their rights arising under the Settlement Agreement.

4.      The allowance and payment of the Allowed Claims shall be in full and final settlement of all US EMEA Claims, US French Liquidator Claims and US UK Pension Claims. For the avoidance of doubt, and notwithstanding this paragraph, nothing in the Settlement Agreement shall constitute a release, waiver or discharge of any rights created under the Settlement Agreement, any claim of any Party to enforce such rights, or a release of any claims for facts or events occurring or actions taken after the date of the Settlement Agreement. Furthermore, nothing in the Settlement Agreement creates any affirmative obligation on the part of the Parties to support any particular legal or valuation theories in respect of the Allocation Dispute, nor shall it prevent any Party from advocating any particular legal or valuation theories in respect of the Allocation Dispute.

5.      Upon the EMEA Payment Date, the US EMEA Filed Claims shall be deemed withdrawn, with prejudice, and the US EMEA Non-Filed Claims shall be deemed waived.  Upon the UK Pension Payment Date, the US UK Pension Claims shall be deemed withdrawn with prejudice.  Upon the Effective Date, the US French Liquidator Claim shall be deemed withdrawn with prejudice.  Upon completion of the payments made in respect of the Allowed Claims, the NNI Claim shall be deemed withdrawn, with prejudice, and the US Non-Filed Claims shall be deemed waived.

6.       Promptly following the Effective Date, the Joint Administrators, on behalf of the EMEA Debtors, shall discontinue the Canadian Motion for Leave.

7.      The failure specifically to describe or include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such a

3

provision, it being the intent of this Court that the Settlement Agreement be approved in its entirety.

8.    The Debtors, the Debtors' claim agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to the Settlement Agreement.

9.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

10.   The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2014
        Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------X
                                                       :
                                                       :       Chapter 11
                                                       :
*In re*                                                :
                                                       :       Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                     :
                                                       :       Jointly Administered
                          Debtors.                     :
                                                       :       **RE: D.I.** 12618
                                                       :
-------------------------------------------------------X

**ORDER APPROVING THE US CLAIMS LITIGATION SETTLEMENT
AGREEMENT BY AND AMONG THE DEBTORS, THE CREDITORS'
COMMITTEE, THE JOINT ADMINISTRATORS, THE EMEA DEBTORS,
NORTEL NETWORKS OPTICAL COMPONENTS LIMITED, NORTEL
TELECOM FRANCE SA, THE LIQUIDATOR, THE FRENCH
LIQUIDATOR, THE UK PENSION PARTIES AND CERTAIN AFFILIATES**

Upon the motion dated December 17, 2013 (the "Motion"), of Nortel Networks Inc. and

certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, pursuant to sections

105(a), 363(b), 503(b) and 507(a)(2) of the Bankruptcy Code and Bankruptcy Rules 6004(h) and

9019, (i) authorizing the Debtors' and the Committee's entry into and approving the Settlement

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the U.S. Debtors and their petitions are available at http://dm.epiq11.com/nortel.

Agreement[2] attached to the Motion as <u>Exhibit B</u>, and (ii) granting them such other and further relief as the Court deems just and proper; and the Court having determined that adequate notice of the Motion has been given as set forth in the Motion; and that no other or further notice is necessary; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the District Court dated February 29, 2012; and the Court having determined that consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the Debtors have demonstrated sound business justifications for entering into the Settlement Agreement and the legal and factual bases set forth in the Motion and presented on the record establish just cause for the relief requested in the Motion; and taking into account the complexity of the claims being settled by the Settlement Agreement and the costs of resolving such claims by litigation, the Settlement Agreement and the related relief requested in the Motion is fair, reasonable and in the best interests of the Debtors, their estates, their creditors and the parties in interest;[3] and upon the record in these proceedings; and after due deliberation;

IT IS HEREBY ORDERED THAT:

1. The Motion is **GRANTED** and any objections thereto are **OVERRULED**.

2. The Debtors and the Committee are authorized to enter into the Settlement Agreement, and the Settlement Agreement is approved in its entirety.

3. The Debtors are authorized pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, to enter into the Settlement Agreement and to take any and all

---

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion and/or the Settlement Agreement.

actions that may be reasonably necessary or appropriate to perform their obligations arising under the Settlement Agreement, including without limitation the allowance and payment of the Allowed Claims as administrative claims pursuant to section 503 of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, in accordance with the terms of the Settlement Agreement, and to enforce their rights arising under the Settlement Agreement.

4.      The allowance and payment of the Allowed Claims shall be in full and final settlement of all US EMEA Claims, US French Liquidator Claims and US UK Pension Claims. For the avoidance of doubt, and notwithstanding this paragraph, nothing in the Settlement Agreement shall constitute a release, waiver or discharge of any rights created under the Settlement Agreement, any claim of any Party to enforce such rights, or a release of any claims for facts or events occurring or actions taken after the date of the Settlement Agreement. ~~No claims by or against persons other than the Parties to the Settlement Agreement and the persons contemplated in the releases contained therein shall be affected by the Settlement Agreement.~~ Furthermore, nothing in the Settlement Agreement creates any affirmative obligation on the part of the Parties to support any particular legal or valuation theories in respect of the Allocation Dispute, nor shall it prevent any Party from advocating any particular legal or valuation theories in respect of the Allocation Dispute.

5.      Upon the EMEA Payment Date, the US EMEA Filed Claims shall be deemed withdrawn, with prejudice, and the US EMEA Non-Filed Claims shall be deemed waived. Upon the UK Pension Payment Date, the US UK Pension Claims shall be deemed withdrawn with prejudice. Upon the Effective Date, the US French Liquidator Claim shall be deemed withdrawn with prejudice. Upon completion of the payments made in respect of the Allowed Claims, the

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. See Fed. R. Bankr. P. 7052.

NNI Claim shall be deemed withdrawn, with prejudice, and the US Non-Filed Claims shall be deemed waived.

6.      Promptly following the Effective Date, the Joint Administrators, on behalf of the EMEA Debtors, shall discontinue the Canadian Motion for Leave.

7.      The failure specifically to describe or include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such a provision, it being the intent of this Court that the Settlement Agreement be approved in its entirety.

8.      The Debtors, the Debtors' claim agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to the Settlement Agreement.

9.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

10.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2014
       Wilmington, Delaware           _____
                                      THE HONORABLE KEVIN GROSS
                                      CHIEF UNITED STATES BANKRUPTCY JUDGE