IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.*,[1]

                  Debtors.

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

Hearing Date: January 7, 2013 at 10:00 a.m. (ET)

Re: Docket No. 12757

------------------------------------------------------------X

## JOINDER OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (I) THE U.S. DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE U.S. CLAIMS LITIGATION SETTLEMENT AGREEMENT AND (II) THE REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, 503(b) AND 507(A)(2) AND BANKRUPTCY RULES 6004(H) AND 9019 APPROVING THE US CLAIMS LITIGATION SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS, THE CREDITORS' COMMITTEE, THE JOINT ADMINISTRATORS, THE EMEA DEBTORS, NORTEL NETWORKS OPTICAL COMPONENTS LIMITED, NORTEL TELECOM FRANCE SA, THE LIQUIDATOR, THE FRENCH LIQUIDATOR, THE UK PENSION PARTIES AND CERTAIN AFFILIATES

The Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "U.S. Debtors") hereby submit this joinder (the "Joinder") to (i) the U.S. Debtors' *Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 353, 503(b) and 507(a)(2) and Bankruptcy Rules 6004(h) and 9019 Approving the US Claims Litigation Settlement Agreement By and*

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the U.S. Debtors and their petitions are available at http://dm.epiq11.com/nortel.

RLF1 9753676v.1

*Among the Debtors, the Creditors' Committee, the Joint Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited, Nortel Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates* [ECF No. 12618] (the "Motion") and (ii) the *Reply Memorandum of Law in Support of Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 353, 503(b) and 507(a)(2) and Bankruptcy Rules 6004(h) and 9019 Approving the US Claims Litigation Settlement Agreement By and Among the Debtors, the Creditors' Committee, the Joint Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited, Nortel Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates* [ECF No. 12757] (the "Reply"). In support of this Joinder, the Committee respectfully represents as follows:

## JOINDER[2]

1. On December 17, 2013, the Debtors filed the Motion seeking this Court's approval of the Settlement Agreement. The Settlement Agreement represents a decisive and positive milestone in these cases – the resolution of all remaining claims asserted against the U.S. Debtors by (i) the Joint Administrators on behalf of the EMEA Debtors and (ii) the UK Pension Parties. This settlement and compromise eliminates all of the non-allocation issues that are currently slated to be tried before this Court in May 2014 pursuant to the Allocation Protocol and the Litigation Timetable and Discovery Plan. The Settlement Agreement will necessarily simplify the remaining litigation and reduce costs for the various estates. Further, the resolution

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363, 503(b) and 507(a)(2) and Bankruptcy Rules 6004(h) and 9019 Approving US Claims Litigation Settlement Agreement by and among the Debtors, the Creditors' Committee, the Joint Administrators, the EMEA Debtors, Nortel Networks Optical Components Limited, Nortel Telecom France SA, the Liquidator, the French Liquidator, the UK Pension Parties and Certain Affiliates*[ECF No. 12618] (the "Motion").

of the U.S. Claims Litigation will speed the making of distributions to U.S. creditors. This is a major benefit to U.S. creditors.

2. The Settlement Agreement demonstrates that consensual resolutions are still achievable in these cases. In reaction, the Monitor and the Canadian Debtors (collectively, the "Canadian Parties") have objected to the Motion. Both the *Response and Limited Objection of the Monitor and the Canadian Debtors to the US Debtors' Motion for Entry of an Order Approving the US Claims Litigation Settlement Agreement* [ECF No. 12686] (the "Initial Objection") and the *Supplemental Response and Limited Objection of the Monitor and the Canadian Debtors to the US Debtors' Motion for Entry of an Order Approving the US Claims Litigation Settlement Agreement* [ECF No. 12746] (the "Supplemental Objection" and, together with the Initial Objection, the "Objections") focus on section 6.1 of the Settlement Agreement, which provides that the parties to the Settlement Agreement (the "Settlement Parties") will work in good faith to see if they can align their positions in the Allocation Dispute. Reacting as if it is extraordinary and somehow prejudicial for parties in complex multi-party litigations to resolve disputes between them and attempt to collaborate to advance their interests, the Canadian Parties seek to limit the extent to which the Settlement Parties can cooperate. Specifically, the Canadian Parties seek to limit any agreed position of the Settlement Parties to a position asserted by a Core Party in its initial allocation pleadings, and demand that each Settlement Party "advise whether it is adopting a common allocation position with any other Settlement Party" by January 24, 2014.[3]

3. The Objections are a misguided and disappointing attempt by the Canadian Parties to disrupt further consensus in these proceedings. The Canadian Parties should not be surprised that, after 100-plus depositions and countless pages of document discovery – with the

---

[3] In the Initial Objection, the Canadian Parties sought to require the Settlement Parties to disclose their final allocation positions by January 8, 2014.

3

RLF1 9753676v.1

parties having gained a greater understanding of the strengths and weaknesses of their arguments as well as those of their adversaries – various parties might seek to compromise and resolve their differences. Such litigants often modify their positions to account for the record developed during the discovery process and/or seek to narrow the issues to be presented to the court for adjudication. The Canadian Parties are not prejudiced in any way by the Settlement Agreement or by the Settlement Parties' good faith efforts to cooperate in the Allocation Dispute. This Court and the Canadian Court have ordered a process that protects all parties' interests in a full and fair trial of the Allocation Dispute and that process remains in place and unaltered by the Settlement Agreement.

4. Nothing has prevented the Canadian Parties from engaging in settlement discussions with the parties to the Allocation Dispute or the Canadian Claims Litigation. To date, the Canadian Parties have seemed unwilling to do so. While very disappointing, the Canadian Parties' stance is their prerogative. The Settlement Parties also have a right to work in good faith to find common ground in the Allocation Dispute. Whether compromise between litigants in a multi-party dispute occurs at the beginning, middle or end of discovery, or even on the eve of or during trial, such compromise should be encouraged by the Courts, not thwarted. The Canadian Parties simply have no basis to object that the Settlement Parties have taken meaningful steps toward resolving their disputes, and have agreed to continue working toward further settlement.

5. While the Motion does not seek any relief for which the approval of the Canadian Court is necessary,[4] the Committee is pleased that both Courts will be convened in a joint hearing to hear the Motion.

WHEREFORE, the Committee respectfully request that this Court (i) grant the relief requested in the Motion; (ii) overrule the Objections and deny the relief requested therein; and (iii) grant such other and further relief as it deems just and proper.

Dated: January 6, 2014
Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.

*Katherine Good*

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP
Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel for the Official Committee
of Unsecured Creditors*

---

[4] Simply put, the Motion seeks approval of a settlement of claims asserted against the U.S. Debtors in the Chapter 11 Cases over which this Court has exclusive jurisdiction. *See* Allocation Protocol [ECF No. 10565, Ex. 1], ¶¶ 1, 5-7 (stating that "All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made," and noting that the merits of the EMEA US Claims and/or UK Pension US Claims will be heard before the U.S. Court).