# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Derek C. Abbott
302 351 9357
302 425 4664 Fax
dabbott@mnat.com

January 6, 2014

**VIA ELECTRONIC FILING AND**
**HAND DELIVERY**

The Honorable Kevin Gross
United States Bankruptcy Court
for the District of Delaware
824 N. Market St., 6th Floor
Wilmington, DE 19801

      Re: *In re Nortel Networks, Inc., et al.*, Case No. 09-10138 (KG)

Dear Judge Gross:

      We write on behalf of the US Debtors to reply to the December 22, 2013 letters submitted by the Monitor and the Canadian Debtors and the CCC (collectively, the "Canadian Interests") claiming the necessity of representative witness depositions, as well as to update Your Honor on the parallel submissions to the Canadian Court.[1]

      Following the submission of our December 20, 2013 letter to the Court requesting the elimination of representative witness depositions, in accordance with the schedule set by the Canadian Court, the US Debtors filed a notice of motion in Canada on December 30, 2013 for a joint hearing with this Court to be held on January 7, 2014. In connection therewith, the US Debtors submitted an Affidavit of Jeffrey A. Rosenthal (the "Rosenthal Affidavit") along with other supporting papers. The EMEA Debtors, U.K. Pension Claimants and the UCC filed papers in support of the US Debtors' motion. Each of those submissions have been filed with this Court under separate cover.

      On January 3, 2014, the Canadian Interests filed their opposition to the US Debtors' motion, which largely repeated the arguments made in their December 22, 2013 submissions to this Court. This letter, therefore, addresses those responses collectively.

---

[1]     Terms not defined herein shall have the same meaning as set forth in our December 20, 2013 letter.

**The US Debtors' Sworn Testimony That The Parties Agreed That Representative Witness Depositions Would Be For "Gap Filling" Is Not Only Unrebutted, But Was Confirmed By The Canadian Monitor To The Courts At The November 19, 2013 Hearing**

The Monitor and Canadian Debtors' argument in opposition focuses on the wrong question – what the Ontario Rules provide generally about parties' rights to representative depositions. The question instead is whether representative depositions are necessary and appropriate *in this case* given the agreed-upon purpose of representative depositions here, the extensive fact discovery that has occurred to date and the additional procedures in place to eliminate the possibility of "surprise" at trial.

The parties' respective submissions to the Courts over the past two weeks, as well as the collateral evidence (including prior statements made to the Courts by counsel for the Canadian Monitor), establish that representative depositions would be for the purpose of "gap filling" or "clean up." At the outset, one significant contrast between the US Debtors' motion and the opposition submissions is apparent. Only the US Debtors and the supportive EMEA Debtors have offered first-hand sworn affidavit testimony to the Courts as to the parties' agreement on this issue. The Rosenthal Affidavit provides first hand testimony from the US Debtors' lead counsel involved in the negotiation of the various protocols that the sole purpose for representative witness depositions raised by any of the parties during their negotiations was "gap-filling" to the extent that percipient fact witnesses either could not be deposed or lacked recollection. In their supporting papers, the EMEA Debtors submitted an Affidavit of Fara Tabatabai (the "Tabatabai Affidavit"), which confirms the Rosenthal Affidavit on this point. Ms. Tabatabai was one of the EMEA Debtors' lead lawyers involved in these negotiations.

In contrast, having had several days to review the Rosenthal Affidavit, the Canadian Interests did not submit any affidavit of their own from any person involved in the negotiation of the various protocols.[2] The Courts, therefore, should accept as true the only sworn affidavits submitted with first-hand testimony on this critical, indeed dispositive, point.

Not only did the Canadian Interests fail to submit any first-hand affidavit disputing the US Debtors' and EMEA Debtors' sworn testimony that the parties agreed that representative witness depositions were intended for "gap filling," but they actually made the very same representations to the Courts at the November 19, 2013 hearing when they (and most other Core Parties) sought an extension of the Litigation Timetable. As Alan Mark of Goodmans, counsel for the Monitor, stated when arguing in favor of an extension of the schedule:

---

[2]   The Canadian Monitor filed a Monitor report stating that there are other purposes for representative witness depositions generally, but offers no testimony as to what the parties discussed about the purposes of representative witness depositions in *this* case in light of the 100+ fact depositions to be conducted (which is unprecedented in the experience of the Canadian counsel involved in the negotiations). In addition, the Monitor had no direct involvement in the parties' negotiations regarding representative depositions.

> [t]he process of representative witnesses will be grossly inefficient, if we do not permit ourselves the opportunity to properly <u>identify the areas of examination which have not been covered by fact witnesses</u> before they've been done.

