## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | ) | Chapter 11 |
| | ) | |
| Nortel Networks Inc., *et al.*, | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF FILING COURTESY COPY OF FACTUM OF THE INFORMAL NORTEL NOTEHOLDER GROUP (U.S. DEBTORS' MOTION RE REPRESENTATIVE DEPOSITIONS, RETURNABLE JANUARY 7TH)

**PLEASE TAKE NOTICE** that pursuant to section 12(d) of the Cross-Border Court-to-Court Protocol (as amended, the "Protocol") [D.I. 990] approved in the above-captioned cases, and in connection with the joint hearing scheduled for January 7, 2014 at 10:00 a.m. (ET), the Ad Hoc Group of Bondholders (the "Bondholder Group")[1] has filed in the above-captioned cases a courtesy copy of the attached **Factum of the Informal Nortel Noteholder Group (U.S. Debtors' Motion re Representative Depositions, Returnable January 7th)** filed on January 6, 2014 in the proceedings pending before the Ontario Superior Court of Justice (Commercial List).

---

[1]     The Bondholder Group consists of bondholders that hold claims issued or guaranteed by Nortel Networks Corporation ("NNC" and together with its affiliates worldwide, "Nortel"), Nortel Networks Limited ("NNL" and together with NNC and certain of their subsidiaries, "Canadian Debtors"), Nortel Networks Inc. ("NNI"), and Nortel Networks Capital Corporation ("NNCC" and together with NNI and certain of its subsidiaries, the "US Debtors").

Dated: January 6, 2014

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
Laura Davis Jones (No. 2436)
Peter J. Keane (No. 5503)
919 N. Market Street, 17th Floor
PO Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

-and-

MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP
Dennis F. Dunne
Albert A. Pisa
Andrew M. Leblanc
Atara Miller
1 Chase Manhattan Plaza
New York, New York 10005-1413
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

-and-

Thomas R. Kreller
601 S. Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4463
Facsimile: (213) 629-5063

-and-

BENNETT JONES LLP
Richard B. Swan
Gavin H. Finlayson
3400 One First Canadian Place, P.O. Box 130
Toronto, Ontario, M5X 1A4
Telephone:  (416) 777-5762
Facsimile:  (416) 863-1716

*Attorneys for Ad Hoc Group of Bondholders*

Court File No. CV-09-7950-CL

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, C. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

**FACTUM OF THE INFORMAL NORTEL NOTEHOLDER GROUP**
**(U.S. Debtors' Motion re Representative Depositions, Returnable January 7th)**

Date:   January 6, 2014

**BENNETT JONES LLP**
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario  M5X 1A4

**Richard B. Swan**
**Gavin H. Finlayson**
**Amanda C. McLachlan**

Tel.: (416) 777-1200
Fax: (416) 863-1716

**Lawyers for the The Informal Nortel**
**Noteholder Group**

2

Court File No. CV-09-7950-CL

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, C. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

**FACTUM OF THE INFORMAL NORTEL NOTEHOLDER GROUP**
**(U.S. Debtors' Motion re Representative Depositions, Returnable January 7th)**

**PART I:    OVERVIEW**

1.     The Informal Nortel Noteholder Group (the **"Noteholder Group"**) supports and adopts

the submissions of Nortel Networks Inc. and its affiliated debtors (collectively, the **"U.S.**

**Debtors"**) in the Motion Record and Factum seeking an order dispensing with representative

witness depositions.[1] The Noteholder Group files this limited Factum to supplement those

submissions in response to specific issues raised by Ernst & Young LLP, in its capacity as

Monitor (the **"Monitor"**), the Canadian Debtors[2] and the Canadian Creditors' Committee (the

**"CCC"**) about the Noteholder Group's purported discovery obligations.

---

[1] Motion Record of Nortel Networks Inc. and the Other Debtors (Representative Deposition) dated December 10, 2013 (the "U.S. Debtors Motion Record") and Factum of Nortel Networks Inc. and the Other Debtors dated December 10, 2013 ("U.S. Debtors Factum").
[2] Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "Canadian Debtors").

