UNITED STATE BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | No. 09-10138 (KG) |
| Nortel Networks, Inc. et al. | Jointly Administered |
| Debtors. | Notice of Motion |
| | Hearing date: |
| | February 4, 2014 |

## NOTICE OF MOTION FOR AN ORDER PERMITTING COUNSEL OF CREDITOR ERNEST DEMEL TO WITHDRAW AS HIS ATTORNEY

PLEASE TAKE NOTICE that creditor Ernest Demel ("Demel"), has filed the attached motion for an order permitting the withdrawal of his counsel.

PLEASE TAKE FURTHER NOTICE that any party wishing to oppose the entry of an order approving the Motion must file a response or objection no later than **January 27, 2014, at 4:00 p.m. (Eastern Time).**

PLEASE TAKE FUTHER NOTICE THAT A HEARING ON THE MOTION WILL BE HELD ON **FEBURAY 4, 2014, AT 10:00 A.M. (EASERN TIME)** BEFORE THE HONORABLE KEVIN GROSS AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 6TH FLOOR, COURTROOM #3, WILMINGTON, DELAWARE 19801. ONY PARTIES THAT HAVE TIMELY FILED A TIMELY OBJECTION WILL BE HEARD AT THE HEARING.

IFYOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OF HEARING

Dated: Brooklyn, New York
January 7, 2014

Gary Stone, of counsel to
Meghan Faux

South Brooklyn Legal Services
105 Court Street, 4th Floor
Brooklyn, NY 11201
Tel. (718) 237-5542
Fax (718) 875-8546

Counsel for Creditor Ernest Demel

UNITED STATE BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

|  | Chapter 11 |
| In re | No. 09-10138 (KG)<br>Jointly Administered |
| Nortel Networks, Inc. et al. | |
| Debtors. | Hearing date:<br>February 4, 2014 |

---

## MOTION OF CREDITOR ERNEST DEMEL, FOR AN ORDER PERMITTING THE WITHDRAWAL OF HIS COUNSEL

Ernest Demel by his counsel hereby moves this Court for an order, substantially in the form

submitted herewith as **Exhibit A**, permitting the withdrawal of his counsel.

In support of this Motion, Mr. Demel, by his counsel, represents as follows:

1.  Mr. Demel retained counsel[1] in or about 2001, with respect to certain disputes with

employee benefit plans in which he participated as a consequence of his employment by

Northern Telecom, Inc.  Counsel's representation of Mr. Demel in the above-captioned

proceeding ("the bankruptcy case") is an outgrowth of counsel's representation of Mr. Demel in

an action against the plans and their trustees and administrators, brought under the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461, in

the United States District Court for the Southern District of New York, *Ernest Demel v. Group*

*Benefits Plan for Employees of Northern Telecom, Inc., et al.*, No. 07-CV-1089 (S.D.N.Y. filed

Jan. 10, 2007).  To the extent relevant to this motion, the relationship between the two

---

[1]Mr. Demel originally retained Gary Stone, then a staff attorney at Legal Services for Elderly, which was closed in or about 2008.  He is currently of counsel to Meghan Faux, Esq., the director of South Brooklyn Legal Services, an office of Legal Services NYC, to which Legal Services for the Elderly had been affiliated.

1

proceedings is summarized in the motion made by the Debtors, September 23, 2010, submitted

herewith as **Exhibit B**.

2.   On or about September 14, 2010, the Debtors and Mr. Demel reached a settlement with

respect to his rights in the bankruptcy case, under which his claim against the plans not covered,

under Title IV of ERISA by the Pension Benefit Guaranty Corporation, was allowed in the

reduced amount of $125,000.  The precise terms of the agreement are set forth in the stipulation

of that date, a copy of which is submitted herewith as **Exhibit C**.  The Court approved the

settlement by order dated October 14, 2010, a copy of which is submitted herewith as **Exhibit D**.

