# Exhibit A

<u>Proposed Joint Trial Protocol</u>[1]

## I.      <u>Pre-Trial Submissions</u>

### A.      **Fact Witness Affidavits**

1.      By March 31, 2014,[2] the Core Parties shall disclose the names of the fact witnesses for Allocation (as defined in the Allocation Protocol) and Claims[3] from whom they will submit affidavits, which witnesses will be made available for cross-examination at trial.[4]

2.      Opening fact witness affidavits for Allocation and Claims shall be exchanged by the Core Parties by April 11, 2014,[5] and submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

3.      At the time of exchange of fact witness affidavits, the offering Core Party shall disclose the location at which each witness shall testify at trial.

4.      On April 25, 2014, the Core Parties shall exchange the reply witness affidavits and submit such affidavits to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.  Except with leave of the Courts for good cause shown, or as necessary to rebut specific allegations concerning a proposed new affiant which could not have been reasonably anticipated, reply affidavits shall be

---

[1]      This proposal assumes a single trial of Allocation and Claims and is subject to change in the event of the Courts' adoption of the anticipated requests of the EMEA Claimants and the UK Pension Claimants for an increased trial length or bifurcation of the trial.  Additionally, the Litigation Timetable provides that the Bondholder Allocation Group is distinct from the allocation groups of the US, Canadian and EMEA Debtors and therefore has the right to make its own presentations to the Courts.  However, in an effort to streamline the trial proceedings, the Core Parties agree that for purposes of this Proposed Joint Trial Protocol, the Bondholder Allocation Group shall be considered part of the US Allocation Group except (i) the Bondholder Allocation Group shall have the right to submit its own pre-trial and post-trial briefs and is entitled to its own allocation of time for opening statements and closing arguments (each not to exceed 15 minutes) and (ii) in the event of disagreement between them, either the Bondholder Allocation Group or the US Allocation Group shall have the right to petition the Courts, upon a showing of good cause, for additional time to allocate at trial for witness examinations specifically for the Bondholder Allocation Group.  All other Core Parties' rights are reserved with respect to any such application by the Bondholder Allocation Group and/or the US Allocation Group.

[2]      All deadlines are to be considered to be no later than 8:30 p.m. Eastern time unless otherwise indicated.

[3]      "Claims" means the Canadian EMEA Claims and Canadian UKPC Claims as both terms are defined in the Allocation Protocol.

[4]      The Core Parties will meet and confer to discuss mutually acceptable limitations on the affidavits and those matters set out in Section II.C.4 herein with a view to submitting a joint proposal or competing proposals no later than February 28, 2014 and, subject to the availability of the Courts, with any unresolved issues to be determined by the Courts at a subsequent pre-trial conference to be convened no later than March 14, 2014.

[5]      "Claims Party" or "Claims Parties" refers to the Canadian Claims Defendant Group, the EMEA Claimants, and the UK Pension Claimants.

submitted only from witnesses who submit initial affidavits.

**B.      Deposition Designations**

1.      Deposition testimony may be submitted by any Core Party of any witness, except that deposition testimony (other than counter-designations for completeness) shall not be submitted by any Core Party of any witness from whom its Allocation Group is submitting an affidavit except that the EMEA Claimants and the UK Pension Claimants, as the case may be, may submit deposition testimony of a witness whose affidavit is submitted by the other of the EMEA Claimants and UK Pension Claimants solely with respect to their Claims.[6]

2.      Fact witness designations

a)      Initial designations shall be due by April 11, 2014.

b)      Objections to initial designations and counter-designations necessary for completeness, as well as initial supplemental designations specifically responsive to affidavit testimony, shall be due by April 25, 2014.

c)      Objections to counter-designations and initial supplemental designations, as well as final supplemental designations specifically responsive to reply affidavit testimony and counter-designations to initial supplemental designations, shall be due by April 29, 2014.

d)      Objections to final supplemental designations and counter-designations to initial supplemental designations, as well as counter-designations to final supplemental designations, shall be due by May 1, 2014.[7]

3.      Expert witness designations

a)      Designations for expert testimony shall be due April 17, 2014.

b)      Objections and counter-designations for expert testimony shall be due by April 25, 2014.

c)      Objections to counter-designations shall be due by April 30, 2014.

