**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- X
                                                        :
*In re*                                                 :        Chapter 11
                                                        :
Nortel Networks Inc., *et al.*,[1]                      :        Case No. 09-10138 (KG)
                                                        :
                                    Debtors.            :        Jointly Administered
                                                        :
                                                        :        **RE:  D.I. 12806**
                                                        :
-------------------------------------------------------- X

**DEBTORS' OBJECTION TO THE MOTION OF
JOHN J. ROSSI FOR ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO 11 U.S.C. § 503(B)(4)**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors

in possession (collectively, the "Debtors"), hereby respectfully submit this objection (the

"Objection") to the *Motion of John J. Rossi for Allowance and Payment of Administrative*

*Expense Claims Pursuant to 11 U.S.C. § 503(b)(4)* [D.I. 12806] (the "Motion") filed by John J.

Rossi ("Mr. Rossi").

Mr. Rossi seeks reimbursement of $990 in expenses he has incurred in connection

with these cases.  While the amount of reimbursement sought by Mr. Rossi is discrete, the

Debtors are compelled to oppose the Motion given that the expenses for which Mr. Rossi seeks

payments are for the most part barred by the releases given by each of the Debtors' long-term

---

[1]     The U.S. Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax
identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel
Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073),
Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846),
Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.)
Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel
Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be
found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

disabled employees (the "LTD Employees"), including Mr. Rossi, in the LTD Settlement

Agreement (as defined below) and otherwise were incurred for his own self-interest.  Further,

allowing Mr. Rossi's claims set forth in his Motion would disrupt the finality of the LTD

Settlement Agreement and could lead to other similar motions, at greater expense to the Debtors.

In further support of this Objection, the Debtors respectfully represent as follows:

**Relevant Background**

1.      On June 3, 2011, 59 of the Debtors' nearly 200 LTD Employees, including Mr.

Rossi (the "Initial LTD Participants"), filed the *Motion for Entry of an Order Pursuant to Section

1102(a)(2) of the Bankruptcy Code Appointing an Official Committee of Long-Term Disability

Plan Participants* [D.I. 5595] (the "LTD Committee Motion"), which sought appointment of an

official committee of long-term disabled individuals.[2]  Thereafter, the Court issued an order

directing the U.S. Trustee to appoint the LTD Committee for the purpose of serving as the

authorized representative of the LTD Employees in connection with negotiations regarding the

modification or termination of the Nortel Networks Inc.'s Long Term Disability Plan and certain

other plans and programs (such plans and programs collectively referred to herein as the "LTD

Plans") [D.I. 5790].  On August 2, 2011, the U.S. Trustee appointed the members of the LTD

Committee [D.I. 6073], as amended on August 4, 2011 [D.I. 6080].  Mr. Rossi was not one of the

members of the LTD Committee at any point during its existence.

2.      On August 23, 2011, the LTD Committee filed the *Application for an Order

Authorizing the Employment and Retention of Elliott Greenleaf as Counsel to the Official*

---

[2]      The Debtors did not oppose the LTD Committee Motion other than to seek to clarify the scope of the committee of long-term disability participants' (the "LTD Committee") appointment so that the Debtors could engage in discussions with the Debtors' LTD Employees in the hope of reaching a consensual agreement regarding the modification or termination of their benefits.

*Committee of Long Term Disability Participants Nunc Pro Tunc June 22, 2011* [D.I. 6201].[3]

The Court entered the *Order Authorizing the Employment and Retention of Elliott Greenleaf as Counsel to the Official Committee of Long Term Disability Participants Nunc Pro Tunc August 2, 2011* (the "Retention Order") reflecting the Debtors' and the UCC's comments on September 20, 2011 [D.I. 6415].

3.      On May 1, 2013, this Court entered an order approving a settlement agreement (the "LTD Settlement Agreement") between the Debtors and the LTD Committee that resolved various litigation regarding the termination of benefits under the LTD Plans [D.I. 10411].  In relevant part, the LTD Settlement Agreement provides for the termination of the employment of the LTD Employees who participated in the LTD Plans as of June 30, 2013 in exchange for NNI allowing a general non-priority, unsecured claim in the amount of $25,960,000.  The LTD Settlement Agreement also contained broad releases given by all of the LTD Employees, which releases similarly were approved by the *Order (A) Approving the Settlement Agreement on a Final Basis, (B) Certifying a Class for Settlement Purposes Only on a Final Basis, (C) Authorizing the Debtors to Terminate the LTD Plans, and (D) Granting Related Relief* [D.I. 10406] (the "LTD Settlement Order").  Specifically section 10(a) of the LTD Settlement Agreement states:

---

[3]      The Debtors and the Unsecured Creditors Committee (the "UCC") provided comments to the proposed retention agreement, which were reflected in a Certification of Counsel filed with the Court [D.I. 6349] and included providing that Elliott Greenleaf's retention and compensation would commence on August 2, 2011, the date the LTD Committee was officially appointed, rather than on June 22, 2011, as originally sought by Elliott Greenleaf, and further clarifying that the retention order "does not grant any relief with respect to any fees or costs that may have been incurred by EG prior to August 2, 2011."

