**<u>EXHIBIT A</u>**

 montreal · ottawa · toronto · hamilton · waterloo region · calgary · vancouver · beijing · moscow · london

February 5, 2014

**VIA HAND DELIVERED**

**Jennifer Stam**
Direct 416-862-5697
jennifer.stam@gowlings.com
File No. T991328

The Honourable Justice Geoffrey B. Morawetz
Ontario Superior Court of Justice
Judge's Administration
330 University Avenue, 7th Floor
Toronto, Ontario  M5G 1R7

Your Honour:

**Re:  Nortel Networks Corporation, et. al. (Court File No. 09-CL-7950): Pre-Trial Conference
Held on January 29, 2014**

In connection with the pre-trial conference held on January 29, 2014 with the United States
Bankruptcy Court for the District of Delaware (the "US Court") and as requested by this Court,
enclosed is the pre-trial conference memorandum that has been agreed upon by the Core Parties.

We are also making arrangements for the memo to be filed with the US Court.

Sincerely,

**GOWLING LAFLEUR HENDERSON LLP**

Jennifer Stam

JS:kd

Encl.

TOR_LAW\ 8350281\1

File No. 09-CL-7950

**SUPERIOR COURT OF JUSTICE - ONTARIO**
**(COMMERCIAL LIST)**

RE:　　　　IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

　　　　　AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

BEFORE:　　MORAWETZ, RSJ.

COUNSEL:　A. Mark and J. Kimmel, for the Ernst & Young Inc., the Monitor

　　　　　J. Stam, for Nortel Networks Corporation et. al.

　　　　　S. Block and S. Bomhof, for the US Debtors

　　　　　M. Gottlieb and T. Wynne, for the EMEA Debtors

　　　　　M. Barrack, J. Finnigan, R. Lewis, for the UK Pension Claimants

　　　　　M. Zigler and B. Walancik, for the Canadian Creditors Committee

　　　　　R. Swan and G. Finlayson, for the ad hoc bondholders group

　　　　　L. Barnes, for the former directors and officers of Nortel Networks Corporation and Nortel Networks Limited

　　　　　S. Kukulowicz, for the unsecured creditors committee

　　　　　J. Salmas, for Wilmington Trust, National Association

**HEARD:**     **January 29, 2014**


## PRE-TRIAL MANAGEMENT MEMORANDUM

At this jointly convened pre-trial conference which was conducted via teleconference with a parallel pre-trial conference being held in the United States Bankruptcy Court with His Honour, Judge Gross pursuant to the cross-border protocol which has previously been approved in both Courts. The Ontario and Delaware Courts approved the Joint Trial Protocol submitted by the parties, subject to the following directions and any corresponding adjustments to be incorporated into the final form to be attached to the approval orders in both jurisdictions (which may also include amendments arising out of the stipulations referred to in footnote #8):

1. In respect of the issue raised by the CCC, Justice Morawetz directed that the point will be addressed later and, following the presentations by the parties at pages 12-28 of the transcript, provided guidance as set out in the 1st paragraph of page 80 of the transcript, all of which is excerpted in Schedule A hereto.

2. In respect of the submissions and positions concerning the EMEA Debtors' and UK Pension Claimants' requests, the matters will proceed as a single trial commencing on May 12.  The trial will generally address allocation issues (and issues that involves both allocation and claims) first, followed by issues related to Canadian Claims.

3. The 20 days allotted for trial are not set in stone. Additional trial time will be allocated with some time set aside to deal exclusively with the Canadian Claims of the EMEA Debtors and the UKPC.  A request for up to 10 to 15 total additional trial days will be considered. The parties are to confer and advise the Courts of the specific number of trial days sought.

4. The next joint pre-trial conference will be held on March 12, 2014 at 1 pm.

SCHEDULE A

Attached

1  obviously significant, the concerns that are expressed by the

2  EMEA Debtors and the UKP, but there's complete buy-in by the

3  parties that the framework that's established here in the

4  Trial Protocol is the appropriate framework and the Objectors

5  themselves don't disagree with that, which I'm quite pleased

6  to say.

