**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| Debtors. | : | Jointly Administered |
| | : | **Hearing date: March 4, 2014 at 10:00 a.m. (ET)**<br>**Responses due: February 21, 2014 at 4:00 p.m. (ET)**<br>**RE: D.I.s 12919, 13014, 13022, 13023** |

**DEBTORS' OMNIBUS REPLY TO RESPONSES TO DEBTORS' THIRTY-FIFTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby respectfully submit this Reply (the "Reply"), to the responses filed by (i) Russell J. Hawkins [D.I. 13014] (the "Hawkins Response"), (ii) William E. Mariotti, Sr.[2] [D.I. 13022] (the "Mariotti Response"), (iii) Freddie L. Gann[3] (the "Gann Response") and (iv) Richard C. Brand (the "Brand Response") to the *Debtors' Thirty-Fifth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R.*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2] On the current date, counsel to the Debtors received a request, also addressed to the Clerk of the United States Bankruptcy Court for the District of Delaware, indicating "formal withdrawal" of Mr. Mariotti's sole proof of claim and requesting the "removal of the claim from the Court's March 4, 2014 hearing/Docket." Nevertheless, the Debtors include Mr. Mariotti's claim in this response out of an abundance of caution.

[3] As of the date of this Reply, the Gann Response has not been docketed by the Court. Accordingly, the Debtors have attached the Gann Response, which they received by letter, to this Reply as Exhibit F. Certain portions of the Gann Response that contain personal data not relevant to this dispute have been redacted by the Debtors as a courtesy to Mr. Gann.

*Bankr. P. 3007 and Del. L.R. 3007-1 (No-Basis Retiree Claims, No-Basis Long-Term Disability Claims, No-Basis Claims, Modify and Allow Claims, Reclassify and Allow Claims, Wrong Debtor Claims, Redundant Claims, Amended or Superseded Claims, No-Basis 503(b)(9) Claims and No-Basis Pension Claims)* [D.I. 12919] (the "Objection"). In support of this Reply, the Debtors rely on the Declaration of Deborah Parker, dated February 27, 2014, attached hereto as Exhibit A (the "Parker Declaration"). In further support of this Reply, the Debtors respectfully represent as follows:

**Reply**

1. The Debtors, through the Objection, seek disallowance of the claims filed by Russell J. Hawkins, William E. Mariotti, Sr., Freddie L. Gann and Richard C. Brand (together, the "Claimants") under the Nortel Networks Severance Allowance Plan (as amended, the "Severance Plan").[4] Each of the Claimants has filed a proof of claim seeking an allowed claim for severance benefits under the Severance Plan: Mr. Hawkins in the amount of $61,355.00 (Claim No. 8490), Mr. Gann in the amount of $62,202.32 (Claim no. 8624), Mr. Mariotti in the amount of $76,000.00 (Claim no. 8556) and Mr. Brand in the amount of $40,120.00 (Claim no. 8185).[5] The Debtors object to the claims of Claimants Hawkins, Gann, and Mariotti, each of whom are former long-term disability beneficiaries (the "Former LTD Claimants") in their entirety. Mr. Brand incorrectly seeks classification of his severance claim as a priority claim, which the Debtors submit is an invalid assertion of priority under Section 507(a)(4) of the Bankruptcy Code.

[4] The Severance Plan is attached to the Parker Declaration as Exhibit 1, the NNI Action by Unanimous Written Consent of the Board of Directors – Amendment of Nortel Networks Severance Allowance Plan is attached to the Parker Declartion as Exhbit 2, the Summary Plan Description for the Severance Plan for 2011 (the "2011 Summary Plan Description") is attached to the Parker Declaration as Exhibit 3, and the Summary Plan Description for the Nortel Networks Severance Allowance Plan is attached to the Parker Declaration as Exhibit 4.

[5] The proofs of claim filed by Mr. Hawkins, Mr. Gann, Mr. Mariotti, and Mr. Brand are attached hereto as Exhibits B, C D and E, respectively.

