**Exhibit A**

Amendment and Supplement to the Joint Trial Protocol

## I.  Definitions

1.  This Amendment and Supplement to the Joint Trial Protocol approved by the Courts on January 29, 2014 (the "Original Protocol" and together with this Amendment and Supplement, the "Joint Trial Protocol") supplements and amends the Original Protocol.  Unless specifically amended herein, the Original Protocol shall continue to govern.

2.  Capitalized terms used herein and not otherwise defined have the meaning given to them in the Original Protocol.

## II.  Affidavits, Pre-Trial Briefs, Fact Witnesses and Experts

### A.  Limits

1.  The Core Parties shall be limited to the following restrictions in respect of affidavit page limits: [1]

a)  For Allocation, each of the Canadian Allocation Group, US Allocation Group and EMEA Allocation Group shall be entitled to up to an aggregate of [■] [2] pages that they may in good faith attribute to Allocation matters in any affidavits of opening fact witnesses who they designated and up to an aggregate of [■] [3] pages that they may in good faith attribute to Allocation matters in any affidavits of reply witnesses who they designated.

b)  For Claims, each of (i) the EMEA Claimants and (ii) the UK Pension Claimants shall be entitled to up to an aggregate of 150 pages that they may in good faith attribute to Claims matters in any affidavits of opening fact witnesses who they designated and up to an aggregate of 75 pages that they may in good faith attribute to Claims matters in any affidavits of  reply witnesses who they designated and the Canadian

---

[1] All references to page limits shall be based on double spaced 12 point times new roman font text and shall, for greater certainty, count all pages of narrative text and pages of any appendices or schedules attached to the affidavit but shall not include any exhibits attached to the affidavit (understanding that the rules relating to the designation of exhibits set out in the Original Protocol still apply).

[2] Proposals are as follows:
- Monitor/Canadian Debtors, EMEA Debtors & UK Pension Claimants: 250 pages per Allocation Group;
- US Debtors: 100 pages per Allocation Group; and
- CCC: 150 pages for each of the Canadian Debtors/ Monitor, CCC, US Allocation Group, the EMEA Debtors and the UK Pension Claimants.

[3] Proposals are as follows:
- Monitor/Canadian Debtors, EMEA Debtors & UK Pension Claimants: 125 pages per Allocation Group;
- US Debtors: 50 pages per Allocation Group; and
- CCC: 75 pages for each of the Canadian Debtors/ Monitor, CCC, US Allocation Group, the EMEA Debtors and the UK Pension Claimants

Claims Defendant Group shall be entitled to up to an aggregate of 300 pages that they may in good faith attribute to Claims matters in any affidavits of opening fact witnesses who they designated and up to an aggregate of 150 pages that they may in good faith attribute to Claims matters in any affidavits of reply witnesses who they designated. [4]

2.      At the time of submission of an affidavit, the Parties in the Canadian and EMEA Allocation Groups who are proffering the affidavits shall provide their good faith designation on the # of pages that are addressing exclusively Claims ("Claims Only Pages"), and the balance of the pages will be attributed to that Group's Allocation limits.[5] Another Core Party may object where it believes the designation is materially incorrect within 2 business days thereafter.  Parties shall attempt to resolve any objections consensually, failing which direction shall be sought from the Court(s). For greater certainty, Claims Only Pages shall not form part of the Allocation Record; however the fact that a page has not been marked as a Claims Only Page does not make it inadmissible on the Claims Record.[6]

3.      The Core Parties agree to limit the pages of their pre-trial briefs as follows:

a)      Allocation: ■[7] pages for each Core Party that filed a pleading that is not a joinder and 15 pages for each Core Party that filed a joinder pleading

b)      Claims: 150 pages for each of EMEA and UK Pension Claimants, 300 pages for the Canadian Claims Defendant Group[8]

## B.      Examination of Fact Witnesses

1.      Examination of Fact Witnesses.

a)      On May 2, 2014, the Core Parties shall provide notice of any fact witness who (i) they would be entitled to cross-examine under the Joint

---

[4] The EMEA Claimants and UK Pension Claimants do not object to the page limits but believe the Canadian Claims Defendant Group should be required to split their total allocated affidavit pages between EMEA Claims and UK Pension Claims

[5] Parties shall structure their affidavits in a way that it is apparent which pages are "Claims Only" either through section headings, notations or by separate cover.

[6] The EMEA Debtors request the following provision to be inserted: "Within 3 business days following the submission of opening fact witness affidavits and 3 business days following the submission of reply fact witness affidavits, a Core Party may adopt any affidavit submitted by another Core Party, in which case such affidavit will be treated as affirmative evidence submitted by both the proffering Core Party and the adopting Core Party.  Any affidavit adopted (but not submitted) by a Core Party shall not count towards that Core Party's page limits."

