# **EXHIBIT A**

{BAY:01752961v1}

Court File No.  09-CL-7950

*ONTARIO*
## SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

SUBMISSIONS OF NORTEL NETWORKS UK PENSION TRUST LIMITED
AND THE BOARD OF THE PENSION PROTECTION FUND (the "UKPC")
ON THE TRIAL PROTOCOL

(For Joint Pre-Trial Conference at 1:00 p.m. on Wednesday, March 12, 2014)

March 10, 2014

**THORNTON GROUT FINNIGAN LLP**
Barristers and Solicitors
100 Wellington Street West
Suite 3200
Toronto, ON   M5K 1K7

**John L. Finnigan (LSUC# 24040L)**
**Michael Barrack (LSUC# 21941W)**
**D.J. Miller (LSUC# 34393P)**
Tel:    416-304-1616
Fax:    416-304-1313

Lawyers for Nortel Networks UK Pension Trust
Limited and the Board of the Pension Protection Fund

Court File No.  09-CL-7950

*ONTARIO*
## SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**SUBMISSIONS OF NORTEL NETWORKS UK PENSION TRUST LIMITED
AND THE BOARD OF THE PENSION PROTECTION FUND (the "UKPC")
ON THE TRIAL PROTOCOL**

**(For Joint Pre-Trial Conference at 1:00 p.m. on Wednesday, March 12, 2014)**

A.    **OVERVIEW OF THE UK PENSION CLAIMANTS' POSITION ON THE
DIVISION OF TRIAL TIME**

1.    The UKPC seek a division of trial time in the Allocation phase equally between the four

case theories on Allocation that will be presented at trial.  The UKPC opposes the three-

way division of trial time proposed by the Canadian Debtors/Monitor and the US Debtors

based on the concept of "Allocation Groups" that was adopted at an earlier stage of the

litigation for the purposes of discovery.

2.    The Courts have indicated that they will consider a trial of up to 35 days. The UKPC

continues to believe that given the complexity and significance of the issues, the Courts

- 2 -

may determine that, in the interests of proportional justice, more trial time may be needed. The Courts will ultimately determine the absolute amount of time required so that the Courts are fully assisted in the adjudication of these matters. The thrust of these submissions speaks to the relative division of time between the various theories of allocation. The numerical estimates provided in these submissions are for illustrative purposes only based on a 35 day trial.

3.  As the parties' filings demonstrate, there will be four primary case theories presented at Allocation trial as to how the $US7.3 billion in the lockbox should be allocated between the Nortel estates as follows:

(a)  **The US Debtors' Licence/Revenue Theory** – this theory focuses on revenue by geography as a measure of the value of licenses relinquished by each RPE. The US Debtors' theory, which would see approximately 72% of the lockbox allocated to the US Debtors, is supported by the Bondholder Group and the Official Committee of Unsecured Creditors of the US Debtors ("**UCC**");

(b)  **Canadian Debtors'/Monitor's Legal Ownership Theory** – this theory focuses on legal title to the intellectual property ("**IP**"), and would see approximately 82% of the lockbox allocated to the Canadian Debtors. This theory is supported by the Canadian Creditors' Committee ("**CCC**") as their primary allocation position;

(c)  **EMEA Debtors' Contribution Theory** – this theory asserts that contribution to the creation of IP is the appropriate measure of the relative value of the interest held by each RPE in the IP. In the alternative, EMEA supports a theory based on the value of the licenses; and

- 3 -

(d)     **UKPC's "Pro Rata" Theory** – this theory would allocate value to each estate by reference to the claims asserted treating the lockbox as the proceeds of sale from jointly-created, comingled assets which should receive a *pro rata* distribution among all of Nortel's unsecured creditors.   Such a theory is supported in the alternative by the CCC.

4.     Given that there will be four different Allocation theories presented at trial, the UKPC considers that each theory should be afforded equal time and judicial consideration. The UKPC therefore seeks one-quarter of the trial time to present its *'pro rata'* case on Allocation, and is prepared to share some of that time with CCC which supports the substance of that allocation position in the alternative.   The UKPC's primary theory should have an equal share with the other primary allocation theories. The UKPC should not be restricted to one-sixth of the trial time on Allocation, which would otherwise result from the UKPC having to split a one-third share of trial time with the EMEA Debtors (because they are in the same Allocation Group) as proposed by the Canadian Debtors/Monitor and US Debtors.

5.     The UKPC is advancing a different allocation theory from that of the EMEA Debtors. The EMEA Debtors do not argue in favour of a *pro rata* allocation position.   The UKPC should not be prejudiced by being required to share time with a party that does not support the same theory of allocation.

6.     The UKPC are the largest creditors in the estate of Nortel Networks UK Limited ("**NNUK**"), the main European operating subsidiary of the Nortel Group.   The UKPC claims represent approximately 93% of the unsecured claims into NNUK, and the UKPC

represent over 80% of all claims in the estate of the EMEA Debtors. The UKPC are one of the three largest creditor constituencies (with the Bondholders and the CCC) of the combined Nortel estates.

7. The Ontario Court recognized in its Endorsement dated May 3, 2013 that the UKPC are major creditors in the global Nortel insolvency and it was necessary to ensure that they have the full opportunity to put forth their case within the confines of the trial schedule.

8. The UKPC seeks recognition of this fundamental principle in the Trial Protocol. The UKPC should not have to split its trial time on Allocation with a party advancing a different theory.

9. The economic interests of the creditors of the Nortel Group are at stake in these hearings. Nortel entered into bankruptcy five years ago and its assets have now been sold. There is no business to restructure and no equity to protect. In these circumstances, the interests of the creditors should be paramount. The UKPC should have an equal opportunity to protect their economic interests by receiving a fair share of the Allocation trial time.

10. The Canadian Debtors/Monitor and the US Debtors should not be heard to complain that the four-way split advocated by the UKPC will not afford them sufficient time to present their respective cases on Allocation. Indeed, the position taken of the Canadian Debtors/Monitor and the US Debtors on the trial time division is a curious departure from positions taken before the Courts at the last pre-trial conference on January 29, 2014. Up to and including that time, the Canadian Debtors/Monitor and the US Debtors were adamant in their support of a twenty-day trial for both Allocation and Claims. The UKPC argued (and remains of the view) that twenty days was not enough time to try

what is one of the most complex and important insolvency trials to come before these Courts.

11.     After hearing submissions, the Courts indicated that they would be open to extending the trial by another ten to fifteen days with part of the trial set aside exclusively to deal with the Claims[1].

12.     Assuming the twenty days of trial time previously advocated by the Canadian Debtors/Monitor and the US Debtors (120 hours based on six-hour days) would be divided equally between Allocation and Claims, this would have resulted in sixty hours of trial time for Allocation and sixty hours for Claims. Dividing the time in the Allocation phase equally by Allocation Groups, as the Canadian Debtors/Monitor and US Debtors assert, would have given them each twenty hours of trial time for the Allocation phase. These parties were content with that amount of time to present their cases at the last hearing.

13.     However, now that more trial time has been obtained through the efforts of the UKPC, the Canadian Debtors/Monitor and US Debtors now insist on 42 hours each for their Allocation cases (one-third of 126 hours based on a twenty-one day Allocation phase). Under the UKPC's four way case theory proposal for splitting the trial time, each of the four case theories would have 31.5 hours.

---

[1] The UKPC continues to be of the view that 35 days is not sufficient time to try the issues before the Court or for the Courts to gain a full appreciation of the issues and evidence they will have to digest and deliberate on.

- 6 -

**B.      DIVISION OF TRIAL TIME – ALLOCATION GROUP VS. CASE THEORY**

    i)      <u>The UKPC has a Full Right of Participation in the Allocation Case</u>

14.    By Order dated April 3, 2013 (the "**April 3 Order**") [**Tab 1**], the Ontario Court approved an Allocation Protocol which identified the parties entitled to participate in the litigation on the allocation of the proceeds of sale of Nortel's assets among the three Nortel Estates. The UKPC were identified as a "Core Party". The Allocation Protocol provides, in paragraph 2 in part, as follows:

> (2) *"Participants.* <u>*Each of the*</u> *Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators, the French Liquidator, the CCC, the Indenture Trustees,* <u>*the UK Pension Claimants*</u>*, and the Directors and Officers and such other parties as the U.S. Court and the Canadian Court may direct (collectively, the* "<u>*Core Parties,*</u>" *and each individually, a* "<u>*Core Party*</u>") *and their authorized representatives* <u>*shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith.*</u>

> (4) *... There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation."*

15.    In the result, the Court recognized that the UKPC:

    (a)    have a right of full participation in the Allocation case; and

    (b)    have the right to advance or oppose any theory of Allocation.

16.    A right of full participation must carry with it the right to adequate time to make one's case commensurate with the time given to competing theories.

- 7 -

ii)    The Allocation Groups Were Created for Discovery Purposes Only

17.    The Allocation Protocol provided the Courts would hear procedural submissions from the

Core Parties with a view to establishing rules for the Allocation discovery and hearing

such that they could proceed in an expeditious manner (Allocation Protocol, para. 4).

18.    These submissions were made at a joint hearing on April 24, 2013.  By Order dated May

15, 2013 (the "**May 15 Order**") [**Tab 2**], this Court approved a litigation timetable and

discovery plan ("**Timetable and Discovery Plan**").

19.    The Timetable and Discovery Plan set out, *inter alia*:

(a)    the time for delivery of pleadings for Allocation and the Claims;

(b)    rules for documentary discovery requests and the conduct of depositions; and

(c)    a timeline to trial.

20.    In their written submissions [**Tab 3**] on the proposed Timeline and Discovery Plan, the

US Debtors proposed the following under the heading "**Reasonable Limits on**

**Discovery**":

> "7.  To illustrate, in *Allocation, the US Debtors propose three primary*
> *discovery groups, each called an Allocation Group:*  *The Canadian*
> *Allocation Group (made up on the Canadian Debtors, Monitor and CCC);*
> *the EMEA Allocation Group (made up of the UK Pension Claimants, the*
> *EMEA Debtor and certain other EMEA entities who were involved in the*
> *asset sales); and the US Allocation Group (made up of the US Debtors*
> *and the Committee).  Under the US Debtors' Proposals, each of the*
> *Allocation Groups must serve one set of document requests and one set of*
> *interrogatories that reflect the collaborative effort of all of the members of*
> *the Allocation Group.  Using discovery groups means that each party*
> *cannot be served with more than three sets of document requests or*
> *interrogatories for Allocation, and discovery in the US Claims and*
> *Canadian Claims would add no more than two sets of document requests*
> *and interrogatories.  Under the Monitor's Proposal, a party could receive*

*up to ten sets of document requests and interrogatories that are slightly different or nuanced. The parties would then need to spend extensive time reconciling, objecting to and meeting and conferring regarding each request separately, ultimately requiring the Courts to play referee between many more combinations of at-odds pairs.*

*8. <u>The US Debtors propose a group approach for depositions as well</u>. For depositions conducted pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, each of the Allocation Groups described above collectively serves the topics on which it would like to depose another party's representative. For fact witness depositions, parties in both Allocation and US/Canadian Claims are combined such that there are three groups based on aligned interests, and each group can designate up to ten fact witnesses. This limits the total number of fact witness depositions to a maximum of thirty. The Monitor's Proposals, on the other hand, allow each party to notice its own depositions under Rule 30(b)(6) and to designate up to ten fact witnesses. Under the Monitor's Proposal, over one-hundred witnesses could be deposed, which is an impossible task given the expedited time frame for these litigations."* [emphasis added]

21.     In this Court's Endorsement dated May 3, 2013 **[Tab 4]**, Mr. Justice Morawetz accepted the US Debtors concept of Allocation Groups for discovery purposes as follows:

*"[18] In my view, it is both necessary and <u>appropriate to provide for discovery groups [allocation groups]</u> which require the parties with aligned interest to serve consolidated discovery requests and notice depositions together. <u>In this respect, the proposal of the US Debtors is accepted.</u>"* [emphasis added]

22.     Accordingly, the Allocation Group structure was presented to the Courts and accepted for the purpose of discovery efficiency. It was neither suggested nor contemplated when the Allocation Groups were established, nor was there any order of the Courts directing, that parties would be limited in the time they had to present their case at trial by the Allocation Group structure.

23.     In November 2013 the parties agreed, and the Courts approved, amendments to the

Timetable and Discovery Plan.  The November 19, 2013 Amendments to the Timetable

and Discovery Plan [**Tab 5**] provides at paragraph 5 as follows:

> "*5.  Trial Logistics*
>
> a.  <u>The Core Parties shall meet and confer</u> *as soon as possible (but in any event no later than the week of December 16, 2013)* <u>with a view to attempting to reach consensus with respect to a proposal for the conduct of the trial including the</u>
>
> > i.  *material to be served/filed on April 10, 2014 and April 17, 2014;*
> >
> > ii.  *the feasibility of providing the Courts with a statement of agreed facts; and*
> >
> > iii.  <u>*proposed length of the trial.*</u>
>
> b.  <u>*On or before January 20, 2014, the US Debtors, Canadian Debtors/Monitor, the EMEA Debtors and the UK Pension Claimants shall submit (either jointly or separately) their proposals for the conduct of the trial to the Courts.*</u>  *Other Core Parties shall be entitled to file their own proposal on or before January 20, 2014 or, alternatively, they may file a joinder to indicate support of one or more of the proposals on or before January 27, 2014.*"

24.     The parties met and conferred on trial logistics through December 2013 and January

2014.  The parties were able to reach agreement on a number of logistical issues but the

division of trial time between the parties was not agreed.

