## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
                            :

*In re*                              :

Nortel Networks Inc., *et al.,*[1]   :

               Debtors.    :

                            :

                            :
----------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Re: D.I. 13132, 13138**

## RESPONSE OF THE US INTERESTS TO THE SUBMISSION OF THE UK PENSION CLAIMANTS REGARDING THE ALLOCATION OF TRIAL TIME

       1.      Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "US Debtors"), together with the Official Committee of Unsecured Creditors of the US Debtors (collectively, the "US Interests"), submit this response to the submission of the UK Pension Claimants dated March 10, 2014.[2]

       2.      The UK Pension Claimants' request that trial time not be divided equally among the three groups vying for the proceeds of the Nortel group's asset sales – the US Allocation Group, the Canadian Allocation Group and the EMEA Allocation Group – is flawed and unfair. For numerous reasons, it should be rejected.  Among other reasons:

- The UK Pension Claimants are <u>not</u> a 4th allocation group nor do they have an economic interest in allocation even remotely adverse to the EMEA Debtors.  To the contrary, their entire criticism of the EMEA Debtors is

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Contact information for the Debtors and their petitions are available at http://dm.epiq11.com/nortel.

[2]     Unless otherwise noted, capitalized terms used herein shall have the meaning ascribed to them in the Allocation Protocol (D.I. 10565) and Litigation Timetable (D.I. 10566).

that, in the eyes of the UK Pension Claimants, the EMEA Debtors are asking for <u>too little</u>;

- The UK Pension Claimants' allocation theory is directed exclusively and entirely against the US Debtors; accordingly, if the UK Pension Claimants are allocated any additional time to present this theory, due process requires that the US Debtors (and its own creditors) be allocated additional equal time to respond to the UK Pension Claimants' theory;

- The UK Pension Claimants improperly seek reconsideration of the Joint Trial Protocol approved by the Courts on January 29, 2014 (the "<u>Original Protocol</u>"), which clearly and unambiguously provides that allocation trial time would be divided among the US Allocation Group, the Canadian Allocation Group and the EMEA Allocation Group; and

- The UK Pension Claimants' claimed need for time to cross-examine ten US experts is untrue; not only do most US experts offer no opinion adverse to the UK Pension Claimants, but the UK Pension Claimants have submitted an expert report that virtually mirrors some of the US Debtors' expert opinions.

3.      What the US Debtors seek – no more and no less – is equal time.  The proposal advanced by every Core Party other than the UK Pension Claimants (the EMEA Debtors take no position) provides that those seeking to maximize the recovery of the EMEA Debtors will have the same amount of time as those seeking to maximize the recovery of the Canadian Debtors and both will have the same amount of time as those seeking to maximize the recovery of the US Debtors.  The UK Pension Claimants alone want to alter that balance and provide themselves (and the CCC) with a separate and unbalanced opportunity to advocate theories aimed exclusively against the US Debtors.

## <u>ARGUMENT</u>

## I.      <u>The UK Pension Claimants Are Not Adverse To The EMEA Debtors</u>

4.      In order to pursue their inequitable request that the US Debtors be allocated significantly less time to advance their allocation theories than their adversaries – a request supported by no other Core Party in this allocation litigation, including the CCC (with whom the

UK Pension Claimants propose to form a 4th group) – the UK Pension Claimants misstate the alignment of the Core Parties.

5.      The proceeds of the Nortel group's asset sales – the subject of the litigation – are to be divided <u>three</u> ways, not four.  Shares of these sales proceeds will be distributed to the US Debtors, the Canadian Debtors and the EMEA Debtors.  The creditors of these debtors – such as the Unsecured Creditors Committee, the CCC, the UK Pension Claimants and the various Bondholder Groups – will receive no allocation of the proceeds; they benefit only derivatively to the extent of the recovery to the debtor(s) which owe them money.

