IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          )   Case No. 09-10138(KG)
                                )   (Jointly Administered)
                                )
Nortel Networks, Inc., et.al.,) Chapter 11

                                )   Courtroom 3
                                )   824 Market Street
            Debtors.            )   Wilmington, Delaware
                                )
                                )   March 12, 2014
                                )   1:00 p.m.


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDGE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:                Morris Nichols Arsht & Tunnell, LLP
                            BY: DEREK ABBOTT, ESQ.
                            BY: ANN CORDO, ESQ.
                            1201 North Market St., 18th Floor
                            Wilmington, DE  19899-1347
                            (302) 351-9357

                            Cleary Gottlieb Steen & Hamilton
                            BY: JEFFREY ROSENTHAL, ESQ.
                            BY: JAMES BROMLEY, ESQ.
                            One Liberty Plaza
                            New York, NY  10006
                            (212) 225-2000

ECRO:                       GINGER MACE

Transcription Service:      DIAZ DATA SERVICES
                            331 Schuylkill Street
                            Harrisburg, Pennsylvania 17110
                            (717) 233-6664
                            www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

For the Unsecured
Creditors' Committee:          Richards Layton & Finger
                               BY: CHRISTOPHER SAMIS, ESQ.
                               One Rodney Square
                               920 North King Street
                               Wilmington, DE  19801
                               (302) 651-7531

                               Akin Gump Strauss Hauer & Feld
                               BY: FRED HODARA, ESQ.
                               BY: ROBERT JOHNSON, ESQ.
                               One Bryant Park
                               New York, NY  10035
                               (212) 872-1000

For the EMEA
Debtors, Joint
Administrators:                Hughes Hubbard & Reed LLP
                               BY: FARA TABATABAI, ESQ.
                               BY: BILL MAGUIRE, ESQ.
                               BY: NEIL OXFORD, ESQ.
                               One Battery Park Plaza
                               New York, NY  10005
                               (212) 837-6068

                               Young Conaway Stargatt & Taylor
                               BY: JAIME CHAPMAN, ESQ.
                               BY: JOHN DORSEY, ESQ.
                               Rodney Square
                               1000 North King Street
                               Wilmington, DE  19801
                               (302) 571-6000

For the Monitor:               Buchanan Ingersoll & Rooney, PC
                               BY: KATHLEEN A. MURPHY, ESQ.
                               1105 North Market St., Ste. 1900
                               Wilmington, DE  19801-1054
                               (302) 552-4214

Wilmington Trust
Indenture Trustee:             Katten Muchin Rosenman, LLP
                               BY: DAVID CRICHLOW, ESQ.
                               575 Madison Avenue
                               New York, NY
                               (212) 940-8800

APPEARANCES:
(Continued)

For Ad Hoc Bondholder
Group:                          Pachulski Stang Ziehl & Jones
                                BY: PETER J. KEANE, ESQ.
                                919 North Market Street
                                17th Floor
                                Wilmington, DE  19801
                                (302) 778-6462

For Canadian Creditors
Committee:                      DLA Piper, LLP, U.S.
                                BY: SELINDA A. MELNIK, ESQ.
                                919 N. Market St., Ste. 1500
                                Wilmington, DE  19801
                                (302) 468-5650

For Ad Hoc Bondholder
Group:                          Milbank Tweed Hadley & McCloy
                                BY: ANDREW LEBLANC, ESQ.
                                One Chase Manhattan Plaza
                                New York, NY  10005
                                (212) 530-5000

For UK Pension
Claimants:                      Bayard, PA
                                BY: JUSTIN R. ALBERTO, ESQ.
                                222 Delaware Ave., Ste. 900
                                Wilmington DE  19899
                                (302) 429-4226

                                Willkie Farr & Gallagher, LLP
                                BY: BRIAN O'CONNOR, ESQ.
                                BY: SAMEER ADVANI, ESQ.
                                787 Seventh Avenue
                                New York, NY  10019-6099
                                (212) 728-8000

For Law Debenture:              Morris James LLP
                                BY: STEPHEN M. MILLER, ESQ.
                                500 Delaware Avenue, Ste. 1500
                                Wilmington, DE  19801-1494
                                (302) 888-6853

                                Patterson Belknap Webb & Tyler
                                BY: DANIEL LOWENTHAL, ESQ.
                                1133 Avenue of the Americas
                                New York, NY  10036
                                (212) 336-2720

APPEARANCES:
(Continued)

For Ernst & Young, Inc.,
as Monitor for Canadian
Debtors:                    Allen & Overy
                            BY: LAURA HALL, ESQ.
                            BY: DANIEL GUYDER, ESQ.
                            1221 Avenue of the Americas
                            New York, NY  10020
                            (212) 610-6417


For Lead Plaintiffs:        Lowenstein Sandler, LLP
                            BY: MICHAEL ETKIN, ESQ.
                            65 Livingston Avenue & 6 Becker
                            Farm Road
                            Roseland, NJ  07068
                            (973) 597-2313


                            Cross & Simon, LLC
                            BY: CHRISTOPHER SIMON, ESQ.
                            913 North Market St., 11th Floor
                            P. O. Box 1380
                            Wilmington, DE  19899-1380
                            (302) 777-4200

TELEPHONIC APPEARANCES:

For Monitor, Ernst &
Young:                      Allen & Overy, LLP
                            BY: JOSEPH BADTKE-BERKOW, ESQ.
                            (212) 610-6300


Creditor, Official
Committee of Unsecured
Creditors:                  Akin Gump Strauss Hauer & Feld, LLP
                            BY: DAVID BOTTER, ESQ.
                            (212) 872-1055
                            BY: MATTHEW FAGEN, ESQ.
                            (212) 872-8051
                            BY: BRAD KAHN, ESQ.
                            (212) 872-8121


For Nortel Networks UK
Pension Trust:              Hogan Lovells US, LLP
                            BY: MATTHW BULLEN, ESQ.
                            (212) 728-8881
                            BY: ANGELA DIMSDALE-GILL, ESQ.
                            (212) 728-3135

TELEPHONIC APPEARANCES:
(Continued)

For Wilmington Trust:        Katten Muchin Rosenman, LLP
                             BY: KAAREN B. DINE, ESQ.
                             (212) 940-8772


Representing Superintendent
Of Financial Services,
as Administrator:            Paliare Roland & Rosenberg
                             BY: LILY HARMER, ESQ.
                             (416) 646-4304


For Nortel Cont.
Employees:                   Shibley Righton, LLC
                             BY: ARTHUR JACQUES, ESQ.
                             (416) 214-5213


For The Bondholder
Group:                       Milbank Tweed Hadley & McCloy, LLP
                             BY: THOMAS MATZ, ESQ.
                             (212) 530-5885

For Nortel Networks,
Inc., et al., and
Canadian Nortel
Debtors:                     Cleary Gottlieb Steen & Hamilton
                             BY: JEREMY R. OPOTSKY, ESQ.
                             (212) 225-2924


For Canadian Board of
Directors:                   Osler, LLP
                             BY: BETSY PUTNAM, ESQ.
                             (416) 862-6835


For Nortel Networks,
Inc.:                        Tory's LLP
                             BY: ADAM SLAVENS, ESQ.
                             (416) 865-7333


For CAW Canada and
George Borosh, et.al.:    CAW Canada
                             BY: BARRY WADSWORTH, ESQ.
                             (416) 495-6564


For Joint
Administrators:              Herbert Smith
                             BY: JOHN WHITEOAK, ESQ.
                             (302) 571-6710

TELEPHONIC APPEARANCES:
(Continued)

For UK Pension
Claimants:                    Thornton Grout Finnigan, LLP
                              BY: MICHAEL S. SHAKRA, ESQ.
                              (416) 304-0332

For Interested Party:         Aurelius Capital Management LP
                              BY: MATTHEW A. ZLOTO
                              (646) 445-6518

For Interested Party:         Dow Jones
                              BY:  JACQUELINE C. PALANK
                              (312) 750-4128

For Interested Party:         Covalent Partners
                              BY: JONATHAN BARNETT, ESQ.
                              (617) 658-5527

For Interested Party:         Stone Lion Capital Partners
                              BY: JUSTIN BRASS
                              (212) 846-1242

For Interested Party:         Bank of America
                              BY: ESTHER CHUNG
                              (646) 855-6705

For Interested Party:         Reorg Research, Inc.
                              BY: KENT COLLIER
                              (212) 257-4383

For Interested Party:         Farallon Capital Management
                              BY: MICHAEL LINN
                              (415) 421-2132

For Interested Party          Cassels Brock & Blackwell, LLP
                              BY: MICHAEL J. WUNDER, ESQ.
                              (416) 860-6484

1

1   WILMINGTON, DELAWARE, WEDNESDAY, MARCH 12, 2014 1:00 P.M.

2              THE COURT:  Justice Newbould, Kevin Gross in the

3   Courtroom.

4              JUSTICE NEWBOULD:  I'm here, and also sitting in

5   for continuity sake is Justice Morawetz.

6              THE COURT:  I hear him laughing in the background.

7                      (Laughter)

8              JUSTICE NEWBOULD:  I'm going home to shovel some

9   more snow.

10              THE COURT:  All right.  This is clearly our next

11   Pre-Trial Conference in the matter and good afternoon, Mr.

12   Abbott.

13              MR. ABBOTT:  Good afternoon, Your Honor.  Good

14   afternoon, Mr. Justice Newbould and Mr. Justice Morawetz.  We

15   are here, Your Honor, on --

16              JUSTICE NEWBOULD:  Excuse me.  Can I say something

17   before you -- excuse me.  Can I just say something before you

18   get warmed up?  We've got one hour for this.  We have to stop

19   at the end of an hour because I'm sitting in a trial today so

20   if you could all judge your comments accordingly, please.

21              MR. ABBOTT:  Thank you, Your Honor.  Your Honor, I

22   know that there was a Chapter 15 hearing set for the same

23   time.  We assume we'll take that up after the Pre-Trial?

24              THE COURT:  That's right.

25              MR. ABBOTT:  I'll cede the podium to Mr. Rosenthal

1  then who will --

2          THE COURT:  All right.  Thank you.

3          MR. ABBOTT:  -- lead for the U.S. Debtors, Your

4  Honor.

5          THE COURT:  Very well.  Thank you, Mr. Abbott.

6  Mr. Rosenthal, good afternoon.  I know we have a lot of

7  different issues to cover.

8          MR. ROSENTHAL:  Good afternoon, Your Honor.  I

9  will be as quick and efficient as can be.

10          THE COURT:  All right.  Just to recap where we

11  were earlier this year and where we are today, because I

12  think that sets the stage for things.  As you know, we were

13  before the Courts in late January --

14          THE COURT:  Yes.

15          MR. ROSENTHAL:  -- to present the Proposed Joint

16  Trial Protocol in which the parties agreed on virtually every

17  issue and we left a few issues open for today's Conference,

18  and just highlighting what we covered in January was the

19  parties had agreed on the timing and procedures for Pre-Trial

20  Affidavits, for exhibits, for deposition designations, and

21  for Briefs.  We agreed on procedures for submission of expert

22  reports, a commitment to try to prepare a common agreed-upon

23  stipulated facts and Confidentiality Order.  We discussed the

24  timing and substance of Pre-Trial Motions and detailed

25  sequencing of opening statements, fact witnesses, and experts

1  at trial and procedures for them.  We addressed post-trial

2  submissions and closing arguments and a number of other

3  miscellaneous and logistical details.

4         As a housekeeping matter, and we can deal with it

5  at the end of the hearing, the Courts approved, with an

6  amendment that was agreed upon on the record, the Joint

7  Proposed Trial Protocol but I don't believe it's yet been

8  entered by either Court.  So we'll have a Proposed Order at

9  the end of this to ask that --

10         JUSTICE NEWBOULD:  I had a question about that.  I

11  saw that in the Factum or Brief, but I wasn't quite sure how

12  that got approved by the Courts.  I haven't seen anything.

13         MR. ROSENTHAL:  Your Honor, I believe that it was

14  approved orally in the transcript of the hearings.  We were

15  making one change to footnote one to delete most of that

16  footnote as a result of a disagreement primarily between the

17  CCC and the Bondholders, and I just don't know that the

18  amended Proposed Protocol ever got formally submitted to the

19  Court for entry.

20         THE COURT:  I think that's right.  That's right,

21  Mr. Rosenthal.

22         JUSTICE NEWBOULD:  Because I sat and listened in

23  on that conference call.  I was a silent person there, and I

24  don't recall hearing any approval, but you might be right.

25         MR. ROSENTHAL:  So for the March hearing, Your

1   Honors, the parties left and agreed to meet and confer

2   further on the primary open issues, and I'm pleased to say

3   that, with some limited exceptions that will be addressed

4   today, we again were able to largely reach agreement on them.

5   And what has been submitted to this Court by the U.S. Debtors

6   and what was submitted to the Canadian Court by the Monitor

7   and Canadian Debtors is an amendment and supplement to the

8   Joint Trial Protocol, and that addresses in further detail

9   fact Affidavits and examinations, expert examinations, trial

10  time and sequencing, and opening statements.

11          And before I get to the few areas of disagreement,

12  Your Honors, I just want to spend a moment on trial

13  sequencing because, obviously, it's most critical that it be

14  acceptable to the Courts how we've decided to allocate trial

15  time.  What the parties have jointly proposed, in light of

16  the suggestion from the Courts back in January that an

17  increase from the original plan of 20 days to 30 to 35 days

18  would be acceptable to the Courts in order to accommodate

19  Claims, we have collectively decided to propose a trial that

20  begins on May 12th.  It would run consecutive weekdays that

21  are non-holidays, obviously taking a break if the Courts ever

22  decide, for scheduling purposes if they needed, we would go

23  through allocation, in which we would have actually opening

24  statements on allocation, followed by opening statements on

25  Claims, following which we would have all of the fact

1    witnesses, because there's a lot of intermingling of the fact

2    witnesses, and this is also in the January Protocol as well.

3    We would then have the allocation experts, and that would

4    close the allocation record.  The thought would be that if

5    there's an opportunity for a break between the two, I think

6    the parties that are involved with the Claims would like to

7    see there be at least some brief break to prepare for the

8    next stage, following which, I don't know that the U.S. Court

9    needs to be involved because they would then proceed with the

10    remaining time for the Claims, specifically, the Claims

11    experts for the EMEA Claims and for the UKP Claims.  Again,

12    the exact structure is set out in the January Proposed Joint

13    Protocol.

14              THE COURT:  Let me just interrupt you for one

15    moment, Mr. Rosenthal.  The openings beginning May 12 would

16    include both allocation and Claims?

17              MR. ROSENTHAL:  The parties that are involved in

18    the Claims, and as you know, the U.S. Debtors are not, the

19    parties that are involved in the Claims have said that

20    because the evidence is going to deal with both --

21              THE COURT:  Yes.

22              MR. ROSENTHAL:  -- allocation and Claims, because

23    that way witnesses won't have to be called back or anything

24    like that --

25              THE COURT:  Understood.  That's right.

1      MR. ROSENTHAL:  -- that they would like to open on

2   Claims as well rather than defer a Claims opening until

3   later.

4      THE COURT:  Good.

5      MR. ROSENTHAL:  So there are three main areas of

6   disagreement to be addressed today, Your Honors.

7      THE COURT:  Yes.

8      MR. ROSENTHAL:  First, is the U.K. Pension

9   Claimants have essentially requested that there be a fourth

10  Allocation Group for trial purposes involving the UKP and the

11  CCC, seeking a pro-rata distribution, which is the equivalent

12  of global substantive consolidation, and I would address that

13  first.

14      The second is that there is some disagreement on

15  page limits for Affidavits and Briefs, and also some

16  disagreement about the amount of time to be devoted for

17  opening statements, which I would like to address second

18  after all the parties who wish to weigh in on the first issue

19  do.

20      THE COURT:  Yes.

21      MR. ROSENTHAL:  And then the third issue is

22  primarily a disagreement between the EMEA Debtors and the

23  Canadian Debtors, and I would let one of those parties

24  present that after the first two issues are addressed.

25      So if it's okay with the Court, then I would

1  proceed right now with just a brief discussion of the UKP's

2  request.

3         THE COURT:  All right.  And obviously, the Courts

4  will have perhaps some comments, particularly on the trial

5  days because of the scheduling issue that Justice Newbould

6  has.  So we'll discuss that as well.

7         MR. ROSENTHAL:  So, Your Honor, with respect to

8  the allocation of time --

9         THE COURT:  Yes.

10        MR. ROSENTHAL:  -- our understanding had been that

11 this was resolved throughout the case and memorialized in the

12 January Joint Trial Protocol where Section 282 explicitly

13 provides that the U.S. Allocation Group shall be entitled to

14 blank hours.  The Canadian Allocation Group shall be entitled

15 to blank hours.  The Canadian Claims Defendant Group, because

16 there's a separate bucket of time for Claims, shall be

17 entitled to "X" hours.  The EMEA Allocation Group shall be

18 entitled to blank hours.  The EMEA Claimants shall be

19 entitled to blank hours.  And the U.K. Pension Claimants

20 shall be entitled to blank hours.  And that's how we've been

21 litigating this case, Your Honor, with respect to the three

22 Allocation Groups because, in fact, you really have three,

23 and only three, essential parties or groups that are vying

24 for the proceeds of the Nortel Group's assets sales.  You

25 have the U.S. Group, and obviously its Creditors that would

1    share in whatever recovery goes to the U.S. Group.

2         THE COURT:  So that covers the Committee as well as the

3    Bondholders?

4              MR. ROSENTHAL:  The Bondholders are recovering

5    from the U.S. Group --

6              THE COURT:  Right.

7              MR. ROSENTHAL:  -- and the Canadian and you've got

8    -- yes, the Unsecured Creditors here.  You've got, in Canada,

9    you've got the CCC and other Canadian Creditors, such as the

10   Bondholders there, such as the U.K. Pension Claimants have

11   Claims in Canada as well, and they would share in whatever

12   recovery goes -- in fact, the U.S. Debtors have a claim in

13   Canada.  They would share in whatever recovery goes to the

14   Canadian Estates.  And the EMEA Debtors have their own

15   Unsecured Creditors.  They have the U.K. Pension Claimants.

16   And, therefore, the division, as the parties have always been

17   working so far in this case, has been based upon the

18   Allocation Groups and those seeking an allocation to a

19   particular Group.  The U.K. Pension Claimants, just last week

20   for the first time, have proposed that there actually be a

21   fourth Allocation Group because the U.K. Pension Claimants

22   say well, they are pursuing a different theory than the EMEA

23   Debtors, one of pro-rata distribution or substantive

24   consolidation, and they say that the CCC is pursuing, as an

25   alternate, a different theory from the Canadian Monitor and

1    Debtors, which is also the same pro-rata substantive

2    consolidation, and they say that there should be a Group

3    formed of the UKP and I guess the CCC would kind of straddle

4    two different Groups, depending on which theory they're

5    advancing at a particular point in time.  And the critical

6    problem that we have with that, Your Honor, is they're not

7    adverse to the EMEA Debtors.  They may have different

8    strategies.  They may have different theories that they wish

9    to advance.  But at the end of the day, they're looking to,

10   in fact, increase the recovery to the EMEA Debtors and the

11   CCC, in pursuing that same theory.  They're doing so not

12   because of any adversity, but they're doing so for the

13   purpose of increasing the recovery.  So the breakdown still

14   needs to be the same of those parties that are seeking

15   recoveries from the lockbox proceeds.

16        The other important reason, Your Honor, why we

17   need to keep it by the Allocation Groups is that Allocation

18   Groups need to respond.  It's not merely an opportunity to

19   present -- and, in fact, the opportunity to respond to other

20   parties' theories is even more important because this trial,

21   the Direct Testimony is coming in by Affidavit.  It's the

22   opposition to these theories that need the time to be

23   explored.  The expert reports are going to come in.  Parties

24   can, if they wish, direct their own experts, but it's the

25   cross-examination that we need the time to do.  So the fact

1   that the EMEA Debtors and the U.K. Pension Claimants want to

2   advance two different theories to maximize the proceeds for

3   the EMEA Debtors means, in a sense, twice as much work for

4   the U.S. Debtors.  We're going to have to cross-examine the

5   EMEA witnesses and we're going to have to cross-examine the

6   U.K. Pension witnesses, and we're going to have to cross-

7   examine the EMA experts and the U.K. Pension experts, and the

8   Canadian Monitor and Debtor's witnesses and experts and the

9   CCC's fact witnesses and experts.  So as much as they want

10  more time to present an alternate theory, we would certainly

11  need the same amount of time.  So the Court can obviously

12  divide this if you want by saying well, we could allocate a

13  third, a third, a third to the three Estates and then have a

14  separate allocation of time for the advancement and the

15  defense of the pro-rata substantive consolidation theory.

16  We'd probably end up in that case with the U.S. Debtors

17  getting more like 40 percent of the time.  But I think, for

18  simplicity, just having a third, a third, a third makes the

19  most sense here and that's what we advocate.  And I would

20  just remind the Court, and we quoted it in the submission

21  that we made this morning, of the comments made by the CCC,

22  which does not join with the UKP in this request.  But Mr.

23  Ziegler, in the January hearing, when there was a dispute

24  over 15 minutes of time that the Bondholders wanted to

25  reserve for their opening statement, and there was a

1   disagreement, Mr. Ziegler said this is about treating major

2   Creditors equally.  It's not about historical status that was

3   allocated before the allocation positions came out.  We all

4   want to work effectively.  We will work with the Canadian

5   Allocation Group.  The Noteholders have worked with the

6   American Group.  That's fine.  That's as it should be.  But

7   if we're going to carve out time for one group of Creditors,

8   there should be the same for the others, and therefore, if

9   we're going to start having more groups than just the

10  Allocation Groups, any amount of time given to either the CCC

11  or the UKP needs to be matched by those Creditors for the

12  U.S. Estates that would be opposing these theories.  And I

13  think, with that, I can cede the podium.

14          THE COURT:  Well, let me just ask you this, Mr.

15  Rosenthal, so I'm clear.  Won't these alternative theories be

16  advanced in the affirmative Declarations and papers that are

17  already being submitted?  In other words, where the time

18  increase might arise would be in the cross-examination of

19  witnesses.

20          MR. ROSENTHAL:  Precisely, Your Honor.  There's

21  no shortage of opportunity for the theories to be presented.

22  The experts have written their reports.

23          THE COURT:  Right.

24          MR. ROSENTHAL:  They will be submitted.  The fact

25  witnesses will be submitting fact Affidavits.  While the UKP

```
 1   would like time on their own to be able to cross-examine

 2   perhaps the U.S. witnesses or any other Estates witnesses,

 3   we would, likewise, need that time to cross-examine the UKP

 4   witnesses and the UKP experts, and the same with the CCC,

 5   without whom we would have a much more easy and efficient

 6   job in this case, because we would only have to be tacking

 7   the EMEA theories and the Canadian theories.  So our work

 8   has increased more so, in many respects, than with the UKP,

 9   and the CCC doesn't say it, but what the UKP says that they

10   need.

11             THE COURT:  All right.  Thank you, Mr. Rosenthal.

12             MR. ROSENTHAL:  Thank you.

13             JUSTICE NEWBOULD:  I guess, Judge Gross, we

14   should hear from Counsel for the U.K. Pension Claimants.

15             THE COURT:  Yes.

16             MR. O'CONNOR:  Yes, good afternoon, Justice --

17   Judge Gross and Justice Morawetz and Justice Newbould.

18   There are a number of points I would disagree with Mr.

19   Rosenthal on, but in the interest of time and efficiency, I

20   will defer to my Canadian colleague, John Finnigan, who will

21   present the UKP's position.

22             THE COURT:  Thank you.

23             MR. FINNIGAN:  Thank you, Mr. O'Connor.  It's

24   John Finnigan, for the UKP, and Your Honor Judge Gross, can

25   you hear us okay?
```

1      THE COURT:  Very clearly.  Thank you.

2      MR. FINNIGAN:  Thank you.  So I will respond as

3  briefly as I can to Mr. Rosenthal's submissions, and we

4  disagree fundamentally, as you'll appreciate from our

5  submission that we filed on Monday, with what Mr. Rosenthal

6  has submitted this morning.  We're not advocating the

7  creation of another Allocation Group.  The Allocation Group

8  concept was created for discovery purposes, as we outlined

9  in our Brief, and it made sense for the discovery purposes.

10  We're advocating a division of trial time based on the four-

11  case theories that will actually be presented to the Courts.

12      In this case, the Allocation Groups were created

13  before the case was pleaded.  The pleadings have now

14  delineated the four positions that will be presented at

15  trial, and we say that each of those four positions should

16  have an equal opportunity to present its case at trial by an

17  equal sharing of the allocation trial time.  Now, my friend

18  characterizes our position as one of substantive

19  consolidation.  It is not.  We are not advocating that these

20  Estates be consolidated and collapsed.  Rather, what we are

21  saying that is in circumstances where Nortel operated as a

22  single business and where the different entities have for

23  themselves created a common pool of cash, the UKPC pro-rata

24  theory advocates sharing that cash by reference to the

25  unpaid Creditor Claims against each of the entities that

1    made up the one Nortel.

2                  Our premise is that there's no justification for

3    a particular geographic region or entity scooping the pool

4    as advocated by the U.S. and Canada.  Pro-rata is a method

5    of allocating that common pool.  It's not a device to

6    collapse the U.S. and Canadian Estates, but rather an

7    allocation method, a methodology.

8                  So on the second point, it's clear from the

9    papers, we have never agreed to a trial time allocation

10   split a third, a third, and a third, and that's because we

11   submit that this four-way split, based on the way the case

12   will actually be presented, is the more appropriate way to

13   do it.  My friend suggests that there are essentially three

14   groups of Creditors here:  U.S. Creditors, Canadian

15   Creditors, and European Creditors.  But when you examine the

16   Claims made into each of the Estates, it becomes apparent

17   that is not the case.  The U.S. Bondholders have Claims into

18   the U.S. and into Canada.  Our clients have Claims into EMEA

19   and into Canada.  The Unsecured Creditors in the U.S. have

20   Claims into the U.S. and into Canada by virtue of the $2

21   billion allowed Claim into Canada.  So this case does not

22   break down neatly in three groups with three economic

23   interests.  These claims cross over.  And so the Allocation

24   Group methodology is not the appropriate way to divide up

25   the trial.  One should have regard to the amount of work

1    that needs to be done by the parties to present their case

2    theory.  And each of the four parties has three allocation

3    theories, contesting allocation theories, it has to deal

4    with.  It will do so in varying degrees and no one in the

5    room can say that any one theory will take more or less time

6    than another.  And so we would seek an equal division of the

7    trial time so that we can deal with the adverse allocation

8    theories as we see fit.

9            Further, it is not correct to say that we're all

10   lined up with EMEA.

11           JUSTICE NEWBOULD:  Can I just ask you a question,

12   Mr. Finnigan?  You say you want equal division of time to

13   deal with this.  We've heard it's going to be cross-

14   examination.

15           MR. FINNIGAN:  Yes.

16           JUSTICE NEWBOULD:  So what are you saying?  You

17   want as much time as the others to cross-examine on the

18   other theories?

19           MR. FINNIGAN:  Yes, and that's in the context of,

20   you know, you should have some idea the size of the train

21   headed down the tracks.  There are so far, by my count, 23

22   experts on allocation who've delivered 32 reports; 10

23   experts from the U.S. on allocation.  We've got five.

24   EMEA's got three.  Canada's got five.  So the burden of

25   cross-examination, it suggests we may have a greater burden

1    of cross-examination because the U.S. has more experts than

2    we do.  But I agree with my friend that most of this trial

3    will be dealt with cross-examining the witnesses who are

4    called.  And we don't want to be constrained by having our

5    time cut in half to deal with these adverse allocation

6    theories by sharing our time with EMEA, who is advocating

7    eight different allocation theories than we are.  So that's

8    how we see it in basic fairness terms.  And also, just on a

9    more principle level, this is a litigation to divide up the

10   proceeds of the sale of assets amongst the Creditors.  These

11   Estates have been bankrupt for five years.  They haven't

12   operated for three or four years.  So this should be a

13   Creditor-driven process.  It's my client's ox who's going to

14   be gored here.  We are the 80 percent Creditor into EMEA,

15   the 93 percent Creditor into the lead European subsidiary

16   NNUK, and we, thank you very much, would like to advance our

17   own theory to maximize the dollars for our clients.  So we

18   should be the one who have a one-quarter share to advocate

19   the theory that directly impacts our economic interest.

20           THE COURT:  Mr. Rosenthal?

21           MR. ROSENTHAL:  I'll be brief, Your Honor.

22           MR. FINNIGAN:  And if could just give one further

23   point.

24           THE COURT:  I'm sorry, Mr. Finnigan.

25           JUSTICE NEWBOULD:  Well, just a second, Judge

1    Gross.   There's a plane coming in from the bench here.

2                        (Laughter)

3              MR. FINNIGIN:  We also recognize, and they

4    acknowledge, that the Canadian Creditors Committee adopts a

5    form of pro-rata theory as an alternate, and we would be

6    prepared, and we think it's appropriate, that we would share

7    some of our time with them to the extent that the one-

8    quarter time, trial time that we seek, we would share with

9    them so they can advance that theory in support as well.

10   Those are my submissions.

11             THE COURT:  It's dangerous to pause in this

12   matter.

13                        (Laughter)

14             JUSTICE NEWBOULD:  So, Mr. Rosenthal, is there

15   any reply?

16             MR. ROSENTHAL:  Yes.  Very brief, Your Honor, and

17   I believe one of my colleagues up in Canada may have a

18   couple of charts that I'd like to just hand out, with the

19   Court's indulgence, just two charts that are not -- they're

20   not to scale, that just, I think, illustrates the three

21   Estates and also the UKP's alternate theory.  May I

22   approach, Your Honor?

23             THE COURT:  Please.  Please, Mr. Rosenthal.

24   Thank you.

25             MR. ROSENTHAL:  And for my colleague in Canada,

1    it's just the first two charts that I've sent you.  Justice

2    Newbould, let me know when it would be a convenient time to

3    proceed.

4              JUSTICE NEWBOULD:  It's a convenient time.

5              MR. ROSENTHAL:  Okay.  So I've handed out these

6    two charts because I think they really fundamentally

7    illustrate what the UKP and the CCC are advocating for here

8    and why they really have one particular adversary, and these

9    are not to scale because, obviously, none of the parties are

10   advocating a one-third, one-third, one-third split.  But

11   essentially, you have the U.S., EMEA, and Canadian Debtors

12   all agreeing that fair market value is the proper way to

13   divide the assets and they have different theories as to how

14   to determine fair market value.  I'm primarily using the UKP

15   terms.  We don't necessarily adopt these terms of revenue

16   contribution, but the bare legal title we do use.  It's a

17   convenient shorthand for us.  But essentially, what the UKP

18   is doing, which is the second chart, is they are saying that

19   EMEA is selling themselves short and the CCC says Canada's

20   asking for too little.  They're saying squeeze the U.S.

21   piece; give more to the EMEA Debtors; give more to the

22   Canadian Debtors.  So if there's any party that needs equal

23   time to whatever they have to present it to oppose it, it's

24   the U.S. Debtors and the Creditors of the U.S. Debtors.

25              I want to correct one thing that my friend said,

1   by the way.  The Bondholders are not U.S. Bondholders.

2   They're actually Canadian Bondholders of Bonds that were

3   guaranteed by the U.S. Debtors, just to be technically

4   correct here.

5          JUSTICE NEWBOULD:  Mr. Rosenthal?  Mr. Rosenthal?

6          MR. ROSENTHAL:  Yes.  Yes, Justice Newbould?

7          JUSTICE NEWBOULD:  Mr. Finnigan says that the

8   number of expert Affidavits or reports that have been filed

9   for the U.S. side are far more than his Claim.  In fact,

10  he's going to need more time to cross-examine all of them.

11  So I think I'd like to hear you on that.

12         MR. ROSENTHAL:  That's an excellent question,

13  Your Honor.  We went through the expert reports of the U.K.

14  Pension Claimants and we looked at our own and we re-looked

15  at them last night, and in fact, two of them completely

16  agree with each other, and a number of other of our expert

17  reports, I'd say half of them, only have their rebuttal

18  reports that only challenge the Canadian theories; the same

19  theories that U.K. Pension people are challenging.  So I

20  don't even know if cross-examination by U.K. people would be

21  appropriate, but I certainly cannot imagine that at trial

22  the U.K. Pension Claimants are going to have any significant

23  cross-examination of most of the U.S. Debtor's experts.  We

24  only submitted three initial experts; seven rebuttal

25  experts, largely aimed at challenging Canada's theories in

1   the same way that UKP is challenging Canada's theories.  So

2   I think just adding up numbers without looking at substance

3   presents a very misleading picture.

4        I think the last thing that I would just add is

5   the UKP says well, they're only going to have half of one-

6   third of the time to present the substantive consolidation

7   theory, and I understand that my friend says it's pro-rata;

8   it's not substantive consolidation, but in fact, there is no

9   law that endorses "pro-rata".  The only legal framework is

10  substantive consolidation, and we'll obviously brief that at

11  the appropriate time.  We don't have to debate that today.

12  But the Courts will see that soon enough.

13       But in any event, it's not one-half of one-third

14  of the time.  Even if it were, we would still be entitled to

15  that amount to rebut it.  But remember, the CCC is also part

16  of the Canadian Group and they're going to be using their

17  time to advance the same alternate theory.  So you're going

18  to have part of the Canadian Group's time directed to this

19  alternate theory against the U.S.  You're going to have part

20  of the EMEA Group's time on this alternate theory against

21  the U.S.  And the U.S., with our one-third of time, are

22  going to be trying to beat back everyone, challenging the

23  EMEA's contribution theory, challenging the Canadian bare

24  legal title theory, and being the only ones to actively need

25  to challenge the substantive consolidation theory of the CCC

1    and the UKP because they're aimed at us, as this chart

2    shows.  And EMEA's expert report, we didn't put any pages in

3    because we didn't want to have to deal with filing under

4    seal because they're highly confidential at this point.  But

5    EMEA's expert did a nice series of charts to show that under

6    the pro-rata sub-con theory, the only party whose shares of

7    the allocation goes down to below the lowest fair market

8    value assessment put on by any party, the only one whose

9    values go down is the U.S., and that's why we would need

10   time to respond to that.

11             THE COURT:  Well, let me ask this question, Mr.

12   Rosenthal.  Being of the view that fair is not always

13   Equal --

14             MR. ROSENTHAL:  Correct.

15             THE COURT:  -- is there a way to give some relief

16   to the U.K. Pension Proponents by giving some additional

17   time to the U.S. Group?

18             MR. ROSENTHAL:  I think there is, Your Honor, and

19   one thing that you can do in the alternate, but we didn't

20   want to concoct a very complicated formula, is you can say

21   of the allocation trial, "X" percent will be on the three

22   Estates' theories.

23             THE COURT:  Right.

24             MR. ROSENTHAL:  And you divide that one-third,

25   one-third, one-third.  And "Y" percent of the allocation

1    time will be devoted to any party that wants to advance the

2    sub-con theory, and that gets divided equally between the

3    Proponents, meaning CCC and UKP and the Opponents, which is

4    the U.S. Group.

5                    THE COURT:  Right.

6                    MR. ROSENTHAL:  Since we're the only ones

7    economically harm by that theory.  And you then combine

8    those numbers to come up with what the blended times are.

9    You can do that, you know, pretty easily, Your Honor, if you

10   wanted to do it one-third, one-third, one-third, and a 50/50

11   split.

12                   THE COURT:  Right.

13                   MR. ROSENTHAL:  Like I said, when you run those

14   numbers, the U.S. actually ends up with a little bit more

15   than a third, and that's perfectly fine with us if it solves

16   the problem.  We just want to make sure that we are not

17   short-changed by not having the same amount of time that we

18   have to rebut, and it's the key point that the CCC made to

19   Justice Morawetz two months ago.

20                   JUSTICE NEWBOULD:  Could you just repeat this

21   alternate you just said would work?

22                   MR. ROSENTHAL:  Yes.  Justice Newbould, so let's

23   say, hypothetically, you had 21 hours for the trial.

24   Obviously, it's more than that.  But if you had 21 hours,

25   you can say we're going to have this trial devote 15 of

1   those 21 hours to the Estates' theories and 6 of those 21

2   hours to pro-rata sub-con.  And then you say, okay, of the

3   15 hours, let's divide that a third, a third, a third, the

4   EMEA Debtors, the Canadian Debtors and Monitor, and the U.S.

5   Debtors.  And then we take the six hours and you say okay,

6   Proponents, UKP and CCC, get 50 percent.  That's three

7   hours.  And the U.S. Debtors and their Creditors get the

8   other 50 percent three hours.  It's a very easy way to split

9   it.  We thought that for simplicity -- like I said, a third,

10  a third, a third, because of the fact that what UKP is

11  asking for is increase the EMEA share and maybe collaterally

12  increase the Canadian share, because they're right.  They

13  settled with us their Canadian Creditors they hope.  CCC,

14  they're asking for more money for Canada than the Monitor

15  itself is asking.  So that's why the third has a logic and a

16  simplicity to it.  But we would have no objection to

17  subdividing it in those two ways that I just articulated.

18              JUSTICE NEWBOULD:  So what do you say, Mr.

19  Finnigan?

20              MR. FINNIGAN:  I've just heard it now.  I

21  [indiscernible].

22              JUSTICE NEWBOULD:  All right.  And work it out.

23  Right?  I also asked Counsel --

24              UNIDENTIFIED FEMALE:  May I make one comment

25  about that?

