# Exhibit B

```
                IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF DELAWARE


IN RE:                          )    Case No. 09-10138(KG)
                                )    (Jointly Administered)
                                )
Nortel Networks, Inc., et.al., )     Chapter 11
                                )
                                )    Courtroom 3
                                )    824 Market Street
        Debtors.                )    Wilmington, Delaware
                                )
                                )    March 12, 2014
                                )    1:00 p.m.


                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JUDGE KEVIN GROSS
                   UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:              Morris Nichols Arsht & Tunnell, LLP
                          BY: DEREK ABBOTT, ESQ.
                          BY: ANN CORDO, ESQ.
                          1201 North Market St., 18th Floor
                          Wilmington, DE  19899-1347
                          (302) 351-9357

                          Cleary Gottlieb Steen & Hamilton
                          BY: JEFFREY ROSENTHAL, ESQ.
                          BY: JAMES BROMLEY, ESQ.
                          One Liberty Plaza
                          New York, NY  10006
                          (212) 225-2000

ECRO:                     GINGER MACE

Transcription Service:    DIAZ DATA SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

1  time will be devoted to any party that wants to advance the
2  sub-con theory, and that gets divided equally between the
3  Proponents, meaning CCC and UKP and the Opponents, which is
4  the U.S. Group.
5           THE COURT:  Right.
6           MR. ROSENTHAL:  Since we're the only ones
7  economically harm by that theory.  And you then combine
8  those numbers to come up with what the blended times are.
9  You can do that, you know, pretty easily, Your Honor, if you
10 wanted to do it one-third, one-third, one-third, and a 50/50
11 split.
12          THE COURT:  Right.
13          MR. ROSENTHAL:  Like I said, when you run those
14 numbers, the U.S. actually ends up with a little bit more
15 than a third, and that's perfectly fine with us if it solves
16 the problem.  We just want to make sure that we are not
17 short-changed by not having the same amount of time that we
18 have to rebut, and it's the key point that the CCC made to
19 Justice Morawetz two months ago.
20          JUSTICE NEWBOULD:  Could you just repeat this
21 alternate you just said would work?
22          MR. ROSENTHAL:  Yes.  Justice Newbould, so let's
23 say, hypothetically, you had 21 hours for the trial.
24 Obviously, it's more than that.  But if you had 21 hours,
25 you can say we're going to have this trial devote 15 of

1  those 21 hours to the Estates' theories and 6 of those 21
2  hours to pro-rata sub-con.  And then you say, okay, of the
3  15 hours, let's divide that a third, a third, a third, the
4  EMEA Debtors, the Canadian Debtors and Monitor, and the U.S.
5  Debtors.  And then we take the six hours and you say okay,
6  Proponents, UKP and CCC, get 50 percent.  That's three
7  hours.  And the U.S. Debtors and their Creditors get the
8  other 50 percent three hours.  It's a very easy way to split
9  it.  We thought that for simplicity -- like I said, a third,
10 a third, a third, because of the fact that what UKP is
11 asking for is increase the EMEA share and maybe collaterally
12 increase the Canadian share, because they're right.  They
13 settled with us their Canadian Creditors they hope.  CCC,
14 they're asking for more money for Canada than the Monitor
15 itself is asking.  So that's why the third has a logic and a
16 simplicity to it.  But we would have no objection to
17 subdividing it in those two ways that I just articulated.
18         JUSTICE NEWBOULD:  So what do you say, Mr.
19 Finnigan?
20         MR. FINNIGAN:  I've just heard it now.  I
21 [indiscernible].
22         JUSTICE NEWBOULD:  All right.  And work it out.
23 Right?  I also asked Counsel --
24         UNIDENTIFIED FEMALE:  May I make one comment
25 about that?

1                JUSTICE NEWBOULD:  Sure.

2                UNIDENTIFIED FEMALE:  I mean I'm happy for people
3    to consider that but because the CCC and the Canadian
4    Monitor and Debtors are in the same Group and filing
5    evidence together, I can foresee a potential administrative
6    difficulty with us trying to figure it all out, but I'm not
7    saying we won't attempt to, but we just have to be mindful
8    of the fact that we are adjoined with the CCC for certain
9    purposes and administratively in terms of filing.  And if we
10   start dividing up the time and we have to designate time,
11   you know, that might be one thing.  But if we start trying
12   to deal with evidence, like Affidavits and things like that,
13   it could become problematic.

14               JUSTICE NEWBOULD:  Okay.  What I was going to Ask
15   was I've never seen anything like this in my life, arguing
16   about this sort of thing, but do you all see or see no role
17   for the Trial Judges to sort of make changes as we go along
18   during the trial to achieve some sort of fairness?

19               MR. FINNIGAN:  We absolutely see a role and I
20   think we've expressed a concern throughout the -- we're very
21   concerned about the amount of data that's going to be pushed
22   at you to absorb and your ability to absorb that
23   information.  So, you know, this whole business about who's
24   going to examine which experts, we're just entering a two-
25   week phase where the experts are just now going to be