

Thornton Grout Finnigan LLP
RESTRUCTURING + LITIGATION

Toronto-Dominion Centre
100 Wellington Street West
Suite 3200, P.O. Box 329
Toronto, ON Canada M5K 1K7
T 416.304.1616 F 416.304.1313

John L. Finnigan
T: 416-304-0558
E: jfinnigan@tgf.ca
File No. 1595-001

March 26, 2014

**VIA ELECTRONIC FILING**
**AND HAND DELIVERY**

The Honourable Mr. Justice Frank Newbould
Judges' Chambers – Court House
330 University Ave.
Toronto, ON M5H 1T3

The Honourable Kevin Gross
United States Bankruptcy Court for the
District of Delaware
824 North Market Street, Sixth Floor
Wilmington, DE 19801

Dear Mr. Justice Newbould and Judge Gross:

**Re: In the Matter of Nortel Networks Corporation et al. - Court File No. 09-CL-7950 (Ontario Superior Court of Justice)**
**In re Nortel Networks Inc. et al. Case No. 09-10138 (KG) (Bankr. D. Del.)**

We write on behalf of Nortel Network UK Pension Trust Ltd. and the Board of the Pension Protection Fund (the "**UKPC**") in respect of the Amended Order re Allocation Trial Protocol dated March 21, 2013 [U.S. Docket No. 13208] (the "**Amended Order**") and the letters dated March 24, 2014 from the lawyers for the US Debtors (the "**March 24 Letter**") and March 25, 2014 from the lawyers for the Canadian Creditors Committee ("**CCC**") (the "**March 25 Letter**").

In paragraph 5 of the Amended Order, the Court allotted 12 hours to the CCC. As confirmed in each of the March 24 Letter and March 25 Letter referred to above, the CCC did not seek additional hours of trial time. The UKPC did seek an equal division of trial time for its *pro rata* allocation theory. An excerpt of the transcript of such submissions is enclosed with this letter. To the extent the reference to CCC was intended to be UKPC, we respectfully request that the Amended Order be changed to reflect this correction.





We object to the effort in the letter of March 24 by the US interests to re-argue the position on trial time allocation. If the Court wishes to entertain further submissions, we request a joint hearing via conference call to deal with such submissions.

Yours very truly,

**Thornton Grout Finnigan LLP**

John L. Finnigan
JLF/dcb
Encls.

cc Core Party Service List

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 09-10138(KG) |
| | ) | (Jointly Administered) |
| | ) | |
| Nortel Networks, Inc., et.al., | ) | Chapter 11 |
| | ) | Courtroom 3 |
| | ) | 824 Market Street |
| Debtors. | ) | Wilmington, Delaware |
| | ) | |
| | ) | March 12, 2014 |
| | ) | 1:00 p.m. |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDGE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:

Morris Nichols Arsht & Tunnell, LLP
BY: DEREK ABBOTT, ESQ.
BY: ANN CORDO, ESQ.
1201 North Market St., 18th Floor
Wilmington, DE 19899-1347
(302) 351-9357

Cleary Gottlieb Steen & Hamilton
BY: JEFFREY ROSENTHAL, ESQ.
BY: JAMES BROMLEY, ESQ.
One Liberty Plaza
New York, NY 10006
(212) 225-2000

ECRO: GINGER MACE

Transcription Service:

DIAZ DATA SERVICES
331 Schuylkill Street
Harrisburg, Pennsylvania 17110
(717) 233-6664
www.diazdata.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service

would like time on their own to be able to cross-examine perhaps the U.S. witnesses or any other Estates witnesses, we would, likewise, need that time to cross-examine the UKP witnesses and the UKP experts, and the same with the CCC, without whom we would have a much more easy and efficient job in this case, because we would only have to be tacking the EMEA theories and the Canadian theories. So our work has increased more so, in many respects, than with the UKP, and the CCC doesn't say it, but what the UKP says that they need.

THE COURT: All right. Thank you, Mr. Rosenthal.

MR. ROSENTHAL: Thank you.

JUSTICE NEWBOULD: I guess, Judge Gross, we should hear from Counsel for the U.K. Pension Claimants.

THE COURT: Yes.

MR. O'CONNOR: Yes, good afternoon, Justice -- Judge Gross and Justice Morawetz and Justice Newbould. There are a number of points I would disagree with Mr. Rosenthal on, but in the interest of time and efficiency, I will defer to my Canadian colleague, John Finnigan, who will present the UKP's position.

THE COURT: Thank you.

MR. FINNIGAN: Thank you, Mr. O'Connor. It's John Finnigan, for the UKP, and Your Honor Judge Gross, can you hear us okay?

THE COURT: Very clearly. Thank you.

MR. FINNIGAN: Thank you. So I will respond as briefly as I can to Mr. Rosenthal's submissions, and we disagree fundamentally, as you'll appreciate from our submission that we filed on Monday, with what Mr. Rosenthal has submitted this morning. We're not advocating the creation of another Allocation Group. The Allocation Group concept was created for discovery purposes, as we outlined in our Brief, and it made sense for the discovery purposes. We're advocating a division of trial time based on the four-case theories that will actually be presented to the Courts.

