**EXHIBIT C**



**Thornton Grout Finnigan LLP**
RESTRUCTURING + LITIGATION

Toronto-Dominion Centre
100 Wellington Street West
Suite 3200, P.O. Box 329
Toronto, ON Canada M5K 1K7
T 416.304.1616  F 416.304.1313

John L. Finnigan
T: 416-304-0558
E: jfinnigan@tgf.ca
File No. 1595-001

March 25, 2014

**VIA EMAIL**

Goodmans LLP
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Attention:    Peter Ruby**

Dear Sir:

**Re:    Report of Sheldon Burshtein**

We write in response to your letter dated March 24, 2014.

*Objection to the Burshtein Report*

We object to the delivery of the Expert Report of Sheldon Burshtein in these proceedings.  You provided no advance notice whatsoever of your intention to deliver a further report and have no right to do so.

The process for filing of expert reports in these proceedings is set out in the Litigation Timetable and Discovery Plan approved by the U.S. Bankruptcy Court and the Ontario Supreme Court on May 15, 2013, as amended, wherein the Core Parties were required to: (i) identify experts they intended to rely upon and their expertise and intended evidence by January 8, 2014; (ii) deliver the initial expert reports to the other Core Parties by January 24, 2014; and (iii) deliver responding expert reports to those received on January 24, 2014 to the other Core Parties by February 28, 2014.

The report of Mr. Burshtein was not delivered in accordance with the above protocol, nor was any agreement sought or negotiated to have this additional report admitted.  In this regard, we support and adopt the position set out in Ms. Block's letter today.  The Monitor must abide by the same rules as the rest of the parties.

**tgf.ca**



2.

In addition to the position set out by Ms. Block, the UKPC[1] are prejudiced by your attempted late filing of the report of Mr. Burshtein as follows:

1.      The Monitor put forward Dr. Timothy Reichert as an expert on transfer pricing who opined as to the interpretation of the Master R&D Agreement.  Dr. Reichert was deposed on Thursday, March 20, 2014.  We echo the sentiments of the EMEA Debtors set out on Mr. Gottlieb's letter of today's date, that the inference is that the Monitor did not like the answers given at the expert depositions to date and is now trying to repair the record by relying on new evidence from an expert not previously identified.

2.      Further, depositions have commenced and the UKPC are significantly prejudiced by the attempt of the Monitor to tender new expert evidence.  Examinations are planned and conducted on the basis of the known evidence. No party should be able to change the record after examinations have started, without leave of the Courts.  Given the abridged timeframe in which to depose these experts, they will not be able to be re-deposed to take account of the new evidence you wish to tender.

3.      The Monitor purports that the report of Mr. Burshtein was in response to the reports of Mr. Bereskin and Mr. Stratton.  The deposition of Mr. Bereskin is scheduled for March 27, 2014, two days from the delivery of the purported responding report.  This provides inadequate time for the examiners as well as the experts to prepare for the Bereskin deposition.

*Sur-reply reports in the Claims Proceeding*

We note, as Ms. Block did, that for sur-reply reports in the Claims proceeding, a process was negotiated, agreed and followed by both the EMEA Debtors and the UKPC with the Monitor.

The following is a review of the process that unfolded in the Claims proceeding.

1.      On January 8, 2014, the UKPC and the EMEA Debtors delivered their list of experts, including the experts they intended to rely upon in the Allocation and Claims proceedings.  The Monitor and Canadian Debtors chose not to disclose any experts with respect to Claims, despite being fully aware of all issues relating to the Claims.

2.      On January 24, 2014, the UKPC and EMEA Debtors delivered expert reports with respect to the Claims proceedings.  The Monitor and Canadian Debtors delivered no initial reports with respect to Claims.

---

[1] The UKPC is hereinafter defined as Nortel Networks UK Pension Trust Ltd. and the Board of the Pension Protection Fund.



3.

