## **EXHIBIT B-2**

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| **THE HONOURABLE MR.** | ) | **WEDNESDAY, THE 15TH DAY OF** |
| **JUSTICE MORAWETZ** | ) | **MAY, 2013** |
| | ) | |
| | ) | |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION (the "Canadian Debtors")**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Allocation Protocol – Litigation Timetable and Discovery Plan)**

**WHEREAS** this Court approved an allocation protocol (the "**Allocation Protocol**")
pursuant to an Order (Allocation Protocol) dated April 3, 2013.

**WHEREAS** pursuant to an Endorsement of this Court dated April 17, 2013, a joint
hearing was convened between this Court and the United States Bankruptcy Court for the
District of Delaware to consider a litigation timetable and discovery plan in connection with the
Allocation Protocol, which hearing was heard on April 24, 2013.

**ON HEARING** the submissions of counsel for the Canadian Debtors, Ernst & Young
Inc. in its capacity as monitor of the Canadian Debtors (the "**Monitor**"), the members of the

Canadian Creditors Committee, the Joint Administrators of Nortel Networks UK Limited and the other EMEA Debtors, the Trustee of the Nortel Networks UK Pension Trust Limited and the Board of the UK Pension Protection Fund, the former directors and officers of Nortel Networks Corporation and Nortel Networks Limited, Nortel Networks Inc. and certain of its affiliates in US Chapter 11 bankruptcy proceedings, Wilmington Trust, National Association, the Bank of New York Mellon, the Informal Nortel Noteholders Group, the Official Committee of Unsecured Creditors of the US Debtors, and Law Debenture Trust Company of New York, this Court having issued an Endorsement dated May 3, 2013.

1.    **THIS COURT ORDERS** that the litigation timetable and discovery plan appended as Schedule "A" to this Order (the "**Litigation Timetable and Discovery Plan**") be implemented.

2.    **THIS COURT ORDERS** that the Canadian Debtors and the Monitor are authorized to take all steps necessary to carry out and give effect to the Litigation Timetable and Discovery Plan.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO..

MAY 16 2013

## SCHEDULE "A"
### (Litigation Timetable and Discovery Plan)

US Interests and EMEA Debtors' Proposed Litigation Timetable as of May 15, 2013

## LITIGATION TIMETABLE

Pursuant to the US Court's and Canadian Court's Orders approving the Allocation Protocol, the Cross-Border Protocol, and the Cross-Border Claims Protocol, it is hereby ordered:[1]

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 16 by noon E.D.T. | Any Core Party who wishes to participate in the Allocation dispute shall serve a pleading or opening submission styled "Allocation Position of [●]" which will set out with reasonable particularity the relief sought with respect to allocation, the material facts relied upon and legal bases for the allocation position being advanced by that Core Party by noon E.D.T. on May 16, 2013 and file the same within the next business day. | The US Claims Defendant Group shall file and serve their responses to the US Claims. | Deadline for the U.K. Pension Claimants to deliver their affirmative pleading (which may be deemed by them to serve as their Dispute Notices) setting forth, with reasonable particularity, the relief sought, material facts relied upon and legal bases for their claims and the grounds upon which they seek to challenge their disallowance. |
| May 17 | Any Core Party may serve a joinder before May 17 and file the same within the next business day, provided that the joinder does not advance any new legal bases and does not rely on new material facts. | | |

---

[1]    Capitalized terms shall have the meaning ascribed to them in the Allocation Protocol and Annex A attached hereto.

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 17 | The Discovery Participants shall aim to reach agreement on a Confidentiality Stipulation and Protective Order as soon as possible. To the extent the Discovery Participants are unable to agree on a Confidentiality Stipulation and Protective Order, May 17 is the deadline for the Discovery Participants to file their versions of the Confidentiality Stipulation and Protective Order with the Courts. | | |
| May 22 | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group. | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group. | Deadline for service of limited and specific requests for production of non-privileged documents in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group. |
| May 22 | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, and the Bondholder Allocation Group, without prejudice to an Allocation Group's right to later serve contention interrogatories, as to be discussed and/or resolved by the Courts. | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group, without prejudice to a US Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. | Deadline for service of Identification Interrogatories in accordance with the Discovery Plan by each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group, without prejudice to a Canadian Claim Party's right to later serve contention interrogatories, as to be discussed and/or resolved by the Court. |

2

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 24 | Deadline for Core Party who is not in one of the Discovery Groups, and who seeks to serve document requests and/or interrogatories that are non-duplicative of those document requests and/or interrogatories already served by the Allocation Groups, to seek leave of the Court to serve such non-duplicative document requests and/or interrogatories if prior to this time, such Core Party has been unable to reach agreement with the Core Party on whom it seeks to serve the non-duplicative document requests and/or interrogatories after meeting and conferring with such Core Party in good faith. | | |

1535

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| May 29 | The US Debtors, UCC, EMEA Debtors, Joint Administrators, Canadian Debtors, Monitor, Bondholder Group, and any other Core Party who filed an opening submission may each file and serve a response to any opposing Core Party's opening submission or designate its opening submission as a cross-response. Each of the responses may be made individually, jointly, and/or by joining another Core Party's response. | | With respect to the Canadian Claims, each Disputing Creditor shall receive from the Monitor and the Canadian Debtors, by May 29, 2013, a response to such Disputing Creditor's Affirmative Pleading setting forth, with reasonable particularity, the grounds for the disallowance, the material facts relied upon and the legal bases for the disallowance. |
| June 3 | Deadline for supplemental document requests and identification interrogatories related to new issues raised in responsive submissions. | | |
| June 6 | In-person meet and confer between the Discovery Participants regarding the discovery requests and interrogatories served, procedures governing the production of documents, deposition procedures, and any other issues that have arisen thereof. | | |
| June 10 | Deadline for responses and objections to document requests and objections to interrogatories in accordance with the Discovery Plan. | | |
| June 10 | Subject to any objections, deadline for the recipients of document requests to commence the rolling production of documents in accordance with the Discovery Plan. | | |
| July 3 | Date by which parties served with document requests must certify to parties requesting their documents substantial progress with regard to production of documents. | | |
| July 22 | Date by which parties served with document requests must certify to parties requesting their documents substantial completion with regard to production of documents. | | |

4

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| July 24 | Deadline for identification by each Core Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Core Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Core Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each US Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other US Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that US Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. | Deadline for identification by each Canadian Claim Party of (i) its anticipated affiants as (non-expert) trial witnesses without prejudice to later identification, provided that other Canadian Claim Parties have an opportunity to depose such witnesses before trial, and (ii) for designations of which (if any) of that Canadian Claim Party's previously filed affidavits/witness statements are being relied upon as evidence at trial in accordance with the Discovery Plan. |
| July 26 | Deadline to file motions to compel and/or motions for a protective order with respect to document discovery. Notwithstanding this deadline, when a dispute arises, the affected Discovery Participants shall promptly attempt to resolve any discovery disputes in good faith and once an impasse is reached, file any motions with the relevant Court(s) promptly. | | |
| July 26 | Deadline for each of the Canadian Allocation Group, the EMEA Allocation Group, and the US Allocation Group to serve on any opposing Core Party the topics on which that Core Party's representative is to be examined or deposed in accordance with the Discovery Plan. | Deadline for each of the US EMEA Claimants Group, the UK Pension Claimants, and the US Claims Defendant Group to serve on any opposing Claim Party and/or a member of the Canadian Claims Defendant Group the topics on which that Claim Party's representative is to be deposed pursuant to Rule 30(b)(6) in accordance with the Discovery Plan. | Deadline for each of the Canadian EMEA Claimants Group, the UK Pension Claimants, and the Canadian Claims Defendant Group to serve on any opposing Claim Party and/or a member of the US Claims Defendant Group the topics on which that Claim Party's representative is to be examined in accordance with the Discovery Plan. |

5

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| July 29 | Deadline for parties to designate witnesses to be examined or deposed, subject to later additions for the reasons set forth in the Discovery Plan. Each of (1) the Canadian Allocation Group and the Canadian Claims Defendant Group together; (2) the EMEA Allocation Group, the US EMEA Claimants Group, the Canadian EMEA Claimants Group, and the UK Pension Claimants together; and (3) the US Allocation Group and the US Claims Defendant Group together may designate a limited number of fact witnesses for examination or deposition in accordance with the Discovery Plan. Parties are encouraged to identify witnesses as early as possible in order to facilitate scheduling. | | |
| August 2 | Deadline for each Core Party that is timely served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for oral examination or deposition. | Deadline for each US Claim Party (other than the Committee) that is timely served with a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure to identify its representative for deposition. | Deadline for each Canadian Claim Party that is timely served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure to identify its representative for an oral examination. |
| August 5 | In-person meet and confer between the Discovery Participants regarding witnesses to be deposed or examined, deposition procedures and any other issues that have arisen. | | |
| September 13 | Deadline to identify experts and the subject matter of their reports in accordance with the Discovery Plan. | | |

6

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| September 27 | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions. | Deadline to complete witness depositions in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to any Rule 30(b)(6) depositions. | Deadline to complete witness depositions and cross examinations on previously filed affidavits/witness statements being tendered as evidence for trial (with any undertakings to be answered within three weeks of each examination), in accordance with the Discovery Plan, with a preference to finish fact witness depositions prior to representative party examinations. |
| October 4 | Deadline for service of expert reports (including exhibits) in accordance with the Discovery Plan. | | |
| November 1 | Deadline for service of responding experts' reports (including exhibits) in accordance with the Discovery Plan. | | |
| Week of November 11 | Preliminary pre-trial conference. | | |
| December 6 | Deadline to complete depositions of experts in accordance with the Discovery Plan. | | |
| December 9* | Deadline to file a list of all witnesses and exhibits that each Discovery Participant intends to rely upon as part of its direct case. | | |
| December 13* | Deadline to file pre-trial motions. | | |

---

\*     All dates for pre-trial submissions are subject to modification by the Courts at the preliminary pre-trial conference.

7

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| December 13* | Deadline for filing of opening written submissions with the Courts.  The content of such submissions will include:<br><br>a) Pre-trial briefs;<br><br>b) All fact affidavits to be used as direct testimony;<br><br>c) All exhibits to be used in a Discovery Participant's direct case; and<br><br>d) All deposition testimony to be used in a Discovery Participant's direct case. | | |
| Week of December 16,* if the Courts desire | Pre-Trial Conference(s) –<br><br>By this date, the Core Parties shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the contents of document briefs for use at the Joint Hearing/ the exhibits for use at the Joint Hearing.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | Pre-Trial Conference(s) –<br><br>By this date, the US Claim Parties and the Canadian Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the exhibits for use at the Joint Hearing.<br><br>All Nortel documents produced by a Discovery Participant to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. | Pre-Trial Conference(s) –<br><br>By this date, the Canadian Claim Parties and the US Claims Defendant Group shall have met and conferred with an effort to reach agreement on:<br><br>a) the undisputed facts to be agreed upon for trial; and<br><br>b) the contents of document briefs for use at the Joint Hearing.<br><br>All Nortel documents produced by a Core Party to be deemed admissible without proof of authenticity, integrity of the chain of possession or the integrity of the system of storage and retrieval unless objected to by this date on a particularized and document-by-document basis. |

| Due Date 2013 | Step in Allocation | Step in US Claims | Step in Canadian Claims |
|---|---|---|---|
| Begins January 6, 2014 | The US and Canadian courts will (a) hold simultaneously (i) hearings before the US and Canadian courts regarding Allocation, (ii) hearings before the US Court on the merits of any remaining US Claims, and (iii) hearings before the Canadian Court on the merits of any remaining Canadian Claims, provided, however, that the US and Canadian Courts, in their discretion, may sit separately for portions of such hearings to hear evidence or argument that is relevant to only the US Claims or only the Canadian Claims, and (b) issue their respective decisions on (i), (ii), and (iii). The trial will begin with the Allocation issues and continue thereafter with remaining issues to be addressed in this Allocation Protocol, including EMEA Claims and UK Pension Claims. | | |

Any date in this Litigation Timetable may be amended by the written agreement of all Core Parties, submitted to the US Court through the filing of a certification of counsel and to the Canadian Court through the filing of a letter from the Monitor to Justice Morawetz on notice to the Core Parties. Any Core Party may also file a motion with the applicable Court or Courts to modify this Litigation Timetable upon a showing of good cause.

9

## ANNEX A

### DEFINITIONS

Capitalized terms used in this Litigation Timetable but not otherwise defined in this Annex A shall have the meanings ascribed to them in the Allocation Protocol.

<u>Allocation Group</u>: Any of the Canadian Allocation Group, the EMEA Allocation Group, the US Allocation Group, or the Bondholder Allocation Group.

<u>Bondholder Allocation Group</u>: The Bondholder Group.

<u>Canadian Allocation Group</u>: The Canadian Debtors, the Monitor, and the CCC.

<u>Canadian Claim Party</u>: Any party in the Canadian EMEA Claimants Group or the Canadian Claims Defendant Group, or the UK Pension Claimants.

<u>Canadian Claims</u>: Claims made by the Canadian EMEA Claimants Group and the UK Pension Claimants against any or all of the Canadian Debtors.

<u>Canadian Claims Defendant Group</u>: The Canadian Debtors against whom the Canadian EMEA Claimants Group and the UK Pensions Claimants have brought claims, the Directors and Officers (but only with respect to claims of the Canadian EMEA Claimants Group), and the Monitor.

<u>Canadian EMEA Claimants Group</u>: The EMEA Debtors and/or the Joint Administrators or any other administrator of an EMEA Debtor who made claims against any or all of the Canadian Debtors or Directors and Officers, and the UK Pension Claimants who made claims against NNC and NNL. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

<u>Claim Group</u>: Any of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, the Canadian Claims Defendant Group, or the UK Pension Claimants.

<u>Discovery Participant</u>: Any Core Party <u>or</u> party of the US EMEA Claimants Group, the US Claims Defendant Group, the Canadian EMEA Claimants Group, or the Canadian Claims Defendant Group who is participating in discovery pursuant to the Discovery Plan.

<u>Discovery Plan</u>: The Discovery Plan that will be entered by the Courts.

10

<u>Disputing Creditor</u>: Any party who has delivered an Affirmative Pleading to dispute the disallowance of its claim by the Monitor and the Canadian Debtors, which shall be deemed to include the EMEA Debtors.

<u>EMEA Allocation Group</u>:  The UK Pension Claimants, the EMEA Debtors (including Nortel Networks International Finance & Holding BV as behalf of itself and as assignee of Nortel Networks o.o.o.), and Nortel Networks Optical Components Ltd., Nortel Networks AS, Nortel Networks AG, Nortel Networks South Africa (Pty) Limited, and Nortel Networks (Northern Ireland) Limited. Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

<u>Identification Interrogatories</u>: Interrogatories seeking identification of (i) the names, roles and last known contact information of witnesses with knowledge of information relevant to the subject matter of Allocation, EMEA Claims or UK Pension Claims, (ii) information sufficient to identify transactions upon which any positions, claims, and/or defenses of the recipient of the interrogatory rely.  An interrogatory seeking the names of multiple individuals or transactions shall be considered one interrogatory for purposes of any numerical limit on the number of interrogatories.

<u>Representatives</u>:  Directors, officers, employees, attorneys, accountants, experts, consultants, financial advisors, or agents of any of the Core Parties, US Claim Parties, or Canadian Claim Parties.

<u>U.K. Pension Claimants</u>: Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund.

<u>US Allocation Group</u>:  The US Debtors and the Committee.

<u>US Claims</u>:  Claims made by the US EMEA Claimants Group and the UK Pension Claimants against any or all of the US Debtors.

<u>US Claims Defendant Group</u>:  The US Debtors against whom the US EMEA Claimants Group and the UK Pension Claimants have brought claims and the Committee.

<u>US EMEA Claimants Group</u>:  The EMEA Debtors and/or Joint Administrators or any other administrator or liquidator of an EMEA Debtor who made claims against any or all of the US Debtors, Nortel Networks AS, Nortel Networks South Africa (Proprietary) Limited, Nortel Networks AG, Nortel Networks Optical Components Limited, Northern Telecom France SA, Northern Telecom PCN limited.  Cosmé Rogeau, who has been appointed Liquidator for Nortel Networks SA under French secondary proceedings, acts jointly with the Joint Administrators with respect to Nortel Networks SA.

<u>US Claim Party</u>:  Any party in the US EMEA Claimants Group or the US Claims Defendant Group, or the UK Pension Claimants.

11

## DISCOVERY PLAN

| | |
|---|---|
| **1. Definitions** | Capitalized terms used herein and not otherwise defined shall have the meaning ascribed in the Allocation Protocol or Litigation Timetable. |
| **2. Applicable Procedural Regime:** | In accordance with the Cross Border Protocol, the Cross-Claims Protocol and the Allocation Protocol, the following procedural regimes apply:<br><br>(1) With respect to Allocation, the Cross-Border, Cross-Claims and Allocation Protocols apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware will apply as applicable.<br><br>(2) With respect to US Claims, the Cross-Border and Cross-Claims Protocols apply to the extent not inconsistent with this Discovery Plan, and the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware will apply as applicable.<br><br>(3) With respect to Canadian Claims, the Cross-Border Protocol, the Cross-Claims Protocols, the Claims Resolution Order, and the EMEA Claims Procedure Order apply to the extent not inconsistent with this Discovery Plan, and the Commercial List Practice Direction and the *Rules of Civil Procedure* for Ontario will apply as applicable. |
| **3. Scope of Documentary Discovery Among Discovery Participants:** | *a) Definition of Documents*<br><br>References to "Documents" are intended to cover any record that contains any type of information or data in any form and includes everything within the definition of "document" contemplated by Rule 30.01(a) of the Rules of Civil Procedure for Ontario and/or the types of documents contemplated by Rule 34 of the Federal Rules of Civil Procedure.<br><br>*b) Reasonably Accessible Documents and Proportionality*<br><br>No Discovery Participant will be required to search data sources, including applications and databases, that it reasonably understands to already be in the possession, custody, or control of the Allocation Group or Claim Group making the request, provided that a Discovery Participant shall enumerate in its response to a discovery request any data sources that are not being searched on this ground. |

Each Discovery Participant will only be required to search reasonably accessible data. A Discovery Participant who believes that responsive materials are reasonably likely to be found in a decommissioned application or in storage media that cannot be accessed without considerable burden, time or expense shall give prompt notice of this in its response to a document request, and shall meet and confer in good faith with the requesting party or parties regarding the cost and practicality of accessing such responsive materials giving attention to the principle of proportionality.

A Discovery Participant shall not be required to re-produce a document that has already been produced by another Discovery Participant and the same document shall not be required to be produced by more than one Discovery Participant.

In light of the volume of the Debtors' hard-copy documents maintained in off-site storage facilities, and the abundance of available and overlapping electronic data, no Discovery Participant will be obligated to search such hard-copy documents, and rather will produce indices of such hard-copy documents (to the extent they exist) with their responses to any document request and shall meet and confer in good faith with the requesting party or parties regarding hard-copy documents that will be made available for inspection upon request. If any such documents inspected are copied for any requesting party, all other parties shall be notified and copies shall be provided to all parties at their own expense. If any party creates an electronic version of those documents, that party shall be responsible for loading the electronic version of the document(s) onto the Merrill Lextranet database in accordance with Schedule A hereto to the extent reasonable and not overly burdensome.

