## EXHIBIT C

Court File No. 09-CL-7950

## ONTARIO
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

### FACTUM OF THE MONITOR AND THE CANADIAN DEBTORS

**(Motion to Strike Expert Reports and Testimony of Daniel R. Bereskin QC
and Bruce W. Stratton)
(returnable April 22, 2014)**

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini**  LSUC#: 22293T
jcarfagnini@goodmans.ca
**Peter Ruby**  LSUC#: 38439P
pruby@goodmans.ca
**Joseph Pasquariello**  LSUC#: 38390C
jpasquariello@goodmans.ca
**Hannah Arthurs**  LSUC#: 55337O
harthurs@goodmans.ca

Tel:    416.979.2211
Fax:    416.979.1234

Lawyers for the Monitor

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

**Derrick Tay**  LSUC#: 21152A
derrick.tay@gowlings.com
**Jennifer Stam**  LSUC#: 46735J
jennifer.stam@gowlings.com

Tel:    416.862.7525
Fax:    416.862.7661

Lawyers for the Canadian Debtors

**TO:  THE CORE PARTIES SERVICE LIST**

Court File No. 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**FACTUM OF THE MONITOR AND THE CANADIAN DEBTORS**

**(Motion to Strike Expert Reports and Testimony of Daniel R. Bereskin QC**
**and Bruce W. Stratton)**
**(returnable April 22, 2014)**

**PART I - INTRODUCTION**

1.      This motion is brought by Nortel Networks Corporation, Nortel Networks Limited, Nortel

Networks Technology Corporation, Nortel Networks Global Corporation, Nortel Networks

International Corporation and Nortel Networks Technology Corporation (collectively, the

"**Canadian Debtors**"), together with Ernst & Young Inc., in its capacity as monitor of the

Canadian Debtors (the "**Monitor**"), for an Order striking the expert reports of Daniel R. Bereskin

(the "**Bereskin Report**") and Bruce W. Stratton (the "**Stratton Report**"), as well as the transcripts

from their respective depositions, on the grounds that the Bereskin Report and the Stratton Report

are not admissible expert evidence under Ontario law and were served in breach of this Court's

scheduling orders with respect to the designation of experts and service of rebuttal expert reports.

2

2.      In the alternative, if the Bereskin Report and/or the Stratton Report are not struck, the Monitor and the Canadian Debtors seek leave to file the expert report of Sheldon Burshtein (the "**Burshtein Report**") in response to the Bereskin Report and/or the Stratton Report.

3.      A companion motion has been brought by the Monitor and the Canadian Debtors in the proceeding (the "**US Proceedings**") commenced in the United States Bankruptcy Court for the District of Delaware (the "**US Court**") for the same relief (the "**US Motion**"). The within motion and the US Motion are to be heard as a joint motion. In order to avoid duplicative materials and submissions, the Monitor and the Canadian Debtors respectfully request that this Court refer to the "*Motion of the Monitor and Canadian Debtors for entry of an Order Striking the Expert Reports and Testimony of Daniel R. Bereskin QC and Bruce W. Stratton or, in the alternative, granting leave to file the expert report of Sheldon Burshtein in rebuttal to the Reports of Daniel R. Bereskin QC and Bruce W. Stratton*" and the declaration of Jacob Pultman sworn April 11, 2014 (the "**US Motion**") and the declaration of Jacob Pultman sworn April 11, 2014 (including exhibits, the "**Pultman Declaration**" and together with the US Motion, the "**US Motion Materials**"). Copies of the US Motion and the Pultman Declaration are attached as Exhibits "1" and "2" to the Affidavit of Monique Allen sworn April 14, 2014 (the "**Allen Affidavit**") and filed in support of the within motion. The Monitor and the Canadian Debtors repeat and rely on the submissions made in the US Motion.

4.      In the event the result of the within motion and the US Motion differ, the Monitor and Canadian Debtors request directions from this Court concerning any differences that may then exist between the evidentiary record before this Court and the United States Bankruptcy Court for the District of Delaware (the "**US Court**").

**PART II - SUMMARY OF FACTS**

5.    The background of this proceeding relevant to the issues to be determined on this motion is fully set out in paragraphs 5-12, 19-21, 29 and 35-39 of the US Motion Materials. A summary of some of the key points is set out below.

