# **<u>Exhibit B</u>**

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION
APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**FACTUM OF NORTEL NETWORKS INC. AND THE OTHER U.S. DEBTORS**
(Joint Administrators' Motion for Production of Documents)

Date: April 16, 2014

**TORYS LLP**
79 Wellington St. W., Suite 3000
Box 270, TD Centre
Toronto, ON M5K 1N2

Fax: 416.865.7380

**Sheila Block** (LSUC#: 14089N)
Tel: 416.865.7319
Email: sblock@torys.com

**Scott A. Bomhof** (LSUC#: 37006F)
Tel: 416.865.7370
Email: sbomhof@torys.com

**Andrew Gray** (LSUC#: 46626V)
Tel: 416.865.7630
Email: agray@torys.com

**Adam M. Slavens** (LSUC#: 54433J)
Tel: 416.865.7333
Email: aslavens@torys.com

Lawyers for Nortel Networks Inc. and the other U.S. Debtors

35873-2001 16936366.4

1. Nortel Networks Inc. ("NNI") and its affiliated debtors[1] (collectively, the "U.S. Debtors") make this submission in connection with the Motion For Production of Documents (the "Motion") filed by the court-appointed administrators and authorized foreign representatives (collectively, the "Joint Administrators") of Nortel Networks UK Limited and certain of its affiliates (the "EMEA Debtors").[2]

2. The U.S. Debtors are the custodian for the files of Michael Orlando and file this factum with respect to the U.S. Debtors' interest in the Disputed Document (as defined below). Mr. Orlando is a former employee of Nortel Networks Inc. and has been designated as a trial witness by the U.S. Debtors for the allocation litigation. The U.S. Debtors respectively request that any order issued by this Court with respect to the Disputed Document:

   (a) shall be limited to the Disputed Document and not be applicable to any other communications, documents or matter which may be subject to a claim of privilege involving Mr. Orlando or any other employee of the U.S. Debtors;

   (b) in the event that the Monitor and Canadian Debtors are successful on this motion, it be without prejudice to any claim of the U.S. Debtors that the Disputed Document is owned by the U.S. Debtors and that the U.S. Debtors are entitled to retain such document and shall not be required to destroy such document; and

   (c) in any event, entitle the U.S. Debtors to retain the Disputed Document and not require them to destroy such document.

3. The Joint Administrators seek in the Motion the production of a document (the "Disputed Document") marked as an exhibit during the November 5-6, 2013 deposition of Michael Orlando

---

[1] The U.S. Debtors are Nortel Networks Inc., Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions Inc. and Nortel Networks (CALA) Inc.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

2

[Bates number NNI_00794462], as well as any related documents. At Mr. Orlando's deposition, and pursuant to an email that the Monitor and Canadian Debtors circulated to the parties involved in this litigation after the deposition, the Monitor and Canadian Debtors purported to claw back on the basis of privilege the Disputed Document and twelve related documents. The documents are identified by Bates number in an e-mail from Tamryn Jacobson of Goodmans LLP, on behalf of the Monitor and Canadian Debtors, dated November 7, 2013.[3]

4. The Joint Administrators served and filed the Motion on March 11, 2014, which included the Affidavit of Jessica Zhi (the "Zhi Affidavit"). On April 7, 2014, the Canadian Debtors and the Monitor served a responding motion record, which included the Affidavit of Sean Kruger (the "Kruger Affidavit") and Christina Ierullo (the "Ierullo Affidavit"). On April 11, 2014, the Joint Administrators served a reply motion record, which included the Reply Affidavit of Jessica Zhi (the "Zhi Reply Affidavit'). On April 14, 2014, the Joint Administrators served their factum, and on April 15, 2014, the Monitor and Canadian Debtors served a responding factum (the "Monitor's Factum").

5. The Motion is scheduled to be heard before both this Court and the United States Bankruptcy Court for the District of Delaware (collectively, the "Courts") at a Joint Hearing on April 17, 2014.

6. Based on the submissions to the Court to date, it appears that all parties agree on the following facts:

---

[3] Affidavit of Jessica Zhi, Joint Administrators' Motion Record, Tab 2(E).

 (a) Mr. Orlando was one of the authors of the Disputed Document and/or the information contained therein; the U.S. Debtors produced the Disputed Document and the twelve other clawed back documents;

 (b) Mr. Orlando is a former employee of NNI, one of the U.S. Debtors;

 (c) Mr. Orlando was never employed by either the Monitor or Canadian Debtors, or the EMEA Debtors; and

 (d) Mr. Orlando has been identified as one of the U.S. Debtors' trial witnesses in the allocation litigation.

7. Neither the Monitor nor the EMEA Debtors have informed the U.S. Debtors that they intend to rely upon the Disputed Document or any of the twelve related documents in the allocation litigation; however, the U.S. Debtors understand from the EMEA Debtors' submissions that they may rely upon the documents in the claims litigation between the two parties. To the extent the Monitor and the EMEA Debtors do not intend to raise such issues in the allocation trial, the U.S. Debtors do not currently anticipate using in the allocation trial the Disputed Document or any of the twelve related documents that the Monitor and Canadian Debtors have sought to claw back as privileged. Nor do the U.S. Debtors wish to involve themselves in any dispute between the Canadian Debtors and the Monitor on the one hand and the EMEA Debtors on the other as to whether the Disputed Document is in fact privileged solely for the purpose of determining whether it may be used by any of them in the claims trial.