Nov. 19, 2013 Hr'g Tr. at 23:14-18 (emphasis added). This was precisely what the parties agreed, and the need to evaluate all of the first-hand witness testimony – and thus determine whether and what gaps existed – meant that a proper evaluation of the need for representative witness depositions could not be made until mid-December.[3]

It follows from the fact the parties affirmatively discussed and explicitly agreed during their August 2013 negotiations that representative witness depositions were intended solely to fill any gaps remaining due to an inability to obtain first-hand testimony from percipient witnesses that representation depositions are no longer necessary. It is incumbent upon the Canadian Interests to identify gaps for which they sought, but could not obtain, testimony and thus still require representative witness depositions. Notably, while their submissions are replete with vague references to gaps, the Canadian Interests have failed to identify a single topic on which they sought but were unable to obtain testimony from the US Debtors' or other witnesses.[4]

The Canadian Interests now claim that representative depositions are needed for disclosure of all facts that parties intend to rely upon at trial (both in support of their case and to rebut other parties' cases) and to learn the parties' theories and positions. In addition to being contrary to the agreed-upon purpose of representative depositions, attempting to achieve these goals through such depositions would be wasteful, expensive and unworkable. The parties understandably will need months to sift through the millions of documents produced and transcripts of over 100 depositions to determine what facts and evidence they will rely upon at trial. The parties are in the process of agreeing on an orderly procedure for the disclosure of this material through witness affidavits, designation of deposition transcript excerpts and exhibit lists well in advance of trial, all of which will eliminate the possibility of surprise at trial that purportedly animate the Canadian Interests' opposition to the US Debtors' motion. With respect to the Canadian Interests' desire to question a representative witness on the parties' legal positions, this is an improper attempt to obtain attorney-work product and legal strategies. In any event, the parties' positions have already been disclosed in two rounds of briefings filed last spring and will be further elaborated in opening and rebuttal expert reports, expert depositions (which do not otherwise occur in Canadian proceedings) and pre-trial briefs.

---

[3] The Monitor and Canadian Debtors seemingly concede that they never disclosed to the other parties that they privately contemplated any other goal for representative witness depositions other than the agreed "gap filling" until December 10, 2013, to which the US Debtors immediately objected the next day. Factum of the Canadian Debtors and Monitor ("Canadian Debtor Factum") ¶¶ 22-23.

[4] All of their arguments appear focused on disputes with other parties, such as the disagreements between the CCC and the Bondholders, or between the Canadian Directors and Officers and the EMEA Debtors. The US Debtors will defer to those parties to address the legitimacy of these claimed gaps, but they do not justify a deposition of a representative witness from the US Debtors.

### The Recent Settlement Is Irrelevant To Representative Witness Depositions

Continuing their curious attack on the settlement among the US Debtors, EMEA Debtors and U.K. Pension Claimants (addressed in a separate submission), the Monitor and Canadian Debtors assert that "[t]he only real change that has taken place since the November 19 Order is the settlement of EMEA and UK Pension Claims against the US Debtors and their agreement to try to come to a common allocation position." Canadian Debtor Factum ¶ 54.

While plainly incorrect,[5] the Monitor and Canadian Debtors do not explain the relevance of this assertion. While they express concern that "allocation positions could be abandoned at any time," id., they ignore that expert reports are due on January 24, less than three weeks from now. All of the parties' experts are presumably evaluating the evidence adduced during fact discovery to form their opinions.

Likewise, the Monitor and Canadian Debtors vaguely complain that "[e]liminating the Representative Party Discovery could allow these parties maximum flexibility to develop new allocation theories (something expressly contemplated by the proposed Settlement Agreement) without the opportunity for the Canadian Debtors and the Monitor to obtain essential discovery to defend these positions." Canadian Debtor Factum ¶ 55. Again, they do not explain what they mean or how this could be accomplished. The facts are the facts, and they have (or could have) been explored in detail with the 100+ percipient witnesses representing virtually every present or former member of Nortel senior management relevant to this litigation and through the production of millions of documents. Moreover, the analysis of those facts will be set forth in expert reports, which will then be subject to rebuttal reports and expert depositions.[6]

### The Law Does Not Support The Broad Discovery Sought By The Canadian Interests

The US Debtors' submission to the Canadian Court presented the Canadian authority – also largely unrebutted by the Canadian Interests – supporting their position that, even were representative witness depositions to proceed, the topics listed by the Canadian Interests (purporting to require disclosure of all facts and documents) are beyond the bounds of proper representative examination. *See, e.g., Livent Inc. (Special Receiver) v. Deloitte & Touche*, ONSC 7007 (CanLII) (S.C.J. (Master)) (holding that the Ontario rules for discovery do not require that the other side "show you all their cards").

In their December 22 letter to this Court, the Monitor and Canadian Debtor acknowledge that the parties agreed to forgo Rule 30(b)(6) depositions. In any event, authority under Rule 30(b)(6) of the Federal Rules of Civil Procedure is in accord. *See Indep. Serv. Org.*

---

[5] Nearly one-third of all depositions took place after November 14, 2013, only after which could the parties properly evaluate the scope of any remaining gaps, as even the Monitor's counsel argued to the Court at the November 19 hearing.