2.      The joint hearings scheduled for May of this year will determine the allocation of the over $7.3 billion of sales proceeds among the Canadian, U.S. and EMEA Debtor[3] estates (the **"Allocation Dispute"**). To date, over 100 fact witnesses have been deposed, including former directors, senior executives, general counsel and pension trustees.  Representatives of the Monitor, the EMEA Joint Administrators and the U.S. Debtor's Principal Officer have also been deposed, as have third party financial advisors. Further depositions of third parties as well as experts are scheduled to take place before trial. In total, over 2.8 million documents have been produced, including over 394,410 pages of documents by the Noteholder Group alone. The pre-trial discovery that has taken place is unprecedented, comprehensive and well exceeds what a party would ordinarily be entitled to under the Ontario *Rules of Civil Procedure.*

3.      Against this backdrop of "no stone unturned" pre-trial discovery, the Monitor, Canadian Debtor's and CCC (the **"Canadian Allocation Group"**) seek to compel the Noteholder Group to participate in wasteful and unnecessary representative depositions on topics that have been fully canvassed with fact witnesses associated with the estate parties who, unlike the Noteholder Group, do have first-hand knowledge; these depositions are sought on topics which are irrelevant and collateral to the Allocation Dispute, and topics that seek legal conclusions or disclosure of attorney work product.

4.      The Canadian Allocation Group seeks to examine a representative of the Noteholder Group on the very same overly-broad and unduly burdensome requests they have directed against the U.S. Debtors (and which have been fully canvassed with the over 100 fact witnesses who were actually employed by the estate parties).

---

[3] The EMEA Debtors being the Joint administrators of Nortel Networks UK Limited ("NNUK") on behalf of 24 Nortel entities in Europe, the Middle East and Africa.

4

5.    In this regard, the Canadian Allocation Group seeks to conflate participation in the Allocation Dispute with parity in discovery obligations in relation to a dispute between parties with different roles. The Noteholder Group is not an estate party. It is a creditor group. The Noteholder Group has properly been recognized as a Core Party with rights of participation because it has a significant economic stake in the outcome of the Allocation Dispute. That does not mean it has first-hand evidence on the matters in issue in the Allocation Dispute or evidence beyond the documents that have been produced by the estate parties or discovered through fact witness depositions. The Noteholder Group has participated appropriately in discovery through, among other things, its voluminous production of documents, given that it is a creditor group with no first-hand fact testimony about the core matters in issue.

6.    In addition, the Canadian Allocation Group seeks to examine the Noteholder Group on: (i) the terms of the Nortel bonds, including the terms and guarantees of the bonds and the enforceability of such guarantees (legal opinion, ultimately related to claims and information that can readily be obtained from the bonds themselves); (ii) Noteholder Group "expectations" as to the assets available to satisfy creditors and of priority relative to other creditors (information that is not relevant to any matter in issue and that consists of attorney work product); and (iii) the claims asserted by the Noteholder Group in the proceedings, including information about the acquisition cost and timing of holdings of members of the Noteholder Group beyond the information the Noteholder Group has disclosed pursuant to Federal Bankruptcy Rule 2019 (information that is not relevant to any matter in issue). Far from being relevant to the Allocation Dispute, these topics relate to the claims of the Noteholder Group, which have not been challenged and are not a proper subject for discovery. The topics therefore appear calculated to embarrass and harass the current members of the Noteholder Group.

5

7.      Contrary to the assertions of the CCC, the Noteholder Group has consistently advised the other Core Parties since the beginning of the Allocation Dispute that it will not respond to discovery requests on these matters because they are not proper, relevant or proportional topics for discovery.  It is therefore not accurate for the Canadian Allocation Group to assert that it has proceeded on a "representation" by the Noteholder Group that it would produce a representative to be deposed on these topics.  That is simply not the case.

8.      In summary, it is wasteful, unnecessary and contrary to the principles of proportionality to proceed with representative depositions at all, including with a deposition of a Noteholder Group representative. This is an insolvency. Every dollar spent on further unnecessary discovery in the Allocation Dispute is a dollar that will not be paid to a creditor.  A representative deposition of the Noteholder Group will not produce any relevant evidence and therefore, should not proceed.