3.   Subsequently, Mr. Demel told counsel that he no longer wanted counsel to represent him

in the bankruptcy case.  By letter dated July 24, 2012, a copy of which is submitted herewith as

**Exhibit E**, counsel informed the Court of this, and asked leave to withdraw in conformity with

Mr. Demel's wishes.  A copy of the letter was sent to Debtors' counsel, who to date have not

offered any objection to the proposed withdrawal of Demel's counsel.

4.   There is no reason to believe that any of the parties to the bankruptcy case will be

prejudiced by permitting counsel to withdraw.

WHEREFORE it is respectfully requested that this Court issue an order permitting the

withdrawal of Ernest Demel's counsel, and granting such other and further relief as the Court

may deem just, appropriate, and equitable.

Dated: Brooklyn, New York
       January 7, 2014

Gary Stone, of counsel to
Meghan Faux, Esq.
South Brooklyn Legal Services

2

105 Court Street, 4th Floor
Brooklyn, NY 11201
Tel. (718) 237-5542
Fax (718) 875-8546

Counsel for Creditor Ernest Demel

# EXHIBIT A

UNITED STATE BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>Nortel Networks, Inc. et al.<br><br>Debtors. | Chapter 11<br><br>No. 09-10138 (KG)<br>Jointly Administered<br><br>Proposed Order |

## ORDER PERMITTING THE WITHDRAWAL OF CRDITOR ERNEST DEMEL'S COUNSEL

Upon the motion filed January 7, 2014, for entry of an order, as more fully described in the motion, of Ernest Demel, for permitting the withdrawal of his counsel.

IT IS HEREBY ORDERED

That Gary Steven Stone, of counsel to Meghan Faux, director of South Brooklyn Legal Services, be permitted to withdraw as counsel for Creditor Ernest Demel

Dated: _____ 2014
            Wilmington, Delaware

_____
THE HONRABLE KEVIN GROSS
U.S. BANKRUPTCY JUDGE

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                          :

*In re*                            :       Chapter 11

Nortel Networks Inc., *et al.*,[1]     :       Case No. 09-10138 (KG)

              Debtors.     :       Jointly Administered
                          :
                          :       **Hearing date: October 14, 2010 at 10:00 a.m. (ET)**
                          :       **Objections due: October 7, 2010 at 4:00 p.m. (ET)**
-------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019
## FOR ENTRY OF AN ORDER APPROVING THE STIPULATION
## RESOLVING CLAIM NO. 4643 FILED BY ERNEST DEMEL

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtors' entry into and approving a stipulation (the "Stipulation") with Ernest Demel ("Claimant"), attached hereto as **Exhibit B**, which reduces and allows the claim set forth in Claimant's proof of claim against NNI; and (ii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

1

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for

consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent, Nortel Networks Limited ("NNL" and,

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"). NNSA was authorized to continue to operate as a going concern until completion of the sale of the GSM/GSM-R business. While NNSA's operations are now terminated, the French Proceedings are continuing and, in accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 26, 2009, this Court entered an order recognizing the

---

[3]      The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099]. From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.    Debtors' Corporate Structure and Business**

11.     Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers. Nortel's technologies spanned access and core networks and supported multimedia

---

[4]      Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (the "Israeli Companies"), filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Companies under the Israeli Companies Law (the "Joint Israeli Administrators").

and business-critical applications. Nortel's networking solutions consisted of hardware, software and services. Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12.    Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

C.    **Case Milestones**

13.    On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd., to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632]. In addition, Nortel has obtained Court approval for the

---

[5]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

auction of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business [D.I. 3855]. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.    On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580]. On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

**D.    Bar Date, Schedules and Notice**

15.    On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed their Schedules of Assets and Liabilities and Statements of Financial Affairs [D.I.s 616-627, 801-810]. On September 11, 2009, the Debtors filed schedules and statements for NN CALA (the "NN CALA Schedules") [D.I. 1477, 1478]. On November 4, 2009, the Debtors (other than NN CALA) filed their Amended Schedules of Assets and Liabilities and Amended Statements of Financial Affairs (together with the NN CALA Schedules, referred to as the "Schedules") [D.I.s 1811-1825].