4.      Objections to deposition designations shall be made succinctly in writing and provided to the Courts with the final deposition designations for determination.   The time for determination of such objections will be subject to the discretion of the Courts.

---

[6]      In the event representative depositions take place, a Core Party may not offer the representative deposition testimony of any representative of itself or its Allocation Group (other than counter-designations for completeness).

[7]      Any objections to such further counter-designations shall be due by May 5, 2014 and shall result in the supplementation of the pre-trial orders.

5.      Any Core Party may seek leave of the Courts, for good cause shown, to permit the introduction at trial of deposition designations not included with the joint pre-trial orders/books.  This provision shall not limit any Core Party's rights under Section II.C.8.

6.      Final deposition designations and objections shall be submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

**C.      Exhibit lists**

1.      The Core Parties shall exchange exhibit lists prior to their submission to the Courts, in accordance with the following schedule:[8]

   a)      Initial exhibit designations shall be exchanged by April 11, 2014.

   b)      Objections to exhibit designations and supplemental designations shall be exchanged by April 25, 2014.

      (1)      Supplemental designations are intended to encompass a limited number of exhibits that were overlooked with initial designations or relate to another Allocation Group's or Claims Party's initial designations.

      (2)      The Courts shall have the right to exclude supplemental exhibit designations if they believe that admission would be prejudicial to any Core Party or order any other relief.

   c)      Objections to supplemental designations shall be due by April 30, 2014.

   d)      Final exhibit lists and objections shall be submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

2.      Objections to exhibits shall be made succinctly in writing and provided to the Courts with the final exhibit lists for determinations.

   a)      Barring objection, all exhibits shall be deemed admitted without having to be specifically moved into evidence at trial.

   b)      No objection shall be made to the authenticity of any exhibit or to the lack of foundational testimony necessary for its admission into evidence unless a party has a specific good faith basis to believe that the proffering party could not have laid a proper foundation with an

---

[8]      The Core Parties contemplate that prior to the pre-trial conference scheduled for January 29, 2014, they will reach final agreement on a stipulation regarding representative depositions, which will incorporate certain additional phases in the exhibit list schedule set forth herein.  In the event they do not reach such agreement, the Core Parties reserve their rights with respect to any necessary modification of the dates set forth in Sections I.C.1.b and I.I.

appropriate witness.  The Core Parties reserve all rights to raise objections to the admissibility of documents to the extent they, in good faith, believe that necessary foundational testimony could not have been obtained, or as otherwise appropriate under the applicable laws or rules of evidence for reasons other than authenticity and foundation.[9]  So long as notice is provided in accordance with the timeline for objections to exhibits generally, such objections may be raised by either the objecting Core Party or the proffering Core Party with the Courts as part of the Pre-Trial Motions in the manner set out in Section I.I.

3.       Any Core Party may seek leave of the Courts to permit the introduction at trial of any document that has not been designated for inclusion by any Core Party in the trial exhibit book upon a showing of good cause.  In determining whether good cause has been shown, the Courts may consider, among other factors, the timeliness of the disclosure of the proposed exhibit and the underlying reasons therefore.

4.       Following the exchange of exhibit lists, the Core Parties shall confer to compile for the Courts a single set of joint exhibits whose admissibility is uncontested, along with separate sets (one for each Allocation Group and one for each Claims Party) of objected-to exhibits.

5.       Where applicable, exhibits shall be given the same number as used at depositions.  Where an exhibit was marked more than one time at a deposition, one number shall be used and the Core Parties shall seek to modify other transcripts submitted to the Courts to reflect the exhibit number to be used at trial. In addition to providing the exhibit number marked at depositions, the exhibits shall also include the as-produced Document ID numbers.