> Upon the Effective Date, for the good and valuable consideration provided by the Debtors in connection with this Settlement Agreement, and except as provided for herein by the terms of the Settlement Agreement, the LTD Committee; the LTD Committee Member Parties; and each LTD Employee . . . knowingly and voluntarily release and forever discharge the Debtors . . . from any and all LTD Claims and Untimely Run Off Claims, whether known or unknown, suspected or unsuspected, accrued or unaccrued, matured or unmatured, past or present, fixed or contingent, liquidated or unliquidated, that the LTD Parties now have, had, may have had, or hereafter may have against any of the Debtor Releasees.[4]

"LTD Claims" are defined broadly in section 9 of the LTD Settlement Agreement and of particular relevance here include: "Any past, current or future benefit or any other obligation, claim, or potential obligation or claim arising under or relating to the LTD Plans, including the LTD Benefits"; "Any and all claims, defenses, causes of action, damages, costs and expenses that arise from, concern, or are related to, directly or indirectly, the allegations set forth in the Class Complaint or the LTD Objections"; and "Claims for punitive damages, equitable relief, breach of fiduciary duty, detrimental reliance, attorneys' fees or other expenses related to the foregoing."

4.    At various times beginning in March 2013, approximately 50 LTD Employees, including Mr. Rossi (together, the "LTD Severance Movants"), filed separate motions seeking a determination that they were owed severance payments based on their expected termination of employment on June 30, 2013, each of them bearing substantially the same title: "*Motion Compelling Debtors to Admit **My Claim** for Severance Allowance Plan and Issue Payment*" (emphasis added) (the "LTD Severance Motions").  On July 16, 2013, the Court issued a Memorandum Opinion [D.I. 11117] and related Order [D.I. 11118] granting the LTD Severance

---

[4]    See also LTD Settlement Order ¶ 20.

Motions.[5]  As a result of this decision, the Debtors provided LTD Severance Claims to all

eligible LTD Employees, including Mr. Rossi.

5.        In his Motion, Mr. Rossi now seeks reimbursement from the Debtors for $990.

Of this amount, $500 apparently related to a retainer that Mr. Rossi paid to Elliott Greenleaf

related to his retention of Elliott Greenleaf prior to the appointment of Elliott Greenleaf as

counsel to the official LTD Committee, where we understand 58 other LTD Employees similarly

retained Elliott Greenleaf.  See Motion ¶ 6.  The remaining $440 was allegedly incurred as a

result of CourtCall costs for hearings related to termination of the LTD Plans and the LTD

Severance Motions, which hearings were each attended telephonically by several other LTD

Employees.  A review of the invoices supplied by Mr. Rossi shows that $310 of the CourtCall

costs related to termination of the LTD Plans, and $130 of these costs were related to the LTD

Severance Motions.

## Basis for Objection

6.        The Debtors bring this Objection because of the precedent that granting Mr.

Rossi's request could set, with respect to both the LTD Settlement Agreement and all of the

many other settlement agreements that the Debtors have entered into, and the Court has

approved, in these cases.  Almost all of the amounts for which Mr. Rossi seeks reimbursement

are barred, as these claims were released by the express terms of the LTD Settlement Agreement.

The LTD Settlement Agreement released the Debtors from all "LTD Claims" that could be

---

[5]        The Order granting the LTD Severance Motions was further modified in response to the *Debtors' Motion Pursuant to 11 U.S.C. § 105(a), Fed. R. Bankr. P. 9023 and 9024 and Fed. R. Civ. P. 59 and 60 to Clarify and Amend the Order Granting Nortel LTD Employees' Motions to Compel Debtors to Admit Claims for Severance as Valid and Issue Payment* [D.I. 11235] (the "Motion to Amend").  It is worth noting that Mr. Rossi previously raised his request for reimbursement, during the hearing on the Debtors' Motion to Amend the Order granting the LTD Severance Motions on September 17, 2013.  At that hearing, Mr. Rossi asked the Court how he could get reimbursed for the amounts he now raises in the Motion, to which the Court responded that Mr. Rossi should "consult with the Elliott Greenleaf firm as to what, if any, efforts they believe are appropriate to make on [his] behalf."  Transcript of September 10, 2013 Hearing Before the Honorable Judge Gross, at p.17.

asserted by LTD Employees.  LTD Claims are broadly defined to cover "Any past, current or future benefit or any other obligation, claim, or potential obligation or claim arising under or relating to the LTD Plans" and "Claims for punitive damages, equitable relief, breach of fiduciary duty, detrimental reliance, *attorneys' fees or other expenses related to the foregoing*." <u>See</u> LTD Settlement Agreement, section 9 (emphasis added).  As part of the final settlement of such claims it was important for the Debtors to fully resolve any such claims.