7           I'll defer second to the EMEA Debtors and UKP

8  Claimants to talk about their issues since obviously it's

9  really more of a disagreement between them --

10          THE COURT:  Yes.

11          MR. ROSENTHAL:  -- and the Canadian Debtors now that

12  the U.S. Debtors have settled the claims here in the U.S.

13  Court.  But I just want to mention briefly, because I don't

14  think the Courts really need to dwell on the first Objection

15  which is that of the CCC, specifically to footnote one --

16          THE COURT:  Yes.

17          MR. ROSENTHAL:  -- and other than the first

18  sentence.  The first sentence deals with UKP and EMEA and,

19  after that, it deals with the Bondholders.  And I think, or at

20  least over the weekend when we were thinking about it at the

21  U.S. Debtors, we had conversations with the Bondholders and

22  we decided that, in many respects, it's a premature dispute

23  that we can resolve much more easily for the Courts right now

24  and agree to simply delete that entire passage of footnote

25  one, and we proposed that to the CCC yesterday and they can

1   speak for themselves.  But in our view, Your Honors, because

2   the parties have deferred until the late February meet-and-

3   confer and the March Conference that we're proposing for the

4   Courts, how the time between the parties would be allocated,

5   really, there's no need at this point to say how much time

6   specifically the CCC should get; how much time -- in some

7   respects, it may play out as being really an intra-Canadian

8   issue because there will be an allocation of time for the

9   Canadian group, you'll have that being divided up among its

10  members, and there's a footnote in here saying that one group

11  can't take all of the time allocated to it so, to make sure

12  that it's fair, I think the CCC, to my understanding, is that

13  they had asked that that footnote be put in.  It was put in.

14  You know, unless, of course, the members of the group all want

15  one party to take all of its time on a particular issue.  So

16  our suggestion is we could delete the rest of that footnote

17  one; we could defer the issue of whether the CCC feels that

18  they are not getting a fair amount of time out of the Canadian

19  allocation of time until the parties sit down and actually

20  talk about what the allocation of time should be.  And if

21  there's a disagreement or if they're unhappy about it, then

22  nobody's saying that any of their rights to go to the Courts

23  and say, you know, that there's some disagreement at that time,

24  nobody's saying that their rights are waived in that regard.

25  So that's our proposal.

1          THE COURT:  Okay.

2          MR. ROSENTHAL:  It takes that issue off the table

3   for today and I would just say that the only issue, therefore,

4   that the Court needs to really address would be the EMEA and

5   UKP concerns that they have expressed in their filings.

6          Obviously, I don't want to speak for the CCC and

7   I'm happy to turn over the microphone, whether it's here or

8   there to allow them to speak for themselves and I'll address

9   it at any point in time that the Courts would like, whether

10  the Courts have any comments at all on the Protocol.