A. The Former LTD Claimants

2. With respect to the Former LTD Claimants, the Debtors objected to their severance claims in full as the Debtors determined they were not eligible for severance based on the terms of the Severance Plan and the Debtors' books and records. See Obj. at Ex. A. As more fully described in the Severance Plan and subject to the conditions set forth therein, NNI and certain of its subsidiary Debtors that adopted the Severance Plan agreed to pay termination benefits upon certain qualified termination events. See Severance Plan § 2.1; Summary Plan Description § 3. More specifically, the Severance Plan provides three bases under which an employee covered by the Severance Plan may be eligible for severance:

a. Termination of employment as part of a "Reduction in Force,"[6] with certain exceptions not applicable here; Severance Plan § 2.1(a).

b. Any other termination of employment with an employer initiated by an employer, except in certain circumstances not applicable here; Severance Plan § 2.1(b).

c. Any other termination of employment with an employer initiated by an employee following the employer's notification of the Reclassification[7] of the employee's current position, except in certain circumstances not applicable here. Severance Plan § 2.1(c), (d).

3. The Severance Plan further provides that "[n]o severance allowance shall be paid to an Employee whose employment with an Employer is terminated for any reason other than as specified in Section 2.1." See Severance Plan § 2.6.

---

[6] The Severance Plan defines "Reduction In Force" as "the Termination of Employment of an Employee resulting from a reduction in an Employer's work force and/or from the elimination or consolidation of job functions of an Employer due to economic or other business reasons." Severance Plan § 1.3(s).

[7] The Severance Plan defines "Reclassification" as "the reclassification of the Employee's current position to a lower Job Complexity Indicator/Job Family Compensation Structure ("Job Complexity Indicator/Market Reference Range" prior to April 8, 2002) ("JCI/JFCS") as a result of changes to the duties, responsibilities or scope of that position.

4. As explained in further detail below, the Claimants were participants under certain long-term disability plans offered by the Debtors (the "LTD Plans").[8] The Debtors' historical practice has been to deny severance benefits for participants in the LTD Plans who age out of eligibility for benefits under the LTD Plans without returning to work, indicating that the conclusion of the employment relationship is for "failure to return to work," which is treated as a voluntary termination that is not subject to payment under the Severance Plans. With respect to such individuals who are no longer eligible for long-term disability benefits based on their age, the Debtors historically provided each such participant with an application for retiree health and welfare benefits commencing on the first day of the month following the date of expiration of their LTD Plan benefits (subject to their eligibility for such retiree benefits).

5. Mr. Hawkins received LTD Plan benefits from 1992 until December 14, 2011, when his benefits expired under the terms of the LTD Plans because of his age. As of that date, Mr. Hawkins had not returned to work or notified the Debtors of either his intent to do so or that he was able to return to work. Therefore, in December 2011, the Debtors sent Mr. Hawkins a notification of termination due to his failure to return to work upon the expiration of his long-term disability benefits. See "HR Shared Services U.S. - Termination Notification", sent on or

[8] The Debtors historically provided a number of benefits to their employees through various benefit plans and other programs, including (as amended or modified from time to time) the Nortel Networks Inc. Long-Term Disability Plan, the Nortel Networks Inc. Short-Term Disability Plan, the Nortel Networks Inc. Medical Plan, the Nortel Networks Inc. Dental, Vision, and Hearing Care Plan, the Nortel Networks Inc. Life Insurance Plan, the Nortel Networks Inc. AD&D Insurance Plan, the Nortel Networks Inc. Health Care Reimbursement Account Plan, the Nortel Networks Business Travel Accident Insurance Plan, the Nortel Networks Inc. Dependent Day Care Reimbursement Account Plan, the Nortel Networks Inc. Long-Term Investment Plan, and any other formal or informal benefit plans, agreements, or programs (including plans, agreements, arrangements or programs that are funded through the purchase of insurance) or arrangements for disabled employees, their surviving spouses and eligible dependents, including for medical, surgical, or hospital care benefits, income continuation benefits or any other benefits in the event of sickness, accident, disability, or death (collectively, and in each case as such plans have been amended or modified from time to time, the "LTD Plans").