[7] Proposals are as follows:
- Monitor/Canadian Debtors, EMEA Debtors, CCC, UK Pension Claimants: 150 pages per Core Party that filed a pleading
- US Debtors: 75 pages per Allocation Group

[8] The EMEA Claimants and UK Pension Claimants do not object to the page limits but believe the Canadian Claims Defendant Group should split their briefs between EMEA Claims and UK Pension Claims

Trial Protocol; but whom (ii) they do not wish to cross-examine. Subject to (b) below, to the extent that no examining party wishes to examine a witness (a "Non-Noticed Witness"), such witness does not need to appear for cross-examination at trial unless requested by either or both of the Courts.

b)    On May 5, 2014, any proffering party shall give notice of any Non-Noticed Witness who they intend to have appear at trial.

2.    Any fact witness who appears at trial may be cross-examined by any other Core Party, irrespective of whether they provided a notice under section 1(a) (to the extent such party is otherwise entitled to do so under the Joint Trial Protocol). It is understood that any cross-examination of any witness that is conducted by any Core Party that is not a party to the Claims proceedings is only part of the record in the Allocation case. Notwithstanding the foregoing, the Core Parties with standing on Claims retain the right to object to the ability of a Core Party without standing on Claims to cross-examine witnesses whose evidence relates only to Claims.

3.    Location of Examinations. Fact witnesses shall appear for trial in the location disclosed in accordance with Section I.A.3 of the Original Protocol, except that any fact witness who will be examined on Claims only or whose affidavit is mostly related to Claims matters  (on the good faith determination of the proffering Core Party) shall appear in Toronto.

C.    **Examination of Experts (foreign law and non-foreign law)[9]**

1.    Pursuant to  I.D.1 of the Original Protocol, the Core Parties agree there shall be no numerical limit on the number of experts (foreign law and non-foreign law) appearing at trial and the following paragraphs shall instead apply.

2.    Examination of Experts.

a)    On May 2, 2014, the Core Parties shall provide notice of any expert who (i) they would be entitled to cross-examine under the Joint Trial Protocol; but whom (ii) they do not wish to cross-examine. Subject to (b) below, to the extent that no examining party wishes to examine a witness (a "Non-Noticed Expert"), such expert does not need to appear for cross-examination at trial unless requested by either or both of the Courts.

b)    On May 5, 2014, any proffering party shall give notice of any Non-Noticed Expert who they intend to have appear at trial (it being acknowledged that all oral evidence on direct will be limited to the contents of such expert's report).

---

[9] For the purpose of this Amendment and Supplement, "foreign law experts" means those foreign law experts put forward by the EMEA Debtors and the responding experts put forward by the Canadian Claims Defendant Group.

3.      Any expert who appears at trial may be cross-examined by any other Core Party, irrespective of whether they provided a notice under section 2 (a) (to the extent such party is otherwise entitled to do so under the Joint Trial Protocol). Any cross-examination of an expert witness conducted by a Core Party that is not a party to the Claims proceeding is only part of the record in the Allocation proceeding.   Notwithstanding the foregoing, the Core Parties with standing on Claims retain the right to object to the ability of a Core Party without standing on Claims to cross-examine witnesses whose evidence relates only to Claims.

4.      With respect to expert witnesses on Allocation issues, (a) the EMEA Debtors reserve the right to cross-examine any expert witnesses proffered by the UK Pension Claimants to the extent that the trial testimony of such expert is adverse to the EMEA Debtors' theory on Allocation, and (b) the UK Pension Claimants reserve the right to cross-examine any expert witness proffered by the EMEA Debtors, to the extent that the trial testimony of such expert is adverse to the UK Pension Claimants' theory on Allocation. Any such testimony shall not be admissible on the Claims record.

5.      <u>Foreign Law Experts</u>.  In accordance with the Original Protocol, EMEA Claimants and the Canadian Claims Defendant Group will work in good faith to try and reach an agreement to reduce or eliminate the need for live testimony of foreign law experts at trial.

6.      <u>Location of Cross-Examination</u>:  Each Core Party shall advise the others on April 11, 2014 which Court location their expert witnesses will appear in to give their testimony (whether appearing by virtue of sub-paragraph 2 (a) or (b) hereof) except that any expert witness who will be examined on Claims only related matters shall appear in Toronto.

**D.      Scheduling**

1.      On May 5, 2014, each proffering Core Party shall provide an anticipated order of their witnesses for appearance at trial and file such notice with the Courts.   If changes are required to be made to the order of appearances of witnesses the proffering Core Party shall provide notice to the other Core Parties and to the Courts as soon as reasonably practicable.