25.     The Trial Protocol negotiated between the parties and approved by the Courts on January

29, 2014 uses the Allocation Group paradigm for ordering the presentation of evidence in

the Allocation case, but it does not speak to the allocation of time trial among the parties,

which issue was left open for further negotiations among the parties.

26.     Accordingly, the division of trial time among the Core Parties for the Allocation phase

remains an open issue and is not bound by the Allocation Group structure.

- 10 -

iii)    The Four Case Theories Should Have Equal Trial Time

27.    As noted above, when the Allocation Groups were established, the pleadings had not been completed.

28.    Pleadings on Allocation were exchanged in May, 2013 and the four primary case theories set out in paragraph 2 above were delineated.  The Allocation cases will be presented at trial on these four primary theories.

29.    The parties seem to be in agreement that if there is a 35 day trial, 21 days (126 hours based on six hours per day) should be dedicated to the Allocation phase and fourteen days (84 hours based on six hours per day) should be dedicated to the Claims phase.

30.    Under the proposal of the Canadian Debtors/Monitor and US Debtors, each of the three Allocation Groups would have one-third of the Allocation trial time (42 hours of trial time in a 21 day Allocation phase) to make their case.  This means that the UKPC would have to divide 42 hours with the EMEA Debtors who have an entirely separate position on allocation.  In the result, the UKPC and the EMEA Debtors would have only 21 hours each or one-half of the time allotted to the US Debtors and the Canadian Debtors/Monitor to make their Allocation cases.

31.    There is no principled reason why the four competing case theories should not have equal time for presentation at trial.

32.    From the perspective of trial workload, it is not apparent that a particular case theory will require more or less than to present than any other.  All four allocation theories will be presented at trial – the only issue is the time allocation among them.

33.   By way of illustration, the parties have exchanged 32 expert reports on Allocation and fourteen[2] on Claims, with further reports to be delivered the week of March 10 on Claims.

34.   From the reports delivered to date, it appears the parties will be relying on expert evidence for the Allocation phase as follows:

   (a)    US Debtors and UCC – ten experts;

   (b)    Monitor and CCC – five experts;

   (c)    EMEA – three experts; and

   (d)    UKPC – five experts.

35.   Unless an expert report is withdrawn before the expert is deposed, the expert is liable to be called to testify at trial by any party.

36.   The Trial Protocol is structured such that most of the trial time will be devoted to the cross-examination of expert and fact witnesses.   The number of fact witnesses to be called at trial will not be known until April 25, 2014.

37.   The US Debtors and UCC have the greatest number of experts on Allocation.   This means that the parties adverse in interest to the US Debtors' allocation theory will have to devote more trial time to cross-examining the US Debtors' experts.

---

[2] This excludes the foreign law expert reports on the EMEA claims.

38.    If all the experts who have delivered reports on the allocation theories testify at trial, the

adverse parties will potentially have the following number of experts to cross-examine at

trial[3]:

(a)    US Debtors and UCC – thirteen adverse experts;

(b)    Monitor and CCC – eighteen adverse experts;

(c)    EMEA – twenty adverse experts; and

(d)    UKPC – eighteen adverse experts.

39.    When the potential trial workload is viewed in this way, the unfairness to UKPC and

EMEA is manifest.  These parties have a greater burden of cross-examination than the

US Debtors and a more or less equal burden with the Canadian Debtors/Monitor, and yet

it is proposed that each of EMEA and the UKPC should have only one-half of the trial

time of each of the Canadian Debtors/Monitor and the US Debtors.  This imbalance in

time would amount to a denial of the natural justice right to a fair trial.

40.    The UKPC propose a four way split of the trial time in the Allocation phase such that

each of the four case theories – bearing in mind that several theories are supported by

more than one Core Party - has one quarter of the Allocation trial time for that case to be

advanced.   Trial time should be allocated based on the positions that will be presented at

trial and not by reference to the Allocation Group structure which is an artifact of the

discovery process.

_____

[3] This is in addition to a yet undetermined number of fact witnesses.

March 10, 2014                    **ALL OF WHICH IS RESPECTFULLY SUBMITTED**

**Thornton Grout Finnigan LLP**
Barristers and Solicitors
100 Wellington Street West
Suite 3200
Toronto, Ontario
M5K 1K7

**John L. Finnigan (LSUC# 24040L)**
Tel:    416-304-1616
Fax:    416-304-1313

Lawyers for Nortel Networks UK Pension Trust Limited and
the Board of the Pension Protection Fund

# TAB 1

File No. 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE MR. JUSTICE | ) | WEDNESDAY, THE 3RD DAY OF |
| | ) | |
| MORAWETZ | ) | APRIL, 2013 |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

O R D E R
(Allocation Protocol)

THIS MOTION made by Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "**Canadian Debtors**) for an Order approving an allocation protocol in substantially the form attached as Schedule "A" to their Notice of Motion dated May 31, 2011 was heard June 7, 2011 and March 7, 2013.

ON READING the Affidavit of Michael Joseph Lang sworn June 1, 2011 and the exhibits thereto, the Compendium of the Canadian Debtors, the Sixty-Seventh Report of Ernst & Young Inc. in its capacity as Court-appointed Monitor (the "**Monitor**") dated June 2, 2011 and the appendices thereto, the Affidavit of Natasha De Cicco sworn April 25, 2011 and the exhibits thereto, the Affidavit of Kevin

- 2 -

Francis Lloyd sworn May 31, 2011 and the exhibits thereto, the Compendium of the Canadian Creditors
Committee (the "CCC"), the Affidavit of Tai-Heng Cheng dated May 31, 2011 and the exhibits thereto,
the Affidavit of Natasha De Cicco sworn June 3, 2011 and the exhibits thereto, the Affidavit of David
M. Lindsey sworn June 3, 2011 and the exhibits thereto, the Affidavit of Natasha DeCicco sworn June 6,
2011 and the exhibits thereto, the Second Affidavit of Tai-Heng Cheng sworn June 6, 2011, the
Affidavit of Debra Bilous sworn June 6, 2011 and the exhibits thereto, the Second Affidavit of David M.
Lindsey sworn June 7, 2011, the Affidavit of Geoffrey Boddy sworn June 1, 2011 and the exhibits
thereto and the Affidavit of Sara-Ann Van Allen sworn March 4, 2013 and the exhibits thereto and on
hearing the submissions of counsel for the Canadian Debtors, the Monitor, the members of the CCC, the
Joint Administrators of Nortel Networks UK Limited and the other EMEA Debtors, the Trustee of the
Nortel Networks UK Pension Trust Limited and the Board of the UK Pension Protection Fund
(collectively, the "UK Pension Parties"), the former directors and officers of Nortel Networks
Corporation and Nortel Networks Limited, Nortel Networks Inc. and certain of its affiliates in US
Chapter 11 bankruptcy proceedings (collectively, the "US Debtors"), Wilmington Trust, National
Association, the Bank of New York Mellon, the Informal Nortel Noteholders Group, the Official
Committee of Unsecured Creditors of the US Debtors, and Law Debenture Trust Company of New
York, this Court having issued an Endorsement dated March 8, 2013 and Reasons for Decision dated
this day:

1.      **THIS COURT ORDERS** that the allocation protocol in the form appended as Schedule "A" to
this Order (the **"Allocation Protocol"**) is approved. Capitalized terms used herein and not otherwise
defined shall have the meaning given to them in the Allocation Protocol.

- 3 -

2.     **THIS COURT ORDERS** that in addition to the Core Parties named in the Allocation Protocol, the Core Parties will include any additional party designated as a Core Party by Orders of both this Honourable Court and the US Court.

3.     **THIS COURT DIRECTS** that:

   a.  the trial under the Allocation Protocol will commence on January 6, 2014; and

   b.  the trial will commence with the allocation issues and continue thereafter with the EMEA Canadian Claims and the UK Pension Canadian Claims.

4.     **THIS COURT ORDERS** that the Canadian Debtors and the Monitor are authorized to take all steps necessary to carry out and give effect to the terms of the Allocation Protocol and this Order.

5.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Canadian Debtors, the Monitor and their respective agents in carrying out the terms of this Order.   All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Canadian Debtors and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Canadian Debtors and the Monitor and their respective agents in carrying out the terms of this Order.

6.     **THIS COURT ORDERS** that each of the Canadian Debtors and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body,

- 4 -

wherever located, for the recognition of this Order and for assistance in carrying out the terms of this

Order.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

MAY 13 2013

Schedule "A"

## ALLOCATION PROTOCOL

1. <u>Purpose</u>.  The purpose of this Allocation Protocol is for the U.S. and Canadian Courts to set forth binding procedures for determining the allocation of the Sale Proceeds among the Selling Debtors[1] ("<u>Allocation</u>," and any hearing regarding same, an "<u>Allocation Protocol Hearing</u>," and any discovery regarding same, "<u>Allocation Protocol Discovery</u>").  Subject to paragraphs 5 and 6 hereof, creditor claims, including but not limited to intercompany claims by and between any Nortel entities, their representatives or successors ("<u>Intercompany Claims</u>") are not governed by this Allocation Protocol.  All Intercompany Claims between the U.S. Debtors and Canadian Debtors shall be determined in accordance with the Cross-Border Protocol and the Cross-Border Claims Protocol.  All other Intercompany Claims shall be determined in accordance with the claims reconciliation process established by the Nortel entity against which any Intercompany Claim is made.

2. <u>Participants</u>.  Each of the Selling Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators, the French Liquidator, the CCC, the Indenture Trustees, the UK Pension Claimants, and the Directors and Officers and such other parties as the U.S. Court and the Canadian Court may direct (collectively, the "<u>Core Parties</u>," and each individually, a "<u>Core Party</u>") and their authorized representatives shall have the right to participate fully in (a) any and all Allocation Protocol Hearings before the U.S. and Canadian Courts arising under or relating to this Allocation Protocol, and (b) any and all Allocation Protocol Discovery conducted in connection therewith.  The foregoing is without prejudice to (x) the right of any other party in interest to file written submissions in support of or in opposition to any theory of allocation advanced at any Allocation Protocol Hearing before the U.S. and Canadian Courts or request permission to become a Core Party and fully participate in the foregoing, which request shall be made by motion on notice to the Core Parties for cause shown to both the U.S. and Canadian Courts, or (y) the power of the U.S. and Canadian Courts to adopt procedures to manage the Allocation Protocol Hearings and related proceedings.

3. <u>Cross-Border Protocol</u>.  Any and all Allocation Protocol Hearings shall proceed in accordance with the Cross-Border Protocol, unless otherwise ordered by the U.S. and Canadian Courts.

4. <u>Procedures</u>.  The U.S. and Canadian Courts will determine the procedures that will govern the Allocation Protocol Hearings and related Allocation Protocol Discovery.  After hearing the procedural submissions of the Core Parties and taking into account the discovery already conducted to date in connection with the non-binding mediation sessions, the Allocation Protocol Discovery and Allocation Protocol Hearings shall proceed in an expeditious manner.

     a. <u>Pleadings</u>.  The Core Parties will exchange pleadings, which they shall be entitled to amend, from time to time, in accordance with the usual practice of the U.S. and

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Appendix A.

Canadian Courts. There shall be no restriction on the ability of any Core Party to advance or oppose any theory of allocation.

b. <u>Fact Discovery</u>. The U.S. and Canadian Courts will facilitate the Core Parties' exchange of fact discovery by determining the following:

    i. the deadline for, and acceptable manners of service of, reasonable requests for the production of non-privileged documents on any other Core Party;

    ii. the deadline for objections to any Core Party's document requests;

    iii. the deadline for identification of fact witnesses and number of fact witnesses allowed;

    iv. the process for compelling attendance of fact witnesses at depositions; and

    v. the deadline for completion of depositions, the number of depositions permitted, and the location of and time allowed for such depositions for each Core Party.

c. <u>Experts</u>. The U.S. and Canadian Courts shall facilitate expert discovery by determining the following:

    i. the deadline for and format of expert reports (including exhibits);

    ii. the deadline for and format of rebuttal expert reports (including exhibits); and

    iii. the deadline for completion of expert depositions and the time allowed for such expert deposition.

d. <u>Joint Conferences</u>. The U.S. and Canadian Courts shall be available for joint conferences to resolve any discovery disputes among the Core Parties and to receive updates as to the status of the proceedings. The U.S. and Canadian courts will determine when joint conferences may be set.

e. <u>Joint Hearings</u>. The U.S. and Canadian Courts shall have joint hearings on the merits. The U.S. and Canadian Courts shall determine:

    i. the rules governing the joint hearing on the merits;

    ii. the date(s) for an evidentiary hearing on the merits (after the close of fact and expert discovery and after the completion of written submissions) and the rules governing such hearing, during which opening and closing statements shall be made and cross-examination and redirect examination of fact and expert witnesses shall take place; and

    iii. the procedure for requesting or setting joint conferences as necessary to resolve any discovery disputes among the Core Parties or to receive updates to the status of the proceedings.

      f.   <u>Written Submissions</u>.  The U.S. and Canadian Courts will determine:

          i.   the deadline for and format of opening submissions (including exhibits);

         ii.   the deadline for and format of fact affidavits, if any, to accompany the opening submissions, which shall constitute the direct testimony of each fact witness;

        iii.   the deadline for and format of reply submissions (including exhibits); and

        iv.   the deadline for and format of fact affidavits, if any, to accompany the reply submissions.