6.      While the UK Pension Claimants may disagree <u>strategically</u> with the EMEA Debtors as to how best to maximize the recovery <u>to the EMEA Debtors</u>, and the UK Pension Claimants may wish to advance a legal theory which the EMEA Debtors do not support (and which has never been adopted by any court and is legally impermissible), they do so in an effort to <u>increase</u> the recovery of the EMEA Debtors (and secondarily the Canadian Debtors, against whom they also have claims) exclusively at the expense of the US Debtors.  The estates have all recognized this and, accordingly, after very drawn-out negotiations, they have agreed to a one-third allocation of trial time to each of the three Allocation Groups.  It would turn the fairness of this proceeding on its head to subtract trial time from the US Debtors so that the UK Pension Claimants and EMEA Debtors can both have distinct time allocations (in the aggregate, twice that of the US Debtors) to present theories aimed at maximizing the recovery of the EMEA Debtors at the expense of the US Debtors.[3]  If anything, the US Debtors should be allocated more than the proposed one-third of the trial time because they, and they alone, have to defend

---

[3]      The CCC – which advances in the alternative the same theory as the UK Pension Claimants – does not seek separate time from the Canadian Allocation Group in order to distort the time balance between the parties supporting theories (however many or distinct) in favor of maximizing the recovery of the Canadian Debtors and those opposing it.  However, the CCC would benefit from the UK Pension Claimants' request.

not only against the theories of each of the other debtor estates but also against the efforts of the UK Pension Claimants and CCC to divert away from the US Debtors recoveries to which even the Canadian Debtors and EMEA Debtors concede the US Debtors are entitled.

7.      Each of the three debtor groups has advanced theories for the allocation of the sales proceeds.  The Canadian Debtors' "bare legal title" theory would provide the Canadian Debtors with an allocation greater than that proposed by the US Debtors or the EMEA Debtors. The EMEA Debtors' "contribution" theory would provide the EMEA Debtors with an allocation greater than that proposed by the US Debtors or the Canadian Debtors.  Finally, the US Debtors' "revenue" theory would provide the US Debtors with an allocation greater than that proposed by the Canadian Debtors or the EMEA Debtors.

8.      The "pro rata" theory (which seeks global substantive consolidation, a term the UK Pension Claimants avoid because of its unprecedented nature) advanced by the UK Pension Claimants and CCC (in the alternative) does not threaten the interests of the EMEA Debtors or Canadian Debtors in any respect; rather, the UK Pension Claimants and CCC say that the US Debtors should not receive the fair market value of what they gave up in the sales transactions (not even the lowest fair market value ascribed to the US Debtors by the other estates) but that the US Debtors should relinquish a portion of the fair market value (under any parties' measure) so that the EMEA Debtors' and Canadian Debtors' recoveries are increased.  There is absolutely no reason why a party such as the UK Pension Claimants that seeks to increase the recovery for the EMEA Debtors should be entitled to advance such arguments outside the equal time allotted to the EMEA Allocation Group (and likewise for a party seeking to increase the recovery for the Canadian Debtors) at the expense of equal time allotted to the US Allocation Group to rebut all theories advanced by members of the EMEA Allocation Group.  Equity and fairness demand

4

otherwise.  No Core Party other than the UK Pension Claimants advocates such an unjust allocation of time, not even the CCC which would be a significant beneficiary of this proposed additional time to the so-called new "pro rata/substantive consolidation" group.

9.      While the UK Pension Claimants may be a thorn in the side of the EMEA Debtors in their desire to devote a portion of the EMEA Allocation Group's time to a baseless theory at the expense of time the EMEA Debtors would prefer to spend on potentially more viable arguments (and may challenge the EMEA Debtors' theories in the process), that does not create adversity with the EMEA Debtors.  Both parties still share the identical desire to maximize the EMEA Debtors' recovery, with the UK Pension Claimants arguing for an even greater recovery than even the EMEA Debtors propose.  Their only disagreement concerns strategy and approach.