1          JUSTICE NEWBOULD:  Sure.

2          UNIDENTIFIED FEMALE:  I mean I'm happy for people

3    to consider that but because the CCC and the Canadian

4    Monitor and Debtors are in the same Group and filing

5    evidence together, I can foresee a potential administrative

6    difficulty with us trying to figure it all out, but I'm not

7    saying we won't attempt to, but we just have to be mindful

8    of the fact that we are adjoined with the CCC for certain

9    purposes and administratively in terms of filing.  And if we

10   start dividing up the time and we have to designate time,

11   you know, that might be one thing.  But if we start trying

12   to deal with evidence, like Affidavits and things like that,

13   it could become problematic.

14         JUSTICE NEWBOULD:  Okay.  What I was going to Ask

15   was I've never seen anything like this in my life, arguing

16   about this sort of thing, but do you all see or see no role

17   for the Trial Judges to sort of make changes as we go along

18   during the trial to achieve some sort of fairness?

19         MR. FINNIGAN:  We absolutely see a role and I

20   think we've expressed a concern throughout the -- we're very

21   concerned about the amount of data that's going to be pushed

22   at you to absorb and your ability to absorb that

23   information.  So, you know, this whole business about who's

24   going to examine which experts, we're just entering a two-

25   week phase where the experts are just now going to be

1   deposed.  And this may not be a popular idea but maybe we

2   should do those depositions and come back and have a better

3   idea of who exactly we think we want to examine at trial and

4   that may inform the time estimate.  But it's all of the

5   parties' discussions around these issues have to be subject

6   to your need to understand the case.

7              JUSTICE NEWBOULD:  Okay.

8              MR. ROSENTHAL:  Justice Newbould, if I could

9   answer your question as well?  Certainly, we see a role for

10  the Courts to manage the process and make adjustments along

11  the way as necessary.  We think that it's equally important

12  though, that at the outset, and this means well in advance

13  of trial now while we're picking trial witnesses, deciding

14  how much Affidavit evidence to put in, we need to have some

15  basic parameters to know, well, am I going to defer an

16  exanimation on this witness because I need to save my time

17  for a later witness.  And changing those numbers on the fly

18  at the trial, if it's a significant change, could cause

19  problems because parties may pass opportunities by or

20  shorten their examinations or shorten what they submit as

21  evidence in the first place.

22              So I would feel it very beneficial to have the

23  Court's guidance now, even if it's, of course, always

24  subject to the Court saying, you know, we're going to stay

25  an hour later today to finish this up and that's okay, you

1  know, obviously, Judges always have the right and that

2  discretion.

3          JUSTICE NEWBOULD:  Okay.  I think we should move

4  on.  Do you agree, Judge Gross, to the next issue?  We don't

5  have much time.  We have to be out of here in 20 minutes.

6          THE COURT:  I do agree with you, Justice

7  Newbould, and let me just say this, and I don't know whether

8  you'll agree or not, but as far as the page limitations are

9  concerned, that seems to me to be something that we don't

10  need a lot of discussion about; that you and I will take a

11  look and try and be fair and decide it.

12          JUSTICE NEWBOULD:  In my own view of page

13  limitations, if I was on one side and someone else wanted to

14  file more pages, I would say be my guest, because at some

15  point, Judges stop reading and amnesty has to come along

16  here so, you know, when people start talking about 250 pages

17  for this and that, my eyes start to glaze but that's up to

18  you folks.

19          MR. ROSENTHAL:  And, Your Honor, in many

20  respects, I do agree with that.  The only place where I

21  would disagree a little is that the proposal that the U.S.

22  opposes is for a total of 1,125 pages of Affidavits; 750

23  opening and 375 Reply Affidavits.  And the problem that we

24  face with that is whether the Judges read it or not, we

25  don't know and we've got to prepare for cross-examination on

1   a very limited amount of time and we think that the trial

2   should be much more efficient.  We say we have depositions

3   of over 100 witnesses.  We've spent a lot of money taking

4   these depositions.  We've got the exhibits.  We could put in

5   the evidence.  And we suggest that 100 pages per Group with

6   50 for Reply would result in a more efficient trial and more

7   practical given the amount of time we have.

8          The only other comment that I would make, Your

9   Honors, is the CCC has said --

10          THE COURT:  Yes.

11          MR. ROSENTHAL:  -- this ought to be done not by

12  Allocation Group, but by party, but they drop one party out,

13  which is the U.S. Creditors.  They say give 150 to the

14  Canadian Monitor and Debtors and 150 to the Chief Creditor

15  Group for Canada, the CCC.  The say give 150 to EMEA Debtors

16  and 150 to UKP, and to respond to all of that, give 150 to

17  the U.S. as a whole, and I think it has to be done by

18  Allocation Group, or if it's not, it has to be done where

19  the U.S. Group -- if we're working well with the Bondholders

20  and we're working well with the UCC, we shouldn't be

21  penalized for that by getting half the number of pages to

22  respond to our adversaries and the evidence that they're

23  putting forth against us.  So we would advocate for as low

24  limits as possible.  We think 150 is reasonable.  But

25  whatever it is, it needs to be divided up into thirds and

1   not the fifths as the CCC proposes.  The Briefs, we also

2   think that opening Briefs, it's an overview of the case.

3   It's not a detailed discussion of evidence.  We think they

4   can be done efficiently; 75 pages per Group, again.  Even if

5   that number is higher, we still think it should be per Group

6   and not per party.  The parties obviously don't have to file

7   one Brief.  They can divide it up among the parties in the

8   Group but it's per group.  And opening statements, we think

9   a day for opening is reasonable.

10          JUSTICE NEWBOULD:  Where do I find --

11          MR. ROSENTHAL:  Yes, Your Honor?  I'm sorry.

12          JUSTICE NEWBOULD:  Where do I find this issue in

13   the materials?

14          UNIDENTIFIED SPEAKER:  Page six of the Monitor's

15   Brief.  There's a chart.  It's the third item on the chart.

16          MR. ROSENTHAL:  The only thing that I would say

17   with respect to the Monitor Chart is they don't have a

18   column for the Bondholders.  They don't have a column for

19   the UCC.  And if they did, those columns would say supports

20   U.S. proposal.  So it makes us look like [indiscernible]

21   when, in fact, that's not the case.  So we would advocate

22   lower limits.  We think it absolutely needs to be on a per

23   group basis to be divided among the parties within that

24   group.  And on openings, we think one day of openings is

25   plenty.  It's just an overview and we would not drag it into

1  two days of openings for allocation.  But we leave it

2  completely to the discretion of the Courts.

3              MR. FINNIGAN:  Your Honor, may I respond?  It

4  seems that my client's name is being taken advantage of but

5  this is a trial where my client's evidence is fact-based.

6  Mr. Rosenthal's client's evidence is expert-based.  He's

7  filed ten expert reports without page limitations, without

8  any of these current limitations.  He has all sorts of

9  evidence for some issues without limitation on the basis of

10 experts or on the basis of deposition transcripts and

11 exhibits.  We're all professionals.  We know how long an

12 Affidavit to put in and we know how long to cross-examine or

13 not cross-examine.  Justice Newbould is absolutely correct

14 in that.  But what we don't want is to be jammed because

15 what happens here is our case is fact-based.  We named five

16 possible witnesses.  The Monitor and Canadian Debtors named

17 six possible witnesses.  These are people who worked for

18 Nortel and had first-hand knowledge, not experts.  The U.S.

19 Debtors, the Bond, and the UCC collectively named four fact

20 witnesses, but showed up with ten expert reports.  You can't

21 put limits on one type of evidence and then put no limits on

22 the other type.  I think the best way to deal with it,

23 frankly, would be we will govern ourselves with knowing that

24 we all have limits on what we can read.  With 150 pages

25 maximum per group that wants to put evidence in, there's

1  only five groups that said they have live witnesses to put

2  in.  The reason the UCC and the Bonds aren't on that list is

3  they didn't have any live witnesses they said they wanted to

4  put in.  The U.S. Debtors, the Canadian Debtors, the EMEA

5  Debtors, U.K. Pension, and CCC were the five parties that

6  said we have fact witnesses that we want to call at trial

7  and we, in fact, had to designate a list early on.  That

8  list will get pared down, but their evidence in chief  comes

9  in by way of Affidavit so it will shorten the trial time by

10 not having to go through it all.  It's for the convenience

11 of everyone to allow people to put their Affidavit in and

12 tell their story, rather than have a longer trial.  And to

13 say that anybody is prejudiced by that when they're filing

14 ten expert reports is, to me, somewhat disingenuous.

15            JUSTICE NEWBOULD:  Okay.  Can I ask you a

16 question?  The Briefs, the first item, Briefs, allocation,

17 are these opening Briefs?

18            UNIDENTIFIED FEMALE:  That's correct.

19            JUSTICE NEWBOULD:  All right.  Thank you.

20            MR. GOTTLIEB:  Your Honor, if I might add?  Judge

21 Gross, it's Matthew Gottlieb, for the EMEA Debtors.  Justice

22 Newbould, I'm on for the EMEA Debtors.

23            THE COURT:  Yes.

24            MR. GOTTLIEB:  Just a couple points in response,

25 and I will be brief.  With respect to the page limit of the

1    opening evidence and the rebuttal evidence, in our respectful

2    submission, the amounts put forward are the appropriate ones.

3    The amounts put forward by the U.S. are just too small.  We

4    all understand the limitations on the Court to be able to

5    read and take in, and I believe all parties will govern

6    themselves, but we do have very significant issues here in

7    this litigation.  We're talking about a lot of money and a

8    lot of complex issues and the parties will have to govern

9    themselves accordingly.  The suggestion that Mr. Rosenthal

10   made that these should be done by groups, we fundamentally

11   disagree with it.  Justice Newbould, if you consider

12   allocation alone, as you've heard this morning, EMEA has a

13   different view of allocation than the UKP.  We were in the

14   same group for certain periods.  To suggest that we should

15   have to somehow split our evidence with a group that has a

16   different theory from us, with great respect, that doesn't

17   make a lot of sense here.  There is no agreement that we will

18   equally split anything with the UKP on these time

19   allocations.  There are some specific issues, and this is

20   really just to Justice Newbould, set out in the material

21   regarding Claim time limits because the proposal of UKP and

22   EMEA is that they have a certain number of pages.  We've

23   agreed, obviously, to give Canada double that so that they

24   can respond to each of the UKP Claims and the EMEA Claims.

25   Canada would like to freely allocate its page limits as it

1   wants to.  In our respectful submission, that's obviously not

2   fair --

3             JUSTICE NEWBOULD:  So which of these proposals --

4   I'm looking at the chart.

5             MR. GOTTLIEB:  It's at page --

6             JUSTICE NEWBOULD:  Which one do you support?

7             MR. GOTTLIEB:  Page -- it depends where you start

8   with but if you want to start all the way at page six?

9             JUSTICE NEWBOULD:  Yes.

10            MR. GOTTLIEB:  The Affidavits, allocation.  We're

11  on the same page as the Monitor.  We are not on the same page

12  as the U.S. Debtor.

13            JUSTICE NEWBOULD:  Just a second.

14            MR. GOTTLIEB:  So the U.S. Debtor has given a

15  greater restriction on that.  Do you see that?  We're on the

16  same page as the Canadian Monitor on that.  With respect to

17  Claims, which is over at page seven, Your Honor, the top box,

18  we agree as to the limitation of the pages, as I believe does

19  the UKP, but the Canadian Debtors would like to freely

20  allocate their double number.  We say well, that's not fair

21  because they could allocate zero to one, full to another, and

22  therefore, you have to fight double the amount of pages.  So

23  we say it should be equal across the board on that.

24            JUSTICE NEWBOULD:  So what change would you make

25  to that box?

1          MR. GOTTLIEB:  To the Canadian box or the EMEA

2    box?

3          UNIDENTIFIED FEMALE:  I think Mr. Gottlieb has

4    moved into the third issue on this.  I thought we were

5    dealing with the second issue which has to do with the

6    absolute page limits on Affidavits and opening Briefs.  Those

7    are items one and three.

8          MR GOTTLIEB:  Yes.

9          UNIDENTIFIED FEMALE:  Those are the issues that

10   Mr. Rosenthal just addressed.

11         JUSTICE NEWBOULD:  Oh, I'm sorry.  Two is -- I'm

12   sorry.

13         UNIDENTIFIED FEMALE:  Two is a different issue.

14   That's the Claims -- whether we should have one or two

15   records in Claims.

16         MR. GOTTLIEB:  So our view, with respect to the

17   allocation is that the numbers that are put in are the

18   appropriate ones.  With respect to the time for opening

19   statements --

20         JUSTICE NEWBOULD:  So the box beside Briefs

21   allocation in the middle of page seven, you agree with that?

22         MR. GOTTLIEB:  Correct.

23         JUSTICE NEWBOULD:  All right.

24         MR. GOTTLIEB:  Thank you.  If you flip over the

25   page --

1          UNIDENTIFIED FEMALE:  We've started to indicate

2    in the columns, you'll agree -- like if you just go to the

3    top, you'll see the EMEA Debtors are set up at the top and

4    you'll indicate who supports what position.

5          MR. GOTTLIEB:  Your Honor, if you go over to page

6    eight, there's a new box regarding opening statements on

7    allocation.  We are advocating, this is EMEA, that the

8    parties take more time for their opening statements, as

9    you've heard, and I know you know this.  There's going to be

10   a very, very large record.  This trial, although we're going

11   to have live evidence, there'll be a significant amount of

12   evidence already in the record; deposition transcripts,

13   Affidavits.  You've heard a large volume of expert reports.

14          In our respectful submission, if we take more

15   time to open the case, not just us, but the parties more

16   time to open the case, we will give the Courts, both Courts,

17   a better idea of where the evidence is headed, where the

18   arguments are headed.  So our view is even though we take

19   more time to open, and I don't think anyone could reasonably

20   suggest a three-hour opening for a $7.5 billion case with

21   allocation theories and this type of evidence is too long.

22   In any other case, it wouldn't be too long.  It would be

23   quite short.  We think the Courts would benefit greatly to

24   have the parties set out their positions and their overview

25   of the evidence as it exists and that can't be done in one

1  and a half hours.  It just can't be done given the volume of

2  material.  I think the Courts will feel that they're a

3  little bit less 'unhelped' if it's that short of a time.

4       So, in our respectful submission, a three-hour opening

5  will be far more beneficial to the Courts than a shorter

6  opening where they'll be left.  As I said, we do have some

7  Claims issues with respect to allocation of time that Judge

8  Gross needn't be around for that we can talk about.

9            JUSTICE NEWBOULD:  All right.

10           UNIDENTIFIED FEMALE:  Your Honor, if I may just

11  for the Monitor and the Canadian Debtors, indicate the

12  position that we've put forward is the one that we think is

13  appropriate.  We will obviously take to heart the Court's

14  comments about the extent to which you are prepared to read

15  endless pages of Affidavits, but I echo the sentiments of

16  Mr. Ziegler with respect to the filings of the written

17  record.  The U.S. theory is an expert-based theory.  They've

18  had no limitations on the pages of expert reports and I can

19  assure you there's well in excess of 1,000 pages of expert

20  reports.  The Canadian theory is a fact-based theory.  We

21  don't like the U.S. shorthand of bare legal title.  We

22  consider it to be an ownership theory.  It's an ownership

23  theory and the CCC has their alternative theory and we have

24  really put a lot of time and attention into figuring out how

25  much we might need.  We will not use the maximum limit of

1    pages and we hear Your Honor with respect to how much any

2    one person can absorb in a written record but we do feel

3    that the proposal that we've put forward and that the other

4    parties support, other than the U.S. interest, is the

5    appropriate allocation having regard to the volume of

6    experts that you will be also contending with.

7                JUSTICE NOWBOULD:  What's next then?

8                MR. ROSENTHAL:  Your Honor, if everybody is done

9    speaking in Canada, if I can just have a moment to respond

10   to the number of comments that were made just now up in the

11   Canadian Court?  Just to be real brief.

12               The UCC and the Bondholders have not said that

13   they have no witnesses.  They've worked cooperatively with

14   us and they expect that within whatever limits the Courts

15   set, the UCC and the Bonds and the U.S. Debtors will operate

16   and we will be economical and what should not happen,

17   however, is a penalty to the U.S. Group because we're

18   working cooperatively by saying that well, those who are not

19   working cooperatively get more pages or more time to present

20   their theories than those who are working cooperatively.

21               JUSTICE NEWBOULD:  Yes, well, I don't think

22   that's going to happen.

23               MR. ROSENTHAL:  I think --

24               JUSTICE NEWBOULD:  Okay.  What's the next step?

25               MR. ROSENTHAL:  The last thing is, because of the

1  number of reports that have been floating around, we

2  submitted three affirmative expert reports, fewer than the

3  other parties.

4         What happened was, because of the breadth of the

5  Canadian reports, we submitted rebuttal reports.  Those

6  reports come in only to the extent that the initial reports

7  come in, and therefore, the fact that we have divided up our

8  rebuttals of the Canadian reports among multiple witnesses

9  instead of just having the same witnesses rebut them, it

10 doesn't create a higher volume and I just want to dispel any

11 thoughts the Court has with regard to that.

12         JUSTICE NEWBOULD:  I think we have to move on.

13         MR. ROSENTHAL:  I'm prepared to move on and I

14 thank you and I think I could cede the podium probably to

15 the EMEA Debtors to just present the third issue because it

16 concerns Claims and really doesn't concern the U.S. Debtors

17 as far as I know.

18         THE COURT:  Thank you, Mr. Rosenthal.

19         UNIDENTIFIED MALE:  And, Your Honor, we'll be

20 brief.  Mr. Finnigan and I, for the UKP, will deal with this

21 point.  If there's separate Claims proceedings, the EMEA

22 Debtors would have Claims, very significant Claims pursuant

23 to an Order of this Court, EMEA Claims procedure that was

24 given in February of 2011.  There's a large volume of Claims

25 that have been made by the EMEA Debtors.  There are then

1  separate claims that have been made by the UKP.  There are

2  some factual overlap, but they are very different claims.

3              JUSTICE NEWBOULD:  So what's the issue that needs

4  to be dealt with today?

5              UNIDENTIFIED MALE:  The only issue that needs to

6  be dealt with today is there's an acknowledgment that each

7  of EMEA and the UKP will get their own limits with respect

8  to evidence and the like.  That's not really a dispute

9  between the parties.  We also agreed that the Canadian

10 Estate, because it's dealing with the two different

11 proceedings, have to get double so if there's 150 pages,

12 then the Canadians get 300.  The Canadians have said they'd

13 like to be able to allocate that 300 pages any way they

14 wish.  So, theoretically, even though the EMEA Debtors would

15 be entitled to put in 150 pages of evidence, Canadians could

16 say they're going to put in 250 pages of evidence in

17 response, and reserve only 50 pages to deal with the UKP

18 Claims.  We simply say that's an unfair allocation.  If

19 we're allowed to put in 150 pages for our Claims of

20 evidence, they're entitled to put 150 pages max of evidence

21 in response, but they can't treat it as a [indiscernible]

22 different proceedings, based on different Claims, based on

23 different factual bases, based on different legal theories

24 and we shouldn't be disadvantaged that way.  It's a matter

25 of fairness and I believe Mr. Finnigan has the same point I

1  have outlined.

2          JUSTICE NEWBOULD:  Is this the point at the

3  bottom of page seven of his Brief?

4          UNIDENTIFIED MALE:  It's in a few different

5  places.  It's on the bottom of page seven.  It's -- sorry,

6  it's in the middle of page seven at the top, Affidavits

7  Claims.  Do you see that up there on the left side?

8  Affidavits and Claims, 150 pages, 75 rebuttal.  The

9  Canadians get 300 and 150.

10          JUSTICE NEWBOULD:  Right.

11          UNIDENTIFIED MALE:  And if you look at our

12  column, which is the third column in, we don't object to the

13  page limits but the Canadians have to get equal to each of

14  us, not a global amount to split the way it sees fit.  And

15  if you go down to the last box, it's the same --

16          JUSTICE NEWBOULD:  I don't understand the last

17  point you said.

18          UNIDENTIFIED MALE:  So the Canadians, if you look

19  over back in the left column --

20          JUSTICE NEWBOULD:  Yes.

21          UNIDENTIFIED MALE:  -- EMEA gets 150 pages for

22  initial Affidavits.  The Canadian Group gets 300 pages for

23  initial Affidavits.  The theory was --

24          JUSTICE NEWBOULD:  Well, that's because EMEA had

25  the UK Pension Plans --

1          UNIDENTIFIED MALE:  Correct.

2          JUSTICE NEWBOULD:  -- so you each get 150.

3          UNIDENTIFIED MALE:  That's exactly right.

4          JUSTICE NEWBOULD:  Right.

5          UNIDENTIFIED MALE:  The Canadians don't want to

6   say that they get 150 to respond to EMEA; 150 to respond to

7   UKP.  They want to say that they get 300 in total and they

8   can split it any way they want.

9          JUSTICE NEWBOULD:  Why do you care?

10          UNIDENTIFIED MALE:  Because it may be that I file

11   a maximum of my 150 pages for my EMEA Affidavit and they

12   file 250 pages in response to my EMEA Claims.  So they will

13   have had 100 more pages of evidence to put in and they will

14   have saved only 50 to respond to Mr. Finnigan's client's

15   Claims, the UKP.  The whole point of allocation of time like

16   this to set limits to make it fair so that one party doesn't

17   get an advantage over the other by filing far more material.

18          JUSTICE NEWBOULD:  If you see 100 extra pages as

19   an advantage.  Okay.  What other box do you --

20          UNIDENTIFIED MALE:  Go down -- well taken.  Go

21   down to the box at the bottom of the page.  It's the same

22   with the Briefs regarding Claims.  It's the exact same

23   theory.

24          JUSTICE NEWBOULD:  All right.

25          UNIDENTIFIED MALE:  And then if you flip over to

1   page nine, it's the same with respect to time allocation.

2             JUSTICE NEWBOULD:  All right.

3             UNIDENTIFIED MALE:  It's the exact same point on

4   all of them --

5             JUSTICE NEWBOULD:  All right.

6             UNIDENTIFIED MALE:  -- that we dealt with in our

7   letter as well.

8             JUSTICE NEWBOULD:  All right.

9             JUSTICE MORAWETZ:  Is there agreement on font

10  size and margins?

11                      (Laughter)

12            UNIDENTIFIED FEMALE:  We've settled on New Times

13  Roman.

14            JUSTICE NEWBOULD:  I can tell you that the

15  footprints are not going to be -- they're going to be the

16  same size as the rest of the thing I think.

17            THE COURT:  And double-spaced footnotes, yes.

18            JUSTICE NEWBOULD:  Okay.  So anybody else want to

19  speak on this number three issue that Mr. Gottlieb has

20  raised?

21            MR. BARNES:  Your Honor?

22            JUSTICE NEWBOULD:  Yes?

23            MR. BARNES:  Linden Barnes, on behalf of the

24  Directors.  I think that everyone's striving to achieve

25  equality here.  [indiscernible] "X" many hours to assert the

1   claims and "X" many hours to defend the claims.  Where there

2   is a distinction is that if EMEA is asserting claims not

3   only against the Canadian Debtor but against my client, the

4   Officers and Directors, and that, by definition, requires

5   different considerations than how the claims are responded

6   to.  So simply, we're simply saying equal allocation of

7   time, but don't tie our hands amongst our group as to how we

8   defend the Claims and that's what they're attempting to do.

9   We tried to work this out on a fairness basis, but take the

10  EMEA example.  It asserts a Claim against the company as a

11  shadow Director and as a de facto Director.  Then it goes on

12  in the same line to assert it against my clients, the

13  Directors, who are at least 12 Directors that are assumed

14  for [indiscernible] having sat on various Boards, for

15  various periods of times and the Claims are an excessive --

16          JUSTICE NEWBOULD:  I understand that.  I

17  understand that.

18          MR. BARNES:  So there's a personal exposure for

19  this Group that isn't dependent on any other group.

20          JUSTICE NEWBOULD:  Okay.  Thank you.

21          UNIDENTIFIED FEMALE:  Your Honor, may I just --

22          JUSTICE NEWBOULD:  Very quickly.

23          UNIDENTIFIED FEMALE:  The Canadian Monitor

24  Debtor's position is set out in paragraph nine immediately

25  following the chart and we refer back to the original

1    Protocol and the already agreed arrangement with respect to

2    the filing of Pre-Trial Orders.  There's only one Pre-Trial

3    Order for the purposes of Claims.  We don't think it should

4    be further broken down.  This is no different than a case

5    where there's two Plaintiffs and a Defendant.  We wouldn't --

6                JUSTICE NEWBOULD:  Wait.  What paragraph are you

7    reading?

8                UNIDENTIFIED FEMALE:  Paragraph nine of the

9    submission just immediately following the chart.  We refer

10   to the fact that the Protocol that was approved on

11   January 29th --

12               JUSTICE NEWBOULD:  You say it was approved?

13               UNIDENTIFIED FEMALE:  The January 29th Protocol,

14   the original one.

15               JUSTICE NEWBOULD:  You say it was approved?

16               UNIDENTIFIED FEMALE:  It was, yes.

17               JUSTICE NEWBOULD:  All right.

18               UNIDENTIFIED FEMALE:  I think everybody agreed it

19   was approved.  We've attached the Memorandum from the

20   hearing.

21               JUSTICE NEWBOULD:  Wait, then.  We're dealing with

22   an issue here.  There's nothing written in stone that was

23   changed.

24               UNIDENTIFIED FEMALE:  Okay.  Well, our position is

25   that the record, it should be a single record.  It's no

1   different than if there were two Plaintiffs and a Defendant

2   and we wouldn't be tying our hands that way.  But the other

3   point that isn't in here that I think is important for the

4   Court to understand is that we have pleaded and our pleading

5   joins issue with this.  The EMEA Group makes a series of

6   Pension Claims which overlap with the UKPC Pension Claims,

7   and to tell us that we have to divide our pages and our time

8   exactly in half between EMEA and the UKPC Pension Claims

9   doesn't recognize --

10           JUSTICE NEWBOULD:  Okay.  So you support Mr.

11  Barnes on that?

12           UNIDENTIFIED FEMALE:  Well, yes.

13           JUSTICE NEWBOULD:  All right.

14           UNIDENTIFIED FEMALE:  Our position is that we

15  shouldn't be told that we have to divide it exactly down the

16  middle.

17           JUSTICE NEWBOULD:  I understand.

18           UNIDENTIFIED FEMALE:  There's such an overlap in

19  the pleading and --

20           JUSTICE NEWBOULD:  I understand.

21           UNIDENTIFIED FEMALE:  -- we've got, you know, the

22  whole back end of our pleading where we --

23           JUSTICE NEWBOULD:  Okay.

24           UNIDENTIFIED FEMALE:  -- support the position.

25           JUSTICE NEWBOULD:  Okay.  Okay.  So what's left?

1  I guess those are the three issues?

2         UNIDENTIFIED FEMALE:  Those are the three sort of

3  points of difference.  I think the thing that we should

4  mention to the Court, I know, just before everybody has to

5  leave, I think Mr. Rosenthal mentioned that the Protocol that

6  was approved in January, there have been some things that

7  have been amended and adjusted, not just one, that the

8  parties will be submitting to the Courts for approval and

9  then, depending on the direction of the Courts today, I think

10 the intention would be that we would have a final form of a

11 supplementary, an amended Protocol which we would be

12 submitting for approval once we have the Court's direction on

13 the issues from today.

14        JUSTICE NEWBOULD:  I just want to -- regarding the

15 days we're sitting, first of all, the week of the 9th of June,

16 we cannot sit.  I am not here.  The 4th of June, which I think

17 is a Wednesday, we can't sit because of a conflict in our

18 Court.  And I think, Judge Gross, you said the 3rd of June you

19 can't sit.

20        THE COURT:  That's correct.

21        JUSTICE NEWBOULD:  One thing that Judge Gross and

22 I wanted to ask you folks was whether you would like or not

23 like setting four-day weeks.

24        THE COURT:  I see Mr. Rosenthal.  I'm going to

25 guess but I won't say what I'm guessing.

1        MR. ROSENTHAL:  Your Honor, it's obviously up to

2   the discretion of the Courts.  We certainly appreciate the

3   fact that a trial of this magnitude certainly presents a

4   burden on both Courts' calendars.  That said, to the extent

5   that the Courts can afford the time, we believe that a longer

6   trial means a more expensive trial and the U.S. Debtors would

7   prefer to get it over as quickly as possible --

8        THE COURT:  Sure.

9        MR. ROSENTHAL:  -- and as promptly -- well, equal

10  number of trial days but as few gaps in between as possible,

11  subject to the convenience of the Courts and what you can do.

12       THE COURT:  All right.  And I assume you would

13  like to have, through Justice Newbould and I, specific trial

14  dates?

15       MR. ROSENTHAL:  That would be fantastic, Your

16  Honor.

17       THE COURT:  Because you're going to have to

18  coordinate with witnesses and the like.

19       MR. ROSENTHAL:  Absolutely.

20       THE COURT:  Okay.

21       MR. ROSENTHAL:  We would very much prefer the

22  Courts to map out a calendar for the parties.

23       THE COURT:  All right.

24       JUSTICE NEWBOULD:  Is there anybody else then --

25  any other views about four-day weeks?

1       MR. FINNIGAN:  You gave me a piece of paper that

2   says four days a week.  EMEA is in the Courts' hands as to

3   how it thinks it could best deal with the case.

4       JUSTICE NEWBOULD:  Okay.

5       UNIDENTIFIED FEMALE:  Canadian Debtor and Monitor,

6   also, we'll take the direction from the Court.

7       MR. GOTTLIEB:  Judge Newbould, before we go, and I

8   apologize for this, but there was one issue if you can just

9   read in the last paragraph of our letter.  I thought that's

10  what Ms. Kimmel was going to read.

11      JUSTICE NEWBOULD:  Your letter?

12      MR. GOTTLIEB:  Yeah, in the letter that we

13  delivered to the Court on all of the issues.

14      JUSTICE NEWBOULD:  I haven't seen the letter.

15      MR. GOTTLIEB:  Okay.  I'll hand you up our copy

16  because  there was one further issue that just deal with the

17  Claims that we needn't bother the U.S. Court about.

18      JUSTICE NEWBOULD:  Well --

19      MR. GOTTLIEB:  It was just about our ability to

20  rely on evidence filed by other parties simply by

21  designating --

22      JUSTICE NEWBOULD:  Okay.  Well, let me --

23      UNIDENTIFIED FEMALE:  My understanding from

24  discussions with your colleagues, Mr. Gottlieb, is that we

25  were going to wait for the Court's direction on the issue

1  that we just made submissions on and then see, because that

2  issue that you just mentioned only arises if you prevail in

3  your position that we should be putting in the Claims record

4  those two.  So I had understood that we weren't going to be

5  asking for a direction on that, and in fact, Your Honor,

6  from the chart's perspective, it means, I think, that you do

7  not need to deal with footnote number one for the moment.

8           JUSTICE NEWBOULD:  All right.

9           UNIDENTIFIED FEMALE:  And the other thing --

10          JUSTICE NEWBOULD:  Let me see your letter

11  regarding that matter.

12          UNIDENTIFIED FEMALE:  The other thing that's been

13  agreed to, just in case you are going back through the chart

14  in our submission.  There was an issue about opening

15  statements for purposes of Claims, which I think the EMEA

16  Debtors have agreed not to ask for extra time for that.  So

17  it's no longer an issue.  When you do go back to the chart,

18  it's at the bottom of page eight, the very last item,

19  opening statements, claims.  They've now agreed to the

20  Monitor's position on that, the EMEA Debtors have, so

21  there's no longer a dispute.

22          JUSTICE NEWBOULD:  So it's the Monitor's position

23  is one day in total?

24          UNIDENTIFIED FEMALE:  Yes, same for Claims as for

25  allocation.

1          JUSTICE NEWBOULD:  And I thought EMEA wanted two

2    days for --

3          MR. GOTTLIEB:  This is on just Claims now?

4          JUSTICE NEWBOULD:  Yes.

5          MR. GOTTLIEB:  And we've agreed with the Monitor

6    on that and so that's no longer in dispute.

7          JUSTICE NEWBOULD:  All right.  There's a couple

8    other things I wanted to raise.  I'm sure Judge Gross may

9    have things to raise.  When will the Court be getting the

10   Affidavit and the expert reports?  When is that planned?

11   Because we're going to need some time to go through it

12   before the trial starts.

13         MR. ROSENTHAL:  Your Honor, in the January

14   Protocol that we submitted, the plan was to submit a Pre-

15   Trial Order on May 2nd, 10 days before the commencement of

16   trial that would have the Pre-Trial Briefs, the exhibits,

17   the deposition designations, the Affidavits, the whole

18   packet of material, and obviously, we can work with the

19   Courts to find out how you would best like to get it,

20   whether it's --

21         JUSTICE NEWBOULD:  Early rather late as far as

22   I'm concerned and if it's 10 days, and not 10 working days,

23   that may be a little bit too late.  I think we need to have

24   two weeks.  These things [indiscernible] take forever.  We

25   haven't been.

1        MR. ROSENTHAL:  We can obviously talk among the

2   parties.  The only concern that I have is that we've worked

3   backwards on a number of deadlines that are already pretty

4   much upon us that I don't about moving it backward but we'll

5   certainly be able to confer with the parties to see how we

6   can move that date up a few days for the Courts.

7        JUSTICE NEWBOULD:  I'm hearing that these expert

8   reports have already been delivered.  Is there some reason

9   why they can't be provided to each of the Courts?

10        MR. ROSENTHAL:  No.  No reason why not, Your

11   Honor.

12        JUSTICE NEWBOULD:  All right.  Then I think the

13   sooner we get those, the better, and Mr. Barrick [ph] is

14   here agreeing with that.  It would help both of us, both

15   Courts, if we could get those quickly.  And then so far as

16   the Affidavits are concerned, you're saying the 2nd of May

17   because if you can get to them earlier, I think we will both

18   appreciate that as well.

19        MR. ROSENTHAL:  We can.  Your Honor, we're having

20   initial Affidavits being exchanged between the parties I

21   believe April 11th.  If the Courts would prefer to get the

22   Affidavits at that time, we can do that.  I believe two

23   weeks later, April 25th, are when we have Reply Affidavits.

24   We could submit those to the Court rather -- I mean it would

25   be piecemeal submissions, but obviously, it gives the Courts

1    an opportunity to start preparing.

2              THE COURT:  Yes.

3              MR. ROSENTHAL:  And then the remainder of the

4    materials can come on May 2nd and I could talk to the parties

5    to see if we can even move that up by a few days if the

6    Courts would like.

7              JUSTICE NEWBOULD:  Speaking for myself, I would

8    prefer all that that you've just said and I suspect Judge

9    Gross would too.

10             THE COURT:  Yes, that would be helpful and we're

11   going to have an Order, I assume, of the witnesses who --

12   testimony.  So we'll be able to work along with that list

13   obviously as well.

14             MR. ROSENTHAL:  Yes.  I believe the parties have

15   agreed I think around May 2nd.

16             THE COURT:  Right.

17             MR. ROSENTHAL:  So I'd have to look at the exact

18   Protocol, to exchange and deliver to the Courts the Order of

19   witnesses that we intend to call, obviously, subject to --

20   given some of the off-days we're going to have.  Depending

21   on how things fall, witnesses may need to be reshuffled a

22   little for their own travel convenience.

23             THE COURT:  Okay.

24             MR. ROSENTHAL:  But we can give you a general

25   plan at that time.

1          THE COURT:  Very well.

2          MR. ROSENTHAL:  And certainly, the January

3   Protocol also has in it the ordering of which parties'

4   witnesses and which parties' experts --

5          THE COURT:  Yes.

6          MR. ROSENTHAL:  -- and all that are going, in

7   what order as well.

8          THE COURT:  Exactly.

9          UNIDENTIFIED FEMALE:  Wait.  In this Protocol

10  that's before you today, there's a proposal that we give you

11  an initial schedule of the order of witnesses in -- it's in

12  subsection (d) of II, and it talks about providing that on

13  May 5th to the Court, the initial anticipated order of

14  witnesses, and the Protocol already contemplates the order

15  by party of how witnesses will be called, starting with the

16  witnesses of the Canadian Debtors and the Monitor and the

17  CCC, and the Ds & Os as well.  So that is in the proposal

18  that you have currently before you for approval, on page

19  four of that proposal of Tab A, of the Brief there.  So

20  obviously, if the Courts prefer earlier notices, we could

21  try to provide that, but the contemplation was that it might

22  take us a little while to work through that and knock it all

23  out.

24          JUSTICE NEWBOULD:  Particularly if you have

25  depositions, nobody's going to be sure who they want to call.

1        UNIDENTIFIED FEMALE:  The fact witness depositions

2   are completed.  It's the experts that we are --

3        JUSTICE NEWBOULD:  Okay.

4        UNIDENTIFIED FEMALE:  -- still about to embark

5   upon.

6        JUSTICE NEWBOULD:  Okay.

7        UNIDENTIFIED FEMALE:  You asked, Justice Newbould,

8   about Court Reporting and I will say that I think that there

9   has been some communication between the Delaware Court and

10  Counsel about the normal practice in the Delaware Court to

11  have a Court Reporter in attendance and a question about

12  whether we could have somebody who they would be working

13  with, perhaps from one of our recognized Court Reporting

14  organizations up here who could sit and be sort of a shadow

15  reporter here.