In this case, the Allocation Groups were created before the case was pleaded. The pleadings have now delineated the four positions that will be presented at trial, and we say that each of those four positions should have an equal opportunity to present its case at trial by an equal sharing of the allocation trial time. Now, my friend characterizes our position as one of substantive consolidation. It is not. We are not advocating that these Estates be consolidated and collapsed. Rather, what we are saying that is in circumstances where Nortel operated as a single business and where the different entities have for themselves created a common pool of cash, the UKPC pro-rata theory advocates sharing that cash by reference to the unpaid Creditor Claims against each of the entities that

made up the one Nortel.

Our premise is that there's no justification for a particular geographic region or entity scooping the pool as advocated by the U.S. and Canada. Pro-rata is a method of allocating that common pool. It's not a device to collapse the U.S. and Canadian Estates, but rather an allocation method, a methodology.

So on the second point, it's clear from the papers, we have never agreed to a trial time allocation split a third, a third, and a third, and that's because we submit that this four-way split, based on the way the case will actually be presented, is the more appropriate way to do it. My friend suggests that there are essentially three groups of Creditors here: U.S. Creditors, Canadian Creditors, and European Creditors. But when you examine the Claims made into each of the Estates, it becomes apparent that is not the case. The U.S. Bondholders have Claims into the U.S. and into Canada. Our clients have Claims into EMEA and into Canada. The Unsecured Creditors in the U.S. have Claims into the U.S. and into Canada by virtue of the $2 billion allowed Claim into Canada. So this case does not break down neatly in three groups with three economic interests. These claims cross over. And so the Allocation Group methodology is not the appropriate way to divide up the trial. One should have regard to the amount of work

that needs to be done by the parties to present their case theory. And each of the four parties has three allocation theories, contesting allocation theories, it has to deal with. It will do so in varying degrees and no one in the room can say that any one theory will take more or less time than another. And so we would seek an equal division of the trial time so that we can deal with the adverse allocation theories as we see fit.

Further, it is not correct to say that we're all lined up with EMEA.

JUSTICE NEWBOULD: Can I just ask you a question, Mr. Finnigan? You say you want equal division of time to deal with this. We've heard it's going to be cross-examination.

MR. FINNIGAN: Yes.

JUSTICE NEWBOULD: So what are you saying? You want as much time as the others to cross-examine on the other theories?

MR. FINNIGAN: Yes, and that's in the context of, you know, you should have some idea the size of the train headed down the tracks. There are so far, by my count, 23 experts on allocation who've delivered 32 reports; 10 experts from the U.S. on allocation. We've got five. EMEA's got three. Canada's got five. So the burden of cross-examination, it suggests we may have a greater burden

of cross-examination because the U.S. has more experts than we do. But I agree with my friend that most of this trial will be dealt with cross-examining the witnesses who are called. And we don't want to be constrained by having our time cut in half to deal with these adverse allocation theories by sharing our time with EMEA, who is advocating eight different allocation theories than we are. So that's how we see it in basic fairness terms. And also, just on a more principle level, this is a litigation to divide up the proceeds of the sale of assets amongst the Creditors. These Estates have been bankrupt for five years. They haven't operated for three or four years. So this should be a Creditor-driven process. It's my client's ox who's going to be gored here. We are the 80 percent Creditor into EMEA, the 93 percent Creditor into the lead European subsidiary NNUK, and we, thank you very much, would like to advance our own theory to maximize the dollars for our clients. So we should be the one who have a one-quarter share to advocate the theory that directly impacts our economic interest.

THE COURT: Mr. Rosenthal?

MR. ROSENTHAL: I'll be brief, Your Honor.

MR. FINNIGAN: And if could just give one further point.

THE COURT: I'm sorry, Mr. Finnigan.

JUSTICE NEWBOULD: Well, just a second, Judge

Gross. There's a plane coming in from the bench here.

(Laughter)

MR. FINNIGIN: We also recognize, and they acknowledge, that the Canadian Creditors Committee adopts a form of pro-rata theory as an alternate, and we would be prepared, and we think it's appropriate, that we would share some of our time with them to the extent that the one-quarter time, trial time that we seek, we would share with them so they can advance that theory in support as well. Those are my submissions.

THE COURT: It's dangerous to pause in this matter.

(Laughter)

JUSTICE NEWBOULD: So, Mr. Rosenthal, is there any reply?

MR. ROSENTHAL: Yes. Very brief, Your Honor, and I believe one of my colleagues up in Canada may have a couple of charts that I'd like to just hand out, with the Court's indulgence, just two charts that are not -- they're not to scale, that just, I think, illustrates the three Estates and also the UKP's alternate theory. May I approach, Your Honor?

THE COURT: Please. Please, Mr. Rosenthal. Thank you.

MR. ROSENTHAL: And for my colleague in Canada,