3. On January 30, 2014, the EMEA Debtors wrote to the Canadian Debtors reserving the right to deliver sur-reply reports as a result of the tactical conduct of the Canadian Debtors and Monitor. The EMEA Debtors suggested a deadline of March 21, 2014 for sur-reply reports.

4. On February 4, 2014, the Monitor responded to the EMEA Debtors' reservation of rights stating that "the Discovery Plan and Deposition Protocol that have been agreed to clearly contemplate that there would be some expert reports that would be solely rebuttal, rather than competing first instance reports." Counsel to the Monitor continued as follows:

> We do not agree that you have a right to serve reply reports and any consideration that we may give to this request is without prejudice to that position. If we were to consider your request to allow you to deliver reply reports, we will first have to establish limitations as to their scope ... and we would have to receive those very focused reports by much earlier in March than you have proposed so we can fully account for them on the expert depositions which we are expecting to be scheduled in the weeks of March 24th and 31st. We will not agree to extend the expert deposition deadline so any "reply" will have to be dealt with under the existing schedule and in a manner that gives us time to review and consider them well in advance of the commencement of these depositions during the week of March 24, 2014.

5. On February 7, 2014, the UKPC wrote a letter to the Monitor with respect to sur-reply reports in the Claims proceeding. The UKPC also proposed the delivery of sur-reply reports by March 21, 2014.

6. On February 10, 2014, the Monitor provided a response to UKPC via e-mail that mirrored the response it provided to the EMEA Debtors on February 4, 2014. The Monitor went on to state that "the claimants are attempting to justify new rights that they do not presently have" with respect to reply reports. Counsel to the Monitor continued to state that:

> ...if we were to consider your request to allow you to deliver reply reports, , we will first have to establish limitations as to their scope and we would have to receive those very focussed reports by much earlier in March than you have proposed so we can fully account for them on the expert depositions which we are expecting to be scheduled in the weeks of March 17th, 24th and 31st  (indeed, we note that in the joint scheduling proposal that your clients signed onto with the US Debtors and EMEA last week for presentation to us, the timing of the depositions of some of your experts who you now propose would file reply reports on March 21 is wholly unworkable). We will not (cannot under the current trial schedule) agree



4.

> to extend the expert deposition deadline so any "reply" will have to be dealt with under the existing schedule and in a manner that gives us time to review and consider them well in advance of the commencement of these depositions.

7.  As a result of this correspondence and heavy negotiations, the ability to deliver sur-reply reports was agreed to between the Monitor, the UKPC and the EMEA Debtors and the following limitations were imposed on the UKPC Debtors: (i) the delivery of the sur-reply reports by not later than March 14, 2014, with one sur-reply report due at noon on March 12, 2014; and (ii) the scheduling of experts depositions was amended to allow the Monitor sufficient time to address the sur-reply reports.

For the duration of the timeline set out above, neither the Monitor nor the Canadian Debtors raised any of the objections or concerns set out in your letter of March 24, 2014. Further, as sur-reply reports were certainly in issue, the Monitor and Canadian Debtors chose not to address their proposed sur-reply report. In contrast to the professional and transparent compliance by the UKPC and the EMEA Debtors with the limitations imposed by the Monitor, the Monitor now purports to act unilaterally with the delivery of Mr. Burshtein's report. The Monitor has no right to do so.

If you intend to bring a motion for leave to file the expert report of Mr. Burshtein, the UKPC will oppose such motion and will concurrently bring a corresponding motion to strike, if necessary.

Finally, in response to your assertion that Mr. Stratton's report is improper, Mr. Stratton's report is submitted to provide expertise on Canadian law to the US Bankruptcy Court. The Stratton Report is a proper rebuttal report and the UKPC complied with its obligations under the relevant protocols. Any motion to strike the Stratton Report must be brought in the U.S. Bankruptcy Court proceedings.

Yours truly,

**Thornton Grout Finnigan LLP**

*Per*

John L. Finnigan
JLF/RLL

cc:     Core Party Service List