*c) Previously Produced Documents*

Documents produced into the Merrill Lextranet database ("Mediation Dataroom") for the purpose of the several mediations in this proceeding may be treated as having been produced in the Allocation, US Claims and Canadian Claims litigation, and any Discovery Participant that does not already have such documents shall be provided access to this Merrill Lextranet database, subject to an appropriate confidentiality, protective and/or sealing orders from the Court(s) and a provision allowing the Discovery Participants to clawback any privileged documents that may have been produced in the mediation context or that may be inadvertently produced under this Discovery Plan. Any Discovery Participant may request the load files for the Mediation Dataroom containing metadata from Merrill in order to facilitate loading such documents on a review platform of their choosing.

2

### d) No Waiver of Privilege

The fact that a document has been produced by any Discovery Participant shall not be deemed to be an admission of relevance, nor an automatic waiver of privilege where a document has been, or is, produced inadvertently and/or under circumstances where the producing party did not intend to waive privilege (for itself or any other Discovery Participant who asserts privilege over the document), and any Discovery Participant who asserts privilege over the document may ask that it be clawed back under a procedure to be provided for in a confidentiality or protective order.

### f) Document Requests

### **By no later than May 22, 2013**

For Allocation, each Allocation Group shall be entitled to serve limited reasonable requests for production of non-privileged documents, such requests to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to making such requests, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the document requests of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 24, 2013 to seek agreement with a Discovery Participant from whom it seeks documents and, failing agreement, to seek leave of the Courts to make additional document requests if it believes in good faith that such requests are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on each opposing US Claim Party. The US Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on the Canadian Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed document request and by the US Court where the US Debtors are the recipient of the disputed document request. The Canadian and US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

3

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests. In addition, the EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve limited and specific requests for production of non-privileged documents on the US Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed document request and by the US Court where the US Debtors are the recipient of the disputed document request. The Canadian and US Debtors' agreement to accept such discovery requests does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation document requests and US Claims/Canadian Claims document requests. Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional document requests upon a showing of good cause.

g) *Interrogatories*

**By no later than May 22, 2013**

For Allocation, each Allocation Group shall be entitled to serve a limited number of reasonable Identification Interrogatories, such interrogatories to represent the coordinated effort of all Discovery Participants within the Allocation Group, on each opposing Discovery Participant; provided that the Bondholder Group, prior to serving such interrogatories, shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, to avoid duplication and undue burden. The Discovery Participants who do not belong to any Allocation Group may suggest inclusions in the interrogatories of an Allocation Group with similarly aligned interests. Further, such Discovery Participants who do not belong to an Allocation Group will have until May 24, 2013 to seek agreement with a Discovery Participant on whom it wishes to serve interrogatories and, failing agreement, to seek leave of the Courts to serve additional interrogatories if it believes in good faith that such interrogatories are necessary and non-duplicative.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and US Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on each opposing US Claim Party. The US Claims Defendant Group and the

4

Bondholder Group shall confer on such interrogatories. In addition, the EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the Canadian Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed interrogatory and by the US Court where the US Debtors are the recipient of the disputed interrogatory. The Canadian and US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on each opposing Canadian Claim Party. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such interrogatories. In addition, the EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group shall be entitled to serve a limited number of reasonable Identification Interrogatories on the US Debtors, provided that any disputes are resolved by Canadian Court where the Canadian Debtors are the recipient of the disputed interrogatory and by the US Court where the US Debtors are the recipient of the disputed interrogatory. The Canadian and US Debtors' agreement to accept such interrogatories does not constitute submission to jurisdiction or a waiver of rights or defenses for any other purpose.

Discovery Participants will work in good faith to eliminate duplication and redundancy between Allocation interrogatories and US Claims interrogatories. Further, either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to serve additional Identification Interrogatories upon a showing of good cause.

The availability of contention interrogatories shall be decided by mutual agreement among the Discovery Participants at a later date, and, failing agreement, by the Court(s).

*h) Responses and Objections*

<u>**By no later than June 10, 2013**</u>

When objecting to any discovery request, the recipient of such discovery requests shall state the basis for objection, which may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Recipients are strongly encouraged to prepare joint objections to the same document request or interrogatories to the extent

their objections overlap.

*i) Production of Documents*

**Rolling Productions of Documents Shall Commence June 10, 2013 and Shall Be Completed by July 22, 2013:**

Subject to any objections made and sustained if challenged (see motions procedure below), each recipient of a document request shall produce any responsive non-privileged documents to any request made of it to all Discovery Participants by producing such documents into the Merrill Lextranet database (to the extent they overlap, responses to multiple requests may be combined or cross-referenced to each other to avoid duplication). The producing Discovery Participant shall promptly notify all Discovery Participants of the Docid range of each production.

In this same time frame, each Discovery Participant shall produce any further documents that they intend to rely upon at trial that are not already part of the mediation productions or responsive productions.

*j) Motions to Compel Document Production*

**Motions to Compel Document Productions Must Be Filed by July 26, 2013**

Any Discovery Participant who served document requests and who seeks to compel production of a document must do so only after meeting and conferring in good faith with the Discovery Participant against whom a motion is contemplated, and thereafter by serving a motion with supporting material, including legal argument/submissions, returnable in the applicable Court on seven business days notice on all Discovery Participants, and must establish that the ground for objection is not valid and that their position will be prejudiced in the absence of the response requested. The Discovery Participant whose objection is challenged shall respond to this motion within four business days and any other Discovery Participant whose interests are affected by the request may serve a supplementary response within two business days thereafter.

Notwithstanding this deadline, whenever a discovery dispute arises, the affected Discovery Participants shall promptly attempt to resolve the dispute in good faith and, if an impasse is reached, file any motions with the relevant Court(s) promptly.

*k) Privilege Logs*

Should a Discovery Participant withhold any document based on a claim of privilege or work product protection, the producing party shall provide a privilege log containing details about the category of documents

6

withheld, including at least the following information for each category: (a) the discovery participant asserting the privilege; (b) the subject matter of the category; (c) the date range; and (d) the author(s) and other recipients, which may be grouped by employer (such as Nortel entity or advisor or law firm). Discovery Participants may request additional information regarding categories on the privilege log in order to assess the basis for withholding and shall meet and confer on the same.

The following documents, to the extent created after the commencement of the bankruptcy proceedings, presumptively need not be included on a privilege log: (a) communications exclusively between a Discovery Participant and its outside counsel or (b) work product created by outside counsel and/or such counsel's agents.

Responsive documents which are jointly privileged as to two or more of the Discovery Participants shall be produced, but only to those Discovery Participants with whom the joint privilege is shared.

| | |
|---|---|
| **4. Format of Production of Electronic Records** | For each electronic document, the responding party shall provide the metadata specified in Schedule A, but only to the extent they can reasonably be extracted or otherwise provided in a delimited text file. |
| **5. Trial Witness Identification** | **By no later than July 24, 2013**<br><br>Each Discovery Participant shall identify any fact (non-expert) witnesses it anticipates calling or presenting testimony of at trial, by name, employer, title and functional role held during the time period relevant to their anticipated testimony. A Discovery Participant may identify trial witnesses not previously identified on good faith at a later date provided that any opposing Allocation Group or Claim Group has had or will have a reasonable opportunity to depose the later-identified witness before trial, regardless of the fact discovery cut-off or number of depositions taken.<br><br>Any Discovery Participant that has previously filed an affidavit or witness statement in the context of this litigation (the Ontario and Delaware proceedings) may also, at its option, choose to designate that evidence to be tendered at trial as long as the witness will be made available to be deposed and appears at trial for cross-examination. |
| **6. Oral Examinations Or Depositions** | *a) Examinations of Representatives/ 30(b)(6) Depositions*<br><br>**By no later than July 26, 2013**<br><br>For Allocation, each Allocation Group (other than the Bondholder Allocation Group) may serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States |

Federal Rules of Civil Procedure on the solicitors or counsel of record for any opposing Discovery Participant specifying the topics, if any, on which that other Discovery Participant's representative(s) is to be examined/deposed. The Bondholder Allocation Group shall consult with the Canadian Allocation Group and the US Allocation Group regarding any requests under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure it would like the US Allocation Group and the Canadian Allocation Group to serve on other Discovery Participants in accordance with the foregoing. In the event that Canadian Allocation Group and the US Allocation Group do not agree to serve such requests, the Bondholder Allocation Group may seek leave of the Court or Courts, as applicable, by motion on notice to serve its own requests for examination under Rule 34.04 of the Ontario Rules of Civil Procedure and/or depositions under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure.

For US Claims, each of the US EMEA Claimants Group, the UK Pension Claimants and the US Claims Defendant Group may each serve a request under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure on the counsel of record for any opposing US Claim Party specifying the topics, if any, on which the US Claim Party's representative is to be deposed. The US Claims Defendant Group and the Bondholder Group shall confer on such requests.

For Canadian Claims, each of the Canadian EMEA Claimants Group, the UK Pension Claimants and the Canadian Claims Defendant Group may each serve a request under Rule 34.04 of the Ontario Rules of Civil Procedure on the solicitors/counsel of record for any opposing Canadian Claim Party specifying the topics, if any, on which the Canadian Claim Party's representative is to be examined/deposed. The Canadian Claims Defendant Group and the Bondholder Group shall confer on such requests.

## Use of (Discovery) Answers at Trial

Testimony of representatives proffered in response to requests under Ontario Rule 31.03 and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure may be used as evidence at trial only by Discovery Participants whose interests are adverse to those of the proffering Discovery Participants on the issue for which the evidence is being used.

## By no later than August 2, 2013

Each Discovery Participant served with a request under Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure shall designate a representative(s)

(who may, but is not required to be, a current or former officer, director or employee of that Discovery Participant) to be offered to be examined/deposed as though Rule 31.03 of the Ontario Rules of Civil Procedure applied and/or under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure as applicable.  All Discovery Participants shall have the right to attend such examinations/depositions.

A Discovery Participant may designate its party representative(s) under Rule 34.04 of the Ontario Rules of Civil Procedure as its witness(es) under Rule 30(b)(6) of the United States Federal Rules of Civil Procedure for a single examination/deposition of each such witness(es).

*b) Oral Examinations/ Deposition of Fact Witnesses:*

**By no later than July 29, 2013**

In addition to the aforementioned examinations/depositions pursuant to Rule 34.04 of the Ontario Rules of Civil Procedure and/or Rule 30(b)(6) of the United States Federal Rules of Civil Procedure, each Allocation Group and each Claim Group shall serve by this date notices stating the witnesses it wishes to examine or depose (which may include third parties, persons subject to the control of a Discovery Participant or both and which may be persons who have been identified as trial witnesses by another Discovery Participant, and any persons whose previously filed affidavits/witness statements have been designated by a Discovery Participant as trial evidence) in order to obtain factual information/admissions relevant to Allocation, US Claims or Canadian Claims.  Each witness shall be named and his/her place of residence (if known) shall be identified.  The parties shall meet as soon as practicable after this date to confer and attempt to reach agreement on the list of witnesses to be deposed and the time for examination of each witness by each party.  In the absence of agreement this shall be submitted to the relevant Court(s) for decision.  The attorneys for the US Debtors, the Canadian Debtors and the EMEA Debtors agree to accept requests under Rule 34.04 of the Ontario Rules of Civil Procedure and Depositions Notices the United States Federal Rules of Civil Procedure seeking to depose or examine persons under the control of their clients. All parties agree to cooperate in good faith in attempts to locate and obtain testimony from persons not under the control of any party, including through issuance of compulsory process, letters of request and other available procedures, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony.

The Bondholder Group shall consult with the Canadian Allocation Group and the US Allocation Group, as applicable, regarding any fact witnesses

it seeks to examine/depose. In the event that the Canadian Allocation Group and the US Allocation Group do not intend to designate such fact witnesses that the Bondholder Group seeks to designate, the Bondholder Group may seek leave of the Court or Courts, as applicable, by motion on notice to designate such fact witnesses.

Either by agreement or, failing such an agreement, by order of the appropriate Court or Courts, an Allocation Group or Claim Group may obtain leave to designate additional fact witnesses upon a showing of good cause.

**All examinations/depositions to be completed by no later than September 27, 2013**

The relevant parties shall meet and confer and attempt to agree on the fact witnesses to be examined/deposed and on an examination/deposition schedule that contemplates the completion of all witness examinations/depositions (including any examinations/depositions for testimony preservation that the Court(s) may have granted leave to conduct) in this time frame that reflects the practicalities of examining/deposing each witness (having regard to the number of Discovery Participants examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness). All Discovery Participants shall have the right to attend such examinations/depositions.

The relevant parties will attempt to schedule depositions with a preference to finish fact witness depositions prior to any representative party examinations or Rule 30(b)(6) depositions.

*c) Use of Examinations/Depositions at Trial*

Designated portions of any examination/deposition may be filed as part of the evidence that any Discovery Participant may rely upon at trial in accordance with the usual rules that apply in the Canadian and US Courts, respectively.

**7. Experts**

**By no later than September 13, 2013**

Each Discovery Participant that intends to rely on the opinion evidence of a qualified expert shall identify the name of its intended expert(s) and the subject matter of their expertise and intended evidence.

**By no later than October 4, 2013**

Each Discovery Participant shall deliver an affidavit or report from their identified expert(s) setting out his/her findings, opinions and conclusions and identifying all documents/factual evidence relied upon in attached exhibits or by Bates number if previously produced, and containing the disclosures required by the Applicable Procedural Regime set forth in section 2.

Any Discovery Participant that has previously filed an affidavit or report from an expert in the context of this litigation (the Ontario and Delaware proceedings) may, at its option, choose to designate that as part of their expert evidence at trial, provided that the expert will be made available to be examined/deposed and appears at trial as set out below. If not so designated, those previously filed affidavits and/or reports shall not constitute part of the evidence at trial.

Promptly after the submission of initial expert affidavits or reports, the Discovery Participants shall attempt to agree upon an expert examination/deposition schedule so that depositions can commence by November 8, 2013.

**By no later than November 1, 2013**

Each Discovery Participant shall have the right to deliver an affidavit or report from an expert, including a newly identified rebuttal expert, in response to one received by another Discovery Participant that addresses an issue that is adverse to the Discovery Participant's position in the Allocation, US Claims, or Canadian Claims litigation. Responses shall be permitted even if the Discovery Participant did not initially tender an expert's affidavit, if an issue is raised by an expert whose evidence is tendered by another Discovery Participant that calls for response. Responsive reports shall be limited to responding to issues on which an affirmative expert report has been proffered and shall not go beyond such issues.

**By no later than December 6, 2013**

As soon as practicable, the Discovery Participants shall meet and confer and attempt to agree on a schedule that contemplates the completion of all expert witness examinations/depositions between November 8, 2013 and December 6, 2013 that reflects the practicalities of examining/deposing

each witness (having regard to the number of parties examining/deposing, the subject matter of the examinations/depositions, the available time for completion of all examinations/depositions and the residence of the witness). All Discovery Participants shall have the right to attend such depositions.

A Discovery Participant may request that any expert be present at trial for cross-examination, and the affidavit or report of any expert not appearing at trial if requested to appear cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

The affidavits and/or reports shall be filed as evidence with the court at the trial, subject only to cross-examination at trial and any applicable objections that may be made and determined at the outset of the trial and directions or rulings from the Court(s) arising therefrom. The Discovery Participant proffering the expert may elect to take a short direct examination of the expert at trial solely to introduce the expert and provide brief background or summary of the expert's report. The affidavit or report of any expert not appearing at trial cannot be filed as evidence unless agreed to by all Discovery Participants adverse to the expert's position.

<u>Communications with Experts</u>:

The experts shall not be examined/deposed about or asked to produce prior drafts of their affidavits/reports and/or their communications with the Discovery Participant who retained them or other Discovery Participants within the same Allocation Group or Claim Group, or their respective Representatives, or any other topic protected from disclosure by the Applicable Procedural Regime set forth in section 2.

With respect to Allocation and US Claims, Rule 26 of the United States Federal Rules of Civil Procedure applies to expert discovery.

| | |
|---|---|
| **8. General Procedure Applicable to All Oral Examinations/ Depositions** | <u>Length of Oral Examinations/Depositions</u><br><br>The Discovery Participants will include for discussion in the meet and confer scheduled for August 5 the Discovery Participants' proposals for limits on the length of oral examinations/depositions and the procedure for conducting such examinations/depositions.<br><br><u>Coordinating Oral Examinations/Depositions</u><br><br>Each examination/deposition shall be coordinated so that a lead examiner is identified for each group that noticed the oral examination/deposition (where an Allocation Group and Claim Group from the same jurisdiction counts as one group). Lead examiners shall work in good faith with any other lead examiners as well as other affected Discovery Participants to |

12

1555

reflect a coordinated effort to avoid duplication of questions. For the avoidance of doubt, the US Claim Parties shall have the right to attend oral examinations/depositions that relate to the Canadian Claims, and the Canadian Claim Parties shall have the right to attend oral examinations/depositions that relate to the US Claims.

Transcripts and video taping:

All examinations/depositions shall be taken under oath in the presence of a Canadian or US certified court reporter and transcribed and the transcripts made available to all Discovery Participants, whether or not they are in attendance at the examination/deposition. At the option of any examining/deposing Discovery Participant, the examination/deposition may be video-taped but the use to which the video tape may be put shall be entirely in the discretion of the Court(s). The examining/deposing Discovery Participant(s) shall proportionally pay for the cost of the first and Court copies of the transcript and all other parties shall pay for their own copies.

Objections:

Objections may be made on any ground provided in the rules of the Applicable Procedural Regime set forth in section 2. Questions that are objected to on grounds other than privilege shall be answered under reserve of that objection. All other objections shall be preserved.

Requirement for Summons:

If a summons, subpoena or other process is required to compel the attendance at deposition of any witness, the Monitor, the US Debtors, the Joint Administrators, and the UK Pension Claimants shall reasonably assist in issuing process or otherwise procuring a witness's attendance irrespective of which Discovery Participant has sought the witness's deposition, except that no party shall be required to commence proceedings or pursue other procedures to secure testimony from witnesses that are not in its control and from which that party does not seek testimony. Neither resort to the courts of any jurisdiction for the purposes of compelling a witness's production for deposition nor conducting a deposition in any jurisdiction shall constitute attornment or consent to that jurisdiction for any other purpose.

Undertakings:

With respect to Allocation and Canadian Claims, the witness shall answer any undertakings that were agreed to on his/her examination/deposition within two weeks of the date of his/her examination/deposition, unless otherwise agreed to by the affected Discovery Participants.

13

**9. General Terms**

Any Discovery Participant may make a motion to the Court to compel another Discovery Participant to take the steps contemplated by the Discovery Plan or other steps, and the parties agree that the Court(s) may take the existence of the Discovery Plan into account in determining whether to grant the order sought. The Discovery Participants that are parties to such a motion may seek to justify their respective positions on the basis of, among other things, any information that was unknown or not reasonably available to that Discovery Participant at the time the Discovery Plan was entered into.

The Discovery Participants recognize that, as additional information becomes available throughout the Allocation, US Claims and Canadian Claims litigation, it may become apparent that: (a) it is impracticable or impossible for a Discovery Participant to comply with the terms of the Discovery Plan, or to do so in a time-efficient or cost-efficient manner, or (b) further steps, beyond those set out in this Discovery Plan, are required in order for a Discovery Participant to obtain access to potentially relevant documents, information or witness testimony. Each Discovery Participant agrees to notify the other Discovery Participants promptly when it reasonably believes that it will not comply with any term of the Discovery Plan or when it reasonably concludes that further steps beyond those set out in this Discovery Plan are required. The Discovery Participants agree to negotiate in good faith with respect to any amendments to the Discovery Plan requested by a Discovery Participant on that basis, and to seek the assistance of the Courts(s) when appropriate in order to resolve disputes between the Discovery Participants.