6.    By Order dated January 14, 2009, this Court approved a Cross-Border Insolvency Protocol as amended pursuant to the third amended and restated initial order on January 29, 2009 (as amended, the "**Cross-Border Protocol**").[1] Paragraph 14 of the Cross-Border Protocol provides that: "Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court, such Court may, without limitation, hear expert evidence of such law or, subject to paragraph 15 herein, seek the written advice and direction of the other Court which advice may in the discretion of the receiving Court, be made available to parties in interest." The Cross-Border Protocol, including the amendment, has also been approved by the US Court.

> Fifth Amended and Restated Initial Order, Motion Record, Tab 3, p. 1488

7.    On May 16, 2013, the Monitor and the Canadian Debtors served their allocation position, which set out their core arguments relating to the allocation litigation and their interpretation of the Master Research and Development Agreement between certain Nortel entities (the "**MRDA**").

> Allocation Position of the Monitor and the Canadian Debtors, Motion Record, Tab 4

8.    On May 15, 2013, this Court made an Order regarding a litigation timetable and discovery plan (the "**Discovery Plan**"). The Discovery Plan provides that: "Responsive reports shall be

---

[1] The Initial Order has since been further amended and restated – the Cross Border Protocol has been approved in each instance.

limited to responding to issues on which an affirmative expert report has been proffered and shall not go beyond such issues."

> Discovery Plan, Motion Record, Tab 5, p. 1553

9.      By Order dated November 19, 2013 (the "**November 19 Order**"), this Court ordered that initial expert reports be exchanged by January 24, 2014 and that rebuttal expert reports be exchanged by February 28, 2014.

> November 19 Order, Motion Record, Tab 6, p. 1563, 1567

10.      Pursuant to the November 19 Order, on January 8, 2014, the US Debtors designated Mr. Bereskin, an Ontario lawyer, as an expert to "offer his expert opinion regarding intellectual property ownership and licensing."

> U.S. Debtors' Disclosure of Intended Expert Witnesses, submitted
> January 8, 2014 and dated January 8, 2013; Exhibit "L" to the
> Pultman Declaration (Exhibit "2" to the Allen Affidavit); Motion
> Record, Tab 2(L), p. 1331

11.      Pursuant to the November 19 Order, on January 8, 2014, the U.K. Pension Claimants designated Mr. Stratton, an Ontario lawyer, as an expert to "provide expert testimony to prove Canadian law to assist the United States Bankruptcy Court concerning, *inter alia*, the interpretation of intellectual property related agreements (such as the Master R&D Agreement as amended and modified) entered into by and among companies in the Nortel Group that are governed by the laws of the Province of Ontario."

> U.K. Pension Claimants' Disclosure of Intended Expert Witnesses
> dated January 8, 2014; Exhibit "M" to Pultman Declaration (Exhibit
> "2" to the Allen Affidavit); Motion Record, Tab 2(M), p.1337

12.    On January 24, 2014, the Monitor and the Canadian Debtors served the initial expert reports of Dr. Timothy Reichert, an economist (the "**Reichert Report**"), Mr. Mark Berenblut and Dr. Alan Cox, a valuator and economist respectively (the "**Berenblut/Cox Report**"), and Mr. Philip Green, a valuator (the "**Green Report**"), and the CCC served the initial expert report of Mr. Thomas Britven, a valuator (the "**Britven Report**"), among others.   The subject matter of the Reichert Report, the Berenblut/Cox Report, the Green Report and the Britven Report are described at paragraphs 13-18 of the US Motion Materials.

> Reichert Report, Berenblut/Cox Report, Green Report and Britven
> Report; Exhibits "D", "E", "F" and "G" to the Pultman Declaration
> (Exhibit "2" to the Allen Affidavit); Motion Record, Tabs 2(D),
> 2(E), 2(F) and 2(G)

13.    The US Debtors and U.K. Pension Claimants did not deliver any report from Bereskin or Stratton on January 24, 2014.

14.    On January 24, 2014, the Canadian Debtors and the Monitor, as well as the US Debtors, filed a proposed Joint Trial Protocol (the "**Joint Trial Protocol**") which this Court and the US Court approved subject to the directions and corresponding adjustments described in the Pre-Trial Management Memorandum.  The Joint Trial Protocol expressly provides that: "Core Parties shall not be obligated to prove Canadian law to the US Court or US law to the Canadian Court as an issue of fact, but shall be entitled to argue the law of either jurisdiction in their pre-trial or post-hearing memoranda."