8. According to the Zhi Affidavit, the Disputed Document is a May 2010 PowerPoint authored by Mr. Orlando and Sean Kruger, a representative of the Monitor.[4] Mr. Orlando

---

[4] Affidavit of Jessica Zhi at para. 5, Joint Administrators' Motion record, Tab 2.

testified that he believed that he and Mr. Kruger gave the presentation reflected in the Disputed Document to the Monitor in May 2010.[5]

9. It appears that the Monitor and Canadian Debtors are taking the position that the Disputed Document and their discussions with Mr. Orlando with respect to these matters are subject to a privilege held solely by the Monitor and Canadian Debtors, and not a joint privilege held with the U.S. Debtors. Consistent with this, on April 2, 2014, counsel to the U.S. Debtors received an email from counsel to the Monitor, requesting confirmation that the U.S. Debtors had destroyed the Disputed Document and the other related clawed back documents.[6]

10. The documents in question came from NNI's files or were otherwise in NNI's possession. The U.S. Debtors were the ones to produce the documents to the other Core Parties in this litigation. To the extent that the EMEA and Canadian Debtors agree that they do not intend to use the Disputed Document or the subject matter reflected in the Disputed Document in connection with the allocation trial, the U.S. Debtors are amenable to agreeing to not use the Disputed Document or subject matter reflected in the Disputed Document in connection with the allocation trial as well. However, given the pendency of the U.S. Debtors' bankruptcy cases and the ongoing litigation in these proceedings, the U.S. Debtors submit that there is no basis for the Canadian Debtors or Monitor to require the U.S. Debtors to destroy their own files that contain the documents in question and from which the Disputed Document was produced.

---

[5] Affidavit of Jessica Zhi (Dep. of Michael Orlando, Nov. 6, 2013, Tr. 292:21-293:25), Joint Administrators' Motion Record, Tab 2(B).

[6] Affidavit of Adam M. Slavens at para. 3, U.S. Debtors' Responding Motion Record, Tab 1.

11. While the U.S. Debtors are aware of case law addressing whether participation of a third party results in waiver of a party's privilege[7], the U.S. Debtors are not aware of any authority stating that a third party's employer would not be entitled to have access to documents concerning such communications, nor does the Monitor's Factum cite any such authority.

12. The U.S. Debtors understand that the Monitor's and Canadian Debtors' claim of sole privilege over the Disputed Document relates to their assertion that "Mr. Orlando acted as an essential resource in performing the calculations in the Disputed Document."[8] The Ierullo Affidavit also attached portions of Mr. Orlando's testimony that he had staff reporting to him who were located in Canada, and that the last person he reported to at Nortel was either Peter Look or John Doolittle, both former employees of NNL.[9]

13. The U.S. Debtors are concerned that the Canadian Debtors and Monitor appear to be seeking findings with respect to Mr. Orlando's roles and responsibilities at Nortel, including a finding that with respect to transfer pricing issues the Canadian Debtors and Monitor could hold a unilateral privilege over Mr. Orlando. Of note, Mr. Orlando is designated by the U.S. Debtors as a trial witness at the allocation trial and the relevance of certain transfer pricing arrangements is central to those disputes. Moreover, the Disputed Document appears to relate to a settlement

---

[7] See: *Philip Services Corp. (Receiver of) v. Ontario Securities Commission* (2005), 77 O.R. (3d) 209; U.S. Debtors' Brief of Authorities, Tab 1; *Cellco P'ship v. Certain Underwriters at Lloyd's London*, CIV.A. 05-3158 (SRC), 2006 WL 1320067, at *2-3 (D.N.J. May 12, 2006); U.S. Debtors' Brief of Authorities, Tab 2, 11 U.S.C. § 541(a)(1) (stating the debtor's estate is comprised of property that includes, "[e]xcept as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of commencement of the case."), Schedule "B".

[8] Affidavit of Sean Kruger at para. 13, Monitor's and Canadian Debtors' Responding Motion Record, Tab 1; See also: February 18, 2014 letter from counsel to the Monitor to counsel to the EMEA Debtors, Affidavit of Jessica Zhi, Joint Administrators' Motion Record, Tab 2(H); Monitor's and Canadian Debtors' Factum at para. 50.

[9] Affidavit of Christina Ierullo at paras. 17-20, Monitor's and Canadian Debtors' Responding Motion Record, Tab 2; Monitor's and Canadian Debtors' Factum at para. 46.

by the U.S. Debtors and the Canadian Debtors with the relevant taxing authorities, which itself is subject to separate confidentiality arrangements. The U.S. Debtors expect that in preparing the Disputed Document, the Canadian Debtors and Monitor did not attempt to invade or encroach on Mr. Orlando's knowledge about the confidential settlement discussions with the IRS or any privileged communications he had with counsel to the U.S. Debtors with respect to these matters. The U.S. Debtors respectfully request that the Courts make clear that any ruling on this Motion would not be prejudicial or preclusive to the U.S. Debtors with respect to their own privileged communications or determinative of Mr. Orlando's roles and responsibilities at Nortel and particularly with respect to affiliates of Nortel Networks Inc., as each are relevant to the allocation litigation.