[6] Unless a party improperly elects to hold back for rebuttal its expert report on issues it knows are central to allocation – which the US Debtors certainly have no intention of doing and presume no other party will either – the parties' specific arguments will be known within weeks.

*Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) ( "Even under the present-day liberal discovery rules, Xerox is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim."); *United States v. District Council of New York City*, No. 90-Civ-5722 (CSH), 1992 WL 208284, at *15 (S.D.N.Y. Aug. 18, 1992) ("[T]o provide the information defendants seek would in effect require the Government to marshal all of its factual proof and then provide it to [the 30(b)(6) designate] so that she could respond to what are essentially a form of contention interrogatories. Aside from any issues of privilege, this would be highly inefficient and burdensome[.]").

The Canadian Interests' proposed scope of representative witness depositions also violates the clear terms of the Deposition Protocol. It is impossible to reconcile the court-ordered mandate that parties "serve a very limited number of subjects on which it believes no fact witness... has provided adequate first-hand testimony" and that such subject be "small in number and reasonable in scope" (Deposition Protocol § G(1)(a)) with their 27 all-encompassing topics directed to the US Debtors seeking "all facts and documents" including, for example, with respect to our "position on what amounts should be allocated to each of the estates." (topic 16)

As noted previously, it is the Canadian Interests' proposal – that the parties be entitled to force the disclosure at this time of all evidence on which a party might rely at trial – that wreaks the greatest havoc on the Discovery Protocol, Litigation Timetable and Deposition Protocol. This litigation has already been fast-tracked, and the parties have carefully negotiated (and are negotiating in further detail) a schedule providing for a pre-trial exchange of expert reports, deposition designations, exhibit lists, witness affidavits and ultimately pre-trial briefs. There is an enormous record of depositions (108 witnesses comprising over 22,000 pages of testimony) and documents (millions of produced documents, more than 2,000 of which were marked as deposition exhibits) that the US Debtors are still reviewing and expect to continue to review until shortly before trial. Revising that schedule by permitting the Canadian Interests to force the US Debtors to put "pens down" now and disclose all of the evidence they may introduce at trial in four months, rather than in April/May as the parties had agreed, would be enormously prejudicial and, candidly, unworkable.

A review of the Canadian Interests' topics – such as, for example, their request for disclosure of the "facts and documents, other than the MRDA, demonstrating the US Debtors' understanding of the . . . term 'economic ownership' as used in the US Debtors' allocation pleadings" – make clear that rather than seeking to uncover a factual gap, they actually seek to learn the US Debtors counsel's strategy regarding the marshaling and articulation of the evidence and arguments to be made at trial. Inquiries into the work product of counsel disguised as any discovery device are inappropriate. *See, e.g., Lynn v. Monarch Recovery Management, Inc.*, 285 F.R.D. 350, 363 (D. Md. 2012) (a party may object to document requests, interrogatories and requests for admissions that would require disclosure of attorney-client privileged or work product protected materials); *see also Howell v. Maytag*, 168 F.R.D. 502, 504 (M.D. Pa. 1996) (disallowing one party's requests for admission because they sought to uncover plaintiffs' plans for trial, not admissions as to facts at issue).

Likewise, many of their other topics are plainly subjects for expert reports. These include, for example, topic 12 ("At the time each of the lines of business were sold and when the Rockstar transaction closed, the value, including the dollar value, of the US Debtors' alleged interest in the Nortel global patent portfolio and the factual bases for those values"), and the breathtakingly broad, all-encompassing topic 16 ("The US debtors' position on what amounts should be allocated to each of the estates in respect of the sales of tangible assets and on what factual basis").

**The Monitor and Canadian Debtors' Alternative Proposal Is Both Unworkable And Not Before The Courts**

The Monitor and Canadian Debtors implicitly concede that representative witness depositions generally – and particularly the scope of the topics they served on December 13 – are unworkable and would waste enormous resources in devoting much of their submission to the discussion of the alternative proposal they made to other parties, which was universally rejected.

While the Monitor persists (in its 101st Report) in asserting that the Monitor and Canadian Debtors made "various alternative proposals," 101st Report of the Monitor ¶ 38, and that the US Debtors rejected "[a]ll such proposals," id. ¶ 40, it does not identify any proposal other than the one previously addressed by the US Debtors. No other alternative proposals were made by the Canadian Interests.

As for the alternative proposal discussed at length in the Monitor and Canadian Debtors' letter to Your Honor, their Factum and the 101st Monitor Report, no party has requested that the Courts modify the Discovery Protocol or Deposition Protocol to adopt that proposal. Even had such a motion been filed, the US Debtors articulated the various problems with that proposal in their recent submission to the Canadian Court – none of which were addressed in the Monitor and Canadian Debtors' subsequent Factum – and we refer the Court to that submission.