**PART II:        FACTS**

9.      The Noteholder Group repeats and relies upon the facts set out in the U.S. Debtors' Motion Record dated December 30, 2013 and highlights the following facts.

10.      The joint hearings scheduled to proceed in May 2014 will determine the allocation of more than $7.3 billion of sale proceeds between the Canadian, U.S. and EMEA estates and certain other claims asserted by the EMEA Debtors and the U.K. Pension Claimants.

11.     In accordance with the terms of the Litigation Timetable, the Discovery Protocol and the

Deposition Protocol[4], the parties have participated in an unprecedented, expansive pre-trial

discovery process that has spanned several months (and several countries) and far exceeds the

customary discovery requirements in Ontario.

**Noticing of Depositions**

12.     As part of the pre-trial discovery process, on July 24, 2013, the Core Parties served

notices indicating the individuals that they intended to call as witnesses for trial.  In total, over 40

names were provided, a figure that has now risen to close to 50.[5]

13.     On July 30, 2013, the Core Parties served notices indicating the fact witnesses they

proposed to depose, resulting in a list of over 110 witnesses.[6]  Included in the notice served by

the Canadian Allocation Group were five representatives of the Noteholder Group.

14.     On August 1, 2013, the Noteholder Group responded to the notice of the Canadian

Allocation Group, indicating that it objected to members of the Noteholder Group being included

in the list of proposed deponents on the basis that, amongst other things, the five individuals

identified had no material knowledge relevant to the Allocation Dispute.  As such, the

Noteholder Group indicated that the "proposed depositions would waste the valuable time and

resources of all parties.  Any information that the Ad Hoc Bondholder Group has that may be

relevant to this litigation can be obtained through the deposition of a corporate representative,

which you have noticed, and which notice we will respond and object to in due course".  Counsel

---

[4] Unless otherwise noted, capitalized terms have the meaning set out in the Litigation Timetable (as amended), the
   Discovery Protocol and the Deposition Protocol.
[5] One-Hundred First Report of the Monitor dated January 3, 2014 (the "Monitor's Report") at para. 19, p.6,
   Responding Motion Record of the Monitor and Canadian Debtors (the "Canadian Debtors Motion Record"), Tab 1.
[6] Monitor's Report at para. 19, p.6, Canadian Debtors Motion Record, Tab 1.

to the Noteholder Group went on to state: "To be clear, as we have reiterated for months now: the Ad Hoc Bondholder Group will not produce – whether via document productions, depositions, or otherwise – any information concerning the holdings of its members beyond what is required by Federal Rule of Bankruptcy Procedure 2019. We will not make available any witness to testify on these topics".[7]

## Document Production and Fact Witness Depositions

15.     In accordance with the Litigation Timetable and Discovery Plan, more than 2.8 million documents have been produced to date. In its submission, the CCC suggests that the Noteholder Group has failed to participate in discovery in the litigation. This is simply not true. The Noteholder Group has in fact produced approximately 16,584 documents representing approximately 394,410 pages in response to document requests served by the Canadian Debtors, the CCC and the other Core Parties.

16.     In addition, over 100 fact witnesses have been deposed in 15 different countries on three continents. The deposed fact witnesses included former chief executive officers, chief financial officers, treasurers, general counsel, senior executives in both tax and treasury departments, present and former directors, senior intellectual property lawyers, pension trustees and representatives of the Monitor, the EMEA joint administrators and the U.S. principal officer. A number of third parties have also been deposed, including financial advisors.[8]

---

[7] Correspondence from Atara Miller to the Service List dated August 1, 2013, Exhibit P to the Affidavit of Jeffrey
  Rosenthal (to be sworn) (the "Rosenthal Affidavit"), U.S. Debtors Motion Record, Tab 2(P).
[8] Rosenthal Affidavit, at paras. 30-31, U.S. Debtors Motion Record, Tab 2.

8

17.     Notwithstanding the substantial number of fact depositions conducted to date, it is currently contemplated that additional depositions of experts and third parties will occur prior to trial.