16.    On August 4, 2009, the Court entered an order (the "Bar Date Order") [D.I. 1280] establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last date for all creditors holding a "claim" (as such term is defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors (other than NN CALA) to file and serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order. Notice of the General Bar Date was provided by mail and publication in accordance with the procedures outlined in the Bar Date Order. On December 3, 2009, the Court entered an order

[D.I. 2059] establishing January 25, 2010 at 4:00 p.m. (Eastern Time) as the general claims bar

date for all creditors holding a claim against NN CALA to file and serve written proofs of claim.

### Relief Requested

17.      By this Motion, the Debtors seek an order, pursuant to section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing the Debtors' entry into the

Stipulation and approving the Stipulation, and (ii) granting them such other and further relief as

the Court deems just and proper.

### Facts Relevant to this Motion

18.      On January 10, 2007, Claimant, who alleges that he was employed by Northern

Telecom, Inc. from August 17, 1981 through February 3, 1984, commenced an action in the

United States District Court for the Southern District of New York (the "District Court Action")

seeking to recover certain long-term disability and disability pension benefits on account of a

purported total disability resulting from an automobile accident.  The named defendants in the

Action are the Group Benefits Plan for Employees of Northern Telecom, Inc. dated as of January

1, 1982 (the "Benefits Plan"), the Northern Telecom, Inc. Retirement Plan for Employees dated

as of January 1, 1984 (the "Retirement Plan," together with the Benefits Plan, the "Plans"), the

Trustees and Administrators of the Plans, the Employee Benefits Committee of Northern

Telecom, Inc., and The Prudential Insurance Company of America (all defendants in the District

Court Action are collectively referred to as the "Benefits Defendants").  (See Complaint,

attached as part of the Declaration of Ebunoluwa Taiwo in Support of Debtors' Objection to

Proof of Claim No. 4643 Filed by Ernest Demel, dated May 25, 2010 (the "Taiwo Decl."), Ex. A

[D.I. 3069].)  Neither NNI nor any other Debtor was named or subsequently added as a

defendant in the District Court Action.

7

19.    On February 5, 2009, the Benefits Defendants filed a Suggestion of Bankruptcy,

citing the Debtors' voluntary petitions for relief in these proceedings.  In response, on February

17, 2009, the District Court transferred the Action to the suspense docket.  (See Order dated

February 17, 2009, attached as part of Taiwo Decl. Ex. A [D.I. 3069].)

20.    On April 22, 2009, Claimant moved the District Court to remove the Action from

the suspense docket on the grounds that "[t]he entities named as Defendants in [the District

Court] Action are not debtors in the Delaware bankruptcy proceeding."  (See Demel Dist. Ct.

Mem., Taiwo Decl. Ex. B [D.I. 3069].)  While his motion to remove the District Court Action

from the suspense docket was still pending, on September 25, 2009, Claimant filed a Proof of

Claim against NNI in the amount of $1,924,557.70, which is listed on the Debtors' claim register

as claim number 4643 (the "Proof of Claim" or the "Claim").  The Proof of Claim attaches the

Complaint in the District Court Action and seeks to recover from NNI the same benefits that are

the subject of the District Court Action.  (See Taiwo Decl. Ex. A [D.I. 3069].)

21.    On January 8, 2010, the District Court granted Mr. Demel's motion to remove the

District Court Action from the suspense docket on the grounds that, based on Mr. Demel's

representations to the Court, the Action did not name a Debtor as a defendant, did not seek relief

against a Debtor, and did not seek to recover property of the Debtors' estates.  (See Dist. Ct.

Decision, Taiwo Decl. Ex. C [D.I. 3069].)  On May 25, 2010, the Debtors objected to the Proof

of Claim on the basis of Claimant's representations to the District Court and the District Court's

Order of January 8, 2010.  The Debtors took the position that the Proof of Claim sought relief not

from any of the Debtors, but instead from the non-Debtor Plans, which are separate legal entities

from the Debtors.  Accordingly, the Debtors argued, Claimant had no valid claim against the

Debtors' estates [D.I. 3068].  On July 9, 2010, Claimant responded to the Debtors' objection,

8

arguing that Claimant held a valid claim against one or more of the Debtors as sponsor, administrator, and funder of the Benefits Plan [D.I. 3501].