**D.       Expert reports (which shall be those previously served in accordance with the Litigation Timetable)**

1.       The Core Parties shall meet and confer in order to reach agreement by no later than April 4, 2014 on the number of experts (both foreign law and non-foreign law experts) each Group will be permitted to offer to testify live at trial, with the reports of its other experts being submitted without live examination.

a)       By April 11, 2014, each Allocation Group and each Claims Party shall identify those expert witnesses (non-foreign law experts and, to the extent agreement is not reached pursuant to Section 1.D.1.b below, foreign law experts) who will be testifying live and the location where they will be testifying.

b)       The Core Parties will work in good faith after the exchange of expert reports to try and reach an agreement that would allow for the

---

[9]      For the avoidance of doubt, except with respect to hearsay or other foundational objections dealt with pursuant to the foregoing, the Core Parties' rights to object to the admission of exhibits (or their weight) on other evidentiary grounds, such as improper opinion evidence, are preserved.

testimony of foreign law experts to be submitted without live testimony (through expert reports and deposition testimony). In the event that the Core Parties are unable to agree, a Core Party may designate foreign law experts to testify live at trial subject to the terms herein.

2.      The expert reports that a Core Party intends to rely upon may not be altered or supplemented after the expert has been deposed unless the expert is made available for re-deposition.

3.      In the event that a Core Party seeks to withdraw an expert, the Core Party shall provide notice in writing of its intention. If a Core Party withdraws an expert in writing prior to that expert's deposition, no other Core Party may refer to the report(s) of such an expert (including in any rebuttal report to the extent practicable) and there shall be no inference related to such expert having been withdrawn. If a Core Party withdraws an expert in writing after that expert's deposition, the other Core Parties may refer to the report(s) and/or designate portions of the deposition of such expert.

## E.      Statement of Agreed Facts

1.      The Core Parties shall endeavor in good faith to prepare a statement of agreed facts.

## F.      Confidentiality and Protective Order

1.      The Core Parties shall endeavor in good faith to negotiate a proposed confidentiality and protective order no later than March 31, 2014 and shall file such order (or their respective proposed versions if the Core Parties do not reach agreement) on or before April 11, 2014.

## G.      Pre-trial briefs

1.      On May 2, 2014, the Core Parties shall serve and file pre-trial briefs. Core Parties who do not file a brief shall have until May 6, 2014 to file a joinder to the pre-trial brief of another Core Party.

2.      Pre-trial briefs on Claims and Allocation shall be separate.

## H.      Proposed pre-trial orders

1.      The Core Parties shall jointly prepare a proposed pre-trial order on Allocation  and a separate proposed pre-trial order on the EMEA Claims and the UK Pension Claims and submit such pre-trial orders to the Courts on May 2, 2014 by noon Eastern time.  These orders shall contain:

a)      Any agreed upon written statement of facts;

b)      A list of all deposition designations (both fact witness designations and expert witness depositions), including the relevant excerpts, as well as all objections to any such testimony;

      c)      A list of all exhibits designations, as well as all objections to any such exhibit designations;

      d)      A single set of joint exhibits whose admissibility is uncontested, along with separate sets (one for Allocation and one for Claims) of objected-to exhibits;

      e)      Copies of all fact witness affidavits of designated trial witnesses; and

      f)      Copies of all expert reports.

## I.      Motions regarding matters that for good reason ought to be decided prior to trial ("Pre-Trial Motions")

1.      Pre-Trial Motions shall be served and filed on April 17, 2014.

2.      Responses to Pre-Trial Motions shall be served and filed on April 25, 2014.

3.      Replies to Pre-Trial Motions shall be served and filed on May 2, 2014.

4.      Any Core Party may request, or oppose any request, to appear before the Courts to provide oral submissions.

## II.      Trial

### A.      General

1.      Total trial time is estimated at 120 hours (20 days of six hours each).  The trial time shall be utilized for (i) opening statements and (ii) presentation of witnesses in the manner permitted hereunder.