7.      As a general rule, compromises are favored in bankruptcy cases in order to minimize litigation, and therefore, debtors are entitled to the finality that a settlement agreement affords them.  <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 393 (3d Cir. 1996); <u>see also</u> <u>In re World Health Alternatives, Inc.</u>, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Mr. Rossi's Motion threatens that finality.  Mr. Rossi seeks reimbursement of $500 for attorneys' fees he paid related to enforcing his rights under the LTD Plans and $310 dollars in expenses to appear telephonically at hearings related to enforcing his rights under the LTD Plans.  While the amounts sought are not large in isolation, these are exactly the types of claims that the Debtors and LTD Committee bargained to release when they entered into the LTD Settlement Agreement, and the clear and unambiguous language of the LTD Settlement Agreement and LTD Settlement Order now bars these claims.  The Debtors are concerned that if the Court were to grant the Motion, there could be a flood of other LTD Employees filing motions seeking similar relief (including the 58 other Initial LTD Participants) or seeking to relitigate claims the Debtors bargained to have released when agreeing to enter into the LTD Settlement Agreement.  This would be contrary to the Debtors' bargained-for expectation of finally resolving all LTD Claims – indeed, the entire reason that the Debtors

entered into the LTD Settlement Agreement was wholly for the benefit of the releases contained therein and the finality provided by those releases.

8.      Moreover, allowing Mr. Rossi to be reimbursed despite the clear release of his claims under the LTD Settlement Agreement would undo the substantial efforts of the Debtors and their constituents in resolving a nearly countless number of other claims and disputes in these cases, by inviting other litigants and claimants to re-raise issues or raise new claims that were covered by releases in their settlement agreements.  For example, counterparties to other settlements (such as the deferred compensation settlement or the retiree settlement) also could try to seek reimbursement of these personal expenses, which were similarly released under their settlements.

9.      It is important to note that Mr. Rossi's interests were represented by counsel at all times during the negotiation and consummation of the LTD Settlement Agreement.  Elliott Greenleaf, on behalf of the LTD Committee and representing the interests of all LTD Employees, worked with counsel for the Debtors and the UCC in drafting and approving the LTD Settlement Agreement and the releases provided thereunder.  Elliott Greenleaf was plainly aware of the retainers the Initial LTD Participants paid the firm, as well as the fact that certain LTD Employees attended hearings in person or by CourtCall.  Nevertheless, these claims were not carved out of the settlement and, to the contrary, were expressly released by the LTD Employees as part of the settlement consideration.

10.     Neither is Mr. Rossi entitled to reimbursement for expenses related to the termination of the LTD Plans and the LTD Severance Motions because he does not meet the standard for "substantial contribution."  "Inherent in the term 'substantial' is the concept that the benefit received by the estate must be more than an incidental one arising from activities the

applicant has pursued in protecting his or her own interests. Creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have transcended self-protection." See Lebron v. Mechem Fin. Inc., 27 F.3d 937, 944 (3d Cir. 1994)). Here, Mr. Rossi's actions in these cases primarily were driven by advancing his own interests and the benefit of his actions to the rest of the LTD Employees was incidental at best.

11.    In Syntax-Brillian, the court found substantial contribution by a creditor who led an investigation that uncovered fraud and misconduct on the part of the Debtor, which led to the appointment of an examiner who uncovered additional misconduct, and whose actions directly led to a potential recovery by all creditors. In re Syntax Brillian, Corp., No. 08-11407(BLS), 2009 WL 1606474, at * 1 (Bankr. D. Del, June 5, 2009). Indeed, the court found that the creditor, "through his labors, . . . represented not only his own narrow interests, but the broader interests of the Debtors, creditors, and shareholders." Id. at *3. Unlike the creditor in Syntax-Brillian, Mr. Rossi did not seek to advance an agenda that benefited the creditor base at large, but rather focused his efforts exclusively on protecting and advancing his own interests and the interests of other LTD Employees. While Mr. Rossi was an active participant in these cases, his contributions are not more noteworthy than those of the many other LTD Employees who actively participated in these cases.

12.    Moreover, at least with respect to the LTD Severance Motions, the fact that Mr. Rossi incurred his expenses while acting in his own interests, as opposed to the interests of the estates, is evident by the very title of Mr. Rossi's pleading: "*Motion Compelling Debtors to Admit **My Claim** for Severance Allowance Plan and Issue Payment*" (emphasis added). Given the clear self-interest motivating Mr. Rossi's LTD Severance Motion, expenses incurred by Mr. Rossi in connection with that motion do not qualify for substantial contribution status.

13.     In conclusion, the $810 claim for reimbursement sought by Mr. Rossi related to the termination of the LTD Plans has been released by the LTD Settlement Agreement entered into by the LTD Committee and approved by this Court.  Granting the Motion would set the dangerous precedent that claims released by settlement agreements can still be asserted against the Debtors, and the Motion does not support a finding of substantial contribution.  Similarly, the $130 claim for costs associated with the LTD Severance Motion was not raised in connection with that motion, and were incurred solely in furtherance of Mr. Rossi's pursuit of his own interests.

*[Remainder of Page Intentionally Left Blank]*

## Conclusion

For the reasons set forth above, the Debtors respectfully request that (i) the relief sought by the Motion be denied with prejudice, (ii) that the Court enter the proposed order attached hereto as Exhibit A and (iii) that the Court grant such other and further relief as it deems just and proper.

Dated:  January 28, 2014
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*