11         THE COURT:  All right.  Thank you, Mr. Rosenthal.

12  It might -- yes, please.

13         MR. LEBLANC:  Good morning, Your Honor and --

14         THE COURT:  Good morning.

15         MR. LEBLANC:  -- and Mr. Justice Morawetz.  Andrew

16  Leblanc, at Milbank Tweed Hadley & McCloy, on behalf of the

17  Bondholder Group, and I just wanted to make one point.  I

18  completely agree with Mr. Rosenthal that this is an issue that

19  we can defer until later but there were comments made in the

20  submission of the CCC that I think are necessary for us to at

21  least address in some form or fashion.  I think it's important

22  for the Court to recognize that what's reflected in the Trial

23  Protocol is actually a concession by the Bondholder Group to

24  not get a separate allocation of time for the Bondholder Group

25  separately.  And what I mean by that, not because of where we

1  are situated today, but because the Trial Protocol that the

2  Courts entered in May of last year, May 17th, identified the

3  Bondholder Group as a separate allocation group.  So there was

4  the EMEA allocation group, the Canadian allocation group, the

5  U.S. allocation group, and recognizing the fact that the

6  Bondholders have claims against both Canada and the U.S. and,

7  therefore, are truly unique among the constituencies, that we

8  were a separate allocation group, a core party, who was in

9  their own allocation group.  We haven't, throughout the

10 process, and I think there hasn't been any suggestion that we

11 have, but throughout the process, we have not abused our

12 status as being a separate allocation group.  Quite to the

13 contrary, we've acted in accordance with the understanding

14 that was in place at the time.  We've acted in concert with

15 the parties with whom we share an interest.  So, at times, with

16 the Canadian Debtors, we've discussed with them their document

17 requests, and by doing so, we're able to make comments to

18 theirs instead of serving our own.  So we haven't abused the

19 fact that we're a separate allocation group, but we think by

20 right, by the fact that under the Trial Protocol that was

21 entered by this Court, we were a separate allocation group.

22 We could have demanded our own slot of time just like each of

23 the other allocation groups did because that is something that

24 this Court -- that these Courts ordered more than almost a year

25 ago now.  We didn't do that.  We made these concessions

1   to be treated the same way as other core parties who are not

2   part of an allocation group to identify the allocation group,

3   to limit it to the three Estate allocation groups, and then to

4   identify which of those allocation groups we are aligned with

5   and be part of that and to defer until another date the

6   allocation of time so that we can ensure ourselves just like

7   the Unsecured Creditors Committee here in the United States,

8   the UKP in -- with respect to the EMEA Estates.  We could

9   assure ourselves a meaningful role at trial given what we would

10  view as our unique and substantial economic interests in the

11  matter, but at the same time not take a disparate advantage of

12  the fact that we were identified as our own allocation group.

13  So the compromises that are reflected in the Proposed Protocol

14  are compromises literally that we made from the position that

15  the Courts ordered almost a year ago now and that -- I think

16  that's important to know.

17        Now, with the discussion that Mr. Rosenthal just

18  mentioned where we've agreed now to take out footnote one, in

19  light of the rest of the language and the fact that these are

20  issues that will be resolved in the coming weeks, we think it

21  really should resolve the entirety of the issue.  But our

22  understanding is that the omission of the offending language

23  of footnote one wasn't an acceptable concession on our part

24  and so we'll leave it to the CCC to state their position.  But

25  I just wanted to make those points that we have been

1   recognized from the time that the IFSA was entered in this

2   case where we were given the right to consent to an agreement

3   on allocation of sales proceeds.  We've been recognized as a

4   group that has a very distinct economic interest in these

5   matters that isn't completely aligned economically with the

6   interests of any of the other Estates, and it's for those

7   reasons that these Courts have recognized that in the May

8   Protocol of last year.

9           THE COURT:  Yes.

10          MR. LEBLANC:  And as we said, we're not even asking

11  for any advantage as a result of that at this point in time.

12  Instead, we're trying to be cooperative with every party and

13  make this trial as efficient as possible in the limited period

14  of time that the Court's allowed for it.

15          So we would agree with Mr. Rosenthal that we think

16  this is an issue that we can deal with in the coming weeks.

17  If it becomes a problem, we can address it at that time.

18          THE COURT:  All right.

19          MR. LEBLANC:  Thank you, Your Honors.

20          THE COURT:  Thank you, Mr. Leblanc.  Mr. Adler,

21  good morning.  Good to see you again.

22          MR. ADLER:  Good morning.  Good to see you, Your

23  Honor, and Justice Morawetz as well.  It's Derek Adler, for

24  the Joint Administrators and the EMEA Debtors.