around December 7, 2011, as attached to the Parker Declaration as Exhibit 5.[9] In November 2011, approximately one month prior to the conclusion of his LTD Plan benefits, Mr. Hawkins enrolled in the Debtors' retirement benefit plans with effect from January 1, 2012. See "Application for Nortel Networks, Inc. Post Retirement Health & Welfare Benefits" as attached to the Parker Declaration as Exhibit 6. Thereafter, Mr. Hawkins began receiving retirement medical and life insurance benefits, which, according to the Debtors' books and records, he continued to receive from the Debtors until the termination date of such benefits pursuant to the settlement agreement between the Debtors and the Official Committee of Retired Employees (the "Retiree Settlement"), which settlement offered certain additional benefits to former retirees commencing on the date of termination of the retirement benefit plans on June 30, 2013. See Agreement to Terminate Retiree Benefits, Pay Settlement Amount and Release Related Claims [D.I. 9938-1].

6. Mr. Hawkins does not dispute the above facts, and in fact indicated in his Response that he "retired 12/31/11 at age of 65, still in Long Term Disability." Hawkins Response at 1. Rather, Mr. Hawkins' response cites the Memorandum Opinion issued by the Court on July 16, 2013 [D.I. 11117] (the "Memorandum Opinion") to argue that he should be entitled to receive an allowed claim for severance benefits under the settlement agreement between Debtors and the Official Committee of Long-Term Disability Participants (the "LTD Settlement"). This argument is unavailing because the Memorandum Opinion grants claims for severance benefits only to those employees who were still receiving long-term disability benefits

9 The Hawkins Response includes an "HR Shared Services U.S. - Termination Notification" sent by the Debtors to LTD Employees in June, 2010 (as attached to the Hawkins Response, the "June 2010 Notice"), which indicates that Mr. Hawkins was terminated as part of a workforce reduction. As noted in the Memorandum Opinion, the June 2010 Notice was retracted, and thus had no effect. Memo. Op. at p. 12.

as of June 30, 2013, the date the LTD Plans were terminated. See Order [D.I. 11571-1][10]. Mr. Hawkins stopped receiving long-term disability benefits at the end of 2011, and began receiving retiree benefits at the beginning of 2012, well in advance of June 30, 2013. His long-term disability benefits terminated as a result of their expiration under the terms of the relevant LTD Plan in 2011, not as a result of the negotiated termination of the LTD Plans pursuant to the terms of the LTD Settlement in 2013. Accordingly, Mr. Hawkins is not entitled to severance under the LTD Settlement.

7. Mr. Gann began receiving long-term disability benefits in 2001 and had not returned to active work with the Debtors upon the expiration of his long-term disability benefits on February 26, 2012 due to his age, nor did he notify the Debtors of either his intent to do so or that he was able to return to work. As the end of his eligibility for long-term disability benefits approached, Mr. Gann was notified that when his eligibility ended, his employment with the Debtors would be terminated by reason of his failure to return to work from long-term disability. See "HR Shared Services U.S. – Termination Notification", sent on January 18, 2012, as attached to the Parker Declaration as Exhibit 7. Mr. Gann was also sent notification that he could elect to enroll in the Debtors' retirement benefit plans, with effect from March 1, 2012, the first day of the month following the expiration of his LTD benefits. He elected to enroll in the

[10] Paragraph 3 of the Court's Order dated September 10, 2013 giving effect to the Memorandum Opinion (the "LTD Severance Order") [D.I. 11571] referenced by the Hawkins Response provides that "each of the LTD Employees whose employment with the Debtors was terminated as of June 30, 2013 shall receive an allowed general unsecured claim to represent any and all amounts owed to him or her in accordance with the terms of the Severance Plans..." LTD Severance Order at 2 (emphasis added). The definition of "LTD Employees" as used in that Order is given the meaning ascribed to it in the *Debtors' Motion Pursuant to 11 U.S.C. 105(a), Fed. R. Bankr. P 9023 and 9024 and Fed. R. Civ. P. 59 and 60 to Clarify and Amend the Order Granting Nortel LTD Employees' Motions to Compel Debtors to Admit Claims for Severance as Valid and Issue Payment* [D.I. 11235]. The definition of "LTD Employees" in that motion is given the meaning ascribed to it in the *Debtors' Omnibus Objection* [D.I. 10731], which defines "LTD Employees" as: "Debtors' long-term disabled employees who were participating in Nortel Networks Inc.'s Long Term Disability Plan and certain other plans and programs…as of June 30, 2013." (emphasis added).