**III.    Trial**

**A.      General**

1.      Total trial time will be 210 hours commencing May 12, 2014. The Core Parties agree that, subject to the Courts' direction,

a)      the trial will be conducted on all days that both Courts are open (unless  during a Claims only portion of the trial);

b)      the intention of the Core Parties is that the Allocation portion of the trial will end no later than June 13, 2014; and

c)      the Claims portion of the trial will not start prior to June 23, 2014.

2.      The time allocations will be measured in a chess clock approach and the total trial time are as follows:

a)      Allocation:    42 hours shall be allocated to each of the US Allocation Group/Bondholder Allocation Group, the Canadian Allocation Group and the EMEA Allocation Group.[10]

b)      Claims: each of the EMEA Claimants and UK Pension Claimants shall be entitled to 21 hours and the Canadian Claims Defendant Group shall be entitled to 42 hours.[11]

c)      Where the examination of a fact witness or expert overlaps between Allocation and Claims, any cross-examining party who is participating in both Allocation and Claims shall either indicate during their examination which portions relate exclusively to Claims or within 1 business day after the completion of the examination provide their good faith estimate of the time within their examination attributable exclusively to Claims ("Claims Only Testimony"), the balance of which time shall be attributed to the Allocation time allotment.   Another Core Party may object where it believes the breakdown is materially incorrect within 1 business day thereafter.   Parties shall attempt to resolve any objections consensually, failing which direction shall be sought from the Court(s). Claims Only Testimony shall not form part of the Allocation Record; however the fact that testimony has not been identified as Claims Only Testimony does not make it inadmissible on the Claims Record.

d)      Where more than one Core Party is required to share time, there shall be no restriction on how they decide to use or allocate their time allocations among themselves.

B.      **Opening Statements**

1.      The amount of time for opening statements as contemplated by II.B of the Original Protocol is as follows (to be credited against the general time allocations set forth in III.A (2)):

---

[10] This proposal is supported by the Monitor/ Canadian Debtors, US Debtors and CCC.  The UK Pension Claimants propose 31.5 hours for each of the US Allocation Group/ Bondholder Allocation Group, Canadian Debtors/ Monitor, EMEA Debtors and UK Pension Claimants/CCC.
[11] The EMEA Claimants and UK Pension Claimants do not object to the page limits but believe the Canadian Claims Defendant Group should be required to split their total allocated time between EMEA Claims and UK Pension Claims

a)       Allocation: [■] hours for the US Allocation Group; .25 hours for any other Core Party that is not in an Allocation Group (in accordance with II.B.2 of the Original Protocol); [■] hours for the Canadian Debtors/Monitor;[12] [■] hours for the EMEA Debtors; and [■] hours for the UK Pension Claimants/CCC; and[13]

b)       Claims: [■] hours for each of the EMEA Claimants and the UK Pension Claimants; and [■] hours for the Canadian Claims Defendant Group.[14]

## IV.    Post-Trial

### A.      Closing Arguments and Post-Trial Briefs

1.       Matters relating to closing arguments and post-trial briefs as set out in III.B of the Original Protocol shall be deferred following consultation with the Courts during or upon the conclusion of the evidentiary portion of the trial.

## V.     Miscellaneous

1.       In the event that a Core Party elects not to cross-examine a fact witness or expert at all, or on any particular statements made in their affidavit or report or their evidence in chief (and regardless of whether that witness appears at trial or not), no other Core Party may request, suggest or assert that an  adverse inference should be drawn, and the Courts shall not draw any inferences, from the failure to cross-examine at all or on any particular statements made and no other Core Party may request, suggest or assert that the Court should infer, and the Courts shall not infer, that the Core Party thereby accepts the testimony of that witness or expert.

---

[12] All submissions on behalf of the Canadian Allocation Group in support of the Ownership Allocation Order will be made in this time allotment.

[13] Proposals are as follows:
- Monitor/ Canadian Debtors, US Debtors, UK Pension Claimants and CCC: 2.25 hours for the US Allocation Group/ Bondholder Allocation Group; 1.5 hours for the Canadian Debtors/ Monitor; 1.5 hours for the EMEA Debtors and 1.5 hours for the UK Pension Claimants/ CCC
- EMEA Debtors:  4.5 hours for the US Allocation Group/ Bondholder Allocation Group; 3 hours for the Canadian Debtors/ Monitor; 3 hours for the EMEA Debtors and 3 hours for the UK Pension Claimants/ CCC

[14] Proposals are as follows:
- Monitor/ Canadian Debtors and UK Pension Claimants: 1.5 hours for the EMEA Claimants; 1.5 hours for the UK Pension Claimants; 3.0 hours for the Canadian Claims Defendant Group (Subject to UK Pension Claimants position on splitting of time);
- EMEA Debtors:  3 hours for the EMEA Claimants, 3 hours for the UK Pension Claimants and 3 hours for the Canadian Claims Defendant Group on each of EMEA Claims and UK Pension Claims