5.   <u>EMEA Claims</u>.  Certain Intercompany Claims have been made by the EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor and by Nortel Networks AG and Nortel Networks AS against (a) the U.S. Debtors (the "<u>EMEA U.S. Claims</u>"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors and the Directors and Officers (the "<u>EMEA Canadian Claims</u>" (and together with the EMEA U.S. Claims, the "<u>EMEA Claims</u>")).  The Canadian Debtors and the Directors and Officers may file motions with the Canadian Court to dismiss the EMEA Canadian Claims.

6.   <u>UK Pension Claims</u>.  Certain claims have been made by the UK Pension Claimants against (a) the U.S. Debtors (the "<u>UK Pension US Claims</u>"), to which the U.S. Debtors intend to file responsive pleadings, and (b) the Canadian Debtors (the "<u>UK Pension Canadian Claims</u>" (and together with the UK Pension US Claims, the "<u>UK Pension Claims</u>")).  The Canadian Debtors may file motions with the Canadian Court to dismiss the UK Pension Canadian Claims.

7.   <u>Decisions</u>.  The U.S. and Canadian Courts will (a) hold simultaneously (i) the Allocation Protocol Hearings, (ii) hearings before the U.S. Court on the merits of any remaining EMEA U.S. Claims and UK Pension US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining EMEA Canadian Claim and UK Pension Canadian Claims, provided, however, that the U.S. and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only EMEA US Claims and/or UK Pension US Claims or only EMEA Canadian Claims and/or UK Pension Canadian Claims, and (b) issue their respective decisions on (i), (ii) and (iii).  The trial for this matter is scheduled to commence on January 6, 2014.  The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims.

8.   <u>Appeals</u>.  The Core Parties shall have their usual rights of appeal from all interlocutory and final decisions of the U.S. and Canadian Courts.

**Appendix A**

**Bondholder Group:** The ad hoc group of bondholders that hold claims issued and/or guaranteed by NNC, NNL, NNI, and Nortel Networks Capital Corporation

**Canadian Court:** Ontario Superior Court of Justice (Commercial List)

**Canadian Debtors:** Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), and Nortel Networks Global Corporation., Nortel Networks International Corporation and Nortel Networks Technology Corporation

**CCC:** the ad hoc committee of major creditors having claims only against the Canadian Debtors comprised of: the former and disabled Canadian employees of the Canadian Debtors through their court-appointed representatives (the "Representatives for the Former and Disabled Employees"); the Canadian Auto Workers Union (the "CAW"); Morneau Shepell Ltd. as Administrator of Nortel's Canadian registered pension plans ("Morneau"); Superintendent of Financial Services of Ontario as Administrator of the Pension Benefits Guarantee Fund (the "Ontario Superintendent"); and the court-appointed representatives of the current and transferred employees of the Canadian Debtors ("Nortel Continuing Employee Committee")

**Committee:** The Official Committee of Unsecured Creditors in the chapter 11 cases of the U.S. Debtors

**Cross-Border Protocol:** Schedule A to the "Initial Order and Endorsement," entered by Canadian Court on January 14, 2009, as amended by Schedule A to the "Fifth Amended and Restated Initial Order," entered by the Canadian Court on February 15, 2011; and Exhibit B to the "Order Pursuant to 11 U.S.C. §§ 105(a) Approving Cross-Border Court-To-Court Protocol," entered by U.S. Court on January 15, 2009, as amended by Exhibit 1 to the "Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol," entered by the US Court on June 29, 2009

**Cross-Border Claims Protocol:** Schedule A to the "Order Approving Cross-Border Claims Protocol," entered by Canadian Court on September 16, 2010; and Schedule B to the "Debtors' Motion for Entry of an Order Approving a Cross-Border Protocol on the Resolution of Claims," granted by the U.S. Court on September 16, 2010 pursuant to the "Order Pursuant to 11 U.S.C. §§ 105(a) and 502 Approving a Cross-Border Court-to-Court Claims Protocol"

**Directors and Officers:** Certain individuals as former directors and officers of NNC and/or NNL represented by Osler, Hoskin & Harcourt, LLP

**EMEA Debtors:** Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited; Nortel Networks S.A. ("NNSA"); Nortel Networks NV; Nortel Networks SpA; Nortel Networks BV; Nortel Networks Polska Sp z.o.o.; Nortel Networks Hispania, SA; Nortel Networks (Austria) GmbH; Nortel Networks s.r.o.; Nortel Networks Engineering Service Kft; Nortel Networks Portugal SA; Nortel Networks Slovensko, s.r.o.; Nortel Networks Romania SRL; Nortel GmbH; Nortel Networks OY; Nortel Networks AB; Nortel Networks International Finance & Holding BV and Nortel Networks France S.A.S.

**French Liquidator:** Cosmé Rogeau, who has been appointed Liquidator for NNSA under French secondary proceedings, and acts jointly with the Joint Administrators with respect to NNSA.

**Indenture Trustees:** (a) Wilmington Trust, National Association as successor indenture trustee pursuant to a trust indenture dated as of November 30, 1988, in respect of the 6.875% notes issued by Nortel Networks Limited; (b) The Bank of New York Mellon (i) as indenture trustee pursuant to a trust indenture dated as of July 5, 2006 among Nortel Networks Limited, as issuer, and Nortel Networks Corp. and Nortel Networks Inc., as guarantors, and (ii) as indenture trustee pursuant to an indenture dated as of March 28, 2007 among Nortel Networks Corp., as issuer, and Nortel Networks Limited and Nortel Networks Inc., as guarantors; and (c) Law Debenture Trust Company of New York as successor indenture trustee pursuant to a trust indenture dated as of February 15, 1996, in respect of the 7.875% notes issued by Nortel Networks Limited and Nortel Networks Capital Corp. and guaranteed by Nortel Networks Limited.

**Joint Administrators:** Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris, as the Administrators in the insolvency proceedings pending in the United Kingdom for all EMEA Debtors except Nortel Networks (Ireland) Limited, and Alan Robert Bloom and David Martin Hughes as Administrators for Nortel Networks (Ireland) Limited

**Monitor:** Ernst & Young Inc., in its capacity as the court-appointed monitor in the proceedings commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, in respect of the Canadian Debtors

**Selling Debtors:** Canadian Debtors, U.S. Debtors, EMEA Debtors and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited

**UK Pension Claimants:** The Trustee of the NNUK Pension Plan ("UK Pension Trustee") and the Board of the Pension Protection Fund ("PPF")

**U.S. Court or US Court:** United States Bankruptcy Court for the District of Delaware

**U.S. Debtors or US Debtors:** Nortel Networks Inc. ("NNI"), Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

---

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

ORDER
(Allocation Protocol)

Goodmans LLP
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON   M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Benjamin Zarnett (LSUC#: 17247M)
Fred Myers (LSUC#: 26301A)
Joseph Pasquariello (LSUC#: 3839OC)
Christopher Armstrong (LSUC# 55148B)
Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

# TAB 2

Court File No: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| **THE HONOURABLE MR.** | ) | **WEDNESDAY, THE 15TH DAY OF** |
| **JUSTICE MORAWETZ** | ) | **MAY, 2013** |
| | ) | |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION (the "Canadian Debtors")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**
**(Allocation Protocol – Litigation Timetable and Discovery Plan)**

**WHEREAS** this Court approved an allocation protocol (the "**Allocation Protocol**")
pursuant to an Order (Allocation Protocol) dated April 3, 2013.

**WHEREAS** pursuant to an Endorsement of this Court dated April 17, 2013, a joint
hearing was convened between this Court and the United States Bankruptcy Court for the
District of Delaware to consider a litigation timetable and discovery plan in connection with the
Allocation Protocol, which hearing was heard on April 24, 2013.

**ON HEARING** the submissions of counsel for the Canadian Debtors, Ernst & Young
Inc. in its capacity as monitor of the Canadian Debtors (the "**Monitor**"), the members of the

- 2 -

Canadian Creditors Committee, the Joint Administrators of Nortel Networks UK Limited and the other EMEA Debtors, the Trustee of the Nortel Networks UK Pension Trust Limited and the Board of the UK Pension Protection Fund, the former directors and officers of Nortel Networks Corporation and Nortel Networks Limited, Nortel Networks Inc. and certain of its affiliates in US Chapter 11 bankruptcy proceedings, Wilmington Trust, National Association, the Bank of New York Mellon, the Informal Nortel Noteholders Group, the Official Committee of Unsecured Creditors of the US Debtors, and Law Debenture Trust Company of New York, this Court having issued an Endorsement dated May 3, 2013.

1.      **THIS COURT ORDERS** that the litigation timetable and discovery plan appended as Schedule "A" to this Order (the **"Litigation Timetable and Discovery Plan"**) be implemented.

2.      **THIS COURT ORDERS** that the Canadian Debtors and the Monitor are authorized to take all steps necessary to carry out and give effect to the Litigation Timetable and Discovery Plan.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO·
LE / DANS LE REGISTRE NO..

MAY 1 6 2013

**SCHEDULE "A"**
**(Litigation Timetable and Discovery Plan)**

US Interests and EMEA Debtors' Proposed Litigation Timetable as of May 15, 2013

## LITIGATION TIMETABLE

Pursuant to the US Court's and Canadian Court's Orders approving the Allocation Protocol, the Cross-Border Protocol, and the Cross-Border Claims Protocol, it is hereby ordered:[1]

| Due Date 2013 | Steps in Allocation | Steps in US Claims | Steps in Canadian Claims |
|---|---|---|---|
| May 16 by noon E.D.T. | Any Core Party who wishes to participate in the Allocation dispute shall serve a pleading or opening submission styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought with respect to allocation, the material facts relied upon and legal bases for the allocation position being advanced by that Core Party by noon E.D.T. on May 16, 2013 and file the same within the next business day. | The US Claims Defendant Group shall file and serve their responses to the US Claims. | Deadline for the U.K. Pension Claimants to deliver their affirmative pleading (which may be deemed by them to serve as their Dispute Notices) setting forth, with reasonable particularity, the relief sought, material facts relied upon and legal bases for their claims and the grounds upon which they seek to challenge their disallowance. |
| May 17 | Any Core Party may serve a joinder before May 17 and file the same within the next business day, provided that the joinder does not advance any new legal bases and does not rely on new material facts. | | |

---

[1] Capitalized terms shall have the meaning ascribed to them in the Allocation Protocol and Annex A attached hereto.

| Due Date (Draft) | Steering/Allocation | Step in US Claim | Step in Canadian Claim |
|---|---|---|---|
| May 17 | The Discovery Participants shall aim to reach agreement on a Confidentiality Stipulation and Protective Order as soon as possible. To the extent the Discovery Participants are unable to agree on a Confidentiality Stipulation and Protective Order, May 17 is the deadline for the Discovery Participants to file their versions of the Confidentiality Stipulation and Protective Order with the Courts. | | |
| May 22 | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group. | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group. | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group. |
| May 22 | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group, without prejudice to an Allocation Group's right to later serve contention interrogatories, as to be discussed and/or resolved by the Courts. | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group, without prejudice to a US Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group, without prejudice to a Canadian Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. |

| Due Date 2013 | Step in Litigation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 24 | Deadline for Core Party who is not in one of the Discovery Groups, and who seeks to serve document requests and/or interrogatories that are non-duplicative of those document requests and/or interrogatories already served by the Allocation Groups, to seek leave of the Court to serve such non-duplicative document requests and/or interrogatories if prior to this time, such Core Party has been unable to reach agreement with the Core Party on whom it seeks to serve the non-duplicative document requests and/or interrogatories after meeting and conferring with such Core Party in good faith. | | |