## II.      If The EMEA Creditors Are Entitled To Additional Time To Advance Theories To Reduce The Allocation To The US Debtors, The US Creditors Are Entitled To Equal Time To Oppose Those Theories

10.     The fundamental flaw in the UK Pension Claimants' logic suggesting that additional time be dedicated to advancing an additional theory aimed at increasing the allocation to the EMEA and Canadian Debtors and decreasing that to the US Debtors is that any time for a party to advance an additional theory requires a corresponding amount of time for an adversary to oppose that theory.  The UK Pension Claimants suggest that the EMEA Debtors have 31.5 hours to pursue the "contribution" theory and challenge the theories of the US Debtors and Canadian Debtors; the Canadian Debtors have 31.5 hours to pursue the "bare legal title" theory and challenge the theories of the US Debtors and EMEA Debtors; and the US Debtors have 31.5 hours to pursue the "revenue" theory and challenge the theories of the Canadian Debtors and EMEA Debtors.  Were that all, the trial would be fair and equal.  But the UK Pension Claimants then propose that they receive 31.5 hours (together with the CCC) to pursue the "pro rata/substantive consolidation" theory, without the US Allocation Group – the only one against

whom this theory is directed economically – having a single minute to rebut it.  The proposed

Amendment and Supplement to the Joint Trial Protocol submitted to the Courts on March 10,

2014 provides that the allocation portion of the trial shall be divided evenly among the Canadian

Allocation Group, the EMEA Allocation Group and the US Allocation Group, with 42 hours per

group.  Notice of Filing of Proposed Amendment & Supplement to the Joint Trial Protocol Ex.

A, § III.A.2.a, Mar. 10, 2014, D.I. 13132.  The UK Pension Claimants now suggest that there is

seemingly no time within the 42 hours proposed for the EMEA Allocation Group and the 42

additional hours proposed for the Canadian Allocation Group for the pursuit of the UK Pension

Claimants' and CCC's "pro rata/substantive consolidation" theory, and yet that 31.5 total hours

for the US Allocation Group is fair for it to present its "revenue" theory and respond to three

different allocation arguments, "bare legal title," "contribution" and "pro rata/substantive

consolidation" (even though each of the other two groups can use its full time to present and

respond to the arguments of only the other debtors without any need to concern itself with also

rebutting the 31.5 hours used by the UK Pension Claimants).  That is an unreasonable view of

fairness and equity.

   11. If the Court concludes that the "pro rata/substantive consolidation" theory should

be litigated outside the time boundaries for the Allocation Groups to advance and defend against

the estates' allocation theories, then any decision must be applied bilaterally.  If excess time is

granted to the UK Pension Claimants to present opening statements, fact witnesses and experts in

support of "pro rata/substantive consolidation," then equal additional time must be granted to the

US Debtors and their creditors to oppose that theory.  Otherwise, the imbalance will be manifest.

   12. The UK Pension Claimants argue that only they (together with the CCC, which

does not seek the same relief) need additional time because the US creditors are not affirmatively

pursuing a unique allocation theory. But what they fail to acknowledge is that as a result of the UK Pension Claimants' (and CCC's alternate) "pro rata/substantive consolidation" theory, the US creditors will now need to devote time and resources to an <u>additional defense</u> that the US Debtors would otherwise have never needed to pursue to this extent (and which the other estates do not need to do). The US Debtors no more wish to waste their precious time opposing the "pro rata/substantive consolidation" theory than the EMEA Debtors wish for the UK Pension Claimants to spend theirs pursuing it.

13. Even the CCC, which endorses the "pro rata/substantive consolidation" argument in the alternative and with whom the UK Pension Claimants propose to share time, has recognized that the creditor constituencies behind <u>each</u> of the three estate groups must be afforded equal time. As counsel for the CCC (which was concerned that the "pro rata/substantive consolidation" theory may not be sufficiently advanced by the Canadian Debtors) argued at the January 29, 2014 hearing when faced with the prospect that the Bondholder Allocation Group might receive 15 minutes more time than the CCC for opening statements:

> This is about treating major Creditors equally. It's not about historical status that was allocated before the allocation positions came out. We all want to work effectively. We will work with the Canadian allocation group. The Noteholders have worked with the American group, that's fine. That's as it should be. But <u>if we're going to have a carve out time for one group of Creditors, there should be the same for the others.</u>

Tr. of Joint Proceedings 27:1-8, Jan. 29. 2014, D.I. 12935 (emphasis added).