16        JUSTICE NEWBOULD:  What I -- the Reporter who's

17  doing the current trial I'm on, [indiscernible], whom you

18  know, we've got live reporting.  I have an iPad in front of

19  me that can -- I see the evidence as it's being given.  I get

20  transcripts by 5:30 that afternoon and she can set up pause

21  so that Counsel can talk amongst themselves, different groups

22  of Counsel can talk amongst themselves, and the like and you

23  may want to discuss that and sort of set up the system.  It's

24  comparable for both sides.  Because I would have thought that

25  it would be helpful if during the trial Counsel for one

1  client can communicate with the U.S. Counsel for the same

2  client knowing they're doing it by themselves.  It would be a

3  lot -- I think she can provide a whole lot more than just a

4  daily transcript that you're talking about.  So I'd encourage

5  you to just communicate with somebody on the U.S. side to see

6  what can be done in that regard.  We use it.

7            UNIDENTIFIED MALE:  I can use it for the

8  depositions in connection with the American Reporter and I

9  think that's what we've been discussing.

10            JUSTICE NEWBOULD:  Okay.

11            UNIDENTIFIED MALE:  That we'd like to do at the

12  trial.

13            UNIDENTIFIED FEMALE:  That is -- I think it was

14  more a question of whether -- I think we need your

15  permission.  So it sounds like we have it --

16            JUSTICE NEWBOULD:  Go ahead.

17            UNIDENTIFIED FEMALE:  -- for that to be arranged.

18            JUSTICE NEWBOULD:  Does that satisfy if we let the

19  parties deal with that, Judge Gross?

20            JUDGE GROSS:  Yes.

21            MR. BARRICK:  Your Honor, it's Mr. Barrick.  With

22  respect to possible settlement, we would like your permission

23  to contact Justice Morawetz on this.  One of the functions of

24  a Pre-Trial is settlement.  We've had some -- we reached out

25  to --

1              JUSTICE NEWBOULD:  Have you got Justice Morawetz's

2   permission?

3              MR. BARRICK:  No, we want your permission to ask

4   him for his permission.

5              JUSTICE NEWBOULD:  Well, I've got, speaking for

6   myself, if the parties want to talk settlement --

7              MR. ROSENTHAL:  Your Honor, we're not able to

8   hear.  I don't know who was speaking and the voice kind of

9   came through a little muffled.  I just heard something about

10  settlement.

11             THE COURT:  They want to use Justice Morawetz as a

12  mediator.

13             MR. ROSENTHAL:  Okay.  Who was it who was speaking

14  also?

15             JUSTICE NEWBOULD:  Mr. Barrick.

16             MR. ROSENTHAL:  Okay.

17             JUSTICE NEWBOULD:  The UK Pension Claimants asked

18  if I had any problem with him approaching Justice Morawetz to

19  talk about mediating some settlement.  Speaking for myself, I

20  have no problem with that.  Whether Justice Morawetz has a

21  problem with it or not, I don't know.

22             MR. BARRICK:  Do you have a problem with me

23  offline ask him directly?

24             JUSTICE NEWBOULD:  Yes, I think, I'm sure you're

25  the same, Judge Gross.  If they want to talk offline

1   settlement, why would we care?  We encourage it.

2                MR. BARRICK:  Okay.

3                THE COURT:  They can even talk to me.

4                          (Laughter)

5                JUSTICE NEWBOULD:  Okay.  Is there anything else

6   we need to talk about right now?

7                JUSTICE MORAWETZ:  I'll follow up with some of

8   just the logistics about the video linkups and some of the

9   questions that --

10               JUSTICE NEWBOULD:  Okay.

11               JUSTICE MORAWETZ:  -- any problems that have been

12  there in the past, they're being dealt with.

13               UNIDENTIFIED FEMALE:  Yes, we're working on it.

14               JUSTICE MORAWETZ:  Okay.  That's good to hear.

15               JUSTICE NEWBOULD:  Thanks, Counsel.

16               UNIDENTIFIED MALE:  Thank you.

17               JUSTICE NEWBOULD:  Thanks, Judge Gross.

18               THE COURT:  Thank you, Justice Newbould.  I think

19  we're finished with the link are we not?

20               MR. ROSENTHAL:  So, Your Honor, when you make the

21  rulings on these issues, you'll also see if you can -- if the

22  Courts can perhaps give us a calendar that we can then --

23               THE COURT:  Absolutely.

24               MR. ROSENTHAL:  -- let the witnesses know and

25  Counsel?

1          THE COURT:  I think -- I understand the need for

2   that.

3          MR. ROSENTHAL:  That would be wonderful.  Thank

4   you.

5          THE COURT:  That was kind of a fast Pre-Trial.

6                    (Laughter)

7          MR. ROSENTHAL:  It certainly was.

8          THE COURT:  I'm still catching my breath.  But

9   yes, and I think I fully understand the various issues that

10  we're address.  One thing I was thinking, by the way, we

11  ought to have is a timekeeper, somebody who, you know, the

12  parties agree would be --

13         MR. ROSENTHAL:  I can do that.

14                    (Laughter)

15         THE COURT:  I could too, but then I wouldn't be

16  able to listen to you.  So I think it might be helpful to

17  have a timekeeper who the parties would agree is kind of

18  keeping the official time, maybe a retired NHL scorekeeper or

19  whatever.

20                    (Laughter)

21         UNIDENTIFIED MALE:  To avoid dragging the puck.

22         THE COURT:  Yes.

23         UNIDENTIFIED FEMALE:  I'm sorry; I didn't hear

24  you.

25         UNIDENTIFIED MALE:  To avoid dragging the puck.

1          THE COURT:  That's it.

2          MR. ROSENTHAL:  Canadian term.

3          UNIDENTIFIED MALE:  We're all learning.

4          THE COURT:  Mr. Bromley?

5          MR. BROMLEY:  Your Honor, this seems like as good

6   a time as any to ask this, but and if you'll pardon the

7   formality of it.

8          THE COURT:  Fine.

9          MR. BROMLEY:  Is Justice Morawetz handling any of

10  the Nortel case anymore in Canada?

11         THE COURT:  No.  He's out of the case.

12         MR. BROMLEY:  He's completely --

13         THE COURT:  He's completely out of the case.

14         MR. BROMELY:  He's completely out of the case?

15         THE COURT:  Yes.  He apparently was given a

16  promotion, which imposes upon him far greater administrative

17  responsibilities than allow him to also deal with the trial..

18         MR. BROMLEY:  I've been looking for a similar

19  promotion but -

20                    (Laughter)

21         THE COURT:  Yes, I'm sure.  I'm sure.

22         MR. BROMLEY:  Unfortunately, none has been

23  forthcoming.

24         MR. ROSENTHAL:  It's called of Counsel.

25                    (Laughter)

1          MR. BROMLEY:  Okay.  I'm not exactly sure.  We

2   didn't hear what was being requested specifically about Mr.

3   Justice Morawetz --

4          THE COURT:  Oh.

5          MR. BROMLEY:  -- serving as a mediator, and I

6   don't know if you have any further information about it.

7          THE COURT:  That was news to me.

8          MR. BROMLEY:  So Mr. O'Connor wants to talk about

9   it because we do have a $2 billion Claim and the Bondholders

10  have a $4 billion Claim.  We need to know a little bit more

11  about that in order for us to have any point of view.

12         THE COURT:  That was the first I heard of it, Mr.

13  Bromley, so maybe Mr. O'Connor has --

14         MR. O'CONNOR:  Yes, my understanding on that, Your

15  Honor, is that we had wanted to approach Justice Morawetz

16  about serving as a mediator solely on the UKP's Claims

17  against Canada.  I don't believe it involves EMEA's Claims

18  and it certainly doesn't involve any of the allocation

19  Claims.

20         THE COURT:  Well, I suppose one parties' -- well,

21  Mr. Bromley?

22         MR. BROMLEY:  I would ask Mr. O'Connor if there's

23  going to be a formal Application made or was this the

24  entirety of the request of the Canadian Court for this

25  relief?

1      MR. O'CONNOR:  I believe that a letter was sent

2  today to the Court.  Oh, Goodman; I'm sorry.  I understand

3  that this was sent to Goodman's, a letter proposing this.  I

4  don't think any formal request has been made to the Court.  I

5  think the first time something was said about that was Mr.

6  Barrick's speaking to the Court today.

7      MR. BROMLEY:  Okay.  But my question is, is that

8  the entirety of the request and was the opportunity to object

9  terminated with the phone call being terminated?

10      THE COURT:  No, I --

11      MR. O'CONNOR:  I don't think so.  I mean, as I

12  said, I think the letter was sent to Goodman's to see if they

13  were interested in it.  I don't know that anyone else has

14  said they would like to do that.  So I can't believe that

15  that was the end of it.

16      THE COURT:  I certainly understand your concern,

17  Mr. Bromley, and perhaps, a copy of the letter should be sent

18  to the other parties in the case and they should have an

19  opportunity, obviously, to submit letters as well.

20      MR. O'CONNOR:  Well, Your Honor, the letter I was

21  talking about was to the Canadian's Counsel to see whether

22  they wanted to participate.  Obviously, if a request has to

23  be made to the Courts to have Justice Morawetz appointed, or

24  whatever the term would be, then I would understand that a

25  party in interest could have a right to object or state their

1   piece.

2          MR. BROMLEY:  Well, I just want to -- I mean we

3   don't have --

4          THE COURT:  I'm having trouble digesting it at the

5   moment myself.

6          MR. BROMLEY:  Yes.  So I think that, at least from

7   my perspective for the U.S. Debtors, we would make an

8   official request to both the Monitor's Counsel, who's sitting

9   here in the Courtroom --

10          THE COURT:  Yes.

11          MR. BROMLEY:  -- and to Mr. O'Connor that we be

12   included on the communications whether written or oral on

13   this issue and that if a formal request has been made, that

14   we be given that formal request.  We reserve our rights.  We

15   want to be heard on this once we have the opportunity to

16   consider it.  While we certainly had a constructive

17   relationship with Justice Morawetz over a five-year period, I

18   think we all need to sit somewhere other than at the podium

19   in a Courtroom and decide how we feel about this.

20          THE COURT:  I agree.

21          MR. BROMLEY:  And as substantial Claim holders in

22   the Canadian Estate, we're not happy about not being provided

23   the opportunity to appear on equal footing.  Too often in

24   these proceedings, frankly, Your Honor, we, as the U.S.

25   Debtors and I believe as the Bondholders, and even today

1  being referred to as the U.S. Bondholders, the guarantee

2  came out of the U.S., the money went to Canada.  Too often,

3  we're not part of that exercise.  We are, indeed today, the

4  only allowed Claim against the Canadian Debtors for $2

5  billion.  There's not a single other allowed Claim in the

6  Canadian Estates.  So we really want to make sure that we're

7  part of this process and that, frankly, due process is

8  afforded to us just like I think everyone else would expect

9  that it be afforded to them.  So right now, we don't take a

10 position.  If the answer is we need to take a position right

11 now, I would say we object, and until we have all of the

12 information, including the parameters of when it's going to

13 take place and what impact it might have on the trial

14 schedule, we reserve all our rights.

15          THE COURT:  I understand, Mr. Bromley.  Yes, Mr.

16 O'Connor?

17          MR. O'CONNOR:  Your Honor, I would say that I'm

18 not prepared at this point to say that any correspondence

19 between, for example, us and the Monitor's Counsel about

20 whether the Monitor would be interested in trying to mediate

21 that is something that Mr. Bromley should get.  I certainly

22 understand if any communications go to the Court, for

23 purposes of proposing that this occur or having Justice

24 Morawetz appointed to do it, they should certainly see that

25 and have an opportunity to object to that.  Frankly, I'm not

1 quite sure what the issue would be if the Canadian Monitor

2 and the UKP decided they wanted to try to mediate just the

3 Canadian Claim why Mr. Bromley would necessarily have the

4 right to have an interest in that.  But we're not there at

5 this point and I can certainly say that if we are going to do

6 that and there's going to be a request made to the Court,

7 we're happy to let Mr. Bromley have whatever the request is

8 and let him have an opportunity to comment or object to it.

9           MR. BROMLEY:  And just to be clear, Your Honor.

10 I'm concerned that what happened in the last 15 seconds of

11 that phone call was the request and the granting of the

12 relief.

13           THE COURT:  Yes.

14           MR. BROMLEY:  Right?  That's my concern.

15           THE COURT:  I hear you.

16           MR. BROMLEY:  And I didn't know there was a

17 letter.  Now that I know there's a letter, I'm making a

18 formal request for said letter.

19           THE COURT:  Yes.

20           MR. BROMLEY:  And as a $2 billion Creditor in

21 Canada, I think I have the standing to request that, and I

22 make it both of Mr. O'Connor and of the Monitor's Counsel.

23 This is not the way that we should be dealing with this with

24 two months to trial; that major portions of this case are

25 going to be dealt with, with 15 seconds on a phone call when

1  it's very clear Justice Newbould has something else to do.

2  That is not the way this is supposed to happen.  Now, if I'm

3  overreacting, then fine, and I apologize.  But let's get the

4  facts out.  There was a request made on the record today.  We

5  couldn't even hear the request.  If that was the request, I

6  want to have an opportunity to consider it and object to it.

7            THE COURT:  Well, I too, and trying to consider

8  the ramifications of the request and -- yes, Mr. O'Connor?

9            MR. O'CONNOR:  Your Honor, and again, I cannot --

10 I heard it for the first time here too, the request being

11 made.  I have no idea at this point whether anyone thinks

12 that -- I don't believe that anyone granted the request at

13 this point, but I would just come back to the point about Mr.

14 Bromley saying he's entitled to a letter between us and the

15 Canadian Monitor in the form of essentially settlement

16 discussions about our Canadian Claims.  I don't think he's

17 entitled to that.  I do think he's entitled to anything that

18 would be going to the Courts seeking to have Mr. Justice

19 Morawetz appointed to do this, and again, I stand here and

20 commit that if anything like that occurs, that we will

21 provide Mr. Bromley with them.

22            THE COURT:  Mr. Hodara, good afternoon.

23            MR. HODARA:  Thank you, Your Honor.  For the

24 Creditor's Committee.  So because I'm merely going to echo

25 Mr. Bromley, I don't want to take more of the Court's time

1  than that, but I want to be clear that on behalf of the U.S.

2  Creditor interests, we totally agree with the statements that

3  Mr. Bromley has made and would ask to be included in any

4  Court communications that are made by those parties.

5            THE COURT:  Very well.  Thank you.

6            MR. HODARA:  Thank you, Your Honor.

7            THE COURT:  Thank you, Mr. Hodara.

8            THE COURT:  Good afternoon.

9            MR. GUYDER:  Good afternoon, Your Honor, Dan

10  Guyder, of Allen Overy --

11            THE COURT:  Yes, sir.

12            MR. GUYDER:  -- on behalf of the Monitor.  I have

13  not -- or we have not seen the letter that was referenced at

14  the tail end of the hearing, and so obviously, we'll need to

15  follow up with our client, discuss the ramifications of that,

16  and while I understand the concerns of the Committee and Mr.

17  Bromley, you know, simply have to reserve our rights with

18  respect to the suggestions of Mr. Bromley and the Committee

19  in terms of their right to participate and we'll just leave

20  it at that for now.

21            THE COURT:  All right.

22            MR. GUYDER:  Thank you, Your Honor.

23            MR. LEBLANC:  If I could just -- just from here?

24            THE COURT:  Mr. LeBlanc, yes.

25            MR. LEBLANC:  Yes, Your Honor.  We have the same

1    interests and probably as directly as Mr. Bromley does.  So

2    we would reserve all of our rights as well.

3              THE COURT:  All right.

4              MR. O'CONNOR:  Your Honor, one final point.  It

5    occurs to me that our Canadian colleagues are no longer on

6    the line, and since I think there is an issue here about

7    standing of the U.S. Debtors to have any involvement in a

8    mediation of a Canadian Claims-only proceeding, that if we

9    are going to discuss this further, we ought to do it at a

10   point in time when the Canadians have the ability to respond

11   as well.

12             MR. BROMLEY:  As we're sitting here, Your Honor, I

13   received two emails from colleagues who were sitting in the

14   Chambers.

15             THE COURT:  Yes.

16             MR. BROMLEY:  And apparently, Justice Morawetz has

17   already said that he's available to meet later this -- I

18   think either this week or next week and they're already

19   scheduling things so I would make a request, Your Honor, that

20   a judicial communication take place to find out what's going

21   on.

22             THE COURT:  Yes.

23             MR. BROMLEY:  And so that we would have the

24   opportunity to be heard on this.  In terms of whether or not

25   we have standing, we have just spent an hour and a half

1   talking about the construct for a trial which is clogged up

2   with ridiculous Claims on substantive consolidation, which

3   have no basis in law or fact, and we've not said anything

4   other than we'll get to it.  Well, the fact is, Your Honor,

5   there's not a single legal basis for that construct and they

6   want one-quarter of the trial time to deal with it.  There's

7   not a single legal basis.  Right?  And, Your Honor, if I had

8   said to you right now as we were hanging up, could you please

9   appoint Judge Shannon as the mediator to resolve the

10  allocation settlement; thanks, click, good-bye, I think there

11  would be rockets going off in Toronto.

12           THE COURT:  Well, it's even worse than that

13  actually.  It would be as if I withdrew my role in a case and

14  then took -- and ended it, you know, so --

15                        (Laughter)

16           THE COURT:  That would be more accurate.

17           MR. BROMLEY:  We would be more than happy to have

18  you as a mediator, Your Honor.

19           THE COURT:  Well, I see the ramifications and I

20  understand the concerns and it's a little troubling that it

21  happened so informally, if you will, during a formal hearing.

22           MR. BROMLEY:  That is our main issue, Your Honor.

23           THE COURT:  Yes.

24           MR. BROMLEY:  And there's been an enormous amount

25  of effort.  The fees that have been generated by pursuing

1  these figments down rabbit holes are in the tens of millions

2  of dollars and the idea that we're sitting here today not

3  able to talk about that substance, but have these issues

4  being addressed in the snap of a finger is just very

5  surprising.

6           THE COURT:  Yes.

7           MR. BROMLEY:  And in the past couple of months, I

8  mean just the past six weeks, we've lost Justice Morawetz

9  with the snap of a finger without any anticipation.  We heard

10 today, on the record, that Justice Newbould was listening in

11 in January, which says to me that something was up as long as

12 two months ago, and then this happening with the snap of a

13 finger in the last 10 seconds when we couldn't even hear what

14 was being said.  It's just very disturbing, Your Honor.

15          THE COURT:  I understand.

16          MR. O'CONNOR:  Your Honor, I'm not going to

17 comment on Mr. Bromley's glib characterizations of our Claims

18 as ridiculous or anything else.  I think he quite well knows

19 that to call the pro-rata distribution methodology

20 substantive consolidation is completely inaccurate.  Put that

21 aside.  One more time, I don't understand what any of this

22 has got to do with whether we sat down and tried to settle

23 our Claims on the UKP in Canada alone.  What he's got to do

24 with that escapes me completely.

25          THE COURT:  Well, it makes one concerned about

1  allocation.

2          MR. O'CONNOR:  I don't see how it relates to

3  allocation.

4          THE COURT:  Well, I'm not going to spell it out,

5  but it certainly raises a question about the impact of Claims

6  issues, on allocation when a former Judge in the case and the

7  President Judge in the case may be having communications.

8  That's of concern to the Court.

9          MR. O'CONNOR:  Well -- oh, I'm not talking, Your

10  Honor, about the point about whether there's communications

11  and I don't know where that is coming from.  All I was

12  suggesting is that I don't really see how Mr. Bromley is

13  entitled to say that he's got some standing to participate in

14  a mediation if it's related only to our claims against the

15  Canadians and not to any allocation theory.

16          THE COURT:  Well, I would say this.  As long as

17  the Canadian Monitor and the CCC are involved in my Court, I

18  think these parties have a right to be involved in the

19  Canadian Court.

20          MR. O'CONNOR:  Well, Your Honor, that's why I say

21  I think it would make sense to have the Canadians on line for

22  this discussion because I'm not sure, with all due respect,

23  they would share the same view.

24          THE COURT:  I think the parties ought to have some

25  discussions about this because it was a surprising turn of

1  events and it was not handled particularly adroitly.  All

2  right?  And it was part of this formal hearing, this formal

3  joint hearing, where it was brought up.  It was not brought

4  up in the Canadian case alone.  It was brought up during our

5  joint hearing.

6          MR. O'CONNOR:  No, I agree, Your Honor.  All I'm

7  suggesting was that it was unfortunate that it had to end

8  when it did.

9          THE COURT:  Yes.

10          MR. O'CONNOR:  I'm just saying that if we have a

11  continuing discussion on this, I think we should have it with

12  the benefit of the Canadians on as well.

13          THE COURT:  Understood.

14          MR. O'CONNOR:  Thank you.

15          THE COURT:  All right.  Now, Ms. Melnik, did you

16  have something that you wanted to say?  I'll give you an

17  opportunity.  Good afternoon to you.

18          MR. MELNIK:  Good afternoon.  Thank you, Your

19  Honor.

20          THE COURT:  Of course.

21          MS. MELNIK:  Selinda Melnik, for the Canadian

22  Creditor's Committee.  I would just like to echo the concerns

23  about Judge Bromley's determinations --

24                      (laughter)

25          MS. MELNIK:  -- about what -- what the theories

1  are and also whether or not they're legally justifiable and

2  just to express the hope that that question remains open for

3  the trial.

4            THE COURT:  Of course.

5            MS. MELNIK:  Thank you.

6            MR. ABBOTT:  The weather report said there might

7  be some thunderstorms today, Your Honor.  I guess we've just

8  seen the first of them.

9            THE COURT:  I think we had them, didn't we?

10           MR. ABBOTT:  Your Honor, I think that concludes --

11           THE COURT:  I feel struck by lightning so far.

12  That concludes the first portion.

13           MR. ABBOTT:  I think it concludes the Pre-Trial

14  Conference, Your Honor.

15           THE COURT:  Yes.

16           MR. ABBOTT:  And I guess we now move on to the

17  Chapter 15 matter and so I'll get out of the folks' way.

18           THE COURT:  All right.  Thank you.  Ms. Murphy,

19  good afternoon.

20           MS. MURPHY:  Good afternoon, Your Honor, Kathleen

21  Murphy, of Buchanan Ingersoll & Rooney, on --

22           THE COURT:  Take your time if you need to get

23  settled.

24           MS. MURPHY:  -- on behalf of the Monitor.  As the

25  Court is aware, this is the Status Conference that the Court

1   has ordered on the lead Claimant's renewed Motion to Modify

2   the Recognition Order to Pursue Securities Litigation in a

3   Different Jurisdiction.  At this point in time, I'm going to

4   cede the podium to Mr. Guyder unless the Court has a

5   different --

6          THE COURT:  That's perfectly fine, Ms. Murphy.

7   Thank you.  Mr. Guyder, good afternoon again.

8          MR. GUYDER:  Good afternoon again, Your Honor.  As

9   Ms. Murphy indicated, today's Status Conference I think was

10  scheduled at the request of the Monitor based on our

11  preliminary response filed with respect to the Motion for

12  Modification of the Recognition Order, and we filed that,

13  Your Honor, to try to short-circuit some of the process here,

14  reduce the cost and effort, particularly in light of

15  everything that's been discussed today and all the other

16  things that are sprawling around this issue beyond the

17  Chapter 15 case.  As we noted in our Preliminary Statement,

18  this Court, and the District Court, for that matter, have

19  already ruled with respect to the Application of principles

20  of comity and the need and the bedrock principle for

21  coordination between the Courts.  And it was on that basis

22  that the Court denied this request for relief in the first

23  instance, albeit without prejudice to the right of the

24  Plaintiffs to come back should the circumstances drastically

25  change.  Now, Mr. Etkin, on behalf of his clients, has

1  indicated that we've reached that point where there has been

2  a drastic change in the circumstances and while some of the

3  factors that were considered by the Court at the time of the

4  original request, undoubtedly have been resolved.  As the

5  Court is well aware, we are now facing the prospect of having

6  this freight train in the form of a trial come down on all

7  the parties, including the Courts here in the United States,

8  as well as Canada.  And so if we go back to the renewed

9  Motion, Mr. Etkin doesn't raise any new arguments or facts

10  other than, you know, reciting the fact that some of the

11  transactional matters have been resolved.  The legal

12  arguments are still the same.  They're the same arguments

13  that were unpersuasive to the Court at the original request

14  and I think --

15          MR. ETKIN:  Your Honor, I hate to interrupt, but

16  is this a Status Conference or is this argument on the

17  matter?

18          THE COURT:  I thought this was a Status Conference

19  but --

20          MR. ETKIN:  I thought so too, Your Honor.  I'm not

21  hearing a Status Conference.

22          MR. GUYDER:  Well, it's a Status Conference in the

23  sense, Your Honor, that we've asked, or at least framed our

24  request in our Preliminary Statement, as a request for a

25  Status Conference today to discuss the sole issue of whether

1    or not Mr. Etkin should be directed to Canada to first seek

2    relief that he has described in his Motion, and we're

3    prepared to proceed on that basis, Your Honor.  If the Court

4    is not inclined to grant that request today, then we will

5    address each of the issues raised by Mr. Etkin, albeit, do it

6    again, with respect to the normal schedule for responding to

7    the Motion.

8            THE COURT:  Well, generally, for a Status

9    Conference, I don't do a lot of preparation.  So I don't come

10   to this, you know, fully prepared to discuss the merits or

11   even slightly prepared to discuss the merits.  A Status

12   Conference to me is are the parties having discussions, you

13   know, is there a briefing schedule, have the papers been

14   fully briefed, you know, that sort of thing.

15           MR. GUYDER:  Yes.

16           THE COURT:  And sometimes parties give me a little

17   bit of background about the issues, but I think you're going

18   a little beyond a Status Conference type of presentation.

19           MR. GUYDER:  Well, we're not asking for new relief

20   here, Your Honor.  All of the issues have been briefed,

21   frankly, by the parties and the sole issue here is whether or

22   not the Plaintiffs should be directed to Canada to seek the

23   relief that they're looking for, albeit in their renewed

24   Motion filed in this Court.  This Court previously ruled that

25   comity and coordination pertaining to the Courts requires

1  that, and the District Court affirmed that and here we are

2  again facing this request by the Plaintiffs for relief from

3  the Recognition Order in circumstances where the Court's

4  already determine that they ought to go to Canada first.  And

5  so what we're trying to do is avoid the delay and the expense

6  of having to respond, in kind, to all the arguments and

7  positions laid out in Mr. Etkin's papers and get to, I think,

8  the more practical resolution of this, which is giving effect

9  to the Court's prior rulings and directing Mr. Etkin to

10  Canada.

11          THE COURT:  So your status is that the matter has

12  been briefed and its ripe for my decision.  Is basically that

13  right, Mr. Guyder?

14          MR. GUYDER:  I think, effectively, that's right,

15  Your Honor.  However, as we indicated in our request for this

16  Status Conference, we think it can be disposed of on the sole

17  issue of whether or not the Court's prior rulings are

18  dispositive of where Mr. Etkin must go to seek the relief

19  he's looking for.

20          THE COURT:  Okay.

21          MR. GUYDER:  If you're not inclined to grant that

22  relief that we requested in our preliminary response, we're

23  prepared to go down the path of briefing this again and

24  providing whatever supplemental Declarations are necessary

25  and having a hearing on the merits.  But we don't think

1   that's necessary in light of what's happened so far with

2   respect to this issue and what's happening in the broader

3   case with respect to the litigation and whether or not there,

4   in fact, have been changed circumstances that would warrant

5   the relief that Mr. Etkin is looking for today.

6           THE COURT:  All right.  All right.  Thank you.  I

7   understand where you're coming from.

8           MR. GUYDER:  Thank you, Your Honor.

9           THE COURT:  Mr. Etkin?

10          MR. ETKIN:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.  Good to see you.

12          MR. ETKIN:  Good to see you as always, Your Honor.

13   Trying to get back to the Status Conference, but touching

14   upon what I think is the primary issue that Mr. Guyder

15   raises.  We have a very different view.  We don't believe

16   that this Court held that we must go to Canada to seek relief

17   under Section 1522 of Chapter 15.  If that were the case,

18   Your Honor, 1522 wouldn't exist.  There wouldn't be a

19   provision of Chapter 15 which would allow for modification of

20   Recognition Orders.

21          Let's take a step back for one second, Your Honor.

22   If the Court, in the CCAA proceeding, had entered an Order

23   issuing an injunction in favor of not only the Debtor but the

24   Debtor's current and former Officers and Directors and it

25   stopped there, we would not be here.  We would have been

1    litigating this case over the last four years since we were

2    last before Your Honor for oral argument --

3              THE COURT:  Yes.

4              MR. ELKIN:  -- on our initial Motion.  The only

5    basis upon which a U.S. litigation, U.S. securities

6    litigation, brought on behalf of a punitive class of

7    purchasers of stock on U.S. exchanges could be stayed is

8    through the Recognition Order that this Court issued early on

9    in the case.  Without that Order, there would be no stay of

10   the securities litigation.  We would have been proceeding,

11   and hopefully far along, maybe even have settled the case by

12   now.  Who knows?  But it is the proceeding before this

13   Court --

14             THE COURT:  Yes.

15             MR. ETKIN:  -- that creates the injunctive relief

16   that shuts down the securities litigation and has shut down

17   the securities litigation for close to five years.  So that's

18   number one.

19             Number two, I have the transcript, Your Honor, and

20   although the Court did suggest in its rulings, which starts

21   at page 36 and moves on to page 38, and I think we attached a

22   copy of the transcript to our papers.

23             THE COURT:  Yes, you did.

24             MR. ETKIN:  But I know that Your Honor has enough

25   on his plate.  Although the Court suggested and made comment

1  that perhaps the Canadian Court is the better Court to go and

2  seek this relief, and bear in mind, Your Honor, we asked also

3  at the time of that initial Motion, we asked for relief in

4  order to serve a subpoena.

5         THE COURT:  That's right.

6         MR. ETKIN:  A preservation subpoena.

7         THE COURT:  That's right.

8         MR. ETKIN:  And the Court was rather explicit in

9  its language as to where you thought we needed to go in

10  connection with serving the subpoena on a Canadian entity.

11  We understood that.  That was clear.  I don't believe this

12  Court determined that we were in the wrong Court for the

13  relief that we requested under 1522 of Chapter 15.  I don't

14  think that an issue was ever raised, and has not been raised

15  yet to my knowledge, that there is some jurisdictional issue

16  with respect to the filing of our Motion under Section 1522.

17  And as a practical matter, Your Honor, I don't think that

18  this Court would have ruled, without prejudice, to our right

19  to come back if things drastically changed, and in our view,

20  things have drastically changed over the four-year period

21  since we were last before Your Honor.  But that's the merits.

22  I'm not going to get into that.  We addressed that in our

23  papers.

24         THE COURT:  Right.

25         MR. ETKIN:  Why would this Court deny our Motion

1  without prejudice to come back only to tell us, oh, you're

2  back?

3          THE COURT:  Right.

4          MR. ETKIN:  You need to go to Canada.  You don't

5  belong before me.  So as a practical and as a legal matter,

6  Your Honor, it really does not make sense.  This is the right

7  church; the right pew.  We're in the right place in terms of

8  the Motion that we made under 1522.  Mr. Guyder may not agree

9  with it, and it's obvious he doesn't, and the Court may not

10  agree either, but we're in the right place.

11          And as a matter of status, Your Honor, a couple of

12  other things should be brought to your attention, and Mr.

13  Guyder was with me at a Conference set by Judge Scheindlin

14  who has this case and is wondering what's been going on for

15  the past five years since it was filed in front of him.

16          THE COURT:  Tell them to give me a call.

17          MR. ETKIN:  No.  You have enough Judges from other

18  jurisdictions to talk to Your Honor.  I don't think you want

19  to have that conversation quite yet.  But, obviously, she

20  doesn't fully appreciate why this case is stuck in the mud.

21  We explained that to her.  And I represented during that

22  Status Conference that we would re-file the Motion because

23  she -- something that this Court can appreciate, she, you

24  know, has a problem with this matter sitting on her docket

25  with a five-year old docket number.

1              THE COURT:  Right.

2              MR. ETKIN:  Somebody from another place looks at

3    that stuff and is not happy to see that and she doesn't want

4    to get into explanations.  She wants us to dismiss the case

5    without prejudice.  Now, Your Honor, that's fret with all

6    kinds of problems, statute of limitations included with

7    respect to class action securities litigation.

8              THE COURT:  Sure.  Sure.

9              MR. ETKIN:  So we represented that we would re-

10   file the Motion the next week and that's what we did.  Your

11   Honor, again, as a matter of status, and it was one of the

12   questions that the Court raised when Mr. Guyder was at the

13   podium, what's been discussed in terms of a potential

14   resolution.  We didn't file that Motion without attempting to

15   have some discussions with Mr. Guyder's partner, Mr. Coleman,

16   about some kind of middle ground to resolve this and to at

17   least get this litigation kick-started because this is

18   getting stale and the only people that are being prejudiced

19   are a class of investors in this company who, as the Court

20   would note, were not represented at any of the tables in the

21   prior conference because equity holders are out of the money

22   with respect to the CCAA proceeding.  So they don't have a

23   seat at the table.  This is their only opportunity for a

24   recovery in this case.  And as a practical matter, there is

25   insurance available.  I don't know exactly how much.  We

1   haven't gotten --

2           THE COURT:  Yes.

3           MR. ETKIN:  -- that far.  And I'd be happy to

4   share with the Court, because we kind of made the argument

5   previously, because it's just the logic just jumps out at

6   you, that we haven't even filed a Consolidated Amended

7   Complaint yet.  Now, that doesn't require anybody to do

8   anything.  Under the PSLRA, discovery is stayed until a

9   Motion to Dismiss is decided.  I'm fairly sure that a Motion

10  to Dismiss will be filed.  There'll be a briefing schedule

11  and Judge Scheindlin will finally have something to do in

12  this case, which would be decide Motions to Dismiss.  Now,

13  that could happen.  We propose that.  It doesn't work.

14          Frankly, Your Honor, you know, and I apologize.

15  You know, I don't want to get into argument.  I don't know

16  why the Monitor really cares so much about this case anymore,

17  but apparently they do.  You know, sometimes you say no

18  because you can.  But, you know, we propose to do something

19  like that and then once the Motion to Dismiss was decided,

20  which would likely be well after this trial is completed, we

21  could revisit the issue.  Now, you know, even Mr. Coleman

22  said in the transcript of the initial hearing, well, the

23  litigation can't get stayed forever.  Well, it's starting to

24  feel like forever, Your Honor, and getting back to the

25  threshold question, we believe it's time to revisit the

1    issue.  We believe that a lot has happened, significant

2    things have happened.  Yes, there's an allocation trial

3    coming up but the scope and the breadth of that trial, which

4    is obvious to anybody who just spent the last hour and a half

5    in your Courtroom, does not perforce mean that allowing this

6    case to go forward is going to somehow disrupt and throw that

7    off course.  We wouldn't even be a fly on the wall.  There's

8    a more colorful expression for it, Your Honor, but I'll spare

9    the record that one.  But that's an issue for you to decide

10   on the merits.  But are we in the right place?  We're in the

11   right place.  Would Your Honor have invited us to come back

12   if things drastically changed if we weren't in the right

13   place?  I don't' think so.  Would 1522 essentially be

14   neutralized if a litigant who was impacted by a Recognition

15   Order staying litigation in the United States had to, as a

16   matter of law, go to the foreign main proceeding, to that

17   jurisdiction to seek relief, whether it be in Japan, or I

18   know it's a much shorter flight to Toronto, but you know,

19   that's unnecessary.  That is not what Chapter 15 anticipates.

20   We might not have gotten there as far as the Court is

21   concerned, but as a threshold matter, we're entitled to bring

22   this back to the Court's attention and have this issue

23   addressed.

24              THE COURT:  Thank you.  Thank you, Mr. Etkin.

25              MR. ETKIN:  Thank you, Your Honor.

1             THE COURT:  Yes?

2             MR. GUYDER:  All right, Your Honor, Dan Guyder,

3    from Allen & Overy.  Just a couple of points there, Your

4    Honor.  First, just to remind the Court that at the time that

5    you expressed concern about whether or not Mr. Etkin was in

6    the right Court, it was not limited to his request for a

7    subpoena.  The concern at that time was the fact that his

8    clients had filed Claims in Canada against the Directors and

9    Officers and against the Canadian Estates and that there's

10   effectively overlap between those Claims and that the Court

11   was, I think, from the transcript, concerned that by allowing

12   this sort of relief, the Court would find itself out ahead of

13   the Canadian Court and raise the specter of duplication of

14   efforts between litigation that would ensue in the Southern

15   District of New York versus the orderly claims resolution

16   process that's underway in Canada.  And to that end, I think

17   it's worth noting, Your Honor, that there's a claims

18   resolution procedure that was approved in Canada that this

19   Court has given effect to here in the United States, and for

20   all intents and purposes, the Plaintiffs have complied with

21   that.  They've submitted to the jurisdiction of the Court and

22   Canada for purposes of resolving those Claims.  And so I

23   don't think the concern raised was simply limited to the

24   discovery subpoena, and therefore, is no longer relevant for

25   purposes of the discussion.  We disagree with Mr. Etkin that

1  he's presently in the right Court for purposes of seeking

2  relief from the Recognition Order.  And on that point, it's

3  worth noting, Your Honor, that this is not so extraordinary

4  as it's been characterized by Mr. Etkin.  Under the CCAA

5  process, in addition to the usual administration of the

6  Debtor through the CCAA, there is always a call for claims

7  with respect to the Directors and Officers and that's what's

8  happened here.  And so it is a natural part of the CCAA

9  process that there is, in effect, a staying of the actions

10  against the Directors and Officers and so it's not but/for

11  the Court's entry of the Recognition Order here that Mr.