All Discovery Participants shall meet and confer in good faith without the assistance of the Court(s) in attempting to resolve any disputes in the interpretation or implementation of this Discovery Plan. Discovery Participants are required to promptly seek relief from the applicable Court or Courts if an impasse is reached in any dispute and shall not be heard to complain of any prejudice resulting from their own delay in seeking relief.

All motions or directions sought from the Court(s) pursuant to this Discovery Plan shall be brought before the following Court or Courts: with respect to Allocation, before Judge Gross of the United States Bankruptcy Court for the District Court of Delaware and Justice Morawetz of the Ontario Superior Court of Justice; with respect to US Claims, before Judge Gross; and with respect to Canadian Claims, before Justice Morawetz. The Courts shall hold regularly scheduled joint discovery conferences for discovery disputes in Allocation and those discovery disputes that affect both jurisdictions.

The EMEA Debtors' participation in the procedures addressed herein is without prejudice to their contention that Allocation should be decided by arbitration rather than the US and Canadian Courts, and shall not be

construed as a waiver of their objection to determining Allocation in accordance with the procedures set forth in the Allocation Protocol, this Discovery Plan and the Litigation Timetable.

All Discovery Participants reserve any rights they may have to object to the standing of any party to participate in any trial.

**SCHEDULE A**

Format for Exchange of Productions: Productions will be exchanged by loading each production into the Merrill Lextranet database with the following objectively coded metadata, if reasonably possible, and in the following form:

| Item | Field | Field Type | Description | Format |
|------|-------|-----------|-------------|--------|
| **Document Numbering** | *Docid* | Note Text | Unique document ID number (alpha prefix followed by sequential numbering) | AA0000001 |
| | *Parentid* | Note Text | Docid for the parent e-mail or document that has an attachment associated with it | AA0000001 |
| | *Attchids* | Note Text | Docid(s) attached to Parentid | AA0000001 |
| **Fields/Coded Data for E-mails** | *Datesent* | Date | Used to identify the date that an e-mail was sent | MM/DD/YYYY As per metadata |
| | *Timesent* | Time | Time e-mail was sent | As per metadata (HH:MM:SS) |
| | *Timercvd* | Time | Time e-mail was received | As per metadata (HH:MM:SS) |
| | *To* | Multi-Entry | Name/e-mail address of the address(es) of individuals who received the e-mail | As per metadata |
| | *From* | Note Text | Name/e-mail address of the person who sent the e-mail | As per metadata |
| | *Subject* | Note Text | Contents of the subject field in the e-mail | As per metadata |
| | *Cc* | Multi-Entry | Names/e-mail address(es) of the individuals who were copied on the e-mail | As per metadata |
| | *Bcc* | Multi-Entry | Names/e-mail address(es) of the individuals who were blind-copied on the e-mail | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment<br><br>When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc<br><br>This field is required for loading electronic documents and attachments | As per metadata |
| **Fields/Coded Data for Attachments and Loose Electronic Documents** | *Datesvd* | Date | Date an electronic file or attachment was last saved | As per metadata |
| | *Datecrtd* | Date | Used to identify the date that an electronic file or attached document was created | As per metadata |
| | *Filetype* | Note Text | Type of file of an electronic file or attachment | As per metadata |
| | *Filename* | Note Text | File name of electronic file or attachment | As per metadata |
| | *Doclink* | Note Text | Used to link a document to the database record<br>Only to be provided for Spreadsheets since being produced in native format instead of tiff-ed images | As per metadata |
| | *Folder* | Note Text | Original folder containing path of electronic document as provided | As per metadata |
| | *Custodian* | Note Text | Person from whom document was collected | As per metadata |
| | *Media* | Note Text | Used to identify the type of media for an attachment<br><br>When loading eDocs, this field will be filled in with either eMail, Attachment or eDoc<br><br>This field is required for loading electronic documents and attachments. | As per metadata |

16

| Item | Field | Field Type | Description | Format |
|---|---|---|---|---|
| Fields/Coded Data for Paper Documents | *Docdate* | Date | Date of document (subjectively coded) | MM/DD/YYYY |
| | *CollectDate* | Date | Creation Date of Electronic File | MM/DD/YYYY |
| | *Source* | Note Text | Location or person from whom document was collected (subjectively coded) | |
| | *Attach#* | Note Text | Sequential number applied to attachments showing attachment sequence | .001, .002, etc. |
| | *Author* | Multi-Entry | Author(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| | *Recip* | Multi-Entry | Recipient(s) of document (subjectively coded) | Last name, first name [corporate affiliation] |
| Fields/Coded Data for Electronic Documents (Chronological Review) | *Leaddate* | Date | Date of the parent document, populated to all attachments for use with chronological sorting while keeping document families together | MM/DD/YYYY |
| | *Leadtime* | Date | Time of the parent document, populated to all attachments for use with chronological sorting while keeping document families together<br><br>Allows for further sorting of documents dated the same day by time | HH:MM:SS |

1.    Each document shall be individually produced with a unique document ID number.

2.    For each document, the Discovery Participant shall provide a text file containing the text extracted directly from the native electronic version of that document, unless the document was redacted, is an image file, is a scanned hardcopy document, or is in another format from which text cannot be reasonably extracted. In these instances, provide a text file created using document-level optical character recognition (OCR) to the extent reasonably practicable.

3.    All images will be single page tiff format (excluding spreadsheets, Powerpoint presentations, and database files which will be provided in native format) with 300 dpi specifications to the extent practicable. Native format files to be provided in the eDocs folder.

4.    Parties will provide the following load files formatted as follows:

(a)    Image folder (single page tiff, 300 dpi);

(b)    eDocs folder (for native files);

(c)    OCR folder (with text files and a control list for loading);

(d)    data.txt or data.csv (with coded fields listed above for ESI and paper documentation); and

17

      (e)      imginfo.txt or imginfo.csv or other formats at the request of the receiving party to the extent practicable.

5.      If a document and its exact duplicates are associated with the same custodian, the responding party may withhold the exact duplicates from production.  If a document and its exact duplicates are associated with different custodians, the responding party may withhold the exact duplicates from production and provide a metadata field for the produced document indicating the custodians for whom duplicates were withheld where practicable.

6.      While Discovery Participants will attempt in good faith to comply with all of the above, Discovery Participants shall produce documents and comply with the above to the extent practicable.

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-795(

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

---

**ORDER**
(Litigation Timetable and Discovery Plan)

---

**Goodmans LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON   M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Jessica Kimmel (LSUC#: 32312W)
Peter Ruby (LSUC#: 38439P)
Joseph Pasquariello (LSUC#: 38390C)

Tel:  416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

\6205385

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| THE HONOURABLE MR. | ) | TUESDAY, THE 19th DAY OF |
|---|---|---|
| JUSTICE MORAWETZ | ) | NOVEMBER, 2013 |
| | ) | |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**
**(Amendments to Litigation Timetable, Discovery Plan and Deposition
Protocol)**

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited,

Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel

Networks International Corporation (collectively, the **"Canadian Debtors"**) jointly with Ernst &

Young Inc. in its capacity as monitor (the **"Monitor"**) of the Canadian Debtors, the U.S.

Debtors, Committee, the EMEA Debtors/ Joint Administrators, the UK Pension Claimants **and**

**the CCC** (all as defined in the Allocation Protocol (as defined in Schedule A hereto) and

collectively, the **"Moving Parties"**) for the relief set out in the Notice of Motion dated

November 14, 2013 was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the one-hundredth report of the Monitor dated November 14, 2013, and on hearing submissions of counsel for the Moving Parties and the objection of the ad hoc bondholder group, no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Kiran Dhillon sworn November 14, 2013, filed.

1.      THIS COURT ORDERS that the time for the service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.      THIS COURT ORDERS that capitalized terms used herein and not otherwise defined have the meaning given to them in Schedule A hereto.

3.      THIS COURT ORDERS that the terms of amendment set out in Schedule A hereto are hereby approved and the Allocation Protocol, the Litigation Timetable, the Discovery Plan and the Deposition Protocol be and they are hereby amended in accordance with such terms.

4.      THIS COURT ORDERS that the parties shall be permitted to adjust interim deadlines in the time table in accordance with the following procedures:

> a.  The Moving Parties shall meet and confer to determine whether further adjustments to the time table should be made and may upon unanimous agreement (subject to sub-paragraph (c) below), without further Order of the Court(s), propose amendments to the timetable provided that such dates shall not impact the Court ordered commencement date of the Trial;

> b.  Any objections by Core Parties to any proposed amendments shall be made within two (2) Business Days of such proposal being made to them in writing; and

1564

    c.  All objections shall be resolved through a meet and confer among all the Moving Parties (or designated members) and the objector(s) within two (2) Business Days, failing which, the objector must seek relief from the Court(s) within two (2) Business Days thereafter (by letter). Absent relief from the Court(s), any changes to the time table proposed by the Moving Parties shall be effective.

MISCELLANEOUS

5.    THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

6.    THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

DEC - 3 2013

TOR_LAW\ 8296198\7

# SCHEDULE A

### Attached.

## SCHEDULE "A" –AMENDMENT TERMS

Capitalized terms used herein and not otherwise defined have the meaning given to them in (i) the allocation procedure protocol approved by the Ontario Superior Court of Justice and the United States Bankruptcy Court for the District of Delaware (the "**Courts**") in Orders dated on or about April 3, 2013 and May 16, 2013, respectively (as amended and restated, the "**Allocation Protocol**"), (ii) the litigation timetable and discovery plan approved by the Courts in Orders dated on or about May 16, 2013 and as amended by Orders of the Courts dated on or about August 27, 2013 (as amended, the "**Litigation Timetable and Discovery Plan**"), and (iii) the Deposition Protocol as approved by the Courts in Orders dated on or about August 27, 2013 and as amended by Orders dated on or about September 20, 2013 and September 25, 2013 (as amended, the "**Deposition Protocol**") as applicable.

1.    The Allocation Protocol, Litigation Timetable and Discovery Plan and the Deposition Protocol are modified as follows:

| Deadline | Former Date | Revised Date |
| --- | --- | --- |
| Deadline to complete witness depositions other than third party depositions (i.e., those other than current or former employees or directors of a Core Party) and Representative Witness depositions | December 13, 2013 | December 13, 2013[1] |
| Deadline for each Deposition Group to serve Representative Witness subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | 10 business days prior to the commencement of Representative Witness depositions | 5pm (EST) December 13, 2013 other than with respect to topics relating to NNSA which shall be delivered no later than 5pm (EST) on December 17, 2013 |
| Identification of Representative Witnesses by each Core Party required to produce a Representative Witness | 5 business days prior to the commencement of Representative Witness | 5pm (EST) on December 18, 2013 |

---

[1] The parties shall be permitted to extend this date to December 18, 2013 with unanimous approval of the Scheduling Committee to the extent irreconcilable conflicts prevent a witness from being scheduled by December 13, 2013 provided however, except for good cause shown, that such extension shall not impact any other deadlines or dates in the timetable including the deadlines for noticing with respect to topics for and the scheduling of Representative Witness Depositions.

7790706.2

1

| Deadline | Former Date | Revised Date |
|---|---|---|
| | depositions | |
| Deadline for objections to Representative Witness subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | Three business days after service of the subjects | 5pm (EST) on December 18, 2013 |
| Meet and confer of the Scheduling Committee to schedule Representative Witness Depositions | NA | December 19, 2013 and/or December 20, 2013 |
| Meet and confer regarding any objections on Representative Witness deposition subjects in accordance with paragraph G(1)(a) of the Deposition Protocol | Within two business days of service of the objections | December 20, 2013 |
| Deadline to identify experts and the subject matter of their reports | November 27, 2013 | January 8, 2014 |
| Representative Witness depositions | December 13, 2013 | January 8, 2014 to January 17, 2014 |
| Deadline for service of expert reports | December 20, 2013 | January 24, 2014 |
| Meet and confer to discuss foreign law experts | NA | No later than January 31, 2014 |
| Deadline for Discovery Groups to provide list of available dates of their experts to the Scheduling Committee | NA | 5pm (EST) on January 31, 2014 |
| Deadline to complete third party depositions | Due date of rebuttal expert reports | February 28, 2014 (solely for witnesses for whom process was started by Sept. 30, 2013 and except for good cause shown as per the current order) |
| Deadline for service of rebuttal expert reports | January 24, 2014 | February 28, 2014 |

7790706.2

| Deadline | Former Date | Revised Date |
|---|---|---|
| Preliminary pre-trial conference | Week of February 17, 2014 | January 29, 2014 |
| Expert depositions | February 28, 2014 | March 17, 2014 to April 4, 2014 |
| Deadline to file a list of all witnesses and exhibits that each Core Party intends to rely upon as part of its direct case | March 6, 2014 | April 10, 2014 |
| Deadline to file:<br><br>• Pre-trial motions<br><br>• Pre-trial briefs<br><br>• All fact affidavits to be used in direct case<br><br>• All exhibits to be used in direct case<br><br>• All deposition testimony to be used in direct case | March 14, 2014 | April 17, 2014 for service with filing on the following business day |
| Pre-trial conference | Week of March 17, 2014 (if the Courts desire) | Between April 21 and April 28, 2014 |
| Beginning of Trial | April 1, 2014 | Beginning on May 12, 2014 and continuing for 19 trial days thereafter |

2.   **Fact Witness Depositions**

    a.   Third Party Witnesses.

        i.   Notwithstanding any prior orders, absent good cause shown to the Court(s), no Core Parties shall provide any further notices to third parties for production of documents and/or depositions (other than those currently disclosed to the Scheduling Committee).

ii. Provided that appropriate judicial process to compel the production of documents or testimony from third parties was issued or commenced on or before September 30, 2013, or currently disclosed to the Scheduling Committee, the production of documents from such third parties and/or the depositions of such third party witnesses may be completed after the deadline for fact witness depositions, but must be completed by no later than February 28, 2014, except for good cause shown and by agreement of the Core Parties or order(s) of the Court(s).

3.  **Representative Witness Examinations.**

   a.  The Deposition Protocol is hereby amended as follows:

      i.  The second sentence of paragraph G(1)(a) is amended as follows:

         "At least ten business days before the commencement of Representative Depositions" is hereby deleted and replaced with the words "On or before 5pm (EST) on December 13, 2013 (other than with respect to NNSA for which the deadline shall be December 17, 2013)"

      ii.  The fourth sentence of paragraph G(1)(a) is amended as follows:

         "objections shall be served within three business days" is hereby deleted and replaced with the words "objections shall be served no later than 5pm (EST) on December 18, 2013"

      iii.  The fifth sentence of paragraph G(1)(a) is amended as follows:

         "applicable parties shall meet and confer in good faith ~~within two business days thereafter~~ on or about December 20, 2013 and, failing agreement, the burden shall be on the noticing party to obtain judicial relief at least two business days (in order to enable preparation) prior to the Representative Deposition"

   b.  On or before 5pm (EST) December 18, 2013, each Core Party that is required to

produce a Representative Witness under the Deposition Protocol shall identify their Representative Witness(es) and provide the Scheduling Committee with a list of all available deposition dates of their Representative Witness(es) for the period January 8, 2014 to January 17, 2014.

c.  Representative Witness examinations will take place in accordance with the Deposition Protocol and will be scheduled between January 8, 2014 and January 17, 2014 to take place in New York or Toronto.

d.  Each Core Party that is required to produce a Representative Witness under the Deposition Protocol will ensure that its Representative Witness can be produced on several pairs of days for the period January 8, 2014 to January 17, 2014.

e.  The Deposition Groups will meet and confer during the week of December 16, 2013 to attempt to resolve any remaining disputes with respect to the Representative Witness depositions.

4.  **Expert Witness Examinations**.

a.  Expert witness examinations will take place between March 17, 2014 and April 4, 2014 in New York and Toronto.

b.  Each Discovery Group will ensure that their expert witnesses can be produced for examination in either New York or Toronto on several days between March 17, 2014 and April 4, 2014 and, unless excused by the Scheduling Committee or the Courts, at a minimum

  i.  each expert shall be required to offer at least 5 days on which they are available for deposition,

  ii.  the deposition dates offered by the experts must be spread over at least two of the weeks; and

  iii.  each Discovery Group must offer enough availability so that its experts' depositions can be scheduled equally over the three weeks of expert

depositions.

c. On or before 5pm (EST) January 31, 2014, each Discovery Group shall provide the Scheduling Committee with all available deposition dates of their experts for the period March 17, 2014 to April 4, 2014.

d. The Core Parties shall meet and confer no later than January 31, 2014 to attempt to reach agreement on the necessity of the examination of foreign law experts for deposition and trial.

5. **Trial Logistics**

a. The Core Parties shall meet and confer as soon as possible (but in any event no later than the week of December 16, 2013) with a view to attempting to reach consensus with respect to a proposal for the conduct of the trial, including the

   i. material to be served/filed on April 10, 2014 and April 17, 2014;

   ii. the feasibility of providing the Courts with a statement of agreed facts; and

   iii. proposed length of the trial.

b. On or before January 20, 2014, the US Debtors, Canadian Debtors/Monitor, the EMEA Debtors and the UK Pension Claimants shall submit (either jointly or separately) their proposals for the conduct of the trial to the Courts. Other Core Parties shall be entitled to file their own proposal on or before January 20, 2014 or, alternatively, they may file a joinder to indicate support of one or more of the proposals on or before January 27, 2014.

6. **Miscellaneous**

a. Other than as expressly modified herein, all other terms, dates, provisions in the Allocation Protocol, Litigation Timetable, Discovery Plan and all amendments thereto remain in full force and effect.

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-7950

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

---

**ORDER**
**(Amendments to Litigation Timetable, Discovery Plan and Deposition Protocol)**

---

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay (LSUC #: 21152A)**
**Jennifer Stam (LSUC #: 46735J)**
Tel:   (416) 862-5697
Fax:   (416) 862-7661

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON  M5H 2S7

**Jay A. Carfagnini (LSUC#: 22293T)**
**Alan Mark (LSUC#: 21772U)**
**Jessica Kimmel (LSUC#: 32312W)**
**Joseph Pasquariello (LSUC#: 38390C)**
**Peter Ruby (LSUC#: 38439P)**
Tel: 416.979.2211
Fax: 416.979.1234

TOR_LAW\ 8296198\7

Court File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**PROPOSED TRIAL PROTOCOL AND WRITTEN SUBMISSIONS OF**
**CANADIAN DEBTORS AND THE MONITOR**

**Joint Trial Protocol**
**(Pre-Trial Conference to be held on January 29, 2014)**

| | |
|---|---|
| **Goodmans LLP**<br>Barristers & Solicitors<br>Bay Adelaide Centre<br>333 Bay Street, Suite 3400<br>Toronto, ON  M5H 2S7 | **Gowling Lafleur Henderson LLP**<br>Barristers & Solicitors<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>Toronto, ON  M5X 1G5 |
| Jay A. Carfagnini  LSUC#: 22293T<br>Alan Mark LSUC#: 21772U<br>Jessica Kimmel LSUC#: 32312W<br>Peter Ruby  LSUC#: 38439P<br>Joseph Pasquariello  LSUC#: 37389C | Derrick Tay  LSUC#: 21152A<br>Jennifer Stam LSUC#: 46735J |
| Tel:    416.979.2211<br>Fax:    416.979.1234 | Tel:  416.862.5697<br>Fax:  416.862.7661 |
| Lawyers for the Monitor,<br>Ernst & Young Inc | Lawyers for the Canadian Debtors |

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

# PROPOSED TRIAL PROTOCOL AND WRITTEN SUBMISSIONS OF CANADIAN DEBTORS AND THE MONITOR

**Joint Trial Protocol**
**(Pre-Trial Conference to be held on January 29, 2014)**

## I.    OVERVIEW

1.    In accordance with the Order of this Court dated November 19, 2013 and the similar Order of the U.S. Court  (the "**Amendment Orders**"), the Core Parties have worked to develop a joint trial protocol to govern certain procedural matters relating to the conduct of the trial.