> Proposed Trial Protocol and Written Submissions of the Canadian
> Debtors and Monitor dated January 24, 2014 and Pre-Trial
> Conference Memorandum dated January 29, 2014, Motion Record,
> Tabs 7 and 8

15.    The Bereskin Report and the Stratton Report were delivered by the US Debtors and the

U.K. Pension Claimants, respectively, on February 28, 2014, purportedly as rebuttal expert

reports.

> Bereskin Report and Stratton Report; Exhibits "A" and "B" to the
> Pultman Declaration (Exhibit "2" to the Allen Affidavit), Motion
> Record, Tabs 2(A) and 2(B)

16.    On March 24, 2014, counsel for the Monitor wrote to counsel for the US Debtors and U.K.

Pension Claimants and advised that the Bereskin and Stratton Reports were improper rebuttal

reports, both because of the opinions offered in the reports and the timing of the delivery of the

reports.  Counsel for the Monitor also advised that in order to mitigate against any delays if the

Bereskin and Stratton Reports were admitted by the Courts, the Monitor was serving the Burshtein

Report (Mr. Burshtein is an Ontario lawyer), in response to the Bereskin and Stratton Reports.  The

US Debtors and U.K. Pension Claimants were also advised that Mr. Burshtein was available to be

deposed on March 28 or April 1 to 4, 2014 or the week of April 7, 2014.

> Letter from Goodmans LLP to Cleary Gottlieb Steen & Hamilton
> and Thornton Grout Finnigan LLP dated March 24, 2014; Exhibit
> "H" to the Pultman Declaration (Exhibit "2" to the Allen Affidavit),
> Motion Record, Tab 2(H)

17.    On March 25, 2014, counsel for the U.K. Pension Claimants and the US Debtors responded

and objected to the delivery of the Burshstein Report.  Counsel for the U.K. Pension Claimants

also advised that:  "Mr. Stratton's report is submitted to provide expertise on Canadian law to the

US Bankruptcy Court."  Similarly, counsel for the US Debtors asserted that the Burshtein Report

"is inadmissible in Canada in any event, being a report on domestic Canadian law."  Counsel for

the Monitor responded a few days later, and reiterated their offer to allow Mr. Burshtein to be deposed.

> Letter from Torys LLP to Goodmans LLP dated March 25, 2014 and letter from Thornton Grout Finnigan LLP to Goodmans LLP dated March 25, 2014; Exhibits "N" and "P" to the Pultman Declaration (Exhibit "2" to the Allen Affidavit), Motion Record, Tabs 2(N) and 2(P)

> Letter from Goodmans LLP to the Core Parties Service List dated March 30, 2014; Exhibit "I" to the Pultman Declaration (Exhibit "2" to the Allen Affidavit), Motion Record, Tab 2(I)

18.    Neither the US Debtors nor the U.K. Pension Claimants chose to depose Mr. Burshtein.

19.    When Mr. Stratton was deposed, he testified that he understood opinions on Ontario law such as contained in his report are inadmissible in the Ontario Court and that he thought his report was for use in the US Court.

> Transcript from the deposition of Bruce W. Stratton held on April 4, 2014, p. 98, line 15 to p. 100, line 2, Motion Record, Tab 2(K), p.1296

20.    On April 11, 2014, the Monitor and Canadian Debtors filed a motion with the US Court requesting that the Bereskin Report and the Stratton Report be struck or, in the alternative, that the Monitor and the Canadian Debtors be granted leave to file the Burshtein Report.

> US Motion; Exhibit "1" to the Allen Affidavit, Motion Record, Tab 2, p.28

## PART III - STATEMENT OF ISSUES, LAW & AUTHORITIES

## (A)    THE STRATTON AND BERESKIN REPORTS ARE INADMISSIBLE

21.    The Stratton and Bereskin Reports are inadmissible because they:

8

(a)    do not meet the criteria for the admission of expert evidence; and

(b)    are not proper rebuttal.

(i)    *The Stratton and Bereskin Reports are not Admissible as Expert Evidence*

22.    Expert evidence is admissible only if relevant and necessary to assist the trier of fact.  To be necessary, an opinion must provide information that is likely to be outside a judge's experience and knowledge.  The Stratton and Bereskin Reports provide no such information.  They are consequently inadmissible.

> *R. v. Mohan,* [1994] 2 S.C.R. 9 at 20 ["*Mohan*"]

23.    The Stratton Report does not purport to be anything but an opinion on Ontario law.  Questions of domestic law are properly the subject of submissions by counsel and determination by the judge.  Opinion evidence on them is not necessary and will not be received.  During his deposition, Mr. Stratton stated that he was not aware of a dispute where evidence of a lawyer about the state of Ontario law would be admissible before an Ontario court.  He also stated that his understanding was that the purpose of his report was to provide evidence of Ontario law in a foreign court.