14.     To the extent the U.S. Debtors' position with respect to privilege is relevant to this Motion, the U.S. Debtors do not see an obvious basis for privilege over Mr. Orlando's work vis-à-vis the U.S. Debtors. In a February 18, 2014 letter from the Monitor's counsel to the EMEA Debtors' counsel, the Monitor claims that "there was no intention to waive privilege through Mr. Orlando's participation in these communications between counsel and the Monitor and Canadian Debtors."[10] In addition, the Monitor and Canadian Debtors take the position that the communication at issue was intended to be confidential.[11] However, to the extent that the Canadian Debtors and Monitor sought the guidance of an NNI employee with respect to certain numerical calculations related to NNI's settlement of a claim asserted against it by the Internal Revenue Service, it is not clear how the Monitor and Canadian Debtors had an expectation of privilege vis-à-vis the U.S. Debtors, or an expectation that their communications would not

---

[10] Affidavit of Jessica Zhi, Joint Administrators' Motion Record, Tab 2(H).
[11] Monitor's and Canadian Debtors' Factum at para. 51.

under any circumstances be shared with other employees of the U.S. Debtors. Under these particular circumstances, it would appear that any such privilege would be a joint privilege belonging to the U.S. Debtors and the Monitor and/or Canadian Debtors; however, the Canadian Debtors do not appear to have asserted such a joint privilege.[12] The EMEA Debtors have sought relief solely with respect to the use of the documents in the claims litigation pending solely before the Canadian Court. Accordingly, the U.S. Debtors do not believe it appropriate to make any general determinations regarding Mr. Orlando's role within the Nortel Group with respect to transfer pricing matters. While the U.S. Debtors do not agree with certain characterizations of Mr. Orlando's role or his employment made by the Monitor in their submissions, these are not appropriately litigated for purpose of this Motion and the U.S. Debtors' failure to rebut each of these characterizations with specific arguments or further evidentiary submissions should not be seen as agreement or an admission.

15. In light of the foregoing, the U.S. Debtors respectfully request that any order issued by this Court with respect to the Disputed Document:

(a) shall be limited to the Disputed Document and not be applicable to any other communications, documents or matter which may be subject to a claim of privilege involving Mr. Orlando or any other employee of the U.S. Debtors;

(b) in the event that the Monitor and Canadian Debtors are successful on this motion, be without prejudice to any claim of the U.S. Debtors that the Disputed Document is owned by the U.S. Debtors and that the U.S. Debtors are entitled to retain such document and shall not be required to destroy such document; and

(c) in any event, entitle the U.S. Debtors to retain the Disputed Document and not require them to destroy such document.

---

[12] *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir 2007) at 365-6.

8

16.     Moreover, to the extent there is a ruling that the Disputed Document or any of the twelve related documents that the Monitor and Canadian Debtors have sought to claw back are protected by privilege, the U.S. Debtors respectfully request that the Courts find that the privilege is a joint privilege shared with the U.S. Debtors.

ALL OF WHICH IS RESPECTFULLY SUBMITTED

_____
Sheila Block

_____
Scott Bomhof

_____
Andrew Gray

_____
Adam M. Slavens

## Schedule "A"

## List of Authorities Cited

1. *Philip Services Corp. (Receiver of) v. Ontario Securities Commission* (2005), 77 O.R. (3d) 209

2. *Cellco P'ship v. Certain Underwriters at Lloyd's London*, CIV.A. 05-3158 (SRC), 2006 WL 1320067 (D.N.J. May 12, 2006)

3. *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir 2007)

**Schedule "B"**

**Legislation**

(1) how to value assets at replacement value, determine current monthly income, the amounts specified in section 707(b)(2) and, in a chapter 13 case, how to determine disposable income in accordance with section 707(b)(2) and related calculations;

(2) how to complete the list of creditors, including how to determine what amount is owed and what address for the creditor should be shown; and

(3) how to determine what property is exempt and how to value exempt property at replacement value as defined in section 506.

(d) A debt relief agency shall maintain a copy of the notices required under subsection (a) of this section for 2 years after the date on which the notice is given the assisted person.

(Added Pub. L. 109–8, title II, §228(a), Apr. 20, 2005, 119 Stat. 69; amended Pub. L. 111–327, §2(a)(21), Dec. 22, 2010, 124 Stat. 3560.)

AMENDMENTS

2010—Subsec. (b). Pub. L. 111–327 substituted "Schedules, and Statement of Financial Affairs, and in some cases a Statement of Intention," for "Schedules and Statement of Financial Affairs, as well as in some cases a Statement of Intention" in third sentence of fourth undesignated par.