Setting up a straw man, the Monitor and Canadian Debtors curiously argue that "[w]hat is being proposed in this case is that there be *no* discovery. No one is proposing that the deposition evidence be treated as discovery." Canadian Debtor Factum ¶ 42 (emphasis in original).

The US Debtors do not understand this assertion. We do not propose that there be "no discovery." Rather, our position is that the 100+ depositions constitute such significant discovery that there is no further justification for representative witness depositions. This is what the parties agreed at the outset – representative witness depositions would only fill remaining gaps, and with none being identified, representative witness depositions should not proceed as a result of the parties' own agreement and the Courts' orders.

Incidentally, contrary to the Monitor and Canadian Debtors' representations, the US Debtors did make two other proposals to them. First, responding to the Monitor and Canadian Debtors' professed concern about gaps in claims discovery (they never identified any

with respect to allocation), the US Debtors suggested that the parties forego allocation representative witness depositions but that they could still be conducted with respect to the claims, which would be much narrower in scope and expense. Indeed, this would resolve entirely the concerns expressed by the Canadian Directors and Officers, who have likewise never identified the existence of any "gap" in allocation-related testimony.[7] Second, responding to the Monitor and Canadian Debtors' professed concern about the potential non-binding nature of testimony from former employees under the respective rules of evidence, the US Debtors suggested that they would likely be willing to adopt the testimony of any of the witnesses they produced and offered for the Monitor and Canadian Debtors to present a compilation of such testimony for which the US Debtors' binding adoption was sought. The Monitor and Canadian Debtors never responded to either proposal.

**Good Cause Exists To Eliminate Representative Witness Depositions**

The US Debtors believe that representative witness depositions ought not proceed because the parties' expressly agreed – as the only sworn first-hand testimony to the Courts confirm – that they would be limited to "gap filling" and no gaps have been identified. The Canadian Interests, alone among the Core Parties, are the ones now seeking to alter the parties' expectations from throughout fact witness discovery.

However, even had the parties not previously agreed that representative witness depositions were limited to "gap filling" and such agreement not been reflected in the court-ordered Deposition Protocol, it is beyond question that the Courts have the authority to modify the Discovery Plan for good cause. In addition to the Courts' inherent power, the parties explicitly agreed in the Litigation Timetable that "[a]ny Core Party may also file a motion with the applicable Court or Courts to modify this Litigation Timetable upon a showing of good cause." Similarly, section 9 of the Discovery Plan provides for modification by motion, noting that the "Discovery Participants recognize that, as additional information become available… it may become apparent that: (a) it is impractical or impossible for a Discovery Participant to comply with the terms of the Discovery Plan, or to do so in a time-efficient or cost-effective manner…"

The US Debtors submit that to the extent that the conduct of representative witness depositions for purposes other than gap-filling (as the Canadian Interests seek) is not itself a modification of the current Deposition Protocol, then good cause certainly exists to modify the relevant protocols to eliminate representative witness depositions in light of the extremely broad fact discovery taken to date from more than 100 percipient witnesses, the excessive cost associated with representative witness depositions of the scope sought by the Canadian Interests, and the extreme burden associated with having to significantly accelerate the parties' disclosure at this time – rather than in accordance with the contemplated pre-trial schedule – of their trial plans and evidence.

---

[7] The D&O's submitted an affidavit stating that they always contemplated representative witness depositions to ask "fundamental questions about the D&O Claims – what they are and against whom they are assert – and, by [the deponents'] answer[s], bind the EMEA Debtors."

The Honorable Kevin Gross
January 6, 2014
Page 8

\*   \*   \*

       The issue raised by this motion concerns the unique discovery process developed by the parties for <u>this</u> particular litigation in which the parties collectively spent many millions of dollars producing millions of documents and deposing more than 100 present and former directors and senior officers of numerous Nortel entities worldwide, U.K. Pension trustees and third party advisors. While the Canadian Interests repeatedly use the phrase "Ontario style" discovery, no party (including the Canadian Interests) ever suggested "Ontario style" discovery govern this litigation such that representative witnesses would displace these fact depositions. Rather, the parties melded together a process to combine U.S. and Ontario procedures in a deliberately staggered manner – first, fact depositions of witnesses with first-hand knowledge, followed by representative witness depositions as a means to fill any remaining gaps. In the absence of any such gaps, the agreed-upon limited purpose for the representative witness depositions simply no longer exists. It certainly does not justify the enormous additional expense that proceeding with representative depositions would impose upon the parties.

                                                    Respectfully submitted,

                                                   Derek C. Abbott

DCA/alc
cc:    Core Parties (via email)