**The U.S. Debtors' Proposal to Dispense with Representative Depositions**

18.     Following the completion of the more than 100 fact depositions and in light of the significant breadth and volume of pre-trial discovery that has occurred to date, the U.S. Debtors proposed that the Core Parties agree to dispense with Representative Depositions prior to the deadline to serve requested topics.[9]

19.     Notwithstanding support from the Noteholder Group, the EMEA Debtors and the U.K. Pension Claimants, the Monitor, Canadian Debtors, CCC and the Directors and Officers disagreed with the U.S. Debtors' proposal.  As such, the parties exchanged topics for Representative Depositions on December 13, 2013.[10]

**The Canadian Allocation Group's Proposed Deposition Topics**

20.     The Canadian Allocation Group initially sought to require the Noteholder Group's representative witness to prepare for the same broad and burdensome 27 topics they directed at the U.S. Debtors.[11]  In addition, the Canadian Allocation Group initially sought to require the

---

[9]  Rosenthal Affidavit at para. 16, U.S. Debtors Motion Record, Tab 2.
[10]  Rosenthal Affidavit at paras. 17-18, U.S. Debtors Motion Record, Tab 2.
[11]  Amended Representative Witness Subjects Served by the Canadian Allocation Group and the Canadian Claims Defendant Group dated December 15, 2013 (the "Representative Witness Subjects"), pp. 2-5, Exhibit C to the Rosenthal  Affidavit, U.S. Debtors Motion Record, Tab 2(C).

Noteholder Group's representative witness to prepare for three additional Noteholder Group claims related topics.[12]

21.     The topics directed at the U.S. Debtors by the Monitor and Canadian Debtors primarily seek testimony relating to the U.S. Debtors' business affairs, the vast majority of which the Noteholder Group could not reasonably be expected to have any first-hand knowledge.  The three additional topics noticed by the CCC are irrelevant and collateral to the allocation dispute or topics that seek legal conclusion or disclosure of attorney work product.

22.     On December 18, 2013, the Noteholder Group delivered an objection to the Representative Deposition topics noticed by the Canadian Allocation Group in which it reiterated its view that, in light of the expansive pre-trial discovery conducted to date, proceeding with the proposed Representative Depositions was inappropriate, unnecessary and would result in a significant waste of time and resources.[13]

23.     On December 22, 2013, the Monitor and Canadian Debtors advanced a proposal to reduce the total number of topics directed at the U.S. Debtors to five topics and to seek to discover a single representative of the Noteholder Group on those same five topics:

    (a)     The facts and documents, other than the MRDA, demonstrating the U.S. Debtors' understanding of the phrase "equitable and beneficial ownership" as used in the MRDA and the term "economic ownership" as used in the U.S. Debtors' allocation pleadings;

---

[12] Representative Witness Subjects at p. 6, Exhibit C to the Rosenthal Affidavit, U.S. Debtors Motion Record, Tab 2(C).
[13] The Ad Hoc Group of Noteholders' Objections to the Representative Witness Subjects served by the Canadian Allocation Group and the Canadian Claims Defense Group dated December 18, 2013 (the "Noteholder Group Objection"), Exhibit F to the Rosenthal Affidavit, U.S. Debtors' Motion Record, Tab 2(F).

(b)     The factual and documentary basis for and scope of licenses of Nortel's

intellectual property, including any enhanced licenses, held by parties other than

NNL;

(c)     The facts and documents demonstrating how and to what extent intellectual

property was assigned to NNL by NNL's subsidiaries, inventors/authors and

others;

(d)     The facts and documents demonstrating Nortel's processes for the identification

and development of products, including as they varied over time before and after

January 14, 2009; and

(e)     The facts and documents underlying the contention of the U.S. Debtors that they

could have generated value from the intellectual property sold in the Rockstar

transaction in the absence of a sale of that intellectual property.[14]