22.     Thereafter, in an effort to negotiate an expeditious resolution of the dispute between the Debtors and Claimant, the parties entered into settlement discussions. As a result of these negotiations, the Debtors, subject to this Court's approval, have reached a compromise with Claimant reducing and allowing his Claim as reduced, as memorialized in the Stipulation. The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of the Claim through the Stipulation is appropriate and in the best interests of both their estates and their creditors.

23.     Pursuant to the Stipulation[6] and subject to this Court's approval, the Debtors have agreed to reduce and allow the Claim in the amount of $125,000. The proposed allowed amount of the Claim relates solely to Claimant's alleged entitlement to long-term disability benefits and does not include any amount relating to Claimant's alleged entitlement to retirement benefits. As noted in the Stipulation, the Retirement Plan was terminated pursuant to section 1342(c) of title 29 of the United States Code ("Section 1342(c)"), as approved by order of this Court dated August 31, 2009 [D.I. 1406], with the Pension Benefit Guaranty Corporation (the "PBGC") appointed statutory trustee pursuant to Section 1342(c). Thus, the only claims Claimant has against any Nortel entity are his claims to entitlement of disability benefits. His pension related claims are now against the PBGC.

24.     In consideration of the partial allowance of his Claim, Claimant has agreed, subject to this Court's approval, to release all claims against the Benefits Defendants other than

---

[6]     The summary of the Stipulation included herein is for informational purposes only. In the event of any discrepancy between the description herein and the terms of the Stipulation, the terms of the Stipulation shall govern.

9

the Claim as allowed. This settlement does not affect his claims against the Retirement Plan, which remain pending before the District Court, and are the responsibility of the PBGC. Accordingly, pursuant to the Stipulation, the District Court Action shall be dismissed as to all defendants except for the Retirement Plan.

### Basis for Relief

25.    The Debtors seek authorization to enter into the Stipulation under section 105 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.

26.    Citing this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). And courts in this District have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

10

27.     Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re

Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the

need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer

Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best

possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330.

Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below

the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of

Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at

330.

28.     The Third Circuit has set out four criteria for a bankruptcy court to consider when

evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62

B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.),

283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

29.     The Debtors respectfully submit that the Martin Factors weigh heavily in favor of

approving the Stipulation, and request that their entry into the Stipulation be authorized under

Bankruptcy Rule 9019.  While the Debtors are prepared to litigate the Claim and believe that

they would prevail in such litigation, litigation carries with it inherent uncertainties and there is

11

no assurance that such litigation would achieve a better result than the one set forth in the Stipulation. Indeed, this matter has been pending for some time, was unsuccessfully mediated, and has been extremely difficult to resolve over the years. The settlement reflected in the Stipulation eliminates a purported $1,924,557.70 claim against NNI's estate by allowing a claim against NNI in the lesser amount of $125,000. This resolution fairly balances the Debtors' likelihood of success on the merits of the Claim against their interest in avoiding the uncertainty of litigation.

30.      In addition, further litigation of the Claim would result in the estate's expenditure of considerable additional legal fees, particularly because Claimant has previously demonstrated a proclivity to litigate, and bears no legal fees of his own because he is represented by legal services counsel. In the absence of a settlement, then, the estate would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

31.      Finally, the interests of the creditors militate in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claim and the avoidance of legal expenses that would be incurred if the Claim were to be further litigated. In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

### Notice

32.      Notice of the Motion has been given via first class mail to the (i) Claimant; (ii) U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