2.      The US Allocation Group shall be entitled to [●] hours, the Canadian Allocation Group shall be entitled to [●] hours, the Canadian Claims Defendant Group shall be entitled to [●] hours, the EMEA Allocation Group shall be entitled to [●] hours, the EMEA Claimants shall be entitled to [●] hours, and UK Pension Claimants shall be entitled to [●] hours.  The Core Parties defer until a future date (as set forth in Section II.C.4) a decision with respect to the foregoing allocation of time but agree that the time used by each Core Party shall be measured in a "chess clock" approach.[10]

---

[10]      The UK Pension Claimants intend to raise the issue as to whether the length of trial prescribed by the Courts applies only to the Allocation trial rather than Allocation and Claims resolution.  In this respect, the UK Pension Claimants will submit that the length of the trial is inadequate to address Allocation and Claims in a just and fair manner.  All other Core Parties reserve their rights to support or object to the position of the UK Pension Claimants.

      Other Core Parties may have submissions about entitlement to separate time allocations and all rights are reserved in this regard.

      a)     Each Allocation Group (and the Canadian Claims Defendant Group) shall have no restriction on how they wish to use or allocate their time allocations among members.

      b)     Any Core Party that is not part of an Allocation Group shall identify the Allocation Group with whom that Core Party is most closely aligned by April 14, 2014.

## B.    Opening Statements

1.    Opening statements on Allocation shall be limited to [●] hours for each of the Allocation Groups, to be allocated among intra-Group members in whatever manner they see fit.[11]

      a)     Opening statements shall be in the following order:

           (1)     EMEA Allocation Group

           (2)     US Allocation Group

           (3)     Canadian Allocation Group

      b)     Each Core Party that is not part of an Allocation Group may present an opening statement immediately following the Allocation Group identified by that Core Party pursuant to Section II.A.2.b.  Such opening statement shall be no longer than 15 minutes.

2.    Opening statements on EMEA Claims and UK Pension Claims shall be limited to [●] hours for each of the Canadian Claims Defendant Group, the EMEA Claimants, and the UK Pension Claimants, to be allocated by intra-Group members in whatever manner they see fit.

      a)     Opening statements shall be in the following order:

           (1)     EMEA Claimants

           (2)     UK Pension Claimants

           (3)     Canadian Claims Defendant Group

## C.    Fact Witnesses[12]

1.    No fact witness may testify who has not submitted an affidavit.

2.    Fact witnesses shall be called in the following order:

---

[11]    No single Core Party will use the entire time allotted to any Allocation Group or Claims Group for making opening or closing submissions without agreement of other members of its Allocation Group or Claims Group.

[12]    The rights of the Core Parties to examine and cross-examine are subject to the usual rules governing cross examination with respect to parties who are not adverse in interest, and are to be exercised in light of the expectation that direct evidence is to be disclosed in pre-filed affidavits.

a)      Canadian Allocation Group and Canadian Claims Defendant Group

b)      US Allocation Group

c)      EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

3.      The examination of witnesses shall be in the following order (with the proffering Group determining the order of its witnesses):

a)      For Canadian Allocation Group and Canadian Claims Defendant Group witnesses:

(1)      Canadian Allocation Group and Canadian Claims Defendant Group

(2)      US Allocation Group  (on Allocation only)

(3)      EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

b)      For US Allocation Group witnesses:

(1)      US Allocation Group

(2)      EMEA Allocation Group

(3)      Canadian Allocation Group

c)      For EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants witnesses:

(1)      EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

(2)      Canadian Allocation Group and Canadian Claims Defendant Group

(3)      US Allocation Group  (on Allocation only)

4.      Re-direct and re-cross examinations shall be limited in scope to the preceding examinations since that Allocation Group or Claims Party last examined the witness and shall be conducted in the same order as the initial examinations.