25          THE COURT:  Yes.

1          MR. ADLER:  As Mr. Rosenthal said, we support the

2     Trial Protocol.  We think it's a terrific outline for how

3     things should go.  It lays out a plan for dealing with both

4     allocation and claims in a very efficient way.  And we've

5     just made one request that doesn't affect the substance of

6     what's in the Trial Protocol and that concerns the treatment

7     of evidence and arguments that pertain specifically to

8     claims, the remaining claims that the EMEA Debtors have

9     asserted against the Canadian Estate and then there's a --

10         JUSTICE MORAWETZ:  Mr. Adler, I hesitate to

11    interrupt, but Judge Gross, does it make more sense to finish

12    off the issues relating to the CCC that have now been

13    introduced and in the Protocol what -- that have been

14    introduced by Mr. Rosenthal and by Mr. Leblanc?

15         THE COURT:  That's -- why don't we then?  Mr.

16    Adler, if you don't mind, we'll just --

17         MR. ADLER:  Thank you, Your Honor.  That's fine.

18         THE COURT:  All right.  We'll just interrupt your

19    presentation.

20         MR. ZIEGLER:  Your Honor?

21         MR. MARK:  So, Judge Gross, good morning.  It's

22    Alan Mark for the Canadian Monitor and Debtors in Toronto,

23    and just before I hand it over to Counsel for the CCC, just a

24    couple of notes about the Protocol.

25         Firstly, as alluded to by Mr. Rosenthal, the

1    parties expect this week to finalize a discovery stipulation

2    regarding the representative depositions and that will result

3    in some new dates and some new process with respect to the

4    pre-trial process.  So it's our expectation that the final

5    form of the Joint Trial Protocol that will be remitted to the

6    Court for approval will be slightly different, but we don't

7    expect those issues to be controversial, but rather, just to

8    reflect a further stipulation that the parties are going to

9    enter into.

10            Secondly, I just want to note, I don't want to

11    repeat anything Mr. Rosenthal says, but as Justice Gross

12    noted, the Protocol does provide, by and large, for the cases

13    in chief to be pre-filed, in writing, with the Court.  That

14    means that we have, in the Protocol, been somewhat

15    presumptuous in setting dates for when the parties' Briefs,

16    when the exhibit lists, when the Pre-Trial Affidavits and

17    expert reports will be provided to the Court.  And another

18    consequence of that front-end loaded process is that the

19    Protocol does provide the opportunity for pre-trial

20    Objections and possibly Motions to resolve some issues before

21    the trial begins.  So I just wanted to indicate that if the

22    Courts had any questions about that proposed schedule, we're

23    happy to address them, but I just wanted to make sure the

24    Courts were aware.

25            THE COURT:  Thank you, Mr. Mark.

1          MR. ZIEGLER:  Your Honor?  It's Mark -- and Judge

2     Gross, it's Mark Ziegler in Toronto speaking for the CCC, and

3     we have Counsel in Delaware as well, but I will respond to

4     the issues that were raised by Mr. Rosenthal and by the

5     Noteholders' Counsel, Mr. Leblanc.  I think we have to step

6     back to where we were last May, when my clients also sought a

7     separate discovery group.  That request at the time was

8     denied, without prejudice, to our seeking relief at a later

9     date, should we believe it is warranted, and that's in an

10    email that Judge Gross and Justice Morawetz sent to us on May

11    15th.  I can circulate copies if you like but I think everyone

12    is familiar with that.