Debtors' retirement life insurance plan. See "Application for Nortel Networks, Inc. Post Retirement Health & Welfare Benefits" as attached to the Parker Declaration as Exhibit 8.

8. Mr. Gann did not return to work before the end of the period for which he was eligible to receive long-term disability benefits, and in fact elected to receive retiree life insurance benefits, which he received until the retiree benefits plan was terminated pursuant to the Retiree Settlement on June 30, 2013. Accordingly, he was terminated by the Debtors due to failure to return from long-term disability after having aged out of long-term disability benefits.[11]

9. Like Mr. Gann, Mr. Mariotti never returned to active work with the Debtors, nor did he notify the Debtors of any intent to do so, when his long-term disability benefits expired on April 16, 2013 as a result of his age. As the end of his eligibility for long-term disability benefits approached, the Debtors notified Mr. Mariotti that when his eligibility ended, his employment with the Debtors would be terminated by reason of his failure to return to work from long-term disability. See "HR Shared Services U.S. – Termination Notification", sent on April 9, 2013, as attached to the Parker Declaration as Exhibit 9. At that time, the Debtors also notified Mr. Mariotti that he could elect to participate in the Debtors' retirement life insurance benefits, with effect from May 1, 2013, but Mr. Mariotti did not elect to enroll. See "Application for Nortel Networks, Inc. Post Retirement Health & Welfare Benefits", as attached to the Parker Declaration as Exhibit 10.

10. Mr. Mariotti did not return to work before the end of the period for which he was eligible to receive long-term disability benefits, nor did he notify the Debtors of either his intent to do so or that he was able to return to work. Accordingly, he was terminated by the Debtors due to failure to return from long-term disability after having aged out of long-term disability

[11] Mr. Gann's response does not indicate the basis for his opposition to the Objection, or make any reference to the Memorandum Opinion; however, the Debtors note that, like Mr. Hawkins, Mr. Gann was not receiving long-term disability benefits as of June 30, 2013 and thus cannot participate in the LTD Settlement.

benefits and is not eligible to receive severance benefits because the Severance Plan does not provide for severance benefits in such circumstances. See supra at ¶¶ 2-3.[12]

11. As discussed above, the Severance Plan provided for benefits upon an involuntary termination that are simply not available to employees who left the Debtors under the circumstances described above. See Severance Plan at §§ 1.1, 2.1 (identifying the population of employees entitled to severance benefits under the Severance Plan); Summary Plan Description § 3. Consistent with the terms of the Severance Plan and the Debtors' past practice, those participants in the LTD Plans who age out of LTD benefits and do not return to work are not entitled to severance benefits. Moreover, in each of these cases the Claimants received their LTD benefits until they reached the maximum age, at which time each of them was offered the retiree benefits for which they were eligible. Accordingly, this Court's Memorandum Opinion and LTD Severance Order do not apply to the Former LTD Claimants, since they relate only to those former employees receiving LTD benefits as of June 30, 2013, who asserted entitlement to severance based on their termination in connection with the LTD Settlement. The Former LTD Claimants do not meet such conditions and are not entitled to severance benefits.