3

| Due Date 2013 | Steps in Allocation | Steps in U.S. Claims | Steps in Canadian Claims |
|---|---|---|---|
| May 29 | The US Debtors, UCC, EMEA Debtors, Joint Administrators, Canadian Debtors, Monitor, Bondholder Group, and any other Core Party who filed an opening submission may each file and serve a response to any opposing Core Party's opening submission or designate its opening submission as a cross-response. Each of the responses may be made individually, jointly, and/or by joining another Core Party's response. | | With respect to the Canadian Claims, each Disputing Creditor shall receive from the Monitor and the Canadian Debtors, by May 29, 2013, a response to such Disputing Creditor's Affirmative Pleading setting forth, with reasonable particularity, the grounds for the disallowance, the material facts relied upon and the legal bases for the disallowance. |
| June 3 | Deadline for supplemental document requests and identification interrogatories related to new issues raised in responsive submissions. | | |
| June 6 | In-person meet and confer between the Discovery Participants regarding the discovery requests and interrogatories served, procedures governing the production of documents, deposition procedures, and any other issues that have arisen thereof. | | |
| June 10 | Deadline for responses and objections to document requests and objections to interrogatories in accordance with the Discovery Plan. | | |
| June 10 | Subject to any objections, deadline for the recipients of document requests to commence the rolling production of documents in accordance with the Discovery Plan. | | |
| July 3 | Date by which parties served with document requests must certify to parties requesting their documents substantial progress with regard to production of documents. | | |
| July 22 | Date by which parties served with document requests must certify to parties requesting their documents substantial completion with regard to production of documents. | | |

| Critical Date(s) | Core Party Step(s)/Actions | EMEA Step(s)/Actions | US Step(s)/Actions | Canadian Step(s)/Actions |
|---|---|---|---|---|
| July 24 | Deadline for identification by each Core Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Core Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Core Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | | Deadline for identification by each US Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other US Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that US Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each Canadian Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Canadian Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Canadian Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. |
| July 26 | Deadline to file motions to compel and/or motions for a protective order with respect to document discovery. Notwithstanding this deadline, when a dispute arises, the affected Discovery Participants shall promptly attempt to resolve any discovery disputes in good faith and once an impasse is reached, file any motions with the relevant Court(s) promptly. | | | |
| July 26 | Deadline for each of the Canadian Allocation Group, the EMEA Allocation Group, and the US Allocation Group to serve on any opposing Core Party the topics on which that Core Party's representative is to be examined or deposed in accordance with the Discovery Plan. | | Deadline for each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group to serve on any opposing Claim Party and/or a member of the Canadian Claims Defendant Group the topics on which that Claim Party's representative is to be deposed pursuant to Rule 30(b)(6) in accordance with the Discovery Plan. | Deadline for each of the Canadian EMEA Claimants Group, the UK Pension Claimants Group, and the Canadian Claims Defendant Group to serve on any opposing Claim Party and/or a member of the US Claims Defendant Group the topics on which that Claim Party's representative is to be examined in accordance with the Discovery Plan. |

5

| Deadline Date | | | |
|---|---|---|---|
| July 29 | Deadline for parties to designate witnesses to be examined or deposed, subject to later additions for the reasons set forth in the Discovery Plan. Each of (1) the Canadian Allocation Group and the Canadian Claims Defendant Group together; (2) the EMEA Allocation Group, the US EMEA Claimants Group, the Canadian EMEA Claimants Group, and the UK Pension Claimants together; and (3) the US Allocation Group and the US Claims Defendant Group together may designate a limited number of fact witnesses for examination or deposition in accordance with the Discovery Plan. Parties are encouraged to identify witnesses as early as possible in order to facilitate scheduling. | | |
| August 2 | Deadline for each Core Party that is timely served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for oral examination or deposition. | Deadline for each US Claim Party (other than the Committee) that is timely served with a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for deposition. | Deadline for each Canadian Claim Party that is timely served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure to identify its representative for an oral examination. |
| August 5 | In-person meet and confer between the Discovery Participants regarding witnesses to be deposed or examined, deposition procedures and any other issues that have arisen. | | |
| September 13 | Deadline to identify experts and the subject matter of their reports in accordance with the Discovery Plan. | | |

| DEADLINE DATE | [Section [I] NNA Claims] | [Section [II] US Claims] | [Section [III] Canadian Claims] |
|---|---|---|---|
| September 27 | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions. | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any Rule 30(b)(6) depositions. | Deadline to complete witness depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within three weeks of each examination), in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to representative party examinations. |
| October 4 | Deadline for service of expert reports (including exhibits) in accordance with the Discovery Plan. | | |
| November 1 | Deadline for service of responding experts' reports (including exhibits) in accordance with the Discovery Plan. | | |
| Week of November 11 | Preliminary pre-trial conference. | | |
| December 6 | Deadline to complete depositions of experts in accordance with the Discovery Plan. | | |
| December 9* | Deadline to file a list of all witnesses and exhibits that each Discovery Participant intends to rely upon as part of its direct case. | | |
| December 13* | Deadline to file pre-trial motions. | | |

All dates for pre-trial submissions are subject to modification by the Courts at the preliminary pre-trial conference.

7

| Date/Action 2013 | Steps in Allocation | Steps in US Claims | Steps in Canadian Claims |
|---|---|---|---|
| December 13* | Deadline for filing of opening written submissions with the Courts. The content of such submissions will include:<br><br>a) Pre-trial briefs;<br><br>b) All fact affidavits to be used as direct testimony;<br><br>c) All exhibits to be used in a Discovery Participant's direct case; and<br><br>d) All deposition testimony to be used in a Discovery Participant's direct case. | | |
| Week of December 16,* if the Courts desire | Pre-Trial Conference(s) –<br><br>By this date, the Core Parties shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the contents of document briefs for use at the Joint Hearing/ the exhibits for use at the Joint Hearing.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | Pre-Trial Conference(s) –<br><br>By this date, the US Claim Parties and the Canadian Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the exhibits for use at the Joint Hearing.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | Pre-Trial Conference(s) –<br><br>By this date, the Canadian Claim Parties and the US Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the contents of document briefs for use at the Joint Hearing.<br><br>All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |

| End Date 2016 | Start Allocation Trial / Start US Claims / Start Canadian Claims |
|---|---|
| Begins January 6, 2014 | The US and Canadian courts will (a) hold simultaneously (i) hearings before the US and Canadian courts regarding Allocation, (ii) hearings before the US Court on the merits of any remaining US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining Canadian Claims, provided, however, that the US and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only the US Claims or only the Canadian Claims, and (b) issue their respective decisions on (i), (ii), and (iii). The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims. |

Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the US Court through the filing of a certification of counsel and to the Canadian Court through the filing of a letter from the Monitor to Justice Morawetz on notice to the Core Parties. Any Core Party may also file a motion with the applicable Court or Courts to modify this Litigation Timetable upon a showing of good cause.

## ANNEX A

## DEFINITIONS

Capitalized terms used in this Litigation Timetable but not otherwise defined in this Annex A shall have the meanings ascribed to them in the Allocation Protocol.

Allocation Group:  Any of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, or the Bondholder Allocation Group.

Bondholder Allocation Group:  The Bondholder Group.

Canadian Allocation Group:  The Canadian Debtors, the Monitor, and the CCC.

Canadian Claim Party:  Any party in the Canadian EMEA Claimants Group or the Canadian Claims Defendant Group, or the UK Pension Claimants.

Canadian Claims:  Claims made by the Canadian EMEA Claimants Group and the UK Pension Claimants against any or all of the Canadian Debtors.

Canadian Claims Defendant Group:  The Canadian Debtors against whom the Canadian EMEA Claimants Group and the UK Pensions Claimants have brought claims, the Directors and Officers (but only with respect to claims of the Canadian EMEA Claimants Group), and the Monitor.

Canadian EMEA Claimants Group:  The EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor who made claims against any or all of the Canadian Debtors or Directors and Officers, and the UK Pension Claimants who made claims against NNC and NNL.  Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

Claim Group:  Any of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, the Canadian Claims Defendant Group, or the UK Pension Claimants.

Discovery Participant:  Any Core Party or party of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, or the Canadian Claims Defendant Group who is participating in discovery pursuant to the Discovery Plan.

Discovery Plan:  The Discovery Plan that will be entered by the Courts.

10

Disputing Creditor: Any party who has delivered an Affirmative Pleading to dispute the disallowance of its claim by the Monitor and the Canadian Debtors, which shall be deemed to include the EMEA Debtors.

EMEA Allocation Group: The UK Pension Claimants, the EMEA Debtors (including Nortel Networks International Finance & Holding BV as behalf of itself and as assignee of Nortel Networks o.o.o.), and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

Identification Interrogatories: Interrogatories seeking identification of (i) the names, roles and last known contact information of witnesses with knowledge of information relevant to the subject matter of Allocation, EMEA Claims or UK Pension Claims, (ii) information sufficient to identify transactions upon which any positions, claims, and/or defenses of the recipient of the interrogatory rely. An interrogatory seeking the names of multiple individuals or transactions shall be considered one interrogatory for purposes of any numerical limit on the number of interrogatories.

Representatives: Directors, officers, employees, attorneys, accountants, experts, consultants, financial advisors, or agents of any of the Core Parties, US Claim Parties, or Canadian Claim Parties.

U.K. Pension Claimants: Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund.

US Allocation Group: The US Debtors and the Committee.

US Claims: Claims made by the US EMEA Claimants Group and the UK Pension Claimants against any or all of the US Debtors.

US Claims Defendant Group: The US Debtors against whom the US EMEA Claimants Group and the UK Pension Claimants have brought claims and the Committee.

US EMEA Claimants Group: The EMEA Debtors and/or Joint Administrators or any other administrator or liquidator of an EMEA Debtor who made claims against any or all of the US Debtors, Nortel Networks AS, Nortel Networks South Africa (Proprietary) Limited, Nortel Networks AG, Nortel Networks Optical Components Limited, Northern Telecom France SA, Northern Telecom PCN limited. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

US Claim Party: Any party in the US EMEA Claimants Group or the US Claims Defendant Group, or the UK Pension Claimants.

11

## DISCOVERY PLAN

| | |
|---|---|
| **1. Definitions** | Capitalized terms used herein and not otherwise defined shall have the meaning ascribed in the Allocation Protocol or Litigation Timetable. |
| **2. Applicable Procedural Regime:** | In accordance with the Cross Border Protocol, the Cross-Claims Protocol and the Allocation Protocol, the following procedural regimes apply:<br><br>(1) With respect to Allocation, the Cross-Border, Cross-Claims and Allocation Protocols apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware will apply as applicable.<br><br>(2) With respect to US Claims, the Cross-Border and Cross-Claims Protocols apply to the extent not inconsistent with this Discovery Plan, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware will apply as applicable.<br><br>(3) With respect to Canadian Claims, the Cross-Border Protocol, the Cross-Claims Protocols, the Claims Resolution Order, and the EMEA Claims Procedure Order apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario will apply as applicable. |
| **3. Scope of Documentary Discovery Among Discovery Participants:** | *a) Definition of Documents*<br><br>References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the Rules of Civil Procedure for Ontario and/or the types of documents contemplated by Rule 34 of the Federal Rules of Civil Procedure.<br><br>*b) Reasonably Accessible Documents and Proportionality*<br><br>No Discovery Participant will be required to search data sources, including applications and databases, that it reasonably understands to already be in the possession, custody, or control of the Allocation Group or Claim Group making the request, provided that a Discovery Participant shall enumerate in its response to a discovery request any data sources that are not being searched on this ground. |

Each Discovery Participant will only be required to search reasonably accessible data. A Discovery Participant who believes that responsive materials are reasonably likely to be found in a decommissioned application or in storage media that cannot be accessed without considerable burden, time or expense shall give prompt notice of this in its response to a document request, and shall meet and confer in good faith with the requesting party or parties regarding the cost and practicality of accessing such responsive materials giving attention to the principle of proportionality.

A Discovery Participant shall not be required to re-produce a document that has already been produced by another Discovery Participant and the same document shall not be required to be produced by more than one Discovery Participant.

In light of the volume of the Debtors' hard-copy documents maintained in off-site storage facilities, and the abundance of available and overlapping electronic data, no Discovery Participant will be obligated to search such hard-copy documents, and rather will produce indices of such hard-copy documents (to the extent they exist) with their responses to any document request and shall meet and confer in good faith with the requesting party or parties regarding hard-copy documents that will be made available for inspection upon request. If any such documents inspected are copied for any requesting party, all other parties shall be notified and copies shall be provided to all parties at their own expense. If any party creates an electronic version of those documents, that party shall be responsible for loading the electronic version of the document(s) onto the Merrill Lextranet database in accordance with Schedule A hereto to the extent reasonable and not overly burdensome.

## c) Previously Produced Documents

Documents produced into the Merrill Lextranet database ("Mediation Dataroom") for the purpose of the several mediations in this proceeding may be treated as having been produced in the Allocation, US Claims and Canadian Claims litigation, and any Discovery Participant that does not already have such documents shall be provided access to this Merrill Lextranet database, subject to an appropriate confidentiality, protective and/or sealing orders from the Court(s) and a provision allowing the Discovery Participants to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this Discovery Plan. Any Discovery Participant may request the load files for the Mediation Dataroom containing metadata from Merrill in order to facilitate loading such documents on a review platform of their choosing.

2

*d) No Waiver of Privilege*

The fact that a document has been produced by any Discovery Participant shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Discovery Participant who asserts privilege over the document), and any Discovery Participant who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a confidentiality or protective order.

*f) Document Requests*

**By no later than May 22, 2013**

For Allocation, each Allocation Group shall be entitled to serve limited reasonable requests for production of non-privileged documents, such requests to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to making such requests, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the document requests of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 24, 2013 to seek agreement with a Discovery Participant from whom it seeks documents and, failing agreement, to seek leave of the Courts to make additional document requests if it believes in good faith that such requests are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on each opposing US Claim Party. The US Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on the Canadian Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed document request and by the US Court where the US Debtors are the recipient of the disputed document request. The Canadian and US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

3

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on the US Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed document request and by the US Court where the US Debtors are the recipient of the disputed document request. The Canadian and US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation document requests and US Claims/Canadian Claims document requests. Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional document requests upon a showing of good cause.