**III.    The UK Pension Claimants Seek To Re-Open The Courts' Decision To Apportion Time At The Allocation Trial Among The US Allocation Group, The EMEA Allocation Group And The Canadian Allocation Group**

14. While the UK Pension Claimants are correct that the precise allocation of time was not determined when the Court approved the Original Protocol in January 2014, the

principles were decided.  Having never disagreed with these principles until one week ago, the

UK Pension Claimants now seek to overturn them.  The Original Protocol was approved by the

Courts following a hearing on January 29, 2014.  While that protocol left the precise amount of

time open (it was unknown at that time how long the trial would be as one of the issues on the

hearing agenda was the request of the EMEA Debtors and UK Pension Claimants for a longer

trial), it unambiguously provided for allocation trial time to be divided among the three

Allocation Groups and for claims trial time to be divided among the two claimants and one

defendant group.  As Section II.A.2 provides:

> The US Allocation Group shall be entitled to [●] hours, the
> Canadian Allocation Group shall be entitled to [●] hours, the
> Canadian Claims Defendant Group shall be entitled to [●] hours,
> the EMEA Allocation Group shall be entitled to [●] hours, the
> EMEA Claimants shall be entitled to [●] hours, and UK Pension
> Claimants shall be entitled to [●] hours.[4]

Notice of Filing of Proposed Joint Trial Protocol Ex. A, § II.A.2, Jan. 24, 2014, D.I. 12863; see

also id. § II.A.2.a (stating that "[e]ach Allocation Group . . . shall have no restriction on how" it

wishes to "use or allocate" its "time allocation[] among members").  Indeed, in their submission

advocating bifurcation of the allocation and claims phases of the trial, the UK Pension Claimants

themselves assumed that the trial time would be split by Allocation Group for the allocation

phase of the trial.  See Notice of Filing of Courtesy Copy Pursuant to Section 12(d) of the Cross-

Border Insolvency Protocol of a Doc. Filed in the Canadian Proceedings by the Nortel Networks

UK Pension Trust Ltd. & the Board of the Pension Protection Fund Ex. A, ¶ 39, Jan. 24, 2014,

D.I. 12874.

---

[4]      There is no question that the UK Pension Claimants are part of the EMEA Allocation Group.  See Order
Entering Litigation Timetable & Disc. Protocol Plan Ex. 1, Annex A, at 11, May 17, 2013, D.I. 10566-1 (defining
"EMEA Allocation Group" to include "[t]he UK Pension Claimants").

15.     The UK Pension Claimants not only seek for the Court to impose what their own "pro rata/substantive consolidation" "partner," the CCC, has disavowed, but they now contradict their own statements to this Court.  For example, barely more than a month ago when the Courts considered the proposed Original Protocol, the UK Pension Claimants acknowledged that it "makes sense" to treat Allocation Groups as "parties in interest," because "ultimately, in the allocation trial, <u>what everybody is trying to do, presumably, is get the most money into their own Estate</u>."  Tr. of Joint Proceedings 43:13-16, Jan. 29, 2014, D.I. 12935 (emphasis added).  While the UK Pension Claimants now complain that they "should not have to split [their] trial time on Allocation with a party advancing a different theory," <u>see</u> Notice of Filing of Courtesy Copy Pursuant to Section 12(d) of the Cross-Border Insolvency Protocol of a Doc. Filed in the Canadian Proceedings by the Nortel Networks UK Pension Trust Ltd. & the Board of the Pension Protection Fund Ex. A, ¶ 8, Mar. 10, 2014, D.I. 13138 ("<u>UKP Submission</u>"), for the past year (during all of which time the UK Pension Claimants, but not the EMEA Debtors, have pursued the "pro rata/substantive consolidation" theory), the UK Pension Claimants have conceded that they are "<u>obviously</u>" aligned with EMEA on "certain issues like allocation," <u>see</u> Tr. of Proceedings 111:20-21, Apr. 24, 2013, D.I. 10324 (emphasis added).  The UK Pension Claimants' 11th hour reversal, and effort to dramatically alter the balance of the trial against the US Allocation Group, should be rejected.

16.     Incidentally, the UK Pension Claimants distort the US Debtors' position in stating (without citation) that the US Debtors were allegedly "adamant in their support of a twenty-day trial for both Allocation and Claims."  UKP Submission ¶ 10 (emphasis omitted).  To the contrary, the US Debtors explicitly "defer[red]" to the UK Pension Claimants and EMEA Debtors on this issue, as it was exclusively related to these parties' adjudication of the claims

against Canada.  See Tr. of Joint Proceedings 12:7-13, Jan. 29, 2014, D.I. 12935.  In any event, while the US Debtors remain ready, willing and able to present their case within whatever time limits are adopted by the Courts, the critical premise is that the time be allocated fairly and equally.