12  Etkin is stayed, it's a natural byproduct of the CCAA

13  process, which this Court considered and already recognized

14  when it entered the Recognition Order in the first place.

15        And so, in that sense, Your Honor, I think he's

16  overstating how extraordinary it is given the context of this

17  case being Chapter 15 along with the CCAA.

18        THE COURT:  Well, a Motion has been filed before

19  me.  The party that files that Motion is entitled to at least

20  have the Court address it and I leave it to you if you want

21  to file opposing papers or not, and if so, I would certainly

22  read those papers as well and then decide the issue at that

23  point.  Doesn't that seem to make sense?  I mean the Motion

24  has not yet been joined, if you will, and I think it ought to

25  be.

1       MR. GUYDER:  Okay.  Understood, Your Honor.  I

2   mean in terms of, you know, how we got here today, we

3   obviously filed a request for the Status Conference, which we

4   appreciate the Court granting.  We understand, of course, the

5   Court retains the power to decide the scope of its

6   Recognition Order.

7       THE COURT:  Sure.  And that's why I've been asked

8   to do that.

9       MR. GUYDER:  Right.  And --

10      THE COURT:  I had denied it without prejudice in

11  the past, which means a party is certainly entitled to come

12  back if they perceive that events or time or whatever has

13  changed and I would look at it fresh.

14      MR. GUYDER:  Right.  And we had framed our request

15  as a request to consider the sole issue of whether or not,

16  you know, obviously, based on the discussion, the Court is

17  not inclined to grant that relief today.

18      THE COURT:  No.  No, I'm inclined to say I want to

19  decide the Motion and I want to give you an opportunity to

20  respond.  All right?

21      MR. GUYDER:  Thank you, Your Honor.

22      THE COURT:  So does that make sense to you, Mr.

23  Etkin?  I think I've got to be able to decide the Motion.

24      MR. ETKIN:  Your Honor, that's why we filed it.

25      THE COURT:  Yes.

1          MR. ETKIN:  And to the extent that Mr. Guyder

2    wants to discuss a schedule other than what was sent out in

3    our initial papers, that would also comport, you know, with

4    the Court's schedule and hearings on Chapter 15, your

5    availability, we would be happy to discuss that so that the

6    matter is fully briefed and we have the opportunity to come

7    in and argue the Motion and leave it to the Court to rule.

8          THE COURT:  Very well.  That's what we'll do.  How

9    much time do you need to respond?  Are you discussing that

10   with Mr. Etkin?  Is that it?

11         MR. GUYDER:  I'm happy to take up that discussion

12   with Mr. Etkin, Your Honor.

13         THE COURT:  All right.  Very well.  If there's a

14   problem, then reach out to me.

15         MR. ETKIN:  I can't imagine that there would be a

16   problem.

17         THE COURT:  I hope not.

18         MR. ETKIN:  And I don't think we'll have problems

19   with the length of the Briefs or anything like that.

20         THE COURT:  Okay.  Very well.  Or the time.

21         MR. ETKIN:  Or the time.

22         THE COURT:  I'll have the time.  I'm telling it.

23   All right, Counsel.  Thank you.

24         MR. ETKIN:  Thank you, Your Honor.

25         MR. GUYDER:  Thank you, Your Honor.

1          THE COURT:  Thank you, and I certainly understand

2   and it was an interesting Status Conference.  Ms. Murphy?

3          MS. MURPHY:  I was just going to say, Your Honor,

4   that concludes the items on the Agenda for this allocation

5   portion.

6          THE COURT:  Thank you.  Thank you so much.  All

7   right.  With that, we will stand in recess and good day to

8   everyone.

9          MR. ETKIN:  Good day, Your Honor.

10

11      (Whereupon, at 2:56 p.m., the hearing was adjourned

12

13                     CERTIFICATION

14      I  certify  that  the  foregoing  is  a  correct

15   transcript  from  the  electronic  sound  recording  of  the

16   proceedings in the above-entitled matter.

17
18
19   _____        14 March 2014
20   Tammy Kelly, Transcriber                    Date
21   Diaz Data Services, LLC

| Word | Page:Line |
|------|-----------|

abbott(11) 1:26 7:12 7:13 7:21 7:25 8:3 8:5 77:6 77:10 77:13 77:16

ability(3) 30:22 53:19 72:10
able(10) 10:4 18:1 37:4 44:13 56:5 57:12 61:7 63:16 74:3 91:23

about(54) 9:10 12:16 17:1 17:2 29:25 30:16 30:21 30:23 32:10 32:16 37:7 41:8 41:14 52:25 53:17 53:19 54:14 56:4 58:12 59:4 59:8 59:10 59:11 60:4 61:9 61:19 62:6 62:8 65:2 65:6 65:8 65:11 65:16 66:5 66:21 67:19 67:22 68:19 70:13 70:16 72:6 73:1 74:3 74:25 75:5 75:10 75:25 76:23 76:25 80:17 86:16 87:16 89:5

above-entitled(1) 93:16
absolute(1) 39:6
absolutely(5) 30:19 34:22 35:13 52:19 62:23
absorb(3) 30:22 30:22 42:2
acceptable(2) 10:14 10:18
accommodate(1) 10:18
accordingly(2) 7:20 37:9
accurate(1) 73:16
achieve(2) 30:18 47:24
acknowledge(1) 23:4
acknowledgment(1) 44:6
across(1) 38:23
action(1) 86:7
actions(1) 90:9
actively(1) 26:24
actually(7) 13:23 14:20 19:11 20:12 25:2 28:14 73:13
adam(1) 5:37
add(2) 26:4 36:20
adding(1) 26:2
addition(1) 90:5
additional(1) 27:16
address(5) 12:12 12:17 63:10 80:5 90:20
addressed(8) 9:1 10:3 12:6 12:24 39:10 74:4 84:22 88:23

addresses(1) 10:8
adjoined(1) 30:8
adjourned(1) 93:11
adjusted(1) 51:7
adjustments(1) 31:10
administered(1) 1:6
administration(1) 90:5
administrative(2) 30:5 64:16
administratively(1) 30:9
administrator(1) 5:10
administrators(2) 2:21 5:46
adopt(1) 24:15
adopts(1) 23:4
adroitly(1) 76:1
advance(7) 15:9 16:2 22:16 23:9 26:17 28:1 31:12
advanced(1) 17:16
advancement(1) 16:14
advancing(1) 15:5
advani(1) 3:35
advantage(3) 35:4 46:17 46:19
adversaries(1) 33:22
adversary(1) 24:8
adverse(3) 15:7 21:7 22:5
advise(1) 15:12
advocate(4) 14:19 22:18 33:23 34:21
advocated(1) 20:4
advocates(1) 19:24
advocating(7) 19:6 19:10 19:19 22:6 24:7 24:10 40:7
affidavit(7) 15:21 31:14 35:12 36:9 36:11 46:11
affidavits(21) 8:20 10:9 12:15 17:25 25:8 30:12 32:22 32:23 38:10 39:6 40:13 41:5 45:16 45:8 45:22 45:23 55:17 56:16 56:20 56:22 56:23

affirmative(2) 17:16 43:2
affirmed(1) 81:1
afford(1) 52:5
afforded(2) 68:8 68:9
after(4) 7:23 12:18 12:24 87:20
afternoon(18) 7:11 7:13 7:14 8:6 8:8 18:16 59:20 70:22 71:8 71:9 76:17 76:18 77:19 77:20 78:7 78:8 82:10 82:11

again(10) 10:4 11:11 34:4 70:9 70:19 78:7 78:8 80:6 81:2 81:23 86:11

against(14) 19:25 26:19 26:20 33:23 48:3 48:3 48:10 48:12 65:17 68:4 75:14 88:9 89:9 90:10

agenda(1) 93:4
ago(2) 28:19 74:12
agree(16) 22:2 25:16 32:4 32:6 32:8 32:20 38:18 39:21 40:2 63:12 63:17 67:20 71:2 76:6 85:8 85:10

agreed(15) 8:16 8:19 8:21 9:6 10:1 20:9 37:23 44:9 49:1 49:18 54:3 54:16 54:19 55:5 57:15

agreed-upon(1) 8:22
agreeing(2) 24:12 56:14
agreement(3) 10:4 37:17 47:9
ahead(2) 60:16 89:12

aimed(2) 25:25 27:1
akin(2) 2:12 4:36
albeit(3) 78:23 80:5 80:23
alberto(1) 3:28
all(70) 7:10 7:20 8:2 8:10 10:25 12:18 13:3 17:3 18:11 21:9 24:12 25:10 29:22 30:6 30:16 31:4 33:16 35:8 35:11 35:24 36:10 36:19 37:4 37:5 38:8 39:23 41:9 46:24 47:4 47:4 47:5 47:8 49:17 50:13 51:15 52:12 52:23 53:13 54:8 55:7 56:12 57:8 58:6 58:22 64:3 67:18 68:11 68:14 71:21 72:2 72:5 75:11 75:22 76:1 76:6 76:15 77:18 78:15 79:6 80:20 81:6 82:6 82:6 86:5 89:2 89:20 91:20 92:13 93:6

allen(4) 4:6 4:30 71:10 89:3
allocate(6) 10:14 16:12 37:25 38:20 38:21 44:13
allocated(1) 17:3
allocating(1) 20:5
allocation(64) 10:23 10:24 11:3 11:4 11:16 11:22 12:10 13:8 13:13 13:14 13:17 13:22 14:18 14:18 14:21 15:17 15:17 16:14 17:3 17:5 17:10 19:7 19:12 19:17 20:7 20:9 20:23 21:2 21:13 21:17 21:22 21:23 22:5 22:7 27:7 27:21 27:25 33:12 33:18 35:1 36:16 37:12 37:13 38:10 39:17 39:21 40:7 40:21 41:7 42:5 44:18 46:15 47:1 48:6 54:25 65:18 73:10 75:1 75:3 75:6 75:15 88:2 93:4

allocations(1) 37:19
allow(3) 36:11 64:17 82:19
allowed(4) 20:21 44:19 68:4 68:5
allowing(2) 88:5 89:11
alone(3) 37:12 74:23 76:4
along(6) 30:17 31:10 32:15 57:12 83:11 90:17 72:18 78:19 81:4 90:13

also(20) 7:4 11:2 12:15 15:1 22:8 23:3 23:21 26:15 29:23 34:1 42:6 44:9 53:6 58:3 61:14 62:21 64:17 77:1 84:2 92:3

alternate(9) 14:25 16:10 23:5 23:21 26:17 26:19 26:20 27:19 28:21

alternative(2) 17:15 41:23
although(3) 40:10 83:20 83:25
always(6) 14:16 27:12 31:23 32:1 82:12 90:6
amended(4) 9:18 51:7 51:11 87:6
amendment(2) 9:6 10:7
america(1) 6:25
american(2) 71:16 60:8
americas(2) 3:48 4:9
amnesty(1) 32:15
among(4) 34:7 34:23 43:8 56:1
amongst(2) 12:10 48:7 59:21 59:22
amount(13) 12:16 16:11 17:10 20:25 26:5 29:7 30:21 33:1 33:7 38:22 40:11 45:14 73:24

amounts(2) 37:2 37:3
and(301) 5:24 5:40 7:4 7:11 7:14 8:9 8:11 8:17 8:18 8:19 8:20 8:23 8:24 8:24 8:25 9:1 9:2 9:2 9:3 9:4 9:17 9:17 9:22 9:23 10:1 10:1 10:5 10:6 10:7 10:7 10:8 10:9 10:10 10:10 10:11 11:2 11:3 11:11 11:16 11:18 11:22 12:10 12:12 12:15 12:15 12:21 12:22 12:23 13:3 13:11 13:19 13:20 13:23 13:25 14:7 14:7 14:9 14:11 14:14 14:14 14:25 15:2 15:3 15:5 15:10 15:13 15:15 15:19 16:1 16:5 16:6 16:7 16:7 16:9 16:18 16:18 16:23 16:25 17:17 17:12 17:16 18:4 18:4 18:5 18:7 18:9 18:17 18:17 18:18 18:19 18:23 19:9 19:15 19:20 20:16 20:20 20:23 21:2 21:10 20:10 20:15 20:18 20:19 20:20 20:25 21:19 22:4 22:16 22:16 22:22 23:3 23:6 23:16 23:21 23:23 23:25 24:7 24:8 24:8 24:11 24:14 24:19 24:24 25:14 25:15 25:16 26:7 26:10 26:16 26:21 26:24 27:1 27:22 27:9 29:11 29:15 29:22 30:3 30:4 30:4 30:9 30:10 30:12 30:19 30:22 31:1 31:2 31:3 31:3 31:10 31:12 32:13 32:17 32:19 32:23 32:23 32:25 33:1 33:3 33:6 33:14 33:14 33:16 33:16 33:17 33:20 33:22 34:6 34:25 34:9 34:19 34:24 34:25 35:6 35:7 35:8 36:7 37:2 37:4 37:11 37:16 37:17 38:11 39:7 39:9 39:17 40:3 40:7 40:18 41:14 42:18 42:20 43:25 44:1 44:2 47:15 48:5 48:13 48:13 48:15 49:6 51:1 51:2 54:13 56:3 56:16 56:23 58:6 59:2 62:19 68:3 69:5 69:24 71:4 72:5 72:9 74:1 75:17 77:1 78:16 79:5 79:12 80:12 81:1 81:17 81:24 86:18 86:19 86:21 88:10 92:9

and(214) 52:13 52:18 53:5 53:7 54:1 54:5 54:9 55:1 55:5 55:6 55:10 55:15 56:2 56:13 56:15 57:3 57:4 57:8 57:10 57:18 58:2 58:4 58:6 58:12 58:14 58:16 58:16 58:17 58:22 59:23 59:9 59:11 59:14 59:20 59:22 59:22 59:23 60:8 61:8 62:8 62:24 63:9 64:6 65:5 65:9 65:18 66:8 66:17 66:18 67:11 67:13 67:19 67:21 67:25 67:25 68:7 68:11 68:13 68:19 68:25 69:2 69:5 69:6 69:8 69:9 69:11 69:16 69:20 69:21 69:22 70:3 70:6 70:7 70:8 70:9 70:14 70:19 70:19 71:3 71:14 71:16 71:16 71:18 71:19 72:1 72:6 72:16 72:18 72:23 72:25 73:3 73:5 73:7 73:13 73:14 73:19 73:20 73:24 74:2 74:7 74:12 74:22 75:6 75:11 75:15 75:17 76:1 76:2 77:1 77:11 77:16 77:17 78:12 78:14 78:15 78:18 78:20 78:20 78:21 79:2 79:8 79:14 80:2 80:16 80:21 80:25 81:1 81:1 81:4 81:5 81:6 81:7 81:9 81:12 81:23 81:25 82:2 82:3 82:24 82:24 83:11 83:16 83:19 83:21 83:21 83:25 84:1 84:2 84:8 84:14 84:17 84:19 85:5 85:9 85:9 85:11 85:12 85:14 85:21 86:3 86:3 86:10 86:11 86:16 86:18 86:24 87:3 87:11 87:14 87:19 87:24 88:3 88:4 88:6 88:22 89:8 89:9 89:9 89:10 89:13 89:16 89:19 89:20 89:21 89:22 89:24 90:2 90:7 90:7 90:8 90:10 90:10 90:13 90:15 90:20 90:21 90:22 90:24 91:7 91:9 91:13 91:14 91:19 92:1 92:4 92:6 92:7 92:7 92:18 93:1 93:2 93:7

andrew(1) 3:21
angela(1) 4:48
ann(1) 1:27
another(4) 19:7 21:6 38:21 86:2
answer(2) 31:9 68:10
anticipated(1) 58:13
anticipates(1) 88:19
anticipation(1) 74:9
any(38) 9:24 15:12 17:10 18:2 21:5 23:15 24:22 25:22 26:13 27:2 27:8 28:1 31:8 36:3 40:22 42:1 43:10 44:13 46:8 48:19 52:25 61:18 62:11 64:6 64:9 65:6 65:11 65:18 66:4 68:18 68:22 71:3 72:7 74:9 74:21 75:15 79:9 86:20

anybody(5) 36:13 47:18 52:24 87:7 88:4
anymore(2) 64:10 87:16
anyone(4) 40:19 66:13 70:11 70:12
anything(11) 9:12 11:23 30:15 37:18 62:5 70:17 70:20 73:3 74:18 87:8 90:7

apologize(3) 53:8 70:3 87:14
apparent(1) 20:16
apparently(4) 64:15 72:16 87:17
appear(1) 67:23
appearances(3) 4:27 5:1 6:1
application(2) 65:23 78:19
appoint(1) 73:9
appointed(3) 66:23 68:24 70:19
appreciate(6) 19:4 52:2 56:18 85:20 85:23 91:4
approach(2) 23:22 65:15
approaching(1) 61:18
appropriate(9) 20:12 20:24 23:6 25:21 26:11 37:2 39:18 41:13 42:5

approval(4) 9:24 51:8 51:12 58:18
approved(9) 9:5 9:12 9:14 49:10 49:12 49:15 49:19 51:6 89:18

april(2) 56:21 56:23
are(97) 7:15 8:11 10:21 11:6 11:17 11:18 11:19 12:5 12:24 13:23 14:4 14:22 15:14 15:23 17:16 18:18 19:19 19:20 20:13 21:16 21:21 22:3 22:14 23:10 23:19 24:7 24:9 24:9 24:18 24:21 25:1 25:9 25:19 25:22 26:21 28:8 28:16 29:6 30:4 30:8 30:25 32:8 33:17 36:17 37:2 37:3 37:19 38:11 39:7 39:9 40:3 40:7 40:18 41:14 42:18 42:20 43:25 44:1 44:2 45:11 45:14 46:7 46:11 46:13 47:15 48:5 48:13 48:13 48:15 49:6 51:1 51:2 54:13 56:3 56:16 56:23 58:6 59:2 62:19 68:3 69:5 69:24 71:4 72:5 72:9 74:1 75:17 77:1 78:16 79:5 79:12 80:12 81:1 81:17 81:24 86:18 86:19 86:21 88:10 92:9

areas(2) 10:11 12:5
aren't(1) 36:2
argue(1) 92:7
arguing(1) 30:15
argument(4) 79:16 83:2 87:4 87:15
arguments(6) 9:2 40:18 79:9 79:12 79:12 81:6
arise(1) 17:18
arises(1) 54:2
around(5) 31:5 41:8 43:1 57:15 78:16
arranged(1) 60:17
arrangement(1) 49:1
arsht(1) 1:25
arthur(1) 5:16
articulated(1) 29:17
aside(1) 74:21
ask(13) 9:9 17:14 21:11 27:11 30:14 36:15 51:22 54:16 61:3 61:23 64:6 65:22 71:3

asked(7) 29:23 59:7 61:17 79:23 84:2 84:3 91:7
asking(6) 24:20 29:11 29:14 29:15 54:5 80:19
assert(2) 47:25 48:12
asserting(1) 48:2
asserts(1) 48:10

assessment(1) 27:8
assets(3) 13:24 22:10 24:13
assume(3) 7:23 52:12 57:11
assumed(1) 48:13
assure(1) 41:19
attached(2) 49:19 83:21
attempt(1) 30:7
attempting(2) 48:8 86:14
attendance(1) 59:11
attention(3) 41:24 85:12 88:22
aurelius(1) 6:19
availability(1) 92:5
available(2) 71:17 86:25
ave(1) 3:29
avenue(6) 2:47 3:36 3:42 3:48 4:9 4:15
avoid(3) 63:21 63:25 81:5
avoyer(2) 77:25 79:5
back(21) 10:14 16:23 41:22 31:12 45:19 48:25 50:22 54:13 54:17 70:13 78:24 79:8 82:13 82:21 84:19 85:1 85:2 87:24 88:11 88:22 92:12

background(2) 7:6 80:17
backward(1) 56:4
backwards(1) 56:3
badtke-berkow(1) 4:31
bank(1) 6:25
bankrupt(1) 22:11
bankruptcy(2) 1:1 1:20
bare(3) 24:16 26:23 41:21
barnes(5) 47:21 47:23 47:23 48:18 50:11
barnett(1) 6:18
barrick(7) 56:13 60:21 60:21 61:3 61:15 61:22 62:2
barrick's(1) 66:6
barry(1) 5:42
based(8) 14:17 19:10 20:11 44:22 44:22 44:23 78:10 91:16

bases(1) 44:23
basic(2) 2:8 31:15
basically(1) 81:12
basis(10) 34:23 35:9 35:10 48:9 73:3 73:5 73:7 78:21 80:3 83:5

battery(1) 2:25
bayard(1) 3:27
bear(1) 84:2
beat(1) 26:22
because(55) 7:19 8:11 9:22 10:13 11:1 11:9 11:20 11:22 13:5 13:15 13:22 14:21 15:12 15:20 18:6 20:10 22:1 24:6 24:9 27:1 27:3 29:4 29:10 29:12 30:3 31:16 31:19 32:14 35:14 37:21 38:21 42:17 42:25 43:4 43:15 44:10 45:24 46:10 51:17 52:17 53:16 54:1 55:11 56:17 59:24 65:9 70:24 75:22 75:25 85:22 86:17 86:21 87:4 87:5 87:18

becker(1) 4:15
become(1) 30:13
becomes(1) 20:16
bedrock(1) 78:20
been(42) 9:7 10:5 13:10 13:20 14:16 14:17 22:11 25:8 43:1 43:25 44:1 51:6 51:7 54:12 55:25 56:8 59:9 60:9 62:11 64:8 64:22 66:4 67:13 73:24 73:25 78:15 79:1 79:4 79:11 80:13 80:20 81:12 82:4 82:25 83:10 84:14 85:14 86:13 90:4 90:18 90:24 91:7

before(18) 1:19 7:17 7:17 8:13 10:11 17:3 19:13 51:4 53:7 55:12 55:15 58:10 58:18 83:2 83:12 84:21 85:5 90:18

beginning(1) 11:15
begins(1) 10:20
behalf(6) 47:23 71:1 71:12 77:24 78:25 83:6
being(16) 17:17 26:24 27:12 35:4 56:20 59:19 62:12 65:2 66:9 67:22 68:1 70:10 74:4 74:14 86:18 90:17

believe(19) 9:7 9:13 23:17 37:5 38:16 44:25 52:5 56:11 56:22 57:14 63:17 66:1 66:14 67:25 70:12 81:16 84:11 87:25 88:1

belknap(1) 3:46
belong(1) 85:5
below(1) 27:7
bench(1) 23:1
beneficial(2) 31:22 41:5
benefit(2) 40:23 76:12
beside(1) 39:20
best(3) 35:22 53:3 55:19
betsy(1) 5:32
better(4) 31:2 40:17 56:13 84:1
between(14) 9:16 11:5 12:22 28:2 44:9 50:8 52:10 56:20 59:9 68:19 70:14 78:21 89:10 89:14

beyond(2) 78:16 80:18
bill(1) 2:23
billion(6) 20:21 40:20 65:9 65:10 68:5 69:20
bit(5) 28:14 41:13 55:23 65:10 80:17
blackwell(1) 6:37
blank(5) 13:14 13:15 13:18 13:19 13:20
blended(1) 28:8
board(2) 5:30 38:23

| Word | Page:Line |
|------|-----------|
| boards(1) 48:14 | |
| bond(1) 35:19 | |
| bondholder(3) 3:4 3:19 5:19 | |
| bondholders(15) 9:17 14:3 14:4 14:10 16:24 20:17 25:1 25:1 25:2 33:19 34:18 42:12 65:9 67:25 68:1 | |
| bonds(3) 25:2 36:2 42:15 | |
| borosh(1) 5:41 | |
| both(10) 11:16 11:20 40:16 52:4 56:14 56:14 56:17 59:24 67:8 69:22 | |
| bother(1) 53:17 | |
| botter(1) 4:37 | |
| bottom(4) 45:3 45:5 46:21 54:18 | |
| box(10) 4:23 38:17 38:25 39:1 39:2 39:20 40:6 45:15 46:19 46:21 | |
| brad(1) 4:41 | |
| brass(1) 6:22 | |
| breadth(2) 43:4 88:3 | |
| break(4) 10:21 11:5 11:7 20:22 | |
| breakdown(1) 15:13 | |
| breath(1) 63:8 | |
| brian(1) 3:34 | |
| brief(14) 9:11 11:7 13:1 19:9 22:21 23:16 26:10 34:7 34:15 36:25 42:11 43:20 45:3 58:19 | |
| briefed(4) 80:14 80:20 81:12 92:6 | |
| briefing(3) 80:13 81:23 87:10 | |
| briefly(1) 19:3 | |
| briefs(12) 8:21 12:15 34:1 34:2 36:16 36:16 36:17 39:6 39:20 46:22 55:16 92:19 | |
| bring(1) 88:21 | |
| broader(1) 82:2 | |
| brock(1) 6:37 | |
| broken(1) 49:4 | |
| bromely(2) 64:14 74:7 | |
| bromley(41) 13:44 64:4 64:5 64:9 64:12 64:18 64:22 65:1 65:5 65:8 65:13 65:21 65:22 66:7 66:17 67:2 67:6 67:11 67:20 68:15 68:21 69:3 69:7 69:9 69:14 69:16 69:20 70:14 70:17 70:25 71:3 71:17 71:18 72:1 72:12 72:16 72:23 73:17 73:23 73:24 75:12 | |
| bromley's(2) 74:17 74:17 | |
| brought(5) 76:3 76:3 76:4 83:6 85:12 | |
| bryant(1) 2:15 | |
| buchanan(2) 2:37 77:21 | |
| bucket(1) 13:16 | |
| bullen(1) 4:46 | |
| burden(3) 21:24 21:25 52:4 | |
| business(2) 19:22 30:23 | |
| but(94) 9:7 9:11 9:24 15:9 15:12 15:24 16:17 16:22 17:6 18:9 18:19 20:6 20:15 22:2 24:10 24:16 24:17 25:21 26:8 26:12 26:13 26:15 27:4 27:19 28:24 29:16 30:3 30:6 30:7 30:11 30:16 31:1 31:14 32:8 32:17 33:12 33:12 33:24 34:8 35:14 35:14 35:20 36:8 37:6 38:8 38:19 40:15 41:15 42:2 44:2 44:21 45:13 48:3 48:7 48:9 50:2 51:25 52:10 53:8 56:4 56:25 57:24 58:21 63:8 63:15 64:6 64:19 66:7 69:4 70:3 70:13 71:14 73:5 79:15 79:19 80:17 81:25 82:13 82:23 83:12 83:24 84:21 85:10 85:19 87:17 87:18 88:3 88:8 88:9 88:10 88:18 88:21 | |
| but/for(1) 90:10 | |
| byproduct(1) 90:12 | |
| calendar(2) 52:22 62:22 | |
| calendars(1) 52:4 | |
| call(10) 9:23 36:6 57:19 58:25 66:9 69:11 69:25 74:19 85:16 90:6 | |
| called(4) 11:23 22:4 58:15 64:24 | |
| came(3) 17:3 61:9 68:2 | |
| can(58) 7:16 7:17 8:9 9:4 15:24 16:11 17:13 18:24 19:3 21:5 21:7 21:11 23:9 27:19 27:20 28:9 28:25 30:5 34:4 34:7 35:24 36:5 37:24 41:8 41:18 42:2 42:9 46:8 47:14 52:5 52:11 53:8 55:18 56:1 56:6 56:17 56:19 56:22 57:4 57:5 57:24 59:19 59:20 59:21 60:1 60:6 60:7 62:3 62:21 62:22 62:22 63:13 69:5 81:16 83:25 87:18 | |
| canada(3) 5:40 5:41 14:8 14:11 14:13 20:4 20:18 20:19 20:20 20:21 22:17 23:25 29:14 33:15 37:23 37:25 42:9 64:1 64:19 68:2 69:21 74:23 79:8 80:1 80:22 81:4 81:10 82:16 85:4 89:8 89:16 89:18 89:22 | |
| canada's(4) 21:24 24:19 25:25 26:1 | |
| canadian(67) 3:12 4:5 5:25 5:30 10:6 10:7 12:23 13:14 13:15 14:7 14:9 14:14 14:25 16:8 17:4 18:7 18:20 20:6 20:14 23:4 23:25 24:11 24:22 25:2 25:18 26:16 26:18 26:23 29:4 29:12 29:13 30:3 33:14 35:16 36:4 38:16 38:19 39:1 41:11 41:20 42:11 43:5 43:8 44:9 45:22 48:3 48:23 53:5 58:16 64:2 65:24 67:22 68:4 68:6 69:1 69:3 70:15 70:16 72:5 72:18 75:17 75:19 76:4 76:21 84:10 89:9 89:13 | |
| canadians(11) 44:12 44:12 44:15 45:9 45:13 45:18 46:5 72:10 75:15 75:21 76:12 | |
| canadian's(1) 66:21 | |
| cannot(3) 35:21 51:16 70:9 | |

| Word | Page:Line |
|------|-----------|
| can't(10) 35:20 40:25 41:1 44:21 51:17 51:19 56:9 66:14 87:23 92:15 | |
| capital(3) 6:9 6:21 6:33 | |
| care(2) 46:9 62:1 | |
| cares(1) 87:16 | |
| carve(1) 17:7 | |
| case(49) 1:15 13:11 13:21 14:17 16:16 18:6 19:11 19:12 19:13 19:16 20:11 20:17 20:21 21:1 31:6 34:2 34:21 35:15 40:15 40:16 40:20 40:22 49:4 53:3 54:13 64:10 64:11 64:13 64:14 66:18 69:24 73:13 75:6 75:7 76:4 78:17 82:3 82:17 83:1 83:9 83:11 85:14 85:20 86:4 86:24 87:12 87:16 88:6 90:17 | |
| cash(2) 19:23 19:24 | |
| cassels(1) 6:37 | |
| catching(1) 63:8 | |
| cause(1) 31:18 | |
| caw(2) 5:40 5:41 | |
| ccaa(7) 82:22 86:22 90:4 90:6 90:8 90:12 90:17 | |
| cec(27) 9:17 12:11 14:9 14:24 15:3 15:11 16:21 17:10 18:4 18:9 24:7 24:19 30:6 26:15 26:25 28:3 28:18 29:6 29:13 30:3 30:8 33:19 33:15 34:1 36:5 41:23 58:17 75:17 | |
| ccc's(1) 16:9 | |
| cede(1) 7:25 17:13 43:14 78:4 | |
| certain(3) 30:8 37:14 37:22 | |
| certainly(18) 16:10 25:21 31:9 52:2 52:3 56:5 58:2 63:7 65:18 66:16 67:16 68:21 68:24 69:5 75:5 90:21 91:11 93:1 | |
| certification(1) 93:13 | |
| certify(1) 93:14 | |
| challenge(2) 25:18 26:25 | |
| challenging(5) 25:19 25:25 26:1 26:22 26:23 | |
| chambers(1) 72:14 | |
| change(5) 9:15 31:18 38:24 78:25 79:2 | |
| changed(6) 49:23 82:4 84:19 84:20 88:12 91:13 | |
| changes(1) 30:17 | |
| changing(1) 31:17 | |
| chapman(1) 3:30 | |
| chapter(10) 1:8 7:22 77:17 78:17 78:17 82:17 82:19 84:13 88:19 90:17 92:4 | |
| characterization(1) 74:17 | |
| characterized(1) 90:4 | |
| characterizes(1) 19:18 | |
| chart(10) 24:18 27:1 34:15 34:15 34:17 38:4 48:25 49:9 54:13 54:17 | |
| charts(5) 23:18 23:19 24:1 24:6 27:5 | |
| chart's(1) 54:6 | |
| chase(1) 3:22 | |
| chief(3) 33:14 36:8 | |
| christopher(2) 2:6 4:21 | |
| chung(1) 6:26 | |
| church(1) 85:7 | |
| circumstances(5) 19:21 78:24 79:2 81:3 82:4 | |
| claim(11) 14:12 20:21 25:9 37:21 48:10 65:9 65:10 67:21 68:4 68:5 69:3 | |
| claimants(14) 3:27 6:5 12:9 13:18 13:19 14:10 14:15 14:19 14:21 16:1 18:24 25:14 25:22 61:17 | |
| claimant's(1) 78:1 | |
| claims(19) 10:19 10:25 11:6 11:10 11:10 11:11 11:11 11:16 11:18 11:19 11:22 12:2 12:12 13:15 13:16 14:11 19:25 20:10 20:17 20:18 20:20 20:23 37:24 37:24 38:17 39:14 39:15 41:7 43:16 43:21 43:22 43:22 43:23 43:24 44:1 44:2 44:18 44:19 44:22 45:7 45:8 46:12 46:15 46:22 48:1 48:1 48:2 48:5 48:8 48:15 49:3 50:6 50:6 50:8 53:17 54:3 54:15 54:19 54:24 55:3 65:16 65:17 65:19 70:16 73:2 74:17 74:23 75:5 75:14 89:8 89:10 89:15 89:17 89:22 90:6 | |
| claims-only(1) 72:8 | |
| class(3) 83:6 86:7 86:19 | |
| clear(6) 17:15 20:8 69:9 70:1 71:1 84:11 | |
| clearly(2) 7:10 19:1 | |
| cleary(2) 1:32 6:26 | |
| click(1) 73:10 | |
| client(4) 48:3 60:1 60:2 71:15 | |
| clients(5) 20:18 22:17 48:12 78:25 89:8 | |
| client's(5) 22:13 35:4 35:5 35:6 46:14 | |
| clogged(1) 73:1 | |
| close(2) 41:1 43:8 | |
| closing(1) 9:2 | |
| coleman(2) 86:15 87:7 | |
| collapse(1) 20:6 | |
| collapsed(1) 19:20 | |
| collaterally(1) 29:11 | |
| colleague(2) 18:20 23:25 | |
| colleagues(4) 23:17 53:24 72:5 72:13 | |
| collectively(2) 10:19 35:19 | |
| collier(1) 6:30 | |
| colorful(1) 88:8 | |
| column(5) 34:18 34:18 45:12 45:12 45:19 | |
| columns(2) 34:19 40:2 | |
| combine(1) 28:7 | |

| Word | Page:Line |
|------|-----------|
| come(16) 15:23 28:8 31:2 32:15 43:6 43:7 57:4 70:13 78:24 79:6 80:9 84:19 85:1 88:11 91:11 92:6 | |
| comes(1) 36:8 | |
| coming(5) 15:21 23:1 75:11 82:7 88:3 | |
| comity(2) 78:20 80:25 | |
| commencement(1) 55:15 | |
| comment(5) 29:24 33:8 69:8 74:17 83:25 | |
| comments(5) 7:20 13:4 16:21 41:14 42:10 | |
| commit(1) 70:20 | |
| commitment(1) 8:22 | |
| committee(9) 2:5 3:13 4:35 14:2 23:4 70:24 71:16 71:18 76:22 | |
| common(3) 8:22 19:23 20:5 | |
| communicate(2) 60:1 60:5 | |
| communication(2) 59:9 72:25 | |
| communications(5) 67:12 68:22 71:4 75:7 75:10 | |
| company(2) 48:10 86:19 | |
| comparable(1) 59:24 | |
| complaint(1) 87:7 | |
| completed(2) 59:2 87:20 | |
| completely(7) 25:15 35:2 64:12 64:13 64:14 74:20 74:24 | |
| complex(1) 37:8 | |
| complicated(1) 27:20 | |
| complied(1) 89:20 | |
| comport(1) 92:3 | |
| conaway(1) 2:29 | |
| concept(1) 19:8 | |
| concern(9) 30:20 43:16 56:2 66:16 69:14 75:8 89:5 89:7 89:23 | |
| concerned(8) 30:21 32:9 55:22 56:16 69:10 74:25 88:21 89:11 | |
| concerns(4) 43:16 71:16 73:20 76:22 | |
| concludes(4) 77:10 77:12 77:13 93:4 | |
| concoct(1) 27:20 | |
| confer(2) 14:1 56:5 | |
| conference(21) 7:11 8:17 9:23 77:14 77:25 78:9 79:16 79:18 79:21 79:22 79:25 80:9 80:12 80:18 81:16 82:13 85:13 85:22 86:21 91:3 93:2 | |
| confidential(1) 27:4 | |
| confidentiality(1) 8:23 | |
| conflict(1) 51:17 | |
| connection(2) 60:8 84:10 | |
| consecutive(1) 10:20 | |
| consider(7) 30:3 37:11 41:22 67:16 70:6 70:7 91:15 | |
| considerations(1) 48:5 | |
| considered(2) 79:3 90:13 | |
| consolidated(2) 19:20 87:6 | |
| consolidation(11) 12:12 14:24 15:2 16:15 19:19 26:8 26:10 26:25 73:2 74:20 | |
| constrained(1) 22:4 | |
| construct(2) 73:1 73:5 | |
| constructive(1) 67:16 | |
| cont(1) 5:14 | |
| contact(1) 60:23 | |
| contemplates(1) 58:14 | |
| contemplation(1) 58:21 | |
| contending(1) 42:6 | |
| contesting(1) 21:3 | |
| context(2) 21:19 90:16 | |
| continued(5) 2:2 3:2 4:2 5:2 6:2 | |
| continuing(1) 76:11 | |
| continuity(1) 7:5 | |
| contribution(2) 24:16 26:23 | |
| convenience(3) 36:10 52:11 57:22 | |
| convenient(3) 24:2 24:4 24:17 | |
| conversation(1) 85:19 | |
| cooperatively(4) 42:13 42:18 42:19 42:20 | |
| coordination(1) 52:18 | |
| coordination(2) 78:21 80:25 | |
| copy(3) 53:15 66:17 83:22 | |
| cordo(1) 1:27 | |
| correct(10) 21:9 24:25 25:4 27:14 35:13 36:18 39:22 46:1 51:20 93:14 | |
| correspondence(1) 68:18 | |
| cost(1) 78:14 | |
| could(26) 7:20 16:12 22:22 28:20 30:13 31:8 31:18 33:4 38:21 40:19 43:14 44:15 53:3 56:15 56:24 57:4 58:20 59:12 59:14 63:15 66:25 71:23 73:8 83:7 87:13 87:21 | |
| couldn't(2) 70:5 74:13 | |
| counsel(15) 18:14 29:23 59:10 59:21 59:22 59:25 60:1 62:15 62:25 64:24 66:21 67:8 68:19 69:22 92:23 | |
| count(1) 21:21 | |
| couple(3) 23:18 36:24 55:7 74:7 85:11 89:3 | |
| course(3) 11:23 76:20 77:4 88:7 91:4 | |