2.    The Core Parties have worked collaboratively and cooperatively to develop a joint proposed form of trial protocol, which is attached as Appendix A hereto (the "**Proposed**

- 3 -

**Trial Protocol"**) and hereby submitted by the Canadian Debtors and the Monitor.[1]   The Proposed Trial Protocol is a compromise that has been agreed to by most of the Core Parties subject to a few exceptions listed below.

3.      Capitalized terms used herein and not otherwise defined have the meaning to them in the Proposed Trial Protocol.

## II.    THE TRIAL PROTOCOL PROPOSAL

*Overview*

4.      The Proposed Trial Protocol is broken down into five (5) main sections and outlines agreement of the Core Parties on procedural matters including:

     (a)      Pre-Trial. The schedule for exchange and filing of:

          (i)        affidavits (initial and reply), expert reports (initial and reply);

          (ii)       exhibit lists and fact/ expert witness designations (including a process for objections and counter designations);

          (iii)      Pre-Trial Orders and Pre-Trial Motions; and

          (iv)      Pre-Trial briefs.

     (b)      Trial.  The order of presenting opening statements and calling and examining fact witnesses and experts as well as certain rules with respect to the same.

---

[1] In accordance with the Amendment Orders, the Core Parties agreed to amend the date for submission of proposals to the Courts to January 23, 2014 (and subsequently to January 24, 2014) in order to make further efforts to reach consensus on the proposed form of protocol.

- 4 -

(c)     Post-Trial.  The timing for the filing of post-hearing memoranda and the order of hearing of closing arguments.

(d)     Trial Location.   Matters relating to the location and conduct of the trial and acknowledgements as to the ability of counsel to appear in either Court.

(e)     Miscellaneous.   Additional miscellaneous matters.  Notably, the Proposed Trial Protocol makes it clear that this has been agreed to on the assumption that all Core Parties are presenting their allocation positions as set out in their pleadings. The Proposed Trial Protocol explicitly provides that if any Core Party adopts a position that is not reflected in its pleadings, any other Core Party has the right to petition the Courts for re-allocation of time or re-ordering of presentation.

5.     Issues that have not been addressed in the Proposed Trial Protocol and which the Core Parties have agreed to defer to a future date include:

(a)     Limitations, if any, on affidavits and witnesses appearing at trial;

(b)     The number of experts (both non-foreign law and foreign law) to appear at trial (including whether it will be necessary for any foreign law experts to appear at trial); and

(c)     The trial time to be allocated to each of the Groups and/or Claimants including time limitations on opening and closing arguments.

- 5 -

*Next Steps*

6.    The Proposed Trial Protocol contemplates that the Core Parties will meet and confer on many of these outstanding issues during the month of February and will submit proposals no later than February 28, 2014.

7.    Currently, the next pre-trial conference is scheduled for the week of April 21, 2014.  In connection with these further negotiations, the Core Parties would propose that the Courts (subject to their availability) schedule an interim pre-trial conference for the week of March 10, 2014.

*Objections*

8.    The Canadian Debtors and the Monitor understand that the CCC has a limited objection with respect to footnote 1 of the Proposed Trial Protocol.  The Canadian Debtors and the Monitor are not aware of any other objections.

9.    The Canadian Debtors and the Monitor also note that although the EMEA Debtors and the UK Pension Claimants have agreed to the Proposed Trial Protocol, they have each filed submissions (or a letter) seeking additional trial time which they propose to be used exclusively for Claims, notwithstanding that some of the Claims issues have been settled. The Canadian Debtors and the Monitor reserve all rights to file a reply to these submissions prior to the pre-trial conference.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED this 24th day of January, 2014.**

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Jay A. Carfagnini  LSUC#: 22293T
Alan Mark LSUC#: 21772U
Jessica Kimmel LSUC#: 32312W
Peter Ruby LSUC#: 38439P
Joseph Pasquariello LSUC#: 37389C

Tel:  416.979.2211
Fax:  416.979.1234

Lawyers for the Monitor,
Ernst & Young Inc.

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

Derrick Tay  LSUC#: 21152A
Jennifer Stam  LSUC#: 46735J

Tel:  416.862.5697
Fax:  416.862.7661

Lawyers for the Canadian Debtors

# APPENDIX A

## Attached

Proposed Joint Trial Protocol[1]

I.      **Pre-Trial Submissions**

   A.      **Fact Witness Affidavits**

   1.      By March 31, 2014,[2] the Core Parties shall disclose the names of the fact witnesses for Allocation (as defined in the Allocation Protocol) and Claims[3] from whom they will submit affidavits, which witnesses will be made available for cross-examination at trial.[4]

   2.      Opening fact witness affidavits for Allocation and Claims shall be exchanged by the Core Parties by April 11, 2014,[5] and submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

   3.      At the time of exchange of fact witness affidavits, the offering Core Party shall disclose the location at which each witness shall testify at trial.

   4.      On April 25, 2014, the Core Parties shall exchange the reply witness affidavits and submit such affidavits to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H. Except with leave of the Courts for good cause shown, or as necessary to rebut specific allegations concerning a proposed new affiant which could not have been reasonably anticipated, reply affidavits shall be

---

[1]      This proposal assumes a single trial of Allocation and Claims and is subject to change in the event of the Courts' adoption of the anticipated requests of the EMEA Claimants and the UK Pension Claimants for an increased trial length or bifurcation of the trial. Additionally, the Litigation Timetable provides that the Bondholder Allocation Group is distinct from the allocation groups of the US, Canadian and EMEA Debtors and therefore has the right to make its own presentations to the Courts. However, in an effort to streamline the trial proceedings, the Core Parties agree that for purposes of this Proposed Joint Trial Protocol, the Bondholder Allocation Group shall be considered part of the US Allocation Group except (i) the Bondholder Allocation Group shall have the right to submit its own pre-trial and post-trial briefs and is entitled to its own allocation of time for opening statements and closing arguments (each not to exceed 15 minutes) and (ii) in the event of disagreement between them, either the Bondholder Allocation Group or the US Allocation Group shall have the right to petition the Courts, upon a showing of good cause, for additional time to allocate at trial for witness examinations specifically for the Bondholder Allocation Group. All other Core Parties' rights are reserved with respect to any such application by the Bondholder Allocation Group and/or the US Allocation Group.

[2]      All deadlines are to be considered to be no later than 8:30 p.m. Eastern time unless otherwise indicated.

[3]      "Claims" means the Canadian EMEA Claims and Canadian UKPC Claims as both terms are defined in the Allocation Protocol.

[4]      The Core Parties will meet and confer to discuss mutually acceptable limitations on the affidavits and those matters set out in Section II.C.4 herein with a view to submitting a joint proposal or competing proposals no later than February 28, 2014 and, subject to the availability of the Courts, with any unresolved issues to be determined by the Courts at a subsequent pre-trial conference to be convened no later than March 14, 2014.

[5]      "Claims Party" or "Claims Parties" refers to the Canadian Claims Defendant Group, the EMEA Claimants, and the UK Pension Claimants.

submitted only from witnesses who submit initial affidavits.

**B.    Deposition Designations**

1.    Deposition testimony may be submitted by any Core Party of any witness, except that deposition testimony (other than counter-designations for completeness) shall not be submitted by any Core Party of any witness from whom its Allocation Group is submitting an affidavit except that the EMEA Claimants and the UK Pension Claimants, as the case may be, may submit deposition testimony of a witness whose affidavit is submitted by the other of the EMEA Claimants and UK Pension Claimants solely with respect to their Claims.[6]

2.    Fact witness designations

a)    Initial designations shall be due by April 11, 2014.

b)    Objections to initial designations and counter-designations necessary for completeness, as well as initial supplemental designations specifically responsive to affidavit testimony, shall be due by April 25, 2014.

c)    Objections to counter-designations and initial supplemental designations, as well as final supplemental designations specifically responsive to reply affidavit testimony and counter-designations to initial supplemental designations, shall be due by April 29, 2014.

d)    Objections to final supplemental designations and counter-designations to initial supplemental designations, as well as counter-designations to final supplemental designations, shall be due by May 1, 2014.[7]

3.    Expert witness designations

a)    Designations for expert testimony shall be due April 17, 2014.

b)    Objections and counter-designations for expert testimony shall be due by April 25, 2014.

c)    Objections to counter-designations shall be due by April 30, 2014.

4.    Objections to deposition designations shall be made succinctly in writing and provided to the Courts with the final deposition designations for determination.   The time for determination of such objections will be subject to the discretion of the Courts.

---

[6]    In the event representative depositions take place, a Core Party may not offer the representative deposition testimony of any representative of itself or its Allocation Group (other than counter-designations for completeness).

[7]    Any objections to such further counter-designations shall be due by May 5, 2014 and shall result in the supplementation of the pre-trial orders.

5.    Any Core Party may seek leave of the Courts, for good cause shown, to permit the introduction at trial of deposition designations not included with the joint pre-trial orders/books. This provision shall not limit any Core Party's rights under Section II.C.8.

6.    Final deposition designations and objections shall be submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

C.    **Exhibit lists**

1.    The Core Parties shall exchange exhibit lists prior to their submission to the Courts, in accordance with the following schedule:[8]

a)    Initial exhibit designations shall be exchanged by April 11, 2014.

b)    Objections to exhibit designations and supplemental designations shall be exchanged by April 25, 2014.

(1)    Supplemental designations are intended to encompass a limited number of exhibits that were overlooked with initial designations or relate to another Allocation Group's or Claims Party's initial designations.

(2)    The Courts shall have the right to exclude supplemental exhibit designations if they believe that admission would be prejudicial to any Core Party or order any other relief.

c)    Objections to supplemental designations shall be due by April 30, 2014.

d)    Final exhibit lists and objections shall be submitted to the Courts by May 2, 2014 in connection with the joint pre-trial orders/books for Allocation and Claims for the judges as contemplated by Section I.H.

2.    Objections to exhibits shall be made succinctly in writing and provided to the Courts with the final exhibit lists for determinations.

a)    Barring objection, all exhibits shall be deemed admitted without having to be specifically moved into evidence at trial.

b)    No objection shall be made to the authenticity of any exhibit or to the lack of foundational testimony necessary for its admission into evidence unless a party has a specific good faith basis to believe that the proffering party could not have laid a proper foundation with an

---

[8]    The Core Parties contemplate that prior to the pre-trial conference scheduled for January 29, 2014, they will reach final agreement on a stipulation regarding representative depositions, which will incorporate certain additional phases in the exhibit list schedule set forth herein. In the event they do not reach such agreement, the Core Parties reserve their rights with respect to any necessary modification of the dates set forth in Sections I.C.1.b and I.I.

appropriate witness. The Core Parties reserve all rights to raise objections to the admissibility of documents to the extent they, in good faith, believe that necessary foundational testimony could not have been obtained, or as otherwise appropriate under the applicable laws or rules of evidence for reasons other than authenticity and foundation.[9]  So long as notice is provided in accordance with the timeline for objections to exhibits generally, such objections may be raised by either the objecting Core Party or the proffering Core Party with the Courts as part of the Pre-Trial Motions in the manner set out in Section I.I.

3.      Any Core Party may seek leave of the Courts to permit the introduction at trial of any document that has not been designated for inclusion by any Core Party in the trial exhibit book upon a showing of good cause. In determining whether good cause has been shown, the Courts may consider, among other factors, the timeliness of the disclosure of the proposed exhibit and the underlying reasons therefore.

4.      Following the exchange of exhibit lists, the Core Parties shall confer to compile for the Courts a single set of joint exhibits whose admissibility is uncontested, along with separate sets (one for each Allocation Group and one for each Claims Party) of objected-to exhibits.

5.      Where applicable, exhibits shall be given the same number as used at depositions. Where an exhibit was marked more than one time at a deposition, one number shall be used and the Core Parties shall seek to modify other transcripts submitted to the Courts to reflect the exhibit number to be used at trial. In addition to providing the exhibit number marked at depositions, the exhibits shall also include the as-produced Document ID numbers.

D.    **Expert reports (which shall be those previously served in accordance with the Litigation Timetable)**

1.      The Core Parties shall meet and confer in order to reach agreement by no later than April 4, 2014 on the number of experts (both foreign law and non-foreign law experts) each Group will be permitted to offer to testify live at trial, with the reports of its other experts being submitted without live examination.

a)      By April 11, 2014, each Allocation Group and each Claims Party shall identify those expert witnesses (non-foreign law experts and, to the extent agreement is not reached pursuant to Section 1.D.1.b below, foreign law experts) who will be testifying live and the location where they will be testifying.

b)      The Core Parties will work in good faith after the exchange of expert reports to try and reach an agreement that would allow for the

---

[9]      For the avoidance of doubt, except with respect to hearsay or other foundational objections dealt with pursuant to the foregoing, the Core Parties' rights to object to the admission of exhibits (or their weight) on other evidentiary grounds, such as improper opinion evidence, are preserved.

testimony of foreign law experts to be submitted without live testimony (through expert reports and deposition testimony). In the event that the Core Parties are unable to agree, a Core Party may designate foreign law experts to testify live at trial subject to the terms herein.

2.      The expert reports that a Core Party intends to rely upon may not be altered or supplemented after the expert has been deposed unless the expert is made available for re-deposition.

3.      In the event that a Core Party seeks to withdraw an expert, the Core Party shall provide notice in writing of its intention. If a Core Party withdraws an expert in writing prior to that expert's deposition, no other Core Party may refer to the report(s) of such an expert (including in any rebuttal report to the extent practicable) and there shall be no inference related to such expert having been withdrawn. If a Core Party withdraws an expert in writing after that expert's deposition, the other Core Parties may refer to the report(s) and/or designate portions of the deposition of such expert.

**E.    Statement of Agreed Facts**

1.      The Core Parties shall endeavor in good faith to prepare a statement of agreed facts.

**F.    Confidentiality and Protective Order**

1.      The Core Parties shall endeavor in good faith to negotiate a proposed confidentiality and protective order no later than March 31, 2014 and shall file such order (or their respective proposed versions if the Core Parties do not reach agreement) on or before April 11, 2014.

**G.    Pre-trial briefs**

1.      On May 2, 2014, the Core Parties shall serve and file pre-trial briefs. Core Parties who do not file a brief shall have until May 6, 2014 to file a joinder to the pre-trial brief of another Core Party.

2.      Pre-trial briefs on Claims and Allocation shall be separate.

**H.    Proposed pre-trial orders**

1.      The Core Parties shall jointly prepare a proposed pre-trial order on Allocation  and a separate proposed pre-trial order on the EMEA Claims and the UK Pension Claims and submit such pre-trial orders to the Courts on May 2, 2014 by noon Eastern time.  These orders shall contain:

a)      Any agreed upon written statement of facts;

b)      A list of all deposition designations (both fact witness designations and expert witness depositions), including the relevant excerpts, as well as all objections to any such testimony;

5

c)    A list of all exhibits designations, as well as all objections to any such exhibit designations;

d)    A single set of joint exhibits whose admissibility is uncontested, along with separate sets (one for Allocation and one for Claims) of objected-to exhibits;

e)    Copies of all fact witness affidavits of designated trial witnesses; and

f)    Copies of all expert reports.

I.    **Motions regarding matters that for good reason ought to be decided prior to trial ("Pre-Trial Motions")**

1.    Pre-Trial Motions shall be served and filed on April 17, 2014.

2.    Responses to Pre-Trial Motions shall be served and filed on April 25, 2014.

3.    Replies to Pre-Trial Motions shall be served and filed on May 2, 2014.

4.    Any Core Party may request, or oppose any request, to appear before the Courts to provide oral submissions.

II.    **Trial**

A.    **General**

1.    Total trial time is estimated at 120 hours (20 days of six hours each). The trial time shall be utilized for (i) opening statements and (ii) presentation of witnesses in the manner permitted hereunder.

2.    The US Allocation Group shall be entitled to [●] hours, the Canadian Allocation Group shall be entitled to [●] hours, the Canadian Claims Defendant Group shall be entitled to [●] hours, the EMEA Allocation Group shall be entitled to [●] hours, the EMEA Claimants shall be entitled to [●] hours, and UK Pension Claimants shall be entitled to [●] hours. The Core Parties defer until a future date (as set forth in Section II.C.4) a decision with respect to the foregoing allocation of time but agree that the time used by each Core Party shall be measured in a "chess clock" approach.[10]

---

[10]    The UK Pension Claimants intend to raise the issue as to whether the length of trial prescribed by the Courts applies only to the Allocation trial rather than Allocation and Claims resolution. In this respect, the UK Pension Claimants will submit that the length of the trial is inadequate to address Allocation and Claims in a just and fair manner. All other Core Parties reserve their rights to support or object to the position of the UK Pension Claimants.

Other Core Parties may have submissions about entitlement to separate time allocations and all rights are reserved in this regard.

1586

       a)      Each Allocation Group (and the Canadian Claims Defendant Group) shall have no restriction on how they wish to use or allocate their time allocations among members.

       b)      Any Core Party that is not part of an Allocation Group shall identify the Allocation Group with whom that Core Party is most closely aligned by April 14, 2014.

**B.**    **Opening Statements**

1.    Opening statements on Allocation shall be limited to [●] hours for each of the Allocation Groups, to be allocated among intra-Group members in whatever manner they see fit.[11]

       a)      Opening statements shall be in the following order:

           (1)     EMEA Allocation Group

           (2)     US Allocation Group

           (3)     Canadian Allocation Group

       b)      Each Core Party that is not part of an Allocation Group may present an opening statement immediately following the Allocation Group identified by that Core Party pursuant to Section II.A.2.b.  Such opening statement shall be no longer than 15 minutes.

2.    Opening statements on EMEA Claims and UK Pension Claims shall be limited to [●] hours for each of the Canadian Claims Defendant Group, the EMEA Claimants, and the UK Pension Claimants, to be allocated by intra-Group members in whatever manner they see fit.

       a)      Opening statements shall be in the following order:

           (1)     EMEA Claimants

           (2)     UK Pension Claimants

           (3)     Canadian Claims Defendant Group

**C.**    **Fact Witnesses**[12]

1.    No fact witness may testify who has not submitted an affidavit.

2.    Fact witnesses shall be called in the following order:

---

[11]    No single Core Party will use the entire time allotted to any Allocation Group or Claims Group for making opening or closing submissions without agreement of other members of its Allocation Group or Claims Group.

[12]    The rights of the Core Parties to examine and cross-examine are subject to the usual rules governing cross examination with respect to parties who are not adverse in interest, and are to be exercised in light of the expectation that direct evidence is to be disclosed in pre-filed affidavits.

    a)      Canadian Allocation Group and Canadian Claims Defendant Group

    b)      US Allocation Group

    c)      EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

3.      The examination of witnesses shall be in the following order (with the proffering Group determining the order of its witnesses):

    a)      For Canadian Allocation Group and Canadian Claims Defendant Group witnesses:

        (1)     Canadian Allocation Group and Canadian Claims Defendant Group

        (2)     US Allocation Group  (on Allocation only)

        (3)     EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

    b)      For US Allocation Group witnesses:

        (1)     US Allocation Group

        (2)     EMEA Allocation Group

        (3)     Canadian Allocation Group

    c)      For EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants witnesses:

        (1)     EMEA Allocation Group, EMEA Claimants, and UK Pension Claimants

        (2)     Canadian Allocation Group and Canadian Claims Defendant Group

        (3)     US Allocation Group  (on Allocation only)

4.      Re-direct and re-cross examinations shall be limited in scope to the preceding examinations since that Allocation Group or Claims Party last examined the witness and shall be conducted in the same order as the initial examinations.