> Transcript from the deposition of Bruce W. Stratton held on April 4, 2014 at p. 14, lines 20-24; p. 98, line 15 to p. 100, line 2 and p. 100, line 20 to p. 101, line 17; Exhibit "K" to the Pultman Declaration (Exhibit "2" to the Allen Affidavit), Motion Record, Tab 2(K), p. 1275, 1296-1297

> *Sopinka, Lederman & Bryant: The Law of Evidence in Canada,* 3d ed. by Alan W. Bryant, Sidney N. Lederman and Michelle K. Fuerst (Markham, Ontario: LexisNexis Canada, 2009) at p. 832, para. 12.155 ["*Sopinka on Evidence*"]

*Walsh v. BDO Dunwoody LLP,* 2013 BCSC 1463 at paras. 67-69

24.     Mr. Bereskin purports to opine as to how a "sophisticated business person" would understand the scope of the licence rights granted under the MRDA.  However, to the extent Mr. Bereskin's report is an expert report at all, it too is a legal opinion: Mr. Bereskin first opines as to the interpretation of the MRDA, then goes on to discuss the advice he would have given a prospective purchaser of Nortel's intellectual property portfolio based on that interpretation of the MRDA.  Mr. Bereskin acknowledged during his deposition that he did not and could not distinguish between himself as a business advisor and as a lawyer.

> Transcript from the deposition of Daniel R. Bereskin, QC, held on March 27, 2014 ("**Bereskin Transcript**") at p. 59, l. 13 to p.64, l. 9; p. 66, l. 7-20; p. 67, l. 16 to p. 70, l. 12; Exhibit "J" to the Pultman Declaration (Exhibit "2" to the Allen Affidavit); Motion Record, Tab 2(J), pp. 1237-1240

25.     In any event, the scope of the rights granted under the MRDA is a legal issue for this Court to determine.  The criteria of relevance and necessity have been applied strictly to exclude expert evidence as to an ultimate issue, and should be here.

> *Mohan* at 24

26.     Judges are frequently called upon to determine the scope of the parties' rights under an agreement, and the applicable principles of contractual interpretation are set out in the jurisprudence.  The US Debtors' attempt to overcome this hurdle by presenting the Bereskin Report as engaging "the custom and practice in the field of licensing of intellectual property." However, Mr. Bereskin makes no reference to any industry standards or publications to ascribe meaning to the terms of the MRDA.  To the contrary, he acknowledges in his deposition that many licence agreements are "one-off" and that there is no "one size fits all"; for example, whether or

not know-how should be included in a licence agreement "depends on what the parties want." He

does not identify, let alone elucidate, any technical terminology or jargon. Rather, he opines based

on his analysis of the MRDA as a whole what "bundle of rights" "a sophisticated business person"

would understand to be granted to the License Participants under the MRDA.

> Bereskin Report at para. 34, Exhibit "A" to the Pultman Declaration
> (Exhibit "2" to the Allen Affidavit); Motion Record, Tab 2(A), p. 71

> Bereskin Transcript at p. 54, l. 7-14; p. 36, l. 11-16; Exhibit "J" to
> the Pultman Declaration (Exhibit "2" to the Allen Affidavit);
> Motion Record, Tab 2(J), pp. 1236, 1231

27.    But, as a leading Canadian author in the field of intellectual property has stated: "What

right is assigned or licensed is a matter of negotiation, and the ordinary principles of contract

interpretation apply to the result." The case law supports that statement. Contract interpretation,

of course, is a matter for the Court, and not for the experts. It has been described as a "core judicial

function." The Court needs no instruction in contract interpretation, or in the meaning of English

words.

> David Vaver, *Intellectual Property Law* (Toronto: Irwin Law, 2011)
> at 559

> *Gorgichuk Estate v. American Home Assurance Co.,* [1985] O.J.
> No. 1134 at para. 16 (Ont. H.C.J.); varied on other grounds [1988]
> O.J. No. 159 (C.A.)