EFFECTIVE DATE

Section effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as an Effective Date of 2005 Amendment note under section 101 of this title.

§ 528. Requirements for debt relief agencies

(a) A debt relief agency shall—

(1) not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's petition under this title being filed, execute a written contract with such assisted person that explains clearly and conspicuously—

(A) the services such agency will provide to such assisted person; and

(B) the fees or charges for such services, and the terms of payment;

(2) provide the assisted person with a copy of the fully executed and completed contract;

(3) clearly and conspicuously disclose in any advertisement of bankruptcy assistance services or of the benefits of bankruptcy directed to the general public (whether in general media, seminars or specific mailings, telephonic or electronic messages, or otherwise) that the services or benefits are with respect to bankruptcy relief under this title; and

(4) clearly and conspicuously use the following statement in such advertisement: "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code." or a substantially similar statement.

(b)(1) An advertisement of bankruptcy assistance services or of the benefits of bankruptcy directed to the general public includes—

(A) descriptions of bankruptcy assistance in connection with a chapter 13 plan whether or not chapter 13 is specifically mentioned in such advertisement; and

(B) statements such as "federally supervised repayment plan" or "Federal debt restructuring help" or other similar statements that could lead a reasonable consumer to believe that debt counseling was being offered when in fact the services were directed to providing bankruptcy assistance with a chapter 13 plan or other form of bankruptcy relief under this title.

(2) An advertisement, directed to the general public, indicating that the debt relief agency provides assistance with respect to credit defaults, mortgage foreclosures, eviction proceedings, excessive debt, debt collection pressure, or inability to pay any consumer debt shall—

(A) disclose clearly and conspicuously in such advertisement that the assistance may involve bankruptcy relief under this title; and

(B) include the following statement: "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code." or a substantially similar statement.

(Added Pub. L. 109–8, title II, §229(a), Apr. 20, 2005, 119 Stat. 71.)

EFFECTIVE DATE

Section effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as an Effective Date of 2005 Amendment note under section 101 of this title.

SUBCHAPTER III—THE ESTATE

§ 541. Property of the estate

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

(b) Property of the estate does not include—

(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;

(2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case;

(3) any eligibility of the debtor to participate in programs authorized under the Higher Education Act of 1965 (20 U.S.C. 1001 et seq.; 42 U.S.C. 2751 et seq.), or any accreditation status or State licensure of the debtor as an educational institution;

(4) any interest of the debtor in liquid or gaseous hydrocarbons to the extent that—

(A)(i) the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement; and

(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 544(a)(3) of this title; or

(B)(i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and

(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 542 of this title;

(5) funds placed in an education individual retirement account (as defined in section 530(b)(1) of the Internal Revenue Code of 1986) not later than 365 days before the date of the filing of the petition in a case under this title, but—

(A) only if the designated beneficiary of such account was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were placed in such account;

(B) only to the extent that such funds—

(i) are not pledged or promised to any entity in connection with any extension of credit; and

(ii) are not excess contributions (as described in section 4973(e) of the Internal Revenue Code of 1986); and

(C) in the case of funds placed in all such accounts having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $5,000;

(6) funds used to purchase a tuition credit or certificate or contributed to an account in accordance with section 529(b)(1)(A) of the Internal Revenue Code of 1986 under a qualified State tuition program (as defined in section 529(b)(1) of such Code) not later than 365 days before the date of the filing of the petition in a case under this title, but—

(A) only if the designated beneficiary of the amounts paid or contributed to such tuition program was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were paid or contributed;

(B) with respect to the aggregate amount paid or contributed to such program having the same designated beneficiary, only so much of such amount as does not exceed the total contributions permitted under section 529(b)(6) of such Code with respect to such beneficiary, as adjusted beginning on the date of the filing of the petition in a case under this title by the annual increase or decrease (rounded to the nearest tenth of 1 percent) in the education expenditure category of the Consumer Price Index prepared by the Department of Labor; and

(C) in the case of funds paid or contributed to such program having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $5,000;

(7) any amount—

(A) withheld by an employer from the wages of employees for payment as contributions—

(i) to—

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;

except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2); or

(ii) to a health insurance plan regulated by State law whether or not subject to such title; or

(B) received by an employer from employees for payment as contributions—

(i) to—

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;

except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2); or

(ii) to a health insurance plan regulated by State law whether or not subject to such title;

(8) subject to subchapter III of chapter 5, any interest of the debtor in property where the debtor pledged or sold tangible personal property (other than securities or written or printed evidences of indebtedness or title) as collateral for a loan or advance of money given by a person licensed under law to make such loans or advances, where—

(A) the tangible personal property is in the possession of the pledgee or transferee;

(B) the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and

(C) neither the debtor nor the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108(b); or

(9) any interest in cash or cash equivalents that constitute proceeds of a sale by the debtor of a money order that is made—

(A) on or after the date that is 14 days prior to the date on which the petition is filed; and

(B) under an agreement with a money order issuer that prohibits the commingling of such proceeds with property of the debtor (notwithstanding that, contrary to the agreement, the proceeds may have been commingled with property of the debtor),

unless the money order issuer had not taken action, prior to the filing of the petition, to require compliance with the prohibition.