24.     The proposed topics subsume most of the 27 topics originally noticed to the U.S. Debtors

and would allow the Monitor and the Canadian Debtor to ask an unlimited number of questions

on each of the five broad topics, even though the Noteholder Group has no first-hand knowledge

of any of the topics.  The proposed topics also include an extremely onerous request to identify

and finalize *at this time* all deposition testimony from the 100 plus depositions that have taken

place so far and all documents from among the over 2.8 million documents produced so far, that

each party intends to rely upon in support of their case and to refute the cases of other parties.[15]

The parties are well aware of the issues and theories that have been advanced and have fully

---

[14] Correspondence from Jennifer Stam dated December 21, 2013, Exhibit P to the Rosenthal Affidavit, U.S. Debtors
Motion Record, Tab 2(P).
[15] Rosenthal Affidavit at para. 38, U.S. Debtors Motion Record, Tab 2.

explored the evidence available from the various witnesses. Consistent with the litigation

schedule, the disclosure of the specific factual bases underlying the positions of the parties will

occur through the trial preparation briefing process. Given the extraordinary and comprehensive

discovery that has occurred so far, the factual record is established and clear.

**The CCC's Proposed Deposition Topics**

25.     From the materials filed on this motion it now appears that CCC alone seeks to depose a

representative of the Noteholder Group with respect to the following topics:

> (a)     The terms of the Nortel Bonds, including the guarantees of the Bonds and the
> enforceability of such guarantees;

> (b)     The expectations of the Noteholder Group with respect to any guarantees to
> proceeds from the Business Sales and Residual IP Sale (i.e. Rockstar transaction),
> and to the Nortel assets available to satisfy creditors, and the Noteholder Group's
> expectations of priority relative to other creditors in each of the U.S. and
> Canadian Estates; and

> (c)     The Claims asserted by the Ad Hoc Group of Bondholders in *re Nortel Networks
> Inc. et al.,* case No. 09-10138 (KG) (jointly administered) [the U.S. Debtors'
> chapter 11 cases], including but not limited to the subjects addressed in any
> Bankruptcy Rule 2019 Statements regarding membership of the Noteholder

Group and member holdings of the bonds and the current facts respecting such subjects as of the deposition of the Noteholder Group representative witness.[16]

26.    The Noteholder Group's December 18, 2013 objection contains its objection to the CCC's proposed Representative Deposition topics, which are identical to the three additional topics originally advanced by the Canadian Allocation Group referred to above.[17]

**PART III:        LAW AND ARGUMENT**

**A.    The Monitor's Proposed Deposition Topics are Overbroad and Improperly Directed**

27.    Both the Canadian and U.S. Courts follow the principles of relevance and proportionality in disputes about the scope of discovery.[18] Both courts have consistently expressed a desire to avoid unnecessarily broad discovery requests and have repeatedly expressed concerns regarding the costs and delay associated with the expansive pre-trial discovery conducted to date.  The topics for representative depositions proposed by the Monitor and Canadian Debtors pertain to issues that are not within the first-hand knowledge of the Noteholder Group.

28.    The Monitor, the Canadian Debtors and the CCC fail to recognize the distinction between the limited discovery obligations that result from the Noteholder Group's entitlement to participate in the Allocation Dispute as a significant creditor group and the broader discovery obligations borne by the various estates.  The Noteholder Group has been properly recognized as a Core Party because it is a creditor group with a significant economic stake in the outcome of the Allocation Dispute. It is not an estate party with contemporaneous documents or former

---

[16] Factum of the Canadian Creditors' Committee dated January 3, 2014 at para. 30.
[17] Noteholder Group Objection, Exhibit F to the Rosenthal Affidavit, U.S. Debtors' Motion Record, Tab 2(F).
[18] U.S. Debtors' Factum at para. 64.

employees who participated in the running of the Nortel businesses and who can therefore speak with first-hand knowledge about the issues raised in the Allocation Dispute.

29.    Contrary to the assertion made by the CCC that the Noteholder Group "has consistently objected to any discovery directed to it", the Noteholder Group has participated in the discovery process appropriately. It has produced 394,410 pages of documents in response to document requests served by the other Core Parties, including the CCC and the Canadian Debtors. The evidence the Noteholder Group now possesses about the Allocation Dispute is the same evidence that has been made available to all parties to the Allocation Dispute through the production of over 2.8 million documents and the deposition of over 100 fact witnesses.