12

### No Prior Request

33.     No prior request for the relief sought herein has been made to this or any other

court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  September 23, 2010
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Ann C. Cordo
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                                          :
*In re*                                   :     Chapter 11
                                          :
Nortel Networks Inc., *et al.*,[1]        :     Case No. 09-10138 (KG)
                                          :
                    Debtors.              :     Jointly Administered
                                          :
---------------------------------------------------------X

## STIPULATION REDUCING AND ALLOWING CLAIM NO. 4643 FILED BY ERNEST DEMEL AGAINST DEBTOR NORTEL NETWORKS INC.

WHEREAS, on or about January 9, 2007, Claimant Ernest Demel ("Claimant")

commenced a lawsuit (the "Action") in the United States District Court for the Southern

District of New York (the "District Court") alleging violations of the terms of certain

employee benefits plans and the Employee Retirement Income Security Act of 1974

("ERISA"), in which the following were named as defendants:  (i) the Group Benefits

Plan for Employees of Northern Telecom, Inc., dated as of January 1, 1982 (the "Group

Benefits Plan"); (ii) the Trustees and Administrator of the Group Benefits Plan; (iii) the

Employee Benefits Committee of Northern Telecom, Inc.; (iv) the Trustees and

Administrator of the Northern Telecom Inc. Retirement Plan for Employees, dated as of

January 1, 1984 (the "Retirement Plan"); (v) the Prudential Insurance Company of

America (entities (i) through (v) are collectively referred to as the "Released

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number (collectively, the "Debtors"), are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

1

Defendants"); and (vi) the Retirement Plan, which was terminated pursuant to section

1342(c) of title 29 of the United States Code ("Section 1342(c)"), as approved by order of

this Court dated August 31, 2009, with the Pension Benefit Guaranty Corporation (the

"PBGC") appointed statutory trustee pursuant to Section 1342(c); and

WHEREAS, on January 14, 2009 and July 14, 2009 (the "Petition Dates"), Nortel

Networks Inc. (the "Nortel Debtor") and its affiliated debtors and debtors in possession

(the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States

Code (the "Bankruptcy Code") in this Court (Case No. 09-10138 (KG) (Jointly

Administered)); and

WHEREAS, this Court established the general bar dates of September 30, 2009

(other than for claims against Nortel Networks (CALA) Inc.) and January 25, 2010 (for

claims against Nortel Networks (CALA) Inc.) for filing proofs of claim in these cases;

and

WHEREAS, on or about September 29, 2009, Claimant filed a proof of claim

against the Nortel Debtor in the amount of $1,924,557.70, which is listed on the Debtors'

claim registry as claim number 4643, and which seeks to recover the same amounts

sought in the Action ("Claim No. 4643" or the "Claim"); and

WHEREAS, Claimant and the Nortel Debtor (collectively, the "Parties") have

engaged in arm's-length negotiations and, in order to avoid the cost and risk inherent in

litigating the Claim, have agreed to resolve the Claim and all of their disputes on the

terms set forth in this Stipulation;

2

NOW, THEREFORE, the Parties stipulate and agree as follows:

1. <u>Resolution of Claim</u>. Effective upon the approval of this Stipulation by this Court:

(a) Claim No. 4643 shall be reduced and allowed as a general unsecured claim by Claimant against the Nortel Debtor in the amount of $125,000.00, which amount relates solely to Claimant's alleged entitlement to long-term disability benefits and does not include any amount relating to Claimant's alleged entitlement to benefits under the Retirement Plan, and Claimant shall have no other or further claims against any of the Debtors.

(b) This Stipulation shall be deemed to amend and supersede the Debtors' schedules with respect to Claimant.

2. <u>Dismissal of District Court Action as Against the Released Defendants</u>. No later than seven (7) days following entry of an order of this Court approving this Stipulation, Claimant and the Released Defendants shall jointly move the District Court to dismiss all claims against the Released Defendants in the Action.