5.      The Core Parties shall meet and confer in order to submit proposals to the Courts with respect to the trial schedule including (i) the time permitted for opening statements, and (ii) the division of trial time among the various Allocation Groups and/or Claims Parties.  An agreed-upon proposal, or separate proposals in the event the Core Parties fail to reach agreement, shall be submitted

to the Courts no later than February 28, 2014 so as to enable the Courts to adjudicate any disagreement at a pre-trial conference to be held no later than March 14, 2014, subject to the availability of the Courts.[13]

6.      Affidavits from fact witnesses shall serve as direct testimony; however, Core Parties shall be permitted to conduct an initial direct examination of up to 30 minutes consistent with the witness's affidavit or as appropriate to respond to the testimony of another witness, with such time being charged against the proffering Allocation Group's or Claims Party's time allocation.

7.      Core Parties that do not belong to any Allocation Group may cross-examine witnesses in conjunction with the Allocation Group identified by that Core Party pursuant to Section II.A.2.b, provided that such Core Parties shall coordinate their efforts with the members of the Allocation Group identified by that Core Party pursuant to Section II.A.2.b to the extent practicable.

8.      Fact witnesses shall only be called to testify once.  Two business days following the completion of all fact witness testimony, the Core Parties shall have the opportunity to submit additional deposition designations solely as necessary to rebut testimony of a fact witness of another Allocation Group or Claims Party (with the Core Party that proffered such fact witness(es) having the right to submit two business days later objections as well as counter-designations necessary for completeness).  A Core Party may not designate additional deposition testimony of a testifying witness without having first put the deposition testimony to the witness at trial.

   a)      If challenged, the Core Party seeking to offer such supplemental deposition designations shall be required to identify the specific testimony to which each designation relates

## D.    Expert Witnesses[14]

1.      The number of all expert witnesses (both non-foreign law and foreign law, unless an agreement has been reach that no foreign law experts need to appear at trial) to testify at trial will be chosen by each Allocation Group and Claims Party and disclosed to the other Core Parties no later than April 4, 2014, with the remaining experts testifying through written reports and deposition testimony.[15] Each other Allocation Groups or Claims Parties shall have the right to request the live appearance and cross examination of additional expert witnesses from the other Allocation Groups or Claims Parties.

---

[13]      The proposal(s) can be either for a specific allocation of time or principles by which time would be allocated.  The allocation of any trial time to Core Parties who are not part of an Allocation Group shall be taken pro rata from all Allocation Groups.

[14]      The rights of the Core Parties to examine and cross-examine are subject to the usual rules governing cross examination with respect to parties who are not adverse in interest, and are to be exercised in light of the expectation that direct evidence is to be disclosed in pre-filed expert reports.

[15]      Subject to ability to call additional rebuttal expert witnesses.

a)      Deposition testimony may be submitted by the other Allocation Groups or Claims Parties without restriction with respect to any experts. Deposition testimony may not be offered (except proper counter-designations) by any Allocation Group or Claims Party with respect to its own expert witness it is calling as a live witness.

2.      Expert trial witnesses for Allocation and Claims shall be disclosed on April 11, 2014.

3.      Expert witnesses whose evidence is solely in respect of Allocation or a combination of Allocation and Claims ("Allocation Experts") shall be called in the following order after the examination of all fact witnesses:

a)      EMEA Allocation Group

b)      Canadian Allocation Group

c)      US Allocation Group

4.      The examination of Allocation Experts shall be in the following order (with the proffering Allocation Group determining the order of its witnesses):

a)      For EMEA Allocation Group witnesses

(1)      EMEA Allocation Group

(2)      Canadian Allocation Group

(3)      US Allocation Group

b)      For Canadian Allocation Group witnesses:

(1)      Canadian Allocation Group

(2)      US Allocation Group

(3)      EMEA Allocation Group

c)      For US Allocation Group witnesses

(1)      US Allocation Group

(2)      EMEA Allocation Group

(3)      Canadian Allocation Group

5.      Expert witnesses whose evidence is only in respect of Claims ("Claims Experts") shall be called in the following order after the examination of all

Allocation expert witnesses:[16]

    a)        EMEA Claimants

    b)        UK Pension Claimants

    c)        Canadian Claims Defendant Group

6.       The examination of Claims Experts shall be in the following order (with the proffering Claims Party determining the order of its witnesses):

    a)        For EMEA Claimants witnesses:

        (1)      EMEA Claimants

        (2)      Canadian Claims Defendant Group

    b)        For UK Pension Claimants witnesses:

        (1)      UK Pension Claimants

        (2)      Canadian Claims Defendant Group

    c)        For Canadian Claims Defendant Group witnesses:

        (1)      Canadian Claims Defendant Group

        (2)      EMEA Claimants

        (3)      UK Pension Claimants

7.       Re-direct and re-cross examinations shall be limited in scope to the preceding examinations since that Allocation Group or Claims Party last examined the witness and shall be conducted in the same order as the initial examinations.