13         What's happened since is pretty clear.  We have

14    three Estates and behind each of the Estates, three different

15    interest groups.  They break down essentially to the

16    Noteholder groups and Pensioner groups.  And the issue here

17    is not the removal of a footnote.  It's what's in the rest of

18    the Protocol as the default position once that footnote is

19    removed.  Because essentially, although there are three major

20    interests that could be addressed through the three main

21    Estates, there is reserve in this Protocol without footnote

22    one, and particularly, I am talking about the ability to make

23    oral submissions to the Court at the opening and at the

24    closing, and you can turn off the references that they're

25    essentially Section 1(B) on opening statements on page seven

1  and Section 3, all (B) on page 12 where it's everybody who's

2  not part of an allocation group has at least 15 minutes to

3  make opening submissions and closing submissions and this

4  isn't just about 15 minutes at each end.  It's about treating

5  all the Creditor interests equally.  If we all had to work

6  within three allocation groups, including the Noteholders,

7  that would be fine.  But we don't.  There is, in effect, a

8  fourth column that gets to make submissions while we are

9  restricted within an allocation group where we share time,

10  not just with the Canadian Debtors and the Monitor, but also

11  the Directors who have to defend claims.  This allocation

12  Protocol which you are being asked to approve today carves

13  out time as a default position for the Noteholders and the

14  Indenture Trustees of at least 15 minutes at the front end

15  and at least 15 minutes at the back end.  So it's a lovely

16  concession to take out footnote one, but if they don't tell

17  you what the default position is, you can see it's a bit of

18  slate of hands in my position.  All my clients ask is the

19  same 15-minute right and then at the back end so that they

20  don't get jammed within the allocation group.  We will do our

21  best to work within the allocation group, just as I'm sure

22  everybody else who is a party in interest will work within

23  the three allocation groups and the Noteholders have, in

24  effect, joined up with the U.S. group, which is fine.  We

25  have joined up with the Canadian group but there is one issue

1  where we differ.  We take one allocation position that is not

2  in common as an alternative position with the Monitor, that

3  being the pro-rata distribution, and it would be highly

4  prejudicial to my clients to have a Trial Protocol go forward

5  that doesn't carve out explicit time for them, yet does for

6  the parties who are most adverse in interest to them.  At

7  this stage, five years in, there are pensioner interests and

8  there are Noteholder interests.  What happened before the

9  filing; what happened at the IFSA almost doesn't matter in

10  the sense of, ultimately, this is about distributions to

11  Creditors and if that's the case, the three biggest Creditor

12  groups have got to have their time before the Court.  That's

13  all I've got to say for now.

14            JUSTICE MORAWETZ:  Thank you.

15            THE COURT:  Mr. Rosenthal, did you wish to

16  respond?

17            MR. ROSENTHAL:  Your Honor, just about one minute

18  is all I need to respond.  Just -- I just want to underscore

19  why we believe that this issue is premature.  We believe it's

20  premature for several reasons, one of which is that the

21  Canadian Monitor and Debtors support the Protocol as

22  submitted and they said, and it's reflected in the Protocol,

23  they're going to give time to the CCC.  If the CCC, after

24  February 28th when we make the next round of submissions

25  regarding allocations, thinks that they haven't gotten their

1    15 minutes or whatever amount of time that they think that

2    they want, and I agree that this is a broader issue they're

3    talking about and it really is about the trial generally, if

4    they have any complaints about how they're dividing up the

5    time with the Canadian group, that's the time that they could

6    raise it.  They say that -- by the way, it's not just the

7    Monitor and Debtors and the CCC, but you have Ds & Os as

8    well, it's actually not true.  The Canadian allocation group

9    does not include the Ds & Os.  They're only Claims Defendants

10   and the Protocol divides up the opening statements and

11   closing arguments for allocation and claims.  So when it

12   comes to the allocation opening, we contemplate the U.S. is

13   going to get a set amount of time.  We don't know what that

14   is going to be.  We'll give an opening and the UCC will give

15   an opening.  Canada will get a set amount of time and the

16   Monitor and Debtors will give an opening and the CCC will

17   give an opening.  The EMEA group will get a set amount of

18   time and we don't know what that is.  And EMEA Debtors and

19   the UKP will give an opening.  And if parties have multiple

20   theories or different theories from each other, yes, they may

21   need time to present those theories, and the other parties

22   will need a comparable amount of time to respond to the

23   ultimate theories.  But I think this is all going to be

24   something that's worked out over the next month as opposed to

25   saying today how this thing -- the CCC and the Canadian group

1  be.  And if Canada doesn't give the CCC their 15 minutes or

2  whatever, you'll hear it when we have the hearing in mid-

3  March, and therefore, we would suggest that either footnote

4  one stay in or come out.  Either way is fine with us.  But

5  that we ought to proceed and proceed to the next step and see

6  if there's any dispute that the Courts even need to resolve.