B. The Brand Response

12. Mr. Brand was an active employee of the Debtors until January 18th, 2009, when his employment was terminated due to work force reduction. He was notified of his termination on November 19, 2008, and on December 26, 2008 signed a notice of termination. See "HR Shared Services U.S. - Termination Notification," sent on or around November 18, 2008, as attached to the Parker Declaration as Exhibit 11 (the "Brand Notice"). The Brand Notice

---

[12] Mr. Mariotti's response does not indicate the basis for his opposition to the Objection, or make any reference to the Memorandum Opinion; however, the Debtors note that, like Mr. Hawkins and Mr. Gann, Mr. Mariotti was not receiving long-term disability benefits as of June 30, 2013 and thus cannot participate in the LTD Settlement.

indicated that Mr. Brand would receive twelve weeks' severance, based on his length of service with the Debtors. Id. On January 16, 2009, following the Petition Date, Mr. Brand received a gross payroll payment of $6,390.28 (the "Postpetition Payment"), which included payment of wages earned by Mr. Brand prior to the Petition Date.[13] On January 25, 2012, Mr. Brand submitted an amended proof of claim with Claim No. 8185, asserting a claim in the amount of $40,120.00 and indicating that $13,340.00 of that claim was entitled to priority under Section 507(a)(4) of the Bankruptcy Code. The Brand Response now asserts that the priority amount of his claim is $10,950.00.

13. The Debtors submit in the Objection that Mr. Brand is entitled to a claim of $39,520.70, none of which is entitled to priority. Obj. at Ex. B. In keeping with their practice to date in these Chapter 11 Cases, and applicable caselaw, the Debtors assigned priority under Section 507(a)(4) to that portion of Mr. Brand's service with the Debtors that occurred in the 180 days leading up to the Petition Date.[14] In Mr. Brand's case, such an apportionment would have resulted in $2,457.71 entitled to priority. However, the Debtors satisfied (and exceeded) such priority treatment in the amount of the Postpetition Payment through immediate payment of Mr. Brand's prepetition claim for wages, such that no further priority treatment is required in respect of his claims against the Debtors. Accordingly, no amount of Mr. Brand's claim is entitled to priority status under Section 507(a)(4) of the Bankruptcy Code.[15]

---

[13] On January 15, 2009, the Court authorized the Debtors to pay outstanding prepetition wages and salaries, in an amount not to exceed $10,950.00 to any individual employee, pursuant to its *Order Authorizing, But Not Directing, Debtors to Pay Certain Prepetition (I) Wages, Salaries and Other Compensation, (II) Reimbursable Expenses, and (III) Medical Retirement and Similar Benefits* (D.I. 59).

[14] See In re Jeannette Corp., 118 B.R. 327, (Bankr. W.D. Penn. 1990) (holding that priority treatment under 11 U.S.C. § 507(a)(3) for severance pay based on length of service "is subject to apportionment" based on the proportion of the claimant's service to the Debtor occurring within the applicable priority period.).

[15] Mr. Brand's attempt to rely on Sections 200, 201 and 203 of the California Labor Code (the "California Statute") is misplaced. There is no language within those statutes to support Mr. Brand's contention that the California Statute awards priority status to his claim under the Bankruptcy Code. Even if the California Statute

## Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court overrule the Responses, enter the proposed order approving the Objection, as attached to the Objection as Exhibit D, and grant such other relief as the Court deems just and proper.

Dated: February 27, 2014
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

---

provided for the relief that Mr. Brand requests, it would be inapplicable in this case because state law claims under the Severance Plan are preempted by the Employee Retirement Income and Security Act ("ERISA"). See Orozco v. United Air Lines, Inc., 887 F.2d 949, 952 (9th Cir. 1989) (holding, in a case involving a "benefit [that] is very similar to severance pay, which has been included within the category of employee welfare benefits to which ERISA applies," that "ERISA preempts Orozco's state law causes of action for breach of contract, bad faith breach of contract, and failure to pay wages pursuant to Cal. Labor Code § 203"); Griggs v. Griffith Co., 2014 WL 109495 (E.D. Cal. Jan. 10, 2014) (noting that "Labor Code § 203 claims that relate to an ERISA plan are preempted"); Colaco v. ASIC Advantage Simplified Employee Pension Plan, 2013 WL 5402032 (N.D. Cal. Sept. 26, 2013) (holding that "actions brought pursuant to Cal. Labor Code. § 203 are preempted by ERISA" and granting motoin to dismiss cause of action under that provision). Further, the terms of the Severance Plan are clear that the Plan "is intended to qualify as a welfare plan within the scope of ERISA" and that it "shall be construed in accordance with the provisions of ERISA." Severance Plan at §4.3.