*g) Interrogatories*

**By no later than May 22, 2013**

For Allocation, each Allocation Group shall be entitled to serve a limited number of reasonable Identification Interrogatories, such interrogatories to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to serving such interrogatories, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the interrogatories of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 24, 2013 to seek agreement with a Discovery Participant on whom it wishes to serve interrogatories and, failing agreement, to seek leave of the Courts to serve additional interrogatories if it believes in good faith that such interrogatories are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and UK Pension Claimants and US Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on each opposing US Claim Party. The US Claims Defendant Group and the

Bondholder Group shall confer on such interrogatories. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the Canadian Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed interrogatory and by the US Court where the US Debtors are the recipient of the disputed interrogatory. The Canadian and US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such interrogatories. In addition, the EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the US Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed interrogatory and by the US Court where the US Debtors are the recipient of the disputed interrogatory. The Canadian and US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation interrogatories and US Claims interrogatories. Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional Identification Interrogatories upon a showing of good cause.

The availability of contention interrogatories shall be decided by mutual agreement among the Discovery Participants at a later date, and, failing agreement, by the Court(s).

*h) Responses and Objections*

**By no later than June 10, 2013**

When objecting to any discovery request, the recipient of such discovery requests shall state the basis for objection, which may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Recipients are strongly encouraged to prepare joint objections to the same document request or interrogatories to the extent

5

their objections overlap.

*i) Production of Documents*

**Rolling Productions of Documents Shall Commence June 10, 2013 and Shall Be Completed by July 22, 2013:**

Subject to any objections made and sustained if challenged (see motions procedure below), each recipient of a document request shall produce any responsive non-privileged documents to any request made of it to all Discovery Participants by producing such documents into the Merrill Lextranet database (to the extent they overlap, responses to multiple requests may be combined or cross-referenced to each other to avoid duplication). The producing Discovery Participant shall promptly notify all Discovery Participants of the Docid range of each production.

In this same time frame, each Discovery Participant shall produce any further documents that they intend to rely upon at trial that are not already part of the mediation productions or responsive productions.

*j) Motions to Compel Document Production*

**Motions to Compel Document Productions Must Be Filed by July 26, 2013**

Any Discovery Participant who served document requests and who seeks to compel production of a document must do so only after meeting and conferring in good faith with the Discovery Participant against whom a motion is contemplated, and thereafter by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on seven business days notice on all Discovery Participants, and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The Discovery Participant whose objection is challenged shall respond to this motion within four business days and any other Discovery Participant whose interests are affected by the request may serve a supplementary response within two business days thereafter.

Notwithstanding this deadline, whenever a discovery dispute arises, the affected Discovery Participants shall promptly attempt to resolve the dispute in good faith and, if an impasse is reached, file any motions with the relevant Court(s) promptly.

*k) Privilege Logs*

Should a Discovery Participant withhold any document based on a claim of privilege or work product protection, the producing party shall provide a privilege log containing details about the category of documents

6

withheld, including at least the following information for each category: (a) the discovery participant asserting the privilege; (b) the subject matter of the category; (c) the date range; and (d) the author(s) and other recipients, which may be grouped by employer (such as Nortel entity or advisor or law firm). Discovery Participants may request additional information regarding categories on the privilege log in order to assess the basis for withholding and shall meet and confer on the same.

The following documents, to the extent created after the commencement of the bankruptcy proceedings, presumptively need not be included on a privilege log: (a) communications exclusively between a Discovery Participant and its outside counsel or (b) work product created by outside counsel and/or such counsel's agents.

Responsive documents which are jointly privileged as to two or more of the Discovery Participants shall be produced, but only to those Discovery Participants with whom the joint privilege is shared.

| | |
|---|---|
| 4. **Format of Production of Electronic Records** | For each electronic document, the responding party shall provide the metadata specified in Schedule A, but only to the extent they can reasonably be extracted or otherwise provided in a delimited text file. |
| 5. **Trial Witness Identification** | **By no later than July 24, 2013**<br><br>Each Discovery Participant shall identify any fact (non-expert) witnesses it anticipates calling or presenting testimony of at trial, by name, employer, title and functional role held during the time period relevant to their anticipated testimony. A Discovery Participant may identify trial witnesses not previously identified on good faith at a later date provided that any opposing Allocation Group or Claim Group has had or will have a reasonable opportunity to depose the later-identified witness before trial, regardless of the fact discovery cut-off or number of depositions taken.<br><br>Any Discovery Participant that has previously filed an affidavit or witness statement in the context of this litigation (the Ontario and Delaware proceedings) may also, at its option, choose to designate that evidence to be tendered at trial as long as the witness will be made available to be deposed and appears at trial for cross-examination. |
| 6. **Oral Examinations Or Depositions** | *a) Examinations of Representatives/ 30(b)(6) Depositions*<br><br>**By no later than July 26, 2013**<br><br>For Allocation, each Allocation Group (other than the Bondholder Allocation Group) may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States |

Federal Rules of Civil Procedure on the solicitors or counsel of record for any opposing Discovery Participant specifying the topics, if any, on which that other Discovery Participant's representative(s) is to be examined/deposed. The Bondholder Allocation Group shall consult with the Canadian Allocation Group and the US Allocation Group regarding any requests under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure it would like the US Allocation Group and the Canadian Allocation Group to serve on other Discovery Participants in accordance with the foregoing. In the event that Canadian Allocation Group and the US Allocation Group do not agree to serve such requests, the Bondholder Allocation Group may seek leave of the Court or Courts, as applicable, by motion on notice to serve its own requests for examination under Rule 34.04 of the Ontario Rules of Civil Procedure and/or depositions under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group may each serve a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the counsel of record for any opposing US Claim Party specifying the topics, if any, on which the US Claim Party's representative is to be deposed. The US Claims Defendant Group and the Bondholder Group shall confer on such requests.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group may each serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure on the solicitors/counsel of record for any opposing Canadian Claim Party specifying the topics, if any, on which the Canadian Claim Party's representative is to be examined/deposed. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests.

<u>Use of (Discovery) Answers at Trial</u>

Testimony of representatives proffered in response to requests under Ontario Rule 31.03 and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure may be used as evidence at trial only by Discovery Participants whose interests are adverse to those of the proffering Discovery Participants on the issue for which the evidence is being used.

**<u>By no later than August 2, 2013</u>**

Each Discovery Participant served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure shall designate a representative(s)

(who may, but is not required to be, a current or former officer, director or employee of that Discovery Participant) to be offered to be examined/deposed as though Rule 31.03 of the Ontario Rules of Civil Procedure applied and/or under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure as applicable. All Discovery Participants shall have the right to attend such examinations/depositions.

A Discovery Participant may designate its party representative(s) under Rule 34.04 of the Ontario Rules of Civil Procedure as its witness(es) under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure for a single examination/deposition of each such witness(es).

*b) Oral Examinations/ Deposition of Fact Witnesses:*

**By no later than July 29, 2013**

In addition to the aforementioned examinations/depositions pursuant to Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure, each Allocation Group and each Claim Group shall serve by this date notices stating the witnesses it wishes to examine or depose (which may include third parties, persons subject to the control of a Discovery Participant or both and which may be persons who have been identified as trial witnesses by another Discovery Participant, and any persons whose previously filed affidavits/witness statements have been designated by a Discovery Participant as trial evidence) in order to obtain factual information/admissions relevant to Allocation, US Claims or Canadian Claims. Each witness shall be named and his/her place of residence (if known) shall be identified. The parties shall meet as soon as practicable after this date to confer and attempt to reach agreement on the list of witnesses to be deposed and the time for examination of each witness by each party. In the absence of agreement this shall be submitted to the relevant Court(s) for decision. The attorneys for the US Debtors, the Canadian Debtors and the EMEA Debtors agree to accept requests under Rule 34.04 of the Ontario Rules of Civil Procedure and Depositions Notices the United States Federal Rules of Civil Procedure seeking to depose or examine persons under the control of their clients. All parties agree to cooperate in good faith in attempts to locate and obtain testimony from persons not under the control of any party, including through issuance of compulsory process, letters of request and other available procedures, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony.

The Bondholder Group shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, regarding any fact witnesses

it seeks to examine/depose.  In the event that the Canadian Allocation Group and the US Allocation Group do not intend to designate such fact witnesses that the Bondholder Group seeks to designate, the Bondholder Group may seek leave of the Court or Courts, as applicable, by motion on notice to designate such fact witnesses.

Either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to designate additional fact witnesses upon a showing of good cause.

**All examinations/depositions to be completed by no later than September 27, 2013**

The relevant parties shall meet and confer and attempt to agree on the fact witnesses to be examined/deposed and on an examination/deposition schedule that contemplates the completion of all witness examinations/depositions (including any examinations/depositions for testimony preservation that the Court(s) may have granted leave to conduct) in this time frame that reflects the practicalities of examining/deposing each witness (having regard to the number of Discovery Participants examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness).  All Discovery Participants shall have the right to attend such examinations/depositions.

The relevant parties will attempt to schedule depositions with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions.

*c) Use of Examinations/Depositions at Trial*

Designated portions of any examination/deposition may be filed as part of the evidence that any Discovery Participant may rely upon at trial in accordance with the usual rules that apply in the Canadian and US Courts, respectively.

10

7. **Experts**

**By no later than September 13, 2013**

Each Discovery Participant that intends to rely on the opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

**By no later than October 4, 2013**

Each Discovery Participant shall deliver an affidavit or report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by Bates number if previously produced, and containing the disclosures required by the Applicable Procedural Regime set forth in section 2.

Any Discovery Participant that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial, provided that the expert will be made available to be examined/deposed and appears at trial as set out below. If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

Promptly after the submission of initial expert affidavits or reports, the Discovery Participants shall attempt to agree upon an expert examination/deposition schedule so that depositions can commence by November 8, 2013.

**By no later than November 1, 2013**

Each Discovery Participant shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another Discovery Participant that addresses an issue that is adverse to the Discovery Participant's position in the Allocation, US Claims, or Canadian Claims litigation. Responses shall be permitted even if the Discovery Participant did not initially tender an expert's affidavit, if an issue is raised by an expert whose evidence is tendered by another Discovery Participant that calls for response. Responsive reports shall be limited to responding to issues on which an affirmative expert report has been proffered and shall not go beyond such issues.

**By no later than December 6, 2013**

As soon as practicable, the Discovery Participants shall meet and confer and attempt to agree on a schedule that contemplates the completion of all expert witness examinations/depositions between November 8, 2013 and December 6, 2013 that reflects the practicalities of examining/deposing

each witness (having regard to the number of parties examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness). All Discovery Participants shall have the right to attend such depositions.

A Discovery Participant may request that any expert be present at trial for cross-examination, and the affidavit or report of any expert not appearing at trial if requested to appear cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

The affidavits and/or reports shall be filed as evidence with the court at the trial, subject only to cross-examination at trial and any applicable objections that may be made and determined at the outset of the trial and directions or rulings from the Court(s) arising therefrom. The Discovery Participant proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

Communications with Experts:

The experts shall not be examined/deposed about or asked to produce prior drafts of their affidavits/reports and/or their communications with the Discovery Participant who retained them or other Discovery Participants within the same Allocation Group or Claim Group, or their respective Representatives, or any other topic protected from disclosure by the Applicable Procedural Regime set forth in section 2.

With respect to Allocation and US Claims, Rule 26 of the United States Federal Rules of Civil Procedure applies to expert discovery.

| 8. | General Procedure Applicable to All Oral Examinations/ Depositions | Length of Oral Examinations/Depositions |
|---|---|---|

**8. General Procedure Applicable to All Oral Examinations/ Depositions**

Length of Oral Examinations/Depositions

The Discovery Participants will include for discussion in the meet and confer scheduled for August 5 the Discovery Participants' proposals for limits on the length of oral examinations/depositions and the procedure for conducting such examinations/depositions.

Coordinating Oral Examinations/Depositions

Each examination/deposition shall be coordinated so that a lead examiner is identified for each group that noticed the oral examination/deposition (where an Allocation Group and Claim Group from the same jurisdiction counts as one group). Lead examiners shall work in good faith with any other lead examiners as well as other affected Discovery Participants to

reflect a coordinated effort to avoid duplication of questions. For the avoidance of doubt, the US Claim Parties shall have the right to attend oral examinations/depositions that relate to the Canadian Claims, and the Canadian Claim Parties shall have the right to attend oral examinations/depositions that relate to the US Claims.

Transcripts and video taping:

All examinations/depositions shall be taken under oath in the presence of a Canadian or US certified court reporter and transcribed and the transcripts made available to all Discovery Participants, whether or not they are in attendance at the examination/deposition. At the option of any examining/deposing Discovery Participant, the examination/deposition may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining/deposing Discovery Participant(s) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

Objections:

Objections may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Questions that are objected to on grounds other than privilege shall be answered under reserve of that objection. All other objections shall be preserved.

Requirement for Summons:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Debtors, the Joint Administrators, and the UK Pension Claimants shall reasonably assist in issuing process or otherwise procuring a witness's attendance irrespective of which Discovery Participant has sought the witness's deposition, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment or consent to that jurisdiction for any other purpose.