17.     Finally, the US Interests note that the UK Pension Claimants have endorsed the ratio of time for allocation opening statements in the proposed Amendment and Supplement to the Joint Trial Protocol for the Court to consider at today's hearing – 2.25 hours for the US Allocation Group and Bondholder Allocation Group and an aggregate of 4.5 hours for the EMEA Allocation Group, Canadian Allocation Group and UK Pension Claimants/CCC, double the time afforded to the US Allocation Group and its creditors.[5]  That is the same ratio the US Interests, and every Core Party other than the CCC, request that the Court adopt for the entire allocation trial.

## IV.    The UK Pension Claimants Do Not Have A Separate Need To Cross-Examine 18 Adverse Experts

18.     In order to advance their argument to drastically tip the balance of the trial – such that only the Canadian and EMEA creditors will have additional time to present arguments against the US Debtors, but the US Debtors and their creditors will not have equal time to defend against those arguments – the UK Pension Claimants present a distorted record to this Court. For example, the UK Pension Claimants' submission asserts that they face 18 adverse experts, see UKP Submission ¶ 38(d), ten of which were proffered by the US Debtors, id. ¶ 34(a).  This disregards that some of the US Debtors' experts have filed reports that are completely consistent with the UK Pension Claimants' trial positions.  For example, Dan Bereskin's opinions on behalf of the US Debtors reach conclusions that aligned with those reached by the UK Pension

---

[5]      The EMEA Debtors' proposal preserves these same ratios, but doubles the amount of time.

Claimants' Bruce Stratton.  At least three other US experts submitted reports solely to rebut

Canadian positions with which the UK Pension Claimants also presumably disagree and thus it is

unclear what cross-examination of these witnesses the UK Pension Claimants contemplate.  All

parties will have to contend with numerous fact and expert witnesses.  This is not a reason to

create a fourth allocation group and to afford a creditor aligned with the EMEA Debtors

additional time at the expense of the US Debtors and its creditors.[6]

## **CONCLUSION**

19.    For the foregoing reasons, the UK Pension Claimants' request that trial time not

be divided equally among the three Allocation Groups should be rejected and the equal

allocation of time by Allocation Group endorsed by every other Core Party should be adopted.


Dated:  March 12, 2014          CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware
                                Howard Zelbo (admitted *pro hac vice*)
                                James L. Bromley (admitted *pro hac vice*)
                                Jeffrey A. Rosenthal (admitted *pro hac vice*)
                                Lisa M. Schweitzer (admitted *pro hac vice*)
                                One Liberty Plaza
                                New York, New York 10006
                                Telephone:  (212) 225-2000
                                Facsimile:  (212) 225-3999

                                - and -

---

[6]      Finally, while the Court need not consider the merits of the UK Pension Claimants' plea for "pro rata/substantive consolidation" in order to reject the UK Pension Claimants' request for the reasons stated above, as the Court will soon learn, the UK Pension Claimants' pursuit of their "pro rata/substantive consolidation" theory has been a waste of the Court's time and resources at significant expense.  The UK Pension Claimants' proposed international substantive consolidation would be unprecedented.  There is simply no basis for this Court to eschew an allocation to the US Debtors of the fair market value of what they gave up in the asset sales in favor of a "pro rata" distribution whose effect is to substantively consolidate distinct debtors worldwide.  See, e.g., In re Owens Corning, 419 F.3d 195, 211 (3d Cir. 2005) ("[B]ecause substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise, this 'rough justice' remedy should be rare and, in any event, one of last resort after considering and rejecting other remedies (for example, the possibility of more precise remedies conferred by the Bankruptcy Code)." (emphasis added)).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and the Debtors in Possession*

- and -

AKIN GUMP STRAUSS HAUER & FELD LLP

Fred Hodara (admitted *pro hac vice*)
David Botter (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

- and -

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Christopher M. Samis*
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Official Committee
of Unsecured Creditors*