| Word | Page:Line |
|------|-----------|
| court(232) 1:1 7:2 7:6 7:10 7:24 8:2 8:5 8:10 8:14 9:8 9:19 9:20 10:5 10:6 11:8 11:14 11:21 11:25 12:4 12:7 12:20 12:25 13:3 13:9 14:2 14:6 16:11 16:20 17:14 17:23 18:11 18:15 18:22 19:1 22:20 22:24 23:11 23:23 27:11 27:15 27:23 28:5 28:12 31:24 32:6 33:10 36:23 37:4 42:11 43:11 43:18 43:23 47:17 50:4 51:4 51:18 51:20 51:24 52:8 52:12 52:17 52:20 52:23 53:6 53:13 53:17 55:9 56:24 57:2 57:10 57:16 57:23 58:1 58:5 58:8 58:13 59:9 59:10 59:11 59:13 61:11 62:3 62:18 62:23 63:1 63:5 63:8 63:15 63:22 64:1 64:4 64:8 64:11 64:13 64:15 64:21 65:4 65:7 65:12 65:20 65:24 66:2 66:4 66:6 66:10 66:16 67:4 67:10 67:20 68:15 68:22 69:6 69:13 69:15 69:19 70:7 70:22 71:4 71:5 71:7 71:8 71:11 71:21 71:24 72:3 72:15 72:22 73:12 73:16 73:19 73:23 74:6 74:15 74:25 75:4 75:8 75:17 75:19 75:24 76:9 76:13 76:15 76:20 77:4 77:9 77:11 77:15 77:18 77:22 77:25 77:25 78:4 78:18 78:18 78:22 79:3 79:5 79:13 79:18 80:3 80:8 80:16 80:24 80:24 81:1 81:11 81:20 82:6 82:9 82:11 82:16 82:22 83:3 83:8 83:13 83:14 83:20 83:23 83:25 84:1 84:1 84:5 84:7 84:8 84:12 84:12 84:18 84:24 84:25 85:3 85:9 85:16 85:23 86:1 86:8 86:12 86:19 87:2 87:7 87:24 88:20 88:24 89:1 89:4 89:6 89:10 89:12 89:13 89:19 89:21 90:1 90:13 90:18 90:20 90:24 91:5 91:7 91:10 91:16 91:18 91:22 91:25 92:7 92:8 92:13 92:17 92:20 92:22 93:1 93:6 | |
| courtroom(5) 1:10 7:3 67:9 67:19 88:5 | |
| courts(39) 8:13 9:5 9:12 10:14 10:16 10:18 10:21 13:3 19:11 26:12 31:10 35:2 40:16 40:16 40:23 41:2 41:5 42:14 51:8 51:9 52:2 52:5 52:11 52:22 55:9 56:6 56:9 56:15 56:21 56:25 57:6 57:18 58:20 62:22 66:23 70:18 78:21 79:7 80:25 | |
| courts(2) 52:4 53:2 | |
| covalent(1) 6:17 | |
| cover(1) 8:7 | |
| covered(1) 8:18 | |
| covers(1) 14:2 | |
| create(1) 43:10 | |
| created(3) 19:8 19:12 19:23 | |
| creates(1) 83:15 | |
| creation(1) 19:7 | |
| creditor(7) 4:34 19:25 22:14 22:15 33:14 69:20 71:2 | |
| creditor-driven(1) 22:13 | |
| creditors(20) 3:12 4:36 13:25 14:8 14:9 14:15 17:2 17:17 17:11 20:14 20:14 20:15 20:15 20:19 22:10 23:4 24:24 29:7 29:13 33:13 | |
| creditors'(1) 2:5 | |
| creditor's(2) 70:24 76:22 | |
| crichlow(1) 2:46 | |
| critical(2) 10:13 15:5 | |
| cross(4) 4:20 16:6 20:23 21:13 | |
| cross-examination(7) 15:25 17:18 21:25 22:1 25:20 25:23 32:25 | |
| cross-examine(8) 16:4 16:5 18:1 18:3 21:17 25:10 35:12 35:13 | |
| cross-examining(1) 22:3 | |
| current(3) 35:8 59:17 82:24 | |
| currently(1) 55:18 | |
| cut(1) 22:5 | |
| daily(1) 60:4 | |
| dan(2) 71:9 89:2 | |
| dangerous(1) 23:11 | |
| daniel(2) 3:47 4:8 | |
| data(2) 1:41 30:21 | |
| david(2) 2:46 4:37 | |
| day(6) 15:9 34:9 34:24 54:23 93:7 93:9 | |
| days(3) 10:17 10:17 13:5 35:1 51:15 52:10 53:2 55:2 55:15 55:22 55:22 56:6 57:5 | |
| deadlines(1) 56:3 | |
| deal(17) 9:4 11:20 21:3 21:7 21:13 22:5 27:3 30:12 35:22 43:20 44:17 53:3 53:16 54:7 60:19 64:17 73:6 | |
| dealing(4) 39:5 44:10 49:21 69:23 | |
| dealt(6) 22:3 44:4 44:6 47:6 62:12 69:25 | |
| debate(1) 26:11 | |
| debtor(3) 3:40 | |
| debtor(6) 38:12 38:14 48:3 53:5 82:23 90:6 | |
| debtors(58) 1:12 1:25 2:20 4:26 5:26 8:3 10:5 10:7 11:18 12:22 12:23 14:12 14:14 14:23 15:1 15:7 15:10 16:1 16:3 16:6 16:16 24:11 24:21 24:22 24:24 24:24 25:3 29:4 29:4 29:5 29:7 30:4 33:14 33:15 35:16 35:19 36:4 36:4 36:5 36:21 36:22 38:1 41:11 42:15 43:15 43:16 43:22 43:25 44:14 54:16 54:20 58:10 66:7 67:25 68:4 72:7 | |
| debtor's(4) 16:8 25:23 48:24 82:24 | |
| decide(9) 10:22 32:11 67:19 87:12 88:9 90:22 91:5 91:19 91:23 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

decided(5) 10:14 10:19 69:2 87:9 87:19
deciding(1) 31:13
decision(1) 81:12
declarations(2) 17:16 81:24
defend(2) 48:1 48:8
defendant(3) 13:15 49:5 50:1
defense(1) 16:15
defer(3) 12:2 18:20 31:15
definition(1) 48:4
degrees(1) 21:4
delaware(7) 1:2 1:12 3:29 3:42 7:1 59:9 59:10
delay(1) 81:5
delete(1) 9:15
delineated(1) 19:14
deliver(1) 57:18
delivered(3) 21:22 53:13 56:8
denied(2) 78:22 91:10
deny(1) 84:25
department(4) 48:19
depending(3) 15:4 51:9 57:20
depends(1) 38:7
deposed(1) 31:1
deposition(4) 8:20 35:10 40:12 55:17
depositions(6) 31:2 33:2 33:4 58:25 59:1 60:8
derek(1) 1:26
described(1) 80:2
designate(2) 30:10 36:7
designating(1) 53:21
designation(5) 55:17
detail(1) 10:8
detailed(2) 8:24 34:3
details(1) 9:3
determinations(1) 76:23
determine(2) 24:14 81:4
determined(1) 84:12
device(1) 20:25
devote(1) 28:25
devoted(2) 12:16 28:1
diaz(1) 1:41
did(7) 27:5 34:19 76:8 76:15 83:20 83:23 86:10
didn't(9) 27:2 27:3 27:19 36:3 63:23 65:2 69:16 77:9 86:14
difference(1) 51:3
different(27) 8:17 14:22 14:25 15:4 15:7 15:8 16:2 19:22 22:7 24:13 37:13 37:16 39:13 44:2 44:10 44:22 44:22 44:23 44:23 45:4 48:5 49:4 50:1 59:21 78:3 78:5 82:15
difficulty(1) 30:6
digesting(1) 67:4
dimsdale-gill(1) 4:48
dine(1) 5:5
direct(2) 15:21 15:24
directed(3) 26:18 80:1 80:22
directing(1) 81:9
direction(5) 51:9 51:12 53:6 53:25 54:5
directly(2) 22:19 61:23 72:1
director(2) 48:11 48:11
directors(9) 5:31 47:24 48:4 48:13 48:13 82:24 89:8 90:7 90:10
disadvantaged(1) 44:24
disagree(5) 18:18 19:4 32:21 37:11 89:25
disagreement(7) 9:16 10:11 12:14 12:14 12:16 12:22 17:1
discovery(4) 19:18 19:9 87:8 89:24
discretion(3) 32:2 35:2 52:2
discuss(9) 13:6 59:23 71:15 72:9 79:25 80:10 80:11 92:2 92:5
discussed(3) 8:23 78:15 86:13
discussing(2) 60:9 92:9
discussion(8) 13:1 32:10 34:3 75:22 76:11 89:25 91:16 92:11
discussions(6) 31:5 53:24 70:16 75:25 80:12 86:15
disingenuous(1) 36:14
dismiss(5) 86:4 87:9 87:10 87:12 87:19
dispel(1) 43:10
disposed(1) 81:16
dispositive(1) 81:18
dispute(6) 16:23 44:8 54:21 55:6
disrupt(1) 88:6
distinction(1) 48:2
distribution(3) 12:11 14:23 74:19
district(4) 1:2 78:18 81:1 89:15
divide(9) 16:12 20:24 22:9 24:13 27:24 29:3 34:7 50:7 50:15
divided(4) 28:2 33:25 34:23 43:7
dividing(1) 30:10
division(4) 14:16 19:10 21:6 21:12
dna(1) 3:13
docket(2) 85:24 85:25
does(8) 16:22 20:21 38:18 60:18 72:1 85:6 88:15

doesn't(14) 18:9 37:16 43:10 43:16 46:16 50:9 65:18 79:9 85:9 85:20 86:3 87:7 87:13 90:23
doing(5) 15:11 15:12 24:18 59:17 60:2
dollars(2) 22:17 74:2
done(10) 21:1 33:11 33:17 33:18 34:4 37:10 40:25 41:1 42:8 60:6
don't(56) 9:7 9:17 9:21 11:8 22:4 24:15 25:20 26:11 32:4 32:7 32:9 32:25 34:6 34:17 34:18 35:14 40:19 41:21 42:21 45:12 45:16 46:5 48:7 49:5 56:4 61:8 61:21 65:6 65:17 66:4 66:11 66:13 67:3 68:9 70:12 70:16 70:25 74:21 75:2 75:11 75:12 80:9 80:9 81:25 82:15 84:11 84:13 84:17 85:4 85:18 86:22 86:25 87:15 87:15 89:23 92:18
don't(1) 88:13
dorsey(1) 2:31
double(4) 37:23 38:20 38:22 44:11
double-spaced(1) 47:17
dow(1) 6:13
down(16) 20:22 21:21 27:7 27:9 36:8 45:15 46:20 46:21 49:4 50:15 74:1 74:22 79:6 81:23 83:16 83:16
drag(1) 34:25
dragging(2) 63:21 63:25
drastic(1) 79:2
drastically(4) 78:24 84:19 84:20 88:12
drop(1) 33:12
due(2) 68:7 75:22
duplication(1) 89:13
during(5) 30:18 59:25 73:21 76:4 85:21
each(11) 19:15 19:25 20:16 21:2 25:16 37:24 44:6 45:13 46:2 56:9 80:5
earlier(1) 8:11 56:17 58:20
early(3) 36:7 55:21 83:8
easily(1) 28:9
easy(2) 18:5 29:8
echo(3) 41:15 70:24 76:22
economic(2) 20:22 22:19
economical(1) 42:16
economically(1) 28:7
ecro(1) 1:19
effect(3) 81:8 89:19 90:9
effectively(3) 17:4 81:14 89:10
efficiency(1) 18:19
efficient(4) 8:9 18:5 33:2 33:6
efficiently(1) 34:4
effort(2) 73:25 78:14
efforts(1) 89:14
eight(3) 32:2 40:6 54:18
either(4) 19:8 17:10 72:18 85:10
electronic(2) 1:47 93:15
elkin(1) 83:4
else(8) 32:13 47:18 52:24 62:5 66:13 68:8 70:1 74:18
ema(1) 16:7
email(1) 72:13
embark(1) 39:4
emea(52) 2:19 11:11 12:22 13:17 13:18 14:14 14:22 15:7 15:10 16:1 16:3 16:5 18:7 20:18 21:10 22:6 22:14 24:11 24:21 26:20 29:4 29:11 33:15 36:21 36:21 37:12 37:22 37:24 39:1 40:3 40:7 43:15 43:21 43:23 43:25 44:7 44:14 45:21 45:24 46:6 46:11 46:12 48:2 48:10 50:5 50:8 53:2 54:15 54:20 55:1
emea's(5) 21:24 26:23 27:2 27:5 65:17
employees(1) 5:15
encourage(1) 60:4 62:1
end(10) 71:9 9:5 9:9 15:9 16:16 50:22 66:15 71:14 76:7 89:16
ended(1) 73:14
endless(1) 41:15
endorses(1) 26:9
ends(1) 28:14
enormous(1) 73:24
enough(3) 26:12 83:24 85:17
ensue(1) 89:14
entered(3) 91:8 92:22 90:14
entering(1) 30:24
entirety(2) 65:24 66:8
entities(1) 19:22 19:25
entitled(16) 13:13 13:14 13:17 13:18 13:19 13:20 26:14 44:15 44:20 70:14 70:17 70:17 75:13 88:21 90:19 91:11
entity(2) 20:3 84:10
entry(2) 9:19 90:11
equal(11) 19:16 19:17 21:6 21:12 24:22 27:13 38:23 45:13 48:6 52:9 67:23
equality(1) 4:47
equally(4) 17:2 28:2 31:11 37:18
equity(1) 86:21
equivalent(1) 12:11
ernst(2) 4:4 4:29
escapes(1) 74:24

esq(44) 1:26 1:27 1:33 1:34 2:6 2:13 2:14 2:22 2:23 2:24 2:30 2:31 2:38 2:46 3:6 3:14 3:21 3:28 3:34 3:35 3:41 3:47 4:7 4:8 4:14 4:21 4:31 4:37 4:39 4:41 4:46 4:48 5:5 5:11 5:16 5:21 5:27 5:32 5:37 5:42 5:47 6:6 6:18 6:38
essential(1) 13:23
essentially(6) 12:9 20:13 24:11 24:17 70:15 88:13
estate(2) 44:10 67:22
estates(11) 14:14 16:13 17:12 18:2 19:20 20:6 20:16 22:11 23:21 68:6 89:9
estates'(2) 27:22 29:1
esther(1) 6:26
estimate(1) 31:4
et.al(1) 5:41
et.al.(1) 1:8
etkin(39) 4:14 78:25 79:9 79:15 79:20 80:1 80:5 81:9 81:18 82:5 82:9 82:10 82:12 83:15 83:24 84:6 84:8 84:25 85:4 85:17 86:2 86:9 87:3 88:24 88:25 89:5 89:25 90:4 90:12 91:23 91:24 92:10 92:10 92:12 92:15 92:18 92:21 92:24 93:9
etkin's(1) 81:7
european(2) 20:15 22:15
even(18) 15:20 25:20 26:14 31:23 34:4 40:18 44:14 57:5 62:3 67:25 70:5 73:12 74:13 80:11 83:11 87:6 87:21 88:7
event(1) 26:13
events(2) 76:1 91:12
ever(3) 9:18 10:21 84:14
every(1) 8:16
everybody(3) 42:8 49:18 51:4
everyone(4) 26:21 66:3 66:8 93:8
everyone's(1) 47:24
everything(1) 78:15
evidence(10) 11:20 30:5 30:12 31:14 31:21 33:5 33:22 34:3 35:5 35:6 35:9 35:25 36:8 37:1 37:1 37:15 40:11 40:12 40:17 40:21 40:25 44:8 44:15 44:16 44:20 44:20 46:13 53:20 59:19
exact(4) 11:12 46:22 47:3 57:17
exactly(7) 31:3 46:3 50:8 50:15 58:8 65:1 86:25
examination(1) 31:16
examinations(3) 10:9 10:9 31:20
examine(4) 16:7 20:15 30:24 31:3
example(2) 46:10 68:19
exanimation(1) 31:16
excellent(1) 25:12
exceptions(1) 10:3
excess(1) 41:19
excessive(1) 48:15
exchange(1) 57:18
exchanged(1) 56:20
exchanges(1) 83:7
excuse(2) 7:16 7:17
exercise(1) 68:3
exhibits(4) 8:30 33:4 35:11 55:16
exist(1) 82:18
exists(1) 40:25
expect(2) 42:24 68:8
expense(1) 81:5
expensive(1) 52:6
expert(17) 8:21 10:9 15:23 25:8 25:13 25:16 27:2 27:5 35:7 35:20 36:14 40:13 41:18 41:19 43:2 55:10 56:7
expert-based(2) 35:6 41:17
experts(23) 8:25 11:3 11:15 11:24 16:7 16:7 16:8 16:9 17:2 23 18:4 21:22 21:23 21:23 21:23 25:23 25:24 25:25 30:24 30:25 35:10 35:18 42:6 58:4 59:2
explained(1) 85:21
explanations(1) 86:4
explicit(1) 84:8
explicitly(1) 13:12
explored(1) 15:23
exposure(1) 48:18
express(1) 77:2
expressed(2) 30:20 89:5
expression(1) 88:8
extent(5) 23:7 41:14 43:6 52:4 92:1
extra(2) 46:18 54:14
extraordinary(2) 90:3 90:16
eyes(1) 32:17
face(1) 32:24
facing(2) 79:5 81:2
fact(51) 8:25 10:9 10:25 11:1 13:22 14:12 15:10 15:19 15:25 16:9 17:24 17:25 25:9 25:15 26:8 29:10 30:8 34:21 35:19 36:6 36:7 43:7 49:10 52:3 54:5 59:1 73:3 73:4 79:10 82:4 89:7
fact-based(3) 35:5 35:15 41:20
facto(1) 48:11
factors(1) 79:3
facts(3) 8:23 70:4 79:9
factual(2) 44:2 44:23
factum(1) 9:11
fagen(1) 4:39
fair(8) 24:12 24:14 27:7 27:12 32:11 38:2 38:20

fairly(1) 87:9
fairness(4) 22:8 30:18 44:25 48:9
fall(1) 57:21
fantastic(1) 52:15
far(15) 14:17 21:21 25:9 32:8 41:5 43:17 46:17 52:21 56:15 64:16 77:11 82:1 83:11 87:3 88:20
fara(1) 2:22
farallon(1) 6:33
farm(1) 4:16
farr(1) 3:33
fast(1) 63:5
favor(1) 82:23
february(1) 43:24
feel(6) 31:22 41:2 42:2 67:19 77:11 87:24
fees(1) 73:25
feld(2) 2:12 4:36
female(35) 29:24 30:2 36:18 39:3 39:9 39:13 40:1 41:10 47:12 48:21 48:23 49:8 49:13 49:16 49:18 49:24 50:12 50:14 50:18 50:21 50:24 51:12 53:5 53:23 54:9 54:12 54:24 58:9 59:1 59:4 59:7 60:13 60:17 62:13 63:23
few(8) 8:17 10:11 45:4 52:10 56:6 57:5
fewer(1) 43:2
fifths(1) 34:1
fight(1) 38:22
figment(1) 74:1
figure(1) 30:6
figuring(1) 41:24
file(7) 32:14 34:6 46:10 46:12 86:10 86:14 90:21
filed(10) 17:8 35:7 53:20 78:11 78:12 80:24 85:15 87:6 87:10 89:8 90:18 91:3 91:24
files(1) 90:19
filing(7) 27:3 30:4 30:9 36:13 46:17 49:2 84:16
filings(1) 41:16
final(2) 51:10 72:4
finally(1) 87:11
financial(1) 5:9
find(5) 34:10 34:12 55:19 72:20 89:12
fine(5) 17:6 28:15 64:8 70:3 78:6
finger(4) 52:5 74:4 74:9 74:13
finish(1) 31:25
finished(1) 62:19
finnigan(18) 6:5 18:20 18:23 18:24 19:2 21:12 21:15 21:19 22:22 22:24 25:7 29:19 29:20 30:19 35:3 43:20 44:25 53:1
finnigan's(1) 46:14
finnigin(1) 2:3
first(19) 12:8 12:13 12:18 12:24 14:20 24:1 31:21 36:16 51:15 65:12 66:5 70:10 77:8 77:12 78:22 80:1 81:4 89:4 90:14
first-hand(1) 35:18
fit(2) 21:8 45:14
five(8) 21:13 21:24 22:11 35:15 36:1 36:5 83:17
five-year(2) 67:17 85:25
flight(1) 88:18
flip(2) 39:24 46:25
floating(1) 43:1
floor(3) 1:28 3:8 4:22
fly(2) 31:17 88:7
folks(2) 51:18 51:22
folks'(1) 77:17
follow(2) 62:7 71:15
followed(1) 10:24
following(4) 10:25 11:8 48:25 49:9
font(1) 47:9
footing(1) 42:23
footnote(3) 9:15 9:16 54:7
footnotes(1) 47:17
footprints(1) 47:15
for(199) 1:2 1:25 2:4 2:19 2:37 3:4 3:12 3:19 3:26 3:40 4:4 4:5 4:13 4:29 4:44 5:4 5:14 5:19 5:23 5:30 5:35 5:40 5:45 6:4 6:9 6:13 6:17 6:21 6:25 6:29 6:33 6:37 7:5 7:18 7:22 8:3 8:12 8:17 8:19 8:20 8:20 8:21 8:21 9:1 9:19 9:25 10:22 11:5 11:7 11:10 11:11 11:11 11:14 12:20 12:10 12:15 12:16 13:16 13:24 14:20 15:12 16:2 16:3 16:14 16:17 16:25 17:17 17:8 17:18 17:21 18:24 19:20 19:22 20:2 22:11 22:12 22:17 23:25 24:7 24:17 24:20 25:9 28:23 29:9 29:11 29:24 29:14 30:2 30:8 30:17 31:19 31:17 32:17 32:22 32:25 33:6 33:15 33:23 34:9 34:18 34:18 35:3 35:17 36:10 36:21 36:22 37:19 38:10 40:20 41:8 41:11 43:20 49:14 45:21 45:22 46:11 48:14 48:14 48:18 49:3 50:3 51:8 51:12 52:22 53:8 53:25 54:5 54:7 54:15 54:16 54:24 54:24 55:2 56:6 57:7 57:22 58:18 59:24 59:25 60:1 60:7 60:17 61:4 61:5 61:19 63:1 64:18 65:11 65:24 67:7 68:4 68:19 68:22 69:18 70:10 70:23 71:20 71:3 73:5 75:21 76:21 77:2 78:11 78:18 78:20 78:22 79:24 80:6 80:8 80:19 80:23 81:2 81:12 81:15 81:19 82:5 82:19 82:21 83:2 83:17 84:3 84:12 85:14 86:23 88:8 88:9 89:6 89:16 89:19 89:22 89:24 90:1 90:6 91:3 93:4
foregoing(1) 93:14
foreign(1) 88:16

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

foresee(1) 30:5
forever(3) 55:24 87:23 87:24
form(4) 23:5 51:10 70:15 79:6
formal(6) 65:23 66:4 67:13 67:14 69:18 73:21 76:2 76:2
formality(1) 64:7
formally(1) 9:18
formed(1) 15:3
former(2) 75:6 82:24
formerly(1) 17:20
forth(1) 33:23
forthcoming(1) 64:3
forward(5) 37:2 37:3 41:12 42:3 88:6
four(9) 19:10 19:14 19:15 21:2 22:12 35:19 53:2 58:19 83:1

four-day(2) 51:23 52:25
four-way(1) 20:11
four-year(1) 84:20
fourth(2) 12:9 14:21
framed(2) 79:23 91:14
framework(1) 26:9
frankly(6) 35:23 67:24 68:7 68:25 80:21 87:14
fred(1) 2:13
freely(2) 37:25 38:19
freight(1) 79:6
fresh(1) 91:13
fret(1) 86:5
friend(5) 19:17 20:13 22:2 24:25 26:7
from(29) 9:16 10:19 14:5 14:25 15:16 18:14 19:4 20:8 21:23 23:1 37:16 49:19 51:13 53:6 53:23 54:6 59:13 67:6 71:23 72:13 75:11 81:2 82:7 85:17 86:2 89:3 89:11 90:2 93:15

front(2) 59:18 85:15
full(1) 38:21
fully(5) 63:9 80:10 80:14 85:20 92:6
functions(1) 60:23
fundamentally(3) 19:4 24:6 37:10
further(8) 10:2 10:8 21:9 22:22 49:4 53:16 65:6 72:9
gallagher(1) 3:33
gaps(1) 52:10
gave(1) 53:1
general(1) 57:24
generally(1) 80:8
generated(1) 73:25
geographic(1) 30:3
george(1) 5:41
get(34) 7:18 10:11 29:6 29:7 36:8 42:19 44:7 44:11 44:12 45:9 45:13 46:2 46:6 46:7 46:17 52:7 55:19 56:13 56:15 56:17 56:21 59:19 68:21 70:3 73:4 77:17 77:22 81:7 82:13 84:2 86:17 87:15 87:23

gets(3) 28:2 45:21 45:22
getting(5) 16:17 33:21 55:9 86:18 87:24
ginger(1) 1:39
give(16) 22:22 24:21 24:21 27:15 33:13 33:15 33:16 37:23 40:16 57:24 58:10 62:22 76:16 80:16 85:16 91:19
given(11) 17:10 33:7 38:14 41:1 43:24 57:20 59:19 64:15 67:14 89:19 90:16

gives(1) 56:25
giving(2) 27:16 81:8
glaze(1) 32:17
glib(1) 74:17
global(2) 12:12 45:14
goes(5) 14:1 14:12 14:13 27:7 48:11
going(59) 7:8 11:20 15:23 16:4 16:5 16:6 17:7 17:9 21:13 22:13 25:10 25:22 26:5 26:16 26:17 26:22 28:25 30:14 30:21 30:24 30:25 31:15 31:24 40:9 40:10 42:22 44:16 47:15 47:15 47:15 47:24 52:17 53:10 53:25 54:4 54:13 55:11 57:11 57:20 58:6 58:25 65:23 68:12 69:5 69:6 69:25 70:18 70:24 72:20 73:11 74:16 75:4 78:8 80:17 84:22 85:14 88:6 93:3

good-bye(1) 73:10
goodman(1) 4:31
goodman's(2) 66:3 66:12
gored(1) 22:14
got(20) 7:18 9:12 9:18 14:7 14:8 14:9 21:23 21:24 21:24 32:25 33:4 50:21 59:18 61:1 61:5 74:22 74:23 75:13 91:2 91:23

gotten(2) 87:1 88:20
gottlieb(24) 1:32 5:26 36:20 36:21 36:24 38:5 38:7 38:10 38:14 39:1 39:3 39:8 39:16 39:22 39:24 40:5 47:19 53:7 53:12 53:15 53:19 53:9 55:5

govern(3) 35:23 37:5 37:8
grant(3) 80:4 81:21 91:17
granted(1) 70:12
granting(2) 69:11 91:4
great(1) 37:16

greater(3) 21:25 38:15 64:16
greatly(1) 40:23
gross(17) 1:19 7:2 18:13 18:17 18:24 23:1 32:4 34:18 51:18 51:21 55:8 57:9 60:19 60:20 61:25 62:17 62:17
ground(1) 8:16
group(44) 3:5 3:20 5:20 12:10 13:13 13:14 13:15 13:17 13:25 14:1 14:5 14:19 14:21 15:2 17:5 17:6 17:7 19:7 19:7 20:24 26:16 27:17 28:4 30:4 33:5 33:12 33:15 33:18 33:19 34:4 34:5 34:8 34:8 34:23 34:24 35:25 37:14 37:15 42:17 45:22 48:7 48:19 48:19 50:5

groups(14) 13:22 13:23 14:18 15:4 15:17 15:18 17:9 17:10 19:12 20:14 20:22 36:1 37:10 59:21
group's(3) 13:24 26:18 26:20
grout(1) 6:5
guarantee(1) 68:1
guaranteed(1) 25:3
guess(6) 15:3 18:13 51:1 51:25 77:7 77:16
guessing(1) 51:25
guest(1) 32:14
guidance(1) 31:23
gump(2) 2:12 4:36
guyder(28) 48:8 71:9 71:10 71:12 71:22 78:4 78:7 78:8 79:22 80:15 80:19 81:13 81:14 81:21 82:8 82:14 85:8 85:13 86:12 89:2 89:2 91:1 91:9 91:14 91:21 92:1 92:11 92:25

guyder's(1) 86:15
had(23) 8:19 9:10 13:10 28:23 28:24 35:18 36:7 41:18 45:24 46:13 54:4 60:24 61:18 65:15 67:16 73:7 76:7 77:9 82:9 88:9 91:10 91:14
hadley(2) 3:20 5:20
half(8) 22:5 25:17 26:5 33:21 41:1 50:8 72:25 88:4
hall(1) 4:7
hamilton(2) 1:32 5:26
hand(2) 23:18 53:15
handed(1) 24:5
handled(1) 76:1
handling(1) 64:9
hands(3) 48:7 50:2 53:2
hanging(1) 73:8
happen(4) 42:16 42:22 70:2 87:13
happened(7) 43:4 69:10 73:21 82:1 88:1 88:2 90:8
happening(2) 74:12 82:2
happens(1) 35:15
happy(8) 30:2 67:22 69:7 73:17 86:3 87:3 92:5 92:11
harm(1) 28:7
harmer(1) 5:11
harrishang(1) 1:43
has(53) 10:5 13:6 14:17 18:8 19:6 21:2 21:3 22:1 29:15 32:15 33:9 33:17 33:18 35:8 37:12 37:15 38:14 39:3 39:5 41:23 43:11 44:25 47:19 51:4 58:3 59:9 61:20 64:22 65:13 66:4 66:13 66:22 67:13 70:1 71:3 72:16 74:22 78:1 78:4 78:25 79:1 80:2 81:11 83:16 83:24 84:14 85:14 85:24 88:1 89:19 90:18 90:24 91:12

hate(1) 79:15
hauer(2) 2:12 4:36
have(203) 7:18 8:6 9:8 10:15 10:19 10:23 10:25 11:3 11:19 11:23 13:4 13:22 13:25 14:10 14:12 14:14 14:15 14:16 14:20 15:6 15:7 15:8 16:6 16:15 16:13 17:5 17:22 18:5 18:6 19:13 19:16 19:22 20:9 20:17 20:18 20:19 20:20 21:25 22:1 22:18 23:17 24:8 24:11 24:13 24:23 25:8 25:17 25:22 26:5 26:11 26:18 26:19 27:3 27:18 28:25 29:16 30:7 30:10 31:2 31:5 31:14 31:22 32:1 32:5 32:5 33:2 33:7 33:14 34:17 34:18 35:24 36:1 36:3 36:6 36:12 37:6 37:8 37:15 37:22 38:2 39:4 39:14 40:11 40:21 40:24 41:23 42:9 42:12 42:13 43:1 43:7 43:12 43:25 44:1 44:11 44:12 45:1 45:13 46:13 46:14 46:15 50:4 50:7 50:15 51:6 51:7 51:10 51:22 52:13 52:17 54:6 54:20 55:9 55:16 55:23 56:2 56:8 56:23 57:11 57:14 57:17 57:20 58:18 58:24 59:11 59:12 59:18 59:24 60:15 61:1 61:20 61:22 62:1 63:20 63:25 64:9 65:1 65:6 66:22 66:23 66:25 67:3 67:15 68:11 68:13 68:25 69:3 69:4 69:7 69:8 70:6 70:11 70:18 71:12 71:13 71:17 71:23 72:7 72:10 72:23 72:25 73:3 73:17 73:25 74:4 75:18 75:21 75:24 76:10 76:16 78:9 79:1 79:18 80:20 81:4 82:15 82:25 83:10 83:11 84:8 86:22 87:11 88:2 88:11 88:22 89:20 90:20 92:6 92:18 92:22

haven't(6) 22:11 53:14 55:25 87:1 87:6
having(16) 16:18 17:9 23:24 28:17 36:10 42:5 43:9 48:14 56:19 67:4 68:23 75:7 79:5 80:12 81:6 81:25

headed(3) 21:21 40:17 40:18
hear(12) 7:6 18:14 22:15 25:11 42:1 61:8 62:14 63:23 65:2 69:15 70:5 74:13
heard(11) 21:13 29:20 37:12 40:9 40:13 61:9 65:12 67:15 70:10 72:24 74:9

hearing(16) 7:22 9:5 9:24 9:25 16:23 49:20 56:7 71:14 73:21 76:2 76:3 76:5 79:7 81:21 85:7 87:22 93:11
hearings(2) 19:14 92:4
heart(1) 41:13
held(1) 82:16
help(1) 56:14
helpful(3) 57:10 59:25 63:16
her(2) 85:21 85:24
herbert(1) 5:46
here(38) 7:4 7:15 14:8 16:19 20:14 22:14 23:1 24:7 25:4 32:5 32:16 35:15 37:6 37:17 47:25 49:22 50:3 51:16 56:14 59:14 59:15 67:9 70:10 71:23 72:6 72:12 74:2 78:13 79:7 80:20 80:21 81:1 82:25 89:19 90:8 90:11 91:2
he's(15) 25:10 35:6 44:11 64:12 64:13 64:14 70:14 70:16 70:17 72:17 74:23 75:13 81:19 90:1 90:15

higher(2) 34:5 43:10
highlighting(1) 8:18
highly(1) 27:4
him(8) 7:6 61:4 61:18 61:23 64:16 64:17 69:8 85:15
his(8) 25:9 45:3 61:4 78:25 80:2 83:25 89:6 89:7
historical(1) 17:2
hoc(2) 3:4 3:19
hodara(5) 2:13 70:22 70:23 71:6 71:7
hold(1) 4:45
holders(2) 67:21 86:21
holes(1) 74:1
home(1) 7:8
honor(113) 7:13 7:15 7:21 7:21 8:4 8:8 9:13 13:7 13:21 15:6 15:16 17:20 18:24 22:21 23:16 23:22 25:13 27:18 28:9 32:19 34:11 35:3 36:20 38:17 40:5 41:10 42:1 42:8 43:19 47:21 48:21 52:1 52:16 54:5 55:13 56:11 56:19 60:21 61:7 62:20 64:5 65:15 66:20 67:24 68:17 69:9 70:9 70:23 71:6 71:9 71:22 71:25 72:4 72:12 72:19 73:4 73:7 73:18 73:22 74:14 74:16 75:10 76:24 76:6 76:19 77:7 77:14 77:20 78:8 78:13 79:15 79:20 79:23 80:3 80:20 81:15 82:8 82:10 82:12 82:18 82:21 83:2 83:19 83:24 84:2 84:17 84:21 85:6 85:11 85:18 86:5 86:11 87:14 87:24 88:4 88:8 88:25 89:2 89:4 89:17 90:3 90:15 91:1 91:9 91:24 92:12 92:24 92:25 93:3 93:9

honorable(1) 1:19
honors(4) 10:1 10:12 12:6 33:9
hope(3) 29:13 77:2 92:17
hopefully(1) 83:1
hour(5) 7:18 7:19 31:25 72:25 88:4
hours(17) 13:14 13:15 13:17 13:18 13:19 13:20 28:23 28:24 29:1 29:2 29:3 29:5 29:7 29:8 41:1 47:25 48:1
housekeeping(1) 9:4
how(24) 9:11 10:14 13:20 22:24 24:13 31:14 35:11 35:12 41:24 42:1 48:5 48:7 53:3 55:19 56:5 57:21 58:15 67:19 75:2 75:12 86:25 90:16 91:2 92:8
however(2) 42:17 81:15
hubbard(1) 2:7
hughes(1) 2:21
hypothetically(1) 28:23

idea(6) 20:21 31:1 31:3 40:17 70:11 74:2
illustrate(1) 24:7
illustrates(1) 22:15
imagine(2) 25:21 92:15
immediately(2) 48:24 49:9
impact(2) 68:13 75:5
impacted(1) 88:14
impacts(1) 22:19
important(4) 15:16 15:20 31:11 50:3
imposes(1) 64:16
inaccurate(1) 74:20
inc(5) 1:34 4:24 5:34 5:36 6:29
inclined(4) 80:4 81:21 91:17 91:18
include(1) 11:16
included(3) 67:12 71:3 86:6
including(2) 68:12 79:7
increase(5) 10:17 15:10 17:18 29:11 29:12
increased(1) 18:8
increasing(1) 15:13
indeed(1) 68:3
indenture(1) 2:45
indicate(3) 40:1 40:4 41:11
indicated(3) 78:9 79:1 81:15
indiscernible(7) 29:21 34:20 44:21 47:25 48:14 55:24 59:17
indulgence(1) 23:19
inform(1) 31:4
informally(1) 73:21
information(3) 30:23 65:6 68:12
ingersoll(2) 2:37 77:21
initial(11) 20:15 22:4 43:6 45:22 45:23 56:20 58:11 58:13 83:4 84:3 87:22 92:3
injunction(1) 82:23
injunctive(1) 83:15
instance(1) 78:23
instead(1) 43:9

insurance(1) 86:25
intend(1) 57:19
intention(1) 51:10
intents(1) 89:20
interest(5) 18:19 22:19 42:4 66:25 69:4
interested(10) 6:9 6:13 6:17 6:21 6:25 6:29 6:33 6:37 66:13 68:20
interesting(1) 93:2
interests(3) 20:23 71:2 72:1
intermingling(1) 11:1
interrupt(2) 11:4 79:15
into(17) 20:16 20:17 20:18 20:18 20:19 20:20 20:20 20:21 22:14 22:15 33:25 34:25 39:4 41:24 84:22 86:4 87:15

investors(1) 86:19
invited(1) 88:1
involve(1) 65:18
involved(5) 11:6 11:17 11:19 75:17 75:18
involvement(1) 72:7
involves(1) 65:17
involving(1) 12:10
ipad(1) 59:18
isn't(2) 48:19 50:3
issue(39) 8:17 12:18 12:21 13:5 32:24 34:12 39:4 39:5 39:13 43:15 44:3 44:5 47:19 49:22 50:5 53:8 53:16 53:25 54:2 54:14 54:17 67:13 69:1 72:6 73:22 78:16 79:25 80:21 81:17 82:2 82:14 84:14 84:15 87:21 88:1 88:9 88:22 90:22 91:15

issued(1) 83:8
issues(21) 8:7 8:17 10:2 12:24 31:5 35:9 37:6 37:8 37:19 39:9 41:7 51:1 51:13 53:13 62:21 63:9 74:3 75:6 80:5 80:17 80:20
issuing(1) 82:23
item(3) 34:15 36:16 54:18
items(2) 39:7 93:4
its(7) 13:25 19:16 37:25 81:12 83:20 84:9 91:5
itself(2) 29:15 89:12
it's(80) 9:7 10:13 12:25 15:18 15:21 15:24 17:2 18:23 20:25 20:8 21:13 22:13 23:6 23:11 24:1 24:4 24:16 24:23 26:7 26:8 26:13 28:18 28:24 29:8 31:4 31:11 31:18 31:23 33:18 34:2 34:3 34:8 34:15 34:25 45:5 45:9 45:15 46:21 46:22 47:1 47:3 49:25 52:1 54:17 54:18 54:22 55:20 55:22 58:11 59:19 59:23 60:21 64:24 68:12 70:1 73:12 73:20 74:14 75:14 79:22 83:9 87:5 87:23 87:25 88:18 89:17 90:2 90:4 90:10 90:12

i'd(6) 23:18 25:11 25:17 57:17 60:4 87:3
i'll(8) 7:25 22:21 53:15 62:7 76:16 77:17 88:8 92:22
i'm(48) 7:4 7:8 7:19 10:2 17:15 22:24 24:14 30:2 30:6 34:11 36:22 38:4 39:11 39:11 43:13 51:24 51:25 55:8 55:22 56:7 57:9 61:24 63:8 63:23 64:21 64:21 65:1 66:2 67:4 68:17 68:25 69:10 69:17 70:2 70:24 74:16 75:4 75:9 75:22 76:6 76:10 78:3 79:20 84:22 87:9 91:18 92:11 92:22
i've(8) 24:1 24:5 29:20 30:15 61:5 64:18 91:7 91:23
jacqueline(1) 6:14
jacques(1) 5:16
jaime(2) 3:14 3:40
james(2) 1:34 3:40
jammed(1) 35:14
january(13) 8:13 8:18 10:16 11:2 11:12 13:12 16:23 49:11 49:13 51:6 55:13 58:2 74:11

japan(1) 88:17
jeffrey(1) 1:37
job(1) 18:6
john(4) 2:31 5:47 18:20 18:24
johnson(1) 2:14
join(1) 16:22
joined(1) 90:4
joins(1) 50:5
jointly(2) 1:6 10:15
jonathan(1) 6:18
jones(2) 3:5 6:13
joseph(1) 4:31
judge(25) 1:19 1:20 7:20 18:13 18:17 18:24 22:25 32:4 36:20 41:7 51:18 51:21 53:7 55:8 57:8 60:19 60:20 61:25 62:17 73:9 75:6 75:7 76:23 85:13 87:11

judges(5) 30:17 32:1 32:15 32:24 85:17
judicial(1) 72:20
jumps(1) 87:5
jurisdiction(3) 78:3 88:17 89:21
jurisdictional(1) 84:15
jurisdictions(1) 85:18