5.      The Core Parties shall meet and confer in order to submit proposals to the Courts with respect to the trial schedule including (i) the time permitted for opening statements, and (ii) the division of trial time among the various Allocation Groups and/or Claims Parties.  An agreed-upon proposal, or separate proposals in the event the Core Parties fail to reach agreement, shall be submitted

to the Courts no later than February 28, 2014 so as to enable the Courts to adjudicate any disagreement at a pre-trial conference to be held no later than March 14, 2014, subject to the availability of the Courts.[13]

6.    Affidavits from fact witnesses shall serve as direct testimony; however, Core Parties shall be permitted to conduct an initial direct examination of up to 30 minutes consistent with the witness's affidavit or as appropriate to respond to the testimony of another witness, with such time being charged against the proffering Allocation Group's or Claims Party's time allocation.

7.    Core Parties that do not belong to any Allocation Group may cross-examine witnesses in conjunction with the Allocation Group identified by that Core Party pursuant to Section II.A.2.b, provided that such Core Parties shall coordinate their efforts with the members of the Allocation Group identified by that Core Party pursuant to Section II.A.2.b to the extent practicable.

8.    Fact witnesses shall only be called to testify once.  Two business days following the completion of all fact witness testimony, the Core Parties shall have the opportunity to submit additional deposition designations solely as necessary to rebut testimony of a fact witness of another Allocation Group or Claims Party (with the Core Party that proffered such fact witness(es) having the right to submit two business days later objections as well as counter-designations necessary for completeness).  A Core Party may not designate additional deposition testimony of a testifying witness without having first put the deposition testimony to the witness at trial.

   a)    If challenged, the Core Party seeking to offer such supplemental deposition designations shall be required to identify the specific testimony to which each designation relates

**D.    Expert Witnesses[14]**

1.    The number of all expert witnesses (both non-foreign law and foreign law, unless an agreement has been reach that no foreign law experts need to appear at trial) to testify at trial will be chosen by each Allocation Group and Claims Party and disclosed to the other Core Parties no later than April 4, 2014, with the remaining experts testifying through written reports and deposition testimony.[15] Each other Allocation Groups or Claims Parties shall have the right to request the live appearance and cross examination of additional expert witnesses from the other Allocation Groups or Claims Parties.

---

[13]    The proposal(s) can be either for a specific allocation of time or principles by which time would be allocated.  The allocation of any trial time to Core Parties who are not part of an Allocation Group shall be taken pro rata from all Allocation Groups.

[14]    The rights of the Core Parties to examine and cross-examine are subject to the usual rules governing cross examination with respect to parties who are not adverse in interest, and are to be exercised in light of the expectation that direct evidence is to be disclosed in pre-filed expert reports.

[15]    Subject to ability to call additional rebuttal expert witnesses.

a)     Deposition testimony may be submitted by the other Allocation Groups or Claims Parties without restriction with respect to any experts. Deposition testimony may not be offered (except proper counter-designations) by any Allocation Group or Claims Party with respect to its own expert witness it is calling as a live witness.

2.     Expert trial witnesses for Allocation and Claims shall be disclosed on April 11, 2014.

3.     Expert witnesses whose evidence is solely in respect of Allocation or a combination of Allocation and Claims ("Allocation Experts") shall be called in the following order after the examination of all fact witnesses:

a)     EMEA Allocation Group

b)     Canadian Allocation Group

c)     US Allocation Group

4.     The examination of Allocation Experts shall be in the following order (with the proffering Allocation Group determining the order of its witnesses):

a)     For EMEA Allocation Group witnesses

(1)     EMEA Allocation Group

(2)     Canadian Allocation Group

(3)     US Allocation Group

b)     For Canadian Allocation Group witnesses:

(1)     Canadian Allocation Group

(2)     US Allocation Group

(3)     EMEA Allocation Group

c)     For US Allocation Group witnesses

(1)     US Allocation Group

(2)     EMEA Allocation Group

(3)     Canadian Allocation Group

5.     Expert witnesses whose evidence is only in respect of Claims ("Claims Experts") shall be called in the following order after the examination of all

Allocation expert witnesses:[16]

    a)    EMEA Claimants

    b)    UK Pension Claimants

    c)    Canadian Claims Defendant Group

6.    The examination of Claims Experts shall be in the following order (with the proffering Claims Party determining the order of its witnesses):

    a)    For EMEA Claimants witnesses:

        (1)    EMEA Claimants

        (2)    Canadian Claims Defendant Group

    b)    For UK Pension Claimants witnesses:

        (1)    UK Pension Claimants

        (2)    Canadian Claims Defendant Group

    c)    For Canadian Claims Defendant Group witnesses:

        (1)    Canadian Claims Defendant Group

        (2)    EMEA Claimants

        (3)    UK Pension Claimants

7.    Re-direct and re-cross examinations shall be limited in scope to the preceding examinations since that Allocation Group or Claims Party last examined the witness and shall be conducted in the same order as the initial examinations.

8.    Core Parties that do not belong to any Allocation Group may cross-examine expert witnesses in conjunction with the Allocation Group identified by that Core Party pursuant to Section II.A.2.b, provided that such Core Parties shall coordinate their efforts with the members of the Allocation Group identified by that Core Party pursuant to Section II.A.2.b to the extent practicable.

9.    Expert reports and rebuttal reports shall serve as direct testimony; however, Core Parties shall be permitted to conduct initial direct examinations (without time restriction) consistent with the expert's reports, with such time being charged against the proffering Allocation Group's or Claims Party's time allocation.

---

[16]    For greater certainty, the UK Pension Claimants shall not be entitled to conduct an examination of EMEA Claimants' Claims Experts, and the EMEA Claimants shall not be entitled to conduct an examination of the UK Pension Claimants' Claims Experts.

E.    The evidentiary record shall be closed simultaneously for all Core Parties at the conclusion of trial.

## III.    Post-Trial

### A.    Written Submissions

1.    Opening post-hearing memoranda on Allocation and opening post-hearing memoranda on Claims will be filed separately.

    a)    Each opening post-hearing memoranda shall be submitted four weeks after the last day of trial.  Core Parties shall have two additional business days to file a joinder to the post-hearing memoranda of another Core Party.

2.    Responsive post-hearing memoranda on Allocation and responsive post-hearing memoranda on Claims will be filed separately.

    a)    Responsive post-hearing memoranda shall be submitted three weeks after the opening post-hearing memoranda.  Core Parties shall have two additional business days to file a joinder to the responsive post-hearing memoranda of another Core Party.

### B.    Closing Arguments

1.    On [dates] [2 consecutive days], closing arguments on Allocation shall be heard.  On [date(s)], closing arguments on the EMEA Claims and UK Pension Claims shall be heard.

2.    Closing arguments on Allocation shall be limited to [●] hours for each of the Canadian Allocation Group, EMEA Allocation Group, and US Allocation Group, to be allocated by intra-Group members in whatever manner they see fit.  This time shall not be charged against the trial time allocations set forth above.

    a)    Closing arguments on Allocation shall be in the following order:

        (1)    Canadian Allocation Group

        (2)    EMEA Allocation Group

        (3)    US Allocation Group

    b)    Each Core Party that is not part of an Allocation Group may present a closing argument immediately following the Allocation Group identified by that Core Party pursuant to Section II.A.2.b.  Such closing argument shall be no longer than 15 minutes.  A Core Party is not obligated to present a closing argument.

    c)    Allocation Groups may reserve up to 1/3 of their time for closing arguments for a single round of rebuttal arguments in the same order as

initial closing arguments.

3.    The available time for closing arguments on EMEA Claims will be limited to [●] hours for the EMEA Claimants and [●] hours for the Canadian Claims Defendant Group, to be allocated among Group members in whatever manner they see fit.

a)    Closing arguments on the EMEA Claims Dispute shall be in the following order:

(1)    EMEA Claimants

(2)    Canadian Claims Defendant Group

b)    The EMEA Claimants may reserve up to 1/3 of their time of closing argument for a rebuttal argument.

4.    The available time for closing arguments on the UK Pension Claims Dispute will be limited to [●] hours for the UK Pension Claimants and [●] hours for the Canadian Claims Defendant Group, to be allocated among Group members in whatever manner they see fit.

a)    Closing arguments on the UK Pension Claims Dispute shall be in the following order:

(1)    UK Pension Claimants

(2)    Canadian Claims Defendant Group

b)    The UK Pension Claimants may reserve up to 1/3 of their time for closing argument for a rebuttal argument.

## IV.    Trial Location

A.    Each Allocation Group and Claims Party shall be entitled to advance and prove its case in the location it chooses (*i.e.*, opening statement, oral evidence and closing argument).

B.    Witnesses shall testify in either Toronto or Wilmington at their election, provided notice of location is furnished at the time of the exchange of affidavits.

C.    Trial location in Toronto shall be _____.

D.    Trial location in Wilmington shall be _____.

E.    Miscellaneous

1.    When proceedings are occurring in Toronto, the US Court shall participate by live video link.

2.    When proceedings are occurring in Wilmington, the Canadian Court shall

13

participate by live video link.

3.      All arguments shall be presented live in the locations listed above. Witness examination may be presented in either court location and presented through video link to the other location.

4.      Each Allocation Group shall have at least one lawyer present in the courtroom participating by video link in order to ensure the smooth presentation of documentary evidence to the video linked judge.

5.      Counsel admitted in either the US Court or Canadian Court (including by *pro hac vice*) may appear and participate fully in the other courtroom as if admitted in that Court.

## V.    Miscellaneous

A.      The Core Parties hereby acknowledge the previous agreements and orders that bear on the Joint Trial, including but not limited to (i) the Cross-border Insolvency Protocol; (ii) the Cross-border Claims Protocol; (iii) the Discovery Plan; and (iv) the Deposition Protocol and amendments thereto. The Core Parties stipulate and agree that to the extent these agreements are inconsistent with this Joint Trial Protocol, the Joint Trial Protocol shall govern.

B.      The Courts shall have the right to modify this Joint Trial Protocol at their discretion for good cause so long as they conclude that such modification is not unduly prejudicial to any Core Party.

C.      In the event any of the Core Parties elects to adopt an allocation position not contained in its pleadings, any other Core Party shall have the right to petition the Courts for a re-allocation of trial time and/or a re-ordering of the trial presentation. Nothing in this provision shall relieve any Core Party of any obligation to seek leave to amend its pleadings to the extent it is otherwise required to do so by law, or to impose any obligation to seek leave to amend its pleadings if it is not otherwise required to do so by law.

D.      Core Parties shall not be obligated to prove Canadian law to the US Court or US law to the Canadian Court as an issue of fact, but shall be entitled to argue the law of either jurisdiction in their pre-trial or post-hearing memoranda.

E.      Conduct of counsel at trial

1.      For efficiency, an examining attorney may approach a witness at any time without seeking permission from the Court.

2.      Counsel may conduct examinations or cross-examinations of a witness remotely or in person. Counsel may be present in both Courts.

3.      Counsel will conduct examination from a lectern.

4.      Any objection raised by one party shall be deemed reserved by all Core

14

Parties other than those in the Allocation Group against whom the objection is asserted.

5.      Counsel who will be conducting the examination (which shall be no more than one per Core Party for each witness[17]) and counsel who will be objecting during the examination will announce themselves at the beginning of the examination.  Two persons from each Allocation Group (from different Core Parties) shall be designated to make objections for each witness.

F.      Exhibits

1.      A master set of all documents and proposed exhibits listed on all Core Parties' evidence lists will be prepared for each court.  Four copies of these will be prepared in binders.  One copy will be provided for each judge and one copy will be provided for the witness in each courtroom.

2.      A master set of exhibits will also be prepared electronically for the Courts and distributed on CD to the Courts.  The Core Parties shall coordinate on the preparation of these master exhibits lists and delivery to the Courts.

3.      Demonstrative Exhibits

a)      Any Core Party shall be permitted to use either hard copy demonstratives, computer demonstratives, or a whiteboard if desired.

b)      A Core Party shall provide a copy of any demonstratives that it intends to use during a trial day no later than 7:00 p.m. the prior day (which can be a Sunday for demonstratives to be used on a Monday).

---

[17]      A Core Party may have a second examiner exclusively for Claims-related issues.

15

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C.
1985, c. C-36, AS AMENDED AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION
*et al.*

Court File No. 09-CL-7950

---

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
(Commercial List)

Proceeding commenced at Toronto

---

**Proposed Trial Protocol and Written Submissions of the Monitor and Canadian Debtors**

**Trial Protocol**

**(Pre-Trial Conference to be held on January 29, 2014)**

---

| | |
|---|---|
| **GOODMANS LLP**<br>Barristers & Solicitors<br>333 Bay Street, Suite 3400<br>Toronto, Canada  M5H 2S7 | **Gowling Lafleur Henderson LLP**<br>Barristers & Solicitors<br>1 First Canadian Place<br>100 King Street West, Suite 1600<br>Toronto, ON  M5X 1G5 |
| Jay A. Carfagnini  (LSUC #: 22293T)<br>Alan Mark (LSUC #: 21772U)<br>Jessica Kimmel (LSUC #: 32312W)<br>Peter Ruby (LSUC #: 38439P)<br>Joseph Pasquariello (LSUC #: 37389C) | Derrick Tay  (LSUC #: 21152A)<br>Jennifer Stam  (LSUC #: 46735J) |
| Tel:     416.979.2211<br>Fax:     416.979.1234 | Tel:  416.862.5697<br>Fax:  416.862.7661<br><br>**Lawyers for the Canadian Debtors** |
| **Lawyers for the Monitor, Ernst & Young Inc.** | |

6280791



February 5, 2014

**VIA HAND DELIVERED**

Jennifer Stam
Direct 416-862-5697
jennifer.stam@gowlings.com
File No. T991328

The Honourable Justice Geoffrey B. Morawetz
Ontario Superior Court of Justice
Judge's Administration
330 University Avenue, 7th Floor
Toronto, Ontario  M5G 1R7

Your Honour:

**Re:  Nortel Networks Corporation, et. al. (Court File No. 09-CL-7950): Pre-Trial Conference Held on January 29, 2014**

In connection with the pre-trial conference held on January 29, 2014 with the United States Bankruptcy Court for the District of Delaware (the "US Court") and as requested by this Court, enclosed is the pre-trial conference memorandum that has been agreed upon by the Core Parties.

We are also making arrangements for the memo to be filed with the US Court.

Sincerely,

GOWLING LAFLEUR HENDERSON LLP

Jennifer Stam

JS:kd

Encl.

TOR_LAW\ 8350281\1

File No. 09-CL-7950

**SUPERIOR COURT OF JUSTICE - ONTARIO**
**(COMMERCIAL LIST)**

RE:         IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

BEFORE:     MORAWETZ, RSJ.

COUNSEL:    A. Mark and J. Kimmel, for the Ernst & Young Inc., the Monitor

J. Stam, for Nortel Networks Corporation et. al.

S. Block and S. Bomhof, for the US Debtors

M. Gottlieb and T. Wynne, for the EMEA Debtors

M. Barrack, J. Finnigan, R. Lewis, for the UK Pension Claimants

M. Zigler and B. Walancik, for the Canadian Creditors Committee

R. Swan and G. Finlayson, for the ad hoc bondholders group

L. Barnes, for the former directors and officers of Nortel Networks Corporation and Nortel Networks Limited

S. Kukulowicz, for the unsecured creditors committee

J. Salmas, for Wilmington Trust, National Association

- 2 -

**HEARD:**    **January 29, 2014**

## PRE-TRIAL MANAGEMENT MEMORANDUM

At this jointly convened pre-trial conference which was conducted via teleconference with a parallel pre-trial conference being held in the United States Bankruptcy Court with His Honour, Judge Gross pursuant to the cross-border protocol which has previously been approved in both Courts. The Ontario and Delaware Courts approved the Joint Trial Protocol submitted by the parties, subject to the following directions and any corresponding adjustments to be incorporated into the final form to be attached to the approval orders in both jurisdictions (which may also include amendments arising out of the stipulations referred to in footnote #8):

1. In respect of the issue raised by the CCC, Justice Morawetz directed that the point will be addressed later and, following the presentations by the parties at pages 12-28 of the transcript, provided guidance as set out in the 1st paragraph of page 80 of the transcript, all of which is excerpted in Schedule A hereto.

2. In respect of the submissions and positions concerning the EMEA Debtors' and UK Pension Claimants' requests, the matters will proceed as a single trial commencing on May 12. The trial will generally address allocation issues (and issues that involves both allocation and claims) first, followed by issues related to Canadian Claims.

3. The 20 days allotted for trial are not set in stone. Additional trial time will be allocated with some time set aside to deal exclusively with the Canadian Claims of the EMEA Debtors and the UKPC. A request for up to 10 to 15 total additional trial days will be considered. The parties are to confer and advise the Courts of the specific number of trial days sought.

4. The next joint pre-trial conference will be held on March 12, 2014 at 1 pm.

## SCHEDULE A

Attached

12

1   obviously significant, the concerns that are expressed by the

2   EMEA Debtors and the UKP, but there's complete buy-in by the

3   parties that the framework that's established here in the

4   Trial Protocol is the appropriate framework and the Objectors

5   themselves don't disagree with that, which I'm quite pleased

6   to say.

7               I'll defer second to the EMEA Debtors and UKP

8   Claimants to talk about their issues since obviously it's

9   really more of a disagreement between them --

10              THE COURT:  Yes.

11              MR. ROSENTHAL:  -- and the Canadian Debtors now that

12  the U.S. Debtors have settled the claims here in the U.S.

13  Court.  But I just want to mention briefly, because I don't

14  think the Courts really need to dwell on the first Objection

15  which is that of the CCC, specifically to footnote one --

16              THE COURT:  Yes.

17              MR. ROSENTHAL:  -- and other than the first

18  sentence.  The first sentence deals with UKP and EMEA and,

19  after that, it deals with the Bondholders.  And I think, or at

20  least over the weekend when we were thinking about it at the

21  U.S. Debtors, we had conversations with the Bondholders and

22  we decided that, in many respects, it's a premature dispute

23  that we can resolve much more easily for the Courts right now

24  and agree to simply delete that entire passage of footnote

25  one, and we proposed that to the CCC yesterday and they can

1  speak for themselves.  But in our view, Your Honors, because

2  the parties have deferred until the late February meet-and-

3  confer and the March Conference that we're proposing for the

4  Courts, how the time between the parties would be allocated,

5  really, there's no need at this point to say how much time

6  specifically the CCC should get; how much time -- in some

7  respects, it may play out as being really an intra-Canadian

8  issue because there will be an allocation of time for the

9  Canadian group, you'll have that being divided up among its

10 members, and there's a footnote in here saying that one group

11 can't take all of the time allocated to it so, to make sure

12 that it's fair, I think the CCC, to my understanding, is that

13 they had asked that that footnote be put in.  It was put in.

14 You know, unless, of course, the members of the group all want

15 one party to take all of its time on a particular issue.  So

16 our suggestion is we could delete the rest of that footnote

17 one; we could defer the issue of whether the CCC feels that

18 they are not getting a fair amount of time out of the Canadian

19 allocation of time until the parties sit down and actually

20 talk about what the allocation of time should be.  And if

21 there's a disagreement or if they're unhappy about it, then

22 nobody's saying that any of their rights to go to the Courts

23 and say, you know, that there's some disagreement at that time,

24 nobody's saying that their rights are waived in that regard.