> *Merck & Co. Inc. v. Apotex Inc.,* 2010 FC 1265, 2010 CarswellNat
> 5009 at paras. 47 to 49, aff'd 2011 FCA 363, 2011 CarswellNat
> 6152

28.    As the Alberta Court of Appeal found, overruling the trial judge's decision concerning a

contract for the construction of a tunnel under a railway track:

It is curious that some of the scientific and engineering witnesses gave opinions on the nature and types of construction contracts, *and on how to interpret certain clauses in this contract.* The trial judgment quotes some of that evidence, and seems to rely upon it. But these are legal matters which must be submitted to the court as argument. It is not a subject for evidence, or weighing of the qualifications of the person who submits it. The contract here contains very little jargon or technical matters, and is composed almost entirely of ordinary English. It is for the court itself to interpret that; even a professor of English should not testify on that point [citation omitted]. [Emphasis added.]

*Canadian National Railway Company v. Volker Stevin Contracting Ltd.,* 1991 CarswellAlta 8 (C.A.)

29.    This Court has previously declined to rely on evidence from a lawyer purporting to opine as a "reasonably sophisticated participant in an underwriting process" as to whether an engagement letter constituted a binding opinion. The Court found that determining this issue on the basis of the engagement letter and surrounding circumstances was not outside the experience and knowledge of a judge: it was commonplace for judges to consider whether parties had arrived a meeting of the minds to form a binding contract, and the tests for doing so were contained in the jurisprudence. The only issue on which the Court allowed the expert to testify was what would constitute "standard" "material adverse change" and "disaster out" clauses in the securities industry, as the parties had expressly agreed to include such "standard" clauses in the proposed contract.

*Stetson Oil & Gas Ltd. v. Stifel Nicolaus Canada Inc.,* 2013 ONSC 1300, [2013] O.J. No. 1058 at paras. 61-65, 67, 97 (S.C.J.)

30.    The subject of Mr. Bereskin's report is contract interpretation, if not plain common sense. Indeed, Mr. Bereskin acknowledged in his deposition that spelling out each party's rights under an agreement, though he described it as a "custom and practice," is in fact "pretty self-evident" and

12

"pretty basic common sense." He acknowledged that: "All I'm saying is what I believe is

self-evident, that you have to identify in the agreement what you are talking about" and that

"defining rights unclearly would not be a sensible custom and practice." These are not matters on

which the Court requires expert evidence.

> The purpose of eliciting expert opinion in the first place is to enable
> the trial judge to understand evidence within the peculiar field in
> which an issue arises. If the field is one of general knowledge or
> within ordinary human experience no expert testimony would be
> necessary at all.
>
> *Surrey Credit Union v. Wilson,* 1990 CarswellBC 94 at para. 23
> (S.C.)
>
> Bereskin Transcript at p. 27, l. 17 to p. 28, l. 13; p. 31, 1.21 to p .33,
> l. 14; p. 39, l. 9-15; p. 55, l. 5 to p. 58, l. 9, Exhibit "J" to the Pultman
> Declaration (Exhibit "2" to the Allen Affidavit); Motion Record,
> Tab 2(J), pp. 1229-1232, 1236-1237

### (ii)     *The Stratton and Bereskin Reports are not Proper Rebuttal Evidence*

31.     The Discovery Plan specifies that rebuttal "shall be limited to responding to issues on

which an affirmative expert report has been proffered and shall not go beyond such issues." The

Bereskin and Stratton Reports, however, do not respond to any new issues raised by the evidence

tendered. Rebuttal is permitted only regarding new matters which could not reasonably have been

anticipated. In this case, the Monitor and the Canadian Debtors' experts' reports did not purport to

opine on Ontario law, and their reliance, in their economic and valuation analyses, on assumptions

as to the interpretation of the MRDA which reflect the pleadings filed by the Canadian Debtors

almost a year ago is neither new nor impossible to anticipate. It provides no basis for the filing of

the Stratton Report and the Bereskin Report as "rebuttal" evidence.

13

Discovery Plan, Motion Record, Tab 5, p. 1553

*Sopinka on Evidence* at 1167, citing *Krause v. R.,* [1986] 2 S.C.R. 466

32.     In the event this Court determines not to strike the Stratton Report or the Bereskin Report, leave should be granted to file the Burshtein Report.

**(B)     THIS COURT'S GUIDANCE IS REQUIRED IN THE EVENT THE REPORTS ARE ADMISSIBLE BEFORE THE U.S. COURT**

33.     Should the U.S. Court determine that any of the legal expert reports are admissible in that Court as expert opinions on foreign law or on any other basis, the Monitor and the Canadian Debtors request this Court's guidance as to how to address a potentially different evidentiary record before this Court and the US Court.