Paragraph (4) shall not be construed to exclude from the estate any consideration the debtor retains, receives, or is entitled to receive for transferring an interest in liquid or gaseous hydrocarbons pursuant to a farmout agreement.

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

(e) In determining whether any of the relationships specified in paragraph (5)(A) or (6)(A) of subsection (b) exists, a legally adopted child of an individual (and a child who is a member of an individual's household, if placed with such individual by an authorized placement agency for legal adoption by such individual), or a foster child of an individual (if such child has as the child's principal place of abode the home of the debtor and is a member of the debtor's household) shall be treated as a child of such individual by blood.

(f) Notwithstanding any other provision of this title, property that is held by a debtor that is a corporation described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code may be transferred to an entity that is not such a corporation, but only under the same conditions as would apply if the debtor had not filed a case under this title.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2594; Pub. L. 98–353, title III, §§ 363(a), 456, July 10, 1984, 98 Stat. 363, 376; Pub. L. 101–508, title III, § 3007(a)(2), Nov. 5, 1990, 104 Stat. 1388–28; Pub. L. 102–486, title XXX, § 3017(b), Oct. 24, 1992, 106 Stat. 3130; Pub. L. 103–394, title II, §§ 208(b), 223, Oct. 22, 1994, 108 Stat. 4124, 4129; Pub. L. 109–8, title II, § 225(a), title III, § 323, title XII, §§ 1212, 1221(c), 1230, Apr. 20, 2005, 119 Stat. 65, 97, 194, 196, 201; Pub. L. 111–327, § 2(a)(22), Dec. 22, 2010, 124 Stat. 3560.)

ADJUSTMENT OF DOLLAR AMOUNTS

*For adjustment of certain dollar amounts specified in this section, that is not reflected in text, see Adjustment of Dollar Amounts note below.*

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

Section 541(a)(7) is new. The provision clarifies that any interest in property that the estate acquires after the commencement of the case is property of the estate; for example, if the estate enters into a contract, after the commencement of the case, such a contract would be property of the estate. The addition of this provision by the House amendment merely clarifies that section 541(a) is an all-embracing definition which includes charges on property, such as liens held by the debtor on property of a third party, or beneficial rights and interests that the debtor may have in property of another. However, only the debtor's interest in such property becomes property of the estate. If the debtor holds bare legal title or holds property in trust for another, only those rights which the debtor would have otherwise had emanating from such interest pass to the

estate under section 541. Neither this section nor section 545 will affect various statutory provisions that give a creditor a lien that is valid both inside and outside bankruptcy against a bona fide purchaser of property from the debtor, or that creates a trust fund for the benefit of creditors meeting similar criteria. See Packers and Stockyards Act § 206, 7 U.S.C. 196 (1976).

Section 541(c)(2) follows the position taken in the House bill and rejects the position taken in the Senate amendment with respect to income limitations on a spend-thrift trust.

Section 541(d) of the House amendment is derived from section 541(e) of the Senate amendment and reiterates the general principle that where the debtor holds bare legal title without any equitable interest, that the estate acquires bare legal title without any equitable interest in the property. The purpose of section 541(d) as applied to the secondary mortgage market is identical to the purpose of section 541(e) of the Senate amendment and section 541(d) will accomplish the same result as would have been accomplished by section 541(e). Even if a mortgage seller retains for purposes of servicing legal title to mortgages or interests in mortgages sold in the secondary mortgage market, the trustee would be required by section 541(d) to turn over the mortgages or interests in mortgages to the purchaser of those mortgages.

The seller of mortgages in the secondary mortgage market will often retain the original mortgage notes and related documents and the seller will not endorse the notes to reflect the sale to the purchaser. Similarly, the purchaser will often not record the purchaser's ownership of the mortgages or interests in mortgages under State recording statutes. These facts are irrelevant and the seller's retention of the mortgage documents and the purchaser's decision not to record do not change the trustee's obligation to turn the mortgages or interests in mortgages over to the purchaser. The application of section 541(d) to secondary mortgage market transactions will not be affected by the terms of the servicing agreement between the mortgage servicer and the purchaser of the mortgages. Under section 541(d), the trustee is required to recognize the purchaser's title to the mortgages or interests in mortgages and to turn this property over to the purchaser. It makes no difference whether the servicer and the purchaser characterize their relationship as one of trust, agency, or independent contractor.

The purpose of section 541(d) as applied to the secondary mortgage market is therefore to make certain that secondary mortgage market sales as they are currently structured are not subject to challenge by bankruptcy trustees and that purchasers of mortgages will be able to obtain the mortgages or interests in mortgages which they have purchased from trustees without the trustees asserting that a sale of mortgages is a loan from the purchaser to the seller.

Thus, as section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate except to the extent that defenses which are personal against the debtor are not effective against the estate.