30.    The evidence the Noteholder Group will rely upon at trial has therefore been disclosed. The Noteholder Group's legal theory is evident from its pleadings. The parties were required some time ago to disclose trial witnesses and cannot add witnesses at this date without leave. The case the Canadian Allocation Group has to meet is therefore clear. It cannot be credibly contended that any party will be surprised at trial. There is no "gap filling" and no "very limited number of subjects" relevant to the matters at issue on which fact witnesses have not provided adequate first-hand testimony that requires discovery of a Noteholder Group representative.

31.    The Canadian Debtors and Monitor assert in paragraph 48 of their factum that the five broad topics of their latest proposal "are all proper topics that a party is entitled to ask on discovery in that they are properly tied to the pleadings or court filings in this or related proceedings". They are not. There is no obligation in either jurisdiction to identify all of the evidence obtained through documentary and oral evidence on which a party intends to rely, particularly months before trial. The Canadian Debtors and Monitor purport to provide a chart

14

setting out the five topics with reference to corresponding allegations in court filings. It is telling that the Canadian Debtors and the Monitor have not identified any connection between their proposed topics and the Allocation Dispute pleadings of the Noteholder Group.[19]

## B.    The CCC's Proposed Deposition Topics are Irrelevant, Duplicative and Improper

32.    The topics the CCC seeks representative discovery on are simply not relevant to the Allocation Dispute. They seek legal opinions, attorney work product, or information about which the current members of the Noteholder Group do not have first-hand knowledge. Moreover, each topic relates to the Noteholder Group's claims, which have not been challenged to date in any forum and do not form part of the Allocation Dispute. This is simply not an appropriate time or place for the CCC to challenge the Noteholder Group's claims, nor would there be any basis for them to do so. All in all, the CCC's topics appear designed to embarrass and harass current members of the Noteholder Group rather than to obtain evidence that is necessary to the factual and legal bases of any parties' allocation position.

### 1.    The Terms of the Nortel Bonds and Guarantees

33.    The Nortel bond indentures and guarantees are legal documents. Their terms and enforceability are not at issue in the Allocation Dispute. Any arguments that may be raised by any party in this proceeding at some other point about the meaning of the terms of indentures or guarantees are arguments about contractual interpretation that will be briefed and argued by lawyers and determined by the judges. They are not capable of being informed by *viva voce* testimony from a representative of the Noteholder Group.

---

[19]Factum of the Canadian Debtors and the Monitor dated January 3, 2014 at Appendix 1.

15

34.     While the CCC does request that all guarantees and intercompany claims among the

Nortel debtors be stayed and/or eliminated *in the event* their alternative pro-rata allocation theory

is accepted, that is consequential relief predicated on the acceptance of their pro-rata allocation

theory by the courts in the first place.[20] In other words, it is not relevant to the factual or legal

underpinnings of their alternative allocation theory.  In any event, the ultimate enforceability of

guarantees or intercompany claims is a claims determination issue. The CCC cannot alter the

scope of the Allocation Dispute ordered by the courts by pleading their way out of it.

35.     Moreover, as disclosed in the Bankruptcy Rule 2019 Statements filed with the U.S.

Court, the members of the Noteholder Group are *purchasers* of Nortel bonds.  They did not have

a role in the negotiation or drafting of the terms of the bonds or the guarantees and therefore have

no relevant first-hand knowledge on these topics.

### 2.     The "Expectations" of the Noteholder Group

36.     A deposition pertaining to the "expectations" of the Noteholder Group in relation to the

assets available to creditors or about their priority in relation to other creditors of the U.S. and

Canadian estates is wholly irrelevant to any allocation position filed by the parties.  Such a

deposition would also seek disclosure of attorney work product that is privileged, or relate to the

claims filed by the Noteholder Group against the U.S. and Canadian estates and not the

substance of the Allocation Dispute.

---

[20] Allocation Position of the Canadian Creditors' Committee dated May 16, 2013 at para. 5,  Motion Record of the
Canadian Creditors' Committee dated January 3, 2014, Tab B.