3. <u>Release</u>. Subject to the reduction and allowance of the Claim as provided for herein, effective upon entry of the order of this Court approving this Stipulation, Claimant releases and forever discharges (1) the Released Defendants and the Debtors, in both their corporate and fiduciary capacities as well as their respective affiliates, subsidiaries, shareholders, directors, officers, employees, agents, attorneys, successors and assigns; and (2) any benefit plans of or sponsored by the Released Defendants or the Debtors, except for the terminated Northern Telecom Inc. Retirement Plan for Employees, and any predecessors, successors or assigns

3

of such benefit plans, from any and all claims, defenses, demands, liabilities,

debts, obligations, damages, sums of money, promises, accounts, actions,

controversies, causes of action, setoffs, recoupments, judgments, costs and

expenses (including, without limitation, attorney's fees), known or unknown, past

or present, fixed or contingent, liquidated or unliquidated, in law or in equity, that

Claimant now has, had, might have had, or hereafter may against any of the

Released Defendants and/or any of the Debtors from the beginning of the world to

the date of this Release, including, without limitation, those that arise from,

concern, or are related to, directly or indirectly, the Claim, the Action, Claimant's

former employment or other relationship with the Nortel Debtor or the

termination of such employment or any such relationship.

4. <u>No Effect on Claims for Benefits Guaranteed by the PBGC</u>. Nothing in this

Stipulation shall be construed to limit the power of the United States District

Court for the Southern District of New York in the Action to make orders or

render judgment with respect to any acts or omissions of the Retirement Plan and

its fiduciaries, or to determine any liability arising as a consequence thereof to the

extent such liability is insured by the PBGC.

5. <u>No Further Claims</u>. Upon entry of this Court's order approving this Stipulation,

Claimant shall be forever barred from (i) amending the Claim and (ii) filing any

further proofs of claim against any of the Debtors in the Debtors' Chapter 11

cases.

6. <u>Binding Effect</u>. This Stipulation and the Order approving the Stipulation shall be

binding upon any successors or assigns of the Parties, including any trustee or

4

receiver subsequently appointed in the Debtors' Chapter 11 cases. The Parties'

respective counsel are authorized to sign this Stipulation on the Parties' behalf.

7. Entire Agreement. This Stipulation constitutes the entire agreement between the

Parties and supersedes all prior or contemporaneous written or oral

communications, understandings, and agreements with respect to the subject

matter hereof and this Stipulation cannot be amended except by a written

agreement between the Parties.

8. No Transfer. Claimant represents that he has not sold, assigned or otherwise

transferred the Claim to a third party.

9. No Admissions. Each Party acknowledges and agrees that nothing in this

Stipulation constitutes an admission or concession by any Party hereto, the

Released Defendants, or any of the Debtors of (i) the validity of all or any part of

the Claim or any defense thereto, or (ii) liability or wrongdoing with respect to the

Claim or any legal or factual issue relating to the Claim.

10. Costs and Expenses. Each Party agrees to bear his and its own costs, expenses

and attorneys' fees incurred in connection with the Action, the Claim, and the

negotiation and preparation of this Stipulation, and not to seek from each other

reimbursement of any such costs, expenses or attorneys' fees.

11. Jurisdiction. This Court shall retain jurisdiction over all matters relating to this

Stipulation, including, without limitation, the implementation of this Stipulation

and any disputes arising hereunder.

12. Governing Law. This Stipulation shall be interpreted and construed according to,

and governed by, the laws of the State of Delaware.

13. <u>Manner of Execution</u>.  This Stipulation may be executed in counterparts, and such

counterparts shall be construed together as one instrument.  Facsimile or pdf

signatures shall be deemed original signatures.

14. <u>Court Approval</u>.  No provision of this Stipulation shall be effective unless and

until the Stipulation is approved by this Court.  In the event this Stipulation is not

approved by the Court, the Parties reserve all of their rights and defenses with

respect to the Claim and the Action.

15. <u>Claims Register</u>.  Upon entry of the order approving this Stipulation, the Debtors,

the Debtors claims' agent, Epiq Bankruptcy Solutions, LLC, and the Clerk of the

Court are authorized to take all necessary and appropriate actions to give effect to

this Stipulation.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties

have executed this Stipulation.