8.       Core Parties that do not belong to any Allocation Group may cross-examine expert witnesses in conjunction with the Allocation Group identified by that Core Party pursuant to Section II.A.2.b, provided that such Core Parties shall coordinate their efforts with the members of the Allocation Group identified by that Core Party pursuant to Section II.A.2.b to the extent practicable.

9.       Expert reports and rebuttal reports shall serve as direct testimony; however, Core Parties shall be permitted to conduct initial direct examinations (without time restriction) consistent with the expert's reports, with such time being charged against the proffering Allocation Group's or Claims Party's time allocation.

---

[16]     For greater certainty, the UK Pension Claimants shall not be entitled to conduct an examination of EMEA Claimants' Claims Experts, and the EMEA Claimants shall not be entitled to conduct an examination of the UK Pension Claimants' Claims Experts.

E.      The evidentiary record shall be closed simultaneously for all Core Parties at the conclusion of trial.

III.    **Post-Trial**

A.      **Written Submissions**

1.      Opening post-hearing memoranda on Allocation and opening post-hearing memoranda on Claims will be filed separately.

a)      Each opening post-hearing memoranda shall be submitted four weeks after the last day of trial.  Core Parties shall have two additional business days to file a joinder to the post-hearing memoranda of another Core Party.

2.      Responsive post-hearing memoranda on Allocation and responsive post-hearing memoranda on Claims will be filed separately.

a)      Responsive post-hearing memoranda shall be submitted three weeks after the opening post-hearing memoranda.  Core Parties shall have two additional business days to file a joinder to the responsive post-hearing memoranda of another Core Party.

B.      **Closing Arguments**

1.      On [dates] [2 consecutive days], closing arguments on Allocation shall be heard.  On [date(s)], closing arguments on the EMEA Claims and UK Pension Claims shall be heard.

2.      Closing arguments on Allocation shall be limited to [●] hours for each of the Canadian Allocation Group, EMEA Allocation Group, and US Allocation Group, to be allocated by intra-Group members in whatever manner they see fit. This time shall not be charged against the trial time allocations set forth above.

a)      Closing arguments on Allocation shall be in the following order:

(1)      Canadian Allocation Group

(2)      EMEA Allocation Group

(3)      US Allocation Group

b)      Each Core Party that is not part of an Allocation Group may present a closing argument immediately following the Allocation Group identified by that Core Party pursuant to Section II.A.2.b.  Such closing argument shall be no longer than 15 minutes.  A Core Party is not obligated to present a closing argument.

c)      Allocation Groups may reserve up to 1/3 of their time for closing arguments for a single round of rebuttal arguments in the same order as

initial closing arguments.

3.      The available time for closing arguments on EMEA Claims will be limited to [●] hours for the EMEA Claimants and [●] hours for the Canadian Claims Defendant Group, to be allocated among Group members in whatever manner they see fit.

a)      Closing arguments on the EMEA Claims Dispute shall be in the following order:

(1)      EMEA Claimants

(2)      Canadian Claims Defendant Group

b)      The EMEA Claimants may reserve up to 1/3 of their time of closing argument for a rebuttal argument.

4.      The available time for closing arguments on the UK Pension Claims Dispute will be limited to [●] hours for the UK Pension Claimants and [●] hours for the Canadian Claims Defendant Group, to be allocated among Group members in whatever manner they see fit.

a)      Closing arguments on the UK Pension Claims Dispute shall be in the following order:

(1)      UK Pension Claimants

(2)      Canadian Claims Defendant Group

b)      The UK Pension Claimants may reserve up to 1/3 of their time for closing argument for a rebuttal argument.