7            THE COURT:  Well, I haven't taken time to look,

8  but I assume that there's nothing in the Protocol, and I

9  don't remember seeing anything that would preclude the CCC

10  from making an opening and closing.

11            MR. ROSENTHAL:  Quite to the contrary, Your Honor.

12            THE COURT:  Right.

13            MR. ROSENTHAL:  There's a footnote.  I don't have

14  the footnote number handy.

15            THE COURT:  Right.

16            MR. ROSENTHAL:  But there is a footnote that

17  expressly says that without permission of the other parties

18  in their group, a party cannot take all of the time allocated

19  to it.  So, therefore, the CCC has a guaranty, and the

20  Canadian Debtors I believe have also assured them they'll get

21  time to deliver their opening.  So I think as to how much

22  that time should be, that's exactly what the next months'

23  worth of negotiations is all about.

24            THE COURT:  Okay.

25            MR. ROSENTHAL:  Thank you.

1         THE COURT:  Thank you, Mr. Rosenthal.  Justice

2    Morawetz, was there anyone in your Courtroom who wished to be

3    heard on this point?

4         JUSTICE MORAWETZ:  Anything further on this issue?

5    Mr. Swan.

6         MR. SWAN:  Yes, just briefly in reply on behalf of

7    the Bondholders.  Every single party here has agreed to the

8    Protocol on all of these issues with the exception of the

9    CCC.  They are the only party that's objecting.  The

10   fundamental distinction that's been identified is that in the

11   Litigation Timetable, the Bondholder group is a separate

12   allocation group.  The Bondholder group is, in effect,

13   compromising procedural rights by agreeing to this in the

14   form that it's in and as a recognition of that, footnote one

15   recognizes certain limited procedural rights guaranteeing the

16   right to make a 15-minute opening and 15-minute closing.  The

17   CCC --

18        JUSTICE MORAWETZ:  Well, is it a case that the

19   Bondholders are compromising a right or is it a case that

20   it's just being expanded for the CCC to have a right?  What

21   specific rights are the Bondholders compromised on?

22        MR. SWAN:  They're compromised on the right to

23   otherwise carry out independent examinations with separate

24   time allocated to them because they would be a separate

25   allocation group.  So the Bondholders could have asserted the

1   right as a full allocation group to have the same rights as

2   the Canadian allocation group and the U.S. allocation group.

3   They haven't done that.  They have agreed that with respect

4   to the other elements of the proceedings, that they will

5   shelter, so to speak, under the U.S. allocation group's time

6   allocation.  But with respect to this one issue, footnote one

7   recognizes that they will have an opening and a closing

8   right.  The CCC is in a different position because they are a

9   Creditor whose economic interest are perfectly aligned with

10  the Canadian allocation group in much the same way that the

11  UKPC does not have a separate defined time, separate and

12  apart from the EMEA allocation group.  Obviously, it won't

13  make an opening statement as part of EMEA allocation group,

14  but it doesn't have separate defined time, nor does the UCC,

15  separate and apart from the U.S. allocation group.  So

16  there's no reason why the CCC as a Creditor who is within an

17  allocation group should have a separate specified right that

18  is unique and elevated above any other Creditor who's part of

19  an allocation group.

20          UNKNOWN:  Your Honor, if I may reply to some new

21  arguments that have been raised?