Undertakings:

With respect to Allocation and Canadian Claims, the witness shall answer any undertakings that were agreed to on his/her examination/deposition within two weeks of the date of his/her examination/deposition, unless otherwise agreed to by the affected Discovery Participants.

**9. General Terms**

Any Discovery Participant may make a motion to the Court to compel another Discovery Participant to take the steps contemplated by the Discovery Plan or other steps, and the parties agree that the Court(s) may take the existence of the Discovery Plan into account in determining whether to grant the order sought. The Discovery Participants that are parties to such a motion may seek to justify their respective positions on the basis of, among other things, any information that was unknown or not reasonably available to that Discovery Participant at the time the Discovery Plan was entered into.

The Discovery Participants recognize that, as additional information becomes available throughout the Allocation, US Claims and Canadian Claims litigation, it may become apparent that: (a) it is impracticable or impossible for a Discovery Participant to comply with the terms of the Discovery Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery Plan, are required in order for a Discovery Participant to obtain access to potentially relevant documents, information or witness testimony. Each Discovery Participant agrees to notify the other Discovery Participants promptly when it reasonably believes that it will not comply with any term of the Discovery Plan or when it reasonably concludes that further steps beyond those set out in this Discovery Plan are required. The Discovery Participants agree to negotiate in good faith with respect to any amendments to the Discovery Plan requested by a Discovery Participant on that basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Discovery Participants.

All Discovery Participants shall meet and confer in good faith without the assistance of the Court(s) in attempting to resolve any disputes in the interpretation or implementation of this Discovery Plan. Discovery Participants are required to promptly seek relief from the applicable Court or Courts if an impasse is reached in any dispute and shall not be heard to complain of any prejudice resulting from their own delay in seeking relief.

All motions or directions sought from the Court(s) pursuant to this Discovery Plan shall be brought before the following Court or Courts: with respect to Allocation, before Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and Justice Morawetz of the Ontario Superior Court of Justice; with respect to US Claims, before Judge Gross; and with respect to Canadian Claims, before Justice Morawetz. The Courts shall hold regularly scheduled joint discovery conferences for discovery disputes in Allocation and those discovery disputes that affect both jurisdictions.

The EMEA Debtors' participation in the procedures addressed herein is without prejudice to their contention that Allocation should be decided by arbitration rather than the US and Canadian Courts, and shall not be

construed as a waiver of their objection to determining Allocation in accordance with the procedures set forth in the Allocation Protocol, this Discovery Plan and the Litigation Timetable.

All Discovery Participants reserve any rights they may have to object to the standing of any party to participate in any trial.

## SCHEDULE A

Format for Exchange of Productions: Productions will be exchanged by loading each production into the Merrill Lextranet database with the following objectively coded metadata, if reasonably possible, and in the following form:

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| Document Numbering | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note Text | Docid(s) attached to Parentid | AA0000001 |
| Fields/Coded Data for E-mails | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Bcc* | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment. When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc. This field is required for loading electronic documents and attachments | As per metadata |
| Fields/Coded Data for Attachments and Loose Electronic Documents | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record. Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment. When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc. This field is required for loading electronic documents and attachments. | As per metadata |

16

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| Fields/Coded Data for Paper Documents | *Docdate* | Date | Date of document (subjectively coded) | MM/DD/YYYY |
| | *CollectDate* | Date | Creation Date of Electronic File | MM/DD/YYYY |
| | *Source* | Note Text | Location or person from whom document was collected (subjectively coded) | |
| | *Attach#* | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | *Author* | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | *Recip* | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| Fields/Coded Data for Electronic Documents (Chronological Review) | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| | *Leadtime* | Date | Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together. Allows for further sorting of documents dated the same day by time | HH:MM:SS |

1.    Each document shall be individually produced with a unique document ID number.

2.    For each document, the Discovery Participant shall provide a text file containing the text extracted directly from the native electronic version of that document, unless the document was redacted, is an image file, is a scanned hardcopy document, or is in another format from which text cannot be reasonably extracted. In these instances, provide a text file created using document-level optical character recognition (OCR) to the extent reasonably practicable.

3.    All images will be single page tiff format (excluding spreadsheets, Powerpoint presentations, and database files which will be provided in native format) with 300 dpi specifications to the extent practicable. Native format files to be provided in the eDocs folder.

4.    Parties will provide the following load files formatted as follows:

(a)    Image folder (single page tiff, 300 dpi);

(b)    eDocs folder (for native files);

(c)    OCR folder (with text files and a control list for loading);

(d)    data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

17

(e)     imginfo.txt or imginfo.csv or other formats at the request of the receiving party to the extent practicable.

5.    If a document and its exact duplicates are associated with the same custodian, the responding party may withhold the exact duplicates from production.  If a document and its exact duplicates are associated with different custodians, the responding party may withhold the exact duplicates from production and provide a metadata field for the produced document indicating the custodians for whom duplicates were withheld where practicable.

6.    While Discovery Participants will attempt in good faith to comply with all of the above, Discovery Participants shall produce documents and comply with the above to the extent practicable.

18

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
Proceeding commenced at Toronto

**ORDER**
(Litigation Timetable and
Discovery Plan)

**Goodmans LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON   M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Jessica Kimmel (LSUC#: 32312W)
Peter Ruby (LSUC#: 38439P)
Joseph Pasquariello (LSUC#: 38390C)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

\6205385

# TAB 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
                                    :

*In re*                               :

Nortel Networks Inc., *et al.*,[1]       :

             Debtors.         :

                                      :

----------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

Re: D.I. 10145 & 10210

**DEBTORS' STATEMENT IN SUPPORT OF DEBTORS'
PROPOSED LITIGATION TIMETABLE AND DISCOVERY PLAN**

       1.     The Debtors in the above-captioned cases hereby submit a statement in

support of their proposed Litigation Timetable[2] and Discovery Plan (the "US Debtors'

Proposals"), attached as Exhibits A and B respectively to the *Debtors' Notice of Filing of*

*Proposed Litigation Timetable and Discovery Plan* [D.I. 10210] (the "Notice"), filed on April

19, 2013.

       2.     Over the last month, the US Debtors have conferred extensively with

counsel for the various Discovery Participants in the separate but coordinated Allocation, US

Claims and Canadian Claim litigations regarding the proposed Litigation Timetable and

Discovery Plan. The US Debtors have circulated numerous drafts and have worked in good faith

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]     Capitalized terms that are undefined shall have the meaning ascribed to them in the Allocation Protocol
attached as Exhibit A to the April 15, 2013 *Certification of Counsel Regarding Allocation Protocol* [D.I. 10133] or
Annex A to the Litigation Timetable, which is attached as Exhibit B to the Notice.

to suggest solutions to concerns raised.[3]  As a result, the Committee, the Bondholder Group and the Indenture Trustees fully support the US Debtors' Proposals, and the Directors and Officers have no objection.  Further, there are large areas of agreement between the US Debtors and the UK Pension Claimants, the EMEA Claimants and the Monitor.  Nonetheless, three key issues regarding scheduling and discovery remain unresolved among the various parties at the time of this filing.  The key differences between the various proposals and the parties' positions on each are explained below and summarized in **Exhibit A** hereto.

**Allocation, US Claims, and Canadian Claims are Three Separate Litigations**

3.    First, as this Court has acknowledged, the Allocation, US Claims and Canadian Claims are three distinct sets of litigations with their own procedural rules and involve different parties, and even if they are coordinated, they can only be decided independently by the respective Courts having jurisdiction over each of the separate sets of claims or disputes.  The Monitor's proposed timetable and discovery and deposition plan (the "Monitor's Proposals"),[4] however, makes no differentiation between the three separate litigations and on the contrary, expressly bundles the three sets of proceedings and do not take into account the applicable procedural regime for each of the litigations.  To ignore this distinction could cause unintended consequences.[5]

4.    While discovery for each of these three litigations can and should be coordinated for efficiency and certain evidence may be heard at a joint hearing before the US and

---

[3]    See the Notice for a full description of the evolution of the US Debtors' Proposals.

[4]    Blacklines of the US Debtors' Proposals compared with the Monitor's Proposals are attached as Exhibits B and C.

[5]    One example of the unintended consequences of the Monitor's Proposals would be that all expert reports would have to conform with both the United States Federal Rules of Civil Procedure and the Ontario Rules of Civil Procedure, and accordingly foreign law experts retained by the US Debtors to proffer evidence on foreign law in the context of the US Claims would be required to acknowledge a duty to the Canadian Court that does not exist.

Canadian Courts, this cannot mean that the three litigations can or should be treated as one for all purposes. This is especially true in light of the EMEA Debtors' appellate challenge to the jurisdiction of the US and Canadian Courts over the Allocation dispute, whereas they do not dispute that jurisdiction by the respective Courts is proper for the US and Canadian Claims.

     5.     Moreover, the Monitor's Proposals would include constituencies like the CCC and the Canadian Director and Officers—who are not parties to the US Claims, let alone even parties in interest to these Chapter 11 proceedings—as participants in the US Claims litigation. This would afford them the right to seek discovery on those claims, be heard on those claims, and otherwise assert rights coextensive to those held by the parties to those claims, and well beyond the rights actual US creditors would and do have with respect to the US Claims. Only "a party in interest" "may raise and may appear and be heard on any issue" before this Court. 11 U.S.C. § 1109(b). As the Third Circuit has noted, the party in interest requirement is "effectively coextensive" with standing under Article III of the Constitution. *In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 210-11 (3d Cir. 2011). Merely because some parties have a stake in other Nortel proceedings does not mean that they have a (i) specific—and not merely conjectural or hypothetical—injury that is (ii) traceable to the US Claims and would be (iii) redressed by a favorable decision. *See In re W.R. Grace & Co.*, 475 B.R. 34, 177 (D. Del. 2012) (listing the three requirements for constitutional standing). This Court has recognized that there is no statutory or judicial support to conclude that a creditor of a creditor, much less a group like the CCC that represents creditors of an equity-holder, has standing in a bankruptcy case. *See, e.g., In re Lifeco Inv. Group, Inc.*, 173 B.R. 478, 487-88 (Bankr. D. Del. 1994) (referring to "numerous cases" that hold the same).

3

Reasonable Limits on Discovery

      6.    Second, the parties disagree as to how to reasonably limit discovery in light of (i) the large number of Discovery Participants and counsel in multiple jurisdictions, (ii) the need to conduct discovery in a timely and efficient manner to be ready for the January 6, 2014 trial, and (iii) the substantial number of documents already exchanged between the estates and other parties in the context of mediation on the Allocation issue. Only the US Debtors' proposal, which treats parties with aligned interests as a discovery group with rights to seek discovery akin to a single participant through collaborative discovery requests, can avoid duplicative and burdensome requests, interrogatories and depositions while ensuring each party has reasonable access to discoverable material.

      7.    To illustrate, in Allocation, the US Debtors propose three primary discovery groups, each called an Allocation Group: the Canadian Allocation Group (made up of the Canadian Debtors, Monitor and CCC); the EMEA Allocation Group (made up of the UK Pension Claimants, the EMEA Debtors and certain other EMEA entities who were involved in the asset sales); and the US Allocation Group (made up of the US Debtors and the Committee). Under the US Debtors' Proposals, each of the Allocation Groups must serve one set of document requests and one set of interrogatories that reflect the collaborative effort of all of the members of the Allocation Group. Using discovery groups means that each party cannot be served with more than three sets of document requests or interrogatories for Allocation,[6] and discovery in the US Claims and Canadian Claims would add no more than two sets of document requests and interrogatories. Under the Monitor's Proposals, a party could receive up to ten sets of document

---

[6]    The Bondholder Allocation Group must consult with the US and Canadian Allocation Groups, as applicable, before serving document requests and/or interrogatories, and those Core Parties who are not in one of the Allocation Groups may suggest inclusions in the document requests and/or interrogatories of an Allocation Group with similarly aligned interests, and if agreement cannot be reached, seek leave of the Courts to serve their own document requests and/or interrogatories.

requests and interrogatories that are slightly different or nuanced. The parties would then need to spend extensive time reconciling, objecting to and meeting and conferring regarding each request separately, ultimately requiring the Courts to play referee between many more combinations of at-odds pairs.

8.    The US Debtors propose a group approach for depositions as well. For depositions conducted pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, each of the Allocation Groups described above collectively serves the topics on which it would like to depose another party's representative. For fact witness depositions, parties in both Allocation and US/Canadian Claims are combined such that there are three groups based on aligned interests, and each group can designate up to ten fact witnesses.[7] This limits the total number of fact witness depositions to a maximum of thirty. The Monitor's Proposals, on the other hand, allow each party to notice its own depositions under Rule 30(b)(6) and to designate up to ten fact witnesses. Under the Monitor's Proposals, over one-hundred witnesses could be deposed, which is an impossible task given the expedited time frame for these litigations.

9.    Another way the US Debtors propose to reasonably limit discovery is with respect to hard-copy documents. The US Debtors' proposed Discovery Plan provides that in light of the enormous volume (and dubious utility) of hard-copy documents maintained in off-site storage facilities and the abundance of available and overlapping electronic data, no party will be obligated to search hard-copy documents. Instead, a party has to produce only indices of hard-copy documents to the extent they exist, and thereafter will meet and confer with respect to the hard-copy document indices and may make some hard-copy documents available for inspection upon request. In the US alone, there are over two-hundred thousand boxes of

---

[7]    The Bondholders Allocation Group must consult with the US and Canadian Allocation Groups, as applicable, on all fact and 30(b)(6) depositions and may seek leave of the Court(s) if additional depositions are needed.

documents stored before the bankruptcy in approximately twenty off-site storage facilities, dating as far back as 1980. It would be the proverbial search for a needle in a haystack to search such documents. Both the Monitor and the EMEA Claimants support this position, while the UK Pension Claimants do not.