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| just(87) 7:17 8:10 8:18 9:17 10:12 11:14 13:1 14:19 16:18 16:20 17:9 17:14 21:11 22:8 22:22 22:25 23:18 23:19 23:20 24:1 25:3 26:2 26:4 28:16 28:20 28:21 29:17 29:20 30:7 30:24 30:25 32:7 34:25 36:24 37:3 37:20 38:12 39:10 40:2 40:15 41:1 41:10 42:9 42:10 42:11 43:9 43:10 43:15 48:21 49:9 51:4 51:7 51:14 53:8 53:16 53:19 54:1 54:2 54:13 55:3 57:8 60:3 60:5 61:9 62:8 67:2 68:8 69:2 69:9 70:13 71:19 71:21 71:23 72:25 74:4 74:8 74:14 76:10 76:22 77:2 77:7 87:5 87:5 88:4 89:3 89:4 93:3 | | like(40) 11:6 11:24 12:1 12:17 16:17 18:1 22:16 25:13 25:23 33:13 39:9 30:12 30:12 30:15 34:10 52:13 52:18 55:19 57:6 59:22 60:11 60:15 62:22 64:5 66:14 68:8 70:20 76:22 87:19 87:24 92:19 | | matthew(5) 4:39 6:10 36:21 | | need(30) 15:17 15:18 15:22 15:25 16:11 18:3 18:10 25:10 26:24 27:9 31:6 31:14 31:16 32:10 41:25 54:7 55:11 55:23 57:21 60:14 62:6 63:1 65:10 67:18 68:10 71:14 77:22 78:20 85:4 92:9 |
| | | | | matthw(1) 4:46 | | |
| justice(144) 7:2 7:4 7:5 7:8 7:14 7:14 7:16 9:10 9:22 13:5 18:13 18:16 18:17 18:17 21:11 21:16 22:25 23:14 24:1 24:4 25:5 25:6 25:7 28:19 28:20 28:22 29:18 29:22 30:1 30:14 31:7 31:8 32:3 32:6 32:12 34:10 34:12 35:13 36:15 36:19 36:21 37:11 37:20 38:3 38:6 38:9 38:13 38:24 39:11 39:20 39:23 41:9 42:7 42:21 42:24 43:12 44:3 45:2 45:10 45:16 45:20 45:24 46:2 46:4 46:9 46:18 46:24 47:2 47:5 47:8 47:9 47:14 47:18 47:22 48:16 48:20 48:22 49:6 49:12 49:15 49:17 49:21 50:10 50:13 50:17 50:20 50:23 50:25 51:14 51:21 52:13 52:24 53:4 53:11 53:14 53:18 53:22 54:8 54:10 54:22 55:1 55:4 55:7 55:21 56:7 56:12 57:7 58:24 59:3 59:6 59:7 59:16 60:10 60:16 60:18 60:23 61:1 61:1 61:5 61:11 61:15 61:17 61:18 61:20 61:24 62:5 62:7 62:10 62:11 62:14 62:15 62:17 62:18 64:9 65:3 65:15 66:23 67:17 68:23 70:1 70:18 72:16 74:8 74:10 | | limit(1) 36:25 41:25 | | matz(1) 5:21 | | |
| | | limitation(2) 35:9 38:18 | | max(1) 44:20 | | needed(2) 10:22 84:9 |
| | | limitations(7) 32:8 32:13 35:7 35:8 37:4 41:18 86:6 | | maximize(2) 16:2 22:17 | | needn't(2) 41:8 53:17 |
| | | limited(4) 10:3 33:1 89:6 89:23 | | maximum(3) 35:25 41:25 46:11 | | needs(9) 11:9 15:14 17:11 21:1 24:22 33:25 34:22 44:3 44:5 |
| | | limits(13) 12:15 33:24 34:22 35:21 35:21 35:24 37:21 37:25 39:6 42:14 44:7 45:13 46:16 | | may(27) 10:20 11:15 15:7 15:8 21:25 23:17 23:21 29:24 31:1 31:4 31:19 35:3 41:10 46:10 48:21 55:8 55:15 55:23 56:16 57:4 57:15 57:21 58:13 59:23 75:7 85:8 85:9 | | neil(1) 2:24 |
| | | | | | | networks(4) 1:8 4:44 5:23 5:35 |
| | | linden(1) 47:23 | | | | neutralized(1) 88:14 |
| | | line(3) 48:12 72:6 75:21 | | maybe(5) 29:11 31:1 63:18 65:13 83:11 | | never(2) 20:9 30:15 |
| | | lined(1) 21:10 | | mccloy(2) 3:20 5:20 | | new(13) 1:36 2:16 2:26 2:48 3:23 3:37 3:49 4:10 40:6 47:12 79:9 80:19 89:15 |
| | | link(1) 62:19 | | mean(8) 30:2 56:24 66:11 67:2 74:8 88:5 90:23 91:2 | | |
| | | lingis(1) 62:8 | | meaning(1) 28:3 | | |
| | | lion(1) 6:34 | | means(5) 16:3 31:12 52:6 54:6 91:11 | | newbould(121) 7:2 7:4 7:8 7:14 7:16 9:10 9:22 13:5 18:13 18:17 21:11 21:16 22:25 23:14 24:2 24:4 25:5 25:6 25:7 28:20 28:22 29:18 29:22 30:1 30:14 31:7 31:8 32:3 32:7 32:12 34:10 34:12 35:13 36:15 36:19 36:22 37:11 37:20 38:3 38:6 38:9 38:13 38:24 39:11 39:20 39:23 41:9 42:21 42:24 43:12 44:3 45:2 45:10 45:16 45:20 45:24 46:2 46:4 46:9 46:18 46:24 47:2 47:5 47:8 47:14 47:18 47:22 48:16 48:20 48:22 49:6 49:12 49:15 49:17 49:21 50:10 50:13 50:17 50:20 50:23 50:25 51:14 51:21 52:13 52:24 53:4 53:7 53:11 53:14 53:18 53:22 54:8 54:10 54:22 55:1 55:4 55:7 55:21 56:7 56:12 57:7 58:24 59:6 59:7 59:16 60:10 60:16 60:18 61:1 61:5 61:11 61:17 61:24 62:5 62:10 62:15 62:17 62:18 70:1 74:10 | |
| | | list(4) 36:2 36:7 36:8 57:12 | | mediate(2) 68:20 69:2 | | |
| | | listen(1) 63:16 | | mediating(1) 61:19 | | |
| | | listened(1) 9:22 | | mediation(2) 72:8 75:14 | | |
| justifiable(1) 77:1 | | listening(1) 78:14 | | mediator(5) 61:12 65:5 65:16 73:9 73:18 | | |
| justification(1) 20:2 | | litigant(1) 88:14 | | meet(2) 10:1 72:17 | | |
| justin(2) 3:28 6:22 | | litigating(2) 13:21 83:1 | | melnik(7) 3:14 76:15 76:18 76:21 76:21 76:25 77:5 | | |
| kaaren(1) 5:5 | | litigation(14) 22:19 37:7 78:2 82:3 83:5 83:6 83:10 83:16 83:17 86:7 86:17 87:23 88:15 89:14 | | memorandum(1) 49:19 | | |
| kahn(1) 4:41 | | | | memorialized(1) 13:11 | | news(1) 65:7 |
| kathleen(2) 2:38 77:20 | | | | mention(1) 51:4 | | next(7) 7:10 11:8 32:4 42:7 42:24 72:18 86:10 |
| karen(2) 2:45 5:4 | | little(12) 24:20 28:14 32:21 41:3 55:23 57:22 58:2 61:9 65:10 73:20 80:16 80:18 | | mentioned(2) 51:5 54:2 | | |
| keane(1) 3:6 | | | | merely(2) 15:18 70:24 | | nhl(1) 63:18 |
| keep(1) 15:17 | | | | merits(5) 80:10 80:11 81:25 84:21 88:10 | | nice(1) 27:5 |
| keeping(1) 63:18 | | live(4) 36:1 36:3 40:11 59:18 | | method(2) 20:4 20:7 | | nichols(1) 1:25 |
| kelly(1) 93:20 | | livingston(1) 4:15 | | methodology(3) 20:7 20:24 74:19 | | night(1) 25:15 |
| kent(1) 6:30 | | llc(2) 4:20 5:15 | | michael(4) 4:14 6:6 6:34 6:38 | | nine(3) 47:1 48:24 49:8 |
| kevin(1) 1:19 7:2 | | llp(16) 1:25 2:21 2:45 3:13 3:33 3:40 4:13 4:30 4:36 4:45 5:4 5:20 5:31 5:36 6:5 6:37 | | middle(4) 39:21 45:6 50:16 86:16 | | nnuk(1) 22:16 |
| key(1) 29:18 | | | | might(10) 9:24 17:18 30:11 36:20 41:25 58:21 63:16 68:13 77:6 88:20 | | nobody's(1) 58:25 |
| kick-started(1) 86:17 | | | | | | non-holidays(1) 10:21 |
| kimmel(1) 53:10 | | lockbox(1) 15:15 | | | | none(2) 24:9 64:22 |
| kind(7) 15:3 61:8 63:5 63:17 81:6 86:16 87:4 | | logic(2) 29:15 87:5 | | milbank(3) 3:20 5:20 | | normal(2) 59:10 80:6 |
| kinds(1) 86:6 | | logistical(1) 9:3 | | miller(1) 3:41 | | nortel(11) 1:8 4:44 5:14 5:23 5:25 5:35 13:24 19:21 20:1 35:18 64:10 |
| king(2) 2:8 2:33 | | logistics(1) 62:8 | | millions(1) 74:1 | | |
| knock(1) 58:22 | | long(6) 35:11 35:12 40:21 40:22 74:11 75:16 | | mind(4) 84:2 | | |
| know(56) 7:22 8:6 8:12 9:17 11:8 11:18 21:20 24:2 25:20 28:9 30:11 30:23 31:15 31:24 32:1 32:7 32:16 32:25 35:11 35:12 40:9 40:9 43:17 50:21 51:4 59:18 61:8 61:21 62:24 63:11 65:6 65:10 66:13 69:6 69:17 71:17 73:14 75:11 79:10 80:10 80:13 80:14 83:24 85:24 86:25 87:14 87:15 87:15 87:17 87:18 87:21 88:18 88:18 91:2 91:16 92:3 | | longer(7) 36:12 52:5 54:17 54:21 55:6 72:5 89:24 | | mindful(1) 30:7 | | north(6) 1:28 2:8 2:33 2:39 3:7 4:22 |
| | | look(6) 32:11 34:20 45:11 45:18 57:17 91:13 | | minutes(2) 16:24 32:5 | | not(113) 11:18 15:6 15:11 15:18 16:22 17:2 19:6 19:19 19:19 20:5 20:17 20:21 20:24 21:9 23:19 23:20 24:9 25:1 26:8 26:13 27:12 28:16 28:17 30:6 31:1 32:8 32:24 33:11 33:18 34:1 34:3 34:6 34:25 34:25 35:13 35:18 36:10 38:1 38:11 38:20 40:15 41:25 42:12 42:16 42:18 44:8 45:14 47:15 48:2 51:7 51:16 51:22 54:7 54:16 55:22 56:10 61:7 61:21 62:19 65:1 67:22 67:22 68:3 68:5 68:18 68:25 69:4 69:23 70:2 71:13 71:13 72:24 73:3 73:5 73:7 74:2 74:16 75:4 75:9 75:15 75:24 76:1 76:3 77:1 79:20 80:1 80:4 80:19 80:22 81:17 81:21 82:3 82:22 82:25 84:14 84:22 85:8 85:9 86:3 86:20 88:5 88:19 88:20 89:5 89:6 90:3 90:10 90:21 90:24 91:15 91:17 92:17 | |
| | | looked(1) 25:14 | | misleading(1) 26:3 | | |
| | | looking(7) 15:9 26:2 38:4 64:18 80:23 81:19 82:5 | | modification(2) 78:12 82:19 | | |
| | | looks(1) 86:2 | | modify(1) 78:1 | | |
| | | lost(1) 74:8 | | moment(5) 10:12 11:15 42:9 54:7 67:5 | | |
| | | lot(12) 8:6 11:1 32:10 33:3 37:7 37:8 37:17 41:24 60:3 60:3 80:9 88:1 | | monday(1) 19:5 | | |
| knowing(2) 35:23 60:2 | | lovells(1) 4:45 | | money(5) 29:14 33:3 37:7 68:2 86:21 | | |
| knowledge(2) 35:18 84:15 | | low(1) 33:23 | | monitor(27) 2:37 4:5 4:29 10:6 14:25 16:8 29:4 29:14 30:4 33:14 34:17 35:16 38:1 38:16 41:11 48:23 53:5 55:5 58:16 68:20 69:1 70:15 71:12 75:17 77:24 78:10 87:16 | | |
| knows(2) 74:18 83:12 | | lowenstein(1) 4:13 | | | | |
| laid(1) 91:4 | | lowenthal(1) 3:47 | | | | |
| language(1) 84:9 | | lower(1) 34:22 | | | | |
| large(3) 40:10 40:13 43:24 | | lowest(1) 27:7 | | monitor's(6) 34:14 54:20 54:22 67:8 68:19 69:22 | | |
| largely(2) 10:4 25:25 | | mace(1) 1:39 | | months(4) 28:19 69:24 74:7 74:12 | | note(1) 86:20 |
| last(14) 14:19 15:25 15:25 26:4 42:25 45:15 45:16 53:9 54:18 69:10 74:13 83:1 83:2 84:21 88:4 | | made(23) 16:21 16:21 19:9 20:1 20:16 28:18 37:10 42:10 43:25 44:1 54:1 65:23 66:4 66:23 67:13 69:6 70:4 70:11 71:3 71:4 83:25 85:8 87:4 | | morawetz(21) 7:5 7:14 18:17 28:19 47:9 60:23 61:1 61:18 61:20 62:7 62:11 62:14 64:9 65:3 65:15 66:23 67:17 68:24 70:19 72:16 74:8 | | noted(1) 78:17 |
| | | | | | | noteholders(1) 17:5 |
| | | | | | | nothing(1) 49:22 |
| late(3) 8:13 55:21 55:23 | | | | | | notices(1) 58:20 |
| later(5) 12:3 31:17 31:25 56:23 72:17 | | madison(1) 2:47 | | morawetz's(1) 61:1 | | noting(2) 89:17 90:3 |
| laughing(1) 7:6 | | magnitude(1) 52:3 | | more(41) 7:9 15:20 16:10 16:17 17:9 18:5 18:8 20:12 21:5 22:1 22:9 24:21 24:21 25:10 28:14 28:24 29:14 32:14 33:2 33:6 33:6 34:14 42:25 49:12 49:19 46:13 46:17 52:6 60:3 60:14 65:10 70:25 73:16 73:17 74:21 81:8 88:8 | | now(26) 13:1 19:13 19:17 29:20 30:25 31:13 31:23 42:10 54:19 55:3 62:6 68:9 68:11 69:17 70:2 71:20 76:15 77:16 78:25 79:5 83:12 86:5 87:7 87:12 87:21 | |
| laughter(12) 7:7 23:2 23:13 47:11 62:4 63:6 63:14 63:20 64:20 64:25 73:15 76:24 | | maguire(1) 2:23 | | | | |
| | | main(3) 12:25 73:22 88:16 | | | | |
| | | major(2) 17:1 69:24 | | morning(3) 16:21 19:6 37:12 | | |
| laura(1) 4:7 | | make(17) 28:16 29:24 30:17 31:10 33:8 37:17 38:24 46:16 62:20 67:7 68:6 69:22 72:19 75:9 85:6 90:23 91:22 | | morris(2) 1:25 3:40 | | nowbould(1) 42:7 |
| law(4) 3:40 26:9 73:3 88:16 | | | | most(5) 9:15 10:13 16:19 22:2 25:23 | | number(17) 9:2 18:18 25:8 25:16 33:21 34:5 37:22 38:20 42:10 43:1 47:19 52:10 54:7 56:3 83:18 83:19 85:25 | |
| layton(1) 2:5 | | | | motion(23) 78:1 78:11 79:9 80:2 80:7 80:24 83:4 84:3 84:16 84:25 85:8 85:22 86:10 86:14 87:9 87:9 87:19 90:18 90:19 90:23 91:19 91:23 92:7 | | |
| lead(4) 4:13 8:3 22:15 78:1 | | | | | | |
| learning(1) 64:3 | | makes(4) 16:18 34:20 50:5 74:25 | | | | |
| least(6) 11:7 48:3 67:6 79:23 86:17 90:19 | | making(2) 9:15 69:17 | | motions(2) 8:24 87:12 | | numbers(5) 26:2 28:8 28:14 31:17 39:17 |
| leave(5) 35:1 51:5 71:19 90:20 92:7 | | male(20) 43:19 44:5 44:5 45:11 45:18 45:21 46:1 46:3 46:5 46:10 46:20 46:25 47:3 47:6 60:7 60:11 62:16 63:21 63:25 64:3 | | move(6) 32:3 43:12 43:13 56:6 57:5 77:16 | | object(5) 45:12 66:8 66:25 68:11 68:25 69:8 70:6 |
| left(6) 8:17 10:1 41:6 45:7 45:19 50:25 | | | | moved(1) 39:4 | | objection(1) 29:16 |
| legal(9) 26:14 26:9 26:24 41:21 44:23 73:5 73:7 79:11 85:5 | | | | moves(1) 83:21 | | obvious(2) 85:9 88:4 |
| | | manage(1) 31:10 | | moving(1) 56:4 | | obviously(26) 10:13 10:21 13:3 13:25 16:11 24:9 26:10 28:24 32:1 34:6 37:23 38:1 41:13 52:1 55:18 56:1 56:25 57:13 57:19 58:20 66:19 66:22 71:14 85:19 91:3 91:16 |
| | | management(2) 6:9 6:33 | | much(17) 16:3 16:9 18:5 21:17 22:16 31:14 32:5 33:2 41:25 42:1 52:21 56:4 86:25 87:16 88:18 92:9 93:6 | | |
| legally(1) 77:1 | | manhattan(1) 3:22 | | | | |
| length(1) 92:19 | | many(4) 43:8 32:19 47:25 48:1 | | | | |
| less(2) 21:5 41:3 | | map(1) 52:22 | | muchin(2) 2:45 5:4 | | |
| let(12) 11:14 12:23 17:14 24:2 27:11 32:7 53:22 54:10 60:18 62:24 69:7 69:8 | | march(3) 1:14 7:1 9:25 | | mud(1) 85:20 | | occur(1) 68:23 |
| | | margins(1) 47:10 | | muffled(1) 61:9 | | occurs(2) 70:20 72:5 |
| | | market(9) 1:11 1:28 2:39 3:7 3:15 4:22 24:12 24:14 27:7 | | multiple(1) 43:8 | | off(2) 73:11 88:7 |
| letter(16) 47:7 53:9 53:11 53:12 53:14 54:10 66:1 66:3 66:12 66:17 66:20 69:17 69:17 69:18 70:14 71:13 | | | | murphy(9) 3:28 77:18 77:20 77:21 77:24 78:6 78:9 93:2 93:3 | | off-days(1) 57:20 |
| | | | | | | officers(5) 48:4 82:24 89:9 90:7 90:10 |
| | | matched(1) 17:11 | | | | official(3) 4:34 63:18 67:8 |
| letters(1) 66:19 | | material(4) 37:20 41:2 46:17 55:18 | | must(8) 81:18 82:16 | | offline(2) 61:23 61:25 |
| let's(4) 28:22 29:3 70:3 82:21 | | materials(2) 34:13 57:4 | | myself(4) 57:7 61:6 61:19 67:5 | | often(2) 67:23 68:2 |
| level(1) 22:9 | | matter(19) 7:11 9:4 23:12 44:24 54:11 77:17 78:18 79:17 81:11 84:17 85:5 85:11 85:24 86:11 86:24 88:16 88:21 92:6 93:16 | | name(1) 15:4 | | okay(38) 12:25 18:25 24:5 29:2 29:5 30:14 31:7 31:25 32:3 36:15 42:24 46:19 47:18 48:20 49:24 50:10 50:23 50:25 50:25 52:20 53:4 53:15 53:22 57:23 59:3 59:6 60:10 61:13 61:16 62:2 62:5 62:10 62:14 65:1 66:7 81:20 91:1 92:20 | |
| liberty(1) 1:35 | | | | named(3) 35:15 35:16 35:19 | | |
| life(1) 30:15 | | | | natural(2) 90:8 90:12 | | |
| light(3) 10:15 78:14 82:1 | | matters(1) 79:11 | | neatly(1) 20:22 | | |
| | | | | necessarily(2) 24:15 69:3 | | old(1) 85:25 |
| | | | | necessary(3) 31:11 81:24 82:1 | | |

| Word | Page:Line |
| --- | --- |

once(3) 51:12 67:15 87:19

one(61) 1:35 2:7 2:15 2:25 3:22 7:18 9:15 9:15 11:14 12:23 14:23 17:7 19:18 20:1 20:25 21:4 21:5 22:18 22:22 23:7 23:17 24:8 24:25 26:5 27:8 27:19 29:24 30:11 32:13 33:12 34:7 34:24 35:21 38:6 38:21 39:7 39:14 40:25 41:12 42:2 46:16 49:2 49:14 51:7 51:21 53:8 53:16 54:7 54:23 59:13 59:25 60:23 63:10 65:20 72:4 74:21 74:25 82:21 83:18 86:11 88:9

one-half(1) 26:13

one-quarter(2) 22:18 73:6

one-third(11) 24:10 24:10 24:10 26:13 26:21 27:24 27:25 27:25 28:10 28:10 28:10

ones(4) 26:24 28:6 37:2 39:18

only(30) 13:23 18:6 25:17 25:18 25:24 26:5 26:9 26:24 27:6 27:8 28:6 32:20 33:8 34:16 36:1 43:6 44:5 44:17 46:14 48:3 49:2 54:2 56:2 68:4 75:14 82:23 83:4 85:1 86:18 86:23

open(7) 8:17 10:2 12:1 40:15 40:16 40:19 77:2

opening(22) 8:25 10:10 10:23 10:24 12:2 12:17 16:25 32:23 34:2 34:8 34:9 36:17 37:1 39:6 39:18 40:6 40:8 40:20 41:4 41:6 54:14 54:19

openings(4) 11:15 34:24 34:24 35:1

operate(1) 42:15

operated(2) 19:21 22:12

opotsky(1) 5:27

opponents(1) 28:9

opportunities(1) 31:19

opportunity(18) 11:5 15:18 15:19 17:21 19:16 57:1 66:8 66:19 67:15 67:23 68:25 69:8 70:6 72:24 76:17 86:23 91:19 92:6

oppose(1) 24:23

opposes(1) 32:22

opposing(2) 17:12 90:21

opposition(1) 15:22

oral(2) 67:12 83:2

orally(1) 9:14

order(25) 8:23 9:8 10:18 43:23 49:3 55:15 57:11 57:18 58:7 58:11 58:13 58:14 65:11 78:2 78:12 81:3 82:22 83:8 83:9 84:4 88:15 90:2 90:11 90:14 91:6

ordered(1) 78:1

ordering(1) 58:3

orderly(1) 89:15

orders(2) 49:2 82:20

organizations(1) 59:14

original(5) 10:17 48:25 49:14 79:4 79:13

osler(1) 5:31

other(34) 9:2 14:9 15:16 15:19 17:17 18:2 21:18 25:16 25:16 29:8 33:8 35:22 40:22 42:3 42:4 43:3 46:17 46:19 48:19 50:2 52:25 53:20 54:9 54:12 55:8 66:18 67:18 68:5 73:4 78:15 79:10 85:12 85:17 92:2

others(2) 17:8 21:17

ought(6) 33:11 63:11 72:9 75:24 81:4 90:24

our(72) 7:10 13:10 18:7 19:4 19:9 19:18 20:2 20:18 20:21 20:25 21:24 22:19 23:7 25:14 25:16 26:21 33:22 35:15 37:1 37:15 38:1 39:16 40:14 40:18 41:4 43:7 44:19 45:11 47:6 48:7 48:7 49:24 50:2 50:4 50:7 50:7 50:14 50:22 51:15 51:23 51:24 53:19 54:14 59:13 67:14 68:14 70:16 71:15 71:17 72:2 72:5 73:22 74:17 74:23 75:14 76:4 78:10 78:17 79:23 79:24 81:15 81:22 83:4 83:22 84:16 84:18 84:19 84:22 84:25 91:14 92:3

ourselves(1) 35:23

our(32) 11:12 17:3 17:7 23:18 24:5 29:22 30:6 32:5 33:12 37:20 40:24 41:24 48:9 48:24 52:22 55:19 58:23 60:24 64:11 64:13 64:14 68:2 70:4 72:20 75:4 77:17 81:7 86:21 87:5 89:12 92:2 92:14

outlined(2) 19:8 45:1

outset(1) 31:12

over(13) 16:24 20:23 33:3 38:17 39:24 40:5 45:19 46:17 46:25 52:7 67:17 83:1 84:20

overlap(4) 44:2 50:6 50:18 89:10

overreacting(1) 70:3

overstating(1) 90:16

overview(3) 34:2 34:25 40:24

overy(4) 4:6 4:30 71:10 89:3

own(8) 14:14 15:24 18:1 22:17 25:14 32:12 44:7 57:22

ownership(2) 41:22 41:22

oxford(1) 2:24

o'connor(24) 3:34 18:16 18:23 65:8 65:13 65:14 65:22 66:1 66:11 66:20 67:11 68:16 68:17 69:22 70:8 70:9 72:4 74:16 75:2 75:9 75:20 76:6 76:10 76:14

p.m(3) 1:15 7:1 93:11

pachulski(1) 3:5

packet(1) 55:18

---

page(28) 12:15 32:8 32:12 34:14 35:7 36:25 37:25 38:5 38:7 38:8 38:8 38:11 38:11 38:16 38:17 39:6 39:21 42:18 42:22 45:3 45:5 45:6 45:13 46:21 47:1 54:18 58:18 83:21 83:21

pages(31) 27:2 32:14 32:16 32:22 33:5 33:21 34:4 35:24 37:22 38:18 38:22 41:15 41:18 41:19 42:1 42:19 44:11 44:13 44:15 44:16 44:17 44:19 44:20 45:8 45:21 45:22 46:11 46:12 46:13 46:20 50:7

palank(1) 6:14

paliare(1) 5:10

paper(1) 53:1

papers(9) 17:16 20:9 80:13 81:7 83:22 84:23 90:21 90:22 92:3

paragraph(4) 48:24 49:6 49:8 53:9

parameters(2) 31:15 68:12

pardon(1) 64:6

pared(1) 36:8

part(2) 2:15 2:25

part(7) 26:15 26:18 26:19 68:3 68:7 76:2 90:8

participate(3) 66:22 71:19 75:13

particular(4) 14:19 15:5 20:3 24:8

particularly(4) 13:4 58:24 76:1 78:14

parties(49) 8:16 8:19 10:1 10:15 11:6 11:17 11:19 12:18 12:23 13:23 14:16 15:14 15:23 21:1 21:2 24:9 31:19 34:6 34:7 34:23 36:5 37:5 37:8 40:8 40:15 40:24 42:4 43:3 44:9 51:8 52:22 53:20 56:2 56:5 56:20 57:4 57:14 60:19 61:6 63:12 63:17 66:18 71:4 75:18 75:24 79:7 80:12 80:16 80:21

partner(1) 8:6

partners(2) 6:17 6:21

party(20) 6:9 6:13 6:17 6:21 6:25 6:29 6:33 6:37 24:22 27:6 27:8 28:1 33:12 33:12 34:6 46:16 58:15 66:25 90:19 91:11

pass(1) 31:19

past(5) 62:12 74:7 74:8 85:15 91:11

path(1) 81:23

patterson(1) 3:46

pause(2) 23:11 59:20

penalized(1) 33:21

penalty(1) 42:17

pennsylvania(1) 1:43

pension(23) 3:26 4:45 6:4 12:8 13:19 14:10 14:15 14:19 14:21 16:1 16:6 16:7 18:14 25:14 25:19 25:22 27:16 36:5 45:25 50:6 50:6 50:8 61:17

people(21) 25:19 25:20 30:2 32:16 35:17 36:11 86:18

per(7) 33:5 34:4 34:5 34:6 34:8 34:22 35:25

perceive(1) 91:12

percent(7) 16:17 22:14 22:15 27:21 27:25 29:6 29:8 92:12 92:14 92:15 28:15 78:6

perforce(1) 88:5

perhaps(6) 13:4 18:2 59:13 62:22 66:17 84:1

period(2) 67:17 84:20

periods(2) 37:14 48:15

permission(5) 60:15 60:22 61:2 61:3 61:4

person(2) 9:23 42:2

personal(1) 48:18

perspective(2) 54:6 67:7

pertaining(1) 80:25

peter(1) 3:6

pew(1) 85:7

phase(1) 30:25

phone(3) 66:9 69:11 69:25

picking(1) 31:13

picture(1) 26:3

piece(3) 24:21 53:1 67:1

piecemeal(1) 56:25

piper(1) 3:13

place(11) 31:21 32:20 68:13 72:20 85:7 85:10 86:2 88:10 88:11 88:13 90:14

places(1) 45:5

plaintiffs(7) 4:13 49:5 50:1 78:24 80:22 81:2 89:20

plan(3) 10:17 55:14 57:25

plane(1) 23:1

planned(1) 55:10

plans(1) 45:25

plate(1) 83:25

plaza(3) 1:35 2:25 3:22

pleading(3) 50:4 50:19 50:22

pleadings(1) 19:13

please(4) 7:20 23:23 23:23 73:8

pleased(1) 10:2

plenty(1) 34:25

podium(6) 15:5 20:8 22:23 27:4 28:18 32:15 43:21 44:25 45:2 45:17 46:15 47:3 50:3 65:11 68:18 69:5 70:11 70:13 70:13 72:4 72:10 75:10 78:3 79:1 90:2 90:23

points(4) 18:18 36:24 51:3 89:3

pool(3) 19:23 20:3 20:5

popular(1) 31:1

portion(2) 77:12 93:5

---

portions(1) 69:24

position(13) 18:21 19:18 40:4 41:12 48:24 49:24 50:14 50:24 54:3 54:20 54:22 68:10 68:10

positions(5) 17:3 19:14 19:15 40:24 81:7

possible(6) 33:24 35:16 35:17 52:7 52:10 60:22

post-trial(1) 9:1

potential(2) 30:5 86:13

power(1) 91:5

ppearances(4) 1:23 2:1 3:1 4:1

practical(5) 33:7 81:8 84:17 85:5 86:24

practice(1) 59:10

pre(1) 55:14

pre-trial(10) 7:1 7:23 8:19 8:24 49:2 49:2 55:16 60:24 63:5 77:13

precisely(1) 17:20

prefer(5) 52:7 52:21 56:21 57:8 58:20

prejudice(5) 78:23 84:18 85:1 86:5 91:10

prejudiced(2) 36:13 86:18

preliminary(4) 78:11 78:17 79:24 81:22

premise(1) 20:2

preparation(1) 80:9

prepare(3) 82:3 21:7 32:25

prepared(8) 23:6 41:14 43:13 68:18 80:3 80:10 80:11 81:23

preparing(1) 57:1

present(11) 8:15 12:24 15:19 16:10 18:21 19:16 21:1 24:23 26:6 42:19 43:15

presentation(1) 80:18

presented(4) 17:21 19:11 19:14 20:12

presently(1) 90:1

presents(2) 26:3 52:3

preservation(1) 84:6

president(1) 75:7

pretty(2) 39:9 56:3

prevail(1) 54:2

previously(2) 80:24 87:5

primarily(3) 9:16 12:22 24:14

primary(2) 10:2 82:14

principle(2) 22:9 78:20

principles(1) 78:19

prior(3) 81:9 81:17 86:21

pro-rata(11) 12:11 14:23 15:1 16:15 19:23 20:4 23:5 26:7 27:6 27:24 74:19

probably(3) 16:16 43:14 72:1

problem(10) 15:6 28:16 32:23 61:18 61:20 61:21 61:22 85:24 92:14 92:16

problematic(1) 30:13

problems(4) 31:19 62:11 86:6 92:18

procedure(2) 43:23 89:18

procedures(3) 8:19 8:21 9:1

proceed(4) 11:9 13:1 24:3 80:3

proceeding(6) 72:8 82:22 83:10 83:12 86:22 88:16

proceedings(7) 1:18 1:47 43:21 44:11 44:22 67:24 93:16

proceeds(4) 13:24 15:15 16:2 22:10

process(9) 22:13 31:10 68:7 78:13 89:16 90:5 90:9 90:13

produced(1) 1:48

professionals(1) 35:11

promotion(2) 64:16 64:19

promptly(1) 52:9

proper(1) 24:12

proponents(3) 27:16 28:3 29:6

proposal(7) 32:21 34:20 37:21 42:3 58:10 58:17

proposals(1) 38:3

propose(3) 10:19 87:13 87:18

proposed(7) 8:15 9:7 9:8 9:18 10:15 11:12 14:20

proposes(1) 34:1

proposing(2) 66:3 68:23

prospect(1) 79:5

protocol(17) 8:16 9:7 9:18 10:8 11:2 11:13 13:12 49:1 49:10 49:13 51:5 51:11 55:14 57:18 58:3 58:9 58:14