25 So that's our proposal.

14

1        THE COURT:  Okay.

2        MR. ROSENTHAL:  It takes that issue off the table

3    for today and I would just say that the only issue, therefore,

4    that the Court needs to really address would be the EMEA and

5    UKP concerns that they have expressed in their filings.

6        Obviously, I don't want to speak for the CCC and

7    I'm happy to turn over the microphone, whether it's here or

8    there to allow them to speak for themselves and I'll address

9    it at any point in time that the Courts would like, whether

10    the Courts have any comments at all on the Protocol.

11        THE COURT:  All right.  Thank you, Mr. Rosenthal.

12    It might -- yes, please.

13        MR. LEBLANC:  Good morning, Your Honor and --

14        THE COURT:  Good morning.

15        MR. LEBLANC:  -- and Mr. Justice Morawetz.  Andrew

16    Leblanc, at Milbank Tweed Hadley & McCloy, on behalf of the

17    Bondholder Group, and I just wanted to make one point.  I

18    completely agree with Mr. Rosenthal that this is an issue that

19    we can defer until later but there were comments made in the

20    submission of the CCC that I think are necessary for us to at

21    least address in some form or fashion.  I think it's important

22    for the Court to recognize that what's reflected in the Trial

23    Protocol is actually a concession by the Bondholder Group to

24    not get a separate allocation of time for the Bondholder Group

25    separately.  And what I mean by that, not because of where we

1  are situated today, but because the Trial Protocol that the

2  Courts entered in May of last year, May 17th, identified the

3  Bondholder Group as a separate allocation group.  So there was

4  the EMEA allocation group, the Canadian allocation group, the

5  U.S. allocation group, and recognizing the fact that the

6  Bondholders have claims against both Canada and the U.S. and,

7  therefore, are truly unique among the constituencies, that we

8  were a separate allocation group, a core party, who was in

9  their own allocation group.  We haven't, throughout the

10 process, and I think there hasn't been any suggestion that we

11 have, but throughout the process, we have not abused our

12 status as being a separate allocation group.  Quite to the

13 contrary, we've acted in accordance with the understanding

14 that was in place at the time.  We've acted in concert with

15 the parties with whom we share an interest.  So, at times, with

16 the Canadian Debtors, we've discussed with them their document

17 requests, and by doing so, we're able to make comments to

18 theirs instead of serving our own.  So we haven't abused the

19 fact that we're a separate allocation group, but we think by

20 right, by the fact that under the Trial Protocol that was

21 entered by this Court, we were a separate allocation group.

22 We could have demanded our own slot of time just like each of

23 the other allocation groups did because that is something that

24 this Court -- that these Courts ordered more than almost a year

25 ago now.  We didn't do that.  We made these concessions

16

1 | to be treated the same way as other core parties who are not

2 | part of an allocation group to identify the allocation group,

3 | to limit it to the three Estate allocation groups, and then to

4 | identify which of those allocation groups we are aligned with

5 | and be part of that and to defer until another date the

6 | allocation of time so that we can ensure ourselves just like

7 | the Unsecured Creditors Committee here in the United States,

8 | the UKP in -- with respect to the EMEA Estates.  We could

9 | assure ourselves a meaningful role at trial given what we would

10 | view as our unique and substantial economic interests in the

11 | matter, but at the same time not take a disparate advantage of

12 | the fact that we were identified as our own allocation group.

13 | So the compromises that are reflected in the Proposed Protocol

14 | are compromises literally that we made from the position that

15 | the Courts ordered almost a year ago now and that -- I think

16 | that's important to know.

17 | Now, with the discussion that Mr. Rosenthal just

18 | mentioned where we've agreed now to take out footnote one, in

19 | light of the rest of the language and the fact that these are

20 | issues that will be resolved in the coming weeks, we think it

21 | really should resolve the entirety of the issue.  But our

22 | understanding is that the omission of the offending language

23 | of footnote one wasn't an acceptable concession on our part

24 | and so we'll leave it to the CCC to state their position.  But

25 | I just wanted to make those points that we have been

1  recognized from the time that the IFSA was entered in this

2  case where we were given the right to consent to an agreement

3  on allocation of sales proceeds.  We've been recognized as a

4  group that has a very distinct economic interest in these

5  matters that isn't completely aligned economically with the

6  interests of any of the other Estates, and it's for those

7  reasons that these Courts have recognized that in the May

8  Protocol of last year.

9              THE COURT:  Yes.

10             MR. LEBLANC:  And as we said, we're not even asking

11  for any advantage as a result of that at this point in time.

12  Instead, we're trying to be cooperative with every party and

13  make this trial as efficient as possible in the limited period

14  of time that the Court's allowed for it.

15             So we would agree with Mr. Rosenthal that we think

16  this is an issue that we can deal with in the coming weeks.

17  If it becomes a problem, we can address it at that time.

18             THE COURT:  All right.

19             MR. LEBLANC:  Thank you, Your Honors.

20             THE COURT:  Thank you, Mr. Leblanc.  Mr. Adler,

21  good morning.  Good to see you again.

22             MR. ADLER:  Good morning.  Good to see you, Your

23  Honor, and Justice Morawetz as well.  It's Derek Adler, for

24  the Joint Administrators and the EMEA Debtors.

25             THE COURT:  Yes.

1        MR. ADLER:  As Mr. Rosenthal said, we support the

2   Trial Protocol.  We think it's a terrific outline for how

3   things should go.  It lays out a plan for dealing with both

4   allocation and claims in a very efficient way.  And we've

5   just made one request that doesn't affect the substance of

6   what's in the Trial Protocol and that concerns the treatment

7   of evidence and arguments that pertain specifically to

8   claims, the remaining claims that the EMEA Debtors have

9   asserted against the Canadian Estate and then there's a --

10       JUSTICE MORAWETZ:  Mr. Adler, I hesitate to

11   interrupt, but Judge Gross, does it make more sense to finish

12   off the issues relating to the CCC that have now been

13   introduced and in the Protocol what -- that have been

14   introduced by Mr. Rosenthal and by Mr. Leblanc?

15       THE COURT:  That's -- why don't we then?  Mr.

16   Adler, if you don't mind, we'll just --

17       MR. ADLER:  Thank you, Your Honor.  That's fine.

18       THE COURT:  All right.  We'll just interrupt your

19   presentation.

20       MR. ZIEGLER:  Your Honor?

21       MR. MARK:  So, Judge Gross, good morning.  It's

22   Alan Mark for the Canadian Monitor and Debtors in Toronto,

23   and just before I hand it over to Counsel for the CCC, just a

24   couple of notes about the Protocol.

25       Firstly, as alluded to by Mr. Rosenthal, the

1  parties expect this week to finalize a discovery stipulation

2  regarding the representative depositions and that will result

3  in some new dates and some new process with respect to the

4  pre-trial process.  So it's our expectation that the final

5  form of the Joint Trial Protocol that will be remitted to the

6  Court for approval will be slightly different, but we don't

7  expect those issues to be controversial, but rather, just to

8  reflect a further stipulation that the parties are going to

9  enter into.

10  Secondly, I just want to note, I don't want to

11  repeat anything Mr. Rosenthal says, but as Justice Gross

12  noted, the Protocol does provide, by and large, for the cases

13  in chief to be pre-filed, in writing, with the Court.  That

14  means that we have, in the Protocol, been somewhat

15  presumptuous in setting dates for when the parties' Briefs,

16  when the exhibit lists, when the Pre-Trial Affidavits and

17  expert reports will be provided to the Court.  And another

18  consequence of that front-end loaded process is that the

19  Protocol does provide the opportunity for pre-trial

20  Objections and possibly Motions to resolve some issues before

21  the trial begins.  So I just wanted to indicate that if the

22  Courts had any questions about that proposed schedule, we're

23  happy to address them, but I just wanted to make sure the

24  Courts were aware.

25  THE COURT:  Thank you, Mr. Mark.

1          MR. ZIEGLER:  Your Honor?  It's Mark -- and Judge

2    Gross, it's Mark Ziegler in Toronto speaking for the CCC, and

3    we have Counsel in Delaware as well, but I will respond to

4    the issues that were raised by Mr. Rosenthal and by the

5    Noteholders' Counsel, Mr. Leblanc.  I think we have to step

6    back to where we were last May, when my clients also sought a

7    separate discovery group.  That request at the time was

8    denied, without prejudice, to our seeking relief at a later

9    date, should we believe it is warranted, and that's in an

10   email that Judge Gross and Justice Morawetz sent to us on May

11   15th.  I can circulate copies if you like but I think everyone

12   is familiar with that.

13          What's happened since is pretty clear.  We have

14   three Estates and behind each of the Estates, three different

15   interest groups.  They break down essentially to the

16   Noteholder groups and Pensioner groups.  And the issue here

17   is not the removal of a footnote.  It's what's in the rest of

18   the Protocol as the default position once that footnote is

19   removed.  Because essentially, although there are three major

20   interests that could be addressed through the three main

21   Estates, there is reserve in this Protocol without footnote

22   one, and particularly, I am talking about the ability to make

23   oral submissions to the Court at the opening and at the

24   closing, and you can turn off the references that they're

25   essentially Section 1(B) on opening statements on page seven

1   and Section 3, all (B) on page 12 where it's everybody who's

2   not part of an allocation group has at least 15 minutes to

3   make opening submissions and closing submissions and this

4   isn't just about 15 minutes at each end.  It's about treating

5   all the Creditor interests equally.  If we all had to work

6   within three allocation groups, including the Noteholders,

7   that would be fine.  But we don't.  There is, in effect, a

8   fourth column that gets to make submissions while we are

9   restricted within an allocation group where we share time,

10  not just with the Canadian Debtors and the Monitor, but also

11  the Directors who have to defend claims.  This allocation

12  Protocol which you are being asked to approve today carves

13  out time as a default position for the Noteholders and the

14  Indenture Trustees of at least 15 minutes at the front end

15  and at least 15 minutes at the back end.  So it's a lovely

16  concession to take out footnote one, but if they don't tell

17  you what the default position is, you can see it's a bit of

18  slate of hands in my position.  All my clients ask is the

19  same 15-minute right and then at the back end so that they

20  don't get jammed within the allocation group.  We will do our

21  best to work within the allocation group, just as I'm sure

22  everybody else who is a party in interest will work within

23  the three allocation groups and the Noteholders have, in

24  effect, joined up with the U.S. group, which is fine.  We

25  have joined up with the Canadian group but there is one issue

1  where we differ.  We take one allocation position that is not

2  in common as an alternative position with the Monitor, that

3  being the pro-rata distribution, and it would be highly

4  prejudicial to my clients to have a Trial Protocol go forward

5  that doesn't carve out explicit time for them, yet does for

6  the parties who are most adverse in interest to them.  At

7  this stage, five years in, there are pensioner interests and

8  there are Noteholder interests.  What happened before the

9  filing; what happened at the IFSA almost doesn't matter in

10  the sense of, ultimately, this is about distributions to

11  Creditors and if that's the case, the three biggest Creditor

12  groups have got to have their time before the Court.  That's

13  all I've got to say for now.

14            JUSTICE MORAWETZ:  Thank you.

15            THE COURT:  Mr. Rosenthal, did you wish to

16  respond?

17            MR. ROSENTHAL:  Your Honor, just about one minute

18  is all I need to respond.  Just -- I just want to underscore

19  why we believe that this issue is premature.  We believe it's

20  premature for several reasons, one of which is that the

21  Canadian Monitor and Debtors support the Protocol as

22  submitted and they said, and it's reflected in the Protocol,

23  they're going to give time to the CCC.  If the CCC, after

24  February 28th when we make the next round of submissions

25  regarding allocations, thinks that they haven't gotten their

1  15 minutes or whatever amount of time that they think that
2  they want, and I agree that this is a broader issue they're
3  talking about and it really is about the trial generally, if
4  they have any complaints about how they're dividing up the
5  time with the Canadian group, that's the time that they could
6  raise it.  They say that -- by the way, it's not just the
7  Monitor and Debtors and the CCC, but you have Ds & Os as
8  well, it's actually not true.  The Canadian allocation group
9  does not include the Ds & Os.  They're only Claims Defendants
10 and the Protocol divides up the opening statements and
11 closing arguments for allocation and claims.  So when it
12 comes to the allocation opening, we contemplate the U.S. is
13 going to get a set amount of time.  We don't know what that
14 is going to be.  We'll give an opening and the UCC will give
15 an opening.  Canada will get a set amount of time and the
16 Monitor and Debtors will give an opening and the CCC will
17 give an opening.  The EMEA group will get a set amount of
18 time and we don't know what that is.  And EMEA Debtors and
19 the UKP will give an opening.  And if parties have multiple
20 theories or different theories from each other, yes, they may
21 need time to present those theories, and the other parties
22 will need a comparable amount of time to respond to the
23 ultimate theories.  But I think this is all going to be
24 something that's worked out over the next month as opposed to
25 saying today how this thing -- the CCC and the Canadian group

1   be.   And if Canada doesn't give the CCC their 15 minutes or

2   whatever, you'll hear it when we have the hearing in mid-

3   March, and therefore, we would suggest that either footnote

4   one stay in or come out.  Either way is fine with us.  But

5   that we ought to proceed and proceed to the next step and see

6   if there's any dispute that the Courts even need to resolve.

7               THE COURT:  Well, I haven't taken time to look,

8   but I assume that there's nothing in the Protocol, and I

9   don't remember seeing anything that would preclude the CCC

10  from making an opening and closing.

11              MR. ROSENTHAL:  Quite to the contrary, Your Honor.

12              THE COURT:  Right.

13              MR. ROSENTHAL:  There's a footnote.  I don't have

14  the footnote number handy.

15              THE COURT:  Right.

16              MR. ROSENTHAL:  But there is a footnote that

17  expressly says that without permission of the other parties

18  in their group, a party cannot take all of the time allocated

19  to it.  So, therefore, the CCC has a guaranty, and the

20  Canadian Debtors I believe have also assured them they'll get

21  time to deliver their opening.  So I think as to how much

22  that time should be, that's exactly what the next months'

23  worth of negotiations is all about.

24              THE COURT:  Okay.

25              MR. ROSENTHAL:  Thank you.

1          THE COURT:  Thank you, Mr. Rosenthal.  Justice

2   Morawetz, was there anyone in your Courtroom who wished to be

3   heard on this point?

4          JUSTICE MORAWETZ:  Anything further on this issue?

5   Mr. Swan.

6          MR. SWAN:  Yes, just briefly in reply on behalf of

7   the Bondholders.  Every single party here has agreed to the

8   Protocol on all of these issues with the exception of the

9   CCC.  They are the only party that's objecting.  The

10  fundamental distinction that's been identified is that in the

11  Litigation Timetable, the Bondholder group is a separate

12  allocation group.  The Bondholder group is, in effect,

13  compromising procedural rights by agreeing to this in the

14  form that it's in and as a recognition of that, footnote one

15  recognizes certain limited procedural rights guaranteeing the

16  right to make a 15-minute opening and 15-minute closing.  The

17  CCC --

18         JUSTICE MORAWETZ:  Well, is it a case that the

19  Bondholders are compromising a right or is it a case that

20  it's just being expanded for the CCC to have a right?  What

21  specific rights are the Bondholders compromised on?

22         MR. SWAN:  They're compromised on the right to

23  otherwise carry out independent examinations with separate

24  time allocated to them because they would be a separate

25  allocation group.  So the Bondholders could have asserted the

1  right as a full allocation group to have the same rights as

2  the Canadian allocation group and the U.S. allocation group.

3  They haven't done that.  They have agreed that with respect

4  to the other elements of the proceedings, that they will

5  shelter, so to speak, under the U.S. allocation group's time

6  allocation.  But with respect to this one issue, footnote one

7  recognizes that they will have an opening and a closing

8  right.  The CCC is in a different position because they are a

9  Creditor whose economic interest are perfectly aligned with

10  the Canadian allocation group in much the same way that the

11  UKPC does not have a separate defined time, separate and

12  apart from the EMEA allocation group.  Obviously, it won't

13  make an opening statement as part of EMEA allocation group,

14  but it doesn't have separate defined time, nor does the UCC,

15  separate and apart from the U.S. allocation group.  So

16  there's no reason why the CCC as a Creditor who is within an

17  allocation group should have a separate specified right that

18  is unique and elevated above any other Creditor who's part of

19  an allocation group.

20         UNKNOWN:  Your Honor, if I may reply to some new

21  arguments that have been raised?

22         JUSTICE MORAWETZ:  Briefly.

23         UNKNOWN:  I thought that footnote one was off the

24  table.  Now it's back on.  If it's back on, all we ask is the

25  same 15 minutes and the same rights to come back to the

1   Courts with the Bondholders.  This is about treating major

2   Creditors equally.  It's not about historical status that was

3   allocated before the allocation positions came out.  We all

4   want to work effectively.  We will work with the Canadian

5   allocation group.  The Noteholders have worked with the

6   American group, that's fine.  That's as it should be.  But if

7   we're going to have a carve out time for one group of

8   Creditors, there should be the same for the others.

9                THE COURT:  I used to think it was only in the

10  United States that lawyers could argue for 30 minutes over 15

11  minutes but it sounds like we share that with Canada.

12                     (Laughter)

13                MR. LEBLANC:  I'll just add how flattered we are

14  to think that we can be so influential in 15 minutes.

15                THE COURT:  Yes.

16                JUSTICE MORAWETZ:  No comment.

17                     (Laughter)

18                THE COURT:  I would suggest that, as part of the

19  spirit of compromise, we at least for the moment delete

20  without prejudice footnote one.

21                MR. LEBLANC:  And, Your Honor, we've already

22  offered that up.

23                THE COURT:  That's right.

24                MR. LEBLANC:  And we're happy to do -- this is

25  Andrew Leblanc, on behalf of the Noteholders.  We've offered

1  it and we're happy to do it.

2          THE COURT:  Thank you, Mr. Leblanc.  Justice

3  Morawetz and I will discuss that, of course, as part of our

4  discussion.  I should have said that.

5          MR. ROSENTHAL:  Just for clarification, Your

6  Honor --

7          THE COURT:  Except --

8          MR. ROSENTHAL:  -- obviously, the first sentence

9  relates to another issue.

10          THE COURT:  That's right.

11          MR. ROSENTHAL:  And it's the remainder that starts

12  with 'additionally'.

13          THE COURT:  Exactly.

14          MR. ROSENTHAL:  And I would -- footnote 11 is the

15  one that I didn't have the number at my fingertips before.

16          THE COURT:  Thank you.  Shall we now proceed with

17  the EMEA, CCC issue?

18          JUSTICE MORAWETZ:  Yes, back to I think it's Mr.

19  Adler.

20          THE COURT:  Mr. Adler had started, yes, and don't

21  hesitate to sort of re-start if you'd like, Mr. Adler, just

22  to get the flow.

23          MR. ADLER:  Thank you very much, Your Honor and

24  Justice Morawetz.  Again, it's Derek Adler, for the Joint

25  Administrators and the EMEA Debtors, and as I was saying, we

1  degree after this afternoon.

2          On the first point of, I guess Mr. Ziegler's

3  point with the CCC, that point will be addressed later.

4  However, I will assert that, certainly from my standpoint,

5  the Ontario Court would be most reluctant to foreclose that

6  party from having the opportunity to make the statements in

7  the form that Mr. Ziegler outlined.  We will look for the

8  parties to work together to see if some of the differences

9  can be narrowed, but that would be your dining principle.