**PART IV - FILING UNDER SEAL**

34.     Pursuant to paragraph 8(b) of the Protective Order dated June 11, 2013 (as amended, the **"Protective Order"**), parties are entitled to file documents or exhibits making reference to confidential or highly confidential materials (including pleadings, memoranda, transcripts and discovery responses) under seal without further order of the Court.

Protective Order, Motion Record, Tab 9, p. 1628

35.     The US Motion (Exhibit "1" to the Allen Affidavit) and Exhibits "A," "B," "C," "D," "E," "F," "G," "J," "K" and "O" to the Pultman Declaration (Exhibit "2" to the Allen Affidavit) are being filed under seal as they are currently designated Confidential or Highly Confidential in accordance with the Protective Order.

14

## PART V - ORDER REQUESTED

36.      The Monitor and the Canadian Debtors respectfully request an Order striking the Bereskin Report and the Stratton Report, as well as the transcripts from their respective depositions.  In the alternative, the Moving Parties seek leave to file the Burshtein Report in response to the Bereskin Report and/or the Stratton Report and directions from this Court regarding different evidentiary records before this Court and the US Court.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 14th day of April, 2014.

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini**  LSUC#: 22293T
jcarfagnini@goodmans.ca
**Peter Ruby**  LSUC#: 38439P
pruby@goodmans.ca
**Joseph Pasquariello** LSUC#: 38390C
jpasquariello@goodmans.ca
**Hannah Arthurs**  LSUC#: 55337O
harthurs@goodmans.ca

Tel:    416.979.2211
Fax:    416.979.1234

Lawyers for the Monitor

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

**Derrick Tay**  LSUC#: 21152A
derrick.tay@gowlings.com
**Jennifer Stam**  LSUC#: 46735J
jennifer.stam@gowlings.com

Tel:    416.862.7525
Fax:    416.862.7661

Lawyers for the Canadian Debtors

## SCHEDULE "A"

## LIST OF AUTHORITIES

1. *R. v. Mohan,* [1994] 2 S.C.R. 9

2. *Sopinka, Lederman & Bryant: The Law of Evidence in Canada,* 3d ed. by Alan W. Bryant, Sidney N. Lederman and Michelle K. Fuerst (Markham, Ontario: LexisNexis Canada, 2009)

3. *Walsh v. BDO Dunwoody LLP,* 2013 BCSC 1463

4. David Vaver, *Intellectual Property Law* (Toronto: Irwin Law, 2011)

5. *Gorgichuk Estate v. American Home Assurance Co.,* [1985] O.J. No. 1134 (Ont. H.C.J.); varied on other grounds [1988] O.J. No. 159

6. *Merck & Co. Inc. v. Apotex Inc.,* 2010 FC 1265, 2010 CarswellNat 5009, aff'd 2011 FCA 363, 2011 CarswellNat 6152

7. *Canadian National Railway Company v. Volker Stevin Contracting Ltd.,* 1991 CarswellAlta 8 (C.A.)

8. *Stetson Oil & Gas Ltd. v. Stifel Nicolaus Canada Inc.,* 2013 ONSC 1300, [2013] O.J. No. 1058 (S.C.J.)

9. *Surrey Credit Union v. Wilson,* 1990 CarswellBC 94 (S.C.)

## SCHEDULE "B"

## TEXT OF STATUTES, REGULATIONS & BY - LAWS

1.    None.

Court File No. 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding Commenced at Toronto

**FACTUM**

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Jay A. Carfagnini** LSUC# 22293T
jcarfagnini@goodmans.ca
**Peter Ruby** LSUC# 38439P
pruby@goodmans.ca
**Joseph Pasquariello** LSUC #: 38390C
jpasquariello@goodmans.ca
**Hannah Arthurs** LSUC#: 55337O
harthurs@goodmans.ca

Tel:    416.979.2211
Fax:    416.979.1234

Lawyers for the Monitor

**Gowling Lafleur Henderson LLP**
Barristers & Solicitors
1 First Canadian Place
100 King Street West, Suite 1600
Toronto, ON  M5X 1G5

**Derrick Tay** LSUC#: 21152A
derrick.tay@gowlings.com
**Jennifer Stam** LSUC#: 46735J
jennifer.stam@gowlings.com

Tel:    416.862.5697
Fax:    416.862.7661

Lawyers for the Canadian Debtors

6319417