Property of the estate: The Senate amendment provided that property of the estate does not include amounts held by the debtor as trustee and any taxes withheld or collected from others before the commencement of the case. The House amendment removes these two provisions. As to property held by the debtor as a trustee, the House amendment provides that property of the estate will include whatever interest the debtor held in the property at the commencement of the case. Thus, where the debtor held only legal title to the property and the beneficial interest in that property belongs to another, such as exists in the case of property held in trust, the property of the estate includes the legal title, but not the beneficial interest in the property.

As to withheld taxes, the House amendment deletes the rule in the Senate bill as unnecessary since property of the estate does not include the beneficial interest in property held by the debtor as a trustee. Under the Internal Revenue Code of 1954 (section 7501) [26 U.S.C. 7501], the amounts of withheld taxes are held to be a special fund in trust for the United States. Where the Internal Revenue Service can demonstrate that the amounts of taxes withheld are still in the possession of the debtor at the commencement of the case, then if a trust is created, those amounts are not property of the estate. Compare *In re Shakesteers Coffee Shops*, 546 F.2d 821 (9th Cir. 1976) with *In re Glynn Wholesale Building Materials, Inc.* (S.D. Ga. 1978) and *In re Progress Tech Colleges, Inc.*, 42 Aftr 2d 78–5573 (S.D. Ohio 1977).

Where it is not possible for the Internal Revenue Service to demonstrate that the amounts of taxes withheld are still in the possession of the debtor at the commencement of the case, present law generally includes amounts of withheld taxes as property of the estate. See, e.g., *United States v. Randall*, 401 U.S. 513 (1973) [91 S. Ct. 991, 28 L.Ed.2d 273] and *In re Tamasha Town and Country Club*, 483 F.2d 1377 (9th Cir. 1973). Nonetheless, a serious problem exists where "trust fund taxes" withheld from others are held to be property of the estate where the withheld amounts are commingled with other assets of the debtor. The courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other tax authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case. For example, where the debtor had commingled that amount of withheld taxes in his general checking account, it might be reasonable to assume that any remaining amounts in that account on the commencement of the case are the withheld taxes. In addition, Congress may consider future amendments to the Internal Revenue Code [title 26] making clear that amounts of withheld taxes are held by the debtor in a trust relationship and, consequently, that such amounts are not property of the estate.

SENATE REPORT NO. 95–989

This section defines property of the estate, and specifies what property becomes property of the estate. The commencement of a bankruptcy case creates an estate. Under paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6) [section 110(a)(6) of former title 11]), and all other forms of property currently specified in section 70a of the Bankruptcy Act § 70a [section 110(a) of former title 11], as well as property recovered by the trustee under section 542 of proposed title 11, if the property recovered was merely out of the possession of the debtor, yet remained "property of the debtor." The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or lease-hold interest, for example. The result of *Segal v. Rochelle*, 382 U.S. 375 (1966), is followed, and the right to a refund is property of the estate.

Though this paragraph will include choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case. For example, if the debtor has a claim that is barred at the time of the commencement of the case by the statute of limitations, then the trustee would not be able to pursue that claim, because he too would be barred. He could take no greater rights than the debtor himself had. But see proposed 11 U.S.C. 108, which would permit the trustee a tolling of the statute of limitations if it had not run before the date of the filing of the petition.

Paragraph (1) has the effect of overruling *Lockwood v. Exchange Bank*, 190 U.S. 294 (1903), because it includes as property of the estate all property of the debtor, even that needed for a fresh start. After the property

comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C. 522, and the court will have jurisdiction to determine what property may be exempted and what remains as property of the estate. The broad jurisdictional grant in proposed 28 U.S.C. 1334 would have the effect of overruling *Lockwood* independently of the change made by this provision.

Paragraph (1) also has the effect of overruling *Lines v. Frederick*, 400 U.S. 18 (1970).

Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed. This section and proposed 11 U.S.C. 545 also will not affect various statutory provisions that give a creditor of the debtor a lien that is valid outside as well as inside bankruptcy, or that creates a trust fund for the benefit of a creditor of the debtor. See Packers and Stockyards Act § 206, 7 U.S.C. 196.

Bankruptcy Act § 8 [section 26 of former title 11] has been deleted as unnecessary. Once the estate is created, no interests in property of the estate remain in the debtor. Consequently, if the debtor dies during the case, only property exempted from property of the estate or acquired by the debtor after the commencement of the case and not included as property of the estate will be available to the representative of the debtor's probate estate. The bankruptcy proceeding will continue in rem with respect to property of the state, and the discharge will apply in personam to relieve the debtor, and thus his probate representative, of liability for dischargeable debts.

The estate also includes the interests of the debtor and the debtor's spouse in community property, subject to certain limitations; property that the trustee recovers under the avoiding powers; property that the debtor acquires by bequest, devise, inheritance, a property settlement agreement with the debtor's spouse, or as the beneficiary of a life insurance policy within 180 days after the petition; and proceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earning from services performed by an individual debtor after the commencement of the case. Proceeds here is not used in a confining sense, as defined in the Uniform Commercial Code, but is intended to be a broad term to encompass all proceeds of property of the estate. The conversion in form of property of the estate does not change its character as property of the estate.