37.    The CCC contends that Representative Deposition on the Noteholder Group's "expectations" is directly required as a result of positions advanced by the Noteholder Group at paragraphs 59 to 65 of its Response to the Allocation Positions of Other Core Parties.[21]

38.    Neither the Noteholder Group's primary allocation position nor its responding position affirmatively raises any issue with respect to the "expectations" of the Noteholder Group. The reference to "bargained-for guarantee rights" contained therein is a reference to the legal import of the contractual terms of the bonds. Again, as stated above, any arguments raised by any party in this proceeding about the legal meaning of terms of indentures or guarantees are arguments as to contractual interpretation that will be briefed and argued by lawyers and determined by the judges.

### 3.    Membership and Holdings of the Noteholder Group

39.    The Noteholder Group has complied with its discovery obligations pursuant to U.S. Federal Bankruptcy Rule 2019, indentifying the current membership and holdings of its members. It will update this information if and when necessary. Federal Bankruptcy Rule 2019 does not require disclosure of the precise date of acquisition or the amount paid for disclosable economic interests, nor is that information relevant to any issue as pleaded by the CCC or any other party.

40.    The CCC takes the position that Nortel's assets should be allocated on an equitable basis *amongst the estates*. They do not require factual evidence about the date of acquisition or the amount paid for the holdings of the members of the Noteholder Group as creditors in support of

---

[21] Response of the Ad Hoc Group of Bondholders to Allocation Positions of Other Core Parties at paras. 59-65, Exhibit A to the Affidavit of Barbara Walancik, sworn January 3, 2014, CCC Motion Record, Tab 1(A).

17

the allocation theory they have pleaded. Accordingly, any such discovery on these issues is

irrelevant and simply being sought to embarrass and harass the current members of the

Noteholder Group.

41.     Representative discovery on this topic will produce objections, refusals, motions and

appeals - an entirely unwarranted and unnecessary expenditure of resources that is contrary to the

rules of proportionality in discovery – all in pursuit of information that is not essential to the

factual or legal underpinnings of the CCC's allocation position. To the extent the CCC now seeks

to argue that post-insolvency transactions in bonds are somehow relevant to their allocation

position (which does appear irrelevant), there is nonetheless publically available and

comprehensive information as to the trading that has occurred in Nortel bonds post-insolvency.

**PART IV:        RELIEF SOUGHT**

42.     For the reasons set out above, the Noteholder Group seeks an order:

(a)     Dispensing with Representative Depositions;

(b)     Dismissing the Monitor and Canadian Debtors' request that it produce a

representative witness for Representative Deposition; and

18

(c)   Dismissing the CCC's request that it produce a representative witness for

Representative Depositions.

ALL OF WHICH IS RESPECTFULLY SUBMITTED this 6th day of January, 2014.

*Bennett Jones LLP*

**BENNETT JONES LLP**
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario  M5X 1A4

**Richard B. Swan**
**Gavin H. Finlayson**
**Amanda C. McLachlan**

Tel.: (416) 777-1200
Fax: (416) 863-1716

**Lawyers for the Informal Nortel**
**Noteholder Group**

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, C.C-36, AS AMENDED                                   Court File No. CV-09-7950-
CLAND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION,
NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

|  | |
|---|---|
| | **ONTARIO**<br>**SUPERIOR COURT OF JUSTICE**<br><br>Proceeding commenced at Toronto |
| | **FACTUM OF THE INFORMAL NORTEL**<br>**NOTEHOLDER GROUP**<br>**(U.S. Debtors' Motion re Representative**<br>**Depositions, Returnable January 7th, 2014)** |
| | **BENNETT JONES LLP**<br>One First Canadian Place<br>Suite 3400, P. O. Box 130<br>Toronto, ON  M5X 1A4<br><br>**Richard Swan**<br>**Gavin Finlayson**<br>**Amanda C.McLachlan**<br>Tel:  416-777-1200<br>Fax: 416-863-1716<br><br>Lawyers for the Informal Nortel Noteholder Group |