Dated: Sept. 14, 2010

Nortel Networks Inc.                         Ernest Demel

By: _____    By: _____
Deborah M. Buell, Partner                Gary Steven Stone
Cleary Gottlieb Steen & Hamilton LLP    South Brooklyn Legal Services
Counsel for the Debtors                   Counsel for Claimant

# EXHIBIT D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                          :

*In re*                      :

Nortel Networks Inc., *et al.*,[1]   :

            Debtors.    :

                          :

-------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

RE: D.I. <u>4010</u>

## ORDER APPROVING THE STIPULATION
## <u>RESOLVING CLAIM NO. 4643 FILED BY ERNEST DEMEL</u>

Upon the motion dated September 23, 2010 (the "Motion"),[2] of Nortel Networks Inc. and

its affiliated debtors, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, authorizing the Debtors'

entry into and approving the Stipulation, attached to the Motion as **Exhibit B**, and granting them

such other and further relief as the Court deems just and proper; and adequate notice of the

Motion having been given as set forth in the Motion; and it appearing that no other or further

notice is necessary; and the Court having jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined that

consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the

Court having determined that the legal and factual bases set forth in the Motion establish just

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.
[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

cause for the relief requested in the Motion, and that such relief is in the best interests of the

Debtors, their estates, their creditors and the parties in interest; and upon the record in these

proceedings; and after due deliberation;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are authorized to enter into the Stipulation, and the Stipulation is

approved in its entirety.

3.      The Debtors are authorized, but not directed, to take any and all action that may

be reasonably necessary or appropriate to perform their obligations arising under the Stipulation.

4.      The failure specifically to describe or include any particular provision of the

Stipulation in this Order shall not diminish or impair the effectiveness of such a provision, it

being the intent of this Court that the Stipulation be approved in its entirety.

5.      The Debtors, the Debtors claims' agent, Epiq Bankruptcy Solutions, LLC, and the

Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to

the Stipulation.

6.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to

the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its

entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or

realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and

without further delay, take any action and perform any act authorized under this Order.

2

7.    The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: __Oct. 14__, 2010
        Wilmington, Delaware

                                        _____
                                        THE HONORABLE KEVIN GROSS
                                        UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT E

# SOUTH BROOKLYN LEGAL SERVICES

Brooklyn Legal Services Corp. B $ John C. Gray, Project Director
105 Court Street, Brooklyn, NY 11201 $ (718) 237-5500 $ Fax (718) 855-0733

Gary Steven Stone, Esq.
Lic. New York State
Direct line (718) 237-5542

July 25, 2012

Hon. Kevin Gross
Chief Judge
United States Bankruptcy Court
District of Delaware
824 North Market Street
Wilmington Delaware, 19801

> In re Nortel Networks, et al.(KG)
> Case number09-10138
> Claim of Ernest Demel

Dear Judge Gross:

I am counsel for Ernest Demel, a creditor in the above-captioned proceeding, in which, not being admitted to the bar of this Court or of the State of Delaware, I have appeared with the permission of this Court and without objection from opposing counsel.

As requested by Mr. Demel, I am writing to ask that I be relieved as his counsel, and that all notices relating to this case be sent directly to:

> Ernest Demel
> RCS Box 426.
> New York, NY 10101

I have no reason to believe that any of the parties in this proceeding, including Mr. Demel, will be prejudiced by the granting of this relief.

I grateful for the Court's consideration of this request.

Very truly yours,

/s/

Gary Steven Stone

*Towards justice and dignity for all $ Por justicia y dignidad para todos*

A copy of this letter is being sent to:

Clearly Gottlieb Steen & Hamilton
James Bromley
Lisa Schweitzer
One Liberty Plaza
New York, New York 10006

Morris Nichols, Arsht & Tunnell LLP
Derek C. Abbot ((3376)
Eric D. Shwartz (3134)
1201 North Market Streeet, P.O Box 1347
Wilmington Delaware 19801

Ernest Demel
RCS Box 426.
New York, New York 10101