## IV.    Trial Location

A.      Each Allocation Group and Claims Party shall be entitled to advance and prove its case in the location it chooses (*i.e.*, opening statement, oral evidence and closing argument).

B.      Witnesses shall testify in either Toronto or Wilmington at their election, provided notice of location is furnished at the time of the exchange of affidavits.

C.      Trial location in Toronto shall be _____.

D.      Trial location in Wilmington shall be _____.

E.      Miscellaneous

1.      When proceedings are occurring in Toronto, the US Court shall participate by live video link.

2.      When proceedings are occurring in Wilmington, the Canadian Court shall

13

participate by live video link.

3.      All arguments shall be presented live in the locations listed above. Witness examination may be presented in either court location and presented through video link to the other location.

4.      Each Allocation Group shall have at least one lawyer present in the courtroom participating by video link in order to ensure the smooth presentation of documentary evidence to the video linked judge.

5.      Counsel admitted in either the US Court or Canadian Court (including by *pro hac vice*) may appear and participate fully in the other courtroom as if admitted in that Court.

## V.     Miscellaneous

A.      The Core Parties hereby acknowledge the previous agreements and orders that bear on the Joint Trial, including but not limited to (i) the Cross-border Insolvency Protocol; (ii) the Cross-border Claims Protocol; (iii) the Discovery Plan; and (iv) the Deposition Protocol and amendments thereto.  The Core Parties stipulate and agree that to the extent these agreements are inconsistent with this Joint Trial Protocol, the Joint Trial Protocol shall govern.

B.      The Courts shall have the right to modify this Joint Trial Protocol at their discretion for good cause so long as they conclude that such modification is not unduly prejudicial to any Core Party.

C.      In the event any of the Core Parties elects to adopt an allocation position not contained in its pleadings, any other Core Party shall have the right to petition the Courts for a re-allocation of trial time and/or a re-ordering of the trial presentation.  Nothing in this provision shall relieve any Core Party of any obligation to seek leave to amend its pleadings to the extent it is otherwise required to do so by law, or to impose any obligation to seek leave to amend its pleadings if it is not otherwise required to do so by law.

D.      Core Parties shall not be obligated to prove Canadian law to the US Court or US law to the Canadian Court as an issue of fact, but shall be entitled to argue the law of either jurisdiction in their pre-trial or post-hearing memoranda.

E.      Conduct of counsel at trial

1.      For efficiency, an examining attorney may approach a witness at any time without seeking permission from the Court.

2.      Counsel may conduct examinations or cross-examinations of a witness remotely or in person.  Counsel may be present in both Courts.

3.      Counsel will conduct examination from a lectern.

4.      Any objection raised by one party shall be deemed reserved by all Core

14

Parties other than those in the Allocation Group against whom the objection is asserted.

5.      Counsel who will be conducting the examination (which shall be no more than one per Core Party for each witness[17]) and counsel who will be objecting during the examination will announce themselves at the beginning of the examination.  Two persons from each Allocation Group (from different Core Parties) shall be designated to make objections for each witness.

F.      Exhibits

1.      A master set of all documents and proposed exhibits listed on all Core Parties' evidence lists will be prepared for each court.  Four copies of these will be prepared in binders.  One copy will be provided for each judge and one copy will be provided for the witness in each courtroom.

2.      A master set of exhibits will also be prepared electronically for the Courts and distributed on CD to the Courts.  The Core Parties shall coordinate on the preparation of these master exhibits lists and delivery to the Courts.

3.      Demonstrative Exhibits

a)      Any Core Party shall be permitted to use either hard copy demonstratives, computer demonstratives, or a whiteboard if desired.

b)      A Core Party shall provide a copy of any demonstratives that it intends to use during a trial day no later than 7:00 p.m. the prior day (which can be a Sunday for demonstratives to be used on a Monday).

---

[17]      A Core Party may have a second examiner exclusively for Claims-related issues.