22          JUSTICE MORAWETZ:  Briefly.

23          UNKNOWN:  I thought that footnote one was off the

24  table.  Now it's back on.  If it's back on, all we ask is the

25  same 15 minutes and the same rights to come back to the

1   Courts with the Bondholders.  This is about treating major

2   Creditors equally.  It's not about historical status that was

3   allocated before the allocation positions came out.  We all

4   want to work effectively.  We will work with the Canadian

5   allocation group.  The Noteholders have worked with the

6   American group, that's fine.  That's as it should be.  But if

7   we're going to have a carve out time for one group of

8   Creditors, there should be the same for the others.

9            THE COURT:  I used to think it was only in the

10  United States that lawyers could argue for 30 minutes over 15

11  minutes but it sounds like we share that with Canada.

12                    (Laughter)

13           MR. LEBLANC:  I'll just add how flattered we are

14  to think that we can be so influential in 15 minutes.

15           THE COURT:  Yes.

16           JUSTICE MORAWETZ:  No comment.

17                    (Laughter)

18           THE COURT:  I would suggest that, as part of the

19  spirit of compromise, we at least for the moment delete

20  without prejudice footnote one.

21           MR. LEBLANC:  And, Your Honor, we've already

22  offered that up.

23           THE COURT:  That's right.

24           MR. LEBLANC:  And we're happy to do -- this is

25  Andrew Leblanc, on behalf of the Noteholders.  We've offered

1  it and we're happy to do it.

2  THE COURT:  Thank you, Mr. Leblanc.  Justice

3  Morawetz and I will discuss that, of course, as part of our

4  discussion.  I should have said that.

5  MR. ROSENTHAL:  Just for clarification, Your

6  Honor  --

7  THE COURT:  Except --

8  MR. ROSENTHAL:  -- obviously, the first sentence

9  relates to another issue.

10  THE COURT:  That's right.

11  MR. ROSENTHAL:  And it's the remainder that starts

12  with 'additionally'.

13  THE COURT:  Exactly.

14  MR. ROSENTHAL:  And I would -- footnote 11 is the

15  one that I didn't have the number at my fingertips before.

16  THE COURT:  Thank you.  Shall we now proceed with

17  the EMEA, CCC issue?

18  JUSTICE MORAWETZ:  Yes, back to I think it's Mr.

19  Adler.

20  THE COURT:  Mr. Adler had started, yes, and don't

21  hesitate to sort of re-start if you'd like, Mr. Adler, just

22  to get the flow.

23  MR. ADLER:  Thank you very much, Your Honor and

24  Justice Morawetz.  Again, it's Derek Adler, for the Joint

25  Administrators and the EMEA Debtors, and as I was saying, we

1  degree after this afternoon.

2          On the first point of, I guess Mr. Ziegler's

3  point with the CCC, that point will be addressed later.

4  However, I will assert that, certainly from my standpoint,

5  the Ontario Court would be most reluctant to foreclose that

6  party from having the opportunity to make the statements in

7  the form that Mr. Ziegler outlined.  We will look for the

8  parties to work together to see if some of the differences

9  can be narrowed, but that would be your dining principle.

10          On the second point, which was the one that was

11  the subject of the very lengthy submissions, and I don't

12  mean that in a negative way from Barrack and from Mr. Mark,

13  the -- it is one trial.  It will start with claim -- with

14  the allocation issues and the claim issues.  Realistically,

15  I think both Judge Gross and I are of the view that 20 days

16  is not something that is set in stone.  We will be looking

17  for these parties and you are now working I think in a much

18  more constructive and cooperative manner, to continue with

19  that; emphasize the word continue with that cooperation.

20  There will be additional trial time allocated.  Mr. Barrack,

21  I think you made a very valid point.  It's impossible to

22  state with certainty exactly how long this is going to take.

23  We will be looking for parties to work in the most, you

24  know, efficient and effective manner.  You know, it's not

25  going to surprise me if this is going to take an extra, you