**US Debtors' Proposed Litigation Timetable Allows Necessary Time for Expert Discovery**

10.     Third, and lastly, the EMEA Claimants and UK Pension Claimants request more time in the schedule for fact discovery at the expense of expert discovery and preparation of pre-trial submissions at the close of all discovery. The US Debtors and the Monitor agree that such a schedule simply cannot work given the January 6, 2014 start date and the substantial number of experts required by a case of this complexity.

11.     The US Debtors' proposed Litigation Timetable, as well as the Monitor's proposed Litigation Timetable, requires that fact discovery be completed by August 30, 2013 and provides that expert discovery be completed by November 22, 2013. This allows approximately three-and-a-half months for fact discovery and two-and-a-half months for expert discovery. In their comments to the US Debtors' Proposals, the EMEA Claimants have proposed that fact discovery ends on September 27, 2013, and the UK Pension Claimants have proposed that fact discovery ends on September 30, 2013. The EMEA Claimants and the UK Pension Claimants thus request that the time allotted for fact discovery be extended by one month and the time allotted for expert discovery be decreased by one month.

12.     The schedules proposed by the EMEA Claimants and UK Pension Claimants are unrealistic given the number of experts required in the three litigations. The Allocation dispute is complex and involves many different areas of substantive law, many of which will require expert opinion. In addition, the EMEA Claimants and UK Pension Claimants

make allegations under the laws of many foreign nations and therefore will require experts on each of those foreign laws. Given the nature of the litigations, each estate could have over a dozen experts and will need as much time as possible for the expert reports, rebuttal expert reports and expert depositions.

13.    In sum, the US Debtors recognize that all parties have a right to discovery but assert that reasonable limits are essential in order to start trial on January 6, 2014. Any perceived limits on each party's ability to take discovery is mitigated by the fact that no party has objected to the provisions in the US Debtors' Proposals and the Monitor's Proposals that provide that all documents will be produced to a shared dataroom, which every Discovery Participant will have access to, and that all Discovery Participants will be entitled to attend and receive a transcript of every deposition. The US Debtors' proposal ensures not only that all parties have the discovery needed to litigate these disputes, but properly balances efficiency and expediency with preserving each parties' rights to meaningfully participate.

14.    For the foregoing reasons, the Debtors respectfully request the Court enter the US Debtors' proposed Litigation Timetable and Discovery Plan.

*[Remainder of Page Intentionally Left Blank]*

Dated:  April 23, 2013
         Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Howard Zelbo (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Jeffrey A. Rosenthal (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

8

## Exhibit A

Case 09-10138-KG    Doc 10233-1    Filed 04/23/13    Page 2 of 2

## Comparison of Parties' Litigation Timetables and Discovery Plans

| | Scheduling | Separate Litigations | Reasonable Limitations on Discovery |
|---|---|---|---|
| US Debtors | • Fact discovery lasts 3.5 months and is completed by August 30.<br><br>• Expert discovery lasts 2.5 months and is completed by November 22. | • Provides for separate discovery procedures for Allocation, US Claims, and Canadian Claims, which reflects the independent jurisdiction and different procedural rules of each Court.<br><br>• Specifies which parties have standing to participate in each of the litigations. | • Provides for discovery groups, which require parties with aligned interests to serve consolidated discovery requests and notice depositions together.<br><br>• Limits discovery groups to 10 fact witness depositions, yielding a maximum of 30.<br><br>• Produces indices of hard-copy documents; may provide hard-copy documents for inspection. |
| Monitor/ CCC | • Same date and dates as US Debtors.<br><br>• Later date for the start of document discovery shortens this period by one week. | • Provides for one discovery procedure for Allocation, US Claims, and Canadian Claims.<br><br>• Allows parties without standing to propound discovery in US Claims. | • Allows each Core Party to serve discovery requests individually, increasing objections and inefficiency.<br><br>• Allows each Core Party to designate 10 fact witness depositions, yielding up to 100 or more depositions.<br><br>• Aligned with US Debtors re: hard-copy documents. |
| EMEA Claimants | • Fact discovery lasts 4.5 months and is completed by September 27.<br><br>• Expert discovery lasts less than 1.5 months and is completed by December 6. | • Aligned with US Debtors. | • Generally aligned with US Debtors on concept of discovery groups.<br><br>• Disagree with US Debtors that document requests should be "limited" and "reasonable."<br><br>• Disagree with US Debtors that numerical limits can be placed on depositions at this stage.<br><br>• Aligned with US Debtors re: hard-copy documents. |
| UK Pension Claimants | • Fact discovery lasts 4.5 months and is completed by September 30.<br><br>• Expert discovery lasts 1.5 months and is completed by December 15. | • Aligned with US Debtors. | • Generally aligned with the US Debtors on concept of discovery groups.<br><br>• Disagree with US Debtors that numerical limits can be placed on depositions at this stage.<br><br>• Disagree with US Debtors re: hard-copy documents; would require parties to search hard-copy documents. |

# TAB 4

CITATION: Nortel Networks Corporation (Re), 2013 ONSC 2612
COURT FILE NO.: 09-CL-7950
DATE: 20130503

SUPERIOR COURT OF JUSTICE – ONTARIO
(COMMERCIAL LIST)

RE:        IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION, Applicants

BEFORE:   MORAWETZ J.

COUNSEL:  D. Tay and J. Stam, for Nortel Networks Corporation

J. Salmas, for Wilmington Trust, National Association

Scott Bomhof and Andrew Gray, Nortel Networks Inc.

Arthur Jacques, Nortel Continuing Employees Committee

Michael Barrack and Bill Burden, Nortel Networks U.K. Pension Trustee and the U.K. Pension Protection Fund

S. Kukulowicz, for the Unsecured Creditors' Committee

Matthew Gottlieb, Tracy Wynne and Robin Schwill, for EHEA Debtors

Mark Zigler, for the Former & Disabled Canadian Employees

Lyndon Barnes, for the Former Directors

J. Pasquariello, B. Zarnett and Peter Ruby, for Ernst & Young Inc., Monitor

Paul Steep and Byron Shaw, for the Canadian Creditors' Committee

Gavin Finlayson and Jonathan Bell, for the Noteholder Group

Lily Harmer, for the Superintendent of Financial Institutions

HEARD:    APRIL 24, 2013

- Page 2 -

## ENDORSEMENT

[1]    On March 8, 2013, an endorsement was issued granting the allocation protocol motion of the Canadian Debtors and approving the form of allocation protocol presented by the Canadian Debtors subject to certain specified modifications. The cross-motion of the Joint Administrators seeking to direct the parties to the Interim Funding and Settlement Agreement to arbitrate the allocation dispute was dismissed.

[2]    The U.S. Court similarly granted the motion of the U.S. Debtors for approval of the allocation protocol and dismissed the cross-motion of the Joint Administrators to compel arbitration.

[3]    On April 3, 2013, I issued a further endorsement providing reasons in respect of the allocation protocol motion. On the same date, the U.S. Court issued an opinion.

[4]    The effect of the decisions of both courts is that allocation of the Nortel global sale proceeds and resolution of the claims filed by the EMEA Debtors, certain other inter-company creditors and the U.K. pension interests against the Canadian Debtors and the U.S. Debtors, respectively, will be resolved through a joint trial of this court and the U.S. Court, which trial is to commence on January 6, 2014.

[5]    On April 17, 2013, both this court and the U.S. Court scheduled this joint hearing to address a Litigation Timetable and Discovery Plan for this upcoming trial.

[6]    The joint hearing was conducted by way of video conference. His Honor Chief Judge Gross presided over the hearing in the U.S. Court. The joint hearing was conducted in accordance with the provisions of the Cross-Border Protocol, previously approved by both courts.

[7]    At the outset, a jurisdictional issue was raised as a result of a pending motion for leave to appeal and any appeal in respect of my decision of March 8, 2013 and the decision of the U.S. Court.

[8]    By agreement of the parties, nothing in the participation of the EMEA Debtors in this hearing or in complying with the allocation protocol or timetable directed by this court, shall prejudice their request for leave to appeal, or any appeal if leave is granted, from the order of this court released March 8, 2013 with reasons delivered on April 3, 2013. Any party may, however, rely in the leave to appeal or any appeal on any failure of the EMEA Debtors to expedite the leave to appeal or appeal or on the state of the proceedings under the allocation protocol at the time of the hearing of the leave to appeal or appeal.

[9]    In considering the issues relating to the Litigation Timetable and Discovery Plan, it is advisable to state the obvious. The trial is scheduled for January 6, 2014. It is the responsibility of all parties to be prepared to proceed on that date. This court expects the parties to communicate with each other, to cooperate with each other and to use their common sense in a productive way such that all parties will be prepared to commence the trial on January 6, 2014.

- Page 3 -

[10]   Having considered the various submissions provided by the parties and, referencing the comparative chart filed by the U.S. Debtors entitled "Comparison of Parties' Litigation Timetables and Discovery Plans" (attached as Schedule A, (the "Chart")), the following directions are provided.

[11]   For matters in this court, the *Rules of Civil Procedure* apply.

[12]   All parties should take specific note of Rules 1.04(1) and (1.1), 29.1 and 29.2.

[13]   At this stage of the proceedings, it is impossible to provide specific directions on certain issues that have been identified by the parties as they are hypothetical.   Some of these issues will likely result in differences between the parties that will have to be adjudicated.   To the extent that disputes arise in the weeks and months ahead, it could very well be that it will be necessary to have such disputes resolved by a judicial officer.   This issue will be given further consideration, depending on the court's schedule.   Rather, at this stage, it seems to me that it may be constructive to provide guidance in the form of a response to the Chart.

## SCHEDULING

[14]   The position put forth by the EMEA Claimants is accepted.   Fact discovery is to last 4.5 months and be completed by September 27, 2013.   Expert discovery lasts 1.5 months and is to be completed by December 6, 2013.

[15]   In making this determination, I have taken into account that the EMEA Claimants and the U.K. Pension Claimants are major creditors in the global Nortel insolvency and it is necessary to ensure that they have the full opportunity to put forth their case, within the confines of the trial schedule.

## SEPARATE LITIGATIONS

[16]   The proposal of the U.S. Debtors is accepted.   Although a joint trial will be conducted, this does not alter the fact that the U.S. Court and this court are separate and the independent jurisdiction and different procedural rules of each court need to be respected.

[17]   All parties are expected to exhibit a considerable degree of cooperation in this area.

## LIMITATIONS ON DISCOVERY

[18]   In my view, it is both necessary and appropriate to provide for discovery groups, which require parties with aligned interests to serve consolidated discovery requests and notice depositions together.   In this respect, the proposal of the U.S. Debtors is accepted.

[19]   On the issue of the number of witnesses, in my view, it is premature to impose numerical limits on depositions at this stage.   This issue may be revisited at a later stage.

- Page 4 -

## CORE PARTIES

[20]  It was noted, in submissions, that no additional parties have sought to be included as a Core Party since the release of the decisions on March 8, 2013.  No additional parties are to be granted the status of Core Party, without leave of the court.

## EMEA CLAIM

[21]  The EMEA Debtors take issue with the submission of the Canadian Debtors that new pleadings be delivered.  The EMEA Debtors have filed claims in response to the EMEA Claim Procedure Order.  The Canadian Debtors and the Monitor are to respond to the claim, as filed.

## ELECTRONIC DOCUMENTS

[22]  With respect to issues relating to the Merrill database, I can see no principled reason why all parties should not have access to the database.

[23]  With respect to document discovery to electronic documents, the Monitor and the Canadian Debtors propose to use several tools to reach a balance, including:

 (a) making use of the over 44,000 documents already produced by the parties for the purpose of mediation and stored in a Merrill Lextranet database;

 (b) providing for parties to make limited and specific document discovery requests, so as to avoid fishing expeditions, extensive document search exercises and voluminous productions — or making any further relevant documents available.

[24]  In my view this proposal represents a reasonable approach under the circumstances, taking into account the available amount of time between now and the start of the trial.  To the extent that there are unresolved issues, specific directions can be sought.

## MONITOR

[25]  In my view the parties will benefit from some general comment about the role of the Monitor.  These comments are in response to the submission of the U.K. Pension Claimants that the only party who should respond to their claim is the Monitor who should deliver a responding pleading and that cross-examinations in connection with the Canadian claim should be conducted only by the Monitor and the U.K. Pension Claimants as the parties directly interested in the resolution of the claims.

[26]  It is not necessary to provide specific directions in respect of this issue.  The role of a monitor may vary in each CCAA proceeding, but at all times, the monitor remains a court-appointed officer and whose position cannot be restricted in the manner suggested by the U.K. Pension Claimants.  If further direction is required at some point in the future on this issue, directions can be sought.

[27]  The draft Litigation Timetables and the draft Discovery Plan attached to the submissions of the Canadian Debtors are to be amended to take into account the foregoing.