provide(5) 58:21 60:3 70:21

provided(2) 56:9 67:22

provides(1) 13:13

providing(5) 58:12 81:24

provision(1) 82:19

pslra(1) 87:8

puck(2) 63:21 63:25

punitive(1) 83:6

purchasers(1) 83:7

purpose(1) 15:13

purposes(12) 10:22 12:10 19:9 30:9 49:3 54:15 68:23 89:20 89:22 89:25 90:1

pursuant(1) 43:22

pursue(1) 78:2

pursuing(4) 14:22 14:24 15:11 73:25

pushed(1) 54:2

---

put(23) 27:2 27:8 31:14 33:4 35:12 35:21 35:21 35:25 36:1 36:4 36:11 37:2 37:3 39:17 41:12 41:24 42:3 44:15 44:16 44:19 44:20 46:13 74:20

putnam(1) 5:32

putting(2) 33:23 54:3

quarter(1) 23:8

question(12) 9:10 21:11 25:12 27:11 31:9 36:16 59:11 60:14 66:7 75:5 77:2 87:25

questions(2) 62:9 86:12

quick(1) 8:9

quickly(3) 48:22 52:7 56:15

quite(5) 9:11 40:23 69:1 74:18 85:19

quoted(1) 16:20

rabbit(1) 74:1

raise(4) 55:8 55:9 79:9 89:13

raised(6) 47:20 80:5 84:14 84:14 86:12 89:23

raises(2) 55:2 82:15

ramifications(3) 70:8 71:15 73:19

rather(7) 12:2 19:20 20:6 36:12 55:21 56:24 84:8

re-file(1) 85:22

re-looked(1) 25:14

reach(2) 10:4 92:14

reached(2) 60:24 79:1

read(7) 32:24 35:24 37:5 41:14 53:9 53:10 90:22

reading(2) 32:15 49:7

real(1) 42:11

really(11) 13:22 24:6 24:8 37:20 41:24 43:16 44:8 68:6 75:12 85:6 87:16

reason(4) 15:16 36:2 56:8 56:10

reasonable(2) 33:24 34:9

reasonably(1) 40:19

rebut(3) 26:15 28:18 43:9

rebuttal(5) 25:17 25:24 37:1 43:5 45:8

rebuttals(1) 43:8

recall(1) 9:24

recap(1) 8:10

received(2) 72:13

recess(1) 93:7

reciting(1) 79:10

recognition(10) 78:2 78:12 81:3 82:20 83:8 88:14 90:2 90:11 90:14 91:6

recognize(2) 23:3 50:9

recognized(2) 59:13 90:13

record(12) 9:6 11:4 40:10 40:12 41:17 42:2 49:25 49:25 54:3 70:4 74:10 88:9

recorded(1) 1:47

recording(2) 1:47 93:15

records(1) 39:15

recoveries(1) 15:15

recovering(1) 14:4

recovery(6) 14:1 14:12 14:13 15:10 15:13 86:24

reduce(1) 78:14

reed(1) 2:21

refer(3) 48:25 49:9

reference(1) 19:24

referenced(1) 71:13

referred(1) 68:1

regard(4) 20:25 42:5 43:11 60:6

regarding(5) 37:21 40:6 46:22 51:14 54:11

region(1) 20:3

related(1) 75:14

relates(1) 75:2

relationship(1) 67:17

relevant(1) 89:24

relief(20) 27:15 65:25 69:12 78:22 80:2 80:19 80:23 81:20 81:18 81:22 82:5 82:16 83:15 84:2 84:3 84:13 88:17 89:12 90:2 91:17

rely(1) 53:20

remainder(1) 57:3

remaining(1) 11:10

remains(1) 77:2

remember(1) 26:15

remind(2) 16:20 89:4

renewed(3) 78:1 79:8 80:23

reorg(1) 6:29

repeat(1) 28:20

reply(4) 23:15 32:23 33:6 56:23

report(2) 27:2 77:6

reporter(4) 59:11 59:15 59:16 60:8

reporting(3) 59:8 59:13 59:18

reports(23) 8:22 15:23 17:22 21:22 25:8 25:13 25:17 25:18 35:7 35:20 36:14 40:13 41:18 41:20 43:1 43:2 43:5 43:5 43:6 43:6 43:8 43:8 53:10 56:8

represented(3) 85:21 86:9 86:20

representing(1) 5:9

request(34) 13:2 16:22 65:24 66:4 66:6 66:22 67:8 67:13 67:14 69:6 69:7 69:17 70:4 70:5 70:5 70:8 70:10 70:12 72:19 78:8 78:22 79:4 79:13 79:24 79:24 80:4 81:2 81:15 89:6 91:3 91:14 91:15

requested(4) 12:9 65:2 81:22 84:13

require(1) 87:7

| Word | Page:Line |
|------|-----------|
| requires(2) 48:4 80:25 | |
| research(1) 6:29 | |
| reserve(6) 16:25 44:17 67:14 68:14 71:17 72:2 | |
| reshuffled(1) 57:21 | |
| resolution(4) 81:18 86:14 89:15 89:18 | |
| resolve(2) 73:9 86:16 | |
| resolved(3) 13:11 79:4 79:11 | |
| resolving(1) 89:22 | |
| respect(26) 13:17 13:21 34:17 36:25 37:16 38:16 39:16 39:18 41:7 41:16 42:1 44:7 44:19 44:21 60:22 71:18 75:22 78:11 78:19 80:6 82:2 82:3 84:16 86:7 86:22 90:7 | |
| respectful(4) 37:1 38:1 40:14 41:4 | |
| respects(2) 18:8 32:20 | |
| respond(16) 15:18 15:19 19:2 27:10 33:16 33:22 35:3 37:24 42:9 46:6 46:6 46:14 72:10 81:6 91:20 92:9 | |
| responded(1) 48:5 | |
| responding(1) 80:6 | |
| response(6) 36:24 44:17 44:21 46:12 78:11 81:22 | |
| responsibilities(1) 64:17 | |
| rest(1) 47:16 | |
| restriction(1) 38:15 | |
| result(2) 9:16 33:6 | |
| retains(1) 91:5 | |
| retired(1) 63:18 | |
| revenue(1) 84:25 | |
| revisit(2) 87:21 87:25 | |
| richardie(1) 2:5 | |
| ridiculous(2) 73:2 74:18 | |
| right(80) 7:10 7:24 8:2 8:10 9:20 9:20 9:24 11:25 13:1 13:3 14:6 17:23 18:11 27:23 28:5 28:12 29:12 29:22 29:23 32:1 36:19 39:23 41:9 45:10 46:3 46:4 46:24 47:2 47:5 47:8 49:17 50:13 52:12 52:23 54:8 55:7 56:17 57:16 62:6 66:25 68:9 68:10 69:4 69:14 71:19 71:21 72:3 73:7 73:8 75:18 76:2 76:5 77:18 78:23 81:13 81:14 82:6 82:6 84:5 84:7 84:18 84:24 85:3 85:6 85:7 85:7 86:1 88:10 88:11 88:12 89:2 89:6 90:1 91:9 91:14 91:20 92:13 92:23 93:7 | |
| righton(1) 5:15 | |
| rights(4) 67:14 68:14 71:17 72:2 | |
| ripe(1) 81:12 | |
| road(1) 4:16 | |
| robert(1) 2:14 | |
| rockets(1) 73:11 | |
| rodney(2) 2:7 2:32 | |
| roland(1) 5:10 | |
| role(4) 30:16 30:19 31:9 73:13 | |
| roman(1) 47:13 | |
| room(1) 21:5 | |
| rooney(2) 2:37 77:21 | |
| roseland(1) 4:17 | |
| rosenberg(1) 5:10 | |
| rosenman(2) 2:45 5:4 | |
| rosenthal(83) 1:33 7:25 8:6 8:8 8:15 9:13 9:21 9:25 11:15 11:17 11:22 12:1 12:15 12:18 12:23 13:7 13:10 14:4 14:7 17:15 17:20 17:24 18:11 18:12 18:19 19:5 22:20 22:21 23:14 23:16 23:23 23:25 24:5 24:5 25:5 25:6 25:12 27:12 27:14 27:18 27:24 28:6 28:13 28:22 31:8 32:19 33:11 34:11 34:16 37:9 39:10 42:8 42:23 42:25 43:13 43:18 51:5 51:24 52:1 52:9 52:15 52:19 52:21 55:13 56:1 56:10 56:19 57:3 57:14 57:17 57:24 58:2 58:6 61:17 61:13 61:16 62:20 62:24 63:3 63:7 63:13 64:2 64:24 | |
| rosenthal's(2) 19:3 35:6 | |
| rule(1) 92:7 | |
| rule(3) 78:19 80:24 84:18 | |
| rulings(4) 62:21 81:9 81:17 83:20 | |
| run(2) 10:20 28:13 | |
| said(27) 11:19 17:1 24:25 28:13 28:21 29:9 33:9 36:1 36:3 36:6 41:6 42:12 44:12 45:17 51:18 52:4 57:8 66:5 66:12 66:14 69:18 72:17 73:3 73:8 74:14 77:6 87:27 | |
| sake(1) 7:5 | |
| sale(1) 22:10 | |
| sales(1) 13:24 | |
| same(32) 7:22 15:1 15:11 15:14 16:11 17:8 18:4 25:18 26:1 26:17 28:17 30:4 37:14 38:11 38:11 38:16 43:9 44:25 45:15 46:21 46:22 47:1 47:3 47:16 48:12 54:24 60:1 61:25 71:25 75:25 79:12 79:12 | |
| sameer(1) 3:35 | |
| samis(1) 2:6 | |
| sandler(1) 4:13 | |
| sat(3) 9:22 48:14 74:22 | |
| satisfy(1) 60:18 | |
| save(1) 31:16 | |
| saved(1) 44:14 | |
| saw(1) 9:11 | |
| say(47) 7:16 7:17 10:2 14:22 14:24 15:2 18:9 19:15 21:5 21:9 21:12 25:17 27:20 28:23 28:25 29:2 29:5 29:18 32:7 32:14 33:12 33:13 33:15 34:16 34:19 36:13 38:20 38:23 44:16 44:18 46:8 49:12 49:15 51:25 59:8 68:11 68:17 68:18 69:5 75:13 75:16 75:20 76:16 87:17 91:18 93:3 | |
| saying(12) 16:12 19:21 21:16 24:18 24:20 30:7 31:24 42:18 48:6 56:16 70:14 76:10 | |
| says(7) 18:9 24:19 25:7 26:5 26:7 53:2 74:11 | |
| scale(2) 23:20 24:9 | |
| schedule(7) 58:11 68:14 80:6 80:13 87:10 92:2 92:4 | |
| scheduled(1) 78:10 | |
| scheduling(3) 10:22 13:5 72:19 | |
| scheindlin(2) 85:13 87:11 | |
| schuylkill(1) 1:42 | |
| scooping(1) 20:3 | |
| scope(2) 88:3 91:5 | |
| scorekeeper(1) 63:18 | |
| seal(1) 27:4 | |
| seat(1) 86:23 | |
| second(8) 12:14 12:17 20:8 22:25 24:18 38:13 39:5 82:21 | |
| seconds(3) 69:10 69:25 74:13 | |
| section(3) 13:12 82:17 84:16 | |
| securities(6) 78:2 83:5 83:10 83:16 83:17 86:7 | |
| see(29) 11:7 21:8 22:28 26:12 30:16 30:16 30:19 31:9 38:15 40:3 45:7 46:18 51:24 54:1 54:10 56:5 57:5 59:19 60:5 62:21 66:12 66:23 68:24 73:19 75:2 75:12 82:11 82:12 86:3 | |
| seek(8) 21:6 23:8 80:1 80:22 81:18 82:16 84:2 88:17 | |
| seeking(5) 12:11 14:18 15:14 70:18 90:1 | |
| seem(1) 90:23 | |
| seems(3) 32:9 35:4 64:5 | |
| seen(5) 9:12 30:15 53:14 71:13 77:8 | |
| sees(1) 45:14 | |
| selinda(2) 3:14 76:21 | |
| self(1) 12:19 | |
| sense(10) 16:3 16:19 19:9 37:17 75:21 79:23 85:6 90:15 90:23 91:22 | |
| sent(6) 24:1 66:1 66:3 66:12 66:17 92:2 | |
| sentiments(1) 41:15 | |
| separate(4) 13:16 16:14 43:21 44:1 | |
| sequencing(3) 8:25 10:10 10:13 | |
| series(2) 27:5 50:5 | |
| serve(1) 84:4 | |
| service(2) 1:41 1:48 | |
| services(1) 1:41 5:9 | |
| set(11) 7:22 11:12 37:20 40:3 40:24 42:15 46:16 48:24 59:20 59:23 85:13 | |
| sets(1) 8:12 | |
| setting(1) 51:23 | |
| settle(1) 74:22 | |
| settled(4) 29:13 47:12 77:23 83:11 | |
| settlement(8) 60:22 60:24 61:6 61:10 61:19 62:1 70:15 73:10 | |
| seven(6) 25:24 38:17 39:21 45:3 45:5 45:6 | |
| seventh(1) 3:36 | |
| shadow(2) 48:11 59:14 | |
| shakra(1) 6:6 | |
| shall(6) 13:13 13:14 13:16 13:17 13:18 13:20 | |
| shannon(1) 73:9 | |
| share(10) 14:1 14:11 14:13 22:18 23:6 23:8 29:11 29:12 75:23 87:4 | |
| shares(1) 27:6 | |
| sharing(3) 19:17 19:24 22:6 | |
| she(7) 59:20 60:3 85:19 85:23 85:23 86:3 86:4 | |
| shibley(1) 5:15 | |
| short(3) 34:19 40:23 41:3 | |
| short-changed(1) 28:17 | |
| short-circuit(1) 78:13 | |
| shortage(1) 17:21 | |
| shorten(3) 31:20 31:20 36:9 | |
| shorter(2) 41:5 88:18 | |
| shorthand(2) 24:17 41:21 | |
| should(32) 15:2 17:6 17:8 18:14 19:15 20:25 21:20 22:12 22:18 31:2 32:3 33:2 34:5 37:10 37:14 38:23 39:14 42:16 49:3 49:25 51:3 54:3 60:17 66:18 68:21 68:24 69:23 76:14 80:1 80:22 85:12 | |
| shouldn't(3) 33:20 44:24 50:15 | |
| shovel(1) 7:8 | |
| show(1) 27:5 | |
| showed(1) 35:20 | |
| shows(1) 27:2 | |
| shut(1) 83:16 | |
| side(4) 25:9 32:13 45:7 60:5 | |
| sides(1) 79:23 | |
| significant(6) 25:22 31:18 37:6 40:11 43:22 88:1 | |
| silent(1) 9:23 | |
| similar(1) 64:18 | |
| simon(2) 4:20 4:21 | |
| simplicity(3) 16:18 29:9 29:16 | |
| simply(6) 44:18 48:6 48:6 53:20 71:17 89:23 | |
| since(5) 38:8 72:6 83:1 84:21 85:15 | |
| single(5) 19:22 49:25 68:5 73:5 73:7 | |
| sir(1) 71:11 | |
| sit(5) 51:16 51:17 51:19 59:14 67:18 | |
| sitting(3) 7:4 7:19 51:15 67:8 72:12 72:13 74:2 85:24 | |
| six(5) 29:5 34:14 35:17 38:8 74:8 | |
| size(3) 21:20 47:10 47:16 | |
| slavens(1) 5:37 | |
| slightly(1) 80:11 | |
| small(1) 37:3 | |
| smith(1) 5:46 | |
| snap(3) 74:4 74:9 74:12 | |
| snow(1) 7:9 | |
| sole(4) 80:25 80:21 81:16 91:15 | |
| solely(1) 65:16 | |
| solves(1) 28:15 | |
| some(35) 7:8 10:3 11:7 12:14 12:15 13:4 21:20 23:7 27:15 27:16 30:18 31:14 32:14 35:9 37:19 41:6 44:2 51:6 55:11 56:8 57:20 59:9 60:24 61:19 62:7 62:8 75:13 75:24 77:7 78:13 79:2 79:10 84:15 86:15 86:16 | |
| somebody(4) 59:12 60:5 63:11 86:2 | |
| somehow(2) 37:15 88:6 | |
| someone(1) 32:13 | |
| something(12) 7:16 7:17 32:9 61:9 66:5 68:21 70:1 74:11 76:16 85:23 87:11 87:18 | |
| sometimes(2) 80:16 87:17 | |
| somewhat(1) 67:18 | |
| soon(1) 26:12 | |
| sooner(1) 56:13 | |
| sorry(7) 22:24 34:11 39:11 39:12 45:5 63:23 66:2 | |
| sort(3) 30:16 30:17 30:18 51:2 59:14 59:23 80:14 89:12 | |
| sorts(1) 35:8 | |
| sound(2) 1:47 93:15 | |
| sounds(1) 60:15 | |
| southern(1) 89:14 | |
| spare(1) 88:8 | |
| speak(1) 47:19 | |
| speaker(1) 34:14 | |
| speaking(7) 42:9 57:7 61:5 61:8 61:13 61:19 66:6 | |
| specific(2) 37:19 52:13 | |
| specifically(2) 11:10 65:2 | |
| specter(1) 89:13 | |
| spell(1) 75:4 | |
| spend(1) 91:17 | |
| split(9) 20:10 20:11 24:10 28:11 29:8 37:15 37:18 45:14 46:8 | |
| sprawling(1) 78:16 | |
| square(2) 2:7 2:32 | |
| squeeze(1) 24:9 | |
| stage(2) 8:12 11:8 | |
| stale(1) 86:18 | |
| stand(2) 70:19 93:7 | |
| standing(4) 69:21 72:7 72:25 75:13 | |
| stang(1) 3:5 | |
| start(1) 1:29 | |
| start(8) 17:9 30:10 30:11 32:16 32:17 38:7 38:8 57:1 | |
| started(1) 40:1 | |
| starting(2) 58:15 87:23 | |
| starts(2) 55:12 83:20 | |
| state(1) 66:25 | |
| statement(3) 16:25 78:17 79:24 | |
| statements(12) 8:25 10:10 10:24 10:24 12:17 34:8 39:19 40:6 40:8 54:15 54:19 71:2 | |
| states(5) 1:1 1:20 79:7 88:15 89:19 | |
| states(19) 12:17 77:25 78:9 79:16 79:18 79:21 79:22 79:25 80:8 80:11 80:18 81:11 81:16 82:13 85:11 85:22 86:11 91:3 93:2 | |
| statute(1) 86:6 | |
| stay(3) 31:24 83:9 | |
| stayed(4) 83:7 83:7 83:8 87:23 90:12 | |
| staying(2) 88:15 90:9 | |
| ste(4) 2:39 3:15 3:29 3:42 | |
| steen(2) 1:32 5:26 | |
| step(2) 42:24 82:21 | |
| stephen(1) 3:41 | |
| still(6) 15:13 26:14 34:5 59:4 63:8 79:12 | |
| stipulated(1) 8:23 | |
| stock(1) 83:7 | |
| stone(2) 6:21 49:22 | |
| stop(2) 7:18 32:15 | |
| stopped(1) 82:25 | |
| story(1) 36:12 | |
| straddle(1) 15:3 | |
| strategies(1) 15:8 | |
| strauss(2) 2:12 4:36 | |
| street(5) 1:11 1:42 2:8 2:33 3:7 | |
| striving(1) 47:24 | |
| struck(1) 77:11 | |
| structure(1) 11:12 | |
| stuck(1) 85:20 | |
| stuff(1) 86:3 | |
| sub-con(3) 27:6 28:2 29:2 | |
| subdividing(1) 29:17 | |
| subject(4) 31:5 31:24 52:11 57:19 | |
| submission(9) 8:21 16:20 19:5 37:2 38:1 40:14 41:4 49:9 54:14 | |
| submissions(5) 9:2 19:3 23:10 54:1 56:25 | |
| submit(5) 20:11 31:20 55:14 56:24 66:19 | |
| submitted(11) 9:18 10:5 10:6 17:17 17:24 19:6 25:24 43:2 43:5 55:14 89:21 | |
| submitting(1) 17:25 51:8 51:12 | |
| subpoena(5) 84:4 84:6 84:10 89:7 89:24 | |
| subsection(1) 58:12 | |
| subsidiary(1) 22:15 | |
| substance(3) 8:24 26:2 74:3 | |
| substantial(1) 67:21 | |
| substantive(11) 12:12 14:23 15:1 16:15 19:18 26:6 26:8 26:10 26:25 73:2 74:20 | |
| such(3) 14:9 14:10 50:18 | |
| suggest(4) 33:5 37:14 40:20 83:20 | |
| suggested(1) 83:25 | |
| suggesting(2) 75:12 76:7 | |
| suggestion(2) 10:16 37:9 | |
| suggestions(1) 71:18 | |
| suggests(2) 20:13 21:25 | |
| superintendent(1) 5:8 | |
| supplement(1) 10:7 | |
| supplemental(1) 81:24 | |
| supplementary(1) 51:11 | |
| support(5) 23:9 38:6 42:4 50:10 50:24 | |
| supports(2) 34:19 40:4 | |
| suppose(1) 65:20 | |
| supposed(1) 70:2 | |
| sure(17) 9:11 28:16 30:1 52:8 55:8 58:25 61:24 64:21 64:21 65:1 68:6 69:1 75:22 86:8 86:8 87:9 91:7 | |
| surprising(2) 74:5 75:25 | |
| suspect(1) 57:8 | |
| system(1) 59:23 | |
| tab(1) 58:19 | |
| tabatabai(1) 2:22 | |
| table(1) 86:23 | |
| tables(1) 86:20 | |
| tacking(1) 18:6 | |
| tail(1) 71:14 | |
| take(21) 7:23 21:5 29:5 32:10 37:5 40:8 40:14 40:18 41:13 48:9 53:6 55:24 58:22 68:9 68:10 68:13 70:25 72:20 77:22 82:21 92:11 | |
| taken(2) 35:4 46:20 | |
| taking(2) 10:21 33:3 | |
| talk(13) 41:8 56:1 57:4 59:21 59:22 61:6 61:19 61:25 62:5 62:6 63:8 74:3 85:18 | |
| talking(6) 32:16 37:7 60:4 66:21 73:1 75:9 | |
| talks(1) 58:12 | |
| tammy(1) 93:20 | |
| taylor(1) 2:29 | |
| technically(1) 25:3 | |
| telephonic(3) 4:27 5:1 6:1 | |
| tell(5) 36:12 47:14 50:7 85:1 85:16 | |
| telling(1) 92:22 | |
| ten(3) 35:7 35:20 36:14 | |
| tens(1) 74:1 | |
| term(2) 66:24 | |
| terminated(2) 66:9 66:9 | |
| terms(9) 22:8 24:15 24:15 30:9 71:19 72:24 85:7 86:13 91:2 | |
| testimony(2) 15:21 57:12 | |
| than(29) 12:2 14:22 17:9 18:8 21:6 22:1 22:7 25:9 28:15 28:24 29:14 36:12 37:13 41:5 42:4 42:20 43:2 48:5 49:4 50:1 60:3 64:17 67:18 71:1 73:4 73:12 73:17 79:10 92:2 | |
| thank(41) 7:21 8:2 8:5 11:18 11:12 18:22 18:23 19:1 19:2 22:16 23:24 36:19 39:24 43:14 43:18 48:20 62:16 62:18 63:3 70:23 71:5 71:6 71:7 71:22 76:14 76:18 77:5 77:18 78:7 82:6 82:8 88:24 88:24 88:25 91:21 92:23 92:24 92:25 93:1 93:6 93:6 | |
| thanks(3) 62:15 62:17 73:10 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that**(301) 7:22 7:23 8:12 9:6 9:9 9:10 9:11 9:12 9:13 9:15 9:17 9:23 10:3 10:3 10:8 10:13 10:16 10:19 10:20 11:3 11:4 11:6 11:8 11:17 11:19 11:19 11:23 11:24 12:1 12:9 12:12 12:14 12:24 13:5 13:6 13:10 13:13 13:23 13:25 14:2 14:20 14:24 15:2 15:6 15:6 15:8 15:11 15:14 15:17 15:22 15:25 16:1 16:1 16:21 16:24 17:2 17:12 17:13 17:16 18:3 18:9 19:5 19:11 19:14 19:15 19:19 19:21 19:24 19:25 20:2 20:5 20:11 20:13 20:17 21:1 21:5 21:7 21:9 22:2 22:19 23:4 23:6 23:7 23:8 23:9 23:18 23:19 23:20 24:1 24:12 24:18 24:22 24:25 25:2 25:7 25:8 25:11 25:18 25:19 25:21 26:1 26:4 26:7 26:9 26:10 26:11 26:12 26:15 27:5 27:10 27:12 27:19 27:24 28:1 28:2 28:7 28:9 28:16 28:17 28:18 28:24 29:3 29:9 29:10 29:17 29:25 30:3 30:8 30:11 30:12 30:22 31:4 31:11 31:12 32:1 32:9 32:9 32:10 32:17 32:20 32:21 32:21 32:23 32:24 33:1 33:5 33:8 33:16 33:21 33:22 34:2 34:5 34:16 34:23 35:4 35:14 35:23 35:25 36:1 36:2 36:5 36:6 36:7 36:13 36:13 37:9 37:10 37:14 37:15 37:16 37:17 37:22 37:23 37:23 38:15 38:16 38:23 38:25 39:9 39:17 39:17 39:21 40:7 40:25 41:2 41:3 41:7 41:8 41:12 41:12 42:3 42:3 42:6 42:10 42:12 42:14 42:18 43:1 43:6 43:7 43:11 43:23 43:25 44:1 44:3 44:5 44:6 44:6 44:7 44:9 44:24 45:7 46:6 46:7 46:10 46:16 47:6 47:14 47:19 47:24 48:2 48:4 48:13 48:16 48:17 48:19 49:10 49:10 49:22 49:25 50:2 50:5 50:13 50:17 51:5 51:5 51:6 51:7 51:10 51:12 52:3 52:4 52:5 52:5 52:15 53:1 53:12 53:16 53:17 53:24 54:1 54:1 54:2 54:3 54:4 54:5 54:6 54:11 54:16 54:20 55:6 55:10 55:14 55:16 55:23 56:2 56:2 56:3 56:6 56:7 56:14 56:18 56:22 57:2 57:4 57:8 57:9 57:10 57:12 57:19 57:25 58:6 58:10 58:12 58:17 58:18 58:19 58:21 58:21 58:22 59:2 59:8 59:8 59:19

**that**(216) 59:20 59:21 59:23 59:24 60:4 60:6 60:11 60:13 60:17 60:18 60:19 61:20 62:9 62:11 62:22 63:2 63:3 63:5 63:9 63:13 63:17 65:1 65:12 65:14 65:15 66:1 66:3 66:5 66:7 66:13 66:14 66:14 66:15 66:24 67:6 67:11 67:13 67:13 67:14 68:3 68:6 68:7 68:9 68:17 68:18 68:21 68:21 68:23 68:24 68:25 69:4 69:5 69:6 69:10 69:11 69:17 69:21 69:23 69:24 70:2 70:5 70:12 70:12 70:17 70:17 70:20 70:20 70:20 71:1 71:2 71:2 71:4 71:13 71:15 71:20 72:5 72:8 72:17 72:19 72:23 73:5 73:12 73:16 73:20 73:22 73:25 74:2 74:3 74:10 74:11 74:19 74:20 74:24 75:11 75:12 75:13 76:7 76:7 76:10 76:16 77:2 77:2 77:10 77:12 77:25 78:12 78:16 78:18 78:21 78:22 79:1 79:3 79:20 79:10 79:23 80:2 80:3 80:4 80:14 80:23 80:24 81:1 81:1 81:4 81:11 81:12 81:21 81:22 82:4 82:5 82:14 82:16 82:16 82:17 83:8 83:9 83:15 83:16 83:24 84:1 84:3 84:11 84:11 84:12 84:13 84:14 84:15 84:17 84:22 84:22 85:3 85:6 85:21 85:21 85:21 85:23 86:1 86:3 86:9 86:12 86:14 86:18 87:3 87:6 87:7 87:9 87:13 87:13 87:19 88:1 88:3 88:5 88:6 88:9 88:16 88:19 89:4 89:4 89:7 89:7 89:9 89:10 89:14 89:16 89:17 89:18 89:18 89:21 89:25 90:2 90:9 90:11 90:15 90:19 90:19 90:22 90:23 91:8 91:12 91:17 91:22 92:3 92:5 92:5 92:9 92:10 92:11 92:15 92:19 93:4 93:7 93:14

**that's**(58) 7:24 9:20 9:20 11:25 13:20 16:19 17:6 17:6 20:10 21:19 22:7 25:12 27:9 28:15 29:6 29:15 30:21 31:25 32:17 34:21 36:18 38:1 38:20 39:14 42:22 44:8 44:18 45:24 46:3 48:8 51:20 53:9 54:12 55:6 58:10 60:9 62:14 64:1 69:14 75:8 75:20 78:6 78:15 81:14 82:1 83:17 84:5 84:7 84:21 86:10 88:9 88:19 89:16 90:7 91:7 91:24 92:8

**the**(301) 1:1 1:2 1:19 2:4 2:19 2:37 3:48 4:9 5:19 7:2 7:2 7:6 7:6 7:10 7:11 7:19 7:22 7:23 7:24 7:25 8:2 8:3 8:5 8:10 8:12 8:13 8:14 8:15 8:16 8:18 8:19 8:23 9:5 9:5 9:5 9:6 9:6 9:9 9:11 9:12 9:14 9:14 9:16 9:17 9:17 9:18 9:20 9:20 9:25 10:1 10:2 10:5 10:6 10:7 10:11 10:14 10:15 10:16 10:16 10:17 10:18 10:21 10:25 11:1 11:2 11:3 11:4 11:4 11:5 11:6 11:7 11:18 11:19 11:10 11:10 11:11 11:11 11:12 11:12 11:14 11:15 11:17 11:18 11:18 11:18 11:19 11:20 11:21 11:25 12:4 12:7 12:8 12:10 12:10 12:11 12:14 12:16 12:18 12:18 12:20 12:21 12:22 12:22 12:24 12:25 13:1 13:3 13:3 13:4 13:5 13:8 13:9 13:11 13:11 13:13 13:14 13:15 13:17 13:18 13:19 13:21 13:24 13:24 13:25 14:1 14:2 14:2 14:2 14:4 14:5 14:6 14:7 14:8 14:9 14:10 14:10 14:12 14:13 14:14 14:15 14:16 14:16 14:17 14:19 14:20 14:21 14:22 14:24 14:25 15:1 15:3 15:5 15:5 15:7 15:9 15:9 15:10 15:10 15:11 15:12 15:13 15:13 15:14 15:15 15:16 15:17 15:19 15:21 15:21 15:22 15:23 15:24 15:25 15:25 16:1 16:1 16:2 16:3 16:4 16:4 16:5 16:7 16:7 16:7 16:8 16:11 16:11 16:13 16:14 16:14 16:15 16:16 16:16 16:17 16:18 16:20 16:21 16:21 16:22 16:23 16:24 17:3 17:4 17:5 17:15 17:17 17:18 17:19 17:21 17:22 17:23 17:24 17:25 18:2 18:3 18:4 18:4 18:4 18:7 18:7 18:8 18:9 18:9 18:11 18:14 18:15 18:19 18:22 18:24 19:1 19:6 19:7 19:9 19:10 19:11 19:12 19:13 19:14 19:17 19:22 19:23 19:24 19:25 20:1 20:3 20:4 20:6 20:8 20:18 20:19 20:19 20:20 20:20 20:24 21:4 21:5 21:7 21:17 21:17 21:19 21:20 21:21 21:21 21:24 22:1 22:3 22:9 22:10 22:10 22:10 22:14 22:15 22:15 22:17 22:18 22:19 22:20

**the**(301) 22:24 23:1 23:4 23:7 23:7 23:11 23:18 23:20 23:21 23:23 24:1 24:7 24:7 24:9 24:11 24:12 24:13 24:14 24:16 24:17 24:18 24:20 24:21 24:24 24:24 24:24 24:25 25:1 25:3 25:7 25:9 25:13 25:13 25:18 25:18 25:22 25:23 26:1 26:4 26:5 26:6 26:6 26:9 26:11 26:12 26:14 26:15 26:16 26:17 26:18 26:19 26:20 26:21 26:22 26:24 27:9 27:11 27:12 27:15 27:16 27:17 27:19 27:21 27:22 27:25 27:26 28:1 28:4 28:5 28:6 28:8 28:12 28:14 28:16 28:17 28:18 28:18 28:23 29:1 29:2 29:3 29:4 29:4 29:5 29:7 29:7 29:10 29:11 29:12 29:14 29:15 30:3 30:3 30:4 30:8 30:8 30:10 30:17 30:18 30:20 30:21 30:25 31:4 31:4 31:6 31:10 31:11 31:11 31:12 31:17 31:18 31:21 31:22 31:24 32:1 32:4 32:6 32:8 32:20 32:21 32:23 32:24 33:1 33:4 33:5 33:7 33:8 33:9 33:10 33:13 33:13 33:15 33:17 33:19 33:19 33:20 33:21 33:22 34:1 34:1 34:3 34:6 34:6 34:7 34:8 34:9 34:14 34:15 34:16 34:18 34:19 34:21 34:23 35:2 35:2 35:9 35:10 35:18 35:19 35:22 35:22 36:2 36:2 36:2 36:4 36:4 36:5 36:9 36:20 36:21 36:22 36:22 36:23 36:25 36:25 37:1 37:1 37:2 37:3 37:3 37:4 37:4 37:8 37:9 37:13 37:13 37:18 37:20 37:24 37:24 38:4 38:10 38:10 38:11 38:11 38:12 38:14 38:15 38:16 38:17 38:18 38:19 38:19 38:20 38:23 39:1 39:1 39:4 39:5 39:9 39:16 39:17 39:17 39:18 39:20 39:22 39:24 39:24 40:2 40:3 40:3 40:7 40:12 40:15 40:15 40:16 40:16 40:17 40:17 40:23 40:24 40:25 41:1 41:2 41:5 41:11 41:11 41:12 41:13 41:14 41:15 41:15 41:16 41:17 41:18 41:20 41:21 41:23 41:24 41:25 42:3 42:4 42:4 42:4 42:10 42:12 42:12 42:14 42:15 42:15 42:15 42:17 42:22 42:24 42:25 43:2 43:3 43:4 43:4 43:6 43:6 43:7

**the**(301) 43:8 43:9 43:11 43:14 43:15 43:15 43:16 44:9 44:9 44:10 44:12 44:12 44:14 44:17 44:25 44:7 44:9 44:9 44:10 44:12 44:12 44:14 44:17 44:25 45:1 45:5 45:6 45:6 45:7 45:8 45:19 45:22 45:23 45:25 46:5 46:15 46:15 46:17 46:21 46:21 46:21 46:22 46:22 47:1 47:3 47:14 47:15 47:16 47:16 47:17 47:23 47:25 48:1 48:3 48:3 48:5 48:8 48:9 48:10 48:12 48:13 48:15 48:15 48:23 48:25 48:25 48:25 49:1 49:2 49:3 49:8 49:8 49:14 49:19 49:19 49:25 50:2 50:3 50:5 50:6 50:8 50:15 50:19 50:21 50:24 51:1 51:2 51:3 51:4 51:5 51:7 51:8 51:9 51:9 51:10 51:12 51:16 51:16 51:18 51:18 51:19 51:20 51:24 52:2 52:2 52:5 52:6 52:7 52:8 52:20 52:21 52:22 52:23 53:2 53:3 53:6 53:9 53:12 53:13 53:13 53:14 53:16 53:17 53:25 53:25 54:3 54:4 54:7 54:9 54:12 54:15 54:17 54:18 54:18 54:19 54:20 54:21 55:5 55:5 55:9 55:10 55:10 55:15 55:15 55:15 55:16 55:16 55:17 55:17 55:17 55:19 56:1 56:2 56:5 56:6 56:9 56:12 56:16 56:16 56:20 56:21 56:21 56:24 56:25 57:2 57:3 57:3 57:4 57:5 57:10 57:11 57:14 57:16 57:17 57:18 57:18 57:20 57:23 58:1 58:2 58:3 58:5 58:8 58:8 58:11 58:13 58:14 58:18 58:14 58:15 58:16 58:16 58:17 58:17 58:19 58:20 58:21 59:1 59:2 59:9 59:10 59:10 59:16 59:17 59:19 59:22 59:23 59:25 60:4 60:5 60:7 60:7 60:8 60:9 60:11 60:15 60:18 60:22 60:25 61:11 61:13 61:15 61:17 61:18 61:25 62:8 62:8 62:9 62:10 62:20 62:21 62:22 62:23 62:24 63:1 63:1 63:5 63:10 63:11 63:15 63:17 63:18 63:21 63:22 63:25 64:1 64:4 64:6 64:8 64:10 64:11 64:11 64:13 64:13 64:14 64:15 64:17 64:21 64:23 64:25 65:6 65:15 65:18 65:20 65:23 65:24 65:24 66:4 66:4 66:5 66:6 66:18 66:18 66:19 66:19 66:20 66:21 66:6 66:8 66:9 66:10 66:12

**the**(301) 66:15 66:16 66:17 66:18 66:18 66:20 66:21 66:23 66:24 67:4 67:4 67:7 67:8 67:9 67:10 67:12 67:15 67:18 67:20 67:22 67:23 67:24 67:25 68:1 68:1 68:2 68:3 68:3 68:3 68:4 68:5 68:10 68:11 68:13 68:15 68:19 68:20 68:22 69:1 69:1 69:2 69:2 69:3 69:6 69:7 69:10 69:11 69:11 69:11 69:13 69:15 69:19 69:21 69:22 69:23 70:2 70:3 70:5 70:6 70:7 70:7 70:8 70:8 70:9 70:10 70:12 70:13 70:14 71:10 71:18 71:21 71:22 71:23 71:23 71:24 71:25 71:16 71:16 71:18 71:18 72:1 72:4 72:12 72:5 72:7 72:10 72:11 72:11 72:12 72:13 72:14 73:1 73:4 73:16 73:19 73:19 73:19 73:20 73:23 73:9 73:12 73:16 73:19 73:19 73:19 73:20 73:23 74:1 74:3 74:4 74:6 74:7 74:8 74:9 74:10 74:12 74:13 74:15 74:19 74:23 74:25 74:25 75:5 75:6 75:6 75:7 75:8 75:10 75:14 75:16 75:17 75:17 75:18 75:21 75:23 75:24 75:24 76:4 76:9 76:12 76:12 76:13 76:16 76:20 76:22 76:25 76:25 77:8 77:8 77:19 77:7 77:7 77:8 77:9 77:12 77:13 77:15 77:16 77:17 77:18 77:22 77:24 77:25 77:25 78:1 78:2 78:4 78:6 78:15 78:16 78:18 78:18 78:20 78:21 78:22 78:23 78:24 79:2 79:2 79:3 79:3 79:4 79:5 79:5 79:6 79:6 79:9 79:10 79:10 79:11 79:12 79:12 79:13 79:16 79:17 79:18 79:18 79:20 79:21 79:21 79:25 80:3 80:5 80:7 80:8 80:11 80:11 80:11 80:16 80:16 80:17 80:20 80:20 80:21 80:22 80:22 80:25 81:1 81:3 81:3 81:5 81:5 81:6 81:8 81:9 81:11 81:11 81:16 81:17 81:18 81:20 81:23 81:25 82:2 82:3 82:5 82:6 82:9 82:11 82:12 82:13 82:17 82:22 82:22 82:22 82:23 83:1 83:3 83:4 83:8 83:10 83:11 83:12 83:14 83:16 83:19 83:20 84:1 84:5 84:7 84:11 84:14 84:17 85:18 85:23 86:1 86:4 86:10 80:17 80:17 81:10 81:16 81:20 81:22 81:25 89:2 89:15 90:10 90:18 91:23 92:18

**the**(130) 85:16 85:20 85:22 86:1 86:4 86:8 86:10 86:10 86:11 86:12 86:18 86:19 86:20 86:20 86:21 86:22 86:23 87:2 87:4 87:4 87:5 87:8 87:16 87:19 87:21 87:22 87:22 87:22 87:24 87:25 88:3 88:3 88:4 88:7 88:9 88:10 88:10 88:10 88:12 88:15 88:16 88:20 88:22 88:24 89:1 89:4 89:4 89:6 89:7 89:8 89:9 89:15 89:19 89:20 89:23 89:23 89:25 90:1 90:2 90:4 90:5 90:5 90:5 90:6 90:7 90:8 90:9 90:9 90:10 90:11 90:12 90:14 90:16 90:17 90:18 90:19 90:20 90:22 90:23 91:1 91:4 91:14 91:15 91:5 91:7 91:10 91:11 91:16 91:16 91:18 91:19 91:22 91:23 91:25 92:1 92:4 92:4 92:6 92:7 92:7 92:8 92:13 92:17 92:19 92:19 92:20 92:20 92:21 92:22 92:22 93:1 93:4 93:4 93:6 93:11 93:14 93:15 93:15 93:16

**their**(26) 14:14 15:24 16:25 17:22 18:1 21:1 25:17 26:16 29:7 29:13 31:20 36:8 36:11 36:12 38:20 40:8 40:24 41:23 42:20 44:7 57:22 66:25 71:19 80:23 86:23

**them**(16) 9:1 10:4 23:7 23:9 25:10 25:15 25:15 25:17 43:9 47:4 56:17 68:9 70:21 77:8 77:9 85:16

**themselves**(7) 19:23 24:19 37:6 37:9 59:21 59:22 29:5 35:21 42:7 43:25 44:12 46:25 48:1 49:9 52:24 54:1 56:12 56:6 62:2 63:15 66:24 70:3 73:14 74:12 80:4 87:19 90:22 92:14

**then**(32) 8:11 11:13 12:23 18:11 28:1 28:21 28:22 29:5 35:21 42:7 43:25 44:12 46:25 48:1 49:9 52:24 54:1 56:12 56:6 62:2 63:15 66:24 70:3 73:14 74:12 80:4 87:19 90:22 92:14

**theoretically**(1) 44:14

**theories**(27) 15:8 15:20 15:22 16:2 17:12 17:15 17:21 18:7 18:7 19:11 21:3 21:3 21:8 21:18 22:6 22:7 24:13 25:18 25:19 25:25 26:1 27:22 29:1 40:21 42:20 44:23 76:25

**theory**(35) 14:22 14:25 15:4 15:11 16:10 16:15 19:24 21:2 21:5 22:17 22:19 23:5 23:9 23:21 26:7 26:17 26:19 26:20 26:23 26:24 26:25 27:6 28:2 28:7 37:16 41:17 41:17 41:20 41:22 41:23 45:22 45:23 46:23 75:15

**there**(56) 7:22 9:23 11:17 12:5 12:9 12:14 14:10 14:20 15:2 16:23 16:25 17:8 18:18 20:13 21:21 23:14 26:8 27:15 27:18 37:17 37:19 43:25 44:1 45:7 47:9 48:1 50:1 51:6 52:24 53:8 53:16 54:14 56:8 58:19 59:8 62:5 62:12 69:4 69:16 70:4 72:6 73:10 77:6 79:1 80:13 82:2 82:25 83:9 84:15 86:24 88:20 89:3 90:6 90:9 92:15

**therefore**(5) 14:16 17:8 38:22 43:7 89:24

**there'll**(2) 40:11 87:10

**there's**(37) 11:1 11:5 13:16 17:20 20:2 23:1 24:22 34:15 35:25 40:6 40:9 41:19 43:21 43:24 44:6 44:11 48:18 49:2 49:5 49:22 50:18 54:21 55:7 58:10 65:22 68:5 69:6 69:17 73:5 73:6 73:24 75:10 88:2 88:7 89:9 89:17 92:13

**these**(25) 15:22 17:12 17:15 19:19 20:23 22:5 22:10 24:5 24:8 24:15 31:5 33:4 35:8 35:17 36:17 37:10 37:18 38:3 55:24 56:7 62:21 67:24 74:1 74:3 75:18

**they**(72) 10:22 11:9 12:1 14:11 14:13 14:15 14:22 14:25 15:2 15:7 15:8 15:24 16:9 17:24 18:1 22:11 23:23 23:24 23:24 24:13 24:13 24:15 29:13 31:20 33:22 33:23 34:19 36:1 36:3 36:21 37:1 37:22 37:23 38:21 38:21 42:14 44:2 44:13 44:21 46:6 46:7 46:7 46:8 46:11 46:12 46:13 56:9 58:25 59:12 61:11 61:25 62:3 66:12 66:14 66:16 66:18 68:24 69:2 73:5 75:23 81:4 86:22 87:17 91:12

**they'd**(1) 44:12

**they'll**(1) 41:6

**they're**(27) 15:4 15:6 15:9 15:11 15:12 23:19 24:20 25:2 26:5 26:16 27:3 29:12 29:14 33:22 36:13 41:2 44:16 44:20 47:15 48:8 60:2 62:12 72:18 77:1 79:12 80:23

**they've**(4) 41:17 42:13 54:19 89:21

**things**(14) 8:12 30:12 51:6 55:8 55:9 55:24 57:21 72:19 78:16 84:19 84:20 85:12 88:2 88:12

**think**(102) 8:12 9:20 11:5 16:17 17:13 23:6 23:20 24:6 25:11 26:2 26:4 27:18 30:20 31:3 31:11 32:3 33:1 33:17 33:24 34:2 34:3 34:5 34:8 34:10 34:13 34:14 35:22 35:23 36:10 37:25 37:12 37:19 39:4 40:6 40:25 41:9 41:10 41:14 42:13 43:12 43:13 43:14 44:2 45:2 46:14 47:16 48:9 50:3 51:19 51:21 51:25 52:22 54:8 56:12 56:5 57:19 57:18 58:3 58:9 59:8 60:6 61:2 62:15 63:6 63:7 64:6 64:16 64:19 65:24 66:3 66:6 67:6 67:16 68:7 68:15 69:21 70:16 70:17 72:6 72:18 73:10 74:18 75:18 75:21 75:24 76:1 76:9 77:12 78:23 79:9 80:9 80:23 81:4 81:6 81:23 82:14 84:7 86:16 88:5 88:8 89:23 90:15 90:16 93:4 91:23 92:18

**thinking**(1) 63:10

**thinks**(2) 53:3 70:11

**third**(23) 12:21 16:13 16:13 16:13 16:18 16:18 16:18 20:10 20:10 20:10 26:6 28:15 29:3 29:3 29:9 29:10 29:10 29:19 34:3 34:4 43:15 45:12

**thirds**(1) 33:25

**this**(156) 7:10 7:18 8:11 9:9 10:5 11:2 13:11 13:21 14:17 15:20 16:12 16:21 16:22 17:11 17:14 18:16 19:6 19:20 20:4 20:11 21:13 22:22 22:23 22:25 22:25 23:11 24:2 26:18 26:20 27:1 27:11 28:21 28:25 30:15 30:16 30:23 31:1 31:12 31:24 31:25 32:16 32:17 32:17 32:24 34:12 34:18 35:5 35:7 37:12 37:19 37:19 39:4 40:4 40:9 41:19 48:9 48:19 49:4 50:5 52:3 53:8 53:8 53:12 54:6 55:8 55:3 66:23 60:6 64:3 66:13 67:15 67:19 68:7 68:18 69:23 70:9 70:19 72:12 72:17 72:18 72:24 74:12 74:21 75:13 76:2 76:2 76:17 77:25 77:25 77:8 78:6 78:16 78:22 79:6 79:16 79:19 79:16 80:16 80:17 80:24 80:24 81:2 81:2 81:13 81:22 82:13 83:12 83:13 84:2 84:11 84:18 85:6 85:6 86:16 86:17 86:19 86:23 86:24 86:17 87:12 87:16 87:19 88:5 88:5 89:1 90:13 90:13 90:15 90:18

**thomas**(1) 5:21

**thornton**(1) 6:3

**those**(29) 12:23 12:18 14:15 14:11 17:11 19:15 29:8 28:13 29:1 29:1 29:18 31:14 31:17 34:19 39:6 39:9 42:18 42:20 43:5 51:1 51:2 54:4 56:13 56:25 56:24 71:4 89:10 89:22 90:22

| Word | Page:Line |
|---|---|
| **though(3)** 31:12 40:18 44:14 | |
| **thought(9)** 11:4 29:9 39:4 53:9 55:1 59:24 79:18 79:20 84:9 | |
| **thoughts(2)** 43:11 | |
| **three(21)** 12:5 13:21 13:22 13:23 16:13 20:13 20:22 20:22 21:2 21:24 22:12 23:20 25:24 27:21 29:6 29:8 39:7 43:2 47:19 51:1 51:2 | |
| **three-hour(2)** 40:20 41:4 | |
| **threshold(2)** 87:25 88:21 | |
| **through(10)** 10:23 25:13 36:10 52:13 54:13 55:11 58:22 61:9 83:8 90:6 | |
| **throughout(2)** 13:11 30:20 | |
| **throw(1)** 88:6 | |
| **thunderstorms(1)** 77:7 | |
| **tie(1)** 48:7 | |
| **time(197)** 7:23 10:10 10:15 11:10 12:16 13:8 13:16 14:20 15:5 15:22 15:25 16:10 16:11 16:16 16:17 16:24 17:7 17:10 17:17 18:1 18:3 18:19 19:10 19:17 20:9 21:5 21:7 21:12 21:17 22:5 22:6 23:7 23:8 23:8 24:2 24:4 24:23 25:10 26:6 26:11 26:14 26:17 26:18 26:20 26:21 27:10 27:17 28:1 28:17 30:10 30:10 31:4 31:16 32:5 33:1 33:7 36:9 37:18 37:21 39:18 40:8 40:15 40:16 40:19 41:3 41:7 41:24 42:19 46:15 47:1 48:7 50:7 52:5 54:16 55:11 56:22 57:25 63:18 64:6 66:5 70:10 70:25 72:10 73:6 74:21 77:22 78:3 79:3 84:3 87:25 89:4 89:7 91:12 92:9 92:20 92:21 92:22 | |
| **timekeeper(2)** 63:11 63:17 | |
| **times(3)** 28:8 47:12 48:15 | |
| **timing(2)** 8:19 8:24 | |
| **title(3)** 16:24 26:24 41:21 | |
| **today(25)** 7:19 8:11 10:4 12:6 26:11 31:25 44:4 44:6 51:9 51:13 58:10 66:2 66:6 67:25 68:3 70:4 74:2 74:10 77:7 78:15 79:25 80:4 82:5 91:2 91:17 | |
| **today's(2)** 8:17 78:9 | |
| **together(1)** 30:5 | |
| **told(1)** 50:15 | |
| **too(12)** 24:20 37:3 40:21 40:22 55:23 57:9 63:15 67:23 68:2 70:7 70:10 79:20 | |
| **took(1)** 73:14 | |
| **top(4)** 38:17 40:3 40:3 45:6 | |
| **toronto(2)** 73:11 88:18 | |
| **tory's(1)** 5:36 | |
| **total(3)** 32:22 46:7 54:23 | |
| **totally(1)** 71:2 | |
| **touching(1)** 82:13 | |
| **tracks(1)** 21:21 | |
| **train(2)** 21:20 79:6 | |
| **transactional(1)** 79:11 | |
| **transcriber(1)** 93:20 | |
| **transcript(9)** 1:18 1:48 9:14 60:4 83:19 83:22 87:22 89:11 93:15 | |
| **transcription(2)** 1:41 1:48 | |
| **transcripts(3)** 35:10 40:12 59:20 | |
| **travel(1)** 57:22 | |
| **treat(1)** 44:21 | |
| **treating(1)** 17:1 | |
| **trial(60)** 9:19 8:16 9:1 9:7 10:8 10:9 10:12 10:14 10:19 12:10 13:4 13:12 15:20 19:10 19:15 19:16 19:17 20:9 20:25 21:7 22:2 23:8 25:21 27:21 28:23 28:25 30:17 30:18 31:3 31:13 31:13 31:18 33:1 33:6 35:5 36:6 36:9 36:12 40:10 52:3 52:6 52:6 52:10 52:13 55:12 55:15 55:16 59:17 59:25 60:12 64:17 68:13 69:24 73:1 73:6 77:3 79:6 87:20 88:2 88:3 | |
| **tried(2)** 48:9 74:22 | |
| **trouble(1)** 67:4 | |
| **troubling(1)** 73:20 | |
| **trust(3)** 2:44 4:45 5:4 | |
| **trustee(1)** 2:45 | |
| **try(5)** 8:22 32:11 58:21 69:2 78:13 | |
| **trying(7)** 26:22 30:6 30:11 68:20 70:7 81:5 82:13 | |
| **tunnell(1)** 1:25 | |
| **turn(1)** 75:25 | |
| **tweed(2)** 3:20 5:20 | |
| **twice(1)** 16:3 | |
| **two(26)** 11:5 12:24 15:4 16:2 23:19 24:1 24:6 25:15 26:19 29:17 30:24 35:1 39:11 39:13 39:14 44:10 49:5 50:1 54:4 55:1 55:24 56:22 69:24 72:13 74:12 83:19 | |
| **tying(1)** 50:2 | |
| **tyler(1)** 3:46 | |
| **type(4)** 35:21 35:22 40:21 80:18 | |
| **u.k(16)** 12:8 13:19 14:10 14:15 14:19 14:21 16:1 16:6 16:7 18:14 25:13 25:19 25:20 25:22 27:16 36:5 | |

| Word | Page:Line |
|---|---|
| **u.s.(69)** 3:13 8:3 10:5 11:8 11:18 13:13 13:25 14:1 14:5 14:12 16:4 16:16 17:12 18:2 20:4 20:6 20:14 20:17 20:18 20:19 20:20 21:23 22:1 24:11 24:20 24:24 24:24 25:1 25:3 25:9 25:23 26:19 26:21 26:21 27:9 27:17 28:4 28:14 29:4 29:7 32:21 33:13 33:17 33:19 34:20 35:18 36:4 37:3 38:12 38:14 41:17 41:21 42:4 42:15 42:17 43:16 52:6 53:17 60:1 60:5 67:7 67:24 68:1 68:2 71:1 72:7 83:5 83:5 83:7 | |
| **ucc(6)** 33:20 34:19 35:19 36:2 42:12 42:15 | |
| **ukp(34)** 11:11 12:10 15:3 16:22 17:11 17:25 18:3 18:4 18:8 18:9 18:24 24:7 24:14 24:17 26:1 26:5 27:1 28:3 29:6 29:10 33:16 37:13 37:18 37:21 37:24 38:19 43:20 44:1 44:7 44:17 46:7 46:15 69:2 74:23 | |
| **ukpc(3)** 19:23 50:6 50:8 | |
| **ukp's(4)** 13:1 18:21 23:21 65:16 | |
| **under(8)** 27:3 27:5 82:17 84:13 84:16 85:8 87:8 90:4 | |
| **understand(23)** 26:7 31:6 37:4 45:16 48:16 48:17 50:4 50:17 50:20 63:1 63:9 66:2 66:16 66:24 68:15 68:22 71:16 73:20 74:15 74:21 82:7 91:4 93:1 | |
| **understanding(3)** 13:10 53:23 65:14 | |
| **understood(5)** 11:25 54:4 76:13 84:11 91:1 | |
| **underway(1)** 89:16 | |
| **undoubtedly(1)** 79:4 | |
| **unfair(1)** 44:18 | |
| **unfortunate(1)** 76:7 | |
| **unfortunately(1)** 64:22 | |
| **unidentified(56)** 29:24 30:2 34:14 36:18 39:3 39:9 39:13 40:1 41:10 43:19 44:5 45:4 45:11 45:18 45:21 46:1 46:3 46:5 46:10 46:20 46:25 47:3 47:6 47:12 48:21 48:23 49:8 49:13 49:16 49:18 49:24 50:12 50:14 50:18 50:21 50:24 51:2 53:5 53:23 54:9 54:12 54:24 58:9 59:1 59:4 59:7 60:7 60:11 60:13 60:17 62:13 62:16 63:21 63:23 63:25 64:3 | |
| **united(5)** 1:1 1:20 79:7 88:15 89:19 | |
| **unless(1)** 78:4 | |
| **unnecessary(1)** 88:19 | |
| **unpaid(1)** 19:25 | |
| **unpersuasive(1)** 79:13 | |
| **unsecured(5)** 2:4 4:35 14:8 14:15 20:19 | |
| **until(3)** 12:2 68:11 87:8 | |
| **upon(7)** 9:6 14:17 56:4 59:5 64:16 82:14 83:5 | |
| **use(5)** 24:16 41:25 60:6 60:7 61:11 | |
| **using(2)** 24:14 26:16 | |
| **usual(1)** 90:5 | |
| **value(3)** 24:12 24:14 27:8 | |
| **values(1)** 27:9 | |
| **various(3)** 48:14 48:15 63:9 | |
| **varying(1)** 21:4 | |
| **versus(1)** 89:15 | |
| **very(27)** 8:5 19:1 22:16 23:16 26:3 27:20 29:8 30:20 31:22 33:1 37:6 40:10 40:10 43:2 44:2 48:22 52:21 54:18 58:1 70:1 71:5 74:4 74:14 82:15 92:8 92:13 | |
| **video(1)** 62:8 | |
| **view(9)** 27:12 32:12 37:13 37:16 39:16 40:18 65:11 75:23 82:15 84:19 | |
| **views(1)** 52:25 | |
| **virtually(1)** 8:16 | |
| **virtue(1)** 20:20 | |
| **voice(1)** 61:8 | |
| **volume(5)** 40:13 41:1 42:5 43:10 43:24 | |
| **vying(1)** 13:23 | |
| **wadsworth(1)** 5:42 | |
| **wait(4)** 49:6 49:21 53:25 58:9 | |
| **wall(1)** 88:7 | |
| **want(41)** 10:12 16:1 16:9 16:12 17:4 21:12 21:17 22:4 24:25 27:3 27:20 28:16 31:3 35:14 36:6 38:8 43:10 46:5 46:7 46:8 47:18 51:14 58:25 59:23 61:3 61:6 61:11 61:25 67:2 67:15 68:6 70:6 70:25 71:1 73:6 85:18 86:3 87:15 90:20 91:18 91:19 | |
| **wanted(11)** 16:24 28:10 32:13 36:3 51:22 55:1 55:8 65:15 66:22 69:2 76:16 | |
| **wants(6)** 28:1 35:25 38:1 65:8 86:4 92:2 | |
| **warmed(1)** 7:18 | |
| **warrant(1)** 82:4 | |
| **was(93)** 7:22 8:18 9:6 9:13 9:23 10:6 13:11 16:23 16:25 17:2 19:8 19:13 19:14 20:15 30:15 32:13 43:4 43:23 45:23 49:10 49:12 49:15 49:16 49:19 49:22 51:6 51:22 53:8 53:10 53:16 53:19 54:14 55:14 58:21 60:13 61:8 61:13 61:13 63:5 63:7 63:10 64:15 65:2 65:7 65:12 65:23 66:1 66:3 66:5 66:5 66:8 66:14 66:16 66:21 69:11 69:16 70:4 70:5 71:13 74:10 74:11 74:14 75:11 75:25 76:1 76:2 76:3 76:3 76:4 76:7 76:7 78:9 78:21 79:18 84:8 84:11 84:14 85:13 85:15 86:11 86:12 87:19 88:14 89:5 89:6 89:7 89:11 89:18 89:23 92:2 92:3 93:3 93:11 | |
| **wasn't(1)** 9:11 | |
| **way(22)** 11:23 30:11 21:12 25:1 26:1 27:15 29:8 31:11 35:22 36:9 38:8 44:13 44:24 45:14 46:8 50:2 63:10 69:23 70:2 77:17 | |
| **ways(1)** 29:17 | |
| **weather(1)** 77:6 | |

| Word | Page:Line |
|---|---|
| **webb(1)** 3:46 | |
| **wednesday(2)** 7:1 51:17 | |
| **week(7)** 14:19 30:25 51:15 53:2 72:18 72:18 86:10 | |
| **weekdays(1)** 10:20 | |
| **weeks(5)** 51:23 52:25 55:24 56:23 74:8 | |
| **weighing(1)** 18:12 | |
| **well(68)** 8:5 11:2 12:2 13:6 14:2 14:11 14:22 16:12 17:14 22:25 23:9 26:5 27:11 31:9 31:12 31:15 33:19 33:20 38:20 41:19 42:18 42:21 45:24 46:20 47:7 49:24 50:12 52:9 53:18 56:19 60:19 60:20 67:2 70:7 71:5 72:7 75:16 75:20 76:12 79:5 79:8 79:22 80:8 80:19 87:20 87:22 87:23 90:18 90:22 92:8 92:13 92:20 | |
| **went(2)** 25:13 68:2 | |
| **were(23)** 8:11 8:12 9:14 10:4 19:12 25:2 26:14 36:5 37:13 39:4 42:10 50:1 53:25 66:13 72:13 73:8 79:3 79:13 82:17 83:1 84:12 84:21 86:20 | |
| **weren't(2)** 54:4 88:12 | |
| **we'd(2)** 16:16 60:11 | |
| **we'll(13)** 7:23 9:8 13:6 26:10 43:19 53:6 56:4 57:12 71:14 71:19 73:4 92:8 92:18 | |
| **we're(50)** 16:4 16:5 16:6 17:7 17:9 19:6 19:10 21:9 28:6 28:25 30:20 30:24 31:13 31:24 33:19 33:20 35:11 37:7 38:10 38:15 40:10 42:17 44:19 48:6 49:21 51:15 55:11 56:19 57:10 57:20 61:7 62:13 62:19 63:10 64:3 67:22 68:3 68:6 69:4 69:7 72:12 74:2 80:2 80:19 81:5 81:22 85:7 85:10 88:10 88:21 | |
| **we've(26)** 7:18 10:14 13:20 21:13 21:23 30:20 32:25 33:4 37:22 40:1 41:12 42:3 47:12 49:19 50:21 55:5 56:2 59:18 60:9 60:24 73:3 74:8 77:7 79:1 79:25 | |
| **what(48)** 8:18 10:5 10:6 10:15 16:19 18:9 19:5 19:20 21:16 24:7 24:17 28:8 29:10 29:18 30:4 31:20 35:14 35:15 35:24 38:24 40:4 42:16 43:4 46:19 48:8 49:6 51:25 52:11 53:10 58:7 59:16 60:6 60:9 65:21 69:10 74:13 74:17 74:23 76:25 76:25 81:5 82:14 86:10 88:19 92:2 92:8 | |
| **whatever(11)** 14:1 14:11 14:13 24:23 33:25 42:14 63:19 66:24 69:7 81:24 91:12 | |
| **what's(10)** 42:7 42:24 44:3 50:25 72:20 82:1 82:2 85:14 86:13 90:7 | |
| **when(20)** 16:23 20:15 24:2 28:13 32:16 34:21 36:13 54:17 55:9 55:10 56:23 62:20 68:12 69:25 72:10 74:13 75:6 76:8 86:12 90:14 | |
| **where(26)** 8:10 8:11 13:12 17:17 19:21 19:22 30:25 32:20 33:18 34:10 34:12 35:5 38:7 40:17 40:17 41:6 48:1 49:5 50:22 75:11 76:3 79:1 81:3 81:18 82:7 | |
| **whereupon(1)** 93:11 | |
| **whether(23)** 32:7 32:24 39:14 51:22 55:20 59:12 60:14 61:20 66:21 67:12 68:20 70:11 72:24 74:22 75:10 77:1 79:25 80:21 81:17 82:3 88:17 89:5 91:15 | |
| **which(39)** 8:16 10:23 10:25 12:1 12:11 12:17 15:1 15:4 16:22 24:18 28:3 30:24 33:13 38:3 38:6 38:17 39:5 41:14 45:12 50:6 51:11 51:16 54:15 58:3 58:4 64:16 73:1 73:2 74:11 81:8 82:19 83:5 83:20 87:12 87:20 88:3 90:13 91:3 91:11 | |
| **while(6)** 17:25 31:13 58:22 67:16 71:16 79:2 | |
| **whiteoak(1)** 5:47 | |
| **who(27)** 8:1 12:18 18:20 22:3 22:6 22:18 31:3 35:17 40:4 42:18 42:20 48:13 57:11 58:25 59:12 59:14 61:8 61:13 61:13 63:11 63:17 72:13 82:13 85:14 86:19 88:4 88:14 | |
| **whole(6)** 30:23 33:17 46:15 50:22 55:17 60:3 | |
| **whom(2)** 18:5 59:17 | |
| **whose(2)** 27:6 27:8 | |
| **who's(4)** 22:13 30:23 59:16 67:8 | |
| **the've(1)** 21:22 | |
| **why(15)** 15:16 24:8 27:9 29:15 46:9 56:9 56:10 62:1 69:3 75:20 84:25 85:20 87:19 91:7 91:24 | |
| **will(51)** 8:1 8:9 10:3 13:4 17:4 17:24 17:25 18:2 18:6 18:7 18:19 19:1 19:11 19:14 20:12 21:4 21:5 22:3 26:12 27:21 28:1 32:10 35:23 36:8 36:9 36:25 37:6 37:8 37:17 40:16 41:2 41:5 41:13 41:25 42:6 42:15 42:16 43:20 44:7 46:12 46:13 51:9 51:24 59:6 56:17 58:15 59:8 70:20 73:21 80:4 87:10 87:11 90:24 93:7 | |
| **willkie(1)** 3:33 | |
| **wilmington(13)** 1:12 1:29 2:9 2:34 2:40 2:44 3:9 3:30 3:43 4:24 5:4 7:1 | |
| **wish(4)** 12:18 15:8 15:24 44:14 | |

| Word | Page:Line |
|---|---|
| **with(153)** 9:4 9:5 10:3 11:6 11:9 11:20 12:25 13:1 13:7 13:21 15:6 16:16 16:22 17:4 17:5 17:13 18:4 18:8 18:18 19:5 20:22 21:4 21:7 21:10 21:13 22:2 22:3 22:5 22:6 23:7 23:8 23:18 23:16 26:21 27:3 28:8 28:14 28:15 29:13 30:6 30:8 30:12 32:6 32:20 32:24 33:5 33:19 33:20 34:17 35:20 35:22 35:23 35:24 36:25 37:11 37:15 37:16 37:18 38:8 38:16 39:5 39:5 39:16 39:18 39:21 40:20 41:7 41:16 42:1 42:6 42:13 43:11 43:20 44:4 44:5 44:7 44:10 44:17 46:22 47:1 47:6 49:1 49:21 50:5 50:6 51:18 53:3 53:16 53:24 54:7 55:5 55:18 56:5 56:14 57:12 58:15 59:13 60:1 60:5 60:8 60:19 60:21 61:18 61:20 61:21 61:22 62:7 62:12 62:19 64:17 66:9 67:17 69:23 69:23 69:25 70:21 71:12 71:15 71:17 73:2 73:6 74:9 74:12 74:22 74:25 75:22 76:11 78:1 78:19 80:6 82:1 82:3 84:10 84:16 85:9 85:13 85:24 85:25 86:5 86:6 86:15 86:22 87:4 89:20 89:25 90:7 90:17 92:12 92:10 92:12 92:19 93:7 | |
| **withdrew(1)** 73:13 | |
| **within(2)** 34:23 42:14 | |
| **without(13)** 18:5 26:2 35:7 35:7 35:9 74:9 78:23 83:9 84:18 85:1 86:21 86:6 86:14 91:10 | |
| **witness(3)** 31:16 31:17 59:1 | |
| **witnesses(35)** 8:25 11:1 11:2 11:23 16:5 16:6 16:8 16:9 17:19 17:25 18:2 18:12 18:14 22:3 31:13 33:3 35:16 35:17 35:20 36:1 36:3 36:6 42:13 43:8 43:9 52:18 57:11 57:19 57:21 58:4 58:11 58:14 58:15 58:16 62:24 | |
| **wonderful(1)** 63:3 | |
| **wondering(1)** 85:14 | |
| **won't(4)** 11:23 17:15 30:7 51:25 | |
| **words(1)** 17:17 | |
| **work(12)** 16:3 17:4 17:4 18:7 20:25 28:21 29:22 48:9 55:18 57:12 58:22 87:13 | |
| **worked(4)** 17:5 35:17 42:13 56:2 | |
| **working(9)** 14:17 33:19 33:20 42:18 42:19 42:20 55:22 59:12 62:13 | |
| **worse(1)** 73:12 | |
| **worth(2)** 89:17 90:3 | |
| **would(132)** 10:18 10:20 10:22 10:23 10:25 11:3 11:3 11:4 11:6 11:9 11:15 12:1 12:12 12:17 12:23 12:25 13:25 14:11 14:13 16:10 16:19 17:12 17:18 18:1 18:3 18:5 18:6 18:18 18:22 18:24 23:5 23:6 23:8 24:2 25:20 26:4 26:14 27:9 28:21 29:16 31:22 32:14 32:31 33:6 33:8 33:23 34:16 34:19 34:21 34:25 35:23 37:25 38:19 38:24 40:22 40:23 43:22 44:14 51:10 51:10 51:11 51:22 52:6 52:12 52:15 52:21 55:16 55:19 56:14 56:21 56:24 57:6 57:7 57:9 57:10 59:12 59:24 59:25 60:2 60:22 62:1 63:3 63:12 63:17 65:22 66:14 66:24 66:25 67:7 68:8 68:11 68:17 68:20 69:1 69:3 70:13 70:18 71:3 72:2 72:19 72:23 73:11 73:13 73:16 73:17 75:16 75:21 76:22 82:4 82:19 82:25 82:25 83:9 83:10 84:18 84:25 85:22 86:9 86:20 87:12 87:20 88:11 88:13 89:12 89:14 90:21 91:3 92:3 92:5 92:15 | |
| **wouldn't(7)** 40:22 49:5 50:2 63:15 82:18 82:18 88:7 | |
| **written(5)** 17:22 41:16 42:2 49:22 67:12 | |
| **wrong(1)** 84:12 | |
| **wunder(1)** 6:38 | |
| **www.diazdata.com(1)** 1:45 | |
| **yeah(1)** 53:12 | |
| **year(1)** 8:11 | |
| **years(5)** 22:11 22:12 83:1 83:17 85:15 | |
| **yes(62)** 8:14 11:21 12:7 12:20 13:9 14:8 18:15 18:16 21:15 21:19 23:16 25:6 25:6 28:22 33:10 34:11 36:23 38:9 39:8 42:21 45:20 47:17 47:22 49:16 50:12 54:24 55:4 57:2 57:10 57:14 58:5 60:20 61:24 62:13 63:9 63:22 64:15 64:21 65:14 67:6 67:10 68:15 69:13 69:19 70:10 70:25 71:11 72:12 72:16 75:2 75:4 76:9 77:15 80:15 83:3 83:14 83:23 87:2 88:2 89:1 91:25 | |
| **yet(5)** 9:7 84:15 85:19 87:7 90:24 | |
| **york(9)** 1:36 2:16 2:26 2:48 3:23 3:37 3:49 4:10 89:15 | |

| Word | Page:Line |
|------|-----------|

**you**(204) 7:17  7:17  7:20  7:21  8:2  8:5  8:12  9:24
11:14  11:18  13:22  13:24  16:12  17:14  18:11  18:12
18:22  18:23  18:25  19:1  19:2  20:15  21:11  21:12
21:12  21:16  21:16  21:20  21:20  22:16  23:24  24:1
24:11  25:11  27:19  27:20  27:24  28:7  28:9  28:9  28:9
28:13  28:20  28:21  28:23  28:24  28:25  29:2  29:5
29:18  30:11  30:16  30:22  30:23  31:24  31:25  32:4
32:6  32:10  32:16  32:18  35:20  36:15  36:19  37:11
38:6  38:7  38:8  38:15  38:22  38:24  39:21  39:24  39:24
40:2  40:5  40:9  41:14  41:19  42:6  43:14  43:18  45:7
45:11  45:15  45:17  45:18  46:2  46:9  46:18  46:19
46:25  47:14  48:20  49:6  49:12  49:15  50:10  50:21
51:18  51:18  51:22  51:22  52:11  52:12  53:1  53:8
53:15  54:2  54:2  54:6  54:13  54:17  55:19  56:17  57:24
58:10  58:10  58:18  58:18  58:24  59:7  59:17  59:22
60:5  61:1  61:22  62:16  62:18  62:20  62:21  63:4  63:11
63:16  63:24  65:6  69:15  70:23  71:5  71:6  71:7  71:17
71:22  73:8  73:8  73:14  73:18  73:21  76:14  76:15
76:16  76:16  76:17  76:18  77:5  77:18  77:22  78:7
79:10  80:10  80:12  80:14  82:6  82:8  82:11  82:12
83:23  84:9  85:4  85:4  85:17  85:18  85:23  87:6  87:14
87:15  87:17  87:17  87:18  87:18  87:21  88:9  88:18
88:24  88:24  88:25  89:5  90:20  90:20  90:24  91:2
91:16  91:19  91:21  91:22  92:3  92:9  92:9  92:23  92:24
92:25  93:1  93:6  93:6

**young**(3) 2:29  4:4  4:30
**your**(132) 7:13  7:15  7:20  7:21  7:21  8:3  8:8  9:13
9:25  10:12  12:6  13:7  13:21  15:6  15:16  17:20  18:24
22:21  23:16  23:22  25:13  27:18  28:9  30:22  31:6  31:9
32:19  33:8  34:11  35:3  36:20  38:17  40:5  41:10  42:1
42:8  43:19  47:21  48:21  52:1  52:15  53:11  53:24  54:3
54:5  54:10  55:13  56:10  56:19  60:14  60:21  60:22
61:3  61:7  62:20  64:5  65:14  66:16  66:20  67:24  68:17
69:9  70:9  70:23  71:6  71:9  71:22  71:25  72:4  72:12
72:19  73:4  73:7  73:18  73:22  74:14  74:16  75:9  75:20
76:6  76:18  77:7  77:10  77:14  77:20  77:22  78:8  78:13
79:15  79:20  79:23  80:3  80:20  81:11  81:15  82:8
82:10  82:12  82:18  82:21  83:2  83:19  83:24  84:2
84:17  84:21  85:6  85:11  85:12  85:18  86:5  86:10
87:14  87:24  88:5  88:8  88:11  88:25  89:2  89:3  89:17
90:3  90:15  91:1  91:21  91:24  92:4  92:12  92:24  92:25
93:3  93:9

**you'll**(7) 19:4  32:8  40:2  40:3  40:4  62:21  64:6
**you're**(10) 26:17  26:19  52:17  56:16  60:4  61:24  80:17
  81:21  82:7  85:1

**you've**(7) 14:7  14:8  14:9  37:12  40:9  40:13  57:8
**zero**(1) 38:21
**ziegler**(3) 16:23  17:1  41:16
**ziehl**(1) 3:5
**zloto**(1) 6:10
**'unhelped'**(1) 41:3
**"pro-rata"**(1) 26:9