10          On the second point, which was the one that was

11  the subject of the very lengthy submissions, and I don't

12  mean that in a negative way from Barrack and from Mr. Mark,

13  the -- it is one trial.  It will start with claim -- with

14  the allocation issues and the claim issues.  Realistically,

15  I think both Judge Gross and I are of the view that 20 days

16  is not something that is set in stone.  We will be looking

17  for these parties and you are now working I think in a much

18  more constructive and cooperative manner, to continue with

19  that; emphasize the word continue with that cooperation.

20  There will be additional trial time allocated.  Mr. Barrack,

21  I think you made a very valid point.  It's impossible to

22  state with certainty exactly how long this is going to take.

23  We will be looking for parties to work in the most, you

24  know, efficient and effective manner.  You know, it's not

25  going to surprise me if this is going to take an extra, you

1618

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | **TUESDAY, THE 11th DAY OF** |
| JUSTICE MORAWETZ | ) | **JUNE, 2013** |
| | ) | |
| | ) | |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

**APPLICATION** UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**
**(Protective Order)**

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited,

Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel

Networks International Corporation (collectively, the **"Canadian Debtors"**) jointly with Ernst &

Young Inc. in its capacity as monitor (the **"Monitor"**) of the Canadian Debtors for the relief set

out in the Notice of Motion dated June 5, 2013 was heard this day at 393 University Avenue,

Toronto, Ontario.

**ON READING** the Ninety-Fifth Report of the Monitor dated June 5, 2013 (the "**Ninety-**

**Fifth Report**") and on hearing submissions of counsel for the Canadian Debtors, the Monitor,

and those other parties present, no one appearing for any other person on the service list,

although served as appears from the Affidavit of Service of Jennifer Stam, sworn June 7, 2013, filed.

1.     **THIS COURT ORDERS** that the time for the service of the Notice of Motion, the Ninety-Fifth Report, and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.     **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the protective order in the form attached hereto as Schedule "A" (the "**Protective Order**").

3.     **THIS COURT ORDERS** that the Protective Order be and is hereby approved.

**MISCELLANEOUS**

4.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

5.    **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUN 1 1 2013

## SCHEDULE A

### Attached.

# **PROTECTIVE ORDER**

**1.    Application of this Protective Order.**

(a)    This Protective Order (the "Protective Order") shall govern the participation of any person, entity or group, including, but not limited to, the Canadian Debtors,[1] EMEA Debtors, US Debtors, Committee, Bondholder Group, Monitor, Joint Administrators, CCC, Indenture Trustees, UK Pension Claimants, and Officers and Directors  (the "Parties" and each a "Party") and the Parties' counsel (and, where a Party is a committee or group, counsel to each member), in discovery undertaken in connection with the litigation or arbitration (subject to any Party's right to oppose any request for arbitration on any grounds and/or to oppose the use of any Discovery Material, as defined below, in any such arbitration) of Allocation, the EMEA Claims, and the UK Pension Claims in the US and/or Canadian Court (collectively the "Proceedings"), notwithstanding anything to the contrary previously agreed to or ordered by the United States Bankruptcy Court for the District of Delaware (the "US Court") or the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" and, together with the US Court, the "Courts"), and subject to approval by both Courts.

(b)    This Protective Order shall govern the Proceedings with respect to the handling of documents, depositions, examinations for discovery, exhibits to depositions or examinations for discovery, affidavits, testimony and any other information produced, given or disclosed by any Party or any non-parties (in each case, a "Producing Party") to any other Party or non-party receiving or viewing such materials(in each case, "Receiving Party"), including through access to a shared dataroom (all such materials and the substance of such materials, hereinafter referred to as "Discovery Material").

**2.    Highly Confidential Discovery Material.**

(a)    Any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that "Highly Confidential" documents and information shall not include:

   (i)    information that is publicly available in substantially the same form in which it was provided;

   (ii)    information that was, is or becomes public knowledge, not in violation of this Protective Order;

   (iii)    information that is voluntarily de-designated by the Producing Party;

   (iv)    information that a Court order has de-designated;

   (v)    information rightfully acquired from an independent source without restrictions as to use; or

---

[1]       Capitalized terms not defined herein shall have the meaning given in the Allocation Protocol.

(vi)    information that is at any time independently developed by a Party without use of or reliance upon any Discovery Material.

(b)    Subject to these conditions and limitations, any Producing Party may designate as "Highly Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i)    personal information that requires the protections provided in this Protective Order, including, but not limited to, social security numbers, information about current or former employee compensation and/or benefits, health information and financial information;

(ii)   information required to be kept confidential pursuant to law or regulation; or

(iii)  information of a commercially sensitive nature subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party;

(all information designated as such, including the document itself as well as the information therein, the "Highly Confidential Discovery Material").

## 3.    Confidential Discovery Material.

(a)    Any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith meets any of the criteria below, provided that Confidential information shall not include any documents or information as set forth in Section 2(a) hereof.

(b)    Subject to these conditions and limitations, any Producing Party may designate as "Confidential" any Discovery Material, in whole or part, that the Producing Party reasonably believes in good faith contains or constitutes:

(i)    non-public proprietary information about a Party;

(ii)   non-public financial or accounting results or data;

(iii)  tax returns, any tax-related correspondence or agreements with any government, all workpapers, books and records relating to taxes, any tax opinions, records (including accounting records) relating to taxes paid or payable by the parties, all intercompany agreements related to taxes, and all financial and tax records relating to the estate that form part of a parties' general ledger or otherwise constitute accounting records, as well as drafts with respect to any of the foregoing;

(iv)   information subject to a non-disclosure agreement or similar agreement between any Producing Party and a third party; or

(v)    confidential communications offered in mediation or compromise negotiations, including, but not limited to, Discovery Material bearing a designation that it is subject to Federal Rule of Evidence 408;

(all documents or information designated as such, including the document itself as well as the information therein, the "Confidential Discovery Material").

## 4.    **Designation of Documents.**

(a)    A Producing Party may designate Discovery Material as Confidential Discovery Material by applying the legend "Confidential" to each page or portion containing any Confidential Discovery Material.

(b)    A Producing Party may designate Discovery Material as Highly Confidential Discovery Material by applying the legend "Highly Confidential" to each page or portion containing any Highly Confidential Discovery Material.

(c)    In the case of electronically produced information, the "Confidential" or "Highly Confidential" legend, if any, shall be printed on the cover or container of the disk, tape, or other medium in which the electronic form data is stored, and the "Confidential" or "Highly Confidential" legend shall be applied, by electronic means to each electronic document or other electronically stored information containing any Confidential or Highly Confidential Discovery Material, unless such electronic materials are produced in native format. If produced in native format, such materials will be produced without alteration along with a corresponding Bates-numbered slipsheet bearing the "Confidential" or "Highly Confidential" legend.

(d)    The failure to designate a document as "Confidential" or "Highly Confidential" does not constitute a waiver of such claim, and a Producing Party may so designate a document after such document has been produced in accordance with Section 10, with the effect that such document is subject thereafter to the protections of this Protective Order.

(e)    At the request of a Party (the "Requesting Party"), a Producing Party shall designate as Confidential or Highly Confidential Discovery Material containing information of the Requesting Party that the Requesting Party reasonably believes in good faith meets any of the criteria for such designation. With respect to Discovery Material designated as Confidential or Highly Confidential Discovery Material pursuant to request, the Requesting Party shall thereafter be deemed a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. The costs of providing new copies of such re-designated documents to each Receiving Party and/or a shared dataroom shall be borne by the Requesting Party, and the "Confidential" or "Highly Confidential" legend on such copies must clearly indicate the Party who requested the designation.

(f)    A Party may designate as Confidential or Highly Confidential Discovery Material produced by another Party pursuant to subsection (e), even if such Discovery Material has already been designated as Confidential or Highly Confidential. If more than one Party designates the same Discovery Material as Confidential or Highly Confidential, all such Parties shall be considered a Producing Party with respect to such Discovery Material and be treated as a Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order.

3

1625

For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

## 5.    Treatment of Highly Confidential Information.

(a)    Any information designated as Highly Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)    Provided that disclosure is not otherwise prohibited by this Protective Order, and subject to Section 7(d), a Receiving Party shall only disclose Highly Confidential Discovery Material to:

(i)    current employees, officers and directors of a Receiving Party who previously had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material;

(ii)    former employees of a Receiving Party who are currently retained by that Party as consultants or independent contractors who during their employment with the Receiving Party had rightful access to or knowledge of such Highly Confidential Discovery Material or other similar material provided that they comply with the requirements of Section 13 hereof;

(iii)    court-appointed Monitors, Trustees and Administrators and their respective staffs, and for the US Debtors, the employees of RLKS Executive Solutions LLC and the employees of Avidity Partners, LLC;

(iv)    outside or in-house counsel for the Parties or outside or in-house counsel for members of a committee or group (where a Party is a committee or group), and legal assistants, secretaries, staff or agents and consultants working with or for such counsel, but only to the extent that it is reasonably necessary to share Highly Confidential Discovery Material;

(v)    litigation support personnel, including outside copying, scanning and coding services and court reporters;

(vi)    persons expected to be deponents, trial witnesses or hearing witnesses in the Proceedings and counsel to such persons, provided that counsel providing the Highly Confidential Discovery Material has a good-faith basis for believing that such witnesses had prior, rightful access to or knowledge of the Highly Confidential Discovery Material, and provided that counsel ascertain as soon as practicable whether such witnesses had such access or knowledge, and provided that upon the first indication that such witnesses did not have such access or knowledge, counsel must immediately refrain from any further disclosure to such witnesses and procure the return or destruction of such Highly Confidential Discovery Material;

4

1626

(vii)    witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and/or party representatives designated for discovery examination pursuant to the Ontario Rule of Civil Procedure and/or alternative procedures agreed to by the Parties;

(viii)    any experts retained for the purpose of providing advice and assistance to outside counsel of record and/or giving evidence in the Proceedings, including their staff, provided that they comply with the requirements of Section 13 hereof;

(ix)    personnel of the Courts;

(x)    any other person upon written agreement of the Producing Party, provided that he or she complies with the requirements of Section 13 hereof;

(xi)    any other person upon order of the Court(s) and upon such conditions as may be imposed by the Court(s); and

(xii)    any other person, as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, subject to Section 9 of this Protective Order.

(c)    In addition to the foregoing, draft or final pleadings that cite to or quote Highly Confidential Discovery Material (but not any attachments thereto designated as Highly Confidential) may be shared with non-attorney representatives from each Party (or, where the Party is a committee or group, non-attorney representatives of each committee or group, who represent such member or group in committee or group matters), provided that they comply with the requirements of Section 13 hereof, but only to the extent that sharing such draft or final pleadings that cite to or quote Highly Confidential Discovery Material is necessary to render advice to or receive guidance or approval from the Party in the Proceedings.

(d)    Any Receiving Party may request leave of a Producing Party to show Highly Confidential Discovery Material to parties or persons expected to be examined for discovery, deponents, Party representatives and/or trial witnesses in the Proceedings by providing notice to the Producing Party of the Highly Confidential Discovery Material the Receiving Party seeks to use and the parties shall use their best efforts within five business days to determine whether such material may be disclosed by the Receiving Party to such persons while protecting the Producing Party's need for confidentiality, including, but not limited to, considering whether portions of such material can be redacted and re-evaluating whether such material must be protected as Highly Confidential. In the event the Producing Party and the Receiving Party cannot resolve an issue concerning the use of Highly Confidential Discovery Material, the matter may be presented to the Courts for resolution on an expedited basis.

(e)    Persons receiving Highly Confidential Discovery Material pursuant to this Section shall not copy or disclose such Highly Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

1627

(f)    Treatment of Highly Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

## 6.    Treatment of Confidential Information.

(a)    Any information designated as Confidential Discovery Material shall be maintained in confidence by each Receiving Party.

(b)    Provided that disclosure is not otherwise prohibited by this Protective Order and subject to Section 7(d), a Receiving Party shall only disclose Confidential Discovery Material to:

   (i)    parties or persons to whom Highly Confidential Discovery Material may be disclosed as set forth in Section 5;

   (ii)   current employees, committee members of, officers, or directors of a Receiving Party (including current employees, officers or directors of members of a committee or group that is a Party provided that they comply with the requirements of Section 13 hereof), provided that disclosure is reasonably necessary to the Proceedings;

   (iii)  former employees of a Receiving Party, provided that disclosure is reasonably necessary to the Proceedings and that they comply with the requirements of Section 13 hereof; or

   (iv)   persons expected to be deponents and/or trial witnesses in the Proceedings and counsel to such persons.

(c)    Persons receiving Confidential Discovery Material pursuant to this Section shall not copy or disclose such Confidential Discovery Material directly or indirectly to any other person other than in accordance with this Protective Order.

(d)    Treatment of Confidential Discovery Material by a Receiving Party in accordance with the provisions of this Protective Order shall not constitute an admission that such Discovery Material has been correctly designated, nor waive any objection to such designation.

## 7.    Permitted Purposes.

(a)    Confidential or Highly Confidential Discovery Material shall not be made public by any Party, shall be used only by persons permitted access to it per this Protective Order and shall be disclosed only to persons specified in this Protective Order.

(b)    All Discovery Material (except such materials publicly available in substantially the same form), whether or not designated as Confidential or Highly Confidential Discovery Material, shall be used by Receiving Parties solely in connection with the Proceedings (including appeals), and not in connection with any other litigation, judicial or regulatory proceeding or for any business, commercial, competitive, personal or other purpose except as required by law, regulation, government action, regulatory authority, organization of regulators, self-regulatory

6

authority or court order, provided, however, that this Protective Order shall not prohibit the UK Pension Claimants from complying with the Beddoe proceeding pending under U.K. law in the English High Court by disclosing Discovery Material to the Beddoe court and to counsel (including barristers and solicitors) for the representative beneficiary in those proceedings (provided that such counsel is informed of the terms of this Protective Order) for purposes of obtaining periodic directions from the Beddoe court with respect to the Proceedings, provided that the Discovery Material is filed under seal and not available as a matter of public record, and provided that such Discovery Material is disclosed to counsel for the representative beneficiary either by virtue of the disclosure to the Beddoe court or in the context of confidential discussions with such counsel.

(c)    Any summary, compilation, notes, memoranda, analysis or copy containing Confidential or Highly Confidential Discovery Material, and any electronic image or database containing Confidential or Highly Confidential Discovery Material shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, memoranda, analysis, copy, electronic image or database is derived.

(d)    This Protective Order has no effect upon, and shall not apply to, a Party's use of its own Confidential or Highly Confidential Discovery Material, including information designated as such under Section 4(e) and information that was, prior to disclosure, rightfully in the possession or knowledge of the Party, for any purpose.

(e)    This Protective Order shall not preclude any Party from showing any Confidential or Highly Confidential Discovery Material or disclosing information derived therefrom at a deposition or examination for discovery to any witness, provided that, other than the witness, only those persons who are authorized by the terms of this Agreement to receive the Confidential or Highly Confidential Discovery Material to be disclosed to the witness are present at relevant portions of the deposition and the procedures provided for in Section 12 are in place.

8.    **Court Filings.**

(a)    Confidential or Highly Confidential Discovery Material shall not be filed in the public record absent the consent of the Producing Party or an order of the Court(s) so permitting.

(b)    If a Party wishes to file or otherwise submit to the Court(s) any documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material, including, but not limited to, pleadings, memoranda, transcripts, and discovery responses, such Party may redact the Confidential or Highly Confidential Discovery Material. If the nature of the Highly Confidential Information makes redaction unreasonable or impossible, the Party may file the documents or exhibits containing or making reference to the content of Confidential or Highly Confidential Discovery Material under seal.

(c)    The entry of this Protective Order by the Courts shall be deemed an order authorizing the filing under seal of any Confidential or Highly Confidential Discovery Material and any other document citing, quoting, summarizing or otherwise reflecting information obtained from Confidential or Highly Confidential Discovery Material without any further order of either Court required.

7

(d)    This Protective Order shall not, by default, govern the use of Confidential or Highly Confidential Discovery Material at the trial. Instead, the Parties shall meet and confer in good faith, and seek instructions from the Court(s) as necessary, prior to the start of any trial in the Proceedings regarding the use of Confidential or Highly Confidential Discovery Material at such trial or hearing. The Parties reserve all rights with respect to trial procedures and the entry of this Protective Order shall be without prejudice to any position a Party may take in connection with the use of Confidential or Highly Confidential Discovery Material at the trial.

9.    **Compelled Disclosure.**

(a)    If a Receiving Party is subpoenaed in another action or proceeding, served with a document demand, or otherwise required or compelled by law, regulation, government action or other process (any of the foregoing, a "Demand") to produce Confidential or Highly Confidential Discovery Material, the Receiving Party shall, if legally permitted, (i) give prompt written notice by overnight delivery, fax or email the earlier of five (5) business days of receipt, or fourteen (14) days prior to the response date of such Demand to counsel for the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material, provided, however, that such notice shall be given as soon as practicable if the response date of the demand is within fourteen (14) business days of receipt by the Receiving Party; and (ii) refrain from producing any Confidential or Highly Confidential Discovery Material in response to such Demand until the earlier of receipt of written notice from the Producing Party that it does not object to production of the Confidential or Highly Discovery Material, or resolution of any objection asserted by the Producing Party either by agreement or by final order of the Court(s) with jurisdiction over the objection of the Producing Party.

(b)    The burden of opposing the enforcement of the Demand shall fall solely upon the Producing Party.

(c)    Should a Producing Party neither provide written notice to the Receiving Party that it does not object to production of the Confidential or Highly Discovery Material nor submit a timely objection seeking an order that the Demand not be complied with and serve such objection upon the Receiving Party prior to production pursuant to the Demand, the Receiving Party shall be permitted to produce documents responsive to the Demand on the Demand's response date.

(d)    Subject to the provisions of this Section, compliance by the Receiving Party with any order directing production pursuant to a Demand of any Confidential or Highly Confidential Discovery Material shall not constitute a violation of this Protective Order.

(e)    Nothing herein shall be construed as requiring the Receiving Party or anyone else covered by this Protective Order to challenge or appeal any order directing production of Confidential or Highly Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order.

(f)    The provisions of this Section shall apply to examinations conducted by bank or other regulators to which a Party may be subject, which may include examinations of Confidential or Highly Confidential Discovery Material received by any Party and its

8

1630

representatives. Any such disclosure shall be limited to such portions of the Confidential or Highly Confidential Discovery Material that the applicable Party's legal counsel advises is required under the subpoena, order or process, or request or demand by a regulatory authority, organization of regulators or self-regulatory authority received by that Party (each a "Regulator Demand"). With respect to Regulator Demands for Confidential or Highly Confidential Discovery Material, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of any such Regulator Demand before the disclosure of such Confidential or Highly Confidential Discovery Material to such regulator, if the applicable Party is entitled to do so and if practicable. Otherwise, the applicable Party will promptly inform the Producing Party who produced or designated the Confidential or Highly Confidential Discovery Material in writing of such Regulator Demand after the disclosure of any Confidential Information to regulator, if the applicable Party is entitled to do so. Nothing herein shall obligate any Party to prohibit or restrict any regulator's prompt access, in violation of any law, regulation, order or other obligation applicable to such Party, to documents or information in the custody, possession or control of such Party its representatives.

**10.    No Waiver.**

(a)    If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced should be designated as Confidential or Highly Confidential, the Producing Party may apprise the Receiving Parties in writing, and such designated Discovery Material will thereafter be treated as Confidential or Highly Confidential Discovery Material under the terms of this Protective Order, provided, however, that the Producing Party shall, at its cost, produce to each Receiving Party and/or to the shared dataroom substitute copies, bearing the legend "Confidential" or "Highly Confidential," of any such Discovery Material at which time the Receiving Party shall promptly return to the Producing Party or (at the election of the Receiving Party) destroy the previously produced copies of such substituted Discovery Material and shall have no right to access such substituted Discovery Material electronically.

(b)    This Protective Order shall not prevent any Party from applying to the Court(s) in writing and on notice to the Parties for relief from this Protective Order or from any provision(s) thereof, or from applying to the Court(s) in writing and on notice to the Parties for further or additional protective orders.

(c)    Producing or receiving Confidential or Highly Confidential Discovery Material or otherwise complying with the terms of this Protective Order shall not:

    (i)    prejudice in any way a Producing Party's rights to object to the authenticity or admissibility into evidence of any testimony or other evidence;

    (ii)    prejudice in any way the rights of the Parties to object to the production of documents that they consider not subject to discovery, or operate as an admission by any Party in the context of any other litigation or proceeding that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;

9

(iii)   prejudice in any way the rights of a Party to seek a determination by the Court(s) whether any Discovery Material should be treated as Confidential or Highly Confidential Discovery Material or subject to the terms of this Protective Order, provided that a Party seeking to challenge the designation of any Discovery Material as Confidential or Highly Confidential shall be obligated to meet and confer in good faith prior to seeking judicial resolution and follow the procedures provided in Section 11; or

(iv)   prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided herein with respect to any particular Discovery Material.

**11.   Objections to Designation.**

(a)   Any Party objecting to the designation of any particular Discovery Material or testimony as Confidential or Highly Confidential Discovery Material shall so inform the Producing Party, stating the grounds of the objection, and, unless provided otherwise by the discovery plan adopted by the Courts, they shall have seven (7) business days to attempt to resolve the objection, at the end of which the Party objecting to the designation may seek a ruling from the Court(s), on no less than three (3) business days' notice to the Producing Party, that such information should not be treated as Confidential or Highly Confidential Discovery Material, provided that no Confidential or Highly Confidential Discovery Material shall be filed in the public record or disclosed other than in accordance with the terms of this Protective Order prior to such a determination by the Court(s), and provided further that the burden shall be on the Producing Party to justify the claim that disputed material has been properly designated and is entitled to protection from disclosure.

(b)   Each Party hereby agrees that it will not contest a Party's request for expedited consideration of any relief sought from the Court(s) pursuant to this Section.

**12.   Use in Depositions / Examinations for Discovery.**

(a)   If Confidential or Highly Confidential Discovery Material is utilized in a deposition, including a deposition of a party representative, examination for discovery or other recorded testimony, the Producing Party of the Confidential or Highly Confidential Discovery Material ma y designate the portion of the transcript relating to the C onfidential or Highly Confidential Discovery Material as Confidential or Highly Confidential.

(b)   Any deponent or examinee for discovery or his or her counsel may designate all or part of the transcript of a deposition or examination for discovery as Highly Confidential or Confidential. Such deponent or examinee will be the Producing Party of the deposition or examination testimony for purposes of this Protective Order, except that testimony about Confidential or Highly Confidential Discovery Material for which the deponent or examinee is not a Producing Party shall also be deemed to have been produced by the Producing Party of the Confidential or Highly Confidential Discovery Material discussed.

10

(c)     Designation of all or part of a transcript as Highly Confidential or Confidential may be made on the record during the deposition or examination or may be made by giving written notice to the court reporter and counsel for all Parties within seven (7) business days after receiving the transcript from the court reporter.  All deposition or examination transcripts will be considered  Confidential for the first seven (7) business days after receiving the transcript from the court reporter, unless designated otherwise by agreement of the Parties, by the Producing Party of Confidential or Highly Confidential Discovery Material discussed therein and/or by the deponent or examinee, as the case may be.

(d)     The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition.

## 13.    Disclosure to Certain Firms and Individuals.

(a)     Prior to disclosure of Confidential or Highly Confidential Discovery Material pursuant to Sections 5(b)(ii), (viii) and (x) (including as incorporated by reference in Section 6(b)(i) hereof); 5(c) and 6(b)(ii) hereof, counsel for the Receiving Party shall provide a copy of this Protective Order to the person or the representative of the firm to whom disclosure is intended and such person or representative must execute a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

(b)     A Receiving Party shall not disclose any Confidential or Highly Confidential Discovery Material to any holder of, or the investment manager for holders of, debt securities issued and/or guaranteed by the Canadian Debtors, EMEA Debtors or US Debtors, or to any officers, employees, counsel, accountants, advisors or agents of the Receiving Party that might be involved in acquiring any assets of or trading in claims against (including debt securities issued by any of) the Canadian Debtors, EMEA Debtors or US Debtors, unless such person or the representative of the person or firm to whom disclosure is intended executes a Non-Disclosure Declaration in the form annexed as Exhibit A hereto prior to receiving any Confidential or Highly Confidential Discovery Material.

## 14.    Third-Party Beneficiaries.

Third parties that produce documents for use in the Proceedings, either voluntarily or pursuant to a subpoena or in response to discovery requests in connection with the Proceedings, are intended third-party beneficiaries of this Protective Order and shall have the right to designate materials as Confidential or Highly Confidential Discovery Material in accordance with the terms hereof and shall otherwise have the same rights and responsibilities as a Producing Party.

## 15.    Redaction of Personal Information.

(a)     Each Producing Party may redact from Discovery Material it produces, whether or not such Discovery Material are designated Confidential or Highly Confidential, such personal information (e.g., social security numbers, home addresses, bank account information) as the Producing Party deems appropriate, such as information required not to be disclosed by the data protection, privacy or similar laws of the Producing Party's jurisdiction.

11

(b)    If at any time a Producing Party determines or realizes that certain Discovery Material that it previously produced contains personal information to which a non-disclosure obligation applies, the Producing Party may apprise the Receiving Parties in writing. Promptly after receiving written notice of an inadvertent production of personal information, each Receiving Party shall return to the Producing Party or (at the election of the Receiving Party) destroy the Discovery Material as to which the claim of inadvertent production has been made and shall not use the inadvertently produced personal information for any purpose. The Producing Party shall, at its cost, provide each Receiving Party and/or the shared dataroom with substitute copies, bearing appropriate redactions, of any such Discovery Material.

(c)    Each Receiving Party retains the right to move for the disclosure of the redacted information.

## 16.    Survival.

(a)    The provisions of this Protective Order shall, absent written permission of the Producing Party or further order of the Court(s), continue to be binding throughout and after the conclusion of the Proceedings, including without limitation any appeals therefrom.

(b)    When any Party receives a notice from a court as to the release, unsealing or disposal of Confidential or Highly Confidential Discovery Material submitted by that Party, but designated Confidential or Highly Confidential by another Producing Party, the Party receiving the notice shall promptly send the notice to all Parties by overnight delivery, fax or email, so as to enable the Parties to take any actions they deem appropriate. The provisions of this Section may be waived only with the written consent of the Producing Party.

## 17.    Disposal of Confidential and Highly Confidential Discovery Material.

(a)    Within thirty (30) days after the time for appeal of an order, judgment, or decree finally disposing of or resolving the Proceedings has expired, all persons having received Confidential or Highly Confidential Discovery Material shall, at their own cost and expense, either return such material and all copies thereof (including summaries and excerpts) to counsel for the Producing Parties or (at the election of the Receiving Party) destroy all such Confidential or Highly Confidential Discovery Material and certify that fact to the Producing Parties. Documents that have been received electronically must be electronically deleted and deleted from "trash" files; provided, however, that to the extent that Confidential or Highly Confidential Discovery Material exists in whole or in part on computer backup tapes or other not readily accessible media used for disaster recovery purposes, information from such media does not need to be restored for purposes of destroying or returning Confidential or Highly Confidential Discovery Material, but such retained information shall continue to be treated in accordance with this Protective Order.

(b)    Notwithstanding the preceding paragraph, outside counsel for the Parties shall be entitled to retain court papers, deposition and court transcripts, and attorney work product that includes or summarizes Confidential Discovery Material or Highly Confidential Discovery Material provided that such outside counsel, and employees of such outside counsel, shall not disclose such court papers, deposition or trial transcripts, or attorney work product to any person

1634

except pursuant to court order or agreement with the Producing Party as to the Confidential Discovery Material or Highly Confidential Discovery Material at issue.

(c)     Notwithstanding anything herein to the contrary, the obligations of this Section shall not preclude any Party or its experts or consultants from complying with document retention policies imposed by applicable law, regulation, government action, regulatory authority, organization of regulators, self-regulatory authority or court order, provided that the Party, expert or consultant provides notice of its retention of the documents to the Producing Party.

## 18.     Privileged Documents.

(a)     Nothing in this Protective Order shall require disclosure of information that counsel contends is protected from disclosure by solicitor-client privilege, attorney-client privilege, work-product immunity, or any other applicable privilege, immunity or protection from disclosure under any applicable law (each a "Privilege" and, collectively, the "Privileges").

(b)     Consistent with Rule 502(d) of the United States Federal Rules of Evidence, if information subject to a claim of Privilege is produced, such production shall not constitute or be deemed a waiver of any claim of a Privilege that the Producing Party would otherwise be entitled to assert in the Proceedings or any other proceeding, either with respect to the produced Discovery Material or any other documents, communications, or information concerning the same subject matter. The production of information subject to a claim of Privilege is without prejudice to the right of a Producing Party to seek the return or destruction of any document as to which a claim of Privilege is later asserted.

(c)     If information subject to a claim of Privilege is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of a Privilege for such information or any other information that may be protected from disclosure by Privilege. If a Party has inadvertently or mistakenly produced a document or information that is subject to a good faith claim of Privilege, upon request by the Producing Party promptly after discovery of such inadvertent or mistaken production, the document for which a claim of inadvertent production is made shall be returned within three (3) business days of such request and all copies of that document that may have been made shall be destroyed to the extent reasonably practicable, and the Receiving Party shall not use such information for any purpose.

(d)     The Party returning such material may then file under seal a motion for an order compelling production of the material, but such motion shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent production, and such motion shall not quote from or attach such material. While the motion for an order compelling production is pending before the Court(s), the moving Party shall not maintain a copy of, quote from or otherwise use the material.

(e)     No public disclosure of the contents of the Discovery Material as to which the claim of Privilege has been made shall occur absent order of the Court(s).

13

1635

(f)    If, at trial, at a hearing, at a deposition, at an examination for discovery or on a motion, a Producing Party marks for identification or offers into evidence information subject to a claim of Privilege by the Producing Party, or proffers or elicits testimonial or other evidence that incorporates or relies on information subject to a claim of Privilege, that act shall be deemed to effect a waiver and forfeiture by the Producing Party of Privilege.  The preceding sentence shall not apply to (1) proceedings to determine whether the information is subject to a claim of Privilege,  or (2) information subject to a claim of Privilege that is marked for identification, offered into evidence, or incorporated in evidence proffered or elicited by a Party other than the Producing Party, or relied on by a witness proffered by a Party other than the Producing Party. By marking for identification or offering into evidence information subject to a claim of Privilege, the Producing Party shall not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter.

(g)    If information is subject to a claim of privilege ("Joint Privileged Information"), which appears on its face to be held by two or more Parties ("Joint Privilege"), a Party who claims the Joint Privilege shall not refuse to produce any such Joint Privileged Information to any other Party or Parties with whom the Joint Privilege is shared.  A Party who holds the Joint Privilege may produce Joint Privileged Information only to those other Parties with whom it shares the Joint Privilege and shall not produce such Joint Privileged Information to Parties that do not share in the Joint Privilege or to a shared dataroom.  If a Party who wishes to rely on Discovery Material containing Joint Privileged Information, such Party shall, without prejudice to its position on the claim of privilege, provide notice to the other Parties with whom it shares the Joint Privilege and such other Parties shall have seven days after receiving notice to seek a protective order from the Court(s) in writing and on notice to the Parties.  Absent an order from the Court(s) granting such protective order, the Party seeking to rely on Discovery Material containing Joint Privileged Information shall designate such Discovery Material as "Highly Confidential" and produce it to the other Parties and/or to a shared dataroom.  Disclosure to a shared dataroom or to persons permitted to view Highly Confidential Discovery Material under this Protective Order does not effect a waiver of privilege as to Parties other than the Producing Party subject to the foregoing sections.  The production of such Discovery Material containing Joint Privileged Information does not waive any Privilege with respect to undisclosed Discovery Material concerning the same subject matter as the Joint Privileged Information.

**19.    Effective Date and Enforceability.**

(a)    This Protective Order will become effective upon the date that it has been approved by both Courts (the "Effective Date").

(b)    Nothing in this Protective Order shall preclude any Party from seeking judicial relief, upon notice to the other Parties, with regard to any provision hereof.

(c)    No amendment or modification of this Protective Order shall be binding or enforceable unless in writing and signed by the Parties, or ordered by the Courts.

**20.    Allocation Dataroom Access**

(a)    Upon the Effective Date, all documents ("Allocation Dataroom Documents") in the electronic data site established to facilitate settlement discussions (the "Allocation

Dataroom") shall be deemed produced in the Proceedings pursuant to this Protective Order, and subject to its terms, including but not limited to the provisions of Section 18.

(b)    From and after the Effective Date, this Protective Order shall govern and shall supersede the provisions in prior confidentiality agreements with respect to Allocation Dataroom Documents, but only as to the Parties and any other persons or entities who are entitled to receive documents under this Protective Order (subject to any requirements herein, including, but not limited to, Section 13).

(c)    The Parties shall have twenty-one (21) days following the Effective Date to designate documents in the Allocation Dataroom as Highly Confidential Discovery Material. Any Party making such designation will be required to provide new documents with the Highly Confidential legend to replace existing or to otherwise bear the cost of the designation of such documents. Until such period expires, all Parties with access to the Allocation Dataroom will treat documents therein as Highly Confidential Discovery Material.

(d)    After the expiration of the 21-day period, a Party shall have the right at any time to designate such documents in the Allocation Dataroom as Highly Confidential in accordance with paragraph 10(a). Such documents will thereafter be treated as if they had been designated as Highly Confidential in the 21-day period after the Effective Date.

(e)    Notwithstanding anything to the contrary herein, all documents in the Allocation Dataroom shall be deemed Confidential upon the Effective Date and will be electronically stamped with the Confidential legend. Where it is evident from the Bates Stamp which Party supplied the document to the Allocation Dataroom, that Party will be deemed the Producing Party for purposes of Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. Absent such evidence, the document will be deemed produced by the US Debtors, Canadian Debtors and EMEA Debtors and all such Parties shall each be considered a Producing Party with respect to such documents and be treated as a Producing Party for purposes of Subsection (f) *infra*, and Sections 2(a)(iii), 5, 6, 8-12 and 15-17 of this Protective Order. For the avoidance of doubt, whenever consent of or notice to a Producing Party is required by this Protective Order, such consent or notice must be of or to all Parties treated as Producing Parties under this Section.

(f)    In the event any Party objects to the designation of specifically identified documents from the Allocation Dataroom, the Producing Party shall reconsider such designation and, within ten (10) days, either re-affirm the designation or such document(s) shall no longer be considered Confidential Discovery Material.

**21.    Intentional or Negligent Disclosure of Confidential or Highly Confidential Discovery Material.**

In the event of an alleged intentional or negligent disclosure of Highly Confidential Discovery Material or Confidential Discovery Material in violation of this Protective Order, the Parties shall first seek to resolve the alleged violation through prompt and reasonable discussion. In the event such efforts fail to promptly resolve the alleged violation, the Parties reserve the right to seek any available remedy from the Courts, including, *inter alia*, money damages, injunctive relief or any other relief as appropriate.

15

1637

22.    **Enforcement Pending Entry.**

The Parties agree to be bound by the terms of this Protective Order pending the entry of this Protective Order by the Courts, and any violation of its terms shall be subject to the same sanctions and penalties as if this Protective Order has been issued and entered by the Courts.

23.    **Jurisdiction.**

The US Court and the Canadian Court shall retain jurisdiction and venue for the purposes of any dispute arising out of or relating to this Protective Order. For the avoidance of doubt, the Parties' obligations remain ongoing, and such jurisdiction and venue is retained even to the extent this Protective Order is utilized in connection with any arbitration proceeding.

TOR_LAW\ 8173441\3

## EXHIBIT A

I, _____, declare under penalty of perjury, the

following:

I reside at _____ in the City of

_____ and State/Province of _____;

I have read the annexed Protective Order dated _____, 2013;

I am fully familiar with and agree to comply with and be bound by the provisions of that

Protective Order and consent and attorn to the jurisdiction of the United States Bankruptcy Court

for the District of Delaware and the Ontario Superior Court of Justice solely for the purpose of

enforcement of the provisions of the Confidentiality Protective Order and Protective Order. I

will not divulge any Discovery Material to persons other than those specifically authorized by

the Protective Order, and will take reasonable steps, including, but not limited to, establishing

information firewalls, to prevent the inadvertent disclosure of Discovery Material to any persons

not so authorized. I understand, in particular, that any Confidential or Highly Confidential

Discovery Material, and any copies, excerpts or summaries thereof, or materials containing

Confidential or Highly Confidential Discovery Material derived therefrom, as well as any

knowledge or information derived from any of these items, may be used only for the Proceedings

and may not be used to inform the purchase or sale of securities or for any other purpose,

including, without limitation, any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order may

result in legal action against me, such as for contempt of court or liability for monetary damages.


Dated: _____    Signature: _____

TOR_LAW\ 8173441\3

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
:GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-7950

**ONTARIO**
SUPERIOR COURT OF JUSTICE
Proceeding commenced at Toronto

**ORDER**
(Protective Order)

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

Derrick Tay (LSUC #: 21152A)
Jennifer Stam (LSUC #: 46735J)
Tel:   (416) 862-5697
Fax:   (416) 862-7661

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto ON  M5H 2S7

Jay A. Carfagnini (LSUC#: 22293T)
Jessica Kimmel (LSUC#: 32312W)
Peter Ruby (LSUC#: 38439P)
Joseph Pasquariello (LSUC#: 38390C)
Tel: 416.979.2211
Fax: 416.979.1234

TOR_LAW\ 8184095\1

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Case 09-10138-MFW Doc 13346-3 Filed 04/16/14 | Page 113 of 113

1640
Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at Toronto

**MOTION RECORD**
**(MOTION TO STRIKE EXPERT**
**REPORTS AND TESTIMONY OF**
**DANIEL R. BERESKIN QC**
**AND BRUCE W. STRATTON)**
**(returnable April 22, 2014)**

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

**Jay A. Carfagnini** LSUC#: 22293T
jcarfagnini@goodmans.ca
**Peter Ruby** LSUC#: 38439P
pruby@goodmans.ca
**Joseph Pasquariello** LSUC #: 38390C
jpasquariello@goodmans.ca
**Hannah Arthurs** LSUC#: 55337O
harthurs@goodmans.ca

Tel:    416.979.2211
Fax:    416.979.1234

Lawyers for the Monitor

**GOWLING LAFLEUR HENDERSON LLP**
Barristers & Solicitors
1 First Canadian Place,
100 King Street West, Suite 1600
Toronto ON M5X 1G5

**Derrick Tay (LSUC #: 21152A)**
derrick.tay@gowlings.com
**Jennifer Stam (LSUC #: 46735J)**
Jennifer.stam@gowlings.com

Tel:    (416) 862-5697
Fax:    (416) 862-7661

Lawyers for the Canadian Debtors