Subsection (b) excludes from property of the estate any power, such as a power of appointment, that the debtor may exercise solely for the benefit of an entity other than the debtor. This changes present law which excludes powers solely benefiting other persons but not other entities.

Subsection (c) invalidates restrictions on the transfer of property of the debtor, in order that all of the interests of the debtor in property will become property of the estate. The provisions invalidated are those that restrict or condition transfer of the debtor's interest, and those that are conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case, or on the appointment of a custodian of the debtor's property. Paragraph (2) of subsection (c), however, preserves restrictions on a transfer of a spendthrift trust that the restriction is enforceable nonbankruptcy law to the extent of the income reasonably necessary for the support of a debtor and his dependents.

Subsection (d) [enacted as (e)], derived from section 70c of the Bankruptcy Act [section 110(c) of former title 11], gives the estate the benefit of all defenses available to the debtor as against an entity other than the estate, including such defenses as statutes of limitations, statutes of frauds, usury, and other personal defenses, and makes waiver by the debtor after the commencement of the case ineffective to bind the estate.

Section 541(e) [enacted as (d)] confirms the current status under the Bankruptcy Act [former title 11] of bona fide secondary mortgage market transactions as the purchase and sale of assets. Mortgages or interests in mortgages sold in the secondary market should not be considered as part of the debtor's estate. To permit the efficient servicing of mortgages or interests in mortgages the seller often retains the original mortgage notes and related documents, and the purchaser records under State recording statutes the purchaser's ownership of the mortgages or interests in mortgages purchased. Section 541(e) makes clear that the seller's retention of the mortgage documents and the purchaser's decision not to record do not impair the asset sale character of secondary mortgage market transactions. The committee notes that in secondary mortgage market transactions the parties may characterize their relationship as one of trust, agency, or independent contractor. The characterization adopted by the parties should not affect the statutes in bankruptcy on bona fide secondary mortgage market purchases and sales.

REFERENCES IN TEXT

The Higher Education Act of 1965, referred to in subsec. (b)(3), is Pub. L. 89–329, Nov. 8, 1965, 79 Stat. 1219, which is classified generally to chapter 28 (§ 1001 et seq.) of Title 20, Education, and part C (§ 2751 et seq.) of subchapter I of chapter 34 of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title note set out under section 1001 of Title 20 and Tables.

The Internal Revenue Code of 1986, referred to in subsecs. (b)(5) to (7) and (f), is classified generally to Title 26, Internal Revenue Code.

The Employee Retirement Income Security Act of 1974, referred to in subsec. (b)(7)(A)(i)(I), (B)(i)(I), is Pub. L. 93–406, Sept. 2, 1974, 88 Stat. 829, as amended. Title I of the Act is classified generally to subchapter I (§ 1001 et seq.) of chapter 18 of Title 29, Labor. For complete classification of this Act to the Code, see Short Title note set out under section 1001 of Title 29 and Tables.

AMENDMENTS

2010—Subsec. (b)(6)(B). Pub. L. 111–327 substituted "section 529(b)(6)" for "section 529(b)(7)".

2005—Subsec. (b)(4). Pub. L. 109–8, § 225(a)(1)(A), struck out "or" at end.

Subsec. (b)(4)(B)(ii). Pub. L. 109–8, § 1212, inserted "365 or" before "542".

Subsec. (b)(5), (6). Pub. L. 109–8, § 225(a)(1)(C), added pars. (5) and (6). Former par. (5) redesignated (9).

Subsec. (b)(7). Pub. L. 109–8, § 323, added par. (7).

Subsec. (b)(8). Pub. L. 109–8, § 1230, added par. (8).

Subsec. (b)(9). Pub. L. 109–8, § 225(a)(1)(B), redesignated par. (5) as (9).

Subsec. (e). Pub. L. 109–8, § 225(a)(2), added subsec. (e).

Subsec. (f). Pub. L. 109–8, § 1221(c), added subsec. (f).

1994—Subsec. (b)(4). Pub. L. 103–394, § 208(b), designated existing provisions of subpar. (A) as cl. (i) of subpar. (A), redesignated subpar. (B) as cl. (ii) of subpar. (A), substituted "the interest referred to in clause (i)" for "such interest", substituted "; or" for period at end of cl. (ii), and added subpar. (B).

Pub. L. 103–394, § 223(2), which directed the amendment of subsec. (b)(4) by striking out period at end and inserting "; or", was executed by inserting "or" after semicolon at end of subsec. (b)(4)(B)(ii), as added by Pub. L. 103–394, § 208(b)(3), to reflect the probable intent of Congress.

Subsec. (b)(5). Pub. L. 103–394, § 223, added par. (5).

1992—Subsec. (b). Pub. L. 102–486 added par. (4) and closing provisions.

1990—Subsec. (b)(3). Pub. L. 101–508 added par. (3).

1984—Subsec. (a). Pub. L. 98–353, § 456(a)(1), (2), struck out "under" after "under" and inserted "and by whomever held" after "located".

Subsec. (a)(3). Pub. L. 98–353, § 456(a)(3), inserted "329(b), 363(n),".

Subsec. (a)(5). Pub. L. 98–353, § 456(a)(4), substituted "Any" for "An".

Subsec. (a)(6). Pub. L. 98–353, § 456(a)(5), substituted "or profits" for "and profits".

Subsec. (b). Pub. L. 98–353, § 363(a), amended subsec. (b) generally. Prior to amendment, subsec. (b) read as follows: "Property of the estate does not include any power that the debtor may only exercise solely for the benefit of an entity other than the debtor."

Subsec. (c)(1). Pub. L. 98–353, § 456(b)(1), inserted "in an agreement, transfer, instrument, or applicable nonbankruptcy law".

Subsec. (c)(1)(B). Pub. L. 98–353, § 456(b)(2), substituted "taking" for "the taking", and inserted "before such commencement" after "custodian".

Subsec. (d). Pub. L. 98–353, § 456(c), inserted "(1) or (2)" after "(a)".

Subsec. (e). Pub. L. 98–353, § 456(d), struck out subsec. (e) which read as follows: "The estate shall have the benefit of any defense available to the debtor as against an entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate."

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by section 1221(c) of Pub. L. 109–8 applicable to cases pending under this title on Apr. 20, 2005, or filed under this title on or after Apr. 20, 2005, with certain exceptions, see section 1221(d) of Pub. L. 109–8, set out as a note under section 363 of this title.

Amendment by sections 225(a), 323, 1212, and 1230 of Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1992 AMENDMENT

Amendment by Pub. L. 102–486 effective Oct. 24, 1992, but not applicable with respect to cases commenced under this title before Oct. 24, 1992, see section 3017(c) of Pub. L. 102–486, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

ADJUSTMENT OF DOLLAR AMOUNTS

The dollar amounts specified in this section were adjusted by notices of the Judicial Conference of the United States pursuant to section 104 of this title as follows:

By notice dated Feb. 12, 2013, 78 F.R. 12089, effective Apr. 1, 2013, in subsec. (b)(5)(C), (6)(C), dollar amount "5,850" was adjusted to "6,225". See notice of the Judicial Conference of the United States set out as a note under section 104 of this title.

By notice dated Feb. 19, 2010, 75 F.R. 8747, effective Apr. 1, 2010, in subsec. (b)(5)(C), (6)(C), dollar amount "5,475" was adjusted to "5,850".

By notice dated Feb. 7, 2007, 72 F.R. 7082, effective Apr. 1, 2007, in subsec. (b)(5)(C), (6)(C), dollar amount "5,000" was adjusted to "5,475".

## § 542. Turnover of property to the estate

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

(d) A life insurance company may transfer property of the estate or property of the debtor to such company in good faith, with the same effect with respect to such company as if the case under this title concerning the debtor had not been commenced, if such transfer is to pay a premium or to carry out a nonforfeiture insurance option, and is required to be made automatically, under a life insurance contract with such company that was entered into before the date of the filing of the petition and that is property of the estate.

(e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2595; Pub. L. 98–353, title III, § 457, July 10, 1984, 98 Stat. 376; Pub. L. 103–394, title V, § 501(d)(16), Oct. 22, 1994, 108 Stat. 4146.)

HISTORICAL AND REVISION NOTES

LEGISLATIVE STATEMENTS

Section 542(a) of the House amendment modifies similar provisions contained in the House bill and the Senate amendment treating with turnover of property to the estate. The section makes clear that any entity, other than a custodian, is required to deliver property of the estate to the trustee or debtor in possession whenever such property is acquired by the entity during the case, if the trustee or debtor in possession may use, sell, or lease the property under section 363, or if the debtor may exempt the property under section 522, unless the property is of inconsequential value or benefit to the estate. This section is not intended to require an entity to deliver property to the trustee if such entity has obtained an order of the court authorizing the entity to retain possession, custody or control of the property.

The House amendment adopts section 542(c) of the House bill in preference to a similar provision con-

| | |
|---|---|
| IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED<br><br>AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION | Court File No. 09-CL-7950<br><br>***ONTARIO*<br>SUPERIOR COURT OF JUSTICE<br>(COMMERCIAL LIST)**<br>Proceeding commenced at TORONTO<br><br>**FACTUM OF NORTEL NETWORKS INC. AND THE OTHER U.S. DEBTORS**<br>(Joint Administrators' Motion for Production of Documents)<br><br>**TORYS LLP**<br>79 Wellington St. W., Suite 3000<br>Box 270, TD Centre<br>Toronto, ON M5K 1N2<br>Tel:  416.865.0040<br>Fax: 416.865.7380<br><br>**Sheila Block** (LSUC#: 14089N)<br>Email: sblock@torys.com<br><br>**Scott A. Bomhof** (LSUC#: 37006F)<br>Email: sbomhof@torys.com<br><br>**Andrew Gray** (LSUC#: 46626V)<br>Email: agray@torys.com<br><br>**Adam M. Slavens** (LSUC#: 54433J)<br>Email: aslavens@torys.com<br><br>Lawyers for Nortel Networks Inc. and the other U.S. Debtors |

35873-2001 16936366.4