- Page 5 -

[28]    Finally, all parties should recognize that it is the objective of both the U.S. Court and this court to set out a fair, effective and efficient process designed to achieve a just result on the merits within the timelines that have been allocated. By the time the trial commences on January 6, 2014, these proceedings will have been ongoing for five years less one week. The issues involved in this joint trial were identified by the parties several years ago. It is time to have the issues determined with finality.

MORAWETZ J.

Date:    May 3, 2013

# TAB 5

Court File No: 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | TUESDAY, THE 19th DAY OF |
| JUSTICE MORAWETZ | ) | NOVEMBER, 2013 |
| | ) | |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**
**(Amendments to Litigation Timetable, Discovery Plan and Deposition
Protocol)**

**THIS MOTION,** made by Nortel Networks Corporation, Nortel Networks Limited,

Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel

Networks International Corporation (collectively, the "**Canadian Debtors**") jointly with Ernst &

Young Inc. in its capacity as monitor (the "**Monitor**") of the Canadian Debtors, the U.S.

Debtors, Committee, the EMEA Debtors/ Joint Administrators, the UK Pension Claimants and

the CCC (all as defined in the Allocation Protocol (as defined in Schedule A hereto) and

collectively, the "**Moving Parties**") for the relief set out in the Notice of Motion dated

November 14, 2013 was heard this day at 393 University Avenue, Toronto, Ontario.

TOR_LAW\ 8296198\7

ON READING the one-hundredth report of the Monitor dated November 14, 2013, and on hearing submissions of counsel for the Moving Parties and the objection of the ad hoc bondholder group, no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Kiran Dhillon sworn November 14, 2013, filed.

1.     THIS COURT ORDERS that the time for the service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.     THIS COURT ORDERS that capitalized terms used herein and not otherwise defined have the meaning given to them in Schedule A hereto.

3.     THIS COURT ORDERS that the terms of amendment set out in Schedule A hereto are hereby approved and the Allocation Protocol, the Litigation Timetable, the Discovery Plan and the Deposition Protocol be and they are hereby amended in accordance with such terms.

4.     THIS COURT ORDERS that the parties shall be permitted to adjust interim deadlines in the time table in accordance with the following procedures:

     a.    The Moving Parties shall meet and confer to determine whether further adjustments to the time table should be made and may upon unanimous agreement (subject to sub-paragraph (c) below), without further Order of the Court(s), propose amendments to the timetable provided that such dates shall not impact the Court ordered commencement date of the Trial;

     b.    Any objections by Core Parties to any proposed amendments shall be made within two (2) Business Days of such proposal being made to them in writing; and

c. All objections shall be resolved through a meet and confer among all the Moving Parties (or designated members) and the objector(s) within two (2) Business Days, failing which, the objector must seek relief from the Court(s) within two (2) Business Days thereafter (by letter). Absent relief from the Court(s), any changes to the time table proposed by the Moving Parties shall be effective.

MISCELLANEOUS

5.    THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

6.    THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

DEC - 3 2013

TOR_LAW\ 829619817

## SCHEDULE A

Attached.

<u>SCHEDULE "A" –AMENDMENT TERMS</u>

Capitalized terms used herein and not otherwise defined have the meaning given to them in (i) the allocation procedure protocol approved by the Ontario Superior Court of Justice and the United States Bankruptcy Court for the District of Delaware (the "**Courts**") in Orders dated on or about April 3, 2013 and May 16, 2013, respectively (as amended and restated, the "**Allocation Protocol**"), (ii) the litigation timetable and discovery plan approved by the Courts in Orders dated on or about May 16, 2013 and as amended by Orders of the Courts dated on or about August 27, 2013 (as amended, the "**Litigation Timetable and Discovery Plan**"), and (iii) the Deposition Protocol as approved by the Courts in Orders dated on or about August 27, 2013 and as amended by Orders dated on or about September 20, 2013 and September 25, 2013 (as amended, the "**Deposition Protocol**") as applicable.

1.    The Allocation Protocol, Litigation Timetable and Discovery Plan and the Deposition Protocol are modified as follows:

| Deadline | Former Date | Revised Date |
|---|---|---|
| Deadline to complete witness depositions other than third party depositions (i.e., those other than current or former employees or directors of a Core Party) and Representative Witness depositions | December 13, 2013 | December 13, 2013[1] |
| Deadline for each Deposition Group to serve Representative Witness subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | 10 business days prior to the commencement of Representative Witness depositions | 5pm (EST) December 13, 2013 other than with respect to topics relating to NNSA which shall be delivered no later than 5pm (EST) on December 17, 2013 |
| Identification of Representative Witnesses by each Core Party required to produce a Representative Witness | 5 business days prior to the commencement of Representative Witness | 5pm (EST) on December 18, 2013 |

---

[1] The parties shall be permitted to extend this date to December 18, 2013 with unanimous approval of the Scheduling Committee to the extent irreconcilable conflicts prevent a witness from being scheduled by December 13, 2013 provided however, except for good cause shown, that such extension shall not impact any other deadlines or dates in the timetable including the deadlines for noticing with respect to topics for and the scheduling of Representative Witness Depositions.

7790706.2

| Deadline | Former Date | Revised Date |
|---|---|---|
| | depositions | |
| Deadline for objections to Representative Witness subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | Three business days after service of the subjects | 5pm (EST) on December 18, 2013 |
| Meet and confer of the Scheduling Committee to schedule Representative Witness Depositions | NA | December 19, 2013 and/or December 20, 2013 |
| Meet and confer regarding any objections on Representative Witness deposition subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | Within two business days of service of the objections | December 20, 2013 |
| Deadline to identify experts and the subject matter of their reports | November 27, 2013 | January 8, 2014 |
| Representative Witness depositions | December 13, 2013 | January 8, 2014 to January 17, 2014 |
| Deadline for service of expert reports | December 20, 2013 | January 24, 2014 |
| Meet and confer to discuss foreign law experts | NA | No later than January 31, 2014 |
| Deadline for Discovery Groups to provide list of available dates of their experts to the Scheduling Committee | NA | 5pm (EST) on January 31, 2014 |
| Deadline to complete third party depositions | Due date of rebuttal expert reports | February 28, 2014 (solely for witnesses for whom process was started by Sept. 30, 2013 and except for good cause shown as per the current order) |
| Deadline for service of rebuttal expert reports | January 24, 2014 | February 28, 2014 |

2

77907062

| Deadline | Former Date | Revised Date |
|---|---|---|
| Preliminary pre-trial conference | Week of February 17, 2014 | January 29, 2014 |
| Expert depositions | February 28, 2014 | March 17, 2014 to April 4, 2014 |
| Deadline to file a list of all witnesses and exhibits that each Core Party intends to rely upon as part of its direct case | March 6, 2014 | April 10, 2014 |
| Deadline to file:<br><br>• Pre-trial motions<br><br>• Pre-trial briefs<br><br>• All fact affidavits to be used in direct case<br><br>• All exhibits to be used in direct case<br><br>• All deposition testimony to be used in direct case | March 14, 2014 | April 17, 2014 for service with filing on the following business day |
| Pre-trial conference | Week of March 17, 2014 (if the Courts desire) | Between April 21 and April 28, 2014 |
| Beginning of Trial | April 1, 2014 | Beginning on May 12, 2014 and continuing for 19 trial days thereafter |

2.    **Fact Witness Depositions**

       a.   Third Party Witnesses.

             i.   Notwithstanding any prior orders, absent good cause shown to the Court(s), no Core Parties shall provide any further notices to third parties for production of documents and/or depositions (other than those currently disclosed to the Scheduling Committee).

7790706.2

    ii. Provided that appropriate judicial process to compel the production of documents or testimony from third parties was issued or commenced on or before September 30, 2013, or currently disclosed to the Scheduling Committee, the production of documents from such third parties and/or the depositions of such third party witnesses may be completed after the deadline for fact witness depositions, but must be completed by no later than February 28, 2014, except for good cause shown and by agreement of the Core Parties or order(s) of the Court(s).

3.    **Representative Witness Examinations.**

    a. The Deposition Protocol is hereby amended as follows:

        i. The second sentence of paragraph G(1)(a) is amended as follows:

        "At least ten business days before the commencement of Representative Depositions" is hereby deleted and replaced with the words "On or before 5pm (EST) on December 13, 2013 (other than with respect to NNSA for which the deadline shall be December 17, 2013)"

        ii. The fourth sentence of paragraph G(1)(a) is amended as follows:

        "objections shall be served within three business days" is hereby deleted and replaced with the words "objections shall be served no later than 5pm (EST) on December 18, 2013"

        iii. The fifth sentence of paragraph G(1)(a) is amended as follows:

        "applicable parties shall meet and confer in good faith ~~within two business days thereafter~~ on or about December 20, 2013 and, failing agreement, the burden shall be on the noticing party to obtain judicial relief at least two business days (in order to enable preparation) prior to the Representative Deposition"

    b. On or before 5pm (EST) December 18, 2013, each Core Party that is required to

produce a Representative Witness under the Deposition Protocol shall identify their Representative Witness(es) and provide the Scheduling Committee with a list of all available deposition dates of their Representative Witness(es) for the period January 8, 2014 to January 17, 2014.

c. Representative Witness examinations will take place in accordance with the Deposition Protocol and will be scheduled between January 8, 2014 and January 17, 2014 to take place in New York or Toronto.

d. Each Core Party that is required to produce a Representative Witness under the Deposition Protocol will ensure that its Representative Witness can be produced on several pairs of days for the period January 8, 2014 to January 17, 2014.

e. The Deposition Groups will meet and confer during the week of December 16, 2013 to attempt to resolve any remaining disputes with respect to the Representative Witness depositions.

4.  **Expert Witness Examinations.**

a. Expert witness examinations will take place between March 17, 2014 and April 4, 2014 in New York and Toronto.

b. Each Discovery Group will ensure that their expert witnesses can be produced for examination in either New York or Toronto on several days between March 17, 2014 and April 4, 2014 and, unless excused by the Scheduling Committee or the Courts, at a minimum

i. each expert shall be required to offer at least 5 days on which they are available for deposition,

ii. the deposition dates offered by the experts must be spread over at least two of the weeks; and

iii. each Discovery Group must offer enough availability so that its experts' depositions can be scheduled equally over the three weeks of expert

5

depositions.

    c.  On or before 5pm (EST) January 31, 2014, each Discovery Group shall provide the Scheduling Committee with all available deposition dates of their experts for the period March 17, 2014 to April 4, 2014.

    d.  The Core Parties shall meet and confer no later than January 31, 2014 to attempt to reach agreement on the necessity of the examination of foreign law experts for deposition and trial.

5.   **Trial Logistics**

    a.  The Core Parties shall meet and confer as soon as possible (but in any event no later than the week of December 16, 2013) with a view to attempting to reach consensus with respect to a proposal for the conduct of the trial, including the

        i.  material to be served/filed on April 10, 2014 and April 17, 2014;

        ii.  the feasibility of providing the Courts with a statement of agreed facts; and

        iii.  proposed length of the trial.

    b.  On or before January 20, 2014, the US Debtors, Canadian Debtors/Monitor, the EMEA Debtors and the UK Pension Claimants shall submit (either jointly or separately) their proposals for the conduct of the trial to the Courts. Other Core Parties shall be entitled to file their own proposal on or before January 20, 2014 or, alternatively, they may file a joinder to indicate support of one or more of the proposals on or before January 27, 2014.

6.   **Miscellaneous**

    a.  Other than as expressly modified herein, all other terms, dates, provisions in the Allocation Protocol, Litigation Timetable, Discovery Plan and all amendments thereto remain in full force and effect.

6

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
Proceeding commenced at Toronto

ORDER
(Amendments to Litigation Timetable, Discovery
Plan and Deposition Protocol)

GOWLING LAFLEUR HENDERSON LLP
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

Derrick Tay (LSUC #: 21152A)
Jennifer Stam (LSUC #: 46735I)
Tel:    (416) 862-5697
Fax:    (416) 862-7661

GOODMANS LLP
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Alan Mark (LSUC#: 21772U)
Jessica Kimmel (LSUC#: 32312W)
Joseph Pasquariello (LSUC#: 38390C)
Peter Ruby (LSUC#: 38439P)
Tel: 416.979.2211
Fax: 416.979.1234

TOR_LAW 8296198\7

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No.:  09-CL-7950

---

*ONTARIO*

**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceedings commenced at **Toronto**

---

SUBMISSIONS OF NORTEL NETWORKS UK PENSION TRUST LIMITED AND THE BOARD OF THE PENSION PROTECTION FUND (the "UKPC") ON THE TRIAL PROTOCOL (FOR JOINT PRE-TRIAL CONFERENCE AT 1:00 P.M. ON WEDNESDAY, MARCH 12, 2014)

---

**THORNTON GROUT FINNIGAN LLP**
100 Wellington Street West, Suite 3200
Toronto, ON   M5K 1K7

**John L. Finnigan (LSUC# 24040L)**
**Michael Barrack (LSUC# 21941W)**
**D.J. Miller (LSUC# 34393P)**
Tel:    (416) 304-1616
Fax:    (416) 304-1313

Lawyers for the Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund